UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION J |
| | * | |
| Applies to: | * | JUDGE BARBIER |
| No. 12-970, Bon Secour Fisheries, Inc., | * | |
| et al v. BP Exploration & Production | * | MAGISTRATE SHUSHAN |
| Inc., et al. | | |

## ORDER & REASONS

Before the Court is the **Motion of the Special Master for Return of Payments Made to Jarrod A. Burrle and Others (Rec. Doc. 13010)**; the Special Master's Supplemental Memorandum (Rec. Doc. 13163); BP Exploration and Production, Inc., BP America Production Company, and BP p.l.c. (collectively, "BP")'s response to join the Special Master's motion (Rec. Doc. 13182); AndryLerner, LLC's Response to the Special Master's motion (Rec. Doc. 13188) and the Special Master's two Reply memoranda (Rec. Doc. 13263 & 13264); Woodbridge Baric Pre-Settlement Investments, LLC's Memorandum in Opposition (Rec. Doc. 13270), and the Special Master's Reply thereto (Rec. Doc. 13285).

Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the Special Master's motion should be **GRANTED** for the reasons set forth more fully below.

### FACTS AND PROCEDURAL BACKGROUND

**A. Background Regarding the Settlement and the Special Master**

On December 21, 2012, this Court approved the *Deepwater Horizon* Economic and Property Damages Settlement Agreement ("Settlement Agreement"), a class action settlement. (Rec. Doc.

8139) The *Deepwater Horizon* Court Supervised Settlement Program ("Settlement Program") implements and administers the Settlement Agreement. On July 2, 2013, the Court appointed Louis J. Freeh as Special Master pursuant to Federal Rule of Civil Procedure 53 to investigate allegations of misconduct within the Settlement Program. On September 6, 2013, the Court directed the Special Master to examine and investigate any past or pending claims submitted to the Settlement Program and to initiate legal action to clawback funds paid out on fraudulent claims. (Rec. Doc. 11288)

**B. Background Regarding Burrle's Claims**

In April 2013, the Deepwater Horizon Economic Claim Center ("DHECC") paid Burrle the sum of $50,015.87 for his vessel owner claim (Claim No. 42138) pursuant to the Seafood Compensation Program. Burrle also submitted other claims which were not paid and are not the subject of the current clawback motion. The AndryLerner law firm represented Burrle on his claims. Following receipt of the claim payment, AndryLerner deducted 25% for attorneys' fees ($12,503.97) and $20,000 as partial repayment of a "non-recourse" advance or loan made to Burrle by Woodbridge Baric Pre-Settlement Investments, LLC. AndryLerner also forwarded 40% of the attorneys' fees to its referral counsel, paying $2,500.80 each to the Palazzo Law Firm and to David D. Bravo, APLC.

**C. Investigation of Burrle's Claims by the Special Master**

Pursuant to the Court's September 6, 2013 Order, the Special Master investigated Burrle's claims and, at the request of the Special Master, on February 7, 2014 the Court issued a show cause order to Burrle directing him to sign a release allowing the Special Master to access his IRS records and directing Burrle to produce documentation of the kind that claimants use to support their claims under the Seafood Compensation Program. Burrle did not respond to the latter request, but he did

sign a release, and the Special Master subsequently reviewed Burrle's IRS records. These tax records were clearly created only in connection with the filing of his claims and only after being requested by the claims office. For example, the 2008 tax document was prepared in January 2011, and only after the tax return was requested by the claims office. Although Burrle filed the return with the IRS, he has never paid the tax that was due. Burrle did not file a 2009 tax return. Burrle also did not file a 2010 tax return, despite having earned at least $50,500 in non-commercial fishing income that year. Again, Burrle failed to pay income tax that was due. The Special Master also was unable to verify information contained on purported affidavits submitted by Burrle, which purport to confirm that third parties purchased seafood from him. In fact, the "affidavits", all of which are the same exact form and executed on the same date, appear to have been confected by Burrle and either signed by himself or unsigned.

The evidence relied upon by the Special Master is laid out in greater detail in the memoranda filed in support of this clawback motion, together with the documentary evidence attached. Burrle has failed to file an opposition to the Special Master's motion. Taken as a whole, the undisputed evidence shows clearly and convincingly that Burrle submitted fraudulent documents and made false statements in connection with his claims under the Seafood Compensation program.

## ARGUMENTS OF THE PARTIES

In addition to seeking restitution from Burrle, the Special Master also seeks restitution from AndryLerner, The Palazzo Law Firm, David D. Bravo, APLC, and Woodbridge Baric Pre-Settlement Investments, LLC. He bases the right to restitution from these parties not on any allegation that they committed fraud or even knew of the fraud, but rather on notions of "equity and good conscience." He contends that, because each of these parties received their payments based on

3

contingency agreements, they have no right to retain these payments if the award is later revoked because their payment hinges on the success of the claim.

AndryLerner argues that, even if it is found that Burrle committed fraud, existing case law does not allow the Court to enter a judgment requiring an attorney to return his earned fees without an express finding by the Court that the attorney participated in the fraud.

Woodbridge Baric argues that even if the Court were to determine that AndryLerner should have to return the funds it received, the Court cannot clawback the payments made to Woodbridge Baric because it is a third party and AndryLerner paid them with the funds in good faith.

## DISCUSSION

Pursuant to the Settlement Agreement and the Order and Judgment approving same, this Court retains ongoing and exclusive jurisdiction and supervision over the Settlement Program. Settlement Agreement §§ 4.3.2, 4.4.7, 38.41; Order and Judgment ¶¶ 9, 17, Rec. Doc. 8139. The Court similarly has continuing jurisdiction over the implementation, administration, and enforcement of the Settlement Agreement. Settlement Agreement § 18.1; Order & Judgment ¶¶ 9, 17. Furthermore, the Court has jurisdiction over counsel who represent claimants in the Settlement Program.[1] Even the name of the Settlement Program reflects the Court's continuing jurisdiction: "Deepwater Horizon *Court Supervised* Settlement Program." Settlement Agreement § 4.1 (emphasis added). The Special Master's motion concerns the administration, implementation, and enforcement of the Settlement Agreement and Program, a claimant (Burrle) and his claims, the claimant's attorneys' and their law firms (AndryLerner), and a party (Woodbridge Baric) that submitted a

---

[1] Settlement Agreement § 18.1 ("[E]ach member of the Economic Class . . . and their Counsel are hereby deemed to have submitted irrevocably to the exclusive jurisdiction of this Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement." (emphasis added))

4

Notice of Lien to the Claims Adminstrator seeking payment of advances or loans (non-recourse) from any payments made to Burrle on his claims. Clearly, in making a determination as to whether claim funds should be returned, the Court has subject matter and personal jurisdiction over these parties.

AndryLerner argues that the Court may not conclude that Burrle committed fraud without conducting an evidentiary hearing. Here, if an evidentiary hearing were held, it would be confined to the issue of whether Burrle submitted fraudulent documentation in support of his claims to the DHECC. The Special Master has submitted uncontroverted and convincing evidence that the tax returns that were submitted with Burrle's claims were created soley for the purpose of submitting them to the claims office after he was advised that his documentation was deemed deficient. Burrle has not submitted any evidence to controvert the Special Master's evidence on this point, and has failed to file an opposition to the Special Master's clawback motion. Moreover, looking at the totality of the evidence presented, there is ample, uncontroverted evidence that Burrle prepared false tax returns following the oil spill and submitted those returns to the GCCF[2] and DHECC solely for the purpose of supporting a fraudulent claim. In light of this evidence and Burrle's failure to rebut it, the Court finds that the current record is sufficient to support a finding that Burrle committed fraud, without an evidentiary hearing.

In light of this finding, it is both reasonable and proper under the terms of the Settlement Agreement to order Burrle to make restitution for the funds that he received as a result of his fraudulent claim. It is well-accepted that one who receives a judgment through fraud is bound to make restitution, and even absent fraud, it is the general rule that when a judgment is reversed,

---

[2] Burrle initially submitted claims and documentation to the Gulf Coast Claims Facility or "GCCF."

restitution is required. Restatement (Third) of Restitution and Unjust Enrichment § 13 (2011) ("A transfer induced by fraud or material misrepresentation is subject to rescission and restitution. The transferee is liable in restitution as necessary to avoid unjust enrichment."); Wall v. Johnson, 80 So. 2d 362, 364 (Fla. 1955) (recognizing the general "rule that restitution may be required of amounts paid under a judgment that is subsequently reversed.") In fact, "[f]raud is one of the most common grounds of rescission." Restatement (Third) of Restitution and Unjust Enrichment § 13 (2011).

The overarching substantive argument advanced by the AndryLerner is that their innocence in Burrle's fraud shields them from a judgment ordering restitution.  However, this Court has previously rejected this same argument in connection with the Special Master's clawback motion against another similarly situated claimant, Casey Thonn. (Rec. Doc. 12794 at 22-26).  Notably, the Court explained that because AndryLerner's fee was contingent upon obtaining a successful result on Thonn's claims, once those claims were determined to be fraudulent and invalid, AndryLerner was not entitled to its contingent fee.

As for Woodbridge, its "pre-settlement funding contract" provided that Burrle was under no obligation to repay the loans if he did not recover on his claims from the GCCF or the DHECC.  In other words, Woodbridge's payment ultimately depended on the success or failure of Burrle's claim. Thus, these contracts bear all the hallmarks of contingent fee arrangements.  Accordingly, Woodbridge's fault or lack thereof is irrelevant, and if the Court were to allow them to keep the payments when such payments were not owed to them under their contract with Burrle, Woodbridge would be unjustly enriched.  Therefore, restitution is proper.

Accordingly,

**IT IS ORDERED** that the **Motion of the Special Master for Return of Payments Made**

**to Jarrod A. Burrle and Others (Rec. Doc. 13010)** is **GRANTED**.

Restitution is ordered in the following amounts:

| | |
|---|---|
| Jarrod A. Burrle | $50,015.87 |
| AndryLerner | $ 7,502.38 |
| Palazzo Law Firm | $ 2,500.80 |
| David D. Bravo, APLC | $ 2,500.79 |
| Woodbridge Baric Pre-Settlement Investments LLC | $20,000.00 |

AndryLerner, the Palazzo Law Firm, and David D. Bravo, APLC are jointly and severally liable, together with Jarrod A. Burrle, but only up to the amount of the attorneys' fees or payments they received in relation to Burrle's claim. In no event shall the restitution payable to the DHECC exceed the total amount paid to Burrle on his claim ($50,015.87).

The Special Master shall submit a proposed form for entry of a Final Judgment in accordance with this Order.

New Orleans, Louisiana, this 23rd day of June, 2015.

_____
United States District Judge