## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
|     "Deepwater Horizon" in the Gulf | * | |
|     of Mexico, on April 20, 2010 | * | SECTION J |
| | * | |
| Applies to: | * | JUDGE BARBIER |
| *No. 12-970, Bon Secour Fisheries, Inc.,* | * | |
| *et al v. BP Exploration & Production* | * | MAGISTRATE SHUSHAN |
| *Inc., et al.* | | |

## ORDER & REASONS

Before the Court is the **Motion of the Special Master for Return of Payments Made to Jason Zirlott and Capt Jay, LLC (Rec. Doc. 13468)**;  the Opposition by Jason Zirlott and Capt. Jay, LLC (Rec. Doc. 13926); and the Special Master's Reply thereto (Rec. Doc. 13997).

Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the Special Master's motion should be **GRANTED** for the reasons set forth more fully below.

## FACTS AND PROCEDURAL BACKGROUND

### A. Background Regarding the Settlement and the Special Master

On December 21, 2012, this Court approved the *Deepwater Horizon* Economic and Property Damages Settlement Agreement ("Settlement Agreement"), a class action settlement. (Rec. Doc. 8139) The *Deepwater Horizon* Court Supervised Settlement Program ("Settlement Program") implements and administers the Settlement Agreement. On July 2, 2013, the Court appointed Louis J. Freeh as Special Master pursuant to Federal Rule of Civil Procedure 53 to investigate allegations of misconduct within the Settlement Program. On September 6, 2013, the Court directed the Special Master to examine and investigate any past or pending claims submitted to the Settlement Program

and to initiate legal action to clawback funds paid out on fraudulent claims. (Rec. Doc. 11288)

**B. Background Regarding Claims by Zirlott and Capt Jay, LLC**

On November 19, 2012, Capt Jay, LLC ("Capt Jay") filed a shrimp vessel owner claim with the Settlement Program, based on Capt Jay's 2009 revenue as shown on its tax returns and financial statements.  On December 4, 2012, Jason Zirlott, a member of Capt Jay, filed a shrimp boat captain claim, based on the same revenue data.

Capt Jay originally filed a claim for lost commercial fishing income with the Gulf Coast Claims Facility ("GCCF"), stating that all of the $162,364 in income from its 2009 partnership tax return came from the sales of seafood.   On November 29, 2012, after filing a claim with the Settlement Program, Capt Jay and Zirlott submitted Sworn Written Statements stating under penalty of perjury that Capt Jay landed $162,364 of shrimp in the Gulf Coast Areas in 2009.  The revenue reported on the sworn statements matched the gross receipts declared by Capt Jay on its 2009 Form 1065 partnership income tax return.

The Settlement Program relied on the documentation provided by Capt Jay and Jason Zirlott to determine that Capt Jay was entitled to compensation of $248,371.29 on its shrimp vessel owner claim and Zirlott was entitled to compensation of $196,906.96 on his shrimp boat captain claim. After deducting prior GCCF payments, on January 25, 2013 the Settlement Program paid Capt Jay $85,357.82 on its vessel owner claim.  On February 19, 2013 the Settlement Program paid Zirlott $197,384.31, including accounting fees.

The former attorneys for Capt Jay and Zirlott received attorneys' fees of $43,222.81 for handling the claims of Capt Jay and Zirlott.  On October 3, 2014 the former attorneys repaid these fees to the Settlement Program and withdrew from further representation of Capt Jay and Zirlott.

### C. Evidence of Fraudulent Claims

Documentation submitted by the Special Master shows that, contrary to the sworn statements filed by Capt Jay and Zirlott, most of the 2009 revenue was not from commercial shrimping, but from marine debris removal work performed in 2009 following Hurricane Ike.  Of the total declared gross revenue of $162,364,  approximately 80% or $130,707 was actually earned pursuant to contracts for marine debris removal.

### DISCUSSION

Pursuant to the Settlement Agreement and the Order and Judgment approving same, this Court retains ongoing and exclusive jurisdiction and supervision over the Settlement Program. (Settlement Agreement §§ 4.3.2, 4.4.7, 38.41; Order and Judgment ¶¶ 9, 17, Rec. Doc. 8139)  The Court similarly has continuing jurisdiction over the implementation, administration, and enforcement of the Settlement Agreement. (Settlement Agreement § 18.1; Order & Judgment ¶¶ 9, 17) Furthermore, the Court has jurisdiction over counsel who represent claimants in the Settlement Program.[1]  Even the name of the Settlement Program reflects the Court's continuing jurisdiction: "Deepwater Horizon **Court Supervised** Settlement Program." (Settlement Agreement § 4.1) (emphasis added) The Special Master's motion concerns the administration, implementation, and enforcement of the Settlement Agreement and Program, claimants (Capt Jay and Jason Zirlott) and their claims.   Clearly, in making a determination as to whether claim funds should be returned, the Court has subject matter and personal jurisdiction over these parties.

Present counsel for Capt Jay and Zirlott makes several arguments in opposition to the Special

---

[1]  Settlement Agreement § 18.1 ("[E]ach member of the Economic Class . . . and their Counsel are hereby deemed to have submitted irrevocably to the exclusive jurisdiction of this Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement.")

Master's motion for restitution.  First,  counsel argues that "marine debris removal" is part of the job of commercial fishermen such as Capt Jay and Zirlott.  As such, such income should be considered as eligible for supporting a claim for loss of commercial fishing revenue.  Second, counsel suggests that at most there was an innocent mistake by Mr. Zirlott, who has only a tenth grade education, in believing that his debris removal income qualified him to make a seafood compensation claim. Finally, Zirlott denies that he personally signed the sworn statements which were signed on his behalf by his then counsel pursuant to a power of attorney.

These arguments ignore the compensation criteria in the Seafood Compensation Program as set forth in the Settlement Agreement.  The Settlement Agreement's Shrimp Compensation Plan provides unambiguous criteria concerning compensation for loss of revenue from "shrimp landed in the Gulf Coast Areas."  (Settlement Agreement at Ex.10, at 21)  The Agreement requires such claimants to provide proof of "shrimp harvesting" revenue (not "fishing" revenue) through trip tickets showing "the volume of shrimp harvested and the sales price" or documents that "identify those components of gross revenue derived from commercial shrimp harvesting."  (Id. at 10)

Capt Jay and Zirlott did not simply present their tax returns to the Settlement Program, but also filed sworn statements affirming that all of the revenue shown on their 2009 tax return came only from commercial shrimp landings in the affected areas.  Zirlott and Capt Jay stated that they had $162,364 in revenue from "shrimp" landed in 2009, even though 80% of this revenue actually came from unrelated marine debris removal work.

Essentially conceding that his claims were paid based on false or incorrect information, Zirlott finally argues that he did not sign the sworn statements submitted on his behalf.  Rather, Zirlott says that the statements were signed by his former lawyer pursuant to a power of attorney.

Zirlott and Capt Jay, however, signed retainer agreements with their attorney and specifically authorized their attorney to sign claim documents such as the sworn statements.  The retainer agreements were filed with the Settlement Program in order to allow counsel to sign these documents on behalf of the claimants. Notably, Zirlott's claim of innocence is further belied by another document in the record.   Zirlott initially filed a claim for lost commercial fishing income with the GCCF, stating that he had revenues of $162,364 in 2009.  This  document was personally signed by Jason Zirlott.  Question 9 on the claim form asked:  "Please state the amount of income you declared on your tax returns *from sales of fish* for the past three years."   For 2009, Zirlott stated that he had earned  $162,364 "from the sales of fish".  (Rec. Doc. 13468-3)

Counsel for the claimants makes one additional argument.  Because the claims were analyzed and approved, first by the GCCF and later by the DHECC, counsel argues that the claims analysts failed to exercise reasonable vigilance in not discovering their misinformation.   The Court has previously rejected this same argument in the clawback order regarding Casey Thonn. (Rec. Doc. 12794 at 21-22).  As the Court observed in the Thonn Order,

> The Court's opinion is not swayed by Thonn's contention that the GCCF's hired investigators believed that Thonn's claims were reasonable, as that unrelated, independent investigation has no bearing on the instant motion. See Hazel-Atlas Glass, Co., 322 U.S. at 246 (prior failure to detect misconduct is not a license for the Court to turn a blind eye to fraud that will affect the public.) In Hazel-Atlas Glass Co., the Supreme Court did not find it relevant that the plaintiff did not detect the fraud, noting that even if the plaintiff "did not exercise the highest degree of diligence[, the defendant's] fraud cannot be condoned for that reason alone." Id. at 246. The rationale for this is rooted in the fact that the matter was not only a private issue, but rather concerned "issues of great moment to the public" and "involve[d] far more than an injury to a single litigant." Id. (" It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.") Here, Thonn's fraud undermines the integrity of the entire Settlement Program; therefore, while it is unfortunate that his misrepresentations were not detected earlier, such an oversight does not allow the Court to give Thonn a free pass now.

5

(Id.)

The Special Master has submitted uncontroverted and convincing evidence that the claims of Capt Jay and Zirlott were paid based on false information furnished to the Settlement Program. Capt Jay and Zirlott have not submitted any evidence to controvert the Special Master's evidence on this point. In light of this evidence and the claimants' failure to rebut it, the Court finds that the current record is sufficient to support a finding that these claimants committed fraud, without the necessity of an evidentiary hearing.

In light of this finding, it is both reasonable and proper under the terms of the Settlement Agreement to order Capt Jay, LLC and Jason Zirlott to make restitution for the funds that they received as a result of the fraudulent claims. It is well-accepted that one who receives a judgment through fraud is bound to make restitution, and even absent fraud, it is the general rule that when a judgment is reversed, restitution is required. Restatement (Third) of Restitution and Unjust Enrichment § 13 (2011) ("A transfer induced by fraud or material misrepresentation is subject to rescission and restitution. The transferee is liable in restitution as necessary to avoid unjust enrichment."); Wall v. Johnson, 80 So. 2d 362, 364 (Fla. 1955) (recognizing the general "rule that restitution may be required of amounts paid under a judgment that is subsequently reversed.") In fact, "[f]raud is one of the most common grounds of rescission." Restatement (Third) of Restitution and Unjust Enrichment § 13 (2011).

Therefore, restitution is proper. Since former counsel have already repaid their contingent attorneys' fees to the Settlement Program, restitution will be required of the balance due from Capt Jay, LLC and Jason Zirlott, in the amount of $239,519.32.

Further, in light of the finding of fraud committed by Capt Jay, LLC and Jason Zirlott, they

6

are precluded from any further participation or distributions in the Settlement Agreement's Seafood Compensation Program.

Accordingly,

**IT IS ORDERED** that the **Motion of the Special Master for Return of Payments Made to Capt Jay, LLC and Jason Zirlott (Rec. Doc. 13468)** is **GRANTED**.

The Special Master shall submit a proposed form for entry of a Final Judgment in accordance with this Order.

New Orleans, Louisiana, this 24th day of June, 2015.

_____
United States District Judge