CLOSED

# U.S. District Court [LIVE]
## Eastern District of TEXAS (Beaumont)
## CRIMINAL DOCKET FOR CASE #: 1:08-cr-00090-RC-ESH All Defendants

Case title: USA v. Tran

Date Filed: 06/04/2008
Date Terminated: 08/17/2009

Assigned to: Judge Ron Clark
Referred to: Magistrate Judge Earl S.
Hines

**Defendant (1)**

**Loc Chanh Tran**
*TERMINATED: 08/17/2009*
*also known as*
Victor Tran
*TERMINATED: 08/17/2009*

represented by **Loc Chanh Tran**
13837-078
TAFT
CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 7001
TAFT, CA 93268
PRO SE

**Jimmy Dee Hamm**
Law Offices of J. D. Hamm
1900 Broadway @ 3rd
Beaumont, TX 77701
409/813-1004
Fax: 409/813-1185
Email: jdhamm_1999@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Carl A Parker**
The Parker Law Firm
1 Plaza Square
Port Arthur, TX 77642
409/985-8814
Fax: 14099852833
Email: cparker714@aol.com
*ATTORNEY TO BE NOTICED*

**Thomas Lee Hanna**
Thomas L Hanna
P.O. Box 1384

519 14th St
Nederland, TX 77627
409/722-8200
Fax: 14097222399
Email: tomhannapc@aol.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| FALSE STATEMENTS TO U.S. GOVERNMENT (1) | 48 mos imprisonment, $10,000 fine, $542,389 restitution, 3 yrs supervised release, $100 special assessment |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| FALSE STATEMENTS TO U.S. GOVERNMENT (2-3) | Dismissed on govt motion |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

**Plaintiff**

**USA**                    represented by    **John Bulkley Ross**
U S Attorney's Office - Beaumont
350 Magnolia
Suite 150
Beaumont, TX 77701-2237
Jefferson
409/839-2538
Fax: 409/839-2550
Email: john.ross5@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Austin Wells**
U S Attorney's Office - Tyler
110 N. College

Ste 700
Tyler, TX 75702
903-590-1400
Fax: 903-590-1436
Email: robert.wells3@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/04/2008 | 1 | SEALED INDICTMENT as to Sealed1 (1) counts 1-3. (tkd, ) (Entered: 06/05/2008) |
| 06/04/2008 | 2 | E-GOV SEALED Form AO 257 filed as to Sealed1 (tkd, ) (Entered: 06/05/2008) |
| 06/06/2008 | 4 | MOTION for Detention by USA as to Loc Chanh Tran a/k/a Victor Tran.(sal) (Entered: 06/06/2008) |
| 06/06/2008 | 5 | NOTICE OF HEARING RESETTING Initial Appearance as to Sealed1 for 6/9/2008 11:00 AM in Ctrm 5 (Beaumont) before Magistrate Judge Keith F. Giblin. (ksd) (Entered: 06/06/2008) |
| 06/09/2008 | | Arrest of Loc Chanh Tran (tkd, ) (Entered: 06/10/2008) |
| 06/09/2008 | | INDICTMENT UNSEALED as to Loc Chanh Tran (tkd, ) (Entered: 06/10/2008) |
| 06/09/2008 | | ***Attorney update: added attorney Jimmy Dee Hamm for Loc Chanh Tran. (tkd, ) (Entered: 06/10/2008) |
| 06/09/2008 | 6 | Minute Entry for proceedings held before Magistrate Judge Keith F. Giblin: INITIAL APPEARANCE as to Loc Chanh Tran held on 6/9/2008. Deft appeared with retained atty Jimmy Hamm. Deft remanded to custody on order of temporary detention. (Court Reporter K Dean.) (tkd, ) (Entered: 06/10/2008) |
| 06/09/2008 | 7 | ORDER OF TEMPORARY DETENTION Pending Hearing as to Loc Chanh Tran. Signed by Magistrate Judge Keith F. Giblin on 6/9/08. (tkd, ) (Entered: 06/10/2008) |
| 06/09/2008 | 8 | NOTICE OF HEARING as to Loc Chanh Tran: Arraignment and Detention Hearing set for 6/12/2008 at 10:00 AM in Ctrm 5 (Beaumont) before Magistrate Judge Keith F. Giblin. (tkd, ) (Entered: 06/10/2008) |
| 06/09/2008 | 9 | E-GOV SEALED Arrest Warrant returned executed on 6/9/08 as to Loc Chanh Tran. (tkd, ) (Entered: 06/10/2008) |
| 06/12/2008 | | ***Attorney update in case as to Loc Chanh Tran. Attorney Thomas Lee Hanna for Loc Chanh Tran added. (tkd, ) (Entered: 06/16/2008) |
| 06/12/2008 | 10 | Minute Entry for proceedings held before Magistrate Judge Keith F. Giblin: ARRAIGNMENT as to Loc Chanh Tran for Counts 1-3 held on 6/12/2008. Deft appeared with additional counsel Tom Hanna, pled not guilty and was remanded to custody of USM. (Court Reporter K Dean.) (tkd, ) (Entered: 06/16/2008) |
| 06/12/2008 | 11 | ORDER - PRETRIAL DISCOVERY & INSPECTION as to Loc Chanh Tran. Signed by Magistrate Judge Keith F. Giblin on 6/12/08. (tkd, ) (Entered: 06/16/2008) |
| 06/12/2008 | 12 | PRETRIAL ORDER as to Loc Chanh Tran. Jury Selection and Trial set for 8/5/2008 at 9:00 AM and Final Pretrial Conference set for 8/4/2008 at 9:00 AM - all to be held in |

|  |  | Ctrm 2 (Beaumont) before Judge Ron Clark. Signed by Magistrate Judge Keith F. Giblin on 6/12/08. (tkd, ) (Entered: 06/16/2008) |
|---|---|---|
| 06/12/2008 | 13 | Minute Entry for proceedings held before Magistrate Judge Keith F. Giblin: DETENTION HEARING as to Loc Chanh Tran held on 6/12/2008. Deft remanded to custody of USM pending receipt of cash bond and selection of a suitable third-party custodian. A hearing will be held when deft has met these requirements. (Court Reporter K Dean.) (tkd, ) (Entered: 06/16/2008) |
| 06/12/2008 | 14 | WITNESS LIST by Loc Chanh Tran (tkd, ) (Entered: 06/16/2008) |
| 06/12/2008 | 15 | WITNESS LIST by USA as to Loc Chanh Tran (tkd, ) (Entered: 06/16/2008) |
| 06/16/2008 | 16 | NOTICE OF ATTORNEY APPEARANCE and Designation of Attorney in Charge. Thomas Lee Hanna appearing for Loc Chanh Tran, J.D. Hamm is attorney in charge. (tkd, ) (Entered: 06/17/2008) |
| 06/16/2008 | 17 | Minute Entry for proceedings held before Magistrate Judge Keith F. Giblin: BOND HEARING as to Loc Chanh Tran held on 6/16/2008. Bond was executed and deft was released. (Court Reporter K Dean.) (tkd, ) (Entered: 06/17/2008) |
| 06/16/2008 | 19 | E-GOV SEALED Secured Bond entered as to Loc Chanh Tran in the amount of $500,000, Receipt # 1-1-6061. cc: USA, Hamm, Tran 6/17/08 (tkd, ) (Entered: 06/17/2008) |
| 06/16/2008 | 20 | E-GOV SEALED ORDER Setting Conditions of Release as to Loc Chanh Tran. Signed by Magistrate Judge Keith F. Giblin on 6/16/08. cc: USA, Hamm, Tran 6/17/08 (tkd, ) (Entered: 06/17/2008) |
| 07/01/2008 | 21 | TRANSCRIPT of Excerpts of Detention Hearing as to Loc Chanh Tran held on 6-12-08 before Magistrate Judge Giblin. Court Reporter/Transcriber: Wendell Parks,Telephone number: 409-654-2834.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) business days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.txed.uscourts.gov**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/22/2008. Redacted Transcript Deadline set for 8/1/2008. Release of Transcript Restriction set for 9/29/2008. (wrp, ) (Entered: 07/01/2008) |
| 07/17/2008 | 22 | MOTION to Continue by Loc Chanh Tran. (Attachments: # 1 Text of Proposed Order) (Hamm, Jimmy) (Entered: 07/17/2008) |
| 08/04/2008 | 23 | ORDER TO CONTINUE - Ends of Justice as to Loc Chanh Tran. Time excluded from 7/17/08 until 9/9/08. This order grants 22 Motion to Continue. Jury Selection and Trial reset for 9/9/2008 at 9:00 AM and Final Pretrial Conference reset for 9/8/2008 at 9:00 AM. Signed by Judge Ron Clark on 8/1/08. (tkd, ) (Entered: 08/04/2008) |
| 08/04/2008 | 24 |  |

| | | |
|---|---|---|
| | | PRETRIAL ORDER as to Loc Chanh Tran. Signed by Judge Ron Clark on 8/1/08. (tkd, ) (Entered: 08/04/2008) |
| 08/25/2008 | 25 | MOTION to Continue by Loc Chanh Tran. (Attachments: # 1 Text of Proposed Order) (Hamm, Jimmy) (Entered: 08/25/2008) |
| 08/29/2008 | 26 | ORDER TO CONTINUE - Ends of Justice as to Loc Chanh Tran. Time excluded from 8/25/08 until 10/7/08. This order grants 25 Motion to Continue. Jury Selection and Trial reset for 10/7/2008 at 9:00 AM and Final Pretrial Conference reset for 10/6/2008 at 9:00 AM. Signed by Judge Ron Clark on 8/29/08. (tkd, ) (Entered: 08/29/2008) |
| 08/29/2008 | 27 | PRETRIAL ORDER as to Loc Chanh Tran. Signed by Judge Ron Clark on 8/28/08. (tkd, ) (Entered: 08/29/2008) |
| 09/30/2008 | 28 | ORDER TO CONTINUE - Ends of Justice and AMENDED PRETRIAL ORDER as to Loc Chanh Tran. Pursuant to General Order 08-11, time excluded from 9/16/08 until 11/4/08. Jury Selection and Trial reset for 11/4/2008 at 9:00 AM and Final Pretrial Conference reset for 11/3/2008 at 9:00 AM. Signed by Judge Ron Clark on 9/29/08. (tkd, ) (Entered: 09/30/2008) |
| 10/01/2008 | 29 | MOTION to Travel by Loc Chanh Tran. (Attachments: # 1 Text of Proposed Order) (Hamm, Jimmy) (Entered: 10/01/2008) |
| 10/01/2008 | 30 | Certificate of Conference re 29 MOTION to Travel. (Hamm, Jimmy) Modified on 10/3/2008 (tkd, ). (Entered: 10/01/2008) |
| 10/01/2008 | 31 | RESPONSE to Motion by USA as to Loc Chanh Tran re 29 MOTION to Travel (Ross, John) (Entered: 10/01/2008) |
| 10/02/2008 | 32 | Proposed Order re 29 MOTION to Travel. (Hamm, Jimmy) Modified on 10/3/2008 (tkd, ). (Entered: 10/02/2008) |
| 10/02/2008 | 33 | ORDER granting 29 Motion for Leave to Travel as to Loc Chanh Tran (1). Signed by Magistrate Judge Earl S. Hines on 10/2/08. (tkd, ) (Entered: 10/03/2008) |
| 10/20/2008 | 34 | MOTION to Continue by Loc Chanh Tran. (Attachments: # 1 Text of Proposed Order) (Hamm, Jimmy) (Entered: 10/20/2008) |
| 10/22/2008 | 35 | ORDER TO CONTINUE - Ends of Justice as to Loc Chanh Tran. Time excluded from 10/20/08 until 1/6/09. This order grants 34 MOTION to Continue. Jury Selection and Trial reset for 1/6/2009 at 9:00 AM and Final Pretrial Conference reset for 1/5/2009 at 9:00 AM. Signed by Judge Ron Clark on 10/21/08. (tkd, ) (Entered: 10/22/2008) |
| 10/22/2008 | 36 | PRETRIAL ORDER as to Loc Chanh Tran. Signed by Judge Ron Clark on 10/21/08. (tkd, ) (Entered: 10/22/2008) |
| 11/26/2008 | 37 | MOTION to Travel by Loc Chanh Tran. (Attachments: # 1 Text of Proposed Order) (Hamm, Jimmy) (Entered: 11/26/2008) |
| 11/26/2008 | 38 | ORDER granting 37 Motion to Travel as to Loc Chanh Tran (1). Signed by Magistrate Judge Earl S. Hines on 11/26/08. (tkd, ) (Entered: 11/26/2008) |
| 12/11/2008 | 39 | MOTION to Travel by Loc Chanh Tran. (Attachments: # 1 Text of Proposed Order) (Hamm, Jimmy) (Entered: 12/11/2008) |
| 12/12/2008 | 40 | |

| | | |
|---|---|---|
| | | ORDER denying 39 Motion for leave to travel as to Loc Chanh Tran (1). Signed by Magistrate Judge Earl S. Hines on 12/12/08. (tkd, ) (Entered: 12/12/2008) |
| 12/18/2008 | | Notice of Hearing: Change of Plea Hearing set for 1/5/2009 02:00 PM in Ctrm 4 (Beaumont) before Magistrate Judge Earl S. Hines.<br><br>ORAL ORDER as to Loc Chanh Tran - The government shall submit to the court all relevant plea documents two business days prior to the scheduled court proceeding. Signed by Magistrate Judge Earl S. Hines on 12/18/08. (ttp, ) (Entered: 12/18/2008) |
| 01/05/2009 | 41 | Minute Entry for proceedings held before Magistrate Judge Earl S. Hines: CHANGE OF PLEA HEARING held on 1/5/2009. Plea entered by Loc Chanh Tran (1): Guilty on Count 1. Deft continued on bond. (Court Reporter T Piper.) (tkd, ) (Entered: 01/06/2009) |
| 01/05/2009 | 42 | Waiver and CONSENT to Proceed Before U.S. Magistrate Judge for Entry of Guilty Plea by Loc Chanh Tran (tkd, ) (Entered: 01/06/2009) |
| 01/05/2009 | 43 | FACTUAL BASIS and Stipulation by USA as to Loc Chanh Tran. (tkd, ) (Entered: 01/06/2009) |
| 01/05/2009 | 44 | E-GOV Sealed PLEA AGREEMENT as to Loc Chanh Tran (tkd, ) (Entered: 01/06/2009) |
| 01/05/2009 | 45 | REPORT AND RECOMMENDATION on Plea of Guilty as to Loc Chanh Tran. Signed by Magistrate Judge Earl S. Hines on 1/5/09. (tkd, ) (Entered: 01/06/2009) |
| 01/06/2009 | 46 | ORDER adopting 45 Report and Recommendation on Guilty Plea as to Loc Chanh Tran. Deft is adjudged guilty on Count 1 of the Indictment. Signed by Judge Ron Clark on 1/6/09. (tkd, ) (Entered: 01/07/2009) |
| 04/08/2009 | 49 | E-GOV SEALED USPO Warrant returned executed on 4/8/09 as to Loc Chanh Tran. (tkd, ) (Entered: 04/09/2009) |
| 04/08/2009 | | Arrest of Loc Chanh Tran (tkd, ) (Entered: 04/13/2009) |
| 04/08/2009 | 50 | Minute Entry for proceedings held before Magistrate Judge Keith F. Giblin: INITIAL APPEARANCE re Revocation of Pretrial Release as to Loc Chanh Tran held on 4/8/2009. Deft remanded to custody of USM. (Court Reporter K Dean.) (tkd, ) (Entered: 04/13/2009) |
| 04/08/2009 | 51 | NOTICE OF HEARING as to Loc Chanh Tran: Preliminary Revocation Hearing set for 4/14/2009 at 3:00 PM in Ctrm 5 (Beaumont) before Magistrate Judge Keith F. Giblin. (tkd, ) (Entered: 04/13/2009) |
| 04/14/2009 | 52 | Minute Entry for proceedings held before Magistrate Judge Keith F. Giblin: PRELIMINARY REVOCATION HEARING as to Loc Chanh Tran held on 4/14/2009. Deft agreed to be detained and was remanded to custody of USM. (Court Reporter K Dean.) (tkd, ) (Entered: 04/16/2009) |
| 04/14/2009 | 53 | ORDER on Petition to Revoke Conditions of Pretrial Release as to Loc Chanh Tran. Deft's conditions are revoked. The petition is denied as moot without prejudice. Deft is ordered to be detained pending final resolution of this criminal proceeding. Signed by Magistrate Judge Keith F. Giblin on 4/14/09. (tkd, ) (Entered: 04/16/2009) |

| 05/06/2009 | 54 | MOTION for Extension of Time to File *Objections to Presentence Investigation Report* by Loc Chanh Tran. (Attachments: # 1 Text of Proposed Order)(Hamm, Jimmy) (Entered: 05/06/2009) |
| 05/06/2009 | | ORAL ORDER granting 54 Motion for Extension of Time to File as to Loc Chanh Tran (1). Objections to the Presentence Report shall be filed on or before May 20, 2009. Signed by Judge Ron Clark on May 6, 2009. (vjw, ) (Entered: 05/06/2009) |
| 05/20/2009 | 55 | **FILED IN ERROR. This document is Sealed Objections to PSI. Attorney will submit to the Clerk on a disc.**<br>OBJECTION to 45 Report and Recommendation by Loc Chanh Tran (Hamm, Jimmy) Modified on 5/20/2009 (tkd, ). (Entered: 05/20/2009) |
| 05/20/2009 | 56 | SEALED OBJECTIONS to Presentence Report by Loc Chanh Tran (tkd, ) (Entered: 05/21/2009) |
| 07/14/2009 | | eNOTICE as to Loc Chanh Tran: Sentencing set for 7/28/2009 01:30 PM in Ctrm 2 (Beaumont) before Judge Ron Clark. (fal, ) (Entered: 07/14/2009) |
| 07/14/2009 | 57 | ELEMENTS of the Offense by USA as to Loc Chanh Tran (Ross, John) (Entered: 07/14/2009) |
| 07/15/2009 | | eNOTICE as to Loc Chanh Tran: Sentencing RESET for 8/11/2009 01:30 PM in Ctrm 2 (Beaumont) before Judge Ron Clark. (fal, ) (Entered: 07/15/2009) |
| 08/07/2009 | 58 | **FILED IN ERROR. Document is missing exhibits.**<br>SEALED SENTENCING MEMORANDUM by Loc Chanh Tran (Hamm, Jimmy) Modified on 8/12/2009 (tkd, ). Modified on 8/12/2009 (tkd, ). (Entered: 08/07/2009) |
| 08/07/2009 | 59 | SEALED RESPONSE by USA as to Loc Chanh Tran re 56 Sealed Objections to Presentence Report (Attachments: # 1 Attachment A)(Ross, John) Modified on 8/10/2009 (tkd, ). (Entered: 08/07/2009) |
| 08/11/2009 | | SPECIAL ASSESSMENT PAID by Loc Chanh Tran in amount of $ 100.00, Receipt # 1-1-7596. (pkb, ) (Entered: 08/11/2009) |
| 08/11/2009 | 61 | Minute Entry for proceedings held before Judge Ron Clark: SENTENCING held on 8/11/2009 for Loc Chanh Tran (1). Count 1: 48 mos imprisonment, $10,000 fine, $542,389 restitution, 3 yrs supervised release, $100 special assessment. Count 2-3: Dismissed on govt motion. Deft remanded to the USM. (Court Reporter C Bickham.) (tkd, ) (Entered: 08/13/2009) |
| 08/11/2009 | 62 | EXHIBIT and WITNESS LIST of Loc Chanh Tran and USA (tkd, ) (Entered: 08/13/2009) |
| 08/11/2009 | 68 | SEALED PRESENTENCE INVESTIGATION REPORT (Sealed) as to Loc Chanh Tran (Attachments: # 1, # 2, # 3 )(fal, ) (Entered: 08/27/2009) |
| 08/11/2009 | 69 | SEALED PSI - SENTENCING RECOMMENDATION as to Loc Chanh Tran (fal, ) (Entered: 08/27/2009) |
| 08/12/2009 | 60 | SEALED SENTENCING MEMORANDUM by Loc Chanh Tran **(refiled at request of Clerk)** (Attachments: # 1 Exhibits A-C, # 2 Exhibit D, # 3 Exhibits E-H)(tkd, ) (Entered: 08/12/2009) |

| 08/12/2009 | | eNOTICE as to Loc Chanh Tran:Completion of Sentencing set for 8/13/2009 10:30 AM in Ctrm 2 (Beaumont) before Judge Ron Clark. (fal, ) (Entered: 08/12/2009) |
|---|---|---|
| 08/13/2009 | 63 | Minute Entry for proceedings held before Judge Ron Clark: COMPLETION OF SENTENCING held on 8/13/2009 for Loc Chanh Tran (1). Ct advised deft of right to appeal and stated reason for sentence imposed. Govt and deft made statements on the record. Deft remanded to the USM. (Court Reporter C Bickham.) (tkd, ) (Entered: 08/13/2009) |
| 08/17/2009 | 64 | JUDGMENT as to Loc Chanh Tran (1). Count 1: 48 mos imprisonment, $10,000 fine, $542,389 restitution, 3 yrs supervised release, $100 special assessment. Counts 2-3: Dismissed on govt motion. Signed by Judge Ron Clark on 8/17/09. (tkd, ) (Entered: 08/17/2009) |
| 08/17/2009 | 65 | SEALED Statement of Reasons re 64 Judgment. cc: USA, Hamm 8/17/09 (tkd, ) (Entered: 08/17/2009) |
| 08/19/2009 | 66 | NOTICE OF ATTORNEY APPEARANCE Robert Austin Wells appearing for USA. (Wells, Robert) (Entered: 08/19/2009) |
| 08/19/2009 | 67 | MOTION For Payment Of Restitution And Fine With Bond Money by USA as to Loc Chanh Tran. (Attachments: # 1 Text of Proposed Order)(Wells, Robert) (Entered: 08/19/2009) |
| 08/27/2009 | 70 | ORDER granting 67 Motion for payment of restitution and fine with bond money as to Loc Chanh Tran (1). Ordered that any money on deposit for the purposes of deft, criminal appearance bail bond, including the $500,000 cash deposit, be paid over to the US District Clerk for the Eastern District of TX to be applied toward payment of restitution and fine. Signed by Judge Ron Clark on 8/27/09. (tkd, ) (Entered: 08/28/2009) |
| 12/21/2009 | 71 | LETTER from Loc Chanh Tran requesting information on bond deposit (Mailed deft copies of #67 motion, #70 order and docket sheet 12/23/09) (tkd, ) (Entered: 12/23/2009) |
| 12/04/2013 | 73 | MOTION for Early Termination of Supervised Release by Loc Chanh Tran. (Attachments: # 1 Text of Proposed Order)(Parker, Carl) Modified on 12/6/2013 (tkd, ). (Entered: 12/04/2013) |
| 12/20/2013 | 74 | ORDER denying 73 Motion for early termination of supervised release as to Loc Chanh Tran (1). Signed by Judge Ron Clark on 12/20/13. (tkd, ) (Entered: 12/20/2013) |
| 11/17/2014 | 75 | Report and ORDER terminating supervision prior to the original expiration date as to Loc Chanh Tran. Signed by Judge Ron Clark on 11/8/14. (tkd, ) (Entered: 11/19/2014) |

| **PACER Service Center** | | | | |
|---|---|---|---|---|
| **Transaction Receipt** | | | | |
| 03/04/2015 13:45:38 | | | | |
| **PACER Login:** | ph0879:2808621:4042754 | **Client Code:** | 000001.00005.64213 | |
| **Description:** | Docket Report | | | |

| | | Search Criteria: | 1:08-cr-00090-RC-ESH |
|---|---|---|---|
| Billable Pages: | 6 | Cost: | 0.60 |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

**FILED**

P.M. ____June 4____ 20 08

DAVID J. MALAND, CLERK
U.S. DISTRICT COURT

By____td____

DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| VS. | * | CRIMINAL NO. 1:08-CR-90 |
| | * | Clark-Hines |
| LOC CHANH TRAN, a/k/a | * | |
| VICTOR TRAN | | |

## I N D I C T M E N T

### INTRODUCTION

At all times relevant to the indictment, the Small Business Administration (SBA) is an agency of the United States of America established by Congress to provide financial assistance to qualified small businesses to begin operations or expand their businesses.

The SBA Disaster Assistance Program is a program under which authorized eligible businesses located in a declared disaster area can apply for low-interest loans to help repair or replace damaged property to its pre-disaster condition. Eligibility under the Disaster Assistance Program is determined by satisfactory credit and repayment ability.

On or about September 24, 2005, a Presidential declaration of a major disaster was determined for certain areas of the states of Texas and Louisiana resulting from Hurricane Rita. In response to the disaster declaration, SBA offered low interest, fixed-rate loans to businesses in declared disaster areas to help them recover from physical damage and economic injury.

At all times relevant to the indictment, Titan Seafood Co. was a Nevada corporation

located in Port Arthur, Texas. **LOC CHANH TRAN, a/k/a VICTOR TRAN**, defendant herein applied to the SBA for disaster loan assistance in the amount of $2,800,000 on behalf of Titan Seafood Co..

## COUNT 1

On or about January 19, 2006, in the Eastern District of Texas and elsewhere, **LOC CHANH TRAN, a/k/a VICTOR TRAN**, defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the SBA, an agency of the United States Government, for the purpose of obtaining monetary disaster assistance offered to victims of Hurricane Rita, in that he submitted an SBA Form 5 Disaster Loan Application for Titan Seafood Co., which falsely represented an additional business location at 25191 Pintail Avenue, Abbeville, Louisiana, when in truth and in fact, as the defendant well knew, Titan Seafood Co. did not occupy the address listed on its application during the Hurricane Rita, in violation of Title 18, United States Code, Section 1001.

## COUNT 2

On or about January 26, 2006, in the Eastern District of Texas and elsewhere, **LOC CHANH TRAN, a/k/a VICTOR TRAN**, defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the SBA, an agency of the United States Government, for the purpose of obtaining monetary disaster assistance offered to victims of Hurricane Rita, in that he knowingly submitted to the SBA a fraudulent

Commercial Lease Agreement to represent that Titan Seafood Co. occupied the premises at 25191 Pintail Avenue, Abbeville, Louisiana, when in truth and in fact, as defendant well knew, Titan Seafood Co. did not occupy said premises, in violation of Title 18, United States Code, Section 1001.

## COUNT 3

On or about January 26, 2006, in the Eastern District of Texas and elsewhere, **LOC CHANH TRAN,** a/k/a VICTOR TRAN, defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the SBA, an agency of the United States Government, for the purpose of obtaining monetary disaster assistance offered to victims of Hurricane Rita, in that he submitted to the SBA fraudulent Aspen Builder & Repair Co. invoices to represent that Titan Seafood Co. had incurred more than $1,900,000 in hurricane-related repair expenses for the property located at 25191 Pintail Avenue, Abbeville, Louisiana, when in truth and in fact, as defendant well knew, said repair work was never performed by Aspen Builder & Repair Co., in violation of Title 18, United States Code, Section 1001.

A TRUE BILL

_____

GRAND JURY FOREPERSON

REBECCA GREGORY
UNITED STATES ATTORNEY
EASTERN DISTRICT OF TEXAS


JOHN B. ROSS
ASSISTANT U.S. ATTORNEY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA    \*

VS.    \*   CRIMINAL NO. 1:08-CR-90

   \*

LOC CHANH TRAN, a/k/a    \*
VICTOR TRAN

## **NOTICE OF PENALTY**

### **COUNTS 1 - 3**

Violation:      Title 18 , United States Code, Section 1001

Penalty:      Not more than five (5) years imprisonment; a fine of not more
than $250,000. A term of supervised release of not more than
three (3) years.

Special Assessment:      $100.00

TRANSCRIPT OF PROCEEDINGS

1

1    UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF TEXAS
2    BEAUMONT DIVISION

3    UNITED STATES OF AMERICA         )   CRIMINAL DOCKET NO.
                                      )   1:08-CR-90
4                                     )
                                      )
5    VS                               )   BEAUMONT, TEXAS
                                      )
6                                     )
                                      )
7    LOC CHANH TRAN, AKA VICTOR TRAN) JUNE 12, 2008
     DEFENDANT                        )   12:30 P.M.
8
     ************************************************************
9
            TRANSCRIPT OF EXCERPTS OF DETENTION HEARING
10                      VOLUME I OF I
            BEFORE THE HONORABLE KEITH GIBLIN
11             UNITED STATES MAGISTRATE JUDGE

12   ************************************************************

13   APPEARANCES:

14   FOR THE GOVERNMENT:          JOHN ROSS
                                  A.U.S.A.
15                                350 MAGNOLIA, SUITE 150
                                  BEAUMONT, TX 77701
16
     FOR THE DEFENDANT:           JIMMY DEE HAMM
17                                ATTORNEY AT LAW
                                  1900 BROADWAY @ 3RD
18                                BEAUMONT, TX 77701

19                                THOMAS L. HANNA
                                  ATTORNEY AT LAW
20                                519 14TH STREET
                                  NEDERLAND, TX 77627
21

22          PROCEEDINGS RECORDED BY TAPE RECORDER;

23          TRANSCRIPT PRODUCED BY TRANSCRIBER

24

25

TRANSCRIPT OF PROCEEDINGS

2

1                                    INDEX

2                            DIRECT  CROSS  REDIRECT
GOVERNMENT WITNESS:
3   JOE DUNCAN                   4     40     47

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1    JUNE 12, 2008                                    12: 26 P.M.

2                    *******************

3            MR. ROSS:   JUST IN THE INTEREST OF JUDICIAL ECONOMY,

4    AND NOTING THE HOUR, I WILL LET THE COURT KNOW THAT I INTEND TO

5    CALL ONE WITNESS.  HE WILL, HOWEVER, COVER A VAST AMOUNT, YOU

6    KNOW, PRESENT QUITE A BIT OF EVIDENCE TO THE COURT, AND IT'S

7    PRETTY TEDIOUS MATERIAL.

8            THE COURT:   OKAY.

9            MR. ROSS:   WITH THAT INTRODUCTION, JUDGE, I CALL JOE

10   DUNCAN --

11           THE COURT:   OKAY.

12           MR. ROSS:   -- WITH THE SBA.

13           THE COURT:   OKAY.   AGENT DUNCAN, HOW ARE YOU?

14           THE WITNESS:   PRETTY GOOD.

15           THE COURT:   COME ON UP, PLEASE.

16

17           JOE DUNCAN, GOVERNMENT WITNESS, SWORN

18

19           THE COURT:   AND I APPRECIATE THAT PROVISO, MR. ROSS,

20   AND WHICH WE'RE GOING THROUGH LUNCH TO MAKE SURE THAT WE

21   RESOLVE THIS MATTER EXPEDITIOUSLY.

22           BUT AGAIN, I GUESS MY PROVISO TO BOTH SIDES IS

23   THAT -- IS THAT THE GOVERNMENT CAN SHOW PROBABLE CAUSE AND, OF

24   COURSE, PUT ON EVIDENCE OF PROBABLE CAUSE, AND THE DEFENSE CAN

25   CROSS-EXAMINE REGARDING THAT PROBABLE CAUSE.   THAT'S WHAT WE'RE

4

1  HERE FOR IN A DETENTION HEARING.  BUT THERE'S BEEN AN

2  INDICTMENT IN THIS CASE, AND SO IF THE GOVERNMENT WISHES NOT TO

3  PUT ON EVIDENCE OF PROBABLE CAUSE, THE INDICTMENT HAS BEEN

4  ADMITTED IN THIS CASE.  SO --

5          MR. ROSS:  I FOLLOW YOU, JUDGE.  I'LL JUST SUBMIT TO

6  THE COURT THAT KIND OF THE WAY THESE SCHEMES -- THEY'RE FRAUD

7  SCHEMES, ALLEGED FRAUD SCHEMES, AND THEY'RE INTERRELATED.

8          THE COURT:  I UNDERSTAND.  I UNDERSTAND.  OKAY.

9  GOTCHA.

10                    DIRECT EXAMINATION

11 BY MR. ROSS:

12 Q.    SPECIAL AGENT DUNCAN, WOULD YOU INTRODUCE YOURSELF TO

13 THE COURT, PLEASE?

14 A.    MY NAME IS SPECIAL AGENT JOE DUNCAN.  I WORK FOR THE

15 UNITED STATES SMALL BUSINESS ADMINISTRATION, INSPECTOR

16 GENERAL'S OFFICE.

17 Q.    OKAY.  SPECIAL AGENT, HOW LONG HAVE YOU SERVED IN THAT

18 CAPACITY?

19 A.    TEN AND A HALF YEARS.

20 Q.    YOU'VE BEEN A SPECIAL AGENT WITH THE SBA?

21 A.    THAT'S CORRECT.

22 Q.    WHAT ARE YOUR DUTIES IN THAT JOB?

23 A.    AS A SPECIAL AGENT, I CONDUCT CRIMINAL, CIVIL AND

24 ADMINISTRATIVE INVESTIGATIONS INVOLVING SBA PROGRAMS, PRIMARILY

25 FRAUD INVESTIGATIONS.

5

1   Q.      OKAY.  AND IN THE COURSE OF YOUR WORK, HAVE YOU COME TO

2   BE FAMILIAR WITH AN INDIVIDUAL NAMED LOC CHANH TRAN, ALSO KNOWN

3   AS VICTOR TRAN?

4   A.      YES, I HAVE.

5   Q.      AND CAN YOU TELL ME IF HE'S IN THE COURTROOM TODAY?

6   A.      YES, HE IS.

7   Q.      CAN YOU POINT HIM OUT AND IDENTIFY AN ARTICLE OF

8   CLOTHING THAT HE'S WEARING?

9   A.      HE'S WEARING A YELLOW SUIT THERE.

10  Q.      OKAY.

11          MR. ROSS:  JUDGE, LET THE RECORD REFLECT HE'S

12  IDENTIFIED THE DEFENDANT.

13          THE COURT:  IT WILL SO REFLECT.

14  BY MR. ROSS:

15  Q.      SPECIAL AGENT, TELL THE COURT IF YOU WOULD HOW YOU FIRST

16  BECAME INVOLVED IN THE CASE OF THE UNITED STATES OF AMERICA

17  VERSUS LOC TRAN.

18  A.      OKAY.  IN THE LATE SUMMER, EARLY FALL OF 2006 I WAS

19  CONTACTED BY THE ATF AND INFORMED OF THEIR INVESTIGATION OF MR.

20  TRAN AND OTHER MEMBERS OF HIS FAMILY, AND THEY BELIEVED HE HAD

21  APPLIED FOR SOME SBA LOANS AND WANTED ME TO LOOK INTO IT.

22  Q.      OKAY.  WHAT KIND OF INVESTIGATION WAS IT THAT -- IF YOU

23  COULD TELL US.  DID YOU HAVE ANY -- WERE YOU GIVEN ANY KIND OF

24  OVERVIEW OF THE INVESTIGATION AT THAT POINT?

25  A.      YES.  AT THE TIME THEY CONTACTED ME, THEY HAD STARTED

6

1   INVESTIGATING THE TRAN FAMILY FOR AN ARSON THAT OCCURRED IN

2   PORT ARTHUR ON A PIECE OF WAREHOUSE PROPERTY.

3         AND AT THE TIME THEY HAD CONTACTED ME THEY ALSO BECAME

4   AWARE OF SOME BANK, BANK FRAUD ALLEGATIONS THAT WERE MADE

5   AGAINST THE TRAN FAMILY.

6   Q.    OKAY.  YOU'RE REFERRING TO THE BANK FRAUD ALLEGATIONS

7   THAT RELATE TO A BANK IN THE LUFKIN AREA AND TWO BANKS IN THE

8   HOUSTON AREA?

9   A.    THAT'S CORRECT.

10  Q.    ALL RIGHT.  SO ALL THIS IS HAPPENING THERE AT THE

11  BEGINNING.

12        WHAT DID THEY ASK YOU TO DO, SPECIAL AGENT?

13  A.    THEY ASKED ME TO SEE IF THE TRAN FAMILY HAD APPLIED FOR

14  ANY SBA LOANS, SBA-GUARANTEED LOANS, AND TO LOOK INTO THAT.

15        AND THEY PROVIDED ME THE NAMES OF CERTAIN MEMBERS OF THE

16  TRAN FAMILY THAT THEY WERE INVESTIGATING.

17  Q.    OKAY.  AND WHAT DID YOU DO NEXT?

18  A.    I ACCESSED THE SBA LOAN DATA BASE, WHICH WE KEEP

19  INFORMATION ON DISASTER LOANS AS WELL AS BUSINESS LOANS THAT

20  ARE MADE BY LENDERS AND GUARANTEED BY THE SBA, AND I IDENTIFIED

21  APPROXIMATELY TWELVE LOANS OR LOAN APPLICATIONS THAT WERE FILED

22  BY MEMBERS OF THE TRAN FAMILY.

23  Q.    OKAY.  IF YOU WOULD, JUST BRIEFLY TELL US WHAT AN SBA

24  DISASTER LOAN IS.

25  A.    OKAY.  THE SBA HAS WHAT'S CALLED DISASTER LOAN PROGRAMS,

7

1   WHERE THEY PROVIDE DIRECT LOANS TO BUSINESSES AND ALSO

2   HOMEOWNERS WHO SUFFERED DAMAGES AS A RESULT OF

3   PRESIDENTIAL-DECLARED DISASTERS.

4          AS IT RELATES TO THIS CASE, WE PROVIDED MANY DIRECT

5   LOANS TO VICTIMS OF HURRICANE RITA.

6   Q.     ALL RIGHT.  AND WITH REGARD TO YOUR INQUIRY ON THOSE

7   TRAN FAMILY MEMBERS, TELL THE COURT WHAT YOU FOUND.

8   A.     OKAY.  WELL, OUT OF THE LOANS THAT I FOUND, I

9   IDENTIFIED -- ABOUT HALF OF THEM WERE BUSINESS LOANS THAT WERE

10  MADE BY LENDERS AND GUARANTEED BY THE SBA, AND THE OTHER HALF

11  WERE DISASTER -- DIRECT LOANS BY THE SBA DISASTER LOANS.

12  Q.     OKAY.  AND HOW MANY OF THESE --

13         IN TOTAL, HOW MANY LOANS DID YOU FIND THAT WERE

14  ATTRIBUTED TO THE TRANS?

15  A.     APPROXIMATELY TEN TO TWELVE.

16  Q.     TEN TO TWELVE?

17  A.     UH-HUH.

18  Q.     AND ROUGHLY HALF OF THOSE WERE DISASTER LOANS AND HALF

19  OF THEM WERE KIND OF THE COMMON SBA BUSINESS LOANS THAT WE

20  THINK OF WHEN WE THINK OF THE SBA, CORRECT?

21  A.     THAT'S CORRECT.

22  Q.     OKAY.  WHAT DID YOU DO NEXT?

23  A.     I REQUESTED THE LOAN FILES FROM THE SBA AND ALSO FROM

24  THE LENDERS WHO HAD MADE THE SBA-GUARANTEED LOANS, AND I

25  REVIEWED THE LOAN DOCUMENTATION.

1  Q.     ALL RIGHT.  AND YOU DID THAT FOR ALL OF THE SBA FILES

2  THAT WERE IMPLICATED?

3  A.     THAT'S CORRECT.

4  Q.     WITH REGARD TO THIS DEFENDANT, LOC TRAN, HOW MANY SBA

5  LOANS WERE DIRECTLY RELATED TO LOC TRAN?

6  A.     I IDENTIFIED THREE DISASTER LOAN APPLICATIONS THAT WERE

7  DIRECTLY RELATED TO HIM AND THAT THEY HAVE HIS SIGNATURE ON IT.

8         I IDENTIFIED SOME OTHER LOANS WHERE THERE WAS

9  DOCUMENTATION IN THERE THAT APPEARED TO BE RELATED TO HIM, BUT

10 THEY WEREN'T LOANS THAT WERE MADE IN HIS NAME.

11 Q.     OKAY.  AND SO YOU FOUND THREE, THREE LOANS IN WHICH LOC

12 TRAN WAS THE APPLICANT PER SE, CORRECT?  IS THAT -- IS THAT

13 FAIR?

14 A.     HE SIGNED THREE APPLICATIONS.  HE DIDN'T PUT HIS NAME ON

15 AS THE APPLICANT.

16 Q.     WOULD THAT BE THE OWNER OF THE COMPANY?

17 A.     RIGHT, THE OWNER OF THE COMPANY WOULD HAVE BEEN THE

18 APPLICANT.

19 Q.     OKAY.  ON HIS THREE SBA DISASTER LOANS, WHO DID HE LIST

20 AS THE HUNDRED PERCENT OWNER OF THE CORPORATIONS INVOLVED?

21 A.     A LADY BY THE NAME OF -- AND I'M NOT SURE IF I'M

22 PRONOUNCING IT RIGHT -- HOAN TRAN.

23 Q.     OKAY.  AND WHO DID HE INDICATE TO YOU, OR TO THE SBA IN

24 THOSE APPLICATIONS, WHO DID HE SAY THAT WAS?

25 A.     HE TOLD LOAN OFFICERS AT THE SBA THAT THAT WAS HIS

1  SISTER.

2  Q.    OKAY.  WELL, DID YOU FIND OUT THROUGH YOUR INVESTIGATION

3  WHO THAT INDIVIDUAL WAS?

4  A.    YEAH.  WE FOUND OUT THAT THAT INDIVIDUAL IS ACTUALLY HIS

5  SPOUSE, HIS WIFE.

6  Q.    OKAY.  YOU DETERMINED THAT SHE'S ACTUALLY HIS WIFE?

7  A.    UH-HUH.

8  Q.    AND SHE WAS LISTED AS THE HUNDRED PERCENT OWNER OF THE

9  CORPORATIONS IN THE THREE LOANS?

10  A.    THAT'S CORRECT.

11  Q.    WHAT WERE THE NAMES OF THE CORPORATIONS THAT WE'RE

12  TALKING ABOUT ON THESE THREE LOANS?

13  A.    PLEASURE ISLAND SHRIMP HOUSE, TITAN SEAFOOD COMPANY AND

14  CRYSTAL SEAFOOD COMPANY.

15  Q.    OKAY.

16         THE COURT:  WHAT WAS THE SECOND ONE?  I'M SORRY.

17         THE WITNESS:  TITAN SEAFOOD COMPANY.

18         THE COURT:  TITAN AND CRYSTAL?

19         MR. ROSS:  TITAN, CRYSTAL, AND THEN PLEASURE ISLAND

20  SEAFOOD HOUSE, AND WE CAN --

21         IF IT'S ALL RIGHT WITH THE COURT, JUDGE, WE'LL REFER

22  TO THAT AS PISH.

23         THE COURT:  OKAY.

24         MR. ROSS:  OKAY?  P-I-S-H.

25  BY MR. ROSS:

10

1    Q.    DID YOU DETERMINE --

2          AND LET'S START WITH THE INDICTMENT IN THIS PARTICULAR

3    CASE, THE TITAN SEAFOOD SBA DISASTER LOAN.

4          WITH REGARD TO THE TITAN SEAFOOD SBA DISASTER LOAN, WHAT

5    DID YOU -- WHAT DID YOU FIND OUT IN YOUR INVESTIGATION?

6    A.    I REVIEWED THE LOAN DOCUMENTS, WHERE MR. TRAN HAD SIGNED

7    THE APPLICATION, ESTIMATING THAT HE -- THAT TITAN SEAFOOD

8    SUFFERED APPROXIMATELY TWO AND A HALF MILLION IN DAMAGE TO

9    PROPERTY THAT THE COMPANY OWNED IN ABBEVILLE, LOUISIANA.

10   Q.    OKAY.  AND ACTUALLY, THAT'S --

11         YOU SAID APPROXIMATELY --

12         IT WAS 2.8 MILLION DOLLARS THAT WAS BEING SOUGHT IN THAT

13   APPLICATION, CORRECT?

14   A.    THAT SOUNDS CORRECT, YEAH, APPROXIMATELY 2.8.

15   Q.    OKAY.  2.5 YOU SAID?

16   A.    UH-HUH.

17   Q.    TITAN SEAFOOD, WHAT --

18         DID YOU INVESTIGATE THE NATURE OF THESE CORPORATIONS?

19   FOR INSTANCE, WERE THEY INCORPORATED?

20   A.    YEAH, TITAN SEAFOOD COMPANY WAS INCORPORATED.

21   Q.    WHERE, DO YOU REMEMBER?

22   A.    IN THE STATE OF NEVADA.

23   Q.    OKAY.  AND THE OTHER TWO CORPORATIONS WERE --

24   A.    ALSO INCORPORATED IN NEVADA.

25   Q.    AND WHAT WERE THE LOCATIONS --

1       AND YOU --

2       AND DID YOU RESEARCH, DO RESEARCH AND OBTAIN THE FILING

3   DOCUMENTS AND WHATNOT ON THE CORPORATIONS?

4   A.      YES, I DID.

5   Q.      OKAY.  AND DID YOU DETERMINE THE PRINCIPAL ADDRESSES OF

6   THOSE CORPORATIONS?

7   A.      TO SOME DEGREE, YEAH.  THERE WERE P.O. BOX ADDRESSES IN

8   NEVADA.  THERE WAS A P.O. BOX ADDRESS IN PORT ARTHUR.  THERE

9   WAS THE MARTIN LUTHER KING BOULEVARD ADDRESS IN PORT ARTHUR,

10  TEXAS.

11  Q.      OKAY.  THERE WAS AN MLK ADDRESS IN TEXAS.  WAS THAT

12  COMMON TO ALL THE CORPORATIONS?

13  A.      YES.

14  Q.      OKAY.  SO THESE THREE CORPORATIONS, THEY ALL HAD AN

15  ADDRESS ON MLK, THE SAME ADDRESS ON MLK IN PORT ARTHUR?

16  A.      I'M NOT A HUNDRED PERCENT SURE ABOUT THAT.

17  Q.      OKAY.  TO THE BEST OF OF YOUR RECOLLECTION?

18      OKAY.  DID YOU DETERMINE WHO CONTROLLED THOSE

19  CORPORATIONS BASED ON THE CORPORATE DOCUMENTS YOU REVIEWED?

20  A.      BASED ON THE CORPORATE DOCUMENTS I REVIEWED, PRIMARILY

21  THE FILINGS WERE DONE BY LOC TRAN.

22      IN SOME CASES TUAN TRAN'S NAME WAS LISTED AS THE

23  PRESIDENT OF THOSE COMPANIES.

24  Q.      OKAY.  WHO IS TUAN TRAN?

25  A.      HE IS THE BROTHER OF LOC TRAN, THE DEFENDANT.

1  Q.     AND THAT'S SPELLED T-U-A-N?

2  A.     T-U-A-N.

3  Q.     AND LOC ALSO GOES -- DID YOU DETERMINE ALSO HE USES THE

4  NAME VICTOR?

5  A.     YES.

6  Q.     AND, IN FACT, ON THOSE THREE APPLICATIONS WE'RE TALKING

7  ABOUT, TITAN SEAFOOD, PISH AND CRYSTAL, DID HE USE THE NAME

8  VICTOR TRAN?

9  A.     YES.

10  Q.     WITH REGARD TO TUAN TRAN, HOW MANY OTHER --

11         HOW MANY SBA LOANS, OR CAN YOU TELL ME, WERE

12  ATTRIBUTABLE TO TUAN TRAN DIRECTLY?

13  A.     TUAN TRAN HAD TWO SBA-GUARANTEED BUSINESS LOANS IN HIS

14  NAME, WHICH WERE LOANS MADE BY THE BUSINESS LOAN CENTER TO

15  PURCHASE SHRIMP BOATS.

16         HE ALSO HAD A DISASTER LOAN APPLICATION THAT WAS FILED

17  IN HIS NAME FOR A COMPANY CALLED PLATINUM SEAFOOD.

18  Q.     OKAY.

19  A.     AND OUR INVESTIGATION ALSO REVEALED THAT HE HAD SEVERAL

20  FEMA CLAIMS FILED IN HIS NAME AS WELL.

21  Q.     OKAY.  CAN YOU TELL THE COURT TODAY HOW MANY OTHER NAMES

22  CAME UP RELATIVE TO THE OTHER SBA LOANS THAT SURFACED THAT WERE

23  ATTRIBUTABLE TO THE TRANS THAT YOU FOUND?

24  A.     BESIDES TUAN TRAN AND VICTOR TRAN, THERE WAS ALSO SBA

25  LOANS TO AN INDIVIDUAL NAMED CHOW NGUYEN.

1  Q.    OKAY.

2  A.    WHO WE KNOW TO BE THE BROTHER-IN-LAW OF VICTOR TRAN,

3  MARRIED TO VICTOR'S SISTER.

4  Q.    ALL RIGHT.  WHAT ABOUT VINH TRAN?

5  A.    VINH TRAN, WE ALSO IDENTIFIED AN SBA LOAN APPLICATION.

6  Q.    OKAY.  AND VINH IS SPELLED V-I-N-H, CORRECT?

7  A.    CORRECT.

8  Q.    AND THEN HOW IS VINH RELATED TO LOC TRAN?

9  A.    HE'S LOC'S BROTHER.

10 Q.    AND HE ALSO GOES BY --

11 A.    HE ALSO GOES BY VINSON TRAN.

12 Q.    VINSON?  OKAY.  FOR PURPOSES OF OUR HEARING FROM HERE ON

13 OUT WE'LL REFER TO THEM BY THEIR VIETNAMESE NAMES.  OKAY?

14 A.    OKAY.

15 Q.    TO AVOID CONFUSION.

16       WITH REGARD TO THE PLEASURE ISLAND SEAFOOD HOUSE, THE

17 PISH SBA DISASTER LOAN, HOW MUCH MONEY WAS LOC TRAN SEEKING ON

18 THAT APPLICATION?

19 A.    IT WAS OVER SEVEN MILLION.  I DON'T KNOW.  LET ME SEE IF

20 I CAN FIND THE EXACT.

21       IT WAS ROUGHLY -- A LITTLE BIT OVER SEVEN MILLION.  I

22 DON'T KNOW.

23 Q.    OKAY.  IN EXCESS OF SEVEN MILLION?

24       WHAT ABOUT THE CRYSTAL SEAFOOD APPLICATION?

25 A.    THE CRYSTAL SEAFOOD WAS 1.5 MILLION.

1    Q.       ALL RIGHT.  IF YOU WOULD, SUMMARIZE FOR THE COURT,

2    SPECIAL AGENT, KIND OF THE OVERLAP THAT YOU IDENTIFIED BETWEEN

3    THESE VARIOUS FAMILY MEMBERS AND SBA LOAN APPLICATIONS.

4    A.       AFTER REVIEWING THE DISASTER LOAN APPLICATIONS AND THE

5    BUSINESS LOAN APPLICATIONS, ONE OF THE COMMON THREADS THAT WE

6    STARTED TO FIND THROUGHOUT THE LOAN FILES WERE INVOICES THAT

7    WERE SUBMITTED FROM PISH TO THESE COMPANIES THAT ARE APPLYING

8    FOR LOANS IN ORDER TO SHOW THAT THESE COMPANIES MAKE REVENUE

9    AND HAVE THE ABILITY TO REPAY THE LOANS THAT THEY'RE APPLYING

10   FOR.

11   Q.       OKAY.  SO YOU FOUND INVOICES THAT WERE ATTRIBUTED TO

12   PISH?  SO THERE'S -- THE COMMONALITY WAS THE PISH LOCATION ON

13   MLK?

14   A.       THAT'S --

15   Q.       ONE COMMONALITY?

16   A.       IN SOME CASES IT WAS TITAN SEAFOOD THAT THEY WOULD

17   PROVIDE INVOICES FOR.  BUT PRIMARILY IT WAS PISH THOUGH.

18   Q.       BUT IT WAS ALWAYS THE SAME MLK ADDRESS, CORRECT?

19   A.       RIGHT.

20   Q.       OKAY.  WHAT ABOUT ALLIANCE --

21            WHAT'S THE SIGNIFICANCE OF THAT TO YOU, SPECIAL AGENT,

22   IN YOUR EXPERIENCE AND TRAINING?

23   A.       WELL, WHENEVER WE INVESTIGATE LOAN APPLICATIONS, WE

24   ALWAYS HAVE TO DETERMINE AFFILIATIONS BETWEEN THE BORROWER AND

25   OTHER COMPANIES, BECAUSE WE HAVE TO TAKE INTO ACCOUNT THEIR

1    AFFILIATIONS FOR -- TO DETERMINE IF THEY'RE REALLY SMALL AND

2    ELIGIBLE FOR SBA LOANS, AND ALSO TO DETERMINE WHAT THEIR

3    REPAYMENT ABILITY IS, AND HOW MANY COMPANIES ARE GOING TO BE

4    GUARANTEEING THIS LOAN BY WHO THEY'RE AFFILIATED WITH.

5          SO -- SO THAT INDICATES TO ME THAT THERE IS AN

6    AFFILIATION BETWEEN ALL THESE COMPANIES.

7    Q.    WITH REGARD TO THE TITAN SEAFOOD DISASTER LOAN --

8          WELL, BEFORE THAT, WERE THERE OTHER BUSINESS INVOICES

9    THAT WERE -- THAT YOU FOUND THAT WERE SUBMITTED TO SUPPORT

10   THESE VARIOUS APPLICATIONS THAT WERE COMMON TO ALL THE LOANS?

11   A.    YEAH.  I CAN'T SAY ALL, BUT VIRTUALLY ALL -- WE -- THERE

12   WERE INVOICES IN THERE TO JUSTIFY HURRICANE DAMAGE FROM A

13   COMPANY CALLED ASPEN BUILDER.

14   Q.    ASPEN BUILDERS?

15   A.    UH-HUH.

16   Q.    AND DO YOU HAVE KNOWLEDGE NOW, AS THIS INVESTIGATION HAS

17   CONTINUED BY ALL THE AGENCIES INVOLVED --

18         DID YOU EVER --

19         HAS ANYONE EVER FOUND THE COMPANY, ASPEN BUILDERS?  IS

20   THAT BELIEVED TO BE A FICTITIOUS COMPANY?

21   A.    I BELIEVE SO.  THERE WAS A GENTLEMAN WHO WAS INTERVIEWED

22   WHO WAS SUPPOSEDLY THE OWNER OF ASPEN BUILDER.  THE ATF

23   INTERVIEWED HIM.

24   Q.    OKAY.  IS THAT RICHARD GILMORE?

25   A.    THAT'S CORRECT.

1  Q.      AND ARE YOU AWARE THAT HE DENIED ANY ASSOCIATION OR

2  KNOWLEDGE OF ASPEN BUILDERS?

3  A.      THAT'S CORRECT.

4  Q.      OKAY.   SO THERE'S ASPEN BUILDER INVOICES THAT SUPPORT --

5  TO JUSTIFY THE DOLING OUT OF THIS MONEY ON VIRTUALLY ALL OF

6  THESE TEN OR TWELVE SBA APPLICATIONS, CORRECT?

7  A.      ON THE DISASTER LOAN APPLICATIONS.

8  Q.      OKAY.

9  A.      NOT ON THE BUSINESS LOAN APPLICATIONS.

10  Q.      OKAY.   WERE THERE OTHER --

11         ARE THERE OTHER COMMONALITIES THAT YOU CAN THINK OF

12  RIGHT NOW BETWEEN THE LOANS AND THE LOAN APPLICATIONS?  I'M

13  SORRY?

14  A.      WELL, I WOULD REVIEW ONE APPLICATION, FOR EXAMPLE,

15  PLEASURE ISLAND, AND I WOULD SEE DOCUMENTATION IN THERE FROM

16  TITAN.  IF I REVIEWED THE TITAN APPLICATION, I WOULD SEE

17  DOCUMENTATION FROM ONE OF THE OTHER ENTITIES.  BUT I CAN'T SAY

18  SPECIFICALLY WHAT WAS INCLUDED ON EVERY SINGLE APPLICATION.

19  Q.      WHAT ABOUT THE NAMES OF THE INDIVIDUALS?

20  A.      THE INDIVIDUALS ON --

21         THE PRIMARY PLAYERS WERE ALWAYS TUAN TRAN, VINH TRAN,

22  LOC TRAN.

23         AND THERE WERE A COUPLE OF LOANS THAT INVOLVED CHOW

24  NGUYEN.

25         AND THERE WERE A COUPLE OF LOANS THAT INVOLVED AMANDA

1  LE, WHO IS THE GIRLFRIEND OF VINH TRAN.

2  Q.    OKAY.  SO WE'RE TALKING ABOUT FAMILY MEMBERS AND CLOSE

3  ASSOCIATES.

4       YOU JUST MENTIONED AMANDA LE, LAST NAME L-E?

5  A.    THAT'S CORRECT.

6  Q.    ALL RIGHT.  SPECIFICALLY ON THE TITAN SEAFOOD DISASTER

7  LOAN APPLICATION, TELL THE COURT WHAT FALSE STATEMENTS YOU

8  DETERMINED TO HAVE BEEN MADE IN THIS APPLICATION.

9  A.    AFTER REVIEWING THE TITAN SEAFOOD APPLICATION, I

10 DETERMINED THAT LOC TRAN SUBMITTED TO THE SBA LOSS VERIFIER A

11 FALSE COMMERCIAL LEASE AGREEMENT.

12      I ALSO DETERMINED THAT A -- IT WAS A BILL OF SALE OR A

13 POWER OF ATTORNEY FROM THE TRUE OWNER OF THE ABBEVILLE -- OF

14 THE PROPERTY THAT WAS REPRESENTED TO BE DAMAGED BY THE

15 HURRICANE.  HE PROVIDED DOCUMENTS FROM THE OWNER OF THAT

16 PROPERTY, SAYING THAT THEY THEY HAD TRANSFERRED THAT PROPERTY

17 TO TITAN SEAFOOD, AND I DETERMINED THOSE DOCUMENTS WERE FALSE.

18 Q.    OKAY.  SO IN THIS APPLICATION THAT LOC TRAN SUBMITTED ON

19 BEHALF OF THE TITAN SEAFOOD CORPORATION, THE ADDRESS THAT WAS

20 GIVEN WAS THIS ABBEVILLE ADDRESS, CORRECT?

21 A.    THAT'S CORRECT.

22 Q.    AND REPRESENTATIONS WERE MADE TO THE SBA THAT LOC TRAN

23 AND TITAN SEAFOOD OWNED THIS PROPERTY IN ABBEVILLE?

24 A.    THAT'S CORRECT.

25 Q.    OKAY.  WHAT DID YOU DO?  DID YOU CONTACT THE OWNER OF

Case 1:08-cr-00090-RC-ESH Document 21 Filed 07/01/08 Page 18 of 48 PageID #: 54
Case 2:10-cv-02479-CJB-DPC Document 147677-1 Filed 06/26/15 Page 32 of 62
TRANSCRIPT OF PROCEEDINGS

18

1    THE PROPERTY IN ABBEVILLE?

2    A.    YES, I DID.

3    Q.    WHO IS THAT?

4    A.    HER NAME IS CHRISTINE HO.

5    Q.    WHAT DID MS. HO TELL YOU?

6    A.    SHE TOLD ME THAT SHE OWNED THE ABBEVILLE PROPERTY AT THE

7    TIME HURRICANE RITA STRUCK LOUISIANA, AND THAT HER PROPERTY WAS

8    IN BANKRUPTCY AT THE TIME, AND SHE WAS CONTACTED BY LOC TRAN.

9    HE WAS INQUIRING TO PURCHASE THE PROPERTY.  BUT HE --

10        SHE PROVIDED HIM SOME DOCUMENTATION THAT HE WANTED ON

11   THE PROPERTY DURING THIS INQUIRY, AND THEN SHE NEVER HEARD FROM

12   HIM AGAIN, AND SHE NEVER SOLD HIM THE PROPERTY.

13        SHE ALSO TOLD ME THAT HE NEVER OCCUPIED THE PROPERTY AND

14   TITAN SEAFOOD NEVER OCCUPIED THAT PROPERTY.

15   Q.    ALL RIGHT.  WELL, WAS THERE AN SBA LOAN VERIFIER

16   ASSIGNED TO THIS FILE?

17   A.    YES, THERE WAS.

18   Q.    OKAY.  IS THAT PAR BENSTROM?

19   A.    YES.

20   Q.    AM I PRONOUNCING THAT CORRECTLY?

21   A.    PAR BENSTROM.

22   Q.    OKAY.  AND DID YOU DETERMINE IN YOUR INVESTIGATION THAT

23   PAR BENSTROM ACTUALLY WENT OUT TO THE LOCATION THERE IN

24   ABBEVILLE WITH LOC TRAN?

25   A.    YES.  I INTERVIEWED PAR BENSTROM, AND HE TOLD ME THAT HE

Case 2:10-md-02179-CJB-DPC   Document 14767-1   Filed 06/26/15   Page 19 of 46   PageID #: 55
Case 1:08-cr-00090-RC-ESH   Document 21   Filed 07/01/08   Page 19 of 48   PageID #: 55
TRANSCRIPT OF PROCEEDINGS

19

1  MET UP WITH LOC TRAN AND FOLLOWED HIM OUT TO THE PROPERTY IN

2  ABBEVILLE, LOUISIANA.

3       AND AT THAT TIME LOC TRAN TOLD HIM THAT HE HAD ALL THIS

4  PROPERTY, PERSONAL PROPERTY AT THE PREMISES, YOU KNOW, WHEN THE

5  HURRICANE HIT, AND LIKE TRAILERS OF SHRIMP WERE WASHED AWAY IN

6  THE SEA, AND THAT'S WHAT HE WAS CLAIMING TO BE HIS HURRICANE

7  DAMAGE.

8  Q.    SO LOC TRAN ACTUALLY TOOK THIS LOSS VERIFIER ON TO THE

9  PROPERTY THERE IN ABBEVILLE AND REPRESENTED TO THAT VERIFIER

10  THAT THAT WAS HIS PROPERTY, AND FURTHERMORE, THAT THESE A, B

11  AND C THINGS WERE DAMAGED AND LOST?

12  A.    THAT'S CORRECT.  AND THE VERIFIER NEEDED EVIDENCE THAT

13  TITAN SEAFOOD EITHER OWNED OR OCCUPIED THAT PREMISES, AND

14  THAT'S WHEN HE WAS PROVIDED WITH A COPY OF THAT FALSE LEASE

15  AGREEMENT.

16  Q.    OKAY.  AND HOW WAS THE FALSE LEASE AGREEMENT FALSE?

17  WHAT WAS WRONG WITH THAT LEASE AGREEMENT?  TELL THE COURT.

18  A.    WELL, THE LEASE AGREEMENT WAS ACTUALLY BETWEEN THE OWNER

19  OF THE PROPERTY, CHRISTINE HO, AND A TENANT THAT SHE HAD LEASED

20  THE PROPERTY TO BEFORE LOC TRAN BEGAN INQUIRING ABOUT BUYING

21  IT, TO AN INDIVIDUAL, TUN DAN DOE, WHO LEASED IT FOR MAYBE TWO

22  MONTHS AND THEN DIDN'T PAY -- STOPPED PAYING RENT, AND SHE HAD

23  HIM EVICTED.

24       AND BASICALLY WHAT THE LEASE AGREEMENT --

25       THERE WAS --

1    TITAN SEAFOOD WAS --

2    TITAN SEAFOOD'S OWNER, HOAN TRAN, WAS HANDWRITTEN ON TO

3    THE LEASE AGREEMENT AS THE LESSEE AND PROVIDED TO THE SBA LOSS

4    VERIFIER.

5    Q.    OKAY.  AND SO ON ITS FACE IT WAS A --

6    DID YOU CONFIRM WITH MS. HO THAT THIS WAS A VALID

7    CONTRACT THAT SHE WAS A PARTY TO?

8    A.    YES.

9    Q.    OR HAD BEEN A PARTY TO?

10   AND ON THE FRONT OF THE --

11   IN THE BEGINNING OF THE DOCUMENT, WHERE IT LISTS THE

12   PARTIES TO THE AGREEMENT, WHOSE NAME IS WRITTEN INTO THE

13   AGREEMENT?

14   A.    HANDWRITTEN INTO THE AGREEMENT WAS HOAN TRAN.

15   Q.    AND AGAIN, TELL THE COURT WHO THAT IS.

16   A.    THAT IS THE WIFE, WE BELIEVED TO BE THE WIFE OF LOC

17   TRAN.

18   Q.    WHO WAS REPRESENTED TO THE SBA TO BE HIS SISTER?

19   A.    WHO WAS REPRESENTED TO THE SBA AS A SISTER, AND ALSO

20   REPRESENTED TO BE THE PRESIDENT OF TITAN SEAFOOD.

21   Q.    AND THE HUNDRED PERCENT OWNER --

22   A.    OWNER.

23   Q.    -- OF TITAN SEAFOOD, CORRECT?

24   A.    THAT'S CORRECT.

25   Q.    IS THERE SIGNIFICANCE TO YOU TO THE FACT THAT SHE WAS

Case 2:10-md-02179-CJB-DPC   Document 14767-1   Filed 06/26/15   Page 35 of 62
Case 1:08-cr-00090-RC-ESH   Document 21   Filed 07/01/08   Page 21 of 48   PageID #: 57
TRANSCRIPT OF PROCEEDINGS

21

1  HIS SISTER, THAT SHE MIGHT BE A SISTER AS OPPOSED TO THE WIFE

2  OF LOC TRAN?

3  A.    IT'S SIGNIFICANT TO THE SBA LOAN OFFICER WHO WAS

4  REVIEWING THE APPLICATION.  IF THE APPLICANT HAS A SPOUSE,

5  NORMALLY THE SBA WILL WANT TO REVIEW THE FINANCIAL INFORMATION

6  OF THE SPOUSE, TOO, AS WELL AS THEIR CREDIT, BUT THEY WOULDN'T

7  NECESSARILY DO THAT IF IT'S A SISTER OR A BROTHER.

8  Q.    SO THAT WAS SIGNIFICANT?

9  A.    YES.

10  Q.    THE PROPERTY, JUST FOR CLARIFICATION ON THE RECORD, THE

11  PROPERTY WE'RE TALKING ABOUT WAS 25191 PINTAIL AVENUE IN

12  ABBEVILLE, LOUISIANA, CORRECT?

13  A.    THAT'S CORRECT.

14  Q.    DID LOC TRAN REPRESENT, PROVIDE ANYTHING TO THE LOSS

15  VERIFIER TO SUBSTANTIATE THE DAMAGE CLAIMS THAT HE WAS MAKING

16  THAT JUSTIFIED HIM RECEIVING THIS LOW INTEREST LOAN?

17  A.    YEAH, HE PROVIDED AN INVOICE FROM ASPEN BUILDER.

18  Q.    OKAY.  THE ASPEN BUILDER COMPANY?

19      IN WHAT AMOUNT?

20  A.    IT'S GOING TO TAKE ME A MINUTE TO --

21      MR. ROSS:  JUDGE, I APOLOGIZE TO THE COURT.  WE'RE A

22  LITTLE HAMSTRUNG ON OUR PREPARATION IN THIS CASE.

23      THE COURT:  NO, THAT'S -- WE JUST WANT TO BE SURE

24  THAT THE FACTS ARE RIGHT.

25  BY MR. ROSS:

Case 8:10-md-02179-CJB-DPC Document 1476771 Filed 06/26/25 of 480 Page 36 of 62
Case 1:08-cr-00090-RC-ESH Document 21 Filed 07/01/08 Page 22 of 480 PageID #: 58
TRANSCRIPT OF PROCEEDINGS

22

1  Q.     IF I TOLD YOU IT WAS APPROXIMATELY 1.9 MILLION DOLLARS,

2  DOES THAT SOUND ABOUT RIGHT?

3  A.     YEAH, APPROXIMATELY.  I KNOW IT WAS OVER A MILLION

4  DOLLARS.

5  Q.     OKAY.

6          THE COURT:  I'M SORRY, MR. ROSS.  I LOST YOUR

7  QUESTION.  WAS THAT THE AMOUNT CLAIMED AS DAMAGE TO THE

8  ABBEVILLE LOCATION?

9          MR. ROSS:  IT WAS THE AMOUNT OF STRUCTURE DAMAGE,

10 STRUCTURE EQUIPMENT REPAIR DAMAGE.

11         THE COURT:  OKAY.  THAT WAS CLAIMED IN THE

12 ABBEVILLE --

13         MR. ROSS:  IN THE ABBEVILLE --

14         THE COURT:  OKAY.

15         MR. ROSS:  FOR THE ABBEVILLE PROPERTY.

16         THE COURT:  OKAY.

17         THE WITNESS:  THAT'S CORRECT.  HE PRESENTED THIS

18 INVOICE AS "THIS IS WHAT I'VE HAD TO PAY TO REPAIR THE DAMAGES

19 TO THIS PROPERTY."

20         MR. ROSS:  JUDGE, IF I HAVE A DOCUMENT HERE, MAY I

21 SHOW HIM OR --

22         THE COURT:  THAT'S FINE.  YEAH, THAT'S FINE.

23         MR. ROSS:  I MEAN, IT'S ON MY LAPTOP.  IS THAT --

24         FOR PURPOSES OF THIS HEARING IS IT ALL RIGHT?

25         THE COURT:  CAN YOU REFRESH HIS MEMORY FROM THAT?

23

1          OKAY.  GO AHEAD.

2          THE WITNESS:  YEAH, THAT'S THE INVOICE.  IT WAS 1. --

3    ONE MILLION NINE HUNDRED AND TWELVE THOUSAND APPROXIMATELY.

4    BY MR. ROSS:

5    Q.      AND WHAT'S THE ADDRESS FOR ASPEN BUILDER?

6    A.      3824 PROCTOR STREET IN PORT ARTHUR.

7    Q.      ALL RIGHT.  DID THAT ADDRESS BECOME SIGNIFICANT FOR YOU

8    IN YOUR INVESTIGATION, OR DO YOU HAVE KNOWLEDGE OF WHAT THAT

9    LOCATION IS?

10   A.      THE ATF AGENT WHO I WAS WORKING WITH HAS KNOWLEDGE OF

11   THAT, BUT I DON'T RECALL THE DETAILS IN TERMS --

12          I BELIEVE IT WAS OWNED BY ONE OF THE TRANS, THAT

13   PROPERTY.  I THINK VINH TRAN OWNED THAT PROPERTY.

14   Q.      OKAY.  ALL RIGHT.  AND THAT PROPERTY WAS A RESIDENCE

15   OWNED BY VINH TRAN IN PORT ARTHUR?

16   A.      THAT'S CORRECT.

17   Q.      THE ADDRESS THAT'S LISTED ON THE ASPEN BUILDER INVOICE

18   THAT WE JUST LOOKED -- THAT WE WERE TALKING ABOUT, CORRECT?

19   A.      THAT'S CORRECT.

20   Q.      DID YOU TALK TO CHRISTINE HO ABOUT HOW -- ABOUT VINH

21   TRAN ACTUALLY BEING ON HER PROPERTY WITH THIS SBA LOSS

22   VERIFIER?

23   A.      YEAH.  VICTOR TRAN -- MS. HO TOLD ME THAT VICTOR HAD

24   CONTACTED HER AND SAID THAT HE WANTED TO SHOW THE PROPERTY TO

25   AN SBA -- SOMEONE FROM THE SBA.  AND HER IMPRESSION AT THE TIME

1   WAS THAT HE'S SHOWING IT BECAUSE HE'S GETTING FINANCING TO BUY

2   THE PROPERTY FROM HER.  SO SHE GOES OUT THERE AND SHE UNLOCKS

3   THE GATE FOR MR. TRAN AND THE SBA LOSS VERIFIER.

4   Q.    ALL RIGHT.  IS HER NAME USED ANYWHERE ELSE ON THE

5   APPLICATION FOR THIS DISASTER LOAN?

6   A.    OTHER THAN --

7   Q.    THAT SHE'S THE OWNER OF THIS -- OR THAT --

8   A.    WE DID HAVE SOME INVOICES IN THE LOAN APPLICATION FILE

9   FOR TITAN SEAFOOD, AND IN THE LEFT-HAND CORNER OF THE INVOICES

10  IT SAID -- IT SAID CHRISTINE TRAN, GENERAL MANAGER OF TITAN

11  SEAFOOD.  AND IT HAD A CELL PHONE NUMBER, A TELEPHONE NUMBER ON

12  THE INVOICE, AND THAT TELEPHONE NUMBER BELONGED TO CHRISTINE

13  HO.

14  Q.    OKAY.  SHE TOLD YOU THAT --

15        DID SHE TELL YOU --

16        DID SHE TELL YOU HOW SHE KNEW LOC TRAN?

17  A.    YEAH.  SHE OPERATED A BUSINESS AT THAT ABBEVILLE

18  PROPERTY BEFORE SHE FILED FOR BANKRUPTCY.  HER BUSINESS WAS

19  CALLED CHRISTINE'S SEAFOOD.  AND BASICALLY THE ABBEVILLE

20  PROPERTY WAS A DOCK WHERE HER SHRIMP BOATS WOULD DOCK THERE AND

21  UNLOAD THEIR SHRIMP.  AND SHE KNEW VICTOR TRAN BECAUSE SHE

22  WOULD SELL SHRIMP TO HIS COMPANY, PISH.

23  Q.    OKAY.

24  A.    PRIOR TO HER FILING BANKRUPTCY.

25  Q.    AND JUST TO SUM UP, SHE DENIED THAT LOC TRAN EVER HAD

1  ANY OWNERSHIP INTEREST, ANY INTEREST WHATSOEVER IN THE PROPERTY

2  OTHER THAN A PASSING INTEREST IN PURCHASING THE PROPERTY FROM

3  HER?

4  A.    THAT'S CORRECT.

5        AND SHE ALSO SAID THAT THE BANKRUPTCY COURT WOULD HAVE

6  HAD TO APPROVE ANY ARRANGEMENT.  BECAUSE SHE WAS IN BANKRUPTCY

7  AT THE TIME, HER ATTORNEY AND THE BANKRUPTCY --

8        THEY WOULD HAVE HAD TO GET PERMISSION FROM THE

9  BANKRUPTCY COURT TO APPROVE ANY KIND OF SALE OR LEASE.

10  Q.    OKAY.  ALL RIGHT.  NOW, BRIEFLY WE'LL TALK ABOUT THE

11  OTHER TWO LOANS.  WE'LL MOVE AWAY FROM THIS TITAN DISASTER LOAN

12  APPLICATION.

13        LET'S TALK ABOUT THE PISH APPLICATION, AND FOR THAT

14  MATTER AT THE SAME TIME THE CRYSTAL SEAFOOD APPLICATION.

15        WHAT IRREGULARITIES OR FALSITIES DID YOU DETERMINE TO

16  HAVE BEEN MADE IN THESE APPLICATIONS?

17  A.    IN THESE APPLICATIONS, THERE WERE ISSUES OF OWNERSHIP IN

18  TERMS OF WHO WAS BEING REPRESENTED AS THE OWNERS OF THESE

19  COMPANIES ON THE SBA APPLICATION.

20        AND THERE WERE ALSO ISSUES WITH THE TAX RETURNS THAT

21  THEY SUBMITTED TO SUPPORT THE APPLICATIONS.  WHEN THE SBA TRIED

22  TO VERIFY THESE TAX RETURNS WITH THE IRS, THERE WAS NO RECORD

23  OF THEM.

24  Q.    AND THERE WAS SOME COMPLETELY FRAUDULENT TAX RETURNS

25  THAT WERE TENDERED TO THE SBA?

1   A.      YEAH, THAT'S CORRECT.  WELL, THERE WAS -- THERE WAS NO

2   RECORD THAT THESE TAX RETURNS WERE EVER FILED WITH THE IRS.

3   Q.      OKAY.

4   A.      AND ON THE PISH APPLICATION, IT WAS REPRESENTED THAT LOC

5   TRAN'S WIFE, HOAN TRAN, WAS THE OWNER OF PLEASURE ISLAND

6   SEAFOOD HOUSE, BUT WHEN WE REVIEWED CORPORATE RECORDS ON THAT

7   COMPANY, THEY ALL --

8           WELL, IT WAS REPRESENTED THAT HOAN TRAN WAS THE

9   PRESIDENT OF PISH, BUT WHEN WE REVIEWED PUBLIC FILINGS FOR THE

10  SAME YEARS WHEN THAT APPLICATION WAS FILED, LOC TRAN

11  REPRESENTED THAT TUAN TRAN WAS THE PRESIDENT OF THE COMPANY.

12  Q.      OKAY.  SO ON THE PISH APPLICATION, THE APPLICATION AGAIN

13  IS IN THE NAME OF VICTOR TRAN, CORRECT?

14  A.      HE -- HE SIGNS THE PISH APPLICATION, BUT HE REPRESENTS

15  THAT HOAN TRAN IS THE APPLICANT, THE HUNDRED PERCENT OWNER.

16  Q.      TUAN?

17  A.      I MEAN, HOAN, H-O-A-N.

18  Q.      OH, HIS WIFE?

19  A.      WIFE.

20  Q.      IN THE PISH APPLICATION, DOES HE AGAIN REPRESENT HER TO

21  BE HIS SISTER?

22  A.      THAT'S CORRECT.

23  Q.      AND WE'RE TALKING ABOUT THE PISH APPLICATION?

24  A.      UH-HUH.

25  Q.      AND VICTOR TRAN IS THE CONTACT PERSON, CORRECT?

```
 1    A.      CORRECT.

 2    Q.      AND HOAN TRAN IS LISTED AS THE HUNDRED PERCENT OWNER OF

 3    THE BUSINESS?

 4    A.      THAT'S CORRECT.

 5    Q.      AND AT THE SAME TIME, WHEN YOU REVIEWED THE PUBLIC

 6    FILING DOCUMENTS ON THE CORPORATION THAT WERE MADE IN THIS CASE

 7    BY -- THAT WERE ON FILE IN THIS CASE, TUAN TRAN IS THE OWNER?

 8    A.      THAT'S CORRECT.  HE'S LISTED AS THE PRESIDENT.

 9    Q.      HE'S LISTED AS THE PRESIDENT?

10    A.      UH-HUH.

11    Q.      AND ON THE APPLICATION SHE'S LISTED AS --

12    A.      PRESIDENT.

13    Q.      AS PRESIDENT, RIGHT?

14    A.      UH-HUH.

15    Q.      AND TUAN AGAIN, T-U-A-N, TUAN IS VICTOR'S BROTHER?

16    A.      UH-HUH.

17    Q.      AND YOU ALSO FOUND SOME DISASTER LOAN APPLICATIONS AND

18    SOME BUSINESS LOAN APPLICATIONS THAT WERE MADE ON BEHALF OF OR

19    BY TUAN TRAN?

20    A.      CORRECT.

21    Q.      WERE THERE A NUMBER OF ASPEN BUILDER INVOICES THAT WERE

22    SUBMITTED TO SUPPORT THE CLAIM ON THE PISH PROPERTY?

23    A.      YES.

24    Q.      DO YOU REMEMBER HOW MANY?

25    A.      NOT OFF THE TOP OF MY HEAD.  BUT I DO KNOW THAT HE WAS
```

Case 1:08-cr-00090-RC-ESH  Document 21  Filed 07/01/08  Page 28 of 46  PageID #: 64
Case 8:10-md-02179-CJB-DPC  Document 1470-7  Filed 06/26/15  Page 42 of 62
TRANSCRIPT OF PROCEEDINGS

28

1   ESTIMATING DAMAGES ON THAT BETWEEN SEVEN MILLION AND TEN -- AT

2   ONE POINT HE SAID TEN MILLION ALSO.

3   Q.      OKAY.  AND WERE THERE ALSO SOME INVOICES SUBMITTED FROM

4   A COMPANY, ALLEGED COMPANY BY THE NAME OF ALLIANCE AND

5   ASSOCIATES?

6   A.      THAT'S CORRECT.

7   Q.      DO YOU KNOW THE SIGNIFICANCE OR --

8           DO YOU KNOW THE COMPANY THAT BURNED DOWN OR THE

9   WAREHOUSE THAT BURNED DOWN?

10  A.      YES.  THE WAREHOUSE THAT BURNED DOWN WAS A COMPANY --

11  WAS OWNED BY ALLIANCE AND ASSOCIATES, WHICH IS OWNED BY VINH

12  TRAN.

13  Q.      VINH TRAN?

14  A.      UH-HUH.

15  Q.      V-I-N-H.  AND THAT IS --

16  A.      LOC'S BROTHER.

17  Q.      LOC'S OTHER BROTHER?

18  A.      UH-HUH.

19  Q.      AND THE ALLIANCE --

20          DO YOU REMEMBER WHAT KIND OF BUSINESS ALLIANCE AND

21  ASSOCIATES WAS?

22  A.      IT'S MY UNDERSTANDING THAT THEY -- THEY WERE A PLASTIC

23  BAG BUSINESS.

24  Q.      THEY PRINTED AND SOLD PLASTIC BAGS, CORRECT?

25  A.      CORRECT.

1  Q.     WERE YOU EVER --

2         DO YOU KNOW IF ANYTHING WAS EVER --

3         WAS THERE A DETERMINATION MADE IN YOUR INVESTIGATION

4  THAT THE ALLIANCE AND ASSOCIATES INVOICES THAT WERE SUBMITTED

5  TO SUPPORT THE CLAIM ON THE PISH PROPERTY, WAS IT DETERMINED

6  THAT THEY WERE TOTALLY FRAUDULENT?

7  A.     YES.

8  Q.     OKAY.  CAN YOU TELL US HOW OR IN WHAT ASPECT?

9         WAS THERE EVER A COMPANY, AN ALLIANCE AND ASSOCIATES

10 THAT DID REPAIR WORK ON REFRIGERATION EQUIPMENT AND THINGS OF

11 THAT NATURE?

12 A.     NOT THAT WE WERE AWARE OF.

13        AND AT THE SAME TIME THESE INVOICES WERE BEING PROVIDED

14 REPRESENTING THAT ALLIANCE AND ASSOCIATES IS DOING THIS WORK,

15 ALLIANCE AND ASSOCIATES HAD FILED A DISASTER LOAN APPLICATION

16 WITH THE SBA, SAYING THAT THEY WERE OUT OF BUSINESS AS A RESULT

17 OF THE HURRICANE, AND SAYING THAT THEY WERE JUST A PLASTIC BAG

18 COMPANY.

19 Q.     SO ALLIANCE AND ASSOCIATES ACTUALLY FILED AN SBA

20 DISASTER LOAN APPLICATION?

21 A.     THAT'S CORRECT.

22 Q.     AFTER THE WAREHOUSE BURNED DOWN, THAT SAME YEAR?

23 A.     THAT'S CORRECT.

24 Q.     FOR THAT PROPERTY THAT BURNED?

25 A.     THAT'S CORRECT.

30

1    Q.    AND WHO WAS THE APPLICANT IN THAT, ON THAT DISASTER
2 LOAN?

3    A.    VINH TRAN.

4    Q.    V-I-N-H, VINH TRAN, LOC TRAN'S BROTHER?

5    A.    CORRECT.

6    Q.    WITH REGARD TO THE CRYSTAL SEAFOOD APPLICATION, WHAT
7 IRREGULARITIES WERE FOUND ON THE CRYSTAL SEAFOOD DISASTER LOAN
8 APPLICATION? OR WHAT WERE SOME OF THE SIGNIFICANT
9 IRREGULARITIES AND FALSITIES THAT YOU FOUND?

10    A.    OFF THE TOP OF MY HEAD, IT WAS THE SAME THING. THE LOAN
11 OFFICER WAS UNABLE TO ESTABLISH -- HE WAS UNABLE TO ESTABLISH
12 CLEAR OWNERSHIP OF THE COMPANY.

13        AND IT ALSO CONTAINED INVOICES FROM ASPEN BUILDER TO
14 JUSTIFY THE AMOUNT THAT THEY WERE REQUESTING IN HURRICANE
15 DAMAGE.

16    Q.    AND REGARDING HIS WIFE, HOAN, AND HER RELATIONSHIP AS
17 SISTER, THAT WAS THE SAME?

18    A.    CORRECT.

19    Q.    WHAT WAS THE TOTAL AMOUNT AGAIN THAT WAS BEING CLAIMED
20 ON THIS ONE?

21    A.    ON THE CRYSTAL SEAFOOD, I BELIEVE IT WAS 1.5 MILLION
22 APPROXIMATELY.

23    Q.    OKAY. SO ON --

24        IN ALL, THERE WERE IN EXCESS OF TEN MILLION DOLLARS ON
25 THESE THREE?

1   A.      THAT'S CORRECT.

2           AND ANOTHER THING ABOUT CRYSTAL, IT WAS --

3           VICTOR OR LOC TRAN MET WITH THE LOSS VERIFIER WHO

4   INSPECTED THE PROPERTY FOR DAMAGE, AND LOC TRAN TOLD HIM THE

5   SAME THING, THAT "RIGHT BEFORE THE HURRICANE I HAD TRAILERS

6   FULL OF SHRIMP HERE, AND THEY ALL WASHED OUT AT SEA."

7           SO THE VERIFIER WASN'T ABLE TO REALLY CONFIRM THAT.  HE

8   HAD TO TAKE LOC TRAN'S WORD FOR THAT.

9   Q.      AND IT WAS THE SAME LOSS VERIFIER, CORRECT, PAR

10  BENSTROM?

11  A.      THAT'S CORRECT.

12  Q.      OKAY.  THE SBA CAUGHT THE FALSITIES IN THESE CASES, AM I

13  RIGHT?

14  A.      YEAH.  THEY HAD -- THEY HAD THE TAX RETURN ISSUES THEY

15  CAUGHT WHEN THEY TRIED TO VERIFY THE TAX RETURNS WITH THE IRS.

16          AND THEN THE OWNERSHIP ISSUES, THEY COULDN'T ESTABLISH

17  CLEAR OWNERSHIP.

18          SO THEY DENIED THESE APPLICATIONS.

19  Q.      SO ON THESE THREE APPLICATIONS, LOC TRAN WAS NOT PAID,

20  CORRECT?

21  A.      CORRECT.

22  Q.      YOU MENTIONED THERE WAS AN INVESTIGATION GOING ON IN

23  HOUSTON REGARDING THREE BANKS, AN INVESTIGATION BY THE FBI?

24  A.      CORRECT.

25  Q.      IS IT YOUR UNDERSTANDING THAT LOC WAS THE POINT MAN ON

1    THOSE, ON MANY OF THOSE TRANSACTIONS INVOLVED IN THOSE CASES?

2    A.    YEAH.   IT WAS --

3          I'M NOT SURE IF THE INVESTIGATION WAS IN HOUSTON.

4    Q.    WELL, LET'S JUST TALK ABOUT THE BANK OF AMERICA THEN.

5    A.    OKAY.

6    Q.    THAT'S IN LUFKIN, CORRECT?

7    A.    UH-HUH.

8    Q.    IN THAT CASE, WAS VICTOR TRAN BEING INVESTIGATED FOR

9    SUBMITTING FRAUDULENT DOCUMENTS TO SUPPORT A LOAN THAT WAS

10   ULTIMATELY DEFAULTED ON?

11   A.    THAT'S CORRECT.

12   Q.    AND LEAVING A LOSS IN EXCESS OF A MILLION DOLLARS WITH

13   BANK OF AMERICA, IS THAT CORRECT?

14   A.    BUT --

15         I DON'T REMEMBER THE EXACT AMOUNT, BUT, YES, THERE WAS A

16   LOSS THERE.

17   Q.    OKAY.   AND ARE YOU --

18         DO YOU HAVE SOME KNOWLEDGE OF THE PORT ARTHUR

19   DEVELOPMENT CORPORATION LOAN THAT WAS SOUGHT AND RECEIVED BY

20   LOC TRAN?

21   A.    YES.

22   Q.    TELL THE -- TELL THE COURT WHAT YOU KNOW ABOUT THAT.

23   A.    THAT WAS A REQUEST FOR DISASTER ASSISTANCE THAT LOC TRAN

24   SUBMITTED TO THE PORT ARTHUR ECONOMIC DEVELOPMENT CORPORATION

25   FOR THE PISH PROPERTY ON MARTIN LUTHER KING BOULEVARD.   AND HE

1    WAS ABLE TO OBTAIN MORE THAN A HALF MILLION DOLLARS ON THAT

2    REQUEST.

3    Q.    AND WAS THAT REPRESENTATION --

4          THAT WAS A LOW INTEREST LOAN SIMILAR TO WHAT WAS BEING

5    SOUGHT IN THESE CASES FROM THE SBA, CORRECT?

6    A.    CORRECT.

7    Q.    IN THIS CASE, HE --

8          IN THE CASE OF THE EDC, HE WAS PAID AT LEAST A HALF

9    MILLION DOLLARS, CORRECT?

10   A.    THAT'S CORRECT.

11   Q.    DO YOU KNOW WHETHER OR NOT HE REPRESENTED TO THE SBA AS

12   PART OF HIS APPLICATION FOR THAT MONEY THAT HE HADN'T RECEIVED

13   INSURANCE PROCEEDS, AND THEREFORE, HE NEEDED THIS MONEY, AND HE

14   WOULD PAY IT BACK ONCE HE RECEIVED INSURANCE?

15   A.    YES, HE REPRESENTED THAT TO THE PORT ARTHUR ECONOMIC

16   DEVELOPMENT CORPORATION.

17   Q.    OKAY.  AND IN FACT --

18         IN FACT, THE INVESTIGATION REVEALS THAT HE HAD RECEIVED

19   INSURANCE PROCEEDS PRIOR TO OBTAINING THAT MONEY FROM THE EDC?

20   A.    RIGHT.  THAT'S CORRECT.

21   Q.    ALL RIGHT.  ARE YOU AWARE OF HIS EFFORTS, OR ALLEGATIONS

22   THAT THE INVESTIGATION REVEALED THAT HE INFLATED DOCUMENTS OR

23   FALSIFIED INVOICES TO HIS INSURANCE COMPANY ON THE PISH

24   PROPERTY TO RECEIVE -- TO INFLATE THE PAYMENTS THAT HE RECEIVED

25   FOR THE DAMAGES HE INCURRED AT THE PISH LOCATION AFTER

1    HURRICANE RITA?

2    A.      YES, HE DID.

3            HE ALSO PROVIDED THEM WITH ASPEN BUILDER INVOICES TO

4    SHOW DAMAGE ON THE PROPERTY IN ORDER TO GET THE INSURANCE

5    PROCEEDS.

6    Q.      AND DO YOU KNOW WHETHER OR NOT THOSE ASPEN BUILDER

7    INVOICES WERE WIRED, WERE FAXED TO THE INSURANCE COMPANY IN

8    COLORADO?

9    A.      I BELIEVE THEY WERE FAXED --

10   Q.      OKAY.

11   A.      -- TO THEM.

12   Q.      AND DO YOU KNOW WHETHER OR NOT, YOU KNOW, BASED ON WHAT

13   YOU KNOW ABOUT THE INVESTIGATION, THAT THE CHECKS WERE IN FACT

14   PAID, PAYMENTS WERE MADE AND MAILED BACK TO LOC TRAN ON THOSE

15   CLAIMS THAT WERE SUBMITTED BASED ON THOSE ASPEN BUILDER

16   INVOICES?

17   A.      YES, I DO KNOW FOR A FACT THAT THAT INSURANCE COMPANY

18   MAILED THOSE CHECKS AS PAYMENT OF THE INSURANCE PROCEEDS.

19   Q.      OKAY.  HAVE YOU BEEN PRIVY TO SOME --

20           NOW, LOC TRAN HAS A NUMBER OF RELATIVES IN THE PORT

21   ARTHUR AND HOUSTON AREA, CORRECT?

22   A.      CORRECT.

23   Q.      HE HAS RELATIVES IN CALIFORNIA, CORRECT?

24   A.      CORRECT.

25   Q.      AND HE HAS RELATIVES IN VIETNAM, CORRECT?

Case 8:10-md-02179-CJB-DPC   Document 21   Filed 07/01/08   Page 35 of 48   PageID #: 71
Case 8:10-md-02179-CJB-DPC   Document 1476-7   Filed 06/26/15   Page 49 of 62
TRANSCRIPT OF PROCEEDINGS

35

1   A.      CORRECT.

2   Q.      HAVE YOU HAD AN OPPORTUNITY TO REVIEW INFORMATION THAT

3   HAS BEEN COLLECTED ABOUT BORDER CROSSINGS BY LOC'S FAMILY

4   MEMBERS OR LOC TRAN?

5   A.      YES, I HAVE.

6   Q.      AND WITH REGARD TO VINH TRAN --

7           WELL, WITH REGARD TO LOC TRAN FIRST, THE INFORMATION WAS

8   INCOMPLETE, IS THAT CORRECT?

9   A.      THAT'S CORRECT.

10  Q.      BUT IT DOES --

11          THERE ARE INSTANCES, AT LEAST FOUR INSTANCES WHERE --

12              MR. HAMM:   YOUR HONOR, I'M GOING TO HAVE TO OBJECT.

13  HE KEEPS LEADING THE WITNESS.  I UNDERSTAND THAT WE'RE --

14              THE COURT:   SUSTAINED.

15              MR. ROSS:   OKAY, JUDGE.

16  BY MR. ROSS:

17  Q.      HOW MANY BORDER CROSSINGS ARE ATTRIBUTABLE TO LOC TRAN

18  DURING THE 1990S?

19  A.      APPROXIMATELY FOUR.

20  Q.      AND DO YOU HAVE ANY SPECIFIC INFORMATION AT THIS TIME

21  RELATED TO THOSE CROSSINGS?

22  A.      I HAVE DATES OF FOUR, BUT THAT'S ALL THE INFORMATION

23  THAT I HAVE.

24  Q.      OKAY.  AND JUST --

25          IF YOU WOULD, TELL US THE YEARS ON THOSE FOUR.

36

1   A.    OKAY.  1996 WAS THE MOST RECENT.  THEN 1993, 1991 AND
2   THEN 1990.
3   Q.    WITH REGARD TO VINH TRAN, HOW MANY BORDER CROSSINGS HAVE
4   BEEN MADE WITH REGARD TO VINH TRAN?
5   A.    NINE THAT I'M AWARE OF.
6   Q.    AT LEAST NINE THAT YOU'RE AWARE OF?
7   A.    UH-HUH.
8   Q.    AND DID THOSE BORDER CROSSINGS INVOLVE IN AT LEAST THREE
9   CASES TAIPEI?
10  A.    YES, THAT'S CORRECT.
11  Q.    OKAY.  AND DO YOU KNOW WHERE TAIPEI IS?
12  A.    I BELIEVE IT'S CHINA, OR IN ASIA.
13  Q.    OKAY.  IT'S IN TAIWAN, RIGHT?  OR DO YOU HAVE --
14        IT'S IN ASIA?
15  A.    YEAH.  I THOUGHT IT WAS CHINA.
16  Q.    OKAY.  AND A NUMBER OF THOSE ARE INBOUND.  I GUESS --
17        ON SOME OF THE INFORMATION ON VINH TRAN, IS OUR
18  INFORMATION INCOMPLETE IN TERMS OF BORDER CROSSING, KNOWING
19  WHERE HE CAME FROM?
20  A.    YEAH, THAT'S CORRECT, THE INBOUND.
21  Q.    WITH REGARD TO VINH TRAN, WHEN WAS HIS LAST CROSSING TO
22  TAIPEI?
23  A.    FEBRUARY, 2008.
24  Q.    FEBRUARY 22, 2008?
25  A.    THAT'S CORRECT.

Case 8:10-md-02179-CJB-DPC Document 21 Filed 07/01/08 Page 37 of 46 PageID #: 73
Case 8:10-cv-00090-RG-ESH Document 147677 Filed 06/26/15 Page 51 of 62
TRANSCRIPT OF PROCEEDINGS
37

1  Q.     AND THAT'S VINH WHO WE'VE TALKED ABOUT, V-I-N-H, WHO IS

2  LOC'S BROTHER, CORRECT?

3  A.     UH-HUH.

4  Q.     IN FACT, IS THERE ANY INFORMATION SHOWING THAT VINH HAS

5  COME BACK FROM VIETNAM?

6  A.     NO.

7  Q.     OR COME BACK FROM -- BACK INTO THE UNITED STATES AFTER

8  GOING TO TAIPEI?

9  A.     NO.

10 Q.     WITH REGARD TO AMANDA LE, CAN YOU TELL THE COURT AGAIN

11 WHO AMANDA LE IS?

12 A.     AMANDA LE IS THE GIRLFRIEND OF VINH TRAN.

13 Q.     AND WITH REGARD TO AMANDA LE, SINCE 1990 HOW MANY BORDER

14 CROSSINGS ARE ATTRIBUTABLE TO AMANDA LE?

15 A.     EIGHTEEN THAT I'M AWARE OF.

16 Q.     OKAY.  AND IS OUR INFORMATION INCOMPLETE AT THIS TIME ON

17 THOSE BORDER CROSSINGS?

18 A.     THAT'S CORRECT.

19 Q.     ON HOW MANY OF THOSE BORDER CROSSINGS IS LOS ANGELES THE

20 DEPARTURE CITY?

21        MR. HAMM:  YOUR HONOR, I'M GOING TO HAVE TO OBJECT.

22 IT'S NOT A CONSPIRACY CASE, WE HAVE ONE DEFENDANT, AND --

23        THE COURT:  I'M GOING TO OVERRULE YOUR OBJECTION.

24 I'M GOING TO LET HIM GO INTO IT A LITTLE BIT FURTHER, BECAUSE I

25 THINK IT'S --

1      I THINK THERE'S AN ARGUMENT THERE.  I BELIEVE WHAT

2 YOU'RE GOING TO TELL ME IS THAT IF HIS FAMILY HAS EXTENSIVE

3 CONTACTS IN THE MIDDLE EAST AND TRAVELS EXTENSIVELY, THAT --

4      MR. ROSS:  IN ASIA.

5      THE COURT:  IN ASIA, THAT THAT SEEMS TO GO TO THE

6 RISK OF FLIGHT.

7      I'M GOING TO LET YOU GO INTO IT A LITTLE BIT FURTHER.

8 IT WILL BE OVERRULED.  BUT WRAP IT UP.

9      MR. ROSS:  OKAY.  ALL RIGHT.  THANK YOU, JUDGE.

10      THE WITNESS:  APPROXIMATELY FOURTEEN INVOLVED LOS

11 ANGELES.

12 BY MR. ROSS:

13 Q.    LOS ANGELES?  AND THAT'S FOR VINH TRAN?  THERE'S AT

14 LEAST THREE THAT ARE ATTRIBUTABLE TO, OR INVOLVED LOS ANGELES,

15 BUT THE INFORMATION IS INCOMPLETE, CORRECT?

16 A.    THAT'S CORRECT.

17 Q.    TELL THE COURT WHO KELVIN TRAN IS.

18 A.    KELVIN TRAN IS THE NEPHEW OF LOC TRAN.

19 Q.    OKAY.  KELVIN TRAN IS THE NEPHEW OF LOC, OR AT LEAST

20 SOME --

21 A.    THAT'S MY --

22      THAT HE'S A NEPHEW OF EITHER HOAN TRAN OR LOC TRAN.

23 THAT'S MY UNDERSTANDING.

24 Q.    OKAY.  IS HE --

25      IS IT YOUR UNDERSTANDING THAT HE DOES KIND OF WORK FOR,

39

1  OR HAS DONE FOR LOC AND TUAN?

2  A.    YES, THAT'S CORRECT.

3  Q.    AND HE'S GOT SOME BORDER CROSSINGS?

4  A.    THAT'S CORRECT.

5  Q.    DO YOU KNOW WHETHER OR NOT --

6       DO YOU KNOW HOW KELVIN CAME INTO THE UNITED STATES, OR

7  WHO SPONSORED HIM?

8  A.    IT'S MY UNDERSTANDING HE WAS SPONSORED BY LOC TRAN.

9  Q.    WHAT'S HIS MOST RECENT TRIP TO ASIA, KELVIN TRAN?

10  A.    NOVEMBER 29, 2007.

11  Q.    AND PRIOR TO THAT TIME --

12       WELL, THERE ARE AT LEAST TWO, SO IT'S JANUARY OF 2006,

13  CORRECT?

14  A.    THAT'S CORRECT.

15  Q.    SO SINCE JANUARY, 2006, KELVIN, WHO WAS BROUGHT TO THE

16  UNITED STATES BY LOC TRAN, HAS GONE BACK TO VIETNAM, OR TO

17  TAIPEI, TO ASIA THREE TIMES, CORRECT?

18  A.    CORRECT.

19  Q.    WHAT ABOUT TUAN TRAN?  HOW MANY BORDER CROSSINGS DO YOU

20  FIND WITH REGARD TO TUAN TRAN?

21  A.    THREE BORDER CROSSINGS.

22  Q.    AND THE TWO MOST RECENT, WHAT ARE THE DATES ON THOSE?

23  A.    MARCH 25, 20008, AND MAY 30, 2008.

24       MR. ROSS:  AT THIS TIME, JUDGE, I'LL PASS THE

25  WITNESS.

Case 8:10-md-02179-CJB-DPC   Document 14767   Filed 06/26/15   Page 40 of 48   PageID #: 76
Case 1:08-cr-00090-RC-ESH   Document 21   Filed 07/01/08   Page 54 of 62
TRANSCRIPT OF PROCEEDINGS

40

<u>CROSS-EXAMINATION</u>

BY MR. HAMM:

Q.    WHEN WERE YOU ASKED TO CHECK THESE BORDER CROSSINGS?

A.    WHEN WAS I ASKED TO CHECK THEM?

Q.    YES, SIR.

A.    I RECEIVED THE INFORMATION FROM THE ATF.

Q.    WHEN?

A.    THIS WEEK.

Q.    OKAY.  WAS THAT IN PREPARATION FOR COMING TO THIS HEARING?

A.    YES.

Q.    OKAY.  SO IN PREPARING FOR THIS HEARING, YOU CAN ASSERT -- YOU CAN CERTIFY TO THE COURT THE LAST TIME THAT MY CLIENT LEFT THIS COUNTRY WAS 1996?

A.    THAT'S CORRECT.

Q.    AND YOU FEEL COMFORTABLE TELLING HIM THAT?

A.    THAT'S BASED ON THE INFORMATION THAT WAS RECEIVED FROM I.C.E., YES.

Q.    OKAY.  AND THAT'S THE PLACE WHERE YOU GO TO GET THAT INFORMATION, RIGHT?

A.    THAT'S CORRECT.

Q.    THERE'S NOT ANOTHER SOURCE OUT THERE WHERE YOU FIND INFORMATION ABOUT THIS, IS THERE?

A.    NO.

Q.    ALL RIGHT.  SO WHENEVER WE GO AND WE'RE GOING TO TRUST

41

1   SOMEBODY WITH THE GOVERNMENT TO TELL US THE LAST TIME AN

2   INDIVIDUAL USED THEIR PASSPORT AND LEFT OUR COUNTRY, I.C.E. IS

3   GOING TO KNOW THAT, AND THAT LAST INFORMATION IS 1996?

4   A.      THAT'S CORRECT.

5   Q.      SO THESE OTHER FAMILY MEMBERS THAT YOU'RE TALKING ABOUT,

6   THAT'S -- THOSE ARE JUST NAMES YOU WERE TOLD TO CHECK AS FAR AS

7   THAT'S CONCERNED?

8   A.      YEAH.   THAT'S INFORMATION THAT I RECEIVED.   I DIDN'T

9   ACTUALLY DO THE CHECKING.

10  Q.      OKAY.   WELL, WERE YOU TOLD TO CHECK TO SEE WHETHER OR

11  NOT MY CLIENT INSTRUCTED ANY OF THOSE PEOPLE TO ACTUALLY LEAVE

12  THE COUNTRY FOR SOME REASON?

13  A.      CAN YOU SAY THAT AGAIN?

14  Q.      WERE YOU INSTRUCTED TO FIND OUT WHETHER OR NOT MY CLIENT

15  TOLD ANY OF THESE INDIVIDUALS TO LEAVE THE COUNTRY FOR SOME

16  REASON?

17  A.      I DIDN'T RECEIVE ANY INFORMATION THAT YOUR CLIENT TOLD

18  ANYONE TO LEAVE.

19  Q.      OKAY.   SO WHEN YOU'RE TELLING THE JUDGE ABOUT ALL THESE

20  DIFFERENT BORDER CROSSINGS FOR OTHER INDIVIDUALS, YOU'RE NOT

21  HERE ASSERTING TO THE COURT THAT THEY WERE DOING THAT BY ORDER

22  OF MY CLIENT OR INSTRUCTIONS FROM HIM?  YOU DON'T HAVE ANY

23  INFORMATION TO SUPPORT THAT?

24  A.      NO.

25  Q.      ALL RIGHT.   SO AS FAR AS CONCERNS ABOUT THAT REGARD, WE

1    DON'T KNOW IF ANY OF THESE FOLKS WERE TRAVELING TO SEE FAMILY,

2    FRIENDS?  WE DON'T KNOW WHAT THEY WERE DOING, DO WE?

3    A.    NO.

4    Q.    OKAY.  BUT WHAT WE DO KNOW IS THAT THERE IS -- IS A

5    BUSINESS THAT MY CLIENT OPERATES, AND IT IS CALLED TITAN

6    SEAFOOD?  YOU KNOW THAT FROM YOUR INVESTIGATION, DON'T YOU?

7    A.    THAT'S CORRECT.

8    Q.    AND YOU KNOW THAT IT IS CURRENTLY OPERATING, THAT IT IS

9    NOT A SHAM CORPORATION?

10   A.    YEAH.  I BELIEVE IT TO BE A REAL CORPORATION, CORRECT.

11   Q.    SO IF I TELL THIS JUDGE IN SOME FORM OR FASHION THAT

12   ANYWHERE FROM FORTY TO SEVENTY DIFFERENT PEOPLE ENJOY THEIR

13   EMPLOYMENT FROM THE USE OF THIS CORPORATION, TITAN SEAFOOD, YOU

14   WOULD AGREE WITH ME BASED UPON YOUR INVESTIGATION THAT THAT'S

15   ACCURATE INFORMATION?

16   A.    I DON'T KNOW THE NUMBER OF EMPLOYEES THAT WORK FOR TITAN

17   SEAFOOD, SO I COULDN'T AGREE WITH YOU ABOUT THE FORTY.

18   Q.    OKAY.

19   A.    BUT I DO BELIEVE IT'S A REAL COMPANY THAT OPERATES.

20   Q.    HAVE YOU SEEN SOME EMPLOYEES THERE OPERATING?

21   A.    I DON'T KNOW ANY OF THE --

22   Q.    ALL RIGHT.  SO YOU'RE JUST NOT COMFORTABLE WITH THE

23   NUMBER?

24   A.    I DON'T KNOW HOW MANY EMPLOYEES THE COMPANY HAS.

25   Q.    ARE YOU CURRENTLY WORKING ADDITIONAL CASES THAT YOU PLAN

43

1    TO ADD TO THIS INDICTMENT?

2    A.    WE'VE INVESTIGATED SEVERAL LOANS --

3    Q.    OKAY.

4    A.    -- THAT HAVE NOT BEEN INDICTED.

5    Q.    ALL RIGHT.  SO THAT MAY OR MAY NOT COME TO FRUITION,

6    RIGHT?

7    A.    THAT'S A PROSECUTION DECISION.

8    Q.    IF IT'S DECIDED, IT WOULD BE INCLUDED IN THIS INDICTMENT

9    AND NOT SOME SEPARATE INDICTMENT, RIGHT?

10   A.    I'M --

11         THAT'S A --

12         THE PROSECUTOR WILL HAVE TO MAKE THAT.  I'M NOT SURE.

13   Q.    YOU DON'T HAVE ANY KNOWLEDGE ON THAT?

14         OKAY.  HAVE YOU IN YOUR INVESTIGATION FOLLOWED WHAT HAS

15   BEEN HAPPENING WITH HIS STATE CASE, THE ONE THAT YOU TESTIFIED

16   TO THE COURT A LITTLE WHILE AGO ABOUT THE PORT ARTHUR ECONOMIC

17   DEVELOPMENT COMMITTEE?  ARE YOU INVOLVED WITH THAT?

18   A.    NOT DIRECTLY, NO.

19   Q.    OKAY.  CAN YOU VERIFY FOR THE COURT THAT HE IS OUT ON

20   BOND ON THOSE CHARGES?

21   A.    YEAH, I BELIEVE THAT'S THE CASE.

22   Q.    CAN YOU VERIFY FOR THE COURT THAT THERE HAS BEEN SEVEN

23   DIFFERENT TRIAL SETTINGS ON THAT CASE IN WHICH MY CLIENT HAS

24   APPEARED?

25   A.    THAT I'M NOT AWARE.

Case 8:10-md-02179-CJB-DPC Document 21 Filed 07/01/08 Page 44 of 46 PageID #: 80
Case 1:08-cr-00090-RG-ESH Document 147077 Filed 06/26/15 Page 58 of 62
TRANSCRIPT OF PROCEEDINGS

44

1  Q.    OKAY.

2  A.    I HAVEN'T BEEN FOLLOWING THAT.

3  Q.    WOULD YOU HAVE BEEN AWARE -- HAD HE FAILED TO SHOW UP

4  FOR COURT, WOULD YOU HAVE BEEN AWARE OF THAT?

5  A.    I MAY HAVE BEEN --

6        I WOULD HAVE --

7        IF THAT OCCURRED, I PROBABLY WOULD HAVE HEARD ABOUT IT.

8  Q.    ALL RIGHT.  AND SO LET'S WORK IN THE NEGATIVE.  DID YOU

9  EVER HEAR THAT HE DIDN'T SHOW IN COURT, FOR COURT?

10 A.    NO.

11 Q.    ALL RIGHT.  HAVE YOU EVER ACTUALLY INTERVIEWED MY

12 CLIENT, WHERE HE'S GIVEN YOU A STATEMENT ONE WAY OR THE OTHER?

13 A.    NO.

14 Q.    SO YOU DON'T KNOW WHAT HIS VERSION ABOUT THE STATEMENTS

15 THAT YOU'VE MADE TODAY -- YOU DON'T KNOW WHAT HIS VERSION IS,

16 DO YOU?

17 A.    NO.

18 Q.    HAVE YOU ACTUALLY INTERVIEWED ANY OF THE OTHER TRANS

19 THAT YOU'VE MENTIONED HERE TODAY?

20      LET'S START FIRST WITH TUAN TRAN.  HAVE YOU INTERVIEWED

21 HIM, AND HAS HE PROVIDED A STATEMENT?

22 A.    I HAVE NOT.

23 Q.    HAVE YOU INTERVIEWED --

24 A.    HE HAS PROVIDED A DEPOSITION IN SOME LEGAL PROCEEDINGS.

25 Q.    YOU USED THE TERM "DEPOSITION."  THAT TELLS ME THAT IT'S

45

1    SOME TYPE OF CIVIL SETTING.  IS THAT CORRECT?

2    A.    OR SOME KIND OF TESTIMONY, RIGHT.  RIGHT.  I'M NOT SURE

3    IF IT WAS A DEPOSITION OR --

4          SOME TYPE OF TESTIMONY THERE IS.

5    Q.    OKAY.  HOW ABOUT THIS PERSON CHOW NGUYEN?

6    A.    NO, I HAVE NOT INTERVIEWED HIM.

7    Q.    HOW ABOUT VINH TRAN?

8    A.    I HAVE NOT INTERVIEWED HIM.

9    Q.    AND HOAN TRAN?

10   A.    I HAVE NOT INTERVIEWED --

11         TUAN?

12   Q.    HOAN, THE FEMALE, HOAN TRAN.

13   A.    OH, NO, I HAVE NOT INTERVIEWED HER.

14   Q.    ALL RIGHT.  SO AGAIN, AS FAR AS THOSE --

15         THIS INFORMATION THAT YOU'RE PROVIDING TO THE COURT

16   DOESN'T COME FROM ANY KIND OF ADMISSIONS OR STATEMENTS FROM ANY

17   OF THESE NAMED INDIVIDUALS THAT YOU'RE RELATING TO THE COURT

18   THAT SUPPORTS THE WEIGHT OF THE EVIDENCE OF THIS INDICTMENT?

19   A.    NOT THE INDIVIDUALS THAT YOU NAMED, CORRECT.

20   Q.    ONE INDIVIDUAL THAT WAS PULLED OUT WAS AN INDIVIDUAL BY

21   THE NAME OF RICHARD GILMORE, IS THAT CORRECT?

22   A.    UH-HUH.

23   Q.    AND HE IS A PERSON THAT HAS BEEN INTERVIEWED, CORRECT?

24   A.    NOT BY ME, BUT, YES, DURING THE INVESTIGATION.

25   Q.    BY LAW ENFORCEMENT PEOPLE, WHO YOU ARE HERE TO GIVE

46

1   HEARSAY STATEMENTS ABOUT WHAT THEY MAY OR MAY NOT KNOW,

2   CORRECT?

3   A.      THAT'S CORRECT.

4   Q.      NOW, HE WAS INTERVIEWED, AND HE DENIED ANY KNOWLEDGE AS

5   TO THE CLAIMS WHICH YOU STATED OCCURRED HERE, CORRECT?

6   A.      WHICH CLAIMS ARE YOU REFERRING TO?

7   Q.      YOU WERE ASKED --

8           WHENEVER YOU WERE TALKING ABOUT ASPEN BUILDERS, YOU SAID

9   IT WAS COMMON TO ALL LOAN APPLICATIONS, AND THAT YOU BELIEVED

10  IT WAS FICTITIOUS; THAT YOU WENT TO RICHARD GILMORE, AND HE WAS

11  INTERVIEWED, AND THAT THAT HE DENIED ANY KNOWLEDGE.

12          DID I NOT ACCURATELY TAKE DONE YOUR INFORMATION, SIR?

13  A.      I DON'T KNOW IF HE SAID HE DENIED ANY KNOWLEDGE.  HE

14  SAID THAT HE DOES NOT OWN ASPEN BUILDER --

15  Q.      OKAY.

16  A.      -- COMPANY.

17  Q.      DENIED KNOWLEDGE ABOUT ASPEN BUILDERS?

18  A.      I'M NOT -- I'M NOT SURE.  I DIDN'T DO THAT INTERVIEW,

19  AND --

20  Q.      OKAY.

21  A.      -- I DON'T THINK I SAID THAT ON DIRECT.  NO.

22  Q.      WELL, HOW WOULD YOU WORD IT THEN, SIR?

23  A.      WELL, MY UNDERSTANDING IS THAT RICHARD GILMORE WAS

24  REPRESENTED AS THE OWNER OF ASPEN BUILDER, AND HE DENIED THAT

25  HE OWNED THAT COMPANY.

Case 2:10-md-02179-CJB-DPC Document 1476 Filed 06/26/15 Page 61 of 62
Case 1:08-cr-00090-RC-ESR Document 21 Filed 07/01/08 Page 47 of 48 PageID #: 83
TRANSCRIPT OF PROCEEDINGS

47

1    Q.      OKAY.

2    A.      AND I BELIEVE HE EVEN WENT FURTHER AND SAID THAT THAT

3 COMPANY DOES NOT EXIST.

4    Q.      TO HIS KNOWLEDGE?

5    A.      RIGHT.   BUT I BELIEVE HE DOES HAVE KNOWLEDGE OF THESE

6 INVOICES BEING PREPARED.

7    Q.      AND HE TOLD YA'LL THAT, OR TOLD A LAW ENFORCEMENT

8 OFFICER THAT?

9    A.      I BELIEVE SO.

10         MR. HAMM:   JUST ONE MOMENT, JUDGE.

11         PASS THE WITNESS.

12         THE COURT:   OKAY.   ANY QUESTIONS, MR. ROSS?

13         MR. ROSS:   MAY I ASK JUST ONE QUESTION FROM HERE,

14 JUDGE?

15         THE COURT:   SURE.

16                 REDIRECT EXAMINATION

17 BY MR. ROSS:

18    Q.      DO YOU KNOW WITH REGARD TO KELVIN TRAN HOW MANY --

19         CAN YOU THE THE COURT ABOUT ANY FALSE FEMA APPLICATIONS

20 THAT HE'S BEING INVESTIGATED FOR?   DO YOU HAVE THAT KNOWLEDGE?

21    A.      YEAH.   I DON'T HAVE THE SPECIFIC NUMBER, BUT KNOW THAT

22 HE SUBMITTED SEVERAL FEMA GRANT APPLICATIONS.

23    Q.      MORE THAN TEN?

24    A.      I BELIEVE IT WAS MORE THAN TEN, CORRECT.

25    Q.      OKAY.

TRANSCRIPT OF PROCEEDINGS

48

1    MR. ROSS:  PASS THE WITNESS, JUDGE.

2    THE COURT:  OKAY.  ANY QUESTIONS REGARDING THAT?

3    MR. HAMM:  NO.

4    THE COURT:  OKAY.  THANK YOU VERY MUCH SPECIAL AGENT.

5 YOU CAN STEP DOWN.  THANK YOU.

6    THE WITNESS:  THANK YOU.

7    * * * * * * * * * * * * * * * * * * *

8

9    CERTIFICATE

10    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

11 TO THE BEST OF MY ABILITY FROM TRANSCRIBING THE TAPE RECORDING

12 OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

13

14

15 /S/_____

16 WENDELL R. PARKS, CP/CM

17

18

19

20

21

22

23

24

25