## REAL PROPERTY LEASE AGREEMENT

This Lease agreement made and entered into on August 27, 2009, between Lot, Inc., a Nevada corporation, ("Landlord"), and Flor-Tex Shrimp Company, LLC a Texas limited liability company, ("Tenant").

In consideration of the premises and performance of the provisions of this lease agreement, the parties agree and covenant as follows:

**1. PREMISES**
The Landlord demises and lets to the Tenant, and the Tenant leases and hires from the Landlord, on the terms and conditions set forth in this lease, those certain premises consisting of land together with the buildings on the land (the "premises"), as described and set forth in Exhibit A, attached to this lease and made a part of this lease by this reference. The premises include the improvements described in Exhibit A.

**2. TERM**
This lease shall continue for one year commencing on September 1, 2009 and ending on August 31, 2010. Tenant shall the right to early occupancy from the date of execution hereof until the commencement of the term hereof, provided however, Tenant shall provide Landlord with proof of insurance

**3. RENTAL**
Tenant agrees to pay to Landlord, at an address to be designated by Landlord, or at any other place as Landlord shall designate in writing, as rental for the premises the sum of $12,000.00 per month during the lease term. The first month's rent shall be paid on execution of this lease. The rental for the second month of the lease term will be due and payable on the first of the month and payable on the first day of each subsequent month.

**4. USE OF PREMISES**
Tenant covenants and agrees that the premises will be used and occupied for the operation of a shrimp receiving dock and packing/processing plant or other allied business to be conducted on premises and for no other purpose without first obtaining the prior written consent of Landlord. Tenant at all times will fully and promptly comply with all laws, ordinances, orders and regulations of any lawful

1

authority having jurisdiction of the premises including, but not limited, those that relate to the cleanliness, safety, occupation and the use of the premises and the nature, character and manner of operation of the business conducted in or at the premises. Tenant agrees to limit its use and storage of toxic or hazardous materials on the premises to only those normally required in its production or processes. Landlord grants to Tenant the right to operate any and all equipment maintained and remaining on the premises. For equipment the Tenant chooses to use, Tenant shall pay to any equipment lessor or lender an amount that the Tenant can, from time to time, negotiate with said lessor or lender for the use of the equipment during the term of this lease. Landlord acknowledges and agrees that Tenant will use its best efforts to negotiate a temporary or permanent reduction in the monthly payment that is otherwise due to said lessor or lender. In the event the Tenant is successful in negotiating a reduction on the monthly payment for equipment it chooses to use, Tenant will use its best efforts to seek and obtain from said lessor or lender a principal reduction that is otherwise owed by the Landlord, or its affiliates for said equipment. In the event the Tenant is unsuccessful in negotiating an agreed payment schedule with said lessor or lender, Landlord acknowledges and agrees that the collateral, if any, thereunder maybe seized by the said lessor or lender and seek a deficiency balance from Landlord. Tenant shall not assume any lease or obligation of Landlord thereunder, including, but not limited to any deficiency, but will its use its best effort to pay said lessor and/or lender the negotiated amount as set forth herein. Tenant has the option, at its sole choice, to purchase any and all equipment from said lessor/lender and buy out and extinguish any equity interest the Landlord might have held therein. Landlord agrees to cooperate with Tenant in the negotiations with the lessor/lender to accomplish the buy out.

5. **CARE OF PREMISES**
Tenant will not permit, allow or cause any act or deed to be performed or any practice to be adopted or followed in or about the premises which will cause or be likely to cause injury or damage to any persons or to the premises or to the buildings or to the sidewalks and pavements adjoining the premises.
Tenant agrees to permit no waste of the leased premises, but on the contrary, to take good care of them; and, on

2

termination of this lease, to surrender possession of the premises, without notice, in as good condition as at the commencement of the term, or as the leased premises may be put in during the term, as reasonable use and wear of the premises will permit. Any fixtures, equipment or personal property of Tenant which have been installed at the premises will be removed by Tenant at its expense within 30 days after termination of the lease or vacation of the premises by Tenant, unless Landlord and Tenant agree that any fixtures, equipment or personal property may remain, and Tenant will repair any damage to the premises caused by the removal of the fixtures, equipment or personal property. Any fixtures, equipment or personal property of Tenant which remain at the premises for more than 30 days after termination of the lease or vacation of the premises by Tenant will be the property of Landlord.

## 6. ASSIGNMENT AND SUBLETTING

Tenant will not assign or in any manner transfer this lease or any estate, interest or sublet the premises or any part or parts of the premises or permit the use of the same or any part by anyone other than Tenant without first obtaining the prior written consent of Landlord, which will not be unreasonably withheld.

Consent by Landlord to any assignment or transfer of interest under this lease or subletting of the premises or any part of the premises will be limited to the instance stated in the written consent and will not constitute a release, waiver or consent to any other assignment, transfer of interest or subletting.

Landlord will have the right to assign its interest in this lease at any time without the consent of Tenant. In the event that Landlord does assign its interest in the lease to a third party, Landlord will give written notice of the assignment to Tenant at which point, Tenant will make lease payments provided for under this lease in accordance with the written notice tendered to Tenant by Landlord. The covenants and agreements of this lease will bind and benefit the successors and assigns of the parties to this lease.

## 7. UTILITIES

Tenant will procure for its own account, and will pay when due, the cost of all water, gas, electrical power, heat and fuel consumed in or at the leased premises. Landlord shall pay for and discharge any prior balances due or claimed to be due for any utilities prior to the commencement date.

3

The performance of Tenant hereunder is condition upon the Landlord's satisfactory settlement of any utilities obligations which would inhibit or prohibit Tenant's occupation and use of the premises.

## 8. INDEMNIFICATION OF LANDLORD

Tenant covenants and agrees to save Landlord harmless from any liability for injuries or damages to any person or property on or about the leased premises from any cause, including the use, storage or disposal on the leased premises of any toxic or hazardous materials by Tenant or its employees or agents, and agrees to procure, at its own expense, general liability insurance, in the amount of not less than $2,000,000 per occurrence. Tenant will keep insurance in force during the term of the lease and will deliver the policy or a copy or certificate of the policy to Landlord. The policy will name Landlord as an additional insured.

## 9. MAINTENANCE AND REPAIR

Tenant, at its sole cost and expense, whether the same is the property of Tenant or Landlord, will promptly repair and at all times maintain in good condition the leased premises including the building and all its appurtenances and equipment including, but not limited to, heating units, fixtures, equipment, electrical fixtures and equipment, electrical installation, plumbing, plumbing equipment and fixtures, all machinery, all hardware, all painting or decorations of every kind. Tenant will promptly replace all broken or damaged glass, including window glass and plate glass. Landlord will be responsible for maintenance and repair of the foundation, exterior walls and the roof of the leased premises. It is the intent of the parties all capital improvements expenses will be the responsibility of the Landlord. Tenant will notify Landlord in advance of work being done and the work will be performed only by persons approved in advance in writing by Landlord. In the event Tenant fails to make any of the repairs, which it is obligated to make with reasonable dispatch, Landlord will be entitled to enter the leased premises and make or cause the same to be made, and the amount or amounts expended by Landlord for such repairs will be due and payable by Tenant to Landlord as additional rent under this lease.

## 10. EMINENT DOMAIN

If a part of the leased premises will be taken by any public authority under the power of eminent domain, then

4

the term of this lease will cease on the part so taken from the date possession of the part taken and the rent will be paid up to that day. In the event that all or a portion of the leased premises is taken, Tenant will have the right either to cancel this lease and declare the same null and void or to continue in possession of the remainder of the leased premises under the terms of this lease, except that the rent will be reduced in proportion to the amount of the premises taken. All damages awarded for the taking will belong to and be the property of Landlord, whether the damages are awarded as compensation for diminution in the value of the leasehold or of the fee of the leased premises. Any relocation value will be payable to the Tenant.

## 11. DAMAGE BY FIRE OR OTHER CASUALTY

Tenant will insure the leased premises against fire and other casualty, including windstorm damage in an amount acceptable to Landlord, but in no event less than $2,000,000 with Landlord as the named insured. If the building is damaged or destroyed in whole or in part by fire or other cause and is rebuilt and restored to a good and usable condition by Landlord within a reasonable time, the rent shall abate, entirely in case the entire premises are unusable and pro rata in case a portion is unusable, until the same will be restored to a usable condition. If Tenant fails to adjust its own insurance within a reasonable time and as a result the repairing and restoration is delayed, there will be no abatement of rental as provided above during the term of the delay, but if the Tenant uses any part of the leased premises for storage during the period of repair, a reasonable charge will be made for such use against Tenant. In case the building is not repaired or restored, the lease will be terminated. In the event of a flood, the Tenant may terminate this lease if the premises cannot be restored within a reasonable amount of time of not to exceed 60 days. Unless otherwise required by law, Tenant will not be obligated to procure and/or maintain flood insurance.

## 12. RIGHT TO MORTGAGE

Landlord reserves the right to subject and subordinate this lease at all times to the lien of any mortgage or mortgages now or subsequently placed on Landlord's interest in the premises and on the land and buildings placed on the land of which the leased premises forms a part. In furtherance of this, Tenant agrees to execute any documents requested

by Landlord's lender to the effect that Tenant acknowledges that Tenant's lease is subordinate to Landlord's mortgage, provided, however, that any such acknowledgment will expressly provide that Tenant will be permitted to continue occupancy of the leasehold pursuant to the terms of the lease so long as Tenant is not in default. In no event shall the mortgage impair the Tenant's option to renew the term of this lease or to purchase the premises as described below.

### 13. TAXES AND ASSESSMENTS

A. Tenant will punctually pay and discharge, except as expressly provided otherwise in this section, commencing with the first day of the demised term, and during any extension of the term, all real estate taxes, special improvements, assessments, water rents and charges, sewage rents and charges and governmental impositions, duties and charges of every kind and nature, extraordinary as well as ordinary, and including any charge or tax levied in lieu of the foregoing or in addition to it, whether or not within the contemplation of the parties or not at the time of execution of this lease, to the extent that the installments (if installment payment is permitted without penalty) become due and payable during term or any extension and which are attributable to the leased premises. The obligation of the Tenant will apply whether any tax or any other charge referred to above is imposed, during the lease term or any extension of the term, by virtue of any present or future laws, rules, requirements, orders, directions, ordinances, or regulations of the United States of America, or of the state, county, or city government or of any other municipal or lawful authority where the premises are located. Tenant will be deemed to have complied with the foregoing covenants of this section if payment of any such taxes, assessments, water rents and charges are made by Tenant within the period during which payment is permitted without penalty, and Tenant will within 10days produce and exhibit to Landlord satisfactory evidence of payment, on demand. Nothing contained in this lease will require Tenant to pay Landlord's income, franchise, succession or transfer taxes or to discharge any lien imposed in connection with such matters; and in furtherance of this Landlord will keep the demised premises free and clear of tax liens based on these taxes.

B. The Tenant will have the right to contest, review or challenge by regular proceedings or in any other manner as may be provided (which, if instituted, will be conducted

promptly at Tenant's own expense and free of all expense of the Landlord) any tax, assessment, water or sewer imposition mentioned above. The Landlord will join in the proceedings, on Tenant's request, but at Tenant's sole cost and expense. In the event there is any refund, reduction or benefit that will result as a consequence of these proceedings, the Tenant will have the right to receive the refund or benefit.

C. Landlord at Landlord's option may, but will not be obligated to, contest or review by legal proceedings, or in any other manner as may be legal, and at Landlord's own expense, any tax, assessment, water rent or charge, or other governmental imposition mentioned above, which will not be contested or reviewed as stated above, by Tenant and unless Tenant will promptly join with Landlord in the contest or review, Landlord will be entitled to receive and retain any refund payable by the governmental authority with respect to these matters.

### 14. ADDITIONAL RENT

All taxes, assessments, imposts, costs and expenses which Tenant assumes or agrees to pay pursuant to this lease will be treated as additional rent and in the event of nonpayment; Landlord will have all the rights and remedies as provided for in this lease in the case of nonpayment of rent or of a breach of condition.

### 15. EVENTS OF DEFAULT; RIGHTS OF LANDLORD ON DEFAULT

In the event Tenant fails to make payment of the rent or any other item specified in this lease that Tenant is required to make for 10 days or more after the same becomes due and owing, breaches any of the covenants provided in this lease, fails to fully and promptly perform any act required of it in the performance of this lease, abandons the premises, becomes insolvent, makes an assignment for the benefit of creditors, is adjudicated a bankrupt, has a receiver or trustee appointed for its property as a result of its insolvency, or is subjected to a levy of execution or attachment or other taking of its property or its assets or its leasehold interest in the leased premises by process of law or otherwise in satisfaction of any judgment or debt or claim, Tenant will be in default. Landlord, at its option, may, unless the default is cured within 10 days after written notice of the default is delivered to Tenant, immediately terminate this lease and all of the rights of Tenant under this lease, and then Landlord will have the right to enter the leased premises and remove all persons

7

and property from the premises, or Landlord may, without terminating this lease, enter into the leased premises as the agent of Tenant and relet the premises with or without any furniture, fixtures or property of Tenant, or make any repairs, changes, alterations or additions in or to the premises that may be necessary or convenient, all for the account of Tenant. The reletting for the Tenant will be for whatever rent and on whatever terms as will be satisfactory to the Landlord, and Landlord will credit the proceeds, after paying all the costs and expenses of the reentry, repairs, changes, alterations and additions and the expenses of such reletting, to the unpaid rent and other amounts falling due under this lease during the remainder of this term; and Tenant will remain liable to Landlord for the balance.

### 16. COVENANT OF TITLE AND QUIET POSSESSION

Landlord covenants that it has the right to make this lease for the term specified above in this lease, and that it will put Tenant into possession of the premises, free from all encumbrances, liens or defects in the title for the full term of this lease. Landlord further covenants that there are no restrictive covenants, zoning or other ordinances, or regulations which will prevent Tenant from conducting its usual business in the demised premises.

### 17. HOLDING OVER

In the event Tenant remains in possession of the leased premises after the expiration of this lease without having exercised its option to extend the term of this lease, and without the execution of a new lease, it will be deemed to be occupying the premises as a Tenant from month to month, and all conditions of this lease will remain unchanged, except that the rental will be increased to 103 percent of the rental in effect at the time of the expiration of this lease.

### 18. NOTICES

All notices required or permitted under this lease will be deemed to be properly served if sent by first class mail with postage prepaid to the last address previously furnished by the parties to this lease.

### 19. WAIVER

The failure of the parties to insist on strict performance of any of the covenants or conditions of this lease or to exercise any option conferred in this lease in any one or

more instances will not be construed as a waiver or relinquishment of any such covenants, conditions or options, but the same will be and remain in full force and effect. The subsequent acceptance of rent due under this lease by Landlord will not be deemed to be a waiver of any preceding breach by Tenant of any term, covenant or condition of this lease, other than the failure of Tenant to pay the particular rental so accepted, regardless of Landlord's knowledge of the preceding breach at the time of acceptance of the rent. No covenant, term, or conditions of this lease will be deemed to have been waived by Landlord, unless such a waiver is in writing by Landlord.

### 20. ACCORD AND SATISFACTION

No payment by Tenant or receipt by Landlord of a lesser amount than the monthly rent or any other charge or fee stipulated in this lease will be deemed to be other than on account of the earliest stipulated rent, fee or other charge, nor will any endorsement or statement on any check or any letter accompanying any check or payment be deemed as creating an accord and satisfaction, and Landlord may accept such a check or payment without prejudice to Landlord's right to recover the balance of the rent, fee or charge or pursue any other remedy provided for in this lease.

### 21. ENTIRE AGREEMENT

This lease and the attached exhibits, if any, set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the leased premises, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between Landlord and Tenant other than those set forth in this lease. Except as otherwise provided in this lease, no subsequent alteration, amendment, change or addition to this lease will bind Landlord or Tenant unless reduced to writing and signed by them.

### 22. PARTIAL INVALIDITY

If any term, covenant or condition of this lease, or the application of any such term, covenant or condition to any person or circumstance, will, to any extent, be invalid or unenforceable, the remainder of this lease, or the application of such a term, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, will not be affected and each term, covenant or condition of this lease will be

valid and be enforced to the fullest extent permitted by law.

### 23. GOVERNING LAW
This lease will be interpreted under and governed by the laws of the State of Texas.

### 24. OPTION TO RENEW
Tenant has the right to renew this lease, on the same terms and conditions, for an additional term of one year. Notice of its right to extend the term shall be given not less than 30 day prior to the expiration of the original term.

### 25. EARLY TERMINATION
Landlord has the right, with 60 days written notice, to terminate the term of this lease. Tenant, has the right to extend the termination notice period by an additional term of 30 days by notifying the Landlord, in writing, within 10 days after the Landlord delivers its termination notice. In the event the Landlord elects to terminate the term before the then current expiration period, the Landlord will reimburse the Tenant the costs it reasonably incurred to bring the plant into an operational status upon the commencement of this lease.

In witness, the parties have executed this lease at Port Arthur, Texas on August 26, 2009.

LANDLORD

LOT, INC.
A Nevada corporation

By: Hoang-Oanh Tran
Its: President

TENANT

Flor-Tex Shrimp Company, LLC
A Texas limited liability company

By: Robert Paterson
Its: President

## Exhibit A

Description of Premises

3933-3931 South Martin Luther King Drive
Port Arthur, TX 77640

Building #1 has 2nd story office, 2 freezers, and first floor processing area.

Building #2 has freezer and processing area.

Loading dock is between these 2 buildings.



**Flor-Tex Shrimp Co., LLC**
**3060 North Gallagher Road**
**Dover, Florida 33527**

Lot, Inc.
ATTN: Hoang-Oanh Tran, President
39 Remmington Lane
Aliso Viejo, California 92656

    Re:   *Real Property Lease Agreement*

Dear Oanh:

    The Real Property Lease Agreement made between Lot, Inc. and Flor-Tex Shrimp Company, LLC came to an end on August 31, 2010. Pursuant to the terms of the agreement, we became a hold over as of September 1, 2010. Please note, that this letter is notice that Flor-Tex Shrimp Co., LLC intends to terminate its hold over tenancy no later than November 30, 2010. Therefore, no further rental will be made after that date and all of the obligations of the parties under the Real Property Lease Agreement will come to an end then.

    I note that the September 2010 rent should have been adjusted pursuant to the terms thereof. The rent should have been increased by $360. Therefore, the October and November payment will be the stepped up rent of $12,360. The shortfall of September in $360 will be included in the rental payment to be delivered for October or November. As of the termination date, any utilities that Flor-Tex Shrimp Co. has arranged for its account will terminate.

    Thank you for your cooperation in this regard. Please let us know if there is anything we can do to assist in the orderly transition of the property back to you.

                               Sincerely,

                               Flor-Tex Shrimp Co., LLC

                               *R. Patterson*

                               **ROBBIE PATTERSON,**
                               **President**