UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | * | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | SECTION:  J |
| | * | |
| This Document Applies to: | * | JUDGE BARBIER |
| | * | |
| *No. 12-970, Bon Secour Fisheries, Inc., et al. vs.* | * | MAG. JUDGE SHUSHAN |
| *BP Exploration & Production Inc., et al.* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>MEMORANDUM IN OPPOSITION TO MOTION OF THE SPECIAL MASTER FOR
RETURN OF PAYMENTS MADE TO WARDELL PARKER AND OTHERS</u>

NOW INTO COURT, through undersigned counsel, comes Wardell Parker, who submits the following memorandum in opposition to the Motion of the Special Master for Return of Payments made to Wardell Parker and Others.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Wardell Parker is a full-time Senior Substation Mechanic for Entergy Louisiana, LLC, who began a part-time shrimping business in 2005.[1]  Mr. Parker owns a shrimping vessel commonly referred to as *Brooklyn*, a 22 feet 1982 Lafitte, bearing Hull identification number JFG622567482.[2]  Mr. Parker took the *Brooklyn* out into the waters in Freeport Canal, Grand Bayou, Breton Sound, and Buras, Louisiana on Friday thru Sunday to catch shrimp and other seafood.  A portion of his catch was consumed by Mr. Parker's immediate and extended family. The remainder of his catch was sold to citizens on the side of the road in various locations in and around New Orleans - a common practice in the Crescent City.  Like many local fishermen during that time, Mr. Parker was affected by the *Deepwater Horizon* oil rig explosion and subsequent spill that bled into the Gulf of Mexico and surrounding waters.

---

[1] Exhibit A, ¶ 7.
[2] Exhibit A, ¶ 12.

In January 2011, Mr. Parker filed a claim with the Gulf Coast Claims Facility ("GCCF"). He was assigned GCCF claimant identification number 3336787.  Mr. Parker submitted a Full Review Final Payment Claim Form.  On said form, Mr. Parker disclosed that he was currently employed by Entergy and had been employed by said company since 2005.[3]  Absent the assistance of an attorney or an accountant, Mr. Parker initially valued his claim for lost earnings and profit at $25,000.00[4] and his claim for loss of subsistence use of natural resources at $15,000.00[5].  Mr. Parker did not receive any payments as a result of filing the claim with GCCF.

In or about March 2012, Mr. Parker retained Danziger & De Llano, LLP, to recover any damages and compensation to which he may be entitled in connection with or arising out of the events surrounding the April 20, 2010 explosion of the *Deepwater Horizon* offshore drilling rig.[6] Mr. Parker submitted the following documents to Danziger & De Llano, LLP, to assist in the valuation of his claim:  (a) 2009 U.S. Individual Income Tax Return, with schedules; (b) signed statements from 28 individuals who purchased fresh shrimp from him during the Spring 2009 and Fall 2009 shrimp seasons; (c) signed statement by Wardell Parker outlining the price per pound paid by individuals who signed statements regarding shrimp purchases; (d) licenses associated with shrimping; (d) bank statements evidencing deposits into his Chase checking account; and (e) copy of Full Review Final Payment Claim Form, with supporting documents, filed with the GCCF prior to retaining Danziger & De Llano, LLP ("Danziger & De Llano").

Danziger & De Llano subsequently filed two claims on behalf of Mr. Parker with the *Deepwater Horizon* Economic Claims Center ("DHECC"), one in his capacity as a vessel owner and the other in his capacity as a boat captain.  On or about August 7, 2012, Kyle Frazee, the BP

---

[3] Exhibit B, p. 3
[4] Exhibit B, p. 8
[5] Exhibit B, p. 10
[6] Exhibit A, ¶ 29

Commercial Fishing & Individual Loss Accounting Expert who was assigned to prepare Mr. Parker's claim file, authored and submitted correspondence to DHECC wherein he stated, in part, "…the 2009 tax return was used, however, because of the amount of shrimp sold stated in the sworn written statements submitted with this claim, we believe it can be determined that all income claimed on the tax return came from shrimping revenue."[7]  Mr. Frazee also submitted a proposed settlement, accounting invoice, and Sworn Written Statement for Claimant Accounting Report.[8]

According to Special Master, the following documents were submitted in support of Mr. Parker's claim:  (a) 2009 U.S. Individual Income Tax Return; (b) a summary prepared by Mr. Parker indicating he sold close to 45,000 pounds of shrimp between May 2009 and December 2009; and (c) statements from 29 customers who purchased shrimp from Mr. Parker in 2009.[9]

In November 2012, DHECC paid Mr. Parker $238,684.32 on two claims filed under the *Deepwater Horizon* Economic and Property Damages Settlement Agreement.  Danziger & De Llano withheld $60.100.32 as payment of attorney's fees and costs advanced.  Mr. Parker executed all necessary settlement documents in exchange for the funds.

The Motion of the Special Master for Return of Payments Made to Wardell Parker and Others was filed on December 15, 2014.  The Special Master seeks a judgment requiring Mr. Parker and the professionals who assisted Mr. Parker to make restitution to the DHECC in the amount of $238,684.32 and prohibiting Parker from participating in further seafood distributions. Danziger & De Llano returned $60,100.32 to the DHECC.  Accordingly, an order was signed on January 7, 2015, dismissing Danziger & De Llano, without prejudice.  The amount sought by the Special Master is now reduced to $178,584.00.

---

[7] Exhibit C, p. 2.
[8] Exhibit C, pp. 3-6.
[9] Rec. Doc. 13848-1, p. 3

## II.    ARGUMENT

The Special Master argues that the Court should grant the motion instant because "[t]he totality of the record shows that there is no genuine issue as to any material fact and that the Special Master and the DHECC are entitled to judgment as a matter of law."[10]  Thus, the Special Master argues that judgment is required under the Rule 56 summary judgment standard. *See* Fed. R. Civ. P. 56. When considering a motion for summary judgment, the district court should "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). A court determining whether a party is entitled to judgment as a matter of law "must disregard all evidence favorable to the moving party that the [finder of fact] is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000). Further, summary judgment "must be denied when reasonable minds might differ on the inferences arising from the undisputed facts." *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 352 (5th Cir. 1989) (citation and quotation omitted).

The evidence presented here falls short of this standard. The Special Master's motion fails to provide evidence of the elements of fraud, including, most significantly, any intent by Mr. Parker to induce reliance on a misrepresentation and a justifiable reliance by the DHECC on any misrepresentations. The Special Master filed this motion asking the Court to infer all elements of fraud from the mere misstatement relative to proof of shrimping revenue in a letter from an accounting professional associated with Mr. Parker's former counsel, Danziger & De Llano.  The Special Master's motion does not articulate facts sufficient to plead a fraud claim with particularity.  Fraud cannot be established by insinuation and inference, especially on a motion for summary judgment.  Therefore, the motion should be denied.

---

[10] Rec. Doc. 13848-1, p. 3.

A.  The Special Master failed to establish the elements of fraud.

The Special Master argues that Wardell committed fraud and asks the Court to order repayment of $178,584.00 to the DHECC and to bar Wardell's further participation in the Seafood Compensation Program.[11] The Special Master, however, fails to establish the elements of fraud.

The common law of fraud applies to the Special Master's Motion. Under the Amended Settlement Agreement, which governs the settlement program, general maritime law applies to any disputes regarding the Agreement or the settlement program: "[T]his Agreement and the Release and Individual Releases hereunder shall be interpreted in accordance with General Maritime Law as well as in a manner intended to comply with OPA [Oil Pollution Act]." Amended Settlement Agreement, § 36.1.  General maritime law incorporates the common law of fraud. *E.g., Su v. M/V S. Aster*, 978 F.2d 462, 473 (9th Cir. 1992); *Black Gold Marine, Inc. v. Jackson Marine Co., Inc.*, 759 F.2d 466, 470 (5th Cir. 1985); *Operaciones Technicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, 926 F. Supp. 2d 858, 862 (E.D. La. 2013); *Cargill, Inc. v. Degesch Am., Inc.*, 875 F. Supp. 2d 667, 674 (E.D. La. 2012); *Elmwood Dry Dock & Repair v. H & A Trading Co., Ltd.*, Nos. 93-02156, 94-01844, 94-03783, 97-00191, 1997 WL 781298, at *21 (E.D. La. Dec. 16, 1997).

Applying general maritime law under the Amended Settlement Agreement, the Special Master must establish that, based on the undisputed facts in the record, he is entitled to judgment as a matter of law with respect to each of the five elements of common law fraud: (1) Mr. Parker made a false representation of fact; (2) Mr. Parker knew or believed that the representation was false; (3) Mr. Parker intended to defraud DHECC by inducing DHECC to act in   reliance on the false representation; (4) DHECC justifiably relied on the representation; and (5) DHECC was

---

[11] Rec. Doc. 13848-1, p. 1.

damaged because of such reliance.  *See, e.g., Operaciones*, 926 F. Supp. 2d at 862; *Cargill*, 875 F. Supp. 2d at 674; *Elmwood*, 1997 WL 781298, at *21-22 (citing W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, § 107 (5th ed. 1984)); *see also Pence v. United States*, 316 U.S. 332, 338 (1942); *United States v. Toyobo Co. Ltd.,* 811 F. Supp. 2d 37, 52 (D.D.C. 2011).  Failure to establish any of the elements of fraud provides an independent basis for denying the Special Master's motion.  The facts presented do not support a finding, under Rule 56, that

     i.   *Mr. Parker did not make a false representation of fact.*

When Wardell Parker retained Danziger & De Llano, LLP, he relinquished control of the handling of his claim to a knowledgeable and experienced third party that was specifically trained to handle and navigate the laws dictating compensation and settlement for losses arising from the *Deepwater Horizon* oil spill.  As is the case for most law firms, the lay civilian hires and contracts the legal expertise of a specific lawyer or practice when that civilian is out of his or her depth. This contract represents a deepest confidence of the civilian to turn the matter over to the legal professional, with the trust that he will represent the case to the best of his abilities and to the fullest extent of the law. The civilian does not question or refute the practices of the attorney, for that would negate the contract. Such is the case for the relationship between Mr. Parker and Danziger & De Llano, LLP.  Mr. Parker represented his case and his claim honestly and truthfully to the Danziger & De Llano firm with the belief and confidence that they would do the same to the DHECC.

When Mr. Parker signed the Sworn Written Statement that was drawn up by the staff accountants of Danziger & De Llano, he had no knowledge that his income from Entergy was included in the calculations. The representatives of Danziger & De Llano told him that he had a

right to two claims as vessel owner and captain.  Just as the attorneys for Danziger & De Llano or for 99% of practicing lawyers, do not get raised in trucks and fix power lines during hurricanes, Mr. Parker, an admitted *trained* mechanic did not condescend to recalculate his claim number after the staff accountant and attorneys had done their job. That is not where his knowledge and expertise lie. Mr. Parker had absolutely no way of knowing, or comprehending, how the DHECC calculated claims, or on what restrictions the overall settlement was based.

Mr. Parker produced all documents that were requested of him, including, but not limited to, signed statements from individuals who purchased fresh shrimp from him during the Spring 2009 and Fall 2009 shrimp seasons, a signed statement by Mr. Parker outlining the price per pound paid by the individuals who signed the statements regarding shrimp purchases, licenses associated with shrimping, and bank statements evidencing deposits relative to shrimp revenue. Further, Mr. Parker signed authorizations provided by Danziger & De Llano permitting the retrieval of his income tax returns directly from the Internal Revenue Service.

The Special Master makes particular reference to a letter dated August 7, 2012, authored and submitted by Kyle Frazee of Danziger, wherein he stated, in part, "…the 2009 tax return was used, however, because of the amount of shrimp sold stated in the sworn written statements submitted with this claim, we believe it can be determined that all income claimed on the tax return came from shrimping revenue."  Mr. Parker concedes that this was a misstatement by an individual authorized to act on his behalf with the DHECC.  However, this misstatement does not rise to the level of a misrepresentation of fact because the tax return referenced in the letter was submitted to DHECC for independent review and analysis.

This misstatement should not be attributed to Mr. Parker because he did not discuss the contents of or review the letter authored by Mr. Frazee of Danziger & De Llano prior to its'

submission to the DHECC.  Mr. Parker had no knowledge that a false representation of his income was used to calculate his claim awards.  Mr. Parker fully believed that his Sworn Statement was a representation of the shrimp revenue he evidenced in the form of signed statements from customers and his bank statements.

     ii.    *Wardell Parker did not intend to defraud the DHECC by inducing the DHECC to act in reliance on the misstatement made by Mr. Frazee of Danziger & De Llano.*

The evidence does not support a finding that Wardell intended to gain an unfair advantage by misrepresenting facts to the DHECC. A plaintiff alleging common law fraud must establish that the defendant possessed fraudulent intent. *Operaciones*, 913 F. Supp. 2d at 259; *Cargill*, 875 F. Supp. 2d at 674; *Elmwood*, 1997 WL 781298, at *21-22. A fraud claim cannot succeed unless the plaintiff can show that the defendant made incorrect statements "with the intent to deceive or deprive [the plaintiff] of his financial earnings." *Friedman v. Anderson*, 23 A.D.3d 163, 167 (N.Y. App. Div. 2005). "The intent-to-deceive element of a fraud cause of action 'imports a significantly greater degree of purposeful conduct than does the 'foreseeability' element of a negligence action.'" *Willis v. Marshall*, 401 S.W.3d 689, 702 (Tex. Ct. App. 2013) (quoting Blue Bell, Inc. v. *Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 415 (Tex. Ct. App. 1986)); see also Richter, S.A. v. Bank of Am. Nat'l Trust & Saving Ass'n, 939 F.2d 1176, 1185 (5th Cir. 1991). Indeed, the plaintiff must show that the defendant intended to deceive the plaintiff to benefit himself. *Elmwood*, 1997 WL 781298, at *22.

In *Elmwood*, for instance, the plaintiff alleged that it was defrauded by the defendant defrauded when the defendant lied about the status of a ship that was seized for nonpayment of invoices. *Elmwood*, 1997 WL 781298, at *7, 22. The court found that the defendant was not liable for fraud even though the defendant knowingly misrepresented facts to the plaintiff.  *Id.* at *22. Although the defendant knowingly made two false statements, "these two lies do not

amount to fraud because the remaining elements of fraud have not been satisfied." *Id.* at *22. The court found "no evidence suggesting that [the defendant] intended to deceive [the plaintiff] in order to benefit himself," and it could not "conclude based on the circumstantial evidence presented by [the plaintiff] that [the defendant] intended to defraud [the plaintiff] by making false statements." *Id.* at *8; *see also Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 222 (S.D.N.Y. 2007) (granting summary judgment to defendants on common law fraud claim where plaintiffs failed to establish defendants' intent to defraud); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 576 (Tex. 2001) (same).

In the case sub judice, Mr. Parker did not intend to defraud the DHECC based on a misrepresentation for his benefit.  Mr. Parker submitted bank statements and statements from customers which, taken as true and correct, evidenced revenue in excess of the $80,000.00 figure used by Mr. Frazee when valuing his claim.  Mr. Parker did not intend for any of his income as a mechanic to be considered when calculating the awards.

Mr. Parker put his full trust in the ability of Danziger & De Llano to properly calculate an accurate claim based on the documentation he provided. He was completely truthful with the firm about his employment and income, and provided honest and verifiable documentation. Mr. Parker signed the Sworn Written Statement that was drawn up by the staff accountants of Danziger & De Llano based on trust and belief in their skill set and expertise.  He had no reason to suspect that the calculations for his claims included his wages from Entergy. Accordingly, there is no evidence that Wardell sought to induce the DHECC to pay more than it should.

iii.    *DHECC did not justifiably rely on the representation relative to Mr. Parker's income.*

The DHECC did not justifiably rely on the representation made by Danziger & De Llano relative to Mr. Parker's income associated with shrimping.  It had an obligation to thoroughly

review and calculate each claim before administering settlement amounts.  Had the DHECC done its due diligence, it would have first reviewed the claim filed personally by Mr. Parker with the GCCF, wherein he estimated his losses to be approximately $25,000.00 for lost earnings and profits  and $15,000.00 for loss of subsistence use of natural resources.  Mr. Parker also disclosed on this form that he worked full time for Entergy.   At no point during the entire claims process was Mr. Parker dishonest or tried to hide his primary occupation.  If the DHECC had reviewed the original claim in conjunction with the two new claims filed by Danziger and De Llano, LLP, on Mr. Parker's behalf, it would have noticed the discrepancies. The handler for Mr. Parker's claim could then have made the necessary inquiries, requested the documentation that is allegedly missing from the claim, and settled for a number that was fair and true to both parties.

Further, even if the GCCF claim was unavailable for some reason, any competent, thorough reading of the claims files with DHECC would have identified the word "MECHANIC" listed as Mr.  Parker's occupation on his 2009 tax return, providing enough basis for, at the very minimum, a request for more documentation, such as the missing W-2.  In fact, due diligence would insist that the missing W-2 be produced before the claim is even processed, as the Special Master states that it is required documentation to rely on the alleged requested method of claim calculation.

The Special Master also alleges that there is no indication of revenue or earnings from shrimp landings anywhere on the 2009 federal tax return provided by Danziger & De Llano. Despite the fact that Mr. Frazee stated that "all income claimed on the tax return came from shrimping revenue" in his letter attached to the claims, the processors at the DHECC had an obligation and a responsibility to independently check the facts of the claim and the calculations made therein.  Thus, the DHECC's reliance on any statements or representations relative to the

income derived from shrimping was not justifiable absent the production of the necessary supporting documentation mandated by the Settlement Agreement protocol.

      iv.   *Facts presented by the Special Master do not change Wardell Parker's lack of intent and DHECC's lack of injury.*

In these circumstances, the facts presented by the Special Master are insufficient to establish the elements of common law fraud. The Special Master asserts the following:

a) Mr. Parker's 2009 federal tax return reported $79,228.00 in wage income from shrimping;

b) Mr. Parker did not provide any supporting documents for his 2009 tax return, such as a W-2 or a 1099;

c) The Sworn Written Statement provided by staff accountant, Kyle Frazee, claims $80,000.00 in revenue from shrimp sales;

d) Wardell Parker failed to submit his 2008 tax return;

e) Staff accountant, Kyle Frazee, submitted a letter stating that "because of the amount of shrimp stated in the sworn written statements submitted with this claim, we believe it can be determined that all income claimed on the tax return came from shrimping revenue";

f) Mr. Parker submitted a Sworn Written Statement stating that his revenue from 2009 was attributed solely to shrimp sales and that he submitted the statement that read "because of the amount of shrimp stated in the sworn written statements submitted with this claim, we believe it can be determined that all income claimed on the tax return came from shrimping revenue";

g) Wardell Parker submitted a summary in which he said he sold about 45,000 pounds at shrimp $3 to $5 per pound, between May 2009 and December 2009, as well as 29 statements signed in 2012 by customers of Mr. Parker in 2009; and

h) The six interviews that were actually conducted out of the 29 statements provided established numerous inconsistencies concerning Wardell Parker's seafood sales.

(Sp. Master's Mem. at 2-5.)

First and foremost, the Special Master appears to have misunderstood a few of his "facts," as he later notes in his *Memorandum* (pg. 4) that Wardell's 2009 tax return does in fact list "MECHANIC" as his occupation, despite his allegation that Mr. Parker never disclosed his primary source of income as a mechanic on any documentation. Additionally, the Special Master alleges claims that the interviews with six of the 29 listed patrons provided by Wardell Parker revealed inconsistencies in seafood sales. These interviews were conducted in September and October of 2014, over five years after these sales were made. Considering the trauma the *Deepwater Horizon* explosion wreaked on the entire Gulf Coast, it is of no surprise that many of the people on that list were inaccessible or unreachable. Furthermore, even the most loyal of clients would not remember the exact poundage and cost of transactions from five years passed. To expect occasional clients to recall minute details after such a long period of time had passed, and then use that testimony to discredit Mr. Parker without him being able to cross-examine the individuals is a denial of substantive due process.

The Special Master presents contradictory information in his facts, in that the Sworn Written Statement provided by staff accountant, Kyle Frazee, claims $80,000.00 in revenue from shrimp sales, and that Mr. Frazee submitted a letter stating that "because of the amount of shrimp stated in the sworn written statements submitted with this claim, we believe it can be determined

that all income claimed on the tax return came from shrimping revenue." He then goes on to allege that Mr. Parker actually submitted both of these statements. That is a misrepresentation of the facts. It is true that as a representative of Danziger & De Llano, Mr Frazee is an extension of Mr. Parker, but there is no evidence that Mr. Parker affirmatively ratified these false claims. . Mr. Parker retained a law firm to represent him in this claim, specifically for their expertise. Mr. Parker is not, and has never been qualified to make determinations concerning his income derived from the shrimping business nor the losses incurred as a result of this claim. Mr. Parker did not make the calculations. Mr. Parker did not state that "all income claimed on the tax return came from shrimping revenue." Mr. Parker did not even sign any part of that initial claim to verify his assent. In fact, Mr. Parker's Sworn Written Statement only outlines the basic information of his shrimping vessel, the two figures that were calculated by the staff attorney, with absolutely no indication of the source of the income information for the year claimed, and his signature.

        The facts of fraud alleged by the Special Master were actually completely out of Mr. Parker's control. As stated above, he provided every document asked of him by Danziger and De Llano. At the desire of Danziger and De Llano, Mr. Parker provided the necessary information and signed the necessary forms for the firm to request any tax returns from the Internal Revenue Service. If supporting documentation or additional tax returns were missing, and necessary to make the calculations, the law firm had a fiduciary duty to Mr. Parker to acquire that information before submitting his claim. Further, as previously stated, Mr. Parker cannot be held accountable for false statements made by Kyle Frazee that Mr. Parker did not ratify in writing. The fraud allegations regarding Mr. Frazee's initial claim and statement need only and most certainly *can only*¸ apply to Mr. Frazee and Danziger and De Llano, due to their attorney-client relationship

with Mr. Parker and their specialized expertise in this area. They failed to provide all the necessary documentation required for the claim, while taking the ability and necessity of the client to provide certain documentation out of his control.

At worse, the Special Master's facts show that the law firm retained by Mr. Parker was incompetent in their handling of his claim.   The Special Master's facts do not show that Mr. Parker had any knowledge of false representation, or that he intended to deceive the DHECC for his own benefit. In fact, they show that there was no deception by Mr. Parker based on his prior submission of his claim and that he did not ratify any of the documents that contained the incorrect information.  In short, the evidence does not support judgment as a matter of law on each element of common law fraud. Accordingly, this Court should deny the Special Master's motion.

B.  Principles of Equity Support Denial of the Special Master's Motion

Principles of equity offer an additional, independent basis for denying the Special Master's motion. In arguing that this Court should require Mr. Parker to return his DHECC distribution, the Special Master relies on this Court's authority to order equitable remedies. (Sp. Master's Mem. at 5 (citing *Hazel-Atlas Glass Co. v. Harford Empire Co.*, 322 U.S. 238, 244 (1944)).) Yet equity cannot support the punitive sanction the Special Master seeks here.

The Supreme Court has underscored that equity focuses on just and practical outcomes: "[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) (plurality opinion). Moreover, "[i]n equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests." *Id.* at 201; *see also Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 367, 375 (1977).

14

It is undisputed that Mr. Parker is a full-time mechanic for Entergy and a part-time commercial fisherman, who captained and owned his vessel from 2005 up until the Deepwater Horizon oil rig explosion. Mr. Parker disclosed this information both in his original claim with the GCCF and then to his attorneys at Danziger and De Llano. It is also undisputed that Mr. Parker suffered significant damages as a result of said explosion, entitling him to compensation both generally and under the Settlement Agreement as a vessel owner and a captain. The Special Master is requesting the return of all funds paid through the settlement, but that not only punishes Mr. Parker unjustly for the law firm's mishandling of his claim, it also robs him of compensation to which he *legally* has a right. The return of the full amount does not equate a just and practical outcome for anyone but the DHECC. Equity mandates that Mr. Parker's claims be remanded to the DHECC for re-evaluation and Mr. Parker be permitted to submit any additional documentation to make a fair assessment of his claims.

### III.    CONCLUSION

Clearly, it is apparent that Mr. Parker has been victimized by the incompetency of the law firm of Danziger and De Llano. Mr. Parker retained the law firm to represent his interests honestly and to the fullest extent of the law. Mr. Parker did not commit any fraudulent activity. He was forthcoming and truthful throughout the entire process, answering questions honestly when asked and providing all documentation requested of him. Mr. Parker did not make a false representation of fact. He did not intend to defraud DHECC by inducing DHECC to act in reliance on any false representations. Finally, if a false representation of fact was made, DHECC was not justified in relying on said representation without conducting an independent assessment. Thus, the Special Master failed to prove three of the five elements of a fraud claim.

The Special Master alleges that Mr. Parker "remained silent about [the fraud]" for months. This is false. One cannot "remain silent" on an event or circumstance of which one has no knowledge. Mr. Parker is not, and never was competent to evaluate his claim. Mr. Parker is a lay person who was dealing with attorneys, accountants, and DHECC. Mr. Parker would never have become aware of the situation had he not been contacted by the law firm as a result of their being contacted by the Special Master. Additionally, Mr. Parker should not be punished because the DHECC did not properly evaluate his claim when it was submitted by his attorneys. Substantive due process and equity demand that the claims be remanded to the DHECC for re-evaluation. For the foregoing reasons, Mr. Parker respectfully requests that this Court deny the Motion of the Special Master for Return of Payments Made to Wardell Parker and Others.

Respectfully Submitted:

*/s/ Hope L. Harper*
Hope L. Harper, T.A. (LSBA No. 33173)
H.L. Harper & Associates, L.L.C.
1631 Elysian Fields Avenue
New Orleans, Louisiana 70117
Phone: (855) 880-4673
Fax:    (504) 322-3807
Email: hharper@hlharperandassociates.com
*Counsel for Claimant, Wardell Parker*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing Motion to Enroll as Counsel of Record has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send notice of electronic filing in accordance with the procedures established in MDL 2179, and that a copy of the foregoing has been served this 29th day of June, 2015, by electronic mail, on the following:

Christen Tuttle
Office of Special Master, Louis J. Freeh
935 Gravier Street, Suite 1160
New Orleans, Louisiana 70112
Email: tuttle@freehgroup.com and tuttlec@pepperlaw.com


*/s/ Hope L. Harper*
Hope L. Harper