# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 14-31402

_____

IN RE: DEEPWATER HORIZON

_____

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; ET AL

      Plaintiffs

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

      Defendants - Appellees

v.

KEVIN S. SMITH; SOLOMON J. FLEISCHMAN,

      Claimants - Appellants

_____

Appeals from the United States District Court for the
Eastern District of Louisiana, New Orleans

_____

O R D E R :

    IT IS ORDERED that appellants' opposed motion to supplement the
record on appeal with excerpts of the July 9, 2014 panel meeting transcript,
and two appeal panel decisions is GRANTED without prejudice.


                    _____
                        /s/Edith H. Jones
                        EDITH H. JONES
                        UNITED STATES CIRCUIT JUDGE

No. 14-31402

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

IN RE: DEEPWATER HORIZON

On Appeals from the United States District Court
for the Eastern District of Louisiana

## MOTION OF APPELLANTS SMITH AND FLEISCHMAN TO COUNTER-SUPPLEMENT THE RECORD ON APPEAL

JOSEPH F. RICE
KEVIN R. DEAN
FREDERICK C. BAKER
LISA M. SALTZBURG
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Fax: (843) 216-9450
jrice@motleyrice.com
kdean@motleyrice.com
fbaker@motleyrice.com
lsaltzburg@motleyrice.com
*Counsel for Appellants Kevin Smith
and Solomon Fleischman*

Appellants Kevin Smith ("Mr. Smith") and Solomon Fleischman ("Mr. Fleischman"), through undersigned counsel, respectfully file this motion to counter-supplement the record on appeal. The material with which Appellants seek to counter-supplement the record consists primarily of material that is necessary to provide context to the 4-page, 2014 e-mail chain with which BP was permitted to supplement the record pursuant to this Court's June 25, 2015 Order. Specifically, the material with which Appellants seek to counter-supplement consists of: (1) the portion of a July 9, 2014 Panel meeting addressing the interpretive policy -- Policy 363 -- that is referenced in the e-mail chain; and (2) two Appeal Panel decisions involving the same purported "double recovery" rationale as Appellees BP Exploration & Production, Inc., BP America Production Co., and BP, P.L.C (collectively, "BP") are advancing here. The material is approximately 21 pages and will not substantially burden the Court.[1]

With respect to the Appeal Panel decisions, the first, which was decided May 3, 2013, is among those referenced during the July 9, 2014 Panel meeting, and contradicts the portrait of the Appeal Panel decisions painted by BP in the above-referenced e-mail chain. In that decision, as in Appellants' Claims, the Appeal Panel

---

[1] Rather than burdening the Court with over 100 pages of material that does not address Policy 363, Appellants have limited this request to the portion they believe is necessary to correct BP's mischaracterization of the e-mail referencing the discussion of Policy 363 at the July 9, 2014 Panel meeting.

overturned denial of an owner/officer's Claim because the Claimant, in his
individual capacity, sought recovery of his own lost W-2 earnings, not a loss of the
company.  It further explained that a release by the business released only the claims
of that business, not an individual seeking recovery in his individual capacity.  The
second is the most recent Appeal Panel decision addressing the same interpretive
question at issue here and includes a detailed discussion of the inquiry being
conducted.  This decision, dated May 15, 2015, rejected the same "double recovery"
rationale on which the denial of Mr. Kelly's Claim was based.

Because BP has never previously relied on the e-mail chain, it was not part of
the record when Appellants filed their opening brief, and Appellants did not have
the opportunity to address this selective material or the information necessary to
place it in context in their opening brief.  BP does not oppose inclusion of the
transcript excerpts, attached hereto as Exhibit A, but does oppose inclusion of the
two Appeal Panel decisions attached as Exhibit B.  BP previously opposed an April
10, 2015 Motion to Supplement by Appellants.  At that time, BP stated that it did
not oppose the Court's considering the Appeal Panel decisions at issue, but took the
position that they were not part of the record.  *See* Motion of Appellants Smith and
Fleischman to Supplement the Record on Appeal and to File Portion of Record
Excerpts Under Seal at 5, 5th Cir. Doc. # 00513000729 (Apr. 10, 2015) (certificate
of conference).  BP also "'reserve[d] its own rights to move the Court to consider

additional CSSP decisions of a similar nature reaching the opposite outcome.'" *Id.*

BP never identified any such additional decisions, however, and did not make any

motion to supplement of its own until June 19, 2015.  Appellants recognize that this

Court could take judicial notice of the attached decisions in any event, but believe

that it would assist the Court and serve judicial efficiency to include them in the

record given the need to include the transcript excerpts in any event and because

they provide context and information pertinent to the supplement introduced by BP

and pursuant to this Court's June 25, 2015 Order.

## I.     Background

Appellants filed their opening brief on April 28, 2015.  Approximately eight

weeks later, on June 18, 2015, BP, which had received an extension of time to file

its response brief, contacted Appellants' counsel to inquire whether they would

oppose a motion to supplement the record with a 4-page e-mail from August 2014.

Appellants' counsel responded to BP's inquiry the same day it was made, advising

they would oppose the motion.

On June 19, 2015, just one business day before the extended deadline for BP's

response brief, BP filed a motion to supplement the record with the above-referenced

e-mail chain.   The same day, Appellants filed an opposition to BP's motion,

explaining, *inter alia*, that BP had misleadingly selected a snippet of correspondence

without providing necessary context, and that this selective supplementation, if allowed, would require a counter-supplement to ensure the Court was not mislead.

BP filed its response brief on June 22, 2015. Although this Court had not yet ruled on its motion to supplement, BP's brief quoted and relied on selected portions of the e-mail chain it hoped the Court would add to the record. Two days later, on June 24, 2015, BP filed a reply brief in support of its motion to supplement. BP's reply brief attached as an exhibit the transcript of a July 9, 2014 Panel meeting referenced in the e-mail chain. BP did not, however, ask that this transcript be added to the record as well. On June 25, 2015, this Court granted BP's request to supplement the record with the e-mail chain.

## II.    Argument

It is well established that "this court has the discretionary power to order supplementation of the record on appeal," including with materials that were not before the district court at the time of decision. *In re GHR Energy Corp.*, 791 F.2d 1200, 1202 (5th Cir. 1986); *Gibson v. Blackburn*, 744 F.2d 405, n.3 (5th Cir. 1984) ("Although a court of appeals will not ordinarily enlarge the record to include material not before the district court, it is clear that the authority to do so exists."). Supplementation of the record is appropriate "if there has been omitted from it matter which is deemed necessary or appropriate in the decision of the case." *Phillips Petroleum Co. v. Williams*, 159 F.2d 1011, 1012 (5th Cir. 1947).

The e-mail chain that was the subject of BP's motion to supplement is self-evidently part of a broader dialogue that culminated in a final, public decision of the Claims Administrator. In its response brief, BP quotes extensively, but selectively, from this e-mail chain. In doing so, it takes language out of context, and paints a misleading portrait of events.

First, BP suggests that, contrary to the public notice posted on the Policy Keeper portal, the Claims Administrator did not withdraw Policy 363 in full, but retained some, unspecified "procedures" which it would apply "on a case-by-case basis." *See* Motion of Appellees to Supplement the Record on Appeal at 4, 5th Cir. Doc. # 00513085703 (June 19, 2015). Policy 363, however, foreclosed any case-by-case "procedures." Rather, as both BP's and Class Counsel's remarks at the Panel meeting discussed in the e-mail chain make clear, all parties understood Policy 363 to provide that owners and officers of Business Entities are assumed to have been compensated through any award to the Entity, such that no case-by-case inquiry should be conducted and it is irrelevant whether they can show an individual loss. The transcript of the Panel meeting thus demonstrates that the "case-by-case" inquiry is the approach Class Counsel advocated -- that is, to adhere to the plain language of the Agreement by determining claims based on whether the Claimant proves an individual loss according to Exhibit 8A.

There, Class Counsel argued that Claims must be evaluated based on whether the Claimant can show a loss under the Agreement's objective criteria, explaining, *inter alia*, that:

- "[T]he facts will be determined, the facts, but **you shouldn't make the assumption with the mere fact that they're an officer**."

- "**[Y]ou are making the assumption that merely because a person is an officer, that there is double recovery, and we're saying that assumption is not appropriately made and you should let the facts and circumstances control,** and if the claimant can show that they, whatever their title was, **if they had a W-2 loss, which is what an individual claim is based on, they're entitled to it**."

- "**I'm not sure you need a policy. "The question is whether or not the claimant can show that he has a loss, under the agreement.** Sometimes he can, sometimes he can't. If he can, he should be compensated."

- "If the purpose is to prevent double payments, then the ultimate goal should be, let's look at the specific facts and circumstances, see if that results in a double payment."

*See* Ex. A, Tr. p. 108-10 & 113-16 (emphasis added).

BP, for its part, "disagree[d] that Exhibit 8A was meant to ever address a situation of allowing compensation for owners and officers." *Id.*, Tr. p. 112. At no time did BP suggest any "procedure" for assessing whether double-recovery existed other than the mistaken, categorical assumption embodied in Policy 363.

To counter BP's misleading characterization of the Claims Administrator's related e-mail, it is necessary to reveal what the nature of the case-by-case inquiry

discussed at the Panel meeting was, as well as the contrasting approach urged by BP (and previously embodied in Policy 363).

Further, during the discussion of Policy 363 at July 9, 2014, Class Counsel explained that individual owner/officer Claimants have proven, through appeals, that they suffered individual losses and therefore were entitled to compensation under the Agreement. *See* Ex. 1, Tr. p. 109. At the same time, Class Counsel recognized that others were unable to show a W-2 loss, and therefore failed to recover. *See id.*, Tr. p. 109 (explaining that some Claimants provided the "factual support" needed and prevailed in appeals, while "[s]ome have been shown otherwise, because the claimant could not show a separate W-2 loss.").

Although a number of appeal decisions are included in the record, the decisions attached as Exhibit B are not. The May 3, 2013 decision is instructive because it focuses on whether the Claim is for lost W-2 earnings and is among those decisions referenced in the July 9, 2014 Panel meeting, as well as because it recognizes that the individual and entity are distinct claimants.[2] This decision will

---

[2] Appellants note that the release referenced in the May 3, 2013 decision is a Gulf Cost Claims Facility ("GCCF") release. Appellants have not asked the Court to determine the scope of the GCCF release, but have previously noted that in denying Appellants' Claims, the Settlement Program treated it as irrelevant whether their employer's claim had been paid by the GCCF or the Settlement Program, and apparently construed the GCCF release as broader than the Agreement's release. *See* Brief for Claimants-Appellants at 39 & n.14, 5th Cir. Doc. # 00513023631 (Apr. 28, 2015); ROA.8728 (Post-Reconsideration Denial Notice stating that a BEL Claimant had either "submitted a claim to the DWH Settlement Program and received

aid the Court in two respects. First, it will be helpful to the Court in understanding the nature of the inquiry addressed in the Panel meeting and in subsequent communication from the Claims Administrator. Second, it is necessary to counter the suggestion by BP in the above-referenced e-mail chain that the Appeal Panel decisions at the time uniformly favored BP's approach and evidenced "a need for a published policy." *See* Order, 5th Cir. Doc. # 13094353 at 16 (June 25, 2015). In addition, the most recent Appeal Panel decision to address this purported "double recovery" issue and examine an owner/officer's Claim for lost W-2 wages, which was decided May 15, 2015, is included in Exhibit B. This decision is helpful to the Court in understanding both the manner in which the Appeal Panels have approached the issue following the withdrawal of Policy 363 and the nature of inquiry involved.

WHEREFORE, Mr. Smith and Mr. Fleischman respectfully request that the Court grant this Motion to counter-supplement the record with the transcript excerpts attached as Exhibit A and the two Appeal Panel Decisions attached as Exhibit B.

July 1, 2015                                  Respectfully submitted,

                                             /s/ *Kevin R. Dean*_____
                                             JOSEPH F. RICE
                                             KEVIN R. DEAN

---

payment, or submitted a claim to the GCCF, received payment and signed a GCCF release for the same losses"); ROA.9342 (same).

FREDERICK C. BAKER
LISA M. SALTZBURG
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Fax: (843) 216-9450
jrice@motleyrice.com
kdean@motleyrice.com
fbaker@motleyrice.com
lsaltzburg@motleyrice.com
*Counsel for Appellants Kevin Smith
and Solomon Fleischman*

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 29, 2015, and again on June 30, 2015, counsel for Mr. Smith and Mr. Fleischman contacted counsel for BP pursuant to this Court's Rule 27.4 to determine whether an opposition will be filed.  BP requested that its position be reported as follows:  "BP does not oppose counter-supplementation of the record with the excerpts of the transcript of the panel meeting but does oppose counter-supplementation of the record with CSSP Appeal Panel decisions in cases involving IEL claimants other than those of the owners of Fleischman and Garcia."

/s/  *Kevin R. Dean*
JOSEPH F. RICE
KEVIN R. DEAN
FREDERICK C. BAKER
LISA M. SALTZBURG
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Fax: (843) 216-9450
jrice@motleyrice.com
kdean@motleyrice.com
fbaker@motleyrice.com
lsaltzburg@motleyrice.com
*Counsel for Appellants Kevin Smith and Solomon Fleischman*

July 1, 2015

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that I have electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system, and that service will be accomplished by the CM/ECF system.

/s/ *Kevin R. Dean*
JOSEPH F. RICE
KEVIN R. DEAN
FREDERICK C. BAKER
LISA M. SALTZBURG
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Fax: (843) 216-9450
jrice@motleyrice.com
kdean@motleyrice.com
fbaker@motleyrice.com
lsaltzburg@motleyrice.com
*Counsel for Appellants Kevin Smith
and Solomon Fleischman*

July 1, 2015

EXHIBIT A

Page 1

CLAIMS ADMINISTRATION PANEL

DEEPWATER HORIZON

ECONOMIC & PROPERTY DAMAGES SETTLEMENT

PANEL MEETING

PAN-AMERICAN LIFE CENTER
PONTCHARTRAIN ROOM, 11TH FLOOR
601 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130
WEDNESDAY, JULY 9, 2014
9:00 A.M.

CLAIMS ADMINISTRATION OFFICE:

    PATRICK A. JUNEAU, JR., ESQ.
    Claims Administrator

    MICHAEL J. JUNEAU, ESQ.

    PATRICK HRON, ESQ.

    KEVIN COLOMB, ESQ.

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 2

1    CLASS COUNSEL:

2
        STEPHEN J. HERMAN, ESQ.
3
        JAMES PARKERSON ROY, ESQ.
4
        JOSEPH F. RICE, ESQ.
5
        CALVIN FAYARD, ESQ.
6
        RHON E. JONES, ESQ.
7
        ROBERT T. CUNNINGHAM, ESQ.
8
        JOHN S. CREEVY, ESQ.
9
        TOMMY A. THOMASSIE, IV, ESQ.
10

11   BP COUNSEL:

12       WENDY BLOOM, ESQ.

13       MARK HOLSTEIN, ESQ.

14       DANIEL CANTOR, ESQ.

15       BRIAN GASPARDO, CPA

16       RANDY LATTA

17

18   OTHERS PRESENT:

19       ANDREW OXENREITER
         Brown Greer
20
         NEIL KEENAN
21       PriceWaterhouseCoopers

22       TED MARTENS
         PriceWaterhouseCoopers
23
         CHUCK HACKER
24       PriceWaterhouseCoopers

25

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 3

1       ROBIN PILCHER
        Postlethwaite & Netterville
2
        TOM FRIOU
3       Postlethwaite & Netterville

4       MATT DOLAN
        Freeh Group International Solutions
5
        ALEJANDRO SALICRUP
6       Freeh Group International Solutions

7       ERVIN A. GONZALEZ, ESQ.
        Plaintiffs' Steering Committee
8
        ANNIKA K. MARTIN, ESQ.
9       (for Elizabeth Cabraser)
        Plaintiffs' Steering Committee
10
        JOHN A. BADEN, IV, ESQ.
11      Plaintiffs' Steering Committee

12

13   REPORTED BY:

14
        LINDA G. GRIFFIN, RPR
15      Certified Court Reporter

16

17

18

19

20

21

22

23

24

25

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 4

1                      AGENDA INDEX

2                                          PAGE

3

4

   1.  EXCLUSIONS
5
         Policy 276 v.2 - Scope of
6        the GCCF Release Exclusions ...   5

7

   2.  BUSINESS ECONOMIC LOSS CLAIMS
8
         Policy 354 v.4 - Evaluation
9        of Claimants with Changes
         in Business Ownership or
10       Operating Activities .........   7

11

   3.  ECONOMIC LOSS CLAIMS
12
         Policy 363 v.5 - Preventing
13       Double Payment for the
         Same Loss to an Entity and
14       the Owner or Officer of
         that Entity .................  78
15

16  4.  BUSINESS ECONOMIC LOSS CLAIMS

17       Policy 490 - Comprehensive
         Policy on Multi-Facility
18       Businesses ..................  31

19

   5.  BUSINESS ECONOMIC LOSS CLAIMS
20
         Policy 503 - Guidelines for
21       Registering as a Business
         Claimant and Filing Business
22       Economic Loss Claims .........  71

23

24

25

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 5

1                    *      *      *

2        MR. PATRICK JUNEAU:

3            I'm going to open this meeting.

4   This is the panel meeting that we've

5   convened pursuant to the terms and

6   provisions of the Settlement Agreement to

7   discuss certain issues that have arisen

8   regarding policy decisions.  These are the

9   issues here in the case, and I've sent this

10  out to everybody.  We have one through five.

11           Let me just address No. 1 first.

12  On the Policy 276 v.2, I'm going to pull

13  that matter off the agenda because I'm not

14  satisfied with the language that is there.

15  I think there needs to be some clarity.  It

16  has nothing to do with the parties' issues.

17  We want to make sure we're comfortable with

18  what we're saying.  And then I'll put it

19  back on and then the parties can go look at

20  it and see if it provides what you all want

21  done with that.  So for that reason, I'm

22  going to just withdraw that from

23  consideration right now.

24           Now, this is going to sound like a

25  broken record for everybody in the room, but

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 6

1    let me just set the stage with this thing.

2    The purpose of these panel hearings is to

3    get the parties together, if we have issues.

4    Now, I want to reiterate, the whole concept

5    behind it, if you go way back when, was to

6    see if there were disagreements and there

7    were modifications and/or agreements and get

8    an agreement among the parties to avoid an

9    incurable resolve.  That's conceptually what

10   this is all about.

11           So that still exists today.  I

12   would encourage people to do that, if that's

13   possible.  If it's not possible, well, we're

14   seeking to do it.  But with that being said

15   and done, I just want to also reiterate that

16   we have, just like we did in every one of

17   these panel meetings, we have the respective

18   papers and submissions of everybody that

19   composes part of this record that we make.

20   If one of these issues gets an appeal on it,

21   it's then rolled up into the Court, if that

22   addresses itself to the Court.

23           So we're not trying to reinvent

24   the wheel or rediscuss any of those issues

25   because we have that.  I have that.  You

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 7

1    have that.  Everybody has that.  But with

2    that said and done, I have in the past and

3    I'm going to allow that today, though, there

4    are issues here that the parties deem very

5    significant and important, so I'm not

6    cutting anybody off, if you want to add

7    anything that you think is paramount.

8            But realize, of course, that we

9    have the documents, and we'll give it all

10   deference, and finally, let's don't waste

11   our time reading what a sentence is in the

12   documents that we already know about.  But

13   if it's an important point that you all want

14   to make, I'm going to give you all the full

15   latitude to address all of those issues.

16           Now, let me take them in the order

17   in which we have them there.  Start with No.

18   2.  This is Policy 354 v.4.  It has to do

19   with evaluation of claimants with changes in

20   ownership or operating activities.  I have

21   the respective points here, and I don't know

22   if, Wendy, you wanted to speak to this, and

23   speak to the panel and so forth, but you all

24   have a lot of comments about this.  And if

25   there's things that you all want to address

Page 107

1    respect that.

2           With that being said and done, I

3    wanted just to get clear for everybody here

4    where we're coming from, and so you will

5    know all at one time, one place -- not "he

6    said," "I said," "she said" -- that's

7    essentially how we look at the universe.

8           With that being said, though, let

9    me move to 363 v.5, which has its own little

10   issues.

11          Steve, I'll go to the plaintiffs

12   on this one first, and I know essentially

13   what your argument is here and I have all

14   the briefs.  Is there anything you want to

15   add to that?

16     MR. HERMAN:

17          I don't think there's anything

18   more to add.  Joe, do you want to add

19   something?

20     MR. RICE:

21          Again, you're writing a policy to

22   try to cover certain facts and

23   circumstances, and there's been five or six

24   appeals that have been ruled in favor of the

25   claimant where the facts clearly show that

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 108

1    the officer of the corporation was not in

2    charge, in control; they had separate W-2

3    earnings, historically, and meets all the

4    criteria, and that the panels have granted

5    recovery, so you're making the assumption

6    that because you have a title, of an

7    officer, that you're governed by some set of

8    rules that's not consistently applied in

9    corporations.

10           So this policy -- again, I'm not

11   sure you need a policy.  The question is

12   whether or not the claimant can show that he

13   has a loss, under the agreement.  Sometimes

14   he can, sometimes he can't.  If he can, he

15   should be compensated.

16           The fact that his title included

17   "officer," the fact that he might have been

18   a one percent shareholder shouldn't dictate

19   what his claim is, if he meets the other

20   criteria of the agreement, and you're

21   writing a policy that is based on the

22   assumption that an officer is always

23   governed in one way, and the facts of all

24   the claims that we've looked at show that

25   that's not true.

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 109

 1           So you rely upon a previous policy

 2    to direct this policy, that if you're an

 3    officer, you're bound, and that's not the

 4    factual support, and we've shown that

 5    through appeals, several appeals.  Some have

 6    been shown otherwise, because the claimant

 7    could not show a separate W-2 loss.

 8       MR. HERMAN:

 9           And I would say, just a little bit

10    differently, but to amplify the same thing,

11    from a slightly different point, I mean,

12    we've always fundamentally disagreed with

13    the notion that BP should be protected from

14    a quote/unquote double payment, in this

15    regard, or in any other regard that's

16    inconsistent with the terms of the

17    Settlement Agreement.

18           But it seems that what's driving

19    this policy is a concern about double

20    payments, and so along the lines of what

21    Joe's saying is, in the situations where

22    it's clearly not a double payment, then the

23    policy shouldn't be in effect.

24           If the purpose is to prevent

25    double payments, then the ultimate goal

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 110

1   should be, let's look at the specific facts

2   and circumstances, see if that results in a

3   double payment.  If it does, we would

4   disagree, but deny the claim.  But if it

5   doesn't, even if it falls into these other

6   categories, the claim should go forward, if

7   the overriding purpose is the double payment

8   issue.

9       MR. PATRICK JUNEAU:

10          Go ahead, BP.

11      MS. BLOOM:

12          So we didn't call a panel meeting

13  ourselves on this.  We deferred.  We think

14  that this notion -- it is interesting for me

15  to hear Steve say now that he agrees there

16  shouldn't be double payments because --

17      MR. HERMAN:

18          I didn't say that.  I didn't say

19  that.

20      MS. BLOOM:

21          -- I think -- oh, you didn't say

22  that, okay.  So he doesn't agree with that

23  principle.

24          Well, what I would say is that I

25  think that principle has been clearly

Page 111

1    endorsed by the appeal panelists who have

2    looked at these claims a bunch of times,

3    so -- you know, I have a bunch of claims

4    here where Joe or others have appealed this

5    kind of concept and the appeal panelists see

6    it the same way as the Claims Administrator.

7              For example, Claim No. 59156, the

8    appeal panelists said, "Policy 363 derives

9    from the language and intents of the

10   Settlement Agreement," and agreed there

11   shouldn't be double recovery.

12             Claim No. 80270, "Policy No. 363

13   is based on the logical interpretation of

14   Exhibit 4C of the Settlement Agreement to

15   prevent double recoveries by businesses and

16   the owners and officers of the same

17   businesses," and there are many other appeal

18   panel decisions which uphold that principle.

19             The only thing that we would say

20   is that there have been some changes to this

21   policy, such that you are taking a view that

22   if there is a BEL claim, for example, that's

23   determined -- that's denied, that you will

24   maybe consider the IEL claim of the owner or

25   the officer.

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 112

1          And we would say that Exhibit 8

2    specifically calls upon the Claims

3    Administrator, for example, to evaluate the

4    credibility and reliability of sworn

5    statements that are provided in support of

6    such claims, and we question how, if a

7    business doesn't qualify for a BEL claim,

8    they really would have harm due to the

9    spill.

10          We disagree that Exhibit 8A was

11   meant to ever address a situation of

12   allowing compensation for owners and

13   officers, but we would just request that if

14   you are embarking upon that, that you adhere

15   to the principles of Exhibit 8, which

16   require scrutiny to assure that actually if

17   there was a decline in compensation for an

18   owner and officer, that it was due to the

19   spill.

20          Because we all know that when

21   somebody's an owner of a closely held

22   company, really what they do is they take

23   control when they issue their compensation

24   to themselves, and so it could be that one

25   year they're going on a vacation, you know,

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 113

1    in a particular month, and the prior year,

2    they didn't go on a vacation, or all kinds

3    of reasons like that, and so we would just

4    ask that, as you move forward, you take that

5    into account.

6         MR. RICE:

7              Mr. Juneau, we're mixing apples

8    and oranges.  We understand you have made a

9    decision that -- an interpretation that

10   double recovery should not be allowed.

11   We're not arguing that issue now.  The issue

12   that we're arguing now --

13        MR. PATRICK JUNEAU:

14             We did do that.

15        MR. RICE:

16             -- is that you are making the

17   assumption that merely because a person is

18   an officer, that there is double recovery,

19   and we're saying that assumption is not

20   appropriately made and you should let the

21   facts and circumstances control, and if the

22   claimant can show that they, whatever their

23   title was, if they had a W-2 loss, which is

24   what an individual claim is based on,

25   they're entitled to it.

Page 114

1          MS. BLOOM:

2                And it --

3          MR. RICE:

4                And the second assumption --

5     excuse me, please.

6          MS. BLOOM:

7                Yep.

8          MR. RICE:

9                The second assumption you're

10    making is you're making an assumption about

11    how the GCCF operated, without any basis

12    whatsoever, because you're making the

13    assumption, in the beginning part of your

14    policy, that the GCCF treated payroll as a

15    variable expense, and there's no basis

16    whatsoever in the record for that anywhere.

17         MS. BLOOM:

18                And what we would say is it would

19    be highly suspicious, if you had a BEL

20    claim -- at that point in time, Exhibit 4C

21    requires that you parse out and you're

22    treating it as fixed expenses, the

23    owner/officer compensation, if all of a

24    sudden now somebody files an IEL claim and

25    they want to say, "Oh, wait a second, you

Page 115

 1   know, it's actually different."  Well, why

 2   weren't you doing what you were supposed to

 3   do when you filed your BEL claim and

 4   properly attribute your owner and officer

 5   compensation?

 6          So we just think this is an area

 7   that's ripe for fraud and inaccuracies and

 8   we ask that you very carefully scrutinize

 9   these kinds of claims.

10     MR. RICE:

11          Do you think it's fraudulent for

12   somebody to make an IEL claim that the

13   contracting sign says that they can do, and

14   then you pay for it?

15     MS. BLOOM:

16          I think it is potentially

17   fraudulent if somebody submitted a BEL claim

18   and didn't make certain representations and

19   now when they want to submit an IEL claim,

20   they're making other representations, when

21   they were required, under 4C, to do certain

22   things.  I think so.

23     MR. RICE:

24          And the facts will be determined,

25   the facts, but you shouldn't make the

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 116

1    assumption with the mere fact that they're

2    an officer.

3         MR. PATRICK JUNEAU:

4              From my perspective, we've covered

5    the various input of the parties, the

6    totality of 2 through 5.  If there's

7    something else you want to make, any

8    comments you all want to make, I want to get

9    you all to do that, but if not, I think we

10   have a sufficient basis.  We've just got to

11   go do our homework and come up with our

12   decision.

13             If not, we will adjourn sine die,

14   like they say in the legislature.  We'll

15   adjourn for the moment and this concludes

16   this panel here.  Thank you all very much.

17                   *     *     *

18

19

20

21

22

23

24

25

EXHIBIT B



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| NOTICE OF APPEAL PANEL DECISION | | | |
| --- | --- | --- | --- |
| **DATE OF NOTICE:  May 3, 2013** | | | |

## I. CLAIMANT AND CLAIM INFORMATION

| Claimant Name | Last/Name of Business ▮ | First ▮ | Middle |
| --- | --- | --- | --- |
| **Claimant ID** | ▮ | **Claim ID** | ▮ |
| **Claim Type** | Individual Economic Loss | | |
| **Law Firm** | ▮ | | |

## II. APPEAL PANEL DECISION

The Economic and Property Damages Settlement Agreement ("Settlement Agreement") written by Class Counsel and BP requires the Claims Administrator to designate an Appeals Coordinator to coordinate the Appeals Process. This Notice is an official communication from the Appeals Coordinator and relates to the claim identified in Section I.  BP or the claimant appealed this claim and the Appeals Coordinator submitted the claim for Appeal Panel review.  The Appeal Panel has completed its review of the Appeal and has reached a final decision on your claim. The details of the Appeal Panel's decision are below, as well as any comment left by the Appeal Panel:

The Appeal Panel has overturned the Denial or remanded your claim back to the Claims Administrator. The Settlement Program will re-examine your claim to determine your Compensation Amount.

## III. APPEAL PANEL COMMENT

The claim should not have been denied because it is for the recovery of lost wages reported on a W-2. The release which had been executed only applies to those claims released by the CLAIMANT. The claimant in the relevant release is the company and not Mr ▮ in his individual capacity.

## IV. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

For questions about this Notice of Appeal Panel Decision or the status of your other claim(s), contact the Claimant Communications Center at 1-800-353-1262 or send an email to **Questions@dhecc.com.** If you are a law firm or claims preparation company, you should call or email your designated DWH Contact for help or assistance.  You may also visit a Claimant Assistance Center for help. For a complete list of Claimant Assistance Centers, go to **www.deepwaterhorizoneconomicsettlement.com.**

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

## NOTICE OF APPEAL PANEL DECISION

### DATE OF NOTICE:  May 15, 2015

### DEADLINE TO REQUEST DISCRETIONARY COURT REVIEW:  May 29, 2015

### DEADLINE TO OBJECT TO REQUEST FOR DISCRETIONARY COURT REVIEW:  June 10, 2015

### I.  CLAIMANT AND CLAIM INFORMATION

| Claimant Name | Last/Name of Business ■ | First ■ | Middle ■ |
|---|---|---|---|
| Claimant ID | ■ | Claim ID | ■ |
| Claim Type | Individual Economic Loss | | |
| Law Firm | ■ | | |

### II.  APPEAL PANEL DECISION

The Economic and Property Damages Settlement Agreement ("Settlement Agreement") written by Class Counsel and BP requires the Claims Administrator to designate an Appeals Coordinator to coordinate the Appeals Process. This Notice is an official communication from the Appeals Coordinator and relates to the claim identified in Section I.  The Claimant or BP has appealed this claim and the Appeals Coordinator submitted the claim for Appeal Panel review.  The Appeal Panel has completed its review of the Appeal and has reached a final decision on this claim. The details of the Appeal Panel's decision are below, as well as any comment left by the Appeal Panel:

The Appeal Panel has overturned the Denial or remanded your claim back to the Claims Administrator. The Settlement Program will re-examine your claim to determine your Compensation Amount.

### III.  APPEAL PANEL COMMENT

Claimant, an admitted equity percentage owner of a C-Corporation, appeals his thrice-denied IEL claim for W-2 wage loss under the Agreement. The basis of denial was that he could not assert an IEL claim from a claiming job at a business which he co-owns which received a BEL award. Claimant does not deny that ████████ Inc., of which he owns 50% equity, collected a sizeable BEL award. His argument, however, is that the proscriptions contained in Sec. 38.84 and Ex. 8A of the Agreement apply to sole proprietors and those who obtain self-employment income as reported in Schedules C,D, or E of the tax return of such business. Herein, Claimant's BEL-awarded business was a different entity--a C-corporation-- and his income was reported in W-2 forms submitted by that business, not in Scheduled C,D, or E. BP paints with too broad a brush in asserting that the Agreement and policies construing it prohibit IEL recovery by all owners of all business entities that have been awarded BEL awards. As this panelist construes the provisions of the Agreement, nothing therein prohibits an IEL claim by a W-2 employee of a business entity awarded a BEL award as long as that employee did not co-own a sole propietorship or otherwise received Schedule C,D, or E income from self-employment. The fact that the present business entity is a C-corporation, and that the IEL claim is for strictly W-2 wages, separates this claim from any proscriptions contained in the Agreement. If this presents a de facto double recovery for Claimant, who indirectly benefitted from the designation of owner-officer compensation as a fixed cost in the computation of the BEL award to his co-owned C-Corporation, this fact does not , in this panelist's view, disqualify him from IEL consideration. BP's second argument, eg, that the record reflects no loss of income by Claimant after the Spill, is belied by Claimant's explanation that in making such calculations the Program did not consider supplemental financial information provided in the form of an SWS-9 form. Said form would have required the use of a Compensation period of April 21, 2010 through Dec. 31, 2010, which would have been more financially advantageous to Claimant's IEL computation. As a result, this panelist must remand this claim for consideration of an IEL award after the Program's full review of Claimant's financial submissions.

## IV. DISCRETIONARY COURT REVIEW PROCESS

The Settlement Agreement states that the Court has the discretionary right to review any appeal determination to consider whether it is in compliance with the Settlement Agreement. There is no right of automatic appeal to the Court, and the Court has stated that reviews of Appeal Panel determinations will be granted only in exceptional circumstances.

BP, Claimants, and Class Counsel may request discretionary court review of an appeal determination. The issues that the Court may review are limited to those issues that were properly raised before the Appeal Panel. To request discretionary court review, you must submit a Request for Discretionary Review by the Court ("Request") to the Appeals Coordinator on or before the deadline date to request discretionary court review listed at the top of this Notice.

Your Request must be no longer than three double-spaced typewritten pages. The Request must contain the following information: (a) A clear statement of how the determination by the Appeal Panel failed to comply with the Settlement Agreement and why the extraordinary relief of review by the Court should be granted in this instance; and (b) the relief sought.

After submission of a Request, the opposing party may submit an Objection to the Request ("Objection"). It is not mandatory. If you elect to submit an Objection, you must submit it to the Appeals Coordinator on or before the deadline date to object to request discretionary court review listed at the top of this Notice. The Objection must be no longer than three double-spaced typewritten pages.

If you use the Deepwater Horizon Portal, you must submit your discretionary court review documents and information through the portal. If you do not use the portal, requests and objections must be submitted by email to the Appeals Coordinator at **AppealsCoordinator@dhecc.com**. Do not submit any documents to the Court, Class Counsel, or any other party. You must send all documents to the Appeals Coordinator.

After the period for submitting Requests and Objections has passed, the Court will either grant or deny the Request. If the Court denies the Request, you will receive a Notice of Denial of Request for Discretionary Review by the Court, and the claim will be processed according to the decision of the Appeal Panel. If the Court grants the Request, you will receive a Notice of Granting of Request for Discretionary Review by the Court and additional documentation from the claim file will be provided to the Court. When the Court makes a decision, you will receive a Notice of Court Decision, and the claim will be processed in accordance with the Court's direction.

Case 2:10-md-02179-CJB-DPC   Document 14826   Filed 07/10/15   Page 36 of 37

## V.  HOW TO RESPOND TO THIS NOTICE

Submit your **Request or Objection** to the Appeals Coordinator through the Deepwater Horizon Portal.  If you are not a Portal user, you must email the address below and note the Claim ID on the top page of all documents you submit.

| **By Email**<br>(Sent no later than 12:00 midnight local time on your request deadline) | AppealsCoordinator@dhecc.com |
|---|---|

## VI.  HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

For questions about this Notice of Appeal Panel Decision or the status of your other claim(s), contact the Claimant Communications Center at 1-800-353-1262 or send an email to **Questions@dhecc.com.** If you are a law firm or claims preparation company, call or email your designated DWH Contact for help or assistance.



# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

July 09, 2015

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

     No. 14-31402     In Re: Deepwater Horizon
                         USDC No. 2:10-MD-2179
                         USDC No. 2:12-CV-970

Enclosed order is attached.

The court has granted the motion to supplement the record in this case. The district court is requested to add the attached documents to their court's docket and to provide us with a supplemental electronic record, within 15 days. Counsel is reminded that any citations to these documents must cite to the supplemental electronic record.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    *Shea E. Pertuit*

                  By: _____
                  Shea E. Pertuit, Deputy Clerk
                  504-310-7666

Mr. Frederick Curtis Baker
Mr. William W. Blevins
Mr. George Howard Brown
Mr. Jeffrey Bossert Clark Sr.
Mr. Kevin Robert Dean
Mr. Miguel Angel Estrada
Mr. Richard Cartier Godfrey
Mr. Don Keller Haycraft
Mr. Thomas George Hungar
Mr. James Andrew Langan
Ms. Elizabeth A. Larsen
Mr. Scott Payne Martin
Mr. Theodore B. Olson
Mr. Joseph F. Rice
Ms. Lisa Marie Saltzburg