## ACT OF SALE

This Act of Sale is effective for all purposes as of the 1st day of December, 2002, at 7:00 a.m., Central Time ("**Effective Time**") by and between:

**LaTerre Co., Ltd.**, a Texas limited partnership (hereinafter referred to as "**Seller**"), whose mailing address is 333 North Sam Houston Parkway East, Suite 1060, Houston, Texas 77060, and whose federal employer identification number is 76-0488636, represented herein by its sole general partner Castex Energy, Inc., a Texas corporation appearing herein by its undersigned duly authorized President John R. Stoika, and

**Apache North America, Inc.**, a Delaware corporation (hereinafter referred to as "**Buyer**"), whose mailing address is 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056, and whose federal employer identification number is 73-1302675, represented herein by its undersigned duly authorized Vice President Eric L. Harry.

### W I T N E S S E T H :

#### Article I.

For the price and consideration, and on the terms and conditions hereinafter expressed, Seller does by this act grant, bargain, sell, convey, transfer, assign, set over and deliver unto Buyer here accepting and purchasing for itself, its successors and assigns, and acknowledging delivery and possession thereof, all of Seller's right, title and interest in and to:

the property described on Exhibit "A" hereto ("**Land**"), together with all buildings and improvements thereon and all rights, ways, privileges, and appurtenances thereunto belonging or in anywise appertaining, LESS AND EXCEPT (i) the Production Payment (as defined in and governed by Article IV below) and (ii) the other Excluded Properties (as defined in that certain Purchase and Sale Agreement dated December 16, 2002, by and among the parties hereto and others, as amended (the "**PSA**"))

(all of Seller's right, title and interest in the foregoing, less and except the Production Payment and the other Excluded Properties, shall be referred to collectively as the "**Properties**" and singularly as the "**Property**")

TO HAVE AND TO HOLD the Properties unto Buyer, its successors and assigns forever.

#### Article II.

THIS SALE IS MADE AND ACCEPTED for and in consideration of the price and sum of $1,000.00 and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged.

**Article III.**

The Properties are sold, and this Act of Sale is made, subject to the terms of the PSA. Buyer and Seller agree in the event of a conflict between the terms of the PSA and this Act of Sale, the terms of the PSA shall prevail.

**Article IV.**

Section 4.1.   Definitions.   When used in this Article IV, the following terms shall have the meanings indicated below.  The single includes the plural, and vice versa.

(a)      "**Affiliate**" means, as to the Person specified, any Person controlling, controlled by, or under common control with such Person. The term "control" as used in the preceding sentence means, with respect to a corporation, the right to exercise voting rights, directly or indirectly, with respect to fifty percent (50%) or more of the shares of any class of securities with voting rights of the corporation, and with respect to any Person other than a corporation, the possession, directly or indirectly, of the power to direct or cause the direction of management policies of such Person.

(b)      "**Applicable Rate**" means the lesser of (a) six percent (6%) per year or (b) the maximum rate of interest permitted by applicable law; except, however, if and when the applicable legal interest rate is greater than six percent (6%) per year, then the Applicable Rate shall equal the applicable legal interest rate.

(b1)      "**Business Day**" means any day that is not a Saturday, Sunday or federal holiday.

(b2)      "**Existing Area**" means those lands (including all water bottoms) within the geographic area described next to the label "Existing Area" on Exhibit "D-1" hereto.

(c)      "**Governmental Authority**" means any federal, state, local, municipal, or other governments; any governmental, regulatory or administrative agency, commission, body or other authority exercising or entitled to exercise any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power; and any court or governmental tribunal.

(c1)      "**Hydrocarbons**" means oil, gas well gas, casinghead gas, condensate, natural gas liquids and other liquid or gaseous hydrocarbons and all components of any of them and shall also refer to any other minerals of every kind and character.

(d)      "**Law**" means any law, statute, ordinance, decree, requirement, order, judgment, rule, or regulation of, including, but not limited to, the terms of any license or permit issued by any Governmental Authority.

(e)      "**Payment Date**" with respect to a calendar month means the last Business Day of the second month following such calendar month.

(f)      "**Person**" means any natural person, corporation, partnership, limited liability company, trust, estate, Governmental Authority or other legal entity.

(g)   **"Production Payment"** means the Production Payment Percentage of the Subject Hydrocarbons.  The Production Payment is a non-operating and (except for the deduction from Seller's monthly payments to Buyer as contemplated by the parenthetical phrase in <u>Section 4.2(d) of this Article IV</u>) non-expense bearing limited mineral right and interest in and to the Subject Interests and shall burden 100% of the Subject Interests during the Term.

(h)   **"Production Payment Percentage"** means an undivided five percent (5%) of 8/8ths interest, proportionately reduced (subject to <u>Section 4.9 of this Article IV</u> and without duplication) to the extent that the interest in a Subject Interest (without regard to the Production Payment) sold to Buyer under this Act of Sale (as such undivided interest may change as a result of an obligation existing as of the Effective Time under one or more of the contracts and other agreements comprising a portion of the Properties) is less than the entirety of the ownership of such Subject Interest. Nonetheless, if a third Person who is not an Affiliate of Buyer hereafter non-consents to an operation, the Production Payment Percentage shall not change as a result thereof.

(h1)   **"Proposed Well"** means the first well that is drilled by Assignee (or its successors and assigns) after the Effective Time which is capable of producing Hydrocarbons that are from or otherwise attributable to a Prospect Area as to the corresponding Zones for that Prospect Area (whether or not such well is first completed in such corresponding Zones).

(h2)   **"Prospect Area"** means those lands (including all water bottoms) (1) within the geographic area described next to the label "Prospect Area" on Exhibit "D-2" hereto.

(i)   **"Scheduled Properties"** means all Land INSOFAR AND ONLY INSOFAR as same relate to or are otherwise attributable to:

(1)   any or all of the wells described on Exhibit "B" hereto as to all depths from the surface of the earth to the total depth drilled in each such well as of the Effective Time,

(2)   any or all of the well locations described on Exhibit "C" hereto as to all depths from the surface of the earth to the base of the corresponding reservoirs described on Exhibit "C" hereto,

(3)   any or all of the wells described next to the label "Well" on Exhibit "D-1" hereto as to all depths from the surface of the earth to the total depth drilled in each such well as of the Effective Time,

(4)   any or all of the Existing Areas as to the corresponding Zones for such Existing Areas (whether or not any Hydrocarbons attributable to such Existing Areas and Zones are produced from any well described on Exhibit "D-1" hereto),

(5)     any or all of the Proposed Wells described on Exhibit "D-2" hereto as to all depths from the surface of the earth to the base of the deepest corresponding Zones for such Proposed Well and/or

(6)     any or all of the Prospect Areas as to the corresponding Zones for such Prospect Areas described on Exhibit "D-2" hereto (whether or not any Hydrocarbons attributable to such Prospect Areas and Zones are produced from any Proposed Well).

(j)     "**Subject Hydrocarbons**" means all Hydrocarbons produced from or attributable to the Subject Interests during the Term.

(k)     "**Subject Interests**" means all Scheduled Properties as the same shall be enlarged (except through Buyer's efforts hereafter by acquisition or otherwise not pursuant to the PSA or this Act of Sale): (i) by any reversionary interest, (ii) by the discharge of any payments out of production, or (iii) by the removal or expiration of any mineral servitude, mineral lease, charges or encumbrances to which any of the same are subject.

(l)     "**Subject Taxes**" means all severance and gross production taxes imposed on the production of Subject Hydrocarbons, but shall not include any income or other taxes and shall not include any interest or penalties.

(m)     "**Term**" means that certain period of time beginning at the Effective Time to and including and expiring at 7:00 a.m., Central Time, on December 1, 2008.

(n)     "**Zones**" with respect to any specified Existing Area means those sands, reservoirs, depths and zones specifically described next to the entry "Zones" corresponding to such Existing Area, as specified on Exhibit "D-1" hereto. "**Zones**" with respect to any specified Prospect Area means those sands, reservoirs, depths and zones specifically described next to the entry "Zones" corresponding to such Prospect Area, as specified on Exhibit "D-2" hereto.

Section 4.2.   Production Payment.

(a)     Reservation. This Act of Sale specifically reserves to Seller, and does not otherwise convey, assign or transfer to Buyer, the right, title or interest in the Production Payment.   The Production Payment reserved by Seller in this Act of Sale shall expire and terminate upon the expiration of the Term.

(b)     [intentionally blank].

(c)     Method of Computation.   The Production Payment with respect to any Subject Hydrocarbons shall be calculated and paid based on the gross price received by Buyer for such Subject Hydrocarbons, taking into account the deductions set forth in the parenthetical phrase in Section 4.2(d) of this Article IV.

(d)   Payment. On or before the Payment Date for each calendar month during the Term, Buyer shall pay to Seller by wire transfer of immediately available funds to the account specified from time to time by Seller an amount equal to the Production Payment (less deductions for the Subject Taxes attributable to such Production Payment and also less a deduction for such Production Payment's proportionate share of all applicable gathering, transportation, separating, compressing, treating and processing costs and expenses incurred by Buyer in connection with the sale of the Subject Hydrocarbons) for such calendar month. Any change in wiring instructions by Seller must be communicated in writing to Buyer at least ten (10) Business Days prior to a Payment Date. Any amount not paid by Buyer to Seller on or before the Payment Date shall bear, and Buyer shall pay, interest at the Applicable Rate from such Payment Date until such amount is paid (plus all costs and expenses of collection, including without limitation attorneys' fees and court costs, paid by Seller).

(e)   Monthly Statement. On or before the Payment Date for each calendar month during the Term, Buyer shall deliver to Seller a statement showing, in reasonable detail, the computation of the Production Payment for such calendar month.

(f)   Non-Liability of Seller. In no event shall Seller be liable or responsible in any way for any Subject Taxes or for costs or liabilities incurred by Buyer or other Persons attributable to the Subject Interests or to the Subject Hydrocarbons. It is the express intention, agreement and understanding of Buyer and Seller that the Production Payment shall constitute a non-expense bearing interest for all purposes, except for the deductions from Seller's monthly payments to Buyer as contemplated by the parenthetical phrase in Section 4.2(d) of this Article IV.

Section 4.3.   Marketing of Subject Hydrocarbons. Buyer shall use all reasonable efforts to market or cause to be marketed all commercial quantities of Subject Hydrocarbons, subject to the provisions of Section 4.4(a) of this Article IV. Buyer may enter into one or more sales contracts; provided, however, that Buyer shall not enter into a sales contract with an Affiliate unless such sales contract is on the same terms and prices prevailing in the area in arms'-length sales contracts that Buyer acting as a reasonably prudent operator could enter into with a Person who is not an Affiliate of Buyer.

Section 4.4.   Operation of Subject Interests

(a)   Prudent Operator Standard. Buyer will conduct and carry on, or otherwise cause, the development, maintenance, operation and abandonment of the Subject Interests and the sale of the Subject Hydrocarbons with reasonable and prudent business judgment and in accordance with sound oil and gas field practices as if not burdened by the Production Payment. Nothing contained in this Section 4.4 shall be deemed to prevent or restrict Buyer from electing not to participate in any operation that is to be conducted under the terms of any operating agreement, unit operating agreement, contract for development or similar instrument affecting or pertaining to the Subject Interests (or any portion thereof) and allowing consenting parties to conduct non-consent operations thereon if such election is made by Buyer (unless any of the

consenting parties under such agreement or instrument is an Affiliate of Buyer, in which event Seller's prior written consent for Buyer's non-consent election shall be required, which consent will not be unreasonably withheld). In the event of such non-participation by Buyer, the Production Payment shall be relinquished or forfeited as to the affected Subject Interest (or any portion thereof), to the extent Buyer's rights as to such Subject Interest (or any portion thereof) is relinquished or forfeited.

(b)     Abandonment of Properties.    Nothing herein shall obligate Buyer to operate or continue to operate any well when, in Buyer's good faith opinion acting as reasonably prudent operator as provided in Section 4.4(a) of this Article IV, such well ceases to produce or is not capable of producing Hydrocarbons in commercial quantities.

(c)     Insurance.   Buyer shall maintain insurance with respect to the Subject Interests against such liabilities, casualties, risks and contingencies as is customary in the oil and gas industry.

(d)     Subject Taxes.   Buyer shall pay all Subject Taxes (and all other taxes imposed on the Subject Interests and Subject Hydrocarbons), except those being contested in good faith and as to which adequate reserve has been established. Nonetheless, Buyer shall be entitled to make deductions for Subject Taxes, as provided for in the parenthetical phrase in Section 4.2(d) of this Article IV.

Section 4.5. Pooling and Unitization

(a)     Pooled Subject Interests.  Certain of the Subject Interests may have been previously pooled or unitized for the production of Hydrocarbons.    Such Subject Interests are and shall be subject to the terms and provisions of such pooling or unitization agreements or orders, as same may be amended or revised from time to time.  The Production Payments and this Article IV shall apply to and affect only the production of Hydrocarbons from such units that accrues to such Subject Interests under and by virtue of the applicable pooling or unitization agreements or orders, as same may be amended or revised from time to time.

(b)     Right to Pool. Buyer shall have the right and power to pool or unitize any of the Subject Interests and to alter, change, amend or terminate any pooling or unitization agreements previously or hereafter entered into, as to all or any part of the lands covered by the Scheduled Properties, as to any one or more of the formations or horizons thereunder, upon such terms and provisions as Buyer shall in its sole discretion determine acting as a reasonably prudent operator would act if its interest was not burdened by the Production Payment. If and whenever through the exercise of such right and power, or pursuant to any Law, any of the Subject Interests are pooled or unitized in any manner, the Production Payment shall apply to and affect only the production of Hydrocarbons that accrues to such Subject Interests under and by virtue of such pooling or unitization.

Section 4.6.  Books and Records; Inspection and Audit.  Buyer shall at all times maintain true and correct books and records in accordance with generally accepted accounting principles and Council of Petroleum Accountants Society (COPAS) standards sufficient to determine (a) the Production Payment and (b) the amounts payable to Seller hereunder.  During the Term and for two years thereafter, upon ten (10) Business Days' prior written notice to Buyer, Seller and its representatives shall have the right to inspect and audit Buyer's books and records relating to the Production Payment at the office of Buyer during normal business hours.

Section 4.7.  Arbitration.  Any dispute, controversy or claim arising out of or in relation to or in connection with the production payment, including without limitation any dispute as to the construction, validity, interpretation, enforceability or breach of the provisions of this Article IV, shall be exclusively and finally settled by arbitration in accordance with the provisions of Section 11.13 of the PSA.

Section 4.8.  Buyer's Other Interests.  Notwithstanding anything to the contrary, this Production Payment does not affect any rights or interests in the Land currently owned by Assignee or hereafter acquired by Assignee outside of this Act of Sale and not pursuant to the PSA.

Section 4.9  Leasehold Assignments.  Reference is made to that certain Assignment, Bill of Sale and Conveyance between Castex Energy 1995, L.P. and Castex Energy 1996, L.P. as Assignor and Apache Corporation as Assignee executed on December 16, 2002 (recorded, among other places, at Entry No. 278715 of the conveyance records of Cameron Parish, Louisiana, in Book 1518 at Page 242 et seq. under Entry No. 928352 in the conveyance records of Lafourche Parish, Louisiana and in Book 1508 at Entry No. 1135690 of the conveyance records of Terrebonne Parish, Louisiana) and amended contemporaneously herewith pursuant to the PSA (the "Leasehold Assignment").  The Production Payment reserved herein does not cover or affect any Hydrocarbons if, when and to the extent that they are subject to the corresponding Production Payment reserved to Castex Energy 1995, L.P. and Castex Energy 1996, L.P. in the Leasehold Assignment.

Section 4.10  Exhibits, Proposed Wells and Prospect Areas.  The parties acknowledge that most, if not all, of the Proposed Wells are not yet in existence and thus that their precise location and official name cannot be described with further specificity at the time of execution of this Act of Sale.  Accordingly, among other reasons, the parties further agree as follows:

(a)  The Proposed Well names listed on Exhibit "D-2" hereto are for convenience only.  A well may constitute a Proposed Well, even though it is not located on lands of the landowner referenced in such Proposed Well name and/or carries another well name.

(b)  If a Proposed Well has been drilled and completed as a producer, then upon the request of either party, the parties shall execute and record an

amendment to this Act of Sale to specify the precise location, name and Louisiana Office of Conservation serial number(s) for such Proposed Well.

## Article V.

BUYER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED OTHERWISE IN AND SUBJECT TO THE TERMS AND PROVISIONS OF THE PSA AND/OR IN ARTICLE VI OF THIS ACT OF SALE, BUYER IS RELYING SOLELY ON ITS OWN TITLE EXAMINATION AND INSPECTION OF THE PROPERTIES, IS NOT RELYING ON ANY WARRANTY OR REPRESENTATION BY ANY OF SELLER, ITS AFFILIATES (AS DEFINED IN ARTICLE IV ABOVE) AND ITS AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, AGENTS AND REPRESENTATIVES (EACH INDIVIDUALLY, A "SELLER GROUP MEMBER"), IS BUYING THE PROPERTIES AT BUYER'S PERIL AND RISK AND ACCEPTS THE PROPERTIES FROM SELLER "AS IS" "WHERE IS" WITH ALL FAULTS IN THEIR CURRENT PHYSICAL AND ENVIRONMENTAL CONDITION AND STATE OF REPAIR, WITHOUT WARRANTY OR RECOURSE; THAT ANY FILES OR OTHER INFORMATION (WRITTEN, ORAL OR OTHERWISE) PREVIOUSLY OR HEREAFTER FURNISHED OR OTHERWISE MADE AVAILABLE TO OR FOR BUYER BY ANY SELLER GROUP MEMBER IS PROVIDED AS A CONVENIENCE ONLY AND SHALL NOT CREATE OR GIVE RISE TO ANY LIABILITY AGAINST ANY SELLER GROUP MEMBER; AND THAT ANY RELIANCE ON OR USE OF SAME SHALL BE AT BUYER'S SOLE RISK TO THE MAXIMUM EXTENT PERMITTED BY LAW. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT IT IS NOT RELYING ON SELLER'S SKILL OR JUDGMENT IN SELECTING ANY PROPERTY (EVEN IF SELLER MAY KNOW OR HAVE REASON TO KNOW OF THE PARTICULAR USE BUYER INTENDS FOR ANY PROPERTY OR OF BUYER'S PARTICULAR PURPOSE FOR BUYING ANY PROPERTY). EXCEPT AS EXPRESSLY PROVIDED IN AND SUBJECT TO THE TERMS AND PROVISIONS OF THE PSA AND/OR IN ARTICLE VI OF THIS ACT OF SALE:

(A)   SELLER DISCLAIMS ANY AND ALL (AND BUYER ACKNOWLEDGES THAT IT IS NOT RELYING ON ANY) REPRESENTATIONS AND WARRANTIES (EXPRESS, STATUTORY, IMPLIED OR OTHERWISE) CONCERNING ANY PROPERTIES;

(B)   SELLER DISCLAIMS ANY AND ALL LIABILITY AND RESPONSIBILITY FOR OR ASSOCIATED WITH (AND BUYER ACKNOWLEDGES THAT IT IS NOT RELYING ON) THE QUALITY, ACCURACY, COMPLETENESS OR MATERIALITY OF ANY DATA, INFORMATION AND MATERIALS FURNISHED (ELECTRONICALLY, ORALLY, BY VIDEO, IN WRITING OR BY OR THROUGH ANY OTHER MEDIUM) AT ANY TIME TO BUYER OR ANY OTHER PERSON IN CONNECTION WITH THE PSA AND/OR THIS ACT OF SALE; AND

(C)   BUYER IRREVOCABLY WAIVES, AND RELEASES EACH SELLER GROUP MEMBER FROM AND AGAINST, ANY AND ALL CLAIMS, DEMANDS, DISPUTES, JUDGMENTS, SUITS, ACTIONS, PROCEEDINGS, INVESTIGATIONS, PAYMENTS, OFFSETS, ADJUSTMENTS, CAUSES OF ACTION, LOSSES, DAMAGES, LIABILITIES, LIENS, FINES, SANCTIONS, PENALTIES, COSTS AND EXPENSES WHATSOEVER (INCLUDING ATTORNEYS' FEES, EXPERT FEES AND COSTS OF LITIGATION) ("CLAIMS"), WHETHER DIRECT OR INDIRECT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THAT MAY ARISE OUT OF OR IN ANY WAY BE CONNECTED TO THE PROPERTIES, THE PSA AND/OR THIS ACT OF SALE WHETHER BEFORE, AT OR AFTER THE EFFECTIVE TIME AND WHETHER OR NOT ARISING DURING THE PERIOD OF, OR FROM, OR IN CONNECTION WITH SELLER'S OWNERSHIP OR USE OF THE PROPERTIES, AND *WHETHER OR NOT CAUSED OR CONTRIBUTED IN WHOLE OR IN PART BY THE NEGLIGENCE (WHETHER ACTIVE,*

*PASSIVE, SOLE, SIMPLE, CONCURRENT OR OTHERWISE), FAULT OR STRICT LIABILITY OF ANY SELLER GROUP MEMBER OR BY ANY OTHER THEORY OF LIABILITY OR FAULT WHETHER IN LAW (STATUTORY, COMMON, CIVIL, JUDICIAL OR OTHERWISE), EQUITY OR OTHERWISE.*

THESE DISCLAIMERS BY SELLER AND THESE WAIVERS, RELEASES OF CLAIMS AND ACKNOWLEDGMENTS BY BUYER RELATE WITHOUT LIMITATION TO:

(1) ANY WARRANTY OF TITLE, OWNERSHIP, MERCHANTABILITY OR PEACEFUL POSSESSION, OTHER THAN THE SPECIAL TITLE WARRANTY EXPRESSLY SET FORTH IN THE PSA AND/OR IN ARTICLE VI OF THIS ACT OF SALE,

(2) THE EXISTENCE OF ANY OR ALL PROSPECTS,

(3) THE GEOGRAPHIC, GEOLOGIC OR GEOPHYSICAL CHARACTERISTICS ASSOCIATED WITH ANY PROPERTIES, INCLUDING WITHOUT LIMITATION ANY OR ALL PROSPECTS,

(4) THE EXISTENCE, QUALITY, QUANTITY OR RECOVERABILITY OF HYDROCARBON RESERVES ASSOCIATED WITH ANY PROPERTY,

(5) THE COSTS, EXPENSES, REVENUES OR RECEIPTS ASSOCIATED WITH ANY PROPERTY,

(6) THE CONTRACTUAL, ECONOMIC OR FINANCIAL DATA ASSOCIATED WITH ANY PROPERTY,

(7) THE CONTINUED FINANCIAL VIABILITY OR PRODUCTIVITY OF ANY PROPERTY,

(8) FITNESS FOR BUYER'S INTENDED USE OR PURPOSE, FOR ANY OTHER PARTICULAR USE OR PURPOSE OR FOR ORDINARY USE (UNDER LOUISIANA CIVIL CODE ARTICLE 2475 OR 2524 OR OTHERWISE),

(9) THE ENVIRONMENTAL OR PHYSICAL CONDITION OR STATE OF REPAIR OF ANY PROPERTY,

(10) THE COSTS, REQUIREMENT OR NEED FOR ANY INVESTIGATION, STUDY, REPAIR, CLEAN-UP, DETOXIFICATION OR REMEDIATION OF ANY PROPERTY,

(11) THE PLUGGING (AND AS NECESSARY REPLUGGING) AND ABANDONMENT OF ANY WELL, THE SALVAGE OR REMOVAL OF ANY ASSOCIATED WELL COLLARS, WELL STRUCTURES, TANK BATTERIES, COMPRESSORS, INJECTORS, EQUIPMENT OR OTHER MOVABLE PROPERTY (WHETHER PLACED BEFORE OR AFTER THE EFFECTIVE TIME), THE REMOVAL, FLUSHING OR CAPPING OF ANY ASSOCIATED FLOWLINES, GATHERING LINES OR TRANSMISSION LINES, THE SALVAGE OR REMOVAL OF UNDERWATER OBSTRUCTIONS, THE CLOSURE OR REMEDIATION OF ANY ASSOCIATED PITS OR CANALS, THE DISPOSAL OF ANY RELATED WASTE MATERIALS (INCLUDING WITHOUT LIMITATION ANY NATURALLY OCCURRING RADIOACTIVE MATERIAL ("NORM"), ASBESTOS OR OTHER HAZARDOUS SUBSTANCES OR MATERIALS) OR THE RESTORATION OF THE ASSOCIATED SURFACE, SUBSURFACE, WETLANDS, MARSHES OR WATER BOTTOMS;

(12) (I) POLLUTION, NORM, ASBESTOS, HAZARDOUS SUBSTANCES, HAZARDOUS MATERIALS OR ENVIRONMENTAL DAMAGE OR DEFECTS, (II) THE CLEAN UP OR REMEDIATION OF POLLUTION, NORM, ASBESTOS, HAZARDOUS SUBSTANCES, HAZARDOUS MATERIALS, ENVIRONMENTAL DAMAGE OR DEFECTS, WASTE DISPOSAL, WELL SITES OR OIL AND GAS FACILITIES OR (III) THE PROTECTION OF THE ENVIRONMENT OR OF HUMAN HEALTH; IN ALL THREE CASES INCLUDING WITHOUT LIMITATION UNDER THE LOUISIANA ENVIRONMENTAL QUALITY ACT AS AMENDED, LOUISIANA REVISED STATUTES TITLE 30 CHAPTER 1 AS AMENDED AND THE FOLLOWING ACTS (AS PREVIOUSLY AMENDED AND AS MAY BE AMENDED FROM TIME TO TIME) AS WELL AS ANY SIMILAR FEDERAL, STATE OR LOCAL LAWS (AS CURRENTLY EXISTING OR AS MAY BE AMENDED FROM TIME TO TIME): THE CLEAN AIR ACT, THE CLEAN WATER ACT, THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980, THE EMERGENCY PLANNING

AND COMMUNITY RIGHT-TO-KNOW ACT, THE FEDERAL WATER POLLUTION CONTROL ACT, THE HAZARDOUS AND THE SOLID WASTE AMENDMENTS ACT OF 1984, THE HAZARDOUS MATERIALS TRANSPORTATION ACT, THE NATIONAL ENVIRONMENTAL POLICY ACT, THE OIL POLLUTION ACT OF 1990, THE RESOURCE CONSERVATION AND RECOVERY ACT OF 1976, THE SAFE DRINKING WATER ACT OF 1974, THE SUPERFUND AMENDMENTS AND REAUTHORIZATION ACT OF 1986 AND THE TOXIC SUBSTANCES CONTROL ACT,

(13) SAFETY,

(14) THE ABSENCE OF APPARENT, PATENT, LATENT OR HIDDEN DEFECTS OR VICES,

(15) FREEDOM FROM OR DIMINUTION IN VALUE BECAUSE OF REDHIBITORY DEFECTS OR VICES (UNDER LOUISIANA CIVIL CODE ARTICLE 2520 ET SEQ. OR OTHERWISE, WHETHER KNOWN OR UNKNOWN AND WHETHER APPARENT, PATENT, LATENT, HIDDEN OR OTHERWISE),

(16) EVICTION (UNDER LOUISIANA CIVIL CODE ARTICLE 2500 OR OTHERWISE),

(17) NON-DECLARED ENCUMBRANCES (UNDER LOUISIANA CIVIL CODE ARTICLE 2500 OR OTHERWISE) OR

(18) CONFORMITY WITH MODELS OR SAMPLES OF MATERIALS.

FURTHER, EXCEPT AS EXPRESSLY PROVIDED OTHERWISE IN AND SUBJECT TO THE TERMS AND PROVISIONS OF THE PSA, BUYER SHALL PROTECT, INDEMNIFY, DEFEND AND HOLD HARMLESS EACH SELLER GROUP MEMBER FROM AND AGAINST, ANY AND ALL CLAIMS, WHETHER DIRECT OR INDIRECT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THAT MAY ARISE OUT OF OR IN ANY WAY BE CONNECTED TO ANY OR ALL SUBJECTS LISTED IN ITEMS (9)-(12) ABOVE, WHETHER BEFORE, AT OR AFTER THE EFFECTIVE TIME AND WHETHER OR NOT ARISING DURING THE PERIOD OF, OR FROM, OR IN CONNECTION WITH SELLER'S OWNERSHIP OR USE OF THE PROPERTIES, AND *WHETHER OR NOT CAUSED OR CONTRIBUTED IN WHOLE OR IN PART BY THE NEGLIGENCE (WHETHER ACTIVE, PASSIVE, SOLE, SIMPLE, CONCURRENT OR OTHERWISE), FAULT OR STRICT LIABILITY OF ANY SELLER GROUP MEMBER OR BY ANY OTHER THEORY OF LIABILITY OR FAULT WHETHER IN LAW (STATUTORY, COMMON, CIVIL, JUDICIAL OR OTHERWISE), EQUITY OR OTHERWISE (EXCLUDING ONLY THE GROSS NEGLIGENCE OR WILFUL MISCONDUCT ON THE PART OF THE PERSON TO BE INDEMNIFIED).* Notwithstanding the foregoing, this Act of Sale is made with full rights of substitution and subrogation of Buyer in and to all rights and actions of warranty against previous owners, sellers, lessors, lessees and grantors (with the exception of Seller, Castex Energy, Inc., Castex Energy 1995, L.P., Castex Energy 1996, L.P., Mirant Americas Production Company, Mirant South Louisiana Production, LLC and Mirant South Louisiana Fee, LLC).

In the event of any conflict or inconsistency between the terms and provisions of this Article V and the terms and provisions set forth in the PSA, the terms and provisions of the PSA shall control.

### Article VI.

SELLER MAKES NO WARRANTY WHATSOEVER, EXPRESSED OR IMPLIED, AS TO TITLE TO THE PROPERTIES, except that Seller specially warrants and agrees to defend Seller's title against the lawful claims of all persons claiming title to the

Properties by through or under Seller (subject to and as further provided in Section 9.16 of the PSA), but not otherwise.

### Article VII.

Seller and Buyer waive the production of Mortgage and Conveyance Certificates and relieve and release the undersigned Notary Public from all responsibility in connection therewith. The parties hereto take cognizance of the fact that no title examination has been requested by the undersigned Notary Public, and relieve and release the undersigned Notary Pubic of any and all liability in connection therewith.

### Article VIII.

This Act of Sale shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and to the extent permitted by law, covenants hereof shall constitute real obligations and shall run with the Land. Nonetheless, Seller's obligations under the special warranty of title in Article VI above or otherwise under or pursuant to the PSA shall not be binding on any third Person (as defined in Article IV above) solely by virtue of such third Person's obtaining any right, title or interest in or to any or all of the Production Payment.

IN WITNESS WHEREOF, the parties hereto have signed this Act of Sale to be effective for all purposes as of the Effective Time in the presence of the undersigned competent witnesses, who hereunto sign their names with Seller and Buyer.

WITNESSES:

SELLER:

LATERRE CO., LTD.
By Castex Energy, Inc., its sole general partner

By: _____
John R. Stoika, President

BUYER:
APACHE NORTH AMERICA, INC.

By: _____
Eric L. Harry, Vice President

## **Acknowledgments**

**STATE OF TEXAS**
**COUNTY OF HARRIS**

BEFORE ME, a duly authorized notary public, on this day personally appeared **Eric L. Harry**, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the Vice President of **Apache North America, Inc.**, a Delaware corporation, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation.

Given under my hand and official seal this 31ˢᵗ day of January 2003.



REGINA C. GORMAN
Notary Public, State of Texas
Commission Expires
NOVEMBER 30, 2005

Notary Public in and for the State of Texas
My commission expires _11-30-2005_

**STATE OF TEXAS**
**COUNTY OF HARRIS**

BEFORE ME, a duly authorized notary public, on this day personally appeared **John R. Stoika**, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the President of Castex Energy, Inc., the sole General Partner of **LaTerre Co., Ltd.**, a Texas limited partnership, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said limited partnership.

Given under my hand and official seal this 31ˢᵗ day of January 2003.



REGINA C. GORMAN
Notary Public, State of Texas
Commission Expires
NOVEMBER 30, 2005

Notary Public in and for the State of Texas
My commission expires _11-30-2005_

Page 12 of 12

**EXHIBIT "A"**

**to Act of Sale between LaTerre Co., Ltd., as Seller, and Apache North America, Inc., as Buyer**

## TERREBONNE PARISH, LOUISIANA

**WARD 4**

A) Township 19 South-Range 17 East

1) Section 14 -    All

2) Section 15 -    All

3) Section 82 -    All, fractional as per Official Township Plat dated November 4,1856.

4) Section 82 -    Section 82, as shown upon the Official Township Plat of said township approved on June 4, 1832, based upon the survey by John Maxwell, Deputy United States Surveyor, during the years 1830 and 1831, which as not included within the area designated as Section 82 of said township as shown upon the Official Township Plat of said township approved on November 4, 1856, based upon the re-survey of said township by Joseph Gorlinski, Deputy United States Surveyor, during the year 1856, said portion of said Section 82 estimated to contain 494.71 acres.

B) Township 20 South-Range 17 East

1) Section 1 -    All

2) Section 2 -    East Half of Southeast Quarter.

3) Section 12 -    All

4) Section 13 -    All, less and except West Half of Southwest Quarter and less and except any interest in said lands quitclaimed to the St. Martins by that certain Agreement dated November 2, 1970, and recorded in Conveyance Book 510, Page  635 and also less and except any interest in said lands quitclaimed to Dr. Forrest E. Baker by that certain Agreement dated April 15, 1971, and recorded in Conveyance Book 516, Page 742, but including any interest in said section acquired by LaTerre Co., Inc. in said Agreements.

Page 1 of 23

5) Section 24 -    Northeast Quarter and less and except any interest in said lands quitclaimed to the St. Martins by that certain Agreement dated November 2, 1970, and recorded in Conveyance Book No. 510, Page 635, and also less and except any interest in said lands quitclaimed to Dr. Forrest E. Baker by that certain Agreement dated April 15, 1971, and recorded in Conveyance Book 516, Page 742, but including any interest in said section acquired by LaTerre Company, Inc. in said Agreements.

## WARD 6

A)    Township 19 South-Range 19 East

1) Section 11 -    Lot 2

2) Section 12 -    Lot 2

3) Section 13 -    Lot 2

4) Section 15 -    All that portion lying East of Bayou Terrebonne, less and except Lot 1.

5) Section 28 -    All

6) Section 29 -    All, less and except Lot 1.

7) Section 30 -    All

8) Section 31 -    All

9) Section 32 -    Northeast Quarter, West Half of Southwest Quarter and East Half of Southeast Quarter.

10) Section 33 -    Lot Nos. 15 and 16.

11) Section 34 -    All

12) Section 35 -    All

13) Section 36 -    All, less and except Southeast Quarter of Southeast Quarter.

14) Section 37 -    All, less and except West Half of Southwest Quarter.

15) Section 38 -    East Half, East Half of Northwest Quarter and Southwest Quarter of Southwest Quarter; less and except that certain portion quitclaimed by LaTerre Co., Inc. to Pierre Chaisson, Joseph Naquin and Henry Dardan by three (3) instruments

Page 2 of 23

dated October 24, 1951, and recorded in Conveyance Book 183, Pages 430, 428 and 427, respectively;

16) Section 39 -   All

17) Section 40 -   All

18) Section 41 -   All

19) Section 42 -   All

20) Section 43 -   All

21) Section 44 -   All, less and except Lot 8.

22) Section 45 -   All

23) Section 46 -   All

24) Section 47 -   All

25) Section 48 -   All

26) Section 49 -   All; less and except   Northeast Quarter of Northwest Quarter; and less and except those   certain portions quitclaimed by LaTerre Co., Inc. to Hellen (or Helien) Verdin Dardar, et al, by instrument dated June 28, 1949, and recorded in Conveyance Book 169, Page 234; and less and except those certain portions quitclaimed by LaTerre Co., Inc. to Pierre Chaisson, by instrument dated October 24, 1951, and  recorded in Conveyance Book 183, Page 430

27) Section 53 -   East Half of East Half, Southwest Quarter of Northeast Quarter Southwest Quarter of Southeast Quarter and West Half of West Half.

B)  Township 20 South-Range 19 East

1) Section 1 -    All

2) Section 2 -    All

3) Section 3 -    All

4) Section 4 -    All

5) Section 5 -    All

6) Section 6 -    All

Page 3 of 23

7) Section 7 -      All

8) Section 8 -      All

9) Section 9 -      All

10) Section 10 -    All

11) Section 11 -    All

12) Section 12 -    All

13) Section 13 -    All

14) Section 14 -    All

15) Section 15 -    All

16) Section 17 -    All

17) Section 18 -    All

18) Section 19 -    All

19) Section 20 -    All

20) Section 21 -    All

21) Section 22 -    All

22) Section 23 -    All

23) Section 24 -    All

24) Section 25 -    All

25) Section 26 -    All

26) Section 27 -    All

27) Section 28 -    All

28) Section 29 -    All

29) Section 30 -    All

30) Section 31 -    All

31) Section 32 -    All

Page 4 of 23

32) Section 33 -   All

33) Section 34 -   All

34) Section 35 -   All

35) Section 36 -   All

C)  Township 20 South-Range 20 East

    1) Section 1 -   West Half of Southwest Quarter and Southeast Quarter of Southwest Quarter.

    2) Section 2 -   All

    3) Section 3 -   All

    4) Section 4 -   All

    5) Section 5 -   All

    6) Section 6 -   All

    7) Section 7 -   All fractional.

    8) Section 8 -   All fractional.

    9) Section 9  -   All fractional.

    10) Section 10 -   All

    11) Section 11 -   All

    12) Section 12 -   West Half.

    13) Section 13 -   Northwest Quarter of Southeast Quarter lying West of Bayou Chien (or Bayou Point Aux Chene), East Half of Southwest Quarter, Southwest Quarter of Southwest Quarter and Northwest Quarter.

    14) Section 14 -   All

    15) Section 15 -   All

    16) Section 17 -   All fractional.

    17) Section 18 -   All fractional.

    18) Section 19 -   All fractional.

Page 5 of 23

19) Section 20 -    All fractional.

20) Section 21 -    All fractional.

21) Section 22 -    All

22) Section 23 -    All

23) Section 24 -    West Half of Northwest Quarter and South Half West of Bayou Chien (or Bayou Point Aux Chene).

24) Section 25 -    All West of Bayou Chien (or Bayou Point Aux Chene).

25) Section 26 -    All fractional.

26) Section 27 -    All fractional.

27) Section 30 -    All fractional.

28) Section 31 -    All fractional.

29) Section 35 -    All, less and except Coast Half of Northeast Quarter and Southeast Quarter.

30) Section 36 -    Northwest Quarter of Northwest Quarter and West Half of Southwest Quarter.

**WARD 7**

A) Township 18 South-Range 18 East

1) Section 62 -    All fractional.

2) Section 63 -    North Half of Northwest Quarter, Southeast Quarter of Northwest Quarter, Northeast Quarter of Southwest Quarter, and East Half.

3) Section 64 -    All

4) Section 66 -    All

5) Section 67 -    All, less and except Northeast Quarter of Northeast Quarter.

6) Section 68 -    Northeast Quarter, Southwest Quarter of Southwest Quarter and Northwest Quarter of Southeast Quarter.

7) Section 69 -    Northeast Quarter of Northeast Quarter.

Page 6 of 23

8) Section 70 -   Northeast Quarter of Southeast Quarter, South Half of Southwest Quarter, and South Half of Southeast Quarter.

9) Section 71 -   All

10) Section 72 -   All

11) Section 73 -   East Half, Southeast Quarter of Northwest Quarter, East Half of Southwest Quarter and Southwest Quarter of Southwest Quarter.

12) Section 74 -   Southeast Quarter of Northeast Quarter, Northwest Quarter, West Half of Southwest Quarter, East Half of Southeast Quarter and Southwest Quarter of Southeast Quarter.

13) Section 75 -   South Half of Northwest Quarter, Southwest Quarter and West Half of Southeast Quarter.

14) Section 78 -   Southeast Quarter of Northeast Quarter, Southwest Quarter of Southeast Quarter and East Half of Southeast Quarter and an undivided interest in minerals in certain lands, said minerals acquired from Jean Baptiste LeBlanc by, and said lands being described in, the Compromise Agreement dated March 22, 1943, and recorded either in Conveyance Book Nos. 145 or 154, Page 5, less and except lands awarded LeBlanc by the Compromise Agreement.

15) Section 80 -   All, less and except Northeast Quarter of Southeast Quarter, and less and except those portions awarded Jean Baptiste LeBlanc by Compromise Agreement dated March 22, 1943, and recorded either in Conveyance Book Nos. 145 or 154, Page 5 including the mineral interest awarded Tenneco by LeBlanc in certain lands by the Compromise Agreement.

16) Section 81 -   All, less and except Northeast Quarter of Southeast Quarter.

B)  Township 19 South-Range 18 East

1) Section 65 -   All fractional.

2) Section 66 -   All

3) Section 67 -   All

4) Section 68 -   All

5) Section 69 -   All fractional.

6) Section 70 -     All

7) Section 71 -     All

8) Section 72 -     All fractional.

9) Section 73 -     All fractional.

10) Section 74 -    All fractional.

11) Section 75 -    All fractional.

12) Section 81 -    Lot Nos. 4 and 5, as per Official Township Plat dated November 4, 1856.

13) Section 81 -    Lot No. 6 containing 36.43 acres as per Official Township Plat dated October 23, 1951.

14) Section 83 -    All, as per Official Township Plat dated November 4, 1856.

15) Section 83 -    Lot No. 10 containing 65.17 acres as per Official Township Plat dated October 23, 1951.

16) Section 84 -    All, as per Official Township Plat dated November 4, 1856.

17) Section 84 -    Lot Nos.10 and 11 containing 153.02 acres as per Official Township Plat dated October 23, 1951.

18) Section 98 -    Section 98 containing 267.98 acres as per Official Township Plat dated October 23, 1951.

19) Section 99 -    Section 99 containing 254.05 acres as per Official Township Plat dated October 23, 1951.

C) Township 19 South-Range 19 East

1) Section 15 -     All West of Bayou Terrebonne

2) Section 33 -     Lot Nos. 5, 6, 10, 11, 12 and 13.

D) Township 20 South-Range 18 East

1) Section 108 -    All

2) Section 109 -    All

3) Section 110 -    All

4) Section 111 -    All

5) Section 112 -   Lot Nos. and 4, East Half of Southwest Quarter, Northwest Quarter of Southwest Quarter and Northwest Quarter and less and except any interest in said lands quitclaimed to the St. Martins by that certain Agreement dated November 2, 1970, and recorded in Conveyance Book 510, Page 635 and also less and except any interest in said lands quitclaimed to Dr. Forrest E. Baker by that certain Agreement dated April 15, 1971, and recorded in Conveyance Book 516, Page 742, but including any interest in said section acquired by LaTerre Co., Inc. in said Agreements.

6) Section 113 -   Northeast Quarter of Northwest Quarter and less and except any interest in said lands quitclaimed to the St. Martins by that certain Agreement dated November 2, 1970, and recorded in Conveyance Book 510, Page 635 and also less and except any interest in said lands quitclaimed to Dr. Forrest E. Baker by that certain Agreement dated April 15, 1971, and recorded in Conveyance Book 516, Page 742, but including any interest in said section acquired by LaTerre Co., Inc. in said Agreements.

## WARD 9

A)  Township 18 South-Range 16 East

1) Section 23 -   All

2) Section 24 -   All

## WARD 10

A)  Township 18 South-Range 16 East

1) Section 25 -   All

2) Section 26 -   North Half, North Half of South Half, Southwest Quarter of Southwest Quarter, East Half of Southeast Quarter of Southeast Quarter, and Northwest Quarter of Southeast Quarter of Southeast Quarter.

3) Section 35 -   West Half of East Half, East Half of Southeast Quarter, Southeast Quarter of Northeast Quarter, Southeast Quarter of Southwest Quarter, East Half of Northeast Quarter of Southwest Quarter, and East Half of Southeast Quarter of Northwest Quarter.

4) Section 36 -   Southeast Quarter of Northeast Quarter, Southeast Quarter, South Half of Southwest Quarter, West Half of Northwest

Quarter of Southwest Quarter, and Southeast Quarter of Northwest Quarter of Southwest Quarter.

B) Township 19 South-Range 13 East

    1) Section  1 -     All

    2) Section  2 -     All

    3) Section  3 -     All

    4) Section  4 -     All

    5) Section  5 -     All

    6) Section  6 -     All

    7) Section  7 -     All

    8) Section  8 -     All

    9) Section  9 -     All

    10) Section 10 -     All

    11) Section 11 -     All

    12) Section 12 -     All

    13) Section 13 -     All

    14) Section 14 -     All

    15) Section 15 -     All

    16) Section 17 -     All

    17) Section 18 -     All

    18) Section 19 -     All

    19) Section 20 -     All

    20) Section 21 -     All

    21) Section 22 -     All

    22) Section 23 -     All

    23) Section 24 -     All

24) Section 25 -    All

25) Section 26 -    All

26) Section 27 -    All

27) Section 28 -    All

28) Section 29 -    All

29) Section 30 -    All

30) Section 31 -    All

31) Section 32 -    All

32) Section 33 -    All

33) Section 34 -    All

34) Section 35  -   All

35) Section 36  -   All

C) Township 19 South-Range 14 East

1) Section 6 -    All

2) Section 7 -    All

3) Section 18 -    All

4) Section 19  -   All

5) Section 30 -    All

6) Section 31 -    All

D) Township 19 South-Range 15 East

1) Section  1 -    All

2) Section  2 -    All

3) Section  3 -    All, less and except a certain 40 acre tract surrounding Billiot's Shell Island, subject to Boundary Agreement with Billiot's Shell Island, Inc. dated November 16, 1963, recorded in Conveyance Book 364, Entry No. 254172.

Page 11 of 23

4) Section 4          All

5) Section 5 -        All

6) Section 6 -        All

7) Section 7 -        All

8) Section 8 -        All

9) Section 9 -        All

10) Section 10 -      All

11)  Section 11 -     All

12)  Section 12 -     All

13)  Section 13 -     All, less and except the Northwest Quarter of the Northwest Quarter, subject to Boundary Agreement with Arthur Liner, et al dated July 18, 1956, and recorded in Conveyance Book 231, Entry No. 155936.

14)  Section 14 -     Northwest Quarter of Northeast Quarter, North Half of Northwest Quarter; South Half of Southwest Quarter, Northeast Quarter of Southwest Quarter, and Southeast Quarter, subject to Boundary Agreement with Arthur Liner, et al dated July 18, 1956, and recorded in Conveyance Book 231, Entry No. 155936.

15)    Section 15 -   All

16)    Section 17 -   All

17)    Section 18 -   All

18)    Section 19 -   All

19)    Section 20 -   All

20) Section 21 -      All

21) Section 22 -      All

22) Section 23 -      All

23) Section 24 -      All

24) Section 25 -      All

Page 12 of 23

25) Section 26 -   All

26) Section 27 -   All

27) Section 28 -   All

28) Section 29 -   All

29) Section 30 -   All

30) Section 31 -   All

31) Section 32 -   All

32) Section 33 -   All, North of Bayou DeCade.

33) Section 34 -   All, North of Bayou DeCade.

34) Section 35 -   All, Less and except SW/4 of SW/4.

35) Section 36 -   All

E) Township 19 South-Range 16 East

1) Section  1 -   All

2) Section  2 -   All

3) Section 3 -   Southeast Quarter of  Northeast Quarter, Southwest Quarter of Northwest Quarter, South Half of Southwest Quarter, South Half of Northeast Quarter of Southwest Quarter, and Southeast Quarter.

4) Section 4 -   North Half, North Half of Southwest Quarter, Southwest Quarter of Southwest Quarter, North Half of Southeast Quarter of Southwest Quarter, West Half of Northwest Quarter of Southeast Quarter and South Half of Southeast Quarter of Southeast Quarter.

5) Section 5 -   All

6) Section 6 -   All

7) Section 7 -   All

8)  Section 8 -   West Half, North Half of Northeast Quarter, and South Half of Southeast Quarter

9) Section 9 -     South Half, Northeast Quarter Southeast Quarter of Northwest Quarter, Southeast Quarter of Southwest Quarter of Northwest Quarter, East Half of Northeast Quarter of Northwest Quarter and Northwest Half of Northwest Quarter of Northwest Quarter.

10) Section 10 -   All

11) Section 11 -   All

12) Section 12 -   All

13) Section 13 -   North Half.

14) Section 14 -   All

15) Section 15 -   All

16) Section 17 -   All

17) Section 18 -   All

18) Section 19 -   All

19) Section 20 -   All

20) Section 21 -   All

21) Section 22 -   All, less and except Southeast Quarter of Southeast Quarter.

22) Section 23 -   North Half of Northeast Quarter and Northwest Quarter.

23) Section 26 -   Northeast Quarter of Northwest Quarter, Southwest Quarter of Northwest Quarter, and a certain tract of land fronting 672 feet, more or less, on the right descending bank of Bayou Dularge, by full depth thereunto belonging, bounded above or North by property of Walton Champagne, now or formerly, and by property of LaTerre Co., Inc., below or South by property of the heirs of Claude Joseph Chauvin, now or formerly, East by Bayou Dularge and West by property of LaTerre Co., Inc.

24) Section 27 -   Northwest Quarter of Northeast Quarter, Northwest Quarter, Southeast Quarter of Southwest Quarter, Southwest Quarter of Southeast Quarter, and East Half of Southeast Quarter.

25) Section 28 -   North Half, North Half of South Half, and Southwest Quarter of Southwest Quarter.

Page 14 of 23

26) Section 29 -   All

27) Section 30 -   All

28) Section 31 -   All

29) Section 32 -   All

30) Section 33 -   All, less and except North Half of Northwest Quarter.

31) Section 34 -   North Half, Southwest Quarter, and Northwest Quarter of Southeast Quarter.

F) Township 20 South-Range 15 East

1) Section  5 -   All

2) Section  6 -   All

3) Section  7 -   All

4) Section  8 -   All

5) Section 17 -   All

6) Section 18 -   All

7) Section 19 -   All

8) Section 20 -   All

## LAFOURCHE PARISH, LOUISIANA

### Ward 4

1.   Township 18 South, Range 19 East

a.      Section 62 - All

b.      Section 63 - All

c.      Section 67 - All

d.      Section 68 - All

2.   Township 18 South, Range 20 East

a.      Section 7 - South Half

Page 15 of 23

b.  Section 8 - South Half

c.  Section 9 - South Half

d.  Section 10 - South Half

e.  Section 11 - South Half West of Grand Bayou Canal

f.  Section 14 - All West of Grand Bayou Canal

g.  Section 15 - All West of Grand Bayou Canal

h.  Section 22 - North Half West of Grand Bayou Canal

i.  Section 17 - All

j.  Section 18 - All

k.  Section 19 - North Half

l.  Section 20 - North Half

m.  Section 21 - North Half

**Ward 10**

1.  Township 18 South, Range 20 East

a.  Section 12 - South Half

b.  Section 13 - All

c.  Section 23 - North Half

d.  Section 24 - North Half

e.  Section 11 - South Half East of Grand Bayou Canal

f.  Section 14 - All East of Grand Bayou Canal

g.  Section 15 - All East of Grand Bayou Canal

h.  Section 22 - North Half East of Grand Bayou Canal

2.  Township 18 South, Range 21 East

a.  Section 48 - Southwest Quarter of Northeast Quarter, South Half of Northwest Quarter and South Half

b.  Section 53 - All

  c.  Section 54 - All

  d.  Section 55 - North Half

  e.  Section 56 - North Half

  f.  Section 66- Fractional South Half

3.  Township 20 South, Range 21 East

  a.  Section 1 - All

  b.  Section 2 - All

  c.  Section 3 - All

  d.  Section 4 - All

  e.  Section 5- All

  f.  Section 8- All

  g.  Section 9 - All

  h.  Section 10 - All

  i.  Section 11 - All

  j.  Section 12 - All

  k.  Section 13 - All

  l.  Section 14 - All

  m.  Section 15 - All

  n.  Section 17 - All

  o.  Section 20 - All

  p.  Section 21 - All

  q.  Section 22 - All

  r.  Section 23 - All

  s.  Section 24 - All

  t.  Section 25 - All

u.    Section 26 - All

v.    Section 27 - All

w.    Section 28 - All

x.    Section 29 - All

y.    Section 32 - All

z.    Section 33 - All

a.    Section 34 - All

b.    Section 35 - All

c.    Section 36 - All

4.    Township 20 South, Range 21 East and/or Township 21 South, Range 21 East

Tract of land situated in Township 20 South, Range 21 East, and/or Township 21 South, Range 21 East, Lafourche Parish, Louisiana proceeding from the compromise Agreement between La-Terre Co., Inc. and The Louisiana Land and Exploration Co., recorded September 11, 1965 in COB 342 at Page 264 under Entry No. 250583, Lafourche Parish, Louisiana, and more particularly described as follows:

Beginning at a point having Lambert Grid Coordinate values of X=231,693.62 and Y=227,021.31, said point bearing South 54 degrees 19 minutes 30 seconds West a distance of 6,040.34 feet from U.S.C.&G.S. Triangulation Station "Rack, 1934"; thence North 1 degree 11 minutes 08 seconds" West a distance of 5,505.56 feet to a point; thence North 88 degrees 38 minutes 34 seconds East a distance of 25,094.69 feet to a point; thence South 3 degrees 08 minutes 53 seconds West a distance of 637.32 feet to a point; thence South 2 degrees 14 minutes 08 seconds East a distance of 3,964.00 feet to a point; thence South 86 degrees 34 minutes 33 seconds West a distance of 25,138.25 feet to the point of beginning, containing 2,909.37 acres more or less.

All bearings and all coordinates set forth herein are based on State Plane Lambert Grid, Louisiana.

5.    Township 20 South, Range 22 East

a. Section 6 -        West Half, and West Half of East Half less and except those portions conveyed to Alex J. Plaisance, et al, by deed dated April 13, 1959, and recorded in COB 251 at Page 652, and less and except from all of the lands in said section

Page 18 of 23

otherwise included those two certain tracts or parcels of land conveyed to the State of Louisiana and the Department of Highways of the State of Louisiana by that certain Sale recorded under Entry No. 424785, but including the minerals Underlying said tracts, which were reserved in said sale.

b. Section 7 -    All

c. Section 8 -    West Half of Southwest Quarter, less and except those portions awarded Harvey Peltier, et al, by Compromise Agreement dated May 20, 1941 and recorded in COB 101 at Page 23

d. Section 17 -   West Half of Southeast Quarter, and West Half, less and except those portions awarded Harvey Peltier, et al, by Compromise Agreement dated May 20, 1941 and recorded in COB 101 at Page 23

e. Section 18 -   All

f. Section 19 -   All

g. Section 20 -   All

h. Section 28 -   West Half of West Half

i. Section 29 -   All

j. Section 30 -   All

k. Section 31 -   All

l. Section 32 -   All

m. Section 33 -   West Half

**Ward 11**

1.    Township 18 South, Range 19 East

    a.    Section 59 - Southeast Quarter of Northeast Quarter

    b.    Section 60 - North Half

    c.    Section 61 - North Half

    d.    Section 66 - Fractional North Half

2.    Township 20 South, Range 20 East

Page 19 of 23

    a. Section 1 -    Northwest Quarter of Northeast Quarter and East Half of East Half

    b. Section 12 -    Northeast Quarter of Northeast Quarter

    c. Section 13 -    East Half of East Half, and Northwest Quarter of Southeast Quarter East of Bayou Pointe Aux Chene

    d. Section 24 -    East Half of Northeast Quarter, Southwest Quarter of Northeast Quarter, and South Half East of Bayou Pointe Aux Chene

    e. Section 25 -    East Half of East Half East of Bayou Pointe Aux Chene (Title Acquired by LaTerre Co., Inc. by quitclaim from South Louisiana Land Company, Limited, dated June 2, 1972 and recorded in COB 471 at page 202.

    f. Section 36 -    East Half of East Half

3.    Township 20 South, Range 21 East

    a.    Section 6 - All

    b.    Section 7 - All

    c.    Section 18 - All

    d.    Section 19 - All

    e.    Section 30 - All

    f.    Section 31 - All

4.    Township 20 South, Range 21 East and/or Township 21 South, Range 21 East

    Tract of land situated in Township 20 South, Range 21 East and/or Township 21 South, Range 21 East, Lafourche Parish, Louisiana proceeding from the Compromise Agreement between La-Terre Co., Inc. and The Louisiana Land and Exploration Co., recorded September 11,1965 in COB 342 at Page 264 under Entry No. 250583, and more particularly described as follows to-wit:

    Beginning at a point having Lambert Grid Coordinate values of X=2,305,611.45 and Y=226, 7720.21, said point bearing South 68 degrees 57 minutes 26 seconds West a distance of 10,649.13 feet from U.S.C. & G.S. Triangulation Station "Rack, 1934"; thence North 1 degree 0 minutes 0 seconds West a distance of 5,687.46 feet to a point; thence North 88 degrees 38 minutes 34 seconds East a distance of 5,018.94 feet to a point; thence South 1 degree 11 minutes 08 seconds East a distance of 5,505.56 feet to a point; thence South 86

Page 20 of 23

degrees 34 minutes 33 seconds West a distance of 5,041.17 feet to the point of beginning, containing 645.98 acres more or less

All bearings and all coordinates set forth herein are based on State Plane Lambert Grid, Louisiana (South Zone).

## CAMERON PARISH

### Township 14 South, Range 10 West

Section 17: Entire Fractional Section 17;
Section 18: Southeast Quarter (SE/4);
Section 19: All;
Section 20: All;
Section 29: West Half (W/2); Northeast Quarter (NE/4); North Half of Southeast Quarter (N/2 of SE/4); Southwest Quarter of Southeast Quarter (SW/4 of SE/4);
Section 30: All;
Section 31: Northeast Quarter (NE/4); East Half of Northwest Quarter (E/2 of NW/4); Northwest Quarter of Northwest Quarter (NW/4 of NW/4); Northwest Quarter of Southeast Quarter (NW/4 of SE/4); East Half of Southwest Quarter (E/2 of SW/4);
Section 32: Northwest Quarter of Northwest Quarter (NW/4 of NW/4).

### Township 14 South, Range 11 West

BLOCK ONE:
Section 19: All;
Section 20: All;
Section 21: All;
Section 22: All;
Section 23: All;
Section 24: All;
Section 25: All;
Section 26: All;
Section 29: All;
Section 30: All;
Section 31: All;
Section 32: All;
Section 35: West Half (W/2); Southeast Quarter (SE/4); West Half of Northeast Quarter (W/2 of NE/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4);
Section 36: Northwest Quarter of Northwest Quarter (NW/4 of NW/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4);

BLOCK TWO:
All of Sections 27, 28, 33 and 34, LESS AND EXCEPT approximately 480 acres owned by Matilda Geddings Gray, or her successors or assigns, as described in

Page 21 of 23

that certain Agreement between The Lutcher and Moore Lumber Company and Matilda Geddings Gray dated July 15, 1935, recorded in Conveyance Book 27, Page 206, Entry No. 31872, records of the Clerk of Court of Cameron Parish, Louisiana.

### Township 14 South, Range 12 West

All of Sections 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, and 36, LESS AND EXCEPT the rights in that certain 1.955 acre tract conveyed by U.S. Oil of Louisiana, Ltd., et al, to the State of Louisiana by instrument dated January 27, 1970, recorded in Conveyance Book 267, Page 435, Entry No. 122662, records of the Clerk of Court of Cameron Parish, Louisiana.

### Township 15 South, Range 11 West

| | |
|---|---|
| Section 2: | North Half (N/2); |
| Section 3: | West Half (W/2); West Half of Southeast Quarter (W/2 of SE/4); West Half of Northeast Quarter (W/2 of NE/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4), LESS AND EXCEPT those certain surface rights conveyed by Bill of Sale from U.S. Oil of Louisiana, Ltd., et al, to the State of Louisiana by instrument dated January 27, 1970, recorded in Conveyance Book 267, Page 435, Entry No. 122662, records of the Clerk of Court of Cameron Parish, Louisiana; |
| Section 4: | All; |
| Section 5: | All; |
| Section 6: | All; |
| Section 7: | All; |
| Section 8: | Entire Fractional Section 8; |
| Section 9: | Entire Fractional Section 9; |
| Section 10: | Northwest Quarter (NW/4); West Half of Northeast Quarter (W/2 of NE/4); Southwest Quarter (SW/4); West Half of Southeast Quarter (W/2 of SE/4). |

### Township 15 South, Range 12 West

| | |
|---|---|
| Section 1: | All; |
| Section 2: | All; |
| Section 3: | All; |
| Section 4: | All; |
| Section 5: | All; |
| Section 6: | All; |
| Section 7: | All; |
| Section 10: | Entire Fractional Section 10; |
| Section 25: | All (Lot #40); |
| Section 26: | All (Lot #39); |
| Section 27: | All (Lot #38); |
| Section 28: | All (Lot #37); |
| Section 29: | All (Lot #36); |

Page 22 of 23

Section 30:  All (Lot #35);
Section 31:  All (Lot #34);
Section 32:  All (Lot #33);
Section 33:  All (Lot #32);
Section 34:  All (Lot #31);
Section 35:  All (Lot #30);
Section 36:  All (Lot #29);
Section 37:  All (Lot #28);
Section 38:  All (Lot #27);
Section 39:  All (Lot #26);
Section 40:  All (Lot #25);
Section 41:  All (Lot #24);
Section 42:  All (Lot #23).

Certain discrepancies may exist with reference to the governmental surveys for Township 14 South, Range 11 West, Township 14 South, Range 12 West, Township 15 South, Range 11 West and Township 15 South, Range 12 West and the location of their respective sections, or portions thereof, and therefore, as to the location of the lands to be conveyed pursuant to this Agreement.  Accordingly, the lands to be conveyed pursuant to this Agreement shall include all of Fina's right, title and interest in and to all lands owned by it situated within Township 14 South, Range 10 West, Township 14 South, Range 11 West, Township 14 South, Range 12 West, Township 15 South, Range 11 West and Township 15 South, Range 12 West, Cameron Parish, Louisiana, whether or not said lands are properly described above.

[End of Exhibit "A"]

# Exhibit "B"

**Attached to and made a part of that certain Act of Sale dated
effective December 1, 2002, by and between LaTerre Co., Ltd.,
Seller, and Apache North America, Inc., Buyer**

| FIELD | WELL | SERIAL NO. | PARISH |
|---|---|---|---|
| BAY BAPTISTE | LATERRE B-5 | 217342 | TERREBONNE |
| BAY BAPTISTE | SL 17234 1 ST | 227344 | TERREBONNE |
| BAYOU COPASAW | CONTINENTAL LAND & FUR 1 | 218638 | TERREBONNE |
| BAYOU JEAN LA CROIX | DUPONT 38 1 | 221087 | TERREBONNE |
| BAYOU JEAN LA CROIX | DUPONT 38 1-D | 221525 | TERREBONNE |
| BAYOU JEAN LA CROIX | FINA FEE D-1 | 212375 | TERREBONNE |
| BAYOU PENCHANT | 63 N LATERRE CO INC A 33 | 153552 | TERREBONNE |
| BAYOU PENCHANT | 63 SO LATERRE CO INC A 36 | 158918 | TERREBONNE |
| BAYOU PENCHANT | CL&F  1 | 174343 | TERREBONNE |
| BAYOU PENCHANT | CL&F  7 | 214943 | TERREBONNE |
| BAYOU PENCHANT | CL&F  9ST | 78411 | TERREBONNE |
| BAYOU PENCHANT | CL&F 11 | 216558 | TERREBONNE |
| BAYOU PENCHANT | CL&F 14 | 224337 | TERREBONNE |
| BAYOU PENCHANT | CL&F 7 | 174343 | TERREBONNE |
| BAYOU PENCHANT | CL&F 8 | 133168 | TERREBONNE |
| BAYOU PENCHANT | CL&F A 5 | 218278 | TERREBONNE |
| BAYOU PENCHANT | CL&F D-1 | 226907 | TERREBONNE |
| BAYOU PENCHANT | LATERRE A-1 | 216318 | TERREBONNE |
| BAYOU PENCHANT | LATERRE A-16 | 77438 | TERREBONNE |
| BAYOU PENCHANT | LATERRE A-2 | 217267 | TERREBONNE |
| BAYOU PENCHANT | LATERRE A-28 | 151433 | TERREBONNE |
| BAYOU PENCHANT | LATERRE A-4 | 219899 | TERREBONNE |
| BAYOU PENCHANT | LATERRE A-5 | 224232 | TERREBONNE |
| BAYOU PENCHANT | LATERRE A-6 | 224678 | TERREBONNE |
| BAYOU PENCHANT | LATERRE A-6D | 225196 | TERREBONNE |
| BAYOU PENCHANT | LATERRE A-9 | 226665 | TERREBONNE |
| BAYOU PENCHANT | R4C RC SUA;CL&F CO 1 | 161242 | TERREBONNE |
| BAYOU PIGEON | BROWNELL KIDD 1 | 213932 | IBERIA |
| BAYOU PIGEON | C RA SUA LANDRY 3 | 66872 | IBERIA |
| BAYOU PIGEON | I RC SUA LANDRY 12 | 213957 | IBERIA |
| BAYOU PIGEON | LANDRY 6 | 70508 | IBERIA |
| BAYOU PIGEON | LANDRY A-1 | 216247 | IBERIA |
| BAYOU PIGEON | LYNCH-MCHUGH 1 | 218137 | IBERIA |
| BAYOU RAMBIO | BOURG #1 & #2 | 220891/ 221071 | LAFOURCHE |
| BULLY CAMP | EXXON FEE 40 | 204887 | LAFOURCHE |
| CAILLOU ISLAND | SL 2857 NOS. 13 & 16 | 119939 | TERREBONNE |
| CHAUVIN SOUTH | LATERRE C 3 (BP1) | 118437 | TERREBONNE |
| CHEGBY | ONCALE, EJ 1 | 216920 | LAFOURCHE |
| DEER ISLAND | CL&F B 7-D | 219617 | TERREBONNE |
| DEER ISLAND | CL&F D6A | 217108 | TERREBONNE |
| DEER ISLAND | CL&F D6B | 217108 | TERREBONNE |
| DEER ISLAND, NE | CL&F D1 | 212002 | TERREBONNE |
| DEER ISLAND, W. | LACOSTE #1 | 220458 | TERREBONNE |
| GOLDEN MEADOW | BILLIOT NO. 1 | 223582 | LAFOURCHE |
| GOLDEN MEADOW | LATERRE CO |  | LAFOURCHE |
| GOLDEN MEADOW | LATERRE CO 207 | 141642 | LAFOURCHE |