LAW OFFICES
# DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS
*(A Professional Law Corporation)*

JAMES M. FUNDERBURK
SIDNEY C. SUNDBERY
C. BERWICK DUVAL, II
CLAYTON E. LOVELL
STANWOOD R. DUVAL
KATHRYN W. RICHARD

101 WILSON AVENUE
P.O. BOX 3017
HOUMA, LOUISIANA 70361

CLAUDE B. DUVAL
(1914-1986)

Area Code 985
Telephone 876-6410
Fax 851-1490
www.duvallawfirm.com
(see website for e-mail addresses)

OF COUNSEL
WILLIAM S. WATKINS

August 23, 2013

In Re:   Deepwater Horizon Claims Center
         Claimant: Apache Louisiana Minerals LLC
         Claimant ID: 100176960
         Claim ID: 174520

## RESPONSE MEMORANDUM TO BP'S INITIAL PROPOSAL REGARDING CLAIM NO. 174520

Pursuant to Rule 13 of the Rules Governing The Appeals Process, this Memorandum is submitted on behalf of Apache Louisiana Minerals LLC ("ALM") in response to the initial proposal of BP Exploration & Production Inc. ("BP") with regard to the appeal of Claim No. 174520. BP submitted an initial proposal of $0. BP's initial proposal is extremely unreasonable and consistent with its recent approach to claims filed under the Deepwater Horizon Economic and Property Damages Settlement Agreement (the "Settlement Agreement"). Specifically, BP is attempting to circumvent the agreed terms of the Settlement Agreement in order to avoid paying valid claims. As set forth in ALM's Memorandum dated August 12, 2013 (the "Original Memorandum"), ALM is a proper member of the Settlement Agreement as a wetlands landowner in Louisiana.

The Claims Administrator under the Settlement Agreement, the law firm of BrownGreer PLC in assisting the Claims Administrator and even BP through the acceptance of two of ALM's other wetlands claims in the Settlement Agreement (Claim Numbers 174553 and 174555) have all accepted that ALM is a proper member of the class under the Settlement Agreement. However, BP is now trying to discredit ALM's claims under the Settlement Agreement by arguing that the business of ALM's parent company is actually the business of ALM. ALM's responses to BP's arguments in its initial proposal are set forth below.

1)   BP states that "Claimant identifies itself as a participant in the oil and gas industry on its sworn Registration Form submitted to the Settlement Program under penalty of perjury."

BP's argument is solely based on ALM identifying its NAICS code as 21111. ALM files a consolidated tax return with its parent company, Apache Corporation ("Apache"), but the NAICS code is not an excluded code nor is it a code subject to review.

1

DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS

As has been consistently held by the Court, BP does not have the latitude to re-write the Settlement Agreement. BP argues that even though Apache's NAICS code is not an excluded code it is "subsumed" in Exhibit 17. If anything is clear in this case, it is that the Court will not allow matters to be "subsumed". It is either in the Settlement Agreement or not. BP's numerous attempts to re-write the Settlement Agreement to its favor are completely improper and border on sanctionable activity. The fact is that even ALM's parent's NAICS code is not an excluded code nor is it a code subject to review listed on Exhibit 17 to the Settlement Agreement; therefore, BP's argument is completely without merit.

2) BP next argues that "Claimant's parent admits in its public filings that Claimant is engaged in the very types of activities that the Settlement Agreement defines as oil and gas activities."

BP has attached several documents which are not verified, not part of the record and then uses complete hearsay within those documents to support its argument. Pursuant to Rule 13 of the Rules Governing the Appeals Process, the documents attached by BP are improper and not part of the record, therefore should not be considered. Alternatively, if the documents are allowed, pursuant to Rule 13(h), ALM argues the following.

BP's main focus and argument is directed toward Apache, however, Apache has not filed a claim. ALM, a separate and distinct legal entity has. BP points to the annual report of Apache for the fiscal year ended December 31, 2012 (the "Annual Report") in which ALM is listed as a subsidiary of Apache in an attempt to place the oil and gas activities of Apache on ALM. However, not once in the Annual Report does it state that ALM is engaged in any type of oil and gas activity. Instead, the Annual Report details Apache's business in exploring for, developing and producing natural gas crude oil and natural gas liquids. The fact that ALM is a subsidiary of Apache does not take away from the fact that ALM runs a separate and distinct business as a land owner which manages its property—nor does it mean that ALM is an excluded member of the class under the Settlement Agreement.

3) BP's third argument is that "[W]hen Claimant acquired the property at issue in this Claim, it agreed to develop, maintain, and operate the wells located on the property at issue...."

BP is correct that the conveyance document from December 1, 2002 for portions of the property at issue required the buyer (Apache North America, Inc. as predecessor to Apache) to act with reasonable and prudent business judgment with respect to the purchased properties. BP fails to mention that such conveyance document states that any such operations on the lands are to be conducted pursuant to the applicable operating agreement. Importantly, Apache—and not ALM –is a party to any such operating agreements. The subsequent assignment from Apache North America, Inc. to ALM on March 1, 2004 of such properties is subject to the December 1,

2

2002 conveyance but again does place operational requirements on ALM. Again, BP is attempting to confuse Apache with ALM. While Apache may have been excluded, it is clear ALM, the claimant herein, is not.

    4)    BP's fourth argument corresponds with its third argument and is invalid for the reasons set forth under item 3 above.

    5)    BP next references the Apache December 17, 2002 news release, the Apache 2002 Annual Report, the Apache 2003 Annual Report and the Apache website to show that the ALM properties are used in connection with oil and gas activities.

The referenced Apache December 17, 2002 news release referenced producing wells and seismic imaging which are maintained and operated by Apache—not ALM. There are no references to ALM developing, operating or producing oil and gas from the subject properties in any of the materials referenced by BP. BP is simply trying to create the impression that ALM and Apache are the same entity. However, courts have generally recognized and respected the separateness of a parent and subsidiary. *Horseshoe Entertainment v. Lepinski*, 923 So.2d 929, 935-36 (La.App. 2 Cir. 2006); *Town of Haynesville, Inc. v. Entergy Corp.*, 956 So.2d 192, 198 (La.App. 2d Cir. 2007).

    6)    BP's sixth argument provides that ALM advertises itself as an oil and gas company and identified itself as a member of the "Oil & Gas" industry with the Houma Chamber of Commerce.

Again, none of this is in the record, and is rank hearsay, however, even if allowed, the argument is without merit. The oil and gas category with the Houma Chamber of Commerce is a general category which may involve different types and degrees of oil and gas involvement. As provided in the Original Memorandum, ALM (as do most all Louisiana coastal landowners) has an active surface leasing program and ALM also provides oil and gas mineral leases on its lands. Leasing of lands for oil and gas exploration does not constitute an excluded activity, and does not exclude ALM from the claim. Instructively, ALM is not listed in the Oil & Gas Exploration and Production category of the Houma Chamber of Commerce.

    7)    BP's final argument states that "Claimant is a member of the Louisiana Oil & Gas Association."

As stated under item 6 above, ALM provides surface leases and mineral leases covering its lands. Consequently, it makes sense for ALM to receive periodic updates of decisions being made by the legislature which could affect ALM's business as a landowner. It is important to note that Apache—not ALM—is listed under the Exploration and Production section of the Louisiana Oil & Gas Association. Certainly, membership in organizations such as the Chamber

of Commerce and LOGA does not exclude ALM from the class. To construe otherwise would require an extremely tortured reading of the Settlement Agreement.

### Conclusion

BP's initial proposal to ALM of $0 for Claim 174520 is consistent with BP's approach to take any potential path to avoid paying valid claims under the Settlement Agreement. ALM has been directly impacted by oil as a result of the Macondo well explosion and some of its coastal property was literally covered in oil.

ALM is a separate and distinct legal entity with an office in Houma, Louisiana in which it operates its lands through leasing, alligator farming, conservation and restoration. Courts have consistently respected that a corporate parent and subsidiary are separate and distinct entities. Therefore, BP's attempts to place the acts of Apache on ALM are without merit.

BP has previously accepted ALM as a valid claimant under the Settlement Agreement though BP's acceptance of ALM numbers 174553 and 174555. BP is prevented by legal principles of res judicata, estoppel and waiver from now claiming that ALM is excluded from the class under the Settlement Agreement. BP should not be allowed to now claim that ALM is an excluded member of the class under the Settlement Agreement when ALM as a coastal landowner is the exact type of company that the Settlement Agreement was designed to protect. Accordingly, BP's appeal should be denied, and ALM's final proposal accepted.

Respectfully submitted:

DUVAL, FUNDERBURK, SUNDBERY,
LOVELL & WATKINS

BY: _____
C. BERWICK DUVAL, II (5109)
STANWOOD R. DUVAL (27732)
101 Wilson Avenue
Post Office Box 3017
Houma, Louisiana 70361
Phone: (985) 876-6410
Fax: (985) 851-1490
Email: berwick@duvallawfirm.com
Attorneys for Apache Louisiana Minerals LLC