MAKE CHECKS PAYABLE TO
THEOS DUHON - CAMERON PARISH SHERIFF &
EX-OFFICIO TAX COLLECTOR
P.O. BOX 1250
CAMERON, LA 70631

**TAX NOTICE**
**TAX NOTICE# 501002450**
**WARD 05**

ADDRESS
SERVICE
REQUESTED

PRESORTED
FIRST CLASS MAIL
U.S. POSTAGE PAID
CAMERON, LA
PERMIT NO. 12

YOUR PARISH TAXES AS ITEMIZED ARE NOW DUE. TAXES BECOME DELINQUENT ON JANUARY 1ST. 1% INTEREST PER MONTH WILL BE ADDED FROM THAT DATE FORWARD. FOR ADDRESS CORRECTION OR TO QUESTION ASSESSED VALUE OR HOMESTEAD EXEMPTION CALL ASSESSOR'S OFFICE AT 337-775-5416.

ASSESSED VALUE: 133,009    LESS HOMESTEAD: 0    TAXABLE: 133,009

**TAX YEAR 2010**

| DESCRIPTION OF PROPERTY | TAX DISTRICT | AMOUNT |
|---|---|---|
| PARCEL NUMBER: 0501002450 | 14.00M AMBULANCE DIST | $ 1,862.12 |
| AG. LAND CLASS III- Use Value-3,100-155 | 06.00M CAMERON HOSPITAL | $ 798.06 |
| MARSH WTR. MARSH - Use Value-112,416-18,736 | 07.30M FIRE DIST #10 - JB | $ 982.93 |
| AG. LAND CLASS IV - Use Value-17,360-1,086 | 04.00M GRAVITY DRAIN #7 - | $ 532.03 |
| AG. LAND CLASS IIIW - Use Val.-133-7 | 07.05M J BAYOU RECREATIO | $ 937.72 |
| ****PROPERTY DESCRIPTION**** | 62.55M PARISHWIDE | $ 8,333.02 |
| 1. TOTAL ACRES: 10,882.6048 ACS.7/9 INT IN ALL THE | 45.85M PARISHWIDE SCHO | $ 6,236.79 |
| FOLLOWING PROPERTY:"ALL THE FOLL KNOWN AS | 04.54M SCHOOL DIST #5 - JB | $ 603.89 |
| THE JOYCE TRACT" T14S R11W. SECT. 19, ENTIRE, | 04.00M WATER DIST #10 - JB | $ 532.03 |
| SEC 20, ENTIRE, SEC 21 ENTIRE, SEC 22 ENTIRE, S | 02.00M WEST CAM PORT CO | $ 266.02 |
| EC 23 ENTIRE, SEC 24 ENTIRE, SEC 26 ENTIRE, SEC | | |
| 26 ENTIRE, SEC 27 ENTIRE, SEC 29 ENTIRE, SEC 29 | | |
| ENTIRE, SEC 30 ENTIRE, SEC 31 ENTIRE, SEC 32 EN | | |
| TIRE, SEC 33 ENTIRE, SEC 34 ENTIRE, SEC 35 W/2, S | | |
| COMPLETE DESCRIPTION AT COURTHOUSE" | | |

**TAX NOTICE# 501002450**
**WARD 05**

| | |
|---|---|
| 14.00M AMBULANCE DIST 02 | $ 1,862.12 |
| 06.00M CAMERON HOSPITAL 2 | $ 798.06 |
| 07.30M FIRE DIST #10 - JB | $ 982.93 |
| 04.00M GRAVITY DRAIN #7 - JB | $ 532.03 |
| 07.05M J BAYOU RECREATION | $ 937.72 |
| 62.55M PARISHWIDE | $ 8,333.02 |
| 45.85M PARISHWIDE SCHOOL | $ 6,236.79 |
| 04.54M SCHOOL DIST #5 - JB | $ 603.89 |
| 04.00M WATER DIST #10 - JB | $ 532.03 |
| 02.00M WEST CAM PORT COMM | $ 266.02 |

**TOTAL DUE ▶   $ 21,084.57**

**TAX YEAR 2010**

KEEP THIS PORTION FOR YOUR RECORDS
THIS IS YOUR ONLY RECEIPT

It is your responsibility to forward this notice or
a copy of this notice to your Mortgage Company.

ADDRESS CHANGE ON BACK

77405#0004   B002

**TOTAL DUE ▶   $ 21,084.57**

APACHE CORPORATION
ATTN AMY ALLEN
STANCIL & CO
P O BOX 149
RICHMOND TX 77406

**Conveyance**

RECEIVED FILED

### ASSIGNMENT, CONVEYANCE
### AND BILL OF SALE

FOR GOOD AND VALUABLE CONSIDERATION, the receipt
and adequacy of which is hereby acknowledged, **XCL**
EXPLORATION COMPANY OF LOUISIANA, INC., a Louisiana
corporation (hereinafter called "XCL"), and its wholly
owned subsidiary, L. TEXAS PETROLEUM, INC., a Texas
corporation (hereinafter called "LTP") (XCL and LTP are
hereinafter collectively called "Assignor"), both having a
mailing address of Post Office Box 53775, Lafayette,
Louisiana 70505, do hereby GRANT, CONVEY, BARGAIN, SELL,
TRANSFER and ASSIGN unto FINA OIL AND CHEMICAL COMPANY, a
Delaware Corporation (hereinafter called "Assignee"),
having a mailing address of Post Office Box 2159, Dallas,
Texas 75221-2159, and its successors and assigns, the
following rights, interests and properties:

> (a)  The oil, gas and/or other mineral
> properties and other real properties which are
> described in Exhibit "A" attached hereto and made
> a part hereof including all oil, gas and/or
> mineral leases, royalty interests, overriding
> royalties, mineral fee interests, surface leases,
> fee interests, and production payments described
> on Exhibit "A";

> (b)  Without limitation of the foregoing,
> except for those interests described in Exhibit
> "B" attached hereto and made a part hereof (the
> "Excluded Interests"), all other right, title and
> interest of Assignor (or Assignor's immediate
> predecessors in title, if such predecessors in
> title are or were subsidiaries of XCL or LTP,
> limited partnerships in which XCL or LTP is
> general partner, or officers or directors of
> either XCL or LTP) of whatever kind or character,
> now owned or hereafter acquired (including,
> without limitation, reversionary interests and
> similar interests) in and to the lands described
> in Exhibit "A" or otherwise described in any of
> the leases or other instruments described in
> Exhibit "A" hereto, even though such interest of
> Assignor may be incorrectly described in, or
> omitted from, Exhibit "A" hereto;

> (c)  All of Assignor's interest in and to
> all presently existing and hereafter created oil,
> gas and/or mineral unitization, pooling and/or
> communitization agreements, declarations and/or
> orders, and in and to the properties covered and
> the units formed under orders, rules, regulations
> or other official acts of any federal, state or
> other authority having jurisdiction and so/called
> "working interest units" created under operating
> agreements or otherwise;  to the extent and only
> to the extent they cover, affect or otherwise
> relate to the properties described in paragraphs
> (a) and (b) above;

(d)  All of Assignor's interest in and rights under all presently existing and hereafter created operating agreements, equipment leases, production sales, purchase, exchange and/or processing agreements, transportation agreements, farmout and/or farm-in agreements, area of mutual interest agreements, and other contracts and/or agreements;  to the extent and only to the extent they cover, affect, or otherwise relate to the properties described in paragraphs (a), (b) and (c) above or to the operation of such properties or to the treating, handling, storing, transporting or marketing of oil, gas or other minerals produced from (or allocated to) such properties;

(e)  All of Assignor's interest (whether now owned or hereafter acquired by operation of law or otherwise) in and to all equipment, improvements, inventory, materials, supplies, fixtures and other property (including, without limitation, all wells, pumping units, wellhead equipment, tanks, pipelines, flow lines, gathering lines, compressors, dehydration units, separators, meters, buildings, injection facilities, salt water disposal facilities, and power, telephone and telegraph lines) and all easements, servitudes, rights-of-way, surface leases and other surface rights;  to the extent and only to the extent they are now or hereafter used, or held for use, in connection with the properties described in clauses (a), (b) and (c) above, or in connection with the operation of such properties, or transporting or marketing of oil, gas or other minerals produced from (or allocated to) such properties;

(f)  To the extent they are held for or relate to the properties described in paragraphs (a), (b) and (c) above, and except that which Assignor is restrained from transferring by reason of restrictions contained in agreements with third parties, and except for the Excluded Interests, all seismic, geological and geophysical data and information owned, in whole or in part, by Assignor, including, but not limited to field tapes, logs, notes and maps;

(g)  All of Assignor's right, title and interest in motor vehicles and boats, held for use in connection with or relating to the properties described in paragraphs (a) (b) and (c) above;  and

(h)  All of Assignor's lease files, land files, well files, gas and oil sales contract files, gas processing files, division order files, abstracts, title opinions and other files relating to the properties described in paragraphs (a) (b) and (c) above.

This conveyance is subject to (i) the terms, conditions, restrictions, exceptions, reservations, limitations and other matters contained in the agreements,

-2-

instruments and documents listed on Exhibits "A" and "C"
attached hereto or (ii) any duck leases expiring before
September 2, 1988.  This conveyance shall not include or
be deemed to include, the Excluded Interests.  The
above-described undivided interests in the rights, titles
and interests described in the foregoing paragraphs (a),
(b), (c), (d), (e), (f), (g) and (h) are herein called the
Subject Interests.

     TO HAVE AND TO HOLD unto Assignee, its successors
and assigns, forever.

     The term "Working Interest" or "WI", (or words of
similar import) when used in this Assignment or the
exhibits hereto shall mean the ownership of an interest,
expressed as a percentage or a decimal, in a Subject
Interest and correspondingly expresses a share of the
costs of operations, development or production to be borne
by the owner of such interest.  The term "Net Revenue
Interest" or "NRI", (or words of similar import) when used
in this Assignment or in the exhibits hereto, shall mean a
share of the proceeds of production, expressed as a
percentage  or a decimal, from or attributable to a
Subject Interest, net of all royalties, overriding
royalties, production payments, or other burdens on
production, or other nonoperating interests attributable
thereto.

     This Assignment is intended to convey all of
Assignor's interest in the Subject Interests, and to the
extent Assignor does not have present legal title to any
Subject Interest described on Exhibit "A", and if allowed
by applicable law, this Assignment shall operate to
transfer to Assignee any interest acquired by Assignor in
such Subject Interest after the date this Assignment is
executed.

     Assignor warrants and agrees, as specified below,
to defend title to the Subject Interests conveyed hereby
against all those lawfully claiming, or to claim the same,
or any part thereof by, through and under Assignor, or
their immediate predecessors in title if, and only if,
such predecessors in title are, or were (i) subsidiaries
of XCL or LTP, (ii) limited partnerships in which XCL or
LTP is a general partner, or (iii) officers or directors
of XCL or LTP.  For purpose of this special warranty of
title, with respect to each interest and/or well listed on
Exhibit "A", Assignor covenants and warrants that (i)
Assignor is entitled to receive a portion of the oil and
gas produced from or attributable to such interests and/or
well (or unit) equal to not less than the NRI set forth on
Exhibit "A" for such interests and/or well (or unit), and
(ii) Assignor is not obligated to bear a share of the
costs and expenses relating to the operations for such
interest and/or well (or unit) greater than the WI set
forth on Exhibit "A" for such interests and/or well (or
unit).  Except as specifically set forth herein, Assignor
makes no warranty whatsoever, even for the return of the
purchase price, but with full substitution and subrogation
in and to all rights and actions of warranty which
Assignor may have against all previous owners or vendors.

-3-

This special warranty of title shall terminate two years after the execution date of this Assignment, except with respect to claims of which Assignor has been provided or otherwise received notice, prior to the expiration of said two-year period. Notwithstanding anything to the contrary contained herein, Assignor's warranty of title with respect to personal property, equipment, fixtures or appurtenances which form a part of the Subject Interests expires ninety days after the execution date of this Agreement. In calculating the damage to Assignee under the special warranty of title set forth herein, (a) the Assignor shall receive credit for (i) any insurance recoveries by the Assignee (on policies of insurance carried by the Assignor or assigned by Assignor to the Assignee) and (ii) tax benefits (as certified by the chief financial officer of the Assignee) to the Assignee and (b) no amount shall be included for the Assignee's consequential damages. Assignor shall not be liable to Assignee for any breach of the special warranty set forth herein except to the extent that the aggregate amount of all claims of the Assignee exceed, either individually or in the aggregate, One Million Dollars ($1,000,000.00). The total liability of Assignor in respect of this special warranty of title (as well as amounts reasonably paid to third parties in connection with satisfying any claims under Assignor's special warranty of title) shall not exceed Thirty-Two Million Dollars ($32,000,000.00) either individually or in the aggregate, provided however, and notwithstanding the effective date recited herein, such limitation shall not apply to claims under such special warranty of title to the extent the genesis of such special warranty claims occurred after September 1, 1987.

Assignor agrees to execute, acknowledge where necessary, and deliver unto Assignee all such other and additional instruments, notices, division orders, transfer orders and other documents and to do all such other and further acts and things as may be necessary more fully to grant, convey and assign unto Assignee the rights, interests and properties conveyed hereby or intended so to be.

The provision hereof shall inure to the benefit and be binding upon the parties hereto and their respective successors and assigns.

This Assignment may be executed in counterparts, all of which are identical, except that to facilitate recordation, in certain counterparts hereof, only that portion of Exhibit "A" which contains specific descriptions of the Subject Interests located in the recording jurisdiction in which the particular counterpart is to be recorded are included. All such counterparts together shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Assignment is executed this 4th day of December, 1987, effective for all purposes as of September 1, 1987, 7:00 A. M. local time in the place where the Subject Interests are located.

WITNESSES:

_Lisa D. Chapman_

~~LISA D. CHAPMAN~~

_James E. Slatten III_

James E. Slatten III

THE EXPLORATION COMPANY OF
LOUISIANA, INC.

By: _William H. Bishop_
Name:   William H. Bishop
Title:   Vice-President

-4-

WITNESSES:

L. TEXAS PETROLEUM, INC.

By: _Marsden W Miller_
Name: _Marsden W. Miller, Jr._
Title: _President_

WITNESSES:

FINA OIL AND CHEMICAL COMPANY

By: _____
Name: _Neil A. Smoak_
Title: _Vice President_

1186J

STATE OF LOUISIANA

PARISH OF LAFAYETTE

BEFORE ME, the undersigned authority, duly commissioned and qualified within and for the State and Parish aforesaid, personally came and appeared:

WILLIAM H. BISHOP, to me personally known to be the person whose name is subscribed to the foregoing instrument, who declared and acknowledged to me, notary, in the presence of the undersigned competent witnesses, that he executed the above and foregoing instrument in his capacity as Vice-President of THE EXPLORATION COMPANY OF LOUISIANA, INC., on behalf of the said corporation with full authority of its Board of Directors, and that the said instrument is the free act and deed of the said corporation, and was executed for the uses, purposes and benefits therein expressed.

THUS DONE, READ AND SIGNED in my office, in the State and Parish aforesaid, in the presence of the undersigned competent witnesses, on the 4th day of December, 1987.

WITNESSES:

_LISHA D. CHAPMAN_

Name: _William H. Bishop_

_James E. Slatten III_

NOTARY PUBLIC
My commission is issued for life.

0325G

BENJAMIN B. BLAN...
NOTARY PUBL...
Parish of Vermilion, State of Loui...
My commission is issued for life.

STATE OF LOUISIANA

PARISH OF LAFAYETTE

BEFORE ME, the undersigned authority, duly commissioned and qualified within and for the State and Parish aforesaid, personally came and appeared:

Marsden W. Miller, Jr., to me personally known to be the person whose name is subscribed to the foregoing instrument, who declared and acknowledged to me, notary, in the presence of the undersigned competent witnesses, that he executed the above and foregoing instrument in his capacity as _____President_____ of L. TEXAS PETROLEUM, INC., on behalf of the said corporation with full authority of its Board of Directors, and that the said instrument is the free act and deed of the said corporation, and was executed for the uses, purposes and benefits therein expressed.

THUS DONE, READ AND SIGNED in my office, in the State and Parish aforesaid, in the presence of the undersigned competent witnesses, on the __4th__ day of _____, 1987.

WITNESSES:

_Abel A. Caillouet Jr._

_James E. Slatten III_

_Marsden W. Miller_

Name: Marsden W. Miller, Jr.

_Susan M. Andrews_
NOTARY PUBLIC
My commission is issued for life.

0326G

TEXAS
STATE OF ~~LOUISIANA~~
COUNTY  DALLAS
~~PARISH~~ OF ~~LAFAYETTE~~

BEFORE ME, the undersigned authority, duly commissioned and qualified within and for the State and ~~Parish~~ aforesaid, personally came and appeared:
County

_Neil A. Smoak_, to me personally known to be the person whose name is subscribed to the foregoing instrument, who declared and acknowledged to me, notary, in the presence of the undersigned competent witnesses, that he executed the above and foregoing instrument in his capacity as _Vice President_ of FINA OIL AND CHEMICAL COMPANY, on behalf of the said corporation with full authority of its Board of Directors, and that the said instrument is the free act and deed of the said corporation, and was executed for the uses, purposes and benefits therein expressed.

THUS DONE, READ AND SIGNED in my office, in the State and ~~Parish~~ aforesaid, in the presence of the undersigned competent witnesses, on the _4th_ day of _December_, 1987.

WITNESSES:

Name: _Neil A. Smoak_

NOTARY PUBLIC
My commission ~~is issued for life.~~
Expires 12-27-88.

0327G

V.                          Exhibit A

(1)                     FEE LANDS

An undivided 7/9ths interest in and to the Mineral and
Surface Estates in the following described lands located in
Cameron Parish, Louisiana:

### JOYCE TRACT

Cameron Parish

### Township 14 South, Range 10 West:

Section 17:  Entire Fractional Section 17;
Section 18:  SE/4;
Section 19:  All;
Section 20:  All;
Section 29:  W/2; NE/4; N/2 of SE/4; SW/4 of SE/4;
Section 30:  All
Section 31:  NE/4; E/2 of NW/4; NW/4 of NW/4; NW/4 of SE/4;
             E/2 of SW/4;
Section 32:  NW/4 of NW/4.

### Township 14 South, Range 11 West:

BLOCK ONE:

Section 19:  All;
Section 20:  All;
Section 21:  All;
Section 22:  All;
Section 23:  All;
Section 24:  All;
Section 25:  All;
Section 26:  All;
Section 29:  All;
Section 30:  All;
Section 31:  All;
Section 32:  All;
Section 35:  W/2; SE/4; W/2 of NE/4; NE/4 of NE/4;
Section 36:  NW/4 of NW/4; NE/4 of NE/4;

BLOCK TWO:

All of Sections 27, 28, 33 and 34, save and except
approximately 480 acres, owned by Matilda Geddings Gray as
described by metes and bounds in that certain Agreement between
The Lutcher and Moore Lumber Company and Matilda Geddings Gray,
dated July 19, 1935, recorded in Conveyance Record Book 27,
Page 206, Entry No. 31872, with plat attached thereto.

## Exhibit A

### Township 14 South, Range 12 West:

All of Sections 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30,
31, 32, 33, 34, 35, 36, (less and except the rights conveyed by
U. S. Oil of Louisiana, Ltd., et al to the State of Louisiana
in that certain 1.955 acre tract by instrument dated January
27, 1970, recorded in Conveyance Book 267, Page 435, Entry No.
122662, Records of Cameron Parish, Louisiana).

### Township 15 South, Range 11 West:

| | |
|---|---|
| Section 2: | N/2; |
| Section 3: | W/2; W/2 of SE/4; W/2 of NE/4; NE/4 of NE/4, LESS AND EXCEPT those certain Surface Rights conveyed in Bill of Sale between U. S. Oil of Louisiana, Ltd. et al and the State of Louisiana filed in Conveyance Book 267, Folio 435, #122662, Cameron Parish, Louisiana; |
| Section 4: | All; |
| Section 5: | All; |
| Section 6: | All; |
| Section 7: | All; |
| Section 8: | Entire Fractional Section 8; |
| Section 9: | Entire Fractional Section 9; |
| Section 10: | NW/4; W/2 of NE/4; SW/4; W/2 of SE/4. |

### Township 15 South, Range 12 West:

| | |
|---|---|
| Section 1: | All; |
| Section 2: | All; |
| Section 3: | All; |
| Section 4: | All; |
| Section 5: | All; |
| Section 6: | All; |
| Section 7: | All; |
| Section 10: | Entire Fractional Section 10; |
| Section 25: | All (Lot #40); |
| Section 26: | All (Lot #39); |
| Section 27: | All (Lot #38); |
| Section 28: | All (Lot #37); |
| Section 29: | All (Lot #36); |
| Section 30: | All (Lot #35); |
| Section 31: | All (Lot #34); |
| Section 32: | All (Lot #33); |
| Section 33: | All (Lot #32); |
| Section 34: | All (Lot #31); |
| Section 35: | All (Lot #30); |
| Section 36: | All (Lot #29); |
| Section 37: | All (Lot #28); |
| Section 38: | All (Lot #27); |

Exhibit A

Section 39:  All (Lot #26);
Section 40:  All (Lot #25);
Section 41:  All (Lot #24);
Section 42:  All (Lot #23).

(2).          OIL, GAS AND MINERAL LEASES AND SURFACE LEASES
              AFFECTING THE JOYCE TRACT AS ABOVE DESCRIBED

Cameron Parish

1.  Mineral Lease, Sublease and Operating Agreement between
John W. Mecom, Sr. and Mary Elizabeth Mecom, as Lessor, and
Edward Mike Davis, as Lessee, dated August 14, 1975, recorded
in COB 339 under Entry Number 142490, as amended.

2.  Oil and Gas Lease between Four M Properties, Ltd., as
Lessor, and John W. Mecom, as Lessee, dated September 8, 1975,
effective October 15, 1975, recorded in COB 339 under Entry
Number 143492, as amended.

3.  Surface Sublease between Mecom Production Company, as
Lessor, and Williams Exploration Company, as Lessee, dated
March 1, 1983 (Not Recorded).

4.  Oil, Gas and Hydrocarbon Lease between Mecom Production
Company, as Lessor, and Exploration Company LTD Partnership, as
Lessee, dated December 9, 1983, recorded in COB 546 under Entry
Number 185663.

5.  Oil, Gas and Hydrocarbon Lease between The John W.
Mecom Company, as Lessor, and Mecom Production Company, as
Lessee, dated March 1, 1983, recorded in COB 521, Folio 186
under Entry Number 180850.

6.  Oil, Gas and Hydrocarbon Lease between Texas Ranger,
Inc., as Lessor, and Mecom Production Company, as Lessee, dated
March 1, 1983, recorded in COB 521, Folio 271 under Entry
Number 180852.

7.  Oil, Gas and Hydrocarbon Lease between Four M
Properties Limited Partnership, as Lessor, and Mecom Production
Company, as Lessee, dated March 1, 1983, recorded in COB 521,
Folio 229 under Entry Number 180851.

8.  Surface Lease between Four M Properties Limited
Partnership, Lessor, and Mecom Production Company, Lessee,
dated February 28, 1983, recorded in COB 520 under Entry Number
180853.

9.  Waterfowl Hunting Lease Agreement by LTP to Outdoor
Sports of Louisiana, Inc. dated June 24, 1987, covering the
period from July 1, 1987 to June 30, 1991.

10.  Alligator Trapping Lease Agreement from LTP to Philip
E. Breaux covering the period from July 1, 1987 to June 30, 1991.

Page 14

## Exhibit A

THE FOLLOWING IS A LISTING OF THE SURFACE, MINERAL AND ROYALTY INTERESTS WHICH
ASSIGNOR REPRESENTS AND WARRANTS, PURSUANT TO THE LIMITED WARRANTY MADE IN THE
ASSIGNMENT TO WHICH THIS EXHIBIT A IS ATTACHED, TO CONVEY TO ASSIGNEE IN THE
LANDS DESCRIBED IN THIS PART V OF EXHIBIT A:

SURFACE AND MINERAL INTEREST:                                        .777778

ROYALTY INTEREST UNDER THE MARY ELIZABETH MECOM LEASE (LEASE
5 IN PART IV(A)) AND THE FOUR M 1975 LEASE (LEASE 6 IN PART IV(A)):

    THAT PORTION OF THE ABOVE-DESCRIBED LANDS WHICH (i) WERE          .0735772
    NOT SUBLEASED BY THE JOHN W. MECOM COMPANY TO XCLP PURSUANT
    TO THE NOVEMBER 10, 1982 ASSIGNMENT AND (ii) WERE NOT
    INCLUDED ON EXHIBIT D TO THE FOUR M 1975 LEASE

    THAT PORTION OF THE ABOVE-DESCRIBED LANDS WHICH (i) WERE          .0666328
    NOT SUBLEASED BY THE JOHN W. MECOM COMPANY TO XCLP PURSUANT
    TO THE NOVEMBER 10, 1982 ASSIGNMENT AND (ii) WERE INCLUDED
    ON EXHIBIT D TO THE FOUR M 1975 LEASE

    THAT PORTION OF THE ABOVE-DESCRIBED LANDS WHICH (i) WERE          .0780166
    SUBLEASED BY THE JOHN W. MECOM COMPANY TO XCLP PURSUANT TO
    THE NOVEMBER 10, 1982 ASSIGNMENT AND (ii) WERE NOT INCLUDED
    ON EXHIBIT D TO THE FOUR M 1975 LEASE

    THAT PORTION OF THE ABOVE-DESCRIBED LANDS WHICH (i) WERE          .0710722
    SUBLEASED BY THE JOHN W. MECOM COMPANY TO XCLP PURSUANT
    TO THE NOVEMBER 10, 1982 ASSIGNMENT AND (ii) WERE INCLUDED
    ON EXHIBIT D TO THE FOUR M 1975 LEASE

ROYALTY INTEREST AS TO 320 ACRES COVERED BY SUBLEASE FROM
MECOM PRODUCTION COMPANY TO XCLP DATED 12-9-83:                     .1873083

ROYALTY INTEREST AS TO LANDS COVERED BY LEASE DATED FEBRUARY
7, 1944 FROM LUTCHER & MOORE LUMBER COMPANY TO S. P.
BENCKENSTEIN:                                                       .0401375

ROYALTY UNDER LEASES COVERING THE ABOVE-DESCRIBED PROPERTY
FROM FOUR M PROPERTIES, THE JOHN W. MECOM COMPANY, AND TEXAS
RANGER TO MECOM PRODUCTION COMPANY (IF AND WHEN SUCH LEASES
COME INTO EFFECT) LESS AND EXCEPT 320 ACRES COVERED BY SUBLEASE
FROM MECOM PRODUCTION COMPANY TO XCLP DATED 12-9-83:

    AS TO LANDS NOT SUBLEASED TO XCLP PURSUANT TO THE NOVEMBER
    10, 1982 ASSIGNMENT                                           .1846884

    AS TO LANDS SUBLEASED TO XCLP PURSUANT TO THE NOVEMBER 10,
    1982 ASSIGNMENT                                               .1891278

FILE#266479

**Conveyance**

249

## ACT OF SALE

FILED AND RECORDED

BE IT KNOWN, that on the dates set forth below, but effective for all purposes as of the 1st day of June, 2000,

BEFORE ME, the undersigned Notary Public, in and for the County and State set forth below, duly commissioned and qualified, and in the presence of the undersigned competent witnesses,

CARL E. BROUSSARD
CLERK OF COURT
& RECORDER

PERSONALLY CAME AND APPEARED:

ATOFINA Petrochemicals, Inc., formerly known as, Fina Oil and Chemical Company, a Delaware corporation, (hereinafter referred to as "Seller"), and having a mailing address of 14950 Heathrow Forest Parkway, Suite 300, Houston, Texas 77032, and a federal employer identification number of 75-0990403, represented herein by its undersigned Vice President, and

who declared and said as follows:

I.

For the price and consideration, and on the terms and conditions hereinafter expressed, Seller does by this act, grant, bargain, sell, convey, transfer, assign, set over and deliver, without any warranties as to title, unto:

Castex Energy 1995, L.P., a Texas limited partnership, represented herein by its general partner, Castex Energy, Inc., whose mailing address is 333 North Sam Houston Parkway East, Suite 1060, Houston, Texas 77060 and whose federal employer identification number is 76-0488636 (hereinafter referred to as "Buyer"),

accepting and purchasing for itself, its successors and assigns, and acknowledging delivery and possession thereof, the property described on Exhibit "A" and Exhibit "B" hereto, together with all buildings and improvements thereon and all rights, ways, privileges, and appurtenances thereunto belonging or in anywise appertaining (the "Property").

TO HAVE AND TO HOLD, the Property unto the Buyer, its successors and assigns.

II.

THIS SALE IS MADE AND ACCEPTED for and in consideration of the price and sum of $1000 and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged.

1

III.

Seller and Buyer waive the production of Mortgage and Conveyance Certificates and relieve and release the undersigned Notaries Public from all responsibility in connection therewith. Seller warrants that it has paid all ad valorem taxes due on the Property for 1999, if the billing for which has been heretofore received, and all prior years. Buyer shall be responsible for all taxes on the Property for 2000 and thereafter. The parties hereto take cognizance of the fact that no title examination has been requested by the undersigned Notaries Public, and relieve and release them of any and all liability in connection therewith.

IV.

The Property is sold and is made subject to the following:

V.

This sale is made and accepted without any warranty of title whatsoever, even for the return of the purchase price, but the Seller does hereby transfer unto the Buyer all and singular the rights and actions of warranty to which the said Seller is or may be entitled, against any and all former owners and proprietors of the Property, hereby subrogating the Buyer to all the rights and actions, to be by himself enjoyed and exercised in the same manner as they might have been by the said Seller.

VI.

Seller makes no representation or warranty, express or implied, as to the suitability of the Property or as to the physical condition thereof for any purpose whatsoever. EXCEPT AS SET FORTH IN THAT CERTAIN PURCHASE AND SALE AGREEMENT DATED JULY 6, 2000, BY AND BETWEEN FINA OIL AND CHEMICAL COMPANY AND CASTEX ENERGY 1995, L.P. (THE "AGREEMENT"), SELLER CONVEYS TO BUYER, ALL RIGHT, TITLE AND INTEREST OF SELLER IN AND TO THE PROPERTY WITHOUT ANY WARRANTY OR RECOURSE WHATSOEVER, THE SOLE PERIL AND RISK OF EVICTION BEING ASSUMED BY BUYER, BUT WITH FULL SUBSTITUTION AND SUBROGATION IN AND TO ALL THE RIGHTS AND ACTIONS OF WARRANTY WHICH SELLER HAS OR MAY HAVE AGAINST ALL PRECEDING OWNERS OR VENDORS; IT BEING UNDERSTOOD THAT THE BUYER TAKES THE PROPERTY "AS IS" AND "WHERE IS", BUYER HEREBY ACKNOWLEDGING RELIANCE SOLELY ON HIS OWN TITLE EXAMINATION AND INSPECTION OF THE PROPERTY, AND NOT ON ANY WARRANTIES OR REPRESENTATIONS FROM SELLER OR ANY PRIOR OWNERS OF THE PROPERTY.   EXCEPT AS SET FORTH IN THE AGREEMENT, BUYER ACKNOWLEDGES THAT SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE PROPERTY AND THAT BUYER IS NOT RELYING ON THE ACCURACY OF ANY INFORMATION OR DOCUMENTS PREVIOUSLY FURNISHED TO BUYER BY SELLER OR ANY PRIOR OWNERS OF THE PROPERTY. BUYER FURTHER ACKNOWLEDGES THAT ALTHOUGH SELLER MAY KNOW OR HAVE REASON TO KNOW OF THE PARTICULAR USE BUYER INTENDS FOR THE PROPERTY, OR BUYER'S PARTICULAR PURPOSE FOR BUYING THE

2

PROPERTY, BUYER IS NOT RELYING ON SELLER'S SKILL OR JUDGMENT IN SELECTING THE PROPERTY. ACCORDINGLY, SELLER MAKES NO WARRANTY OR REPRESENTATION THAT THE PROPERTY IS FIT FOR BUYER'S INTENDED USE OR HIS PARTICULAR PURPOSE AND BUYER WAIVES ANY SUCH WARRANTY TO WHICH IT MAY BE ENTITLED UNDER LOUISIANA CIVIL CODE ARTICLE 2524, AND BUYER FURTHER WAIVES ANY WARRANTY TO WHICH IT MIGHT BE ENTITLED UNDER SAID ARTICLE 2524 THAT THE PROPERTY BE REASONABLY FIT FOR ITS ORDINARY USE. ALL OTHER IMPLIED WARRANTIES WITH RESPECT TO THE PROPERTY, INCLUDING THOSE RELATED TO BUYER'S PEACEABLE POSSESSION OF THE PROPERTY, THE MERCHANTABILITY THEREOF, HIDDEN DEFECTS THEREIN OR THE FITNESS THEREOF FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED BY SELLER AND EXPRESSLY WAIVED BY BUYER. BUYER SHALL HAVE NO RIGHT OR CAUSE OF ACTION AGAINST SELLER TO ASSERT IN ANY CONTROVERSY, CLAIM, DEMAND OR LITIGATION ARISING FROM OR IN CONNECTION WITH THE PROPERTY. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER DOES NOT WARRANT THAT THE PROPERTY IS FREE FROM HIDDEN, REDHIBITORY OR LATENT DEFECTS OR VICES OR THAT THE PROPERTY IS FIT FOR THE USE INTENDED BY BUYER, AND BUYER HEREBY EXPRESSLY WAIVES (i) ALL RIGHTS IN REDHIBITION PURSUANT TO LOUISIANA CIVIL CODE ARTICLE 2520, ET SEQ., (ii) THE WARRANTIES OF OWNERSHIP AND PEACEABLE POSSESSION OF THE PROPERTY, (iii) THE WARRANTIES AGAINST HIDDEN OR REDHIBITORY DEFECTS IN THE PROPERTY, AND (iv) THE WARRANTY THAT THE PROPERTY IS FIT FOR ITS INTENDED USE, EACH OF WHICH WOULD OTHERWISE BE IMPOSED UPON SELLER BY LOUISIANA CIVIL CODE ARTICLE 2475, BUYER HEREBY RELEASES SELLER FROM ANY LIABILITY FOR HIDDEN, REDHIBITORY OR LATENT DEFECTS OR VICES UNDER LOUISIANA CIVIL CODE ARTICLE 2520 THROUGH 2549. SELLER ALSO HEREBY DISCLAIMS AND BUYER HEREBY WAIVES THE WARRANTY AGAINST EVICTION AND AGAINST NON-DECLARED ENCUMBRANCES UNDER LOUISIANA CIVIL CODE ARTICLE 2500, BUYER AGAIN ACKNOWLEDGING THAT IT IS PURCHASING THE PROPERTY BASED UPON ITS OWN TITLE EXAMINATION AND AT HIS OWN PERIL AND RISK. BUYER WAIVES ANY RIGHT BUYER MAY HAVE TO A RETURN OF THE PURCHASE PRICE FOR REASON UNDER THE LOUISIANA CIVIL CODE. BUYER SHALL HAVE NO RIGHT OR CAUSE OF ACTION AGAINST SELLER TO ASSERT IN ANY CONTROVERSY, CLAIM, DEMAND OR LITIGATION ARISING FROM OR IN CONNECTION WITH THE PROPERTIES OR ANY SUCH WARRANTY OR WARRANTIES. EXCEPT AS SET FORTH IN THE AGREEMENT, BUYER HEREBY RELEASES SELLER FROM ANY CLAIMS, DEMANDS, LIABILITIES, COSTS OR SUITS UNDER OR PURSUANT TO 42 U.S.C. § 9601, ET SEQ., 49 U.S.C. § 5102, ET SEQ., 42 U.S.C. § 6901, ET SEQ., AND L.A.R.S. 30:2001, ET SEQ. L.A.R.S. 30, CHAPTER 1 TOGETHER WITH ANY AND ALL CLAIMS, DEMANDS, SUITS OR LITIGATION UNDER ANY OTHER APPLICABLE LAWS, STATUTES, RULES OR REGULATIONS, AS THE SAME MAY FROM TIME TO TIME BE AMENDED, RELATING TO ANY CONTAMINATION ON, IN OR UNDER THE PROPERTY, AND ALL OTHER ENVIRONMENTAL OR HAZARDOUS SUBSTANCES LIABILITIES OF WHATSOEVER KIND OR NATURE, INCLUDING WITHOUT LIMITATION (a) ALL FORESEEABLE AND

3

UNFORESEEABLE DAMAGES OF ANY KIND OR NATURE AND (b) THE COSTS OF ANY REQUIRED OR NECESSARY INVESTIGATION, STUDY, REPAIR, CLEAN-UP DETOXIFICATION, UNDER ANY OTHER STATUTE, REGULATION, ORDINANCE OR DECREE. BUYER AGREES TO COMPLY WITH ALL SUCH STATUTES, REGULATIONS ORDINANCES, ORDERS AND DECREES IN SUCH A MANNER THAT NO LIABILITY OR CLAIMS WILL BE ASSERTED AGAINST SELLER.

VII.

After the Closing, Seller and Buyer shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such instruments and take such other action as may be necessary or advisable to carry out their obligations under this Agreement and under any document, certificate or other instrument delivered pursuant hereto.

VIII.

This Agreement may be executed in counterparts, and Seller and Buyer may execute different counterparts, but all counterparts together shall constitute a single instrument.

THUS DONE AND PASSED, in my presence on the 30th day of August, 2000, but effective for all purposes as of the date first above written, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said Seller, and me, Notary, after reading of the whole.

WITNESSES:

SELLER:
ATOFINA PETROCHEMICALS, INC.,
FORMERLY KNOWN AS
FINA OIL AND CHEMICAL COMPANY

By: _____
   E. A. Nash
   Vice President

JOY W. PHILLIPS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JULY 31, 2004

NOTARY PUBLIC
STATE OF TEXAS
COUNTY OF HARRIS
MY COMMISSION EXPIRES: 7/31/04

4

THUS DONE AND PASSED, in my presence on the 30th day of August, 2000, but effective for all purposes as of the date first above written, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said Buyer, and me, Notary, after reading of the whole.

WITNESSES:

BUYER:
CASTEX ENERGY 1995, L.P.
BY CASTEX ENERGY, INC.,
GENERAL PARTNER

By: _____
    John R. Stoika
    President

JOY W. PHILLIPS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JULY 31, 2004

NOTARY PUBLIC
STATE OF TEXAS
COUNTY OF HARRIS
MY COMMISSION EXPIRES: 7/31/04

5

# EXHIBIT "A"

**Attached to and made a part of that certain Act of Sale by and between ATOFINA Petrochemicals, Inc., as Seller and Castex Energy 1995, L.P., as Buyer, dated effective June 1, 2000**

FINA LEASE NUMBER:    01RPLA0116-000

GRANTOR:    EXPLORATION COMPANY OF LOUISIANA, ET AL

GRANTEE:    FINA OIL AND CHEMICAL COMPANY

DATE:    DECEMBER 4, 1987

RECORDED:    CONVEYANCE BOOK 657, ENTRY NO. 206992, OF THE RECORDS OF CAMERON PARISH, LOUISIANA.

EXHIBIT "B"

**ATTACHED TO AND MADE A PART OF THAT CERTAIN ACT OF SALE
BY AND BETWEEN ATOFINA PETROCHEMICALS, INC., AS SELLER, AND
CASTEX ENERGY 1995, L.P., AS BUYER, EFFECTIVE JUNE 1, 2000**

<u>FEE LANDS</u>

All of Fina's undivided right, title and interest in and to the following described lands
located in Cameron Parish, Louisiana, to-wit:

<u>Township 14 South, Range 10 West</u>

Section 17:   Entire Fractional Section 17;
Section 18:   Southeast Quarter (SE/4);
Section 19:   All;
Section 20:   All;
Section 29:   West Half (W/2); Northeast Quarter (NE/4); North Half of Southeast
              Quarter (N/2 of SE/4); Southwest Quarter of Southeast Quarter (SW/4 of
              SE/4);
Section 30:   All;
Section 31:   Northeast Quarter (NE/4); East Half of Northwest Quarter (E/2 of NW/4);
              Northwest Quarter of Northwest Quarter (NW/4 of NW/4); Northwest
              Quarter of Southeast Quarter (NW/4 of SE/4); East Half of Southwest
              Quarter (E/2 of SW/4);
Section 32:   Northwest Quarter of Northwest Quarter (NW/4 of NW/4).

<u>Township 14 South, Range 11 West</u>

BLOCK ONE:

Section 19:   All;
Section 20:   All;
Section 21:   All;
Section 22:   All;
Section 23:   All;
Section 24:   All;
Section 25:   All;
Section 26:   All;
Section 29:   All;
Section 30:   All;
Section 31:   All;
Section 32:   All;

Section 35: West Half (W/2); Southeast Quarter (SE/4); West Half of Northeast Quarter (W/2 of NE/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4);

Section 36: Northwest Quarter of Northwest Quarter (NW/4 of NW/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4);

BLOCK TWO:

All of Sections 27, 28, 33 and 34, LESS AND EXCEPT approximately 480 acres owned by Matilda Geddings Gray, or her successors or assigns, as described in that certain Agreement between The Lutcher and Moore Lumber Company and Matilda Geddings Gray dated July 15, 1935, recorded in Conveyance Book 27, Page 206, Entry No. 31872, records of the Clerk of Court of Cameron Parish, Louisiana.

### Township 14 South, Range 12 West

All of Sections 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, and 36, LESS AND EXCEPT the rights in that certain 1.955 acre tract conveyed by U.S. Oil of Louisiana, Ltd., et al, to the State of Louisiana by instrument dated January 27, 1970, recorded in Conveyance Book 267, Page 435, Entry No. 122662, records of the Clerk of Court of Cameron Parish, Louisiana.

### Township 15 South, Range 11 West

Section 2: North Half (N/2);

Section 3: West Half (W/2); West Half of Southeast Quarter (W/2 of SE/4); West Half of Northeast Quarter (W/2 of NE/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4), LESS AND EXCEPT those certain surface rights conveyed by Bill of Sale from U.S. Oil of Louisiana, Ltd., et al, to the State of Louisiana by instrument dated January 27, 1970, recorded in Conveyance Book 267, Page 435, Entry No. 122662, records of the Clerk of Court of Cameron Parish, Louisiana;

Section 4: All;

Section 5: All;

Section 6: All;

Section 7: All;

Section 8: Entire Fractional Section 8;

Section 9: Entire Fractional Section 9;

Section 10: Northwest Quarter (NW/4); West Half of Northeast Quarter (W/2 of NE/4); Southwest Quarter (SW/4); West Half of Southeast Quarter (W/2 of SE/4).

Township 15 South, Range 12 West

| | |
|---|---|
| Section 1: | All; |
| Section 2: | All; |
| Section 3: | All; |
| Section 4: | All; |
| Section 5: | All; |
| Section 6: | All; |
| Section 7: | All; |
| Section 10: | Entire Fractional Section 10; |
| Section 25: | All (Lot #40); |
| Section 26: | All (Lot #39); |
| Section 27: | All (Lot #38); |
| Section 28: | All (Lot #37); |
| Section 29: | All (Lot #36); |
| Section 30: | All (Lot #35); |
| Section 31: | All (Lot #34); |
| Section 32: | All (Lot #33); |
| Section 33: | All (Lot #32); |
| Section 34: | All (Lot #31); |
| Section 35: | All (Lot #30); |
| Section 36: | All (Lot #29); |
| Section 37: | All (Lot #28); |
| Section 38: | All (Lot #27); |
| Section 39: | All (Lot #26); |
| Section 40: | All (Lot #25); |
| Section 41: | All (Lot #24); |
| Section 42: | All (Lot #23). |

Certain discrepancies may exist with reference to the governmental surveys for Township 14 South, Range 11 West, Township 14 South, Range 12 West, Township 15 South, Range 11 West and Township 15 South, Range 12 West and the location of their respective sections, or portions thereof, and therefore, as to the location of the lands to be conveyed pursuant to this Agreement. Accordingly, the lands to be conveyed pursuant to this Agreement shall include all of Fina's right, title and interest in and to all land owned by it situated within the above listed sections, whether or not said lands are properly described.

FILE#268908

## CONVEYANCE AND BILL OF SALE

FILED AND RECORDED
CAMERON PARISH, LA.

STATE OF LOUISIANA

PARISH OF CAMERON

'01 FEB 23  AM 11 11

CARL BROUSSARD
CLERK OF COURT
& RECORDER



KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, CASTEX ENERGY 1995, L.P., a Texas limited partnership, whose address is 333 North Sam Houston Parkway East, Suite 1060, Houston, Texas 77060, hereinafter referred to as "CASTEX", is the owner of the property described on Exhibit "A" and Exhibit "B", attached hereto and made a part hereof, together with all buildings and improvements thereon and all rights, ways, privileges, and appurtenances thereunto belonging or in anywise appertaining (the "Property").

WHEREAS, LATERRE CO., LTD., a Texas limited partnership, whose address is 333 North Sam Houston Parkway East, Suite 1060, Houston, Texas 77060, hereinafter referred to as "LATERRE", desires to purchase all of CASTEX's right, title and interest in and to the Property.

NOW, THEREFORE, for and in consideration of ONE THOUSAND DOLLARS AND 00/100 ($1000.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CASTEX does hereby act, grant, sell, convey, assign, set over and deliver unto LATERRE all of CASTEX's right, title and interest in and to the Property, subject to the exceptions and reservations set forth below.

This Conveyance and Bill of Sale is expressly made without warranty, express or implied, but CASTEX does herby transfer unto LATERRE all and singular the rights and actions of warranty to which CASTEX is or may be entitled, against any and all former owners and proprietors of the Property, hereby subrogating LATERRE to all the rights and actions, to be enjoyed and exercised in the same manner as they might have been by CASTEX. Further, CASTEX agrees to protect and hold LATERRE harmless from any and all claims and liabilities connected with CASTEX's ownership of the Property.

It is the intent of the parties hereto to convey all of the property acquired by CASTEX by Act of Sale dated effective June 1, 2000 being recorded in Conveyance Book 915 under File No. 266479 of the records of Cameron Parish, Louisiana, and formerly owned by Atofina Petrochemicals, Inc., whether specifically described herein or not including any lands which may have been acquired by way of compromise boundary agreement, settlement in possession or any other means.

Castex hereby specifically excepts and reserves unto Castex all leasehold and/or working interests in mineral leases covering the Property in existence on June 1, 2000.

This Conveyance and Bill of Sale is subject to that certain Mortgage, Deed of Trust, Assignment, Security Agreement, Financing Statement and Fixture Filing dated August 30, 2000, by and between Castex Energy 1995, L.P. and Deutsche Bank AG, as Administration Agent, being recorded in Conveyance Book 915 under File No. 266484 and Mortgage Book 254 under File No. 266484 of the records of Cameron Parish, Louisiana and LATERRE hereby assumes all of the obligations of CASTEX as to the Property under said mortgage.

THUS DONE AND PASSED, in my presence on the 16th day of February 2001 but effective for all purposes as of June 1, 2000, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said Grantor, and me, Notary, after reading of the whole.

WITNESSES:                              GRANTOR:

                                        CASTEX ENERGY 1995, L.P., by
                                          Castex Energy, Inc. Managing Partner

                                        By: _____
                                          John R. Stoika, President

                                        _____
                                        Notary Public in and for the State of Texas

                                        TIFFANY R PEREZ
                                        NOTARY PUBLIC
                                        State of Texas
                                        Comm. Exp. 01-20-2003

THUS DONE AND PASSED, in my presence on the 11th day of February 2001 but effective for all purposes as of June 1, 2000, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said Grantee, and me, Notary, after reading of the whole.

WITNESSES:

GRANTEE:

LATERRE CO., LTD.,
By: Castex Energy, Inc, General Partner

By: _____
John R. Stoika, President

_____
Notary Public in and for the State of Texas

TIFFANY R PEREZ
NOTARY PUBLIC
State of Texas
Comm. Exp. 01-20-2003

# EXHIBIT "A"

**Attached to and made a part of that certain Conveyance and Bill of Sale by
and between Castex Energy 1995, L.P., as Seller, and Laterre Co., Ltd.,
as Buyer, effective June 1, 2000**

FINA LEASE NUMBER:   01RPLA0116-000

GRANTOR:   EXPLORATION COMPANY OF LOUISIANA, ET AL

GRANTEE:   FINA OIL AND CHEMICAL COMPANY

DATE:   DECEMBER 4, 1987

RECORDED:   CONVEYANCE BOOK 657, ENTRY NO. 206992, OF THE RECORDS OF CAMERON PARISH, LOUISIANA.

## EXHIBIT "B"

### ATTACHED TO AND MADE A PART OF THAT CERTAIN CONVEYANCE AND BILL OF SALE BY AND BETWEEN CASTEX ENERGY 1995, L.P., AS SELLER, AND LATERRE CO., LTD., AS BUYER, EFFECTIVE JUNE 1, 2000

### FEE LANDS

All of Fina's undivided right, title and interest in and to the following described lands located in Cameron Parish, Louisiana, to-wit:

#### Township 14 South, Range 10 West

| | |
|---|---|
| Section 17: | Entire Fractional Section 17; |
| Section 18: | Southeast Quarter (SE/4); |
| Section 19: | All; |
| Section 20: | All; |
| Section 29: | West Half (W/2); Northeast Quarter (NE/4); North Half of Southeast Quarter (N/2 of SE/4); Southwest Quarter of Southeast Quarter (SW/4 of SE/4); |
| Section 30: | All; |
| Section 31: | Northeast Quarter (NE/4); East Half of Northwest Quarter (E/2 of NW/4); Northwest Quarter of Northwest Quarter (NW/4 of NW/4); Northwest Quarter of Southeast Quarter (NW/4 of SE/4); East Half of Southwest Quarter (E/2 of SW/4); |
| Section 32: | Northwest Quarter of Northwest Quarter (NW/4 of NW/4). |

#### Township 14 South, Range 11 West

BLOCK ONE:

| | |
|---|---|
| Section 19: | All; |
| Section 20: | All; |
| Section 21: | All; |
| Section 22: | All; |
| Section 23: | All; |
| Section 24: | All; |
| Section 25: | All; |
| Section 26: | All; |
| Section 29: | All; |
| Section 30: | All; |
| Section 31: | All; |
| Section 32: | All; |

**Cameron Parish,**
**Louisiana**

F I L E # 2 7 2 0 6 4

ACT OF SALE
~~FILED AND~~ RECORDED
CAMERON PARISH, LA.

BE IT KNOWN, that on the date set forth below, but effective for all purposes as of the 1st day of April, 2001, at 7:00 a.m., Central Daylight Saving Time ("Effective Time"),

BEFORE, the undersigned Notary Public, in and for the County and State set forth below, duly commissioned and qualified, and in the presence of the undersigned competent witnesses,

CLERK OF COURT
& RECORDER

PERSONALLY CAME AND APPEARED:

LaTerre Co. Ltd., a Texas Limited Partnership (hereinafter referred to as "Seller"), whose a mailing address is 333 North Sam Houston Parkway East, Suite 1060, Houston, Texas 77060, and a federal employer identification number of 76-0656107, represented herein by its undersigned John R. Stoika, and

Mirant South Louisiana Fee, LLC, (hereinafter referred to as "Buyer"), whose mailing address is 1200 Smith Street, Two Allen Center, Houston, Texas 77002, and a federal employer identification number of 58-2646183, represented herein by its undersigned David W. Stewart,

who declared and said as follows:

## I.

For the price and consideration, and on the terms and conditions hereinafter expressed, Seller does by this act, grant, bargain, sell, convey, transfer, assign, set over and deliver, without any warranties as to title, unto Buyer here accepting and purchasing for itself, its successors and assigns, and acknowledging delivery and possession thereof, an undivided seventy-five percent (75%) of Seller's right, title and interest in and to the property described on Exhibit "A" hereto ("Land"), together with all buildings and improvements thereon and all rights, ways, privileges, and appurtenances thereunto belonging or in anywise appertaining (said undivided seventy-five percent (75%) interest shall be referred to as the "Property").

TO HAVE AND TO HOLD, the Property unto the Buyer, its successors and assigns, forever.

24446264

II.

THIS SALE IS MADE AND ACCEPTED for and in consideration of the price and sum of $1,000.00 and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged.

III.

Seller and Buyer waive the production of Mortgage and Conveyance Certificates and relieve and release the undersigned Notary Public from all responsibility in connection therewith. The parties hereto take cognizance of the fact that no title examination has been requested by the undersigned Notary Public, and relieve and release him of any and all liability in connection therewith.

IV.

The Property is sold and is made subject to the terms and conditions of the Purchase and Sale Agreement ("PSA") dated June 14, 2001, by and between the parties hereto and other parties. Buyer and Seller agree in the event of a conflict between the terms of the PSA and this Act of Sale, the terms of the PSA shall prevail.

V.

Seller makes no representation or warranty, express or implied, as to the suitability of the Property or as to the physical condition thereof for any purpose whatsoever. **EXCEPT AS SET FORTH IN THE PSA SELLER CONVEYS TO BUYER, THE PROPERTY WITHOUT ANY WARRANTY, OR RECOURSE WHATSOEVER, THE SOLE PERIL AND RISK OF EVICTION BEING ASSUMED BY BUYER, BUT WITH FULL SUBSTITUTION AND SUBROGATION IN AND TO ALL THE RIGHTS AND ACTIONS OF WARRANTY WHICH SELLER HAS OR MAY HAVE AGAINST ALL PRECEDING OWNERS, LESSORS, LESSEES OR VENDORS; IT BEING UNDERSTOOD THAT BUYER TAKES THE PROPERTY "AS IS" AND "WHERE IS", BUYER HEREBY ACKNOWLEDGING RELIANCE SOLELY ON ITS OWN TITLE EXAMINATION AND INSPECTION OF THE ASSETS, AND NOT ON ANY WARRANTIES OR REPRESENTATIONS FROM SELLER OR ANY PRIOR OWNERS OF THE PROPERTY EXCEPT AS SET FORTH IN THE PSA. EXCEPT AS SET FORTH IN THE PSA, BUYER ACKNOWLEDGES THAT SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE PROPERTY AND THAT BUYER IS NOT RELYING ON THE ACCURACY OF ANY INFORMATION OR DOCUMENTS PREVIOUSLY FURNISHED TO BUYER BY SELLER OR ANY PRIOR OWNERS OF THE PROPERTY. BUYER FURTHER ACKNOWLEDGES THAT ALTHOUGH SELLER MAY KNOW OR HAVE REASON TO KNOW OF THE PARTICULAR USE BUYER INTENDS FOR THE PROPERTY, OR BUYER'S PARTICULAR PURPOSE FOR BUYING THE PROPERTY, BUYER IS NOT RELYING ON SELLER'S SKILL OR JUDGMENT IN SELECTING THE PROPERTY. ACCORDINGLY, EXCEPT AS EXPRESSLY SET FORTH IN THE PSA, SELLER MAKES NO WARRANTY OR REPRESENTATION THAT THE PROPERTY IS FIT**

FOR BUYER'S INTENDED USE OR HIS PARTICULAR PURPOSE AND BUYER WAIVES ANY SUCH WARRANTY TO WHICH IT MAY BE ENTITLED UNDER LOUISIANA CIVIL CODE ARTICLE 2524, AND BUYER FURTHER WAIVES ANY WARRANTY TO WHICH IT MIGHT BE ENTITLED UNDER SAID ARTICLE 2524 THAT THE PROPERTY BE REASONABLY FIT FOR ITS ORDINARY USE. ALL OTHER IMPLIED WARRANTIES WITH RESPECT TO THE PROPERTY, INCLUDING THOSE RELATED TO BUYER'S PEACEABLE POSSESSION OF THE PROPERTY, THE MERCHANTABILITY THEREOF, HIDDEN DEFECTS THEREIN OR THE FITNESS THEREOF FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED BY SELLER AND EXPRESSLY WAIVED BY BUYER. BUYER SHALL HAVE NO RIGHT OR CAUSE OF ACTION AGAINST SELLER TO ASSERT IN ANY CONTROVERSY, CLAIM, DEMAND OR LITIGATION ARISING FROM OR IN CONNECTION WITH THE PROPERTY ANY OF THE WARRANTIES DISCLAIMED IN THIS ACT OF SALE, EXCEPT TO THE EXTENT PROVIDED IN THE PSA. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER DOES NOT WARRANT THAT THE ASSETS (AS DEFINED IN THE PSA) ARE FREE FROM HIDDEN, REDHIBITORY OR LATENT DEFECTS OR VICES OR THAT THE PROPERTY IS FIT FOR THE USE INTENDED BY BUYER, AND BUYER HEREBY EXPRESSLY WAIVES (i) ALL RIGHTS IN REDHIBITION PURSUANT TO LOUISIANA CIVIL CODE ARTICLE 2520, ET SEQ., (ii) THE WARRANTIES OF OWNERSHIP AND PEACEABLE POSSESSION OF THE PROPERTY, (iii) THE WARRANTIES AGAINST HIDDEN OR REDHIBITORY DEFECTS IN THE ASSETS, AND (iv) THE WARRANTY THAT THE PROPERTY IS FIT FOR ITS INTENDED USE, EACH OF WHICH WOULD OTHERWISE BE IMPOSED UPON SELLER BY LOUISIANA CIVIL CODE ARTICLE 2475, AND BUYER HEREBY RELEASES SELLER FROM ANY LIABILITY FOR HIDDEN, REDHIBITORY OR LATENT DEFECTS OR VICES UNDER LOUISIANA CIVIL CODE ARTICLES 2520 THROUGH 2549. SELLER ALSO HEREBY DISCLAIMS AND BUYER HEREBY WAIVES THE WARRANTY AGAINST EVICTION AND AGAINST NON-DECLARED ENCUMBRANCES UNDER LOUISIANA CIVIL CODE ARTICLE 2500, BUYER AGAIN ACKNOWLEDGING THAT IT IS PURCHASING THE PROPERTY BASED UPON ITS OWN TITLE EXAMINATION AND AT ITS OWN PERIL AND RISK. BUYER WAIVES ANY RIGHT BUYER MAY HAVE TO A RETURN OF THE PURCHASE PRICE FOR ANY REASON UNDER THE LOUISIANA CIVIL CODE. BUYER SHALL HAVE NO RIGHT OR CAUSE OF ACTION AGAINST SELLER TO ASSERT IN ANY CONTROVERSY, CLAIM, DEMAND OR LITIGATION ARISING FROM OR IN CONNECTION WITH THE PROPERTY ANY SUCH WARRANTY OR WARRANTIES. EXCEPT AS SET FORTH IN THE PSA, BUYER HEREBY RELEASES SELLER FROM ANY CLAIMS, DEMANDS, LIABILITIES, COSTS OR SUITS UNDER OR PURSUANT TO 42 U.S.C. § 9601, ET SEQ., 49 U.S.C. § 5102, ET SEQ., 42 U.S.C. § 6901, ET SEQ., AND LA.R.S. 30-2001, ET SEQ., TOGETHER WITH ANY AND ALL CLAIMS, DEMANDS, SUITS OR LITIGATION UNDER ANY OTHER APPLICABLE LAWS, STATUTES, RULES OR REGULATIONS, AS THE SAME MAY FROM TIME TO TIME BE AMENDED, RELATING TO ANY CONTAMINATION ON, IN OR UNDER THE ASSETS, AND ALL OTHER ENVIRONMENTAL OR HAZARDOUS SUBSTANCES, LIABILITIES OF WHATSOEVER KIND OR NATURE, INCLUDING

WITHOUT LIMITATION (a) ALL FORESEEABLE AND UNFORESEEABLE DAMAGES OF ANY KIND OR NATURE AND (b) THE COSTS OF ANY REQUIRED OR NECESSARY INVESTIGATION, STUDY, REPAIR, CLEAN-UP DETOXIFICATION, UNDER ANY OTHER STATUTE, REGULATION, ORDINANCE OR DECREE. BUYER REPRESENTS THAT IT HAS INSPECTED THE ASSETS AND ACCEPTED THE PHYSICAL AND ENVIRONMENTAL CONDITION OF SAME ON AN "AS IS-WHERE IS" BASIS SUBJECT TO THE TERMS OF THE PSA. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PSA, BUYER RELEASES SELLER FROM ANY LIABILITY WITH RESPECT TO THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE ASSETS AT THE EFFECTIVE TIME WHETHER OR NOT CAUSED BY OR ATTRIBUTABLE TO SELLER'S NEGLIGENCE, FAULT, OR STRICT LIABILITY, AND WHETHER OR NOT ARISING DURING THE PERIOD OF, OR FROM, OR IN CONNECTION WITH SELLER'S OWNERSHIP OF THE PROPERTY OR USE OF THE PROPERTY BEFORE OR AT THE EFFECTIVE TIME. WITHOUT LIMITING THE ABOVE, AND EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PSA, BUYER WAIVES ANY RIGHT TO RECOVER FROM SELLER AND FOREVER RELEASES AND DISCHARGES SELLER AND SUBJECT TO, AND AS PROVIDED IN, THE PSA, AGREES TO RELEASE, INDEMNIFY, DEFEND AND HOLD SELLER HARMLESS FROM ANY AND ALL DAMAGES, CLAIMS, LOSSES, LIABILITIES, PENALTIES, FINES, LIENS, JUDGMENTS, COSTS AND EXPENSES WHATSOEVER, (INCLUDING WITHOUT LIMITATION, ATTORNEYS' FEES AND COSTS), WHETHER DIRECT OR INDIRECT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THAT MAY ARISE ON ACCOUNT OF OR ANY WAY BE CONNECTED WITH THE PHYSICAL CONDITION OF THE ASSETS AT THE EFFECTIVE TIME OR ANY LAW OR REGULATION APPLICABLE THERETO, INCLUDING WITHOUT LIMITATION, THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980, AS AMENDED (42 U.S.C. § 9601 ET. SEQ.), THE RESOURCE CONSERVATION AND RECOVERY ACT OF 1976 (42 U.S.C. § 6901 ET. SEQ.), THE CLEAN WATER ACT (33 U.S.C. §§ 466 ET. SEQ.), THE SAFE DRINKING WATER ACT (14 U.S.C. §§ 1401-1450), THE HAZARDOUS MATERIALS TRANSPORTATION ACT (49 U.S.C. § 7401 ET. SEQ.) AS AMENDED, THE CLEAN AIR ACT AMENDMENTS OF 1990, AND ANY OTHER APPLICABLE FEDERAL, STATE OR LOCAL LAW, WHETHER OR NOT ARISING DURING THE PERIOD OF, OR FROM, OR IN CONNECTION WITH, SELLER'S OWNERSHIP OF THE PROPERTY OR USE OF THE PROPERTY AT OR PRIOR TO THE EFFECTIVE TIME, AND WHETHER OR NOT ATTRIBUTABLE TO THE STRICT LIABILITY OF SELLER OR THE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE, NEGLIGENCE OF SELLER, EVEN IF CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SELLER PRIOR TO CLOSING.

This Act of Sale shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and the, to the extent permitted by law, covenants hereof shall constitute real obligations and shall run with the Land.

24446264

4

THUS DONE AND PASSED, in my presence on the 30th day of August, 2001, but effective for all purposes as of the Effective Time, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said Seller and Buyer, and me, Notary, after reading of the whole.

WITNESSES:

SELLER:
LATERRE CO., LTD.

BY:    CASTEX ENERGY, INC.,
      GENERAL PARTNER

By:_____
Name: John R. Stoika
Title:  President


BUYER:
MIRANT SOUTH LOUISIANA FEE, LLC

BY:  Mirant Americas Production Company,
     its sole managing member

By:_____
Name: David W. Stewart
Title:  Vice President


_____
NOTARY PUBLIC
STATE OF TEXAS
COUNTY OF HARRIS
MY COMMISSION EXPIRES:  6-23-02

Return to:
Kevin L. Shaw, Esq.
Mayer, Brown & Platt
700 Louisiana Street, Suite 3600
Houston, TX  77002

24446264

S-1



KATHLEEN W. BLACKMON
Notary Public, State of Texas
My Commission Expires
JUNE 23, 2002.

# MECOM RANCH

An undivided 7/9ths interest* in and to the following described lands located in Cameron Parish, Louisiana, to-wit:

   *Said fractional interest is reflected solely for purposes of Section 5.01(a) of the PSA and Title Defects, as defined in the PSA.

   A)  Township 14 South, Range 10 West

      1) Section 17: -  Entire Fractional Section 17;
      2) Section 18: -  Southeast Quarter (SE/4);
      3) Section 19: -  All;
      4) Section 20: -  All;
      5) Section 29: -  West Half (W/2); Northeast Quarter (NE/4); North Half of Southeast Quarter (N/2 of SE/4); Southwest Quarter of Southeast Quarter (SW/4 of SE/4);
      6) Section 30: -  All;
      7) Section 31: -  Northeast Quarter (NE/4); East Half of Northwest Quarter (E/2 of NW/4); Northwest Quarter of Northwest Quarter (NW/4 of NW/4); Northwest Quarter of Southeast Quarter (NW/4 of SE/4); East Half of Southwest Quarter (E/2 of SW/4);
      8) Section 32: -  Northwest Quarter of Northwest Quarter (NW/4 of NW/4).

   B)  Township 14 South, Range 11 West

      BLOCK ONE:
      1) Section 19: -  All;
      2) Section 20: -  All;
      3) Section 21: -  All;
      4) Section 22: -  All;
      5) Section 23: -  All;
      6) Section 24: -  All;
      7) Section 25: -  All;
      8) Section 26: -  All;
      9) Section 29: -  All;
      10) Section 30: -  All;
      11) Section 31: -  All;
      12) Section 32: -  All;
      13) Section 35: -  West Half (W/2); Southeast Quarter (SE/4); West Half of Northeast Quarter (W/2 of NE/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4);

      14) Section 36: -  Northwest Quarter of Northwest Quarter (NW/4 of NW/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4);

17

*Castex owns 100% of Cameron Parish, Louisiana*

## ACT OF SALE

BE IT KNOWN, that on the date set forth below, but effective for all purposes as of the 1st day of August, 2002, at 7:00 a.m., Central Daylight Saving Time ("**Effective Time**"),

BEFORE, the undersigned Notary Public, in and for the County and State set forth below, duly commissioned and qualified, and in the presence of the undersigned competent witnesses,

PERSONALLY CAME AND APPEARED:

MIRANT SOUTH LOUISIANA FEE, LLC, (hereinafter referred to as "**Seller**"), whose mailing address is 1200 Smith Street, Two Allen Center, Houston, Texas 77002, and a federal employer identification number of 58-2646183, appearing herein through its sole member Mirant Americas Production Company, a Delaware corporation represented herein by its undersigned duly authorized Vice President David W. Stewart, and

LATERRE CO., LTD., a Texas Limited Partnership (hereinafter referred to as "**Buyer**"), whose a mailing address is 333 North Sam Houston Parkway East, Suite 1060, Houston, Texas 77060, and a federal employer identification number of 76-0656107, appearing herein through its general partner Castex Energy, Inc., a Texas corporation represented herein by its undersigned duly authorized President John R. Stoika,

who declared and said as follows:

I.

For the price and consideration, and on the terms and conditions hereinafter expressed, Seller does by this act, grant, bargain, sell, convey, transfer, assign, set over and deliver, without any warranties as to title, unto Buyer here accepting and purchasing for itself, its successors and assigns, and acknowledging delivery and possession thereof, all of Seller's right, title and interest in and to the property described on Exhibit "A" hereto ("**Land**"), together with all buildings and improvements thereon and all rights, ways, privileges, and appurtenances thereunto belonging or in anywise appertaining (said undivided interest shall be referred to as the "**Property**").

TO HAVE AND TO HOLD, the Property unto the Buyer, its successors and assigns, forever.

28551745

1

II.

THIS SALE IS MADE AND ACCEPTED for and in consideration of the price and sum of $1,000.00 and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged.

III.

Seller and Buyer waive the production of Mortgage and Conveyance Certificates and relieve and release the undersigned Notary Public from all responsibility in connection therewith. The parties hereto take cognizance of the fact that no title examination has been requested by the undersigned Notary Public, and relieve and release him of any and all liability in connection therewith.

IV.

The Property is sold and is made subject to the terms and conditions of the Purchase and Sale Agreement ("**PSA**") dated October 16, 2002, as amended, by and between the parties hereto and other parties. Buyer and Seller agree in the event of a conflict between the terms of the PSA and this Act of Sale, the terms of the PSA shall prevail.

V.

Seller makes no representation or warranty, express or implied, as to the suitability of the Property or as to the physical condition thereof for any purpose whatsoever. **EXCEPT AS SET FORTH IN THE PSA SELLER CONVEYS TO BUYER, THE PROPERTY WITHOUT ANY WARRANTY, OR RECOURSE WHATSOEVER, THE SOLE PERIL AND RISK OF EVICTION BEING ASSUMED BY BUYER, BUT WITH FULL SUBSTITUTION AND SUBROGATION IN AND TO ALL THE RIGHTS AND ACTIONS OF WARRANTY WHICH SELLER HAS OR MAY HAVE AGAINST ALL PRECEDING OWNERS, LESSORS, LESSEES OR VENDORS; IT BEING UNDERSTOOD THAT BUYER TAKES THE PROPERTY "AS IS" AND "WHERE IS", BUYER HEREBY ACKNOWLEDGING RELIANCE SOLELY ON ITS OWN TITLE EXAMINATION AND INSPECTION OF THE ASSETS, AND NOT ON ANY WARRANTIES OR REPRESENTATIONS FROM SELLER OR ANY PRIOR OWNERS OF THE PROPERTY EXCEPT AS SET FORTH IN THE PSA. EXCEPT AS SET FORTH IN THE PSA, BUYER ACKNOWLEDGES THAT SELLER HAS MADE NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE PROPERTY AND THAT BUYER IS NOT RELYING ON THE ACCURACY OF ANY INFORMATION OR DOCUMENTS PREVIOUSLY FURNISHED TO BUYER BY SELLER OR ANY PRIOR OWNERS OF THE PROPERTY. BUYER FURTHER ACKNOWLEDGES THAT ALTHOUGH SELLER MAY KNOW OR HAVE REASON TO KNOW OF THE PARTICULAR USE BUYER INTENDS FOR THE PROPERTY, OR BUYER'S PARTICULAR PURPOSE FOR BUYING THE PROPERTY, BUYER IS NOT RELYING ON SELLER'S SKILL OR JUDGMENT IN SELECTING THE PROPERTY. ACCORDINGLY, EXCEPT AS EXPRESSLY SET FORTH IN THE PSA, SELLER**

MAKES NO WARRANTY OR REPRESENTATION THAT THE PROPERTY IS FIT FOR BUYER'S INTENDED USE OR HIS PARTICULAR PURPOSE AND BUYER WAIVES ANY SUCH WARRANTY TO WHICH IT MAY BE ENTITLED UNDER LOUISIANA CIVIL CODE ARTICLE 2524, AND BUYER FURTHER WAIVES ANY WARRANTY TO WHICH IT MIGHT BE ENTITLED UNDER SAID ARTICLE 2524 THAT THE PROPERTY BE REASONABLY FIT FOR ITS ORDINARY USE. ALL OTHER IMPLIED WARRANTIES WITH RESPECT TO THE PROPERTY, INCLUDING THOSE RELATED TO BUYER'S PEACEABLE POSSESSION OF THE PROPERTY, THE MERCHANTABILITY THEREOF, HIDDEN DEFECTS THEREIN OR THE FITNESS THEREOF FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED BY SELLER AND EXPRESSLY WAIVED BY BUYER. BUYER SHALL HAVE NO RIGHT OR CAUSE OF ACTION AGAINST SELLER TO ASSERT IN ANY CONTROVERSY, CLAIM, DEMAND OR LITIGATION ARISING FROM OR IN CONNECTION WITH THE PROPERTY ANY OF THE WARRANTIES DISCLAIMED IN THIS ACT OF SALE, EXCEPT TO THE EXTENT PROVIDED IN THE PSA. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER DOES NOT WARRANT THAT THE ASSETS (AS DEFINED IN THE PSA) ARE FREE FROM HIDDEN, REDHIBITORY OR LATENT DEFECTS OR VICES OR THAT THE PROPERTY IS FIT FOR THE USE INTENDED BY BUYER, AND BUYER HEREBY EXPRESSLY WAIVES (i) ALL RIGHTS IN REDHIBITION PURSUANT TO LOUISIANA CIVIL CODE ARTICLE 2520, ET SEQ., (ii) THE WARRANTIES OF OWNERSHIP AND PEACEABLE POSSESSION OF THE PROPERTY, (iii) THE WARRANTIES AGAINST HIDDEN OR REDHIBITORY DEFECTS IN THE ASSETS, AND (iv) THE WARRANTY THAT THE PROPERTY IS FIT FOR ITS INTENDED USE, EACH OF WHICH WOULD OTHERWISE BE IMPOSED UPON SELLER BY LOUISIANA CIVIL CODE ARTICLE 2475, AND BUYER HEREBY RELEASES SELLER FROM ANY LIABILITY FOR HIDDEN, REDHIBITORY OR LATENT DEFECTS OR VICES UNDER LOUISIANA CIVIL CODE ARTICLES 2520 THROUGH 2549. SELLER ALSO HEREBY DISCLAIMS AND BUYER HEREBY WAIVES THE WARRANTY AGAINST EVICTION AND AGAINST NON-DECLARED ENCUMBRANCES UNDER LOUISIANA CIVIL CODE ARTICLE 2500, BUYER AGAIN ACKNOWLEDGING THAT IT IS PURCHASING THE PROPERTY BASED UPON ITS OWN TITLE EXAMINATION AND AT ITS OWN PERIL AND RISK. BUYER WAIVES ANY RIGHT BUYER MAY HAVE TO A RETURN OF THE PURCHASE PRICE FOR ANY REASON UNDER THE LOUISIANA CIVIL CODE. BUYER SHALL HAVE NO RIGHT OR CAUSE OF ACTION AGAINST SELLER TO ASSERT IN ANY CONTROVERSY, CLAIM, DEMAND OR LITIGATION ARISING FROM OR IN CONNECTION WITH THE PROPERTY ANY SUCH WARRANTY OR WARRANTIES. EXCEPT AS SET FORTH IN THE PSA, BUYER HEREBY RELEASES SELLER FROM ANY CLAIMS, DEMANDS, LIABILITIES, COSTS OR SUITS UNDER OR PURSUANT TO 42 U.S.C. § 9601, ET SEQ., 49 U.S.C. § 5102, ET SEQ., 42 U.S.C. § 6901, ET SEQ., AND LA.R.S. 30-2001, ET SEQ., TOGETHER WITH ANY AND ALL CLAIMS, DEMANDS, SUITS OR LITIGATION UNDER ANY OTHER APPLICABLE LAWS, STATUTES, RULES OR REGULATIONS, AS THE SAME MAY FROM TIME TO TIME BE AMENDED, RELATING TO ANY CONTAMINATION ON, IN OR UNDER THE ASSETS, AND ALL OTHER ENVIRONMENTAL OR HAZARDOUS

SUBSTANCES, LIABILITIES OF WHATSOEVER KIND OR NATURE, INCLUDING WITHOUT LIMITATION (a) ALL FORESEEABLE AND UNFORESEEABLE DAMAGES OF ANY KIND OR NATURE AND (b) THE COSTS OF ANY REQUIRED OR NECESSARY INVESTIGATION, STUDY, REPAIR, CLEAN-UP DETOXIFI-CATION, UNDER ANY OTHER STATUTE, REGULATION, ORDINANCE OR DECREE. BUYER REPRESENTS THAT IT HAS INSPECTED THE ASSETS AND ACCEPTED THE PHYSICAL AND ENVIRONMENTAL CONDITION OF SAME ON AN "AS IS-WHERE IS" BASIS SUBJECT TO THE TERMS OF THE PSA. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PSA, BUYER RELEASES SELLER FROM ANY LIABILITY WITH RESPECT TO THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE ASSETS AT THE EFFECTIVE TIME WHETHER OR NOT CAUSED BY OR ATTRIBUTABLE TO SELLER'S NEGLIGENCE, FAULT, OR STRICT LIABILITY, AND WHETHER OR NOT ARISING DURING THE PERIOD OF, OR FROM, OR IN CONNECTION WITH SELLER'S OWNERSHIP OF THE PROPERTY OR USE OF THE PROPERTY BEFORE OR AT THE EFFECTIVE TIME. WITHOUT LIMITING THE ABOVE, AND EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PSA, BUYER WAIVES ANY RIGHT TO RECOVER FROM SELLER AND FOREVER RELEASES AND DISCHARGES SELLER AND SUBJECT TO, AND AS PROVIDED IN, THE PSA, AGREES TO RELEASE, INDEMNIFY, DEFEND AND HOLD SELLER HARMLESS FROM ANY AND ALL DAMAGES, CLAIMS, LOSSES, LIABILITIES, PENALTIES, FINES, LIENS, JUDGMENTS, COSTS AND EXPENSES WHATSOEVER, (INCLUDING WITHOUT LIMITATION, ATTORNEYS' FEES AND COSTS), WHETHER DIRECT OR INDIRECT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THAT MAY ARISE ON ACCOUNT OF OR ANY WAY BE CONNECTED WITH THE PHYSICAL CONDITION OF THE ASSETS AT THE EFFECTIVE TIME OR ANY LAW OR REGULATION APPLICABLE THERETO, INCLUDING WITHOUT LIMITATION, THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980, AS AMENDED (42 U.S.C. § 9601 ET. SEQ.), THE RESOURCE CONSERVATION AND RECOVERY ACT OF 1976 (42 U.S.C. § 6901 ET. SEQ.), THE CLEAN WATER ACT (33 U.S.C. §§ 466 ET. SEQ.), THE SAFE DRINKING WATER ACT (14 U.S.C. §§ 1401-1450), THE HAZARDOUS MATERIALS TRANSPORTATION ACT (49 U.S.C. § 7401 ET. SEQ.) AS AMENDED, THE CLEAN AIR ACT AMENDMENTS OF 1990, AND ANY OTHER APPLICABLE FEDERAL, STATE OR LOCAL LAW, WHETHER OR NOT ARISING DURING THE PERIOD OF, OR FROM, OR IN CONNECTION WITH, SELLER'S OWNERSHIP OF THE PROPERTY OR USE OF THE PROPERTY AT OR PRIOR TO THE EFFECTIVE TIME, AND WHETHER OR NOT ATTRIBUTABLE TO THE STRICT LIABILITY OF SELLER OR THE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE, NEGLIGENCE OF SELLER, EVEN IF CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SELLER PRIOR TO CLOSING.

This Act of Sale shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and the, to the extent permitted by law, covenants hereof shall constitute real obligations and shall run with the Land.

28551745                                        4

THUS DONE AND PASSED, in my presence on the 10th day of December, 2002, but effective for all purposes as of the Effective Time, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said Seller and Buyer, and me, Notary, after reading of the whole.

**SELLER:**

**MIRANT SOUTH LOUISIANA FEE, LLC**

By:   Mirant Americas Production Company, its
     sole member

By: _____
     David W. Stewart
     Vice President

**WITNESSES:**

28551745

5

**BUYER:**

**LATERRE CO., LTD.**

By:  Castex Energy, Inc., its general partner

By: _____
   John R. Stoika
   President

**WITNESSES:**

28551745                                    6

## ACKNOWLEDGMENTS

STATE OF TEXAS

COUNTY OF HARRIS

On this 10th day of December 2002, appeared John R. Stoika, to me personally known, who being by me duly sworn did say that he is the President of CASTEX ENERGY, INC., a Texas corporation, the sole general partner of LATERRE CO., LTD., a Texas Limited Partnership, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

_____
NOTARY PUBLIC

My Commission Expires: _12/3/05___

LISA R. SIMON
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
DEC. 3, 2005

28551745

7

STATE OF TEXAS

COUNTY OF HARRIS

On this 10th day of December 2002, appeared David W. Stewart, to me personally known, who being by me duly sworn did say that he is the Vice President of MIRANT AMERICAS PRODUCTION COMPANY, a Delaware corporation, the sole member of MIRANT SOUTH LOUISIANA FEE, LLC, a Delaware limited liability company, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

NOTARY PUBLIC

My Commission Expires: 12/3/05

28551745

8

## MECOM RANCH

An undivided 75% of 7/9ths right, title and interest in and to the following described lands located in Cameron Parish, Louisiana, to-wit:

### Township 14 South, Range 10 West

| | |
|---|---|
| Section 17: | Entire Fractional Section 17; |
| Section 18: | Southeast Quarter (SE/4); |
| Section 19: | All; |
| Section 20: | All; |
| Section 29: | West Half (W/2); Northeast Quarter (NE/4); North Half of Southeast Quarter (N/2 of SE/4); Southwest Quarter of Southeast Quarter (SW/4 of SE/4); |
| Section 30: | All; |
| Section 31: | Northeast Quarter (NE/4); East Half of Northwest Quarter (E/2 of NW/4); Northwest Quarter of Northwest Quarter (NW/4 of NW/4); Northwest Quarter of Southeast Quarter (NW/4 of SE/4); East Half of Southwest Quarter (E/2 of SW/4); |
| Section 32: | Northwest Quarter of Northwest Quarter (NW/4 of NW/4). |

### Township 14 South, Range 11 West

BLOCK ONE:

| | |
|---|---|
| Section 19: | All; |
| Section 20: | All; |
| Section 21: | All; |
| Section 22: | All; |
| Section 23: | All; |
| Section 24: | All; |
| Section 25: | All; |
| Section 26: | All; |
| Section 29: | All; |
| Section 30: | All; |
| Section 31: | All; |
| Section 32: | All; |
| Section 35: | West Half (W/2); Southeast Quarter (SE/4); West Half of Northeast Quarter (W/2 of NE/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4); |
| Section 36: | Northwest Quarter of Northwest Quarter (NW/4 of NW/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4); |

BLOCK TWO:

All of Sections 27, 28, 33 and 34, LESS AND EXCEPT approximately 480 acres owned by Matilda Geddings Gray, or her successors or assigns, as described in that certain Agreement between The Lutcher and Moore Lumber Company and Matilda Geddings Gray dated July 15, 1935, recorded in Conveyance Book 27, Page 206, Entry No. 31872, records of the Clerk of Court of Cameron Parish, Louisiana.

### Township 14 South, Range 12 West

All of Sections 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, and 36, LESS AND EXCEPT the rights in that certain 1.955 acre tract conveyed by U.S. Oil of Louisiana,

Ltd., et al, to the State of Louisiana by instrument dated January 27, 1970, recorded in Conveyance Book 267, Page 435, Entry No. 122662, records of the Clerk of Court of Cameron Parish, Louisiana.

Township 15 South, Range 11 West

| | |
|---|---|
| Section 2: | North Half (N/2); |
| Section 3: | West Half (W/2); West Half of Southeast Quarter (W/2 of SE/4); West Half of Northeast Quarter (W/2 of NE/4); Northeast Quarter of Northeast Quarter (NE/4 of NE/4), LESS AND EXCEPT those certain surface rights conveyed by Bill of Sale from U.S. Oil of Louisiana, Ltd., et al, to the State of Louisiana by instrument dated January 27, 1970, recorded in Conveyance Book 267, Page 435, Entry No. 122662, records of the Clerk of Court of Cameron Parish, Louisiana; |
| Section 4: | All; |
| Section 5: | All; |
| Section 6: | All; |
| Section 7: | All; |
| Section 8: | Entire Fractional Section 8; |
| Section 9: | Entire Fractional Section 9; |
| Section 10: | Northwest Quarter (NW/4); West Half of Northeast Quarter (W/2 of NE/4); Southwest Quarter (SW/4); West Half of Southeast Quarter (W/2 of SE/4). |

Township 15 South, Range 12 West

| | |
|---|---|
| Section 1: | All; |
| Section 2: | All; |
| Section 3: | All; |
| Section 4: | All; |
| Section 5: | All; |
| Section 6: | All; |
| Section 7: | All; |
| Section 10: | Entire Fractional Section 10; |
| Section 25: | All (Lot #40); |
| Section 26: | All (Lot #39); |
| Section 27: | All (Lot #38); |
| Section 28: | All (Lot #37); |
| Section 29: | All (Lot #36); |
| Section 30: | All (Lot #35); |
| Section 31: | All (Lot #34); |
| Section 32: | All (Lot #33); |
| Section 33: | All (Lot #32); |
| Section 34: | All (Lot #31); |
| Section 35: | All (Lot #30); |
| Section 36: | All (Lot #29); |
| Section 37: | All (Lot #28); |
| Section 38: | All (Lot #27); |
| Section 39: | All (Lot #26); |
| Section 40: | All (Lot #25); |

Section 41:     All (Lot #24);
Section 42:     All (Lot #23).

Certain discrepancies may exist with reference to the governmental surveys for Township 14 South, Range 11 West, Township 14 South, Range 12 West, Township 15 South, Range 11 West and Township 15 South, Range 12 West and the location of their respective sections, or portions thereof, and therefore, as to the location of the lands to be conveyed pursuant to this Agreement. Accordingly, the lands to be conveyed pursuant to this Agreement shall include all of Fina's right, title and interest in and to all lands owned by it situated within Township 14 South, Range 10 West, Township 14 South, Range 11 West, Township 14 South, Range 12 West, Township 15 South, Range 11 West and Township 15 South, Range 12 West, Cameron Parish, Louisiana, whether or not said lands are properly described above.

This Conveyance is dated and made effective as of February 1, 2003, at 7:00 a.m., Central Time ("**Effective Time**"), and is executed by **Apache North America, Inc.**, a Delaware corporation, whose mailing address is 2000 Post Oak Boulevard, Suite 1060, Houston, Texas 77056 (hereinafter referred to as "**Seller**"), in favor of **Apache Louisiana Minerals, Inc.**, a Delaware corporation, whose mailing address is 2000 Post Oak Boulevard, Suite 1060, Houston, Texas 77056 (hereinafter referred to as "**Buyer**").

Reference is hereby made for all purposes to that certain Act of Sale dated effective as of December 1, 2002, at 7:00 a.m., Central Time, whereby LaTerre Co., Ltd. conveyed to Apache North America, Inc. the "Properties", as defined therein, (hereinafter referred to as the "**Act of Sale**"). The Act of Sale is recorded in under Entry No. 277466 in the Conveyance records of Cameron Parish, Louisiana, in Book 1607 under Entry No. 118014 in the Conveyance records of Terrebonne Parish, Louisiana, and in Book 1591 at Page — et seq. under Entry No. 932631 in the Conveyance records of Lafourche Parish, Louisiana.

For good and valuable consideration paid by Buyer to Seller, the receipt and adequacy of which is hereby acknowledged by Seller, Seller does hereby grant, bargain, sell, convey, transfer, assign, set over and deliver unto Buyer, herein accepting and purchasing for itself, its successors and assigns, and acknowledging delivery and possession thereof, all right, title and interest in and to and relating to the Properties acquired by Seller in the Act of Sale, TO HAVE AND TO HOLD unto Buyer, its successors and assigns, subject to and in accordance with all of the terms and provisions of the Act of Sale but effective, however, as of the Effective Time.

Buyer and Seller further agree as follows:

1.      Buyer agrees to perform all of the duties and obligations of Seller (and ratifies all waivers and releases of Seller) with respect to the Properties and/or under the Act of Sale and/or under the PSA (as defined in the Act of Sale).

2.      This Conveyance is executed by Seller in favor of Buyer without warranty of title, express or implied, except as to acts by, through and under Seller, but not otherwise.

3.      Buyer expressly acknowledges that Buyer is aware that the Land (as defined in the Act of Sale) is largely marsh lands, and there are numerous water covered areas within the boundaries of such lands, which may be susceptible to a claim by the State of Louisiana that the beds of such water covered areas are owned by the State of Louisiana as the beds of navigable waterbodies. Seller does hereby exclude any contractual, implied or other warranty or representation regarding whether water covered areas are navigable or not navigable, and whether the beds of such water covered areas are owned by Seller or, alternatively, owned by the State of Louisiana; provided, however, nothing contained in these statements is intended to limit in any manner Buyer's right to dispute any claim of ownership which may be asserted, in litigation or otherwise, by the State of Louisiana respecting any claim to the ownership of the beds of water covered areas, and Buyer's right to assert that the beds of such water covered areas are owned in part by Buyer because such water covered areas are, in fact, not navigable.

- 1 -

**755**

concerning the acreage content of the Land, regarding the location of the boundaries of the Lands, concerning any encroachments upon the Land, and especially that Seller has made no representations or warranties concerning whether portions of the Land may have eroded into or subsided beneath adjacent water covered areas since the date such Land were acquired by Seller (and hence such areas may have become subject to a claim of ownership by the State of Louisiana).

5.      Buyer agrees that if Buyer elects to sell or otherwise transfer the Land (or any portion of the Land), Buyer shall include in any such sale or transfer (or, alternatively, in any unrecorded purchase and sale agreement or similar agreement executed in connection with any such sale or transfer) provisions identical to the two preceding paragraphs, and Buyer shall protect, indemnify and hold Seller harmless from and against any and all claims, causes of action or liability arising as a result of Buyer's failure to include such provisions in any further sale or other transfer by Buyer relating to the Land (or any portion of the Land).

**IN WITNESS WHEREOF,** this Conveyance is executed by Seller and Buyer on the date first above written in the presence of the undersigned competent witnesses.

**WITNESSES:**

**SELLER:**

**Apache North America, Inc.**

By: _Eric L. Harry_
    Eric L. Harry
    **Vice President and**
    **Associate General Counsel**

**BUYER:**

**Apache Louisiana Minerals, Inc.**

By: _Eric L. Harry_
    Eric L. Harry
    **Vice President and**
    **Associate General Counsel**

- 2 -

0. 756

ACKNOWLEDGEMENT

STATE OF TEXAS §

COUNTY OF HARRIS §

On this 31ˢᵗ day of January, 2003, appeared Eric L. Harry, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to his on the foregoing instrument at the same time he did, that he is the Vice President and Associate General Counsel of Apache North America, Inc., a Delaware corporation, and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

REGINA C. GORMAN
Notary Public, State of Texas
Commission Expires
NOVEMBER 30, 2005

Notary Public in and for the State of Texas
My Commission expires on _11-30-2005_

## ACKNOWLEDGEMENT

STATE OF TEXAS §

COUNTY OF HARRIS §

On this 31ˢᵗ day of January, 2003, appeared Eric L. Harry, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to his on the foregoing instrument at the same time he did, that he is the Vice President and Associate General Counsel of Apache Louisiana Minerals, Inc., a Delaware corporation, and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

FILED FOR RECORD
PARISH OF
TERREBONNE LA
AM 9 35

REGINA C. GORMAN
Notary Public, State of Texas
Commission Expires
NOVEMBER 30, 2005

DEPUTY CLERK OF COURT

Notary Public in and for the State of Texas
My Commission expires on _1-30-2005_

Champagne

-3-

1 757

STATE OF LOUISIANA
PARISH OF TERREBONNE
I HEREBY CERTIFY that the within and foregoing is a true copy of the original on file in this office and recorded _Feb. 24_ 2003 at _7.35_ o'clock _A_ .M., in _Conveyance_ Book No. _808_, folio _255_, et seq. Under Entry No. _1160222_



### Jay Dardenne
#### SECRETARY OF STATE

*As Secretary of State, of the State of Louisiana, I do hereby Certify that*

an Amended APPLICATION form of

### APACHE LOUISIANA MINERALS, INC.

Organized under the laws of DELAWARE,

Converting the corporation to a limited liability company, and changing the name to

### APACHE LOUISIANA MINERALS LLC

Was filed and recorded in this Office on JANUARY 02, 2009.

*In testimony whereof, I have hereunto set my hand and caused the Seal of my Office to be affixed at the City of Baton Rouge on,*

January  2, 2009

WHE 39413906Q 36930834

*Secretary of State*

CERTIFICATE SS 102 PRINTED SEAL (Rev. 11/08)