## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TOWN OF STATE LINE, MISSISSIPPI, GOVERNMENT<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY;BP P.L.C.; TRANSOCEAN LTD.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER, INC.;TRANSOCEAN HOLDINGS, LLC.; HALLIBURTON ENERGY SERVICES, INC.; AND SPERRY DRILLING SERVICES, A DIVISION OF HALLIBURTON ENERGY SERVICES, INC.<br><br>　　　　　　Defendants,<br><br>v.<br><br>DENHAM LAW FIRM, PLLC<br><br>　　　　　　Intervening Plaintiff. | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SUSHAN |

## <u>Intervening Complaint</u>

COMES NOW the Intervening Complainant, Denham Law Firm, PLLC, filing this their Intervening Complaint against BP Exploration & Production Inc., BP America Production Company, BP P.L.C., Transocean LTD., Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Transocean Holdings, LLC, Halliburton Energy Services, Inc., and Sperry Drilling Services, a division of Halliburton Energy Services, Inc., Defendants, and for cause would respectfully show as follows:

1

**EXHIBIT**
**A**
tabbies

## PARTIES

1.      Plaintiff, Town of State Line, Mississippi, Government, is an independent political subdivision of the State of Mississippi, which suffered economic damages as a result of the Oil Spill and due to the Spill's environmental devastation.

2.      Defendant BP Exploration & Production Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois.  BP Exploration was a leaseholder and the designated operator in the lease granted by the former Minerals Management Service ("MMS") allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252, the location known as "Macondo" where the Oil Spill originated.  BP Exploration was designated the "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. §2714.  This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

3.      Defendant BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas.  BP America was the party to the Drilling Contract with Transocean Ltd. for the drilling of the Macondo well by the Deepwater Horizon vessel.  This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

4.      Defendant BP P.L.C. is a British public limited company with its corporate headquarters in London, England.  BP P.L.C. is the global parent company of the worldwide business operating under the "BP" logo.  BP P.L.C. operates its various business divisions, such as the "Exploration and Production" division within BP Exploration and BP America, through

2

vertical business arrangements aligned by product or service groups. BP P.L.C.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP P.L.C. and are sufficiently controlled by BP P.L.C. so as to be BP P.L.C.'s agents in Louisiana and the U.S. more generally. Plaintiff further adopts and incorporates by reference all jurisdictional allegations against BP P.L.C. set forth in Paragraphs 212-218 of the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010.*

5.　　BP Exploration, BP America, and BP P.L.C. are generally referred to herein collectively as "BP."

6.　　Defendant, Transocean Ltd. is a Swiss corporation that maintains substantial U. S. offices in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. According to its Complaint and Petition for Exoneration from or Limitation of Liability, Transocean Ltd. was an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

7.　　Defendant, Transocean Offshore Deepwater Drilling, Inc. is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Offshore is affiliated with Transocean Ltd. and was an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

8.　　Defendant, Transocean Deepwater, Inc. is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Deepwater is affiliated with Transocean Ltd. and was an owner, managing owner, owner pro hac vice, and/or operator of the

Deepwater Horizon.

9.    Defendant, Transocean Holdings, LLC is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Holdings is affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean Offshore. Transocean Holdings is an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon and participated in the Deepwater Horizon's offshore oil drilling operations at the Macondo prospect, where the Spill originated. More specifically, Transocean Holdings is party to the contract with BP regarding the lease of the Deepwater Horizon for drilling operations in the Gulf of Mexico. On April 28, 2010, the U.S. Coast Guard named Transocean Holdings as a "Responsible Party" under the Oil Pollution Act for the surface oil spill resulting from the blowout by the Deepwater Horizon.

10.    Transocean Ltd.; Transocean Offshore Deepwater Drilling, Inc.; Transocean Deepwater, Inc.; and Transocean Holdings, LLC are generally referred to herein collectively as "Transocean."

11.    Defendant, Halliburton Energy Services, Inc. is a Delaware corporation with its principal place of business in Houston, Texas.  Halliburton is registered to do and does business in the State of Louisiana.  Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations.

12.    Halliburton division Sperry Drilling Services (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools.  Sperry mudlogging personnel were partially responsible for

monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations.  "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

13.     Intervenor, Denham Law Firm, PLLC, is a professional limited liability company organized under the laws of the State of Mississippi and authorized to do business in the State of Mississippi.

## JURISDICTION AND VENUE

14.     The Plaintiff brought its claims for the case into which Denham Law Firm, PLLC intervenes pursuant to Federal general Maritime Law including/and/or the Oil Pollution Act of 1990 ("OPA"), 33 USC §2701, et seq.

15.     Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction."

16.     The claims presented by the Plaintiff are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

17.     Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b) (the "OPA").

18.     Under Fed. R. Civ. P. 82, no allegation of venue is required for admiralty or maritime claims.  Moreover, prosecution and venue in this district is proper under 28 U.S.C. §1391 because Defendants do business herein, Plaintiff resides and does business herein, and the events or omissions giving rise to the claims asserted herein occurred in this district.  Venue is also proper pursuant to the OPA, 33 U.S.C. 2717(b), as the discharge occurred in this district.  Venue is also appropriate in this district consistent with 28 U.S.C. §1407 and the 2010 Transfer Order of the Judicial Panel on Multidistrict Litigation.  *See In re Oil Spill by the Oil Rig*

*"Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010), and this Court's Pretrial Order No. 20 (Rec. Doc. 904), which allows Plaintiff to directly file its complaints arising out of the Oil Spill in this District.

## FACTS and ALLEGATIONS

19.     The intervening complainant, DENHAM LAW FIRM, PLLC, is now and during all times set forth in this action has been a duly licensed and organized law firm under the laws of the State of Mississippi.

20.     On or about January 16th, 2013, the Plaintiff herein, namely the Town of State Line, Mississippi, employed the Intervening Complainant, Denham Law Firm, PLLC, for the performance of legal services, including but not limited to the research, investigation and filing of necessary legal documents on behalf of the Plaintiff, Town of State Line, in its claim for damages as a result of the Deepwater Horizon Oil Spill.

21.     On April 19th, 2013, the Intervening Complainant, Denham Law Firm, PLLC, filed a Complaint for Damages on behalf of the Plaintiff in the Eastern District of Louisiana, attached hereto as Exhibit "A."

22.     On or about May 24th, 2013, Kristopher W. Carter filed an MDL Counsel Contact Information Form, attached hereto as Exhibit "B."

23.     On or around September of 2013, the Plaintiff herein, Town of State Line, terminated its relationship with Denham Law Firm without cause, choosing to continue utilizing the representation of Kristopher W. Carter at his new law firm, Carter & Jordan, PLLC, after he ceased working for the Intervening Complainant.

24.     On September 27th, 2013, Kristopher W. Carter filed a letter of acknowledgement releasing the Intervening Complainant, Denham Law Firm, PLLC, from any further duty or

responsibility in representing the Town of State Line, attached hereto as Exhibit "C."

25.     Additionally, during the course and scope of its representation of the Plaintiff, Denham Law Firm, PLLC, incurred substantial hard and soft costs as well as accumulated $957.50 in attorney fees for which it makes claim.  An itemized statement of all costs and fees incurred is attached hereto as Exhibit "D."

26.     Intervening Complainant, Denham Law Firm, PLLC, has obtained leave to intervene in this cause pursuant to U.S.C.S. Fed. Rules Civ. Proc. R. 24, and is entitled to an attorney's lien on any and all funds recovered by the Plaintiff, Town of State Line, by Carter & Jordan, PLLC, in the amount of one half (½) of any contingent fee collected by Carter & Jordan, PLLC, after each firm has been reimbursed for its actual out-of-pocket expenses.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, PREMISES CONSIDERED, the Intervening Complainant, Denham Law Firm, PLLC, requests this Court to impose an attorney lien in the amount of one half (½) of any contingent fee collected by Carter & Jordan, PLLC, on behalf of Plaintiff, Town of State Line, along with any costs incurred, and for such other and further relief which the Court may deem appropriate.

RESPECTFULLY SUBMITTED on this the 6th day of July, 2015.

BY: DENHAM LAW FIRM, PLLC

BY:     /s/ Matthew P. Pavlov
        MATTHEW P. PAVLOV
        Mississippi Bar No. 104540
        DENHAM LAW FIRM, PLLC
        424 Washington Avenue
        Post Office Drawer 580
        Ocean Springs, MS 39564
        228.875.1234 Telephone
        228.875.4553 Facsimile
        matthew@denhamlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Intervening Complaint has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of July, 2015.

/s/ Matthew P. Pavlov
MATTHEW P. PAVLOV

MATTHEW P. PAVLOV
Mississippi Bar No. 104540
DENHAM LAW FIRM, PLLC
424 Washington Avenue
Post Office Drawer 580
Ocean Springs, MS 39564
228.875.1234 Telephone
228.875.4553 Facsimile
matthew@denhamlaw.com

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TOWN OF STATE LINE, MISSISSIPPI, GOVERNMENT <br><br>          Plaintiff, <br><br> v. <br><br> BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C.; TRANSOCEAN LTD.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER, INC.; TRANSOCEAN HOLDINGS, LLC.; HALLIBURTON ENERGY SERVICES, INC.; AND SPERRY DRILLING SERVICES, A DIVISION OF HALLIBURTON ENERGY SERVICES, INC. <br><br>          Defendants. | MDL No. 2179 <br><br> SECTION: J <br><br> JUDGE BARBIER <br><br> MAGISTRATE SUSHAN |

## COMPLAINT FOR DAMAGES
### Rule 9 (h)

**NOW COMES PLAINTIFF**, *TOWN OF STATE LINE Government*, through undersigned counsel, who does respectfully allege, aver and represent as follows:

### Introduction

On April 20, 2010, a well blowout on the oil rig *Deepwater Horizon* in the Gulf of Mexico marked the beginning of what would become the most pervasive and devastating environmental disaster in the history of the United States. The uncontrolled blowout caused explosions and a raging fire aboard the *Deepwater Horizon*; after burning for two days, the rig

- 1 -

1075146.1



sank, commencing an oil spill of unprecedented proportion that interfered with, damaged, depleted, and destroyed offshore, marine and coastal environments in the Gulf of Mexico, Louisiana, Mississippi, Alabama, Texas, and Florida (the "Spill"). As a direct and foreseeable result of the Spill and its devastating impact on the marine and coastal environments, the oil and gas exploration, production and associated activities in the Gulf of Mexico were significantly interrupted, resulting in economic losses to Plaintiff and other companies and employees similarly situated. This Complaint asserts claims under the Oil Pollution Act of 1990 ("OPA"), seeking damages arising from the Spill and its environmental devastation and/or the General Maritime Law.

## PARTIES

### A.   Plaintiff

1.    Plaintiff, TOWN OF STATE LINE Government, is an independent political subdivision of the State of Mississippi, which suffered economic damages as a result of the Oil Spill and due to the Spill's environmental devastation.

### B.   Defendants

2.    Defendant BP Exploration & Production Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois. BP Exploration was a leaseholder and the designated operator in the lease granted by the former Minerals Management Service ("MMS") allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252, the location known as "Macondo" where the Oil Spill originated. BP Exploration was designated the "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. §2714. This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

1075146.1

3.      Defendant BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas.  BP America was the party to the Drilling Contract with Transocean Ltd. for the drilling of the Macondo well by the Deepwater Horizon vessel.  This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

4.      Defendant BP p.l.c. is a British public limited company with its corporate headquarters in London, England.  BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo.  BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division within BP Exploration and BP America, through vertical business arrangements aligned by product or service groups.  BP p.l.c.'s operations are worldwide, including in the United States.  Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally.  Plaintiff further adopts and incorporates by reference all jurisdictional allegations against BP p.l.c. set forth in Paragraphs 212-218 of the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010.*

5.      BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as "BP."

6.      Defendant, Transocean Ltd. is a Swiss corporation that maintains substantial U. S. offices in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. According to its Complaint and Petition for Exoneration from or Limitation of Liability, Transocean Ltd. was an owner, managing owner, owner pro hac vice,

and/or operator of the Deepwater Horizon.

7.      Defendant, Transocean Offshore Deepwater Drilling, Inc. is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Offshore is affiliated with Transocean Ltd. and was an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

8.      Defendant, Transocean Deepwater, Inc. is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Deepwater is affiliated with Transocean Ltd. and was an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

9.      Defendant, Transocean Holdings, LLC is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Holdings is affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean Offshore. Transocean Holdings is an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon and participated in the Deepwater Horizon's offshore oil drilling operations at the Macondo prospect, where the Spill originated. More specifically, Transocean Holdings is party to the contract with BP regarding the lease of the Deepwater Horizon for drilling operations in the Gulf of Mexico. On April 28, 2010, the U.S. Coast Guard named Transocean Holdings as a "Responsible Party" under the Oil Pollution Act for the surface oil spill resulting from the blowout by the Deepwater Horizon.

10.      Transocean Ltd.; Transocean Offshore Deepwater Drilling, Inc.; Transocean

-4-

Deepwater, Inc.; and Transocean Holdings, LLC are generally referred to herein collectively as "Transocean."

11.     Defendant, Halliburton Energy Services, Inc. is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations.

12.     Halliburton division Sperry Drilling Services (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations. "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

## JURISDICTION AND VENUE

13.     Plaintiff brings these claims pursuant to Federal general Maritime Law including/and/or the Oil Pollution Act of 1990 ("OPA"), 33 USC §2701, et seq.

14.     Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction."

15.     The claims presented herein are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiff hereby designates this case as an admiralty or maritime case, and requests a non-jury trial, pursuant to Rule 9(h).

16.     Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b) (the "OPA").

17.     Under Fed. R. Civ. P. 82, no allegation of venue is required for admiralty or maritime claims.  Moreover, prosecution and venue in this district is proper under 28 U.S.C. §1391 because Defendants do business herein, Plaintiff resides and does business herein, and the events or omissions giving rise to the claims asserted herein occurred in this district.  Venue is also proper pursuant to the OPA, 33 U.S.C. 2717(b), as the discharge occurred in this district. Venue is also appropriate in this district consistent with 28 U.S.C. §1407 and the 2010 Transfer Order of the Judicial Panel on Multidistrict Litigation.  *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010), and this Court's Pretrial Order No. 20 (Rec. Doc. 904), which allows plaintiff to directly file its complaints arising out of the Oil Spill in this District.

## FACTUAL ALLEGATIONS

18.     BP, Transocean and Halliburton are the "responsible parties" for the Oil Spill under OPA, 33 U.S.C. §2714.  Because of the strict liability of responsible parties for all damages due to and arising from the Spill and its environmental devastation, Plaintiff does not need to set forth factual allegations to support culpability.  Nonetheless, out of an abundance of caution, the factual background relating to the BP and Transocean Defendants' acts, omissions and failures set forth in Paragraphs 227-515 of the MASTER COMPLAINT, ANSWER, CLAIM, CROSS-CLAIM & 3RD PARTY COMPLAINT by Local Government Entities, Document 1510 filed in MDL No. 2179, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, are adopted and incorporated as if fully restated herein.

19.     The TOWN OF STATE LINE Government is located directly north of the Mississippi Gulf Coast, on the Alabama/Mississippi state line, and has the privilege to be located near the Chickasawhay River, which merges and becomes the Pascagoula River, which then

-6-

meets the Gulf of Mexico.  The Chickasawhay and Pascagoula Rivers are popular fishing and

tourism destinations.  STATE LINE is also located on U.S. Highway 45, and State Highways 42

and 57, which are major corridors to the Mississippi Gulf Coast.  A large majority of the

residents of the Town of STATE LINE were employed at the time of the spill on the Mississippi

Gulf Coast.

20.    The TOWN OF STATE LINE Government is engaged in the performance of

public services for the benefits of the citizens within its jurisdiction and residents of the state of

Mississippi.

21.    As a political subdivision of the state of Mississippi, the TOWN OF STATE

LINE Government budget funding comes from a vast group of different revenues: Ad Valorem

Taxes, Sales Taxes, Licenses, Permits, small percentages from Federal and State funds (less than

3%), Fees, Charges and Commission for Services and, Fines and Forfeitures. The funds are in

the majority from the local power to tax sales, real and taxable personal property, and other such

taxes, license and privilege fees, according to Mississippi Code Annotated § 21-17-5 and § 27-

65-75, and the code sections associated therewith

22.    On April 20th of 2010, the oil spill affected all the businesses in the state and

municipalities of Mississippi.  Due to the spill, STATE LINE residents' economic capacity was

substantially affected, causing a substantial reduction in sales and other taxes and fees. The

impact was also experienced on the sales of real property and on the value of all the existent real

properties in the area - those translated into reduced Ad Valorem taxes, which are also part of the

TOWN OF STATE LINE Government revenues.

23.    The Ad Valorem taxes are over real and taxable personal property and the amount

taxable depends on the value of the property; with the diminution of value caused by the spill the

amount received by TOWN OF STATE LINE Government budget and the extent of services to the public. This includes a variety of services, e.g., roads and drainage improvements - all areas essential to government in the Town.

24.     Plaintiff, TOWN OF STATE LINE Government, saw a significant effect on its budget and financial situation in the TOWN OF STATE LINE due to the severe impact that the Deepwater Horizon catastrophe had on the Town and its economy and living status after April 20, 2010.

### Rule 9 (h)

25.     As a direct and foreseeable consequence of the *Deepwater Horizon* disaster, the Secretary of the U.S. Department of Homeland Security declared the *Deepwater Horizon* incident a Spill of National Significance ("SONS") under the authority of the National Oil and Hazardous Substance Pollution Contingency Plan ("NCP") (40 CFR §300.323). The SONS declaration triggered the National Response Framework and the ensuing multi-jurisdictional response necessarily activated every single Emergency Support Function established by the federal disaster response framework to respond to the Oil Spill.

26.     On April 30, 2010, MMS and the U.S. Coast Guard ("USCG"), as a direct and foreseeable result of the Spill, issued a Joint National Safety Alert to all offshore operators and drilling contractors. This alert recommended that all operators and contractors: review the condition and operability of well control equipment (both surface and subsea) currently being used to ensure that it is capable of shutting in the well during emergency operations; review all rig drilling/casing/completion practices to ensure that well control contingencies are not compromised at any point while a BOP is installed on the wellhead; review all emergency shutdown and dynamic positioning procedures that interface with emergency well control

-8-

operations; inspect lifesaving and firefighting equipment for compliance with federal requirements; ensure that all crew members are familiar with emergency/firefighting equipment and that all personnel have been properly trained, drilled and exercised and are capable of performing in an emergency.

27.      Also on April 30, 2010, as a direct and foreseeable result of the Spill, the President of the United States directed the Secretary of the Interior to conduct a 30-day review of the Deepwater Horizon explosion and Oil Spill to determine what other precautionary measures and technologies should be required of the oil and gas industry to improve the safety of industry operations on the OCS.

28.      On May 7, 2010, MMS, as a direct and foreseeable result of the Spill and its environmental devastation, sent suspension letters to operators with active leases notifying them that leases would be suspended (including suspension of lessee payment/royalty requirements) to allow the Department to conduct its 30-day review.

29.      In response to the President's Directive and after reviewing available information about the causes of the Oil Spill, on May 27, 2010, Interior Secretary Salazar issued a report entitled *Increased Safety Measures for Energy Development on the Outer Continental Shelf* ("Safety Report").

30.      In the Safety Report, the Secretary recommended several immediate prescriptive requirements and a number of longer-term performance-related safety measures to be taken to improve the safety of offshore drilling.  In particular, the Safety Report targets the effectiveness of blowout preventers ("BOP"), and also calls for measures to promote the integrity of wells, to enhance well control, and to foster a culture of safety through operational and personnel management.

1075146.1

31.     Among the measures from the Safety Report to take immediate effect was compliance by all operators with the April Joint Safety Alert within 30 days—converting those recommendations to mandates. These measures were taken as a direct and foreseeable result of the Spill and its environmental devastation.

32.     On May 28, 2010, based on the Safety Report and its recommendations, which were the direct and foreseeable consequences of the Spill and its environmental devastation, the Secretary formally concluded in a Decision Memorandum that "offshore drilling of new deepwater wells poses an unacceptable threat of serious and irreparable harm to wildlife and the marine, coastal, and human environment . . . [and] that the installation of additional safety or environmental protection equipment is necessary to prevent injury or loss of life and damage to property and the environment."

33.     As a direct and foreseeable result of the Oil Spill and its environmental devastation, the Secretary in the Decision Memorandum, *inter alia*, directed the MMS to suspend certain well drilling activity in the OCS.  On May 30, 2010, MMS made effective a Notice to Lessees and Operators (NTL No. 2010-N04) that imposed a 6-month moratorium ("May Moratorium") on the drilling of deepwater wells in the Gulf of Mexico and Pacific regions of the OCS, in light of significant risks associated with drilling in deepwater absent implementation of the recommendations from the Safety Report on safety equipment, practices, and procedures

34.     Specifically, NTL No. 2010-N04 directed operators to cease drilling new deepwater wells in the Gulf of Mexico and the Pacific regions of the OCS.  It also prohibited drilling any wellbore sidetracks and bypasses.  Moreover, it halted spudding of any new wells.  It also notified lessees and operators that MMS would not consider any new permits for deepwater wells or related activities for six months.

-10-

1075146.1

35.      Consistent with NTL 2010-N04, the MMS, as a direct and foreseeable result of the Spill and its environmental devastation, also issued Suspensions of Operations to lessees and operators pursuant to 30 C.F.R. §250.172. The suspensions affected 33 active deepwater drilling rigs in the Gulf of Mexico.

36.      On the heels of its directive to implement the deepwater moratorium, MMS issued a second Notice to Lessees and Operators of Federal Oil and Gas Leases (NTL No. 2010-N05) on June 8, 2010, calling for seven new, increased safety measures for drilling permits on the OCS.  The recommendations applied to all activities (deepwater and shallow water) on the OCS, including the deepwater drilling activity suspended under NTL No. 2010-N04.  These actions were taken as a direct and foreseeable result of the Spill and its environmental devastation.

37.      On June 18, MMS issued a third Notice to Lessees and Operators of Federal Oil and Gas Leases (NTL No. 2010-N06) in direct response to the Oil Spill, BP's abysmal planning for a blowout and worst-case scenario, BP's failure to contain the Oil Spill and limit the Spill's environmental devastation, and BP's incapacity to adequately respond to the Spill.  NTL No. 2010-N06 required all operators to adhere to revised information requirements for exploration, development and oil spill response plans to include worst-case discharge and blowout scenarios

38.      On June 22, 2010, Judge Feldman of the United States District Court for the Eastern District of Louisiana, in response to a motion brought by a number of oil and gas drilling service industries, preliminarily enjoined the implementation and enforcement of the May Moratorium effectuated by the Department of Interior through MMS' NTL No. 2010-N04.

39.      In accordance with the Court's order, in June 2010 the Department of the Interior notified lessees and operators that the suspension orders they had received were of no legal force and effect and instructed agency personnel that the first moratorium was unenforceable.

-11-

40.     On July 12, 2010, the Secretary of the Interior issued a new decision memorandum finding that, as a direct and foreseeable result of the Oil Spill and its environmental devastation, certain drilling operations should be suspended and approvals of pending or future applications of specific drilling types should be frozen until November 30, 2010 ("July Moratorium").

41.     In particular, the Secretary found that, because the available response vessels, personnel and other resources were consumed with the Macondo Spill response, there was a direct, foreseeable, current, then-existing threat of further environmental devastation produced by exploration and drilling activities in the Gulf of Mexico.

42.     That same day, July 12, 2010, the Department of the Interior issued individual temporary suspension letters to each of the affected operators, implementing the July Moratorium. The July Moratorium also allowed for the possibility of the July Moratorium being lifted before November 30, 2010.

43.     With certain exceptions, the July Moratorium suspended drilling operations that relied on subsea BOPs or surface BOPs on floating facilities. The July Moratorium had no bearing on production activities; drilling operations that were necessary to conduct emergency activities; drilling operations necessary for completions or workovers; abandonment or intervention operations; or waterflood, gas injection, or disposal wells.

44.     The July Moratorium also instructed MMS to develop and gather information about safety, blowout containment capabilities, and oil spill response capability and provide a report to the Secretary regarding potential conditions for the resumption of drilling by October, 2010.

45.     On October 12, 2010, the U.S. Department of Interior announced that the federal

-12-

government would lift the July Moratorium. The October announcement indicated an early end to the July Moratorium, which had been scheduled to extend through the month of November 2010.

46.     On October 14, 2010, MMS published an Interim Final Rule (75 Fed. Reg. 63346), "Increased Safety Measures for Energy Development on the Outer Continental Shelf." The Interim Final Rule addressed certain recommendations from the Secretary to the President in the Safety Measures Report. The Interim Final Rule set forth new basic requirements for containment resources in its interim drilling safety rule, which incorporated many of the previously issued requirements contained in NTLs issued during the aftermath of the *Deepwater Horizon* explosion and the protracted Oil Spill response.

47.     In direct and foreseeable response to the Oil Spill and its environmental devastation, on November 8, 2010, Interior issued another Notice to Lessees and Operators, specifically requiring operators engaging in activities using subsea BOPs or surface BOPs on floating facilities to provide the Department with adequate documentation demonstrating that they have access to and can deploy resources to respond to another blow out or loss of well control, such as the kind experienced in the Oil Spill.

48.     On January 3, 2011, MMS notified 13 oil companies that they could resume previously approved exploration and production activities without submitting revised plans.

49.     The economic impacts of the Oil Spill and its environmental devastation affected individuals and businesses in various industries across the Gulf Coast OCS and the Pacific OCS.

50.     The Oil Spill and the foreseeable governmental response to a disaster of this magnitude, including the Moratoria imposed in direct response to the Oil Spill's devastation of the coastal and marine environments, have caused and will continue to cause a loss of revenue

-13-

for individuals and entities that rely on the use of the Outer Continental Shelf and its resources in connection with offshore deepwater drilling activities.

## CLAIM FOR RELIEF

51.     Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully restated here.

52.     Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against the Defendants as responsible parties under the Oil Pollution Act, 33 USC §2701, et seq., which holds responsible parties liable to plaintiffs for removal costs and damages arising out of the following:

   a)  Loss or Damage to Real or Personal Property

   b)  Subsistence Use;

   c)  Loss of Revenues;

   d)  Loss of Profits and/or Earning Capacity; and

   e)  Loss of Public Services.

53.     Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against all defendants identifying General Maritime Law causes of action and claims for relief relating to the following:

   a)  Negligence; and

   b)  Gross Negligence and Willful Misconduct.

54.     Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints and the Short Form Joinder filed on the same day as this complaint, against all defendants for Punitive Damages arising out of willful and wanton misconduct and/or gross negligence as alleged and described in the MDL Complaints.

55.     The Oil Pollution Act, 33 U.S.C. § 2701, *et seq.* (the "OPA"), imposes liability

-14-

upon a "responsible party for a... vessel or a facility from which oil is discharged...into or upon navigable waters or adjoining shorelines" for the damages that result from such incident as well as removal costs. 33 U.S.C. § 2702.

56.     BP, Transocean and Halliburton are strictly liable pursuant to 33 U.S.C. § 2702 for all damages due to or resulting from the Oil Spill and its environmental devastation.

57.     Defendants BP, Transocean and Halliburton are not entitled to limit its liability under 33 U.S.C. § 2704(a) because the Spill was proximately caused by their gross negligence, willful misconduct, or violation of applicable safety, construction or operating regulations. 33 U.S.C. § 2704(c).

58.     Moreover, in its "Statement of BP Exploration & Production Inc. Re Applicability of Limitation of Liability Under Oil Pollution Act of 1990," filed on October 19, 2010, BP waived the statutory limitation on liability under the OPA.

59.     As a direct result of the Spill and its environmental devastation, Plaintiff is entitled to recover from BP, Transocean and Halliburton for such damages in amounts to be determined by the trier of fact.

60.     OPA imposes strict liability for *all* damages due to and/or resulting from the Spill and its environmental devastation. Therefore, the concepts of "superseding" or "intervening" cause are not applicable. In the alternative, the Moratoria were not "intervening" or "superseding" causes with respect to damages arising from the Oil Spill. The Moratoria, rather, were direct and foreseeable consequences of the environmental havoc wreaked by a spill designated as one of National Significance.

61.     The size, scope, and breadth of the Spill's environmental and economic damages caused foreseeable actions by the federal and state governments, including the closures of

-15-

1075146.1

massive portions of the Gulf to fishing and shipping.  The spill's destructive and contaminating qualities directly affected all industries in the Gulf and the federal agencies that oversee them. The Moratoria was enacted by one such federal agency within its authority to ensure the safety by affecting very narrow activities of an industry under its control.

### PRESENTMENT

62.    Although Plaintiff contends Presentment is unnecessary for and inapplicable to these facts for Political Subdivisions, to the extent required by law, and/or by consent and/or stipulation by BP, Plaintiff has satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b), by the submission of their claims to the BP OPA Claims Program, the Deepwater Horizon Court-Supervised Settlement Program and/or the Gulf Coast Claims Facility ("GCCF"), as BP's agents and/or designees.

63.    In particular, on January 18, 2013, a Claim, fulfilling any applicable requirements for Presentment was submitted, including a "sum certain" and a brief description of the claim as well as some supporting documentation by overnight mail and email to the BP OPA Claims Program in Houston, Texas, Governmentclaims@BP.com and bpclaimsprogram@bp.com, respectively.

64.    BP responded with a denial letter on April 15, 2013.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the BP and Transocean Defendants, jointly, severally, and *in solido,* as follows:

　　　　　　(a)    economic and compensatory damages for loss of income and/or loss of income opportunities and/or earning capacity in amounts to be determined at trial;

　　　　　　(b)    punitive damages;

-16-

(c)     pre-judgment and post-judgment interest at the maximum rate allowable

        by law;

(d)     reasonable claims preparation expenses;

(e)     attorneys' fees;[1]

(f)     the costs of litigation;

(g)     such other and further relief as the Court deems just and appropriate.

Dated:  April 19, 2013

Respectfully submitted,

_s/Kristopher W. Carter_____
KRISTOPHER W. CARTER (MSB#101963)
DENHAM LAW FIRM, PLLC
424 Washington Avenue
Ocean Springs, MS 39564

---

[1] Although this Court has dismissed similar claims for attorneys' fees asserted by Plaintiffs under general maritime law in the operative B1 Master Complaint. (Rec. Doc. 1128), Plaintiff realleges them here out of an abundance of caution to preserve them for potential reconsideration, appeal, or other resolution.

-17-

Fax: (228) 875-1234
Email: kris@denhamlaw.com

LEE TURNER
TURNER LAW GROUP, PLLC
P.O. Box 1492
Leakesville, MS 39451
Phone: (601) 394-5008
Fax: (601) 394-2986
lturnerlaw@gmail.com

-18-

# IN RE: OIL SPILL by "Deepwater Horizon"

| MDL 2179 | SECTION: J | JUDGE CARL BARBIER |
|---|---|---|

## MDL 2179 Counsel Contact Information Form
### Please print or type below.

### ATTORNEY INFORMATION

| Check One | [X] Plaintiff Counsel | [ ] Defense Counsel | [ ] Third Party Defense Counsel | |
|---|---|---|---|---|
| Last Name | First Name | | Middle Name/Maiden | Suffix |
| Carter | Kristopher | | W. | |

| Bar Number | E-mail Address |
|---|---|
| Mississippi Bar No. 101963 | kris@denhamlaw.com |

**Party Representing**
Town of State Line, Mississippi

| Direct Dial No. | Cell Phone | Pager |
|---|---|---|
| (228) 875-1234 | | |

| Secretary Name | Paralegal Name |
|---|---|
| LaTasha Jackson | Suzanne McCreedy, email: suzanne@denhamlaw.com |

### LAW FIRM INFORMATION

**Firm Name**
Denham Law Firm, PLLC

| Address | Mailing Address: Post Office Drawer 580 |
|---|---|
| 424 Washington Avenue | Ocean Springs, MS 39566-0580 |

| City | State | Zip |
|---|---|---|
| Ocean Springs | MS | 39564 |

| Phone | Fax |
|---|---|
| (228) 875-1234 | (228) 875-4553 |

Other members of firm involved in this litigation:

| Signed | May 24, 2013 |
|---|---|
| | Date |

PLAINTIFF'S EXHIBIT
B

# DENHAM LAW FIRM, PLLC

ATTORNEYS AT LAW

EARL LAMAR DENHAM
KRISTOPHER W. CARTER *
ALBERT R. JORDAN, IV
WILLIAM B. ATCHISON

424 WASHINGTON AVENUE
OCEAN SPRINGS, MS 39564

POST OFFICE DRAWER 580
OCEAN SPRINGS, MS 39566-0580

228.875.1234 Telephone
228.875.4553 Facsimile

JAMES W. BACKSTROM
1942 - 2006

BOBBY G. O'BARR, SR.
1932 - 2006

THELMA S. ZINNER
1922 - 2001

\* Also admitted in Alabama

www.denhamlaw.com

## ACKNOWLEDGEMENT

I, _Kristopher Carter_, a duly appointed agent, employee or representative of Town of State Line, Mississippi, do hereby acknowledge that this day I received the entire file containing pleadings, correspondence, discovery, and documents and things from the offices of Denham Law Firm, PLLC located at 424 Washington Avenue, Ocean Springs, Mississippi, relating to the following case: Town of State Line, Mississippi Deepwater Horizon Oil Spill - Business Economic Loss Claim; Case 2:13-cv-01780-CJB-SS. Denham Law Firm, PLLC is hereby released from any further duty or responsibility in representing Town of State Line, Mississippi against Deepwater Horizon Oil Spill in the above referenced matter.

ON THIS the _27th_ day of _September_, 2013.

_____
Signature

_Kristopher Carter_
Printed name

WITNESS:

_____
Signature

_Suzanne K. McCready_
Printed name


PLAINTIFF'S
EXHIBIT
C

# Denham Law Firm, PLLC.     Client Statement Transactions

P.O. Box 95
State Line, MS 39362

Deepwater Horizon Oil Spill - 13179-001

| Date | | Description | | | |
|------|---|------------|---|---|---|
| 4/19/2013 | | Kristopher W. Carter - Filing Fee Reimbursement | 1.00 | 350.00 | 350.00 |
| 4/19/2013 | ydr | Preparation of civil cover sheet and file complaint and short form | 1.20 | 75.00 | 90.00 |
| 4/22/2013 | ydr | Preparation of 3 summons | 0.50 | 75.00 | 37.50 |
| 4/23/2013 | ydr | Receipt and review of Louisiana secretary of state website, US district court registered agents | 1.50 | 75.00 | 112.50 |
| 5/6/2013 | ydr | Receipt and review of ECF filing place in matter add contacts to matter | 0.10 | 75.00 | 7.50 |
| 5/24/2013 | skm | Preparation of counsel contact form and review of PreTrial Order, sent e-mail to liason counsel for Plaintiffs and Defendants with completed form. | 1.50 | 75.00 | 112.50 |
| 6/10/2013 | ydr | Miscellaneous Lexis Nexus training | 0.90 | 75.00 | 67.50 |
| 8/20/2013 | skm | Receipt and review of incoming pleadings for inclusion into file. | 0.70 | 75.00 | 52.50 |
| 9/26/2013 | skm | Preparation of notice of lien. | 0.20 | 0.00 | 0.00 |
| 6/25/2015 | mcw | Review of matter to determine status at request of ELD and begin preparation of attorney's lien to Matt's signature to be filed in USDC Eastern Distrist of LA | 0.30 | 75.00 | 22.50 |
| 6/26/2015 | mcw | Conference with Matt re matter and need to file attorney's lien per procedure set forth in MDL 2179 | 0.10 | 75.00 | 7.50 |
| 6/26/2015 | mcw | Review of procedure for filing through lexis nexis file & service and USDC Eastern District of LA per procedures set up in MDL 2179 and preparation of Notice of Attorney's Lien;  gave to Matt to review prior to e-filing | 0.60 | 75.00 | 45.00 |
| 6/26/2015 | mcw | Miscellaneous preparation of Notice of Attorney's Lien for e-filing;  e-file same through Lexis/Nexis File & Serve and MEC for USDC Eastern LA;  Receipt and review of transaction receipt for efiling from File and Serve;  drop into matter | 0.70 | 75.00 | 52.50 |
| 7/1/2015 | SP | Research on how to assert an attorney's lien in multi-district litigation. | 0.75 | 0.00 | 0.00 |
| 7/2/2015 | SP | Research on how to assert an attorney's lien in multi-district litigation. | 0.75 | 0.00 | 0.00 |
| | | Grand Total | 10.80 | | 957.50 |

7/2/2015 12:02:31 PM

Page:  1

PLAINTIFF'S EXHIBIT