LAW OFFICES
## DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS
*(A Professional Law Corporation)*
101 WILSON AVENUE
P.O. BOX 3017
HOUMA, LOUISIANA 70361

JAMES M. FUNDERBURK
SIDNEY C. SUNDBERY
C. BERWICK DUVAL, II
CLAYTON E. LOVELL
STANWOOD R. DUVAL
KATHRYN W. RICHARD

CLAUDE B. DUVAL
(1914-1986)

Area Code 985
Telephone 876-6410
Fax 851-1490
www.duvallawfirm.com
(see website for e-mail addresses)

OF COUNSEL
WILLIAM S. WATKINS

October 29, 2013

In Re:   Deepwater Horizon Claims Center
         Claimant: Apache Louisiana Minerals LLC
         Claimant ID: 100176960
         En Banc Submission

## EN BANC MEMORANDUM ON BEHALF OF
## APACHE LOUISIANA MINERALS LLC

This En Banc Memorandum is submitted on behalf of Apache Louisiana Minerals LLC ("ALM"). ALM has received several Eligibility Notices, and BP has appealed some of them, claiming that ALM is an "Excluded Entity" pursuant to the oil and gas industry exclusion within the Deepwater Horizon Economic and Property Damages Settlement Agreement (the "Settlement Agreement").[1] The claimed exclusion from the Settlement Agreement is the sole basis for BP's appeal. For the reasons outlined by ALM to the Settlement Administrator (which were accepted)[2] and as further set forth herein, ALM is not an excluded entity and is instead a proper member of the Settlement Agreement class as a wetlands landowner in Louisiana. Importantly, BP has previously acknowledged that ALM is not an excluded entity, by agreeing to and paying other wetlands claims of ALM in the Settlement Agreement (Claim Numbers 174553 and 174555).

The issues have already been briefed by both parties in the various claims, and ALM expressly adopts all of its previous memoranda filed. However, since this is now to be considered En Banc, ALM will reiterate its arguments previously set forth in the other appeals.

### I.   FACTS:

ALM is not an excluded entity as defined in the Settlement Agreement. ALM's property in Cameron, Terrebonne, Lafourche and Plaquemines parishes was directly impacted by the Macondo spill, and some of ALM's coastal property was literally covered in oil. ALM is one of

---

[1] BP points out that ALM has been awarded $42.5 million in compensation. The amount awarded has not been appealed and is irrelevant. ALM has only received $157,234.60; however, a significant portion of ALM's property was covered with BP's oil.

[2] Shortly after ALM filed its various claims, BP attempted to have the Claims Administrator rule that ALM was an excluded entity. Prior to issuing the Eligibility Notices, the Claims Administrator asked ALM to respond to BP's position (whether or not ALM is an excluded entity). After receiving the submissions of the parties, the Claims Administrator correctly ruled that ALM is not an excluded entity.

DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS

the largest coastal landowners in Louisiana, having title to approximately 267,000 acres of property in the parishes of Cameron, Vermilion, Iberia, Terrebonne, Lafourche and Plaquemines. Title to the heart of ALM's property in Terrebonne and Lafourche parishes can be traced back to the early 1900's when the lands were separated from the public domain. The remainder of the property came into ALM's possession through various acquisitions. ALM's sole business is the management of its property. ALM's staff of eleven people manages ALM's property, with ten working out of its home office in Houma, Louisiana and one operating out of a field office in Cameron Parish.

ALM has a very active surface leasing program whereby small sections of the lands are leased to various persons for recreational and commercial activities, such as camping, hunting, fishing, trapping and alligator hunting. One of the most interesting surface management programs on ALM's lands is the alligator ranching program. ALM is a licensed alligator farmer and is actively engaged in the Louisiana alligator industry through both the harvest of wild alligators and the collection of alligator eggs. ALM has been issued permits from the Louisiana Department of Wildlife & Fisheries to collect alligator eggs from its property. Approximately 30,000 eggs are collected annually from ALM's property, and in addition, the Louisiana Department of Wildlife & Fishery issues approximately 1,725 tags each year for the harvest of wild alligators from ALM's lands. ALM also works with the State of Louisiana and the respective parishes in coastal restoration, conservation and various governmental surface projects. Details of ALM's activities with its property are more fully set forth in an affidavit from its General Manager, Timothy J. Allen, attached hereto as Exhibit "A." (the "Allen Affidavit").

ALM is a subsidiary of Apache Corporation ("Apache"), but ALM operates a separate and distinct business independently of Apache, with its own management and staff. ALM files a consolidated tax return with Apache, and for that reason shares its NAICS code (21111). Significantly, that NAICS code is not an excluded code nor is it a code subject to review. See document ID number 9918182, attached hereto as Exhibit "B".

In its effort to avoid ALM's valid claim, BP is attempting to confuse ALM with Apache. However, the record is clear that the property at issue in the Eligibility Notice is owned and operated by ALM. The facts clearly demonstrate that ALM is a major coastal landowner in Louisiana that has suffered direct impact by oil as a result of the Macondo Well explosion. The Allen Affidavit demonstrates that ALM is an active Louisiana coastal landowner whose sole focus is on properly utilizing and preserving its property. The facts simply do not support BP's argument that ALM is not a class member, nor is that position supported by law or the Settlement Agreement as set forth below.

DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS

## II. THE SETTLEMENT

**1. It is the responsibility of the Settlement Program (including the Appeal Panelists) to faithfully apply the terms of the Settlement Agreement.**

It is important to recognize that the Settlement Agreement constitutes a compromise of disputed claims between members of the settlement class and BP. Even more importantly, BP itself negotiated and agreed to the terms of the Settlement Agreement. The terms of the Settlement Agreement are specific to the settlement and are not necessarily tied to the Federal Rules of Evidence, Generally Accepted Accounting Principles (GAAP), or other State, Federal or other legal requirements, guidelines, or rules. The terms of the Settlement Agreement reflect a compromise that is the product of eight months of meticulous negotiations, and further discussion and consideration by and with the applicable parties, the Claims Administrator, and in some cases the Court. It is the responsibility of the Settlement Program (including the Appeal Panelists) to faithfully apply the terms of the Settlement Agreement. *See* SECTION 4.3.1 ("The Claims Administrator shall ... faithfully implement and administer the Settlement, according to its terms and procedures"); SECTION 6.4 ("the Appeal Panelist or Appeal Panel shall ... enforce compliance with this Agreement as approved by the Court").[3]

**2. ALM is a Class Member.**

The appeal process is expressly provided for and governed by the terms of the Settlement Agreement. The Settlement Agreement, as approved by the United States District Court for the Eastern District of Louisiana, defines what entities are excluded from the settlement class. Specifically, Section 2 of the Settlement Agreement sets forth entities that are excluded from the Economic & Property Damages Settlement Class definition. Paragraph 2.2.4.5. of the Settlement Agreement specifies certain Oil and Gas Industries that are excluded. The paragraph defines those certain Oil and Gas Industries as follows:

> "Oil and Gas Industry, *as identified in the NAICS codes listed on Exhibit 17*, which includes by way of example, firms engaged in: extracting crude petroleum, natural gas or other hydrocarbons; drilling wells; preparing, maintaining or constructing petroleum or natural gas well-sites or other mineral extraction sites; mining; maintaining or constructing petroleum or natural gas pipeline or distribution facilities; pipeline distribution of crude petroleum, refined petroleum, oil or natural gas; petroleum or natural gas refining or other mineral refining and/or manufacturing; manufacturing petroleum lubricating oil and grease, petrochemical products, or other petroleum and coal products or chemical products derived from extracted minerals; merchant wholesaling of

---

[3]Under the "Baseball Rules" the Appeal Panelist or Panel must ultimately, in enforcing the terms of the Settlement Agreement, "award the Claimant either the Final Proposal by the Claimant or the Final Proposal by the BP Parties but no other amount." SECTION 6.2.

3

construction and mining (except oil well) machinery and equipment; wholesale distribution of oil well machinery, equipment and supplies; wholesale distribution of petroleum, petroleum products, other extracted minerals, chemical products produced from extracted or refined minerals, petroleum bulk stations and terminals, petroleum and petroleum products merchant wholesalers." (Emphasis added.)

ALM does not, by any stretch of the imagination, fit the definition of any Oil and Gas Industry that is excluded. As stated above, ALM is a land owner which manages its property and is not engaged in the activities of the oil and gas industry as set forth in paragraph 2.2.4.5. Moreover, paragraph 2.2.4.5. further identifies the excluded industry by NAICS codes listed on Exhibit 17 to the Settlement Agreement. As stated above, ALM does not have its own NAICS code because it files a consolidated tax return with its corporate parent, Apache. But even then, Apache's NAICS code is *not* listed on Exhibit 17 and is *not* an excluded code.

ALM was formed years before the Macondo spill. ALM operates for the express purpose of managing the property it owns in Louisiana. ALM's staff is housed in Houma, Louisiana, and manages property in six Louisiana parishes. ALM is operated separately from its corporate parent and has its own separate employees and business.[4]

The business of ALM has been outlined by affidavit signed by ALM's property manager, Timothy Allen. Tim Allen's affidavit has not been rebutted. In short, BP's entire response is an attack on Apache; however, Apache is not the claimant. ALM is the claimant, and it is clearly not an excluded oil and gas entity. The Settlement Agreement simply does *not* provide—as BP would apparently read into it—that all subsidiaries of an entity engaged in the Oil and Gas Industry are excluded. It does *not* provide that all claimants with NAICS codes close to the ones listed on Exhibit 17 are excluded. It does *not* provide that all NAICS codes in the same group as other listed NAICS codes are excluded. The fact of the matter is the Settlement Agreement constitutes a negotiated instrument, approved by the court that now cannot be expanded to include terms BP *wishes* were included but simply are not there.

ALM's NAICS Code is not listed on Exhibit 17. BP argues that ALM's NAICS Code *should* be excluded, but in so arguing BP actually proves ALM's point. BP is forced to admit that the NAICS is *not* listed on Exhibit 17. Exhibit 17 does not provide that any particular code can be expanded to include codes that are not listed. BP argues that since sub codes of ALM's code are listed, the intent of the agreement is that ALM's code should also be excluded. This is simply not the case. The Settlement Agreement is quite specific, and the Court supervising the BP Deepwater Horizon Settlement has continually held that BP cannot re-write the settlement agreement to its benefit. Exhibit 17 is replete with examples whereby some codes within a

---

[4] The wetlands class representative for the class action suit is a corporation similar to ALM. BP agreed to and did not appeal the class certification, therefore, has consented that large land holding companies such as ALM are part of the class.

4

particular industry are listed and others are not. Clearly, much thought went into what codes should be included and what codes should not. Quite simply, ALM's code was not included and cannot be added by fiat, long after the fact.

More importantly, ALM's business does not include any of the examples listed in Section 2.2.4.5. The Allen Affidavit spells out clearly what the business of ALM is and is not. That Allen Affidavit stands unchallenged by any opposition affidavit or credible evidence.

Notwithstanding BP's repeated extenuated attempts to place Apache's business on ALM, the law is very clear that the separateness of a parent from its subsidiaries is to be recognized and respected. *Associated Hosp. Services, Inc. v. State, Dept. of Revenue and Taxation*, 588 So.2d 356, 359 (La. 1991). Louisiana courts have expressed a strong policy in favor of recognizing a parent and subsidiary as separate companies, and one will rarely be held accountable for the acts and knowledge of the other. *CNH Capital America, LLC v. Wilmot Farming Ventures, LLC*, 2008 WL 2386166 *6 (W.D. La 2008). The Securities and Exchange Commission rules require a parent to include a list of its subsidiaries in its annual report. The reference to ALM in Apache's annual report is a result of the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934. Apache's compliance with the Securities and Exchange Act of 1934 should not be used to the detriment of ALM. *See Hollingsworth v. Steven Garr Logging*, 110 So. 3d 1219, 1226 (La. App. 2 Cir. 2/27/13).

Pursuant to the memorandum issued by Patrick A. Juneau, Claims Administrator, to Class Counsel and BP dated October 10, 2012, the Claims Administrator is charged with the duty to "faithfully implement and administer the Settlement, according to its terms and procedures, for the benefit of the Economic Class, consistent with this Agreement and/or as agreed to by the Parties and/or approved by the Court." (Section 4.3.1 of the Settlement Agreement.) In that Memorandum, Mr. Juneau made it clear that he would not rewrite the Settlement Agreement, nor would he insert terms and conditions into the Settlement Agreement that are not there. But that is exactly what BP's appeal would have him—and now, the Appeal Panelists—do. Quite simply, ALM is not an excluded entity and its NAICS code is not excluded. Moreover, ALM does not engage in any activity which could possibly be considered excluded pursuant to the Settlement Agreement. As such, it would be completely improper and adverse to the terms of the Settlement Agreement to find otherwise.

3. **BP argues that "Claimant's parent admits in its public filings that Claimant is engaged in the very types of activities that the Settlement Agreement defines as oil and gas activities."**

BP has attached several documents which are not verified and not part of the record, and then BP uses complete hearsay within those documents to support its argument. Pursuant to Rule 13 of the Rules Governing the Appeals Process, the documents attached by BP are

5

improper and not part of the record, therefore should not be considered. Alternatively, if the documents are allowed, pursuant to Rule 13(h), ALM argues the following.

BP's main focus and argument is directed toward Apache, however, Apache has not filed a claim. ALM, a separate and distinct legal entity, has. BP points to the annual report of Apache for the fiscal year ended December 31, 2012 (the "Annual Report"), in which ALM is listed as a subsidiary of Apache, in an attempt to place the oil and gas activities of Apache on ALM. The Annual Report details Apache's business in exploring for, developing and producing natural gas crude oil and natural gas liquids. The fact that ALM is a subsidiary of Apache does not take away from the fact that ALM runs a separate and distinct business as a land owner which manages its property—nor does it mean that ALM is an excluded member of the class under the Settlement Agreement.

4.  **Response to BP's argument that "[W]hen Claimant acquired the property at issue in this Claim, it agreed to develop, maintain, and operate the wells located on the property at issue...."**

BP is correct that the conveyance document from December 1, 2002 for portions of the property at issue required the buyer (Apache North America, Inc. as predecessor to Apache) to act with reasonable and prudent business judgment with respect to the purchased properties. BP fails to mention that such conveyance document states that any such operations on the lands are to be conducted pursuant to the applicable operating agreement. Importantly, Apache—and not ALM—is a party to any such operating agreements. The subsequent assignment from Apache North America, Inc. to ALM on March 1, 2004 of such properties is subject to the December 1, 2002 conveyance but again does not place operational requirements on ALM. Again, BP is attempting to confuse Apache with ALM. While Apache may have been excluded, it is clear ALM, the claimant herein, is not.

5.  **BP next references the Apache December 17, 2002 news release, the Apache 2002 Annual Report, the Apache 2003 Annual Report and the Apache website to show that the ALM properties are used in connection with oil and gas activities.**

The referenced Apache December 17, 2002 news release referenced producing wells and seismic imaging which are maintained and operated by Apache—not ALM. There are no references to ALM developing, operating or producing oil and gas from the subject properties in any of the materials referenced by BP. BP is simply trying to create the impression that ALM and Apache are the same entity. However, courts have generally recognized and respected the separateness of a parent and subsidiary. *Horseshoe Entertainment v. Lepinski*, 923 So.2d 929, 935-36 (La.App. 2 Cir. 2006); *Town of Haynesville, Inc. v. Entergy Corp.*, 956 So.2d 192, 198 (La.App. 2d Cir. 2007).

DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS

6. **Response to BP's argument that ALM advertises itself as an oil and gas company and identified itself as a member of the "Oil & Gas" industry with the Houma Chamber of Commerce.**

Again, none of this is in the record, and is rank hearsay, however, even if allowed, the argument is without merit. The oil and gas category with the Houma Chamber of Commerce is a general category which may involve different types and degrees of oil and gas involvement. As provided in the Original Memorandum, ALM has an active surface leasing program (as do most all Louisiana coastal landowners) and ALM also provides oil and gas mineral leases on its lands. Leasing of lands for oil and gas exploration does not constitute an excluded activity, and does not exclude ALM from the claim. Instructively, ALM is not listed in the Oil & Gas Exploration and Production category of the Houma Chamber of Commerce.

7. **BP argues that "Claimant is a member of the Louisiana Oil & Gas Association."**

As stated under item 6 above, ALM provides surface leases and mineral leases covering its lands. Consequently, it makes sense for ALM to receive periodic updates of decisions being made by the legislature which could affect ALM's business as a landowner. It is important to note that Apache—not ALM—is listed under the Exploration and Production section of the Louisiana Oil & Gas Association. Certainly, membership in organizations such as the Chamber of Commerce and LOGA does not exclude ALM from the class. To construe otherwise would require an extremely tortured reading of the Settlement Agreement.

### III. BP is estopped from claiming ALM is not a Class Member as it has already admitted that ALM is a Class Member in claim numbers 174553 and 174555.

BP has previously accepted and paid ALM's wetlands property claims and therefore has agreed that ALM is not an excluded entity under the Settlement Agreement. For example, ALM filed a claim regarding property located in several parishes, bearing claimant ID number 100176960. The individual parcels of property were segregated by the Claims Administrator into several different Claim ID numbers. As a particular parcel of property was approved or not approved, an Eligibility Notice was issued by the Claims Administrator. For one parcel of property in Plaquemines Parish, an Eligibility Notice has been issued bearing Claim ID number 174553.[5] BP accepted and did not in any way challenge the Eligibility Notice. ALM subsequently signed a release as required, and delivered it to the Claims Administrator.[6] Therefore, ALM has been accepted as a Class Member by the Claims Administrator and by BP and *has been paid* as a class member.[7] BP cannot now try to change the rules and declare ALM not to be a Class Member when ALM has already executed a release in favor of the Claims

---

[5] Document ID Number 11323695.
[6] Document ID Number 12118116.
[7] Check No. 01032059 in the amount of $141,484.60 and check no. 01032060 in the amount of $15,750.00, are attached hereto as Exhibit "C".

7

Administrator and BP for monies received within the Settlement Program. BP cannot now, retroactively, declare ALM is not a Class Member after rights have vested, for the reasons set forth below.

BP's appeal on the basis of its excluded class argument is further defeated as *res judicata*. Its prior acceptance of Claim Numbers 174553 and 174555 now precludes BP from arguing issues that could have been previously raised. *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009). Additionally, principles of waiver and estoppel further prevent BP from now arguing that ALM is an excluded member from the Settlement Agreement class. Waiver occurs when a party has an existing right with knowledge and knowingly relinquishes such right or acts so inconsistent with such right as to induce a reasonable belief that the right has been relinquished. *Steptore v. Masco Constr. Co.*, 643 So. 2d 1213, 1216 (La. 1995). Similarly, estoppel precludes a party from taking a position contrary to his prior acts, admissions, representations or silence. *Morris v. Friedman*, 663 So.2d 19, 25 (La. 1995). Accordingly, BP is limited by the principles of waiver and estoppel from now claiming that ALM is an excluded member of the Class under the Settlement Agreement after previously accepting ALM's Claim Numbers 174553 and 174555.

If BP were to win this appeal then BP could be allowed to almost completely escape responsibility for its actions from the BP Deepwater Horizon spill by agreeing to pay a small claim within the settlement, and then argue that the release of that claim forecloses all other claims outside of the settlement. Such brinkmanship results in an untenable result and cannot be what the settlement agreement contemplated. BP and the Claims Administrator have already accepted ALM as a class member; they have accepted ALM's release and have paid two of ALM's claims pursuant to the Settlement Agreement. How can BP now claim ALM is not a class member? It simply cannot.

### IV. Conclusion

As set forth in the Allen Affidavit, ALM is one of the largest private owners of coastal wetlands in Louisiana. These wetlands were directly impacted by BP's oil. A Settlement Agreement was agreed to by BP and approved by the Court. The wetlands class representative in that suit is a large corporate landowner similar to ALM. ALM has been accepted as a Class Member by the Claims Administrator and BP in two of its claims, but now BP wants to retroactively exclude ALM from the settlement for its own reasons. ALM is not an excluded oil and gas entity, nor is its NAICS code excluded. There is absolutely no basis to find that ALM is not a member of the class.

DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS

Respectfully submitted:

DUVAL, FUNDERBURK, SUNDBERY,
LOVELL & WATKINS

BY: _____
C. BERWICK DUVAL, II (5109)
STANWOOD R. DUVAL (27732)
101 Wilson Avenue
Post Office Box 3017
Houma, Louisiana 70361
Phone: (985) 876-6410
Fax: (985) 851-1490
Email: berwick@duvallawfirm.com
Attorneys for Apache Louisiana Minerals LLC

STATE OF LOUISIANA

PARISH OF TERREBONNE

### AFFIDAVIT

Before me, the undersigned Notary Public, personally came and appeared:

**Timothy J. Allen**

who declared, from his own personal knowledge as follows:

1.

I reside in Lafourche Parish, Louisiana and am the General Manager for Apache Louisiana Minerals LLC ("ALM").

2.

ALM is one of the largest coastal landowners in Louisiana, having title to approximately 267,000 acres of fee property in the parishes of Cameron, Vermilion, Iberia, Terrebonne, Lafourche and Plaquemines. The properties are managed out of the ALM office which is situated on a 160 acre tract of land located between Bayou LaCarpe and the Houma Navigation Channel located in Houma, Louisiana. A staff of eleven people provides management of the fee lands, with ten working out of the Houma office and one operating out of a field office in Cameron Parish.

Title to the heart of the property (180,000 acres) in Terrebonne and Lafourche parishes can be traced back to the early 1900's when the lands were severed from the public domain. The remainder of the property came into possession through various acquisitions.

There are approximately 425 miles of perimeter property boundary lines associated with these properties. On an annual basis these lines are inspected, cleaned of vegetative growth and



debris, resurveyed as needed and reposted to ensure proper documentation to maintain possession and ownership.

3.

ALM has a very active surface leasing program whereby small sections of the lands are leased to various persons for recreational and commercial activities. The summary below shows the level of surface lease activity:

| Type of Lease | Number |
| --- | --- |
| Campsite | 244 |
| Hunting | 170 |
| Grazing | 4 |
| Deer | 5 |
| Recreational Fishing | 1 |
| Trapping | 39 |
| Crabbing | 24 |
| Oyster | 4 |
| Alligator | 26 |
| Misc. Surface Leases | 143 |

One of the most interesting surface management programs on ALM lands at present is the Alligator ranching program. ALM is a licensed Alligator farmer and is actively engaged in the Louisiana alligator industry through both the harvest of wild alligators and the collection of alligator eggs. ALM has been issued permits from the Louisiana Department of Wildlife and Fisheries (LDWF) to collect alligator eggs from the fee lands. An average of approximately 30,000 eggs is collected annually from the property. In addition, the LDWF also issues approximately 1,725 tags for the harvest of wild alligators from the fee lands. These tags are filled by ALM's alligator hunting lessees on a percentage basis.

ALM is also actively engaged in the harvest of Nutria which can cause serious wetland impacts if left unchecked. ALM is a participant in the Coastal Wetland Planning Protection and

Restoration Act (CWPPRA) Nutria Bounty Program whereby ALM trapping lessees harvest as many of these non-native rodents as possible from the property.

ALM has a long history of marsh conservation projects. It has over 100 water control structures on its properties which were installed to retard rapid tidal fluctuations and limit interior marsh loss. ALM has also been engaged in a self-funded shoreline protection project at Lake DeCade in Terrebonne Parish for nearly fifty years, which involves the repair/refurbishment of nearly ten miles of lake shore on an annual basis to prevent the seasonally saline waters of the lake from reaching the fragile interior marshes surrounding this lake. Vegetative plantings are also part of ALM's surface management program. ALM's staff routinely inspects, monitors and accumulates various data (water level, salinity, turbidity, etc.) for many marsh conservation projects on its fee properties, as per permit conditions issued by the Louisiana Department of Natural Resources and/or the Army Corps of Engineers.

Portions of ALM property are covered by intensely managed hydrologic management projects. These projects seek to limit the saltwater intrusion in certain areas while enhancing the freshwater introduction into these hydrologic units. Projects of this caliber require the installation and maintenance of water control structures (both fixed crest and variable crest weirs) and perimeter levee systems. Seasonal operation/manipulation of the structures is required by permit conditions to achieve the management objectives such as holding additional water for wintering waterfowl, water drawdown to enhance vegetation grown, salinity intrusion control, etc. These projects have been either self-funded, or built in conjunction with restoration partners such as Ducks Unlimited, the Louisiana Coastal Protection and Restoration Authority, or other entities.

ALM has also partnered with federal and state agencies, through the CWPPRA program, to implement large-scale restoration projects on the fee lands. Examples of these CWPPRA projects include Mud Lake Hydrologic Restoration (CS-20), Holly Beach Sand Management (CS-31), Cameron Parish Shoreline Protection (CS-33), Oaks-Avery project (TV-13a), Penchant Basin Plan (TE-34a), Brady Canal Hydrologic Restoration Project (TE-28), Lake DeCade Freshwater Introduction Project (TE-39), Lake Mechant Land Bridge Project (TE-44), Terrebonne Bay Shore Protection Demo (TE-45), etc.

On occasion, mineral leases are granted by ALM to third parties to explore for minerals on its property, as is typical with most coastal landowners in Louisiana. Pursuant to a typical lease, ALM is granted a royalty on production, if any. In addition to administering the surface lease program, the ALM staff is heavily involved with monitoring the activities of any mineral lessees, pipeline companies, construction contractors, seismic companies, university and governmental research initiatives, and surface lessees to insure that they adhere to company policies regarding surface use of the land. Annual maintenance practices include selecting and implementing dredging equipment to perform work on existing levees, spoil banks and water control structures to ensure the continued success of Apache's surface water management programs and to prevent erosion of the marshlands.

4.

The ALM staff consists of two registered professional land surveyors, drafting/GIS technicians, field survey personnel and adequate support personnel.

5.

ALM does not engage in: extracting crude petroleum, natural gas or other hydrocarbons; drilling wells; preparing, maintaining or constructing petroleum or natural gas well-sites or other

mineral extraction sites; mining; maintaining or constructing petroleum or natural gas pipeline or distribution facilities; pipeline distribution of crude petroleum, refined petroleum, oil or natural gas; petroleum or natural gas refining or other mineral refining and/or manufacturing; manufacturing petroleum lubricating oil and grease, petrochemical products, or other petroleum and coal products or chemical products derived from extracted minerals; merchant wholesaling of construction and mining (except oil well) machinery and equipment; wholesale distribution of oil well machinery, equipment and supplies; wholesale distribution of petroleum, petroleum products, other extracted minerals, chemical products produced from extracted or refined minerals, petroleum bulk stations and terminals, petroleum and petroleum products merchant wholesalers.

6.

ALM is an independent limited liability company, registered with the Louisiana Secretary of State (attached as Exhibit "1" hereto) operated by its own management and staff. ALM is a subsidiary of Apache Corporation; however, has separate and distinct operations.

Thus done and signed in Houma, Louisiana, on this 9th day of August, 2013.

_____
TIMOTHY J. ALLEN

Sworn to and subscribed
before me this 9th
day of August, 2013.

_____
Notary Public

C. BERWICK DUVAL, II
NOTARY PUBLIC
Parish of Terrebonne, State of Louisiana
My Commission Is For Life
Bar Roll Number 5109



### United States of America
### State of Louisiana

**Jay Dardenne**
SECRETARY OF STATE

*As Secretary of State, of the State of Louisiana, I do hereby Certify that*

an Amended APPLICATION form of

APACHE LOUISIANA MINERALS, INC.

Organized under the laws of DELAWARE,

Converting the corporation to a limited liability company, and changing the name to

APACHE LOUISIANA MINERALS LLC

Was filed and recorded in this Office on JANUARY 02, 2009.

*In testimony whereof, I have hereunto set my hand and caused the Seal of my Office to be affixed at the City of Baton Rouge on,*

January 2, 2009

WHE 35413906Q 36930834

*Secretary of State*

CERTIFICATE SS 102 PRINTED SEAL (Rev. 11/06)



EXHIBIT 1

LAW OFFICES
# DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS
*(A Professional Law Corporation)*
101 WILSON AVENUE
P.O. BOX 3017
HOUMA, LOUISIANA 70361

JAMES M. FUNDERBURK
SIDNEY C. SUNDBERY
C. BERWICK DUVAL, II
CLAYTON E. LOVELL
STANWOOD R. DUVAL
KATHRYN W. RICHARD

CLAUDE B. DUVAL
(1914-1986)

Area Code 985
Telephone 876-6410
Fax 851-1490
www.duvallawfirm.com
(see website for e-mail addresses)

OF COUNSEL
WILLIAM S. WATKINS

April 30, 2013

Ms. Elizabeth M. Smyers
Brown Greer, PLC
115 S. 15th Street, Suite 400
Richmond, VA 23219-4209

Via E-Mail: bsmyers@browngreer.com

Re:  Apache Louisiana Minerals, LLC
     Claimant ID: 100176960

Dear Beth:

Pursuant to our conversation on Thursday, April 25, 2013, the following is an explanation of Apache Louisiana Minerals LLC's ("ALM") role related to oil and gas activity. Specifically, your question arises from the following sentence in the *Overview of Apache Louisiana Minerals, LLC Operations* document previously e-mailed to Christine Reitano and Christopher Esbrook, "In addition to administering the surface lease program, the ALM staff is heavily involved with monitoring the activities of oil and gas operators, pipeline companies, construction contractors, seismic companies, university and governmental research initiatives, and surface lessees to ensure that they adhere to company policies regarding surface use of the land." A copy of the overview is attached hereto for reference.

As I explained on the phone, ALM, as owner of thousands of acres of wetlands in Louisiana, periodically grants mineral leases on its property that allow the lessees of such mineral leases to explore for minerals on the ALM property covered by such mineral lease. Typically, a lessee explores for minerals on the property, and if any are found, it will produce those minerals and pay a royalty (rental) to the landowner. ALM's grant of mineral leases on its property in Louisiana is no different than the right of any private landowner to grant mineral leases. In connection with these leases, ALM's employees and staff monitor the activities of its lessees to make sure they are abiding by the terms of the lease agreement regarding protection and preservation of the property and the applicable laws of the State of Louisiana. ALM does not conduct any oil and gas exploration activities. ALM's conduct of granting leases for the exploration of oil and gas on its property is a practice that practically every owner of wetlands in south Louisiana engages in as well

You also expressed concern that the NAICS code listed on the registration form and claim form of 211110 is not a valid NAICS code. As I explained to you on the phone, what is typically done on the tax returns is to make the principal business code, or the NAICS code, a


EXHIBIT B

DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS

Ms. Beth Smyers
Page 2
April 30, 2013

six-digit code. Therefore, the code of 21111 is referred to as 211110 on the tax return. Attached is a printout from the U.S. Census Bureau North American Industry Classification System that shows a NAICS code of 21111 (not an excluded code) being defined as "oil and gas extraction." The NAICS code of 211111 (an excluded code) is defined as "crude petroleum and natural gas extraction."

ALM is a separate and distinct legal entity; however, it does file a consolidated tax return with its parent company, Apache Corporation. The 2010 NAICS code for the consolidated tax return is 21111 (not an excluded code). However, on the consolidated tax return, the NAICS code is listed as 211110 (due to the adding of a zero as explained above). The NAICS code listed on the consolidated tax return is 211110 (not an excluded code), and, moreover, it is clear that ALM simply owns and manages property.

As stated, the 21111 NAICS code is not excluded from the settlement, as it is not found in either Exhibit 17 or Exhibit 19 to the Deepwater Horizon Economic & Property Damages Settlement Agreement (the "Settlement Agreement"). As you are aware, the Settlement Agreement, as approved by the United States District Court for the Eastern District of Louisiana, defines what entities are excluded from the Class in the Settlement Agreement. Specifically, Section 2 of that Settlement Agreement sets forth entities that are excluded from the Economic and Property Damages Settlement Class definition. Paragraph 2.2.4.5 of the Settlement Agreement specifies that certain oil and gas industries are excluded, *as identified in the NAICS codes listed on Exhibit 17*. As stated above, ALM's NAICS code is not listed on Exhibit 17 and is not an excluded code. Furthermore, ALM does not meet the business description of excluded businesses as set forth in the Settlement Agreement.

Pursuant to the memorandum issued by Patrick A. Juneau, Claims Administrator, to Class Counsel and BP Exploration and Production, Inc. dated October 10, 2012, the Claims Administrator is charged with the duty to "faithfully implement and administer the Settlement, according to its terms and procedures, for the benefit of the Economic Class, consistent with this Agreement and/or as agreed to by the Parties and/or as approved by the Court" (Section 4.3.1 of the Settlement Agreement). In that memorandum, Mr. Juneau made it clear that he would not rewrite the Settlement Agreement nor would he insert terms and conditions into the Settlement Agreement that are not there. Quite simply, ALM is not an excluded entity as its NAICS code is not excluded. Moreover, ALM does not engage in any activity which could possibly be considered excluded pursuant to the Settlement Agreement. As such, it would be completely improper and adverse to the terms of the Settlement Agreement to continue a conversation about whether ALM is a member of the Class, in the Settlement Agreement as clearly it is.

I hope this has answered any of your questions, and if you need any further information, please do not hesitate to call.

DUVAL, FUNDERBURK, SUNDBERY, LOVELL & WATKINS

Ms. Beth Smyers
Page 3
April 30, 2013

                Sincerely yours,

                *[signature]*

                STANWOOD R. DUVAL

SRD/pc
Enclosures
cc:   Mr. Andrew S. Friedberg, via e-mail: andrew.friedberg@apachecorp.com
       Ms. Christine Reitano, via e-mail: creitano@dheclaims.com

Deepwater Horizon Economic and
Property Damages Settlement Program
c/o Claims Administrator
P.O. Box 1439
Hammond, LA 70404-1439

Claim Number:  100176960
Check Number:  01032059
Check Date:    09/24/13
Check Amount:  $141,484.60

DUVAL, FUNDERBURK, SUNDBERY, LOVELL
& WATKINS, APLC & APACHE LOUISIANA MINERALS LLC
101 WILSON AVE.
HOUMA, LA 70364

Notice of Payment

Dear Claimant:

This check represents your payment from the Deepwater Horizon Economic and Property Damages Settlement Program (the "Settlement Program") arising out of damages suffered as a result of the Deepwater Horizon Incident, as defined in the Full and Final Release, Settlement, and Covenant Not to Sue (the "Release") that you signed and submitted to the Settlement Program. By signing your Release, you waived and released any claims that you have or may have in the future against any party in connection with the Deepwater Horizon Incident, except for Expressly Reserved Claims (as defined in the Release). Notwithstanding your Release, pursuant to the Economic and Property Damages Settlement Agreement, you have 180 days after the date of your initial payment from the Settlement Program to file additional claims.

This check may be presented at any banking institution in the country for payment. However, if you do not have your own bank account, the Settlement Program has made arrangements with Chase and Regions banks, which have branches located throughout the affected region in the Gulf, to assist you. For a listing of all Chase locations, you can visit the Chase website at www.Chase.com or call 1.800.935.9935 toll-free. For a listing of all Regions locations, you can visit the Regions website at www.regions.com or call 1.800.REGIONS toll-free.

The Settlement Program will report annually to federal and state taxing authorities, using IRS Form 1099 or a state form equivalent, for certain payments made. Early in the next calendar year, you will receive your copy of that form. The Settlement Program cannot provide you with tax advice. You should consult with your own tax advisor to determine the impact of any payments you receive from the Settlement Program on your individual tax situation.

For assistance or additional information, please visit our website at www.DeepwaterHorizonEconomicSettlement.com, or email us at questions@DeepwaterHorizonEconomicSettlement.com, or call us toll-free at 1-866-992-6174, TTY at 1-888-584-7624.

Sincerely,
Claims Administrator
Deepwater Horizon Economic and Property Damages Settlement Program

---

BP Economic and Property Damages
Settlement Trust
General Claims Fund

CHASE
JPMorgan Chase Bank, N.A.
New Orleans, LA

84-13/654
CHECK NUMBER: 01032059
CHECK DATE:    09/24/13

One hundred forty one thousand four hundred eighty four and 60/100 Dollars          ****$141,484.60

Void After 180 Days

DUVAL, FUNDERBURK, SUNDBERY, LOVELL
& WATKINS, APLC & APACHE LOUISIANA MINERALS LLC
101 WILSON AVE.
HOUMA, LA 70364



EXHIBIT C

BY 
AUTHORIZED SIGNATURE

⑈010 32059⑈  ⑉065400137⑉   465597693⑈

Deepwater Horizon Economic and
Property Damages Settlement Program
c/o Claims Administrator
P.O. Box 1439
Hammond, LA 70404-1439

Claim Number: 100176960
Check Number: 01032060
Check Date: 09/24/13
Check Amount: $15,750.00

DUVAL, FUNDERBURK, SUNDBERY, LOVELL
& WATKINS, APLC & APACHE LOUISIANA MINERALS LLC
101 WILSON AVE.
HOUMA, LA 70364

**Notice of Payment**

Dear Claimant:

This check represents your payment from the Deepwater Horizon Economic and Property Damages Settlement Program (the "Settlement Program") arising out of damages suffered as a result of the Deepwater Horizon Incident, as defined in the Full and Final Release, Settlement, and Covenant Not to Sue (the "Release") that you signed and submitted to the Settlement Program. By signing your Release, you waived and released any claims that you have or may have in the future against any party in connection with the Deepwater Horizon Incident, except for Expressly Reserved Claims (as defined in the Release). Notwithstanding your Release, pursuant to the Economic and Property Damages Settlement Agreement, you have 180 days after the date of your initial payment from the Settlement Program to file additional claims.

This check may be presented at any banking institution in the country for payment. However, if you do not have your own bank account, the Settlement Program has made arrangements with Chase and Regions banks, which have branches located throughout the affected region in the Gulf, to assist you. For a listing of all Chase locations, you can visit the Chase website at www.Chase.com or call 1.800.935.9935 toll-free. For a listing of all Regions locations, you can visit the Regions website at www.regions.com or call 1.800.REGIONS toll-free.

The Settlement Program will report annually to federal and state taxing authorities, using IRS Form 1099 or a state form equivalent, for certain payments made. Early in the next calendar year, you will receive your copy of that form. The Settlement Program cannot provide you with tax advice. You should consult with your own tax advisor to determine the impact of any payments you receive from the Settlement Program on your individual tax situation.

For assistance or additional information, please visit our website at www.DeepwaterHorizonEconomicSettlement.com, or email us at questions@DeepwaterHorizonEconomicSettlement.com, or call us toll-free at 1-866-992-6174, TTY at 1-888-584-7624.

Sincerely,
Claims Administrator
Deepwater Horizon Economic and Property Damages Settlement Program

---

BP Economic and Property Damages
Settlement Trust
General Claims Fund

CHASE
JPMorgan Chase Bank, N.A.
New Orleans, LA

84-13/654
CHECK NUMBER: 01032060
CHECK DATE: 09/24/13

Fifteen thousand seven hundred fifty and 00/100 Dollars

*****$15,750.00

PAY TO THE ORDER OF
DUVAL, FUNDERBURK, SUNDBERY, LOVELL
& WATKINS, APLC & APACHE LOUISIANA MINERALS LLC
101 WILSON AVE.
HOUMA, LA 70364

Void After 180 Days

BY _____
AUTHORIZED SIGNATURE

⑆01032060⑆ ⑈065400137⑈ 465597693⑈