UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | |
| Applies to: | * | JUDGE BARBIER |
| | * | |
| Nos. 12-970 and 12-968 and All Cases | * | MAGISTRATE SHUSHAN |
| | * | |

### PRETRIAL ORDER NO. 59

### (Appointment of Common Benefit Fee and Cost Committee and Guidelines for Common Benefit Attorneys' Fees and Costs Reimbursement) ["Initial Fee Order"]

Even though a formal petition for an award of common benefit attorneys' fees and reimbursement of costs ("Aggregate Fee and Cost Petition") likely will not be filed in this litigation until 2016 or later, it is important at this time to begin the process of creating a structure, establishing guidelines, and setting a timetable for the eventual presentation to the Court of an Aggregate Fee and Cost Petition and a subsequent recommendation regarding allocation of the Aggregate Common Benefit Fee and Costs Award among eligible Fee Applicants ("Allocation Recommendation").

The Economic and Property Damages Settlement ("Economic Settlement") (Rec. Doc. 6276-1) and the Medical Benefits Class Action Settlement ("Medical Settlement") (Rec. Doc. 6427-1) have now achieved final judicial approval.  Over $5.22 billion in Economic Class Claims have been paid as of May 31, 2015, and other benefits have been provided to Medical Class Members.  It is expected that the ongoing Settlement claims processes will continue for several more years.  A focus and priority of the Court is to implement these Settlements, and the Court's continued oversight with regard to the Settlements will ensure that all eligible Class

Members receive all of the benefits to which they are entitled.

BP has agreed to pay up to $600 million in common benefit attorneys' fees, costs, and expenses, as awarded by the Court.[1]  Under the Fee Agreement, "[a]ny common benefit Class Counsel fees and costs awarded by the Court will not be deducted from Class Members' recoveries, but will be paid by BP in addition to other class benefits." *In re OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the Gulf of Mexico, on April 20, 2010*, 295 F.R.D. 112, 126 (E.D. La. 2013), *appeal dism'd in part*, No. 13-30221 (5th Cir. Feb. 11, 2014).

Early in the litigation, the Court entered an Order setting forth the standards and procedures for any counsel seeking to apply for an award of common benefit fees and/or reimbursement of expenses in this litigation.  *See* Pretrial Order No. 9 ("PTO 9") (Rec. Doc. 508), as amended by Pretrial Order No. 56 (Rec. Doc. 12542).  Pursuant to PTO 9, approximately 100 law firms have submitted time and/or expenses to the Court-appointed CPA Philip Garrett ("PG").  These law firms may be considered potential Fee Applicants.  An overarching consideration for the allocation of an Aggregate Common Benefit Fee and Costs Award is the nature and extent of common benefit contributions of the Fee Applicants to the outcome of this litigation.  Accordingly, the Court is interested in receiving input from Counsel who have performed significant roles in this MDL litigation and are familiar with the work performed by common benefit counsel.  Pursuant to the Court's inherent authority over this multidistrict litigation, the Court hereby appoints a fee committee and sets forth guidelines for common benefit fee and cost reimbursements, as set forth below.

---

[1] Medical Settlement, § XIX, Ex. 19,  2-4 & Economic Settlement, Ex. 27,  2-4 (Rec. Doc. 6427-21) ("Fee Agreement").

IT IS HEREBY ORDERED THAT:

1. The Court appoints a Common Benefit Fee and Cost Committee ("FCC") to be responsible for submitting to the Court, at an appropriate time, an Aggregate Fee and Cost Petition and an Allocation Recommendation.

2. The FCC shall be comprised of:

    a. Stephen J. Herman of Herman, Herman & Katz, LLC, Co-Liaison Counsel in MDL 2179, who shall serve as Co-Chair and Secretary of the FCC.

    b. James P. Roy of Domengeaux Wright Roy Edwards & Colomb LLC, Co-Liaison Counsel in MDL 2179, who shall serve as Co-Chair of the FCC.

    c. Robert T. Cunningham of Cunningham Bounds, LLC.

    d. Brian H. Barr of Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, PA.

    e. Calvin C. Fayard, Jr. of Fayard & Honeycutt, APC

    f. Robin L. Greenwald of Weitz & Luzenberg, P.C.

    g. Dawn M. Barrios of Barrios, Kingsdorf & Casteix, L.L.P.

3. Appointments to the FCC are of a personal nature. Accordingly, the above appointees cannot be substituted by other attorneys, including members of the appointee's law firm, to perform the FCC's exclusive functions, except with prior approval of the Court.

4. The Co-Chairs of the FCC shall call and preside over all meetings of the FCC. The Secretary of the FCC shall maintain the books and records of the FCC.

5. Arnold Levin and Sandra L. Duggan of Levin, Fishbein, Sedran & Berman are appointed as Special Counsel to the FCC. They shall keep track of their time and expenses and submit monthly reports to Philip Garrett, CPA pursuant to PTO 9 for consideration as common benefit time and expense.

6. Communications in any form between and among members of the FCC and/or its Special Counsel regarding the Aggregate Fee and Cost Petition, the Allocation Recommendation, and/or related matters, and the deliberations of the FCC, including its minutes, are privileged and confidential, and not subject to discovery unless otherwise authorized by the Court for good cause shown.

7. All lawyers and law firms that submitted time and expenses to PG pursuant to PTO 9 shall cooperate fully with the FCC.

8. The following procedures and guidelines shall govern the orderly and efficient presentation of an Aggregate Fee and Cost Petition and Allocation Recommendation to the Court.

## STEP ONE: REVIEW AND AUDIT OF TIME AND EXPENSES

9. Counsel seeking compensation and reimbursement of expenses for common benefit services performed on behalf of all claimants in MDL 2179 ("Fee Applicants") shall initially review and audit their firm's submissions to PG from the inception of the litigation through and including March 31, 2015 ("Initial Cut-Off Date"), which are posted on the Philip Garrett Case Cost Management System located at www.garrettco-ccms.com/bp, pursuant to PTO 9, to assure that the time and expense records are complete and accurate. Only time and expense records timely submitted pursuant to and in compliance with PTO 9 and this Order shall be considered by the Court in support of a Common Benefit Fee and Costs Award.

10. By no later than Tuesday, September 15, 2015, Fee Applicants may request, in writing, that PG modify their time and/or expenses to amend or correct any prior submissions to

disallow for any of the following:

a. Any submission of professional time or expenses in which the hours of service or expense were not properly submitted or coded in accordance with PTO 9.

b. Any item of expense for which proper receipts or other proof of payment has not been submitted in accordance with PTO 9.

c. Any item of time or expense that was incurred in connection with the prosecution of an individual case or group of individual cases asserting claims in this litigation, unless the case or cases were designated by the PSC or the Court as bellwether or test cases and Counsel were authorized by the PSC, through Co-Liaison Counsel or the Executive Committee, to perform such work primarily for the common benefit of the litigants in MDL 2179.

d. Any submission which is not based on time that was contemporaneously recorded when the professional services were rendered.

e. Any item of expense that does not meet the requirements of PTO 9.

f. Any item of time or expense that is not described in sufficient detail to determine the nature and purpose of the service or expense involved.

g. Any item of professional time that was expended to "review" pleadings, emails, correspondence and similar items, unless such "review time" was directly related to and reasonably necessary for the performance of that particular timekeeper's approved assignments from Co-Liaison Counsel or the Executive Committee.

h. Any submission of professional time in which the amount of "review" time is excessive as a whole when judged in reference to the role of the timekeeper or which did not substantially benefit the claimants in MDL 2179 or the Class Members in the Medical and Economic Classes certified by the Court.

i. Any submission of time and expense that is grossly excessive on its face when considered as a whole in light of the role(s) that the timekeeper(s) had in this litigation, which did not substantially benefit the claimants in MDL 2179 or the Medical or Economic Classes certified by the Court.

j. Unnecessary and/or excessive items of time and expense for "monitoring" or review of Electronic Court Filings ("ECF") in this MDL.

k. Unnecessary and/or excessive items of time and expense for "monitoring" or review of items posted on Lexis Nexis File & Serve Xpress in this MDL.

    l.      Unnecessary and/or excessive items of time and expense for "monitoring" the MDL proceedings or related state court litigation by attending hearings, status conferences, or meetings where such attendance was not required by the Court or requested by Co-Liaison Counsel or the Executive Committee.

    m.    Any submission of time and expense for services performed on behalf of claimants who objected to or opted out of the Medical Settlement or Economic Settlement.

    n.     Any item of time or expense not reasonably necessary and not part of a bona fide effort to advance the interests of the claimants in MDL 2179 or the Medical Settlement or Economic Settlement Class Members.

    o.     Any time in which more than one timekeeper within one (1) firm reviewed a single document or email without a clear independent reason for review by more than one timekeeper.

    p.     Any time within one (1) firm for the purpose of monitoring or reviewing the work of a timekeeper for that firm's internal purposes.

    q.     Any time or expense related to preparing, amending, or correcting time and expense reports for submission to PG pursuant to PTO 9 or this Order.

Fee Applicants shall consolidate all amendments and corrections to time and expense submissions ("Corrected Submissions") in a single written request to PG. <u>Under no circumstances may Fee Applicants augment their time records or add additional expenses</u>.

11.    By no later than <u>Friday, January 15, 2016</u>, PG shall inform Fee Applicants whether there are any denials, rejections, or other problems with their Corrected Submissions, if any.

12.    If any Corrected Submissions of Fee Applicants are denied or rejected by PG, Fee Applicants shall have one (1) opportunity to respond to the PG denial or rejection by <u>Monday, February 1, 2016</u>.

13.    By no later than <u>Monday, February 22, 2016</u>, PG shall post on the Philip Garrett Case Cost Management System located at www.garrettco-ccms.com/bp the final, corrected

hours and expenses through Initial Cut-Off Date accepted by PG pursuant to PTO 9 and this Order.

14. Only time and expenses that are accurate and solely related to approved and assigned common benefit services shall be eligible for consideration of a Common Benefit Fee and Costs Award. Fee Applicants shall include in their claim for consideration of a Common Benefit Fee and Costs Award only time or expenses authorized by PTO 9 or this Order through Initial Cut-off Date. The failure to submit accurate and reliable time and expense records in compliance with PTO 9 and this Order may result in sanctions, which may include the denial in whole or part of a Common Benefit Fee and Costs Award.

### STEP TWO: SUBMISSION OF A FEE AFFIDAVIT TO THE FCC FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR COMMON BENEFIT SERVICES

15. By no later than <u>Tuesday, March 22, 2016</u>, Fee Applicants shall deliver to the FCC through its Co-Chairs (but not file with the Court) a completed and signed Fee Affidavit for Compensation for Common Benefit Time and Reimbursement of Expenses ("Fee Affidavit") providing all information required in the form attached as Exhibit "A" to this Order. In particular, the Fee Affidavits shall provide the following:

   a. The extent to which the Fee Applicant made a substantial contribution to the outcome of the litigation;

   b. The consistency quantum, duration, and intensity of the Fee Applicant's commitment to the litigation;

   c. The level of partner participation by each firm;

   d. Membership and leadership on the PSC or Executive Committee;

   e. Participation and leadership in discovery (motions, depositions);

    f.    Participation and leadership in law and briefing matters;

    g.    Participation and leadership in science and experts;

    h.    Participation and leadership in document review;

    i.    Activities surrounding Phase One, Phase Two, and/or Court-designated Test Case trials, and preparation therefor, which impacted proceedings on a common benefit level;

    j.    Participation and leadership in common benefit settlement negotiations or mediations, drafting of settlement documentation and closing papers, and administration of settlement agreements (excluding individual representations);

    k.    Where MDL common benefit work occurred;

    l.    Leadership positions for groups engaged in authorized common benefit work;

    m.    Participation in ongoing activities, such as the FCC, Settlement Claims Administration, or Court-appointed Committees and Leadership, which are intended to provide common benefits;

    n.    Whether the Fee Applicant was involved in the litigation prior to the formation of this MDL, and the time and expense incurred during such time that was for common benefit.

    o.    Whether the Fee Applicant made significant contributions to the funding of the litigation;

    p.    Those PSC members, group members, or Executive Committee members whose commitment to the litigation did not ebb;

    q.    A certification by a senior partner in the firm seeking to recover common benefit fees and costs setting forth all sources and amounts of any other previous payments received in this litigation from a claimant or other sources (broken down to identify amounts paid for fees and amounts paid for costs); and

    r.    Any other relevant factors.

16.    The Fee Affidavit is to be fully completed and signed by a senior partner of the law firm seeking an allocation of the Aggregate Common Benefit Fee and Costs Award, attesting

to its truth and accuracy.  Only one (1) Fee Affidavit shall be submitted for a particular law firm, and there is no need for individual counsel within a law firm to submit separate Fee Affidavits.  The Fee Affidavits shall be kept confidential and only shared with the FCC or the Court's designees (*e.g.*, PG).

17. Fee Applicants shall provide the FCC through its Co-Chairs, as an attachment to their Fee Affidavit, a memorandum of no greater than one (1) page for every 1,000 hours posted by the Fee Applicant on the Philip Garrett Case Cost Management System, detailing and describing with particularity the professional services performed in this litigation and the common benefit contribution provided by the Fee Applicant for the benefit of all claimants in MDL 2179 or the Medical and Economic Classes certified by the Court.  Fee Applicants shall describe those aspects of their work which they believe best describe their firm's common benefit contributions to this litigation.  The memorandum shall be prepared using 12-point font, double-spaced, and with margins of no less than 1 inch on all sides.  Counsel signing the Fee Affidavit shall include a certification that their submission has been made following a review and audit of their submissions posted on the Philip Garrett Case Cost Management System for this litigation and that the system contains the Fee Applicant's true and correct time and expense information, which complies with PTO 9 and this Order.

### STEP THREE: FILING OF AN AGGREGATE PETITION FOR A COMMON BENEFIT FEE AND COSTS AWARD

18. By no later than <u>Friday, July 15, 2016</u>, the FCC shall submit to the Court an Aggregate Fee and Cost Petition.  The Aggregate Fee and Cost Petition shall represent and

encompass all Fee Affidavits timely received by the FCC, which comply with the terms of this Order.  In connection with the filing of the Fee Petition, the FCC shall file under seal all Fee Affidavits.  The filing of the Aggregate Fee and Cost Petition is a matter of administrative convenience for the Court, but shall have substantive significance in any rulings by the Court as to an award of common benefit fees and expense reimbursement allowed.

19. To the extent any Fee Applicant seeks to receive a Common Benefit Fee and Costs Award based on time or expense which is not included in the Aggregate Fee and Cost Petition, such Fee Applicant may file a separate fee petition on or before <u>Monday, August 15, 2016</u>, provided:  (1) the Fee Applicant has complied fully with PTO 9 and this Order; (2) the Fee Applicant has met and conferred in advance of filing a separate fee petition with PG and the FCC; and (3) the separate fee petition seeks common benefit attorneys' fees or reimbursement for items not covered by the Aggregate Fee and Cost Petition.  Any separate fee petitions shall include all supporting common benefit time records and expenses with backup invoices and bills.  The FCC and PG may review and comment on any such submission.  The Court will independently determine the Fee Applicant's entitlement to an award of common benefit fees and reimbursement of costs.

20. To the extent a claimant in MDL 2179 or a Medical Settlement or Economic Settlement Class Member objects to the Aggregate Fee and Cost Petition or any separate fee petition(s) filed, if any, the objector shall file with the Court its objection by <u>Thursday, August 25, 2016</u>.

21. Any responses to objections to the Aggregate Fee and Cost Petition or separate fee

petition(s), if any, shall be filed with the Court by <u>Monday, September 26, 2016</u>.

22. At an appropriate time, the FCC shall consider a proposal to the Court regarding a hold-back from an Aggregate Common Benefit Fee and Costs Award to account for post-settlement and administrative matters for Counsel performing work relating to the administering of the Medical Settlement and Economic Settlement, and to account for common benefit time and expenses after the Initial Cut-off Date.

**STEP FOUR:  AGGREGATE COMMON BENEFIT FEE AND COSTS AWARD**

23. After the filing of the Aggregate Fee and Cost Petition and any separate fee petition(s), if any, the Court shall determine the Aggregate Common Benefit Fee and Costs Award for time and expenses through Initial Cut-Off Date and shall issue an Order reflecting same ("Aggregate Order").  The Court shall also address post-settlement and administrative matters for Counsel performing work relating to the administering of the Medical Settlement and Economic Settlement.

**STEP FIVE: COMMON BENEFIT FEES AND COSTS ALLOCATION**

24. In order to assist the Court with determining a fair and equitable allocation of the Common Benefit Fee and Costs Award, the FCC shall recommend an allocation of the amounts awarded by the Court to compensate counsel for common benefit fees and reimbursement of reasonable expenses.  In making the recommendation, the FCC shall review the time and expense records submitted to PG pursuant to PTO 9 through the Initial Cut-Off Date, as well as each of the Fee Affidavits, and take into consideration the common benefit work performed by the Fee Applicants.  The FCC may take testimony if

necessary.

25. The FCC shall evaluate the Fee Applicants' common benefit contributions, using objective measures and the FCC's subjective understanding of the relevant contributions of each Fee Applicant toward generating the benefits provided pursuant to the Medical Settlement and the Economic Settlement, and/or otherwise substantially advancing the litigation on behalf of all claimants in MDL 2179, in accordance with established protocols, and make a recommendation to the Court for consideration as to each Fee Applicant.

26. The FCC's implementation of this Order and its recommendation to the Court regarding allocation of the Common Benefit Fee and Costs Award should be governed and guided by this comprehensive statement of general principles.  The over-arching guideline that the FCC is to consider is the relative common benefit contribution of each Fee Applicant to the outcome of the litigation, including whether the Fee Applicant:

   a. Made no known material common benefit contribution to the litigation;

   b. Made isolated material common benefit contributions, but mostly "monitored" the material common benefit efforts of other firms and perhaps performed some document review;

   c. Made periodic material common benefit contributions and/or mostly performed document review;

   d. Made consistent material common benefit contributions from inception of the litigation through 2013;

   e. Made consistent material common benefit contributions from inception of the litigation through the current date;

   f. Was a leader taking primary responsibility to accomplish the goals of the PSC and was heavily relied upon by Co-Liaison Counsel and provided consistent material common benefit contributions, full-time at times, from inception of the litigation

    through 2013;

 g. Was a leader taking primary responsibility to accomplish the goals of the PSC and was heavily relied upon by Co-Liaison Counsel and provided consistent material common benefit contributions, full-time at times, from inception of the litigation through the current date;

 h. Was a senior leader taking primary responsibility to accomplish the goals of the PSC, organized others and/or led a team of common benefit attorneys and was heavily relied upon by Co-Liaison Counsel and provided consistent material common benefit contributions almost full-time for a substantial time during the litigation; or

 i. Was a senior leader providing maximum senior leadership effort in terms of intensity, consistency, and duration relative to all other common benefit counsel, taking primary responsibility for entire litigation to accomplish the goals of the PSC, engaging in overall strategic planning since the inception of the litigation, organizing others and/or leading one or more teams of common benefit attorneys, providing consistent material common benefit contributions, virtually full-time for much of the litigation, and will likely continue to assume a key leadership role for several more years.

27. The FCC will implement additional processes to provide appropriate deliberative fairness to the Fee Applicants. The process outlined herein will afford Fee Applicants an opportunity to advocate their positions, in addition to providing time and expense record submissions and a Fee Affidavit. The FCC will be guided by governing fee jurisprudence to identify the factors that should be applied in making appropriate common benefit fee allocations. The *Johnson* factors are applicable to this litigation and should be considered in addition to other matters considered by the courts to evaluate fee allocations. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *In re High Sulfur Gulf Content Gasoline Prods. Liab. Lit.*, 517 F.3d 220, 226 n.6 (5th Cir. 2008); *In re: Vioxx Products Liability Litigation*, 802 F.Supp.2d 740 (E.D. La. 2011); and *Union Asset Mgmt Holding AG v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir.

2012).  As such, the FCC should determine and weigh the following criteria:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

28. Numerous factors are pertinent for consideration to derive the appropriate allocation of fees among participating attorneys. Other special considerations here include:

   a. Fee Applicants will not be compensated for work performed without prior authorization by Co-Liaison Counsel or Co-Lead Class Counsel.

   b. Monitoring and review work not related to ongoing common benefit assignments is not compensable.

   c. Where work was performed by contract lawyers, Counsel are required to disclose the salary/wage of such contract lawyers to avoid paying windfall profits to Fee Applicants.

29. Beginning on or before <u>Tuesday, March 22, 2016</u>, the FCC may request that any Fee Applicant, which has timely submitted a Fee Affidavit, appear before the FCC, or a three-member panel of FCC, to respond to questions of the FCC as to the reasons, grounds and explanations for the Fee Applicant's entitlement to common benefit fees and reimbursement of expenses.  Appearances before the FCC will be held in New Orleans, Louisiana, unless for good cause shown, and each requested appearance shall be recorded by a court reporter.  A Court representative or Special Master may participate in FCC

meetings as needed and shall assist in accordance with PTO 9.

30. On or before <u>60 days after entry of the Aggregate Order</u> (*see* ¶ 23, *supra*), the FCC shall prepare a proposed Allocation Recommendation for each Fee Applicant that submitted a Fee Affidavit. The FCC shall provide to each Fee Applicant notice of the FCC's proposed Allocation Recommendation as it pertains to the Fee Applicant.

31. In the event a Fee Applicant objects to the FCC's proposed Allocation Recommendation, a detailed written objection setting forth with specificity the basis of the objection shall be submitted to the FCC on or before <u>30 days after receipt of the proposed Allocation Recommendation</u>, for consideration by the FCC.

32. By no later than <u>150 days after entry of the Aggregate Order</u>, the FCC shall submit its final Allocation Recommendation for each Fee Applicant either to the Court directly or possibly through a Special Master.

33. In making the final Allocation Recommendation to the Court, the FCC shall exercise its discretion, as previously ordered by the Court, in evaluating which work and expenses furthered the common benefit of the litigation. The above guidelines provide direction, but do not create entitlements and do not override the independent judgment and discretion of the FCC and the Court.

34. The Court will consider any Allocation Recommendations made by the FCC and post the same on its website and invite comments or objections, and institute any additional procedures it deems necessary, including the appointment of a Special Master to further consider these matters.

35. Any notices or submissions made to the FCC pursuant to this Order or any application for

fees for common benefit and reimbursement of expenses shall be made to both Co-Liaison Counsel Stephen J. Herman, c/o Herman, Herman & Katz, LLC, 820 O'Keefe Avenue, New Orleans, LA 70113; PH: (504) 581-4892; FAX: (504) 561-6024; E-Mail: sherman@hhklawfirm.com <u>and</u> Co-Liaison Counsel James P. Roy, c/o Domengeaux Wright Roy Edwards & Colomb LLC, 556 Jefferson Street, Suite 500, Lafayette, Louisiana 70501; PH: (337) 233-3033; FAX: (337) 233-2796; E-Mail: jimr@wrightroy.com.

36. If at any time the FCC makes a filing with the Court that includes any Fee Affidavits, such filing shall not be a violation of the confidentiality provision contained in this Order, provided such filing is made under seal with the Court.

37. The Court may issue subsequent Orders governing the procedures by which the FCC shall carry out its functions.

38. This Court retains all authority and jurisdiction as to the final decisions of awards and allocations of awards for common benefit fees and reimbursement of expenses.

**TIMETABLE**

| 7/15/15 | Court issues Initial Fee Order |
|---|---|
| 9/15/15 | Fee Applicants self-audit their time and expenses and submit one (1) consolidated corrected submission to PG.  Under no circumstances may Fee Applicants augment their time or add expenses. (¶ 10) |
| 1/15/16 | PG responds to Corrected Submissions (¶ 11) |
| 2/1/16 | Fee Applicants respond to any PG denials/rejections of Corrected Submissions (¶ 12) |
| 2/22/16 | Final numbers posted by PG on www.garrettco-ccms.com/bp (¶ 13) |
| 3/22/16 | Fee Affidavits due to FCC (not filed with Court) (¶ 15) |
| 3/22/16 (on or around) | Begin FCC Interviews of Fee Applicants (¶ 29) |
| 7/15/16 | Aggregate Fee and Cost Petition filed with Court (¶ 18) |
| 8/15/16 | Separate Individual Fee Petitions due (¶ 19) |
| 8/25/16 | Objections to Aggregate Fee and Cost Petition and Separate Fee Petitions due (¶ 20) |
| 9/26/16 | Responses to Objections due (¶ 21) |
| TBD | Court issues Aggregate Order (¶ 23) |
| Aggregate Order + 60 days | FCC provides proposed Allocation Recommendation to Fee Applicants (¶ 30) |
| Prop. Allocation Rec. +30 days | Objections to proposed Allocation Recommendations due to FCC (¶ 31) |
| Aggregate Order + 150 days | Final Allocation Recommendations by FCC for each Fee Applicant due to Court or Special Master (¶ 32) |
| TBD | Comments or objections to final Allocation Recommendations due to Court (¶ 34) |

New Orleans, Louisiana, this 15th day of July, 2015

_____
UNITED STATES DISTRICT JUDGE

17