UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

REPLY IN SUPPORT OF MOTION OF THE DHECC FOR RETURN
OF PAYMENTS MADE TO WARDELL PARKER AND OTHERS

The Special Master, Louis J. Freeh, seeking to remedy a fraud committed by claimant

Wardell Parker ("Parker") upon the Deepwater Horizon Economic Claims Center

("DHECC"), replies to the opposition filed by Parker to the Special Master's 's motion for

return of payments. In his opposition, Parker states that he did not intend to defraud the

program by representing that he had 2009 shrimping sales of $80,000, claiming that

responsibility for his claim award arose not from Parker's misrepresentations but rather

from the mistakes of his legal team and an accounting professional. Parker asserts that

there is no evidence that he intentionally misrepresented his revenue to obtain a higher

payment, arguing that the Special Master failed to prove that he is in violation of the

elements of fraud.

Parker misconstrues the legal principles applicable to the Special Master's motion

for repayment. His focus on purported deficiencies of his former counsel and accountant is

belied by the full authority he gave these professionals to act on his behalf, as well as the

misrepresentations Parker himself made of key facts supporting his claim. Parker's own

misrepresentations resulted in damage to the DHECC of his full award amount of

$238,684.32, causing the DHECC to rely on Parker's false statement that his $80,000 in

revenue in 2009 on his tax return was derived from shrimp landings, when, in fact, this

revenue was derived from his job as a mechanic.  Restitution is the appropriate remedy.

      A.    <u>Parker Is Responsible for the Misrepresentations in His Claims</u>

      Parker appears to concede that misrepresentations about his shrimping income

were made to the DHECC.  Op. at 7 (Parker "concedes that this was a misstatement by an

individual authorized to act on his behalf with the DHECC.").  Parker attempts to shift

responsibility to his legal counsel for these misrepresentations.  But Parker, not his former

legal team, bears responsibility for the misrepresentations made in Parker's claims to the

DHECC.  Parker's argument that his former legal team stood in a superior position to

calculate the claim, and thus bear sole responsibility for the misrepresentations, is belied

not only by the fact that Parker himself submitted key misrepresentations to the DHECC,

but also by the fact that Parker authorized his lawyer's representations to the DHECC by

entering a power of attorney with counsel.  *See* Ex. A.

      By the power of attorney, Parker authorized his legal team to advocate core facts

provided by Parker to the DHECC to obtain payment of the claims.  *See* Order & Reasons on

Special Master's Motion for Return of Payment Made to Jason Zirlott and Capt. Jay, LLC at 5

(Rec. Doc. 14752)(rejecting claimant's defense that he was not accountable for counsel's

representations, given that claimant had signed a power of attorney authorizing counsel to

advocate on his behalf)(hereinafter "*Zirlott* Order").

      Of equal importance, Parker overlooks that he made a number of key

misrepresentation himself to the DHECC.  Specifically, Parker personally signed his sworn

written statement ("SWS-1"), attesting under oath that he had $80,000 of shrimping

revenue in 2009 from landings within the gulf coast areas ("GCA").  *See* Ex. D.  This

document, which Parker's counsel did not even sign, was cited by the DHECC as the primary basis for the DHECC's calculation of Parker's eligibility and award for both of his claims.  *See* Exs. F & G.  Parker submitted these key facts under his own hand on a form that made clear that the DHECC would rely on the figures to determine his claims.  *See* Ex. D. The SWS-1 makes clear:

> In order to have the financial information presented in this Form considered as part of your compensation calculation, you must either submit, or have already submitted, federal or state tax returns and schedules for the years that correspond to the Benchmark Revenue years you completed on this Form.

*Id*.

Parker knew the importance of the oath, as he demonstrated when he submitted hand-written reports of his 2009 catch quantities in an August 2012 DHECC submission. Ex. E.  Parker hand-wrote that he made the statements "under penalty of perjury."  *Id.*  The catch report also vastly exaggerated the catch figures Parker earlier had provided to the GCCF in sworn statements.

Just as this Court found in *Zirlott*, Parker cannot avoid responsibility for the submissions made on his behalf and for his benefit to the DHECC.  Restitution here is both reasonable and proper.

B.     Restitution is Appropriate Based on Parker's Misrepresentations

Parker's misrepresentations are demonstrated by the contradictory claims Parker made before the DHECC and the GCCF.  *See*, *e.g.*, *Zirlott* Order at 5 (restitution is appropriate where factual submissions, personally signed by the claimant, reveal the claimant's inconsistent representations).  The misrepresentations in Parker's claim from the filings before the GCCF to those before the DHECC are plain.  As Parker concedes, he

sought roughly $25,000 in alleged loss before the GCCF.  Opp. at 2, 10.  In his own handwriting, Parker told the GCCF that he "kept a daily catch record" of the shrimp he sold at $2 per pound, and that he retained "100 pounds of shrimp per month" for consumption by his family.  *See* Exs. B & C.  Parker said he shrimped only four months of the year.

Yet to the DHECC, Parker claimed in 2009 to have landed by himself from his 22-foot boat about 45,000 pounds of shrimp – over 22 tons – that he sold at $3 to $5 per pound.  *See* Ex. E; Opp. at 12.  Parker claimed under oath that he retained about 500 pounds *per week* for feeding his family of eight (including two young children).  *See* Ex. E.  This would result in a daily consumable portion per person of 3¼ pounds of shrimp *every day*.[1]

Other contradictions also appear in Parker's claim.  For example, Parker states in his opposition that he provided 2009 bank records supporting his claim.  Opp. at 2, 7, 9.  Yet the bank records, which were not filed with the GCCF or DHECC, contradict Parker's sworn statement to the DHECC concerning the value of his 2009 shrimping catch.  The total of 2009 "shrimping" deposits identified by Parker on the bank records amounted to approximately $41,550, or roughly half of the $80,000 in 2009 shrimping revenue Parker swore he had to the DHECC.  Moreover, several "shrimping" deposits identified by Parker on the bank records appear to have been in sums similar to his pay from Entergy.  Further, Parker told the GCCF that he shrimped only in May, June, August and September, yet Parker identifies bank deposits in nine months in 2009 as being shrimping revenue, strongly suggesting that even the $41,550 figure is inflated.

Parker argues that the DHECC should have identified the multiple inconsistencies in his claim earlier.  An allegation that the DHECC did not conduct sufficient due diligence to

---

[1] DHECC considers only the "consumable" portion of a seafood harvest, which is taken as a percentage of the gross harvest.  For example, 46 percent of the gross harvest weight of shrimp is considered "consumable."

detect Parker's fraud and inconsistencies in his claims, however, cannot serve to justify, excuse or serve as basis to ignore Parker's misrepresentations and fraud, as this Court has found in *Thonn* and *Zirlott*. *Zirlott* Order at 5; Order & Reasons on Special Master's Motion for Return of Payment Made to Casey Thonn at 21-22 (Rec. Doc. 12794)(hereinafter "*Thonn* Order"). As the Court stated in *Thonn*:

> The Court's opinion is not swayed by Thonn's contention that the GCCF's hired investigators believed that Thonn's claims were reasonable, as that unrelated, independent investigation has no bearing on the instant motion. *See Hazel-Atlas Glass, Co.*, 322 U.S. at 246 (prior failure to detect misconduct is not a license for the Court to turn a blind eye to fraud that will affect the public). In *Hazel-Atlas Glass Co.*, the Supreme Court did not find it relevant that the plaintiff did not detect the fraud, noting that even if the plaintiff "did not exercise the highest degree of diligence[, the defendant's] fraud cannot be condoned for that reason alone." *Id.* at 246. The rationale for this is rooted in the fact that the matter was not only a private issue, but rather concerned "issues of great moment to the public" and "involve[d] far more than an injury to a single litigant." *Id.* ("It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"). Here, Thonn's fraud undermines the integrity of the entire Settlement Program; therefore, while it is unfortunate that his misrepresentations were not detected earlier, such an oversight does not allow the Court to give Thonn a free pass now.

C.     The Record Amply Supports an Award of Restitution

Parker takes issue with DHECC's criticism of his claim, yet he presents no independent evidence to refute the well-supported issues that have been raised. Such an approach is insufficient to defeat a well-supported motion for summary judgment. *See Thonn* Order at 19-20 (claimant has burden to present more than vague arguments in response to a well-documented motion); Order & Reasons on Special Master's Motion for Return of Payment Made to Jarrod Burrle at 5 (Rec. Doc. 14747)(record is sufficient to support restitution where claimant fails to rebut DHECC's ample evidence of fraud).

Parker acknowledges that interviews with six of his listed patrons "revealed inconsistencies in seafood sales." Op. at 12. Parker claims that it is unfair to expect the alleged patrons to recall minute detail without Parker having a chance to cross-examine the alleged patrons. *Id*. The patrons interviewed did not dispute "minute" details, but rather took issue with the scope and duration of the alleged quantity of shrimp supplied to them by Parker. See Motion at 5-6 (customers recanted alleged statements concerning frequenty and quantity of their any alleged purchases from Parker). Moreover, Parker had equal access to the witnesses, and even was provided their phone numbers and addresses in discovery from the Special Master. If the witnesses had anything different to say, it was Parker's burden to present such evidence. Conjecture that the witnesses will contradict their statements to investigators on cross examination is insufficient.

Parker also has not produced any other records to contradict the Special Master's well-supported motion. For example, Parker told the GCCF that his total loss allegedly was approximately $25,000, and that he "kept a daily catch record of how many pounds of shrimp I would catch each trip" and "kept a record of how many pounds of shrimp I caught + sold them @ 2.00 a lb." *See* Ex. B at C.12 & C.13. Yet Parker never produced to DHECC or to the Court any 2009 "daily catch record" that he said he maintained. Parker's 2010 catch records provided to the GCCF evidence the inflation Parker made to this claim, showing 2010 pre-spill catch of approximately 265 pounds of shrimp per trip, rather than the 1,500 to 2,000 pounds of shrimp per trip that Parker later claimed to the DHECC. *See* Ex. B.

D.    <u>Judgement against Parker is Appropriate</u>

Parker's misrepresentations to the DHECC defrauded and caused damage to a program set up to protect proceeds intended for those harmed by the spill. This type of

fraud against the DHECC cannot be tolerated.  *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (stating that "institutions set up to protect and safeguard the public [are] institutions in which fraud cannot complacently be tolerated consistently with the good order of society.").  Abundant evidence documents that Parker intended to submit false evidence to inflate his fraudulent claim, and that restitution in this context should be ordered.  *In re HealthSouth Corp. Shareholders Litigation*, 845 A.2d 1096, 1105-06 (Del. Ch. 2003), *aff'd.* 847 A.2d 1121 (Del. 2004) (ordering restitution by company officer who had submitted incorrect share values to the company's board during a buy back, as officer was "the party with superior access to information and the primary duty to ensure the accuracy of the financial statements").

Parker's misrepresentations of his shrimping revenue in his sworn statements and the contradictions of his representations at different points in the claim process amply support an order of restitution.  Parker's inconsistencies and false representations rendered his claims fraudulent and require clawback of the funds paid by the DHECC.

As the Court has recognized many times, it is well-accepted that one who receives a judgment through fraud is bound to make restitution.  *Zirlott* Order at 6; *Thonn* Order at 21; Restatement (Third) of Restitution and Unjust Enrichment § 13 (2011) ("A transfer induced by fraud or material misrepresentation is subject to rescission and restitution.  The transferee is liable in restitution as necessary to avoid unjust enrichment.")  Restitution here is both reasonable and proper.

E.     <u>Conclusion</u>

The totality of the record shows that Parker defrauded the DHECC, and the Special

Master is entitled to judgment as a matter of law. The Special Master respectfully requests

that the motion for repayment be granted.

Respectfully submitted,

LOUIS J. FREEH
SPECIAL MASTER

By: _____/s/  Gregory A. Paw_____
Gregory A. Paw
Counsel to the Special Master

Dated:  July 15, 2015

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the above and foregoing motion and supporting documents have been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, and that a copy of the foregoing have been served this ___15th___ day of ____July____, 2015, by electronic mail, on the following:

> Hope L. Harper, T.A.
> H.L. Harper & Associates, L.L.C.
> 1631 Elysian Fields Avenue
> New Orleans, LA 70117
> *Attorney for Wardell Parker*

> /s/Gregory A. Paw_____
> Counsel