BP'S FINAL PROPOSAL REGARDING CLAIM NO. 174405

In an effort to secure more than $44 million in payments to which it has no entitlement, Claimant Apache Louisiana Minerals makes the incredible contention that it is not an oil and gas company. The fundamental problem with this contention is that it is contradicted and precluded by Claimant's own admissions and affirmative statements and representations to the Settlement Program, to investors, to federal regulators, to state regulators, and to the business community. These admissions, statements and representations, while against Claimant's present interests, are Apache's own statements of the nature of its business, not BP's nor any other entity's.[1]

Moreover, the fact that Claimant uses the surface rights of the subject property for hunting and environmental mitigation in no way disassociates and removes Claimant from its primary, daily, and significant role in the oil and gas industry. Such secondary uses of land are common among oil and gas companies in order to mitigate impacts from the primary use for oil and gas extraction. Claimant has affirmatively represented and stated to federal regulators and investors that it holds the property for purposes of the sole mission of the entire Apache

---

[1] In other claims, Claimant has argued that BP has no right to submit to the Appeals Panel Claimant's own admissions to federal and state regulators and investors that Claimant is an oil and gas company. Claimant is wrong. The Settlement Program is only permitted to award compensation to Class Members. Claimants who are excluded are not Class Members. Here, Claimant did not disclose to the Settlement Program that it is excluded from the class. The Appeals Panel, which pursuant to Section 6.4 reviews *de novo* the determination of the Settlement Program "to enforce compliance with [the] Agreement as approved by the Court," must be able to review the actual evidence that is dispositive as to whether Claimant is excluded and which Claimant withheld from the Settlement Program. Where Claimant omits from its own submissions evidence that is relevant to determining whether Claimant is a class member, the Appeals Panel may consider such omitted evidence. For example, the Appeals Panel has taken notice of an excluded claimant's website where the claimant, like Claimant here, failed to acknowledge its excluded status. *See* Redacted Appeals Panel Decision, attached hereto as Exhibit AD. To accept Claimant's position with regard to the record would be to invite fraud and inaccuracy. Having failed to disclose its excluded status, Claimant cannot be heard to argue that the Appeals Panel is precluded from considering facts (particularly Claimant's own admissions) that Claimant should have made known to the Settlement Program but did not. Any other outcome would permit a fraud on the entire process.

1

Corporate family, including Claimant -- namely the extraction of oil and gas.  If it were really the case (and it is not), as Claimant now asserts, that Claimant has nothing to do with the oil and gas industry, Claimant and its parent have made representations and statements to the federal Securities and Exchange Commission and to investors for years that are now entirely inconsistent with Claimant's current position.

BP asks that the Appeal Panel see this claim for what it is:  an oil and gas company that in every other forum, including in its claim submission here, has trumpeted itself as an oil and gas company, and in general, as a leader in the oil and gas field that now seeks to take advantage of the Settlement Agreement from which it is expressly excluded by attempting to disavow its admitted business purpose.

I.      <u>Claimant Has Admitted and Affirmatively Represented Repeatedly And Publicly That It Is An Oil and Gas Company</u>

As explained in BP's opening memorandum, at every turn and in every venue, Claimant has identified itself as an oil and gas company.[2]

*First*, *it is undisputed that* on the Claim Form for the very claim at issue in this appeal, Claimant self-reported its NAICS code as 21111.  This is the NAICS code for "Oil and Gas Extraction."  Claimant makes the disingenuous argument that its self-identified NAICS code (code 21111), which applies to companies engaged in "Oil and Gas Extraction," is not excluded because it is not listed on Exhibit 17.  As Claimant must acknowledge, every company that falls with Code 21111 falls into one of two subcodes, 211111 - Crude Petroleum and Natural Gas

---

[2] Such admissions against interest are recognized as particularly important evidence that is given significant weight.  Indeed, "admissions against proprietary interests[] carry their own indicia of credibility" because individuals and corporations are unlikely to make declarations contrary to their interests unless such statements are true.  *United States v. Harris*, 403 U.S. 573, 584 (1971).  *See also* Fed. R. Evid. 804(b)(3); La. Evid. Code 804(b)(3) (statements against the declarant's own "pecuniary or proprietary interest" are by their nature sufficiently reliable and trustworthy).

Extraction - and 211112 - Natural Gas Liquid Extraction.  Both of these subcodes are expressly excluded under the Settlement Agreement.  *See* Settlement Agreement, Exhibit 17.  That means that every single company falling under Code 21111 necessarily is excluded, because every single subcode of 21111 is expressly excluded.  This is the plain language of the Settlement Agreement.

*Second*, *it is undisputed that* Claimant affirmatively represents that it is, and advertises itself as, an oil and gas company.  When Claimant registered with its local Houma, Louisiana Chamber of Commerce, it was required to identify the industry in which it participated.  Claimant identified itself as a member of the "Oil & Gas" industry and is thus listed in the Oil & Gas directory in the Houma Chamber of Commerce.[3]

*Third*, *it is undisputed that* Claimant is a member of the Louisiana Oil and Gas Association, whose sole purpose is to represent members of the Louisiana oil and gas industry.

*Fourth, it is undisputed that* Claimant and its parent have affirmatively represented and stated publically to investors under penalty of federal securities laws that Claimant is "an independent energy company that explores for, develops, and produces natural gas, crude oil, and natural gas liquids." *See* Apache Corp. Form 10-K for 2012, p.1. Claimant seeks to dodge its own admissions by arguing that the admissions only concern its parent, and not Claimant itself.  The problem with Claimant's argument is that it is demonstrably inaccurate.  For example, the annual report is submitted on behalf of the entire Apache corporate family, including Claimant.  *See* Apache Corp. Form 10-K for 2012, Ex. 21.1; p. 1 (attached as Exhibit 1 to BP's Initial Proposal) ("References to 'Apache' or the 'Company' include Apache Corporation and its consolidated subsidiaries…").  On behalf of the entire corporate family, including Claimant, the

---

[3] Notably, there is a category for "Land Company," but Claimant did not identify itself as a Land Company and thus it is not listed in that category with the Chamber of Commerce.

3

annual report represents that all of the Apache companies are "engaged in a single line of business. Both domestically and internationally, the Company explores for, develops, and produces natural gas crude oil and natural gas liquids." *See id*. at Note 13 (attached as Exhibit 1 to BP's Initial Proposal). Apache Corporation further represents that it and Claimant earned 100% of their revenues from "Oil and gas production revenues." *See id.* Similar representations are made in Apache's 10-K Filing (attached as Exhibit 5 to BP's Initial Proposal), which states: "We treat all operations as one line of business." Claimant's representations in its SEC filings have great importance. *See, e.g., Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. P'ship*, 840 F. Supp. 770, 778 n.7 (D. Or. 1993) *aff'd*, 76 F.3d 1003 (9th Cir. 1996) (holding the defendants were precluded from disputing the accuracy of statements made in a Form 10-Q that it filed with the SEC because it was a "statutorily mandated admission"); *Lewis v. Atlas Corp.*, 158 F.2d 599, 602 (3d Cir. 1946) ("Plaintiff can hardly be in a position of asserting the existence of an agreement before a public regulatory body and denying it before a court"). Moreover, Claimant's current unsound position that it is not an oil and gas company is in conflict with the statements that Claimant made to the SEC and investors in its public filings.

*Fifth*, *it is undisputed that* when Claimant purchased the subject property, it contractually promised to develop, maintain, and operate the wells located on the property at issue -- activities that fall squarely within the examples of excluded oil company activities provided in the Settlement Agreement, including "preparing, maintaining or constructing petroleum or natural gas well-sites or other extraction sites." *See* Settlement Agreement, §2.2.4.5. *See also* Conveyance Contract at p.1 , incorporating Act of Sale §4.4(a), (attached as Exhibit 2 to BP's Initial Proposal).

4

*Sixth*, *it is undisputed that* Claimant agreed in the relevant acquisition contracts to perform several additional activities of an oil and gas company, including to i) market hydrocarbons; ii) sell hydrocarbons with reasonable and prudent business judgment and in accordance with sound oil and gas field practices; and iii) comply with accounting principles and Council of Petroleum Accountants Society standards."[4]  *See* Exhibit 2 to BP's Initial Proposal at §4.3, §4.4(a), §4.6.

*Seventh*, *it is undisputed that* in connection with the purchase of the subject property, Apache Corporation proudly informed investors that the acquisition would increase its oil and gas drilling activities.

*Last, it is undisputed that* in the event that Claimant is paid $44 million on its wetlands claims, those payments will be reflected on the Apache consolidated tax return--a consolidated tax return filed by an oil and gas company for oil and gas activities.

In sum, every public statement, every statement to federal and state regulators, and every filing made by Claimant declares under the law that it is an oil and gas company.  When it made its claim here it identified itself as an oil and gas company.  Only now, in an effort to wrongfully obtain $44 million, does it suddenly proclaim itself to be something other than what it always is and has been.  Claimant cannot square its arguments here with what it has said to the investment community, the SEC, and to others.  That is because its claim here is simply improper.

II.   Claimant's Arguments Regarding Its Secondary Activities Do Not Change Its Status As An Oil and Gas Company

Notwithstanding all of its admissions, which under the law should be binding or controlling, Claimant, in an effort to secure tens of millions of dollars of claims awards, now

---

[4] The Council of Petroleum Accountants Society "provides expertise for the oil and gas industry through the development of Model Form Accounting procedures, publications, and education."

argues that it is merely a land management company and has nothing to do with oil and gas. Claimant suggests that perhaps BP is confusing Claimant with its parent. Claimant is wrong on all counts.

As an initial matter, Claimant cannot now rewrite the nature of its business. It has told the Settlement Program, investors, federal regulators and state regulators that it is an oil and gas company, and it advertises itself as an oil and gas company. That is because it is an oil and gas company.

Moreover, the fact that Claimant happens to perform certain secondary activities with regard to the surface rights (which sit atop its mineral rights) does nothing to undercut the fact that Claimant purchased the subject property to expand the mineral extraction efforts that that are the sworn sole business line of the entire Apache corporate family. It is common for oil and gas companies that own large tracts of property for the purpose of extracting fossil fuels to use the surface rights for other purposes, including leasing for hunting and for environmental mitigation projects. *See* Report: Oil and Gas Can Boost Economies and Outdoor Recreation, available at http://loga.la/report-oil-and-gas-can-boost-economies-and-outdoor-recreation/, last visited August 22, 2013.[5] Indeed, these secondary uses are for purposes of mitigating the environmental impacts of the primary oil and gas use of the property. The fact that Claimant makes secondary uses of the property's surface rights is irrelevant.

Likewise, the fact that Claimant itself may not be doing the oil extraction but instead holds the property so that extraction can be performed by a sibling or parent within the Apache corporate family is irrelevant. The Settlement Agreement's exclusion states that these exclusions are "based on the substantive nature of the business, not the legal or juridical form of that

---

[5] As noted in BP's Initial Proposal, Claimant is a member of the Louisiana Oil and Gas Association, the publisher of this Report.

business." *See* Settlement Agreement, § 2.2.4.5.  The nature of Claimant's business is oil and gas extraction, as it has said, and it leases the property to its parent or others to fulfill that business purpose.  As Claimant has affirmatively represented and admitted to the SEC and investors, Apache Corporation's entire corporate family, including Claimant itself, is engaged in the effort to generate revenue from oil and gas extraction.

Claimant is misleading (at best) when it suggests to the panel that "[o]n occasion, mineral leases are granted by ALM to third parties to explore for minerals on its property, as is typical with most coastal landowners in Louisiana."  *See* Exhibit A to Claimant's Initial Proposal, p.4.  The supposed third party is a member of the Apache corporate family, and when Claimant leases interests in oil and gas wells to Apache Corporation, *the same person* signs the Lease document as both Claimant Apache Louisiana Minerals (the Lessor) and as Apache Corporation (the Lessee).  *See* Ex. A (July 6, 2004 - Apache-ALM oil and gas lease - Terrebonne); Ex. B (January 11, 2005 - Apache-ALM oil and gas lease - Terrebonne); Ex. C (May 6, 2005 - Apache-ALM oil and gas lease - Terrebonne); Ex. D (May 6, 2005 - Apache-ALM oil and gas lease - Terrebonne); Ex. E (June 3, 2005 - Apache-ALM oil and gas lease - Terrebonne); Ex. F (October 11, 2006 - Apache-ALM oil and gas lease - Terrebonne); Ex. G (March 16, 2007 - Apache-ALM oil and gas lease - Terrebonne); Ex. H (May 8, 2007 - Apache-ALM oil and gas lease - Terrebonne); Ex. I (January 11, 2005 - Apache-ALM oil and gas lease - Lafourche); Ex. J (January 11, 2005 - Apache-ALM oil and gas lease - Lafourche); Ex. K (May 1, 2007 - Apache-ALM oil and gas lease amendment - Lafourche); Ex. L (January 22, 2010 - Apache-ALM oil and gas lease - Lafourche); Ex. M (July 16, 2010 - Apache-ALM oil and gas lease - Lafourche); Ex. N (January 22, 2010 - Apache-ALM oil and gas lease - Plaquemines); Ex. O (February 3, 2010 - Apache-ALM oil and gas lease amendment - Plaquemines).

Claimant's attempted disassociation from its parent crumbles further as the same holds true for other oil and gas-related documents, such as unitization agreements and land conveyances where both Claimant and parent Apache are parties.  Again, the *very same person* signs on behalf of both Claimant and Apache Corporation.  *See* Ex. P (February 24, 2003 - Apache-ALM conveyance - Terrebonne); Ex. Q (September 16, 2003 - unitization agreement by Apache, BP, and ALM - Terrebonne); Ex. R (January 5, 2004 - unitization agreement by Apache, Pinnacle Resources, and ALM - Terrebonne); Ex. S (June 6, 2005 - unitization agreement by Henican Terrebonne Property, Lala Land Leasing, ALM, Apache, BP, and Energy Partners - Terrebonne); Ex. T (August 10, 2005 - unitization agreement by ALM, Energy Partners, and Apache - Terrebonne); Ex. U (August 10, 2005 - unitization agreement by Henican Terrebonne Property, Lala Land Leasing, ALM, Apache, and Energy Partners - Terrebonne); Ex. V (October 6, 2006 - lease amendment by ALM, Apache, and BP - Terrebonne); Ex. W (October 11, 2006 - unitization agreement by Henican Terrebonne Property, Lala Land Leasing, ALM, Apache, and Energy Partners - Terrebonne); Ex. X (July 19, 2007 - unitization agreement amendment by Apache, Petroquest Energy, Denbury Onshore, and ALM - Terrebonne); Ex. Y (June 30, 2004 - Apache-ALM conveyance- Plaquemines).

Moreover, Claimant's core business activities  also involve its dealings with other companies that, like Claimant, are involved in the oil and gas industry. In fact, a review of publicly filed documents, including, among other things, oil and gas leases, lease amendments, declarations, conveyances, permits, and releases for three Louisiana parishes reveal a total of 363 oil and gas-related filings - a far cry from "occasional" dealings with third parties. *See* Ex. Z (Terrebonne parish public record search - 271 filings); Ex. AA (Lafourche parish public record search - 51 filings); Ex. AB (Plaquemines parish public record search - 41 filings).

And, of course, if any monies are paid to the Claimant, those monies will be treated as part of the consolidated tax return of the parent, which even Claimant admits in its Initial Proposal is an oil and gas company.

Finally, Claimant attempts to dodge the weight of this evidence by casting it all as hearsay.  A party's admissions are not hearsay.  *See, e.g.,* Federal Rule of Evidence 801(d)(2); *Cowen v. Allstate Ins. Co.*, No. 11-118, 2011 WL 5869449, at *4 (E.D. La. Nov. 22, 2011) ("a statement is not hearsay if it is offered against a party, and it is the party's own statement"). Therefore, Exhibits 1 - 7 to BP's Initial Proposal and Exhibits A-Y to BP's Final Proposal are not hearsay.  All of the other exhibits provided by BP fall under specific exceptions to the hearsay rule, including the business records and public records exceptions, or would otherwise be admissible under Rule 807 due to the trustworthiness and probative value of these documents. *See* Federal Rule of Evidence 803(6) - (9); Federal Rule of Evidence 807.  Even if one of the documents at issue did constitute hearsay and is not subject to an exception, the hearsay rule does not apply to this appeals process.

III.   <u>Claimant's Argument That BP Is Somehow Precluded From Appealing Its Claims Is Wrong</u>

To date, BP has appealed twenty-three awards made by the Settlement Program to Claimant.  Claimant makes the meritless argument that BP is somehow estopped from contesting the subject award because BP did not appeal 2 out of 26 awards to date.[6]  BP did not, and does not now, acknowledge that either of these 2 awards was proper.[7]  As to one of these awards,

---

[6] BP notes that Claimant has rendered some of these appeals inactive as a result of Claimant seeking re-review of the Claims by the Settlement Program.

[7] During the pendency of these appeals processes, a second non-appealable award has since been issued to Claimant. *See* Claim Number 174459. As with Claim Number 174555, BP has no right of appeal under the Settlement Agreement because the award was for less than $25,000 but does not agree that this award is proper.

9

Claimant admits that BP has no right of appeal under the Settlement Agreement because the award was for less than $25,000. *See* Settlement Agreement at Rule 7(b). The fact that BP did not appeal a claim that it has no appeal rights is irrelevant.

Nor is there any merit to Claimant's argument that BP cannot appeal the instant claim because it did not appeal an unrelated second claim, Claim Number 174553. The Settlement Agreement has an express "no waiver" clause -- which bars Claimant's argument. *See* Settlement Agreement, § 35.1. Just as each claim filed by Claimant is separate and distinct, whether BP elects to appeal any given claim has absolutely no bearing on the issue of whether BP may contest an award made for any other claim. A recent decision of a three-judge Appeal Panel confirms that there has been no waiver. In that case, the claimant argued that BP had waived its right to claim application of an exclusion with regard to one award where BP did not appeal two other claims awards made to members of the claimant's corporate family operating under the same name.[8] The Appeals Panel rejected the claimant's argument, holding that:

> BP did not appeal two of the claims and withdrew its appeals in the other two claims. While BP's decisions on other claims are interesting, such decisions are not binding precedent for this Panel. BP has appealed the issue present in the instant Claim. Under Section 6.4 of the Settlement Agreement, this Panel must conduct "a de novo review of the complete record in the Settlement Program to enforce compliance with this Agreement as approved by the Court." While consistency of results is a goal of the appeals process, the instant claim is the first appeal of an award to a member of the [] group.

Ex. AC.

For the same reasons as articulated in the above-quoted Appeals Panel decision, there has been no waiver with regard to the pending appeals. Moreover, as a factual matter, the fact that

---

[8] Claimant seeks to distinguish this decision by noting that the claims awards that BP did not appeal for Claimant are for different parcels of land owned by the same corporate entity, as opposed to different claims by members of the same corporate family. The principle articulated by the Appeals Panel is the same regardless of corporate structure. Each claim award stands alone.

BP did not appeal one other award to Claimant is nothing more than an unfortunate oversight. The Settlement Program has made more than 50,000 awards. Claimant has not and cannot point to a shred of evidence to suggest that there was an intentional waiver of rights, as there was not. Just the opposite, BP has continually and unequivocally asserted its position that Claimant is excluded from participating in the Settlement Program and is not entitled to any award under that program.[9]

\* \* \* \* \*

For all of the forgoing reasons, Claimant is excluded from the Settlement Agreement. BP therefore submits a Final Proposal of $0. If the Panel has any questions on this issue, BP recommends that the Panel remand the claim to the Settlement Program with instructions to perform a full analysis of the application of the oil and gas exclusion.

---

[9] Indeed, at the time that Claimant accepted payments in July and August 2013, Claimant was on notice of BP's position both through a letter sent by BP's counsel to the Settlement Program and BP's numerous Notices of Appeal in other contemporaneously filed claims.