<u>BP'S FINAL PROPOSAL REGARDING CLAIM NO. 174520</u>

In an effort to secure more than $42 million in payments to which it has no entitlement, Claimant Apache Louisiana Minerals makes the incredible contention that it is not an oil and gas company.  The fundamental problem with this contention is that it is contradicted and precluded by Claimant's own admissions and affirmative statements and representations to the Settlement Program, to investors, to federal regulators, to state regulators, and to the business community. These admissions, statements and representations, while against Claimant's present interests, are Apache's own statements of the nature of its business, not BP's nor any other entity's.

Moreover, the fact that Claimant uses the surface rights of the subject property for hunting and environmental mitigation in no way disassociates and removes Claimant from its primary, daily, and significant role in the oil and gas industry.  Such secondary uses of land are common among oil and gas companies in order to mitigate impacts from the primary use for oil and gas extraction.  Claimant has affirmatively represented and stated to federal regulators and investors that it holds the property for purposes of the sole mission of the entire Apache Corporate family, including Claimant -- namely the extraction of oil and gas.  If it were really the case (and it is not), as Claimant now asserts, that Claimant has nothing to do with the oil and gas industry, Claimant and its parent have made representations and statements to the federal Securities and Exchange Commission and to investors for years that are now entirely inconsistent with Claimant's current position.

BP asks that the Appeal Panel see this claim for what it is:  an oil and gas company that in every other forum, including in its claim submission here, has trumpeted itself as an oil and gas company, and in general, as a leader in the oil and gas field that now seeks to take advantage

1

of the Settlement Agreement from which it is expressly excluded by attempting to disavow its admitted business purpose.

I.      Claimant Has Admitted and Affirmatively Represented Repeatedly And Publicly That It Is An Oil and Gas Company

As explained in BP's opening memorandum, at every turn and in every venue, Claimant has identified itself as an oil and gas company.[1]

*First*, *it is undisputed that* on the Claim Form for the very claim at issue in this appeal, Claimant self-reported its NAICS code as 211110.  This is the NAICS code for "Oil and Gas Extraction."  Claimant now makes the meritless argument that NAICS code 211110 is not excluded under the Settlement Agreement.  What Claimant leaves out is that the Settlement Agreement lists the only two available subsets under Claimant's selected Code -- 211111 Crude Petroleum and Natural Gas Extraction and 211112 Natural Gas Liquid Extraction -- both of which are expressly excluded under the Settlement Agreement.  *See* Settlement Agreement, Exhibit 17.  NAICS Code 211110 is thus necessarily subsumed in Exhibit 17 and, regardless of which subpart applies to Claimant, it is excluded.

*Second*, *it is undisputed that* Claimant affirmatively represents that it is, and advertises itself as, an oil and gas company.  When Claimant registered with its local Houma, Louisiana Chamber of Commerce, it was required to identify the industry in which it participated.

---

[1] Such admissions against interest  are recognized as particularly important evidence that is given significant weight.  Indeed, "admissions against proprietary interests[] carry their own indicia of credibility" because individuals and corporations are unlikely to make declarations contrary to their interests unless such statements are true.  *United States v. Harris*, 403 U.S. 573, 584 (1971).  *See also* Fed. R. Evid. 804(b)(3); La. Evid. Code 804(b)(3) (statements against the declarant's own "pecuniary or proprietary interest" are by their nature sufficiently reliable and trustworthy).

Claimant identified itself as a member of the "Oil & Gas" industry and is thus listed in the Oil &

Gas directory in the Houma Chamber of Commerce.[2]

 *Third*, *it is undisputed that* Claimant is a member of the Louisiana Oil and Gas

Association, whose sole purpose is to represent members of the Louisiana oil and gas industry.

 *Fourth, it is undisputed that* Claimant and its parent have affirmatively represented and

stated publically to investors under penalty of federal securities laws that Claimant is "an

independent energy company that explores for, develops, and produces natural gas, crude oil,

and natural gas liquids." *See* Apache Corp. Form 10-K for 2012, p.1. Claimant is identified as an

oil and gas company in the consolidated 10-K forms filed for the entire Apache corporate family,

including Claimant.  Apache admits that it and Claimant are "engaged in a single line of

business.  Both domestically and internationally, the Company explores for, develops, and

produces natural gas crude oil and natural gas liquids."  *See id*. at Note 13 (attached as Exhibit 1

to BP's Initial Proposal).  Apache Corporation further represents that it and Claimant earned

100% of their revenues from "Oil and gas production revenues." *See id.*  Claimant's

representations in its SEC filings have great importance.  *See, e.g., Oregon RSA No. 6, Inc. v.

Castle Rock Cellular of Oregon Ltd. P'ship*, 840 F. Supp. 770, 778 n.7 (D. Or. 1993) *aff'd*, 76

F.3d 1003 (9th Cir. 1996) (holding the defendants were precluded from disputing the accuracy of

statements made in a Form 10-Q that it filed with the SEC because it was a "statutorily mandated

admission"); *Lewis v. Atlas Corp.*, 158 F.2d 599, 602 (3d Cir. 1946) ("Plaintiff can hardly be in a

position of asserting the existence of an agreement before a public regulatory body and denying

it before a court").  Moreover, Claimant's current unsound position that it is not an oil and gas

---

[2] Notably, there is a category for "Land Company," but Claimant did not identify itself as a Land
Company and thus it is not listed in that category with the Chamber of Commerce.

company is in conflict with the statements that Claimant made to the SEC and investors in its public filings.

*Fifth*, *it is undisputed that* when Claimant purchased the subject property, it contractually promised to develop, maintain, and operate the wells located on the property at issue -- activities that fall squarely within the examples of excluded oil company activities provided in the Settlement Agreement, including "preparing, maintaining or constructing petroleum or natural gas well-sites or other extraction sites." *See* Settlement Agreement, §2.2.4.5. *See also* Conveyance Contract at p.1 , incorporating Act of Sale §4.4(a), (attached as Exhibit 2 to BP's Initial Proposal).

*Sixth*, *it is undisputed that* Claimant agreed in the relevant acquisition contracts to perform several additional activities of an oil and gas company, including to i) market hydrocarbons; ii) sell hydrocarbons with reasonable and prudent business judgment and in accordance with sound oil and gas field practices; and iii) comply with accounting principles and Council of Petroleum Accountants Society standards."[3] *See* Exhibit 2 to BP's Initial Proposal at §4.3, §4.4(a), §4.6.

*Seventh*, *it is undisputed that* in connection with the purchase of the subject property, Apache Corporation proudly informed investors that the acquisition would increase its oil and gas drilling activities.

*Last, it is undisputed that* in the event that Claimant is paid $42 million on its wetlands claims, those payments will be reflected on the Apache consolidated tax return--a consolidated tax return filed by an oil and gas company for oil and gas activities.

---

[3] The Council of Petroleum Accountants Society "provides expertise for the oil and gas industry through the development of Model Form Accounting procedures, publications, and education."

4

In sum, every public statement, every statement to federal and state regulators, and every filing made by Claimant declares under the law that it is an oil and gas company. When it made its claim here it identified itself as an oil and gas company. Only now, in an effort to wrongfully obtain $42 million, does it suddenly proclaim itself to be something other than what it always is and has been. Claimant cannot square its arguments here with what it has said to the investment community, the SEC, and to others. That is because its claim here is simply improper.

II.   Claimant's Arguments Regarding Its Secondary Activities Do Not Change Its Status As An Oil and Gas Company

Notwithstanding all of its admissions, which under the law should be binding or controlling, Claimant, in an effort to secure tens of millions of dollars of claims awards, now argues that it is merely a land management company and has nothing to do with oil and gas. Claimant suggests that perhaps BP is confusing Claimant with its parent. Claimant is wrong on all counts.

As an initial matter, Claimant cannot now rewrite the nature of its business. It has told the Settlement Program, investors, federal regulators and state regulators that it is an oil and gas company, and it advertises itself as an oil and gas company. That is because it is an oil and gas company.

Moreover, the fact that Claimant happens to perform certain secondary activities with regard to the surface rights (which sit atop its mineral rights) does nothing to undercut the fact that Claimant purchased the subject property to expand the mineral extraction efforts that that are the sworn sole business line of the entire Apache corporate family. It is common for oil and gas companies that own large tracts of property for the purpose of extracting fossil fuels to use the surface rights for other purposes, including leasing for hunting and for environmental mitigation projects. *See* Report: Oil and Gas Can Boost Economies and Outdoor Recreation, available at

5

http://loga.la/report-oil-and-gas-can-boost-economies-and-outdoor-recreation/, last visited
August 22, 2013.[4]  Indeed, these secondary uses are for purposes of mitigating the environmental
impacts of the primary oil and gas use of the property.  The fact that Claimant makes secondary
uses of the property's surface rights is irrelevant.

Likewise, the fact that Claimant itself may not be doing the oil extraction but instead
holds the property so that extraction can be performed by a sibling or parent within the Apache
corporate family is irrelevant.  The Settlement Agreement's exclusion states that these exclusions
are "based on the substantive nature of the business, not the legal or juridical form of that
business." *See* Settlement Agreement, § 2.2.4.5.  The nature of Claimant's business is oil and gas
extraction, as it has said, and it leases the property to its parent or others to fulfill that business
purpose.  As Claimant has affirmatively represented and admitted to the SEC and investors,
Apache Corporation's entire corporate family, including Claimant itself, is engaged in the effort
to generate revenue from oil and gas extraction.

Claimant is misleading (at best) when it suggests to the panel that "[o]n occasion, mineral
leases are granted by ALM to third parties to explore for minerals on its property, as is typical
with most coastal landowners in Louisiana."  *See* Exhibit A to Claimant's Initial Proposal, p.4.
The supposed third party is a member of the Apache corporate family, and when Claimant leases
interests in oil and gas wells to Apache Corporation, ***the same person*** signs the Lease document
as both Claimant Apache Louisiana Minerals (the Lessor) and as Apache Corporation (the
Lessee)*.  See* Ex. A (July 6, 2004 - Apache-ALM oil and gas lease - Terrebonne); Ex. B (January
11, 2005 - Apache-ALM oil and gas lease - Terrebonne); Ex. C (May 6, 2005 - Apache-ALM oil
and gas lease - Terrebonne); Ex. D (May 6, 2005 - Apache-ALM oil and gas lease - Terrebonne);

---

[4] As noted in BP's Initial Proposal, Claimant is a member of the Louisiana Oil and Gas
Association, the publisher of this Report.

Ex. E (June 3, 2005 - Apache-ALM oil and gas lease - Terrebonne); Ex. F (October 11, 2006 -

Apache-ALM oil and gas lease - Terrebonne); Ex. G (March 16, 2007 - Apache-ALM oil and

gas lease - Terrebonne); Ex. H (May 8, 2007 - Apache-ALM oil and gas lease - Terrebonne); Ex.

I (January 11, 2005 - Apache-ALM oil and gas lease - Lafourche); Ex. J (January 11, 2005 -

Apache-ALM oil and gas lease - Lafourche); Ex. K (May 1, 2007 - Apache-ALM oil and gas

lease amendment - Lafourche); Ex. L (January 22, 2010 - Apache-ALM oil and gas lease -

Lafourche); Ex. M (July 16, 2010 - Apache-ALM oil and gas lease - Lafourche); Ex. N (January

22, 2010 - Apache-ALM oil and gas lease - Plaquemines); Ex. O (February 3, 2010 - Apache-

ALM oil and gas lease amendment - Plaquemines).

Claimant's attempted disassociation from its parent crumbles further as the same holds

true for other oil and gas-related documents, such as unitization agreements and land

conveyances where both Claimant and parent Apache are parties.  Again, the ***very same person***

signs on behalf of both Claimant and Apache Corporation.  *See* Ex. P (February 24, 2003 -

Apache-ALM conveyance - Terrebonne); Ex. Q (September 16, 2003 - unitization agreement by

Apache, BP, and ALM - Terrebonne); Ex. R (January 5, 2004 - unitization agreement by

Apache, Pinnacle Resources, and ALM - Terrebonne); Ex. S (June 6, 2005 - unitization

agreement by Henican Terrebonne Property, Lala Land Leasing, ALM, Apache, BP, and Energy

Partners - Terrebonne); Ex. T (August 10, 2005 - unitization agreement by ALM, Energy

Partners, and Apache - Terrebonne); Ex. U (August 10, 2005 - unitization agreement by Henican

Terrebonne Property, Lala Land Leasing, ALM, Apache, and Energy Partners - Terrebonne); Ex.

V (October 6, 2006 - lease amendment by ALM, Apache, and BP - Terrebonne); Ex. W (October

11, 2006 - unitization agreement by Henican Terrebonne Property, Lala Land Leasing, ALM,

Apache, and Energy Partners - Terrebonne); Ex. X (July 19, 2007 - unitization agreement

amendment by Apache, Petroquest Energy, Denbury Onshore, and ALM - Terrebonne); Ex. Y

(June 30, 2004 - Apache-ALM conveyance- Plaquemines).

Moreover, Claimant's core business activities  also involve its dealings with other

companies that, like Claimant, are involved in the oil and gas industry. In fact, a review of

publicly filed documents, including, among other things, oil and gas leases, lease amendments,

declarations, conveyances, permits, and releases for three Louisiana parishes reveal a total of 363

oil and gas-related filings - a far cry from "occasional" dealings with third parties. *See* Ex. Z

(Terrebonne parish public record search - 271 filings); Ex. AA (Lafourche parish public record

search - 51 filings); Ex. AB (Plaquemines parish public record search - 41 filings).

And, of course, if any monies are paid to the Claimant, those monies will be treated as

part of the consolidated tax return of the parent, which even Claimant admits in its Initial

Proposal is an oil and gas company.

III.   Claimant's Argument That BP Is Somehow Precluded From Appealing Its Claims Is Wrong

To date, BP has appealed twenty awards made by the Settlement Program to Claimant.

Claimant now makes the meritless argument that BP is somehow estopped from contesting the

subject award because BP did not appeal 2 out of 20 awards to date.[5]  BP did not, and does not

now, acknowledge that either of these 2 awards was proper.  As to one of these awards, Claimant

admits that BP has no right of appeal under the Settlement Agreement because the award was for

less than $25,000.  Accordingly, that claim was not even brought to BP's attention.  The fact that

BP did not appeal a claim that it has no appeal rights is irrelevant.

---

[5] BP notes that Claimant has rendered some of these appeals inactive as a result of Claimant seeking re-review of the Claims by the Settlement Program.

Nor is there any merit to Claimant's argument that BP cannot appeal the instant claim because it did not appeal an unrelated second claim, Claim Number 174553.  The Settlement Agreement has an express "no waiver" clause -- which bars Claimant's argument. *See* Settlement Agreement, § 35.1.  Just as each claim filed by Claimant is separate and distinct, whether BP elects to appeal any given claim has absolutely no bearing on the issue of whether BP may contest an award made for any other claim.  BP has appealed the instant claim, and the only relevant question is whether the instant claim is eligible for compensation under the Settlement Agreement.

And, as a factual matter, BP's failure to appeal Claimant's second claim was simply the result of an unfortunate oversight.  The Settlement Program has made more than 50,000 awards.  The fact that BP, by virtue of an administrative oversight, did not appeal one of Claimant's 54 claims in no way precludes BP from appealing this or any other of Claimant's improper claims.  Claimant has not and cannot point to a shred of evidence to suggest that there was an intentional waiver of rights, as there was not.

Just the opposite, BP has continually and unequivocally asserted its position that Claimant is excluded from participating in the Settlement Program and is not entitled to any award under that program.[6]

The fact that Claimant was able to obtain payments in a prior improper claim does not operate as any estoppel and Claimant cannot be heard to argue that BP is somehow barred from appealing the instant false claim.

* * * * *

_____

[6] Indeed, at the time that Claimant accepted payments in July and August 2013, Claimant was on notice of BP's position both through a letter sent by BP's counsel to the Settlement Program and BP's numerous Notices of Appeal in other contemporaneously filed claims.

For all of the forgoing reasons, Claimant is excluded from the Settlement Agreement.  BP therefore submits a Final Proposal of $0.  If the Panel has any questions on this issue, BP recommends that the Panel remand the claim to the Settlement Program with instructions to perform a full analysis of the application of the oil and gas exclusion.

# EXHIBIT A

1184229

**Return to top**

DECLARATION OF OIL AND GAS LEASE

KNOW ALL MEN BY THESE PRESENTS, That:

APACHE LOUISIANA MINERALS, INC. a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessor, has granted a certain Oil and Gas Lease to APACHE CORPORATION, a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessee, by instrument dated effective as of January 24, 2003, by which said Lessor leased and let unto said Lessee, for a valuable consideration, and subject to the terms, conditions, and provisions of said lease, covering an undivided fifty percent (50%) interest that certain property situated in the Parish of Terrebonne, State of Louisiana, and described as follows, to wit:

DESCRIPTION OF PROPERTY

See Exhibit "A" attached hereto and made a part hereof.

Said lease is for a primary term of one (1) year, and as long thereafter as oil, gas or hydrocarbon is produced from the leased premises in paying quantities and the leased premises are being developed in accordance with the provisions of said lease, or the lease is otherwise kept in force in some other manner therein provided.

Said lease restricts transfers or assignments, but gives Lessee the right to explore and drill for and produce oil, gas and other hydrocarbon, subject to the royalties and other payments therein provided for.

This declaration is to be placed of record to serve as notice of the execution and existence of said lease, and is in no way to supersede same or to abrogate, change, alter, or modify any of the terms or conditions or any of the rights or obligations of any of the parties, all of which are set forth in detail in said lease, which is made a part hereof by reference to the same effect as though written in extenso herein.

THUS DONE AND SIGNED as of the _16th_ day of April, 2004.

LESSOR:

WITNESSES:                              **APACHE CORPORATION, Agent for**
                                        **APACHE LOUISIANA MINERALS, INC.**

                                        By: _____
                                            Attorney-in-Fact

                                        LESSEE:

WITNESSES:                              **APACHE CORPORATION**

                                        By: _____
                                            Attorney-in-Fact

412

**Return to top**

STATE OF TEXAS )
                 )
COUNTY OF HARRIS )

On this 16th day of April_____, 2004, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, agent for APACHE LOUISIANA MINERALS, INC. and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

_____
Notary Public in and for the State of Texas

My Commission Expires_____

```
EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006
```

STATE OF TEXAS )
                 )
COUNTY OF HARRIS )

On this 16th day of April_____, 2004, before me, a Notary Public, personally appeared C. R. Harden, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

_____
Notary Public in and for the State of Texas

My Commission Expires_____

```
EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006
```

**413**

**Return to top**

**EXHIBIT "A"**

Attached to and made a part of that certain Declaration of Oil and Gas Lease
dated effective January 24, 2003, by and between
Apache Louisiana Minerals, Inc., as Lessor, and
Apache Corporation, as Lessee

Leased Premises

All those portions of the following described property located in Terrebonne
Parish, Louisiana, to wit:

Township 19 South, Range 13 East:

Section 3:    South Half Southwest Quarter;
Section 10:   North Half Northwest Quarter;

Covering 160 acres, more or less.

**END**

FILED FOR RECORD
PARISH OF
TERREBONNE

'04 JUL 6 PM 2 08

_Brenda M Loser_
DEPUTY CLERK OF COURT

$\overline{O}$  414

# EXHIBIT B

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
Clerk Of Court
P.O. Box 1569
Houma, La  70361-1569
(985) 868-5660

**Return to top**

Received From :
BRADLEY BROUSSARD LAND SERVICES INC
ATTN:  RICHARD MURFF
P. O. BOX 52826
LAFAYETTE, LA  70505

**First VENDOR**

APACHE LOUISIANA MINERALS INC

**First VENDEE**

APACHE CORP

| | |
|---|---|
| Index Type :   Conveyances | File # :    1199177 |
| Type of Document : Declaration | |
| | Book :  1899        Page : 679 |
| Recording Pages :          5 | |

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Terrebonne Parish, Louisiana

Clerk Of Court

On (Recorded Date) : 01/11/2005

At (Recorded Time) : 10:27:26:000 AM

Doc ID - 003861900005

Return To :
BRADLEY BROUSSARD LAND SERVICES INC
ATTN:  RICHARD MURFF
P. O. BOX 52826
LAFAYETTE, LA  70505

0679

Do not Detach this Recording Page from Original Document

**DECLARATION OF OIL AND GAS LEASE**                                                     **Return to top**

KNOW ALL MEN BY THESE PRESENTS, That:

      **APACHE LOUISIANA MINERALS, INC.,** a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas  77056, as Lessor, has granted a certain Oil and Gas Lease to **APACHE CORPORATION,** a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas  77056, as Lessee, by instrument dated as of even date herewith, by which said Lessor leased and let unto said Lessee, for a valuable consideration, and subject to the terms, conditions, and provisions of said lease, covering an undivided fifty percent (50%) interest in that certain property situated in the Parish of Terrebonne, State of Louisiana, and described as follows, to wit:

**DESCRIPTION OF PROPERTY**

      Said property is described on Exhibit "A" attached hereto and made a part hereof and illustrated on Exhibit  "B" also attached hereto and made a part hereof.

      Said lease is for a primary term of one (1) year, and as long thereafter as oil, gas or other hydrocarbons are produced from the leased premises in paying quantities and the leased premises are being developed in accordance with the provisions of said lease, or the lease is otherwise kept in force in some other manner therein provided.

      Said lease restricts transfers or assignments, but gives Lessee the right to explore and drill for and produce oil, gas and other hydrocarbon, subject to the royalties and other payments therein provided for.

      This declaration is to be placed of record to serve as notice of the execution and existence of said lease, and is in no way to supersede same or to abrogate, change, alter, or modify any of the terms or conditions or any of the rights or obligations of any of the parties, all of which are set forth in detail in said lease, which is made a part hereof by reference to the same effect as though written in extenso herein.

      THUS DONE AND SIGNED as of the _14th_ day of December, 2004, but effective as of the 7th day of November, 2004.

WITNESSES:                                                  LESSOR:

                                                            **APACHE CORPORATION, Agent for**
                                                            **APACHE LOUISIANA MINERALS, INC.**
Name: _Scott Exitter_

Name: _WES W. REEVES_                                        By: _C. H. Harden_____
                                                                Attorney-in-Fact


WITNESSES:                                                  LESSEE:

                                                            **APACHE CORPORATION**
Name: _Scott Exitter_

Name: _WES W. REEVES_                                        By: _C. H. Harden_____
                                                                Attorney-in-Fact


680

**Return to top**

STATE OF TEXAS     §
          §
COUNTY OF HARRIS    §

  On this 1st day of December, 2004, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent of APACHE LOUISIANA MINERALS, INC., a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

            _Judy L. Falcon_
            Notary Public in and for the State of Texas

My commission expires: _7/9/05_

            JUDY L FALC__

STATE OF TEXAS     §
          §
COUNTY OF HARRIS    §

  On this 1st day of December, 2004, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

            _Judy L. Falcon_
            Notary Public State of Texas

My commission expires: _7/9/05_

            JUDY L FAL__

                681

# EXHIBIT "A"

**Return to top**

Attached to and made a part of that certain Declaration of Oil and Gas Lease dated effective November 7, 2004, by and between Apache Louisiana Minerals, Inc., as Lessor, and Apache Corporation, as Lessee

Property Description

That certain tract of land located in Section 12, T20S-R17E and Sections 108, 109 and 111, T20S-R18E Terrebonne Parish, Louisiana; said parcel of land being more particularly described as follows:

## TRACT A

Commencing at a point having Lambert plane coordinate values of X = 2,211,800.00 feet and Y = 249,750.00 feet, said point being the Point-of-Beginning;

Thence, North 88°38'19" East along the north line of Duval SUP Unit a distance of 2000.41 feet;

Thence, South a distance of 1015.09 feet;

Thence, West a distance of 1776.65 feet;

Thence, South a distance of 838.84 feet;

Thence, West a distance of 1063.19 feet;

Thence, South a distance of 42.57 feet to the southwest line of Duval SUP Unit;

Thence, North 51°29'00" West along the point of intersection with the southwest line of Duval SUP Unit a distance of 1063.19 feet;

Thence, North 51°25'44" East along the northwest line of Duval SUP Unit a distance of 2020.89 feet to the Point of Beginning;

Said tract containing a total of 88.200 acres, and is more particularly shown on that certain plat labeled Exhibit "B" attached hereto and made a part hereof.

## TRACT B

Commencing at a point having Lambert plane coordinate values of X = 2,213,217.62 feet and Y = 246,104.16 feet, said point being the Point-of-Beginning;

Thence, East a distance of 1037.42 feet to the east property line of Apache Louisiana Minerals, Inc. and the rear line of Section 70, T20S-R18E;

Thence, South 45°18'00" West along said line a distance of 650.60 feet to a point of intersection on the southwest line of Duval SUP Unit;

Thence, North 51°29'00" West along said line a distance of 734.86 feet to the Point of Beginning;

Said tract containing a total of 5.450 acres, and is more particularly shown on that certain plat labeled Exhibit "B" attached hereto and made a part hereof.

All bearings, distances and coordinates recited herein are based upon the Louisiana State Plane Coordinate System, 1927 Datum, South Zone.

1

0    682

Return to top



EXHIBIT "B"

Attached to and made part of that certain Declaration of
Oil and Gas Lease dated effective November 7, 2004, between
Apache Louisiana Minerals, Inc., as Lessor, and
Apache Corporation, as Lessee,
Lapeyrouse Field, Terrebonne Parish, LA.

| DRAWN BY: | A GIOVANNI |
| DATE: | DECEMBER 10, 2004 |
| SHEET No.: | 1 OF 1 |
| APPROVED BY: | T ALLEN |
| CAD FILE No.: | 2004-089F1.DWG |

**APACHE CORPORATION**
POST OFFICE BOX 206
HOUMA, LOUISIANA 70361-0206
TEL (985) 879-3528    FAX (985) 876-5267

683

**apache** CORPORATION

# EXHIBIT C

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
Clerk Of Court
P.O. Box 1569
Houma, La 70361-1569
(985) 868-5660

**Return to top**

**Received From :**
  APACHE CORPORATION
  2000 POST OAK BLVD., SUITE 100
  HOUSTON, TX  77056

**First VENDOR**
APACHE LOUISIANA MINERALS INC

**First VENDEE**
APACHE CORPORATION

Index Type :   Conveyances                          File # : 1209170

Type of Document : Mineral Lease
                                                     Book : 1915        Page : 744

Recording Pages :              5

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Terrebonne Parish, Louisiana

_Robt Boudreaux_
Clerk Of Court

On (Recorded Date) : 05/06/2005

At (Recorded Time) : 11:19:49:000 AM

Doc ID - 004076750005

**Return To :**
  APACHE CORPORATION
  2000 POST OAK BLVD., SUITE 100
  HOUSTON, TX  77056

**744**

Do not Detach this Recording Page from Original Document

<u>DECLARATION OF OIL AND GAS LEASE</u>                                    **Return to top**

KNOW ALL MEN BY THESE PRESENTS, That:

**APACHE LOUISIANA MINERALS, INC.**, a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas  77056, as Lessor, has granted a certain Oil and Gas Lease to **APACHE CORPORATION**, a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas  77056, as Lessee, by instrument dated as of even date herewith, by which said Lessor leased and let unto said Lessee, for a valuable consideration, and subject to the terms, conditions, and provisions of said lease, covering an undivided fifty percent (50%) interest in that certain property situated in the Parish of Terrebonne, State of Louisiana, and described as follows, to wit:

<u>DESCRIPTION OF PROPERTY</u>

Said property is described on Exhibit "A" attached hereto and made a part hereof
and illustrated on Exhibit "B" also attached hereto and made a part hereof.

Said lease is for a primary term of one (1) year, and as long thereafter as oil, gas or other hydrocarbons are produced from the leased premises in paying quantities and the leased premises are being developed in accordance with the provisions of said lease, or the lease is otherwise kept in force in some other manner therein provided.

Said lease restricts transfers or assignments, but gives Lessee the right to explore and drill for and produce oil, gas and other hydrocarbon, subject to the royalties and other payments therein provided for.

This declaration is to be placed of record to serve as notice of the execution and existence of said lease, and is in no way to supersede same or to abrogate, change, alter, or modify any of the terms or conditions or any of the rights or obligations of any of the parties, all of which are set forth in detail in said lease, which is made a part hereof by reference to the same effect as though written in extenso herein.

THUS DONE AND SIGNED as of the _13th_ day of April, 2005, but effective as of the 1st day of October, 2004.

WITNESSES:                                      LESSOR:

_Rod Eato_                                      **APACHE CORPORATION, Agent for**
Name: _Rod Eato_                                **APACHE LOUISIANA MINERALS, INC.**

_Wes W. Reeves_                                 By: _C. R. Harden_
Name: _Wes W. Reeves_                               C. R. Harden
                                                    Attorney-in-Fact


                                                LESSEE:

WITNESSES:                                      **APACHE CORPORATION**

_Rod Eato_
Name: _Rod Eato_                                By: _C. R. Harden_
                                                    C. R. Harden
_Wes W. Reeves_                                     Attorney-in-Fact
Name: _Wes W. Reeves_

L-9100670/1013 Exhibit JOAN LACroix LA5577

                                                    **745**

**Return to top**

STATE OF TEXAS                §
                             §
COUNTY OF HARRIS             §

    On this 19th day of _April_, 2005, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent of APACHE LOUISIANA MINERALS, INC., a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

_____
Notary Public in and for the State of Texas

My commission expires: _____


STATE OF TEXAS                §
                             §
COUNTY OF HARRIS             §

    On this 19th day of _April_, 2005, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

_____
Notary Public State of Texas

My commission expires: _____

2

U. 746

EXHIBIT "A"

Return to top

Attached to and made a part of that certain Declaration of Oil and Gas Lease dated effective
October 1, 2004, by and between Apache Louisiana Minerals, Inc, as Lessor,
and Apache Corporation, as Lessee.

An undivided fifty percent (50%) interest in the following described property situated in the
Bayou Jean La Croix Field, located within Section 36, T19S-R19E, Terrebonne Parish, Louisiana; said
parcel of land being more particularly described as follows:

Commencing at the northwest corner of Section 36, T19S-R19E, said point being the Point-of-
Beginning and having Lambert plane coordinate values of X = 2,261,890.35 feet and Y = 273,711.17
feet;

Thence, North 88°51'34" East along the north line of Section 36 a distance of 4055.98 feet to a
point;

Thence, South 1°36'19" East a distance of 1654.05 feet;

Thence, South 88°52'10" West a distance of 4061.31 feet;

Thence, North 1°25'15" West along the west line of said Section 36 a distance of 1653.32 feet
to the Point of Beginning;

Said tract containing a total of 154.08 acres, and is more particularly shown on that certain plat
labeled Exhibit "B" attached hereto and made a part hereof.

All bearings, distances and coordinates recited herein are based upon the Louisiana State Plane
Coordinate System, 1927 Datum, South Zone.

Said property is limited in depth from the surface of the earth down to the stratigraphic
equivalent of the base of the Textularia W formation encountered at 16,700 feet MD as seen in the
Induction Electrical log of the Placid Oil Company Laterre Company Inc. Well #D-4, located in
Section 65, Township 19 South, Range 18 East, Terrebonne Parish, Louisiana

1

ü '747

**Return to top**



EXHIBIT "B"
Attachment to that certain Oil and Gas Lease
dated October 1, 2004, by and between
Apache Louisiana Minerals, Inc., as Lessor, and
Apache Corporation, as Lessee,
Terrebonne Parish, Louisiana

| DRAWN BY: J NAQUIN | **APACHE CORPORATION** | 748 |
| DATE: DECEMBER 10, 2004 | POST OFFICE BOX 206 | |
| SHEET No.: 1 OF 1 | HOUMA, LOUISIANA 70361-0206 | |
| APPROVED BY: T ALLEN | TEL (985) 879-3528    FAX (985) 876-5267 | |

CAD FILE No.: K:\DWGS\2004\66 Min. Lease Castex 35-11\2004-056C.dwg

# EXHIBIT D

## Terrebonne Parish Recording Page

**I. Robert "Bobby" Boudreaux**
**Clerk Of Court**
P.O. Box 1569
Houma, La 70361-1569
(985) 868-5660

Return to top

**Received From :**
APACHE CORPORATION
2000 POST OAK BLVD., SUITE 100
HOUSTON, TX 77056

**First VENDOR**
PACHE LOUISIANA MINERALS INC

**First VENDEE**
APACHE CORPORATION

| | | |
|---|---|---|
| Index Type :   Conveyances | File # : 1209171 | |
| Type of Document : Mineral Lease | | |
| | Book : 1915 | Page : 749 |
| Recording Pages :              6 | | |

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Terrebonne Parish, Louisiana

_Robt Boudreaux_
Clerk Of Court

On (Recorded Date) : 05/06/2005

At (Recorded Time) : 11:23:22:000 AM

Doc ID - 004076770006

**Return To :**
APACHE CORPORATION
2000 POST OAK BLVD., SUITE 100
HOUSTON, TX 77056

Do not Detach this Recording Page from Original Document          Q     749

**Return to top**

## DECLARATION OF OIL AND GAS LEASE

KNOW ALL MEN BY THESE PRESENTS, That:

APACHE LOUISIANA MINERALS, INC. a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessor, has granted a certain Oil and Gas Lease to APACHE CORPORATION, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessee, by instrument dated as of even date herewith, by which said Lessor leased and let unto said Lessee, for a valuable consideration, and subject to the terms, conditions, and provisions of said lease, twenty-five percent of eight-eighths (25%x 8/8) interest in and to that certain property situated in the Parish of Terrebonne, State of Louisiana, and described as follows, to wit:

### DESCRIPTION OF PROPERTY

Said property is described on Exhibit "A" attached hereto and made a part hereof and illustrated on Exhibit "B" also attached hereto and made a part hereof.

Said lease is for a primary term of one (1) year, and as long thereafter as oil, gas or hydrocarbon is produced from the leased premises in paying quantities and the leased premises are being developed in accordance with the provisions of said lease, or the lease is otherwise kept in force in some other manner therein provided.

Said lease restricts transfers or assignments, but gives Lessee the right to explore and drill for and produce oil, gas and other hydrocarbon, subject to the royalties and other payments therein provided for.

This declaration is to be placed of record to serve as notice of the execution and existence of said lease, and is in no way to supersede same or to abrogate, change, alter, or modify any of the terms or conditions or any of the rights or obligations of any of the parties, all of which are set forth in detail in said lease, which is made a part hereof by reference to the same effect as though written in extenso herein.

THUS DONE AND SIGNED as of the _24th_ day of April, 2005, effective the 1st day of August, 2004.

WITNESSES:

_Wes W. Reeves_
WES W. REEVES
Printed Name

_Glenn Otness_
GLENN OTNESS
Printed Name

WITNESSES:

_Wes W. Reeves_
WES W. REEVES
Printed Name

_Glenn Otness_
GLENN OTNESS
Printed Name

LESSOR:
**APACHE CORPORATION, Agent for**
**APACHE LOUISIANA MINERALS, INC.**

By: _C. R. Harden_
C. R. Harden
Attorney-in-Fact

LESSEE:
**APACHE CORPORATION**

By: _C. R. Harden_
C. R. Harden
Attorney-in-Fact

L9000672'A16

○ **750**

**Return to top**

STATE OF TEXAS     §
                       §
COUNTY OF HARRIS    §

On this 24th day of *April*, 2005 appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact for APACHE CORPORATION, agent for APACHE LOUISIANA MINERALS, INC., and that the instrument was signed on behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

_____
Notary Public, State of Texas


STATE OF TEXAS     §
                       §
COUNTY OF HARRIS    §

On this ___ day of _____, 2005 appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact for APACHE CORPORATION, and that the instrument was signed on behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

_____
Notary Public, State of Texas

1

H:\Documents\Docs2002\Chaym South LA5527\ALMI-APACHE-LEASE(Paleoquasi-66172C)(pri).doc

751

# EXHIBIT "A"

Attached to and made a part of that certain Declaration
of Oil and Gas leased dated August 1, 2004 between
Apache Louisiana Minerals, Inc. and Apache
Corporation

All those portions of the following described property situated in the South Chauvin Field, located in portions of Sections 66 & 67, T19S-R18E and Sections 72 & 73, T18S-R18E, Terrebonne Parish, Louisiana, said tract of land being more particularly described as follows:

Commencing at the southeast corner of Section 66, said point being the Point-of-Beginning and having Lambert plane coordinate values of X = 2,224,895.07 feet and Y = 282,458.49 feet;

Thence, South 88°45'42" West along the south line of Section 66 a distance of 3,567.64;

Thence, North 2°52'12" West along a distance of 2,672.30 feet;

Thence, South 88°41'39" West a distance of 1,744.63 feet to the west line of Section 66;

Thence, South 88°44'09" West a distance of 2,667.14 feet;

Thence, North 3°01'39" West a distance of 2,665.39 feet to the north line of Section 67;

Thence, North 49°46'30" East a distance of 3,437.60 feet to the west line of Section 72, T18S-R18E;

Thence, North 1°14'14" West along the west line of Section 72 a distance of 989.44 feet;

Thence, North 88°42'36" East a distance of 1,327.73 feet;

Thence, North 1°17'48" East a distance of 2,508.13 feet to the SHM S RA SU unit;

Thence, along the southeast perimeter of said SHM S RA SU unit along the arc of a curve to the left having a delta angle of 10°28'58", a radius of 3,245.06 feet, an arc length of 593.71 feet, and a chord bearing and distance of North 45°01'31" East for 592.88 feet;

Thence, continuing along the perimeter of said unit along the arc of a curve to the left having a delta angle of 4°01'01", a radius of 3,565.75 feet, an arc length of 249.99 feet, and a chord bearing and distance of North 35°42'28" East for 249.94 feet to the intersection with the southerly perimeter of an existing voluntary unit;

Thence, along the southerly perimeter of said voluntary unit along the arc of a curve to the left having a delta angle of 21°33'28", a radius of 1,047.19 feet, an arc length of 394.01 feet, and a chord bearing and distance of South 65°38'21" East for 391.69 feet;

Thence, continuing along the perimeter of said voluntary unit along the arc of a curve to the left having a delta angle of 6°23'58", a radius of 2,909.84 feet, an arc length of 325.00 feet, and a chord bearing and distance of South 89°16'40" East for 324.83 feet;

Thence, continuing along the perimeter of said voluntary unit along the arc of a curve to the left having a delta angle of 36°22'27", a radius of 832.16 feet, an arc length of 825.30 feet, and a chord bearing and distance of North 65°26'52" East for 519.47 feet to the intersection with the north line of Section 72, T18S-R18E;

Thence; North 88°47'35" East along the north line of Section 72 a distance of 2,239.20 feet to the northeast corner of the section;

Thence, South 1°28'16" East along the east line of said Section 72 a distance of 984.67 feet to the intersection with the BB2 RA SUA unit;

Thence, along the northern and western perimeter of said BB2 unit the following courses: South 79°36'35" West a distance of 249.52 feet;
South 79°41'43" West a distance of 503.12 feet;

1

Q   752

**Return to top**

South 81°14'05" West a distance of 65.78 feet;
South 44°23'49" West a distance of 335.90 feet;
South 42°06'31" West a distance of 350.47 feet;
South 40°06'03" West a distance of 248.40 feet;
South 33°59'36" West a distance of 277.36 feet;
South 32°16'32" West a distance of 224.73 feet;
South 27°33'10" West a distance of 259.43 feet;
South 18°03'38" West a distance of 241.92 feet;
South 11°38'01" West a distance of 173.57 feet;
South a distance of 215.00 feet;
South 5°34'20" East a distance of 205.98 feet;
South 14°51'31" East a distance of 253.48 feet;
South 26°33'54" East a distance of 234.79 feet;
South 34°41'43" East a distance of 237.18 feet;
South 41°18'31" East a distance of 219.66 feet;
South 50°11'40" East a distance of 195.26 feet;
South 54°19'25" East a distance of 240.06 feet;
South 61°27'36" East a distance of 324.43 feet;
South 66°08'23" East a distance of 284.30 feet;
South 71°33'54" East a distance of 316.23 feet;
South 76°33'05" East a distance of 236.49 feet;
South 80°08'03" East a distance of 151.54 feet;

Thence, South 1°28'31" East along the east line of said Section 72 a distance of 1,454.39 feet to the southeast corner of said Section 72;

Thence, South 2°46'02" East along the east line of Section 66, T19S-R18E a distance of 5,352.75 feet to the point of beginning.

Said Tract containing a total of 1,305.376 acres, more or less, and is more particularly shown on that certain plat labeled Exhibit "_" attached hereto and made a part hereof.

The lease rights being conveyed herein are only insofar as from the surface down to and including one-hundred feet (100') below the stratigraphic equivalent of the base of the BB2 Sand defined as that certain sand seen on the electric log for the Placid-LaTerre #D-1 well, between the depths of 12,290 feet and 12,400 feet, located in Section 66, T18S-R18E, Terrebonne Parish, Louisiana.

All bearings, distances and coordinates recited herein are based upon the Louisiana State Plane Coordinate System, 1927 Datum, South Zone.

2

753

Return to top



EXHIBIT "B"

Attached to and made a part of that certain Declaration
of Oil and Gas leased dated August 1, 2004 between
Apache Louisiana Minerals, Inc. and Apache
Corporation

| DRAWN BY: | J. NAQUIN |
| DATE: | MAY 19, 2004 |
| SHEET No.: | 1 OF 1 |
| APPROVED BY: | T. ALLEN |
| CAD FILE No.: | 2004-021B3.DWG |

**APACHE CORPORATION**

POST OFFICE BOX 206
HOUMA, LOUISIANA 70361-0206
TEL (985) 879-3528    FAX (985) 876-5267

754

# EXHIBIT E

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
Clerk Of Court
P.O. Box 1569
Houma, La  70361-1569
(985) 868-5660

**Return to top**

Received From :
  APACHE CORPORATION
  2000 POST OAK BLVD., SUITE 100
  HOUSTON, TX  77056

**First VENDOR**

APACHE LOUISIANA MINERALS INC

**First VENDEE**

APACHE CORPORATION

| | | |
|---|---|---|
| Index Type :   Conveyances | File # : 1211280 | |
| Type of Document : Mineral Lease | | |
| | Book :  1919 | Page : 386 |
| Recording Pages : | 6 | |

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Terrebonne Parish, Louisiana

*[signature]*
Clerk Of Court

On (Recorded Date) : 06/03/2005

At (Recorded Time) : 12:09:11:000 PM

Doc ID - 004132120006

Return To :
  APACHE CORPORATION
  2000 POST OAK BLVD., SUITE 100
  HOUSTON, TX  77056

386

Do not Detach this Recording Page from Original Document

<u>MEMORANDUM OF OIL AND GAS LEASE</u>

**Return to top**

KNOW ALL MEN BY THESE PRESENTS, That:

    **APACHE LOUISIANA MINERALS, INC.** a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas  77056, as Lessor, has granted a certain Oil and Gas Lease to **APACHE CORPORATION**, a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas  77056, as Lessee, by instrument dated as of even date herewith, by which said Lessor leased and let unto said Lessee, for a valuable consideration, and subject to the terms, conditions, and provisions of said lease, an undivided fifty percent (50%) interest in that certain property situated in the Parish of Terrebonne, State of Louisiana, and described as follows, to wit:

<u>DESCRIPTION OF PROPERTY</u>

    Said property is described on Exhibit "A" attached hereto and made a part hereof.

    Said lease is for a primary term of five (5) years, with possible extensions of up to five (5) additional years, and as long thereafter as oil, gas or other hydrocarbons are produced from the leased premises in paying quantities and the leased premises are being developed in accordance with the provisions of said lease, or the lease is otherwise kept in force in some other manner therein provided.

    Said lease restricts transfers or assignments, but gives Lessee the right to explore and drill for and produce oil, gas and other hydrocarbon, subject to the royalties and other payments therein provided for.

    This memorandum is executed and is to be placed of record pursuant to La. R. S. 9:2731, et seq., to serve as notice of the execution and existence of said lease, and is in no way to supersede same or to abrogate, change, alter, or modify any of the terms or conditions or any of the rights or obligations of any of the parties, all of which are set forth in detail in said lease, which is made a part hereof by reference to the same effect as though written in full herein.

    THUS DONE AND SIGNED this _26ᵗʰ_ day of April, 2005, but effective as of the 24th day of September, 2004.

WITNESSES:

LESSOR:

**APACHE CORPORATION, Agent for
APACHE LOUISIANA MINERALS, INC.**

Name: _Wes W. Reeves_

By: _____
    C. R. Harden
    Attorney-in-Fact

Name: _Betty Gibbons_

L-9000664/A7   LAFAYRANGE LA5534

387

**Return to top**

LESSEE:

**APACHE CORPORATION**

WITNESSES:

By: _C. R. Harden_
C. R. Harden
Attorney-in-Fact

Name: _WES W. REEVES_

Name: _Betty Gibbons_

STATE OF TEXAS    §
                  §
COUNTY OF HARRIS  §

On this 18th day of April, 2005, appeared C. R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent for APACHE LOUISIANA MINERALS, INC., a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

My Commission Expires: _____

Notary Public, State of Texas

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

STATE OF TEXAS    §
                  §
COUNTY OF HARRIS  §

On this 20th day of April, 2005, before me, a Notary Public, personally appeared C. R. Harden, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

My Commission Expires: _____

Notary Public State of Texas

2

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

388

HOU:2354739.1

AREA #4

Return to top

EXHIBIT "A"

Attached to and made a part of that certain Memorandum of Oil and Gas Lease
dated effective September 24, 2004,
by and between Apache Louisiana Minerals, Inc., as Lessor,
and Apache Corporation, as Lessee

**All depths below the stratigraphic equivalent of the base of the Textularia W Formation encountered at 16,700 feet MD as seen in the Induction Electrical log for the Placid Oil Company Laterre Company Inc. Well #D-4 located in Section 65, T19S, R18E, in the acreage described as follows:**

**Township 19 South, Range 17 East,  Terrebonne Parish, LA**
Section 14: All
Section 15: All
Section 82: All, fractional as per Official Township Plat dated November 4, 1856
Section 82: As shown upon the Official Township Plat of said township approved on
June 4, 1832, based upon the survey by John Maxwell, Deputy   United
States Surveyor, during the years 1830 and 1831, which as not
included within the area designated as Section 82 of said township as
shown upon the Official Township Plat of said township approved on
November 4, 1856, based upon the re-survey of said township by
Joseph Gorlinski, Deputy United States Surveyor, during the year 1856,
said portion of said Section  82 estimated to contain 494.71 acres.

**Township 20 South, Range 17 East, Terrebonne Parish, LA**
Section 1:  All
Section 2:  E1/2SE1/4

**Township 19 South, Range 18 East, Terrebonne Parish, LA**
Section 81: Lot Nos. 4 and 5, as per Official Township Plat dated November 4,
1856.
Section 81: Lot No. 6 containing 36.43 acres as per Official Township Plat dated
October 23, 1951.
Section 83: All, as per Official Township Plat dated November 4, 1856.
Section 83: Lot No. 10 containing 65.17 acres as per Official Township Plat dated
October 23, 1951.
Section 84: All, as per Official Township Plat dated November 4, 1856.
Section 84: Lot Nos.10 and 11 containing 153.02 acres as per Official Township
Plat dated October 23, 1951.
Section 98: 267.98 acres as per Official Township Plat dated October 23, 1951.
Section 99: 254.05 acres as per Official Township Plat dated October 23, 1951.

**Township 20 South, Range 18 East, Terrebonne Parish, LA**

389

Page 1 of 3

Section 108: N1/2
Section 109: N1/2

**Return to top**

**All depths below the stratigraphic equivalent of the base of the Duval Formation encountered at 16,348 feet MD as seen in the Induction Electrical Log for the John W. Mecom, L.J. Lapeyrouse et al well located in Section 103, T20S, R18E, in the acreage described as follows:**

**Township 20 South, Range 18 East, Terrebonne Parish, LA***
Section 108: S1/2
Section 109: S1/2
Section 110: All
Section 111: All
Section 112: Lot Nos. 3 and 4, E1/2SW1/4, NW1/4SW1/4 and NW1/4 and less and except any interest in said lands quitclaimed to the St. Martins by that certain Agreement dated November 2, 1970, and recorded in Conveyance Book 510, Page 635 and also less and except any interest in said lands quitclaimed to Dr. Forrest E. Baker by that certain Agreement dated April 15, 1971, and recorded in Conveyance Book 516, Page 742, but including any interest in said section acquired by LaTerre Co., Inc. in said Agreements.
Section 113: NE1/4NW1/4, less and except any interest in said lands quitclaimed to the St. Martins by that certain Agreement dated November 2, 1970, and recorded in Conveyance Book 510, Page 635 and also less and except any interest in said lands quitclaimed to Dr. Forrest E. Baker by that certain Agreement dated April 15, 1971, and recorded in Conveyance Book 516, Page 742, but including any interest in said section acquired by LaTerre Co., Inc. in said Agreements.

**Township 20 South, Range 17 East, Terrebonne Parish, LA***
Section 12: All
Section 13: All, less and except West Half of Southwest Quarter and less and except any interest in said lands quitclaimed to the St. Martins by that certain Agreement dated November 2, 1970, and recorded in Conveyance Book 510, Page 635 and also less and except any interest in said lands quitclaimed to Dr. Forrest E. Baker by that certain Agreement dated April 15, 1971, and recorded in Conveyance Book 516, Page 742, but including any interest in said section acquired by LaTerre Co., Inc. in said Agreements.

Section 24: NE1/4 and less and except any interest in said lands quitclaimed to the St. Martins by that certain Agreement dated November 2, 1970, and recorded in Conveyance Book No. 510, Page 635, and also less and except any interest in said lands quitclaimed to Dr. Forrest E. Baker by that certain Agreement dated April 15, 1971, and recorded in

**390**

Conveyance Book 516, Page 742, but including any interest in said section acquired by LaTerre Company, Inc. in said Agreements.

**Return to top**

**\*LESS AND EXCEPT** all lands described within the boundaries of the following Oil and Gas Leases:

1.     Oil and Gas Lease dated November 7, 2004, from Apache Louisiana Minerals, Inc., to Castex Energy 1995, L.P., recorded in Conveyance Book 1899 under Entry No. 1199112 of the records of Terrebonne Parish, Louisiana.

2.     Oil and Gas Lease dated November 7, 2004, from Apache Louisiana Minerals, Inc., to Castex Energy 1995, L.P., recorded in Conveyance Book 1899 under Entry No. 1199113 of the records of Terrebonne Parish, Louisiana.

3.     Oil and Gas Lease dated November 7, 2004, from Apache Louisiana Minerals, Inc., to Apache Corporation, recorded in Conveyance Book 1899 under Entry No. 11991777 of the records of Terrebonne Parish, Louisiana.

4.     Oil and Gas Lease dated November 7, 2004, from Apache Louisiana Minerals, Inc., to Apache Corporation, recorded in Conveyance Book 1899 under Entry No. 1199779 of the records of Terrebonne Parish, Louisiana.

Page 3 of 3

Q̲  391

# EXHIBIT F

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
Clerk Of Court
P.O. Box 1569
Houma, La 70361-1569
(985) 868-5660

Return to top

Received From :
APACHE CORPORATION
2000 POST OAK BLVD, SUITE 100
HOUSTON, TX 77056-4400

**First VENDOR**

APACHE LOUISIANA MINERALS INC

**First VENDEE**

APACHE CORPORATION

Index Type :    Conveyances                      File # : 1249766

Type of Document : Mineral Lease

                                                 Book : 1996     Page : 484

Recording Pages :          10

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Terrebonne Parish, Louisiana

_Robert Boudreaux_
Clerk Of Court

On (Recorded Date) : 10/11/2006

At (Recorded Time) : 11:15:53:000 AM

Doc ID - 005014610010

Return To :
APACHE CORPORATION
2000 POST OAK BLVD, SUITE 100
HOUSTON, TX 77056-4400

484

Do not Detach this Recording Page from Original Document

**Return to top**

## OIL AND GAS LEASE

THIS AGREEMENT entered into as of the 15th day of July, 2006, by and between:

APACHE LOUISIANA MINERALS, INC., a Delaware corporation, duly authorized to do and doing business in Louisiana, (hereinafter called "Lessor"); and APACHE CORPORATION, a Delaware corporation (hereinafter called "Lessee"):

### W I T N E S S E T H:

1.     For and in consideration of the sum of Ten Dollars and no/100 ($10.00), in hand paid, and other good and valuable consideration, of the other agreements of Lessee herein and subject to the terms and conditions hereinafter set forth, Lessor does hereby lease and let unto Lessee, exclusively, for the purpose of exploring and drilling for, producing and owning oil, gas and other hydrocarbons, and, but not exclusively, for the purpose of constructing such canals, roads, pipe lines, tanks, telephone and power lines, and other structures and facilities as may be necessary to explore and drill for, produce, treat, transport, store and own said substances hereunder, all, however, subject to the provisions of this lease, covering that certain property situated in the Parish of  Terrebonne, State of Louisiana and described as follows, to wit:

### DESCRIPTION OF PROPERTY

See Attached Exhibit "A"

2.     Lessor expressly reserves the full enjoyment and use of the property covered hereby and all rights with respect to the surface and subsurface thereof for any and all purposes except those granted and to the extent granted to Lessee hereby.  Without limiting the foregoing, Lessor expressly reserves the right to explore by any method, to drill and mine for, and to produce, treat, store and transport any and all minerals other than those covered by this lease; to conduct geological, geophysical, geochemical or other explorations or surveys in connection with any type of mineral other than those covered by this lease; to hunt, trap, farm, graze, reclaim, improve and otherwise use any and all portions of the leased premises; to construct canals, roads, ditches, ponds, levees, dams, fences, buildings, pipe lines, telephone and power lines, and other facilities, structures and improvements; and to use any canal or road constructed by Lessee hereunder.  All of the rights retained by Lessor and the rights granted to Lessee herein shall be exercised in such manner that neither shall unduly interfere with the operations of the other upon the leased premises.

3.     Subject to the other terms and provisions hereof, this lease shall remain in force for a primary term of one (1) year from the date hereof, and for as long thereafter as (a) oil, gas or other hydrocarbon is produced in paying quantities from the leased premises, or (b) this lease is maintained in force in any other manner hereinafter provided.

4.     In order to maintain this lease in full force and effect after the discovery of oil, gas or other hydrocarbon in paying quantities on the leased premises, whether during or after the primary term, Lessee shall, on or before the expiration of one hundred and eighty (180) days following the completion of the discovery well, commence operations for and thereafter continue to drill successive wells upon the leased premises with not more than one hundred and eighty (180) days elapsing between the completion or abandonment of the last well drilled on the leased premises and the commencement of actual drilling of another well thereon.  In the event Lessee shall fail to commence or cease to conduct such continuous drilling operations on the leased premises as herein provided, all of the rights of Lessee hereunder shall cease, terminate and be forfeited, without notice, demand or putting in default, as to all of the leased premises except those portions, if any, which Lessee may be permitted to retain under the terms of Paragraph 12 hereof.

5.     For purposes of computing the elapsed time between drilling operations, a well shall be deemed to have been completed or abandoned as of the date upon which the drilling rig, or a completion or workover rig, is removed from said well location without being replaced by another rig of the same or a different type, within seventy-two (72) hours after such removal, unless such well shall have been actually completed or abandoned prior to such removal.

6.     In the event any portion of the leased premises should be pooled and unitized by governmental authority, after notice and hearing, with other property into a drilling unit, then, during the existence of said drilling unit, any well which may be located within any such unit shall be considered, for purposes of this lease, to be a well located upon that portion of the leased premises which is included within such unit, irrespective of the actual location of said well within said unit.

7.     Lessee hereby agrees to pay Lessor, as royalty, twenty-five percent (25%) of the value of all oil, gas and other hydrocarbons produced and saved from the leased premises, delivered free of all cost into the pipeline or to the place where first sold or used, subject to the following provisions:

(A)     Lessee shall have the use, free of royalty, of oil and gas produced hereunder for fuel for drilling and reworking operations on the leased premises and for treating oil produced hereunder.

Page 1 of 8

9006372/A26 Chacon South LA3523

**485**

**Return to top**

(B) Lessor, at its option, from time to time and upon thirty (30) days written notice to Lessee, may elect to take in kind Lessor's royalty percentage of oil, gas and other hydrocarbons, or any one (1) or more of such substances or portions thereof, including products extracted from gas, produced and saved from the leased premises, in lieu of the value thereof, as hereinafter provided. In the event Lessor so elects, Lessee shall provide the necessary facilities therefore, at Lessor's expense, until thirty (30) days after receipt of written notice that Lessor has revoked such option and has elected to receive the value of such royalty percentage. Except to the extent that Lessor may have exercised its option to take royalty in kind, as herein provided, Lessee shall sell at the best prices obtainable or use all oil, gas and other hydrocarbons produced and saved from the leased premises and will account to Lessor for the royalty on the full value thereof, as herein provided.

(C) Lessor shall also have a preferential right to purchase from Lessee all oil and other liquid hydrocarbons produced and saved from the leased premises, such right to be exercised from time to time within thirty (30) days following receipt of written notice from Lessee of the availability thereof for sale. Said notice to be forwarded to the address provided herein in Paragraph 27.

(D) In the event gas, including gas from oil wells, is processed in any facility or plant in which Lessee, or any subsidiary, parent or affiliate of Lessee, has, directly or indirectly, an ownership or operating interest, then the value of such gas shall not be less than the combined values at the plant of all products extracted therefrom and the residue gas, after deducting, however, the actual cost to Lessee of extracting said products, but not including amortization, depreciation or overhead.

(E) In the event gas, including gas from oil wells, is processed in any facility or plant in which neither Lessee, nor any subsidiary, parent or affiliate of Lessee, has an operating or ownership interest, under an arrangement by which Lessee should receive or retain a share of said products extracted, residue gas, or other things of value, then in such event, the value of such gas shall be equal to the combined values at the plant of all things of value received or retained by Lessee under such arrangement.

(F) Lessee represents and warrants that it has not heretofore entered into any contract which would commit or otherwise affect any oil, gas or other hydrocarbons to be produced from the leased premises, and agrees that it will not sell or deliver or otherwise commit any such production under any existing contract. No contract for the sale or other disposition of any production shall be made prior to the discovery of production in paying quantities on the leased premises, and no such contract shall affect any depths greater than the depth theretofore drilled by Lessee on the leased premises. Lessee shall not, directly or indirectly, sell or deliver any gas produced hereunder to a parent subsidiary or affiliate of Lessee without the prior written approval by Lessor of the price and terms thereof. At least thirty (30) days prior to the delivery or the execution of any contract for the sale or delivery of gas, and at least fifteen (15) days prior to the execution of any contract for the sale or other disposition of any other substance, Lessee shall give Lessor written notice thereof, and promptly after the execution of any such contract, Lessee shall furnish Lessor with a complete copy thereof.

(G) Lessor shall bear the severance taxes levied against its royalty share of all production hereunder, and payment of royalties shall be made after deduction of the severance taxes paid by Lessee thereon. Subject to the foregoing, and except to the extent otherwise expressly provided in this lease, all of the royalties hereinabove stipulated shall be computed and paid or delivered without any deduction or charge on account of any cost or expense of operation, exploration, development, production, saving, gathering, storage, treatment, cleaning, dehydration, extraction, separation, recovery, processing, compression, (except for compression for use on the premises), transportation, delivery, or any other deduction or charge whatsoever, whether of the same or different character, unless agreed to in writing by Lessor.

(H) On or before the 25th day of each month, Lessee shall mail or deliver to Lessor a multiple original of each run ticket showing the total production run during the preceding calendar month, together with an itemized statement showing the total production of each substance, including products extracted from gas, during such preceding month, the royalties payable thereon, all data used to compute such royalties, including without limitation, volumes, prices, severance taxes, and other deductions applicable to each such substance, including plant products, as well as a full and complete explanation of the method of computation of such royalties on each such substance, including all corrections, additions or deductions; and, at the same time, Lessee shall remit to Lessor the royalties due hereunder on production during such preceding month. If for any reason whatsoever royalties hereunder are not paid within thirty (30) days after same are due, then in addition to any other remedy available to Lessor, all such unpaid royalties shall bear interest at the maximum legal rate from the date due until paid.

(I) In the event Lessor should own less than the entirety of the oil, gas or other hydrocarbons under any portion of the leased premises, then the foregoing royalties due Lessor on production from said portion of the leased premises shall be reduced to the proportion thereof that Lessor's interest in such oil, gas or other hydrocarbons, in said portion bears to the entirety of the oil, gas or other hydrocarbons thereunder; provided, however, that on production from or attributable to any portion of the premises covered or purported to be covered by this lease, now or formerly constituting the beds or bottoms of navigable bodies of water (herein called "Navigable Waterbottoms"), if any, the royalties due under this lease shall never be less than seven and one half percent (7.5%) of all oil, gas and other hydrocarbons produced and saved from said Navigable Waterbottoms (herein called "Minimum Royalties"), such Minimum Royalties to be determined, computed and paid or delivered to Lessor in the same manner and in accordance with the same terms and

**486**

**Return to top**

provisions as the basic royalties stipulated in this lease; all, however, subject to the following terms and provision, to-wit;

(1)     Neither the assertion of a claim adverse to Lessor, nor a disclaimer by Lessor or a final determination or admission that Lessor does not actually own any of said Navigable Waterbottoms or any interest therein, shall deprive Lessor of the right to receive and retain such Minimum Royalty; and, except to the extent otherwise expressly provided herein, Lessee shall not have the right to reduce, suspend, fail to pay or recover such Minimum Royalty for any reason whatsoever, it being the intent hereof that Lessee unconditionally guarantees the payment or delivery to Lessor of such Minimum Royalty in accordance with the terms hereof; provided, however, that if neither Lessor nor the State of Louisiana owns the entirety of the oil, gas or other hydrocarbons under any portion of said Navigable Waterbottoms, then the Minimum Royalty due on production from said portion shall be reduced to the proportion thereof which the combined interests of Lessor and the State of Louisiana in said portion bears to the full one hundred percent (100%) interest.

(2)     If it should be determined, whether by judgment of court, agreement, compromise, settlement, unitization, or otherwise, that this lease validly covers or affects only an undivided interest in the oil, gas or other hydrocarbons produced from or attributable to any portion of said Navigable Waterbottoms, with the result that the basic royalty hereunder is reduced in proportion to the undivided interest validly covered hereby, as hereinabove provided, then the Minimum Royalty shall nevertheless continue to be due with respect to the remaining undivided interest in such production not validly covered hereby, but shall be reduced to the proportion thereof that such remaining undivided interest bears to the full one hundred percent (100%) interest.

(3)     In the event Lessee should release or surrender this lease as to all or any portion of the leased premises, or in the event of termination of this lease in whole or in part, then Lessee shall immediately release and surrender any interest then held, owned or controlled, directly or indirectly, by Lessee in any lease granted by the State of Louisiana, insofar as said State lease may purport to cover or affect any Navigable Waterbottoms included within the area as to which this lease has been so released, surrendered or terminated. Thereafter, Lessee shall be relieved of all obligations with respect to the Minimum Royalty on future production from said area.

(4)     Nothing herein contained, nor any action or nonaction of Lessor hereunder, shall ever be deemed a waiver of any right, title, interest or claim which Lessor may have in or to any of said Navigable Waterbottoms, nor ever serve as an estoppel against the assertion by Lessor of full title thereto or possession thereof.

8.     If a well capable of producing oil, gas or other hydrocarbons in paying quantities should now exist or hereafter be completed on property, whether or not owned by Lessor, other than the leased premises, and within 660 feet of the leased premises, in the case of an oil well, or within 1,320 feet of the leased premises, in the case of a gas well, or within such greater distances as may be established by governmental authority as a part of a drilling, spacing or unitization pattern for the field, then, within thirty (30) days after such well shall have been completed, in the case of an oil well, or within thirty (30) days after the commencement of actual production therefrom, in the case of a gas well, or within ninety (90) days from the date hereof, whichever is later, if said well is not then pooled and unitized with a portion of the leased premises, or if no well offsetting same should have been drilled on the leased premises, Lessee shall either commence operations for and thereafter diligently prosecute the drilling of an offset well on the leased premises at a location which is reasonably designed to protect the leased premises from drainage or release and surrender all of Lessee's rights hereunder with respect to that portion of the leased premises, containing forty (40) acres, in the case of an oil well, or one hundred sixty (160) acres, in the case of a gas well, in as near the shape of a square as practicable, located nearest to said well, provided, however, that if, at the applicable time specified herein, there is then pending before governmental authority an application for a hearing to pool and unitize a portion of the leased premises, with the well to be offset, Lessee may delay such drilling or such release until the disposition of such application, but not to exceed a total delay of ninety (90) days, and if such application should result in unitizing a portion of the leased premises with said well during such delay, Lessee shall thereupon be relieved of its obligation hereunder to drill said offset well or to effect said release.

9.     If production should be established in any reservoir which is located partly on the leased premises and partly on property other than the leased premises, whether or not owned by Lessor, then Lessee shall cause that portion of said reservoir located on the leased premises to be produced competitively and ratably with that portion of the same reservoir located off the leased premises; and Lessee shall drill and develop that portion of said reservoir located on the leased premises with such density, and shall endeavor to have assigned thereto such allowables, and shall take such other action, as may be necessary to accomplish such competitive and ratable production. In the event it should be determined at any time, or from time to time, that those portions of said reservoirs located partly on the leased premises have not been produced ratably and competitively with those portions of the same reservoirs located off the leased premises, or, if, for any other reason, drainage of the leased premises has occurred, then it shall be assumed that Lessee has produced from the leased premises such additional quantities of substances as may be necessary to accomplish such ratable and competitive production and to offset such drainage; and royalties shall be due thereon in accordance with the provisions of this lease.

10.     Lessee shall, in addition to all other obligations provided in this lease, reasonably develop the leased premises for all hydrocarbons covered hereby and produce and save same, with due regard to the interests, rights and

Page 3 of 8

487

**Return to top**

obligations of Lessor and Lessee; and Lessee shall take such other action as may be necessary to protect the leased premises from drainage and to insure to Lessor its fair share of production from any reservoir located, wholly or partially, upon the leased premises.  None of the provisions of this lease are intended, nor shall any of such provisions ever by construed to limit the extent of whatever operations or other action would otherwise be required of Lessee hereunder in order to properly explore and develop the leased premises, to produce and market production therefrom, and to protect same from drainage.

11.     If Lessee should actually complete and test on the leased premises a well which is capable of producing only gas, or only gas and condensate, in paying quantities, but which is not producing because of the lack of a regularly available market for the gas to be produced therefrom, such shut-in well shall nevertheless be deemed to be a well producing gas in paying quantities, and Lessee shall, within sixty (60) days after such well is completed, commence the payment to Lessor, as advance royalty, of an amount equal to the sum of Fifteen and No/100 Dollars ($15.00) per day for each day during which said well has not produced after completion, and thereafter shall continue such payments monthly with regard to such well at the above rate per day until such well is brought into actual production, irrespective of whether or not this lease is being otherwise maintained; provided, however, that, commencing with the first day following the end of the second year after said well shall have been initially completed, and continuing for a period of two (2) years thereafter, the rate of such payments shall be increased to an amount equal to the sum of Thirty and No/100 Dollars ($30.00) per day, and thereafter, the rate of such payments shall be further increased to an amount equal to the sum of Fifty and No/100 Dollars ($50.00) per day.

12.     In the event Lessee's rights hereunder should terminate or be forfeited for failure to comply with the drilling requirements hereof, Lessee shall, nevertheless, be entitled to retain, subject to the terms of this lease, each well producing in paying quantities, together with all those portions of the leased premises which may be comprised within a square, containing forty (40) acres, in the case of a gas well, or one hundred sixty (160) acres, in case of a gas well, with the producing well in the center thereof, or, in the event drilling units shall have been established by governmental authority, after notice and hearing, then so much of the leased premises as may be included within any such unit on which a well producing in paying quantities is located, whether or not such well be located upon the leased premises; provided, however, that all those portions of the leased premises which Lessee may so retain shall be limited in depth to one-hundred feet (100') below the stratigraphic equivalent of the deepest depth theretofore drilled and logged above salt or other domal material by Lessee hereunder; the acreage retained around each such well to constitute a separate tract of retained acreage even though the acreage retained around one (1) well should overlap that retained around another; all, however, subject to the following terms and provisions, to-wit:

(A)     If, at the time such termination or forfeiture would otherwise occur, Lessee should then be engaged in drilling, completing, or reworking a well on the leased premises, then said termination or forfeiture shall be delayed until the completion of said operations, and if such operations result in a well producing in paying quantities, then said well and the acreage around same may be retained in accordance with the provisions hereof.

(B)     This lease shall continue in effect as to each such respective tract of retained acreage as long as a well located thereon shall continue to produce in paying quantities or Lessee shall continue to conduct additional drilling or reworking operations on such tract of retained acreage with not more than one hundred and twenty (120) days elapsing between the cessation of production from or the completion or abandonment of drilling or reworking operations on one (1) well and the restoration of production from or the commencement of additional operations for the drilling or reworking of the same or another well on such tract of retained acreage.

(C)     In the event a drilling unit, affecting any well then located on the leased premises or on premises pooled therewith, should subsequently be established or revised by order of governmental authority, after notice and hearing, then the tract of retained acreage surrounding said well shall thereupon be revised so as to comprise only that portion of the premises then covered by this lease which may be included within the drilling unit upon which such well is located.  Any property then covered hereby which is not hereby included within any tract of retained acreage shall remain subject to this lease and shall again be subject to the provisions of Paragraph 5 hereof, to the same extent as if no termination or forfeiture had occurred, but, for purposes of said Paragraph 5, it shall be considered that a well was abandoned thereon as of the date of the establishment or revision of said unit.

13.     Subject to the other provisions hereof, Lessee may, at any time, execute and place of record a release or releases of this lease as to all or any part of the leased premises and thereafter be relieved of future obligations concerning the property released.  Any and all releases of this lease, in whole or in part, shall be made free of all encumbrances created by or under Lessee, and except as otherwise provided herein, all partial releases shall be made so that the lands not released shall be a compact body, in one (1) single block and as nearly contiguous as possible.  Lessee shall promptly mail or deliver to Lessor an executed or certified copy of each such release.

14.     Lessee shall use due care to avoid damage to the property covered hereby, and to all timber, crops, wildlife, game, fish, animals, structures, facilities and improvements now or hereafter located thereon, whether or not owned by Lessor; and Lessee will repair all canals, ditches, dams, levees, roads, bridges, fences, pipelines, and other structures, facilities and improvements on such property which may be worn or damaged by any operations hereunder, and will remove all debris resulting therefrom.  Lessee further agrees to pay Lessor for, and to indemnify and hold Lessor harmless against, any and all loss, damage, liability, cost, or expense, including reasonable attorneys' fees, on account of injuries to or death of persons or damage to property of any kind, arising wholly or partially out of or in

Page 4 of 8

**488**

Return to top

connection with any operations hereunder; and in the event of litigation against Lessor on account thereof, Lessee shall, at Lessor's request appear and defend same and shall pay any judgment which may be rendered against Lessor therein.

15. Without the prior written consent of Lessor, Lessee shall not (a) use wheel-type marsh buggies or suction dredges upon any part of the leased premises, or (b) permit or suffer the discharge or disposal of any salt water, oil, or other polluting or contaminating substance or object upon the surface of any of the property covered hereby, or (c) construct any canal upon the surface of any portion of the leased premises which may then be included within any area which has been or is being reclaimed, levied for purposes of the culture of aquatic life, or otherwise improved.

16. As to all operations hereunder, Lessee shall carry the following minimum insurance for the benefit and protection of the Lessor:

(a) Worker's Compensation Insurance in accordance with laws of governmental bodies having jurisdiction including, if applicable, United States Longshoremen's and Harbor Workers' Compensation Act with Outer Continental Shelf Extension; and Employer's Liability Insurance with a limit of $1,000,000; and Maritime Employers' Liability (if applicable) with a limit of $1,000,000.

(b) Automobile Liability Insurance policy with limits of $1,000,000 per occurrence covering personal injury, death, or property of third parties.

(c) Operator's Extra Expense policy with limits of $15,000,000 per occurrence covering all loss of well control, explosions, fire, cratering, including expenses of cleanup, containment, seepage, pollution or contamination.

(d) Third Party/Excess Liability Insurance policy(ies) with minimum total limits of $15,000,000 per occurrence covering all losses or damages resulting from claims for personal injury, death, or property of third parties, and including coverage for protection and indemnity liability claims and aircraft liability claims, if applicable.

Lessee shall furnish Lessor with a certificate evidencing such coverage contemporaneously with its execution of this agreement, and at any time during the term of this agreement if requested by Lessor. Such coverage shall further provide thirty (30) days notice of cancellation in Lessor's favor and shall waive subrogation against Lessor, and shall name Lessor as additional insured.

If Lessee desires to self-insure its obligation in this provision, it must demonstrate to the Lessor's satisfaction that it is financially capable of doing so. It is understood and agreed that if, in the Lessor's sole opinion, such financial capability cannot be demonstrated on a continuing basis, then Lessee will be required to procure said coverage and furnish a certificate of insurance evidencing same within thirty (30) days from receiving such notification from Lessor.

Lessee shall make a good faith effort to require each independent contractor and subcontractor to carry and maintain insurance at its own expense in the amounts deemed necessary to cover the risks inherent to the work or services to be performed by the contractor or subcontractor.

Lessee's failure to maintain the insurance coverages required by the terms of this lease shall be deemed a material breach thereof.

17. Prior to the conduct of any geophysical exploration hereunder, Lessee shall notify Lessor and also Lessor's office at P. O. Box 206, Houma, Louisiana 70361, Attention: Mr. Tim Allen, outlining the plan and location of such operations, shall afford Lessor an opportunity to have a representative present during such operations, at no expense to Lessor, and Lessee shall comply with any reasonable restrictions imposed by Lessor on such operations. To defray the cost of said representative, Lessee shall pay Lessor the sum of Two Hundred Fifty Dollars and no/100 ($250.00) for each day such operations are conducted. This money is to be paid to Lessor at Lessor's office at P. O. Box 206, Houma, Louisiana 70361, Attention: Mr. Tim Allen. All notices shall be made to Lessor at Lessor's office in Houma, Louisiana. Prior to making application to any governmental agency for any permit to dredge on the leased premises, Lessee shall consult with Mr. Tim Allen regarding the route of the proposed dredging so as to minimize any environmental damages caused by such dredging operations. Prior to the construction of any canal, road, pipeline or other structure or facility permitted hereunder, Lessee shall furnish Lessor with a plat showing the location thereof and the well or facility to be served thereby, together with a copy of each application to governmental agencies or authorities, including plans and specifications, submitted in connection therewith, Lessee shall bury all pipelines below the bottoms of existing ditches, bayous, canals, and other water bottoms, and, upon Lessor's request, Lessee shall bury said pipelines to a sufficient depth, or otherwise alter or modify same, so as not to interfere with reclamation, cultivation, trapping, or other actual or proposed operations, structures, facilities, or improvements of Lessor. All canals and roads shall be and remain private and not open to the public and will be conspicuously posted as such by Lessee. Spoil from any canal shall be placed in the form of continuous levees wherever practicable, and only such openings in the spoil banks will be left as may be required by Lessor. All canals will be so constructed (including bulkheading as may be necessary) as to prevent any reasonable avoidable substantial erosion, but not including ordinary erosion of canal banks caused by ordinary use of such canals or by weathering. Upon termination of this lease as to any lands upon which a canal may have been constructed, or upon abandonment of the use of any canal, Lessee shall, unless otherwise directed in writing by Lessor, permanently dam the entrance of such canal (including bulkheading as may be necessary) so as to adequately prevent the flow of water therein and the use of said canal as a means of ingress and egress. Lessee shall

**Return to top**

plug and abandon all wells in accordance with the rules and regulations of any governmental agency having jurisdiction, shall remove all casing and pipe from abandoned wells or seismic operations down to a depth of at least ten (10) feet below ground level and ten (10) feet below the bottom of any canal or water bottom in which same may be located, and shall remove all other obstructions or navigational hazards in such canal or water bottom.

18.     All operations commenced or conducted, and all wells drilled hereunder, shall be prosecuted in good faith, with due diligence, and in a workmanlike manner. Prior to the drilling of any well hereunder, Lessee shall notify Lessor, specifying the proposed depth thereof, and shall furnish Lessor with a plat showing the proposed location of said well; and promptly after the completion or abandonment of any such well, Lessee shall notify Lessor of the results thereof. No well shall be drilled within two hundred (200) feet of any house, building, or other structure or facility without the prior written consent of Lessor.

19.     The drilling or other operating obligations or requirements imposed hereunder on Lessee may be suspended while, but only so long as (in any event not to exceed a period of two (2) years) and to the extent only that Lessee is directly prevented from complying therewith by acts of God, war, rebellion, insurrection, riots, strikes, fires, storms, floods, explosions, orders, rules or regulations of governmental authority, or any other acts beyond the control of Lessee, which by exercise of due diligence Lessee is unable to avoid; but as soon as the cause or matter so preventing such compliance is removed or ceases to exist, Lessee shall immediately resume compliance with such obligations or requirements. It being agreed and understood that the eagle nesting periods (October 1 to May 15 of each calendar year as defined by the State of Louisiana, Department of Wildlife and Fisheries) shall not be applicable to this force majeure paragraph. In the event that drilling or other operations are suspended as above provided, Lessee shall immediately notify Lessor thereof in writing, setting forth the full circumstances, and, within thirty (30) days after the date upon which such obligations or requirements were due to be performed, Lessee shall commence the payment to Lessor, monthly, as rental, of a sum equal to Five and No/100 Dollars ($5.00) per acre on the number of acres then covered by this lease, and shall thereafter continue to make such payments monthly until Lessee resumes compliance therewith and performance thereof; provided, however, that, if Lessee is prevented or delayed by any of the causes mentioned in this paragraph from drilling any offset well or offset wells which Lessee is obligated to drill under the provisions of Paragraph 9 hereof, Lessee shall, in addition to the payment hereinabove set forth, also pay to Lessor a compensatory royalty equal to one-half (1/2) of the royalties which would have been payable to Lessor under this lease if the well to be offset had been located on premises covered hereby, such compensatory royalty to be effective as of the date upon which Lessee should have commenced operations for the drilling of said offset well, as stipulated in Paragraph 8 hereof, and shall terminate the day upon which Lessee commences operations for the drilling of such offset well.

20.     Lessor shall have the right, at all times, to inspect the operations of Lessee on or pertaining to the leased premises, and the equipment and facilities used in connection therewith, including, without limitation, the exploration, examination and survey of the leased premises; the drilling, coring, logging, testing, completing and producing of all wells thereon; and the measuring, sampling, analysis and disposition of production therefrom. Lessee shall keep complete and accurate records of all such operations, and the results thereof, including, without limitation, all original geophysical, geological, geochemical and paleontological data and interpretations or analyses thereof; all original land surveys, title opinions and title curative material; all original drilling, coring, logging, testing and completion records; all original production records showing the total gross production, the quantities saved, sold and used, the disposition thereof, and the sales prices or values thereof; the original of all production sales contracts; and such other records and data as may be proper for the settlement of accounts between Lessor and Lessee or to determine the respective rights and obligations of said parties hereunder. During the term of this lease, and for a period of one (1) year thereafter, Lessee shall make all of such records and data available to Lessor for examination and copying in Lessee's office at all reasonable times, as well as all other records, reports, notes, charts, graphs, maps, contracts, documents, papers and other material, except intracompany correspondence, in the possession of or under the control of Lessee, pertaining to the leased premises; and, upon request, Lessee shall promptly deliver to Lessor, without cost, true and legible copies thereof, properly identified, including, without limitation, copies of all daily drilling reports; directional well survey records and reports; dip meter survey reports; graphic logs, micro logs, radioactive logs or other well survey logs; bottom hole pressure reports; bottom hole sample analyses of oil, gas or other substances; well history and performance reports; tank tables; and meter runs.

21.     Without limiting the foregoing, Lessee shall deliver to Lessor, without cost or demand, promptly after the same is completed, a true and legible copy, properly identified, of each of the following, to the extent that same pertains to the property covered hereby and is prepared, made, used or issued by or at the instance of Lessee during the term hereof, to-wit:

          (A)     All basic and interpretative data, including without limitation, seismograms, shot-point maps and field notes, field tapes and reports, stacking diagrams, cross sections, record sections, velocity analyses, contour maps, structure maps, isopach maps, and other pertinent material, showing the results of any geophysical, geological, geochemical or other exploration, examination, or study of the property covered hereby, together with the names and addresses of the personnel performing such activities in the field and the dates of such performance.

          (B)     All daily drilling reports; directional well survey records and reports; dip meter survey reports, electric logs, graphic logs, micro logs, radioactive logs or other well survey logs; core records and analyses; paleontological records and analyses; formation test results; well completion reports; well workover reports; gas-oil ratio reports; bottom hole pressure reports; bottom hole sample analyses; analyses of oil, gas or other substances; well history and performance reports; tank tables; meter runs; maps and field notes of land surveys; and title opinions and curative material.

Page 6 of 8

**Return to top**

      (C)    All daily drilling reports shall be mailed or telecopied to APACHE CORPORATION, 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, Attention: Gulf Coast Drilling Department, Facsimile 713/296-6464.

      (D)    All applications and reports made to any governmental agency or authority; and all orders, rules or permits issued by any such agency or authority.

Lessee's failure to provide Lessor the data required by the terms of this lease shall be deemed a material breach thereof.

    22.    Prior to any attempt to acquire a lease from any party claiming adversely to Lessor, Lessee shall notify Lessor thereof and furnish information relative thereto. In the event Lessee should deem it necessary or desirable to apply to governmental authority for rules or orders governing the spacing of wells or the establishment of units upon the leased premises, Lessee shall, at least fifteen (15) days prior to the filing of such application or any pre-application notice thereof, notify Lessor in writing of its proposed plan, setting forth in detail the purposes of such application or plan, the results to be achieved thereby, and full and complete information pertaining thereto; and Lessee shall thereafter keep Lessor fully informed with respect to such plan and any changes or modifications thereof, and upon request shall meet with Lessor and review the data in support of same. Lessee shall, at least five (5) days prior to filing any such application or pre-application notice thereof, furnish Lessor with a copy thereof, and, at least five (5) days prior to any hearing pursuant to such application shall also furnish Lessor with copies of all maps, plats, documents and other material or evidence to be submitted at such hearing in connection with such application.

    23.    Lessee shall pay, before the same becomes delinquent, all taxes levied against its rights hereunder or against any improvements, buildings, structures, facilities, equipment, or other property, including any oil, gas or other products, not owned by Lessor, that may be placed, erected, stored or located by Lessee upon or in connection with the leased premises. Lessor shall pay, before the same becomes delinquent, any ad valorem tax assessed against the surface of the leased premises, in default of which Lessee may do so and be subrogated to the lien thereof, and Lessee may reimburse itself for the taxes so paid by deducting the amount thereof from any payments accruing to Lessor hereunder.

    24.    In the event of termination of this lease for any cause, in whole or in part, Lessee shall within ninety (90) days of said termination execute and record a proper instrument of release, releasing from the terms hereof all those portions of the leased premises as to which said lease may have terminated; and Lessee shall promptly furnish Lessor an executed or certified copy thereof. If said release is not executed and recorded within the prescribed ninety (90) day period, Lessee shall be subject to a penalty and fee of one hundred dollars ($100.00) per day for each day after the expiration of said ninety (90) day period for noncompliance of this provision. Within four (4) months after such termination, as to all or any portion of the leased premises, Lessee shall remove from that portion of the leased premises as to which this lease shall have so terminated, any and all property belonging to Lessee, in default of which within the time above specified, but subject to the other obligations of Lessee hereunder, such property shall become the property of Lessor without cost or liability. Lessee shall not be relieved from bearing the cost and expense associated with the removal of such property and the restoration of the leased premises as a result of such property becoming the property of Lessor and Lessee shall reimburse Lessor for all costs and expenses incurred by Lessor in connection with such removal and/or restoration.

    25.    The mention of any express obligation of Lessee herein shall never be construed as affecting any implied obligation which Lessee may otherwise owe Lessor hereunder, but shall be considered as being in addition thereto. Similarly, the mention of any right or remedy of Lessor herein shall not preclude Lessor from exercising any other right or remedy to which Lessor might otherwise be entitled; and no failure of Lessor to enforce any provision of this lease shall operate as a waiver of Lessor's right to thereafter enforce such provision or any other provision.

    26.    Lessee shall not assign, cede, sublease, or otherwise transfer this lease, in whole or in part, nor any interest therein, nor agree with another for the joint operation of the leased premises, in whole or in part, nor enter into any other agreement whereby any party other than Lessee acquires any interest in the leased premises, or the production therefrom, without the written consent of Lessor being first obtained, which consent will not be unreasonably withheld, except as to any transfer resulting from a corporate merger, consolidation or reorganization, embracing all of the properties owned by Lessee in the State of Louisiana. Lessee's failure to obtain Lessor's prior written consent as herein provided shall result in such transfer being null and void and of no force or effect. No sale or assignment by Lessor, or other change in ownership, in whole or in part, shall be binding upon Lessee until thirty (30) days after Lessee shall have been furnished with a certified copy of the recorded instrument or instruments showing such change of ownership. Subject to the foregoing, however, this agreement shall be binding upon the parties hereto and their respective successors and assigns.

    27.    Any notice, communication, payment, or delivery required or permitted hereunder shall be deemed to have been given, sent, paid, or delivered upon the mailing thereof, postage prepaid, addressed to the respective parties at the addresses shown below, until receipt in writing by one (1) party of notice of change of such address by the other party, to-wit:

APACHE LOUISIANA MINERALS, INC.
2000 Post Oak Blvd., Suite 100
Houston, Texas 77056
Attention: Gulf Coast Region Land Manager

Page 7 of 8

**491**

**Return to top**

28.     This agreement is subject to all boundary agreements affecting the property covered hereby, as well as all servitudes, licenses, permits, surface leases and other contracts of Lessor affecting the surface only of said property, but covers and affects all of the oil, gas and other hydrocarbons underlying said property.

29.     This agreement is made and entered into without any warranty by or recourse upon Lessor whatsoever, not even for the return of the consideration paid herefor; except that, subject to the other provisions hereof, Lessor warrants and agrees to defend the title to said property as against the claims of all parties claiming by, through, or under Lessor, but not otherwise.

IN TESTIMONY WHEREOF, this instrument is executed in multiple originals as of the day and date first above written.

WITNESSES:

Emily Irby
_____
Printed Name

_____
Benjamin Mechive
Printed Name

WITNESSES:

Emily Irby
_____
Printed Name

_____
Benjamin Mechive
Printed Name

LESSOR:

**APACHE CORPORATION, Agent for**
**APACHE LOUISIANA MINERALS, INC.**

By: _____
      C. R. Harden
      Attorney-in-Fact

LESSEE:
**APACHE CORPORATION**

By: _____
      C. R. Harden
      Attorney-in-Fact

STATE OF TEXAS          §
                                     §
COUNTY OF HARRIS      §

On this 12th day of July, 2006, appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact for APACHE CORPORATION, agent for APACHE LOUISIANA MINERALS, INC., and that the instrument was signed on behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

_____
Notary Public, State of Texas

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006
NOTARY I.D. # 392168

STATE OF TEXAS          §
                                     §
COUNTY OF HARRIS      §

On this 5th day of July, 2006, before me, a Notary Public, personally appeared C. R. Harden, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of Apache Corporation and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006
NOTARY I.D. # 392168

_____
Notary Public in and for the State of Texas

Page 8 of 8

492

**Return to top**



18S18E

246.71 Acres

# EXHIBIT "A"

*Attached to and made a part of that certain Oil & Gas Lease*
*dated July 15, 2006, by and between*
*Apache Louisiana Minerals, Inc. and Apache Corporation.*

### TERREBONNE PH., LOUISIANA



Date: 09-13-06

493

# EXHIBIT G

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
**Clerk Of Court**
P.O. Box 1569
Houma, La  70361-1569
(985) 868-5660

**Return to top**

**Received From :**
BROUSSARD BRADLEY  LAND SERVICES INC
P.O. BOX 52826
LAFAYETTE, LA  70506

**First VENDOR**

APACHE LOUISIANA MINERALS INC

**First VENDEE**

APACHE CORPORATION

Index Type :  Conveyances                          File # : 1261628

Type of Document : Mineral Lease

                                                         Book : 2020     Page : 614

Recording Pages :            14

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Terrebonne Parish, Louisiana

_Clerk Of Court_

On (Recorded Date) : 03/16/2007

At (Recorded Time) :  1:49:41:000 PM

Doc ID - 005306460014

**Return To :**
BROUSSARD BRADLEY  LAND SERVICES INC
P.O. BOX 52826
LAFAYETTE, LA  70506

**614**

Do not Detach this Recording Page from Original Document

**Return to top**

<u>OIL AND GAS LEASE</u>

THIS AGREEMENT entered into as of the 1st day of February 2007, by and between:

APACHE LOUISIANA MINERALS, INC., a Delaware corporation, duly authorized to do and doing business in Louisiana, (hereinafter called "Lessor"); and APACHE CORPORATION, a Delaware corporation (hereinafter called "Lessee"):

<u>W I T N E S S E T H:</u>

1.      For and in consideration of the sum of Ten Dollars and no/100 ($10.00), in hand paid, and other good and valuable consideration, of the other agreements of Lessee herein and subject to the terms and conditions hereinafter set forth, Lessor does hereby lease and let unto Lessee, exclusively, for the purpose of exploring and drilling for, producing and owning oil, gas and other hydrocarbons, and, but not exclusively, for the purpose of constructing such canals, roads, pipe lines, tanks, telephone and power lines, and other structures and facilities as may be necessary to explore and drill for, produce, treat, transport, store and own said substances hereunder, all, however, subject to the provisions of this lease, covering that certain property situated in the Parish of Terrebonne, State of Louisiana and described as follows, to wit:

DESCRIPTION OF PROPERTY

Those portions of Sections 13 and 24 of Township 19 South, Range 15 East, Terrebonne Parish, Louisiana, as more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof for all purposes and as more particularly referenced and described on the Exhibit "B" plat attached hereto and made a part of for all purposes.

2.      Lessor expressly reserves the full enjoyment and use of the property covered hereby and all rights with respect to the surface and subsurface thereof for any and all purposes except those granted and to the extent granted to Lessee hereby. Without limiting the foregoing, Lessor expressly reserves the right to explore by any method, to drill and mine for, and to produce, treat, store and transport any and all minerals other than those covered by this lease; to conduct geological, geophysical, geochemical or other explorations or surveys in connection with any type of mineral other than those covered by this lease; to hunt, trap, farm, graze, reclaim, improve and otherwise use any and all portions of the leased premises; to construct canals, roads, ditches, ponds, levees, dams, fences, buildings, pipe lines, telephone and power lines, and other facilities, structures and improvements; and to use any canal or road constructed by Lessee hereunder. All of the rights retained by Lessor and the rights granted to Lessee herein shall be exercised in such manner that neither shall unduly interfere with the operations of the other upon the leased premises.

3.      Subject to the other terms and provisions hereof, this lease shall remain in force for a primary term of one (1) year from the date hereof, and for as long thereafter as (a) oil, gas or other hydrocarbon is produced in paying quantities from the leased premises, or (b) this lease is maintained in force in any other manner hereinafter provided.

4.      In order to maintain this lease in full force and effect after the discovery of oil, gas or other hydrocarbon in paying quantities on the leased premises, whether during or after the primary term, Lessee shall, on or before the expiration of one hundred and eighty (180) days following the completion or abandonment of the discovery well, commence operations for and thereafter continue to drill successive wells upon the leased premises with not more than one hundred and eighty (180) days elapsing between the completion or abandonment of the last well drilled on the leased premises and the commencement of actual drilling of another well thereon. In the event Lessee shall fail to commence or cease to conduct such continuous drilling operations on the leased premises as herein provided, all of the rights of Lessee hereunder shall cease, terminate and be forfeited, without notice, demand or putting in default, as to all of the leased premises except those portions, if any, which Lessee may be permitted to retain under the terms of Paragraph 12 hereof.

Q   615

**Return to top**

5.      For purposes of computing the elapsed time between drilling operations, a well shall be deemed to have been completed or abandoned as of the date upon which the drilling rig, or a completion or workover rig, is removed from said well location without being replaced by another rig of the same or a different type, within seventy-two (72) hours after such removal, unless such well shall have been actually completed or abandoned prior to such removal.

6.      In the event any portion of the leased premises should be pooled and unitized by governmental authority, after notice and hearing, with other property into a drilling unit, then, during the existence of said drilling unit, any well which may be located within any such unit shall be considered, for purposes of this lease, to be a well located upon that portion of the leased premises which is included within such unit, irrespective of the actual location of said well within said unit.

7.      Lessee hereby agrees to pay Lessor, as royalty, twenty-five percent (25%) of the value of all oil, gas and other hydrocarbons produced and saved from the leased premises, delivered free of all cost into the pipeline or to the place where first sold or used, subject to the following provisions:

(A)      Lessee shall have the use, free of royalty, of oil and gas produced hereunder for fuel for drilling and reworking operations on the leased premises and for treating oil produced hereunder.

(B)      Lessor, at its option, from time to time and upon thirty (30) days written notice to Lessee, may elect to take in kind Lessor's royalty percentage of oil, gas and other hydrocarbons, or any one (1) or more of such substances or portions thereof, including products extracted from gas, produced and saved from the leased premises, in lieu of the value thereof, as hereinafter provided.  In the event Lessor so elects, Lessee shall provide the necessary facilities therefore, at Lessor's expense, until thirty (30) days after receipt of written notice that Lessor has revoked such option and has elected to receive the value of such royalty percentage.  Except to the extent that Lessor may have exercised its option to take royalty in kind, as herein provided, Lessee shall sell at the best prices obtainable or use all oil, gas and other hydrocarbons produced and saved from the leased premises and will account to Lessor for the royalty on the full value thereof, as herein provided.

(C)      Lessor shall also have a preferential right to purchase from Lessee all oil and other liquid hydrocarbons produced and saved from the leased premises, such right to be exercised from time to time within thirty (30) days following receipt of written notice from Lessee of the availability thereof for sale.  Said notice to be forwarded to the address provided herein in Paragraph 27.

(D)      In the event gas, including gas from oil wells, is processed in any facility or plant in which Lessee, or any subsidiary, parent or affiliate of Lessee, has, directly or indirectly, an ownership or operating interest, then the value of such gas shall not be less than the combined values at the plant of all products extracted therefrom and the residue gas, after deducting, however, the actual cost to Lessee of extracting said products, but not including amortization, depreciation or overhead.

(E)      In the event gas, including gas from oil wells, is processed in any facility or plant in which neither Lessee, nor any subsidiary, parent or affiliate of Lessee, has an operating or ownership interest, under an arrangement by which Lessee should receive or retain a share of said products extracted, residue gas, or other things of value, then in such event, the value of such gas shall be equal to the combined values at the plant of all things of value received or retained by Lessee under such arrangement.

(F)      Lessee represents and warrants that it has not heretofore entered into any contract which would commit or otherwise affect any oil, gas or other hydrocarbons to be produced from the leased premises, and agrees that it will not sell or deliver or otherwise commit any such production under any existing contract.  No contract for the sale or other disposition of any production shall be made prior to the discovery of production in paying quantities on the leased premises, and no such contract shall affect any depths greater than the depth theretofore drilled by Lessee on the leased premises.  Lessee shall not, directly or indirectly, sell or deliver any gas produced hereunder to a parent subsidiary or

2

**Return to top**

affiliate of Lessee without the prior written approval by Lessor of the price and terms thereof. At least thirty (30) days prior to the delivery or the execution of any contract for the sale or delivery of gas, and at least fifteen (15) days prior to the execution of any contract for the sale or other disposition of any other substance, Lessee shall give Lessor written notice thereof, and promptly after the execution of any such contract, Lessee shall furnish Lessor with a complete copy thereof.

(G)     Lessor shall bear the severance taxes levied against its royalty share of all production hereunder, and payment of royalties shall be made after deduction of the severance taxes paid by Lessee thereon. Subject to the foregoing, and except to the extent otherwise expressly provided in this lease, all of the royalties hereinabove stipulated shall be computed and paid or delivered without any deduction or charge on account of any cost or expense   of operation, exploration, development, production, saving, gathering, storage, treatment, cleaning, dehydration, extraction, separation, recovery, processing, compression, (except for compression for use on the premises), transportation, delivery, or any other deduction or charge whatsoever, whether of the same or different character, unless agreed to in writing by Lessor.

(H)     On or before the 25th day of each month, Lessee shall mail or deliver to Lessor a multiple original of each run ticket showing the total production run during the preceding calendar month, together with an itemized statement showing the total production of each substance, including products extracted from gas, during such preceding month, the royalties payable thereon, all data used to compute such royalties, including without limitation, volumes, prices, severance taxes, and other deductions applicable to each such substance, including plant products, as well as a full and complete explanation of the method of computation of such royalties on each such substance, including all corrections, additions or deductions; and, at the same time, Lessee shall remit to Lessor the royalties due hereunder on production during such preceding month. If for any reason whatsoever royalties hereunder are not paid within thirty (30) days after same are due, then in addition to any other remedy available to Lessor, all such unpaid royalties shall bear interest at the maximum legal rate from the date due until paid.

(I)     In the event Lessor should own less than the entirety of the oil, gas or other hydrocarbons under any portion of the leased premises, then the foregoing royalties due Lessor on production from said portion of the leased premises shall be reduced to the proportion thereof that Lessor's interest in such oil, gas or other hydrocarbons, in said portion bears to the entirety of the oil, gas or other hydrocarbons thereunder; provided, however, that on production from or attributable to any portion of the premises covered or purported to be covered by this lease, now or formerly constituting the beds or bottoms of navigable bodies of water (herein called "Navigable Waterbottoms"), if any, the royalties due under this lease shall never be less than seven and one half percent (7.5%) of all oil, gas and other hydrocarbons produced and saved from said Navigable Waterbottoms (herein called "Minimum Royalties"), such Minimum Royalties to be determined, computed and paid or delivered to Lessor in the same manner and in accordance with the same terms and provisions as the basic royalties stipulated in this lease; all, however, subject to the following terms and provision, to-wit;

(1)     Neither the assertion of a claim adverse to Lessor, nor a disclaimer by Lessor or a final determination or admission that Lessor does not actually own any of said Navigable Waterbottoms or any interest therein, shall deprive Lessor of the right to receive and retain such Minimum Royalty; and, except to the extent otherwise expressly provided herein, Lessee shall not have the right to reduce, suspend, fail to pay or recover such Minimum Royalty for any reason whatsoever, it being the intent hereof that Lessee unconditionally guarantees the payment or delivery to Lessor of such Minimum Royalty in accordance with the terms hereof; provided, however, that if neither Lessor nor the State of Louisiana owns the entirety of the oil, gas or other hydrocarbons under any portion of said Navigable Waterbottoms, then the Minimum Royalty due on production from said portion shall  be reduced to the proportion thereof which the combined interests of Lessor and the State of Louisiana in said portion bears to the full one hundred percent (100%) interest.

(2)     If it should be determined, whether by judgment of court, agreement, compromise, settlement, unitization, or otherwise, that this lease validly covers or affects only an undivided interest in the oil, gas or other hydrocarbons

3

Return to top

produced from or attributable to any portion of said Navigable Waterbottoms, with the result that the basic royalty hereunder is reduced in proportion to the undivided interest validly covered hereby, as hereinabove provided, then the Minimum Royalty shall nevertheless continue to be due with respect to the remaining undivided interest in such production not validly covered hereby, but shall be reduced to the proportion thereof that such remaining undivided interest bears to the full one hundred percent (100%) interest.

(3)    In the event Lessee should release or surrender this lease as to all or any portion of the leased premises, or in the event of termination of this lease in whole or in part, then Lessee shall immediately release and surrender any interest then held, owned or controlled, directly or indirectly, by Lessee in any lease granted by the State of Louisiana, insofar as said State lease may purport to cover or affect any Navigable Waterbottoms included within the area as to which this lease has been so released, surrendered or terminated. Thereafter, Lessee shall be relieved of all obligations with respect to the Minimum Royalty on future production from said area.

(4)    Nothing herein contained, nor any action or nonaction of Lessor hereunder, shall ever be deemed a waiver of any right, title, interest or claim which Lessor may have in or to any of said Navigable Waterbottoms, nor ever serve as an estoppel against the assertion by Lessor of full title thereto or possession thereof.

8.    If a well capable of producing oil, gas or other hydrocarbons in paying quantities should now exist or hereafter be completed on property, whether or not owned by Lessor, other than the leased premises, and within 660 feet of the leased premises, in the case of an oil well, or within 1,320 feet of the leased premises, in the case of a gas well, or within such greater distances as may be established by governmental authority as a part of a drilling, spacing or unitization pattern for the field, then, within thirty (30) days after such well shall have been completed, in the case of an oil well, or within thirty (30) days after the commencement of actual production therefrom, in the case of a gas well, or within ninety (90) days from the date hereof, whichever is later, if said well is not then pooled and unitized with a portion of the leased premises, or if no well offsetting same should have been drilled on the leased premises, Lessee shall either commence operations for and thereafter diligently prosecute the drilling of an offset well on the leased premises at a location which is reasonably designed to protect the leased premises from drainage or release and surrender all of Lessee's rights hereunder with respect to that portion of the leased premises, containing forty (40) acres, in the case of an oil well, or one hundred sixty (160) acres, in the case of a gas well, in as near the shape of a square as practicable, located nearest to said well, provided, however, that if, at the applicable time specified herein, there is then pending before governmental authority an application for a hearing to pool and unitize a portion of the leased premises, with the well to be offset, Lessee may delay such drilling or such release until the disposition of such application, but not to exceed a total delay of ninety (90) days, and if such application should result in unitizing a portion of the leased premises with said well during such delay, Lessee shall thereupon be relieved of its obligation hereunder to drill said offset well or to effect said release.

9.    If production should be established in any reservoir which is located partly on the leased premises and partly on property other than the leased premises, whether or not owned by Lessor, then Lessee shall cause that portion of said reservoir located on the leased premises to be produced competitively and ratably with that portion of the same reservoir located off the leased premises; and Lessee shall drill and develop that portion of said reservoir located on the leased premises with such density, and shall endeavor to have assigned thereto such allowables, and shall take such other action, as may be necessary to accomplish such competitive and ratable production.  In the event it should be determined at any time, or from time to time, that those portions of said reservoirs located partly on the leased premises have not been produced ratably and competitively with those portions of the same reservoirs located off the leased premises, or if, for any other reason, drainage of the leased premises has occurred, then it shall be assumed that Lessee has produced from the leased premises such additional quantities of substances as may be necessary to accomplish such ratable and competitive production and to offset such drainage; and royalties shall be due thereon in accordance with the provisions of this lease.

10.    Lessee shall, in addition to all other obligations provided in this lease, reasonably develop the leased premises for all hydrocarbons covered hereby and produce and save same,

4

**Return to top**

with due regard to the interests, rights and obligations of Lessor and Lessee; and Lessee shall take such other action as may be necessary to protect the leased premises from drainage and to insure to Lessor its fair share of production from any reservoir located, wholly or partially, upon the leased premises. None of the provisions of this lease are intended, nor shall any of such provisions ever by construed to limit the extent of whatever operations or other action would otherwise be required of Lessee hereunder in order to properly explore and develop the leased premises, to produce and market production therefrom, and to protect same from drainage.

11.     If Lessee should actually complete and test on the leased premises a well which is capable of producing only gas, or only gas and condensate, in paying quantities, but which is not producing because of the lack of a regularly available market for the gas to be produced therefrom, such shut-in well shall nevertheless be deemed to be a well producing gas in paying quantities, and Lessee shall, within sixty (60) days after such well is completed, commence the payment to Lessor, as advance royalty, of an amount equal to the sum of Fifteen and No/100 Dollars ($15.00) per day for each day during which said well has not produced after completion, and thereafter shall continue such payments monthly with regard to such well at the above rate per day until such well is brought into actual production, irrespective of whether or not this lease is being otherwise maintained; provided, however, that, commencing with the first day following the end of the second year after said well shall have been initially completed, and continuing for a period of two (2) years thereafter, the rate of such payments shall be increased to an amount equal to the sum of Thirty and No/100 Dollars ($30.00) per day, and thereafter, the rate of such payments shall be further increased to an amount equal to the sum of Fifty and No/100 Dollars ($50.00) per day.

12.     In the event Lessee's rights hereunder should terminate or be forfeited for failure to comply with the drilling requirements hereof, Lessee shall, nevertheless, be entitled to retain, subject to the terms of this lease, each well producing in paying quantities, together with all those portions of the leased premises which may be comprised within a square, containing forty (40) acres, in the case of an oil well, or one hundred sixty (160) acres, in case of a gas well, with the producing well in the center thereof, or, in the event drilling units shall have been established by governmental authority, after notice and hearing, then so much of the leased premises as may be included within any such unit on which a well producing in paying quantities is located, whether or not such well be located upon the leased premises; provided, however, that all those portions of the leased premises which Lessee may so retain shall be limited in depth to one-hundred feet (100') below the stratigraphic equivalent of the deepest depth theretofore drilled and logged above salt or other domal material by Lessee hereunder; the acreage retained around each such well to constitute a separate tract of retained acreage even though the acreage retained around one (1) well should overlap that retained around another; all, however, subject to the following terms and provisions, to-wit:

(A)     If, at the time such termination or forfeiture would otherwise occur, Lessee should then be engaged in drilling, completing, or reworking a well on the leased premises, then said termination or forfeiture shall be delayed until the completion of said operations, and if such operations result in a well producing in paying quantities, then said well and the acreage around same may be retained in accordance with the provisions hereof.

(B)     This lease shall continue in effect as to each such respective tract of retained acreage as long as a well located thereon shall continue to produce in paying quantities or Lessee shall continue to conduct additional drilling or reworking operations on such tract of retained acreage with not more than one hundred and twenty (120) days elapsing between the cessation of production from or the completion or abandonment of drilling or reworking operations on one (1) well and the restoration of production from or the commencement of additional operations for the drilling or reworking of the same or another well on such tract of retained acreage.

(C)     In the event a drilling unit, affecting any well then located on the leased premises or on premises pooled therewith, should subsequently be established or revised by order of governmental authority, after notice and hearing, then the tract of retained acreage surrounding said well shall thereupon be revised so as to comprise only that portion of the premises then covered by this lease which may be included within the drilling unit upon which said well is located. Any property then covered hereby which is not thereby included within any tract of retained acreage shall remain subject to this lease and shall again be subject to the provisions of Paragraph 5 hereof, to the same extent as if no termination or forfeiture had occurred, but, for purposes of said Paragraph 5, it shall be

5

**Return to top**

considered that a well was abandoned thereon as of the date of the establishment or revision of said unit.

13.     Subject to the other provisions hereof, Lessee may, at any time, execute and place of record a release or releases of this lease as to all or any part of the leased premises and thereafter be relieved of future obligations concerning the property released.  Any and all releases of this lease, in whole or in part, shall be made free of all encumbrances created by or under Lessee, and except as otherwise provided herein, all partial releases shall be made so that the lands not released shall be a compact body, in one (1) single block and as nearly contiguous as possible.  Lessee shall promptly mail or deliver to Lessor an executed or certified copy of each such release.

14.     Lessee shall use due care to avoid damage to the property covered hereby, and to all timber, crops, wildlife, game, fish, animals, structures, facilities and improvements now or hereafter located thereon, whether or not owned by Lessor; and Lessee will repair all canals, ditches, dams, levees, roads, bridges, fences, pipelines, and other structures, facilities and improvements on such property which may be worn or damaged by any operations hereunder, and will remove all debris resulting therefrom.  Lessee further agrees to pay Lessor for, and to indemnify and hold Lessor harmless against, any and all loss, damage, liability, cost, or expense, including reasonable attorneys' fees, on account of injuries to or death of persons or damage to property of any kind, arising wholly or partially out of or in connection with any operations hereunder; and in the event of litigation against Lessor on account thereof, Lessee shall, at Lessor's request appear and defend same and shall pay any judgment which may be rendered against Lessor therein.

15.     Without the prior written consent of Lessor, Lessee shall not (a) use wheel-type marsh buggies or suction dredges upon any part of the leased premises, or (b) permit or suffer the discharge or disposal of any salt water, oil, or other polluting or contaminating substance or object upon the surface of any of the property covered hereby, or (c) construct any canal upon the surface of any portion of the leased premises which may then be included within any area which has been or is being reclaimed, levied for purposes of the culture of aquatic life, or otherwise improved.

16.     As to all operations hereunder, Lessee shall carry the following minimum insurance for the benefit and protection of the Lessor:

(a)     <u>Worker's Compensation Insurance</u> in accordance with laws of governmental bodies having jurisdiction including, if applicable, United States Longshoremen's and Harbor Workers' Compensation Act with Outer Continental Shelf Extension; and <u>Employer's Liability Insurance</u> with a limit of $1,000,000; and Maritime Employers' Liability (if applicable) with a limit of $1,000,000.

(b)     <u>Automobile Liability Insurance</u> policy with limits of $1,000,000 per occurrence covering personal injury, death, or property of third parties.

(c)     <u>Operator's Extra Expense</u> policy with limits of $15,000,000 per occurrence covering all loss of well control, explosions, fire, cratering, including expenses of cleanup, containment, seepage, pollution or contamination.

(d)     <u>Third Party/Excess Liability Insurance</u> policy(ies) with minimum total limits of $15,000,000 per occurrence covering all losses or damages resulting from claims for personal injury, death, or property of third parties, and including coverage for protection and indemnity liability claims and aircraft liability claims, if applicable.

Lessee shall furnish Lessor with a certificate evidencing such coverage contemporaneously with its execution of this agreement, and at any time during the term of this agreement if requested by Lessor.  Such coverage shall further provide thirty (30) days notice of cancellation in Lessor's favor and shall waive subrogation against Lessor, and shall name Lessor as additional insured.

If Lessee desires to self-insure its obligation in this provision, it must demonstrate to the Lessor satisfaction that it is financially capable of doing so.  It is understood and agreed that if, in the Lessor's sole opinion, such financial capability cannot be demonstrated on a continuing basis,

6

then Lessee will be required to procure said coverage and furnish a certificate of insurance evidencing same within thirty (30) days from receiving such notification from Lessor.

Lessee shall make a good faith effort to require each independent contractor and subcontractor to carry and maintain insurance at its own expense in the amounts deemed necessary to cover the risks inherent to the work or services to be performed by the contractor or subcontractor.

Lessee's failure to maintain the insurance coverages required by the terms of this lease shall be deemed a material breach thereof.

17.    Prior to the conduct of any geophysical exploration hereunder, Lessee shall notify Lessor and also Lessor's office at P. O. Box 206, Houma, Louisiana 70361, Attention: Mr. Timothy Allen, outlining the plan and location of such operations, shall afford Lessor an opportunity to have a representative present during such operations, at no expense to Lessor, and Lessee shall comply with any reasonable restrictions imposed by Lessor on such operations. To defray the cost of said representative, Lessee shall pay Lessor the sum of Two Hundred Fifty Dollars and no/100 ($250.00) for each day such operations are conducted. This money is to be paid to Lessor at Lessor's office at P. O. Box 206, Houma, Louisiana 70361, Attention: Mr. Timothy Allen. All notices shall be made to Lessor at Lessor's office in Houma, Louisiana. Prior to making application to any governmental agency for any permit to dredge on the leased premises, Lessee shall consult with Mr. Timothy Allen regarding the route of the proposed dredging so as to minimize any environmental damages caused by such dredging operations. Prior to the construction of any canal, road, pipeline or other structure or facility permitted hereunder, Lessee shall furnish Lessor with a plat showing the location thereof and the well or facility to be served thereby, together with a copy of each application to governmental agencies or authorities, including plans and specifications, submitted in connection therewith, Lessee shall bury all pipelines below the bottoms of existing ditches, bayous, canals, and other water bottoms, and, upon Lessor's request, Lessee shall bury said pipelines to a sufficient depth, or otherwise alter or modify same, so as not to interfere with reclamation, cultivation, trapping, or other actual or proposed operations, structures, facilities, or improvements of Lessor. All canals and roads shall be and remain private and not open to the public and will be conspicuously posted as such by Lessee. Spoil from any canal shall be placed in the form of continuous levees wherever practicable, and only such openings in the spoil banks will be left as may be required by Lessor. All canals will be so constructed (including bulkheading as may be necessary) as to prevent any reasonable avoidable substantial erosion, but not including ordinary erosion of canal banks caused by ordinary use of such canals or by weathering. Upon termination of this lease as to any lands upon which a canal may have been constructed, or upon abandonment of the use of any canal, Lessee shall, unless otherwise directed in writing by Lessor, permanently dam the entrance of such canal (including bulkheading as may be necessary) so as to adequately prevent the flow of water therein and the use of said canal as a means of ingress and egress. Lessee shall plug and abandon all wells in accordance with the rules and regulations of any governmental agency having jurisdiction, shall remove all casing and pipe from abandoned wells or seismic operations down to a depth of at least ten (10) feet below ground level and ten (10) feet below the bottom of any canal or water bottom in which same may be located, and shall remove all other obstructions or navigational hazards in such canal or water bottom.

18.    All operations commenced or conducted, and all wells drilled hereunder, shall be prosecuted in good faith, with due diligence, and in a workmanlike manner. Prior to the drilling of any well hereunder, Lessee shall notify Lessor, specifying the proposed depth thereof, and shall furnish Lessor with a plat showing the proposed location of said well; and promptly after the completion or abandonment of any such well, Lessee shall notify Lessor of the results thereof. No well shall be drilled within two hundred (200) feet of any house, building, or other structure or facility without the prior written consent of Lessor.

19.    The drilling or other operating obligations or requirements imposed hereunder on Lessee may be suspended while, but only so long as (in any event not to exceed a period of two (2) years) and to the extent only that Lessee is directly prevented from complying therewith by acts of God, war, rebellion, insurrection, riots, strikes, fires, storms, floods, explosions, orders, rules or regulations of governmental authority, or any other acts beyond the control of Lessee, which by exercise of due diligence Lessee is unable to avoid; but as soon as the cause or matter so preventing such compliance is removed or ceases to exist, Lessee shall immediately resume compliance with such obligations or requirements. It being agreed and understood that the eagle nesting periods (October 1 to May 15 of each calendar year as defined by the State of Louisiana, Department of Wildlife and Fisheries) shall not be applicable to this force majeure paragraph. In the event that drilling or other operations are suspended as above provided, Lessee shall

7

Return to top

immediately notify Lessor thereof in writing, setting forth the full circumstances, and, within thirty (30) days after the date upon which such obligations or requirements were due to be performed, Lessee shall commence the payment to Lessor, monthly, as rental, of a sum equal to Five and No/100 Dollars ($5.00) per acre on the number of acres then covered by this lease, and shall thereafter continue to make such payments monthly until Lessee resumes compliance therewith and performance thereof; provided, however, that, if Lessee is prevented or delayed by any of the causes mentioned in this paragraph from drilling any offset well or offset wells which Lessee is obligated to drill under the provisions of Paragraph 9 hereof, Lessee shall, in addition to the payment hereinabove set forth, also pay to Lessor a compensatory royalty equal to one-half (1/2) of the royalties which would have been payable to Lessor under this lease if the well to be offset had been located on premises covered hereby, such compensatory royalty to be effective as of the date upon which Lessee should have commenced operations for the drilling of said offset well, as stipulated in Paragraph 8 hereof, and shall terminate the day upon which Lessee commences operations for the drilling of such offset well.

20.     Lessor shall have the right, at all times, to inspect the operations of Lessee on or pertaining to the leased premises, and the equipment and facilities used in connection therewith, including, without limitation, the exploration, examination and survey of the leased premises; the drilling, coring, logging, testing, completing and producing of all wells thereon; and the measuring, sampling, analysis and disposition of production therefrom.  Lessee shall keep complete and accurate records of all such operations, and the results thereof, including, without limitation, all original geophysical, geological, geochemical and paleontological data and interpretations or analyses thereof; all original land surveys, title opinions and title curative material; all original drilling, coring, logging, testing and completion records; all original production records showing the total gross production, the quantities saved, sold and used, the disposition thereof, and the sales prices or values thereof; the original of all production sales contracts; and such other records and data as may be proper for the settlement of accounts between Lessor and Lessee or to determine the respective rights and obligations of said parties hereunder.  During the term of this lease, and for a period of one (1) year thereafter, Lessee shall make all of such records and data available to Lessor for examination and copying in Lessee's office at all reasonable times, as well as all other records, reports, notes, charts, graphs, maps, contracts, documents, papers and other material, except intracompany correspondence, in the possession of or under the control of Lessee, pertaining to the leased premises; and, upon request, Lessee shall promptly deliver to Lessor, without cost, true and legible copies thereof, properly identified, including, without limitation, copies of all daily drilling reports; directional well survey records and reports; dip meter survey reports; graphic logs, micro logs, radioactive logs or other well survey logs; bottom hole pressure reports; bottom hole sample analyses of oil, gas or other substances; well history and performance reports; tank tables; and meter runs.

21.     Without limiting the foregoing, Lessee shall deliver to Lessor, without cost or demand, promptly after the same is completed, a true and legible copy, properly identified, of each of the following, to the extent that same pertains to the property covered hereby and is prepared, made, used or issued by or at the instance of Lessee during the term hereof, to-wit:

(A)     All basic and interpretative data, including without limitation, seismograms, shot-point maps and field notes, field tapes and reports, stacking diagrams, cross sections, record sections, velocity analyses, contour maps, structure maps, isopach maps, and other pertinent material, showing the results of any geophysical, geological, geochemical or other exploration, examination, or study of the property covered hereby, together with the names and addresses of the personnel performing such activities in the field and the dates of such performance.

(B)     All daily drilling reports; directional well survey records and reports; dip meter survey reports, electric logs, graphic logs, micro logs, radioactive logs or other well survey logs; core records and analyses; paleontological records and analyses; formation test results; well completion reports; well workover reports; gas-oil ratio reports; bottom hole pressure reports; bottom hole sample analyses; analyses of oil, gas or other substances; well history and performance reports; tank tables; meter runs; maps and field notes of land surveys; and title opinions and curative material.

(C)     All daily drilling reports shall be mailed or telecopied to APACHE CORPORATION, 2000 Post Oak Blvd., Suite 100, Houston, Texas  77056, Attention: Gulf Coast Drilling Department, Facsimile 713/296-6464.

8

**Return to top**

(D)     All applications and reports made to any governmental agency or authority; and all orders, rules or permits issued by any such agency or authority.

Lessee's failure to provide Lessor the data required by the terms of this lease shall be deemed a material breach thereof.

22.     Prior to any attempt to acquire a lease from any party claiming adversely to Lessor, Lessee shall notify Lessor thereof and furnish information relative thereto.  In the event Lessee should deem it necessary or desirable to apply to governmental authority for rules or orders governing the spacing of wells or the establishment of units upon the leased premises, Lessee shall, at least fifteen (15) days prior to the filing of such application or any pre-application notice thereof, notify Lessor in writing of its proposed plan, setting forth in detail the purposes of such application or plan, the results to be achieved thereby, and full and complete information pertaining thereto; and Lessee shall thereafter keep Lessor fully informed with respect to such plan and any changes or modifications thereof, and upon request shall meet with Lessor and review the data in support of same.  Lessee shall, at least five (5) days prior to filing any such application or pre-application notice thereof, furnish Lessor with a copy thereof, and, at least five (5) days prior to any hearing pursuant to such application shall also furnish Lessor with copies of all maps, plats, documents and other material or evidence to be submitted at such hearing in connection with such application.

23.     Lessee shall pay, before the same becomes delinquent, all taxes levied against its rights hereunder or against any improvements, buildings, structures, facilities, equipment, or other property, including any oil, gas or other products, not owned by Lessor, that may be placed, erected, stored or located by Lessee upon or in connection with the leased premises.  Lessor shall pay, before the same becomes delinquent, any ad valorem tax assessed against the surface of the leased premises, in default of which Lessee may do so and be subrogated to the lien thereof, and Lessee may reimburse itself for the taxes so paid by deducting the amount thereof from any payments accruing to Lessor hereunder.

24.     In the event of termination of this lease for any cause, in whole or in part, Lessee shall within ninety (90) days of said termination execute and record a proper instrument of release, releasing from the terms hereof all those portions of the leased premises as to which said lease may have terminated; and Lessee shall promptly furnish Lessor an executed or certified copy thereof.  If said release is not executed and recorded within the prescribed ninety (90) day period, Lessee shall be subject to a penalty and fee of one hundred dollars ($100.00) per day for each day after the expiration of said ninety (90) day period for noncompliance of this provision.  Within four (4) months after such termination, as to all or any portion of the leased premises, Lessee shall remove from that portion of the leased premises as to which this lease shall have so terminated, any and all property belonging to Lessee, in default of which within the time above specified, but subject to the other obligations of Lessee hereunder, such property shall become the property of Lessor without cost or liability.  Lessee shall not be relieved from bearing the cost and expense associated with the removal of such property and the restoration of the leased premises as a result of such property becoming the property of Lessor and Lessee shall reimburse Lessor for all costs and expenses incurred by Lessor in connection with such removal and/or restoration.

25.     The mention of any express obligation of Lessee herein shall never be construed as affecting any implied obligation which Lessee may otherwise owe Lessor hereunder, but shall be considered as being in addition thereto.  Similarly, the mention of any right or remedy of Lessor herein shall not preclude Lessor from exercising any other right or remedy to which Lessor might otherwise be entitled; and no failure of Lessor to enforce any provision of this lease shall operate as a waiver of Lessor's right to thereafter enforce such provision or any other provision.

26.     Lessee shall not assign, cede, sublease, or otherwise transfer this lease, in whole or in part, nor any interest therein, nor agree with another for the joint operation of the leased premises, in whole or in part, nor enter into any other agreement whereby any party other than Lessee acquires any interest in the leased premises, or the production therefrom, without the written consent of Lessor being first obtained, which consent will not be unreasonably withheld, except as to any transfer resulting from a corporate merger, consolidation or reorganization, embracing all of the properties owned by Lessee in the State of Louisiana.  Lessee's failure to obtain Lessor's prior written consent as herein provided shall result in such transfer being null and void and of no force or effect.  No sale or assignment by Lessor, or other change in ownership, in whole or in part, shall be binding upon Lessee until thirty (30) days after Lessee shall have been furnished with a certified copy of the recorded instrument or instruments showing such change of

9

**Return to top**

ownership.  Subject to the foregoing, however, this agreement shall be binding upon the parties hereto and their respective successors and assigns.

27.    Any notice, communication, payment, or delivery required or permitted hereunder shall be deemed to have been given, sent, paid, or delivered upon the mailing thereof, postage prepaid, addressed to the respective parties at the addresses shown below, until receipt in writing by one (1) party of notice of change of such address by the other party, to-wit:

<div align="center">

APACHE LOUISIANA MINERALS, INC.
2000 Post Oak Blvd., Suite 100
Houston, Texas  77056
Attention: Gulf Coast Region Land Manager
</div>

28.    This agreement is subject to all boundary agreements affecting the property covered hereby, as well as all servitudes, licenses, permits, surface leases and other contracts of Lessor affecting the surface only of said property, but covers and affects all of the oil, gas and other hydrocarbons underlying said property.

29.    This agreement is made and entered into without any warranty by or recourse upon Lessor whatsoever, not even for the return of the consideration paid herefor; except that, subject to the other provisions hereof, Lessor warrants and agrees to defend the title to said property as against the claims of all parties claiming by, through, or under Lessor, but not otherwise.

30.    Attached hereto as Exhibit "_" is a Declaration of Oil and Gas Lease ("Declaration"), which the parties hereto agree to execute simultaneously with the execution of this Lease.  Lessee shall file the Declaration in the real property records of the state and parish first herein written within thirty (30) days of the execution thereof, and within fifteen (15) days of the recording thereof, Lessee shall provide Lessor with a certified copy of the recorded Declaration.

IN TESTIMONY WHEREOF, this instrument is executed in multiple originals as of the day and date first above written.

LESSOR:

WITNESSES:

**APACHE CORPORATION, Agent for**
**APACHE LOUISIANA MINERALS, INC.**

_____
BETTY GIBBONS
Printed Name

By:_____
          C. R. Harden
        Attorney-in-Fact

_____
GLENN OTNESS
Printed Name

LESSEE:

**APACHE COPRORATION**

WITNESSES:

_____
BETTY GIBBONS
Printed Name

By:_____
          C. R. Harden
        Attorney-in-Fact

_____
GLENN OTNESS
Printed Name

L-9000707/A2 – Lake Decade LA5532

10

**624**

**Return to top**

STATE OF TEXAS           §
                         §
COUNTY OF HARRIS         §

     On this 6th day of March, 2007, appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact for APACHE CORPORATION, agent for APACHE LOUISIANA MINERALS, INC., and that the instrument was signed on behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

                               *Edmunds B. Travis*

                      Notary Public, State of Texas

EDMUNDS B. TRAVIS
Notary Public, State of Texas
My Commission Expires
January 05, 2011

NOTARY I.D. # 392168

STATE OF TEXAS           §
                         §
COUNTY OF HARRIS         §

     On this 6th day of March, 2007, before me, a Notary Public, personally appeared C. R. Harden, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

                               *Edmunds B. Travis*

                      Notary Public, State of Texas

EDMUNDS B. TRAVIS
Notary Public, State of Texas
My Commission Expires
January 05, 2011

NOTARY I.D. # 392168

L-9000707/A2 – Lake Decade LA5532

11

625

**Return to top**

## EXHIBIT "A"

**Attached to and made a part of that certain Oil & Gas Lease dated February 1, 2007, by and between Apache Louisiana Minerals, Inc., Lessor and Apache Corporation, Lessee.**

All those portions of the following described property situated in the Lake DeCade Field, located in Sections 13 & 24, T19S-R15E, Terrebonne Parish, Louisiana, said tract of land being more particularly described as follows:

Commencing at the northeast corner of Section 13, T19S-R15E, said point being the Point-of-Beginning and having Lambert plane coordinate values of X = 2,145,140.39 feet and Y = 274,732.86 feet;

Thence, South 0°57'32" East along the east line of said Sections 13 & 24 a distance of approximately 6,300 feet to a point on the north bank of Lake DeCade;

Thence, westerly along the north bank of Lake DeCade a distance of approximately 5,087' to a point on the west line of said Section 24;

Thence, North 0°51'36" West along the west line of said Section 24 a distance of approximately 1,544 feet to the southwest corner of Section 13;

Thence, North 0°51'37" West a distance along the west line of said Section 13 a distance of 4,595.68 to a point on the Apache Louisiana Minerals, Inc. property line;

Thence, North 89°04'01" East along said property line a distance of 530.39 feet;

Thence, North 0°56'00" West along said property line a distance of 683.65 feet to a point on the north line of said Section 13;

Thence, North 89°08'21" East along the north line of said Section 13 a distance of 4,334.10 feet to the Point of Beginning;

Said tract containing a total of 735.892 acres, and is more particularly shown on that certain plat labeled Exhibit "B" attached hereto and made a part hereof.

All bearings, distances and coordinates recited herein are based upon the Louisiana State Plane Coordinate System, 1927 Datum, South Zone.

**626**

L-9000707/A1 Lake Decade LA5532

Return to top



EXHIBIT "B"

Attached to and made part of that certain Oil and Gas Lease
dated February 1, 2007, between
Apache Louisiana Minerals, Inc., as Lessor, and
Apache Corporation, as Lessee,
Lake DeCade Field, Terrebonne Parish, LA.

| | | |
|---|---|---|
| DRAWN BY: | F. FIELDS | |
| DATE: | FEBRUARY 28, 2007 | |
| SHEET No.: | 1 OF 1 | |
| APPROVED BY: | T. ALLEN | |
| CAD FILE No.: | 2007-009MIN.DWG | |

**APACHE CORPORATION**
POST OFFICE BOX 206
HOUMA, LOUISIANA 70361-0206
TEL (985) 879-3528    FAX (985) 876-5267

Apache
CORPORATION

627

# EXHIBIT H

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
Clerk Of Court
P.O. Box 1569
Houma, La  70361-1569
(985) 868-5660

**Return to top**

**Received From :**
APACHE CORPORATION
2000 POST OAK BLVD, SUITE 100
HOUSTON, TX  77056-4400

**First VENDOR**

APACHE LOUISIANA MINERALS INC

**First VENDEE**

APACHE CORPORATION

| | |
|---|---|
| **Index Type :**   Conveyances | **File # :** 1265674 |
| **Type of Document :** Amended Mineral Lease | |
| | **Book :** 2030     **Page :** 74 |
| **Recording Pages :**          6 | |

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Terrebonne Parish, Louisiana

*Robt Boudreaux*
Clerk Of Court

On (Recorded Date) : 05/08/2007

At (Recorded Time) : 11:44:48:000 AM

Doc ID - 005385690006

**Return To :**
APACHE CORPORATION
2000 POST OAK BLVD, SUITE 100
HOUSTON, TX  77056-4400

'74

Do not Detach this Recording Page from Original Document

**AMENDMENT TO OIL AND GAS LEASE AND DECLARATION OF LEASE**

Return to top

THIS AGREEMENT entered into on the 26th day of April, 2007, but shall be effective as of the 1st day of August, 2004, between:

APACHE LOUISIANA MINERALS, INC., a Delaware corporation, duly authorized to do and doing business in Louisiana, (hereinafter called "Lessor"); and APACHE CORPORATION, a Delaware corporation, (hereinafter called "Lessee");

**WITNESSETH:**

1.     By Oil and Gas Lease agreement (hereinafter called the "Lease"), dated the 24th day of April, 2005, effective the 1st day of August, 2004, a Declaration of Oil and Gas Lease of which has been placed of record in the appropriate public records of Terrebonne Parish, Louisiana in Conveyance Book No. 1915 under Entry No. 1209171, Lessor did lease and let unto Lessee twenty five percent (25%) of eight eights (8/8) interest, subject to the provisions of said Lease, in that certain property situated in Parish of Terrebonne, State of Louisiana said to contain 1,305.376 acres of land, more or less, and as more particularly described and depicted in the Exhibits "A" and "B" attached to said Oil and Gas Lease agreement and said Declaration of Oil and Gas Lease as found of record referenced above.

2.     In the above referenced Exhibit "A" to said Declaration of Oil and Gas Lease, and in the Exhibit "A" to the Oil and Gas Lease agreement it is recited in the provision of depths made subject to said Oil and Gas Lease agreement that:

"The lease rights being conveyed herein are only insofar as from surface down to and including one-hundred feet (100') below the stratigraphic equivalent of the base of the BB2 Sand defined as that certain sand seen on the electric log for the Placid-LaTerre #D-1 well, between the depths of 12,290 feet and 12,400 feet, located in Section 66, T18S-R18E, Terrebonne Parish, Louisiana."

3.     The parties hereto, Lessor and Lessee, do hereby amend the above referenced Declaration of Oil and Gas Lease and Oil and Gas Lease agreement such that the above quoted provision in number 2 above is herein rendered deleted and the following language is inserted in lieu thereof and for all purposes, to wit:

"The lease rights being conveyed herein are only insofar as from the surface down to and including one-hundred feet (100') below the stratigraphic equivalent of the base of the BB2 sand defined as that certain sand seen on the electric log for the Placid-LaTerre #D-1 well, between the depths of 12,510 feet and 12,540 feet, located in Section 66, T18S-R18E, Terrebonne Parish, Louisiana."

4.     Furthermore, the parties hereto do hereby amend the Lease and Declaration, insofar as to the Lease Premises such that the description of the Leased Premises is hereby amended to contain 1,349,758 acres of land, more or less, as more particularly described and depicted in the Exhibits "A" and "B" attached hereto. The parties, Lessor and Lessee, do hereby further amend said Lease and Declaration to insert and substitute Exhibits "A" and "B" attached hereto in lieu of those exhibits in the description of the Leases Premises as originally attached to said Lease and Declaration. Pursuant to this amendment of said Lease and Declaration, it is the intention of Lessor and Lessee to extend the terms, conditions, covenants and agreements of said Lease and Declaration to apply fully to the property as described in the Exhibits "A" and "B" attached hereto such that Lessor does hereby grant, lease, let and demise, effective August 1st, 2004, a twenty-five percent (25%) of eight eights (8/8) interest in and to 1,349.758 acres of land, more or less, as included in the description of the Leased Premises in Exhibits "A" and "B" attached hereto, and in the same manner and subject to all of the provisions of the above referenced Lease and Declaration.

**Return to top**

5. The parties hereto, as Lessor and Lessee in the Lease and Declaration do hereby mutually agree and covenant that said Declaration and Lease are amended insofar and only insofar as recited above and do otherwise confirm, adopt and ratify said Lease in all respects and as to each and all of the provisions contained therein.

IN TESTIMONY WHEREOF, this instrument is executed as of the day and date first above written.

LESSOR:

WITNESSES:                    APACHE CORPORATION, Agent for
                             APACHE LOUISIANA MINERALS, INC.

_Louise Gierisch_
Louise Gierisch            By: _C. R. Harden_
Printed                         C. R. Harden
                               Attorney-in-Fact

_Betty Gibbons_
BETTY GIBBONS
Printed


LESSEE:

WITNESSES:                    APACHE CORPORATION

_Louise Gierisch_
Louise Gierisch            By: _C. R. Harden_
Printed                         C. R. Harden
                               Attorney-in-Fact

_Betty Gibbons_
BETTY GIBBONS
Printed


STATE OF TEXAS        §
COUNTY OF HARRIS      §

On this _1st_ day of _May_, 2007, appeared C. R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation and Agent for APACHE LOUISIANA MINERALS, INC., and that the foregoing was executed on behalf of said corporation by authority of its Board of Director, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

> HELEN K. MELE
> Notary Public, State of Texas
> Commission Expires 05-26-2010
> Notary ID: 00271585-0

_Helen K. Mele_
Notary Public in and for the State of Texas

STATE OF TEXAS        §
COUNTY OF HARRIS      §

On this _____ day of _____, 2007, appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact for APACHE CORPORATION, and that the instrument was signed on behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

> HELEN K. MELE
> Notary Public, State of Texas
> Commission Expires 05-26-2010
> Notary ID: 00271585-0

_Helen K. Mele_
Notary Public in and for the State of Texas

# EXHIBIT "A"

Return to top

Attached to and made a part of that certain Amendment to Oil and Gas Lease and declaration of Lease dated April 24, 2005, effective August 1, 2004 by and between Apache Louisiana Minerals, Inc., Lessor and Apache Corporation, Lessee.

All those portions of the following described property situated in the South Chauvin Field, located in portions of Sections 66 & 67, T19S-R18E and Sections 72 & 73, T18S-R18E, Terrebonne Parish, Louisiana, said tract of land being more particularly described as follows:

Commencing at the southeast corner of Section 66, said point being the Point-of-Beginning and having Lambert plane coordinate values of  X = 2,224,895.07 feet and Y = 282,458.49 feet;

Thence, South 88°45'42" West along the south line of Section 66 a distance of 3,596.09 feet to the Flare Resources AMI boundary;

Thence, North 0°00'17" East along said AMI a distance of 2,169.23 feet;

Thence, West along said AMI a distance of 1,826.22 feet to the west line of Section 66;

Thence, continuing West along said AMI a distance of 2,668.74 feet;

Thence, North 3°01'39" West a distance of 3,067.69 feet to the north line of Section 67;

Thence, North 49°46'30" East a distance of 3,437.60 feet to the west line of Section 72, T18S-R18E;

Thence, North 1°14'14" West along the west line of Section 72 a distance of 989.44 feet;

Thence, North 88°42'36" East a distance of 1,327.73 feet;

Thence, North 1°17'48" East a distance of 2,508.13 feet to the SHM S RA SU unit;

Thence, along the southeast perimeter of said SHM S RA SU unit along the arc of a curve to the left having a delta angle of 10°28'58", a radius of 3,245.06 feet, an arc length of 593.71 feet, and a chord bearing and distance of North 45°01'31" East for 592.88 feet;

Thence, continuing along the perimeter of said unit along the arc of a curve to the left having a delta angle of 4°01'01", a radius of 3,565.75 feet, an arc length of 249.99 feet, and a chord bearing and distance of North 35°42'28" East for 249.94 feet to the intersection with the southerly perimeter of an existing voluntary unit;

Thence, along the southerly perimeter of said voluntary unit along the arc of a curve to the left having a delta angle of 21°33'28", a radius of 1,047.19 feet, an arc length of 394.01 feet, and a chord bearing and distance of South 65°38'21" East for 391.69 feet;

Thence, continuing along the perimeter of said voluntary unit along the arc of a curve to the left having a delta angle of 6°23'58", a radius of 2,909.84 feet, an arc length of 325.00 feet, and a chord bearing and distance of South 89°16'40" East for 324.83 feet;

Thence, continuing along the perimeter of said voluntary unit along the arc of a curve to the left having a delta angle of 36°22'27", a radius of 832.16 feet, an arc length of 528.30 feet, and a chord bearing and distance of North 65°26'52" East for 519.47 feet to the intersection with the north line of Section 72, T18S-R18E;

Thence, North 88°47'35" East along the north line of Section 72 a distance of 2,239.20 feet to the northeast corner of the section;

Thence, South 1°28'16" East along the east line of said Section 72 a distance of 984.67 feet to the intersection with the BB2 RA SUA unit;

Thence, along the northern and western perimeter of said BB2 unit the following courses:

**Return to top**

    South 79°36'35" West a distance of 249.52 feet;
    South 79°41'43" West a distance of 503.12 feet;
    South 81°14'05" West a distance of 65.78 feet;
    South 44°23'49" West a distance of 335.90 feet;
    South 42°06'31" West a distance of 350.47 feet;
    South 40°06'03" West a distance of 248.40 feet;
    South 33°59'36" West a distance of 277.36 feet;
    South 32°16'32" West a distance of 224.73 feet;
    South 27°33'10" West a distance of 259.43 feet;
    South 18°03'38" West a distance of 241.92 feet;
    South 11°38'01" West a distance of 173.57 feet;
    South a distance of 215.00 feet;
    South 5°34'20" East a distance of 205.98 feet;
    South 14°51'31" East a distance of 253.48 feet;
    South 26°33'54" East a distance of 234.79 feet;
    South 34°41'43" East a distance of 237.18 feet;
    South 41°18'31" East a distance of 219.66 feet;
    South 50°11'40" East a distance of 195.26 feet;
    South 54°19'25" East a distance of 240.06 feet;
    South 61°27'36" East a distance of 324.43 feet;
    South 66°08'23" East a distance of 284.30 feet;
    South 71°33'54" East a distance of 316.23 feet;
    South 76°33'05" East a distance of 236.49 feet;
    South 80°08'03" East a distance of 151.54 feet.

Thence, South 1°28'31" East along the east line of said Section 72 a distance of 1,454.39 feet to the southeast corner of said Section 72;

Thence, South 2°46'02" East along the east line of Section 66, T19S-R18E a distance of 5,352.75 feet to the point of beginning.

Said Tract containing a total of 1,349.758 acres, more or less, and is more particularly shown on that certain plat labeled Exhibit "B" attached hereto and made a part hereof.

The lease rights being conveyed herein are only insofar as from the surface down to and including one-hundred feet (100') below the stratographic equivalent of the base of the BB2 Sand defined as that certain sand seen on the electric log for the Placid-LaTerre #D-1 well, between the depths of 12,510 feet and 12,540 feet, located in Section 66, T18S-R18E, Terrebonne Parish, Louisiana.

All bearings, distances and coordinates recited herein are based upon the Louisiana State Plane Coordinate System, 1927 Datum, South Zone.

Return to top



## EXHIBIT "B"

Attached to and made a part of that certain Amendment to
Oil and Gas lease and Declaration of Lease dated 08/01/2004
between Apache Louisiana Minerals, Inc., as Lessor, and
Apache Corporation, as Lessee,
Terrebonne Parish, Louisiana.

| DRAWN BY: | J NAQUIN |
| DATE: | APRIL 23, 2007 |
| SHEET No.: | 1 OF 1 |
| APPROVED BY: | T ALLEN |
| CAD FILE No.: | 2007-017MIN.DWG |

## APACHE CORPORATION

POST OFFICE BOX 206
HOUMA, LOUISIANA 70361-0206
TEL (985) 879-3528    FAX (985) 876-5267

**Apache** CORPORATION

79

# EXHIBIT I

974039

503

## DECLARATION OF OIL AND GAS LEASE

KNOW ALL MEN BY THESE PRESENTS, That:

**APACHE LOUISIANA MINERALS, INC.,** a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessor, has granted a certain Oil and Gas Lease to **APACHE CORPORATION**, a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessee, by instrument dated as of even date herewith, by which said Lessor leased and let unto said Lessee, for a valuable consideration, and subject to the terms, conditions, and provisions of said lease, covering an undivided seventy-five percent (75%) interest in that certain property situated in the Parish of ~~Terrebonne~~ Lafourche, State of Louisiana, and described as follows, to wit:

## DESCRIPTION OF PROPERTY

Said property is described on Exhibit "A" attached hereto and made a part hereof and illustrated on Exhibit "B" also attached hereto and made a part hereof.

Said lease is for a primary term of eighteen (18) months, and as long thereafter as oil, gas or other hydrocarbons are produced from the leased premises in paying quantities and the leased premises are being developed in accordance with the provisions of said lease, or the lease is otherwise kept in force in some other manner therein provided.

Said lease restricts transfers or assignments, but gives Lessee the right to explore and drill for and produce oil, gas and other hydrocarbon, subject to the royalties and other payments therein provided for.

This declaration is to be placed of record to serve as notice of the execution and existence of said lease, and is in no way to supersede same or to abrogate, change, alter, or modify any of the terms or conditions or any of the rights or obligations of any of the parties, all of which are set forth in detail in said lease, which is made a part hereof by reference to the same effect as though written in extenso herein.

THUS DONE AND SIGNED the 30th day of December, 2004, but effective as of the 1st day of November, 2004.

LESSOR:

WITNESSES:                                APACHE CORPORATION, Agent for
                                          APACHE LOUISIANA MINERALS, INC.

Name: _Rod Eaton_                         By: _C. R. Harden_
                                              C. R. Harden
Name: _Wes W. Reeves_                         Attorney-in-Fact


                                          LESSEE:

WITNESSES:                                APACHE CORPORATION

Name: _Rod Eaton_                         By: _C. R. Harden_
                                              C. R. Harden
Name: _Wes W. Reeves_                         Attorney-in-Fact

Return to top

974039

504

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

On this ___ day of _December_, 2004, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent for APACHE LOUISIANA MINERALS, INC., Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

_____
Notary Public, State of Texas

My commission expires: _____

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

On this ___ day of _December_, 2004, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

_____
Notary Public State of Texas

My commission expires: _____

974039

*Return to top*

*L* 505

## EXHIBIT "A"

Attached to and made a part of that certain Declaration of Oil and Gas Lease dated effective
November 1, 2004, by and between Apache Louisiana Minerals, Inc., as Lessor,
and Apache Corporation, as Lessee

An undivided seventy-five percent (75%) interest in the following described property situated in the Golden Meadow Field, located in Sections 8 and 17, T20S-R21E, Lafourche Parish, Louisiana; said tract of land being more particularly described as follows:

Commencing at a point being the northeast corner of said Section 17, T20S-R21E, said point being the Point-of-Beginning and having Lambert plane coordinate values of X = 2,315,758.15 feet and Y = 250,570.70 feet;

Thence, South 0°06'24" West along the east line of said Section 17 a distance of 2331.71 feet to corner 1 of said tract;

Thence, South 88°35'10" West a distance of 5195.35 feet to corner 2 of said tract;

Thence, North 0°39'12" West a distance of 2331.06 feet to corner 3 of said tract;

Thence, North 88°35'10" East a distance of 3919.72 feet to corner 4 of said tract;

Thence, North 0°04'59" West a distance of 2317.78 feet to corner 5 of said tract;

Thence, North 88°35'10" East a distance of 1314.26 feet to corner 6 of said tract;

Thence, continuing South 00°06'24" West along the east line of Section 8 a distance of 2317.97 feet to the Point of Beginning;

Said tract containing a total of 348.54 acres, and is more particularly shown on that certain plat labeled Exhibit "B" attached hereto and made a part hereof, INSOFAR AND ONLY INSOFAR as to the lands described above, and INSOFAR AND ONLY INSOFAR as from the surface of the earth down to and including the stratigraphic equivalent of 15,750' (MD) drilled in the Laterre Co. Inc. #301 well (Serial # 229562).

All bearings, distances and coordinates recited herein are based upon the Louisiana State Plane Coordinate System, 1927 Datum, South Zone.

1

(Page 18 of 68)

**Return to top**

974039

5

506

4

3

Apache Louisiana Minerals, Inc.

8

N 88°35'10" E
1314.26'

9

10

P.O.B.
X=2,315,758.15'
Y=250,570.70'

N 88°35'10" E
3919.72'

348.54 ACRES

Lafourche Parish
School Board

16

T20S-R21E

17

5105.55'
S 88°35'10" W

15

GOLDEN MEADOW FIELD

20

21

22

LA COORD SYSTEM - NAD '27
South Zone

0   1000'   2000'      4000'      6000'      8000'
SCALE IN FEET

**EXHIBIT "B"**

Attached to and made part of that certain Declaration of Oil and Gas
Lease dated effective November 1, 2004 between
Apache Louisiana Minerals, Inc., as Lessor, and
Apache Corporation, as Lessee,
Golden Meadow Field, Lafourche Parish, LA.

FILED FOR RECORD
2005 JAN 11  PH 2: 35
CLERK OF COURT
PARISH OF
LAFOURCHE, LA

| DRAWN BY: | A GIOVANNI |
|---|---|
| DATE: | DECEMBER 13, 2004 |
| SHEET No.: | 1 OF 1 |
| APPROVED BY: | T ALLEN |
| CAD FILE No.: | 2004-104C1.DWG |

**APACHE CORPORATION**

POST OFFICE BOX 206
HOUMA, LOUISIANA 70361-0206
TEL (985) 879-3528    FAX (985) 876-5267

apache
CORPORATION

(Page 23 of 68)

Return to top



974039

APACHE CORPORATION
POST OFFICE BOX 206
HOUMA, LOUISIANA 70361-0206
TEL (985) 879-3528     FAX (985) 876-5267

EXHIBIT "B"

Attached to and made part of that certain Declaration of Oil and Gas
Lease dated effective November 1, 2004 between
Apache Louisiana Minerals, Inc.; as Lessor, and
Apache Corporation, as Lessee,
Golden Meadow Field, Lafourche Parish, LA.

| DRAWN BY: | A GIOVANNI |
| DATE: | DECEMBER 13, 2004 |
| SHEET No.: | 1 OF 1 |
| APPROVED BY: | T.ALLEN |
| CAD FILE No.: | 2004-104C1.DWG |

File Number:      974039  Seq: 1

# EXHIBIT J

CB 1593
P 507                    **Return to top**

974040

## DECLARATION OF OIL AND GAS LEASE

KNOW ALL MEN BY THESE PRESENTS, That:

**APACHE LOUISIANA MINERALS, INC.,** a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessor, has granted a certain Oil and Gas Lease to **APACHE CORPORATION,** a Delaware corporation, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessee, by instrument dated as of even date herewith, by which said Lessor leased and let unto said Lessee, for a valuable consideration, and subject to the terms, conditions, and provisions of said lease, covering an undivided seventy-five percent (75%) interest in that certain property situated in the Parish of Lafourche, State of Louisiana, and described as follows, to wit:

## DESCRIPTION OF PROPERTY

Said property is described on Exhibit "A" attached hereto and made a part hereof and illustrated on Exhibit "B" also attached hereto and made a part hereof.

Said lease is for a primary term of eighteen (18) months, and as long thereafter as oil, gas or other hydrocarbons are produced from the leased premises in paying quantities and the leased premises are being developed in accordance with the provisions of said lease, or the lease is otherwise kept in force in some other manner therein provided.

Said lease restricts transfers or assignments, but gives Lessee the right to explore and drill for and produce oil, gas and other hydrocarbon, subject to the royalties and other payments therein provided for.

This declaration is to be placed of record to serve as notice of the execution and existence of said lease, and is in no way to supersede same or to abrogate, change, alter, or modify any of the terms or conditions or any of the rights or obligations of any of the parties, all of which are set forth in detail in said lease, which is made a part hereof by reference to the same effect as though written in extenso herein.

THUS DONE AND SIGNED the 20th day of December, 2004, but effective as of the 1st day of November, 2004.

LESSOR:

WITNESSES:                          **APACHE CORPORATION, Agent for**
                                    **APACHE LOUISIANA MINERALS, INC.**

Name: Rod Eaton
                                    By: C. R. Harden
Name: Wes W. Reeves                     C. R. Harden
                                        Attorney-in-Fact

LESSEE:

WITNESSES:                          **APACHE CORPORATION**

Name: Rod Eaton
                                    By: C. R. Harden
Name: Wes W. Reeves                     C. R. Harden
                                        Attorney-in-Fact

**Return to top**

974040

508

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

    On this ___ day of _____, 2004, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent for APACHE LOUISIANA MINERALS, INC., Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.



EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

_____
Notary Public, State of Texas

My commission expires: _____


STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

    On this ___ day of _____, 2004, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

_____
Notary Public State of Texas

My commission expires: _____

974040                            509

## EXHIBIT "A"

Attached to and made a part of that certain Declaration of Oil and Gas Lease dated effective
November 1, 2004, by and between Apache Louisiana Minerals, Inc., as Lessor,
and Apache Corporation, as Lessee

An undivided seventy-five percent (75%) interest in the following described property situated
in the Golden Meadow Field, located in Sections 10 and 15, T20S-R21E, Lafourche Parish, Louisiana;
said tract of land being more particularly described as follows:

Commencing at a point being the northeast corner of said Section 15, T20S-R21E, said point
being the Point-of-Beginning and having Lambert plane coordinate values of X = 2,320,982.86 feet
and Y = 250,699.66 feet;

Thence, North 0°52'00" East along the west line of said Section 10 a distance of 2317.78 feet
to corner 1 of said tract;

Thence, North 88°35'10" East a distance of 1314.31 feet to corner 2 of said tract;

Thence, South 1°03'23" West a distance of 3499.59 feet to corner 3 of said tract;

Thence, South 88°35'10" West a distance of 1302.71 feet to corner 4 of said tract;

Thence, continuing North 00°52'00" East along the west line of Section 15 a distance of
1166.37 feet to the Point of Beginning;

Said tract containing a total of 105.03 acres, and is more particularly shown on that certain plat
labeled Exhibit "B" attached hereto and made a part hereof.

All bearings, distances and coordinates recited herein are based upon the Louisiana State Plane
Coordinate System, 1927 Datum, South Zone.

The above described tract of land subject to this Oil and Gas Lease is limited in depth INSOFAR AND
ONLY INSOFAR as from the surface of the earth down to and including the stratigraphic equivalent of
the base of the Textularia W Formation encountered at 16,700 feet MD as seen in the Induction
Electrical log for the Placid Oil Company Laterre Company Inc. Well #D-4 located in Section 65,
T19S, R18E.

1

Return to top

974040



EXHIBIT "B"

Attached to and made part of that certain Declaration of Oil and Gas
Lease dated effective November 1, 2004 between
Apache Louisiana Minerals, Inc., as Lessor, and
Apache Corporation, as Lessee,
Golden Meadow Field, Lafourche Parish, LA.

| DRAWN BY: | A GIOVANNI |
| DATE: | DECEMBER 14, 2004 |
| SHEET No.: | 1 OF 1 |
| APPROVED BY: | T ALLEN |
| CAD FILE No.: | 2004-1043-1.DWG |

**APACHE CORPORATION**
POST OFFICE BOX 206
HOUMA, LOUISIANA 70361-0206
TEL (985) 879-3528    FAX (985) 876-5267

Apache CORPORATION

**Return to top**



974040

510

5    4    3

Apache Louisiana Minerals, Inc.

8    9    10

N 88°35'10" E
1214.31'

165.03
ACRES

P.O.B.
X=2,320,982.66'
Y=250,699.66'

S 88°35'10" W

Lafourche Parish
School Board

17    16    15

T20S-R21E

GOLDEN MEADOW FIELD

20    21    22

LA COORD SYSTEM – NAD '27
South Zone

0   1000'   2000'   4000'   6000'   8000'
SCALE IN FEET

FILED FOR RECORD
2005 JAN 11  PM 2: 36
CLERK OF COURT
PARISH OF
LAFOURCHE, LA

EXHIBIT "B"

Attached to and made part of that certain Declaration of Oil and Gas
Lease dated effective November 1, 2004, between
Apache Louisiana Minerals, Inc., as Lessor, and
Apache Corporation, as Lessee,
Golden Meadow Field, Lafourche Parish, LA.

| DRAWN BY: | A GIOVANNI |
| DATE: | DECEMBER 14, 2004 |
| SHEET No.: | 1 OF 1 |
| APPROVED BY: | T ALLEN |
| CAD FILE No.: | 2004-104B1.DWG |

**APACHE CORPORATION**
POST OFFICE BOX 206
HOUMA, LOUISIANA 70361-0206
TEL (985) 879-3528    FAX (985) 876-5267

Apache
CORPORATION

# EXHIBIT K

## Lafourche Parish Recording Page

**Return to top**

**Vernon H. Rodrigue**
**CLERK OF COURT**
PO BOX 818
303 W 3rd St
Thibodaux, LA  70302
(985) 447-4841

**Received From :**
APACHE CORPORATION
ONE POST OAK BLVD
HOUSTON, TX  77056-4400

**First VENDOR**

| APACHE LOUISIANA MINERALS INC |
|---|

**First VENDEE**

| APACHE CORPORATION |
|---|

**Index Type :**   Conveyance

**Type of Document :** Amendment

**Recording Pages :**            3

**Inst Number :** 1024798

**Book :**  1690     **Page :** 732

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Lafourche Parish, Louisiana

On (Recorded Date) : 05/01/2007

At (Recorded Time) :  4:08:17:000 PM

Deputy Clerk

Doc ID - 026463970003

Do not Detach this Recording Page from Original Document

**Return to top**

<u>AMENDMENT TO OIL, GAS AND MINERAL LEASE</u>

STATE OF LOUISIANA              §

PARISH OF LAFOURCHE          §

**KNOW ALL MEN BY THESE PRESENTS:**

THIS AMENDMENT OF OIL, GAS AND MINERAL LEASE ("Amendment") entered into this 5th day of April, 2007, between APACHE LOUISIANA MINERALS, INC., whose mailing address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056 ("Lessor") and APACHE CORPORATION, whose mailing address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056 ("Lessee").

WHEREAS, by Oil, Gas and Mineral Lease dated September 24, 2004, and recorded in Book No. 1586, Folio 766, Entry No. 970356, Records of Lafourche Parish, Louisiana ("Lease"), Lessor leased to Lessee the land described in Exhibit "A" hereto, which is incorporated herein by reference; and

WHEREAS, Lessor and Lessee are desirous of amending the description of Lease.

NOW THEREFORE, for Ten ($10.00) Dollars and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee do hereby amend the Lease by adding thereto the following described lands:

<u>Township 18 South, Range 19 East, Lafourche Parish, Louisiana</u>

Section 63:   N1/2 SW1/4 SW1/4, S1/2 NW1/4 SW1/4, S1/2 N1/2 NW1/4 SW1/4, SW1/4 NW1/4 NE1/4 SW1/4, W1/2 SW1/4 NE1/4 SW1/4 & W1/2 NW1/4 SE1/4 SW1/4

For the same consideration recited above, Lessor does hereby CONFIRM, RATIFY and ADOPT the Lease, as herein amended, and does hereby GRANT, LEASE and LET unto Lessee, its successors and assigns, the lands described in the Lease, as herein amended, in accordance with the terms of the Lease, as herein amended.

Except for the description of the lands covered by the Lease as amended herein, all other terms and provisions of the Lease shall remain unchanged.

This agreement is binding upon the heir, successors, legal representatives and assigns of the undersigned.

IN WITNESS WHEREOF, this is executed by the parties hereto on _____ day of April, 2007, but is effective as of October 2, 2004.

WITNESSES:                                           LESSOR:

_____                           APACHE CORPORATION, Agent for
Print Name: _Eugene J. Linscomb_                    APACHE LOUISIANA MINERALS, INC.

_Kristin Daugherty_                                 _C. R. Harden_
Print Name: _Kristin Daugherty_                     C. R. Harden
                                                    Attorney-in-Fact

Amendment of Lease – APA L-9000681/A3
Bully Camp – LA5521

                          Page 1 of 2

**Return to top**

WITNESSES:

Print Name: _Eugene T. Linscomb_



Print Name: _Kristin Daugherty_

LESSEE:

APACHE CORPORATION

C. R. Harden
Attorney-in-Fact

STATE OF TEXAS          §
COUNTY OF HARRIS     §

On this 23ʳᵈ day of _April_, 2007, appeared C. R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time Appearer did, that Appearer is the Attorney-in-Fact for Apache Corporation, Agent of Apache Louisiana Minerals, Inc., a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.



HELEN K. MELE
Notary Public, State of Texas
Commission Expires 05-26-2010
Notary ID: 00271585-0

NOTARY PUBLIC

STATE OF TEXAS          §
COUNTY OF HARRIS     §

On this 23ʳᵈ day of _April_, 2007, appeared C. R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time Appearer did, that Appearer is the Attorney-in-Fact of Apache Corporation, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

NOTARY PUBLIC

HELEN K. MELE
Notary Public, State of Texas
Commission Expires 05-26-2010
Notary ID: 00271585-0

Amendment of Lease – APA L-9000681/A3
Bully Camp – LA5521

Page 2 of 2

Book:  1690   Page:  732   File Number:          1024798   Seq: 3

# EXHIBIT L

## Lafourche Parish Recording Page

Return to top

**Vernon H. Rodrigue**
**CLERK OF COURT**
PO BOX 818
303 W 3rd St
Thibodaux, LA  70302
(985) 447-4841

**Received From :**
APACHE CORPORATION
2000 POST OAK BLVD., STE. 100
HOUSTON, TX  77056-243

**First VENDOR**

APACHE LOUISIANA MINERALS LLC

**First VENDEE**

APACHE CORPORATION

| | |
|---|---|
| Index Type : Conveyance | Inst Number : 1085389 |
| Type of Document : Declaration | |
| | Book : 1806       Page : 148 |
| Recording Pages : 6 | |

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Lafourche Parish, Louisiana

On (Recorded Date) : 01/22/2010

At (Recorded Time) : 1:47:04:000 PM

Deputy Clerk

Doc ID - 028789800006

Do not Detach this Recording Page from Original Document

**Return to top**

## DECLARATION OF OIL AND GAS LEASE

KNOW ALL PERSONS BY THESE PRESENTS, That:

**APACHE LOUISIANA MINERALS LLC**, a Delaware limited liability company, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessor, has granted a certain Oil and Gas Lease to **APACHE CORPORATION**, whose address is 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056, as Lessee, by instrument dated as of even date herewith, by which said Lessor leased and let unto said Lessee, for a valuable consideration, and subject to the terms, conditions, and provisions of said lease, covering that certain property situated in the Parish of Lafourche, State of Louisiana, and described as follows, to wit:

### DESCRIPTION OF PROPERTY

Said property is described on Exhibit "A" attached hereto and made a part hereof

Said lease is for a primary term of ten (10) years, and as long thereafter as oil, gas or hydrocarbon is produced from the leased premises in paying quantities and the leased premises are being developed in accordance with the provisions of said lease, or the lease is otherwise kept in force in some other manner therein provided.

Said lease restricts transfers or assignments, but gives Lessee the right to explore and drill for and produce oil, gas and other hydrocarbon, subject to the royalties and other payments therein provided for.

This declaration is to be placed of record to serve as notice of the execution and existence of said lease, and is in no way to supersede same or to abrogate, change, alter, or modify any of the terms or conditions or any of the rights or obligations of any of the parties, all of which are set forth in detail in said lease, which is made a part hereof by reference to the same effect as though written in extensio herein.

THUS DONE AND SIGNED as of the 30th day of December, 2009.

LESSOR:

WITNESSES:

_Louise Dieres_
LOUISE DIERES
Printed Name

_Kelly Dicke_
Kelly Dickerman
Printed Name

**APACHE CORPORATION, Agent for
APACHE LOUISIANA MINERALS LLC**

By: _C. R. Harden_
C. R. Harden
Attorney in Fact

LESSEE:

WITNESSES:

_Louise Dieres_
LOUISE DIERES
Printed Name

_Kelly Dicke_
Kelly Dickerman
Printed Name

**APACHE CORPORATION**

By: _C. R. Harden_
C. R. Harden
Attorney in Fact

1

**Return to top**

STATE OF TEXAS       §
                     §
COUNTY OF HARRIS    §

On this 30th day of _December_, 2009, appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact for APACHE CORPORATION, agent for APACHE LOUISIANA MINERALS, INC., and that the instrument was signed on behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

_Edmunds B. Travis_
Notary Public in and for the State of Texas

My Commission Expires _1-5-2011_        NOTARY I.D. # 392168

STATE OF TEXAS       §
                     §
COUNTY OF HARRIS    §

On this 30th day of _December_, 2009, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney in Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

_Edmunds B. Travis_
Notary Public in and for the State of Texas

NOTARY I.D. # 392168

My Commission Expires _1-5-2011_

2

Exhibit A
Attached to and made apart of that certain Oil and Gas Lease dated December 30th, 2009 by
and between APACHE LOUISIANA MINERALS LLC, and APACHE CORPORATION

**Return to top**

### Township 20 South, Range 20 East, Lafourche Parish, LA

Section   1   NW1/4NE1/4 and E1/2E1/2
Section   12  NE1/4NE1/4
Section   13  E1/2E1/2, and NW1/4SE1/4 East of Bayou Pointe Aux Chene
Section   24  E1/2NE1/4, SW1/4NE1/4, and S1/2 East of Bayou Pointe Aux Chene
Section   25  E1/2E1/2 East of Bayou Pointe Aux Chene (Title Acquired by LaTerre Co. Inc. by quitclaim from
              South Louisiana Land Company, Limited, dated June 2, 1972 and recorded in COB 471 at page
              202.
Section   36  E1/2E1/2

### Township 20 South, Range 21 East, Lafourche Parish, LA

Section   1   All
Section   2   All
Section   3   All
Section   4   All
Section   5   All
Section   6   All
Section   7   All
Section   8   All
Section   9   All
Section   10  All
Section   11  All
Section   12  All
Section   13  All
Section   14  All
Section   15  All
Section   17  All
Section   18  All
Section   19  All
Section   20  All
Section   21  All
Section   22  All
Section   23  All
Section   24  All
Section   25  All
Section   26  All
Section   27  All
Section   28  All
Section   29  All
Section   30  All
Section   31  All
Section   32  All
Section   33  All
Section   34  All
Section   35  All
Section   36  All

Exhibit A
Attached to and made apart of that certain Oil and Gas Lease dated December 30th, 2009 by
and between APACHE LOUISIANA MINERALS LLC, and APACHE CORPORATION

Return to top

## Township 21 South, Range 21 East and/or Township 21 South, Range 21 East, Lafourche Parish, LA

Tract of land situated in Township 20 South, Range 21 East, and/or Township 21 South, Range 21 East, Lafourche Parish, Louisiana proceeding from the Compromise Agreement between La-Terre Co., Inc. and The Louisiana Land and Exploration Co., recorded September 11, 1965 in COB 342 at Page 264 under entry No. 250583, Lafourche Parish, Louisiana and more particularly described as Follows:

Begining at a point having Lambert Grid Coordinate values of X= 231,693.62 and Y=227,021.31, said point bearing South 54 degrees 19 minutes 30 second West a distance of 6,040.34 feet from U.S.C.&G.S. Triangulation Station "Rack, 1934"; thence Norh 1 degree 11 minutes 08 seconds West a distance of 5,505.56 feet to a point ; thence North 88 degrees 38 Minutes 34 Seconds East a distance of 25,094.69 feet to a point; thence South 3 degrees 08 Minutes 53 Seconds West a distance of 637.32 feet to a point; thence South 2 Degrees 14 Minutes 08 Seconds East a distance of 3,964.00 feet to a point; thence South 86 degrees 34 minutes 33 seconds West a distance of 25,138.25 feet to the point of begining, containing 2,909.37 acres more or less.

## Township 20 South, Range 22 East, Lafourche Parish, LA

| Section | 6 | W1/2, and W1/2E1/2 less and except those portions conveyed to Alex J. Plaisance, et al, by deed dated April 13, 1959, and recorded in COB 251 at Page 652, and less and except from all the lands in said section otherwise included those two certain tracts or parcels of land conveyed to the State of Louisiana and the Department of Highways of the State of Louisiana by that certain Sale recorded under Entry No. 424785, but including the minerals Underlying said tracts, which were reserved in said sale. |
|---|---|---|
| Section | 7 | All |
| Section | 8 | W1/2SW1/4, less and except those portions awarded Harvey Peltier, et al, by Compromise Agreement dated May 20, 1941 and recorded in COB 101 at Page 23 |
| Section | 17 | W1/2SE1/4, and W1/2, less and except those portions awarded Harvey Peltier, et al, by Compromise Agreement dated May 20, 1941 and recorded in COB 101 at Page 23 |
| Section | 18 | All |
| Section | 19 | All |
| Section | 20 | All |
| Section | 28 | W1/2 W1/2 |
| Section | 29 | All |
| Section | 30 | All |
| Section | 31 | All |
| Section | 32 | All |
| Section | 33 | W1/2 |

## Township 20 South, Range 21 East and/or Township 21 South, Range 21 East, Lafourche Parish, LA

Tract of land situated in Township 20 South, Range 21 East, and/or Township 21 South, Range 21 East, Lafourche Parish, Louisiana proceeding from the compromise Agreement between La-Terre Co., Inc. and The Louisiana Land and Exploration Co., recorded September 11, 1965 in COB 342 at Page 264 under Entry No. 250583, Lafourche Parish, Louisiana, and more particularly described as follows:

Beginning at a point having Lambert Grid Coordinate values of X=2,305,611,.45 and Y=2,227,720.21, said point bearing South 68 degrees 57 minutes 26 seconds West a distance of 10,649.13 feet from U.S.C. &G.S. Triangulation Station "Rack, 1934"; thence North 1 degree 11 minutes 08 seconds West a distance of 5,505.56 feet to a point; thence North 1 degrees 0 minutes 0 seconds West a distance of 5,687.46 feet to a point; thenceNorth 88 degrees 38 minutes 34 seconds East a distance of 5,018.94 feet to a point; thence South 1 degrees 11 minutes 08 seconds East a distance of 5,505.56 feet to a point; thence South 86 degrees 34 minutes 33 seconds West a distance of 5,041.17 feet to the point of beginning, containing 645.98 acres more or less.

All bearings and all coordinates set forth herein are based on State Plane Lambert Grid, Louisiana (South Zone)

Exhibit A

Attached to and made apart of that certain Oil and Gas Lease dated December 30th, 2009 by
and between APACHE LOUISIANA MINERALS LLC, and APACHE CORPORATION

**Return to top**

**AND LESS AND EXCEPT ANY LANDS CURRENTLY BEING HELD BY THE FOLLOWING OIL AND GAS LEASES:**

(1) Lease dated June 3, 1935 by and between Laterre Company Inc., as Lessor, and George B. Conover,
as Lessee, recorded in Conveyance Book 73, Page 435, Entry 29061, Lafourche Parish, Louisiana.
(122506 & 9000674/A1)

(2) Lease dated March 4, 1937 by and between Laterre Company, Inc., as Lessor, and The Texas
Company, as Lessee, recorded in Conveyance Book 80, Page 227, Entry 34538 Lafourche Parish,
Louisiana. (9000674/A2)

(3) Lease dated November 1, 2004 by and between Apache Louisiana Minerals, Inc., as Lessor, and
Castex Energy 1995, LP, as Lessee, recorded in Conveyance Book 1593, Page 14, Entry 973823,
Lafourche Parish, Louisiana. (9000674/A5)

(4) Lease dated November 1, 2004 by and between Apache Louisiana Minerals, Inc., as Lessor, and
Apache Corporation, as Lessee, recorded in Conveyance Book 1593, Entry 974039, Lafourche
Parish, Louisiana. (9000674/A6)

(5) Lease dated May 6, 1968 by and between Laterre Company, Inc., as Lessor, and Roy M. Huffington,
Inc., as Lessee, recorded in Conveyance Book 387, Page 140, Entry 294371, Lafourche Parish,
Louisiana. (9000681/A1)

(6) Area of Mutual Interest as defined in that certain Letter Agreement dated, May 12, 2008 and
amended on March 23, 2009 by and between Apache Corporation, Castex Energy, Inc. and Energy
XXI Gulf Coast, Inc.

# EXHIBIT M

## Lafourche Parish Recording Page

Return to top

**Vernon H. Rodrigue**
**CLERK OF COURT**
PO BOX 818
303 W 3rd St
Thibodaux, LA  70302
(985) 447-4841

**Received From :**
APACHE CORPORATION
ONE POST OAK CENTRAL
2000 POST OAK BLVD
HOUSTON, TX  77056

**First VENDOR**

APACHE LOUISIANA MINERALS LLC

**First VENDEE**

APACHE CORPORATION

| | |
|---|---|
| **Index Type :**   Conveyance | **Inst Number :** 1095203 |
| **Type of Document :** Declaration Lease | |
| | **Book :**  1823      **Page :** 536 |
| **Recording Pages :**          4 | |

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Lafourche Parish, Louisiana

On (Recorded Date) : 07/16/2010

At (Recorded Time) :  1:46:12:000 PM

*Brandy M Daigle*
Deputy Clerk



Doc ID - 029147510004

Do not Detach this Recording Page from Original Document

**Return to top**

## DECLARATION OF OIL AND GAS LEASE

KNOW ALL PERSONS BY THESE PRESENTS, That:

**APACHE LOUISIANA MINERALS LLC**, a Delaware limited liability company, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessor, has granted a certain Oil and Gas Lease to **APACHE CORPORATION**, whose address is 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056, as Lessee, by instrument dated as of even date herewith, by which said Lessor leased and let unto said Lessee, for a valuable consideration, and subject to the terms, conditions, and provisions of said lease, covering that certain property situated in the Parish of Lafourche, State of Louisiana, and described as follows, to wit:

### DESCRIPTION OF PROPERTY

Said property is described on Exhibit "A" attached hereto and made a part hereof

Said lease is for a primary term of nine (9) years and six (6) months, and as long thereafter as oil, gas or hydrocarbon is produced from the leased premises in paying quantities and the leased premises are being developed in accordance with the provisions of said lease, or the lease is otherwise kept in force in some other manner therein provided.

Said lease restricts transfers or assignments, but gives Lessee the right to explore and drill for and produce oil, gas and other hydrocarbon, subject to the royalties and other payments therein provided for.

This declaration is to be placed of record to serve as notice of the execution and existence of said lease, and is in no way to supersede same or to abrogate, change, alter, or modify any of the terms or conditions or any of the rights or obligations of any of the parties, all of which are set forth in detail in said lease, which is made a part hereof by reference to the same effect as though written in extenso herein.

THUS DONE AND SIGNED as of the 30th day of June, 2010.

LESSOR:

WITNESSES:

APACHE CORPORATION, Agent for
APACHE LOUISIANA MINERALS LLC

_Kevin Cochren_
Printed Name

By: _C. R. Harden_
C. R. Harden
Attorney in Fact

_Kelly Dickerman_
Printed Name

LESSEE:

WITNESSES:

APACHE CORPORATION

_Kevin Cochren_
Printed Name

By: _C. R. Harden_
Name: _C. R. Harden_
Title: _Attorney in Fact_

_Kelly Dick_
Printed Name

1

**Return to top**

STATE OF TEXAS          §
                       §
COUNTY OF HARRIS        §

On this 13th day of July, 2010, appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact for APACHE CORPORATION, agent for APACHE LOUISIANA MINERALS, INC., and that the instrument was signed on behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

                                        _Helen K Mele_____
                                        Notary Public

**Helen K. Mele**
Notary Public, State of Texas
Commission Expires 05/26/2014
Notary ID: 00271585-0

STATE OF _TEXAS_          §
                         §
COUNTY OF _HARRIS_        §

On this _13th_ day of June, 2010, before me, a Notary Public, personally appeared _C.R. HARDEN_____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time _she_ did, that _she_ is the _ATTORNEY IN FACT_ of _APACHE CORPORATION_ and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

                                        _Helen K Mele_____
**Helen K. Mele**                        Notary Public
Notary Public, State of Texas
Commission Expires 05/26/2014
Notary ID: 00271585-0

Return to top

Exhibit A

Attached to and made apart of that certain Oil and Gas Lease dated June 30th, 2010 by and between APACHE
LOUISIANA MINERALS LLC, and APACHE CORPORATION

**Township 18 South, Range 19 East, Lafourche Parish, LA**

Section  59  SE1/4NE1/4
Section  60  N1/2
Section  61  N1/2
Section  62  All
Section  63  All
Section  66  Fractional N1/2
Section  67  All
Section  68  All

**Township 18 South, Range 20 East, Lafourche Parish, LA**

Section  7  S1/2
Section  8  S1/2
Section  9  S1/2
Section  10  S1/2
Section  11  S1/2 West of Grand Bayou Canal & S1/2 East of Grant Bayou Canal
Section  12  S1/2
Section  13  All
Section  14  All, West of Grand Bayou Canal & All, East of Grand Bayou Canal
Section  15  All, West of Grand Bayou Canal & All, East of Grand Bayou Canal
Section  17  All
Section  18  All
Section  19  N1/2
Section  20  N1/2
Section  21  N1/2
Section  22  N1/2 West of Grand Bayou Canal & N1/2 East of Grand Bayou Canal
Section  23  N1/2
Section  24  N1/2

**Township 18 South, Range 21 East, Lafourche Parish, LA**

Section  48  SW1/4NE1/4, S1/2NW1/4, S1/2
Section  53  All
Section  54  All
Section  55  N1/2
Section  56  N1/2
Section  66  Fraction S1/2

**AND LESS AND EXCEPT ANY LANDS CURRENTLY BEING HELD BY THE FOLLOWING OIL AND GAS LEASES:**

Lease dated May 6, 1968 by and between Laterre Company, Inc., as Lessor, and Roy M. Huffington,
Inc., as Lessee, recorded in Conveyance Book 387, Page 140, Entry 294371, Lafourche Parish,
Louisiana. (9000681/A1)

# EXHIBIT N

## Plaquemines Parish Recording Page

**Dorothy M Lundin**
**Clerk of Court**
PO Box 40
Belle Chasse, LA 70037
(504) 297-5180

Return to top

Received From : *Attn: Kelly Dickerman*
APACHE CORP.
ATTN:
2000 POST OAK BLVD, ONE POST OAK CENTRAL
HOUSTON, TX 77056-4400

**First VENDOR**

| APACHE LOUISIANA MINERALS LLC |
|---|

**First VENDEE**

| APACHE CORP |
|---|

Index Type : Conveyance

Type of Document : Declaration

Recording Pages :           8

File Number : 2010-00000316

Book : 1218          Page : 840

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Plaquemines Parish, Louisiana

On (Recorded Date) : 01/22/2010

At (Recorded Time) : 1:00:07PM

*Victoria L Emerson*
Deputy Clerk



Doc ID - 002659900008

Return To :

Do not Detach this Recording Page from Original Document

**Return to top**

## DECLARATION OF OIL AND GAS LEASE

KNOW ALL PERSONS BY THESE PRESENTS, That:

**APACHE LOUISIANA MINERALS LLC**, a Delaware limited liability company, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, as Lessor, has granted a certain Oil and Gas Lease to **APACHE CORPORATION**, whose address is 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056, as Lessee, by instrument dated as of even date herewith, by which said Lessor leased and let unto said Lessee, for a valuable consideration, and subject to the terms, conditions, and provisions of said lease, covering that certain property situated in the Parish of Plaquemines, State of Louisiana, and described as follows, to wit:

## DESCRIPTION OF PROPERTY

Said property is described on Exhibit "A" attached hereto and made a part hereof

Said lease is for a primary term of ten (10) years, and as long thereafter as oil, gas or hydrocarbon is produced from the leased premises in paying quantities and the leased premises are being developed in accordance with the provisions of said lease, or the lease is otherwise kept in force in some other manner therein provided.

Said lease restricts transfers or assignments, but gives Lessee the right to explore and drill for and produce oil, gas and other hydrocarbon, subject to the royalties and other payments therein provided for.

This declaration is to be placed of record to serve as notice of the execution and existence of said lease, and is in no way to supersede same or to abrogate, change, alter, or modify any of the terms or conditions or any of the rights or obligations of any of the parties, all of which are set forth in detail in said lease, which is made a part hereof by reference to the same effect as though written in extensio herein.

THUS DONE AND SIGNED as of the _30th_ day of _December_, 2009.

WITNESSES:

_Louise Dieres_
LOUISE DIERES
Printed Name

_Kelly Dicker_
Kelly Dickerman
Printed Name


LESSOR:

**APACHE CORPORATION, Agent for**
**APACHE LOUISIANA MINERALS LLC**

By: _C. R. Harden_
C. R. Harden
Attorney in Fact


WITNESSES:

_Louise Dieres_
LOUISE DIERES
Printed Name

_Kelly Dicker_
Kelly Dickerman
Printed Name


LESSEE:

**APACHE CORPORATION**

By: _C. R. Harden_
C. R. Harden
Attorney in Fact


1

Exhibit A
Attached to and made apart of that certain Oil and Gas Lease dated December 30th, 2009 by
and between APACHE LOUISIANA MINERALS LLC, and APACHE CORPORATION

**Return to top**

## Township 15 South & 16 South, Range 14 East,  Plaquemines Parish, LA

All of that certain area situated in Townships 15 and 16 South, Range 14 East, Southeastern
Louisiana Land District East of the Mississippi River and in the Parish of Plaquemines, State of
Louisiana, containing approximately 5,760 acres, more or less, and boundaries to wit:

Beginning at a point 8,910 feet south of that certain well drilled by the Texas Company and
designated as The Texas Company's State-Delacroix No. 2, the latitude of which is 29 degrees 41
minutes 29.85 seconds, and longitude 89 degrees 46 minutes 30.27 seconds (North American Datum
of 1927); Thence from said beginning point run East 6,270 feet to a corner; Thence South 15,840
feet to a corner; Thence East 9,570 feet to place of beginning.

## Township 17 South, Range 20 East, Plaquemines Parish, LA

Tract 1: A certain portion of ground or plantation, known as Heloise Plantation, Situated in the
Parish of Lafourche, Louisiana, This state on the left decending bank of Bayou Lafourche, about 128
miles below the town of Thibodaux, measuring Ten arpents, more or less, front on said Bayou
Lafourche, by a depth of forty arpents, more or less, and bounded above by Celina Plantation, and
below by the property of the estate of Gustave Abribat, now or formerly.
Tract 2: A certain tract of land, situated in the parish of Lafourche, State of Louisiana, on the left
descending bank of Bayou Lafourche, at about 28 miles below the town of Thibodaux, measuring 18
arpents front along Bayou Lafourche, by a depth of forty arpents; together with all the buildings and
improvements thereon; bounded above by the land belonging to J.B. Robichaux, and below by the
land belonging to Willie St. Pierre, now or formerly, the whole known as the Celina Plantation

## Township 18 South, Range 25 East, Plaquemines Parish, LA

Section  13  All, fractional
Section  14  All, fractional
Section  15  All, fractional
Section  17  All, fractional
Section  18  All, fractional
Section  19  All, fractional
Section  20  All, fractional
Section  21  All, fractional
Section  22  All, fractional
Section  23  All, fractional
Section  24  All, fractional
Section  25  All, fractional
Section  26  All, fractional
Section  27  All, fractional
Section  28  All, fractional
Section  29  All, fractional
Section  30  All, fractional
Section  31  All, fractional
Section  32  All, fractional
Section  33  All, fractional
Section  34  All, fractional
Section  35  All, fractional
Section  36  All, fractional

Exhibit A
Attached to and made apart of that certain Oil and Gas Lease dated December 30th, 2009 by
and between APACHE LOUISIANA MINERALS LLC, and APACHE CORPORATION

**Return to top**

**Township 19 South, Range 26 East, Plaquemines Parish, LA**

Section  1  All, fractional
Section  2  All, fractional
Section  3  All, fractional
Section  4  All, fractional
Section  5  All, fractional
Section  6  All, fractional
Section  7  All, fractional
Section  8  All, fractional
Section  9  All, fractional
Section  10  All, fractional
Section  11  All, fractional
Section  12  All, fractional
Section  13  All, fractional
Section  14  All, fractional
Section  15  All, fractional
Section  17  All, fractional
Section  18  All, fractional
Section  19  All, fractional
Section  20  All, fractional
Section  21  All, fractional
Section  22  All, fractional
Section  23  All, fractional
Section  24  All, fractional
Section  25  All, fractional
Section  26  All, fractional
Section  27  All, fractional
Section  28  All, fractional
Section  29  All, fractional
Section  30  All, fractional
Section  31  All, fractional
Section  32  All, fractional
Section  33  All, fractional
Section  34  All, fractional
Section  35  All, fractional
Section  36  All, fractional

Exhibit A
Attached to and made apart of that certain Oil and Gas Lease dated December 30th, 2009 by
and between APACHE LOUISIANA MINERALS LLC, and APACHE CORPORATION

**Return to top**

**Township 20 South, Range 26 East, Plaquemines Parish, LA**

Section    2   All, fractional
Section    3   All, fractional
Section    4   All, fractional
Section    5   All, fractional
Section    6   All, fractional
Section    7   All, fractional
Section    8   All, fractional
Section    9   All, fractional
Section   10   All, fractional
Section   11   All, fractional
Section   12   All, fractional
Section   13   All, fractional
Section   14   All, fractional
Section   15   All, fractional
Section   17   All, fractional
Section   18   All, fractional
Section   19   All, fractional
Section   20   All, fractional
Section   21   All, fractional
Section   22   All, fractional
Section   23   All, fractional
Section   24   All, fractional
Section   25   All, fractional
Section   26   All, fractional
Section   27   All, fractional
Section   28   All, fractional
Section   29   All, fractional
Section   30   All, fractional
Section   31   All, fractional
Section   32   All, fractional
Section   33   All, fractional
Section   34   All, fractional
Section   35   All, fractional
Section   36   All, fractional

Exhibit A
Attached to and made apart of that certain Oil and Gas Lease dated December 30th, 2009 by
and between APACHE LOUISIANA MINERALS LLC, and APACHE CORPORATION

**Return to top**

**Township 20 South, Range 27 East, Plaquemines Parish, LA**

Section   1   All, fractional
Section   2   All, fractional
Section   3   All, fractional
Section   4   All, fractional
Section   5   All, fractional
Section   6   All, fractional
Section   7   All, fractional
Section   8   All, fractional
Section   9   All, fractional
Section  10   All, fractional
Section  11   All, fractional
Section  12   All, fractional
Section  13   All, fractional
Section  14   All, fractional
Section  15   All, fractional
Section  17   All, fractional
Section  18   All, fractional
Section  19   All, fractional
Section  20   All, fractional
Section  21   All, fractional
Section  22   All, fractional
Section  23   All, fractional
Section  24   All, fractional
Section  25   All, fractional
Section  26   All, fractional
Section  27   All, fractional
Section  28   All, fractional
Section  29   All, fractional
Section  30   All, fractional
Section  31   All, fractional
Section  32   All, fractional
Section  33   All, fractional
Section  34   All, fractional
Section  35   All, fractional
Section  36   All, fractional

Exhibit A

Attached to and made apart of that certain Oil and Gas Lease dated December 30th, 2009 by
and between APACHE LOUISIANA MINERALS LLC, and APACHE CORPORATION

**Return to top**

**AND FURTHER LESS AND EXCEPT FROM ALL OF THE ABOVE DESCRIBED LANDS THE FOLLOWING
DESCRIBED LANDS:**

( 1 ) All that portion of the above-described lands that comprise the beds and bottoms of
navigable water bodies and / or seashore, and / or all that portion of the above-described
lands that have been acquired by the State of Louisiana through coastal erosion.

( 2 ) 10,000 acres lying partly in Township 20 South, Range 26 East and partly in Township 20
South, Range 27 East, (hereinafter referred to as "The Grand Ecaille Land Company Tract")
which were selected out of the above by Gulf Oil Corporation by instrument dated July 1,
1929, described as follows:

On the West side by line running North and South and located 2 miles West of United
States coast in Geodetic Survey Triangulation Station "WASH"; on the East side by line
running North and South and located 2 1/2 miles East of United States coast in Geodetic
Survey Triangulation Station "WASH"; on the South by line forming part of the northern
boundary line of Townships 21 South, Range 26 East and 21 South, Range 27 East; on the
North by line drawn parallel to said southern boundary line and at such distance therefrom
as to include within the four sides of the rectangle thus formed a total area of 10,000

( 3 ) That certain tract or parcel of land located in Section 17, 20, 29 and 32 of Township 18
South, Range 25 East; Plaquemines Parish, Louisiana, conveyed by Vermillion Bay Land
Company to Recreational Planners, Inc. by quit claim deed dated December 28, 1970
recorded January 5, 1971 in C.O.B. 260, Folio 132 of the records of Plaquemines Parish,
Louisiana;

( 4 ) That certain tract or parcel of land conveyed by Vermillion Bay Land Company to Tereza
Yurichvic and Tony J. Tesvich by quit claim deed dated December 17, 1981 recorded April
27, 1982 in C.O.B. 542, Folio 667 of the records of Plaquemines Parish, Louisiana;

( 5 ) That certain tract or parcel of land conveyed by Vermillion Bay Land Company to Maria T.
Tesvich, et al. by quit claim deed dated December 17, 1981 recorded April 27, 1982 in
C.O.B. 542, Folio 672 of the records of Plaquemines Parish, Louisiana;

**AND LESS AND EXCEPT ANY LANDS CURRENTLY BEING HELD BY THE FOLLOWING OIL AND GAS LEASES:**

(1) Lease dated June 1, 2008 by and between Apache Louisiana Minerals, Inc., as Lessor, and Hilcorp
Energy I, LP, as Lessee, recorded in Conveyance Book 1191, Page 146, Plaquemines Parish,
Louisiana. (9000505/K1)

(2) Lease dated November 28, 2007 by and between Apache Louisiana Minerals, Inc., as Lessor, and
Century Exploration New Orleans, Inc., as Lessee, recorded in Conveyance Book 1167, Page 758,
Plaquemines Parish, Louisiana. (9000505/L1)

(3) Lease dated April 30, 2009 by and between Apache Louisiana Minerals, LLC., as Lessor, and Clayton
Williams Energy Inc., as Lessee, recorded in Conveyance Book 1204, Page 738, Plaquemines Parish,
Louisiana. (9000505/M1)

(4) Lease dated January 11, 2005 by and between Apache Louisiana Minerals, Inc., as Lessor, and The
Meridian Resource & Exploration LLC, as Lessee, recorded in Conveyance Book 1087, Page 271,
Plaquemines Parish, Louisiana. (9001277/E1)

(5) Lease dated August 6, 2008 by and between Apache Louisiana Minerals, Inc., as Lessor, and
Ample/Reveille J.V., LLC, as Lessee, recorded in Conveyance Book 1193, Page 896, Plaquemines
Parish, Louisiana. (9001277/F1)

STATE OF TEXAS                    §
                                 §
COUNTY OF HARRIS                 §

On this 30th day of December, 2009, appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact for APACHE CORPORATION, agent for APACHE LOUISIANA MINERALS, INC., and that the instrument was signed on behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

_____
Notary Public in and for the State of Texas

NOTARY I.D. # 392168

My Commission Expires  1-5-2011


STATE OF TEXAS                    §
                                 §
COUNTY OF HARRIS                 §

On this 30th day of December, 2009, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney in Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

_____
Notary Public in and for the State of Texas

NOTARY I.D. # 392168

My Commission Expires  1-5-2011

2

**Return to top**

# EXHIBIT O

## Plaquemines Parish Recording Page

**Return to top**

**Dorothy M Lundin**
**Clerk of Court**
PO Box 40
Belle Chasse, LA  70037
(504) 297-5180

**Received From :**
APACHE CORP.
ATTN:
2000 POST OAK BLVD, ONE POST OAK CENTRAL
HOUSTON, TX  77056-4400

**First VENDOR**
APACHE LOUISIANA MINERALS LLC

**First VENDEE**
APACHE CORP

**Index Type :**   Conveyance                     **File Number :** 2010-00000477

**Type of Document :** Amendment

                                                 **Book :** 1219       **Page :** 509

**Recording Pages :**         4

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Plaquemines Parish, Louisiana

On (Recorded Date) : 02/03/2010

At (Recorded Time) : 3:56:10PM

*Carol a Robst*
Deputy Clerk

Doc ID - 002661980004

**Return To :**

Do not Detach this Recording Page from Original Document

**Return to top**

<u>AMENDMENT TO OIL AND GAS LEASE</u>

THIS AGREEMENT entered into as of the 26th day of January, 2010 between:

APACHE LOUISIANA MINERALS LLC, duly authorized to do and doing business in Louisiana whose address is 2000 Post Oak Drive, Suite 100, Houston, Texas 77056 (hereinafter called "Lessor"), and APACHE CORPORATION duly authorized to do and doing business in Louisiana whose address is 2000 Post Oak Drive, Suite 100, Houston, Texas 77056 (hereinafter called "Lessee"):

<u>WITNESSETH:</u>

1.     By Oil and Gas Lease agreement dated the 30th day of December, 2009, (hereinafter called the "Lease"), Lessor did lease and let unto Lessee one hundred percent (100%) of eight-eighths (8/8) interest, subject to the provisions of said Lease in that certain property situated in Parish of Plaquemines, State of Louisiana, as described in said Lease; Lessor has placed of record in the appropriate public records of Plaquemines Parish, Louisiana in Conveyance Book No. 1218 , Page 840 under Entry No. 2010-316 a Declaration of Oil and Gas Lease to put the public on notice of the Lease.

2.     Lessor and Lessee hereby desire to amend same insofar and only insofar as concerns Paragraph 7. Subparagraph (I) of said Lease, and said Paragraph 7. Subparagraph (I) is hereby amended such that the entirety of Paragraph 7. Subparagraph (I) as previously written is hereby deleted and the following is substituted and adopted in lieu thereof:

       (I)     In the event Lessor should own less than the entirety of the oil, gas or other hydrocarbons under any portion of the leased premises, then the foregoing royalties due Lessor on production from said portion of the leased premises shall be reduced to the proportion thereof that Lessor's interest in such oil, gas or other hydrocarbons, in said portion bears to the entirety of the oil, gas or other hydrocarbons thereunder; provided, however, that on production from or attributable to any portion of the premises covered or purported to be covered by this lease, now or formerly constituting the beds or bottoms of navigable bodies of water (herein called "Navigable Waterbottoms"), if any, the royalties due under this lease shall never be less than four percent (4%) of all oil, gas and other hydrocarbons produced and saved from said Navigable Waterbottoms (herein called "Minimum Royalties"), such Minimum Royalties to be determined, computed and paid or delivered to Lessor in the same manner and in accordance with the same terms and provisions as the basic royalties stipulated in this lease; all, however, subject to the following terms and provision, to-wit:

3.     The parties hereto as parties Lessor and Lessee in the Lease as referenced above do hereby mutually agree and covenant that said Lease is amended insofar and only insofar as it pertains to the acreage described below:

<u>Township 18 South – Range 25 East</u>

Sections 30 and 31: Beginning at a point X=2,432,839 and Y=303,750 thence to a point X=2,437,400 Y=303,750 thence to a point X=2,437,400 Y=296,880 thence to a point X=2,432,839 Y=296,880 thence to the point of beginning.

Plaquemines Parish, Louisiana

4.     The modification to the Oil and Gas Lease contained herein shall remain in full force and effect until expiration of any sublease granted by Lessee to Houston Energy, L.P. pursuant to the terms and conditions of that certain Letter Agreement by and between Apache Corporation and Houston Energy, L.P. dated January 6, 2010.

1

**Return to top**

5.     The parties hereto as parties Lessor and Lessee in the Lease as referenced above do hereby mutually agree and covenant that said Lease is amended insofar and only insofar as recited above and do otherwise hereby confirm, adopt, and ratify said Lease in all respects and as to each and all of the provisions contained therein and Lessor, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby let and lease unto Lessee one hundred percent (100%) of eight-eighths (8/8) interest in and to all of the lands described in said Lease upon the same terms and subject to the same provisions of said Lease, as hereby amended, and in the same proportions therein stated.

IN TESTIMONY WHEREOF, this instrument is executed in multiple originals as of the day and date first above written.

LESSOR:

WITNESSES:                    APACHE LOUISIANA MINERALS LLC

_Louise Gieriseh_             By: _C. R. Harden_ _____
_Louise Gieriseh_                  C. R. Harden
Printed Name                       Attorney in Fact

_Kelly Ken Dick_
_KELLY DICKERMAN_
Printed Name

LESSEE:

WITNESSES:                    APACHE CORPORATION

_Louise Gieriseh_             By: _C. R. Harden_ _____
_Louise Gieriseh_                  C. R. Harden
Printed Name                       Attorney in Fact

_Kelly Ken Dick_
_KELLY DICKERMAN_
Printed Name

2

**Return to top**

ACKNOWLEDGEMENTS

STATE OF TEXAS           §
                        §
COUNTY OF HARRIS              §

On this 25ᵗʰ day of January, 2010, appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is Attorney in Fact of APACHE LOUISIANA MINERALS LLC and that the instrument was signed in behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

My Commission E                                    Notary Public, State of Texas

EDMUNDS B. TRAVIS
Notary Public, State of Texas
My Commission Expires
January 05, 2011

NOTARY I.D. # 392168

STATE OF TEXAS           §
COUNTY OF HARRIS         §

On this 25ᵗʰ day of January, 2010, appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is Attorney in Fact of APACHE CORPORATION and that the instrument was signed on behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

Notary Public, State of Texas

My Commission Expires

EDMUNDS B. TRAVIS
Notary Public, State of Texas
My Commission Expires
January 05, 2011

NOTARY I.D. # 392168

3

# EXHIBIT P

**1140222**

<u>CONVEYANCE</u>

**Return to top**

This Conveyance is dated and made effective as of February 1, 2003, at 7:00 a.m., Central Time (**"Effective Time"**), and is executed by **Apache North America, Inc.**, a Delaware corporation, whose mailing address is 2000 Post Oak Boulevard, Suite 1060, Houston, Texas 77056 (hereinafter referred to as **"Seller"**), in favor of **Apache Louisiana Minerals, Inc.**, a Delaware corporation, whose mailing address is 2000 Post Oak Boulevard, Suite 1060, Houston, Texas 77056 (hereinafter referred to as **"Buyer"**).

Reference is hereby made for all purposes to that certain Act of Sale dated effective as of December 1, 2002, at 7:00 a.m., Central Time, whereby LaTerre Co., Ltd. conveyed to Apache North America, Inc. the "Properties", as defined therein, (hereinafter referred to as the **"Act of Sale"**). The Act of Sale is recorded in under Entry No. 277466 in the Conveyance records of Cameron Parish, Louisiana, in Book 1807 under Entry No. 1139014 in the Conveyance records of Terrebonne Parish, Louisiana, and in Book 1581 at Page — et seq. under Entry No. 936631 in the Conveyance records of Lafourche Parish, Louisiana.

For good and valuable consideration paid by Buyer to Seller, the receipt and adequacy of which is hereby acknowledged by Seller, Seller does hereby grant, bargain, sell, convey, transfer, assign, set over and deliver unto Buyer, herein accepting and purchasing for itself, its successors and assigns, and acknowledging delivery and possession thereof, all right, title and interest in and to and relating to the Properties acquired by Seller in the Act of Sale, TO HAVE AND TO HOLD unto Buyer, its successors and assigns, subject to and in accordance with all of the terms and provisions of the Act of Sale but effective, however, as of the Effective Time.

Buyer and Seller further agree as follows:

1.     Buyer agrees to perform all of the duties and obligations of Seller (and ratifies all waivers and releases of Seller) with respect to the Properties and/or under the Act of Sale and/or under the PSA (as defined in the Act of Sale).

2.     This Conveyance is executed by Seller in favor of Buyer without warranty of title, express or implied, except as to acts by, through and under Seller, but not otherwise.

3.     Buyer expressly acknowledges that Buyer is aware that the Land (as defined in the Act of Sale) is largely marsh lands, and there are numerous water covered areas within the boundaries of such lands, which may be susceptible to a claim by the State of Louisiana that the beds of such water covered areas are owned by the State of Louisiana as the beds of navigable waterbodies.  Seller does hereby exclude any contractual, implied or other warranty or representation regarding whether water covered areas are navigable or not navigable, and whether the beds of such water covered areas are owned by Seller or, alternatively, owned by the State of Louisiana; provided, however, nothing contained in these statements is intended to limit in any manner Buyer's right to dispute any claim of ownership which may be asserted, in litigation or otherwise, by the State of Louisiana respecting any claim to the ownership of the beds of water covered areas, and Buyer's right to assert that the beds of such water covered areas are owned in part by Buyer because such water covered areas are, in fact, not navigable.

- 1 -

**755**

Return to top

4.  Buyer further acknowledges that Seller has made no representation or warranty concerning the acreage content of the Land, regarding the location of the boundaries of the Lands, concerning any encroachments upon the Land, and especially that Seller has made no representations or warranties concerning whether portions of the Land may have eroded into or subsided beneath adjacent water covered areas since the date such Land were acquired by Seller (and hence such areas may have become subject to a claim of ownership by the State of Louisiana).

5.  Buyer agrees that if Buyer elects to sell or otherwise transfer the Land (or any portion of the Land), Buyer shall include in any such sale or transfer (or, alternatively, in any unrecorded purchase and sale agreement or similar agreement executed in connection with any such sale or transfer) provisions identical to the two preceding paragraphs, and Buyer shall protect, indemnify and hold Seller harmless from and against any and all claims, causes of action or liability arising as a result of Buyer's failure to include such provisions in any further sale or other transfer by Buyer relating to the Land (or any portion of the Land).

**IN WITNESS WHEREOF,** this Conveyance is executed by Seller and Buyer on the date first above written in the presence of the undersigned competent witnesses.

WITNESSES:

**SELLER:**

**Apache North America, Inc.**

By: _Eric L. Harry_
    Eric L. Harry
    **Vice President and**
    **Associate General Counsel**

**BUYER:**

**Apache Louisiana Minerals, Inc.**

By: _Eric L. Harry_
    Eric L. Harry
    **Vice President and**
    **Associate General Counsel**

- 2 -

0. 756

**Return to top**

## ACKNOWLEDGEMENT

STATE OF TEXAS      §

COUNTY OF HARRIS    §

On this 31st day of January, 2003, appeared Eric L. Harry, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to his on the foregoing instrument at the same time he did, that he is the Vice President and Associate General Counsel of Apache North America, Inc., a Delaware corporation, and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.



REGINA C. GORMAN
Notary Public, State of Texas
Commission Expires
NOVEMBER 30, 2005

Notary Public in and for the State of Texas
My Commission expires on _11- 30- 2005_

## ACKNOWLEDGEMENT

STATE OF TEXAS      §

COUNTY OF HARRIS    §

On this 31st day of January, 2003, appeared Eric L. Harry, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to his on the foregoing instrument at the same time he did, that he is the Vice President and Associate General Counsel of Apache Louisiana Minerals, Inc., a Delaware corporation, and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

FILED FOR RECORD
PARISH OF
TERREBONNE

REGINA C. GORMAN
Notary Public, State of Texas
Commission Expires
NOVEMBER 30, 2005

AM 9 35

DEPUTY CLERK OF COURT

Notary Public in and for the State of Texas
My Commission expires on _11-30-2005_

- 3 -

D 757

# EXHIBIT Q

**1159170**

<u>VOLUNTARY UNIT AGREEMENT</u>

**Return to top**

STATE OF LOUISIANA

PARISH OF TERREBONNE

This Voluntary Unit Agreement (this "Agreement") entered into on the dates set forth below but effective as of the 3rd day of May, 2003, by and among Apache Corporation, whose address is 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056-4400, and BP America Production Company, whose address is 501 Westlake Park Boulevard, Houston, Texas 77079 (hereinafter collectively referred to as "Lessees") and Apache Louisiana Minerals, Inc., whose address is 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056-4400 (hereinafter referred to as "Lessor").

WHEREAS, Lessees are the owners of those certain leases set forth on Exhibit "A" attached hereto and made a part hereof, said leases hereinafter being referred to as the "Subject Leases"; and

WHEREAS, in the interest of conservation and for their mutual benefit, Lessees and Lessor desire to pool, combine and unitize their separately owned interests and rights in all or a portion of the Subject Leases for the exploration for and production of oil, gas and other associated hydrocarbons from the voluntary unit herein created.

NOW, THEREFORE, in consideration of the mutual benefits and advantages resulting from the execution hereof, Lessees and Lessor, by these presents, do hereby create for the exploration and production of oil, gas and other hydrocarbons, a pooled unit designated as the Apache Louisiana Minerals #7-1 Voluntary Unit consisting of 173.97 acres, more or less, as described in Exhibit "A" attached hereto and made a part hereof and as depicted on the plat attached hereto as Exhibit "B" and made a part hereof, **LIMITED**, however, to the 50 Sand and its stratigraphic equivalent as seen on the log interval between 10,932' and 11,055' measured depth and the 51 Sand and its stratigraphic equivalent as seen on the log interval between 11,118' and 11,140' measured depth, both as found in The Superior Oil Company; LaTerre Co., Inc. A-12 well, located in Section 7, T19S-R14E (the "Voluntary Unit").

The Voluntary Unit shall be subject to the following terms and conditions:

1.

The area of participation for each of the Subject Leases in any and all production from the Voluntary Unit is defined in Exhibit "A" and depicted on Exhibit "B".

2.

The commencement of actual drilling operations, shutting-in, reworking, or production of oil, gas and any other liquid or gaseous hydrocarbon minerals from a well on, traversing through any portion of, or bottomed under the Voluntary Unit shall have

**645**

**Return to top**

the same effect upon the Subject Leases as if such operations were actually commenced or conducted, or such wells were drilled, shut-in, or reworked, or were producing from the area covered by each of the Subject Leases included within the geographic boundaries of the Voluntary Unit.

3.

There shall be no obligation on the part of the Lessees to the Subject Leases to drill any well or wells on one area of the Voluntary Unit to offset another well or wells drilled on any other area within the Voluntary Unit. The Voluntary Unit may be drilled, developed and operated for the production of oil, gas, and any other liquid or gaseous hydrocarbon minerals as a single unitized operation without reference to the boundary line or lines separating the Subject Leases within the Voluntary Unit. Separate measuring, receiving, or storage tanks shall only be required upon the written agreement of all parties hereto.

4.

Notwithstanding anything contained herein to the contrary, in the event of production of oil, gas and any other liquid or gaseous hydrocarbon minerals from any portion of the Voluntary Unit, it is agreed the ownership of the production by the Lessees shall be as follows:

| Lessee | Percentage |
|---|---|
| Apache Corporation | 82% |
| BP America Production Company | 18% |

As to the Voluntary Unit, in lieu of the royalties and overriding royalties which the individual owners thereof would otherwise be entitled to receive by virtue of the Subject Leases, such owners shall receive and accept, out of the production or the proceeds of production from the Voluntary Unit, such portion of said royalties or overriding royalties as the number of surface acres covered by the applicable lease and included in the geographic boundaries of the Voluntary Unit bears to the total number of surface acres included within the geographic boundaries of the Voluntary Unit. Royalties and overriding royalties accruing hereunder shall be paid in the same manner and subject to the same conditions as stipulated in the applicable lease.

5.

The parties hereto agree that the foregoing provisions hereof are just, fair, equitable and proper and are to their mutual benefit and advantage. The parties hereto further agree that the foregoing division and apportionment shall be and remain binding for so long as this Agreement is in effect. If at any time, any question or litigation should arise as to the ownership of any part of the Subject Leases or as to any boundary or limit of any part of the separate interests covered by the Subject Leases hereinabove described,

Book:  1835  Page:   645  File #: 1159170  Seq: 2

Return to top

neither this agreement, nor any of the data, maps, or exhibits considered in connection herewith, whether attached hereto or not, nor any course of conduct followed by any party hereto pursuant to the Voluntary Unit shall ever be considered to be or permitted to serve as a basis of estoppel against any party hereto or prevent any party hereto from establishing its ownership, or having the boundaries or limits of its interests determined, in any lawful manner, anything herein contained to the contrary notwithstanding.

6.

Neither the creation of the Voluntary Unit, nor anything herein contained, is intended to imply that the area comprising the Voluntary Unit will, or will not, be efficiently and economically drained by one well.

7.

Except to the extent herein expressly provided, nothing herein contained shall be construed as altering or otherwise changing in any manner any of the terms or provisions of the Subject Leases.

8.

This Agreement shall remain in effect so long as the Subject Leases remain in full force and effect as to the unitized interval within the boundaries of the Voluntary Unit herein created or as the Voluntary Unit may be subsequently revised. In the event that Lessees release any depths or intervals covered by the Subject Leases and subject hereto, then said released depths and intervals shall no longer be subject to this Agreement.

9.

It is expressly understood and agreed that any party to the Voluntary Unit may at any time call for a unit hearing with the Louisiana Office of Conservation and if any unit or units are created after the effective date of the Voluntary Unit by the Louisiana Office of Conservation by formal order, after public hearing, affecting a defined sand or zone included within the interval herein unitized and underlying any part of the Subject Leases included within the geographic boundaries of the Voluntary Unit, such unit or units created by the Louisiana Office of Conservation shall automatically supersede and entirely replace the Voluntary Unit as to such sand or zone unitized in said order as of the effective date of the order.

10.

The Voluntary Unit Agreement may be executed in any number of counterparts and shall be binding upon the parties, their successors and assigns, only when all parties hereto execute said agreement.

**647**

**Return to top**

     IN WITNESS WHEREOF, the parties have executed this agreement as of the date first set forth in the attached acknowledgments but effective as of the date hereinabove set forth.

WITNESSES:

LESSEES:

**APACHE CORPORATION**

C. R. Harden
Attorney-in-Fact

**BP AMERICA PRODUCTION COMPANY**

By:
Title:

WITNESSES:

LESSOR:

**APACHE LOUISIANA MINERALS, INC.**

C. R. Harden
Attorney-in-Fact

**Return to top**

STATE OF TEXAS        )
                      )
COUNTY OF HARRIS      )

On this *26th* day of *August*, 2003, before me appeared
C. R. Harden, to me personally known, who, being by me duly sworn, did say that she is
the Attorney-in-Fact of **APACHE CORPORATION**, and that the foregoing instrument
was executed on behalf of said corporation by authority of its Board of Directors, and
said Appear acknowledged said instrument to be the free act and deed of said
corporation.

                        _____
                        NOTARY PUBLIC

                        _____
                        MY COMMISSION EXPIRES


STATE OF TEXAS        )
                      )
COUNTY OF HARRIS      )

On this *18* day of *August*, 2003, before me appeared ___
Edmund M. Sierra, to me personally known, who, being by me duly sworn, did say
that (s)he is the *Atty-In-Fact* of **BP AMERICA PRODUCTION
COMPANY**, and that the foregoing instrument was executed on behalf of said
corporation by authority of its Board of Directors, and said Appear acknowledged said
instrument to be the free act and deed of said corporation.

**HELEN K. ZAPALAC**
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
**MAY 26, 2006**

                        _____
                        NOTARY PUBLIC

                        _____
                        MY COMMISSION EXPIRES


STATE OF TEXAS        )
                      )
COUNTY OF HARRIS      )

On this *26th* day of *August*, 2003, before me appeared
C. R. Harden, to me personally known, who, being by me duly sworn, did say that she is
the Attorney-in-Fact of **APACHE LOUISIANA MINERALS, INC.**, and that the
foregoing instrument was executed on behalf of said corporation by authority of its Board
of Directors, and said Appear acknowledged said instrument to be the free act and deed
of said corporation.

**EDMUNDS B TRAVIS**
Notary Public
State of Texas
My Commission Expires
October 23, 2006

                        _____
                        NOTARY PUBLIC

                        _____
                        MY COMMISSION EXPIRES

EXHIBIT "A"                                    **Return to top**

To that certain Voluntary Unit Agreement dated effective May 3, 2003, by and among Apache Corporation and BP America Production Company, as Lessees and Apache Louisiana Minerals, Inc., as Lessor.

The following are the leases subject to this Voluntary Unit Agreement:

1.   Oil, Gas and Mineral Lease dated 5/28/1952 by and between La Terre Co., Inc., as Lessor and The Superior Oil Company, as Lessee, recorded in COB 187, Entry No. 11086 of the records of Terrebonne Parish, Louisiana ("Tract 1").

2.   Oil and Gas Lease dated 4/30/2003 by and between Apache Louisiana Minerals, Inc., as Lessor and Apache Corporation, as Lessee ("Tract 2")

INSOFAR AND ONLY INSOFAR as the above described Leases cover the 50 Sand and its stratigraphic equivalents as seen on the log interval between 10,932' and 11,055' measured depth, and the 51 Sand and its stratigraphic equivalents as seen on the log interval between 11,118' and 11,140' measured depth both in The Superior Oil Company, LaTerre Co., Inc. A-12 well, located in Section 7, Township 19 South, Range 14 East Terrebonne Parish, Louisiana, and being more particularly described as follows:

Tract 1 – 54.37 Acres:

Commencing at the northwest corner of said tract, also being the northwest corner of said unit, located in the west line of Section 7, T19S R14E in Terrebonne Parish, Louisiana, said point being designated the Point-of-Beginning and having Lambert plane coordinate values of X= 2,082,944.35 feet and Y=278,049.76 feet;

Thence, East along the most southern north line of said tract, also being the same line of said unit, a distance of 1568.70 feet to a point having coordinate values of X=2,084,513.05 feet and Y=278,049.76 feet;

Thence, North a distance of 911.00 feet to a point having coordinate values of X=2,084,513.05 feet and Y=278,960.77 feet;

Thence, East along the most northern line of said tract, also being the same line of said unit, a distance of 1023.93 feet to a point having coordinate values of X=2,085,536.98 feet and Y=278,960.77 feet;

Thence, South 89°19'25.89" East along the east line of said tract a distance of 1433.10 feet to a point having coordinate values of X=2,085,553.89 feet and Y=277,527.77 feet;

Thence, South 88°47'24.06" West a distance of 2602.97 feet to a point in the west line of Section 7, T19S R14E, said point being the southwest corner of said tract, having coordinate values of X=2,082,951.50 feet and Y=277,472.80 feet;

Thence, North 91°17'24.13" West along the west line of Section 7, T19S R14E, also being the west line of said tract, a distance of 577.00 feet more or less, to the Point-of-Beginning.

Said Tract 1 containing 54.37 acres, more or less, and being a part of a 173.97 Acre Voluntary Unit, and is more particularly shown on that certain plat labeled Exhibit "B" attached hereto and made a part hereof.

Tract 2 – 119.60 Acres:

1                                              **650**

**Return to top**

Commencing at the most southern northwest corner of said tract, also being the southwest corner of Tract 1 of said unit, located in the west line of Section 7, T19S R14E in Terrebonne Parish, Louisiana, said point being designated the Point-of-Beginning and having Lambert plane coordinate values of X=2,082,951.50 feet and Y=277,472.80 feet;

Thence North 88°47'24.06" East a distance of 2602.97 feet to a point, said point also being the southeast corner of Tract 1, having coordinate values of X=2,085,553.89 feet and Y=277,527.77 feet;

Thence, North 89°19'25.89" West along the east line of said Tract 1, a distance of 1433.10 feet to a point having coordinate values of X=2,085,536.98 feet and Y=278,960.77 feet;

Thence, East along the most northern line of said tract, also being the same line of said unit, a distance of 1788.87 feet to a point being the northeast corner of Tract 2 of said unit, and having coordinate values of X=2,087,325.85 feet and Y=278,960.77 feet;

Thence, South along the most eastern line of said tract, also being the east line of said unit, a distance of 2057.61 feet to a point being the southeast corner of Tract 2 of said unit, and having coordinate values of X=2,087,325.85 feet and Y=276,903.16 feet;

Thence, West along the south line of said tract, also being the south line of said unit, a distance of 4367.29 feet to a point being the southwest corner of Tract 2 of said unit, and having coordinate values of X=2,082,958.56 feet and Y=276,903.16 feet;

Thence, North 91°17'24.13" West along the west line of Section 7, T19S R14E, also being the west line of said tract, a distance of 569.69 feet more or less, to the Point-of-Beginning.

Tracts 1 and 2 combined make up the geographic boundaries of this Voluntary Unit Agreement and contain 173.97 acres in total.

All bearings, distances and coordinates recited herein are based on the Louisiana State Plane Coordinate System, 1927 Datum, South Zone.

**651**

2

# EXHIBIT "B"

To that certain Voluntary Unit Agreement dated effective May 3, 20003, by and
among Apache Corporation and BP America Production Company,
as Lessees and Apache Louisiana Minerals, Inc., as Lessor.

Return to top

## BAYOU PENCHANT

### Terrebonne Ph., Louisiana

### Apache Louisiana Minerals #7-1 VUA

Tract 1  54.37 Acres
Tract 2  119.60 Acres

**173.97 Total Unit Acres**

# EXHIBIT R

1168286

# RESOLUTION
### LOUISIANA STATE MINERAL BOARD

Return to top

On motion of Mr. Domino, seconded by Mr. Steil, the following Resolution was offered and adopted:

BE IT RESOLVED by the State Mineral Board that Docket Item No. 03-66 from the December 10, 2003, 2003 Meeting be approved, said instrument being a Unitization Agreement presented by Apache Corporation and Pinnacle Resources, Inc., to create a 80.2250 acre unit, more or less, identified as the "7200 VUA", with 4.3014 acres attributable to State Lease No. 17892, and the remaining acreage being attributable to private ownership, Lake Pagie Field, Terrebonne Parish, Louisiana, with further particulars being stipulated in the instrument.

BE IT FURTHER RESOLVED that either the Chairman, Vice-Chairman, Secretary, Deputy Assistant Secretary or Chief Landman be and he is hereby authorized to reflect the approval of the instrument by signing said instrument for the Board.

## CERTIFICATE

I hereby certify that the above is a true and correct copy of a Resolution adopted at a meeting of the State Mineral Board held in the City of Baton Rouge, Louisiana, on the 10th day of December, 2003, pursuant to due notice, at which meeting a quorum was present, and that said Resolution is duly entered in the Minute Book of said Board and is now in full force and effect.

_____
STATE MINERAL BOARD

0   212

**VOLUNTARY UNIT AGREEMENT**
**7200 VUA**
**APACHE CORPORATION**
**Lake Pagie Field**

**Return to top**

STATE OF LOUISIANA
PARISH OF TERREBONNE

THIS AGREEMENT made and entered into this 10ᵗʰ day of December, 2003,

by and between:

> **THE STATE MINERAL BOARD,** for and on behalf of the
> State of Louisiana, whose address is Post Office Box 2827, Baton
> Rouge, Louisiana 70821-2827, hereinafter referred to as "State";

> **APACHE LOUISIANA MINERALS, INC.,** whose address is
> 2000 Post Oak Blvd., Ste. 100, Houston, Texas 77056-4400;

> hereinafter collectively referred to as "Lessor,"

> **APACHE CORPORATION,** whose address is 2000 Post Oak
> Blvd., Ste. 100, Houston, Texas 77056-4400; and,

> **PINNACLE RESOURCES, INC.,** whose address is 319
> Audubon Blvd., Lafayette, Louisiana 70503-0000;

> hereinafter collectively referred to as "Lessee,"

the undersigned owners of the oil, gas and mineral rights and/or mineral leases and similar rights

relating to the pooled unit described below;

WITNESSETH: That,

WHEREAS, Lessee is the holder and owner of the oil, gas and mineral rights and/or the

mineral leases covering and affecting lands in Terrebonne Parish, Louisiana, which lands are

described in the mineral leases that are described and identified on Exhibit "A" attached hereto

and made a part hereof (hereinafter referred to as the "Leases"); and,

WHEREAS, the parties hereto desire, in the interest of conservation, to pool and unitize

their separately owned interests and rights so as to create a single pooled unit, comprising a

portion of the property covered and affected by the Leases.

NOW, THEREFORE, in consideration of the premises and of the mutual benefits and

advantages resulting from the execution hereof, the parties hereto do hereby agree as follows:

0    **213**

**Return to top**

1.

There is hereby established a voluntary unit for the exploration for and production of oil, gas and condensate and other liquid and/or gaseous hydrocarbons from the lands and depths more specifically set forth in Paragraph 7(a) hereinbelow, underlying those certain tracts of land comprising portions of the Leases, containing 80.225 acres, more or less, situated in Terrebonne Parish, Louisiana, as depicted and shown more clearly on the plat attached hereto and made a part hereof as Exhibit "B" (hereinafter referred to as the "7200 VUA").

2.

(a)     The entirety of the land and all leasehold, mineral, mineral royalty and other rights and interests affecting lands within the boundaries of the 7200 VUA insofar as the Unit Interval is concerned are hereby pooled, combined and unitized as a single unit, and production obtained from any portion of the 7200 VUA shall constitute production from and as to each of the separate tracts comprising the 7200 VUA, and under the terms, conditions and requirements of the Leases and other contracts affecting the unitized area.  All unitized production from the 7200 VUA shall be allocated to the separate tracts and to the Leases and other contracts thereon in the proportion that the number of surface acres in each such tract included within the 7200 VUA bears to the total number of surface acres comprising the 7200 VUA.  The tracts, the surface acres in each, and the percentage of participation of each such tract are shown on the attached Exhibit "B.

(b)     Drilling or reworking operations on or production of oil, gas and other associated minerals from, or payment of shut-in royalties for or associated with any portion of the Leases within the boundaries of the 7200 VUA (hereinafter referred to as "Unit Operations") shall be considered as operations or production on the entire acreage constituting the unit, and shall have the effect of continuing the Leases in force and effect with respect to those lands affected by the Leases which are located within this unit's geographical boundaries. Any portion of the lands covered by the Leases which is situated outside the geographical confines of said unit shall not be maintained by Unit Operations, but may be maintained in accordance with the applicable terms, conditions, and requirements of the Leases and/or other contracts.

Ō  214

**Return to top**

3.

All royalties and other payments shall be paid on the basis of the proportionate allocations as described hereinabove and set forth in Exhibit "B" attached hereto and under the terms of the Leases or other instruments under which said royalties or other payments accrue. The payment of such proportionate royalties or other payments on production obtained within the 7200 VUA shall constitute and be considered proper payment of royalties as to all lands included within the 7200 VUA.

4.

The provisions of the Leases which may operate to decrease the royalties credited thereunder to the respective owners in the event of the failure of title, in whole or in part, shall not be impaired by this Agreement and Lessee shall not be liable to any parties for failure of title, in whole or in part, to any tract or interest therein relating to the land within the unitized area. In the event of the failure of title, in whole or in part, as to any type of interest pooled hereby, Lessee shall have no liability to any party hereto, nor shall they be obligated to make any retroactive reapportionment of royalties or payments. In such event, Lessee shall have the right to bring any outstanding title in any type of interest pooled hereby into the unitized area under the terms of this Agreement through the execution of appropriate instruments with the owners of such outstanding interest.

5.

This Agreement and the 7200 VUA established hereby shall be binding upon each party who executes or ratifies it as of the date this 7200 VUA is approved and accepted by motion, duly adopted, of the State Mineral Board, for the State of Louisiana.

6.

Except to the extent herein expressly provided, nothing herein contained shall be construed as altering or otherwise changing in any manner any of the terms or provisions of the Leases committed hereto. Nothing herein contained shall be construed as prescribing any standard or measure as to what shall constitute proper development of property covered by the Leases. It is further understood and agreed that this Agreement shall never be construed as imposing upon any royalty owner under the Leases any obligation to pay for any development or

-3-

0   215

**Return to top**

operating expense unless such royalty owner is obligated to pay for same by the terms of Agreements existing before the execution of this Agreement.

7.

(a)     This 7200 VUA shall cover all sands and horizons from the surface down to 100 feet below the stratigraphic equivalent of the subsurface depth of 7581 feet as seen on the electrical log of the Apache Corporation – Tenneco A No. 4 Well (Serial No. 204941)(the "Unit Interval").  The composite geographical boundaries of the Unit Interval referred to herein shall comprise the Unit Area which is more particularly set forth and shown on Exhibit "B" attached hereto and comprises 80.225 acres, more or less.

(b)     Upon reaching total depth of any authorized unit, substitute or alternate unit wells which may subsequently be drilled for this 7200 VUA, the Lessee shall timely log said well(s) to verify the areal extent of the Unit Interval as it relates to the Unit Area incorporating therewith and utilizing all other available data in Lessee's possession.

(c)     Within ninety (90) days after any unit, substitute or alternate unit well drilled after execution of this Agreement is completed, or, if the Unit Interval incorporates more than one sand interval, within ninety (90) days of the depletion or cessation of production in paying quantities from one sand interval and recompletion in a different sand interval of the Unit Interval, Lessee shall schedule a meeting with the State Mineral Board Staff ("Staff") and, unless notified by the Staff in writing that such a meeting is not necessary at that time, meet with the Staff to present any and all geological, seismic, and/or engineering information pertaining to this Unit.  Thereafter, if a reasonable interpretation by the Staff of the information presented warrants same, and further, if it is requested in writing by the Staff, all signatory parties to this Unit Agreement agree and obligate themselves to jointly, with the State, amend the 7200 VUA so that the Unit Interval and Unit Area more accurately reflect the composite areal extent of the identified potentially productive sand intervals remaining.

(d)     Any unit or units created by formal order of the Louisiana Commissioner of Conservation, after public hearing, which affect a sand interval identified as a Unit Interval then currently being produced in this Unit and which production maintains the Leases in force and effect with respect to lands within the Unit Area, shall automatically supersede and entirely replace this Unit with respect to that sand interval only, but only as to those lands included

Return to top

within the geographic boundaries of the Commissioner's unit.  Thereafter, unit activity on or unit production from the Commissioner's unit shall serve to maintain the Leases only on those portions of lands covered by the Leases within the Commissioner's unit or as otherwise provided in the Leases.  With respect to the remaining lands and sand interval(s) identified as the Unit Interval not previously depleted, if any, they shall be covered by this Unit Agreement and the Leases on the lands within this Unit, but outside of the Commissioner's unit shall be maintained either by Unit Operations affecting or production from the remaining Unit Interval within the Unit Area in a timely fashion according to the terms of the Leases and this Agreement.

(e)     Any unit or units created by formal order of the Louisiana Commissioner of Conservation, after public hearing, which affect a sand interval identified as a Unit Interval in this Unit, which is not then currently producing, shall automatically supersede and entirely replace this Unit as to that sand interval only, but only as those lands included within the geographic boundaries of the Commissioner's unit; thereafter, unit activity on or production from the Commissioner's unit shall maintain the Leases only on those portions of lands covered by the Leases within the geographical boundaries of the Commissioner's unit.  Unit Operations affecting or production from the said remaining sand interval(s) which comprise the Unit Interval shall serve to maintain in force and effect the Leases on lands covered by the Leases within the Unit Area under which lies the remaining Unit Interval according to the terms of the Leases and this Agreement.

(f)     Failure to do any of the above within thirty (30) days of receipt of written notice from the Staff advising of non-compliance with any of the terms of this Agreement, may, at the sole discretion of State, terminate this Unit.

8.

(a)     There shall be no obligation on the part of the Lessee under the Leases to drill any well or wells on one part of said unit to offset another well or wells drilled on other property within said unit, nor shall separate measuring, receiving, or storage tanks ever be required, and said unit may be drilled, developed and operated for the production of oil, gas, and any other liquid or gaseous hydrocarbon mineral as a single unitized operation without reference to the boundary line or lines separating the properties within said unit.

D̄   217

**Return to top**

(b)     Neither the creation of the aforesaid unit, nor anything herein contained, is intended to imply that the area comprising such unit will, or will not, be efficiently and economically drained by one well.

9.

This Agreement shall terminate if the Lessee fails to commence, or fails to cause to be commenced, Unit Operations or to establish unit production within twelve (12) months of the approval date of this agreement.  It is expressly understood that, in the event production, once commenced, should cease, this Agreement shall terminate and be of no further force and effect ninety (90) days after such cessation of production; provided, however, that if reworking or recompletion operations on the same or another well or the actual drilling (i.e., spudding) of another well in an attempt to establish production of oil, gas and any other liquid or gaseous hydrocarbon mineral from a sand interval of the Unit Interval is commenced within such ninety (90) day period, this Agreement shall remain in full force and effect so long as such reworking or recompletion or drilling operations are being conducted thereon without a cessation of more than ninety (90) days between the abandonment of one well and the reworking or recompletion of the same or another well or the commencement of the actual drilling of another well until production of oil, gas and any other liquid or gaseous hydrocarbon mineral is restored or obtained in paying quantities from the Unit Interval.  For the purpose of this Agreement, shut-in gas payments made under each of the Leases shall be considered as production in paying quantities.  Except to the extent hereinabove limited, this Agreement shall remain in effect so long as, but only as long as, all of the above described Leases remain in full force and effect as to all of the property presently covered thereby which is included within the boundaries of the unit created hereby.

10.

When this unit terminates, Lessee shall have one (1) year thereafter to dismantle and remove operating equipment and other facilities from the unit area unless the Leases upon which such equipment or facilities are located are otherwise being maintained in effect.

11.

The parties hereto agree that the foregoing provisions hereof are just, fair, equitable, and proper, and are to their mutual benefit and advantage, and that the foregoing division and apportionment of interests when made shall be and remain binding until the termination of the

-6-

$\overline{9}^-$  218

**Return to top**

herein created unit as herein provided.  However, if at any time any question or litigation should arise as to the ownership of any part of the property covered hereby or as to any boundary or limit of any part of the property covered by the aforesaid Leases, neither this Agreement nor anything herein contained, nor any of the data, maps, or exhibits considered in connection herewith, whether attached hereto or not, nor any course of conduct followed by any party hereto pursuant to this Agreement, shall ever be considered to be, or permitted to serve as, a basis of estoppel against any party hereto, or prevent any party hereto from establishing its ownership, or having the boundaries or limits of its property determined, in any lawful manner, anything herein contained to the contrary notwithstanding.

<div align="center">12.</div>

This instrument may be signed in any number of counterparts, each of which shall be deemed to be a duplicate original, and all counterparts together shall constitute a single instrument.  It is also agreed that any party at interest may ratify this Agreement by separate instrument and that, as above provided, any lease subsequently acquired by Lessee or any one of them may be subjected to the terms hereof by an appropriate declaration.

IN WITNESS WHEREOF, this instrument is executed on the dates and in the places set forth in the respective acknowledgments attached hereto.

0 219

**Return to top**

WITNESSES:

LESSEE:

APACHE CORPORATION

By: _C. R. Harden_____
    C. R. Harden
    Attorney-in-Fact

STATE OF TEXAS

COUNTY OF HARRIS

On this _11th_ day of _November_____, 2003, before me appeared _C. R. HARDEN_____, to me personally known, who, being by me duly sworn, did say that she is the _ATTORNEY-IN-FACT_____ of APACHE CORPORATION, and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

NOTARY PUBLIC

My Commission Expires:

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

-8-

6   220

**Return to top**

WITNESSES:

*Debbie Falcon*

*Charmaine LeBlanc*

LESSEE:

PINNACLE RESOURCES, INC.

By: _____

STATE OF LOUISIANA

PARISH OF LAFAYETTE

On this __11th__ day of __November__, 2003, before me appeared __Bradley Broussard__, to me personally known, who, being by me duly sworn, did say that he is the __President__ of PINNACLE RESOURCES, INC., and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

_____
NOTARY PUBLIC

My Commission Expires:

__at death__

RICHARD W. REVELS, JR.
NOTARY PUBLIC
Parish of Lafayette, State of LA.
BAR NO. 11194

-9-

0  221

**Return to top**

WITNESSES:

LESSOR:

**APACHE CORPORATION, Agent for**
**APACHE LOUISIANA MINERALS, INC.**

By: _____
        C. R. Harden
        Attorney-in-Fact

STATE OF TEXAS          §
                                    §
COUNTY OF HARRIS     §

On this 11th day of November 2003, before me personally appeared C. R. Harden to me known to be the person described in the foregoing instrument, who being by me duly sworn, did say that she is the Attorney-in-Fact of APACHE LOUISIANA MINERALS, INC. and APACHE CORPORATION, and that the instrument was signed in behalf of the corporation by authority of its Board of Directors and that he acknowledged the instrument to be the free act and deed of the corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

_____
Notary Public, State of Texas

-10-

0  222

**Return to top**

WITNESSES:

LESSOR:

STATE MINERAL BOARD  12-10-03
STATE OF LOUISIANA

By: _____

Its: **SECRETARY** _____

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

BEFORE ME, the undersigned authority, personally came and appeared _____ **CRISTINA VINCE** _____, who, by me first duly sworn, deposed and said:

That she/he is one of the witnesses to the execution of the foregoing instrument and that she/he saw **GUS C. RODEMACHER** sign said instrument as _____ **SECRETARY** of the STATE MINERAL BOARD for and on behalf of the STATE OF LOUISIANA, in the presence of Appearer and **JASON BRYAN** _____, the other subscribing witness.

_____
WITNESS

SWORN TO AND SUBSCRIBED before me, on this 23rd day of December, 03.

_____
NOTARY PUBLIC

0   223

EXHIBIT "A"

**Return to top**

Attached to Voluntary Unit Agreement by and between the State Mineral Board,
as Lessor, and Apache Corporation, et al, as Lessee, establishing the

7200 VUA

List of Leases Contributing Acreage to the
7200 VUA

1.    Lease dated March 24, 1961, executed by La-Terre Company, Inc., in favor of Union Oil Company of California, recorded in Conveyance Book 316, under Entry No. 215517, records of Terrebonne Parish, Louisiana.

2.    Lease dated November 11, 2003, executed by Apache Louisiana Minerals, Inc. in favor of Apache Corporation, a recording notice of which was recorded in Conveyance Book 1844, under Entry No. 1164463, records of Terrebonne Parish, Louisiana.

3.    State Lease No. 17892 dated September 15, 2003, executed by the State Mineral Board on behalf of the State of Louisiana, in favor of Pinnacle Resources, Inc., recorded in Conveyance Book 1839, under Entry No. 1161471, records of Terrebonne Parish, Louisiana.

110775_1.DOC
04430.0299

-12-

0  224

**Return to top**



| Tract | Lessee | Lessor | Acreage | Percentage |
|---|---|---|---|---|
| 1 | Apache Corp | ALMI | 32.0920 | 40.0025% |
| 2 | Apache Corp | ALMI | 40.9640 | 51.0614% |
| 3 | Apache Corp | State of Louisiana / ALMI (Disputed) | 7.1690 | 8.9361% |
| TOTAL | | | 80.2250 | 100.0000% |

EXHIBIT "B"

**APACHE CORPORATION**
**7200' VUA**
PROPOSED 80.225 ACRE VOLUNTARY UNIT
LAKE PAGIE FIELD, SECTIONS 20 & 29
T 19 S - R 15 E, TERREBONNE PARISH, LA.

# EXHIBIT S

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
Clerk Of Court
P.O. Box 1569
Houma, La 70361-1569
(985) 868-5660

Return to top

**Received From :**
BRADLEY BROUSSARD LAND SERVICES INC
ATTN: RICHARD MURFF
P. O. BOX 52826
LAFAYETTE, LA 70505

**First VENDOR**

| HENICAN TERREBONNE PROPERTY L L C |
|---|

**First VENDEE**

| APACHE CORPORATION |
|---|

Index Type : Conveyances                   File # : 1211388

Type of Document : Agreement

Recording Pages :          16          Book : 1919      Page : 535

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Terrebonne Parish, Louisiana

_Clerk Of Court_

On (Recorded Date) : 06/06/2005

At (Recorded Time) : 11:58:23:000 AM

Doc ID - 004133970016

**Return To :**
BRADLEY BROUSSARD LAND SERVICES INC
ATTN: RICHARD MURFF
P. O. BOX 52826
LAFAYETTE, LA 70505

535

Do not Detach this Recording Page from Original Document

VOLUNTARY UNIT AGREEMENT
Apache Louisiana Minerals, Inc. 3 - #1 VUA
APACHE CORPORATION
Bayou Penchant Field

**Return to top**

STATE OF LOUISIANA
PARISH OF TERREBONNE

THIS AGREEMENT made and entered into this _14ᵀᴴ_ day of March, 2005, by and between:

> **HENICAN TERREBONNE PROPERTY, LLC**, whose address is 50 Briar Hollow, Suite 410 West, Houston, Texas 77027; and
>
> **LALA LAND LEASING, LLC**, whose address is 50 Briar Hollow, Suite 410 West, Houston, Texas 77027; and
>
> **APACHE LOUISIANA MINERALS, INC.,** whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056,
>
> hereinafter collectively referred to as "Lessors,"
>
> **APACHE CORPORATION,** whose address is 2000 Post Oak Blvd., Ste. 100, Houston, Texas  77056; and
>
> **BP AMERICA PRODUCTION COMPANY**, whose address is 501 West Lake Park Blvd., Houston, Texas 77079; and
>
> **ENERGY PARTNERS, LTD.,** whose address is 201 Saint Charles Ave., Suite 3400, New Orleans, Louisiana 70170,
>
> hereinafter collectively referred to as "Lessees,"

WHEREAS, Lessees are the owners of those certain leases set forth on Exhibit "A" attached hereto and made a part hereof, said leases hereinafter being referred to as the "Subject Leases"; and

WHEREAS, in the interest of conservation and for their mutual benefit, Lessees and Lessors desire to pool, combine and unitize their separately owned interests and rights in all or a portion of the Subject Leases for the exploration for and production of oil, gas and other associated hydrocarbons from the "Voluntary Unit" herein created.

NOW, THEREFORE, in consideration of the mutual benefits and advantages resulting from the execution hereof, Lessees and Lessors, by these presents, do hereby create for the exploration and production of oil, gas and other hydrocarbons, a pooled unit designated as the Apache Louisiana Minerals, Inc. 3 - #1 Voluntary Unit consisting of 636.7145 acres, more or less, as described in Exhibit "A" and depicted on the plat attached hereto as Exhibit "B" and made a part hereof, **LIMITED** however from the surface of the earth down to the stratigraphic

BAYOU PENCHANT 1A5512

ℓ   5·36

**Return to top**

equivalent of the base of the Tex W-6 Sand, deemed to be at 13,250' MD (as measured in the Southern Natural Gas Company's Laterre Company, Inc. No.1 well, located in Section 3, Township 19 South, Range 13 East).

The Voluntary Unit shall be subject to the following terms and conditions:

1.

The area of participation for each of the Subject Leases in any and all production from the Voluntary Unit is defined in Exhibit "A" and depicted on Exhibit "B".

2.

The commencement of actual drilling operations, shutting-in, reworking, or production of oil, gas and any other liquid or gaseous hydrocarbon minerals from a well located on or traversing through any portion of the Voluntary Unit, or bottomed under the Voluntary Unit, shall have the same effect upon the Subject Leases as if such operations were actually commenced or conducted on, or such wells were drilled, shut-in, or reworked, or were producing from, the area covered by each of the Subject Leases included within the geographic boundaries of the Voluntary Unit.

3.

There shall be no obligation on the part of the Lessees to the Subject Leases to drill any well or wells on one area of the Voluntary Unit to offset another well or wells drilled on any other area within the Voluntary Unit. The Voluntary Unit may be drilled, developed and operated for the production of oil, gas, and any other liquid or gaseous hydrocarbon minerals as a single unitized operation without reference to the boundary line or lines separating the Subject Leases within the Voluntary Unit. Separate measuring, receiving, or storage tanks shall only be required upon the written agreement of all parties hereto.

4.

Notwithstanding anything contained herein to the contrary, in the event of production of oil, gas and any other liquid or gaseous hydrocarbon minerals from any well located on any portion of the Voluntary Unit, it is agreed that, subject to that certain Operating Agreement dated November 2, 2004, by and among BP America Production Company, Apache Corporation and Energy Partners, Ltd., the ownership of the production by the Lessees shall be as follows:

| Lessees | Percentage |
|---|---|
| Apache Corporation | 40% |
| BP America Production Company | 20% |
| Energy Partners, Ltd. | 40% |

As to the Voluntary Unit, in lieu of the royalties and overriding royalties which the individual owners thereof would otherwise be entitled to receive by virtue of the Subject Leases, such

-2-

Q. 537

Return to top

owners shall receive and accept, out of the production or the proceeds of production from the Voluntary Unit, such portion of said royalties or overriding royalties as the number of surface acres covered by the applicable lease and included in the geographic boundaries of the Voluntary Unit bears to the total number of surface acres included within the geographic boundaries of the Voluntary Unit. Royalties and overriding royalties accruing hereunder shall be paid in the same manner and subject to the same conditions as stipulated in the applicable lease.

5.

The parties hereto agree that the foregoing provisions hereof are just, fair, equitable and proper, and are to their mutual benefit and advantage, and that the foregoing division and apportionment shall be and remain binding until such time during the term of the Voluntary Unit, that any party shall establish by definitive judgment of a court of competent jurisdiction, or any other lawful manner, the exact limits of their claimed ownership, after which time but not retroactively, the divisions or apportionment of interests within the Voluntary Unit shall be in proportion to the ownership, as so established, within the geographic limits of the Voluntary Unit. If at any time, any question or litigation should arise as to the ownership of any part of the Subject Leases or as to any boundary or limit of any part of the separate interests covered by the Subject Leases hereinabove described, neither this agreement, nor any of the data, maps, or exhibits considered in connection herewith, whether attached hereto or not, nor any course of conduct followed by any party hereto pursuant to the Voluntary Unit shall ever be considered to be or permitted to serve as a basis of estoppel against any party hereto or prevent any party hereto from establishing its ownership, or having the boundaries or limits of its interests determined, in any lawful manner, anything herein contained to the contrary notwithstanding.

6.

Neither the creation of the Voluntary Unit, nor anything herein contained, is intended to imply that the area comprising the Voluntary Unit will, or will not, be efficiently and economically drained by one well.

7.

Except to the extent herein expressly provided, nothing herein contained shall be construed as altering or otherwise changing in any manner any of the terms or provisions of the Subject Leases.

8.

This Agreement shall remain in effect so long as all the Subject Leases remain in full force and effect as to the unitized interval within the boundaries of the Voluntary Unit herein created or as the Voluntary Unit may be subsequently revised. In the event that Lessees release any depths or intervals covered by the Subject Leases and subject hereto, then said released depths and intervals shall no longer be subject to this Agreement.

Q. 538

-3-

9.

It is expressly understood and agreed that any party to the Voluntary Unit may at any time call for a unit hearing with the Louisiana Office of Conservation and if any unit or units are created after the effective date of the Voluntary Unit by the Louisiana Office of Conservation by formal order, after public hearing, affecting a defined sand or zone included within the interval herein unitized and underlying any part of the Subject Leases included within the geographic boundaries of the Voluntary Unit, such unit or units created by the Louisiana Office of Conservation shall automatically supersede and entirely replace the Voluntary Unit as to such sand or zone unitized in said order as of the effective date of the order.

10.

The Voluntary Unit Agreement may be executed in any number of counterparts and shall be binding upon the parties, their successors and assigns, only when all parties hereto execute said agreement.

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first set forth in the attached acknowledgments but effective as of the date hereinabove set forth.

WITNESSES:

Name: _WES W. REEVES_

Name: _Pat Fallon_

LESSEE:

APACHE CORPORATION

By: _C. R. Harden_
     C. R. Harden
     Attorney-in-Fact

STATE OF TEXAS     §
                       §
COUNTY OF HARRIS  §

On this 14th day of March, 2005, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

                            _Judy L. Falcon_
                            Notary Public

My Commission Expires: _7/8/05_

                    JUDY L FALCON
                    NOTARY PUBLIC
                    S ..t of Texas

539

**Return to top**

WITNESSES:

Name: _PETER WROE FOSTER_

Name: _Michael John Walcher_

LESSEE:

BP AMERICA PRODUCTION COMPANY

By: _Edmund M. Sierra_
Name: _____Edmund M. Sierra_____
Attorney-in-Fact

STATE OF TEXAS          §
                                    §
COUNTY OF HARRIS    §

On this _7_ day of _April_, 2005, before me, a Notary Public, personally appeared _Edmund M. Sierra_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _Atty-in-Fact_ of _BP America Pros Co_ and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

Notary Public

HELEN R. ZAPALAC
Notary Public State of Texas
My Commission Expires 06-25-2006

My Commission Expires _____

WITNESSES:

Name: _____

Name: _____

LESSEE:

ENERGY PARTNERS, LTD.

By: _____
Name: _____
Title: _____

STATE OF LOUISIANA    §
                                      §
PARISH OF _____    §

On this ____ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _____

540

-5-

**Return to top**

WITNESSES:                          LESSEE:

                                    BP AMERICA PRODUCTION COMPANY
Name: _____
                                    By: _____
_____                    Name: _____
Name: _____                        Attorney-in-Fact


STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

    On this ___ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

                                    _____
                                    Notary Public

My Commission Expires: _____


WITNESSES:                          LESSEE:

_Cindy P. Lowrance_                 EPL OF LOUISIANA, L.L.C.
Name:  Cindy P. Lowrance            By: _____
                                        L. Keith Vincent
_Eileen B. Coffey_                      Vice President, Land
Name:  Eileen B. Coffey


STATE OF LOUISIANA      §
                        §
PARISH OF ORLEANS       §

    On this 5th day of May, 2005, before me, a Notary Public, personally appeared L. Keith Vincent, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time he did, that he is the Vice President, Land of EPL of Louisiana, L.L.C. and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

                                    _____
                                    Notary Public

My Commission Expires: _____
                        **James L. Alcock, Jr**
                        **Notary Public, State of Louisiana**
                        **My Commission is issued for life.**
                        **Bar Roll # 18758**

-5-                                          **541**

**Return to top**

WITNESSES:                           LESSOR:

_Susan C. Fife_                      HENICAN TERREBONNE PROPERTY, LLC
Name: Susan C. Fife

_Katherine J. King_                  By: _____
Name: Katherine F. King              Name: C J Stewart Thomas III
                                              Manager


STATE OF VIRGINIA        §
City                     §
COUNTY OF Staunton       §

    On this 17th day of March _____, 2005, before me, a Notary Public, personally appeared
C J Stewart Thomas III to me personally known, who being by me duly sworn did say, to me and
the two competent witnesses who signed their names next to Appearer on the foregoing at the
same time __he did, that __he is the Manager _____ of Henican Terrebonne Property, LLC and that
the foregoing instrument was signed in behalf of said limited partnership by authority of its Board
of Directors and said Appearer acknowledged said instrument to be the free act and deed of said
limited partnership.

                      _Tammy J Weebs_
                      Notary Public

My Commission Expires: 8-31-06 _____


WITNESSES:                           LESSOR:

_____                HENICAN TERREBONNE PROPERTY, LLC
Name: _____

_____                By: _____
Name: _____                Name: _____
                                              Manager


STATE OF LOUISIANA       §
                         §
PARISH OF _____      §

    On this ___ day of _____, 2005, before me, a Notary Public, personally appeared
_____, to me personally known, who being by me duly sworn did say, to me and
the two competent witnesses who signed their names next to Appearer on the foregoing at the
same time __he did, that __he is the _____ of _____ and that
the foregoing instrument was signed in behalf of said limited partnership by authority of its Board
of Directors and said Appearer acknowledged said instrument to be the free act and deed of said
limited partnership.

                      _____
                      Notary Public

My Commission Expires: _____

Q̄  542

**Return to top**

WITNESSES:                                      LESSOR:

_____                     HENICAN TERREBONNE PROPERTY, LLC
Name: _____

_____                     By: _____
Name: _____                       Name: _____
                                                          Manager


STATE OF VIRGINIA        §
                         §
COUNTY OF _____     §

     On this ___ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

                        _____
                        Notary Public

My Commission Expires: _____


WITNESSES:                                      LESSOR:

*Mary Alice Allen*                              HENICAN TERREBONNE PROPERTY, LLC
Name: MARY ALICE ALLEN

*J D M*                                         By: *Cooper Manning*
Name: Jeremy Roemershauser                      Name: Cooper Manning
                                                          Manager


STATE OF LOUISIANA       §
                         §
PARISH OF Orleans        §

     On this 17th day of March, 2005, before me, a Notary Public, personally appeared Cooper Manning, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the Manager of Henican Terrebonne and that Property, LLC the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

                        *Ellen H Manning*
                        Notary Public
                        Ellen H Manning
                        # 33124

My Commission Expires: at death

              ELLEN HEIDINGSFELDER MANNING
             Notary Public for Parish of Orleans
                 State of Louisiana
             My Commission Issued for Life    **543**

WITNESSES:

Name: _Wes W. Reeves_

Name: _Red Eaton_

LESSOR:

HENICAN TERREBONNE PROPERTY, LLC

By: _____

Name: _Claude V. Perrier, III_

Manager

STATE OF TEXAS §
§
COUNTY OF _Harris_ §

On this _15_ day of _March_, 2005, before me, a Notary Public, personally appeared _Claude V. Perrier, III_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _Manager_ of _Henican Terrebonne_ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _7/9/05_

JUDY L FALCON
NOTARY PUBLIC
_ Texas
_ _ _ 05

WITNESSES:

_____

Name: _____

_____

Name: _____

LESSOR:

APACHE CORPORATION, Agent for
APACHE LOUISIANA MINERALS, INC.

By: _____
C. R. Harden
Attorney-in-Fact

STATE OF TEXAS §
§
COUNTY OF HARRIS §

On this __ day of _____, 2005, before me, a Notary Public, personally appeared C. R. Harden, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent for APACHE LOUISIANA MINERALS, INC. and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

_____
Notary Public

My Commission Expires: _____

544

**Return to top**

WITNESSES:

_____
Name: _____

_____
Name: _____

LESSOR:

HENICAN TERREBONNE PROPERTY, LLC

By: _____
Name: _____
　　　　　　General Partner

STATE OF TEXAS　　　§
　　　　　　　　　　§
COUNTY OF _____　§

　　　On this ___ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

　　　　　　　　　　　　　_____
　　　　　　　　　　　　　Notary Public

My Commission Expires: _____

WITNESSES:

_Wel N. Keewls_
Name: _Wes W. Reeves_

_Rock E. Gor_
Name: _Rod Eater_

LESSOR:

APACHE CORPORATION, Agent for
APACHE LOUISIANA MINERALS, INC.

By: _C. R. Harden_
　　　　C. R. Harden
　　　　Attorney-in-Fact

STATE OF TEXAS　　　§
　　　　　　　　　　§
COUNTY OF HARRIS　　§

　　　On this 14th day of _March_, 2005, before me, a Notary Public, personally appeared C. R. Harden, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent for APACHE LOUISIANA MINERALS, INC. and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

　　　　　　　　　　　_Judy L. Falcon_
　　　　　　　　　　　Notary Public

My Commission Expires: _7/9/05_

JUDY L FALCON
NOTARY PUBLIC
Texas
4   05

545

-7-

Return to top

WITNESSES:

Name: _WEB W. REEVES_

Name: _Ros Predicator_

LESSOR:

LALA LAND LEASING, LLC

By: _Claude V. Perrier_

Name: _Claude V. Perrier, IV_

        Manager

STATE OF TEXAS     §
                      §
COUNTY OF _HARRIS_   §

       On this _15_ day of _March_, 2005, before me, a Notary Public, personally appeared _Claude V. Perrier, IV_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _Manager_ of _Lala Land LLC_, and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

                        _Judy L. Falcon_
                        Notary Public

My Commission Expires: _7/9/05_

                    JUDY L FALCON
                    NOTARY PUBLIC
                    State of Texas

WITNESSES:

Name: _____

Name: _____

LESSOR:

LALA LAND LEASING, LLC

By: _____
Name: _____
        Manager

STATE OF VIRGINIA   §
                      §
COUNTY OF _____ §

       On this ___ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

                    _____
                    Notary Public

My Commission Expires: _____

Q_ 546

-8-

**Return to top**

WITNESSES:

Name: _Wes W. Reeves_

Name: _Rod Eaton_

LESSOR:

LALA LAND LEASING, LLC

By: _____

Name: _Claude V. Perrer, IV_

        Manager

STATE OF TEXAS          §
                        §
COUNTY OF _Harris_      §

On this _15_ day of _March_, 2005, before me, a Notary Public, personally appeared _Claude V. Perrer, IV_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _Manager_ of _Lala Land LLC_ and that _LLC._ the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _7/9/05_

JUDY L FALCON
NOTARY PUBLIC
State of Texas
... 974 ... 2005

WITNESSES:

_Susan C. Fife_
Name: _Susan C. Fife_

_Katherine F. King_
Name: _Katherine F. King_

LESSOR:

LALA LAND LEASING, LLC

By: _____

Name: _CJ Stewart Thomas IV_

        Manager

STATE OF VIRGINIA       §
City                    §
COUNTY OF _Staunton_    §

On this _17th_ day of _March_, 2005, before me, a Notary Public, personally appeared _CJ Stewart Thomas IV_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _Manager_ of _Lala Land Leasing, LLC_ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _8-31-06_

**547**

Book:  1919  Page:   535  File #: 1211388  Seq: 13

**Return to top**

WITNESSES:                                   LESSOR:

Mary Alice Allen
Name: MARY ALICE ALLEN             LALA LAND LEASING, LLC

J D M                                        By: _____
Name: Jeremy Brennesbauser           Name: Cooper Manning
                                                      Manager

STATE OF LOUISIANA      §
                                       §
                                       §
PARISH OF Orleans       §

   On this 17th day of March, 2005, before me, a Notary Public, personally appeared
Cooper Manning to me personally known, who being by me duly sworn did say, to me and
the two competent witnesses who signed their names next to Appearer on the foregoing at the
same time __he did, that __he is the manager of Hamam Wunbury and that
the foregoing instrument was signed in behalf of said limited partnership by authority of its Board
of Directors and said Appearer acknowledged said instrument to be the free act and deed of said
limited partnership.

                                       _____
                                       Notary Public
                                       Ellen H Manning
My Commission Expires: at death        # 9312A

                    ELLEN HEIDINGSFELDER MANNING
                        Notary Public for Parish of Orleans
                              State of Louisiana
                        My Commission Issued for Life

ïj   548

–9–

EXHIBIT "A"

**Return to top**

Attached to certain Voluntary Unit Agreement dated March ___, 2005, by and between Henican
Terrebonne Property, L.L.C., et al, as Lessors,
and Apache Corporation, et al, as Lessees

### List of Leases Contributing Acreage to the
### Apache Louisiana Minerals, Inc. 3 - #1 VUA

1. L-97164

   Partial Sublease of Oil, Gas and Mineral Lease dated June 16, 2004, from LaLa Land, LLC, as Sublessor to Apache Corporation, as Sublessee, recorded in Conveyance Book 1886, under Entry No. 1190877 of the records of Terrebonne Parish, Louisiana, as amended by that certain Amendment to Partial Sublease of Oil, Gas and Mineral Lease dated effective June 16, 2004, recorded in Conveyance Book 1902, under Entry No. 1200721 of the records of Terrebonne Parish, Louisiana; which is subject to that certain Oil and Gas Lease from Henican Terrebonne Property, LLC, as Lessor to LaLa Land Leasing, LLC, as Lessee, dated June 15, 2004, recorded in Conveyance Book 1875, under Entry No. 1184108 of the records of Terrebonne Parish, Louisiana.

2. L-90007708/A5

   Oil and Gas Lease dated November 2, 2004, from Apache Louisiana Minerals, Inc., to Castex Energy 1995, L.P., recorded in Conveyance Book 1897, under Entry No. 1197593 of the records of Terrebonne Parish, Louisiana.

3. L-2430240

   Oil, Gas and Mineral Lease dated May 28, 1952, by and between La Terre Co., Inc., as Lessor, and The Superior Oil Company, as Lessee, recorded in COB 187, Entry No. 11086 of the records of Terrebonne Parish, Louisiana.

4. L-90007708/A6

   Oil and Gas Lease dated November 2, 2004, from Apache Louisiana Minerals, Inc., to Apache Corporation, recorded in Conveyance Book 1899, under Entry No. 1199183 of the records of Terrebonne Parish, Louisiana.

### Description of lands within Apache Louisiana Minerals, Inc. 3 - #1 VUA

See the description set forth in Exhibit "B" hereto.

549

Return to top



**VOLUNTARY UNIT**

━ ━ ━ ━ ━ ━ ━ ━ ━

TRACT 1

TRACT 2

TRACT 3

# EXHIBIT "B"

*Attached to and made a part of that certain Voluntary Unit Agreement*
*dated _____, 2005, by and among Apache Corporation*
*and BP America Production Company, et al.*

**BAYOU PENCHANT NORTHWEST**
**TERREBONNE PH., LOUISIANA**

# EXHIBIT T

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
Clerk Of Court
P.O. Box 1569
Houma, La 70361-1569
(985) 868-5660

Return to top

**Received From :**
ENERGY PARTNERS LIMITED LTD
201 ST CHARLES AVENUE, SUITE 3400
ATTN: KEITH VINCENT
NEW ORLEANS, LA 70170

**First VENDOR**
APACHE LOUISIANA MINERALS INC

**First VENDEE**
EPL OF LOUISIANA L L C

Index Type : Conveyances                    File # : 1217076

Type of Document : Agreement

                                            Book : 1930      Page : 144

Recording Pages :              9

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Terrebonne Parish, Louisiana

_Robt Boudreaux_
Clerk Of Court

On (Recorded Date) : 08/10/2005

At (Recorded Time) : 10:20:01:000 AM

Doc ID - 004257830009

**Return To :**
ENERGY PARTNERS LIMITED LTD
201 ST CHARLES AVENUE, SUITE 3400
ATTN: KEITH VINCENT
NEW ORLEANS, LA 70170

                                            **144**

Do not Detach this Recording Page from Original Document

**Return to top**

**VOLUNTARY UNIT AGREEMENT**
**Apache Louisiana Minerals, Inc. 36 - #1 VUA**
**Lirette Field**
**Terrebonne Parish, Louisiana**

STATE OF LOUISIANA
PARISH OF TERREBONNE

THIS AGREEMENT made and entered into this 19th day of July, 2005, by and between:

**APACHE LOUISIANA MINERALS, INC.,** whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056,

hereinafter referred to as "Lessor,"

**EPL OF LOUISIANA, L.L.C.,** whose address is 201 Saint Charles Ave., Suite 3400, New Orleans, Louisiana 70170, and

**APACHE CORPORATION,** whose address is 2000 Post Oak Blvd., Ste. 100, Houston, Texas 77056; and

hereinafter collectively referred to as "Lessees,"

WHEREAS, Lessees are the owners of those certain leases set forth on Exhibit "A" attached hereto and made a part hereof, said leases hereinafter being referred to as the "Subject Leases"; and

WHEREAS, in the interest of conservation and for their mutual benefit, Lessees and Lessors desire to pool, combine and unitize their separately owned interests and rights in all or a portion of the Subject Leases for the exploration for and production of oil, gas and other associated hydrocarbons from the "Voluntary Unit" herein created.

NOW, THEREFORE, in consideration of the mutual benefits and advantages resulting from the execution hereof, Lessees and Lessors, by these presents, do hereby create for the exploration and production of oil, gas and other hydrocarbons, a pooled unit designated as the Apache Louisiana Minerals, Inc. 36- #1 Voluntary Unit consisting of 154.08 acres, more or less, as described in Exhibit "A" and depicted on the plat attached hereto as Exhibit "B" and made a part hereof, **LIMITED** however from the surface of the earth down to the stratigraphic equivalent of the base of the Pelican Sand as encountered between the measured depths of 11,056' and 11,250' as seen in the Castex Energy, ALMI 36-#1 Well, located in Section 36, Township 19 South, Range 19 East , Terrebonne Parish, Louisiana.

The Voluntary Unit shall be subject to the following terms and conditions:

1.

**145**

The area of participation for each of the Subject Leases in any and all production from the Voluntary Unit is defined in Exhibit "A" and depicted on Exhibit "B".

Return to top

2.

The commencement of actual drilling operations, shutting-in, reworking, or production of oil, gas and any other liquid or gaseous hydrocarbon minerals from a well located on or traversing through any portion of the Voluntary Unit, or bottomed under the Voluntary Unit, shall have the same effect upon the Subject Leases as if such operations were actually commenced or conducted on, or such wells were drilled, shut-in, or reworked, or were producing from, the area covered by each of the Subject Leases included within the geographic boundaries of the Voluntary Unit.

3.

There shall be no obligation on the part of the Lessees to the Subject Leases to drill any well or wells on one area of the Voluntary Unit to offset another well or wells drilled on any other area within the Voluntary Unit. The Voluntary Unit may be drilled, developed and operated for the production of oil, gas, and any other liquid or gaseous hydrocarbon minerals as a single unitized operation without reference to the boundary line or lines separating the Subject Leases within the Voluntary Unit. Separate measuring, receiving, or storage tanks shall only be required upon the written agreement of all parties hereto.

4.

Notwithstanding anything contained herein to the contrary, in the event of production of oil, gas and any other liquid or gaseous hydrocarbon minerals from any well located on any portion of the Voluntary Unit, it is agreed that, subject to that certain Operating Agreement dated June 15, 2004, by and among Apache Corporation and Castex Energy Inc., predecessor in interest of EPL of Louisiana, L.L.C., the ownership of the production by the Lessees shall be as follows:

| Lessees | Percentage |
|---|---|
| EPL of Louisiana, L.L.C. | 50% |
| Apache Corporation | 50% |

As to the Voluntary Unit, in lieu of the royalties and overriding royalties which the individual owners thereof would otherwise be entitled to receive by virtue of the Subject Leases, such owners shall receive and accept, out of the production or the proceeds of production from the Voluntary Unit, such portion of said royalties or overriding royalties as the number of surface acres covered by the applicable lease and included in the geographic boundaries of the Voluntary Unit bears to the total number of surface acres included within the geographic boundaries of the Voluntary Unit. Royalties and overriding royalties accruing hereunder shall be paid in the same manner and subject to the same conditions as stipulated in the applicable lease.

146

**Return to top**

5.

The parties hereto agree that the foregoing provisions hereof are just, fair, equitable and proper, and are to their mutual benefit and advantage, and that the foregoing division and apportionment shall be and remain binding until such time during the term of the Voluntary Unit, that any party shall establish by definitive judgment of a court of competent jurisdiction, or any other lawful manner, the exact limits of their claimed ownership, after which time but not retroactively, the divisions or apportionment of interests within the Voluntary Unit shall be in proportion to the ownership, as so established, within the geographic limits of the Voluntary Unit. If at any time, any question or litigation should arise as to the ownership of any part of the Subject Leases or as to any boundary or limit of any part of the separate interests covered by the Subject Leases hereinabove described, neither this agreement, nor any of the data, maps, or exhibits considered in connection herewith, whether attached hereto or not, nor any course of conduct followed by any party hereto pursuant to the Voluntary Unit shall ever be considered to be or permitted to serve as a basis of estoppel against any party hereto or prevent any party hereto from establishing its ownership, or having the boundaries or limits of its interests determined, in any lawful manner, anything herein contained to the contrary notwithstanding.

6.

Neither the creation of the Voluntary Unit, nor anything herein contained, is intended to imply that the area comprising the Voluntary Unit will, or will not, be efficiently and economically drained by one well.

7.

Except to the extent herein expressly provided, nothing herein contained shall be construed as altering or otherwise changing in any manner any of the terms or provisions of the Subject Leases.

8.

This Agreement shall remain in effect so long as all the Subject Leases remain in full force and effect as to the unitized interval within the boundaries of the Voluntary Unit herein created or as the Voluntary Unit may be subsequently revised. In the event that Lessees release any depths or intervals covered by the Subject Leases and subject hereto, then said released depths and intervals shall no longer be subject to this Agreement.

9.

It is expressly understood and agreed that any party to the Voluntary Unit may at any time call for a unit hearing with the Louisiana Office of Conservation and if any unit or units are created after the effective date of the Voluntary Unit by the Louisiana Office of Conservation by formal order, after public hearing, affecting a defined sand or zone included within the interval herein unitized and underlying any part of the Subject Leases included within the geographic

-3-                                        147

Return to top

boundaries of the Voluntary Unit, such unit or units created by the Louisiana Office of Conservation shall automatically supersede and entirely replace the Voluntary Unit as to such sand or zone unitized in said order as of the effective date of the order.

10.

The Voluntary Unit Agreement may be executed in any number of counterparts and shall be binding upon the parties, their successors and assigns, only when all parties hereto execute said agreement.

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first set forth in the attached acknowledgments but effective as of the date hereinabove set forth.

WITNESSES:                                    LESSEE:

Name: Cindy Lowrance                          EPL OF LOUISIANA, L.L.C.

                                              By: _____
Name: Eileen B. Coffey                        Name: L. Keith Vincent
                                              Title: Vice President, Land


WITNESSES:                                    LESSEE:

Name: Rod Eaton                               APACHE CORPORATION

                                              By: _____
Name: Wes W. Reeves                                   C. R. Harden
                                                      Attorney-in-Fact


WITNESSES:                                    LESSOR:

Name: Rod Eaton                               APACHE CORPORATION, Agent for
                                              APACHE LOUISIANA MINERALS, INC.

                                              By: _____
Name: Wes W. Reeves                                   C. R. Harden
                                                      Attorney-in-Fact


-4-                          148

**Return to top**

STATE OF TEXAS       §
                     §
COUNTY OF HARRIS     §

      On this _29th_ day of _July_____, 2005, appeared C. R. Harden to me personally known, who being by me duly sworn, did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact for APACHE CORPORATION, agent for APACHE LOUISIANA MINERALS, INC., and that the instrument was signed on behalf of the corporation by authority of its Board of Directors and that Appearer acknowledged the instrument to be the free act and deed of the corporation.

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

_____
Notary Public, State of Texas

**149**

**Return to top**

STATE OF LOUISIANA     §
                            §

PARISH OF ORLEANS     §

On this /9th day of July, 2005, before me, a Notary Public, personally appeared L. Keith Vincent, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time he did, that he is the Vice President, Land of EPL of Louisiana, L.L.C. and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

James L. Alcock, Jr  Notary Public
Notary Public, State of Louisiana
My Commission is issued for life.
My Commission Expires: _____ Bar Roll # 18758

STATE OF TEXAS     §
                    §

COUNTY OF HARRIS     §

On this 29th day of July, 2005, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

Notary Public

My Commission Expires: _____

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

STATE OF TEXAS     §
                    §

COUNTY OF HARRIS     §

On this 29th day of July, 2005, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

Notary Public

My Commission Expires: _____

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

-5-

OR 150

**Return to top**

EXHIBIT "A"

Attached to certain Voluntary Unit Agreement dated July 19th, 2005, by and between Apache
Louisiana Minerals, Inc, et al, as Lessor,
and EPL of Louisiana, L.L.C., et al, as Lessees

**List of Leases Contributing Acreage to the
Apache Louisiana Minerals, Inc. 36- #1 VUA**

1.   Oil and Gas Lease dated November 2, 2004, from Apache
     Louisiana Minerals, Inc., to Castex Energy, Inc., covering an
     undivided fifty percent (50%) interest, a Declaration of Oil and
     Gas Lease being, recorded in Conveyance Book 1885, under Entry
     No. 1190241 of the records of Terrebonne Parish, Louisiana.

2.   Oil and Gas Lease dated November 2, 2004, from Apache
     Louisiana Minerals, Inc., to Apache Corporation, covering an
     undivided fifty percent (50%) interest, a Declaration of Oil and
     Gas Lease being recorded in Conveyance Book _1915_,
     under Entry No. _1209170_ of the records of Terrebonne Parish,
     Louisiana.

**Description of lands within Apache Louisiana Minerals, Inc. 36- #1 VUA**

See the description set forth in Exhibit "B" hereto.

**151**

Return to top



EXHIBIT "B"
ENERGY PARTNERS, LTD
APACHE LOUISIANA MINERALS, INC.
36 #1 WELL VUA
LIRETTE FIELD
TERREBONNE PARISH, LOUISIANA.

| DRAWN BY: | J NAQUIN |
| DATE: | JULY 15, 2005 |
| SHEET No.: | 1 OF 1 |
| APPROVED BY: | T ALLEN |
| CAD FILE No.: | 2005-048A.DWG |

**ENERGY PARTNERS, LTD.**
201 ST. CHARLES AVENUE, SUITE 3400
NEW ORLEANS, LOUISIANA 70170

**EPL**
ENERGY PARTNERS, LTD

Q 152

# EXHIBIT U

## Terrebonne Parish Recording Page

**I. Robert "Bobby" Boudreaux**
Clerk Of Court
P.O. Box 1569
Houma, La 70361-1569
(985) 868-5660

Return to top

**Received From :**
BRADLEY BROUSSARD LAND SERVICES INC
ATTN: RICHARD MURFF
P. O. BOX 52826
LAFAYETTE, LA 70505

**First VENDOR**

| APACHE LOUISIANA MINERALS INC |
| --- |

**First VENDEE**

| APACHE CORPORATION |
| --- |

Index Type : Conveyances                    File # : 1217083

Type of Document : Agreement

                                           Book : 1930        Page : 158

Recording Pages :          14

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Terrebonne Parish, Louisiana

*[signature]*
Clerk Of Court

On (Recorded Date) : 08/10/2005

At (Recorded Time) : 11:03:27:000 AM

Doc ID - 004257900014

**Return To :**
BRADLEY BROUSSARD LAND SERVICES INC
ATTN: RICHARD MURFF
P. O. BOX 52826
LAFAYETTE, LA 70505

158

Do not Detach this Recording Page from Original Document

**Return to top**

**VOLUNTARY UNIT AGREEMENT**
Henican Terrebonne Property, L.L.C. 31 - #1 VUA
**APACHE CORPORATION**
**Palmetto Bayou Field**

STATE OF LOUISIANA
PARISH OF TERREBONNE

THIS AGREEMENT made and entered into this 29th day of July, 2005, by and between:

**HENICAN TERREBONNE PROPERTY, LLC**, whose address is 50 Briar Hollow, Suite 410 West, Houston, Texas 77027; and

**LALA LAND LEASING, LLC**, whose address is 50 Briar Hollow, Suite 410 West, Houston, Texas 77027; and

**APACHE LOUISIANA MINERALS, INC.,** whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056,

hereinafter collectively referred to as "Lessors,"

**APACHE CORPORATION,** whose address is 2000 Post Oak Blvd., Ste. 100, Houston, Texas 77056; and

**EPL OF LOUISIANA, L.L.C.,** whose address is 201 Saint Charles Ave., Suite 3400, New Orleans, Louisiana 70170,

hereinafter collectively referred to as "Lessees,"

WHEREAS, Lessees are the owners of those certain leases set forth on Exhibit "A" attached hereto and made a part hereof, said leases hereinafter being referred to as the "Subject Leases"; and

WHEREAS, in the interest of conservation and for their mutual benefit, Lessees and Lessors desire to pool, combine and unitize their separately owned interests and rights in all or a portion of the Subject Leases for the exploration for and production of oil, gas and other associated hydrocarbons from the "Voluntary Unit" herein created.

NOW, THEREFORE, in consideration of the mutual benefits and advantages resulting from the execution hereof, Lessees and Lessors, by these presents, do hereby create for the exploration and production of oil, gas and other hydrocarbons, a pooled unit designated as the Henican Terrebonne Property, L.L.C. 31 - #1 Voluntary Unit consisting of 242.00 acres, more or less, as described in Exhibit "A" and depicted on the plat attached hereto as Exhibit "B" and made a part hereof, **LIMITED** however to the stratigraphic equivalent of 11,060' to 11,190' true vertical depth (as measured in the Henican Terrebonne Property, L.L.C. 31 #1 well, located in Section 6, Township 19 South, Range 13 East).

The Voluntary Unit shall be subject to the following terms and conditions:

159

**Return to top**

1.

The area of participation for each of the Subject Leases in any and all production from the Voluntary Unit is defined in Exhibit "A" and depicted on Exhibit "B".

2.

The commencement of actual drilling operations, shutting-in, reworking, or production of oil, gas and any other liquid or gaseous hydrocarbon minerals from a well located on or traversing through any portion of the Voluntary Unit, or bottomed under the Voluntary Unit, shall have the same effect upon the Subject Leases as if such operations were actually commenced or conducted on, or such wells were drilled, shut-in, or reworked, or were producing from, the area covered by each of the Subject Leases included within the geographic boundaries of the Voluntary Unit.

3.

There shall be no obligation on the part of the Lessees to the Subject Leases to drill any well or wells on one area of the Voluntary Unit to offset another well or wells drilled on any other area within the Voluntary Unit. The Voluntary Unit may be drilled, developed and operated for the production of oil, gas, and any other liquid or gaseous hydrocarbon minerals as a single unitized operation without reference to the boundary line or lines separating the Subject Leases within the Voluntary Unit. Separate measuring, receiving, or storage tanks shall only be required upon the written agreement of all parties hereto.

4.

Notwithstanding anything contained herein to the contrary, in the event of production of oil, gas and any other liquid or gaseous hydrocarbon minerals from any well located on any portion of the Voluntary Unit, it is agreed that, subject to that certain Operating Agreement dated November 2, 2004, by and among Apache Corporation and EPL Louisiana, L.L.C., the ownership of the production by the Lessees shall be as follows:

| Lessees | Percentage |
|---|---|
| Apache Corporation | 50% |
| EPL of Louisiana, L.L.C. | 50% |

As to the Voluntary Unit, in lieu of the royalties and overriding royalties which the individual owners thereof would otherwise be entitled to receive by virtue of the Subject Leases, such owners shall receive and accept, out of the production or the proceeds of production from the Voluntary Unit, such portion of said royalties or overriding royalties as the number of surface acres covered by the applicable lease and included in the geographic boundaries of the Voluntary Unit bears to the total number of surface acres included within the geographic boundaries of the

$\overline{\underline{\mathbb{Q}}}$. **160**

-2-

**Return to top**

Voluntary Unit. Royalties and overriding royalties accruing hereunder shall be paid in the same manner and subject to the same conditions as stipulated in the applicable lease.

5.

The parties hereto agree that the foregoing provisions hereof are just, fair, equitable and proper, and are to their mutual benefit and advantage, and that the foregoing division and apportionment shall be and remain binding until such time during the term of the Voluntary Unit, that any party shall establish by definitive judgment of a court of competent jurisdiction, or any other lawful manner, the exact limits of their claimed ownership, after which time but not retroactively, the divisions or apportionment of interests within the Voluntary Unit shall be in proportion to the ownership, as so established, within the geographic limits of the Voluntary Unit. If at any time, any question or litigation should arise as to the ownership of any part of the Subject Leases or as to any boundary or limit of any part of the separate interests covered by the Subject Leases hereinabove described, neither this agreement, nor any of the data, maps, or exhibits considered in connection herewith, whether attached hereto or not, nor any course of conduct followed by any party hereto pursuant to the Voluntary Unit shall ever be considered to be or permitted to serve as a basis of estoppel against any party hereto or prevent any party hereto from establishing its ownership, or having the boundaries or limits of its interests determined, in any lawful manner, anything herein contained to the contrary notwithstanding.

6.

Neither the creation of the Voluntary Unit, nor anything herein contained, is intended to imply that the area comprising the Voluntary Unit will, or will not, be efficiently and economically drained by one well.

7.

Except to the extent herein expressly provided, nothing herein contained shall be construed as altering or otherwise changing in any manner any of the terms or provisions of the Subject Leases.

8.

This Agreement shall remain in effect so long as all the Subject Leases remain in full force and effect as to the unitized interval within the boundaries of the Voluntary Unit herein created or as the Voluntary Unit may be subsequently revised. In the event that Lessees release any depths or intervals covered by the Subject Leases and subject hereto, then said released depths and intervals shall no longer be subject to this Agreement.

9.

It is expressly understood and agreed that any party to the Voluntary Unit may at any time call for a unit hearing with the Louisiana Office of Conservation and if any unit or units are created after the effective date of the Voluntary Unit by the Louisiana Office of Conservation by

 **161**

-3-

**Return to top**

formal order, after public hearing, affecting a defined sand or zone included within the interval herein unitized and underlying any part of the Subject Leases included within the geographic boundaries of the Voluntary Unit, such unit or units created by the Louisiana Office of Conservation shall automatically supersede and entirely replace the Voluntary Unit as to such sand or zone unitized in said order as of the effective date of the order.

10.

The Voluntary Unit Agreement may be executed in any number of counterparts and shall be binding upon the parties, their successors and assigns, only when all parties hereto execute said agreement.

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first set forth in the attached acknowledgments but effective as of the date hereinabove set forth.

WITNESSES:

Name: _____

Name: _Wes W. Reburs_

LESSEE:

APACHE CORPORATION

By: _C. R. Harden_
          C. R. Harden
          Attorney-in-Fact

STATE OF TEXAS     §
                         §
COUNTY OF HARRIS   §

On this 29th day of July, 2005, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

_Judy L. Falcon_
Notary Public

My Commission Expires: _7/9/09_

> JUDY L. FALCON
> Notary Public, State of Texas
> My Commission Expires 07-09-2009

U 162

-4-

**Return to top**

WITNESSES:

*Cindy P. Lowrance*

Name: Cindy P. Lowrance

*(signature)*

Name: Valerie A. Ulrich

LESSEE:

EPL OF LOUISIANA, L.L.C.

By: _____

Name: John H. Peper

Title: Executive Vice President, General Counsel and Corporate Secretary

STATE OF LOUISIANA §
§
PARISH OF ORLEANS §

On this 3rd day of August , 2005, before me, a Notary Public, personally appeared John H. Peper , to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the Executive Vice President, General Counsel & of EPL of Louisiana, L. and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

**James L. Alcock, Jr**
**Notary Public, State of Louisiana**
My Commission Expires: My Commission is issued for life.
**Bar Roll # 18758**

_____
Notary Public

WITNESSES:

_____
Name: _____

_____
Name: _____

LESSOR:

HENICAN TERREBONNE PROPERTY, LLC

By: _____
Name: _____
       Manager

STATE OF VIRGINIA §
§
COUNTY OF _____ §

On this ___ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _____

163

-5-

**Return to top**

WITNESSES:

Name: Rodecton

Name: Wm W. Reeves

LESSOR:

APACHE CORPORATION, Agent for
APACHE LOUISIANA MINERALS, INC.

By: _C. R. Harden_
      C. R. Harden
      Attorney-in-Fact

STATE OF TEXAS      §
                §
COUNTY OF HARRIS    §

    On this 9th day of July , 2005, before me, a Notary Public, personally appeared C. R. Harden, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent for APACHE LOUISIANA MINERALS, INC. and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

                               _Judy L. Falcon_
                               Notary Public

My Commission Expires: ___7/9/09___

                                    JUDY L. FALCON
                              Notary Public, State of Texas
                          My Commission Expires 07-09-2009

WITNESSES:

Name: _____

Name: _____

LESSOR:

LALA LAND LEASING, LLC

By: _____
Name: _____
           Manager

STATE OF TEXAS      §
                §
COUNTY OF _____    §

    On this ___ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

                        _____
                        Notary Public

My Commission Expires: _____

164

**Return to top**

WITNESSES:

Name: _Fred Eaton_

Name: _Wes W. Reeves_

LESSOR:

APACHE CORPORATION, Agent for
APACHE LOUISIANA MINERALS, INC.

By: _C. R. Harden_
           C. R. Harden
           Attorney-in-Fact

STATE OF TEXAS     §
                    §
COUNTY OF HARRIS   §

On this 29th day of _July_, 2005, before me, a Notary Public, personally appeared C. R. Harden, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent for APACHE LOUISIANA MINERALS, INC. and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

_Judy L. Falcon_
Notary Public

My Commission Expires: _7/9/09_

JUDY L. FALCON
Notary Public, State of Texas
My Commission Expires 07-09-2009

WITNESSES:

Name: _Gwen Bray_

Name: _Bill Forney_

LESSOR:

LALA LAND LEASING, LLC

By _____
Name: _Eleanor V. Ferriter_
        Manager

STATE OF TEXAS     §
                    §
COUNTY OF _Harris_ §

On this 9 day of _August_, 2005, before me, a Notary Public, personally appeared _Eleanor V. Ferriter_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _Manager_ of _LaLa Land_ LC and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_Judy L. Falcon_
Notary Public

My Commission Expires: _7/9/09_

JUDY L. FALCON
Notary Public, State of Texas
My Commission Expires 07-09-2009

**165**

-7-

**Return to top**

WITNESSES:

Name: _Javonte Brown_

Name: _Holly Silva_

LESSOR:

HENICAN TERREBONNE PROPERTY, LLC

By: _____

Name: _Cooper A. Manning_
Manager

STATE OF LOUISIANA    §
                      §
PARISH OF _Mans_      §

On this 30th day of _August_, 2005, before me, a Notary Public, personally appeared _Cooper A. Manning_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __ he did, that __ he is the _MANAGER_ of _HENICAN TERREBONNE_ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

ELLEN HEIDINGSFELDER MANNING
Public for Parish of Orleans
State of Louisiana
Commission Issued for Life
My Commission Expires: _at death_

_____
Notary Public
_Ellen H Manning_
# 23124

WITNESSES:

Name: _Evan Bray_

Name: _Ben Fuqua_

LESSOR:

HENICAN TERREBONNE PROPERTY, LLC

By: _____

Name: _Claude L. Penick, III_
Manager

STATE OF TEXAS      §
                    §
COUNTY OF _Harris_  §

On this 9 day of _August_, 2005, before me, a Notary Public, personally appeared _Claude V. Penick, III_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __ he did, that __ he is the _Manager_ of _Henican Terre_ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _7/9/09_

JUDY L. FALCON
Notary Public, State of Texas
My Commission Expires 07-09-2009

166

-6-

**Return to top**

WITNESSES:

Name: _Tammi Ramsey_

Name: _CAITLIN K PACK_

LESSOR:

LALA LAND LEASING, LLC

By: _____
Name: _Steven Thomas_
          Manager

STATE OF VIRGINIA          §
~~County~~ City OF _Staunton_  §
                          §

On this 31 day of _August_, 2005, before me, a Notary Public, personally appeared _Steven Thomas_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _MANAGER_ of _LALA LAND LE_ and that _LLC_ the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_Sammy J Webb_
Notary Public

My Commission Expires: _8·31·06_


WITNESSES:

Name: _____

Name: _____

LESSOR:

LALA LAND LEASING, LLC

By: _____
Name: _____
          Manager

STATE OF LOUISIANA          §
                            §
PARISH OF _____      §

On this ___ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _____

-8-

Q 167

**Return to top**

WITNESSES:

Name: _____

Name: _____

LESSOR:

LALA LAND LEASING, LLC

By: _____
Name: _____
        Manager

STATE OF VIRGINIA        §
                         §
COUNTY OF _____      §

   On this ___ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _____

WITNESSES:

Name: _Javonka Brown_

Name: _Nelly Silva_

LESSOR:

LALA LAND LEASING, LLC

By: _____
Name: _Cooper A. Manning_
        Manager

STATE OF LOUISIANA       §
                         §
PARISH OF _Orleans_      §

   On this ___ day of _August_, 2005, before me, a Notary Public, personally appeared _Cooper A. Manning_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _Manager_ of _LALA LAND LEASING LLC_ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public
_Ellen H. Manning_
# 23124

My Commission Expires: _at death_

ELLEN HEIDINGSFELDER MANNING
Notary Public for Parish of Orleans
State of Louisiana
My Commission Issued for Life

-8-

5  168

**Return to top**

WITNESSES:                        LESSOR:

_____           LALA LAND LEASING, LLC
Name: _____

_____           By: _____
Name: _____            Name: _____
                                          Manager


STATE OF VIRGINIA          §
                           §
COUNTY OF _____      §

On this ___ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

.

                           _____
                                Notary Public

My Commission Expires: _____


WITNESSES:                        LESSOR:

_____           LALA LAND LEASING, LLC
Name: _____

_____           By: _____
Name: _____            Name: _____
                                          Manager


STATE OF LOUISIANA         §
                           §
PARISH OF _____      §

On this ___ day of _____, 2005, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

.

                           _____
                                Notary Public

My Commission Expires: _____


**169**

Book:  1930   Page:    158   File #: 1217083   Seq: 12

**Return to top**

EXHIBIT "A"

Attached to certain Voluntary Unit Agreement dated July 29, 2005, by and among Henican
Terrebonne Property, L.L.C., et al, as Lessors,
and Apache Corporation, et al, as Lessees.

**List of Leases Contributing Acreage to the
Apache Louisiana Minerals, Inc. 31 - #1 VUA**

1.   Partial Sublease of Oil, Gas and Mineral Lease dated June 15,
     2004, from LaLa Land, LLC, as Sublessor to Castex Energy 1995,
     L.P., as Sublessee, recorded in Conveyance Book 1880, under
     Entry No. 1187165 of the records of Terrebonne Parish, Louisiana;
     which is subject to that certain Oil and Gas Lease from Henican
     Terrebonne Property, LLC, as Lessor to LaLa Land Leasing, LLC,
     as Lessee, dated June 15, 2004, recorded in Conveyance Book
     1875, under Entry No. 1184108 of the records of Terrebonne
     Parish, Louisiana.

2.   Oil and Gas Lease dated November 1, 2004, from Apache
     Louisiana Minerals, Inc., to Castex Energy 1995, L.P., recorded in
     Conveyance Book 1899, under Entry No. 1199022 of the records
     of Terrebonne Parish, Louisiana.

3.   Oil and Gas Lease dated November 1, 2004, from Apache
     Louisiana Minerals, Inc., to Apache Corporation, recorded in
     Conveyance Book 1899, under Entry No. 1199180 of the records
     of Terrebonne Parish, Louisiana.

**Description of lands within Henican Terrebonne Property, L.L.C. 31- #1 VUA**

See the description set forth in Exhibit "B" hereto.

0. 170

**Return to top**

**EXHIBIT "B"**

Attached to and made a part of that certain Voluntary Unit Agreement
dated July 29, 2005, by and among Henican Terrebonne Property, L.L.C., et al, as
Lessors, and Apache Corporation, et al, as Lessees.



# EXHIBIT V

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
Clerk Of Court
P.O. Box 1569
Houma, La  70361-1569
(985) 868-5660

**Return to top**

**Received From :**
BROUSSARD BRADLEY  LAND SERVICES INC
P.O. BOX 52826
LAFAYETTE, LA  70506

**First VENDOR**
APACHE LOUISIANA MINERALS INC

**First VENDEE**
APACHE CORP

| | |
|---|---|
| **Index Type :**  Conveyances | **File # :** 1249454 |
| **Type of Document :** Amended Mineral Lease | |
| | **Book :** 1995     **Page :** 728 |
| **Recording Pages :**            4 | |

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Terrebonne Parish, Louisiana

_Robt B Boudreaux_
Clerk Of Court

On (Recorded Date) : 10/06/2006

At (Recorded Time) : 10:26:42:000 AM

Doc ID - 005002840004

**Return To :**
BROUSSARD BRADLEY  LAND SERVICES INC
P.O. BOX 52826
LAFAYETTE, LA  70506

728

Do not Detach this Recording Page from Original Document

## AMENDMENT TO OIL, GAS AND MINERAL LEASE

Return to top

STATE OF LOUISIANA

PARISH OF TERREBONNE

KNOW ALL MEN BY THESE PRESENTS THAT:

THIS AMENDMENT OF OIL, GAS AND MINERAL LEASE ("Amendment") is entered into this ___ day of September, 2006, by and between Apache Louisiana Minerals, Inc., ("Lessor") whose address is 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056 and Apache Corporation, whose mailing address is 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056, and BP America Production Company, (collectively "Lessee") whose address is 501 Westlake Park Boulevard, Houston, Texas 77079.

WHEREAS, by Oil, Gas and Mineral Lease ("Lease") dated May 28, 1952, and recorded in Book 188, Folio 246, Entry No. 110086, Records of Terrebonne Parish, Louisiana, La Terre Co., Inc. leased to The Superior Oil Company the land described on Page 2 of the Lease; and

WHEREAS, Lessor is the successor in title to La Terre Co., Inc., and Lessee is the successor in title to The Superior Oil Company.

WHEREAS, Lessor and Lessee desire to amend the Lease to cover additional land ("Additional Land").

NOW THEREFORE, in consideration of One Hundred Dollars ($100.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee does hereby amend the Lease so that the Lease will cover the land described therein and the land described below:

All of the following described Additional Land located in Terrebonne Parish, Louisiana, to wit:

Township 19 South, Range 13 East

Section 3:     South Half Southwest Quarter
Section 10:    North Half Northwest Quarter

LIMITED TO THE INTERVAL BETWEEN THE SURFACE OF THE EARTH AND THE STRATIGRAPHIC EQUIVALENT OF 12,402' AS SEEN IN THE APACHE LOUISIANA MINERALS, INC. 2 #1 WELL (API 17-10923867).

The Lease, insofar as it relates to the Additional Land, shall remain in force and effect from the day and year first above written until production from the Apache Louisiana, Inc. 2 # 1 Well (API 17-10923867) ("Well") ceases for a period of ninety (90) consecutive days, at which time the Lease insofar as it relates to the Additional Land shall automatically terminate unless Lessee commences additional reworking operations within ninety (90) days of cessation of production from

I

**729**

the Well. If such operations are continuously prosecuted with no cessation of more than ninety (90) consecutive days and result in the restoration of production in paying quantities, then the Lease insofar as it relates to the Additional Land shall remain in effect so long as oil or gas are produced from the Well in paying quantities. If such operations are not continuously prosecuted or production in paying quantities is not restored, the Lease insofar as it relates to the Additional Land shall automatically terminate and Lessee agrees to, execute and deliver to Lessor within sixty (60) days of such termination an instrument in recordable form, at no cost to Lessor, releasing the Additional Land to Lessor.

Except for the addition of the Additional Land to be added to the Lease pursuant to the above stated terms and conditions, all other terms and provisions of the Lease shall remain unchanged and in full force and effect.

For the same consideration recited above, Lessor does hereby CONFIRM, RATIFY AND ADOPT the Lease as herein amended and does hereby GRANT, LEASE and LET unto Lessee, its successors and assigns, the lands described in the Lease, as herein amended, in accordance with the terms of the Lease.

IN WITNESS WHEREOF, this Amendment to Oil, Gas and Mineral Lease has been executed as of the day and year first above written, but effective as of April 1, 2003.

**Return to top**

**LESSOR:**

WITNESSES:

Print Name: KRISTIN DAUGHERTY

Print Name: ROD EATON

**APACHE CORPORATION, Agent for
APACHE LOUISIANA MINERALS, INC.**

By: _____
    C. R. Harden
    Attorney-in-Fact

**LESSEE:**

WITNESSES:

Print Name: KRISTIN DAUGHERTY

Print Name: ROD EATON

**APACHE CORPORATION**

By: _____
    C. R. Harden
    Attorney-in-Fact

**LESSEE:**

WITNESSES:

Print Name: David K. Riddle

Print Name: George McLeaf

**BP AMERICA PRODUCTION COMPANY**

By: _____
    Stacey J. Garvin
    Attorney-in-Fact

2

**730**

ACKNOWLEDGEMENTS

**Return to top**

STATE OF TEXAS
COUNTY OF HARRIS

On this 8th day of September, 2006, appeared C. R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, agent for APACHE LOUISIANA MINERALS, INC. and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation



My Commission Expires _____

_____
Notary Public in and for the State of Texas

STATE OF TEXAS
COUNTY OF HARRIS

On this 8th day of September, 2006, appeared C. R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation



My Commission Expires _____

_____
Notary Public in and for the State of Texas

STATE OF TEXAS
COUNTY OF HARRIS

On this 1st day of September, 2006, appeared Stacey J. Garvin to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time he did, that he is the Attorney-in-Fact of BP AMERICA PRODUCTION COMPANY and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation

RICHARD C. MILLER
Notary Public, State of Texas
My Commission Expires
August 24, 2010

_____
Notary Public in and for the State of Texas

My Commission Expires _____

**Richard C. Miller**
**Commission # 1132966-2**

3

731

# EXHIBIT W

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
Clerk Of Court
P.O. Box 1569
Houma, La 70361-1569
(985) 868-5660

Return to top

**Received From :**
APACHE CORPORATION
2000 POST OAK BLVD, SUITE 100
HOUSTON, TX 77056-4400

**First VENDOR**
HENICAN TERREBONNE PROPERTY L L C

**First VENDEE**
APACHE CORPORATION

Index Type :   Conveyances                       File # : 1249755

Type of Document : Agreement

                                                  Book : 1996      Page : 446

Recording Pages :        13

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Terrebonne Parish, Louisiana

_Robt Boudreaux_
Clerk Of Court

On (Recorded Date) : 10/11/2006

At (Recorded Time) : 10:54:22:000 AM

Doc ID - 005014500013

Return To :
APACHE CORPORATION
2000 POST OAK BLVD, SUITE 100
HOUSTON, TX 77056-4400

**446**

Do not Detach this Recording Page from Original Document

**Return to top**

**VOLUNTARY UNIT AGREEMENT**
Henican Terrebonne Property, L.L.C. 31 - #1 VUA
**APACHE CORPORATION**
**Palmetto Bayou Field**

STATE OF LOUISIANA
PARISH OF TERREBONNE

THIS AGREEMENT made and entered into as of the date first set forth in the attached acknowledgments, by and between:

**HENICAN TERREBONNE PROPERTY, LLC**, whose address is 50 Briar Hollow, Suite 410 West, Houston, Texas 77027; and

**LALA LAND LEASING, LLC**, whose address is 50 Briar Hollow, Suite 410 West, Houston, Texas 77027; and

**APACHE LOUISIANA MINERALS, INC.**, whose address is 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056,

hereinafter collectively referred to as "Lessors,"

**APACHE CORPORATION**, whose address is 2000 Post Oak Blvd., Ste. 100, Houston, Texas 77056; and

**EPL LOUISIANA, L.L.C.**, whose address is 201 Saint Charles Ave., Suite 3400, New Orleans, Louisiana 70170,

hereinafter collectively referred to as "Lessees,"

WHEREAS, Lessees are the owners of those certain leases set forth on Exhibit "A" attached hereto and made a part hereof, said leases hereinafter being referred to as the "Subject Leases"; and

WHEREAS, in the interest of conservation and for their mutual benefit, Lessees and Lessors desire to pool, combine and unitize their separately owned interests and rights in all or a portion of the Subject Leases for the exploration for and production of oil, gas and other associated hydrocarbons from the "Voluntary Unit" herein created.

NOW, THEREFORE, in consideration of the mutual benefits and advantages resulting from the execution hereof, Lessees and Lessors, by these presents, do hereby create for the exploration and production of oil, gas and other hydrocarbons, a pooled unit designated as the Henican Terrebonne Property, L.L.C. 31 - #1 Voluntary Unit consisting of 242.00 acres, more or less, as described in Exhibit "A" and depicted on the plat attached hereto as Exhibit "B" and made a part hereof, **LIMITED** however to the stratigraphic equivalent of 11,060' to 11,190' true vertical depth (as measured in the Henican Terrebonne Property, L.L.C. 31 #1 well, located in Section 6, Township 19 South, Range 13 East).

The Voluntary Unit shall be subject to the following terms and conditions:



447

**Return to top**

1.

The area of participation for each of the Subject Leases in any and all production from the Voluntary Unit is defined in Exhibit "A" and depicted on Exhibit "B".

2.

The commencement of actual drilling operations, shutting-in, reworking, or production of oil, gas and any other liquid or gaseous hydrocarbon minerals from a well located on or traversing through any portion of the Voluntary Unit, or bottomed under the Voluntary Unit, shall have the same effect upon the Subject Leases as if such operations were actually commenced or conducted on, or such wells were drilled, shut-in, or reworked, or were producing from, the area covered by each of the Subject Leases included within the geographic boundaries of the Voluntary Unit.

3.

There shall be no obligation on the part of the Lessees to the Subject Leases to drill any well or wells on one area of the Voluntary Unit to offset another well or wells drilled on any other area within the Voluntary Unit. The Voluntary Unit may be drilled, developed and operated for the production of oil, gas, and any other liquid or gaseous hydrocarbon minerals as a single unitized operation without reference to the boundary line or lines separating the Subject Leases within the Voluntary Unit. Separate measuring, receiving, or storage tanks shall only be required upon the written agreement of all parties hereto.

4.

Notwithstanding anything contained herein to the contrary, in the event of production of oil, gas and any other liquid or gaseous hydrocarbon minerals from any well located on any portion of the Voluntary Unit, it is agreed that, subject to that certain Operating Agreement dated November 2, 2004, by and among Apache Corporation and EPL Louisiana, L.L.C., the ownership of the production by the Lessees shall be as follows:

| Lessees | Percentage |
|---|---|
| Apache Corporation | 50% |
| EPL Louisiana, L.L.C. | 50% |

As to the Voluntary Unit, in lieu of the royalties and overriding royalties which the individual owners thereof would otherwise be entitled to receive by virtue of the Subject Leases, such owners shall receive and accept, out of the production or the proceeds of production from the Voluntary Unit, such portion of said royalties or overriding royalties as the number of surface acres covered by the applicable lease and included in the geographic boundaries of the Voluntary Unit bears to the total number of surface acres included within the geographic boundaries of the

**448**

**Return to top**

Voluntary Unit. Royalties and overriding royalties accruing hereunder shall be paid in the same manner and subject to the same conditions as stipulated in the applicable lease.

5.

The parties hereto agree that the foregoing provisions hereof are just, fair, equitable and proper, and are to their mutual benefit and advantage, and that the foregoing division and apportionment shall be and remain binding until such time during the term of the Voluntary Unit, that any party shall establish by definitive judgment of a court of competent jurisdiction, or any other lawful manner, the exact limits of their claimed ownership, after which time but not retroactively, the divisions or apportionment of interests within the Voluntary Unit shall be in proportion to the ownership, as so established, within the geographic limits of the Voluntary Unit. If at any time, any question or litigation should arise as to the ownership of any part of the Subject Leases or as to any boundary or limit of any part of the separate interests covered by the Subject Leases hereinabove described, neither this agreement, nor any of the data, maps, or exhibits considered in connection herewith, whether attached hereto or not, nor any course of conduct followed by any party hereto pursuant to the Voluntary Unit shall ever be considered to be or permitted to serve as a basis of estoppel against any party hereto or prevent any party hereto from establishing its ownership, or having the boundaries or limits of its interests determined, in any lawful manner, anything herein contained to the contrary notwithstanding.

6.

Neither the creation of the Voluntary Unit, nor anything herein contained, is intended to imply that the area comprising the Voluntary Unit will, or will not, be efficiently and economically drained by one well.

7.

Except to the extent herein expressly provided, nothing herein contained shall be construed as altering or otherwise changing in any manner any of the terms or provisions of the Subject Leases.

8.

This Agreement shall remain in effect so long as all the Subject Leases remain in full force and effect as to the unitized interval within the boundaries of the Voluntary Unit herein created or as the Voluntary Unit may be subsequently revised. In the event that Lessees release any depths or intervals covered by the Subject Leases and subject hereto, then said released depths and intervals shall no longer be subject to this Agreement.

9.

It is expressly understood and agreed that any party to the Voluntary Unit may at any time call for a unit hearing with the Louisiana Office of Conservation and if any unit or units are created after the effective date of the Voluntary Unit by the Louisiana Office of Conservation by

**449**

-3-

**Return to top**

formal order, after public hearing, affecting a defined sand or zone included within the interval herein unitized and underlying any part of the Subject Leases included within the geographic boundaries of the Voluntary Unit, such unit or units created by the Louisiana Office of Conservation shall automatically supersede and entirely replace the Voluntary Unit as to such sand or zone unitized in said order as of the effective date of the order.

<div align="center">10.</div>

The Voluntary Unit Agreement may be executed in any number of counterparts and shall be binding upon the parties, their successors and assigns, only when all parties hereto execute said agreement.

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first set forth in the attached acknowledgments but effective as of November 2, 2005.

WITNESSES:

Name: _Ben Macchire_

Name: _Betty Gibbons_
**BETTY GIBBONS**

LESSEE:

APACHE CORPORATION

By: _C. R. Harden_
       C. R. Harden
      Attorney-in-Fact

STATE OF TEXAS     §
                §
COUNTY OF HARRIS  §

On this 22nd day of _March_, 2006, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

              _Emily S_
              Notary Public

My Commission Expires: _11/21/2009_

> EMILY IRBY
> NOTARY PUBLIC
> STATE OF TEXAS
> My Comm. Exp. 11-21-2009

**450**

**Return to top**

WITNESSES:

Name: Cindy P. Lowrance

Name: LuiNeai Lam-Smaha

LESSEE:

EPL LOUISIANA, L.L.C.

By:
Name:  L. Keith Vincent
Title:  Vice President, Land

STATE OF LOUISIANA      §
                                           §
PARISH OF ORLEANS     §

On this 24 day of March, 2006, before me, a Notary Public, personally appeared L. Keith Vincent, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the Vice President, Land of EPL OF LOUISIANA, L.L.C. and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

My Commission Expires: _____

Notary Public

James L. Alcock, Jr
Notary Public, State of Louisiana
My Commission is issued for life.
Bar Roll # 18758

WITNESSES:

Name: _____

Name: _____

LESSOR:

HENICAN TERREBONNE PROPERTY, LLC

By: _____
Name: _____
Manager

STATE OF VIRGINIA      §
                                      §
CITY OF _____     §

On this ___ day of _____, 2006, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _____

**451**

**Return to top**

WITNESSES:                          LESSEE:

_____                 EPL LOUISIANA, L.L.C.

Name: _____                By: _____
                                    Name: _____
_____                 Title: _____
Name: _____


STATE OF LOUISIANA        §
                          §
PARISH OF _____      §

    On this ___ day of _____, 2006, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

                                  _____
                                    Notary Public

My Commission Expires: _____


WITNESSES:                          LESSOR:

*Kathern J. King*                   HENICAN TERREBONNE PROPERTY, LLC
Name: *Katherine F. King*

*Debbie Grimann*                    By: _____
Name: *Debbie Grimann*              Name: *STUART THOMAS*
                                                   Manager


STATE OF VIRGINIA         §
                          §
CITY OF *Staunton*        §

    On this *10th* day of *May*, 2006, before me, a Notary Public, personally appeared *Stuart Thomas* to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the *MANAGER* of *Henican Terrebonne Property LLC* and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

                                  *Sammy J Weeks*
                                    Notary Public

My Commission Expires: *8-31-06*

                                  **452**

WITNESSES:

Name: _____

Name: _____

**Return to top**

LESSOR:

HENICAN TERREBONNE PROPERTY, LLC

By: _____
Name: _____
         Manager

STATE OF LOUISIANA    §
                      §
PARISH OF _____  §

On this ___ day of _____, 2006, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _____

WITNESSES:

Name: *Benjamin Murchison*

Name: *Ben Forney*

LESSOR:

HENICAN TERREBONNE PROPERTY, LLC

By: _____
Name: *Clayper V. Perkins, III*
         Manager

STATE OF TEXAS        §
                      §
COUNTY OF *Harris*    §

*Clayper Perkins* On this _16_ day of *May*, 2006, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the *Manager* of *Henican* and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: *August 28, 2009*

Karen A Smith
Notary Public, State of Texas
My Commission Expires:
August 28, 2009

**453**

-6-

**Return to top**

WITNESSES:

Name: _Ben Marchive_

Name: _BETTY GIBBONS_

LESSOR:

APACHE CORPORATION, Agent for
APACHE LOUISIANA MINERALS, INC.

By: _C. R. Harden_
    C. R. Harden
    Attorney-in-Fact

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

On this 22nd day of _March_, 2006, before me, a Notary Public, personally appeared C. R. Harden, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent for APACHE LOUISIANA MINERALS, INC. and that the foregoing instrument was signed in behalf of said corporation by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

EMILY IRBY
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-21-2009

_Emily Q_
Notary Public

My Commission Expires: _11/21/2009_

WITNESSES:

Name: _Benjamin Marchive_

Name: _Ben Foley_

LESSOR:

LALA LAND LEASING, LLC

By: _Randell Peterson_
Name: _Randell Peterson_
      Manager

STATE OF TEXAS          §
                        §
COUNTY OF _Harris_      §

On this _14_ day of _May_, 2006, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _August 28, 2009_

Karen A Smith
Notary Public, State of Texas
My Commission Expires:
August 28, 2009

**454**

-7-

**Return to top**

WITNESSES:

Name: _____

Name: _____

LESSOR:

LALA LAND LEASING, LLC

By: _____
Name: _____
          Manager

STATE OF VIRGINIA        §
                         §
CITY OF _____       §

On this ___ day of _____, 2006, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _____

WITNESSES:

Name: _PARIA Taylor_

Name: _MARIE E LIVAUDAIS_

LESSOR:

LALA LAND LEASING, LLC

By: _Cooper_
Name: _Cooper Manning_
          Manager

STATE OF LOUISIANA       §
                         §
PARISH OF _Orleans_      §

On this _7th_ day of _May_, 2006, before me, a Notary Public, personally appeared _Cooper Manning_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _MANAGER_ of _Mexican Tierra_ ... _Realty LLC_ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _at death_

Book:  1996  Page:  446  File #: 1249755  Seq: 10

**Return to top**

WITNESSES:

Name: _Katherine F. King_

Name: _Debbie Gumann_

LESSOR:

LALA LAND LEASING, LLC

By: _____

Name: ___ Stewart Thomas III

           Manager

STATE OF VIRGINIA     §
                      §
CITY OF _Staunton_    §

On this _16th_ day of _May_, 2006, before me, a Notary Public, personally appeared _Stewart Thomas_, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _Manager_ of _American Terrebonne Properties_ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _8-31-06_

WITNESSES:

Name: _____

Name: _____

LESSOR:

LALA LAND LEASING, LLC

By: _____

Name: _____

           Manager

STATE OF LOUISIANA   §
                    §
PARISH OF _____  §

On this ___ day of _____, 2006, before me, a Notary Public, personally appeared _____, to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time __he did, that __he is the _____ of _____ and that the foregoing instrument was signed in behalf of said limited partnership by authority of its Board of Directors and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

_____
Notary Public

My Commission Expires: _____

**Return to top**

EXHIBIT "A"

Attached to certain Voluntary Unit Agreement dated March 1, 2006, by and among Henican
Terrebonne Property, L.L.C., et al, as Lessors,
and Apache Corporation, et al, as Lessees.

### List of Leases Contributing Acreage to the
### Apache Louisiana Minerals, Inc. 31 - #1 VUA

1.  Partial Sublease of Oil, Gas and Mineral Lease dated June 15, 2004, from LaLa Land, LLC, as Sublessor to Castex Energy 1995, L.P., as Sublessee, recorded in Conveyance Book 1880, under Entry No. 1187165 of the records of Terrebonne Parish, Louisiana; which is subject to that certain Oil and Gas Lease from Henican Terrebonne Property, LLC, as Lessor to LaLa Land Leasing, LLC, as Lessee, dated June 15, 2004, recorded in Conveyance Book 1875, under Entry No. 1184108 of the records of Terrebonne Parish, Louisiana.

2.  Oil and Gas Lease dated March 16, 2006, from Apache Louisiana Minerals, Inc., to EPL of Louisiana, L.L.C., recorded in Conveyance Book _____, under Entry No. _____ of the records of Terrebonne Parish, Louisiana.

3.  Oil and Gas Lease dated November 1, 2004, from Apache Louisiana Minerals, Inc., to Apache Corporation, recorded in Conveyance Book 1899, under Entry No. 1199180 of the records of Terrebonne Parish, Louisiana.

### Description of lands within Henican Terrebonne Property, L.L.C. 31- #1 VUA

See the description set forth in Exhibit "B" hereto.

Return to top

**EXHIBIT "B"**

Attached to and made a part of that certain Voluntary Unit Agreement
dated March 1, 2006 by and among Henican Terrebonne Property, L.L.C., et al, as
Lessors, and Apache Corporation, et al, as Lessees.



# EXHIBIT X

## Terrebonne Parish Recording Page

I. Robert "Bobby" Boudreaux
Clerk Of Court
P.O. Box 1569
Houma, La 70361-1569
(985) 868-5660

**Return to top**

Received From :
PETROQUEST ENERGY  LLC
P.O. BOX 51205
LAFAYETTE, LA  70505-1205

First VENDOR
APACHE LOUISIANA MINERALS INC

First VENDEE
APACHE CORPORATION

| | | |
|---|---|---|
| Index Type :  Conveyances | File # : 1271930 | |
| Type of Document : Amendments | | |
| | Book : 2043 | Page : 852 |
| Recording Pages : | 9 | |

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Terrebonne Parish, Louisiana

*A Robt H Boudreaux*
Clerk Of Court

On (Recorded Date) : 07/19/2007

At (Recorded Time) : 11:09:27:000 AM

Doc ID - 005475370009

Return To :
PETROQUEST ENERGY  LLC
P.O. BOX 51205
LAFAYETTE, LA  70505-1205

?    852

Do not Detach this Recording Page from Original Document

**Return to top**

STATE OF LOUISIANA

PARISH OF TERREBONNE

### ACT OF AMENDMENT

Reference is hereby made for all purposes to that certain Voluntary Unit Agreement ALMI - G - VU (hereinafter referred to as "the Agreement") dated effective January 25, 2007, recorded in Book 2016, Page 538, File Number 1259374, of the public records of Terrebonne Parish, Louisiana.

WHEREAS, a need has arisen to amend the Agreement in that same did not correctly identify all of the oil and gas leases which cover and affect the property included in the Voluntary Unit described in the Agreement.

WHEREAS, the undersigned recognize that the "Subject Leases" referenced in the Agreement insofar as they cover and affect the property within the confines of the described Voluntary Unit should also include the following, to-wit:

Oil and Gas Lease granted by Apache Louisiana Minerals, Inc. to Apache Corporation, dated August 1, 2004 for which a Declaration of Oil and Gas Lease is recorded in Conveyance Book 1915, Page 749, Entry No. 1209171 of the records of Terrebonne Parish, Louisiana, and as amended by Amendment to Oil and Gas Lease and Declaration of Lease, dated April 26, 2007 and recorded in Conveyance Book 2030, Page 74, Entry No. 1265674 of the records of Terrebonne Parish, Louisiana, hereinafter referred to as Lease 1 (B).

Additionally, due to the inclusion of the above Lease 1(B) the table reflecting the surface acreage comprising said Voluntary Unit in Paragraph 4 of said Agreement and Exhibit B attached to the Agreement should also be revised to reflect the coverage of said Lease 1(B).

NOW, THEREFORE, in consideration of the mutual benefits and advantages resulting from the execution hereof, the undersigned, by these presents, do hereby amend the Agreement to include the aforementioned Lease 1(B) so that the Subject Leases will include the following:

Oil and Gas Lease granted by Apache Corporation, Agent for Apache Louisiana Minerals, Inc., a Delaware corporation, to PetroQuest Energy, L.L.C., dated April 26, 2004, for which a Declaration of Oil and Gas Lease is recorded in Conveyance Book 1873, Entry No. 1183043, records of Terrebonne Parish, Louisiana, as amended by Amendment to Oil and Gas Lease and Declaration of Lease dated June 15, 2005 and recorded in Conveyance Book 1924, Entry No. 1213634, and as amended by Amendment to Oil and Gas Lease and Declaration of Lease, dated March 30, 2006 and recorded in Book 1968, Page 398, Entry No. 1236646, all of the records of Terrebonne Parish, Louisiana, hereinafter referred to as Lease 1(A);

Oil and Gas Lease granted by Apache Louisiana Minerals, Inc. to Apache Corporation, dated August 1, 2004 for which a Declaration of Oil and Gas Lease is recorded in Conveyance Book 1915, Page 749, Entry No. 1209171

**Return to top**

of the records of Terrebonne Parish, Louisiana, and as amended by Amendment to Oil and Gas Lease and Declaration of Lease, dated April 26, 2007 and recorded in Conveyance Book 2030, Page 74, Entry No. 1265674 of the records of Terrebonne Parish, Louisiana, hereinafter referred to as Lease 1(B); and

Oil, Gas and Mineral Lease dated March 24, 1961, by and between LaTerre Co., Inc., as Lessor, and Placid Oil Company, as Lessee, recorded in Conveyance Book 315, Entry No. 215112, records of Terrebonne Parish, Louisiana, hereinafter referred to as Lease 2.

FURTHERMORE, the Agreement is amended to have the table reflected in Paragraph 4 of the Agreement now read as follows:

| LEASE | UNIT TRACT | ACREAGE | PERCENTAGE |
|---|---|---|---|
| Leases 1(A) and 1(B) | 1 | 34.77 | 54.18420% |
| Lease 2 | 2 | 29.40 | 45.81580% |
| TOTALS | | 64.17 | 100.0000% |

AND, FURTHERMORE, Exhibit "B" of the Agreement is revised to reflect Tract 1 as being covered by Lease No. 1(A) and Lease No. 1(B), the revised Exhibit "B" attached hereto and made a part hereof.

Except as herein expressly amended, the Agreement shall remain in full force and effect in accordance with its terms and provisions, and, to the extent necessary, is ratified by the undersigned parties.

The Clerk of Court in and for the Parish of Terrebonne is hereby requested to make mention of this instrument in the appropriate margin of his records.

This instrument may be executed in multiple counterparts, each of which shall be deemed to be a duplicate original, and all counterparts together shall constitute a single instrument, and all parties hereby authorize PetroQuest Energy, L.L.C. to attach signature pages from various counterparts into a single instrument for the convenience of the parties and ease of recordation. This instrument shall not become effective unless and until all parties reflected as signatory parties on this instrument have validly executed same.

This Agreement shall be binding upon the parties hereto, their respective, successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth in the acknowledgments, but effective as of January 25, 2007.

**LESSEES:**

WITNESSES:

**APACHE CORPORATION**

_C. R. Harden_
C. R. Harden
Attorney-in-Fact

KRISTIN DAUGHERTY

LOUISE BIERISCH

3107209.1

854

**Return to top**

LESSEES:

WITNESSES:

PETROQUEST ENERGY, L.L.C.

_Kenn C. McCoy_
Kern C. McCoy

_Kay V. Raymond_

_Bryan D. Martiny_                    TMB
Bryan D. Martiny
General Manager - Land

DENBURY ONSHORE, LLC

_Joe Pullin_
Joe Pullin

_Johns M. McDaniel_
Johns M. McDaniel

_H. Raymond Dubuisson_                JRD
H. Raymond Dubuisson
Vice President - Land

LESSOR:

WITNESSES:

APACHE CORPORATION agent for
APACHE LOUISIANA
MINERALS, INC.

C. R. Harden
Attorney-in-Fact

**855**

3107209.1

**Return to top**

LESSEES:

WITNESSES:

PETROQUEST ENERGY, L.L.C.

_Kern C. Meaux_
Kern C. Meaux

_Bryan D. Martiny_                    _pmB_
Bryan D. Martiny
General Manager - Land

Kay V Raymond

DENBURY ONSHORE, LLC

H. Raymond Dubuisson
Vice President - Land

LESSOR:

WITNESSES:

APACHE CORPORATION agent for
APACHE LOUISIANA
MINERALS, INC.

_Kristin Dougherty_
KRISTIN DOUGHERTY

_C. R. Harden_
C. R. Harden
Attorney-in-Fact

_Louise Gierisch_
LOUISE GIERISCH

**Return to top**

STATE OF TEXAS    )
                  )
COUNTY OF HARRIS  )

On this 26ᵗʰ day of July, 2007, before me appeared C. R. Harden, to me personally known, who, being by me duly sworn, did say that she is the Attorney-in-Fact of **APACHE CORPORATION,** and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

HELEN K. MELE
Notary Public, State of Texas
Commission Expires 05-26-2010
Notary ID: 00271585-0

NOTARY PUBLIC
NOTARY NO. _____

MY COMMISSION EXPIRES

STATE OF LOUISIANA

PARISH OF LAFAYETTE

ON THIS 19ᵀᴴ day of June, 2007 before me appeared Bryan D. Martiny, to me personally known, who, being sworn, did say that he is the General Manager-Land of **PETROQUEST ENERGY, L.L.C.** and that said instrument was signed and delivered by him on behalf of said limited liability company and said Appearer acknowledged said instrument to be the free act and deed of said limited liability company.

OFFICIAL SEAL
ORTHEMISE J. BEX
NOTARY PUBLIC NO. 51209
STATE OF LOUISIANA
PARISH OF LAFAYETTE
My Commission Is For Life

NOTARY PUBLIC
NOTARY NO.: _____

MY COMMISSION EXPIRES

STATE OF TEXAS        )
                      )
COUNTY OF COLLIN      )

On this _____ day of _____, 2007, before me appeared H. Raymond Dubuisson, to me personally known, who, being by me duly sworn, did say that he is the Vice President - Land of **DENBURY ONSHORE, LLC,** and that the foregoing instrument was executed on behalf of said limited liability company and said Appearer acknowledged said instrument to be the free act and deed of said limited liability company.

NOTARY PUBLIC
NOTARY NO: _____

MY COMMISSION EXPIRES

857

**Return to top**

STATE OF TEXAS    )
                  )
COUNTY OF HARRIS  )

    On this _____ day of _____, 2007, before me appeared C. R. Harden, to me personally known, who, being by me duly sworn, did say that she is the Attorney-in-Fact of **APACHE CORPORATION**, and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

                                    _____
                                      NOTARY PUBLIC
                                      NOTARY NO. _____

                                      MY COMMISSION EXPIRES

STATE OF LOUISIANA

PARISH OF LAFAYETTE

    ON THIS 19TH day of June, 2007 before me appeared Bryan D. Martiny, to me personally known, who, being sworn, did say that he is the General Manager-Land of **PETROQUEST ENERGY, L.L.C.** and that said instrument was signed and delivered by him on behalf of said limited liability company and said Appearer acknowledged said instrument to be the free act and deed of said limited liability company.

                                      _____
                                      NOTARY PUBLIC
                                      NOTARY NO.: _____

                                        MY COMMISSION EXPIRES

STATE OF TEXAS     )
                   )
COUNTY OF COLLIN   )

    On this 17th day of July, 2007, before me appeared H. Raymond Dubuisson, to me personally known, who, being by me duly sworn, did say that he is the Vice President - Land of **DENBURY ONSHORE, LLC,** and that the foregoing instrument was executed on behalf of said limited liability company and said Appearer acknowledged said instrument to be the free act and deed of said limited liability company.

                                      *Nancy J Henry*
                                      NOTARY PUBLIC
                                      NOTARY NO:
                                      07-06-10
                                      MY COMMISSION EXPIRES

NANCY J. HENRY
Notary Public, State of Texas
Commission Expires 07-06-10

3107209.1

STATE OF TEXAS      )

                        )

COUNTY OF HARRIS   )

**Return to top**

On this 26th day of July, 2007, before me appeared C. R. Harden, to me personally known, who, being by me duly sworn, did say that she is the Attorney-in-Fact of APACHE CORPORATION agent for **APACHE LOUISIANA MINERALS, INC.,** and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

NOTARY PUBLIC

NOTARY NO. _____

MY COMMISSION EXPIRES

HELEN K. MELE
Notary Public, State of Texas
Commission Expires 05-26-2010
Notary ID: 00271585-0

**859**

Revised Exhibit "B"

Attached to and made a part of that certain Act of Amendment, dated effective January 25, 2007, by and between Apache Louisiana Minerals, Inc., Apache Corporation, PetroQuest Energy, L.L.C. and Denbury Onshore, LLC.

Return to top



# EXHIBIT Y

Entry # **04004333**
COB **1074** Page **455**

**Return to top**

| STATE OF LOUISIANA | § | FILED |
| | § | CLERK OF COURT |
| | § | SANDRA M. MOREL |
| PARISH OF PLAQUEMINES | § | PARISH OF PLAQUEMINES |

Recorded 06/30/2004 at 11:20:51
Recorded in Book   1074

## CONVEYANCE

Entry #   04004333     1 of     3 Pgs

*Victoria J Caraln*

This Conveyance is dated and made effective as of March 1, 2004, at 7:00 a.m. Central Time ("**Effective Time**"), and is executed by **Apache Corporation**, a Delaware corporation, whose mailing address is 2000 Post Oak Boulevard, Suite 100, Houston, Texas  77056 (hereinafter referred to as "**Seller**"), in favor of **Apache Louisiana Minerals, Inc.**, a Delaware corporation, whose mailing address is 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056 (hereinafter referred to as "**Buyer**").

For good and valuable consideration paid by Buyer to Seller, the receipt and adequacy of which is hereby acknowledged by Seller, Seller does hereby grant, bargain, sell, convey, transfer, assign, set over and deliver unto Buyer, herein accepting and purchasing for itself, its successors and assigns, and acknowledging delivery and possession thereof, all right, title and interest in and to and relating to the Properties listed and described on Exhibit "A" attached hereto and made a part hereof for all purposes, TO HAVE AND TO HOLD unto Buyer, its successors and assigns.

Buyer and Seller further agree as follows:

1.      This Conveyance is executed by Seller in favor of Buyer without warranty of title, express or implied, except as to acts by, through and under Seller, but not otherwise.

2.      Buyer expressly acknowledges that Buyer is aware that the land is largely marsh lands, and there are numerous water covered areas within the boundaries of such lands, which may be susceptible to a claim by the State of Louisiana that the beds of such water covered areas are owned by the State of Louisiana as the beds of navigable water bodies.  Seller does hereby exclude any contractual, implied or other warranty or representation regarding whether water covered areas are navigable or not navigable, and whether the beds of such water covered areas are owned by Seller or, alternatively, owned by the State of Louisiana; provided, however, nothing contained in these statements is intended to limit in any manner Buyer's right to dispute any claim of ownership which may be asserted, in litigation or otherwise, by the State of Louisiana respecting any claim to the ownership of the beds of water covered areas, and Buyer's right to assert that the beds of such water covered areas are owned in part by Buyer because such water covered areas are, in fact, not navigable.

3.      Buyer further acknowledges that Seller has made no representation or warranty concerning the acreage content of the Land, regarding the location of the boundaries of the Lands, concerning any encroachments upon the Land, and especially that Seller has made no representations or warranties concerning whether portions of the Land may have eroded into or subsided beneath adjacent water covered areas since the date such Land were acquired by Seller (and hence such areas may have become subject to a claim of ownership by the State of Louisiana).

4.      Buyer agrees that if Buyer elects to sell or otherwise transfer the Land (or any portion of the Land), Buyer shall include in any such sale or transfer (or, alternatively, in any unrecorded purchase and sale agreement or similar agreement executed in connection with any such sale or transfer) provisions identical to the two preceding paragraphs, and Buyer shall protect, indemnify and hold Seller harmless from and against any and all claims, causes of action or liability arising as a result of Buyer's failure to include such provisions in any further sale or other transfer by Buyer relating to the Land (or any portion of the Land).

-1-

**Return to top**

EXHIBIT "A"

Attached to and made a part of that certain Conveyance
dated June 24, 2004, by and between Apache Corporation
and Apache Louisiana Minerals, Inc.

Properties

1) Delacroix LA5301: L-9001277: A certain tract of land containing 4,320 acres of land, more or less, located in Plaquemines Parish, Louisiana, being the same lands conveyed by Act of Sale dated January 1, 1995 and recorded in COB 858, Folio 284.

2) Gueydan E LA5266: L-9000611: A certain tract of land containing 135 acres of land, more or less, located in Vermilion Parish Louisiana as described certain as that Royalty and Mineral Interest reserved by Crystal Oil Company in "Cash Sale Deed dated January 28, 1977, executed by Crystal Oil Company in favor of Cleveland Guidy, et ux recorded in Book 834, Page 583 at Reg. No. 239401 of the Conveyance Records of Vermilion Parish, Louisiana.

3) Gueydan E LA5266: L-9000613: A certain tract of land containing 12 acres of land, more or less, being the same tract of land located in Township 11 South – R1East-Section 32, Vermilion Parish, Louisiana, as more properly described in Assignment and Bill of Sale and Conveyance dated October 1, 1994 by and between Crystal Oil Company, Assignor and Apache Corporation, Assignee, recorded in Book 9502, Entry No. 9500729 of the Conveyance Records of Vermilion Parish, Louisiana.

4) Minerals LA LA5010: L-9000533: A certain tract of land containing 2.00 acres of land more or less, being 2.00 acres of Lot 4 of the McFarlain Subdivision of the South half of Lot 2 of Section 41 located in Township 9 South, Range 2 West, Acadia Parish, Louisiana.

5) Thornwell Farm LA5283: L-9000506: A certain tract of land containing 1,062 acres of land, more or less, being the same property more properly described in that Cash Sale Deed and Act of Conveyance from Vermilion Bay Land Company to Apache Corporation dated October 1, 1994, and filed of record in the Conveyance Records of Jefferson Davis Parish, Louisiana in Book 809, File No. 530737.

6) Valentine MW LA4026: L-9000509: A certain tract of land containing 947.52 acres of land, more or less, being that same property more properly described in that certain Mineral Deed and Bill of Sale dated January 1, 1993 and filed of record in the Conveyance Records of Lafourche Parish, Louisiana in Book 1200, Folio 93, Entry No. 762653.

7) Lake Washington LA5265: L-9000505: A certain tract of land containing 52,594.52 acres of land, more or less, being the same property more properly described in that Cash Sale Deed and Act of Conveyance from Vermilion Bay Land Company to Apache Corporation dated October 1, 1994, and filed of record in the Conveyance Records of Plaquemines Parish, Louisiana, in Book 857, Folio 349.

8) Boston Bayou LA5246: L-9000508: A certain tract of land containing 6,088.272 acres of land, more or less, being the same property more properly described in that Cash Sale Deed and Act of Conveyance from Vermilion Bay Land Company to Apache Corporation dated October 1, 1994, and filed of record in the Conveyance Records of Vermilion Parish, Louisiana, Entry No. 9501239.

9) Tiger Lagoon Field LA5258: L-9000508: A certain tract of land containing 3,880 acres of land, more or less, being the same property more properly described in that Cash Sale Deed and Act of Conveyance from Vermilion Bay Land Company to Apache Corporation dated October 1, 1994, and filed of record in the Conveyance Records of Iberia Parish, Louisiana, in Book 1087, Entry No. 96-670.

**Return to top**

**IN WITNESS WHEREOF**, this Conveyance is executed by Seller and Buyer on the date first above written in the presence of the undersigned competent witnesses.

WITNESSES:

*Wes W. Reeves*

*Rob Eaton*

SELLER:

**Apache Corporation**

By: *C. R. Harden*

C. R. Harden
**Attorney-In-Fact**

BUYER:

**APACHE CORPORATION, Agent for
APACHE LOUISIANA MINERALS, INC.**

*Wes W. Reeves*

*Rob Eaton*

By: *C. R. Harden*

C. R. Harden
**Attorney-In-Fact**

STATE OF TEXAS        )
                                        )
COUNTY OF HARRIS   )

On this ___day of ___, 2004, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

Notary Public in and for the State of Texas

My Commission Expires_____

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

STATE OF TEXAS        )
                                        )
COUNTY OF HARRIS   )

On this ___day of ___, 2004, appeared C.R. Harden to me personally known, who being by me duly sworn did say, to me and the two competent witnesses who signed their names next to Appearer on the foregoing at the same time she did, that she is the Attorney-in-Fact of APACHE CORPORATION, Agent for Apache Louisiana Minerals, Inc. a Delaware corporation, and that the foregoing was executed on behalf of said corporation by authority of its Board of Directors, and said Appearer acknowledged said instrument to be the free act and deed of said corporation.

Notary Public in and for the State of Texas

My Commission Expires_____

EDMUNDS B TRAVIS
Notary Public
State of Texas
My Commission Expires
October 23, 2006

-2-

# EXHIBIT Z

*Louisiana Terrebonne Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | | CON | 04/24/03 | AGREEMENT | APACHE LOUISIANA MINERALS INC | APACHE CORP | | 1145632 | 1816 / 368 | 4 pages | Flag |
| 4 | | CON | 09/16/03 | AGREEMENT | APACHE LOUISIANA MINERALS INC | APACHE CORP | SEC 7 T19S-R14E | 1159170 | 1835 / 645 | 8 pages | Flag |
| 5 | | CON | 10/15/03 | AGREEMENT | APACHE LOUISIANA MINERALS INC | TERREBONNE LEVEE & CONSERVATION DIST | | 1161895 | 1840 / 82 | 19 pages | Flag |
| 6 | | CON | 01/05/04 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>LOUISIANA STATE MINERAL BOARD | APACHE CORP<br>PINNACLE RESOURCES INC | ST LSE #17892 | 1168286 | 1849 / 212 | 14 pages | Flag |
| 7 | | CON | 03/22/04 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>LOUISIANA LAND & EXPLORATION CO | HOUSTON ENERGY L P | SEC 1 T19S-R12E SEC 6 T19S-R13E | 1174926 | 1861 / 493 | 10 pages | Flag |
| 8 | | CON | 06/08/04 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>LOUISIANA STATE MINERAL BOARD | CL & F RESOURCES L P<br>FLARE RESOURCES INC<br>CASTEX ENERGY INC<br>APACHE CORP<br>PIQUANT INC | ST LSE #17754 LAKE BOUDREAUX | 1181767 | 1871 / 673 | 19 pages | Flag |
| 9 | | CON | 10/05/04 | AGREEMENT | LOUISIANA STATE MINERAL BOARD | APACHE LOUISIANA MINERALS INC<br>CASTEX ENERGY 1995 L P<br>CASTEX ENERGY INC<br>APACHE CORP | WEST LAPEYROUSE FIELD | 1191801 | 1887 / 228 | 23 pages | Flag |
| 10 | | CON | 11/02/04 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | EXXON MOBIL CORP | SEC 20 21 & 29 T19S-R15E | 1193852 | 1890 / 525 | 4 pages | Flag |
| 11 | | CON | 11/02/04 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | EXXON MOBIL CORP | T19S-R13E & T19S-R14E | 1193855 | 1890 / 539 | 4 pages | Flag |
| 12 | | CON | 11/02/04 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | EXXON MOBIL CORP | SEC 17 18 19 & 30 T19S-R15E | 1193863 | 1890 / 565 | 4 pages | Flag |
| 13 | | CON | 11/02/04 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | EXXON MOBIL CORP | SEC 12 T19S-R13E | 1193864 | 1890 / 569 | 4 pages | Flag |
| 14 | | CON | 11/02/04 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | EXXON MOBIL CORP | SEC 31 T19S-R15E | 1193865 | 1890 / 573 | 4 pages | Flag |
| 15 | | CON | 11/02/04 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | EXXON MOBIL CORP | SEC 29 & 32 T19S-R15E | 1193868 | 1890 / 600 | 4 pages | Flag |
| 16 | | CON | 06/06/06 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>HENICAN TERREBONNE PROPERTY L L C<br>ENERGY PARTNERS L L C<br>LALA LAND LEASING L L C | APACHE CORP<br>BP AMERICA PRODUCTION CO<br>EPL OF LOUISIANA L L C<br>EPL OF LOUISIANA L L C | Section:34 Township:18S Range:13E<br>Section:35 Township:18S Range:13E<br>Section:3 Township:19S Range:13E<br>(VOLUNTARY UNIT AGREEMENT) BAYOU PENCHANT FIELD<br>(VOLUNTARY UNIT AGREEMENT) LIRETTE FI | 1211388 | 1919 / 535 | 16 pages | Flag |
| 17 | | CON | 08/10/05 | AGREEMENT | APACHE LOUISIANA MINERALS INC | APACHE CORP<br>EPL OF LOUISIANA L L C | Section:31 Township:18S Range:13E<br>(VOLUNTARY UNIT AGREEMT) | 1217076 | 1930 / 144 | 9 pages | Flag |
| 18 | | CON | 08/10/05 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>LALA LAND LEASING L L C<br>HENICAN TERREBONNE PROPERTY L L C | APACHE CORP<br>EPL OF LOUISIANA L L C | Section:31 Township:18S Range:13E<br>Section:6 Township:19S Range:13E<br>(VOLUNTARY UNIT AGREEMT) | 1217083 | 1930 / 158 | 14 pages | Flag |
| 19 | | CON | 07/10/06 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>LOUISIANA STATE MINERAL BOARD<br>LOUISIANA LAND & EXPLORATION CO | WHITE OAK OIL & GAS PARTNERS L P<br>WO PARTNERS L P<br>WO PARTNERS MANAGEMENT L L C<br>APACHE CORP<br>NORTEX CORP<br>KENT, ROBERT W<br>KENT, SALLY D<br>WHITE OAK OIL & GAS PARTNERS L P<br>WO PARTNERS L P<br>WO PARTNERS MANAGEMENT L L C<br>APACHE CORP | Section:74 Township:19S Range:18E<br>Section:75 Township:19S Range:18E<br>Section:78 Township:19S Range:18E<br>Section:79 Township:19S Range:18E<br>(VOLUNTARY UNIT AGREEMT & APPROVAL) LAKE BOUDREAUX FIELD | 1242097 | 1978 / 352 | 17 pages | Flag |
| 20 | | CON | 07/20/06 | AGREEMENT | APACHE LOUISIANA MINERALS INC | APACHE CORP<br>BP AMERICA PRODUCTION CO | Section:7 Township:19S Range:14E<br>(VOLUNTARY UNIT AGREEMT) | 1242878 | 1980 / 578 | 8 pages | Flag |
| 21 | | CON | 09/28/06 | AGREEMENT | APACHE LOUISIANA MINERALS INC | EPL OF LOUISIANA L L C | Section:31 Township:18S Range:18E<br>(VOLUNTARY UNIT AGREEMT) SOUTH HOUMA FIELD | 1248608 | 1994 / 189 | 8 pages | Flag |
| 22 | | CON | 10/11/06 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>HENICAN TERREBONNE PROPERTY L L C<br>LALA LAND LEASING L L C | APACHE CORP<br>EPL LOUISIANA L L C | Section:6 Township:19S Range:13E<br>(VOLUNTARY UNIT AGREEMT) PALMETTO BAYOU FIELD | 1249755 | 1996 / 446 | 13 images | Flag |

**Louisiana Terrebonne Parish Clerk of Court Public Record Search**
**Oil and Gas Related Records for Apache Louisiana Minerals (ALM)**

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 23 | | CON | 10/27/06 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>LOUISIANA STATE MINERAL BOARD | CASTEX ENERGY 1995 L P<br>CASTEX ENERGY INC<br>ENERGY XXI GULF COAST INC | Section:29 Township:19S Range:13E<br>Section:30 Township:19S Range:13E<br>Section:32 Township:19S Range:13E<br>(VOLUNTARY UNIT AGREEMT & APPROVAL) FOUR LEAGUE BAY FIELD, VOLUNTARY UNIT 29-1 | 1251170 | 2000 / 203 | 11 pages | Flag |
| 24 | | CON | 11/03/06 | AGREEMENT | APACHE LOUISIANA MINERALS INC<br>LOUISIANA STATE MINERAL BOARD | ODEN & ASSOCIATES L L C<br>BRAMMER ENGINEERING INC<br>HUNT PETROLEUM A E C INC<br>HUNT HASSIE EXPLORATION CO<br>HUNT HAROLDSON LJR TRUST ESTATE<br>HUNT MARGARET TRUST ESTATE<br>HUNT LYDIA MARGARET TRUSTS LYDIA HILL<br>BUSHHILL L P<br>AHW AVIATION INC<br>AGH ENERGY L L C<br>ODEN & ASSOCIATES L L C<br>BRAMMER ENGINNERING INC<br>HUNT PETROLEUM A E C INC<br>HUNT HASSIE EXPLORATION CO<br>HUNT HAROLDSON, LJR TRUST ESTATE | Section:#9 Township:19S Range:19E<br>(VOLUNTARY UNIT AGREEMT & APPROVAL) BAYOU JEAN LA CROIX FIELD ST LSE #18871 | 1251627 | 2001 / 107 | 18 pages | Flag |
| 26 | | CON | 02/25/07 | AGREEMENT | APACHE LOUISIANA MINERALS INC | APACHE CORP<br>PETROQUEST ENERGY L L C<br>DENBURY ONSHORE L L C<br>HOUSTON ENERGY L P<br>SEWANEE INVESTMENTS L L C | Section:72 Township:18S Range:18E<br>(VOLUNTARY UNIT AGREEMT) | 1259374 | 2016 / 538 | 11 pages | Flag |
| 27 | | CON | 12/17/09 | AGREEMENT | APACHE LOUISIANA MINERALS L L C<br>LOUISIANA STATE MINERAL BOARD | | Section:21 Township:19S Range:15E<br>Section:22 Township:19S Range:15E<br>(VOLUNTARY UNIT AGREEMT & APPROVAL) ST LSES #19975 & #19977 LAKE DE CADE FIELD | 1337866 | 2177 / 558 | 12 pages | Flag |
| 28 | | CON | 04/01/10 | AGREEMENT | APACHE LOUISIANA MINERALS L L C | APACHE CORP<br>PETROQUEST ENERGY L L C<br>HILCORP ENERGY L L P<br>HILCORP ENERGY CO | Section:72 Township:18S Range:18E<br>(VOLUNTARY UNIT AGREEMT) SOUTH CHAUVIN FIELD - ALMI -E-VU | 1344271 | 2189 / 542 | 12 pages | Flag |
| 29 | | CON | 06/23/10 | AGREEMENT | APACHE LOUISIANA MINERALS L L C<br>APACHE CORP<br>SWIFT ENERGY OPERATING L L C | CL & E RESOURCES L P<br>PHOENIX EXPLORATION LOUISIANA C LLC<br>PIQUANT INC | Section:5 Township:19S Range:14E<br>Section:1 Township:19S Range:13E<br>(VOLUNTARY UNITIZATION AGREEMT) BAYOU PENCHANT FIELD | 1350150 | 2200 / 201 | 13 pages | Flag |
| 30 | | CON | 08/31/10 | AGREEMENT | APACHE LOUISIANA MINERALS L L C<br>BERGERON, VIRGINIA LIRETTE<br>LIRETTE, VIRGINIA<br>BERGERON, DONALD J R<br>BREAUX, STEPHANIE B<br>CLARK, MELANIE T<br>RUBAYAT L L C<br>LIRETTE, VAUGHN ANDREW<br>LIRETTE, KENNETH W<br>DOUAN, TRACIE LIRETTE<br>LIRETTE, TRACIE<br>LIRETTE, STEPHEN J<br>LIRETTE, STUART K<br>LIRETTE, JANELLE M<br>LIRETTE, DAVID<br>APACHE LOUISIANA MINERALS L L C<br>BERGERON, VIRGINIA LIRETTE<br>LIRETTE, VIRGINIA<br>BERGERON, DONALD J R<br>BREAUX, STEPHANIE B | BLUE MOON EXPLORATION CO | Section:33 Township:19S Range:19E<br>Section:51 Township:19S Range:19E<br>Section:15 Township:19S Range:19E<br>(POOLING & UNITIZATION AGREEMENT) BAYOU LACACHE PROSPECT | 1355498 | 2210 / 862 | 21 pages | Flag |
| 31 | | CON | 11/29/10 | AGREEMENT | APACHE LOUISIANA MINERALS L L C<br>LOUISIANA STATE MINERAL BOARD | COVINGTON EXPLORATION CO L L C | (VOLUNTARY UNIT AGREEMENT & APPR) | 1361764 | 2220 / 769 | 12 pages | Flag |
| 32 | | CON | 09/12/11 | AGREEMENT | APACHE LOUISIANA MINERALS L L C<br>LOUISIANA STATE MINERAL BOARD | COVINGTON EXPLORATION CO L L C | (VOLUNTARY UNIT AGREEMENT & APPR) | 1381944 | 2256 / 690 | 12 pages | Flag |

*Louisiana Terrebonne Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | Kind | Date Filed | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 33 | | CON | AMENDED MINERAL LEAL | 10/23/03 | LOUISIANA STATE MINERAL & ENERGY BOARD / APACHE LOUISIANA MINERALS INC | PETROQUEST ENERGY L L C | SEC 67 64 & 68 T19S-R18E | 1162631 | 1841 / 102 | 3 pages | Flag |
| 34 | | CON | AMENDED MINERAL LEAL | 05/26/04 | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | | 1180741 | 1870 / 314 | 3 pages | Flag |
| 35 | | CON | AMENDED MINERAL LEAL | 06/02/04 | APACHE LOUISIANA MINERALS INC | FLARE RESOURCES INC / CL E RESOURCES L P / PIQUANT INC | T19S-R18E | 1181341 | 1871 / 188 | 4 pages | Flag |
| 36 | | CON | AMENDED MINERAL LEAL | 09/29/04 | APACHE LOUISIANA MINERALS INC | APACHE CORP | SEC 63 T19S-R18E | 1191390 | 1886 / 534 | 3 pages | Flag |
| 37 | | CON | AMENDED MINERAL LEAL | 03/14/05 | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | Section:71 Township:18S Range:18E | 1204329 | 1907 / 709 | 4 pages | Flag |
| 38 | | CON | AMENDED MINERAL LEAL | 06/30/05 | APACHE LOUISIANA MINERALS INC | PETROQUEST ENERGY L L C | Section:66 Township:18S Range:18E (& DECLARATION OF LEASE) | 1213634 | 1924 / 214 | 3 pages | Flag |
| 39 | | CON | AMENDED MINERAL LEAL | 05/03/06 | APACHE LOUISIANA MINERALS INC | PETROQUEST ENERGY L L C | Section:66 Township:19S Range:18E / Section:67 Township:18S Range:18E / Section:67 Township:19S Range:18E / Section:72 Township:18S Range:18E / Section:73 Township:18S Range:18E (& DECLARATION OF LEASE) SOUTH CHAUVIN FIELD | 1236646 | 1968 / 398 | 6 pages | Flag |
| 40 | | CON | AMENDED MINERAL LEAL | 08/22/06 | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC / CASTEX ENERGY 1995 L P | Section:12 Township:19S Range:15E / Section:7 Township:19S Range:15E / Section:7 Township:19S Range:16E / Section:8 Township:19S Range:16E (& DECLARATION OF M/L) | 1245615 | 1987 / 411 | 4 pages | Flag |
| 41 | | CON | AMENDED MINERAL LEAL | 09/18/06 | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P / CASTEX ENERGY INC | Section:3 Township:15S Range:13E | 1247834 | 1992 / 436 | 3 pages | Flag |
| 42 | | CON | AMENDED MINERAL LEAL | 10/06/06 | APACHE LOUISIANA MINERALS INC | APACHE CORP / BP AMERICA PRODUCTION CO | Section:10 Township:15S Range:13E (& DECLARATION OF LEASE) | 1249454 | 1995 / 728 | 4 pages | Flag |
| 43 | | CON | AMENDED MINERAL LEAL | 05/08/07 | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:66 Township:19S Range:18E / Section:67 Township:18S Range:18E / Section:72 Township:18S Range:18E / Section:73 Township:18S Range:18E | 1265674 | 2030 / 74 | 6 pages | Flag |
| 44 | | CON | AMENDED MINERAL LEAL | 04/24/08 | APACHE LOUISIANA MINERALS INC | HILLIARD ACQUISITIONS LLC | | 1294709 | 2092 / 124 | 3 pages | Flag |
| 45 | | CON | AMENDED MINERAL LEAL | 08/21/08 | APACHE LOUISIANA MINERALS INC | HILLIARD ACQUISITIONS LLC | | 1304682 | 2116 / 474 | 3 pages | Flag |
| 46 | | CON | AMENDED MINERAL LEAL | 01/27/09 | APACHE LOUISIANA MINERALS INC | PETROQUEST ENERGY L L C / HILCORP ENERGY CO / HILCORP ENERGY L L P / HILCORP ENERGY CO | | 1314470 | 2136 / 301 | 5 pages | Flag |
| 47 | | CON | AMENDED MINERAL LEAL | 06/23/10 | APACHE LOUISIANA MINERALS L L C | PHOENIX EXPLORATION LOUISIANA C LLC | Section:6 Township:15S Range:14E (TO MINERAL LEASE) | 1350149 | 2200 / 197 | 4 pages | Flag |
| 48 | | CON | AMENDMENTS | 01/10/05 | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | Section:12 Township:19S Range:15E (M/L & DECLARN OF LEASE) | 1199143 | 1899 / 608 | 4 pages | Flag |
| 49 | | CON | AMENDMENTS | 12/21/05 | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P / CASTEX ENERGY INC | Section:7 Township:19S Range:16E / Section:7 Township:19S Range:16E / Section:8 Township:19S Range:16E (TO M/L & DECLARN OF M/L) | 1226397 | 1948 / 496 | 3 pages | Flag |
| 51 | | CON | AMENDMENTS | 03/13/07 | APACHE LOUISIANA MINERALS INC | KASH OIL & GAS INC / APACHE CORP / PETROQUEST ENERGY L L C / DENBURY ONSHORE L L C | (TO CANAL & WATERWAY PERMIT) | 1261222 | 2019 / 672 | 3 pages | Flag |
| 53 | | CON | AMENDMENTS | 07/19/07 | APACHE LOUISIANA MINERALS INC | | (OF VOLUNTARY UNIT AGREEMT) | 1271950 | 2043 / 852 | 9 pages | Flag |
| 54 | | CON | AMENDMENTS | 12/28/07 | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | Section:108 Township:20S Range:18E / Section:111 Township:20S Range:18E (OF SURFACE LEASE & SUBSURFACE EASEMENT AGREEMT) | 1285355 | 2071 / 436 | 4 pages | Flag |
| 55 | | CON | AMENDMENTS | 04/04/08 | APACHE LOUISIANA MINERALS INC | HELIS OIL & GAS CO L L C / HOUSTON ENERGY L P / SEWANEE INVESTMENTS L L C | (TO M/L) | 1293071 | 2088 / 793 | 5 pages | Flag |
| 56 | | CON | AMENDMENTS | 11/26/08 | APACHE LOUISIANA MINERALS INC | CHAMPION ENERGY L L C | Section:5 Township:19S Range:20E / Section:6 Township:19S Range:20E (TO M/L) BAY BAPTISTE FIELD | 1310778 | 2123 / 489 | 6 pages | Flag |

*Louisiana Terrebonne Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount | Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 57 | | CON | 06/18/10 | AMENDMENTS | APACHE LOUISIANA MINERALS INC | LOUISIANA DEPT OF NATURAL RESOURCES / LOUISIANA STATE OF DIVISION OF ADMIN | Section:27 Township:19S Range:15E / Section:11 Township:19S Range:15E / (AMENDMENT #2 TO TEMPORARY EASEMT, SERVITUDE & R/W EASEMT FOR MONITORING & ACCESS) | 1349834 | 2199 / 673 | | 10 pages | Flag |
| 58 | | CON | 01/24/04 | ASSIGNMENT | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P | | 1169129 | 1851 / 59 | | 3 pages | Flag |
| 59 | | CON | 03/28/07 | CONSENT | APACHE LOUISIANA MINERALS INC / XPLOR ENERGY OPERATING CO | ENERGY PARTNERS LTD | CANAL ACCESS PERMIT CONSENT TO ASS | 1262494 | 2022 / 774 | | 3 pages | Flag |
| 60 | | CON | 11/22/11 | CONSENT | APACHE LOUISIANA MINERALS INC / DISCOVERY PRODUCER SERVICES L L C | DISCOVERY GAS TRANSMISSION L L C | (TO ASSIGNMENT) | 1386767 | 2265 / 560 | | 6 pages | Flag |
| 61 | | CON | 10/26/07 | CONVEYANCE | APACHE NORTH AMERICA INC | APACHE LOUISIANA MINERALS INC | | 1280564 | 2051 / 674 | | 4 pages | Flag |
| 62 | | CON | 12/15/03 | CORRECTION | APACHE LOUISIANA MINERALS INC | SOUTHWESTERN ENERGY PRODUCTION CO | | 1166977 | 1847 / 288 | | 3 pages | Flag |
| 63 | | CON | 12/15/03 | CORRECTION | APACHE LOUISIANA MINERALS INC | SOUTHWESTERN ENERGY PRODUCTION CO | | 1166978 | 1847 / 291 | | 3 pages | Flag |
| 64 | | CON | 08/19/04 | CORRECTION | APACHE LOUISIANA MINERALS INC | SOUTHWESTERN ENERGY PRODUCTION CO | SEC 10 11 14 & 15 T19S-R15E | 1188090 | 1881 / 620 | | 4 pages | Flag |
| 65 | | CON | 03/27/12 | CORRECTION | APACHE LOUISIANA MINERALS L L C / DISCOVERY PRODUCER SERVICES L L C | DISCOVERY GAS TRANSMISSION L L C | Section:4 Township:20S Range:20E / Section:7 Township:20S Range:20E | 1395555 | 2279 / 142 | | 3 pages | Flag |
| 66 | | CON | 05/02/03 | DECLARATION | APACHE LOUISIANA MINERALS INC | PETROQUEST ENERGY L L C | SEC 64 & 67 T18S-R18E | 1146525 | 1817 / 437 | | 3 pages | Flag |
| 67 | | CON | 06/18/03 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | SEC 7 T19S-R14E BAYOU PENCHANT | 1150751 | 1823 / 244 | | 4 pages | Flag |
| 68 | | CON | 11/06/03 | DECLARATION | APACHE LOUISIANA MINERALS INC | EBR PROPERTIES II L P | SEC 63 T18S-R15E | 1163887 | 1842 / 763 | | 2 pages | Flag |
| 69 | | CON | 11/13/03 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | SEC 20 & 29 T19S-R15E | 1164463 | 1844 / 216 | | 3 pages | Flag |
| 70 | | CON | 11/18/03 | DECLARATION | APACHE LOUISIANA MINERALS INC | FLARE RESOURCES INC | TRACT 1 T18S-R18E | 1164760 | 1844 / 557 | | 3 pages | Flag |
| 71 | | CON | 01/28/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | | 1170331 | 1853 / 474 | | 3 pages | Flag |
| 72 | | CON | 02/18/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | FLARE RESOURCES INC | T18S-R18E | 1172161 | 1856 / 343 | | 3 pages | Flag |
| 73 | | CON | 03/22/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | HOUSTON ENERGY L P | SEC 6 T19S-R13E | 1174924 | 1861 / 487 | | 3 pages | Flag |
| 74 | | CON | 03/22/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | DENBURY ONSHORE L L C | SEC 39 40 47 & 48 T19S-R19E | 1174937 | 1861 / 526 | | 4 pages | Flag |
| 75 | | CON | 06/23/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | PETROQUEST ENERGY L L C | SOUTH CHAUVIN FIELD T19S-R18E | 1183043 | 1873 / 455 | | 5 pages | Flag |
| 76 | | CON | 06/25/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | BP AMERICA PRODUCTION CO | SEC 3 & 10 T19S-R15E | 1183421 | 1874 / 253 | | 3 pages | Flag |
| 77 | | CON | 06/25/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | BP AMERICA PRODUCTION CO | SEC 28 29 30 32 & 33 T19S-R13E | 1183422 | 1874 / 256 | | 5 pages | Flag |
| 78 | | CON | 07/06/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | SEC 3 & 10 T19S-R13E | 1184220 | 1875 / 412 | | 3 pages | Flag |
| 79 | | CON | 07/14/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | SEC 17 T19S-R15E | 1185031 | 1877 / 58 | | 3 pages | Flag |
| 80 | | CON | 08/03/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | T18S-R18E 40.662 ACRES | 1185032 | 1877 / 61 | | 3 pages | Flag |
| 81 | | CON | 08/03/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | BAYOU CHAUVIN FIELD T18S-R18E | 1186762 | 1879 / 443 | | 3 pages | Flag |
| 82 | | CON | 08/05/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | SEC 17 T19S-R15E | 1187041 | 1879 / 712 | | 5 pages | Flag |
| 83 | | CON | 08/06/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | T19S-R18E LAKE BOUDREAUX FLD | 1187151 | 1880 / 2 | | 3 pages | Flag |
| 84 | | CON | 09/13/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | SEC 36 T19S-R19E | 1190241 | 1885 / 156 | | 4 pages | Flag |
| 85 | | CON | 09/21/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | DENBURY ONSHORE L L C | SEC 64 T18S-R18E | 1190668 | 1885 / 670 | | 4 pages | Flag |
| 86 | | CON | 11/30/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | SEC 17 T19S-R15E | 1195761 | 1893 / 471 | | 4 pages | Flag |
| 87 | | CON | 01/07/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P / CASTEX ENERGY INC | Section:108 Township:20S Range:18E / Section:109 Township:20S Range:18E / Section:110 Township:20S Range:18E / Section:111 Township:20S Range:18E | 1199007 | 1899 / 323 | | 5 pages | Flag |
| 88 | | CON | 01/07/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P / CASTEX ENERGY INC | (DECLARATION OF M/I) LAPEYROUSE FIELD / Section:37 Township:19S Range:19E / (DECLARN OF M/I) | 1199010 | 1899 / 328 | | 5 pages | Flag |
| 89 | | CON | 01/07/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P | Section:36 Township:19S Range:19E | 1199017 | 1899 / 344 | | 5 pages | Flag |
| 90 | | CON | 01/07/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P | Section:6 Township:19S Range:19E / (DECLARN OF M/I) | 1199022 | 1899 / 353 | | 5 pages | Flag |
| 91 | | CON | 01/20/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | Section:12 Township:20S Range:17E / Section:108 Township:20S Range:18E | 1199112 | 1899 / 576 | | 5 pages | Flag |

**Louisiana Terrebonne Parish Clerk of Court Public Record Search**
**Oil and Gas Related Records for Apache Louisiana Minerals (ALM)**

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 92 | | CON | 01/10/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P<br>CASTEX ENERGY INC | Section:109 Township:205 Range:18E<br>Section:111 Township:205 Range:18E<br>Section:12 Township:205 Range:17E<br>Section:13 Township:205 Range:17E<br>Section:109 Township:205 Range:18E<br>Section:110 Township:205 Range:18E<br>Section:111 Township:205 Range:18E<br>Section:112 Township:205 Range:18E | 1191113 | 1899 / 581 | 6 pages | Flag |
| 93 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:12 Township:205 Range:19E<br>Section:13 Township:205 Range:17E<br>Section:13 Township:205 Range:17E<br>Section:109 Township:205 Range:18E<br>Section:110 Township:205 Range:18E<br>Section:111 Township:205 Range:18E<br>Section:37 Township:195 Range:19E | 1191175 | 1899 / 669 | 5 pages | Flag |
| 94 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:36 Township:195 Range:19E | 1191176 | 1899 / 674 | 5 pages | Flag |
| 95 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:12 Township:205 Range:17E<br>Section:108 Township:205 Range:18E<br>Section:109 Township:205 Range:18E<br>Section:111 Township:205 Range:18E | 1191177 | 1899 / 679 | 5 pages | Flag |
| 96 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:108 Township:205 Range:18E<br>Section:109 Township:205 Range:18E<br>Section:111 Township:205 Range:18E<br>Section:110 Township:205 Range:18E | 1191178 | 1899 / 684 | 5 pages | Flag |
| 97 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:112 Township:205 Range:18E<br>Section:109 Township:205 Range:18E<br>Section:111 Township:205 Range:18E<br>Section:110 Township:205 Range:18E<br>Section:12 Township:205 Range:17E<br>Section:13 Township:205 Range:17E | 1191179 | 1899 / 689 | 6 pages | Flag |
| 98 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:112 Township:205 Range:18E<br>Section:109 Township:205 Range:18E<br>Section:111 Township:205 Range:18E<br>Section:110 Township:205 Range:18E<br>Section:112 Township:205 Range:17E<br>Section:6 Township:195 Range:13E | 1191180 | 1899 / 695 | 5 pages | Flag |
| 99 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:6 Township:195 Range:14E<br>(DECLARN OF M/I) | 1191182 | 1899 / 706 | 4 pages | Flag |
| 100 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:3 Township:195 Range:13E<br>(DECLARN OF M/I) | 1191183 | 1899 / 710 | 4 pages | Flag |
| 101 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:6 Township:195 Range:14E<br>(DECLARN OF M/I) | 1191184 | 1899 / 714 | 5 pages | Flag |
| 102 | | CON | 01/27/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P<br>CASTEX ENERGY INC | Section:65 Township:195 Range:18E<br>(DECLARN OF M/I) | 1200432 | 1901 / 750 | 4 pages | Flag |
| 103 | | CON | 02/04/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:78 Township:185 Range:18E<br>Section:80 Township:185 Range:18E<br>(DECLARN OF M/I) | 1201181 | 1903 / 231 | 4 pages | Flag |
| 104 | | CON | 02/04/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:71 Township:185 Range:18E<br>(DECLARN OF M/I) | 1201182 | 1903 / 235 | 4 pages | Flag |
| 105 | | CON | 02/24/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | (M/L) BAYOU CHAUVIN PROSPECT | 1202408 | 1905 / 373 | 4 pages | Flag |

*Louisiana Terrebonne Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 106 | | CON | 05/12/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | BROWNING OIL CO INC | Section:5 Township:20S Range:15E (OF M/L) | 1209563 | 1916 / 379 | 4 pages | Flag |
| 107 | | CON | 06/17/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | BP AMERICA PRODUCTION CO | Section:6 Township:19S Range:14E (OF M/L) | 1212421 | 1921 / 450 | 4 pages | Flag |
| 108 | | CON | 06/17/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:35 Township:19S Range:15E (OF M/L) | 1212427 | 1921 / 454 | 4 pages | Flag |
| 109 | | CON | 10/17/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P<br>CASTEX ENERGY INC | Section:12 Township:19S Range:15E<br>Section:7 Township:19S Range:16E<br>Section:7 Township:19S Range:16E<br>Section:6 Township:19S Range:16E (OF M/L) | 1221627 | 1939 / 65 | 3 pages | Flag |
| 110 | | CON | 12/21/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P<br>CASTEX ENERGY INC | Section:5 Township:19S Range:18E (OF M/L) | 1226595 | 1948 / 488 | 4 pages | Flag |
| 111 | | CON | 12/21/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P<br>CASTEX ENERGY INC | Section:29 Township:19S Range:13E<br>Section:30 Township:19S Range:13E<br>Section:32 Township:19S Range:13E (OF M/L) FOUR LEAGUE BAY FIELD | 1226596 | 1948 / 492 | 4 pages | Flag |
| 112 | | CON | 04/05/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | EPL OF LOUISIANA L L C | Section:6 Township:19S Range:13E (OF M/L) | 1234359 | 1964 / 511 | 5 pages | Flag |
| 113 | | CON | 04/05/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Township:18S Range:18E (OF M/L) | 1234360 | 1964 / 516 | 4 pages | Flag |
| 114 | | CON | 04/05/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Township:20S Range:17E (OF M/L) | 1234363 | 1964 / 533 | 4 pages | Flag |
| 115 | | CON | 04/21/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | PETROQUEST ENERGY L L C | Section:68 Township:19S Range:18E<br>Section:69 Township:19S Range:18E (OF M/L) | 1235675 | 1966 / 598 | 5 pages | Flag |
| 116 | | CON | 04/26/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P<br>CASTEX ENERGY INC | Section:29 Township:19S Range:13E<br>Section:30 Township:19S Range:13E<br>Section:32 Township:19S Range:13E (OF M/L) | 1236040 | 1967 / 314 | 4 pages | Flag |
| 117 | | CON | 05/26/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:22 Township:19S Range:16E<br>Section:23 Township:19S Range:16E (OF M/L) | 1238656 | 1972 / 388 | 5 pages | Flag |
| 118 | | CON | 06/26/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | FALCON BAY ENERGY L L C | Section:1 Township:20S Range:17E (OF M/L) | 1240894 | 1975 / 759 | 4 pages | Flag |
| 119 | | CON | 06/30/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | DENBURY ONSHORE L L C | Section:41 Township:19S Range:19E<br>Section:46 Township:19S Range:19E (OF M/L) | 1241541 | 1977 / 371 | 4 pages | Flag |
| 120 | | CON | 06/30/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | DENBURY ONSHORE L L C | Section:65 Township:19S Range:18E (OF M/L) | 1241542 | 1977 / 375 | 4 pages | Flag |
| 121 | | CON | 07/05/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:3 Township:19S Range:13E (OF M/L) | 1241784 | 1977 / 692 | 3 pages | Flag |
| 122 | | CON | 07/06/06 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P<br>CASTEX ENERGY INC | Section:3 Township:19S Range:13E (OF M/L) | 1241824 | 1977 / 745 | 3 pages | Flag |
| 123 | | CON | 03/02/07 | DECLARATION | APACHE LOUISIANA MINERALS INC | DENBURY ONSHORE L L C | (OF M/L) BAYOU JEAN LACROIX FIELD Section:5 Township:20S Range:19E | 1273155 | 2046 / 516 | 4 pages | Flag |
| 124 | | CON | 08/12/08 | DECLARATION | APACHE LOUISIANA MINERALS INC | CHAMPION ENERGY L L C | Section:6 Township:20S Range:19E (OF M/L) BAY BAPTISTE FIELD | 1303962 | 2115 / 169 | 5 pages | Flag |
| 125 | | CON | 04/15/09 | DECLARATION | APACHE LOUISIANA MINERALS L L C | HOUSTON ENERGY L P | Section:21 Township:19S Range:15E<br>Section:22 Township:19S Range:15E (OF M/L) | 1320047 | 2165 / 643 | 5 pages | Flag |
| 126 | | CON | 06/05/09 | DECLARATION | APACHE LOUISIANA MINERALS L L C | BLUE MOON EXPLORATION CO | Section:15 Township:19S Range:19E<br>Section:33 Township:19S Range:15E (OF M/L) | 1324033 | 2154 / 185 | 5 pages | Flag |
| 127 | | CON | 07/24/09 | DECLARATION | APACHE LOUISIANA MINERALS L L C | PHOENIX EXPLORATION LOUISIANA C LLC | Section:15 Township:19S Range:13E (OF M/L) | 1328002 | 2161 / 564 | 5 pages | Flag |
| 128 | | CON | 07/24/09 | DECLARATION | APACHE LOUISIANA MINERALS L L C | PHOENIX EXPLORATION LOUISIANA C LLC | Section:6 Township:19S Range:14E | 1328003 | 2161 / 569 | 5 pages | Flag |

*Louisiana Terrebonne Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 129 | | CON | 01/06/10 | DECLARATION | APACHE LOUISIANA MINERALS L L C | PETROQUEST ENERGY'L L C | (OF M/L)<br>Section:72 Township:18S Range:18E<br>Section:73 Township:18S Range:18E<br>(OF M/L) | 1388824 | 2179 / 462 | 8 pages | Flag |
| 130 | | CON | 01/22/10 | DECLARATION | APACHE LOUISIANA MINERALS L L C | APACHE CORP | Township:18S Range:16E<br>SECS 23 THRU 26 & 35 & 36<br>Township:18S Range:18E<br>SECS 62,63,64 & 66 THRU 75 & 78, 80 & 81<br>Township:19S Range:13E<br>SECS 1 THRU 15 & 17 THRU 36<br>Township:19S Range:14E<br>SECS 6, 7,16, 19, 30 & 31<br>Township:19S Range:15E<br>SECS 1 THRU15 & 17 THRU 36<br>Township:19S Range:16E<br>SECS 1 THRU 15 & 17 THRU 23 & 26 THRU 29 & 31 THRU 34<br>Township:19S Range:17E<br>SECS 14, 15 & 82<br>Township:19S Range:18E<br>SECS 65 THRU 75 & 81, 83, 84, 98 & 99<br>Township:19S Range:19E<br>SECS 11,12, 13, 15 & 26 THRU 49 & 53<br>Township:20S Range:17E<br>SECS 1, 2 11, 13 & 24<br>Township:20S Range:18E<br>SECS 108 THRU 113<br>Township:20S Range:19E<br>SECS 1 THRU 15 & 17 THRU 36<br>Township:20S Range:20E<br>SECS 1 THRU 15 & 17 THRU 27 & 30, 31, 35 & 36<br>Township:20S Range:15E<br>SECS 5 THRU 8 & 17 THRU 20<br>(OF M/L)<br>Township:18S Range:16E<br>SECS 23 THRU 26 & 35 & 36<br>Township:18S Range:18E<br>SECS 62,63,64 & 66 THRU 75 & 78, 80 & 81<br>Township:19S Range:13E | 1398831 | 2182 / 10 | 14 pages | Flag |
| 131 | | CON | 03/10/10 | DECLARATION | APACHE LOUISIANA MINERALS L L C | COVINGTON EXPLORATION CO L L C | Section:23 Township:19S Range:15E<br>Section:26 Township:19S Range:15E<br>(OF M/L) LAKE DECADE FIELD | 1342676 | 2186 / 811 | 5 pages | Flag |
| 132 | | CON | 10/01/10 | DECLARATION | APACHE LOUISIANA MINERALS L L C | HOUSTON ENERGY L P | Section:21 Township:19S Range:15E<br>Section:22 Township:19S Range:15E<br>(OF & AMENDMT TO M/L) | 1357712 | 2213 / 844 | 5 pages | Flag |
| 133 | | CON | 04/21/11 | DECLARATION | APACHE LOUISIANA MINERALS L L C | COVINGTON EXPLORATION CO L L C | Section:23 Township:19S Range:15E<br>Section:26 Township:19S Range:15E<br>(OF OIL & GAS LEASE) | 1372057 | 2237 / 596 | 5 pages | Flag |
| 134 | | CON | 05/20/03 | LEASE | APACHE LOUISIANA MINERALS INC | UNION OIL CO OF CALIFORNIA | SEC:19 T18S:R15E | 1147074 | 1819 / 269 | 4 pages | Flag |
| 135 | | CON | 07/29/03 | LEASE | APACHE LOUISIANA MINERALS INC | DENBURY RESOURCES INC | SEC:17 T20S:R19E | 1154549 | 1829 / 421 | 7 pages | Flag |
| 136 | | CON | 06/17/05 | LEASE | APACHE LOUISIANA MINERALS INC | EPL OF LOUISIANA L L C | Section:36 Township:19S Range:19E<br>(SURFACE LEASE) | 1212401 | 1921 / 401 | 8 pages | Flag |
| 137 | | CON | 06/29/05 | LEASE | APACHE LOUISIANA MINERALS INC | EPL OF LOUISIANA L L C | Section:108 Township:20S Range:18E<br>Section:111 Township:20S Range:18E<br>(SURFACE LEASE & SUBSURFACE EASEMT AGREMT) | 1213484 | 1923 / 483 | 7 pages | Flag |
| 138 | | CON | 01/30/06 | LEASE | APACHE LOUISIANA MINERALS INC | CROSSTEX LIG L L C | Section:72 Township:18S Range:18E | 1229985 | 1953 / 420 | 7 pages | Flag |
| 139 | | CON | 05/13/08 | LEASE | APACHE LOUISIANA MINERALS INC | HELIS OIL & GAS CO L L C | Section:17 Township:19S Range:16E | 1296310 | 2095 / 144 | 10 pages | Flag |

*Louisiana Terrebonne Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 140 | | CON | 11/02/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORP | (SURFACE LEASE & SUBSURFACE EASEMENT AGREEMT) | 1193846 | 1890 / 500 | 5 pages | Flag |
| 141 | | CON | 11/02/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORP | T19S-R19E & T20S-R19E | 1193848 | 1890 / 508 | 4 pages | Flag |
| 142 | | CON | 11/02/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | EXXON MOBIL CORP | T20S-R20E | 1193849 | 1890 / 512 | 4 pages | Flag |
| 143 | | CON | 11/02/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | EXXON MOBIL CORP | T19S-R13E & T19S-R14E | 1193851 | 1890 / 519 | 6 pages | Flag |
| 144 | | CON | 11/02/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORP | | 1193853 | 1890 / 529 | 4 pages | Flag |
| 145 | | CON | 11/02/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORP | T18S-R18E & T19S-R18E | 1193854 | 1890 / 533 | 6 pages | Flag |
| 146 | | CON | 11/02/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | EXXON MOBIL CORP | | 1193856 | 1890 / 543 | 4 pages | Flag |
| 147 | | CON | 11/02/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORP | T18S-R18E & T19S-R18E | 1193862 | 1890 / 561 | 4 pages | Flag |
| 148 | | CON | 11/02/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | EXXON MOBIL CORP | T19S-R13E & T19S-R14E | 1193867 | 1890 / 596 | 5 pages | Flag |
| 149 | | CON | 11/02/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | EXXON MOBIL CORP | T19S-R19E & T20S-R19E | 1193869 | 1890 / 604 | 4 pages | Flag |
| 150 | | CON | 12/21/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P | Section:3 Township:19S Range:13E | 1197593 | 1897 / 40 | | |
| 151 | | CON | 12/22/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | Section:33 Township:19S Range:15E  Section:34 Township:19S Range:15E | 1197796 | 1897 / 308 | 4 pages | Flag |
| 152 | | CON | 12/22/04 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | Section:71 Township:18S Range:18E | 1197797 | 1897 / 312 | 4 pages | Flag |
| 153 | | CON | 05/06/05 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:36 Township:19S Range:19E (DECLARATION OF M/L) | 1209170 | 1915 / 744 | 5 pages | Flag |
| 154 | | CON | 05/06/05 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:66 Township:19S Range:18E  Section:67 Township:18S Range:18E  Section:67 Township:19S Range:18E  Section:72 Township:18S Range:18E  Section:73 Township:18S Range:18E (DECLARATION OF M/L) | 1209171 | 1915 / 749 | 6 pages | Flag |
| 155 | | CON | 06/10/05 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:14 Township:19S Range:17E  Section:15 Township:19S Range:17E  Section:82 Township:19S Range:17E  Section:1 Township:20S Range:17E  Section:2 Township:20S Range:17E  Section:81 Township:19S Range:18E  Section:83 Township:19S Range:18E  Section:84 Township:19S Range:18E  Section:98 Township:19S Range:18E  Section:99 Township:19S Range:18E  Section:108 Township:20S Range:18E  Section:109 Township:20S Range:18E  Section:110 Township:20S Range:18E  Section:111 Township:20S Range:18E  Section:112 Township:19S Range:18E  Section:113 Township:19S Range:18E  Section:12 Township:20S Range:17E  Section:13 Township:20S Range:17E  Section:24 Township:20S Range:17E | 1211280 | 1919 / 386 | 6 pages | Flag |
| 156 | | CON | 06/10/05 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | EXXON MOBIL CORP | Section:14 Township:19S Range:17E  Section:15 Township:19S Range:17E  Section:82 Township:19S Range:17E  Section:1 Township:20S Range:17E  Section:2 Township:20S Range:17E  Section:81 Township:19S Range:18E  Section:83 Township:19S Range:18E | 1211841 | 1920 / 506 | 6 pages | Flag |

**Louisiana Terrebonne Parish Clerk of Court Public Record Search**
**Oil and Gas Related Records for Apache Louisiana Minerals (ALM)**

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 157 | CON | | 03/09/06 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | WILLIAMS CLAYTON ENERGY INC | Section:84 Township:19S Range:18E<br>Section:93 Township:19S Range:18E<br>Section:99 Township:19S Range:18E<br>Section:108 Township:20S Range:18E<br>Section:109 Township:20S Range:18E<br>Section:110 Township:20S Range:18E<br>Section:112 Township:20S Range:18E<br>Section:113 Township:20S Range:18E<br>Section:12 Township:20S Range:17E<br>Section:13 Township:20S Range:17E<br>Section:24 Township:20S Range:17E<br>Section:111 Township:20S Range:18E | 1232072 | 1959 / 731 | 5 pages | Flag |
| 158 | CON | | 03/13/06 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | WILLIAMS CLAYTON ENERGY INC | Section:14 Township:19S Range:17E<br>Section:15 Township:19S Range:17E<br>Section:82 Township:19S Range:17E<br>Section:1 Township:20S Range:17E<br>Section:2 Township:20S Range:17E<br>Section:73 Township:18S Range:18E<br>Section:73 Township:18S Range:18E (& APPROVAL) | 1232253 | 1960 / 142 | 9 pages | Flag |
| 159 | CON | | 10/11/06 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:66 Township:18S Range:18E<br>Section:67 Township:18S Range:18E | 1249766 | 1996 / 484 | 10 pages | Flag |
| 160 | CON | | 11/02/06 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | HELIS OIL & GAS CO L L C | Section:82 Township:19S Range:17E<br>Section:98 Township:19S Range:18E<br>Section:99 Township:19S Range:18E<br>LAKE GERO FIELD | 1251588 | 2001 / 34 | 14 pages | Flag |
| 161 | CON | | 01/09/07 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | JASMINE PETROLEUM L L C | Section:64 Township:18S Range:18E | 1255258 | 2010 / 702 | 14 pages | Flag |
| 162 | CON | | 03/16/07 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:13 Township:19S Range:15E<br>Section:24 Township:19S Range:15E<br>LAKE DECADE FIELD | 1261628 | 2020 / 614 | 14 pages | Flag |
| 163 | CON | | 04/27/07 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | DENBURY ONSHORE L L C | Section:67 Township:18S Range:18E<br>SOUTH CHAUVIN FIELD | 1264814 | 2028 / 332 | 14 pages | Flag |
| 164 | CON | | 06/18/07 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | HILLIARD ACQUISTIONS I L L C | Section:9 Township:15S Range:16E<br>Section:10 Township:15S Range:16E<br>Section:11 Township:15S Range:16E<br>EAST LAKE DECADE FIELD | 1268992 | 2037 / 590 | 15 pages | Flag |
| 165 | CON | | 06/22/07 | MINERAL LEASE | APACHE LOUISIANA MINERALS INC | HELIS OIL & GAS CO L L C<br>HOUSTON ENERGY L P | Section:17 Township:19S Range:16E<br>Section:18 Township:19S Range:16E<br>LAKE DECADE FIELD | 1269405 | 2038 / 404 | 15 pages | Flag |
| 166 | CON | | 02/14/13 | MISCELLANEOUS - CORP | APACHE LOUISIANA MINERALS INC<br>HOUSTON ENERGY L P<br>PETROQUEST ENERGY L L C<br>DENBURY ONSHORE L L C | APACHE LOUISIANA MINERALS I L L C<br>APACHE LOUISIANA MINERALS INC<br>APACHE LOUISIANA MINERALS INC<br>DUPLANTIS, JOSEPH G<br>WATKINS CO<br>CAMORS, MARIE FRANCE<br>WEDDELL, KENNETH G<br>LIEDTKE, MARTHA REED P<br>LIEDTKE, MARTHA P<br>APACHE LOUISIANA MINERALS INC<br>DUPLANTIS, JOSEPH G<br>WATKINS CO | SEC 6 T19S-R14E | 1419932 | 2319 / 381 | 4 pages | Flag |
| 202 | CON | | 09/28/04 | PARTIAL RELEASE | | | Township:18S Range:18E | 1191219 | 1886 / 443 | 1 page | Flag |
| 203 | CON | | 07/14/05 | PARTIAL RELEASE | | | ORDER #490-B-2 | 1214771 | 1926 / 391 | 3 pages | Flag |

**Louisiana Terrebonne Parish Clerk of Court Public Record Search**
**Oil and Gas Related Records for Apache Louisiana Minerals (ALM)**

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 204 | | CON | 12/04/07 | PARTIAL RELEASE | CAZA PETROLEUM INC | CAMORS, MARIE FRANCE<br>WEDDELL, KENNETH G<br>APACHE LOUISIANA MINERALS INC | Section:1 Township:20S Range:17E<br>Section:109 Township:20S Range:18E | 1283691 | 2068 / 40 | 3 pages | Flag |
| 205 | | CON | 05/14/08 | PARTIAL RELEASE | BROWNING OIL CO INC | APACHE LOUISIANA MINERALS INC | Section:5 Township:20S Range:15E<br>ORDER #681-R | 1296469 | 2095 / 532 | 5 pages | Flag |
| 206 | | CON | 12/16/08 | PARTIAL RELEASE | JASMINE PETROLEUM L L C<br>AMPLE ENERGY INC<br>CHAUVIN GAS PARTNERS L L C<br>CONDOR PETROLEUM INC<br>CALYPSO NORTH AMERICA ENERGY SERIES A LP<br>ENERGY PROPERTIES INC<br>SELCO L L C<br>VISION ENERGY L L C<br>JASMINE PETROLEUM L L C<br>AMPLE ENERGY INC<br>CHAUVIN GAS PARTNERS L L C<br>CONDOR PETROLEUM INC | APACHE LOUISIANA MINERALS INC<br>DUPLANTIS, CARL<br>MARTIN, IRIS | (OF M/L) CHAUVIN FIELD | 1311972 | 2130 / 604 | 18 pages | Flag |
| 207 | | CON | 09/21/11 | PARTIAL RELEASE | CALYPSO NORTH AMERICA ENERGY SERIES A LP<br>ENERGY XXI ONSHORE L L C<br>CL & F RESOURCES L P<br>PIQUANT INC | APACHE LOUISIANA MINERALS INC | (OF M/L) | 1369665 | 2233 / 653 | 3 pages | Flag |
| 208 | | CON | 02/07/12 | PARTIAL RELEASE | PETROQUEST ENERGY L L C<br>HILCORP L P<br>HILCORP ENERGY CO | APACHE LOUISIANA MINERALS INC | Section:72 Township:18S Range:18E<br>Section:73 Township:18S Range:18E<br>Section:66 Township:18S Range:18E<br>Section:67 Township:19S Range:18E<br>(OF M/L) | 1391999 | 2273 / 362 | 9 pages | Flag |
| 209 | | CON | 03/16/12 | PARTIAL RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS L L C<br>APACHE LOUISIANA MINERALS INC | Section:71 Township:18S Range:18E<br>Section:73 Township:18S Range:18E<br>Section:66 Township:19S Range:18E<br>Section:67 Township:19S Range:18E<br>(OF M/L) SOUTH CHAUVIN FIELD | 1394845 | 2277 / 655 | 8 pages | Flag |
| 210 | | CON | 07/29/03 | PERMITS | APACHE LOUISIANA MINERALS INC | DENBURY RESOURCES INC | SEC 8 & 9 T19S-R19E | 1154548 | 1829 / 412 | 9 pages | Flag |
| 211 | | CON | 10/03/03 | PERMITS | APACHE LOUISIANA MINERALS INC | BADGER OIL CORP | SEC 19 & 74 T19S-R18E | 1160873 | 1888 / 81 | 9 pages | Flag |
| 212 | | CON | 10/23/03 | PERMITS | APACHE LOUISIANA MINERALS INC | PETROQUEST ENERGY L L C | SEC 67 71 72 73 & 64 T18S-R18E | 1162632 | 1841 / 105 | 5 pages | Flag |
| 213 | | CON | 03/04/04 | PERMITS | APACHE LOUISIANA MINERALS INC | PALACE OPERATING CO | SEC 6 & 7 T19S-R13E | 1173551 | 1859 / 461 | 5 pages | Flag |
| 214 | | CON | 07/12/04 | PERMITS | APACHE LOUISIANA MINERALS INC | SOUTHWESTERN ENERGY PRODUCTION CO | SEC 15 & 22 T19S-R15E | 1184695 | 1876 / 497 | 5 pages | Flag |
| 215 | | CON | 10/05/04 | PERMITS | APACHE LOUISIANA MINERALS INC | PETROQUEST ENERGY L L C | SEC 66 67 71 72 & 73 T18S-R18E | 1191804 | 1887 / 253 | 5 pages | Flag |
| 216 | | CON | 03/18/05 | PERMITS | APACHE LOUISIANA MINERALS INC | DISCOVERY GAS TRANSMISSION L L C | Section:37 Township:20S Range:19E<br>(PIPELINE PERMIT) | 1204794 | 1908 / 656 | 9 pages | Flag |
| 217 | | CON | 03/18/05 | PERMITS | APACHE LOUISIANA MINERALS INC | APACHE CORP | (PIPELINE PERMIT) BAYOU PENCHANT FI... | 1204799 | 1908 / 665 | 9 pages | Flag |
| 218 | | CON | 03/24/05 | PERMITS | APACHE LOUISIANA MINERALS INC | PETROQUEST ENERGY L L C | Section:72 Township:18S Range:18E<br>Section:73 Township:18S Range:18E<br>(PIPELINE PERMIT) | 1205243 | 1909 / 369 | 9 pages | Flag |
| 219 | | CON | 06/07/05 | PERMITS | APACHE LOUISIANA MINERALS INC | HILCORP ENERGY I LP | Section:34 Township:19S Range:26E<br>Section:35 Township:19S Range:26E<br>(PIPELINE PERMIT) | 1211472 | 1919 / 669 | 8 pages | Flag |
| 220 | | CON | 06/17/05 | PERMITS | APACHE LOUISIANA MINERALS INC | EPL OF LOUISIANA L L C | Section:36 Township:19S Range:19E<br>(PIPELINE PERMIT) | 1212402 | 1921 / 409 | 8 pages | Flag |
| 221 | | CON | 06/17/05 | PERMITS | APACHE LOUISIANA MINERALS INC | EPL OF LOUISIANA L L C | Section:37 Township:19S Range:19E<br>(PIPELINE PERMIT) | 1212403 | 1921 / 417 | 8 pages | Flag |
| 222 | | CON | 06/17/05 | PERMITS | APACHE LOUISIANA MINERALS INC | EPL OF LOUISIANA L L C | Section:36 Township:19S Range:19E<br>Section:37 Township:19S Range:19E<br>(PIPELINE PERMIT) | 1212404 | 1921 / 425 | 8 pages | Flag |
| 223 | | CON | 06/28/05 | PERMITS | APACHE LOUISIANA MINERALS INC | XPLOR ENERGY OPERATING CO | Section:83 Township:19S Range:18E | 1213348 | 1923 / 164 | 6 pages | Flag |

*Louisiana Terrebonne Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 224 | | CON | 01/10/06 | PERMITS | APACHE LOUISIANA MINERALS INC | ASPECT ENERGY L L C | Section:1 Township:20S Range:17E<br>Section:12 Township:20S Range:17E<br>Section:108 Township:20S Range:18E<br>Section:109 Township:20S Range:18E<br>Section:110 Township:20S Range:18E<br>Section:111 Township:20S Range:18E<br>(CANAL & WATERWAY)<br>Section:83 Township:19S Range:18E<br>Section:1 Township:20S Range:17E<br>Section:12 Township:20S Range:17E<br>Section:108 Township:20S Range:18E<br>Section:109 Township:20S Range:18E | 1227635 | 1951 / 137 | 8 pages | Flag |
| 225 | | CON | 04/03/06 | PERMITS | APACHE LOUISIANA MINERALS INC | EPL OF LOUISIANA L L C | Section:5 Township:19S Range:15E<br>Section:29 Township:19S Range:15E<br>Section:32 Township:19S Range:15E<br>(PIPELINE PERMIT) | 1234160 | 1964 / 109 | 9 pages | Flag |
| 226 | | CON | 04/05/06 | PERMITS | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:108 Township:20S Range:18E<br>Section:111 Township:20S Range:18E<br>(PIPELINE PERMIT) | 1234361 | 1964 / 520 | 8 pages | Flag |
| 227 | | CON | 04/05/06 | PERMITS | APACHE LOUISIANA MINERALS INC | APACHE CORP | Section:6 Township:19S Range:13E<br>(PIPELINE PERMIT)<br>Section:1 Township:19S Range:13E<br>(CANAL & WATERWAY PERMIT) | 1234362 | 1964 / 528 | 5 pages | Flag |
| 228 | | CON | 05/02/06 | PERMITS | APACHE LOUISIANA MINERALS INC | LAKE RACCOURCI GATHERING SYSTEM L L C | Section:34 Township:19S Range:19E<br>(PIPELINE PERMIT & SURFACE RIGHT OF USE FOR PLATFORM) | 1236463 | 1968 / 212 | 8 pages | Flag |
| 229 | | CON | 05/08/06 | PERMITS | APACHE LOUISIANA MINERALS INC | KASH OIL & GAS INC | Section:73 Township:18S Range:18E<br>Section:67 Township:18S Range:18E<br>Section:71 Township:18S Range:18E<br>Section:72 Township:18S Range:18E<br>(CANAL & WATERWAY PERMIT)<br>Section:73 Township:18S Range:18E<br>Section:67 Township:18S Range:18E<br>Section:64 Township:18S Range:18E<br>Section:71 Township:18S Range:18E<br>Section:72 Township:18S Range:18E | 1236938 | 1968 / 806 | 6 pages | Flag |
| 230 | | CON | 06/18/07 | PERMITS | APACHE LOUISIANA MINERALS INC | DENBURY ONSHORE L L C | Section:1 Township:20S Range:19E<br>Section:38 Township:19S Range:19E<br>Section:49 Township:19S Range:19E<br>(PIPELINE PERMIT & SURFACE RIGHT OF USE FOR PLATFORM) BAYOU JEAN LACROIX FIELD | 1269000 | 2037 / 624 | 9 pages | Flag |
| 231 | | CON | 08/29/09 | PERMITS | APACHE LOUISIANA MINERALS L L C<br>HILCORP ENERGY I L P<br>HILCORP ENERGY CO | Section:72 Township:18S Range:18E<br>(PIPELINE PERMIT) | 1330582 | 2165 / 632 | 8 pages | Flag |
| 232 | | CON | 04/13/11 | PERMITS | APACHE LOUISIANA MINERALS L L C | PETROQUEST ENERGY L L C | Section:66 Township:18S Range:18E<br>Section:67 Township:18S Range:18E<br>(PIPELINE PERMIT) | 1371472 | 2236 / 786 | 10 pages | Flag |
| 233 | | CON | 04/26/11 | PERMITS | APACHE LOUISIANA MINERALS L L C | PETROQUEST ENERGY L L C | Section:19 Township:19S Range:16E<br>Section:21 Township:19S Range:16E<br>Section:27 Township:19S Range:16E<br>Section:28 Township:19S Range:16E<br>(PIPELINE PERMIT) LAKE DECADE FIELD | 1372263 | 2238 / 10 | 9 pages | Flag |
| 236 | | CON | 04/25/03 | RATIFICATION | APACHE LOUISIANA MINERALS INC | COASTLINE ENERGY CORP<br>UNIT PETROLEUM CO | Section:66 Township:18S Range:18E | 1145760 | 1315 / 493 | 2 pages | Flag |
| 237 | | CON | 02/14/08 | RATIFICATION | APACHE LOUISIANA MINERALS INC | | Section:67 Township:18S Range:18E<br>(& CONSENT TO ASSIGN AGREEMENT) SOUTH CHAUVIN FIELD | 1288628 | 2077 / 546 | 7 pages | Flag |
| 238 | | CON | 04/11/03 | RELEASE | LATERRE CO LTD<br>CASTEX ENERGY INC | APACHE LOUISIANA MINERALS INC<br>APACHE NORTH AMERICA INC | | 1144571 | 1814 / 500 | 6 pages | Flag |
| 239 | | CON | 10/27/05 | RELEASE | EPL OF LOUISIANA L L C | APACHE LOUISIANA MINERALS INC | LAKE DECADE AREA | 1222350 | 1940 / 792 | 3 pages | Flag |

11 of 16

Terrebonne Records - Oil and Gas Related-record court-v2.xlsx

**Louisiana Terrebonne Parish Clerk of Court Public Record Search**
**Oil and Gas Related Records for Apache Louisiana Minerals (ALM)**

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount | Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 240 | | CON | 10/27/05 | RELEASE | EPL OF LOUISIANA L L C | APACHE LOUISIANA MINERALS INC | (LAKE DECADE AREA) | 1222352 | 1940 / 798 | | 3 pages | Flag |
| 241 | | CON | 01/17/06 | RELEASE | EPL OF LOUISIANA L L C | APACHE LOUISIANA MINERALS INC | LAPEYROUSE FIELD | 1227969 | 1951 / 522 | | 3 pages | Flag |
| 242 | | CON | 01/17/06 | RELEASE | EPL OF LOUISIANA L L C | APACHE LOUISIANA MINERALS INC | LAPEYROUSE FIELD | 1227970 | 1951 / 525 | | 3 pages | Flag |
| 243 | | CON | 01/17/06 | RELEASE | EPL OF LOUISIANA L L C | APACHE LOUISIANA MINERALS INC | LIRETTE AREA | 1227971 | 1951 / 528 | | 3 pages | Flag |
| 244 | | CON | 01/17/06 | RELEASE | EPL OF LOUISIANA L L C | APACHE LOUISIANA MINERALS INC | PALMETTO BAYOU AREA | 1227972 | 1951 / 531 | | 3 pages | Flag |
| 245 | | CON | 01/17/06 | RELEASE | EPL OF LOUISIANA L L C | APACHE LOUISIANA MINERALS INC | BAYOU PENCHANT AREA | 1227973 | 1951 / 534 | | 3 pages | Flag |
| 246 | | CON | 03/06/06 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | BAYOU PENCHANT | 1231679 | 1959 / 429 | | 2 pages | Flag |
| 247 | | CON | 03/22/06 | RELEASE | CASTEX ENERGY 1995 L P; CASTEX ENERGY INC | APACHE LOUISIANA MINERALS INC | | 1233058 | 1962 / 7 | | 2 pages | Flag |
| 248 | | CON | 04/05/06 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | Section:6 Township:19S Range:13E | 1234364 | 1964 / 537 | | 3 pages | Flag |
| 249 | | CON | 06/19/06 | RELEASE | BP AMERICA PRODUCTION CO | APACHE LOUISIANA MINERALS INC | Section:6 Township:19S Range:14E; Section:28 Township:19S Range:13E; Section:29 Township:19S Range:13E; Section:30 Township:19S Range:13E; Section:32 Township:19S Range:13E; Section:33 Township:19S Range:13E; Section:6 Township:19S Range:14E; Section:28 Township:19S Range:13E; Section:29 Township:19S Range:13E; Section:29 Township:19S Range:13E; Section:30 Township:19S Range:13E; Section:32 Township:19S Range:13E | 1240338 | 1975 / 181 | | 3 pages | Flag |
| 250 | | CON | 10/06/06 | RELEASE | APACHE CORP; BP AMERICA PRODUCTION CO | APACHE LOUISIANA MINERALS INC | BAYOU PENCHANT | 1249455 | 1995 / 732 | | 3 pages | Flag |
| 251 | | CON | 10/25/06 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | CHAUVIN SOUTH | 1250994 | 1999 / 797 | | 2 pages | Flag |
| 252 | | CON | 01/22/07 | RELEASE | WILLIAMS CLAYTON ENERGY INC | APACHE LOUISIANA MINERALS INC | | 1257329 | 2013 / 107 | | 2 pages | Flag |
| 253 | | CON | 02/07/07 | RELEASE | PETROQUEST ENERGY L L C | APACHE LOUISIANA MINERALS INC | | 1258717 | 2015 / 622 | | 2 pages | Flag |
| 254 | | CON | 02/09/07 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | CHAUVIN SOUTH - LAS523 | 1258905 | 2016 / 22 | | 2 pages | Flag |
| 255 | | CON | 02/26/07 | RELEASE | APACHE CORP; CASTEX ENERGY 2005 L P; CASTEX ENERGY INC | APACHE LOUISIANA MINERALS INC | BAYOU PENCHANT | 1260109 | 2017 / 650 | | 3 pages | Flag |
| 256 | | CON | 05/14/07 | RELEASE | ENERGY XXI GULF COAST INC | APACHE LOUISIANA MINERALS INC | | 1266145 | 2031 / 68 | | | |
| 257 | | CON | 11/16/07 | RELEASE | HELIS OIL & GAS CO L L C | APACHE LOUISIANA MINERALS INC | Section:12 Township:20S Range:17E | 1282281 | 2065 / 230 | | 2 pages | Flag |
| 258 | | CON | 01/02/08 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | Section:108 Township:20S Range:18E; Section:109 Township:20S Range:18E; Section:111 Township:20S Range:18E | 1285449 | 2071 / 635 | | 4 pages | Flag |
| 259 | | CON | 01/02/08 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | Section:12 Township:20S Range:17E; Section:13 Township:20S Range:18E; Section:109 Township:20S Range:18E; Section:110 Township:20S Range:18E; Section:111 Township:20S Range:18E; Section:112 Township:20S Range:18E | 1285470 | 2071 / 674 | | 2 pages | Flag |
| 260 | | CON | 09/16/08 | RELEASE | ENERGY XXI GULF COAST INC | APACHE LOUISIANA MINERALS INC | Section:12 Township:20S Range:17E; Section:13 Township:20S Range:17E; Section:109 Township:20S Range:18E; Section:110 Township:20S Range:18E | 1305796 | 2118 / 304 | | 3 pages | Flag |
| 261 | | CON | 12/03/08 | RELEASE | HILCORP ENERGY I LP; HILCORP ENERGY CO | APACHE LOUISIANA MINERALS INC | Section:111 Township:20S Range:18E (OF M/L) LSE #10335000 | 1311335 | 2129 / 558 | | 7 pages | Flag |
| 262 | | CON | 01/24/09 | RELEASE | PETROQUEST ENERGY L L C; BLUE MOON EXPLORATION CO; HILLIARD ACQUISITIONS I LLC | APACHE LOUISIANA MINERALS INC | Section:9 Township:19S Range:16E | 1313673 | 2134 / 470 | | 3 pages | Flag |

*Louisiana Terrebonne Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 263 | | CON | 02/13/09 | RELEASE | HELIS OIL & GAS CO L L C / HOUSTON ENERGY L P / SEWARE INVESTMENTS L L C | APACHE LOUISIANA MINERALS INC | Section:10 Township:19S Range:16E / Section:11 Township:19S Range:16E / Section:2 Township:19S Range:16E / Section:3 Township:19S Range:16E | 1315808 | 2139 / 294 | 3 pages | Flag |
| 264 | | CON | 04/01/09 | RELEASE | HILCORP ENERGY I L P / HILCORP ENERGY CO | APACHE LOUISIANA MINERALS INC | | 1319125 | 2144 / 204 | 3 pages | Flag |
| 265 | | CON | 07/30/09 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | Section:13 Township:19S Range:15E / Section:24 Township:19S Range:15E (OF M/J) | 1328438 | 2162 / 293 | 2 pages | Flag |
| 266 | | CON | 11/20/09 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | Section:9 Township:19S Range:16E (OF M/J) | 1336102 | 2174 / 839 | 2 pages | Flag |
| 267 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC | (OF M/J) BAYOU PENCHANT | 1337952 | 2178 / 56 | 2 pages | Flag |
| 268 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC | (OF M/J) LAKE THERIOT | 1337953 | 2178 / 58 | 2 pages | Flag |
| 269 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC | (OF M/J) CHAUVIN SOUTH | 1337954 | 2178 / 60 | 2 pages | Flag |
| 270 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC | (OF M/J) LAPEYROUSE | 1337955 | 2178 / 62 | 2 pages | Flag |
| 271 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC | (OF M/J) LIRETTE | 1337956 | 2178 / 64 | 2 pages | Flag |
| 272 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC | (OF M/J) BAYOU JEAN LA CROIX | 1337957 | 2178 / 66 | 2 pages | Flag |
| 273 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC | (OF SURFACE USE & ROYALTY AGREEMT) | 1337964 | 2178 / 80 | 2 pages | Flag |
| 274 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC / APACHE CORP | (OF SURFACE USE & ROYALTY AGREEMT) | 1337965 | 2178 / 82 | 2 pages | Flag |
| 275 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC / APACHE CORP | (OF SURFACE USE & ROYALTY AGREEMT) | 1337966 | 2178 / 84 | 2 pages | Flag |
| 276 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC / APACHE CORP | (OF SURFACE USE & ROYALTY AGREEMT) | 1337967 | 2178 / 86 | 2 pages | Flag |
| 277 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC / APACHE CORP | (OF SURFACE USE & ROYALTY AGREEMT) | 1337968 | 2178 / 88 | 2 pages | Flag |
| 278 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS INC | (OF SURFACE USE & ROYALTY AGREEMT) | 1337969 | 2178 / 90 | 2 pages | Flag |
| 279 | | CON | 01/20/10 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | (OF M/J) BAYOU PENCHANT | 1339676 | 2181 / 647 | 2 pages | Flag |
| 280 | | CON | 01/20/10 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | (OF M/J) LAKE THERIOT | 1339677 | 2181 / 649 | 2 pages | Flag |
| 281 | | CON | 01/20/10 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | (OF M/J) CHAUVIN SOUTH | 1339678 | 2181 / 651 | 2 pages | Flag |
| 282 | | CON | 01/20/10 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | (OF M/J) LAPEYROUSE | 1339679 | 2181 / 653 | 2 pages | Flag |

## Louisiana Terrebonne Parish Clerk of Court Public Record Search
## Oil and Gas Related Records for Apache Louisiana Minerals (ALM)

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 283 | | CON | 01/20/10 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | (OF M/L) LIRETTE | 1399680 | 2181 / 655 | 2 pages | Flag |
| 284 | | CON | 01/20/10 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS L L C<br>APACHE LOUISIANA MINERALS INC<br>APACHE LOUISIANA MINERALS INC | (OF M/L) BAYOU JEAN LA CROIX | 1399681 | 2181 / 657 | 2 pages | Flag |
| 285 | | CON | 02/26/10 | RELEASE | ENERGY XXI ONSHORE L L C | APACHE LOUISIANA MINERALS INC | (OF M/L) | 1341986 | 2185 / 670 | 3 pages | Flag |
| 286 | | CON | 02/26/10 | RELEASE | ENERGY XXI ONSHORE L L C | APACHE LOUISIANA MINERALS INC | (OF M/L) | 1341987 | 2185 / 673 | 3 pages | Flag |
| 287 | | CON | 05/28/10 | RELEASE | CASTEX ENERGY INC | APACHE LOUISIANA MINERALS INC | (OF M/L) | 1348398 | 2197 / 192 | 2 pages | Flag |
| 288 | | CON | 05/28/10 | RELEASE | CASTEX ENERGY 1995 L P<br>CASTEX ENERGY PARTNERS L P<br>CASTEX ENERGY II L L P<br>ENERGY XXI ONSHORE L L C | APACHE LOUISIANA MINERALS INC | (OF M/L) | 1348399 | 2197 / 194 | 3 pages | Flag |
| 289 | | CON | 01/04/11 | RELEASE | PETROQUEST ENERGY L L C | APACHE LOUISIANA MINERALS L L C | (OF M/L) | 1364408 | 2224 / 635 | 2 pages | Flag |
| 290 | | CON | 02/04/11 | RELEASE | HOUSTON ENERGY L P | APACHE LOUISIANA MINERALS L L C | (OF M/L) | 1366772 | 2229 / 63 | 2 pages | Flag |
| 291 | | CON | 03/30/11 | RELEASE | SEWANEE INVESTMENTS L L C<br>BROWNING OIL CO INC<br>COASTLINE ENERGY CORP<br>ASPECT ENERGY L L C<br>THE RUDMAN PARTNERSHIP<br>WHITSON, JAMES A JR | APACHE LOUISIANA MINERALS INC | OF M/L | 1370388 | 2234 / 871 | 11 pages | Flag |
| 292 | | CON | 04/06/11 | RELEASE | COVINGTON EXPLORATION CO L L C | APACHE LOUISIANA MINERALS L L C | (OF OIL & GAS LEASE) LAKE DECADE | 1370052 | 2235 / 856 | 2 pages | Flag |
| 293 | | CON | 05/19/11 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | Section:6 Township:19S Range:14E<br>(OF OIL & GAS LEASE) BAYOU PENCHANT | 1373752 | 2240 / 604 | 2 pages | Flag |
| 294 | | CON | 05/19/11 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | Section:75 Township:18S Range:18E<br>(OF OIL & GAS LEASE) CHAUVIN SOUTH | 1373753 | 2240 / 606 | 2 pages | Flag |
| 295 | | CON | 05/19/11 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | Section:36 Township:19S Range:19E<br>(OF OIL & GAS LEASE) BAYOU JEAN LACROIX | 1373754 | 2240 / 608 | 2 pages | Flag |
| 296 | | CON | 06/03/11 | RELEASE | FLARE RESOURCES INC<br>CL & E RESOURCES L P<br>PIQUANT INC | APACHE LOUISIANA MINERALS INC | (OF M/L) | 1374775 | 2242 / 393 | 3 pages | Flag |
| 297 | | CON | 06/28/11 | RELEASE | PETROQUEST ENERGY L L C | APACHE LOUISIANA MINERALS INC | Township:18S Range:18E<br>(OF M/L) | 1376596 | 2246 / 555 | 4 pages | Flag |
| 298 | | CON | 06/28/11 | RELEASE | DENBURY ONSHORE L L C<br>APACHE CORP | APACHE LOUISIANA MINERALS INC | Section:75 Township:18S Range:18E<br>(OF M/L) | 1376613 | 2246 / 567 | 2 pages | Flag |
| 299 | | CON | 07/11/11 | RELEASE | PHOENIX EXPLORATION LOUISIANA CLLC | APACHE LOUISIANA MINERALS L L C | (OF M/L, LEASE) | 1377474 | 2248 / 511 | 2 pages | Flag |
| 300 | | CON | 08/11/11 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | Section:3 Township:19S Range:13E<br>(OF M/L) | 1377494 | 2253 / 571 | 2 pages | Flag |
| 301 | | CON | 08/15/11 | RELEASE | PHOENIX EXPLORATION LOUISIANA CLLC<br>CL & E RESOURCES L P<br>PIQUANT INC | APACHE LOUISIANA MINERALS L L C | (OF M/L) | 1380196 | 2253 / 782 | 3 pages | Flag |
| 302 | | CON | 01/26/12 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC | (OF M/L) | 1391239 | 2272 / 128 | 2 pages | Flag |
| 303 | | CON | 03/13/12 | RELEASE | COVINGTON EXPLORATION CO L L C | APACHE LOUISIANA MINERALS L L C | (OF M/L) LAKE DECADE FIELD | 1394441 | 2277 / 206 | 2 pages | Flag |
| 304 | | CON | 08/03/12 | RELEASE | HILCORP ENERGY L P<br>HILCORP ENERGY CO | APACHE LOUISIANA MINERALS INC | (OF LEASE) | 1405462 | 2296 / 544 | 3 pages | Flag |
| 305 | | CON | 12/27/12 | RELEASE | PETROGULF III L L C<br>CAZA PETROLEUM INC<br>ALPINE OIL CO<br>APACHE CORP<br>ARIES ONE L P<br>BLUE WHALE PARTNERSHIP<br>BURNETT CAPITAL INVESTMENTS L L C<br>CHRISTENSEN, DOUGLAS H<br>CHRISTENSEN PETROLEUM INC<br>COMBINED RESOURCES GROUP<br>HENDERSON, WILLIAM P JR<br>LIMSCO LTD PARTNERSHIP<br>LONE STAR GEOPHYSICAL L L C | APACHE LOUISIANA MINERALS INC<br>LOUISIANA STATE MINERAL BOARD | Section:65 Township:19S Range:18E<br>Section:109 Township:20S Range:18E<br>Section:1 Township:20S Range:17E<br>Section:83 Township:20S Range:18E<br>(OF M/L) ST LSE #18582 PHANTOM PROSPECT | 1416381 | 2313 / 196 | 64 pages | Flag |

**Louisiana Terrebonne Parish Clerk of Court Public Record Search**
**Oil and Gas Related Records for Apache Louisiana Minerals (ALM)**

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 306 | | CON | 01/03/13 | RELEASE | LOWE PARTNERS; MOSELEY, BILL; NALLY, JEFFREY GRANT; PIERSON, T. CONLAN; PIERSON T CONLAN CPA; RIVERFRONT EXPLORATION L L C; SANDERSON, DUSTY; SANDERSON, DANA; SANDER, WILLIAM F; SANDER, RHONDA; SHIDLER MARK L INC; SILVER, SCOTT; SOVEREIGN DRILLING LTD; STEPHENS, DAN; STEPHENS, SANDRA; TAC ENTERPRISES OF POMPANO BEACH; TAUBER EXPLORATION & PRODUCTION CO; WHITMORE, K C; WYNN CROSBY PARTNERS LTD; AMARILLO BROKERAGE GROUP L L C; FARRELL OIL & GAS; FORT OPERATING CO; FOUR S LLC; KEEP, MARK; NORBERG, KATHLEEN C; LOWE PARTNERS L P; K C OIL & GAS; SANDER, RHONDA L; SILVER, SCOTT R; MOSELEY, BILL M; NALLY, GRANT; CAZA PETROLEUM INC; ALPINE OIL CO; APACHE CORP; ARIES ONE L P; BLUE WHALE PARTNERSHIP; CHROMA OIL & GAS L P; DELMAR HOLDINGS INC; TEMKAY RESOURCES INC | APACHE LOUISIANA MINERALS INC; TENNECO OIL CO; FINA OIL & CHEMICAL CO; EASTERLY, DWIGHT | Section:15 Township:19S Range:15E; Section:22 Township:19S Range:15E; Township:19S Range:15E; SEC 13 & 14 & 32; Township:19S Range:15E; SEC 23 & 24; Section:19 Township:19S Range:16E; LAKE DECADE PROSPECT; Section:15 Township:19S Range:15E; Section:22 Township:19S Range:15E; Township:19S Range:15E; SEC 13 & 14 & 32; Township:19S Range:15E | 1416763 | 2313 / 858 | 6 pages | Flag |
| 315 | | CON | 07/12/04 | ROW - SERVITUDE - EASE | APACHE LOUISIANA MINERALS INC | SOUTHWESTERN ENERGY PRODUCTION CO | (SUBSURFACE EASEMENT) SEC 22 T19S-R | 1184731 | 1876 / 552 | 5 pages | Flag |
| 326 | | | 02/24/03 | SALE | APACHE NORTH AMERICA INC | APACHE LOUISIANA MINERALS INC | | 1140222 | 1808 / 755 | 3 pages | Flag |
| 327 | | | 09/17/03 | SALE | CASTEX ENERGY 1995 L P | APACHE LOUISIANA MINERALS INC | T17S-R17E | 1159983 | 1855 / 805 | 10 pages | Flag |
| 329 | | CON | 02/03/05 | SALE | CASTEX ENERGY INC; APACHE LOUISIANA MINERALS INC | FLARE RESOURCES INC | Section:75 Township:18S Range:18E; Section:76 Township:18S Range:18E | 1201083 | 1903 / 48 | 4 pages | Flag |
| 330 | | CON | 02/24/05 | SALE | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY INC | Section:75 Township:18S Range:18E | 1202410 | 1905 / 384 | 4 pages | Flag |

*Louisiana Terrebonne Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | Date Filed | Kind | Party Ones | Party Twos | Description | File # | Book/Page | Amount Images | Flag |
|--------|--------|-------|-----------|------|-----------|-----------|------------|--------|-----------|---------------|------|
| | | | | | | | Section:76 Township:18S Range:18E | | | | |
| 334 | | CON | 01/28/10 | SURFACE LEASE | APACHE LOUISIANA MINERALS L L C | WHITE OAK ENERGY LLC<br>WHITE OAK OPERATING CO L L C | Section:6 Township:19S Range:13E<br>(& SALTWATER DISPOSAL AGREEM'T) | 1340137 | 2182 / 410 | 11 pages | Flag |
| 335 | | CON | 02/17/10 | SURFACE LEASE | APACHE LOUISIANA MINERALS L L C | HILCORP ENERGY I LP<br>HILCORP ENERGY CO | Section:73 Township:18S Range:18E | 1341252 | 2184 / 389 | 9 pages | Flag |
| 271 | | | | | | | | | | | |

SOURCE : Terrebonne Parish Clerk of Court - Theresa A. Robichaux, https://search.terrebonneclerk.org/ExhmaR.andRecordsbprotected/StartQuickName.aspx?

Terrebonne Records - Oil and Gas Related-record count=v2.xlsx

# EXHIBIT AA

Louisiana Lafourche Parish Clerk of Court Public Record Search
Oil and Gas Related Records for Apache Louisiana Minerals (ALM)

| Record | Select | Index | File Date | Kind | Party Ones | Party Twos | Remarks | File Number | Book/Page | Amount | Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | CON | 02/10/12 | ABANDONMENT | CHEVRON MIDSTREAM PIPELINES L L C / CHEVRON MIDSTREAM PIPELINES LLC / TEXAS COMPANY THE / APACHE LOUISIANA MINERALS LLC SUCC TO | APACHE LOUISIANA MINERALS LLC / APACHE LOUISIANA MINERALS L L C / LA TERRE CO INC | ABANDONMENT OF PORTION OF PIPELINE | 1128384 | 1878 / 519 | | 0 5 pages | Flag |
| 2 | | CON | 03/15/12 | ACT CORRECTION | LATERRE CO INC / APACHE LOUISIANA MINERALS L L C SUCC TO / LATERRE CO INC / LATERRE CO INC | DISCOVERY GAS TRANSMISSION LLC / DISCOVERY PRODUCER SERVICES L L C SUCC TO / TEXACO INC / DISCOVERY PRODUCER SERVICES LLC SUCC TO TEXACO INC / TEXACO INC | SEE DOCUMENT | 1129999 | 1881 / 515 | | 0 3 pages | Flag |
| 3 | | CON | 03/31/03 | AGREEMENT | APACHE LOUISIANA MINERALS INC | DISCOVERY GAS TRANSMISSION LLC | [AGREEMENT][RELATED INSTRUMENT: MAP 933776] SEE DOCUMENT | 933776 | 1526 / 568 | | 19 pages | Flag |
| 4 | | CON | 04/24/03 | AGREEMENT | APACHE LOUISIANA MINERALS INC | APACHE CORPORATION | [AGREEMENT] SEE DOCUMENT | 935316 | 1529 / 296 | | 4 pages | Flag |
| 5 | | CHR | 02/20/13 | AMENDED ARTICLES OF INCORPORATION | APACHE LOUISIANA MINERALS INC | APACHE LOUISIANA MINERALS LLC | SEE DOCUMENT | 1156384 | 115 / 481 | | 5 pages | Flag |
| 6 | | CON | 05/01/07 | AMENDMENT | APACHE LOUISIANA MINERALS INC | APACHE CORPORATION | Section 63 T-18S Range 19E | 1024798 | 1690 / 732 | | 0 3 pages | Flag |
| 7 | | CON | 06/19/13 | AMENDMENT | APACHE LOUISIANA MINERALS LLC / APACHE LOUISIANA MINERALS L L C | BRIDGELINE GAS DISTRIBUTION L L P / BRIDGELINE GAS DISTRIBUTION LLC / BRIDGELINE HOLDINGS L P SUCC TO BRIDGELINE GAS DISTRIBUTION LLC | SEE DOCUMENT | 1158310 | 1929 / 545 | | 0 4 pages | Flag |
| 8 | | CON | 05/27/04 | AMENDMENT LEASE | APACHE LOUISIANA MINERALS INC | E B R PROPERTIES II L P / E B R PROPERTIES II L P / EBR PROPERTIES II L P / EBR PROPERTIES II L P | [AMEND LEASE] SEE DOCUMENT | 960332 | 1571 / 300 | | 2 pages | Flag |
| 9 | | CON | 06/29/05 | AMENDMENT LEASE | APACHE LOUISIANA MINERALS INC | APACHE CORPORATION | SEE DOCUMENT | 984713 | 1611 / 794 | | 0 4 pages | Flag |
| 10 | | CON | 08/05/05 | AMENDMENT LEASE | APACHE LOUISIANA MINERALS INC | E P L OF LOUISIANA L L C / EPL OF LOUISIANA L L C | SEE DOCUMENT | 987363 | 1617 / 725 | | 0 4 pages | Flag |
| 11 | | CON | 11/21/05 | AMENDMENT RIGHT WAY | APACHE LOUISIANA MINERALS INC | INFLOW PETROLEUM RESOURCES L P / INFLOW PETROLEUM RESOURCES LP | SEE DOCUMENT | 992888 | 1628 / 374 | | 0 4 pages | Flag |
| 14 | | CON | 06/07/04 | ASSIGNMENT | APACHE LOUISIANA MINERALS INC | GULF REFINING CO / HUMBLE PIPE LINE CO | [ASSIGNMENT] SEE DOCUMENT | 960828 | 1572 / 118 | | 1 page | Flag |
| 15 | | CON | 02/26/03 | CONVEYANCE | APACHE NORTH AMERICA INC | APACHE LOUISIANA MINERALS INC | [CONVEYANCE] SEE DOCUMENT | 931677 | 1523 / 442 | | 3 pages | Flag |
| 16 | | CON | 06/30/04 | CONVEYANCE | APACHE CORPORATION | APACHE LOUISIANA MINERALS INC | [CONVEYANCE] SEE DOCUMENT | 962286 | 1574 / 649 | | 3 pages | Flag |
| 17 | | CON | 05/11/04 | DECLARATION | APACHE LOUISIANA MINERALS INC | E B R PROPERTIES II L P / E B R PROPERTIES II L P / EBR PROPERTIES II L P / EBR PROPERTIES II L P | [DECLARATION] SEC 63 T18S R19E | 959319 | 1569 / 531 | | 2 pages | Flag |
| 18 | | CON | 01/07/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P / CASTEX ENERGY NINETEEN NINETY FIVE L P | [DECLARATION] SECS 8 & 17 T20S R21E | 973823 | 1593 / 14 | | 4 pages | Flag |
| 19 | | CON | 01/07/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | CASTEX ENERGY 1995 L P / CASTEX ENERGY NINETEEN NINETY FIVE L P | [DECLARATION][RELATED INSTRUMENT: MAP 973824] SECS 10 & 15 T20S R21E | 973824 | 1593 / 18 | | 4 pages | Flag |
| 20 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORPORATION | [DECLARATION][RELATED INSTRUMENT: MAP 974039] SECS 8 & 17 T20S R21E | 974039 | 1593 / 503 | | 4 pages | Flag |
| 21 | | CON | 01/11/05 | DECLARATION | APACHE LOUISIANA MINERALS INC | APACHE CORPORATION | [DECLARATION] SECS 10 & 15 T20S R21E | 974040 | 1593 / 507 | | 4 pages | Flag |
| 22 | | CON | 01/22/10 | DECLARATION | APACHE LOUISIANA MINERALS LLC | APACHE CORPORATION | SEE DOCUMENT | 1085389 | 1806 / 148 | | 0 6 pages | Flag |

C:\Data\CELESTE SULLIVAN\CELESTE SULLIVAN\2013-08\2013-08-22\Lafourche - Oil and Gas Related-record count-v2.xlsx

*Louisiana Lafourche Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | File Date | Kind | Party Ones | Party Twos | Remarks | File Number | Book/Page | Amount | Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23 | | CON | 04/29/09 | DECLARATION LEASE | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS LLC / APACHE LOUISIANA MINERALS L L C | SAMSON CONTOUR ENERGY E & P LLC / SAMSON CONTOUR ENERGY E & P L L C / SAMSON CONTOUR ENERGY E AND P LLC / SAMSON CONTOUR ENERGY E AND P-L L C | SEE DOCUMENT | 1069373 | 1778 / 703 | 0 | 4 pages | Flag |
| 24 | | CON | 07/16/10 | DECLARATION LEASE | APACHE LOUISIANA MINERALS L L C / APACHE LOUISIANA MINERALS L L C | APACHE CORPORATION | SEE DOCUMENT | 1095203 | 1823 / 536 | 0 | 4 pages | Flag |
| 27 | | CON | 07/08/11 | LEASE | APACHE LOUISIANA MINERALS LLC / APACHE LOUISIANA MINERALS LLC | APACHE CORPORATION | Section:20 T:20S Range:22E / Section:6 T:20S Range:22E / SEE DOCUMENT | 1115853 | 1858 / 335 | 0 | 8 pages | Flag |
| 28 | | CON | 01/14/04 | LETTER | CASTEX ENERGY INC | APACHE LOUISIANA MINERALS INC[ACCEPTED LOUISIANA STATE OF DEPARTMENT OF WILDLIFE AND FISHERIES / STATE OF LOUISIANA DEPARTMENT OF WILDLIFE AND FISHERIES | [LETTER] ASSIGNMENT OF OYSTER LEASE | 952085 | 1556 / 228 | | 3 pages | Flag |
| 90 | | CON | 11/08/04 | MEMORANDUM AGREEMENT | APACHE LOUISIANA MINERALS INC / APACHE CORPORATION | EXXON MOBIL CORPORATION | [MEMORANDUM/AGM] SEE DOCUMENT | 970358 | 1586 / 774 | | 5 pages | Flag |
| 91 | | CON | 11/08/04 | MEMORANDUM LEASE | APACHE LOUISIANA MINERALS INC | EXXON CORPORATION | [MEMOR LEASE] SEE DOCUMENT | 970352 | 1586 / 713 | | 6 pages | Flag |
| 92 | | CON | 11/08/04 | MEMORANDUM LEASE | APACHE LOUISIANA MINERALS INC | EXXON CORPORATION | [MEMOR LEASE] SEE DOCUMENT | 970353 | 1586 / 719 | | 4 pages | Flag |
| 93 | | CON | 11/08/04 | MEMORANDUM LEASE | APACHE LOUISIANA MINERALS INC | EXXON CORPORATION | [MEMOR LEASE] SEE DOCUMENT | 970356 | 1586 / 766 | | 4 pages | Flag |
| 94 | | CON | 11/08/04 | MEMORANDUM LEASE | APACHE LOUISIANA MINERALS INC | EXXON MOBIL CORPORATION | [MEMOR LEASE] SEE DOCUMENT | 970359 | 1586 / 779 | | 6 pages | Flag |
| 99 | | CON | 01/26/12 | PARTIAL RELEASE | APACHE CORPORATION | APACHE LOUISIANA MINERALS L L C | SEE DOCUMENT | 1127507 | 1877 / 175 | 0 | 3 pages | Flag |
| 100 | | CON | 09/08/06 | PARTIAL RELEASE LEASE | E P L OF LOUISIANA L L C / EPL OF LOUISIANA L L C | APACHE LOUISIANA MINERALS INC / APACHE CORPORATION | SEE DOCUMENT | 1010912 | 1664 / 726 | 0 | 4 pages | Flag |
| 101 | | CON | 03/18/05 | PERMIT | APACHE LOUISIANA MINERALS INC | APACHE LOUISIANA MINERALS L L C | [PERMIT][RELATED INSTRUMENT: MAP 978273] SEE DOCUMENT | 978273 | 1600 / 186 | 0 | 8 pages | Flag |
| 102 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORPORATION | APACHE LOUISIANA MINERALS L L C / APACHE CORPORATION | SEE DOCUMENT | 1083544 | 1802 / 203 | 0 | 2 pages | Flag |
| 103 | | CON | 12/18/09 | RELEASE | EXXON MOBIL CORPORATION | APACHE LOUISIANA MINERALS LLC F/N/A APACHE LOUISIANA MINERALS INC / APACHE LOUISIANA MINERALS L L C F/K/A APACHE LOUISIANA MINERALS INC / APACHE LOUISIANA MINERALS INC | SEE DOCUMENT | 1083545 | 1802 / 205 | 0 | 2 pages | Flag |
| 104 | | CON | 04/14/03 | RELEASE AMENDED SALE | LATERRE CO LTD | APACHE LOUISIANA MINERALS INC / APACHE NORTH AMERICA INC | [RELEASE AMD SALE] SEE DOCUMENT | 934683 | 1528 / 361 | 0 | 6 pages | Flag |
| 105 | | CON | 06/19/06 | RELEASE LEASE | E B R PROPERTIES II L P / E B R PROPERTIES II L P / EBR PROPERTIES II L P | APACHE LOUISIANA MINERALS INC | Section:63 T:18S Range:19E | 1005553 | 1652 / 785 | 0 | 2 pages | Flag |
| 106 | | CON | 07/31/06 | RELEASE LEASE | E P L OF LOUISIANA L L C / EPL OF LOUISIANA L L C | APACHE LOUISIANA MINERALS INC | SEE DOCUMENT | 1008346 | 1659 / 236 | 0 | 3 pages | Flag |
| 107 | | CON | 10/25/06 | RELEASE LEASE | APACHE CORPORATION | APACHE LOUISIANA MINERALS LLC F/N/A APACHE LOUISIANA MINERALS INC | SEE DOCUMENT | 1013746 | 1670 / 543 | 0 | 2 pages | Flag |
| 108 | | CON | 12/18/09 | RELEASE LEASE | EXXON MOBIL CORPORATION | APACHE LOUISIANA MINERALS L L C F/K/A APACHE LOUISIANA MINERALS INC | SEE DOCUMENT | 1083542 | 1802 / 199 | 0 | 2 pages | Flag |
| 109 | | CON | 01/20/10 | RELEASE LEASE | APACHE CORPORATION | APACHE LOUISIANA MINERALS L L C F/K/A APACHE LOUISIANA MINERALS INC | SEE DOCUMENT | 1085238 | 1805 / 727 | 0 | 2 pages | Flag |

*Louisiana Lafourche Parish Clerk of Court Public Record Search*
*Oil and Gas Related Records for Apache Louisiana Minerals (ALM)*

| Record | Select | Index | File Date | Kind | Party Ones | Party Twos | Remarks | File Number | Book/Page | Amount | Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 110 | | CON | 01/20/10 | RELEASE LEASE | APACHE CORPORATION | APACHE LOUISIANA MINERALS INC APACHE LOUISIANA MINERALS LLC APACHE LOUISIANA MINERALS L L C | SEE DOCUMENT | 1085239 | 1805 / 729 | 0 | 2 pages | Flag |
| 111 | | CON | 05/27/10 | RELEASE LEASE | CASTEX ENERGY 1995 L P | APACHE LOUISIANA MINERALS INC | SEE DOCUMENT | 1092202 | 1817 / 620 | 0 | 2 pages | Flag |
| 112 | | CON | 04/04/11 | RELEASE LEASE | KRESCENT ENERGY PARTNERS II L P KRESCENT ENERGY PARTNERS II L P LEGACY ENERGY L L C/D/B/A LEGACY ENERGY LLC OF CALIFORNIA LEGACY ENERGY L L C OF CALIFORNIA LEGACY ENERGY LLC D/B/A LEGACY ENERGY LLC OF CALIFORNIA LEGACY ENERGY LLC OF CALIFORNIA SAMSON CONTOUR ENERGY E & P LLC SAMSON CONTOUR ENERGY E & P LLC SAMSON CONTOUR ENERGY E AND P LLC SAMSON CONTOUR ENERGY E AND P L L C KRESCENT ENERGY PARTNERS II L P KRESCENT ENERGY PARTNERS II L P LEGACY ENERGY L L C D/B/A LEGACY ENERGY LLC OF CALIFORNIA LEGACY ENERGY L L C OF CALIFORNIA LEGACY ENERGY LLC D/B/A LEGACY ENERGY LLC OF CALIFORNIA | APACHE LOUISIANA MINERALS LLC APACHE LOUISIANA MINERALS L L C | SEE DOCUMENT | 1110070 | 1847 / 769 | 0 | 7 pages | Flag |
| 113 | | CON | 07/31/06 | RELEASE SUBLEASE | E P L OF LOUISIANA L L C EPL OF LOUISIANA L L C | APACHE LOUISIANA MINERALS L L C | SEE DOCUMENT | 1008350 | 1659 / 239 | 0 | 4 pages | Flag |
| 116 | | CON | 03/06/06 | RIGHT OF WAY | APACHE LOUISIANA MINERALS INC | GULF SOUTH PIPELINE COMPANY L P GULF SOUTH PIPELINE COMPANY L P | SEE DOCUMENT | 998778 | 1640 / 305 | 2500 | 9 pages | Flag |
| 117 | | CON | 05/02/06 | RIGHT OF WAY | APACHE LOUISIANA MINERALS INC | LAKE RACCOURCI GATHERING SYSTEM L L C | SEE DOCUMENT | 1002582 | 1647 / 333 | 0 | 9 pages | Flag |
| 120 | | CON | 04/12/13 | SERVITUDE | APACHE LOUISIANA MINERALS LLC APACHE LOUISIANA MINERALS L L C | ENTERGY LOUISIANA L L C ENTERGY LOUISIANA L L C | Section:17 T:20S Range:22E Section:18T T:20S Range:22E Section:20 T:20S Range:22E Section:21 T:20S Range:22E SEE DOCUMENT | 1154041 | 1922 / 566 | 0 | 12 pages | Flag |
| 121 | | CON | 09/09/04 | SURFACE LEASE | APACHE LOUISIANA MINERALS INC | BRIDGELINE GAS DISTRIBUTION LLC BRIDGELINE GAS DISTRIBUTION LLC | [SURFACE LEASE][RELATED INSTRUMENT: MAP 967044] 2 TRACTS SEC:28 T20S R21E | 967044 | 1582 / 109 | | 5 pages | Flag |
| 122 | | CON | 10/18/04 | SURFACE LEASE | APACHE LOUISIANA MINERALS INC | BRIDGELINE GAS DISTRIBUTION L L C BRIDGELINE GAS DISTRIBUTION L L C | [SURFACE LEASE] SEE DOCUMENT | 969104 | 1584 / 782 | | 6 pages | Flag |
| 123 | | CON | 11/21/05 | SURFACE LEASE | APACHE LOUISIANA MINERALS INC | INFLOW PETROLEUM RESOURCES L P INFLOW PETROLEUM RESOURCES L P | Section:21 T:20S Range:21E | 992890 | 1628 / 386 | 0 | 7 pages | Flag |

3 of 3

50

# EXHIBIT AB

## Louisiana Plaquemines Parish Clerk of Court Public Record Search
## Oil and Gas Related Records for Apache Louisiana Minerals (ALM)

| Record | Select | Index | File Date | Kind | Party Ones | Party Twos | Remarks | File Number | Book/Page | Ref | Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | | CON | 10/01/09 | ACT OF CORRECTION | APACHE LOUISIANA MINERALS LLC<br>APACHE CORP<br>CLAYTON WILLIAMS ENERGY INC | APACHE LOUISIANA MINERALS LLC<br>CLAYTON WILLIAMS ENERGY INC<br>APACHE CORP | CORRECTION ACT; COB 1204/738 | 2009-00004245 | 1211 / 708 | 1204 / 738 | 4 | Flag |
| 4 | | CON | 02/03/10 | AMENDMENT | APACHE LOUISIANA MINERALS LLC | APACHE CORP | AMENDMENT COB 1218/840<br>AMENDMENT #2 TEMP EASEMENT; SERVITUDE; & R/W EASEMENT FOR MONITORING & ACCESS; COB 1085/374 | 2010-00000477 | 1219 / 509 | 1218 / 840 | 4 | Flag |
| 5 | | CON | 06/18/10 | AMENDMENT | APACHE LOUISIANA MINERALS LLC<br>APACHE LOUISIANA MINERALS INC<br>APACHE CORP<br>LOUISIANA STATE ADMINISTRATION DIV<br>LOUISIANA STATE COASTAL PROTECTION & RESTORATION OFFICE<br>LOUISIANA STATE<br>APACHE CORP<br>APACHE LOUISIANA MINERALS LLC<br>APACHE LOUISIANA MINERALS INC<br>APACHE CORP<br>LOUISIANA STATE ADMINISTRATION DIV<br>LOUISIANA STATE COASTAL PROTECTION & RESTORATION OFFICE | APACHE LOUISIANA MINERALS LLC<br>APACHE LOUISIANA MINERALS INC<br>LOUISIANA STATE ADMINISTRATION DIV<br>LOUISIANA STATE COASTAL PROTECTION & RESTORATION OFFICE<br>LOUISIANA STATE<br>APACHE CORP<br>APACHE LOUISIANA MINERALS LLC<br>APACHE LOUISIANA MINERALS INC<br>LOUISIANA STATE ADMINISTRATION DIV<br>LOUISIANA STATE COASTAL PROTECTION & RESTORATION OFFICE<br>LOUISIANA STATE | COB 1085/374 | 2010-00002276 | 1226 / 377 | 1085 / 374 | 10 | Flag |
| 6 | | CON | 08/11/10 | AMENDMENT | APACHE LOUISIANA MINERALS INC<br>APACHE CORP<br>AMPLE REVEILLE J V LLC | APACHE LOUISIANA MINERALS INC<br>AMPLE REVEILLE J V LLC<br>APACHE CORP | AMENDMENT OF OIL & GAS LEASE | 2010-00003189 | 1229 / 654 | 1193 / 896 | 3 | Flag |
| 7 | | CON | 01/12/11 | AMENDMENT | APACHE LOUISIANA MINERALS LLC<br>APACHE CORP<br>HILCORP ENERGY LLP<br>HILCORP ENERGY CO | APACHE LOUISIANA MINERALS LLC<br>HILCORP ENERGY LLP<br>HILCORP ENERGY CO<br>APACHE CORP | AMENDMENT TO DECLARATION OF OIL & GAS LEASE; COB 1231/532 | 2011-00000198 | 1239 / 463 | 1231 / 532 | 4 | Flag |
| 8 | | CON | 08/13/12 | AMENDMENT | APACHE LOUISIANA MINERALS LLC | HILCORP ENERGY LLP | AMENDMENT COB 1256/666 | 2012-00003744 | 1275 / 618 | 1256 / 666 | 3 | Flag |

**Louisiana Plaquemines Parish Clerk of Court Public Record Search**
**Oil and Gas Related Records for Apache Louisiana Minerals (ALM)**

| Record | Select | Index | File Date | Kind | Party Ones | Party Twos | Remarks | File Number | Book/Page | Ref | Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | APACHE CORP | HILLCORP ENERGY CO |  |  |  |  |  |  |
| 9 |  | CON | 02/22/13 | CERTIFICATE | APACHE LOUISIANA MINERALS LLC<br>APACHE CORP | APACHE LOUISIANA MINERALS INC | CERTIFICATE; AMENDED APPLICATION | 2013-00000895 | 1290 / 169 |  | 5 | Flag |
| 10 |  | CON | 06/30/04 | CONVEYANCES | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | APACHE LOUISIANA MINERALS LLC | CONVEYANCE | 2004-00004333 | 1074 / 455 |  | 3 | Flag |
| 11 |  | CON | 02/17/05 | DECLARATION | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | APACHE LOUISIANA MINERALS INC<br>MERIDIAN RESOURCE & EXPLORATION LLC | DECLARATION OF OIL & GAS LEASE | 2005-00000798 | 1087 / 271 |  | 3 | Flag |
| 13 |  | CON | 01/22/10 | DECLARATION | APACHE LOUISIANA MINERALS LLC<br>APACHE CORP | APACHE CORP | DECLARATION OF OIL & GAS LEASE | 2010-00000316 | 1218 / 840 |  | 8 | Flag |
| 14 |  | CON | 09/23/10 | DECLARATION | APACHE LOUISIANA MINERALS LLC<br>APACHE CORP | HILLCORP ENERGY I LP | DECLARATION OF OIL & GAS LEASE; LAKE WASHINGTON FIELD | 2010-00003797 | 1231 / 532 |  | 4 | Flag |
| 15 |  | CON | 10/07/11 | DECLARATION | APACHE LOUISIANA MINERALS LLC<br>APACHE CORP | HILLCORP ENERGY I LP | DECLARATION OF OIL & GAS LEASE | 2011-00004323 | 1256 / 666 |  | 4 | Flag |
| 17 |  | CON | 07/12/10 | GENERAL AGREEMENT | APACHE LOUISIANA MINERALS LLC<br>LOUISIANA STATE MINERAL BD<br>LOUISIANA STATE<br>APACHE CORP<br>CYPRESS ENERGY CORP<br>HOUSTON ENERGY LP<br>SEWANEE INVESTMENTS LLC<br>APACHE LOUISIANA MINERALS LLC<br>LOUISIANA STATE MINERAL BD<br>LOUISIANA STATE<br>APACHE CORP<br>CYPRESS ENERGY CORP | APACHE LOUISIANA MINERALS LLC<br>CYPRESS ENERGY CORP<br>HOUSTON ENERGY LP<br>SEWANEE INVESTMENTS LLC<br>LOUISIANA STATE MINERAL BD<br>LOUISIANA STATE<br>APACHE CORP<br>APACHE LOUISIANA MINERALS LLC<br>CYPRESS ENERGY CORP<br>HOUSTON ENERGY LP<br>SEWANEE INVESTMENTS LLC<br>LOUISIANA STATE MINERAL BD | MV VUA VOLUNTARY UNIT AGREEMENT S/L 20237 | 2010-00002641 | 1227 / 807 |  | 12 | Flag |
| 18 |  | CON | 08/27/03 | LEASE | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | LLOG EXPLORATION CO L L C | SEC 4 5 8 & 9 T16S R14E | 2003-00006213 | 1053 / 402 |  | 3 | Flag |
| 20 |  | CON | 12/11/07 | LEASE | APACHE LOUISIANA MINERALS INC | CENTURY EXPLORATION NEW ORLEANS INC | DECLARATION OF OIL & GAS LEASE | 2007-00008294 | 1167 / 758 |  | 4 | Flag |
| 21 |  | CON | 08/28/08 | LEASE | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | HILLCORP ENERGY I LP | LAKE WASHINGTON FIELD | 2008-00005115 | 1191 / 146 |  | 4 | Flag |
| 22 |  | CON | 05/29/09 | LEASE | APACHE LOUISIANA MINERALS LLC<br>APACHE CORP | CLAYTON WILLIAMS ENERGY INC | DECLARATION OF O&G LEASE | 2009-00022215 | 1204 / 738 |  | 5 | Flag |

**Louisiana Plaquemines Parish Clerk of Court Public Record Search**
**Oil and Gas Related Records for Apache Louisiana Minerals (ALM)**

| Record | Select | Index | File Date | Kind | Party Ones | Party Twos | Remarks | File Number | Book/Page | Ref | Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25 | | CON | 06/29/12 | LETTER | APACHE LOUISIANA MINERALS LLC<br>SAMSON CONTOUR ENERGY E&P LLC<br>TCHEFUNCTE NATURAL RESOURCES LLC | APACHE LOUISIANA MINERALS LLC<br>TCHEFUNCTE NATURAL RESOURCES LLC<br>SAMSON CONTOUR ENERGY E&P LLC | AFTER THE FACT CONSENT TO ASSIGN PIPELINE PERMIT | 2012-00002829 | 1272 / 330 | | 3 | Flag |
| 26 | | CON | 10/27/04 | MEMORANDUM | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | EXXON MOBIL CORP | OIL & GAS LEASE | 2004-00006743 | 1081 / 71 | | 9 | Flag |
| 27 | | CON | 10/27/04 | MEMORANDUM | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | APACHE CORP | OIL & GAS LEASE | 2004-00006747 | 1081 / 80 | | 4 | Flag |
| 28 | | CON | 10/28/04 | MEMORANDUM | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | APACHE CORP | MEMORANDUM OF OIL & GAS LEASE | 2004-00006757 | 1081 / 213 | | 4 | Flag |
| 29 | | CON | 10/28/04 | MEMORANDUM | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | EXXON MOBIL CORP | MEMORANDUM OF OIL & GAS LEASE | 2004-00006758 | 1081 / 217 | | 4 | Flag |
| 30 | | CON | 10/28/04 | MEMORANDUM | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | EXXON MOBIL CORP | MEMORANDUM OF OIL & GAS LEASE | 2004-00006762 | 1081 / 226 | | 4 | Flag |
| 31 | | CON | 10/28/04 | MEMORANDUM | APACHE LOUISIANA MINERALS INC<br>APACHE CORP | APACHE CORP | MEMORANDUM OF OIL & GAS LEASE | 2004-00006764 | 1081 / 230 | | 9 | Flag |
| 32 | | CON | 05/07/07 | NOTICE | APACHE LOUISIANA MINERAL INC<br>EAGLE GEOPHYSICAL<br>EAGLE GEOPHYSICAL INC<br>SWIFT ENERGY CO<br>LOUISIANA STATE W L & F DEPT<br>APACHE CORP<br>LOUISIANA LAND & EXPLORATION<br>BURLINGTON REOURCES<br>LOUISIANA STATE LAND OFFICE<br>PLAQUEMINES PARISH GOVERNMENT<br>BANK OF LOUISIANA<br>ACCARDO, STEVEN P<br>ROBINSON, DOWIN<br>SPECK TAKLER FISHING CLUB INC<br>SAVOIE, SHIRLEY<br>ATKINS, O M JR<br>LUBRANO, ROBERT<br>PIVACH, GEORGE L JR<br>PIVACH, SIMICA | APACHE LOUISIANA MINERAL INC<br>EAGLE GEOPHYSICAL<br>EAGLE GEOPHYSICAL INC<br>SWIFT ENERGY P<br>LOUISIANA STATE W L & F DEPT<br>APACHE CORP<br>LOUISIANA LAND & EXPLORATION<br>BURLINGTON RESOURCES<br>LOUISIANA STATE LAND OFFICE<br>PLAQUEMINES PARISH GOVERNMENT<br>BANK OF LOUISIANA<br>ACCARDO, STEVEN P<br>ROBINSON, DOWIN<br>SAVOIE, SHIRLEY<br>ATKINS, O M JR<br>LUBRANO, ROBERT<br>PIVACH, GEORGE L JR<br>PIVACH, SIMICA | NOTIFICATION SEISMIC OPERATIONS | 2004-00003037 | 1071 / 160 | | 5 | Flag |

## Louisiana Plaquemines Parish Clerk of Court Public Record Search
## Oil and Gas Related Records for Apache Louisiana Minerals (ALM)

| Record | Select | Index | File Date | Kind | Party Ones | Party Twos | Remarks | File Number | Book/Page | Ref | Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | DOW CHEMICAL USA PROMIX SYSTEM | DOW CHEMICAL USA PROMIX SYSTEM | | | | | | |
| | | | | | DALY, MARIE G | DALY, MARIE G | | | | | | |
| | | | | | NIHART, JANICE V | NIHART, JANICE V | | | | | | |
| | | | | | BEVERLY, DONNA V | BEVERLY, DONNA V | | | | | | |
| | | | | | MARTIN, RAOUL | MARTIN, RAOUL | | | | | | |
| | | | | | CLEMET, JOSEPH O | CLEMET, JOSEPH O | | | | | | |
| | | | | | LANASSA, LOUIS N | LANASSA, LOUIS N | | | | | | |
| | | | | | GRANDE ECAILLE LAND CO INC | GRANDE ECAILLE LAND CO INC | | | | | | |
| | | | | | BURLINGTON RESOURCES | BURLINGTON RESOURCES | | | | | | |
| | | | | | LOUISIANA LAND & EXPLORATION CLEMENT, ADRIEN | LOUISIANA LAND & EXPLORATION CLEMENT, ADRIEN | | | | | | |
| | | | | | APACHE LOUISIANA MINERAL INC EAGLE GEOPHYSICAL EAGLE GEOPHYSICAL INC SWIFT ENERGY CO LOUISIANA STATE W L & F DEPT | APACHE LOUISIANA MINERAL INC EAGLE GEOPHYSICAL EAGLE GEOPHYSICAL INC SWIFT ENERGY CO LOUISIANA STATE W L & F DEPT | | | | | | |
| 34 | | CON | 06/23/05 | PERMIT | APACHE LOUISIANA MINERALS INC | HILCORP ENERGY I LP | PIPELINE PERMIT | 2005-00003487 | 1095 / 711 | | 8 | Flag |
| 35 | | CON | 02/14/07 | PERMIT | APACHE LOUISIANA MINERALS INC APACHE CORP | HILCORP ENERGY I LP | PIPELINE PERMIT; SEC 36 T19S R26E | 2007-00001007 | 1136 / 811 | | 8 | Flag |
| 36 | | CON | 02/04/08 | PERMIT | APACHE LOUISIANA MINERALS INC APACHE CORP | CENTURY EXPLORATION NEW ORLEANS INC | CANAL & WATERWAY PERMIT; S/L 19377; SEC 32 & 33 T18S R25E | 2008-00000785 | 1173 / 45 | | 7 | Flag |
| 37 | | CON | 05/12/08 | PERMIT | APACHE LOUISIANA MINERALS INC APACHE CORP | SWIFT ENERGY OPERATING LLC | PIPELINE PERMIT | 2008-00002937 | 1182 / 896 | | 8 | Flag |
| 40 | | CON | 12/17/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS INC APACHE LOUISIANA MINERALS LLC | RELEASE OG&M LEASE; COB 1081/217 | 2009-00005361 | 1216 / 547 | 1081 / 217 | 2 | Flag |
| 41 | | CON | 12/17/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS INC APACHE LOUISIANA MINERALS LLC | RELEASE OG&M LEASE; COB 1081/226 | 2009-00005362 | 1216 / 549 | 1081 / 226 | 2 | Flag |
| 42 | | CON | 12/17/09 | RELEASE | EXXON MOBIL CORP | APACHE LOUISIANA MINERALS INC APACHE LOUISIANA MINERALS LLC | RELEASE OG&M LEASE; COB 1081/71 | 2009-00005363 | 1216 / 551 | 1081 / 71 | 2 | Flag |
| 43 | | CON | 01/20/10 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC APACHE LOUISIANA MINERALS LLC | RELEASE OG&M LEASE; COB 1081/213 | 2010-00000279 | 1218 / 740 | 1081 / 213 | 2 | Flag |
| 44 | | CON | 01/20/10 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC APACHE LOUISIANA MINERALS LLC | RELEASE OG&M LEASE; COB 1081/80 | 2010-00000280 | 1218 / 742 | 1081 / 80 | 2 | Flag |

**Louisiana Plaquemines Parish Clerk of Court Public Record Search**
**Oil and Gas Related Records for Apache Louisiana Minerals (ALM)**

| Record | Select | Index | File Date | Kind | Party Ones | Party Twos | Remarks | File Number | Book/Page | Ref | Images | Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 45 | | CON | 01/20/10 | RELEASE | APACHE CORP | APACHE LOUISIANA MINERALS INC<br>APACHE LOUISIANA MINERALS LLC | RELEASE OG&M LEASE;<br>COB 1081/230 | 2010-00000281 | 1218 / 744 | 1081 / 230 | 2 | Flag |
| 46 | | CON | 07/29/10 | RELEASE | HILCORP ENERGY I LP<br>HILCORP ENERGY CO | APACHE LOUISIANA MINERALS INC | RELEASE OIL GAS &<br>MINERAL LEASE COB<br>1191/146 | 2010-00002996 | 1229 / 183 | 1191 / 146 | 2 | Flag |
| 47 | | CON | 11/18/10 | RELEASE | ROZEL EXPLORATION LLC<br>ENERGY DEVELOPMENT LLC<br>CENTURY EXPLORATION NEW<br>ORLEANS INC | APACHE LOUISIANA MINERALS LLC<br>APACHE CORP | PARTIAL RELEASE COB<br>1087/271 | 2010-00004629 | 1234 / 848 | | 4 | Flag |
| 48 | | CON | 07/01/11 | RELEASE | | APACHE LOUISIANA MINERALS INC | RELEASE COB 1167/758<br>RELEASE OF OIL & GAS<br>LEASE; COB 1239/463 | 2011-00002828 | 1250 / 208 | | 2 | Flag |
| 49 | | CON | 08/16/11 | RELEASE | HILCORP ENERGY I LP<br>HILCORP ENERGY CO | APACHE LOUISIANA MINERALS INC | | 2011-00003517 | 1253 / 89 | 1239 / 463 | 2 | Flag |
| 51 | | CON | 05/09/12 | RELEASE | CLAYTON WILLIAMS ENERGY INC<br>MCMORAN OIL & GAS LLC | APACHE LOUISIANA MINERALS LLC | RELEASE COB 1204/738,<br>1211/708<br><br>RELEASE OIL GAS &<br>MINERAL LEASE, COB<br>1087/271 | 2012-00001851 | 1268 / 686 | 1204 / 738<br>1211 / 708 | 2 | Flag |
| 52 | | CON | 03/25/13 | RELEASE | ROZEL EXPLORATION LLC | APACHE LOUISIANA MINERALS INC | | 2013-00001371 | 1291 / 536 | 1087 / 271 | 2 | Flag |

41

SOURCE: Plaquemines Parish, LA Clerk of Court - Dorothy Lundin,  https://cotthosting.com/laplaquemines/UserLogin.aspx?ReturnUrl=%2flaplaquemines%2findex.aspx