# Warlick, Sarah E.

| | |
|---|---|
| **From:** | Warlick, Sarah E. |
| **Sent:** | Tuesday, November 05, 2013 3:23 PM |
| **To:** | Michael Juneau |
| **Cc:** | Cantor, Daniel A.; stan@duvallawfirm.com; Holstein, Mark E; ccappeals@mdl2179psc.com |
| **Subject:** | Supplemental ALM briefing |
| **Attachments:** | Supplemental En Banc Filing - Apache Louisiana Minerals.pdf |

Dear Mike,

Please find enclosed BP's request to submit a supplemental filing to the *en banc* Appeals Panel. We respectfully request that you submit this filing to the *en banc* Appeals Panel.

Kind regards,
Sarah

---

Sarah E. Warlick
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206

Telephone: +1 202.942.6409
sarah.warlick@aporter.com
www.arnoldporter.com

1

**BP's Supplemental Submission To the *En Banc* Panel
Regarding Apache Louisiana Minerals LLC**

BP respectfully requests permission to submit this short, supplemental filing to address a remarkable (and truly problematic and untenable) assertion in the late-filed memorandum of Class Counsel.  According to Class Counsel, the Settlement Agreement and the Rules Governing the Appeals Process ("Rules") somehow bar the Appeals Panel from determining whether a claimant is actually excluded from the defined Class.  Class Counsel's position finds no support in the text of the Settlement Agreement or the Rules.  Moreover, Class Counsel's position is improper and inappropriate, and would turn Rule 23 on its head, by allowing a claimant to omit from its submission to the Settlement Program evidence of its exclusion from the Class and then insulate that omission from review by arguing, as Class Counsel and Claimant do here, that the actual and dispositive facts are inadmissible.

Explanation of BP's Position

Class Counsel's position runs afoul of  the Settlement Agreement's express exclusions. The Settlement Agreement expressly excludes from the Class several categories of businesses, including without limitation members of the oil and gas industry.  *See* Settlement Agreement, §§ 2.1-2.2 ("Notwithstanding the above, the following individuals and Entities … are excluded from the Economic Class.").  The Claims Administrator is charged with the duty to "faithfully implement and administer the Settlement, according to its terms and procedures…"  *Id*. § 4.3.1. The Settlement Agreement in turn charges the Appeals Panel with the duty to perform a "*de novo* review of the complete record of that Claimant in the Settlement Program to enforce compliance with the Agreement as approved by the Court." *Id*. § 6.4.  This *de novo* review to enforce compliance with the terms of the Settlement Agreement includes, by definition, review of the issue of whether a claimant is excluded from the Class.

1

Class Counsel attempts to limit the Appeals Panel's *de novo* review by arguing that the "record" for purposes of the Appeals Panel's *de novo* review should exclude evidence that an exclusion applies if the claimant did not submit such evidence to the Settlement Program -- even if the claimant was required to submit such evidence. This position is textually baseless and would also lead to absurd and improper results. Nothing in Section 6.4, or any other provision, of the Settlement Agreement even remotely purports to say that the Appeals Panel should turn a blind eye where a claimant is in fact excluded from the Class under the terms of the Settlement Agreement but has failed to provide the Settlement Program with information from which application of the exclusion can be ascertained. To the contrary, Section 6.4 of the Settlement Agreement requires a "*de novo* review of the **complete record** of that Claimant in the Settlement Program **to enforce compliance with the Agreement** as approved by the Court." (emphases added). By necessity, this record includes evidence that the claimant failed to disclose to the Settlement Program establishing that the claim is excluded from the Class under the express terms of the Settlement Agreement.

Nor do (or could) the Rules limit the Appeals Panel's *de novo* authority to enforce compliance with the terms of the Settlement Agreement. As an initial matter, the Rules cannot change the terms of the Settlement Agreement. But that is not a problem here because the portions of the Rules at issue as properly interpreted are consistent with the terms of the Settlement Agreement and likewise do not support the result suggested by Class Counsel. The Rules define the record on appeal to include, among other things, "[t]he entire Claim File on the claim with the Claims Administrator" and "[t]he Initial and Final Proposals and supporting memoranda." Rule 13(e) and (g). These provisions permit BP to show (and require the Appeals Panel to evaluate and determine) through memoranda in support of its Initial and Final Proposals

2

that the materials in the Claims File submitted by the claimant omit facts demonstrating that the Claimant is excluded from the Class.  Class Counsel does not (and cannot) point to any provision in the Settlement Agreement or the Rules that prohibits BP from identifying in its supporting memoranda facts that demonstrate a claimant's exclusion from the Class under the Settlement Agreement's terms.  In other words, by reference to "the entire Claim File," as well as memoranda supporting the Initial and Final Proposals, the Rules, like the terms of the Settlement Agreement itself, permit the Appeals Panel to enforce compliance with the Settlement Agreement by determining whether the information submitted by the claimant on the issue of whether it is excluded (or on any other issue) is in fact accurate and complete.

In short, Class Counsel's proposed reading of Rule 13 is not tenable as a textual matter, for it would render Rule 13 inconsistent with the mandate of Section 6.4 of the Settlement Agreement that the Appeals Panel undertake a "*de novo* review of the ***complete record*** of that Claimant…***to enforce compliance with the Agreement***."

In addition to its textual infirmities, Class Counsel's position would permit a claimant to omit facts mandating application of an exclusion from its submission to the Settlement Program and then claim, as Apache Louisiana Minerals and Class Counsel do here, that this omission is immune from review because the omitted materials are not in the "record."  Such a result would contravene the terms of the Settlement Agreement, the integrity of the settlement process, and public policy.  Moreover it would turn the very nature of a Rule 23 class action settlement on its head by permitting those expressly excluded from the class definition to participate nonetheless in the settlement.

The Appeals Panel has already applied the Settlement Agreement in the manner compelled by the text and advocated by BP.  For example, in the redacted Appeals Panel

3

Decisions attached hereto as Exhibit 1, the claimant, much like Claimant here, did not include in its submissions to the Settlement Program factual information establishing that the claimant is an excluded member of the oil and gas industry. The Claims Administrator did not apply the exclusion and issued an award in excess of $1 million. The Appeals Panel found that the information submitted by the claimant was insufficient to determine whether claimant was excluded, and, to enforce compliance with the Settlement Agreement, remanded the matter with instructions to the parties to brief the matter further. After additional briefing, the Appeals Panel found, based upon the contents of Claimant's website (which had been cited in BP's original briefs as well as on remand), among other things, that the claimant is in fact excluded.

Similarly, in the Appeals Panel Decision attached hereto as Exhibit 2, the claimant did not disclose that it had previously filed for bankruptcy,[1] a fact that disqualifies the claimant from participation in the general BEL framework and instead renders Claimant a "failed business" under the Settlement Agreement. The Settlement Program did not identify the existence of the bankruptcy and erroneously calculated and issued an award under the general BEL framework. On appeal, BP alerted the Appeals Panel to the existence of the bankruptcy and attached a copy of the bankruptcy petition. Based on this bankruptcy petition, the Appeals Panel reversed and remanded the award.

For all of the forgoing reasons, BP respectfully submits that the Appeals Panel should reject Class Counsel's position that the Panel may not consider evidence omitted by Claimant

---

[1] The Appeals Panel explained: "After a thorough review of the voluminous documents in this claim, this Panelist could not find any notification to the Settlement Program of the bankruptcy by Claimant before the Eligibility Notice was issued in June 21, 2013." Ex. 2. Under Class Counsel's proposed reading of the Agreement, this would have precluded the Appeals Panel from considering the existence of the bankruptcy. The Appeals Panel correctly did not adopt such an interpretation.

4

from its submissions to the Settlement Program that is highly relevant and indeed dispositive of

Apache Louisiana Mineral's excluded status.

# EXHIBIT 1

**APPEALS PANELISTS REASONS FOR DECISION IN
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ - CLAIM ID ▓▓▓▓**

   After the Claims Administrator issued an Eligibility Notice in this matter, BP appealed and asserted that Claimant should have been excluded because Claimant falls under the Oil & Gas Exclusion in the Settlement Agreement. There is insufficient evidence in the record on this issue. Reluctantly, the Panel unanimously remands this matter to the Claims Administrator with instructions that the Claimant be ordered to file a brief on this issue within 10 days and that BP file a reply brief within 10 days after Claimant's brief is filed.



| | APPEAL PANEL DECISION FORM | |
|---|---|---|
| | **I. CLAIMANT AND CLAIM INFORMATION** | |

| **Claimant Name** | Last/Name of Business | First | Middle |
|---|---|---|---|
| **Claimant ID** | | **Claim ID** | |
| **Claim Type** | Business Economic Loss | | |
| **Law Firm** | | | |

**II. DECISION**

Select the Compensation Amount set forth in either BP's Final Proposal or the Claimant's Final Proposal as the final outcome on the claim and check the appropriate box to signify your decision.

| | | |
|---|---|---|
| ☒ **BP's Final Proposal** | Compensation Amount | $0 |
| | Risk Transfer Premium | 0 |
| | Prior Payment Offset | $0 |
| ☐ **Claimant's Final Proposal** | Compensation Amount | $1,080,635.25 |
| | Risk Transfer Premium | .25 |
| | Prior Payment Offset | $0 |

**III. PRIMARY BASIS FOR PANELIST DECISION**

Please select the primary basis for your decision. You may also write a comment describing the basis for your decision.

☐ **Error in documentation review.**

☐ **Error in calculation.**

☐ **Error in RTP multiplier.**

☐ **Error in Prior Spill-Related Payment Amount.**

☒ **Claim should have been excluded**

☐ **No error.**

**Comment** *(optional)*:

written reasons emailed to duval

Appeal Panel Written Decision: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Claim ID ▇▇▇▇

BP appealed the award set forth in the Eligibility Notice. BP's Notice of Appeal listed "Calculation Error" as the reason(s) for appeal. This was followed shortly by BP's Initial Proposal (and supporting memorandum) which set forth two grounds: 1) BP contended the Claimant fell under the oil and gas exclusion and thus was not a member of the Class and ineligible to participate in the Settlement Program; 2) BP argued that some expenses that had been treated as fixed should have been categorized as variable. BP's Initial Proposal dollar amount was -0-. BP's Final Proposal was consistent with its Initial Proposal

This panel was unable to locate in the record a memorandum from the Claimant in support of either Claimant's Initial or Final Proposal. (Claimant's proposal forms asked that the award set forth in the Eligibility Notice be affirmed.) Given the sizable sum of award at stake -- $1,372.406.77 -- this panel remanded the matter and requested that the parties each submit briefs on the oil and gas exclusion issue.

BP basically recast its previous arguments on this issue. Claimant made two arguments: 1) Claimant argued (for what appears to have been the first time) that BP had waived its right to assert the oil and gas exclusion on the grounds that BP had not raised this issue in its Notice of Appeal, citing Rule 9 of the appeal rules; 2) Claimant asserted that its NACIS Code was not one of those that fell under the oil and gas exclusion. Other than citing to the NACIS Code, Claimant did not offer any meaningful rebuttal to the merits of BP's argument on the oil and gas exclusion.

Having reviewed the entire record before us, and having considered the arguments of the parties, the panel reaches the following unanimous decision:

We find that the record, taken as a whole, supports BP's contention that the primary nature of Claimant's business falls within the oil and gas exclusion. Thus, Claimant is not a Class Member, making it ineligible to participate in the Settlement Program.

The Claimant's NACIS Code is not controlling. While these codes have been used by the parties as a starting point, our task is to review the entire record before us and determine the primary nature of the business based on all available information. Exhibit 17, p. 4, of the Settlement Agreement lists the following activity that falls within the exclusion: "cleaning oil and gas field tanks." A cursory review of Claimant's website, portions of which are in the record, suggests that Claimant is in the business of cleaning terminal tanks. Significantly, Claimant's Registration Form, which is in the record, states that its business is "industrial and commercial tank cleaning."

As to Claimant's argument that BP waived its right to assert the oil and gas exclusion, which was raised for the first time in Claimant's post-remand brief, we find that "Calculation Error" can

be read broadly enough to encompass the grounds for appeal briefed in BP's supporting memoranda.  In the alternative, we find that the Claimant waived its right to assert Rule 9 when it failed to do so in either its Initial or Final Proposal.

Because we find that Claimant is not a Class Member, we do not need to consider BP's second ground for appeal.

 In conclusion, we accept BP's Final Proposal of -0- award to the Claimant.

# EXHIBIT 2



# APPEAL PANEL DECISION FORM

## I. CLAIMANT AND CLAIM INFORMATION

| **Claimant Name** | Last/Name of Business | First | Middle |
|---|---|---|---|
| **Claimant ID** | ▮ | **Claim ID** | ▮ |
| **Claim Type** | Business Economic Loss | | |
| **Law Firm** | ▮ | | |

## II. DECISION

Select the Compensation Amount set forth in either BP's Final Proposal or the Claimant's Final Proposal as the final outcome on the claim and check the appropriate box to signify your decision.

| ☐ **BP's Final Proposal** | Compensation Amount | $229,000 |
|---|---|---|
| | Risk Transfer Premium | 0 |
| | Prior Payment Offset | $0 |
| ☐ **Claimant's Final Proposal** | Compensation Amount | $624,634.47 |
| | Risk Transfer Premium | 1.50 |
| | Prior Payment Offset | $0 |

☒ R    laims Administrator

## III. PRIMARY BASIS FOR PANELIST DECISION

Please select the primary basis for your decision. You may also write a comment describing the basis for your decision.

☐ Error in documentation review.

☒ Error in calculation.

☐ Error in RTP multiplier.

☐ Error in Prior Spill-Related Payment Amount.

☐ No error.

**Comment** *(optional)*:

Written reasons uploaded

## WRITTEN REASONS

### CLAIM ID

    The Settlement Program awarded this Biloxi, Mississippi medical facility the sum of $624,634.47 (pre-RTP) with a total award of $1,562,566.00 post-RTP.

    BP appeals alleging that Claimant filed for Bankruptcy on November 22, 2011 and therefore should have been analyzed by the Settlement Program under the "Failed Business" framework. If Claimant is a "Failed Business", BP asserts that the proper award would be reduced to approximately $229,000.00 with no RTP, a difference of $1,333,566.00.

    The Settlement Agreement provides, at Exhibit 6, p. 1:

> A "Failed Business" shall be an entity that commenced operations prior to November 1, 2008, and that, subsequent to May 1, 2010 but prior to December 31, 2011, either (I) ceased operations and wound down, or (ii) entered bankruptcy (through the filing of a petition for bankruptcy protection in a court of competent jurisdiction), or (iii) otherwise initiated or completed a liquidation of substantially all of its assets.

    BP attached as Exhibits to its brief, the Voluntary Petition filed by Claimant on November 22, 2011 in the U.S. Bankruptcy Court for the Southern District of Mississippi. The Petition was filed under Chapter 11 and listed assets of $500,000.00 or less and liabilities of over $1,000,000.00 but less than $10,000,000.00.

    A review of the file materials shows that on or about August 11, 2012, Claimant's counsel filed a Business Economic Loss Claim Form with the Settlement Program. Question 11 on that form asks:

> **11. Has your business ceased operations, declared bankruptcy or liquidated substantially all of its assets since May 1, 2010?** If your business failed between May 1, 2010, and December 31, 2011, stop filling out this Claim Form and submit the **Failed Business Economic Loss Claim Form (Red Form)** instead.

To that question, Claimant's counsel made an "**X**" in the **No** box.

    After a thorough review of the voluminous documents in this claim, this Panelist could not find any notification to the Settlement Program of the bankruptcy by Claimant before the Eligibility Notice was issued on June 21, 2013.

    BP raised the issue in its appeal brief on July 29, 2013. On July 31, 2013, Claimant's counsel sent an e-mail to the Settlement Program which stated:

> "We were unaware that a Chapter 11 reorganization bankruptcy would have to be filed as a Failed Business claim."

Given the straightforward language in Question 11 of the Claim Form cited above and the fact that it says "bankruptcy" and does not exclude certain bankruptcies, this Panelist is somewhat dismayed by the statement in the e-mail.

The Settlement Agreement clearly says if a Claimant entered bankruptcy after May 1, 2010 but prior to December 31, 2011, the Claimant is a "Failed Business". This Panelist sees no exception in the Settlement Agreement for Chapter 11 bankruptcies. Had the drafters of the Settlement Agreement wanted to carve out Chapter 11 bankruptcies, they could have done so. They did not. Therefore, this Panelist finds that Claimant is a "Failed Business" and remands this matter to the Claims Administrator to analyze the claim under that framework.