███████████ - Claim ID 242406

BP's appeal of a substantial BEL award labels the claim as implausible and suspicious. Claimant suspended ███████████ in August of 2010 which BP views as the actual cause of Claimant's reduced revenue. In multiple submissions, Claimant and Class Counsel challenge BP's position as a prohibited alternative causation argument. After careful *de novo* review, we reaffirm that causation under Exhibit 4B requires deference to its objective criteria and nothing else. We therefore decline BP's invitation to entertain an alternative cause of the loss or find this claim to be implausible or suspicious and affirm the Claims Administrator's award.

Claimant is an ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ the deficiencies identified ███████████ had been corrected and the moratorium was lifted effective August 12, 2010. BP argues that the shutdown of Claimant's facility resulted in a precipitous decline in revenue that continued after the facility reopened. BP therefore urges that Claimant's ability to pass the V-shaped revenue test was driven by the voluntary shutdown which renders its attestation on the claim form implausible and suspicious. Absent the shutdown, BP argues with conviction that Claimant almost certainly would not meet the objective causation requirements of Exhibit 4B.

In response, Claimant argues that BP is engaging in an impermissible alternative causation argument that has been rejected by the Fifth Circuit. In the Claimant's view, BP's argument seeks to impose a cause in fact requirement over and above the objective criteria set forth in Exhibit 4B. Claimant also points out that BP did not object in October 2012 to the Claims Administrator's Policy 308. That policy expressly disclaims any obligation on the Administrator to analyze causation issues

beyond the criteria of Exhibit 4B. Claimant thus criticizes BP's implausible and suspicious arguments as devoid of any factual basis and contrary to controlling law.

Subsequent to its Final Proposal, BP filed a supplemental memorandum in which it sought to respond to contentious arguments purportedly made for the first time in Claimant's Final Proposal. This prompted a response from the Claimant in which it argues, *inter alia*, that BP's supplemental memorandum was untimely under the Rules Governing the Appeals Process (RGAP). At that point, Class Counsel entered the fray with an ***amicus*** memorandum supporting Claimant's position on the alternate causation issue. This filing triggered yet another response from BP in which it again argues that Claimant's sworn attestation is untrue and baseless. The Claimant responded to BP's latest briefing which, among other things, accuses BP of seeking a fourth bite at the apple in its serial submissions.

As an initial matter, we agree with the Claimant and Class Counsel that the argument advanced by BP is one of alternate causation. More specifically, BP's position is that the Claims Administrator should have made a factual determination that the cause in fact of Claimant's lost 2010 revenue was the closure of its facility in August. As BP sees it, such a determination should have resulted in the outright denial of the of the claim. As explained below, this argument, in one form or another, has been made unsuccessfully to the District Court at least three times, to the Fifth Circuit and to the United States Supreme Court.

Regardless of how it has been labeled or described, alternate causation has been rejected in each forum in which it has been proffered. See ***Deepwater Horizon III, 744 F 3rd at 377-378 ("The Settlement Agreement contains many compromises. One of them was to provide in only a limited way for connecting the claim to the cause.")*** In ***Deepwater Horizon II, 739 F 3rd 790 (5th Circuit 2014)***, the Fifth Circuit upheld Policy 308 and its disclaimer of any proof of causation beyond the

criteria in Exhibit 4B. In *Deepwater Horizon III*, the Fifth Circuit likewise rejected BP's contention that without a proof of causation requirement, the Settlement Agreement ran afoul of Article III and Rule 23. As recently as this month, the Fifth Circuit has reiterated these holdings:

> BP attempts to circumvent the causation requirements and compensation framework in the Agreement. BP now asks individual claimants to show that any revenue from the pre-spill period was the type that they could have continued earning after the spill. *But that amounts to requiring that Claimants prove that their loss revenue was caused by the spill, which is precisely what we refuse to require in Deepwater Horizon II.*

*In re: Deepwater Horizon*, May 8, 2015, No. 13-31296, 2015 U.S. App. Lexis 7668 (*Deepwater Horizon IV*) (emphasis added).

Bound by these authorities, numerous appeal panel decisions have likewise rejected various forms of BP's alternative causation argument. BP relies on another line of appeal panel decisions that has found some claims to be suspicious and implausible. However, those decisions have turned on the illegal or questionable nature of Claimant's business revenue. Here, the record does not suggest and BP does not argue that there is anything illegal about the sources of Claimant's revenue. We therefore find these decisions to be distinguishable.

For the forgoing reasons, we conclude without hesitation that the objective criteria of Exhibit 4B are the exclusive means of determining causation under the Settlement Agreement. Those criteria are clearly met in this case and we find no error in the Claims Administrator's award of compensation. We decline BP's invitation to engage in an alternative causation analysis nor are we free to require the Claims Administrator to do so. The courts have spoken clearly on this issue and we find nothing about this claim that would require a contrary result.