**Claim ID 188797 -** ███████████

BP appeals the $██████ pre-RTP BEL claim award to a "████████" manufacturer, charging that the Settlement Program did not properly match Claimant's revenue with its corresponding variable expenses. BP says this problem continued even after application of the Annual Variable Margin methodology. BP argues that even though Claimant's P&L annual revenues reconcile with its income tax returns, those revenues do not correspond to those listed on its sales tax returns, and the latter should have been used in the calculations because they were prepared on an accrual basis, unlike the cash basis used with the P&Ls. BP contends that even after application of the AVM, Claimant still fails Policy 495's second criterion (Policy 495, Section I, criterion 2, p. 5) because revenues for four specified months each exceeded 20% of the applicable annual revenue, so that the use of the AVM "did not produce sufficiently matched final data." As a result, BP concludes, "the Settlement Program should have, as provided by Policy 495, addressed the *revenue* attribution issues with this claim by restating Claimant's P&Ls," citing to "See Policy 495 at 7." The possibly pertinent provisions found at page 7 of the Policy state:

> Under the above methodologies, the guiding principle has been to utilize the claimant's contemporaneous P&Ls where there is no indicia of a mismatch of revenue and expenses. Where matching issues have been identified the approach will be, wherever possible, to amend the P&Ls utilized as inputs to the compensation calculation and to the extent possible calculate Step 1 and Step 2 compensation in accordance with the Settlement Agreement.

> Contemporaneous P&Ls submitted by the claimant will be restated if in analyzing and processing a claim, the CSSP Accounting Vendors identify either an error (as previously defined) or a mismatch of revenue and variable expenses which can be explained and supported by appropriate documentation. If matching issues remain after such restatements, revenue and/or variable expenses will be allocated as per one of the methodologies set forth in Attachments B through H.
> As it relates to adjusting the inputs to better match revenue with corresponding variable expenses, the methodologies require the reallocation of revenue, expenses or both for both the Benchmark and Compensation Periods.

This panelist does not understand those provisions to require some restatement of a Claimant's P&Ls after the same have been put through the AVM methodology. Rather, that methodology, as one of the methodologies available, is to be applied where "matching issues remain after such restatements," i.e., those restatements the CSSP Accounting Vendors may deem necessary. The listing in Policy 495 of conclusions arrived at by the Claims Administrator in light of the Program's experience since its inception and the "rulings and directives received from the Court," include these three:

> 4. It is not feasible in the context of a class-wide settlement involving thousands of different claims, with each claimant's financial information

potentially spanning a time period in excess of four years, to attempt to match specific expenses to specific revenues on an individual transaction by transaction basis. The time, effort and expense required under this approach would be prohibitive.  Further, it is unlikely that such individualized matching of specific expenses to specific revenues would be possible based on information and documentation available to the claimants or the CSSP.

6.    It is the CSSP's considered assessment that, for the majority of claimants, sufficient "matching" of revenue and expenses will be best accomplished through an annual variable margin methodology which totals variable expenses for each Fiscal Year and allocates them to each month on a pro-rata basis of monthly revenues for the same period.  This approach reasonably accomplishes sufficient "matching" and is the most feasible methodology in the context of a class-wide settlement.

11.   Consideration of whether revenues and expenses are sufficiently matched necessarily involves an element of professional judgment.  The CSSP recognizes and reserves the right of the CSSP Accounting Vendors to exercise such professional judgment to achieve sufficient matching as ordered by the Court.

(Policy 495 at pp. 3-4) (footnote omitted)

Policy 495 has been approved by the Court and is binding on the appeal panelists.  It explains in its "Policy Development Process" the extensive work that led up to the final written version, and is designed to achieve "sufficient matching," not perfect matching.  Whatever the logic of BP's contentions concerning the insufficient "matching" achieved by application of the Policy 495 protocols in this particular claim, the Policy was applied within the confines of the discretion accorded the CSSP Accounting Vendors and that is all that is required.

BP's request for a remand is declined.  BP's Final Proposal of $██████ pre-RTP, purportedly representing "the correct award amount calculated using the revenue amounts reported on Claimant's sales and use tax returns," is rejected in favor of Claimant's Final Proposal in the amount of the original award, pursuant to the Baseball Process which controls the panelist's options.