Transcript of the Testimony of
# Claims Administration Panel Meeting

**Date taken: July 9, 2014**

**Deepwater Horizon Economic & Property Damages Settlement**

All electronic deposition & exhibit files
are available at **www.psrdocs.com**.
Please call or e-mail reporters@psrdocs.com if you need a
**Username** and **Password**.

# Professional Shorthand Reporters, Inc.

**Phone:  504-529-5255**
**Fax:  504-529-5257**
**Email:  reporters@psrdocs.com**
**Internet:  http://www.psrdocs.com**

Page 1

CLAIMS ADMINISTRATION PANEL

DEEPWATER HORIZON

ECONOMIC & PROPERTY DAMAGES SETTLEMENT


PANEL MEETING



PAN-AMERICAN LIFE CENTER
PONTCHARTRAIN ROOM, 11TH FLOOR
601 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130
WEDNESDAY, JULY 9, 2014
9:00 A.M.



CLAIMS ADMINISTRATION OFFICE:


PATRICK A. JUNEAU, JR., ESQ.
Claims Administrator

MICHAEL J. JUNEAU, ESQ.

PATRICK HRON, ESQ.

KEVIN COLOMB, ESQ.

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 2

1   CLASS COUNSEL:

2

         STEPHEN J. HERMAN, ESQ.
3
         JAMES PARKERSON ROY, ESQ.
4
         JOSEPH F. RICE, ESQ.
5
         CALVIN FAYARD, ESQ.
6
         RHON E. JONES, ESQ.
7
         ROBERT T. CUNNINGHAM, ESQ.
8
         JOHN S. CREEVY, ESQ.
9
         TOMMY A. THOMASSIE, IV, ESQ.
10

11   BP COUNSEL:

12       WENDY BLOOM, ESQ.

13       MARK HOLSTEIN, ESQ.

14       DANIEL CANTOR, ESQ.

15       BRIAN GASPARDO, CPA

16       RANDY LATTA

17

18   OTHERS PRESENT:

19       ANDREW OXENREITER
         Brown Greer
20
         NEIL KEENAN
21       PriceWaterhouseCoopers

22       TED MARTENS
         PriceWaterhouseCoopers
23
         CHUCK HACKER
24       PriceWaterhouseCoopers

25

```
                                                   Page 3

 1        ROBIN PILCHER
          Postlethwaite & Netterville
 2
          TOM FRIOU
 3        Postlethwaite & Netterville

 4        MATT DOLAN
          Freeh Group International Solutions
 5
          ALEJANDRO SALICRUP
 6        Freeh Group International Solutions

 7        ERVIN A. GONZALEZ, ESQ.
          Plaintiffs' Steering Committee
 8
          ANNIKA K. MARTIN, ESQ.
 9        (for Elizabeth Cabraser)
          Plaintiffs' Steering Committee
10
          JOHN A. BADEN, IV, ESQ.
11        Plaintiffs' Steering Committee

12

13   REPORTED BY:

14
          LINDA G. GRIFFIN, RPR
15        Certified Court Reporter

16

17

18

19

20

21

22

23

24

25
```

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

```
                                                       Page 4

  1                    AGENDA INDEX

  2                                          PAGE

  3

  4      1.  EXCLUSIONS

  5
             Policy 276 v.2 - Scope of
  6          the GCCF Release Exclusions ...   5

  7
         2.  BUSINESS ECONOMIC LOSS CLAIMS
  8
             Policy 354 v.4 - Evaluation
  9          of Claimants with Changes
             in Business Ownership or
 10          Operating Activities ..........   7

 11
         3.  ECONOMIC LOSS CLAIMS
 12
             Policy 363 v.5 - Preventing
 13          Double Payment for the
             Same Loss to an Entity and
 14          the Owner or Officer of
             that Entity ..................   78
 15
 16      4.  BUSINESS ECONOMIC LOSS CLAIMS

 17          Policy 490 - Comprehensive
             Policy on Multi-Facility
 18          Businesses ...................   31

 19
         5.  BUSINESS ECONOMIC LOSS CLAIMS
 20
             Policy 503 - Guidelines for
 21          Registering as a Business
             Claimant and Filing Business
 22          Economic Loss Claims ..........   71

 23

 24

 25
```

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 5

1                    *      *      *

2        MR. PATRICK JUNEAU:

3            I'm going to open this meeting.

4    This is the panel meeting that we've

5    convened pursuant to the terms and

6    provisions of the Settlement Agreement to

7    discuss certain issues that have arisen

8    regarding policy decisions.  These are the

9    issues here in the case, and I've sent this

10   out to everybody.  We have one through five.

11           Let me just address No. 1 first.

12   On the Policy 276 v.2, I'm going to pull

13   that matter off the agenda because I'm not

14   satisfied with the language that is there.

15   I think there needs to be some clarity.  It

16   has nothing to do with the parties' issues.

17   We want to make sure we're comfortable with

18   what we're saying.  And then I'll put it

19   back on and then the parties can go look at

20   it and see if it provides what you all want

21   done with that.  So for that reason, I'm

22   going to just withdraw that from

23   consideration right now.

24           Now, this is going to sound like a

25   broken record for everybody in the room, but

Page 6

```
 1   let me just set the stage with this thing.
 2   The purpose of these panel hearings is to
 3   get the parties together, if we have issues.
 4   Now, I want to reiterate, the whole concept
 5   behind it, if you go way back when, was to
 6   see if there were disagreements and there
 7   were modifications and/or agreements and get
 8   an agreement among the parties to avoid an
 9   incurable resolve.  That's conceptually what
10   this is all about.
11           So that still exists today.  I
12   would encourage people to do that, if that's
13   possible.  If it's not possible, well, we're
14   seeking to do it.  But with that being said
15   and done, I just want to also reiterate that
16   we have, just like we did in every one of
17   these panel meetings, we have the respective
18   papers and submissions of everybody that
19   composes part of this record that we make.
20   If one of these issues gets an appeal on it,
21   it's then rolled up into the Court, if that
22   addresses itself to the Court.
23           So we're not trying to reinvent
24   the wheel or rediscuss any of those issues
25   because we have that.  I have that.  You
```

Page 7

1   have that.  Everybody has that.  But with

2   that said and done, I have in the past and

3   I'm going to allow that today, though, there

4   are issues here that the parties deem very

5   significant and important, so I'm not

6   cutting anybody off, if you want to add

7   anything that you think is paramount.

8          But realize, of course, that we

9   have the documents, and we'll give it all

10  deference, and finally, let's don't waste

11  our time reading what a sentence is in the

12  documents that we already know about.  But

13  if it's an important point that you all want

14  to make, I'm going to give you all the full

15  latitude to address all of those issues.

16          Now, let me take them in the order

17  in which we have them there.  Start with No.

18  2.  This is Policy 354 v.4.  It has to do

19  with evaluation of claimants with changes in

20  ownership or operating activities.  I have

21  the respective points here, and I don't know

22  if, Wendy, you wanted to speak to this, and

23  speak to the panel and so forth, but you all

24  have a lot of comments about this.  And if

25  there's things that you all want to address

Page 8

1   in there, I'll put that on the floor if you

2   want to do that now, and then we can discuss

3   it as we go.

4        MS. BLOOM:

5            Okay.  I think with respect to

6   354, and it really carries through to 490

7   and 503, --

8        MR. PATRICK JUNEAU:

9            There is overlap.  We agree.

10       MS. BLOOM:

11           Yeah -- there's really just some

12  overarching, you know, issues for us.  I

13  think one is -- one is pretty simple, which

14  is just that I think the Settlement Program

15  has put a lot of effort into really trying

16  to figure out how to identify the right

17  entity that's filed a claim, and we

18  appreciate that and think that's very

19  important.

20           And in doing that, there's now

21  language in a number of these policies that

22  references Section 1.2, tests about what the

23  entity is doing, is it selling, is it a

24  service business, and just with respect to

25  Section 1.2.1, we just want -- we were just

Page 9

1    hoping to get some clarity, because I think

2    it's a longer provision, and the entity, it

3    has to not just be selling products into the

4    Gulf, but there are two subparts there.

5            So to be a class member, it has to

6    sell products into the Gulf, directly to

7    consumers or end users, or to another entity

8    that sold products directly to consumers or

9    end users, and we were just hoping, for

10   clarity purposes, that that additional

11   language that's part of the test could be

12   added to the policies that references that

13   point, so there's not any confusion.

14           We assume that the program wasn't

15   intending to cut off, you know, that aspect

16   of the test.  And perhaps it's a shorthand,

17   but that's just sort of one point to us,

18   which is that, you know, class membership is

19   pretty important, obviously, and we just

20   were wondering if you could take that into

21   account in your analysis.

22       MR. PATRICK JUNEAU:

23           And let me just finish out where

24   we can take this piece by piece, you know,

25   if the PSC has any -- it might be easier if

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 10

1    you want to take it piece by piece on that.

2         MS. BLOOM:

3              Sure.

4         MR. PATRICK JUNEAU:

5              Steve.  I want to address the

6    specific point that you're talking about.

7         MR. HERMAN:

8              I mean, I think -- I assume that

9    the program is already looking at these

10   things, and if there's a red flag for some

11   entity, I would imagine that the program's

12   looking into it to engage in an inquiry

13   that's probably going to be unnecessary in

14   90 percent of the cases.  It seems a little

15   bit overly onerous, but -- you know, a class

16   member, the class definition says what it

17   says, it is what it is, and, you know, we

18   assume that the program is doing what it

19   needs to do to verify class membership.

20        MR. MICHAEL JUNEAU:

21             If I understand, the particular

22   part, Wendy, you're talking about on 354 is

23   in Section B?

24        MS. BLOOM:

25             Yep, right.  So that part -- and

Page 11

```
 1   then --
 2        MR. MICHAEL JUNEAU:
 3             2-B?
 4        MS. BLOOM:
 5             That's right.  And it carries
 6   through to the other policies.
 7        MR. MICHAEL JUNEAU:
 8             To the other policies?
 9        MS. BLOOM:
10             Yep.  But that "A," where it says,
11   "Sold products into the Gulf Coast Areas,"
12   it's a more extensive test than that, and so
13   that was really just our -- we have that in
14   the covered base list.
15        MR. HERMAN:
16             But as a practical matter, what do
17   you want them to do?  Do you want them to
18   get a whole bunch of documents to prove that
19   they sold stuff in the Gulf Coast Area?  I
20   mean, isn't that going to be fairly obvious
21   in 90 percent of the cases?
22        MS. BLOOM:
23             I don't -- I think that, for a
24   number of manufacturing or distributor-type
25   entities, it may not be clear, and the thing
```

Page 12

1    that we were concerned about with respect to

2    transparency is that we didn't want to leave

3    a misimpression in a policy that there was a

4    class membership test that's broader really

5    than what the test is in the Settlement

6    Agreement, so that was just our concern.

7         MR. PATRICK JUNEAU:

8              Okay.  Go ahead.

9         MS. BLOOM:

10              Okay.  So then another issue that

11   we have with respect to entities and

12   determining the proper entity is -- we

13   appreciate that the focus is now on really

14   trying to identify the legal structure of

15   these entities and the focus on what the

16   entity itself is doing, and the TIN, we

17   think, is a part of that.  We just had some

18   concerns, as you see in our papers, about

19   the focus on the TINs.

20              And then sort of related to that

21   is, in Policy 503, there's reference to sort

22   of natural persons and how you deal with

23   their businesses that are listed on their

24   tax returns, where they're treated as

25   businesses, so on the Schedule C's.  And we

Page 13

 1    really think that you need to look at all

 2    the facts and circumstances to make sure

 3    you've got -- if something is a separate

 4    business, that it's really treated as a

 5    separate business.

 6             And so, for example, a natural

 7    person, we had given an example in the 503

 8    context, but a natural person might have a

 9    restaurant business and then they might have

10    a completely different jewelry business.

11    What you're supposed to do, if you're an

12    individual, is file those on separate

13    Schedule C's.

14             So the idea there is that really

15    they're separate businesses in the same way

16    as you'd have separate TINs for different

17    businesses, and so that would be an example

18    for us of where -- you know, if the entity

19    should really be filing separate Schedule

20    C's, then they really are separate

21    businesses.

22             And so just sort of a request that

23    we wanted to voice that you really dig into

24    the facts and circumstances in each case.

25        MR. MICHAEL JUNEAU:

Page 14

1          Let me ask you about that.

2      MS. BLOOM:

3          Yeah.

4      MR. MICHAEL JUNEAU:

5          So the example you used there is a

6  natural person that operates a jewelry store

7  and a restaurant --

8      MS. BLOOM:

9          Yep.

10      MR. MICHAEL JUNEAU:

11          -- who is going to have separate

12  Schedule C's?

13      MS. BLOOM:

14          Yep.

15      MR. MICHAEL JUNEAU:

16          And are they using that person's

17  Tax ID number?  Are the taxes filed under

18  different Tax ID numbers for those

19  businesses?

20      MS. BLOOM:

21          No, right.  So they're a natural

22  person, so they haven't filed as separate

23  business entities, but they're operating

24  those businesses separately.  They're

25  different businesses.  And Brian could speak

Page 15

 1    to this a bit better, but then that means

 2    they should really be on separate Schedule

 3    C's.

 4        MR. MICHAEL JUNEAU:

 5            Okay.  So the example would be a

 6    single -- and I'm Mike Juneau.  We're

 7    supposed to be identifying ourselves.  That

 8    was Wendy Bloom, and Mike Juneau; Steve

 9    Herman over there.  The natural person that

10    you're talking about has an individual tax

11    return --

12        MS. BLOOM:

13            Correct.

14        MR. MICHAEL JUNEAU:

15            -- that's under that person's

16    Social Security number?

17        MS. BLOOM:

18            Correct.

19        MR. MICHAEL JUNEAU:

20            And attached to that one tax

21    return are two different Schedule C's, one

22    is this person's jewelry store and the other

23    one is a restaurant?

24        MS. BLOOM:

25            Correct.

Page 16

1        MR. MICHAEL JUNEAU:

2            And what you're saying is you

3    think that those should be considered two

4    different claimants?

5        MS. BLOOM:

6            Those two different businesses,

7    that's right.

8        MR. MICHAEL JUNEAU:

9            Two different claimants, though,

10   right?  I mean, they would be --

11       MR. PATRICK JUNEAU:

12           Yeah, that's what I'm trying to

13   find out.  Is that what you're saying?

14       MS. BLOOM:

15           They should be treated as two

16   different businesses, right, as they go

17   through the BEL process, yes.

18           And the same way as businesses

19   with separate TINs -- or separate TINs are

20   separate businesses, the same -- it's sort

21   of the same parallel, but in the natural

22   person's space, because they're really

23   separate businesses being reported on

24   different Schedule C's.

25           And, Brian, I don't -- feel free

Page 17

1    to elaborate if -- but I think that's --

2    that's what we're saying is you really need

3    to look at, are these separate businesses,

4    you know, and if they are, then they should

5    be separate.

6         MR. MICHAEL JUNEAU:

7              What about a company with

8    subsidiaries that are all part of the same

9    corporate entity?  Are those separate

10   businesses?  You have one business,

11   Corporation Z, and it has a subsidiary that,

12   you know, manufactures tanks and another

13   subsidiary that operates convenience stores.

14        MS. BLOOM:

15             If it's a separate entity --

16        MR. MICHAEL JUNEAU:

17             No, no, not a separate entity now.

18   It's all the same entity, a subsidiary, just

19   different divisions of the same entity.

20        MS. BLOOM:

21             If you have different divisions of

22   the same entity, then I think you're all the

23   same entity, right.

24        MR. MICHAEL JUNEAU:

25             Now, those are different

Page 18

1    businesses, right?  They're operating,

2    manufacturing a tank, and they're operating

3    convenience stores.  I mean, those are

4    pretty separate and distinct just like the

5    jewelry store guy, but the same entity

6    running all that.

7             In that case, what you're saying,

8    so that should all be considered the same

9    claimant, or not?

10        MS. BLOOM:

11             That's the same claimant.

12        MR. MICHAEL JUNEAU:

13             Okay.

14        MS. BLOOM:

15             Because it's the same entity, yes.

16        MR. MICHAEL JUNEAU:

17             All right.

18        MR. GASPARDO:

19             Your duplicitous assumption I'm

20    getting from what you're saying is that, the

21    same EIN, it is all one tax return, there's

22    no separate legal entities, then they're all

23    operating as one entity.

24        MR. MICHAEL JUNEAU:

25             As one entity.

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 19

1      MR. GASPARDO:

2           Yeah, yeah.

3      MR. MICHAEL JUNEAU:

4           I don't understand.  What's the

5  difference between that and this natural

6  person that you're talking about that has

7  the same, same entity, same person operating

8  different businesses under the same tax

9  number?  I don't understand the distinction

10  between those two.

11      MR. GASPARDO:

12           Well, operationally, you're going

13  to have two completely separate operations

14  that are going on, so, I mean, we're looking

15  at it from the economic reality standpoint.

16      MR. MICHAEL JUNEAU:

17           That's true of both situations.

18      MR. PATRICK JUNEAU:

19           Yeah, what's the difference

20  between the two, the two circumstances?

21      MR. GASPARDO:

22           Well, in one case, you have the --

23  you have a legal entity that has multiple

24  operations inside of it.  In the other case,

25  you have an individual who simply has chosen

Page 20

```
 1    not to incorporate and is operating two
 2    different businesses.
 3         MR. MICHAEL JUNEAU:
 4              Okay, I understand.  Got it.
 5         MS. BLOOM:
 6              And then I think the other piece
 7    around entities is that we see quite often
 8    issues around related entities and the
 9    accounting with respect to how related
10    entities interact with one another is
11    complicated and doesn't always comport with
12    economic reality, and we would hope -- we've
13    had some requests in some of our submissions
14    that, as a procedural step, that the
15    Settlement Program could take the
16    affirmative step, in the claim submission
17    process, of asking claimants, "Do you have
18    related entities," and "Are they filing
19    claims," so that you can have a means to
20    look at these related entities together.
21              And that is, I think, a concern of
22    ours that also follows with respect to
23    Policy 490, which is the facilities.  So how
24    facilities work their accounting back and
25    forth between each other, matters, and we
```

Page  21

1    certainly acknowledge that a particular

2    claimant can file, at different points in

3    time, claims for their different facilities,

4    but that doesn't mean that the Settlement

5    Program can't look at them all together.

6              And so we are just expressing a

7    request, procedurally, that there be efforts

8    made to -- as procedural steps along the

9    way, to ask claimants about things like,

10   "Are you planning to file another facility

11   claim," so that there's ways that we can be

12   aware of these things and that it's on the

13   claimant to identify these things so that it

14   doesn't have to be a guessing game.

15     MR. MICHAEL JUNEAU:

16              You know, that raises an issue I

17   wanted to ask both sides about.  You know,

18   you're talking about seeking information.

19   It's a basic thing, like you say, "Are you

20   going to file another facility?"  I think

21   you might maybe ask, "Do you have other

22   related entities that have claims so we can

23   identify all those?"

24              Educate us a little bit more on --

25   I mean, there was extensive negotiations on

Page 22

1    all these claim forms, Brian, as to what

2    questions were asked on the form, and that

3    was an agreement of the parties.  Am I right

4    about that?

5        MR. GASPARDO:

6            That's my recollection.

7        MS. BLOOM:

8            I guess how I would characterize

9    that is that the first step with respect to

10   those claim forms was that the Settlement

11   Program itself created those, Orran Brown,

12   and the parties had a very limited

13   opportunity to proceed with comments on them

14   because we were already getting, you know,

15   anxious to get up and running and getting

16   those claims filed.

17           And I think that as of now, we

18   have quite a lot of history with the

19   operations of the Settlement Program.  It

20   becomes obvious, things that could be sought

21   on a claim form that would really help to

22   get us to the accurate results and process

23   those claims correctly, and I don't think

24   there was time in that rushed period to

25   think through all those issues.

Page 23

1        MR. MICHAEL JUNEAU:

2            Okay.  And I think that's what I'm

3    asking.  My understanding of the creation of

4    these claim forms was that it was a product

5    of joint effort from both sides, with

6    particularly the claims office involved, as

7    well, but it was a form that both sides

8    reviewed and had input on, changes, and

9    ultimately came to an agreement about.  You

10   don't agree with that?

11       MS. BLOOM:

12           I don't think that's the case.

13   No, Mike.  There are -- there were many

14   disputes actually about those claim forms

15   where the disputes were resolved by Brown

16   Greer, or perhaps, ultimately, you know, by

17   you or the Settlement Program, I don't know,

18   but I don't -- I don't know that I agree

19   it's the case that all of those forms

20   reflect fully, you know, what each side

21   agreed, Mike.

22       MR. MICHAEL JUNEAU:

23           Well, we do have the process,

24   right, that if any side doesn't like

25   whatever results come about -- I mean,

Page 24

1    that's why we're here today, doing this

2    panel meeting.  If that's not resolved,

3    we'll go to the Court.  I don't recall the

4    claim form coming up in any panel meeting

5    where anybody has -- here's what I'm asking,

6    is if there are -- if you suggest, look,

7    history has taught us, as time has

8    developed, that maybe there should be more

9    questions asked on the claim form, that's

10   what I'm hearing you suggesting.

11       MS. BLOOM:

12           That's correct.

13       MR. MICHAEL JUNEAU:

14           Okay.  And my concern is that I

15   think that those claim forms -- that's a

16   subject that's ripe for discussion between

17   the parties, to have those kind of

18   discussions to see if you can come to an

19   agreement about whether there are additional

20   questions that should be asked.  Have you

21   all had -- you've had no such discussions so

22   far, right?

23       MR. HERMAN:

24           Not that I know of.

25       MR. MICHAEL JUNEAU:

Page 25

1          We would encourage you all to do

2     that.  We really would.  If you now say that

3     there are more questions, that the history

4     of two years of handling this program

5     teaches us we ought to be asking, that if

6     you all could re-- just like we did the

7     first time, I think, both sides having some

8     input on that, and, you know, that would be

9     the first step in terms of addressing that.

10          But we hear you.  I got you, that

11     as a procedural matter, even if it's not on

12     a claim form, that you're suggesting there

13     are some questions that we ought to be

14     asking on these various claims.  I got that,

15     understood.

16     MR. HERMAN:

17          But, Mike, let's just say -- this

18     is Steve Herman.  It's my perception that,

19     in reviewing BEL claims, the accountants,

20     and perhaps other ones, are not very bashful

21     about trying to get all of the types of

22     information that Wendy is talking about, and

23     frankly, a lot more.

24          Frankly, from our point of view, I

25     think the questions that are being asked and

Page 26

1    the documents that are being asked for are

2    probably, in many people's perception, on

3    our side, already overly burdensome and

4    beyond what's called for in the Settlement

5    Agreement, so, you know, that's a matter of

6    perception.

7              Obviously, it's subjective and we

8    have different feelings about that than BP

9    does, but I kind of reject instinctively the

10   notion that the Claims Program should be

11   asking for even more information than it's

12   already asking for, in the ordinary course

13   and processing of a BEL claim.

14             As to Wendy's second point, that

15   individuals who operate separate

16   quote/unquote businesses should be -- should

17   have each of the business's claims evaluated

18   separately, I don't think that's how -- I'm

19   thinking off the top of my head.  I don't

20   think that's how the claimant is defined,

21   under the agreement.

22             I think the claimant is defined as

23   the person who files a Schedule C.  It's not

24   defined by the Schedule C or by the business

25   reflected on the Schedule C.  And what I

Page  27

1    would say to that is there is nothing in the

2    Settlement Agreement that requires the claim

3    to be processed in that way.  If it's more

4    claimant favorable to be processed in that

5    way, particularly if there are multiple

6    facilities, and it can be done that way

7    under Exhibit 5, then the claimant should

8    have the right to do that.

9         If it's more favorable to do it as

10   a consolidated way, then I think the

11   claimant should have the right to do it that

12   way, and I think that's required, under

13   Section 438.  And Joe may want to say

14   something else, but --

15        MR. RICE:

16        Mike, I want to supplement Steve's

17   comments and go back to your initial point.

18   The instruction booklets and the claim form

19   were exchanged and BP did have the full

20   opportunity to respond to it at the time,

21   and on May 13th, 2012, Lynn Greer sent an

22   email out confirming that she had, in fact,

23   received BP's comments, to a red line that

24   class counsel had submitted, and in that

25   email, Lynn says that they are not making --

Page 28

1    they're only incorporating agreements of the

2    parties and they are making decisions when

3    it's dealing with wording or clarity, but

4    for any changes that border on substance or

5    meaning, the parties are in agreement, so

6    these forms were in that email that was sent

7    by Lynn Greer to Dan Cantor and ten other

8    folks, on May 13th, 2012.  And if you want a

9    copy of that, we'll be glad to supply that

10   to you.

11       MS. BLOOM:

12           So what I would say about that --

13   I'm sorry, Joe.  I thought you were done.

14       MR. HERMAN:

15           And let's just look at it in some

16   sense of reality.  We understand BP's

17   current, whatever you want to call it, with

18   Brown Greer.  The notion that those claims

19   forms were not developed, in large part, out

20   of a relationship and a history of BP

21   working with Brown Greer and the GCCF for

22   two years is kind of farfetched and I have a

23   hard time believing that.

24       MS. BLOOM:

25           So what I would say is that email

Page 29

1    acknowledges that if there wasn't agreement

2    by the parties about a particular issue for

3    a claim form, then the request of the party

4    may not have been incorporated.

5        MR. RICE:

6            Only on the wording, not meaning.

7        MS. BLOOM:

8            So also what I'm hearing from

9    Steve is that he's not interested in a claim

10   form that tries to get at making accurate

11   determinations of claims and figuring out,

12   are there related party entities and are

13   there facilities that are going to be

14   related, so that you can get to accurate

15   results.

16       MR. HERMAN:

17           I didn't say that.

18       MS. BLOOM:

19           And so, perhaps, if he doesn't

20   want those questions asked, then I guess

21   what we're saying is, would you like us to

22   put in a request for a policy to be

23   accomplished, to that end?  Or if there is

24   not a change to the claim form -- we are

25   seeing, in appeals, that there are issues

Page 30

1  where the accounting staff, or whoever it is

2  that's looking, doesn't pick up on related

3  party transactions and, you know, it

4  shouldn't have to be a guessing game is our

5  point of view, and simply asking the

6  claimant, "Do you have related entities" and

7  "Can you help us identify those," or "Are

8  you planning to file another facility

9  claim," can get the facility to more

10 accurate determinations, and so I am not

11 clear on why we can't add that to the claim

12 form.  But if you want us to make a formal

13 policy request for that, we'd be happy to,

14 or really we'd just ask that you can do that

15 as part of a procedure.

16        MR. MICHAEL JUNEAU:

17            To do what now?  I mean, you know,

18 we've got over a hundred thousand BEL claims

19 submitted already, which I assume is --

20 well, which I know is on the claims form

21 that was negotiated way back when to use

22 here.  You're saying, going forward, you

23 would like new claim forms to include that

24 information?  That's what you're suggesting?

25        MS. BLOOM:

Page 31

1              Yes.  And add, as you evaluate the

2    P & L's of an entity that has already filed

3    a claim, you can pick up the phone and call

4    the accountant -- that's one of the other

5    things you can ask the accountant about, you

6    know, are there related entities, is there

7    another facility claim that's being filed.

8              It's just another piece of

9    information in the process of getting to the

10   accurate answer that we think should be put

11   on the claimant.  It shouldn't have to be a

12   guessing game for the Settlement Program.

13      MR. RICE:

14              If I could go back to where I was.

15   The example that you and Wendy were

16   discussing about the person owning the

17   jewelry store, and I think it was a

18   restaurant, is a perfect example of a

19   multi-facility business that has an absolute

20   right, under Exhibit 5, to file those claims

21   separately.  The idea that they have to file

22   one claim is contra to the direct wording of

23   the document.  They have the option of

24   filing a consolidated claim or they may file

25   separate claims.

Page 32

1      MR. MICHAEL JUNEAU:

2          Okay, but let me stop you there,

3  Joe.  I think everybody agrees with that.

4  By facility, both -- I think what Wendy was

5  saying --

6      MR. RICE:

7          But you don't agree with it in

8  your policy because of the following --

9      MR. MICHAEL JUNEAU:

10         Well, that's the next policy.

11     MR. RICE:

12         Well, they overlap, Mike.

13     MR. MICHAEL JUNEAU:

14         Right.

15     MR. RICE:

16         That's the problem with the

17  discussions we're having today.  I think

18  Wendy and BP agree with us that the way

19  you've designed to present the issues in

20  these four policies that are up today all

21  overlap on one another, and I think BP, for

22  their own reason, doesn't think the reliance

23  on the EIN distinction, or the TIN

24  distinction, by itself, should be used and

25  neither do we.  And we don't think there's

Page  33

1    any support in the document for you to put

2    so much emphasis on a number that's a

3    randomly assigned number that people get for

4    multiple different reasons.

5              I mean, the Federal government

6    gives numbers to businesses, banks, and

7    under the Patriot Act, now require TIN

8    numbers because they want to use them for

9    security purposes.  Those numbers don't have

10   anything to do with the actual business

11   operation or whether it's a separate

12   business or facility or how it works.  It's

13   just an identifying number, and you've taken

14   that identifying number and put it up on a

15   pedestal and used it to rewrite many of the

16   provisions in the agreement.

17              So that the idea that, in that

18   exact example, if that business was owned by

19   Jones, LLC, and it owned a jewelry store and

20   it owned a restaurant, but they each -- the

21   restaurant was owned by somebody else ten

22   years ago and they bought it and it already

23   had an IEN number -- or EIN number -- they

24   may have kept that number, for

25   identification purposes, but it doesn't mean

Page  34

```
 1    that that's still not two separate
 2    businesses and it could be filed as separate
 3    facilities.
 4              But under your policy now, because
 5    it has two different numbers -- you haven't
 6    changed anything about the operation,
 7    haven't changed anything about the
 8    ownership, anything about the nature of the
 9    business -- you've changed the whole
10    writing, under the agreement, because it has
11    a number, and we don't think that's
12    appropriate, under the settlement.
13              You have to look to the facts and
14    circumstances.  You've got to determine if
15    it's the right claimant.  You've got to
16    determine, is that person or that entity a
17    claimant, and do they have the right to file
18    the claim, and are they filing the claim
19    pursuant to the agreement.
20              But this artificial rule that
21    you're coming up with that says that if
22    you've got a separate TIN number, that means
23    you have to do X, Y, Z, is not within the
24    terms of the agreement and it's not a policy
25    that needs to be put in place.
```

Page 35

1          Much of what you've addressed in

2     these policies we're here for today do not

3     need to be done.  There's no legitimate

4     reason for them.  You've got the discretion

5     to operate the Claims Center and you're

6     going to have to look at facts and

7     circumstances, different claims, that are

8     going to present issues, and you're going to

9     have to decide those issues.

10          But one size does not -- one shoe,

11     one size from one rule may not fit every one

12     of these examples, and we have examples of

13     actual claims that we could go through today

14     with you to show how this rewrites the

15     Settlement Agreement.

16     MR. PATRICK JUNEAU:

17          Okay, I heard what you just said.

18     He said you all agreed with that.  Are you

19     all on the same page with them regarding the

20     use of this TIN number?

21     MS. BLOOM:

22          So I think there's some common

23     ground.  As I heard Joe, he may be going

24     farther to almost say that you should

25     completely disregard TINs.  I don't think

Page 36

1    that we think that.  I think they are one

2    feature of what you look at to figure out,

3    is this, a particular claimant, the right

4    entity, and is it the same entity as the

5    entity that was in the benchmark period.

6             So I think what, perhaps, is the

7    common ground that I'm hearing between us is

8    that the TIN is one thing that we look at,

9    and you have to look at all the facts and

10   circumstances to make the right

11   determination about the entity.

12       MR. PATRICK JUNEAU:

13             Let me ask the second part of this

14   question.  He said, and if that's -- if

15   there's common ground now on that issue,

16   then you don't need a policy on any of the

17   issues, go ahead, administer it, that we

18   just look at it case by case by case.

19   That's in essence what you were saying?

20       MR. RICE:

21             That's -- you're writing policy --

22       MR. PATRICK JUNEAU:

23             No, I understood what you said.

24       MR. RICE:

25             Yes.  Yes, that's what I'm saying.

Page  37

1          MR. PATRICK JUNEAU:

2              Let me divide the issue, the

3      comments.  I want to know what BP's position

4      is about that comment.  I'm trying to see if

5      we've got a commonality or don't, that's

6      all.

7          MS. BLOOM:

8              Yeah.  Well, what I think was

9      really helpful about this policy generation

10     process is that it started with a request

11     for input from the Claims Administrator and

12     it seemed like it was an issue that the

13     Claims Administrator and vendors were

14     struggling with, how do we make sure that we

15     figure out that we've got the right entity

16     and what do we do, you know, when there's

17     changes of operations or changes of

18     entities.

19             And so I think we welcome that

20     process and we appreciate that you issued a

21     request for input so that we had an

22     opportunity to provide that feedback so --

23         MR. PATRICK JUNEAU:

24             But I've got it now.

25         MS. BLOOM:

Page 38

1              Right.  So I would hate to -- you

2      know, I disagree that, you know, if the

3      Settlement Program is struggling with

4      something, you shouldn't generate a request

5      for input and seek input of the parties.

6          MR. PATRICK JUNEAU:

7              No, but here's -- Wendy, here's my

8      precise question.

9          MS. BLOOM:

10             Yeah.

11         MR. PATRICK JUNEAU:

12             We've got input from here to China

13     on a lot of issues.  We've got specific

14     input on the issue we're talking about.

15     It's as transparent as you can get.  We've

16     got input.

17             I'm trying to see where we are.

18     Joe Rice just said, "That's our input on it,

19     and I don't see why you have to issue a

20     policy that you just -- you handle it in the

21     normal operations of the claim," and you're

22     saying, "You all people have got to look at

23     this, you look at this, you look at these

24     things," so I'm wondering, is there

25     commonality in what he's saying there?  Do

Page 39

1    you think -- do you agree with him, it

2    shouldn't be a policy?  I just want to know

3    where we are.

4         MS. BLOOM:

5            I think our -- I think it's

6    helpful to have a policy on this issue just

7    so that the claimants understand where the

8    Settlement Program is coming from.  I'm not

9    sure, are you suggesting to pull down all

10   the policies or just this one or --

11       MR. PATRICK JUNEAU:

12           I'm not suggesting anything, just

13   to get an answer to what he said.

14       MS. BLOOM:

15           What are you suggesting, Joe?

16   Yeah.

17       MR. PATRICK JUNEAU:

18           You were sitting there when he

19   said it.  I'm trying to --

20       MS. BLOOM:

21           Yeah.

22       MR. PATRICK JUNEAU:

23           That's what he said.  I'm just

24   exploring that with both parties.  What do

25   you think about that?

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 40

1       MR. RICE:

2           Well, I think it would be okay,

3   but that needs to be done on a case-by-case

4   basis.  Where I thought there was common

5   ground was that, for different reasons and

6   going in different directions, both sides

7   agreed --

8       MS. BLOOM:

9           Yeah.

10      MR. RICE:

11          -- that the TIN shouldn't be the

12  end-all be-all --

13      MS. BLOOM:

14          Yeah.

15      MR. RICE:

16          -- of the entity.

17      MS. BLOOM:

18          Yeah.  I mean, I think if there

19  was some simple policy that just simply

20  said, "We need to make sure we have the

21  right" -- I kind of agree that you may not

22  even need a policy on this, but if you just

23  say, "Our goal is to make sure we've got the

24  right entity and we're going to look at all

25  the facts and circumstances to figure that

Page 41

1  out," --

2      MR. PATRICK JUNEAU:

3          That's what I'm trying to figure

4  out.

5      MS. BLOOM:

6          -- you know, and "we're going to

7  be governed by, you know, economic reality,"

8  I think that's really what we're all driving

9  at, and the intent of the Settlement

10  Agreement, so --

11     MR. RICE:

12         We were doing good until that last

13  phrase.

14     MR. HERMAN:

15         We're okay with Exhibit 4 and

16  Exhibit 5 of the Economic & Property Damages

17  Settlement.

18     MR. MICHAEL JUNEAU:

19         In all due respect, I follow what

20  you're saying.  It's making sense to me.

21  When you hit that last button, I don't know

22  what that means, but --

23     MR. RICE:

24         But Exhibit 3 --

25     MS. BLOOM:

Page 42

1           Well, I don't know -- I mean, when

2    you say you don't know what that means, it's

3    in your BEL matching policy.  It's the

4    language that's --

5        MR. MICHAEL JUNEAU:

6           Well, what I'm saying is not in

7    the context in which you mean it in.

8        MS. BLOOM:

9           It's the principle.

10       MR. MICHAEL JUNEAU:

11          I may mean it one way.  You may

12   mean it -- and somebody else may mean it

13   another way.

14       MS. BLOOM:

15          Right.

16       MR. MICHAEL JUNEAU:

17          I've got a pretty clear concept of

18   that.

19       MR. RICE:

20          Mr. Juneau, what Wendy just said

21   before she got to the last phrase in there

22   is that you have to look to see it's the

23   right claimant, that they're a class member

24   and that you're getting accurate

25   information.  You don't need to do a policy

Page 43

1    to say that because the agreement says that.

2             The agreement says, when you are

3    going to look, that's what you would do, and

4    the idea now that we've got four or 500

5    policies -- I searched the 1100 pages of the

6    Settlement Agreement.  The word "policy"

7    appears five times.  In every situation, it

8    appears in relationship to an insurance

9    policy.  This idea that we were going to

10   come up with four or 500, now 15, 1800 pages

11   of instructional policy makes no sense.

12   That's my argument.

13             (Slide shown on screen.)

14      MS. BLOOM:

15             That's John's daughter.

16      MR. MICHAEL JUNEAU:

17             That has more sense than some

18   people.

19      MR. RICE:

20             But I want to put up an example

21   that points out why I don't think that these

22   policies are needed and why they're not

23   going to be able to work.  This is an actual

24   claim that's pending with the Claims Center.

25   And maybe you can put it up.  This brings

Page 44

1    back a lot of memories, Brian, huh?

2        MR. GASPARDO:

3            Sounds like Ground Hog Day.

4        MS. BLOOM:

5            I think she's a little older now,

6    though, your daughter, right, John?

7        MR. BADEN:

8            She is.  She's a year older.

9        MS. BLOOM:

10           Yeah.

11       MR. RICE:

12           I'm going to explain it before he

13   puts it up and then we've got the picture,

14   but this is a business that's headquartered

15   in Greenville, South Carolina, and it's

16   involved in the Payday lending and title --

17   car title lending business.

18       MR. HOLSTEIN:

19           Joe, is this a predetermined

20   claim?  Or has this one been determined?

21       MR. RICE:

22           This has not been determined.

23       MR. HOLSTEIN:

24           I don't know that we're supposed

25   to be looking at it.

Page 45

1          MR. RICE:

2                  I'm not going to talk about the

3      claim.  I'm just going to talk about the

4      questions that are before the panel today,

5      but I won't go into the details of the

6      claim.

7          MR. HOLSTEIN:

8                  Well, I understand, but I'm just

9      being sensitive to the Court's order.

10         MS. BLOOM:

11                 Right.

12         MR. HOLSTEIN:

13                 And we've been prohibited from

14     looking at claims that --

15         MR. RICE:

16                 Assume it's a hypothetical.

17         MR. MICHAEL JUNEAU:

18                 Wait.

19         MR. PATRICK JUNEAU:

20                 I don't want to see any -- yeah.

21         MR. MICHAEL JUNEAU:

22                 If you're going to give us

23     specific information about a specific

24     claim, --

25         MR. RICE:

Page 46

1          I'm not going to give you any --

2     MR. MICHAEL JUNEAU:

3          -- we don't want that.

4     MR. RICE:

5          I'm not going to give you any

6     information about a claim.

7     MR. MICHAEL JUNEAU:

8          All right.  Let's go.  If you do,

9     we'll stop.

10    MR. RICE:

11         If you have a business that's got

12    multiple facilities, and just assume those

13    red dots and those yellow dots, or green

14    dots and yellow dots, are separate physical

15    facilities with separate P & L's that would

16    be able to provide documentation.

17    MR. MICHAEL JUNEAU:

18         Joe, let me stop you, just so

19    we're clear.  Those facilities -- you say --

20    whose facilities are they?

21    MR. RICE:

22         They -- there's a -- if you've

23    got -- let's say you've got a corporate

24    headquarters outside the state of -- outside

25    the Gulf Coast area.

Page 47

 1      MR. MICHAEL JUNEAU:

 2           Corporation?

 3      MR. RICE:

 4           A corporation.

 5      MR. MICHAEL JUNEAU:

 6           Corporation A or whatever, all

 7   right.

 8      MR. RICE:

 9           That has in each state, an LLC,

10   because the state requires them to have an

11   LLC in that state to do business.

12      MR. MICHAEL JUNEAU:

13           Separate legal entity in each

14   state?

15      MR. RICE:

16           Separate legal entity in each

17   state.  That entity, over the years, has

18   bought mom and pop businesses that were in

19   the same lending bracket, so you may have a

20   pawn shop that had a lending department, but

21   now they're part of this corporation.

22      MR. MICHAEL JUNEAU:

23           Which corporation?

24      MR. RICE:

25           They are part of the parent

Page 48

1    corporation.

2        MR. MICHAEL JUNEAU:

3            The big parent?

4        MR. RICE:

5            But because they're in, say,

6    Mississippi or Louisiana, they're either a

7    Mississippi LLC or Alabama LLC or Louisiana

8    LLC.  They all file one tax return at the

9    corporate level.  When they bought those

10   businesses, some of them already had Tax ID

11   numbers or business identification numbers,

12   which they kept.  Some of them, they opened

13   under their own business and Tax ID number.

14           So you've now got an LLC operating

15   in Louisiana that's got businesses all over

16   Louisiana.  Some have separate ID numbers,

17   some don't, all owned by a common -- owned,

18   maintained and operated by a common

19   subsidiary that's maintained, that's

20   operated by a parent.

21           Under the multi-facility, as it's

22   written, they have options.  They're

23   headquartered outside, so they can't file

24   consolidated, but they can file for

25   individual facilities.  Some will have a tax

Page 49

1    number, some won't.  Under your policy,

2    you're rewriting that whole provision.

3        MR. MICHAEL JUNEAU:

4            Wait.  Under this policy, each

5    facility can file a claim, correct?  The

6    question is, who would be filing the claim

7    for that facility?  And I think what this

8    policy says, it's the LLC that owns or

9    operates that facility.  That's what this

10   policy says.

11       MR. RICE:

12           The LLC that operates the

13   Louisiana business has 171 facilities in

14   Louisiana, some which they'd want to file

15   for, some which they don't.

16       MR. MICHAEL JUNEAU:

17           They can file whichever ones they

18   want to and they don't have to file the ones

19   they don't want to, or they can file each

20   one.

21       MR. RICE:

22           All right.  Move it to

23   headquarters in Louisiana, okay.

24       MR. MICHAEL JUNEAU:

25           Wait, do what now?

Page 50

1      MR. RICE:

2           If you use the subsidiary that's

3      headquartered in Louisiana.

4      MR. MICHAEL JUNEAU:

5           The LLC?

6      MR. RICE:

7           The LLC, yeah.

8      MR. MICHAEL JUNEAU:

9           That's the one you said that owned

10     and operated the facility.

11     MR. RICE:

12          All right.  Now, it wants to file

13     a consolidated claim and 50 percent of the

14     facilities have their separate Tax ID number

15     and 50 percent don't.  They have a right to

16     file a consolidated claim.  They're

17     headquartered in the Gulf Coast and their

18     facilities are in the Gulf Coast.

19     MR. MICHAEL JUNEAU:

20          Same entity?

21     MR. RICE:

22          Same entity.

23     MR. MICHAEL JUNEAU:

24          Same entity owns all of them?

25     MR. RICE:

Page 51

1          Yes.

2      MR. MICHAEL JUNEAU:

3          You're talking about Policy 490,

4   right?

5      MR. RICE:

6          Well, 490, and then it overlaps

7   with 503, and then overlaps with the others

8   because it just rewrites what the agreement

9   says.

10         Now, what I'm suggesting is you

11  don't need these policies because you have

12  to look to the facts and circumstances to

13  see if they are a proper claimant that has

14  the right to file a claim, using all the

15  facts and circumstances, and not an

16  artificial one-point decision-maker, and

17  that's what I think your policy does when it

18  says, "If you've got an EIN, you have to

19  file a separate claim."  I think you're

20  rewriting the agreement.

21     MR. PATRICK JUNEAU:

22         You want to comment about that,

23  BP?

24     MS. BLOOM:

25         So I don't know anything about

Page 52

1    Joe's hypothetical, but I concur that you

2    have to look at all the facts and

3    circumstances, and that sometimes you're

4    going to need to look really hard to figure

5    out what's the right entity, if the entity

6    owns something and there's not a different

7    TIN number, or there are different TIN

8    numbers, right.  So I think that's what

9    we're saying is sometimes the TIN number

10   isn't the only answer to the question.

11       MR. PATRICK JUNEAU:

12           I'm with you now.

13       MS. BLOOM:

14           And I actually think that the

15   policy --

16       MR. PATRICK JUNEAU:

17           Stop.  Stop right there.

18       MS. BLOOM:

19           -- acknowledges that.  I actually

20   think it does.

21       MR. MICHAEL JUNEAU:

22           Yeah.  Let me just say this, for

23   the Claims Administrator.  That's our

24   intent, okay.

25       MS. BLOOM:

Page 53

1            Yeah.

2       MR. MICHAEL JUNEAU:

3            It's that the Taxpayer

4    Identification is not the end-all be-all.

5    It's a clear indicator, and when

6    administering the program, if you've got a

7    Taxpayer Identification Number, chances are,

8    it's a separate entity.

9       MS. BLOOM:

10           Right.

11      MR. MICHAEL JUNEAU:

12           I mean, that's a pretty good

13   indicator.

14      MS. BLOOM:

15           Yeah.

16      MR. MICHAEL JUNEAU:

17           But if the situation you

18   explained, Joe, I think, was the same legal

19   entity, the same LLC has multiple Taxpayer

20   Identification Numbers, but it's the same

21   legal entity, and those Taxpayer

22   Identification Numbers just relate to

23   different locations -- I mean, I'm not an

24   accountant, so I don't understand that --

25   but if that can be a situation, it's our

Page 54

1    intent that that is one legal entity and

2    that legal entity has the options, under the

3    Multi-Facility Policy, for them to file

4    whatever consolidated claim it has or to

5    file by facility.

6              It's the legal entity from our

7    perspective that's important, Taxpayer

8    Identification Numbers being a very

9    important piece of evidence about whether

10   it's a separate entity or not.  But, I mean,

11   you described one where the same legal

12   entity has multiple Taxpayer Identification

13   Numbers, and in that case, I think our

14   intent is to identify that as one legal

15   entity.

16   MR. RICE:

17             I don't think that's -- that's not

18   been the reading that many accountants that

19   have read this policy have advised us that

20   they believe you're defaulting to, so the

21   policy's confusing.  And if it's your intent

22   that it's just one factor, then we'd ask

23   that it be addressed, if you push the policy

24   out at all.  But, again, I'm not -- I don't

25   understand why we need the policy.  But, you

Page 55

1    know, that begs the second question that we

2    want to talk about.

3        MS. BLOOM:

4            But before you get to that second

5    question, I would just say, you know, Mike,

6    from BP's perspective, how you articulated

7    that with respect to the TIN number would be

8    exactly how we see it, that it's an

9    important indicator, and that you'd have to

10   look at all the facts and circumstances.

11   And so, you know, it sounds like --

12       MR. PATRICK JUNEAU:

13           That's how it's been since Day

14   One.

15       MS. BLOOM:

16           Yeah.

17       MR. PATRICK JUNEAU:

18           I mean, it never was --

19       MR. GASPARDO:

20           There are places in here where it

21   reads like it's a sole business customer.  I

22   think it's just a wording issue, especially

23   now that these views were exchanged.

24       MR. MICHAEL JUNEAU:

25           I'm sorry, can we do -- I don't --

Page 56

1    it may be that we don't need a policy, from

2    an objective standpoint, and it will save us

3    all time here.

4        MR. GASPARDO:

5            I mean, I think the policy is

6    important because what you're trying to do

7    is establish consistency in cross-claims and

8    consistency within the organizations.  You

9    have multiple people looking at claims.  So

10   I think a policy giving guidelines for how

11   you're going to think about this and the

12   fact that you're going to consider it is

13   useful and important.

14       MR. MICHAEL JUNEAU:

15           My suggestion, it would be, if we

16   walk out of here today, and we specifically,

17   on the issue, make clear that a TIN is not

18   the absolute decision-maker, but rather a

19   factor that's considered, on that one issue.

20           This Policy 490, on

21   multi-facilities, if both sides could simply

22   give us a red line version of what you

23   propose be changed to make that clear, but

24   please don't include in it all these other

25   issues.  If we could have one -- at least

Page 57

1    one version that makes real clear what

2    you're proposing with that issue, that would

3    help.

4        MS. BLOOM:

5            And I think, Mike, that carries

6    through to all the policies, right?  The 354

7    has that same concept, too, I think.

8        MR. PATRICK JUNEAU:

9            But I want to come back to this

10   issue because I'm -- and it will come up

11   again is the implement -- let's go back a

12   little bit in history.  The whole purpose

13   when we did these policies was just to try

14   to give some clarity, and that's about as up

15   front as you can be with what we're trying

16   to do here, going back to Policy 1 through

17   wherever we are now.  But if there are

18   things that just have to do with what our

19   job is and doesn't necessitate a policy, I'm

20   not one for creating policies and work and

21   input and all that.

22           Mr. Rice is saying, you don't

23   think -- and that's why I'm trying to get

24   you all's input on it -- is you don't think

25   a policy's even necessary to address that

Page 58

 1    issue.

 2         MR. RICE:

 3              Let's be clear, Mr. Juneau, what

 4    we're here for today.  We're here on --

 5    these are multi-facility businesses, is what

 6    we're dealing with mainly with these

 7    policies, and when you're dealing with

 8    multi-facility businesses, your practice, as

 9    I understand it, has been to look at the

10    totality of the circumstances of the claim

11    to determine the accurate claimant, and in

12    doing that, you've considered the Tax ID

13    number as one of the factors.  That is what

14    you have been doing.

15              If I'm accurate there, why are we

16    now putting out a policy that says we're

17    going to keep doing what we're already

18    doing?  Because that implies something's

19    changing.  And I don't want class members

20    coming forward next week, thinking they're

21    getting something different than the last

22    members that came forward last week.

23              So all you're doing is

24    implementing and telling us again and again

25    that this is what you have been doing and

Page 59

1    this is what you're going to continue to do.

2    I don't think a policy needs to be written

3    that says that, because it implies that

4    we're doing something different and doing

5    something we're not.

6              I mean, my understanding is -- and

7    I've dealt with their accountants on these

8    multi-facilities and they've dealt with our

9    accountants and, you know, I've filed many

10   multi-facility claims with 170, 200, you

11   know, different locations, and I understand

12   that you look at all of that.  So that's why

13   it doesn't make any sense to me that we're

14   now in this multi-facility discussion,

15   putting out policies that say, "I'm going to

16   do what the agreement says and I'll do what

17   I've been doing."

18       MR. PATRICK JUNEAU:

19             Okay.  I've got enough input.  I

20   understand where you all are on that.

21       MR. RICE:

22             I want to go to the second point

23   of this part.

24       MR. PATRICK JUNEAU:

25             Of this?

Page 60

1       MR. RICE:

2            Of the policy discussion that

3    we've had.  There does seem to be --

4       MR. MICHAEL JUNEAU:

5            We've only covered one point, so

6    while not to discourage you, Joe -- but we

7    can have point two now.

8       MR. RICE:

9            No, we've had multiple points, but

10   there's another specific one.

11      MR. MICHAEL JUNEAU:

12           All right.

13      MR. RICE:

14           You have, in policy, the

15   combination of 490 and 503, if you look at a

16   business that is owned by a corporation in

17   Louisiana, and that corporation happens to

18   have two subsidiaries, one that works in the

19   northern part of the state and one that

20   works in the southern part of the state, and

21   owns the same businesses, there's nothing in

22   this agreement that says that parent

23   corporation can't file a claim.  They are

24   clearly a class member.

25           But your policy takes that away

Page 61

1    from them.  If you say you have to file at

2    the subsidiary level, or at the LLC level,

3    when it's got common ownership, common

4    business, it's maintained and operated

5    together, we don't think that that's

6    consistent with the agreement at all.

7              So there's no legitimate purpose

8    for Policy 503 because we actually

9    specifically negotiated that out of the

10   agreement when we filed in January, with

11   you, a copy of the draft multi-facility that

12   was dated February 2012 that showed we

13   specifically wrote out the multi-facility

14   exhibit, the limitation that you're trying

15   to put in, and we, in exchange for that,

16   agreed that if a subsidiary or a parent,

17   either one, filed a claim and got paid, when

18   they signed their release, they were

19   releasing the whole corporate entity, and

20   that was put into the footnotes.

21             And the release was then

22   negotiated, and if they filed, they signed a

23   release, so the parent and the subsidiary

24   are going to release the claim either way,

25   but you're limiting the optionality of

Page 62

1    Exhibit 5 by saying the parent can't file

2    the claim, and that's nowhere in there.

3        MR. MICHAEL JUNEAU:

4            You say the parent can't file a

5    claim?

6        MR. RICE:

7            I say the parent can.  You've got

8    an option to file.

9        MR. MICHAEL JUNEAU:

10           Yeah, but I think what the policy

11   was intending to say is, in terms of who has

12   the options for that facility, it's the

13   owner or operator or lessee of that

14   facility, and it doesn't prevent the parent

15   from filing a claim for whatever facilities

16   they have, and you said the headquarters was

17   in New Orleans, if they filed for that.

18   Nothing prevents them --

19       MR. RICE:

20           They can file for the whole state.

21   They maintain and operate and own the whole

22   thing.

23       MR. MICHAEL JUNEAU:

24           Through the subsidiary -- through

25   the separate corporation.  I've got it.

Page 63

1      MR. RICE:

2            It's just a corporate structure.

3      MR. MICHAEL JUNEAU:

4            Right.

5      MR. RICE:

6            But that structure doesn't change

7   the fact that that business is located in

8   the class area, geographical area.  It's a

9   member of the class.  It has claims.  It

10  owns, maintains, operates businesses, and

11  they can consolidate them and file them, or

12  they can file them separately.

13     MR. MICHAEL JUNEAU:

14           That's the question.  When you say

15  they own, operate, whatever other terms you

16  used, owned, operated the business, if they

17  own or operate that facility, whatever

18  facility it is, it doesn't matter where it

19  is, our view, they have a right to file a

20  claim for that.

21           But if that entity does not own or

22  operate it -- that's the way this policy is

23  written -- that would not be the correct

24  entity to file that claim.  It's whatever

25  entity owns or operates.

Page 64

1          What I'm hearing you say, though,

2   is the parent above effectively is owning

3   and operating these things through its

4   subsidiary corporation.

5      MR. RICE:

6          Or it can file as a class member.

7   The LLC is also a class member and it can

8   file the claim, but if it gets paid, it's

9   got to release the parent's claim anyway.

10  That was what we negotiated.

11          But you're taking away -- you're

12  mandating who has to file the claim, and

13  that's not what it says, and so I don't

14  believe it's appropriate -- some of these

15  businesses have, you know, integrated

16  financials, so it's much easier to file at

17  the corporate level.

18          But the way you're talking about

19  doing it, we're going to have to create

20  massive new financial records, if they don't

21  have multiple P & L's at the facility level.

22  They can be created, I guess, working back

23  down.  But that's one of the reasons we gave

24  the option to the corporate structure to

25  file wherever it made the most sense to

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 65

1    file.  But the trade-off was they had to

2    release the whole claim.

3        MS. BLOOM:

4            So we disagree with that

5    contention with respect to how the

6    Settlement Agreement is drafted, and I think

7    you've got it right in your policy that what

8    the Settlement Agreement calls for is

9    looking at each entity, and does that entity

10   itself perform the services, does that

11   entity itself have the facility.

12           And so, from our perspective, the

13   way that Mike is articulating this, and is

14   set forth in the policy, is the way the

15   Settlement Agreement reads, and it's meant

16   to read, and there is not an intent to give

17   that kind of optionality.  You are an entity

18   and you look at what that entity does.

19       MR. PATRICK JUNEAU:

20           Well, if we can address what he's

21   talking about as the trade-off and the terms

22   of this release, so I'm just trying to get a

23   handle on that.

24       MS. BLOOM:

25           Yeah, I don't have any agreement

Page 66

 1    that we had a trade-off like that.  I mean,

 2    so he's talking about some negotiating

 3    history that I don't -- I don't recall, nor

 4    do I think that that's reflected in the

 5    Settlement Agreement itself, and so I think

 6    what you --

 7        MR. RICE:

 8            I think that you were involved in

 9    it, but --

10        MS. BLOOM:

11            I think that what you need to look

12    at is the agreement itself, and if there is

13    ambiguity in an agreement, that then you can

14    go back and look at negotiating history

15    evidence.

16            But the agreement itself is pretty

17    clear and it was a fundamental principle

18    actually, for BP, as we were negotiating,

19    that you have to look at the entity level,

20    and so you don't go allowing the parent to

21    file a claim for a subsidiary, no.  You're

22    looking at that entity and is that entity a

23    class member and has that entity itself

24    experienced a loss.

25        MR. RICE:

Page 67

 1            But can the parent file separately

 2    for its own damages?  Why can't you have two

 3    claims, that of the parent claim and the

 4    subsidiary?

 5        MS. BLOOM:

 6            I think -- I think that policy

 7    does that.  I mean, I think you can, but

 8    then you have to look at that entity's

 9    particular operations.  As Mike is saying,

10    does that entity itself --

11        MR. RICE:

12            So, well, you're never given the

13    joint release, if that was the way that it

14    worked.

15        MR. HERMAN:

16            No, no.  They're saying you can

17    make claims for both, so you get the money

18    twice.

19        MS. BLOOM:

20            No.

21        MR. MICHAEL JUNEAU:

22            The Claims Administrator's Office

23    agrees with what Steve says and if they --

24    that parent has its own claim.  If they're

25    in the class, it has its own claim.

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 68

1      MR. RICE:

2            One form, that's one claim.

3      MR. HERMAN:

4            But -- yeah, but the way you're

5      doing for BP, on the back side, is then

6      you're saying that if they're recovering

7      from the same revenue stream, then it's a

8      double payment and you're excluding them.

9      Well, if you're going to compensate each

10     entity under Exhibit 4C --

11     MS. BLOOM:

12           Steve.

13     MR. MICHAEL JUNEAU:

14           You are, but for the facilities it

15     owns and operates.

16     MR. HERMAN:

17           Well, you don't have to do that,

18     though.  I mean, if I'm the parent -- let's

19     say I'm the parent.  I don't own any

20     facilities, according to your logic, right?

21     I only own subsidiaries.

22     MR. MICHAEL JUNEAU:

23           Well, no, they have a location.

24     They have a headquarters somewhere.

25     MR. HERMAN:

Page 69

1              No, but let's say I'm a corporate

2     entity in -- I'm a corporate entity in Baton

3     Rouge and I own ten subsidiaries and those

4     subsidiaries own facilities all over the

5     Gulf Coast, okay.  So the parent has

6     whatever revenue it has and has whatever

7     cost it has, doesn't have any facilities,

8     it's not a multi-facility claim, right?

9          MR. MICHAEL JUNEAU:

10             It has a Baton Rouge facility.

11         MR. HERMAN:

12             Right?

13         MR. MICHAEL JUNEAU:

14             It's got a facility in Baton

15    Rouge.

16         MR. HERMAN:

17             Okay.  Well, fine, its

18    headquarters are in Baton Rouge.  It's not

19    under the multi-facility framework.  It's

20    just a company.  It's a BEL claimant that

21    files its BEL claim and it gets compensated

22    under Exhibit 4C for its losses in revenue,

23    and coming back up under Exhibit 4C, as

24    amended, by 495.  And if each of those

25    subsidiaries wants to file multi-facility

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 70

1    claims on their facilities, then what you

2    would be left with is essentially a double

3    recovery, which is clearly not what was

4    intended.

5           And so, therefore, they're getting

6    basically their cake and they're eating it,

7    too.  They're getting the release of both,

8    they're getting a protection against double

9    payment, and they're taking away the

10   optionality of the claimant to be able to

11   file a claim in a way that, A, is sufficient

12   and, B, maximizes the value of their claim.

13   MR. RICE:

14          On January 13th, you issued Policy

15   490 originally, in late 2013, I believe.  On

16   January 13th, we filed a response to the

17   original 490.  Attached to that response was

18   a document with a Bates Stamp 024444, and

19   through 45.  The reason that was attached,

20   it was a compensation option for

21   multi-facility businesses, wherein BP,

22   February the 7th, 2012 -- it has a sentence

23   in there that says, "The claimant may not,

24   however, elect to file a claim for any

25   combination of facilities comprising the sum

Page 71

1    total of the claimant's facilities."

2            It had a footnote.  It said, "BP's

3    position is that the release must cover any

4    business operation or entities of the class

5    member inside and outside the geographic

6    scope of the settlement."

7            And the PSC position is that the

8    release should only cover the business

9    operation or entity that's being

10   compensated, which is what Steve's saying

11   now.

12           If you compare that to the

13   following Exhibit 5, title of the same

14   thing, we expressly wrote that limitation

15   out and we gave them what they wanted on the

16   release and you're taking that away from us

17   now, although we specifically negotiated for

18   it and specifically traded for it.

19           These documents are clear that

20   that's what happened and there's no support

21   in the Settlement Agreement for you to

22   change the definition of a class member or

23   limit a class member's rights, under the

24   settlement.  And a class member, a

25   corporation is an entity that's located in

Page 72

1    the Gulf Coast area, just another definition

2    of class membership, that has a right to

3    file a multi-facility business claim.  And

4    503 tries to take that right away and we

5    don't think that's appropriate.

6        MR. PATRICK JUNEAU:

7             One last comment and I think I

8    understand where we're going.

9        MS. BLOOM:

10            Well, now he's talking about

11   multi-facility claims, and the entity that

12   has the right to file the multi-facility

13   claim is that entity that owns those

14   facilities.

15            I mean, I think that's very clear

16   from the definition of what an entity is,

17   the description of what the entity has to be

18   able to do to file, to be qualified for a

19   claim, under Section 1.2, and the way that

20   the BEL framework is set forth, so we

21   strongly disagree with that.  We think that

22   the policy that you've issued is the right

23   policy with respect to that.

24       MR. PATRICK JUNEAU:

25            All right.  I understand what

Page 73

```
 1   you're saying.  I have No. 4 as

 2   multi-facility.  I don't know if we didn't

 3   just discuss that already.  I mean, all of

 4   this discussion has been so interchanged.

 5       MR. RICE:

 6           Because these policies have

 7   interchanged.

 8       MR. PATRICK JUNEAU:

 9           All these policies -- well, that's

10   what I'm saying.  I'm not trying to cut

11   anybody off.  I'm just saying, I understand

12   what you all -- we've got a record that can

13   speak for itself.

14       MS. BLOOM:

15           Yeah.

16       MR. PATRICK JUNEAU:

17           I want to have given full due

18   process to everybody.  Is there anything you

19   want to add to the No. 4, that is, the 490,

20   other than what we've said?  I mean,

21   90 percent of the discussion has been about

22   490 anyway.

23       MR. RICE:

24           Well, on 354 point --

25       MR. PATRICK JUNEAU:
```

Page 74

1          On what, excuse me?

2      MR. RICE:

3          On 354, Version 4, we had sent a

4  request to you to explain a hypothetical

5  that we had given you.  That was a business

6  that was on the ocean front in an oiled

7  beach area.  It was a restaurant that closed

8  down in the summer of 2010, closed down in

9  June of 2010, and because nobody was coming

10  to the beach, they remodeled the restaurant

11  and they opened up July 1st for a big Fourth

12  of July shindig, so it was more than 365

13  days that they were shut down.  And we are

14  asking -- we asked the question, is that,

15  under 354 v.4, your 365 days, and you now

16  excluded that claim from the class.

17      MR. MICHAEL JUNEAU:

18          The answer to that is no.  I mean,

19  we've discussed that in our BEL team, that

20  the business was in operation at the time of

21  the spill.  You're saying they did

22  remodeling after the spill, you know, a

23  couple months after the spill.  There's

24  nothing in 354 that says that that's

25  eliminated from the class or that they don't

Page 75

1    have a right to file a claim and recover on

2    it.

3              Paragraph C talked about a

4    business that's been in operation prior to

5    the spill, more than 365 days.  We've used

6    the day that they restarted their business

7    as the startup date, you know, so the answer

8    to your question, Joe, is that this policy

9    does not eliminate that claimant from --

10        MR. RICE:

11             Well, how do you treat that

12   claimant, as a startup business?

13        MR. MICHAEL JUNEAU:

14             Well, I mean, that -- we'll have

15   to deal with that.  I mean, this policy

16   doesn't address that, Joe.

17        MR. RICE:

18             Well, in Section 2-B5 --

19        MR. MICHAEL JUNEAU:

20             Do you want us to?  Do you want us

21   to exclude them?

22        MR. RICE:

23             No.

24        MR. MICHAEL JUNEAU:

25             Okay.

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 76

1        MR. RICE:

2            But your policy dictates that, for

3    businesses that suspend operation for a

4    period of longer than 365 days, the date

5    upon which operations will resume becomes

6    the business commencement date, and if

7    you're going to treat that as --

8        MR. MICHAEL JUNEAU:

9            What part are you reading?

10       MR. RICE:

11           Section 2-B5-C.

12       MR. MICHAEL JUNEAU:

13           I don't see that.  What page of

14   this policy are you on?

15       MR. HERMAN:

16           This is June 11th and we submitted

17   that one before.

18       MR. MICHAEL JUNEAU:

19           I think the language you're

20   referring to is Roman Numeral II-C, the

21   effect of business dormancy on claims

22   review.  That's what I understood.

23       MR. RICE:

24           That's the statement prior to.

25       MR. MICHAEL JUNEAU:

Page 77

1            I think, frankly, that was one of

2    the comments one party had offered in this

3    process, and we, as a program, thought that

4    was a legitimate comment and we put in

5    language to that effect that said suspending

6    operations prior to --

7        MR. RICE:

8            That was 2-B5.

9        MR. MICHAEL JUNEAU:

10           Actually, Joe, I'm reading the

11   history behind this.  In fact, there was

12   language that says "Operations suspended

13   prior to the date of the spill."  That was

14   inserted into the second or third version of

15   this policy and that was inserted in

16   response to comments made by class counsel.

17   We thought that was a legitimate point and

18   we included that language.

19           So this final version does

20   include, I think, the very issue you raise,

21   and it addressed the point that the class

22   counsel had raised, which we thought was a

23   legitimate one.

24       MR. RICE:

25           All right.  I'll go back to my

Page 78

1   comments on the prior version that it

2   referred to, that version.  But the point,

3   as I understand what you're saying now, if

4   the business was in operation at the time of

5   the spill, and with the class period, the

6   April 20th date, and subsequently suspended

7   for a period of time, but continued its

8   operation at a later date, you look at the

9   total facts and circumstances.  You don't

10  have an official rule that sets that out?

11      MR. MICHAEL JUNEAU:

12          Correct.  Right.  We were up to --

13      MR. PATRICK JUNEAU:

14          Let me move to -- in relation to

15  490 and 503, we kind of discussed it

16  already, and I'm not cutting you all off,

17  but I want to move to 363.

18      MS. BLOOM:

19          Is that the owner or officer?

20      MR. MICHAEL JUNEAU:

21          That's -- yeah, the double

22  recovery, owner or officer.

23      MS. BLOOM:

24          Can we just -- there is one more

25  issue that we have that relates to the

Page 79

1    multi-facility.

2         MR. PATRICK JUNEAU:

3              All right.

4         MS. BLOOM:

5              Since we were on multi-facility

6    already.

7         MR. PATRICK JUNEAU:

8              No, go ahead.

9         MS. BLOOM:

10             And I think it also relates to 354

11   Version 4, and that is this issue of what

12   happens when there's changes in facilities

13   or changes in operations.  And so Policy

14   490, at Section 2-D3, talks about what

15   facilities can be included in consolidated

16   multi-facility businesses, and there is a

17   reference in there to the fact that a

18   multi-facility business can elect to file a

19   consolidated claim, based on consolidated

20   financials, irrespective of whether the

21   business obtained or disposed of one or more

22   facilities either before or after the spill,

23   and I think that is a true statement that

24   any entity can file a multi-facility claim,

25   if it's got multi facilities, and certain

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 80

1    entities can file consolidated claims.

2              There is a follow-up sentence,

3    though, that says, "In evaluating the

4    consolidated claim, the accountants will

5    consider all facilities during the time

6    period being evaluated," and we're not quite

7    sure, you know, what exactly that means,

8    but -- you know, we would point out that

9    Exhibit 5 definitely contemplates that the

10   facility, you know, existed -- the

11   facilities that are going to be in the

12   consolidated claim existed in 2010, and that

13   what you're doing is filing a claim for

14   those facilities, not facilities that no

15   longer exist, right?  Because why would BP

16   have agreed to that, to compensate for

17   claims --

18        MR. PATRICK JUNEAU:

19              Wait a minute.  What kind of --

20   excuse me.  You said, why would what?

21        MS. BLOOM:

22              Why would BP have agreed to

23   compensate for facilities that no longer

24   exist?  And so I just wanted to point out,

25   in Exhibit 5, for example, there is language

Page 81

1    that says, "For the multi-facility

2    businesses that are headquartered in the

3    Gulf" --

4         MR. MICHAEL JUNEAU:

5              Where are you referring to?

6         MS. BLOOM:

7              I am, for example, looking at the

8    third paragraph and fourth paragraph.  So

9    the scenarios where there's a multi-facility

10   business headquartered in the Gulf, one or

11   more facilities located outside the Gulf.

12   Those two scenarios both say, for those

13   kinds of entities, they can file a claim for

14   individual facilities or they can file a

15   consolidated claim on behalf of all the

16   facilities located in the Gulf Coast area.

17   So they can't file a claim for anything but

18   those facilities that are located in the

19   Gulf Coast area --

20        MR. MICHAEL JUNEAU:

21             Right.

22        MS. BLOOM:

23             -- that are at that time period.

24        MR. MICHAEL JUNEAU:

25             What time period does it refer to?

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 82

1        MS. BLOOM:

2              They're located in the Gulf Coast

3    areas, right.

4        MR. MICHAEL JUNEAU:

5              Does it give a time?

6        MS. BLOOM:

7              So it's at the time of filing your

8    claim.  It's in 2010, "Are you located in

9    the Gulf Coast areas?"  And so what's

10   contemplated then is that if you're only

11   filing a claim for those facilities, when

12   you go back and look, you're doing your

13   financials just for those facilities, right.

14   You're not doing the financials and you're

15   not looking in the BEL framework, when you

16   compute it, for revenues and expenses that

17   are related to other facilities.

18              So there is that express

19   contemplation in the multi-facility business

20   that you are already looking at particular

21   facilities.  And that carries through into

22   the business economic loss framework with an

23   overarching principle that you're looking at

24   what the claimant expected to earn in 2010.

25   And as a result of that, what is

Page 83

1    contemplated is that you're looking at what

2    existed in 2010 as the facilities and -- or

3    as the operations.

4              And so we believe that there are

5    aspects of these policies that may not be

6    taking that into account, as you then

7    compute what somebody's loss can be, and it

8    could result in awards that really aren't

9    compensating people for what they expected

10   to earn, and so that is just something that

11   we express as a concern.

12       MR. HERMAN:

13              Well, I think that that's

14   basically the crux of the questions, A

15   through D, that we asked about the

16   declaration that you guys can't answer.

17              There's no subjective overarching

18   attempt for the program to figure out what

19   somebody would have expected to earn.  With

20   that, we'll just submit declarations and

21   people can say what they expected to earn

22   and you can pay them that.  It's objective

23   criteria based on a formula that we agreed

24   to --

25       MS. BLOOM:

Page 84

 1          Yeah.

 2      MR. HERMAN:

 3          -- in attempts to quantify what

 4  people expected to earn.  In some cases, it

 5  may be more precise than in others.

 6          But, again, you want a one-way

 7  system, where if a facility goes off line,

 8  you don't want to compensate them for that,

 9  even though it's a consolidated claim, which

10  you contend, again, should be done at the

11  entity level, right?

12          But what about for new facilities

13  or new plans or new product lines?  You're

14  not going to give them additional

15  compensation for that.  Are you adding

16  revenue to their benchmark period to make up

17  for that?  Because if they've added new

18  facilities and they added new product lines,

19  they would have expected to earn more money.

20  You have no way to --

21      MS. BLOOM:

22          So, Steve, I believe that our

23  submission that's filed in PolicyKeeper

24  addresses all of your questions and I

25  believe that the parts of Exhibit 5 and

Page 85

1    Exhibit 4C that I referenced answer all of

2    your questions.

3        MR. HERMAN:

4            And, well, we completely disagree.

5        MS. BLOOM:

6            So I completely dispute your

7    suggestion that we don't have answers for

8    your particular questions.

9            So Exhibit 4C has as its

10   overarching frame, the very first sentence,

11   that what we are trying to accomplish is to

12   look at what the claimant could have

13   expected to earn in 2010.  If they didn't

14   have a facility or they no longer had

15   operations in 2010, they can't have expected

16   to earn anything for them.

17           And so then when you go to

18   compute, by looking at the benchmark period,

19   what do they expect to earn, you take the

20   revenues and the expenses of those

21   facilities and of those operations that are

22   in existence in 2010.  Otherwise, you are

23   completely reading out of the Exhibit 4C,

24   the overarching frame of what is said in the

25   very first sentence, that you're looking at

Page 86

1    what the claimant should have expected to

2    earn.

3              And then, regardless of whether

4    you quote from Judge Southwick or Judge

5    Clement, in the Fifth Circuit opinion, both

6    of them talk about interpreting the

7    Settlement Agreement to accomplish a

8    realistic assessment of what damages are.

9    One uses the phrase "economic reality."  One

10   uses "realistic economic loss."

11             But the method that the claimants

12   are suggesting, where you would allow a

13   benchmark period to include, for those

14   particular months, the operations or the

15   facility's revenue and expenses, when it no

16   longer exists in 2010, would mean that

17   you're no longer compensating somebody for

18   what they could have expected to earn.

19             And so we believe that you are

20   reading out that first sentence of the

21   contract and then we believe that if you

22   look at Exhibit 5, it evidences the same

23   intent, because what it is saying is that

24   you cannot file a consolidated claim for

25   facilities that no longer exist, and when

Page 87

```
1    you file your consolidated claim for those

2    facilities that are in the Gulf Coast areas,

3    if you're headquartered some place else,

4    when you go back to the benchmark period,

5    you're only looking at the revenues and

6    expense of those facilities.  It doesn't

7    say -- it's very express that you're looking

8    at those facilities, so it's the same kind

9    of analysis as what's reflected in Exhibit

10   4C.

11            So I think this is quite

12   fundamental to the framework and would be an

13   example of an interpretation that would

14   allow for claimants to be compensated for

15   something that is not comporting with really

16   what the damages are.

17            And also, to the extent that a

18   claimant has these issues, I think should

19   call into question the attestation as

20   potentially being a suspicious claim.  If

21   the reason somebody is qualifying under 4C,

22   for compensation, is because they no longer

23   have a facility and, you know, you're

24   including the revenue of that facility in

25   the benchmark period, then I think that
```

Page 88

```
 1   calls into question the attestation, as

 2   well.

 3        MR. MICHAEL JUNEAU:

 4             Wendy, let me -- I'm still kind of

 5   confused on the language.  I can't focus on

 6   which one you're actually referring to.

 7   When you say Exhibit 5, --

 8        MS. BLOOM:

 9             Sure.

10        MR. MICHAEL JUNEAU:

11             -- it says you cannot file a

12   consolidated claim for locations that no

13   longer exist, tell me what language

14   specifically you're referring to.

15        MS. BLOOM:

16             So what I'm saying about Exhibit 5

17   is that it's doing -- it is further

18   implementing what's happening in 4C, because

19   if you look at the scenario in two, where

20   you have --

21        MR. MICHAEL JUNEAU:

22             Wait, two what?

23        MS. BLOOM:

24             I'm calling it two because I sort

25   of say there's 1-A and 1-B and 2-A and 2-B
```

Page 89

1    and 3-A and 3-B.  But the scenario 2's are

2    these multi-facility businesses with

3    headquarters in the Gulf Coast areas.

4         MR. MICHAEL JUNEAU:

5              Hold on.  Wait.  I'm looking at

6    Exhibit 5.

7         MS. BLOOM:

8              Yep.

9         MR. MICHAEL JUNEAU:

10             Is that what you're looking at?

11        MS. BLOOM:

12             It's Exhibit 5, the last

13   paragraph.

14        MR. MICHAEL JUNEAU:

15             The last paragraph on Page 1 of

16   Exhibit 5?

17        MS. BLOOM:

18             Right.

19        MR. MICHAEL JUNEAU:

20             It says a multi-facility business

21   with headquarters located within the Gulf

22   that has one or more --

23        MS. BLOOM:

24             Right.

25        MR. MICHAEL JUNEAU:

Page 90

1          Okay.  That paragraph, okay.

2     MS. BLOOM:

3          Yes.

4     MR. MICHAEL JUNEAU:

5          And where in there?

6     MS. BLOOM:

7          Okay.  So it says, "Maintain

8     contemporaneous profit and loss statements

9     for each facility," so it has to have had

10    these P & L's for each facility during the

11    benchmark period and 2010.  For both

12    periods, it has to have them.

13          And then it says that it can elect

14    to file its claims in two ways, a claim for

15    each individual facility or a consolidated

16    claim on behalf of all facilities located in

17    the Gulf Coast area.

18          So what that is then calling for

19    you to do, when you go back to Exhibit 4C

20    and compute it in the consolidated claim

21    scenario, is you can only have a claim for

22    those facilities that are located in the

23    Gulf Coast areas.  You have to parse out

24    from the P & L the revenue and expenses that

25    have to do with that.

Page 91

1            And likewise, in Exhibit 4C,

2    what's being contemplated is that you have

3    to parse out the revenues and expenses that

4    relate to the entities, operations and

5    facilities that exist in the compensation

6    period.

7        MR. MICHAEL JUNEAU:

8            And what would the plaintiffs say

9    to that?

10       MR. RICE:

11           No. 1, the time reference is

12   controlled by the Settlement Agreement

13   itself.  It just talks about April 20, 2010,

14   to April 12, 2012.  It is not a 2010

15   limitation, and that's in the definition of

16   the class, and the entity is operated at any

17   time in that time frame.

18           The second thing is we just heard

19   a repeat of the arguments that were made to

20   the Fifth Circuit, that the Fifth Circuit

21   decided the answer on, when they said the

22   benchmark, the compensation periods were

23   referring to months with the same name

24   without any complex analysis of what type of

25   business activities took place within those

Page 92

1    months.

2              That's been decided by the Fifth

3    Circuit.  BP's argued it up one side and

4    down the other.  They've attempted to

5    rewrite the agreement in front of the Court.

6    They're attempting to rewrite the agreement

7    in front of you now.  The document is clear

8    and the Fifth Circuit's made it clear what

9    you use, and this is all just a rehash of

10   the argument.

11             I submit that this is not a policy

12   that needs to be entered, because it, again,

13   appears to us that you have been doing

14   correctly and you're going to continue to do

15   the same thing, and therefore, there's no

16   reason to say, now we're going to write a

17   policy that says something different, when

18   you're doing the same thing you've been

19   doing, and you've been doing it right.

20             So I submit that all you're doing

21   by writing a new seven-page policy is

22   creating a controversy that doesn't exist.

23        MR. MICHAEL JUNEAU:

24             Maybe there's equal ground on that

25   one.

Page 93

1        MR. HERMAN:

2              But the more -- that may be, but

3     the more direct response is that that's the

4     whole distinction between a consolidated

5     claim and a facility-by-facility claim.

6        MS. BLOOM:

7              That's right.

8        MR. HERMAN:

9              If you are going to do it facility

10    by facility, there would be no point in

11    giving you the option of having a

12    consolidated claim.

13       MR. MICHAEL JUNEAU:

14             Wendy, on this issue, this policy,

15    he's saying we don't need this one either.

16       MS. BLOOM:

17             Yeah.

18       MR. MICHAEL JUNEAU:

19             Was it BP's feeling that we ought

20    to ignore this one or --

21       MS. BLOOM:

22             So, I mean, as we said at the

23    outset, if you want to pull down, you know,

24    policy agreement before Version 4 and Policy

25    490 and just not have a policy, we're fine

Page 94

1   with that, you know.

2           If that's what -- if that's what

3   class counsel are proposing, we're certainly

4   fine with that.

5           With respect to Joe's comment, I

6   would say that -- and Steve's -- he's not

7   reading Exhibit 5 correctly because a

8   consolidated claim does not mean that you

9   can file all of your facilities together.

10  That's not really true.  As Exhibit 5

11  acknowledges, you can only file for

12  facilities, even in a consolidated claim,

13  that are existing in the Gulf Coast areas.

14      MR. HERMAN:

15          Right, agreed.

16      MS. BLOOM:

17          And so that means --

18      MR. HERMAN:

19          All of them together when

20  provided --

21      MS. BLOOM:

22          And so that means -- that means

23  that when you go back and you compute, under

24  Exhibit 4, what they have, you're already in

25  that consolidated claim, parsing through the

Page 95

1    P & L's, and that same kind of parsing was

2    what was contemplated in Exhibit 4C.

3            So if you read Exhibit 5, it

4    actually shows that what you're doing is

5    intending to parse through P & L's in

6    consolidated claims, and that's what Exhibit

7    4C was intending to do, as well, and the

8    Fifth Circuit did not address this issue at

9    all.  They addressed whether you could look

10   at different benchmark -- whether your

11   benchmark period could be different months

12   than your compensation period.  We are not

13   saying that with respect to how you compute

14   this.

15           We are saying that you would, for

16   any facility or any business entity that's

17   filing their claim, look in 2010 at the

18   months that are selected, you go back into

19   the benchmark period, you look at those

20   months, but you have to look at the revenues

21   and expenses that relate to the facilities

22   that they're seeking the claim for, if it's

23   a consolidated claim, or the facilities, if

24   it's just a regular BEL claim, that existed

25   in 2010.  That's what we're saying now, that

Page 96

1   it's not something that was addressed by the

2   Fifth Circuit.

3       MR. MICHAEL JUNEAU:

4           Just for both sides' benefit,

5   just, we'd like to kind of give you the

6   insight into our -- the Claims

7   Administrator's Office's view on these

8   issues that both sides have just now raised,

9   because it's a longstanding issue.  It goes

10  back more than a year now with all kind of

11  submissions, and both the District Court and

12  Fifth Circuit have ruled on these, and as

13  we've discussed, each one of these policies

14  implicates some kind of fundamental issues

15  that you all clearly disagree about, and I

16  just want to give you the benefit of our

17  thinking, our rationale, and what underlies

18  these policies that we gave you.

19          We really think -- there are two

20  primary legal issues that the Fifth Circuit,

21  we feel like, has addressed, and that impact

22  a lot of what we're talking about today.

23          One was the alternative cause

24  issue that the District Court had ruled on,

25  and the Fifth Circuit, it was Judge

Page 97

1    Southwick's opinion that had talked about

2    it, that's Exhibit 4B, and basically

3    essentially saying, once you've got the

4    correct P & L's, we've got those corrected

5    so they adequately match to represent an

6    accrual-based type accounting.  Once you

7    have those, you apply the causation test at

8    4B, and that's your objective criteria that

9    you're to apply, and the Claims

10   Administrator is not to undertake subjective

11   analysis or be the gatekeeper on those

12   issues.  He applies an objective test.

13   That's one issue.

14          The second issue being what we'd

15   call the comparable periods issue, which I

16   think was referenced in Judge Clement's

17   original opinion on the matching question,

18   Exhibit 4C, and there was one section in

19   that opinion where she said, when the

20   agreement talks about the comparable

21   periods, it means the same months.  It does

22   not mean getting into a complex analysis as

23   to the operations of that month and

24   comparing it to some operation in the month

25   preexisting the spill.

Page 98

1          Those were the two legal issues

2    that we understand.  We feel like both the

3    District Court, Judge Barbier, in separate

4    opinions he's issued, give a pretty clear

5    guidance on those.  We feel like the Fifth

6    Circuit has given its position on those

7    pretty clearly, and so we feel bound to

8    follow those and that's how -- that's how we

9    read them anyway, as to those two legal

10   issues.

11          And so as we approach these BEL

12   claims, here's how we understand the

13   agreement and how we understand the orders

14   of the court, both the District Court and

15   the Fifth Circuit, and that is, we receive a

16   set of profit and loss statements from a

17   claimant and we have been charged with the

18   responsibility to make sure that those

19   profit and loss statements are adequately,

20   quote, "matched," that we put the income and

21   the expenses in the right months, that those

22   profit and loss statements are not merely on

23   a cash-in-and-out basis, but that they

24   adequately represent what would be

25   considered an accrual type accounting, in

Page 99

1    general, but as the Court talked about, in

2    terms of matching revenues to expenses in

3    the correct months.  It's putting those in

4    the correct months.  And we've accomplished

5    that by Policy 495.  That's what the Court

6    has ordered, the District Court has ordered.

7    That's our first step.

8            So we take these profit and loss

9    statements, we apply Policy 495, under the

10   dictates of the District Court and the Fifth

11   Circuit, and we put the income and expenses

12   in the proper months.  That's our first

13   step.

14           Now, once we've got that, we

15   understand our job is then to apply the

16   objective formula.  There's a causation

17   formula in 4B and then there is a

18   compensation formula in 4C.  It's an

19   objective test and we are simply applying

20   that, and that yields a result.

21           And when we talked about the

22   agreement is intended to compensate people

23   for losses that they would have expected to

24   earn, et cetera, that kind of language, we

25   understand all that is accomplished by the

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 100

1    application of these objective formulas and

2    that it does not -- it was never intended

3    and it's not the Court's orders to us to

4    make some subjective analysis on our part on

5    those issues, but rather the result about

6    what the compensation would be, where the

7    causation is satisfied, is the product of

8    this objective formula, and that's how we

9    view the orders of the Court and the rulings

10   of the Court.

11          We think that that's so -- because

12   we have over a hundred thousand BEL claims,

13   and if we were to go in, in each instance,

14   and do a subjective analysis and try to

15   figure out all the operations and the

16   details of each business and essentially

17   conduct a mini-trial on each claim, we just

18   don't see that that's how this settlement

19   agreement was structured.  Rather, it was

20   structured to apply an objective formula

21   that's reasonably administrable in a

22   class-wide context, and we think that's what

23   the Court's order is.

24          I do want to tell you, we find, as

25   a practical matter -- I know -- I think BP,

Page 101

1    in particular, has raised the issue about,

2    look, businesses change, you've got to take

3    operations and if they have had different

4    product lines, I think, was your example,

5    you've identified different facilities, or

6    if there are differences in business after

7    the spill versus prior to the spill, you

8    need to take all that stuff into account.

9    We don't understand that that's what the

10   Court's ordered us to do and we don't do

11   that.

12          As a practical matter, what we do

13   see, in these claims, is that businesses are

14   dynamic in nature and it's an almost

15   infinite variety of changes over a period of

16   two years, three years, in almost every

17   business in these hundred thousand plus

18   claims we get.

19          They have changes in product

20   lines, they might drop one line of clothing,

21   pick up another.  They might change the

22   product, the milk product they have, or they

23   might add a manufacturing aspect of what

24   they do.  They might start making different

25   equipment, in some respect.  There are

Page 102

1    differences in personnel.  In a 100-member

2    law firm, three partners leave, two come

3    back, four more leave.

4            I mean, there are constant changes

5    over time with all of these businesses.

6    There are differences in store hours.  There

7    are differences in -- customers change.  You

8    might lose a customer.  You might gain a

9    customer.  Some customers start requiring

10   new supplies or equipment.  You have

11   differences in suppliers, distributors.  You

12   have differences in locations.  You might

13   expand your location.  You might move down

14   the street.  You might close one and open

15   another.

16            And by the way, all these issues

17   work both ways.  Sometimes those changes

18   help a claimant's recovery, sometimes those

19   changes hurt a claimant's recovery.  A lot

20   of these changes, we have no way of knowing,

21   because if somebody submits a profit and

22   loss statement, it doesn't tell us who their

23   personnel were, whether their good salesman

24   left that year.

25            You know, we don't have any of

Page 103

1    that information, and in order to get that

2    information, it would, in essence, require a

3    trial.  I mean, we've got to call people in

4    and take depositions, ask them about all

5    their details of their business and -- to

6    understand how their business might change,

7    and then to try to equate that to what the

8    loss was and what loss is attributable to

9    the spill versus not, and the ramifications

10   of that are enormous.

11          So I'd just say that we see that,

12   on a practical level, that these businesses

13   are dynamic in nature, and as we understand

14   the Court's order, they are to match the

15   expenses to the revenue, get those in the

16   correct months.  That was clear from the

17   Fifth Circuit, it was clear from Judge

18   Barbier's orders.  We've done that, and

19   we've submitted Policy 495, it was signed,

20   to acknowledge that that's there and that's

21   a Judge order, Judge Barbier's orders.  We

22   do that.

23          Once we do that, though, we then

24   apply the objective formulas of 4B and 4C to

25   these claims and the answer is the answer.

Page 104

1    That's what we understand the Settlement

2    Agreement to provide, and so that's how

3    we've been applying it and that's kind of

4    the principle that underlies all this.

5              I understand the parties might not

6    agree on that.  I just want to make it clear

7    to you, the rationale, and how we understand

8    the orders that we've gotten from the Court

9    and how this Settlement Agreement works.  So

10   that's kind of the underlying end, which

11   does currently impact all of these claims

12   and I think the same issues we were just

13   talking about, but I just wanted to make

14   that clear.

15        MR. HOLSTEIN:

16              Mark Holstein for BP.  Only

17   because we're on the record that, one, I

18   appreciate that explanation.  It's very

19   helpful and very clear.  I also appreciate

20   the effort that all of you are putting in to

21   trying to get that right.  So I think, in

22   spite of our disagreements, at least from

23   BP's perspective, I did want to say that.

24   We do see the facility is making a

25   tremendous effort.

Page 105

1          Just for the purposes of the

2     record, I think I want to say two things.

3     One, we understand your position with regard

4     to 4B.  I think, from our perspective, it's

5     slightly misaligned with what the Fifth

6     Circuit has said, that's BP's perspective,

7     and we understand that you may or may not

8     agree with that, and the PSC clearly doesn't

9     agree with that, but I just wanted to make

10    it clear that we don't.

11          And then secondly, I think -- and

12    I think you said this, but just to be really

13    clear, I think there are aspects of what

14    we've been discussing today that haven't

15    been addressed by the courts, and so

16    obviously, you know, we're reserving our

17    rights with regard to things that haven't

18    been addressed by the Court.  But with that,

19    I appreciate your comments.

20      MR. PATRICK JUNEAU:

21          Let me just make one comment.

22    Mike and I talked before we got here today,

23    and the two of us and the entire claims

24    office, in the Administrator's Office,

25    because we wanted to give you all the

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 106

1   background on just how we're looking at the

2   universe, why we're looking at the universe,

3   how we're seeing it and what the concept is,

4   and so you'll know up front, everybody, both

5   parties, how we're looking at it.

6           I respect anybody's view that's

7   contrary to that, one way or the other, but

8   you've got to have a position.  That's what

9   our position is.  There's no -- I want to

10  make it clear to everybody here, so that the

11  record is abundantly clear.  That's our best

12  effort, after hours and hours of considering

13  this thing, is how, what our job is to do to

14  perform what the Court ordered.  There's no

15  agenda, there's nothing other than to be

16  consistent, as we see it.

17          The plaintiffs may have a

18  different view.  I'll respect that.  BP may

19  have a different view.  And if you don't

20  like it, we've got a mechanism within this

21  that we're able to address all of that

22  stuff.  And so like I said, if somebody has

23  a different interpretation or a different

24  view of that, go exercise whatever rights

25  you have under this agreement to do that.  I

Page 107

1    respect that.

2            With that being said and done, I

3    wanted just to get clear for everybody here

4    where we're coming from, and so you will

5    know all at one time, one place -- not "he

6    said," "I said," "she said" -- that's

7    essentially how we look at the universe.

8            With that being said, though, let

9    me move to 363 v.5, which has its own little

10   issues.

11           Steve, I'll go to the plaintiffs

12   on this one first, and I know essentially

13   what your argument is here and I have all

14   the briefs.  Is there anything you want to

15   add to that?

16       MR. HERMAN:

17           I don't think there's anything

18   more to add.  Joe, do you want to add

19   something?

20       MR. RICE:

21           Again, you're writing a policy to

22   try to cover certain facts and

23   circumstances, and there's been five or six

24   appeals that have been ruled in favor of the

25   claimant where the facts clearly show that

Page 108

```
 1   the officer of the corporation was not in
 2   charge, in control; they had separate W-2
 3   earnings, historically, and meets all the
 4   criteria, and that the panels have granted
 5   recovery, so you're making the assumption
 6   that because you have a title, of an
 7   officer, that you're governed by some set of
 8   rules that's not consistently applied in
 9   corporations.
10           So this policy -- again, I'm not
11   sure you need a policy.  The question is
12   whether or not the claimant can show that he
13   has a loss, under the agreement.  Sometimes
14   he can, sometimes he can't.  If he can, he
15   should be compensated.
16           The fact that his title included
17   "officer," the fact that he might have been
18   a one percent shareholder shouldn't dictate
19   what his claim is, if he meets the other
20   criteria of the agreement, and you're
21   writing a policy that is based on the
22   assumption that an officer is always
23   governed in one way, and the facts of all
24   the claims that we've looked at show that
25   that's not true.
```

Page 109

1          So you rely upon a previous policy

2     to direct this policy, that if you're an

3     officer, you're bound, and that's not the

4     factual support, and we've shown that

5     through appeals, several appeals.  Some have

6     been shown otherwise, because the claimant

7     could not show a separate W-2 loss.

8     MR. HERMAN:

9          And I would say, just a little bit

10    differently, but to amplify the same thing,

11    from a slightly different point, I mean,

12    we've always fundamentally disagreed with

13    the notion that BP should be protected from

14    a quote/unquote double payment, in this

15    regard, or in any other regard that's

16    inconsistent with the terms of the

17    Settlement Agreement.

18          But it seems that what's driving

19    this policy is a concern about double

20    payments, and so along the lines of what

21    Joe's saying is, in the situations where

22    it's clearly not a double payment, then the

23    policy shouldn't be in effect.

24          If the purpose is to prevent

25    double payments, then the ultimate goal

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 110

1    should be, let's look at the specific facts

2    and circumstances, see if that results in a

3    double payment.  If it does, we would

4    disagree, but deny the claim.  But if it

5    doesn't, even if it falls into these other

6    categories, the claim should go forward, if

7    the overriding purpose is the double payment

8    issue.

9         MR. PATRICK JUNEAU:

10             Go ahead, BP.

11        MS. BLOOM:

12             So we didn't call a panel meeting

13   ourselves on this.  We deferred.  We think

14   that this notion -- it is interesting for me

15   to hear Steve say now that he agrees there

16   shouldn't be double payments because --

17        MR. HERMAN:

18             I didn't say that.  I didn't say

19   that.

20        MS. BLOOM:

21             -- I think -- oh, you didn't say

22   that, okay.  So he doesn't agree with that

23   principle.

24             Well, what I would say is that I

25   think that principle has been clearly

Page 111

```
 1    endorsed by the appeal panelists who have

 2    looked at these claims a bunch of times,

 3    so -- you know, I have a bunch of claims

 4    here where Joe or others have appealed this

 5    kind of concept and the appeal panelists see

 6    it the same way as the Claims Administrator.

 7              For example, Claim No. 59156, the

 8    appeal panelists said, "Policy 363 derives

 9    from the language and intents of the

10    Settlement Agreement," and agreed there

11    shouldn't be double recovery.

12              Claim No. 80270, "Policy No. 363

13    is based on the logical interpretation of

14    Exhibit 4C of the Settlement Agreement to

15    prevent double recoveries by businesses and

16    the owners and officers of the same

17    businesses," and there are many other appeal

18    panel decisions which uphold that principle.

19              The only thing that we would say

20    is that there have been some changes to this

21    policy, such that you are taking a view that

22    if there is a BEL claim, for example, that's

23    determined -- that's denied, that you will

24    maybe consider the IEL claim of the owner or

25    the officer.
```

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 112

1          And we would say that Exhibit 8

2    specifically calls upon the Claims

3    Administrator, for example, to evaluate the

4    credibility and reliability of sworn

5    statements that are provided in support of

6    such claims, and we question how, if a

7    business doesn't qualify for a BEL claim,

8    they really would have harm due to the

9    spill.

10          We disagree that Exhibit 8A was

11    meant to ever address a situation of

12    allowing compensation for owners and

13    officers, but we would just request that if

14    you are embarking upon that, that you adhere

15    to the principles of Exhibit 8, which

16    require scrutiny to assure that actually if

17    there was a decline in compensation for an

18    owner and officer, that it was due to the

19    spill.

20          Because we all know that when

21    somebody's an owner of a closely held

22    company, really what they do is they take

23    control when they issue their compensation

24    to themselves, and so it could be that one

25    year they're going on a vacation, you know,

Page 113

1   in a particular month, and the prior year,

2   they didn't go on a vacation, or all kinds

3   of reasons like that, and so we would just

4   ask that, as you move forward, you take that

5   into account.

6        MR. RICE:

7             Mr. Juneau, we're mixing apples

8   and oranges.  We understand you have made a

9   decision that -- an interpretation that

10  double recovery should not be allowed.

11  We're not arguing that issue now.  The issue

12  that we're arguing now --

13       MR. PATRICK JUNEAU:

14            We did do that.

15       MR. RICE:

16            -- is that you are making the

17  assumption that merely because a person is

18  an officer, that there is double recovery,

19  and we're saying that assumption is not

20  appropriately made and you should let the

21  facts and circumstances control, and if the

22  claimant can show that they, whatever their

23  title was, if they had a W-2 loss, which is

24  what an individual claim is based on,

25  they're entitled to it.

Page 114

```
 1        MS. BLOOM:
 2            And it --
 3        MR. RICE:
 4            And the second assumption --
 5   excuse me, please.
 6        MS. BLOOM:
 7            Yep.
 8        MR. RICE:
 9            The second assumption you're
10   making is you're making an assumption about
11   how the GCCF operated, without any basis
12   whatsoever, because you're making the
13   assumption, in the beginning part of your
14   policy, that the GCCF treated payroll as a
15   variable expense, and there's no basis
16   whatsoever in the record for that anywhere.
17        MS. BLOOM:
18            And what we would say is it would
19   be highly suspicious, if you had a BEL
20   claim -- at that point in time, Exhibit 4C
21   requires that you parse out and you're
22   treating it as fixed expenses, the
23   owner/officer compensation, if all of a
24   sudden now somebody files an IEL claim and
25   they want to say, "Oh, wait a second, you
```

Page 115

1    know, it's actually different."  Well, why

2    weren't you doing what you were supposed to

3    do when you filed your BEL claim and

4    properly attribute your owner and officer

5    compensation?

6           So we just think this is an area

7    that's ripe for fraud and inaccuracies and

8    we ask that you very carefully scrutinize

9    these kinds of claims.

10   MR. RICE:

11          Do you think it's fraudulent for

12   somebody to make an IEL claim that the

13   contracting sign says that they can do, and

14   then you pay for it?

15   MS. BLOOM:

16          I think it is potentially

17   fraudulent if somebody submitted a BEL claim

18   and didn't make certain representations and

19   now when they want to submit an IEL claim,

20   they're making other representations, when

21   they were required, under 4C, to do certain

22   things.  I think so.

23   MR. RICE:

24          And the facts will be determined,

25   the facts, but you shouldn't make the

Page 116

1   assumption with the mere fact that they're

2   an officer.

3       MR. PATRICK JUNEAU:

4           From my perspective, we've covered

5   the various input of the parties, the

6   totality of 2 through 5.  If there's

7   something else you want to make, any

8   comments you all want to make, I want to get

9   you all to do that, but if not, I think we

10  have a sufficient basis.  We've just got to

11  go do our homework and come up with our

12  decision.

13          If not, we will adjourn sine die,

14  like they say in the legislature.  We'll

15  adjourn for the moment and this concludes

16  this panel here.  Thank you all very much.

17                  *       *       *

18

19

20

21

22

23

24

25

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 117

1                    REPORTER'S CERTIFICATE

2

3        This certification is valid only for a
transcript accompanied by my original
4   signature and original required seal on this
page.

5

6        I, LINDA G. GRIFFIN, RPR, Certified
Court Reporter, in and for the State of
7   Louisiana, as the officer before whom this
meeting was taken, do hereby certify that
8   this meeting was reported by me in the
stenotype reporting method, was prepared and
9   transcribed by me or under my personal
direction and supervision, and is a true and
10  correct transcript, to the best of my
ability and understanding; that the
11  transcript has been prepared in compliance
with transcript format guidelines, required
12  by statute or by the rules of the Board,
that I have acted in compliance with the
13  prohibition on contractual relationships, as
defined by Louisiana Code of Civil
14  Procedure, Article 1434, and in Rules and
Advisory Opinions of the Board; that I am
15  not related to counsel or to the parties
herein, nor am I otherwise interested in the
16  outcome of this matter.

17

18

19

20

21        _____

LINDA G. GRIFFIN, RPR
22        Certified Court Reporter

23

24

25

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 118

**A**

**A.M** 1:12
**ability** 117:10
**able** 43:23 46:16
70:10 72:18
106:21
**absolute** 31:19
56:18
**abundantly**
106:11
**accompanied**
117:3
**accomplish**
85:11 86:7
**accomplished**
29:23 99:4,25
**account** 9:21
83:6 101:8
113:5
**accountant** 31:4
31:5 53:24
**accountants**
25:19 54:18
59:7,9 80:4
**accounting** 20:9
20:24 30:1
97:6 98:25
**accrual** 98:25
**accrual-based**
97:6
**accurate** 22:22
29:10,14 30:10
31:10 42:24
58:11,15
**acknowledge**
21:1 103:20
**acknowledges**
29:1 52:19
94:11
**Act** 33:7
**acted** 117:12
**activities** 4:10
7:20 91:25
**actual** 33:10
35:13 43:23

**add** 7:6 30:11
31:1 73:19
101:23 107:15
107:18,18
**added** 9:12
84:17,18
**adding** 84:15
**additional** 9:10
24:19 84:14
**address** 5:11
7:15,25 10:5
57:25 65:20
75:16 95:8
106:21 112:11
**addressed** 35:1
54:23 77:21
95:9 96:1,21
105:15,18
**addresses** 6:22
84:24
**addressing** 25:9
**adequately** 97:5
98:19,24
**adhere** 112:14
**adjourn** 116:13
116:15
**administer**
36:17
**administering**
53:6
**administrable**
100:21
**ADMINISTR...**
1:1,19
**Administrator**
1:21 37:11,13
52:23 97:10
111:6 112:3
**Administrator's**
67:22 96:7
105:24
**advised** 54:19
**Advisory** 117:14
**affirmative**
20:16

**agenda** 4:1 5:13
106:15
**ago** 33:22
**agree** 8:9 23:10
23:18 32:7,18
39:1 40:21
104:6 105:8,9
110:22
**agreed** 23:21
35:18 40:7
61:16 80:16,22
83:23 94:15
111:10
**agreement** 5:6
6:8 12:6 22:3
23:9 24:19
26:5,21 27:2
28:5 29:1
33:16 34:10,19
34:24 35:15
41:10 43:1,2,6
51:8,20 59:16
60:22 61:6,10
65:6,8,15,25
66:5,12,13,16
71:21 86:7
91:12 92:5,6
93:24 97:20
98:13 99:22
100:19 104:2,9
106:25 108:13
108:20 109:17
111:10,14
**agreements** 6:7
28:1
**agrees** 32:3
67:23 110:15
**ahead** 12:8
36:17 79:8
110:10
**Alabama** 48:7
**ALEJANDRO**
3:5
**all's** 57:24
**allow** 7:3 86:12

87:14
**allowed** 113:10
**allowing** 66:20
112:12
**alternative**
96:23
**ambiguity** 66:13
**amended** 69:24
**amplify** 109:10
**analysis** 9:21
87:9 91:24
97:11,22 100:4
100:14
**and/or** 6:7
**ANDREW** 2:19
**ANNIKA** 3:8
**answer** 31:10
39:13 52:10
74:18 75:7
83:16 85:1
91:21 103:25
103:25
**answers** 85:7
**anxious** 22:15
**anybody** 7:6
24:5 73:11
**anybody's** 106:6
**anyway** 64:9
73:22 98:9
**appeal** 6:20
111:1,5,8,17
**appealed** 111:4
**appeals** 29:25
107:24 109:5,5
**appears** 43:7,8
92:13
**apples** 113:7
**application**
100:1
**applied** 108:8
**applies** 97:12
**apply** 97:7,9
99:9,15 100:20
103:24
**applying** 99:19

104:3
**appreciate** 8:18
12:13 37:20
104:18,19
105:19
**approach** 98:11
**appropriate**
34:12 64:14
72:5
**appropriately**
113:20
**April** 78:6 91:13
91:14
**area** 11:19 46:25
63:8,8 72:1
74:7 81:16,19
90:17 115:6
**areas** 11:11 82:3
82:9 87:2 89:3
90:23 94:13
**argued** 92:3
**arguing** 113:11
113:12
**argument** 43:12
92:10 107:13
**arguments**
91:19
**arisen** 5:7
**Article** 117:14
**articulated** 55:6
**articulating**
65:13
**artificial** 34:20
51:16
**asked** 22:2 24:9
24:20 25:25
26:1 29:20
74:14 83:15
**asking** 20:17
23:3 24:5 25:5
25:14 26:11,12
30:5 74:14
**aspect** 9:15
101:23
**aspects** 83:5

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 119

105:13
**assessment** 86:8
**assigned** 33:3
**assume** 9:14
    10:8,18 30:19
    45:16 46:12
**assumption**
    18:19 108:5,22
    113:17,19
    114:4,9,10,13
    116:1
**assure** 112:16
**attached** 15:20
    70:17,19
**attempt** 83:18
**attempted** 92:4
**attempting** 92:6
**attempts** 84:3
**attestation**
    87:19 88:1
**attributable**
    103:8
**attribute** 115:4
**avoid** 6:8
**awards** 83:8
**aware** 21:12

            **B**
**B** 10:23 70:12
**back** 5:19 6:5
    20:24 27:17
    30:21 31:14
    44:1 57:9,11
    57:16 64:22
    66:14 68:5
    69:23 77:25
    82:12 87:4
    90:19 94:23
    95:18 96:10
    102:3
**background**
    106:1
**BADEN** 3:10
    44:7
**banks** 33:6

**Barbier** 98:3
**Barbier's**
    103:18,21
**base** 11:14
**based** 79:19
    83:23 108:21
    111:13 113:24
**bashful** 25:20
**basic** 21:19
**basically** 70:6
    83:14 97:2
**basis** 40:4 98:23
    114:11,15
    116:10
**Bates** 70:18
**Baton** 69:2,10
    69:14,18
**be-all** 40:12 53:4
**beach** 74:7,10
**beginning**
    114:13
**begs** 55:1
**behalf** 81:15
    90:16
**BEL** 16:17
    25:19 26:13
    30:18 42:3
    69:20,21 72:20
    74:19 82:15
    95:24 98:11
    100:12 111:22
    112:7 114:19
    115:3,17
**believe** 54:20
    64:14 70:15
    83:4 84:22,25
    86:19,21
**believing** 28:23
**benchmark** 36:5
    84:16 85:18
    86:13 87:4,25
    90:11 91:22
    95:10,11,19
**benefit** 96:4,16
**best** 106:11

117:10
**better** 15:1
**beyond** 26:4
**big** 48:3 74:11
**bit** 10:15 15:1
    21:24 57:12
    109:9
**Bloom** 2:12 8:4
    8:10 10:2,24
    11:4,9,22 12:9
    14:2,8,13,20
    15:8,12,17,24
    16:5,14 17:14
    17:20 18:10,14
    20:5 22:7
    23:11 24:11
    28:11,24 29:7
    29:18 30:25
    35:21 37:7,25
    38:9 39:4,14
    39:20 40:8,13
    40:17 41:5,25
    42:8,14 43:14
    44:4,9 45:10
    51:24 52:13,18
    52:25 53:9,14
    55:3,15 57:4
    65:3,24 66:10
    67:5,19 68:11
    72:9 73:14
    78:18,23 79:4
    79:9 80:21
    81:6,22 82:1,6
    83:25 84:21
    85:5 88:8,15
    88:23 89:7,11
    89:17,23 90:2
    90:6 93:6,16
    93:21 94:16,21
    110:11,20
    114:1,6,17
    115:15
**Board** 117:12,14
**booklets** 27:18
**border** 28:4

**bought** 33:22
    47:18 48:9
**bound** 98:7
    109:3
**BP** 2:11 26:8
    27:19 28:20
    32:18,21 51:23
    66:18 68:5
    70:21 80:15,22
    100:25 104:16
    106:18 109:13
    110:10
**BP's** 27:23
    28:16 37:3
    55:6 71:2 92:3
    93:19 104:23
    105:6
**bracket** 47:19
**Brian** 2:15
    14:25 16:25
    22:1 44:1
**briefs** 107:14
**brings** 43:25
**broader** 12:4
**broken** 5:25
**Brown** 2:19
    22:11 23:15
    28:18,21
**bunch** 11:18
    111:2,3
**burdensome**
    26:3
**business** 4:7,9
    4:16,19,21,21
    8:24 13:4,5,9
    13:10 14:23
    17:10 26:24
    31:19 33:10,12
    33:18 34:9
    44:14,17 46:11
    47:11 48:11,13
    49:13 55:21
    60:16 61:4
    63:7,16 71:4,8
    72:3 74:5,20

75:4,6,12 76:6
    76:21 78:4
    79:18,21 81:10
    82:19,22 89:20
    91:25 95:16
    100:16 101:6
    101:17 103:5,6
    112:7
**business's** 26:17
**businesses** 4:18
    12:23,25 13:15
    13:17,21 14:19
    14:24,25 16:6
    16:16,18,20,23
    17:3,10 18:1
    19:8 20:2
    26:16 33:6
    34:2 47:18
    48:10,15 58:5
    58:8 60:21
    63:10 64:15
    70:21 76:3
    79:16 81:2
    89:2 101:2,13
    102:5 103:12
    111:15,17
**button** 41:21

            **C**
**C** 26:23,24,25
    75:3
**C's** 12:25 13:13
    13:20 14:12
    15:3,21 16:24
**Cabraser** 3:9
**cake** 70:6
**call** 28:17 31:3
    87:19 97:15
    103:3 110:12
**called** 26:4
**calling** 88:24
    90:18
**calls** 65:8 88:1
    112:2
**CALVIN** 2:5

**Cantor** 2:14
28:7
**car** 44:17
**carefully** 115:8
**Carolina** 44:15
**carries** 8:6 11:5
57:5 82:21
**case** 5:9 13:24
18:7 19:22,24
23:12,19 36:18
36:18,18 54:13
**case-by-case**
40:3
**cases** 10:14
11:21 84:4
**cash-in-and-out**
98:23
**categories** 110:6
**causation** 97:7
99:16 100:7
**cause** 96:23
**Center** 1:10
35:5 43:24
**certain** 5:7
79:25 107:22
115:18,21
**certainly** 21:1
94:3
**CERTIFICA...**
117:1
**certification**
117:3
**Certified** 3:15
117:6,22
**certify** 117:7
**cetera** 99:24
**chances** 53:7
**change** 29:24
63:6 71:22
101:2,21 102:7
103:6
**changed** 34:6,7
34:9 56:23
**changes** 4:9 7:19
23:8 28:4

37:17,17 79:12
79:13 101:15
101:19 102:4
102:17,19,20
111:20
**changing** 58:19
**characterize**
22:8
**charge** 108:2
**charged** 98:17
**China** 38:12
**chosen** 19:25
**CHUCK** 2:23
**Circuit** 86:5
91:20,20 92:3
95:8 96:2,12
96:20,25 98:6
98:15 99:11
103:17 105:6
**Circuit's** 92:8
**circumstances**
13:2,24 19:20
34:14 35:7
36:10 40:25
51:12,15 52:3
55:10 58:10
78:9 107:23
110:2 113:21
**Civil** 117:13
**claim** 8:17 20:16
21:11 22:1,10
22:21 23:4,14
24:4,9,15
25:12 26:13
27:2,18 29:3,9
29:24 30:9,11
30:23 31:3,7
31:22,24 34:18
34:18 38:21
43:24 44:20
45:3,6,24 46:6
49:5,6 50:13
50:16 51:14,19
54:4 58:10
60:23 61:17,24

62:2,5,15
63:20,24 64:8
64:9,12 65:2
66:21 67:3,24
67:25 68:2
69:8,21 70:11
70:12,24 72:3
72:13,19 74:16
75:1 79:19,24
80:4,12,13
81:13,15,17
82:8,11 84:9
86:24 87:1,20
88:12 90:14,16
90:20,21 93:5
93:5,12 94:8
94:12,25 95:17
95:22,23,24
100:17 108:19
110:4,6 111:7
111:12,22,24
112:7 113:24
114:20,24
115:3,12,17,19
**claimant** 4:21
18:9,11 21:2
21:13 26:20,22
27:4,7,11 30:6
31:11 34:15,17
36:3 42:23
51:13 58:11
69:20 70:10,23
75:9,12 82:24
85:12 86:1
87:18 98:17
107:25 108:12
109:6 113:22
**claimant's** 71:1
102:18,19
**claimants** 4:9
7:19 16:4,9
20:17 21:9
39:7 86:11
87:14
**claims** 1:1,19,21

4:7,11,16,19
4:22 20:19
21:3,22 22:16
22:23 23:6
25:14,19 26:10
26:17 28:18
29:11 30:18,20
31:20,25 35:5
35:7,13 37:11
37:13 43:24
45:14 52:23
56:9 59:10
63:9 67:3,17
67:22 70:1
72:11 76:21
80:1,17 90:14
95:6 96:6 97:9
98:12 100:12
101:13,18
103:25 104:11
105:23 108:24
111:2,3,6
112:2,6 115:9
**clarity** 5:15 9:1
9:10 28:3
57:14
**class** 2:1 9:5,18
10:15,16,19
12:4 27:24
42:23 58:19
60:24 63:8,9
64:6,7 66:23
67:25 71:4,22
71:23,24 72:2
74:16,25 77:16
77:21 78:5
91:16 94:3
**class-wide**
100:22
**clear** 11:25
30:11 42:17
46:19 53:5
56:17,23 57:1
58:3 66:17
71:19 72:15

92:7,8 98:4
103:16,17
104:6,14,19
105:10,13
106:10,11
107:3
**clearly** 60:24
70:3 96:15
98:7 105:8
107:25 109:22
110:25
**Clement** 86:5
**Clement's** 97:16
**close** 102:14
**closed** 74:7,8
**closely** 112:21
**clothing** 101:20
**Coast** 11:11,19
46:25 50:17,18
69:5 72:1
81:16,19 82:2
82:9 87:2 89:3
90:17,23 94:13
**Code** 117:13
**COLOMB** 1:24
**combination**
60:15 70:25
**come** 23:25
24:18 43:10
57:9,10 102:2
116:11
**comfortable**
5:17
**coming** 24:4
34:21 39:8
58:20 69:23
74:9 107:4
**commencement**
76:6
**comment** 37:4
51:22 72:7
77:4 94:5
105:21
**comments** 7:24
22:13 27:17,23

37:3 77:2,16
78:1 105:19
116:8
**Committee** 3:7
3:9,11
**common** 35:22
36:7,15 40:4
48:17,18 61:3
61:3
**commonality**
37:5 38:25
**company** 17:7
69:20 112:22
**comparable**
97:15,20
**compare** 71:12
**comparing**
97:24
**compensate**
68:9 80:16,23
84:8 99:22
**compensated**
69:21 71:10
87:14 108:15
**compensating**
83:9 86:17
**compensation**
70:20 84:15
87:22 91:5,22
95:12 99:18
100:6 112:12
112:17,23
114:23 115:5
**completely**
13:10 19:13
35:25 85:4,6
85:23
**complex** 91:24
97:22
**compliance**
117:11,12
**complicated**
20:11
**comport** 20:11
**comporting**

87:15
**composes** 6:19
**Comprehensive**
4:17
**comprising**
70:25
**compute** 82:16
83:7 85:18
90:20 94:23
95:13
**concept** 6:4
42:17 57:7
106:3 111:5
**conceptually** 6:9
**concern** 12:6
20:21 24:14
83:11 109:19
**concerned** 12:1
**concerns** 12:18
**concludes**
116:15
**concur** 52:1
**conduct** 100:17
**confirming**
27:22
**confused** 88:5
**confusing** 54:21
**confusion** 9:13
**consider** 56:12
80:5 111:24
**consideration**
5:23
**considered** 16:3
18:8 56:19
58:12 98:25
**considering**
106:12
**consistency** 56:7
56:8
**consistent** 61:6
106:16
**consistently**
108:8
**consolidate**
63:11

**consolidated**
27:10 31:24
48:24 50:13,16
54:4 79:15,19
79:19 80:1,4
80:12 81:15
84:9 86:24
87:1 88:12
90:15,20 93:4
93:12 94:8,12
94:25 95:6,23
**constant** 102:4
**consumers** 9:7,8
**contemplated**
82:10 83:1
91:2 95:2
**contemplates**
80:9
**contemplation**
82:19
**contemporane...**
90:8
**contend** 84:10
**contention** 65:5
**context** 13:8
42:7 100:22
**continue** 59:1
92:14
**continued** 78:7
**contra** 31:22
**contract** 86:21
**contracting**
115:13
**contractual**
117:13
**contrary** 106:7
**control** 108:2
112:23 113:21
**controlled** 91:12
**controversy**
92:22
**convened** 5:5
**convenience**
17:13 18:3
**copy** 28:9 61:11

**corporate** 17:9
46:23 48:9
61:19 63:2
64:17,24 69:1
69:2
**corporation**
17:11 47:2,4,6
47:21,23 48:1
60:16,17,23
62:25 64:4
71:25 108:1
**corporations**
108:9
**correct** 15:13,18
15:25 24:12
49:5 63:23
78:12 97:4
99:3,4 103:16
117:10
**corrected** 97:4
**correctly** 22:23
92:14 94:7
**cost** 69:7
**counsel** 2:1,11
27:24 77:16,22
94:3 117:15
**couple** 74:23
**course** 7:8 26:12
**court** 3:15 6:21
6:22 24:3 92:5
96:11,24 98:3
98:14,14 99:1
99:5,6,10
100:9,10 104:8
105:18 106:14
117:6,22
**Court's** 45:9
100:3,23
101:10 103:14
**courts** 105:15
**cover** 71:3,8
107:22
**covered** 11:14
60:5 116:4
**CPA** 2:15

**create** 64:19
**created** 22:11
64:22
**creating** 57:20
92:22
**creation** 23:3
**credibility** 112:4
**CREEVY** 2:8
**criteria** 83:23
97:8 108:4,20
**cross-claims**
56:7
**crux** 83:14
**CUNNINGH...**
2:7
**current** 28:17
**currently**
104:11
**customer** 55:21
102:8,9
**customers** 102:7
102:9
**cut** 9:15 73:10
**cutting** 7:6
78:16

---
**D**

**D** 83:15
**damages** 1:3
41:16 67:2
86:8 87:16
**Dan** 28:7
**DANIEL** 2:14
**date** 75:7 76:4,6
77:13 78:6,8
**dated** 61:12
**daughter** 43:15
44:6
**day** 44:3 55:13
75:6
**days** 74:13,15
75:5 76:4
**deal** 12:22 75:15
**dealing** 28:3
58:6,7

**dealt** 59:7,8
**decide** 35:9
**decided** 91:21
  92:2
**decision** 113:9
  116:12
**decision-maker**
  51:16 56:18
**decisions** 5:8
  28:2 111:18
**declaration**
  83:16
**declarations**
  83:20
**decline** 112:17
**deem** 7:4
**DEEPWATER**
  1:2
**defaulting** 54:20
**deference** 7:10
**deferred** 110:13
**defined** 26:20,22
  26:24 117:13
**definitely** 80:9
**definition** 10:16
  71:22 72:1,16
  91:15
**denied** 111:23
**deny** 110:4
**department**
  47:20
**depositions**
  103:4
**derives** 111:8
**described** 54:11
**description**
  72:17
**designed** 32:19
**details** 45:5
  100:16 103:5
**determination**
  36:11
**determinations**
  29:11 30:10
**determine** 34:14

34:16 58:11
**determined**
  44:20,22
  111:23 115:24
**determining**
  12:12
**developed** 24:8
  28:19
**dictate** 108:18
**dictates** 76:2
  99:10
**die** 116:13
**difference** 19:5
  19:19
**differences**
  101:6 102:1,6
  102:7,11,12
**different** 13:10
  13:16 14:18,25
  15:21 16:4,6,9
  16:16,24 17:19
  17:21,25 19:8
  20:2 21:2,3
  26:8 33:4 34:5
  35:7 40:5,6
  52:6,7 53:23
  58:21 59:4,11
  92:17 95:10,11
  101:3,5,24
  106:18,19,23
  106:23 109:11
  115:1
**differently**
  109:10
**dig** 13:23
**direct** 31:22
  93:3 109:2
**direction** 117:9
**directions** 40:6
**directly** 9:6,8
**disagree** 38:2
  65:4 72:21
  85:4 96:15
  110:4 112:10
**disagreed**

109:12
**disagreements**
  6:6 104:22
**discourage** 60:6
**discretion** 35:4
**discuss** 5:7 8:2
  73:3
**discussed** 74:19
  78:15 96:13
**discussing** 31:16
  105:14
**discussion** 24:16
  59:14 60:2
  73:4,21
**discussions**
  24:18,21 32:17
**disposed** 79:21
**dispute** 85:6
**disputes** 23:14
  23:15
**disregard** 35:25
**distinct** 18:4
**distinction** 19:9
  32:23,24 93:4
**distributor-type**
  11:24
**distributors**
  102:11
**District** 96:11
  96:24 98:3,14
  99:6,10
**divide** 37:2
**divisions** 17:19
  17:21
**document** 31:23
  33:1 70:18
  92:7
**documentation**
  46:16
**documents** 7:9
  7:12 11:18
  26:1 71:19
**doing** 8:20,23
  10:18 12:16
  24:1 41:12

58:12,14,17,18
  58:23,25 59:4
  59:4,17 64:19
  68:5 80:13
  82:12,14 88:17
  92:13,18,19,19
  92:20 95:4
  115:2
**DOLAN** 3:4
**dormancy** 76:21
**dots** 46:13,13,14
  46:14
**double** 4:13 68:8
  70:2,8 78:21
  109:14,19,22
  109:25 110:3,7
  110:16 111:11
  111:15 113:10
  113:18
**draft** 61:11
**drafted** 65:6
**driving** 41:8
  109:18
**drop** 101:20
**due** 41:19 73:17
  112:8,18
**duplicitous**
  18:19
**dynamic** 101:14
  103:13

――――――
          **E**
**E** 2:6
**earn** 82:24
  83:10,19,21
  84:4,19 85:13
  85:16,19 86:2
  86:18 99:24
**earnings** 108:3
**easier** 9:25
  64:16
**eating** 70:6
**economic** 1:3
  4:7,11,16,19
  4:22 19:15

20:12 41:7,16
  82:22 86:9,10
**Educate** 21:24
**effect** 76:21 77:5
  109:23
**effectively** 64:2
**effort** 8:15 23:5
  104:20,25
  106:12
**efforts** 21:7
**EIN** 18:21 32:23
  33:23 51:18
**either** 48:6
  61:17,24 79:22
  93:15
**elaborate** 17:1
**elect** 70:24
  79:18 90:13
**eliminate** 75:9
**eliminated**
  74:25
**Elizabeth** 3:9
**email** 27:22,25
  28:6,25
**embarking**
  112:14
**emphasis** 33:2
**encourage** 6:12
  25:1
**end-all** 40:12
  53:4
**endorsed** 111:1
**engage** 10:12
**enormous**
  103:10
**entered** 92:12
**entire** 105:23
**entities** 11:25
  12:11,15 14:23
  18:22 20:7,8
  20:10,18,20
  21:22 29:12
  30:6 31:6
  37:18 71:4
  80:1 81:13

91:4
**entitled** 113:25
**entity** 4:13,14
  8:17,23 9:2,7
  10:11 12:12,16
  13:18 17:9,15
  17:17,18,19,22
  17:23 18:5,15
  18:23,25 19:7
  19:23 31:2
  34:16 36:4,4,5
  36:11 37:15
  40:16,24 47:13
  47:16,17 50:20
  50:22,24 52:5
  52:5 53:8,19
  53:21 54:1,2,6
  54:10,12,15
  61:19 63:21,24
  63:25 65:9,9
  65:11,17,18
  66:19,22,22,23
  67:10 68:10
  69:2,2 71:9,25
  72:11,13,16,17
  79:24 84:11
  91:16 95:16
**entity's** 67:8
**equal** 92:24
**equate** 103:7
**equipment**
  101:25 102:10
**ERVIN** 3:7
**especially** 55:22
**ESQ** 1:20,22,23
  1:24 2:2,3,4,5
  2:6,7,8,9,12,13
  2:14 3:7,8,10
**essence** 36:19
  103:2
**essentially** 70:2
  97:3 100:16
  107:7,12
**establish** 56:7
**et** 99:24

**evaluate** 31:1
  112:3
**evaluated** 26:17
  80:6
**evaluating** 80:3
**evaluation** 4:8
  7:19
**everybody** 5:10
  5:25 6:18 7:1
  32:3 73:18
  106:4,10 107:3
**evidence** 54:9
  66:15
**evidences** 86:22
**exact** 33:18
**exactly** 55:8
  80:7
**example** 13:6,7
  13:17 14:5
  15:5 31:15,18
  33:18 43:20
  80:25 81:7
  87:13 101:4
  111:7,22 112:3
**examples** 35:12
  35:12
**exchange** 61:15
**exchanged**
  27:19 55:23
**exclude** 75:21
**excluded** 74:16
**excluding** 68:8
**Exclusions** 4:4,6
**excuse** 74:1
  80:20 114:5
**exercise** 106:24
**exhibit** 27:7
  31:20 41:15,16
  41:24 61:14
  62:1 68:10
  69:22,23 71:13
  80:9,25 84:25
  85:1,9,23
  86:22 87:9
  88:7,16 89:6

89:12,16 90:19
91:1 94:7,10
94:24 95:2,3,6
97:2,18 111:14
112:1,10,15
114:20
**exist** 80:15,24
  86:25 88:13
  91:5 92:22
**existed** 80:10,12
  83:2 95:24
**existence** 85:22
**existing** 94:13
**exists** 6:11 86:16
**expand** 102:13
**expect** 85:19
**expected** 82:24
  83:9,19,21
  84:4,19 85:13
  85:15 86:1,18
  99:23
**expense** 87:6
  114:15
**expenses** 82:16
  85:20 86:15
  90:24 91:3
  95:21 98:21
  99:2,11 103:15
  114:22
**experienced**
  66:24
**explain** 44:12
  74:4
**explained** 53:18
**explanation**
  104:18
**exploring** 39:24
**express** 82:18
  83:11 87:7
**expressing** 21:6
**expressly** 71:14
**extensive** 11:12
  21:25
**extent** 87:17

### F

**F** 2:4
**facilities** 20:23
  20:24 21:3
  27:6 29:13
  34:3 46:12,15
  46:19,20 48:25
  49:13 50:14,18
  62:15 68:14,20
  69:4,7 70:1,25
  71:1 72:14
  79:12,15,22,25
  80:5,11,14,14
  80:23 81:11,14
  81:16,18 82:11
  82:13,17,21
  83:2 84:12,18
  85:21 86:25
  87:2,6,8 90:16
  90:22 91:5
  94:9,12 95:21
  95:23 101:5
**facility** 21:10,20
  30:8,9 31:7
  32:4 33:12
  49:5,7,9 50:10
  54:5 62:12,14
  63:17,18 64:21
  65:11 69:10,14
  80:10 84:7
  85:14 87:23,24
  90:9,10,15
  93:9,10 95:16
  104:24
**facility's** 86:15
**facility-by-fac...**
  93:5
**fact** 27:22 56:12
  63:7 77:11
  79:17 108:16
  108:17 116:1
**factor** 54:22
  56:19
**factors** 58:13
**facts** 13:2,24

34:13 35:6
36:9 40:25
51:12,15 52:2
55:10 78:9
107:22,25
108:23 110:1
113:21 115:24
115:25
**factual** 109:4
**fairly** 11:20
**falls** 110:5
**far** 24:22
**farfetched** 28:22
**farther** 35:24
**favor** 107:24
**favorable** 27:4,9
**FAYARD** 2:5
**feature** 36:2
**February** 61:12
  70:22
**Federal** 33:5
**feedback** 37:22
**feel** 16:25 96:21
  98:2,5,7
**feeling** 93:19
**feelings** 26:8
**Fifth** 86:5 91:20
  91:20 92:2,8
  95:8 96:2,12
  96:20,25 98:5
  98:15 99:10
  103:17 105:5
**figure** 8:16 36:2
  37:15 40:25
  41:3 52:4
  83:18 100:15
**figuring** 29:11
**file** 13:12 21:2
  21:10,20 30:8
  31:20,21,24
  34:17 48:8,23
  48:24 49:5,14
  49:17,18,19
  50:12,16 51:14
  51:19 54:3,5

60:23 61:1
62:1,4,8,20
63:11,12,19,24
64:6,8,12,16
64:25 65:1
66:21 67:1
69:25 70:11,24
72:3,12,18
75:1 79:18,24
80:1 81:13,14
81:17 86:24
87:1 88:11
90:14 94:9,11
**filed** 8:17 14:17
14:22 22:16
31:2,7 34:2
59:9 61:10,17
61:22 62:17
70:16 84:23
115:3
**files** 26:23 69:21
114:24
**filing** 4:21 13:19
20:18 31:24
34:18 49:6
62:15 80:13
82:7,11 95:17
**final** 77:19
**finally** 7:10
**financial** 64:20
**financials** 64:16
79:20 82:13,14
**find** 16:13
100:24
**fine** 69:17 93:25
94:4
**finish** 9:23
**firm** 102:2
**first** 5:11 22:9
25:7,9 85:10
85:25 86:20
99:7,12 107:12
**fit** 35:11
**five** 5:10 43:7
107:23

**fixed** 114:22
**flag** 10:10
**floor** 1:10 8:1
**focus** 12:13,15
12:19 88:5
**folks** 28:8
**follow** 41:19
98:8
**follow-up** 80:2
**following** 32:8
71:13
**follows** 20:22
**footnote** 71:2
**footnotes** 61:20
**form** 22:2,21
23:7 24:4,9
25:12 27:18
29:3,10,24
30:12,20 68:2
**formal** 30:12
**format** 117:11
**forms** 22:1,10
23:4,14,19
24:15 28:6,19
30:23
**formula** 83:23
99:16,17,18
100:8,20
**formulas** 100:1
103:24
**forth** 7:23 20:25
65:14 72:20
**forward** 30:22
58:20,22 110:6
113:4
**four** 32:20 43:4
43:10 102:3
**fourth** 74:11
81:8
**frame** 85:10,24
91:17
**framework**
69:19 72:20
82:15,22 87:12
**frankly** 25:23,24

77:1
**fraud** 115:7
**fraudulent**
115:11,17
**free** 16:25
**Freeh** 3:4,6
**FRIOU** 3:2
**front** 57:15 74:6
92:5,7 106:4
**full** 7:14 27:19
73:17
**fully** 23:20
**fundamental**
66:17 87:12
96:14
**fundamentally**
109:12
**further** 88:17

—————— **G** ——————
**G** 3:14 117:6,21
**gain** 102:8
**game** 21:14 30:4
31:12
**GASPARDO**
2:15 18:18
19:1,11,21
22:5 44:2
55:19 56:4
**gatekeeper**
97:11
**GCCF** 4:6 28:21
114:11,14
**general** 99:1
**generate** 38:4
**generation** 37:9
**geographic** 71:5
**geographical**
63:8
**getting** 18:20
22:14,15 31:9
42:24 58:21
70:5,7,8 97:22
**give** 7:9,14
45:22 46:1,5

56:22 57:14
65:16 82:5
84:14 96:5,16
98:4 105:25
**given** 13:7 67:12
73:17 74:5
98:6
**gives** 33:6
**giving** 56:10
93:11
**glad** 28:9
**go** 5:19 6:5 8:3
12:8 16:16
24:3 27:17
31:14 35:13
36:17 45:5
46:8 57:11
59:22 66:14,20
77:25 79:8
82:12 85:17
87:4 90:19
94:23 95:18
100:13 106:24
107:11 110:6
110:10 113:2
116:11
**goal** 40:23
109:25
**goes** 84:7 96:9
**going** 5:3,12,22
5:24 7:3,14
10:13 11:20
14:11 19:12,14
21:20 29:13
30:22 35:6,8,8
35:23 40:6,24
41:6 43:3,9,23
44:12 45:2,3
45:22 46:1,5
52:4 56:11,12
57:16 58:17
59:1,15 61:24
64:19 68:9
72:8 76:7
80:11 84:14

92:14,16 93:9
112:25
**GONZALEZ**
3:7
**good** 41:12
53:12 102:23
**gotten** 104:8
**governed** 41:7
108:7,23
**government**
33:5
**granted** 108:4
**green** 46:13
**Greenville**
44:15
**Greer** 2:19
23:16 27:21
28:7,18,21
**GRIFFIN** 3:14
117:6,21
**ground** 35:23
36:7,15 40:5
44:3 92:24
**Group** 3:4,6
**guess** 22:8 29:20
64:22
**guessing** 21:14
30:4 31:12
**guidance** 98:5
**guidelines** 4:20
56:10 117:11
**Gulf** 9:4,6 11:11
11:19 46:25
50:17,18 69:5
72:1 81:3,10
81:11,16,19
82:2,9 87:2
89:3,21 90:17
90:23 94:13
**guy** 18:5
**guys** 83:16

—————— **H** ——————
**HACKER** 2:23
**handle** 38:20

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

65:23
**handling** 25:4
**happened** 71:20
**happening**
88:18
**happens** 60:17
79:12
**happy** 30:13
**hard** 28:23 52:4
**harm** 112:8
**hate** 38:1
**head** 26:19
**headquartered**
44:14 48:23
50:3,17 81:2
81:10 87:3
**headquarters**
46:24 49:23
62:16 68:24
69:18 89:3,21
**hear** 25:10
110:15
**heard** 35:17,23
91:18
**hearing** 24:10
29:8 36:7 64:1
**hearings** 6:2
**held** 112:21
**help** 22:21 30:7
57:3 102:18
**helpful** 37:9
39:6 104:19
**Herman** 2:2
10:7 11:15
15:9 24:23
25:16,18 28:14
29:16 41:14
67:15 68:3,16
68:25 69:11,16
76:15 83:12
84:2 85:3 93:1
93:8 94:14,18
107:16 109:8
110:17
**highly** 114:19

**historically**
108:3
**history** 22:18
24:7 25:3
28:20 57:12
66:3,14 77:11
**hit** 41:21
**Hog** 44:3
**Hold** 89:5
**Holstein** 2:13
44:18,23 45:7
45:12 104:15
104:16
**homework**
116:11
**hope** 20:12
**hoping** 9:1,9
**HORIZON** 1:2
**hours** 102:6
106:12,12
**HRON** 1:23
**huh** 44:1
**hundred** 30:18
100:12 101:17
**hurt** 102:19
**hypothetical**
45:16 52:1
74:4

———
**I**
**ID** 14:17,18
48:10,13,16
50:14 58:12
**idea** 13:14 31:21
33:17 43:4,9
**identification**
33:25 48:11
53:4,7,20,22
54:8,12
**identified** 101:5
**identify** 8:16
12:14 21:13,23
30:7 54:14
**identifying** 15:7
33:13,14

**IEL** 111:24
114:24 115:12
115:19
**IEN** 33:23
**ignore** 93:20
**II-C** 76:20
**imagine** 10:11
**impact** 96:21
104:11
**implement**
57:11
**implementing**
58:24 88:18
**implicates** 96:14
**implies** 58:18
59:3
**important** 7:5
7:13 8:19 9:19
54:7,9 55:9
56:6,13
**inaccuracies**
115:7
**include** 30:23
56:24 77:20
86:13
**included** 77:18
79:15 108:16
**including** 87:24
**income** 98:20
99:11
**inconsistent**
109:16
**incorporate**
20:1
**incorporated**
29:4
**incorporating**
28:1
**incurable** 6:9
**INDEX** 4:1
**indicator** 53:5
53:13 55:9
**individual** 13:12
15:10 19:25
48:25 81:14

90:15 113:24
**individuals**
26:15
**infinite** 101:15
**information**
21:18 25:22
26:11 30:24
31:9 42:25
45:23 46:6
103:1,2
**initial** 27:17
**input** 23:8 25:8
37:11,21 38:5
38:5,12,14,16
38:18 57:21,24
59:19 116:5
**inquiry** 10:12
**inserted** 77:14
77:15
**inside** 19:24
71:5
**insight** 96:6
**instance** 100:13
**instinctively**
26:9
**instruction**
27:18
**instructional**
43:11
**insurance** 43:8
**integrated** 64:15
**intended** 70:4
99:22 100:2
**intending** 9:15
62:11 95:5,7
**intent** 41:9
52:24 54:1,14
54:21 65:16
86:23
**intents** 111:9
**interact** 20:10
**interchanged**
73:4,7
**interested** 29:9
117:15

**interesting**
110:14
**International**
3:4,6
**interpretation**
87:13 106:23
111:13 113:9
**interpreting**
86:6
**involved** 23:6
44:16 66:8
**irrespective**
79:20
**issue** 12:10
21:16 29:2
36:15 37:2,12
38:14,19 39:6
55:22 56:17,19
57:2,10 58:1
77:20 78:25
79:11 93:14
95:8 96:9,24
97:13,14,15
101:1 110:8
112:23 113:11
113:11
**issued** 37:20
70:14 72:22
98:4
**issues** 5:7,9,16
6:3,20,24 7:4
7:15 8:12 20:8
22:25 29:25
32:19 35:8,9
36:17 38:13
56:25 87:18
96:8,14,20
97:12 98:1,10
100:5 102:16
104:12 107:10
**IV** 2:9 3:10

———
**J**
**J** 1:22 2:2
**JAMES** 2:3

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 126

**January** 61:10
70:14,16
**jewelry** 13:10
14:6 15:22
18:5 31:17
33:19
**job** 57:19 99:15
106:13
**Joe** 27:13 28:13
32:3 35:23
38:18 39:15
44:19 46:18
53:18 60:6
75:8,16 77:10
107:18 111:4
**Joe's** 52:1 94:5
109:21
**John** 2:8 3:10
44:6
**John's** 43:15
**joint** 23:5 67:13
**Jones** 2:6 33:19
**JOSEPH** 2:4
**JR** 1:20
**Judge** 86:4,4
96:25 97:16
98:3 103:17,21
103:21
**July** 1:12 74:11
74:12
**June** 74:9 76:16
**Juneau** 1:20,22
5:2 8:8 9:22
10:4,20 11:2,7
12:7 13:25
14:4,10,15
15:4,6,8,14,19
16:1,8,11 17:6
17:16,24 18:12
18:16,24 19:3
19:16,18 20:3
21:15 23:1,22
24:13,25 30:16
32:1,9,13
35:16 36:12,22

37:1,23 38:6
38:11 39:11,17
39:22 41:2,18
42:5,10,16,20
43:16 45:17,19
45:21 46:2,7
46:17 47:1,5
47:12,22 48:2
49:3,16,24
50:4,8,19,23
51:2,21 52:11
52:16,21 53:2
53:11,16 55:12
55:17,24 56:14
57:8 58:3
59:18,24 60:4
60:11 62:3,9
62:23 63:3,13
65:19 67:21
68:13,22 69:9
69:13 72:6,24
73:8,16,25
74:17 75:13,19
75:24 76:8,12
76:18,25 77:9
78:11,13,20
79:2,7 80:18
81:4,20,24
82:4 88:3,10
88:21 89:4,9
89:14,19,25
90:4 91:7
92:23 93:13,18
96:3 105:20
110:9 113:7,13
116:3

___
**K**
___

**K** 3:8
**KEENAN** 2:20
**keep** 58:17
**kept** 33:24 48:12
**KEVIN** 1:24
**kind** 24:17 26:9
28:22 40:21

65:17 78:15
80:19 87:8
88:4 95:1 96:5
96:10,14 99:24
104:3,10 111:5
**kinds** 81:13
113:2 115:9
**know** 7:12,21
8:12 9:15,18
9:24 10:15,17
13:18 17:4,12
21:16,17 22:14
23:16,17,18,20
24:24 25:8
26:5 30:3,17
30:20 31:6
37:3,16 38:2,2
39:2 41:6,7,21
42:1,2 44:24
51:25 55:1,5
55:11 59:9,11
64:15 73:2
74:22 75:7
80:7,8,10
87:23 93:23
94:1 100:25
102:25 105:16
106:4 107:5,12
111:3 112:20
112:25 115:1
**knowing** 102:20

___
**L**
___

**L** 90:24
**L's** 31:2 46:15
64:21 90:10
95:1,5 97:4
**language** 5:14
8:21 9:11 42:4
76:19 77:5,12
77:18 80:25
88:5,13 99:24
111:9
**large** 28:19
**late** 70:15

**latitude** 7:15
**LATTA** 2:16
**law** 102:2
**leave** 12:2 102:2
102:3
**left** 70:2 102:24
**legal** 12:14
18:22 19:23
47:13,16 53:18
53:21 54:1,2,6
54:11,14 96:20
98:1,9
**legislature**
116:14
**legitimate** 35:3
61:7 77:4,17
77:23
**lending** 44:16,17
47:19,20
**lessee** 62:13
**let's** 7:10 25:17
28:15 46:8,23
57:11 58:3
68:18 69:1
110:1
**level** 48:9 61:2,2
64:17,21 66:19
84:11 103:12
**LIFE** 1:10
**likewise** 91:1
**limit** 71:23
**limitation** 61:14
71:14 91:15
**limited** 22:12
**limiting** 61:25
**LINDA** 3:14
117:6,21
**line** 27:23 56:22
84:7 101:20
**lines** 84:13,18
101:4,20
109:20
**list** 11:14
**listed** 12:23
**little** 10:14

21:24 44:5
57:12 107:9
109:9
**LLC** 33:19 47:9
47:11 48:7,7,8
48:14 49:8,12
50:5,7 53:19
61:2 64:7
**located** 63:7
71:25 81:11,16
81:18 82:2,8
89:21 90:16,22
**location** 68:23
102:13
**locations** 53:23
59:11 88:12
102:12
**logic** 68:20
**logical** 111:13
**longer** 9:2 76:4
80:15,23 85:14
86:16,17,25
87:22 88:13
**longstanding**
96:9
**look** 5:19 13:1
17:3 20:20
21:5 24:6
28:15 34:13
35:6 36:2,8,9
36:18 38:22,23
38:23 40:24
42:22 43:3
51:12 52:2,4
55:10 58:9
59:12 60:15
65:18 66:11,14
66:19 67:8
78:8 82:12
85:12 86:22
88:19 95:9,17
95:19,20 101:2
107:7 110:1
**looked** 108:24
111:2

**looking** 10:9,12
  19:14 30:2
  44:25 45:14
  56:9 65:9
  66:22 81:7
  82:15,20,23
  83:1 85:18,25
  87:5,7 89:5,10
  106:1,2,5
**lose** 102:8
**loss** 4:7,11,13,16
  4:19,22 66:24
  82:22 83:7
  86:10 90:8
  98:16,19,22
  99:8 102:22
  103:8,8 108:13
  109:7 113:23
**losses** 69:22
  99:23
**lot** 7:24 8:15
  22:18 25:23
  38:13 44:1
  96:22 102:19
**Louisiana** 1:11
  48:6,7,15,16
  49:13,14,23
  50:3 60:17
  117:7,13
**Lynn** 27:21,25
  28:7

            **M**
**maintain** 62:21
  90:7
**maintained**
  48:18,19 61:4
**maintains** 63:10
**making** 27:25
  28:2 29:10
  41:20 101:24
  104:24 108:5
  113:16 114:10
  114:10,12
  115:20

**mandating**
  64:12
**manufactures**
  17:12
**manufacturing**
  11:24 18:2
  101:23
**Mark** 2:13
  104:16
**MARTENS**
  2:22
**MARTIN** 3:8
**massive** 64:20
**match** 97:5
  103:14
**matched** 98:20
**matching** 42:3
  97:17 99:2
**MATT** 3:4
**matter** 5:13
  11:16 25:11
  26:5 63:18
  100:25 101:12
  117:16
**matters** 20:25
**maximizes**
  70:12
**mean** 10:8 11:20
  16:10 18:3
  19:14 21:4,25
  23:25 30:17
  33:5,25 40:18
  42:1,7,11,12
  42:12 53:12,23
  54:10 55:18
  56:5 59:6 66:1
  67:7 68:18
  72:15 73:3,20
  74:18 75:14,15
  86:16 93:22
  94:8 97:22
  102:4 103:3
  109:11
**meaning** 28:5
  29:6

**means** 15:1
  20:19 34:22
  41:22 42:2
  80:7 94:17,22
  94:22 97:21
**meant** 65:15
  112:11
**mechanism**
  106:20
**meeting** 1:6 5:3
  5:4 24:2,4
  110:12 117:7,8
**meetings** 6:17
**meets** 108:3,19
**member** 9:5
  10:16 42:23
  60:24 63:9
  64:6,7 66:23
  71:5,22,24
**member's** 71:23
**members** 58:19
  58:22
**membership**
  9:18 10:19
  12:4 72:2
**memories** 44:1
**mere** 116:1
**merely** 98:22
  113:17
**method** 86:11
  117:8
**MICHAEL** 1:22
  10:20 11:2,7
  13:25 14:4,10
  14:15 15:4,14
  15:19 16:1,8
  17:6,16,24
  18:12,16,24
  19:3,16 20:3
  21:15 23:1,22
  24:13,25 30:16
  32:1,9,13
  41:18 42:5,10
  42:16 43:16
  45:17,21 46:2

  46:7,17 47:1,5
  47:12,22 48:2
  49:3,16,24
  50:4,8,19,23
  51:2 52:21
  53:2,11,16
  55:24 56:14
  60:4,11 62:3,9
  62:23 63:3,13
  67:21 68:13,22
  69:9,13 74:17
  75:13,19,24
  76:8,12,18,25
  77:9 78:11,20
  81:4,20,24
  82:4 88:3,10
  88:21 89:4,9
  89:14,19,25
  90:4 91:7
  92:23 93:13,18
  96:3
**Mike** 15:6,8
  23:13,21 25:17
  27:16 32:12
  55:5 57:5
  65:13 67:9
  105:22
**milk** 101:22
**mini-trial**
  100:17
**minute** 80:19
**misaligned**
  105:5
**misimpression**
  12:3
**Mississippi** 48:6
  48:7
**mixing** 113:7
**modifications**
  6:7
**mom** 47:18
**moment** 116:15
**money** 67:17
  84:19
**month** 97:23,24

  113:1
**months** 74:23
  86:14 91:23
  92:1 95:11,18
  95:20 97:21
  98:21 99:3,4
  99:12 103:16
**move** 49:22
  78:14,17
  102:13 107:9
  113:4
**multi** 79:25
**multi-facilities**
  56:21 59:8
**multi-facility**
  4:17 31:19
  48:21 54:3
  58:5,8 59:10
  59:14 61:11,13
  69:8,19,25
  70:21 72:3,11
  72:12 73:2
  79:1,5,16,18
  79:24 81:1,9
  82:19 89:2,20
**multiple** 19:23
  27:5 33:4
  46:12 53:19
  54:12 56:9
  60:9 64:21

            **N**
**name** 91:23
**natural** 12:22
  13:6,8 14:6,21
  15:9 16:21
  19:5
**nature** 34:8
  101:14 103:13
**necessary** 57:25
**necessitate**
  57:19
**need** 13:1 17:2
  35:3 36:16
  40:20,22 42:25

51:11 52:4
54:25 56:1
66:11 93:15
101:8 108:11
**needed** 43:22
**needs** 5:15 10:19
34:25 40:3
59:2 92:12
**negotiated**
30:21 61:9,22
64:10 71:17
**negotiating** 66:2
66:14,18
**negotiations**
21:25
**NEIL** 2:20
**neither** 32:25
**Netterville** 3:1,3
**never** 55:18
67:12 100:2
**new** 1:11 30:23
62:17 64:20
84:12,13,13,17
84:18 92:21
102:10
**normal** 38:21
**northern** 60:19
**notion** 26:10
28:18 109:13
110:14
**number** 8:21
11:24 14:17
15:16 19:9
33:2,3,13,14
33:23,23,24
34:11,22 35:20
48:13 49:1
50:14 52:7,9
53:7 55:7
58:13
**numbers** 14:18
33:6,8,9 34:5
48:11,11,16
52:8 53:20,22
54:8,13

**Numeral** 76:20

**O**

**objective** 56:2
83:22 97:8,12
99:16,19 100:1
100:8,20
103:24
**obtained** 79:21
**obvious** 11:20
22:20
**obviously** 9:19
26:7 105:16
**ocean** 74:6
**offered** 77:2
**office** 1:19 23:6
67:22 105:24
105:24
**Office's** 96:7
**officer** 4:14
78:19,22 108:1
108:7,17,22
109:3 111:25
112:18 113:18
115:4 116:2
117:7
**officers** 111:16
112:13
**official** 78:10
**oh** 110:21
114:25
**oiled** 74:6
**okay** 8:5 12:8,10
15:5 18:13
20:4 23:2
24:14 32:2
35:17 40:2
41:15 49:23
52:24 59:19
69:5,17 75:25
90:1,1,7
110:22
**older** 44:5,8
**once** 97:3,6
99:14 103:23

**one-point** 51:16
**one-way** 84:6
**onerous** 10:15
**ones** 25:20 49:17
49:18
**open** 5:3 102:14
**opened** 48:12
74:11
**operate** 26:15
35:5 62:21
63:15,17,22
**operated** 48:18
48:20 50:10
61:4 63:16
91:16 114:11
**operates** 14:6
17:13 49:9,12
63:10,25 68:15
**operating** 4:10
7:20 14:23
18:1,2,23 19:7
20:1 48:14
64:3
**operation** 33:11
34:6 71:4,9
74:20 75:4
76:3 78:4,8
97:24
**operationally**
19:12
**operations**
19:13,24 22:19
37:17 38:21
67:9 76:5 77:6
77:12 79:13
83:3 85:15,21
86:14 91:4
97:23 100:15
101:3
**operator** 62:13
**opinion** 86:5
97:1,17,19
**opinions** 98:4
117:14
**opportunity**

22:13 27:20
37:22
**option** 31:23
62:8 64:24
70:20 93:11
**optionality**
61:25 65:17
70:10
**options** 48:22
54:2 62:12
**oranges** 113:8
**order** 7:16 45:9
100:23 103:1
103:14,21
**ordered** 99:6,6
101:10 106:14
**orders** 98:13
100:3,9 103:18
103:21 104:8
**ordinary** 26:12
**organizations**
56:8
**original** 70:17
97:17 117:3,4
**originally** 70:15
**Orleans** 1:11
62:17
**Orran** 22:11
**ought** 25:5,13
93:19
**outcome** 117:16
**outset** 93:23
**outside** 46:24,24
48:23 71:5
81:11
**overarching**
8:12 82:23
83:17 85:10,24
**overlap** 8:9
32:12,21
**overlaps** 51:6,7
**overly** 10:15
26:3
**overriding**
110:7

**owned** 33:18,19
33:20,21 48:17
48:17 50:9
60:16 63:16
**owner** 4:14
62:13 78:19,22
111:24 112:18
112:21 115:4
**owner/officer**
114:23
**owners** 111:16
112:12
**ownership** 4:9
7:20 34:8 61:3
**owning** 31:16
64:2
**owns** 49:8 50:24
52:6 60:21
63:10,25 68:15
72:13
**OXENREITER**
2:19

**P**

**P** 31:2 46:15
64:21 90:10,24
95:1,5 97:4
**page** 4:2 35:19
76:13 89:15
117:4
**pages** 43:5,10
**paid** 61:17 64:8
**PAN-AMERI...**
1:10
**panel** 1:1,6 5:4
6:2,17 7:23
24:2,4 45:4
110:12 111:18
116:16
**panelists** 111:1
111:5,8
**panels** 108:4
**papers** 6:18
12:18
**paragraph** 75:3

81:8,8 89:13
89:15 90:1
parallel 16:21
paramount 7:7
parent 47:25
48:3,20 60:22
61:16,23 62:1
62:4,7,14 64:2
66:20 67:1,3
67:24 68:18,19
69:5
parent's 64:9
PARKERSON
2:3
parse 90:23 91:3
95:5 114:21
parsing 94:25
95:1
part 6:19 9:11
10:22,25 12:17
17:8 28:19
30:15 36:13
47:21,25 59:23
60:19,20 76:9
100:4 114:13
particular 10:21
21:1 29:2 36:3
67:9 82:20
85:8 86:14
101:1 113:1
particularly
23:6 27:5
parties 5:19 6:3
6:8 7:4 22:3,12
24:17 28:2,5
29:2 38:5
39:24 104:5
106:5 116:5
117:15
parties' 5:16
partners 102:2
parts 84:25
party 29:3,12
30:3 77:2
PATRICK 1:20

1:23 5:2 8:8
9:22 10:4 12:7
16:11 19:18
35:16 36:12,22
37:1,23 38:6
38:11 39:11,17
39:22 41:2
45:19 51:21
52:11,16 55:12
55:17 57:8
59:18,24 65:19
72:6,24 73:8
73:16,25 78:13
79:2,7 80:18
105:20 110:9
113:13 116:3
Patriot 33:7
pawn 47:20
pay 83:22
115:14
Payday 44:16
payment 4:13
68:8 70:9
109:14,22
110:3,7
payments
109:20,25
110:16
payroll 114:14
pedestal 33:15
pending 43:24
people 6:12 33:3
38:22 43:18
56:9 83:9,21
84:4 99:22
103:3
people's 26:2
percent 10:14
11:21 50:13,15
73:21 108:18
perception
25:18 26:2,6
perfect 31:18
perform 65:10
106:14

period 22:24
36:5 76:4 78:5
78:7 80:6
81:23,25 84:16
85:18 86:13
87:4,25 90:11
91:6 95:11,12
95:19 101:15
periods 90:12
91:22 97:15,21
person 13:7,8
14:6,22 15:9
19:6,7 26:23
31:16 34:16
113:17
person's 14:16
15:15,22 16:22
personal 117:9
personnel 102:1
102:23
persons 12:22
perspective 54:7
55:6 65:12
104:23 105:4,6
116:4
phone 31:3
phrase 41:13
42:21 86:9
physical 46:14
pick 30:2 31:3
101:21
picture 44:13
piece 9:24,24
10:1,1 20:6
31:8 54:9
PILCHER 3:1
place 34:25 87:3
91:25 107:5
places 55:20
plaintiffs 91:8
106:17 107:11
Plaintiffs' 3:7,9
3:11
planning 21:10
30:8

plans 84:13
please 56:24
114:5
plus 101:17
point 7:13 9:13
9:17 10:6
25:24 26:14
27:17 30:5
59:22 60:5,7
73:24 77:17,21
78:2 80:8,24
93:10 109:11
114:20
points 7:21 21:2
43:21 60:9
policies 8:21
9:12 11:6,8
32:20 35:2
39:10 43:5,22
51:11 57:6,13
57:20 58:7
59:15 73:6,9
83:5 96:13,18
policy 4:5,8,12
4:17,17,20 5:8
5:12 7:18 12:3
12:21 20:23
29:22 30:13
32:8,10 34:4
34:24 36:16,21
37:9 38:20
39:2,6 40:19
40:22 42:3,25
43:6,9,11 49:1
49:4,8,10 51:3
51:17 52:15
54:3,19,23,25
56:1,5,10,20
57:16,19 58:16
59:2 60:2,14
60:25 61:8
62:10 63:22
65:7,14 67:6
70:14 72:22,23
75:8,15 76:2

76:14 77:15
79:13 92:11,17
92:21 93:14,24
93:24,25 99:5
99:9 103:19
107:21 108:10
108:11,21
109:1,2,19,23
111:8,12,21
114:14
policy's 54:21
57:25
PolicyKeeper
84:23
PONTCHAR...
1:10
pop 47:18
position 37:3
71:3,7 98:6
105:3 106:8,9
possible 6:13,13
Postlethwaite
3:1,3
potentially
87:20 115:16
POYDRAS 1:11
practical 11:16
100:25 101:12
103:12
practice 58:8
precise 38:8
84:5
predetermined
44:19
preexisting
97:25
prepared 117:8
117:11
present 2:18
32:19 35:8
pretty 8:13 9:19
18:4 42:17
53:12 66:16
98:4,7
prevent 62:14

109:24 111:15
**Preventing** 4:12
**prevents** 62:18
**previous** 109:1
**PriceWaterho...**
2:21,22,24
**primary** 96:20
**principle** 42:9
66:17 82:23
104:4 110:23
110:25 111:18
**principles**
112:15
**prior** 75:4 76:24
77:6,13 78:1
101:7 113:1
**probably** 10:13
26:2
**problem** 32:16
**procedural**
20:14 21:8
25:11
**procedurally**
21:7
**procedure** 30:15
117:14
**proceed** 22:13
**process** 16:17
20:17 22:22
23:23 31:9
37:10,20 73:18
77:3
**processed** 27:3,4
**processing**
26:13
**product** 23:4
84:13,18 100:7
101:4,19,22,22
**products** 9:3,6,8
11:11
**profit** 90:8
98:16,19,22
99:8 102:21
**program** 8:14
9:14 10:9,18

20:15 21:5
22:11,19 23:17
25:4 26:10
31:12 38:3
39:8 53:6 77:3
83:18
**program's**
10:11
**prohibited**
45:13
**prohibition**
117:13
**proper** 12:12
51:13 99:12
**properly** 115:4
**Property** 1:3
41:16
**propose** 56:23
**proposing** 57:2
94:3
**protected**
109:13
**protection** 70:8
**prove** 11:18
**provide** 37:22
46:16 104:2
**provided** 94:20
112:5
**provides** 5:20
**provision** 9:2
49:2
**provisions** 5:6
33:16
**PSC** 9:25 71:7
105:8
**pull** 5:12 39:9
93:23
**purpose** 6:2
57:12 61:7
109:24 110:7
**purposes** 9:10
33:9,25 105:1
**pursuant** 5:5
34:19
**push** 54:23

**put** 5:18 8:1,15
29:22 31:10
33:1,14 34:25
43:20,25 61:15
61:20 77:4
98:20 99:11
**puts** 44:13
**putting** 58:16
59:15 99:3
104:20

---
**Q**
**qualified** 72:18
**qualify** 112:7
**qualifying** 87:21
**quantify** 84:3
**question** 36:14
38:8 49:6
52:10 55:1,5
63:14 74:14
75:8 87:19
88:1 97:17
108:11 112:6
**questions** 22:2
24:9,20 25:3
25:13,25 29:20
45:4 83:14
84:24 85:2,8
**quite** 20:7 22:18
80:6 87:11
**quote** 86:4 98:20
**quote/unquote**
26:16 109:14

---
**R**
**raise** 77:20
**raised** 77:22
96:8 101:1
**raises** 21:16
**ramifications**
103:9
**randomly** 33:3
**RANDY** 2:16
**rationale** 96:17
104:7
**re--** 25:6

**read** 54:19
65:16 95:3
98:9
**reading** 7:11
54:18 76:9
77:10 85:23
86:20 94:7
**reads** 55:21
65:15
**real** 57:1
**realistic** 86:8,10
**reality** 19:15
20:12 28:16
41:7 86:9
**realize** 7:8
**really** 8:6,11,15
11:13 12:4,13
13:1,4,14,19
13:20,23 15:2
16:22 17:2
22:21 25:2
30:14 37:9
41:8 52:4 83:8
87:15 94:10
96:19 105:12
112:8,22
**reason** 5:21
32:22 35:4
70:19 87:21
92:16
**reasonably**
100:21
**reasons** 33:4
40:5 64:23
113:3
**recall** 24:3 66:3
**receive** 98:15
**received** 27:23
**recollection**
22:6
**record** 5:25 6:19
73:12 104:17
105:2 106:11
114:16
**records** 64:20

**recover** 75:1
**recoveries**
111:15
**recovering** 68:6
**recovery** 70:3
78:22 102:18
102:19 108:5
111:11 113:10
113:18
**red** 10:10 27:23
46:13 56:22
**rediscuss** 6:24
**refer** 81:25
**reference** 12:21
79:17 91:11
**referenced** 85:1
97:16
**references** 8:22
9:12
**referred** 78:2
**referring** 76:20
81:5 88:6,14
91:23
**reflect** 23:20
**reflected** 26:25
66:4 87:9
**regard** 105:3,17
109:15,15
**regarding** 5:8
35:19
**regardless** 86:3
**Registering** 4:21
**regular** 95:24
**rehash** 92:9
**reinvent** 6:23
**reiterate** 6:4,15
**reject** 26:9
**relate** 53:22
91:4 95:21
**related** 12:20
20:8,9,18,20
21:22 29:12,14
30:2,6 31:6
82:17 117:15
**relates** 78:25

79:10
**relation** 78:14
**relationship**
  28:20 43:8
**relationships**
  117:13
**release** 4:6
  61:18,21,23,24
  64:9 65:2,22
  67:13 70:7
  71:3,8,16
**releasing** 61:19
**reliability** 112:4
**reliance** 32:22
**rely** 109:1
**remodeled**
  74:10
**remodeling**
  74:22
**repeat** 91:19
**reported** 3:13
  16:23 117:8
**Reporter** 3:15
  117:6,22
**REPORTER'S**
  117:1
**reporting** 117:8
**represent** 97:5
  98:24
**representations**
  115:18,20
**request** 13:22
  21:7 29:3,22
  30:13 37:10,21
  38:4 74:4
  112:13
**requests** 20:13
**require** 33:7
  103:2 112:16
**required** 27:12
  115:21 117:4
  117:11
**requires** 27:2
  47:10 114:21
**requiring** 102:9

**reserving**
  105:16
**resolve** 6:9
**resolved** 23:15
  24:2
**respect** 8:5,24
  12:1,11 20:9
  20:22 22:9
  41:19 55:7
  65:5 72:23
  94:5 95:13
  101:25 106:6
  106:18 107:1
**respective** 6:17
  7:21
**respond** 27:20
**response** 70:16
  70:17 77:16
  93:3
**responsibility**
  98:18
**restarted** 75:6
**restaurant** 13:9
  14:7 15:23
  31:18 33:20,21
  74:7,10
**result** 82:25
  83:8 99:20
  100:5
**results** 22:22
  23:25 29:15
  110:2
**resume** 76:5
**return** 15:11,21
  18:21 48:8
**returns** 12:24
**revenue** 68:7
  69:6,22 84:16
  86:15 87:24
  90:24 103:15
**revenues** 82:16
  85:20 87:5
  91:3 95:20
  99:2
**review** 76:22

**reviewed** 23:8
**reviewing** 25:19
**rewrite** 33:15
  92:5,6
**rewrites** 35:14
  51:8
**rewriting** 49:2
  51:20
**RHON** 2:6
**Rice** 2:4 27:15
  29:5 31:13
  32:6,11,15
  36:20,24 38:18
  40:1,10,15
  41:11,23 42:19
  43:19 44:11,21
  45:1,15,25
  46:4,10,21
  47:3,8,15,24
  48:4 49:11,21
  50:1,6,11,21
  50:25 51:5
  54:16 57:22
  58:2 59:21
  60:1,8,13 62:6
  62:19 63:1,5
  64:5 66:7,25
  67:11 68:1
  70:13 73:5,23
  74:2 75:10,17
  75:22 76:1,10
  76:23 77:7,24
  91:10 107:20
  113:6,15 114:3
  114:8 115:10
  115:23
**right** 5:23 8:16
  10:25 11:5
  14:21 16:7,10
  16:16 17:23
  18:1,17 22:3
  23:24 24:22
  27:8,11 31:20
  32:14 34:15,17
  36:3,10 37:15

38:1 40:21,24
  42:15,23 44:6
  45:11 46:8
  47:7 49:22
  50:12,15 51:4
  51:14 52:5,8
  52:17 53:10
  57:6 60:12
  63:4,19 65:7
  68:20 69:8,12
  72:2,4,12,22
  72:25 75:1
  77:25 78:12
  79:3 80:15
  81:21 82:3,13
  84:11 89:18,24
  92:19 93:7
  94:15 98:21
  104:21
**rights** 71:23
  105:17 106:24
**ripe** 24:16 115:7
**ROBERT** 2:7
**ROBIN** 3:1
**rolled** 6:21
**Roman** 76:20
**room** 1:10 5:25
**Rouge** 69:3,10
  69:15,18
**ROY** 2:3
**RPR** 3:14 117:6
  117:21
**rule** 34:20 35:11
  78:10
**ruled** 96:12,24
  107:24
**rules** 108:8
  117:12,14
**rulings** 100:9
**running** 18:6
  22:15
**rushed** 22:24

_____
**S**

**S** 2:8

**salesman** 102:23
**SALICRUP** 3:5
**satisfied** 5:14
  100:7
**save** 56:2
**saying** 5:18 16:2
  16:13 17:2
  18:7,20 29:21
  30:22 32:5
  36:19,25 38:22
  38:25 41:20
  42:6 52:9
  57:22 62:1
  67:9,16 68:6
  71:10 73:1,10
  73:11 74:21
  78:3 86:23
  88:16 93:15
  95:13,15,25
  97:3 109:21
  113:19
**says** 10:16,17
  11:10 27:25
  34:21 43:1,2
  49:8,10 51:9
  51:18 58:16
  59:3,16 60:22
  64:13 67:23
  70:23 74:24
  77:12 80:3
  81:1 88:11
  89:20 90:7,13
  92:17 115:13
**scenario** 88:19
  89:1 90:21
**scenarios** 81:9
  81:12
**Schedule** 12:25
  13:13,19 14:12
  15:2,21 16:24
  26:23,24,25
**scope** 4:5 71:6
**screen** 43:13
**scrutinize** 115:8
**scrutiny** 112:16

**seal** 117:4
**searched** 43:5
**second** 26:14
  36:13 55:1,4
  59:22 77:14
  91:18 97:14
  114:4,9,25
**secondly** 105:11
**section** 8:22,25
  10:23 27:13
  72:19 75:18
  76:11 79:14
  97:18
**security** 15:16
  33:9
**see** 5:20 6:6
  12:18 20:7
  24:18 37:4
  38:17,19 42:22
  45:20 51:13
  55:8 76:13
  100:18 101:13
  103:11 104:24
  106:16 110:2
  111:5
**seeing** 29:25
  106:3
**seek** 38:5
**seeking** 6:14
  21:18 95:22
**selected** 95:18
**sell** 9:6
**selling** 8:23 9:3
**sense** 28:16
  41:20 43:11,17
  59:13 64:25
**sensitive** 45:9
**sent** 5:9 27:21
  28:6 74:3
**sentence** 7:11
  70:22 80:2
  85:10,25 86:20
**separate** 13:3,5
  13:12,15,16,19
  13:20 14:11,22

15:2 16:19,19
16:20,23 17:3
17:5,9,15,17
18:4,22 19:13
26:15 31:25
33:11 34:1,2
34:22 46:14,15
47:13,16 48:16
50:14 51:19
53:8 54:10
62:25 98:3
108:2 109:7
**separately** 14:24
  26:18 31:21
  63:12 67:1
**service** 8:24
**services** 65:10
**set** 6:1 65:14
  72:20 98:16
  108:7
**sets** 78:10
**settlement** 1:3
  5:6 8:14 12:5
  20:15 21:4
  22:10,19 23:17
  26:4 27:2
  31:12 34:12
  35:15 38:3
  39:8 41:9,17
  43:6 65:6,8,15
  66:5 71:6,21
  71:24 86:7
  91:12 100:18
  104:1,9 109:17
  111:10,14
**seven-page**
  92:21
**shareholder**
  108:18
**shindig** 74:12
**shoe** 35:10
**shop** 47:20
**shorthand** 9:16
**show** 35:14
  107:25 108:12

108:24 109:7
113:22
**showed** 61:12
**shown** 43:13
  109:4,6
**shows** 95:4
**shut** 74:13
**side** 23:20,24
  26:3 68:5 92:3
**sides** 21:17 23:5
  23:7 25:7 40:6
  56:21 96:8
**sides'** 96:4
**sign** 115:13
**signature** 117:4
**signed** 61:18,22
  103:19
**significant** 7:5
**simple** 8:13
  40:19
**simply** 19:25
  30:5 40:19
  56:21 99:19
**sine** 116:13
**single** 15:6
**sitting** 39:18
**situation** 43:7
  53:17,25
  112:11
**situations** 19:17
  109:21
**six** 107:23
**size** 35:10,11
**Slide** 43:13
**slightly** 105:5
  109:11
**Social** 15:16
**sold** 9:8 11:11
  11:19
**sole** 55:21
**Solutions** 3:4,6
**somebody** 33:21
  42:12 83:19
  86:17 87:21
  102:21 106:22

114:24 115:12
115:17
**somebody's**
  83:7 112:21
**something's**
  58:18
**sorry** 28:13
  55:25
**sort** 9:17 12:20
  12:21 13:22
  16:20 88:24
**sought** 22:20
**sound** 5:24
**sounds** 44:3
  55:11
**South** 44:15
**southern** 60:20
**Southwick** 86:4
**Southwick's**
  97:1
**space** 16:22
**speak** 7:22,23
  14:25 73:13
**specific** 10:6
  38:13 45:23,23
  60:10 110:1
**specifically**
  56:16 61:9,13
  71:17,18 88:14
  112:2
**spill** 74:21,22,23
  75:5 77:13
  78:5 79:22
  97:25 101:7,7
  103:9 112:9,19
**spite** 104:22
**staff** 30:1
**stage** 6:1
**Stamp** 70:18
**standpoint**
  19:15 56:2
**start** 7:17
  101:24 102:9
**started** 37:10
**startup** 75:7,12

**state** 46:24 47:9
  47:10,11,14,17
  60:19,20 62:20
  117:6
**statement** 76:24
  79:23 102:22
**statements** 90:8
  98:16,19,22
  99:9 112:5
**statute** 117:12
**Steering** 3:7,9
  3:11
**stenotype** 117:8
**step** 20:14,16
  22:9 25:9 99:7
  99:13
**STEPHEN** 2:2
**steps** 21:8
**Steve** 10:5 15:8
  25:18 29:9
  67:23 68:12
  84:22 107:11
  110:15
**Steve's** 27:16
  71:10 94:6
**stop** 32:2 46:9
  46:18 52:17,17
**store** 14:6 15:22
  18:5 31:17
  33:19 102:6
**stores** 17:13
  18:3
**stream** 68:7
**street** 1:11
  102:14
**strongly** 72:21
**structure** 12:14
  63:2,6 64:24
**structured**
  100:19,20
**struggling** 37:14
  38:3
**stuff** 11:19
  101:8 106:22
**subject** 24:16

subjective 26:7
  83:17 97:10
  100:4,14
submission
  20:16 84:23
submissions
  6:18 20:13
  96:11
submit 83:20
  92:11,20
  115:19
submits 102:21
submitted 27:24
  30:19 76:16
  103:19 115:17
subparts 9:4
subsequently
  78:6
subsidiaries
  17:8 60:18
  68:21 69:3,4
  69:25
subsidiary
  17:11,13,18
  48:19 50:2
  61:2,16,23
  62:24 64:4
  66:21 67:4
substance 28:4
sudden 114:24
sufficient 70:11
  116:10
suggest 24:6
suggesting
  24:10 25:12
  30:24 39:9,12
  39:15 51:10
  86:12
suggestion
  56:15 85:7
sum 70:25
summer 74:8
supervision
  117:9
supplement

27:16
suppliers 102:11
supplies 102:10
supply 28:9
support 33:1
  71:20 109:4
  112:5
supposed 13:11
  15:7 44:24
  115:2
sure 5:17 10:3
  13:2 37:14
  39:9 40:20,23
  80:7 88:9
  98:18 108:11
suspend 76:3
suspended
  77:12 78:6
suspending 77:5
suspicious 87:20
  114:19
sworn 112:4
system 84:7

T

T 2:7
take 7:16 9:20
  9:24 10:1
  20:15 72:4
  85:19 99:8
  101:2,8 103:4
  112:22 113:4
taken 33:13
  117:7
takes 60:25
talk 45:2,3 55:2
  86:6
talked 75:3 97:1
  99:1,21 105:22
talking 10:6,22
  15:10 19:6
  21:18 25:22
  38:14 51:3
  64:18 65:21
  66:2 72:10

96:22 104:13
talks 79:14
  91:13 97:20
tank 18:2
tanks 17:12
taught 24:7
tax 12:24 14:17
  14:18 15:10,20
  18:21 19:8
  48:8,10,13,25
  50:14 58:12
taxes 14:17
Taxpayer 53:3,7
  53:19,21 54:7
  54:12
teaches 25:5
team 74:19
TED 2:22
tell 88:13 100:24
  102:22
telling 58:24
ten 28:7 33:21
  69:3
terms 5:5 25:9
  34:24 62:11
  63:15 65:21
  99:2 109:16
test 9:11,16
  11:12 12:4,5
  97:7,12 99:19
tests 8:22
Thank 116:16
they'd 49:14
thing 6:1 11:25
  21:19 36:8
  62:22 71:14
  91:18 92:15,18
  106:13 109:10
  111:19
things 7:25
  10:10 21:9,12
  21:13 22:20
  31:5 38:24
  57:18 64:3
  105:2,17

115:22
think 5:15 7:7
  8:5,13,14,18
  9:1 10:8 11:23
  12:17 13:1
  16:3 17:1,22
  20:6,21 21:20
  22:17,23,25
  23:2,12 24:15
  25:7,25 26:18
  26:20,22 27:10
  27:12 31:10,17
  32:3,4,17,21
  32:22,25 34:11
  35:22,25 36:1
  36:1,6 37:8,19
  39:1,5,5,25
  40:2,18 41:8
  43:21 44:5
  49:7 51:17,19
  52:8,14,20
  53:18 54:13,17
  55:22 56:5,10
  56:11 57:5,7
  57:23,24 59:2
  61:5 62:10
  65:6 66:4,5,8
  66:11 67:6,6,7
  72:5,7,15,21
  76:19 77:1,20
  79:10,23 83:13
  87:11,18,25
  96:19 97:16
  100:11,22,25
  101:4 104:12
  104:21 105:2,4
  105:11,12,13
  107:17 110:13
  110:21,25
  115:6,11,16,22
  116:9
thinking 26:19
  58:20 96:17
third 77:14 81:8
THOMASSIE

2:9
thought 28:13
  40:4 77:3,17
  77:22
thousand 30:18
  100:12 101:17
three 101:16
  102:2
time 7:11 21:3
  22:24 24:7
  25:7 27:20
  28:23 56:3
  74:20 78:4,7
  80:5 81:23,25
  82:5,7 91:11
  91:17,17 102:5
  107:5 114:20
times 43:7 111:2
TIN 12:16 32:23
  33:7 34:22
  35:20 36:8
  40:11 52:7,7,9
  55:7 56:17
TINs 12:19
  13:16 16:19,19
  35:25
title 44:16,17
  71:13 108:6,16
  113:23
today 6:11 7:3
  24:1 32:17,20
  35:2,13 45:4
  56:16 58:4
  96:22 105:14
  105:22
TOM 3:2
TOMMY 2:9
top 26:19
total 71:1 78:9
totality 58:10
  116:6
trade-off 65:1
  65:21 66:1
traded 71:18
transactions

30:3
**transcribed** 117:9
**transcript** 117:3 117:10,11,11
**transparency** 12:2
**transparent** 38:15
**treat** 75:11 76:7
**treated** 12:24 13:4 16:15 114:14
**treating** 114:22
**tremendous** 104:25
**trial** 103:3
**tries** 29:10 72:4
**true** 19:17 79:23 94:10 108:25 117:9
**try** 57:13 100:14 103:7 107:22
**trying** 6:23 8:15 12:14 16:12 25:21 37:4 38:17 39:19 41:3 56:6 57:15,23 61:14 65:22 73:10 85:11 104:21
**twice** 67:18
**two** 9:4 15:21 16:3,6,9,15 19:10,13,20,20 20:1 25:4 28:22 34:1,5 60:7,18 67:2 81:12 88:19,22 88:24 90:14 96:19 98:1,9 101:16 102:2 105:2,23
**type** 91:24 97:6 98:25

**types** 25:21

**U**
**ultimate** 109:25
**ultimately** 23:9 23:16
**underlies** 96:17 104:4
**underlying** 104:10
**understand** 10:21 19:4,9 20:4 28:16 39:7 45:8 53:24 54:25 58:9 59:11,20 72:8,25 73:11 78:3 98:2,12 98:13 99:15,25 101:9 103:6,13 104:1,5,7 105:3,7 113:8
**understanding** 23:3 59:6 117:10
**understood** 25:15 36:23 76:22
**undertake** 97:10
**universe** 106:2,2 107:7
**unnecessary** 10:13
**uphold** 111:18
**use** 30:21 33:8 35:20 50:2 92:9
**useful** 56:13
**users** 9:7,9
**uses** 86:9,10

**V**
**v.2** 4:5 5:12
**v.4** 4:8 7:18 74:15
**v.5** 4:12 107:9

**vacation** 112:25 113:2
**valid** 117:3
**value** 70:12
**variable** 114:15
**variety** 101:15
**various** 25:14 116:5
**vendors** 37:13
**verify** 10:19
**version** 56:22 57:1 74:3 77:14,19 78:1 78:2 79:11 93:24
**versus** 101:7 103:9
**view** 25:24 30:5 63:19 96:7 100:9 106:6,18 106:19,24 111:21
**views** 55:23
**voice** 13:23

**W**
**W-2** 108:2 109:7 113:23
**wait** 45:18 49:4 49:25 80:19 88:22 89:5 114:25
**walk** 56:16
**want** 5:17,20 6:4 6:15 7:6,13,25 8:2,25 10:1,5 11:17,17 12:2 27:13,16 28:8 28:17 29:20 30:12 33:8 37:3 39:2 43:20 45:20 46:3 49:14,18 49:19 51:22 55:2 57:9

58:19 59:22 73:17,19 75:20 75:20 78:17 84:6,8 93:23 96:16 100:24 104:6,23 105:2 106:9 107:14 107:18 114:25 115:19 116:7,8 116:8
**wanted** 7:22 13:23 21:17 71:15 80:24 104:13 105:9 105:25 107:3
**wants** 50:12 69:25
**wasn't** 9:14 29:1
**waste** 7:10
**way** 6:5 13:15 16:18 21:9 27:3,5,6,10,12 30:21 32:18 42:11,13 61:24 63:22 64:18 65:13,14 67:13 68:4 70:11 72:19 84:20 102:16,20 106:7 108:23 111:6
**ways** 21:11 90:14 102:17
**we'll** 7:9 24:3 28:9 46:9 75:14 83:20 116:14
**we're** 5:17,18 6:13,23 15:6 17:2 19:14 24:1 29:21 32:17 35:2 38:14 40:24 41:6,8,15 44:24 46:19

52:9 57:15 58:4,4,6,16,17 59:4,5,13 64:19 72:8 80:6 92:16 93:25 94:3 95:25 96:22 104:17 105:16 106:1,2,3,5,21 107:4 113:7,11 113:12,19
**we've** 5:4 20:12 30:18 37:5,15 38:12,13,15 40:23 43:4 44:13 45:13 60:3,5,9 73:12 73:20 74:19 75:5 96:13 97:4 99:4,14 103:3,18,19 104:3,8 105:14 106:20 108:24 109:4,12 116:4 116:10
**WEDNESDAY** 1:12
**week** 58:20,22
**welcome** 37:19
**Wendy** 2:12 7:22 10:22 15:8 25:22 31:15 32:4,18 38:7 42:20 88:4 93:14
**Wendy's** 26:14
**weren't** 115:2
**whatsoever** 114:12,16
**wheel** 6:24
**whichever** 49:17
**withdraw** 5:22
**wondering** 9:20 38:24
**word** 43:6

Claims Administration Panel Meeting
Deepwater Horizon Economic & Property Damages Settlement

Page 135

| | | | |
|---|---|---|---|
| 29:6 31:22<br>55:22<br>**work** 20:24<br>43:23 57:20<br>102:17<br>**worked** 67:14<br>**working** 28:21<br>64:22<br>**works** 33:12<br>60:18,20 104:9<br>**write** 92:16<br>**writing** 34:10<br>36:21 92:21<br>107:21 108:21<br>**written** 48:22<br>59:2 63:23<br>**wrote** 61:13<br>71:14<br><br>**X**<br><br>**X** 34:23<br><br>**Y**<br><br>**Y** 34:23<br>**yeah** 8:11 14:3<br>16:12 19:2,2<br>19:19 37:8<br>38:10 39:16,21<br>40:9,14,18<br>44:10 45:20<br>50:7 52:22<br>53:1,15 55:16<br>62:10 65:25<br>68:4 73:15<br>78:21 84:1<br>93:17<br>**year** 44:8 96:10<br>102:24 112:25<br>113:1<br>**years** 25:4 28:22<br>33:22 47:17<br>101:16,16<br>**yellow** 46:13,14<br>**Yep** 10:25 11:10<br>14:9,14 89:8<br>114:7 | **yields** 99:20<br><br>**Z**<br><br>**Z** 17:11 34:23<br><br>**0**<br><br>**024444** 70:18<br><br>**1**<br><br>**1** 4:4 5:11 57:16<br>89:15 91:11<br>**1-A** 88:25<br>**1-B** 88:25<br>**1.2** 8:22 72:19<br>**1.2.1** 8:25<br>**100-member**<br>102:1<br>**1100** 43:5<br>**11th** 1:10 76:16<br>**12** 91:14<br>**13th** 27:21 28:8<br>70:14,16<br>**1434** 117:14<br>**15** 43:10<br>**170** 59:10<br>**171** 49:13<br>**1800** 43:10<br>**1st** 74:11<br><br>**2**<br><br>**2** 4:7 7:18 116:6<br>**2's** 89:1<br>**2-A** 88:25<br>**2-B** 11:3 88:25<br>**2-B5** 75:18 77:8<br>**2-B5-C** 76:11<br>**2-D3** 79:14<br>**20** 91:13<br>**200** 59:10<br>**2010** 74:8,9<br>80:12 82:8,24<br>83:2 85:13,15<br>85:22 86:16<br>90:11 91:13,14<br>95:17,25<br>**2012** 27:21 28:8 | 61:12 70:22<br>91:14<br>**2013** 70:15<br>**2014** 1:12<br>**20th** 78:6<br>**276** 4:5 5:12<br><br>**3**<br><br>**3** 4:11 41:24<br>**3-A** 89:1<br>**3-B** 89:1<br>**31** 4:18<br>**354** 4:8 7:18 8:6<br>10:22 57:6<br>73:24 74:3,15<br>74:24 79:10<br>**363** 4:12 78:17<br>107:9 111:8,12<br>**365** 74:12,15<br>75:5 76:4<br><br>**4**<br><br>**4** 4:16 41:15<br>73:1,19 74:3<br>79:11 93:24<br>94:24<br>**438** 27:13<br>**45** 70:19<br>**490** 4:17 8:6<br>20:23 51:3,6<br>56:20 60:15<br>70:15,17 73:19<br>73:22 78:15<br>79:14 93:25<br>**495** 69:24 99:5,9<br>103:19<br>**4B** 97:2,8 99:17<br>103:24 105:4<br>**4C** 68:10 69:22<br>69:23 85:1,9<br>85:23 87:10,21<br>88:18 90:19<br>91:1 95:2,7<br>97:18 99:18<br>103:24 111:14<br>114:20 115:21 | **5**<br><br>**5** 4:6,19 27:7<br>31:20 41:16<br>62:1 71:13<br>80:9,25 84:25<br>86:22 88:7,16<br>89:6,12,16<br>94:7,10 95:3<br>116:6<br>**50** 50:13,15<br>**500** 43:4,10<br>**503** 4:20 8:7<br>12:21 13:7<br>51:7 60:15<br>61:8 72:4<br>78:15<br>**59156** 111:7<br><br>**6**<br><br>**601** 1:11<br><br>**7**<br><br>**7** 4:10<br>**70130** 1:11<br>**71** 4:22<br>**78** 4:14<br>**7th** 70:22<br><br>**8**<br><br>**8** 112:1,15<br>**80270** 111:12<br>**8A** 112:10<br><br>**9**<br><br>**9** 1:12<br>**9:00** 1:12<br>**90** 10:14 11:21<br>73:21 |