# MEMORANDUM

**To:** Claims Administrator

**From:** Class Counsel

**Re:** Multi-Facility Business Claims
*Policy No. 490*

**Date:** April 23, 2014

      Class Counsel respectfully submit the following objections to the Proposed Multi-Facility Policy issued on April 16, 2014:

### Requirement to Submit Separate Claims by Wholly-Owned Subsidiaries

      The entire intent and purpose of the Multi-Facility Framework was to reduce the burden on Claimants and to provide them with greater optionality. There is absolutely nothing in Exhibit 5 or anywhere else within the Settlement Agreement which would dictate that the options available to Multi-Facility Businesses are limited "to the actual owner, lessee and/or operator of the facility(ies) at issue," that a corporate parent is not entitled to pursue a Multi-Facility claim for wholly-owned subsidiaries and/or their facilities, or that the Program should refuse to "consider multiple Entities that file a consolidated tax return part of the same Multi-Facility Business if the Entities maintain separate TINs." This is entirely inconsistent with the nature, structure, spirit and actual terms of Exhibit 5, as well as Sections 4.3.7 and 4.3.8, and the broad provisions of Section 10.1 and Exhibit 26 Section 2 which expressly release both "corporate parents" and "subsidiaries". Indeed, the *quid pro quo* that was struck between Class Counsel and BP toward the end of the negotiations was that all parents and subsidiaries would be released in exchange for the flexibility of those businesses to file Multi-Facility Claims.

      Neither Section 5.3.2, Section 5.3.3, Section 38.15, Exhibit 4 nor Exhibit 5 in any way dictate or require a Claiming Entity to submit separate additional Claims for each of its affiliates or subsidiaries. (Nor does Section 1.2, nor Section 38.63.)

      The word used in Exhibit 5 is "Business". There is no reference to the term "Entity" nor any identification, classification or separation of businesses or their facilities according to either a formal structure or a separate Tax Identification Number (TIN). Nor is there any reference, restriction or limitation to "the actual owner, lessee and/or operator of" the facility or facilities at issue.

      By definition, the owner of a business or subsidiary is also the ("actual") owner of any and all of its facilities.

      Moreover, the express and specific ability to file a "consolidated" claim makes it clear that a single Claiming Entity (or individual Business Claimant) would be permitted to file a

Claim based on that Entity's consolidated Profit & Loss Statements, irrespective of its subsidiary businesses or facilities.

Additionally, this Proposed Policy is inconsistent with Policy No. 328(f) and (g), which exclude revenues from intercompany sales and related party transactions. For revenue purposes, the Program is effectively treating all affiliated businesses as one single Claiming Entity, whereas the Program is in this case, by contrast, effectively treating each of the affiliated businesses as a separate and distinct Claiming Entities.

Finally, there is simply no reason or basis to unnecessarily burden Claimants (or the Program itself) with the obligation to file numerous, voluminous and unnecessary Claims. It is not in any way "Claimant-friendly" and serves no purpose in light of the Release.

Class Counsel respectfully note that the background leading to the promulgation of this Proposed Policy is extremely troubling. Initially, Class Counsel received reports that BrownGreer was telling Claimants that they needed to withdraw their existing Claims, and submit separate new Claims for each affiliate or subsidiary. When Class Counsel addressed with the Claims Administrator and his staff, Class Counsel were assured that there was no such formal policy. It was believed that a preliminary decision may have been made by BrownGreer based on "requirements" of the Release. Class Counsel pointed out, however, that Section 10.1 and Exhibit 26 Section 2 released both "corporate parents" and "subsidiaries". There was also some speculation that the decision may have been related to the definition of "Entity". But Class Counsel pointed out that a "Business Claimant" or "Business Economic Loss Claimant" under Section 38.15 of the Settlement Agreement was not necessarily an Entity. While the Claims Administrator and his staff were further looking into the situation, Class Counsel continued to get reports that BrownGreer was continuing to instruct Claimants to withdraw their existing Claims and submit separate additional new Claims on behalf of each subsidiary. BrownGreer, at that time, invoked Policy No. 354, which simply discusses the requirement of each Claimant to include its current TIN, and says nothing about the necessity to file multiple claims for each and every related business entity that has a separate Tax Identification Number. (And, notably, neither Section 1.2, Section 5.3.2, Section 5.3.3, Section 38.15, Section 38.20, nor Section 38.63 define a Business, a Claimant, nor an Entity in terms of its Tax ID.) When Class Counsel pointed this out, the Claims Administrator advised that the Program was still considering the issue and working on a formal Proposed Policy. Class Counsel then heard a rumor that the "BrownGreer Policy" was being driven by IT or other administrative constraints of the BrownGreer claims processing system. While this rumor was neither confirmed nor denied, Class Counsel repeatedly expressed the strong (and correct) sentiment that Claimants could not and should not be unduly burdened (and certainly not substantively prejudiced) due to some problem with the BrownGreer IT system. (Particularly in light of Sections 4.3.7 and 4.3.8 and the fact that IBM had been retained to substantially revise and improve the Program's IT system.) Despite several requests, Class Counsel have still never been provided with an explanation of: Where this policy comes from? To what extent was BrownGreer involved in developing the policy? What specific language in the Settlement Agreement supports or compels the policy? Why the policy is necessary in light of the release of parents and subsidiaries? Or to what extent the policy may have been driven by IT and/or other limitations in the BrownGreer processing system?

**Limitation on the Ability to Submit Facility-by-Facility Claims using Contemporaneous P&Ls**

Sections II(C)(3) and II(C)(4) of the Proposed Policy refer to businesses that did or did not "maintain separate contemporaneous profit and loss statements for each Facility in the Gulf Coast Areas during the Benchmark Period and 2010." This fails to give the full intended and agreed meaning and application of "Contemporaneous" as defined in Section 38.38 of the Settlement Agreement:

> … "contemporaneous" or "contemporaneously" prepared evidence or documentation, even if not proximate in time to the event or occurrence to which it relates, shall include (1) documentation that is based on or derived from other data, information, or business records created at or about the time of the event, occurrence or item in question, (2) a statement that is consistent with documentation created at or about the time of the event, occurrence or item in question, or (3) would support a reasonable inference that such event, occurrence, or other item in question actually occurred.

**Limitation on the Ability to File Claims for Some, but not All, Facilities**

With respect to Section II(C)(1) of the Proposed Policy, and as set forth in Class Counsel's Memorandum of January 13, 2014, Claimants should be able to "file separate claims for one, some, or all of its facilities located in the Gulf Coast Area," as set forth in Exhibit 5.[1]

---

[1] Class Counsel understand that individual Facilities with different Causation standards and/or RTPs cannot be grouped together (beyond what is expressly permitted in Exhibit 5 with respect to Consolidated claims). However, as a practical / mechanical matter, some Facilities with the same Causation standard and RTP can be grouped together for efficiency or other purposes.