<div style="border: 1px solid; background: #cad9b8; padding: 10px; text-align: center;">

**REQUEST FOR INPUT**

**REQUEST ID 517: BUSINESS ECONOMIC LOSS: EVALUATION OF BUSINESSES WITH SUBSTANTIVE CHANGES IN OWNERSHIP OR OPERATING ACTIVITIES**

</div>

**[Class Counsel's Response – March 21, 2014]**

I. **Introduction**.

The Claims Administrator requests input from the Parties on their positions on the following issues, with citations to the provisions of the Settlement Agreement on which such positions are based. After receiving that input, the Claims Administrator will inform the Parties of the policy he has adopted on these issues. All capitalized terms used in this policy that are defined in the Settlement Agreement shall have the meanings given to them in the Settlement Agreement.

II. **Businesses with Substantive Changes in Ownership or Operating Activities**.

The Settlement Program has observed instances when a business undergoes substantive changes in business operations during the Class Period, and specifically the Benchmark Period or Compensation Period years as defined in the Settlement Agreement for general Business Economic Loss ("BEL"), Start-Up BEL, or Failed BEL claims. These substantive changes may include a change in the business's Employer Identification Number, also known as the Federal Tax Identification Number ("TIN"), a change in the ownership structure of the business, and/or a change in business activities.

The Settlement Agreement provides three frameworks within which to evaluate business claimants: general BEL, Start-Up BEL, or Failed BEL. The general BEL framework applies to business with more than 18 months of operating history. *See* S.A. Ex. 4A-B. The Start-Up BEL framework applies to businesses with fewer than 18 months of operating history at the time of the Deepwater Horizon Spill. S.A. Ex. 7. The Failed Business framework applies to claimants that after "May 1, 2010, but prior to December 31, 2011, either (i) ceased operations and wound down, or (ii) entered bankruptcy (through the filing of a petition for bankruptcy protection in a court of competent jurisdiction), or (iii) otherwise initiated or completed a liquidation of substantially all of its assets." S.A. Ex. 6. However, the Settlement Agreement does not specifically address how to evaluate businesses with substantive changes in ownership or operating activities during the Benchmark Period or Compensation Period years, or the Class Period.

III. **Multi-Facility Businesses with Consolidated Claims that Acquire or Dispose of Claiming Facilities**.

A Multi-Facility Business is "a business entity that, during the period April 1, 2010 through December 31, 2010, maintained Facilities in more than one location and had at least one Facility within the Gulf Coast Areas." S.A. Ex. 5. The Settlement Agreement permits Multi-

Facility Businesses to elect to file one consolidated claim for all Facilities located within the Gulf Coast Areas or to file separate claims for each individual Facility located within the Gulf Coast Areas.  S.A. Ex. 5.  If the Multi-Facility Business elects to file one consolidated claim, the Settlement Program will apply the Causation standard and Risk Transfer Premium of the business' Headquarters to the entire consolidated claim. S.A. Ex. 5.  If such a claimant establishes Causation, then the Settlement Program performs a consolidated Compensation calculation using financials from all Claiming Facilities, as prescribed by Exhibits 4C and 5 of the Settlement Agreement.

Neither the Multi-Facility Business framework, found in Exhibit 5 of the Settlement Agreement, nor the Compensation framework, found in Exhibit 4C, specifically address how to evaluate Multi-Facility Businesses that acquire or dispose of claiming Facilities during the Benchmark Period or Compensation Period years, or the Class Period.  The Settlement Program previously adopted Policy 174 (Facilities included in a Consolidated Multi-Facility Business Claim), which states, "[i]f a Multi-Facility business elects to file as a consolidated claim, containing locations that ceased operations before the Spill, we will include all locations in the consolidated claim per the language of the Settlement Agreement."  This policy, however, does not address how to evaluate Multi-Facility Businesses that acquire a Facility through a stock or asset purchase during the Benchmark Period or Compensation Period years, or the Class Period.

> [If the Claiming Entity's Headquarters and all Facilities were located within the Gulf Coast Area, then the Entity can elect to file a Consolidated Claim, based on consolidated financials, at the Entity level, irrespective of whether or what individual Facilities may have been added or lost during the Benchmark and/or Compensation Periods.]
>
> [For any other Entity that is able to file a Consolidated Claim for All Facilities Located in the Gulf Coast Area under the provisions of Exhibit 5, the Entity can elect to file a Consolidated Claim for All Facilities that were located within the Gulf Coast Area during the Benchmark and/or Compensation Periods on a collective / consolidated basis, (irrespective of whether or what individual Facilities were added or lost during the Benchmark and/or Compensation Periods).]

**IV.**   **The Questions Presented.**

The Claims Administrator seeks input from the Parties on the questions set forth below.  Each hypothetical scenario is based on an actual claim.  The questions focus on several areas:

- Who is entitled to file a claim when a business is purchased or sold in the Benchmark Period, Compensation Period or after the Compensation Period but in the Class Period?  And does this answer differ if the sale is via a stock purchase vs. a sale of assets of the business?

- Based on who can file a claim, what is the Framework that should govern how the claim is processed: General BEL, Start-Up of Failed Business?

- Based on the nature of the claim, and who can file it, what documentation is required to be submitted by the Claimant, and how should situations be addressed where the documentation is not available?

- Are claimant submitted P&Ls required to be amended to take account of changes in the operations of the business by way of purchase or sales, business closures, and/or changes in business operating activities?

A. *Hypothetical Scenario #1*: The business is a dentistry office in Economic Loss Zone C that provided profit and loss statements for January 2009 through March 2011. The business was sold in April 2011, which is after the Compensation Period for BEL claim but during the Class Period. Both the previous business owner (*i.e.*, the "Seller") and the current business owner (*i.e.*, the "Buyer") are Class Members, as both owned the business during the Class Period, and both have filed claims.

1. Business Sold After Compensation Period but within the Class

    (a) Who has a compensable claim for the business's losses: the Buyer, the Seller, or both? And does this answer differ if the sale is via a stock purchase vs. a sale of assets of the business?

    **Answer:** Either the Buyer or Seller could have a compensable claim. When the stock of the Claimant Entity has been sold, there has been no change in the Claimant; the Claimant Entity would retain the Claim, irrespective of the ownership of the stock in the Entity. If there was an asset sale after the Compensation Period ended, ownership of the Claim depends on whether the claim was transferred as part of the asset sale. If there was no transfer of the Claim as part of the sale, the Claim would remain with the Seller. A sale of the entire business, with no material change in the business operation, should not be limited to the Failed Business Framework. (By requiring full documentation regarding the transfer, there is no risk that the Seller and Buyer will file competing claims.)

    (b) If the Buyer has a compensable claim, should the Settlement Program evaluate it as a general BEL claim or a Start-Up BEL claim?

    **Answer:** The Buyer's claim should be evaluated as a general BEL Claim if he can document the Claim with financials from the prior ownership.

    **Explanation:** According to Policy 354, version 3, "[a] newly-acquired business typically will be treated as a General BEL claim if the claimant can document the claim with financials from the prior ownership to establish operating history for a Benchmark Period that includes all months for at least 2009, a 2010 Compensation Period, and 2011(if necessary for the claimant to establish Causation), as required by the framework." Policy 354 further

3

states: "if the business cannot obtain the financials from the prior ownership, the Claims Administrator may evaluate the claim as a Start-Up BEL claim." In this hypothetical the Buyer would not be able to meet the requirements to establish a valid Start-Up BEL Claim. For a business to meet the requirements of Start-Up Business, it must demonstrate that the business incurred Start-Up expenses before April 20, 2010. Buyer will be unable to meet this requirement, since under this particular hypothetical, he bought the business in April 2011.

(c) If the Seller has a compensable claim, should the Settlement Program evaluate it as a general BEL claim or a Failed BEL claim?

**Answer:** The Seller's claim should be evaluated as a regular BEL Claim if he can fulfill the document requirements set out in Exhibit 4A. If the business changed its fundamental character, or the Seller cannot document the claim, he may file a Failed Business Claim or a Failed Start-Up Business Claim (if Seller's business began on or after November 1, 2008).

(d) What documents should the Settlement Program consider and require for the claimant(s) with compensable claim(s)? For example, should the claimants with compensable claims be required to provide documentation for the portions of the Benchmark Period years, 2010 and 2011 for which they did not own the business? Are P&Ls required to be amended to include the results of operations during this period?

**Answer & Explanation:** The Settlement Program should consider and require only those required documents listed in Exhibit 4A of the Settlement Agreement. The Settlement Program may request the claimant provide documentation for the portions of the benchmark period, 2010, and 2011 (if applicable) for which they did not own the business. However, according to Policy 354 "if the business cannot obtain the financials from the prior ownership, the Claims Administrator may evaluate the claim as a Start-Up BEL claim." For a claim by the Seller, the Settlement Program should consider and require only those documents listed in Exhibits 4A and 6 as required documents for a Failed BEL claim or Failed Start-Up BEL Claim.

There is no provision in the Settlement Agreement requiring the P&Ls to be amended to include operations during the period prior to ownership. To the contrary, Policy 354 allowing the buyer to use P&Ls for periods prior to his ownership alleviates any need to amend the P&Ls for a claim by the Buyer.

(e) If the Buyer has a claim, how can they establish Causation, which is not presumed? Can they use the monthly revenues of the business before they purchased the business to attempt to pass the Revenue-Pattern Causation Tests? Are P&Ls required to be amended to include the results of operations during this period?

4

435426
2/24/14

> **Answer:** As long as there is no substantive change in business operations and the Buyer can document the claim with financials from the prior ownership to establish operating history for a Benchmark Period that includes all months for at least 2009, a 2010 Compensation Period, and 2011 (if needed necessary for the claimant to establish Causation), the Buyer can use the monthly revenues of the business before they purchased the business to attempt to pass the Revenue-Pattern Causation Tests. (Policy 354, v. 3).
>
> Yes.
>
> No, P&Ls should not be amended to include operations during the period prior to ownership.
>
> **Explanation:** Pursuant to Policy 354, that claimant can provide financials from the prior ownership to establish operating history. There is no need to amend, or Settlement Agreement provision allowing the amendment of the Buyer's P&Ls to reflect operations prior to its ownership and operation of the business.

(f) If the Settlement Program evaluates the Seller as a general BEL claim, how can the Seller establish Causation, which is not presumed? Can they use the monthly revenues of the business after they purchased the business to attempt to pass the Revenue-Pattern Causation Tests?

> **Answer:** Yes, the Seller can use post-sale P&Ls, so long as the business did not change its fundamental character.

2. Business Sold During the Compensation Period (2010)

   (a) Who has a compensable claim for the business's losses: the Buyer, the Seller, or both? And does this answer differ if the sale is via a stock purchase vs. a sale of assets of the business?

   > **Answer:** With respect to a stock purchase, *see* Answer to Hypothetical #1, Question 1(a) above. With respect to an asset purchase: In the first instance, both the Selling Entity and the Purchasing Entity would be Class Members, and each / both have standing under the Settlement Agreement to make a BEL Claim. Ideally, the purchase agreement and/or associated transaction documents would clearly establish that either the Selling Entity or the Purchasing Entity owns the right to make the business' Claim. In the alternative, one could argue that each / both Entities have the right to a BEL Claim with full BEL Compensation under Exhibit 4C, assuming that each / both Entities can provide the required documentation. Without prejudicing the arguments or rights of any individual Class Member, Class Counsel understand that the Claims Administrator might decide that it might make sense, in that situation, to "split" the Total Compensation Amount between

5

the Selling Entity and the Purchasing Entity on some rational and equitable basis.

(b) If the Buyer has a compensable claim, should the Settlement Program evaluate it as a general BEL claim or a Start-Up BEL claim?

**Answer:** The Buyer should have the opportunity to submit a general BEL Claim. See answer and explanation to Hypothetical #1, Question 1b, above.

(c) If the Seller has a compensable claim, should the Settlement Program evaluate it as a general BEL claim or a Failed BEL claim?

**Answer & Explanation:** The Seller should have the opportunity to submit a general BEL Claim. See answer and explanation to Hypothetical #1, Question 1c, above.

(d) What documents should the Settlement Program consider and require for the claimant(s) with compensable claim(s)? For example, should the claimants with compensable claims be required to provide documentation for the portions of the Benchmark Period years, 2010 and 2011 for which they did not own the business? Are P&Ls required to be amended to include the results of operations during this period?

**Answer & Explanation:** See answer and explanation to Hypothetical #1, Question 1d, above.

(e) If the Buyer has a claim, how can they establish Causation, which is not presumed? Can they use the monthly revenues of the business before they purchased the business to attempt to pass the Revenue-Pattern Causation tests?

**Answer & Explanation:** See answer and explanation to Hypothetical #1, Question 1e, above.

(f) If the Settlement Program evaluates the Seller as a general BEL claim, how can the Seller establish Causation, which is not presumed? Can they use the monthly revenues of the business after they sold the business to attempt to pass the Revenue-Pattern Causation tests?

**Answer & Explanation:** See answer and explanation to Hypothetical #1, Question 1f, above.

3. Sale During the Benchmark Years

(a) If the Buyer has a compensable claim, should the Settlement Program evaluate it as a general BEL claim or a Start-Up BEL claim?

6

**Answer:** The Buyer's claim could be evaluated as a general BEL Claim if they can document the claim with financials from the prior ownership; if not, the Buyer may qualify for a Start-Up Claim.  Furthermore, if the business began after November 1, 2008, pursuant to Section 4.3.8 of the Settlement Agreement (which here is plausible since the financial records begin in January 2009), the Settlement Program should evaluate the claim both as a General BEL claim and a Start-Up Claim and issue an award depending upon which methodology produces the greatest Economic Damage Compensation Amount.

**Explanation:** According to the Claims Administrator's previously approved Policy #94, "If the claimant began operations on or before January 1, 2009, then it could elect to be treated as a regular business, with 2009 as the only Benchmark Period year available."  Otherwise the claimant's claim must be made as a Start-Up.  Treating Buyer's claim as a general BEL Claim is further supported by reading Policy #94 together with Policy #354 v.3 (allowing a newly-acquired business to be treated as a BEL Claim if the claimant can document the claim with financials from the prior ownership to establish operating history for a Benchmark Period that includes all months for at least 2009, a 2010 Compensation Period, and 2011(if necessary for the claimant to establish Causation), as required by the framework.

(b) What documents should the Settlement Program consider and require if the claimant has a compensable claim?  For example, should the Buyer be required to provide documentation for the portions of the Benchmark Period years for which it did not own the business?  Are P&Ls required to be amended to include the results of operations during this period?

**Answer & Explanation:**  For a general BEL Claim by the Buyer, the Settlement Program should consider and require only those required documents listed in Exhibit 4A of the Settlement Agreement.  The Settlement Program may request the claimant provide documentation for the portions of the benchmark period, 2010, and 2011 (if applicable) for which they did not own the business; however, according to Policy 354 "if the business cannot obtain the financials from the prior ownership, the Claims Administrator may evaluate the claim as a Start-Up BEL claim."  For a Start-Up Claim by the Buyer, the Settlement Program should consider and require only those documents listed in Exhibit 4A, as applicable, and Exhibit 7.

There is no provision in the Settlement Agreement requiring the P&Ls to be amended to include operations during the period prior to ownership.  To the contrary, Policy 354 allowing the buyer to use P&Ls for periods prior to his ownership alleviates any need to amend the P&Ls for a claim by the Buyer.

(c) If the Buyer has a claim, how can they establish Causation, which is not presumed? Can they use the monthly revenues of the business before the

7

purchased the business to attempt to pass the Revenue-Pattern Causation tests?

**Answer & Explanation:** The Buyer can establish causation using the methodology set out in Exhibit 4B to the Settlement Agreement by submitting financials from the prior ownership to establish operating history for a Benchmark Period, 2010, and/or 2011 as allowed by Policy 354.

Yes. See Policy 354.

B. *Hypothetical Scenario #2*: The claimant filed as a Multi-Facility Business for two Facilities located in Economic Loss Zone A. The claimant has owned and operated the Headquarters Facility since prior to 2007, and purchased the second Facility in June 2010. The claimant has elected to be evaluated as a consolidated claim.
1. In relation to the second Facility:

   (a) Should the Settlement Program include revenues and expenses for the second Facility in the consolidated claim calculation? Are P&Ls required to be amended to exclude the results of operations of the second Facility from the Compensation Period?

   **Answer:** Yes, the Settlement Program should include revenues and expenses for the second Facility in the consolidated claim calculation.

   No, P&Ls should not be amended to exclude the results of operations of the second Facility from the Compensation Period.

   [If more advantageous, the Claimant could elect to file an Facity-by-Facility Claim for one, some, or all of its individual Facilities, to be evaluated under its own applicable methodology.]

   **Explanation:** Under Exhibit 5 of the Settlement Agreement, a Multi-Facility Business is defined as "[a] business entity that, during the period April 1, 2010 through December 31, 2010, maintained Facilities in more than one location and had at least one Facility within the Gulf Coast Areas." The Settlement Agreement goes on to state that "[i]f the Multi-Facility Business chooses to file a consolidated claim, the Additional Multi-Facility Business documentation must be provided, and the Settlement Program shall utilize the Causation standard and RTP applicable to the Headquarters to determine the Settlement Payment that is owed with respect to the losses suffered by all Facilities located within the Gulf Coast Areas." Here, claimant clearly meets the definition of a Multi-Facility Business as it had more than one Facility within the Gulf Coast area during the period of April 1, 2010 through December 31, 2010. Because the claimant is a Multi-Facility Business which has all Facilities (including its Headquarters) in the Gulf Coast Areas and the claimant has chosen to file a consolidated claim, Exhibit 5, paragraph V.1. mandates that "compensation

8

435426
2/24/14

shall be determined as set forth in the Business Compensation Framework (Exhibit 4C)." No provision of Exhibit 4C or Exhibit 5, or any other provision of the Settlement Agreement allow the Claims Center to exclude revenue or expenses associated with any Facility of a consolidated Multi-Facility Business claim regardless of whether these revenue or expenses occurred during the Compensation Period or the Benchmark Period.

   (b) Should the Settlement Program include revenues and expenses for the second Facility in the consolidated claim calculation if the claimant cannot document the claim with the required financials from the prior ownership to establish operating history for the Benchmark Period years that includes all months for at least 2009 and a 2010 Compensation Period as required by the framework?

**Answer:** Yes.

**Explanation:** If the Claim is a Consolidated Claim for an Entity with its Headquarters and all Facilities located in the Gulf Coast Area, then you would generally use the financials of the Claiming Entity, irrespective of its individual Facilities.

Because the Claimant is a Multi-Facility Business which has all Facilities (including its Headquarters) in the Gulf Coast Areas and the claimant has chosen to file a consolidated claim, Exhibit 5, paragraph V.1., mandates that "compensation shall be determined as set forth in the Business Compensation Framework (Exhibit 4C)." No provision of Exhibit 4C or Exhibit 5, or any other provision of the Settlement Agreement allows the Settlement Program to exclude revenue or expenses associated with any Facility of a consolidated Multi-Facility Business claim regardless of whether these revenue or expenses occurred during the Compensation Period or the Benchmark Period. Moreover, the Claims Administrator's previously approved Policy 354 does not apply to an individual Facility when the claimant has filed a consolidate Multi-Facility BEL claim. Policy 354 does not apply because in a consolidated Multi-Facility claim all facilities are considered to be one business (rather than multiple individual businesses). Here the claimant's Headquarters Facility has been in operation since at least 2007; therefore, the business as a whole does not meet the definition of a Newly Acquired Business subject to Policy 354.

[If more advantageous, the Claimant could elect to file an Facity-by-Facility Claim for one, some, or all of its individual Facilities, to be evaluated under its own applicable methodology.]

2. Assume that the second Facility was purchased during the Benchmark Period years for a BEL claim.

   (a) Should the Settlement Program include revenues and expenses for the second Facility in the consolidated claim calculation?

9

435426
2/24/14

**Answer**:  Yes.

**Explanation**:  See explanation to Hypothetical #2, Question 1A, above.

[If more advantageous, the Claimant could elect to file an Facity-by-Facility Claim for one, some, or all of its individual Facilities, to be evaluated under its own applicable methodology.]

(b) Should the Settlement Program include revenues and expenses for the second Facility in the consolidated claim calculation if the claimant cannot document the claim with the required financials from the prior ownership to establish operating history for the Benchmark Period years that includes all months for at least 2009, as required by the framework?

**Answer**:  Yes.

**Explanation**:  See answer and explanation to Hypothetical #2, Question 1b, above.

[If more advantageous, the Claimant could elect to file an Facity-by-Facility Claim for one, some, or all of its individual Facilities, to be evaluated under its own applicable methodology.]

C. *Hypothetical Scenario #3*:  The claimant, located in Zone A, filed a Business Economic Loss claim.  The claimant sold its business in October 2010 and therefore did not show any income or expenses on the profit and loss statements after September 2010.  The claimant did not specify what kind of sale it was (asset sale or stock sale), but on its 2010 federal tax return, it filed two Form 6262's "Installment Sale Income," both of which indicate "Sale of Business" in the description of the property.

1. If the claimant has a compensable claim, should the Settlement Program evaluate it as a general BEL or Failed Business claim?  By selling its business and 'substantially all of its assets' does it meet the definition of a Failed Business?  If it does meet the definition, does the claimant have the choice to file under a general BEL or Failed Business framework?

**Answer**:  It appears that the business was effectively "liquidated".  Hence, the Program should likely evaluate under the Failed Business Framework.

**Note**: There may be a situation in which a business was not "liquidated", but simply transferred from one Entity to another Entity *via* an asset sale, and continued as a going concern.  In that case, the Claiming Entity should be able to

1

make a general BEL Claim.[1]

**Explanation:** The definition of a Failed Business in Exhibit 6 refers to a "liquidation". The mere transfer or sale of an ongoing business to a new Entity that continues to operate the business is not necessarily synonymous with the "liquidation" of a company that is going out of business. (*See generally* Policy No. 354 and *supra.*)

2. What documents should the Settlement Program consider and require if the claimant has a compensable claim?

    **Answer:** The documentation requirements for a Failed Business Claim are set forth in Exhibit 4A, as applicable, and Section IV of Exhibit 6 to the Settlement Agreement. No additional documents should be required.

3. If the claimant has a claim, how can they establish Causation, if this is not presumed (i.e., not Zone A)? Can they use the monthly revenues of the business after they sold the business to attempt to pass the Revenue-Pattern Causation tests?

    **Answer:** For a Failed Business Claim, the Seller could establish causation by any applicable method set forth in Section II of Exhibit 6 to the Settlement Agreement.

    **Note:** If the business were simply transferred *via* asset sale from one Entity to another, and continued as a going concern, the Claiming Entity should be given the opportunity to provide P&Ls for the business pre- and post-sale, and the Program should be able to evaluate as a general BEL Claim under Exhibit 4B.

4. In the facts above, the claimant does not have a six-consecutive month period for calculating Step 2 Compensation as required by Exhibit 4C of the Settlement Agreement. If the claimant has a compensable claim, how should the Settlement Program perform the Compensation analysis? Can the Settlement Program use the monthly revenues of the business after the claimant sold the business to calculate Compensation?

    **Answer:** A Failed Business Claim would be evaluated under Exhibit 6.

---

[1] In the first instance, both the Selling Entity and the Purchasing Entity would be Class Members, and each / both have standing under the Settlement Agreement to make a Claim. Ideally, the purchase agreement and/or associated transaction documents would clearly establish that either the Selling Entity or the Purchasing Entity owns the right to make the business' Claim. In the alternative, one could argue that each / both Entities have the right to a BEL Claim with full BEL Compensation under Exhibit 4C, assuming that each / both Entities can provide the required documentation. Without prejudicing the arguments or rights of any individual Class Member, Class Counsel understand that the Claims Administrator might decide that it might make sense, in that situation, to "split" the Total Compensation Amount between the Selling Entity and the Purchasing Entity on some rational and equitable basis.

1

435426
2/24/14

> **Note:**  If the business were simply transferred *via* asset sale from one Entity to another, and continued as a going concern, the Claiming Entity should be able to provide P&Ls for the business pre- and post-sale, and the Program should be able to evaluate as a general BEL Claim under Exhibit 4C.[2]

D. *Hypothetical Scenario #4*:  The claimant rented his short-term vacation rental property in Economic Loss Zone A to a tenant from August 2007 through August 2008.  The claimant's documentation indicates that he has not rented the property since August 2008.  His 2009 and 2010 Federal Tax Returns contain Schedule Es with zero rental income; however, the same Schedule Es show expenses for both 2009 and 2010 ($18,600 and $11,200, respectively).  The claimant has continuously owned the rental property from before August 2007 and maintains ownership today.

As such, the claimant is a Class Member pursuant to Section 1.1 of the Settlement Agreement.

1. Assume the claimant made a decision not to rent the property after August 2008.  Also assume that the claimant has satisfied the documentation requirements of Exhibit 4A of the Settlement Agreement and Causation is presumed under Exhibit 4B of the Settlement Agreement.  Does the claimant have a compensable BEL claim?

   **Answer:**  Yes, claimant has a compensable general BEL Claim.

   **Explanation:**  The assumption that Claimant made a decision not to rent the property after August 2008 should not be made since it is contrary to Claimant's business records (*e.g.* tax returns and P&Ls).  Making this assumption would be contrary to Section 4.3.8 of the Settlement Agreement requiring the Claims Administrator and his vendors to "evaluate the [claimant's] Claim Form and all supporting documentation under the terms of the Economic Damages Claim Process to produce the greatest Economic Damages Claim Amount that such information and supporting documentation allows under the terms of the Economic Damage Claim Framework."  Whether the assumption is made or not, the facts of this hypothetical require the claim to be analyzed as a general BEL Claim, as more fully explained below.

   The phrasing of this hypothetical and question suggests the Claims Administrator's consideration of two possible questions: (1) Is Causation established? And (2) is the Claimant's business a Failed Business?

---

[2] In the first instance, both the Selling Entity and the Purchasing Entity would be Class Members, and each / both have standing under the Settlement Agreement to make a Claim. Ideally, the purchase agreement and/or associated transaction documents would clearly establish that either the Selling Entity or the Purchasing Entity owns the right to make the business' Claim.  In the alternative, one could argue that each / both Entities have the right to a BEL Claim with full BEL Compensation under Exhibit 4C, assuming that each / both Entities can provide the required documentation.  Without prejudicing the arguments or rights of any individual Class Member, Class Counsel understand that the Claims Administrator might decide that it might make sense, in that situation, to "split" the Total Compensation Amount between the Selling Entity and the Purchasing Entity on some rational and equitable basis.

1

(1) The claimant's business is located in Zone A therefore, according to S.A. Ex. 4B, causation is presumed for the claimant's 2010 losses, as compared to the Benchmark Period of 2007 through 2009, per the framework set forth in S.A. Ex. 4C.

(2) The question presented appears to assume that the Claimant's business failed prior to the Compensation year. This assumption is not supported by the facts. The fact that no revenue exists in one or more periods is not determinative of whether a business is "active." On the contrary, the inclusion of expenses in the documentation and tax returns indicates this is a continuing business. While extraordinary, it is not inconceivable that a real estate rental business could have no revenue for certain periods of time. Moreover, the hypothetical does not contain any facts that would indicate Claimant's business has ever (or, more importantly, prior to December 31, 2011) (i) ceased operations and wound down, or (ii) entered bankruptcy (through the filing of a petition for bankruptcy protection in a court of competent jurisdiction), or (iii) otherwise initiated or completed a liquidation of substantially all of its assets." Therefore, according to S.A. Ex. 6, Claimant is not a Failed Business, regardless of whether the assumption is made or not, and the Claim should be processed pursuant to the general BEL Framework using the information from the Claimant's documentation.

2. Assume the claimant asserts that he made reasonable efforts to rent the property after 2008, but was unsuccessful, and the claimant has provided documentation to support this assertion. Also assume that the claimant has satisfied the documentation requirements of Exhibit 4A of the Settlement Agreement and Causation is presumed under Exhibit 4B of the Settlement Agreement. Does the claimant have a compensable BEL claim?

**Answer:** Yes.

**Explanation:** While this situation is unusual, it is proper for the Claims Administrator to assume that the claimant made reasonable efforts to rent the property and that the business continues to be a going concern – especially given the assumption that the claimant has provided documentation to support that assertion. According to the universally understood and accepted "going concern assumption," it is assumed that a business is and will continue to exist and carry out its objectives and meet its commitments. Despite the absence of revenue, the going concern assumption applies unless and until information that significantly contradicts the assumption relating to the business' inability to continue to meet its obligations as they come due without the substantial disposition of assets outside the ordinary course of business, restructuring of debt, externally forced revisions of its operations, or similar actions. There is no evidence of any of these types of conditions in this example. Therefore, since the claimant's business is located in Zone A, and causation is presumed, and considering that the general BEL framework set forth in S.A. Ex. 4C does not contain an explicit minimum

1

<span style="color:red">amount or ratio of revenue to expenses for a claim to be compensable, the claimant's claim should be processed according to the General BEL framework.</span>

435426
2/24/14