# MEMORANDUM

**To:**   Dan Balhoff

**From:** Class Counsel

**Re:**   Oyster Lease Rehabilitation Payments

**Date:** December 4, 2013


The Claims Administrator has sought guidance from the Seafood Neutral who, in turn, has asked for comments from the Parties relating to the treatment of Oyster Lease Rehabilitation Payments under the Seafood Compensation Program.


<u>An Oyster Lease Rehabilitation Payment Should be Treated as Oyster Harvesting Revenue for Purposes of Benchmark Period Income Within the Seafood Compensation Program</u>

An Oyster Lease Rehabilitation Payment should be treated as "oyster harvesting revenue" due to its nexus with Seafood Harvesting activities.[1]


<u>The Oyster Rehabilitation Payments are Treated as Income in a Claimant's Income Tax Returns</u>

The Oyster Compensation Plan allows a Claimant to establish Benchmark income from harvesting by using "Federal or state tax forms and financial information . . . to identify those components of gross revenue derived from oyster harvesting by vessel for the benchmark Period for landings in the Gulf Coast Area."

It is often the case that many of these same claimants include their Oyster Lease Rehabilitation Payments and/or grants on their Schedule C fishing/oystering gross income. The purpose of the grant payments made by the states to the harvesters was for active harvesting work to be performed in rehabilitating private leases in lieu of further distressing public or other private oyster reefs. And all payments to the harvesters for the services they provided in actively performing the rehabilitation efforts were subject to taxation.

---

[1] While that the Settlement Agreement does not expressly define "Oyster Harvesting Revenue," see the Merriam-Webster definition of "Harvest" at p.2.

Page | 1

Replanted Oysters Fall Within the "Landings" Definition

The Claims Administrator has raised the question of whether replanted oysters would comport with Policy 270's current definition of "Landings".

While Class Counsel believe that the Claims Administrator can and should make a narrow and limited exception to (or extension of) the existing definition for these purposes to the extent necessary, replanted oysters comport with the existing definition of "Landings" in Policy 270.

In Policy 270, the Claims Administrator states: "The use of 'land' in this definition informs the meaning of 'landings,' as vessels 'land' their catch at a physical, shore-side location for handling and sale."

In his Memorandum on this issue, the Claims Administrator points out that "fishermen are extracting the oysters and placing them in a new location." In other words, the fishermen are catching their oysters in one location and *landing* that oyster catch in another *physical*, and generally, *shore-side* bedding location for future *handling*. As opposed to being directed to a dock location, the oysterman is directed by the State, or other authority, to a bedding ground near shore for deposit of their catch. The only difference being that the oystermen are being paid one lump sum price (rehabilitation payment), rather than a varying catch price at a dock for their oyster harvesting efforts.

There is no definition of "harvesting" provided in the framework of the settlement, but using the definition provided by Merriam-Webster Dictionary, harvesting includes the following activity: "to remove or extract (as living cells, tissues, or organs) from culture or from a living or recently deceased body especially for transplanting."[2] By definition, transplanting oysters is a harvesting activity for which the Claimants should be compensated under the settlement.

The Claimants Who Participated in the Oyster Rehabilitation Programs are Oystermen

The Claimants who are seeking the Program's consent to treat the Oyster Relay Payments as Oyster Harvesting revenue are oystermen in that none of the Claimants are seeking reprieve from the other Seafood Compensation Program documentation requirements.

As the Claims Administrator points out, the Gulf States of Louisiana, Mississippi, and Alabama implemented Oyster Bedding Rehabilitation Programs during the Benchmark Period in response to natural disasters such as hurricanes.[3]

---

[2] *See* http://www.merriam-webster.com/dictionary/harvest

[3] As an example, please see Louisiana's Private Oyster Lease Rehabilitation (POLR) Program Summary, attached as Exhibit A.

The Seafood Compensation Program already recognizes a difference when it comes to the Oyster Industry, as it allows for a Claimant to base his or her revenue claims on earned income derived not only from their own efforts, but from harvest income earned from "another natural person or entity." Likewise, in recognition of another oyster industry difference, the Claims Administrator should acknowledge an Oyster Claimant's income derived from a State or other for oyster bedding purposes as the performance of *harvesting functions*.

The Oyster industry is unique in that oyster harvesting requires active environmental conservation as a component of generating revenue, especially while replenishing product after a natural disaster. The Claims Administrator should recognize that these industry rebuilding efforts are fundamental *oyster harvesting efforts* geared to the oyster industry's ability to generate additional revenue.

The Costs Associated with Relay and/or Rehabilitation Efforts Are Factored Into the Variable Harvest Cost

The Variable Harvest Cost was, to the best of Class Counsel's recollection and belief, was derived by the Seafood Neutral from NOAA data which included the costs and expenses associated with these activities. It would make no sense to deduct compensation based on relay and/or rehabilitation expenses, without including the associated revenue.

To the Extent Losses Associated with Relay and/or Rehabilitation Efforts Are Excluded from the Seafood Compensation program, They Should be Compensable under the BEL Framework

In the event that relay and/or rehabilitation efforts are deemed to be excluded from "commercial fishing related activities," then such losses should be compensated under the BEL Framework (with funds from the General Claims Fund).

From an administrative standpoint, it likely makes more sense to include such income as Commercial Fishing income, and to compensate it under the Seafood Compensation Program.


cc: Pat Juneau
    Mike Juneau
    David Forsyth
    BP Counsel