# MEMORANDUM

**To:** Dan Balhoff

**From:** Class Counsel

**Re:** Leaseholder Lost Income and Combined Harvester and Leaseholder Claims

**Date:** December 4, 2013

The Claims Administrator has sought guidance from the Seafood Neutral who, in turn, has asked for comments from the Parties relating to issues affecting the completion of Leaseholder Lost Income ("LLI") and Combined Harvester and Leaseholder Claims ("COHL"):

1) The "Contracts or Agreements" Provision of Exhibit 10
2) Combined Oyster Harvester/Leaseholders with Vessel Lease Arrangements
3) Oyster Leaseholders that Generate Revenue by Purchasing at a Discount

<u>1.(a) The Section 2.2 "Contracts or Agreements" Provision of Exhibit 10 Should be Include Circumstantial Evidence When the Harvester is Unresponsive or Uncooperative</u>

The "Contracts and Agreements" provision in 2.2B should include a review of all relevant documentation and evidence provided by the Claimant establishing that a valid lease agreement was formed when the Harvester is either unresponsive (unable to be located) or uncooperative (unwilling to cooperate).

The Claims Administrator appropriately created the Acknowledgment of Verbal Oyster Harvesting Agreement Form (Gen-6 Forms) which would establish the existence of an agreement in the absence of a formal written contract between the harvester and leaseholder.[1] While this was and is an appropriate and admirable Policy, and did much to settle an overwhelming number of the "Contracts or Agreements" claims, it still leaves a potential gap where deserving Claimants are dealing with unresponsive or uncooperative harvesters. For those Leaseholder claimants, a harvester may have passed away, or relocated, or could effectively hold their claim hostage simply out of laziness, spite, or perceived self-interest.

Class Counsel agree with the Seafood Neutral's initial observation (when the issue was raised by Class Counsel *via* e-mail) that "the mere fact that [ ] harvesters refuse to sign a Gen-6 should not preclude a claim. I would suggest that the CA representatives should have the discretion to judge the validity of the claim based upon all the facts that have been presented."

---

[1] *See* Policy 340.

Class Counsel agree that all of the evidence, all of the facts, and all of the documentation should be weighed by the Settlement Program on a case-by-case basis in order to determine whether there was a valid contract or agreement between a leaseholder and harvester – but only after it is verified that a Gen-6 Form is unable to be executed and Policy 340 is followed.

While Class Counsel will not offer an exhaustive list contemplating what additional evidence might be submitted or accepted in these circumstances, additional evidence may include, but should not be limited to, an affidavit from the leaseholder attesting to the fact that a "Contract or Agreement" was in place and with whom and when, and further attesting to why the Gen-6 Form was unable to be completed; affidavits from witnesses evidencing same; third-party broker reports (if applicable); and any and all ancillary documentation including communication with the harvester, payment documentation, or photographic evidence.

1.(b) Section 2.2 Should Include "Contracts or Agreements" Between the Leaseholder and the Processor/Sublessee Acting as a Stand-In for the Harvester

These contracts should be recognized for the general reasons stated above, but additional ancillary evidence could be forthcoming form the broker *either* through an affidavit of the broker attesting to the arrangement *or* additional evidence of which the broker may have retained. As supporting documentation, the Claimant may also provide a sworn statement verifying records provided from a broker which evidences the payments made from the broker to the leaseholder. If the Claimant had payments made by a broker, then they can also provide copies of cancelled checks or account statements provided by the broker in addition to their own sworn statement as to the amounts received by the leaseholder in support of the claim.

1.(c) Section 2.2 Should Allow the "Contracts or Agreements" Actually Provided to Serve as Supporting and Persuasive, but not Definitive, Evidence of Additional Contracts or Agreements

A full calculation can be performed when a single "contract or agreement" is submitted satisfying 2.2B, and, when based on all supporting financial documentation, without the need to obtain *each* harvesting contract for which compensation is sought.

Further, this single contract or agreement may effectively suffice as supporting and persuasive evidence of additional contracts or agreements when supporting documentation substantiates the potential for other contract or agreements.

As stated previously, additional evidence should be looked at on a case-by-case basis and can generally include, but not limited to, the documents outlined above.

1.(d) A Unilateral Document Swearing to the Existence and Terms of a "Contract or Agreement" Should be Considered Supporting and Persuasive, but Not Definitive, Evidence of a Contract or Agreement

As previously stated, Class Counsel believe that an affidavit from the Claimant in these circumstances may well be warranted and can serve as supporting and persuasive evidence of a "Contract or Agreement," but would likely not be considered definitive evidence without additional financial documentation of some sort supporting the claim. Additional supporting documentation may include, but should not be limited to, bank statements or broker accounting records.

2.(a) The Settlement Agreement Requires One or the Other Vessel Owner/Vessel Lessee to Independently Qualify as a Leaseholders to Apply the COHL Framework to Both Parties

Exhibit 10 of the Settlement Agreement explicitly contemplates that a Vessel Lessee may file a claim in lieu of a Vessel Owner. Specifically in the Oyster Plan, (while the COHL Framework is silent), the Generally Applicable Provisions indicate:

> In those instances where the vessel was leased during the time period of April 20, 2010 to December 31, 2010, the Vessel Owner and Oyster Harvester Vessel Lessee must file the vessel claim jointly in order to receive compensation prior to the **Bar Date**, and they shall share any Vessel Owner/Oyster Harvester Vessel Lessee compensation provided for in this Oyster Compensation Plan. If at the time of the **Bar Date** either the Vessel Owner or the Oyster Harvester Vessel Lessee has not filed a claim, the one that has filed the claim shall receive the full Vessel Owner/Oyster Harvester Vessel Lessee compensation for the vessel.

See Settlement Agreement, Exhibit 10, p.25.

A Vessel Lessee may bring a claim under the COHL:

> This section explains compensation for the Oyster Harvester that is also an Oyster Leaseholder and includes compensation for a Claimant's role as an Oyster Leaseholder and a Vessel Owner/Oyster Harvester *Vessel Lessee*.

See Settlement Agreement, Exhibit 10, p.36.

Therefore, as a preliminary matter, when there is no revenue being claimed by the Vessel Owner, then the Vessel Lessee should recover the whole vessel revenue share, whether that is paid out under the Harvester Lost Income or the COHL, as per the filing choice and eligibility of the Vessel Lessee Claimant.

To put it another way, if no claim is filed by a Vessel Owner then the Vessel Lessee should recover the entire *Vessel portion* of the COHL as contemplated in the general provisions. Conversely, should the Vessel Lessee be the only party that files for the COHL claim and there is no competing claim for the Vessel Owner share then the Vessel Lessee should recover the entire *Vessel portion* of the COHL claim.

Second, if the Vessel Owner and Vessel Lessee choose to file *jointly*, *agreeing to file as a COHL*, and where one or the other is independently qualified as a leaseholder, they should be allowed to file a COHL.

Third, if the Vessel Owner and Vessel Lessee choose to file, but separately, the Vessel Lessee (or Vessel Owner) who is not a Leaseholder cannot file into the COHL even if the Vessel Owner (or Vessel Lessee) has not filed a separate claim as a leaseholder.

2.(b) Final Compensation should Not Allocate Both the Harvesting and the Leasehold Lost Income Portions of the Calculation, Regardless of Which Party Actually Lost Income Related to Other Parties Harvesting on Their Leases Unless Both Agree/File Jointly

As outlined above, where the Vessel Owner/Vessel Lessee choose to file *jointly*, *agreeing to file as a COHL*, and where one or the other is independently qualified as a leaseholder, payment of the COHL should be directed to each Claimant in connection with their respective claims. In other words, Vessel Lessee should not be compensated for the Vessel Owner's Leasehold Lost Income under this scenario, nor should a Vessel Owner be compensated for his Vessel Lessee's Leasehold Lost Income under this scenario.

3. Oyster Leaseholders that Purchase Oysters from their Harvesters at a Discount Should be Afforded a Leaseholder Lost Income Claim Based Upon the Difference Between Market Price for Oysters and the Discounted Purchase Price

Class Counsel understand that the Claims Administrator will have to set a Market Price for oysters in the various Benchmark years to accommodate these rare claimants; however, the alternative would be to turn a blind eye to these Claimants entirely.

Further, as the Program points out, it may also require the Claims Administrator to treat the difference between the market price and the discounted price as a Cost of Goods Sold in a claimant's BEL claim (should they have one).

The generated revenue, while imputed/invisible, was a direct function and consequence of the Leaseholder and Harvester's "Contracts or Agreements" and should, therefore, not be ignored by the Settlement Program.