# MEMORANDUM

*To:*     Patrick Juneau, Claims Administrator

*From:*  Class Counsel

*Date:*  October 15, 2013

*Re:*    Customer Mix Test
         **Policy No. 345 v.2 and v.3**

---

The Claims Administrator has requested input from BP and Class Counsel regarding the application of proposed Policy No. 345 v.3, which also amends the previous policy announcement 345 v.2. Class Counsel generally defer to the Claims Administrator regarding the application of the customer mix test to claimants that do not pass the traditional V test, but there are important considerations that Class Counsel believe should be incorporated in the policy announcement.

## I.   *Traditional and Startup Businesses with Cash Records*

The Claims Administrator correctly points out that Exhibits 4B[1] and 7 require that Traditional and Startup business loss claims meet the Exhibits' document requirements, even if those businesses operate on cash transactions. While Class Counsel generally agree with this policy, a rigid application of the requirement could result in unnecessary denials where the claimant's records already demonstrate they pass causation. For example, if a claimant could provide the requisite customer records, identifying location of customer and the relevant transaction data, suggestive that the claimant actually passed causation, then it is nonsensical to deny the claim for failure to meet the customer mix requirements if the claimant cannot provide additional unnecessary customer mix records for all claimants over the relevant time period because some of the customer mix data is unaccounted for (presumably because they represent cash transactions).

Where the group of customers with missing information would have no bearing on the causation calculation, it is Class Counsel's position that this deficiency should not prevent the claimant from passing causation. This application of the customer mix test is in accordance with Exhibits' 4B and 7, and promotes the claimant-friendly parameters of Sections 4.3.1, 4.3.7 and

---

[1] The Claims Administrator noted in Policy 345 v.2 that even for businesses that operate with cash transactions, those businesses must still meet the document requirements of Exhibit 4B.

4.3.8.  As such, Class Counsel would request an amendment to policy announcement 345 v.2[2] and proposed policy announcement 345 v.3 as follows:

> "The Claims Administrator has observed that it is difficult or even impossible for some BEL claimants to satisfy this test because they do not have documentation to establish the addresses/locations of their customers.  This is particularly problematic for businesses that deal primarily in cash, which businesses often do to maintain the type records specified in the above-referenced section of the Settlement Agreement.  The Settlement Agreement does not grant the Claims Administrator discretion to waive these document requirements. In order to establish Causation under the Customer Mix Test, a BEL claimant must provide supporting documentation of the type described in the above-referenced section. *However, where a claimant has provided the requisite customer information sufficient to establish causation, and where missing customer information would have no bearing on the causation calculation, the Claims Administrator will consider the claimant as having passed Causation under the Customer Mix Test.*

## II.     Project-based Business and Owners/Commercial Tenants

Class Counsel respectfully disagree with the application of the Project-based business example in policy 345 v.2 and proposed policy v.3. Specifically, the Claims Administrator sets out that project-based businesses should be computed as follows:

> (a) **Project-based Businesses**: When a project-based business, such as construction companies, end a project in the regular course of business, the completion of those contracts will not be equated to the loss of total revenue generated by the customer(s) for purposes of the Customer Mix Test.

Nothing in Exhibits 4B or 7 permits the Claims Administrator to engage in this type of invasive analysis on streams of revenue. Importantly, the Claims Administrator's proposed policy is actually an alternative causation analysis that requires the reviewer tie certain streams of diminished revenue to the external cause of those diminished revenues. The Settlement Agreement **does not** permit such an analysis for Causation purposes.  The Claims Administrator need only look to the "total revenues generated" and determine, based on the proffered location of the claimant's customers and the relevant transaction amounts, whether those "total revenues" for claimants in Zones A-C or 60 miles or further from the claimant "decline[d]" by the requisite percentages. "[T]otal revenue" means all revenue generated by the claimant's customers at issue – regardless of what external factors may have played a role in the decline of those revenues. Only the location of the customer and the amount of revenue

---

[2] Policy 345 v.2 provided guidance on traditional business economic loss claims subject to a customer mix analysis, but the changes Class Counsel calls for in v.3 should also be applied to traditional business economic loss claims.

generated are at issue in the customer mix analysis. Simply put, the proposed interpretation incorporates new language and requirements on customer mix claimants that was never intended by the parties, and is certainly not claimant friendly.

Turning to the Claims Administrator's "Property Owners/Commercial Tenants" example, Class Counsel generally agrees with the Claims Administrator's interpretation. The interpretation promotes a claimant-friendly customer mix determination given the difficulty many businesses face in generating mass customer location data from receipts. In addition to the interpretation, Class Counsel would insert the following language:

> (b) **Property Owners/Commercial Tenants**: If a claimant with a BEL or Start-up BEL claim is the owner of a commercial property such as a shopping mall, the *Claims Administrator will take the default position* that the claimant's customers shall be considered to be the location of the leased space in the shopping mall rather than the physical location of the headquarters for each retailer. *However, if the claimant can provide sufficient customer mix documentation supportive of a different location for its customers, the Claims Administrator will consider the claimant's customer location preference instead of the claimant's leased space location.*

### III. *Verification of Economic Loss Zones of Customers and Distances Between Customers and Claimant*

Class Counsel generally defer to the Claims Administrator on these issues, but would make the following comments and suggestions:

As to **II(C)(b)**, Class Counsel would insert the following language:

> "For any customer address omitting a street number, the Claims Administrator will use the point in the center of the street, as determined by the Claims Administrator's mapping software company, *unless the claimant can provide sufficient evidence suggestive that another location should be used.*

As to **II(C)(c)**, Class Counsel believes the Claims Administrator too quickly dismisses the claimant's provided customer location information simply because the mapping software can only identify a City or ZIP code from the data. Indeed, in some circumstances where the mapping software cannot provide more than a City or ZIP code, it may still be obvious to the reviewer that the claimant's customers reside within Zones A-C or 60 miles or further from the claimant.[3] Under the proposed policy promulgated by the Claims Administrator, such

---

[3] By way of example, if a Mobile, Alabama business provided records establishing the customers resided within the city limits of Huntsville, Alabama, or within a Huntsville, Alabama ZIP code, the claimant has conclusively established that his customers reside well beyond 60 miles from the claimant's location. As such, it is incomprehensible how a claimant could have this revenue excluded simply because the mapping software could identify a specific point in Huntsville, Alabama.

information would be discarded even though the information still conclusively establishes that the information should be included in the analysis. As such, Class Counsel submits the following amendment to the Claims Administrator's proposed language:

> "For any customer address in which the mapping software company's geo-coder can only identify the City and/or ZIP Code, the Claims Administrator *shall use the following parameters as a default for determining customer location:*
>
> i. *Where the Claims Administrator can conclusively establish from the claimant's customer records that the claimant's customers reside either within Zones A-C, or 60 miles or further from the claimant's operations, the mere fact that the records may be deficient as to an exact location shall not necessitate exclusion of those revenue from the customer mix analysis;*
>
> j. *To the extent that the Claims Administrator cannot conclusively establish that the claimant's customers reside in Zones A-C from the claimant's customer information, the Claims Administrator shall use the customer's closest possible location within the provided ZIP Code or City to either Zones A-C;*
>
> k. *To the extent that the Claims Administrator cannot conclusively establish that the claimant's customers reside 60 miles or further from the claimant, the Claims Administrator shall use the customer's furthest possible location within the provided ZIP Code or City from the claimant's operations.*

The claimant is still able to pass the Customer Mix test if it can provide the addresses of the required percentage of customers in Zones A-C or customers located within 60 miles of the claimant's business location.