# MEMORANDUM

From: Class Counsel

To: Claims Administrator

Re: Exclusions of "Revenue" in Business Economic Loss (BEL) Claims
*Policy Keeper Policy No. 328 (v2)*

Date: August 28, 2013

Class Counsel respectfully suggest that the proposal to exclude certain items of "revenue" from the various calculations to be performed under the terms of the Settlement Agreement improperly distorts the financial performance of BEL claimants, fails to include as revenue amounts that are taxable income, injects a subjective evaluation of "intercompany sales", and potentially favors one claimant to the detriment of another. Plaintiffs respectfully propose the following modifications to the proposed revised Policy issued to the Parties for comment on August 21, 2013:

As an introductory matter, in accordance with Sections 4.3.7. and 4.3.8., regardless of the "typical" treatment of any revenue item, claimants should be provided a reasonable opportunity to show that an item of income or "revenue" should be appropriately treated for purposes of the business loss calculations as a component of total revenue if it is a significant part of a claimant's ordinary business operating activity.

1. **Insurance Proceeds**

A blanket exclusion of insurance proceeds from "revenue" is inappropriate and distorts the financial performance of BEL claimants. The Settlement Agreement provides for a single instance in which any type of insurance proceeds are to be excluded from any of the calculations in the business loss frameworks and that is limited to "any one-time non-operating income/expenses (including, but not limited to, any business interruption insurance proceeds received by the claimant during the relevant period)." This provision is stated solely in connection with the compensation calculations for Start-Up businesses in Exhibit 7 (Sections IV(A)(1)(c) and IV(B)(2)).

Many claimants receive, as part of their ongoing operations, "insurance proceeds" which are a necessary part of the operations of the business. For example, crop insurance, unlike casualty insurance, is designed to replace revenue when certain events occur. As the American Institute of CPA's describe it: "Proceeds from crop insurance related to crop destruction or damage are treated as a deemed sale of the crop." As a deemed sale, the proceeds are fully taxable to the Claimant. In fact, the form 1040 used by farmers has a specific line item to report crop insurance proceeds as income.

Plaintiffs suggest that claimants should be provided a reasonable opportunity to show that insurance proceeds should be appropriately treated as a component of total revenue if it is a significant part of a claimant's ordinary business operating activity.

**2.     Interest Income**

The Settlement Agreement contains no provision for exclusion of interest income as a component of total revenue for a claimant. While interest income for most non-financial businesses is incidental to the business purpose, some businesses may have a significant component of operating income in the form of interest. For example, entities (not excluded from the class definition under Section 2.2.4.1 or Exhibit 18) which own and operate rental real estate may self-finance the sale of one or more of those properties. The resulting interest income is appropriately considered operating revenue appropriately considered as part of total revenue for that claimant. In contrast, interest income paid by a financial institution to the claimant in connection with a deposit account can reasonably be assumed to be non-operating income.

In any case, in accordance with Sections 4.3.7. and 4.3.8., claimants should be provided a reasonable opportunity to show that interest income should be appropriately treated as a component of total revenue if it is a significant part of a claimant's ordinary business operating activity.

**3.     Gains or Losses from Sales of Assets**

Similarly, the Settlement Agreement contains no provision for exclusion of asset sale gains/losses as a component of total revenue for a claimant. In accordance with Sections 4.3.7. and 4.3.8., claimants should be provided a reasonable opportunity to show that gains or losses from asset sales should be appropriately treated as a component of total revenue if this is a significant part of a claimant's ordinary business operating activity.

**4.     Reimbursed Expenses**

The Settlement Agreement contains no provision for exclusion of reimbursed expenses as a component of total revenue for a claimant. In practice, reimbursed expenses may contain a markup, may be written off (without detail of which component of a write-off relates to reimbursed costs or other fees or income billed to a customer or client), or may otherwise not be directly traceable to any related expense. Reimbursed expenses function in many cases as a revenue item with zero markup (although sometimes with a markup or write-off). Excluding such revenue can distort the true financial performance of a claimant.

Reimbursed expenses are, in fact, typically treated as revenue on the contemporaneously prepared income statements of the claimants. Many of these items represent profit items for the claimant. These items include reimbursement of items categorized under the Settlement Agreement as Variable Expenses. To the extent that these revenues are not included in the claim calculation, the variable expense related to the disregarded transaction would potentially also be disregarded. Determining the appropriate exclusion of any such expense from the calculation of lost variable profit, considering the possibility of markup and write-offs, introduces a degree of complexity to claim calculation which is not contemplated in the Settlement Agreement.

### 5. Capital Assessments

As with other revenue items addressed in this proposed policy, the Settlement Agreement contains no provision for exclusion of capital assessments as a component of total revenue for a claimant. In accordance with Sections 4.3.7. and 4.3.8., claimants should be provided a reasonable opportunity to show that capital assessments should be appropriately treated as a component of total revenue if this is a significant part of a claimant's ordinary business operating activity.

### 6. Intercompany Sales / Related Party Transactions

The Settlement Agreement contains no provision for exclusion of either intercompany sales or related party transactions as a component of total revenue for a claimant. The proposed exclusion of intercompany sales and related party transactions from "revenue" for the various business causation and compensation calculations distorts the financial performance of the business, may require subjective analysis of the relationship of entities (or its owners, members or shareholders), and has the potential to impact the claim of one entity because of a determination to exclude revenue from or transactions with certain other entities.

#### a. Definition of Related Party

This proposal suffers first with a lack of definition of what relationships will constitute a related party transaction. Myriad company relationships exist wherein transactions may be recorded in various ways. Any policy intended to modify the financial statements of a claimant as kept in the ordinary course of business should be based on transparent methodologies supported with necessary information in accordance with Section 4.3.7. Whether the policy is to be implemented using a percentage of common ownership or control (which can be and often are different), the possibility of attribution of ownership (to family members or others), or other factors (such as common non-owner officers), the unique factors of such ownership introduce a degree of subjective evaluation not contemplated by any terms of the Settlement Agreement.

Further, the exclusion of revenue from one entity due to a determination of a related party transaction may significantly impact the calculations for both entities. Since the Settlement Agreement contains no provisions for special treatment of two entities in this fashion either entity (and the owners of that entity) may be impacted (positively or negatively) by exclusion of such revenue. This has the potential to shift the benefits of settlement participation from one entity to another.

#### b. Arms-Length Transactions

The proposed exclusion of transactions with related entities this type of revenue apparently presumes that intercompany sales are not conducted at arms length. While this may be true in some instances, common or similar or overlapping ownership (or control) of two entities does not presume

a lack of arms-length transaction.[1] Determination of the nature of such transactions again introduces a level of subjective analysis (what facts may confirm that a transaction was conducted at arms-length) not contemplated by any terms of the Settlement Agreement. Regardless of whether such a transaction was conducted at arms length, the revenue and associated costs were recorded by the claimant at the time incurred and properly reflect the business performance during that time. Exclusion of that revenue or expense may serve to distort the actual performance of the business during that time - potentially impacting the causation analysis and compensation calculations.

  **c. Corresponding Expenses**

The proposed policy addresses only revenues and not expenses (cost of sales, variable expenses, and payroll) associated with any supposed related party transaction or intercompany sale. Determining the appropriate exclusion of any such expense from the calculation of lost variable profit introduces a degree of complexity to claim calculation which is not contemplated in the Settlement Agreement.

This proposed policy would seemingly require a tremendous amount of analysis by the claimants and the Settlement Program vendors to investigate the amount and nature of each related party revenue (and expense item) for a wide variety of entities in construction, real estate, management services, and operating entities who either perform services for or sell products to an undefined related party.

Plaintiffs suggest that the proposed attempts to modify the financial records maintained by claimants in the ordinary course of business to exclude related party transactions or intercompany sales serves to distort the various business economic loss calculations in ways not provided by the terms of the Settlement Agreement and has the potential to produce unpredictable results.

**7. Grants for "For Profits" Entities**

As with other revenue items addressed in this proposed policy, the Settlement Agreement contains no provision for exclusion of grants received by for-profit entities as a component of total revenue for a claimant.

With respect to subsidies, the Settlement Program has already determined (correctly) that both agricultural subsidies and CDSOA payments should be treated as "revenue".[2]

This proposed exclusion also stands in stark contrast to Policy 307 (v2) which was issued

---

[1] GAAP requires the disclosure of related party transactions in the footnotes to the GAAP financial statements. There is no judgment in the footnotes as to the arm's length nature of the transaction. The related party transaction are, in fact, recorded in the revenues (and expenses) of the entities in accordance with GAAP. To the extent that claimants use methods other than GAAP (as allowed by the Settlement Agreement), related party transaction are in fact properly included in the revenues (and expense) of the claimant.

[2] *See* E-Mail from Mike Juneau, dated August 13, 2013, re: CDSOA payments.

as a result of Judge Barbier's determination in accordance with the Section 4.3.4. Policy 307 (v2) provides that: "Income received by non-profit entities in the form of grant monies or contributions shall typically be treated as revenue for that entity for purposes of the various required calculations under the terms of the Settlement Agreement." The Settlement Agreement makes no distinction between non-profit and for-profit entities in any of the business claim calculations. The proposed treatment introduces the possibility of differing treatment of similarly situated class members. Plaintiffs therefore respectfully suggest that grants to for-profit class members should be treated similarly to grants to non-profit class members.