# MEMORANDUM

**From:** Class Counsel

**To:** Claims Administrator

**Re:** Issues Relating to the Definition of "Facility" and Multi-Facility Claims
***Policy Keeper Policy No. 467***
*(and Policy No. 264, Request for Input No. 462, and Request for Input No. 467)*

**Date:** August 9, 2013

### Introduction

Class Counsel respectfully offer this memorandum as a review of the integrated working relationship of the provisions of Exhibit 5, together with the Class Definition and other relevant Settlement Frameworks. Sometimes, when proposed Policy Statements are presented in isolation, it is helpful to place them together within the context of the overall Settlement Agreement.

It is with this background that Class Counsel approach the discussion of issues presented by the multiple draft proposed policy interpretations and requests for input from the Claims Administrator. We respectfully ask the Claims Administrator to focus on the totality of the Settlement Agreement. In order to do that, the initial focus starts with Class Membership.

A Class Member has been intentionally and specifically negotiated down to the legal entity level so that any legal entity, whether it's an LLC, a partnership, a joint venture, or other legal entity can itself be a Claimant.

A business enterprise may be operated at the parent level, but have multiple legal entities within its structure, and each of those legal entities may choose to be vested with individual Class Membership status. Each Class Member has all the rights and responsibilities that go with Class Membership.

At the current time, the Claims Administrator seems to be focused on physical location and "address" as the nexus to Class Membership. This is true for a significant part of the Class; however, it is not true for all Class Members. Many legal entities are Members of the Class due to the nexus they have with "full-time services" (Section 1.2.2) or a "vessel" (Section 1.2.3) within the Gulf Coast Area or on the Specified Gulf Waters. There is no limitation to physical location found anywhere in the Settlement Agreement.

It's true that one needs to determine the "physical location" where the performance or the management of the business operations occur. That may or may not be a "postal address." Not all locations will have identifiable separate and distinct postal addresses. A location can be a distinct section of a building at which distinct operations are performed or managed, or a location may be as broad as a city where a customer resides.

1

Location or physical location must be based on the reasonableness and availability of credible information.  A Claimant under a Multi-Facility Business option should be able to provide credible evidence supporting the distinct nature of two locations where it operates or performs and manages its business even if in the same structure or building.  A business enterprise that operates a retail segment at 940 Gravier Street, for example, is in a structure; however, that same business enterprise may operate a property rental business from the same physical structure and be two separate business operations totally unrelated to one another, except for a common parent.  They may very well have one headquarters, one address, in a multi-floor building, but their "operations are performed and managed" at different locations within the building.  That is a Multi-Facility Business.  If the Claimant has segregated the "performance OR management of operations" the Claimant has a facility and has the option if the claimant chooses to file a Multi-Facility Business claim and be recognized in the final policy adopted by the Claims Administrator.

The Multi-Facility Business Economic Loss Claim negotiated resolution was an integral part of the overall Economic & Property Damages Settlement.  It was recognized by Class Counsel that many businesses in the Gulf Coast Area were integrated such that they may very well have excluded segments of their business as well as included segments, and they may have multiple business activities in the Gulf which suffered different impacts from the Spill.  During the negotiations of the Multi-Facility Business (MFB) Framework, there were various attempts to limit its application.  For example, there were attempts to include language that said: "The Claimant may not, however, elect to file a claim for any combination of Facilities comprising a subset of Claimants' Facilities."  That limitation was rejected, and does not appear in the final Framework.  The final Individual Release for a claimant that resolves a claim which does not include all of its facilities, business interests, business activities, or vessels releases such claims (unless they are expressly reserved or excluded claims), but at the same time provides for the right to bring additional claims under Section 4.4.8, (*see* Exhibit 26, ¶18(i)), and the final version of Exhibit 5 allows the Claimant to "elect, at its option" to (in many cases) file for "one, some or all" of its facilities.  It was very important to Class Counsel that a Claimant be allowed to file a claim or claims for one or more than one (*i.e.* "some") or all of its business activities collectively.  This is why the MFB provides as an initial point of guidance that there are substantial options available for these Claimants.

When the MFB model refers to claim versus claim**s**, that is a distinction and a distinction with a meaning.  We thus urge the Claims Administrator to be cautious in its reading of the MFB so that when a provision provides for claim**s** for "one or some or all" is found in the document, it's there because each of the words has meaning.

**The Definition of "Facility"**   *(Policy No. 467)*

The Introduction to this Policy indicates that: "The location of a Business Entity turns upon where its Facility[ies] can be found."  However, as noted *supra,* an Entity can be a Class Member under the Class Definition and the BEL Framework without having a physical facility.  An Entity can be a Class Member under Section 1.2.2 (or 1.2.3) of the Settlement Agreement as

a result of providing services (and/or owning and/or operating a vessel that is home ported) in the Gulf Coast Area, and, indeed, that business could be a "Multi-Facility" business.

In Section II(A), (Whether a Business Entity is within the Settlement Class Definition), the Claims Administrator references the Section 1.2.3 definition of a Class Member.  It is true that the nexus to Class Membership is different for a Vessel versus a physical Facility; it does not logically follow, however, that a Vessel cannot be a "facility".   In Policy No. 352, the Claims Administrator acknowledged that the focus is where the Claimant performs business operations, noting that in a charter fishing business, for example, it occurs on the vessel, and the location of the vessel is the most accurate reflection of the entity's location.  This applies equally to a Class Member whose membership derives from the ownership or operation of a vessel.  Therefore, if Vessel 1 LLC is the Class Member, it performs all business operations aboard the vessel, the location where the vessel performs its services (or perhaps where it is Home Ported) is the most accurate reflection of the entity's location for purposes of determining Zone Classification as well as the appropriate RTP.

Re: Section III(B) (Business Entities in the Class but with No Physical Location in the Gulf Coast Area), we continue to believe that Policy No. 264 is inconsistent with the Settlement Agreement and should be revised.  Where a Claimant's nexus to Class Membership is predicated on "full-time services" (Section 1.2.2), the location at which those services were performed should dictate the Zone, Causation and RTP. (*See, e.g.,* Exhibit 8, Footnote 4.)  If the business that brings the Claimant into the Class is performed exclusively in one Zone, then that Zone should apply.  If the business is performed in multiple Zones, then the Claims Administrator must determine the predominate location of that business in order to determine the appropriate Zone and RTP.  Similarly, where the Claimant's nexus to Class Membership is predicated on the ownership or operation of a vessel, it is the location where the vessel is operated (or perhaps where the vessel is Home Ported) that should dictate the Zone and RTP.  (Class Counsel continue to believe that the Specified Gulf Waters fall within "Zone A" for BEL purposes; BP, of course, previously agreed that the Specified Gulf Waters should be treated as Zone A for IEL Claims.)   Class Counsel respectfully suggest that it is inappropriate to default to Zone D, which is based on physical location, when the linkage to the Claimants' rights under the Settlement Agreement is predicated on the performance of services (and *not* physical location) within the Gulf Coast Area.  If the Claimant can demonstrated that its business activity was in Zone A, then that should be the appropriate Zone treatment.

In Section IV(A) (Definition of Facility), the Claims Administrator is suggesting that a separate physical structure, such as a separate building or other fixture, would be required in order to have a separate Facility.  This is not consistent with the Settlement Agreement.  The Settlement Agreement focuses on a Facility being a separate and distinct "physical location" at which it performs or manages its operations (*see* Exhibit 5, Section 1, Definition of Facility).  This does not have to be a separate physical structure.  Rather, a Claimant can have two separate and distinct physical locations (*i.e.* "facilities") within in the same building, such as a retail operation that is run separate and independent of a rental company.  The Settlement Agreement would be inappropriately interpreted to require a separate physical structure for each Facility.  The limitations being placed by IV(a) is inappropriate, and the focus should be on the location of performance and operation, not about physical structure.  In applying the definition of

3

"Performs" or "Manages" set forth in IV(B), the above-referenced hypothetical applies. The Claimant can perform and manage its business, as well as identify expenses and revenues associated with the operation, separately from the expenses and revenues of the other operation. The retail operation of the claimant could clearly be separated for performance, management, and accountability of expenses and revenues from the rental operation in the same building, yet each occupies the same physical structure.

In Section IV(C)(4) (Multiple Structures), Class Counsel again note that a Multi-Facility Business Claimant should have the optionality of filing a claim for "some" of its facilities, (which includes more than "one" but less than "all"), (so long as they are all subject to the same Causation standard and RTP). The Claims Administrator appears to suggest that a Multi-Facility Business can *only* file either a consolidated claim for all or a separate claim for one of its Facilities.

Section (IV)(C)(5) (Location of Customers, Employees, Contractors, or Other Representatives) appears to essentially follow Policy No. 264 with respect to Class Members whose nexus to the Class is not a physical location, but rather, the Claimant's business activities. In such cases, it is the location of those activities, (and neither some physical location outside of the Gulf Coast Area nor a default to Zone D), which should dictate "location" under the Settlement Agreement, with respect to Zone, Causation, and RTP.

In Section V(B) (Vehicles and Other Mobile Machines), Class Counsel believe the Claims Administrator is inappropriately limiting the definition. There are Entities that operate from their mobile facility. For instance, if my business is Cajun foods, and I operate from a food truck that travels to different construction sites, then my vehicle is in fact my "Facility"; it's where I conduct my operation, manage my business, and perform my services.

**Multi-Facility Claims**

Compensation for Multi-Facility Businesses is set forth under Exhibit 5, which begins by stating: "This document is intended to provide <u>options</u>, or other guidance, to a Multi-Facility Business making a Business Economic Loss Claim." Then, depending on where the business headquarters is located and the availability of the necessary documentation, Exhibit 5 sets forth the options and the guidance. It is necessary to provide all of these options in order for a Multi-Facility Business to be treated fairly under the Settlement Agreement. The options allow a claim for each individual Facility that the Multi-Facility Business <u>chooses</u> to include in the <u>claim</u> or a consolidated claim. Section 38.19 defines a claim as "any demand or request for compensation…submitted by a Claimant to the Settlement Program."

A further reading of the Multi-Facility Business model states that "if the Multi-Facility Business chooses to file separate claim**s** [emphasis added] for one, some, or all of its Facilities, the applicable Causation Standard in RTP shall be filed separately to each claiming facility based on its location in industry." Therefore, if the Multi-Facility Business seeks to file a demand or request (a claim) for compensation to the Settlement Program for locations A, B, and C, and those locations can provide separate contemporaneous profit and loss statements for each facility

and are all located within the Gulf Coast Area, then the Claimant, a Class Member, certainly has the right to file a claim for those Facilities that he chooses to include in the claim.  If a Claimant chooses to file a separate claim for Facility D, the Claimant also has that additional option.

The applicable Causation Standard and RTP shall be applied separately to each claiming facility based on its location and industry.  This does not present any issues to the Claims Administrator if all of the Facilities included within a claim are located in the same Zone and are in an industry (or industries) that has (have) the same RTP.  It is only if the Claimant seeks to file a claim that crosses Zone lines that a Causation and/or RTP issue arises, and the Claims Administrator has already determined that, under those circumstances, the Zone where the headquarters are located will apply.

Policy No. 84, previously released by the Claims Administrator, recognizes that a Class Member can file claim**s** [emphasis supplied] for any one or more, but not all, of the Facilities, or it can file a consolidated claim.  This Policy recognizes that, in the absence of a consolidated claim, there can be multiple claims filed by the same Entity.

In Section B of Request for Input No. 462, the Claims Administrator seems to indicate that a Multi-Facility Businesses with headquarters in the Gulf Coast Areas cannot file a claim for "some" of its facilities within the GCA.  As appropriately noted, separate claim**s** is plural, as indicated in Exhibit 5.  The full statement is "chooses to file separate claims for one, some, or all of his Facilities…"

The Claims Administrator refers to the reference in Exhibit 5, Section V (Compensation) to "entire business", but this applies only where a Multi-Facility Business has all Facilities, including its headquarters, in the Gulf Coast Area, and files a consolidated claim on behalf of the entire business.  This does not exclude the option that a Multi-Facility Business can file for some of its Facilities.

Consider the following hypothetical:

> Holstein Enterprises has all of its Facilities located in the Gulf Coast Area, with headquarters located in New Orleans.  As part of its business, it has retail establishments, apartment rentals, ownership of an engineering firm, and ownership of a Financial Investment Firm.  The interpretation referenced in Section B(1) of Request for Input No. 462 would imply that Holstein Enterprises would have to file the claim for its entire business, which would include the excluded Financial Investment Firm.  If you went further and assumed that Holstein Enterprises owned a business within its corporate structure that was excluded under Exhibit 17 or was subject to a Moratoria Loss Review under Exhibit 19, then it further amplifies the reason the interpretation of the Settlement Agreement implied by Section B(1) of Request for Input No. 462 is wrong.  Clearly, Holstein Enterprises, the Claimant Class Member, could file a claim for its retail establishments, its rental properties, and its engineering firm in one consolidated statement using its headquarters as its Zone under the terms of the

5

>Agreement where a Claimant can file "Claims for one, some, or all Facilities in the Gulf Coast Area."

Looking at Section D(3) of Request for Input No. 462, Class Counsel notes that the Claimant is not required to sum lost profits and RTP's for Multi-Facility Businesses that file separate claims. However, under Exhibit 5 of the Settlement Agreement, (specifically Exhibit 5, Paragraph V(2)(a)), you are to "sum lost profits and RTP's for all Facilities in a claim". This fairly indicates the difference between focusing on the claim that is filed versus the optionality of the Claimant being able to file multiple claims.

As indicated in Class Counsel's response to Question No. 2 [Section E(2)] on Request for Input No. 462, the Program should apply the more favorable "Claimant Specific Factor" in accordance with Section 4.3.8. Class Counsel further note that: "Step 2 of the Compensation Calculation for Business Economic Loss Claims is intended to compensate Claimants for incremental profits the Claimant might have been expected to generate in 2010 in the absence of the spill, based on the Claimant's growth in revenue in January-April of 2010 relative to the Claimant-selected Benchmark Period." (*See* Exhibit 4C, Paragraph II "Step 2 Compensation") As such, for those Facilities with a Step 2 loss, the Claims Administrator should calculate the growth factor (Claimant Specific Factor) utilized for Step 2 for each Facility separately (not subject to any rate caps) and then apply the rate Cap of 10% at the overall Claimant level for each claim filed. The computation of the Claimant Specific Factor is <u>not</u> listed as an allowable modification of the BEL Computation at the Facility level. (*See* Exhibit 5, Paragraph V(2)) However, if each Facility were subject to the 10% Cap separately, and any of the Facilities had a growth rate of less than 10%, the Claims Administrator would effectively be enforcing a Cap that is lower (and potentially significantly lower) than the agreed upon 10% Cap for the Claimant. Further, the Settlement Agreement dictates that the "Claims Administrator shall use its best efforts" to assist the Claimant to "produce the greatest Economic Damage Compensation Amount" that documentation allows, (Sections 4.3.7 and 4.3.8). Here, that should be calculating and applying the growth rate at the Facility level (for all facilities included within the claim) and subjecting the overall claim to the Claimant Specific Factor Cap at the Claimant level. It is a Claimant specific, and not Facility specific, factor.

Class Counsel have attached a "Filing Options & Claimant-Specific Factor Calculation for Multi-Facility Business Claims" for the Claims Administrator's reference and consideration.

# Filing Options & Claimant Specific Factor Calculation for Multi-Facility Business Claims:

## 1. Claim Filing Options for a Multi-Facility Business

The Settlement Agreement (SA) states that:

A Multi-Facility Business (MFB)… "may, at its option, elect to file claim**s** in one of two ways: 1) **A claim** for each individual Facility that the Multi-Facility Business **chooses to include** in **the claim**, or 2) a consolidated claim. If the Multi-Facility Business chooses to file **separate** **claims** for **one**, **some**, or **all** of its Facilities, the applicable Causation standard and RTP shall be applied separately to each claiming Facility based on its location and industry. If the Multi-Facility Business chooses to file a consolidated facility claim, the Causation standard and RTP applicable to the Headquarters shall be applied to the entire consolidated claim." [Emphasis added]

We interpret the above paragraph as allowing a MFB to file a consolidated claim for all facilities or multiple claims that include whichever facilities the MFB elects, as long as each of those facilities passes the applicable Causation standard and applies the appropriate RTP. These instructions allow for several filing options.

**Headquarters inside Gulf Coast Zones**

Given a MFB with a Headquarters (HQ) inside of Zone C and six facilities, all located within the Gulf Coast Zones, the MFB will have the following options available:

MFB (HQ – Zone C):
    Facility 1 – Zone C, Passes V-Shape
    Facility 2 – Zone C, Passes Modified V-Shape
    Facility 3 – Zone C, Passes V-Shape
    Facility 4 – Zone C, Passes V-Shape
    Facility 5 – Zone C, Passes Decline Only
    Facility 6 – Zone D, Passes Decline Only

1. Consolidated: File a consolidated facility claim where the Causation standard and RTP applicable to the Headquarters shall be applied to the entire consolidated claim.

> Consolidated – Zone C
> Facility 1
> Facility 2
> Facility 3
> Facility 4
> Facility 5
> Facility 6

2. <u>Separate claims for one</u>: File a separate claim for one of the MFB's facilities, where the applicable Causation standard and RTP shall be applied separately to each claiming Facility based on its location and industry.

> Claim 1
> Facility 1 – Zone C, Passes V-Shape
> Facility 2 – Zone C, Passes Mod-V
> Facility 3 – Zone C, Passes V-Shape
> Facility 4 – Zone C, Passes V-Shape
> Facility 5 – Zone C, Passes Decline

> Claim 2
> Facility 6 – Zone D, Passes Decline

3. <u>Separate claims for some</u>: File separate claims for some of the MFB's facilities, where the applicable Causation standard and RTP shall be applied separately to each claiming Facility based on its location and industry.

> Claim 1
> Facility 1 – Zone C, Passes V-Shape
> Facility 2 – Zone C, Passes Mod-V
> Facility 3 – Zone C, Passes V-Shape

> Claim 2
> Facility 4 – Zone C, Passes V-Shape
> Facility 5 – Zone C, Passes Decline

> Claim 3
> Facility 6 – Zone D, Passes Decline

4. <u>Separate claims for all</u>: File separate claims for all of the MFB's facilities, where the applicable Causation standard and RTP shall be applied separately to each claiming Facility based on its location and industry.

> Claim 1
> Facility 1 – Zone C, Passes V-Shape

> Claim 2
> Facility 2 – Zone C, Passes Mod-V

> Claim 3
> Facility 3 – Zone C, Passes V-Shape

> Claim 4
> Facility 4 – Zone C, Passes V-Shape

> Claim 5
> Facility 5 – Zone C, Passes Decline

> Claim 6
> Facility 6 – Zone D, Passes Decline

**Headquarters outside of Gulf Coast Zones**

Differing RTPs: Given a MFB with a Headquarters (HQ) outside of all Gulf Coast Zones and six facilities, all located within the Gulf Coast Zones but with one or more facilities in different zones (with different RTPs), the MFB will only have filing options 2 through 4 from above.

MFB (HQ – Outside Zones):
    Facility 1 – Zone C, Passes V-Shape
    Facility 2 – Zone C, Passes Modified V-Shape
    Facility 3 – Zone C, Passes V-Shape
    Facility 4 – Zone C, Passes V-Shape
    Facility 5 – Zone C, Passes Decline Only
    Facility 6 – Zone B, Passes Decline Only

As Facility 6 is located in a zone with a different RTP from the rest of the facilities, the MFB will not be able to include all facilities within a single claim. Therefore, this MFB would be limited to filing options 2 through 4.

Same RTPs: Given a MFB with a Headquarters (HQ) outside of all Gulf Coast Zones and six facilities, all located within the Gulf Coast Zones and having the same RTP, the MFB will have filing options 2 through 4 from above in addition to a consolidated filing option.

MFB (HQ – Outside Zones):
    Facility 1 – Zone C, Passes V-Shape
    Facility 2 – Zone C, Passes Modified V-Shape
    Facility 3 – Zone C, Passes V-Shape
    Facility 4 – Zone C, Passes V-Shape
    Facility 5 – Zone C, Passes Decline Only
    Facility 6 – Zone D, Passes Decline Only

1. Consolidated: File a single claim where the applicable Causation standard and RTP shall be applied separately to each claiming Facility based on its location and industry.

> Consolidated
> Facility 1 – Zone C, Passes V-Shape
> Facility 2 – Zone C, Passes Mod-V
> Facility 3 – Zone C, Passes V-Shape
> Facility 4 – Zone C, Passes V-Shape
> Facility 5 – Zone C, Passes Decline
> Facility 6 – Zone D, Passes Decline

In addition, if one or more facilities are outside of the Gulf Coast Zones, then those facilities are excluded from all filing options.

If one or more facilities fail causation independently, then those facilities are excluded from all filing options.

## 2. Calculation of the Claimant Specific Factor for a Multi-Facility Business

The Settlement Agreement (SA) states that:

A Multi-Facility Business (MFB)… "may, at its option, elect to file claim**s** in one of two ways: 1) **A claim** for each individual Facility that the Multi-Facility Business **chooses to include** in **the claim**, or 2) a consolidated claim. If the Multi-Facility Business chooses to file **separate** **claims** for **one**, **some**, or **all** of its Facilities, the applicable Causation standard and RTP shall be applied separately to each claiming Facility based on its location and industry. If the Multi-Facility Business chooses to file a consolidated facility claim, the Causation standard and RTP applicable to the Headquarters shall be applied to the entire consolidated claim." [Emphasis added]

We interpret these sentences to mean that if a MFB elects to file multiple claims (i.e. does not choose option #2 above), they have the option to include one or more Facilities that independently pass causation in each claim. In order for "some" and "all" to have different meanings in the above paragraph, certain of those "separate claims" must have the ability to include multiple Facilities in a claim. Otherwise the MFB would only have the option to file a separate claim for "one" or "all" Facilities. We believe this understanding to be supported by the explicit requirement that each Facility pass causation and calculate its RTP independently without explicit mention of the calculation of compensation, i.e. lost profits.

In order to apply causation standards and RTPs, each facility must be evaluated separately. However, under the BEL framework (Exhibit 4c), the Step 2 calculation of the Claimant-Specific Factor (CSF) is defined at the "Claimant" level and not at the "Claim" or Facility level. For regular BEL claims (non-multi-facility, non-startup, non-failed), the Claimant and the Claim are represented by the same set of data. For multi-facility businesses, the distinction is that one Claimant (legal entity) may be represented by several Claims (and sets of data). Furthermore, the floor and ceiling of the CSF is also defined at the "Claimant" level, as is the General Adjustment Factor.

The SA also states that multi-facility claims should use the BEL framework, compensation shall be calculated using the Compensation Framework for BEL claims "modified as follows: a. Sum lost profits and RTP(s) for all **Facilities** in claim…"[1] While "lost profits" is not a term defined by the SA, our understanding of the term would be equivalent to lost Variable Profits (which for Step 2 of the compensation calculation is derived based upon Variable Margin). The BEL framework also allows the Claimant to select the optimal benchmark periods for the Claim to maximize the combination of losses in Step 1 and Step 2.

When evaluating multi-facilities, in order to comply with Section 4.37 and Section 4.38, it is necessary to eliminate the 10% growth cap in the calculation of Step 2 at the Facility level to determine the total lost profits at each Facility, and then apply the 10% growth cap at the Claimant level and adjust the Step 2 lost profits at the Facility level accordingly. This is the only way to "sum lost profits" of the facilities.

---

[1] See Exhibit 5: Compensation under Settlement Agreement Excerpts

We would propose the following steps for the calculation:
1. Determine causation for each Facility independently and proceed to the following steps for those Facilities that pass causation:
2. Calculate Step 1 for each Facility independently
3. Calculate Step 2 for each Facility independently
    a. Calculate the Benchmark Period (BM) Revenues
    b. Calculate the Facility level CSF (without the 10% cap on growth)
        i. Calculate the Jan–Apr Revenues for the BM and 2010
        ii. Calculate the growth rates for each Facility: (2010 Jan–Apr Revenues - BM Jan–Apr Revenues) / BM Jan–Apr Revenues
    c. Calculate the Claimant level CSF and the Required Adjustment to the 10% cap on growth
        i. Sum the BM Jan–Apr Revenues for all claiming Facilities
        ii. Sum the 2010 Jan–Apr Revenues for all claiming Facilities
        iii. Determine the Claimant level CSF by calculating the growth rate between steps 3.C.i and 3.C.ii above.
            1. If the Claimant level CSF is 10% or less, no further adjustment is needed, proceed to 3.e.
            2. If the Claimant level CSF is greater than 10%, determine the Required Adjustment to 10% cap by subtracting the Claimant level CSF from 10%
            3. Next, determine the Required Adjustment as a percentage of the Claimant level CSF: Required Adjustment % / Claimant level CSF
    d. Adjust the Facility level CSF for each claiming Facility with Step 2 by the Required Adjustment percentage in step 3.C.iii.3 to arrive at an Adjusted Facility level CSF
    e. Determine the Incremental Revenues for each applicable Facility by:
        BM Revenues * (Adjusted Facility level CSF + 2% General Growth Factor)
    f. Determine the Step 2 Compensation for each applicable Facility by:
        Incremental Revenues * Facility Benchmark Variable Margin Percentage

4. Add Step 1 and Step 2 Compensation for each Facility independently
5. Apply the applicable RTP for each Facility independently and determine RTP Compensation by:
    (Step 1 + Step 2) * RTP
6. Determine total compensation for each Facility independently by:
    Step 1 + Step 2 + RTP – any payment/offsets
7. Determine Multi-Facility Claimant compensation by summing lost profits and RTPs of each Facility:

| Facility | Step 1 | Step 2 | RTP | Total Compensation |
|---|---|---|---|---|
| 1 | $xx,xxx | $x,xxx | $x,xxx | $xx,xxx |
| 2 | $xx,xxx | $x,xxx | $x,xxx | $xx,xxx |
| 3 | $xx,xxx | $x,xxx | $x,xxx | $xx,xxx |
| Total | $xxx,xxx + | $xx,xxx + | $xx,xxx = | $xxx,xxx |
| | | | Less: Payments/Offsets | ($x,xxx) |
| | | | Net Claimant Compensation | $xxx,xxx |

**Settlement Agreement Excerpts**

11

**Agreement Definitions**

38.19. **Claim** shall mean any demand or request for compensation (other than Bodily Injury Claims or Expressly Reserved Claims), together with any properly completed form and accompanying required documentation, submitted by a Claimant to the Settlement Program.

38.20. **Claimant** shall mean any Natural Person or Entity that submits a Claim to the Settlement Program seeking compensation as a member of the Economic Class.

**Multi-Facility Business**: A business entity that, during the period April 1, 2010 through December 31, 2010, maintained **Facilities** in more than one location and had at least one **Facility** within the Gulf Coast Areas.

**Facility**: A separate and distinct physical location of a **Multi-Facility Business** at which it performs or manages its operations.

**Exhibit 4c**

**Claimant-Specific Factor**: In order to capture the impact of pre-DWH Spill trends in the claimant's revenue performance that might have been expected in the post-DWH Spill Benchmark Period, revenue will be adjusted by a Claimant-Specific Factor. The following steps will be used to compute the

Claimant-Specific Factor:
A. Calculate the difference between claimant's total revenue for January through April 2010 and total revenue in January through April of the corresponding claimant – selected Benchmark Period.
B. Divide the revenue change calculated in Step A by total revenue in January through April of the Benchmark Period to derive the Claimant-Specific Factor. If the calculated Claimant-Specific Factor falls below -2% or exceeds +10%, then it will be set at -2% or +10%, respectively.

**General Adjustment Factor:** In addition to the Claimant-Specific factor, all Claimants shall be entitled to a 2.0% General Adjustment Factor.
**Variable Profit**: This is calculated for both the Benchmark Period and the Compensation Period as follows:
1. Sum the monthly revenue over the period.
2. Subtract the corresponding variable expenses from revenue over the same time period. Variable expenses include:
   a. Variable Costs as identified in Attachment A.
   b. Variable portion of salaries, calculated as described below in the definition of Fixed and Variable Payroll Expenses.
   c. Variable portion of COGS, calculated by excluding salary costs (which are discussed below in the definition of Fixed and Variable Payroll Expenses) and fixed expenses included within COGS, including Amortization, Depreciation, Insurance Expense, and Interest Expense and Contract Services.

**Variable Margin**: This is calculated only for the Benchmark Period and is calculated as follows:

12

1. Sum Variable Profit from May through December of the years selected by the claimant to be used for the Benchmark Period.
2. Sum total revenue from May through December of the years selected by the claimant to be used for the Benchmark Period.
3. Calculate Variable Margin percent as Variable Profit calculated in (1) divided by total revenue calculated in (2).

**Step 2 Compensation**
Step 2 of the Compensation Calculation for Business Economic Loss Claims is intended to compensate claimants for incremental profits the claimant might have been expected to generate in 2010 in the absence of the spill, based on the claimant's growth in revenue in January-April of 2010 relative to the claimant-selected Benchmark Period (2009 or (average of 2008 and 2009) or (average of 2007, 2008 and 2009)).

**Calculation:**
Using monthly profit and loss statements and/or those documents listed in the Documentation Requirements for Business Claims:
1. Claimant may select from the following six-consecutive month periods for calculating Step 2 Compensation:
    a. May-October
    b. June-November
    c. July-December
       Unless claimant chose a seven-consecutive-month or eight-consecutive-month period in Step 1, in which case that same period of identical consecutive months in 2010 shall be used for Step 2.
2. Calculate the Claimant-Specific Factor:
    a. Calculate the difference between claimant's total revenue for January through April 2010 and total revenue in January through April of the Benchmark Period.
    b. Divide the revenue change calculated in [2.a] by total revenue in January through April of the Benchmark Period to derive the Claimant-Specific Factor. If the calculated Claimant-Specific Factor falls below -2% or exceeds +10%, then it will be set at -2% or +10%, respectively.
3. Calculate Incremental Revenue:
    a. Calculate total revenue in the consecutive months of the Benchmark Period selected in [1] above.
    b. Multiply total revenue by the sum of the Claimant-Specific Factor and the General Adjustment Factor of 2% to calculate Incremental Revenue.
4. Multiply Incremental Revenue by the Variable Margin in the Benchmark Period to calculate Step 2 Compensation.

13

**Exhibit 5 - Applicable Filing Options**

[Paragraph #3] Applies if using the State Headquarters as the Claimant

> A Multi-Facility Business with its Headquarters located within the Gulf Coast Areas that has one or more Facilities located outside of the Gulf Coast Areas and maintained separate contemporaneous profit and loss statements for each Facility during the Benchmark Period and 2010, may, at its option, elect to file claims in one of two ways: 1) A claim for each individual Facility located in the Gulf Coast Areas that the Multi-Facility Business chooses to include in the claim, or 2) a consolidated claim on behalf of all Facilities located in the Gulf Coast Areas. If the Multi-Facility Business chooses to file separate claims for one, some, or all of its Facilities located in the Gulf Coast Areas, the relevant Causation standard and RTP for each claiming Facility based on its location and industry shall apply. If the Multi-Facility Business chooses to file a consolidated claim, the Additional Multi-Facility Business Documentation must be provided, and the Settlement Program shall utilize the Causation standard and RTP applicable to the Headquarters to determine the Settlement Payment that is owed with respect to the losses suffered by all Facilities located within the Gulf Coast Areas.

[Paragraph #5] Applies if using the National Headquarters as the Claimant

> A Multi-Facility Business with its Headquarters located outside of the Gulf Coast Areas that maintained separate contemporaneous profit and loss statements for each Facility in the Gulf Coast Areas during the Benchmark Period and 2010, may submit separate claims for one, some or all Facilities located within the Gulf Coast Areas. The applicable Causation standard and RTP shall be applied separately to each claiming Facility based on its location and industry.

**Exhibit 5: Compensation**
1. For a **Multi-Facility Business** which has all **Facilities** (including Headquarters) in the Gulf Coast Areas and files a consolidated claim on behalf of the entire business, compensation shall be determined as set forth in the Business Compensation Framework.
2. For any other **Multi-Facility Business**, compensation shall be calculated using the Business Compensation Framework modified as follows:
    a. Sum lost profits and RTP(s) for all **Facilities** in claim.
    b. Subtract any spill-related Payments from the initial BP claims process and/or the GCCF to the **Multi-Facility Business** claimant.
    c. Subtract any applicable VoO Settlement Payment Offset and/or any applicable VoO Earned Income Offset.