# MEMORANDUM

**From:**  Class Counsel

**To:**  Claims Administrator

**Re:**  Aquaculture Businesses – Clam Farmers
*Policy Keeper No. 444*

**Date:**  June 6, 2013

      The clam industry is no different than other seafood distribution chains throughout the Gulf Coast.  In all industries, commercial fishermen must first harvest seafood from the Gulf of Mexico before the harvest can be processed and distributed through the Gulf's seafood processor and distribution chains. Clam farmers, as they are often called, are the harvesters in the clam distribution chain. Clam farmers generally maintain the same type of documents that other fishermen do, including:  (1) a saltwater products license; (2) a vessel license; and finally, (3) a license which permits them to commercially harvest clams from the Gulf of Mexico. Many clam farmers land their clams at either a seafood house or a seafood processing business that is completely separate from their own harvesting operation.  Clam farmers generally **do** obtain trip tickets "or their equivalents" at the time of landing.  Finally, a vast majority of clam farmers do not maintain monthly profit and loss statements or detailed monthly financial print outs as a typical seafood processor, landing site or seafood wholesaler business would.  They, like all fishermen, generally maintain their landing reports as a means to track their income.

      Hence, many, if not all, clam farmers can fall within the Seafood Compensation Program's ("SCP") definitions and frameworks as "Other" fishermen, and they should be given the option to present a seafood compensation claim if their documents support such a claim.

1. The SCP was Broadly-defined to Encompass all "Other" Seafood Claims.

      The SCP permits compensation for those that commercially harvest shrimp, oysters, finfish, crab and "other" seafood species within the covered region of the Gulf of Mexico. Footnote 10 on page 52 of the SCP states:  "Other Seafood shall be defined to mean all forms of seafood included in Exhibit 3 of the Deepwater Horizon Economic and Property Damages Settlement Agreement (Seafood Distribution Chain Definitions) including stone crab and spiny lobster, but excluding shrimp, oysters, finfish and blue crab." See Ex. 10, Pg. 52.  Importantly, the Seafood Distribution Chain Definitions defines "Seafood" as "fish **and shellfish** … caught in the Specified Waters of the Gulf of Mexico." See Ex. 3, Attachment A.  While the SCP does not mention clams specifically – the SCP does not specifically exclude clams as a covered entity.  See Ex. 3 preamble (excluding menhaden).

Under the broad definitions of the SCP, clams are covered as they, like oysters, are a saltwater shellfish species. Moreover, as the CA's memo notes, these shellfish are worthless for consumption and processing until they are harvested as mature clams from the waters of the Gulf of Mexico. Although the CA's memo appears to emphasize that some clam farmers harvest clams from leases owned by the State of Florida, these harvesting locations are clearly covered, as they are within the open waters[1] of the Gulf of Mexico with restrictions noted in the Cedar Key area.

2. <u>SCP Participants are Not Required to Produce "formal trip tickets" – the SCP Permits Trip Ticket "equivalents" or Tax Returns with a Sworn Statement.</u>

The memorandum prepared by the Claim Administrator fails to classify clam farmers as commercial fishermen, in part, because they purportedly do not receive "formal trip tickets". However, the SCP does not specifically require "formal trip tickets". Instead, the SCP was drafted to permit flexibility for fishermen to obtain trip tickets "or their equivalents such as dealer forms".[2] While "equivalents" is not defined in the SCP, vendor invoices received by clam farmers are identical to the trip tickets received by other commercial fishermen. They both contain the volume of seafood harvested, the sales price of each seafood unit sold, and the gross revenue earned by that harvester for the seafood landed. These elements are all that is required to sufficiently calculate a SCP claim. Thus, any documentation containing this information should be considered the "equivalent" of a trip ticket.

Attached to this document are landing reports and vendor purchase detail reports submitted and paid by the claim facility that show the species harvested, the quantity harvested, landing location and the price per unit – all requirements from the CA when assessing seafood claims.[3] Clam farmers receive these reports **after** they are harvested from the Gulf – not before. This fact demonstrates that clam farmers do formally land their harvest after they pull their clams from the Gulf of Mexico – not, as the CA's memo appears to suggest, when the immature clam seedlings are first planted in the Gulf.

Even where a SCP claimant cannot obtain trip tickets or their equivalents, a claimant may produce his tax return accompanied with a sworn written statement attesting to the seafood harvest landed by year, vessel and dollar value. In many cases, clam farmers have submitted claims in this way.[4]

---

[1] The CA memorandum appears to state that clams are harvested in the open waters of the Gulf of Mexico (Page 1, paragraph 2, line 2), but then states clams are not harvested in the open waters of the Gulf of Mexico later (Page 3 under Analysis, first sentence). Again, clams are harvested in the open waters of the Gulf of Mexico.

[2] See Ex. 10, pg. 56.

[3] See attached, the following examples filed with the Facility: (1) A clam "other" SCP claim; (2) other various examples of dealer forms.

[4] We can provide the Claimant IDs if the CA deems them helpful to reaching his decision.

3. <u>While Clam Farmers Maintain the Necessary Documents To Submit Claims Under the SCP – the Vast Majority do not Maintain Documents Sufficient to Submit a BEL Claim</u>

As a reason for its conclusion that clam farmers should present their claims under the BEL framework, the CA's memo assumes that clam farmers cannot document their claims under the SCP. But clam farmers maintain the very same types of documents that other commercial fishermen maintain, including landing reports detailing species caught, quantity caught and value of harvest; vessel licensing and registration; saltwater products license; tax returns; and the species-specific aquaculture license that permits a clam harvester to commercially harvest his catch. Importantly, if the CA undertook a review of the BEL documents a clam farmer could provide, he would quickly notice that very few – if any – clam farmers maintain the detailed monthly profit and loss statements that traditional processors maintain. The proposed classification would only exacerbate the documentation problem rather than alleviate it.

The Settlement Agreement does not define a fishing license so we are left to assume that it should be given its plain and natural meaning. Webster's Dictionary defines a license to be a 1a. permission to act; b. freedom of action; 2a. permission granted by competent authority to engage in a business or occupation or in an activity otherwise unlawful. Considering the Settlement's covered species are "shellfish", a license authorizing the commercial harvest of shellfish within the covered waters of the Gulf of Mexico would seem to be a perfect example of a "fishing license". To lawfully harvest clams, clam farmers must obtain a Florida Aquaculture License. Like other fishermen, clam farmers that do not obtain a license cannot harvest their clams – and importantly, *a clam farmer can only sell his clams to a certified shellfish wholesaler* (unless he has applied to be a certified shellfish wholesaler).[5] Hence, it appears clear that clam farmers do maintain a commercial fishing license as intended by the Settlement.[6]

4. <u>All Seafood Distribution Chains Start with a Fisherman that Harvests Seafood.</u>

Regardless of which Gulf of Mexico commercial seafood distribution chain we analyze, one constant is obvious: without a fisherman to first harvest seafood from the Gulf of Mexico, there is no harvest to process or distribute. We cannot assume, that the clam distribution chain begins as a landing site, a processor or a wholesaler. Even more flawed is the assumption that all clam farmers are "fully-integrated" entities. Many are not. Instead, many clam distribution chain entities are completely separate entities. In some limited circumstances, companies may perform a harvesting and processing / distributing function. In any such case, there is no question that a clam farmer with landing reports falls within the SCP. As such, if he can provide

---

[5] See http://shellfish.ifas.ufl.edu/PDFs/Getting%20Started/Basics%20of%20Harvesting%20and%20Handling%20Clams.pdf.

[6] Moreover, the Settlement does not differentiate between farm-raised oysters within the Gulf of Mexico. It is not clear how such a differentiation should now be installed in the Settlement.

the requisite documents establishing his seafood harvest, the CA should process his claim under the SCP.