# MEMORANDUM

**From:** Class Counsel

**To:** Claims Administrator

**Re:** Wetlands Claims
*Policy Keeper No. 360*

**Date:** April 4, 2013

      As an initial matter, it is helpful to give some background on the negotiation of the Wetlands Settlement Framework.  First, as in other frameworks, the Claims Administrator is empowered to make a neutral, independent determination, to the best of his ability, as to the validity of a claim.  This determination should be made and Notice should be issued without interference from either the Parties or Claimants. Class Counsel's threshold position is that the Claims Administrator *must* determine who is the owner of an eligible parcel, as the Settlement Agreement explicitly provides as such: "The Claims Administrator *shall* determine whether an Eligible Claimant(s) is the owner of an Eligible Parcel."  (See Exhibit 12A(1)(A)(i)(emphasis added).  Eligible Claimants are defined as non-excluded claimants "who were owners of Eligible Parcels during the time period April 20, 2010 to [the date of the Settlement Agreement]." See Exhibit 12A(1)(A).

      Additionally, under the express terms of the Settlement Agreement, in order to get paid, an Eligible Claimant must submit " . . . all required supporting documents," as contained in Appendix F of Exhibit 12A, which are 1) "an official copy of the deed for the parcel;" and 2) "official copy of the 2010 property tax assessment notice for the eligible parcel.[1] See Exhibit 12A, Appendix F.  Evidenced by these limited documentation requirements, it was *never* the intent of the negotiators of the Wetlands Framework to require anything approaching a curative title search.

      Furthermore, while tax assessments are required documents, they were not included in the Wetlands Framework's Documentation Requirements to be used by either Claimants or the Claims Administrator to *prove ownership*.  Rather, because the database confected by BP's expert and negotiated to and agreed to by the parties was reliant on tax assessment data as an *initial screening* matter, tax assessments were to be used in the *initial review* of parcels.  Indeed, both the Parties and the Claims Administrator's own hired property personnel have repeatedly agreed that the integrity of such data, albeit useful in determining parcel location and time period of ownership,[2] is *not* suitable for ownership determinations.

---

[1] Class counsel notes while the current Wetlands Real Property Claim Form indicates that provision of a 2011 Tax Assessment is also a required document, nowhere is that requirement contained in the Settlement Agreement itself, and thus no Claimant should be denied for not submitting same.

[2] *See, e.g.,* Exhibit 12A(1)(G)(ii).

1

Though it may be reasonable when presented with competing settlement claims on the same tracts for the Claims Administrator to *start* its initial review by looking at the tax assessment rolls first, under Louisiana law, payment of taxes does *not* establish title or a "cloud" on title. Therefore the existence or non-existence of these assessments cannot be used to deny payment to Eligible Claimants or delay processing of properly presented claims. Class Counsel respectfully suggests that this over-reliance on tax assessments by the Claims Administrator's office and its vendors is misplaced, has led to many of the issues raised in this most recent Request for Input, and must be immediately corrected.

Finally Class Counsel respectfully brings the following to the Claims Administrator's continued attention to the spirit and claimant-friendly nature of the Agreement, particularly Sections 4.3.1,[3] 4.3.7,[4] 4.3.8,[5] and 4.4.7.[6]

*Claims Administrator Question 1:*

*The first category comprises parcels as to which competing claimants have each filed a claim for compensation with the DHCC. What procedures should the Claims Administrator employ to resolve the conflicting claims? For example, does the Claims Administrator have the authority to determine which claimant has the better title and if so, what procedure should be employed? When should the Claims Administrator invoke concursus and what procedure should be employed? The parties are asked to give their position on these and other applicable and appropriate procedures.*

Class Counsel Response:

Regarding competing claims filed by others who are Eligible Claimants under the framework, it must first be noted that a "claim" under the Deepwater Horizon Settlement Fund ***does not*** necessarily equate to an adverse claim or "cloud" on another claimant's title. Put

---

[3] Section 4.3.1 confirms that the Claims Administrator is acting as an administrator and trustee "**for the benefit of the Economic Class**". (emphasis added)

[4] Section 4.3.7 provides: The Settlement Program, including the Claims Administrator and Claims Administration Vendors, shall work with Economic Class Members (including individual Economic Class Members' counsel and Class Counsel) to facilitate Economic Class Members' assembly and submission of Claims Forms, including all supporting documentation necessary to process Claim Forms under the applicable Claims Processes. The Settlement Program, including the Claims Administrator and Claims Administration Vendors, shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice **so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement**. (emphasis added)

[5] Section 4.3.8 provides: The Claims Administration Vendors shall evaluate and process the information in the completed Claim Form and all supporting documentation under the terms in the Economic Damage Claim Process to **produce the greatest ECONOMIC DAMAGE COMPENSATION AMOUNT that such information and supporting documentation allows under the terms of the ECONOMIC DAMAGE CLAIM FRAMEWORK**.(emphasis added)

[6] Section 4.4.7 provides: The criteria, documentation, proof, and Compensation Amount provisions of each of the Claims categories **shall apply equally to all Claimants**. (emphasis added)

2

differently, a "competing claim" under the settlement is entirely different than valid "competing claims" to the *title of a tract*, thus creating a *"cloud"* on title.

As stated above, it is Class Counsel's position that the Claims Administrator **must** determine who is the owner of an eligible parcel, and that the Settlement Agreement explicitly provides as such, "The Claims Administrator *shall* determine whether an Eligible Claimant(s) is the owner of an Eligible Parcel." (See Exhibit 12A(1)(A)(i)(emphasis added). Therefore, the Claims Administrator must determine the owner of an eligible parcel—namely who has the better title as between competing claimants—and then, upon this determination, any aggrieved or unsatisfied party will have the rights of re-review/reconsideration, and/or appeal as also provided by the Settlement Agreement.

Regarding avenues of resolution, the following has been previously suggested by some representatives in your office, namely: (1) the parties amicably resolve the issue; (2) litigation between the competing claimants resulting in a final resolution by a judicial tribunal; and/or (3) the Claims Administrator may invoke a concursus proceeding to have the court decide which of the parties is entitled to the common fund. Class Counsel respectfully objects and disagrees with all three of these proposed alternatives.

As stated above, the settlement agreement provides that the Claims Administrator shall make the decision. Nowhere in the Settlement Agreement is it contemplated that Claimants must somehow meet and negotiate as against each other *prior to receiving a determination to from your office*. Not only is imposing such a requirement outside of the Settlement Agreement and the authority vesting in the Claims Administrator therein, requiring Claimants to negotiate with each other puts them into a competing position with each other, violating the claimant friendly provisions of the Settlement. See, e.g. Section 4.3.7 and 4.4.7.

As to the second suggestion of claimants being required to "clear" their title prior to receiving a determination from your office, again, nowhere in the settlement agreement is it contemplated that any claimant should have to file some type of lawsuit or other judicial process external to the Settlement to quiet its title in order to receive compensation for an eligible parcel. Furthermore, as stated above, the Settlement was never negotiated to require some sort of curative title search and the documentation requirements reflect this. It was never the intent of the Wetlands Framework that an Eligible Claimant, as a Class Member and thus already a party to this Settlement, would be additionally required to go to another court and litigate these issues in order to receive payment.

As to the third suggestion, that if the Claims Administrator cannot determine title, that the Administrator may invoke a concursus proceeding to have the court decide which of the parties is entitled to the common fund, as above, Class Counsel respectfully objects to any extra judicial process being invoked. Concursus is only available in state court, and cannot be invoked by a neutral third party. As the Settlement is governed exclusively by the jurisdiction of the Federal Court, concursus is not an available remedy.

Class Counsel, however, would suggest use of the federal interpleader action in certain <u>limited</u> situations. In the unlikely event that the Claims Administrator cannot determine who has

3

better title, the Claims Administrator should *still* make his best decision, and issue Notice to each claimant, thereby triggering each claimant's appeal rights under the Agreement. Any claimant, aggrieved by the decision of the Administrator can appeal, with any *portion* of funds that were disputed[7] being deposited by the Administrator into an interest bearing account under the control of the federal court within the Eastern District of Louisiana, and pending final determination by that Court.[8]

In sum, when multiple claims are *properly filed* within the settlement framework regarding the same piece of property, the Claims Administrator should notify all of the multiple claimants that there are indeed multiple claims filed. Then the Claims Administrator or his designee[9] should decide independently who has the better title and notify all of the multiple claimants, thereby triggering the appeal rights of the respective claimants.  By that method, all claimants will be dealing with the same information and if an appeal is filed, whomever has better title can be dealt with via the appeals process.

Also, as you are aware, your office requires a release of each claimant found payable, and this release requires the claimant to indemnify your office, and BP, if, by chance, a claimant is somehow paid erroneously.

***Claims Administrator Question 2:***

*The second category comprises parcels as to which the adverse party has not filed a claim with the DHCC.  What should be the criteria for the Claims Administrator to pay the claim and what procedures should be employed?  Using Lake Eugenie as an example,  the question would be is Lake Eugenie the "owner of an Eligible Parcel" under the Settlement Agreement if another entity has  an ownership interest and when, if ever, may the Claims Administrator disregard a recorded adverse ownership interest in paying a claim? Must the claimant remove adverse claims of ownership for the claim to be paid?*

Class Counsel Response:

Regarding parcels that have a *potential* competing ownership claim (and not adjudication to a public entity which is dealt with in Question 3), but only *one* party has presented itself to the Settlement Facility and filed a claim with the DHCC, the Claims Administrator must again follow the Settlement Agreement and make his own independent determination as to the claims or claim *properly before his office*.

---

[7] Non-disputed funds should be released and paid immediately to the appropriate Claimant.

[8] Class Counsel understands  that under this proposal either revision to the current appeal rules, or development of additional rules to apply to these types of potentially "consolidated" claims may be necessary.  Class counsel offers to participate in further discussion on any such revisions or additions.

[9] Due to the unique nature of wetlands real property in coastal Louisiana Class Counsel would suggest the Claims Administrator consider engaging an oil and gas property and title specialist who has familiarity with Louisiana Wetlands and the type of relevant documentation often used in those areas such as leases, oil and gas title opinions, pipeline leases, and the like.

Put another way, as to any absent or dead owners who may *potentially* file claims, it is Class Counsel's position that this issue is not properly before the Claims Administrator. The job of the Claims Administrator is to process the claims that come into the office. There is no affirmative obligation to "find" potential claims nor is it proper for the office of the Claims Administrator to engage in a "curative title search" or prove title for any Claimant "as against the world." The Claims Administrator should make the determination of the Eligible claims properly before him and either pay or deny. BP may always appeal any determination, and as stated above, the Claims Administrator has an indemnity to rely upon.

If the claimant has good title, meets the document requirements, and thus and is eligible pursuant to the Framework, he or she should be issued an eligibility notice for that parcel. If the Claims Administrator determines that the claimant does not have better title, no eligibility notice should be issued until the other potential claimant files a claim or the deadline to file claims, April 20, 2014, passes without a competing claim being filed. Obviously, if no competing claim is filed, then the party that has filed the claim should be fully compensated for that parcel.[10] If a competing claim is filed, then the same options as discussed above in Question 2 should apply.

As to the suggestion that a claimant who is properly before your office should file an action to "quiet title" against the person with a potential adverse ownership interest, or that person's heirs and assigns, again, there is nothing in the Settlement Agreement that would support this approach. If a claimant has filed a claim and submitted its deed and relevant property tax assessments, it has complied with the strict terms of the settlement agreement, see Exhibit 12A, and should be paid.

In the unlikely event that the Claims Administrator cannot determine who has better title, the Claims Administrator should *still* make his decision, thereby triggering the presented claimant's appeal rights under the Agreement, and any portion of funds that were disputed could be deposited in an interest bearing account under the control of the federal court within the Eastern District of Louisiana pending for final determination by that Court.

*Claims Administrator Question 3:*

*The third category comprises tax adjudicated property to the State of Louisiana and/or other public entities that are excluded from the Settlement Agreement. Is the claimant the "owner of an Eligible Parcel" if the parcel has been adjudicated to the State of Louisiana or other public entity for nonpayment of taxes (regardless of whether the claimant contends that the adjudication was invalid) and what steps, if any, should the claimant take if the adverse title is in the State of Louisiana (it being recognized that remedies such as concursus would not be available as to adjudicated properties)?*

---

[10] Class Counsel further notes that it is highly doubtful that any absent or missing owner or heir could make a proper claim into the DHCC in that these persons most likely would not be able to meet the documentation requirements of the Wetlands Framework (especially as to provision of recent tax assessments). See Exhibit 12A, Appendix F.

Class Counsel Response:

The State of Louisiana is not a party to the settlement and is, in fact, specifically excluded by its terms. See Settlement Agreement, Sections 2.2.5 and 38.75. Neither Louisiana, or any of its related entities, can make a claim into this process. As the State of Louisiana is not a party to the settlement, there is absolutely no basis to require a claimant to file an action in state court to clear erroneous property tax adjudications. Any other approach deprives the Federal Court of its exclusive jurisdiction under the Settlement Agreement. Thus any claim that has been held up subject to resolution of this issue must be paid.

Moreover, even if by some chance an absent or erroneously assessed owner or its heirs would or could redeem the adjudicated property from the State of Louisiana today, in 2013, arguably these persons could *not* file a claim pursuant to the settlement as they would not be able to provide proof of payment of 2010 taxes, which, as mentioned, is a requirement under the Framework. See Exhibit 12A, Appendix F. Therefore as to any parcels with which a purported state adjudication matters, these claims should be immediately paid.

In summary, pursuant to the Settlement Agreement, the Claims Administrator must make as decision as between competing Eligible claimants who have properly filed claims, and then let the appeals process work as contemplated by the Agreement. Interpleader should be an option, but only *after* the Claims Administrator makes his decision, and only if an aggrieved claimant-party appeals. The State of Louisiana has no role nor standing in this Settlement Agreement and any purported adjudication by the Louisiana has no operative effect under the Wetlands Framework. Thus any claims for parcels upon which a purported state adjudication exists should immediately be paid.