# Memorandum

**To:** Patrick A. Juneau, Esq.
Claims Administrator

**From:** Class Counsel

**Matter:** <u>In re: Deepwater Horizon</u>
MDL No. 2179

**Re:** Subsistence: Impairment

**Date:** December 16, 2012

The Subsistence Framework (Exhibit 9 to the Settlement Agreement) explicitly states that the loss period (*i.e.* compensation period) for Subsistence claimants is "the time period of loss of subsistence use consistent with the closure <u>or</u> *impairment* of geographic areas relied upon by the Claimant between April 20, 2010 and December 31, 2011" (emphasis added). Throughout, the Subsistence Framework uses the terminology "closure or impairment" – never does the Framework refer to "closure" alone. Thus, the plain language of the Subsistence Framework makes clear that "impairment" is not a synonym for "closure".

Impaired areas are those that remained open (*i.e.* not officially closed to fishing/hunting by the government), but which were nonetheless negatively affected (*i.e.* harvest there was "impaired") by the Spill.

During the parties' meeting with the CADA on October 3, 2012, the CADA recognized and acknowledged that the Subsistence Framework explicitly includes losses incurred as a result of "impaired" harvesting areas, and that closure and impairment are not synonymous.

Yet BP's approach would read "impairment" out of the Framework, and attempt to limit compensation to only those losses caused by the formal closure of harvesting areas. This is inconsistent with both the intent and the language of the Settlement.

Indeed, much attention was given to the inclusion of "impairment" during negotiation of the Subsistence Framework.

As with other Subsistence concepts, impairment of a harvesting area must be considered from the perspective of the Subsistence user. The Subsistence way of life is as much a matter of culture and preference as of necessity. If a Subsistence user refrained from harvesting from an area post-Spill because there were lower-than-typical yields from that area, or poor quality yields, or yields that were questioned as potentially unsafe for consumption/use, then that judgment should be honored.

Any corroborating evidence – including circumstantial evidence of such impairment – should be sufficient, especially since the Subsistence claimant is certifying, under penalty of perjury, the truth of his/her statements regarding the impairment of harvesting areas and his/her resulting losses.

Nowhere in the Settlement Agreement or Subsistence Framework does it say that a Subsistence claimant must objectively prove impairment of harvesting areas.

For example, a Subsistence claimant should not have to prove actual contamination of seafood from a particular harvesting area using scientific studies, as BP suggests. If a Subsistence claimant reasonably refrained from fishing in that area because of concern based on media reports or personal observation that fish from that area were not safe to eat that should be sufficient to show impairment under the terms of the Settlement.

BP argues that governmental agencies monitored seafood safety post-Spill, and therefore Subsistence claimants should not be compensated for lost harvest from areas they refrained from fishing in based on media reports and personal observation of contaminated and unsafe seafood.[1] However, as noted above, there is no requirement in the Settlement Agreement that a Subsistence claimant must objectively prove impairment by showing the seafood from a harvesting area was formally deemed to be unsafe by a governmental agency, or any other source.  The reasonable judgment and observations of the Subsistence claimant regarding the impairment of a harvesting area should be sufficient.  Moreover, the very fact that the State of Louisiana and other agencies found it necessary to continuously test the water and seafood for contamination for eighteen months post-Spill actually underscores that there was long-term, widespread concern about the safety of Gulf seafood post-Spill, supporting the reasonableness of Subsistence users' decisions to refrain from harvesting in those areas thought (and observed) to have potentially contaminated and unsafe sea life post-Spill.

The Subsistence Framework explicitly intends to compensate losses caused by two situations – the closure of harvesting areas *and* the impairment of non-closed harvesting areas.  Nothing in the Settlement Agreement requires objective proof of such impairment, and BP's attempt to create such a requirement undermines the intent of the Settlement.  The plain language of the Settlement Agreement and the reasonable judgment and observations of the Subsistence claimants should be honored and followed here.

---

[1] BP's reference to Dr. Tunnel's Declaration should be disregarded.  The parties were not supposed to get "hired guns" to be advocates to make arguments to the Claims Administrator, especially with regard to arguments (such as those at issue here) that have already been made (and rejected) by agreement of the Parties during the Settlement negotiations.