# MEMORANDUM

**TO:**      Patrick A. Juneau, Esq.
            Claims Administrator

**FROM:**   Class Counsel

**DATE:**   October 31, 2012

**RE:**     Treatment of Specified Gulf Waters within Economic Loss Zone Classifications

      During the negotiation of the Settlement Agreement generally, and in the negotiation of Exhibit 16 particularly, it was Class Counsel's understanding, intention and belief that the Specified Gulf Waters were included within and treated as Economic Loss Zone A with respect to "physical facilities" located in and/or "full-time employees" who provided their full-time services within such Specified Gulf Waters, as well as Individuals who "worked in, were offered and accepted work in, owned or leased real or personal property located within" such Specified Waters.

      As finalized, presented, and preliminarily approved, the Economic and Property Damages Class Settlement Agreement is predicated on basic principles, three of which include:

1) Section 4.3.7

2) Section 4.3.8

3) The recognition of the devastation of the *Deepwater Horizon* Spill along the Gulf Coast. Zone A businesses, the Seafood Industry, and Tourism businesses in areas abutting the coast are deemed to have losses caused by the spill, and require no proof of specific causation in order to recover under the Settlement Agreement. No one would doubt the devastating impact of the spill in these coastal areas, and on the Specified Gulf Waters, during and after the spill. The Specified Gulf Waters themselves, one would have to acknowledge, are in the heart of the damaged area, and thus losses of Claimants who live and work on those waters, whether it be individuals or businesses, would be presumed.

      Under Exhibit 8A, the Individual Economic Loss claimants "may establish an alternative location of economic loss for the claiming job other than their employer's location by providing evidence that their primary employment activities and responsibilities occur in a location different from their employer's business address, and that the claimed DWH Spill related economic losses occurred at such location." There is no doubt that a Claimant can claim that his or her losses occurred on the Specified Gulf Waters.

How one could imagine treating the Specified Gulf Waters as anything other than Zone A is puzzling.  Applying the underlying premise of the Settlement, the Causation Standards are lessened – indeed eliminated - the closer you are to these waters.  This formed the basis of the creation of Zone A.

Even if not considered to fall within "Zone A" as reflected in yellow on the settlement maps, the Specified Waters abut Zone A, and by looking to the coastline as a road between two "Zones", the claimants would be entitled to the most favorable Economic Zone treatment – *i.e.* Zone A.

Yet perhaps the most telling support for the notion that losses on Specified Waters are presumed can be found within the Seafood Compensation Program.  These commercial fishermen undoubtedly suffered their losses in and on Specified Gulf Waters, and all of their losses under the various Seafood Compensation Program Frameworks are presumed.  Notably, the establishment of the Seafood Fund (and corresponding Compensation Program) were agreed to fairly late in the negotiations.  The structure for Zone A – which was always intended to cover losses in and on the Specified Gulf Waters – had already been established, without specific causation requirements.

Logic, fairness, the parties' intent, the negotiating history, and the structure of the Settlement Agreement itself all dictate that the Specified Gulf Waters be included within and treated as Economic Loss Zone A with respect to "physical facilities" located in and/or "full-time employees" who provided their full-time services within such Specified Gulf Waters, as well as Individuals who "worked in, were offered and accepted work in, owned or leased real or personal property located within" such Specified Waters.