# MEMORANDUM

**TO:** Patrick A. Juneau, Esq.
Claims Administrator

**FROM:** Class Counsel

**DATE:** October 17, 2012

**RE:** DHECC Alert No. 2012-16, and BP's October 15, 2012 Letter in Response.

As indicated in prior communications, Class Counsel generally disagrees with DHECC Alert No. 2012-16 (the "Subsistence Alert"), which is, with all due respect, entirely inconsistent with what was discussed and agreed to between the participants at the July 17, 2012 meeting regarding implementation of the Subsistence framework. More specifically, the Subsistence Alert incorrectly states that the parties "agreed" to the Caloric Intake Chart and Retail Price Chart attached as exhibits to the Subsistence Alert, and to a Subsistence framework calculation based on those charts. In actuality, Class Counsel did not agree to the use of the charts and the calculation based on them, and in fact strongly opposed them before and during the July 17, 2012 meeting and in all subsequent communications regarding Subsistence, including during the parties' October 4, 2012 meeting with Ms. Hendrick and a follow-up phone call today, October 17, 2012.

Class Counsel strongly disagrees with the use of the Calorie Intake Chart and the Subsistence calculation based on it because the Subsistence framework was not intended to be tethered to calorie counts. The "reasonable consumption" language in the Subsistence framework was intended to mean that a claim amount should be held to a reasonableness standard in the context of *Gulf of Mexico subsistence use*, not nationwide dietary consumption of seafood. The reasonableness standard was not intended to act as a cap or to play any part in the subsistence compensation calculation itself; it is solely a reference point. In fact, as noted at the October 4, 2012, meeting, many of the meeting participants themselves admitted they consume more seafood than "suggested" by the USDA guidelines that form the basis for the Calorie Intake Chart.

In addition to these, and our other previously-expressed disagreements with the Subsistence Alert, Class Counsel submits the following specific responses to BP's October 15, 2012 correspondence to the Program regarding same:

1. Field Visits

The Subsistence framework requires field visits to confirm the accuracy of Subsistence claims that are determined to have a base compensation amount that is greater than $10,000. Ex. 9, Sec. E. The intent behind this provision was to provide an extra level of scrutiny for large-value Subsistence claims, in order to guard against potential fraud – thus the intent was that a large claim with a base amount greater than

$10,000 should trigger the field visit requirement.[1]  At no point during the negotiations was it discussed or agreed that the base compensation amounts for Subsistence claims made by related claimants would be added together and the combined value of those several claims, if over $10,000, would trigger a field visit.  More broadly, at no point during the negotiations, and nowhere in Exhibit 9, is there any suggestion that Subsistence claims made by related claimants should be linked to each other, cross-checked against each other, or otherwise combined or considered together in any way, for any purpose.  If BP's intent was that separately filed Subsistence claims made by related claimants should be considered cumulatively for any purpose, including the field-visit trigger, BP could have brought that up during the negotiations – but BP did not.  The Settlement Agreement must be implemented as it was negotiated and agreed to by the parties.  BP's *post hoc* attempt to add this interpretation to Exhibit 9 should not be allowed.

2.  Allocation of Commercial Catch

Class Counsel agrees with the CADA team's October 16, 2012 response regarding this issue:  all lost take-home catch that is not sold by the claimant, but instead is retained for consumption/barter/trade/etc. should be compensated through the Subsistence framework – only Seafood that is *sold* by the claimant should be compensated *via* the Seafood Program.

This position is consistent with the Subsistence framework, which makes clear that all lost take-home catch (*i.e.* in-kind Seafood compensation) that is "sold by the claimant, rather than used for barter," trade, consumption, or other subsistence use, should be allocated towards lost earnings. Ex. 9, B(2).  Thus, it follows that all lost take-home catch that is **not** sold by the claimant, but is instead used for barter, trade, consumption, or other subsistence use, should be allocated towards the claimant's subsistence claim and compensated via the Subsistence framework.

3.  The Interview Form

Class Counsel strongly disagrees, as we have done on many prior occasions, with BP's contention that the Subsistence framework "clearly contemplates mandatory interviews for all claimants."  We therefore agree with the CADA team's October 16, 2012 response that interviews of Subsistence claimants will be conducted "only when necessary."

---

[1] BP appears to rely on the phrase "per extended family unit" to support its argument that separately-filed claims by related claimants should be considered cumulatively for the purposes of the field visit requirement.  This reliance is a stretch, at best.  The phrase "per extended family unit" is in the field visit section of Exhibit 9 to reflect the fact that it is likely that the type of large Subsistence claim that will reach a base compensation amount of greater than $10,000 is likely one by a Subsistence claimant whose Subsistence use includes giving subsistence resources to several members of his or her extended family unit.  In context, that phrase does not support BP's argument that separately-filed claims by related claimants should be considered cumulatively – nor does any other language in Exhibit 9.  Moreover, the parties' intent that the field visit section applies only to large single claims (and not an aggregation of small claims) is evident from the use of the singular in the latter portion of that section:  "…a field visit and investigation as to the accuracy of the *claim* prior to the *payment*." (Emphasis added.)

4.  Third-Party Affidavits or Sworn Statements

Class Counsel disagrees, once again, with this *post hoc* addition of a requirement for third-party affidavits from bartering partners. Class Counsel's position, which we discussed at the July 17, 2012 meeting and in several subsequent communications, is that the Subsistence framework does not include any requirement that bartering losses be verified separately from consumption losses. The framework focuses (correctly) on the amount of resources the claimant harvested for Subsistence use (where "use" includes barter, trade, and consumption); the claimed amount need only be reasonable in the context of other Gulf of Mexico subsistence users. At and after the July 17, 2012 meeting, we therefore specifically disagreed with Brown Greer's proposed requirement that claimants submit third-party affidavits from all individuals with whom they barter, because (a) it is not required (not even implicitly) by the Subsistence framework, and (b) it is over-burdensome and impractical to require claimants to track down and ask for affidavits from every person they may have bartered with during an 18-month period several years ago.