MEMORANDUM

**To:** Patrick A. Juneau, Esq.
     Claims Administrator

**From:** Class Counsel

**Matter:** <u>In re: Deepwater Horizon</u>
       MDL No. 2179

**Re:** Causation Analysis
    (Mike Juneau E-Mail of Sept. 25th)

**Date:** September 27, 2012


Question Presented:

> As to BEL claims, once a claimant's financial records satisfy the causation standards set out in Exhibit 4B, does the Settlement Agreement mandate and/or allow the Claims Administrator to separate out losses attributable to the oil spill vs. those that are not?
>
> Answer: No.[1]

Stated another way:

> Once a claimant passes the causation threshold, is the claimant entitled to recovery of *all* losses as per the formula set out in Exhibit 4C?
>
> Answer: Yes.

Or:

> Is some consideration to be given so as to exclude those losses clearly unrelated to the spill?
>
> Answer: No.

---

      [1]There are two exceptions, which are discussed more fully *infra*: **(a)** Where Causation is established for Spill-Related Cancellations under Exhibit 4(B) Sections II(D) or III(D); or **(b)** Where the Claimant is a "flagged" Service and Support business or employee under Settlement Agreement Sections 1.3.1.10 and 1.3.1.12 and Exhibit 16. (With respect to the second exception, Class Counsel would submit that all "Moratoria" losses are, in fact, losses "attributable to the oil spill"; nevertheless, the Settlement Agreement creates a mechanism that allows the Claims Administrator to look behind the standard Exhibit 4B Causation Tests.)

Hypothetical Posed:

A small accounting corporation / firm is located in Zone B. They meet the "V-shaped curve" causation test. The explanation for the drop in revenue is that one of the three partners went out on medical leave right around the time of the spill. Their work output, and corresponding income, thus went down by about a third. The income went back up 6 months later when the missing partner returned from medical leave. Applying the compensation formula under Exhibit 4C of the Settlement Agreement, the accounting firm can calculate a fairly substantial loss. Is that full loss recoverable?

Answer: Yes.

General Discussion

The objective nature of the Causation / Compensation inquiry is a cornerstone of the way that the Settlement was negotiated and presented to potential Class Members, the public and the Court.

Once Causation – *i.e.* for losses due to the spill – is established, (either by presumption or by one of the alternative tests), then the Compensation formulas measure the losses (both Step One and Step Two) that are deemed to be caused by the spill, as defined objectively by the terms of the Settlement Agreement.

The formula dictates the recoverable compensation under the Settlement – just as the Settlement similarly confines the recoveries of businesses under the Causation and Compensation frameworks, even where the Claims Administrator might determine that the business has suffered additional losses attributable to the spill which fall outside of the Agreement's parameters.

Critical to the Settlement Agreement, from both Parties' perspectives, was the *avoidance of subjective determinations* about which losses may or may not have been – wholly or partially, directly or indirectly – attributable to the spill.

Specific Settlement Provisions

Section 5.3.2.3 of the Settlement Agreement makes it clear that the Causation requirements set forth in Exhibit 4B "*establish*" for the purposes of the Settlement that such claimant's "*loss*" (not partial loss) was due to or resulting from the Deepwater Horizon Incident:

> Causation Requirements For Business Economic Loss Claims Generally. Business Economic Loss Claimants, *unless causation is presumed,* must establish that their loss was due to or resulting from the Deepwater Horizon Incident. *The causation requirements for such Claims are set forth in Exhibit 4B.*

This is further supported by the Compensation Calculations described in Exhibit 4C Section II.

Nowhere in either of these descriptions / calculations is there any suggestion or authority for the proposition that the Claims Administrator will consider, evaluate or determine the extent to which such Step One or Step Two Compensation may or may not have been "attributable to the oil spill".

Nor is such an analysis or calculation or determination or deduction evidenced in either Example 1 or Example 2.

Nor is such an analysis or calculation or determination or deduction suggested or evidenced or implied within the Total Compensation language, which directs the Claims Administrator and Vendors as follows:

> Total Compensation is calculated as follows:
>
> (1)   Add Step 1 Compensation to Step 2 Compensation.
>
> (2)   Apply the agreed-upon Risk Transfer Premium (RTP).
>
> (3)   Where applicable, subtract from the sum of the Step 1 Compensation and Step 2 Compensation any payments received by the claimant from BP or the GCCF pursuant to BP's OPA claims process, as well as any VoO Settlement Payment Offset and VoO Earned Income Offset.

Section 4.3.8 of the Settlement Agreement, moreover, directs that the Claims Administrator and Vendors "*shall*" "evaluate and process the information in the completed Claim Form and all supporting documentation under the terms in the Economic Damage Claim Process to produce the *greatest* Economic Damage Compensation Amount that such information and supporting documentation allows."

Finally, and further, the exceptions support the rule. In particular, where a Claimant only establishes Causation based on Proof of Spill-Related Cancellations, the Settlement Agreement specifically provides that:

> Proof of spill-related reservation [or contract] cancellations only establishes causation for the specific cancellations sustained by the claimant and may result in recovery of damages solely related associated with such cancellations established as causally resulting from the spill.[2]

Nowhere does this language appear with respect to the Causation Presumptions or other Tests within Exhibit 4B.

---

[2] *See* Exhibit 4B Sections II(D) and III(D).

In the case of Service and Support businesses and employees, Exhibit 16 expressly provides that:

> The standard business economic loss frameworks for causation shall apply to non-moratoria losses....   However, if in the judgment of the administrator, the result of this causation test is driven predominantly by the inclusion of moratorium losses in the calculation, then the administrator shall conduct an individual review of the claim file to determine whether the non-moratorium portion of the loss was due in whole or in part due to or resulting from the DWH Spill.

Nowhere in Exhibits 4B or 4C – or anywhere else in the Settlement Agreement – does such language regarding a "review" or the "judgment of the administrator" with respect to either the Causation or Compensation calculations appear.

## Conclusion

The main purpose of the Causation tests as set forth in Exhibit 4B is to determine that the business losses were attributable to the spill (versus those that were not) in an objective and consistent manner.  These Causation Tests were the product of hard-fought arms-length negotiation, and were necessary given the vast number of businesses located in the geographical area of the class.

Under this Settlement Agreement, the passage of the Causation tests based on revenue are deemed (and, stated another way, agreed by BP) to constitute the link to the spill.  An individualized standard for thousands of businesses would create chaos and be unmanageable.  It would be entirely inconsistent with the specific agreed-upon language of the Settlement Agreement, and would result in an additional (and subjective) causation test that would allow a "second bite at the apple" in BP's favor.  Exhibit 4B – a foundation of the Settlement Agreement – would cease to have any meaning.

Moreover, the Claims Administrator would assume the great burden for each and every non-presumed business to attempt to separate out any conceivable issue that may or may not be spill related – a purely subjective endeavor that would grind the business claim processing to a halt.  This is not what the agreement says, nor is it practical.

The causation tests were agreed by BP to serve as the mechanism to avoid a micro-examination of each item of revenue, and the Excluded businesses were excluded in large part because of BP's concern that too many non-spill-related losses would be compensated.  (Note that, after months of discussion, the claims of attorneys, accountants and construction companies were included.)  To change this now would be re-writing the entire framework and foundation of the Business Economic Loss portion of the settlement.   Just as there are most certainly, by any subjective standard, spill-related losses that will, for some reason, not fit into the Causation and/or Compensation Frameworks, the Settlement Agreement is designed to avoid a case-by-case argument regarding the causal link to the spill.

Finally, given the Class Action structure of the settlement, such a fundamental change might present Notice, Due Process, or other Rule 23 concerns.