# MEMORANDUM

**To:** Patrick A. Juneau, Esq.
Claims Administrator

**From:** Class Counsel

**Matter:** <u>In re: Deepwater Horizon</u>
MDL No. 2179

**Re:** Monthly Profit & Loss Documentation

**Date:** September 19, 2012


Many smaller companies maintain their Profit & Loss Statements on a quarterly, semi-annual or annual, rather than monthly, basis. It was always contemplated that these Claimants would have the option to forego the potential flexibility in Causation and/or Compensation month-specific analysis by allocating the revenue and expenses evenly over the relevant period.

This is reflected in the Business Economic Loss Documentation Requirements, which specifically allow the business claimant to provide alternative source documents:

> Monthly and annual profit and loss statements (which identify individual expense line items and revenue), *or alternate source documents,* establishing monthly revenues and expenses for the claimed Benchmark Period, 2010 and, if applicable, 2011.[1]

This is further memorialized in the Definition of "Contemporaneous" which provides that:

> "Contemporaneous" or "Contemporaneously prepared" records or documentation shall mean documents or other evidence generated or received in the ordinary course of business at or around the time period to which they relate; in the case of financial statements, this shall include all periodic financial statements regularly prepared in the ordinary course of business. *In addition, "contemporaneous" or "contemporaneously" prepared evidence or documentation*, even if not proximate in time to the event or occurrence to which it relates, *shall include (1) documentation that is based on or derived from other data, information, or business records created at or about the time of the event, occurrence or item in question,* (2) a statement that is consistent with documentation created at or about the time of the event, occurrence or item in question, or (3) would support a reasonable inference that such event, occurrence, or other item in question actually occurred.[2]

---

[1] Exhibit 4A, Item 4.

[2] Section 38.38.

Hence, monthly profit and loss statements can be derived for the Settlement's purposes from quarterly, semi-annual or annual business records created at or about the time of the events in question.

Particularly where the company maintained Quarterly Profit & Loss statements, a comparison of, say, the Third Quarter of 2010 to the Third Quarter of 2007-2009 would result in the exact same analysis as a comparison of July/August/September 2010 to July/August/September 2007-2009.

In addition, there are many businesses in Zones A and B (and even Zone C) for whom Causation is presumed.

In any event, the Claimant should be give the choice to forego the potential benefit of the flexibility that a month-by-month analysis would provide in applying the Causation (where applicable) and/or Compensation frameworks, so long as the monthly profit and loss data provided to the Settlement Program in the form of alternative source documents are fairly and accurately derived from the profit and loss statements that were created by the Claimant in the ordinary course of business.[3]

When the PSC met with you last week, representatives of the Program indicated that they believed that Monthly P&Ls could be derived from Quarterly, Annual or Semi-Annual P&Ls that had been created in the ordinary course of business; however, it was the Program's understanding that Class Counsel had "agreed" with BP (at the "tutorial") that a Claimant was required to go back and attempt to re-create Monthly P&Ls from the bottom up.

This is not the case.

On May 15, 2012, Joe Rice indicated that:

> We answered this at the meeting but I don't recall the specific answer. My concern is to be sure that our operation is more favorable than the GCCF, so if GCCF allowed the allocation then we should allow the allocation.[4]

On May 21, 2012, Joe Rice indicated that:

> You would spread it out equally if it is not provided.

---

[3]To be clear, Class Counsel do not suggest that the Settlement Agreement should be interpreted to allow a claimant to use Quarterly, Annual or Semi-Annual Profit & Loss statements in lieu of Monthly P&Ls that were created in the ordinary course of business.

[4]*See, e.g.,* OBJECTIONS OF UNNAMED CLASS MEMBERS [Doc 198, No.10-7777], at pp.41-42 (complaining that the "requirement" of monthly P&Ls is unfair and unduly burdensome, and pointing out that the GCCF (at least based on their understanding or experience) allowed allocation).

On May 26, 2012, Steve Herman, for Class Counsel, formally responded:

> Where underlying formal P&Ls do not exist, the Claimant is entitled to satisfy the Documentation requirements by other means, including a fair and appropriate allocation that is supported by the business' financials.  We defer to the sound discretion of the Program to apply the Documentation standards (including the appropriate application of "Contemporaneous" as defined in the Agreement), reserving our right to revisit the issue, and to perhaps convene a Panel if necessary, if and as any problems or concerns may be reported or encountered in the processing of the claims.

Class Counsel encourage the Claims Administrator to interpret and apply the terms of the Settlement Agreement as they were written and intended: Namely, that Quarterly, Annual or Semi-Annual Profit & Loss statements may serve as "contemporaneous" Alternate Source Documents where original Monthly P&LS do not exist, so long as the monthly profit and loss data provided to the Settlement Program are fairly and accurately derived from the underlying profit and loss statements that were created by the Claimant in the ordinary course of business.

It is up to the Claims Administrator to fairly and independently interpret and apply the terms of the Settlement Agreement. [Section 4.3.1 ("…for the benefit of the Economic Class")]

The Claims Administrator does not need BP's approval or permission.

If BP disagrees with the Claims Administrator's interpretation and application of the Agreement, BP has the right to invoke an Administrative Panel under Section 4.3.4.