███████████ Owners' Association, Inc.   -   Claim ID 285308

This appeal presents the familiar issues of whether special assessments of a beachfront condominium association qualify as revenue and whether the association is entitled to the Tourism designation. On the former issue, BP seeks to apply a Discretionary Review comment by the District Court as a blanket pronouncement that special assessments for insurance may not be included in revenue. But BP's effort to expand the language used by the Court goes a bridge too far. For the following reasons, this panelist concludes that Claimant's special insurance assessments were part of a recurring revenue stream and that the Tourism designation was correct.

I.

Claimant is a beachfront condominium association located in ███████████ As a Zone A claimant, its BEL award of $███████ was enhanced by the Claims Administrator's assignment of the Tourism designation. In response to inquiries by the program accountant, Claimant provided details regarding special assessments in 2007 and 2010 for insurance premiums. In reliance on Policy 373 v.2, the Administrator considered the special assessments as recurring revenue streams and included them in Claimant's revenue calculation.

BP's principal argument is that special assessments for insurance are in the nature of reimbursements and should not be considered revenue. To support its position, BP relies on language in a Discretionary Review decision recently handed down in Claim ID #311664, another condominium association case. In its comment, the District Court in that case stated:

> "The Claims Administrator's decision is reinstated. Policy 328 v.2 sets forth how certain "revenue" items are to be treated. As to condominium associations, while assessments in general are considered as revenue, assessments in the nature of special assessments for expense reimbursement or special capital expense assessments are typically not considered revenue in accord with Policy 328 v.2."

BP contends that this language constitutes a determination by the Court that special assessments for insurance premiums may not be treated as revenue under the Settlement Agreement. BP further argues that this language is binding precedent on this and other appeal panels.

Claimant responds that unlike ordinary businesses, a condominium association has no traditional revenue stream. All revenue is based on assessments of one kind or another. Citing Policy 373 v.2, Claimant further argues that all recurring revenue streams within the business's normal course of operations should be included in revenue. Special insurance assessments fall squarely within this definition according to the Claimant, whether they are obtained regularly or on an as needed basis. Both parties cite prior appeal panel decisions that they contend support their respective positions.

Claimant also makes a fact based argument. Because insurance is usually the largest expense of a condominium association, a special assessment typically is required to make up for shortfalls in the amounts budgeted for this item. Otherwise, the additional assessments would be unnecessary. Thus, Claimant argues that special assessments are recurring revenue streams in the normal operation of condominium associations. Not surprisingly, BP counters that these assessments merely represent reimbursements for the actual costs of the insurance expenses incurred.

As noted, BP hangs its hat almost entirely on the Discretionary Review decision in Claim ID 311664. BP argues that "[t]he District Court recently confirmed that special assessments like this one are reimbursements that are not revenue under the terms of Policy 328 v.2, and which must be excluded from the calculation of revenue." BP further argues that the District Court's reinstatement of the Settlement Program's exclusion of the special assessments constitutes precedent applicable

to all special assessment issues.

A closer review of Claim ID #311664 shines light on the issue and adds context to the District Court's language. Claim #311664 involved a condominium association whose BEL claim was denied. The program accountant removed one-time non-recurring revenue from the calculation which resulted in the association's inability to satisfy causation. The appeal panel concluded that the special assessments were recurring revenue streams and remanded with instructions to include the assessments in the revenue calculation. BP sought Discretionary Review. In its request to the District Court, BP primarily argued that the special assessments were for specific, non-recurring expenses that did not generate any "actual profit" for the condominium association.

BP also argued that "special assessments for specific, non-recurring expenses such as structural repairs should be excluded from the calculation of revenue." As noted by BP, "[s]pecial assessments are charged under special circumstances, usually to pay for one- time, non-recurring fixed expenses, such as structural repairs." Thus, BP's position before the District Court was that such unpredictable *ad hoc* expenses are not part of a recurring revenue stream. Interestingly, neither the appeal panel decision nor the briefs in #311664 describe the specific nature or purpose of the special assessments at issue. Moreover, there is nothing in the filings of either party that suggests that those assessments were for insurance premiums. Hence, the broad issue presented in #311664 was solely whether one-time non-recurring special assessments should be included in revenue. In reinstating the Administrator's decision, the District Court answered this question in the negative.

The language used by the District Court in its comment appears to have been taken directly from Policy 328 v.2. That policy provides that reimbursed expenses and capital assessments are not typically treated as revenue. Thus, a reasoned interpretation of the District Court's language is that

one-time, non-recurring special assessments in the nature of reimbursed expenses and capital assessments should not be included in the revenue calculation. Unlike one-time expenses, insurance premiums are recurring expenses that are not isolated or unpredictable. Businesses budget for insurance premiums on a routine basis only to learn that insurers have charged higher premiums than were anticipated. Under these circumstances, this panelist concludes that the Court's comment in #311664 is not a blanket ruling that all insurance special assessments must be excluded from revenue. BP's argument to the contrary does not withstand analysis.

The above conclusion is bolstered by the fact that the District Court has also declined discretionary review in other cases involving insurance special assessments, leaving in place the Administrator's determinations that those assessments should be included in revenue. In addition, Appeal panels have rendered decisions on this issue since the decision in Claim ID 311664 in which panelists have come down on the side of treating special assessments for insurance as revenue. Those panels have likewise determined that such assessments are part of the recurring revenue stream of the condominium association.

Condominium associations are unusual business entities due to the nature of their operations. But the Settlement Agreement does not distinguish between traditional and non-traditional business entities nor does it favor one business model over another. I therefore conclude that Claimant's insurance special assessments, are, in fact, part of its recurring revenue stream based on the nature of its business. Accordingly, the Administrator was correct in including these assessments in the revenue calculation.

II.

As its second point of error, BP contends that the Administrator erred in assigning the

Tourism designation and its corresponding RTP.  On this issue, BP maintains that Claimant is merely an administrative agent composed of condominium owners and that it exists and functions solely for the owners' benefit.  In support of this argument, BP points out that Claimant does not arrange reservations nor derive any commissions from the rental of condominiums.  Further, its members pay assessments and provide the same services regardless of whether any units are rented to tourists.

In Appeal Panel *En Banc* Decision #3, we stated:

> "The determination of whether a condominium association qualifies for a tourism designation shall be made on a case-by-case basis.  It will be helpful for the panel or panelists making this determination if the parties provide information to the Claims Administrator on the allocation of renters and/owners to establish whether a significant percentage of the renters and/or owners are staying in the condominium from outside their home community."

Claimant points out that 93 of 98 owners rent their units to tourists and only 5 occupy their condos year round.  Claimant further argues that it provides pool maintenance, landscaping, elevator maintenance and pest control which caters to the needs of tourists and provides a direct connection to Tourism.

Policy 289 v.2 provides that Tourism determinations are to be based on the totality of circumstances and the Claims Administrator is afforded discretion in making this determination. Here, the record discloses that the overwhelming majority of owners rent their condominiums while only a small percentage are full-time residents.  Therefore, it appears that the majority of the persons utilizing the property are renters from outside their home communities.  This is not surprising given the beachfront location of the complex and the high percentage of owners that rent their condos. These facts, along with the provision of maintenance services, parking, landscaping and other

amenities, lead to the conclusion that Claimant has more than an indirect relationship with tourists. In the above ***En Banc*** decision, we explained the nature of the information needed to show the allocation of renters versus owners. Claimant has satisfied that directive here. Thus, the Administrator was justified in assigning the Tourism designation and there is nothing to suggest that he abused his discretion in doing so.

For the foregoing reasons, Claimant's special insurance assessments were properly included in revenue and its designation as a Tourism business was correct under the Settlement Agreement. BP's appeal is denied and the Claimant's Final Proposal is selected.