# MEMORANDUM

**To:**   Claims Administrator

**From:** Class Counsel

**Re:**   Businesses Subject to Moratoria Loss Review

**Date:** January 17, 2015

Under Section 5.10.3 and Exhibit 16 to the Settlement Agreement, the Settlement Program is directed to conduct a review and exclude any (expressly reserved) claims for "Moratoria Losses" in the event that: **(a)** The Claims Administrator determines that the BEL Claiming Entity or IEL Claiming Job Employer falls with the NAICS codes and descriptions marked with an "x" in Section I of "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses" in Exhibit 19; or **(b)** (i) The Claims Administrator determines that the BEL Claiming Entity or IEL Claiming Job Employer falls with the NAICS codes and descriptions marked with an "x" in Section II of "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses" in Exhibit 19, and (ii) the BEL Claimant or IEL Employer responds affirmatively that, in 2009, the business provided significant services, goods and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico.

**No other BEL or IEL Claimant is subject to any type of hold, review, or potential exclusion of "Moratoria Losses" under the Settlement Agreement**, for the reasons that follow:

**The Only Settlement Benefits Affected by Potential "Moratoria Losses" Are Those Which May Be Awarded to "Support Services to the Oil and Gas Industry" as Defined in Section 5.10.3.**

The term "Moratoria Loss" only appears in the Settlement Agreement in Sections 1.3.1, 3.3, 5.10, 10.2, 38.65, 38.91, Exhibit 16, Exhibit 19, Exhibit 21 and Exhibit 26.

Section 1.3.1 is part of the ***Class Definition.***  (not Settlement Benefits or Compensation) The two, and only two, sections of the Class Definition which refer to "moratoria losses" are: **(a)** Section 1.3.1.10, which addresses "Individuals/Employees in Support Services to Oil and Gas Industry" and **(b)** Section 1.3.1.12, which addresses "Businesses/Employers in Support Services to Oil and Gas Industry".

Sections 3.3, 10.2, 38.65, and Exhibit 26 all define and restrict the scope of BP's ***Release.*** They do not dictate or restrict Settlement Benefits or Compensation.  They *reserve* certain claims on behalf of Class Members, from the scope of the Individual and Class Release.

Section 38.91 is a ***Definition.***  It simply defines what a "Moratoria Loss" is.  It does not dictate or instruct how that definition is to be applied to Settlement Benefits or Compensation.

Page **1** of **6**

Exhibit 21 defines BP's *Assignment.* (not Settlement Benefits or Compensation)

The *only* Section within the Settlement Agreement that applies the term "Moratoria Loss" to Settlement Benefits or Compensation is Section 5.10.3.

No reference to "Moratoria Loss" appears in the Economic Damage Compensation Section, 5.3.

No reference to "Moratoria Loss" appears in the Business Economic Loss (BEL) Framework, Exhibit 4.

No reference to "Moratoria Loss" appears in the Start-Up or Failed Business Frameworks, Exhibits 6 and 7.

No reference to "Moratoria Loss" appears in the Individual Economic Loss (IEL) Framework, Exhibit 8.

No reference to "Moratoria Loss" appears in Section 5.11: "General Provisions Applicable to Payment of All Compensation Amounts".

The *only* Section within the Settlement Agreement that applies the term "Moratoria Loss" to Settlement Benefits or Compensation is Section 5.10.3.

Section 5.10.1 introduces the topic as follows: "Notwithstanding the foregoing, additional criteria set forth in Exhibit 16 apply *with respect to excluded industries*. The following is a summary." (emphasis supplied)

Section 5.10.2 then addresses businesses and employees in the Oil & Gas Industry as defined in and by Exhibit 17.

Section 5.10.3 then addresses businesses and employees, and only businesses and employees, in "Support Services to Oil and Gas Industry", which are then defined and limited to the following two, and only two, situations:

    a.    The Claims Administrator determines that the Claiming Entity or Claiming Job Employer falls with the NAICS codes and descriptions marked with an "x" in Section I of "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses" in Exhibit 19;[1] or

    b.    (i) The Claims Administrator determines that the Claiming Entity or Claiming Job Employer falls with the NAICS codes and descriptions marked with an "x" in Section II of "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses" in Exhibit 19, and (ii) the BEL Claimant or IEL Employer

---

[1] *See* Sections 5.10.3.1.1 and 5.10.3.2.2.

        responds affirmatively that, in 2009, the business provided significant services, goods and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico.[2]

Section 5.10.3.1.3 then provides that: "All businesses/employers *in* *this* *category* are barred from recovery for Moratoria Losses" (emphasis supplied). Hence: Only businesses "in this category" – *i.e.* no other category of business.

Similarly, Section 5.10.3.2.5 provides that: "All individuals/employees *in* *this* *category* are barred from recovering Moratoria Losses, but do not release moratoria claims" (emphasis supplied). Again: Only individuals "in this category" – *i.e.* no other category of individuals.

Likewise, Sections 5.10.3.1.4 and 5.10.3.2.6 both begin with: "All businesses/employers *in* *this* *category* are permitted to pursue Business Economic Loss Claims for (i) non-moratoria business interruption from Support Services to Oil and Gas Industry activities…." – further demonstrating that a review for or exclusion of potential "Moratoria Losses" was **only** intended to be applied to businesses and individuals defined in Exhibits 16 and 19.[3]

Exhibit 16, the Excluded Industries Chart, includes, and is limited to, *only*: the Oil & Gas Industry; Support Services to the Oil & Gas Industry; Gaming, Banking, Insurance, Funds, Defense Contractors, and Developers.

Again, as in Section 5.10.3, Support Services to the Oil & Gas Industry under Exhibit 16 are defined and limited to the following two, and only two, situations:

    a.    The Claims Administrator determines that the Claiming Entity or Claiming Job Employer falls with the NAICS codes and descriptions marked with an "x" in Section I of "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses" in Exhibit 19;[4] or

    b.    (i) The Claims Administrator determines that the Claiming Entity or Claiming Job Employer falls with the NAICS codes and descriptions marked with an "x" in Section II of "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses" in Exhibit 19, and (ii) the BEL Claimant or IEL Employer responds affirmatively that, in 2009, the business provided significant services, goods and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico.[5]

---

[2] *See* Sections 5.10.3.1.2 and 5.10.3.2.3.

[3] *See* Sections 5.10.3.1.5 and 5.10.3.2.7 ("Such Claims and Claimants are subject to the additional provisions discussed in detail in Exhibit 16, 19").

[4] *See* EXHIBIT 16, pp. 1, 5.

[5] *See* EXHIBIT 16, pp. 2, 5-6.

Again, as in Sections 5.10.3.1.3 and 5.10.3.2.5, Exhibit 16 limits the scope of the Moratoria Loss Review inquiry to "businesses / employers" and "individuals / employees" who are "*in this category*".[6]

Finally, Exhibit 19 was titled by the Parties: "**Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses**"  Clearly, the Parties intended that these Industry Types – and no other industry types – would be subject to review by the Claims Administrator for potential Moratoria Losses.  Had the Parties intended or agreed that *all* BEL or IEL Claimants be subject to a review for potential Moratoria Losses, they would have said so.

**It is Well-Settled that, in Matters of Contract Interpretation, the General Yields to the Specific**

BP relies almost exclusively on two general statements within the Settlement Agreement expressing a general notion that Moratoria Losses are generally intended to be excluded, in Section 3.3 and at the top of Exhibit 16.

Class Counsel do not dispute the general proposition that the Parties generally intended that "Moratoria Losses" were to be generally excluded.

The question, however, is ***how***.

As has been well-established, this Settlement Agreement was intended by both Parties to be implemented and applied by the Claims Administrator according to *objective* and transparent criteria.

In this case, Sections 5.10.3, Exhibit 16 and Exhibit 19 provide (and limit) the specific objective and transparent criteria which the Claims Administrator is to apply.

It is well-settled, in this regard, that, in matters of contract interpretation, the general yields to the specific.  Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp., 289 F.3d 373, 377 (5th Cir. 2002) ("It is a fundamental axiom of contract interpretation that specific provisions control general provisions"); *citing,* RESTATEMENT (SECOND) OF CONTRACTS §203(c).[7]

Section 3.3, as noted, is a general provision, which is intended to address (and, indeed, limit) the scope of BP's ***release.***  Section 5.10.3, by contrast, falls within the specific provisions that address the Settlement Benefits that are provided to Claimants under the compensation frameworks set forth in the Settlement Agreement.

---

[6] *See* EXHIBIT 16, pp. 2, 3, 6, 8, (emphasis supplied).  *See also,* p.4  ("*Such* businesses / employers are permitted to pursue all other recovery…") (emphasis supplied).

[7] *See also, e.g.,* Mazzini v. Strathman, 2013-0555, p.10 (La. App. 4th Cir. 4/16/2014), 140 So.3d 253, 259; *citing,* Corbello v. Iowa Production, 02–0826, p.24 (La. 2/25/2003), 850 So.2d 686, 704, *clarified, on rehearing, on other grounds,* 02–0826 (La. 6/20/2003), 850 So.2d 686 (per curiam).

Within Exhibit 16, (which is only made effective and applicable to a limited subset of "Excluded Industries" by and through Section 5.10 of the Agreement), the broad and general statement at the top of the exhibit is then modified and defined by the specific provisions contained therein.  Or, stated another way:  The preface to the Exhibit announces a general intent, and then the remainder of the Exhibit proceeds to tell the Claims Administrator specifically *how* such general intent is to be objectively, transparently, and specifically implemented and applied.

Finally, Exhibit 16 directs the Claims Administrator to Exhibit 19, which specifically details those, and only those "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses".

There is nothing in the carefully negotiated and carefully crafted text of Section 5.3, Exhibits 4-8, Section 5.10, Exhibit 16, nor anywhere else within the Settlement Agreement, which evidences or memorializes any specific process, procedure, authorization, or agreement for the Claims Administrator to conduct a review or deny compensation for potential "Moratoria Losses" to any business or employee other than as specifically identified on Exhibit 19.

## BP's Suggested Interpretation Would Produce Absurd and Unintended Consequences

Sections 5.10.3 and Exhibits 16 and 19 divide the universe of businesses to be reviewed for potential Moratoria Losses into two categories.  The first are those identified in Section I of Exhibit 19, which are automatically set aside for Moratoria Loss review.  The second are those identified in Section II of Exhibit 19.  These businesses are not automatically reviewed for potential Moratoria Losses, but are only subject to review in the event that the business certifies that, in 2009, it provided significant services, goods and/or supplies to the Gulf of Mexico offshore oil and gas industry.

By adding a third undefined category of claimants – *i.e.* those with some "other indicia" of a potential Moratoria Loss – BP and/or the Settlement Program would be creating an anomaly, wherein a company that falls under Section II (*i.e.* businesses specifically identified by BP, along with Class Counsel, for potential review during the negotiations), but nevertheless certifies that it did not provide significant services to the offshore oil and gas industry in the Gulf of Mexico in 2009 is not subject to a Moratoria Loss Review;  whereas a business that was not specifically identified by the Parties during the negotiations or in the Agreement can be subject to a Moratoria Loss Review based solely on a vague reference to some type of offshore services on its website, even where such services are not "significant".  (Indeed, the website could simply be advertising for potential / desired business that never materialized, or that materialized outside of the Gulf of Mexico, or that occurred either before or after 2009.)  Clearly, had the Parties intended that there be some vague and undefined third category of businesses with "other indicia" of potential Moratoria Loss to be set aside for potential Moratoria Loss Review, those companies would have been posed the same "significant services" question posed to Exhibit 19 Section II businesses.

BP's proffered interpretation leads to absurd results.

Which is further proof that the Settlement Agreement directs the Settlement Program to conduct a potential Moratoria Loss Review in the event, and *only* in the event, that: **(a)** The Claims Administrator determines that the BEL Claiming Entity or IEL Claiming Job Employer falls with the NAICS codes and descriptions marked with an "x" in Section I of "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses" in Exhibit 19; or **(b)** (i) The Claims Administrator determines that the BEL Claiming Entity or IEL Claiming Job Employer falls with the NAICS codes and descriptions marked with an "x" in Section II of "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses" in Exhibit 19, and (ii) the BEL Claimant or IEL Employer responds affirmatively that, in 2009, the business provided significant services, goods and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico.

cc: BP Counsel