# MEMORANDUM

**To:**     Claims Administrator

**From:** Class Counsel

**Re:**     <u>Error Regarding Land Use Designation in the Coastal Claims Database</u>
             *Request for Input No. 538*

**Date:** July 8, 2014

## Introduction

As an initial matter, Class Counsel agree with Section A of the Claims Administrator's Request for Input, which details the operation of the Coastal Real Property Framework, and that only parcels containing one of the County Land Use Designations listed in Appendix I are eligible for the minimum compensation amount.

Class Counsel further agree that the claims for Parcels in Jackson County, MS, erroneously identified in the Database as "OF" rather than "OB", should be changed to reflect the correct County Land Use Designation of "OB".

Finally, Class Counsel agree that the "OB" designation be added to Appendix C as the Claims Administrator recommends.

However, Class Counsel respectfully ***object*** to the Claims Administrator's recommendation that the "OB" designation be left off of Appendix I, which, as the Administrator correctly points out, acts a subset of Appendix C, and entitles certain parcels to minimum compensation.

## The "OB" designation must be added to Appendix I in addition to Appendix C

By failing to list "OB" on Appendix I in addition to Appendix C, the subsequently corrected "OB designated" parcels on Appendix I would not be entitled to the minimum compensation amounts as set forth in Section 2.E of the coastal framework.  Based upon the history of the negotiations between the parties, and indeed the theory behind the compensation scheme for coastal parcels, it is Class Counsel's position that eligible "OB" designated parcels are *also* entitled to minimum compensation pursuant to the terms of the Coastal Framework and Appendix I.

Had the Parties been made aware of the existence of such an "OB" designation during the negotiations, Class Counsel would have urged that the "OB" or "Outbuilding" county land use designation be included not only in Appendix C but also in Appendix I.  However, as admitted by Manuel Bremont, coastal database creator A&M never submitted the County Land Use

Designation "OB" to the Parties for potential incorporation into Appendix C – or, by extension, Appendix I.

Mr. Bremont opines that if A&M had submitted the "OB" designation to the Parties for inclusion in Appendix C, it would have likely been included, given that the only County Land Use Designations excluded from Appendix C were those indicating that the State or Federal Government owned the parcel. Mr. Bremont is correct on this point. Privately-owned (defined as not owned by any State or Federal entity) OB-designated parcels would most certainly have been included on Appendix C had the Parties been aware of the existence of this type of County Land Use designation before the Settlement Agreement was finalized in 2012.

However, Mr. Bremont then also goes on to suggest (incorrectly) that the parties likely would ***not*** have included such OB designated parcels on Appendix I (and, hence, these parcels would not potentially be entitled to certain minimum compensation amounts). Mr. Bremont apparently bases this conclusion on his opinion that what separates Appendix I parcels from Appendix C parcels is whether parcels contain "habitable structures". According to Mr. Bremont, only those County Land Use Designations that identify parcels with "habitable" structures make the cut for inclusion on Appendix I, and thus, because the "OB" designation in Jackson County indicates an "uninhabitable structure" such as a "dock" or "shed", neither these parcels nor the "OB" designation would have been included in Appendix I.

This assumption is incorrect for several reasons.

First, despite Mr. Bremont's speculation, the negotiations between the Parties over what types of parcels were to be included on Appendix I (and thus entitled to minimum compensation) did not consider whether the parcel contained a habitable structure. It was always the intent of the Parties that properties and parcels that were zoned for primarily residential or dwelling *use* be entitled to minimum compensation. The presence of an actual *dwelling* structure on the parcel was never required. Indeed, a cursory glance at Appendix I (attached) confirms this. As currently written, Appendix I contains County Land Use Designations such as "Miscellaneous Residential", "Waterfront Improved", and "Patio Home". These labels imply that a parcel could be potentially inhabited by humans (*i.e.* zoned for residential uses), but not that a habitable structure actually (already) exists. In fact, it is arguable that the County Land Use Designation of "Waterfront Improved" would apply exactly to the type of structure used by Mr. Bremont in his example – namely, an "improvement" such as a boat dock or a shed.

Furthermore, it would have been illogical for Class Counsel to agree to compensate a vacant beachfront lot, say in Florida, simply because it has the County Land Use Designation of "Residential", but then to deny compensation to a coastal lot in Mississippi just because it had a "boat dock". This is especially true given that in many coastal area owners are under certain rules and restrictions as to when they must build on or build out their property or face sanction or even seizure of the land by a developer. These sorts of "build out" covenants or agreements are often met by virtue of building an outbuilding on the land, such as a dock, shed, or garage — thereby interrupting the build-out window. The Parties recognized that classifications of properties on assessor rolls across the various Gulf States and Counties in all likelihood would

not be uniform.  Given this obvious complexity, the land use designations were greatly expanded at the end of the settlement discussions to include lots of types of properties.

Finally, at least one member of the negotiating team for Class Counsel specifically remembers the Parties discussing and mutually agreeing on the compensation for a vacant beachfront lot as a good example of the type of parcel that should be subject to minimums as contemplated by Appendix I.

Since that time, Class Counsel have learned through conversations with and comments from various lawyers that other vacant beachfront lots have been paid pursuant to mandatory minimums of Appendix I.

Consequently, in order to remedy the error unknown to the Parties at the time of their negotiations — but now identified by A&M it its database — Class Counsel would urge that the Claims Administrator, in the interest of fairness and consistent with the intent and agreement of the Parties, should not only re-classify the affected parcels to the correct County Land Use Designation of "OB",  but also add the "OB" designation to Appendix I.  This would allow those parcels mistakenly left off of both Appendix C and Appendix I to be entitled to the minimum compensation amounts as set forth in Section 2.E of Exhibit 11A, if greater than the amount calculated in accordance with Section 2.B.

Enclosures

cc: BP Counsel

**Compensation Framework for Coastal Real Property Claims**
**Appendix I**
**County Land Use Designations Eligible for Minimum Compensation**

APARTMENT (LOW RISE SINGLE BLDG)
APARTMENTS, DUPLEX
COMMON AREAS
CONDOMINIA
CONDOMINIUM
CONDOMINIUM RES.(HIGH RISE)
CONDOMINIUM RES.(LOW RISE)
CONDOMINIUM, MASTER CARD
DUPLEX RESIDENCE
MANUFACTURING HOMES
MASTER CARD
MISCELLANEOUS RESIDENTIAL
MOBILE HOMES
MOBILE HOMES (SINGLE TRAILER)
MULTI-FAMILY
MULTI-FAMILY (UNDER 10 UNITS)
MULTI-FAMILY 1O UNITS OR MORE
MULTI-FAMILY LESS THAN 10 UNITS
ONE FAMILY UNIT
PATIO HOME
RESIDENTIAL
SINGLE FAMILY RESIDENCE
SINGLE FAMILY RESIDENTIAL
TOWNHOUSE
TOWNHOUSE - SINGLE FAMILY
TWO FAMILY UNITS
WATERFRONT IMPROVED
MULTI-FAMILY (10 UNITS OR MORE)

027536