> **REISSUED POLICY ANNOUNCEMENT**
>
> **POLICY 316 V.4: SUBSISTENCE CLAIMS: FISHING OR HUNTING AREA IMPAIRMENT**

**I.      Policy.**

If a claimed Loss Period is greater than the closure period of the applicable area, the Court-Appointed Distribution Agent ("CADA") Team will consider relevant reports attesting to impairment on a case-by-case basis. A claimant may also submit objective evidence of actual impairment to the CADA Team for consideration. Objective evidence of actual impairment may include reports of continued oiling, date-stamped photos, receipts for oil clean up, etc.

Claimants who allege impairment on the basis of Seafood safety or contamination ~~must~~ may submit objective evidence of actual impairment to the Settlement Program to validate the extension of their Loss Periods beyond applicable closures. The CADA Team will not extend a claimant's Loss Period based solely on the claimant's subjective fear of Seafood safety or contamination without objective proof to substantiate his or her claim.

Exhibit 9, Section B.1 of the Settlement Agreement requires the Claims Administrator to identify "the time period of loss of subsistence use consistent with the closure or impairment of geographic areas relied upon by the Claimant between April 20, 2010 and December 31, 2011." In accordance with this requirement, the Settlement Program uses the closures applicable to a claimant's fishing location(s) to determine his or her Loss Period. However, if a claimed Loss Period is *greater* than the closure period of the applicable area, the claimant or his or her attorney ~~must~~ may submit objective evidence of actual impairment to the CADA Team to extend the Loss Period beyond documented closures. <span style="color:red">Similarly, a Claimant may submit objective evidence of actual impairment to the CADA Team to support a claim for loss of subsistence use from a geographic area that was never closed, but was impaired for some period after the Spill.</span> Pol-316 v.4, which supersedes all prior versions of Pol-316 and Pol-221 v.2, governs this impairment requirement.

Objective evidence of actual impairment includes documents establishing that a particular location was impaired by the Spill for the alleged impairment period. Acceptable document types may include:

1. Reports of continued oiling;
2. Date-stamped photos;
3. Marina closure reports;
4. Receipts/invoices for oil removal from a boat;
5. Description of necessity to traverse through closed areas;
6. Receipts/invoices for boat repairs due to oil contamination;
7. Boat launch closure announcements;
8. Fuel dock closure announcements;
9. Boom location reports; ~~and~~

       10.     Receipts for oil clean up; and

       ~~10.~~11.   Reports of diminished or impacted populations of fished species in the applicable area after the closure period.

The objective evidence standard does not include: (1) articles describing fears of Seafood safety; (2) reports of Spill-related damage to the Gulf generally (not specific to certain geographical locations); or (3) blog posts from third parties.  Articles that describe fears of Seafood safety and reports of Spill-related damage to the Gulf generally are not sufficiently detailed to confirm that a specific location where a claimant harvests Seafood or Game was impaired by the Spill.  Further, the Settlement Program will only accept credible sources of impairment proof.  Blog postings from third parties fail this credibility standard and are not acceptable to demonstrate impairment.

> **Comment [AKM1]:** What about blog postings from NOAA? Or NWF.org? Or NRDC? Or CNN? Or Science?

     A claimant must also complete and submit a Sworn Written Statement attesting to the impairment of the area.   The Sworn Written Statement must be sufficiently detailed to document the time period, location and cause of the location's impairment.   A form Fishing or Hunting Area Impairment Sworn Written Statement ("SWS-43"), attached as Exhibit A, is available in Claimant Assistance Centers and on the DHECC website (www.deepwaterhorizoneconomicsettlement.com).   As described above, the claimant ~~must~~ may also   submit corresponding proof with his or her SWS-43 to verify the impairment of his or her fishing  or hunting area.   ~~Without such evidence of actual impairment, the loss period will be calculated   consistent with the closure of the applicable geographic area.~~

     It is the Policy of the Settlement Program to review impairment proof on a case-by-case basis to consider the individual circumstances of each Subsistence Claim. Claimants who request compensation for losses beyond applicable closure periods, or for losses from areas that were not closed, ~~must~~ may submit impairment proof to the Settlement Program individually for CADA Team consideration. In addition, the Settlement Program will create and maintain a central database of impairment evidence submitted by Claimants, which the CADA Team will consult and consider along with the individual impairment proof provided by each Claimant. If a Claimant's individually submitted impairment evidence does not suffice, but there is impairment evidence sufficient to support that Claimant's claim found in the central database, the CADA shall consider that database evidence as if it were submitted by the Claimaint when determining the Claimant's claim.

## II.    **Examples.**

     These hypothetical examples include examples of acceptable and unacceptable impairment documentation:

       **A.**     **Claimant A:**  Claimant A reports that he could not harvest Seafood from his fishing location from 5/1/10 through 9/1/10 (124 days).  State and Federal reports confirm that his fishing location was closed from 5/1/10 through 7/31/10 (92 days).  In support of his impairment claim for the remaining 32 days, Claimant A submits:

1. A Sworn Written Statement detailing the claimant's inability to access his fishing locations because of closures and the location of boom after his fishing location reopened;

2. Date-stamped photos of boom in the claimant's fishing location. The photos are dated during his impairment period;

3. An invoice for the de-oiling of the claimant's boat. The invoice is addressed to the claimant and dated before his impairment period concluded; and

4. A marina closure announcement from the marina where the claimant's boat is stored. The closure announcement confirms that the marina would be closed through September 2010 because of the Spill.

Based on these documents, the CADA may extend the claimant's Loss Period from 5/1/10 through 9/1/10, though closures do not apply for a portion of this period. The documents are sufficiently detailed and specific to the claimant's fishing location, the duration of the alleged impairment period, and the claimant's individual circumstances.

**B.     Claimant B:** Claimant B reports that he could not harvest Seafood from his fishing location from 4/20/10 through 2/1/11 (288 days). State and Federal reports confirm that his fishing location closed from 4/20/2010 through 5/20/2010 (31 days). In support of his impairment claim for the remaining 257 days, Claimant B submits:

1. A Sworn Written Statement detailing his fear that Gulf Seafood is unsafe for consumption; and

2. A news article that questions Seafood quality in the Gulf generally.

These documents generally address unsubstantiated concerns for Seafood safety instead of the impairment of a specific geographical region. Accordingly, the CADA would find that Claimant B's impairment documentation is insufficient to confirm that his specific fishing location was impaired by the Spill from 5/21/10 through 2/1/11. <ins>However, in the central impairment evidence database maintained by the Settlement Program the CADA finds evidence confirming that the Claimant's fishing location was still impaired nine months after the Spill. Based on that evidence, the CADA may extend the Claimant's Loss Period through 2/1/11.</ins> <del>Instead, the claimant's Loss Period would only extend through the duration of his closures (31 days).</del>

**C.     Claimant C:** Claimant C reports that he could not harvest Seafood from his fishing location from 4/20/10 through 12/31/11 (621 days). State and Federal reports confirm that his fishing location was closed from 4/20/10 through 1/13/11 (269 days). In support of his impairment claim for the remaining 352 days, Claimant C submits:

3

1180149.1
2/21/14 [Class Suggestions 6-12-2014]
432456

1. A Sworn Written Statement detailing the claimant's inability to access his fishing locations because of local closures and cleanup activity;

2. Date-stamped photos of oiling on the claimant's private pier; ~~and~~

3. Reports of oiling in the claimant's fishing location from 4/1/10 through 2/1/11~~;~~.; and

~~3.~~4. Reports that populations of the Seafood Claimant C typically harvests from his fishing location were diminished or non-existent in that location throughout 2011.

Based on these documents, the CADA may extend the claimant's Loss Period from 4/20/10 through 12/31/11, though closures do not apply for a portion of this period~~; however, the CADA would not extend the claimant's Loss Period through 12/31/11 because the claimant did not submit sufficient documentation detailing impairment from 2/1/11 through 12/31/11~~.