UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| This Document Relates to: | |
| *Bon Secour Fisheries vs. BP,* Civ. Action No. 12-970 | JUDGE BARBIER |
| Settlement Program Claim of: ▮ Claim No. 130059 | MAGISTRATE JUDGE SHUSHAN |

**CLASS COUNSEL'S SUBMISSION
IN CONNECTION WITH REQUEST FOR DISCRETIONARY REVIEW**

[Denial of Owner and/or Officer IEL Claims based on BEL and/or GCCF Release]

Class Counsel respectfully submit the following memorandum in connection with the Request for Discretionary Review by Settlement Program Claimant[1] regarding the question of whether the owner, part owner and/or officer of a corporation or other formal legal entity that has made its own claim for Business Economic Loss (in either the Settlement Program or the GCCF) should be denied the opportunity to make an Individual Economic Loss (IEL) Claim under the Economic & Property Damages Class Settlement Agreement:

MAY IT PLEASE THE COURT:

As set forth in Class Counsel's Memorandum to the Claims Administrator dated October 2, 2012, (which is attached hereto and respectfully incorporated by reference herein), Class Counsel respectfully suggest that the Claims Administrator, and at least some Appeal Panelists, have misinterpreted and/or misapplied the Individual Economic Loss (IEL) provisions of the

---

[1] CLAIMANT ID 100168324.

Settlement Agreement to improperly exclude the owners, part owners and/or officers of a Business Economic Loss (BEL) Claimant and/or entity whose business claim was previously resolved and released in the Gulf Coast Claims Facility (GCCF).

Class Counsel understand that the owner of a Sole Proprietorship (or other self-employed individual who filed a Form 1040 Schedule C, E or F) is considered a "Business Claimant" (or "BEL Claimant") under the Settlement Agreement.[2]

*However,* when there is a corporation or other formal business entity, and the owner, part owner and/or officer in question is a W-2 Employee of that corporation or other formal entity, there is absolutely no basis to prevent that owner, part owner or officer from filing his or her own Individual Economic Loss (IEL) Claim.

Natural Persons who are Class Members – (and who are not self-employed individuals who filed a Form 1040 Schedule C, E or F) – are directed to Exhibit 8A to determine how he or she is treated under the Settlement Agreement. Nowhere in the Class Definition, Exhibit 8, nor the Settlement Agreement is it stated that an owner, part owner or officer of a business is excluded from making an Individual Economic Loss Claim if he or she otherwise satisfies the criteria and qualifications. Indeed, it is specifically contemplated under the Settlement Agreement that an Entity's employees *will* make IEL Claims within the Settlement Program based on the recognition of the employing Entity's BEL Claim.[3] Nothing in Exhibit 26, the Individual Release to be signed by a BEL Class Member, excludes or releases an employee's Individual Economic Loss Claim.

---

[2] *See* SETTLEMENT AGREEMENT, Section 38.15.

[3] *See* EXHIBIT 8A, Section I(B)(2)(b)(i).

It is black-letter law that a corporation or other formal legal entity has an independent juridical existence, separate and apart from its owners. Yet even accepting *arguendo* a concern about the potential for "double payment",[4] there are numerous situations under which a "double payment" would clearly not occur:

- What about an Officer who is *not* an Owner?

- What about a former Owner who sold his or her interest in the business after the Spill, but prior to receipt of the GCCF or BEL payment?

- What about a minority owner with only a small percentage of the company, but who serves – and lost significant post-Spill income – as an officer, or other employee?

- What about an employee who is arguably a passive "owner" of a publicly traded BEL Claimant, simply because he or she owns a few shares of stock in the company?

With respect to a previous GCCF Release, Class Counsel understand that there might be some circumstances in which the owner of a Sole Proprietorship *might* be deemed to have released his or her own personal claims, in addition to the claims of his or her business,[5] (although, it should be noted that the standard GCCF Release does *not* purport to release the claims of either "owners" or "officers" or "empoloyees").

*However,* where it is clear that the W-2 Employee seeking to assert an IEL Claim with the Settlement Program was only signing the GCCF Release in the capacity of an owner or

---

[4] Class Counsel, of course, reject the imposition of this unwritten consideration for all of the textual reasons expressed in the attached Memo. The Parties could have, but did *not*, negotiate or agree to any terms or provisions (other than the express and carefully negotiated set-off provisions which actually appear in the Settlement Agreement) that would have effectively or literally excluded, precluded or otherwise prevented a "double payment" under these or other circumstances.

[5] It is difficult for Class Counsel to suggest a bright-line approach in these circumstances, because the GCCF apparently had its own *sui generis* method for classifying claims as either "business" or "individual" claims, and Class Counsel are not aware of all of the representations that may have been made by BP/GCCF in this regard with respect to multiple claims by the same or related persons or entities, or the scope of the GCCF Release. Class Counsel provide further discussion of the controlling Exclusion that was agreed to in the Economic & Property Damages Settlement Agreement within Class Counsel's Memo of October 2, 2012 (attached).

officer of a separate and distinct corporate and/or other legal entity, there is no reason why he or she should be excluded from making an IEL Claim.

And certainly a *non-owner* officer who was signing the GCCF Release solely in the capacity of an officer of the business should not be deemed to have released his or her own personal Individual Economic Loss Claim.

## Conclusion

For the above and foregoing reasons, Class Counsel respectfully ask the Court to review and reconsider the interpretation and/or application of the Settlement Agreement by the Claims Administrator and Appeal Panelists with respect to the exclusion and/or denial of owners, part owners and/or officers attempting to make Individual Economic Loss Claims.

This 3rd day of March, 2014.

Respectfully submitted,

__/s/   Stephen J. Herman__  
**Stephen J. Herman**, La. Bar No. 23129  
**HERMAN HERMAN & KATZ LLC**  
820 O'Keefe Avenue  
New Orleans, Louisiana 70113  
Telephone: (504) 581-4892  
Fax No. (504) 569-6024  
E-Mail: sherman@hhklawfirm.com  
*Co-Lead Class Counsel*

__/s/ James Parkerson Roy__  
**James Parkerson Roy**, La. Bar No.11511  
**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**  
556 Jefferson Street, Suite 500  
Lafayette, Louisiana 70501  
Telephone: (337) 233-3033  
Fax No. (337) 233-2796  
E-Mail: jimr@wrightroy.com  
*Co-Lead Class Counsel*

# MEMORANDUM

**To:** Patrick A. Juneau, Esq.
Claims Administrator

**From:** Class Counsel

**Matter:** <u>In re: Deepwater Horizon</u>
MDL No. 2179

**Re:** BEL Owners or Officers Who Are Also Employees

**Date:** October 2, 2012

This Memo is intended to address two questions:

1. Where the owner or part owner of an Entity is also a W-2 employee of the Entity, can he or she assert an Individual Economic Loss claim within the Settlement Program?

2. When the owner or officer of a "business" has executed a GCCF Release, is he or she – or any other owner or officer of the "business" – precluded from filing an IEL claim within the Settlement Program for his or her loss of income as a W-2 employee?

There have been a number of e-mails regarding this issue, including Wendy Bloom's September 27th response to Steve Herman's e-mail of September 25th, in addition to references in Question 67 on the "Unresolved Questions Spreadsheet" – which all agree relates only to the processing of BEL claims, and not to the separate issue of whether an owner or officer maintains his own separate IEL claim under the Settlement Agreement.

For the following reasons, Class Counsel suggest that the answers to the questions are as follows:

1. Yes.

2. It depends on the nature of the entity or other "business" that made the previous GCCF claim; the capacity in which the GCCF Release was executed on behalf of the business claimant; and the relationship of the business and/or signatory to the potential IEL Settlement Program claimant.

## Background

Class Counsel received several questions / complaints by potential classmembers who reported that they were told by the Program that the owners or part owners of an Entity could not make a separate IEL claim for their own loss of income as W-2 employees, as that would constitute a "double payment".

Class Counsel asked the Program to clarify whether this was, in fact, the Program's official policy, and, if so, what specific Settlement Agreement language was it based upon?

Orran Brown, for the Program, indicated that no claims had been denied on this basis, and that he would gt back to us with the Program's official policy (if any).

In the meantime, Wendy Bloom, on behalf of BP, indicated that BP agreed that this was a "double payment" prohibited under the Settlement Agreement.

When Class Counsel asked Ms. Bloom to provde the specific terms of the Settlement Agreement (and/or, where applicable, GCCF Release) that BP was relying upon, she pointed to: **(i)** the exclusion of owner/officer compensation from the calculation for payroll expenses under Exhibit 4C, Section I; **(ii)** the set-off for prior Spill-Related Payments under Exhibit 8A; and **(iii)** language regarding the release by "shareholders" and others of a business claimant's claim in the standard GCCF Release.

Class Counsel have been asked by the Claims Administrator to provide a formal position on the issues, and, for the reasons that follow, respectfully suggest that the cited provisions in the Settlement Agreement (and, where applicable, GCCF Release) do not support BP's position.

### An Owner, Part Owner or Officer of a BEL Claimant under the Settlement Agreement is an Eligible IEL Class Member and Claimant with Respect to His or Her Loss of Income as a W-2 Employee

This Class Settlement was filed, preliminarily approved, and formal notice has been sent out to hundreds of thousands of individuals, directly or indirectly. We have an opt-out date in less than 30 days. In the Class Definition, an Individual who had an ownership interest in a company that was doing business in the Gulf Coast Areas that suffered an economic loss as described in the damage categories is a member of the Class, unless excluded. No one asserts these individuals are excluded from Class.

The Individual class member is directed to Exhibit 8A to determine how he or she is treated under the Class Settlement Agreement. Nowhere in the document is it stated that an owner, part owner or officer of a business is excluded from making an Individual claim if he or she otherwise satisfies the Class Definition and qualifications. (Indeed, it is specifically contemplated under the Settlement Agreement that an Entity's employees will make claims within the Settlement Program based on the recognition of the Entity's Settlement Program Claim. *See* Exhibit 8A, Section I(B)(2)(b)(i).) Nothing tells an investor in a business entity that he or she is excluded. Nothing in the Settlement Agreement provides notice to an Individual that if a Business Economic Loss is paid and you are an owner or part owner of the business, you are excluded from filing an Individual claim if you otherwise qualify. Nothing in Exhibit 26, which is the applicable release to be signed by a BEL Class Member, excludes or releases an employee's Individual Economic Loss claim.

Nor is there an exclusion or offset of such owner/officer compensation in particular, or what someone might contend to be a "double payment" generally, in the Exhibit 8A Individual Economic Loss Framework, or the Settlement Agreement generally.

While BP is correct that "Owner/Officer Compensation" is unambiguously excluded from the calculation of payroll expenses under the BEL Framework, (*see* Settlement Agreement, Exhibit 4C, Section I (definition of "Fixed and Variable Payroll Expenses")), we are troubled by BP's unwillingness to accept that the Agreement also unambiguously allows owners and officers who are Individuals under the Agreement to recover their lost W-2 employee earnings from BP. This position contradicts the mandatory terms of the IEL Framework. Moreover, both Parties have consistently understood, and publically represented, that (with the exception of the Seafood Program) compensation awarded to any one Class Member has no impact on any other Class Member. The Settlement Program, in this regard, was purposefully designed to provide a prompt, uniform, and claimant-friendly process under which BP would pay 100% of all properly documented claims, relieving class members of the need to pursue recovery from third parties.

The Agreement's express terms dictate which business owners are barred from making IEL claims.

Specifically, the definition of "Individual Claimant" excludes the owners of sole proprietorships and self-employed individuals. *See* Section 38.84. These individuals must instead make BEL claims. *See* Section 38.15 (definition of "Business Claimant").

Other owner and officer employees of business Entities qualify as Individual Claimants and are entitled to the benefit of the IEL claims process.

The Settlement Agreement's different treatment of these individuals makes good sense. Under the law, a formal corporate or other business entity is considered a separate legal person from the owner(s) and officer(s). The entity has no legal obligation to share its award with any other party. And, there is no reason to assume it will do so. For example, an individual who owned a business at the time of the spill may have since sold it; that person will lack leverage to obtain part of the business's BEL award. Similarly, a minority partner would be powerless to force a majority owner to give him or her a portion of the business's recovery. Even in single-owner cases, corporate policy or fiduciary duties may prevent an owner from taking part of the entity's compensation for himself or herself.

Further, the Agreement expressly mandates inclusion of "[a]ll bonuses and/or commissions" in the lost earnings calculation on a *pro rata* basis. *See* Exhibit 8A, at 16. It also expressly states which earnings may be deducted from the calculation.

The IEL Framework provides a detailed definition of these "Offsetting Earnings." *See* Exhibit 8A, at 6. The definition conspicuously omits Owner/Officer Compensation from the Claiming Job, as well as BEL compensation paid to the employer. *Id.* Had the parties intended such offsets to apply, they would have made an express provision for them, as they did with every other offset and exclusion in the Agreement.

BP effectively concedes this point in suggesting that the entity's BEL compensation (or part thereof) should be deducted as a "Spill-Related Payment." Though creative, this argument fails for three obvious reasons:

First, the definition of "Spill-Related Payments" under the IEL Framework is limited to compensation paid *"for the Claiming Job." See* Exhibit 8A, at 8 (emphasis added). A BEL claim is paid for the lost profits of the business, not for any Claiming Job. This narrow definition is specifically intended to protect Claimants who make claims under multiple frameworks. In the rare instance in which payments under one framework are meant to be offset against payments under another, the Agreement expressly sets forth the relevant offset, rather than treating it as a "Spill-Related Payment." *See* Section 38.164 (defining "VoO Earned Income Offset"); Section 38.166 (defining "VoO Settlement Payment Offset"); Section 5.5.2.1-5.5.3 (dictating which claims are subject to VoO offsets).

Likewise, whenever a settlement payment must be allocated among multiple claimants, the Agreement dictates that the Claims Administrator make the allocation and pay each claimant directly. It does not leave claimants to squabble among themselves or pay one claimant at the expense of others. *See* Exhibit 11A, at 7 (allocation of Coastal Real Property Compensation Amount); Exhibit 12A, at 7 (allocation of Wetlands Real Property Compensation Amount); Exhibit 13A, at 4 (allocation of Real Property Sales Compensation Amount).

Second, and more importantly, the Agreement is not written, and was never understood, to allow economic loss compensation awarded to one claimant to be deducted from, or entirely bar, another claimant's award. The current dispute could set a dangerous precedent if BP later decides that other negotiated terms are overly generous.

Third, BP's position would result in similarly situated claimants being treated quite differently. By definition, "Spill-Related Payments" include only those payments which have *actually been made*, not any that hypothetically might be. Accordingly, the fortuity of which claim was submitted and processed first – IEL or BEL – would dictate the compensation available to the individual. (And, some claimants might be able to game the system simply by delaying the entity's BEL claim). These results directly contradict the Agreement's stated goal of uniformity. *See, e.g.*, Section 4.4.7 (stating that the claims frameworks "shall apply equally to all claimants…").

Because the Agreement does not distinguish between owners, officers, and other W-2 employees, all are subject to the same documentation, causation, and compensation frameworks, and are eligible for the same types of awards.

**Whether an Owner, Part Owner or Officer of a GCCF Business Claimant that Settled in the GCCF Is Excluded from the Class Settlement is an Individual Question that Must be Decided on a Case-by-Case Basis**

The Settlement Class Definition excludes:

> Any Natural Person or Entity who or that made a claim to the GCCF, was paid and executed a GCCF Release and Covenant Not to Sue.

Section 2.2.6. The Exclusion, therefore: **(i)** distinguishes between Natural Persons "*or*" Entities; **(ii)** requires that the Natural Person *or* Entity made a claim to the GCCF; **(iii)** requires that the Natural Person or Entity was "paid" by the GCCF; and **(iv)** requires that the Natural Person or Entity "executed" the GCCF Release.

At the same time, the standard GCCF Release for a GCCF "Business" Claim provides that:

> Claimant also, on behalf of Claimant's spouse, heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, affiliates, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, and attorneys (collectively, "Affiliates"), hereby releases....

Significantly, the GCCF Release does ***not*** purport to release the claims of either "owners" or "officers" or "employees".

(Indeed, it is specifically contemplated under the Settlement Agreement that an Entity's employees will make claims within the Settlement Program based on the recognition of the Entity's GCCF Claim. *See* Exhibit 8A, Section I(B)(2)(b)(i).)

Similarly, questions are raised about the extent of the release by other Affiliates under the GCCF Release – *e.g.*, is a "shareholder" or a "member" or a "joint venturer" of a GCCF Business Claimant really releasing any and all BP Oil Spill Claims, or only claims *in the capacity* of a "shareholder" or a "member" or a "joint venturer" of the relevant Business entity?

Nevertheless, and in any event, in order to determine whether the Exclusion in the Settlement Agreement applies, you have to know: the nature of the entity or other "business" that made the previous GCCF claim (*i.e.*, who is the GCCF "Claimant"); the capacity in which the GCCF Release was executed on behalf of the business claimant; and the relationship of the business and/or signatory to the potential IEL Settlement Program claimant.

With respect to BP's reference to "sole proprietors", Class Counsel agree that sole proprietors cannot make IEL claims. *See* Section 38.84.

At the same time, the Court-Supervised Settlement Program was meant to correct, not replicate, the shortcomings of the GCCF. The relevant release here is the Individual Release in Exhibit 26.

Contrary to BP's characterization, the cited signature requirement is best understood as a means of preventing challenges to the release as improperly authorized. No part of the Individual Release allows an Entity to release the claims of its W-2 employees, nor could it. (Indeed, the inability to obtain a competent release of individual claims from a business entity may be the reason BP refused to consider an aggregate formula that would have spared employees the need to file claims.) All the Individual Release does, and lawfully could do, is prevent third-parties from asserting claims *on behalf of the business*; it in no way impacts those parties' own, individual claims. *See* Exhibit 26. Moreover, the Individual Release has no bearing on claims under the Settlement Agreement; it is expressly subject to "the right to receive additional Settlement Payment(s) for any additional claims" pursuant to Section 4.4.8.

## Conclusion

An Individual who is an owner or part owner or officer of a business – other than owners of sole proprietorships and/or self-employed individuals – are members of the Settlement Class; they are not excluded; they are directed to Exhibit 8A to determine their compensation; they have been given notice of this; and nothing now can change the terms of the Settlement Agreement as it relates to those Individuals; irrespective of what BP now claims its intent was in negotiating the terms of the Agreement.