# MEMORANDUM

**To:** Claims Administrator

**From:** Class Counsel

**Re:** Documentation Requirements for Lodging Industry Claimants
 *Policy Keeper No. 458*

**Date:** March 2, 2014

Initially, and with respect to the BEL Documentation provisions generally, Class Counsel respectfully incorporate and adopt their previous Memo of September 16, 2012, (attached). Further, and more specifically:

Under Proposed Policy No. 458, "Claimants that are not required to file lodging tax returns with a state or locality shall not be required to submit such returns in support of a BEL claim." Instead, such Claimants "*must* submit documents establishing that [they are] exempt from filing lodging tax returns and therefore did not file the returns for some or all of the required periods." Policy 458 (emphasis supplied). In this respect, Policy 458 appears to merely restate Policy 350. Policy 350 already provides that ". . . if a Business Claimant submits documents establishing that it is exempt from filing lodging tax returns . . . the claimant will not be required to submit such returns." Class Counsel see no reason why Policy 350 should be restated. If the Claims Administrator will interpret the two policies in the same way, then there is no need for a redundant Policy Statement, which would merely create confusion. Moreover, Class Counsel are concerned that Policy 458 could be interpreted more harshly against Claimants (by virtue of Policy 458's use of the word "must"). The distinction between Policy 350's use of the words "if a Business Claimant submits" and Policy 458's use of the words "[s]uch a claimant must submit documents establishing that it is exempt" may be nil. Policy 458's language, however, may arguably make it easier for the Program Vendors (and/or Appeal Panelists) to determine that a self-renting Claimant without lodging tax returns does not meet this exemption and thus is not able to meet the document requirements of Exhibit 4A. Class Counsel are not certain that documents will exist establishing that a Claimant is exempt from filing lodging tax returns for all such Claimants. It is conceivable that the exemption is so basic that no document will exist or the Claims Administrator may not accept as sufficient a Claimant's existing documents demonstrating the exemption.

Policy 458 also sets forth an exception similar to the policy stated in a previously approved policy (Policy 351). Both this provision and the previous policy provide an exception to the requirement to submit lodging tax returns for owners of vacation rental property that is managed by a third party. In both Policy Statements, Exhibit 4A's requirement to provide lodging tax returns is satisfied by the claimant submitting IRS Form 1099 in lieu of the returns, unless the claimant's management company is not required by law to provide (and did not) provide the Claimant with a Form 1099 for the Claimant's rental income. Policy 351 states, "In certain situations, management companies are not required by law to report income on a Form 1099 to the vacation rental property owner. The Claims Administrator interprets this

requirement to allow exceptions for such claimants." Policy 351 further states that if a Claimant can provide documents establishing that it received less than $600 dollars in rental income for a required period, the Claimant will not be required to submit a Form 1099. Policy 458 incorporates this less than $600 exception. In addition, Policy 458 expands the Form 1099 exception to also include Claimants domiciled outside of the United States that were obligated to file and did file Form 1040 NR.

Although Policy 458 does expand the Form 1099 exception, it still does not encompass all legally-recognized circumstances in which a Claimant may not have received a Form 1099 from its rental management company. For example, in addition to providing that an entity who paid less than $600 in rents to another is not required to file Form 1099, the IRS publication *Instructions for Form 1099-MISC* states, in the section titled "*Exception,*" that "Generally, payments to a corporation" are not required to be reported on a Form 1099. In the section titled "*Reportable payments to corporations*" (clarifying the term "Generally") the IRS stated the following types of payments to corporations do require reporting on a Form 1099: (1) Medical and health care payments; (2) Fish purchases for cash; (3) Attorney's fees; (4) Gross proceeds paid to an attorney; (5) Substitute payments in lieu of dividends or tax-exempt interest; and (6) Payments by a federal executive agency for services (vendors). It is important to note that this section did not include payments of at least $600 in rents to the types of payments to corporations that require reporting on a Form 1099. Therefore, if a Claimant is a corporation, the IRS does not require a rental management company to issue a Form 1099 for the Claimant's rental income. Accordingly, some rental management companies do not issue a Form 1099 to corporations.

Further, in some known cases a Claimant's rental management company failed to issue a Form 1099 to the Claimant. Whether the rental management company's failure to issue a Form 1099 was legally excepted or not, it does not comport with the Claimant-friendly terms of the Settlement Agreement to penalize and deny compensation to a Claimant who through no fault of its own did not receive a Form 1099 for its rental income. Policy 458 should include exceptions for this circumstance and provide alternate methods to demonstrate a Claimant's qualification for the exemption from the requirement of providing Form 1099 in lieu of lodging tax returns. One such alternate method could be the inclusion of vacation rental income on a Claimant's Federal Income Tax return.

Thus, while broader than Policy 351, Policy 458 is written too narrowly and will deny due compensation to Claimants who were not required to, or through no fault of their own did not, receive a Form 1099. This policy should be rewritten and expanded to include all legally valid reasons that a Claimant many not have a received a Form 1099 and those circumstances where the Claimant did not receive a Form 1099.

Enclosures

## MEMORANDUM

**To:** Patrick A. Juneau, Esq.
    Claims Administrator

**From:** Class Counsel

**Matter:** <u>In re: Deepwater Horizon</u>
    MDL No. 2179

**Re:** Documentation Provisions
    (Licences and 2011/2012 Tax Returns)

**Date:** September 16, 2012

  It is important to recognize, from the outset, that the Documentation provisions within the Settlement Agreement and its Frameworks provide a means to an end, and are not substantive ends, in and of themselves.

  Neither the Class Definition [Section 1.2] nor the definition of an Entity [Section 38.63] includes the word "license" or "licensed" or in any way suggests (as was stated by BP last week) that the Class Settlement was intended to include or compensate only "fully licensed" individuals or business entities.

  Moreover, Class Counsel had specific discussions regarding Documentation requirements during the negotiations, and BP embraced the notion that the classmember should provide them "if they have them".

  BP never took the position during negotiations that: If an otherwise eligible class member did not have "required" documentation, he or she would have no substantive right to recover.

  Indeed, with respect to some classmembers, the level of recovery may be differentiated where the plaintiff does not formally substantiate his or her earnings with Tax Returns, but that classmember nevertheless retains the right to be compensated under the Agreement.

  BP's position, accepted by Class Counsel, was that claimants should provide these documents *to the extent they had them.*

  While, in some cases, some documents may be a necessary *means* to establishing the eligibility for and/or level of compensation under the Causation and/or Compensation Frameworks (and/or other relevant Settlement provisions), it was always intended that the *substantive right to recover* would be available to Class Members who could establish those Causation and/or other threshhold requirements.

  The Settlement was not designed to afford recoveries to people or businesses who just happened to be in possession of certain documents.

Accordingly, Class Counsel believe that the Documentation requirements can – and should – fairly and reasonably be interpreted to generally require the submission of such documents, where they exist, in the claimant's possession, to support or *confirm* his or her substantive right to recover.

As noted, some of the "required" documentation will be necessary for the Class Member to establish his or her eligibility and/or level of compensation under the substantive terms of the Agreement; if the Claimant cannot produce documents sufficient to establish that, presumably, as a practical matter, he or she will not be able to recover, or will be able to recover at a lower amount.

In some cases, similarly, the absence of a "required" document might trigger the Program to evaluate more closely a claim or certain aspect of a claim – (and work with the Claimant to obtain sufficient documentation per Section 4.3.7).

But, in most cases, these documents are being "required" – not to determine whether the person or business is an eligible Class Member entitled to a specific recovery, but – to dot the Is and cross the Ts in such a way that will lend confidence in and credibility of the Program's Determinations.

This is certainly what was intended and understood by Class Counsel.

**Implicit in the "Requirements" is that the Documents Actually Exist**

Looking, in particular, to the License provisions under Exhibit 4A Section 7 and the Tax Return requirements under Exhibit 4A Section 3 (and Exhibit 7 Section 4D), Class Counsel believe that a claimant who has provided the Program with all of the existing Licenses and/or Tax Returns has submitted "all" or "any" or "the" specified Licenses and/or Tax Returns, and complied with the terms of the Agreement.

Consistent with logic, reason, the intent and understanding of Class Counsel, and the intent of BP as expressed during negotiations, these documents do not go to the existence or even the level of a Class Member's substantive right to recover.  Rather, they are to be provided - *where the Class Member has them* - to lend confirmation and support for the existence and nature of the entity, and the general validity of the claim.

It is unreasonable, illogical, and inconsistent with the intent of the parties that a claimant be required to submit a document that he or she simply does not have.

**The Term "Any" in Exhibit 4A Section 7 Indicates that the Class Member only has to Submit a Copy of "Any" License that Might Exist**

Exhibit 4A Section 7 says "any".  Not "all".  Nor "every".  But "any".

This term implies – *i.e.* expects – that such documents may or may not be available for submission.

Indeed, the fact that the Agreement is asking for "a copy of" communicates an expectation that the Class Member will simply be making a copy of something already in his or her possession.

If I, as a Class Member, have given the Program a copy of all of the licenses I have, then I have provided "a copy of any applicable federal, state or local governmental licence...."


**The Word "Applicable" Raises an Ambiguity which Should be Resolved by the Claims Administrator Consistent with the Overall Structure and Intent of the Agreement**

What does "applicable" mean?

Potentially "applicable" to any aspect of the business?  Or only "applicable" to the professional aspects of the business?  Or only "applicable" to the business' *claim* under the Settlement Agreement?

It is not logical or reasonable to interpret this provision to mean that a business who failed to get, or has since lost, some potentially "applicable" "license" with no relevance to the nature of its claim cannot recover under the Agreement.


**The Phrase "Required" Raises an Ambiguity which Should be Resolved by the Claims Administrator Consistent with the Overall Structure and Intent of the Agreement**

What does "required" mean?

In simplest and most literal terms, a business that in fact operated without a license was not actually "required" by a State, Local or Federal Government to have a license.

The inclusion of "*to operate its business*" is significant.

It, at the very least, distinguishes licenses that are truly pre-conditions to engage in a business or profession from mere revenue-generating governmental measures.

Not just any potentially applicable "license".  But only those licenses that are "required to operate its business."

What is the consequence of not having the license?   Does the Government come and close your doors?  Or do you simply pay a penalty or a fine?

This provision should be strictly construed, particularly when read together withe the examples that are provided.


**The "Requirement" Should be Construed in Light of the Examples Provided**

While Class Counsel understand that the examples in Exhibit 4A Section 7 were not intended to be exhaustive, the ambiguities in the preceding language should be interpreted in light of the examples that are provided:
- Real Estate Sales Licenses
- Occupancy Licences
- Liquor Licenses
- Restaurant Licenses
- Taxi / Livery Licenses
- Service Licenses or Permits

These do not convey that a generic "business license" or "occupational license" or permit that theoretically applies to anyone conducting business within a given county or parish or municipality is "required".


**Where 2011 Tax Returns Do Not Yet Exist, an Otherwise Eligible Class Member Still Has the Substantive Right to Recover under the Agreement**

The IRS has extended the 2011 tax filing deadline to January 11, 2013 for Gulf Coast residents and businesses affected by Hurricane Isaac.[1]

If I, as a Class Member, have completed and filed 2007-2010 Tax Returns, but have not yet completed or filed my 2011 Tax Returns, and I have submitted to the Program the 2007-2010 Tax Returns which exist, then I have provided the Program with *any* and *all* federal tax returns.

Class Counsel agree that, where "required", a 2011 Tax Return should be provided to the Program where such documents in fact exist.

But, to interpret Exhibit 4A Section 3 (or Exhibit 7 Section 4D) to preclude an otherwise eligible Class Member's *substantive right* to recover where a 2011 Tax Return doesn't exist is unreasonable, illogical and inconsistent with the parties' intent.


**There is No "Requirement" for 2012 Tax Returns**

A Start-Up, under Exhibit 7 Section III, may use January - April 2012 financials in order to establish Causation.

---

[1] Postlethwaite & Netterville Tax Update, http://www.pncpa.com/wwd_tax_tax-updates.asp (Sept. 10, 2012).

However, there is *no* mention of 2012 Tax Returns in the Documentation provisions of either Exhibit 7 Section IV(D) or Exhibit 4A Section 3.

2012 Tax Returns are not required.


**The Claims Administrator Has the Power and the Responsibility to Interpret and Apply the Settlement Agreement**

Under Section 4.3.1, the Claims Administrator has the power and responsibility to "faithfully implement and administer the Settlement, according to its terms and procedures, *for the benefit of the Economic Class,* consistent with this Agreement, and/or as agreed to by the Parties and/or as approved by the Court."[2]

The Claims Administrator does not need the approval of BP.

If BP disagrees with the Claims Administrator's interpretation, BP has the right to invoke an Administrative Panel under Section 4.3.4.

---

[2]Emphasis supplied.