# MEMORANDUM

**To:** Claims Administrator

**From:** Class Counsel

**Re:** Subsistence Claims - Impairment
    *Policy Keeper No. 316 (v.4)*

**Date:** March 2, 2014

### I.    Introduction

Proposed Policy 316 (v.4) improperly limits the Loss Period by which a subsistence claimant can seek subsistence losses associated with impairment to fishing grounds. As Class Counsel detailed in their previous subsistence memorandum, there can be no question that the scope and extent of impairment to Gulf of Mexico fishing grounds was significant. However, the "objective" proof necessary to prove impairment for many legitimate subsistence users is far too cumbersome when compared to the express wording of the Settlement Agreement, and perhaps impossible given the sophistication of many legitimate subsistence users.

### II.    Background

The subsistence framework was enacted to compensate claimants for the "loss of value of subsistence use of natural resources **alleged to arise out of, result from or relate in any way to, direct or indirectly**, the oil spill." Section 38.140 (emphasis added).  The subsistence framework recognizes, in three separate instances, that the Loss Period of a claim may be based on either water closures or impairment.  Specifically, a subsistence claimant is one who "relied upon subsistence resources that were **diminished *or* restricted** in the geographic region used by the claimant **due to *or* resulting from** the DWH Spill." Ex. 9, Section A.2 (emphasis added).  The Claimant must "identify the time period of loss of subsistence use with the **closure or impairment** of geographic areas **relied upon by the Claimant** between April 20, 2010 and December 31, 2011." Ex. 9, Section B.1 (emphasis added).  Policy 316 v.4 seeks to address the type of documentation corroborating the "length of time that fishing or hunting areas were **closed *or* impaired** as a result of the spill" (emphasis added).

### III.    Discussion

    **a. As written, the proposed policy limits impairment claims to physical touching of oil as opposed to actual diminishment of subsistence resources.**

Proposed Policy 316 v.4 attempts to list "acceptable document types" that would suffice in proving compensable subsistence impairment losses under the Settlement. However, upon review, almost every form of "acceptable" proof is based upon a "restriction" (i.e., a direct impact such as a closure) as opposed to an indirect impact (i.e., a diminishment of resources). For instance, the proposed policy uses the following examples of "acceptable document types."

1

- Reports of continued **oiling;**
- Date-stamped photos (presumably of oiled areas);
- Marina **closure** reports;
- Receipts/invoices for **oil removal** from a boat;
- A description of necessity to traverse through **closed** areas;
- Receipts/invoices for boat repairs **due to oil contamination**;
- Boat launch **closure** announcements.
- Fuel dock **closure** announcements;
- Boom location reports; and
- Receipts for **oil clean up**.

As the bold terms indicate, this list is limited almost solely to evidence of actual oiling or a closure of waters. But the Settlement Agreement's language intentionally lists "impairment" and "closures" as separate methods to prove loss, and provides for claims to be based on "closure maps" and "other relevant reports," *id.* at ¶ C 3(a); thus "impairment" of a fishing or hunting location cannot and must not be interpreted as synonymous with "closure" of that location, and the Settlement plainly intends to allow "impairment" claims to be based on evidence beyond just closures. The acceptable evidence of impairment should be much broader in order to conform with the Settlement Agreement,[1] and should include legitimate, non-blog, news sources that pinpoint impairment to fishing grounds. Scholarly reports and studies which recognize the effects of the spill going beyond water closures can sufficiently identify areas, species and time periods of impairment.

### b. The Settlement Program should maintain a central database of reported "impairment" cases to ensure equal treatment to subsistence claimants

By requiring subsistence claimants to present their own evidence of impairment, the Settlement Program is creating the potential for unequal treatment between class members. Importantly, if the Settlement Program gleans objective, "acceptable" evidence that would suggest impairment for a particular geographical location, species or time period, the Settlement Program should centrally coordinate that knowledge in a fashion that applies it to similarly situated claimants utilizing those fishing grounds and/or resources who may not have the means to possess the information. Subsistence claimants are not scientists, and many do not have the access or resources to generate the type of "objective" evidence promulgated in the proposed Policy. As written, the proposed policy unfairly places the burden of proof on claimants (who, based on the nature of subsistence claims, could very well be *pro se* claimants), putting them in the untenable position of fact finders for information beyond their reach. Creation of a central database of impairment evidence would reduce this burden and allow subsistence claimants to benefit from a store of common, accepted evidence to support their claims.

In conclusion, the proposed policy does not provide claimants with a listing of objective criteria that documents the claimed times and places of impairment. Moreover, documents that the Claims Administrator determines sufficiently document impairment should apply to all similarly situated claimants so they are placed on the same footing.

---

[1] Ex. 9, Section A.2