# MEMORANDUM

**To:**   Settlement Program Appeal Panelists

**From:** Class Counsel

**Re:**   Oil & Gas Exclusion

**Date:**  October 29, 2013

---

In response to the request for *en banc* submissions in connection with the claim and appeal of ███████████████████,[1] Class Counsel respectfully submit the following "*amicus*" memorandum, to highlight three significant issues of general class-wide application; namely:

1. **BP should not be allowed to present its own new or additional "evidence" to the Appeal Panelists.** This is a *settlement*. It was not intended to be "adversarial". Nor was the Settlement Program Appeal Process intended to be a "mini-trial". Section 6.2 of the Settlement refers solely to "the complete record of the Claimant in the Settlement Program". The Settlement Agreement does not contemplate the independent investigation, collection or presentment of extrinsic "evidence" by BP.

2. **The inquiry into Class Membership (or Exclusion) is Entity-specific.** Section 1.2 of the Settlement Agreement refers to "Entities" which are defined in Section 38.63. Notably, neither Section 38.63 nor Section 2.1, in discussing the definition of an Entity and the exclusion thereof, (nor Section 4.4.7.1) refer to a "parent" or "affiliate" or "subsidiary". An Entity which is a Classmember should not be excluded based on the fact (or allegation) that a separate and distinct parent entity is (allegedly) excluded.

3. **When applying the Exclusions in Exhibits 17 and 18, the use of an NAICS Code on the Claimant's 2010 Tax Returns and/or Business License that is not excluded should be presumptively correct, absent compelling evidence to the contrary.** Exhibits 17 and 18, and Section 4.4.7.1, direct the Program – and, through publication and notice, the potential classmembers – to 2010 business and tax records for the use of specific NAICS Codes. While there may, from time to time, be

---

[1] No. 100176960.

exceptional circumstances, an individual or entity attempting to identify its rights should have been able to generally rely on its use of a non-specified NAICS Code as indicia that it was and is a Classmember, and was / is not excluded.[2]

**A. The Settlement Agreement provides for its own evidentiary scope and standards.**

BP agreed to the appointment (and Court supervision) of an independent Administrator and Trustee, as well as appointed independent Program Vendors, who would be entrusted with the responsibility to collect the required Documentation and other necessary information, and to evaluate the claims accordingly.[3]

With respect to Settlement Program Appeals, Section 6.2 of the Settlement refers solely to "the complete record of the Claimant in the Settlement Program". Neither Section 6 nor Exhibit 25 contemplate the independent investigation, collection or presentation of extrinsic "evidence" by BP.

This, after all, is a *settlement,* not litigation. In lieu of litigating the claims made against it in an adversarial process, BP agreed to the substance of the Settlement Agreement as well as

---

[2] *Note* that the analysis under Exhibit 2 with respect to the Definition of "Tourism" is somewhat different. Rather than directing the Settlement Program to 2010 Tax or Business Licenses, the Agreement simply utilizes the various NAICS Codes, with their Industry Definitions and specific examples of covered types of businesses to better define "businesses which provide services such as attracting, transporting, accommodating or catering to the needs or wants of persons traveling to, or staying in, places outside their home community." In addition, Exhibit 2 is applied to Individuals and Entities who are Classmembers, and hence Section 4.3.8 (as well as Sections 4.3.7 and 4.3.1) unequivocally apply to construe the documentation and information in such as way as to maximize those classmembers' claims. (Class Counsel also note that where separate Facility Claims are made by Multi-Facility Businesses, Class Counsel believe that the Exhibit 2 and Exhibit 19 analysis should be conducted on a claiming facility-by-facility basis; whereas, because the Exclusions under Exhibits 17 and 18 relate to class membership, they should be applied at the Entity level.) Class Counsel's suggested approach to the application of Exhibit 2 is further spelled out in Class Counsel's En Banc Submission on Treatment of Condo Owners Associations as Part of the "Tourism" Industry, dated October 23, 2013.

[3] *See generally,* Sections 4.3 and 5.12 of the Settlement Agreement.

the processes and procedures contained therein.[4]   Amongst those procedures are the Rules

Governing the Appeals Process, to which the referenced matter is subjected.[5]   Consistent with

Section 6.2, these Rules unambiguously define the record on appeal to include the following:

> *Rule 13. Record on Appeal.*   The record on appeal shall consist of:
>
> (a) The Settlement Agreement and all its attachments;
>
> (b) Court rulings on similar issues;
>
> (c) Prior appeal rulings on similar issues, which are for informational purposes only and are not binding precedent;
>
> (d) Formal Claims Administrator policies, which have been promulgated and announced by the Claims Administrator after completion of the formal administrative review process adopted by the Claims Administrator and outlined in Section 4.3.4 of the Settlement Agreement;
>
> (e) The entire Claim File on the claim with the Claims Administrator;
>
> (f) The Claims Administrator's Summary of Review, as requested by the Appeal Panel. The Summary of Review is intended to provide the Appeal Panel with an understanding of what occurred in the underlying processing of the claim, including the basis for the determination(s) made by the Claims Administrator. It shall include reference to and a factual explanation of any formal policies or procedures adopted by the Claims Administrator that are applicable to the issue(s) raised by the appeal, referring the Appeal Panelist to the formal policies that are part of the Record of Appeal, as described in Rule 13 (c). The Summary of Review is not to be a document that advocates one position or the other but rather is to be a narrative that simply explains how the Claims Administrator processed the claim. The Summary of Review is for informational purposes only and is to be made available to the Appeal Panel, the Claimant, Class Counsel and BP. The Appeal Panel may grant the Claimant, Class Counsel and BP the right to file a response to the Claims

---

[4]    Those processes and procedures included an affirmative declaration that "[the Settlement Agreement] and its exhibits, attachments, and appendices shall constitute the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this Agreement." Settlement Agreement, Section 26.1.

[5]    Section 6.3 of the Settlement Agreement provides that "[t]he Settlement Program may establish additional procedures for the Appeal Process not inconsistent with Exhibit 25." Pursuant to this authority, the *Rules Governing the Appeals Process* were made effective Feburary 4, 2013.

Administrator's Summary of Review, but such response shall be limited to a correction of facts recited in the Summary of Review and shall not include any argument.

(g) The Initial and Final Proposals and supporting memoranda, as well as any *amicus* filings by Class Counsel submitted under these Rules; and

(h) On any appeal by BP, where BP contends that the claim does not comply with the applicable documentation requirements set forth in the Settlement Agreement, a claimant may submit additional substantive documentation with the claimant's Final Proposal and supporting memorandum. If the Claimant cannot reasonably obtain and submit the documentation by the deadline for submitting its Final Proposal, the Appeals Coordinator shall extend the Final Proposal deadline in order to afford the Claimant with a reasonable opportunity to submit the additional documentation.[6]

Clearly, the introduction of new evidence is absent from the foregoing list and, thus, BP does not have the option to introduce its additional purported "evidence" on appeal. Therefore, this panel should consider only that which constitutes the record, and it would be improper to consider any additional purported "evidence" submitted by BP.

**B. The Settlement Program – and the Appeal Panelists – should only look to the business records and activities of the the claiming Entity for the most accurate NAICS Code in applying the Exclusions under Exhibits 17 and 18.**

There is no basis in the Settlement Agreement or any associated Policies, Court Orders, or related authorities for the Settlement Program and/or the Appeal Panelists to look to an Entity other than the Claiming Entity to determine whether such Entity is either a Classmember or an Excluded Entity under the most appropriate NAICS Code.

Section 1.2 of the Settlement Agreement refers to "Entities" which are defined in Section 38.63. Notably, neither Section 38.63 nor Section 2.1, in discussing the definition of an Entity and the exclusion thereof, refer to a "parent" or " affiliate" or "subsidiary".

---

[6] *See* Rules Governing the Appeals Process, Rule 13.

Nor does Section 4.4.7.1 refer to the Tax returns, Business Licenses or Permits, or other evidence of a "parent's" or "affiliate's" or "subsidiary's" activities.[7]

Even assuming *arguendo* that some examination of a subsidiary's business activities were appropriate, (which is denied), there is absolutely no basis to examine the business activities of a parent company.

**C. When applying the Exclusions contained within Exhibits 17 and 18, the NAICS Code actually used on the Claimant's 2010 Tax Returns and/or Business Licenses should be presumptively correct.**

The entire purpose of utilizing the NAICS Codes, as reflected on the 2010 Tax Returns or Business Licenses, was to provide an objective standard by which entities could objectively ascertain whether they were or weren't members of the class. *See* Section 4.4.7.1, and Exhibits 17 and 18.[8]

Where, therefore, the claiming entity utilized an NAICS Code that is *not* listed on Exhibit 17 or 18, the Entity should be presumed to be an eligible Classmember, absent compelling evidence to the contrary.

These returns were created without any knowledge that a Settlement Agreement would be confected in the future.

The Settlement itself (as BP admitted in its Reply Memorandum leading up to the final Fairness Hearing) places a "far greater and indeed exclusive reliance on entirely objective

---

[7] *See also, e.g.,* Claims Administrator's Policy 480.

[8] Again, Class Counsel note that the analysis under Exhibit 2 (and Exhibits 16 and 19) is different. *See* Footnote 2, *supra.*

frameworks…"[9] and "…is designed to be transparent as a claimant or his or her counsel reviews the frameworks relevant to particular circumstances.…"[10]

> The frameworks ... rely on clearly expressed requirements or formulas which make sure that claimants can really understand how their claims will be treated under the frameworks. This is vital because it allows each individual claimant to make an informed decision concerning that claimant's choice to participate in the settlement or opt out.

Rec. Doc. 7731 at p.77  (*citing* Henley Supp Decl. (Ex. 3) ¶3).

Claimants like the one in question were and remain entitled to rely upon the fact that the NAICS code used on their Tax Return was not listed in Exhibit 17, and were therefore not excluded.

---

[9] Rec. Doc. 7731 at pp.76-77.

[10] *Id.* at p. 77.