## *"Ultra Vires"*

**COUNT FIVE:** *Ultra Vires* Actions by the Claims Administrator and Settlement Program

95. BP re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 94 of this Complaint as though fully set forth herein.

96. The Claims Administrator and the Settlement Program are creations of and governed by the Settlement Agreement. *See* Settlement Agreement (Att. A) ¶ 4.3. The Settlement Agreement provides that the Claims Administrator "shall . . . faithfully implement and administer the Settlement, according to its terms and procedures." *Id.* ¶ 4.3.1. Because the Claims Administrator and Settlement Program derive their authority from the Settlement Agreement and are obligated to faithfully implement the Settlement Agreement, they may not act in a manner contrary to it.

97. By deviating from the terms of the Settlement Agreement and authorizing the award of payments that the Agreement does not permit, the Claims Administrator and Settlement

28

**Complaint, *BP v. Settlement Program and Patrick A. Juneau,* No. 13-492 [Rec. Doc. 1], at p.28.**

# ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT
## April 18, 2012

4.3.4. A three-person Claims Administration Panel shall be established consisting of the Claims Administrator, one representative designated by Lead Class Counsel and one representative designated by BP. Upon the request of any member of the Claims Administration Panel, it shall address and attempt to resolve unanimously any issues or disagreements that arise regarding the Claims Administrator's oversight responsibilities, Settlement administration, or any other issue involving the Settlement Program. Issues or disagreements that cannot be unanimously resolved by the Claims Administration Panel will be referred to the Court for resolution.

Rec. Doc. 6276-1   (page 20)

# ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT
## Definitions
### April 18, 2012

38.40. Court shall mean the United States District Court for the Eastern District of Louisiana, Judge Carl Barbier, presiding, in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179.

Rec. Doc. 6276-1   (page 104)

# WHAT BP DID NOT DO
# AND WHAT THE SETTLEMENT AGREEMENT DOES NOT SAY

- Agreement does not say that you "smooth" revenue.

- Agreement does not say that you "match" expenses.

- Agreement does not prohibit Cash Basis financial statements.

- No exclusion of construction, agricultural or professional service businesses.

- No limit or cap on total Business Economic Loss payouts.

- No suggestion that Causation not be extended to businesses with greater total annual profit in 2010 than in 2007-2009.

- No alternative framework applied to construction, agricultural or professional service industry claims.

*See generally,* Class *In Camera* Submission in Opposition to BP Motion for Reconsideration [Rec. Doc. 8963-54], at pp.17-18.

# ECONOMIC AND PROPERTY DAMAGE S SETTLEMENT AGREEMENT
## Exhibit 22



**Rec. Doc. 6276-40    (page 2)**

# PRELIMINARY APPROVAL HEARING
## Class Counsel Presentation
### April 25, 2012

## Summary of Revenue Pattern Requirements for Causation Tests

| Test | Zone A | Zone B (Non-Tourism and Non-Seafood) | | Zone C (Non-Seafood) | | Zone D | |
|---|---|---|---|---|---|---|---|
| | Down Up | Down | Up | Down | Up | Down | Up |
| V-Test | N/A | -8.5% | 5% | -8.5% | 5% | -15% | 10% |
| Modified V-Test* | N/A | -5% | 5% | -5% | 5% | -10% | 7% |
| Down Only test* | N/A | -8.50% | N/A | -8.50% | N/A | -15% | N/A |

*= For the Modified V-Test and the Down Only Test, additional requirements apply, as described in Exhibits.

Rec. Doc. 9087-1   (page 5)

# E-Mail from Michael Juneau
## September 25, 2012

**From:** Michael Juneau
**To:** mark.holstein@bp.com; keith.moskowitz@bordenladner.com; jimr@wrightroy.com; Steve Herman
**Cc:** Christine Reitano; Patrick Juneau
**Subject:** RE: Request for Parties' Positions - NO LATER THAN 12:00 NOON, SEPTEMBER 28, 2012
**Date:** Tuesday, September 25, 2012 2:11:27 PM
**Attachments:** image001.png
**Importance:** High

Counselors:

Please provide the Claims Administrator's office (copies to all of the above) with your respective interpretations of the Settlement Agreement, providing citations to any *specific* language in the Settlement Agreement that you contend addresses the following issue:

As to BEL claims, once a claimant's financial records satisfy the causation standard set out in Exhibit 4B, does the Settlement Agreement mandate and/or allow the Claims Administrator to separate out losses attributable to the oil spill vs. those that are not? Stated another way, once a claimant passes the causation threshold, is the claimant entitled to recovery of *all* losses as per the formula set out in Exhibit 4C, or is some consideration to be given so as to exclude those losses clearly unrelated to the spill?

I will give a hypothetical situations to try to illustrate the question we are asking:

Hypo: A small accounting corporation / firm is located in Zone B. They meet the "V-shaped curve" causation test. The explanation for the drop in revenue is that one of the three partners went out on medical leave right around the time of the spill. Their work output, and corresponding income, thus went down by about a third. The income went back up 6 months later when the missing partner returned from medical leave. Applying the compensation formula under Exhibit 4C of the Settlement Agreement, the accounting firm can calculate a fairly substantial loss. Is that full loss recoverable?

Please submit any position paper you wish to present on this issue no later than **12:00 noon, central time, Friday, September 28, 2012**. Given the ongoing efforts to process the program's claims as expeditiously as possible in light of certain impending court deadlines, we are not in a position to consider any position statements submitted after that deadline. Thank you.

Michael J. Juneau
*Special Counsel*

DEEPWATER HORIZON
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS
504-934-4999

935 Gravier Street, Ste. 1905
New Orleans, LA 70112
mjuneau@dheclaims.com

> As to BEL claims, once a claimant's financial records satisfy the causation standard set out in Exhibit 4B, does the Settlement Agreement mandate and/or allow the Claims Administrator to separate out losses attributable to the oil spill vs. those that are not?

> Stated another way, once a claimant passes the causation threshold, is the claimant entitled to recovery of *all* losses as per the formula set out in Exhibit 4C, or is some consideration to be given so as to exclude those losses clearly unrelated to the spill?

Rec. Doc. 8963-66 (page 2)

**E-Mail from Michael Juneau**
**September 25, 2012**

---

From: Michael Juneau
To: mark.holstein@bp.com; keith.moskowitz@bordenton.com; jimd@wrightroy.com; Steve Herman
Cc: Christine Reitano; Patrick Juneau
Subject: RE: Request for Parties' Positions - NO LATER THAN 12:00 NOON, SEPTEMBER 28, 2012
Date: Tuesday, September 25, 2012 2:11:27 PM
Attachments: image001.png
Importance: High

Counselors:

Please provide the Claims Administrator's office (copies to all of the above) with your respective interpretations of the Settlement Agreement, providing citations to any *specific* language in the Settlement Agreement that you contend addresses the following issue:

As to BEL claims, once a claimant's financial records satisfy the causation standards set out in Exhibit 4B, does the Settlement Agreement mandate and/or allow the Claims Administrator to separate out losses attributable to the oil spill vs. those that are not? Stated another way, once a claimant passes the causation threshold, is the claimant entitled to recovery of *all* losses as per the formula set out in Exhibit 4C, or is some consideration to be given so as to exclude those losses clearly unrelated to the spill?

I will give a hypothetical situations to try to illustrate the question we are asking:

Hypo: A small accounting corporation / firm is located in Zone B. They meet the "V-shaped curve" causation test. The explanation for the drop in revenue is that one of the three partners went out on medical leave right around the time of the spill. Their work output, and corresponding income, thus went down by about a third. The income went back up 6 months later when the missing partner returned from medical leave. Applying the compensation formula under Exhibit 4C of the Settlement Agreement, the accounting firm can calculate a fairly substantial loss. Is that loss recoverable?

Please submit any position paper you wish to present on this issue no later than 12:00 time, Friday, September 28, 2012. Given the ongoing efforts to process the program's claims expeditiously as possible in light of certain impending court deadlines, we are not in a position to consider any position statements submitted after that deadline. Thank you.

Michael J. Juneau
Special Counsel

DEEPWATER HORIZON
CLAIMS CENTER
504-934-4999

935 Gravier Street, Ste. 1905
New Orleans, LA 70112
mjuneau@dhcclaims.com

---

*Hypo*: A small accounting corporation / firm is located in Zone B. They meet the "V-shaped curve" causation test. The explanation for the drop in revenue is that one of the three partners went out on medical leave around the time of the spill…. The income went back up six months later when the missing partner returned from medical leave. Applying the compensation formula under Exhibit 4C … the accounting firm can calculate a fairly substantial loss. Is that full loss recoverable?

Rec. Doc. 8963-66 (page 2)

# Response from BP Counsel
## September 28, 2012




**bp**

Mark Holstein
Managing Attorney
BP Legal – Litigation

BP America Inc.
P.O. Box 3092
Houston, Texas 77253-3092

501 Westlake Park Blvd.
Houston, Texas 77079-2697
Mail Code 17.130

Direct: 281-366-9895
Fax:    281-366-3401
Mark.Holstein@bp.com

PRIVILEGED & CONFIDENTIAL
CONFIDENTIAL SETTLEMENT COMMUNICATION

September 28, 2012

Via Electronic Mail

Patrick Juneau
Claims Administrator
Deepwater Horizon Settlement Program
935 Gravier Street
New Orleans, Louisiana 70130

Re: Issues Raised By Class Counsel or Settlement...

Dear Mr. Juneau:

This letter responds to several issues recently...
Program. We first provide a short executive summary...
discussion of each issue.

1. Executive Summary

- BP agrees with Class Counsel that where a v...
  title but not vessel registration, a prescribed s...
  are set forth in BP's September 21 letter) ma...

- With regard to Michael Juneau's email inquiry of September 25, the BEL causation methodology set forth in the Settlement Agreement governs the determination of causation for BEL claims. If proper application of the methodology with accurate financial data yields a determination that causation is satisfied, BP agrees with Class Counsel that all losses calculated in accordance with Section 3.3 and Exhibits 4C and 19 of the Settlement Agreement are presumed to be attributable to the Oil Spill.

- Where an owner/officer (or part owner) of an entity is also a W-2 employee of the entity and the entity has filed a BEL claim, the owner/officer cannot file an IEL claim for alleged lost wages. The owner/officer's wages are addressed and recovered in the BEL claim, and permitting a separate IEL claim would result in double recovery.

- Where an owner of an entity is also a W-2 employee of the entity and the entity signed a GCCF release, the owner may not file a separate IEL claim in the Settlement Program for alleged lost wages. Any alleged lost wages of the owner were addressed in the resolution

**Rec. Doc. 8963-67  (page 2)**

# Response from BP Counsel
## September 28, 2012

Patrick Juneau
Claims Administrator
September 28, 2012
Page 3 of 6

Framework (Ex. 4C). *If the accurate financial data establish that the claimant satisfies the BEL causation requirement, then all losses calculated in accord with Exhibit 4C are presumed to be attributable to the Oil Spill.*[1]

Nothing in the BEL Causation Framework (Ex. 4B) or Compensation Framework (Ex. 4C) provides for an offset where the claimant firm's revenue decline (and recovery, if applicable) satisfies the causation test but extraneous non-financial data indicate that the decline was attributable to a factor wholly unrelated to the Oil Spill. Such "false positives" are an inevitable concomitant of an objective quantitative, data-based test. However, they should be relatively rare.

[1] Moratoria Losses are excluded from recovery under the Settlement, however. *See* Settlement Agreement § 3.3 & Ex. 19.

**Rec. Doc. 8963-67 (page 4)**

**CLASS COUNSEL'S AND BP DEFENDANTS' JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF *DEEPWATER HORIZON* ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT AS AMENDED ON MAY 2, 2012**

November 19, 2012
[Rec. Doc. 7945]

126. Once the causation tests are satisfied, all revenue and variable profit declines during the Compensation Period are presumed to be caused entirely by the spill, with no analysis of whether such declines were also traceable to other factors unrelated to the spill. This presumption would not be available in litigation. *See* Fishkind Decl. ¶ 56; Sharp Decl. ¶ 17.

**Rec. Doc. 8963-73 (page 3)**

# BP APPEAL
# BP'S INITIAL PROPOSAL
# CLAIM NO. 88708

## BP'S INITIAL PROPOSAL REGARDING CLAIM NO. 88708

### INTRODUCTION

Claimant in this appeal is a [redacted] located in [redacted]. The Settlement Program awarded Claimant $[redacted] pre-RTP ($[redacted] post-RTP). This award was made despite the fact that Claimant's gross billings and payroll costs increased in 2010, indicating [redacted] was actually busier and rendered more services in 2010 than during the Benchmark Year of 2009. Indeed, the award is being driven not by a decrease in economic activity after the Spill, but rather [redacted] during the post-Spill Compensation Period.

Claimant's own economic data show that Claimant is not a class member and thus may not file a claim or receive compensation under the Settlement Agreement. In order to be a class member, one must have incurred loss as a result of the Spill. Because we know that Claimant's downturn in variable profit was caused by [redacted] see Claimant's Profit & Loss Statements, it simply is not possible that the alleged loss was caused by the Spill.

Even if Claimant were a class member, the Settlement Program misclassified certain variable expenses as fixed, which resulted in overcompensation.

BP submits an Initial Proposal of $0, as the record evidence does not support an award of any compensation.

1

> …the award is being driven not by a decrease in economic activity after the Spill, but rather [*by an alternative cause*] during the post-Spill Compensation Period.

> Claimant's own economic data show that Claimant is not a class member and thus may not file a claim or receive compensation under the Settlement Agreement.

**Rec. Doc. 9087-8 (page 1)**

# BP APPEAL
# BP'S INITIAL PROPOSAL CLAIM NO. 88168

## BP'S INITIAL PROPOSAL REGARDING CLAIM NO. 88168

BP Exploration & Production Inc. ("BP") respectfully submits this Memorandum in Support of its Final Proposal with regard to the appeal of Claim No. 88168 (Claimant ▓▓▓▓).[1] Claimant in this appeal is a ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ approximately 90 miles from the Gulf of Mexico. The Settlement Program awarded Claimant $▓▓▓ in pre-RTP lost profits, and a total award of $▓▓▓▓. However, in 2010, the Claimant earned $▓▓▓▓ in revenue, which is more than in any previous year for which it submitted financial data.

It is unclear on what basis a ▓▓▓▓▓▓▓▓▓▓▓▓▓ company can assert a spill-related loss, a necessary prerequisite to class membership and recovery.

Claimant executed a Registration Form and a Claims Form, both under penalties of perjury, seeking recovery for Business Economic Losses "arising from" or "due to the Spill." *See* Registration Form at 1, attached hereto as Exhibit 1; Claim Form at 1, attached hereto as Exhibit 2. *See also*, Registration Form at 9 (explaining that the Business Economic Loss Claim Form is to be completed by "businesses [...] that assert economic loss *due to the Spill*") (emphasis added). There is no indication in the record as to on what possible basis a ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ could have any losses associated with the Spill. Class membership and the right to recover are limited to those who had a loss due to the spill. *See* Settlement Agreement Sec. 1.3.1.2 (defining the Economic Damage Category to include "[l]oss of income, earnings or profits suffered by Natural Persons or Entities *as a result of* the DEEPWATER

---

[1] BP is aware of the Court's Order of March 5, 2013. BP respectfully disagrees with this decision and continues to believe that the current implementation of the agreement by the Claims Administrator is contrary to its terms, contrary to fundamental principles of economics and accounting, and contrary to common sense. BP will pursue all available legal options (including all rights of appeal) to challenge this decision and therefore files this brief based on its good-faith belief that the Order is in error and should be reversed.

1

> It is unclear on what basis a [*non-Excluded type of*] company can assert a spill-related loss, a necessary prerequisite to class membership and recovery.

> There is no indication in the record as to on what possible basis a [*non-Excluded type of*] company could have any losses associated with the spill. Class membership and the right to recover are limited to those who had a loss due to the spill.

**Rec. Doc. 9087-7 (page 1)**

# ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT
## Class Definition, Sections 1.3 and 1.3.1.

> April 16, 2012; or
>
> 1.2.4. owned or leased REAL PROPERTY in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012;
>
> 1.3. Individuals and Entities who meet the geographical descriptions of Sections 1.1 or 1.2 above are included in the Economic Class only if their Claims meet the descriptions of one or more of the Damage Categories described below.
>
> 1.3.1. The following are summaries of the Damage Categories, which are fully described in the attached Exhibits 1A-15:
>
> 1.3.1.1. SEAFOOD COMPENSATION PROGRAM. Damages suffered by a COMMERCIAL FISHERMAN, Seafood Crew, or SEAFOOD VESSEL OWNER that owned, operated, leased or worked on a vessel that (1) was Home Ported in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012, or (2) Landed Seafood in the Gulf Coast Areas at any time from April 20, 2009 to April 16, 2012; and damages suffered by, *inter alia*, OYSTER LEASEHOLDERS and IFQ Owners. (Exhibit 10). Claims for Economic Damage arising from the fishing, processing, selling, catching, or harvesting of menhaden (or "pogy") fish are excluded from the Seafood Compensation Program and other Economic Damage Claims under this Agreement.
>
> 1.3.1.2. Economic Damage Category. Loss of income, earnings or profits suffered by Natural Persons or Entities as a result of the DEEPWATER HORIZON INCIDENT, subject to certain Exclusions. (Exhibits 16-19)
>
> 1.3.1.3. Subsistence Damage Category. Damages suffered by Natural Persons who fish or hunt to harvest, catch, barter, consume or trade Gulf of Mexico natural resources, including Seafood and GAME, in a traditional or customary manner, to sustain their basic or family dietary, economic security, shelter, tool or clothing needs, and who relied upon Subsistence resources that were diminished or restricted in the geographic region used
>
> 5

- The Class includes Individuals and Entities who meet the Geographical Descriptions, (are not expressly Excluded), and "meet the descriptions of one or more of the Damage Categories described below."

- Economic Damage Category.

- "The following are **summaries** of the Damage Categories, **which are fully described in the attached Exhibits** 1A-15."

Rec. Doc. 6276-1 (page 8)

# BP APPEAL
# BP'S INITIAL PROPOSAL
# CLAIM NO. 88168

## BP'S INITIAL PROPOSAL REGARDING CLAIM NO. 88168

BP Exploration & Production Inc. ("BP") respectfully submits this Memorandum in Support of its Final Proposal with regard to the appeal of Claim No. 88168 (Claimant ▓▓▓▓).[1] Claimant in this appeal is a ▓▓▓▓▓▓▓▓▓▓▓▓ approximately 90 miles from the Gulf of Mexico. The Settlement Program awarded Claimant $▓▓▓▓ in pre-RTP lost profits, and a total award of $▓▓▓▓. However, in 2010, the Claimant earned $▓▓▓▓ in revenue, which is more than in any previous year for which it submitted financial data.

It is unclear on what basis a ▓▓▓▓▓▓▓▓▓▓ company can assert a spill-related loss, a necessary prerequisite to class membership and recovery.

Claimant executed a Registration Form and a Claims Form, both under penalties of perjury, seeking recovery for Business Economic Losses "arising from" or "due to the Spill." *See* Registration Form at 1, attached hereto as Exhibit 1; Claim Form at 1, attached hereto as Exhibit 2. *See also*, Registration Form at 9 (explaining that the Business Economic Loss Claim Form is to be completed by "businesses […] that assert economic loss *due to the Spill*") (emphasis added). There is no indication in the record as to on what possible basis a ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ could have any losses associated with the Spill. Class membership and the right to recover are limited to those who had a loss due to the spill. *See* Settlement Agreement Sec. 1.3.1.2 (defining the Economic Damage Category to include "[l]oss of income, earnings or profits suffered by Natural Persons or Entities *as a result of* the DEEPWATER

---

[1] BP is aware of the Court's Order of March 5, 2013. BP respectfully disagrees with this decision and continues to believe that the current implementation of the agreement by the Claims Administrator is contrary to its terms, contrary to fundamental principles of economics and accounting, and contrary to common sense. BP will pursue all available legal options (including all rights of appeal) to challenge this decision and therefore files this brief based on its good-faith belief that the Order is in error and should be reversed.

1

> [Footnote:]
>
> BP is aware of the Court's Order of March 5, 2013. BP respectfully disagrees with this decision … [and] … will pursue all available options (including all rights of appeal) to challenge this decision….

**Rec. Doc. 9087-7 (page 1)**

# BP APPEAL
# BP'S INITIAL PROPOSAL CLAIM NO. 88168

## BP'S INITIAL PROPOSAL REGARDING CLAIM NO. 88168

BP Exploration & Production Inc. ("BP") respectfully submits this Memorandum in Support of its Final Proposal with regard to the appeal of Claim No. 88168 (Claimant ▓▓▓▓).[1] Claimant in this appeal is a ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ approximately 90 miles from the Gulf of Mexico. The Settlement Program awarded Claimant $▓▓▓▓ in pre-RTP lost profits, and a total award of $▓▓▓▓. However, in 2010, the Claimant earned $▓▓▓▓ in revenue, which is more than in any previous year for which it submitted financial data.

It is unclear on what basis a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ company can assert a spill-related loss, a necessary prerequisite to class membership and recovery.

Claimant executed a Registration Form and a Claims Form, both under penalties of perjury, seeking recovery for Business Economic Losses "arising from" or "due to the Spill." *See* Registration Form at 1, attached hereto as Exhibit 1; Claim Form at 1, attached hereto as Exhibit 2. *See also,* Registration Form at 9 (explaining that the Business Economic Loss Claim Form is to be completed by "businesses [...] that assert economic loss *due to the Spill*") (emphasis added). There is no indication in the record as to on what possible basis a ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ could have any losses associated with the Spill. Class membership and the right to recover are limited to those who had a loss due to the spill. *See* Settlement Agreement Sec. 1.3.1.2 (defining the Economic Damage Category to include "[l]oss of income, earnings or profits suffered by Natural Persons or Entities *as a result of* the **DEEPWATER**

---

[1] BP is aware of the Court's Order of March 5, 2013. BP respectfully disagrees with this decision and continues to believe that the current implementation of the agreement by the Claims Administrator is contrary to its terms, contrary to fundamental principles of economics and accounting, and contrary to common sense. BP will pursue all available legal options (including all rights of appeal) to challenge this decision and therefore files this brief based on its good-faith belief that the Order is in error and should be reversed.

1

> Claimant executed a Registration Form and a Claim Form, both under penalties of perjury, seeking recovery for Business Economic Losses "arising from" or "due to the Spill".

**Rec. Doc. 9087-7 (page 1)**