# MEMORANDUM

**To:** Patrick A. Juneau, Esq.
       Claims Administrator

**From:** Class Counsel

**Matter:** <u>In re: Deepwater Horizon</u>
           MDL No. 2179

**Re:** Settlement Interpretations / January 11 Announcement of Policies

**Date:** January 18, 2013

### Introduction
**(re Settlement Interpretation)**

      Class Counsel believe that there are essentially three separate and distinct levels of settlement interpretation.

      First, the Claims Administrator is vested with the authority to implement and administer the Settlement Agreement for the benefit of the Economic Class in accordance with Section 4.3.1 of the Agreement.  In some cases, the Claims Administrator may seek input from the parties (and/or the Seafood Program Neutral) with respect to such issues of interpretation and implementation; in other cases, the Claims Administrator and/or Program Vendors may simply determine how best to proceed under the circumstances.  In some cases, the Claims Administrator may promulgate such interpretations or procedures as formal Policies; in other cases, such decisions may be of limited application and/or for other reasons simply maintained by the Program internally.  An individual Class Member, or BP, or an Appeal Panelist or Panel, may disagree with the Claims Administrator's interpretation, as applied to an individual claim.  Or, based on experience, either BP or Class Counsel (or both) may decide that the issue is of such import that a formal Claims Administration Panel determination is warranted.  In the meantime, however, the Claims Administrator and the Program Vendors should continue to implement and administer the Agreement as interpreted and applied by the Claims Administrator.

      Second, upon convening of the Claims Administration Panel, per Section 4.3.4 of the Settlement Agreement, the Parties and the Claims Administrator may reach unanimous agreement as to the appropriate interpretation and application of the Agreement.  This should result in a formally promulgated Policy Statement, which is thereafter followed by not only the Program but also by Appeal Panelists and/or Panels, on appeal.  The only way that such an agreed-to Policy Statement could be modified would be by the Court, on discretionary review of an appeal, in accordance with Section 6.6 of the Agreement.

      Finally, where one or both Parties have determined that an issue is of such import that a formal and final interpretation is necessary, and there is no unanimous decision by the Claims

Administration Panel, the issue is presented to and decided by the Court, pursuant to Section 4.3.4 of the Agreement. Once the Court decides the issue, then such interpretation should be formally promulgated as a Court-Approved Policy Statement, which is thereafter binding on the Program, the Parties, and the Appeal Panelists or Panels, in all claims.

### Response to Announcement of Policies dated January 11th

1.    *VoO Charter Payment Claims: Transitional MVCAs* – Class Counsel respectfully disagree with the Claims Administrator for the reasons previously provided. However, Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above. At the same time, BP cannot have it both ways: If a Transitional MVCA is not going to be considered a "VoO Charter Agreement" under the Settlement, then a person or entity who only has a claim arising out of a Transitional MVCA is **not** a Class Member, as he or she has no claim which meets the description of the VoO Charter Payment Category, per Sections 1.3 and 1.3.1.4 of the Class Settlement Agreement. Class Counsel respectfully request the Claims Administrator to secure a formal stipulation and agreement from BP on this point before implementing the policy.

2.    *Business Economic Loss Claims: State Sales and Use Tax Returns for Retail Businesses* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above.

3.    *Business Economic Loss Claims: Non-Revenue Items of Entities* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above. Class Counsel believe that there will be other items of revenue in 2010 that would logically call for the same treatment, but those issues have not been raised by the Claims Administrator at the current time.

4.    *Economic Loss Claims: Time Period Used to Determine the Applicable Zone* – The position of the Claims Administrator in Paragraph 4(a) and 4(b) is an appropriate interpretation of the Settlement in the view of Class Counsel. The statement in Paragraph 4(c) regarding Class Members with no physical locations and did no work in any Zone during the claimant's Compensation Period is not a provision set forth in the Settlement Agreement. Class Counsel understand that this interpretation will not be applied to IEL claims, and will only be a working premise for BEL claims. Class Counsel does not oppose the Claims Administrator accepting as a working premise that Zone D is the applicable Zone; however, Class Counsel believe that a Class Member should have the opportunity to establish why its applicable Zone is Zone A, B, or C, and not Zone D, based on the individual facts and circumstances.

5.    *Economic Loss Claims: Application of a Policy Preventing Double Payment for the Same Loss to an Entity and the Owner or Officer of that Entity* – Class Counsel have previously stated their position regarding the so-called "double payment" issues. Class Counsel do not believe that the Settlement Agreement excludes payments for individuals who otherwise meet the qualifications for payment under the IEL Framework. If, under the facts of the given case, it is

established that the individual earnings loss was in fact paid to the business, then the stated intent of the Claims Administrator to offset from the BEL payment the monies that were paid for the same loss in the IEL claim may be appropriate. However, Class Counsel believe that this is an individual claim analysis. The underlying predicate of the Claims Administrator's position is an assumption that the BEL claim was in fact paid for the loss that is being claimed in the IEL claimant. Unless that is established, both losses should be compensated.

6. *Individual Economic Loss Claims: End Date for Reimbursable Search Cost* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above.

7. *Economic Loss Zones: Definition of Zone A-28 - the Florida Keys* – Class Counsel agree.

8. *Individual Economic Loss Claims: Acceptable Substitutes for Sworn Written Statement-12* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above.

9. *Seafood Compensation Program: Documentation Requirements for Oyster Leaseholder Claims* – While Class Counsel understand the logic being applied by the Claims Administrator, Class Counsel would ask that this matter be further deferred until such time as there are conflicting claims filed with respect to the same leasehold property. Without a duplicate claim, default to the so-called "best evidence approach" is not necessary. If it turns out, at the end of the Seafood Compensation Program processing period, that the only claim that filed for a particular oyster leasehold interest is one supported by the Rental Receipts, then the Claims Administrator should accept that Rental Receipt as the best evidence available with respect to the lease, and make that payment accordingly.

10. *Seafood Compensation Program: Benchmark Revenue Treatment of Unreported Cash Sales of Seafood in Louisiana* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above.

11. *Seafood Compensation Program: Determination of Vessel Length* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above.

12. *Seafood Compensation Program: Oyster Vessel Owner and Oyster Boat Captain Compensation Calculations* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above.

13. *Seafood Compensation Program: GCR Oyster Leasehold Database* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above.

14. *Seafood Compensation Program: Protocol for Reclassifying Claims* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above.

15. *Seafood Compensation Program: Acknowledgement of Oral Oyster Harvesting Agreements* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above.

16. *Seafood Compensation Program: Determination of Vessel Classification* – Class Counsel defer to the Claims Administrator's interpretation per Section 4.3.1 of the Settlement Agreement, as outlined above.