**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## MEMORANDUM

**TO:**      **Class Counsel**
            **BP**

**FROM:**    **Patrick A. Juneau, Claims Administrator**

**DATE:**    **January 11, 2013**

**RE:**      **Announcement of Policy Decisions Regarding Claims Administration**

_____

Under the terms of the Deepwater Horizon Economic and Property Damage Settlement Agreement ("Settlement Agreement"), the Claims Administrator is charged with the duty to "faithfully implement and administer the Settlement, according to its terms and procedures, for the benefit of the Economic Class, consistent with this Agreement, and/or as agreed to by the Parties and/or as approved by the Court."  (Section 4.3.1 of the Settlement Agreement).  Further, the Claims Administrator is charged with the responsibility to "work with Economic Class Members . . . to facilitate . . . assembly and submission of Claims Forms, including all supporting documentation necessary to process Claims Forms under the applicable Claims Processes . . . [and to] provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of this Agreement."  (Section 4.3.7 of the Settlement Agreement).

In accordance with these provisions, the Claims Administrator has adopted the following policies affecting the administration of claims under the Settlement Agreement.  The Claims Administrator will implement this policy unless before 1/16/13 any Party requests that the Claims Administration Panel address an issue or disagreement relating to a policy, pursuant to Section 4.3.4 of the Settlement Agreement.  These policies are not to be made public until the expiration of that period and, if there is a request for a Panel, not until after those proceedings have been concluded.  If any Party seeks Panel consideration of an issue, the Panel can take it up at the session currently scheduled on other matters on 1/16/13.

1.      ***VoO Charter Payment Claims:  Transitional MVCAs.***  Sections 38.170 and 38.96 define eligible VoO claimants as those who "executed a VoO Master Vessel Charter Agreement."  Section 38.165 defines "VoO Master Vessel Charter Agreement" as "the standard agreements utilized by BP and its agents or subcontractors to charter the vessels available for work or service in connection with the VoO program."  Certain claimants have submitted Transitional Master Vessel Charter Agreements ("TMVCAs") with BP in an effort to satisfy the eligibility requirement that the claimant have executed a VoO Master Vessel Charter Agreement ("MVCA").  The Claims Administrator concludes that a TMVCA is not the same as an MVCA as defined in the Settlement Agreement, because the documents contain these key differences:

    (a) The MVCA states that the vessel shall be employed for the Charterer's use as a "vessel of opportunity," while the TMVCA does not;

418061

(b) The MVCA measures vessel length by "Length Over All," while the TMVCA measures vessel length by that listed on the state or federal registration documents as of 3/30/10;

(c) The contracts contain different daily rate payment amounts for work performed;

(d) An MVCA contains a rate of $200 per crew member per eight-hour day, which the TMVCA does not;

(e) The TMVCA does not appear to contain the language issue that gave rise to the contract claims in the VoO Charter litigation; and

(f) The dates of the TMVCAs we have seen are after the date that the VoO program ended (11/26/10), according to BP.

It appears that BP used the contracts for two different clean-up programs and used only MVCAs in the VoO program that forms the basis of the VoO Charter Payment benefit in the Settlement Agreement. Accordingly, VoO Charter Payment claims based on TMVCAs do not meet the eligibility requirements for such claims and will be denied.

**2.** ***Business Economic Loss Claims: State Sales and Use Tax Returns for Retail Businesses.*** Section 5 in Exhibit 4A of the Settlement Agreement requires monthly State Sales and Use Tax Returns for Retail Businesses. These documents shall be required of all Retail Business claimants, and must cover all years included in the Benchmark Period, 2010, and, if applicable, 2011. The Claims Administrator recognizes that there may be rare instances in which a Retail Business is not required to file monthly State Sales and Use Tax Returns, and therefore does not file monthly State Sales and Use Tax Returns, because of local regulations that are unique to specific jurisdictions. As such, the Claims Administrator submits the following policy clarification:

(a) If a Business Claimant submits documentation establishing that local regulations exempt the particular type of retail business in question from filing monthly State Sales and Use Tax Returns, and the Claims Administrator verifies the same, then the Claims Administrator may allow the claimant to be eligible for compensation without submitting monthly State Sales and Use Tax Returns. The Claims Administrator may, however, require any additional documentation that it deems necessary to satisfy this document requirement.

(b) If, however, a Business Claimant submits documentation establishing that local regulations exempt the particular type of retail business in question from filing monthly State Sales and Use Tax Returns, but requires non-monthly State Sales and Use Tax Returns, and the Claims Administrator verifies the same, then the Claims Administrator may allow the claimant to satisfy this document requirement by submitting the non-monthly State Sales and Use Tax Returns for the applicable period. The Claims Administrator may, however, require any additional documentation that it deems necessary to satisfy this document requirement.

**3.** ***Business Economic Loss Claims: Non-Revenue Items of Entities.*** The Claims Administrator interprets the Settlement Agreement such that the following items shall not

typically be treated as "revenue" for purposes of the various calculations to be performed under the terms of the Settlement Agreement with regard to entities asserting BEL claims:  (a) insurance proceeds, (b) interest income, and (c) gains or losses from sales of assets.  In arriving at this conclusion, the Claims Administrator has in part relied upon two factors.  First, such items are not typically treated as "revenue" under generally accepted accounting principles.  Second, the extensive  templates and testing of claims calculations jointly conducted by both Parties prior to implementation of this claims program, by agreement of the Parties, did not treat such items as "revenue" for purposes of this Settlement Agreement.

4.     *Economic Loss Claims:  Time Period Used to Determine the Applicable Zone.*  The Settlement Agreement requires the Claims Administrator to determine the Zone applicable to each Economic Loss claimant for purposes of causation and compensation.  The Settlement Agreement, however, does not specify the time period used to make this determination for any claimant.  In every instance, the Settlement Agreement uses the present tense when describing the impact of the Zone on causation of the RTP applicable to the claim. *See, e.g.,* Ex. 4B Sec. I.1 ("If you are a business in Zone A . . ."); Ex. 15 ("Businesses . . . located in Zone A . . ."); Ex. 8A fn 4 ("Claimants may establish an alternative location of economic loss for the Claiming Job other than their employer's location by providing evidence that their primary activities and responsibilities occur in a location different from their employer's business address").  With no temporal element prescribed by the Settlement Agreement for the Zone determination, it provides no guidance on how the Claims Administrator is to assign a Zone to an entity that has changed its physical location at any time after 4/20/10 or to an individual whose work area changed at after that date.  After reviewing the Settlement Agreement and the responses of the Parties to a request for their positions on this issue, the Claims Administrator has adopted these rules of decision to address this issue:

(a)  The Claims Administrator will assign an entity the Zone in which the claimant was located at any time during the Compensation Period applicable to the claimant that is most favorable to the claimant.

(b)  The Claims Administrator will assign an individual the Zone in which the claimant's primary activities and responsibilities occurred at any time during the Compensation Period applicable to the claimant that is most favorable to the claimant.

(c)  Because the Class Period defined in Section 38.28 of the Settlement Agreement extends through 4/16/12, which is beyond the Compensation Period of any claimant, certain claimants are Class Members but had no physical location in any Zone or did not work in any Zone during the claimant's Compensation Period.  The Claims Administrator will assign Zone D to such claimants.

5.     *Economic Loss Claims:  Application of the Policy Preventing Double Payment for the Same Loss to and Entity and the Owner or Officer of that Entity.*  The Claims Administrator previously adopted and announced to the Parties a Double Payment policy that prohibits payment of Economic Losses to both the business entity and the individual Owners and Officers of that entity for the same loss.  Normally, if the business has filed a BEL claim and any Owner or Officer of the business has filed any IEL claims, and the Claims Administrator has

3

identified the connection among the claims before any claimant is awarded a payment, the Claims Administrator will compensate the business entity for the loss and will deny the claims of the Owners and Offers pursuant to the Double Payment Policy. If, however, an Owner or Officer of a business is paid on an IEL claim for lost income or was paid by the Gulf Coast Claims Facility on a Lost Earnings or Profits claim before the Claims Administrator assesses the BEL claim of the business of that Owner or Officer, to avoid double recovery for the same loss, the amount paid to the Owner or Officer on the IEL claim or by the GCCG shall be offset from the award amount, if any, of the entity's BEL claim.

6.  ***Individual Economic Loss Claims: End Date for Reimbursable Search Costs.*** To implement Section R of Exhibit 8A of the Settlement Agreement, which provides for compensation for "[d]ocumented travel and job search costs actually incurred after April 20, 2010 in searching for alternative employment due to job loss or work reduction after the DWH Spill," the Claims Administrator will consider as potentially compensable Reimbursable Search Costs incurred by an IEL claimant during the period commencing on or after April 21, 2010, through the earlier of (a) the claimant's procurement of full-time employment or (b) December 31, 2011.

7.  ***Economic Loss Zones: Definition of Zone A-28 – The Florida Keys.*** Economic Loss Zones are defined by the Economic Loss Zone maps in Exhibit 1A, read in conjunction with the textual Geographical Definitions in Exhibit 1B. In the case of Zone A-28, representing the Florida Keys, the language of Exhibit 1B appears to conflict with the map drawn in Exhibit 1A. Exhibit 1B, page 8 describes Zone A-28: "A-28: *Florida Keys:* This zone consists of the entirety of the series of islands off the south coast of Florida stretching from Key West in the south/west to Key Largo in the north/east." On the map in Exhibit 1A, page 15, Zone A extends from the Southwestern most point in Key West to the municipality of Key Largo, but does not include all of Key Largo Island. The northern remainder of that Island is in Zone D on the map. According to the Interactive Mapping Tool furnished by the Parties, Zone A ends midway through Key Largo Island. The border is a straight line perpendicular to FL-905, beginning approximately at coordinates N 25.2118 W -80.3401. There is no geographical, roadway, or legal boundary at this location that would explain placing a boundary between Zones in this area. There is no language in Exhibit 1B that supports this boundary. After reviewing the issue with the Parties, the Claims Administrator has determined that the textual description in Exhibit 1B controls over the map in Exhibit 1A and the Interactive Mapping Tool and the Claims Administrator will consider all of Key Largo, including northernmost portion, as included in Zone A.

8.  ***Individual Economic Loss Claims: Acceptable Substitutes for Sworn Written Statement-12.*** Exhibit 8A to the Settlement Agreement requires that Category I, II, and III claimants who do not receive a presumption of causation must provide an Employer Sworn Written Statement attributing the claimant's loss of income during the Compensation Period to the DWH Spill. The Employer Sworn Written Statement must articulate in detail how the claimant's losses at the Claiming Job are causally related to the DWH Spill. Such Employer Sworn Written Statement must also include contact information for an authorized representative of the employer. The Claims Administrator created a form for claimants to use to meet this requirement, known as the SWS-12. The Claims Administrator is required to evaluate the

418061

credibility and reliability of the information provided by the employer and the claimant, including any Sworn Written Statements, and has the right to request supplemental documentation and/or to interview the employer in accordance with the Addendum Regarding Interviews of Claimants Alleging Economic Loss.  The Claims Administrator has encountered three scenarios in which claimants are unable to obtain an SWS-12 or an equivalent sworn statement from the claimant's employer:

(a) The Employer Refuses to Sign: The claimant's employer is still in business but refuses to sign the SWS-12 or any sworn statement.

(b) The Employer is Deceased:  The employer is deceased and the claimant cannot locate any authorized business representative to sign an SWS-12.

(c) The Employer Has Dissolved and No Longer Exists:  The employer is no longer in business and the claimant cannot locate any authorized business representative to sign an SWS-12.

In these situations, without any acceptable substitute, these claimants will not be eligible for any IEL award.  After reviewing the provisions of the Settlement Agreement, the purpose of this SWS-12 requirement and the practicalities of administering this requirement to actual claimant situations, the Claims Administrator has adopted these processing policies:

(a) A claimant must first attempt to procure an employer-provided SWS-12.

(b) If the claimant cannot submit an SWS-12 or adequate sworn written statement from the employer because of one of the three circumstances described above, the claimant must submit a letter with his or her claim explaining the claimant's inability to submit an SWS-12.

(c) The Claims Administrator then will take the actions described in this table:

| | Scenario | Action |
|---|---|---|
| 1. | **Employer Refuses to Sign** | 1. Call the claimant's employer and explain the statement and its purposes.  Determine if the employer will sign the SWS-12 if the employer feels that the claimant's loss of work was because of the Spill.<br>2. If the employer refuses to sign because the employer does not believe the claimant's losses are related to the Spill, deny the claim.<br>3. If the employer refuses to sign the statement for a reason unrelated to the claimant (*e.g.*, the employer believes signing the statement will negatively affect its business or reputation), require the claimant to submit a Claimant SWS Look for other proof in the file and where the Claims Administrator  determines it is needed, require a Third Party SWS as well. |

5

DEEP WATER HORIZON
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| | Scenario | Action |
|---|---|---|
| 2. | **Employer is Deceased** | 1. If the claimant submitted an employer letter in the GCCF attesting that the claimant's losses are related to the Spill, use that letter and require the claimant to submit a Claimant SWS.  Look for other proof in the file and where the Claims Administrator determines it is needed, require a Third Party SWS as well.<br>2. If the claimant has not submitted an employer letter in the GCCF attesting that the claimant's losses are related to the Spill, require the claimant to submit a Claimant SWS.  Look for other proof in the file and where the Claims Administrator determines it is needed, require a Third Party SWS as well. |
| 3. | **Employer is Dissolved** | 1. Conduct searches to confirm that the business once existed but is no longer in operation.<br>2. If the claimant submitted an employer letter in the GCCF attesting that the claimant's losses are related to the Spill, use that letter and require the claimant to submit a Claimant SWS.  Look for other proof in the file and where the Claims Administrator determines it us needed, require a Third Party SWS as well.<br>3. If the claimant has not submitted an employer letter in the GCCF attesting that the claimant's losses are related to the Spill, require the claimant to submit a Claimant SWS.  Look for other proof in the file and where the Claims Administrator determines it is needed, require a Third Party SWS as well. |

The Claimant SWS and Third Party SWS Forms are attached to this memo.

　　9.　　*Seafood Compensation Program:  Documentation Requirements for Oyster Leaseholder Claims*.  The Settlement Agreement provides that a claimant filing an Oyster Leaseholder claim must submit these documents to participate in the Oyster Compensation Plan:

　　　　Valid oyster lease entered into by Claimant that establishes, as of April 20, 2010, the Claimant as the lessee of the oyster leasehold, or a copy of the actual title for the leasehold.  Claimants are required to provide documentation that their leasehold interest is in good standing, such as proof of renewal.

(Ex. 10 at 26.)  The Claims Administrator has encountered certain claimants who have not submitted a copy of the original Leasehold Document and instead proffered alternative evidence of Oyster Leasehold Ownership.  These claimants argue that they should not have to submit official copies of the lease or the title for the leasehold and that LDWF Oyster Bedding Ground Rental Receipts should suffice.  The LDWF issues those receipts to confirm that the owner of the

lease paid the required annual lease fees. While these receipts do contain some of the same data points needed to perform the review required by Ex. 10 to the Settlement Agreement, they are not a reliable substitute for the documentation required by the Settlement Agreement. For example, in at least one claimant's file, payment receipts were incorrectly issued in the name of a former owner instead of the name of the current owner. Because the Settlement Agreement expressly requires claimants to submit a copy of the oyster lease or title and the Bedding Ground Rental Receipts are not a reliable substitute, the Claims Administrator will not accept rental receipts or other unsatisfactory supporting documentation in lieu of copies of the lease or title for the leasehold.

10.     *Seafood Compensation Program: Benchmark Revenue Treatment of Unreported Cash Sales of Seafood in Louisiana.* All Louisiana Wholesale/Retail Dealers and Fresh Products Licensees must participate in the Trip Ticket Program and report all Seafood landings to the LDWF. If a Louisiana commercial fisherman sells landings in cash to individuals, that fisherman must report the cash transaction to the LDWF Trip Ticket Program. However, certain claimants have indicated that, in practice, cash sales are seldom reported to the LDWF and generally are poorly documented. These claimants have requested that the Claims Administrator accept handwritten receipts from unreported cash sales made in Louisiana as proof of additional Benchmark Revenue. Ex. 10 to the Settlement Agreement requires Vessel Owner claimants to submit either (1) Trip Tickets or their equivalents or (2) federal or state tax information and other sufficient documentation as evidence of their Benchmark Revenue. (Ex. 10 at 19.) Because handwritten receipts from cash sales do not include vessel information or commercial fishing license numbers, they are not equivalent to trip tickets. Further, these receipts represent revenue not reported either to Louisiana when the sale was made or to the Federal government on the claimant's tax returns. Accordingly, the Claims Administrator will not accept such documentation to prove Benchmark Revenue.

11.     *Seafood Compensation Program: Determination of Vessel Length.* Both the VoO Program and the Seafood Compensation Program rely on a vessel's length to determine the amount of a claimant's award. The VoO Program uses the greater of the vessel length recorded in the Master Vessel Charter Agreement (MVCA) or the vessel length in the government registration to establish the vessel length for the purposes of the compensation calculation. This policy, which the Claims Administrator decided after soliciting input from the parties, gives claimants the benefit of the longer measurement between two source documents common to all VoO claims. The Seafood Compensation Program does not have a similar controlling database of all vessel lengths. For proof of the vessel length in the Seafood Compensation Program, the Settlement Agreement states that "the Claimant must provide documentation to establish the vessel size and type for each vessel for which the Claimant seeks Compensation." (Exhibit 10 at 11.) The Settlement Agreement does not specify the type of documents that can be used to establish a vessel length. Some claimants have submitted conflicting information about the lengths of their vessels, where the length listed in their vessel registration documents conflicts with the corresponding figure in the MVCA database used on VoO claims. BP compiled the MVCA database during the VoO program using lengths reported by claimants. Claimants with a higher vessel length in the MVCA database than is listed on the official registration for the vessel have asked that the Claims Administrator compensate them in the Seafood Compensation Program on the basis of the greater vessel length. Vessel length significantly affects the amount

7

418061

of the claimant's award in the Shrimp portion of the Seafood Compensation Program, and increasing one claimant's award reduces the value of all other claims to be compensated by the limited Seafood Compensation Fund. The Claims Administrator has determined that the claimant-reported specifications in the MVCA database are less reliable than the official vessel length data provided on the State and Federal registration documents. Accordingly, the Claims Administrator will base the vessel size determination for purposes of the Seafood Compensation Program on the more consistent and reliable information in the state and federal vessel registration documentation, rather than vessel lengths in the MVCA database.

12. ***Seafood Compensation Program: Oyster Vessel Owner and Oyster Boat Captain Compensation Calculations.*** Exhibit 10 to the Settlement Agreement contains an inconsistency in its description of compensation to certain combined Oyster Harvester/Leaseholders. Section 3.3 of Exhibit 10 describes the calculations for Oyster claimants who are the Sole Boat Captain of the vessel that is the subject of the claim. Exhibit 10 also contains a document called "Oyster Compensation Plan - Exhibit 2" which includes an example of an Oyster Boat Captain calculation (the "Example Calculation"). The language of Section 3.3 and the Example Calculation differ in how they treat the Leaseholder Payment Cost, a component of the compensation calculation. Though the same factors should apply in both places, the values differ by 10%, and the calculation in Section 3.3 results in a more favorable outcome for the claimant. As text generally controls over numerical characters in the law, and as express language in the Settlement Agreement sets forth the required compensation methodology, the Claims Administrator has determined that the written text of Section 3.3 controls, rather than the Example Calculation.

13. ***Seafood Compensation Program: GCR Oyster Leasehold Database.*** On May 25, 2012, GCR provided the Claims Administrator with an Oyster Leasehold database containing the names of 2010 leaseholders, the lease numbers, the quad locations, the current acreage of the leases, and the percentage of each lease in the three Oyster Leaseholder Compensation Zones. The database also incorporated the compensation calculations for each leasehold based on the acreage located in its respective Oyster Leasehold Compensation Zone in accordance with Exhibit 10, pg. 28, Section 1.3. On June 29, 2012, GCR provided an updated Oyster database to replace the first one. During the course of reviews, the Claims Administrator has discovered gaps in the updated database requiring the actions described below for (a) inactive leases or leaseholds outside of Louisiana and (b) leaseholds re-surveyed and re-plotted after 2010:

(a) **Leaseholds located outside of Louisiana or leases no longer active in 2012:** The updated database cannot accommodate two scenarios affecting a small number of claims: (1) where the claimed lease is located outside of Louisiana, as the updated database only covers Louisiana leases; and (2) where the claimed leasehold interest has changed from its 2010 active designation, as the updated database shows leases active in 2012, not 2010. In these instances, the Claims Administrator will provide GCR the data points required by GCR to update the database. GCR will perform a spatial analysis of the claimed lease and return the results to the Claims Administrator. The Claims Administrator will rely on that determination in processing the affected claim.

(b) **Re-surveyed and re-plotted leaseholds:** The Claims Administrator uses the GCR Oyster Leasehold Database to confirm the geographic zone and compensation

418061

calculations for Oyster Leasehold Lost Interest claims.  The GCR database is based on the most current surveys performed by the state of Louisiana that run through 2012.  The Settlement Agreement requires Oyster Leaseholder claimants to provide a "valid oyster lease entered into by Claimant that establishes, *as of April 20, 2010*, the Claimant as the lessee of the oyster leasehold, or a copy of the actual title for the leasehold."  (Ex. 10 at 26; emphasis added.)  For the majority of the leases eligible under the Oyster Leaseholder Lost Interest compensation plan, the acreage of the lease is the same in both 2010 and 2012.  If the leasehold interest owned at the time of the Spill has been re-surveyed since that time, the Claims Administrator will not rely on the GCR database but instead will perform an independent calculation of the claim using the information in the title or other oyster leasehold documentation to determine the status as of 4/20/10.

14.     *Seafood Compensation Program:  Protocol for Reclassifying Claims*.  The Seafood Compensation Program consists of twenty-two distinct claim types across five catch types and four operator types.  Certain claimants have filed claims incorrectly under the wrong claim type.  The Claims Administrator has adopted these policies to address these situations:

(a)     **Reclassifying Claims Automatically:** The most common claim type filing error occurs when a claimant selects the incorrect Species Type during the claim filing process, such as where a claimant identifies Finfish landings as Other Seafood landings.  Where the trip tickets associated with the claim show landings of a species type different from the species type indicated on the Claim Form, the Claims Administrator automatically will reclassify that claim under the correct species type for the claimant and process the reclassified claim to a notice.

(b)     **Requiring Claimants to File the Correct Claim Form:**  Occasionally, claimants submit their claims under the wrong operator type, such as a Boat Captain who filed as a Vessel Owner.  The Claim Form contains sworn statements, vessel data, and other required claim information that support the compensation calculation for a specific operator type, and that information must appear in a properly completed Claim Form.  Without these data points, the Claims Administrator cannot process the claim as required by Ex. 10.  To obtain the information required to identify and process the claim, the Claims Administrator will assist the claimant in submitting a new Claim Form to correct the error.  For purposes of the Bar Date for submitting claims in the Seafood Compensation Program, the filing date of this correct Claim Form will relate back to the date of filing of the incorrect Claim Form that it replaces,.

15.     *Seafood Compensation Program:  Acknowledgement of Oral Oyster Harvesting Agreements*.  In his 10/10/12 Announcement of Policy Decisions Regarding Claims Administration, the Claims Administrator addressed Section 2.2.B of the Oyster Leaseholder Compensation Plan in Exhibit 10 of the Settlement Agreement, which requires that, in addition to tax returns, financial statements, or business documents, an Oyster Leaseholder Lost Income Compensation claimant must provide "[c]ontracts or agreements between the Oyster Leaseholder and another natural person or entity that harvests oysters from their leaseholds located in Zones A, B or C, as reflected on the Oyster Leasehold Compensation Zone Map."  Certain Oyster Leaseholder Lost Income claimants had informed the Claims Administrator that, while they had oral agreements with oyster harvesters to harvest oysters off of the claimant's oyster leases, they had no written agreements and thus had no documents to submit in response to this requirement.  Accordingly, the

418061

**DEEPWATER HORIZON**

CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

Claims Administrator permits such claimants to satisfy the "[c]ontracts or agreements" requirement by submitting a writing prepared at any time that describes the terms of the oral agreement and that is signed by the claimant and the oyster harvester that is a party to the oral agreement. Some claimants have struggled with the form of writing sufficient to satisfy this requirement. To facilitate the completion of such claims, the Claims Administrator created an Acknowledgement of Verbal Oyster Harvesting Agreement Form (attached to this memo) to be used by Oyster Leaseholder Lost Income claimants and Combined Oyster Harvester/Leaseholder claimants who never memorialized in writing their oyster harvesting agreements to acknowledge retroactively the controlling terms of their verbal oyster harvesting agreements that existed during their Benchmark Period.

16.     ***Seafood Compensation Program:  Determination of Vessel Classification***. The value of many Seafood Compensation Claims depends on the classification of the qualifying vessel as either an ice or freezer boat. Exhibit 10 states that "the Claimant must provide documentation sufficient to establish the vessel size and type for each vessel for which the claimant seeks compensation." Exhibit 10 pg. 11 Section B.1.(c.). The Claims Administrator uses the documentation provided by the claimant to classify the vessel as an ice or freezer boat and perform the appropriate compensation calculations. The Claims Administrator has encountered a few instances where a qualifying vessel has changed classification during the Benchmark Period because the owner of an ice boat installed a freezer. In evaluating this subset of claims where the proffered documentation supports either vessel classification, the Claims Administrator will classify the vessel in the manner that will lead to the higher compensation calculation for the claimant.

418061

| SWS-12A | Individual Economic Loss Claimant Sworn Statement on Causation |
|---------|---------------------------------------------------------------|

You are unable to meet the causation requirements under Exhibit 8A of the Individual Economic Loss framework in Exhibit 8A of the Settlement Agreement because you do not qualify for a causation presumption under the Settlement Agreement and:

    (1) Your employer refuses to complete and sign an SWS-12.

    (2) Your employer is deceased and you cannot find an Authorized Business Representative to complete and sign an SWS-12.

    (3) Your employer has dissolved or discontinued operations and you cannot find an Authorized Business Representative to complete and sign an SWS-12.

If you are in one of these situations, complete this Form attesting that your losses are related to the Spill and sign and return it to the Claims Administrator using one of the methods described at the end of this Form.  If you are not in one of these situations, do not submit this Form. Instead, you must submit a completed SWS-12 signed by your employer.

## A. CLAIMANT INFORMATION

| | | | |
|---|---|---|---|
| **Name:** | Last | First | Middle Initial |

| | |
|---|---|
| **Deepwater Horizon Settlement Program Claimant Number:** | \|__\|__\|__\|__\|__\|__\|__\|__\|__\| |

| | |
|---|---|
| **Social Security Number:**<br><br>*or*<br><br>**Individual Taxpayer Identification Number:** | \|__\|__\|__\| - \|__\|__\| - \|__\|__\|__\|__\| |

| | |
|---|---|
| **Current Address:** | Street<br><br>City      State      Zip Code |

## B. EMPLOYER INFORMATION

| | |
|---|---|
| **Name of Business:** | |

| | |
|---|---|
| **Address:** | Street<br><br>City      State      Zip Code |

| | |
|---|---|
| **Phone Number:** | ( \|__\|__\| ) \|__\|__\|__\| - \|__\|__\|__\|__\| |

| | |
|---|---|
| **Website (*if available*):** | |

| | | |
|---|---|---|
| **Claimant's Start Date of Employment:** | ___/___/_____ | **Claimant's End Date of Employment:**     ___/___/_____ |

| | |
|---|---|
| **Social Security Number:**<br><br>*or*<br><br>**Individual Taxpayer Identification Number:**<br><br>*or*<br><br>**Employer Identification Number:** | SSN or ITIN<br>\|__\|__\|__\| - \|__\|__\| - \|__\|__\|__\|__\|<br><br>EIN<br>\|__\|__\| - \|__\|__\|__\|__\|__\|__\| |

| Authorized Business Representative or Supervisior's Name when Employed at Business | Last | First | Middle Initial |
|---|---|---|---|
| | | | |

## C. EXPLANATION OF WHY MY LOSSES ARE RELATED TO THE SPILL

| Explain how your losses from April 21, 2010 to December 31, 2010 (or April 21, 2010 to April 30, 2011 if employed in the Primary Seafood Industry) were the result of the Spill. Attach additional sheets to this Form if necessary. | |
|---|---|

## D. HOW TO RESPOND WITH THIS INFORMATION

Submit this Form online by uploading it to your DWH Portal.  If you do not use the DWH Portal, you may submit this Form in any of the following ways, but be sure to write your Claimant ID on the top page of all documents you submit.

| **By Mail:** (Postmarked no later than your Response deadline) | Deepwater Horizon Economic Claims Center PO Box 1439 Hammond, LA 70404-1439 |
|---|---|
| **By Overnight, Certified or Registered Mail or Overnight Delivery:** (If mail, postmarked no later than your Response deadline; if other overnight delivery, placed in the custody of an overnight carrier by your Response Deadline) | Deepwater Horizon Economic Claims Center Claims Administrator 42548 Happy Woods Road Hammond, LA 70403 |
| **By Facsimile:** (Sent no later than 12:00 midnight local time on your Response deadline) | (888) 524-1583 |
| **By Email:** (Sent no later than 12:00 midnight local time on your Response deadline) | ClaimForms@deepwaterhorizoneconomicsettlement.com |
| **Visit a Claimant Assistance Center:** (Delivered no later than your Response deadline) | You may take the required information or documents to a Claimant Assistance Center. |

## E. SIGNATURE

I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that all the information I have provided in this Statement (and in any pages I have attached to or submitted with this Statement to provide additional information requested in this Statement) is true and accurate to the best of my knowledge, and that supporting documents attached to or submitted with this Statement and the information contained therein are true, accurate, and complete to the best of my knowledge, and I understand that false statements or claims made in connection with this Statement may result in fines, imprisonment, and/or any other remedy available by law to the Federal Government, and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution.

| **Date Signed:** | ___/___/___ (Month/Day/Year) | _____ Claimant Signature _____ Name (Printed or Typed) |
|---|---|---|

| SWS-12B | Individual Economic Loss Third Party Sworn Statement on Causation |
|---------|-------------------------------------------------------------------|

You are unable to meet the causation requirements under Exhibit 8A of the Individual Economic Loss framework in Exhibit 8A of the Settlement Agreement because you do not qualify for a causation presumption under the Settlement Agreement and:

(1) Your employer refuses to complete and sign an SWS-12.

(2) Your employer is deceased and you cannot find an Authorized Business Representative to complete and sign an SWS-12.

(3) Your employer has dissolved or discontinued operations and you cannot find an Authorized Business Representative to complete and sign an SWS-12.

If you are in one of these situations, give this Form to a co-worker or someone else who is familiar with how the Spill caused your losses and who is not a relative to complete and sign attesting that your losses are related to the Spill. Return it to the Claims Administrator using one of the methods described at the end of this Form.  If you are not in one of these situations, do not submit this Form. Instead, you must submit a completed SWS-12 signed by your employer.

## A. CLAIMANT INFORMATION

**Name:** Last / First / Middle Initial

**Deepwater Horizon Settlement Program Claimant Number:** | | | | | | | | | | | |

**Social Security Number:**

*or*

**Individual Taxpayer Identification Number:** | | | | | - | | | | - | | | | | |

**Current Address:** Street / City / State / Zip Code

## B. EMPLOYER INFORMATION

**Name of Business:**

**Address:** Street / City / State / Zip Code

**Phone Number:** ( | | | ) | | | | - | | | | |

**Website (*if available*):**

**Claimant's Start Date of Employment:** ___/___/_____

**Claimant's End Date of Employment:** ___/___/_____

**Social Security Number:**

*or*

**Individual Taxpayer Identification Number:**

*or*

**Employer Identification Number:**

SSN or ITIN: | | | | | - | | | | - | | | | | |

EIN: | | | | | - | | | | | | | | |

| Authorized Business Representative or Supervisor's Name when Employed at Business | Last | First | Middle Initial |
|---|---|---|---|
| | | | |

## C. THIRD PARTY INFORMATION

| | Last | First | Middle Initial |
|---|---|---|---|
| **Name:** | | | |

**Social Security Number:**

*or*

**Individual Taxpayer Identification Number:**

| \_ | \_ | \_ | \_ | - | \_ | \_ | - | \_ | \_ | \_ | \_ |

| **Current Address:** | Street |  |  |
|---|---|---|---|
| | City | State | Zip Code |

| **Phone Number:** | ( \_ \_ \_ ) \_ \_ \_ - \_ \_ \_ \_ |
|---|---|

## D. EXPLANATION OF HOW YOU KNOW THE CLAIMANT

| Explain how you know the claimant and how long you have known the claimant. Attach additional sheets to this Form if necessary. | |
|---|---|

## E. EXPLANATION OF WHY CLAIMANT'S LOSSES ARE RELATED TO THE SPILL

| Explain how the claimant's losses from April 21, 2010 to December 31, 2010 (or April 21, 2010 to April 30, 2011 if employed in the Primary Seafood Industry) were the result of the Spill. Attach additional sheets to this Form if necessary. | |
|---|---|

## F. HOW TO RESPOND WITH THIS INFORMATION

Submit this Form online by uploading it to your DWH Portal.  If you do not use the DWH Portal, you may submit this Form in any of the following ways, but be sure to write your Claimant ID on the top page of all documents you submit.

| **By Mail:**<br>(Postmarked no later than your Response deadline) | Deepwater Horizon Economic Claims Center<br>PO Box 1439<br>Hammond, LA 70404-1439 |
|---|---|
| **By Overnight, Certified or Registered Mail or Overnight Delivery:**<br>(If mail, postmarked no later than your Response deadline; if other overnight delivery, placed in the custody of an overnight carrier by your Response Deadline) | Deepwater Horizon Economic Claims Center<br>Claims Administrator<br>42548 Happy Woods Road<br>Hammond, LA 70403 |
| **By Facsimile:**<br>(Sent no later than 12:00 midnight local time on your Response deadline) | (888) 524-1583 |

Third Party Causation SWS

| **By Email:**<br>(Sent no later than 12:00 midnight local time on your Response deadline) | ClaimForms@deepwaterhorizoneconomicsettlement.com |
|---|---|
| **Visit a Claimant Assistance Center:**<br>(Delivered no later than your Response deadline) | You may take the required information or documents to a Claimant Assistance Center. |

| **G. SIGNATURE** |
|---|

I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that all the information I have provided in this Statement (and in any pages I have attached to or submitted with this Statement to provide additional information requested in this Statement) is true and accurate to the best of my knowledge, and that supporting documents attached to or submitted with this Statement and the information contained therein are true, accurate, and complete to the best of my knowledge, and I understand that false statements or claims made in connection with this Statement may result in fines, imprisonment, and/or any other remedy available by law to the Federal Government, and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution.

**Date Signed:**

_____ / _____ / _____
(Month/Day/Year)

_____
Third Party Signature

_____
Name (Printed or Typed)

| GEN-6 | Acknowledgement of Oral Oyster Harvesting Agreement |
|---|---|

This form ("Acknowledgement") allows Oyster Leaseholder Lost Income and Oyster Combined Harvester/Leaseholder claimants who never memorialized in writing their agreements with persons or entities that harvested oysters from their leaseholds to acknowledge retroactively the controlling terms of their oral oyster harvesting agreements that existed during their Benchmark Period.  If you need more space to complete this Acknowledgement, attach additional pages, and they will be incorporated into this document. Note that **BOTH the harvester AND the leaseholder must sign this Acknowledgement** in order for the Claims Administrator to accept this document as a sufficient substitute for an original, written agreement.

## A. Claimant Information

| Name: | Last | First | Middle Initial |
|---|---|---|---|
| | | | |

**Deepwater Horizon Settlement Program Claimant Number:** |_|_|_|_|_|_|_|_|_|_|_|

| Social Security Number:<br>or<br>Individual Taxpayer Identification Number:<br>or<br>Employer Identification Number: | |_|_|_| - |_|_| - |_|_|_|_|<br><br>|_|_|-|_|_|_|_|_|_|_| |
|---|---|

## B. Oyster Harvesting Agreement Information & Terms

### 1. Parties and Dates

| Harvester Name: | Last | First | Middle Initial |
|---|---|---|---|
| | | | |
| Leaseholder Name: | Last | First | Middle Initial |
| | | | |

| Contract Period: | 2007 | _____/_____/_____ to _____/_____/_____<br>(Start date)              (End Date) |
|---|---|---|
| | 2008 | _____/_____/_____ to _____/_____/_____<br>(Start date)              (End Date) |
| | 2009 | _____/_____/_____ to _____/_____/_____<br>(Start date)              (End Date) |

1

| 2. Payment Information | | |
|---|---|---|
| Provide below (1) the total amount paid by the harvester to the leaseholder during the applicable agreement year(s) and (2) the terms of the agreement leading to or otherwise controlling the amounts paid by the harvester to the leaseholder. | | |
| **Total Amount of Payment:** | **2007** | |
| | **2008** | |
| | **2009** | |
| **Terms of Agreement:** | | |

| 3. Oyster Lease Information | | |
|---|---|---|
| **Oyster Lease State** | **Lease Number** | **Leasehold Name** |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

2

## C. Signature

I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that all the information I have provided in this Acknowledgement (and in any pages I have attached to or submitted with this Acknowledgement to provide additional information requested in this Acknowledgement) is true and accurate to the best of my knowledge, and that supporting documents attached to or submitted with this Acknowledgement and the information contained therein are true, accurate, and complete to the best of my knowledge, and I understand that false statements or claims made in connection with this Acknowledgement may result in fines, imprisonment, and/or any other remedy available by law to the Federal Government, and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution.

| | | |
|---|---|---|
| **Harvester Signature**<br><br>**Date Signed:** | _____/_____/_____<br>**(Month/Day/Year)** | _____<br>**Signature**<br>_____<br>**Name (Printed or Typed)** |
| **Leaseholder Signature**<br><br>**Date Signed:** | _____/_____/_____<br>**(Month/Day/Year)** | _____<br>**Signature**<br>_____<br>**Name (Printed or Typed)** |

3