# MEMORANDUM

**To:** Patrick A. Juneau, Esq.
  Claims Administrator

**From:** Class Counsel

**Matter:** <u>In re: Deepwater Horizon</u>
   MDL No. 2179

**Re:** Implementation and Application of the "Claimant-Friendly" Provisions

**Date:** September 17, 2012

The cornerstone of this Settlement and its Program is to be claimant friendly.

This includes a substantive component, which is memorialized in Section 4.3.8.

But the perhaps more important component is the procedural component, which is memorialized in Section 4.3.7, and requires the Vendors to:

> work with Economic Class Members (including individual Economic Class Members' counsel and Class Counsel) to facilitate Economic Class Members' assembly and submission of Claims Forms, including all supporting documentation necessary to process Claim Forms under the applicable Claims Processes.

Further:

> The Settlement Program, including the Claims Administrator and Claims Administration Vendors, shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement.

This is *not* merely aspirational.  The word used repeatedly is "shall".  It is clear and unambiguous, to be implemented faithfully by the Claims Administrator pursuant to Section 4.3.1 ("...for the benefit of the Economic Class...").

This obligation under Section 4.3.7 is *not* satisfied by the separate opportunity for a claimant to seek Reconsideration.

Indeed, these two provisions and procedures are completely separate and distinct.

Section 4.3.7 appears in Section 4, the Claims Processing Section. Reconsideration, by contrast, appears in Section 6, the *Appeal* Section.

All of the Program's efforts to work with Economic Class Members to facilitate the assembly and submission of Claims Forms and all supporting documentation, and to provide claimants with assistance, information, opportunities and notice so that they have the best opportunity to be determined eligible for and receive the settlement payments to which they are entitled happens ***before*** there is a denial, determination and/or opportunity to seek Reconsideration and/or Appeal.

This is the way it was negotiated.

Sections 4.3.7 and 4.3.8 were negotiated first.

Then the general aspects of the Appeal process were negotiated.

Reconsideration, under Section 6.1.2.1.1, was added towards the end, *not* to supplement the Claims Process, but to *prevent* unnecessary Appeals.

The intent was to try to catch clear errors or mistakes in a Determination, (*i.e.* a "calculation error" or failure to take into account relevant information, or other failure to follow the standards governing the determination), that could potentially be corrected quickly and efficiently without having to go to a formal Appeal Panelist or Panel.

Section 6.1 was also added at this stage of the negotiations – *i.e.* after Section 4.3.7 setting forth the responsibilities of the Vendors during the Claims Process. It provides that:

> Subject to and in accordance with Sections 4.3.7 and 4.3.8, Economic Class Members will have up to three opportunities, depending on their circumstances, to have their Claims reconsidered and reviewed to assure accuracy, transparency, independence, and adherence by the Settlement Program to the terms of this Agreement.

This Section was primarily intended to deal with *Denials* (not Determinations). And the reason why a claimant was given "up to" three opportunities "depending on the circumstances" was due to a recognition that, under some circumstances, there would be no way for a claimant to qualify, (*e.g.* did not satisfy the geographical requirements, or was clearly a casino, or settled in the GCCF), and additional attempts would be futile.

*Nevertheless,* each of these opportunities were always intended to be "subject to and in accordance with Sections 4.3.7 and 4.3.8."

With respect to ***each*** of the "up to three" opportunities, the Program would work with the claimant to facilitate the assembly and submission of Claims Forms and all supporting documentation, and to provide claimants with assistance, information, *opportunities* and notice

so that they have the best opportunity to be determined eligible for and receive the settlement payments to which they are entitled, **_before_**  a final determination, subject to Reconsideration and/or Appeal.


### The Requirement to Provide the Claimant with the Precise Information and/or Analyses Relied on by the Program in Making its Denial and/or Determination

It was always understood as part of the negotiations and agreement with BP that the Program would be completely "transparent" in that the claimant would know exactly how the Program processed, evaluated, calculated, determined or denied the claim.

One of the main complaints about the GCCF, (whether fair or unfair), was that you would get a denial or a determination and you would have no idea what it was based upon.

It was always understood and agreed that this Settlement Program would not be like that. The Program would "show their math" and the Claimant would get a "spreadsheet" that explained the precise calculation.

This was central to the way that the Settlement was presented to the Court, the public and the Class.

Specifically, it is incorporated in Section 4.3.7 of the Agreement, which requires the Vendors to provide "*assistance, information, opportunities and notice*" to achieve eligibility and the optimal level of compensation.

Further, Section 6.1.2.1.1 expressly provides that: "The Settlement Program shall provide access to the Claimant ... of all forms, calculations and worksheets relied upon by the Settlement Program in reaching the final determination."


### Previous Communications on the Subject

Class Counsel has raised this issue with the Program on several occasions.

For example, in an e-mail dialogue between Class Counsel and the Program on July 19, 2012, Class Counsel expressed the following:

> *Re: No. 32*
>
> Dear Christine,
>
> I understand that there are some mechanical / logistical issues, which we leave to your discretion.
>
> But, between the Determination Notice itself and/or the immediate access to the forms, calculations and worksheets as provided by Section 6.1.2.1.1, the Claimant has to be clearly directed to, and provided with, how the Program characterized fixed/variable costs, any exclusions

of extraordinary items, which items constitute revenues, etc.

This transparency factor was an essential element to the Agreement, and has been touted by Class Counsel (and/or others) to the Court, and at every seminar or other presentation.

We appreciate your time, consideration and assistance in this regard.

Thanks.
_____
From: Christine Reitano

Once a claimant moves to Reconsideration, the claimant will see a a PDF of the accountant worksheets that contain all claimant specific data/calculations.

Thanks

Christine
_____
From: Steve Herman

Thanks Christine.  I apologize to the extent I might be missing something in the process. Hopefully we are on the same page. But **I am really just trying to ensure that there is a process for (lower-case) "reconsideration", including opportunity for supplementation of documentation, before the Claimant is forced to engage in a formal Reconsideration / Appeal process that puts the Claimant on an irrevocable road to finality.** And, at the same time, that the Claimant has the opportunity and ability to see how the claim was processed / evaluated / determined by the Program *before* such a formal Reconsideration / Appeal, so that he or she can decide whether to seek formal Reconsideration / Appeal, and to better articulate the basis for the challenge to the determination.

Thanks.
_____
From: Christine Reitano

Yes, there is an initial process, Reconsideration, which includes the opportunity for supplementation of documentation before the claimant engages in a formal and final Appeal process.  Claimants will have access to accounting data once they've moved for Reconsideration.

Christine
_____
From: Steve Herman

Maybe it's the nature of e-mail communication, but I think we might be talking past each other.

My fear is that the process, right now, (putting "insufficiency" aside), is, essentially: a Determination; which the claimant can either accept or seek Reconsideration; which the claimant (or BP) can then Appeal;   and then the process ends.

If the current process is more flexible than that, great. I apologize for all of the back-and-forth.

But **if that is the current process, then that is not what was negotiated, and disregards, in particular, Section 4.3.7** and Section 6.1.

**The Program is supposed to affirmatively work with and otherwise allow "reconsideration" as generally (and flexibly) provided by 4.3.7.**

>**Section 6.1 expressly gives the Claimant up to (at least) three chances, (which I believe is further "subject to" additional informal opportunities to supplement and seek informal "reconsideration" under 4.3.7).**
>
>**In any event, the Claimant must be provided with the "forms, calculations and worksheets relied upon"** *before* **the Claimant is required by the Program to seek (formal) Reconsideration under Section 6.1.2.1.1, so that the Claimant can provide "the grounds that the Settlement Program committed a calculation error, failed to take into account relevant information or data or otherwise failed to follow the standards governing the determination" in the written request for reconsideration.**
>
>Hope this is helpful.
>
>Thanks, and best wishes, - Steve

Later on July 19, 2012, Class Counsel similarly suggested inclusion of the following Preface to the then-existing DRAFT Appeal Procedure:

>Before formal Reconsideration or Appeal, a Claimant shall be provided with at least three chances to have their claims reconsidered and reviewed to assure accuracy, transparency, independence and adherence by the Settlement Program to the terms of the Settlement Agreement. [Section 6.1] The Settlement Program, in this regard, shall work with the Claimant to facilitate the assembly and submission of their Claims Forms and all supporting documentation, and use its best efforts to provide the Claimant with assistance, information, opportunities to be determined eligible for and receive the Settlement Payment(s) to which the Claimant is entitled under the Agreement. [Section 4.3.7] If, at that point, the Claimant continues to believe that he or she has not been afforded full compensation as provided under the Settlement Agreement, the Claimant shall have the right to formal Reconsideration, and Appeal, if necessary, as provided herein:

As another example, on August 7, 2012, in response to Brown Greer's July 30th Outstanding Issues Memo, Class Counsel again advised that:

>**Issue No. 11(b)** – I understand and appreciate that the Program has been and intends to continue to be flexible and interactive in allowing people to supplement, amend, complete and/or otherwise maximize their claims. At the same time, based on my understanding of the formal procedures, **there does not seem to be formal incorporation of Section 4.3.7 (whether independently or read in conjunction with Section 6.1).** According to the formal procedure (at least the way I understand it), in a nutshell:  The Claimant submits his or her claim and supporting documentation, and receives a Notice or Determination of some kind.  It's at that point up to the Claimant to seek Reconsideration within 30 days, and to submit additional documentation. At that point, the Claimant has the right to Appeal. (However, on appeal, the Claimant has no right to submit additional documentation.*) If the Claimant loses the appeal, that's it. **Under any reading of Section 6.1, it is contemplated that the Claimant would get, at the**

very least, "up to three" chances, before formal Reconsideration. (As noted in my previous submission, this was intended to refer to denials, and is, in any event, modified by Sections 4.3.7 and 4.3.8 [*i.e.* "Subject to and in accordance with...."] which place the burden *on the Program,* without limitation.) Here, in general, according to the formal procedure (at least as I understand it), you only get one shot. Then Reconsideration. Then Appeal. That's it. **I don't think that this is what was intended, agreed to, or otherwise contemplated.**

[*If BP takes an Appeal, the Claimant must be provided with the opportunity to submit additional documentation that rebuts whatever argument that BP is making.]

Again, recently, on September 11, 2012, Class Counsel communicated concerns *via* e-mail that the Settlement Agreement was not being followed in this regard:

> The Settlement Agreement provides that the Program "shall work with Economic Class Members ... to facilitate Economic Class Members' assembly and submission of Claims Forms, including all supporting documentation necessary to process Claim Forms under the applicable Claims Processes. The Settlement Program ... shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class member is entitled under the terms of the Agreement." Section 4.3.7.   The term used is "shall". That is the express language in the Agreement, to which BP agreed.  Putting aside the question of how claims should be viewed by the Program on a substantive basis, **the Program should, as a matter of process, be telling the Claimant and/or his or her attorney, in the event of some confusion or uncertainty, what the issue or ambiguity is, so that the Claimant can attempt to address it <u>*BEFORE*</u> a formal Denial is issued, and the Claimant's options become limited to the narrow Reconsideration and Appeal path to finality that the Program has, thus far, set forth.**

**Examples of Failure to Implement**

In the case of, for example, ██████████████████████ [Claim No. 100004271], the Program should have contacted the claimant (and/or his attorney), presented the information contained within Orran Brown's September 11, 2012 8:24PM e-mail, and affirmatively solicited supplemental and/or clarifying information and/or documentation *<u>before</u>* denying the claim.

In the case of, for example, ████████ [Claim No. 100001449], the explanation that was provided in Christine Reitano's e-mail of August 31, 2012 12:59PM should have been

communicated to the claimant (and/or his attorney) so that the claim could have been supplemented with the corresponding ▓▓▓ trip ticket information / documentation ***before*** forcing the claimant to seek formal Reconsideration – and, ideally, even before issuing a less than optimal determination.

(And, in both of these cases, had the claimants not been represented by Class Counsel, who communicated directly with the Claims Administrator, it is unclear how the claimants would have known what the Program Vendors' denial and determination were based on, or how to submit a request for Reconsideration that would have appropriately responded, supplemented and/or clarified the issue in question.)

In the case of, for example, a Wetlands, Coastal or Sales Loss Claimant whose claim is effectively denied by mapping software that may or may not be reliable before the claim is even submitted, the Program should be actively working with those claimants (and/or their attorneys) to try to confirm that the mapping software is accurate, and to solicit from the claimant any additional information and/or documentation that might establish eligibility ***before*** the claimant is forced to "challenge" the "denial".

## Conclusion

The Claimant-friendly provisions are neither aspirational nor discretionary.

They are central to the Agreement.

BP agreed to them.

They are required.