UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BYTHE OIL RIG          * | | MDL NO. 2179 |
| DEEPWATER HORIZON IN THE GULF      * | | |
| OF MEXICO, ON APRIL 20, 2010               * | | |
| * | | |
| * | | SECTION: J |
| THIS DOCUMENT RELATES TO: 12-03179  * | | |
| HANK J. KIFF V. BP AMERICA                    * | | JUDGE BARBIER |
| PRODUCTION COMPANY                           * | | MAG. SHUSHAN |

MEMORANDUM IN SUPPORT OF HANK J. KIFF'S
MOTION FOR RECONSIDERATION

I.   INTRODUCTION AND BACKGROUND

1.  Kiff incorporates by reference the Introduction of his Memorandum in Support of his Motion to Sever (Doc. 14230-1, paras 1-4).

2.  The extreme nature of Kiff's injuries and his current position in life which result from BP's acts and omissions are further reasons justifying relief for Kiff and severance of his case from the MDL.

3.  On the day he was injured, August 21, 2010, Kiff was a healthy, working man who owned the MV *Master C* (the "Vessel").[1] Under a bareboat charter agreement with BP, Kiff was on the Vessel that day as the captain but also required to perform the role of a deckhand, in direct contravention of BP's own safety policy and procedure requiring four crew members aboard its vessels.[2] At the time of the incident, Kiff was lowering boom to soak up the oil while also trying to keep the Vessel in gear, when a swell hit the Vessel and Kiff was pulled in the

---

[1] *See* Declaration Under Penalty of Perjury by Hank Kiff, attached as Ex. 1.

[2] *Id.*

opposite direction, severely injuring his neck and back.[3] There is no doubt Kiff should not have been forced to perform dual tasks under the Agreement and under BP's own safety policy.

4.      Specifically, BP assured Kiff, prior to Kiff agreeing to enter into the bareboat charter, that captains would not be performing deckhand work, like unloading the boom.[4] BP explained its policy was there were to be four people on each vessel–two responders, one captain, and one mate.[5] There were not four people on the Vessel, and therefore Kiff was required to perform deckhand's/responder's work, which put him at risk of, and did cause him, severe, debilitating personal injury.[6]

5.      The result of BP's acts and omissions proximately led to Kiff's injuries, including extreme neck pain, thoracic pain, and lower back pain. He endured shoulder pain, numbness, tingling, sharp and stabbing pain, and he was unable to stand, lift objects, bend, stoop, sleep, or turn his head. Kiff was required to undergo lumbar diskectomies at L3-L4 and L4-L5 in 2013, further surgery to remove a screw at L5 in 2013, a cervical discectomy at C3-4 in 2014, and surgery to remove that hardware in 2015[7]. Kiff suffered complications as a result of the surgeries which led to disfigurement of his face and general immobility in his body. Kiff continues to undergo medical treatment[8]. He has endured extreme pain and suffering since the date of

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *See* Operative Reports, attached hereto as Ex. 2.

[8] *See* Medical Report dated June 30, 2015, attached hereto as Ex. 3.

accident[9], and will continue to endure that pain and suffering the longer his case remains in the MDL.

      6.      Kiff has incurred nearly $500,000 in past medical expenses[10] and will continue to incur medical expenses as he continues his rehabilitative therapy, post-operative follow-up care, medication and doctor visits. These past and future medical expenses are all the responsibility of BP as it is required to pay cure to its injured Jones Act seaman.  BP is likewise required to provide its injured seaman the benefits of maintenance, of which BP has paid ZERO, and continues to not be held accountable for same due to this matter being transferred to the MDL.

      7.      BP is relieved from making Kiff whole, or as whole as someone can be who has endured the injuries and resultant pain and burden as Kiff has, as Kiff's case sits stagnant in the MDL. The MDL does nothing to help Kiff, the severely injured party, and does everything to benefit BP, the liable party. Therefore, in the interest of fairness and justice, and with consideration of Kiff's extensive injuries in mind, Kiff respectfully requests this Court sever his case from the MDL so that his claims can be fully adjudicated.

## II.  ARGUMENT AND AUTHORITY

      8.      Federal Rule of Civil Procedure 54(b) provides a liberal standard allowing district courts to revisit non-final orders in their discretion. The Rule provides that:

> [A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

---

[9] Ex. 1.

[10] *See,* generally, itemized statements, attached hereto as Ex. 4.

The United States Supreme Court has stated that the Federal Rules of Civil Procedure 54(b), "[P]ermits a district court to enter a separate final judgment on any claim or counterclaim, after making 'an express determination that there is no just reason for delay.'" *Reiter v. Cooper*, 507 U.S. 258, 265 (1993). Courts reconsider prior non-final rulings when "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *See Official Comm. of Unsecured Creditors v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

9. Here, new evidence of Mr. Kiff's continuing pain and suffering has been presented to the Court and the Defendant, to date, has continued to deny Mr. Kiff maintenance and cure as is its undisputed duty under the law–which has exacerbated Mr. Kiff's pain and suffering and enlarged Defendant's exposure to punitive damages by law. *See Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009).

### III.  CONCLUSION

10. In conclusion, shown herein, Mr. Kiff has presented new evidence to this Honorable Court to duly reconsider his motion to sever his claim from MDL 2179 so that his claim may be adjudicated in a just and timely manner and the Defendant live up to its just and right obligations under the law.

*Signature follows–*

Respectfully submitted,

**SPAGNOLETTI & CO.**

*/s/ Marcus R. Spagnoletti*
Marcus R. Spagnoletti
Texas SBN 24076708 (PHV)
401 Louisiana Street, 8th Floor
Houston, TX 77002
Telephone:	713 653 5600
Facsimile:	713 653 5656
Email:	mspagnoletti@spaglaw.com

*Attorney for Plaintiff Hank J. Kiff*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's Motion to Sever has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of July, 2015.

*/s/ Marcus R. Spagnoletti*
Marcus R. Spagnoletti