UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010<br><br>This document relates to:<br><br>No. 12-970 | MDL NO. 2179<br><br>SECTION: J<br><br>Honorable Carl J. Barbier<br><br>Magistrate Judge Shushan |

## AFFIDAVIT OF LOC TRAN

**ORANGE COUNTY**

**STATE OF CALIFORNIA**

**BEFORE ME,** the undersigned notary public came and appeared,

**LOC TRAN**, who, under oath, stated as follows:

1. I am an officer and the principal owner of Crystal Seafood, Inc. ("Crystal"). My given Vietnamese name is Loc, but I am generally called by my American name, Victor. My brother, Christopher Tran, is also a shareholder and an officer.

2. Crystal is located at 3933 South Martin Luther King Drive in Port Arthur, Texas. Crystal sits on a roughly two-acre lot that contains two main buildings, an office, a loading dock, and about five hundred feet of dock frontage on a ship channel connecting to the Sabine River, which flows into the Gulf of Mexico.

3. The following Figure 1 is an accurate aerial view of the property:



EXHIBIT 1




4. Crystal's main processing facility is the large building in the center of Figure 1. The facility is 22,500 square feet and contains a high capacity IQF (individually quick frozen) machine and 5,000 square feet of freezer space. Crystal's business involves buying shrimp from shrimp docks and processes shrimp for resale to seafood distributors for sale to grocery stores, with consumers purchasing the shrimp at retail being the end users. Crystal's processing activities include grading, deheading, sorting, freezing, and packaging shrimp. Its final packaged product is sold wholesale.

5. I also own a second processing company, Titan Seafood Co. ("Titan"), which is located at 3931 South Martin Luther King Drive. Titan's processing facility is in a separate

building (the building to the left of the main building in Figure 1). This building is 5,000 square feet and contains a freezer for shrimp purchased from boats, as well as de-heading and peeling machines. Titan sells to a number of distributors and restaurants, and its shrimp is primarily used for food-service and restaurant preparation of shrimp.

6. In addition to each business having its own building and equipment, Titan and Crystal have their own electrical meters, bills, bank accounts, and business records.

7. The building in the upper left of Figure 1, with a dark gray roof, is a double-wide trailer that served as office space and living quarters for both Crystal and Titan.

8. The land and buildings are owned by a third company, Lot, Inc. ("Lot"), which I also own. Lot owns the processing equipment used by Titan. Crystal, on the other hand, continues to own all of its equipment outright and currently has no debt on the equipment. Crystal's equipment includes a variety of processing equipment representing well more than a million dollars of invested capital and capable of processing high volumes of shrimp.

9. I purchased the Port Arthur property in 1993, through a company called Irvine Property, Inc. I and my brother, Tuan, also established a different company called Pleasure Island Shrimp House, Inc., to operate the dock.

10. In February 2004, I incorporated Crystal to process shrimp. Crystal built a processing facility and purchased its own processing equipment. Crystal's equipment is top quality. The de-heading systems can process 50,000 pounds of shrimp per day. The IQF machine – by itself a $575,000 investment – can freeze 25,000 pounds per day. Each of 120 vats can hold 1,000 pounds of shrimp tails. All of this equipment remains on-site. The processing machinery is stainless steel and can easily be refurbished, cleaned, and used. The vats and other equipment remain in excellent condition and are ready for use.

The following are recent pictures of Crystal's equipment:







11. I established Titan in 2005. Titan used separate equipment, including a de-header, a separate plate freezer, and a peeling machine. The equipment described in the

Affidavit of Christopher Tran dated November 28, 2012, is not the equipment owned by Crystal. Crystal's equipment is separate and was never transferred to Lot.

12. Whereas Crystal focused on IQF shrimp sold by grocery and retail outlets, Titan focused on peeled shrimp sold in restaurants. Roughly 95% of Titan's product was sold to seafood distributors that sell to restaurants, and roughly 5% was sold directly to local markets and restaurants. Titan and Crystal sold their shrimp with different packaging and under different brand names. Thus, Titan and Crystal sold different products to different customers.

13. In late 2005, Hurricane Rita damaged the Port Arthur property and buildings. I repaired the Crystal facility and added an upstairs office. The Titan facility suffered more damage than the Crystal facility, so in 2006, I rebuilt the Titan facility with more space and capacity.

14. In 2006, I incorporated Lot, and in 2007, Lot purchased the land and buildings from Irvine, while also assuming debt. Lot effectuated this purchase in part with my personal money, and in part with a $1.5 million bank loan from East West Bank.

15. Crystal does not buy shrimp directly from commercial fishing vessels, so it is not required to submit trip tickets to the Texas Parks & Wildlife Department. Instead, Crystal purchased shrimp from several different docks in Texas and Louisiana. As a result, the Texas Parks & Wildlife Department should have no trip tickets for Crystal in 2008-2010.

16. During this time, Crystal employed five to ten people in its plant. One of these employees was Thomas Crane, who worked in the processing facility. Mr. Crane was never Crystal's production manager. He was hired to run the IQF machine and watch the unloading dock. He was never involved in the management of Crystal or Titan, never interacted with customers, and knows little about Crystal's operations. Mr. Crane was not involved in Crystal's

sales of shrimp, including its ongoing sales of shrimp following the *Deepwater Horizon* disaster. Mr. Crane left the business in 2009 and has no knowledge of Crystal's business since that date.

17. In September 2008, Hurricane Ike again damaged the Port Arthur property and buildings. Both Crystal and Titan resumed their processing operations almost immediately, powered by an on-site generator. Crystal had a substantial inventory of frozen shrimp and processed this inventory into finished product until about April or May of 2009. Because the Crystal freezer had suffered damage in Hurricane Ike, Crystal began shipping finished shrimp to Tampa Bay, Florida, where it was stored at Seaboard Cold Storage located at 402 E. Ohio Street, in Plant City, Florida. Crystal continued processing and shipping shrimp until April or May 2009. It shipped approximately 30 truckloads – about 1 million pounds – of finished shrimp to Seaboard Cold Storage.

18. In April or May 2009, after Crystal had finished processing its inventory of frozen shrimp, it stopped processing operations to complete repairs on its building and facilities. Crystal annually shut down processing operations every spring to complete repairs and maintenance, and repairs were particularly needed in 2009 due to hurricane damage. Crystal and Titan completed the repairs to their buildings and equipment in August 2009.

19. In April 2009, I was incarcerated related to charges that had nothing to do with Crystal or its business. With its equipment fixed and my brothers able to continue operating the business, Crystal faced a decision about whether to restart processing in 2009. Because Crystal still had a significant amount of inventory to sell from cold storage, we decided to sell existing inventory rather than resume processing at that time. Instead, on September 1, 2009, Lot leased Crystal's processing facility to Flor-Tex Shrimp Company, LLC ("Flor-Tex"), a company owned by Crystal's main customer, Tampa Bay Fisheries, Inc. Thus, Flor-Tex leased the processing

building and equipment while Crystal focused on selling its existing inventory. The Flor-Tex lease was for a one-year term ending August 31, 2010, with an option to renew for one additional year. Rental payments under the lease were $12,000 per month.

20. It was never Crystal's intention to close down permanently, wind up its business, or liquidate its assets. Crystal was not selling its shrimp to liquidate. In fact, the Flor-Tex lease allowed Lot to terminate on 60 days' written notice. Crystal owns all of its equipment, has no outstanding debt, and has sufficient capacity to compete aggressively with its competitors. There was no good reason for Crystal to cease operations and wind down, and Crystal did not do so. While Crystal is not currently processing shrimp, it could resume processing in one to two months. It has maintained its corporate charter to this day and annually pays its fees for a corporate charter.

21. While Crystal did not resume processing in 2009, it continued to maintain an office and business presence at the Port Arthur facility. Christopher and Sinh Tran staffed the office, oversaw operations, sold shrimp throughout 2009 and 2010, and collected on receivable accounts. Both Christopher and Sinh had long experience in assisting with the operation of Crystal's business.

22. Due to the lack of shrimp available after the BP oil spill, Flor-Tex did not renew its lease in August 2010 and vacated the facility. Crystal, however, continued to sell shrimp after the spill. For example, Crystal sold $33,256 in June 2010, $66,000 in July 2010, and $140,192 in August 2010.

23. Crystal was significantly damaged by the *Deepwater Horizon* disaster. Flor-Tex's termination of the lease demonstrates the severe disruption the spill caused to the shrimp industry. Following Flor-Tex's termination in August 2010, Crystal faced the same challenges

as Flor Tex: there were major disruptions to the supply of shrimp, demand for Gulf shrimp plummeted, and an entirely new set of risks altered the calculation of whether a shrimp processor could operate profitably. From August 2010 to the present, Crystal has faced the decision whether to resume buying and processing shrimp, and I have exercised my business judgment not to undertake that significant economic risk until business conditions improve.

24. Today, Crystal retains the ability to process shrimp at the Port Arthur facility. Crystal owns the necessary shrimp processing equipment debt-free. At no time has Crystal ever left or abandoned the Port Arthur site. Even during my imprisonment and Flor Tex's lease, my brothers continued to operate Crystal out of the office pictured in Figure 1. Because of the size of Crystal's operation and the continued lack of supply and depressed prices, conditions have not favored Crystal resuming its processing operations. Crystal is a high-volume processor that requires a sufficient steady supply of shrimp, high demand, and favorable spreads between purchase and sales prices of shrimp. The oil spill has negatively impacted all of those factors, leading me to conclude that it is too economically risky to resume processing.

25. As for Titan, although it scaled back considerably after the spill, it has resumed buying and selling shrimp. It now continues to sort, weigh, grade, and sell shrimp.

26. Once Flor-Tex left the Port Arthur property, Lot had no income with which to make its loan payments to East West Bank. Accordingly, the bank initiated foreclosure proceedings against Lot. Since then, Lot has attempted, unsuccessfully, to sell its assets. It is effectively insolvent and has not been able to sell its property or assets for the amount it owes to East West Bank.

27. While some of the equipment at the Port Arthur site needs maintenance, the core of Crystal's equipment is still functional, as it is high-quality equipment made from stainless

steel. The equipment may have little current market value because of its specialized nature and current depressed market conditions, but it remains operational.

28. In addition to processing shrimp, Crystal also purchased fuel for sale to shrimp vessels. Throughout 2010 and subsequent years, it continued to have significant accounts related to its fuel purchases and sales. Those accounts included debts that Crystal owed to fuel wholesalers and accounts receivable for amounts that shrimp vessels owed to Crystal. Rather than declaring bankruptcy, Crystal chose to pay its debts and collect on accounts receivable. If Crystal had decided to cease operations and close its business, it would not have continued to pay its debts related to fuel purchases. That processed has continued until recently.

29. I have reviewed and agree with the Affidavit of Christopher Tran dated November 28, 2012. I do not believe anything that I have said herein contradicts any statements made in Christopher's Affidavit.

30. Crystal is an ongoing business and has never ceased to exist. Even if Lot sold its property, Crystal still owns its own equipment and could resume operations elsewhere or negotiate lease terms with a new owner, if market conditions improve. I have never intended to permanently close down Crystal's operations. For this reason, Crystal's claim form accurately describes Crystal's business and accurately states that it has not ceased operations, declared bankruptcy, or liquidated its assets. Crystal's claim form further accurately states that it is located at 3933 South Martin Luther King Drive.

31. Because most of its financial documentation was destroyed by Hurricane Ike, Crystal had little remaining documentation other than its monthly bank statements, which it obtained from its bank. Crystal hired a tax preparer, Cathy Huynh, to prepare the P&Ls and tax returns from the bank statements.

32. When Crystal received its settlement payment, it made payments to Lot. That payment amounted to rent to maintain access to the facility. Lot used the payment to make property tax and bank payments on the property.

33. Since I established Crystal, I have always used my California address for receivable accounts because mail delivery to the Port Arthur facility was either unavailable or unreliable. For this reason, I had our checks mailed directly to my home address in California. Nevertheless, the property in Port Arthur remained the sole location of the business.

34. Crystal has never had any involvement with or corporate relationship or affiliation with Alliance & Associates, LLC. They are completely separate companies owned by different individuals. My understanding is that Alliance owned shrimp boats and sold shrimp to multiple docks, as well as directly to its own customers. I did not have any involvement in the claim Alliance & Associates, LLC submitted to the settlement program.

35. I have cooperated in both the Special Master's investigation and DHECC's investigation of the Crystal and Titan claims. Both Christopher Tran and I provided interviews to HUB Enterprises. I authorized an inspection of the Port Arthur facilities, and my brother, Sinh Tran, provided a guided tour. I have carefully reviewed Crystal's financial documents and obtained bank statements, invoices, and other documents to support the claim that Crystal filed. I understand that those documents were provided to investigators.

36. I stand by the statements that Crystal made in its claim forms. The business continues to be located at the Port Arthur facility. That was the location of its shrimp processing operations, where it processed the shrimp it sold throughout 2010, and where it continues to suffer damages from the oil spill. There was no other reasonable location to identify as its place of business. It is also correct that Crystal is not a failed business. It had ongoing sales

throughout 2010, and operations continuing in subsequent years. I maintain the business to this day, and with its processing equipment in good condition, Crystal is capable of beginning operations in one or two months. I continue to evaluate when to process shrimp at the Crystal facility. I have made the decision not to liquidate assets, declare bankruptcy, or wind up the business, so I believe it would be inaccurate to describe Crystal as a failed business.

37. I state under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the foregoing is true and correct.

Loc Tran
Owner and Authorized Representative of Crystal Seafood, Inc.

Subscribed and sworn to or affirmed before me this

30th day of July, 2015

Notary Public
(Affix seal or stamp.)

KEVIN CASH
Commission # 2092158
Notary Public - California
Orange County
My Comm. Expires Dec 4, 2018