UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

REPLY OF THE DHECC
TO OPPOSITION OF CRYSTAL SEAFOOD
TO MOTION FOR RETURN OF PAYMENTS

The Deepwater Horizon Economic Claims Center ("DHECC") provides this reply to the opposition [Rec. Doc. 14948] filed by Crystal Seafood Company, Inc. ("Crystal") to the DHECC's motion for return of payments ("Motion") [Rec. Doc. 14613].  For all of the reasons stated here and in the DHECC's Motion, the DHECC is entitled to judgment.

A.      Crystal Misrepresented its Eligibility for Class Membership to the DHECC

The key issue in this case is not whether Crystal should have been designated as a "primary seafood processor" or "primary seafood industry II," as Crystal discusses at length in its briefing.  Opp. 13-15.  Rather, the key is whether Crystal misrepresented its eligibility as a class member, which required Crystal to show that it "owned, operated, or leased a physical facility" in the gulf coast area "at any time from April 20, 2010 to April 16, 2012." *See* Settlement Agreement at ¶ 1.2.  To establish eligibility, Crystal represented using the present tense on its claim form that it "operates" at 3933 South Martin Luther King Drive in Port Arthur, Texas, which Crystal said was the only physical location for the business from April 1, 2010 through December 31, 2010.  *See* Motion at Ex. B at B.2 & B.7; Opp. 15.  This building was part of a complex owned by Lot, Inc. ("Lot"), a related entity that filed its own

DHECC claim (the "Port Arthur Location").  The Port Arthur Location also allegedly housed Alliance & Associates, LLC ("Alliance") and Titan Seafood Co., which also filed claims.

Crystal was run by Loc "Victor" Tran, who is listed on Nevada corporate records as the company's president.  Victor Tran entered federal custody on April 8, 2009, and remained in federal prison until September 2012.  Victor Tran's wife best summarized Crystal's business at the time of Victor Tran's incarceration, writing in July 2009 to the federal judge in Beaumont, Texas, preparing to sentence Victor Tran:

> ***Essentially all business operations have ceased***.  The boats are gone.  I have had to let go of most employees with the promise that I will call them back as soon as I can.

*See* Ex. 1 (emphasis added).

Consistent with the statement that "essentially all business operations have ceased," Crystal did not own, operate or lease the Port Arthur Location, a "physical facility" in the gulf coast area after August 27, 2009.  Crystal's misrepresentations to the contrary were made on Crystal's claim form and repeated as Crystal filed documents to give the false impression that Crystal had on-going operations at the Port Arthur Location.  The misrepresentations, relied upon by the DHECC, induced the finding that Crystal was a class member eligible for a payment on its claim that would not have been made had Crystal presented accurate information about its business activity.

Crystal does not dispute that the Port Arthur Location was owned before and after the oil spill by Lot.  Opp. 3.  Crystal further does not dispute that as of August 27, 2009, Lot leased the facility to an unrelated seafood business, Flor-Tex Shrimp Company, LLC ("Flor-Tex"), giving Flor-Tex the right to use all buildings and "the right to operate any and all equipment maintained and remaining on the premises."  *See* Motion at Ex. G at ¶ 4.  The

lease also gave Flor-Tex the option to purchase "any and all equipment" from Lot. *Id.*

Lot told the DHECC that after Flor-Tex cancelled the lease as of December 31, 2010, the facility "remained idle," thus confirming that neither Crystal nor any other entity "operated" at the physical facility after Flor-Tex left the facility. *See* Motion at Ex. H at ¶ 7.

Crystal now concedes that it was not "actively processing" seafood at the time of the oil spill, Opp. 13, but says that its representations were accurate because it retained the ability to process shrimp because Crystal allegedly owns processing equipment, including a valuable individual quick frozen ("IQF") system, at the facility. Opp. 8. Crystal further said that two directors of Crystal kept a "business office" at the facility and that Crystal engaged in other business activity that made its representations accurate. Opp. 11.

These new explanations demonstrate how Crystal freely contradicts its own prior claim submissions, as well as filings by Victor Tran supporting other claims for related entities. But absent a plausible explanation for the change, contradictory representations of a party should be disregarded. *Richardson v Bonds*, 860 F.2d 1427, 1433 (7th Cir. 1988) (party cannot create a genuine issue of fact by contradicting its earlier representations unless offering "a plausible explanation for the sudden change of heart"). Here, the contradictions make plain that Crystal is continuing to present false information.

The contradictions in Crystal's submissions are demonstrated with a review of the claim that Crystal maintains processing equipment at the Port Arthur Location. Crystal represents that "at all relevant times" it owned and owns its equipment, and can restart processing on short notice. Opp. 4, 7, 8, 14, 17, 20. Crystal said that "[e]ven when Flor-Tex left in 2010, Crystal retained ownership of its core operational assets: the IQF machine, the freezer, and other equipment." Opp. 17. Flor-Tex left the facility in November 2010.

Crystal's 2010 tax return, however, states that Crystal "DISPOSED" all of its depreciable equipment, including its "IQF SYSTEM," as shown in the depreciation schedule (and highlighted below):

| Item No. | Description of Property "**" indicates DISPOSED | Date Placed in Service | Prior Accum. Deprec., 179, Bonus | 2010 Current Deprec. | 2010 Accum. Deprec. |
|---|---|---|---|---|---|
| | Detail Report 1120 | | 1,190,007 | 108,656 | 1,298,663 |
| 1 | ** COMPUTER | 2/2/2004 | 3,500 | 0 | 3,500 |
| 2 | ** COUNTING SCALE | 1/15/2005 | 1,830 | 105 | 1,935 |
| 3 | ** ICE VAULT | 1/15/2005 | 122,084 | 7,009 | 129,093 |
| 4 | ** VATS | 1/15/2005 | 8,546 | 491 | 9,037 |
| 5 | ** WASH TANK | 1/15/2005 | 11,890 | 683 | 12,573 |
| 6 | ** STAINLESS TABLE | 1/15/2005 | 9,324 | 535 | 9,859 |
| 7 | ** STAINLESS WASH | 1/15/2005 | 34,989 | 2,009 | 36,998 |
| 8 | ** UNLOADING DOCK | 1/15/2005 | 138,891 | 8,440 | 147,331 |
| 9 | ** STEEL BOAT DOCK | 1/15/2005 | 233,005 | 15,193 | 248,198 |
| 10 | ** BUILDING | 2/1/2005 | 231,306 | 17,788 | 249,094 |
| 11 | ** LAND | 2/1/2005 | 0 | 0 | 0 |
| 12 | ** OFFICE EQUIPMENT | 2/15/2006 | 20,628 | 1,340 | 21,968 |
| 13 | ** OFFICE EQUIP | 2/15/2006 | 20,628 | 1,340 | 21,968 |
| 14 | ** EQUIPMENTS | 1/15/2007 | 107,207 | 16,759 | 123,966 |
| 15 | ** IQF SYSTEM | 6/15/2007 | 171,902 | 26,873 | 198,775 |
| 16 | ** DEHEADING EQUIP | 6/15/2007 | 74,277 | 10,091 | 84,368 |
| | SubTotals | | 1,190,007 | 108,656 | 1,298,663 |
| | Less: Disposed Assets | | ( 1,190,007) | ( 108,656) | ( 1,298,663) |
| | Ending Totals | | 0 | 0 | 0 |

*See* Ex. 2. Crystal's 2011 tax return — not provided by Crystal to the DHECC — listed *no* depreciable assets owned by Crystal. *See* Ex. 3.

Further confirming that Crystal disposed of its equipment is the 2010 monthly profit and loss statement ("P&L") that Crystal provided to the DHECC. *See* Ex. 4. The equipment depreciation total on Crystal's P&L is the same as the depreciation expense listed on Crystal's 2010 tax return. *See* Exs. 2 & 4. Crystal claims equipment depreciation on the P&L only from January to April 2010, with no equipment depreciation expense listed for any of the remaining months of the year:

| CRYSTAL SEAFOOD CO. 2010 | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | YEAR TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EXPENSES | | | | | | | | | | | | | |
| DEPRECIATION EXPENSE | 27,364.00 | 27,364.00 | 17,164.00 | 27,364.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100,656.00 |

*See* Ex. 4. Crystal's 2010 and 2011 tax returns and 2010 P&L are in plain contradiction to Crystal's current claim that it owned its equipment "at all relevant times" and to the present, thus allegedly allowing Crystal to resume operations.

Crystal's other alleged claims of on-going "operations" similarly lack merit. For example, Crystal states that access by Christopher Tran and Sinh Tran (Victor Tran's brothers who served as directors of Crystal and a number of inter-related companies, many purportedly operating at the Port Arthur Location) to office space at the Port Arthur Location after Flor-Tex leased the property in 2009 somehow justified Crystal's position. But Crystal's P&L for 2010 shows that the entity paid no rent for any such access:

| CRYSTAL SEAFOOD CO. 2010 | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEP | OCT | NOV | DEC | YEAR TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EXPENSES | | | | | | | | | | | | | |
| RENT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

*See* Ex. 4. Moreover, both Sinh Tran and Christopher Tran have been listed as officers and directors in numerous corporations involving Victor Tran. After the spill, both men were shrimping on different vessels that brought seafood to Flor-Tex at the Port Arthur Location, and both men filed their own DHECC claims based on this shrimping activity.[1] The Texas database shows that both Christopher Tran and Sinh Tran had numerous trip tickets from Flor-Tex from September 2009 to November 2010. Nothing about mere access to the Port Arthur Location, particularly given the on-going business of these men from their own vessels with Flor-Tex, changes the analysis about Crystal's misrepresentations. This is particularly true when Crystal identifies no specific action taken by these men for Crystal.

---

[1] The DHECC has sought repayment from Sinh Tran, Christopher Tran and others for return of payments made in the DHECC seafood program [Rec. Doc. 14761].

As to other alleged operations, Crystal's 2010 P&L has no expenses for employee salaries, telephones, utilities, shop supplies or legal or accounting fees.  *See* Ex. 4.  In fact, the last payments to former Crystal employees in August and September 2009 were financed by Flor-Tex.  Crystal's <u>only</u> 2010 revenue came from shrimp processed and shipped to Florida for cold storage in June 2009.  *See* Motion at Ex. J.  The purchaser, Tampa Bay Fisheries, accounted for the weight of the shrimp bought, prepared the purchase invoice, prepared the payment checks, and sent the purchase paperwork and checks to Crystal at an address in the California town where Victor Tran's spouse lived.  *See* Ex. 5.  Nothing about this sell-off of remaining inventory from 2009 suggests any on-going operations at the Port Arthur Location, as Crystal had represented.

Taken together, these facts contradict Crystal's statement on its claim form that the company "operates" at the Port Arthur Location.

B.    <u>Crystal's Strained Definition of "Facility" is Legally and Factually Flawed</u>

Crystal states that it did not make a misrepresentation to the DHECC because the company continues to own processing equipment in the Port Arthur Location.  Opp. 21.  Acknowledging that the equipment alone would not satisfy the DHECC's current definition of "physical facility," Crystal nonetheless claims it was not unreasonable to have considered the equipment as a "facility" before the DHECC issued a formal policy on the topic, thus allegedly negating any fraudulent intent.  *Id.* at 21-22.

The most significant issue with Crystal's after-the-fact rationalization of its misrepresentations is records showing that Crystal "disposed" of all of its equipment, including the IQF system, in 2010.  *See* Exs. 2, 3 & 4.  Crystal's own records belie the claim that the company continues to own equipment stored at the Port Arthur Location.  *Id.*

Crystal's position also relies on a dictionary definition of "facility," overlooking that the full phrase in the Settlement Agreement is "physical facility."  *See* Settlement Agreement at ¶ 1.2.1.  The Settlement Agreement also defines "facility" for certain claims as a "separate and distinct physical location of a Multi-Facility Business at which it performs or manages its operations."  *Id.* at Ex. 5 at 2; *Monahan v. Comm'r*, 321 F.3d 1063, 1068 (11th Cir. 2003) (court need not turn to extrinsic evidence to understand an unambiguous agreement).

Crystal's strained attempt to rationalize its misrepresentations, including its unsupported claim about its on-going ownership of physical equipment, should be rejected.

### C. Crystal's Recent Claims on an Intent to Continue Business Fatally Conflict with the Prior Submissions by Crystal to the DHECC

Crystal contends that it never intended to shut down its operations, averring in Victor Tran's affidavit that the company stopped processing shrimp in April or May 2009 simply to "complete repairs on its building and facilities," supposedly as it did every year. Opp. 6.  Crystal further suggests that it shipped 30 truckloads of shrimp to a storage facility in Florida because its freezer had been damaged in Hurricane Ike.  *Id*.

While again seeking to convey that it engaged in business as usual in 2009, Crystal omits from its explanation that Crystal's business leader, Victor Tran, unexpectedly was taken into federal custody on April 8, 2009 — one day after Victor Tran purchased over 10 tons of shrimp for over $50,000 from one of Sinh Tran's vessels and Christopher Tran's vessel.  *See* Motion at Ex. F.  Writing in July 2009, Victor Tran's wife described the period:

> I cannot explain Loc's recent actions that caused him to be locked up again. All I know is that having to step into his position just to hold down the business has been incredibly stressful….the responsibilities of the business, along with all my other responsibilities is overwhelming.

Ex. 1.  Victor Tran would remain in federal prison until September 2012.

Again to convey the illusion of business as usual, Crystal alters the time line of events, failing to state that the multiple truckloads of shrimp sent to Florida — containing all of Crystal's remaining inventory — were shipped from June 16, 2009 to June 23, 2009 and sold off by Tampa Bay Fisheries, Flor-Tex's Florida parent company, over the next year. *See* Motion at Ex. J.

Crystal's new assertion that it shut down after April or May 2009 to complete repairs on its facility, as it supposedly does each year, is contradicted by the financial data provided by Crystal to the DHECC, and is entitled to no evidentiary weight. *See United States v. Bishop*, 264 F.3d 535, 549 (5th Cir. 2001) (self-serving statements about witness's intent at a prior time are not admissible evidence). Specifically, Crystal's claim that it processed its inventory until April or May 2009 and then shut down until August 2009 is contradictory to Crystal's 2009 P&L produced to the DHECC, which demonstrated allegedly robust operations in May, June and July 2009. *See* Ex. 4 (revenue for relevant months highlighted). Indeed, May and June were allegedly two of the highest three revenue months of the year. *Id*. By August 2009, Flor-Tex had entered a lease to operate the Port Arthur Facility, which it found to be in disrepair at the time.

Finally, Crystal states that the DHECC seeks to accuse a claimant of fraud based on the information the claimant submitted and disclosed to the DHECC. Opp. 19. The internal inconsistencies among Crystal's business records, however, are what give rise to issues of Crystal's misrepresentations. Moreover, the DHECC did not have access to relevant information when Crystal filed its claim. Crystal did not disclose many details about its business operations, such as the fact that the Port Arthur Location had been leased in its entirety before and after the oil spill to an unrelated company, or that Crystal had not

- 8 -

processed seafood since April 2009, or that Crystal had sold off all of its processing equipment in early 2010, or that Crystal's principal entered federal custody before the oil spill based on a conviction for disaster relief program fraud. These facts only have been pieced together in the months after the DHECC paid Crystal in good faith reliance on its claim, describing itself as a company that "operates" at the Port Arthur Location.

      D.      <u>Personal Liability for Payments to Crystal and Alliance is Appropriate</u>

Crystal argues that the DHECC's claim for personal liability is based solely on the fact of the family relation among many of the people involved with Crystal. Joint liability, however, is not sought based on family relation. Rather, a court may exert its equitable powers and disregard the corporate entity if it decides that piercing the veil will prevent fraud, illegality, injustice, a contravention of public policy, and where "recognizing the separate corporate existence would bring about an inequitable result." *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 326 (5th Cir. 2006). A court also can pierce a corporate structure based on the existence of several factors, such as common membership of corporate directors or officers, use by one company's property by another, intermingled operations, and failure to maintain corporate formalities. *TIP Sys., LLC v. SBC Operations, Inc.*, 536 F. Supp. 2d 745, 754 (S.D. Tex. 2008)(collecting relevant factors).

Here, Victor Tran, Christopher Tran and Sinh Tran have served as corporate directors of Crystal, as well as other inter-related companies that have made DHECC claims. These entities have used the property of each other and intermingled their assets. This is demonstrated in the IQF system discussed in Crystal's brief.

Another entity formerly operated by Victor Tran, Pleasure Island Shrimp House Inc. ("Pleasure Island"), received a loan from the Port Arthur Economic Development

Corporation ("Port Arthur EDC") that was used in part to purchase the IQF system. *See* Motion at Ex. H (Christopher Tran Aff'd of Nov. 28, 2012 at ¶ 9). According to an affidavit from Christopher Tran submitted to the DHECC, Lot agreed to pay the loan from 2008 until it was paid off in 2010. *Id.* As Christopher Tran stated, the "formal title to the equipment, however, was never changed and the loan statements were never altered to reflect the fact that Lot had assumed the loan." *Id.* Several payments to the Port Arthur EDC for the loan were repaid by another Victor Tran-related entity, Titan Seafood:



Lot also passed the cost of the Port Arthur EDC loan for the IQF system to its tenant, Flor-Tex:

| Invoice From Lot, Inc. to Flor-Tex Shrimp Company, LLC. | |
|---|---|
| **AUGUST 2010** | |
| **MONTHLY RENT** | |
| Mortgage w/ E/W Bk (Lot, Inc.) | $12,000 |
| **MONTHLY EXPENSES** | |
| EDC loan: IQF freezer | $7,564 |
| Property tax ($22,804.13/yr) | $1,900 |
| **Total Amount Due for August 2010:** | |
| Rent: | $12,000 |
| Expenses: | $9,464 |
| | 21,464 |

Further intermingling this asset, Crystal listed a depreciation expense for the IQF equipment on its income tax returns for 2009 and part of 2010.  Such fluid treatment of valuable property makes clear that the entities run by Victor Tran do not respect formal separation and formality concerning their equipment.

In sum, Victor Tran and his brothers intermingled corporate assets, presented misleading information to the DHECC, and benefitted substantially from claim payments to which Crystal was not entitled.  Imposing personal liability for Crystal's debt under these circumstances is appropriate and well supported by the facts and law.

E.     Conclusion

For the reasons presented in the record, the DHECC requests that the Court grant the motion for return of payments and enter judgment against Crystal and both Victor Tran and Christopher Tran, personally, for $1,034,228.42.  All professionals who benefitted from the unjustified payments similarly should be required to make restitution.

Respectfully submitted,

Patrick Juneau
Claims Administrator

By:   /s/ Kevin Colomb
Kevin Colomb,
Manager of Compliance and Internal Integrity

Louis J. Freeh
Special Master

By:   /s/ Gregory A. Paw
Gregory A. Paw
Counsel to the Special Master

Dated:  August 13, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that this 13th day of August 2015, a copy of the above and foregoing papers have been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

                                                                              _/s/ Gregory A. Paw_
                                                                              Counsel