UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 |
| | | SECTION: J |
| This Document Relates To: | * | |
| | | JUDGE BARBIER |
| *No. 12-970* | * | |
| | | MAG. JUDGE SHUSHAN |
| | * | |

**ORDER & REASONS**

Before the Court is the **Motion of the Special Master for Return of Payments Made to Wardell Parker and Others (Rec. Doc. 13848)**, Wardell Parker's opposition (Rec. Doc. 14787), and the Special Master's reply (Rec. Doc. 14868). Having considered counsel's arguments in memoranda, the relevant record, and the applicable law, the Court finds for reasons set forth below that the Special Master's motion should be GRANTED.

**PARKER'S CLAIM WITH THE DHECC**

This Order assumes the reader's familiarity with the 2010 Gulf oil spill, the *Deepwater Horizon* Economic and Property Damages Settlement ("Settlement", Rec. Doc. 6430) and the Seafood Compensation Program in particular, and the *Deepwater Horizon* Economic Claims Center ("DHECC"). On August 8, 2012, Wardell Parker ("Parker") filed a shrimp vessel owner claim and a shrimp boat captain claim with the DHECC, requesting that his claims be calculated using the Historical Revenue Method with 2009 as the benchmark period. For an individual to be compensated under the Historical Revenue Method, he or she must submit, inter alia, either trip tickets or a federal tax return for the selected benchmark period. Parker submitted his 2009 federal income tax return, which reported $79,228 in wage income, apparently because he did

1

not have any 2009 trip tickets showing shrimping revenue.[1]  However, when an individual relies on a tax return in lieu of trip tickets, the Settlement also requires that the claimant submit sufficient documentation that will enable the DHECC to distinguish how much of the claimants' income is from shrimping as compared to other sources.  (Settlement, Ex. 10 pp.19-21)  Thus, in addition to his 2009 federal income tax return, Parker also submitted: (1) a "Sworn Written Statement," signed by Parker, stating under penalty of perjury that Parker had $80,000 in revenue from shrimp sales in 2009; (2) 29 statements purportedly signed by individuals who claimed to have purchased shrimp from Parker in 2009; (3) a summary document wherein Parker claimed to have sold approximately 45,000 pounds of shrimp in 2009; and (4) a letter from a staff accountant at the law firm representing Parker that stated, ". . . because of the amount of shrimp sold stated in the sworn written statements submitted with this claim, *we believe it can be determined that all income claimed on the tax return came from shrimping revenue*." (Motion, Ex. C, Rec. Doc. 13848-5 (emphasis added))  Attached to the accountant's letter was a "Claim Reimbursement Accounting Report" which, similar to the letter, stated that all of Parker's revenue listed on his 2009 federal tax return was from the sale of shrimp[2] and presented a proposed calculation of Parker's claim under the Settlement's compensation formula using $79,228 (the amount in the tax return) as the "Benchmark Shrimp Revenue."

The DHECC determined that Parker earned $80,000 from shrimp sales in 2009.  From this figure, the DHECC calculated that Parker was eligible for $238,684.32 in compensation

---

[1] Parker does not dispute the Special Master's statement, "As Parker had no shrimping revenue recorded on any 2009 trip tickets, he asked the DHECC to calculate his claims from his 2009 tax return and other financial statements."  (Motion at 4, Rec. Doc. 13848-1).

[2] The Claim Reimbursement Accounting Report stated, "[T]he calculations were based off of 2009 Tax Return information.  Sworn Written Statements were provided by claimant's customers proving claimant's revenue consists solely of the sale of shrimp."  (Motion, Ex. C, Rec. Doc. 13848-5)

2

under the Settlement—$126,146.16 for his shrimp vessel owner claim and $112,538.16 for his shrimp boat captain claim. The DHECC paid Parker this amount on November 13, 2012.

## THE SPECIAL MASTER'S CLAWBACK MOTION

In 2013, the Court appointed the Special Master to, inter alia, examine and investigate past or pending claims submitted to the DHECC which are deemed suspicious and to initiate legal action to "clawback" the payment of any fraudulent claims. (Rec. Doc. 11288 at 3) Following an investigation into Parker's claims, the Special Master filed the instant motion in December 2014 seeking to recover $238,684.32 from Parker and his former counsel and to bar Parker from receiving any further distributions under the Seafood Compensation Program. In short, the Special Master asserts that Parker lied when he represented that the $79,228 listed in his 2009 tax return was revenue from shrimping and when he stated in his Sworn Written Statement that he had $80,000 in shrimping revenue. The Special Master's motion is supported primarily by a W-2, which was not submitted with Parker's claim to the DHECC, that shows Entergy Louisiana, LLC, a power company, paid Parker $79,228 in 2009, the same amount listed on his 2009 tax return, for work he did as a substation mechanic. The 2009 tax return similarly lists Parker's occupation as "MECHANIC." The Special Master also produces contemporaneous notes kept by the tax preparer Parker used to create his 2009 tax return, which similarly states that all of Parker's 2009 income came from working as a substation mechanic, not from the sale of shrimp. The Special Master also explains that his staff attempted to contact the 29 individuals who purportedly bought shrimp from Parker, but only six could be reached at the phone numbers listed in their statements. At least four of these six individuals told investigators that they

purchased much smaller quantities of shrimp than was represented in their statements submitted to the DHECC.[3]

After the motion was filed, Danzinger & De Llano LLP ("Danzinger"), the law firm that represented Parker, returned $60,100.32 to the DHECC, representing the fees Danzinger had received in connection with work it had performed on Parker's claims.  The Court then dismissed the motion as it related to Danzinger and ordered that the relief sought by the Special Master would be offset by Danzinger's repayment.  (Rec. Doc. 13984)  Consequently, the Special Master now seeks $178,584.00 from Parker.

On June 29, 2015, the Court granted the Special Master's motion, noting that Parker had failed to file an opposition by the deadline set by the Court.  (Rec. Doc. 14779)  Parker then moved for reconsideration and filed an opposition brief.  (Rec. Doc. 14792, 14787)  The Court granted reconsideration and instructed the Special Master to file a reply, following which the Court took the matter under advisement.

## DISCUSSION

Some of the issues raised in this motion are identical or nearly identical to issues addressed in previous orders concerning other clawback motions.  In the interest of brevity, the Court will refer to those opinions in lieu of repeating itself.

The Court has jurisdiction over this matter for reasons previously explained.  (Order & Reasons of April 29, 2014 ("Thonn Order") at 10-12, Rec. Doc. 12794; Order & Reasons of June 24, 2015 ("Zirlott Order") at 3, Rec. Doc. 14752).  The Special Master's motion is based on a claim of fraud and presented as a Rule 56 motion for summary judgment.  Therefore, the Special Master must show there is no genuine dispute as to any material fact and the Special Master is

---

[3] The record before the Court does not reflect what the other two individuals told investigators.  However, Parker appears to concede that all six of the individuals told investigators that they purchased smaller quantities of shrimp than was represented to the DHECC.  (*See* Parker Opp'n at 12, Rec. Doc. 14787)

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Specifically, the Special Master must show that (1) Parker made a false representation; (2) Parker knew or believed that the representation was false, or had an insufficient basis to make the representation; (3) Parker intended to induce the DHECC to act in reliance on the information; (4) the DHECC justifiably relied on Parker's representation; and (5) damage resulted from the reliance. *See Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, 926 F. Supp. 2d 858, 862 (E.D. La. 2013).

The Special Master has submitted uncontroverted and convincing evidence that Parker's claims were paid based on false information furnished to the DHECC. As explained above, because Parker did not submit trip tickets, the Settlement required him to support his claim with his income tax return plus other documentation that would allow the DHECC to determine how much of his income listed therein was from shrimping. The documents submitted to the DHECC stated that all of the $79,228 reported in Parker's tax return came from shrimping. However, Parker does not dispute that the $79,228 reported in his 2009 tax return was not from shrimping, but instead from his job as a substation mechanic. Indeed, Parker admits that the tax accountant's statement in his letter to the DHECC—"because of the amount of shrimp sold stated in the sworn written statements submitted with this claim, we believe it can be determined that all income claimed on the tax return came from shrimping revenue"—was "a misstatement by an individual authorized to act on [Parker's] behalf with the DHECC." (Parker Opp'n p.7, Rec. Doc. 14787)

Nevertheless, Parker argues that *he* did not make a false representation of fact to the DHECC, because the misrepresentations were made by his former counsel's employees, not Parker. In a similar vein, Parker argues that *he* did not intend to defraud the DHECC, because he

5

did not intend for any of his income as a mechanic to be considered when calculating the awards. Parker claims that he entrusted Danzinger to submit the claim, and he had no reason to suspect that the calculations for his claims included his wages from Entergy.

The Court previously rejected a similar argument and does so again here. (*See* Zirlott Order at 4-5) Parker authorized his former counsel's representations to the DHECC by entering a power of attorney with counsel. (*See* Special Master Reply, Ex. A, Rec. Doc. 14868-1) In fact, and as noted above, Parker admits that the accountant was authorized to act on his behalf when he told the DHECC that "all income on the tax return came from shrimping revenue."[4] Furthermore, Parker himself signed the Sworn Written Statement which attested under oath that he had $80,000 of shrimping revenue in 2009. The Sworn Written Statement also repeated the Settlement's requirement that Parker's tax return be submitted with his claim.[5] In short, both Parker's own representations and those attributed to him by virtue of the power of attorney establish that Parker made a false representation of fact to the DHECC (that the $79,299 of income listed on his 2009 tax return was entirely from shrimping and that he had $80,000 of revenue from shrimping in 2009) and that Parker intended for the DHECC to rely on this information.

Parker also argues that the DHECC should have identified the multiple inconsistencies in the documentation submitted with Parker's claim, and, therefore, the DHECC did not justifiably

---

[4] Parker also admits that the staff accountant was "an extension of Mr. Parker."  (Parker Opp'n at 13, Rec. Doc. 14787)

[5] The Sworn Written Statement stated::

> In order to have the financial information presented in this Form considered as part of your compensation calculation, you must either submit, or have already submitted, federal or state tax returns and schedules for the years that correspond to the Benchmark Revenue years you completed on this Form.

(Motion, Ex. B, Rec. Doc. 13848-4)

rely on the representations. The Court rejects this argument for reasons stated in the Thonn Order (pp. 21-22) and the Zirlott Order (p.5).

Arguing in the alternative, Parker urges that it would be unjust to require him to return all the funds paid to him by the DHECC; rather, his claim should be remanded to the DHECC for re-evaluation and Parker permitted to submit any additional documentation to make a fair assessment of his claims. The Court rejects this argument and finds that full restitution is appropriate.

## CONCLUSION

For the above reasons,

IT IS ORDERED that the Motion of the Special Master for Return of Payments Made to Wardell Parker (Rec. Doc. 13848) is GRANTED.

IT IS FURTHER ORDERED that the DHECC claim awards in favor of Parker based upon Claim 49623 and Claim 50267 are hereby RESCINDED and VACATED;

IT IS FURTHER ORDERED that Parker shall make restitution to the DHECC in the amount of $178,584.00 plus post-judgment interest; and

IT IS FURTHER ORDERED that Parker shall not participate in any further distributions under the DHECC Seafood Compensation Program.

The Court will enter a separate judgment consistent with this Order and Reasons.

New Orleans, Louisiana, this 8th day of September, 2015.

_____
United States District Court