```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


In Re: Oil Spill by the Oil Rig    *      MDL 2179
"Deepwater Horizon" in the Gulf    *
of Mexico, on April 20, 2010       *      SECTION J(1)
                                   *
                                   *      JUDGE BARBIER
This document relates to:          *
No. 10-2454 & 10-1768, Center      *      MAG. JUDGE SHUSHAN
for Biological Diversity v.        *
BP America, et al.                 *
```

## ORDER & REASONS

Before the Court is a *Motion for Partial Summary Judgment* (**Rec. Doc. 12673**) filed by Plaintiff, Center for Biological Diversity, Inc. ("the Center"), an *Opposition* thereto (**Rec. Doc. 12824**) by Defendants, BP American, Inc. and BP Exploration & Production, Inc. ("BP"), and Plaintiff's *Reply* (**Rec. Doc. 12898**). Also before the Court is a *Motion for Summary Judgment* (**Rec. Doc. 12676**) filed by BP and Transocean Offshore Deepwater Drilling ("Transocean"), an *Opposition* thereto (**Rec. Doc. 12820**), and a *Reply* (**Rec. Doc. 12896**). Also before the Court is a *Motion for Summary Judgment* filed by Defendant Transocean (**Rec. Doc. 12675**), an *Opposition* thereto (**Rec. Doc. 12821**), and a *Reply* (**Rec. Doc. 12895**). Having considered the motions, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the Center's

1

motion should be **DENIED** and BP's and Transocean's motions should be **GRANTED**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

The Center is a non-profit environmental organization with over 40,000 members, including over 3,500 members living in the Gulf of Mexico region. Defendants BP, P.L.C. and its corporate subsidiaries BP America Production Co. and BP Exploration & Production, Inc. (collectively "BP") conduct exploration and drilling operations in the Gulf of Mexico. As part of those operations, BP leased the mobile offshore drilling unit known as *Deepwater Horizon* from Transocean, Ltd. and its subsidiary companies in order to drill the Macondo well.

On April 20, 2010, an explosion on *Deepwater Horizon* triggered an oil spill that caused an environmental disaster of immense proportion. Millions of gallons of oil spewed from the well site over the course of several months as the defendants and government authorities sought to stop it. On July 15, 2010, a permanent cap was put in place at the well site to halt the flow of oil. On September 19, 2010, the National Incident Commander announced that a relief well had been completed, which effectively "killed" the Macondo well.

Meanwhile, as the response efforts were ongoing, the Center filed suit against BP and Transocean on June 18, 2010, alleging that the defendants violated the Clean Water Act ("CWA") because of the discharged oil and toxic pollutants from the ruptured well. In August 2010, the Center filed a second action against BP and Transocean asserting additional claims under CWA, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and the Emergency Planning and Community Right-to-Know Act ("EPCRA"). The Center asserted numerous statutory violations, including failure to report the release of hazardous substances to the emergency coordinator for the local emergency planning committee, in violation of EPCRA, 42 U.S.C. § 11004 (Count 7).

The Multidistrict Litigation ("MDL") Panel transferred the Center's complaints to MDL-2179 before this Court. In order to manage this complex litigation, this Court issued Pretrial Order No. 11 establishing several "pleading bundles" into each of which claims of similar nature would be placed for the purpose of filing a master complaint, answers, and any Rule 12 motions. The Center's complaints were placed into Pleading Bundle D1, encompassing claims by private parties for injunctive relief.

The D1 plaintiffs filed a Master Complaint that was in most respects similar to the Center's individual complaints. BP and Transocean separately moved to dismiss the D1 Master Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Court granted the motions to dismiss, finding that (1) the D1 plaintiffs lacked standing because their alleged injuries were not redressable by a favorable decision, (2) the D1 claims were moot, and (3) the D1 claims were not actionable because the defendants were not "in violation" of the alleged statutes. The D1 Master Complaint was dismissed in its entirety.

Pursuant to the Center's request, this Court entered a final judgment "for the reasons stated in the Court's Order Dismissing the Bundle D1 Master Complaint ... as that Order relates to [the Center's individual complaints]." The Center appealed. The Fifth Circuit affirmed the dismissal except as to the Center's EPCRA claim. The Court found that the Center had standing to challenge BP's failure to report the releases of certain hazardous substances under EPCRA. The Fifth Circuit remanded the matter to the district court. Both the Center and the Defendants subsequently moved for summary judgment.

4

**PARTIES' ARGUMENTS**

The parties debate the meaning of CERCLA's "petroleum exclusion." If the substances released as part of the *Deepwater Horizon* oil spill are considered "petroleum," BP is not obligated to report the release under EPCRA. The Center argues that petroleum contains the hazardous substances benzene, toluene, and xylene and that BP is required to report the release of these substances.

EPCRA derives its reporting requirements from CERCLA. The release of substances designated as hazardous under CERCLA triggers EPCRA's reporting requirements. CERCLA's definition of "hazardous substance" excludes "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance" elsewhere in the statute. 42 U.S.C. § 9601(14)(F).

The Center argues that benzene, toluene, and xylene are "fractions" of petroleum because they are naturally present in oil. Because these substances are specifically listed as hazardous substances in CERCLA, the Center asserts that BP is required to report the release of these substances that occurred during the oil spill under EPCRA. Under this interpretation, BP is not required to report the release of the oil itself, only

5

the release of the oil's constituent parts that are "hazardous substances."

BP argues that the Center's reading of the statute ignores its plain meaning, its legislative history, the Environmental Protection Agency's ("EPA") interpretation, and caselaw from other jurisdictions. According to BP, the statute plainly excludes from reporting both petroleum itself and any constituent parts of released petroleum. While the legislative history is scarce, BP argues that it supports a finding that CERCLA does not apply to oil spills. Furthermore, BP points to the EPA's interpretation of the petroleum exclusion, which exempts from CERCLA coverage all petroleum and its constituent parts. Finally, BP cites caselaw from other district courts, which seem to uniformly hold that the petroleum exclusion applies to all releases of petroleum and its constituent parts.

Even if the petroleum exclusion applies, the Center further argues that BP's addition of spacer fluid and drilling mud to the Macondo well vitiated the petroleum exclusion as applied to releases from the well. The Resource Conservation and Recovery Act's ("RCRA") excludes drilling fluids from its definition of hazardous waste, so they are not considered hazardous substances under CERCLA. 40 C.F.R. 261.4(b)(5). The Center argues that the

6

drilling fluids exception only applies when the fluids are used for a bona fide exploration or production purpose. It asserts that BP used drilling fluids to stop the flow of oil, which was not such a bona fide purpose. BP counters that the intent underlying the use is irrelevant, and it asserts that the exception applies to drilling fluids "associated with" exploration and production, regardless of intended use. If the drilling fluids are hazardous substances, the Center argues that BP's use of the fluids gave rise to a duty to report releases from the well, but not the releases of the drilling fluids themselves.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making

credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential

8

element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

**A. Petroleum Exclusion**

EPCRA, 42 U.S.C. § 11001 *et seq.*, requires the owner or operator of a facility from which hazardous substances are released to provide notice to state and local emergency planning committees. 42 U.S.C. § 11004(b)(1). The release of substances deemed hazardous under CERCLA, 42 U.S.C. § 9601 et seq., triggers EPCRA's notice requirements. 42 U.S.C. § 11004(a)(1). CERCLA defines "hazardous substance" as:

> (A) any substance designated pursuant to section 311(b)(2)(A) of the Federal Water Pollution Control Act [33 U.S.C.A. § 1321(b)(2)(A)], (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.]

9

> has been suspended by Act of Congress), (D) any toxic pollutant listed under section 307(a) of the Federal Water Pollution Control Act [33 U.S.C.A. § 1317(a)], (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 7 of the Toxic Substances Control Act [15 U.S.C.A. § 2606].

42 U.S.C. § 9601(14). The definition specifically excludes "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph. …" *Id.* The statute does not define "petroleum" or "fraction."

The meaning of this "petroleum exclusion" is at issue in this case. When interpreting a statute, courts will primarily consider the plain meaning of the words used. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992). When the words are unambiguous, the court must apply the statute as written. *Id.* at 255. Courts should give words their ordinary, plain meaning and should not construe a statute to render any clause, sentence, or word superfluous, void, or insignificant. *Corley v. United States*, 556 U.S. 303, 314 (2009).

Merriam-Webster's online dictionary defines "petroleum" as "an oily flammable bituminous liquid that may vary from almost colorless to black, occurs in many places in the upper strata of

the earth, is a complex mixture of hydrocarbons with small amounts of other substances, and is prepared for use as gasoline, naphtha, or other products by various refining processes." *Petroleum Definition*, Merriam,-Webster, http://www.merriam-webster.com/dictionary/petroleum (last visited Aug. 31, 2015). "Fraction" is defined as "one of several portions (as of a distillate) separable by fractionation." *Fraction Definition*, Merriam,-Webster, http://www.merriam-webster.com/dictionary/fraction (last visited Aug. 31, 2015). As the Center argues, benzene, toluene, and xylene are "fractions" of petroleum and are subject to EPCRA's reporting requirement.

However, the Center's interpretation renders a portion of the statute superfluous. Its reading of the statue would require owners and operators to report releases of component parts of petroleum that qualify as hazardous substances under CERCLA, but it would exempt the petroleum itself from the reporting requirement. The Center's interpretation would subject every oil spill to CERCLA coverage, rendering the petroleum exclusion meaningless. *See Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801, 805 (9th Cir. 1989) ("[T]he construction advocated by plaintiffs would have the effect of rendering the petroleum exclusion a nullity because all crude oil, petroleum

11

and petroleum fractions, unrefined or refined, would fall outside its ambit.") BP's interpretation – which would exclude from the reporting requirement both petroleum and its constituent parts – better comports with the plain meaning of the statute.

The Center further argues that BP's interpretation renders statutory language void, superfluous, or meaningless. BP's interpretation exempts petroleum and its constituent parts from EPCRA's reporting requirements. The Center argues that *all* releases of petroleum products would be excluded from EPCRA coverage under this interpretation and the "not otherwise specifically listed" exception to the exclusion would never apply.

However, the exception to the petroleum exclusion may still apply under BP's interpretation. Other courts have held that hazardous substances added to or mixed with petroleum products are subject to the reporting requirement. *Bunger v. Hartman*, 797 F. Supp. 968, 972 (S.D. Fla. 1992). Waste oils are also subject to reporting because they are defined as hazardous under CERCLA. *Brockton Wholesale Beverage Co. v Chevron U.S.A., Inc.*, No. 88-220-Z, 1990 U.S. Dist. LEXIS 9998, at *6 (D. Mass. July 26, 1990). In those situations, the petroleum exception did not

12

apply. Instead, the "not otherwise specifically listed" exception to the exclusion applied. The Court's adoption of BP's interpretation of the petroleum exclusion does not render the "not otherwise specifically listed" language superfluous and gives meaning to the petroleum exclusion.

The EPA also interprets the petroleum exclusion to apply to both petroleum products and hazardous substances that are inherent in petroleum. The EPA's reasonable interpretation of a statute it administers is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45 (1984). In a 1987 memorandum, the EPA's General Counsel explained that the petroleum exclusion includes hazardous substances that are inherent in petroleum, but not substances that are added to or mixed with petroleum products. Mem., *Scope of CERCLA Petroleum Exclusion Under Sections 101(14) and 104(a)(2)*, 1987 WL 123926 (July 31, 1987). The memo further explained that diesel oil is excluded as petroleum, as are its components, including benzene and toluene. *Id.* In contrast, polychlorinated biphenyls mixed with oil are not excluded. The EPA's memo opined that the exclusion would lack meaning if hazardous substances naturally occurring in petroleum were not excluded. *Id.* The EPA's rules and regulations also provide that

13

the petroleum exclusion applies to crude oil, petroleum feedstocks, and refined petroleum products. Notification Requirements; Reportable Quantity Adjustments, 50 Fed. Reg. 13,456 (Envtl. Prot. Agency April 4, 1985) (codified at 40 C.F.R. pt. 117, 302). It does not apply to pesticides or waste oil. *Id.*

Virtually every court that has considered the scope of the petroleum exclusion has adopted an interpretation in line with the EPA's and BP's in this case. The Ninth Circuit applied the petroleum exclusion to unrefined and refined gasoline, despite the fact that CERCLA lists components of gasoline as hazardous substances. *Wilshire Westwood Assocs.*, 881 F.2d 801 at 810. The Eighth Circuit followed this approach and applied the exclusion to the component elements of petroleum. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153-54 (8th Cir. 1999). Similarly, the Sixth Circuit held that petroleum products mixed with hazardous substances not constituent elements of petroleum are themselves hazardous substances. *Franklin Cnty. Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 541 (6th Cir. 2001). The Third Circuit found that the petroleum exclusion was intended to exempt oil spills, not releases of petroleum that

are mixed with hazardous substances. *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 266-67 (3d Cir. 1992).

The Supreme Court has not directly addressed the scope of the petroleum exclusion, but it has stated that CERCLA does not include oil spills in its definition of "hazardous substance." *Exxon Corp. v. Hunt*, 475 U.S. 355, 359 (1986) (dicta). Finally, numerous district courts have followed the holdings of the circuit courts described above. *See, e.g. Two Rivers Terminal, L.P. v. Chevron U.S.A., Inc.*, 96 F. Supp. 2d 432, 443 (M.D. Penn. 2000); *Wademan v. Concra*, 13 F. Supp. 2d 295, 302 (N.D.N.Y. 1998); *Bunger*, 797 F. Supp. at 972; *Niecko v. Emro Mktg. Co.*, 769 F. Supp. 973, 981 (E.D. Mich. 1991). Based on the plain language of the statute, the EPA's interpretation of the exclusion, and the settled view of the courts, BP's interpretation of the petroleum exclusion is correct.

**B. Addition of Spacer Fluid and Drilling Mud**

In the event that the petroleum exclusion applies, the Center argues that BP's conduct "vitiated" the exemption. Specifically, the Center argues that the addition of spacer fluid and drilling mud in an attempt to stop the flow of oil rendered the exemption inapplicable. The Center asserts that the contents of the spacer fluid and drilling mud are not subject to the reporting

15

requirement, but that the addition of these materials subjected the releases from the well to the requirement.

The Center's argument is misguided. In interpreting the petroleum exclusion, multiple courts have held that the exclusion does not apply to petroleum products that are added to, or mixed with, hazardous substances. *Franklin Cnty. Convention Facilities Auth.*, 240 F.3d at 541. In this case, the Center appears to argue that the drilling mud and spacer fluid are hazardous substances. If this were true, BP would be required to report the release of the petroleum mixed with drilling fluids from the well.

However, spacer fluid and drilling mud are not hazardous substances under CERCLA. The EPA determined that drilling fluids are excluded from RCRA's definition of hazardous waste. 40 C.F.R. § 261.4(b)(5) (2015) ("Drilling fluids, produced waters, and other wastes associated with the exploration, development, or production of crude oil, natural gas or geothermal energy" are not hazardous wastes). Therefore, drilling fluids are not considered hazardous substances under CERCLA. *See* 42 U.S.C. § 9601(14) (definition of hazardous substance). The addition of drilling fluids to petroleum has no effect on the applicability of the petroleum exemption.

16

The Center argues that the spacer fluid and drilling mud used by BP fall outside the RCRA exclusion because they were not used for "bona fide" exploration, development, or production purposes. This argument ignores the plain language of the exemption. Assuming without deciding that the spacer fluid and drilling mud were not used for "bona fide" exploration, development, or production, the exemption does not require such a "bona fide" purpose, nor does it consider the intent of the party using the drilling fluids. It only requires the wastes to be "associated" with the exploration, development, or production of crude oil, natural gas, or geothermal energy, which they plainly were. *See generally In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 21 F. Supp. 3d 657 (E.D. La. 2014). For these reasons, the Center's argument that BP's conduct "vitiated" the petroleum exemption fails.

Because the petroleum exclusion applies, it is unnecessary to consider the Center's remaining arguments.

**CONCLUSION**

Accordingly,

17

**IT IS HEREBY ORDERED** that Defendants' *Motions for Summary Judgment* (**Rec. Doc. 12676 and Rec. Doc. 12675**) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion for Partial Summary Judgment* (**Rec. Doc. 12673**) is **DENIED**.

New Orleans, Louisiana this 11th day of September, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT COURT