## Stipulation Regarding Early Restoration Project
## for the Deepwater Horizon Oil Spill -
## Seagrass Recovery Project
## at Gulf Islands National Seashore, Florida District

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill –Seagrass Recovery Project at Gulf Islands National Seashore, Florida District ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011. Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees approved the final Deepwater Horizon Oil Spill Phase IV Early Restoration Plan and Environmental

Assessments on September 14, 2015, after public notice of the proposed plan, a reasonable opportunity for public comments, and consideration of all comments received, which final plan includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.   The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On May 20, 2015, the Trustees published for public notice and comment a Draft Phase IV Early Restoration Plan and Environmental Assessments (the "Phase IV Plan"), that included the Early Restoration Project.  On September 14, 2015, after considering all public comments received on the draft plan, the Trustees adopted a final Phase IV Plan that included the Early Restoration Project.  The final Phase IV Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.   The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

iii.   seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

v.   is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): the United States Department of the Interior, acting through the National Park Service ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.  The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.  Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.     <u>FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES</u>

A.   BPXP shall provide total funding in the amount of $136,700.00 for the Early Restoration Project. All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.   The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.D. and II.E. The estimated cost of the Early Restoration Project is set forth in Appendix A.

C.   Within thirty (30) days after the filing of this Project Stipulation, BPXP shall cause the transfer of 100% of the funds specified in Paragraph II.A. from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in instructions provided by the Implementing Trustee(s).

D.   Any and all funds transferred pursuant to Paragraph II.C. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project (or Replacement Project(s), if applicable), including all performance monitoring and corrective actions, shall be retained by the Trustees. Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete. BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

E.   At any time after BPXP has made full payment pursuant to Paragraph II.C., the Trustees may for good cause elect not to implement the Early Restoration Project. If the Trustees elect not to implement the Early Restoration Project in substantially the same form as described in Appendix A, the Parties agree that the Trustees shall apply any unspent funds in accordance with the following provisions:

    1.   The Implementing Trustee(s) for the Early Restoration Project or an affected trustee designated by the Implementing Trustee(s) shall retain the unspent funds paid by BPXP under this Project Stipulation;

    2.   The Trustees shall apply the unspent funds to one or more replacement project(s) ("Replacement Project(s)"), which may include a modified version of the project described in Appendix A. Any Replacement Project(s) shall be designed to compensate for injuries to submerged

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

aquatic vegetation habitat on lands managed by the U.S. Department of the Interior (DOI) in the five Gulf States;

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.   <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation.  Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.    EFFECT OF STIPULATION

A.   This Project Stipulation is binding upon the Parties and their successors and assigns.

B.   Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.   The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.   Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.   The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.   Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.


V.    GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A.   Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required by Paragraph II.E.6.

B.   This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with

identifying and selecting any Replacement Component(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C.   Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D.   Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E.   Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F.   Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G.   The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H.   To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

CHRISTOPHER D. DOLEY
National Oceanic and Atmospheric Administration
Principal Representative
1315 East-West Highway
Silver Spring, MD 20910

_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____        _____
Date                           JOHN C. CRUDEN
                               Assistant Attorney General
                               Environment & Natural Resources Division
                               U.S. Department of Justice
                               Washington, D.C. 20530


____9/15/15_____         _____
Date                           CYNTHIA K. DOHNER
                               Deepwater Horizon Authorized Official
                               Department of the Interior
                               1875 Century Boulevard
                               Atlanta, Georgia 30345


____9/16/15_____         _____
Date                           KENNETH J. KOPOCIS
                               U.S. Environmental Protection Agency
                               Principal Representative
                               1200 Pennsylvania Ave. NW
                               Washington, D.C. 20460


_____        _____
Date                           CHRISTOPHER D. DOLEY
                               National Oceanic and Atmospheric
                               Administration
                               Principal Representative
                               1315 East-West Highway
                               Silver Spring, MD 20910


_____9/16/15_____         _____
Date                           ANN C. MILLS
                               U.S. Department of Agriculture
                               Deputy Under Secretary for Natural
                               Resources and Environment
                               1400 Independence Ave. SW
                               Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_9-16-2015_
Date

_____
CHRISTOPHER D. DOLEY
National Oceanic and Atmospheric Administration
Principal Representative
1315 East-West Highway
Silver Spring, MD 20910

_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:


_____9/15/15_____                _____
Date                                      N. GUNTER GUY, JR.
                                          Alabama Department of Conservation
                                          and Natural Resources
                                          Commissioner of Conservation
                                          64 N. Union Street
                                          Montgomery, AL 36130



_____9/15/15_____                  _____
Date                                      BERRY H. TEW, JR.
                                          Geological Survey of Alabama
                                          and State Oil and Gas Board of Alabama
                                          State Geologist/Oil & Gas Supervisor
                                          P.O. Box 869999
                                          Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____9/15/15_____
Date

LARRY MORGAN
Florida Department of Environmental
Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_____9/15/15_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation
Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

11

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

_____9/15/15_____
Date

KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

_____9/15/15_____
Date

BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

_____9/15/15_____
Date

PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

_____9/15/15_____
Date

ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

_____9/15/15_____
Date

STEPHEN CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


____9/16/15_____                    _____
Date                                        GARY C. RIKARD
                                            Mississippi Department of Environmental
                                            Quality
                                            Executive Director
                                            P.O. Box 2261
                                            Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


15 September 2015
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
ANNE L. IDSAL
Texas General Land Office
Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_9/15/15_____
Date

ANNE L. IDSAL
Texas General Land Office
Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

ANNE L. IDSAL
Texas General Land Office
Chief Clerk
P. O. Box 12873
Austin, Texas 78711


**SEP 1 5 2015**
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


_17 Sept. 2015_
Date


_17 SEPT 2015_
Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:             Jean Martin, *or successor attorney assigned to manage Deepwater Horizon Natural Resource Damage Claims*
Address:          BP Legal Department
                  501 Westlake Park Blvd
                  Houston, Texas 77079
Telephone Number:   832-619-5239
Facsimile Number:   281-366-7578

**APPENDIX A**

**EARLY RESTORATION PROJECT**

# Appendix A:  Seagrass Recovery Project at Gulf Islands National Seashore, Florida District

## 1.0     INTRODUCTION

This document describes the Seagrass Recovery Project at Gulf Islands National Seashore (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of a Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The Seagrass Recovery Project at Gulf Islands National Seashore's Florida District (hereafter, GUIS) will address damage to shallow seagrass beds on DOI-managed lands in the five Gulf States by restoring injured turtle grass (*Thalassia testudinum*) in seagrass habitats located on the south side of the Naval Live Oaks Preserve in Santa Rosa Sound, in Santa Rosa County.  Seagrass beds are injured through propeller scars, blow holes, and via repeated human foot traffic which damages root systems.  Scars are made when boat propellers cut up roots, stems, and leaves of seagrasses, producing long, narrow furrows devoid of vegetation. Turtle grass is a commonly-found species of submerged aquatic vegetation (SAV) in the Florida Panhandle that is particularly slow to rejuvenate naturally when injured. Turtle grass with propeller damage can take many years to rejuvenate, or in severely scarred areas may never completely recover.

The Early Restoration Project will be located in Santa Rosa Sound in Santa Rosa County, on the south side of the Naval Live Oaks unit of GUIS. This area contains critical turtle grass habitat that, if not restored, will continue to erode and destroy more of the healthy habitat surrounding the injured areas.

The objective of the Early Restoration Project is to restore the topography and promote full recovery of approximately 0.02 acres of seagrass injured from propeller scars, blow holes, and/or trampling from foot traffic when fishers and other recreationalists wade into the shallow seagrass beds.  An initial assessment survey will be conducted in the Naval Live Oaks area of GUIS to identify priority restoration sites.  The restoration work includes: 1) harvesting seagrass (specifically shoal grass *[Halodule wrightii]*, a more hardy, faster growing pioneer species of seagrass, which helps establish proper site conditions for the colonization of healthy turtle grass) from nearby donor sites and transplanting them into the injured areas, 2) installing bird stakes to condition the sediments to promote survival and growth of transplants and seagrass from adjacent, uninjured areas into the injured areas, 3) monitoring sites to measure and report on the success of the restoration work, and  4) educating visitors on protecting seagrass beds via brochures, temporary signage in the restoration area, and possible permanent signage on the shore,

**3.0    PROJECT IMPLEMENTATION**

**3.1    Performance Criteria, Monitoring and Maintenance**

Project performance will be assessed as defined in Section 12.1.4of the Phase IV Early Restoration Plan and Environmental Assessments (the "Phase IV Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.1.4 of the Phase IV Plan have been met.

**3.2    Estimated Project Costs – Seagrass Recovery Project at Gulf Islands National Seashore, Florida District**

The total estimated cost to implement the Seagrass Recovery Project at Gulf Islands National Seashore is $136,700.00, consistent with Section 12.1.7 of the Phase IV Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Phase IV Early Restoration Plan and Environmental Assessments ("Phase IV Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

## NRD OFFSETS FOR SEAGRASS RECOVERY PROJECT AT GULF ISLANDS NATIONAL SEASHORE, FLORIDA DISTRICT

The NRD Offsets for the Seagrass Recovery Project at Gulf Islands National Seashore, Florida District are 1.5 discounted service acre years ("DSAYs") of submerged aquatic vegetation habitat. These Offsets are applicable first to injuries to submerged aquatic vegetation habitat in the Gulf Islands National Seashore Florida Division on lands managed by the U.S. Department of the Interior (DOI), and if any surplus remains, the surplus will be applied to assesses injuries to Submerged Aquatic Vegetation on other lands managed by DOI in the five Gulf States, as determined by the Trustees' total assessment of injury for the Oil Spill.

In the event that the injury determination for submerged aquatic vegetation habitat is quantified in the Natural Resource Damages Assessment using a metric other than DSAYs of submerged aquatic vegetation habitat, the Trustees agree to translate the agreed upon NRD Offsets into a currency consistent with the metric used to characterize the injury to submerged aquatic vegetation habitat. Any necessary translation of the offsets will rely on the data and methods developed for the assessment and authorized in 15 C.F.R. Sections 990, *et seq.*

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by this Early Restoration Project are DOI, EPA, NOAA, USDA, the Coastal Protection and Restoration Authority of Louisiana, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Natural Resources, the Louisiana Department of Wildlife and Fisheries, the Louisiana Department of Environmental Quality, the Alabama Department of Conservation and Natural Resources, the Geological Survey of Alabama, the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, the Mississippi Department of Environmental Quality, the Texas Parks and  Wildlife Department, the Texas General Land Office and the Texas Commission on Environmental Quality.

# APPENDIX D

## GLOSSARY OF TERMS

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

**Discounted Service Acre Years** is expressed in present value 2010 service acre years.