**Stipulation Regarding Early Restoration Project**
**for the Deepwater Horizon Oil Spill -**
**Pelagic Longline Bycatch Reduction Project**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil
Spill – Pelagic Longline Bycatch Reduction Project ("Project Stipulation" or
"Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the
State Trustees and Federal Trustees as defined herein (collectively, with the United States
Department of Justice, the "Parties") in accordance with the Framework for Early
Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill
("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this
Project Stipulation is governed by the Framework Agreement and incorporates its terms
by reference.  This Project Stipulation will be effective when signed by an authorized
representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on
behalf of the following federal trustees of natural resources:  the Secretary of the United
States Department of the Interior ("DOI"), through its applicable bureaus, the
Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the
Administrator of the United States Environmental Protection Agency ("EPA"), and the
Secretary of the United States Department of Agriculture ("USDA") (collectively
"Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama,
Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through
the following state trustees of natural resources:  for the State of Alabama, the Alabama
Department of Conservation and Natural Resources and the Geological Survey of
Alabama; for the State of Florida, the Florida Department of Environmental Protection
and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana,
the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill
Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana
Department of Wildlife and Fisheries, and the Louisiana Department of Natural
Resources; for the State of Mississippi, the Mississippi Department of Environmental
Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas
General Land Office, and the Texas Commission on Environmental Quality (collectively,
"State Trustees"; the State and Federal Trustees collectively are referred to as the
"Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit
Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of
Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil
Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment
("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law
provisions, to determine Natural Resource Damages resulting from the Oil Spill in
accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees approved the final
Deepwater Horizon Oil Spill Phase IV Early Restoration Plan and Environmental

Assessments , on September 14, 2015, after public notice of the proposed plan, a reasonable opportunity for public comments, and consideration of all comments received, which final plan includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.  RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On May 20, 2015, the Trustees published for public notice and comment a Draft Phase IV Early Restoration Plan and Environmental Assessments (the "Phase IV Plan"), that included the Early Restoration Project.  On September 14, 2015, after considering all public comments received on the draft plan, the Trustees adopted a final Phase IV Plan that included the Early Restoration Project.  The final Phase IV Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

v.   is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): the National Oceanic and Atmospheric Administration ("Implementing Trustee(s)").

D. Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) receives the final Payment of project funds pursuant to Paragraph II.C, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters: (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months. Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year in which this stipulation is filed..  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E. All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.  FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
     TRUSTEES

A.  BPXP shall provide total funding in the amount of $20,000,000 for the Early
    Restoration Project in accordance with Paragraphs II.C. and II.D. below, absent
    the entry of a judicial stay or other court order that prevents project
    implementation or otherwise affects the terms of this Project Stipulation.  All
    funds provided to any Trustee under this Stipulation shall be paid and deposited in
    accordance with the instructions provided by the Implementing Trustee(s)
    pursuant to Paragraphs II.C. and II.D. below.

B.  The Trustees shall use the funds paid under this Stipulation only for
    implementation of the Early Restoration Project, including oversight, monitoring,
    corrective actions, maintenance, and any agreed upon contingencies, except as
    provided in Paragraphs II.E. and II.F.  The estimated cost of the Early Restoration
    Project is set forth in Appendix A.

C.  Initial Payment:  Within thirty (30) days of the filing of this Project Stipulation or
    receipt of written payment instructions from the Implementing Trustee(s),
    whichever is later, BPXP shall cause the transfer of $5,000,000, or 25% of the
    amount specified in Paragraph II.A., from the Early Restoration Subaccount[1] to
    the account or accounts and in the manner designated in the payment instructions.

D.  Additional Payments:  The remaining 75% of the amount specified in Paragraph
    II.A. shall be paid from the Early Restoration Subaccount as follows:

    i.   The Implementing Trustee(s) elects to perform the Early Restoration
         Project with the use of contractor(s) and/or grantee(s) through a federal
         financial assistance process. Unless other payment arrangements are
         specified in Appendix A, BPXP shall transfer $10,000,000, or an
         additional 50% of the amount specified in Paragraph II.A., from the Early
         Restoration Subaccount to the account or accounts designated by the
         Implementing Trustee(s) within fifteen (15) days after the date that BPXP
         receives written notice from the Implementing Trustee(s) of its issuance of
         a Notice of Federal Business Opportunity, an announcement, of a Federal
         Funding Opportunity, or other appropriate applicable procurement
         mechanism, or within sixty (60) days of the filing of this Project
         Stipulation, whichever is later; such notice shall include written payment
         instructions.

    ii.  BPXP shall transfer the remaining $5,000,000, or 25% of the amount
         specified in Paragraph II.A., from the Early Restoration Subaccount to the
         account or accounts designated in the payment instructions within fifteen
         (15) days of notice to BPXP of the pending selection of a contractor or
         grantee but before award of a contract or grant of federal financial

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

assistance to implement the Early Restoration Project, or within seventy-five (75) days of the filing of this Project Stipulation, whichever is later.

E. Any and all funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project, including all performance monitoring and corrective actions, shall be retained by the Trustees. Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete. BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

F. If implementation of the Early Restoration Project does not commence, as specified in Appendix A, by the end of the eighteenth (18th) month after the date all Parties have signed this Project Stipulation, unless the Parties agree otherwise, the Project Stipulation shall be void and the funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation that have not been spent and remain unobligated, along with any accrued interest, shall remain in the account or accounts to which they have been transferred and only be used for another project under a new Project Stipulation agreed to by all the Parties under the terms of the Framework Agreement.

G. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.


III. NRD OFFSETS

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project. Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal. The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission"). After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets. Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   EFFECT OF STIPULATION

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B.  Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.  The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.  Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.  <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities.

B.  This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.G.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

CHRISTOPHER D. DOLEY
National Oceanic and Atmospheric
Administration
Principal Representative
1315 East-West Highway
Silver Spring, MD 20910


_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____          _____
Date                                 JOHN C. CRUDEN
                                     Assistant Attorney General
                                     Environment & Natural Resources Division
                                     U.S. Department of Justice
                                     Washington, D.C. 20530


____9/15/15_____            _____
Date                                 CYNTHIA K. DOHNER
                                     Deepwater Horizon Authorized Official
                                     Department of the Interior
                                     1875 Century Boulevard
                                     Atlanta, Georgia 30345


____9/16/15_____                _____
Date                                 KENNETH J. KOPOCIS
                                     U.S. Environmental Protection Agency
                                     Principal Representative
                                     1200 Pennsylvania Ave. NW
                                     Washington, D.C. 20460


_____          _____
Date                                 CHRISTOPHER D. DOLEY
                                     National Oceanic and Atmospheric
                                     Administration
                                     Principal Representative
                                     1315 East-West Highway
                                     Silver Spring, MD 20910


____9/16/15_____            _____
Date                                 ANN C. MILLS
                                     U.S. Department of Agriculture
                                     Deputy Under Secretary for Natural
                                     Resources and Environment
                                     1400 Independence Ave. SW
                                     Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_9- 16-2015_____
Date

_____
CHRISTOPHER D. DOLEY
National Oceanic and Atmospheric
Administration
Principal Representative
1315 East-West Highway
Silver Spring, MD 20910

_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

____9/15/15_____

Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

____9/15/15_____

Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____9/15/15_____
Date

_____
LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_____9/15/15_____
Date

_____
NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

_____9/15/15_____
Date

KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

_____9/15/15_____
Date

BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

_____9/15/15_____
Date

PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

_____9/15/15_____
Date

ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

_____9/15/15_____
Date

STEPHEN CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


_____9/16/15_____          _____
Date                                          GARY C. RIKARD
                                              Mississippi Department of Environmental
                                              Quality
                                              Executive Director
                                              P.O. Box 2261
                                              Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

*15 September 2015*
_____
Date

_____

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____

ANNE L. IDSAL
Texas General Land Office
Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____9/15/15_____
Date

ANNE L. IDSAL
Texas General Land Office
Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

ANNE L. IDSAL
Texas General Land Office
Chief Clerk
P. O. Box 12873
Austin, Texas 78711

**SEP 1 5 2015**
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Pelagic Longline Bycatch Reduction Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

17 Sept 2015
_____
Date

17 SEPT 2015
_____
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:                    Jean Martin, *or successor attorney assigned to manage Deepwater Horizon Natural Resource Damage Claims*
Address:                 BP Legal Department
                         501 Westlake Park Blvd
                         Houston, Texas 77079
Telephone Number:        832-619-5239
Facsimile Number:        281-366-7578

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Pelagic Longline Bycatch Reduction Project

## 1.0     INTRODUCTION

This document describes the Pelagic Longline Bycatch Reduction Project (the "Early Restoration Project" or "PLL Project" in this Appendix) to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of a Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The NOAA Pelagic Longline Bycatch Reduction Project is intended to restore pelagic fish biomass through actions that are expected to reduce fish mortality from bycatch and regulatory discards in the U.S. Atlantic pelagic longline fishery operating in the Gulf of Mexico (the "GOM PLL fishery"). The GOM PLL fishery primarily targets yellowfin tuna and swordfish, but incidentally catches and discards other fish, including marlin, sharks, bluefin tuna (which, by regulation, is not a target of fisheries in the GOM), , as well as smaller individuals of the target species. In addition to bycatch of fish, PLL gear may also interact with protected species such as dolphins and sea turtles.

The GOM PLL fishery  uses pelagic longline gear to target yellowfin tuna and swordfish. Longlining employs a main line from which individual hooks are suspended at intervals of 250 to 350 feet, along main lines ranging from 20 to 40 miles in length. . Pelagic longline gear is indiscriminate and results in the catch of non-target species. Due to the soak time of the gear, bycatch and regulatory discards are often dead when the gear is hauled.

The Pelagic Longline Bycatch Reduction Project (PLL Project) aims to reduce bycatch associated with the GOM PLL fishery and includes two integrated actions. The first action is a compensation-based voluntary  annual 6-month repose from PLL fishing in the GOM, to coincide with bluefin tuna spawning season. . During the repose period, participating fishermen could continue to fish for yellowfin tuna and swordfish using the alternative fishing gear types described below.

The second action comprising the PLL Project is the provisioning of two alternative gear types to PLL fishermen participating in the repose period: greenstick gear or buoy gear. Green-stick gear is trolled to target yellowfin tuna.  Buoy gear is set to target swordfish. These two fishing gear types have been widely discussed for their potential effectiveness in reducing the dead discards associated with directed fisheries for yellowfin tuna and swordfish in the Gulf of Mexico. Both types are in use in other regions of the U.S. Atlantic Highly Migratory Species (HMS) fishery, but are used much less by fishermen

16

in the GOM.  Both have been the topic of recent gear-efficiency and bycatch experiments using observers on commercial fishing vessels. The goal of providing alternative gears for use during a PLL repose period is to reduce adverse financial impact to fishers and help maintain local economies during the PLL repose periods. As part of the project, technical extension services (research, outreach, and training on the use of the alternative gear types) will be provided to participants to educate users and tune alternative gear to maximize effectiveness.

The duration of the PLL Project is dependent upon the number of fishermen volunteering to participate each year, but is expected to be in place from 5 to 10 years.  The first year would target establishing contracts and/or other arrangements necessary to support implementation. In the following years, fishers would participate in the voluntary PLL repose and implement use of the alternative gears. A larger number of project participants would result in expenditures and benefits over a shorter period.

The PLL Project will include monitoring of the GOM PLL fishery during the repose (through the routine ongoing observer coverage of the fishery conducted by the NMFS Pelagic Observer Program), monitoring of vessels that transition to green-stick and buoy gear (through additional observer coverage included as part of the PLL Project), and comparison of the catch and bycatch of PLL and green-stick / buoy gear operations.

## 3.0     PROJECT IMPLEMENTATION

### 3.1     Performance Criteria, Monitoring and Maintenance

Project performance will be assessed as defined in Section 14.1.4 of the Phase IV Early Restoration Plan and Environmental Assessments (the "Phase IV Plan").


Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 14.1.4 of the Phase IV Plan have been met.

### 3.2     Estimated Project Costs – Pelagic Longline Bycatch Reduction Project

The total estimated cost to implement the Pelagic Longline Bycatch Reduction Project is $20,000,000, consistent with Section 14.1.7of the Phase IV Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Phase IV Early Restoration Plan and Environmental Assessments ("Phase IV Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## NRD OFFSETS FOR PELAGIC LONGLINE BYCATCH REDUCTION PROJECT

The NRD Offsets are:

A.  Discounted kilogram (Dkg) in the Gulf of Mexico for the fishery categories as set forth below:

- For the Bluefin Tuna category, NRD Offsets are 50,500 Dkg of Bluefin Tuna in the Gulf of Mexico. These Offsets are only applicable to Bluefin Tuna injuries in the Gulf of Mexico, as determined by the Trustees' total assessment of injury for the Oil Spill.

- For the Deepwater Fish category, NRD Offsets are 47,620 Dkg of Deepwater Fish in the Gulf of Mexico. These Offsets are only applicable to Deepwater Fish injuries in the Gulf of Mexico, as determined by the Trustees' total assessment of injury for the Oil Spill.

- For the Shark category, NRD Offsets are 206,312 Dkg of Shark in the Gulf of Mexico. These Offsets are only applicable to Shark injuries in the Gulf of Mexico, as determined by the Trustees' total assessment of injury for the Oil Spill.

- For the Tuna/Mackerel/Billfish category, NRD Offsets are 395,328 Dkg of Tuna/Mackerel/Billfish in the Gulf of Mexico. These Offsets are only applicable to Tuna/Mackerel/Billfish injuries in the Gulf of Mexico, as determined by the Trustees' total assessment of injury for the Oil Spill.

- For the Jacks & Related Fishes category, NRD Offsets are 240 Dkg of Jacks & Related Fishes in the Gulf of Mexico. These Offsets are only applicable to Jacks & Related Fishes injuries in the Gulf of Mexico, as determined by the Trustees' total assessment of injury for the Oil Spill.

The above fishery categories are as defined in Appendix D (Glossary of Terms).

B.  Adult dolphin mortalities avoided as set forth below:

- NRD Offsets are two (2) discounted adult Risso's dolphin mortalities avoided. These Offsets are only applicable to Risso's dolphin injuries in the Gulf of Mexico, as determined by the Trustees' total assessment of injury for the Oil Spill.

- NRD Offset is one (1) discounted adult bottlenose dolphin mortality avoided. These Offsets are only applicable to bottlenose dolphin injuries in the Gulf of Mexico, as determined by the Trustees' total assessment of injury for the Oil Spill.

- NRD Offset is one (1) discounted adult pantropic spotted dolphin mortality avoided.  These Offsets are only applicable to pantropic dolphin injuries in the Gulf of Mexico, as determined by the Trustees' total assessment of injury for the Oil Spill.

C.   Leatherback Sea Turtle adult mortalities avoided:

- NRD Offsets are 2.6 discounted adult Leatherback Sea Turtle mortalities avoided. These Offsets are only applicable to leatherback sea turtles injuries in the Gulf of Mexico, as determined by the Trustees' total assessment of injury for the Oil Spill.

For the purposes of applying the NRD Offsets to the calculation of injury, the Parties agree as follows:

For purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by this Early Restoration Project are the Coastal Protection and Restoration Authority of Louisiana, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Natural Resources, the Louisiana Department of Wildlife and Fisheries, the Louisiana Department of Environmental Quality, the Alabama Department of Conservation and Natural Resources, the Geological Survey of Alabama, the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, the Mississippi Department of Environmental Quality, the Texas Parks and Wildlife Department, the Texas General Land Office, the Texas Commission on Environmental Quality, DOI, EPA, NOAA and USDA.

# APPENDIX D

# GLOSSARY OF TERMS

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

**Bluefin Tuna** means: *Thunnus thynnus*

**Deepwater Fish** means species contained within the following families: Alepisauridae, Anoplogastridae, Moridae, Sternoptychidae, Stomiidae, Bathylagidae, Myctophidae, Gonostomatidae, Bramidae, Bregmacerotidae, Diceratiidae, Caristiidae, Caulophrynidae, Ceratiidae, Chiasmodontidae, Evermannellidae, Alepocephalidae, Nomeidae, Derichthyidae, Diretmidae, Saccopharyngidae, Melanostomiidae, Macrouridae, Giganturidae, Platytroctidae, Howellidae, Hygophum, Phosichthyidae, Luvaridae, Melamphaidae, Melanonidae, Microstomatidae, Mirapinnidae, Nemichthydae, Omosudidae, Oneirodidae, Paralepididae, Leptochilichthyidae, Echeneidae, Rhinochimaeridae, Scopelarchidae, Serrivomeridae, Tetragonuridae, Trachipteridae, Gempylidae, Scombrolabracida; and other deepwater fish of the same trophic level within the pelagic long-line fishery in the Gulf of Mexico.

**Discounted dolphin and sea turtle adult avoided mortalities** are expressed in present value 2010 avoided mortalities.

**Discounted Kilograms** are expressed in present value 2010 kilograms.

**Jacks and Related Fishes** means species contained within the following families: Albulidae, Carangidae, Elopidae, Pomatomidae, Rachycentridae, Megalopidae

**Sharks** means species contained within the following families: Alopiidae, Scyliorhinidae, Carcharhinidae, Odontaspididae, Centrophoridae, Etmopteridae, Ginglymostomatidae, Lamnidae, Mitsukurinidae, Triakidae, Rhincodontidae, Sphyrnidae, Squalidae, Squatinidae

**Tuna, Mackerels and Billfish** means species contained within the following families: Scombridae (except *Thunnus thynnus*), Coryphaenidae, Istiophoridae, Xiphiidae