Audio Start: __14:10 hours__   Audio Stop: __15:05 hours__   Audio Total: __00:49:36__

# RECORDED STATEMENT SUMMARY

Statement of:      <u>Victor Tran</u>

EXHIBIT G

- Victor Tran and his attorney, Craig Coleman, were both present for the recorded statement, and they provided permission for the recorded statement.
- Victor Tran stated he was able to read and write the English language.
- He stated he was not under the influence of any drug or medication which would alter his ability to understand and answer the questions being asked.
- He understood to answer truthfully to the best of his recollection.
- He stated his full name was Loc Chanh Tran.
- He stated he and his brothers, Sinh Tran and Christopher Tran, owned Titan Seafood Co.
- He stated he began working at Titan Seafood Co. in 2005.
- He advised he runs the daily operations of the company, manages, buys, and sells.
- He stated Titan Seafood Co. was located at 3931 South Martin Luther King Drive, Port Arthur, Texas, 77642, and it was the only location.
- He advised he was familiar with the fishing vessel, Lady Kathleen, and advised he knew the owner of the vessel, Ngoc Xuan Lam. He stated Ngoc Xuan Lam is female.
- He advised the captain of the vessel is his brother, the Claimant.
- He stated he conducted business and wrote invoices for the vessel in 2007, 2008, and 2009; however, he was unsure about 2010.
- Victor Tran reviewed *Attachment 24*, and stated he recognized the documents. He stated he or Cindy at Titan Seafood Company's office prepared the documents.
- He stated the documents were prepared on May 30th, June 18th, June 29th, July 7th, August 10th, September 10th, October 10th, and November 21st of 2007.
- He stated he was present when the invoices were prepared. He provided copies to the captain of the vessels and the owners of the vessel from whom he purchased seafood.
- He advised he provided the copies of the trip tickets when they offloaded the seafood from the vessel.
- He advised copies of the invoices were provided prior to the vessel departure. He stated the vessel remained at the dock for an entire week on occasion.

- He stated the invoices were not issued after the vessels departed the facility.
- He advised all information was correct.
- He stated he maintained copies of the trip tickets issued to Lady Kathleen from 2007; however, he was unable to provide copies due to the hurricane destroying most of their paperwork.
- He stated the trip tickets represented all landings the vessel made in 2007.
- He did not understand the meaning of separate landings. Attorney Coleman stated he believed one landing was equal to one trip; therefore, Mr. Tran stated the trip tickets represented separate landings made by the vessel.
- Victor Tran advised he provided copies of the trip tickets to the National Oceanic and Atmospheric Administration.
- He was unable to provide a reason as to why no captain name or commercial license number was listed on the trip tickets. He stated the license number was listed in the folder, not on the invoice.
- He advised his brother, the Claimant, was the captain of the Lady Kathleen in 2007.
- Victor Tran stated the Claimant had legal interest in Titan Seafood.
- He advised the Texas shrimping season began July 15th of every year, and the freezer vessel was out on the water any time. He advised some vessels go out in April, some in May, and all go out by June. The vessels return before the New Year.
- He stated Titan Seafood Co. had a landing dock on the premises.
- He verified the trip tickets for the Lady Kathleen in 2007 totaled $393,886.65, and stated the figure was accurate.
- He advised Titan Seafood Co. paid the trip tickets in cash, fuel, and paid the crews on occasion. He stated most all of the trip tickets were paid in cash.
- He advised approximately half of each invoice was paid in cash each time. He stated it was documented; however, the hurricane destroyed all records. He stated he paid the vessel's fuel prior to departure; therefore, when the vessel returned, he recovered the fuel money.
- He stated he did not believe he ever paid the vessel, Lady Kathleen, by check; however, if so, he would provide copies of the bank statements.
- He stated the last time he conducted business with Lady Kathleen was 2010, and he advised the vessel was still at his dock.

- He stated Titan Seafood Co. was formatted differently on each trip ticket for 2007 due to possibility utilizing a different computer; however, he was not certain. He stated the trip tickets were definitely his invoices.
- He was unable to explain the reason Port Arthur was incorrectly spelled within the header of the trip tickets. He signed and dated the forms.
- Victor Tran reviewed *Attachment 27*, and stated he or Cindy prepared the documents.
- He stated he was present when the invoices were prepared. He provided copies to the captain of the vessels and the owners of the vessel.
- He advised he provided the copies of the trip tickets when they offloaded the seafood from the vessel.
- He advised copies of the invoices were provided prior to the vessel departure. The vessel remained at the dock for an entire week on occasion.
- He stated the invoices were not issued after the vessels departed the facility.
- He advised all information was correct.
- He stated he maintained copies of the trip tickets issued to Lady Kathleen from 2008; however, he was unable to provide copies due to the hurricane destroying most of their paperwork.
- He stated the trip tickets represented all landings the vessel made in 2008.
- He stated the trip tickets represented separate landings made by the vessel.
- Victor Tran advised he provided copies of the trip tickets to the National Oceanic and Atmospheric Administration.
- He was unable to provide a reason why no captain name or commercial license number was listed on the trip tickets. He stated the license number was listed in the folder not on the invoice.
- He advised his brother, the Claimant, was the captain of the Lady Kathleen in 2008.
- Victor Tran stated the Claimant had legal interest in Titan Seafood.
- He advised the Texas shrimping season began July 15th of every year, and the freezer vessel was out on the water anytime. He advised some vessels go out in April, some in May, and all go out by June. The vessels return before the New Year.
- He stated Titan Seafood Co. had a landing dock on the premises.
- He verified the trip tickets for the Lady Kathleen in 2007 totaled $467,067.86, and stated the figure was accurate.

- He advised Titan Seafood Co. paid the trip tickets in cash, fuel, and paid the crews on occasion. He stated most all of the trip tickets were paid in cash.
- He advised approximately half of each invoice was paid in cash each time. He stated it was documented; however, the hurricane destroyed all records. He stated he paid the vessel's fuel prior to departure; therefore, when the vessel returned, he recovered the fuel money.
- He stated he did not believe he ever paid the vessel, Lady Kathleen, by check; however, if so, he would provide copies of the bank statements.
- He stated the last time he conducted business with Lady Kathleen was 2010, and he advised the vessel was still at his dock.
- He stated Titan Seafood Co. was formatted differently on each trip ticket for 2007 due to possibility utilizing a different computer; however, he was not certain. He stated the trip tickets were definitely his invoices.
- He was unable to explain the reason Port Arthur was incorrectly spelled within the header of the trip tickets. He stated it was most likely an office error. He signed and dated the forms.
- He stated his trip tickets can be identified by the palette ID number indicated on each invoice.
- Victor Tran reviewed *Attachment 30,* and stated he or Cindy at his office prepared the forms.
- He stated he was present when the invoices were prepared. He provided copies to the captain of the vessels and the owners of the vessel.
- He advised he provided the copies of the trip tickets when they offloaded the seafood from the vessel.
- He advised copies of the invoices were provided prior to the vessel departure. The vessel remained at the dock for an entire week on occasion.
- He stated the invoices were not issued after the vessels departed the facility.
- He advised all information was correct.
- He stated he maintained copies of the trip tickets issued to Lady Kathleen from 2009, and he could provide copies if necessary.
- He stated the trip tickets represented all landings the vessel made in 2009.
- He stated the trip tickets represented separate landings made by the vessel.
- He stated the Lady Kathleen had fewer landings in 2009 than the previous years.
- Victor Tran advised he provided copies of the trip tickets to the National Oceanic and Atmospheric Administration.

- He was unable to provide a reason why no captain name or commercial license number was listed on the trip tickets. He stated the license number was listed in the folder not on the invoice.
- He advised his brother, the Claimant, was the captain of the Lady Kathleen in 2009.
- Victor Tran stated the Claimant had legal interest in Titan Seafood.
- He advised the Texas shrimping season began July 15th of every year, and the freezer vessel was out on the water anytime. He advised some vessels go out in April, some in May, and all go out by June. He stated the vessels return before the New Year.
- He stated Titan Seafood Co. had a landing dock on the premises.
- He verified the trip tickets for the Lady Kathleen in 2009 totaled $46,533.24 and stated the figure was accurate.
- He advised Titan Seafood Co. paid the trip tickets in cash, fuel, and paid the crews on occasion. He stated most all of the trip tickets were paid in cash.
- He advised approximately half of each invoice was paid in cash each time. He stated it was documented; however, the hurricane destroyed all records. He stated he paid the vessel's fuel prior to departure; therefore, when the vessel returned, he recovered the fuel money.
- He stated he did not believe he ever paid the vessel, Lady Kathleen, by check; however, if so, he would provide copies of the bank statements.
- He stated he still conducted business with Lady Kathleen today, and he advised the vessel was still at his dock.
- He stated Titan Seafood Co. was formatted differently on each trip ticket for 2009 due to possibility utilizing a different computer; however, he was not certain. He stated the trip tickets were definitely his invoices.
- He was unable to explain the reason Port Arthur was incorrectly spelled within the header of the trip tickets. He stated it was most likely an office error. He signed and dated the forms.