UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 |
| This Document Relates To: | * | SECTION: J |
| *No. 12-970* | * | JUDGE BARBIER |
| | * | MAG. JUDGE SHUSHAN |

## ORDER & REASONS

Before the Court is the **Motion of the Deepwater Horizon Economic Claims Center ("DHECC") for Return of Payments Made to Vernon Alfonso, Jr. ("Alfonso") and Others (Rec. Doc. 14259)** and related briefing (Alfonso Opp'n, Rec. Doc. 14573; DHECC Reply, Rec. Doc. 14677; Class Counsel's Submission, Rec. Doc. 14693; Alfonso Sur-Reply, Rec. Doc. 14772). The motion asserts that Alfonso submitted fraudulent claims to the DHECC, which the DHECC paid, and seeks an order requiring Alfonso to make restitution, among other relief. For the reasons set forth below, the Court will grant the motion.

## BACKGROUND

This Order & Reasons largely assumes the reader's familiarity with the 2010 Gulf oil spill, MDL 2179, the *Deepwater Horizon* Economic and Property Damages Settlement ("Settlement," Rec. Doc. 6430), the Seafood Compensation Program (Settlement, Ex. 10), and the DHECC. On July 18, 2012, Alfonso filed a shrimp boat captain claim and a shrimp vessel owner claim with the DHECC. Alfonso requested that his claims be calculated using the Expedited Compensation Method with 2009 as the benchmark period. The Expedited Compensation Method determines a claim's value from set figures based upon the claimant's

vessel size, provided that the vessel's earnings from commercial shrimping meet a certain "qualifying vessel revenue" for the benchmark year(s). (*See* Settlement, Ex. 10 at 8-13.) Because Alfonso owned a 37-foot vessel, he needed at least $40,000 in shrimping revenue in order to qualify for awards of $107,250 on his captain claim and $135,281 on his vessel owner claim. (Settlement, Ex. 10 at 8 tbl.2.) If Alfonso did not meet the $40,000 threshold, he would not receive payment under the Expedited Compensation Method.

The terms of the Expedited Compensation Method provides two alternative methods to support a claim: trip tickets or tax returns. (Settlement, Ex. 10 at 10-12.) A claimant who relies on tax returns, as did Alfonso, must also submit sufficient documentation to identify which components of his or her earnings were derived from shrimping, as opposed to some other source of revenue. (*Id.*) Alfonso submitted to the DHECC his 2009 Form 1040 federal income tax return with two attached Schedule Cs.[1] One of the Schedule Cs reported $46,434 in gross receipts and listed Alfonso's principal business as "commercial fisherman." (Motion, Ex. B, Rec. Doc. 14259-4.) The other Schedule C reported $26,630 in gross receipts and listed Alfonso's principal business as "construction." (*Id.*) Together, these documents evince that Alfonso had $73,064 in gross income in 2009. Alfonso also submitted a "Sworn Written Statement," which asserted that he landed $46,434 in shrimp in 2009—the same amount listed in his "commercial fisherman" Schedule C. (Motion, Ex. D, Rec. Doc. 14259-6.) The Sworn Written Statement contains the following certification:

> I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that all the Information I have provided in this Statement (and in any pages I have attached to or submitted with this Statement to provide additional information requested in this Statement) is true and accurate to the best of my knowledge, and that supporting documents attached to or submitted with this Statement and the Information contained therein are true, accurate, and complete to the best of my knowledge . . . .

---

[1] A Schedule C reports profit or loss from a business operated as a sole proprietorship.

2

(Motion, Ex. D, Rec. Doc. 14259-6.)

The DHECC found Alfonso exceeded $40,000 in commercial shrimping revenue and therefore eligible for compensation under the Expedited Compensation Method. On March 14, 2013, the DHECC paid Alfonso $107,250.00 on his shrimp boat captain claim and $80,545.87 on his shrimp vessel owner claim (after applying an offset for prior spill-related payments), for a total payment of $187,795.87. The two law firms that represented Alfonso on a contingent fee basis, Faegre Baker Daniels LLP and Kreller Law Firm, received $46,948.96 of the $187,795.95.

### THE CLAWBACK MOTION AND ALFONSO'S RESPONSE

In September of 2013, the Court appointed a Special Master to, inter alia, examine and investigate past or pending claims submitted to the DHECC which are deemed suspicious and to initiate legal action to "clawback" the payment of fraudulent claims. (Rec. Doc. 11288 at 3.) This process eventually transitioned to the Claims Administrator for the DHECC. (Rec. Docs. 14514, 14543.) Following an investigation into Alfonso's claims with the DHECC, the Claims Administrator and the Special Master (collectively, the "Special Master") jointly filed on behalf of the DHECC the instant clawback motion.

The thrust of the Special Master's motion is that Alfonso misrepresented the extent of his shrimping revenue so as to meet the "qualifying vessel revenue" threshold of $40,000. Although Alfonso claimed to have earned $46,434 from shrimping in 2009, Alfonso's bank records and a worksheet created by Alfonso's tax accountant reveal that $22,250 of the $46,434 came from Frank & Son Boat Rental, Inc. ("Frank & Son"), a boat rental business that typically provided vessels for use in connection with seismographic work. It is undisputed that the revenue Alfonso received from Frank & Son does not constitute shrimping revenue and should not have counted toward the "qualifying vessel revenue" under the Expedited Compensation Method. The Special

3

Master asserts that because only $24,184 of the $46,434 actually came from shrimping, Alfonso's claims should not have been paid.

To further support the fraud claim, the Special Master points out that before Alfonso filed his claims with the DHECC, he submitted to the Gulf Coast Claims Facility ("GCCF")[2] a 2009 Form 1040 federal tax return that contained only *one* Schedule C which reported $73,064 in gross receipts from work as a "commercial fisherman & construction." As explained above, the tax return submitted to the DHECC contained two Schedule Cs, which divided the gross receipts between "commercial fishman" and "construction." The Special Master claims that "Alfonso had new 2009 Schedule C's prepared to support his shrimping revenue claim, yet he included non-seafood revenue from his work at Frank & Son on the new documents and on his [Sworn Written Statement]." (Motion at 7, Rec. Doc. 14259-1.)

The Special Master also asserts that Alfonso lied while under oath. According to the Special Master, Alfonso told investigators during a sworn interview that he did not work for or receive any income from Frank & Son in 2009, when in fact Alfonso's bank records show he had income from Frank & Son in 2009. The Special Master also contends that Alfonso lied when he told investigators he was unaware of how revenue from Frank & Son came to be included on the "fishing" Schedule C prepared by his tax accountant, as this statement is contradicted by his tax accountant's statements.

The Special Master concludes that, taken together, the above factors demonstrate that Alfonso's shrimping claims were fraudulent. The Special Master requests that Alfonso be required to return the payments he received from the DHECC and barred from participating in any future seafood distributions. The Special Master also requests that the professionals who helped Alfonso submit his claims be ordered to return any payment received based on Alfonso's

---

[2] The GCCF is the settlement program that preceded the DHECC.

claims.  The Special Master also seeks to recover costs for obtaining the transcript of the Alfonso's tax accountant and Alfonso.

In response, Alfonso does not dispute that his shrimping claims improperly included non-shrimping income—i.e., the $22,250 from Frank & Son.  However, Alfonso contends that the inclusion of this amount was an innocent mistake, not fraud, of which he was not aware until the Special Master's investigation.  Thus, Alfonso argues that the Special Master has not met his burden with respect to two of the elements of fraud: (1) that Alfonso knew or believed that his representation to the DHECC was false and (2) that Alfonso intended to induce the DHECC to act in reliance on the misrepresentation.

Alfonso recounts the events as follows:   In 2010 Alfonso submitted a claim to the GCCF that included a single "commercial fisherman & construction" Schedule C for 2009 that aggregated both shrimping income and non-shrimping income.  The GCCF requested that Alfonso segregate these amounts.  Alfonso then asked his tax accountant to separate the construction revenue from shrimping revenue.  In December 2010, the tax accountant created two new Schedule Cs by subtracting Alfonso's construction income from the original Schedule C.  Alfonso claims that he and his tax accountant did not discuss how the Frank & Son income should be allocated and the tax accountant simply assumed that Alfonso's work for Frank & Son was from fishing/shrimping.  The new Schedule Cs were then submitted to the GCCF, and later to the DHECC, without Alfonso ever giving thought to whether the Frank & Son income was included in the "commercial fisherman" Schedule C. Per Alfonso's declaration submitted with his response, "This mistaken inclusion of Frank & Son payments on the Fishing Schedule C may have resulted from a lack of communication between me and Ms. Flowers [the tax accountant],

but I never intended that she include Frank & Son payments on the Fishing Schedule C, and I did not know that she did so."  (Alfonso Opp'n, Ex. A ¶ 18, Rec. Doc. 14573-1.)

As to the claim that Alfonso lied during his sworn interview, Alfonso responds that he truthfully stated that he did not work for Frank & Son in 2009.  He claims that he worked for Frank & Son in 2006 and for two days in 2007, and that the $22,250 he received from Frank & Son in 2009 was for work he performed in 2006 or 2007.  Alfonso also urges that he never testified that he did not receive income from Frank & Son in 2009; rather, he said that he did not *recall* at the time of the interview receiving this income, which is truthful.  Alternatively, Alfonso contends that to the extent his testimony suggests that he was not paid by Frank & Son in 2009, when in fact he was, this suggestion was unintentional.

## DISCUSSION

The Court has now issued rulings on several of the Special Master's clawback motions.  Some of the issues raised in the present motion are identical or nearly identical to issues addressed in these prior orders.  In the interest of brevity, the Court will sometimes cite to those opinions (e.g., "Thonn Order" or "Zirlott Order") in lieu of repeating itself.

The Court has subject matter jurisdiction over this matter for reasons explained in previous clawback orders.  (Thonn Order at 10-12, Rec. Doc. 12794; Zirlott Order at 3, Rec. Doc. 14752.)  Motions of this sort are in the nature of the proper administration of a settlement program under the Court's exclusive control and jurisdiction; the Court's power to order equitable remedies as a result of fraudulent conduct is broad, flexible, and long-standing.  (Thonn Order at 13-14.)  The overarching issue is whether there is a genuine dispute as to a material fact regarding whether Alfonso's DHECC claims were fraudulent.  (*See* Thonn Order at 17 (noting that an evidentiary hearing is unnecessary when there are no material facts in dispute);

Parker Order at 4-5, Rec. Doc. 15325 (applying Rule 56 analysis).) More specifically, in order for the Special Master's motion to succeed, there must be no genuine dispute that (1) Alfonso made a false representation, (2) Alfonso knew or believed that the representation was false, or had an insufficient basis to make the representation, (3) Alfonso intended to induce the DHECC to act in reliance on the information, (4) the DHECC justifiably relied on Alfonso's representation, and (5) damage resulted from the reliance. *See Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, 926 F. Supp. 2d 858, 862 (E.D. La. 2013).

It is undisputed that Alfonso claimed in his Sworn Written Statement to have earned $46,434 from shrimping in 2009, when only $24,184 of this amount actually came from shrimping. It is similarly undisputed that the Schedule C Alfonso provided to the DHECC reported $46,434.00 in "commercial fish[ing]" revenue, when only $24,184 of this amount actually came from shrimping. Thus, Alfonso falsely represented to the DHECC that his shrimping income was nearly double what it actually was and exceeded the "qualifying vessel revenue" under the Expedited Compensation Method. Furthermore, there is no dispute that the DHECC justifiably relied on and was damaged by those misrepresentations, as the DHECC would not have paid Alfonso's claims under the Expedited Compensation Method if Alfonso had not represented that he had over $40,000 in shrimp revenue.[3]

As to whether Alfonso knew that his representations were false, that element is established by the evidence. During an in-person interview with the Special Master's representatives, Alfonso's tax accountant repeatedly stated under oath that Alfonso and/or his wife, who accompanied Alfonso to meet with the tax accountant, provided the information she used to prepare the original 2009 tax return containing the single, "commercial fisherman &

---

[3] Because the Seafood Compensation Fund is a "capped" settlement, paying Alfonso's claim also reduced the amount the other seafood claimants would receive. Therefore, Alfonso's misrepresentation also harmed the other seafood claimants.

construction" Schedule C.[4]  Specifically, Alfonso and/or his wife told the tax preparer that he earned $24,184 from shrimping, $22,250 from Frank & Son, and $26,630 from construction.[5] Alfonso similarly admitted during his sworn interview that he provided the income information his tax preparer used to prepare his original 2009 tax return.[6]  Therefore, Alfonso knew that he earned $24,184 from shrimping in 2009, not $46,434.  Likewise, Alfonso knew that the representations to the DHECC that he earned $46,434 from commercial shrimping—nearly double what he actually earned—was false.

The evidence similarly established that Alfonso intended to induce the DHECC to rely on his misrepresentation.  The terms of the Settlement are clear:  Alfonso had to submit documentation showing that he earned over $40,000 from shrimping or else his claim would not be paid under the Expedited Compensation Method.  Alfonso submitted the "Sworn Written Statement" wherein he claimed to earn more than $40,000 from shrimping, as well as the inflated "commercial fisherman" Schedule C.  Alfonso's intent is also shown in a fax he sent to his attorney on June 11, 2012, approximately one month before he filed his claim, in which he stated, "I spoke with my tax accountant and she separated my shrimping and construction income on my schedule C Forms.  I am sending these papers to you.  ***Hopefully this will be***

---

[4] (Flowers Tr. 58:14-59:7, 79:1-:7, 80:6-:19, 86:18-87:1, 88:2-88:4, 104:2-:9, 118:21-120:6, 133:15-134:7, 135:9-136:4, Rec. Doc. 14259-7.)

[5] (*Id.*)  During the sworn interview, the tax accountant repudiated her written declaration, which was drafted by Alfonso's attorney (*e.g.*, Flowers Tr. 69:4-:9), insofar as it stated that she did not receive income information from Alfonso in the course of preparing his original 2009 tax return (s*ee, e.g.*, Flowers Tr. 77:24-79:7, 84:19-85:3).  The tax accountant also refused to sign a prior version of the declaration that stated a software error caused the Frank & Son revenue to be included in Alfonso's 2009 taxes.  (Flowers Tr. 58:1-59:10, 133:15-134:9.)

[6] (Alfonso Tr. 89:8-:24, 101:25-102:25, 111:5-:7, 113:5-:15, 119:5-:19, 194:9-:12.)  At one point during his interview Alfonso claimed that he did not tell his tax accountant that he earned $22,250 from Frank & Son in 2009. (Alfonso Tr. 123:4-:14.)  In nearly the same breath, however, Alfonso stated that he would "supply [the tax accountant] with my 1099s, and my income and shrimp or anything—any kind of other earnings, besides the 1099s, I just give it to [the tax accountant] altogether," (Alfonso Tr. 122:25-123:3), which is consistent with his statements cited at the start of this footnote.  The documentary evidence provided to the Court similarly establishes that Alfonso received $22,250 from Frank & Son in 2009 (Motion, Ex. H, Rec. Doc. 14259-10), and Alfonso does not dispute the Special Master's assertion that Alfonso's bank records generally conform to the other revenue figures contained in the tax accountant's 2009 records (Motion at 6).

*sufficient in helping with my claim.*" (Motion, Ex. C, Rec. Doc. 14259-5 (emphasis added).) Thus, Alfonso understood that shrimping revenue was critical to his claim and, as explained, Alfonso knew that the actual amount of his shrimping revenue was approximately half of what he represented it to be.

Thus, the Special Master has presented clear and convincing evidence of Alfonso's fraud. In light of this, Alfonso's assertions that he did not know his shrimping claims included non-shrimping revenue and that he did not intend to defraud the DHECC are insufficient to create a genuine dispute as to a material fact or to otherwise defeat the Special Master's motion. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("As we have emphasized, [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. [T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (citations and quotations omitted; emphasis in original)); *Bartucci v. Jackson*, No. 04-2977, 2006 WL 2631925, at *5 (E.D. La. Sept. 13, 2006) (collecting cases where a party's own affidavit, deposition, or verified pleadings were insufficient to defeat summary judgment when the statements are self-serving and conclusory). The Court further finds that restitution is proper

9

under the circumstances, both from Alfonso and from the law firms that represented him on a contingent fee basis. (*See* Thonn Order at 21-26; Burrle Order at 5-6, Rec. Doc. 14747.)[7]

## CONCLUSION

For the reasons above,

IT IS ORDERED that the Motion of the Deepwater Horizon Economic Claims Center for Return of Payments Made to Vernon Alfonso, Jr. and Others (Rec. Doc. 14259) is GRANTED.

The Court will enter a judgment vacating Alfonso's claim awards; requiring Alfonso to make restitution to the DHECC in the amount of $187,795.87, plus post-judgment interest and costs; and barring Alfonso from participating in any further distributions under the DHECC Seafood Compensation Program. The judgment will also require the law firms of Faegre Baker Daniels LLP and the Kreller Law Firm to make restitution to the DHECC in the amount of $46,948.96, plus post-judgment interest, and hold these law firms liable, jointly and severally, with Alfonso up to this amount. In no event shall the total restitution payable to the DHECC exceed $187,795.87.

New Orleans, Louisiana, this 29th day of September, 2015.

United States District Judge

---

[7] The Special Master's reply, Alfonso's sur-reply, and Class Counsel's submission also raise the issue of whether the Special Master's motion may be granted absent a showing of fraud on the part of the claimant. The Court need not address this here, as it has concluded that there is no genuine dispute as to a material fact that Alfonso has committed fraud.