# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico 2010** | ) 2:10-md-02179-CJB-SS ) ) ) SECTION J (Barbier) ) |
| **This Document Applies To:** | ) MAGISTRATE 1 (Shushan) ) ) |
| **No. 10-2771, In re: The Complaint of Triton Leasing GmbH, et al.** | ) ) ) ) |
| **NO. 2:13-cv-01556 -CJB-SS, Town of Grand Isle and Grand Isle Independent Levee District vs. BP Exploration and Production, Inc., et al,** | ) ) ) ) ) |
| **NO. 2:10-cv-09999-CJB-SS , In re: Oil Spill by "Deepwater Horizon" (Rec. Doc 349, 350 & 364)** | ) ) ) ) |
| **and** | ) ) |
| **NO.  2:11-cv-00893-CJB-SS, Town of Grand Isle, et al  vs. BP Exploration and Production, Inc., et al** | ) ) ) |

## SECOND AMENDED, SUPPLEMENTAL, RESTATED AND CONSOLIDATED COMPLAINT FOR DAMAGES AND JURY TRIAL REQUEST

The Second Amended, Supplemental, Restated and Consolidated Complaint ("Amended and Supplemental Complaint") of the Town of Grand Isle and the Grand Isle Independent Levee District (collectively "Grand Isle" or "Plaintiff"), for damages caused by the April 20, 2010

{N1065671 -}

blowout, explosions and resulting oil spill in the Gulf of Mexico (the "Spill") involving the Mobil Offshore Drilling Unit DEEPWATER HORIZON ("HORIZON") respectfully represents as follows:

1.

Made defendants (collectively "Defendants") herein are:

(A) BP EXPLORATION AND PRODUCTION, INC. ("BPXP"), a foreign corporation doing business in the State of Louisiana;

(B) BP, PLC ("BPPLC"), a foreign corporation doing business in the State of Louisiana;

(C) BP AMERICA PRODUCTION COMPANY ("BPAPC"), a foreign corporation doing business in the State of Louisiana (BPXP, BPPLC and BPAPC are sometimes collectively referred to as "BP" herein);

(D) HALLIBURTON ENERGY SERVICES, INC., ("HESI"), a foreign corporation doing business in the State of Louisiana;

(E) SPERRY DRILLING SERVICES, ("Sperry") a division of Halliburton, a foreign corporation doing business in the State of Louisiana (HESI and Sperry are sometimes referred to herein as "Halliburton");

(F) TRANSOCEAN HOLDINGS, INC., a foreign corporation doing business in the State of Louisiana;

(G) TRANSOCEAN DEEPWATER, INC., a foreign corporation doing business in the State of Louisiana; and

(H)   TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., a foreign corporation doing business in the State of Louisiana (the Transocean entities are collectively referred to herein as "Transocean").

2.

This Amended Complaint is being brought pursuant to this Court's Order dated August 28, 2015 (Rec. Doc 15269). Grand Isle has previously filed an Answer and Claims in the matter styled *In re: The Complaint of Triton Leasing GmbH, et al.,* bearing docket number 10-2771 (the "Limitation Action"); a Complaint in the matter styled *Town of Grand Isle and Grand Isle Independent Levee District vs. BP Exploration and Production, Inc., et al*, bearing docket number 2:11-cv-00893-CJB-SS (the "Original Complaint"); and a Complaint in the matter styled Town of *Grand Isle and Grand Isle Independent Levee District vs. BP Exploration Company, Inc.,* bearing docket number 2:13-cv-01556 (the "OPA Complaint").

The Town of Grand Isle also filed a Local Government Entity Short Form in matter number 2:10-cv-09999-CJB-SS (Rec Doc. 350) and the Grand Isle Independent Levee District filed two Local Government Entity Short Forms in matter number 2:10-cv-09999-CJB-SS (Rec Doc. 349) and (Rec. Doc. 364). Copies of these Short Form joinders are attached hereto as Exhibits "A", "B" and "C" respectively.

The purpose of this Amended and Supplemental Complaint is to consolidate and restate the claims and defenses previously asserted by Grand Isle in the Limitation Action, in its Original Complaint and in its OPA Complaint and to comply, as far as is deemed required, with this Court's August 28th, 2015 Order 2:10-md-02179-CJB-SS (Rec. Doc. 15269) concerning government entities that had filed Short Form joinders. This Amended Complaint is not intended nor should it be construed as a waiver of any claim or defense previously asserted by Grand Isle arising from the DEEPWATER HORIZON Spill.

{N1065671 -}

3.

This Court has jurisdiction pursuant to: (1) 28 U. S. C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is brought by a citizen of a state that is different from the state where at least one of the Defendants is incorporated or does business; (2) 28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United States of America and pursuant to the provisions of the general maritime law; and (3) under 33 U.S.C. § 2701 *et seq.,* the Oil Pollution Act ("OPA").

4.

Venue in this district is proper because the events or omissions giving rise to the claims asserted herein have occurred in this district and pursuant to 28 U.S.C. §1391.  Plaintiff designates this matter as a maritime claim under Rule 9(h) of the Federal Rules of Civil Procedure.

5.

Grand Isle hereby adopts by reference and incorporates herein as if specifically pled in their entirety paragraphs 164 (and preceding "Introduction"), 173, 178-188, 198-223-226, 227-516, 542-558, 563-567, 581-595, 659-710, 727-737 and 747-769 of the Voluntary Master Complaint, Cross Claim, and Third Party Complaint for Local Governmental Entities filed March 4, 2011 in MDL 2179, bearing docket No. 2:10-cv-02771 in the United States District Court for the Eastern District of Louisiana [R. Doc. 253].  Grand Isle also hereby adopts by reference and incorporates herein as if specifically pled in its entirety the Answer and Claims of the Grand Isle in the Limitation Action, the claims asserted by Grand Isle in its Original Complaint and OPA Complaint and the claims asserted in the Short Form joinders of the Town of Grand Isle and the Grand Isle Independent Levee District.

6.

BP, Transocean, and Halliburton are liable to Plaintiff for all damages caused by or resulting from the Spill including, but not limited to, physical damage to real and personal property; destruction of real and personal property; diminution in value of real and personal property; loss of tax revenue, income and use; costs of response, removal, restoration, and remediation; and other damages to be proven at trial pursuant to the provisions of the Oil Pollution Act (33 U.S.C. §§ 2701, *et seq.*) and under the general maritime law for the following reasons, to wit.

7.

On the evening of April 20, 2010, the HORIZON was located approximately 50 miles southeast of Venice, Louisiana, and was attempting to temporarily plug and abandon the deep water well known as the MACONDO, when it experienced a blowout, explosions and fire. Over the next eighty-seven (87) days, more than three (3) million barrels of oil discharged from the MACONDO well into the Gulf of Mexico, and caused the worst environmental disaster in the history of the United States. On the surface, the shifting smear of hydrocarbons was visible from outer space, at times covering tens of thousands of square miles, and spread with the wind and currents towards Louisiana's coastline, and, in particular, the beaches and shores of Grand Isle. Grand Isle was widely regarded as the epicenter of the disaster and, to this day, continues to suffer from re-oiling events directly related to the Spill.

8.

BP was the primary leaseholder of the MACONDO well and its responsibilities included assessing the geology of the site, engineering the well design, obtaining regulatory approvals for

{N1065671 -}

well operations, retaining and overseeing the project's contractor's, and working on various aspects of the well and drilling operations.

9.

Transocean was contracted by BP to drill the MACONDO well, which was located in approximately 5,000 feet of water. Transocean was also the owner and operator of the HORIZON and participated and directed various aspects of the drilling activities.

10.

HESI and its Sperry division were contracted by BP to provide cementing and mudlogging services, and their responsibilities included calculating the proper mud weight to drill the well, well monitoring to ensure safe drilling margins were being maintained, and formulating the cement slurry for the production casing and to plug the well for temporary abandonment.

11.

On February 22, 2012, the Court found BPXP to be a "responsible party" under OPA with respect to the subsurface discharge of oil resulting from the HORIZON disaster. (Rec. Doc. 5809).

12.

Grand Isle is a political subdivision of the State of Louisiana and was on the front lines of the oil spill, and the ensuing damages and clean-up operations following the blowout, explosion and sinking of the *Deepwater Horizon*. On January 18, 2013, Grand Isle complied with the presentment requirement necessary to state a claim under OPA against the judicially determined Responsible Party, BPXP, as provided in 33 U.S.C. §2713. BP has failed to respond to Grand Isle presentment despite the passage of the requisite time period.

{N1065671 -}

13.

A "Phase One" trial was held between February 25, 2013 and April 17, 2013 to address fault determinations for the loss of well control and resulting blowout. On September 14, 2014, the Court issued its Findings of Fact and Conclusions of Law from the Phase One Trial and apportioned fault under the general maritime law as follows:

a. 67% - BPXP and BPAPC;

b. 30% - Transocean; and

c. 3% - Halliburton.

The Court also determined that defendants' violations of federal regulations directly led to the blowout and explosions.

14.

With respect to BP, the Court made a factual finding that the BP Defendants' employees and personnel engaged in willful misconduct and acted recklessly with regard to the level of care required by the circumstances. The Court also found that the BP Defendants committed a series of negligent acts, some of which were designed to cut costs at the expense of safety, which taken together amounted to gross negligence. The Court determined that the gross negligence and reckless conduct of the BP and its employees directly led to the loss of well control, explosions and Spill.

15.

The Court found several instances where the conduct of the Transocean fell below the standard of care, including, but not limited to, the misinterpretation of the negative pressure test, failure to detect pressure anomalies, failure to perform flow check and immediate shutdown, and

{N1065671 -}

failure to maintain the blowout preventer. Consequently, the Court concluded that Transocean's failures and negligence resulted in the oil pollution from the facility.

16.

Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the HORIZON and provided onshore engineering support for those operations. Halliburton was also responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, pressure fluctuations and other "measurement while drilling" and "surface data logging" monitoring. The Court determined that Halliburton's failures and negligent conduct in connection with its monitoring responsibilities led to the loss of well control and Spill.

17.

Both the Town of Grand Isle and the Grand Isle Independent Levee District own beachfront property and adjacent land which were directly impacted by heavy oiling in the aftermath of the Spill.  Oil, in the form of tar balls, tar mats and sheen from the Spill continues to impact Grand Isle to the present day.  Grand Isle, which is statutorily responsible for the maintenance of the beaches of both Grand Isle and Elmer's Island, is burdened with the unending task of removing Spill related contamination on a daily basis.   Grand Isle also continues to struggle with the stigma of Spill, which has largely dissipated from most other areas of the Gulf Coast.

18.

Under the principals of maritime law, a party suffering injury to property may recover that which is necessary to restore his damaged property to the same condition which existed before the incident.  Grand Isle's property has suffered grievous physical harm as a direct result of the negligence, gross negligence and recklessness of the BP and negligence of Transocean and

Halliburton.  As a result, Grand Isle is entitled to recover damages under the general maritime law in an amount necessary to remove the oil from its property and to restore its property to the condition it was in immediately prior to the Spill.

19.

Grand Isle is also entitled to recover damages to its property and removal and restoration costs from BP under OPA.  Pursuant to OPA, the term "removal costs" is defined in pertinent part as "the costs of removal that are incurred after a discharge of oil has occurred." 33 U.S.C. § 2701(31).  In turn, "removal" is defined as the "containment and removal of oil or a hazardous substance from water and shorelines or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare, including, but not limited to, fish, shellfish, wildlife, and public and private property, shorelines, and beaches." 33. U.S.C.A. § 2701(30).

20.

In addition, vast quantities of BP oil remain in the environment, submerged in coastal waters in close proximity to Grand Isle.  Consequently, Grand Isle has and will continue incur costs to monitor its property for re-oiling events.  BP is liable to the Grand Isle for the costs of implementing and maintaining a coastal monitoring plan as it is consistent with OPA's paramount goal of containing and removing oil or hazardous substances from water and shorelines.  This cost is also recoverable from BP, Transocean and Halliburton under the general maritime law as part of the obligation to restore Grand Isle owned property to the pre-Spill state.

21.

The Spill has also inflicted tremendous economic harm upon Grand Isle in the form of past and future lost tax revenues,  lost business opportunities, diminution in asset values, loss,

damage, and/or diminution of the value of real and personal property, permanent loss of mineral rights, increased costs of coastal projects, increased administrative medical and psychiatric costs, administrative costs for Defendant's use of Grand Isle owned or controlled facilities, administrative costs of Grand Isle in response to the disaster, wear and tear on Grand Isle's infrastructure, costs to implement marketing campaign to reverse stigma damages, investigative costs and other economic damages as set forth and categorized in Grand Isle's Answer in Limitation, Original Complaint, and OPA Complaint.  These damages are also more fully set forth in its January 18, 2013 presentment to BP.  Grand Isle is entitled to recover its economic losses, increased costs, and damages under both OPA and the general maritime law.

22.

Insofar as BP was named the responsible party under the Oil Pollution Act, there were no other events, occurrences, actions on inactions that caused Grand Isle's losses, no superseding or intervening cause(s) of Grand Isle's losses, and no other events, occurrences, actions or inactions that factually or legally relieve or reduce the BP of strict liability for the damages owed by BP to Grand Isle under OPA.

23.

Defendants also violated numerous statutes and regulations, including, but not limited to, statutes and regulations issued by the United States Minerals Management Service (MMS) and the United States Coast Guard, which violations were a direct cause of the explosion occurring on the *Deepwater Horizon*, the resulting spill and the damages sustained by Grand Isle. Accordingly, any liability caps provided by OPA, to the extent not waived by BP, are inapplicable.

{N1065671 -}

24.

In addition to the negligent actions described above, and in the alternative thereto, the damages suffered by Grand Isle were caused by the acts and/or omissions of the Defendants that are beyond proof possessed by Grand Isle, but which are within the knowledge and control of the Defendants, there being no other possible conclusion that the explosion and release of oil resulted from the negligence and/or recklessness and/or gross negligence of Defendants.

25.

The damages described herein were also caused by or aggravated by Defendants' failure to properly respond to the release of the oil, the use of chemical dispersants with toxic properties and the failure to take necessary actions to mitigate the danger to the surrounding community, including Grand Isle and/or to timely and adequately warn of the release of oil, which were foreseeable results. The continued presence of oil on Grand Isle is the source of continuing damage to and loss of Grand Isle owned or controlled lands.

26.

These casualties and damages set forth in Grand Isle's Amended and Supplemental Complaint occurred as a direct result of the negligence and/or recklessness and/or gross negligence of BP, Transocean, and Halliburton. These acts of negligence and/or recklessness and/or gross negligence render the Defendants liable to the Plaintiff, the Town of Grand Isle and Grand Isle Independent Levee District, pursuant to the laws of the United States of America, the Oil Pollution Act and the general maritime law.

**WHEREFORE**, based on the foregoing, and after due proceedings be had, pray that judgment be entered against Defendants, BP Exploration and Production, Inc., BP America Production Company, BP, P.L.C., Transocean Asset Leasing GmbH, Transocean Deepwater,

{N1065671 -}

Inc., Transocean Offshore Deepwater Drilling, Inc., Halliburton Energy Services, Inc., and Sperry Drilling Services, awarding:

1. All compensatory damages allowed by law and proven at trial, including payment of costs to restore damaged and contaminated lands to their original unpolluted state;

2. All compensatory damages for the real property lost to accelerated erosion caused by oiling and pollution;

3. Stigma damages for the diminution of property value;

4. All investigative costs and future coastal monitoring costs;

5. Past and future economic damages, including damages for increased costs of providing services;

6. All damages allowed under OPA;

7. Punitive damages;

8. Pre-judgment and post-judgment interest at maximum rate allowable by law;

9. Attorneys' fees and costs of litigation; and

10. All other just and equitable relief.

## JURY DEMAND

Plaintiffs demand a trial by jury of this matter.

**COLVIN LAW FIRM, A.P.L.C.**
DAVID L. COLVIN, T.A. (#4353)
JEFFERY P. BROTHERS (#22279)
TRAVIS J. CAUSEY (#16853)
SHELLY R. HALE (#34578)
230 Huey P. Long Avenue
Gretna, LA 70053
Telephone: (504) 367-9001
Facsimile: (504) 367-0650

{N1065671 -}

**MARTZELL & BICKFORD, A.P.L.C.**
SCOTT R. BICKFORD (#1165)
SPENCER R. DOODY (#27795)
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone: (504) 581-9065
Fax: (504) 581-7635 (facsimile)

**KING, KREBS & JURGENS, P.L.C.**

s/Michael L. Vincenzo
HENRY A. KING (#7393)
ROBERT J. STEFANI (#19248)
MICHAEL L. VINCENZO (#23965)
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Fax: (504) 582-1233

Special Counsel

The Town of Grand Isle and Grand Isle Independent Levee District

{N1065671 -}