UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
|     "DEEPWATER HORIZON" IN THE | : | |
|     GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

MEMORANDUM IN SUPPORT OF
MOTION OF THE DHECC FOR RETURN OF
PAYMENTS MADE TO JACK HEMMENWAY AND OTHERS

On behalf of the Deepwater Horizon Economic Claims Center ("DHECC"), Claims Administrator Patrick Juneau seeks to have claimant Jack Hemmenway return $2,245,281.98 paid to him by the DHECC. Hemmenway submitted to the DHECC (1) a purported amended 2008 tax return he had not filed with the IRS that increased his 2008 gross revenue by $690,000 (from $1,601,502 to $2,291,502), and (2) a copy of a $150,000 check to the IRS for the resulting additional tax liability which bank records show was never cashed. This $690,000 revenue increase substantially increased Hemmenway's award. In reliance on Hemmenway's misrepresentations, the DHECC paid Hemmenway $2,245,281.98.

The DHECC seeks a judgment requiring Hemmenway to return the payments to the DHECC and prohibiting Hemmenway from participating in any further seafood distributions. Any professional who benefitted from these unjustified payments similarly should return such payments.

A. *Background*

The Claims Administrator has authority to ensure the integrity of the DHECC, including by initiating clawback proceedings of fraudulent claims. *See* Order of September 6,

2013 (Rec. Doc. 11288); Settlement Agreement at ¶ 4.3.10. The Court retains continuing jurisdiction over the Settlement Agreement. *Id.* at ¶¶ 4.4.7 and 18.1. Disputes concerning enforcement of the Settlement Agreement are to be resolved by motion to the Court. *Id*.

### B. *Hemmenway's DHECC Claims*

Jack Hemmenway owns JBS Packing Company, Inc. (JBS), a shrimp and seafood packing and wholesale company. He also owns five shrimping vessels, the Cracker Jack, Capt. Jack, Captain Jack II, Master Jack, and Fat Jack. Based upon the documents submitted to the DHECC, prior to the oil spill Hemmenway's vessels made their landings exclusively at JBS.

On June 18, 2012, Hemmenway submitted Shrimp Vessel Owner claims for four of his vessels, the Cracker Jack, Captain Jack II, Master Jack, and Fat Jack, along with JBS purchase orders associated with the vessels. Hemmenway selected the Historical Revenue Method of compensation calculation based upon trip tickets and/or tax returns, and requested the Claims Administrator select the benchmark period. The Claims Administrator selected the year 2009 as the benchmark period, and on September 15, 2012, Hemmenway received an eligibility notice for his Vessel Owner Claim on the Master Jack in the amount of $279,911.38 based upon 2009 trip ticket revenue of $259,637.[1]

Hemmenway requested reconsideration of his award calculation for the Master Jack, and that all of his claims be calculated using a benchmark period of 2007-2009, instead of only 2009. He also submitted a claim for his fifth boat, the Capt. Jack. Hemmenway subsequently uploaded trip tickets, representing sales from his boats to his company, JBS, in 2007, 2008, and 2009. As the seafood processor where the landings were made, JBS was required to record these landings in the statewide trip ticket database, but, in many

---

[1] The final payment calculation was $179,611.38, after offset for prior spill related payments of $100,300.

instances, it failed to do so.[2] For example, the Texas Trip Ticket Database has no recorded landings for the vessel Master Jack (Vessel No. 1087157) in 2008, and yet Hemmenway submitted hard copy trip tickets --- written by his company JBS to his boat the Master Jack --- amounting to $463,855.75 in landings for 2008. Compare Exs. H at 5 and I. Nor does the trip ticket database have any recorded landings in 2008 for the Cracker Jack, although Hemmenway submitted hard copy trip tickets amounting to $505,106.35 in landings for 2008. Compare Exs. H at 5 and J.

A few months after requesting reconsideration, on February 1, 2013, the DHECC contacted counsel for Hemmenway. Counsel stated that Hemmenway's 2008 trip ticket revenue exceeded the gross revenue on his 2008 tax return by $691,000. On February 12, 2013, Hemmenway submitted to the DHECC an amended 2008 Income Tax Document (Form 1040X), dated February 11, 2013. Ex. A. While Hemmenway's original 2008 tax return reflected gross revenues of $1,601,502, the amended form showed revenues of $2,291,502. Compare Exs. A at 18 and B at 4. Hemmenway explained the reason for the amendment was that the "amended return showed a net revenue with labor removed." Ex. A at 3. In other words, Hemmenway represented that he had submitted a net revenue, rather than a gross revenue, on his original 2008 return. In the amended document, he explained that he included his labor costs in the calculation for gross revenue.[3] He also submitted to the DHECC

---

[2] The Texas Parks & Wildlife Department's website lays out the requirements for submitting trip tickets. "All dealers who purchase or receive aquatic product(s) from anyone other than another dealer MUST file a monthly report with the Texas Parks and Wildlife Department. . . ." Commercial Harvesting Reporting/Trip Ticket Program, http://tpwd.texas.gov/fishboat/fish/commercial/tripticket.phtml (last viewed October 1, 2015).

[3] On both returns, Hemmenway's contract labor amount is listed at $600,044. However, his gross revenue increased by $691,000. The extra $91,000 in gross revenue remains unaccounted for.

- 3 -

a copy of a $150,000 check that he represented showed payment to the IRS of the additional tax liability associated with the amended tax form. Ex. A at 19.

Historical Revenue compensation is calculated based upon the average revenue for the benchmark period. By expanding his benchmark period from 2009 to 2007-2009, and supporting the JBS trip tickets with his amended tax form, Hemmenway greatly increased his award. For example, for the Master Jack, Hemmenway's award increased from $279,911.38 to $394,733.76 once his benchmark period was extended to 2007-2009. Compare Exs. F and G.

The DHECC relied upon the amended 2008 tax document, $150,000 check to the IRS, and the JBS trip tickets Hemmenway submitted in support of his claims, and on February 19, 2013, issued Hemmenway eligibility notices for all of his vessel owner claims totaling $2,245,281.98 after deductions for prior payments. The DHECC paid Hemmenway on March 5, 2013, after offsets for prior spill-related payments. On information and belief, Hemmenway's counsel, the law firm of Brent Coon & Associates, received $561,320 from the claims, pursuant to a contingency fee agreement.

### C. *Evidence of Hemmenway's Fraudulent Claims*

The totality of the record shows that there is no genuine issue as to any material fact and that the DHECC is entitled to a judgment as a matter of law. *See* Order & Reasons on Special Master's Motion for Return of Payment at 19 (Doc. Rec. 12794) ("Order & Reasons").

The DHECC obtained IRS transcripts with Hemmenway's authorization on November 20, 2014, showing that he had not filed with the IRS the purported amended 2008 tax return that he submitted to the DHECC. Ex. C. Officials at Hemmenway's bank, the Community Bank of Texas, searched their records for the $150,000 check that Hemmenway purportedly sent

to the IRS to cover the increased tax liability associated with the amended tax form, and concluded that the check was never presented for payment. Ex. D. In other words, Hemmenway fabricated tax and other documents to inflate his verifiable shrimping revenues and induce the DHECC to pay him a larger award than it otherwise would have paid him.

On April 13, 2015, nearly six years after Hemmenway filed his original 2008 return, more than two years after Hemmenway told the DHECC that he had filed his amended return, and after the DHECC had requested his authorization to obtain his legitimate tax transcripts from the IRS, he finally submitted an amended 2008 tax return, and accompanying check, to the IRS. Ex. E.

### C. *Legal Analysis*

1. Hemmenway Should Return All Funds Received from the DHECC on His Fraudulent Claims

The Court's power to order appropriate remedies as a result of fraudulent conduct is a broad, flexible and long-standing power. See *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 244 (1944) (affirming judicial power to set aside fraudulently begotten judgments as such cases present "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"); Order & Reasons at 21. Where the Court has determined that a claimant committed fraud in relation to his claims, "it is both reasonable and proper under the terms of the Settlement Agreement to order [the claimant] to make restitution for the funds that he received as a result of his fraudulent claim." Order & Reasons at 21.

>    A.  Hemmenway committed fraud when he submitted
>        a tax return and check to the DHECC that he had not
>        <u>filed with the IRS</u>

To prove fraud in this context, the DHECC must show that (1) Hemmenway made a false representation; (2) Hemmenway knew or believed that the representation was false, or had an insufficient basis to make the representation; (3) Hemmenway intended to induce the DHECC to act in reliance on the information; (4) the DHECC justifiably relied on Hemmenway's representation; and (5) damage resulted from the reliance. Order & Reasons on Motion of the Special Master for Return of Payments Made to Wardell Parker and Others at 5 (Rec. Doc. 15325) ("Parker Order") (citing *Operaciones Tecicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, 926 F. Supp. 2d 858, 862 (E.D. La. 2013)).

Here, the evidence shows indisputably that Hemmenway made a false representation when he submitted fraudulent tax documents in support of his claim to increase his award amount. He submitted an amended 2008 tax document to the DHECC and represented that it had been filed with the IRS; it had not. He submitted a check for $150,000 and represented that it had been sent to the IRS for payment; it was never cashed. Furthermore, he continued to make those representations for nearly two years, until the DHECC notified him that his return had not been filed with the IRS. The false tax documents were intended to support Hemmenway's claim, and to induce the DHECC to act in reliance on that information. The DHECC relied on the false tax documents and paid Hemmenway based on false information, damaging the DHECC.

Importantly, the nature of the misrepresentation shows that Hemmenway knew that the representation was false, or, at the very least, that he had an insufficient basis to make the representation that his 2008 return had been amended and the IRS had been paid. As the

taxpayer and owner of all business entities involved in the transactions at issue, Hemmenway was in the best position to know whether his amended return had been filed with the IRS, and whether his $150,000 check had been cashed by the IRS. *See In re Healthsouth Corp. Shareholders Litigation*, 845 A.2d 1096, 1105-06 (Del. Ch. 2003), *aff'd.* 847 A.2d 1121 (Del 2004) (holding that "the party with superior access to information and the primary duty to ensure the accuracy of the financial statements" could be held liable for misstatements."). Hemmenway did not tell the DHECC that his $150,000 check to the IRS had not been cashed for over two years; the DHECC discovered this fact on its own. Hemmenway's withholding of this information from the DHECC shows that he knew that his tax documents were fraudulent, or, at the very least, had an insufficient basis to make the representation that they had been filed with the IRS.

Furthermore, any potential claim that the failure to file the amended return and check with the IRS was an oversight is belied by Hemmenway's tax filing history. In 2007, 2008, and 2009, he timely filed his tax returns and successfully paid the IRS. This history of compliance with the procedures for filing and paying his taxes provides strong evidence against any alleged oversight that Hemmenway may now claim led to his failing to file his amended 2008 tax return. *See U.S. v. Andujar*, 209 Fed. Appx. 162, 170 (3rd Cir. 2006) (holding that evidence of the defendant's tax filing history was relevant to establishing the element of intent in a bankruptcy fraud prosecution). Here, guided by counsel, Hemmenway cannot excuse his failure to file the amended return or $150,000 check as a mere oversight.

  B.  <u>Hemmenway's late filing of his amended 2008 return
    does not cure the fraud that he committed upon the DHECC</u>

  Hemmenway's last-minute effort to file the amended return does not cure the fraud that he committed upon the DHECC. This filing was made to prevent disgorgement of payments from the DHECC, not as an honest and reasonable effort to satisfy the tax laws. *In re Moroney*, 352 F.3d 902, 905 (4th Cir. 2003) (document is not a "tax return" if it does not represent an honest and reasonable attempt to satisfy the requirements of the tax laws).

  Moreover, Hemmenway's efforts to file an amended return after being paid do not cure the fraud because the fraud has been accomplished. He knowingly submitted false documents and was paid based upon those documents, damaging the DHECC---the elements of fraud have been met. In *Hazel-Atlas*, the Hartford Empire Co. had obtained a valuable patent, in part by fabricating a trade magazine that extolled the virtues of the patented process. *Hazel-Atlas Glass Co.*, 322 U.S. at 240. Once they obtained the patent, they succeeded in filing an infringement suit against Hartford-Empire Co. for infringing upon Hazel-Atlas's fraudulently obtained patent. *Id.* at 241. Years later, when the fraud was discovered and admitted, the Supreme Court held that the original infringement judgment must be vacated, and that "the case now stands in the same position as though Hartford's corruption had been exposed at the original trial." *Id.* at 251. The Court said that "Hartford's fraud, hidden for years but now admitted, had its genesis in the plan to publish an article for the deliberate purpose of deceiving the Patent Office. The plan was executed, and the article was put to fraudulent use in the patent office, contrary to law." *Id.* at 250.

  Here, Hemmenway's fraud, hidden for years but now exposed, had its genesis in his plan to increase his award from the DHECC without increasing his tax liability with the IRS. The plan was executed, and the unfiled tax document was put to fraudulent use in the Claims

- 8 -

Administrator's office, contrary to the Settlement Agreement. The DHECC paid him, damaging the DHECC by requiring it to pay more money than it would have, had he provided legitimate, filed tax returns. As in *Hazel-Atlas*, here the appropriate remedy is for the case to stand in the same position as though Hemmenway's fraud had been discovered during the original claims analysis process. Had that happened, he would not have been paid. Additionally, his amended return was only filed for the purposes of keeping his ill-gotten gains, rather than as a legitimate attempt to square his taxes with the IRS. The appropriate remedy is to require Hemmenway to completely reimburse the DHECC the money that he was awarded.

The indisputable evidence of fraud undermines the integrity of the Settlement Program and demonstrates that Hemmenway should pay back the entirety of his award amount. The DHECC, and all other Seafood class members, were damaged by Hemmenway's fraudulently acquiring a $2.2 million award by submitting fraudulent tax returns and other fabricated documents. Hemmenway submitted fraudulent tax documents to the DHECC in an attempt to increase his award amount, and the DHECC accepted those fraudulent documents and paid Hemmenway significantly more than the amount to which he otherwise would have been entitled, damaging the DHECC. Hemmenway should be required to return the payments from his claims to make the DHECC whole, the Seafood Compensation Trust whole, deprive Hemmenway of unjust enrichment and deter others from similar misconduct. *See* Order & Reasons at 22.

### 2. The Court Should Order the Return of All Funds Received By Professionals Who Assisted Hemmenway to Submit False Claims

The professionals who helped Hemmenway submit his claims also should return any payment received based on Hemmenway's claims. *See* Order & Reasons at 26, *SEC v. Blatt*, 583 F.2d 1325, 1335-36 (5th Cir. 1978). Money paid by contingency fee arrangements may be recouped through restitution where the client's judgment is reversed or voided. *See Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996); Order & Reasons at 22-23. Because no fee is due, retaining a payment made on a contingency fee contract under such circumstances would be an unjust enrichment. *Id.* at 24. Whether these professionals knew of the falsity of Hemmenway's claim is immaterial to their duty to make restitution of sums that have been received as a result of this improper claim. Order & Reasons at 23; *Schock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999).

Here, upon information and belief, Hemmenway's lawyers received $561,320.50 for his seafood compensation claims based upon a contingency fee contract.[4] The contingency fee would not have been payable to his lawyers if the DHECC had not paid Hemmenway's fraudulent claims. The contingency fees should be returned to the DHECC.

### D. *Conclusion*

For these reasons, the DHECC seeks entry of judgment requiring Hemmenway to make restitution to the DHECC for $2,245,281.98 paid by the DHECC in reliance on Hemmenway's false representations and prohibiting Hemmenway from participating in

---

[4] The DHECC requested information from claimant's counsel concerning the attorney's fees received by the firm on claimant's claim, but counsel has not yet supplied the requested information. The DHECC has used a 25 percent fee to calculate the legal fees for purposes of this motion. This percentage can be modified if needed when counsel provides the requested information.

further seafood distributions. All professionals who assisted Hemmenway and benefitted from these unjustified payments similarly should be required to return these payments.

        Respectfully submitted,

        Patrick A. Juneau
        Claims Administrator


        _____/s/ Kevin Colomb_____
        By: Kevin Colomb
        Manager of Compliance and Internal Integrity

Dated:  October 2, 2015