# SETTLEMENT AGREEMENT

## BETWEEN THE GULF STATES AND THE BP ENTITIES WITH RESPECT TO ECONOMIC AND OTHER CLAIMS ARISING FROM THE *DEEPWATER HORIZON* INCIDENT

## I.  RECITALS

**1.1**  *Whereas,* on the evening of April 20, 2010, a blowout, explosions, and fire occurred aboard the mobile offshore drilling unit *Deepwater Horizon* as it was in the process of temporarily abandoning a well, known as the Macondo Well, it had drilled within Block 252, Mississippi Canyon, on the Outer Continental Shelf off the coast of Louisiana;

**1.2**  *Whereas*, as a result of the blowout, explosions, and fire, oil and other substances were released into the Gulf of Mexico from approximately April 20, 2010 until July 15, 2010;

**1.3**  *Whereas*, pursuant to federal regulation, BPXP was the operator of the Macondo Well as of April 20, 2010;

**1.4**  *Whereas*, the release of oil and hydrocarbons originating in the Macondo Well and discharging from the *Deepwater Horizon* (and its appurtenances) on and after April 20, 2010 resulted in the presence of oil and other substances in the waters of the Gulf of Mexico and on beaches, marshes, and other land along the shore of the Gulf of Mexico, and, as a consequence, also resulted in the largest response, containment, cleanup, and restoration effort in the history of the United States;

**1.5**  *Whereas*, the State of Alabama filed a complaint on August 12, 2010, captioned *Alabama v. BP PLC*, Case No. 2:10-cv-690 (M.D. Ala), that was transferred to MDL 2179, where Alabama filed a first amended complaint on April 7, 2011, captioned *Alabama v. BP PLC*, Case No. 2:10-cv-4182 (E.D. La);

**1.6**  *Whereas*, the State of Florida filed a complaint on April 20, 2013, captioned *Florida v. BP Exploration & Production Inc., et al.,* Case No. 5:13-cv-00123 (N.D. Fla.), that was transferred to MDL 2179;

**1.7**  *Whereas*, the State of Louisiana filed a first amended complaint on April 19, 2011, captioned *Louisiana v. BP Exploration & Production, Inc., et al.,* Case Nos. 11-cv-0516, 10-cv-03059 (E.D. La.), in MDL 2179;

**1.8**  *Whereas*, the State of Mississippi filed a complaint on April 18, 2013, captioned *Hood v. BP Exploration & Production Inc., et al.*, Case No. 1:13-cv-00158 (S.D. Miss.), that was transferred to MDL 2179;

**1.9**  *Whereas*, the State of Texas filed a complaint on May 17, 2013, captioned *Texas v. BP*

*Exploration & Production Inc., et al.*, Case No. 1:13-cv-315 (E.D. Tex.), that was transferred to MDL 2179, where Texas filed an amended complaint on June 18, 2013, captioned *Texas v. BP Exploration & Production Inc., et al.*, Case No. 13-cv-4677 (E.D. La.);

**1.10**  *Whereas*, on November 14, 2011, the Court entered an order dismissing Alabama's and Louisiana's claims under state law, including for civil penalties, as being pre-empted by the federal Clean Water Act, *In re Oil Spill by Oil Rig Deepwater Horizon in the Gulf of Mexico*, No. 10-3059, 2011 WL 5520295 (E.D. La. Nov. 14, 2011);

**1.11**  *Whereas*, the States of Alabama, Florida, Louisiana, Mississippi, and Texas and various affiliates collectively have asserted numerous claims against BPXP and other BP Entities that they allege arise from or are otherwise related to the *Deepwater Horizon* Incident, including, but not limited to, claims for economic loss, losses or damages related to Moratoria, losses related to closures of fishing and harvesting of natural resources, business interruption, breach of contract, loss of royalties, lost taxes and revenues, property damage, lost tourism revenue, response and removal costs, operating and other costs, other economic damages, punitive damages, and attorneys fees, costs, and expenses;

**1.12**  *Whereas*, those claims have been consolidated for coordinated and consolidated pretrial proceedings in the multidistrict litigation, *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.), *United States v. BP Exploration & Production Inc., et al.*, No. 2:10-cv-04536 (E.D. La.), which proceedings have included discovery and other pretrial matters with respect to state compensatory claims in the Alabama compensatory trial and discovery and the completion of multiple phases of the limitation and liability trial conducted by the Court pursuant to certain pretrial orders;

**1.13**  *Whereas*, natural resource trustees appointed by the United States or the Gulf States have also asserted, or manifested an intent to assert, natural resource damages claims against BPXP and other BP Entities with respect to the *Deepwater Horizon* Incident;

**1.14**  *Whereas*, this Settlement Agreement is being entered into concurrently with a Consent Decree being entered in MDL 2179, and such Consent Decree fully and finally resolves any and all natural resource damages claims of the United States, the Gulf States, and their respective natural resource trustees, any and all Clean Water Act penalty claims, and certain other claims of the United States and the Gulf States;

**1.15**  *Whereas*, it is the intention of the Parties, by this Settlement Agreement, to fully and finally settle, satisfy, and resolve any and all claims (other than those natural resource damages claims, Clean Water Act claims, and other claims being separately settled and resolved by the Consent Decree) between the Gulf States, on the one hand, and the BP Entities, on the other, arising from or related to the *Deepwater Horizon* Incident;

**1.16**  *Whereas*, this Settlement Agreement will provide material benefits to all Parties by the fair and complete resolution of such claims in a timely manner without the need for further protracted litigation;

NOW, THEREFORE, without further adjudication, findings, or admissions of any issue of fact or law in connection with the *Deepwater Horizon* Incident other than those expressly set forth in this Settlement Agreement, and for good and valuable consideration, the undersigned Parties do hereby agree:

## II. <u>DEFINITIONS</u>

**2.1** "Act of Insolvency" means any one of the following: the presentation of a winding-up petition in respect of BP p.l.c., the making of an application for an administration order in respect of BP p.l.c., an application to court for an order convening meetings of creditors of BP p.l.c. to consider a scheme of arrangement under the Companies Act 2006 that would materially alter any Gulf State's rights under this Settlement Agreement, the summoning of meetings of the creditors of BP p.l.c. (including any of the Gulf States) to consider a proposal for a company voluntary arrangement or other composition under the Insolvency Act 1986 that would materially alter any Gulf State's rights under this Settlement Agreement, or the appointment of an administrative receiver, administrator or liquidator in respect of BP p.l.c.  If in the case of a petition presented or application made by a creditor, contributory or other third party, such petition or application is stayed, dismissed or withdrawn within sixty (60) days of its filing, such petition or application shall not constitute an Act of Insolvency.  For the purposes of this Paragraph, the term "materially alter" means an alteration to any Gulf State's rights under the Settlement Agreement which reduces the amounts owed or payable, or extends the time at which payments are to be made to any Gulf State, or is otherwise materially prejudicial to any Gulf State.

**2.2** "BP Entities" means one or more of the following:  BP p.l.c., BPCNA, BPXP, and any parents, subsidiaries, successors, assigns, and all entities on any Group Structure list, which are publicly available and provided by BP p.l.c. to the Registrar of Companies, between 2010 and July 2, 2015, and, for each of the preceding, all of their current, future and former officers, directors, and employees.

**2.3** "BP p.l.c." means BP p.l.c., a company incorporated in England whose registered office is at 1 St. James's Square, London, SW1Y 4PD, England.

**2.4** "BPCNA" means BP Corporation North America Inc., incorporated in the State of Indiana, with its current principal place of business in Houston, Texas.

**2.5** "BPXP" means BP Exploration & Production Inc., incorporated in the State of Delaware, with its current principal place of business in Houston, Texas.

**2.6** "Change of Control" means change of control of BP p.l.c. in the form of a takeover bid, tender offer or other merger transaction (however effected), that has become unconditional in all respects or otherwise effective, under which a third party or group of parties acting together acquires such number of shares in BP p.l.c. (or an interest in such shares) so as to carry more than 50% of the voting rights.

**2.7** "Claims" means any and all claims or causes of action, whether in law or in equity, known or unknown, direct or indirect, past, present, or future, arising from or related to the *Deepwater*

*Horizon* Incident, including, but not limited to: (1) Economic Claims; (2) any claims that were or could have been asserted by any Gulf State in MDL 2179; and (3) any claims for damages, liens, fines, penalties, costs, or criminal assessments, injunctive relief, or other liabilities or theories of damage that were or could have been asserted by any Gulf State in any civil, criminal, or administrative proceeding, including any and all claims for attorneys fees, costs, and expenses. For the avoidance of doubt, Claims includes any and all such claims or causes of action regardless of legal or equitable theory or nature under which they are based or advanced, including (but not limited to) legal and/or equitable theories under any federal, state, administrative, foreign, or international law, and including (without limitation) statutory law, codal law, regulation, common law, or equity, and whether based in maritime law, strict liability, negligence, gross negligence, punitive or exemplary damages, nuisance, trespass, and all other legal and equitable theories, whether existing now or arising in the future, arising from or in any way related to the *Deepwater Horizon* Incident. Notwithstanding the foregoing definition, solely the following claims or causes of action arising from or related to the *Deepwater Horizon* Incident shall not constitute Claims hereunder: (a) claims of the Gulf States for natural resource damages and Clean Water Act penalties to the extent that such claims are to be fully and finally settled and resolved pursuant to the Consent Decree; (b) claims brought by the Gulf States against the Transocean Entities and/or Halliburton Entities for punitive or exemplary damages arising from or related to the *Deepwater Horizon* Incident; (c) claims arising from any discharge or release of oil after the Effective Date of the Settlement Agreement from any one of the eight aliquots within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10 three of which are owned or operated by BPXP or any BP Entity as of July 2, 2015; or (d) claims arising from the breach of, or seeking to enforce, this Settlement Agreement.

**2.8** "Consent Decree" means a consent decree by and between the United States, the States of Alabama, Florida, Louisiana, Mississippi and Texas, BPXP and other BP Entities, entered in MDL 2179, and fully and finally resolving, *inter alia*, Clean Water Act penalties, natural resource damages, federal False Claims Act claims, and federal royalty claims arising from the *Deepwater Horizon* Incident.

**2.9** "Court" means the United States District Court for the Eastern District of Louisiana.

**2.10** "*Deepwater Horizon* Incident" means events, actions, inactions, and/or omissions leading up to and including the following: (i) all discharges of hydrocarbons or other substances from the Macondo Well, and all discharges from, through, or into the *Deepwater Horizon* mobile offshore drilling unit (including its appurtenances)*,* occurring on or after April 20, 2010, regardless of any subsequent movement, migration, resuspension, or resurfacing of such hydrocarbons or other substances; (ii) the installation, construction, drilling and/or blowout of the Macondo Well; (iii) the explosion and fire on the *Deepwater Horizon*; (iv) the sinking and/or loss of the *Deepwater Horizon*; (v) any and all containment efforts related to the Macondo Well; (vi) construction of relief wells related to the Macondo Well; (vii) any and all cleanup, remediation, removal, response, and/or restoration efforts related to the foregoing, including, but not limited to, the Vessels of Opportunity program, the application of dispersants, and any diversion of fresh water; and (viii) operations of any claims facility related to any of the foregoing.

**2.11** "Economic Claims" means any and all claims or causes of action by any Gulf State arising

from or related to the *Deepwater Horizon* Incident for or related to economic loss, property damage, business interruption, breach of contract, loss of royalties, lost tourism revenue, lost taxes, losses arising from or related to Moratoria, losses related to closures of fishing and harvesting of natural resources, costs of public services or goods, operating costs, or any other costs, losses, or damages (other than natural resource damages to the extent such damages are to be fully and finally settled and resolved pursuant to the Consent Decree), including without limitation, any claim arising out of the Oil Pollution Act, 33 U.S.C. § 2702(b)(1) and/or § 2702(b)(2)(B) - (F), state or federal common law, maritime law, or any other applicable provision of law.

2.12   "Effective Date" of the Settlement Agreement means the earliest date upon which all of the following have occurred:  (a) the Settlement Agreement has been fully executed by all of the Parties hereto, and (b) the condition set forth in Paragraph 6.1 has been met.

2.13   "Gulf State" or "Gulf States" means the States of Alabama, Florida, Louisiana, Mississippi, and Texas together with the Gulf States' affiliates when used in the plural, and each of them individually and that respective Gulf State's affiliates when used in the singular. A Gulf State's affiliates shall include that Gulf State's branches, agencies, associations, authorities, boards, bureaus, councils, departments, educational institutions or systems, components, public benefits corporations, or other instrumentalities of any kind, administrators, elected or unelected officials, officers or delegates (other than in their individual capacities), assigns, insurers, attorneys, or other agents of any kind; provided however that a Gulf State's affiliates shall not include Local Governmental Entities.

2.14   "Halliburton Entities" means Halliburton Company and Halliburton Energy Services Inc.

2.15   "Local Governmental Entities" means counties, parishes, municipalities, or any other local governmental or local political subdivisions authorized by law to perform local governmental functions.

2.16   "Macondo Well" means:  (a) Macondo Well 1 (including MC-252#1, Well No. 001ST00BP00, MC-252#1 ST1, Well No. 001ST00BP01), Macondo Well 2 (including MC-252#2, Well No. 003ST00BP00), and Macondo Well 3 (including MC-252#3, Well No. 002ST00BP00) within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16 16-10 existing on or before the date of lodging of the Consent Decree; (b) the *Deepwater Horizon* and its appurtenances, including the riser from the *Deepwater Horizon*; (c) a coffer dam used in the course of removal work conducted during the discharge of oil from Block 252 of the Mississippi Canyon that began April 20, 2010; (d) "the Macondo Well" as defined in the United States' Complaint in MDL 2179; and (e) the eight aliquots within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10, three of which are owned or operated by BPXP or any BP Entity as of July 2, 2015.

2.17   "MDL 2179" means the proceedings contained within the court proceedings captioned *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.), *United States v. BP Exploration & Production Inc., et al.*, No. 2:10-cv-04536 (E.D. La.), including any and all claims or causes of action or theories of loss

or damage that have been filed within, referred thereto, or otherwise consolidated thereunder.

**2.18** "Moratoria" means any federal or state governmental action or inaction directed at offshore oil or gas industry activity – including shallow water and deepwater operations – that occurred on or after April 20, 2010, including, but not limited to, the federal moratoria on offshore permitting and drilling activities, effective date May 30, 2010 (NTL No. 2010-N04), the increased safety measures issues by the U.S. Department of the Interior, effective date June 8, 2010 (NTL No. 2010-N05), the information requirements issued by the U.S. Department of the Interior, effective date June 18, 2010 (NTL No. 2010-N06), the federal deepwater drilling suspensions on or about July 12, 2010, and any other new or revised safety rules, regulations, inspections, permitting practices, restrictions or suspensions.

**2.19** "Party" or "Parties" means any one of the Gulf States or any one of BPXP, BPCNA, and BP p.l.c. when used in the singular and all of the Gulf States together with BPXP, BPCNA, and BP p.l.c. when used in the plural.

**2.20** "Settlement Agreement" means this Agreement, all Attachments, and the Primary and Secondary Guaranty Agreements referenced herein.

**2.21** "Transocean Entities" means Transocean Deepwater Inc., Transocean Holdings LLC, Transocean Inc., Transocean Ltd., Transocean Offshore Deepwater Drilling Inc., and Triton Asset Leasing GmbH, together with their parents, subsidiaries, affiliates, officers, directors, employees, and agents.

### III.  SETTLEMENT PAYMENTS

**3.1 Settlement Payment and Schedule.**  In consideration of the full and complete settlement and release of Claims, BPXP shall pay a total of four billion nine hundred million dollars ($4,900,000,000.00) to the States of Alabama, Florida, Louisiana, Mississippi, and Texas on behalf of the Gulf States in accordance with the payment schedule and provisions set forth in Attachment 1.

**3.2 Payment Instructions.**  Payments made to each state pursuant to the foregoing Paragraph 3.1 shall be directed according to the wiring instructions set forth in Attachment 2.  Any of the States of Alabama, Florida, Louisiana, Mississippi, or Texas may modify its respective payment instructions set forth in Attachment 2 provided that any such modification is set forth in writing and such written instructions are received by BPXP, BPCNA, BP p.l.c., and the Court no later than sixty (60) days before any such payment is due.

### IV.  SATISFACTION, RELEASES, AND COVENANTS NOT TO SUE

**4.1 Satisfaction and Settlement.**  This Settlement Agreement fully and finally satisfies, resolves, and settles any and all Claims between the Gulf States, on the one hand, and the BP Entities, on the other.

**4.2  Release and Covenant Not to Sue BP Entities.**  The Gulf States each hereby fully, finally, and forever release and waive any and all Claims against the BP Entities and further covenant not to sue the BP Entities for any and all Claims.

**4.3  Release and Covenant Not to Sue Third Parties.**  The Gulf States each hereby fully, finally, and forever release and waive any and all Claims, and further covenant not to assert any and all Claims, against any party who is or could be responsible or liable in any way for the *Deepwater Horizon* Incident, including those parties set forth in Attachment 3 and any parties related to those parties set forth in Attachment 3, except that, for the avoidance of doubt, this release and covenant not to sue shall not extend to the Gulf States' claims for punitive or exemplary damages against the Transocean Entities or Halliburton Entities arising from or related to the *Deepwater Horizon* Incident.

**4.4  Dismissal with Prejudice.**  No later than thirty (30) days after the Effective Date, the Gulf States shall dismiss and/or cause to be dismissed any and all previously filed Claims in MDL 2179 or any other proceedings against the BP Entities or any party covered by the release and covenant not to sue in Paragraph 4.3 (including those listed on Attachment 3) and take all steps as reasonably necessary, including the filing of appropriate dismissal pleadings, to implement the dismissal of such Claims.  For the avoidance of doubt, such dismissal shall not extend to the Gulf States' claims for punitive or exemplary damages against the Transocean Entities or Halliburton Entities arising from or related to the *Deepwater Horizon* Incident.

**4.5  Effect on Local Governmental Entities.**  Those claims filed by the Gulf States in MDL 2179 have been filed solely on behalf of, and for the benefit of, each respective Gulf State and did not assert or preserve any claims on behalf of, or for the benefit of, any Local Governmental Entity; and the releases in Paragraphs 4.2 and 4.3 do not release any claims for any Local Governmental Entity.

**4.6  Subrogation.**  As this Settlement Agreement is fully and completely settling and resolving the Claims, BPXP is hereby subrogated to any and all rights that any Gulf State may have for those Claims against any person who is a beneficiary of the releases and covenants not to sue set forth in Paragraph 4.3.

**4.7  Attorneys Fees and Expenses.**  Each Party shall bear its own attorneys fees and associated costs and expenses, except as otherwise ordered by the Court.

## V.  <u>FINANCIAL ASSURANCE</u>

**5.1  BPCNA as Primary Guarantor.**  Prior to the date of lodging of the Consent Decree, BPCNA shall and each beneficiary deliver an executed guaranty in the form of the Primary Guaranty in Attachment 4 of this Settlement Agreement, which guarantees the payments due to each of the States of Alabama, Florida, Louisiana, Mississippi, and Texas from BPXP pursuant to Paragraph 3.1 and Attachment 1 as primary guarantor in the event that BPXP defaults on such payments as set forth in Paragraph 5.3 below.

**5.2  BP p.l.c. as Secondary Guarantor.**  Prior to the date of lodging of the Consent Decree,

BP p.l.c. and each beneficiary shall deliver an executed guaranty in the form of the Secondary Guaranty in Attachment 5 of this Settlement Agreement, which guarantees the payments due to each of the States of Alabama, Florida, Louisiana, Mississippi, and Texas from BPXP pursuant to Paragraph 3.1 and Attachment 1 as secondary guarantor in the event that both (a) BPXP defaults on such payments as set forth in Paragraph 5.3 below and (b) BPCNA defaults on its obligation to serve as primary guarantor of such payments as set forth in Paragraph 5.4 below.

**5.3  BPXP Default.**  For the purposes of Paragraphs 5.1, 5.2, 5.4, and 5.7, BPXP shall be considered in default of a payment to a state required under this Settlement Agreement if any of the following conditions has been met:

A.  BPXP has failed to make such payment within sixty (60) days after such payment has become due under the Settlement Agreement;

B.  BPXP has filed for bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency; or

C.  Any third party has petitioned a court to place BPXP in bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency, an order for relief has been entered, and any such filing or petition has not been dismissed within sixty (60) days of such order for relief.

**5.4  BPCNA Default as Primary Guarantor.**  For the purposes of Paragraph 5.2, BPCNA shall be considered in default on its guaranty of a payment to a state required under the Settlement Agreement if BPXP has defaulted on such payment as described in Paragraph 5.3 and any of the following conditions has been met:

A.  BPCNA has failed to make a payment required under the Primary Guaranty within sixty (60) days after a BPXP default;

B.  BPCNA has filed for bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency; or

C.  Any third party has petitioned a court to place BPCNA in bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency, an order for relief has been entered, and any such filing or petition has not been dismissed within sixty (60) days of such order for relief.

**5.5  Successors and Assigns of Guarantors.**

A.  BPCNA's payment obligations under the Primary Guaranty shall be binding on any legal successor or assign of BPCNA, and a written agreement that such successor or assign shall so remain liable shall be included by BPCNA in the terms of any sale, acquisition, or merger of BPCNA with such successor or assign.  Upon demonstration that any such successor or assign has become liable for BPCNA's obligations under the Primary Guaranty and upon written consent of the States of Alabama, Florida,

Louisiana, Mississippi and Texas, BPCNA's obligations under the Primary Guaranty shall terminate.  Any such termination shall be in writing, fully executed by the States of Alabama, Florida, Louisiana, Mississippi, and Texas and BPCNA.

B.  BP p.l.c.'s payment obligations under the Secondary Guaranty shall be binding on any legal successor or assign of BP p.l.c., and a written agreement that such successor or assign shall so remain liable shall be included by BP p.l.c. in the terms of any sale, acquisition, or merger of BP p.l.c. with such successor or assign.  Upon demonstration that any such successor or assign has become liable for BP p.l.c.'s obligations under the Secondary Guaranty and upon written consent of the States of Alabama, Florida, Louisiana, Mississippi, and Texas, BP p.l.c.'s obligations under the Secondary Guaranty shall terminate.  Any such termination shall be in writing, fully executed by the States of Alabama, Florida, Louisiana, Mississippi, and Texas and BP p.l.c.

**5.6  Alternative Financial Assurances.**  Upon the request of BPCNA or BP p.l.c. and written approval of any of the States of Alabama, Florida, Louisiana, Mississippi, or Texas, the Primary Guaranty and/or the Secondary Guaranty may be modified and/or replaced with an alternative form of financial assurance such as a letter of credit or trust agreement solely with respect to BPXP's payment obligations to the approving state(s) under this Settlement Agreement.  Any such modification or replacement shall be in writing, fully executed by the approving state(s) and the BP Entity as to which such modification or replacement is made, and consented to in writing by the other states, such consent not to be unreasonably withheld.

**5.7  Acceleration.**

A.  If there has been a Change of Control, the States of Alabama, Florida, Louisiana, Mississippi, and Texas each may individually elect to accelerate the schedule for its payments required in Section III.  In such case, the accelerated payments shall become due and owing one hundred twenty (120) days after service of notice of such election, or at any other time that the relevant Parties may agree upon.

B.  If there has been an Act of Insolvency, the States of Alabama, Florida, Louisiana, Mississippi, and Texas each may individually elect to accelerate the schedule for its payments required in Section III.  In such case, the accelerated payments shall become due and owing immediately upon service of notice of such election, or at any other time that the relevant Parties may agree upon.

C.  If there has been a Change of Control or Act of Insolvency, then BP p.l.c. shall notify the States of Alabama, Florida, Louisiana, Mississippi, and Texas immediately.

## VI.  <u>CONDITION</u>

**6.1  Condition.**  This Settlement Agreement shall be conditioned upon, and shall not become effective until, the Consent Decree has been entered by the Court.

## VII.  <u>NOTICE</u>

**7.1  Notice.**  Any notice given pursuant to this Settlement Agreement shall be provided in writing and addressed to the Parties as set forth below.  All notices shall be sent by one or more of the following methods:  first class mail, registered or certified mail, or nationally recognized overnight delivery service, and shall be filed with the Court in MDL 2179 to the extent that MDL 2179 has not been terminated.  Written notice shall be deemed to have been given to a recipient on the date it is delivered to the recipient at the address set forth below.  Any Party may change its designated recipient or address for receiving notice by providing written notice of such change to the other Parties as set forth below.  Notice consistent with  Paragraph 7.1is considered sufficient notice as to all Parties.  A change in the designated recipient or address for receiving notice shall not constitute a modification of this Settlement Agreement for the purposes of Paragraph 8.6 below.

**Notice to the State of Alabama shall be sent to:**

Governor of Alabama
Attn: BP Litigation
State Capitol
600 Dester Avenue
Montgomery, AL 36130

Attorney General
Office of the Attorney General
c/o BP Litigation
501 Washington Avenue
Montgomery, AL 36130

R. Cooper Shattuck
Office of Counsel, University of Alabama System
500 University Blvd. East
Tuscaloosa, AL 35401

**Notice to the State of Florida shall be sent to:**

Office of the Attorney General
Attn: Russell Kent, Special Counsel
PL-01, The Capitol
Tallahassee, FL 32399-1050
Phone: (850) 414-3854
Email:  russell.kent@myfloridalegal.com

Or to the following street address:

Office of the Attorney General
107 W. Gaines St.
Tallahassee, FL 32301-2301

**Notice to the State of Louisiana shall be sent to:**

Office of Attorney General
State of Louisiana

Attn:  Megan K. Terrell
Assistant Attorney General
Section Chief - Environmental
State of Louisiana
P.O. Box 94005
Baton Rouge, LA 70804-9005
Phone:  (225) 326-6708

Or to the following street address:
1885 N. Third Street
6th Floor
Baton Rouge, LA 70802-5159

**Notice to the State of Mississippi shall be sent to:**

The Honorable Jim Hood
Attorney General State of Mississippi
Post Office Box 220
Jackson, MS 39205

**Notice to the State of Texas shall be sent to:**

Chief, Environmental Protection Division
(Attn: Thomas Edwards, AAG)
Office of the Attorney General (MC-066)
P.O. Box 12548
Austin, TX 78711-2548

Or to the following street address:

Wm. P. Clements State Office Building
300 W. 15th St., Floor 10
Austin, TX 78701-1649

Phone: (512) 463-2012
Email: Thomas.Edwards@TexasAttorneyGeneral.gov

**Notice to BPXP shall be sent to:**

BP Exploration & Production Inc.
501 Westlake Park Boulevard
Houston, Texas  77079
Attention: U.S. Company Secretary

with copies to each of the following:

BP Exploration & Production Inc.
501 Westlake Park Boulevard
Houston, Texas  77079
Attention: Gulf of Mexico, Regional President

BP America
501 Westlake Park Boulevard
Houston, Texas  77079
Attention: U.S. General Counsel

**Notice to BPCNA shall be sent to:**

BP Corporation North America Inc.
501 Westlake Park Boulevard
Houston, Texas  77079
Attention: Company Secretary

with copies to each of the following:

BP Corporation North America Inc.
501 Westlake Park Boulevard
Houston, Texas  77079
Attention: President

BP America
501 Westlake Park Boulevard
Houston, Texas  77079
Attention: U.S. General Counsel

**Notice to BP p.l.c. shall be sent to:**

BP p.l.c.
1 St James's Square
London, SW1Y 4PD
United Kingdom
Attention:  Company Secretary

with copies to each of the following:

BP p.l.c.
1 St James's Square,
London, SW1Y 4PD
United Kingdom
Attention:  Group General Counsel

BP America
501 Westlake Park Boulevard
Houston, Texas  77079
Attention: U.S. General Counsel


# VIII.  <u>MISCELLANEOUS TERMS</u>

**8.1  Successors and Assigns.**

A.  Any legal successor or assign of BPXP shall remain liable for the payment and other performance obligations of BPXP hereunder, and an agreement to so remain liable shall be included in the terms of any such sale, acquisition, or merger of BPXP.  In the event of the sale, assignment, or transfer of some, but not all, of BPXP's assets to an unaffiliated third party pursuant to an arm's length transaction, such third party shall not be liable for BPXP's obligations under this Settlement Agreement.

B.  Except as provided in Paragraph 8.3, no portion of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity other than a Gulf State and BPXP, BPCNA, and BP p.l.c., and no Gulf State may assign or otherwise convey any right to enforce any provision of this Settlement Agreement.  Without limiting the foregoing, each Gulf State, and any permitted assignee of such Gulf State, agrees that any assignment of such Gulf State's rights under Section III shall be with recourse to such Gulf State only and without recourse to any BP Entity.

**8.2  Retention of Jurisdiction.**  The Court (and any appellate courts thereof) will retain exclusive jurisdiction over this Settlement Agreement for the purposes of enforcement of the Settlement Agreement and any dispute(s) arising thereunder.  Any and all disputes, cases, or controversies concerning this Settlement Agreement, including, without limitation, disputes concerning the interpretation or enforceability of this Settlement Agreement, shall be filed in the Court and shall be accompanied by a legal request made on behalf of the complaining party (including any of the BP Entities or the Gulf States or any third party beneficiary) for such dispute to be made part of MDL 2179 if MDL 2179 has not been terminated.  No action(s) to enforce this Settlement Agreement or regarding any dispute(s) arising thereunder shall be filed in any state court.  The Parties agree not to contest federal jurisdiction in or consolidation with MDL 2179, or to contest jurisdiction or venue of the Court if MDL 2179 has been terminated by the time any dispute concerning this Settlement Agreement is filed.  In all other respects and purposes unrelated to this Settlement Agreement or disputes concerning the interpretation or enforceability of this Settlement Agreement, the BP Entities specifically reserve any and all defenses to jurisdiction and venue of the Court, and the Gulf States

agree that this Paragraph 8.2 does not constitute a waiver of such jurisdictional defenses, consent to jurisdiction, or an act supporting or sufficient to establish jurisdiction over the BP Entities for any matter besides disputes, cases, or controversies concerning this Settlement Agreement.

**8.3  Third Party Beneficiaries.**

A.  Those third parties to whom the releases, covenants not to sue, and dismissals in Section IV of this Settlement Agreement extend constitute third party beneficiaries of this Settlement Agreement who may enforce such releases, covenants not to sue, and dismissals with respect to Claims asserted by any Gulf States against such third parties.

B.  As set forth in Paragraphs 5.5 and 8.1.A, this Settlement Agreement shall also be binding on permitted successors and assigns of the applicable Parties and shall inure to the benefit of such successors and assigns.

C.  Except as set forth in Paragraphs 8.3.A and 8.3.B above, this Settlement Agreement shall not inure to the benefit of any third party, does not create any rights on behalf of any third party, and is not enforceable by any third party.

**8.4  Final Agreement.**  This Settlement Agreement constitutes the final, complete, and exclusive agreement and understanding between the BP Entities and the Gulf States with respect to the matters covered by this Settlement Agreement and supersedes any and all other agreements, written or oral, including the July 2, 2015 Agreement in Principle, between the BP Entities, on the one hand, and the Gulf States, on the other, with respect to the matters covered by this Settlement Agreement.

**8.5  Effect of Further Proceedings or Appeals.**  This Settlement Agreement shall remain effective regardless of any appeals or court decisions relating in any way to the liability of those parties, persons, or entities that have been released or to whom the covenants not to sue run pursuant to Section IV.

**8.6  Modification.**  This Settlement Agreement may only be modified by express written consent of the States of Alabama, Florida, Louisiana, Mississippi, and Texas and BPXP, BPCNA, and BP p.l.c., duly executed by their authorized representatives, except that:

A. Any one of the States of Alabama, Florida, Louisiana, Mississippi, or Texas (a "Modifying State" as used in this section) and BPXP may agree to modify the payment schedule with respect to payments to be made hereunder from BPXP to that Modifying State provided that such modification to the payment schedule is set forth in writing and duly executed by the authorized representatives of the Modifying State and BPXP, and consented to in writing by the other states, such consent not to be unreasonably withheld; and

B. A Modifying State and BPCNA or BP p.l.c., as the case may be, may modify the financial assurances as set forth in Section V in accordance with the provisions of Paragraph 5.6.

14

Written notice of any modification to this Settlement Agreement shall be provided to all Parties hereto in the manner set forth in Paragraph 7.1.

**8.7  Construction.**  Questions regarding the interpretation of this Settlement Agreement shall not be construed or resolved against any Party on the ground that this Settlement Agreement has been drafted by that Party.  This Settlement Agreement is the result of review, negotiation, and compromise by each Party.

**8.8  No Admissions.**  This Settlement Agreement is made without, and shall not constitute, an admission of any fact, law, liability, or wrongdoing by any BP Entity and is made purely by way of compromise and settlement.

**8.9  Duty to Cooperate.**  The Parties shall cooperate, in good faith, to execute any documents, agreements, court filings, or other instruments required by the Settlement Agreement, including any dismissals of Claims, consent orders of the Court, final guaranties, payment instructions or acknowledgments, or any other such documents or modifications thereto.

**8.10  Effect of Failure to Execute.**  If any of the States of Alabama, Florida, Louisiana, Mississippi or Texas does not execute this Settlement Agreement, this Settlement Agreement shall become null and void as to all other Parties.

**8.11  Signatories.**

A.  This Settlement Agreement may be executed in one or more counterparts, each of which will be deemed an original copy of the Agreement and all of which, when taken together, will constitute one and the same Settlement Agreement.

B.  Each one of the States of Alabama, Florida, Louisiana, Mississippi, and Texas hereby represents and warrants that (i) such Gulf State's undersigned representative has authority to execute this Settlement Agreement on behalf of the respective Gulf State for whom the representative is signing and (ii) it has not sold or otherwise transferred or assigned any of the Claims or any interest in such Claims.

C.  Each undersigned BP Entity hereby represents and warrants that its undersigned representative has authority to execute this Settlement Agreement on behalf of the BP Entity for whom the representative is signing.

D.  BPCNA and BP p.l.c. are signing this Settlement Agreement, and shall be considered Parties to this Settlement Agreement, only for the purpose of binding BP p.l.c. and BPCNA to their respective obligations as guarantors pursuant to Section V of this Settlement Agreement.

**8.12  Timing.**  In computing any period of time under this Settlement Agreement, the Primary Guaranty, or the Secondary Guaranty, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until 5 p.m. Central Time of the next business day.

**For the State of Alabama**

By: _____

Governor of the State of Alabama

Date: _____ 9/14/2015

By: _____

Attorney General for the State of Alabama

Date: _____ 9-14-15

**For the State of Florida**

By: _____

Attorney General for the State of Florida

Date: _____9 / 15 / 15_____

By: _____

Governor of the State of Florida

Date: _____9/15/15_____

**For the State of Louisiana**

By: _____

Bobby Jindal
Governor of the State of Louisiana

Date: _September 15, 2015_____

By: _____

James D. "Buddy" Caldwell
Attorney General for the State of Louisiana

Date: _____

**For the State of Louisiana**

By: _____

Bobby Jindal

Governor of the State of Louisiana

Date: _____

By: _____

James D. "Buddy" Caldwell

Attorney General for the State of Louisiana

Date: September 14, 2015

**For the State of Mississippi**

By: _____

Governor of the State of Mississippi

Date: _____

By: _____

Attorney General for the State of Mississippi

Date: _____

**For the State of Texas**

By: _____
    Governor of the State of Texas

Date: _____ 9/14/15 _____

By: _____
    Attorney General for the State of Texas

Date: _____


Approved:

TEXAS GENERAL LAND OFFICE


By: _____
    Anne Idsal, Chief Clerk
    Texas General Land Office


TEXAS COMMISSION ON ENVIRONMENTAL QUALITY


By: _____
    Richard Hyde, Executive Director
    Texas Commission on Environmental Quality


TEXAS PARKS AND WILDLIFE DEPARTMENT


By: _____
    Carter Smith, Executive Director
    Texas Parks and Wildlife Department

**For the State of Texas**

By: _____
　　　　Governor of the State of Texas

Date: _____

By: _____
　　　　Attorney General of the State of Texas

Date: ___9/15/15_____

　　　Approved:

　　　　　TEXAS GENERAL LAND OFFICE

By: _____
　　　　Anne Idsal, Chief Clerk
　　　　Texas General Land Office

　　　　　TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

By: _____
　　　　Richard Hyde, Executive Director
　　　　Texas Commission on Environmental Quality

　　　　　TEXAS PARKS AND WILDLIFE DEPARTMENT

By: _____
　　　　Carter Smith, Executive Director
　　　　Texas Parks and Wildlife Department

**For the State of Texas**


By: _____
Governor of the State of Texas

Date: _____


By: _____
Attorney General for the State of Texas

Date: _____


Approved:

TEXAS GENERAL LAND OFFICE

By: _____
Anne Idsal, Chief Clerk
Texas General Land Office


TEXAS COMMISSION ON ENVIRONMENTAL QUALITY


By: _____
Richard Hyde, Executive Director
Texas Commission on Environmental Quality


TEXAS PARKS AND WILDLIFE DEPARTMENT


By: _____
Carter Smith, Executive Director
Texas Parks and Wildlife Department

21

**For the State of Texas**

By: _____
Governor of the State of Texas

Date: _____


By: _____
Attorney General for the State of Texas

Date: _____


Approved:

TEXAS GENERAL LAND OFFICE

By: _____
Anne Idsal, Chief Clerk
Texas General Land Office


TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

By: _____
Richard Hyde, Executive Director
Texas Commission on Environmental Quality


TEXAS PARKS AND WILDLIFE DEPARTMENT

By: _____
Carter Smith, Executive Director
Texas Parks and Wildlife Department

**For the State of Texas**


By: _____
Governor of the State of Texas

Date: _____


By: _____
Attorney General for the State of Texas

Date: _____


Approved:

      TEXAS GENERAL LAND OFFICE


By: _____
      Anne Idsal, Chief Clerk
      Texas General Land Office


      TEXAS COMMISSION ON ENVIRONMENTAL QUALITY


By: _____
      Richard Hyde, Executive Director
      Texas Commission on Environmental Quality


      TEXAS PARKS AND WILDLIFE DEPARTMENT


By: _____
      Carter Smith, Executive Director
      Texas Parks and Wildlife Department

**Gulf States Economic Claims Settlement Agreement**

**For BP Exploration & Production Inc.**

By: _____

Michael Daneker
ARNOLD & PORTER LLP
601 Massachusetts Avenue NW
Washington, DC 20001

Date: _____9 - 28 - 2015_____

**For BP Corporation North America Inc.**

By: _____

Eric L. Nitcher
Assistant General Counsel, BPCNA
501 Westlake Park Blvd
Houston, Texas 77079

Date: _____9 - 28 - 2015_____

**For BP p.l.c.**

By: _____

Daryl A. Libow
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006

Date: _____9 - 28 - 2015_____

**ATTACHMENT 1**

**PAYMENT SCHEDULE**
**FOR STATE CLAIMS PAYMENT**

| Assumed Year*** | Payments to Alabama | Payments to Florida | Payments to Louisiana | Payments to Mississippi | Payments to Texas | Total Annual Payments by BPXP |
|---|---|---|---|---|---|---|
| 2016 | $100,000,000**** | $400,000,000 | $200,000,000 | $150,000,000 | $50,000,000 | **$900,000,000** |
| 2017 | $50,000,000 | | | | | **$50,000,000** |
| 2018 | $50,000,000 | | | | | **$50,000,000** |
| 2019 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2020 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2021 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2022 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2023 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2024 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2025 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2026 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2027 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2028 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2029 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2030 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2031 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2032 | $53,333,333 | $106,666,666 | $53,333,333 | $40,000,000 | $6,666,666 | **$259,999,998** |
| 2033 | $53,333,338 | $106,666,676 | $53,333,338 | $40,000,000 | $6,666,676 | **$260,000,028** |
| **Totals** | **$1,000,000,000** | **$2,000,000,000** | **$1,000,000,000** | **$750,000,000** | **$150,000,000** | **$4,900,000,000** |

***The above schedule assumes the Settlement Agreement will have an Effective Date in 2016.  The 2016 payments are due within ninety (90) days of the Effective Date.  Each annual payment thereafter is due on the anniversary of the Effective Date.
****Alabama's payment of $100,000,000 in (assumed year) 2016 shall be split equally between the two state accounts listed in Attachment 2.

**ATTACHMENT 2**

**PAYMENT INSTRUCTIONS FROM EACH GULF STATE**

**Alabama Payment Instructions**

All payments under this Settlement Agreement to be made to the State of Alabama shall be made by wire transfer using the following instructions:

A.  Except as provided in (B), wire all payments to the State of Alabama as follows:

      Financial Institution:  ████████████

      ABA Routing Number:  ████████

      Account to Credit:  ████████████

B.  Wire $50,000,000 of the State's first annual payment (assumed year 2016) to the State of Alabama, Department of Conservation and Natural Resources as follows:

      Financial Institution:  ████████████████

      ABA Routing Number:  ████████████

      Account to Credit:  ████████

████████████████████████████████████████████████
████████████████████████████████████

**<u>Florida Payment Instructions</u>**

All payments under this Settlement Agreement to the State of Florida shall be made by wire transfer using the following instructions:

Receiving Bank: █████████████████

Routing Number: █████████

Account Number: █████████

Beneficiary: ████████████████

Account Title: ███████████████████████

Address: ████████████
████████████

███████████████████████████████████████
███████████████████████████

**<u>Louisiana Payment Instructions</u>**

All payments under this Settlement Agreement to the State of Louisiana shall be made by wire transfer using the following instructions:

Bank Name: ███████████████

Account Name: ████████████████

Account #: █████████

ABA Routing #: ███████

████████████████████████████████████████
███████████████████████████
████████████

**<u>Mississippi Payment Instructions</u>**

All payments under this Settlement Agreement to be made to the State of Mississippi shall be
made by wire transfer using the following instructions:

Beneficiary Address: ███████████

Beneficiary Bank Account Number: █████████

Beneficiary Bank: ███████████

ABA Routing Number: ███████

Bank Address: ████████

26

**<u>Texas Payment Instructions</u>**

All payments under this Settlement Agreement to be made to the State of Texas shall be made by wire transfer to the Comptroller of Public Accounts, State of Texas, for the Attorney General's Suspense Account using the following instructions:

Financial Institution: ████████████

Routing Number: ██████

Account Name: ████████████████████

Account Number to Credit: ██████

Reference: ████████████████

Attention: ██████████████████████

Contact: ████████████████

████████████████████████████████ ████

████████████████████████████

██████

**ATTACHMENT 3**

**LIST OF PARTIES SUBJECT TO COVENANT NOT TO SUE**

Airborne Support Inc.
Airborne Support International Inc.
Alaska Clean Seas, Inc.
Anadarko Exploration & Production LP
Anadarko E&P Company LP
Anadarko Petroleum Corporation
Art Catering, Inc.
Cameron Corporation
Cameron International Corporation
Cameron International Corporation f/k/a Cooper Cameron Corporation
Cameron International Corporation d/b/a/ Cameron Systems Corporation
Crowder Gulf Disaster Recovery
Court Supervised Settlement Program in MDL 2179 and its Administrators, Employees,
        and Agents
Deepwater Horizon Oil Spill Trust, Trustees and Employees
Det Norske Veritas (DNV)
Dril-Quip, Inc.
DRC Emergency Services, Inc.
DRC Marine, LLC
Dynamic Aviation
Kenneth Feinberg
Feinberg Rozen LLP
Fluor Corporation
Gulf Coast Claims Facility, Administrators, Employees, and Agents
Halliburton Company
Halliburton Energy Services, Inc.
International Air Response
LLOG Exploration Offshore, L.L.C.
LLOG Bluewater, L.L.C.
LLOG  Bluewater Holdings, L.L.C.
Lloyd's Syndicate 1036 and other Lloyd's Syndicates named as defendants in MDL 2179
Lynden Companies
Marine Spill Response Corporation
Mitsui & Co., Ltd.
Mitsui & Co. (U.S.A.), Inc.
Mitsui Oil Exploration Co., Ltd.
Ministry of Economy, Trade and Industry of the Government of Japan
M-I Drilling Fluids L.L.C.
M-I, LLC a/k/a M-I Swaco
MOEX Offshore 2007 LLC
MOEX USA Corporation

Moran Environmental Recovery
Nalco Company
NALCO Holding Company
National Response Corporation
O'Brien's Response Management
Oceaneering International, Inc.
Oil Spill Liability Trust Fund
Parsons Commercial Technology Group, Inc.
QBE Marine & Energy Syndicate 1036
QBE Underwriting Ltd.
Schlumberger, Ltd.
SEACOR Marine
SEACOR Holdings, Inc.
SEACOR Offshore LLC
Sperry Drilling Services f/k/a Sperry Sun Drilling Services
The Response Group, LLC
Tidewater Inc.
Tidewater Marine, LLC
Transocean Deepwater Inc.
Transocean Holdings LLC
Transocean Inc.
Transocean Ltd.
Transocean Offshore Deepwater Drilling Inc.
Triton Asset Leasing GmbH
Weatherford International, Inc.
Weatherford U.S. L.P.
Witt O'Brien's
Worley Catastrophe Services LLC
Worley Companies Inc.

**ATTACHMENT 4**

**PRIMARY GUARANTY BY**

**BP CORPORATION NORTH AMERICA INC.**

**IN FAVOR OF**

**THE STATE OF**
**[INSERT ALABAMA, FLORIDA, LOUISIANA, MISSISSIPPI OR TEXAS]**

**RELATING TO THE SETTLEMENT AGREEMENT BETWEEN THE GULF STATES AND THE BP ENTITIES WITH RESPECT TO ECONOMIC AND OTHER CLAIMS ARISING FROM THE *DEEPWATER HORIZON* INCIDENT**

1. Guaranty

2. Unconditional Guaranty

3. Waiver

4. Subrogation

5. Notices

6. A Valid Demand, When Required, and Payment

7. No Waiver; Remedies

8. Term; Termination

9. Assignment; Successors and Assigns

10. No Third Party Beneficiaries

11. Amendments

12. Captions

13. Representations and Warranties

14. Severability

15. Jurisdiction

16. Governing Law

# PRIMARY GUARANTY

This Primary Guaranty (the "Guaranty") is made the _____ day of _____, 2015 and effective as of the Effective Date (as defined in the Settlement Agreement) by BP Corporation North America Inc., an Indiana corporation, ("Primary Guarantor"), in favor of the State of **[Insert one of Alabama, Florida, Louisiana, Mississippi, or Texas]** (the "Beneficiary").

WHEREAS, the Beneficiary, as well as the States of **[Insert States]**, on the one hand, and BP Exploration & Production Inc. ("BPXP"), the Primary Guarantor, and BP p.l.c., on the other hand, are parties to that Settlement Agreement between the Gulf States and the BP Entities with respect claims arising from the *Deepwater Horizon* Incident dated _____, 2015 (the "Settlement Agreement") giving rise to those payment obligations due from BPXP to the Beneficiary as more fully described and set forth in Paragraph 3.1 of and in Attachment 1 to the Settlement Agreement (the "Guaranteed Obligations");

WHEREAS, the Primary Guarantor is an indirect parent of BPXP; and

WHEREAS, for the benefit of the Beneficiary, the Primary Guarantor has agreed to provide this Guaranty pursuant to Section V (*Financial Assurance)*of the Settlement Agreement.

NOW, THEREFORE, in consideration of good and valuable consideration to the Primary Guarantor, including the Settlement Agreement, the adequacy, receipt and sufficiency of which are hereby acknowledged, the Primary Guarantor hereby agrees as follows:

1.   **GUARANTY.**

    (a)    The Primary Guarantor hereby irrevocably and unconditionally guarantees that if (i) BPXP has failed to make a payment required under the Settlement Agreement within sixty (60) days after such payment has become due under the Settlement Agreement; or (ii) BPXP has filed for bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency; or (iii) any third-party has petitioned a court to place BPXP in bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency, an order for relief is entered, and any such filing or petition is not dismissed within sixty (60) days of entry of such order for relief (any of (i), (ii) or (iii) immediately above, a "BPXP Default"), the Primary Guarantor shall within sixty (60) days pay to the Beneficiary the unpaid Guaranteed Obligations then due and payable by BPXP to the Beneficiary in accordance with the payment terms of the Settlement Agreement.

    (b)    The Primary Guarantor shall reimburse the Beneficiary for all sums paid to the Beneficiary by BPXP with respect to such Guaranteed Obligations which the Beneficiary is subsequently required to return to BPXP or a representative of BPXP's creditors as a result of BPXP's bankruptcy, insolvency, liquidation, or similar proceeding.

(c)     In respect of subsection 1(b), this Guaranty shall be a continuing guaranty of all of the Guaranteed Obligations and shall apply to and secure any ultimate balance due or remaining unpaid to the Beneficiary; and this Guaranty shall not be considered as wholly or partially satisfied by the payment or liquidation at any time of any sum of money for the time being due or remaining unpaid to the Beneficiary.

(d)     This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any of the Guaranteed Obligations is rescinded or must otherwise be returned by the Beneficiary on the insolvency, bankruptcy or reorganization of BPXP or the Primary Guarantor or otherwise, all as though such payment had not been made.

The Primary Guarantor's obligations and liability under this Guaranty shall be limited to payment obligations only.

**2.     UNCONDITIONAL GUARANTY.**  Save due performance by BPXP or the Primary Guarantor, the liability of Primary Guarantor under this Guaranty shall not be limited, lessened or discharged by any of the following:

(a)     any incapacity or disability or lack or limitation of status or power of BPXP or that BPXP may not be a legal entity;

(b)     the bankruptcy or insolvency of BPXP; or

(c)     any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of the Guaranteed Obligations or the rights of the Beneficiary with respect thereto;

The obligations of the Primary Guarantor hereunder are several and not joint with BPXP or any other person, and are primary obligations for which the Primary Guarantor is the principal obligor.  There are no conditions precedent to the enforcement of this Guaranty, except as expressly contained herein or as set forth in the Settlement Agreement. It shall not be necessary for the Beneficiary, in order to enforce payment by the Primary Guarantor under this Guaranty, to exhaust any of its remedies or recourse against BPXP, any other guarantor, or any other person liable for the payment, and the Primary Guarantor's obligations hereunder shall apply regardless of whether recovery of all such Guaranteed Obligations may be discharged or uncollectible in any bankruptcy, insolvency or other proceeding, or otherwise unenforceable.

**3.     WAIVER.**  Except as set forth in the Settlement Agreement or this Guaranty, the Primary Guarantor hereby waives:

(a)     notice of acceptance of this Guaranty, notice of the creation or existence of any of the Guaranteed Obligations, and notice of any action by the Beneficiary in reliance hereon or in connection herewith;

(b)     presentment, demand for payment, notice of dishonor or nonpayment, protest and notice of protest, or any other notice of any other kind with respect to the Guaranteed Obligations;

(c)     any requirement that suit be brought against, or any other action by the Beneficiary be taken against, or any notice of default or other notice to be given to, or any demand be made on BPXP or any other person, or that any other action be taken or not taken as a condition to the Primary Guarantor's liability for the Guaranteed Obligations under this Guaranty or as a condition to the enforcement of this Guaranty against the Primary Guarantor; and

(d)     any other circumstance which might otherwise constitute a defense, set-off or counterclaim available to, or a legal or equitable discharge of, BPXP in respect of the Guaranteed Obligations or the Primary Guarantor in respect of this Guaranty.

**4.     SUBROGATION.**  The Primary Guarantor shall be subrogated to all rights of the Beneficiary against BPXP in respect of any amounts paid by the Primary Guarantor pursuant to the Guaranty, provided that the Primary Guarantor waives any rights it may acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise (including, without limitation, any statutory rights of subrogation under Section 509 of the Bankruptcy Code, 11 U.S.C. § 509, or otherwise), reimbursement, exoneration, contribution, indemnification, or any right to participate in any claim or remedy of the Beneficiary against BPXP or any collateral which the Beneficiary now has or acquires, until all of the Guaranteed Obligations due the Beneficiary shall have been irrevocably and indefeasibly paid to the Beneficiary in full.  If (a) the Primary Guarantor shall perform and shall make payment to the Beneficiary of all or any part of the Guaranteed Obligations due such Beneficiary, and (b) all such Guaranteed Obligations due the Beneficiary shall have been indefeasibly paid in full, the Beneficiary shall, at the Primary Guarantor's request, execute and deliver to the Primary Guarantor appropriate documents necessary to evidence the transfer by subrogation to the Primary Guarantor of any interest in such Guaranteed Obligations resulting from such payment of the Primary Guarantor.

**5.     NOTICES.**  Notice will be provided in accordance with the terms of Section VII (*Notice*) of the Settlement Agreement.

**6.     A VALID DEMAND, WHEN REQUIRED, AND PAYMENT.**

(a)     With respect to any payments required pursuant to Paragraph 5.7 of the Settlement Agreement, the Primary Guarantor is only liable to pay under this Guaranty in accordance with Section 1 hereof  if the Primary Guarantor receives from Beneficiary a demand in writing that (i) references this Guaranty, the Guaranteed Obligations due but unpaid to the Beneficiary, and the existence and continuance of a BPXP Default, (ii) is signed by a duly authorized representative of the Beneficiary and (iii) is delivered to the Primary Guarantor pursuant to Section 5 hereof.  The Primary Guarantor shall pay, or cause to be paid, Guaranteed Obligations for which a demand is required within sixty (60) days of receipt of such demand, unless, within sixty (60) days, the BPXP Default giving rise to such demand has been paid in full or otherwise remedied by agreement of the Beneficiary and BPXP.

With respect to all other payments required in the Settlement Agreement, no notice, presentment, or demand shall be required under this Guaranty.  The Primary Guarantor shall pay, or cause to be paid, such Guaranteed Obligations within sixty (60) days of the BPXP Default unless the BPXP Default has been paid in full or otherwise remedied by agreement of the Beneficiary and BPXP.

**7.**     **NO WAIVER; REMEDIES.**  No failure on the part of the Beneficiary to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

**8.**     **TERM; TERMINATION.**  This Guaranty shall not take effect until the Effective Date (as defined in the Settlement Agreement) of the Settlement Agreement.  This Guaranty shall be and continue to be in full force and effect from the Effective Date until (the earliest of) (i) the date the Guarantied Obligations to the Beneficiary under the Settlement Agreement have been fully and indefeasibly paid;  (ii) the date that this Guaranty has been replaced by an alternative financial assurance instrument as provided for in Paragraph 5.6 of the Settlement Agreement; or (iii) the date the Settlement Agreement has been terminated or is held invalid or unenforceable by a court.  This Guaranty shall terminate in full on the earliest date upon which any of conditions (i), (ii), or (iii) in the foregoing sentence has been satisfied.

**9.**     **ASSIGNMENT; SUCCESSORS AND ASSIGNS.**

(a)     The Primary Guarantor's payment obligations under this Guaranty shall be binding on any legal successor or assign of the Primary Guarantor in accordance with the requirements of Paragraph 5.5 of the Settlement Agreement.

(b)     No portion of this Guaranty shall provide any rights to, or be enforceable by, any person or entity other than the Beneficiary and the Primary Guarantor, and the Beneficiary may not assign or otherwise convey any right to enforce any provision of this Guaranty.  Without limiting the foregoing, any assignment of the Beneficiary's rights of payment under the Settlement Agreement shall be with recourse to the Beneficiary only and without recourse to the Primary Guarantor.

**10.**     **NO THIRD PARTY BENEFICIARIES.**  This Guaranty is for the exclusive benefit and convenience of the Primary Guarantor and the Beneficiary.  Nothing contained herein shall be construed as granting, vesting, creating, or conferring any right of action or any other right or benefit upon any other third party.

**11.**     **AMENDMENTS.**  No amendment or other modification of the terms of this Guaranty, including without limitation, those related to payment terms, shall be effective unless it is in writing, is signed by Primary Guarantor and the Beneficiary, and states that it is expressly intended to give effect to the applicable amendment or modification hereto.  No waiver of any provision of this Guaranty nor consent to any departure by the Primary Guarantor therefrom, including without limitation, those related to payment terms, shall in any event be effective unless such waiver or consent shall refer to this Guaranty, be in writing, and be signed by the Beneficiary.  Any such waiver or consent shall be effective only in the specific instance and for

the specific purpose for which it was given.

12.　**CAPTIONS.**　The captions in this Guaranty have been inserted for convenience only and shall be given no substantive meaning or significance whatsoever in construing the terms and provisions.

13.　**REPRESENTATIONS AND WARRANTIES.**　The Primary Guarantor represents and warrants as follows:

    (a)　the Primary Guarantor is duly organized, validly existing, and in good standing under the laws of the State of Indiana.

    (b)　the Primary Guarantor has full power and authority to execute, deliver, and perform its obligations under this Guaranty, and no limitation on the powers of the Primary Guarantor will be exceeded as a result of entering into this Guaranty;

    (c)　the execution, delivery, and performance of this Guaranty have been and remain duly authorized by all necessary corporate action and do not contravene the Primary Guarantor's constitutional documents; and

    (d)　this Guaranty constitutes the legal, valid, and binding obligation of the Primary Guarantor, enforceable against it by the Beneficiary in accordance with its terms, subject to applicable law.

14.　**SEVERABILITY.**　Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

15.　**JURISDICTION.**　The Primary Guarantor and the Beneficiary each hereby irrevocably agree to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of  Louisiana in MDL 2179 (the "Court"). The United States District Court for the Eastern District of Louisiana (and appellate courts thereof) are to have exclusive jurisdiction to settle any disputes which may arise out of or in connection with this Guaranty.  Further, upon termination of MDL 2179, any legal action or proceedings arising out of or in connection with this Guaranty shall be brought in the Court, and the Primary Guarantor and the Beneficiary irrevocably submit to the exclusive jurisdiction and venue of the Court with respect to this Guaranty.

16.　**GOVERNING LAW.**　THIS GUARANTY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD OR REFERENCE TO THE CONFLICT OF LAWS PRINCIPLES OF ANY JURISDICTION.

IN WITNESS WHEREOF, the Primary Guarantor has caused this Guaranty to be duly executed and delivered by its duly authorized officer on this ___day of _____, 2015  but this Guaranty shall be effective as of the Effective Date (as defined in the Settlement Agreement).


BP CORPORATION NORTH AMERICA INC.


By:_____

Name: _____

Title:_____

The undersigned acknowledges and agrees to the foregoing Primary Guaranty by BP Corporation North America Inc. in favor of the State of [Beneficiary] :

Date: _____                _____
                                      [Name]
                                      Governor
                                      State of [Beneficiary]

The undersigned acknowledges and agrees to the foregoing Primary Guaranty by BP Corporation North America Inc. in favor of the State of [Beneficiary]:

Date:    _____          _____

                                  [Name]
                                  Attorney General
                                  State of [Beneficiary]

**ATTACHMENT 5**

**SECONDARY GUARANTY BY**

**BP P.L.C.**

**IN FAVOR OF**

**THE STATE OF**
**[INSERT ONE OF ALABAMA, FLORIDA, LOUISIANA, MISSISSIPPI OR TEXAS]**

**RELATING TO THE SETTLEMENT AGREEMENT BETWEEN THE GULF STATES AND THE BP ENTITIES WITH RESPECT TO ECONOMIC AND OTHER CLAIMS ARISING FROM THE *DEEPWATER HORIZON* INCIDENT**

1. Definitions and Interpretation

2. Guaranty

3. Limitation on Exercise of Secondary Guarantor's Rights

4. A Valid Demand; When Required Under the Guaranty

5. No Implied Waivers

6. Representations and Warranties

7. Amendment to the Agreement

8. Assignment and Transfer

9. Communications

10. Amendments

11. Third Party Rights

12. Governing Law and Jurisdiction

## SECONDARY GUARANTY

This Secondary Guaranty is made the ___ day of _____, 2015 and is effective as of the Effective Date (as defined in the Settlement Agreement (as defined below)) by BP p.l.c., a company incorporated in England whose registered office is at 1 St. James's Square, London, SW1Y 4PD England ("Secondary Guarantor"), in favor of the State of **[Insert one of Alabama, Florida, Louisiana, Mississippi, or Texas]** ("Beneficiary").

WHEREAS, the Beneficiary, as well as the States of **[Insert States]**, on the one hand, and BP Exploration & Production Inc. ("BPXP"), a wholly-owned indirect subsidiary of the Secondary Guarantor, BP Corporation North America ("BPCNA") and the Secondary Guarantor, on the other hand, have entered into a Settlement Agreement between the Gulf States and the BP Entities with respect to economic and other claims arising from the Deepwater Horizon Incident, dated _____, 2015 (the "Settlement Agreement");

WHEREAS, BPCNA (the "Primary Guarantor"), another wholly-owned indirect subsidiary of the Secondary Guarantor, and indirect parent company of BPXP, has agreed to guarantee for the benefit of the Beneficiary the Guaranteed Obligations to the Beneficiary (such guarantee, the "Primary Guaranty");

WHEREAS, the Secondary Guarantor has agreed to provide this Guaranty pursuant to Section V (*Financial Assurance*) of the Settlement Agreement;

AND WHEREAS, in consideration of good and valuable consideration to the Secondary Guarantor, including the Settlement Agreement, the adequacy, receipt and sufficiency of which are hereby acknowledged by the Secondary Guarantor;

NOW THIS GUARANTY PROVIDES as follows:

## 1.    DEFINITIONS AND INTERPRETATION.

**1.1    Definitions.**  In this Guaranty, except to the extent that the context requires otherwise, terms defined and references construed in the Settlement Agreement shall have the same meanings and construction when used in this Guaranty and, in addition, unless the context otherwise requires, any reference to:

(a)    "**BPCNA Default**" means a BPXP Default has occurred and either (i) BPCNA has failed to make a payment required under the Primary Guaranty within sixty (60) Days after a BPXP Default; or (ii) BPCNA has filed for bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency; or (iii) any third party has petitioned a court to place BPCNA in bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency, an order for relief is entered, and any such filing

or petition has not been dismissed within sixty (60) Days of such order for relief.

(b)     **"BPXP Default"** means either (i) BPXP has failed to make a payment required under the Consent Decree within sixty (60) Days after such payment has become due under the Consent Decree; or (ii) BPXP has filed for bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency; or (iii) any third party has petitioned a court to place BPXP in bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency, an order for relief is entered, and any such filing or petition has not been dismissed within sixty (60) Days of such order for relief.

(c)     "**Business Day**" means a day (other than a Saturday or Sunday) on which banks are open for general business in London and New York.

(d)     "**Day**" means a calendar day unless expressly stated to be a Business Day.

(e)     "**Guaranteed Obligations**" means any sum of money of any kind owed by BPXP to the Beneficiary under the Settlement Agreement.

(f)     "**Valid Demand**" means a demand issued by the Beneficiary in accordance with Paragraph 4.2.

**1.2     Interpretation of certain references.**

(a)     This "**Guaranty**" means this Secondary Guaranty, as amended, supplemented, novated, restated, or replaced by any document from time to time and any document which amends, supplements, novates, restates, or replaces this Guaranty.

(b)     A "**law**" includes common or customary law and any constitution, decree, judgment, legislation, order, ordinance, regulation, statute, treaty or other legislative measure, in each case of any jurisdiction whatever.

(c)     Any "**obligation**" of any Person under this Guaranty or any other document referenced herein is a reference to an obligation expressed to be assumed by that Person or imposed on that Person under this Guaranty or that other document, as the case may be.

(d)     A "**Person**" includes any individual, company, corporation, firm, partnership, joint venture, association, organization, trust, state or agency of a state.

(e)     A "**BPXP Default**" and/or a "**BPCNA Default**" is "**continuing**" if it has not been remedied.

2.      **GUARANTY.**

**2.1     Guaranty.**  As consideration for the  Beneficiary's entry into the Settlement Agreement and subject to the terms of this Guaranty, including, without limitation, the occurrence and continuance of a BPXP Default and a BPCNA Default, the Secondary Guarantor hereby irrevocably, unconditionally, and absolutely guarantees for the benefit of the Beneficiary, that if (i) there exists and is continuing a BPXP Default, and (ii) there exists and is continuing a BPCNA Default, the Secondary Guarantor shall, within fifteen (15) Business Days of such BPCNA Default, pay to such Beneficiary the unpaid Guaranteed Obligations then due and payable by BPXP to such Beneficiary.  The Beneficiary acknowledges that the obligations under this Paragraph 2.1 shall have no effect unless both a BPXP Default and a BPCNA Default shall have occurred and are continuing, and in such instances this Guaranty remains irrevocable, unconditional, and absolute as described in this Guaranty.  The Secondary Guarantor's obligations and liability under this Guaranty shall be limited to payment obligations only.

**2.2     Secondary Guarantor as Principal Debtor.**  As between the Secondary Guarantor and the Beneficiary, but without affecting BPXP's obligations, the Secondary Guarantor shall be liable under this Guaranty as if it were the sole principal debtor and not merely a surety.  Accordingly, except as otherwise provided in this Guaranty (including, without limitation, Paragraph 2.4), the liability of the Secondary Guarantor under this Guaranty shall not be released, affected or discharged by any act, matter, or omission which (but for this Paragraph) would have released, affected, or discharged the liability of the Secondary Guarantor, including without limitation, any of the following:

(a)      any incapacity or disability or lack or limitation of status or power of BPXP or BPCNA or that BPXP or BPCNA may not be a legal entity;

(b)      the bankruptcy or insolvency of BPXP or BPCNA; or

(c)      any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of the Guaranteed Obligations or the rights of the Beneficiary with respect thereto.

**2.3     Secondary Guarantor's Obligations Additional.**  This Guaranty shall be in addition to and not in substitution for any other rights, remedy, security, or guarantees which the Beneficiary may now or hereafter hold from or on account of the Guaranteed Obligations and subject to a BPXP Default and a BPCNA Default having occurred and being continuing, may be enforced without first having recourse to such other rights, remedy, security, or guarantees.

**2.4     Secondary Guarantor's Obligations Continuing.**  The Secondary Guarantor's obligations under this Guaranty are and remain in full force and effect by way of continuing security, until the earliest of the following:

(a)      all Guaranteed Obligations payable by BPXP to the Beneficiary under the Settlement Agreement have been paid in full;

(b)     the replacement of this Guaranty by an alternative financial assurance instrument as provided by Paragraph 5.6 of the Settlement Agreement; and

(c)     the date the Settlement Agreement has been terminated in accordance with its terms, or is held invalid or unenforceable by a court.

This Guaranty shall terminate in full on the earliest date upon which any of the conditions (a), (b), or (c) of this Paragraph 2.4 has been satisfied with respect to the Guaranteed Obligations due to the Beneficiary.  Unless terminated pursuant to Paragraphs 2.4(a), (b), or (c), the Secondary Guarantor's obligations remain in effect in each case, notwithstanding absorption, amalgamation, or any other changes in the Secondary Guarantor's constitution.

**2.5     No Avoidance of Payment.**  If all or part of any payment received or recovered by the Beneficiary in respect of the Guaranteed Obligations is, on the subsequent bankruptcy, insolvency, corporate reorganization or other similar event of BPXP, avoided or set aside under any laws relating to bankruptcy, insolvency, corporate reorganization or other such similar events, and the amount of such payment is required to be refunded to BPXP or other Persons entitled through BPXP, such payment shall not be considered as discharging or diminishing the liability of the Secondary Guarantor and this Guaranty shall continue to apply as if such amount had at all times remained owing by BPXP.

**3.      LIMITATION ON EXERCISE OF SECONDARY GUARANTOR'S RIGHTS.**

Notwithstanding any payment or payments made by the Secondary Guarantor hereunder, so long as any Guaranteed Obligation remains outstanding:

(a)     the Secondary Guarantor hereby irrevocably waives any right of subrogation to the rights of the Beneficiary against BPXP and any right to be reimbursed or indemnified by BPXP or by any other guarantor of all or any part of the Guaranteed Obligations until such time as all the Guaranteed Obligations due the Beneficiary shall have been irrevocably and indefeasibly paid to the Beneficiary in full; and

(b)     if, notwithstanding the foregoing, any amount is received or recovered by the Secondary Guarantor as a result of exercising such rights, such amount shall be held by the Secondary Guarantor in trust for the Beneficiary and shall, forthwith upon receipt by the Secondary Guarantor, be paid to the Beneficiary, to be applied against the Guaranteed Obligations due to the Beneficiary in such order as the Beneficiary may determine.

**4.      A VALID DEMAND; WHEN REQUIRED UNDER THE GUARANTY.**

**4.1     When Secondary Guarantor's Liability Is Subject to Valid Demand.**  With respect to any payments required of BPXP pursuant to Paragraph 5.7 of the Settlement Agreement, the Secondary Guarantor is only liable to pay under this Guaranty in accordance with Paragraph 2.1 if it receives from the Beneficiary a demand in writing complying with  Paragraph 4.2 ("Valid Demand").  With respect to all other payments

required of BPXP pursuant to the Settlement Agreement, no demand shall be required under this Guaranty.

**4.2     Valid Demand.**

(a)     The Beneficiary may only issue a Valid Demand to the Secondary Guarantor under this Guaranty at least five (5) Business Days after it has sent a written notification to BPXP and the Primary Guarantor of its intention to make a demand under this Guaranty (and which notification may not in any event be sent before a BPXP Default and a BPCNA Default have occurred and are continuing) stating the reasons for making such demand and identifying the Guaranteed Obligations due but unpaid to the Beneficiary in respect of which there has been a BPXP Default and a BPCNA Default.

(b)     Any Valid Demand made of the Secondary Guarantor under this Guaranty shall be accompanied with a copy of a written notification referred to in Paragraph 4.2(a), dated and sent to BPXP and the Primary Guarantor no less than five (5) Business Days before the date of the demand, and delivered or sent by post or facsimile to the Secondary Guarantor at its address as provided under Section 9.

**5.     NO IMPLIED WAIVERS.**  No failure on the part of the Beneficiary to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof, or the exercise of any other right.

**6.     REPRESENTATIONS AND WARRANTIES.**  The Secondary Guarantor hereby represents and warrants to the Beneficiary that:

(a)     the Secondary Guarantor is duly incorporated and is a validly existing company under the laws of its place of incorporation, has the capacity to sue or be sued in its own name, and has power to carry on its business as now being conducted and to own its property and other assets;

(a)     the Secondary Guarantor has full power and authority to execute, deliver, and perform its obligations under this Guaranty, and no limitation on the powers of the Secondary Guarantor will be exceeded as a result of the Secondary Guarantor entering into this Guaranty;

(b)     the execution, delivery, and performance by the Secondary Guarantor of this Guaranty and the performance of its obligations under this Guaranty have been duly authorized by all necessary corporate action and do not contravene or conflict with the Secondary Guarantor's memorandum and articles of association; and

(c)     this Guaranty constitutes the legal, valid, and binding obligation of the

Secondary Guarantor, enforceable against it by the Beneficiary in accordance with its terms, subject to applicable law.

**7.**   **AMENDMENT TO THE SETTLEMENT AGREEMENT.**  The Secondary Guarantor's obligations under this Guaranty are subject to modification of the terms of the Settlement Agreement having been made in accordance with the provisions of the Settlement Agreement.

**8.**   **ASSIGNMENT AND TRANSFER.**

   **8.1**   **Burden and Benefit.**  This Guaranty shall be binding upon the Secondary Guarantor, its successors and assigns and shall inure to the benefit of the Beneficiary and its successors or assigns. Any reference in this Guaranty to the Secondary Guarantor or the Beneficiary shall be construed to refer to relevant successors and assigns accordingly.

   **8.2**   **Transfer by Secondary Guarantor.**  The Secondary Guarantor's payment obligations under this Guaranty shall be binding on any legal successor or assign of the Secondary Guarantor in accordance with the requirements of Paragraph 5.5 of the Settlement Agreement.

   **8.3**   **Transfer by Beneficiary.**  No portion of this Guaranty shall provide any rights to, or be enforceable by, any person or entity other than the Beneficiary and the Secondary Guarantor, and the Beneficiary may not assign or otherwise convey any right to enforce any provision of this Guaranty.  Without limiting the foregoing, any assignment of the Beneficiary's rights of payment under the Settlement Agreement shall be with recourse to the Beneficiary only and without recourse to the Secondary Guarantor.

**9.**   **COMMUNICATIONS.**

   **9.1**   **Addresses.**

      (a)   Secondary Guarantor: Any demand or other communication made of the Secondary Guarantor under this Guaranty shall be delivered or sent by post registered or certified, return receipt requested, postage prepaid or facsimile to the Secondary Guarantor at its office located at 1 St James's Square, London, SW1Y 4PD, United Kingdom, Fax Number +44 (0)20 7948 7979, Attention: Group Treasurer, with a copy to the Group General Counsel at the same address, Fax Number: +44 (0)20 7496 4242 or to such other address and/or addressed to such other officers as may be provided in writing by the Secondary Guarantor to the Beneficiary for such purpose and shall be deemed to have been made when received by the Secondary Guarantor.

      (b)   Beneficiary: Any communication made of the Beneficiary under this Guaranty shall be delivered or sent by post or facsimile to the Beneficiary

47

in accordance with the terms of Section 7 (*Notice*) of the Settlement Agreement.

**10.      AMENDMENTS**.  No amendment or other modification of the terms of this Guaranty, including without limitation, those related to payment terms, shall be effective unless in writing and signed by Secondary Guarantor and the Beneficiary and stating that it is expressly intended to give effect to the applicable amendment or modification hereto.  No waiver of any provision of this Guaranty nor consent to any departure by the Secondary Guarantor therefrom, including without limitation, those related to payment terms, shall in any event be effective unless such waiver or consent shall refer to this Guaranty, be in writing, and be signed by the Beneficiary. Any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

**11.      THIRD PARTY RIGHTS.**  This Guaranty is for the exclusive benefit and convenience of the Secondary Guarantor and the Beneficiary.  Nothing contained herein shall be construed as granting, vesting, creating, or conferring any right of action or any other right or benefit upon any other third party, and no third party shall have any right to enforce or enjoy the benefit of any term of this Guaranty.

**12.      GOVERNING LAW AND JURISDICTION.**  This Guaranty shall in all respects be governed by and construed in accordance with the laws of New York without regard or reference to the conflict of law principles of any jurisdiction (other than the provisions of Section 5-1401 of the General Obligations Law of the State of New York, which shall be applicable).  The Secondary Guarantor and the Beneficiary each hereby irrevocably agree to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of  Louisiana in MDL 2179 (the "Court") (and appellate courts thereof).  The United States District Court for the Eastern District of Louisiana and appellate courts thereof are to have exclusive jurisdiction to settle any disputes which may arise out of or in connection with this Guaranty.  Further, upon termination of MDL 2179, any legal action or proceedings arising out of or in connection with this Guaranty shall be brought in the Court, and the Secondary Guarantor and the Beneficiary irrevocably submit to the exclusive jurisdiction and venue of the Court with respect to this Guaranty.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK**

**IN WITNESS WHEREOF**, this Guaranty has been executed and delivered as of the date indicated in the beginning.

EXECUTED by:


BP p.l.c.

By: _____


Title: _____


Date: _____

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the State of [Beneficiary]:


Date:   _____                    _____
                                           [Name]
                                           Governor
                                           State of [Beneficiary]

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the State of [Beneficiary]:


Date:  _____          _____
                                [Name]
                                Attorney General
                                State of [Beneficiary]