

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

BEFORE THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

OFFICE OF
ADMINISTRATION
AND RESOURCES
MANAGEMENT

| | |
|---|---|
| In the matter of: | |
| BP p.l.c. | EPA Case No. 12-0295-00 |
| BP America, Inc. | EPA Case No. 12-0295-02 |
| BP Exploration and Production Inc. | EPA Case No. 12-0295-05 |
| BP Products North America, Inc. | EPA Case No. 12-0295-06 |
| BP Exploration (Alaska), Inc. | EPA Case No. 12-0295-19 |

## MODIFICATION TO THE ADMINISTRATIVE AGREEMENT

Pursuant to Paragraph 30 of Section XII of the March 13, 2014 Administrative Agreement made between the United States Environmental Protection Agency ("EPA"), acting as lead federal agency, and: BP p.l.c.; BP America, Inc. ("BPA"); BP Exploration and Production Inc. ("BPXP"); BP Products North America, Inc. ("BPPNA"); BP Exploration (Alaska), Inc. ("BPXA"); and other BP Group Entities as defined in that Agreement, the EPA and the BP Group Entities agree to modify the March 13, 2014 Administrative Agreement as follows in Paragraphs 1 through 11, below. A copy of the March 13, 2014 Administrative Agreement is attached as Exhibit 1. A conformed copy of the Administrative Agreement with the modifications made by this document is attached as Exhibit 2.

1. **Title::**

   a. *Insert* "with MODIFICATIONS" *after* "Administrative Agreement";

2. **Section II. Definitions:**

   a. *Insert the following definition prior to* "**AGENTS**":

"**ADMINISTRATION SERVICES.** Shall mean those activities that non-Group U.S. Businesses with a Foreign Covered Transaction are required to transfer to a Group U.S. Business in order for the non-Group U.S. Business to be exempt from this Agreement. Administration Services include: the bidding, proposing, and negotiating of Foreign Covered Transactions; post-award contract or award administration activities for Foreign Covered Transactions including negotiation and submission of contract changes, modifications, waivers, claims, requests for equitable adjustment and terminations, responsibility for preparation of any submissions in support of such actions, and responsibility for other contract or award administration activities required by Federal procurement or nonprocurement award terms or regulations; serving as point of contact for notices from the U.S. Government concerning matters

related to Foreign Covered Transactions; and engaging in all formal correspondence under the Foreign Covered Transactions. Administration Services does not include the responsibility for the actual performance of the Foreign Covered Transaction by the non-Group U.S. Businesses including, as applicable, the storing, shipping, and delivery of fuel, managing aviation operations, and managing on-site operational issues such as safety standards and training.";

   b. **"AFFILIATES"**: *Insert* "48 C.F.R. § 9.403 and" *prior to* "2 C.F.R. § 180.905";

   c. **"BP AFFILIATES WITH FOREIGN BUSINESS"**: *Replace definition in its entirety with the following definition:*

"Shall mean a Non-Group U.S. Business, except for BP p.l.c., that subsequent to the effective date of the Agreement enters into or is a party to a Foreign Covered Transaction under which Administration Services are not performed by a Group U.S. Business.";

   d. **"COVERED AFFILIATES"**: *Replace* "BP Marine Global Investments" with "BP Global Investments Salalah & Co. LLC (including d/b/a BP Marine Global Investments Salalah and Company LLC)";

   e. *Insert the following definition in its entirety prior to* **"GOVERNMENT ENTITY(IES)"**:

"**FOREIGN COVERED TRANSACTION.** Shall mean (a) a U.S. Federal Government procurement transaction or (b) a U.S. Federal Government nonprocurement transaction in excess of five hundred thousand dollars ($500,000), to which a Non-Group U.S. Business is a party and which it performs during the period of the Agreement.";

   f. *Insert the following definition in its entirety prior to* **"PERIOD OF TIME"**:

"**NON-GROUP U.S. BUSINESS.** Shall mean any BP Group Entity that is not BPA or its U.S. affiliates whose operations are outside of the U.S. or the waters of the U.S. This shall also include any successors of that entity.";

  3. **Section IV. Scope and Application:**

      a.    *Replace Paragraph 4, Election of BP Affiliates with Foreign Business, and Paragraph 5, Election of BP Group Entities to Become BP Affiliates with Foreign Business" in their entirety with the following revised paragraphs 4 through 6:*

**4.    Non-Group U.S. Business With Existing Disclosed Foreign Covered Transactions.** This paragraph applies to the following group of seven Non-Group U.S. Businesses previously identified in EPA's November 28, 2012 Notice of Suspension: Air BP Limited; BP Marine Limited; BP Global Investments Salalah & Company LLC (including d/b/a BP Marine Global Investments Salalah and Co. LLC); BP Singapore; BP Oil International Limited; BP Australia PTY Limited; and BP International Limited. These seven Non-Group U.S. Businesses either: (a) as of March 13, 2014, were not participating in a Foreign Covered Transaction(s); or (b) between March 13, 2014 and the endorsement date of the Modification to the Administrative Agreement are a party to an ongoing Foreign Covered Transaction where the Administration Services will be performed by a Group U.S. Business or have entered into contract or award modifications transferring Administration Services under the Foreign Covered Transaction(s) to a Group US Business.

These seven Non-Group U.S. Businesses shall not be considered BP Affiliates with Foreign Business. However, if any of these seven Non-Group U.S. Businesses identify any new or ongoing Foreign Covered Transactions that were not previously disclosed, that entity shall proceed under the terms of Section IV, paragraph 5 or 6 below.

The seven Non-Group U.S. Businesses identified in paragraph 4 above:

(i) May continue to perform under the existing disclosed Foreign Covered Transactions covered by Section IV, paragraph 4;

(ii) Effective after May 20, 2014, shall not be subject to the requirements and obligations of this Agreement and shall not be considered Parties to this Agreement after that date for any Foreign Covered Transactions except as specifically otherwise provided;

(iii) Are not subject to audit pursuant to Section XI or any other terms of the Agreement, except that the EPA Authorized Representative(s) may verify their compliance with any applicable terms and conditions of this Agreement from its effective date until May 20, 2014, pursuant to Section XII (General Provisions), paragraph 8 (except for any provision providing for assistance from or review by the EPA Independent Auditor). Such verification shall be done through the evaluation of materials provided by the BP Covered Entities' Authorized Representative and shall not be subject to review by the EPA Independent Auditor.

The BP Authorized Representative shall report or provide the information regarding the Non-Group U.S. Businesses identified in this paragraph 4 as required in Section X (BP Covered Entities' Annual Reports) paragraphs 1.I. and 1.J.

**5.    Non-Group U.S. Business With Existing Undisclosed Foreign Covered Transactions.**
This paragraph is applicable to any Non-Group U.S. Business that is identified as a party to an ongoing Foreign Covered Transaction that was not previously identified under Section IV, paragraph 4.

If the BP Authorized Representative becomes aware of an ongoing Foreign Covered Transaction not previously disclosed to the EPA, the BP Authorized Representative shall disclose the transaction to the EPA Authorized Representative in writing within ten (10) days ("10-day grace period") of becoming aware of the transaction. If the EPA Authorized Representative becomes aware of an ongoing Foreign Covered Transaction not previously disclosed to the EPA, the BP Authorized Representative shall disclose the transaction to the EPA Authorized Representative in writing within ten (10) days ("10-day grace period") of the EPA Authorized Representative's request for such disclosure.

If the Foreign Covered Transaction does not provide for the performance of Administration Services by a Group U.S. Business, BP shall have ninety (90) days ("90-day grace period") from the date it identifies the Non-Group U.S. Business that was party to the subject Foreign Covered Transaction to enter into a contract or award modification transferring Administration Services under the subject transaction from the Non-Group U.S. Business to a Group U.S. Business. If the subject transaction already provides for performance of Administration Services by a Group U.S. Business, or upon timely execution of a contract or award modification effecting this, notwithstanding any language in this Agreement to the contrary, the following provisions apply:

(i) The Non-Group U.S. Business may continue to perform under the Foreign Covered Transaction;

(ii) The Non-Group U.S. Business shall not be subject to the requirements and obligations of this Agreement and is not subject to audit pursuant to Section XI or any other terms of this Agreement;

(iii) The information regarding the Non-Group U.S. Business required in Section X (BP Covered Entities' Annual Reports) paragraphs 1.I. and 1.J. shall be reported by the BP Authorized Representative; and

(iv) The Non-Group U.S. Business shall not be considered party to this Agreement.

If the Foreign Covered Transaction does not provide for performance of Administration Services by a Group U.S. Business and the Non-Group U.S. Business fails to transfer Administration Service under the subject transaction from the Non-Group U.S. Business to a Group US Business within the 90-day grace period, then that Non-Group U.S. Business will be considered a BP Affiliate With Foreign Business and subject to the Agreement as set forth at Section IV (Scope and Application), paragraph 3. Any such entity subject to the Agreement as a BP Affiliate with Foreign Business shall send written notice signed by an officer who is fully authorized to execute the Agreement on behalf of the BP Affiliate with Foreign Business to the EPA Authorized Representative(s), the EPA Independent Auditor and the BP Authorized Representative(s) by electronic mail and certified mail or equivalent within the 90-day grace period. Such written

4

notice shall also include a signed copy of the Agreement by a signatory who is fully authorized to execute the Agreement on behalf of the BP Affiliate with Foreign Business. The effective date of the Agreement for the BP Affiliate with Foreign Business shall be the date of the EPA SDO's endorsement for the Agreement for that BP Affiliate with Foreign Business. Such notice shall become an addendum to the Agreement.

6.  **Non-Group U.S. Business Entering into A New Foreign Covered Transaction.** This paragraph is applicable to any Non-Group U.S. Business that becomes a party to a new Foreign Covered Transaction subsequent to the endorsement date of the Modification to the Administrative Agreement.

If the BP Authorized Representative becomes aware of a Foreign Covered Transaction not previously disclosed to the EPA that was entered into after the endorsement date of the Modification to the Administrative Agreement (one that is not governed by Section IV, paragraphs 4 or 5 herein), the BP Authorized Representative shall disclose the transaction to the EPA Authorized Representative in writing within ten (10) days ("10-day grace period") of becoming aware of the transaction. If the EPA Authorized Representative becomes aware of a Foreign Covered Transaction not previously disclosed to the EPA, the BP Authorized Representative shall disclose the transaction to the EPA Authorized Representative in writing within ten (10) days ("10-day grace period") of the EPA Authorized Representative's request for such disclosure.

If the subject Foreign Covered Transaction does not provide for the performance of Administration Services by a Group U.S. Business, BP shall have ninety (90) days ("90-day grace period") from the date it identifies the Non-Group U.S. Business that was party to the subject transaction to transfer Administration Services under the subject transaction from the Non-Group U.S. Business to a Group US Business. If the subject transaction provides for performance of Administration Services by a Group US Business, or upon timely execution of a contract or award modification effecting this, notwithstanding any language in this Administrative Agreement to the contrary, the following provisions apply:

(i) The Non-Group U.S. Business may perform under the Foreign Covered Transaction for which the notice was sent to EPA;

(ii) The Non-Group U.S. Business shall not be subject to the requirements and obligations of this Agreement and is not subject to audit pursuant to Section XI or any other terms of the Agreement;

(iii) The information regarding the Non-Group U.S. Business required in Section X (BP Covered Entities' Annual Reports) paragraphs 1.I. and 1.J. shall be reported by the BP Authorized Representative; and

(iv) The Non-Group U.S. Business shall not be considered party to this Agreement.

If the Foreign Covered Transaction does not provide for performance of Administration Services by a Group US Business and the Non-Group U.S. Business fails to transfer Administration

Service under the subject transaction from the Non-Group U.S. Business to a Group US Business within the 90-day grace period, then that Non-Group U.S. Business will be considered a BP Affiliate With Foreign Business and subject to the Agreement as set forth at Section IV (Scope and Application), paragraph 3. Any such entity subject to the Agreement as a BP Affiliate with Foreign Business shall send written notice signed by an officer who is fully authorized to execute the Agreement on behalf of the BP Affiliate with Foreign Business to the EPA Authorized Representative(s), the EPA Independent Auditor and the BP Authorized Representative(s) by electronic mail and certified mail or equivalent within the 90-day grace period. Such written notice shall also include a signed copy of the Agreement by a signatory who is fully authorized to execute the Agreement on behalf of the BP Affiliate with Foreign Business. The effective date of the Agreement for the BP Affiliate with Foreign Business shall be the date of the EPA SDO's endorsement for the Agreement for that BP Affiliate with Foreign Business. Such notice shall become an addendum to the Agreement.";

4. **Section IX, Process Safety**

    a. **Paragraph 4, SEMS Requirements**

        i. Subparagraph 4(B): *replace* "BSEE approval" *with* "BSEE's acceptance";

        ii. Subparagraph 4(C): *replace* "thirty (30)" with "sixty (60)";

    b. **Paragraph 5, SEMS Audit Reporting To Process Safety Monitor:** *replace* "thirty (30)" *with* "sixty (60)";

5. **Section X, BP Covered Entities' Annual Reports**

    a. **Paragraph 1, Annual Report.**

        i. *Insert the following subparagraphs immediately following subparagraph H:*

"I. A list of all Foreign Covered Transactions during the respective reporting period of the Agreement. For each such Foreign Covered Transaction, provide the name, address, and contact information of the BP representative of the Non-Group U.S. Business party to the subject Foreign Covered Transaction; the name and contact information of the U.S. Federal Government Agency (and office within that Agency) party to the subject Foreign Covered Transaction; the date(s) the subject Foreign Covered Transaction was awarded; the term of the subject Foreign Covered Transaction; a summary of the services and/or products to be provided under the Foreign Covered Transaction; a statement identifying the BP Group Entity performing Administration Services under the subject transaction; a copy of the contract or non-procurement transaction cover page and any provisions or modifications identifying the location in which

Administration Services are performed and a description of the Administration Services being performed by the Group US Business and; a statement identifying where the Foreign Covered Transaction is being performed.

J. Providing information on the status of the Foreign Covered Transaction during the respective reporting period of the Agreement by identifying at the time that the report is final the following categories that may be applicable:

(i) The Non-Group U.S. Business is no longer participating in the Foreign Covered Transaction(s) that has been identified during the applicable reporting period;

(ii) The Non-Group U.S. Business is party to Foreign Covered Transaction(s) that has been identified during the applicable reporting period and the Administration Services of those subject Foreign Covered Transaction(s) have been transferred to a Group U.S. Business;

(iii) The Non-Group U.S. Business is within the 10-day grace period or the 90-day grace period as set forth in Section IV, Paragraph 5 or 6 above; and/or

(iv) The Non-Group U.S. Business is subject to the applicable terms of the Agreement as a BP Affiliate With Foreign Business.";

    6.    **Section XI. EPA Independent Auditor**

        a.    **Paragraph 3, Scope of Independent Auditor's Compliance Duties**

            i.    Subparagraph (A)(4): *replace* "ninety (90)" *with* "one hundred fifty (150)";

            ii.    Subparagraph (B), title:

                (a)    *Replace* "Assessment" *with* "Review";

            iii.    Subparagraph (B)(3): *Insert the following subparagraph immediately following subparagraph (B)(3):*

"4. Any request for verification by the EPA Independent Auditor of information provided in Section X.1.I and X.1.J, shall be directed to and completed by the BP Authorized Representative by providing further documentation of compliance to the EPA Independent Auditor.";

            iv.    Subparagraphs (B)(4) and (B)(5): *Replace* "(B)(4)" *with* "(B)(5)" *and replace* "(B)(5)" *with* "(B)(6)";

     v.    Subparagraph (B)(6), as amended: *Insert* "Subject to the limitations in paragraph 8 of Section XII" *prior to* "EPA may elect to have the EPA Independent Auditor. . . .";

7.    **Section XII, General Provisions:**

    a.    **Paragraph 5, Reports of Legal Proceedings:** *Insert* "21st day after the" *immediately prior to* "beginning of each calendar quarter";

    b.    **Paragraph 8, Government Audits and Access to Records and Information:**

        i.    *Insert* "with the exception of certain limitations when verifying compliance with Section X (BP Group Entities' Annual Reports), 1.I. and 1.J.," *prior to* "EPA may enlist the Independent Auditor in further audit activities under this provision.";

    c.    **Paragraph 17, Unallowable Costs:** *delete* "Authorized Representative(s)" *in the sentence beginning* "Also unallowable are the BP Covered Entity's costs of bringing the BP Covered Entity's self-governance. . . ";

    d.    **Paragraph 39, Endorsement by Suspension and Debarment Official:**

        i.    **Title.** *Insert* "**AND EFFECTIVE DATE**" *Immediately following* "ENDORSEMENT BY SUSPENSION AND DEBARMENT OFFICIAL";

        ii.    *Replace the text of this paragraph in its entirety with the following:* "The original Agreement became effective on March 13, 2014, upon the endorsement by the EPA SDO.";

    e.    **Paragraph 40, Term:** *Delete* "from the date of endorsement by the EPA SDO" *with* "March 13, 2014."

8