**Appendix 9: BP p.l.c. Guaranty**

**Secondary Guaranty by**

**BP p.l.c.**

**IN FAVOR OF**


**THE UNITED STATES AND THE STATES OF ALABAMA, FLORIDA, LOUISIANA, MISSISSIPPI, AND TEXAS**

**RELATING TO THE CONSENT DECREE BETWEEN THE UNITED STATES, THE GULF STATES, BPXP, BPCNA, AND BP p.l.c. IN MDL 2179 (E.D. La.) WITH RESPECT TO THE *DEEPWATER HORIZON* INCIDENT**

1.    Definitions and Interpretation

2.    Guaranty

3.    Limitation on Exercise of Secondary Guarantor's Rights

4.    A Valid Demand; When Required Under the Guaranty

5.    No Implied Waivers

6.    Representations and Warranties

7.    Amendment to the Consent Decree

8.    Assignment and Transfer

9.    Communications

10.   Amendments

11.   Third Party Rights

12.   Governing Law and Jurisdiction

## SECONDARY GUARANTY

This Secondary Guaranty is made the <u>1st</u> day of <u>October</u>, 2015 and effective as of the Effective Date (as defined in the Consent Decree) by BP p.l.c., a company incorporated in England whose registered office is at 1 St. James's Square, London, SW1Y 4PD, United Kingdom ("Secondary Guarantor"), in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi and Texas (collectively the "Beneficiaries").

WHEREAS, the Beneficiaries, on the one hand, and BP Exploration & Production Inc. ("BPXP"), a wholly-owned indirect subsidiary of the Secondary Guarantor, BP Corporation North America Inc. ("BPCNA"), and the Secondary Guarantor, on the other hand, have entered into a Consent Decree with respect to claims arising from the Deepwater Horizon Incident, to which this Guaranty is attached (the "Consent Decree");

AND WHEREAS, BPCNA (the "Primary Guarantor"), another wholly-owned indirect subsidiary of the Secondary Guarantor, and indirect parent company of BPXP, has agreed to guaranty for the benefit of the Beneficiaries the Guarantied Obligations (such guaranty, the "Primary Guaranty");

AND WHEREAS, also for benefit of the Beneficiaries, the Secondary Guarantor has agreed to provide this Guaranty pursuant to Section IX (Financial Assurance) of the Consent Decree;

AND WHEREAS, in consideration of good and valuable consideration to the Secondary Guarantor, including the Consent Decree, the adequacy, receipt and sufficiency of which are hereby acknowledged by the Secondary Guarantor.

NOW THIS GUARANTY PROVIDES as follows:

1. **DEFINITIONS AND INTERPRETATION.**

   1.1 **Definitions.** In this Guaranty, except to the extent that the context requires otherwise, terms defined and references construed in the Consent Decree shall have the same meanings and construction when used in this Guaranty and, in addition, any reference to:

   (a) "**BPCNA Default**" means a BPXP Default has occurred and either (i) BPCNA has failed to make a payment required under the Primary Guaranty within 60 days after a BPXP Default; or (ii) BPCNA has filed for bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency; or (iii) any third party has petitioned a court to place BPCNA in bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s)

pertaining to insolvency, an order for relief is entered, and any such filing or petition has not been dismissed within 60 days of such order for relief.

(b)    "**BPXP Default**" means either (i) BPXP has failed to make a payment required under the Consent Decree within 60 days after such payment has become due under the Consent Decree; or (ii) BPXP has filed for bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency; or (iii) any third party has petitioned a court to place BPXP in bankruptcy under the United States Bankruptcy Code or other applicable statute(s) or code(s) pertaining to insolvency, an order for relief is entered, and any such filing or petition has not been dismissed within 60 days of such order for relief.

(c)    "**Business Day**" means a day (other than a Saturday or Sunday) on which banks are open for general business in London and New York.

(d)    "**Day**" means a calendar day unless expressly stated to be a Business Day.

(e)    "**Guarantied Obligations**" means any sum of money of any kind owed by BPXP to one or more of the Beneficiaries under the Consent Decree.

(f)    "**Valid Demand**" means a demand issued by the Beneficiaries in accordance with Section 4.

**1.2**    **Interpretation of Certain References.**

(a)    This "**Guaranty**" means this Secondary Guaranty Agreement as amended, supplemented, novated, restated or replaced by any document from time to time and any document which amends, supplements, novates, restates or replaces this Guaranty.

(b)    A "**law**" includes common or customary law and any constitution, decree, judgment, legislation, order, ordinance, regulation, statute, treaty or other legislative measure, in each case of any jurisdiction whatever.

(c)    Any "**obligation**" of any Person under this Guaranty or any other document referenced herein is a reference to an obligation expressed to be assumed by that Person or imposed on that Person under this Guaranty or that other document, as the case may be.

(d)    A "**Person**" includes any individual, company, corporation, firm, partnership, joint venture, association, organization, trust, state or agency of a state.

(e)     A BPXP Default and/or a BPCNA Default is "**continuing**" if it has not been remedied.

2.      **GUARANTY.**

2.1     **Guaranty.** As consideration for the Beneficiaries' entry into the Consent Decree and subject to the terms of this Guaranty, including, without limitation, the occurrence and continuance of a BPXP Default and a BPCNA Default and the provisions of Section 4 hereof, the Secondary Guarantor hereby irrevocably, unconditionally, and absolutely guaranties for the benefit of the Beneficiaries, that if (i) there exists and is continuing a BPXP Default, and (ii) there exists and is continuing a BPCNA Default, the Secondary Guarantor shall, within 15 Business days of such BPCNA Default, pay to the Beneficiaries the unpaid Guarantied Obligations then due and payable by BPXP to such Beneficiaries. Obligations under this Paragraph 2.1 shall have no effect unless both a BPXP Default and a BPCNA Default shall have occurred and are continuing, and in such instances this Guaranty remains irrevocable, unconditional, and absolute as described in this Guaranty. The Secondary Guarantor's obligations and liability under this Guaranty shall be limited to payment obligations only.

2.2     **Secondary Guarantor as Principal Debtor.** As between the Secondary Guarantor and the Beneficiaries, but without affecting BPXP's obligations, the Secondary Guarantor shall be liable under this Guaranty as if it were the sole principal debtor and not merely a surety. Accordingly, except as otherwise provided in this Guaranty (including, without limitation, Paragraph 2.4), the liability of the Secondary Guarantor under this Guaranty shall not be released, affected or discharged by any act, matter, or omission which (but for this paragraph) would have released, affected, or discharged the liability of the Secondary Guarantor, including without limitation, any of the following:

(a)     any incapacity or disability or lack or limitation of status or power of BPXP or BPCNA or that BPXP or BPCNA may not be a legal entity;

(b)     the bankruptcy or insolvency of BPXP or BPCNA; or

(c)     any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of the Guarantied Obligations or the rights of the Beneficiaries with respect thereto.

2.3     **Secondary Guarantor's Obligations Additional.** This Guaranty shall be in addition to and not in substitution for any other rights, remedy, security or guaranties which the Beneficiaries may now or hereafter hold from or on account of the Guarantied Obligations and subject to a BPXP Default and a BPCNA Default having occurred and being continuing, may be enforced without first

having recourse to such other rights, remedy, security or guaranties.

2.4     **Secondary Guarantor's Obligations Continuing.** The Secondary Guarantor's obligations under this Guaranty are and remain in full force and effect by way of continuing security until the earlier of the following:

(a)     all Guarantied Obligations payable by BPXP to the Beneficiaries under the Consent Decree have been paid in full;

(b)     the date the Consent Decree has been terminated in accordance with its terms, or is held invalid or unenforceable by a court.

This Guaranty shall terminate in full on the earlier date upon which either of the conditions (a) or (b) of this Paragraph 2.4 has been satisfied with respect to the Guarantied Obligations due to the Beneficiaries. Unless terminated pursuant to Paragraphs 2.4 (a) or (b), the Secondary Guarantor's obligations remain in effect in each case, notwithstanding absorption, amalgamation or any other changes in the Secondary Guarantor's constitution.

2.5     **No Avoidance of Payment.** If all or part of any payment received or recovered by the Beneficiaries in respect of the Guarantied Obligations is, on the subsequent bankruptcy, insolvency, corporate reorganization or other similar event of BPXP, avoided or set aside under any laws relating to bankruptcy, insolvency, corporate reorganization or other such similar events, and the amount of such payment is required to be refunded to BPXP or other Persons entitled through BPXP, such payment shall not be considered as discharging or diminishing the liability of the Secondary Guarantor and this Guaranty shall continue to apply as if such amount had at all times remained owing by BPXP.

3.     <u>**LIMITATION ON EXERCISE OF SECONDARY GUARANTOR'S RIGHTS.**</u>
Notwithstanding any payment or payments made by the Secondary Guarantor hereunder, so long as any Guarantied Obligation remains outstanding:

(a)     the Secondary Guarantor hereby irrevocably waives any right of subrogation to the rights of the Beneficiaries against BPXP and any right to be reimbursed or indemnified by BPXP or by any other guarantor of all or any part of the Guarantied Obligations until such time as all the Guarantied Obligations due the Beneficiaries shall have been irrevocably and indefeasibly paid to the Beneficiaries in full; and

(b)     if, notwithstanding the foregoing, any amount is received or recovered by the Secondary Guarantor as a result of exercising such rights, such amount shall be held by the Secondary Guarantor in trust for the Beneficiaries and shall, forthwith upon receipt by the Secondary Guarantor, be paid to the

Beneficiaries, to be applied against the Guaranteed Obligations due to the Beneficiaries in such order as the United States, in consultation with the States of Alabama, Florida, Louisiana, Mississippi, and Florida, may determine.

4.      **A VALID DEMAND; WHEN REQUIRED UNDER THE GUARANTY.**

**4.1**    **When Secondary Guarantor's Liability is Subject to Valid Demand.** With respect to any payments required pursuant to the following provisions of the Consent Decree: Section XI (Stipulated Penalties), Paragraph 21(a) as it applies to accelerated interest, Paragraph 30, and Paragraph 31, the Secondary Guarantor is only liable to pay under this Guaranty in accordance with Paragraph 2.1 if it receives from the Beneficiaries a demand in writing complying with this Section 4 ("Valid Demand; When Required Under the Guaranty"). With respect to all other payment obligations set forth in the Consent Decree, no demand shall be required under this Guaranty.

**4.2**    **Valid Demand.**

(a)    The Beneficiaries may only issue a Valid Demand to the Secondary Guarantor under this Guaranty at least 5 Business Days after it has sent a written demand to BPXP and the Primary Guarantor for any payment described in Paragraph 4.1 requiring a Valid Demand stating the reasons for making such demand and identifying the Guaranteed Obligations due but unpaid to the Beneficiaries sending the Valid Demand in respect of which there has been a BPXP Default and a BPCNA Default.

(b)    Any Valid Demand made of the Secondary Guarantor under this Guaranty shall be accompanied with a copy of a written notification referred to in Section 4, dated and sent to BPXP and the Primary Guarantor no less than 5 Business Days before the date of the demand, and delivered or sent by post or facsimile to the Secondary Guarantor at its address as provided under Section 9.

5.      **NO IMPLIED WAIVERS.** No failure on the part of the Beneficiaries to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof, or the exercise of any other right.

6.      **REPRESENTATIONS AND WARRANTIES**. The Secondary Guarantor hereby represents and warrants to the Beneficiaries that:

(a)    the Secondary Guarantor is duly incorporated and is a validly existing company under the laws of its place of incorporation, has the capacity to

sue or be sued in its own name and has power to carry on its business as now being conducted and to own its property and other assets;

(b)    the Secondary Guarantor has full power and authority to execute, deliver and perform its obligations under this Guaranty and no limitation on the powers of the Secondary Guarantor will be exceeded as a result of the Secondary Guarantor entering into this Guaranty;

(c)    the execution, delivery, and performance by the Secondary Guarantor of this Guaranty and the performance of its obligations under this Guaranty have been duly authorized by all necessary corporate action and do not contravene or conflict with the Secondary Guarantor's memorandum and articles of association; and

(d)    this Guaranty constitutes the legal, valid and binding obligation of the Secondary Guarantor, enforceable against it by the Beneficiaries in accordance with its terms, subject to applicable law.

**7.**    **AMENDMENT TO THE CONSENT DECREE.** The Secondary Guarantor's obligations under this Guaranty are subject to modification of the terms of the Consent Decree made in accordance with the provisions of the Consent Decree.

**8.**    **ASSIGNMENT AND TRANSFER.**

**8.1**    **Burden and Benefit.** This Guaranty shall be binding upon the Secondary Guarantor, its successors and assigns and shall inure to the benefit of the Beneficiaries and their successors or assigns. Any reference in this Guaranty to the Secondary Guarantor or the Beneficiaries shall be construed to refer to relevant successors and assigns accordingly.

**8.2**    **Transfer by Secondary Guarantor.** The Secondary Guarantor's payment obligations under this Guaranty shall be binding on any legal successor or assign of the Secondary Guarantor, in accordance with the requirements of Paragraph 7 of the Consent Decree.

**8.3**    **Transfer by Beneficiaries.** No portion of this Guaranty shall provide any rights to, or be enforceable by, any person or entity other than the Beneficiaries and the Secondary Guarantor. and no Beneficiary may assign or otherwise convey any right to enforce any provision of this Guaranty. Without limiting the foregoing, any assignment of any Beneficiary's rights of payment under the Consent Decree shall be with recourse to such Beneficiary only and without recourse to the Secondary Guarantor.

**9.**    **COMMUNICATIONS.**

**9.1     Addresses.**

    (a)    Secondary Guarantor: Any demand or other communication made of the Secondary Guarantor under this Guaranty shall be delivered or sent by post registered or certified, return receipt requested, postage prepaid or facsimile to the Secondary Guarantor at its office located at 1 St James's Square, London, SW1Y 4PD, United Kingdom, Fax Number +44 (0)20 7948 7979, Attention: Group Treasurer, with a copy to the Group General Counsel at the same address, Fax Number: +44 (0)20 7496 4242, or to such other address and/or addressed to such other officers as may be provided in writing by the Secondary Guarantor to the Beneficiaries for such purpose and shall be deemed to have been made when received by the Secondary Guarantor.

    (b)    Beneficiaries: Any communication made of the Beneficiaries under this Guaranty shall be delivered or sent by post and email to the Beneficiaries in accordance with the terms of Section XIX (Notices and Service of Process) of the Consent Decree.

**10.**    **AMENDMENTS.** No amendment or other modification of the terms of this Guaranty, including, without limitation, those related to payment terms, shall be effective unless in writing and signed by Secondary Guarantor and all the Beneficiaries and stating that it is expressly intended to give effect to the applicable amendment or modification hereto. No waiver of any provision of this Guaranty nor consent to any departure by the Secondary Guarantor therefrom, including, without limitation, those related to payment terms, shall in any event be effective unless such waiver or consent shall refer to this Guaranty, be in writing, and be signed by all the Beneficiaries. Any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

**11.**    **THIRD PARTY RIGHTS.** This Guaranty is for the exclusive benefit and convenience of the Secondary Guarantor and the Beneficiaries. Nothing contained herein shall be construed as granting, vesting, creating, or conferring any right of action or any other right or benefit upon any other third party, and no third party shall have any right to enforce or enjoy the benefit of any term of this Guaranty.

**12.**    **GOVERNING LAW AND JURISDICTION.**

**12.1**    **Governing Law.** This Guaranty shall in all respects be governed by, and construed in accordance with, the laws of New York, without regard or reference to the conflict of laws principles of any jurisdiction (other than the provisions of Section 5-1401 of the General Obligations Law of the State of New York, which shall be applicable).

**12.2**    **Jurisdiction.** The Secondary Guarantor and the States of Alabama, Florida,

Louisiana, Mississippi, and Texas each hereby irrevocably agree to the exclusive jurisdiction and venue in the United States District Court for the Eastern District of Louisiana in MDL 2179 ("the Court") (and appellate courts therefrom). The United States hereby irrevocably agrees to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of Louisiana in MDL 2179 except with respect to claims exceeding $10,000 brought by BP p.l.c., BPCNA or BPXP against the United States that are subject to the exclusive jurisdiction in the United States Court of Federal Claims under the Tucker Act (28 U.S.C. § 1491) or other court created by Congress for those purposes. The United States District Court for the Eastern District of Louisiana (and appellate courts thereof) are to have exclusive jurisdiction to settle any disputes which may arise out of or in connection with this Guaranty except those subject to the exclusive jurisdiction in the United States Court of Federal Claims under the Tucker Act or other court created by Congress for those purposes, as above. Further, upon termination of MDL 2179, any legal action or proceedings arising out of or in connection with this Guaranty shall be brought in the United States District Court for the Eastern District of Louisiana and the Primary Guarantor and the Beneficiaries irrevocably submit to the exclusive jurisdiction and venue of that court with respect to this Guaranty, except for those claims subject to the exclusive jurisdiction in the United States Court of Federal Claims under the Tucker Act or other court created by Congress for those purposes as above.

**IN WITNESS WHEREOF,** this Guaranty has been executed as of the date indicated in the beginning.

EXECUTED by: *Eric L. Nitcher*

BP p.l.c.

Eric L. Nitcher
Assistant General Counsel, BPCNA
501 Westlake Blvd
Houston, TX 77079

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

FOR THE UNITED STATES:

Date:  _____Oct. 1, 2015_____

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

Date: 9/14/2015

_____
ROBERT BENTLEY
Governor
State of Alabama

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

Date: __9-14-15__

_____
LUTHER STRANGE
Attorney General
State of Alabama

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

Date: 9/15/2015

RICK SCOTT
Governor
State of Florida

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

Date: 9/15/15

PAM BONDI
Attorney General
State of Florida

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

Date: September 15, 2015

BOBBY JINDAL
Governor
State of Louisiana

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

Date: 9|16|15

JAMES D. CALDWELL
Attorney General
State of Louisiana

Appendix 9-17

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

Date: Sept. 17, 2015

PHIL BRYANT
Governor
State of Mississippi

Appendix 9-18

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

Date: 9/15/2015

JIM HOOD
Attorney General
State of Mississippi

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

Date:   9/14/15

GREG ABBOTT
Governor
State of Texas

The undersigned acknowledges and agrees to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

Date: ___9/15/15___

_____
KEN PAXTON
Attorney General
State of Texas

The undersigned acknowledge and agree to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

TEXAS GENERAL LAND OFFICE
Natural Resource Trustee

By: _____
       Anne Idsal, Chief Clerk
       Texas General Land Office


TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
Natural Resource Trustee

By: _____
       Richard Hyde, Executive Director
       Texas Commission on Environmental Quality


TEXAS PARKS AND WILDLIFE DEPARTMENT
Natural Resource Trustee

By: _____
       Carter Smith, Executive Director
       Texas Parks and Wildlife Department

The undersigned acknowledge and agree to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

TEXAS GENERAL LAND OFFICE
Natural Resource Trustee


By: _____
      Anne Idsal, Chief Clerk
      Texas General Land Office


TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
Natural Resource Trustee


By: _____
      Richard Hyde, Executive Director
      Texas Commission on Environmental Quality


TEXAS PARKS AND WILDLIFE DEPARTMENT
Natural Resource Trustee


By: _____
      Carter Smith, Executive Director
      Texas Parks and Wildlife Department

The undersigned acknowledge and agree to the foregoing Secondary Guaranty by BP p.l.c. in favor of the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas:

TEXAS GENERAL LAND OFFICE
Natural Resource Trustee

By: _____
          Anne Idsal, Chief Clerk
          Texas General Land Office

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
Natural Resource Trustee

By: _____
          Richard Hyde, Executive Director
          Texas Commission on Environmental Quality

TEXAS PARKS AND WILDLIFE DEPARTMENT
Natural Resource Trustee

By: _____
          Carter Smith, Executive Director
          Texas Parks and Wildlife Department