

# GREGORY M. FRIEDLANDER & ASSOCIATES, P.C.
## WWW.GMFPC.COM

251-470-0303

October 5, 2015

Joseph C Wilkinson, Jr U.S. Magistrate Judge

Via Fax: 504-589-7633

Re: MDL 2179: Document 15411 (Order soliciting Comments on the Agenda)
THIS DOCUMENTS RELATES TO: JUDGE BARBIER
Nos. 12-970, 15-4143, 15-4146 & 15-4654

While actual plans may be beyond the scope of the request for information (including plans) it might help with the agenda to have some idea of the type of distribution plan that the agenda will lead to. This is consistent with the suggestions made by Halliburton and Transocean today.

Counsel for the city of Mobile, therefore, submits a rough plan for the resolution not only of punitive damages claims but a settlement which might help set parameters that could be used to settle other cases that remain pending.

First, the entities competing for the punitive fund should be separated into groups based on the type of claims paid or unpaid: Municipal/State; Property; BEL; Personal Injury; excluded class, etc. Each group could have a committee of attorneys representing it and a separate committee for all groups populated by the PSC. The committee could resolve the problems inherent in this rough draft

A rough plan can be set up as follows:

The claims paid punitive damages would be all those on (owned or leased) a navigable waterway in zone C or any body of water continuous with the gulf in zones A and B. Others who claim to be oiled could provide evidence on a case by case basis. Moratoria cases should be included in this group.

The notice would only go to those who already had claims filed (including presentment with short form joinder and separate law suit) so that notice would be relatively easy. The response to the notice would be: 1) what was paid/the claim amount; (2) the address used to achieve "oiled" status, (3) the name of the waterway adjoining the property. For Moratoria type cases, the body of water where the work was done would be specified. If a claim filed not paid yet for any reason it would be listed as "unpaid" or "denied" or "excluded class".

11 South Florida Street ▪ Mobile, AL 36606-1924 ▪ Phone: 251.470.0303 ▪ Fax: 888.441.2123 ▪ isee3@aol.com

A math model is presented subject to revision by the committees appointed to review these calculations. This model for excluded class/unpaid/opt out claims would be based on the amount of the claim subject to an objection. If under the class, it would be limited to what would have been paid under the class settlement if it qualified or if it would have qualified. The settlement is considered too unreliable to apply to any non-class cases; but for those "trapped" in the class, the terms of the settlement allow for a method of calculation what they should be paid based on the only claim they have, the one in the class.

As will be seen, under this model, this calculation will make no difference to the non-class cases under the method for dealing with other claims set forth below in rough outline. For purposes of simplicity a numeric model concentrating only on the number of waterfront claims paid vs. waterfront excluded class cases (including moratoria) is used.

Total number (excluded and opt out with waterfront aspect)/(total number of paid waterfront claims under settlements-including municipal and state)=Ratio

Very simply, the amount for the excluded class/unpaid claims would be calculated using this ratio as: 1.25 billion x ratio=amount set aside for the opt out/excluded class cases.

[Assume the ratio is 10%: 1.25billionx.1=125 million for these leaving 1.125 for other cases that were paid under the class.

Using the 10% assumption above the 125 million could be split based on the "claimed" amount subject of the unpaid, waterfront, excluded class cases to objections (e.g. by the panel) which could be heard by the court for all waterfront or water affected claims.

For the paid claims, a simple ratio can be established. Each plaintiff having conditions necessary (i.e. waterfront) they would split the amount set out (1.125 billion in the 10% assumption) times what they were paid divided by the total amount that was paid. E.g. Assume a city was paid 7 million, further assume the total paid under all claims covered (medical, waterfront property bel, fishing interest, municipalities on the water, etc) is 24 billion. The payment to the city would be (7million/24billion) times 1.125 billion. This 24 billion would be the amount paid to waterfront claimants.

While it is believed that GCCF claims have higher payouts than provided for by the class in many cases, waterfront GCCF claims could be included.

This very broad "concept" could be smoothed out by the PSC or by the PSC with the committees suggested herein.

Using these formulas, the calculations could be used to settle the remaining claims with BP in this way:

Assume an excluded class case was paid (under this settlement) .1 percent of the total 125million for excluded class claims under the model or $125,000.

The ratio of paid to unpaid under the class (using the numbers above) would be 1.125/24 billion. In this way, if you multiply 125,000 times 23.5 (approximately 2.9 million) you get the right amount to settle the .1% claim based on the other payouts made to other claimants by BP. BP, of course, would have the ability to offer or not offer whatever they wanted, but this would provide a method BP and the claimants could at least consider to finish the resolution of the remaining cases. BP could use this as at least a rough process to limit their total exposure. Using the example above BP could estimate that 125 million times 23.5 or right at 3 billion would be enough to pay off their remaining exposure to "waterfront claimants". Note that the 125 million number is just an example, it would have to be replaced with the correct number which could not be determined without looking at the claims filed (number) vs claims paid (number) for waterfront. It would, after determining what needed to be paid to the waterfront excluded class cases, be fairly easy to extrapolate to the non-waterfront opt out cases.

Once the numbers were available, it would be possible to do the precise calculation in a matter of hours subject to realigning cases between waterfront and non-waterfront in both paid and unpaid classes.

This conceptual number could be used to deal with the non-water affected claims by BP using reasonable concepts of causation and all of the cases remaining, subject to those who could not accept the settlement as proposed, could be eliminated in concept.

The same committees could remain for the additional settlements if necessary.

The 24 billion is just a conceptual number and, for example, the 18 billion paid over time under the State settlements could be reduced to present value to make the calculation reasonable.

Sincerely,

Gregory M. Friedlander

GMF/gf
File No.: