## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § | MDL No. 2179 SECTION: J |
| Applies to: All Cases | § § § | HONORABLE JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| Civil Action No. 2:15-CV-4146 _____ | § § | |

## TRANSOCEAN'S ANSWER TO COMPLAINT
### [Transocean Punitive Damages Class]

Subject to their previously filed Motions to Dismiss,[1] Defendants Triton Asset Leasing GmbH ("Triton"), Transocean Holdings LLC ("Holdings"), Transocean Offshore Deepwater Drilling Inc. ("TODDI"), and Transocean Deepwater Inc. ("TDI") (collectively "Transocean" or "Transocean Defendants"), file this Answer to Complaint [Transocean Punitive Damages Class] (the "Complaint") (Rec. Doc. 1), and respectfully show as follows:

### ANSWER

The unnumbered paragraph preceding Paragraph 1 contains statements of law and other assertions that do not require a response by Transocean.

### JURISDICTION AND VENUE

1.      Transocean admits the allegations in Paragraph 1.

2.      Transocean admits the allegations in Paragraph 2.

3.      Transocean admits the allegations in Paragraph 3.

---

[1] The Transocean Defendants incorporate herein, as if stated in full, the arguments and authorities contained in their previously filed Motions to Dismiss the Bundles A, B, C, and D master and individual complaints in MDL 2179, as well as memoranda filed in support of same.  This Answer is filed subject to its Motions to Dismiss the Bundles A, B, C, and D master and individual complaints, as well as the memoranda filed in support of each, and without waiver of any rights Transocean may have to further respond.

4.      Subject to any previously filed challenges and reservations of rights, Transocean admits the allegations in Paragraph 4.

**PARTIES**

5.      Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 5 are true and, therefore, denies all allegations in this paragraph.

6.      Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 6 are true and, therefore, denies all allegations in this paragraph.

7.      Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 7 are true and, therefore, denies all allegations in this paragraph.

8.      Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 8 are true and, therefore, denies all allegations in this paragraph.

9.      Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 9 are true and, therefore, denies all allegations in this paragraph.

10.     Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 10 are true and, therefore, denies all allegations in this paragraph.

11.     Transocean admits that TODDI is a Delaware corporation with its principal place of business in Houston, Texas.   Transocean admits that one or more of the Transocean

Defendants are the managing owners, owners *pro hac vice* and/or operators of the *Deepwater Horizon*. Transocean denies the remaining allegations in Paragraph 11.

12.     Transocean admits that TDI is a Delaware corporation with its principal place of business in Houston, Texas. Transocean admits that one or more of the Transocean Defendants are the managing owners, owners *pro hac vice* and/or operators of the *Deepwater Horizon*. Transocean denies the remaining allegations in Paragraph 12.

13.     Transocean admits that Holdings is a Delaware corporation with its principal place of business in Houston, Texas. Transocean admits that one or more of the Transocean Defendants are the managing owners, owners *pro hac vice* and/or operators of the *Deepwater Horizon*. Transocean further admits that Holdings is a party to a contract with certain BP entities regarding the lease of the *Deepwater Horizon* for drilling operations in the Gulf of Mexico. Transocean denies the remaining allegations in Paragraph 13.

14.     Transocean admits that Triton is a Swiss corporation with its principal place of business in Zug, Switzerland. Transocean admits that one or more of the Transocean Defendants are the managing owners, owners *pro hac vice* and/or operators of the *Deepwater Horizon*. Transocean denies the remaining allegations in Paragraph 14.

## FACTUAL ALLEGATIONS

15.     Transocean admits that on April 20, 2010, the Macondo well blew out and an explosion and fire occurred on the *Deepwater Horizon*. Transocean admits that on or about April 22, 2010, the *Deepwater Horizon* sank. Transocean denies the remaining allegations in Paragraph 15.

16.     Transocean admits that after the *Deepwater Horizon* sank, oil flowed from BP's Macondo well into the Gulf of Mexico until the well was capped on July 15, 2010. Transocean denies the remaining allegations in Paragraph 16.

17.     Transocean denies the allegations in Paragraph 17.

18.     Transocean denies the allegations which appear immediately before Paragraph 18 which state: "Transocean Willfully and Wantonly Inhibited and Bypassed Automated Safety System Sensors, Responses and Alarms."   Transocean admits that the alarm system on the *Deepwater Horizon* had some automatic function capabilities.   Transocean denies the remaining allegations in Paragraph 18.

19.     Transocean admits that the emergency shut down system was capable of shutting the engines down.   Transocean admits that the engines were equipped with "rig savers," devices designed to automatically shut off the engines in an over-speed situation.   Transocean denies the remaining allegations in Paragraph 19.

20.     Transocean admits the allegations in Paragraph 20.

21.     Transocean admits that the *Deepwater Horizon*'s rig-wide "general alarm" was configured to require manual activation (in order to avoid false alarms) and that on occasion, individual detectors would be placed in "passive move" or "inhibit mode."   Transocean denies the remaining allegations in Paragraph 21.

22.     Transocean denies the allegation that its operation of alarms on the *Deepwater Horizon* presented risks to the vessel or crew.   Transocean admits that Paragraph 22 contains some language that can be found in documentation related to BP's September 2009 audit of the *Deepwater Horizon*, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to alarms on the *Deepwater Horizon*.   Transocean denies the remaining allegations in Paragraph 22.

23.     Transocean denies the allegations in Paragraph 23.

24.     Transocean admits that on April 20, 2010, the Macondo well blew out and an explosion and fire occurred on the *Deepwater Horizon*.  Transocean admits that on or about April 22, 2010, the *Deepwater Horizon* sank.  Transocean denies the remaining allegations in Paragraph 24.

25.     Transocean denies the allegations which appear immediately before Paragraph 25 which state: "Transocean Willfully and Wantonly Refused to Fix Its Longstanding Failed Maintenance System."  Transocean denies the allegations in Paragraph 25.

26.     Transocean admits that Paragraph 26 contains some language that can be found in deposition testimony of Doug Brown or documentation related to the Lloyd's Register Report of March 2010, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to maintenance on the *Deepwater Horizon*.  Transocean denies the remaining allegations in Paragraph 26.

27.     Transocean admits that its maintenance system had been audited on multiple occasions, but denies that it was found to be deficient or that Transocean did not correct major deficiencies.  Transocean admits that Paragraph 27 contains some language that can be found in documentation related to Transocean's May 1, 2009 Asset Reliability Project, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to Transocean's maintenance system.  Transocean denies the remaining allegations in Paragraph 27.

28.     Transocean admits that Paragraph 28 contains some language that can be found in documentation related to a BP audit, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to Transocean's HSSE Management Systems.  Transocean denies the remaining allegations in Paragraph 28.

29.     Transocean admits that the *Deepwater Horizon* had not had a drydock inspection, but denies that this was in violation of the ISM Code.   Transocean denies the remaining allegations in Paragraph 29.

30.     Transocean admits that Paragraph 30 contains some language that can be found in an October 29, 2009 email from Steve Bertone to Paul Johnson, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to maintenance on the *Deepwater Horizon*.   Transocean denies the remaining allegations in Paragraph 30.

31.     Transocean denies the allegation that multiple audits show that it was not properly maintaining the *Deepwater Horizon*, ignoring audit findings, or claiming to perform maintenance and repair items when, in fact, they were not done.   Transocean admits that Paragraph 31 contains some language that can be found in documentation related to audits, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to maintenance on the *Deepwater Horizon*.   Transocean denies the remaining allegations in Paragraph 31.

32.     Transocean denies the allegation that it had a company-wide practice of ignoring audit findings or failing to appropriately close out recommendations.   Transocean admits that Paragraph 32 contains some language that can be found in documentation related to ISM Code audits, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to maintenance on the *Deepwater Horizon*.   Transocean denies the remaining allegations in Paragraph 32.

33.     Transocean denies the allegation that maintenance on the *Deepwater Horizon* was continuously behind schedule.   Transocean admits that Paragraph 33 contains some language that can be found in deposition testimony of Michael Williams, but denies that the partially

quoted language is complete, properly characterized, or accurate with respect to maintenance on the *Deepwater Horizon*.  Transocean denies the remaining allegations in Paragraph 33.

34.     Transocean denies the allegations that the *Deepwater Horizon* did not get enough planned maintenance, that most maintenance periods were only "band-aid" fixes, and that the condition of the rig was driving workers to leave the *Deepwater Horizon*.  Transocean admits that Paragraph 34 contains some language that can be found in deposition testimony of Daun Winslow, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to maintenance on the *Deepwater Horizon*.  Transocean denies the remaining allegations in Paragraph 34.

35.     Transocean denies the allegations in Paragraph 35.

36.     Transocean denies the allegation that safety critical Fire & Gas protection equipment was in constant disrepair.  Transocean admits that Paragraph 36 contains some language that can be found in documentation related to rig audits and surveys and a February 22, 2010 email from the maintenance supervisor to the Chief Mate, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to maintenance on the *Deepwater Horizon*.  Transocean denies the remaining allegations in Paragraph 36.

37.     Transocean admits that the RMS II Morning Report for April 19, 2010 showed 222 "overdue" maintenance items on the *Deepwater Horizon*, but denies that any of the open maintenance items played a role in the incident.  Transocean denies the remaining allegations in Paragraph 37.

38.     Transocean denies the allegations in Paragraph 38.

39.     Transocean denies the allegations in Paragraph 39.

40.     Transocean denies the allegations in Paragraph 40.

41.    Transocean admits that Paragraph 41 contains some language that can be found in a February 21, 2010 email from Buddy Trahan to James Kent, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to BOP maintenance on the *Deepwater Horizon*.  Transocean denies the remaining allegations in Paragraph 41.

42.    Transocean denies the allegations in Paragraph 42.

43.    Transocean denies the allegations in Paragraph 43.

44.    Transocean denies the allegations in Paragraph 44.

45.    Transocean denies the allegations which appear immediately before Paragraph 45 which state: "Transocean Willfully and Wantonly Manned The *Deepwater Horizon* with Unqualified, Unlicensed, and Under-Trained Personnel."  Transocean denies the remaining allegations in Paragraph 45.

46.    Transocean admits that Paragraph 46 contains some language that can be found in a March 2009 summary of findings from the *M.G. Hulme* incident, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to training provided to the *Deepwater Horizon* crew.  Transocean denies the remaining allegations in Paragraph 46.

47.    Transocean denies the allegations in Paragraph 47.

48.    Transocean admits the allegations in Paragraph 48.

49.    Transocean admits that Gerald Canducci was Transocean's Designated Person Ashore for the *Deepwater Horizon*.  Transocean denies the remaining allegations in Paragraph 49.

50.    Transocean denies the allegations in Paragraph 50.

51.     Transocean admits that Paragraph 51 contains some language that can be found in notes of an interview of John Keeton, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to Captain Kuchta's training.  Transocean denies the remaining allegations in Paragraph 51.

52.     Transocean denies the allegations in Paragraph 52.

53.     Transocean denies the allegations in Paragraph 53.

54.     Transocean denies the allegations in Paragraph 54.

55.     Transocean denies the allegations in Paragraph 55.

56.     Transocean denies the allegations which appear immediately before Paragraph 56 which state: "Transocean Willfully and Wantonly Violated the ISM Code and Created Confusion by Establishing and Maintaining a 'Dual Command' Structure."  The allegations of Paragraph 56 contain statements of law and other assertions that do not require a response by Transocean, but out of an abundance of caution are denied.

57.     Transocean denies the allegations in Paragraph 57.

58.     Transocean denies the allegations in Paragraph 58.

59.     Transocean admits that Paragraph 59 contains some language that can be found in a 2007 memorandum, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to the command structure on the *Deepwater Horizon*. Transocean denies the remaining allegations in Paragraph 59.

60.     Transocean denies the allegations in Paragraph 60.

61.     Transocean denies the allegations which appear immediately before Paragraph 61 which state: "Transocean Personnel Exhibited Willful and Reckless Disregard in Proceeding with the Abandonment Procedure after the Failed Negative Pressure Test."  Transocean admits

that following the final cement job on the Macondo well, a negative pressure test was performed in order to test whether the cement barrier would hold once the drilling mud was removed. Transocean admits that the last stages in the temporary abandonment of the well were a negative pressure test and final displacement of the drilling mud.  Transocean denies the remaining allegations in Paragraph 61.

62.     The allegations directed at BP do not require a response by Transocean.  To the extent the allegations in this paragraph are directed at Transocean, Transocean denies the allegations in Paragraph 62.

63.     Transocean admits that it was unsafe for BP to declare the negative pressure test a success and order the crew to proceed with displacement.  Transocean denies the remaining allegations in Paragraph 63.

64.     Transocean admits that displacement continued following the negative pressure test on April 20, 2010.  Transocean denies the remaining allegations in Paragraph 64.

65.     Transocean denies the allegations which appear immediately before Paragraph 65 which state: "The Transocean Drill Crew Exhibited Willful and Reckless Disregard in Ignoring the Kick and Failing to Shut in the Well."  Transocean admits that it had the primary duty for kick detection and that its standards consider a kick over 20 barrels to be in the "red zone." Transocean denies the remaining allegations in Paragraph 65.

66.     Transocean admits that the continuing pressure on the drill pipe despite zero pressure on the kill line should have alerted BP that the negative pressure test was not a success. Transocean admits that post-incident modeling shows that the well became underbalanced around 8:52 p.m. and that Sperry Sun data shows subtle anomalies beginning at approximately 9:00 p.m.  Transocean denies the remaining allegations in Paragraph 66.

67.     Transocean denies the allegations in Paragraph 67.

68.     Transocean denies the allegations in Paragraph 68.

69.     Transocean denies the allegations which appear immediately before Paragraph 69 which state: "Transocean and its Crew Exhibited Willful and Reckless Disregard in Allowing the Kick to be Directed into the Mud-Gas Separator (MGS), rather than Diverting it Overboard." Transocean admits the Mud Gas Separator is used to separate gas from drilling mud.  Transocean denies the remaining allegations in Paragraph 69.

70.     Transocean admits that the crew activated the diverter, which was set to send flow to the mud gas separator per BP policy to avoid discharging mud into the Gulf of Mexico. Transocean denies the remaining allegations in Paragraph 70.

71.     Transocean admits that the diverter was set to send flow to the mud gas separator per BP policy to avoid discharging mud into the Gulf of Mexico.  Transocean denies the remaining allegations in Paragraph 71.

72.     Transocean denies the allegations in Paragraph 72.

73.     Transocean denies the allegations which appear immediately before Paragraph 73 which state: "Transocean's Bridge Crew Exhibited Willful and Reckless Disregard in Failing to Respond to the Emergency in a Timely Manner."   Transocean denies the allegations in Paragraph 73.

74.     Transocean denies the allegations in Paragraph 74.

75.     Transocean denies the allegations in Paragraph 75.

76.     Transocean admits that the EDS and General Alarm could be manually activated by the Bridge Crew.  Transocean denies the remaining allegations in Paragraph 76.

77.     Transocean denies the allegations in Paragraph 77.

78.     Transocean denies the allegations in Paragraph 78.

79.     Transocean admits that Paragraph 79 contains some language that can be found in deposition testimony of Yancy Keplinger, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to the events of April 20, 2010. Transocean denies the remaining allegations in Paragraph 79.

80.     Transocean denies the allegations of Paragraph 80.

81.     Transocean denies the allegations in Paragraph 81.

82.     Transocean denies the allegations in Paragraph 82.

83.     Transocean admits that Paragraph 83 contains some language that can be found in documentation related to the Lloyd's Register Survey, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to Transocean's safety culture.  Transocean denies the remaining allegations in Paragraph 83.

84.     Transocean denies the allegations in Paragraph 84.

85.     Transocean denies the allegations in Paragraph 85.

86.     Transocean denies the allegations in Paragraph 86.

87.     Transocean admits that Paragraph 87 contains some language that can be found in a May 20, 2009 email, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to Transocean's risk management.  Transocean denies the remaining allegations in Paragraph 87.

88.     Transocean admits that Paragraph 88 contains some language that can be found in a December 2009 Transocean Engineering HSEE PowerPoint presentation, but denies that the partially quoted language is complete, properly characterized, or accurate with respect to Transocean's safety culture.  Transocean denies the remaining allegations in Paragraph 88.

89.    Transocean denies the allegations in Paragraph 89.

90.    Transocean admits that there was a well control event on *The Jim Cunningham* in 2004, and that Paragraph 90 contains some language that can be found in its internal investigation report of that incident, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 90.

91.    Transocean admits that Paragraph 91 contains some language that can be found in a March 2008 email from Larry McMahan, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 91.

92.    Transocean admits that Paragraph 92 contains some language that can be found in a June 5, 2008 email from Larry McMahan, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 92.

93.    Transocean admits that there was a riser unloading event on the *M.G. Hulme* in February 2009, and that Paragraph 93 contains some language that can be found in its internal investigation report of that incident, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 93.

94.    Transocean admits that Paragraph 94 contains some language that can found in its internal investigation report of the *M.G. Hulme* incident, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 94.

95.    Transocean admits that there was an incident on the *Deepwater Expedition* in July 2009, and that Paragraph 95 contains some language that can be found in its internal

investigation report of that incident, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 95.

96.     Transocean admits that there was an incident on the *Sedco 702* in 2009, and that Paragraph 96 contains some language that can be found in its internal investigation report of that incident, but denies that the partially quoted language is complete or properly characterized. Transocean denies the remaining allegations in Paragraph 96.

97.     Transocean admits that there were four fatalities on its rigs in 2009, and that Paragraph 97 contains some language that can found in an October 21, 2009 email bulletin from Steven Newman and Bob Long, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 97.

98.     Transocean admits that there was a well control event on the *Sedco 711* in December 2009, and that Paragraph 98 contains some language that can be found in its internal investigation report of that incident, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 98.

99.     Transocean admits that Paragraph 99 contains some language that can be found in its internal investigation report of the *Sedco 711* incident, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 99.

100.    Transocean admits that the well control event occurring on the *Sedco 711* rig resulted in a fleetwide advisory on April 5, 2010 and that email distribution had not yet reach the *Deepwater Horizon* crew on April 20.  Transocean admits that the General Manager of its North American Division was on vacation at the time and did not review the advisory before April 20, 2010.  Transocean denies the remaining allegations in Paragraph 100.

101.    Transocean admits that Paragraph 101 contains some language that can be found in its Annual Well Control Event Report for 2009, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 101.

102.    Transocean admits that Paragraph 102 contains some language that can be found in its 2009 Year End Fleet Performance Summary, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 102.

103.    Transocean denies the allegations in Paragraph 103.

104.    Transocean admits that the *Deepwater Horizon* experienced a kick on March 8, 2010.  Transocean denies the remaining allegations in Paragraph 104.

105.    Transocean admits that Lloyd's Register performed an assessment of Transocean's safety management and safety culture in March 2010 and that Paragraph 105 contains some language that can be found in documentation related to that assessment, but denies that the partially quoted language is complete or properly characterized.  Transocean denies the remaining allegations in Paragraph 105.

106.    Transocean admits that after the Spill began, and until the well was capped, raw crude oil, natural gas, and chemical dispersants have escaped the Macondo well and/or have been used in the Gulf of Mexico.  Transocean does not have sufficient knowledge or information to determine whether the remaining allegations set forth in Paragraph 106 are true and, therefore, denies the same.

107.    Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 107 are true and, therefore, denies all allegations in

this paragraph.   40 C.F.R. § 401.15 speaks for itself.  To the extent the allegations set forth in Paragraph 107 draw any legal conclusions, no response is required.

108.   Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 108 are true and, therefore, denies all allegations in this paragraph.  Any statements by the "environmental experts" in the *Deepwater Horizon* Study Group speak for themselves.

109.   Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 109 are true and, therefore, denies all allegations in this paragraph.

110.   Transocean does not have sufficient knowledge or information to determine whether the allegations contained in Paragraph 110 are true and, therefore, denies all allegations in this paragraph.

111.   Transocean admits that there are a wide variety of commercially valuable fish species in the Gulf of Mexico, including shrimp, crabs, oysters, menhaden, and pelagic fish. Transocean does not have sufficient knowledge or information to determine whether the remaining allegations set forth in Paragraph 111 are true and, therefore, denies the same.

112.   Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 112 are true and, therefore, denies all allegations in this paragraph.

113.   Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 113 are true and, therefore, denies all allegations in this paragraph.  NOAA sources speak for themselves.

114.    Transocean does not have sufficient knowledge or information to determine whether the allegations set forth in Paragraph 114 are true and, therefore, denies all allegations in this paragraph.  Congressional testimony of Dr. Lisa Kaplowitz speaks for itself.

115.    Transocean does not have sufficient knowledge or information to determine whether the allegations contained in Paragraph 115 are true and, therefore, denies all allegations in this paragraph.

116.    Transocean does not have sufficient knowledge or information to determine whether the allegations contained in Paragraph 116 are true and, therefore, denies all allegations in this paragraph.

117.    Transocean does not have sufficient knowledge or information to determine whether the allegations contained in Paragraph 117 are true and, therefore, denies all allegations in this paragraph.

## CLASS ACTION ALLEGATIONS

118.    Transocean admits that the Plaintiffs seek certification of the Class defined in the Transocean Punitive Damages and Assigned Claims Settlement Agreement, filed with the Court on May 29, 2015 (Rec. Doc. 14644-1) (hereinafter, "Transocean Settlement Agreement").

119.    Transocean admits that Bodily Injury Claims of any Plaintiff or putative Class Member are excluded from the Transocean Settlement Agreement.

120.    Transocean admits that Plaintiffs have brought this action as a class action on behalf of the defined Class.  Transocean admits that this action may be properly maintained as a class action, but only to the extent required by the Transocean Settlement Agreement. Transocean does not oppose conditional class certification for settlement purposes only. Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.   Any class

certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.  To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective.  Transocean denies the remaining allegations in Paragraph 120.

121.    Transocean admits the allegations of Paragraph 121, but only to the extent required by the Transocean Settlement Agreement.  Transocean does not oppose conditional class certification for settlement purposes only.  Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.  Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.  To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective. Transocean denies the remaining allegations in Paragraph 121.

122.    Transocean admits the allegations of Paragraph 122, but only to the extent required by the Transocean Settlement Agreement.  Transocean does not oppose conditional class certification for settlement purposes only.  Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.  Any class certification order entered in connection with the

Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.  To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective. Transocean denies the remaining allegations in Paragraph 122.

123.    Transocean denies that its conduct was outrageous, reckless, grossly negligent, willful, wanton, or indifferent to the rights of others.  Transocean admits that common factual questions exist among the claims of the Class, but only to the extent required by the Transocean Settlement Agreement.  Transocean does not oppose conditional class certification for settlement purposes only.  Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.  Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.  To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective.  Transocean denies the remaining allegations in Paragraph 123.

124.    Transocean denies that its conduct was outrageous, reckless, grossly negligent, willful, wanton, or indifferent to the rights of others.  Transocean admits that common factual questions exist among the claims of the Class, but only to the extent required by the Transocean Settlement Agreement.  Transocean does not oppose conditional class certification for settlement

purposes only.  Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.  Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.  To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective.  Transocean denies the remaining allegations in Paragraph 124.

125.    Transocean denies that its conduct was outrageous, reckless, grossly negligent, willful, wanton, or indifferent to the rights of others.  Transocean admits that the claims of the Plaintiffs are typical of the claims of the Class, but only to the extent required by the Transocean Settlement Agreement.  Transocean does not oppose conditional class certification for settlement purposes only.  Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.  Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.  To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective.  Transocean denies the remaining allegations in Paragraph 125.

126.    Transocean admits the allegations of adequate representation by Plaintiffs and their counsel, but only to the extent required by the Transocean Settlement Agreement. Transocean does not oppose conditional class certification for settlement purposes only. Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.   Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.   To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective.   Transocean denies the remaining allegations in Paragraph 126.

127.    Transocean admits that common issues of fact and law predominate among the claims of the Class, but only to the extent required by the Transocean Settlement Agreement. Transocean does not oppose conditional class certification for settlement purposes only. Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.   Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.   To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean

Settlement Agreement does not become effective.  Transocean denies the remaining allegations in Paragraph 127.

128.    Transocean admits that common issues of fact and law predominate among the claims of the Class, but only to the extent required by the Transocean Settlement Agreement. Transocean does not oppose conditional class certification for settlement purposes only. Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.   Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.  To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective.  Transocean denies the remaining allegations in Paragraph 128.

129.    Transocean admits that common issues of fact and law predominate among the claims of the Class, but only to the extent required by the Transocean Settlement Agreement. Transocean does not oppose conditional class certification for settlement purposes only. Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.   Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.  To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order

without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective.   Transocean denies the remaining allegations in Paragraph 129.

130.   Transocean denies that punitive damages are justified.   Transocean admits that common issues of fact and law predominate among the claims of the Class, but only to the extent required by the Transocean Settlement Agreement.   Transocean does not oppose conditional class certification for settlement purposes only.   Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.   Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.   To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective. Transocean denies the remaining allegations in Paragraph 130.

131.   Transocean denies that its conduct was grossly negligent, willful, reckless, or wanton.   Transocean admits that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, but only to the extent required by the Transocean Settlement Agreement.   Transocean does not oppose conditional class certification for settlement purposes only.   Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.   Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any

Class member or for any other purpose is appropriate for class certification.  To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective.  Transocean denies the remaining allegations in Paragraph 131.

132.     Transocean admits that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, but only to the extent required by the Transocean Settlement Agreement.  Transocean does not oppose conditional class certification for settlement purposes only.  Transocean reserves the right to join in only certain bases for conditional class certification under the Federal Rules of Civil Procedure.  Transocean does not waive or concede any position or arguments it has for or against class certification of any class for any other purpose in any action or proceeding.  Any class certification order entered in connection with the Transocean Settlement Agreement shall not constitute evidence, an admission, or a finding that the Class or any class proposed by any Class member or for any other purpose is appropriate for class certification.  To the extent the Court enters a Preliminary Approval Order without material alteration or a Final Approval Order without material alteration, any such Order will provide for vacation in the event the Transocean Settlement Agreement does not become effective.  Transocean denies the remaining allegations in Paragraph 132.

133.     Paragraph 133 is a statement that Plaintiffs reallege each and every allegation set forth in the preceding paragraphs as if fully restated here.  Transocean has responded to each of the preceding paragraphs and no further response is required to the allegations contained in

Paragraph 133.   Transocean adopts and incorporates by reference their responses to Plaintiffs' allegations as set forth above.

134.    Transocean denies the allegations in Paragraph 134, and specifically denies that it acted in a grossly negligent, willful, wanton, or reckless manner.  To the extent the allegations in Paragraph 134 draw any legal conclusions, no response is required.

135.    Transocean denies the allegations in Paragraph 135, and specifically denies that it acted in a grossly negligent, willful, wanton, or reckless manner.  To the extent the allegations in Paragraph 135 draw any legal conclusions, no response is required.

136.    Transocean denies the allegations in Paragraph 136, and specifically denies that it acted in a grossly negligent, willful, wanton, or reckless manner.  To the extent the allegations in Paragraph 136 draw any legal conclusions, no response is required.

137.    Transocean denies the allegations in Paragraph 137, and specifically denies that it acted in a grossly negligent, willful, wanton, or reckless manner.  To the extent the allegations in Paragraph 137 draw any legal conclusions, no response is required.

138.    Transocean denies the allegations in Paragraph 138, and specifically denies that it acted in a grossly negligent, willful, wanton, or reckless manner.  To the extent the allegations in Paragraph 138 draw any legal conclusions, no response is required.

139.    Transocean denies the allegations in Paragraph 139, and specifically denies that it acted in a grossly negligent, willful, wanton, or reckless manner.  To the extent the allegations in Paragraph 139 draw any legal conclusions, no response is required.

Transocean denies that Plaintiffs and the Class and/or Subclass Members are entitled to the relief sought in the unnumbered "Prayer for Relief" (and its subparts), and prays this Court denies the relief requested therein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The allegations of the Complaint fail to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

With respect to claims for purely economic losses and/or claims lacking a physical injury to a proprietary interest, recovery against Transocean is barred in whole or in part pursuant to *Robins Dry Dock & Repair Co. v. Flint*, 271 U.S. 303 (1927), and by the economic loss doctrine.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs have failed to plead, and cannot satisfy, conditions precedent to recovery.

### FOURTH AFFIRMATIVE DEFENSE

OPA displaces or preempts the Plaintiffs' claims with respect to oil spill damages or otherwise.  There is no right of action against one or more of the Transocean Defendants to the extent any of them is not a Responsible Party as defined under OPA.  OPA eliminates or limits the Plaintiffs' alleged rights of recovery for certain economic loss claims.  OPA does not provide for, or allow, the recovery of punitive or exemplary damages.   OPA does not provide for, or allow, a determination of joint and several liability, but requires an apportionment of fault.  In addition, to the extent Plaintiffs and/or Claimants have not complied with OPA's mandatory presentment requirements, such claims are barred.

### FIFTH AFFIRMATIVE DEFENSE

The Plaintiffs complain of harm not caused or contributed to in any manner by the Transocean Defendants, their alleged servants, employees, agents, or anyone for whom the Transocean Defendants are responsible.  The incident and resulting harm that are the subject of the Complaint were caused by the fault, negligence, breach of contract, breach of warranty,

statutory and regulatory violations of other persons, entities, or sovereigns for whom Transocean Defendants are not legally responsible.

### SIXTH AFFIRMATIVE DEFENSE

The injuries and resulting damages alleged to have been sustained by the Plaintiffs resulted from a superseding or intervening cause for which the Transocean Defendants are not responsible.

### SEVENTH AFFIRMATIVE DEFENSE

The injuries and resulting damages alleged to have been sustained by the Plaintiffs were not proximately caused by any acts and/or omissions of the Transocean Defendants.

### EIGHTH AFFIRMATIVE DEFENSE

The injuries and resulting damages alleged to have been sustained by the Plaintiffs were not foreseeable as a matter of law.

### NINTH AFFIRMATIVE DEFENSE

The Transocean Defendants specifically deny that the Plaintiffs have sustained legally compensable damages.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs may not recover on the claims pleaded in the Complaint because the damages sought are too speculative and remote.

### ELEVENTH AFFIRMATIVE DEFENSE

The Plaintiffs have not reasonably mitigated their damages.

### TWELFTH AFFIRMATIVE DEFENSE

The Transocean Defendants are entitled to set off, should any damages be awarded against them, in the amount recovered by Plaintiffs with respect to the same alleged injuries. The Transocean Defendants assert payment and release to the extent that any Plaintiffs' alleged

injuries have been or will be fully redressed under the Oil Pollution Act or other applicable statute or rule. The Transocean Defendants are also entitled to have any damages that may be awarded to Plaintiffs reduced by the value of any benefit or payment to Plaintiffs from any collateral source.

### THIRTEENTH AFFIRMATIVE DEFENSE

By the terms of the Economic and Property Damages Settlement Agreement and the Medical Benefits Class Action Settlement Agreement (together, the "BP Settlement Agreements"), between BP and the members of their respective Settlement Classes ("BP Settlement Class Members"), the BP Settlement Class Members expressly agree that they have been fully compensated for all compensatory damages. Having been fully compensated, BP Settlement Class Members are estopped from seeking punitive, exemplary, and multiple damages against Transocean. To the extent Plaintiffs are also BP Settlement Class Members, they are likewise estopped from seeking punitive, exemplary, and multiple damages against Transocean.

### FOURTEENTH AFFIRMATIVE DEFENSE

By the terms of the BP Settlement Agreements, BP Settlement Class Members expressly agree that they have been fully compensated for all compensatory damages. In the absence of any claim for compensatory damages, BP Settlement Class Members have no basis for an award of punitive, exemplary, or multiple damages against Transocean, and any such award is barred. To the extent Plaintiffs are also BP Settlement Class Members, they are likewise without basis for an award of punitive, exemplary, and multiple damages against Transocean.

### FIFTEENTH AFFIRMATIVE DEFENSE

The terms of the BP Settlement Agreements prevent the determination or calculation of actual compensatory damages paid to the BP Settlement Class Members, individually or

collectively.  Lack of a verifiable compensatory basis renders calculation of appropriate punitive, exemplary, and multiple damages impossible.  Accordingly, amounts paid pursuant to the BP Settlement Agreements cannot serve as the basis for any claims for punitive, exemplary, or multiple damages against Transocean.

### SIXTEENTH AFFIRMATIVE DEFENSE

While no award of punitive damages is proper against Transocean, any such award must nonetheless satisfy all applicable standards for propriety and amount of award.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the Statute of Limitations.

### EIGHTEENTH AFFIRMATIVE DEFENSE

The Court has made certain rulings that preclude an award of punitive damages in this litigation.

### NINETEENTH AFFIRMATIVE DEFENSE

Transocean asserts any other defenses to which it may be entitled under Rule 8(c), Federal Rules of Civil Procedure.

### TWENTIETH AFFIRMATIVE DEFENSE

Transocean reserves the right to amend its Answer, Rule 12(b) defenses and other defenses.

### GENERAL DENIAL

Transocean denies all allegations of the Complaint not specifically admitted herein, including but not limited to those set forth in all unnumbered paragraphs and/or sub-headings.

Respectfully submitted,

By:

  s/ Brad D. Brian                                    s/  Steven L. Roberts
Brad D. Brian                                        Steven L. Roberts
Daniel B. Levin                                      SUTHERLAND ASBILL & BRENNAN LLP
MUNGER TOLLES & OLSON LLP                             1001 Fannin Street, Suite 3700
355 So. Grand Avenue, 35th Floor                     Houston, Texas 77002
Los Angeles, CA 90071                                Tel:  (713) 470-6100
Tel:  (213) 683-9100                                 Fax:  (713) 354-1301
Fax:  (213) 683-5180                                 Email:  steven.roberts@sutherland.com
Email:  brad.brian@mto.com
           daniel.levin@mto.com
                                                       s/  Kerry J. Miller
                                                     Kerry J. Miller
                                                     BAKER, DONELSON, BEARMAN, CALDWELL &
                                                     BERKOWITZ, PC
                                                     201 St. Charles Avenue, Suite 3600
                                                     New Orleans, LA 70170
                                                     Tel:  (504) 566-8646
                                                     Fax:  (504) 585-6946
                                                     Email: kjmiller@bakerdonelson.com

**ATTORNEYS FOR TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., TRANSOCEAN DEEPWATER INC., TRANSOCEAN HOLDINGS LLC, AND TRITON ASSET LEASING GmbH.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Transocean's Answer to Complaint will be served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 8th day of October 2015.


                                                     /s/ Kerry J. Miller