UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL by the OIL RIG
 "DEEPWATER HORIZON" in the GULF OF
MEXICO on APRIL 20, 2010

**This Document Relates to:**
**2:10-cv-02454, 2:10-cv-01768**

)
)
)
)
)
)
)
)
)
)
)
)
)

MDL NO. 2179

SECTION: J

JUDGE BARBIER
MAG. JUDGE SHUSHAN

**MOTION FOR, AND MEMORANDUM IN**
**SUPPORT OF, RECONSIDERATION OF**
**THE COURT'S SEPTEMBER 14, 2015**
**ORDER RE: CROSS-MOTIONS FOR**
**SUMMARY JUDGMENT (ECF NO. 15352)**

Pursuant to Fed. R. Civ. Proc. 59(e), the Center for Biological Diversity (the "Center"),

plaintiff in *Center for Biological Diversity v. BP America, et al.*, 2:10-cv-02454 and 2:10-cv-

01768, respectfully submits this Motion for, and Memorandum in Support of, Reconsideration of

the Court's September 14, 2015 Order re: Cross-Motions for Summary Judgment, ECF No.

15352.  Reconsideration is sought on the Court's holding that Defendants' injection of excess,

unused spacer and drilling muds into the Macondo Well were "associated with the exploration,

development, or production of crude oil[.]"  40 C.F.R. § 261.4(b)(5).  This motion is timely

brought within 28 days after the Court's September 14, 2015 entry of judgment against Plaintiff

in both 2:10-cv-02454 and 2:10-cv-01768.  Fed. R. Civ. Proc. 59(e).

**LEGAL STANDARD**

Fed. R. Civ. Proc. 59(e) allows for motions to alter or amend judgments if such motions

are filed within 28 days after entry of the judgment.  In this Circuit, motions to reconsider grants

of summary judgment are treated as motions to alter or amend under Rule 59(e).  *See Harcon*

*Barge Co., Inc. v. D&G Boat Rentals, Inc.*, 784 F.2d 665, 667 (5th Cir. 1986), *cert. denied sub*

*nom.*, *Southern Pacific Transportation Co. v. Harcon Barge Co.*, 479 U.S. 930 (1986).  Motions

for reconsideration serve "the narrow purpose of allowing a party to correct manifest errors of

1

law or fact or to present newly discovered evidence." *Waltman v. Intl. Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).  In considering such motions, as well as any new evidence attached thereto, the Court must "strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993); *Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir. 1994).

## ARGUMENT

In the decision at issue, the Court held that the "petroleum exclusion," 42 U.S.C. § 9601(14), was not vitiated by BP's injection of hazardous materials into the Macondo Well. Decision at 17.  The Center argued in its briefing that the addition of 454-barrels of unused spacer and 28,000-30,000 barrels of used drilling muds into the Macondo Well were, under the circumstances of this case, unrelated to the production or refining processes, and therefore removed the oil released from the well from the scope of the petroleum exclusion.  *E.g.,* ECF No. 12898 at 5-6 (Center's Reply Brief).  BP did not dispute that the unused spacer and used drilling muds contained listed hazardous substances that would otherwise need to be disposed of pursuant to RCRA and reported under EPCRA.  The Court partially agreed with the Center, finding that, if BP had added hazardous substances into the well, then "BP would be required to report the release of the petroleum mixed with the drilling fluids from the well." *Id*. at 16.  The Court then determined, however, that the unused 454-barrel spacer and the 28,000-30,000 barrels of drilling fluids injected into the well and Blowout Preventer were exempt from the definition of "hazardous substances" because such materials were "associated with the exploration,

development, or production of crude oil[.]"  40 C.F.R. § 261.4(b)(5).[1]  This conclusion is a

manifest error of both law and fact, creating serious public policy implications that could have

widespread impact if not corrected by this Court.

First, as to the unused spacer, it is undisputed that BP dumped the unused and unneeded

spacer into the well in order to get rid of it without complying with the hazardous waste disposal

requirements of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.  See*

Uncontested Deposition Testimony of Leo Linder, ECF No. 12673-7, Ex. 3 (Ex M. at pp. 33-36)

(BP told Mr. Linder not to keep the spacer "pills" because BP "didn't want to have to dispose of

them," and "no one wanted to have to keep either one of this pills," because they likely would

have had to been disposed of properly as non-exempt waste).  The Center contends that this

testimony clearly showed the excess spacer did not fall under the regulatory exemption for

hazardous waste, as *unused* and *unwanted* material *cannot be* "associated with" crude oil

exploration, production, or development.  The excess spacer was not used to explore for crude

oil, was not used to produce crude oil, and was not used in the development of crude oil.  It was

dumped into the well as an unwanted and unneeded waste in order to avoid the cost of regulatory

compliance.

The Court disagreed.  It decided that the spacer, even though unused and unnecessary for

exploration, production, and development, was still "associated with" these activities.  Decision

---

[1] The Court also stated that "[t]he Center asserts that the contents of the spacer fluid and drilling mud are not subject to the reporting requirement[.]"  Decision at 15.  This statement by the Court is manifestly incorrect. To the contrary, the Center directly argued that BP is required to report the release of all reportable quantities of EPCRA-covered substances. The Center simply did not move for summary judgment on these particular elements because of potential material issues of fact. *See, e.g.,* Center's Statement of Material Fact, ECF No. 12673-2 at ¶¶ 18-19 (drilling muds contained ethylene glycol, caustic soda, and methanol, all listed hazardous substances); ¶ 36 n. 1 (noting that no reports about the release of any other hazardous substances were submitted by BP).

at 16.  Based on this reasoning, any material, regardless of whether it is actually used in connection with crude oil exploration, production, and development, would fall under the ambit of the EPA exemption at 40 C.F.R. § 261.4(b)(5).  Indeed, based on the Court's interpretation, the phrase "associated with" stretches so far that any material that is merely *present* at a drilling site is subject to the exemption.  This broad interpretation takes the exemption well beyond its intended reach.

The same is true for the Court's holding concerning the 28,000-30,000 barrels of drilling muds injected into the well.  Decision at 16.  The Court reasoned that the drilling muds – muds that undisputedly contained hazardous substances, ECF No. 12673-2 at ¶¶ 18-19 – injected into the Macondo Well to stop the uncontrolled discharge of oil were "associated with" crude oil exploration, production, and development.  This interpretation exceeds the bounds of a reasonable application of "associated with."  The drilling muds were injected in a failed attempt to *stop* the uncontrolled flow of oil, not to facilitate the exploration of crude oil, the development of crude oil, or the production of crude oil.  The steps BP took to try to stop of the flow of oil, are unequivocally *not* "associated with" activities designed to locate oil, remove oil from the ground, or to produce and refine oil for use in the marketplace.  Put differently, stopping the flow of oil and killing the Macondo well are not the same thing as exploring, producing, and developing that well.  They are exactly the opposite.

Importantly, the Court relied upon some EPA guidance documents, including an EPA General Counsel decision from 1987, in rendering its Decision in this matter.  The Center respectfully submits that the Court relied upon partial and incomplete guidance, and that to render a just and fair decision in this case, it must look to the complete set of guidance documents that directly touch upon this issue.  *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326,

1337 (2013) (courts to defer to agency interpretation of its own regulation unless it is plainly

erroneous or inconsistent with regulation).  For instance, the EPA issued a "clarification"

document on March 22, 1993, which described the hazardous waste exemption found at 40

C.F.R. § 261.4(b)(5), and, in particular, the scope of the phrase "associated with."  Specifically,

the Agency stated:

> "[F]or a waste to be exempt from regulation as hazardous waste
> under RCRA Subtitle C, it must be associated with operations **to
> locate or remove oil or gas from the ground** or **to remove
> impurities from such substances and it must be intrinsic to and
> uniquely associated with oil and gas exploration, development
> or production operations** (commonly referred to simply as
> exploration and production or E&P)."

The document provides additional useful guidance:

> "A simple rule of thumb for determining the scope of the
> exemption is whether the waste in question has come from down-
> hole (i.e., brought to the surface during oil and gas E&P
> operations) or has otherwise been generated by contact with the oil
> and gas production stream during the removal of produced water or
> other contaminants from the product (e.g., waste demulsifiers,
> spent iron sponge)."

*Clarification of the Regulatory Determination for Wastes from the Exploration, Development

and Production of Crude Oil, Natural Gas and Geothermal Energy*, 58 F.R. 15284 (March 22,

1993) (attached hereto as Appendix A) (emphases added).

Similarly, in an October, 2002 EPA publication, the Agency provided further guidance to

the oil and natural gas industry for when a waste is "associated with the exploration,

development, and production of crude oil."  Relevant here is the "common misunderstandings"

section, which states:

> **"Misunderstanding:** All wastes located at E&P sites are exempt.
>
> **Fact:** All wastes located at E&P sites are not necessarily exempt.
> **To be considered an exempt waste, the waste must have been
> generated from a material or process uniquely associated with**

**the exploration, development, and production of crude oil and natural gas.** For example, a solvent used to clean surface equipment or machinery is not exempt because it is not uniquely associated with exploration, development, or production operations. Conversely, if the same solvent were used in a well, it would be exempt because it was generated through a procedure that is uniquely associated with production operations."

…

**Misunderstanding:** Unused products are exempt.

**Fact: Unused products, if disposed of, are not exempt, regardless of their intended use, because they have not been used and therefore are not uniquely associated with the exploration or production of oil and gas.** When unused products become waste (e.g., they are disposed of), they are subject to RCRA Subtitle C hazardous waste regulations if they are listed or exhibit a hazardous characteristic.

EPA Publication EPA530-K-01-004, "Exemption of Oil and Gas Exploration and Production Wastes from Federal Hazardous Waste Regulations," pp. 18-20, October, 2002 (emphases added) (attached hereto as Appendix B).

These EPA interpretative documents directly contradict the Court's conclusions that the unused excess spacer dumped into the wellbore and the 28-30,000 barrels of used drilling muds injected into the Blowout Preventer to stop the flow of oil are "associated with the exploration, development, or production of crude oil" and thus subject to the exemption found at 40 C.F.R. § 261.4(b)(5).[2] *Chevron, U.S.A. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)

---

[2] The Center recognizes that the cited references could be considered "new evidence" that should not be submitted after summary judgment briefing has concluded. However, the Center respectfully submits that it reasonably believed the language of the exemption clear enough on its face, such that no secondary sources were required to support the Center's position. In any event, the purpose of this Motion is to correct a manifest error of law and fact in the Court's decision, and the Center submits that the Court should consider these materials in revisiting its opinion. These are, after all, the types of documents for which the Court can take judicial notice. *Martinez v. Dow Chem. Co.*, 219 F. Supp. 2d 719, 734 n. 4 (E.D. La. 2002) (J. Barbier) ("the Court is authorized to take judicial notice of official government publications").

(considerable weight should be accorded to agency's administrative interpretations); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566 (1980) ("An agency's construction of its own regulations has been regarded as especially due that respect.").  Instead, these documents show that EPA – the Agency responsible for implementing RCRA – would itself determine that the excess spacer and drilling muds *were* hazardous waste not subject to the exemption, for these materials *were not* used "to locate or remove oil…from the ground…or to remove impurities from such substances," nor "intrinsic to" or "uniquely associated" with oil and gas exploration, development, or production operations.[3]   Simply put, the overuse of spacer material and the injection of drilling muds to cease an unanticipated blowout are not part of, nor "associated with," the expected crude oil exploration, development, and production process.

Public policy also calls into question the Court's decision.  By judicially extending the regulatory exemption of hazardous waste under RCRA to virtually any substance located in proximity to an oil or gas well – an expansion well beyond EPA's own interpretation of its regulations – the Court has created a veritable black hole in which oil and gas companies can dump untold sums of hazardous waste into the environment that would not otherwise be considered "associated with" oil and gas exploration, development, and production.  This is especially problematic in the context of oil spills – situations in which Congress has said the public deserves *more* information about the types and quantities of materials being released into the environment, not less.  In sum, EPA's interpretative guidance, as well as a common sense interpretation of the phrase "associated with," directly contradict the Court's conclusion about the hazardous waste exemption in its Decision.  To avoid manifest injustice and creation of case

---

[3]   Furthermore, counsel for the Center contacted EPA to seek their position on this Court's decision.  While EPA has said that they agree with the Center's position, see e-mail from Dean Ziegel of EPA attached to the Declaration of Charles M. Tebbutt, they also indicated that they would not likely weigh in unless the matter went before the Court of Appeals.

law that could lead to further misinterpretations of the laws designed to protect against pollution and provide the public the right to know, the Center respectfully requests that the Court reconsider this particular holding.[4]

## CONCLUSION

For the reasons articulated herein, the Center respectfully requests that the Court revisit and alter or amend its Decision in this matter.  As the Court itself noted, if the drilling muds and spacer fluid are indeed hazardous substances, then "BP would be required to report the release of the petroleum mixed with the drilling fluids from the well."  Decision at 16.  BP did not contradict the Plaintiff's calculations about the reportable quantities of benzene, toluene, and xylene released from the well, nor the fact that the spacer fluid and drilling muds themselves contain hazardous substances that require reporting.  Accordingly, the Court should revise its opinion and grant the Center's Motion for Partial Summary Judgment as set forth herein.

DATED this 8th Day of October, 2015.

Respectfully submitted,

<div style="margin-left:3em">

s/Charles M. Tebbutt
Charles M. Tebbutt
Daniel C. Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Ph: 541-344-3505
E-mail: Charlie@tebbuttlaw.com
E-mail: Dan@tebbuttlaw.com

</div>

---

[4] While the Center does not agree with the Court's holdings on other issues concerning EPCRA's application to the Gulf disaster, reconsideration is sought only on the issue raised herein.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Motion for and Memorandum in Support of Reconsideration of the Court's September 14, 2015 Order re: Cross-Motions for Summary Judgment has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of October, 2015.

<div style="text-align: right;">

s/ Charles M. Tebbutt
Charles M. Tebbutt
Law Offices of Charles M. Tebbutt, P.C.

</div>