THIRTY-SECOND JUDICIAL DISTRICT COURT

PARISH OF TERREBONNE

STATE OF LOUISIANA

NO. / DIVISION " "

PIERRE MABILE

v.

BP, P.L.C., BP EXPLORATION & PRODUCTION INC., BP AMERICA, INC., and BP AMERICA PRODUCTION COMPANY

FILED:_____    _____
DEPUTY CLERK

## PETITION FOR DAMAGES

NOW INTO COURT respectfully comes Petitioner, **Pierre Mabile**, an individual of full age and majority, who is domiciled in the Parish of Ascension, State of Louisiana.

1.

Made Defendants in this action are the following (collectively, "BP"):

 a) **BP AMERICA PRODUCTION COMPANY**, a foreign corporation licensed to do business in Louisiana;

 b) **BP EXPLORATION & PRODUCTION, INC.**, a foreign corporation licensed to do and doing business in Louisiana;

 c) **BP AMERICA, INC.**, a foreign corporation licensed to do and doing business in Louisiana; and

 d) **BP, P.L.C.**, a British public limited company with its corporate headquarters in London, England, which is doing business in Louisiana through its various business divisions.

2.

Venue is proper for this action pursuant to Louisiana Code of Civil Procedural article 74 as the offenses and wrongful conduct alleged in this Petition occurred in Terrebonne Parish.

**EXHIBIT A**

## FACTUAL BACKGROUND

3.

On April 20, 2010, a well blowout on the vessel Deepwater Horizon in the Gulf of Mexico caused what would become the most devastating environmental disaster in United States history.

4.

The well blowout caused explosions on the Deepwater Horizon, igniting a raging, gas-fueled fire on the vessel. After burning for two days, the vessel sank to the ocean floor.

5.

As the Deepwater Horizon tipped into the sea, the long riser pipe connecting the vessel to the wellhead on the sea floor bent and broke, leaving the pipe leaking oil. An emergency valve, installed on the wellhead for just such a disaster, failed to seal the wellhead as it should have, causing the blown-out well to spew out into the Gulf waters.

6.

Each day during the course of the Spill, crude oil gushed from the wellhead and broken riser, rising to the surface and spreading across the Gulf of Mexico and making landfall on the beaches and ecologically sensitive marshes of the Gulf states.

7.

BP's efforts to cap the gushing wellhead continuously proved ineffective, allowing approximately 95,000 barrels of oil to be released into the Gulf of Mexico per day.

8.

Plaintiff, Pierre Mabile, a resident of Donaldsonville, Louisiana watched BP's failed attempts to cap the wellhead and worked tirelessly to create an invention to stop the oil leak at the bottom of the Gulf.

9.

On or around June 1, 2010, after working for eighteen hours a day for seven weeks, Mr. Mabile designed and manufactured a prototype that could stop the flow of oil streaming into the Gulf (the "Mabile Cap"). The Mabile Cap contains a unique "flange on top of a flange" design and

EXHIBIT A

contains valves to allow the oil to either be piped to the surface or to cement the well in.

10.

On or around June 19, 2010, Mr. Mabile met with Mayor David Carmadell and two BP engineers, Jason French and Thomas Pearce in Grand Isle, Louisiana. At that meeting, Mr. Mabile generally described the Mabile Cap's ability to successfully cap the gushing wellhead.

11.

On or around June 20, 2010, Mr. Mabile performed an actual demonstration of the structure and operation of the Mabile Cap in Houma, Louisiana for two more engineers, Al Ledet of BP and Kurt Hansen of the United States Coast Guard. After that demonstration, Hansen stated that the Mabile Cap was the best device that he has seen for capping the oil spill, and he asked Mr. Mabile to e-mail the schematic drawing of the device to Hansen's office.

12.

Per Hansen's instructions, Mr. Mabile e-mailed the Mabile Cap schematics to him on or around June 22, 2010, and receipt of the e-mail was acknowledged. Upon information and belief, Mr. Hansen was acting on behalf of BP as an engineer/technical consultant to cap the oil flow.

13.

On or around July 10, 2010, BP began installing a "flange on top of a flange" device on the Deepwater Horizon oil spill, consistent with and identical to the form and function of the Mabile Cap. And on July 13, 2010, BP installed a sealing cap assembly by bolting it down to the flange on top of a flange device. Also like the Mabile Cap, the sealing cap used by BP to plug the wellhead allowed oil to continue to flow through valves.

14.

On July 16, 2010, the wellhead was capped and oil stopped gushing into the Gulf of Mexico after BP utilized the "flange on top of a flange" and valve design consistent with and identical to the Mabile Cap.

15.

Despite using Mr. Mabile's "flange on top of a flange" and valve design to cap the wellhead

Page -3-

EXHIBIT A

within weeks of receiving the Mabile Cap schematics, BP has failed to acknowledge its use of Mr. Mabile's invention.

## MISAPPROPRIATION OF TRADE SECRET

16.

The Mabile Cap, with its unique flange on top of a flange and valve design provided a solution to the source of the greatest environmental disaster in U.S. history.

17.

As evidenced by BP's continuous failures to cap the gushing wellhead for approximately four months, the Mabile Cap's unique, successful design was not generally known to BP or readily ascertained by proper means.

18.

BP and/or its agents induced Mr. Mabile to submit the Mabile Cap schematics to BP by misrepresenting that Mr. Mabile would receive acknowledgment and/or economic benefit if the Mabile Cap design was used to successfully cap the wellhead.

19.

BP used the Mabile Cap design to cap the gushing wellhead knowing or having reason to know that Mr. Mabile submitted his design to its engineers.

20.

Despite Mr. Mabile's supplying BP with the solution to prevent the greatest ecological disaster from becoming even worse, BP has denied Mr. Mabile compensation and recognition for the use of his invention.

21.

Further, BP also has been unjustly enriched by the misappropriation of Mr. Mabile's invention as BP's use of the Mabile Cap forestalled the continued environmental disaster for which BP has been paying clean-up, mitigation expenses, and property damages.

EXHIBIT A

## CONVERSION

22.

Before providing the schematics to BP, Mr. Mabile had sole possession of his intellectual property and schematics for his Mabile Cap invention.

23.

BP and/or its agents induced Mr. Mabile to submit the Mabile Cap schematics to BP by misrepresenting that Mr. Mabile would receive acknowledgment and/or economic benefit if the Mabile Cap design was used to successfully cap the wellhead.

24.

Without Mr. Mabile's consent, BP intentionally and willfully exercised authority over Mr. Mabile's intellectual property and the Mabile Cap schematics in its effort to stem the flow of oil into the Gulf. BP has refused to acknowledge that Mr. Mabile's invention was used to plug the deep water well.

25.

BP continues to exercise dominion over the Mabile Cap design contrary to Mr. Mabile's rights as owner of his invention.

26.

Accordingly, Mr. Mabile has lost control over his unique and important invention, causing past, present, and future economic damages, mental anguish, and emotional distress.

**WHEREFORE**, Pierre Mabile respectfully prays that, after due proceedings are had, that Judgment be entered in his favor and against BP for the entire amount of Mr. Mabile's damages, together with pre-judgment interest from date of judicial demand, post-judgment interest, as well as attorneys' fees and any other equitable and general relief the nature of this case allows.

**EXHIBIT A**

Respectfully submitted,

*Sharonda* /s/
_____
JAMES M. GARNER #19589
SHARONDA R. WILLIAMS #28809
PAUL R. TRAPANI, III #32735
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100

and

LARRY N. GUY # 25693
2321 Drusila Lane, Suite C
Baton Rouge, Louisiana 70809

ATTORNEYS FOR PIERRE MABILE

<u>Sheriff, Please Serve:</u>

**BP AMERICA PRODUCTION COMPANY** through
C T Corporation System
5615 Corporate Blvd, Ste. 400B
Baton Rouge, LA 70808

**BP EXPLORATION & PRODUCTION, INC.** through
C T Corporation System
5615 Corporate Blvd, Ste. 400B
Baton Rouge, LA 70808

**BP AMERICA, INC.** through
C T Corporation System
5615 Corporate Blvd, Ste. 400B
Baton Rouge, LA 70808

<u>Please return citation and certified copy of petition
to counsel for plaintiff for service on the following
pursuant to the Louisiana Long Arm Statute:</u>

BP, P.L.C.
28100 Torch Parkway
Warrenville, IL 60555

**EXHIBIT A**