UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | 10 - MD - 2179 |
| | Section J |
| | HONORABLE CARL. BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |
| Bon Secour Fisheries, Inc., et al., on behalf of themselves and all others similarly situated, | Civil Action No. 12-970 |
| Plaintiffs, | Section J |
| | HONORABLE CARL J. BARBIER |
| v. | |
| BP Exploration & Production, Inc.; BP America Production Company; BP P.L.C., | MAGISTRATE JUDGE SHUSHAN |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION OF CLAIMANT ID #100228454/CLAIM ID # 230425 FOR SUMMARY ENFORCEMENT OF ELIGIBILITY AWARD AND SETTLEMENT AGREEMENT,OR, IN THE ALTERNATIVE, TO REVOKE INVALID OPT-OUT**

Claimant ID #100228454 for Claim ID # 230425 brings its motion to enforce the Eligibility Award (Doc ID #16098194) and Release and Settlement Agreement (Doc ID # 16268570) entered in its favor in the Deepwater Horizon Settlements Claims process or, in the alternative, pursuant to section 8.2.5 of Deepwater Horizon Economic and

Property Damages Settlement Agreement, to reinstate the company as a Class Member, and revoke the Opt-Out for good cause shown, as set out more fully below. "Claim ID # 230425" or "Claimant #100228454," is the number assigned to a real and actual incorporated business located within the Gulf Coast Area by the Deepwater Horizon Settlement Claims Center ("DWHCC") and which was utilized as the correct identifier by the DWHCC for more than 20 months as it handled, process, analyzed and calculated the Business Economic Loss (BEL) Claim. The assigned Claimant ID and Claim ID Numbers, along with the immense effort and work poured into the review of the claim constitutes overwhelming recognition by all Parties of Claimant's membership in the Class, and the equitable and legal principles discussed below compel Claimant's full participation as a Class Member. Due to the recent court rulings indicating confidentiality surrounding Discretionary Review Motions, the Claimant's undersigned attorney is using Claimant ID, Claim ID, and Document ID numbers within the Deepwater Horizon Claims system to avoid any impropriety in confidentiality.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Claimant #100228454 is a corporate entity that engages in a unique medical practice that caters to "Snow Bird" Canadian visitors to the Central Florida Gulf Coast. Prior to retaining current counsel, Jack Light Townsend, Claimant #100228454 was represented by previous counsel, who represented the claimant for its business claim and the claimant's president for an individual claim. The claimant's Business Economic Loss Claim was filed by its current counsel, Jack Light Townsend, on August 19, 2013.[1] (Doc. ID #11872195) As evidenced by the Incompleteness Notice (Doc. ID #12262741),

---

[1] Throughout this memorandum, supporting documents will be referred to by the Document ID Numbers assigned by the DWHCC.

the DWHCC thereafter began processing the claim. Shortly after receiving the Incompleteness Notice, counsel for Claimant filed a response to this Notice. (Doc. ID # 12580501) Beginning on April 1, 2014, and continuing thereafter through August 2014, the assigned DWHCC analyst contacted counsel for Claimant on a monthly basis requesting additional information in order to evaluate and calculate the claims. In response to these requests, Claimant's accountant and attorney conducted research and reviewed documents and other financial information to comply with the analyst's requests. The following documents related to the claim provide additional evidence of these regular communications between counsel and the analyst which continued regularly through January 2015: Doc. ID #14304939, #14495896, #14690731, #1503204.

    At no time during this process did the DWHCC analyst or any member of the Settlement Program or BP assert that Claimant had submitted an Opt-Out Request. In fact, the portal continuously reflected, throughout the pendency of the claim, that the claimant had not opted out, as indicated in the many reports found on the portal. On February 23, 2015, the Settlement Program issued an Eligibility Notice. (Doc. ID # 16098194) BP did not appeal the Eligibility Notice within the time limits provided in the Eligibility Notice nor did BP object to payment of claimant #100228454 or claim #230425 on any grounds, including that it had opted out. After the deadline passed for BP to appeal the claim, the claimant, signed and returned the Release and Settlement Agreement (Doc ID #16268570), which included the Eligibility Award settlement papers and submitted them to the DWHCC. On or about March 23, 2015 the DWHCC accepted the Claim Payment Documentation.

On May 26, 2015 the DWHCC issued a Notice of Closed Claim: Opt-Out Claimants. (Doc ID # 16820506) This was the claimant's first indication that the DWHCC believed that Claimant had opted out of the claims process. On June 2, 2015, Claimant promptly submitted an Opt-Out Revocation request (Doc ID #16936187) along with a new Business Economic Loss Claim, (Doc ID #16936335). Twenty days later DWHCC notified Claimant that BP would not consent to a "Late Opt Out Revocation." Claimant received the notice on June 29, 2015, and shortly thereafter appealed that determination on the same grounds alleged herein.  This appeal request to the appeal panel was denied by the Appeals Coordinator's office and a request for discretionary review of the appropriateness of the opt-out decisions and lack of appellate review was also denied by the Appeals Coordinator office.

## THE OPT-OUT FORM AT ISSUE

The determination by DWHCC staff that Claimant #100228454 had opted out of the settlement process took the claimant by surprise. Claimant's counsel, Jack Light Townsend, thereafter learned that Claimant #100228454's prior counsel represented both the corporate interests of Claimant #100228454 as well as the individual interests of the business entity's president. On or about October 24, 2012, an Opt-Out form was executed by the claimant's president in his individual capacity only. Thereafter, prior counsel mailed this document to the Exclusion department. Prior counsel then withdrew from representation in January 2013. In June 2013 Claimant #100228454 retained the Law Office of Jack L. Townsend, Sr. P.A., to pursue a BEL claim for Claimant ID #100228454 because the Claimant rightly thought the corporation still had a viable BEL claim in the DWHCC.

**GOOD CAUSE EXISTS TO REINSTATE CLAIMANT #100228454 AS A CLASS MEMBER, AND REVOKE THE OPT-OUT AT ISSUE**

<u>1. The Opt-Out was Invalid as to the Corporation, Claimant #100228454</u>

Section 8.2.1 of the Settlement Agreement contains the following specific requirements in order for a Claimant's Opt-Out to be effective:

> Economic Class Members must submit a written request to Opt Out, which must be received by the Entity identified in the Class Notice Plan for that purpose, properly addressed, and postmarked no later than October 1, 2012, or such later date as the Court orders in the Preliminary Approval Order. A written request to Opt Out may not be signed by any form of electronic signature, but must be signed by a handwritten signature.

The signature affixed to the Opt-Out form at issue is an individual's signature. Neither the form nor the signature reflects any designation of authority on behalf of the corporation that is claimant #100228454. In fact, the signature does not contain the individual's designation as an M.D. Even the wording following the "To Whom It May Concern" language in the letter speaks of the individual wherein its states: "*I* hereby wish…" (emphasis added).

The rigors imposed in other contexts within the claims process in order to bind corporate interests demonstrate that the Opt-Out form at issue here is insufficient to have opted Claimant #100228454 out of the settlement process. For example, IRS Forms 4506 and 4506-T require the explicit designation that the signing party is an authorized officer of the corporation in order to obtain tax returns or tax return transcripts for a corporation. In fact, the DWHCC rejected documents in Claimant's Eligibility Settlement package on the grounds that the signatures on the documents were unacceptable, and required re-submission of documents bearing correct signatures before accepting the documents (Doc ID #16232577). The same level of

detail and specificity should apply in order for Opt-Out forms to bind corporate interests. Indeed, Section 8.2.4 of the Settlement Agreement contemplates the possibility that Opt-Out forms may be insufficiently executed, and provides that claimants that do not "properly" opt out are bound by all terms of the Settlement Agreement and are entitled to make a claim, which is precisely what occurred here.

2. <u>Even Valid Opt-Outs May Be Revoked for Good Cause Shown after December 15, 2015.</u>

Section 8.2.5 of the Settlement Agreement authorizes the Court to order revocation of an Opt-Out for good cause shown:

> Any Economic Class Member may revoke his, her or its Opt-Out from the Economic Class and thereby receive the benefit of this Economic and \Property Damage Settlement up until three (3) days prior to the Fairness Hearing; or later, if the BP Parties consent in their sole and unilateral discretion as provided in Section 8.2.6 below; or **otherwise, if the Court so orders on good cause shown.** (emphasis supplied)

The claimant's situation here is not unique and the courts have established criteria for determining when it is appropriate to allow a class member to return to the class from which he or she has opted out. *See, e.g., In re Electrical Carbon Products Antitrust Litigation*, 447 F. Supp. 2d 389 (U.S. Dist. Ct. N.J. 2006). The criteria used by the *In re Electrical Carbon* court were as follows:

(1)   that no special benefit is conferred upon the rejoining class member at the expense of the other class members,

(2)   that the resulting settlements are in the best interests of those class members,

(3)   that no special advantage is conferred upon the rejoining class members through the procedural development of opting out and then opting back in.

Id. at 396-397 (citing *Klein v. Robert's Am. Gourmet Food, Inc.,* 28 A.D. 3d 63, 808 N.Y.S. 2d 766, 771-772 (N.Y. App. Div. 2006) (even if opt-out notice had been valid, party's subsequent request to opt back in to a settlement class should have been honored in the absence of any prejudice to defendants or the remaining settlement class member).

Applying these principals to Claimant #100228454, good cause exists to reinstate the claim. Other Class Member's claims will be paid according to the terms of the Agreement whether or not Claimant's claim is included. No advantage has been gained by Claimant if it is not considered to have opted out, nor was the claimant attempting to create an advantage. Nor was one created by implication. Rather, the claimant filed a claim and accepted the standards for limiting its claim to the year 2010 through the compensation model. Moreover, Claimant did not object to the settlement and has not presented or pursued an Oil Pollution Act Claim. No double recovery is possible, and, therefore, BP will not be prejudiced in any way upon Claimant's reinstatement.

But for the disputed opt-out form, all of the factors necessary for Claimant #100228454 to participate in the Economic Class are present, and were present throughout the entire relevant time period.  To the extent the Opt-Out form is considered valid, Claimant #100228454  was excluded from the class through no fault of its own, and the failure to revoke the Opt-Out prior to the December 15, 2012 was excusable neglect and a mistake. Claimant had provided the financial documents, including the company's monthly profit and loss statements that established the company's eligibility for the Settlement Award entered in its favor prior to the time period in which any Opt-

Out could have been revoked. Claimant #100228454 was not aware that Opt-Outs could have been unilaterally revoked through December 15, 2015. Since that time Claimant #100228454 has dutifully pursued every avenue to pursue its claim as a Class Member and has exhausted every other avenue to obtain revocation of the Opt Out at issue and reinstate itself as a Class Member.  As the delay in seeking revocation was caused by no fault of Claimant, reinstatement of the claim is a proper exercise of this Court's equitable powers. *See In re Elec. Carbon Products Antitrust Litigation,* 622 F. Supp. 2d 144 (U.S. Dist Ct. N.J  2007).

## WAIVER AND ESTOPPEL

The doctrines of waiver and estoppel also weigh in favor of  revoking the Opt-Out Form. *Id.* at 157 (In evaluating prejudice to the claimant the court looked to the costs incurred by late claimants due to encouragement from the claims administrator to document their claims).  DWHCC had possession of the disputed Op-Out form well before the claim was filed.  DWHCC staff nevertheless engaged counsel and experts for the claimant in a sustained dialogue as part of an active claims process for more than a year. As a result, Claimant #100228454, through no fault of its own, expended large sums of time and money to complete and fulfill each request made by the DWHCC review staff. Claimant relied to its detriment on the actions of the DWHCC staff and worked tirelessly to respond to DWHCC inquiries and requests for additional information. Even at the last moments of the claims process, prior to a finding of eligibility, DWCC ran a Quality Assurance test and found the claim eligible.

Finally, there was no objection by BP raised to Claimant's eligibility or award or its status as a Class Member at any time.   Claimant #100228454 relied on BP's acquiescence to its participation in the claims process to its detriment.

### THE SETTLEMENT AND RELEASE (DOC ID # 16268570) IS A LEGALLY BINDING CONTRACT AND CLAIMANT REQUESTS THAT THE PAYMENT PROVISIONS BE ENFORCED

Claimant ID # 100228454 completed the rigors of the DWHCC claims process and had its claim found to Eligible for an award.  The Eligibility Notice in this matter, as in all claims, has attached to it a full and final release, settlement and covenant not to sue. At the time it was received by the claimant more than twenty months had passed during which the DWHCC had affirmatively reported "NONE" in its reports about an opt-out for this claimant. In particular Report 8387 at column P "Opt-out or Release Exclusion" always had "NONE" as the designation until approximately two months after the release was issued and then signed by the Claimant and accepted by the DWHCC program.

A review of the release and its definitions shows that a contract was created between the Claimant, the released parties and the DWHCC settlement program and trust.  It is a "well-settled rule that the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally."*Educ. Ass'n, Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973).  Here, all the elements of a contract are present and when reviewed, the contract should be interpreted to give the Claimant its award which is now being withheld by the DWHCC and its administrator and /or BP and the other released parties.

The facts of the instant matter remarkably parallel those of *Young v. BP Exploration & Production., Inc, et al*. No. 14-30269 (5th Cir. May 13, 2015).

In *Young*, the claimant received a determination letter which outlined the provisions of the settlement and which contemplated signing a release of all claims at a future date. After receipt of the the claimants acceptance of the Final Payment Election Form, but before sending the claimant a release to be signed, BP contested the settlement. BP alleged that the claims were exaggerated, if not fabricated, and therefore invalid, and that no agreement had been reached to settle the claim because the release had yet to be executed. The district court entered an order enforcing the settlement, which BP appealed. The Fifth Circuit rule against BP and affirmed the lower court's actions. *Id.* at 8 - 15.

The facts of the instant matter are much more compelling. Not only did the claimant receive its Eligibility Notice (analogous to the Determination Letter in *Young),* but the claimant also executed and submitted the Release and Settlement Agreement (Doc ID #16268570) before the DWHCC decided to deny the claim based on a dubious opt-out form.

In the instant matter there is no need for an in-depth analysis of whether a binding settlement agreement has been reached by the parties. There is no question that an offer and acceptance occurred. Not only did the DWHCC issue an Eligibility Notice to the claimant, but the claimant signed are returned a Settlement Agreement (Doc. ID #1628570). *See Young at 14 - 16.*

## CONCLUSION

In light of the legal insufficiency of the disputed Opt-Out form, the inherent strength of Claimant #100228454's claim as a Class Member, the mistake and excusable neglect in failing to revoke the Opt-Out prior to December 15, 2012 to the extent it was valid, Claimant's lack of knowledge of the Opt-Out determination made against it, DWHCC's delay in communicating its determination that an Opt-Out had occurred, the detriment caused to Claimant by being encouraged to engage in the claims process for more than a year and one-half and the lack of any prejudice to BP resulting from reinstatement of the claims, the equitable and legal principles set out above weigh in favor of granting Claimant #100228454 request for reinstatement and revocation of the disputed Opt-Out.

Additionally, in light of the present situation where the claimant has signed all of the settlement and release documentation and those documents were accepted by the program administration a contract exist. The contract requires payment of the settlement funds.

WHEREFORE, Claimant #100228454 respectfully requests that an order be entered enforcing the settlement agreement reached herein, or, in the alternative granting its request to revoke the disputed Opt-Out, reinstating it as a Class Member and ordering immediate payment of the Eligibility Award.

Respectfully Submitted,

s/ Edward A. Doskey
Edward A. Doskey
FL Bar No.: 127360
Attorney for Plaintiff

DOSKEY LAW, P.L.C.
807 Howard Ave.
New Orleans, LA  70113-1107
Telephone: (504) 684-4473
Fax: (504) 324-2398
E-mail: ed@doskeylaw.com

## CERTIFICATE OF SERVICE

I certify that on October 30, 2015 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.