# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:   Oil Spill by the Oil Rig "Deepwater Horizon in the Gulf of Mexico," on April 20, 2010 | : : : : | MDL No. 2179 <br><br> Section J |
| This Document Relates To: 2:10-cv-01768 & 2:10-cv-02454 | : : : | District Judge Barbier <br> Magistrate Judge Shushan |

## BP EXPLORATION AND PRODUCTION INC.'S, BP AMERICA INC.'S, AND TRANSOCEAN'S JOINT OPPOSITION TO CENTER FOR BIOLOGICAL DIVERSITY'S MOTION FOR RECONSIDERATION OF THE SEPTEMBER 14, 2015 ORDER RESOLVING CROSS-MOTIONS FOR SUMMARY JUDGMENT

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654

Joel M. Gross
ARNOLD & PORTER LLP
601 Massachusetts Avenue, N.W.
Washington, DC  20001

Don K. Haycraft (Bar #14361)
Robert Holden (Bar # 06935)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139

Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

***ATTORNEYS FOR BP EXPLORATION AND PRODUCTION INC. & BP AMERICA INC***

Brad D. Brian
Daniel B. Levin
MUNGER, TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071

Steven L. Roberts
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002

Kerry J. Miller
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170

***ATTORNEYS FOR TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., TRANSOCEAN DEEPWATER INC., TRANSOCEAN HOLDINGS LLC, AND TRITON ASSET LEASING GmbH.***

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD.......................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.      CBD's Rule 59 Motion Is Procedurally Flawed. ................................................... 3

II.     CBD's Belated Arguments Are, In Any Event, Meritless. .................................... 7

III.    Even If the RCRA Exemption Did Not Apply, CBD Has Not Proffered, or Even Alleged, a *Prima Facie* Case That an EPCRA Report Is Needed as to Spacer or Mud. ...................................................................................................................... 14

IV.    The Judgment Must Also Be Allowed to Stand for a Host of Other Reasons, Previously Briefed, Independent of the RCRA Exemption. ............................... 17

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Mining Congress v. EPA*,
   824 F.2d 1177 (D.C. Cir. 1987) ............................................................... 16

*Auer v. Robbins*,
   519 U.S. 452 (1997) .............................................................................. 8, 14

*Bowles v. Seminole Rock & Sand Co.*,
   325 U.S. 410 (1945) ............................................................................ 12, 13

*Brod v. Omya, Inc.*,
   653 F.3d 156 (2d Cir. 2011) ...................................................................... 18

*Broyles v. Texas*,
   643 F. Supp. 2d 894 (S.D. Tex. 2009) ......................................................... 5

*Christopher v. SmithKline Beecham Corp.*,
   132 S. Ct. 2156 (2012) .............................................................................. 12

*Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.*,
   989 F.2d 1305 (2d Cir. 1993) .................................................................... 16

*Cordiano v. Metacon Gun Club, Inc.*,
   575 F.3d 199 (2d Cir. 2009) ...................................................................... 16

*Decker v. Northwest Envt'l Defense Ctr.*,
   133 S. Ct. 1326 (2013) .......................................................................... 12, 13

*Dow Agrosciences v. NMFS*,
   707 F.3d 462 (4th Cir. 2013) ..................................................................... 13

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) ............................................................................... 1, 4

*FDIC v. Cage*,
   810 F. Supp. 745 (S.D. Miss. 1993) ............................................................. 6

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
   629 F.3d 387 (4th Cir. 2011) ..................................................................... 17

*Gonzales v. Oregon*,
   546 U.S. 243 (2006) ........................................................................................ 13

*Great Pines Water Co. v. Liqui-Box Corp.*,
   962 F. Supp. 990 (S.D. Tex. 1997) ................................................................... 7

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
   484 U.S. 49 (1987) ......................................................................................... 19

*Hallstrom v. Tillamook Cnty.*,
   493 U.S. 20 (1989) ......................................................................................... 17

*In re Deepwater Horizon*,
   21 F. Supp. 3d 657 (E.D. La. 2014) ................................................................ 11

*In re Deepwater Horizon*,
   MDL No. 2179, 2012 WL 85447
   (E.D. La. Jan. 11, 2012) ................................................................................. 14

*Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*,
   298 F.3d 600 (7th Cir. 2002) ............................................................................ 9

*Mohammadi v. Islamic Republic of Iran*,
   947 F. Supp. 2d 48, 77 (D.D.C. 2013), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015) ............... 4

*Nationalist Movement v. Town of Jena*,
   321 F. App'x 359 (5th Cir. 2009) ..................................................................... 4

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ......................................................................... 2, 6

*Save Our Wetlands, Inc. v. Army Corps of Eng'rs*,
   549 F.2d 1021 (5th Cir. 1977) ........................................................................ 19

*Schiller v. Physicians Resource Group Inc.*,
   342 F.3d 563 (5th Cir. 2003) ............................................................................ 6

*Simon v. United States*,
   891 F.2d 1154 (5th Cir. 1990) .......................................................................... 2

*Templet v. HydroChem Inc.*,
   367 F.3d 473 (5th Cir. 2004) ...................................................................... 2, 4, 6

*Waltman v. Int'l Paper Co.*,
   875 F.2d 468 (5th Cir. 1989) ............................................................................ 4

*Woodrum v. Thomas Mem'l Hosp. Found., Inc.*,
   186 F.R.D. 350 (S.D. W. Va. 1999) ............................................................. 6

**Statutes**

42 U.S.C. § 11001(b) ............................................................................... 18

42 U.S.C. § 11046(d) ............................................................................... 17

42 U.S.C. § 6921(b)(2)(A) ............................................................... 8, 11, 13

**Rules**

30 C.F.R. § 250.401 ................................................................................. 11

30 C.F.R. § 250.401(e) ............................................................................. 12

40 C.F.R. § 261.2 ..................................................................................... 16

40 C.F.R. § 261.3 ..................................................................................... 16

40 C.F.R. § 261.4(b)(5) ..................................................................... 7, 8, 12

40 C.F.R. § 302.4 ..................................................................................... 15

40 C.F.R. § 355.33 ................................................................................... 15

40 C.F.R. §§ 261.21-.24 ........................................................................... 16

40 C.F.R. Part 261 Subpart D ................................................................... 16

**Other Authorities**

11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2810.1 (2d ed. 1995) ......... 1, 2

*Clarification of the Regulatory Determination for Wastes*
   *from the Exploration, Development and Production*
   *of Crude Oil, Natural Gas and Geothermal Energy*,
   58 Fed. Reg. 15,284 (March 22, 1993) .................................................. 5, 10

EPA RCRA Orientation Manual III-4, III-16, III-21 through III-22 (2014), *available at*
   http://www2.epa.gov/hwgenerators/resource-conservation-and-recovery-act-
   rcra-orientation-manual (last visited Nov. 10, 2015) .................................. 16

*How Do Drilling Fluids Work? available at* http://www.rigzone.com/training/insight.
  asp?insight_id=291
  (last visited Nov. 10, 2015)...........................................................................................9

*Regulatory Determination for Oil and Gas and Geothermal*
  *Exploration, Development and Production Wastes*
  53 Fed. Reg. 25,446 (July 6, 1988)............................................................... 8, 11, 13

Shale Gas 101, *available at* http://energy.gov/fe/shale-gas-101
  (last visited Nov. 10, 2015)...........................................................................................9

**INTRODUCTION**

The Center for Biological Diversity ("CBD" or "the Center") refuses to take no for an answer.  Four years ago, this Court dismissed CBD's "citizen suit" claims because the information it purports to seek was publicly available, even then.  Next, on appeal, the Fifth Circuit also recognized that no court can enjoin a spill that has been over since 2010, upholding the dismissal of all but one of CBD's many claims; and later on remand, this Court applied the plain text of the "petroleum exclusion" to finally reject the Center's lone remaining claim under the Emergency Planning and Community Right-to-Know Act ("EPCRA").  At every step of this litigation, CBD's efforts to interject itself into the spill response have been rebuffed for a cross-cutting reason: federal law empowers the United States, not CBD, to respond to oil spills.  There is no place for a "citizen suit" when the United States already has things well in hand.

Despite all of this, CBD seeks reconsideration of this Court's latest rejection of CBD's EPCRA claim.  This effort is misplaced.  For one thing, CBD's motion is procedurally flawed.  It is hornbook law that Rule 59(e) "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2810.1 (2d ed. 1995)).  Yet here, there is not one argument, authority, or even assertion in CBD's entire Rule 59(e) motion that could not have been included in the summary judgment briefing.  Even if CBD's motion was proper, however, its belated legal arguments are meritless.  Nothing in the long-extant EPA materials CBD cites casts any doubt on the Court's entirely correct conclusion that EPCRA does not apply to spacer and drilling mud.  And the Center's decision to attach an email from an off-duty EPA line attorney is head-scratching.  Not only does the email not say what CBD says it says, even if it did, it would be irrelevant.

1

The flaws in CBD's argument, however, run deeper. Even if, contrary to law and fact, CBD's bid for reconsideration were both timely and meritorious, this Court *still* should reject CBD's Rule 59(e) motion.  For reasons BP and Transocean have previously submitted, CBD cannot pursue a claim regarding spacer or drilling mud because **(1)** neither of those materials was included in the Center's pre-suit mandatory notice; **(2)** EPCRA does not apply to discharges on the Outer Continental Shelf; **(3)** any EPCRA claim is moot and CBD lacks Article III standing to pursue such a claim because whatever information CBD purports to seek is already publicly available; and, **(4)** in any event, CBD is not entitled to equitable relief because it has not pursued its claim with diligence.  Indeed, CBD has never even attempted to make a *prima facie* showing that the drilling mud and spacer it now focuses on could lead to a violation of EPCRA.  In short, by any measure, CBD's thirteenth-hour motion is a non-starter.

## LEGAL STANDARD

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).  Indeed, "[i]n practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied." WRIGHT MILLER, § 2810.1.

Because reconsideration is an extraordinary remedy, a "motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).  Moreover, in adjudicating a Rule 59(e) motion, a district court must be mindful of "the need to bring litigation to an end." *Templet*, 367 F.3d at 479.

## ARGUMENT

CBD's motion faces four insurmountable hurdles.  **First**, at the outset, CBD's motion is procedurally improper.  Both the Supreme Court and the Fifth Circuit have declared that a Rule 59(e) motion cannot advance new arguments that could have been made before entry of judgment.  Here, every single argument in CBD's motion could have been made in its original briefing.  **Second**, even if the Center's motion were procedurally sound, its arguments are substantively flawed.  None of the materials CBD belatedly cites even begins to undermine this Court's analysis.  **Third**, CBD has never attempted to mount a *prima facie* case to show an EPCRA violation in connection with drilling mud and spacer here and indeed has disclaimed any such intent repeatedly (including even in its most recent brief).  **Fourth**, and in any event, the Court's judgment should be upheld on a host of independent grounds described in BP's initial briefing that CBD's Rule 59(e) motion does not even try to take on.  The upshot is that even if CBD's motion were proper (it is not), and even if CBD's arguments had merit (they do not), the Court should still deny the Center's motion.

## I.       CBD's Rule 59 Motion Is Procedurally Flawed.

For all the reasons explained below, CBD's arguments fail on the merits.  This Court, however, need not even consider those arguments.  Instead, the most straightforward reason why this reconsideration motion should be denied is that CBD has ignored binding precedent about the proper procedures for a Rule 59(e) motion.  Time and again, courts have declared that a party cannot use Rule 59(e) to advance new arguments.  CBD's motion falls under that rule.  Indeed, the Court should not only reject the motion but declare the new arguments waived and strike the new materials CBD seeks to introduce into the record.  The motion is so defective that it may

simply be an attempt to try to shore up CBD's record for a future appeal, which the Court should foreclose as barred by waiver doctrine.

The Supreme Court has explained that a motion to amend a judgment under Rule 59(e) "may not be used to relitigate old matters, *or to raise arguments or present evidence that could have been raised prior to the entry of judgment*." *Exxon*, 554 U.S. at 485 n.5 (quotation omitted). The Fifth Circuit has announced the same rule: a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, *or arguments that could have been offered or raised before the entry of judgment*." *Templet*, 367 F.3d at 479; *see also Nationalist Movement v. Town of Jena*, 321 F. App'x 359, 364 (5th Cir. 2009) ("Motions for reconsideration should not be used to raise arguments that could have been made before the entry of judgment or to re-urge matters that have already been advanced.") (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473-74 (5th Cir. 1989)). The principle is simple: Because Rule 59(e) is an extraordinary remedy, it cannot be used to patch over weak pre-judgment briefing. *See, e.g.*, *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 77 (D.D.C. 2013) ("A Rule 59(e) motion is not a chance for a party to correct poor strategic choices, nor are such motions to be used by litigants to cry over spilled milk.") (quotations and alterations omitted), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015).

Here, CBD's motion for reconsideration does not even purport to present previously unavailable evidence, nor does CBD offer an intervening change in controlling law. Instead, the Center accuses the Court of committing "manifest errors of law or fact." CBD Memo. at 1-2, 3, 6. But there is not one argument in the Center's entire battery of motion claims that could not have been raised as part of the summary judgment briefing. The primary "new" authorities CBD cites are both well over a decade old. *See* CBD Memo. at 5-6 (citing its Appendix A, *Clarification of the Regulatory Determination for Wastes from the Exploration, Development*

*and Production of Crude Oil, Natural Gas and Geothermal Energy*, 58 Fed. Reg. 15,284 (***March 22, 1993***); CBD's Appendix B, EPA Publication EPA530-K-01-004, "Exemption of Oil and Gas Exploration and Production Wastes from Federal Hazardous Waste Regulations," 18-20, ***October 2002***).  The only other "new" material is an email from an EPA employee.  *See* CBD Memo. at 7 n.3; Ex A, Declaration of Charles M. Tebbutt.  Not only is this attached email irrelevant and inadmissible, there is also no reason why CBD could not have sought to introduce into the record an email from EPA long before now.

Given all of this, CBD's motion is a patent abuse of Rule 59.  All CBD has done is cite new materials it could have included in (or generated for) its summary judgment briefing but failed to attach or even reference.  That is not how Rule 59 works.  *See, e.g.*, *Broyles v. Texas*, 643 F. Supp. 2d 894, 899 (S.D. Tex. 2009) ("A Rule 59(e) motion is not an appropriate vehicle for raising arguments that could have been raised before the court decides a claim.").  Indeed, even CBD realizes its motion is hopeless.  *See* CBD Memo. at 6 n.2 (admitting that "the cited references could be considered 'new evidence' that should not be submitted after summary judgment briefing has concluded").  That admission should have been a red flag that this motion should never have been filed at all.

CBD's justifications for filing the motion, despite its acknowledged impropriety, are baseless.  First, CBD tries to excuse its own poor judgment by blaming the Court.  According to the Center, it is proper for it to cite new authority now, it says, because the Court should have ruled against BP even without that authority:  "However, the Center respectfully submits that it reasonably believed the language of the exemption clear enough on its face, such that no secondary sources were required to support the Center's position."  CBD Memo. at 6 n.2.  Unsurprisingly, CBD cites no precedent for that proposition.  It is bizarre to think that a party's

reconsideration motion can include what it admits are "new" materials that could have been submitted before judgment merely because it initially imagined it was unnecessary to do so because it assumed victory.  Needless to say, this is not the law.  *See Templet*, 367 F.3d at 479 ("[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration."); *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 568 (5th Cir. 2003) (reconsideration not merited when the movant "failed to offer a reasonable explanation" for its tardiness).  At bottom, CBD's wish that it had better supported its claim before judgment is no excuse for launching a Rule 59(e) motion after judgment.

Nor do CBD's efforts to posture its motion as attacking "a manifest error of law and fact in the Court's decision" fare any better. CBD Memo. at 6 n.2.  As explained above, the "manifest error of law or fact" standard does not apply to new arguments.  *See*, *e.g.*, *Rosenzweig*, 332 F.3d at 863-64 ("[A] motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' ***and*** 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'").  In any event, there is no error in the Court's decision — "manifest" or otherwise. Just because CBD disagrees with the Court's analysis does not mean the Court committed "manifest error."  *See*, *e.g.*, *FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) ("While Defendants contend that the Court misinterpreted Mississippi law concerning negotiable instruments, Defendants' motion merely expresses disagreement with the findings of the Court"); *Woodrum v. Thomas Mem'l Hosp. Found., Inc.*, 186 F.R.D. 350, 352 (S.D. W. Va. 1999) (even if plaintiff's argument had merit, it still "should have been raised in response to Defendant's motion for summary judgment."); *Great Pines Water Co. v. Liqui-Box Corp.*, 962 F. Supp. 990,

6

991 (S.D. Tex. 1997) (denying reconsideration even though merits were "very unsettled").  The law here is clear — the Court should not excuse CBD's failure to raise its arguments before judgment.

## II.        CBD'S Belated Arguments Are, In Any Event, Meritless.

Even if it were proper for CBD to introduce new arguments and authorities at this late date, the Center's EPCRA claim would still be meritless.  CBD admits, as it must, that "[d]rilling fluids, produced waters, and other wastes associated with the exploration, development or production of crude oil, natural gas or geothermal energy" are not "hazardous substances."  40 C.F.R. § 261.4(b)(5).  Nor does CBD dispute that BP used spacer and drilling mud solely in connection with activities on the *Deepwater Horizon*, an offshore oil rig.  Nonetheless, CBD still argues that BP was obligated to file an EPCRA report regarding that very spacer and drilling mud.  The Court was right to reject this argument.  *See* Order, Rec. Doc. 15352, at 17 (Sept. 14, 2015) (concluding spacer and drilling mud at issue need not be reported because EPCRA "only requires the wastes to be 'associated' with the exploration, development, or production of crude oil, natural gas, or geothermal energy, which they plainly were").

Nothing in CBD's motion for reconsideration calls into question the Court's straightforward analysis.  Rehashing its summary judgment briefing, for instance, CBD asserts that "it is undisputed that BP dumped the unused and unneeded spacer into the well in order to get rid of it without complying with the hazardous waste disposal requirements of the Resource Conservation and Recovery Act."  CBD Memo. at 3.  Not true.  To this day, CBD has offered no evidence of this alleged ill intent. What is cited by CBD merely shows that "pills" of a particular size were used because such pills were readily at hand.  *See* Rec. Doc. 1819-3, Ex. M (Attached

to Ex. 3 to CBD UMF) at 21.[1]  In any event, even if that claim were factually accurate, it would not negate the plain text of the regulation: materials used by those on an oil rig as part of oil extraction missions, by definition, are "associated" with "the exploration, development or production of crude oil." 40 C.F.R. § 261.4(b)(5).[2]

Nevertheless, CBD fights the text of the regulatory exemption.  To do so, it relies on two EPA documents, both of which are over a decade old, and neither of which say anything legally relevant and controlling.  Most importantly, neither document changes or possibly could change the meaning of the phrase "associated with," especially not on the facts at issue in this case.

CBD argues that for spacer and drilling muds to fall within the regulatory exemption in Section 261.4(b)(5), the materials must be "intrinsic to" or "uniquely associated with" oil and gas exploration, development or production.  CBD Mot. at 2.  The drilling mud and spacer at issue

---

[1]     Other EPA guidance provides a further reason to reject CBD's arguments against application of the regulatory exemption.  EPA's *Regulatory Determination for Oil and Gas and Geothermal Exploration, Development and Production Wastes* specifically indicates that even "[d]rilling fluids and cuttings from offshore operations disposed of onshore" are exempt pursuant to RCRA's exemption.  53 Fed. Reg. 25,446, 25,453 (July 6, 1988) (citing 42 U.S.C. § 6921(b)(2)(A)).  CBD's theory thus makes no sense because whether BP used the drilling fluids onsite or brought them back to shore, the substances would remain exempt.  Additionally, this *Federal Register* notice shows that EPA knew how to express a view in a guidance document that particular unused substances were excluded from the regulatory exemption when it wanted to.  And the only category of unused fluids that EPA stated should (in its view) be excluded from the exemption are "[u]nused fracturing fluids or acids."  *Id.* at 25,454.  But unused drilling fluids are not the same thing as unused fracking fluids.

Finally, CBD cites to a 2002 EPA document that was not published in the *Federal Register*, yet purports to suggest that all unused substances would fall outside of the exemption.  *See* CBD Memo. at 6 (quoting Appendix B).  This informal publication should not be credited for three reasons: (1) EPA cannot vary the textual meaning of Section 261.4(b)(5) in such a publication even if it desired to and the term "unused" does not appear in the regulation; (2) the specific controls over the general and EPA has indicated with precision in a *Federal Register* notice that (a) unused drilling fluids brought onshore remain exempt; and (b) only unused fracking materials fall outside the exemption; and (3) a *Federal Register* notice clearly trumps such an informal publication because the test is whether the relevant agency position can be deemed a "fair and considered judgment on the matter in question" by an official authorized to bind the agency or to speak for it in the context of litigation (such as the Attorney General or, in the Supreme Court, the Solicitor General).  *See Auer v. Robbins*, 519 U.S. 452, 462 (1997).  The *Federal Register* notice indicating that unused drilling fluids disposed of onshore fell inside the exemption and only unused fracking fluids fell outside of it was signed by Acting Administrator A. James Barnes.  The generic EPA document CBD includes in its Appendix B is unsigned.

[2]     The dispute at the Phase One trial about the choice of spacer material (*see* Rec. Doc. 13381-1 at 75-76) is irrelevant here because the spacer was clearly used in "the exploration, development or production of crude oil" — in particular, in connection with displacement related to the negative pressure test.

here readily meet that test.  They are called drilling mud and drilling spacer for a reason —
because they are used in oil-drilling activities.  But CBD also appears to argue that the term
"intrinsic" (a term not present in the text of the regulatory exemption) has a different and
narrower meaning.  *See* CBD Memo. at 5 (quoting EPA's 1993 guidance document as indicating
that, as a "rule of thumb," only substances that came from "down-hole" are exempt).  But the
text of Section 261.4(b)(5) obviously applies to both intrinsic ***and extrinsic*** substances in that
sense (*i.e.*, substances that either came from ***or*** were placed down-hole).  For the text (with
emphasis added) exempts "***drilling fluids***, ***produced waters***, ***and*** other wastes associated with the
exploration, development, or production of crude oil, natural gas or geothermal energy."
"Produced waters," it is true, are typically brought up from down-hole oil-drilling activities
because such waters come from underground formations encountered during drilling.[3]  But
"drilling fluids" (including mud and spacer) are unambiguously substances that are placed down-
hole.  They are ***introduced to*** the natural formations in order to make drilling possible and/or to
ease drilling.[4]

Hence, any reading of Section 261.4(b)(5) that required drilling fluids to be native to
natural oil and gas formations for the exemption to apply would be unavoidably ***atextual*** and

---

[3]   The U.S. government has defined "produced water" as "naturally occurring water found in [relevant geological] formations; it generally flows to the surface during the entire lifespan of a well.  How this often highly saline water is managed and treated depends on many factors — basically the options after treatment are deep injection back into the sub-surface; using it to return water to the local ecosystem; and recycling it for use in hydraulic fracturing operations."  Shale Gas 101, *available at* http://energy.gov/fe/shale-gas-101 (last visited Nov. 10, 2015).  This definition was provided in the specific context of shale gas drilling/fracturing operations but the concept is the same as applied to subsea wells.  The government's definition of this term on a federal website is entitled to judicial notice.  *See, e.g., Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from official website of the FDIC).

[4]   "Drilling fluids, also referred to as drilling mud, ***are added to the wellbore*** to facilitate the drilling process by suspending cuttings, controlling pressure, stabilizing exposed rock, providing buoyancy, and cooling and lubricating."   *How Do Drilling Fluids Work? available at* http://www.rigzone.com/training/insight. asp?insight_id=291 (last visited Nov. 10, 2015) (emphasis added).  The regulation itself does not define "drilling fluids," but it hard to imagine how CBD could contest the self-evident point that drilling fluids are introduced to geological formations and are not native to them.

thus unlawful because such a reading would functionally ban all use of introduced drilling fluids, rendering the very inclusion of drilling fluids in the exemption a nullity.  Moreover, CBD fails to quote the provision of the relevant *Federal Register* notice where EPA makes clear that, when it is talking about substances "intrinsic" to oil and gas development and production activities, the kinds of wastes that it intended to fall outside of the regulatory exemption are those that are generated by transportation or manufacturing activities.  *See* 58 Fed. Reg. at 15,284.  Finally, the purpose of the *Federal Register* notice CBD includes as its Appendix B was not to clarify anything about the exclusion of "drilling fluids" as a specific category of substances but rather to clarify how the regulatory exemption mapped on to the crude oil reclamation industry, service company wastes, and pipeline wastes, *see id.* at 15,285-15,287, none of which are relevant here.[5]

CBD also argues that this Court has judicially expanded the regulatory exemption, making it unrecognizable by extending it to any substance that happens to be located near a well. *See* CBD Mot. at 2; CBD Memo. at 7 (accusing Court of opening up "a veritable black hole" in place of the actual exemption intended by EPA); *see also id.* at 5 (quoting EPA in CBD's Appendix B document arguing that it is a "misunderstanding" to think that "all" wastes at exploration and production sites are exempt).  That is obviously an overblown attempt to read words and concepts into this Court's decision that are not there.  The Court merely held that drilling spacer and mud — the kinds ordinarily found at drilling sites — fell within the regulatory exemption, not that any and all substances that rig workers or drilling companies might happen to bring on board the *Deepwater Horizon* (however atypical and unconnected to

---

[5]   Indeed, this *Federal Register* notice specifically indicated that it was not changing the exemption and for that reason it did not need to run the gamut of notice-and-comment review:  "This document clarifies the regulatory status of wastes generated by the crude oil reclamation industry, service companies, gas plants and feeder pipelines, and crude oil pipelines.  Since this document only further clarifies the status of these wastes under the RCRA Subtitle C hazardous waste exemption discussed in EPA's 1988 Regulatory Determination, ***and does not alter the scope of the current exemption*** <u>***in any way***</u>***, comments are not being solicited by the Agency on this notice***."  58 Fed. Reg. at 15,284 (emphasis added).

drilling activities) were exempt.  And the Court certainly **never held** that **any substance** found at a drilling site was an exempt waste.  Hence, even if by the process of interpreting the regulatory exemption the term "associated with" could be given some limiting construction in other situations, there is no reason to try to do so here where the drilling fluids at issue were both **(A)** closely associated with drilling and **(B)** lay at the core of what the regulatory exemption was designed to protect.  *See, e.g.,* 53 Fed. Reg. at 25,453 (listing "drilling fluids" as prototypical exempt materials, which is unsurprising since the regulatory exemption's text, following Congress's lead in 42 U.S.C. § 6921(b)(2)(A), explicitly lists such fluids as not constituting Resource Conservation and Recovery Act ("RCRA") "hazardous wastes").  CBD attempts to manufacture ambiguity (which could, at most, stem from the regulatory exemption's listing of "other wastes") where none exists as to the explicit term, "drilling fluids."  Drilling fluids are expressly listed in Section 261.4(b)(5) as exempt substances, full stop.  Nothing in any EPA regulatory document purports to state that some sub-category of drilling fluids somehow fall outside that textual exclusion.

CBD also tries to argue that attempts to **stop the flow** of oil cannot be deemed to be "associated with" "the exploration, development, or production of crude oil."  *See* CBD Memo. at 4.  But that makes no sense and CBD cites no authorities to support such an argument.  Well control is obviously required to engage in safe exploration, development, and production of crude oil and thus is part and parcel of such activities.  *See In re Deepwater Horizon*, 21 F. Supp. 3d 657, 710-11 (E.D. La. 2014) (this Court describing legally required well-control responsibilities) (citing 30 C.F.R. § 250.401 (emphasis added), where subsection (e) requires the use of "equipment **and materials**" for the purpose of "ensur[ing] the safety and protection of personnel, equipment, natural resources, and the environment").  Section 261.4(b)(5) should be

11

read to harmonize with 30 C.F.R. § 250.401(e), not conflict with it.

Indeed, a holding that stopping the loss of well control would vitiate the regulatory exemption at issue here is an upside-down concept.  CBD is pushing the far-too-facile and invalid distinction that if oil is being *withdrawn* from a formation via a well, the regulatory exemption applies but if, in the course of drilling a well, it becomes necessary to use drilling fluids *to stop* oil flow (*i.e.*, for well-control purposes), then the exemption disappears.  Nothing in the text of the regulation dictates such an outcome and it would be extremely poor public policy to turn off a regulatory exemption like Section 261.4(b)(5) when a well-control event arises.  That would seem to generate exactly the wrong incentive for regulated parties — *i.e.,* one that would increase rather than decrease the costs and ease of regaining well control.  Indeed, the fact that CBD would even suggest such a reading of Section 261.4(b)(5) is inconsistent with it posturing itself here as trying to protect the environment.

In any event, even if these EPA documents did attempt to change what "associated with" means, any such attempt would be invalid.  The Supreme Court has emphatically declared that agencies are not entitled to deference when they strain to read a regulation to mean something other than what it says.  *See, e.g.*, *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) ("Deference is undoubtedly inappropriate, for example, when the agency's interpretation is plainly erroneous or inconsistent with the regulation.") (quotations omitted).  When the text is clear, a court must read a regulation to equate to its plain meaning.  Here, "associated with" means "associated with" — and that means spacer and drilling mud are not hazardous substances.  The text of 40 C.F.R. § 261.4(b)(5) speaks for itself.[6]

---

[6]     CBD argues that the EPA guidance documents CBD points to should be shown "*Seminole Rock* deference" — the form of deference applicable when an agency interprets its own regulations.  *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945); CBD Memo. at 4-5 (citing "*Decker v. Northwest Envt'l Defense Ctr.*, 133 S. Ct. 1326, 1337 (2013) (courts to defer to agency interpretation of its own regulation unless it is plainly erroneous or

Nevertheless, even more strangely, CBD asserts that EPA agrees with the Center's idiosyncratic view of EPCRA.  *See* CBD Memo. at 7 n.3 ("While EPA has said that they agree with the Center's position, they also indicated that they would not likely weigh in unless the matter went before the Court of Appeals").  This is quite an overstatement.  The email CBD cites does not say that EPA "agrees" with CBD; to the contrary, all it says is "I did share your motion with a few folks and it looks fine."  "Looks fine" is hardly a ringing endorsement and it is certainly not an official government embrace of CBD's position; it is a brush off — especially when combined with a declarative statement that EPA is unwilling to file a brief in this Court and that EPA will not commit to seeking Justice Department approval to file a brief on appeal either.

Moreover, Dean Ziegel, the author of the email at issue, is an EPA attorney-advisor — not a senior official with authority to speak for the agency.  *See*, *e.g.*, *Dow Agrosciences v. NMFS*, 707 F.3d 462, 469 (4th Cir. 2013) ("Hawkes did not explain how he had authority to speak on behalf of the Fisheries Service to explain or justify its decisions.").  Moreover, even if Ziegel were empowered to speak on behalf of the agency to the federal courts, the way for EPA to share its views of a legal issue with this Court would have been to ask the Department of

---

inconsistent with regulation)") (*Decker* involved such *Seminole Rock* deference, though Chief Justice Roberts and Justice questioned there whether *Seminole Rock* should be reconsidered, *see Decker*, 133 S. Ct. at 1338 (Roberts, C.J., concurring)).  Of course, the first problem for CBD's argument is that any interpretation of Section 261.4(b)(5) that tried to read "drilling fluids" out of the text, as CBD tries to do, would be "plainly erroneous."

But the second problem for CBD is that *Seminole Rock* deference is not applicable when an agency merely parrots in a regulation congressional language from a statute.  *See Gonzales v. Oregon*, 546 U.S. 243 (2006) ("An agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language.").  And here, the Section 261.4(b)(5) exemption of "drilling fluids, produced waters, and other wastes associated with the exploration, development, or production of crude oil, or natural gas or geothermal energy" is taken verbatim from 42 U.S.C. § 6921(b)(2)(A).  *See also* 53 Fed. Reg. at 25,443 (EPA stating "[RCRA] Section 3001(b)(2)(A) [42 U.S.C. § 6921(b)(2)(A), as codified] exempts produced water, drilling fluids, and 'other wastes associated' with the exploration, development, and production activities.  These are general terms that do not identify all of the specific waste streams to be exempted and studied.").

Justice (which is the cabinet agency authorized to represent the United States in court) to file a brief supported by arguments and authorities, not by proffering a second-hand, informal, and conclusory email.  As matters stand now, the attached email is nothing but inadmissible hearsay. *See, e.g.*, *In re Deepwater Horizon*, MDL No. 2179, 2012 WL 85447, at *4 (E.D. La. Jan. 11, 2012) (explaining that emails with information from others are hearsay).  Most importantly, there is simply no reason to think such an email represents EPA's "fair and considered judgment on the matter in question."  *Auer v. Robbins*, 519 U.S. 452, 462 (1997) (by contrast to the facts here, the Supreme Court opted in *Auer* to defer to a legal brief filed at the request of the Supreme Court by the Solicitor General on behalf of the Secretary of Labor).

In short, nothing in CBD's motion even begins to raise any serious questions about the Court's commonsense conclusion that spacer and drilling mud used in connection with the rig are excluded from the scope of EPCRA.  Rather than supporting reconsideration, CBD's strained efforts to suggest otherwise only underscore why this Court got it right the first time.

### III.   Even If the RCRA Exemption Did Not Apply, CBD Has Not Proffered, or Even Alleged, a *Prima Facie* Case That an EPCRA Report Is Needed as to Spacer or Mud.

The Court correctly found that the applicable RCRA exemption excludes the barrels of spacer and drilling mud used at the Macondo well from RCRA's definition of hazardous waste, and found that these materials therefore did not constitute hazardous substances under CERCLA. *See* Order, Rec. Doc. 15352, at 6.   In arguments rebutted above, CBD asserts that BP intentionally disposed of the spacer and drilling fluid rather than using it for a legitimate purpose and that such materials were outside the scope of the Section 261.4(b)(5) exemption.  But CBD fails to explain where its argument leads, particularly how its averments would give CBD a cause of action requiring BP to prepare release reporting notifications under Section 304 of EPCRA.

If the EPCRA exemption for drilling fluids did not apply, CBD could have proffered

evidence on the constituents of the drilling muds and spacer.  EPCRA reporting requirements are highly technical, however, and noncompliance can only be demonstrated by careful analyses showing, *inter alia*, a release to the environment of a defined "hazardous substance" in a defined "reportable quantity" "within any 24-hour period."  *See* 40 C.F.R. § 355.33 (incorporating reportable quantities for CERCLA hazardous substances listed in Table 302.4 of 40 C.F.R. § 302.4).  Yet in its summary judgment memorandum, CBD explicitly stated that it ***was not asserting*** an EPCRA claim for the constituents of the drilling muds and spacer.  *See* Plf's Memo. in Opp. to Defs.' Joint Mot. for Summ. Judgment at 7 n.3, Rec. Doc. 12820 (May 5, 2014) ("Plaintiff does not assert, at this time, that Defendants were required to independently report these materials [the drilling muds and spacer] under § 304 of EPCRA.").   And CBD recently reaffirmed that position in its motion for reconsideration here.  *See* CBD Mot. at 3 n.1 ("The Center simply did not move for summary judgment on these particular elements [drilling muds and spacer constituents] because of potential material issues of fact.").

Alternatively, CBD could have proffered evidence that the drilling muds and spacer themselves (as opposed to their constituents) were "hazardous wastes" under RCRA and, as such, constituted a defined "hazardous substance" under EPCRA, which would similarly require the showing of a release to the environment of the "hazardous substance" in a defined "reportable quantity" "within any 24-hour period."   CBD failed to do so. Without any proffer of evidence, CBD argues now only that EPA guidance documents "show that EPA … would itself determine that the excess spacer and drilling muds were hazardous waste."  *See id.* at 7.

But (in addition to CBD's flawed arguments from the guidance documents, see above), CBD has completely failed to analyze the regulatory requirements for determining whether a material is a "hazardous waste."  In fact, the same EPA guidance offered by CBD shows that the

15

"hazardous waste" inquiry does not stop if a material is deemed not to be covered by the RCRA exemption; rather, the inquiry must then proceed to consider whether the material is indeed a "hazardous waste." *See* CBD Memo., Appendix B at 12. Under EPA's RCRA regulations, the determination of whether a material is a "hazardous waste" requires a determination of whether it is included on a specific list of wastes that EPA has determined are hazardous or exhibits certain hazardous characteristics (ignitability, corrosivity, reactivity, or toxicity). *See* 40 C.F.R. § 261.3; *see also* EPA RCRA Orientation Manual III-4, III-16, III-21 through III-22 (2014), *available at* http://www2.epa.gov/hwgenerators/resource-conservation-and-recovery-act-rcra-orientation-manual (last visited Nov. 10, 2015).

"[F]or waste to be classified as hazardous under RCRA, 'it must first qualify as a solid waste' pursuant to the statute." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 205 (2d Cir. 2009) (quoting *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.*, 989 F.2d 1305, 1313 (2d Cir. 1993)). Hence, both solid and hazardous waste must be shown to be at issue.

**1.** As to the "solid waste" inquiry, when a material is used for a beneficial purpose, like the drilling muds and spacer were at the Macondo well, the determination of whether a material is a solid waste is a complex task. *See American Mining Congress v. EPA*, 824 F.2d 1177, 1189 (D.C. Cir. 1987) (describing process of navigating the definition of "solid waste" under RCRA and its regulations as a "mind-numbing journey"). And CBD has simply failed here to engage in the requisite "solid waste" analysis under 40 C.F.R. § 261.2. And, as noted above, it has not shown an intent to discard as a factual matter.

**2.** And as to the specific "hazardous waste" inquiry, CBD has argued that the drilling muds and spacer are listed hazardous wastes, *see* 40 C.F.R. Part 261 Subpart D, or characteristic hazardous wastes, *see* 40 C.F.R. §§ 261.21-.24. Assessing hazardous waste "characteristics"

requires a demonstration of the overall chemical characteristics of the muds and spacer and a comparison to the criteria of 40 C.F.R. §§ 261.21-.24, which CBD clearly has never ventured. Finally, as to the "reportable quantity" criterion, CBD has made no effort to identify the number of pounds of any hazardous substance released to the environment in a 24-hour period.

By failing to allege and proffer evidence on these indispensable elements, CBD has thus failed to make out a *prima facie* case of an EPCRA reporting violation. Accordingly, CBD's argument on reconsideration collapses.

## IV.   The Judgment Must Also Be Allowed to Stand for a Host of Other Reasons, Previously Briefed, Independent of the RCRA Exemption.

Finally, even if — contrary to law and fact — this Court were to conclude that CBD's prayer for reconsideration is both procedurally proper and meritorious, the Rule 59(e) motion would still be baseless.  For the reasons that BP has submitted in prior briefing, there are numerous independent reasons why CBD's EPCRA claim fails.  The upshot is that even assuming for the sake of argument that EPCRA applies to spacer and drilling mud used in connection with oil exploration, the Court's judgment would still be unassailable.

BP will not set out these arguments in full here; they are explained in detail in the summary judgment briefing.  For this purpose, it is sufficient to observe:

**Lack of Citizen Suit Notice:**  Before bringing an action under EPCRA, a plaintiff must provide adequate notice.  *See* 42 U.S.C. § 11046(d); *see also Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 401 (4th Cir. 2011) ("[P]laintiffs' failure to allege Phase II violations for cadmium, zinc, iron, or oil and grease in their notice letter rendered their claims for these alleged violations subject to Gaston's attack on the adequacy of the notice letter, and requires reversal of the Phase II violations that the district court found"); *Brod v. Omya, Inc.*, 653 F.3d 156, 167 (2d Cir. 2011)

17

(similar).  Here, CBD's notice letters never identified drilling mud or spacer as substances of concern.  This is unsurprising given that it is hard to imagine that any reasonable citizen back on land in a Gulf State could really be concerned about the comparatively small amounts of such substances used 50 miles out into the Gulf, as leading to a purported need for BP to file a report about such a release. (And if they were not concerned about that five years ago, they are clearly not concerned about it now.)

**Inapplicability of EPCRA to the Shelf (Its Inherent Design Is to Apply Within State Borders):**  EPCRA does not apply on the Shelf.  Nothing in the statute suggests that Congress intended EPCRA to apply to spacer or drilling mud, much less releases of those substances occurring in exclusive federal enclaves.  To the contrary, Congress presumed that all covered releases would occur within state boundaries.  *See, e.g.,* 42 U.S.C. § 11001(b).

**CBD's Suit Is Inconsistent with Article III:**  CBD's argument flunks Article III.  Because all of the information that CBD purports to seek has been publicly available for more than five years, the Center has not suffered and is certainly not still suffering an Article III injury.  Hence, CBD lacks standing to seek injunctive relief and, in any event, its claim is moot.  CBD's EPCRA claim was weak on Article III grounds even as applied to oil discharges.  But any force it might have had concerning oil discharges is diminished even further in the context of the far-lower volumes used of mud and spacer released.

**Laches Bars CBD's Suit:**  CBD's is also not entitled to equitable relief under basic equity principles.  After the Fifth Circuit's remand, CBD slept on its rights for ***eight months***.  It is thus impossible for CBD to say with a straight face that the public needs this information — leaving aside that the information is already publicly available — when the Center itself was content to do nothing for so long post-remand. Environmental claims are not uniquely immune

from ordinary equitable principles.  *See, e.g.*, *Save Our Wetlands, Inc. v. Army Corps of Eng'rs*, 549 F.2d 1021, 1026 (5th Cir. 1977).

Each of these arguments, independently, is sufficient to sustain the Court's judgment rejecting CBD's EPCRA claim.  Before the Court could rule in favor of CBD, accordingly, it would have to conclude that none of these independent justifications is meritorious.  CBD cannot clear every one of these many obstacles to its claim.  Nor is it surprising that CBD's claim suffers from so many fatal infirmities.  CBD insists that it must be part of this litigation, even though the whole theory of citizen suits is framed to apply only where the United States has failed to respond to an environmental mishap.  *See, e.g.*, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987) (a "citizen suit is meant to supplement rather than to supplant governmental action").  Here, from literally minutes after the oil spill began, the United States has managed— in great detail and with energetic attention — the response to this spill.  CBD's suit and its latest motion have entirely ignored the federal response.

## CONCLUSION

For the foregoing reasons, Defendants submit that CBD's motion should be denied.


Dated:  November 12, 2015                          Respectfully submitted,

                                                   /s/  Don K. Haycraft
                                                   _____

Richard C. Godfrey, P.C.                           Don K. Haycraft (Bar #14361)
J. Andrew Langan, P.C.                             Robert Holden (Bar # 06935)
KIRKLAND & ELLIS LLP                               LISKOW & LEWIS
300 North LaSalle Street                           701 Poydras Street, Suite 5000
Chicago, IL 60654                                  New Orleans, Louisiana 70139
Telephone: (312) 862-2000                          Telephone: (504) 581-7979
Facsimile: (312) 862-2200                          Facsimile: (504) 556-4108

Joel M. Gross
ARNOLD & PORTER LLP
601 Massachusetts Avenue, N.W.
Washington, DC  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC. AND BP AMERICA INC.***

  s/ Brad D. Brian
Brad D. Brian
Daniel B. Levin
MUNGER, TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-9100
Facsimile:  (213) 683-5180

  s/  Steven L. Roberts
Steven L. Roberts
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 470-6100
Facsimile:  (713) 354-1301

  s/  Kerry J. Miller
Kerry J. Miller
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone:  (504) 566-8646
Facsimile:  (504) 585-6946

***ATTORNEYS FOR TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., TRANSOCEAN DEEPWATER INC., TRANSOCEAN HOLDINGS LLC, AND TRITON ASSET LEASING GmbH.***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 12th day of November 2015.

/s/ Don K. Haycraft