IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | | SECTION J |
| This document relates to all actions. | * * | |
| | * * | HONORABLE CARL J. BARBIER |
| | * * | |
| | * * | MAGISTRATE JUDGE SHUSHAN |
| | * | |

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., on behalf of themselves and all others similarly situated, | * * * | Civil Action No. 12-970 |
| | | SECTION J |
| Plaintiffs, | * * | |
| v. | * * | HONORABLE CARL J. BARBIER |
| BP Exploration & Production Inc.; BP America Production Company; BP p.l.c., | * * * | MAGISTRATE JUDGE SHUSHAN |
| Defendants. | * | |

*DEEPWATER HORIZON* ECONOMIC AND PROPERTY DAMAGES SETTLEMENT
AGREEMENT AS AMENDED ON MAY 2, 2012

Tab 09

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

RECITALS ......................................................................................................................... 1

1. CLASS DEFINITION. ............................................................................................. 3

2. EXCLUSIONS FROM THE ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS DEFINITION. ......................................................................................... 8

3. EXPRESSLY RESERVED CLAIMS. ................................................................... 12

4. IMPLEMENTATION OF THE SETTLEMENT. .................................................. 12

5. SETTLEMENT BENEFITS. .................................................................................. 28

    5.2. SEAFOOD COMPENSATION PROGRAM. ............................................. 29

    5.3. ECONOMIC DAMAGE COMPENSATION. ............................................. 29

    5.4. SUBSISTENCE DAMAGE COMPENSATION. ........................................ 31

    5.5. VoO CHARTER PAYMENT ...................................................................... 32

    5.6. VESSEL PHYSICAL DAMAGE COMPENSATION. ............................... 33

    5.7. COASTAL REAL PROPERTY DAMAGE COMPENSATION ................ 33

    5.8. WETLANDS REAL PROPERTY DAMAGE COMPENSATION ............ 33

    5.9. REAL PROPERTY SALES DAMAGE COMPENSATION ...................... 34

6. CLAIMS APPEAL PROCESS ............................................................................... 55

7. PRELIMINARY APPROVAL BY THE COURT AND CLASS CERTIFICATION. .......... 62

8. NOTICE AND FAIRNESS HEARING. ................................................................ 63

9. COMMUNICATIONS TO THE PUBLIC. ............................................................ 68

10. RELEASE AND DISMISSAL OF ALL CLAIMS AND OTHER PROTECTIONS. ...... 69

11. ASSIGNMENT AND PROTECTIONS. ................................................................ 76

12. DENIAL OF WRONGDOING OR LIABILITY. ................................................... 76

13. REPRESENTATIONS AND WARRANTIES. ...................................................... 78

14. PLAINTIFFS' COUNSEL'S ATTORNEY'S FEES AND COSTS. ....................... 79

| | | |
|---|---|---|
| 15. | FINAL ORDER AND JUDGMENT, DISMISSAL WITH PREJUDICE. | 79 |
| 16. | COOPERATION OF PARTIES AS TO CONSUMMATION OF SETTLEMENT | 81 |
| 17. | COOPERATION OF PARTIES AS TO SUPPORT OF SETTLEMENT. | 81 |
| 18. | CONTINUING JURISDICTION. | 81 |
| 19. | STAY OR ADJOURNMENT OF ALL PROCEEDINGS. | 82 |
| 20. | DUTIES OF ECONOMIC CLASS COUNSEL. | 82 |
| 21. | ILLEGALITY OR UNENFORCEABILITY OF PROVISIONS. | 83 |
| 22. | PRESERVATION OF CONFIDENTIAL DOCUMENTS. | 85 |
| 23. | INTERPRETATION. | 86 |
| 24. | NO PENALTY OR FINE. | 86 |
| 25. | AGREEMENT MUTUALLY PREPARED. | 86 |
| 26. | BINDING AND ENTIRE AGREEMENT. | 87 |
| 27. | RECEIPT OF ADVICE OF COUNSEL. | 87 |
| 28. | EXTENSION OF TIME AND MINISTERIAL CHANGES. | 87 |
| 29. | EXECUTION OF AGREEMENT IN COUNTERPARTS. | 87 |
| 30. | DECEASED, DISSOLVED OR BANKRUPT CLASS MEMBERS. | 88 |
| 31. | MINOR AND INCOMPETENT CLASS MEMBER SETTLEMENT PROVISION. | 88 |
| 32. | NO TAX ADVICE. | 89 |
| 33. | NO OTHER RIGHTS OR REMEDIES. | 90 |
| 34. | NOTICE | 90 |
| 35. | WAIVER | 91 |
| 36. | APPLICABLE LAW | 91 |
| 37. | GUARANTOR | 91 |
| 38. | DEFINITIONS | 91 |

# ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT

### (Subject to Court Approval)

This **AGREEMENT**,[1] dated as of April 18, 2012, is made and entered into by and among (i) defendants BP Exploration & Production Inc. and BP America Production Company (hereinafter the "**BP PARTIES**"), by and through their attorneys, and (ii) **PLAINTIFFS**, on behalf of the **ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS**, by and through the **INTERIM CLASS COUNSEL**, in the **DEEPWATER HORIZON ECONOMIC LITIGATION**. The purpose of this Agreement is to settle all and only the **RELEASED CLAIMS** of the Economic Class, **PLAINTIFFS**, and **ECONOMIC CLASS MEMBERS** against all and only the **RELEASED PARTIES**.

### RECITALS

A.   BP Exploration & Production Inc. and BP America Production Company are corporations organized under the laws of the State of Delaware, engaged in the business of oil and gas production, exploration and/or development.

B.   **ECONOMIC CLASS REPRESENTATIVES** are the named plaintiffs in the Amended Economic and Property Damage Class Complaint (the "**ACTION**") entitled *Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al.*, No. 12-970, filed May 2, 2012 in the **COURT**.

C.   The Action alleges federal statutory and maritime claims, including violations of the Oil Pollution Act, negligence, gross negligence, willful misconduct, strict liability, negligence *per se*, nuisance, and other claims. Plaintiffs in the Action seek compensatory damages, punitive damages, other damages and declaratory relief on behalf of themselves and the Economic Class Members, and all such claims, damages and theories of liability, unless expressly reserved, are extinguished, discharged and released by the terms of this Agreement.

---

[1] The first time defined terms appear in this Agreement, they are set forth in bold and all capital letters for emphasis. Thereafter, they are set forth with initial capital letters only.

# EXHIBIT 21

1. ASSIGNMENT AND PROTECTIONS.

   1.1. The Parties have agreed to the terms of an assignment and certain protections for Released Parties as set forth in this Attachment:

      1.1.1. **Satisfaction of Compensatory Damages.** The Economic Class, Plaintiffs, and all Economic Class Members agree and acknowledge that the Settlement Payment(s), in addition to constituting consideration from the Released Parties, also constitute full, complete, and total satisfaction of all of their Compensatory Damages against the Transocean Parties and the Halliburton Parties.

      1.1.2. **Protections for Released Parties.** The Economic Class, Plaintiffs, and all Economic Class Members promise, agree, acknowledge, represent, warrant, and covenant as follows:

         1.1.2.1. **No Assignment of Economic Class's, Plaintiffs', or Economic Class Members' Claims or Reassignment of Assigned Claims.** Neither the Economic Class nor any Plaintiff or Economic Class Member shall assign or reassign, or shall attempt to assign or reassign, to any person or entity other than BP any rights or claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident, including attempts to reassign the Assigned Claims. Any such assignment or reassignment, or attempt to assign or reassign, to any person or entity other than BP any rights or claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident shall be void, invalid, and of no force and effect.

         1.1.2.2. **No Recovery of Additional Compensatory Damages.** Neither the Economic Class nor any Plaintiff or Economic Class Member shall accept or attempt to recover, through insurance, reinsurance, indemnification, contribution, subrogation, litigation, settlement, or otherwise, any Compensatory Damages from the Transocean Parties and the Halliburton

028989

Parties, except from Assigned Claims subject to the terms and conditions of Section 1.1.2.4. Nothing in this Section 1.1.2.2 shall impair or impact rights to pursue Transocean and Halliburton for exemplary and punitive damages reserved by the Economic Class and Economic Class Members in Sections 3.6, 3.7, 10.2, and 10.3 of the Agreement and claimed as either individuals or members of the Economic Class.

1.1.2.3. **Non-Execution and Non-Collection for Compensatory Damages.** In the event that the Economic Class or any of the Plaintiffs or Economic Class Members is or becomes the beneficiary of any judgment, decision, award, or settlement arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident, the Economic Class and/or such Plaintiffs and/or Economic Class Members shall not accept, execute on, attempt to collect, or otherwise seek recovery of any Compensatory Damages from the Transocean Parties or from the Halliburton Parties, except from Assigned Claims subject to the terms and conditions of Section 1.1.2.4. Nothing in this Section 1.1.2.3 shall impair or impact rights to pursue Transocean and Halliburton for exemplary and punitive damages reserved by the Economic Class and Economic Class Members in Sections 3.6, 3.7, 10.2, and 10.3 of the Agreement and claimed as either individuals or members of the Economic Class.

1.1.2.4. **Conditional Collection of Damages.** In the event that the Economic Class or any of the Plaintiffs and/or Economic Class Members is or becomes the beneficiary of any judgment, decision, award, or settlement arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident, including from Assigned Claims and/or Expressly Reserved Claims, the Economic Class and/or such Plaintiffs and/or Economic Class Members shall not accept, execute on, attempt to collect, or otherwise seek recovery of any Damages, to the extent that any Other Party is seeking or may seek to recover such Damages from any Released Party, whether through indemnity,

028990

contribution, subrogation, assignment, or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise, directly or indirectly. The Economic Class, Plaintiffs, and/or Economic Class Members may, however, accept, execute on, attempt to collect, or otherwise seek recovery of Damages if and when a court or tribunal of competent jurisdiction has finally determined that Other Parties cannot recover such Damages, whether through indemnity, contribution, subrogation, assignment or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise, directly or indirectly, from any Released Party. For purposes of this Section 1.1.2.4, "finally determined" shall mean the conclusion of any applicable appeals or other rights to seek review by certiorari or otherwise, or the lapse of any and all such rights, or the lapse of any and all applicable limitations or repose periods.

1.1.2.5. **Conditions on Future Settlements.** The Economic Class, Plaintiffs, and/or Economic Class Members may settle or compromise any rights, demands, or claims with the Transocean Parties, the Halliburton Parties, and/or any Other Parties arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident if but only if the Transocean Parties, the Halliburton Parties, and/or such Other Party, as the case may be, agrees as part of that settlement or compromise to a full and final release of, dismissal of, and covenant not to sue for any and all rights to recover, directly or indirectly, from the Released Parties (whether through indemnity, contribution, subrogation, assignment or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise) for any Damages or other relief or consideration provided under or relating to such settlement or compromise (whether the settlement is of a class, of individual claims, or otherwise), including from Expressly Reserved Claims, and further represents and warrants that it has not assigned and will not assign any rights to recover for such Damages or other relief or consideration (whether through indemnity, contribution,

3

subrogation, or otherwise). As part of this commitment and without limitation, the Economic Class, Plaintiffs, and/or Economic Class Members shall not settle or compromise with the Transocean Parties, the Halliburton Parties, and/or any Other Parties on terms that might allow any insurers, reinsurers, or indemnitors thereof to claim against any Released Parties for indemnification, subrogation, contribution, assignment or under any other theory of recovery. The Economic Class, Plaintiffs, and Economic Class Members agree that, before any such settlement or compromise is executed, BP shall have the right to approve language in any such settlement or compromise memorializing the representation and warranty set forth in this Section 1.1.2.5, which approval shall not be unreasonably withheld.

1.1.2.6.  **Indemnity to Released Parties.** Notwithstanding any provision in the Agreement to the contrary, if any Other Party recovers or seeks to recover from any Released Party (under any theory of recovery, including indemnity, contribution, or subrogation, and including from Assigned Claims and/or Expressly Reserved Claims) any Damages either (a) paid to a particular Plaintiff or Economic Class Member for which a release was given to BP through the Settlement or in an Individual Release, or (b) by, through, under, or on account of such Plaintiff or Economic Class Member for which a release was given to BP through the Settlement or in an Individual Release; then that Plaintiff or Economic Class Member shall indemnify (but not defend) the Released Parties, but only to the extent of Settlement Payment(s) received by that particular Plaintiff or Economic Class Member (by way of example, if a particular Plaintiff has received $100.00 in Settlement Payment(s), its indemnity obligation would be capped at this amount). This indemnity obligation owed by a Plaintiff or Economic Class Member who has given a release to BP includes any and all claims made or other actions taken by that Economic Class Member in breach of Sections 1.1.2.1 through 1.1.2.5.

028992

1.1.2.7. **Notice Regarding Indemnity.** Plaintiffs and Economic Class Members expressly acknowledge that, to the fullest extent allowed by law, the indemnity obligations contained in Section 1.1.2.6 apply to claims against Released Parties predicated on negligence, gross negligence, willful misconduct, strict liability, intentional torts, liability based on contractual indemnity, and any and all other theories of liability, and any and all awards of attorneys' fees or other costs or expenses. The Plaintiffs and Economic Class Members acknowledge that this indemnity is for conduct occurring before the date of the Agreement and therefore is not affected by public policies or other law prohibiting agreements to indemnify in advance of certain conduct. **THE PLAINTIFFS AND ECONOMIC CLASS MEMBERS ACKNOWLEDGE THAT THIS SECTION 1.1.2.7 COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS SECTION 1.1.2.7 IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

1.1.2.8. **No Set-off.** Should the Economic Class, Plaintiffs, or the Economic Class Members succeed in recovering monies from Transocean or Halliburton, BP agrees that it would not be entitled to set-off such recovery against its obligation to make Settlement Payment(s). Notwithstanding this Section 1.1.2.8, however, the Economic Class, Plaintiffs, and Economic Class Members acknowledge and agree that this "no set-off" term does not apply to any right BP may have pursuant to the Agreement to receive a credit for monies received by Economic Class Members.

1.1.3. **Assignment.** To the fullest extent allowed by law and applicable contracts, and subject to Sections 1.1.2, 1.1.4, and 1.1.5, upon Preliminary Approval, and subject to occurrence of the Effective Date as a condition subsequent, BP assigns to the Economic Class, only as a juridical entity and not to Economic Class Members individually, the following claims and causes of action against Transocean and Halliburton (but no other party) arising out

5

of, due to, resulting from, or relating in any way to, directly or indirectly, to the Deepwater Horizon Incident, on the terms and conditions set forth herein:

1.1.3.1.   All damages related to the repair, replacement, and/or re-drilling of the MC-252 Well;

1.1.3.2.   All economic damages for the loss of the MC-252 Well, including lost profits, lost hydrocarbons, and diminution in value of the leasehold;

1.1.3.3.   All costs that BP incurred to control the MC-252 Well and/or to respond to, contain, and/or clean up the DWH Spill;

1.1.3.4.   All rights to indemnity, contribution, or subrogation for claims paid by BP and/or the GCCF on or before the entry of the Preliminary Approval Order, subject, however, to (a) BP's retention of its right to pursue the payments identified in Section 1.1.4.2, which are expressly retained, and (b) BP's retention of its right to recover from Transocean and Halliburton for the payments identified in Section 1.1.4.2;

1.1.3.5.   All claims or causes of action to pursue reimbursement of Settlement Payment(s) under theories of indemnification, contribution, subrogation, or any other theory of recovery;

1.1.3.6.   All punitive, exemplary, multiple, or non-compensatory damages;

1.1.3.7.   All claims and causes of action to recover the damages, losses, costs, fees, and amounts set forth in Sections 1.1.3.1-1.1.3.6, including BP's claims for breach of contract, unseaworthiness, negligence, gross negligence, willful misconduct, fraud, fraudulent concealment, and intentional torts and including BP's claims in the *BP Parties' Counter-Complaint, Cross-Complaint And Third Party Complaint Against Transocean And Claim In Limitation*, Docket No. 2074 in Case 2:10-md-02179-CJB-SS, and *BP's Cross-Complaint And Third-Party Complaint Against Halliburton*, Docket

028994

No. 2082 in Case 2:10-md-02179-CJB-SS.

1.1.3.8. BP agrees to cooperate, at its expense, in discovery with the Economic Class in the prosecution of the Assigned Claims, through the provision of evidence and witnesses, and the Economic Class agrees to exercise reasonable restraint in their requests for assistance. The Economic Class pledges to use its best efforts to avoid having to call BP employees as witnesses in court for a trial or other proceedings pursuing Assigned Claims.

1.1.4. **All Defenses and Other Claims Retained.** All of BP's claims not expressly assigned by Section 1.1.3 are hereby retained.

1.1.4.1. Notwithstanding Section 1.1.3 and to avoid doubt, BP does not assign any claim for indemnification or contribution or subrogation of amounts it might pay for fines, penalties, or sanctions, including under the Clean Water Act or other federal or state laws. Nothing in this provision shall be construed to indicate that BP believes such claims are valid, and BP reserves all legal arguments against such claims.

1.1.4.2. Notwithstanding Section 1.1.3 and to avoid doubt, BP does not assign, and in fact retains, any claim for indemnification, contribution, subrogation, or insurance coverage for amounts paid by the GCCF and/or BP on or before the entry of the Preliminary Approval Order to settle or resolve any personal injury, bodily injury, and/or wrongful death claims of the employees of Transocean or Transocean's contractors who were on board the Deepwater Horizon on April 20, 2010, whether brought by such employees or their representatives, including for amounts the GCCF paid for any "Employee Settlement" and to resolve "Employee Claims" as defined and provided for in the Agreement Relating to Payment of Transocean Employee Settlement Claims and as approved by Court order entered on December 13, 2011 (Rec. Doc. 4893) (hereafter referred to as "Insurance Proceeds for Transocean Personnel"). BP warrants that it has

7

028995

> not received any Insurance Proceeds for Transocean Personnel to date. This retention is subject to the terms of Section 5.14 of the Agreement.

1.1.4.3. Notwithstanding Section 1.1.3 and to avoid doubt, the Economic Class, Plaintiffs, and Economic Class Members acknowledge and agree that BP retains its right to receive a credit for monies received by the Economic Class, Plaintiffs, and/or Economic Class Members pursuant to the terms of the Agreement.

1.1.4.4. Further, notwithstanding any other provision of the Agreement, BP hereby retains all defenses, regardless of how designated, against all claims and causes of action of the Transocean Parties and/or the Halliburton Parties against any of the Released Parties, including all defenses against the Transocean Parties' and the Halliburton Parties' claims for contractual indemnification against BP, which shall include BP's rights to allege and argue breach of contract, gross negligence, willful misconduct, fraud, and/or intentional torts as defenses to contractual indemnification and to seek or oppose reconsideration, appeal, or other review of any decisions by courts or arbitrators regarding contractual indemnification between BP and the Transocean Parties and/or the Halliburton Parties, including (a) the Order and Reasons as to Transocean and BP's Cross-Motions for Partial Summary Judgment Regarding Indemnity, Docket No. 5446 in Case 2:10-md-02179-CJB-SS and (b) the Order and Reasons as to Halliburton's and BP's Cross-Motions for Partial Summary Judgment Regarding Indemnity, Docket No. 5493 in Case 2:10-md-02179-CJB-SS.

1.1.4.5. Neither the provisions regarding Assigned Claims, nor any other provision in the Agreement, shall limit BP's ability to take any action to defend itself in any litigation or arbitration.

1.1.4.6. **No Warranties for Assigned Claims.** BP does not make, and expressly disclaims, any representations or warranties regarding the Assigned Claims, including but not limited to representations and warranties

028996

regarding the validity, value, enforceability, defenses to, or assignability of the Assigned Claims. The invalidity, illegality, or unenforceability of the assignment of any or all Assigned Claims shall not operate to invalidate the Agreement or the Individual Releases, and shall not affect the validity or enforceability of any other provision, or portion thereof, of the Agreement or the Individual Releases. Should the Effective Date occur but part or all of the assignment be held invalid, BP acknowledges and agrees that it will not seek to pursue such Assigned Claims that were the subject of the invalidated assignment.

1.1.5. **Retention of Assigned Claims.** The occurrence of the Effective Date is a condition subsequent of the assignment of the Assigned Claims. If the Effective Date does not occur for any reason, the Assignment made in Section 1.1.3 shall become null and void and the Assigned Claims shall be retained by BP. If any of the Assigned Claims have been liquidated by the Economic Class through judgment or settlement with Transocean and/or Halliburton, such funds shall not be disbursed until the Effective Date has occurred and no compromise, release, or other impairment of the Assigned Claims shall become operative until the Effective Date. Any attempt to release, compromise or otherwise impair the Assigned Claims shall not become operative until the Effective Date, and any attempt to release, compromise, or otherwise impair the Assigned Claims with an operative date before the Effective Date shall be null and void.

2. **DEFINITIONS.**

    2.1. The capitalized terms used in this Attachment shall have the same definitions as in the Agreement unless defined in this Attachment. In the event of any conflict, the definitions in this Attachment shall prevail over any definitions used in the Agreement for purposes of applying the terms of this Attachment.

    2.2. Agreement shall mean the Economic and Property Damages Settlement Agreement, including all of its attachments and exhibits.

9

028997

2.3.  Assigned Claims shall mean the claims defined in Section 1.1.3, excluding the Retained Claims defined in Section 1.1.4.

2.4.  Compensatory Damages shall mean any and all forms of damages, known or unknown, intended to or having the effect of satisfying, compensating, or reimbursing the Economic Class's, Plaintiffs' and /or Economic Class Members' claims for actual economic or pecuniary costs, expenses, damages, liability, or other losses or injuries arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident, regardless of what such damages are designated, called or labeled. Compensatory Damages do not include and may not be interpreted to have any overlap with punitive, exemplary, multiple, or non-compensatory damages. Bodily Injury Claims (including wrongful death) are not included in Compensatory Damages. Claims of BP shareholders in any derivative or direct action solely in their capacity as BP shareholders are not included in Compensatory Damages. The Parties acknowledge and agree that the term Compensatory Damages as defined and used herein does not limit the amounts to be used for the calculation of punitive or other non-compensatory damages in any current or future litigation pursued by the Economic Class, Plaintiffs, and/or Economic Class Members. Nothing herein shall be deemed to limit the right of an Economic Class Member to pursue against BP Moratoria Losses or other claims expressly reserved under Section 3 of the Agreement.

2.5.  Damages shall mean all forms of damages defined as broadly as possible without exception, including losses, costs, expenses, taxes, requests, royalties, rents, fees, profits, profit shares, earning capacity, loss of subsistence, damages to real or personal property, diminution in property value, punitive damages, exemplary damages, multiple damages, non-compensatory damages, Compensatory Damages, economic damages, injuries, liens, remedies, debts, claims, causes of action, or liabilities.

028998

2.6. Halliburton shall mean Halliburton Energy Services, Inc. and all and any of its Affiliates, other than any Natural Person or Entity that is also an Affiliate of any of the Released Parties as of April 16, 2012.

2.7. Halliburton Parties shall mean Halliburton (including all persons, entities, subsidiaries, divisions and business units comprised thereby); each of Halliburton's respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and their past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns, Affiliates; any natural, legal or juridical person or entity acting on behalf of or having liability in respect of Halliburton, in their respective capacities as such; and the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective Affiliates including their officers, directors, shareholders, employees, and agents.

2.8. Other Party shall mean every person, entity, or party other than the Released Parties.

2.9. Retained Claims shall mean the claims retained by BP in Section 1.1.4.

2.10. Transocean shall mean Transocean Ltd., Transocean, Inc., Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH and all and any of their Affiliates, other than any Natural Person or Entity that is also an Affiliate any of the Released Parties as of April 16, 2012.

2.11. Transocean Parties shall mean Transocean (including all persons, entities, subsidiaries, divisions and business units comprised thereby); each of Transocean's respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and their past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers,

028999

reinsurers, predecessors, successors, indemnitees, assigns, Affiliates; any natural, legal or juridical person or entity acting on behalf of or having liability in respect of Transocean, in their respective capacities as such; and the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective Affiliates including their officers, directors, shareholders, employees, and agents.

029000