# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § | MDL No. 2179 SECTION: J JUDGE BARBIER |
| Applies to: No. 10-2771, and All Cases | § § § § | MAG. JUDGE SHUSHAN |

---

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVE MOTION FOR SUMMARY JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................iii

BACKGROUND AND PROCEDURAL HISTORY.................................................1

SUMMARY OF ARGUMENT.............................................................................1

STANDARD OF REVIEW.................................................................................3

ARGUMENT AND AUTHORITIES....................................................................4

I.   The Economic Class Cannot Pursue Claims Against HESI. ..............................4

II.  The "Settlement Bar Rule" Precludes the Economic Class from Obtaining a Valid
     Assignment of BP's Claims Against HESI for Contribution or Indemnity. .......8

     A.   The Settlement Bar Rule.......................................................................8

          1.   *AmClyde* and *Boca Grande*:  The Supreme Court Adopts The
               Proportionate Share Approach To Determining The Liability
               Of A Non-Settling Defendant. ...................................................8

          2.   *Ondimar* and *Murphy*:  The Settlement Bar Rule........................9

          3.   *Combo Maritime*: The Sole Exception to the Settlement Bar Rule...........9

     B.   BP Has No Contribution Claim Because It Failed to Obtain a Release
          for HESI and Transocean.....................................................................10

III. Plaintiffs are not Entitled to Contribution for Settlement
     Payments that BP Voluntarily Made.............................................................12

IV.  Any Recovery by Plaintiffs on BP's Claims for Contribution Would Result
     in an Impermissible Double Recovery............................................................15

V.   BP's Contribution Claims are Invalid Because BP Must Indemnify HESI
     for Such Claims.........................................................................................16

VI.  HESI is Entitled to Judgment as to any Claim by the Economic Class for
     Recovery of Consequential Damages. ...........................................................17

VII. BP's Purported Assignment of Claims Violates the Anti-Assignment
     Provision in the Contract. ...........................................................................20

VIII.   BP's Claims Against HESI for Punitive Damages are not Assignable as
a Matter of Law..................................................................................................23

CONCLUSION AND PRAYER ...............................................................................25

CERTIFICATE OF SERVICE ..................................................................................27

# INDEX OF AUTHORITIES

CASES

*Allen v. R & H Oil & Gas Co.,*
   63 F.3d 1326 (5th Cir. 1995) ...................................................................11

*Allhusen v. Caristo Constr. Corp.,*
   103 N.E.2d 891 (N.Y. 1952)....................................................................21

*Amchem Prods, Inc. v. Windsor,*
   521 U.S. 591 (1997)...................................................................................4

*Applewhite v. Reichhold Chems.,*
   67 F.3d 571 (5th Cir. 1995) .......................................................................5

*Atl. Sounding Co. v. Townsend,*
   557 U.S. 404 (2009)................................................................................15

*Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.,*
   289 F.3d 373 (5th Cir. 2002) .....................................................................3

*Boca Grande Club, Inc. v. Fla. Power & Light Co.,*
   511 U.S. 222 (1994)...................................................................................8

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)...................................................................................3

*In re Chinese Manufactured Drywall Prods. Liab. Litig.,*
   759 F. Supp. 2d 822 (E.D. La. 2010).........................................................1

*Cloughy v. NBC-Bank-Seguin, N.A.,*
   773 S.W.2d 652 (Tex. App.--San Antonio 1989, writ denied)................21

*Colony Bank Worth v. 150 Beachview Holdings, LLC (In re Fry),*
   No. 03-20394, 2007 Bankr. LEXIS 4743
   (Bankr. S.D. Ga. Mar. 24, 2007)..............................................................24

*Combo Maritime, Inc. v. United Bulk Terminal, LLC,*
   615 F.3d 599 (5th Cir. 2010) ............................................................. 9-10

*In re Complaint of Weeks Marine, Inc.,*
   Civ. No. 04-0494, 2006 U.S. Dist. LEXIS 52838
   (D.N.J. Aug. 1, 2006).............................................................................15

*Consol. Grain & Barge Co., Inc. v. Capital Marine Supply, Inc.*,
No. 99-0813, 2001 U.S. Dist. LEXIS 10477
(E.D. La. July 19, 2001) ....................................................................................... 17-18

*Cuvillier v. Sullivan*,
503 F.3d 397 (5th Cir. 2007) ................................................................................... 3

*Demette v. Falcon Drilling Co., Inc.*,
280 F.3d 492 (5th Cir. 2002) .................................................................................. 17

*Durgin v. Crescent Towing & Salvage, Inc.*,
No. Civ. A 00-1602, 2002 U.S. Dist. LEXIS 20126
(E.D. La. Oct. 18, 2002) .......................................................................................... 11

*Emery Resource Holdings, LLC v. Coastal Plains Energy, Inc.*,
Case No. 2:08-cv-907, 2010 U.S. Dist. LEXIS 29341
(D. Utah March 26, 2010) ....................................................................................... 22

*Fla. Bahamas Lines, Ltd. v. Steel Barge "Star 800"*,
433 F.2d 1243 (5th Cir. 1970) ........................................................................... 11, 20

*Gabarick v. Laurin Maritime (Am.) Inc.*,
Civil Action No. 08-4007, 2009 U.S. Dist. LEXIS 27180
(E.D. La. Jan. 12, 2009) ............................................................................................ 6

*General Tel. Co. v. Falcon*,
457 U.S. 147 (1982) .................................................................................................. 4

*Gentilello v. Rege*,
627 F.3d 540 (5th Cir. 2010) ................................................................................... 3

*Hoda v. Rowan Companies, Inc.*,
419 F.3d 379 (5th Cir. 2005) .................................................................................. 17

*In re: Commercial Money Center*,
603 F. Supp. 2d 1095 (N.D. Ohio 2009) ................................................................ 24

*In re: Drazan v. Atl. Mut. Ins. Co.*,
No. C 10-01371, 2010 U.S. Dist. LEXIS 64345
(N.D. Cal. June 29, 2010) ........................................................................................ 24

*In re: Ingram Barge Co.*,
Civil Action No. 05-4419, 2006 U.S. Dist. LEXIS 19140
(E.D. La. April 12, 2006) ........................................................................................ 6-7

*Kornman & Assocs., Inc. v. United States*,
    527 F.3d 443 (5th Cir. 2008) ......................................................................3

*Lexington Ins. Co. v. S.H.R.M. Catering Servs. Inc.*,
    567 F.3d 182 (5th Cir. 2009) ............................................................*Passim*

*Lloyd's Leasing, Ltd. v. Bates*,
    902 F.2d 368 (5th Cir. 1990) ................................................................. 6-7

*Marastro Compania Naviera, S.A. v. Canadian Mar. Carriers, Ltd.*,
    959 F.2d 49 (5th Cir. 1992) ....................................................................23

*McDermott, Inc. v. AmClyde*,
    511 U.S. 202 (1994)..................................................................................8

*McManus v. Fleetwood Enters., Inc.*,
    320 F.3d 545 (5th Cir. 2003) ....................................................................5

*Md. Cas. Co. v. Brown*,
    321 F. Supp. 309 (N.D. Ga. 1971) ..........................................................24

*Murphy v. Florida Keys Elec. Co-op Ass'n, Inc.*,
    329 F.3d 1311 (11th Cir. 2003) ..........................................................9, 11

*Ondimar Transportes Martimos v. Beatty St. Props., Inc.*,
    555 F.3d 184 (5th Cir. 2009) ......................................................... 9-11, 23

*PPG Indus., Inc. v. JMB/Houston Ctr. Partners Ltd. P'ship*,
    146 S.W.3d 79 (Tex. 2004)................................................................ 24-25

*Reliant Energy Services, Inc. v. Enron Can. Corp.*,
    349 F. 3d 816 (5th Cir. 2003) ..................................................................18

*In re River City Towing Servs., Inc.*,
    204 F.R.D. 94 (E.D. La. 2001) (Barbier, J.) ........................................ 6-7

*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*,
    28 P.3d 669 (Utah 2001)..........................................................................21

*Sulzer Carbomedics v. Or. Cardio-Devices, Inc.*,
    257 F.3d 449 (5th Cir. 2001) ..................................................................11

*Taurus Marine, Inc. v. Marin County*,
    2012 AMC 317, No. C 08-3195 PJH, 2012 U.S. Dist.
    LEXIS 16285 (N.D. Cal. Feb. 9, 2012) ............................................... 9-11

*Tex. E. Transmission LP v. Century Exploration New Orleans, Inc. et al.*
   2006 U.S. Dist. LEXIS 86888 (E.D. La. Nov. 28, 2006) ................................. 18-19

*Traveler's Ins. Co. v. United States,*
   283 F. Supp. 14 (S.D. Tex. 1968) .................................................... 12

*United Heritage Prop. & Cas. Co. v. Farmers Alliance Mut. Ins. Co.,*
   No. Civ. 1:10-456, 2012 U.S.. Dist. LEXIS 17592
   (D. Idaho Feb. 9, 2012) ............................................................ 24

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) .............................................................. 5

STATUTES AND APPLICABLE RULES

33 U.S.C. §2704 (2006) ................................................................ 13

33 U.S.C. §2709 (2006) ................................................................ 14

FED. R. CIV. P. 23 .................................................................. 4-5, 7

FED. R. CIV. P. 56(a) ................................................................ 3

OTHER AUTHORITIES

RESTATEMENT (SECOND) OF TORTS §886A cmt. d (1979) ....................................... 12

Halliburton Energy Services, Inc. ("HESI") files this Memorandum in Support of Its Motion for Judgment on the Pleadings or Alternative Motion for Summary Judgment Regarding BP's Assignment of Claims and respectfully shows the Court as follows:

## BACKGROUND AND PROCEDURAL HISTORY

HESI incorporates its Statement of Undisputed Facts filed contemporaneously with this Memorandum.[1]   For a specific listing of BP's purportedly assigned claims, please see the Statement of Undisputed Facts at ¶ 17.

## SUMMARY OF ARGUMENT

Judgment in HESI's favor is proper for a number of reasons.  First, BP assigned claims to "the Economic Class, only as a juridical entity and not to Economic Class Members individually."  But the Economic Class was certified for settlement purposes, and was not certified as to HESI.  BP and the Plaintiffs cannot use assignment of BP's claims to the Economic Class to circumvent the procedures and safeguards inherent in the class certification process.  Nor can class claims proceed in a limitation proceeding.  Accordingly, HESI is entitled to judgment to the extent the Economic Class attempts to assert any claims assigned to it by BP.

Second, HESI is entitled to judgment as to any claims for contribution purportedly assigned to the Economic Class (the "Assigned Contribution Claims") because BP's failure to

---

[1] Pursuant to Fed. R. Evid. 201(c)(2), HESI requests that the Court take judicial notice of: (1) the Medical Benefits Class Action Settlement Agreement as Amended on May 1, 2012 ("Medical Agreement") (Dkt. No. 6427) and the Economic and Property Damages Settlement Agreement as Amended on May 2, 2012 ("Economic Agreement") (Dkt. No. 6430) (collectively, the "Settlement Agreements"); (2) the Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services, BPM-09-00255 (the "Contract"), attached as Exhibit A to HESI's Memorandum in Support of its Motion for Summary Judgment Regarding Indemnity Issues (Dkt. No. 4767-3); (3) the December 21, 2012 Order and Reasons [Granting Final Approval of the Economic and Property Damages Settlement Agreement] (Dkt. No. 8138); and (4) the January 11, 2013 Order and Reasons [Granting Final Approval of the Medical Benefits Class Action Settlement] (Dkt. No. 8217).  *See In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 828 (E.D. La. 2010) ("[A] court may take judicial notice of items in the record of the case, related cases, and matters of public record, in reviewing a. . . motion for judgment on the pleadings.").

obtain a release for HESI is fatal to the Assigned Contribution Claims. Under general maritime law, which governs this case, a settling tortfeasor is presumed to pay only for its share of damages. Accordingly, contribution from non-settling tortfeasors is neither necessary nor permitted. The sole exception to this rule permits a settling defendant to obtain contribution if it obtains a full release for all non-settling parties. Because BP did not comply with this requirement, it had no contribution claims to assign. Thus, HESI is entitled to judgment on any contribution claims whether asserted by BP or by the Economic Class as BP's assignees.

Third, in its settlement with the Economic Class, BP waived certain defenses and made voluntary payments. HESI is entitled to judgment to the extent contribution is sought for unreasonable settlement payments. HESI is also entitled to judgment as to the Assigned Contribution Claims because BP's assignment of those claims would allow the Economic Class to improperly pursue a double recovery against HESI. Accordingly, the assignment is invalid.

Fourth, BP is required to indemnify HESI for any third-party compensatory claims arising from pollution not originating from HESI's property or equipment located above the surface of the land or water, even if HESI's gross negligence caused the pollution. Such indemnification is required whether sought directly or indirectly by contribution. Because the Assigned Contribution Claims arise from third-party claims for damages caused by pollution, BP must indemnify HESI for such claims and, accordingly, BP does not possess any claims to assign.

Fifth, the Contract prohibits BP from recovering consequential damages from HESI. As an assignee, the Economic Class can have no greater rights than its assignor. Because BP could not recover consequential damages from HESI, the Economic Class cannot do so. In any event,

under the Contract's anti-assignment provision, BP's claims against HESI are not assignable. Accordingly, HESI is entitled to judgment as to BP's claims against it for consequential damages, whether asserted by BP or by the Economic Class.

Finally, the assignment is invalid to the extent that it purports to assign BP's punitive damage claims against HESI to the Economic Class.   Maritime law would not recognize assignment of claims for punitive damages; accordingly, to the extent the Economic Class seeks to assert an assigned claim for punitive damages, HESI is entitled to judgment in its favor.

### STANDARD OF REVIEW

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion for failure to state a claim.  *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010).  A Rule 12(b)(6) motion must be granted "when the allegations in the complaint, however true, could not raise a claim of entitlement to relief." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment is appropriate where, as here, "the only issue before the court is a pure question of law." *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 450 (5th Cir. 2008) (quoting *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991)).  HESI's Alternative Motion for Summary Judgment exclusively raises legal questions.  Thus, summary judgment is a proper vehicle for the Court's review of these issues.

## ARGUMENT AND AUTHORITIES

### I.    THE ECONOMIC CLASS CANNOT PURSUE CLAIMS AGAINST HESI.

HESI is entitled to judgment as to all claims purportedly assigned by BP to the Economic Class. Under the terms of the Economic Agreement, BP assigned claims and causes of action against HESI to the Economic Class "only as a juridical entity, and not to Economic Class Members individually." (Dkt. No. 6430 at Exh. 21, §§ 1.1.3 - 1.1.3.8). The parties sought certification for settlement purposes only. *See* Memorandum in Support of Motion for Conditional and Preliminary Certification of Economic and Property Damage Class for Settlement Purposes; Appointment of Class Representatives; and Appointment of Class Counsel (Dkt. No. 6269-1 at 1).[2] However, by assigning BP's claims against HESI to the Economic Class, BP and the Economic Class have attempted to create a class action suit against HESI. No class has been certified as to HESI. Accordingly, the attempted assignment leads to an incongruous result defying the rationale and purpose of class actions. BP and the Plaintiffs may not circumvent Rule 23's procedures by merely assigning BP's claims against HESI to the Economic Class because a class action may not proceed without proper certification.

As a nontraditional litigation procedure, class actions present distinct features and permit a representative with typical claims to sue on behalf of a class provided that the representative can establish the prerequisites to class certification. *See generally Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). The case law is clear: before a class is certified, a district court must conduct a rigorous analysis to determine that certain prerequisites are met. *General*

---

[2] This Court also recognized in its Order and Reasons [Granting Final Approval of the Economic and Property Damages Settlement Agreement] ("Economic Approval Order") that "the Economic and Property Damages Class . . . may be certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), for purposes of settlement only." (Dkt. No. 8138 at 24).

*Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 573 (5th Cir. 1995).  The party seeking certification has the burden of showing that the requirements for a class action have been met.  *Applewhite*, 67 F.3d at 573.

Such was not the case here.  The Economic Class has been certified pursuant to an agreement made for settlement purposes only; it has not been certified as a class against HESI for any purpose.  *See* Economic Approval Order (Dkt. No. 8138 at 24); Order and Judgment Granting Final Approval of Economic and Property Damages Settlement and Confirming Certification of the Economic and Property Damages Settlement Class (Dkt. No. 8139 at 1).[3] Moreover, HESI was denied its requested opportunity to take discovery or make objections to the settlement or proposed classes; yet, the Economic Class now seeks to assert assigned claims against HESI.  This incongruity is unsupported by the requirements of Rule 23.

Further, the purported assignment to the Economic Class effectively creates a mandatory Litigation Class without opt-out rights.  (Dkt. No. 6430 at Exh. 21, §1.1.3) (Assignment made to the Economic Class "only as a juridical entity and not to Economic Class Members individually").  However, such a class cannot be certified to assert claims predominantly for money damages and can only be certified to seek injunctive or declaratory relief, or possibly certain forms of "incidental" monetary relief.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557-60 (2011) (explaining that Rule 23(b)(2) is meant for claims focused on injunctive and declaratory relief rather than money damages and that in a class action predominantly for money damages the absence of notice and opt-out violates due process); *see also McManus v.*

---

[3] *See also* Transcript of Final Fairness Hearing at 16 (The court need not consider difficulties of managing a class action as "there would be no trial of the class members' claims"); Class Counsel's and BP Defendants' Joint Proposed Findings of Fact and Conclusions of Law in Support of Final Approval of *Deepwater Horizon* Economic and Property Damages Settlement Agreement (Dkt. No. 7945 at 85-86) ("This settlement class may be certified for purposes of settlement only pursuant to Rules 23(a) and (b)(3).").

*Fleetwood Enters., Inc.*, 320 F.3d 545, 553-54 (5th Cir. 2003) (explaining that to preserve notice and opt-out rights damage claims must be pursued through Rule 23(b)(3) and not Rule 23(b)(2)).

Additionally, class action proceedings are forbidden in limitation proceedings. The upcoming February 2013 trial is a trial within a limitation proceeding. *See* Second Amended Pretrial Order No. 41 [Case Management Order No. 4] (Dkt. No. 6592); Pretrial Order No. 54 (Dkt. No. 8173). A class action may not be instituted in a limitation proceeding. *Lloyd's Leasing, Ltd. v. Bates*, 902 F.2d 368, 370 (5th Cir. 1990); *see also Gabarick v. Laurin Maritime (Am.) Inc.*, Civil Action No. 08-4007, 2009 U.S. Dist. LEXIS 27180, *27-28 (E.D. La. Jan. 12, 2009) ("Following *Lloyd's Leasing*, courts in this district have routinely stricken class allegations when they are filed within a limitation proceeding or dismissed class action complaints when they are filed after a limitation proceeding has been instituted.") (citations omitted).

This is so because, under Supplemental Rule A for Certain Admiralty and Maritime Claims, "[t]he Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules." The Fifth Circuit has recognized that Fed. R. Civ. P. 23 is inconsistent with the Supplemental Rules:  "the two rules are incompatible, and class representation in the sense of Rule 23 should not be allowed in limitation proceedings." *Lloyd's Leasing*, 902 F.2d at 370 (quoting Staring, *Limitation Practice and Procedure*, 53 Tul. L. Rev 1134, 1150 (1979)); *see also In re: Ingram Barge Co.*, Civil Action No. 05-4419, 2006 U.S. Dist. LEXIS 19140, *4 (E.D. La. April 12, 2006).

The Fifth Circuit gave various reasons for its holding, the "most basic"[4] of which is that the "entire thrust" of Supplemental Rule F is that each claimant appear individually, "and this is obviously inconsistent with the class action."[5]  *Lloyd's Leasing*, 902 F.2d at 370.  According to this Court:

> Claimants' arguments as to why the Fifth Circuit's holding in *Lloyd's Leasing* is not controlling in this matter ignore the third, most basic, reason the Court in that case concluded that class actions and limitation proceedings are incompatible— "that the entire thrust of Supplemental Rule F is that each claimant must appear individually. . . ."

*In re River City Towing Servs.,* 204 F.R.D. at 96; *see also Ingram Barge*, 2006 U.S. Dist. LEXIS 19140, at *4.  The same is true here.  The Economic Class's assertion of claims as a class in this limitation proceeding would violate the rule of *Lloyd's Leasing*.

Because of the procedural nature of this MDL proceeding, where trial is to be conducted in Transocean's limitation proceeding, the Economic Class cannot pursue its claims against HESI.  BP and the Economic Class have failed to follow the strict requirements for class certification against HESI, and even the class they purport to create is improper.  Further, class actions are not permitted in limitation proceedings.  Thus, HESI is entitled to judgment as to any claims asserted against it by the Economic Class.

---

[4] *See In re River City Towing Servs., Inc.*, 204 F.R.D. 94, 96 (E.D. La. 2001) (Barbier, J.).

[5] The other reasons discussed by the *Lloyd's Leasing* court for the fundamental incompatibility between the Supplemental Rules and Fed. R. Civ. P. 23 are, first, that the class action interferes with the concursus contemplated by a limitation proceeding; that is, a judgment in a limitation proceeding binds the world, while a class action permits claimants to opt out.  902 F.2d at 370.  Second, the notice requirements of a limitation proceeding are more restrictive than the notice requirements for a class action; that is, Fed. R. Civ. P. 23(c)(2) requires "individual notice to all class members who can be identified" and the "best notice practicable under the circumstances" to others, while Supplemental Rule F(4) requires "individual notice to all 'persons asserting claims' but mandates notice by publication to all others."  902 F.2d at 370.

## II. THE "SETTLEMENT BAR RULE" PRECLUDES THE ECONOMIC CLASS FROM OBTAINING A VALID ASSIGNMENT OF BP'S CLAIMS AGAINST HESI FOR CONTRIBUTION OR INDEMNITY.

In the context of a partial settlement of a plaintiff's claims against multiple defendants, general maritime law's "settlement bar rule" precludes a settling tortfeasor from asserting a claim for contribution or indemnity against a non-settling defendant, unless the settling defendant obtains a full release that expressly releases all the non-settling defendants and all other potential tortfeasors who are not named as parties to the suit. BP failed to satisfy this requirement and is thus barred from asserting any claims for contribution or indemnity against HESI. Because BP has no valid contribution or indemnity claims, it cannot assign any such claims.

### A. The Settlement Bar Rule.

#### 1. *AmClyde and Boca Grande: The Supreme Court Adopts The Proportionate Share Approach To Determining The Liability Of A Non-Settling Defendant.*

In 1994, the Supreme Court adopted the proportionate share approach for allocating liability among defendants in the context of a settlement involving less than all defendants. *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994); *Boca Grande Club, Inc. v. Fla. Power & Light Co.*, 511 U.S. 222 (1994). Under this approach, if one tortfeasor settles before trial, the non-settling defendants remain liable for their respective allocations of percentage fault as determined at trial, with no credit given for amounts paid by a settling defendant. *AmClyde*, 511 U.S. at 209; *Boca Grande Club Inc.*, 511 U.S. at 223.

A logical corollary of the proportionate share approach is that a non-settling tortfeasor cannot seek contribution against a settling tortfeasor. *See id.*; *see also Lexington Ins. Co. v. S.H.R.M. Catering Servs. Inc.*, 567 F.3d 182, 185 (5th Cir. 2009). A non-settling tortfeasor will

not be held liable at trial for more than its proportionate fault and thus a non-settling tortfeasor cannot be said to "overpay" so as to give rise to a right of contribution against other tortfeasors.

### 2.    Ondimar *and* Murphy: *The Settlement Bar Rule.*

Similarly, a settling tortfeasor has no right to seek contribution against a non-settling tortfeasor, because the settling tortfeasor is presumed to have paid only its proportionate share of liability pursuant to the settlement agreement. *Ondimar Transportes Martimos v. Beatty St. Props., Inc.*, 555 F.3d 184, 187 (5th Cir. 2009); *Murphy v. Florida Keys Elec. Co-op Ass'n, Inc.*, 329 F.3d 1311, 1314-15 (11th Cir. 2003). Such legal prohibitions against claims for contribution and indemnity are referred to as the "settlement bar rule."

Significantly, the settlement bar rule cannot be evaded by an assignment of claims to another party. *Ondimar*, 555 F.3d at 188; *Lexington*, 567 F.3d at 186. Such assignments are prohibited because they "would permit an easy end run around *McDermott's* prohibition of contribution claims between a settling defendant and a co-tortfeasor and seriously undermine *McDermott's* proportionate fault approach to dealing with partial settlement." *Ondimar*, 555 F.3d at 188. Accordingly, any such purported assignment is invalid as a matter of law. *Id.*; *Lexington*, 567 F.3d at 186; *Combo Maritime, Inc. v. United Bulk Terminal, LLC*, 615 F.3d 599, 604 (5th Cir. 2010); *Taurus Marine, Inc. v. Marin County*, 2012 AMC 317, No. C 08-3195 PJH, 2012 U.S. Dist. LEXIS 16285, at *13 (N.D. Cal. Feb. 9, 2012).

### 3.    Combo Maritime: *The Sole Exception to the Settlement Bar Rule.*

The sole exception to the settlement bar rule applies when the settling tortfeasor obtains, in conjunction with the settlement, a full release from plaintiffs expressly releasing all named

and un-named tortfeasors from liability.[6]  *Combo Maritime*, 615 F.3d at 602-604.  In *Combo Maritime*, the settling defendant obtained, as part of the settlement, an express release of plaintiff's claims against all parties by name.  *Id*. at 602.  The court permitted the settling defendant to bring a claim for contribution against the non-settling defendant, because the settling defendant had "discharged the plaintiff's entire claim as evidenced by a total release of all potential joint tortfeasors," an action which "extinguished the plaintiff's claim."  *Id*. at 604.

**B.     BP Has No Contribution Claim Because It Failed to Obtain a Release for HESI and Transocean.**

Pursuant to *Combo Maritime* and the authorities discussed *supra*, BP has failed to "extinguish" or "discharge" Plaintiffs' claims by obtaining a release of all potential tortfeasors, and thus the settlement bar rule precludes any claim by BP against non-settling defendants for contribution or indemnity.  While the Settlement Agreements contain releases of BP (with prejudice), these releases expressly exclude HESI and Transocean.  (Dkt. No. 6427 at §§II.MMMM, II.ZZZ, XVI.G) (Dkt. No. 6430 at §10.3).  To be entitled to a claim for contribution, BP must obtain an express release of all named and un-named tortfeasors. *Ondimar*, 555 F.3d at 188; *Lexington*, 567 F.3d at 186; *Combo Maritime, Inc.*, 615 F.3d at 604; *Taurus Marine, Inc.*, 2012 U.S. Dist. LEXIS 16285, at *13.  Here, the Settlement Agreements have done the exact opposite by expressly excluding HESI and Transocean from the release.

Further, the Settlement Agreements provide that the Plaintiffs retain their claims for punitive damages against HESI and Transocean.  (Dkt. No. 6427 at §§ XVI.G, II.ZZZ, II.MMMM, XVII.B.2 & 3) (Dkt. No. 6430 at §§ 10.2, 10.3).  But there is no independent claim

---

[6] Even if BP had obtained a full release for HESI's benefit, that release would not obviate the problems with an assignment of the contribution claim. *See, e.g., infra* at § IV.

for "punitive damages;" instead, a claim for punitive damages is nothing more than a distinct remedy for a valid, underlying cause of action. *See Sulzer Carbomedics v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001) (holding that punitive damages not a separate cause of action); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1333 (5th Cir. 1995) (same). As a matter of law, Plaintiffs' causes of action against HESI and Transocean are not "discharged" or "extinguished" by the Settlement Agreements if Plaintiffs are relying on the continued existence of these causes of action to support their claims for punitive damages.

BP's settlement with the Economic Class is an attempted end run around the settlement bar rule and thus HESI is entitled to judgment as to the Assigned Contribution Claims. *Ondimar*, 555 F.3d at 186, 189 (affirming district court's summary judgment dismissing claims against non-settling defendant where settling party failed to obtain release of all potential tortfeasors); *Lexington*, 567 F.3d at 186 (affirming district court's grant of 12(b)(6) motion to dismiss where plaintiff did not release non-settling tortfeasor); *Murphy*, 329 F.3d at 1314 (affirming summary judgment dismissing contribution claims against third-party defendant who was not released as part of the settlement); *Taurus Marine*, 2012 U.S. Dist. LEXIS 16285 at *1, 13 (granting summary judgment dismissing claims for contribution and indemnity against non-settling party not released as part of settlement agreement). As assignees, Plaintiffs can have no greater rights than BP possessed. *Fla. Bahamas Lines, Ltd. v. Steel Barge "Star 800"*, 433 F.2d 1243, 1246 (5th Cir. 1970). Because BP has no valid claims for contribution and indemnity against HESI, the Economic Class cannot obtain any such claim from BP by assignment. Accordingly, this Court should dismiss any claims for contribution or indemnity against HESI whether brought by BP, or which may be brought by the Economic Class as BP's assignees.

## III.   PLAINTIFFS ARE NOT ENTITLED TO CONTRIBUTION FOR SETTLEMENT PAYMENTS THAT BP VOLUNTARILY MADE.

Even aside from the settlement bar rule, HESI cannot be liable in contribution for payments BP made voluntarily. *See Durgin v. Crescent Towing & Salvage, Inc.*, No. Civ. A 00-1602, 2002 U.S. Dist. LEXIS 20126, *11 (E.D. La. Oct. 18, 2002). Rather, BP (and the Economic Class, as BP's assignees) are only entitled to contribution, if at all, for reasonable settlement payments. *Id.* at *12-15 (holding that under general maritime law, where cross-plaintiff paid disputed amounts above and beyond maintenance and cure prior to the filing of plaintiff's lawsuit, these pre-suit payments in excess of its legal liability were unreasonable as a matter of law, thus precluding contribution or indemnification for the excess portion).[7] Moreover, it is the burden of the party seeking contribution to establish that the settlement was reasonable. *Traveler's Ins. Co. v. United States*, 283 F. Supp. 14, 31 (S.D. Tex. 1968); RESTATEMENT (SECOND) OF TORTS §886A cmt. d (1979); *see also Durgin*, 2002 U.S. Dist. LEXIS 20126 at *12-13 ("Generally speaking, an indemnitee must establish actual liability on his part to recover payment from an indemnitor."). This Court's determination that the settlement is <u>fair</u> to Plaintiffs has no effect on whether the settlement is <u>reasonable</u> for purposes of contribution, because the Court did not consider this question, and because the Court specifically held that "the proposed settlements will in no way affect any procedural or substantive rights of Halliburton." Order [regarding Halliburton's and Louisiana's requests for settlement discovery] (Dkt. No. 7038 at 2); *see also* (Dkt. No. 8138 at 17 & n.13) (recognizing that the Settlement Agreement "purports to assign certain of BP's spill-related claims against Transocean and [HESI]

---

[7] *See also* RESTATEMENT (SECOND) OF TORTS §886A cmt. d (1979) ("In particular, when a tortfeasor without suffering a judgment against him has voluntarily made a settlement with the plaintiff and a payment that exceeds any amount that would be reasonable under the circumstances, he should not be permitted to inflict liability for contribution regarding the excess upon another tortfeasor who has not entered into the same settlement.").

to the class" and noting that in "approving this Settlement, the Court does not express any opinion as to the validity of these assignments.").

In fact, the Economic Agreement encompasses payments that are entirely voluntary. For example, it includes payments in the form of "Risk Transfer Premiums," defined as amounts "paid to a Claimant for any and all alleged damage, including potential future injuries, damages or losses not currently known, which may later manifest themselves or develop, arising out of, due to, resulting from, or relating in any way to the Deepwater Horizon Incident, and any other type or category of damages claimed, including claims for punitive damages."[8] (Dkt. No. 6430 at §38.126). Additionally, BP voluntarily waived the OPA cap, instead agreeing to unlimited liability;[9] agreed to make payments as part of the "Seafood Compensation Program" that "exceeds the annual revenue of these industries many times over;"[10] agreed to create a $57 million fund to promote the Gulf Coast;[11] and agreed to pay attorneys' fees and costs.[12]

---

[8] As HESI discusses in more detail in its Memorandum in Support of Motion for Judgment on the Pleadings or Alternative Motion for Summary Judgment Regarding Punitive Damages, HESI cannot be liable in contribution for punitive damages.

[9] *See, e.g.,* PSC's and BP Defendants' Memorandum in Support of Joint Motion for (1) Preliminary Approval of Class Action Settlement, (2) Scheduling a Fairness Hearing, (3) Approving and Issuing Proposed Class Action Settlement Notice, and (4) BP's Motion for Adjourning the Limitation and Liability Trial ("Joint Motion") (Dkt. No. 6266-1 at 5) ("With the exception of the Seafood Compensation Program, there is no limit or 'cap' on the amount to be paid by BP under these programs.  Rather all claims that meet the criteria for each program will be paid in full."); *Id.* at 28 ("In this settlement, the total recovery that BP has agreed to provide is uncapped; BP's initial estimates place its cost at approximately $7.8 billion."); *see also* 33 U.S.C. §2704 (2006) (OPA limitation of liability provision).

[10] *See, e.g.,* Joint Motion (Dkt. No. 6266-1 at 23-24).

[11] *See* Transcript of Final Fairness Hearing at 30.  According to counsel for Plaintiffs, this provision is not "mandated by OPA, we sure don't believe it's mandated by General Maritime Law, and don't see how such would have been the result of trying a case and getting an order from the Court to set up such a fund."  *Id.*

[12] *See* (Dkt. No.  6430 at §§ 5.16, 14.1, Exh. 27 at ¶2).  As this Court has recognized, attorneys' fees are not recoverable under general maritime law.  *See* Order and Reasons [As to Motions to Dismiss the B1 Master Complaint] (Dkt. No. 3830) ("B1 Order") at 35-37.

Moreover, the Economic Agreement waives various defenses, including limitations periods,[13] satisfaction of OPA's presentment requirement,[14] proper causation proof,[15] and proper damage proof.[16]  *See* Economic Approval Order (Dkt. No. 8138 at 12) ("The Settlement Agreement is flexible in allowing even individuals who lack tax documentation or pay period documentation of earnings to rely on sworn written statements."); Transcript of Final Fairness Hearing at 45-46 (describing "liberal" methods of proving damages).

The Economic Agreement also includes damages for which HESI would not be liable at trial.  For example, OPA permits a contribution action "against any other person who is liable or potentially liable under this Act or another law."  33 U.S.C. §2709 (2006).  HESI is not a Responsible Party under OPA,[17] and, under general maritime law, HESI is not liable for economic losses of Plaintiffs who are not commercial fishermen or who have not suffered physical injury to a proprietary interest.  *See* B1 Order (Dkt. No. 3830 at 24-25).  Because HESI is not liable under OPA and has only potential, limited liability under general maritime law,[18] HESI cannot be held liable in contribution for damages outside the scope of its potential liability.

---

[13] (Dkt. No. 6430 at ¶7.3.1).

[14] (Dkt. No. 6430 at ¶7.3.2).

[15] *See, e.g.,* Economic Approval Order (Dkt. No. 8138 at 11) ("Some business claimants must demonstrate that the spill caused their losses.  In many other cases causation is presumed."); *see also* Transcript of Final Fairness Hearing at 44 ("[P]rocessors are treated pretty favorably under the agreement. . . causation is presumed throughout the entire geographic zone of the class."); *id.* at 68 ("We're presuming causation for whole sections of the settlement class depending on where you reside and the nature of the your business.").

[16] Not only does BP's waiver of these defenses affect whether the settlement amounts are reasonable, such waivers cannot be binding on HESI, as this Court has recognized.  The Court specifically held that "the proposed settlements will in no way affect any procedural or substantive rights of Halliburton."  Order [regarding Halliburton's and Louisiana's requests for settlement discovery] (Dkt. No. 7038 at 2).

[17] Plaintiffs have acknowledged that "[t]he Coast Guard has named BP as the responsible party for the downhole release of oil and Transocean as the responsible party for the release of diesel on the surface."  B1 Master Complaint at ¶680.  HESI has not been designated an OPA Responsible Party.

[18] HESI does not waive and specifically reserves its arguments more fully set forth in its Motion to Dismiss Plaintiffs' First Amended Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1]

Accordingly, HESI is entitled to judgment for any contribution claims for settlement payments that are not reasonable, that are voluntary, that are subject to defenses waived by BP, or for which HESI is not liable as a matter of law.

## IV.    ANY RECOVERY BY PLAINTIFFS ON BP'S CLAIMS FOR CONTRIBUTION WOULD RESULT IN AN IMPERMISSIBLE DOUBLE RECOVERY.

The Economic Agreement purports to fully satisfy the Economic Class's claims for compensatory damages. Thus, any recovery by the Economic Class as assignee of BP's claims for contribution against HESI would result in a double recovery because the Economic Class has been compensated once for their full compensatory damages. (Dkt. No. 6430 at Exh. 21, §1.1.1) ("The Economic Class, Plaintiffs, and all Economic Class Members agree and acknowledge that the Settlement Payment(s), in addition to constituting consideration from the Released Parties, also constitute full, complete, and total satisfaction of all of their Compensatory Damages against the Transocean Parties and the Halliburton Parties."). In asserting BP's claims for contribution relating to payments BP made pursuant to the Economic Agreement against HESI, the Economic Class would be seeking to recover a second time for the same injuries for which they were fully compensated. Because such a double recovery is impermissible, Plaintiffs are not entitled to pursue the contribution claims. *See, e.g., Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 423 n.10 (2009) ("The fact that, in some cases, a violation of the duty of maintenance and cure may also give rise to a Jones Act claim is significant only in that it requires admiralty courts to ensure against a double recovery.") (citations omitted); *In re Complaint of Weeks Marine, Inc.*, Civ. No. 04-0494, 2006 U.S. Dist. LEXIS 52838, *26-33 (D.N.J. Aug. 1, 2006) (finding where settlement

---

Section III.B.(3) (Dkt. No. 2466) and supporting Memorandum (Dkt. No. 2466-1); and HESI's Motion to Dismiss Plaintiffs' Master Complaint for Economic Losses (Bundle B1) (Dkt. No. 1429) and supporting Memorandum (Dkt. No. 1429-1) regarding OPA's displacement of general maritime law and its effect in these proceedings.

with insurance carrier fully compensated plaintiff, plaintiff could not pursue assigned equitable subrogation claims against defendants: "[a]ny such additional recovery would constitute an impermissible double recovery.").   Accordingly, judgment in HESI's favor is proper.

**V.   BP'S CONTRIBUTION CLAIMS ARE INVALID BECAUSE BP MUST INDEMNIFY HESI FOR SUCH CLAIMS.**

In addition to the previously enumerated bars to BP's assignment of its alleged contribution claims, the Contract provides independent reasons to reject such assigned claims.

In its January 31, 2012 Order, the Court ruled that BP is required to indemnify HESI for third-party compensatory claims that arise from pollution or contamination that did not originate from HESI's property or equipment located above the surface of the land or water, even if HESI's gross negligence caused the pollution.   *See* Order and Reasons [As to Halliburton's and BP's Cross-Motions for Partial Summary Judgment Regarding Indemnity] (Dkt. No. 5493 at 3). Section 19.7(b) of the Contract states that "[a]ll exclusions, releases of liabilities and indemnities given under this Clause . . . shall apply whether or not the claim, liability, damage or expense in question is . . . sought directly <u>or indirectly</u> by way of recovery, indemnification, <u>or contribution</u> by <u>any</u> person or entity against . . . Contractor Group."   Contract at § 19.7(b) (emphasis added).

BP's claims for contribution necessarily arise from third-party claims for damages caused by pollution—BP contends that it has overpaid its proportionate share of damages and that HESI therefore owes BP contribution.   But no such claim is possible pursuant to Section 19.7(b) of the Contract because BP is precluded from recovery of such claims whether brought "indirectly" (by assignment to Plaintiffs) or by denominating such claims as claims for "contribution."

Moreover, as recognized by this Court, under the terms of the Contract, HESI is entitled to indemnification if Plaintiffs sue HESI directly for such claims.   Under § 19.7(b), HESI is

likewise entitled to indemnification where Plaintiffs sue BP for these claims; BP purports to overpay for such claims; and BP then seeks to expose HESI to liability for precisely the same damages. BP cannot evade its indemnity obligations under the Contract under the guise of a claim for contribution. Because BP must indemnify HESI for any such claims, BP does not possess any such claims to assign.[19]

## VI.   HESI IS ENTITLED TO JUDGMENT AS TO ANY CLAIM BY THE ECONOMIC CLASS FOR RECOVERY OF CONSEQUENTIAL DAMAGES.

BP and HESI entered into the Contract for the provision of cementing operations and related services. The Contract is a maritime contract and thus general maritime law applies. *See Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 380, 383 (5th Cir. 2005); *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 497 (5th Cir. 2002) *overruled in part on other grounds*, *Grand Isle Shipyards Inc. v. Secor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). When interpreting a maritime contract, a court must employ the general rules of contract construction and interpretation. *Consol. Grain & Barge Co., Inc. v. Capital Marine Supply, Inc.*, No. 99-0813, 2001 U.S. Dist. LEXIS 10477, at *7 (E.D. La. July 19, 2001). "Each provision of a contract must be read in light of the other provisions so as to give each the meaning reflected by the contract as a whole." *Id.* at *8 (quoting *Computalog U.S.A., Inc. v. Mallard Bay Drilling, Inc.*, 21 F.Supp. 2d 620, 624 (E.D. La. 1998)). "Finally, each provision of a contract must be given a meaning which renders it, along with all other provisions, effective rather than meaningless." *Id.*

---

[19] In the Economic Agreement, the Economic Class specifically agrees that it cannot recover on any of the claims assigned to it by BP to the extent HESI is seeking indemnification for those damages, until a "court or tribunal of competent jurisdiction has finally determined" that HESI is not entitled to such indemnification. (Dkt. No. 6430 at Exh. 21, §1.1.2.4).

Pursuant to the terms of the Contract, BP affirmatively agreed to indemnify, release, defend and hold HESI harmless for any consequential losses BP may incur as a result of the Incident. *See* Contract at §21. The Contract defines "consequential loss" as:

> special, incidental, punitive, or consequential losses or damages, including without limitation loss of production, loss of product, loss of use, loss of business and business interruption and loss of revenue, profit or anticipated profit whether direct or indirect arising from or related to the performance of the CONTRACT and whether or not such losses were foreseeable at the time of entering into the CONTRACT . . .

*Id.* The Contract also provides indemnities and releases for HESI relating to other claims that BP has attempted to assign to the Economic Class. *See, e.g.*, Contract at §19.4 (pollution claims); *id.* at §19.6 (a) (damages resulting from loss or damage to the well); *id.* at §19.6 (b) (claims for blowout or uncontrolled well condition); *id.* at §19.6 (c) (damage to any reservoir).

Because the terms of the Contract are clear and direct, each provision must be enforced. *See Reliant Energy Services, Inc. v. Enron Can. Corp.*, 349 F. 3d 816, 822 (5th Cir. 2003) (The plain language of the contract is the best measure of the parties' intent.). BP cannot assign, and the Economic Class cannot pursue, any claims for BP's alleged consequential losses against HESI. Such claims are barred under the terms of the Contract. *See* Contract at §19.4, §19.6 (a)-(c), §21.

In *Tex. E. Transmission LP v. Century Exploration New Orleans, Inc. et al.*, the Eastern District of Louisiana examined a similar consequential loss provision. *See Tex. E. Transmission*, 2006 U.S. Dist. LEXIS 86888 (E.D. La. Nov. 28, 2006) (Fallon, J.). There, Texas Eastern Transmission, LP ("Texas Eastern"), filed suit against Century Exploration New Orleans, Inc. ("Century") and Parker Drilling Offshore USA, LLC ("Parker"), among others, for damages due to the improper positioning of a drilling vessel over a pipeline in the Gulf of Mexico. *Id.* at *3.

According to Texas Eastern, the drilling vessel was improperly positioned and though no major accident occurred, Texas Eastern was forced to pull the pipeline from service for inspection and other precautionary measures, remove explosive hydrocarbons from the pipeline, and incur other related costs. *Id.* In total, Texas Eastern claimed over one million dollars in damages. *Id.* at *4. Cross claims and counter-claims were filed, including a cross claim by Parker against Century for contractual indemnification. *Id.* at *5.

Parker moved for summary judgment on its claim for indemnity and defense. Pursuant to the terms of the Domestic Daywork Drilling Contract between Parker and Century, Century agreed to indemnify, release and hold Parker harmless for "all resulting damage." *Id.* at *7-*8. Specifically, the contract provided:

> Operator [Century] will be responsible for providing access to the drilling site, as well as selecting, marking, and clearing drilling locations, for providing proper and sufficient certificates, including, without limitation, the Certificate of Financial Responsibility required pursuant to the OCS Lands Act as amended, permits or permission necessary to enter upon and operate on the drilling site, and for notifying Contractor [Parker] of any impediments or hazards to operations at each drilling location or within the anchor pattern, including any pipelines, cables, boulders, mud filled depressions or faulty bottom conditions in the area. Operator will also provide Contractor with soil and sea bottom condition surveys at each drilling location hereunder adequate to satisfy Contractor's Marine Surveyor.

> Notwithstanding any other provision of this Contract, should there be obstructions at or within the area of the drill site, including the anchor pattern, or faulty bottom conditions and these obstructions or faulty bottom conditions damage Contractor's items, or Contractor's items damage these obstructions, or if seabed conditions prove unsatisfactory to properly support or moor the Drilling Unit during operations hereunder, Operator will be responsible for and hold harmless and indemnify Contractor for all resulting damage, including payment of Standby Rate during required repairs, but Operator will receive credit for any physical damage insurance proceeds received by the Contractor as a result of any such damage to the Drilling Unit.

*Id.* (emphasis omitted).  After reciting the applicable law and rules of construction under general maritime law, Judge Fallon found the contract provision enforceable, refusing to limit the second paragraph of the indemnity provision to consequential damages only in instances where physical damage occurs.  *See id.* at *10-11.  While an assignment of claims was not at issue in *Texas Eastern Transmission*, the fact that BP has assigned its claims to the Economic Class does not negate the force and effect of the consequential loss provision in the Contract.  Under the terms of the Contract, BP cannot recover from HESI any consequential losses arising from the Incident.  BP's assignment does not change that result.  BP cannot assign a claim it does not have.  *See Florida Bahamas Lines, Ltd.*, 433 F.2d at 1246.  Accordingly, HESI is entitled to judgment to the extent the Economic Class, as purported assignee, seeks to recover for BP's claims for consequential losses.

## VII.   BP'S PURPORTED ASSIGNMENT OF CLAIMS VIOLATES THE ANTI-ASSIGNMENT PROVISION IN THE CONTRACT.

BP's purported assignment of claims to the Economic Class is also invalid pursuant to section 8.1 of the Contract, and HESI is entitled to dismissal of all assigned claims.[20]  The Contract's anti-assignment clause provides:

> COMPANY is entitled to assign the CONTRACT or any part of it or any benefit or interest in or under it to any CO-VENTURER or AFFILIATE of COMPANY. In addition, COMPANY may make any such assignment to any other third-party **but only with the prior agreement of CONTRACTOR** which shall not unreasonably be withheld or delayed.

Contract at § 8.1 (emphasis added).

---

[20] BP agreed that, should any assignment be held invalid, it would not "seek to pursue the assigned claims that were the subject of the invalidated assignment." (Dkt. No. 6430 at Exh. 21, §1.1.4.6).

The Contract obligated HESI to perform cementing operations and provide certain other related support services in the Gulf of Mexico. Pursuant to the Contract, in the spring of 2010 HESI performed cementing operations and other support services for BP on the Mobile Offshore Drilling Unit *Deepwater Horizon*. Thus any claims that BP may have against HESI relating to or arising from the blowout of the Macondo well are claims that are a "benefit or interest in or under" the Contract. It is undisputed that HESI has not consented to BP assigning any such "benefit or interest in or under" the Contract to the Economic Class. And it is beyond dispute that it is not "unreasonable" for HESI to withhold consent to preclude BP from assigning claims so that the Economic Class can sue HESI for damages.

Courts regularly enforce anti-assignment clauses such as that in the Contract and consistently invalidate assignments prohibited by such clauses. *See, e.g., Allhusen v. Caristo Constr. Corp.,* 103 N.E.2d 891, 892-93 (N.Y. 1952) (affirming summary judgment for defendant because anti-assignment clause barred plaintiff from pursuing claims obtained by assignment); *Cloughy v. NBC-Bank-Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex. App.--San Antonio 1989, writ denied) (holding purported assignment of rights to be "invalid" because anti-assignment clause required consent of defendant). And the Contract language is actually broader than the language typically encountered in cases considering anti-assignment clauses. The Contract does not merely prohibit the assignment of "the contract" without HESI's consent, but also prohibits assignments of "any benefit or interest in or under" the Contract. *See* Contract at § 8.1.

Courts confronted with broad contractual language, such as references to "any . . . interest," have held that such language may manifest an intent to prohibit the assignment of claims or causes of action arising from or related to the contract. *See e.g., SME Indus., Inc. v.*

HALLIBURTON ENERGY SERVICES, INC.'S MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVE MOTION FOR
SUMMARY JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS
2048178 v6-24010/0002 PLEADINGS

PAGE 21

*Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 675 (Utah 2001) (considering anti-assignment clause which stated "Neither the CONSULTANT . . . nor the COUNTY shall assign, sublet or transfer its *interest* in this Agreement without the written consent of the other.") (emphasis added).   The language of the Contract is even broader than the language in *SME Industries* because it refers to "<u>any</u> benefit or interest <u>in</u> or <u>under</u>" the Contract, which necessarily includes the claims that BP purports to assign.   *See* Contract at §8.1 (emphasis added).   For example, in *Emery Resource Holdings, LLC v. Coastal Plains Energy, Inc.*, Case No. 2:08-cv-907, 2010 U.S. Dist. LEXIS 29341, *14-15 (D. Utah March 26, 2010), the court held that an anti-assignment clause did not bar an assignment of causes of action under the contract because the anti-assignment language did not refer to "any interest" in the contract but instead merely prohibited an assignment of an interest in the land or in the royalties.   The court expressly noted that the phrase "any interest" was lacking in *Emery Resource Holdings*; however, what was lacking in *Emery Resource Holdings* is precisely the language that is present in section 8.1 of the Contract.   *Id.*

Section 8.1 expresses the intent of both HESI and BP to forbid the assignment of claims relating to the Contract and that intent is also reflected within the four corners of the Contract. Section 27.12 makes clear that no third party beneficiaries are intended.   *See* Contract § 27.12. More to the point, sections 19 and 21 create very broad indemnity provisions for third party claims (including claims for gross negligence),[21] and for claims by BP for consequential loss. *See id.* at §§ 19, 21.   The contracting parties intended for HESI to be indemnified for claims brought by third parties and to be released for direct claims by BP.   Consistent with the anti-

---

[21]  In its January 31, 2012 Order, the Court ruled that BP was required to indemnify HESI for third-party compensatory claims even if HESI's gross negligence caused the pollution. (Dkt. No. 5493).

assignment provision of the Contract, the parties plainly did *not* intend for BP to shirk its duties under the indemnification and consequential loss clauses, and then add insult to injury by assigning such claims to plaintiffs despite HESI's lack of consent.  Based on the plain language of the Contract, BP's purported assignment of claims to the Economic Class is invalid.

## VIII.   BP'S CLAIMS AGAINST HESI FOR PUNITIVE DAMAGES ARE NOT ASSIGNABLE AS A MATTER OF LAW.

HESI is entitled to judgment to the extent the claims that BP assigned to the Economic Class include claims for punitive damages against HESI.  Assuming that general maritime law permits the assignment of property damage claims, it would not permit the assignment of claims for punitive damages.  Accordingly, such an assignment is invalid as a matter of law.

In *Ondimar*, as discussed *supra*, the Fifth Circuit considered the validity under general maritime law of an injured party's assignment to a settling tortfeasor of its claim against a non-settling tortfeasor.  555 F.3d at 186-88.  Such an assignment would be invalid, according to the Fifth Circuit, if assignment of property damage tort claims is "generally prohibited by law," because the courts "look to the common law as a 'guide to interpretation of federal admiralty principles.'"  *Id.* at 187 (quoting *Casino Cruises Inv. Co., L.C. v. Ravens Mfg.* Co., 60 F. Supp. 2d 1285, 1287 n.2 (M.D. Fla. 1999)); *see also Lexington*, 567 F.3d at 185 ("This Court has not yet addressed the issue of whether such assignments of unliquidated tort personal injury claims are generally permissible under federal maritime law.  In the absence of any direct authority, admiralty courts may look to the common law for guidance.");  *Marastro Compania Naviera, S.A. v. Canadian Mar. Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992) (holding that in the absence of a maritime rule, courts should apply general common law).

HALLIBURTON ENERGY SERVICES, INC.'S MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVE MOTION FOR
SUMMARY JUDGMENT REGARDING BP'S ASSIGNMENT OF CLAIMS
2048178 v6-24010/0002 PLEADINGS

PAGE 23

But assignment of claims for punitive damages is not "generally permissible" by the law. For example, according to the Northern District of Ohio, applying California and Ohio law and addressing an assignment of claims for fraudulent and negligent misrepresentation and fraudulent inducement:

> CadleRock does not seriously dispute, nor can it dispute, that California law bars the recovery of punitive damages by an assignee. The Court thus finds that CadleRock's claims for punitive damages as to the Fourth and Fifth counts are barred.
>
> Alternatively, even if Ohio law were to apply to CadleRock's punitive damages claims set forth in the Fourth and Fifth Counts, the Court's research suggests that an Ohio court would decline to recognize claims for punitive damages by an assignee. As explained by courts in numerous other jurisdictions, the "weight of authority seems to be against an award of punitive damages . . ." in favor of an assignee. Courts have reasoned in favor of such a result because "part of the damage arises from the personal tort aspect . . ." of the cause of action, and "the transfer of such right is against public policy . . ."

*In re: Commercial Money Center*, 603 F. Supp. 2d 1095, 1128 (N.D. Ohio 2009) (citations omitted); *see also Colony Bank Worth v. 150 Beachview Holdings, LLC (In re Fry)*, No. 03-20394, 2007 Bankr. LEXIS 4743 (Bankr. S.D. Ga. Mar. 24, 2007) (applying Georgia law); *Md. Cas. Co. v. Brown*, 321 F. Supp. 309, 311 (N.D. Ga. 1971) (While Georgia statute permitted assignment of a cause of action involving a property right, punitive damages are not a property right); *In re: Drazan v. Atl. Mut. Ins. Co.*, No. C 10-01371, 2010 U.S. Dist. LEXIS 64345 (N.D. Cal. June 29, 2010) (holding punitive damages not assignable under California law).[22]

A similar issue was addressed by the Texas Supreme Court in *PPG Indus., Inc. v. JMB/Houston Ctr. Partners Ltd. P'ship*, 146 S.W.3d 79, 83 (Tex. 2004). There, the court analyzed whether Texas Deceptive Trade Practices Act ("DTPA") claims were assignable. The

---

[22] Other courts have permitted such assignments. *See United Heritage Prop. & Cas. Co. v. Farmers Alliance Mut. Ins. Co.*, No. Civ. 1:10-456, 2012 U.S.. Dist. LEXIS 17592, *11-18 (D. Idaho Feb. 9, 2012) (citing cases).

court noted that in addressing assignability, courts often distinguish between claims that are property-based and remedial and claims that are personal and punitive and that property-based claims are assignable, while personal and punitive claims are not. *Id.* at 87. The court went on to state that DTPA claims are punitive, rather than remedial. *Id.* at 89. In this respect, although the DTPA overlaps many common law causes of action, parties plead a DTPA claim because it is the most favorable remedy, offering treble damages. *Id.* According to the court, the most important role of the DTPA is the remedies it adds, not the ones it duplicates; in other words the DTPA adds mental anguish and punitive damages — damages that could hardly be more personal. *Id.* Accordingly, the court reasoned that based on the punitive and personal nature of DTPA claims and damages, among other reasons, assignments of DTPA claims are precluded. *Id.* at 92.

The same is true here. BP has no right to assign any claims it may have for punitive damages. Accordingly, HESI is entitled to judgment that, to the extent the claims assigned by BP to the Economic Class include claims for punitive damages, the assignment is invalid.

## CONCLUSION AND PRAYER

For the foregoing reasons, HESI asks that the Court grant it judgment on the pleadings or, alternatively summary judgment as to claims assigned by BP to the Economic Class and all other relief to which it is entitled.

Dated: January 17, 2013.

Respectfully Submitted,

**GODWIN LEWIS PC**

By: _/s/ Donald E. Godwin_
Donald E. Godwin
_Attorney-in-charge_
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
Floyd.Hartley@GodwinLewis.com
Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332
and
R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Jerry C. von Sternberg
State Bar No. 20618150
Jerry.VonSternberg@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Halliburton Energy Services, Inc.'s Motion for Judgment on the Pleadings or Alternative Motion for Summary Judgment Regarding BP's Assignment of Claims has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 17th day of January, 2013.


/s/ Donald E. Godwin
Donald E. Godwin