UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010<br><br>This document applies to:<br>*ALL CASES* | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRANSOCEAN'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO CLAIMS ASSIGNED UNDER SETTLEMENT AGREEMENT

Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively "Transocean"), respectfully submits this Memorandum of Points and Authorities in Support of Transocean's Motion for Partial Judgment on the Pleadings as to Claims Assigned Under Settlement Agreement. For the reasons set forth below, the Court should grant Transocean's Motion for Partial Judgment on the Pleadings as to the plaintiffs' claims assigned under settlement agreement.

## INTRODUCTION

This motion challenges all claims against Transocean purportedly assigned by BP to the PSC's "Economic Class" under the Economic and Property Damages Settlement Agreement (the "Settlement Agreement" or the "Settlement"). These claims include both BP's claims for reimbursement of payments made under the Settlement Agreement (referred to herein as the "Contribution Claims") and BP's separate claims for spill-related damages, such as lost profits

1

Tab 20

from the well (referred to as the "Damages Claims").  For both procedural and substantive reasons, this Court should grant judgment to Transocean on these claims.

### *The Economic Class Cannot Assert Any Of The Assigned Claims*

The "Economic Class" to be certified under the Settlement Agreement cannot assert either the Contribution Claims or the Damages Claims (collectively, the "Assigned Claims") for multiple and independent reasons.  First, the Economic Class, if certified, will be certified only for purposes of settlement.  Plaintiffs have not sought and are not entitled to certification for litigation purposes, an analysis that requires consideration of different factors, including the manageability of the class, than this Court has undertaken to date.

Second, even if certification of a litigation class was sought and approved, none of the Assigned Claims could be asserted herein because class action claims cannot be asserted in a Limitation of Liability Action.

Third, even if a class could be certified and proceed herein, the creation of the Economic Class as a "juridical entity" under the Settlement Agreement effectively creates a mandatory Rule 23(b)(2) class, which does not allow class members to opt out.  Under settled law, mandatory classes are entitled to pursue only injunctive relief, not damages.

For these procedural reasons alone, this Court should grant judgment to Transocean on all claims assigned to the Economic Class under the Settlement Agreement.

### *As A Matter Of Law, The Economic Class Cannot Recover On The Contribution Claims*

Even if the procedural hurdles to the assertion of any claims by the Economic Class could be overcome, Transocean is entitled to judgment on the Contribution Claims, again for numerous reasons.

First, BP is not entitled to contribution here and thus cannot assign any such right to the Economic Class. A settlement by one joint tortfeasor that does not fully extinguish the liability of all potential joint tortfeasors cannot be the basis of a contribution claim. In this case, the Economic Class expressly reserved its claims again Transocean and other defendants for punitive damages. Because, on the face of the Settlement Agreement, Transocean is still subject to potential liability on those claims, BP has no right to contribution and therefore no contribution claims to assign.

Second, a settlement can be a permissible basis for a contribution claim only if the settlement is a reasonable approximation of compensatory damages. The amounts to be paid here, as both the PSC and BP told this Court, represent a "premium" payment by BP "that exceeds these claimants' true aggregate losses." (Rec. Doc. 7104, pp. 1, 39; Transcript of Final Fairness Hearing Proceedings, Nov. 8, 2012, at 60 [hereafter, "Final Fairness Hr'g Tr."].) The settlement payments include punitive components and reflect a voluntary waiver of the OPA cap on damages. The law does not permit a settling tortfeasor to agree, for its own reasons, to make voluntary payments in order to resolve litigation and then require other defendants to contribute to the settlement.

Third, the difficulty of extracting the compensatory damages element of the Settlement Agreement is further complicated by BP's agreement to give up numerous substantive defenses that could be asserted against individuals or groups of claimants. A settlement agreement cannot be enforced in a manner that deprives a nonsettling party of substantive legal rights. BP's waiver of defenses is not binding on Transocean, meaning that Transocean, the Court and the remaining parties would have to untangle the various payments and procedures to which BP agreed in order to evaluate the compensatory elements of the payments. This process would effectively require

3

mini-trials on each claim paid under the Settlement Agreement in order to see how much of that payment can be used as a basis for the Contribution Claims.

Finally, allowing the Economic Class to pursue BP's Contribution Claims would result in an improper double recovery for the same injuries. The Economic Class has expressly acknowledged full satisfaction of its compensatory damage claims against Transocean and Halliburton.    Under established equitable principles and the "one-satisfaction" rule, an assignment that results in a double recovery should be held invalid.

Accordingly, this Court should hold that the assignment to the Economic Class of BP's Contribution Claims against Transocean is invalid and grant judgment to Transocean on those claims.

## BACKGROUND

On April 18, 2012, BP and the plaintiffs entered into an Economic and Property Damages Settlement Agreement (the "Settlement Agreement" or the "Settlement").[1]   (Rec. Doc. 6276, 6430.)    The Settlement Agreement includes an acknowledgement of full satisfaction of the PSC's compensatory damages claims against both Transocean and Halliburton:  "The Economic Class, Plaintiffs, and all Economic Class Members agree and acknowledge that the Settlement Payment(s), in addition to constituting consideration from the Released Parties, also constitute full, complete, and total satisfaction of all of their Compensatory Damages against the Transocean Parties and the Halliburton Parties."  (Rec. Doc. 6430-39, ¶¶ 1.1.1, 1.1.2.2; *see* Rec. Doc. 6430, ¶ 4.4.10.3.)   The Settlement Agreement defines Compensatory Damages to include,

---

[1] BP and the plaintiffs have also entered into a Medical Benefits Settlement Agreement.  (Rec. Doc. 6273.)  Both agreements are subject to final approval by the Court.

*inter alia,* damages "resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident." (Rec. Doc. 6430-39, ¶ 2.4.)

As part of the Settlement, BP also purports to assign to the PSC's "Economic Class, only as a juridical entity and not to Economic Class Members individually," a number of claims against Transocean and Halliburton. These claims include, with certain exceptions, BP's claims to "indemnity, subrogation, or contribution for claims paid by BP and/or GCCF" before entry of the preliminary approval order, and all claims to "pursue reimbursement of Settlement Payment(s) under theories of indemnification, contribution, subrogation, or any other theory of recovery." (Rec. Doc. 6430-39, ¶¶ 1.1.3, 1.1.3.4, 1.1.3.5.) These claims are referred to herein as the "Contribution Claims."

The Assigned Claims also include BP's claims for "damages related to the repair, replacement, and/or re-drilling of the MC-252 Well"; "economic damages for the loss of the MC-252 Well, including lost profits, lost hydrocarbons, and diminution in value of the leasehold"; and "costs that BP incurred to control the MC-252 Well and/or to respond to, contain, and/or clean up the DWH Spill." (Rec. Doc. 6430-39, ¶¶ 1.1.3.1, 1.1.3.2, 1.1.3.3.)[2] These claims are referred to herein as the "Damages Claims."

Notwithstanding the PSC's acknowledgement that no further compensatory damages may be sought from Transocean, the Settlement Agreement makes clear that the "Released Parties" as defined therein do not include Transocean or Halliburton. (Rec. Doc. 6430, ¶ 10.3.) To the contrary, the "Economic Class...Members specifically reserve its and their rights for punitive

---

[2] The Settlement also purports to assign BP's claims for punitive damages against Transocean to the Economic Class. (Rec. Doc. 6430-39, ¶ 1.1.3.6.) Because none of the underlying assigned claims can be brought, any punitive damages claims must necessarily fail as well, because plaintiffs who have no compensatory claims are not entitled to a punitive award. *See* Transocean's separately filed Motion for Partial Judgment on the Pleadings as to Claims for Punitive Damages (Rec. Doc. 8105).

and exemplary damages against Transocean and Halliburton." (*Id.*; *see* Rec. Doc. 6430-39, ¶ 2.4.)  "In addition, the Economic Class specifically reserves its rights under the Assigned Claims." (Rec. Doc. 6430, ¶ 10.3.)

BP explicitly disclaimed any warranty to the PSC "regarding the validity, value, enforceability, defenses to, or assignability" of claims covered in the Settlement Agreement. (Rec. Doc. 6430-39, ¶ 1.1.4.6.)  To the extent the assignment is found invalid, BP and the PSC agreed that BP "will not seek to pursue" any claims "that were the subject of the invalidated assignment." (*Id.*)

## ARGUMENT

### I.    Standard of Review

Courts "evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Gentilello v. Rege*, 627 F.3d 540, 543-544 (5th Cir. 2010).  Such a motion must be granted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).[3]

---

[3] Pursuant to Fed R. Evid. 201(c)(2), Transocean requests that the Court take judicial notice of the Settlement Agreement. *See In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 828 (E.D. La. 2010) ("[A] court may take judicial notice of items in the record of the case, related cases, and matters of public record, in reviewing a motion to dismiss and/or motion for judgment on the pleadings").

II.     **All Of the Assigned Claims  Should Be Dismissed Because The Economic Class Cannot Pursue Class Action Claims In This Limitation Of Liability Action**

The Settlement Agreement specifically contemplates that the Assigned Claims will be asserted by a class of plaintiffs, not as individuals.  (Rec. Doc. 6430-39, ¶ 1.1.3 [assignment is made "to the Economic Class, only as a juridical entity and not to Economic Class members individually"]; *see also* Rec. Doc. 6430, ¶ 3.7 [the "Economic Class, Plaintiffs and Economic Class members" reserve their rights to assert the Assigned Claims "but only through the Economic Class"].)

The Economic Class members cannot assert any of the Assigned Claims against Transocean in these proceedings.  First, no class has been certified for that purpose.  The Settlement Agreement specifically states that the class certification is "for settlement purposes only."  (Rec. Doc. 6430, ¶ 7.2; see Final Fairness Hr'g Tr. 11-12 ["the PSC filed the two present class action complaints . . . to serve as vehicles for the proposed settlements"].)[4]  This Court has already recognized that the class certified here is not a class that will bring any claims to trial. (*See* Final Fairness Hr'g. Tr. 16 [Court did not need to consider how to "manage the class action" because "there would be no trial of the class members' claims"]; *see also* Rec. Doc. 7945 [Class Counsel's and BP Defendants' Joint Proposed Findings of Fact and Conclusions of Law in Support of Final Approval of *Deepwater Horizon* Economic and Property Damages Settlement Agreement As Amended on May 2, 2012 ("Proposed Findings")], at 85 ["This

---

[4] Certification for settlement purposes is not the same as certification for litigation purposes. *See Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (settlement class need not satisfy manageability requirement but "other specifications of the [r]ule -- those designed to protect absentees by blocking unwarranted or overbroad class definition -- demand undiluted, even heightened, attention in the settlement context").  Because of this difference, a defendant may agree to the certification of a settlement class without "conceding any of its argument against certification [of a litigation class]." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995).

Settlement Class May Be Certified For Purposes of Settlement Only Pursuant To Rules 23(a) and (b)(3)"].)

Second, no class can be certified to pursue the Assigned Claims in this Limitation of Liability Action because, under settled law in this Circuit, class action claims may not be brought in a limitation proceeding. *In re Lloyd's Leasing Ltd. v. Bates*, 902 F.2d 368 (5th Cir. 1990). As this Court held in *In re Complaint of River City Towing Servs., Inc.*, 204 F.R.D. 94, 96 (E.D. La. 2001): "The Fifth Circuit's holding did not distinguish different kinds of class actions, but simply stated that 'class representation in the sense of Rule 23' is incompatible with a limitation proceeding and, therefore, should not be allowed in such proceedings."

Third, even to the extent some class claim could potentially exist, the purported assignment of claims to the Economic Class "only as a juridical entity and not to Economic Class members individually" assumes that approval of the Settlement Class will also effectively create a mandatory Litigation Class without any opt-out right. (Rec. Doc. 6430-39, ¶ 1.1.3; *see* Rec. Doc. 6395 [Transcript of Hearing on the Motions For Conditional Certification of Rule 23(b)(3) Classes for Settlement Purposes ("Prel. Fairness Hr'g Tr.")], at 61 ["the assigned rights that we speak of now. . . can only be enforced by the class on behalf of the class members"].) But such a mandatory class, presumably a Rule 23(b)(2) class, could be certified only in order to seek injunctive or declaratory relief, and perhaps certain forms of "incidental" monetary relief. Such a class cannot assert claims predominantly for money damages. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557-60 (2011) (explaining that a Rule 23(b)(2) allows class treatment only for claims focused on injunctive and declaratory relief rather than money damages, and that "[i]n the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process"); *see also McManus v. Fleetwood Enters., Inc.*, 320

F.3d 545, 553-54 (5th Cir. 2003) (damages claims must be pursued through Rule 23(b)(3) class, not through Rule 23(b)(2), in order to preserve notice and opt out rights). Because the claims purportedly assigned to the Economic Class are entirely focused on money damages, and include no elements of injunctive or declaratory relief, they plainly could not be certified under Rule 23(b)(2).

Simply put, plaintiffs cannot use the assignment to rewrite Rule 23. All of the Assigned Claims seek a damages remedy. To the extent that money damages claims could potentially be asserted by a properly certified Rule 23(b)(3) class, no such class exists. Indeed, no motion has even been filed requesting that the Court certify such a Rule 23(b)(3) class regarding these claims. Absent a properly certified Rule 23(b)(3) class, there is no "juridical entity" before the Court that can assert the Assigned Claims.[5]

Accordingly, the Economic Class cannot proceed on the Assigned Claims in the upcoming trial, and the class claims should be dismissed. *See Gabarick v. Laurin Mar. (Am.) Inc.*, No. 08-4007, 2009 WL 102573 (E.D. La. Jan. 12, 2009).

---

[5] If the Economic Class were allowed to proceed on any of the Assigned Claims, it would stand in BP''s shoes and be subject to the same defenses that could be asserted against BP, e.g., Transocean's right to indemnity from BP under the Drilling Contract. *See, e.g., Florida Bahamas Lines, Ltd. V. Steel Barge Star 800 of Nassau*, 433 F.2d 1243, 1246 (5th Cir. 1980) (holding in an admiralty case that "a valid and unqualified assignment operates to transfer to the assignee no greater right or interest than was possessed by the assignor"); *United States v. Ocean Bulk Ships, Inc.*, No. H-01-1639, 2003 A.M.C. 1785, *available at* 2003 WL 22095663, at *4 (S.D. Tex. June 25, 2003).

**III.** **The PSC Cannot Assert BP's Contribution Claims Because BP Did Not Obtain A Full Release Of All Claims Brought By The PSC Against Transocean**

Even assuming the PSC could overcome the problems with its Economic Class pursuing the Assigned Claims, the Economic Class must be barred from any recovery on the Contribution Claims because BP did not secure a full release of the PSC's claims against Transocean. In these circumstances, BP is not entitled to contribution from Transocean and therefore had no contribution claims to assign.

**A.** **A Settling Defendant Who Does Not Obtain A Full Release On Behalf Of All Potential Joint Tortfeasors Has No Right Of Contribution Against A Nonsettling Defendant**

BP's purported contribution claims against Transocean arise under OPA, 33 U.S.C. § 2709,[6] which provides as follows:

> *A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law.*

33 U.S.C. § 2709.

OPA's statutory right to contribution must be analyzed by the equitable principles that have always governed a claim for contribution in tort. *See generally United States v. Atl. Research Corp.*, 551 U.S. 128, 138 (2007) (absent a contrary indication from Congress, statutory right to contribution is analyzed by traditional tort principles); *Adkinson v. Int'l Harvester Co.*, 975 F.2d 208, 213 (5th Cir. 1992) (contribution derives from equitable principles).

Under these traditional principles, a settling defendant does not have any cause of action

---

[6] OPA places a substantive cap on any contribution claim, which in this case prevents any contribution claim for damages arising from the subsurface discharge of oil. This issue is addressed in Transocean's separately filed Motion for Partial Judgment on the Pleadings as to Claims Based on Subsurface Discharge of Oil (Rec. Doc. 8106).

for contribution against joint tortfeasors unless it has obtained a full release of the nonsettling defendants as part of the settlement. "The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share." Restatement (Second) of Torts: Contribution Among Tortfeasors § 886A (2012).

A similar rule under maritime law precludes a settling defendant from seeking contribution from a nonsettling defendant unless it has obtained a full release as part of the settlement. In *Murphy v. Florida Keys Elec. Coop. Ass'n, Inc.*, 329 F.3d 1311, 1313 (11th Cir. 2003), an admiralty tort action, the court rejected a contribution claim where a complete release had not been obtained:  "[A] settling defendant cannot bring a suit for contribution against a nonsettling defendant who was not released from liability to the plaintiff by the settlement agreement."  *Id.* at 1313.  The Fifth Circuit has confirmed that "'[n]o suit for contribution will lie against a nonsettling defendant who is not released from liability, because that defendant remains liable for its proportionate share of damages regardless of the terms of the settlement the other defendant made.'"  *Ondimar Transportes Maritimos v. Beatty St. Props. (Ondimar")*, 555 F.3d 184, 187 (5th Cir. 2009) (quoting *Murphy*, 329 F.3d at 1315); *see Lexington Insurance Co. v. S.H.R.M. Catering Servs., Inc. ("Lexington")*, 567 F.3d 182, 186-87 (5th Cir. 2009) (settling tortfeasor may not seek recovery from an unreleased, nonsettling tortfeasor based on assignment of claim by plaintiff).

To maintain a claim for contribution, a settling defendant must obtain a "full release" of all potential co-defendants.  *Combo Maritime, Inc. v. U.S. Bulk Terminal, LLC ("Combo Maritime")*, 615 F.3d 599, 603 & n.2 (5th Cir. 2010).  The Fifth Circuit has held that a "full release" sufficient to permit a settling defendant to pursue a contribution claim occurs only when

11

"the settling defendant discharges the plaintiff's *entire claim* as evidenced by a *total release* of *all potential joint tortfeasors*." *Id.* at 604 (emphasis added).[7]

The equitable and policy reasons for this rule are clear. Settling defendants are free to make whatever bargain they like to avoid trial, but, in the absence of a "full release of all parties," the non-settling parties must continue to defend themselves at trial and bear the risk of a damages recovery by the plaintiff. Only where the settling defendant "has extinguished the plaintiff's claim" can the settling defendant bring a contribution claim. *Combo Maritime,* 615 F.3d at 604.

### B.   An Assignment Of A Contribution Claim Based On A Partial Settlement Is Invalid

The rule requiring a full release before a contribution claim may proceed does not raise a mere "technical issue," but rather presents "a legal bar under general maritime law." *In re Complaint of Taurus Marine, Inc. v. Marin County,* No. C-08-3195, 2012 A.M.C. 317, 329, *available at* 2012 WL 424597 at * 8, (N.D. Cal. Feb. 9, 2012). Consequently, courts have invalidated assignments that attempt an end-run around the rule against contribution for partial settlements. *See Ondimar,* 555 F.3d at 187-88 & n.3 (assignments that have the effect of creating a right of contribution in violation of the prohibition of contribution for partial settlements are invalid ); *Lexington,* 567 F.3d at 186-87 (insurance company providing defense

---

[7] To the extent that this Court has held that the general maritime law supplements OPA, these Fifth Circuit cases are controlling. (See Rec. Doc. 3830 [B1 Order], at 26-27.) Although Transocean respectfully disagrees with certain aspects of the Court's order, including its ruling that OPA does not displace punitive damages claims, the rules set forth in the *Ondimar/Lexington/Combo* line of cases are consistent with general tort principles and are not unique to the general maritime law. *See, e.g.,* Unif. Cont. Among Tortfeasors § 1(d) (1955 Revised Act) ("A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement").

for settling defendant could not pursue claim against non-settling defendant, where plaintiff had assigned those claims, as doing so would equate to a contribution or indemnity claim against nonsettling and unreleased party).

C.   **BP Did Not Secure A Full Release On Behalf Of Transocean Or Any Other Non-Settling Defendant**

The PSC's acknowledgment of satisfaction of its compensatory claims against Transocean and Halliburton does not come close to meeting the letter or the spirit of the "full release" requirement.  First, the Settlement Agreement by its terms does not release Transocean or Halliburton and excludes them from the definition of a "Released Party."  (*See* Rec. Doc. 6430, ¶ 10.3 ["in no event shall any of the following be deemed to be a Released Party: Transocean or Halliburton"].)  The plaintiffs have given up their right to pursue additional compensatory damages from these parties but have not given Transocean the multi-page release accorded to BP and have not agreed to dismiss their claims against Transocean with prejudice. (*Compare* Rec. Doc. 6430, ¶¶ 10.1, 10.2, 10.5, 10.12 *with* Rec. Doc. 6430-39, ¶ 1.1.2.2.)

Second, the Settlement Agreement specifically reserves to the "Economic Class, Plaintiff and Economic Class Members. . . their rights for punitive and exemplary damages against Transocean and Halliburton."  (Rec. Doc. 6430, ¶ 10.3; *see  also* Rec. Doc. 6430-39, ¶¶ 1.1.1., 2.4. [acknowledging satisfaction of "Compensatory Damages" from Transocean and Halliburton but specifically defining Compensatory Damages to exclude, *inter alia*, "punitive, exemplary, multiple, or non-compensatory damages"].)  The Fifth Circuit has made clear that a full release must "discharge[] the plaintiff's entire claim," which the Settlement Agreement clearly does not. *See Combo Maritime*, 615 F.3d at 604.

Third, even the acknowledgement of satisfaction of compensatory damages and agreement not to seek further such damages apply only to Transocean and Halliburton.  (*See*

Rec. Doc. 6430-39, ¶ 1.1.2.2.)  For a contribution claim to lie, a settlement must discharge all potential tortfeasors, not some.  *See Combo Maritime, supra,* 615 F.3d at 604 (settling defendant can meet requirements for contribution claim if "the settling defendant discharges the plaintiff's entire claim as evidenced by a total release of all potential joint tortfeasors").

Contribution claims by a settling defendant against a nonsettling defendant are not allowed where only part of the injured parties' claims have been extinguished, and assignments of such claims are not enforceable.  Because BP has no contribution claims to assign, the PSC may not pursue any such claims against Transocean.

### IV.    The PSC Cannot Assert BP's Contribution Claims Because The Settlement Payments Are Not An Appropriate Measure Of Compensatory Damages

#### A.    The PSC And/Or BP Must Show That The Payments To Be Made Under The Settlement Agreement Are Reasonable For Purposes Of A Contribution Action

The equitable nature of contribution further requires that a settlement reflect only reasonable compensatory payments, not voluntary or other components, before contribution may be sought: "[W]hen a tortfeasor without suffering a judgment against him has voluntarily made a settlement with the plaintiff and a payment that exceeds any amount that would be reasonable under the circumstances, he should not be permitted to inflict liability for contribution regarding the excess upon another tortfeasor who has not entered into the same settlement."  Restatement (Second) of Torts: Contribution Among Tortfeasors, § 886A cmt. d (2012).[8]

In *Durgin v. Crescent Towing & Salvage, Inc.,* No. Civ. A. 00-1602, 2002 WL 3136536 (E.D. La. Oct. 18, 2002), the court considered whether a ship-owner could seek indemnification

---

[8] The Uniform Contribution Among Tortfeasors Act similarly provides: "A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor . . . in respect to any amount paid in a settlement which is in excess of what was reasonable."  Unif. Cont. Among Tortfeasors § 1(d) (1955 Revised Act).

for settlement payments to an injured seaman for lost wages and temporary partial disability, in addition to mandatory payments by the ship-owner for maintenance and cure.  Finding that the payments "cannot be reasonably characterized as anything other than voluntary payments made above and beyond the legal obligation" of the ship-owner, the court struck the contribution and indemnity claims to the extent that they sought reimbursement for these excessive payments.  *Id.* at *4.

The burden is on the party seeking contribution to show that the settlement was reasonable for that purpose:  "The reasonableness of the settlement is always open to inquiry in the suit for contribution, and the tortfeasor making it has the burden of establishing the reasonableness of the payment he has made."  Restatement (Second) of Torts: Contribution Among Tortfeasors § 886A cmt. d *(2012)*; *M. Pierre Equip. Co. v. Griffith Consumers Co.*, 831 A.2d 1036, 1039 (D.C. Ct. App. 2003) ("settling tortfeasor who brings a contribution action against a non-settling tortfeasor. . . has the burden of establishing the liability of the non-settling tortfeasor, and the reasonableness of its settlement with the injured person(s)"); *Traveler's Ins. Co. v. United States*, 283 F. Supp. 14, 31 (S.D. Tex. 1968) (same).

The question of the reasonableness of the Settlement Agreement for contribution purposes is entirely separate from the pending decision by this Court as to whether the Settlement fairly treated the PSC.  *See City of Tucson v. Superior Court In and For County of Pima*, 798 P.2d 374, 380 (Ariz. 1990) (trial court's determination of good faith of settlement with plaintiffs "was not necessarily a determination of the issues pertaining to the reasonableness of the settlement and the relative degrees of fault required to establish the contribution claim").  A fairness hearing focuses on the "rights and interests of each class member" in order to "assess[] the fairness of the proposed compromise."  *Pettaway v. Am. Cast Iron Pipe Co.*, 576

F.2d 1157, 1214 (5th Cir. 1978.)   Neither Rule 23 nor the fairness proceedings in this Court required any consideration of whether the amounts to be paid under the Settlement Agreement could be the basis for the Contribution Claims.   Indeed, it is precisely because a "settlement will not affect any substantive legal rights of non-settling parties" that such parties are generally held to lack standing to object.   *In re Vioxx Prods. Liab. Litig.*, 388 Fed. Appx. 391, 395 (5th Cir. 2010).   (*See* Final Fairness Hr'g Tr. 18 [this Court pointed out that it did not need to consider objections by nonsettling parties "because their legal rights are not affected"].)

**B.      Because the Payments To Be Made  Under The Settlement Agreement Include Punitive Components And Voluntary Payments, They Cannot Support A Contribution Claim.**

It is clear from the face of the Settlement Agreement and the representations made to this Court that the settlement payments are not limited to compensatory payments so as to provide a basis for assertion of the Contribution Claims.   The PSC and BP repeatedly alluded to the "generosity of the Settlement" in seeking approval before this Court.   (*See, e.g.,* Rec. Doc. 7731 [BP's Reply In Support of Final Approval of Economic And Property Damages Class Settlement], at 1; *id.* at 2 [claimants under Seafood Compensation program "will be made more than whole" by first distribution and then "share generous payments from" second distribution]; Rec. Doc. 7114 [BP Defendants' Memorandum In Support Of Motion For Final Approval Of Deepwater Horizon Economic & Property Damages Settlement Agreement], at 56 [arguing that the compensation is "generous. . . notwithstanding significant weaknesses in the plaintiffs' case"]; Final Fairness Hr'g Tr. 22-23 ["settlement program mandates a claimant-friendly process" and "is mandated to maximize claimant recovery" and "to give as much money in the most advantageous application of the settlement program's formula as possible"]; *id.* at 23

[program "compensates types of damages that the GCCF did not and that are not even recognized by OPA"].)

The Settlement represents a compromise designed to resolve potential compensatory and punitive liability and to avoid years of litigation over numerous and complex legal issues. Because the purpose of the Settlement was not simply to value the compensatory damages but to resolve the larger litigation, the Settlement Agreement contains multiple provisions for punitive and voluntary payments and cannot provide the basis for contribution.

1.   **The Settlement Agreement Contains Punitive Components**

As this Court is aware, the settlement includes punitive components in the form of a Risk Transfer Premium ("RTP") that will result in a payment of a "multiple" of each plaintiff's "actual compensation losses." (*See, e.g.,* Rec. Doc. 6430, ¶ 38.126; Rec. Doc. 6430-33.) The RTP takes "into account any risk of future loss, any risk of oil returning, liquidation of legal disputes about punitive damages, and other factors it is designed to address." (Rec. Doc. No. 7114-5, Declaration of Henry H. Fishkind, at 10, ¶ 33.) As counsel for the PSC conceded at the fairness hearing, "[p]otential future damages, even potential punitive damages, where applicable, are effectively compensated in this program through risk transfer premiums." (Final Fairness Hr'g Tr. 27.)

BP has argued, and this Court has accepted, that public policy precludes an indemnity claim for punitive damages. (*See* Rec. Doc. 4827, at 23; Rec. Doc. 4932, at 9; Rec. Doc. 5446, at 19.) By the same token, neither BP nor the PSC, standing in BP's shoes, should be entitled to contribution for a settlement that includes punitive damages components.

2.   **BP Voluntarily Waived The OPA Cap**

The Settlement Agreement also provides for an "open-ended commitment to pay all proven claims for economic damages, with no limitation on BP's overall liability." (Rec. Doc. 7114-1, at 12.) Thus BP has voluntarily waived the OPA cap of $75M in favor of uncapped liability estimated to be at least $7.8B. *See* 33 U.S.C. § 2704(a)(4); Final Fairness Hr'g Tr. 27, 57 ("non-seafood portion of the settlement is uncapped"). Like the payments made in *Durgin* over and above the ship owner's maintenance and cure obligations, any payments made in excess of the OPA cap must be deemed voluntary. *Durgin*, 2002 WL 31365365, at *4.

3.   **The Settlement Agreement Includes Numerous Voluntary Payments By BP In Addition To Compensation For Class Members**

In addition to uncapped liability on individual claims, BP has agreed to multiple other voluntary payments:

- The Settlement Agreement provides for a $2.3 billion Seafood Compensation Program that the PSC and BP agree "exceeds the annual revenue of these industries many times over." (Rec. Doc. 6266, at 23-24.) Specifically, "the seafood compensation's program is five times the annual industry revenue" and "19.2 times the lost industry revenue." (Final Fairness Hr'g Tr. 57.) The settlement thus overcompensates for losses that at trial could be shown to be much less.[9] (*See* Rec. Doc. 7945 [Proposed Findings], #210 ["$2.3 billion will

---

[9] As the PSC pointed out in its Reply Brief in support of the settlement, "[t]he Seafood Program compensates fishermen for an annual 35% loss of shrimp and blue crabs, a 40% loss of oysters, and a 25% loss of finfish – as compared with the official Government landing catch data, which only shows a 13.17% decline in the volume of shrimp landings, a 14.18% decline in the volume of blue crab landings, a 24.08% decline in the volume of oyster landings, and a 0.51% decline in the volume of finfish landings. To those annual base losses, the Program adds Risk Transfer Premiums of 7.25 to 8.25 for shrimpers, 7.75 to 8.75 for oyster harvesters, 5 to 6 for fin

'provide much greater compensation to the claimants than they would be able to establish using the Federal Rules of Evidence, the Court's rulings, and the application of OPA and maritime law'" (quoting Rice Seafood Decl. ¶ 5)].)

- The Settlement Agreement requires BP to set up a $57 million fund to promote the Gulf Coast, a provision that counsel for the PSC conceded is not "mandated by OPA, [and] we sure don't believe it's mandated by the General Maritime Law and don't see how such would have been the result of trying a case and getting an order from the Court to set up such a fund."   (Final Fairness Hr'g Tr. 30.)

- BP has made a voluntary commitment to provide up to $5M in funds for a supplemental publicity campaign managed by the PSC.   (*See* Rec. Doc. 6395 [Prel. Fairness Hr'g Tr.], at 56.).

### 4.   The Settlement Agreement Provides For Attorneys' Fees

The BP-PSC settlement sets up a fund for payment of up to $600 million in attorneys' fees and costs, purportedly under a "common benefit and/or Rule 23(h)" theory.   (Rec. Doc. 6430, ¶¶ 5.16, 14.1, Ex. 27, ¶ 2.)   These fees are not properly the basis of a contribution claim. (*See* Rec. Doc. 3830, at 37 [dismissing plaintiffs' claim for attorneys' fees].) [10]

---

fishermen, and 5 to 6 for crabbers." (Rec. Doc. 7727, at 44; *see* Final Fairness Hr'g Tr. 47.)

[10] To the extent that the Contribution Claims purport to include claims for equitable subrogation and similar theories, these claims are displaced by OPA's explicit provision for contribution.   33 U.S.C. § 2709.   In any event, equitable subrogation arises from the same equitable principles as contribution and thus any claims on that basis would suffer from the same problems as the contribution theories.   *See Compania Anonima Venezolana de Navegacion v. A.J. Perez Expert Co.*, 303 F.2d 692, 697 (5th Cir. 1962) (claim for equitable subrogation requires involuntary discharge of debt by claimant).

5.      **It Is Not Possible To Extract A Reasonable Estimate Of Compensatory Damages From The Amounts To Be Paid Under The Settlement Agreement**

The net effect of the punitive components and voluntary payments included in the Settlement Agreement is to greatly inflate the base number against which contribution will be sought.  Yet, given the structure of the agreement, it is next to impossible to determine, now or ever, how much of the payments covers compensatory damages and how much represents a premium designed to resolve potential punitive damages exposure (which could have as much as doubled BP's compensatory liability) and to avoid years, if not decades, of costly and uncertain litigation.

The right of contribution "is not intended to be an absolute right in all cases; and in any case in which contribution would be inequitable it is still intended that a court will deny it." Restatement (Second) of Torts: Contribution Among Tortfeasors § 886A cmt. c (2012).   This Court should hold that the Settlement Agreement does not provide a viable or reasonable basis for a contribution claim and that BP therefore has no contribution claim to assign.

**V.      The Economic Class Should Not Be Allowed To Assert Contribution Claims Based On A Settlement That Purports To Deprive Transocean Of Substantive Legal Defenses**

The unique procedures and substantive provisions of the Settlement Agreement also preclude assertion of the Contribution Claims here because BP has waived defenses that Transocean is entitled to assert at trial.   A nonsettling defendant "should not suffer any substantive or procedural disadvantage when other defendants do settle." *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1165 (5th Cir. 1985).   BP, however, has agreed to make payments without asserting defenses still available to Transocean.   For example:

- The Settlement Agreement tolls statutes of limitations for the PSC from the date of entry of the Preliminary Approval Order until class members opt out of the settlement or execute an Individual Release. (Rec. Doc. 6430, ¶ 7.3.1.) As a result, claims can be presented "a full year past the three-year statute of limitation under OPA and General Maritime Law." (Final Fairness Hr'g Tr. 23.)

- The Settlement Agreement deems claimants to have satisfied the presentment and other requirements under OPA. (Compare Rec. Doc. 6430, ¶ 7.3.2, with OPA, 33 U.S.C. § 2713.)

- The Settlement Agreement attempts to limit the evidence presented at trial, by including a pledge by the PSC to "use their best efforts" to avoid calling BP witnesses. (Rec. Doc. 6430-39, ¶ 1.1.3.8.) *See Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1173-74 (5th Cir. 1981) (refusing to enforce provision of settlement agreement excluding witnesses at trial).

- The Settlement protocols use formulas that eliminate the need for claimants to prove that their alleged damages were caused by the spill. (*See, e.g.,* Final Fairness Hr'g Tr. 44-45 "if you're primar[il]y [a] seafood [processor], causation is presumed"; *id.* at 68 ["We're presuming causation for whole sections of the settlement class depending on where you reside and the nature of your business"]; Rec. Doc. 7114, *Decl. of Holly Sharp*, p. 10 ¶ 17 ["the causation provisions in the Settlement Agreement are more favorable to the business claimant than those for a similarly situated plaintiff in a typical litigation dispute"]; Rec. Doc. 7945, at 67 [Proposed Finding #217].) These protocols deprive Transocean of the right to argue that no causal relationship exists due to larger economic factors, *e.g.,* that

21

the decline was part of an overall economic decline in various regions over the last two years, and smaller ones, *e.g.*,. that a particular business suffered losses because a key manager retired.

- The settlement allows for multiple methods of proving lost earnings, many of which would be subject to challenge at trial. (Final Fairness Hr'g Tr. 45 [workers without earnings documentation could use tax returns, other pay period documents, or written statement from employer; for deckhands, requirements of proof are "even more liberal" and include written statements from non-family members].)

- The Settlement Agreement attempts to limit Transocean's right to settle the contribution claims by requiring Transocean to release its contribution and indemnity claims against BP. (Rec. Doc. 6430-39, ¶ 1.1.2.5.)

If the Economic Class is allowed to proceed on the Contribution Claims, Transocean is entitled to assert these or any other applicable defenses with respect to each of the underlying payments for which contribution is sought.   The PSC's and BP's agreement to forego that examination is not and cannot be binding on Transocean, meaning that each claim paid is potentially subject to a mini-trial before the amount can be considered for contribution.   The impractical and complex nature of this undertaking further support judgment in Transocean's favor on the Contribution Claims.   *Cf. Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2561 (2011) (refusing to certify class where defendant had defenses to individual damages claims); Restatement (Second): Contribution Among Tortfeasors § 886A cmt. c (2012) (right of contribution is "not intended to be an absolute right in all cases") .

VI.   **An Assignment That Results In A Double Recovery Of The Same Damages Is Invalid**

Assertion of the Contribution Claims by the Economic Class here should also be barred based on the equitable rule against double recovery.  The Economic Class has acknowledged full satisfaction of its compensatory damages claims against Transocean.  Equity precludes this class from recovering twice for the same injury.

A.   **Equity Bars A Double Recovery**

It is a basic principle of equity that plaintiffs may recover only once for a claim of injury.  This "one satisfaction rule is based on the notion that allowing a double recovery is ordinarily against legal policy." *Marcus, Stowell & Beye Gov't Secs., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 233 (5th Cir. 1986) (emphasis deleted).

The admiralty courts share the obligation to prevent a double recovery.  *See Atl. Sounding Co. v. Townsend*, 2009 A.M.C. 1521, 1537 n.10 (2009) (fact that seaman can bring separate claims for maintenance and cure and for personal injury under Jones Act "requires admiralty courts to ensure against double recovery"); *see Cervo v. Am. S.S Co.*, No. 02-70863, 2003 WL 25676101, at * 3 (E.D. Mich. July 1, 2003) (payments made by defendant to plaintiff in excess of maintenance and cure obligation prior to commencement of action should be considered by jury in order to avoid double recovery by plaintiff).

Under the one-satisfaction rule, an assignment that results in a double recovery is invalid.  *See In re Complaint of Weeks Marine, Inc.*, Civ. No. 04-0494, 2006 WL 18431305 at *7-9 & n.14 (D.N.J. June 30, 2006) (settling company's assignment to plaintiff of equitable subrogation claims against other tortfeasors, where settlement fully compensated plaintiff for loss, "violates a basic principle of equity" because assignment "would result in a **double recovery** to Plaintiff," emphasis original); *see also Jackson v. Freightliner Corp.*, 938 F.2d 40, 42 (5th Cir. 1991)

23

(where settlement fully compensated plaintiffs for injury, assignment of contribution claim was disallowed both because Texas law did not allow contribution and because it could "result in a prohibited **double recovery** of the same damages," emphasis original); *In re Nat'l Mortgage Equity Corp.*, 636 F. Supp. 1138, 1149 (C.D. Cal. 1986) (in evaluating validity of assignment, court recognized need to "avoid[] situations in which a plaintiff might effectively receive a double recovery").

**B.**   **The One-Satisfaction Rule Should Be Applied Here Because Plaintiffs Have Acknowledged "Full, Complete, And Total Satisfaction" Of Their Compensatory Damages**

The one-satisfaction rule should be applied to void the assignment of the Contribution Claims here, particularly since contribution is itself an equitable remedy. The PSC has acknowledged that the settlement payments will result in "full, complete, and total satisfaction" of its compensatory damage claims against Transocean. (Rec. Doc. 6430-39, ¶¶ 1.1.1, 1.1.2.2.) On the face of the Settlement, any additional compensatory recovery is unnecessary.

Equity does not dictate a different result. BP and the PSC voluntarily entered into the Settlement Agreement with full knowledge that the assignment could be held unenforceable. (*See* Rec. Doc. 6430-39, ¶ 1.1.4.6.) The careful language of the various provisions suggests that BP's main goal was to avoid its own indemnity obligations to Transocean rather than confer a benefit on plaintiffs through the assignment. This Court has ruled that BP must indemnify Transocean for compensatory damages, but not for punitive damages for pollution originating below the surface of the water. (Rec. Doc. 5336, at 18.) The Settlement Agreement draws precisely this line, precluding the plaintiffs from seeking compensatory damages from Transocean (and therefore relieving BP of its indemnity obligation for those damages) while purporting to reserve the PSC's rights to punitive damages and to assert the Assigned Claims.

Invalidation of the assignment is the proper result here. Subject to the arguments above and to Transocean's indemnity and other defenses, BP might have retained its contribution claims and pursued them against Transocean. Alternatively, the PSC could have declined to release its claims for compensatory damages against Transocean and continued to litigate those claims. Instead, these parties have structured an arrangement that puts the PSC in the position of "surrogate plaintiffs" for BP and creates the potential for "a prohibited double recovery." *Jackson*, 938 F.2d at 42 (citations and emphasis omitted).[11]

As the PSC concedes, "BP has voluntarily assumed the responsibility to pay not only its fair share of the recovery necessary to make the proposed class members whole, but to pay *all* compensatory damages to class members." (Rec. Doc. 7104, at 35.) Under the one-satisfaction rule, this Court should invalidate the assignment of BP's contribution claims. "To hold otherwise would allow a plaintiff to recover multiple times for a single injury, frustrating this elementary principle of tort law." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1278 (11th Cir. 2008).

## CONCLUSION

For each of the reasons set forth above, this Court should grant partial judgment on the pleadings in favor of Transocean on all of the Assigned Claims. Alternatively, this Court should grant partial judgment in Transocean's favor on the Contribution Claims assigned by BP to the Economic Class.

---

[11]As discussed above, the Fifth Circuit has repeatedly rejected assignments that contravene legal or equitable principles. *See, e.g., Ondimar*, 555 F.3d at 187 (assignment that contravenes proportionate share rule held invalid); *Combo Maritime*, 615 F.3d at 603-04 (plaintiff who had released all claims against nonsettling defendant could not assign claim to settling defendant because claim had been extinguished).

25

DATED: December 20, 2012

By:   s/ Brad D. Brian
Brad D. Brian
Michael R. Doyen
Lisa Demsky
Daniel B. Levin
Susan E. Nash
MUNGER TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel:  (213) 683-9100
Fax:  (213) 683-5180
Email:  brad.brian@mto.com
          michael.doyen@mto.com
          lisa.demsky@mto.com
          daniel.levin@mto.com
          susan.nash@mto.com

By:   s/ Edwin G. Preis
Edwin G. Preis, Jr.
PREIS & ROY PLC
Versailles Blvd., Suite 400
Lafayette, LA 70501
(337) 237-6062
    and
601 Poydras Street, Suite 1700
New Orleans, LA 70130
(504) 581-6062

Respectfully submitted,

By:   s/ Steven L. Roberts
Steven L. Roberts
Rachel Giesber Clingman
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel:  (713) 470-6100
Fax:  (713) 354-1301
Email:  steven.roberts@sutherland.com,
          rachel.clingman@sutherland.com

By:   s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel:  (504) 599-8194
Fax:  (504) 599-8154
Email:  kmiller@frilot.com

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

*Counsel for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of December, 2012, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ELF System, for filing and for transmittal of a Notice of Electronic Filing to all CM/ELF registrants.

/s/  Kerry J. Miller