IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | *  *  * | MDL NO. 2179<br><br>SECTION: "J" |
| This document relates to No. 12-970 | * | Honorable Carl J. Barbier |
| | * | Magistrate Judge Shushan |

*      *      *

**MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE THE ANDRY LAW FIRM, LLC SETTLEMENT WITH BP AND ORDER THE CLAIMS ADMINISTRATOR TO PAY THE ANDRY LAW FIRM, LLC'S BEL CLAIM FINAL AWARD**

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT,** by and through undersigned counsel, comes The Andry Law Firm, LLC ("The Andry Law Firm"), who respectfully suggests that:

**INTRODUCTION**

The entire claims process was completed, a final award was made, and a binding settlement agreement was reached between The Andry Law Firm and BP, as evidenced by a signed release perfected on July 18, 2013.[1]   Therefore, The Andry Law Firm respectfully requests that this Honorable Court enforce the settlement with BP and order the Claims Administrator to pay the final award required by the signed release in full.

The Andry Law Firm filed a BEL claim at the suggestion of its Certified Public Accountant, Mr. David Kushner,[2] in August of 2012.   Mr. Kushner followed BP's established

---

[1] Attached hereto as Exhibit "A."

rules for making a claim and determined that The Andry Law Firm satisfied BP's model for recoverable damages, resulting in The Andry Law Firm claim being filed properly.  The Andry Law Firm received an Eligibility Notice on March 20, 2013.[3]  BP appealed on April 10, 2013,[4] and lost its appeal on June 4, 2013.[5]  BP had fourteen (14) days to seek district court review and did not do so.[6]  Shortly thereafter, The Andry Law Firm actually signed the release prepared by the Claims Administrator and BP on July 18, 2013.[7]  Not only did The Andry Law Firm and BP form a binding agreement to settle, but they also perfected a signed release.  Thereafter, the claim was vetted and re-vetted by the Claims Administrator,[8] resulting in a final award determination of $7,818,693.95.  The only thing that has yet to occur is the payment of The Andry Law Firm BEL final award following the signed release.

Recent jurisprudence from the Fifth Circuit applied to prior rulings of this Honorable Court, as well as the Master Settlement Agreement itself, establish that The Andry Law Firm final award perfected by a signed release on July 18, 2013 is fully enforceable, binding, and irrevocable.  *In Re: Deepwater Horizon, Young, Johnson, et al vs. BP Exploration & Production, Inc., et a*l, 786 F. 3d 344 (U.S. 5th Cir 2015)(hereafter "*Young, Johnson*").  In addition, the Master Settlement Agreement stated that the individual release shall remain effective, regardless

---

[2] David Kushner of Kushner and LaGraize has been the CPA for The Andry Law Firm since its inception.  Mr. Kushner is also and for many years has been the CPA for Herman, Herman, Katz & Cotlar, liaison counsel in the above-captioned matter.
[3] *See* Deepwater Horizon Claims Center Economic & Property Damage Claims Events/Notices for The Andry Law Firm, attached hereto as Exhibit "B."
[4] *Id.*
[5] Notice of Appeal Panel Decision, attached hereto as Exhibit "C."
[6] R. Doc. 6430.
[7] Exhibit "A."
[8] *See Excerpts of Transcript of Evidentiary Hearing*, November 7, 2014, p. 262, attached hereto as Exhibit "D."

of any appeals or court decisions after the release relating in any way to the liability of the released parties in any current or future litigation. *Master Settlement Agreement*. R. Doc. 6340.

The Andry Law Firm final award is a final agreement between BP and The Andry Law Firm which was perfected when the signed release was executed on July 18, 2013. The Andry Law Firm final award was, and still is, due and payable in the amount of $7,818,693.95 regardless of any subsequent stays, appeals, or Court decisions relating in any way to the liability of the released parties.[9]

Whatever happened in the way of court rulings after the release was executed is irrelevant as to whether the release created a still enforceable obligation by BP to make payment. The failure of payment does not void the obligation to pay and is not determinative of whether a valid settlement agreement still exists and is enforceable. A settlement agreement cannot be retroactively voided by later developments because the settlement agreement had yet to be honored by payment. There is no legal basis for premising the validity of the obligation, evidenced by a signed release, on whether the obligation has yet been paid.

Despite the law regarding the finality of a settlement and signed release, the Claims Administrator has failed to pay this settled claim. Wherefore, The Andry Law Firm respectfully requests that this Honorable Court enforce the settlement and order the Claims Administrator to promptly pay The Andry Law Firm final award in the amount of $7,818,693.95, without further delay.

---

[9] *Settlement Agreement*, §4.4.10.2, R. Doc. 6276-1, p. 27 (emphasis added); *see* also *Settlement Agreement*, Exhibit 26, ¶ 16, R. Doc. 6276-45, p. 14 ("This Individual Release shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties in any current or future litigation.").

## RELEVANT EVENTS AND PROCEDURAL BACKGROUND

The following timeline lists the key events relevant to the disposition of The Andry Law

Firm claim:

- 8/14/12:     The Andry Law Firm filed its claim in August of 2012. Exhibit "B."

- Due to a clerical error by an outside vendor, The Andry Law Firm claim was delayed by four (4) months.

- 3/20/2013:    Eligibility Notice is Issued. *Id.*

- 4/10/2013:    Notice of Appeal to The Andry Law Firm claim was filed by BP. *Id.*

- 6/4/2013:     Post Appeal Eligibility Notice Issued (denying BP's appeal); The Andry Law Firm claim upheld on appeal. *Id.*

- BP did not seek district court review within fourteen (14) working days.

- 7/18/2013:    The Andry Law Firm signed the release (consummating compromise between BP and The Andry Law Firm, LLC). *Id.*; Exhibit "A."

- The Andry Law Firm claim was not paid because of unrelated Lionel Sutton issues.

- 10/18/13:     This Honorable Court issued a preliminary injunction suspending the issuance of final determination notices and payments with respect to certain BEL claims. R. Doc. 11697.

- 11/7/2014:    This Honorable Court held a hearing and accurately extricated The Andry Law Firm and Gilbert V. Andry, IV from the Andry Lerner issues.

- 2/26/2015:    This Honorable Court issued an order properly extricating The Andry Law Firm final award and exonerating Gilbert V. Andry, IV from any impropriety and returning The Andry Law Firm final award to the Claims Administrator for processing and payment. R. Doc. 14221.

- 5/13/2015:    Fifth Circuit renders its opinion *Young, Johnson*, 786 F.3d 344 (5th Cir. 2015), holding that an agreement to settle between a claimant, even without a signed release, was final, due, and payable.

4

- After the release of the *Young, Johnson* opinion, The Andry Law Firm requests by letter that the Claims Administrator pay The Andry Law Firm final award based upon the Fifth Circuit's declaration, to no avail.[10]

## LAW AND ARGUMENT[11]

Under the clear terms of the Master Settlement Agreement, the parties intended and agreed that the Claims Administrator would make payments out of the Settlement Trust to any qualifying business that executed an Individual Release on a fully binding, enforceable, and "irrevocable" basis, prior to, and irrespective of, class approval under Rule 23.[12] Indeed, the Individual Release itself expressly advised and agreed that such payment and release would be binding and irrevocable, even though "the terms of the proposed settlement may change in the future - for better or for worse - as a result of further legal proceedings."[13] The Court's holding to that effect was amply supported by the record.

Initially, the Court explained:

**So what we have is a situation where that's what you all agreed to, you designed and drafted this release, and in the Settlement Agreement and in the release, you tell the person, the claimant who is getting paid, that if you sign this release, that's it, it's over for you, you can't come back and ask for more money, because later you can't file a suit against us, you can't sue anybody else. *You've settled all of your claims, and it doesn't matter if the settlement is ever approved or reversed on appeal or not, it doesn't matter if the law changes or not, if the interpretation of the Settlement Agreement changes,***

---

[10] *See, e.g.*, correspondence between Mr. Andry and Patrick Hron and Craig Saito, attached hereto as Exhibit "E." Although suggested by Mr. Saito, Mr. Hron refused to discuss, and failed to explain, how and why the failure to pay The Andry Law Firm final award renders the binding settlement between The Andry Law Firm and BP void retroactively.

[11] The following argument is largely adopted from the memoranda and briefs filed by the plaintiffs' steering committee addressing the identical issue; whether a signed release between a BP claimant and BP is a final settlement which is due, payable, and irrevocable.

[12] *Settlement Agreement,* Recital H, R. Doc. 6276-1, pp. 5-6.

[13] *Settlement Agreement,* Exhibit 26, p. 1, R. Doc. 6276-45, p. 2.

*for better or worse ...*[14]

The Court, addressing counsel for BP, noted that the same situation would apply were the shoe on the other foot—class members seeking additional compensation because of a revised interpretation of the Settlement Agreement.[15] "You wouldn't be here saying they could undo those settlements, just like they can't undo the Gulf Coast Claims Facility settlements."[16]

After carefully reviewing the Settlement Agreement and quoting the pertinent language from the Individual Release on the record, this Honorable Court noted that "both BP and class counsel anticipated that there could be disagreements over the interpretation and in implementation of the settlement."[17]

The Andry Law Firm submits that this Court's interpretation of the Settlement Agreement and Release is plainly correct.[18]

The relevant portions of the Settlement Agreement identify the traditional nature of

---

[14] *Transcript of Proceedings*, September 24, 2014, R. Doc. 13450, pp. 66-67. (emphasis added).  The District Court's ruling was memorialized in a minute entry that same day.  *Minute Entry,* Sept. 24, 2014, R. Doc 13435.

[15] *Id.*

[16] *Transcript of Proceedings,* September 24, 2014, R. Doc. 13450, pp. 66-67.

[17] *Transcript of Proceedings*, September 24, 2014, R. Doc. 13450, pp. 92-93; *See,* e.g., *Settlement Agreement,* §4.3.4, R. Doc. 6276-1, p. 20 (establishment of administrative review panel or, alternatively, the District Court, for the resolution of disputes); *Settlement Agreement*, §§ 18.1-18.2, R. Doc. 6276-1, p. 84 (disputes regarding interpretation of the Settlement Agreement resolved by the District Court).

[18] The construction and enforcement of settlement agreements are governed by the principles of law applicable to contracts generally.  See *Hill v. Schilling,* 495 F. App'x 480, 486 (5th Cir. 2012).  *Cert. denied,* 133 S.Ct. 2859 (2013).  The applicable principles of interpretation here are drawn from General Maritime Law, *see Settlement Agreement*, §36.1, which, in turn, follows the basic common law canons of interpretation.  See *Fontenot v. Mesa Petroleum Co.,* 979 F.2d 1207, 1241 (5th Cir. 1986).  Maritime contracts "should be read as a whole," *id.* at 1214, and "[w]ords should be given their plain meaning unless the provision is ambiguous," *Weathersby v. Conoco Oil Co.,* 752 F.2d 953, 955 (5th Cir. 1984).  Further, the court should "interpret, to the extent possible, all the terms in the contract without rendering any of them meaningless or superfluous."  *Chembulk Trading LLC v. Chemex Ltd.,* 393 F.3d 550, 555 (5th Cir. 2004); see also *Am. Roll-On Roll-Off Carrier, LLC v. P & O Ports Baltimore, Inc.*, 479 F.3d 288, 293 (4th Cir. 2007).  Alternately, even if Louisiana's contract law were to be applied, the result would not change.  *See Republic Ins. Co. v. Hous. Auth. Of New Orleans*, No. 08-4748 (E.D. La. May 2, 2013), 2013 WL 1897135 at *4.

finality as a result of signing a release, acknowledge that there could be possible future changes in facts or law, and evidence a clear intent that both the release and the payment thereon are binding and irrevocable.  Specifically, the Settlement Agreement provides that:

> **The BP Parties' obligation to make Settlement Payments** to any qualifying Economic Class Member who signs an Individual Release prior to the Effective Date, and the terms of every such Individual Release, **shall be fully enforceable, binding and irrevocable**, regardless of whether the Effective Date occurs.[19]

In addition, the Settlement Agreement specifically addresses the potential for changing terms:

> [T]he Parties intend to resolve their disputes pursuant to the terms of this Agreement and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect *notwithstanding the discovery after the date of this Agreement or at any other time* **of any additional facts or law, or changes in law.**[20]

The Settlement Agreement further identifies the execution of an Individual Release as a condition-precedent to receiving any settlement funds, and, critically, identifies the specific settlement payment offered to the Claimant as the exchange for the release:

> If an Economic Class Member submits one or more Claim Forms and qualifies for a Settlement Payment . . . then, prior to, and **as a precondition to, receiving any Settlement Payment on a Claim,** the Economic Class Member shall execute an Individual Release.[21]

Finally, the Settlement Agreement proceeds to merge the finality of the Release with the liabilities of BP:

> **The Individual Release, which is set forth in Exhibit 26, shall provide that the Individual Release constitutes the final, complete, and exclusive agreement and**

---

[19] *Settlement Agreement,* Recital H, R. Doc. 6276-1, p. 5. (emphasis added).
[20] *Settlement Agreement, § 13.4,* R. Doc. 6276-1, p. 81 (emphasis added).
[21] *Settlement Agreement, §4.4.10.1,* R. Doc. 6276-1, p. 26 (emphasis added).

***understanding between BP and Claimant*** and supersedes any and all other agreements, written or oral, between BP and Claimant with respect to such subject matter of the Individual Release in settlement of Claims arising out of or related to the Deepwater Horizon Incident. . .   ***The Individual Release shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties*** and regardless of whether the Effective Date occurs.[22]

Standing alone, the above-recited sections of the Settlement establish that, as a contractual matter, the payment offered through the Settlement Program is the consideration for the release from liability tendered by each settling claimant to BP.  There is no ambiguity in the terms of the exchange.  Each Individual Release that each settling business must sign in order to obtain settlement funds includes a detailed explanation of what the release is, provides for an acknowledgment of understanding, defines the claims being released, and attaches a list of more than 100 parties being released.[23] As this Honorable Court noted to BP's counsel: "So the release is important, very important, because barring the class settlement being finally approved, in the interim BP wanted that - you negotiated for that release, right?  You had to have that release, or otherwise you wouldn't have been paying claims in the interim, right?"[24]

Under normal contract principles, there would have to be an express reservation of rights by BP to unwind the exchange and obtain the exact same release for less than the offered funds. *See e.g. Dugas v. Trans Union Corp.,* 99 F.3d 724, 726 (5th Cir. 1996) (class action plaintiff settling with defendant has no right to challenge adverse decisions absent an express reservation

---

[22] *Settlement Agreement, §*4.4.10.2, R. Doc. 6276-1, p. 27 (emphasis added); *see* also *Settlement Agreement*, Exhibit 26, ¶ 16, R. Doc. 6276-45, p. 14 ("This Individual Release shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties in any current or future litigation").
[23] See *generally Settlement Agreement,* Exhibit 26, R. Doc. 6276-45.
[24] *Transcript of Proceedings*, September 24, 2014, R. Doc. 13450*,* pp.65-66.

of right to do so).[25] Not only is there no such reservation of rights in BP's favor, but the release

expressly repudiates any reopening on the basis of subsequent developments:

> This Individual Release shall remain effective *regardless of any appeals or court decisions relating in any way to the ability of the Released Parties* in any current or future litigation.[26]

Nor is there ambiguity here.   The Individual Release expressly guarantees to each settling

business immunity from any impact of unknown future legal developments:

> If the Court does approve the proposed class action settlement, an appellate court could reverse the approval.   In addition, it is possible *the terms of the proposed settlement may change in the future - for better or for worse - as a result of further legal proceedings.*   However, if you sign this Individual Release, *none of those uncertain future events will affect you.* ...[27]

As these provisions make clear, and as this Court found, the language and structure of the

Master Settlement Agreement and Individual Release lead to the following conclusions:  changes

in fact or law *after* the payment of settlement proceeds are irrelevant; the claimant cannot come

back and claim more; and BP cannot come back and try to recoup money already awarded.[28] [29]

---

[25] *See also, e.g., Bell v. Schexnayder,* 36 F.3d 447, 450 (5th Cir. 1994) (allowing counsel to seek attorneys' fees after settlement and dismissal "would run counter to three important goals encouraged by our judicial system:  voluntary settlements of disputes, the enforcement of agreements according to the objective intent of the parties, and an end to litigation").

[26] *Settlement Agreement,* Exhibit 26, ¶ 16, R. Doc. 6276-45, p. 14. (emphasis added).

[27] *Id.* at p. 2. (emphasis added).

[28] The Individual Release does not include a limited express reservation of interests in potential separate additional settlement claims, expressly reserved claims, and/or additional proceeds that may inure to the class as a whole, which are reserved *to the Claimant.  Settlement Agreement*, Exhibit 26, ¶18, R. Doc. 6276-45, p. 14.  However, a business that executes an Individual Release and is paid on a BEL Claim is forever releasing that BEL Claim, and there is no express or implied reservation of any rights or interests in favor of BP.

[29] In reaching its decision, this Court noted that the Settlement Agreement provisions at issue were inapplicable to cases of fraud and that, indeed, it had previously ordered claw-back when fraud was involved.  As this Court stated, "fraud goes to the validity of the Settlement Agreement itself and vitiates the settlement and the associated releases." *Transcript of Proceedings*, September 24, 2014, R. Doc. 13450, p. 93.  Here, this Honorable Court has already considered and determined that "there is no evidence to support a finding that [this claim] should be denied because of fraud." Order of February 26, 2015, R. Doc. 14221, p. 5.

The same analysis applies to settlements perfected by signed release between BP claimants and BP. Once settled, signed, sealed, and delivered, those claims do not and cannot become undone. The Andry Law Firm and BP have a signed, sealed settlement binding BP as of the execution of the July 18, 2013 release.

### The United States Fifth Circuit Court of Appeals Has Confirmed That A Settlement Between a BP Claimant And BP Is Binding, Even Without The Signed Release.

On May 13, 2015, in *Young, Johnson*, 786 F.3d 344 (U.S. 5th Cir 2015), the United States Fifth Circuit Court of Appeal determined that a settlement is binding upon BP. Specifically, the Fifth Circuit held:

**"We hold the parties formed a binding settlement agreement."**

The Fifth Circuit explained:

> There is undisputed evidence that a binding settlement agreement was reached between Elton Johnson and the GCCF acting on behalf of BP. The agreement was to pay the total sum of $2,698,095 to Johnson in full settlement of all of his personal injury claims arising out of the DEEPWATER HORIZON casualty. In exchange, Johnson agreed to waive and release all potential claims against not only BP, but against any other party who might be liable in the casualty . . . The arguments made by BP in its attempt to avoid payment of the settlement are unavailing.

The Fifth Circuit further explained:

> We agree with Johnson. An offer is judged by the parties' overt acts and words, not by the subjective or secret intent of the offeror. Here a reasonable person would construe the Determination Letter as an offer because it repeatedly uses the language of offer and acceptance. The Determination Letter repeatedly states that the GCCF, on BP's behalf, is extending a "Final Payment *Offer,"* and informs Johnson: "To *accept* the Final Payment Offer, check the box on the election Form indicating that you accept the Final Payment Offer, sign it and return it to the GCCF no later than 90 days after the date of this Letter." Because Johnson did just that, and BP did not timely appeal, the parties formed a contract.

. . .

Thus, because Johnson accepted the offer in the Determination Letter by its own terms by timely submitting the Final Payment Election Form and agreeing to subsequently sign the Release, and because BP declined to appeal that offer within the fourteen-day period, both an offer and acceptance occurred.

In the present case, the entire claims process (including the appeals process) was properly exhausted, and a binding settlement agreement was reached.  The Andry Law Firm received an Eligibility Notice on March 20, 2013 when the Claims Administrator issued a Post Appeal Eligibility Notice.  BP appealed on April 10, 2013 and lost on June 4, 2013.[30]  BP had fourteen (14) days to seek district court review, but it did not do so.  Shortly thereafter, The Andry Law Firm actually signed the release prepared by the Claims Administrator and BP on July 18, 2013.[31]

Not only did The Andry Law Firm and BP form a binding agreement, but they also perfected a signed release.  Therefore, the relevant events involving The Andry Law Firm final award even satisfied the dissent of Judge Priscilla Owen in *Young, Johnson*, *supra,* wherein she held that a settlement is not perfected unless there is a signed release.  *Id*. This is because, as mentioned above, on July 18, 2013, The Andry Law Firm signed a release.  In fact, the Andry Law Firm signed the release prepared and provided by the Claims Administrator's office and agreed to by BP.

According to the Fifth Circuit in *Young, Johnson*, *supra*, a settled claim cannot and does not become unsettled simply because it has not yet been paid.  Whether payment has been made

---

[30] Exhibit "B."
[31] Exhibit "A."

is not determinative as to whether there is an obligation to make payment. Said another way, whether payment was made is not the lynchpin of whether a valid, binding settlement evidenced by a signed release is enforceable. Likewise, failure to pay does not nullify the validity of a signed release. Therefore, the question of payment has yet been made or not is irrelevant.

In fact, the *Young, Johnson* Court concluded:

> Thus, because Johnson accepted the offer in the Determination Letter by its own terms by timely submitting the Final Payment Election Form and agreeing to subsequently sign the Release, and because BP declined to appeal that offer within the fourteen-day period, both an offer and acceptance occurred.

> In sum, we affirm the district court's order in part. We agree with the district court that Johnson and BP entered into a binding settlement agreement. Although Johnson's failure to sign a release might ordinarily bar him from recovering under the settlement agreement, BP's refusal to send Johnson the release excuses that failure here.

Here, the settlement between BP and The Andry Law Firm was perfected pursuant to the terms of the Master Settlement Agreement, to which BP agreed. The Andry Law Firm formally signed the acceptance of the claim (release) on July 18, 2013.[32] The Andry Law Firm final award was final, due, and payable on that day in the amount of $7,818,693.95.

The *Young, Johnson* court further ordered an evidentiary hearing to address whether there was any substance to BP's allegations of fraud, which could vitiate consent as to the settlement agreement:

> However, the district court should have held an evidentiary hearing to evaluate whether Johnson fraudulently induced BP into entering the settlement agreement by submitting a fabricated claim to the GCCF. We therefore vacate the district court's judgment and remand for further proceedings.

---

[32] Exhibit "A."

The *Young, Johnson* court's decision to order an evidentiary hearing regarding the fraud allegations brought therein is consistent with this Court's decision to hold the evidentiary hearing involving The Andry Law Firm final award on November 7, 2014.

The Fifth Circuit in *Young, Johnson* remanded the matter for an evidentiary hearing to address allegations that the claimant there fraudulently induced BP into entering the settlement agreement by submitting a fabricated claim. 786 F.2d at 364.  Here, The Andry Law Firm and Gilbert V. Andry, IV were wrongfully dragged into an unrelated investigation involving a Claims Center employee.  Unlike in the *Young, Johnson* Court, this Honorable Court conducted an evidentiary hearing as discussed in detail hereinafter on November 7, 2014, and properly extricated both Gilbert V. Andry, IV and his firm, The Andry Law Firm, LLC.  R. Doc. 14221. ("With response to the separate Andry Law Firm claim, the Court finds there is no evidence to support a finding that this particular claim should be denied because of fraud or 'unclean hands.'")

This Court found no evidence to warrant The Andry Law Firm's claim not being paid. Specifically, this Honorable Court stated from the bench:

> **Finally, with respect to The Andry Law Firm claim, as I said, there has been absolutely no evidence that claim was improperly or corruptly manipulated in any way.  As far as I can recall, it's been reviewed and rereviewed numerous times.  I don't find any evidence or certainly not sufficient evidence of any type of misconduct by Mr. Gibby Andry that would warrant the Court applying any kind of unclean hands doctrine or any other doctrine or legal theory to say that that claim should not be paid on the basis of what happened in this investigation.**

On February 26, 2015, this Court issued an *Order Concerning the Special Master's*

*Report of September 6, 2013*, in which this ruling in open court was memorialized:

> **With respect to the separate Andry Law Firm claim, the Court finds there is no evidence to support a finding that this particular claim should be denied because of fraud or "unclean hands."  The evidence shows that this claim was handled in accordance with the program guidelines and was not expedited or improperly evaluated in any way. As to this particular claim, the Court lifts the stay and instructs the Claims Administrator to process the claim in accordance with its applicable rules and policies.**

Consequently, this Court lifted the stay.

## FACTUAL HISTORY OF THE CLAIM

As outlined in the Relevant Events and Procedural Background, *supra*, the claim of The Andry Law Firm followed an unusual, unprovoked, and unfortunate path, which is fully explained below.

### The Claim of The Andry Law Firm Has Been Fully Adjudicated With A Final Award, And The Release Executed.

The Andry Law Firm, LLC filed its claim *pro se* with the Deepwater Horizon Court Supervised Settlement Program in August of 2012.[33]   On March 20, 2013, more than eight (8) months after the filing of the claim,[34] BP appealed.  On June 4, 2013, the DHECC Appeal Panel upheld the initial compensation finding.[35]   The panel stated that it had "independently reviewed the file material submitted in connection with this appeal and after conferences, the members of the panel unanimously determined that the award should be upheld."[36]

---

[33] Exhibit "B."
[34] The initial delay in evaluating the claim was largely caused by an admitted clerical error by outside vendor, Christopher Rinaldi, an employee of DHECC accounting vendor Postlethwaite & Netterville. *See* Exhibit "D" p. 39 – 41.
[35] Exhibit "C."
[36] *Id.*

BP had fourteen (14) days from the date of the panel decision of June 4, 2013 to appeal that decision.[37]  BP chose not to appeal.  The *Notice Of Filing Of The Economic And Property Damages Settlement Agreement As Amended On May 2, 2012, And As Preliminarily Approved By The Court on May 2, 2012* clearly states that, "Once the Appeal Panelist or Appeal Panel issues a decision, **it should be final**."[38]

The settlement between BP and The Andry Law Firm was perfected pursuant to the terms of the Master Settlement Agreement, and The Andry Law Firm's final award therefore became due and payable on June 18, 2013.  The Andry Law Firm formally signed the acceptance of the final award (release) on July 18, 2013.[39]  However, The Andry Law Firm final award payment was incorrectly delayed because of unrelated allegations made regarding Lionel Sutton's relationship with Andry Lerner, LLC, a firm separate and distinct from The Andry Law Firm.[40]  Those allegations led to an investigation and the findings of the *Freeh Report.*

**The Claims Administrator Vetted The Andry Law Firm Claim More Than Any Other Before Reaching His Conclusion That It Is A Viable Good Faith Final Award Calculation.**

The CSSP's investigation of The Andry Law Firm's claim was exhaustive.  The extensive, redundant, and independent review of The Andry Law Firm's final award was described by Patrick A. Juneau, Claims Administrator, in his July 2, 2013 letter to the Court.  *See* Rec. Doc. 10761-6.  The Andry Law Firm's claim first underwent the standard review process that applies to all claims.  The numbers prepared by Kushner LaGraize, L.L.C. were reviewed by

---

[37] R. Doc. 6430.
[38] *Id.*
[39] Exhibit "A."
[40] R. Doc. 144.

the CSSP's independent accounting experts at Postlethwaite & Netterville and PriceWaterHouse Coopers.  After that, the CSSP issued an Eligibility Notice, finding that The Andry Law Firm was entitled to an award.  *Id.* at 3.  BP appealed that award over The Andry Law Firm's objection.  However, the CSSP Appeal Panel unanimously upheld the initial calculation on June 4, 2013.

Nonetheless, because of allegations lodged against Lionel Sutton, The Andry Law Firm's claim was singled out for additional scrutiny.  PriceWaterHouse Coopers performed a second review, and "[t]he Claims Administrator's Quality Control Team … conducted its own review." *See* Rec. Doc. 10761-6 at 4.  In Mr. Juneau's words, "[a] few 'non-material exceptions' were noted," as a result of this additional review, "but nothing that affected the final award calculation."  *Id.*  Indeed, Mr. Juneau confirmed that The Andry Law Firm's "file is properly documented with bank statements, etc." that properly verify The Andry Law Firm's claim.  *Id.*

The Andry Law Firm should have received payment more than two (2) years ago, but because of an admitted claims office clerical error by an outside vendor and false accusations made months later, which this Honorable Court categorically rejected after an evidentiary hearing, the claim remains a final award calculation with signed release yet unpaid. Unfortunately, The Andry Law Firm final award decision occurred just before the separate and distinct accusations regarding Claims Administrator employee, Lionel Sutton, came to light.

**The Andry Law Firm Was Pulled Into An Unfortunate Nightmare With Which It Had Nothing To Do.**

Claims Office employee David Welker made an investigative mistake which not only

caused The Andry Law Firm final award payment to be incorrectly and not promptly paid, but additionally allowed BP to add insult to the injuries suffered by Gilbert V. Andry, IV and The Andry Law Firm.  In his July 19, 2013 report, Mr. Welker incorrectly and without proper factual foundation conflated The Andry Law Firm with that of the newly and separately formed and separately functioning Andry Lerner.  In his summary dated July 9, 2013, Mr. Welker incorrectly stated the following with the conspicuous title, "smoothing:"[41]

- 2009 – Andry Lerner wins large settlement → pockets roughly $3 million, then does not work at all for roughly 1 year
- 2010 – DWH spill → Andry Lerner files a claim under the settlement to "recover" money
- Formula for determining how much a business should receive, each business must provide proof of revenues for any three (3) month period within one (1) year after the spill (actual formula is very complex but it seems to be based at some level, on the difference between the pre and post-spill earnings)
- Andry Lerner submits its claim using the 3 month period when they won their settlement ($3 million in revenue) and a 3 month period after the spill, during which time the firm was not servicing clients ($0 revenue)
- Andry was granted just over $7 million[42]

Mr. Welker's findings are unfortunately replete with error, mistakenly referring to the pertinent history of The Andry Law Firm, not Andry Lerner.  The Andry Law Firm was started in 1999, and continued to work thereafter and is viable today.  (Andry Lerner was not started until February of 2012—two (2) years after the spill—by separate people to handle BP Claims exclusively, just six (6) months before The Andry Law Firm claim was filed.)  The Andry Law

---

[41] Smoothing was argued by BP in the appeal process and rejected by the appeals panel. In fact, "smoothing" was not considered by this Honorable Court, or the Fifth Circuit, until months after The Andry Law Firm had a final award determination and had executed and returned to the Claims Center a *Full and Final Release, Settlement, and Covenant Not to Sue*. *See e.g.,* R. Docs. 11566, 11697, 11790.
[42] Welker Report, July 19, 2013, attached hereto as Exhibit "F."

Firm received (not pocketed) fees for the successful work performed for its clients.  In one case, Gilbert V. Andry, IV represented a worker who suffered a crush/shred loss of his arm, and in another, a baby boy who suffered severe, permanent brain damage.   There were others. Additionally, The Andry Law Firm never represented a single BP claimant.

But for Mr. Welker mistakenly confusing The Andry Law Firm's virtuous history with that of an altogether separate law firm, The Andry Law Firm final award payment would not have been delayed.  But for Mr. Welker confusing the two (2) separate firms formed more than a decade apart with two (2) separate missions, The Andry Law Firm final award would not have been delayed.  Unfortunately, Special Master Freeh adopted Mr. Welker's mistakes and made them worse.

Despite the factual inaccuracies of Welker and Freeh that any simple due diligence by BP would have made clear, BP maliciously communicated these falsities in court pleadings[43] and national and international advertisements.[44]   Gilbert V. Andry, IV and The Andry Law Firm spent over one hundred thousand dollars and hundreds of hours requesting this Court to extricate Mr. Andry and his firm from a situation they had nothing to do with.  Thankfully, this Court ignored the mistakes and falsities of others, as well as BP, and finally extricated Gilbert V. Andry, IV and The Andry Law Firm from the nightmare that they had been mistakenly forced to endure.

---

[43] *See Motion to Stay the Proceeding*, wherein BP liberally, maliciously, and intentionally incorrectly referred to The Andry Law Firm and the separate firm, Andry Lerner, interchangeable as "law firm Y."  R. Doc. 10761.
[44] Malicious, false advertisements in the Wall Street Journal and New York Times, attached hereto as Exhibit "G."

**After An Evidentiary Hearing, This Court Extricated Gilbert V. Andry, IV And The Andry Law Firm From A Situation In Which They Were Never Involved And Confirmed That The Andry Law Firm Claim Was A Valid, Good-Faith Final Award.**

Eventually, after a full evidentiary hearing on the *Freeh Report* on November 7, 2014, (more than two years after The Andry Law Firm claim was originally made) this Court finally extricated Gilbert V. Andry, IV and The Andry Law Firm and properly concluded that the hands of both Gilbert V. Andry, IV and the hands of The Andry Law Firm were clean.

Since then, as mentioned hereinabove, the Fifth Circuit has addressed the effect of a settlement.  In the present case, the extrication of Gilbert V. Andry, IV and his firm by this Court after evidentiary hearing addressed the only concern of the majority opinion in *Young, Johnson, supra,* whether fraud has vitiated that settlement.  The signed release between The Andry Law Firm (by Gilbert V. Andry, IV) and BP addresses the concerns expressed in Judge Owens' dissent.  Therefore, The Andry Law Firm respectfully requests that this Court enforce the settlement with BP and order the Claims Administrator to pay its final award evidenced by a signed release in full.

**CONCLUSION**

Prior rulings of this Court and the United States Fifth Circuit Court of Appeal, as well as the actual BP Master Settlement Agreement, confirm that the agreement between BP and The Andry Law Firm is a binding settlement, memorialized by the signed release of July 18, 2013, for which it should be paid in full.  The Master Settlement Agreement prevents BP from trying to dodge its settlement with The Andry Law Firm as the Individual Release remains effective regardless of any appeals or court decisions relating in any way to the liability of the released

19

parties in any current or future litigation.   Any other result would run counter to three (3) important to goals encouraged by our judicial system: voluntary settlement of disputes; the enforcement of agreements according to the objective intent of the parties; and an end to litigation.  Order of June 27, 2014, R. Doc. 13076.

On July 18, 2013, there was an end to the litigation between BP and The Andry Law Firm with a signed Settlement Agreement and Release.   Therefore, The Andry Law Firm respectfully requests that this Honorable Court enforce the settlement between The Andry Law Firm and BP and order the Claims Administrator to pay The Andry Law Firm claim in the amount of $7,818,693.95 immediately, without further delay.

Respectfully submitted,

*/s/ Stephen M. Gelé*
**RANDALL A. SMITH, T.A. (# 2117)**
**STEPHEN M. GELÉ (#22385)**
**SARA PORTER (#34190)**
Of
Smith & Fawer, LLC
201 St. Charles Ave., Ste. 3702
New Orleans, LA  70170
Telephone:  504-525-2200
Facsimile:  504-525-2205
rasmith@smithfawer.com
sgele@smithfawer.com

**Attorneys for The Andry Law Firm, L.L.C.**

20

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing pleading has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by Using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 13th day of November, 2015.

*/s/ Stephen M. Gelé*_____
Stephen M. Gelé