```
 1                    UNITED STATES DISTRICT COURT
 2                    EASTERN DISTRICT OF LOUISIANA
 3
 4
     IN RE:  OIL SPILL BY THE OIL RIG    *   10-MD-2179
 5           DEEPWATER HORIZON IN THE    *
             GULF OF MEXICO ON           *   Section J
 6           APRIL 20, 2010              *
                                         *   November 7, 2014
 7                                       *
     Applies to:  12-970                 *   New Orleans, Louisiana
 8                                       *
     * * * * * * * * * * * * * * * * * *
 9
10
                      EVIDENTIARY HEARING BEFORE
11                  THE HONORABLE CARL J. BARBIER
                    UNITED STATES DISTRICT JUDGE
12
13   Appearances:
14
     For the Special Master:      Pepper Hamilton, LLP
15                                BY:  GREGORY A. PAW, ESQ.
                                       DEREK E. HINES, ESQ.
16                                     BRIAN M. NICHILO, ESQ.
                                  3000 Two Logan Square
17                                Eighteenth and Arch Streets
                                  Philadelphia, Pennsylvania 19103
18
19   For Lionel H. Sutton III:    Sutton Law Firm
                                  BY:  LIONEL H. SUTTON III, ESQ.
20                                935 Gravier Street, Suite 1910
                                  New Orleans, Louisiana 70112
21
22   For Christine Reitano:       MARY OLIVE PIERSON, ESQ.
                                  8702 Jefferson Highway, Suite B
23                                Post Office Box 14647
                                  Baton Rouge, Louisiana 70898
24
25
```



EXHIBIT D

| | | |
|---|---|---|
| 1 | Appearances: | |
| 2 | | |
| 3 | For Jon Andry: | Unglesby Law Firm<br>BY:  LEWIS O. UNGLESBY, ESQ.<br>246 Napoleon Street<br>Baton Rouge, Louisiana 70802 |
| 4 | | |
| 5 | | |
| 6 | For Glen J. Lerner: | Zuckerman Spaeder, LLP<br>BY:  WILLIAM W. TAYLOR III, ESQ.<br>     AMIT P. MEHTA, ESQ.<br>1800 M Street, NW, Suite 1000<br>Washington, DC 20036 |
| 7 | | |
| 8 | | |
| 9 | For Glen J. Lerner: | Jones Walker, LLP<br>BY:  PAULINE F. HARDIN, ESQ.<br>201 St. Charles Avenue, Suite 5100<br>New Orleans, Louisiana 70170 |
| 10 | | |
| 11 | | |
| 12 | For Andry Lerner, LLC: | Heller Draper Patrick Horn<br>  & Dabney, LLC<br>BY:  DOUGLAS S. DRAPER, ESQ.<br>650 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70130 |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | For The Andry Law Firm, LLC: | Smith & Fawer, LLC<br>BY:  STEPHEN M. GELÉ, ESQ.<br>201 St. Charles Avenue, Suite 3702<br>New Orleans, Louisiana 70170 |
| 17 | | |
| 18 | | |
| 19 | For Gilbert "Gibby" Andry IV: | Phelps Dunbar, LLP<br>BY:  HARRY ROSENBERG, ESQ.<br>365 Canal Street, Suite 2000<br>New Orleans, Louisiana 70130 |
| 20 | | |
| 21 | | |
| 22 | Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Box 2-13<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |
| 23 | | |
| 24 | | |
| 25 | Proceedings recorded by mechanical stenography using computer-aided transcription software. | |

CHRISTOPHER RINALDI - DIRECT

```
08:51   1                    DIRECT EXAMINATION
08:51   2   BY MR. UNGLESBY:
08:51   3   Q.   What do you do, sir?
08:51   4   A.   I am a senior claims analyst at Postlethwaite &
08:51   5   Netterville.
08:51   6   Q.   Do you have any connection to the Deepwater Horizon
08:51   7   matter?
08:51   8   A.   I work for Postlethwaite, which is an accounting vendor
08:51   9   for the Deepwater Horizon Economic Claims Center.
08:51  10   Q.   All right.  Have you in your life, before this started,
08:51  11   ever met Tiger Sutton?
08:51  12   A.   No.
08:51  13   Q.   Have you ever talked to Tiger Sutton?
08:51  14   A.   No.
08:51  15   Q.   Had Tiger Sutton ever called you and tried to talk to you?
08:51  16   A.   No.
08:51  17   Q.   Nor you him?
08:51  18   A.   No.
08:52  19   Q.   Now, explain to the judge -- well, let me short-circuit
08:52  20   it.  Is what Mr. Staley told us about how this claim, the Andry
08:52  21   brothers' claim got stuck in the queue accurate?
08:52  22   A.   Yes.  I called out -- I did not receive the information
08:52  23   directly to my e-mail inbox, which I normally do.  I sent an
08:52  24   incomplete notice.  And then in March, when looking back at the
08:52  25   claim, my best conclusion is -- how Mr. Staley described it is
```

CHRISTOPHER RINALDI - DIRECT

| | | |
|---|---|---|
| 08:52 | 1 | what happened to the claim. |
| 08:52 | 2 | Q.   Now, sir, when you sent out your incomplete notice for |
| 08:52 | 3 | more information, did you send it to Mr. Gibby Andry, or did |
| 08:52 | 4 | you send it to Mr. Gibby Andry's accountant, or did you send it |
| 08:52 | 5 | to both? |
| 08:52 | 6 | A.   It was a while ago.  I can't recollect who I talked to, |
| 08:52 | 7 | but my best memory is the accountant.  The incomplete notice is |
| 08:53 | 8 | an automated process, so I don't know who I sent it to. |
| 08:53 | 9 | Q.   But you don't send it as John Doe; you send it as |
| 08:53 | 10 | Christopher Rinaldi? |
| 08:53 | 11 | A.   From my knowledge, my name isn't on it.  My name would be |
| 08:53 | 12 | on an e-mail I sent to them.  When I call, I obviously give my |
| 08:53 | 13 | name and where I am from.  But I don't believe my name is on |
| 08:53 | 14 | the incomplete notice. |
| 08:53 | 15 | Q.   So whomever it was at Gibby Andry's office would have |
| 08:53 | 16 | known to respond to you? |
| 08:53 | 17 | A.   They should have. |
| 08:53 | 18 | Q.   So it wasn't like -- y'all don't have secret names there |
| 08:53 | 19 | at the claims office, do you? |
| 08:53 | 20 | A.   No. |
| 08:53 | 21 | Q.   Now, when you asked Mr. Staley -- when you recognized the |
| 08:53 | 22 | mistake and you asked Mr. Staley should you do anything unique |
| 08:53 | 23 | or different, why did you ask him that? |
| 08:53 | 24 | A.   I thought there might have been a complaint.  I just |
| 08:53 | 25 | thought I messed up, so I was a little nervous when I saw that |

CHRISTOPHER RINALDI - CROSS

```
08:53  1   and looked back on the history of the claim.
08:54  2   Q.  All right.  But your nervousness -- let's be clear,
08:54  3   Mr. Rinaldi.  It's quite all right, we all mess up.  But your
08:54  4   nervousness was not because somebody named Tiger Sutton was
08:54  5   asking any questions.  You didn't even know that.  Your
08:54  6   nervousness was this case has been stuck by accident for a few
08:54  7   months?
08:54  8   A.  I saw I made a mistake, and I wanted to correct the
08:54  9   mistake.
08:54 10   Q.  Did you ever even know that Tiger Sutton was the person
08:54 11   who started this inquiry before this investigation?
08:54 12   A.  No.
08:54 13   Q.  I didn't think so.  All right.
08:54 14            And, of course, he never talked to you?
08:54 15   A.  No.
08:54 16            THE COURT:  Any questions for this witness from this
08:54 17   side of the room?
08:54 18            Mr. Paw, do you have any?
08:54 19            MR. PAW:  Very briefly, Your Honor.
08:54 20                        CROSS-EXAMINATION
08:54 21   BY MR. PAW:
08:54 22   Q.  Good morning, Mr. Rinaldi.
08:54 23   A.  How are you doing?
08:55 24   Q.  When you were addressing this issue back in March of 2013,
08:55 25   Mr. Staley was not your direct boss, but he was actually the
```

CHRISTOPHER RINALDI - CROSS

```
08:55   1   boss above that, was he not?
08:55   2   A.   Two levels above me.
08:55   3   Q.   Two levels above you.
08:55   4        Had you ever dealt directly with Mr. Staley at that
08:55   5   time about particular claims?
08:55   6   A.   Yes.
08:55   7   Q.   How frequently would you interact with Mr. Staley?
08:55   8   A.   It wasn't routine, but -- it wasn't abnormal, it wasn't
08:55   9   routine.  I don't know how many times.
08:55  10   Q.   But as someone who is really your boss' boss, it's fair to
08:55  11   say that when Mr. Staley comes to your office, it's something
08:55  12   you are going to pay close attention to?
08:55  13   A.   Yes.
08:55  14        MR. PAW:  No further questions, Your Honor.
08:55  15        THE COURT:  Any redirect, Mr. Unglesby?
08:55  16        MR. UNGLESBY:  I'm getting coaching here, Judge.
08:55  17   Half a second.
08:55  18        Never mind, Your Honor.  No, no redirect.
08:55  19        MR. CHEATWOOD:  Your Honor, may I ask that
08:56  20   Mr. Rinaldi be released from the subpoena as well.
08:56  21        THE COURT:  Anybody have any objection?
08:56  22        All right.  He is released.
08:56  23        Thank you, Mr. Rinaldi.
08:56  24        MR. CHEATWOOD:  Thank you, Judge.
08:56  25        THE COURT:  Call your next witness, Mr. Unglesby.
```

others are responsible for all of that. I'm suggesting that this is where it started. So it's a contributing factor to all of that that's unfortunately occurred and we have had to deal with. So there has been harm.

Finally, with respect to The Andry Law Firm claim, as I said, there has been absolutely no evidence that that claim was improperly or corruptly manipulated in any way. As far as I can recall, it's been reviewed and re-reviewed numerous times. I don't find any evidence or certainly not sufficient evidence of any type of misconduct by Mr. Gibby Andry that would warrant the Court applying any kind of unclean hands doctrine or any other doctrine or legal theory to say that that claim should not be paid on the basis of what happened in this investigation.

As was pointed out I think accurately, the most that can be said is that Mr. Gibby Andry was pretty aggressive in terms of trying to push his law firm's claim through and get it paid, but that conduct is not sufficient to say that his claim should be denied on that basis.

I am not prepared today to decide what sanctions should be imposed. I need to give that some thought. As I said, I have pointed out where I think the professional misconduct occurred. I need to give some more thought to what the appropriate action should be on that.

Anyone here now from the claims facility? I

| | | |
|---|---|---|
| 04:23 | 1 | don't see anyone. |
| 04:23 | 2 | I know we were talking about at one point a |
| 04:23 | 3 | universe of some 600 claims that had been held up, the |
| 04:23 | 4 | Andry Lerner firm's -- maybe Mr. Paw can tell me -- and there |
| 04:23 | 5 | was some negotiations over -- I had said I want the legitimate |
| 04:23 | 6 | claims to be paid and the ones that are suspicious or |
| 04:23 | 7 | red-flagged we will hold up and investigate further. There |
| 04:23 | 8 | have been a few of those, we know. What's the status of paying |
| 04:24 | 9 | the claims that have been cleared and should be paid and then |
| 04:24 | 10 | escrowing those fees? |
| 04:24 | 11 | **MR. DRAPER:** I can address that, Your Honor. There |
| 04:24 | 12 | is a process in place where the legitimate claims are paid. I |
| 04:24 | 13 | get the money. It is then -- |
| 04:24 | 14 | **THE COURT:** I don't know. Did you identify yourself |
| 04:24 | 15 | earlier? |
| 04:24 | 16 | **MR. DRAPER:** Douglas Draper on behalf of the |
| 04:24 | 17 | Andry Lerner firm. |
| 04:24 | 18 | **THE COURT:** Okay, Mr. Draper. |
| 04:24 | 19 | **MR. DRAPER:** The checks come to me. I sign the |
| 04:24 | 20 | checks. They are then brought over to the client. I report |
| 04:24 | 21 | back to the claims administrator as well as Mr. Paw when the |
| 04:24 | 22 | money has been distributed. The legal fees are sitting in an |
| 04:24 | 23 | escrow account that I control. So I'm holding the legal fee |
| 04:24 | 24 | portion. |
| 04:24 | 25 | **THE COURT:** So the claims that have been cleared, |

```
04:24   1  those claimants are being paid, but the legal fees are being
04:24   2  escrowed, correct?
04:24   3          MR. DRAPER:  Yes.  Yes.
04:24   4          MR. PAW:  That's correct, Your Honor.
04:24   5          THE COURT:  I wanted to clarify that because that was
04:24   6  my understanding.
04:25   7          Anybody have anything else to say?  I think I
04:25   8  have said all I need to say right now.
04:25   9          MR. UNGLESBY:  You are going to tell us when to come
04:25  10  back?
04:25  11          THE COURT:  I'll figure out how to deal with it.  I
04:25  12  haven't thought beyond what I just said, Mr. Unglesby.
04:25  13          I want to repeat again as I started.  This is a
04:25  14  very unfortunate set of circumstances that arose here.  I
04:25  15  really regret that it's come to this.  This is not what I
04:25  16  thought I was signing up to do when I took this job, to deal
04:25  17  with something like this, but it has to be addressed.  Court is
04:25  18  adjourned.
04:26  19          THE DEPUTY CLERK:  All rise.
04:26  20          (Proceedings adjourned.)
04:26  21                        * * *
       22
       23
       24
       25
```

## CERTIFICATE

I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of proceedings in the above-entitled matter.

s/ Toni Doyle Tusa
Toni Doyle Tusa, CCR, FCRR
Official Court Reporter