# EXHIBIT 21



1.1.2.7.   **Notice Regarding Indemnity.**  Plaintiffs and Economic Class Members expressly acknowledge that, to the fullest extent allowed by law, the indemnity obligations contained in Section 1.1.2.6 apply to claims against Released Parties predicated on negligence, gross negligence, willful misconduct, strict liability, intentional torts, liability based on contractual indemnity, and any and all other theories of liability, and any and all awards of attorneys' fees or other costs or expenses.  The Plaintiffs and Economic Class Members acknowledge that this indemnity is for conduct occurring before the date of the Agreement and therefore is not affected by public policies or other law prohibiting agreements to indemnify in advance of certain conduct.  **THE PLAINTIFFS AND ECONOMIC CLASS MEMBERS ACKNOWLEDGE THAT THIS SECTION 1.1.2.7 COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS SECTION 1.1.2.7 IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

1.1.2.8.   **No Set-off.**  Should the Economic Class, Plaintiffs, or the Economic Class Members succeed in recovering monies from Transocean or Halliburton, BP agrees that it would not be entitled to set-off such recovery against its obligation to make Settlement Payment(s).  Notwithstanding this Section 1.1.2.8, however, the Economic Class, Plaintiffs, and Economic Class Members acknowledge and agree that this "no set-off" term does not apply to any right BP may have pursuant to the Agreement to receive a credit for monies received by Economic Class Members.

1.1.3.   **Assignment.**  To the fullest extent allowed by law and applicable contracts, and subject to Sections 1.1.2, 1.1.4, and 1.1.5, upon Preliminary Approval, and subject to occurrence of the Effective Date as a condition subsequent, BP assigns to the Economic Class, only as a juridical entity and not to Economic Class Members individually, the following claims and causes of action against Transocean and Halliburton (but no other party) arising out

028993

of, due to, resulting from, or relating in any way to, directly or indirectly, to the Deepwater Horizon Incident, on the terms and conditions set forth herein:

1.1.3.1. All damages related to the repair, replacement, and/or re-drilling of the MC-252 Well;

1.1.3.2. All economic damages for the loss of the MC-252 Well, including lost profits, lost hydrocarbons, and diminution in value of the leasehold;

1.1.3.3. All costs that BP incurred to control the MC-252 Well and/or to respond to, contain, and/or clean up the DWH Spill;

1.1.3.4. All rights to indemnity, contribution, or subrogation for claims paid by BP and/or the GCCF on or before the entry of the Preliminary Approval Order, subject, however, to (a) BP's retention of its right to pursue the payments identified in Section 1.1.4.2, which are expressly retained, and (b) BP's retention of its right to recover from Transocean and Halliburton for the payments identified in Section 1.1.4.2;

1.1.3.5. All claims or causes of action to pursue reimbursement of Settlement Payment(s) under theories of indemnification, contribution, subrogation, or any other theory of recovery;

1.1.3.6. All punitive, exemplary, multiple, or non-compensatory damages;

1.1.3.7. All claims and causes of action to recover the damages, losses, costs, fees, and amounts set forth in Sections 1.1.3.1-1.1.3.6, including BP's claims for breach of contract, unseaworthiness, negligence, gross negligence, willful misconduct, fraud, fraudulent concealment, and intentional torts and including BP's claims in the *BP Parties' Counter-Complaint, Cross-Complaint And Third Party Complaint Against Transocean And Claim In Limitation*, Docket No. 2074 in Case 2:10-md-02179-CJB-SS, and *BP's Cross-Complaint And Third-Party Complaint Against Halliburton*, Docket

028994

No. 2082 in Case 2:10-md-02179-CJB-SS.

1.1.3.8. BP agrees to cooperate, at its expense, in discovery with the Economic Class in the prosecution of the Assigned Claims, through the provision of evidence and witnesses, and the Economic Class agrees to exercise reasonable restraint in their requests for assistance. The Economic Class pledges to use its best efforts to avoid having to call BP employees as witnesses in court for a trial or other proceedings pursuing Assigned Claims.

1.1.4. **All Defenses and Other Claims Retained.** All of BP's claims not expressly assigned by Section 1.1.3 are hereby retained.

1.1.4.1. Notwithstanding Section 1.1.3 and to avoid doubt, BP does not assign any claim for indemnification or contribution or subrogation of amounts it might pay for fines, penalties, or sanctions, including under the Clean Water Act or other federal or state laws. Nothing in this provision shall be construed to indicate that BP believes such claims are valid, and BP reserves all legal arguments against such claims.

1.1.4.2. Notwithstanding Section 1.1.3 and to avoid doubt, BP does not assign, and in fact retains, any claim for indemnification, contribution, subrogation, or insurance coverage for amounts paid by the GCCF and/or BP on or before the entry of the Preliminary Approval Order to settle or resolve any personal injury, bodily injury, and/or wrongful death claims of the employees of Transocean or Transocean's contractors who were on board the Deepwater Horizon on April 20, 2010, whether brought by such employees or their representatives, including for amounts the GCCF paid for any "Employee Settlement" and to resolve "Employee Claims" as defined and provided for in the Agreement Relating to Payment of Transocean Employee Settlement Claims and as approved by Court order entered on December 13, 2011 (Rec. Doc. 4893) (hereafter referred to as "Insurance Proceeds for Transocean Personnel"). BP warrants that it has

028995