IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig *"Deepwater Horizon"* in the Gulf of Mexico, on April 20, 2010 | * * * | MDL NO. 2179 SECTION: J |
| This document applies to: *All Cases* | * * * * * * | HONORABLE CARL J. BARBIER MAGISTRATE JUDGE SHUSHAN |

## PLAINTIFFS' OPPOSITION TO HALLIBURTON'S MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiffs, including, but not limited to, the formally certified and approved Economic & Property Damages Class, through undersigned Liaison Counsel, Class Counsel, and members of the Plaintiffs' Steering Committee, respectfully submit the following Opposition to: **(i)** Halliburton's Motion for Partial Judgment on the Pleadings regarding Punitive Damages [Rec. Doc. 8267]; and **(ii)** Halliburton's Motion for Partial Judgment on the Pleadings regarding BP's Assignment of Claims [Rec. Doc. 8268]: [1]

**MAY IT PLEASE THE COURT:**

Initially, the plaintiffs would respectfully suggest that consideration of these motions is premature, as **(i)** the motions ultimately deal with only *quantum* issues, and do not directly bear on the liability issues to be determined by the Court in Phase One (or Phase Two), and **(ii)** the assignment contained within the Economic & Property Damages Class Settlement Agreement is subject to a pending appeal before the U.S. Fifth Circuit.

---

[1] Plaintiffs further adopt and incorporate fully their OPPOSITION TO TRANSOCEAN'S MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS.



## Overview of Existing Claims

Plaintiffs believe that it is likely helpful, at the outset, to review the sets of claims that currently exist against Halliburton, in light of the BP Class Settlements and the controlling Orders of the Court:

I.  **Economic & Property Damage Settlement Class Claims**

    a.    BP's Claim for Its Own Compensatory Damages suffered by BP

            Including claims for BP's own direct "first-party" damages, such as loss of the well, loss of production, the costs of drilling the relief wells, clean-up and response costs incurred;

            Assigned to and Asserted by the Class (Trust) as a whole; and,

            Available if Class (Trust) Establishes "Gross Negligence" [6] or Fraud [7, 8] and/or "core" Contractual Breach [9]

    b.    BP's Claim for Punitive Damages

            Assigned to and Asserted by the Class (Trust) as a whole; and,

            Available upon Showing of "Gross Negligence"

---

[6] *See* ORDER AND REASONS [Doc 5493] (Jan. 31, 2012), at p.3 fn.4 ("Gross negligence will invalidate a release or exculpatory clause"); ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.13-14; *citing,* Houston Exploration v. Halliburton, 269 F.3d 528 (5th Cir. 2001); Todd Shipyards v. Turbine Service Inc, 647 F.3d 401, 411 (5th Cir. 1982); Royal Ins Co v. Southwest Marine, 194 F.3d 1009, 1016 (9th Cir. 1999); La Esperanza de PR v. Perez Cia de Puerto Rico, 124 F.3d 10, 19 (1st Cir. 1997) (a *release* is invalid as to gross negligence, reckless conduct and/or intentional acts).

[7] *See* ORDER AND REASONS [Doc 5493] (Jan. 31, 2012), at p.5 ("The Court agrees that fraud could void an indemnity clause on public policy grounds").

[8] Plaintiffs note that, unlike the claim for punitive damages, which arguably needs to satisfy the *P&E Boat Rentals* showing of knowledge, participation or ratification by the corporation's management, Plaintiffs submit that any grossly negligent or reckless conduct (even if only "operational"), or any material instance of fraud, is sufficient to invalidate the release as a matter of public policy.

[9] *See* ORDER AND REASONS [Doc 5493] (Jan. 31, 2012), at p.4; ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.25, 29 (Court defers ruling on whether a "core" breach of the drilling contract that materially increased the risk to BP might invalidate release and/or indemnity).

    c.    Classmembers' Expressly Reserved Punitive Damage Claims [10]

        Asserted by Classmembers with *Robins Dry Dock* Standing Individually; and,

        Available if Classmember Establishes "Gross Negligence"

## II. Private Economic Opt Out and Excluded Claims

    For Compensatory and Punitive Damages;

    Available to Plaintiffs with *Robins Dry Dock* Standing;

    Compensatory Damages Indemnified by BP; [11] and,

    Punitive Damages Available upon Showing of "Gross Negligence"

## III. Personal Injury Claims

    a.    Medical Benefits Classmembers' Expressly Reserved Claims for Punitives

    b.    Personal Injury Claims of Opt Outs and/or People Not Covered by Class

        For Compensatory and Punitive Damages;

        Compensatory Damages Indemnified by BP; and,

        Punitive Damages Available upon Proof of "Gross Negligence"

## IV. Local Government Claims

    For Compensatory and Punitive Damages;

    Available to Government Entities with *Robins Dry Dock* Standing;

    Compensatory Damages Indemnified by BP; and,

    Punitive Damages Available upon Proof of "Gross Negligence"

## V. State Claims

---

[10] *See* B1 ORDER [Doc 3830], pp.26-27, 38 (OPA does not displace punitive damage claims); ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.19, 29 (indemnity does not apply to punitive damage claims).

[11] *See generally,* ORDER AND REASONS [Doc 5493] (Jan. 31, 2012), at p.3; *but see:* p.4 (re potential "core" contractual breach).

While Halliburton may be effectively relieved of its financial responsibility by virtue of the indemnity provisions found within the services contract, Halliburton is nevertheless liable for compensatory damages under General Maritime Law to many Plaintiffs in the first instance.

Halliburton is also responsible, under OPA's scheme, for contribution with respect to the compensatory damages paid to plaintiffs. *See* 33 U.S.C. §§2709 and 2715(a). Again, Halliburton is only effectively relieved of this financial responsibility by virtue of the contractual indemnity agreement; *not* as a matter of law.

Moreover, with respect to the assigned BP compensatory damage claim, this Court has held that "Gross negligence will invalidate a release or exculpatory clause." *See* ORDER AND REASONS [Doc 5493] (Jan. 31, 2012), at p.3 fn.4; ORDER AND REASONS [Doc 5446] (Jan. 26, 2012), at pp.13-14; *citing*, Houston Exploration v. Halliburton, 269 F.3d 528 (5th Cir. 2001); Todd Shipyards v. Turbine Service Inc, 647 F.3d 401, 411 (5th Cir. 1982); Royal Ins Co v. Southwest Marine, 194 F.3d 1009, 1016 (9th Cir. 1999); La Esperanza de PR v. Perez Cia de Puerto Rico, 124 F.3d 10, 19 (1st Cir. 1997).[22] Hence, a showing of gross negligence would invalidate the service contract's release provisions with respect to BP's first-party compensatory damage claims.[23]

---

[22] *See also*, PROSSER & KEETON ON TORTS (5th ed. 1984) at 484 ("[Exculpatory] agreements generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless, or gross, or to any conduct which constitutes an intentional tort"); 6A CORBIN ON CONTRACTS (1962 ed.) §1472 ("It is generally held that those who are not engaged in public service may properly bargain against liability for harm caused by their ordinary negligence in performance of contractual duty; but such an exemption is always invalid if it applies to harm willfully inflicted or caused by gross or wanton negligence"); Robertson & Sturley, *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits*, 36 Tul. Mar. L.J. 425, 454-455 (2012) ("it is ordinarily against public policy to try to contract out of responsibility for conduct any more blameworthy than mere negligence"); *see also*, Engerrand, *Indemnity for Gross Negligence in Maritime Oilfield Contracts*, 10 LOY. MAR. L.J. 319, 356 & n.200 (2012) (explaining and upholding "the vital distinction between exculpation and indemnification").

[23] Plaintiffs note that, unlike the claim for punitive damages, which arguably needs to satisfy the *P&E Boat Rentals* showing of knowledge, participation or ratification by the management of the corporation, any grossly negligent or reckless conduct (even if only "operational") is sufficient to invalidate the release as a matter of public policy.

10

### The Anti-Assignment and Consequential Damages Provisions Are Red Herrings

BP has not assigned the BP-Halliburton services contract to the Plaintiff Class. Nor are the plaintiffs seeking to compel Halliburton to provide cementing services. Rather, it is only the claims arising from Halliburton's past contractual breaches and failures which have been assigned to the Plaintiff Class. Even assuming *arguendo* that such claims cannot be assigned, (which is denied), there is nothing that would prevent BP from assigning extra-contractual claims, arising in tort, in equity, or under the provisions of OPA or other statutes.

Similarly, the contractual provision regarding consequential damages would not apply to a statutory cause of action, nor to a cause of action sounding in tort. Yet, even assuming *arguendo* that such provision applied to BP's extra-contractual claims, (which is denied), a finding of gross negligence (or fraud) would invalidate the waiver or release of consequential damages, just as it would invalidate the waiver and release of other damages, as a matter of public policy.

Hence, these contractual provisions are nothing more than red herrings.

### The Economic & Property Damages Settlement Preserves Punitive Damage Claims

First, it is important to recognize that the settlement does not in any way affect the punitive damage claims of personal injury plaintiffs or of economic plaintiffs who are not members of the Class (*e.g.,* opt outs, local governments, other excluded persons and entities). In addition, the Settlement vests the Class as a whole with BP's punitive damage claim against Halliburton, (which is not released nor indemnified under the services contract).