UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | ) | |
| "Deepwater Horizon" in the | ) | MDL NO. 2179; SECTION J |
| Gulf of Mexico, on April 20, 2010 | ) | |
| | ) | JUDGE CARL J. BARBIER |
| This document relates to: | ) | |
| | ) | MAG JUDGE SHUSHAN |
| 12-970, *Bon Secour Fisheries, Inc. et al.* | ) | |
|   v. BP Exploration & Production Inc., | ) | |
| et al | ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| Case No: 13--6009 | ) | |

OPPOSITION TO MOTION OF THE DHECC FOR RETURN OF
PAYMENTS MADE TO TOMMY PHAM

I.      INTRODUCTION

The Deepwater Horizon Economic Claims Center ("DHECC") accuses Tommy Pham of fraud in connection with the *Deepwater Horizon* settlement program. (Rec. Doc. 15361)  However, it fails to address important facts surrounding Tommy Pham's claim as well as the DHECC's basic mandates.

In September 2013 Special Master Louis J. Freeh was charged in part to "initiate legal action to "clawback" the payment of fraudulent claims." (Rec. Doc. 11288)  In that endeavor, he and his successors have succeeded masterfully, but overzealously.    Even to the point of disregarding the rest of that sentence, which requires him to "do so in a manner which does not delay or impede the payment of legitimate claims." *Id.*   The Fraud, Waste, and Abuse ("FWA") wing of the DHECC is apparently made up of internal auditors and attorneys, the Freeh Group, Pepper Hamilton, LLP and HUB investigations.   As a whole the FWA group continues to repeatedly violate the basic tenant of

the Deepwater Horizon Economic and Property Damages Class Settlement ("Class Settlement") to do their utmost to pay all estimate claims their maximum value under the settlement.

Here, the Motion of the DHECC for Return of Payments Made to Tommy Pham ("Clawback Motion") clearly states that Tommy Pham should have been awarded $226,042 under the terms of the settlement.   Therefore, a motion to clawback the entirety of his settlement is not appropriate under the terms of the Class Settlement, on its face.  As explained herein, the DHECC's Motion should be denied because the claims were appropriate and justified, and there is a genuine issue of material fact as to the amount Tommy Pham is owed under the terms of the settlement. Alternatively, the DHECC's Motion should be denied because death penalty sanctions are not appropriate.

## II.      BACKGROUND REGARDING THE CLASS SETTLEMENT

The 5th Circuit Court of appeals has already reviewed multiple aspects of the Deepwater Horizon Economic and Property Damage Class ("Class").   It has repeatedly held that the Deepwater that the Class, is at bottom a contract based first and foremost on a written text, citing, *In Re Raymark Industries, Inc.*, 831 F.2d 550, 553 (5th Cir. 1987).  Accordingly, "[w]e begin with the text," wrote Chief Justice Roberts in an interpretive primer for statutory construction.   *King v. Burwell*, 135 S.Ct. 2480, 2489 (2015).  In like fashion, a contract begins and usually ends with the text of the agreement and, in this case, there is no escaping the basic fact that the settlement agreement mandates that:

The Settlement Program, including the Claims Administrator and Claim Administration Vendors, shall work with Economic Class Members (including individual Economic Class Members' counsel and Class Counsel) to facilitate Economic Class Members' assembly and submission of Claims Forms, including all supporting documentation necessary to process Claim Forms under the applicable Claims Processes. The Settlement Program, including the Claims Administrator and Claims Administration Vendors, shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member **has the best opportunity to be determined eligible for and receive the Settlement**

**Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement.**[1]

Nothing in any Court order has countermanded this basic edict, because to do so would violate the basic tenants of contract law, "offer and acceptance."  Claimants to the Class Settlement were offered the chance to participate in a class that not only promised to be claimant friendly, but mandated it as well.

### III.    FACTUAL BACKGROUND

Claimant has been involved in the  shrimping  business for  many years,  deriving  all  of his income  from the shrimp industry, including from 2008 through 2009, the  period relevant to his claims. In other words, he is precisely the type of claimant who was damaged by the  oil  spill,  and who  the  seafood  settlement  program  was  designed  to  protect.  Tommy Pham has been a shrimp fisherman working in that profession for over thirty years. [2]

He is the part-owner, along with his wife Tiffany Tran, and Captain of the Capt Tommy, Vessel Number 920049, which he purchased in 1993 and which he has used to shrimp the Gulf of Mexico ever since.  The Capt Tommy is 76' long steel vessel used to catch shrimp in the Gulf of Mexico.

In 2009, the transmission on the Capt Tommy broke on or about March 31, 2009 when he returned to the dock.  He was forced to wait several weeks for it to be repaired because the mechanic, Thomas Gregory, was working on other projects and because it took some time to order the parts necessary to make the repairs.  The repairs where then made over a two day period from April 15 to April 17.[2]

As a result, his boat lost significant revenue in April 2009, and the exclusion of the 2009 revenue was appropriate.

As a full time shrimp boat captain he typically lets his wife Tiffany Tran handle the business aspects of the Capt Tommy.

---

[1] Rec. Doc. 8189 at 4.3.7 (Emphasis Added).
[2] See Exhibit A – Affidavit of Tommy Pham with attachment.

He authorized Tiffany Tran to handle all of his claims with the DHECC including his boat owner claim.  His wife apparently used improper documents that did not include the correct vendor or date to reflect the actual 2009 repairs.

He was unaware of the documents that were filed in support of his claim until the issue was raised in the Clawback Motion.

He is a full time commercial shrimper with well documented ownership of his vessel and his annual catch.   He lost a great deal of money from the oil spill and should be compensated for his loss.

Both Tommy and his wife are first generation immigrants from Vietnam and have limited skills communicating in English.

## LEGAL STANDARD

### A.  SUMMARY JUDGMENT

As this Court has recognized with respect to DHECC's motions under Rule 56, DHECC can only obtain  summary judgment on a fraud claim if it shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[3] As the Court further recognized:  "The non-moving party can then defeat the motion by either countering with sufficient evidence of its own, or 'showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party.' *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991). Any factual controversies must be construed in the light most favorable to the non-mover, assuming an actual controversy exists. *Edwards v. Your Credit, Inc.,* 148 F.3d 427, 432 (5th Cir. 1998).  In a similar vein, summary judgment must be denied when reasonable minds might differ on the inferences arising from the undisputed facts. *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 352 (5th Cir. 1989)."[4]

In that regard, summary judgment should be granted when the  pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue of material

---

[3] Rec. Doc. 14813, Order Dated July 7, 2015 at 3-4, *citing* Fed. R. Civ. P. 56(a).
[4] *Id.*

fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The initial burden of showing that no genuine issue of material fact exist rests with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court's function on a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, "if the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only when the moving party has discharged its initial burden, does the burden shift to the non-moving party to set forth specific facts showing there is a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e).

Here, the DHECC bears the burden of proving **ALL** elements essential to its claim of fraud.

## B. COMMON LAW FRAUD

Pursuant to the Amended Settlement Agreement, which governs the settlement program, general maritime law applies to any disputes regarding the Agreement or the settlement program: "[T]his Agreement and the Release and Individual Releases hereunder shall be interpreted in accordance with General Maritime Law as well as in a manner intended to comply with OPA [Oil Pollution Act]." Amended Settlement Agreement, § 36.1. General maritime law incorporates the common law of fraud. *See Black Gold Marine, Inc. v. Jackson Marine Co., Inc.*, 759 F.2d 466, 470 (5th Cir. 1985*); Operaciones Technicas Marnas S.A.S. v. Diversified Marine Servs., LLC,* 926 F. Supp. 2d 858, 862 (E.D. La. 2013); *Cargill, Inc. v. Degesch Am., Inc.* 875 F. Supp. 2d 667, 674 (E.D. La. 2012); *Elmwood Dry Dock & Repair v. H & A Trading Co., Ltd.,* Nos. 93-02156, 94- 01844, 94-03783, 97-00191, 1997 WL 781298, at \*21 (E.D. La. Dec. 16, 1997).

As such, the DHECC must establish that, based on the undisputed facts in the record, they are entitled to judgment as a matter of law with respect to each of the five elements of common law fraud (as applied to the instant matter):

1.    The defendant (claimant) made a false representation;

2.    The defendant (claimant) knew or believed that the representation was false;

3.    The defendant (claimant) intended to defraud the plaintiff (DHECC) by inducing the plaintiff (DHECC) to act in reliance on the representation;

4.    The plaintiff (DHECC) justifiably relied on the representation; and

5.    The plaintiff (DHECC) was damaged because of such reliance.

*See eg Operaciones*, 926 F. Sup. 2d at 862; *Cargill*, 975 F. Supp. 2d at 674; *Elmwood*, 1997 WL 781298, at *21-22.

As this opposition shows, they have failed in conclusively proving **<u>ANY</u>** element of fraud, much less all elements of Fraud, as they are required to do.

## C. DEATH PENALTY SANCTIONS

Assuming, *arguendo*, that the DHECC could meet the burden of proof on each and every element of fraud, they must further show that the conduct of Tommy Pham warrants the death penalty sanction they seek, chiefly to take away any recovery by Tommy Pham of what the DHECC admits he is owed under the terms of the settlement. In the underlying order supporting the Clawback Motion, the Court relies on the Restatement (Third) of Restitution and Unjust Enrichment § 1(2011) to state that restitution is the proper remedy for fraud on the DHECC. Here the DHECC seeks not just restitution for what they argue should not have been paid, but the return of monies they do not dispute that they owed Tommy Pham, as well as barring him from any further participation in the Class Settlement. This is not restitution, it is instead a sanction, and requires further review and additional findings.

6

A party may be sanctioned for the following under the court's inherent powers: for bad faith, willful disobedience of a court order, or fraud on the Court. *Chambers v. NASCO, Inc.*, 501 U.S. at 32, 45-56 (1991).   "[A person] whom the court proposes to sanction must receive 1) specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and 2) an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges." *Wilson v. CITIGROUP, NA*, 702 F. 3d 720, 725 (2d Cir. 2012).   While the court can authorize sanctions under its inherent power even when there are procedural rules or statutes that sanction the same conduct, the court should not rely on its inherent power if the conduct can be adequately sanctioned under an FRCP, Statute, or Local Rules.  *Chambers*, 501 U.S. at 49-50; FRCP 83(b).

In a relevant case the Court found:

 "We have held that exercise of a court's power to impose "inherent power sanctions that are fundamentally penal" requires that it find bad faith by clear and convincing evidence. *Shepherd*, 62 F.3d at 1478; see also id. at 1474-78; *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (requiring clear and convincing evidence of bad faith to impose inherent power dismissal for a fraud on the court). In contrast, "issue-related sanctions [that] are fundamentally remedial rather than punitive and do not preclude a trial on the merits" --such as barring admission of evidence or considering an issue established for the purpose of the action--can be imposed on a showing that the sanctioned party resisted discovery by a preponderance of the evidence. *Shepherd*, 62 F.3d at 1478. The clear and convincing standard "generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain." *United States v. Montague*, 40 F.3d 1251, 1255, 309 U.S.App.D.C. 220 (D.C. Cir. 1994)."

*Parsi v. Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015).

Based on review of the case law, falsifying documents could certainly be called a fraud on the Court (see e.g., *Lundahl v. Halabi*, 773 F.3d 1061, (10th Cir. 2014) ("Ms. Lundahl had a history, noted by many courts, of perpetrating fraud on the court, including using aliases and falsifying documents."). But, based on the above analysis, it appears the bad faith requirement would still have to be satisfied.

### D.   PRINCIPALS OF EQUITY

The "Applicable Law" section of the Settlement Agreement provides that the Agreement be interpreted in accordance with general maritime law.[5]  Maritime law is firmly grounded in principles of equity. Under maritime law, a court may adapt rules to the equities of a particular situation. *See Compania Anonnima Venezolana De Navigacion v. A.J. Perez Export Company*, 303 F.2d 692,699 (5th Cir. 1962); *Smith v. Seaport marine, Inc.*, 981 F. Supp. 2d 1188 (S.D. Ala. 2013.)   This response clearly shows that the evaluation of claims in Class has gone astray in a way not envisioned by the parties and contrary to principals of equity and fairness.   This notion applies both to the methodologies the DHECC used to investigate the claimant and more importantly to the remedy sought in the Clawback Motion.

## IV.   ARGUMENT

While the settlement program was designed in many ways to be responsive and claimant-friendly, it often involves complex claim forms compounded by language barriers, the need to assemble claims in the face of messy or non-existent documentation, and efforts to recollect details several years after the fact. The elements of common law fraud, therefore, appropriately delineate the type of misconduct warranting punishment and ensure that claimants are not excluded from the settlement program for mistakes,  immaterial misstatements, or good faith efforts to interpret the requirements of the program.  Thus, an attempt to rescind payments

---

[5] Rec. Doc. 6430-1at 36.1.

should not be justified.

Here, rather than furthering the responsive, claimant-friendly principles upon which the program was created, or upholding the integrity of the program by investigating actual fraud, the Special Master's Motion attempts to hold Claimants to a standard for proving their damages that would only be appropriate in complex commercial litigation between sophisticated parties. However, the settlement program was not intended to be an exercise in submitting perfect documentation; it is an exercise in identifying claimants who have been harmed and compensating them based on certain benchmark criteria. Tommy Pham represents precisely the type of person who was harmed by the oil spill – a full-time commercial shrimper – and he meets (or can at least make a good faith argument for meeting) the criteria for the compensation that they received. The fact that they may not have submitted the best possible documentation to demonstrate that criteria does not justify subjecting them to hardship by requiring them to forfeit payments to which they were rightfully entitled, and punishing them further by excluding them from the settlement program.

## *EXTENT OF FRAUD*

Notwithstanding the clear legal standard applicable to the motion, the Clawback Motion cites virtually no law in support of their position that the payments should be clawed back, and provides no legal analysis for how the elements of fraud are in any way satisfied here.  A thorough analysis of the facts as applied to the elements of fraud shows that the DHECC has not met their burden on any element, much less all of them.

Most importantly, there is no evidence that the DHECC can point to that proves that Tommy Pham personally committed any element of fraud.  His affidavit completely controverts the assertions made in the Clawback Motion.  More importantly there is a clear issue of material fact that no fraud could have been committed because claimant was likely owed every penny that the

DHECC has paid him to date. Ninty-Five Percent of seafood claims have already been compensated fully under the terms of the settlement.   Most of those claims have also been paid an additional 41% in a second payment.   The Clawback Motion seeks to take away all remedies from one Vietnamese fisherman, and give his portion to other seafood claims that have already been fully compensated.

## A. FALSE REPRESENTATION

While the documents that were used in support of the claim were clearly not the correct documents to support the contention that the Capt Tommy was unable to shrimp for a portion of 2009, the contention itself was not false.   In his supporting affidavit Tommy Pham includes an invoice from April 2009, which is proved up as a business record from the company/mechanic who supplied it.   This invoice indicates that a significant repair of the Capt Tommy's transition took place in April 2009.   Tommy Pham's affidavit makes it clear that the boat was repaired after a couple of weeks waiting on parts and for the mechanic to be available.

This is supported by the fact that there are no trip tickets for the month of April 2009.  As an ice boat, the Capt Tommy could not shrimp for significant periods of time in 2008 and 2009. Typically, it would go out for around two weeks, and certainly not more than three weeks.  Again the first trip ticket after March 31 supports the contention that the boat was repaired on April 17, 2009 as it comes on May 7, 2014.[6]

## B. KNEW OR BELIEVED THE REPRESENTATION WAS FALSE

The question here is what representation is being made.   In this instance, there is a statement (purportedly from Tommy Pham) that his boat was down for repairs in 2009, and that 2009 should be excluded from the benchmark period.   Recently obtained additional evidence further supports this contention.  However, the DHECC continues to focus on just of a few of the dozens of supporting documents originally provided to support that statement.

---

[6] See Exhibit B – DHECC Portal Doc. No.. 165827

## C. INTENT TO DEFRAUD

The intent to defraud presumes that someone seeks a benefit to which they are not entitled. That is not the case here.   In fact, it is just the opposite.   The intent here was to obtain a benefit to which Tommy was entitled, but simply could not find every relevant document.   Unfortunately, rather than take the take the proper steps to obtain the documentation through traditional channels, A few of the documents submitted appears to have been altered.   Even those suspect records deal with just one issue compensation.     There has been ZERO challenge to the other supporting documents.

## D. JUSTIFIABLE RELIANCE

Here, the DHECC most show that they justifiably relied on the representation made by Tommy Pham.   Oddly, this may be the weakest element of Fraud that the DHECC is trying to prove.   The documents the DHECC alleges were fraudulent were submitted to the portal on June 6, 2012.   Eligibility notices for his claims were not issued until December 11, 2012.   Therefore the DHECC had over six months to evaluate this claim.   One would assume that the DHECC would have a procedure for evaluating whether or not certain benchmark years should be excluded. Further, given the subjective nature of that determination in the face of the normally objective seafood settlement, one would expect a little more scrutiny to go into those requests than standard claims.

However, despite the fact that the documents supporting the request to exclude 2009 showed some pretty clear internal inconsistencies, this issue was not brought to Tommy Pham's attention until August 2015.   Clearly under the terms of the Settlement, the Claims Administrator had a duty to "engage in supervision and oversight activities designed to ensure the implementation

11

and integrity of the overall Settlement Program."[7]   The fact is, the Claims Administrator had a duty to ensure that the integrity of the settlement and therefore the integrity of the documents submitted. In this instance they missed something obvious in their review, and therefore cannot argue that their reliance was justified.

The fact that this issue was missed in the initial DHECC review was simply an egregious error on their part.   The settlement was presented as fast, fair, claimant friendly, and transparent. Tommy Pham could reasonably have expected the DHECC to contact him about the inconsistencies in the documents three years ago.   The result would likely have been far different, with the proper documentation submitted and the DHECC ultimately making a determination (one way or the other) internally.   At most the claim would have facilitated a review under the Class Appeal procedures.    It is a virtual certainty that the claim would not have required Court intervention.   Instead, the claimant wife's error has resulted in a public accusation of fraud.

From the outside looking in on this and several thousand other claims, it appears that the internal procedures to insure the integrity of the program were insufficient and sometimes lax.   As a result, the Special Master was appointed and the pendulum swung completely to the other side. This has resulted in a mentality where claimants are being presumed guilty until they prove their innocence.   Obviously, ensuring the integrity of the class and promptly paying all meritorious claims are competing forces, but they are not mutually exclusive.   Unfortunately, the Claims Administrator has not achieved the proper balance under the terms of the settlement.

## E. DAMAGES

On this point, there are a number of fact issues that the DHECC simply cannot overcome. There is very clearly an issue of material fact as to what Tommy Pham was owed under the settlement.

---

[7] Rec. Doc. 6430  at 4.3.10

As stated above, Tommy Pham has provided evidence to show that his boat was unable to shrimp for several weeks in April of 2009. The issue here is whether or not Tommy Pham was entitled to recovery from the DHECC under the Reduced Expedited method, which required a qualifying revenue averaging $150,000. The Clawback Motion indicates that Pham had at an average of $144,042 meaning that an additional $11,916 in trip tickets would have raised the average to the proper level. During the pendency of the April delay it is entirely reasonable to assume that Tommy Pham would have caught nearly $12,000 in shrimp. The trip ticket record indicates at least two trips in excess of that amount, one of which occurred in April 2008. Additionally the records indicate that another half dozen trips were in excess of $10,000.[8]

Therefore, an award based on the Reduced Expedited Method was proper, especially under a Class settlement that was intended to favor the claimants whenever possible. At worst, whether or not the Reduced Expedited Method amount should have been awarded is a judgment call for the Claims Administrator to make.

Finally, there is absolutely no damage to the defendant, BP. The Class settlement sets out that BP will pay $2.3 billion to compensate Gulf Coast seafood claims. If the Court orders the return of this money it does not change those terms.

## *DEATH PENALTY SANCTIONS*

**A. VIOLATION OF THE TERMS OF THE CLASS SETTLEMENT**

The Fraud, Waste and Abuse arm of the DHECC as it currently operates could not have been envisioned by any claimant evaluating whether or not to stay in the class. Obviously, the settlement had some built in mechanisms to combat fraud, but they were within the framework of the a settlement requiring the Claims Administrator's and

The Settlement Program, including the Claims Administrator and Claim Administration Vendors, shall work with Economic Class Members (including individual Economic Class

---

[8] See Exhibits B & C – DHECC Portal Doc. No's. 165827 and 165828.

Members' counsel and Class Counsel) to facilitate Economic Class Members' assembly and submission of Claims Forms, including all supporting documentation necessary to process Claim Forms under the applicable Claims Processes. The Settlement Program, including the Claims Administrator and Claims Administration Vendors, shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member **has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement.**[9]

By and large, an overarching theme of this Response is the fact that the investigators and attorneys with the FWA division have simply chosen to ignore this portion of the settlement. Not only have they chosen to ignore it, but they have gone far to the other extreme. Unfortunately, historical references to the Spanish Inquisition and Gestapo (while hyperbolic to an extent) are more apt descriptions of the FWA investigations than fair and claimant friendly.

## B.  REPAYMENT OF ALL MONIES OWED IS A SANCTION REQUIRING FURTHER SCRUTINY

The underlying argument for the return of all monies to the DHECC stems from cases where the claimant submitted a totally fraudulent claim. (E.g. submitting a seafood claim without catching any seafood during the benchmark period). Here, it is undisputed that Tommy Pham has been catching shrimp on the Gulf Coast for more than two decades. For the relevant bench mark years, it is undisputed that his trip tickets match his tax returns. There is also no dispute that he shrimped and would ordinarily be owed some money under the class terms. There may be probably a fact issue as to exactly what he is owed, but it is certain that it is some substantial sum of money. Yet the Clawback attorneys and FWA seek to take every penny from a first generation refugee shrimper from Vietnam, who has trouble understanding English.

Despite the Class being approved by the Court in part due to numerous assertions that it would be transparent, it simply is not. And the FWA is far and away the least transparent wing of an

---

[9] Rec. Doc. 8189 at 4.3.7 (Emphasis Added).

already secretive bureaucratic machine. Unfortunately, they appear to be running the show on many claims currently pending before the DHECC.

From the perspective of many everyone outside of this bureaucracy, the reviews currently being done by the DHECC are simply to put up additional hoops and hurdles which help ensure that DHECC employees will have jobs for years to come. The actions of the FWA are no different, except they are using law enforcement tactics to justify the need for their positions. Once again, one would assume that a fair and transparent settlement would have handled this issue much differently.

The efforts to investigate Tommy Pham were clearly adversarial in nature. When the FWA reached out to investigate the claim, they only sought to prove that the claim was fraudulent. They took no efforts to ask L & P Marine Supplies whether there were relevant invoices in 2009. Instead they only asked L & P Marine Supplies to prove the ones submitted were altered. This clearly flies in the face of what the Class Administrator is charged to do.

Attempts to resolve this matter amicably were wholly rebuffed by the DHECC Clawback attorneys. As stated above in this motion, there is perhaps an argument (even with new, proper evidence) that Tommy Pham should not have been paid under the Reduced Expedited Method. As such, the possibility of returning the difference between what the DHECC admits is owed to Tommy Pham and what he received was discussed. However, the DHECC attorneys believed that it was their job to seek the return of all monies. That flies completely in the face of what employees of the DHECC and its vendors are charged to do under the terms of the settlement. Furthermore, it tosses out years of jurisprudence that make the complete destruction of a case a last resort, not the first and only option.

There are numerous options before the Court that would be less severe than taking away the claimants right to seek redress for the damages related to the largest man-made environmental disaster in history.  Such options include:

1. Limiting the sanction to recovering the difference between the Historical Revenue Method and the Modified Expedited Method;

2. Barring the claimant from participation in the second seafood payment distribution;

3. Barring the claimant from participation in the third seafood payment distribution;

4. Barring the claimant from participation in the new class for punitive damage claims;

5. Barring the claimant from participation in the Class, but allowing him to seek redress under OPA; or

6. Any combination of the above.

Any sanction is better than a death penalty take every last nickel from a person who noone disputes is a fisherman for a mistake that his wife made.

## *OTHER ISSUES*

In addition, as explained above, the Motion takes every  opportunity to present mundane facts in a manner that implies suspicion.  The Clawback Motion repeatedly includes unnecessary spin against Pham,  "nearly tripled his award" and that his award was "nearly three times larger than that to which he was entitled."   However, the DHECC is only able to make that claim by teasing the numbers themselves.    They admit that Tommy Pham should have been awarded $226,042 ($116,068 plus prior payments of $109,974).   Tommy Pham's total award based on the modified expedited method was $435,750.  This means that assuming that the DHECC proves fraud, then at best Tommy Pham doubled his award, not tripled.   This issue is not meant to show that the damages, if proven by the DHECC were any less, because the dollar amount is the same no matter how one views it.  But is instead to show that that many in the DHECC have lost sight of their core

mission to compensate victims of the *Deepwater Horizon* tragedy according to the terms of the settlement.

This sort of chicanery is rampant throughout the DHECC.  The reality is that attorneys who drafted the clawback motion are still charged with the tenants of the settlement to use their "best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement."    Instead, they call themselves "Clawback Attorneys" as a mark of pride, as if their sole job is to get back money instead of using their education and experience to evaluate claims properly under the terms of the settlement.    The moniker of "Clawback Attorney" is proudly displayed on their e-mail salutation.

The DHECC billed itself having "transparency on steroids"[10]   In their joint Motion and Memorandum in Support of Approval of the Class, both the Plaintiff's Steering Committee and BP represented that the *Deepwater Horizon* Court Supervised Settlement Program has rules that…are transparent, easily understood, and fair to both sides.[11]  More pointedly, the PSC liaison Jim Roy specifically argued to the Court during the fairness hearing that they "did not what a hundred-plus-thousand claimants being subjected to what many people perceived were subjective claim review, like at the GCCF, or some kind of star chamber subjective evaluation that…wasn't transparent.[12]

As the US Supreme Court has said, "Star Chamber has for centuries symbolized disregard of basic individual rights."  *Faretta v. California*, 422 U.S. 806, 821-22 (1975).  Star Chambers flourished in the late 16th and early 17th centuries and were a mix of executive and judicial character which

---

[10] https://www.thestateofthegulf.com/the-whole-story/for-the-record/patrick-juneau-s-retreat-from-transparency/
[11] Rec. Doc. 6266-1 at 11.
[12] Transcript of Final Fairness Hearing Proceedings Heard Before the Honorable Carl J. Barbier United States District Court. (Morning Session), November 8, 2012 at 159:3-7.

characteristically departed from common law traditions. *Id.*   The FWA arm of the DHECC perfectly meets this definition.

Finally, the argument that Pham should be required to return the payments from the payments of his claims to "deter others from similar misconduct" is disingenuous as it is impossible for claimants to submit new claims to the DEHCC Seafood Program and has been so for a period of nearly two years.

<u>*EXCLUSION FROM PARTICIPATION IN THE CLASS*</u>

Alternatively, if the Court, in the face of ample evidence to the contrary, rules that Tommy Pham must return his DHECC funds and be excluded from further participation in the class, that should not bar entirely his claim under OPA.   Claimant has made a timely OPA demand and filed suit two years and therefore should be allowed to prove his damages in a Court of law.   His claim should be treated as any other excluded claimant.

## V.      CONCLUSION

As a result, the DHECC has not carried its initial burden of establishing that no disputed issues of material fact exist. *See* Fed. R. Civ. P. 56(c). Finally, nearly all of the evidence reliable upon by the DHECC is not relevant to the critical issue – whether the claims submitted by Claimant fairly represents his shrimp fishing revenue during the relevant period – and therefore is not material.

In that regard,

1.  There is no evidence to support the contention that Tommy Pham personally committed any element of fraud.   Instead there is strong evidence in the form of his statement, that he was not involved in the prosecution of his claim.

    a.  There is additional supporting evidence that his inability to shrimp in April 2009 was due to a mechanical failure on his boat and that the exclusion of his 2009 catch was

proper.

b. There is a clear issue of material fact as to exactly what Tommy Pham was owed by the DHECC.

c. There is no issue of material fact to dispute that but for the inclusion of improper documents, Tommy Pham is owed compensation by the DHECC.

2. Sanctioning Tommy Pham by taking away is entire right to recover for damages related to the spill is improper  for two reasons:

a. The terms of the Settlement Agreement require DHECC employees and venders to do the best to ensure eligible claimants are paid;

b. Taking away the right to recover is a death penalty sanction and the Court must consider lesser possible sanction before assessing it.

3. The DHECC has not met its burden to show fraud and the Clawback Motion, therefore, must be denied as a matter of law.  At the very least, Claimant has demonstrated that the remedy sought by the DHECC  is not appropriate. .

## PRAYER

WHEREFORE PREMISES CONSIDERED, Tommy Pham respectfully asks the Court deny the Motion of the DHECC For Return of Payments Made to Tommy Pham and the client keep the money entitled to in the amount of $435,750.00 and further proceeds from the Deepwater Horizon Economic and Property Claims Center or other similar classes less reimbursement to the DHECC for the cost of this investigation, or the alternative only pay the difference of what the client was paid under the Modified Expedited Revenue Method and what he is owed according the Historical Revenue Method and further proceeds based on that amount from the Deepwater Horizon Economic and Property Claims Center or other similar classes, and for any further relief to which he may show himself to be justly entitled.

Respectfully submitted, the 16th day of November, 2015.


Dated:  November 16, 2015                    Respectfully submitted,
                                             /s/ Brent W. Coon

                                             Brent W. Coon
                                             Federal Bar No. 9308
                                             Texas Bar No. 04769750
                                             215 Orleans
                                             Beaumont, Texas 77701
                                             Tel.: (409) 835-2666
                                             Fax: (409) 835-1912

                                             Ryan W. Gertz
                                             /s/ Ryan W. Gertz
                                             The Gertz Law Firm
                                             State Bar No. 24048489
                                             2630 Liberty Street
                                             Beaumont, Texas 77702
                                             Tel: (409) 833-6400
                                             Fax:  (409) 833-6401

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the above and foregoing Motion for Extension of Time to File

Response to the Special Master's Motion for Return of Payment made to Tommy Pham will be

served on all counsel by electronically uploading same to Lexis Nexis File & Serve in Accordance

with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the

Court of the United States District Court for the Eastern District of Louisiana by using the

CM/ECF System, which will send a notice of electronic filing in accordance with the procedures

established in MDL 2179.

/s/ Brent W. Coon