IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL 2179 |
| | SECTION "J" |
| **Applies to:** | **DISTRICT JUDGE BARBIER** |
| Case No: 12-968 BELO | **MAG. JUDGE WILKINSON** |
| | **MAG. JUDGE SHUSHAN** |
| **LEROY G. WILSON**, | CIVIL ACTION |
| VERSUS | CASE NO.: 1:15-CV-300 |
| **BP EXPLORATION & PRODUCTION, INC. AND BP AMERICA PRODUCTION CO.**, | **DISTRICT JUDGE GRANADE** |
| | **MAG. JUDGE CASSADY** |
| **Applies to:** | |
| Case No: 12-968 BELO; E.D. La. Case No: 14-2730 (transferred to S.D. Ala.; renumbered as 15-300) | |

MR. WILSON'S "MSA XXVII MOTION" TO
REQUIRE BP TO PAY ALL SETTLEMENT COSTS REASONABLY
ASSOCIATED WITH BOTH HIS SPC CLAIM AND HIS LMPC CLAIM.

LeRoy Wilson ("Mr. Wilson"),[1] by and through undersigned counsel, files this motion under this Court's retained exclusive and continuous jurisdiction over the interpretation, implementation, administration, and enforcement of the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement, as Amended May 1, 2012 ("MSA").[2] Unless this motion is granted, Mr. Wilson and those similarly situated will have no viable remedy because the cost to

---

[1] Leroy Wilson is the Plaintiff in this BELO action. He has always been a hardworking and charitable American born and raised in the Southern state of Louisiana. When BP's *Deepwater Horizon* oil rig exploded and all the millions of gallons of oil entered the Gulf, Leroy served as a cleanup worker to protect his family, his neighbors, his property, and his livelihood. Like many cleanup workers working 16 hour days for months at a time to protect our country, Leroy manifested conditions due to his exposure to crude oil and toxic dispersants.

[2] DEEPWATER HORIZON *MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT, as Amended on May 1, 2012* ("*MSA*"), MDL 2179, Rec. Doc. 6427-1, § XXVII (E.D. La. May 3, 2012).

1

file their claim and pay experts far exceeds recoverable damages for meritorious LMPCs.

1. **Sole and Exclusive Subject Matter Jurisdiction.** This Court is the only court that has jurisdiction over this dispute. Section XXVII of the MSA explains

> Any disputes or controversies arising out of or related to the interpretation, implementation, administration, and enforcement of this MEDICAL SETTLEMENT AGREEMENT shall be made by motion to the COURT. In addition, the PARTIES, *including each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER*, are hereby deemed to have submitted to the exclusive jurisdiction of this COURT for any suit, action, proceeding, *or dispute* arising out of or relating to this MEDICAL SETTLEMENT AGREEMENT.[3]

Henceforth, Mr. Wilson shall refer to this motion as the "*MSA XXVII Motion*."

2. **Procedural History and Subject Matter Jurisdiction.** Mr. Wilson timely filed a BELO Complaint in this Court as required by the MSA on or about December 2, 2014.[4] An allotment order rendered on December 18, 2014 requires any and all BELO related matters to be filed with Magistrate Judge Wilkinson ("Judge Wilkinson").[5] A subsequent order by Judge Wilkinson filed on January 30, 2015 bars the filing of any unauthorized motion <u>*only during initial proceedings*</u> (hereinafter "Initial BELO CMO").[6] Since this second order applies only to initial proceedings, then the order's restriction on filing motions ends once the case is transferred. Mr. Wilson's matter was transferred to the Southern District of Alabama (hereinafter "Transferee Court") and this Court's Clerk closed Mr. Wilson's Eastern District of Louisiana matter, case no: 14-2730.[7] As such, the Initial BELO CMO no longer bars the filing of motions that apply to "BELO cases as a whole and/or the particular BELO case in which it is filed."[8] This

---

[3]   *Id.* § XXVII (emphasis added) (hereinafter "*MSA XXVII Motion*").
[4]   *Wilson Compl.*, No. 15-CV-300, Rec. Doc. 1 (S.D. Ala. Dec. 2, 2014); *see also Wilson 2nd Compl.*, No. 10-CV-300, Rec. Doc. 37 (S.D. Ala. July 28, 2015).
[5]   *Reallotment Order*, MDL No. 2179 (applying to 12-CV-968:BELO), Rec. Doc 13884, at 1 (E.D. La. Dec. 18, 2014).
[6]   *BELO Case Initial Proceedings Case Management Order*, MDL 2179 (*applying to* 12-CV-968:BELO), Rec. Doc. 14099, § IV, at 6-7 (E.D. La. Jan 30, 2015).
[7]   *[Transfer] Order*, No. 15-CV-300, Rec. Doc. 23 (S.D. Ala. June 5, 2015).
[8]   *BELO Cases Initial Proceedings Case Management Order*, No. 10-MD-2179, Rec. Doc. 14099, at 7 (E.D. La. Jan. 30, 2015).

is true because this

> Court <u>retains continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Medical Benefits Class Action Settlement Agreement</u>, in accordance with its terms, and ***to implement and complete the claims administration and distribution process***, in accordance with the Medical Benefits Class Action Settlement Agreement, for the benefit of the Medical Benefits Settlement Class. The Court does this for the purpose of satisfying the requirements of *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), concerning the obligation of a Court entering a settlement agreement to speak clearly when it wishes to retain jurisdiction.[9]

Hereinafter, this exclusive jurisdiction shall be referred to as "Retained Jurisdiction."

Further, this Court's transfer order of Mr. Wilson's BELO Complaint to the Transferee Court does not relinquish this Court's Retained Jurisdiction.[10] Instead, this Court's transfer order implicitly requires ancillary jurisdiction to interpret, administer, implement, and enforce the MSA as applied to the specific facts of Mr. Wilson's LMPC claim because venue to administer his claim was transferred pursuant to the terms of the MSA.[11] Facial challenges to the plain and ordinary meaning of the MSA may only be reviewed by this Court, because of its Retained Jurisdiction.[12] Lastly, because this motion addresses matters beyond the scope of Mr. Wilson's BELO and includes matters relating to a dispute associated with Mr. Wilson's SPC Claim, the Transferee Court is powerless to address those concerns.[13] As such, this Court, and only this Court, has the authority to review and determine the facial meaning of certain terms at issue within this motion. Since this matter addresses both Mr. Wilson's LMPC and SPC claims, Mr. Wilson has included General Magistrate Judge Sally Shushan ("Judge Shushan") and Judge

---

[9] *Order and Judgment Granting Final Approval of Medical Benefits Class Action Settlement and Confirming Certification of the Medical Benefits Settlement Class* ("*Final Fairness Order*"), No. 10-MD-2179, Rec. Doc. 8218, ¶ 10 (E.D. La. Jan. 11, 2013) (emphasis added).

[10] *Compare [Transfer] Order*, No. 15-CV-300, Rec. Doc. 23 (S.D. Ala. June 5, 2015), *with Final Fairness Order*, *supra* note 8, ¶ 10.

[11] *See id.*; 28 U.S.C. §§ 1367, 91 (2015); *see also MSA*, § VIII.G(1)(c).

[12] *Final Fairness Order*, *supra* note 8, ¶ 10 (retaining continuing and <u>*exclusive*</u> jurisdiction (emphasis added)).

[13] *Compare Wilson 2nd Compl.*, No. 10-CV-300, Rec. Doc. 37 (S.D. Ala. July 28, 2015), *with Final Fairness Order*, *supra* note 8, ¶ 10.

3

Wilkinson as the Magistrate Judges working alongside District Judge Carl Barbier ("Judge Barbier" or the "Court") as part of his allotment request.

3. **Parties to the Dispute.** Certainly BP America Production Company and BP Exploration & Production, Inc. ("BELO Defendants" or "BP") and Mr. Wilson are parties to this present dispute. Mr. Wilson is undoubtedly a Medical Settlement Class Member verified by the Deepwater Horizon Medical Benefits Settlement Claims Administrator Garretson Resolution Group ("GRG"). Mr. Wilson acknowledges that the Medical Settlement Trust ("MST") has a trustee, Matt Garretson ("Mr. Garretson" or the "Trustee"), who as an individual was entrusted with the Res at issue that must be allocated pursuant to the terms of the MSA and the MST. Further, although GRG is the Court appointed Claims Administrator, the Trustee and GRG are two separate parties each with their own legal and ethical responsibilities. Therefore, to the extent that the scope of the responses by GRG and/or the Trustee (both agents of this Court) may have an interest to seek the guidance from this Court, the lens by which they respond must be tempered by FEDERAL RULE OF CIVIL PROCEDURE RULE 23, the terms of the MSA, the MST, Federal and/or where applicable Louisiana, Alabama, and/or Delaware law.[14] Lastly, in light of the fact that the facial challenge will likely affect the Class as a whole, the Plaintiff Steering Committee ("PSC") and Class Representatives each have ongoing duties to represent the best interests of the Class in a fiduciary capacity.[15]

---

[14] "BP, MEDICAL BENEFITS CLASS COUNSEL, the CLAIMS ADMINISTRATOR, the Trustee, and the Directed Trustee hereby create the MEDICAL SETTLEMENT TRUST for the benefit of the MEDICAL BENEFITS SETTLEMENT CLASS, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and the MEDICAL BENEFITS CLASS REPRESENTATIVES on the terms and conditions set forth in this MEDICAL SETTLEMENT TRUST AGREEMENT, in accordance with the requirements of the MEDICAL SETTLEMENT AGREEMENT . . . ." *Medical Settlement Trust Agreement* ("*MST*"), No. 10-MD-2179, Rec. Doc. 6399-3, Recital (E.D. La. May 1, 2012). *Compare id.* ¶¶ 1.7, 7.8, *with* FED. R. CIV. P. 23, *Kokonnen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *and Final Fairness Order*, *supra* note 8, ¶ 10.

[15] 5 NEWBERG ON CLASS ACTIONS § 15.2 (4th ed. 2002) ("A conflict of interest by the class representative or class counsel with members of the class may prevent a binding judgment on class members because of a lack of adequate representation."); *see also id.* § 15.3 (explaining that after a settlement agreement has been approved, the

4

4. **Mr. Wilson has complied with the MSA and acted in Good Faith.** Mr. Wilson is a verified class member with legitimate claims seeking compensation for both acute and chronic SPCs and a chronic sinus LMPC all of which manifested while performing cleanup work. Mr. Wilson originally filed the necessary Proof of Claim Form ("PoCF") and Notice of Intent to Sue ("NoIS") without the advice of counsel in part because he was assured by GRG that this process did not require an attorney. However, after realizing the complexities of this settlement, Mr. Wilson retained his friend, David Kervin, Jr., a Louisiana attorney, to handle the filing of his claims.

Subsequent to filing this BELO action, it became apparent that Mr. Wilson did not fully appreciate how expensive the required expert witnesses would be for the administration of his claim. Since every issue to be litigated has been contested by BP, Mr. Wilson has had to retain additional counsel to assist with the massive effort and expense that it will take to administer his one LMPC through the settlement.

While Mr. Wilson has acted in good faith in seeking to comply with the terms of this MSA, this motion is the only way for him to afford the administration of his claims. As the Court's own website indicates "BP consistently has said it would pay all legitimate claims . . . . Even if other Responsible Parties refuse to make such a commitment, it will not affect BP's pledge to step forward in the first instance to pay all legitimate claims in an efficient and fair manner."[16] However, it has become evident that BP will not honor this commitment.

---

agreement is only enforceable so long as "fealty to both the spirit and the letter of the procedural rules" exist.); FED. R. CIV. P. 23(b)(3) (describing that superiority is a requirement to a binding certification of a class). *Compare* MANUAL OF COMPLEX LITIGATION (4th) § 21.12 (2004) ("Rule 23 and the case law make clear that, even before certification or a formal attorney–client relationship, an attorney acting on behalf of a putative class must act in the best interests of the class as a whole."), *with id.* § 13.21 ("The judge can also remind lead counsel, members of the trial team, and other attorneys who have accepted responsibilities on behalf of other parties and attorneys that their fiduciary obligations may survive the dismissal of their own clients.").

[16] *Statement of BP Exploration & Production Inc., re: Applicability of Limit of Liability under Oil Pollution Act of 1990*, MDL No. 2179, Rec. Doc. 559, ¶¶ 2, 5 (E.D. La. Oct. 18, 2010).

Mr. Wilson would like to think this was not always the case; that perhaps at some point BP intended to honor this commitment. It is now evident that either BP vastly underestimated the full extent of its impact on this Gulf and its residents, or it is intentionally forcing all of the oil spill victims into "financial fatigue" in order to not pay damages. It is unconscionable that rather than paying out the legitimate claims of injured victims of the *Deepwater Horizon Incident*, BP continues to stall. One of these victims is Mr. Wilson, whose claims while legitimate, will cost more to administer than he can ever possibly receive. The costs Mr. Wilson has and will incur in order to administer his claims relative to his expected recovery make this matter untenable without the relief requested.

This situation is so unsustainable that funded legal services are now unable to provide assistance to injured class members seeking compensation for any chronic injury.[17] Remedies for chronic injuries under this settlement are unreachable beyond a chasm of expenses that far exceed the allowable recoveries possible under the facts of persons in a similar situation to Mr. Wilson.

5. **The Dispute.** On or about August 26, 2015, Mr. Wilson raised an issue with BP, asking the BELO Defendants to pay for administration costs associated with the BELO process. Specifically, Mr. Wilson requested BP to respond with its official position as to whether "Mr. Wilson's Settlement Costs should include filing fees, expert costs for matters contested, and court costs for the BELO administration he is seeking to implement as allowed by the MSA." BP did not respond in writing. Instead BP contacted Mr. Wilson, through undersigned Counsel, over the phone. As part of that conversation, Mr. Wilson requested his costs reasonably associated with the administration of terms implemented within the MSA for compensation of his LMPC and SPC. BP refused to pay giving no valid reason. Subsequently, on or about September 3,

---

[17] *See Legal Services of Ala. Aff. Ex. D* ("*Wilson Ex. D*") (Lawrence F. Gardella & Allen F. Campbell).

2015, when Mr. Wilson asked for an official position *in writing* as to whether BP felt that the BELO Lawsuit was included or excluded from the MSA, BP remained silent.

      6.    **Clear and Unambiguous Language of the MSA.** Section IV.E of the MSA says:

> The Medical Benefits Class Representatives, by and through the Medical Benefits Class Counsel, and BP agree that, in consideration for the Release described in Section XVI and the dismissal with prejudice of Released Claims, and subject to the terms of this MSA, BP will . . . *Pay all Settlement Costs*.[18]

Section II.QQQQ(viii) defines Settlement Costs. "Settlement Costs shall mean . . . all other costs and compensation reasonably associated with the implementation and administration of this [MSA]" ("*Settlement Costs Test*").[19]

      7.    **Mr. Wilson, this Court, and the Transferee Court are Incurring Settlement Costs.** Mr. Wilson, this Court, and the Transferee Court have incurred, and will continue to incur, administration costs reasonably associated with Mr. Wilson's implementation of the MSA terms.[20] These expenses relate to Mr. Wilson's:

      a.    Later-Manifested Physical Condition ("LMPC") such as:

          i.    Court filing fees for his BELO Lawsuit;

          ii.    Court reporting fees;

          iii.    Court costs;

          iv.    Contested "*Issues to be Litigated*" which require:

- Discovery costs,

- *Daubert* hearing expert fees,

- Deposition costs (experts, lay witnesses, etc.),

- Any other testimony (experts, lay witnesses, etc.),

---

[18]     *MSA*, § IV.E (emphasis added).
[19]     *MSA*, § II.QQQQ(viii). *Compare id.*, with *Final Fairness Order*, *supra* note 8 and accompanying text.
[20]     These certain terms include all of Sections V, VIII, XXVII, and Exhibit 3 and any other cost and compensation reasonably associated with the implementation and administration of this MSA.

      - Document production (expected to be significant and required for experts to analyze),

      - Postage;

    vi. Any other LMPC related costs this Court finds reasonable; and

  b. Specified Physical Condition ("SPC") such as:

    i. Document production for Request for Additional Information ("RAI"), Notice of Defect ("Defect"), and/or Request for Review ("Review") responses,

    ii. Printing and Copying of:

      - The Proof of Claim Form; and

      - Appendix A, B, and/or C when required;

    iii. Notary fees for declaration(s) and/or sworn statements;

    iv. U.S. Mail Postage required by the Claims Administrator; and

    v. Any other SPC related costs this Court finds reasonable.

8. **LMPC Related Expert Costs Conditional.** As described in the memo filed in support of this motion, the third element of the *Settlement Costs Test* requires that costs and compensation associated with the implementation and administration of an MSA term be reasonable. For expert costs and compensation to be <u>*reasonably associated with*</u> the implementation and administration of the MSA, the "issue to be litigated" requiring experts must be contested by BELO Defendants AND the expert must have been either:

  a. Vetted by GRG in a process designed by BP and the PSC; or

  b. If a Class Member seeks to introduce an un-vetted expert, then:

    i. Upon the expert surviving all necessary *Daubert* hearing challenges;

    ii. The aforementioned expert related costs may only be paid if the

8

Class Member prevails through to verdict with at a minimum of $0.01 in compensatory damages.

9. **Timing of Payment.** BP and/or GRG must timely pay these administration costs contemporaneous with when they are incurred.

10. **Certain Settlement Costs are Currently Owed; Others are Due Soon.** The administration costs already incurred by Mr. Wilson include: diagnostic expert fees, filing fees, postage costs, copying, printing, shipping, and document fees associated with responses to various requests from the Claims Administrator, this Court, and/or the Transferee Court.[21] Future costs will include: discovery expenses, expert fees, court costs, future postage, and future printing for document production required by the MSA, this Court and/or the Claims Administrator for the processing of his LMPC Claim and/or his claimed SPC.

11. **Proposed Solution to Paying Expert Costs Timely before Verdict.** Mr. Wilson suggests that expert fees require a vetting process created by the Claims Administrator, approved of by the Parties (BP and the PSC) or ordered by the Court, whereby experts proposed by the Class Members are approved by the trustee using the vetting process described in the memorandum. This vetting process removes unnecessary *Daubert* hearings, provides an ease in mass processing of experts, and provides a streamlined approach that saves BP money while eliminating the risk of paying class members for meritless BELO claims.

12. **Settlement Cost Impressions of the Transferee Court.** On or about August 12, 2015, General Magistrate William E. Cassady of the Transferee Court raised the following issues in relation to the administration of Mr. Wilson's LMPC claim.

a. "Now, you're saying eight days for trial. Now in looking at the discovery request,

---

[21] Documents include the sending of the original Proof of Claim Form, responses to the Claims Administrator's Requests for Additional Information and Notice of Defects, and a submission of a Notice of Withdrawal and a Substitution of Counsel document.

explain to me why you feel like it may take eight days to try this case, a straight forward sinus condition?"[22] Mr. Wilson explained that the complicated matters relating to the *issues to be litigated* per the MSA require the proving of "six elements" if contested by BP, which require between six to seven experts on each side. After discussions with BP, Mr. Wilson believes that BP estimates as many as fifteen experts may be required on each side!

  b. The Transferee Court responded, "What kind of damages? As I understand it, he's only entitled to compensatory damages; correct? . . . So what's your estimate of damages for this kind of expenditure? *I'm getting a little proportionality problem here in my mind*."[23] Mr. Wilson explained this unanticipated outcome has left class members in a quandary where they are stuck in a negative value case if they cannot get these administration costs paid. Class Members for these middle-tiered value cases, find themselves with "no way [to] prove all these elements and come out with anything other than a loss every single time, even if [class members] win the case. Surely that's not a superior remedy in this class action."[24] Mr. Wilson then explained that when this issue was raised with GRG, he was advised that GRG would seek guidance from this Court.

  c. Mr. Wilson explained to the Transferee Court that the Eastern District of Louisiana retains ongoing and continuing jurisdiction over the interpretation of the MSA, and that the negative value cases may need to be dismissed because "there's no way the case has a positive value at that point." The Transferee Court responded with, "That is important, and it appears that they may be forthcoming within this year."[25]

  d. The Transferee Court then provided his initial assessment and great concern for

---

[22] Transcript of Scheduling Conference at 13:9-12 ("*Wilson Ex. C*"), *Wilson v. BP Exploration & Prod., Inc*, (S.D. Ala. Aug 12, 2015) (No. 15-cv-300).
[23] *Id.* at 14:4-10 (emphasis added).
[24] *Id.* at 15:23-25, 16:1-3
[25] *Id.* at 16:14-19.

10

the issues raised in his Court, "It seems to me that there was a lot of thought and effort put into this process, you know, this Back-End Litigation Option process. *And I would assume that the thought process would include litigation costs for these class members.*"[26]

    e.    Mr. Wilson agreed with the Transferee Court's assessment that since Mr. Wilson's case is one of the first BELO cases, there is no precedent to piggy back on at this point in time. BP then explained "The good news, Judge, is you don't have to make that decision."[27] To which the Transferee Court responded with "I was picking up on that pretty clearly, as was my law clerk."[28]

As such, the Transferee Court is presently waiting to proceed with instructions from this Court on the dispute raised in this *MSA XXVII Motion*; a dispute BP agrees should be addressed by this Court.

    13.    **Prayer of Relief.** Mr. Wilson respectfully requests this Court:

    a.    Interpret, Implement, Administer, and Enforce the terms of the MSA and require BP to pay all Settlement Costs, including Costs and Compensation as listed and described in Paragraphs Six, Seven, and Eight of this *MSA XXVII Motion* incurred as a result of Mr. Wilson implementing the terms of the MSA administered by this Court, the Claims Administrator, and/or the Transferee Court;

    b.    Provide the Trustee with guidance as to timing requirements for payments of all costs and compensations reasonably associated with Mr. Wilson's implementation and the administration of this MSA for each section described in Mr. Wilson's proposed order, incorporated here by reference;

    c.    Expressly describe the scope of the authority required of all administrative agents,

---

[26]     *Id.* at 17:2-6 (emphasis added).
[27]     *Id.* at 18:18-19.
[28]     *Id.* at 18:1-4, 18-21.

11

including the Transferee Court, its Magistrate, this Court's Magistrates, GRG, and the Trustee, when each is administering the terms of the MSA moving forward so all are consistent with the January 11, 2013 *Final Fairness Order* as viewed through the lens of FEDERAL RULE OF CIVIL PROCEDURE rule 23 and the holding of *Kokonnen v. Guardian Life Ins. Co. of Am*;[29]

  d. Hold that 28 U.S.C. sections 1921 and 1820 do not apply to witness costs and expert fees relating to "Issues to be Litigated" due to the express language of the MSA and the holding in *Crawford Fitting Co. v. J.T. Gibbons, Inc.*;[30]

  e. Allow friends of the Court the opportunity to file Amicus Curie briefs in support, or opposition, of this *MSA XXVII Motion*;

  f. Hold in any preliminary order describing briefing by the PSC and/or BP that, pursuant to J.P.M.L. 6.1(c)–(d) (2015), Mr. Wilson is granted the opportunity to reply to any detailed briefing with not less than seven (7) days after the lapse of the time period for filing a response to any brief filed in opposition by any person or entity. Due to the fact that multiple responses are anticipated, Mr. Wilson requests the full twenty (20) pages as allowed by J.P.M.L. 6.1(d);

  g. Allow Mr. Wilson, by and through counsel, the opportunity to appear before this Court for oral arguments if a hearing is granted to discuss any issues relating to this matter. Pursuant to J.P.M.L. 11.1(b), attached this Court shall find the two (2) page Oral Argument Statement setting forth reasons why oral argument should be granted on this matter; and

  h. Any other relief in equity or at law this Court deems just and proper.

  Filed this 23rd day of November, 2015.

Respectfully Submitted by,

---

[29] 511 U.S. 375 (1994).
[30] 482 U.S. 437, 444 (1987) (holding contractual language removes these restrictions); *see also* 28 U.S.C. §§ 1821, 1920 (2015).

Ramon Guillen /s/_____
Co-Counsel for LeRoy Wilson

**Ramon Guillen, Jr., Esq.**
Fla. Bar. No. 99789
rguillen@downslawgroup.com along with

**Craig T. Downs**
Fla. Bar. No. 801089
cdowns@downslawgroup.com of the
*Downs Law Group*
3250 Mary Street, Suite 307
Miami, FL 33133
Telephone: (305) 444-8226
Facsimile: (305) 444-6773 and

**David D. Kervin, Jr.**
La. Bar. No. 28374
david@kervinlaw.com of the
Law Office of David D. Kervin, Jr., LLC
201 St. Charles Avenue, Suite 2500
New Orleans, LA 70170
Telephone: (504) 599-5906
Facsimile: (504) 754-7514

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing *MSA XXVII Motion* and all attached documents including:

- Leroy Wilson's *MSA XXVII Motion*;

- Twenty Five (25) page memorandum in support of Mr. Wilson's *MSA XXVII Motion*;

- Exhibits (A, B, C, & D) to the memorandum in support;

- The most current docket, the second amended complaint, the first amended complaint, and the original complaint as required by J.P.M.L. 6.1(b)(4) (2015);

- Two page oral argument statement pursuant to J.P.M.L. 11.1(b) (2015);

has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of November, 2015

Ramon Guillen /s/_____
**Ramon Guillen, Jr., Esq.**
Fla. Bar. No. 99789
rguillen@downslawgroup.com
of the *Downs Law Group*
3250 Mary Street, Suite 307
Miami, FL 33133
Telephone: (305) 444-8226
Facsimile: (305) 444-6773