# EXHIBIT C

*LeRoy Wilson v. BP Exploration & Prod., Inc., et al.*, No. 1:15-CV-00300, (S.D. Ala.).
*MSA XXVII Motion for Settlement Costs*

**TRANSCRIPT OF THE SCHEDULING CONFERENCE BEFORE THE
HONORABLE WILLIAM E. CASSADY MAGISTRATE, UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA
CIVIL CASE NO. 1:15-CV-00300-CG-C; LEROY G. WILSON, JR. V. BP
EXPLORATION AND PRODUCTION INC., ET AL.,, AUGUST 12, 2015**

Transcript of Scheduling Conference, *Wilson v. BP Exploration & Prod., Inc*, (S.D. Ala.
Aug 12, 2015) (No. 15-cv-300).

```
 1                  UNITED STATES DISTRICT COURT

 2                  SOUTHERN DISTRICT OF ALABAMA

 3               CIVIL CASE NO.:  1:15-cv-00300-CG-C

 4
        *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 5
     LEROY G. WILSON, JR.,
 6
          Plaintiff,
 7
     v
 8                                       MOBILE, ALABAMA
     BP EXPLORATION AND PRODUCTION,
 9   INC., et al.,
                                         AUGUST 12, 2015
10        Defendant.
                                         10:54 A.M.
11      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

12
                      SCHEDULING CONFERENCE
13          BEFORE THE HONORABLE WILLIAM E. CASSADY
            MAGISTRATE, UNITED STATES DISTRICT COURT
14

15   APPEARANCES:

16   FOR THE PLAINTIFF:
          David Duke Kervin, Jr., Esquire
17        david@kervinlaw.com
          Law Office of David D. Kervin, Jr., LLC
18        201 St. Charles Avenue, Suite 2500
          New Orleans, LA 70170
19        504-599-5906

20   FOR THE DEFENDANTS:
          William H. Brooks, Esquire
21        wbrooks@lightfootlaw.com
          Lightfoot, Franklin & White, L.L.C.
22        400 North 20th Street
          Birmingham, AL 35203
23        205-581-0758

24   CLERK:  Edwina Crawford

25           TRANSCRIBED FROM AUDIO RECORDING
```

```
1                    (10:54 A.M., IN OPEN COURT.)
2               THE COURT:  Are we live?
3               THE CLERK:  Yes, sir.
4               THE COURT:  Okay.  Gentlemen, we're here
5    today in 15-0300 on Judge Granade's docket.  As you
6    probably know, in our district magistrate judges are
7    asked to do the pretrial management or have pretrial
8    management responsibilities in civil cases.  This is
9    my -- if I haven't forgotten, this may be my first
10   experience with a Back-End Litigation Option out of
11   the oil spill, BP oil spill.  So that piqued my
12   interest right there.
13              So I wanted to talk with you this morning to
14   get a feel for how we will proceed in this case and
15   also to discuss with you maybe some unique practice --
16   practices of this court that you might be interested
17   in at this stage of the litigation so that, you know,
18   maybe those questions won't come up and be a surprise
19   to you.  So we'll just go through this report of the
20   parties meeting, and then also I will go through with
21   you my form order that I enter in Judge Granade's
22   cases and answer any questions that you might have.
23   And I may ask you a few questions as we go through.
24   And we're making an electronic record if anybody needs
25   a copy of it at any time in this case.
```

```
1              So first of all, let's get you to give us a
2    voice identification on behalf of the plaintiff,
3    Mr. Wilson.
4              MR. KERVIN:  David Kervin, Jr., on behalf of
5    Plaintiff Leroy G. Wilson, Jr.
6              THE COURT:  Okay.  Is this your first time
7    with me?
8              MR. KERVIN:  Yes, sir, Your Honor.  It's my
9    first time in Alabama court.  I'm nervous.
10             THE COURT:  Okay.  Well, welcome.  And
11   hopefully it will be a good experience, Mr. Kervin.
12             MR. KERVIN:  Thank you.
13             THE COURT:  All right.  And on behalf of BP
14   Exploration?
15             MR. BROOKS:  William Brooks, Your Honor.
16             THE COURT:  Mr. Brooks, welcome.
17             MR. BROOKS:  Thank you, sir.
18             THE COURT:  You're from Birmingham?
19             MR. BROOKS:  Yes, sir.
20             THE COURT:  Okay.  All right.  And those
21   appear to be all of the parties, although there is an
22   et al.  How many defendants do you represent,
23   Mr. Brooks?
24             MR. BROOKS:  Two.  There are two BP
25   entities.
```

1          THE COURT:  Okay.  All right.  And so it
2     appears we have all the parties present.
3          I read with interest the information that
4     you provided me in the report of this claim for
5     physical injuries on behalf of the plaintiff as he
6     worked for BP or one of its entities in the cleanup
7     efforts, as I understand it.
8          MR. KERVIN:  Yes, Your Honor.
9          THE COURT:  Now, explain to me, though,
10    about what he has pending in the settlement claims
11    process and how that impacts this lawsuit.
12          MR. KERVIN:  That's a good question, Your
13    Honor.  The settlement process that he has pending
14    right now, that's probably two years been lingering
15    with Garretson Resolution Group, who's the trustee
16    administrator of the medical class settlement, are his
17    acute symptoms, such as acute eye irritation, acute
18    throat and sinus irritation, skin lesions, acute skin
19    burns from handling the oil and the chemicals.
20          We did file a request for this chronic
21    rhinosinusitis to be included with that.  Your Honor,
22    the problem with that and the reason we're here on
23    these BELO cases, he has to have been medically
24    diagnosed with that specific condition.  And all
25    chronic rhinosinusitis is is inflamed sinuses for at

1  least 12 weeks.  So it's really just -- it's kind of a
2  complicated word for a very sort of straightforward
3  condition.
4        Judge Barbier in the Eastern District
5  ruled -- they had multiple motions back and forth with
6  the PSC about does it really mean diagnosis or do the
7  symptoms in the records suffice to make him eligible
8  for that payout?  And that payout is about 60,000
9  something and change if he met it.
10       After briefing, the Court said:  Look, it
11  has to be an official diagnosis, and we don't have
12  that.  But he's continued -- and I have like a medical
13  chart.  The medical records I show before the cutoff
14  date in February 2012, he's got cough, congestion,
15  sputum and stuff like that, and just continues
16  sporadically over the years.  And I talked to him
17  yesterday about that, and he says:  You know, I have
18  this stuff daily.  And it started -- it really got bad
19  when he was exposed to these chemicals and this oil.
20       And so his acute claims have not been
21  resolved, and we're in the process of withdrawing the
22  claim for chronic rhinosinusitis in that settlement
23  because we don't want that to be under the release.
24  If they did pay that out, they could get this claim
25  dismissed.  And we don't think they will anyway.  But

```
1   we're just trying to --
2              THE COURT:  So you're going to keep me
3   informed of that process?
4              MR. KERVIN:  Yes, Your Honor.  To whatever
5   extent that we can, I'll certainly do that.  And I've
6   been talking to counsel about this situation, too.
7   They are not processing claims fast at all.  There was
8   a newspaper article earlier this year that the
9   Garretson Group has gotten paid more in compensation
10  than all the medical claimants combined.
11             THE COURT:  Well, what is the termination
12  date for making applications or filing claims?
13             MR. KERVIN:  I don't know that offhand, Your
14  Honor.  But I was talking to a colleague on this
15  matter, and they said they have to start processing
16  the claims soon because they're under some type of
17  directive to get these things moving.
18             THE COURT:  Okay.  So the discovery in this
19  case will only be directed as to the sinus problems?
20             MR. KERVIN:  That's correct, Your Honor.
21  That's the only injury we are claiming in this case.
22             THE COURT:  Okay.  And because it doesn't
23  qualify under the prerequisites of the settlement
24  procedures and prerequisites, it's transferred to the
25  local court where the injury occurred basically?
```

1      MR. KERVIN:  That's correct.

2      THE COURT:  For trial?

3      MR. KERVIN:  That's correct, Your Honor.  So

4  what happens is when it seems -- when it becomes like

5  we're not going to get paid under the class settlement

6  matrix, like evident that we're not going to get paid

7  for that specific condition under the settlement

8  matrix, we have to file a notice of intent to sue.

9  That gets served on BP, and BP has 30 or 60 days,

10  whatever -- they have a certain amount of time to

11  elect to mediate.  BP elected not to mediate that

12  claim.  They're like we don't think it's valid so

13  we're not going to mediate it.

14      From that point we had six months to file

15  the Back-End Litigation Option lawsuit, which we did

16  on the last day out of an abundance of caution to

17  preserve his right of recovery with the originating

18  court, which is the Eastern District.  And then at

19  that point it gets transferred to whichever is the

20  most appropriate venue.

21      THE COURT:  Okay.  He lives in Baldwin

22  County, the plaintiff does, and he did work on the

23  Alabama coastline?

24      MR. KERVIN:  Yes, Your Honor.  He lives

25  currently in Silverhill, Alabama.  But at the time of

1   the spill he lived on Fort Morgan at Chickasaw Lane on
2   the water facing Mobile Bay.  And they answered
3   yesterday, so actually we got these elements out of
4   the way.  They admitted that he is a verified class
5   member, he was a cleanup worker, he did response
6   activities, he participated in the Vessel of
7   Opportunity Program.  So yes, Your Honor, he was a
8   class A resident and a cleanup worker, which are both
9   barrels of the qualifications for the BELO.
10          THE COURT:  Okay.  Mr. Brooks, do you have
11   anything to add?  Do you think the ongoing claims that
12   the plaintiff has as to the settlement funds will have
13   some impact on this suit as it goes forward?
14          MR. BROOKS:  I think Mr. Kervin described it
15   correctly.  I think the answer is that it could as we
16   go forward, depending on how that claim is ultimately
17   processed and what it's for.  Because there is a
18   release that's associated with that claim.  And an
19   issue that could arise is whether and to what extent
20   that release might impact this case.  But we're not
21   there yet.
22          THE COURT:  And once you get the medical
23   evidence as to his sinus condition and possibly the
24   testimony that would refer it back into the
25   appropriate time period as a condition that he

1    suffered under at that time, that may set this case up

2    in more of a posture for mediation at that point in

3    time?

4              MR. BROOKS:  That's always possible, yes,

5    sir.  And I know, Judge, you had mentioned this was

6    your first experience with a BELO case, and David will

7    correct me, I think this is the first one that came

8    out.

9              MR. KERVIN:  I believe that's correct.

10             THE COURT:  How about that.

11             MR. BROOKS:  There are only a handful of

12   them at present that have actually come out of the

13   Eastern District of Louisiana.  I know this was the

14   first one in Alabama.

15             THE COURT:  Okay.

16             MR. BROOKS:  And I think there are only two

17   or three here now.

18             THE COURT:  All right.  I'm just curious.

19   It appears that a magistrate judge transferred this

20   case; is that right?

21             MR. KERVIN:  I thought it was Judge Barbier,

22   but it could have been the magistrate who transferred

23   the case.

24             THE COURT:  And that's based on an

25   agreement?

1    MR. KERVIN:  Well, it was a stipulation.
2  Counsel and I stipulated to the transfer of venue
3  because the client and the doctors are all in this
4  county.
5    THE COURT:  Okay.  Gotcha.  All right.  Now,
6  there are apparently limitations on the discoverable
7  issues.  So we need to talk a little bit about that.
8  You're very straightforward in the discoverable
9  issues, so I don't have a problem with that.  But I
10  just want to be clear on your comments about the MSA
11  limits, the issues that may be litigated in a BELO
12  lawsuit.  And you've got three listed.  So those are
13  established in this court based on what's happening in
14  the Eastern District of Louisiana?
15    MR. KERVIN:  Your Honor, I believe the way
16  the BELO works -- this is the way I understand it, the
17  way it's written -- is this is sort of a lawsuit
18  that's a creature of contract.  The MSA says that here
19  are the issues to be litigated, and it's my
20  appreciation that in BP's answer and their report,
21  they've disputed every one of them.  And that is the
22  six elements that we cite on pages 8 and 9 in our
23  second amended complaint.  In just summary, it's:
24    The fact of diagnosis;
25    Number 2, the amount and location of the

```
 1   oil;
 2            Number 3, the level and duration of the
 3   exposure to the oil or other substances;
 4            Number 4, whether the exposure legally
 5   caused the illness;
 6            Number 5, whether there are alternative
 7   causes;
 8            And number 6, the amount of compensation
 9   damages.
10            We pled negligence in the alternative, and
11   BP answered that.  And it would certainly be something
12   I'd be willing to stipulate to or agree to that these
13   are in fact the only elements we have to prove and
14   that negligence law does not apply.  These kind of
15   replace -- that's my appreciation.  These replace --
16   these are the tort elements we would have to prove if
17   BP disputes everything.
18            THE COURT:  Well, I'm more curious about
19   these three that you don't have to prove, need not be
20   proven and may not be litigated.  And that's the fact
21   or existence of the agreement, settlement agreement;
22   Medical Benefits Class Action Settlement.
23            MR. BROOKS:  Right.  And what that gets you,
24   Judge, is that it's an acknowledgement that the
25   procedure set out in the MSA is the one that applies
```

1   to this case so somebody couldn't come in and say the

2   MSA doesn't apply here; the procedures set out for

3   this BELO case, it is not applicable.  And it is.

4            THE COURT:  So this Court is somewhat

5   governed by the decisions of the Eastern District of

6   Louisiana; right?

7            MR. BROOKS:  There's interplay between the

8   provisions of the MSA and this lawsuit.  That's one of

9   the unique things about it, is that there are things

10  in that MSA that are binding on both the plaintiff and

11  the defendant.  Because the plaintiff is a class

12  member, but he's got a claim that falls outside that

13  settlement agreement that he's allowed to pursue

14  through a BELO lawsuit.

15           THE COURT:  And as to these three elements

16  on page 6 of the rule 26(f) report, you both agree

17  that those are not issues to be litigated or proven?

18           MR. KERVIN:  That's correct, Your Honor.

19           THE COURT:  That you would be able to prove

20  your case in front of a jury if you're able to prove

21  up the six elements that you've identified?

22           MR. KERVIN:  That's the way I understand it,

23  Your Honor.  If we can prove all six elements, that

24  does it.  That's the scope of the --

25           THE COURT:  Okay.  All right.

```
1          MR. BROOKS:  And I think, Judge, just so you
2    know, those are paraphrased.  I believe Mr. Kervin
3    attached the actual MSA to the second proof of claim.
4          MR. KERVIN:  Yeah, for the course of
5    convenience.  And I cited it in my complaint just so
6    that you would have it.
7          THE COURT:  Okay.  Well, that will become
8    much more important as we get closer to a possible
9    trial.  Now, you're saying eight days for trial.  Now,
10   in looking at the discovery request, explain to me why
11   you feel like it may take eight days to try this case,
12   a straightforward sinus condition?
13         MR. KERVIN:  Well, BP counsel suggested
14   that.  And obviously I agreed to it.  I think the
15   reason it would take up to that period of time is --
16   and I've been discussing this with cocounsel over the
17   last several days.  As I'm now in the weeds on this
18   case, these six elements are the most complicated
19   elements to prove.  Because I have to prove dosage, I
20   have to prove where this stuff was, the stuff in
21   relation to my client, the level of exposure.  And
22   that will require -- I mean we're estimating at least
23   six or seven experts for just that.  And I think their
24   idea is probably the same, between six to seven up to
25   15.  So it could get really tedious if BP contests
```

1    every one of these points.  Because they all happen to

2    be the hardest scientific things to prove for a

3    toxic --

4          THE COURT:  What kind of damages?  As I

5    understand it, he's only entitled to compensatory

6    damages; correct?

7          MR. BROOKS:  Yes, sir.

8          THE COURT:  So what's your estimate of

9    damages for this kind of expenditure?  I'm getting a

10   little proportionality problem here in my mind.

11         MR. KERVIN:  You're exactly right, Your

12   Honor.  And this is something we didn't anticipate and

13   that we've found ourselves in a quandary now.  When we

14   originally filed this claim, I was in communication

15   with the head -- Stephen Herman of the Plaintiffs'

16   Steering Committee.  I said:  What are we going to do

17   with science?  There's no way -- I need help in some

18   way.  Because they are supposed to have an ongoing

19   duty to represent the class members, of which

20   Mr. Wilson is a class member.

21         Well, he informs me:  Well, you know, we

22   anticipate working with you guys on the science and

23   medical ends of this and so on and so forth.  So he

24   suggests one toxicologist.

25         Well, we run it by the toxicologist.  She

1    says:  Yeah, I think you have a case.

2           Now that we're in it, we're seeing that, no,

3    that's not enough.  We're going to have to prove a lot

4    more.  And you're right, we set a high end quantum in

5    our disclosure to them of 166,000.  I've tried to

6    settle the case with them for around 80.  If he's

7    suffered for 60 months, you're right, Judge, it's

8    probably a 80 or $100,000 case at best.  And we're

9    looking now at the experts that we're going to need as

10    costing $200,000.

11           And so the position we're in is -- and I've

12    explained this to cocounsel -- obviously it's a

13    negative value case if we can't get the costs paid.

14    It's my appreciation of federal law that there's no

15    way to tax those expert costs in a case like this to

16    them in the event we won.

17           So what we are doing and other counsel --

18    and I know you would want to know this -- is we have

19    approached -- and I have an email from them on this --

20    we have approached the Garretson Resolution Group on

21    this issue saying, look, there's a provision in the

22    settlement that says you have to pay all settlement

23    costs.  And we are a class member who, for these

24    middle-tiered valued cases, there's no way we can

25    prove all these elements and come out with anything

```
1    other than a loss every single time, even if we win
2    the case.  Surely that's not a superior remedy in this
3    class action.
4              So they responded to me saying they intend
5    to raise this issue with the Eastern District judge,
6    because they retain continuing jurisdiction over the
7    interpretation of this agreement, within the next one
8    to two weeks.  So I'm hoping in the next several weeks
9    the Court interprets this provision to whether we get
10   our costs reimbursed on the back end or on the front
11   end or in some way so that these don't become negative
12   value cases.  If we lose on that -- and I've already
13   explained this to counsel -- that we would have to
14   seek a dismissal because there's no way the case has a
15   positive value at that point, Your Honor.  So I
16   figured you would want to know that in advance.
17             THE COURT:  That is important.  And it
18   appears that that may be forthcoming within this year,
19   it sounds to me.
20             MR. KERVIN:  I think so, Your Honor.  Other
21   lawyers are in my boat who represent thousands of
22   these people who were exposed to this stuff, and
23   they're pressuring -- they're like, look, the way this
24   contract is written, it's a conundrum.  Unless you
25   have a million dollar case, there's no way to make it
```

1    happen.

2            THE COURT:  It seems to me that there was a

3    lot of thought and effort put into this process, you

4    know, this Back-End Litigation Option process.  And I

5    would assume that the thought process would include

6    litigation costs for these class members.  But there's

7    a glitch there are you saying?

8            MR. KERVIN:  We don't see clear language on

9    that.  And this is our theory of relief that this

10   catch-all phrase "all settlement costs" may provide

11   this.  The Garretson Resolution Group -- and this is

12   through email chains that I wasn't even part of.  But

13   they in this email chain took the position that, well,

14   we don't think we're supposed to pay that in advance.

15   But it's not their decision, it's the Court's

16   decision.

17           And so in my experience with the BP

18   settlements primarily on the economic side, that the

19   way the Courts handled it there, every time an issue

20   like that comes up, they expeditiously require the

21   parties to brief it, and the judge makes the decision

22   that -- because they know the timeline, they know

23   these BELO cases.  So I don't think we have to file a

24   motion for stay or anything.  I really think the Court

25   will step in.  And if not, then we'll have to --

1    THE COURT:  So since this is the first,
2  there's nothing we can piggyback on at this point in
3  time?
4    MR. KERVIN:  That's right, Your Honor.  I
5  mean I've talked to lawyers who are much, much bigger
6  and well heeled than myself, and they get close to
7  wanting to be in and assist and then they kind of back
8  out.  So everybody is looking at what's going to
9  happen with this case.  And I think we're really -- on
10  this cost issue matter of contract interpretation, if
11  the BELO claimant, such as Mr. Wilson -- who is a
12  verified class member, he did the work, he has
13  symptoms -- is put in a conundrum by virtue of his
14  contract, then the argument to me seems that that's an
15  absurd result so that the Court can fashion a remedy
16  to make it not absurd.  And that's what we're hoping
17  and that's where we're at now.
18    MR. BROOKS:  The good news, Judge, is you
19  don't have to make that decision.
20    THE COURT:  I was picking up on that pretty
21  clearly, as was my law clerk.
22    Okay.  Let me then go through my order with
23  you, and this is what you'll receive.  And this is
24  your opportunity to tell me that we need to change it
25  to meet your specific needs.  And what we try to do in

1  her cases and in all cases, we've bought into the fact
2  that if you set a solid pretrial date and trial
3  month -- and our judges are on crim. duty a couple of
4  months, primary and backup, and then they have a third
5  month for civil term.  So we work with their civil
6  terms around their criminal terms.  They give us a
7  year in advance, and there are four magistrate judges,
8  so we are sending in these pretrial dates -- we're
9  actually scheduling their pretrials on dates they have
10 given us based on our determination of how much time
11 we need for the pretrial proceedings.  It makes sense
12 to us.  It may not make sense to everybody.
13          So I will give you this date based on what I
14 read, and it is a firm date that we will hold you to
15 unless it's absolutely necessary that we change it.
16 And that is -- her date is November 21st, 2016.  And
17 I'll explain to you later why that date was
18 determined.  I can't give you a time today because,
19 like I said, there are four magistrate judges sending
20 Judge Granade cases, and her docketing clerk will look
21 at that day and the number of cases that we've set for
22 that day, and she will assign a time and insert it
23 into our pretrial order.  So that time will also be
24 there, so you'll have the exact date and the exact
25 time, and you can bank on that as far as we're

1    concerned unless there are extenuating circumstances
2    that would require either the Court to modify that
3    date and time or for you to ask that we modify that
4    time.
5            Now, in order to accommodate requests by
6    lawyers over years of experience in these cases, the
7    preference has always been, as I understand it, is a
8    trial within a reasonable period of time after that
9    final pretrial is conducted.  You're ready to go,
10   you've got your evidence, you've got your objections
11   made, you've made your pitch to the judge, you've
12   completed your mediation if required or your
13   settlement conference if required, and you're ready to
14   go.  So we have asked them to give us that next trial
15   term.  And her term is in December of 2016.  And the
16   way we manage all of these cases that may be ready for
17   trial in December is we set them during that term
18   awaiting the progression of all of these cases in the
19   intervening months until we get to a point where she
20   knows -- she's got a pretrial docket that estimates
21   the number of days.  And then she has her pretrials
22   and she knows fairly -- to a certainty certainly at
23   that date in time when the trial will actually begin.
24           So the way we do it is we bring you in on a
25   date certain, and that is December 6th, for the jury

```
 1    selection.  And we will select all juries on Judge
 2    Granade's docket on that day.  Now, it depends at the
 3    pretrial conference, given all the conflicts, the
 4    problems that you tell her about at that final
 5    conference, when during the month your case will be
 6    set for trial, especially in a case that may require
 7    eight days, eight trial days.  So the jury will be
 8    selected but released and brought back on a date
 9    certain.  If she only has one trial for that month,
10    then the chances are much better -- instead of
11    stacking the juries, you'll be brought in for jury
12    selection and the trial will begin that day.
13                You also have that option in our district if
14    you so choose to consent to a magistrate judge.  And
15    it is our practice that judge would be me, so you
16    would know in advance which judge it is -- could take
17    the case and actually give you that preference.  In
18    other words, you wouldn't be stacked for jury
19    selection and then coming back for trial.  You could
20    have your witnesses here, we could bring in a panel,
21    strike the jury and go forward on that date.
22                So those are your options that you can
23    discuss.
24                These dates are arrived at after we take a
25    close look at your discovery request and the amount of
```

1   time that you have requested.  Now, I may be a little

2   off on the dates, but that's just because of my

3   interpretation of our process after reviewing yours.

4   So I've set a completion date of June 13th, 2016.  And

5   you need to be cognizant -- you'll get it in my

6   order -- we try to define what we mean by completed as

7   far as discovery is concerned.

8           Your initial disclosures, you've indicated

9   they've been exchanged.  And that was another thought

10  that I had, but now I understand it better.  It seemed

11  to me that since you've been involved in the

12  proceedings in the Eastern District of Louisiana, I

13  was thinking that much of the medical information may

14  have already been provided.  But I'm not sure if

15  that's the case since this is something about his

16  sinus condition that now you're trying to relate back

17  into the appropriate time period; correct?

18           MR. KERVIN:  That's correct.  I think at

19  this point we've given them all the medical

20  information.  Because he has a surgery recommendation

21  from Dr. Hoffman in the Gulf Shores area.  He hasn't

22  had the surgery yet.  And it's basically like

23  everything they've tried doesn't work.  So we're kind

24  of like that's the medical records to this date that

25  we have.

```
1              THE COURT:  Okay.  So that explains the kind
2     of low end of the written discovery request but a
3     fairly high number of depositions, that being the
4     experts that may be necessary.  So you've included
5     your expert depositions in your total deposition
6     requests.  Okay.
7              December 7th is the date for any motions to
8     amend.  When I put this date, that's the default date
9     for you to file your motions.  In other words, I'm not
10    granting you right to amend or to join, but you
11    certainly may file your motions.  And upon a proper
12    showing, those motions would be granted.  If you file
13    a motion after that date, which certainly may be
14    necessary, if the facts justify it, you just have that
15    additional burden of showing why it could not have
16    been filed within this period of time that I've given
17    you, especially since we're here in August and I've
18    set that date off to December 7th.
19             Your expert testimony, we're using dates
20    that we've assembled based on your requests.
21    Basically from the plaintiff's side, you need to have
22    your reports by February 12th, and the defendants'
23    side needs to have their reports by April 12th.
24             Let's talk about your discovery completion
25    date.  You listed October 3rd, and then I was looking
```

```
 1   at your experts.  It appears that you were trying to
 2   get your experts' reports completed from the
 3   plaintiff's side, reports delivered by February 14th
 4   and the depositions available by April 15th.  And then
 5   for the defendants, June 6th and August 6th.
 6            And so generally it's been my experience
 7   that many times those expert depositions are taken
 8   toward the end of the discovery period.  But it
 9   appears that you've built in between August 6th and
10   October 3rd additional discovery.  What was the intent
11   there?  Or what was the idea there?
12            MR. KERVIN:  Is that number 10, Your Honor,
13   the additional discovery?
14            THE COURT:  Your all discovery is paragraph
15   4 on page 8, all discovery commenced from the time --
16            MR. KERVIN:  I was --
17            MR. BROOKS:  I think the thinking, Judge,
18   was to try -- in cases like this, be it this substance
19   or any case where it's a medical condition caused by
20   exposure to something, asbestos, tobacco, whatever it
21   may be -- it's those expert scheduling issues that
22   tend to become sometimes the fly in the ointment, so
23   to speak.  And we're trying to shift those up to keep
24   them from bumping up against another deadline later.
25   Because it's the scheduling of those guys that can be
```

1    a problem sometimes.  So we try to stagger it out
2    enough to give ourselves enough time.  That's why
3    there's a two-month gap between reports and completing
4    their depositions.  So we were trying just to shift
5    that part of the case, which is going to be the meat
6    of the case, up far enough so that if something
7    happened, it didn't start crashing against --
8              THE COURT:  So that's what you anticipate, a
9    problem with scheduling experts --
10             MR. BROOKS:  Hope not.
11             THE COURT:  -- that might bump that August 6
12   completion date to October?
13             MR. BROOKS:  Right.  I wanted to put a
14   bumper between that end of expert discovery and the
15   end of all discovery and also allow some time in the
16   event that something came up in the expert depositions
17   that necessitated --
18             THE COURT:  All right.  Well, let me ask
19   this:  If there are dispositive motions -- you know,
20   the depositions of experts were designed to not
21   necessarily be demanded if you got a complete report.
22   And they couldn't deviate from the report.  So the
23   question becomes -- because Judge Granade instructs us
24   to build in some consideration time for dispositive
25   motions between the completion of discovery and the

1    pretrial conference.  In other words, she and her
2    staff would like to have enough time to get those
3    motions resolved before you go to the pretrial
4    conference.  That helps you, too, not having to
5    prepare the very onerous pretrial document that she
6    requires in her cases.
7            So my question becomes:  If you get the
8    reports timely, that I guess June 6 would be the
9    outside date for the reports; right?
10           MR. BROOKS:  Yes, sir.
11           THE COURT:  Unless there is -- and we build
12   in a time for reciprocal expert or for additional
13   expert reports, if they're necessary, based on what
14   the initial reports reflect.  Would those dispositive
15   motions in this case in your opinion require a
16   transcript of those late depositions before you could
17   file your motions?  In other words, could I set a
18   dispositive motion date that is somewhere closer to
19   the June 6th date as opposed to that October 3rd date
20   that you've indicated?
21           MR. BROOKS:  I think -- I think there is
22   room to move that October 3rd date.
23           MR. KERVIN:  Yeah.  Because I mean I
24   wouldn't anticipate us filing any dispositive motions
25   in the case.

```
 1            MR. BROOKS:  And perhaps --
 2            THE COURT:  Well, that's a good question.
 3    Is this a case that would indicate to you at this
 4    stage that there might be dispositive motions?
 5            MR. BROOKS:  Sitting here today, I would
 6    think so.
 7            THE COURT:  Okay.  So the question is how
 8    many -- she wants 90 days between the filing and the
 9    pretrial conference?
10            THE CLERK:  Submission date.
11            THE COURT:  Submission date and the
12    pretrial.  Okay.
13            MR. BROOKS:  So we would need to have it
14    submitted mid August to meet that?
15            THE COURT:  Yeah.  We usually -- after you
16    get those reports -- see, you would have the
17    reports --
18            THE CLERK:  (Inaudible.)
19            THE COURT:  I think what we'll do is
20    manipulate that now that we've talked to you and maybe
21    bump you into another term just to protect her time
22    for dispositive motions and based on your indication
23    that there may be dispositive motions in this case.
24    So we'll take a look at that.  But I will put that
25    date for those motions -- although I will give you
```

1     that additional time to make sure that you complete

2     your discovery.  I will probably include a dispositive

3     motion date that is closer to the reports, the final

4     report disclosure dates, so that she'll have that

5     time.

6            That will still give you -- that doesn't

7     mean you can't take those depositions in that

8     remaining time that you have if you find that taking

9     the depositions is necessary as to any of the experts.

10           And I will grant your request as to the

11    scope of discovery with this caveat:  It has been my

12    experience -- and I ask you to structure your request

13    in no more than two sets; in other words, your 25

14    interrogatories, you can have two sets of requests.

15    If you want to ask half of those in one request, you

16    have the remainder of the 25 to ask in a second round.

17    Same goes for requests for admissions and for requests

18    for production of documents.

19           So basically in most cases, if you have two

20    opportunities to file those written requests based on

21    any preliminary information that you get, either

22    through the initial disclosures or the first round of

23    written discovery, then that should accommodate those

24    needs.

25           As I said before, I will set a time for

```
1    dispositive motions and then give her an adequate
2    period of time to try to resolve those motions before
3    your final pretrial.
4            One thing I also noted in here -- and I
5    believe we do this in your pretrial disclosures -- we
6    require those disclosures about three weeks ahead of
7    her final pretrial conference.  Now, once you make
8    those disclosures, you have to get your heads together
9    and put together her final pretrial order, proposed
10   order.  In that order you have to file your
11   objections.  So what that does, once those disclosures
12   are made, while you're producing her pretrial order,
13   that's when you will note your objections to the Court
14   as to any evidence or witnesses in the case.  Okay?
15   And so that should accommodate that request that you
16   made.
17           All right.  Now, again, as I said before, I
18   need for you to keep your status with me -- oh, one
19   other biggy.  Can I trust you guys that there aren't
20   any ESI problems as to production and preservation and
21   all of that?  And also do you anticipate the need for
22   a protective order in this case?
23           MR. KERVIN:  Not from the plaintiff, Your
24   Honor.  I know counsel before, the Washington, DC
25   counsel that handled this in the Eastern District, had
```

1    suggested -- he wrote me a letter and attached several

2    pretrial orders from the original class action lawsuit

3    saying, you know, we're disclosing this but just be

4    advised we are treating certain things as confidential

5    under these pretrial orders 13, 14 and 16, which I

6    have.

7              And I talked to my counsel about it -- I

8    mean class counsel.  I'm like:  Am I bound by this?

9    This is a different -- this is a new lawsuit?

10             And he said:  I don't think so.

11             From our perspective, we don't have any ESI,

12   so we've given them pretty much everything we have,

13   except for expert reports.  I think they've given us

14   everything they have but for expert reports and

15   depositions.  So I mean as far as we're concerned,

16   we're good on all that.  I just don't know what their

17   position is on it.

18             THE COURT:  Okay.  That raises my confidence

19   level that we won't see any problems, ESI problems.

20             MR. KERVIN:  Yes, sir.

21             MR. BROOKS:  I don't think there is an ESI

22   problem at all, Judge.  Because I think most of that

23   discovery was done and preserved properly in

24   connection with the underlying BP case.  It's still

25   there.

1           MR. KERVIN:  Right.

2           MR. BROOKS:  There are -- as David

3     mentioned, there were case management orders

4     associated with the class settlement that I frankly

5     don't think traveled with the case when it came here.

6           MR. KERVIN:  I don't either.

7           MR. BROOKS:  So there may be a protective

8     order that applied there that we may have to ask you

9     to enter here.

10          THE COURT:  Okay.  And one other thing.  In

11    our system of delegating responsibilities in these

12    cases, I will get all of our nondispositive pretrial

13    motions.  The baton is basically passed with the

14    filing of any dispositive motions.  That will go to

15    Judge Granade.

16          If you file some motion where it's

17    questionable whether it's dispositive, nondispositive,

18    you don't know who it's going to, you may see some

19    manipulation of the docket.  It may get referred to me

20    by the clerk, and then Judge Granade will look at it

21    and say:  No, that comes to me or something like that.

22          So don't be surprised if that happens.  You

23    can always call our clerks to find out if you have any

24    questions about how we operate with these motions.

25    Judge Granade will in some instances -- like if you

1   had a serious motion to dismiss that might implicate
2   the overall discovery process or the pretrial process,
3   she may refer that to me for an R&R.  Many times we
4   can resolve that informally through a rule 16 or a
5   supplemental rule 16 by telephone conference.  If we
6   can't, I will issue the R&R, and then she will be --
7   you would have your right to object on a de novo
8   basis.
9           So just understand that throughout this
10  process, if you're hit with something you don't
11  understand or it's atypical in your experience in
12  other courts, we're here to answer those questions.
13          MR. KERVIN:  Thank you, sir.
14          THE COURT:  But that's the way it generally
15  will proceed.  She will send to me as much of a
16  nondispositive nature.  And even if it in her opinion
17  impacts the pretrial management of the case and the
18  burden and expense on the parties as to discovery,
19  which is my main responsibility, she will send that to
20  me as well for us to try to work through without
21  involving her attention at that particular time.
22          But as the case progresses, once those
23  dispositive motions are filed and we've completed the
24  discovery process, basically I'm out of the picture
25  except for you can ask for a settlement conference

```
 1    with me at any time if you opt for that as opposed to
 2    mediation.  Mediation, we have a mediation plan.  It's
 3    very straightforward.  You can pick any mediator you
 4    want to either off of our list or someone that you're
 5    more comfortable with, as long as that mediator will
 6    file a written notice that he or she will comply with
 7    our requirements as far as mediation is concerned.
 8              So you'll always have that option of a
 9    settlement conference with a magistrate judge.  We
10    take the position, I think, that many courts do since
11    we have a magistrate judge and a district judge on
12    this case -- and I will have no decisional
13    responsibility as to the final judgment or the trial
14    of the case.  It is okay for me to conduct a
15    settlement conference that is confidential without any
16    information being disclosed to the district judge
17    other than the case either settled or it didn't settle
18    and anything else that you agree that I should refer
19    to the district judge.
20              So you always have that option as well, and
21    you can take advantage of that.
22              Do you guys have any questions of me that
23    you would like to present?
24              MR. KERVIN:  No, Your Honor.
25              MR. BROOKS:  No, sir.
```

1    THE COURT:  Okay.  Thank you for your time.

2    MR. BROOKS:  Thank you, Judge.

3    MR. KERVIN:  Thank you.

4    THE COURT:  You'll get this order shortly.

5    (THE HEARING CONCLUDED AT 11:42 A.M.)

6

7              C E R T I F I C A T E

8    I do hereby certify that the above and

9    foregoing transcript of proceedings in the matter

10   aforementioned was electronically recorded by and

11   under the supervision of the United States District

12   Court for the Southern District of Alabama.  I certify

13   that the foregoing represents a true and correct

14   transcription of the electronic recording of said

15   hearing, to the best of my ability.

16

17

18   _____  9/3/15

19   DEBRA AMOS ISBELL, CCR,RDR,CRR
     ALABAMA - CCR #21
20   ILLINOIS - CSR #084.004798
     LOUISIANA - CSR #2014003
21   MISSISSIPPI - CSR 1809
     COURT REPORTER, NOTARY PUBLIC
22   STATE OF ALABAMA AT LARGE

23   My Commission Expires:  6/25/2016

24

25