# EXHIBIT D

*LeRoy Wilson v. BP Exploration & Prod., Inc., et al.*, No. 1:15-CV-00300, (S.D. Ala.).
*MSA XXVII Motion for Settlement Costs*

**LEGAL SERVICES OF ALABAMA ("LSA") CLIENT INVENTORY STATUS AFFIDAVIT OF ALLEN CAMPBELL AND LAWRENCE GARDELLA**

> *This affidavit answers why Class Members currently represented by LSA will not be able to receive legal services from LSA when said client seeks to implement the Back End Litigation Option ("BELO") administration of any Later-Manifested Physical Condition.*

*See Legal Services of Ala. Aff. Ex. D* **(*"Wilson Ex. D"*) (Lawrence F. Gardella & Allen F. Campbell).**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico On April 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| | HONORABLE CARL J. BARBIER |
| | MAG. JUDGE SHUSHAN |

Case No. 12-968 BELO

| | |
|---|---|
| LEROY G. WILSON | CIVIL ACTION |
| | CASE NO.: 1:15-cv-300 |
| v. | |
| | HONORABLE CALLIE V. S. GRANADE |
| BP Exploration & Production, Inc., and BP AMERICA PRODUCTION CO., et al., | MAG. JUDGE CASSADY |

Case No. 12-968 BELO, E.D. La. Case No.: 14-2730
(transferred to S.D.Ala.; renumbered as 15-cv-300.
------------------------------------------------

AFFIDAVIT

Before me, the undersigned Notary, personally came and appeared **Lawrence F. Gardella**, who, upon being sworn, did depose and say that:

1. I am a resident of Montgomery, Alabama and am Director for Advocacy for Legal Services of Alabama, Inc. ("LSA"), a non-profit law firm providing free legal services to Alabama's low income residents. I am licensed to practice law in the State of Alabama. I have

been employed at LSA and one of its predecessor agencies, Legal Services Corporation of Alabama, since January 1978.

2. Since July 2010 I have been supervising LSA's legal representation of its clients with BP economic and medical claims and have since August 2010 been working with the consortium of Legal Aid lawyers representing clients with these claims.

3. I am authorized to provide this affidavit to the Court on behalf of LSA.

4. As of this 15th day of October, 2015, LSA represents a total of 209 clients claiming class member benefits from the *Deepwater Horizon* Medical Benefits Settlement Class Action Agreement, as Amended May 1, 2012 ("MSA"). Many of these class members have chronic injuries that resulted from their exposure to the *Deepwater Horizon* Incident. When LSA agreed to undertake the representation of these clients, LSA believed that the Medical Benefits Class Members who first manifested chronic conditions between 24 and 72 hours of exposure would be eligible to receive appropriate compensation through the SPC Matrix. Although the PSC and the Court shared this belief initially,[1] since November 26, 2014, this Court has interpreted the controlling language of the MSA so as to change the outcome from what was envisioned at the fairness hearing.

5. With this shift in policy application, LSA has been focusing on existing SPC claims on behalf of our clients. Approximately one-third of our clients are formerly Laotian or Vietnamese, and are not yet fluent in the English language. All of our clients are low income. Few if any had recognized health insurance. Their health care was almost totally limited to emergency room or urgent care visits. Access to specified follow-up or specific diagnostic testing was extremely

---

[1] *[Order] Regarding Class Counsel's Motion for Reconsideration (Rec. doc. 13303) of the Court's Order of July 23, 2014 Regarding Chronic Specified Physical Conditions (Rec. doc. 13179)*, No. MDL 2179, Rec. Doc. 13733, at 5 (E.D. La. Nov. 26, 2014) (Barbier, J.) (explaining that this court envisioned a different interpretation at the time of the fairness hearing).

2

limited. Our clients had little or no access to the comprehensive medical attention and record-keeping process necessary to document chronic environmental conditions or ailments within days of exposure. Nevertheless, many of our clients have some form of chronic ailment. These include chronic skin conditions, various chronic respiratory diseases, and damage to the eyes and surrounding physiology.

6. Many of our clients have already claimed daily exposure to crude oil, to the dispersants, and to the other hydrocarbons associated with the *Deepwater Horizon* Incident. They believe BP is responsible for their ongoing chronic injuries. This Court has observed that a remedy in these circumstances still exists.[2]

7. LSA very much wants to help its class members receive the appropriate and proper remedy as set forth in the MSA for their chronic injuries. Since this Court has ruled that these claims are no longer to be administered under the SPC Matrix process, the MSA requires administration of these claims through the Back End Litigation Option "BELO" process under Section VIII of the MSA.

8. The BELO process requires litigation at a scale that our non-profit organization cannot afford and is not equipped to underwrite.

9. BP made available certain funding to organizations such as ours through the BP Settlement Trust. These funds were designed for the most part to assist low income individuals in their economic recovery claims. Only a limited allowance was provided for medical claims handling. The BP grants did not include, and in our opinion did not even foresee, the current BELO litigation process for later-manifested, run-of-the-mill chronic conditions.

---

[2] *Id.*

3

10. The current BELO process will by necessity require the engagement of serial experts for any chronic condition. For a public service organization like ours this cost alone is prohibitive.

11. Even if recovery is achieved for claimants with multiple injuries, because multiple expert witnesses will be required, the costs are likely to exceed any amount recoverable for many of these clients. Under any reasonable estimation, only the most severely injured clients stand a chance to receive compensation that covers their costs. And in our organization this would true even though LSA receives zero compensation for the legal services rendered by LSA attorneys.

12. Based on these facts, and the peculiarity in the Medical Settlement Agreement chronic condition compensation process, LSA had to seek the assistance of private firms with a correspondingly higher number of clients. There was no other way to assist our class members seeking compensation for chronic medical conditions. It was the only option available.

13. LSA cannot afford to take any of its clients through the BELO process.

And more the deponent sayeth not.

Montgomery, Alabama, this 15th day of October, 2015.

_____
Lawrence F. Gardella

Sworn to before me this the 15th day of October, 2015.

_____
Notary Public

4



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico On April 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| | HONORABLE CARL J. BARBIER |
| | MAG. JUDGE SHUSHAN |

Case No. 12-968 BELO

| | |
|---|---|
| **LEROY G. WILSON** | CIVIL ACTION |
| | CASE NO.: 1:15-cv-300 |
| v. | |
| | HONORABLE CALLIE V. S. GRANADE |
| BP Exploration & Production, Inc., and BP AMERICCA PRODUCTION CO., et al., | MAG. JUDGE CASSADY |

*Case No. 12-968 BELO, E.D. La. Case No.: 14-2730 (transferred to S.D.Ala.; renumbered as 15-cv-300.*

---

## AFFIDAVIT

Before me, the undersigned Notary, personally came and appeared:

**Allen F. Campbell,**

who, upon being sworn, did depose and say that:

He is a resident of Fairhope, Alabama and is currently associated as a Volunteer Attorney with Legal Services of Alabama, Inc. ("LSA"), a non-profit law firm providing free legal

services to Alabama's low income residents. He is licensed to practice law in the States of Alabama, Louisiana, Florida and Texas, with Florida and Texas currently inactive. He was Board Certified by the Florida Bar in Admiralty and Maritime Law, has practiced law in New Orleans, La. and Pensacola, Fl. for over thirty years, and has served on the Adjunct Faculty at Loyola University of New Orleans School of Law, teaching Maritime Personal Injury.

Since the start of his work as a Volunteer with LSA in 2013 he has been involved with and assisting LSA attorneys and Staff members in LSA's efforts to provided legal assistance to its clients with BP economic and medical claims ("LSA clients"). This Affidavit is based on his personal knowledge acquired through working with LSA lawyers in connection with their representation of LSA clients, on information imparted to him by LSA lawyers in furtherance of their representation of LSA clients, and on his personal and professional experience in the practice of law.

He is also authorized to provide this affidavit to the Court on behalf of LSA.

As of this 15th day of October, 2015, LSA represents a total of 209 clients claiming class member benefits from the *Deepwater Horizon* Medical Benefits Settlement Class Action Agreement, as Amended May 1, 2012 ("MSA"). Many of these class members are claiming chronic injuries that resulted from their exposure to the *Deepwater Horizon* Incident. When LSA agreed to undertake the representation of these clients, LSA believed that the Medical Benefits Class Members who first manifested chronic conditions between 24-72 hours of exposure would be eligible to receive appropriate compensation through the SPC Matrix. However, as was

explained by this Court on November 26, 2014, and even though this was also what the PSC and this Court believed,[1] the controlling language of the MSA is now interpreted, and the outcome is different from what was envisioned at the fairness hearing.

With this shift in policy application, LSA has been focusing on existing SPC claims on behalf of our clients. Approximately one-third of our clients are formerly Laotian or Vietnamese, and are not yet fluent in the English language. All of our clients are low income. Few if any had recognized health insurance. This meant that health care was limited to ER or urgent care visits. Access to specified follow-up or specific diagnostic testing was extremely limited. Our clients had little or no access to the comprehensive medical attention and record-keeping process necessary to document chronic environmental conditions or ailments within days of exposure. Nevertheless, many of our clients are claiming some form of chronic ailment. These include chronic skin conditions, various chronic respiratory diseases, and damage to the eyes and surrounding physiology.

Many of our clients have already claimed daily exposure to crude oil, to the dispersants, and to the other hydrocarbons associated with the *Deepwater Horizon* Incident. They believe BP is responsible for their ongoing chronic injuries. This Court has observed that a remedy in these circumstances still exists.[2]

---

[1] *[Order] Regarding Class Counsel's Motion for Reconsideration (Rec. doc. 13303) of the Court's Order of July 23, 2014 Regarding Chronic Specified Physical Conditions (Rec. doc. 13179)*, No. MDL 2179, Rec. Doc. 13733, at 5 (E.D. La. Nov. 26, 2014) (Barbier, J.) (explaining this court envisioned a different interpretation at the time of the fairness hearing).

[2] *Id.*

3

LSA would like nothing more than to help its class members receive the appropriate and proper remedy as set forth in the MSA for their chronic injuries. This Court has ruled that these claims are no longer to be administered under the SPC Matrix process. Instead, as this Court explained, the MSA requires administration of these claims through the Back End Litigation Option "BELO" process under Section VIII of the MSA.

The BELO process requires litigation at a scale that our non-profit organization cannot afford and is not equipped to underwrite.

BP did make available certain funding to organizations such as ours through the BP Settlement Trust. These funds were designed for the most part to assist low income individuals in their economic recovery claims. Only a limited allowance was provided for medical claims handling. The BP grants did not include, and in our opinion did not even foresee, the current BELO litigation process for later-manifested, run-of-the-mill chronic conditions.

By way of example, the current BELO process will by necessity require the engagement of serial experts for any chronic condition. For a public service organization like ours this cost alone is prohibitive.

And even if recovery is achieved for claimants with multiple injuries, because multiple expert witnesses will be required, the costs are likely exceed any amount recoverable for many of these clients. Under any reasonable estimation, only the most severely injured clients stand a

chance to receive compensation that covers their costs. And in our organization this would true even though LSA receives zero compensation for the legal services rendered by LSA attorneys.

Based on these facts, and the peculiarity in the Medical Settlement Agreement chronic condition compensation process, LSA had to seek the assistance of private firms with a correspondingly higher number of clients. There was no other way to assist our class members seeking compensation for chronic medical conditions. It was the only option available.

As matters currently stand, and even with the provision of free legal assistance to class members, LSA cannot afford to take any of its clients through the BELO process..

And more the deponent sayeth not.

Mobile, Alabama, this 16th day of October, 2015.

*Allen F. Campbell* (signature)

Allen F. Campbell

Sworn to and subscribed

before me this the 16th day

of October, 2015.

*Kathy Patrick-Lee* (signature)

NOTARY PUBLIC, STATE AT LARGE

My Commission Expires:

KATHY PATRICK-LEE
Notary Public - State of Alabama
My Commission Expires
June 18, 2017

5