

Stephen S. Kreller
ssk@krellerlaw.com

December 4, 2015

The Honorable Joseph C. Wilkinson, Jr.
Chief Magistrate Judge
500 Poydras Street, Room B409
New Orleans, LA 70130

Dear Judge Wilkinson:

This letter contains our response to the memoranda submitted by Thomas L. Young and by Scott R. Bickford (for Plaquemines Parish).[1]

**I. Comments Concerning the Young Submission.**

(1) *The Class Claims Should Be Evaluated as of the Time of the Settlements.* The submission by Thomas L. Young incorrectly assumes that the settlement value of the claims should be assessed in light of legal rulings that were entered *after* the settlements were reached. It therefore relies on the odds that the class would succeed on appeal in reversing Judge Barbier's unfavorable rulings after the Phase One trial. But Halliburton entered its settlement agreement *before* Judge Barbier entered his Phase One Findings of Fact and Conclusions of Law. Indeed, the amount of Halliburton's settlement (the great majority of funds available for allocation) can only be understood in light of the risks it faced at the time it settled – two days before the Court's decision on the Phase One trial – when the outcome of Phase One was unknown. Thus, the proper frame of reference for evaluating the class claims is what the parties knew at the time of settlement, not at some later time.

---

[1] Our letter of November 20 contains a minor math error. Pages 5 and 6 note that BP received settlement payments of $4 billion from Anadarko, $1.065 billion from MOEX, $250 million from Cameron, and $75 million from Weatherford. These numbers are correct, but Page 6 incorrectly states a total sum of $5.165 billion. The correct sum is $5.39 billion. This slightly increased offset amount also requires a slight decrease in the maximum total exposure amount for Old Class claims listed on Pages 1 and 6. Instead of $27.8 billion, the figure should be $27.6 billion.

757 Saint Charles Avenue, Suite 301 / New Orleans, LA 70130
504.484.3488 / 888.929.3488 / Fax: 888.294.6091 / www.krellerlaw.com
Licensed in Alabama, Georgia, Louisiana and New York

You, as Allocation Neutral, should therefore appropriately discount arguments that depend on post-settlement hindsight. For instance, at the time of Halliburton's settlement Judge Barbier had not ruled on whether the *P&E Boat Rentals* doctrine applied to this case, and if so whether the plaintiffs had made the factual showings necessary to overcome it. *Cf.* Young Mem., ECF No. 15572, at 2-3. As a result, Halliburton faced a much greater risk of punitive damages at the time of its settlement than it would have faced at the time of an appeal taken after the Phase One ruling had issued.

(2) ***Some Theories of Recovery Had No Realistic Prospects for Succeeding.*** The Young submission asserts that the Old Class had "numerous exclusive routes to recovery" "in which Old Class recovers all of the funds and New Class recovers nothing," Young Mem. at 8, but most theories of recovery had already been rejected prior to the Halliburton settlement or had no realistic prospects for success.

For instance, because Halliburton did not own or operate the *Deepwater Horizon*, the vessel's seaworthiness was irrelevant to Halliburton's liability and its contribution of more than 80% of the settlement funds. As to Transocean, Judge Barbier had already ruled that any unseaworthiness of the vessel could not invalidate the indemnification clauses in Transocean's contract with BP. ECF No. 5446 at 29; *see also* Young Mem. at 11. Likewise, before the settlements, Judge Barbier had found it "doubtful" that any breach of contract or material increase of BP's risks by Transocean (*see* Young Mem. at 8-10) could invalidate the indemnity. ECF No. 5446 at 25.

Finally, that BP was seeking "contribution under the Oil Pollution Act," Young Mem. at 11-12, makes no difference. The contractual release and indemnification clauses applied no matter the legal basis for BP's contribution claim. Obtaining contribution under OPA would

therefore have required rulings on gross negligence that would also have subjected Halliburton and/or Transocean to punitive damages, so OPA did not provide the Old Class with an exclusive path to recovery.

(3) ***Halliburton and Transocean Had Defenses that Applied Only to Old Class Claims.*** It was in fact possible for the New Class to recover while the Old Class would not. At the time of the settlements Judge Barbier had not ruled on whether gross negligence by BP barred it from recovering against Halliburton or Transocean. The Court did, in fact, find BP grossly negligent. Had the Court ruled that BP's gross negligence precluded contribution, such a ruling would have prevented or dramatically limited the Old Class's recovery. This was a risk unique to the Old Class, as BP's gross negligence and its consequences would not have affected the New Class's right to recover punitive damages against Halliburton and/or Transocean.

Further, at the time of settlement, pending questions surrounding "the assignability of BP's claims to Old Class" posed risks to the Old Class but not the New Class. *See* Young Mem. at 5 n.13. We identified these questions in our previous letter (at 8). The validity of the assignment was another unique risk to the Old Class, again creating the possibility of recovery solely by the New Class.

(4) ***The Significance of Gross Negligence to the New and Old Classes.*** The New Class had to prove gross negligence by Halliburton and/or Transocean to receive punitive damages up to the total amount of compensatory damages from the spill. The Young submission (at 4) states that this same showing of gross negligence would "invalidate at least the release as to BP's first-party losses (benefitting Old Class)." This omits two critical considerations.

First, while the contractual releases might have been invalidated by Halliburton's or Transocean's gross negligence, Judge Barbier had ruled that BP needed to show *more* than gross

3

negligence to invalidate the *indemnification* provisions. Thus, a finding of gross negligence may have subjected Halliburton or Transocean to liability for BP's direct losses (i.e., loss of the well), but not to contribution for BP's payments to third parties.

Second, the parties disputed what categories of BP's damages could be categorized as direct losses subject to release, as opposed to third-party payments subject to indemnification. There was no dispute that BP's claims for its lost profits from the well were direct damages, or that funds paid by the GCCF and the DHECC were third-party payments. But the parties disputed whether BP's cleanup costs were direct first-party damages or payments to third parties. Halliburton's motion on this topic argued that the indemnification provision inoculated it from contributing to cleanup costs (ECF No. 10548-1 at 15-18), an issue that Judge Barbier had not decided at the time of settlement. Thus, even with a finding of gross negligence, Halliburton's or Transocean's exposure would have excluded contribution for third party payments (up to $18.3 billion) and perhaps cleanup costs ($14.3 billion).

(5) ***Calculation of the Value of the Oil.*** The lost profits calculation in the Young submission is unrealistic. It multiplies the number of barrels of oil in the Macondo prospect by the per-barrel price in April 2010, ignoring ownership, costs, profit margin, and timing considerations. *See* Young Mem. at 6-7 n.16. Anadarko and MOEX together owned a 35% interest in the oil, which presumably reduced BP's lost profits accordingly. Further, the profit margin would have been drastically less than the 100% this calculation assumes. As a point of reference, since 2005 BP's annual net margin has ranged between -1.23% and 9.03%, with an average of approximately 5.25%.[2] The time factor for extracting oil from the formation, the recovery percentage, and fluctuations in price over time, also would reduce the present value of a

---

[2] *See* http://financials.morningstar.com/ratios/r.html?t=BP&region=usa&culture=en-US&ownerCountry=USA.

4

lost profits claim. Adjusting for these considerations, BP's lost profits claim would likely have been much smaller than the number suggested in the Young submission.

(6) ***BP Did Not Seek Punitive Damages.*** The Young submission suggests (at 7) that BP could have sought punitive damages from Halliburton and Transocean in an amount equal to its first-party compensatory damages, but BP did not assert such a claim. Further, the viability of such a claim seems doubtful given the evidence of BP's unclean hands.

## II. Comments Concerning the Bickford Submission.

(1) ***Judge Barbier had Not Decided BP's Gross Negligence or Its Legal Effects.*** Here again, at the time of Halliburton's settlement Judge Barbier had not yet made any findings regarding whether BP had been grossly negligent. He also had not decided whether gross negligence by BP would bar its recovery against Halliburton and Transocean—due to the settlements Judge Barbier never decided that issue. The risks facing both New and Old Class claims should be assessed as of the time of settlement.

(2) ***The Parties Contractually Agreed to Ex Parte Review.*** The settlement agreements authorize the Allocation Neutral to review materials *ex parte*. The Bickford submission (at 11) observes that *ex parte* communications with special masters "for disposition of substantive matters" generally are not permitted. But the Allocation Neutral here is not deciding the merits of a case. Rather, the Allocation Neutral is performing a contractually defined role using contractually defined powers. None of the cases cited (*id.* n.32) involves a settlement agreement that expressly contemplates *ex parte* submissions. The permissibility of *ex parte* review should be governed by the parties' contract as reflected in the Court's order.

(3) ***Halliburton's and Transocean's Information Can be Considered.*** We are aware of no authority suggesting that the tax consequences of your allocation decision to Halliburton and

Transocean preclude you from considering their submissions. Any such tax implications can appropriately be considered in assessing the weight of their submissions.

 With kindest regards, I am

          Very truly yours,

          Stephen S. Kreller

cc: William L. Roberts, Esq.
   Craig S. Coleman, Esq.
   Jonathan W. Dettmann, Esq.
   Casey Lott, Esq.