

# THE LADD FIRM, LLC
## ATTORNEYS

51 Tacon Street, Suite E
Mobile, AL 36607

December 4, 2015

RECEIVED
DEC -4 2015
CHAMBERS OF
U.S. MAGISTRATE JUDGE
JOSEPH C. WILKINSON, JR.

*File in the record* CJB 12/6/15

<u>Via Facsimile to (504) 589-7633 and U.S. Mail</u>

The Honorable Joseph C. Wilkinson, Jr.
Chief Magistrate Judge
500 Poydras Street
Room B409
New Orleans, LA 70130

RE:  *In re: Oil Spill by the Deepwater Horizon in the Gulf of Mexico on April 20, 2010, MDL 2179*  (This document relates to Nos. 12-970, 15-4143, 15-4146 & 15-4654)

Dear Judge Wilkinson:

Pursuant to your Order dated October 8, 2015, we respectfully submit the following comments relating to the allocation of funds between the "Old Class" and the "New Class" under the Halliburton and Transocean settlements. Our firm represents two groups of claimants: (1) claimants who are members of the "Old Class" only; and (2) claimants who are members of the "Old Class" and the "New Class." Our "Old Class" clients include claimants under the Business Economic Loss (BEL), Individual Economic Loss (IEL), Coastal Real Property (CRP) and Real Property Sales (RPS) frameworks. Our "New Class" clients include CRP claimants, some of whom also made RPS claims.

Before providing these comments, we reviewed the submissions and correspondence in the record and the transcript of the Status Conference held on October 8, 2015.

1. **Real Property Sales Claimants**

At the status conference, you observed that the following categories of DHEPDS claimants appear to be included within the New Class: commercial fishermen, coastal real

Honorable Joseph C. Wilkinson, Jr.
December 4, 2015
Page 2

property owners, wetlands real property owners, subsistence hunters and fishers, and vessel physical damage claimants. (Oct. 8, 2015 Status Conference Tr. at 26-28.) For purposes of your work, please note that the eligible parcel maps for Real Property Sales claims and CRP claims are essentially the same.[1] As a result, our experience has been that most, if not all, RPS claimants also made a CRP claim relating to the same property. Thus, it appears that CRP and RPS claimants should be treated the same where membership in the New Class is concerned.

### 2. Beachfront Condominium Owners

On November 23, 2015, the newly appointed Claims Administrator for the New Class requested letter briefs on the following issue:

> Who owns the actual beach / the actual waterfront land bordering the Gulf of Mexico under the respective state laws of Florida, Alabama, Mississippi, Louisiana and Texas? Is it the state? A local government? Individual private landowners? Condominium owner associations?
>
> As an example, consider a high rise condominium building that sits on the beach in Orange Beach, AL. Oil washed ashore that beach following the Deepwater Horizon Oil Spill. Who was the owner of the actual beach where oil washed ashore? The State of Alabama? The City of Orange Beach? Each individual condo unit owner (by virtue of a small fractional interest in the overall property)? The condominium owner association? Some other person or entity?

(Exhibit A, November 23, 2015, E-mail from Michael Juneau to S. Herman, K. Miller, A. York, J. Roy). The issue raised by the Claims Administrator appears to be directed at the question of whether certain property owners, particularly beachfront condominium owners, are members of the New Class. Under the HESI and Transocean settlement agreements, persons who "owned . .

---

[1] Under the DHEPDS, a Real Property Sales claim could be made by a claimant who owned an eligible parcel on April 20, 2010 and sold the property before December 31, 2010. DHEPDS, Exhibit 13A, Compensation Framework for Real Property Sales. The eligible parcel maps for RPS claims and CRP claims are substantially the same. *Compare* DHEPDS, Exhibits 11B, 11C *with* DHEPDS, Exhibit 13B.

Honorable Joseph C. Wilkinson, Jr.
December 4, 2015
Page 3

or held any proprietary interest in Real Property (a) alleged to have been touched or physically damaged by oil . . ." are members of the New Class. (Doc. 14644-1 at 5; Doc. 15322-1 at 5.)

Beachfront condominium owners likely represent a significant portion of the potential members of the New Class. Based on total estimated eligible claims as projected by counsel for members of both classes, CRP claims represent the second most numerous category, or 31% of the total estimated eligible claims common to the New and Old Classes. (Exhibit B attached hereto, Estimated DHECC Totals for Claimants Common to the "Old Class" and the "New Class".) We are not aware of any publicly available data regarding what portion of CRP claimants are condominium owners. However, based on our experience with CRP claimants, we think it is very likely that condominium owners represent more than half of all CRP claimants. The Claims Administrator for DHEPDS may be able to provide a better estimate.

If a variation of approximately 15% in the number of New Class members is not material to your task, then this issue may be left to the Claims Administrator for the New Class.[2] On the other hand, if this variable will materially affect the allocation, we respectfully suggest that the Court, acting as Special Master, make further inquiry to ascertain (a) the percentage of CRP claimants who are beachfront condominium owners; and (b) the likelihood that beachfront condominium owners ultimately will be held to be Members of the New Class. If funds are allocated to the New Class representing punitive damages for a substantial number of claimants who are later found not to be members, the result would be a windfall to the remaining members of the New Class.

---

[2] This 15% estimate does not take into account the number of New Class members who are not also in the Old Class. Counsel for this group indicated that there was no publicly available information from which he could determine the number of New Class-only claimants. (Plaquemines Parish Submission, Doc. 15574 at 10).

Honorable Joseph C. Wilkinson, Jr.
December 4, 2015
Page 4

### 3. Economic Losses of Coastal Real Property Owners (Lost Rent)

According to the argument of counsel for claimants common to both classes, the amount recovered in DHEPDS by claimants with *Robins Dry Dock* standing is relevant to the allocation analysis in several respects. (Doc. 15570, S. Kreller submission at 5, 6, 9-10.) One method for calculating this amount is to add the projected recoveries for categories of claimants with *Robins Dry Dock* standing. (See *id.* at 6, n.9.) However, where Coastal Real Property claimants are concerned, this method does not include a significant component of their damages: lost rent. Unlike seafood claimants who recovered all of their compensatory damages through one framework, beachfront property owners were required to recover property damages through the CRP framework, and business economic losses (e.g., lost rent) through the BEL framework. Furthermore, where property owners have recovered both types of losses, lost rent often exceeds the CRP recovery by a factor of five or more. Unfortunately, we are not aware of any publicly available data that would show the amount of economic damages attributable to beachfront property that is embedded within BEL recoveries.

What impact does this omission of lost rent recoveries have on the allocation? In the first place, the significance is simply that the $3.2 billion estimate of amounts recovered by *Robins Dry Dock* claimants, arrived at by an otherwise sound methodology, is too low. It is not possible to say by how much. This may or may not be material to your task.

The second point of significance brings us back to the issue of whether beachfront condominium owners are members of the New Class. Some may contend that this issue should not materially affect the allocation because the recoveries of beachfront condominium owners are modest in comparison to the recoveries of other groups. Estimated total recoveries on CRP

Honorable Joseph C. Wilkinson, Jr.
December 4, 2015
Page 5

claims represent only five percent of the total estimated recovery for all six groups.[3] However, as just discussed, this percentage is inherently unreliable because this group also recovered lost rent that is embedded in BEL recoveries.

Thank you for your consideration of these comments. In submitting them, we have attempted to be mindful of the task that is before you. If you would like us to provide additional information regarding the issues discussed in this submission, please do not hesitate to ask.

Very truly yours,

Banks C. Ladd

cc: Scott R. Bickford (via email to srb@mbfirm.com)
Stephen J. Herman (via email to sherman@hhklawfirm.com)
Don K. Haycraft (via email to dkhaycraft@liskow.com)
Stephen S. Kreller (via email to ssk@krellerlaw.com)
Kerry J. Miller (via email to kjmiller@bakerdonelson.com)
R. Alan York (via email to ayork@godwinlaw.com)
Thomas L. Young (via email to tyoung@tlylaw.com)

---

[3] *See* Exhibit B (CRP estimated total payments of $168,954,765 divided by Total Estimated Payments of $3,205,545,855 = 5.27%).

EXHIBIT "A"

# Banks Ladd

| | |
|---|---|
| **From:** | Neil C. Johnston, Jr <neilcjohnston@ncjlawoffice.com> |
| **Sent:** | Tuesday, November 24, 2015 1:14 PM |
| **To:** | Banks Ladd |
| **Subject:** | Fwd: [gulf_coast_oil_spill] BP Oil - Halliburton / Transocean Settlement |

Neil C. Johnston, Jr., Esq.
LAW OFFICE OF NEIL C. JOHNSTON JR., LLC
T: (251) 709-8251
F: (251) 725-9732
Neilcjohnston@ncjlawoffice.com

**E-MAIL CONFIDENTIALITY NOTICE:** This electronic mail message and any attachment is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. If you are not the intended recipient, you are hereby notified that dissemination, distribution (electronic or otherwise) or copying of this e-mail or the information contained herein is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this message or by calling (251) 709-8251 to arrange for the return of the electronic mail, attachments, or documents. Thank you.

Begin forwarded message:

> **From:** Steve Herman <SHERMAN@hhklawfirm.com>
> **Date:** November 24, 2015 at 12:15:06 PM CST
> **Subject: [gulf_coast_oil_spill] BP Oil - Halliburton / Transocean Settlement**
>
> See below.
>
> Stephen J. Herman, Esq.
> Herman Herman & Katz LLP
> Office (direct): (504) 680-0554
> E-Mail: sherman@hhklawfirm.com
>
> To see what's new in Class Actions / BP Oil Spill Lit. /
> Legal Ethics & Professionalism / Product Liability / ERISA /
> Visit: www.gravierhouse.com

1

-----Original Message-----
From: Michael J. Juneau
Sent: Monday, November 23, 2015 12:35 PM
To: Steve Herman; Kerry Miller; Alan York; Jim Roy
Subject: New Punitive Damage Class - Legal Issue

Counsel:

As the Court-appointed Claims Administrator of the New Punitive Damage Class, I am charged with the responsibility of creating a Distribution Model for the funds that are eventually allocated to this class. To assist me in this regard, I ask the parties (as well as any other counsel who wish to do so) to submit to me letter briefs addressing the following specific legal issue:

Who owns the actual beach / the actual waterfront land bordering the Gulf of Mexico under the respective state laws of Florida, Alabama, Mississippi, Louisiana and Texas? Is it the state? A local government? Individual private landowners? Condominium owner associations?

As an example, consider a high rise condominium building that sits on the beach in Orange Beach, AL. Oil washed ashore that beach following the Deepwater Horizon Oil Spill. Who was the owner of the actual beach where oil washed ashore? The State of Alabama? The City of Orange Beach? Each individual condo unit owner (by virtue of a small fractional interest in the overall property)? The condominium owner association? Some other person or entity?

In order that this issue is adequately addressed from the perspective of those who might have differing interests, I also ask that the PSC/Class Counsel share this letter with appropriate counsel so that they might submit letter briefs on the issue if they desire to do so.

Please have these letter briefs submitted to me by mail at the following address no later than January 15, 2016:

Michael J. Juneau
Claims Administrator
P.O. Box 51268
Lafayette, LA. 70505-1268

Thank you.

MICHAEL J. JUNEAU
Claims Administrator

CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.

+-+-+-+-+-+-+-+-+-+-+ List Instructions +-+-+-+-+-+-+-+-+-+-+-+-+-+
Before replying, *PLEASE*, delete all instruction lines.

To unsubscribe from this list or to report a list server violation, please contact the List Manager at listmanager@justice.org or 877-799-3804.

The information posted on this list server is confidential, is protected under the Electronic Communications Privacy Act, 18 USC sections 2510-2521, and may also be protected by attorney-client and/or attorney/work product privileges. It is intended only for the use of the individuals licensed to have access to this list server and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this information or any other reader of the list server is not a permitted member, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this information in error, please return the original message to us at listmanager@justice.org.

3

EXHIBIT "B"

**Estimated DHECC Totals for Claimants Common to the "Old Class" and the "New Class"**

| Source<br>Claim Type | A<br>Doc. 15570-4, Table 2<br>Claims Submitted | B<br>Doc. 15570-4, Table 4<br>Total Payment Offers | F<br>Doc. 15570-4, Table 2<br>Estimated Remaining Eligible Claims | G<br>B+F<br>Total Estimated Eligible Claims | H<br>Doc. 15570-4, Table 2<br>Estimate of Total Payments | I<br>G/Total<br>Percentage of Total Estimated Eligible Claims |
|---|---|---|---|---|---|---|
| Seafood Compensation Program | 24,938 | 13,383 | | 13,383 | $ 2,300,000,000 | 14% |
| Coastal Real Property | 42,054 | 28,813 | 1,513 | 30,326 | $ 168,954,765 | 31% |
| Wetlands Real Property | 26,426 | 7,030 | 5,813 | 12,843 | $ 373,467,043 | 13% |
| Real Property Sales | 3,065 | 856 | 429 | 1,285 | $ 60,547,154 | 1% |
| Subsistence | 67,601 | 17,007 | 20,760 | 37,767 | $ 289,160,697 | 39% |
| Vessel Physical Damage | 1,553 | 810 | 58 | 868 | $ 13,416,196 | 1% |
| | | | | | | |
| **Total:** | 165,637 | | | 96,472 | $ 3,205,545,855 | 100% |