# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

———————————————

No. 14-31026
Summary Calendar

———————————————

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:12-CV-970

United States Court of Appeals
Fifth Circuit

**FILED**

June 16, 2015

Lyle W. Cayce
Clerk

IN RE: DEEPWATER HORIZON

--------------------------------------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; ET AL

      Plaintiffs

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.; PLAINTIFFS' STEERING
COMMITTEE,

      Defendants - Appellees

v.

WALKER FISHING FLEET, INCORPORATED,

      Claimant - Appellant

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before JONES, PRADO, and OWEN, Circuit Judges.

# J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that claimant-appellant pay to defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.

Certified as a true copy and issued
as the mandate on **Dec 01, 2015**

**Attest:**

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-31026
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 16, 2015

Lyle W. Cayce
Clerk

IN RE: DEEPWATER HORIZON

_____

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; ET AL

       Plaintiffs

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; PLAINTIFFS' STEERING COMMITTEE,

       Defendants–Appellees

v.

WALKER FISHING FLEET, INCORPORATED,

       Claimant–Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-MD-2179

Before JONES, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

_____

    * Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 14-31026

This case arises from the class-action settlement program for civil claims arising from the Deepwater Horizon oil spill. Claimant–Appellant Walker Fishing Fleet, Inc. (Walker) is a commercial fishing company active in the Gulf of Mexico. It appeals an award of $416,900.71 that it received pursuant to Defendant–Appellee BP's class-action Settlement Agreement. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Following the Deepwater Horizon oil spill, BP established the Court-Supervised Settlement Program (CSSP). *See In re Deepwater Horizon*, 732 F.3d 326, 329 (5th Cir. 2013). The CSSP is managed by a court-approved Claims Administrator, who makes an initial determination on a party's claim. The CSSP provides multiple levels of appellate review. First, a party may request that the Claims Administrator reconsider an award based on an alleged calculation error, a failure to take into account relevant information or data, or failure to follow the standards governing a determination. The Claims Administrator issues a Post-Reconsideration Eligibility Notice that either party may use to seek a second level of review before an Appeal Panelist.[1] The Appeal Panel issues a written ruling that is subject to a third level of appellate review, this time by Judge Carl Barbier of the Eastern District of Louisiana. Judge Barbier retains discretion to accept or deny review.

Central to this appeal is the National Oceanographic and Atmospheric Administration (NOAA) Individual Fishing Quota (IFQ) system. The IFQ system allocates among Gulf of Mexico fishermen specific percentages of the annual catch of various species of fish. The IFQ system permits a fisherman to lease his right to catch fish—i.e., to lease a percentage of his shares—to another fisherman for a given period of time. Therefore, the NOAA keeps two

---

[1] Depending on the amount of the award, the claim is reviewed by either a single Appeal Panelist or a three-person Appeal Panel.

2

Case: 14-31026     Document: 00513289021     Page: 3     Date Filed: 12/01/2015
Case 2:10-md-02179-CJB-DPC   Document 15648   Filed 12/10/15   Page 5 of 8

No. 14-31026

ledgers: the share ledger tracks share ownership, while the allocation ledger tracks changes in the right to catch fish, including transactions in which an owner leases his shares to another. As BP notes, the NOAA IFQ system contemplates a multitiered system of share ownership: "The difference between the two ledgers is akin to the difference between fee-simple ownership of real property (the equivalent of what the share ledger tracks) and a term-of-years lease for the same land (what the allocation ledger tracks)."

The Settlement Agreement relies in part on the NOAA IFQ system to structure its Seafood Compensation Program (SCP). This program guarantees a $2.3 billion fund to be distributed to those people and entities involved in the seafood industry—including IFQ shareholders—that sustained economic loss as a result of the spill. It provides a fixed compensation amount to be distributed among IFQ shareholders according to their respective "right to catch" specific species of fish, measured to the nearest 0.0001% of the total pound allotment. To establish its eligibility for compensation using the IFQ method, an entity must provide "[p]roof of ownership as of April 20, 2012 of the Individual Fishing Quota share" for a given species. Compensation is calculated in two steps. First, "[t]he value of a Claimant's IFQ shares is calculated as the product of the species-specific number of quota shares held and the species-specific value per quota share." Second, "the compensation received by a Claimant is calculated by multiplying the value of the Claimant's share . . . by 0.625."

Walker first filed a claim with the SCP in September 2012. In July 2013, the Claims Administrator made a finding that Walker possessed 1.485615% red-snapper IFQ shares for the applicable time period, and it awarded Walker a total of $416,900.71 for those shares. Walker requested reconsideration, and the Claims Administrator confirmed the award in August 2013. Next, Walker submitted a request for appeal, contending its award ought to have been based

No. 14-31026

on the 2.528500% share Walker owned according to the share ledger. BP submitted briefing in support of the original award. The Appeal Panelist confirmed the initial award: though Walker demonstrated it held a 2.528500% share of red snapper on January 1, 2010, "a reconstruction of ledger transactions" indicated Walker's share on April 20, 2010 was only 1.485615%. Finally, Walker submitted a request for discretionary review to the district court. Judge Barbier denied review on July 29, 2014, and this appeal timely followed.

Before this Court, Walker contends the Claims Administrator erred in basing Walker's compensation for lost fishing revenue the IFQ allocation ledger rather than the share ledger.

## II.    DISCUSSION

We have jurisdiction over this appeal under the collateral-order doctrine. The denial of discretionary review at issue "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment," *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)); *see also In re Deepwater Horizon*, No. 13-30843, __ F.3d __ (5th Cir. May 8, 2015).

As noted, the Agreement gives the district court discretion to decide whether it will review an award. We review its denials for abuse of discretion. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995). The interpretation of a settlement agreement is a question of contract law that this Court reviews de novo. *In re Deepwater Horizon*, 744 F.3d 370, 374 (5th Cir. 2014), *cert. denied*, 135 S. Ct. (2014). Therefore, our review of the district court's interpretation of the Agreement is "effectively *de novo* because '[a] district court by definition abuses its discretion when it makes an error of law.'" *United*

4

No. 14-31026

*States v. Delgado–Nuñez*, 295 F.3d 494, 496 (5th Cir. 2002) (alteration in original) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

Ordinary principles of contract interpretation apply to this settlement agreement. *See Fla. Educ. Ass'n, Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973) (per curiam). The Agreement provides that it "shall be interpreted in accordance with General Maritime Law." Maritime law requires us "to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004).

The provisions at issue here comprise the compensation framework for IFQ shareholders. The Agreement provides compensation to those who can provide "[p]roof of ownership [of IFQ shares] as of April 20, 2010," the day of the blowout. It authorizes compensation based on the number of shares held on the relevant date:

> Individual Fishing Quota Shareholders that have provided the proof of eligibility and the required documentation . . . shall receive the compensation based on the value of Individual Fishing Quota *shares held*. IFQ shares *are defined* as the *right to catch* 0.0001% of the pounds of the catch [of] the relevant species that can be caught by commercial fishermen under the relevant quota.

The Agreement also specifies the lump sum to be distributed among IFQ shareholders: "In the aggregate, IFQ holders will receive compensation of $50 million. . . . IFQ Shareholder Claimants will be compensated in proportion to the percentage of the total value of IFQ shares, calculated across all species." In other words, the Agreement allocates a fixed amount of money to be distributed among those eligible for compensation.

Walker contends the Claims Administrator erred in using the allocation ledger to calculate its shares for IFQ-compensation purposes. It argues that the relevant metric is "shares held," and that the Allocation Ledger "merely

5

No. 14-31026

demonstrates that Walker made several *allocation* transfers in 2010 prior to the Spill, not *share* transfers." But as BP responds, the Agreement defines "IFQ shares" themselves as "the *right to catch*" a percentage of the relevant fish. As the Claims Administrator and the Appeals Panelist determined, this is the relevant definition for purposes of the IFQ compensation plan.

The Claims Administrator's interpretation is consonant with the broad purpose of the Settlement Agreement. The SCP uses a limited fund to "compensate Commercial Fishermen . . . for economic loss" based on the shares each fisherman held on the day of the blowout. The SCP focuses on day-of harm rather than on future economic risk. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on April 20, 2010*, 910 F. Supp. 2d 891, 956–57 (E.D. La. 2012) (rejecting objections to the Settlement Agreement that "the SCP fails to account for future risks to Gulf of Mexico fisheries" because the program "was a reasonable compromise considering evidence . . . that most of the relevant commercial species appear to be within normal, pre-spill trends"). By defining share ownership with reference to an entity's right to catch fish as reflected in the allocation ledger, the Claims Administrator's interpretation both most accurately compensates for the actual economic harm caused by the blowout and avoids double recovery.

We conclude that the Claims Administrator's interpretation of the Settlement Agreement was correct, that it properly calculated Walker's IFQ share, and therefore that the district court did not abuse its discretion in denying Walker's request for discretionary review.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM.

6