UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 SECTION: J |
| | * | JUDGE BARBIER |
| Applies to: 12-cv-968: BELO | * * | CHIEF MAGISTRATE JUDGE WILKINSON |
| | * * | MAGISTRATE JUDGE SHUSHAN |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| LEROY G. WILSON, JR., | * * | |
| PLAINTIFF, | * * | CIVIL ACTION NO. 15-300 |
| VERSUS | * * | |
| BP EXPLORATION & PRODUCTION INC. AND BP AMERICA PRODUCTION COMPANY, | * * * * | JUDGE GRANADE MAGISTRATE JUDGE CASSADY |
| DEFENDANTS. | * * | |
| Related to:   12-968 BELO                   in MDL No. 2179 | * * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**BP'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION TO REQUIRE BP TO PAY COSTS
<u>ASSOCIATED WITH HIS SPC AND LMPC CLAIMS</u>**

**INTRODUCTION**

After nearly a year of intense negotiations, BP and Class Counsel agreed to provide assured compensation to Class Members for Specified Physical Conditions ("SPC") and ease the burden and expense of litigating claims for Later-Manifested Physical Conditions ("LMPC") first diagnosed after April 16, 2012.[1] After considering all objections, this Court approved the Medical Benefits Settlement Agreement ("MSA") on January 11, 2013.[2]

Plaintiff now contends BP agreed to pay for his and all other Class Members' SPC and LMPC costs—including paying opposing experts—despite no hint of such an obligation in the MSA, the parties' pre-approval submissions, the fairness and approval hearings, and the related orders. Plaintiff argues that the final subsection of the MSA's definition of "Settlement Costs" should be interpreted to require BP to fund litigation against itself, including shifting all of plaintiffs' expert fees to BP, the costs of which he estimates to be $320,000 to $640,000 for a single rhinosinusitis case. The MSA imposes no such obligations, and Plaintiff's position is in direct contravention of the "American Rule" that requires each party to bear its own litigation costs. Had the parties agreed to such an unprecedented obligation, there would have been a clear statement of that agreement in the MSA. As Plaintiff concedes, no such "clear language" exists.[3]

Construing the MSA to create a new and extraordinary burden on BP to pay all SPC and LMPC costs Class Members choose to expend would render meaningless the definition's carefully negotiated terms and invite the filing of potentially thousands of questionable claims

---

[1]   *See* Preliminary Approval Order as to the Proposed Medical Benefits Class Action Settlement, Rec. Doc. 6419, at 3 ("Preliminary Approval Order").

[2]   *See* Order and Reasons Granting Final Approval of the Medical Benefits Class Action Settlement, Rec. Doc. 8217, at 90–91 ("Final Approval Order").

[3]   *See* Rec. Doc. 15596-4, at 17 (Tr. of Aug. 12, 2015 Sched. Conf.) (Plaintiff's counsel conceded that "We don't see clear language on that.").

that would not otherwise have been brought. Plaintiff's request—which is more akin to a proposal to rewrite the MSA and an untimely objection to its fairness—is contrary to the MSA. The Court should deny Plaintiff's meritless motion.

## BACKGROUND

The MSA created a carefully-crafted and comprehensive scheme to compensate and facilitate medical care for those affected by the *Deepwater Horizon* oil spill and clean-up efforts. It provides compensation to Class Members with SPCs; a Back-End Litigation Option ("BELO") for Class Members with LMPCs; a Periodic Medical Consultation Program ("PMCP") providing free medical visits over 21 years for eligible Class Members; and a Gulf Region Health Outreach Program ("GRHOP") to expand capacity for and access to high quality, sustainable healthcare services in Gulf Coast Communities.[4]

BP agreed to pay fixed amounts for SPCs based upon a determination by the Claims Administrator, in lieu of requiring litigation.[5] BP also agreed to a simplified BELO process for Class Members with physical conditions first diagnosed after April 16, 2012, that relieves BELO plaintiffs of the burden and expense of proving BP's fault for the *Deepwater Horizon* incident and the fact of their spill exposure.[6] The BELO remedy does require that a plaintiff prove his or

---

[4] *See Deepwater Horizon* Medical Benefits Class Action Settlement Agreement, as Amended on May 1, 2012, Rec. Doc. 6427-1, §§ VI–IX ("MSA").

[5] MSA § VI.A, B & Ex. 8.

[6] MSA § VIII.G.3(b).

2

her LMPC was *legally caused* by spill exposure.[7] "The BELO lawsuit is essentially a new action, separate from the class action."[8]

BP also agreed to pay certain "Settlement Costs," and the MSA contains a detailed definition that enumerates two categories of agreed-upon "Settlement Costs."[9] The first category comprises subsections (i) through (iii) that cover the funding of components of the settlement itself—the payment of SPC compensation and the funding of the PMCP and the GRHOP. The second category comprises subsections (iv) through (viii) that cover certain administrative expenses associated with the settlement, such as the Claims Administrator's compensation and expenses and the costs of notice to the class. The related definitions *do not* provide that BP must pay a Class Member's SPC or BELO litigation costs, nor does any other provision of the MSA.

## ARGUMENT

### I. THE MSA DOES NOT REQUIRE BP TO PAY PLAINTIFF'S COSTS.

A maritime contract such as the MSA should be read as a whole and interpreted according to the plain meaning of its language.[10] "[O]nce approved," a class action settlement's "terms must be followed by the court and the parties alike."[11]

---

[7] MSA § VIII.G.3(a)(iv).

[8] *See* Order As to Whether BELO Cases May Be Tried to a Jury, Rec. Doc. 14479, at 3 ("Jury Trial Order").

[9] MSA § II.QQQQ. For the Court's reference, the MSA's definition of "Settlement Costs" is attached hereto as Exhibit A. Settlement Costs may be paid directly by BP, *see* MSA §§ IV.E, XXII.A, or through a DWH Trust that is funded by BP and that may be accessed by the Claims Administrator, *see* MSA §§ XXII.A–D.

[10] *See Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009) (a maritime contract should be read as a whole and its words given their plain meaning unless the provision at issue is ambiguous); *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986) (same).

[11] *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011).

Plaintiff asks this Court to create massive new obligations out of whole cloth. The MSA is a 200-page contract with 19 exhibits. Nowhere does it shift to BP the costs that Plaintiff seeks. Plaintiff asks the Court to rewrite the MSA to require BP to reimburse or pay for those expenses related to his SPC and LMPC claims, including, *inter alia*, document collection, copying, and mailing costs; filing and court reporting fees; and discovery costs in his BELO lawsuit, including expert fees.[12] The Court should not materially modify the MSA in this manner.

### A.   "Settlement Costs" Do Not Include the Costs of Litigating an LMPC Claim.

Plaintiff argues that BP agreed to fund countless lawsuits against itself without ever once mentioning this extraordinary obligation in the Agreement. Plaintiff's argument finds no support in the MSA. The items defined in the first category of "Settlement Costs" cover BP's obligations to pay SPC "compensation" and "all costs associated with" the PMCP and the GRHOP.[13] Notably, there is no obligation to fund "all costs associated with" the BELO in this category. The parties could have easily included a BELO subsection covering such costs using language analogous to that in subsections (ii) for the PMCP and (iii) for the GRHOP. The absence of such language, standing alone, shows that BELO litigation costs are not "Settlement Costs."

The second category of "Settlement Costs" covers certain administrative expenses, such as the Claims Administrator's compensation and the costs of notice to the class.[14] This category includes only one type of cost related to the BELO: the compensation and expenses of "the

---

[12]   Plaintiff's MSA XXVII Motion, Rec. Doc. 15596 ("Pl.'s Mot."), at 7–9.

[13]   MSA § II.QQQQ(i)–(iii).

[14]   MSA § II.QQQQ(iv)–(viii).

4

mediators used in connection with claims for Later-Manifested Physical Conditions."[15]  These mediation fees and costs are the *only* included costs that relate in any way to the BELO, which confirms that other BELO-related costs are not "Settlement Costs."  Under the basic principle of *exclusio unius est exclusio alterius*, the express inclusion of one type of costs means that other types of costs, which were *not* mentioned, must be excluded.[16]

Plaintiff's reliance on subsection (viii) of the "Settlement Costs" definition, which references "all other costs and compensation reasonably associated with the implementation and administration of the MSA," is misplaced.  A Class Member does *not* "implement" or "administer" the MSA, and Plaintiff's argument to the contrary distorts the text of the MSA well beyond its breaking point.  The phrases "implementation and administration" or "implement and administer" appear three times in the MSA (in addition to the definition of "Settlement Costs") and only in connection with actions to be performed by the Claims Administrator.[17]  The terms "implement" and "administer" are found numerous times throughout the MSA, but not once in

---

[15] MSA § II.QQQQ(v).  The MSA provides BP with the option to mediate valid Notice of Intent to Sue claims prior to a plaintiff filing a BELO lawsuit.  MSA § VIII.A, C.  The mediation process is governed by Section VIII.E, which states that "the Claims Administrator will reimburse the mediator for the reasonable fees and expenses incurred by the mediator," and that "[s]uch fees and expenses shall be Settlement Costs."  MSA § VIII.E.7.

[16] *See, e.g.*, *S. Coast Corp. v. Sinclair Ref. Co.*, 181 F.2d 960, 961 (5th Cir. 1950) ("The expression in a contract of one or more things of a class implies the exclusion of all not expressed . . . ."); *United States v. Okoye*, 731 F.3d 46, 49 (1st Cir. 2013) (*expressio unius est exclusio alterius* "instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded" (internal quotation marks omitted)).

[17] *See, e.g.*, MSA § II.P ("Claims Administrator shall mean that person or entity selected by the Medical Benefits Class Counsel and BP and approved by the Court who shall implement and administer this [MSA] . . . ."); MSA § XXI.A.1 ("The Claims Administrator shall faithfully implement and administer the [MSA] according to its terms and procedures."); MSA § XXI.A.8 ("Upon appointment by the Court, the Claims Administrator shall faithfully implement and administer this [MSA] according to its terms . . . .").

the context of actions undertaken or costs incurred by individual Class Members.[18]  This fact is confirmed by the final sentence of the definition, which provides that "BP shall have the right to challenge before the Court the reasonableness of any compensation, costs, and/or expenses sought by the *Notice Agent*, the *Claims Administrator*, the *trustee* and/or the *directed trustee* of the Medical Settlement Trust, the *Guardian Ad Litem*, or the *mediators*."[19]  There is no mention of costs sought or incurred by individual Class Members, further confirming that such costs are not included within the definition.

Plaintiff's reading of the Agreement not only contradicts its plain meaning, it also violates three other fundamental tenets of contract interpretation.  *First*, subsection (viii) makes no mention of the costs of Class Members pursuing their claims through the BELO.  The Court should not read additional items of costs into subsection (viii) when the definition fails to mention these items at all—particularly where subsection (v) expressly provides that only the cost of mediators associated with the BELO process is a "Settlement Cost."[20]

*Second*, subsections (i) through (vii) of the definition become superfluous under Plaintiff's strained reading because subsection (viii) would render them unnecessary.[21]  In effect,

---

[18]  *See, e.g.,* MSA §§ II.P; II.II; II.TT; II.AAA; II.GGG; II.MMM; II.NNN; II.RRR; II.YYY; II.VVVV; VII.C.5; IX.B; IX.D.5–7; IX.F; IX.G; XI.B; XI.D; XVIII.A.13; XX.A; XXI.A.1; XXI.A.8; XXI.K.3(a)(viii); XXII.P; XXII.S; XXVI.A; XXVI.B; XXVI.E; XXVII; XXVIII.

[19]  MSA § II.QQQQ(viii) (emphases added).

[20]  *United States v. Croft-Mullins Elec. Co.*, 333 F.2d 772, 776 (5th Cir. 1964) ("It is elementary that one cannot imply a term or promise in a contract which is inconsistent with an express term of the contract itself.").

[21]  *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004) ("A basic principle of contract interpretation in admiralty law is to interpret . . . all the terms in a contract without rendering any of them meaningless or superfluous.").  BP's interpretation is consistent with this doctrine.  Under BP's reading, subsection (viii) covers additional costs which may be incurred by the Claims Administrator or other entities implementing or administering the MSA even if those costs do not fall squarely within subsections (iv)

Plaintiff argues that "Settlement Costs" include the items specifically enumerated in subsections (i) through (vii) plus everything else that is *not* enumerated in those subsections. This interpretation of the MSA is hopelessly overbroad and would impose an obligation on BP to pay for new types of costs (costs arising from a Class Member's pursuit of "a new action, separate from the class action")[22] that are nowhere mentioned in the MSA.

*Third*, Plaintiff's proposed reading of the definition violates the maxim of *ejusdem generis* by giving subsection (viii) a broader meaning than the specific costs expressly delineated in subsections (i) through (vii). A proper reading would construe subsection (viii) to embrace only costs similar in nature to those specifically enumerated.[23] The costs of pursuing a new action, separate from the class action, are entirely different in nature than the costs identified in the definition's first seven subsections.

---

through (vii), as long as they are similar in nature to covered costs. This interpretation gives meaning to subsection (viii) while not erasing the careful distinctions and exclusions established by the previous seven subsections.

[22] Jury Trial Order at 3.

[23] *See Bloom v. Hearst Entm't, Inc.*, 33 F.3d 518, 524 (5th Cir. 1994) ("The rule of *ejusdem generis* applies where specific recitals in a contract are either preceded or followed by an omnibus clause that retains all rights not mentioned. In such circumstance, courts often apply the rule to limit the actual rights reserved to those specifically mentioned, or rights intimately analogous to those mentioned."). Plaintiff's reliance on the Fifth Circuit's decision in *Nero v. Industrial Molding Corp.*, 167 F.3d 921 (5th Cir. 1999), is misplaced. *See* Pl.'s Br. in Support of the MSA XXVII Mot., Rec. Doc. 15596-1, at 14–15 (citing *Nero*) ("Pl.'s Br."). In *Nero*, the Fifth Circuit considered whether the Family Medical Leave Act's remedies, which included damages for "other compensation denied or lost," would permit the plaintiff to recover out-of-pocket expenses. Applying analogous principles of statutory interpretation, the Fifth Circuit stressed that a court should "avoid ascribing to one word a meaning so broad that is inconsistent with its accompanying words," and held that the phrase "other compensation" did not stretch so far as to include out-of-pocket expenses. 167 F.3d at 930 (internal quotation marks omitted). The same logic applies here. Reading subsection (viii) as broadly as Plaintiff urges would be inconsistent with the narrowly worded subsections that precede it.

Interpreting "Settlement Costs" to require BP to pay BELO plaintiffs' litigation costs would also contravene the American Rule that each party in litigation bears its own costs (including expert fees) absent a statute or enforceable contract providing otherwise.[24] The American Rule "is deeply rooted in our history,"[25] and it serves a valuable purpose. Abandoning the rule here would invite a flood of potentially meritless lawsuits that would not otherwise have been brought. The resulting costs could be astronomical. Class Counsel has estimated there will be "thousands" of BELO lawsuits, and two thousand suits—even at the low end of Plaintiff's estimated expert costs ($320,000 per case)—would consume more than $600 million.[26] It defies belief that a contract could create such an immense financial obligation without expressly saying so, and courts avoid interpretations that would create such an unreasonable or absurd result.[27]

---

[24] *See Galveston Cnty. Navigation Dist. No. 1 v. Hopson Towing Co.*, 92 F.3d 353, 356 (5th Cir. 1996); *Kansas v. Colorado*, 556 U.S. 98, 102–03 (2009) (the American Rule applies not only to attorneys' fees but also other costs, including expert witness fees). The MSA and BELO lawsuits are governed by maritime law, which follows the American Rule. *See* MSA § XXX.P; Jury Trial Order at 3 (noting "maritime law may provide the substantive law for a BELO claim"); *Galveston Cnty.*, 92 F.3d at 356 (maritime law follows the American Rule). Plaintiff appears to concede that the applicable statutes (28 U.S.C. §§ 1821 & 1920) provide for only modest costs awards to the prevailing party. *See* Rec. Doc. 15596-4, at 15 ("It's my appreciation of federal law that there's no way to tax those expert costs in a case like this . . . .").

[25] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 271 (1975).

[26] Rec. Doc. 13303-1, at 7. Other counsel have estimated tens of thousands of BELO cases, *see* Rec. Doc. 12862-3, at 3, which would push the number far higher.

[27] *Chembulk Trading LLC*, 393 F.3d at 555 n.6 (a contract "can be given only one reasonable interpretation" when "its language as a whole is clear, explicit, and leads to no absurd consequences").

### B. "Settlement Costs" Do Not Include the Costs of Submitting an SPC Claim.

Plaintiff also argues that BP should be ordered to pay the costs of submitting his SPC Proof of Claim Form ("POCF"), including the costs of obtaining supporting documentation.[28] The MSA explicitly delineates which costs associated with SPC claims are "Settlement Costs." Subsection (i) of the "Settlement Costs" definition expressly includes "all compensation for Specified Physical Conditions as provided in Section VI and Exhibit 8[.]"[29] MSA Section VI addresses compensation for SPCs, and Exhibit 8 (the SPC Matrix) identifies the available compensation for different SPC categories. Thus, subsection (i) includes only "*compensation*" for SPC conditions—*i.e.*, the award determined by the Claims Administrator. Other types of costs are *not* expressly included, and are therefore excluded.[30]

Plaintiff again wrongly relies on subsection (viii) of the "Settlement Costs" definition. Subsection (viii) makes no mention of the costs of submitting SPC claims. It would be contrary to basic contract interpretation principles to read additional items of costs into subsection (viii) when the definition fails to mention these items at all, and when subsection (i) explicitly provides that only "compensation" associated with an SPC claim is a "Settlement Cost."[31] This Court

---

[28] Pl.'s Mot. at 8. Plaintiff also seeks costs associated with responding to Requests for Additional Information ("RAI") and Notices of Defects, procedures that allow the Claims Administrator to avoid denying a deficient claim by offering the Class Member the chance to remedy deficiencies. *See* Pl.'s Mot. at 8, MSA § V.E. The Claims Administrator's November 6, 2015 Status Report has noted high defect rates, with 78% of 2014 claims and 40% of 2015 claims receiving either a RAI or Notice of Defect. Rec. Doc. 15536, at 3. Class Members should not be entitled to recover the costs of remedying their own defective POCF submissions.

[29] MSA § II.QQQQ(i).

[30] *See, e.g.*, *S. Coast Corp.*, 181 F.2d at 961 (*expressio unius*).

[31] *Croft-Mullins Elec. Co.*, 333 F.2d at 776 ("It is elementary that one cannot imply a term or promise in a contract which is inconsistent with an express term of the contract itself.").

9

should read subsection (viii) consistently with the preceding seven subsections and in a manner that avoids rendering those subsections superfluous or meaningless.[32] Plaintiff's strained attempt to shoehorn all of his SPC costs into subsection (viii) fails on all counts.

Plaintiff also ignores the MSA provision specifically addressing certain SPC costs. Section VI authorizes the Claims Administrator to deduct certain POCF costs incurred by Class Members or, for unrepresented parties, to waive these costs upon a showing of financial hardship.[33] This provision would be superfluous if BP, rather than the Class Member, was responsible for payment of those costs in all cases. Because "[a] basic principle of contract interpretation in admiralty law is to interpret . . . all the terms in a contract without rendering any of them meaningless or superfluous,"[34] Plaintiff's interpretation cannot be correct.[35]

### C. Construing the MSA To Require Payment of BELO Plaintiffs' Individual Expert Fees Would Constitute a Material Modification of the MSA.

What Plaintiff actually seeks is the adoption of new provisions modifying the MSA that were never agreed to by BP or approved by the Court. This becomes apparent when reviewing the specific procedures Plaintiff now seeks to have the Court enact to govern the reimbursement

---

[32] *S. Coast Corp.*, 181 F.2d at 961 (*expressio unius*); *Chembulk Trading LLC*, 393 F.3d at 555 (rule against superfluity); *Bloom*, 33 F.3d at 524 (*ejusdem generis*).

[33] MSA § VI.D.2.

[34] *Chembulk Trading LLC*, 393 F.3d at 555.

[35] Although immaterial to the Motion, Plaintiff submits outdated and misleading information concerning the progress of SPC claims based on the Claims Administrator's August 2015 status report. Pl.'s Br. at 6 n.24. The Claims Administrator's November 6, 2015 Status Report to the Court reflects that of the claims that have reached final determination, 32% of the 2014 claims and 50% of the 2015 claims have been approved for SPC compensation. Rec. Doc. 15536, at 3. Since the inception of the MSA, the Claims Administrator has approved more than $8 million in SPC compensation. *Id.* at 19.

10

of his expert costs. Plaintiff's proposal essentially would require drafting an entirely new section of the MSA:

> For expert costs and compensation to be *reasonably associated with* the implementation and administration of the MSA, the "issue to be litigated" requiring experts must be contested by BELO Defendants AND the expert must have been either:
>
>   a. Vetted by GRG in a process designed by BP and the PSC; or
>   b. If a Class Member seeks to introduce an un-vetted expert, then:
>      i. Upon the expert surviving all necessary *Daubert* hearing challenges;
>      ii. The aforementioned expert related costs may only be paid if the Class Member prevails through to verdict with at a minimum of $0.01 in compensatory damages.[36]

These procedures were never discussed or agreed to by the parties and are a wholesale invention by Plaintiff.

Section VIII of the MSA contains detailed provisions governing the BELO process, including provisions governing pre-filing procedures and mediation; where suits must be filed; which claims and damages can be pursued; which defenses may be asserted; and which issues must be litigated.[37] Plaintiff's proposal would require adding new provisions and would impose significant new costs on BP that were never agreed to or approved by the Court, and would materially modify the MSA.[38]

## II. PLAINTIFF'S RULE 23 ARGUMENTS ARE UNTIMELY AND UNAVAILING.

Plaintiff suggests that "the heightened cost requirements for LMPCs . . . need to be addressed" by this Court in order for the MSA to satisfy Rule 23's superiority and predominance

---

[36] Pl.'s Mot. at 8–9; *see also* Pl.'s Br. at 22–23 ("Mr. Wilson suggests that expert fees require a vetting process . . . .").

[37] MSA § VIII.G.1(c), VIII.G.1(d), VIII.G.2(a)–(c), VIII.G.2(d), VIII.G.3.

[38] Under Section XIV.B of the MSA, BP may elect to terminate the MSA "if the Court has ordered a material modification of any of the terms of this Medical Settlement Agreement."

requirements.[39] These arguments boil down to a *de facto* objection to the MSA—one that comes nearly three years after its approval.

*First*, the objection is untimely and should not be considered. By failing to raise these arguments prior to approval, Plaintiff "waive[d] and forfeit[ed]" all objections and is "bound by the terms of the Agreement."[40] The proper way to raise these arguments would have been to object in 2012, or failing that, to opt out of the settlement.

*Second*, to the extent that Plaintiff requests a modification to class certification or asks the Court to refashion the MSA to improve Plaintiff's position, Rule 23 bars that request. The Court can only "alter[]" or "amend[]" an order granting or denying class certification "*before final judgment*,"[41] which this Court entered when it approved the MSA on January 11, 2013.[42] In any event, a "court cannot modify the bargained-for terms of [a class-action] settlement agreement."[43]

*Third*, the MSA satisfies Rule 23's superiority requirement. Plaintiff points to the unavailability of punitive damages as evidence of inferiority, but this Court already considered similar objections and found that the MSA's substantial benefits outweighed the speculative possibility of punitive damages in an individual case.[44] The MSA's comprehensive scheme is

---

[39] Pl.'s Br. at 7–8.

[40] Preliminary Approval Order at 26.

[41] Fed. R. Civ. P. 23(c)(1)(C) (emphasis added); *see also McNamara v. Felderhof*, 410 F.3d 277, 280–81 & nn. 7 & 8 (5th Cir. 2005) (same).

[42] Final Approval Order at 90–91.

[43] *Klier*, 658 F.3d at 475.

[44] Final Approval Order at 79 ("Given that any award of punitive damages is inherently speculative and discretionary, courts regularly approve settlements that offer no or little compensation representing the risk of a punitive damages award."). The Class's exchange of

undoubtedly superior to litigation of individual claims.  The SPC Matrix, which has resulted in millions of dollars in awards, is advantageous to Class Members because it provides immediate compensation without requiring any litigation.[45]  Plaintiff himself is currently pursuing an SPC claim.  The PMCP provides free medical visits to Class Members for 21 years.  The GRHOP improves healthcare for Gulf Coast Communities.

The BELO process covers all physical conditions first diagnosed after April 16, 2012, and offers significant advantages and cost reductions to Class Members not available in ordinary lawsuits, such as stipulations as to certain elements of proof that plaintiffs would otherwise have to prove.[46]  Because LMPCs require a diagnosis before a BELO lawsuit is filed, a plaintiff already has a medical provider, who can testify to the fact of diagnosis.  The BELO Cases Initial Proceedings Case Management Order further facilitates this process, providing for venue transfer to ensure that important witnesses will be available for trial.[47]  These efficiencies render the BELO process superior to individual litigation.

Indeed, Class Counsel argued in favor of the BELO's superiority even while recognizing that the expense of pursuing BELO claims would be borne by individual BELO plaintiffs.  With regard to limiting the issues to be litigated in a BELO lawsuit, Class Counsel argued that these "BELO conditions are thus extremely beneficial to class members because they ease the burden

---

punitive damages for key stipulations was reasonable since maritime law generally limits such damages to the amount of a plaintiff's compensatory damages.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513 (2008).  Finally, if Plaintiff wished to pursue damages unavailable under the MSA, he had the option to opt out.

[45]   *See* Final Approval Order at 57–59.

[46]   MSA § VIII.G.3(b)(ii)–(iii).

[47]   BP has consistently submitted venue choices based on the location of witnesses such as plaintiffs' medical providers.  To date, BP has reached agreement with all BELO plaintiffs as to the choice of venue.

and expense of future litigation, should it become necessary."[48]  The MSA "preserves members' rights to pursue compensation for Later-Manifested Physical Conditions, while relieving the financial burden and time to litigate certain liability elements and defenses."[49]  During the Final Fairness Hearing, Class Counsel acknowledged that BELO plaintiffs were foregoing the right to seek punitive damages in exchange for reduced litigation expenses, further confirming that BELO plaintiffs would bear their own litigation expenses.  Class Counsel stated that "the [BELO] provisions would make [litigation of LMPC claims] so more [*sic*] streamlined for a plaintiff, and the burden of proof and the expense of that litigation would be greatly reduced.  So the trade-off of punitive damages there, to me, really inures to the benefit of the claimant."[50]

## CONCLUSION

The Court should hold the parties to the plain language of the MSA and not create a wholly new financial obligation for BP that was not approved by the Court, agreed to by BP, or even mentioned in the MSA.  For the foregoing reasons, Plaintiff's Motion should be denied.

---

[48] Pls.' Reply Br. in Response to Objections and in Further Support of Final Approval of Medical Benefits Class Action Settlement, Rec. Doc. 7728, at 21.

[49] *Id.* at 22.

[50] Tr. of Nov. 8, 2012 Final Fairness Hearing, Rec. Doc. 7892, at 255.

December 16, 2015

Respectfully submitted,

   */s/ J. Tracey Rogers*
J. Tracey Rogers
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX 77079
Telephone: (281) 366-2000
Telefax: (312) 862-2200

   */s/ Kevin M. Hodges*
Kevin M. Hodges
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Telefax: (202) 434-5029

   */s/ Catherine Pyune McEldowney*
Catherine Pyune McEldowney
MARON MARVEL BRADLEY & ANDERSON LLC
1201 North Market Street, Suite 900
Wilmington, DE 19801
Telephone: (302) 425-5177
Telefax: (302) 425-0180

   */s/ Don K. Haycraft*
Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 16th day of December, 2015.

/s/ Don K. Haycraft
Don K. Haycraft