IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL 2179 |
| | SECTION "J" |
| **Applies to:** | **DISTRICT JUDGE BARBIER** |
| *Case No: 12-968 BELO* | **MAG. JUDGE WILKINSON** |
| | **MAG. JUDGE SHUSHAN** |
| **LEROY G. WILSON**, | CIVIL ACTION |
| VERSUS | CASE NO.: 1:15-CV-300 |
| **BP EXPLORATION & PRODUCTION, INC. AND BP AMERICA PRODUCTION CO.**, | **DISTRICT JUDGE GRANADE** |
| | **MAG. JUDGE CASSADY** |
| **Applies to:** | |
| *Case No: 12-968 BELO; E.D. La. Case No: 14-2730 (transferred to S.D. Ala.; renumbered as 15-300)* | |

MR. WILSON'S REPLY TO BP'S MEMO IN OPPOSITION

1

Mr. Wilson refutes all of BP's representations and relies on his original brief to speak for itself. BP has yet to contest any single pertinent fact as alleged in Mr. Wilson's brief. First, Mr. Wilson and those similarly situated[1] ("BELO Class Members") are presently stuck with negative value claims. Second, BP has absolutely zero incentive to mediate and as such does not intend to mediate any LMPC conditions for any BELO Class Member resulting in an unnavigable due process roadblock to Compensatory Damages.[2] Third, lawyers have not, and will not, take on these cases due to their present negative value as evidenced by the affidavits of respected Pro Bono legal services attorneys.[3] Fourth, BELO Class Members are essentially denied access to Compensatory Damages through the limited remedies available under the MSA. When all the facts are seen together, this effectively squeezes out all SPC chronic conditions on the SPC Matrix from the MSA so long as the condition meets the LMPC definition. BELO Class Members will be shut out of a Settlement Agreement because this class was certified for settlement purposes with an unforeseeable litigation outcome. This "subclass" of BELO Class Members were never certified for litigation purposes; nonetheless, here is Mr. Wilson, bound by a settlement that requires litigation but offers no affordable due process path to recovery.

BP mentions extraneous facts in its Memo in Opposition ("BP's Memo"). Surprisingly, BP points out that Mr. Wilson "submits outdated and misleading information concerning the progress of SPC claims based on [GRG's] August 2015 status report"[4] instead of the latest November 2015 report. It is true, due to oversight, that Mr. Wilson originally explained that only 3 out of 1,758 (0.171%) approved and payable SPC conditions met the near impossible burden of having a chronic SPC diagnosis. The November 2015 status report paints an even more

---

1   Rec. Doc. 15596-1, at 2 n.4.
2   *See* Pl. Reply Ex. E.
3   *See* Mr. Wilson's Memo. Ex. D.
4   Rec. Doc. 15662, at 11, *citing* Rec. Doc. 15596-1, at 6, n.24.

devastating picture for BP. The same 3 out of 3,447 (0.087%) class members met the post LMPC ruling of "chronic condition" (an almost 50% drop) demonstrating a zero increase, in fact a statistical decrease, in payable SPC chronic conditions.[5] BP claims these figures are immaterial,[6] providing this Court with further evidence of BP's continued callous and reckless disregard for human life five years and eight months after the tragic events of the *Deepwater Horizon Incident*.

Instead of addressing facts and issues squarely, BP attempts to sidestep the issues by "paraphrasing" Mr. Wilson's "arguments" inaccurately, or omitting portions them. For example, "Plaintiff argues that BP agreed to fund countless lawsuits against itself without ever once mentioning this extraordinary obligation in the Agreement."[7] The greatest irony of this MSA to date is BP now arguing intent.[8] What BP intended is irrelevant[9] and what matters is the plain and ordinary meaning of the MSA. Only BP would argue that the word "all" as used in Section IV.E and Section II.QQQQ(viii) is ambiguous or requires itemization or enumeration as exceptions.

As Mr. Wilson repeatedly explained, "all" means "all," not "some," not "many," not "with exception." It means "all" or "every." Mr. Wilson does not believe "[i]t would be contrary to basic contract interpretation principles to read additional items of costs into"[10] the unambiguous phrase "**ALL** other costs" so long as these costs meet the *Settlement Cost Test.* Further, these costs must not have already been otherwise enumerated in Section II.QQQQ.

---

[5] *Compare Status Report from the Deepwater Horizon Medical Benefits Settlement Claims Administrator*, MDL No. 2179, Rec. Doc. 14980, at 20, with *Status Report from the Deepwater Horizon Medical Benefits Settlement Claims Administrator*, MDL No. 2179, Rec. Doc. 15536, at 21. *See Exhibit E* for side-by-side comparisons of various tables.
[6] Rec. Doc.15662, at 11.
[7] *Id.* at 5.
[8] If BP intended to limit the catchall definition of subsection (viii), they would have enumerated these exceptions. Instead, the "carefully-crafted and comprehensive scheme," Rec. Doc. 15662, at 2, to *limit costs* was intentionally not enumerated to provide this Court with the flexibility needed to enforce and administer this massive 400+ page MSA.
[9] *MSA*, §§ XXX.A, .B (demonstrating complete integration so intent is irrelevant).
[10] Rec. Doc. 15662, at 10.

3

BP argues that Mr. Wilson ignores three tenants of contract interpretation.[11] This is untrue as Mr. Wilson addresses each rule raised. Mr. Wilson never misled this Court by saying that BP "ignored" a rule that was clearly raised in BP's memo (a tactic repeatedly employed by BP). As to the first allegedly "ignored tenant," we believe "all" means "all" and not "all but BELO" as BP would have this Court believe.[12] As to the second allegedly "ignored tenant," BP would have this Court believe that subsection (viii) must be ignored all together because subsections (i) through (vii) exist "specifically enumerating" the only possible definitions.[13] BP suggests that this Court render subsection (viii) as meaningless and superfluous. However, Mr. Wilson clearly explains the principle of *noscitur a sociis* and how it applies to give clarity of the types of costs and compensation associated with the Settlement Cost definition.[14] Further, Mr. Wilson explains how the trustee must apply the *Settlement Cost Test* to all OTHER costs and compensation that do not meet the definitions listed in subsection (i) through (vii).[15] The third allegedly "ignored tenant" is also thoroughly explained between Mr. Wilson's explanation of *noscitur a sociis* and the plain and ordinary meaning of the word "and."[16] To construe subsection (viii) as narrowly as BP suggests,[17] would most assuredly lead to the decertification of the class. It is impossible for a class to be certified under a settlement agreement that puts the class in a worse position than the class was prior to the MSA being signed. Certainly, BP's construction merely pays lip service to FRCP 23(b)(3).

---

[11]   *Id.* at 7.
[12]   Rec. Doc. 15596-1 at 14 ("'[A]ll' is not ambiguous"); *id.* at 15 ("'[A]ll' means 'every.'").
[13]   Rec. Doc. 15662, at 7-8.
[14]   Rec. Doc. 15596-1 at 14-15 (explaining the types of costs and compensation this Court should consider when construing the catch-all Section II.QQQQ(viii)).
[15]   *Id.* at 12-13.
[16]   *Id.* at 12-13 ("The word 'and' in this context means 'and other things' or 'and others or more of the same or similar kind.'").
[17]   Rec. Doc. 15662, at 8 n.23.

In its memo, BP relies heavily on this Court's statements that "[t]he BELO lawsuit is essentially a new action, separate from the class action."[18] The "class action" lawsuit and all Released Claims were dismissed with prejudice on January 11, 2013, with this Court retaining jurisdiction as explained in *Kokkonen* and the MSA.[19] Therefore, every SPC and LMPC claim is "essentially a new action, separate from the class action." To the extent that jurisdiction over these claims was "reserved" by this Court for administration by GRG (if an SPC or pre-filing LMPC) or this Court (if a post-filing LMPC), each and every claim is must be a new action. As such, BP improperly points to this Court's words under some "theory" in the hopes of avoiding responsibility under the MSA.[20]

Other than BP, no one envisioned this outcome. Mr. Wilson wonders when BP's campaign against the truth will reach its destination, as class members remain awe struck by the devastation created not only by the oil spill, but also by this secondary campaign against injured class members left without a viable remedy.

BP misrepresents Mr. Wilson's position on matters of the law as well. For example, BP alleges that Mr. Wilson contravenes the *American Rule* and cites to *Galveston Cnty. Navigation Dist. No. 1 v. Hopson Towing Co.*[21] This is just untrue. Mr. Wilson cited to *Crawford Fitting Co. v. J.T. Gibbons, Inc.*,[22] which quite clearly addresses the *American Rule*'s "enforceable contract" exception. BP also alleges that Mr. Wilson's subject matter jurisdiction discussion on the scope of this Court's authority to interpret the MSA is an untimely objection. Mr. Wilson does not

---

[18] Rec. Doc. 14479, at 3.
[19] *Final Approval Order*, Rec. Doc. 8218, ¶¶ 12-13 (Jan. 11, 2013); *see* Rec. Doc. 15596-1 at 3-9 (explaining limitations of jurisdictional interpretation of the MSA).
[20] *See Wilson Memo*, Rec. Doc. 15596-1, at 23-25.
[21] 92 F.3d 353, 356 (5th Cir. 1996) ("[A]bsent statute or enforceable contract, litigants pay their own attorneys' fees."); *Kansas v. Colorado*, 556 U.S. 98, 102-03 (2009).
[22] 482 U.S. 437 (1987); Rec. Doc. 15596-1, at 15 n.80-82 and accompanying text.

5

object to the MSA, he merely points out that the interpretive boundaries of this Court bar an interpretation that puts BELO Class Members in an inferior position to their pre-MSA position.[23]

Mr. Wilson feels a deeper discussion needs to be had about the elephant in the room. If BP was forthcoming with its intention to dishonor its pre-MSA approval position that LMPC were reserved for conditions that manifested later in time as opposed to conditions that manifested contemporaneously with the injury (the most common injuries) there could have been an intellectual discussion from which this Court would have benefitted. Instead, those attorneys responsible for negotiating those terms and arguing before the Court have been whisked away, replaced by another group of attorneys that had nothing to do with the negotiations and the MSA.

This Court properly identified this problem when it said that neither it nor the PSC envisioned this outcome. Mr. Wilson suggests that neither Class Representatives nor any class members as noticed, including Mr. Wilson himself, could have known about this outcome. The reason being that BP has repeatedly devised plans, post-settlement approval, to deceive everyone. The duties of candor owed to this Court have been systematically ignored at the expense of due process rights. Mr. Wilson asks this Court to put a stop to it and help BELO Class Members find the remedy this Court envisioned.[24] Mr. Wilson trusts this Court will interpret the MSA so that BELO Class Members like himself will have access to a real remedy.

Filed this 23rd day of December, 2015.

Respectfully Submitted by,

Ramon Guillen /s/_____

---

[23] BP claims millions have been spent on class members. But well over 90% of all funding has gone to uninjured persons other than class members. BP points to the GRHOP as providing a benefit to Class Members. Only individuals that can afford these state of the art medical services can actually derive this benefit. As a super majority of injured class members are uninsured, it is clear that the only beneficiaries of these funds are not actual Class Members.

[24] *See id.* at 25 nn.116-117 and accompanying text.

Co-Counsel for LeRoy Wilson
**Ramon Guillen, Jr., Esq.**
Fla. Bar. No. 99789
rguillen@downslawgroup.com along with

**Craig T. Downs**
Fla. Bar. No. 801089
cdowns@downslawgroup.com of the
*Downs Law Group*
3250 Mary Street, Suite 307
Miami, FL 33133
Telephone: (305) 444-8226
Facsimile: (305) 444-6773 and

**David D. Kervin, Jr.**
La. Bar. No. 28374
david@kervinlaw.com of the
Law Office of David D. Kervin, Jr., LLC
201 St. Charles Avenue, Suite 2500
New Orleans, LA 70170
Telephone: (504) 599-5906
Facsimile: (504) 754-7514

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing *MSA XXVII Motion* and all attached documents including:

- Leroy Wilson's Reply to BP's Motion in Opposition; and
- Mr. Wilson's Reply Exhibit E;

has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of December, 2015

Ramon Guillen /s/_____
**Ramon Guillen, Jr., Esq.**
Fla. Bar. No. 99789
rguillen@downslawgroup.com
of the *Downs Law Group*
3250 Mary Street, Suite 307
Miami, FL 33133
Telephone: (305) 444-8226
Facsimile: (305) 444-6773