<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3      ****************************************************************

 4      IN RE: OIL SPILL BY THE
        OIL RIG DEEPWATER HORIZON
 5      IN THE GULF OF MEXICO ON
        APRIL 20, 2010
 6
                                     CIVIL ACTION NO. 10-MD-2179 "J"
 7                                   NEW ORLEANS, LOUISIANA
                                     WEDNESDAY, DECEMBER 16, 2015, 1:30 P.M.
 8

 9      THIS DOCUMENT RELATES TO:

10      13-706, 13-810, 13-1143,
        13-1185, 13-1222, 13-1386
11      AND 13-2006

12      ****************************************************************

13

14         TRANSCRIPT OF OPA TEST CASES STATUS CONFERENCE PROCEEDINGS
                  HEARD BEFORE THE HONORABLE SALLY SHUSHAN
15                    UNITED STATES MAGISTRATE JUDGE

16

17      APPEARANCES:

18

19      FOR THE PLAINTIFFS:     HERMAN HERMAN & KATZ
                                BY:  STEPHEN J. HERMAN, ESQUIRE
20                              820 O'KEEFE AVENUE
                                NEW ORLEANS, LA  70113
21

22                              WILLIAMS LAW GROUP
23                              BY:  CONRAD S. P. WILLIAMS, ESQUIRE
                                435 CORPORATE DRIVE, SUITE 101
24                              HOUMA, LA  70360

25
</pre>

01:18:08

*OFFICIAL TRANSCRIPT*

```
 1   APPEARANCES CONTINUED:

 2

 3
                            LEWIS, KULLMAN, STERBCOW & ABRAMSON
 4                          BY:  PAUL M. STERBCOW, ESQUIRE
                            PAN AMERICAN LIFE BUILDING
 5                          601 POYDRAS STREET, SUITE 2615
                            NEW ORLEANS, LA  70130
 6

 7

 8   FOR BP AMERICA INC.,
     BP AMERICA PRODUCTION
 9   COMPANY, BP COMPANY
     NORTH AMERICA INC.,
10   BP CORPORATION NORTH
     AMERICA INC.,
11   BP EXPLORATION &
     PRODUCTION INC.,
12   BP HOLDINGS NORTH
     AMERICA LIMITED,
13   BP PRODUCTS NORTH
     AMERICA INC.:         KIRKLAND & ELLIS
14                         BY:  J. ANDREW LANGAN, ESQUIRE
                                MATTHEW T. REGAN, ESQUIRE
15                         300 N. LASALLE
                           CHICAGO, IL 60654
16

17
                           KIRKLAND & ELLIS
18                         BY:  CHRISTOPHER W. KEEGAN, ESQUIRE
                           555 CALIFORNIA STREET
19                         SAN FRANCISCO, CA 94104

20

21   OFFICIAL COURT REPORTER:    CATHY PEPPER, CRR, RMR, CCR
                                 CERTIFIED REALTIME REPORTER
22                               500 POYDRAS STREET, ROOM HB-275
                                 NEW ORLEANS, LA  70130
23                               (504) 589-7779
                                 Cathy_Pepper@laed.uscourts.gov
24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
25   PRODUCED BY COMPUTER.
```

*OFFICIAL TRANSCRIPT*

1                              **I N D E X**

2

3    <u>AGENDA ITEMS</u>                                      <u>PAGE</u>

4

5    BISSO AND BP........................................   4

6    CLAWBACK LETTER.....................................   4

7    DEPOSITION SCHEDULE OF THE BISSO REPRESENTATIVE......   5

8    WADLEIGH............................................   5

9    BLAKE...............................................  19

10   FEBRUARY FOR BP'S DEPOSITIONS.......................  21

11   SCHEDULING ORDER....................................  21

12   EXPERT DAMAGE REPORT................................  22

13   CROSS MOTIONS FOR SUMMARY JUDGMENT..................  24

14   SUPPLEMENTAL INTERROGATORIES ON FRIDAY, JANUARY 8TH,

15   2016................................................  32

16   NEXT CONFERENCE ON WEDNESDAY, DECEMBER 23, 2015, AT

17   10:00 A.M...........................................  33

18

19

20

21

22

23

24

25

**P-R-O-C-E-E-D-I-N-G-S**

WEDNESDAY, DECEMBER 16, 2015

A F T E R N O O N   S E S S I O N

(IN CHAMBERS VIA TELEPHONE)


THE COURT:  Hi, everybody.  How are you doing?

VOICES:  Good afternoon, Judge.

THE COURT:  Good afternoon.

All right.  Well, let's roll.  Let's talk about Bisso and BP.  I guess my question is do you have any comments on the materials that were provided to you before last week's conference?

MR. KEEGAN:  Your Honor, this is Chris Keegan.  At this point we're relatively comfortable with the material.  We may reach out to Paul on one or two small items on the interrogatories, but we're not anticipating any real substantive disputes that we can't get squared away.  We'll do that early next week at the latest.

THE COURT:  Good.

MR. KEEGAN:  Then additionally, on the clawback letter, there was one document we wanted to just double check was supposed to be on the clawback, and I sent that to Paul earlier today.  I told him we would be happy to talk with him about it once he gets a chance to look at it.

13:32:55  1          THE COURT:  Lovely.  Okay.  That's great.  Best report

13:32:58  2     so far; wouldn't you agree, Paul?

13:33:03  3          MR. STERBCOW:  With that statement, I would absolutely

13:33:05  4     agree.  That's the best report so far.

13:33:07  5          THE COURT:  All right.  Well, that's good.

13:33:08  6              How are we coming on the deposition schedule of

13:33:18  7     the Bisso representative?

13:33:20  8          MR. KEEGAN:  Your Honor, Chris Keegan for BP again.  A

13:33:23  9     similar report.  Paul had sent us a list of dates for nearly

13:33:26 10     all of the nine witnesses that we agreed upon.  We've got a lot

13:33:30 11     of dates to respond back to him on, and I plan on getting him

13:33:33 12     something today or early tomorrow morning to get those locked

13:33:36 13     down and on the calendar.

13:33:38 14          THE COURT:  Thank you.

13:33:40 15              All right.  Let's move on to Wadleigh.

13:33:44 16     Steve Herman sent out an e-mail on the 15th detailing what was

13:33:52 17     up there.  Does BP want to comment on that update?

13:34:01 18          MR. KEEGAN:  Your Honor, I think we do.  As I read the

13:34:05 19     e-mail from Steve yesterday, as for timing of supplementing the

13:34:11 20     interrogatories, it looks like it's not entirely clear when

13:34:17 21     that would happen.  It looks like maybe some supplement on

13:34:20 22     January 6th or around that time and then an additional

13:34:24 23     supplement at the end of January.

13:34:28 24              I think at a certain point we would like to see

13:34:30 25     the written discovery responses with a date certain that we're

**OFFICIAL TRANSCRIPT**

13:34:33  1    going to get them, and I don't think that it's necessarily

13:34:40  2    tied -- you know, answering interrogatories shouldn't

13:34:42  3    necessarily be tied a motion to dismiss briefing or their

13:34:46  4    expert report.

13:34:47  5           What we're looking for in these interrogatories

13:34:50  6    are the facts underlying the claims that Wadleigh has been

13:34:53  7    asserting against BP for years now after their presentment and

13:34:57  8    for quite a while in this OPA test case proceeding.

13:35:01  9           THE COURT:  Okay.  Steve, do you want to comment?

13:35:03 10           MR. HERMAN:  Sure.  My understanding, and I'm looking

13:35:07 11    back to something that was sent awhile ago and references a

13:35:12 12    different part of different interrogatories, was that they were

13:35:15 13    saying you shouldn't be able to just simply say that there were

13:35:19 14    moratoria after other oil incidents while OPA was being

13:35:26 15    considered by Congress other otherwise.  You should identify

13:35:29 16    those specific incidents and those specific moratoria.

13:35:34 17           I don't know what BP is going to file today, but

13:35:37 18    my strong suspicion is that when we respond to that motion to

13:35:44 19    dismiss on January 6th, we're going to outline, in response to

13:35:50 20    that, all of the moratoria and incidents, at least that we're

13:35:54 21    aware of, and they'll have their information.  We can -- I can,

13:36:01 22    you know, send them an e-mail, or we can formally supplement

13:36:05 23    the interrogatories, but they'll have the information.

13:36:07 24           As to the other questions, there have been

13:36:11 25    several questions that have been posed to us by e-mail.  There

**OFFICIAL TRANSCRIPT**

13:36:16 1   were some questions that were posed to us in -- you know, a

13:36:19 2   long time ago before we decided to focus on Bisso, with respect

13:36:23 3   to our interrogatories, about specifics relating to the lost

13:36:28 4   profits.  Some of that information we can get from our clients,

13:36:32 5   and I intend to provide it to the other side informally via

13:36:39 6   e-mail as soon as I get it.

13:36:42 7           Hopefully I'll have something going out to them

13:36:45 8   later today with the documents that they also requested that we

13:36:48 9   were able to get from the client.  But it just seems kind of

13:36:52 10  silly to spend the time to supplement interrogatories right now

13:36:56 11  or over the next couple weeks with some very general

13:36:59 12  information that we'll only have to revise and supplement,

13:37:05 13  amend again three weeks later when we get Asher's report.

13:37:09 14          So it seems to me to make sense to give them the

13:37:12 15  information if and as we get it on an informal basis, so

13:37:16 16  they'll know to the extent we can give it to them, and then

13:37:19 17  just formally supplement the interrogatories hopefully only one

13:37:24 18  last time so that they have one comprehensive, formal amendment

13:37:28 19  and supplement that hopefully won't have to be further amended

13:37:31 20  or supplemented.  But we'll do whatever the Court wants.  If

13:37:35 21  they want to piecemeal it, then I guess we can keep providing

13:37:39 22  additional supplements.

13:37:40 23          MR. REGAN:  Your Honor, this is Matt.  Can I speak to

13:37:43 24  this for a second?

13:37:43 25          THE COURT:  Sure.

**OFFICIAL TRANSCRIPT**

13:37:45  1      MR. REGAN:  These interrogatories have been pending for
13:37:47  2  more than a year, and we just want them to be answered.  We
13:37:54  3  want the factual answer that's in the hands of the client, and
13:37:57  4  we want that answer to be verified.  We want that to be
13:38:01  5  answered in the way that BP answered interrogatories on a
13:38:05  6  timely basis for years.
13:38:07  7      I don't mean to be short on this, but at a
13:38:12  8  certain point, it's been a year of waiting for information, and
13:38:16  9  I'm just a little bit at the end of the road of saying, "It
13:38:20 10  will be coming."
13:38:21 11      We need to have the answers to this if we're
13:38:25 12  going to have any hope of complying with the schedule that
13:38:28 13  we're all endeavoring to comply with.  So at some point if the
13:38:32 14  answer is the client does not know, then let's have that
13:38:37 15  answer, let's have it verified, and then we can deal it in
13:38:41 16  expert discovery.
13:38:42 17      The challenge of just continuing to, well, this
13:38:44 18  will be answered later, this will be answered next month, this
13:38:47 19  will be answered next week when we do something else, we have
13:38:52 20  been hearing this for more than a year.
13:38:54 21      MR. HERMAN:  Matt, I'm sorry to interrupt but my
13:38:56 22  understanding was that we stopped all of that around a year ago
13:39:00 23  to focus on Bisso --
13:39:04 24      MR. REGAN:  (Speaking simultaneously)  The plaintiff
13:39:04 25  stopped it.  The plaintiff stopped it to work on Bisso's

**OFFICIAL TRANSCRIPT**

13:39:07 1   document requests and we have been waiting.  It's just from a
13:39:13 2   standpoint of we -- candidly I say this, whatever the answer is
13:39:19 3   it is, but we continue to be in a posture where the response
13:39:23 4   that we're receiving is it's coming, and I am -- I don't mean
13:39:29 5   to be too short on this, but ultimately there is either an
13:39:34 6   answer or there is not, and the choice of waiting for Bisso to
13:39:38 7   get its documents squared away is fine, but that wasn't our
13:39:43 8   choice.
13:39:44 9            That wasn't BP's choice and now we're under the
13:39:46 10  schedule that has some very strict time deadlines, and the
13:39:50 11  notion that, well, we're just going to keep waiting and
13:39:53 12  waiting, I just need to state -- and maybe this is just a
13:39:55 13  statement for the record and maybe it's the cold medicine
13:39:57 14  talking -- ultimately, I don't know how much longer we can
13:40:01 15  wait.
13:40:02 16            THE COURT:  Well, let's talk about it, guys.  On the
13:40:07 17  factual issues, Matt, if you get verified responses to
13:40:14 18  interrogatories by January 9th on the factual issues, will that
13:40:22 19  be soon enough?
13:40:25 20            MR. REGAN:  I think that will be fine.  Having a firm
13:40:28 21  deadline, I think, is a step in the right direction.
13:40:31 22            THE COURT:  Okay.
13:40:31 23            MR. HERMAN:  We'll certainly do that but aren't these
13:40:33 24  partly contention interrogatories?  Our client has no personal
13:40:38 25  knowledge of what happened when OPA was being considered by the

**OFFICIAL TRANSCRIPT**

13:40:41 1    Legislature or what other moratoria there were.  Our client

13:40:48 2    shouldn't be held to the standard of an expert in terms of

13:40:50 3    creating the damage model.

13:40:52 4           THE COURT:  No, I agree.

13:40:53 5           MR. HERMAN:  We can supplement to the extent we can by

13:40:56 6    January 9th, and if we have to supplement or amend again after

13:41:01 7    Asher completes his report, then we'll do that.

13:41:03 8           THE COURT:  Yeah, I think that's right.  Why don't we

13:41:05 9    go for factual on January 9th, and then the financial by end of

13:41:12 10   January after Asher has completed his report.  Does that make

13:41:17 11   sense?

13:41:20 12          MR. HERMAN:  Yes.

13:41:22 13          THE COURT:  Matt, you should get, on the factual

13:41:26 14   question -- whether they are contention or not contention

13:41:29 15   interrogatories -- by the 9th you will have sworn responses.

13:41:36 16          MR. REGAN:  Thank you, Your Honor.

13:41:39 17          THE COURT:  Okay.  All right.  Now, let's see.  I think

13:41:53 18   that's it.  We're going to move on.  Does anybody have anything

13:41:57 19   else with Wadleigh?

13:42:01 20          MR. KEEGAN:  Your Honor, this is Chris.  I do.  I think

13:42:04 21   we're in agreement on this but I just want to make sure.  We've

13:42:06 22   had some discussions with Steve and the Wadleigh team about

13:42:10 23   documents.  You know, we spent a lot of time with AdvanTeq and

13:42:16 24   Slade and others making sure we had a protocol in place, to get

13:42:20 25   the metadata, to get the problems fixed, and we just want to

**OFFICIAL TRANSCRIPT**

13:42:24 1   confirm that Wadleigh is going to comply with PTO 16 and take

13:42:27 2   those steps that we went through with Bisso to make sure that

13:42:30 3   all of the technical problems are fixed to the extent they can

13:42:34 4   be and all the future productions have the right metadata.

13:42:39 5            THE COURT:  Okay.

13:42:39 6            MR. HERMAN:  I'm not sure that I would say that we've

13:42:42 7   agreed to do that.  What I think that we're saying is that

13:42:49 8   we're in the process of trying to assess exactly where we are

13:42:53 9   and what BP exactly is complaining about and the different

13:42:58 10  merits of that and the different burdens, if any, in terms of

13:43:02 11  providing.

13:43:05 12           It's taken a little while because apparently I'm

13:43:11 13  wrong about the decision was made to focus on Bisso, but from

13:43:15 14  my point of view, maybe I was mistaken, we kind of put Wadleigh

13:43:22 15  and some of these other OPA test case productions to the back

13:43:27 16  burner, so we're trying to go back to figure out where we were

13:43:31 17  at the point when, from our point of view, at least we started

13:43:36 18  focusing on Bisso.

13:43:37 19           We also, as everybody knows, had a change in

13:43:40 20  vendors, and, you know, I think that we have a mea culpa, and

13:43:43 21  we apologize for some of the issues that were created by the

13:43:49 22  previous vendor, but as a practical matter, now the new vendor

13:43:53 23  and/or we have to figure out where we are.

13:43:56 24           I'm trying to figure out, and I have some

13:44:01 25  questions pending to BP and I have some questions pending for

13:44:04  1   my own team in AdvanTeq, what is, to the best that we can

13:44:10  2   figure it out, the actual fix and what is the time, money, and

13:44:14  3   delay in doing that?  Certainly there is no reason to fight

13:44:18  4   about things that we don't need to fight about.  If it's not

13:44:22  5   going to be a time, money, or delay, then I think we'll just go

13:44:28  6   ahead and provide, and we've agreed to do that at least in one

13:44:31  7   respect.

13:44:31  8        But having said that, as a general matter, and to

13:44:36  9   the extent it may create burdens or delays, I think there are

13:44:43 10   several issues that we've raised with BP, some of which the

13:44:48 11   Court may agree with, some of which may not, the first thing

13:44:54 12   is, and maybe this is just bad communication -- maybe it's our

13:44:58 13   fault, maybe it's their fault, maybe a combination of both --

13:45:01 14   but least from our perspective there was a little bit of a

13:45:05 15   moving target because we thought that when things broke off we

13:45:10 16   were effectively chasing down around 391 orphans.  We did that.

13:45:18 17   Then BP complained about things that they had previously

13:45:23 18   complained about that we thought weren't issues any more;

13:45:27 19   apparently now they may be.

13:45:28 20        Some of those complaints about missing metadata,

13:45:31 21   apparently, to the best of our abilities to figure out what

13:45:36 22   they are complaining about, include complaints about 14,000

13:45:40 23   documents that were scanned images from paper so they don't

13:45:43 24   have metadata.

13:45:45 25        Of the 9,000 that we can tell -- we think there

**OFFICIAL TRANSCRIPT**

13:45:49 1   is about 9,000 electronic files from -- from volume 2, I'm

13:45:58 2   sorry, from volume 2, I think there were about 9,900 electronic

13:46:02 3   files, and now, as I understand it, BP wants us to reproduce

13:46:11 4   all of those with metadata in different formats or additional

13:46:15 5   formats and even though in 2014 in a letter or an e-mail they

13:46:22 6   said half of these documents that you gave us were irrelevant.

13:46:25 7   Well, if the documents are irrelevant, then clearly the

13:46:29 8   metadata about those documents are irrelevant.

13:46:35 9            I keep asking BP why it needs this information,

13:46:37 10  and what they keep responding is we are entitled just as matter

13:46:42 11  of principal just to what PTO 16 says irrespective of whether

13:46:46 12  that's wasteful or makes sense.

13:46:49 13           My feelings and, you know, subject to being

13:46:53 14  corrected or overruled or whatever, but my feeling is, as we

13:46:58 15  sit here today, whatever happened in the past, whatever the

13:47:02 16  circumstances were, which were extremely different

13:47:06 17  circumstances when PTO 16 was negotiated five years ago,

13:47:10 18  whatever happened in Phase 1, whatever happened with Bisso,

13:47:13 19  whatever the original timetable and plan for these test cases

13:47:17 20  was or were, we now have what would appear to be a clear

13:47:22 21  mandate from the Court, we have a very limited number of issues

13:47:27 22  with a lot of focus and a very short time line, and it seems to

13:47:32 23  me that we would all be better served focusing on the issues at

13:47:38 24  hand with what is directly relevant, with what's directly

13:47:41 25  material, with what they need to do, effectively, a very narrow

13:47:46 1    set of depositions, expert reports, and cross motions for

13:47:50 2    summary judgment, on which I think we all pretty much agree,

13:47:53 3    most of these individual vagaries associated with these clients

13:47:59 4    are not going to be very relevant.

13:48:02 5           Instead, we have a situation where an IT person

13:48:07 6    who is completely divorced from how the data or the documents

13:48:10 7    or whatever are actually going to be used by lawyers in the

13:48:16 8    next four months or five months is just saying, well, these are

13:48:19 9    all the problems, quote, unquote, "problems" that I see, or,

13:48:22 10   quote, unquote, "deficiencies" that I see, and we demand that

13:48:25 11   all of this stuff be reproduced without any knowledge of or

13:48:30 12   consideration of what the documents are, whether they are ever

13:48:33 13   going to be used, whether they are ever going to see the light

13:48:36 14   of day, much less whether the metadata is relevant.

13:48:42 15          You know, given where we are now, it just doesn't

13:48:46 16   seem wise or efficient to waste a lot of time and a lot of

13:48:51 17   delay and a lot of effort chasing down a bunch of technical

13:48:55 18   things and metadata that not only itself is irrelevant but is

13:49:00 19   associated with documents that are irrelevant and are never

13:49:04 20   going to see the light of day.

13:49:06 21          So I've suggested, and I guess BP disagrees with

13:49:09 22   this, why don't you actually come with or figure out the actual

13:49:13 23   documents that you're going to use -- because we know it's not

13:49:17 24   24,000, probably more like 240 or some very small subset of

13:49:22 25   that -- see if you've got what you need to take those

**OFFICIAL TRANSCRIPT**

13:49:25 1   depositions.  I suspect that in 99 percent of the cases you do,

13:49:29 2   but if there is some orphan out there or some reason for

13:49:34 3   additional information, tell us what it is, and we'll get it

13:49:37 4   for you to the best we can.

13:49:38 5           MR. REGAN:  Your Honor, may I be heard on this?

13:49:40 6           THE COURT:  Sure.

13:49:41 7           MR. REGAN:  This is Matt Regan again.  We have been

13:49:45 8   having conferences with the Court on the OPA tests cases for

13:49:49 9   quite some time, and I don't know if Steve participated in the

13:49:51 10  ones in 2014, but the complaints that are being raised in this

13:49:55 11  last comment were very similar to things we heard over a year

13:49:58 12  ago for which we agreed that Bisso would then fix so that those

13:50:04 13  fixes could then be applied to the other test cases.  I don't

13:50:08 14  know how it then became the fact that once Bisso was fixed that

13:50:12 15  actually would not occur.  So I disagree with the premise

13:50:15 16  starting out, Number 1.

13:50:16 17          Number 2, PTO 16 does apply.  It has always

13:50:20 18  applied, and there has been no motion for relief from it.

13:50:24 19          Third, I think it's a convenient argument to say,

13:50:28 20  well, even though we might have to provide this stuff to you,

13:50:32 21  we don't think it's really necessary any more, so we shouldn't

13:50:36 22  provide it anymore.  Ultimately, this feels a bit of a bait and

13:50:40 23  switch for us, Your Honor, because we agreed to go along with a

13:50:43 24  process to fix a problem that we did not create.  We are now

13:50:47 25  being told by one of the three test cases that, well,

13:50:50  1    ultimately that fix doesn't apply to the second one that it's

13:50:55  2    supposed to be applied to, so I fundamentally disagree with

13:50:58  3    what we're doing here.

13:50:59  4            We have document requests, we have pretrial

13:51:02  5    orders, we had the patience to let a problem be fixed, and

13:51:08  6    ultimately there needs to be compliance here.  That's all we're

13:51:13  7    asking for.  What we're getting is additional new or old

13:51:19  8    reasons why we don't get document production.  I'm really kind

13:51:23  9    of stunned by the position I think we find ourselves in.

13:51:26 10            Ultimately, there is a new focus from the Court

13:51:29 11    on where we're going, but the focus on the Court is not let's

13:51:33 12    limit discovery from the perspective but ultimately we need

13:51:36 13    something.  We need documents.  We need the things we're

13:51:40 14    entitled to.  We need the things that we have always complied

13:51:43 15    with.  We need answers to interrogatories so that we can get

13:51:46 16    going.

13:51:47 17        MR. HERMAN:  But, Your Honor, you have the documents.

13:51:50 18    What you are making -- what you are complaining about are

13:51:55 19    issues that are very hypertechnical issues about the format of

13:51:59 20    the documents or the concordance files that go with the

13:52:04 21    documents, including complaining about having no metadata for

13:52:09 22    14,000 paper documents that don't have metadata.

13:52:12 23            So, yes, PTO 16 is in effect.  I gave you about a

13:52:17 24    page of reasons why I thought PTO 16 should be revisited.  One

13:52:22 25    of those main reasons about things that have changed, not only

**OFFICIAL TRANSCRIPT**

13:52:26 1   was it negotiated under completely different circumstances, for

13:52:30 2   completely different purposes, for completely different sets as

13:52:34 3   of data, but you have a different set of federal rules in place

13:52:37 4   which have a different focus.  So they came into effect on

13:52:40 5   December 1st of 2015.  That's --

13:52:43 6         MR. LANGAN:  Perspectively, Steve, for new filed cases.

13:52:46 7         MR. HERMAN:  My understanding is it says that it shall

13:52:48 8   be applied to existing cases to the extent practical.  That's

13:52:51 9   what I thought it said.  Maybe I'm wrong.

13:52:52 10        MR. LANGAN:  Your Honor, this is Andy Langan.  Can I

13:52:55 11  just make one comment?

13:52:56 12        I'm a little bit stunned, too, to hear Steve talk

13:53:00 13  about how the parties should be engaged in a flexible approach

13:53:03 14  to the application of Pretrial 16 -- Pretrial Order 16.  That's

13:53:07 15  a very different story than we heard from the plaintiffs when

13:53:11 16  it was BP having to make productions.  There was never any

13:53:14 17  discussion that the PSC would gather the documents they were

13:53:18 18  going to use at depositions, and those were the only ones we

13:53:22 19  need to worry about for complying with Pretrial Order 16.  That

13:53:25 20  is not the way the case worked.

13:53:27 21        It's just unfair, now that the plaintiffs have to

13:53:30 22  actually make some document productions available, for the

13:53:32 23  rules to be changed.  I mean, the door swings both ways, and

13:53:35 24  it's just fundamentally unfair to pretend that we're going to

13:53:40 25  have a newfound approach simply because it's the plaintiffs

13:53:44 1   that have to do the work this time.  And (speaking

13:53:46 2   simultaneously) --

13:53:46 3        THE COURT:  Well, I'm -- I'm sorry, Andy.  Go ahead and

13:53:49 4   finish.

13:53:49 5        MR. LANGAN:  The only thing I was going to say is that

13:53:50 6   Steve has also mentioned a couple times that the decision was

13:53:53 7   made to focus on Bisso.  Again, from where I sit, and I think

13:53:56 8   Mr. Regan said this, this was a unilateral decision by the

13:54:00 9   plaintiffs.  It's never that we ever agreed to, so that's no

13:54:04 10  excuse whatsoever.

13:54:05 11       THE COURT:  Okay.  Well, let me tell you what I think

13:54:07 12  we should do, guys, to get me up to snuff on this.  Could I get

13:54:14 13  BP's correspondence to Steve regarding document production.

13:54:20 14  Steve, could I get your response to BP with regard to document

13:54:25 15  production.  Do you all want to say anything more in writing

13:54:30 16  about it, or do you want me just to take a look at it and call

13:54:35 17  the ball or the strike?

13:54:44 18       MR. REGAN:  I think we're good, Your Honor, from BP's

13:54:46 19  perspective.  We have got letters from last year and this year

13:54:51 20  showing what we're asking for.

13:54:52 21       THE COURT:  Okay.  Steve, I don't know how extensive

13:54:55 22  your response to them was.  Are you satisfied with your written

13:54:58 23  response?

13:55:01 24       MR. HERMAN:  To a large extent I am, Your Honor, in

13:55:03 25  terms of the big picture stuff.  In terms of some of the more

**OFFICIAL TRANSCRIPT**

13:55:08 1    in-the-weeds issues, I'm still not sure I know exactly what

13:55:14 2    they are complaining about, which could be a defect on my part.

13:55:19 3            I'm certainly happy to, A, provide you with the

13:55:25 4    correspondence and let Your Honor rule, and, B, continue to

13:55:28 5    work with our people to address certainly everything that we

13:55:32 6    can address easily.  Maybe we can address all of this easily.

13:55:37 7    I'm still waiting to find out the answer to that question.

13:55:40 8            It just seemed to me that if we were going to get

13:55:43 9    into another Bisso situation and delay things for months solely

13:55:48 10   to take documents that BP already has and put them in a

13:55:52 11   different format with additional metadata that they don't need

13:55:56 12   or haven't articulated why they need, then that just seemed to

13:56:01 13   be wasteful.  I understand BP's position but I just

13:56:07 14   respectfully disagree, and I'm perfectly happy to provide the

13:56:10 15   Court with my thoughts on that.

13:56:11 16       THE COURT:  Okay.  Good.  Let's go ahead, guys, and

13:56:16 17   let's see, Andy, do you want to undertake to get me BP's

13:56:21 18   inquiries, and, Steve, go ahead and get me your response or

13:56:27 19   responses.  It sounds like your most recent response is all

13:56:33 20   inclusive, but anything you want to get me, we'll review it and

13:56:37 21   take it from there.

13:56:37 22       MR. LANGAN:  Yeah, we could do that, Your Honor.  This

13:56:41 23   is Andy.

13:56:41 24       THE COURT:  Good.  Thanks, Andy.

13:56:43 25            All right.  Okay.  Let's talk about Blake.  Let's

**OFFICIAL TRANSCRIPT**

13:56:49 1    see.  Where do we stand on the document production, Duke?

13:56:56 2    MR. WILLIAMS:  Good afternoon, Judge.  Duke Williams

13:56:59 3    for Blake.  I just got an update.  We had produced previously,

13:57:07 4    and almost all of these were scanned documents, 6,000 documents

13:57:10 5    to BP a number of months ago.  We have approximately 20,000

13:57:19 6    documents remaining to be reviewed, and we should be finished

13:57:27 7    and be able to make a production of 15,000 of those by

13:57:31 8    January 15th.  The final production will be -- the remaining

13:57:38 9    documents will probably be a week or so after that.

13:57:46 10   THE COURT:  All right.  Where do we stand, Duke, on the

13:57:50 11   amended responses to interrogatories?

13:57:58 12   MR. WILLIAMS:  Well, after listening to the back and

13:57:59 13   forth with respect to Wadleigh -- and right now, Judge, I

13:58:01 14   apologize, I can't remember the date, was it January 9th?

13:58:04 15   THE COURT:  Yes.  It was.

13:58:06 16   MR. WILLIAMS:  We'll go ahead and supplement to the

13:58:09 17   best of our ability by January 9th, the same time that Wadleigh

13:58:14 18   does.

13:58:15 19   THE COURT:  Good.  All right.  BP, do you have any

13:58:20 20   comments on where we are with Blake?

13:58:30 21   MR. KEEGAN:  Your Honor, this is Chris.  Good to hear

13:58:32 22   that progress is being made on the electronic documents and

13:58:35 23   look forward to getting the interrogatories on January 9th.

13:58:38 24   THE COURT:  Good.  Okay.

13:58:38 25   MR. WILLIAMS:  We haven't had a cross word yet,

**OFFICIAL TRANSCRIPT**

13:58:41  1    Your Honor.

13:58:41  2         THE COURT:  That's good.  We want it to remain that way

13:58:44  3    for sure.

13:58:44  4             Let's see what else we've got.  I guess you all

13:58:48  5    should be looking forward to February for BP's depositions.

13:58:59  6    Have you all discussed who and when?

13:59:09  7         MR. WILLIAMS:  Your Honor, this is Duke.  Are you

13:59:10  8    talking about our depositions of BP personnel?

13:59:13  9         THE COURT:  Right.

13:59:14 10         MR. WILLIAMS:  We're still talking about that.

13:59:20 11         THE COURT:  Good.  It seems to me that probably what

13:59:22 12    you need to target, guys, is depositions of Wadleigh and

13:59:30 13    Blake's representatives in February as well as a round of BP

13:59:40 14    depositions in February, right?

13:59:46 15             You all jumped right on that bandwagon, right?

13:59:52 16    As long as you all are talking, I think we better look to

13:59:55 17    February to get that accomplished because I'm assuming that,

14:00:01 18    you know, we're going to be taking expert depositions in March,

14:00:06 19    probably early March.

14:00:11 20         MR. REGAN:  Your Honor, this is Matt Regan.  On that

14:00:13 21    question, that kind of begs a larger question that I have.  We

14:00:16 22    don't have a scheduling order right now that even identifies

14:00:20 23    time periods for expert disclosures; so, I would not anticipate

14:00:26 24    that we're taking expert depositions in March.

14:00:30 25         THE COURT:  Well, how about I send something out this

**OFFICIAL TRANSCRIPT**

14:00:34  1   week, which would be my proposal for the schedule, and what I'm

14:00:40  2   hearing is that the plaintiffs are going to have expert reports

14:00:43  3   by the end of January.  I'm thinking late to the end of

14:00:53  4   February BP should be prepared to respond and then March

14:01:01  5   depositions.

14:01:02  6       MR. REGAN:  This is Matt again.  Your Honor, are these

14:01:05  7   experts for all purposes in the test cases or is this with

14:01:08  8   respect to the narrow issues that the plaintiffs are putting

14:01:12  9   forth experts on?

14:01:13 10       I mean, I'm just trying to get my mind around

14:01:17 11   whether this expert discovery that you have in mind is

14:01:21 12   specifically related to the issues that would be relevant for

14:01:25 13   partial summary judgment, or is it as to all issues in the case

14:01:28 14   because if it's the latter, then it's a different question.

14:01:32 15       THE COURT:  Right.  I think that's probably biting off

14:01:35 16   more than we can chew by the deadline dates that we have, Matt.

14:01:38 17   I think that the experts will be those that are necessary to

14:01:43 18   file the cross motions.  Does everybody agree with that?

14:01:54 19       MR. REGAN:  Yes, Your Honor.

14:01:55 20       MR. WILLIAMS:  Yes, I think that makes perfect sense,

14:01:58 21   Judge.

14:01:58 22       THE COURT:  So if you all want to talk about what that

14:02:01 23   means, we certainly can do so.

14:02:04 24       As I understand it, the three plaintiffs in this

14:02:11 25   case will be coming up with an expert damage report at the end

**OFFICIAL TRANSCRIPT**

14:02:19 1   of January.  Do you all anticipate anything besides a damage

14:02:26 2   expert for the cross motions?

14:02:32 3        MR. HERMAN:  I'm not sure we'll have an expert,

14:02:34 4   Your Honor.  We may just have some declarations by people, I

14:02:38 5   guess you might call them an *expert or consultant*, but it's

14:02:40 6   really just for the purpose of authenticating some documents.

14:02:46 7   We may have one other, again, we could call him an *expert,* but

14:02:54 8   I think it's really more just a factual -- a factual

14:02:59 9   declaration.

14:02:59 10       MR. REGAN:  Your Honor, this is Matt.  I think the

14:03:01 11  question that I have is originally, as contemplated in the

14:03:04 12  court conference, the partial summary judgment was going to be

14:03:08 13  based on the question of the moratoria and permitoria rather

14:03:13 14  than the broader OPA causation, right?

14:03:16 15       THE COURT:  That's right.

14:03:16 16       MR. REGAN:  What I'm trying to understand is are we

14:03:18 17  going to be in a posture where we're going to have damages

14:03:20 18  reports from the plaintiff at the end of January that are going

14:03:22 19  broader than the contention that these are the damages that

14:03:25 20  relate to the moratoria and the permitoria.

14:03:28 21       If they are isolated to moratoria and permitoria

14:03:33 22  damages, then I think it's probably more achievable.  If they

14:03:37 23  go more broadly to these are the fundamental damages writ

14:03:41 24  large, then it does seem like we've basically taken the whole

14:03:44 25  case and compressed it into a couple months.

**OFFICIAL TRANSCRIPT**

14:03:46  1        MR. HERMAN:  I'm sorry to interrupt, Matt.  I think we
14:03:54  2    would frame both the issue and the motion a little bit
14:03:56  3    differently.  We see, as you suggest, the cross motions for
14:04:02  4    summary judgment to address the, quote, unquote, "moratoria,
14:04:09  5    permitoria issues".  That's the purpose of them.
14:04:12  6            However, I don't think our expert reports are
14:04:14  7    going to be limited to damages that we claim are, quote,
14:04:19  8    unquote, "caused by the moratoria or the permitoria" because we
14:04:22  9    just don't see the case that way.  We fundamentally see these
14:04:26 10    are the damages that are caused to this plaintiff by the spill.
14:04:33 11    Frankly, that's really just to create a prima facie case so
14:04:40 12    that we can get to what we consider to be BP's defense.
14:04:43 13            So I mean, what I think -- what I see us doing is
14:04:48 14    we're just going to say, okay, this is a prima facie case of
14:04:52 15    the damages that were caused to these three plaintiffs by the
14:04:55 16    spill, and then it's, I guess, up to you to say that some or
14:05:02 17    all of those damages were caused by the moratoria and,
14:05:05 18    therefore, not compensable.
14:05:07 19        MR. REGAN:  Well, the question for us -- Your Honor,
14:05:11 20    this is what we discussed in the chambers conference.  There is
14:05:13 21    actually a liability standard that the argument that Steve has
14:05:17 22    just articulated kind of glosses over, and that's the question
14:05:21 23    of whether the plaintiffs' allegation of loss is due to or as a
14:05:24 24    result of an incident and what incident are they addressing it
14:05:28 25    to?  This is the statutory language question we have.

**OFFICIAL TRANSCRIPT**

14:05:31   1          If we're in a context where we just have a broad
14:05:34   2   assessment of damages and no specific articulation by the
14:05:38   3   plaintiff under oath as to what it says those damages are
14:05:42   4   specifically due to, if it stays in this generic posture, then
14:05:47   5   it really does feel like we're just compressing the case to a
14:05:52   6   question where the partial summary judgment is going to become,
14:05:56   7   by almost definition, required to go into all aspects of cause
14:06:02   8   for an alleged damage.
14:06:06   9          I say this conceptually, Your Honor -- this is
14:06:09  10   just something I think we need to think about -- if we're going
14:06:12  11   to be in a posture where these expert reports that we're going
14:06:17  12   to get, presumably, from all three of them by the end of
14:06:20  13   January are broad as to all aspects of damage, then that's
14:06:23  14   going to require experts in response that are equally broad,
14:06:27  15   and we're then going to be doing expert discovery before we've
14:06:32  16   even sat down to take depositions of Wadleigh and Blake.
14:06:40  17      MR. HERMAN:  But, Matt, a lot of these damage issues, I
14:06:43  18   think -- well, we would probably say and you may even
14:06:45  19   concede -- are not going to be susceptible to summary judgment
14:06:48  20   in terms of the specifics on the damage.
14:06:51  21          I don't know what your motion's framed at or what
14:06:54  22   statutory language you're going to rely on or what you're going
14:06:58  23   to say, but from our point of view, our motion for summary
14:07:02  24   judgment is going to be the same as the motion that we just
14:07:05  25   filed, except it's going to include the factual evidentiary

14:07:11  1    basis just in case the Court can't decide the issue as a matter

14:07:16  2    of law.

14:07:16  3              So the procedural question that we wrestle

14:07:20  4    with -- and I apologize, I wasn't in the chambers, so I'm not

14:07:22  5    sure what the Court is wrestling with -- is can you get to a

14:07:27  6    judgment or a partial judgment on a defense without making a

14:07:31  7    prima facie case in the first place?

14:07:34  8         MR. REGAN:  Again, I think this will be in the briefing

14:07:35  9    that's before the Court.  We have a fundamental disagreement to

14:07:42 10    your attempt to say moratoria is solely a defense.  That's been

14:07:42 11    brief before and it's going to be brief again here in this

14:07:42 12    motion to dismiss.

14:07:46 13              I'm just staying with the schedule concept.  So

14:07:49 14    rather than a substantive question -- and, Your Honor, maybe

14:07:52 15    this is something for us to think about, and we can talk next

14:07:56 16    week about in terms of how we're going to schedule this -- but

14:07:58 17    I just come from this with a very practical perspective, which

14:08:03 18    is, if we're anticipating doing expert discovery on some of

14:08:06 19    these questions, in January -- expert reports in January and

14:08:12 20    February, I'm a little concerned about the overlap with the

14:08:14 21    fact that we may not have even deposed the fact witnesses yet,

14:08:19 22    and I'm just trying to figure out how we might be able to pull

14:08:22 23    that off, candidly.

14:08:23 24         THE COURT:  Right.  Well, obviously I'm going to turn

14:08:26 25    my attention to that, and if you all have any ideas, Matt, I

                              **OFFICIAL TRANSCRIPT**

14:08:31  1    solicit them from you, but obviously there is a difference of

14:08:40  2    opinion here.  Plaintiffs contend that the damages cannot be

14:08:44  3    segregated, and I'm assuming BP believes that they can be and

14:08:50  4    should be.

14:08:51  5         MR. REGAN:  Yes, particularly, Your Honor, for someone

14:08:56  6    like Bisso where if it's not identified specifically, then we

14:08:59  7    have an issue of whether the claim can be in court versus

14:09:04  8    what's sitting over in the claims program, right?

14:09:06  9         THE COURT:  Right.  Right.

14:09:07 10         MR. REGAN:  So if I use Bisso as the cleanest -- I'm

14:09:12 11    not picking on Bisso, but just as a clean example, we would

14:09:14 12    need to hear from Bisso first how it draws that line so that --

14:09:19 13    you know, and then, like in all litigation, people will go back

14:09:23 14    and forth on testing the proposition, but maybe we will end up

14:09:28 15    three months from now with the same place we are today where

14:09:31 16    the plaintiffs do not specify what portion of their damages

14:09:37 17    they say are specific to the moratoria and permitoria.

14:09:43 18         That may be a challenge for where we're going on

14:09:45 19    the partial summary judgment.  It is a bit what we talked about

14:09:48 20    at the conference.  I know, Steve, you weren't there.  I

14:09:52 21    apologize.  I just remembered that.

14:09:53 22         If there is not -- and this is a bit why I am

14:09:57 23    probably overly concerned about interrogatory answers, but if

14:10:01 24    we continue down the path of a lack of clarity on that

14:10:04 25    question, the question I ask for both scheduling purposes but

**OFFICIAL TRANSCRIPT**

14:10:08  1    also substantively advancing the ball on these cases, at what
14:10:13  2    point will it come?  Because we're then driving towards
14:10:17  3    ultimately a battle of experts, who -- and kind of trying to
14:10:24  4    divine what is the true source of an alleged loss, and then is
14:10:28  5    it actually a moratoria-based damage and then back to the legal
14:10:32  6    question.
14:10:32  7              So, I take your comment, Your Honor, about giving
14:10:36  8    you some thoughts on how to schedule this, and obviously I also
14:10:41  9    understand the need for trying to do things expeditiously, but
14:10:45  10   I want to make sure that in our schedule that we are cognizant
14:10:49  11   of what we're trying to get done.
14:10:51  12         THE COURT:  Right.  Matt, let me make a request that
14:10:55  13   you send me the interrogatories so I can see what you've got
14:10:58  14   out there and what you're looking for.
14:10:58  15        MR. HERMAN:  That's fine, Your Honor.  The issue -- and
14:11:04  16   it is very complicated, I guess, on some sense and a little bit
14:11:10  17   esoteric or semantic -- is what I guess we're reacting to is
14:11:17  18   that just because the defendants want to frame the case in a
14:11:24  19   certain way and, therefore, frame their interrogatory in a
14:11:28  20   certain way, they don't have the right, so to speak, to
14:11:32  21   fundamentally change our theory of the case and our framing of
14:11:37  22   the case.
14:11:38  23             As a general practical matter, what I think
14:11:46  24   that -- what I understand we're going to try to do to the
14:11:48  25   extent it can be teased out is generally say, okay, these

**OFFICIAL TRANSCRIPT**

14:11:52  1    damages would have occurred based on the spill irrespective of

14:11:58  2    a permitorium or moratorium.  These damages were due at least

14:12:05  3    predominantly or to the best we can tell because of a

14:12:08  4    combination of both the spill and the permitorium or both the

14:12:13  5    spill and the moratorium or the spill and the permitorium and

14:12:17  6    the moratorium.  But I don't think we're ever going to say that

14:12:20  7    some damages were due to the moratorium but not due to the

14:12:25  8    spill.

14:12:26  9            It's up to BP to frame its motion and its case

14:12:32 10    the way that it wants to, and it's up to us to frame our case

14:12:34 11    and our motion the way that we think is appropriate legally and

14:12:40 12    factually.

14:12:40 13            I'm not sure that we're not going to get to the

14:12:42 14    place where or I think we would get to the place where Matt

14:12:47 15    wants to go.  I just think that we're going to frame the case

14:12:50 16    much differently than they are.

14:12:52 17            We're not trying to do anything that is going to

14:12:55 18    prevent Matt and BP from raising whatever statutory issues or

14:13:02 19    arguments that they want to make.  We just want to be able to

14:13:06 20    have the freedom to put out our case the way that we think it

14:13:10 21    should be framed.

14:13:11 22            THE COURT:  Okay.

14:13:11 23            MR. HERMAN:  And not -- and not dictated by their

14:13:15 24    request for interrogatories.

14:13:16 25            MR. REGAN:  In fairness, Your Honor, I'm just trying to

**OFFICIAL TRANSCRIPT**

| | |
|---|---|
| 14:13:20 | 1 |

be respectful of the direction that I thought we got from the
Court as to what the idea was for these partial summary
judgment motions.  I don't think we need to belabor it much
more here, but this debate right here is a bit what I was
talking about in mid November, in that we have a challenge
here, if we're trying to look at the narrow question
substantively, a challenge where the plaintiff will or will not
identify particular damages as being moratoria, permitoria
based for the reason that Steve said.  This is a bit of a
challenge.

        The only reason I want to talk about it today,
and we can get some thought to it for Your Honor, is how that
relates to the schedule that the Court has in mind.

        THE COURT:  That's right.

        MR. REGAN:  Because in a full schedule, it doesn't
matter.  In a full schedule, it matters not one bit because
ultimately it works its way through.  It's just in a compressed
schedule, it's just having clarity as to what -- what part of
the case are we aiming at right now?

        THE COURT:  Well, look, I'll be frank with you, I've
always thought that we are aiming to causation and damages that
are moratoria related.  It may be mixed.  I'm not saying that
it has to be a hundred percent damage caused by moratoria, but
what we're trying to get at is is there a cause of action or a
claim for damages caused by the imposition of the government

14:14:56  1   moratoria for the failure to allow permits?

14:15:02  2        MR. HERMAN:  I think that our motions and the factual

14:15:08  3   support that we're going to have for those motions, whether to

14:15:11  4   make a prima facie case in the first instance or to rebut an

14:15:17  5   anticipated defense in the second instance, are going to be

14:15:21  6   targeted towards that issue.

14:15:24  7             We may not frame it exactly the way that BP wants

14:15:27  8   us to frame it, but that's certainly what we think these

14:15:31  9   motions are supposed to be directed at.  In part, that's why I

14:15:35 10   think that a lot of these other case-specific, factual,

14:15:42 11   documentary things about how they did their business and what

14:15:47 12   specific vagaries of damages they suffered and what ways or how

14:15:51 13   that came about or how they operated the business is probably

14:15:54 14   not going to be very relevant or material to those central

14:15:57 15   issues that are going to be decided on the cross motions, but

14:16:00 16   be that as it may, we'll leave that to the Court.

14:16:03 17        THE COURT:  Matt, did I frame it incorrectly from your

14:16:06 18   point of view?

14:16:07 19        MR. REGAN:  No, Your Honor.  I think you are where I

14:16:09 20   was.  So I am trying to make sure that the discovery actually

14:16:16 21   gives me something where I can say, this is how Bisso, this is

14:16:20 22   how Wadleigh, this is how Blake answered the question that you

14:16:23 23   posed, so that then the fact section of the brief can be what

14:16:28 24   it is and then the legal section can be what it is as well.

14:16:30 25   But I understood the path we were on to be within the

**OFFICIAL TRANSCRIPT**

14:16:33 1   boundaries that you articulated.

14:16:35 2          THE COURT:  Okay.  Well, I do think that I need to

14:16:40 3   follow up on the discovery issues and, Matt, I'm more than

14:16:46 4   happy to have you propose a schedule, and we can either take it

14:16:52 5   and run with it, we can modify it, I'm happy to hear from the

14:17:01 6   PSC, but I think by next week we probably should have a

14:17:05 7   schedule in hand; don't you think?

14:17:09 8          MR. REGAN:  Yes, Your Honor.  I'll put that together.

14:17:11 9   I think, if nothing else, the process of doing it will help us

14:17:13 10  get everybody aligned in the same place, you know, so that we

14:17:19 11  all kind -- we're going to have a limited period of time to do

14:17:22 12  what we're doing, and if we're all kind of heading toward the

14:17:25 13  same target, all the better, right?

14:17:26 14         THE COURT:  Yes.  Absolutely.

14:17:29 15         MR. HERMAN:  Your Honor --

14:17:29 16         THE COURT:  Yes.

14:17:30 17         MR. HERMAN:  I'm sorry, this is Steve.  Do you want our

14:17:31 18  supplemental interrogatories on Friday, January 8th?

14:17:35 19         THE COURT:  Yeah, that would be good.  The 8th, guys.

14:17:38 20  I didn't realize it was a Saturday being the 9th.

14:17:42 21              Okay.  Is everybody working on the 23rd or do

14:17:49 22  you-all want to have another conference on the 23rd?

14:17:58 23         MR. REGAN:  That works for me, Your Honor.

14:17:58 24         MR. WILLIAMS:  It's okay with us, I think, Judge.

14:17:59 25         THE COURT:  How do you all look in the morning in case

**OFFICIAL TRANSCRIPT**

14:18:02  1   Matt, for example, wants to take the afternoon off and be with

14:18:05  2   the kids?

14:18:07  3              MR. REGAN:  The morning is great and I appreciate that.

14:18:10  4              THE COURT:  Okay.  What time suits you?  Do you all

14:18:12  5   want to do it for 10:00 a.m.?  Everybody is good?

14:18:20  6              MR. WILLIAMS:  I think that works.

14:18:21  7              THE COURT:  All right.  Let's put it down for

14:18:23  8   10:00 a.m. next Wednesday, the 23rd, and we'll take it from

14:18:29  9   there.

14:18:32 10              All right, guys.  Thank you very much.  Everybody

14:18:35 11   have a good evening and, Matt, good luck with the cold.

14:18:39 12              MR. REGAN:  Thank you, Your Honor.

        13              MR. HERMAN:  I hope you feel better, Matt.

        14              MR. REGAN:  I appreciate it.

        15              (WHEREUPON, at 2:18 p.m. the proceedings were

        16   concluded.)

        17                         *    *    *

        18                    REPORTER'S CERTIFICATE

        19       I, Cathy Pepper, Certified Realtime Reporter, Registered
             Merit Reporter, Certified Court Reporter in and for the State
        20   of Louisiana, Official Court Reporter for the United States
             District Court, Eastern District of Louisiana, do hereby
        21   certify that the foregoing is a true and correct transcript to
             the best of my ability and understanding from the record of the
        22   proceedings in the above-entitled and numbered matter.

        23                         *s/Cathy Pepper*
                                   Cathy Pepper, CRR, RMR, CCR
        24                         Certified Realtime Reporter
                                   Official Court Reporter
        25                         United States District Court
                                   Cathy_Pepper@laed.uscourts.gov

                          **OFFICIAL TRANSCRIPT**

**1**

**1** [2] - 13:18, 15:16
**10-MD-2179** [1] - 1:6
**101** [1] - 1:23
**10:00** [3] - 3:17, 33:5, 33:8
**13-1143** [1] - 1:10
**13-1185** [1] - 1:10
**13-1222** [1] - 1:10
**13-1386** [1] - 1:10
**13-2006** [1] - 1:11
**13-706** [1] - 1:10
**13-810** [1] - 1:10
**14,000** [2] - 12:22, 16:22
**15,000** [1] - 20:7
**15th** [2] - 5:16, 20:8
**16** [11] - 1:7, 4:2, 11:1, 13:11, 13:17, 15:17, 16:23, 16:24, 17:14, 17:19
**19** [1] - 3:9
**1:30** [1] - 1:7
**1st** [1] - 17:5

**2**

**2** [3] - 13:1, 13:2, 15:17
**20** [1] - 1:5
**20,000** [1] - 20:5
**2010** [1] - 1:5
**2014** [2] - 13:5, 15:10
**2015** [4] - 1:7, 3:16, 4:2, 17:5
**2016**.........................
..................... [1] - 3:15
**21** [2] - 3:10, 3:11
**22** [1] - 3:12
**23** [1] - 3:16
**23rd** [3] - 32:21, 32:22, 33:8
**24** [1] - 3:13
**24,000** [1] - 14:24
**240** [1] - 14:24
**2615** [1] - 2:5
**2:18** [1] - 33:15

**3**

**300** [1] - 2:15
**32** [1] - 3:15
**33** [1] - 3:17
**391** [1] - 12:16

**4**

**4** [2] - 3:5, 3:6
**435** [1] - 1:23

**5**

**5** [2] - 3:7, 3:8
**500** [1] - 2:22
**504** [1] - 2:23
**555** [1] - 2:18
**589-7779** [1] - 2:23

**6**

**6,000** [1] - 20:4
**601** [1] - 2:5
**60654** [1] - 2:15
**6th** [2] - 5:22, 6:19

**7**

**70113** [1] - 1:20
**70130** [2] - 2:5, 2:22
**70360** [1] - 1:24

**8**

**820** [1] - 1:20
**8th** [2] - 32:18, 32:19
**8TH** [1] - 3:14

**9**

**9,000** [2] - 12:25, 13:1
**9,900** [1] - 13:2
**94104** [1] - 2:19
**99** [1] - 15:1
**9th** [8] - 19:8, 10:6, 10:9, 10:15, 20:14, 20:17, 20:23, 32:20

**A**

**a.m** [2] - 33:5, 33:8
**A.M.**
.................. [1] - 3:17
**abilities** [1] - 12:21
**ability** [2] - 20:17, 33:21
**able** [5] - 6:13, 7:9, 20:7, 26:22, 29:19
**above-entitled** [1] - 33:22
**ABRAMSON** [1] - 2:3
**absolutely** [2] - 5:3, 32:14
**accomplished** [1] - 21:17
**achievable** [1] - 23:22
**ACTION** [1] - 1:6
**action** [1] - 30:24
**actual** [2] - 12:2, 14:22
**additional** [5] - 5:22, 7:22, 13:4, 15:3, 16:7, 19:11
**additionally** [1] - 4:21
**address** [4] - 19:5, 19:6, 24:4
**addressing** [1] - 24:24
**advancing** [1] - 28:1
**AdvanTeq** [2] - 10:23, 12:1
**afternoon** [4] - 4:8, 4:9, 20:2, 33:1
**AGENDA** [1] - 3:3
**ago** [6] - 6:11, 7:2, 8:22, 13:17, 15:12, 20:5
**agree** [6] - 5:2, 5:4, 10:4, 12:11, 14:2, 22:18
**agreed** [6] - 5:10, 11:7, 12:6, 15:12, 15:23, 18:9
**agreement** [1] - 10:21
**ahead** [5] - 12:6, 18:3, 19:16, 19:18, 20:16
**aiming** [2] - 30:19, 30:21
**aligned** [1] - 32:10
**allegation** [1] - 24:23
**alleged** [2] - 25:8, 28:4
**allow** [1] - 31:1
**almost** [2] - 20:4, 25:7
**amend** [2] - 7:13, 10:6
**amended** [2] - 7:19, 20:11
**amendment** [1] - 7:18
**AMERICA** [6] - 2:8, 2:8, 2:9, 2:10, 2:12, 2:13
**AMERICAN** [1] - 2:4
**AND** [2] - 1:11, 3:5
**ANDREW** [1] - 2:14
**Andy** [5] - 17:10, 18:3, 19:17, 19:23, 19:24
**answer** [7] - 8:3, 8:4, 8:14, 8:15, 9:2, 9:6, 19:7
**answered** [7] - 8:2, 8:5, 8:18, 8:19, 31:22
**answering** [1] - 6:2
**answers** [3] - 8:11,

16:15, 27:23
**anticipate** [2] - 21:23, 23:1
**anticipated** [1] - 31:5
**anticipating** [2] - 4:17, 26:18
**apologize** [4] - 11:21, 20:14, 26:4, 27:21
**appear** [1] - 13:20
**APPEARANCES** [2] - 1:17, 2:1
**application** [1] - 17:14
**applied** [4] - 15:13, 15:18, 16:2, 17:8
**apply** [2] - 15:17, 16:1
**appreciate** [2] - 33:3, 33:14
**approach** [2] - 17:13, 17:25
**appropriate** [1] - 29:11
**APRIL** [1] - 1:5
**argument** [2] - 15:19, 24:21
**arguments** [1] - 29:19
**articulated** [3] - 19:12, 24:22, 32:1
**articulation** [1] - 25:2
**Asher** [2] - 10:7, 10:10
**Asher's** [1] - 7:13
**aspects** [2] - 25:7, 25:13
**asserting** [1] - 6:7
**assess** [1] - 11:8
**assessment** [1] - 25:2
**associated** [2] - 14:3, 14:19
**assuming** [2] - 21:17, 27:3
**AT** [1] - 3:16
**attempt** [1] - 26:10
**attention** [1] - 26:25
**authenticating** [1] - 23:6
**available** [1] - 17:22
**AVENUE** [1] - 1:20
**aware** [1] - 6:21
**awhile** [1] - 6:11

**B**

**bad** [1] - 12:12
**bait** [1] - 15:22
**ball** [2] - 18:17, 28:1
**bandwagon** [1] - 21:15
**based** [4] - 23:13, 28:5, 29:1, 30:9
**basis** [3] - 7:15, 8:6,

26:1
**battle** [1] - 28:3
**became** [1] - 15:14
**become** [1] - 25:6
**BEFORE** [1] - 1:14
**begs** [1] - 21:21
**belabor** [1] - 30:3
**believes** [1] - 27:3
**best** [8] - 5:1, 5:4, 12:1, 12:21, 15:4, 20:17, 29:3, 33:21
**better** [4] - 13:23, 21:16, 32:13, 33:13
**big** [1] - 18:25
**BISSO** [2] - 3:5, 3:7
**Bisso** [18] - 4:11, 5:7, 7:2, 8:23, 9:6, 11:2, 11:13, 11:18, 13:18, 15:12, 15:14, 18:7, 19:9, 27:6, 27:10, 27:11, 27:12, 31:21
**Bisso's** [1] - 8:25
**bit** [11] - 8:9, 12:14, 15:22, 17:12, 24:2, 27:19, 27:22, 28:16, 30:4, 30:9, 30:16
**biting** [1] - 22:15
**Blake** [5] - 19:25, 20:3, 20:20, 25:16, 31:22
**Blake's** [1] - 21:13
**BLAKE**.....................
..................... [1] - 3:9
**boundaries** [1] - 32:1
**BP** [32] - 2:8, 2:8, 2:9, 2:10, 2:11, 2:12, 2:13, 4:11, 5:8, 5:17, 6:7, 6:17, 8:5, 11:9, 11:25, 12:10, 12:17, 13:3, 13:9, 14:21, 17:16, 18:14, 19:10, 20:5, 20:19, 21:8, 21:13, 22:4, 27:3, 29:9, 29:18, 31:7
**BP's** [7] - 9:9, 18:13, 18:18, 19:13, 19:17, 21:5, 24:12
**BP'S** [1] - 3:10
**BP**.............................
.......... [1] - 3:5
**brief** [3] - 26:11, 31:23
**briefing** [2] - 6:3, 26:8
**broad** [3] - 25:1, 25:13, 25:14
**broader** [2] - 23:14, 23:19
**broadly** [1] - 23:23
**broke** [1] - 12:15
**BUILDING** [1] - 2:4

bunch [1] - 14:17
burdens [2] - 11:10, 12:9
burner [1] - 11:16
business [2] - 31:11, 31:13
BY [8] - 1:4, 1:19, 1:23, 2:4, 2:14, 2:18, 2:24, 2:25

## C

CA [1] - 2:19
calendar [1] - 5:13
CALIFORNIA [1] - 2:18
candidly [2] - 9:2, 26:23
cannot [1] - 27:2
case [23] - 6:8, 11:15, 17:20, 22:13, 22:25, 23:25, 24:9, 24:11, 24:14, 25:5, 26:1, 26:7, 28:18, 28:21, 28:22, 29:9, 29:10, 29:15, 29:20, 30:19, 31:4, 31:10, 32:25
case-specific [1] - 31:10
cases [9] - 13:19, 15:1, 15:8, 15:13, 15:25, 17:6, 17:8, 22:7, 28:1
CASES [1] - 1:14
CATHY [1] - 2:21
Cathy [2] - 33:19, 33:23
cathy_Pepper@laed.uscourts.gov [1] - 2:23
Cathy_Pepper@laed.uscourts.gov [1] - 33:25
causation [2] - 23:14, 30:21
caused [6] - 24:8, 24:10, 24:15, 24:17, 30:23, 30:25
CCR [2] - 2:21, 33:23
central [1] - 31:14
certain [5] - 5:24, 5:25, 8:8, 28:19, 28:20
certainly [6] - 9:23, 12:3, 19:3, 19:5, 22:23, 31:8
CERTIFICATE [1] - 33:18
CERTIFIED [1] - 2:21

Certified [3] - 33:19, 33:19, 33:24
certify [1] - 33:21
challenge [5] - 8:17, 27:18, 30:5, 30:7, 30:10
CHAMBERS [1] - 4:4
chambers [2] - 24:20, 26:4
chance [1] - 4:25
change [2] - 11:19, 28:21
changed [2] - 16:25, 17:23
chasing [2] - 12:16, 14:17
check [1] - 4:22
chew [1] - 22:16
CHICAGO [1] - 2:15
choice [3] - 9:6, 9:8, 9:9
Chris [4] - 4:14, 5:8, 10:20, 20:21
CHRISTOPHER [1] - 2:18
circumstances [3] - 13:16, 13:17, 17:1
CIVIL [1] - 1:6
claim [3] - 24:7, 27:7, 30:25
claims [2] - 6:6, 27:8
clarity [2] - 27:24, 30:18
clawback [2] - 4:21, 4:23
CLAWBACK [1] - 3:6
clean [2] - 27:11
cleanest [1] - 27:10
clear [2] - 5:20, 13:20
clearly [1] - 13:7
client [5] - 7:9, 8:3, 8:14, 9:24, 10:1
clients [2] - 7:4, 14:3
cognizant [1] - 28:10
cold [2] - 9:13, 33:11
combination [2] - 12:13, 29:4
comfortable [1] - 4:15
coming [4] - 5:6, 8:10, 9:4, 22:25
comment [5] - 5:17, 6:9, 15:11, 17:11, 28:7
comments [2] - 4:11, 20:20
communication [1] - 12:12
COMPANY [2] - 2:9
compensable [1] - 24:18

complained [2] - 12:17, 12:18
complaining [5] - 11:9, 12:22, 16:18, 16:21, 19:2
complaints [3] - 12:20, 12:22, 15:10
completed [1] - 10:10
completely [4] - 14:6, 17:1, 17:2
completes [1] - 10:7
compliance [1] - 16:6
complicated [1] - 28:16
complied [1] - 16:14
comply [2] - 8:13, 11:1
complying [2] - 8:12, 17:19
comprehensive [1] - 7:18
compressed [2] - 23:25, 30:17
compressing [1] - 25:5
COMPUTER [1] - 2:25
concede [1] - 25:19
concept [1] - 26:13
conceptually [1] - 25:9
concerned [2] - 26:20, 27:23
concluded [1] - 33:16
concordance [1] - 16:20
CONFERENCE [2] - 1:14, 3:16
conference [5] - 4:13, 23:12, 24:20, 27:20, 32:22
conferences [1] - 15:8
confirm [1] - 11:1
Congress [1] - 6:15
CONRAD [1] - 1:23
consider [1] - 24:12
consideration [1] - 14:12
considered [2] - 6:15, 9:25
consultant [1] - 23:5
contemplated [1] - 23:11
contend [1] - 27:2
contention [4] - 9:24, 10:14, 23:19
context [1] - 25:1
continue [3] - 9:3, 19:4, 27:24
CONTINUED [1] - 2:1
continuing [1] - 8:17

convenient [1] - 15:19
CORPORATE [1] - 1:23
CORPORATION [1] - 2:10
correct [1] - 33:21
corrected [1] - 13:14
correspondence [2] - 18:13, 19:4
couple [3] - 7:11, 18:6, 23:25
COURT [48] - 1:1, 2:21, 4:7, 4:9, 4:20, 5:1, 5:5, 5:14, 6:9, 7:25, 9:16, 9:22, 10:4, 10:8, 10:13, 10:17, 11:5, 15:6, 18:3, 18:11, 18:21, 19:16, 19:24, 20:10, 20:15, 20:19, 20:24, 21:2, 21:9, 21:11, 21:25, 22:15, 22:22, 23:15, 26:24, 27:9, 28:12, 29:22, 30:14, 30:20, 31:17, 32:2, 32:14, 32:16, 32:19, 32:25, 33:4, 33:7
court [2] - 23:12, 27:7
Court [18] - 7:20, 12:11, 13:21, 15:8, 16:10, 16:11, 19:15, 26:1, 26:5, 26:9, 30:2, 30:13, 31:16, 33:19, 33:20, 33:20, 33:24, 33:25
create [3] - 12:9, 15:24, 24:11
created [1] - 11:21
creating [1] - 10:3
CROSS [1] - 3:13
cross [6] - 14:1, 20:25, 22:18, 23:2, 24:3, 31:15
CRR [2] - 2:21, 33:23
culpa [1] - 11:20

## D

DAMAGE [1] - 3:12
damage [9] - 10:3, 22:25, 23:1, 25:8, 25:13, 25:17, 25:20, 28:5, 30:23
damages [19] - 23:17, 23:19, 23:22, 23:23, 24:7, 24:10, 24:15, 24:17, 25:2, 25:3, 27:2, 27:16, 29:1, 29:2, 29:7, 30:8,

30:21, 30:25, 31:12
data [2] - 14:6, 17:3
date [2] - 5:25, 20:14
dates [3] - 5:9, 5:11, 22:16
deadline [2] - 9:21, 22:16
deadlines [1] - 9:10
deal [1] - 8:15
debate [1] - 30:4
DECEMBER [3] - 1:7, 3:16, 4:2
December [1] - 17:5
decide [1] - 26:1
decided [2] - 7:2, 31:15
decision [3] - 11:13, 18:6, 18:8
declaration [1] - 23:9
declarations [1] - 23:4
DEEPWATER [1] - 1:4
defect [1] - 19:2
defendants [1] - 28:18
defense [4] - 24:12, 26:6, 26:10, 31:5
deficiencies [1] - 14:10
definition [1] - 25:7
delay [4] - 12:3, 12:5, 14:17, 19:9
delays [1] - 12:9
demand [1] - 14:10
deposed [1] - 26:21
deposition [1] - 5:6
DEPOSITION [1] - 3:7
depositions [11] - 14:1, 15:1, 17:18, 21:5, 21:8, 21:12, 21:14, 21:18, 21:24, 22:5, 25:16
DEPOSITIONS.......... ............. [1] - 3:10
detailing [1] - 5:16
dictated [1] - 29:23
difference [1] - 27:1
different [14] - 6:12, 11:9, 11:10, 13:4, 13:16, 17:1, 17:2, 17:3, 17:4, 17:15, 19:11, 22:14
differently [2] - 24:3, 29:16
directed [1] - 31:9
direction [2] - 9:21, 30:1
directly [2] - 13:24
disagree [3] - 15:15, 16:2, 19:14
disagreement [1] - 26:9

3

**disagrees** [1] - 14:21
**disclosures** [1] - 21:23
**discovery** [8] - 5:25, 8:16, 16:12, 22:11, 25:15, 26:18, 31:20, 32:3
**discussed** [2] - 21:6, 24:20
**discussion** [1] - 17:17
**discussions** [1] - 10:22
**dismiss** [3] - 6:3, 6:19, 26:12
**disputes** [1] - 4:18
**District** [3] - 33:20, 33:25
**DISTRICT** [2] - 1:1, 1:1
**divine** [1] - 28:4
**divorced** [1] - 14:6
**document** [8] - 4:22, 9:1, 16:4, 16:8, 17:22, 18:13, 18:14, 20:1
**DOCUMENT** [1] - 1:9
**documentary** [1] - 31:11
**documents** [24] - 7:8, 9:7, 10:23, 12:23, 13:6, 13:7, 13:8, 14:6, 14:12, 14:19, 14:23, 16:13, 16:17, 16:20, 16:21, 16:22, 17:17, 19:10, 20:4, 20:6, 20:9, 20:22, 23:6
**done** [1] - 28:11
**door** [1] - 17:23
**double** [1] - 4:22
**down** [6] - 5:13, 12:16, 14:17, 25:16, 27:24, 33:7
**draws** [1] - 27:12
**DRIVE** [1] - 1:23
**driving** [1] - 28:2
**due** [5] - 24:23, 25:4, 29:2, 29:7
**Duke** [4] - 20:1, 20:2, 20:10, 21:7

## E

**e-mail** [6] - 5:16, 5:19, 6:22, 6:25, 7:6, 13:5
**early** [3] - 4:19, 5:12, 21:19
**easily** [2] - 19:6
**EASTERN** [1] - 1:1

**Eastern** [1] - 33:20
**effect** [2] - 16:23, 17:4
**effectively** [2] - 12:16, 13:25
**efficient** [1] - 14:16
**effort** [1] - 14:17
**either** [2] - 9:5, 32:4
**electronic** [3] - 13:1, 13:2, 20:22
**ELLIS** [2] - 2:13, 2:17
**end** [9] - 5:23, 8:9, 10:9, 22:3, 22:25, 23:18, 25:12, 27:14
**endeavoring** [1] - 8:13
**engaged** [1] - 17:13
**entirely** [1] - 5:20
**entitled** [3] - 13:10, 16:14, 33:22
**equally** [1] - 25:14
**esoteric** [1] - 28:17
**ESQUIRE** [6] - 1:19, 1:23, 2:4, 2:14, 2:14, 2:18
**evening** [1] - 33:11
**evidentiary** [1] - 25:25
**exactly** [4] - 11:8, 11:9, 19:1, 31:7
**example** [2] - 27:11, 33:1
**except** [1] - 25:25
**excuse** [1] - 18:10
**existing** [1] - 17:8
**expeditiously** [1] - 28:9
**EXPERT** [1] - 3:12
**expert** [19] - 6:4, 8:16, 10:2, 14:1, 21:18, 21:23, 21:24, 22:2, 22:11, 22:25, 23:2, 23:3, 23:5, 23:7, 24:6, 25:11, 25:15, 26:18, 26:19
**experts** [2] - 22:7, 22:9, 22:17, 25:14, 28:3
**EXPLORATION** [1] - 2:11
**extensive** [1] - 18:21
**extent** [7] - 7:16, 10:5, 11:3, 12:9, 17:8, 18:24, 28:25
**extremely** [1] - 13:16

## F

**facie** [4] - 24:11, 24:14, 26:7, 31:4
**fact** [4] - 15:14, 26:21, 31:23

**facts** [1] - 6:6
**factual** [10] - 8:3, 9:17, 9:18, 10:9, 10:13, 23:8, 25:25, 31:2, 31:10
**factually** [1] - 29:12
**failure** [1] - 31:1
**fairness** [1] - 29:25
**far** [2] - 5:2, 5:4
**fault** [2] - 12:13
**February** [6] - 21:5, 21:13, 21:14, 21:17, 22:4, 26:20
**FEBRUARY** [1] - 3:10
**federal** [1] - 17:3
**feelings** [1] - 13:13
**fight** [2] - 12:3, 12:4
**figure** [7] - 11:16, 11:23, 11:24, 12:2, 12:21, 14:22, 26:22
**file** [2] - 6:17, 22:18
**filed** [2] - 17:6, 25:25
**files** [3] - 13:1, 13:3, 16:20
**final** [1] - 20:8
**financial** [1] - 10:9
**fine** [3] - 9:7, 9:20, 28:15
**finish** [1] - 18:4
**finished** [1] - 20:6
**firm** [1] - 9:20
**first** [4] - 12:11, 26:7, 27:12, 31:4
**five** [2] - 13:17, 14:8
**fix** [4] - 12:2, 15:12, 15:24, 16:1
**fixed** [4] - 10:25, 11:3, 15:14, 16:5
**fixes** [1] - 15:13
**flexible** [1] - 17:13
**focus** [8] - 7:2, 8:23, 11:13, 13:22, 16:10, 16:11, 17:4, 18:7
**focusing** [2] - 11:18, 13:23
**follow** [1] - 32:3
**FOR** [4] - 1:19, 2:8, 3:10, 3:13
**foregoing** [1] - 33:21
**formal** [1] - 7:18
**formally** [2] - 6:22, 7:17
**format** [2] - 16:19, 19:11
**formats** [2] - 13:4, 13:5
**forth** [3] - 20:13, 22:9, 27:14
**forward** [2] - 20:23, 21:5

**four** [1] - 14:8
**frame** [9] - 24:2, 28:18, 28:19, 29:9, 29:10, 29:15, 31:7, 31:8, 31:17
**framed** [2] - 25:21, 29:21
**framing** [1] - 28:21
**FRANCISCO** [1] - 2:19
**frank** [1] - 30:20
**frankly** [1] - 24:11
**freedom** [1] - 29:20
**FRIDAY** [1] - 3:14
**Friday** [1] - 32:18
**full** [2] - 30:15, 30:16
**fundamental** [2] - 23:23, 26:9
**fundamentally** [4] - 16:2, 17:24, 24:9, 28:21
**future** [1] - 11:4

## G

**gather** [1] - 17:17
**general** [3] - 7:11, 12:8, 28:23
**generally** [1] - 28:25
**generic** [1] - 25:4
**given** [1] - 14:15
**glosses** [1] - 24:22
**government** [1] - 30:25
**great** [2] - 5:1, 33:3
**GROUP** [1] - 1:22
**guess** [8] - 4:11, 7:21, 14:21, 21:4, 23:5, 24:16, 28:16, 28:17
**GULF** [1] - 1:5
**guys** [6] - 9:16, 18:12, 19:16, 21:12, 32:19, 33:10

## H

**half** [1] - 13:6
**hand** [2] - 13:24, 32:7
**hands** [1] - 8:3
**happy** [5] - 4:24, 19:3, 19:14, 32:4, 32:5
**HB-275** [1] - 2:22
**heading** [1] - 32:12
**hear** [4] - 17:12, 20:21, 27:12, 32:5
**heard** [3] - 13:5, 15:11, 17:15
**HEARD** [1] - 1:14
**hearing** [2] - 8:20,

22:2
**held** [1] - 10:2
**help** [1] - 32:9
**hereby** [1] - 33:20
**Herman** [1] - 5:16
**HERMAN** [21] - 1:19, 1:19, 6:10, 8:21, 9:23, 10:5, 10:12, 11:6, 16:17, 17:7, 18:24, 23:3, 24:1, 25:17, 28:15, 29:23, 31:2, 32:15, 32:17, 33:13
**hi** [1] - 4:7
**HOLDINGS** [1] - 2:12
**Honor** [35] - 4:14, 5:8, 5:18, 7:23, 10:16, 10:20, 15:5, 15:23, 16:17, 17:10, 18:18, 18:24, 19:4, 19:22, 20:21, 21:1, 21:7, 21:20, 22:6, 22:19, 23:4, 23:10, 24:19, 25:9, 26:14, 27:5, 28:7, 28:15, 29:25, 30:12, 31:19, 32:8, 32:15, 32:23, 33:12
**HONORABLE** [1] - 1:14
**hope** [2] - 8:12, 33:13
**hopefully** [3] - 7:7, 7:17, 7:19
**HORIZON** [1] - 1:4
**HOUMA** [1] - 1:24
**hundred** [1] - 30:23
**hypertechnical** [1] - 16:19

## I

**idea** [1] - 30:2
**ideas** [1] - 26:25
**identified** [1] - 27:6
**identifies** [1] - 21:22
**identify** [2] - 6:15, 30:8
**IL** [1] - 2:15
**images** [1] - 12:23
**imposition** [1] - 30:25
**IN** [3] - 1:4, 1:5, 4:4
**in-the-weeds** [1] - 19:1
**INC** [5] - 2:8, 2:9, 2:10, 2:11, 2:13
**incident** [2] - 24:24
**incidents** [3] - 6:14, 6:16, 6:20
**include** [2] - 12:22, 25:25

4

**including** [1] - 16:21
**inclusive** [1] - 19:20
**incorrectly** [1] - 31:17
**individual** [1] - 14:3
**informal** [1] - 7:15
**informally** [1] - 7:5
**information** [8] - 6:21, 6:23, 7:4, 7:12, 7:15, 8:8, 13:9, 15:3
**inquiries** [1] - 19:18
**instance** [2] - 31:4, 31:5
**instead** [1] - 14:5
**intend** [1] - 7:5
**INTERROGATORIES** [1] - 3:14
**interrogatories** [20] - 4:17, 5:20, 6:2, 6:5, 6:12, 6:23, 7:3, 7:10, 7:17, 8:1, 8:5, 9:18, 9:24, 10:15, 16:15, 20:11, 20:23, 28:13, 29:24, 32:18
**interrogatory** [2] - 27:23, 28:19
**interrupt** [2] - 8:21, 24:1
**irrelevant** [5] - 13:6, 13:7, 13:8, 14:18, 14:19
**irrespective** [2] - 13:11, 29:1
**isolated** [1] - 23:21
**issue** [5] - 24:2, 26:1, 27:7, 28:15, 31:6
**issues** [17] - 9:17, 9:18, 11:21, 12:10, 12:18, 13:21, 13:23, 16:19, 19:1, 22:8, 22:12, 22:13, 25:17, 29:18, 31:15, 32:3
**issues"** [1] - 24:5
**IT** [1] - 14:5
**ITEMS** [1] - 3:3
**items** [1] - 4:16
**itself** [1] - 14:18

## J

**January** [18] - 5:22, 5:23, 6:19, 9:18, 10:6, 10:9, 10:10, 20:8, 20:14, 20:17, 20:23, 22:3, 23:1, 23:18, 25:13, 26:19, 32:18
**JANUARY** [1] - 3:14
**Judge** [5] - 4:8, 20:2, 20:13, 22:21, 32:24

**JUDGE** [1] - 1:15
**judgment** [11] - 14:2, 22:13, 23:12, 24:4, 25:6, 25:19, 25:24, 26:6, 27:19, 30:3
**JUDGMENT.............
......** [1] - 3:13
**jumped** [1] - 21:15

## K

**KATZ** [1] - 1:19
**Keegan** [2] - 4:14, 5:8
**KEEGAN** [7] - 2:18, 8:14, 4:21, 5:8, 5:18, 10:20, 20:21
**keep** [4] - 7:21, 9:11, 13:9, 13:10
**kids** [1] - 33:2
**kind** [8] - 7:9, 11:14, 16:8, 21:21, 24:22, 28:3, 32:11, 32:12
**KIRKLAND** [2] - 2:13, 2:17
**knowledge** [2] - 9:25, 14:11
**knows** [1] - 11:19
**KULLMAN** [1] - 2:3

## L

**LA** [4] - 1:20, 1:24, 2:5, 2:22
**lack** [1] - 27:24
**LANGAN** [5] - 2:14, 17:6, 17:10, 18:5, 19:22
**Langan** [1] - 17:10
**language** [2] - 24:25, 25:22
**large** [2] - 18:24, 23:24
**larger** [1] - 21:21
**LASALLE** [1] - 2:15
**last** [4] - 4:12, 7:18, 15:11, 18:19
**late** [1] - 22:3
**latest** [1] - 4:19
**latter** [1] - 22:14
**LAW** [1] - 1:22
**law** [1] - 26:2
**lawyers** [1] - 14:7
**least** [5] - 6:20, 11:17, 12:6, 12:14, 29:2
**leave** [1] - 31:16
**legal** [2] - 28:5, 31:24
**legally** [1] - 29:11
**Legislature** [1] - 10:1

**less** [1] - 14:14
**letter** [2] - 4:21, 13:5
**LETTER...................
.............** [1] - 3:6
**letters** [1] - 18:19
**LEWIS** [1] - 2:3
**liability** [1] - 24:21
**LIFE** [1] - 2:4
**light** [2] - 14:13, 14:20
**limit** [1] - 16:12
**LIMITED** [1] - 2:12
**limited** [3] - 13:21, 24:7, 32:11
**line** [2] - 13:22, 27:12
**list** [1] - 5:9
**listening** [1] - 20:12
**litigation** [1] - 27:13
**locked** [1] - 5:12
**look** [7] - 4:25, 18:16, 20:23, 21:16, 30:6, 30:20, 32:20
**looking** [4] - 6:5, 6:10, 21:5, 28:14
**looks** [2] - 5:20, 5:21
**loss** [2] - 24:23, 28:4
**lost** [1] - 7:3
**LOUISIANA** [2] - 1:1, 1:7
**Louisiana** [2] - 33:20, 33:20
**lovely** [1] - 5:1
**luck** [1] - 33:11

## M

**MAGISTRATE** [1] - 1:15
**mail** [6] - 5:16, 5:19, 6:22, 6:25, 7:6, 13:5
**main** [1] - 16:25
**mandate** [1] - 13:21
**March** [4] - 21:18, 21:19, 21:24, 22:4
**material** [3] - 4:15, 13:25, 31:14
**materials** [1] - 4:12
**Matt** [20] - 7:23, 8:21, 9:17, 10:13, 15:7, 21:20, 22:6, 22:16, 23:10, 24:1, 25:17, 26:25, 28:12, 29:14, 29:18, 31:17, 32:3, 33:1, 33:11, 33:13
**matter** [7] - 11:22, 12:8, 13:10, 26:1, 28:23, 30:16, 33:22
**matters** [1] - 30:16
**MATTHEW** [1] - 2:14
**mea** [1] - 11:20

**mean** [5] - 8:7, 9:4, 17:23, 22:10, 24:13
**means** [1] - 22:23
**MECHANICAL** [1] - 2:24
**medicine** [1] - 9:13
**mentioned** [1] - 18:6
**Merit** [1] - 33:19
**merits** [1] - 11:10
**metadata** [11] - 10:25, 11:4, 12:20, 12:24, 13:4, 13:8, 14:14, 14:18, 16:21, 16:22, 19:11
**MEXICO** [1] - 1:5
**mid** [1] - 30:5
**might** [3] - 15:20, 23:5, 26:22
**mind** [3] - 22:10, 22:11, 30:13
**missing** [1] - 12:20
**mistaken** [1] - 11:14
**mixed** [1] - 30:22
**model** [1] - 10:3
**modify** [1] - 32:5
**money** [2] - 12:2, 12:5
**month** [1] - 8:18
**months** [6] - 14:8, 19:9, 20:5, 23:25, 27:15
**moratoria** [17] - 6:14, 6:16, 6:20, 10:1, 23:13, 23:20, 23:21, 24:4, 24:8, 24:17, 26:10, 27:17, 28:5, 30:8, 30:22, 30:23, 31:1
**moratoria-based** [1] - 28:5
**moratorium** [4] - 29:2, 29:5, 29:6, 29:7
**morning** [3] - 5:12, 32:25, 33:3
**most** [2] - 14:3, 19:19
**motion** [9] - 6:3, 6:18, 15:18, 24:2, 25:23, 25:24, 26:12, 29:9, 29:11
**motion's** [1] - 25:21
**MOTIONS** [1] - 3:13
**motions** [9] - 14:1, 22:18, 23:2, 24:3, 30:3, 31:2, 31:3, 31:9, 31:15
**move** [2] - 5:15, 10:18
**moving** [1] - 12:15
**MR** [63] - 4:14, 4:21, 5:3, 5:8, 5:18, 6:10, 7:23, 8:1, 8:21, 8:24, 9:20, 9:23, 10:5,

10:12, 10:16, 10:20, 11:6, 15:5, 15:7, 16:17, 17:6, 17:7, 17:10, 18:5, 18:18, 18:24, 19:22, 20:2, 20:12, 20:16, 20:21, 20:25, 21:7, 21:10, 21:20, 22:6, 22:19, 22:20, 23:3, 23:10, 23:16, 24:1, 24:19, 25:17, 26:8, 27:5, 27:10, 28:15, 29:23, 29:25, 30:15, 31:2, 31:19, 32:8, 32:15, 32:17, 32:23, 32:24, 33:3, 33:6, 33:12, 33:13, 33:14

## N

**narrow** [3] - 13:25, 22:8, 30:6
**nearly** [1] - 5:9
**necessarily** [2] - 6:1, 6:3
**necessary** [2] - 15:21, 22:17
**need** [19] - 8:11, 9:12, 12:4, 13:25, 14:25, 16:12, 16:13, 16:14, 16:15, 17:19, 19:11, 19:12, 21:12, 25:10, 27:12, 28:9, 30:3, 32:2
**needs** [2] - 13:9, 16:6
**negotiated** [2] - 13:17, 17:1
**never** [3] - 14:19, 17:16, 18:9
**NEW** [4] - 1:7, 1:20, 2:5, 2:22
**new** [4] - 11:22, 16:7, 16:10, 17:6
**newfound** [1] - 17:25
**next** [8] - 4:19, 7:11, 8:18, 8:19, 14:8, 26:15, 32:6, 33:8
**NEXT** [1] - 3:16
**nine** [1] - 5:10
**NO** [1] - 1:6
**NORTH** [4] - 2:9, 2:10, 2:12, 2:13
**nothing** [1] - 32:9
**notion** [1] - 9:11
**November** [1] - 30:5
**Number** [2] - 15:16, 15:17
**number** [2] - 13:21, 20:5

numbered [1] - 33:22

## O

O'KEEFE [1] - 1:20
oath [1] - 25:3
obviously [3] - 26:24, 27:1, 28:8
occur [1] - 15:15
occurred [1] - 29:1
OF [4] - 1:1, 1:5, 1:14, 3:7
OFFICIAL [1] - 2:21
Official [2] - 33:20, 33:24
oil [1] - 6:14
OIL [2] - 1:4, 1:4
old [1] - 16:7
ON [3] - 1:5, 3:14, 3:16
once [2] - 4:25, 15:14
one [11] - 4:16, 4:22, 7:17, 7:18, 12:6, 15:25, 16:1, 16:24, 17:11, 23:7, 30:16
ones [2] - 15:10, 17:18
OPA [7] - 1:14, 6:8, 6:14, 9:25, 11:15, 15:8, 23:14
operated [1] - 31:13
opinion [1] - 27:2
Order [2] - 17:14, 17:19
order [1] - 21:22
ORDER......................
............... [1] - 3:11
orders [1] - 16:5
original [1] - 13:19
originally [1] - 23:11
ORLEANS [4] - 1:7, 1:20, 2:5, 2:22
orphan [1] - 15:2
orphans [1] - 12:16
otherwise [1] - 6:15
ourselves [1] - 16:9
outline [1] - 6:19
overlap - 26:20
overly [1] - 27:23
overruled [1] - 13:14
own [1] - 12:1

## P

p.m [1] - 33:15
P.M [1] - 1:7
PAGE [1] - 3:3
page [1] - 16:24
PAN [1] - 2:4
paper [2] - 12:23,

16:22
part [4] - 6:12, 19:2, 30:18, 31:9
partial [6] - 22:13, 23:12, 25:6, 26:6, 27:19, 30:2
participated [1] - 15:9
particular [1] - 30:8
particularly [1] - 27:5
parties [1] - 17:13
partly [1] - 9:24
past [1] - 13:15
path [2] - 27:24, 31:25
patience [1] - 16:5
PAUL [1] - 2:4
Paul [4] - 4:16, 4:23, 5:2, 5:9
pending [3] - 8:1, 11:25
people [3] - 19:5, 23:4, 27:13
Pepper [3] - 33:19, 33:23, 33:23
PEPPER [1] - 2:21
percent [2] - 15:1, 30:23
perfect [1] - 22:20
perfectly [1] - 19:14
period [1] - 32:11
periods [1] - 21:23
permitoria [7] - 23:13, 23:20, 23:21, 24:5, 24:8, 27:17, 30:8
permitorium [3] - 29:2, 29:4, 29:5
permits [1] - 31:1
person [1] - 14:5
personal [1] - 9:24
personnel [1] - 21:8
perspective [4] - 12:14, 16:12, 18:19, 26:17
perspectively [1] - 17:6
Phase [1] - 13:18
picking [1] - 27:11
picture [1] - 18:25
piecemeal [1] - 7:21
place [7] - 10:24, 17:3, 26:7, 27:15, 29:14, 32:10
plaintiff [6] - 8:24, 8:25, 23:18, 24:10, 25:3, 30:7
plaintiffs [10] - 17:15, 17:21, 17:25, 18:9, 22:2, 22:8, 22:24, 24:15, 27:2, 27:16
PLAINTIFFS [1] - 1:19
plaintiffs' [1] - 24:23

plan [2] - 5:11, 13:19
point [10] - 4:15, 5:24, 8:8, 8:13, 11:14, 11:17, 25:23, 28:2, 31:18
portion [1] - 27:16
posed [3] - 6:25, 7:1, 31:23
position [2] - 16:9, 19:13
posture [4] - 9:3, 23:17, 25:4, 25:11
POYDRAS [2] - 2:5, 2:22
practical [4] - 11:22, 17:8, 26:17, 28:23
predominantly [1] - 29:3
premise [1] - 15:15
prepared [1] - 22:4
presentment [1] - 6:7
presumably [1] - 25:12
pretend [1] - 17:24
pretrial [1] - 16:4
Pretrial [3] - 17:14, 17:19
pretty [1] - 14:2
prevent [1] - 29:18
previous [1] - 11:22
previously [2] - 12:17, 20:3
prima [4] - 24:11, 24:14, 26:7, 31:4
principal [1] - 13:11
problem [2] - 15:24, 16:5
problems [4] - 10:25, 11:3, 14:9
procedural [1] - 26:3
proceeding [1] - 6:8
PROCEEDINGS [3] - 1:14, 2:24, 4:1
proceedings [2] - 33:15, 33:22
process [3] - 11:8, 15:24, 32:9
PRODUCED [1] - 2:25
produced [1] - 20:3
PRODUCTION [2] - 2:8, 2:11
production [6] - 16:8, 18:13, 18:15, 20:1, 20:7, 20:8
productions [4] - 11:4, 11:15, 17:16, 17:22
PRODUCTS [1] - 2:13
profits [1] - 7:4
program [1] - 27:8

progress [1] - 20:22
proposal [1] - 22:1
propose [1] - 32:4
proposition [1] - 27:14
protocol [1] - 10:24
provide [6] - 7:5, 12:6, 15:20, 15:22, 19:3, 19:14
provided [1] - 4:12
providing [2] - 7:21, 11:11
PSC [2] - 17:17, 32:6
PTO [6] - 11:1, 13:11, 13:17, 15:17, 16:23, 16:24
pull [1] - 26:22
purpose [2] - 23:6, 24:5
purposes [3] - 17:2, 22:7, 27:25
put [5] - 11:14, 19:10, 29:20, 32:8, 33:7
putting [1] - 22:8

## Q

questions [6] - 6:24, 6:25, 7:1, 11:25, 26:19
quite [2] - 6:8, 15:9
quote [4] - 14:9, 14:10, 24:4, 24:7

## R

raised [2] - 12:10, 15:10
raising [1] - 29:18
rather [2] - 23:13, 26:14
RE [1] - 1:4
reach [1] - 4:16
reacting [1] - 28:17
read [1] - 5:18
real [1] - 4:17
realize [1] - 32:20
really [6] - 15:21, 16:8, 23:6, 23:8, 24:11, 25:5
REALTIME [1] - 2:21
Realtime [2] - 33:19, 33:24
reason [4] - 12:3, 15:2, 30:9, 30:11
reasons [2] - 16:8, 16:24, 16:25
rebut [1] - 31:4

receiving [1] - 9:4
recent [1] - 19:19
record [2] - 9:13, 33:21
RECORDED [1] - 2:24
references [1] - 6:11
Regan [3] - 15:7, 18:8, 21:20
REGAN [26] - 2:14, 7:23, 8:1, 8:24, 9:20, 10:16, 15:5, 15:7, 18:18, 21:20, 22:6, 22:19, 23:10, 23:16, 24:19, 26:8, 27:5, 27:10, 29:25, 30:15, 31:19, 32:8, 32:23, 33:3, 33:12, 33:14
regard [1] - 18:14
regarding [1] - 18:13
Registered [1] - 33:19
relate [1] - 23:20
related [2] - 22:12, 30:22
relates [1] - 30:13
RELATES [1] - 1:9
relating [1] - 7:3
relatively [1] - 4:15
relevant [5] - 13:24, 14:4, 14:14, 22:12, 31:14
relief [1] - 15:18
rely [1] - 25:22
remain [1] - 21:2
remaining [2] - 20:6, 20:8
remember [1] - 20:14
remembered [1] - 27:21
report [8] - 5:1, 5:4, 5:9, 6:4, 7:13, 10:7, 10:10, 22:25
REPORT......................
............... [1] - 3:12
Reporter [6] - 33:19, 33:19, 33:20, 33:24, 33:24
REPORTER [2] - 2:21, 2:21
REPORTER'S [1] - 33:18
reports [6] - 14:1, 22:2, 23:18, 24:6, 25:11, 26:19
representative [1] - 5:7
REPRESENTATIVE...
.. [1] - 3:7
representatives [1] - 21:13
reproduce [1] - 13:3

**reproduced** [1] - 14:11
**request** [2] - 28:12, 29:24
**requested** [1] - 7:8
**requests** [2] - 9:1, 16:4
**require** [1] - 25:14
**required** [1] - 25:7
**respect** [4] - 7:2, 12:7, 20:13, 22:8
**respectful** [1] - 30:1
**respectfully** [1] - 19:14
**respond** [3] - 5:11, 6:18, 22:4
**responding** [1] - 13:10
**response** [8] - 6:19, 9:3, 18:14, 18:22, 18:23, 19:18, 19:19, 25:14
**responses** [5] - 5:25, 9:17, 10:15, 19:19, 20:11
**result** [1] - 24:24
**review** [1] - 19:20
**reviewed** [1] - 20:6
**revise** [1] - 7:12
**revisited** [1] - 16:24
**RIG** [1] - 1:4
**RMR** [2] - 2:21, 33:23
**road** [1] - 8:9
**roll** [1] - 4:10
**ROOM** [1] - 2:22
**round** [1] - 21:13
**rule** [1] - 19:4
**rules** [2] - 17:3, 17:23
**run** [1] - 32:5

**S**

**s/Cathy** [1] - 33:23
**SALLY** [1] - 1:14
**SAN** [1] - 2:19
**sat** [1] - 25:16
**satisfied** [1] - 18:22
**Saturday** [1] - 32:20
**scanned** [2] - 12:23, 20:4
**schedule** [14] - 5:6, 8:12, 9:10, 22:1, 26:13, 26:16, 28:8, 28:10, 30:13, 30:15, 30:16, 30:18, 32:4, 32:7
**SCHEDULE** [1] - 3:7
**scheduling** [2] - 21:22, 27:25

**SCHEDULING** [1] - 3:11
**second** [3] - 7:24, 16:1, 31:5
**section** [2] - 31:23, 31:24
**see** [15] - 5:24, 10:17, 14:9, 14:10, 14:13, 14:20, 14:25, 19:17, 20:1, 21:4, 24:3, 24:9, 24:13, 28:13
**seem** [2] - 14:16, 23:24
**segregated** [1] - 27:3
**semantic** [1] - 28:17
**send** [3] - 6:22, 21:25, 28:13
**sense** [5] - 7:14, 10:11, 13:12, 22:20, 28:16
**sent** [4] - 4:23, 5:9, 5:16, 6:11
**served** [1] - 13:23
**set** [2] - 14:1, 17:3
**sets** [1] - 17:2
**several** [2] - 6:25, 12:10
**shall** [1] - 17:7
**short** [3] - 8:7, 9:5, 13:22
**showing** [1] - 18:20
**SHUSHAN** [1] - 1:14
**side** [1] - 7:5
**silly** [1] - 7:10
**similar** [2] - 5:9, 15:11
**simply** [2] - 6:13, 17:25
**simultaneously** [2] - 8:24, 18:2
**sit** [2] - 13:15, 18:7
**sitting** [1] - 27:8
**situation** [2] - 14:5, 19:9
**Slade** [1] - 10:24
**small** [2] - 4:16, 14:24
**snuff** [1] - 18:12
**solely** [1] - 19:9, 26:10
**solicit** [1] - 27:1
**someone** [1] - 27:5
**soon** [2] - 7:6, 9:19
**sorry** [5] - 8:21, 13:2, 18:3, 24:1, 32:17
**sounds** [1] - 19:19
**source** [1] - 28:4
**Speaking** [1] - 8:24
**speaking** [1] - 18:1
**specific** [6] - 6:16, 25:2, 27:17, 31:10, 31:12
**specifically** [3] -

22:12, 25:4, 27:6
**specifics** [2] - 7:3, 25:20
**specify** [1] - 27:16
**spend** [1] - 7:10
**spent** [1] - 10:23
**spill** [7] - 24:10, 24:16, 29:1, 29:4, 29:5, 29:8
**SPILL** [1] - 1:4
**squared** [1] - 4:18, 9:7
**stand** [2] - 20:1, 20:10
**standard** [2] - 10:2, 24:21
**standpoint** [1] - 9:2
**started** [1] - 11:17
**starting** [1] - 15:16
**State** [1] - 33:19
**state** [1] - 9:12
**statement** [2] - 5:3, 9:13
**STATES** [2] - 1:1, 1:15
**States** [2] - 33:20, 33:25
**STATUS** [1] - 1:14
**statutory** [3] - 24:25, 25:22, 29:18
**staying** [1] - 26:13
**stays** [1] - 25:4
**STENOGRAPHY** [1] - 2:24
**step** [1] - 9:21
**STEPHEN** [1] - 1:19
**steps** [1] - 11:2
**STERBCOW** [3] - 2:3, 2:4, 5:3
**Steve** [16] - 5:16, 5:19, 6:9, 10:22, 15:9, 17:6, 17:12, 18:6, 18:13, 18:14, 18:21, 19:18, 24:21, 27:20, 30:9, 32:17
**still** [3] - 19:1, 19:7, 21:10
**stopped** [3] - 8:22, 8:25
**story** [1] - 17:15
**STREET** [3] - 2:5, 2:18, 2:22
**strict** [1] - 9:10
**strike** [1] - 18:17
**strong** [1] - 6:18
**stuff** [3] - 14:11, 15:20, 18:25
**stunned** [2] - 16:9, 17:12
**subject** [1] - 13:13
**subset** [1] - 14:24
**substantive** [2] - 4:18, 26:14

**substantively** [2] - 28:1, 30:7
**suffered** [1] - 31:12
**suggest** [1] - 24:3
**suggested** [1] - 14:21
**SUITE** [2] - 1:23, 2:5
**suits** [1] - 33:4
**SUMMARY** [1] - 3:13
**summary** [9] - 14:2, 22:13, 23:12, 24:4, 25:6, 25:19, 25:23, 27:19, 30:2
**supplement** [10] - 5:21, 5:23, 6:22, 7:10, 7:12, 7:17, 7:19, 10:5, 10:6, 20:16
**SUPPLEMENTAL** [1] - 3:14
**supplemental** [1] - 32:18
**supplemented** [1] - 7:20
**supplementing** [1] - 5:19
**supplements** [1] - 7:22
**support** [1] - 31:3
**supposed** [3] - 4:23, 16:2, 31:9
**susceptible** [1] - 25:19
**suspect** [1] - 15:1
**suspicion** [1] - 6:18
**swings** [1] - 17:23
**switch** [1] - 15:23
**sworn** [1] - 10:15

**T**

**target** [3] - 12:15, 21:12, 32:13
**targeted** [1] - 31:6
**team** [2] - 10:22, 12:1
**teased** [1] - 28:25
**technical** [2] - 11:3, 14:17
**TELEPHONE** [1] - 4:4
**terms** [6] - 10:2, 11:10, 18:25, 25:20, 26:16
**test** [6] - 6:8, 11:15, 13:19, 15:13, 15:25, 22:7
**TEST** [1] - 1:14
**testing** [1] - 27:14
**tests** [1] - 15:8
**THE** [51] - 1:4, 1:5, 1:14, 1:19, 3:7, 4:7,

4:9, 4:20, 5:1, 5:5, 5:14, 6:9, 7:25, 9:16, 9:22, 10:4, 10:8, 10:13, 10:17, 11:5, 15:6, 18:3, 18:11, 18:21, 19:16, 19:24, 20:10, 20:15, 20:19, 20:24, 21:2, 21:9, 21:11, 21:25, 22:15, 22:22, 23:15, 26:24, 27:9, 28:12, 29:22, 30:14, 30:20, 31:17, 32:2, 32:14, 32:16, 32:19, 32:25, 33:4, 33:7
**theory** [1] - 28:21
**therefore** [2] - 24:18, 28:19
**thinking** [1] - 22:3
**third** [1] - 15:19
**THIS** [1] - 1:9
**thoughts** [2] - 19:15, 28:8
**three** [6] - 7:13, 15:25, 22:24, 24:15, 25:12, 27:15
**tied** [2] - 6:2, 6:3
**timely** [1] - 8:6
**timetable** [1] - 13:19
**timing** [1] - 5:19
**TO** [1] - 1:9
**today** [7] - 4:24, 5:12, 6:17, 7:8, 13:15, 27:15, 30:11
**together** [1] - 32:8
**tomorrow** [1] - 5:12
**toward** [1] - 32:12
**towards** [2] - 28:2, 31:6
**transcript** [1] - 33:21
**TRANSCRIPT** [2] - 1:14, 2:24
**true** [2] - 28:4, 33:21
**try** [1] - 28:24
**trying** [14] - 11:8, 11:16, 11:24, 22:10, 23:16, 26:22, 28:3, 28:9, 28:11, 29:17, 29:25, 30:6, 30:24, 31:20
**turn** [1] - 26:24
**two** [1] - 4:16

**U**

**ultimately** [9] - 9:5, 9:14, 15:22, 16:1, 16:6, 16:10, 16:12, 28:3, 30:17

**OFFICIAL TRANSCRIPT**

**under** [3] - 9:9, 17:1, 25:3
**underlying** [1] - 6:6
**understood** [1] - 31:25
**undertake** [1] - 19:17
**unfair** [2] - 17:21, 17:24
**unilateral** [1] - 18:8
**UNITED** [2] - 1:1, 1:15
**United** [2] - 33:20, 33:25
**unquote** [4] - 14:9, 14:10, 24:4, 24:8
**up** [8] - 5:17, 18:12, 22:25, 24:16, 27:14, 29:9, 29:10, 32:3
**update** [2] - 5:17, 20:3

## V

**vagaries** [2] - 14:3, 31:12
**vendor** [2] - 11:22
**vendors** [1] - 11:20
**verified** [3] - 8:4, 8:15, 9:17
**versus** [1] - 27:7
**VIA** [1] - 4:4
**via** [1] - 7:5
**view** [4] - 11:14, 11:17, 25:23, 31:18
**VOICES** [1] - 4:8
**volume** [2] - 13:1, 13:2

## W

**Wadleigh** [11] - 5:15, 6:6, 10:19, 10:22, 11:1, 11:14, 20:13, 20:17, 21:12, 25:16, 31:22
**WADLEIGH................ ........................... [1] - 3:8
**wait** [1] - 9:15
**waiting** [6] - 8:8, 9:1, 9:6, 9:11, 9:12, 19:7
**wants** [6] - 7:20, 13:3, 29:10, 29:15, 31:7, 33:1
**waste** [1] - 14:16
**wasteful** [2] - 13:12, 19:13
**ways** [2] - 17:23, 31:12
**WEDNESDAY** [3] - 1:7, 3:16, 4:2

**Wednesday** [1] - 33:8
**weeds** [1] - 19:1
**week** [6] - 4:19, 8:19, 20:9, 22:1, 26:16, 32:6
**week's** [1] - 4:12
**weeks** [2] - 7:11, 7:13
**whatsoever** [1] - 18:10
**WHEREUPON** [1] - 33:15
**whole** [1] - 23:24
**Williams** [1] - 20:2
**WILLIAMS** [11] - 1:22, 1:23, 20:2, 20:12, 20:16, 20:25, 21:7, 21:10, 22:20, 32:24, 33:6
**wise** [1] - 14:16
**witnesses** [2] - 5:10, 26:21
**word** [1] - 20:25
**works** [3] - 30:17, 32:23, 33:6
**worry** [1] - 17:19
**wrestle** [1] - 26:3
**wrestling** [1] - 26:5
**writ** [1] - 23:23
**writing** [1] - 18:15
**written** [2] - 5:25, 18:22

## Y

**year** [7] - 8:2, 8:8, 8:20, 8:22, 15:11, 18:19
**years** [3] - 6:7, 8:6, 13:17
**yesterday** [1] - 5:19
**you-all** [1] - 32:22

**OFFICIAL TRANSCRIPT**