ADDENDUM A

TO THE OPA TEST CASE PLAINTIFFS' OPPOSITION TO BP'S RENEWED MOTION TO DISMISS

# **OPA LEGISLATIVE HISTORY**

<u>Legislative History of OPA 90 in the U.S. House of Representatives</u>

On March 16, 1989, House Resolution 1465 ("H.R. 1465") was introduced to the U.S. House of Representatives by Representative Walter Jones (D-NC).  H.R. 1465 became the principal legislative vehicle in the U.S. House of Representatives for consideration of the Oil Pollution Act of 1990 ("OPA 90").[1]

On March 16, 1989, H.R. 1465 was jointly referred to the House Merchant Marine and Fisheries Committee and the House Public Work and Transportation Committee.[2]

The March 16, 1989 version of H.R. 1465 (Sect. 102(a)(1)) stated that "the responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the waters of the exclusive economic zone is *jointly, severally, and strictly liable* for the removal costs and damages specified in paragraph (2) that *arise out of* or directly *result from* such incident."[3]

The "removal costs" referred to in the liability section of the March 16, 1989 version of H.R. 1465 "are removal costs consistent with the national contingency plan, which shall be recoverable by any claimant."[4]

The "Defenses to Liability" section of the March 16, 1989 version of H.R. 1465 stated that "There is no liability under subsection (a) …as to a particular claimant, to the extent that the incident is caused by the negligence of that claimant."

On March 24, 1989, the oil tanker EXXON VALDEZ ran aground on Bligh Reef in Alaska's Prince William Sound spilling 10.8 million gallons of crude oil.[5]

---

[1] Bill Summary & Status, 101st Congress (1989-1990), H.R. 1465, All Congressional Actions with Amendments,; Original text of H.R. 1465 as introduced to the U.S. House of Representatives on March 16, 1989.

[2] Bill Summary & Status, 101st Congress (1989-1990), H.R. 1465, All Congressional Actions with Amendments.

[3] See Section 102(a)(1) of the original text of H.R. 1465 as introduced to the U.S. House of Representatives on March 16, 1989.

[4] See Section 102(a)(2)(A) of the original text of H.R. 1465 as introduced to the U.S. House of Representatives on March 16, 1989.

[5] The Exxon Valdez Oil Spill – A Report to the President, May 1989 (**Ex. T**); Notable Oil Spills In U.S. Waters – Calendar Years 1989-2011, U.S.C.G.; USCG Chronology of Exxon Valdez spill.

On June 21, 1989, The House Merchant Marine and Fisheries Committee, one of two primary committees of jurisdiction in the House, became the first legislative committee to act on H.R. 1465.[6]

On June 21, 1989, the House Merchant Marine and Fisheries Committee expanded Section 102(a)(2)(A) of H.R. 1465 by adding that the Responsible Party was liable for any removal costs that were "reasonably consistent" with the National Contingency Plan.  The original March 16, 1989 version of Section 102(a)(2)(A) did not include the word "reasonably."[7]

On August 3, 1989, the House Public Works and Transportation Committee, the other primary Committee of Jurisdiction in the House, held a Mark-up Session for H.R. 1465.[8]

On August 3, 1989, the House Public Works and Transportation Committee broadened Section 102(a)(1) to include the class of injuries "which arise out of or directly result from such incident and for the damages specified in paragraph (2) which are proximately caused by such incident." The same section in the earlier June 21, 1989 version from the House Merchant Marine and Fisheries Committee did not include proximate cause language.   It included the class of injuries "that arise out of or directly result from such incident."[9]

On August 3, 1989, the House Public Works and Transportation Committee modified Section 102(b)(2)(B) to broaden the class of claimants by dropping any reference to "particular" as a modifier of the word "claimant."  The original March 16, 1989 version of this section previously referred to a "particular claimant."[10]

On August 3, 1989, the House Public Works and Transportation Committee modified Section 102(a)(2)(B)(iv) to increase the period that governments could collect lost revenues under this section from "a period not to exceed one year" to "a period not to exceed two years."[11]

On August 3, 1989, the House Public Works and Transportation Committee expanded the definition of who could recover lost profits or earnings under Section 102(a)(2)(B)(v) to add "prior profits and earnings" as a means of proof.[12]

---

[6] Bill Summary & Status, 101st Congress (1989-1990), H.R. 1465, All Congressional Actions with Amendments.

[7] Compare Section 102(a)(2)(A) of H.R. 1465 as introduced on March 16, 1989 with Section 102 of the Committed reported version from June 21, 1989.

[8] Bill Summary & Status, 101st Congress (1989-1990), H.R. 1465, All Congressional Actions with Amendments.

[9] Compare Section 102(a)(1) in H.R. 1465 as reported by the Committee on Merchant Marine and Fisheries on June 21, 1989 with Section 102(a)(1) in H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989.

[10] Compare Section 102(a)(2)(A) of H.R. 1465 as introduced on March 16, 1989 with Section 102 of the Committee reported version from August 3, 1989.

[11] Compare Section 102(a)(2)(B)(iv) in H.R. 1465 as reported by the Committee on Merchant Marine and Fisheries on June 21, 1989 with Section 102(a)(2)(B)(iv) in H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989.

[12] Compare Section 102(a)(2)(B)(v) in H.R. 1465 as reported by the Committee on Merchant Marine and Fisheries on June 21, 1989 with Section 102(a)(2)(B)(v) in H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989.

On August 3, 1989, the House Public Works and Transportation Committee modified Section 102(a)(4)(A) – the section governing the liability of third parties – to protect actions "described in" the Defenses To Liability section.  The previous version of the same section protected actions "in accordance with" the Defenses To Liability Section.[13]  At the same time, the House Public Works and Transportation Committee further modified Section 101(a)(4)(A) to add that the third party or parties "shall be treated as the responsible party or parties for purposes of determining liability" - instead of the previous language which read "such third parties shall be liable under this section."[14]

On October 3, 1989, H.R. 3394 was introduced into the House of Representatives.[15]  H.R. 3394 represented a compromise between members of the House who differed on the definition of who should be compensated under the Act.

On October 31, 1989, the Rules Committee reported House Resolution 277 ("H.R. 277") to the House.  H.R. 277 represented a proposal by the Rules Committee to adopt the text of the amended H.R. 3394 in place of the text of the August 3, 1989 version of H.R. 1465 by the House Public Works and Transportation Committee.[16]

On November 1, 1989, H.R. 277 passed in the House.[17]  When H.R. 277 passed, the text of H.R. 3394 became the original text of H.R. 1465 for Floor consideration.[18]

H.R. 3394 made several changes to the previous version of H.R. 1465 reported by the Public Works and Transportation Committee.[19]

H.R. 3394 expanded liability to be subject to the full provisions of the full act, not just the liability section (as previous versions of H.R. 1465 had done).[20]

H.R. 3394 changed the standard of liability to damages that "directly result" from the discharge of oil.  The standard of liability in the prior version of H.R. 1465 was for damages "arising from" the discharge of oil.[21]

---

[13] Compare Section 102(a)(5)(A) in H.R. 1465 as reported by the Committee on Merchant Marine and Fisheries on June 21, 1989 with Section 102(a)(4)(B)(i) in H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989.
[14] *Id*.
[15] H.R. 3394 introduced into the House on October 3, 1989.
[16] Bill Summary & Status, 101st Congress (1989-1990), H.R. 1465, All Congressional Actions.
[17] *Id*.
[18] *Id*.
[19] Compare Sect. 102 of H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989 with Sect. 1002 of H.R. 3394 as reported by the full House of Representatives on October 3, 1989.
[20] Compare Sect. 102 of H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989 with Sect. 1002 of H.R. 3394 as reported by the full House of Representatives on October 3, 1989.
[21] Compare Sect. 102 of H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989 with Sect. 1002 of H.R. 3394 as reported by the full House of Representatives on October 3, 1989.

H.R. 3394 expanded the liability language of the act by making cargo owners liable for spills under the Act.   No such provision existed in previous versions of H.R. 1465.[22]

H.R. 3394 added "foreign trustees" to the list of trustees who could claim natural resource damages under the act.   No such provision for foreign trustees existed in previous versions of H.R. 1465.[23]

H.R. 3394 expanded the "Revenues" clause under the "Damages" section by dropping the reference to "net loss" (found in the previous version of H.R. 1465) with simply "loss" of "taxes, royalties, rents, etc…"

The "Revenues" clause in H.R. 3394 also dropped the two-year limitation on impact awards found in the previous version of H.R. 1465.[24]

H.R. 3394 further expanded the "Revenues" clause under the "Profits and Earning Capacity" section by dropping the parenthetical regarding "based on prior earnings."  The "25 percent" base threshold on earnings was also eliminated.[25]

H.R. 3394 excluded "public vessel[s]" from coverage under the Act.  The previous version of H.R. 1465 did not exclude public vessels.[26]

H.R. 3394 added an exclusion from liability if the Responsible Party was acting under the direction of the President pursuant to the Federal Water Pollution Control Act.   No such provision exists in the previous version of H.R. 1465.[27]

H.R. 3394 dropped the reference to "gross negligence or willful misconduct" of the Responsible Party as a defense by a third party who might also be responsible.[28]

---

[22] Compare Sect. 102(a) of H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989 with Sect. 1002(a)(2) of H.R. 3394 as reported by the full House of Representatives on October 3, 1989.

[23] Compare Sect. 102(a)(2)(A) of H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989 with Sect. 1002(b)(2)(A) of H.R. 3394 as reported by the full House of Representatives on October 3, 1989.

[24] Compare Sect. 102(a)(2)(B)(iv) of H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989 with Sect. 1002(b)(2)(D) of H.R. 3394 as reported by the full House of Representatives on October 3, 1989.

[25] Compare Sect. 102(a)(2)(B)(v) of H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989 with Sect. 1002(b)(2)(E) of H.R. 3394 as reported by the full House of Representatives on October 3, 1989.

[26] Compare Sect. 102(a)(3) of H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989 with Sect. 1002(c)(2) of H.R. 3394 as reported by the full House of Representatives on October 3, 1989.

[27] Compare Sect. 102(a)(4) of H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989 with Sect. 1002(d)(B) of H.R. 3394 as reported by the full House of Representatives on October 3, 1989.

[28] Compare Sect. 102(b)(2)(A) of H.R. 1465 as reported by the Committee on Public Works and Transportation on August 3, 1989 with Sect. 1003(B) of H.R. 3394 as reported by the full House of Representatives on October 3, 1989.

On November 9, 1989, H.R. 1465 passed in the House of Representatives with a vote of 375-5 (Roll No. 345).[29]

The text of the final November 9, 1989 passage of H.R. 1465 adopted the entire text of H.R. 3394.  The only pertinent amendment that passed was added as Section 1002(b)(2)(F) to the final version of H.R. 1465.  Section 1002(b)(2)(F) insured that costs associated with increased public services would be recoverable under OPA.

Legislative History of OPA 90 in the U.S. Senate

On April 4, 1989 – 11 days after the oil tanker EXXON VALDEZ ran aground on Bligh Reef in Alaska's Prince William Sound – Senate Majority Leader and Environment and Public Works Water Subcommittee Chairman George Mitchell (D-ME) introduced Senate Bill 686.[30]

S. 686 was introduced 19 days after H.R. 1465 was introduced in the House of Representatives.  Both bills sought to improve Federal laws by providing compensation and establishing a more comprehensive liability scheme for oils spills in U.S. waters.[31]

On July 27, 1989, the Senate Environment and Public Works Committee reported S. 686 with amendments to the full U.S. Senate.[32]

The Committee made relatively few changes between the original version of S. 686 and the July 27, 1989 version of S. 686 reported to the Senate.[33]

The only significant change made in the July 27, 1989 version of S. 686 was an expansion to the "Liability" section.  Specifically, the liability section was expanded to include making the Responsible Party liable for the "mitigation" of damage to natural resources.  The previous version of S. 686 did not include any language requiring the Responsible Party to mitigate damage to natural resources.[34]

On August 4, 1989, the Senate considered S. 686.[35]

---

[29] H.R. 1465 Roll Call Vote (Roll No. 345); Bill Summary & Status, 101st Congress (1989-1990), H.R. 1465, All Congressional Actions with Amendments; H.R. 1465 as engrossed (passed) in the House of Representatives on November 9, 1989.

[30] Bill Summary & Status, 101st Congress (1989-1990), S. 686; S. 686 as Introduced to the Senate on April 4, 1989.

[31] S. 686 as Introduced to the Senate on April 4, 1989; H.R. 1465 as introduced to the House of Representatives on March 16, 1989.

[32] S. 686 as Reported on July 27, 1989 in the Senate.

[33] Compare S. 686 as Introduced to the Senate on April 4, 1989 with S. 686 as Reported to the Senate on July 27, 1989.

[34] Compare Sect. 102(a)(2)(C) in S. 686 as Introduced to the Senate on April 4, 1989 with Sect. 102(a)(2)(C) in S. 686 as Reported to the Senate on July 27, 1989.

[35] Bill Summary & Status, 101st Congress (1989-1990), S. 686 – All Congressional Actions.

On August 4, 1989, S. 686 was engrossed (passed) in the Senate with amendments by a yea-nay vote of 99-0.[36]

Numerous amendments were offered as the Senate considered S. 686; however, none directly affecting the liability standard or defenses to liability were passed.[37]

Legislative History of OPA 90 as agreed upon by the U.S. House of Representatives and the U.S. Senate

After H.R. 1465 passed in the House on November 9, 1989, representatives of the House and Senate began meeting to see if they could reconcile the differences between H.R. 1465 and S. 686. The conference took seven months to complete (November 10, 1989 – July 31, 1990) and included three formal meetings of the conferees and numerous smaller meetings by key representatives from the House and Senate.[38]

On August 1, 1990, the House/Senate Conference Report was completed and memorialized with the filing of H.R. Conference Report 101-653. It was entitled "Oil Pollution Act of 1990."[39]

On August 2, 1990, the Senate agreed to the Conference Report by a yea-nay vote of 99-0.[40]

On August 4, 1990, the House of Representatives agreed to the Conference Report by a vote of 360-0.[41]

On August 18, 1990, the Conference Report bill was sent to the President who signed it into law (Public Law 101-380) as the Oil Pollution Act of 1990.[42]

The Conference Report bill that became OPA 90 included the "Outer Banks Protection Act." This provision of OPA 90 imposed an oil drilling and exploration moratorium off the coast of North Carolina.[43]

The Oil Pollution Act of 1990 was later codified as 33 U.S.C. §2701-§2762.

---

[36] Bill Summary & Status, 101st Congress (1989-1990), S. 686 – All Congressional Actions; S. 686 as passed in the Senate on August 4, 1989.
[37] Bill Summary & Status, 101st Congress (1989-1990), S. 686 – All Congressional Actions.
[38] Bill Summary & Status, 101st Congress (1989-1990), H.R. 1465 – All Congressional Actions.
[39] *See* H.R. Conference Report 101-653.
[40] Bill Summary & Status, 101st Congress (1989-1990), H.R. 1465 – All Congressional Actions; U.S. Senate Roll Call Vote 101st Congress, August 2, 1990.
[41] *Id*.
[42] Bill Summary & Status, 101st Congress (1989-1990), H.R. 1465 – All Congressional Actions.
[43] *See* Sect. 6003 of the H.R. Conference Report 101-653.

Differences between OPA 90 and H.R. 1465 as passed in the House

The House/Senate compromise memorialized in H.R. Conf. Report 101-653 includes a section entitled "Joint Explanatory Statement of The Committee of Conference." This section explains in detail the differences between H.R. 1465, S. 686, and the Conference substitute bill (e.g., Conference Report 101-653) both houses agreed to.[44]

While the Conference Report used H.R. 1465 (as passed in the House) as base text for the "Elements of Liability" and the "Defenses To Liability" sections in OPA 90, significant changes were made to both sections.[45]

The Conference Report dropped the reference to "joint and several" liability found in the version of H.R. 1465 passed by the House.[46]

The Conference Report modified the liability language "directly result from" found in the version of H.R. 1465 passed by the House in favor of broader "resulting from" language.[47]

The Conference Report added Section 1003(a)(3) to the final version OPA 90. This addition - which was not included in the version of H.R. 1465 as passed in the House – added foreseeability language to the Act. Specifically, Section 1003(a)(3) was added so that the Responsible Party could not claim that the injury was caused solely by the actions of a third party unless the Responsible Party had taken concrete steps to prevent damages that resulted from third party actions or omissions that were "foreseeable."[48]

Section 1003(b) of the Conference Report – the "Defenses As To Particular Claimant" section - added the concept that a Responsible Party is not liable for damages caused by "gross negligence or willful misconduct" of the claimant. The same section in the version of H.R. 1465 passed in the House stated that the Responsible Party is not liable to the extent that the incident is caused by the "negligence" of the claimant.[49]

---

[44] Conference Report 101-653, 101st Congress (1989-1990), Oil Pollution Act of 1990.

[45] Compare Sections. 1002 and 1003 of H.R. 1465 as passed in the House with Sections 1002 and 1003 of the Conference Report that the President signed into law.

[46] Compare Sect. 1002(a) of H.R. 1465 as passed in the House with Sect. 1002(a) of the Conference Report.

[47] Id.

[48] Compare Sect. 1003 of H.R. 1465 as passed in the House with Sect. 1003(a)(3) of the Conference Report.

[49] Compare Sect. 1003(b) of H.R. 1465 as passed in the House with Sect. 1003(b) of the Conference Report.

<u>Differences between OPA 90 as signed into law by the President and S. 686 as passed in the Senate</u>

The Conference Report used the liability language found in the version of H.R. 1465 passed in the House as the base text for the Conference Report.[50]

The Conference Report included all of the liability concepts found in the version of S. 686 passed in the Senate; however, the Conference Report included more expansive liability and damages provisions.[51]

While the Conference Committee used the language of H.R. 1465 (as passed in the House) as the base text for the Defenses To Liability section, the Committee specifically introduced concepts of foreseeability as a requirement to invoke the defense of "intervening and superseding third party actions" and subrogation after the Responsible Party paid removal costs and damages.[52]

<u>During the 17 months between the introduction of the Oil Pollution Act and its passage into law, there were several Government shut-downs, closures or other "moratoria".</u>

Immediately following the March 24, 1989, EXXON VALDEZ spill, the Captain of the Port pf Valdez closed the port to all traffic."[53]

Shortly after March 24, 1989, and, as an immediate result of the EXXON VALDEZ oil spill, the operator of the Trans-Alaska Pipeline System (TAPS) reduced the flow from approximately 2 million barrels per day to only 768,000 barrels per day.[54]

On June 26-27, 1989, Congress declared the Cordell Bank National Marine Sanctuary, northwest of San Francisco, permanently off limits to offshore drilling.[55]

---

[50] Compare S. 686 as passed in the Senate with the Conference Report.

[51] Compare Sect. 102 of S. 686 as passed in the Senate with Sect. 1002 of the Conference Report.

[52] Compare Sections 102(b)(1)(C) & 102(b)(2) of S. 686 as passed in the Senate with Sect. 1003(a)(3)(B) of the Conference Report.

[53] USCG Chronology of Exxon Valdez spill.

[54] USCG Chronology of Exxon Valdez spill.

[55] H.J. Res. 281 from the 101st Congress on June 27, 1898 (at https://www.congress.gov/bill/101st-congress/house-joint-resolution/281/text/eh.)  House Committee on Interior and Insular Affairs, Sub-Committee on Water, Power and Offshore Energy Resources, 101-5 Part II, July 18, 1989; "House Votes 1st Permanent Coastal Oil-Drilling Ban" *New York Times,* June 28, 1989; "Offshore Drilling Strikes Discord" *USA Today,* June 28, 1989; "Offshore Drilling Freeze Clears Subcommittee" *New York Times,* July 25, 1989.

On June 26, 1990, and, largely as a result of the EXXON VALDEZ spill, President Bush established a moratorium on offshore drilling covering Bristol Bay, Alaska, and parts of California, Oregon, the eastern Gulf of Mexico, southern Florida, and the North Atlantic states.[56]

On February 7, 1990, the U.S. Coast Guard closed the Santa Barbra ship channel for several weeks in response to the AMERICAN TRADER spill off of Huntington Beach, California.[57]

[*Note* – BP and/or its predecessors were substantial users of the Alaskan Pipeline (TAPS) and BP was the charterer of the AMERICAN TRADER and the owner of its cargo.]

---

[56] Oceana memorandum entitled "Arctic Ocean Paper for President-Elect Obama's Departments of Interior and Commerce/NOAA Transition Team; Congressional Research Service Report, "Outer Continental Shelf Moratoria on Oil and Gas Development", Curry L. Hagerty Specialist in Energy and Natural Resources Policy, May 6, 2011**.** "The Outer Banks Protection Act" is subsequently incorporated the OPA Conference Report, H.R. Rpt. 101-653 §6003 (Aug. 1, 1990), pp.160-163.

[57] 2000 paper from the Univ. of California, Berkeley, Dept. of Agriculture and Resource Economics entitled, "Environmental Damages in Court: The American Trader Case"; Notable Oil Spills In U.S. Waters – Calendar Years 1989-2011, U.S.C.G.; Conference Committee Hearing of April 25, 1990. Among those present was Congressman Miller, A Conferee. (Conference Report, p. 34); See also description of the incident on the California Dept. of Fish and Wildlife website at https://www.wildlife.ca.gov/OSPR/NRDA/american-trader; Final Restoration Plan, p. 1, which can be found at http://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=15406&inline=true. Consent decree found in *United States of America v BP America, BP Oil Supply Company; and BP Oil Shipping Company, USA*, No CV 95-1229-RJK, Central District of California.