**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010.<br><br>This Filing Applies to Nos. 13-706, 13-810, 13-1143, 13-1185, 13-1222, 13-1386, and 13-2006 | MDL No. 2179<br><br>Section J<br><br>Judge Barbier<br>Magistrate Judge Shushan |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION TO STRIKE AFFIRMATIVE DEFENSES AND MOTION *IN LIMINE* REGARDING POTENTIAL THIRD-PARTY FAULT**

*Counsel Listed On Signature Block*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................3

I.  BOTH HALVES OF THIS DISGUISED SUMMARY JUDGMENT
    MOTION ARE PROCEDURALLY IMPROPER. ...........................................3

    A.  The Motion to Strike Fails to Meet the Controlling Standard of
        Review. ..............................................................................................3

    B.  The Test Plaintiffs Have Not Filed a Valid Motion *In Limine* and
        Do Not Cite a Single Rule of Evidence Supporting the Relief They
        Seek. .................................................................................................7

    C.  Plaintiffs' Motion Is Really a Premature Summary Judgment
        Motion. ..............................................................................................7

II. PLAINTIFFS' MOTION ALSO FAILS AS A MATTER OF
    SUBSTANTIVE LAW. ....................................................................................8

    A.  Plaintiffs Bear the Burden of Establishing Each Element of Each of
        Their OPA Claims and Cannot Shift That Burden to BPXP. .....................8

    B.  OPA's Causation Requirements Preclude Recovery for Moratoria
        Losses. .............................................................................................11

    C.  To Be Compensable Under OPA, Any Injuries Must Be
        Proximately Caused by the Pollution Incident or, at the Very Least,
        Surmount a Causation Hurdle Specific to OPA That Is Greater
        Than But-For Causation. ......................................................................15

III. PLAINTIFFS' REMAINING ARGUMENTS DO NOT OVERCOME
     THE APPLICABLE LAW BARRING A MOTION TO STRIKE. ................21

    A.  The Court Should Not Credit the Law Review Articles of
        Professors Palmer and Robertson or the *Third Restatement*
        *(Physical and Emotional Harm)*. ...........................................................21

    B.  Plaintiff's Arguments About Sovereign Immunity Reveal
        Contradictions In Their Legal Positions. ................................................25

CONCLUSION...................................................................................................................25

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abene v. Jaybar, LLC,*
    802 F. Supp. 2d 716 (E.D. La. 2011) ....................................................................3

*Aransas Project v. Shaw,*
    775 F.3d 641 (5th Cir. 2014) ........................................................................7, 18

*Augustus v. Bd. of Pub. Instruction,*
    306 F.2d 862 (5th Cir. 1962) .............................................................................3

*Baisden v. I'm Ready Prods., Inc.,*
    693 F.3d 491 (5th Cir. 2012) .............................................................................9

*Ballard Shipping Co. v. Beach Shellfish,*
    32 F.3d 623 (1st Cir. 1994) ...............................................................................9

*Barr v. County of Clarion,*
    417 Fed. App'x 178 (3d Cir. 2011) ....................................................................5

*Benefiel v. Exxon Corp.,*
    959 F.2d 805 (9th Cir. 1992) ......................................................................16, 17

*Buffalo Marine Servs. Inc. v. United States,*
    663 F.3d 750 (5th Cir. 2011) ...........................................................................13

*Canada Life Assur. Co. v. Converium Rückversicherung (Deutschland) AG,*
    335 F.3d 52 (2d Cir. 2003) ................................................................................2

*CC Recovery, Inc. v. Cecil Cty.,*
    26 F. Supp. 3d 487, 491 (D. Md. 2014) ...........................................................17

*Century Exploration New Orleans LLC v. United States,*
    110 Fed. Cl. 148 (Ct. Fed. Cl. 2013), *aff'd*, 745 F.3d 1168 (Fed. Cir. 2014),
    *cert. denied*, 135 S. Ct. 1175 (2015) ...............................................................20

*Century Exploration New Orleans, LLC v. United States,*
    745 F.3d 1168 (Fed. Cir. 2014) (No. 2013-5073), 2013 WL 4697167 ................19

*City of Columbus v. Ours Garage & Wrecker Serv.,*
    536 U.S. 424 (2002)........................................................................................22

*City of Los Angeles v. Wells Fargo & Co.,*
    22 F. Supp. 3d 1047 (C.D. Cal. 2014) .............................................................17

*CSX Transportation v. McBride*,
    131 S. Ct. 2630 (2011) ................................................................................16

*Dunham-Price Group v. Citgo Petroleum Corp.*,
    No. 2:07-CV-1019, 2010 WL 1285446 (W.D. La. Mar. 31, 2010) .........................................15

*Ensco Offshore Co. v. Salazar*,
    No. 10-1941, 2010 WL 4116892 (E.D. La. Oct. 19, 2010) ....................................18

*Ensco Offshore v. Salazar*,
    No. 10-1941, 2011 WL 1790838 (E.D. La. May 10, 2011).....................................18

*Estate of Sanders v. United States*,
    736 F.3d 430 (5th Cir. 2013) ....................................................................9

*Exxon Co., U.S.A. v. Sofec, Inc.*,
    517 U.S. 830 (1996)............................................................................4, 5

*Fisher v. Halliburton*,
    667 F.3d 602 (5th Cir. 2012) ..................................................................8, 9

*Gatlin Oil Co. v. United States*,
    169 F.3d 207 (4th Cir. 1999) ......................................................14, 15, 23, 25

*General Elec. Co. v. Dep't of Commerce*,
    128 F.3d 767 (D.C. Cir. 1997)....................................................................9

*Greco v. Velvet Cactus, LLC*,
    No. 13-3514, 2014 WL 2943598 (E.D. La. June 27, 2014).....................................7

*Hornbeck Offshore Servs. v. Salazar*,
    696 F. Supp. 2d 627 (E.D. La. 2010) ..........................................................18

*Hornbeck Offshore Servs. v. Salazar*,
    No. 10-1663, 2010 WL 3523040 (E.D. La. Sept. 1, 2010)....................................18

*Hussain v. Boston Old Colony Ins. Co.*,
    311 F.3d 623 (5th Cir. 2002) ....................................................................8

*In re Claim No. N10036-0023*
    (Feb. 16, 2011), http://tinyurl.com/mlrcnv2 .........................................................13

*In re Claim No. N10036-0035 (Scientist/Paleontologist)*,
    (Nov. 8, 2010), http://tinyurl.com/k7sfl96.............................................................12

*In re Claim No. N10036-0290*
    (Mar. 17, 2011), http://tinyurl.com/k8welml .........................................................12

*In Re Claimant EIC Assocs., Inc.*,
   Claim P05005-125 (Jan. 23, 2013), http://tinyurl.com/p26tne7 ..............................18

*In re Cleveland Tankers*,
   791 F. Supp. 669 (E.D. Mich. 1992)................................................................14

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
   713 F.3d 807 (5th Cir. 2013). .......................................................................20

*In re Oil Spill by Oil Rig Deepwater Horizon*,
   902 F. Supp. 2d 808 (E.D. La. 2012)...............................................8, 13, 18, 19

*In re Settoon Towing*,
   No. 07-1263, 2009 WL 4730969 (E.D. La. Dec. 4, 2009) ...................................15

*In re Taira Lynn Marine Ltd. No. 5*,
   444 F.3d 371 (5th Cir. 2006) ...............................................................*passim*

*In re Zippora Pte Ltd.*,
   Claim N08057-0099 (Oct. 22, 2012), http://tinyurl.com/mymbopy.......................10

*James v. Chavez*,
   511 F. App'x 742 (10th Cir. 2013) .................................................................18

*Kansas v. Nebraska*,
   135 S. Ct. 1042 (2015)................................................................................24

*Law v. Hunt Cnty., Texas*,
   830 F. Supp. 2d 211 (N.D. Tex. 2011) ..........................................................3, 4

*Lexmark Int'l v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014).........................................................15, 16, 17, 24

*Lowe v. SEC*,
   472 U.S. 181 (1985)..................................................................................17

*Marine Overseas Servs. v. Crossocean Shipping Co.*,
   791 F.2d 1227 (5th Cir. 1986) .......................................................................3

*Murray v. Earle*,
   405 F.3d 278 (5th Cir. 2005) .........................................................................5

*Pacific Operators Offshore, LLP v. Valladolid*,
   132 S. Ct. 680 (2012)............................................................................16, 17

*Paroline v. United States*,
   134 S. Ct. 1710 (2014)................................................................................15

*Penn Cent. Transp. Co. v. City of New York*,
    438 U.S. 104 (1978)..................................................................................20, 23

*Rice v. Harken Exploration Co.*,
    250 F.3d 264 (5th Cir. 2001) ...................................................................22

*Sekco Energy v. Chouest*,
    No. 92-0420, 1993 WL 322942 (E.D. La. Aug. 13, 1993)....................17

*Sekco Energy v. M/V Margaret Chouest*,
    820 F. Supp. 1008 (E.D. La. 1993)..........................................................15

*Singer v. Dorr*,
    38 F.R.D. 167 (E.D. La. 1965)....................................................................7

*United States v. Gaubert*,
    499 U.S. 315 (1991)...................................................................................20

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978)...................................................................................16

*Urbach v. United States*,
    869 F.2d 829 (5th Cir. 1989) ...................................................................18

## Regulations

33 C.F.R. Part 136.............................................................................................12

33 C.F.R. § 136.105(a).......................................................................................10

33 C.F.R. § 136.213(b) ......................................................................................10

33 C.F.R. §136.215 ............................................................................................10

## Rules

Fed. R. Civ. P. 8..........................................................................................3, 4, 11

Fed. R. Civ. P. 8(b) & (c)....................................................................................3

Fed. R. Civ. P. 8(c) .............................................................................................3

Fed. R. Civ. P. 12(c) ...........................................................................................8

Fed. R. Civ. P. 12(f).............................................................................................3

Fed. R. Civ. P. 56(a) ..............................................................................................8

Fed. R. Civ. P. 56(d) ..............................................................................................8

Fed. R. Evid. 401 ...................................................................................................7


**Statutes**

5 U.S.C. § 702 ......................................................................................................25

5 U.S.C. § 706(2) .................................................................................................25

33 U.S.C. § 2701 ....................................................................................................1

33 U.S.C. § 2701(14) ....................................................................................1, 9, 19

33 U.S.C. § 2702 ....................................................................................................1

33 U.S.C. § 2702(a) ...............................................................................9, 10, 19, 22

33 U.S.C. § 2702(b) .............................................................................................12

33 U.S.C. § 2702(b)(2)(E) ............................................................................ *passim*

33 U.S.C. § 2703 .................................................................................1, 11, 22, 23

33 U.S.C. § 2710(b) ...............................................................................................5


**Other Authorities**

BLACK'S LAW DICTIONARY (9th ed. 2009) ......................................................7, 19

John C.P. Goldberg, *Liability for Economic Loss in Connection with the
      Deepwater Horizon Oil Spill*, 30 MISS. COLL. L. REV. 335 (2011) ....................9, 23

H.R. Conf. Rep. No. 101-653 (1990) ...................................................................14

JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE (3d ed. 2014) ...........3

National Pollution Funds Center, Deepwater Horizon Claimant FAQs,
      http://tinyurl.com/kr9o3pu ............................................................................12

Vernon Palmer, *The Great Spill in the Gulf ... and A Sea of Pure Economic Loss*,
      116 PENN. ST. L. REV. 105 (2011) ...................................................................23

RESTATEMENT (THIRD) OF TORTS: PHYSICAL AND EMOTIONAL HARM (2009) .............................24

RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR ECONOMIC HARM (tentative drafts 2012 & 2014) .................................................................................................24

David W. Robertson, *Criteria for Recovery of Economic Loss Under the Oil Pollution Act of 1990,* 7 TEX. J. OIL, GAS & ENERGY L. 241 (2011-12)...........................21, 23

SCHOENBAUM'S ADMIRALTY & MAR. LAW (5th ed. 2013)........................................................4, 10

Steven Shavell, *Should BP Be Liable For Economic Losses Due To The Moratorium On Oil Drilling Imposed After The Deepwater Horizon Accident?*, 64 VAND. L. REV. 1995 (2011) ...........................................................................24

CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. CIV. (3d ed. 2014) ..................................3, 5

## INTRODUCTION

Despite this Court's request that Plaintiffs "shall re-urge their motion to strike affirmative defenses," Plaintiffs instead have again filed not only a motion to strike BPXP's defenses but also a mislabeled motion "*in limine*" to squelch any discussion of their inability to satisfy a key element of their *prima facie* case under the Oil Pollution Act of 1990 ("OPA"): ***causation***.

The primary legal flaw in Plaintiffs' Motion is that it tries to contort every issue related to causation into an affirmative defense on which BPXP would bear the burden.  Yet Plaintiffs bear the burden as to causation under OPA in order to state a claim.  The Court should reject Plaintiffs' strategy to shift their burden onto BPXP by focusing only on affirmative defenses under 33 U.S.C. § 2703 rather than on the causation requirements of 33 U.S.C. §§ 2701-02.

As BPXP explained in its recent Motion to Dismiss claims based on moratoria losses, OPA establishes strict causation requirements before claimants may recover.  Plaintiffs' moratoria claims cannot meet these demanding causation standards because they (1) do not "result from" the discharge of oil; (2) do not result from an "incident" as defined in the statute; and/or (3) do not arise "due to the injury, destruction, or loss of real property, personal property, or natural resources."  Finally, even if OPA did not impose these textual requirements, proximate causation is the default standard that claimants must meet under virtually all but the most unusual federal tort statutes.  Far from being unusually permissive compared to other tort regimes, OPA imposes multiple and therefore heightened causation requirements.  Here, Plaintiffs' moratoria claims cannot meet either basic or heightened proximate cause standards.

Relying not on decided cases but on speculative articles penned in the law reviews by Professors Palmer and Robertson, Plaintiffs argue that the OPA standard should be mere but-for causation.  Not only is but-for causation inconsistent with § 2702(b)(2)(E), the creation of ***two causation requirements*** in OPA § 2702, and the definition of "incident" in § 2701(14), but the

but-for test would lead to absurd results in this case.  *Canada Life Assur. Co. v. Converium Rückversicherung (Deutschland) AG*, 335 F.3d 52, 58 (2d Cir. 2003) (rejecting as absurd the but-for reading of a jurisdictional provision concerning economic loss).  This Court has noted that same absurdity.  *See* B1 Trans. (Rec. Doc. 2702) at 88:25-89:3 ("There has to be a cutoff point somewhere on liability; otherwise, there is no end.  This case would rebound, bounce around the world in terms of people that could say they were indirectly affected.").

BPXP has pleaded with more than enough specificity to survive a motion to strike.  Its arguments based the text of OPA and on proximate cause — and even its affirmative defense of superseding cause (stated in the alternative) — are integral to assessing the viability of Plaintiffs' claims, placing the remedy of striking BPXP's pleadings off limits.  These BPXP arguments must be considered in order to determine whether Plaintiffs have stated a viable OPA claim.

Part I below sets out the procedural errors in Plaintiff's Motion: (1) it cannot meet the high-bar standard of review for motions to strike; (2) it is not a proper motion *in limine*; and (3) it is, in reality, a disguised and premature motion for summary judgment.  Part II explains why the Plaintiffs' OPA theories fail on the merits: (1) those theories improperly shift Plaintiffs' burden to prove causation onto BPXP; (2) in any event, moratoria-loss claims are not compensable under OPA as a matter of law under (a) the Coast Guard's OSLTF decisions, (b) this Court's ruling in the BP Dealer case, or (c) Fifth Circuit precedent; and (3) even apart from these defects, proximate cause applies and Plaintiffs' claims also fail that test as a matter of law now or will later be shown to fail that test at summary judgment.  Finally, Part III explains (1) the law review articles on which Plaintiffs rely cannot surmount the defects in their theories; and (2) the inability of Plaintiffs to sue the federal government under OPA for moratoria losses only reinforces that Congress did not intend to provide such a monetary remedy.

## ARGUMENT

## I.   BOTH HALVES OF THIS DISGUISED SUMMARY JUDGMENT MOTION ARE PROCEDURALLY IMPROPER.

Although it is styled as both a motion to strike and a motion *in limine*, Plaintiffs' filing is an attempt to shift their burden to prove causation onto BPXP.  The Court should reject that ploy.

### A.   The Motion to Strike Fails to Meet the Controlling Standard of Review.

A motion to strike an affirmative defense under Federal Rule of Civil Procedure 12(f) is a disfavored and "drastic remedy" that will be granted only when "the pleading to be stricken has no possible relation to the controversy." *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962).[1]  Thus, even if Plaintiff's Motion were treated as a motion to strike, instead of the thinly veiled motion for summary judgment it is, Plaintiffs cannot succeed because they fail to meet the governing standard of review required for a motion to strike.

*First*, BPXP's causation defenses are sufficient to survive a motion to strike because these defenses respond directly to the allegations in the complaints.  FRCP 8 requires BPXP to plead affirmative defenses and any other defenses to each claim asserted.  *Marine Overseas Servs. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1233 (5th Cir. 1986); *see also* FRCP 8(b) & (c).  As a result, pleading defenses liberally cannot be penalized.[2]  In the test cases, every complaint includes allegations related to negligence.  As a result, Plaintiffs cannot complain that

---

[1] *Accord* 5 CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. CIV. § 1261 (3d ed. 2014).  In other words, "[a] court must deny a motion to strike a defense if there is any question of law or fact."  *Law v. Hunt Cnty., Texas*, 830 F. Supp. 2d 211, 213 (N.D. Tex. 2011); 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.37[1],[4] (3d ed. 2014) (Rule 12(f) motions are disfavored and "[i]f sufficiency of the defense depends on **disputed issues of fact or questions of law**, a motion to strike should not be granted.") (emphasis added).  And "[e]ven when technically appropriate and well-founded, motions to strike are not [to] be granted in the absence of a showing of prejudice to the moving party."  *Abene v. Jaybar, LLC*, 802 F. Supp. 2d 716, 723 (E.D. La. 2011) (citing 5C FED. PRAC. & PROC. CIV. § 1381) (internal quotations and modifications omitted).

[2] 5 FED. PRAC. & PROC. CIV. § 1271 ("[A] pleader, in order to avoid waiving an otherwise valid defense, often will decide to set up affirmatively matter that technically may not be an affirmative defense but nonetheless might fall within the residuary clause of Rule 8(c).  Normally, that pleader will not be penalized for exercising caution in this fashion even when affirmative pleading proves to be unnecessary."); *see also id.* § 1278.

BPXP's answers, framed to meet the allegations in the Test Plaintiffs' complaints and to satisfy BPXP's obligations under Rule 8, are improper.[3]

**Second**, for the reasons BP has set forth in its companion Motion to Dismiss, Plaintiffs' moratoria claims fail as a matter of law. Granting the relief BPXP seeks in that Motion would moot the need to resolve Plaintiffs' Motion. Plainly, BPXP's defenses raise questions of law that preclude a motion to strike. Both BPXP's OPA defenses and its defense (in the alternative) of superseding cause raise issues of either OPA-specific causation or proximate causation.[4] Plaintiffs attempt to reframe BPXP's superseding-cause defense as falling outside OPA by mischaracterizing the doctrine of superseding cause as incompatible with strict liability statutes. But that is not correct. Proximate cause is often a necessary element of both negligence and strict-liability statutes: "Whether proceeding under a strict-liability or negligence theory, proximate cause is a necessary element of a plaintiff's case; the concept of proximate cause is the same in negligence and strict-liability cases." 57A AM. JUR. 2d *Negligence* § 421.

Moreover, the superseding-cause doctrine is just a sub-species of proximate-cause doctrine. *See* 1 SCHOENBAUM'S ADMIRALTY & MAR. LAW § 5-3 (5th ed. 2013) ("Causation in

---

[3] *See, e.g.*, Rec. Doc. 13712 at ¶ 1 (Bisso Marine incorporating allegations in Rec. Doc. 12988 ¶ 6, which in turn incorporates by reference ¶ 10 of Rec. Doc. 1 in Case No. 2:13-cv-00706); Rec. Doc. 13713 at ¶ 3 (incorporating Rec. Doc. 1 in Case. No. 2:13-cv-00810, which in turn references negligence in ¶ 12 (Wadleigh adopting the Amended B1 Complaint allegations, which include claims of negligence)); Rec. Doc. 13714 at ¶ 2 (Certified Platform adopting all of its prior allegations in Rec. Doc. 12990 at ¶ 3, which in turn incorporates Rec. Doc. 1 in Case No. 2:13-cv-cv-001143 (which makes negligence allegations in ¶ 10)); Rec. Doc. 13719 at ¶ 5 (Trinity incorporating its allegations in Rec. Doc. Rec. Doc. 12991 at ¶ 4, which in turn incorporates Rec. Doc. 3 at ¶ 3 in Case No. 2:13-cv-01222, which in turn incorporates Rec. Doc. 1 in that same case (which makes negligence allegations in ¶ 52)); Rec. Doc. 13721 at ¶ 42 (Seahawk Liquidating Trust); Rec. Doc. 13722 at ¶ 38 (Black Elk); Rec. Doc. 13971 (Blake International adopting all of its prior allegations in Rec. Doc. 12993 at ¶ 3, which in turn incorporates Rec. Doc. 1 in Case No. 2:13-cv-01185 (which makes negligence allegations in ¶ 10)).

[4] The Supreme Court has observed that, typically, "issues of proximate causation and superseding cause involve application of law to fact." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840 (1996). But proximate cause is not always a question of fact. *See* BPXP's Motion to Dismiss, Rec. Doc. 15663-1 at 19 n.18. The companion BPXP Motion explained why Plaintiffs' claims fail under proximate cause as a matter of law. This BPXP brief explains why, in the alternative — even if that position were rejected — issues of fact would still bar a motion to strike. As noted above, "[a] court must deny a motion to strike a defense if there is ***any question of law or fact***." *Hunt Cnty.*, 830 F. Supp. 2d at 213 (emphasis added); *see also supra* n.1 (citing other authorities to the same effect).

admiralty" includes "proximate or legal causation, whether a superseding cause or a policy consideration should relieve the defendant of liability."). BPXP's superseding-cause defense is part of standard proximate-cause analysis. *Sofec*, 517 U.S. at 837 (identifying "the superseding cause doctrine, which is one facet of the proximate causation requirement"). Federal courts routinely examine questions of proximate cause, including superseding causes, when applying federal statutes. *See, e.g., Barr v. County of Clarion*, 417 Fed. App'x 178, 180-81 (3d Cir. 2011); *Murray v. Earle*, 405 F.3d 278, 290-91 (5th Cir. 2005). Labeling a defense an "affirmative defense" does not alter the substance of the pleadings that call for such analysis.[5] The issue of superseding cause is unquestionably relevant to deciding whether Plaintiffs meet OPA's causation requirements. Plaintiffs' attempt to label all of BPXP's causation defenses "affirmative defenses" and preclude them on that basis is a tactic intended to prejudge that issue.

Plaintiffs argue that even if the government's actions were a superseding cause, the government has sovereign immunity and thus it cannot receive an apportioned liability. Yet a superseding cause cuts off liability entirely; there is no apportionment of fault. *Sofec*, 517 U.S. at 837-38 ("[T]here is properly no apportionment of comparative fault where there is an absence of proximate causation."). OPA also does not provide for the apportionment of damages among multiple responsible parties. 33 U.S.C. § 2710(b). Plaintiffs try to sow confusion by assuming as part of their government-immunity arguments that only a subsequent negligent act can serve as a superseding cause. But there is no requirement that a superseding cause be a negligent act: "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial

---

[5] *See* 5 FED. PRAC. & PROC. CIV. § 1269 ("The federal courts have accepted the notion of treating a specific denial that has been improperly denominated as an affirmative defense as though it were correctly labeled. … [R]esearch has not revealed a single reported decision since the promulgation of the federal rules in which an erroneous designation resulted in any substantial prejudice to the pleader.").

factor in bringing about."  RESTATEMENT (SECOND) OF TORTS § 440.  BPXP's arguments amply demonstrate that there are disputed questions of law with direct relation to OPA causation in the test cases.  That is sufficient to survive a motion to strike.

**Third**, even if BP's Motion to Dismiss is rejected, adjudicating the issue of OPA causation will still require the resolution of factual questions that preclude a motion to strike. Central to Plaintiffs' OPA claims is their obligation to prove causation for their alleged losses. This Court has recognized the potentially fact-specific nature of that obligation, including the relevance of third-party and government causation.  The Court stated at oral argument on the B1 motions to dismiss that "the argument on the other side would be ... [the moratorium] wasn't directly caused by the spill, because ... they weren't trying to clean up anything. They [the government] weren't doing it in direct response to the spill.  They were trying to prevent future spills, as I appreciate the purpose of the moratorium."  B1 Oral Argument (Rec. Doc. 2702) at 94:19-21; *see also* Rec. Doc. 3830 at 33 (B1 Order) ("The Court need not define causation under OPA — necessarily a highly factual analysis — at this stage of the pleadings.").  Plaintiffs' Motion, however, seeks to prevent BPXP from advancing the very argument this Court identified as crucial to evaluating OPA causation as a matter of fact as to particular plaintiffs.  That requires denial of Plaintiffs' Motion regardless of the disposition of BPXP's Motion.

**Fourth**, Plaintiffs suffer no prejudice from BPXP's defenses regarding causation. Plaintiffs must prove that their injuries were "due to" damage to property or natural resources that "result from" the spill.  *See infra* and BP's companion Motion to Dismiss.  Even if Plaintiffs did not need to prove proximate causation, they do not dispute that some showing of causation will be necessary to establish an injury "due to" economic loss "resulting from" harm to real property.  For this reason, their theories of causation must be tested in the course of Plaintiffs'

6

own affirmative case, and they suffer no legally cognizable prejudice from BPXP's causation-related defenses drawing on the same factual and legal development.  *See Singer v. Dorr*, 38 F.R.D. 167, 169 (E.D. La. 1965) (denying motion to strike limitation-of-liability defense before plaintiff's claims subjecting vessel owner to potential liability were established).

> ### B.     The Test Plaintiffs Have Not Filed a Valid Motion *In Limine* and Do Not Cite a Single Rule of Evidence Supporting the Relief They Seek.

Plaintiffs' motion does not qualify as a motion *in limine*.  A "motion in limine" is "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial."  BLACK'S LAW DICTIONARY 1109 (9th ed. 2009). Nothing in the purported motion *in limine* refers to the Federal Rules of Evidence or establishes that all evidence of causation is inadmissible here.

To the contrary, causation is an indispensable element of each Plaintiff's *prima facie* case, and any evidence concerning causation is relevant to Plaintiffs' claims under Federal Rule of Evidence 401.  *Aransas Project v. Shaw*, 775 F.3d 641, 656 (5th Cir. 2014) ("Evidence is relevant where it has the tendency to make a fact more or less probable."); *Greco v. Velvet Cactus, LLC*, No. 13-3514, 2014 WL 2943598, at *2 (E.D. La. June 27, 2014) (denying motion to strike because "Rule 401 provides that evidence is relevant as long as it has probative value with respect to any fact of consequence to the determination of the action").

> ### C.     Plaintiffs' Motion Is Really a Premature Summary Judgment Motion.

By seeking to exclude relevant evidence on the issue of causation, Plaintiffs' motion really attempts to obtain partial summary judgment on the causation element of their OPA claims.  Eliminating BPXP's arguments and evidence related to the superseding cause of the moratoria would effectively excuse Plaintiffs from having to carry their affirmative burden to prove OPA causation — because BPXP would be prevented from arguing that causation was anything other than Plaintiffs' theory.  This approach does not represent a proper motion to strike

or *in limine*.  Therefore, to the extent that the motion for *in limine* relief were not simply denied, it would have to be subjected to the summary judgment standard.  *See* FRCP 56(d).  And under this Court's governing procedural orders, summary judgment motions are premature.

The Fifth Circuit has long held that it is improper for mere labels to dictate the applicable legal standard.  *Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 633 n.39 (5th Cir. 2002) (courts approach a motion "according to its substance rather than its form or label"); *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (treating denial of nominal Rule 12(c) motion as denial of a motion for summary judgment).  The relief that Plaintiffs seek — barring all evidence that government regulatory actions, motivated by a desire to avoid future spills (rather than the *Deepwater Horizon* spill), caused their ostensible lost profits — has the inevitable effect of plastering over a genuine dispute about whether that is the cause-in-fact of their alleged injuries. Combined with their requested ruling that "a 'superseding' cause defense is not available ... as a matter of law," Plaintiffs are transparently moving for summary judgment.  *See* FRCP 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

## II.     PLAINTIFFS' MOTION ALSO FAILS AS A MATTER OF SUBSTANTIVE LAW.

### A.     Plaintiffs Bear the Burden of Establishing Each Element of Each of Their OPA Claims and Cannot Shift That Burden to BPXP.

Plaintiffs' Motion treats causation — an element as to which they carry the burden — as part of BPXP's "affirmative defenses" and assumes that, in the absence of those defenses, the causation element of their claims is proven.  But litigants cannot so easily disown a fundamental element of their cause of action.  Although BPXP accepts its burden to prove its one relevant and actual affirmative defense (superseding cause), it remains Plaintiffs' task to satisfy the causal links required by the statute before it can recover OPA damages.  It is hornbook law that a

plaintiff bears the burden of proving each element of its claim.  *See Estate of Sanders v. United States*, 736 F.3d 430, 436 (5th Cir. 2013).  Defendants, in turn, bear the burden of establishing affirmative defenses, *Fisher*, 667 F.3d at 609 n.12, but those do not include the simple argument that a plaintiff has failed to make out a *prima facie* case.  *See Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 506 (5th Cir. 2012) (distinguishing, in the copyright context, between "the question of license (an affirmative defense on which Defendants bore the burden of proof) [and] that of infringement (a claim on which [plaintiff] carried the burden)").

OPA imposes two separate requirements that losses be causally connected to the underlying pollution incident.  ***First***, OPA introduces the available damages as those "damages specified in subsection (b) of this section that ***result from*** such incident."  33 U.S.C. § 2702(a) (emphasis added); *see also* 33 U.S.C. § 2701(14) (defining "incident").  ***Second***, OPA's economic-loss-damages provision adds that "[t]he damages referred to in subsection (a)" are those "***due to*** the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(E) (emphasis added).  Based on this statutory language, this Court and others have recognized that OPA's economic-loss claims must satisfy elements of causation.  *See* Rec. Doc. 3080 at 33; *General Elec. Co. v. Dep't of Commerce*, 128 F.3d 767, 776 (D.C. Cir. 1997) (noting "OPA's causation requirement"); *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 630 (1st Cir. 1994) (consulting OPA for guidance in construing a State's "Little OPA" and reading § 2702(b)(2)(E) to "incorporate[] the familiar tort limitations of foreseeability and proximate cause.  These principles do in some measure limit the burden imposed on maritime shipping"); *see also* John C.P. Goldberg, *Liability for Economic Loss in Connection with the Deepwater Horizon Oil Spill*, 30 Miss. Coll. L. Rev. 335, 344 (2011)

(highlighting OPA's two separate causation requirements). Schoenbaum's learned treatise summarizes the import of OPA § 2702's dual causation requirements:

> **The "due to" clause, then, is a second layer causation requirement that supplements the "result from" causation requirement in Section 2702(a).** Whereas the "result from" language of the latter section requires that the damage suffered by the claimant must be **proximately caused** by the actual or threatened discharge of oil, the "due to" language of Section 2702(b)(2)(E) requires that the claimant's lost profits or earning capacity damages must be **proximately caused**, **in addition**, by injury, destruction, or loss of property or natural resources. This **double proximate cause provision** is unique to OPA and is designed to filter out remote claims.

2 SCHOENBAUM'S ADMIRALTY & MAR. LAW § 18-4 (emphasis added). The Coast Guard has likewise construed OPA to impose burdens of both production and proof on plaintiffs. *See* 33 C.F.R. §§ 136.105(a), 136.213(b), 136.215; *In re Zippora Pte Ltd.*, Claim N08057-0099, at 7-8 (Oct. 22, 2012), http://tinyurl.com/mymbopy ("The claims regulations associated with OPA provide that a claimant has the burden of establishing that he suffered a loss of profits and then quantifying that loss."). These administrative precedents reflect the general rule that plaintiffs bear the burden of establishing all elements of their causes of action.

Here, Plaintiffs attempt to prevail on the causation issue without having to satisfy their burden under the statute. Their Motion tellingly suggests that the Court should just assume that they will carry their burden to show OPA causation: "**Assuming** one or more Test Case Plaintiffs **is found to have suffered an economic loss as a result of the Spill**, is a 'superseding' cause defense available to BPXP as a matter of law?" Rec. Doc. 15655-1 at 10 (emphasis added). This approach — assuming causation and only thereafter considering alternative causes — mischaracterizes BPXP's substantive OPA defenses and tries to pull off a tricky sleight of hand. It assumes that any legal or factual disputes come out in Plaintiffs' favor and then poses a rigged question premised on that threshold assumption. Plaintiffs' attempt to assume their way to a major legal and factual victory must be rejected.

Plaintiffs generally ignore the defenses that BPXP has actually pleaded.  Plaintiffs first overlook that the "Affirmative Defenses" section of BPXP's Answers states that "by setting forth these affirmative defenses, BPXP does not assume the burden of proving any facts, issues, or elements of a cause of action where such burden properly belongs to Plaintiff."  BPXP's Answer to Bisso Marine, LLC's Complaint, Rec. Doc. 13058 at 20 (filed June 23, 2014), incorporated by reference in Rec. Doc. 13975.  This express statement is, strictly speaking, unnecessary, as BPXP could not, by complying with Rule 8 and the traditional form for answers, transform an element of Plaintiffs' claims into a presumption that it must rebut.  Nevertheless, Plaintiffs charge ahead, pretending that BPXP has done just that.  They imagine that BPXP has presented all of its challenges to causation only under 33 U.S.C. § 2703, again with the effect of seeking to shift the burden to BPXP.  But BPXP has never invoked OPA § 2703, which deals with a narrow set of complete defenses to liability for a spill as to any plaintiff, regardless of the injuries it claims.  Rather, BPXP's defenses follow from the double causation requirements of § 2702.

**B.      OPA's Causation Requirements Preclude Recovery for Moratoria Losses.**

OPA defines six categories of recoverable damages.  Plaintiffs can conceivably recover moratoria-related losses under only one of these categories — regarding lost profits and earning capacity.  33 U.S.C. § 2702(b)(2)(E).  But OPA's economic-loss provision does not permit recovery for moratoria losses (as explained here and in BPXP's companion Motion to Dismiss).  Plaintiffs pursuing moratoria recoveries are not seeking a recovery for the consequences of oil damage to their own real or personal property.  Nor do they claim that the spill damaged any natural resources in which they have an interest — *i.e.*, they have no claims analogous to fishermen.  Instead, Plaintiffs seek to recover for losses "due to" the government's independent and discretionary decisions (found to be illegal) to impose broad-based moratoria on a

prospective, forward-looking basis.[6]  Because those losses are not "due to" an injury to property

or natural resources, such losses are not compensable.  33 U.S.C. § 2702(b)(2)(E).

The Coast Guard, through the National Pollution Funds Center, has flatly rejected

moratoria-related claims as inconsistent with OPA's causation requirements.  *See* National

Pollution Funds Center, Deepwater Horizon Claimant FAQs, http://tinyurl.com/kr9o3pu ("Under

[OPA,] the law that governs the NPFC's determinations, the NPFC *will not pay* a loss or damage

that is a direct result of the moratorium on offshore drilling.") (emphasis added).  The Coast

Guard has explained its reasoning as follows:

> Under 33 USC § 2702(b) and 33 CFR Part 136, a claimant must prove that his loss of income is *due to the injury, destruction or loss of real or personal property or natural resources resulting from the discharge or substantial threat of a discharge of oil*.  All documentary evidence submitted by [claimant redacted] indicates that *his loss directly resulted from a directive issued by the Department of the Interior imposing a six month offshore drilling moratorium* in order to implement *new safety requirements*.  As a result [the claimant's] *claim is determined to be a direct result of the moratorium, not a direct result of an oil discharge*.  *The claim is not compensable under the OPA*.

*In re Claim No. N10036-0035 (Scientist/Paleontologist)*, at 3 (Nov. 8, 2010),

http://tinyurl.com/k7sfl96 (emphasis added); *see also In re Claim No. N10036-0290*, at 3 (Mar.

17, 2011), http://tinyurl.com/k8welml ("The moratorium and its regulatory implications for

corporate entities and their employees is not the result of the injury, destruction or loss of

property or natural resources as a result of a discharge or substantial threat of discharge of oil but

rather due to permitting requirements.").  The Coast Guard appropriately rejected Plaintiffs'

simplistic "but-for" conclusion that "[b]ecause the Spill caused the Moratorium, it follows

logically that the Spill also caused any and all economic damages that resulted from the

Moratorium." Rec. Doc. 15655-1 at 25-26. Rather, the Coast Guard has noted that after the spill

---

[6]  For purposes of this brief, BPXP includes in the term "moratoria" any slow-down in permits (colloquially referred to as the "permitorium" or "permitoria").  *See generally* Memorandum in Support of BPXP's Motion to Dismiss Moratoria/Permitoria Claims, Rec. Doc. 15663-1 (Dec. 16, 2015).

"the government instituted additional regulatory oversight and control provisions with respect to offshore drilling" and losses caused by those provisions are not recoverable under OPA. *In re Claim No. N10036-0023*, at 4 (Feb. 16, 2011), http://tinyurl.com/mlrcnv2 ("The NPFC again denies the claim because the Claimant has not established that his alleged loss is due to injury, destruction or loss of property or natural resources and the resulting discharge or substantial threat of discharge of oil.").

The Coast Guard's interpretation of OPA's causation requirements is entitled to deference from this Court. *Buffalo Marine Servs. Inc. v. United States*, 663 F.3d 750, 754 (5th Cir. 2011) ("[T]he NPFC's interpretation of the OPA deserves deference."). And this Court has already applied the same causation principles in rejecting the BPXP Dealer Claims — which similarly rested on a crude, but-for syllogism that tried to fix the spill as the cause of everything that followed regardless of intervening causes. *In re Oil Spill by Oil Rig Deepwater Horizon*, 902 F. Supp. 2d 808, 819 (E.D. La. 2012) ("[T]o the extent Tobatex argues that BP Dealer Claims — those claims based solely on consumer animosity toward BP and the BP brand — are viable under Subsection (E), the Court disagrees.").

More importantly, the Fifth Circuit has held that OPA's causation tests — requiring that damages be "due to" property or resource injury and "result from" a pollution incident — demand that claimants' losses be the direct result of physical damage caused by the pollutant. *In re Taira Lynn Marine Ltd. No. 5*, 444 F.3d 371, 383 (5th Cir. 2006) (denying claims under § 2702(b)(2)(E) because plaintiffs could not establish that "any property damage was caused by the pollution incident, i.e., the release of the gaseous cargo"). The Fifth Circuit introduced its decision by stating that "[t]he primary issue on appeal is whether claimants who suffered ***no physical damage to a proprietary interest*** can recover for their economic losses as a result of a

maritime allision.  Fourteen businesses and business owners brought claims under the general maritime law [and] the Oil Pollution Act of 1990 (OPA)."  *Taira Lynn*, 444 F.3d at 375 (emphasis added).[7]  *Taira Lynn* involved an allision by a tugboat with a bridge resulting in a discharge of gaseous hydrocarbons that did not directly result in property damage; however, police evacuated an area around the bridge.  Businesses sought revenues lost when they had to evacuate and their goods were ruined.  The Fifth Circuit rejected those claims:

> [A]ssuming arguendo that OPA applies, none of the claimants has raised an issue of fact as to whether any property damage was caused by the pollution incident, i.e. the release of the gaseous cargo.  A party is liable under OPA if, inter alia, the claimant's damages "*result from such incident*," i.e. the discharge or threatened discharge of oil.  … Any property damage upon which Claimants must rely to recover under § 2702(b)(2)(E) did not result from the discharge or threatened discharge of oil. ***Claimants have not raised an issue of fact as to whether their economic losses are due to damage to property resulting from the discharge of the gas***.  Therefore, Claimants cannot recover under OPA.

*Taira Lynn*, 444 F.3d at 383 (bold italic emphasis added) (citing and relying on *Gatlin Oil Co. v. United States*, 169 F.3d 207, 210-11 (4th Cir. 1999)).[8]

Plaintiffs seek to immunize themselves against *Taira Lynn* by arguing that it involved a release of gases and not oil, Rec. Doc. 15655-1 at 26 n.35, but the Fifth Circuit resolved the case

---

[7]  In the *Taira Lynn* briefing, the State of Louisiana (now acting as a plaintiff aligned with the PSC in MDL 2179) filed a brief in which it argued that none of the claimants could recover economic-loss damages under OPA because they had no "physical damage caused by the propane/propylene cargo," and OPA "does not provide any avenue for recovery to claimants who have economic loss claims but no physical damage to any property caused by the escaping cargo."  Original Brief of Defendant-Appellant State of Louisiana Through Its Department of Transportation and Development at 27-28, *In re Taira Lynn Marine Ltd. No. 5*, 444 F.3d 371 (5th Cir. 2006) (No. 04-31069).  *Taira Lynn* adopted Louisiana's correct position in that case as the governing law of the Fifth Circuit.

[8]  Nothing in *Taira Lynn* indicates that OPA intended to authorize damages for losses due to injury to "real property, personal property, or natural resources," even where claimants have no interest in that property.  *Taira Lynn*, 44 F.3d at 382; *see also In re Cleveland Tankers*, 791 F. Supp. 669, 679 (E.D. Mich. 1992) (rejecting this defective reading of OPA).  Plaintiffs suggest to the contrary.  *See* Rec. Doc. 15655-1 at 26 n.35.  Indeed, OPA's legislative history confirms that Congress intended only a modest expansion of liability beyond the *Robins Dry Dock* rule.  Congress explained that the omission of the ownership condition in § 2702(b)(2)(B) ("who owns or leases that property") from § 2702(b)(2)(E) was intended to provide recoveries for fishermen, for example, who rely on the harvest of fish that they do not own until caught.  *See* H.R. Conf. Rep. No. 101-653, at 4 (1990) ("Subsection (b)(2)(E) provides that any claimant may recover for loss of profits or impairment of earning capacity resulting from injury to property or natural resources. The claimant need not be the owner of the damaged property or resources to recover for lost profits or income.  For example, a fisherman may recover lost income due to damaged fisheries resources, even though the fisherman does not own those resources.").

by interpreting OPA on the assumption that it applied. Moreover, *Taira Lynn* applied the prior holding of the Fourth Circuit in *Gatlin Oil*, which plainly involved an oil spill. *See* 169 F.3d at 212 (denying a claim for losses caused by a fire that followed an oil spill because the fire was not part of the spill itself). *Taira Lynn* and *Gatlin Oil*, taken singly or together, foreclose Plaintiffs' moratoria claims here.[9]

> **C.      To Be Compensable Under OPA, Any Injuries Must Be Proximately Caused by the Pollution Incident or, at the Very Least, Surmount a Causation Hurdle Specific to OPA That Is Greater Than But-For Causation.**

In its B1 Order, this Court avoided ruling on the causation standard of OPA. Rec. Doc. 3830 at 33 (entered Aug. 26, 2011) ("[T]he Court need not define the precise contours of OPA causation at this time."). That circumspection has proven wise. In the intervening years, the Supreme Court has decided no fewer than three cases touching on the default rule of proximate cause in federal statutes. Under those cases and because Congress reinforced its desire to impose strong causation requirements by including two separate causation hurdles in § 2702, the OPA statute has become a textbook case in which to apply proximate-cause doctrine.

The Supreme Court recently affirmed that proximate cause is the controlling default standard for tort-like statutes. *Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014) ("[W]e generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute."); *see also Paroline v. United*

---

[9] Plaintiffs' cited cases do not establish that moratoria losses are compensable. One case, *Sekco Energy v. M/V Margaret Chouest*, 820 F. Supp. 1008 (E.D. La. 1993), predates *Taira Lynn* and is thus overtaken. Two others involved claims for economic damages tracing to shutdowns of the Intracoastal Waterway ("ICW") in the wake of spills, and both cases denied **summary judgment** motions filed by OPA defendants arguing such claims were not compensable under § 2702(b)(2)(E). *Dunham-Price Group v. Citgo Petroleum Corp.*, No. 2:07-CV-1019, 2010 WL 1285446 (W.D. La. Mar. 31, 2010); *In re Settoon Towing*, No. 07-1263, 2009 WL 4730969 (E.D. La. Dec. 4, 2009). These two cases, moreover, cannot be reconciled with *Taira Lynn* because they fail to grapple with *Taira Lynn*'s reliance on *Gatlin Oil*. The Fifth Circuit made clear that losses tracing to the evacuation ordered in *Taira Lynn* or to the ensuing fire in *Gatlin Oil* do not qualify as § 2702(b)(2)(E) losses because such losses were not "due to" oil directly injuring property or natural resources but were "due to" an intervening event. Losses tracing to ICW shut downs resemble the types of consequential losses rejected by the Fifth and Fourth Circuits.

15

*States*, 134 S. Ct. 1710, 1720 (2014).   Under *Lexmark*, express language is required to depart from a default rule of proximate causation.   134 S. Ct. at 1390 ("Congress, we assume, is familiar with the common-law rule and does not mean to displace it *sub silentio*.").   *Lexmark* also clarified a possible point of confusion that the Court left open two years earlier.   In *Pacific Operators Offshore, LLP v. Valladolid*, 132 S. Ct. 680, 691 (2012), the Court required a "substantial nexus" when interpreting the phrase "occurring as the result of" in OCSLA.   In dissent, Justices Scalia and Alito lamented that "[o]ne might think" that the "substantial causal nexus test" establishes "a new *tertium quid* of causality — somewhere between but-for causality and proximate cause."   *Id.* at 693 (Scalia, J., dissenting) (alterations omitted).   The Court's opinion in *Lexmark* cleared up the law by citing Justice Scalia's **dissent** to explain its express endorsement of proximate cause.   *Lexmark*, 134 S. Ct. at 1390.   In the wake of that decision, there is no cause for reading *Valladolid* as overruling the long line of Supreme Court decisions adopting proximate cause as the default rule for statutory causation.[10]

The courts also presume that Congress legislates with knowledge of the interpretive backdrop against which its laws will be construed.   *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978); *see also Lexmark*, 134 S. Ct. at 1390.   Here, predecessor statutes to OPA have been understood to include a proximate-causation requirement.   *See Benefiel v. Exxon Corp.*, 959 F.2d 805, 807 (9th Cir. 1992) (applying proximate cause to strict-liability damages that are the "**result of discharges**" because "we are confident that Congress in enacting [the Trans-Alaska Pipeline Authorization Act ("TAPAA")] did not intend to abrogate all principles of proximate

---

[10] Plaintiffs rely on *CSX Transportation v. McBride*, 131 S. Ct. 2630 (2011), while attempting to avoid the conclusion of that case.   Yet *CSX*, even taken on its own terms, interpreted language quite different from the text of OPA § 2702.   The text there referred to injuries "resulting in whole *or in part*" from a defendant's conduct.   *Id.* at 2634 (emphasis added).   That language is incompatible with proximate causation, implying that Congress intended to depart from proximate causation under that statute.   OPA does not have similar language explicitly permitting partial-cause recoveries.   If anything, the departure in *CSX* is the exception that proves the proximate-cause rule as reiterated three years later in *Lexmark*.

cause") (emphasis added).  *Benefiel* also recognized that proximate causation includes the doctrine of intervening cause and on that basis affirmed dismissal of a complaint alleging that violations of TAPAA led to higher gasoline prices.  *Id.* at 807-08 (holding "the decision of the United States Coast Guard to close the Port of Valdez to facilitate clean-up efforts" to be a cause falling outside TAPAA).  Congress knows that by using similar causation language as TAPAA (an oil pollution statute), it established proximate cause as OPA's test.

The combination of the statutory phrases "due to" and "resulting from" in § 2702 more than justifies applying the presumptive proximate-cause rule.  The inclusion of a two-fold causation threshold for § 2702(b)(2)(E) claims can only be deliberate.  *See* Goldberg, 30 MISS. COLL. L. REV. at 351.  Professor Goldberg noted that courts have understood the phrase "result from" standing alone to impose "both an actual causation requirement and a proximate cause limitation."  *Id.* at 354.  He also pointed out that the combination of two causation statements must accomplish something more than either phrase operating alone (compare the "resulting from" clause operating alone in *Valladolid*), lest it offend the anti-superfluousness canon.  *See id.* at 352; *see also Lowe v. SEC*, 472 U.S. 181, 207 n.53 (1985) ("[W]e must give effect to every word that Congress used in the statute.").

District courts have relied on *Lexmark* for the proposition that proximate causation is the default rule.[11]  Even before *Lexmark*, a court in this District applied a proximate-cause requirement in OPA cases.  *Sekco Energy v. Chouest*, No. 92-0420, 1993 WL 322942, at *6 (E.D. La. Aug. 13, 1993) (denying recovery under OPA § 2702(b)(2)(E), for lack of proximate cause).  The Coast Guard has also reached the same conclusion that proximate-cause analysis

---

[11]  *See, e.g.*, *CC Recovery, Inc. v. Cecil Cty.*, 26 F. Supp. 3d 487, 491 (D. Md. 2014) (applying *Lexmark* to claims under the Americans with Disabilities Act to require a showing of proximate causation); *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1055-56 (C.D. Cal. 2014) (interpreting Fair Housing Act and noting that "it is also presumed that a statutory cause of action 'is limited to plaintiffs whose injuries are proximately caused by violations of the statute'") (quoting *Lexmark*, 134 S. Ct. at 1390).

controls.  *See In Re Claimant EIC Assocs., Inc.*, Claim P05005-125, at 12 (Jan. 23, 2013), http://tinyurl.com/p26tne7 (denying economic loss claims where a 2004 oil spill was not the proximate cause).  Lastly, *Taira Lynn*, the controlling law of this Circuit, rejected OPA economic-loss claims not only because those claims failed to meet § 2702(b)(2)(E)'s requirement that physical harm must be shown to property or natural resources but also because "none of the claimants has raised an issue of fact as to whether any property damage ***was caused by*** the pollution incident, i.e., the release of the gaseous cargo."  *Taira Lynn*, 444 F.3d at 383 (emphasis added).  Text and precedent confirm that proximate causation is the applicable standard for economic losses "due to" property or resource damage "resulting from" the *Deepwater* incident.

This standard of proximate causation includes foreseeability.  *Aransas Project*, 775 F.3d at 657 ("[T]he statute should be read to incorporate ordinary requirements of proximate causation and foreseeability.").  Importantly, a third party's later action is less foreseeable, as a matter of law, when it is illegal.  *See, e.g., James v. Chavez*, 511 F. App'x 742, 750 n.5 (10th Cir. 2013); *Urbach v. United States*, 869 F.2d 829 (5th Cir. 1989).  In the current case, Plaintiffs' moratoria losses are due to government action that has already been found arbitrary and capricious or otherwise illegal.[12]  Judge Feldman's conclusion that "no rational nexus exists between the fact of the tragic Deepwater Horizon blowout and placing an attainder of universal culpability on every other deepwater rig operator in the Gulf of Mexico," *Hornbeck Offshore Servs. v. Salazar*, No. 10-1663, 2010 WL 3523040, at *7 (E.D. La. Sept. 1, 2010), therefore takes on double significance.  That holding both rejects foreseeability and supports BPXP's causation

---

[12] *See Hornbeck Offshore Servs. v. Salazar*, 696 F. Supp. 2d 627 (E.D. La. 2010); *Ensco Offshore Co. v. Salazar*, No. 10-1941, 2010 WL 4116892 (E.D. La. Oct. 19, 2010); *Ensco Offshore v. Salazar*, No. 10-1941, 2011 WL 1790838 (E.D. La. May 10, 2011).

defenses — including its superseding cause defense — by concluding that moratoria losses are due to illegal government action with no rational connection to the *Deepwater Horizon* incident.

It becomes clear that not only does OPA require a showing of proximate causation, but if any facts need to be proven in that vein BP will prevail in showing that proximate cause is absent. Thus, even if this Court were to apply a less-stringent standard than proximate causation, BPXP's causation defenses would still be relevant and bar a motion to strike. OPA contains specific requirements for the source of OPA injury. Compensable losses include only those caused by pollutants through direct harm to property or natural resources. None of OPA's departures from maritime law opens the door to making private defendants liable for the consequences of government regulation.

Under OPA, a responsible party is liable for specified damages "that result from such incident," meaning the discharge of oil. 33 U.S.C. § 2702(a). "Incident" is also a defined term in OPA referring to "any ***occurrence*** or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil." 33 U.S.C. § 2701(14) (emphasis added). "Incident" is not defined to encompass the costs of complying with forward-looking, discretionary regulations. Such deliberative steps by an arm of the federal government do not fit within the definition of "occurrence." BLACK'S LAW DICTIONARY 1185 (9th ed. 2009) (defining "occurrence" as "[s]omething that happens or takes place; specif., an accident, event, or continuing condition that results in personal injury or property damage that is neither expected nor intended from the standpoint of an insured party"). The moratoria were not spontaneous accidents but were intentional exercises of "significant discretion." Br. of the United States at 29, *Century*

*Exploration New Orleans, LLC v. United States*, 745 F.3d 1168 (Fed. Cir. 2014) (No. 2013-5073), 2013 WL 4697167, at *29.

Plaintiffs point to the Federal Tort Claims Act ("FTCA"), but that statute undermines their case.  Had the United States been sued for moratoria losses under the FTCA, it would have defended on the ground of the discretionary-function exception.  *See, e.g.*, *United States v. Gaubert*, 499 U.S. 315, 323 (1991) ("Where Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception."); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 713 F.3d 807 (5th Cir. 2013).  Application of the FTCA clarifies that the moratoria were Department of Interior **choices**, **not statutory mandates** imposed on the agency.  What Plaintiffs actually seek are profits (a form of property) lost as a result of government action.  Such disfavored claims — the equivalent of "regulatory takings" — could lie only against the government.  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (rejecting takings claims against regulations that "adjust[] the benefits and burdens of economic life to promote the common good").  Such takings claims are not hypothetical here but were actually brought.  *See Century Exploration New Orleans LLC v. United States*, 110 Fed. Cl. 148, 153 (Ct. Fed. Cl. 2013) (staying adjudication of moratoria takings claims), *aff'd*, 745 F.3d 1168 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 1175 (2015).

Plaintiffs attempt to twist the government's sovereign immunity to their own advantage.  But the government's decision not to waive immunity does not require or even imply that private parties are liable in the government's stead.  It only underscores how unusual it would be for a court to hold that independent federal actions create financial liability **for anyone** without an

express instruction from Congress to that effect (lacking here).  Even if this Court were to disagree that the proximate-cause standard applies, Plaintiffs have not established any losses "due to" property or natural-resource damage that "result[ed] from" the spill.  Their moratoria losses arise only from the discretionary actions of a federal agency, which is immune from suit.  Neither OPA nor any other statute allows Plaintiffs to seek compensation from BPXP for the costs of doing business in a regulated industry.

## III.   PLAINTIFFS' REMAINING ARGUMENTS DO NOT OVERCOME THE APPLICABLE LAW BARRING A MOTION TO STRIKE.

### A.   The Court Should Not Credit the Law Review Articles of Professors Palmer and Robertson or the *Third Restatement (Physical and Emotional Harm)*.

Plaintiffs base the legal reasoning in their Motion almost exclusively on law review articles by Professors Palmer and Robertson that no court has adopted.  These articles are not precedents and their reasoning is flawed.  Robertson's assertions regarding moratoria-related recovery are even curiously noncommittal, especially considering that he is a PSC-retained expert.  *See* David W. Robertson, *Criteria for Recovery of Economic Loss Under the Oil Pollution Act of 1990*, 7 TEX. J. OIL, GAS & ENERGY L. 241, 258 (2011-12) ("For example, the Restatement (Third) approach **would probably support** OPA coverage of the economic-loss cases flowing from the government's temporary moratorium on offshore oil-and-gas drilling that was imposed in the wake of the Macondo/Deepwater Horizon disaster.") (emphasis added).  Ultimately, Robertson concedes that several types of claims would fail on remoteness grounds: "[T]he Restatement (Third) approach would (or could) exclude hypothetical claimants such as a Minnesota chicken farmer who is deprived of a cheap and effective oyster-shell supplement to chicken feed because Macondo has killed most of the Gulf of Mexico oysters."  *Id.*  This concession, that a question of law remains as to the closeness of the causal link, precludes granting the motion to strike.  However Robertson might draw the line, he recognizes a line must

be drawn — and his personal views do not settle the matter.  Likewise, Robertson objects to the application of proximate cause but he does not dispute that OPA must have logical stopping points, so some causation limitation is required.  Facts and argument relating to intervening causes are relevant to that issue (as Robertson admitted with respect to the BP Dealer Claims).

Robertson's conclusion that proximate-cause analysis does not apply to OPA § 2702 is based on an express reference to proximate cause in § 2704(c)(1), coupled with the *Russello* canon that where Congress includes particular language in one section of a statute, but omits it in another section, it is presumed to act intentionally.  But the *Russello* canon applies only when apples-to-apples comparisons are being made.  *City of Columbus v. Ours Garage & Wrecker Serv.*, 536 U.S. 424, 435 (2002) (*Russello* inapplicable where provisions in the same statute are distinctly formulated).  Here, OPA's "economic loss provisions are in this respect formulated in a fundamentally different manner than its provisions recognizing certain defenses to liability." Goldberg, 30 MISS. COLL. L. REV. at 355 n.42.  In addition, in *Rice v. Harken Exploration Co.*, 250 F.3d 264 (5th Cir. 2001), the Fifth Circuit construed OPA in a fashion flatly inconsistent with Robertson's argument.  There, the Court recognized that § 2702 applies only to "a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil into or upon the navigable waters."   § 2702(a).  Despite the obvious absence of explicit proximate-cause language, the Court concluded that, to meet this statutory requirement, a plaintiff must "produce evidence of *a close, direct and proximate link* between [the responsible party's] discharges of oil and any resulting actual, identifiable oil contamination of a particular body of natural surface water."  *Rice*, 250 F.3d at 272 (emphasis added).

Palmer's analysis premised on OPA § 2703 defenses fares no better.  Palmer notes that § 2703 confers on responsible parties only a narrow set of affirmative defenses where other

22

actions are the "sole cause" of the spill.  Yet the § 2703 defenses do not alter the basic causation

requirements for stating a valid claim under § 2702.  BPXP has always accepted its responsibility

to pay legitimate OPA claims that fall **within the terms of the statute**.  Yet the moratoria claims

do not satisfy the causation requirements of § 2702.  Palmer not only ignores those requirements

but tries to explain away the controlling Fifth Circuit precedent that faithfully applies § 2702.

He writes that *Taira Lynn* "[r]el[ied] upon the highly technical *Gatlin Oil* reading of the OPA"

and "I find [this] difficult to explain except in terms of apprehensions about extending the ambit

of pure economic loss."  Vernon Palmer, *The Great Spill in the Gulf ... and A Sea of Pure

Economic Loss*, 116 PENN. ST. L. REV. 105, 136 (2011).  Palmer thus purports not to understand

why the Fifth Circuit would focus on the **text of OPA** as opposed to some general policy or

purely common-law analysis.  But it is not for Palmer to second-guess or psychoanalyze the Fifth

and Fourth Circuits' approach to federal statutory interpretation.

Even aside from the critical point that law review articles are not the law, reliance on the

views of law professors is problematic given that such views are not unanimous.  Professor

Goldberg of Harvard disagrees with Professor Robertson about how to read OPA,[13] and

Professor Robertson acknowledges that Professor Shavell's law review article on moratoria

claims also disagrees with his position.  Robertson, 7 TEX. J. OIL, GAS & ENERGY L. at 253 n.70.

Shavell's article is the academic piece most focused on moratoria claims; it does not merely

consider them offhandedly, as Robertson does with his suggestion that moratoria claims **might**

---

[13]  Professor Goldberg is **not** "BPXP's expert."  He was independently selected by Kenneth Feinberg, who himself was chosen by the White House, with BP's concurrence, to be the GCCF administrator.  In contrast to Professor Robertson, who was paid by the PSC, Professor Goldberg has no reason to favor BPXP's positions.  *See* John C.P. Goldberg, *OPA and Economic Loss: A Reply to Professor Robertson,* 30 MISS. C. L. REV. 203, 204 (2011) ("I was asked to prepare a memorandum interpreting the scope of liability for economic loss under OPA, as well as federal admiralty law and state tort law.  At no time did Mr. Feinberg assert or imply that my job was to construe the law in a manner that would assist him in finding ways to exclude claims. … Mr. Feinberg wanted to know — as much as one can know prior to a definitive judicial resolution — the prospects facing different categories of economic loss claimants.  He would hardly have benefited from receiving a skewed report.").

*be* recoverable under the Third Restatement.[14]

Plaintiffs also rely heavily on the *Third Restatement of Torts*, but that document offers little basis for Plaintiffs' Motion.   ***First***, Plaintiffs rely only on a particular subdivision of that Restatement.   *See* Restatement (Third) of Torts: Physical and Emotional Harm (2009). But Plaintiffs' claims for moratoria losses are not claims for physical or emotional harm.   The moratoria claims are pure, consequential economic-loss claims.   ***Second***, even Plaintiffs' own hired expert, Professor Robertson, is unsure of whether this division of the *Third Restatement* would support recovery for the moratoria claims.   ***Third***, the authors of the *Third Restatement*, especially in the portions cited by Plaintiffs, seek not to apply current law but to revise the law to abandon proximate cause.   *See* Rec. Doc. 15655-1 at 18 & n.20 ("[T]he law has moved away from the notion of 'proximate cause' because it implies, falsely, that only the cause that is closest in time or geography falls within the scope of legal responsibility").   That normative analysis does not reflect the law as it actually stands.[15]   Contrary to this argument, courts routinely apply the concept of proximate cause, and the Supreme Court has said it remains the default rule of causation for federal statutes.   *Lexmark*, 134 S. Ct. at 1390.[16]   ***Finally***, the *Third Restatement* is aimed at analyzing common law tort issues rather than specific OPA textual requirements or the authoritative administrative law that has grown up around the statute at the Coast Guard.

---

[14] *See* Steven Shavell, *Should BP Be Liable For Economic Losses Due To The Moratorium On Oil Drilling Imposed After The Deepwater Horizon Accident?*, 64 Vand. L. Rev. 1995 (2011) (answering no).

[15] Because the recent Restatements have engaged in these sorts of "law reform" efforts, Justice Scalia has cautioned courts against relying on them.   *Kansas v. Nebraska*, 135 S. Ct. 1042, 1064 (2015) (Scalia, J., concurring in part and dissenting in part) ("[M]odern Restatements … are of questionable value, and must be used with caution. … Over time, the Restatements' authors have abandoned the mission of describing the law, and have chosen instead to set forth their aspirations for what the law ought to be.").

[16] The more applicable volume of the Third Restatement, covering liability for economic harm, does not reflect the same agenda for departing from principles of proximate cause.   *See* Restatement (Third) of Torts: Liability for Economic Harm (tentative drafts 2012 & 2014) (behind pay wall), http://tinyurl.com/mkokeqc; *see also* http://tinyurl.com/hgg7gfe (excerpting tentative draft).   Even scholars accept that proximate cause must apply to claims for economic losses.

### B.   Plaintiff's Arguments About Sovereign Immunity Reveal Contradictions In Their Legal Positions.

BPXP does not dispute that the United States has sovereign immunity from damages claims for having put the moratoria in place.  But it does not follow that because there is no monetary remedy against the government, BPXP must pay damages.[17]  If anything, the fact that Congress saw fit to provide only a limited set of injunctive-style remedies to claimants asserting injury traceable to regulatory decisions having a nexus to an oil spill suggests that Congress did not want monetary damages remedies to be visited on any defendant — public or private.

Plaintiffs' sovereign-immunity arguments also undermine their main argument under OPA.  Plaintiffs repeatedly stress (for the purpose of making arguments from other statutes) that the Interior Department had "broad discretion" to decide how to use its OCSLA regulatory authority.  *See* Rec. Doc. 15655-1 at 30.  That very discretion makes the moratoria decisions the government's alone and not an inevitable "occurrence" that followed from the spill.  The Coast Guard interprets the damages provisions of OPA § 2702. *See Gatlin Oil*, 169 F.3d at 210. In addition to disallowing windfall damages to plaintiffs that Congress did not intend to compensate, the Coast Guard's authoritative construction of the statute prevents scarce funds from being siphoned out of the OSLTF, also contrary to Congress's will.  So it makes sense that the Coast Guard has interpreted § 2702 to disallow damages for moratoria-related claims. Just as no claim to draw down a government-administered fund can lie for such alleged injuries, no claim for damages will lie against the government for its regulatory decisions.

### CONCLUSION

The Court should deny Plaintiffs' Motion to Strike and *In Limine*.

---

[17] The only relevant waiver of sovereign immunity is contained in the APA, 5 U.S.C. § 702, and it merely permits *judicial review* of the Department of Interior's regulatory decisions.  Such review was already conducted in Judge Feldman's courtroom and on appeal to the Fifth Circuit.  Monetary damages could not result from such judicial review of the moratoria actions, only the setting aside of those regulatory decisions.  5 U.S.C. § 706(2).

Dated: January 6, 2016

*/s/ Don K. Haycraft*

Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA
Telephone:  (504) 581-7979

Emily Johnson Henn
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
Telephone:  (650) 632-4715

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221

Respectfully submitted,

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2200

Robert C. "Mike" Brock
Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
Washington, DC 20005
Telephone: (202) 879-5000

Steven J. Menashi
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

Martin R. Boles
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone:  (213) 680-1400

Christopher W. Keegan
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:  (414) 439-1400

*Attorneys for Defendant BP Exploration & Production Inc.*

<u>**CERTIFICATION OF SERVICE**</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL2179, on this 6th day of January 2016.


<u>/s/ Don K. Haycraft</u>
Don K. Haycraft