UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 |
| This Document Relates To: | * | SECTION: J |
| *No. 12-970* | * | JUDGE BARBIER |
| | * | MAG. JUDGE SHUSHAN |

**ORDER & REASONS**

Before the Court is the **Motion of the Deepwater Horizon Economic Claims Center ("DHECC") for Return of Payments Made to Vision Design Management (Rec. Doc. 14262)** and related briefing (Response, Rec. Doc. 14715; Reply, Rec. Doc. 14804). The motion asserts that Vision Design Management, Inc. ("Vision Design") submitted a fraudulent claim to the DHECC, which the DHECC paid, and seeks an order requiring Vision Design and its individual members, Barbara J. Stokes and Scott B. Stokes, to make restitution in the amount of $1,610,311.13. For the reasons set for below, the Court will grant the motion.

This Order & Reasons largely assumes the reader's familiarity with the 2010 Gulf of Mexico oil spill, MDL 2179, the *Deepwater Horizon* Economic and Property Damages Settlement ("Settlement," Rec. Doc. 6430),[1] and the DHECC. The Court retains continuing and exclusive jurisdiction to interpret, implement, administer, and enforce the Settlement (Settlement §§ 4.2.3, 4.3.10, 4.4.7, 18.1; Order & Judgment ¶¶ 9, 17, Rec. Doc. 8139). In 2013, the Court appointed a Special Master to, among other things, examine and investigate past or pending claims submitted to the DHECC which are deemed suspicious and to initiate legal action to "clawback" the payment of any fraudulent claims. (Rec. Doc. 11288 at 3). This process

---

[1] Some of the capitalized terms used herein are defined in the Settlement.

eventually transitioned to the Claims Administrator for the DHECC.  (Rec. Docs. 14514, 14543). Following an investigation into Vision Design's claim, the Claims Administrator and the Special Master jointly filed the instant clawback motion.  (Rec. Doc. 14262).  Motions of this sort are in the nature of the proper administration and enforcement of a settlement program under the Court's exclusive control and jurisdiction; the Court's power to order equitable remedies as a result of fraudulent conduct is broad, flexible, and long-standing.  (*See* Thonn Order at 13-14, Rec. Doc. 12794).[2]

Barbara J. Stokes and Scott B. Stokes are the only members of Vision Design.  In July 2012, Vision Design, with the assistance of counsel, filed a Business Economic Loss ("BEL") claim with the DHECC.  A major part of the BEL computation involves determining the difference between a claimant's variable profits during a certain pre-spill period (i.e., the "Benchmark Period") and variable profits during a certain post-spill period (i.e., "the Compensation Period").[3]  The instant motion concerns Vision Design's purported revenue in 2009, which was used to determine its variable profits for the Benchmark Period.

BEL claims are calculated using data provided by the claimant.  Vision Design submitted to the DHECC financial documents indicating it had $821,462.98 in revenue in 2009, nearly all of which was earned in August and September.  A DHECC accountant queried Vision Design's then-counsel about this irregular revenue pattern.  Counsel responded, "Vision Design Management was a management/consulting company.  After and during a managing job Vision Design Management got paid and deposited money.  VDM worked each month but billing and

---

[2] The Court has previously ruled on several other "clawback" motions.  (*See* Thonn Order, Rec. Doc. 12794; Burrle Order, Rec. Doc. 14747; Zirlott Order, Rec. Doc. 14752; Lambert Order, Rec. Doc. 14780; Taylor Order, Rec. Doc. 14813; Parker Order, Rec. Doc. 15325; Alfonso Order, Rec. Doc. 15400; Riley Order, Rec. Doc. 15448).

[3] The Settlement's BEL Compensation Framework refers to this calculation as "Step 1 Compensation."  The BEL Compensation Framework also determines and compensates claimants for incremental profits the claimant might have been expected to generate in 2010 in the absence of the spill—what is referred to as "Step 2 Compensation."  Step 1 is added to Step 2.  A Risk Transfer Premium is then added to this amount to arrive at Total Compensation.  There may be offsets for prior oil spill payments.  (*See* Settlement, Ex. 4C).

statements were paid upon milestones or agreed upon by both parties." (Motion, Ex. G, Rec. Doc. 14262-9). Relying on this and other information from Vision Design, the DHECC found that the company had $821,463 in revenue and no variable expenses for the Benchmark Period (May-December 2009). For the Compensation Period, the DHECC found that Vision Design had $5,743.52 of revenue and $16,292.52 in variable expenses. Based on these figures, and after including accounting fees and other adjustments, the DHECC calculated Vision Design's compensation amount to be $2,168,967.71. Of this amount, Vision Design's former legal counsel received $558,656.68.[4]

The thrust of the DHECC's motion is that Vision Design falsely represented it had $821,462.98 in revenue in 2009 (i.e., the Benchmark Period), when it actually had no revenue. The DHECC's argument divides Vision Design's purported revenue into two categories. The first category concerns five checks from Summerplace LLC—another Stokes-owned entity—to Vision Design totaling $773,443.77. The DHECC claims that this money was from a construction loan that Summerplace LLC obtained from First Citizens Bank of Georgia and was intended to pay contractors for approved work on a town home construction project, such as roofing work and installation of cabinets. According to the DHECC, the $773,443.77 was not "revenue" for Vision Design, but rather "simply a pass through of payments for scheduled expenses paid for completion of the Summerplace construction." (Motion at 8, Rec. Doc. 14262-1). The second category consists of seven checks totaling $46,264.30. The DHECC points out that none of these checks were payable to Vision Design, three of the checks were written to and from the bank accounts of other Stokes-owned entities, and four of the checks were over six months old at the time of deposit. The DHECC asserts, "The staleness of most of these checks

---

[4] The day before the DHECC filed this motion, Vision Design's former counsel agreed to repay the $558,656.68 and withdrew from further representation. Thus, the DHECC seeks to clawback only $1,610,311.13, not the full $2.1 million paid on Vision Design's claim.

3

and the fact that each check required a third-party endorsement to be paid to Vision Design raise a serious question as to whether any of these checks represent consulting revenue or support the claim that '[a]fter and during a managing job Vision Design Management got paid and deposited money.'"  (Motion at 9, Rec. Doc. 14262-1 (quoting Vision Design's former counsel)).

Based on the evidence submitted to the Court, the Court finds there is no material dispute that at least $758,385 of the $821,462.98 (i.e., 92%) was not "revenue" for Vision Design, but was instead loan proceeds that merely "passed through" Vision Design to pay expenses on a construction project.[5]  Vision Design has not offered any counter-evidence to show that it had any revenue in 2009.  Vision Design's opposition presents only the general assertion that "Vision Design . . . was profitable and worked very hard to make a good business."  This is insufficient to rebut the DHECC's well-supported motion.

Vision Design also argues that any misrepresentations or errors with respect to its claim are the fault of its former counsel, accountants hired by its former counsel, and/or the DHECC (referred to as "BP" in Vision Design's opposition), and, therefore, Vision Design should not be held responsible for any improper payment.  The Court has previously considered and rejected similar arguments, and does so again here.  (*See* Thonn Order at 21-22, Rec. Doc. 12794; Zirlott Order at 4-5, Rec. Doc. 14752; Parker Order at 6-7, Rec. Doc. 15325).  Additionally, the Court notes that an accountant who assisted Vision Design with preparing its GCCF[6] claim told Barbara Stokes in November 2010 that

> Nearly all the 2009 activity is for Summer Place and will be shown as "Due to/from Summerplace" on [Vision Design's] books and return, then will get entered over on Summerplace's books and return.  ***There is no income for***

---

[5] The DHECC asserts that $773,443.77 was loan proceeds.  However, the DHECC's motion traces only $758,385 to the construction loan.  There is doubt regarding the origin and nature of two checks dated 8/29/10 and totaling $15,058.77.  Absent an evidentiary hearing, that doubt must be resolved in Vision Design's favor.

[6] The "GCCF" administered oil spill claim payments prior to the DHECC.  Vision Design submitted a claim to the GCCF, but that claim was denied for lack of supporting documentation.

> *2009*—the only income I have for [Vision Design] is the project fees paid in 2008. ***This is not going to look good for the oil spill claim—since there was no income in 2009***.

(Reply, Ex. 1, Rec. Doc. 14804-1). This shows that Vision Design was aware that at least $758,385, if not all of the purported 2009 revenue, was not revenue.[7]

The Court also finds that the DHECC has not carried its burden with respect to $63,077.98 of Vision Design's purported 2009 revenue.[8] This is not to say that this amount actually was legitimate revenue to Vision Design, only that the DHECC has not met its burden relative to this amount on the present motion and without an evidentiary hearing.

Nevertheless, the DHECC has shown, clearly and convincingly, that Vision Design's BEL settlement payment was nearly entirely based on fraud. Vision Design represented that it had $821,462.98 in revenue in 2009 when it actually had, at best, only $63,077.98 in revenue. Given that at least 92% of Vision Design's claimed revenue was a fiction, the Court finds it is proper to order Vision Design to pay restitution of the entire settlement amount (less the amount returned by Vision Design's former counsel). Furthermore, the Court finds for reasons stated in the DHECC's motion that the sole members of Vision Design, Barbara J. Stokes and Scott B. Stokes, should be held personally liable as well. (*See* Motion at 10-12, Rec. Doc. 14626-1).

For these reasons,

IT IS ORDERED that the DHECC's Motion for Return of Payments Made to Vision Design Management (Rec. Doc. 14626) is hereby GRANTED.

---

[7] The Court notes that Barbara Stokes disputed the accountant's assessment, responding, "Summer place paid VDM to consult to finish Summer Place town homes. There is NO money due to Summer Place it was my fee." (Reply, Ex. 1, Rec. Doc. 14804-1). However, no records have been provided to the Court that support Stokes' assertion.

[8] The Court has already explained that the DHECC has failed to establish that $15,058.77 was construction loan proceeds. *Supra* note 5. As to the seven checks totaling $46,264.30, the DHECC asserts there is "a serious question" as to whether they constitute revenue. But the DHECC's burden is not met by merely establishing that there is "a serious question" about whether certain funds were actually revenue. Finally, the DHECC's motion makes no claim regarding $1,754.91 of the purported $821,462.98 in revenue. The sum of these three amounts is $63,077.98.

5

The Court will enter a judgment vacating the award in favor of Vision Design and requiring Vision Design and its members to make restitution to the DHECC in the amount of $1,610,311.13, plus post-judgment interest.

New Orleans, Louisiana, this 19th day of January, 2016.

_____
United States District Judge