## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010.<br><br>This Filing Applies to Nos. 13-706, 13-810, 13-1143, 13-1185, 13-1222, 13-1386, and 13-2006 | MDL No. 2179<br><br>Section J<br><br>Judge Barbier<br>Magistrate Judge Shushan |

**REPLY MEMORANDUM IN SUPPORT OF
BPXP'S MOTION TO DISMISS MORATORIA/PERMITORIA CLAIMS
(COMBINED WITH RESPONSE TO STATEMENT OF THE U.S.
ON THE OPA TEST CASE PLEADINGS-STAGE CROSS MOTIONS)**

*Counsel Listed On Signature Block*

**TABLE OF CONTENTS**

Page

**ARGUMENT**..................................................................................................................1

**I. MORATORIUM CLAIMS FAIL OPA'S CAUSATION REQUIREMENTS**............1

    A.    *Taira Lynn* and *Gatlin Oil* Control This Case. ........................................................2

    B.    Plaintiffs' Concocted "Substantial Factor" Test Does Not Satisfy OPA.................4

**II. THE DECISIONS OF THE COAST GUARD ARE ENTITLED TO DEFERENCE.**.......................................................................................................7

**III. OPA REQUIRES PROXIMATE CAUSE, WHICH ALSO INCORPORATES SUPERSEDING CAUSE AS A DEFENSE.**..................................9

**CONCLUSION** ............................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Buffalo Marine Servs. v. United States*,
    663 F.3d 750 (5th Cir. 2011) ...................................................................................8

*Chevron v. NRDC*,
    467 U.S. 837 (1984)...................................................................................................8

*Exxon Co. v. Sofec*, *Inc.*
    517 U.S. 830 (1996).................................................................................................10

*Exxon Corp. v. Amoco Oil Co.*,
    875 F.2d 1085 (4th Cir. 1989) .........................................................................5, 6, 10

*Gatlin Oil Co. v. United States*,
    169 F.3d 207 (4th Cir. 1999) ..............................................................................2, 8

*Hornbeck Offshore Servs. v. Salazar*,
    696 F. Supp. 2d 627 (E.D. La. 2010) ................................................................6, 7

*Hornbeck Offshore Servs. v. Salazar*,
    No. 10-1663, 2010 WL 3523040 (E.D. La. Sept. 1, 2010)......................................5

*In re Claimant EIC Assocs., Inc.*,
    Claim P05005-125 (Jan. 23, 2013), http://tinyurl.com/p26tne7 ...............................9

*In re Taira Lynn Marine Ltd. No. 5*,
    444 F.3d 371 (5th Cir. 2006) ..........................................................................1, 3, 4

*Lexmark Int'l v. Static Control Components*,
    134 S. Ct. 1377 (2014)...........................................................................................10

*Nguyen v. American Commercial Lines*,
    805 F.3d 134 (5th Cir. 2015) ..................................................................................8

*United States v. Mead Corp.*,
    533 U.S. 218 (2001)..................................................................................................8

**Statutes**

33 U.S.C. § 2702(a) ........................................................................................1, 6, 8, 9

33 U.S.C. § 2702(b)(2)(E) ...................................................................................1, 3, 6

33 U.S.C. § 2702(b)(2)(F)...........................................................................................7

33 U.S.C. § 2703 ................................................................................................................9

33 U.S.C. § 2713 ................................................................................................................8

33 U.S.C. § 2713(c)(2)........................................................................................................8

33 U.S.C. § 2713(e) ............................................................................................................8

**Other Authorities**

135 Cong. Rec. H7954-02 (Nov. 2, 1989)...........................................................................5

John C. P. Goldberg, *Liability for Economic Loss in Connection with the
   Deepwater Horizon Spill*, 30 MISS. C. L. REV. 335 (2011) .........................................7

SCHOENBAUM'S ADMIRALTY & MAR. LAW (5th ed. 2013)...........................................10

# ARGUMENT

## I.   MORATORIUM CLAIMS FAIL OPA'S CAUSATION REQUIREMENTS.

Plaintiffs pay little heed to the specific causation demands of 33 U.S.C. § 2702(a) and § 2702(b)(2)(E), which restrict claims under OPA to those economic losses that "result from" a pollution "incident" and are "due to the injury, destruction, or loss of real property, personal property, or natural resources."   Instead, Plaintiffs try to show that the *Deepwater* spill was a "***substantial factor***" in bringing about the moratoria — even though ***that term appears nowhere in OPA***.   In addition to ignoring OPA's text, Plaintiffs also ask this Court to sidestep controlling court and agency precedent.   Most significantly, Plaintiffs ask this Court to discount the Fifth Circuit's decision in *In re Taira Lynn Marine Ltd. No. 5*, 444 F.3d 371 (5th Cir. 2006), because it applied OPA to a pollution incident that was smaller in scale than *Deepwater*.   Plaintiffs instead urge this Court to look to non-binding decisions from other circuits and district courts.   *See* Rec. Doc. 15704 at 29.   Yet spill size does not matter to OPA causation analysis.   Plaintiffs also talk out of both sides of their mouths about whether the moratoria were required after the spill (as they now seem to stress) or instead were ***discretionary*** government decisions (as they originally asserted and also oddly continue to admit, even now).[1]   But their concessions, starting in 2014, that the moratoria were discretionary, future-oriented regulatory decisions defeats the idea that Plaintiffs' moratoria losses unavoidably "result from" a pollution "incident" and are "due to the injury, destruction, or loss of real property, personal property, or natural resources."[2]

---

[1] *Contrast* Rec. Doc. 15704 at 11 (Plaintiffs asserting moratoria were mandatory), *with id.* at 29 (Plaintiffs quoting Judge Feldman's finding that the moratoria were discretionary); Rec. Doc. 13108-1 at 28 (Plaintiffs arguing the moratoria were discretionary government functions); *and* Rec. Doc. 15655-1 at 30-32 (same).

[2] Plaintiffs also strangely try to disparage BPXP's motion to dismiss as applying to **"*so-called*"** moratoria/permitoria claims.   *See* Rec. Doc. 15704 (title of brief).   If Plaintiffs mean to suggest that there are no actual claims advanced by Plaintiffs seeking recovery for moratoria losses, that is incorrect: (1) Bisso Marine is a class member and thus ***only its moratoria claims*** are preserved for adjudication here; (2) the E&PD Settlement resolved most OPA claims but Section 3.3 therein reserved moratoria claims; and (3) this OPA Test Case process was designed from the outset to focus on moratoria claims, as Plaintiffs have previously acknowledged.   *See* Rec. Doc. 13108-1 ("**Plaintiffs Basic**

A.     *Taira Lynn* and *Gatlin Oil* Control This Case.

Plaintiffs cannot avoid the conclusion that *Taira Lynn* — as well as the Fourth Circuit's reasoning in *Gatlin Oil Co. v. United States*, 169 F.3d 207 (4th Cir. 1999), which the Fifth Circuit adopted — embody a controlling interpretation of OPA causation.  Plaintiffs insist that this Court should ignore the Fifth Circuit's causation analysis because these cases addressed smaller pollution incidents than *Deepwater*, but nothing in the reasoning of *Taira Lynn* or *Gatlin Oil* turned on spill size.  Rather, as Plaintiffs implicitly acknowledge by citing cases addressing particularly small incidents, *see* Rec. Doc. 15704 at 29-30, the same causation principles apply to claims regardless of the incident's scope.  In fact, the relative size of the incidents means that it should have been *easier* in *Taira Lynn* and *Gatlin Oil* for the plaintiffs to establish OPA causation.  The mandatory evacuation in *Taira Lynn* served *no other purpose* than to address the direct consequences of the pollution incident.  And the fire in *Gatlin Oil* also had *no other cause* than the fumes emanating from the spill.  By contrast, Plaintiffs have admitted that the moratoria addressed the risk of possible future spills and were motivated by perceived weaknesses of industry-wide safety measures.  In other words, the causal connection of the *Deepwater* spill to moratoria losses is demonstrably *weaker* than the causal connection of the pollution incidents in *Taira Lynn* and *Gatlin Oil* to losses from the evacuation and the fire in those cases.  If the plaintiffs in those cases could not state an OPA claim, then Plaintiffs here certainly cannot.

Plaintiffs also suggest that because the *Deepwater* spill "triggered" a purported duty to address the consequences of the spill (*i.e.,* to undertake removal actions),[3] it is distinguishable

---

Statement of the Case[:] The Spill — either alone or in combination with other factors, *including the Deepwater Moratoria and other material slow-downs and changes in deepwater and shallow-water permitting* — caused or contributed to a loss of profit and/or impairment of earning capacity to each of the Test Case Plaintiffs.") (emphasis added).  There clearly are moratoria claims that this Motion to Dismiss can resolve.

[3] Plaintiffs' argument that Interior Department moratoria action was mandatory fails on its own terms.  The CWA imposed mandatory duties *on the EPA* as to a spill of national significance to engage in certain spill response

2

from *Taira Lynn* and *Gatlin Oil.* As Plaintiffs admit, however, *Gatlin Oil* involved a "Federal On-Scene Coordinator … appointed by the Coast Guard" to address the incident, and *Taira Lynn* involved a mandatory evacuation by the Louisiana State Police directed to address the consequences of that incident. Rec. Doc. 15704 at 26. These cases plainly involved public authorities acting pursuant to a legal duty to protect the public and natural resources from pollution incidents. Moreover, the whole topic of OPA removal costs is a red herring. Plaintiffs are not seeking removal costs here; rather, Plaintiffs are seeking to recover economic losses caused by the reduction in demand for their services that followed after the government decided to impose the moratoria. The fact that OPA allows recovery for "removal costs" does not establish the very different point that Plaintiffs' attenuated private damage claims are viable.

Plaintiffs further observe that the court in *Taira Lynn* concluded "there was no evidence of any damage to any property or natural resources ***resulting from the gaseous release***." Rec. Doc. 15704 at 26 (emphasis added). That's precisely the point. There certainly was property damage. *See Taira Lynn*, 444 F.3d at 380 (noting that food inventory "spoiled in a freezer when law enforcement officials shut off the electricity during the evacuation" and that "manufacturing runs had to be prematurely terminated and the company lost the materials in those runs and could not sell the products").[4] But the Fifth Circuit held that the damage resulted from the evacuation and not from the pollution incident. *Id.* at 383 ("Any property damage upon which Claimants must rely to recover under § 2702(b)(2)(E) did not result from the discharge or threatened

---

activities. But, as Plaintiffs' quotation of OCSLA makes clear, ***the Interior Department (source of the moratoria/permitoria) was not mandated to engage in any particular set of measures in response to the spill.*** The moratoria/permitoria were discretionary. *See* Rec. Doc. 15704 at 24-25 (effectively contrasting EPA mandatory duties with Interior discretionary duties). *See also supra* p. 1.

[4] If Plaintiffs are arguing that the gaseous release harmed no natural resources, that is not only a very thin basis for trying to duck the Fifth Circuit's OPA explicit causation analysis, it is demonstrably untrue. ***Air resources were harmed.*** The evacuation helped spare residents from inhalation injury. Additionally, one manufacturer alleged "toxic gas permeation" and another claimed harm to its "vapor deposition" business, though the focus of OPA claims were terminated production runs due to the evacuation. *Taira Lynn*, 444 F.3d at 377.

discharge of oil."). In this way, the Fifth Circuit has rejected Plaintiffs' argument that a governmental response such as the moratoria "results from" the pollution incident and therefore economic losses that result from the governmental response may be said to "result from" the pollution incident, too. *But see* Rec. Doc. 15704 at 20 (advancing this argument). The Fifth Circuit has held that OPA requires a more direct link. If economic losses from the *Taira Lynn* evacuation do not qualify for OPA damages, neither do economic losses from the moratoria.

### B.    Plaintiffs' Concocted "Substantial Factor" Test Does Not Satisfy OPA.

Having fled from the causation standards the Fifth Circuit held are present in OPA, Plaintiffs proceed to invent a causation standard that has no basis in the statutory text or case law: that a pollution incident need only be a "substantial factor" in bringing about a government response that indirectly caused economic losses. If this were the relevant test, then the claimants in *Taira Lynn* certainly could have recovered under OPA: there is no question that the pollution incident there was a substantial factor in bringing about the mandatory evacuation; indeed, it was the ***sole cause*** of the evacuation. Similarly, there is no question that the spill was a substantial factor in causing the fire in *Gatlin Oil*. But this made-up position is not the governing legal test.

Rather, OPA requires that "the claimant's damages '***result from such incident***,' *i.e.*, the discharge or threatened discharge of oil." *Taira Lynn*, 444 F.3d at 383 (quoting 33 U.S.C. § 2702(a)). The Fifth Circuit has made clear that the "result from" requirement is not satisfied where economic losses are caused by a governmental response to a pollution incident. Instead, such losses must be directly caused by the pollution incident. It does not matter, as Plaintiffs suggest, that a governmental response was "foreseeable." Certainly, the evacuation in *Taira Lynn* was a foreseeable response to the release of gaseous hydrocarbons. But even though Plaintiffs devote so much space to arguing that "some" governmental response was a foreseeable response to the *Deepwater* spill, Rec. Doc. 15704 at 11, Plaintiffs actually concede that the

particular moratoria imposed here were *not* foreseeable.  Plaintiffs acknowledge that "[p]erhaps" one can "imagine a different Administration not implementing 'similar' moratoria" following the spill.  *Id.* at 13.  Perhaps?  The ***illegal moratoria*** were so disconnected from the *Deepwater* spill that a court in this District held the moratoria to be arbitrary and capricious because "no rational nexus exists between the fact of the tragic Deepwater Horizon blowout and placing an attainder of universal culpability on every other deepwater rig operator in the Gulf of Mexico."  *Hornbeck Offshore Servs. v. Salazar*, No. 10-1663, 2010 WL 3523040, at *7 (E.D. La. Sept. 1, 2010).

Plaintiffs respond by saying that "[e]ven assuming, *arguendo*, that the scope or duration of the moratorium and associated permitting changes were 'unreasonable' or 'unforeseeable' or even 'illegal,' wouldn't BP still be liable to the extent that the Government's response was reasonable, lawful, and foreseeable?"  Rec. Doc. 15704 at 13.  This, combined with Plaintiffs' concession that the moratoria were (at least partly) ***not*** a response to the *Deepwater* spill but aimed at possible ***future*** spills,[5] means that Plaintiffs are asking this Court to imagine a hypothetical moratorium that would have been a reasonably foreseeable (and legal) response aimed solely at addressing the spill — and then to award Plaintiffs damages for ***that imaginary moratorium***.  That is not how OPA claims work.  The fact that Plaintiffs' claim requires such counterfactual speculation illustrates why OPA does not recognize claims based on attenuated chains of causation.[6]  It also illustrates why courts have refused to "extend the legal liability of private citizens to encompass the arbitrary acts of government bureaucracy."  *Exxon Corp. v. Amoco Oil Co.*, 875 F.2d 1085, 1089 (4th Cir. 1989) (a case utterly ignored by Plaintiffs).

---

[5] *See, e.g.*, Rec. Doc. 15704 at 17 (acknowledging "[t]he fact that the moratorium may have been motivated, in part, to 'facilitate an industry-wide review of drilling practices … aimed at avoiding future spills'"); Rec. Doc. 15704 at 24 ("The Government could have been, and in fact was, motivated by *both* the desire to prevent other future incidents *and* to mitigate, contain and otherwise respond to the ongoing spill at Macondo.").

[6] OPA only authorizes "compensation for ***direct, proven damages***."  135 Cong. Rec. H7954-02 (Nov. 2, 1989) (statement of Rep. Stangeland) (emphasis added).

Plaintiffs' claims are unprecedented — because such moratoria-loss claims have no basis in law.[7]

In addition to the "result from" requirement of § 2702(a), OPA also requires that economic losses be "due to the injury, destruction, or loss of real property, personal property, or natural resources."  33 U.S.C. § 2702(b)(2)(E).  Plaintiffs' losses are due to the reduction in demand for their services, which may have occurred for several reasons, including adverse trends in the macro-economy, management errors, and the government's drilling moratorium.  What those reasons share in common is that each fails to meet the § 2702(b)(2)(E) requirement.

In their brief, citing Professor Goldberg, Plaintiffs identify classes of OPA plaintiffs to whom they try to analogize themselves.  Rec. Doc. 15704 at 18.  But the claimants Goldberg identifies as likely entitled to recover, in contrast to Plaintiffs with moratoria claims, suffer losses **_directly_** from the destruction of natural resources: the fisherman can no longer catch his fish, and the hotel owner and employee can no longer provide access to their beachfront.  More relevantly here, Goldberg identifies claimants he deems **_unlikely_** to be eligible for OPA compensation:  "(v) the restaurant owner, (vi) the real estate agent, and (viii) the furniture store operator," even though they have activities "very closely bound up with local economies that revolve around the use of resources and property that have been damaged."  _Id._  Assuming (as Plaintiffs seem to) that Goldberg's analysis of OPA claims here is correct, the concession that these claimants cannot recover proves fatal to Plaintiffs' claims because the connection of moratoria losses to destruction of natural resources is even more remote than that of the economic losses Goldberg deems unrecoverable.  Indeed, a federal court was "unable to divine or fathom a relationship" between the spill "and the immense scope of the moratorium."  _Hornbeck Offshore Servs. v._

---

[7] Precisely because government can act for many different reasons under various rubrics, "[p]rivate citizens cannot be made the guarantors of government."  _Exxon_, 875 F.2d at 1089.  While Plaintiffs cite examples of "[b]oth legislative and executive drilling 'moratoria' [that] have been enacted **_every year from 1982 through 2008_**," Rec. Doc. 15704 at 11 (emphasis added), **_they do not cite a single case_** in which a private party has been held liable for losses caused by such a government drilling moratorium.

*Salazar*, 696 F. Supp. 2d 627, 637 (E.D. La. 2010).  Rather, the government decided, in its discretion, that "new deepwater wells pose an unacceptable risk of serious and irreparable harm" and "the installation of additional safety or environmental protection equipment is necessary" and for those reasons halted all drilling — ***even though the natural resources were otherwise available for continued use***.  *Id.* at 636-37.  As a result of that moratorium, the demand for Plaintiffs' services declined, which allegedly caused an economic loss.  In this way, Plaintiffs' loss has too-attenuated a connection to the spill or to natural resource harm in the same way that the restauranteur's economic loss has too-attenuated a connection to the spill's damage to natural resources.  If the restaurant owner does not have a valid OPA claim, then Plaintiffs — who are much further removed from natural-resource damage — cannot possibly have such a claim.

It is no answer to this gaping failure to satisfy the causal demands of OPA to say that the moratorium was motivated ***in part*** because resources were tied up in spill response.[8]  That government resources may be limited does not establish that Plaintiffs' losses were "due to" environmental damage.  If that were enough to establish an OPA claim, then ***any citizen*** could claim economic loss on the basis that the government did not provide some hypothesized set of needed public services because it was busy dealing with a spill.[9]  OPA, however, is designed to compensate for losses flowing from ***harm to natural resources***.  Plaintiffs just do not qualify.[10]

## II.     THE DECISIONS OF THE COAST GUARD ARE ENTITLED TO DEFERENCE.

Plaintiffs acknowledge that the National Pollution Funds Center ("NPFC") administered by the Coast Guard has determined that OPA does not authorize damages for economic losses

---

[8] Judge Feldman called this "limited resources" argument a "disturbing admission by this Administration" rather than a serious, lawful justification for shutting down drilling in the Gulf.  *Hornbeck*, 696 F. Supp. 2d at 637 n.9.

[9] Moreover, 33 U.S.C. § 2702(b)(2)(F) limits recovery for public service costs to States and their subdivisions alone.

[10] Plaintiffs suggest that fishermen and beachfront hoteliers would be entitled to recover under maritime law even without OPA.  Rec. Doc. 15704 at 18.  Goldberg explains why that is wrong.  *See* John C. P. Goldberg, *Liability for Economic Loss in Connection with the Deepwater Horizon Spill*, 30 MISS. C. L. REV. 335, 366 (2011).

resulting from the moratorium.  For that reason, Plaintiffs ask this Court to ignore the Coast

Guard's rulings, arguing that the rulings should be deemed non-authoritative.  Again, Plaintiffs

are asking this Court to disregard the controlling precedent of the Fifth Circuit, which has

determined that the NPFC's interpretation of OPA is entitled to *Chevron* deference.  *Buffalo*

*Marine Servs. v. United States*, 663 F.3d 750, 757 (5th Cir. 2011) ("NPFC's interpretation of the

OPA is entitled to deference.") (specifically applying *Chevron v. NRDC*, 467 U.S. 837 (1984)).

Congress delegated to the NPFC the power to adjudicate claims against the Oil Spill

Liability Trust Fund.  33 U.S.C. § 2713; *see also Gatlin Oil*, 169 F.3d at 209 ("The Coast Guard

administers the Act.").[11]  In doing so, the Coast Guard interprets § 2702(a) and § 2702(b)(2)(E)

and those provisions ***control both*** the damages available against a responsible party and the

damages compensable by the Fund.[12]  There is no difference between the statutory standards for

Fund claims versus the statutory standards that control here.  Identical law on causation applies

to each, and in applying this law, this Court accordingly must defer to the NPFC's interpretations

administering OPA.  *Buffalo Marine*, 663 F.3d at 754-55 (applying *Chevron* deference to the

NPFC's interpretation of OPA); *Gatlin Oil*, 169 F.3d at 211 (same).  As BPXP explained in its

opening memorandum, the NPFC has determined that § 2702(a) and § 2702(b)(2)(E) do not

---

[11] Plaintiffs cite *United States v. Mead Corp.*, 533 U.S. 218 (2001) as if it supports denying deference to the Coast Guard here but the opposite is true.  "We have recognized a very good indicator of delegation meriting *Chevron* treatment in express congressional authorizations to engage in the process of rulemaking ***or adjudication*** that produces regulations ***or rulings*** for which deference is claimed." *Id.* at 229 (emphasis added).  The Coast Guard is expressly authorized to issue OPA adjudicatory rulings.  33 U.S.C. § 2713(c)(2); *Buffalo Marine*, 663 F.3d at 754-57.  By contrast, *Mead* denied *Chevron* deference to Customs Service ***letters*** for reasons that do not apply here including that ***46 offices*** could issue ***thousands of such letters***.  *Id.* at 233.  Here, the unitary Coast Guard NPFC issues the OPA claims rulings construing and the NPFC's rulings have all been consistent on the moratoria issue.

Plaintiffs also invoke *Nguyen v. American Commercial Lines*, 805 F.3d 134 (5th Cir. 2015).  But *Nguyen* did not involve *Chevron*.  It involved Coast Guard regulations concerning a procedure for filing claims to the OSLTF that was deemed inapplicable to claims filed in court.  *Id.* at 141.  That decision rested on the text of 33 U.S.C. § 2713(e), which references Coast Guard regulations designed to apply only to agency proceedings.  Section 2713(e) is irrelevant to this case since BPXP is not relying on agency regulations concerning the filing of OSLTF claims.

[12] *See Gatlin Oil*, 169 F.3d at 210 ("[T]he Coast Guard ***interpreted section 2702(a)*** to compensate only removal costs and damages that resulted from the discharge of oil into navigable waters.") (emphasis added).

authorize claims for moratoria losses.  That determination precludes Plaintiffs' claims.

While Congress has delegated interpretive authority to the Coast Guard to administer OPA, the Department of Justice has received no such delegation and is entitled to no deference. The Justice Department has filed a "statement," Rec. Doc. 15702, in which it takes no position on whether Plaintiffs have stated a valid claim but argues that OPA does not recognize a "superseding intervening cause" defense.  The Justice Department attacks the straw man that 33 U.S.C. § 2703 authorizes an affirmative defense of "superseding intervening cause."[13]  But BPXP never argued that its superseding-cause defense was housed in § 2703, only that such a defense is an inextricable part of the analysis that proximate cause requires (*see* Part III below). The fact that § 2703 does not reference superseding cause does not excuse Plaintiffs from having to satisfy the causation requirements of § 2702(a) and § 2702(b)(2)(E) in order to state a claim. Plaintiffs' claims do not satisfy those requirements.  BPXP's principal arguments simply ask the Court to enforce the standards for stating a valid claim in § 2702(a) and § 2702(b)(2)(E).  In similar fashion, the Coast Guard's NPFC has not relied on § 2703 to hold moratoria claims ***non-compensable*** under the terms of § 2702(a) and § 2702(b)(2)(E).  The Justice Department brief ignores those critical rulings by the agency administering OPA, which the Department is obligated to defend.[14]

## III.   OPA REQUIRES PROXIMATE CAUSE, WHICH ALSO INCORPORATES SUPERSEDING CAUSE AS A DEFENSE.

BPXP agrees with the Justice Department that this Court need not hold that OPA

---

[13] The Justice Department's arguments regarding § 2703(a) are irrelevant because this provision addresses only whether BPXP could escape ***all liability*** for the spill, not whether BPXP is liable to any ***particular plaintiff*** claiming § 2702 damages.  BPXP has acknowledged that it is an OPA "responsible party" liable for damages to proper plaintiffs and for proper claims as defined by § 2702.  But § 2703 does not render ***§ 2702's defenses*** unavailable to BPXP, including the incorporation of proximate cause into § 2702 as recognized by the Coast Guard.  *See In re Claimant EIC Assocs., Inc.*, Claim P05005-125, at 12 (Jan. 23, 2013), http://tinyurl.com/p26tne7 (denying economic loss claims where a 2004 oil spill was not the proximate cause).

[14] *See* Rec. Doc. 13269 (BPXP Opp. to Pl. Mot. to Strike) at 17 n.13 (incorporated by reference herein).

incorporates proximate cause; it is possible to resolve this case on the grounds that Plaintiffs' claims are (1) precluded by Fifth Circuit precedent, which requires a closer causal connection than Plaintiffs can establish, and (2) barred by the Coast Guard's analogous rulings.

That said, there would be nothing remarkable about holding that OPA requires proximate cause.  It is the default for statutory causation.[15]  "That venerable principle reflects the reality that 'the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing.'"  *Lexmark*, 134 S. Ct. at 1390.  As this Court stated, "There has to be a cutoff point somewhere on liability; otherwise, there is no end."  B1 Trans. (Rec. Doc. 2702) at 88:25-89:3.

Finally, the Justice Department's statement, much like Plaintiffs' opposition brief, ignores the Fourth Circuit's ruling in *Exxon* that as part and parcel of proximate cause doctrine, a superseding cause of illegal government action breaks the causal chain and prevents a private party from being held liable as a "guarantor[] of government," 875 F.2d at 1089:

> ***Proximate causation is one of tort law's mechanisms for drawing the line on the legal liability of negligent tortfeasors.***  We agree with the trial court that in this case the line must be drawn before Amoco's liability is extended to encompass injuries inflicted upon Exxon by the Baltimore County government.  ***The Health Department's arbitrary action was the superseding cause of Exxon's injuries*** and consequently, the district court properly excluded the evidence of Exxon's permit damages.

*Id.* (emphasis added); *see also Exxon Co. v. Sofec*, *Inc.* 517 U.S. 830, 837 (1996) ("superseding cause doctrine, which is one facet of the proximate causation requirement").[16]

## CONCLUSION

OPA Test Trial Plaintiffs' claims for moratoria/permitoria damages should be dismissed.

---

[15] Courts "generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute.  For centuries, it has been a well-established principle of the common law, that in all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause."  *Lexmark Int'l v. Static Control Components*, 134 S. Ct. 1377, 1390 (2014) (internal quotation marks and alteration omitted).

[16] *See also* 1 SCHOENBAUM'S ADMIRALTY & MAR. LAW § 5-3 (5th ed. 2013) ("Another aspect of proximate causation is whether an intervening or superseding cause relieves the defendant of liability."); Rec. Doc. 13108-1 at 14 n.14 (Plaintiffs conceding same point); Rec. Doc. 15655-1 at 15 n.17 (conceding it once more).

Dated: January 20, 2016

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA
Telephone:  (504) 581-7979

Emily Johnson Henn
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
Telephone:  (650) 632-4715

Neil K. Roman
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1221

Respectfully submitted,

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2200

Robert C. "Mike" Brock
Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
Washington, DC 20005
Telephone: (202) 879-5000

Steven J. Menashi
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

Martin R. Boles
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone:  (213) 680-1400

Christopher W. Keegan
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:  (414) 439-1400

*Attorneys for Defendant BP Exploration & Production Inc.*

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL2179, on this 20th day of January 2016.

/s/ *Don K. Haycraft*
Don K. Haycraft