UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG  "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * * | MDL NO. 2179  SECTION: J |
| THIS DOCUMENT RELATES TO: | * * | |
| *ALL CASES IN PLEADING BUNDLE B3* | * * | JUDGE BARBIER MAG. JUDGE SHUSHAN |
| * * * * * * * * * * * * | | |

### THE CLEAN-UP RESPONDER DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' SUBMISSIONS IN CONNECTION WITH THE ORDER TO SHOW CAUSE AS TO THE B3 CLAIMS

The Clean-Up Responder Defendants[1] respectfully submit the following Joint Response to Plaintiffs' Submissions (Rec. Docs. 15796, 15799, 15800, 15801, 15809, 15811, 15822, 15823, and 15829) in Connection With the Order to Show Cause as to the B3 Claims Against the Clean-Up Responder Defendants (the "OSC").  (Rec. Doc. 15711).

### PRELIMINARY STATEMENT

Only eight individual Plaintiffs have provided a submission in response to the Court's OSC but none of them even remotely make the necessary showing required by the OSC.  This Court should therefore enter the Order and Reasons attached as Exhibit A to the OSC (the "Proposed Order"), dismissing all but eleven B3 claims with prejudice.[2]  Indeed, none of the Plaintiffs' submissions in connection with the OSC even address, let alone dispute, the legal and

---

[1] The Clean-Up Responder Defendants are the following: O'Brien's Response Management, L.L.C. (formerly known as O'Brien's Response Management, Inc.), National Response Corporation, Marine Spill Response Corporation, Dynamic Aviation Group, Inc., Airborne Support, Inc., Airborne Support International, Inc., DRC Emergency Services, LLC, International Air Response, Inc., Lynden, Inc., Lane Aviation, Inc., Tiger Rentals, Ltd., The Modern Group, Ltd., and The Modern Group GP-SUB, Inc.

[2] In the Proposed Order, the Court reserved judgment on eleven Plaintiffs.  (Rec. Doc. 15711-1 at 31-32).

1

factual underpinnings of the Proposed Order.  They do not, for example, contest in any way the Court's analysis or rationale for its conclusions that the Clean-Up Responder Defendants are entitled to derivative immunity under the Clean Water Act ("CWA"), derivative discretionary function immunity under the Federal Tort Claims Act ("FTCA"), and a finding of implied conflict preemption vis-à-vis the B3 claims asserted against them.  Nor do they address the applicable statutes, rules, case law, or factual findings of the Proposed Order.  Moreover, they do not raise any concerns with the *Lone Pine* protocol or the notice procedures first approved by the Court in Pretrial Order No. 57 ("PTO 57") (Rec. Doc. 13158) and executed by the parties in connection with both PTO 57 and the OSC.  Instead, these submissions merely offer insufficient reasons why the Proposed Order should not specifically apply to them, without challenging the appropriateness of the Proposed Order or its legal and factual underpinnings.

      Aside from failing to identify a basis to carve themselves individually out of the Proposed Order, all but one of the Plaintiffs failed to submit a B3 questionnaire as required by PTO 57.  That reason alone warrants their dismissal.  In addition, four of them self-identified as clean-up workers in their submissions, but failed to opt out of the Medical Benefits Class Action Settlement (the "Medical Benefits Settlement").  (Rec. Doc. 6427-1).  As such, they are bound by the Medical Benefits Settlement's terms and the release contained therein, which encompasses the B3 claims against the Clean-Up Responder Defendants.

      Even ignoring these threshold deficiencies, the content of the Plaintiffs' submissions confirms that none of these eight Plaintiffs have raised a genuine issue of fact material to the Clean-Up Responder Defendants' entitlement to derivative immunity and implied preemption.  None of the submissions even reference, let alone implicate, any of the Clean-Up Responder Defendants.  Nor do they provide all of the required salient details concerning the circumstances

of their alleged exposure, including the pathway of exposure, the date(s), time(s), and location(s) of exposure, the duration of such exposure, and the specific nature of the injuries or medical conditions sustained as a result. And none of the Plaintiffs (1) identified any instructions or orders from any federal government agency that a Clean-Up Responder Defendant violated or exceeded or (2) described any acts or omissions of a Clean-Up Responder Defendant and how such act or omission caused their injuries. Consequently, the Clean-Up Responder Defendants' motions for summary judgment should be granted and the Court should issue the Proposed Order. (Rec. Doc. 15711-1).

## FACTUAL BACKGROUND & PROCEDURAL POSTURE

The Clean-Up Responder Defendants are all named defendants in the operative Master Complaint for the B3 pleading bundle, as defined in Pretrial Order No. 11 and clarified in Pretrial Order No. 25 (Rec. Docs. 569, 983), and are also named in a number of B3 individual actions pending in this Court. The Clean-Up Responder Defendants first set forth their derivative immunity and implied conflict preemption arguments in motions to dismiss filed on February 28, 2011, and following a limited B3 discovery period specifically designed for the Clean-Up Responder Defendants to develop the facts necessary to renew these arguments, moved for summary judgment on these grounds on May 18, 2012. (Rec. Docs. 6536, 6538, 6545, 6546, 6547, 6551, 6553, 6557, 6559, 6597). Notwithstanding the Clean-Up Responder Defendants' showing of their entitlement to derivative immunity and the applicability of the implied conflict preemption doctrine to the B3 claims asserted against them, the Court elected to provide Plaintiffs with an additional opportunity to come forward with specific evidence supporting their B3 claims by issuing PTO 57 (Rec. Doc. 13158), a *Lone Pine* case management order.

3

PTO 57 delineated a number of methods by which Plaintiffs could be apprised of their obligation to submit specific disclosures supporting their B3 claims against the Clean-Up Responder Defendants. These methods included individually mailed notice to Plaintiffs' last known mailing addresses, as provided by Plaintiffs in their Direct Filing Short Form, Plaintiff Profile Form, and/or, for *pro se* Plaintiffs, opt-out request to the Court-appointed Claims Administrator for the Medical Benefits Settlement. PTO 57 was also served on Plaintiffs' counsel via File & ServeXpress ("F&S"), posted on the Court's publicly accessible website, and, to the extent practicable, emailed to counsel of record for B3 Plaintiffs by the Plaintiffs' Steering Committee ("PSC"). In their November 14, 2014 Joint Report Regarding Claimants' Compliance with PTO 57 (the "Joint Report"), Plaintiffs' Co-Liaison Counsel and Defense Liaison Counsel certified that they had complied with the notice procedures deemed sufficient by the Court. (Rec. Doc. 13667 at 1-2).

Although PTO 57 specifically warned Plaintiffs that any failure to comply with its terms would subject their claims to dismissal, the overwhelming majority of B3 Plaintiffs did not submit a questionnaire pursuant to PTO 57. As set forth in the Joint Report, only eleven Plaintiffs submitted a timely questionnaire with a written response to all five questions posed therein *and* either properly opted out of, or were not covered by, the Medical Benefits Settlement. (Rec. Doc. 13667 at 6). Only one additional questionnaire has been submitted since the Joint Report was filed (Rec. Doc. 15711-1 at 28-29), and no other Plaintiffs have come forward justifying their failure to submit a questionnaire and/or seeking an extension to comply with PTO 57.

For the abovementioned eleven Plaintiffs, the Court has indicated it will reserve judgment about whether they ultimately can pursue any claim against any Clean-Up Responder

Defendant(s). (Rec. Doc. 15711 at 31-32). For the remaining B3 Plaintiffs, the Court issued the OSC on January 7, 2016 to give them one last opportunity to articulate why their B3 claims should not be dismissed with prejudice. (Rec. Doc. 15711). The Clean-Up Responder Defendants and the PSC then complied with the same notice procedures approved by the Court and delineated in PTO 57 with respect to the OSC and the Proposed Order attached thereto. (Rec. Doc. 15723). Only eight individual Plaintiffs submitted any response to the OSC on or before the January 28, 2016 deadline set forth in the OSC. (Rec. Docs. 15796, 15799, 15800, 15801, 15809, 15811, 15822, 15823, and 15829).

## ARGUMENT

### I. THE COURT CAN AND SHOULD ENTER THE PROPOSED ORDER

The purpose of the OSC was to give the B3 Plaintiffs yet another opportunity to come forward and state why their claims against the Clean-Up Responder Defendants should not be dismissed with prejudice. (Rec. Doc. 15711 at 2). Like PTO 57, the OSC warned Plaintiffs that the Court intended to dismiss their claims, and detailed the Court's rationale for doing so in the Proposed Order.

The Court's rationale for dismissal remains untouched, despite the multiple opportunities the Court has provided the B3 Plaintiffs to contest it. Indeed, even in their best light, the OSC submissions do not even attempt to contest the Court's findings and conclusions. None of them challenged the Court's finding that the Clean-Up Responder Defendants are entitled to CWA and FTCA derivative immunity and that the doctrine of implied conflict preemption is applicable to the B3 claims. Nor have any of these submissions challenged the Court's findings of fact or conclusions of law articulated in the Proposed Order. Instead, as explained more fully below,

they offer nothing more than unsubstantiated and insufficient reasons why their individual claims should not be dismissed.

In short, the Plaintiffs have failed to challenge the legal and factual underpinnings of the Proposed Order in any respect. Indeed, the arguments advanced in the eight Plaintiffs' submissions effectively concede that the Proposed Order is entirely proper. The Court therefore should enter the Proposed Order as to all other B3 Plaintiffs regardless of the merits (or lack thereof, as detailed below) of any of the eight Plaintiffs' idiosyncratic contentions about their individual claims.

## II.     ALL BUT ONE OF THE PLAINTIFFS FAILED TO COMPLY WITH PTO 57

District courts have "broad discretion to preserve the integrity and purpose of [a] pretrial [] order." *Standard Services Co., Inc. v. Witex USA, Inc.*, No. 02-CV-537, 2003 WL 2004442, at *2 (E.D. La. Apr. 30, 2003) (Barbier, J.) (*quoting Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996)). This need is even greater in administering a massive, complex multidistrict litigation such as this. *See, e.g., In re: Asbestos Products Liability Litigation (No. VI),* 718 F. 3d 236, 246-47 (3d Cir. 2013) (noting that "administering cases in multidistrict litigation is different from administering cases on a routine docket," and so "in complex cases, district courts must have wide discretion to manage complex issues and potential burdens on defendants and the court") (*quoting In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006) and *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340-41 (5th Cir. 2000)) (internal citations omitted); *Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011) ("agree[ing] with *Acuna*'s explanation that district judges have broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16") (*citing Acuna*, 200 F.3d at 340).

Given the advanced stage of this litigation, the Court was well within its discretion to issue PTO 57 and require that the B3 Plaintiffs comply with the terms of its case management order or have their claims dismissed.  *See, e.g., In re: Vioxx Products Liability Litigation*, 557 F. Supp. 2d 741, 743-44 (E.D. La. May 30, 2008) (noting that "the Fifth Circuit has recognized the value of and approved the use of *Lone Pine* orders in mass tort litigation" and "find[ing] that at this advanced stage of the litigation, it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury") (*citing Acuna*, 200 F.3d at 340).

All but one of the Plaintiffs failed to submit a B3 questionnaire as required by PTO 57.[3] That reason alone warrants their dismissal with prejudice pursuant to *Acuna*, 200 F.3d 335, and its progeny, Federal Rule of Civil Procedure 16(f), and/or Federal Rule of Civil Procedure 41(b). This includes the claims of Plaintiffs Freddie Galloway, Anita Kastorff, Jeremiah LaBrosse, Maria Mendoza, Tyrone Moss, Roland Myers, and Aaron Wallace.  (Rec. Docs. 15796, 15799, 15800, 15801, 15809, 15811, 15823, and 15829).

### III. PLAINTIFFS KASTORFF, MENDOZA, MOSS, AND WALLACE ARE ALSO BOUND BY THE MEDICAL BENEFITS SETTLEMENT

The claims of Plaintiffs Kastorff, Mendoza, Moss, and Wallace should be dismissed because these Plaintiffs have self-identified as clean-up workers in their submissions and are bound by the Medical Benefits Settlement.[4] (Rec. Docs. 15799, 15800, 15801, 15809, and 15823).  Specifically, because these Plaintiffs are Class members, they were required to properly opt out of the Medical Benefits Settlement by the deadline set by the Court in order to assert any

---

[3]  Plaintiff Scea Burrage submitted a questionnaire pursuant to PTO 57, but is one of the eleven Plaintiffs for whom the Court has deferred ruling on at this time.  (Rec. Doc. 15711-1 at 31-32).

[4]  Pursuant to the Medical Benefits Settlement, Plaintiffs are members of the Medical Benefits Settlement Class (the "Class") if, among other things, they "[w]orked as CLEAN-UP WORKERS at any time between April 20, 2010 and April 16, 2012," where "CLEAN-UP WORKERS" is broadly defined to include all persons who performed RESPONSE ACTIVITIES.  (Rec. Doc. 6427-1, Sections I.A.1, II.Q).

7

released claims against any released parties. (Rec. Docs. 6419 at ¶ 29, 6427-1 at Section XI.E, 7176). Such released parties include the Clean-Up Responder Defendants, all of whom are expressly listed as OTHER RELEASED PARTIES on Exhibit 6 to the Medical Benefits Settlement. (Rec. Doc. 6427-8). None of these four Plaintiffs have properly opted out. They are consequently barred from pursuing their B3 claims against the Clean-Up Responder Defendants.

Here, all four of the aforementioned Plaintiffs have indicated on the face of their OSC responses that they performed RESPONSE ACTIVITIES, as defined in the Medical Benefits Settlement. (Rec. Doc. 6427-1 at II.OOOO). Kastorff has alleged that she worked as a member of the crew aboard a vessel that "went to the rig site to assist in the clean up effort," (Rec. Doc. 15800 at 4), Mendoza has alleged that she "perform[ed] certain shoreline cleanup services," (Rec. Doc. 15809-1 at 1), and Moss has alleged that he "did beach clean up," cleaned boom, and decontaminated various vessels. (Rec. Doc. 15823 at 1). For his part, Wallace affirmatively states that he is a Class member, as "defined in Section I.A.1" of the Medical Benefits Settlement, since he served as a CLEAN-UP WORKER and proposed certain "drawings" and "concepts" associated with capping the well. (Rec. Doc. 15799 at 2-3). All of these Plaintiffs are thus members of the Class[5] and must have validly opted out of the Medical Benefits Settlement in order to pursue any RELEASED CLAIMS, defined to include personal injury and medical monitoring claims such as the B3 claims. (Rec. Doc. 6427-1 at Section II.LLLL, Section XVI).

---

[5] With respect to the April 20, 2010 – April 16, 2012 timeframe provided for in the Class definition, Kastorff, Moss, and Wallace all filed Short Forms joining in the B3 Master Complaint in the first half of 2011 and thus appear to have been involved in the Deepwater Horizon oil spill response during the requisite time period. (Case No. 2:10-CV-08888, Rec. Docs. 34894, 59462, and 105845). And while it does not appear that Mendoza filed a Short Form joining in the B3 Master Complaint or an individual action against the Clean-Up Responder Defendants, the Declaration attached to her response to the OSC states that she commenced performing clean-up actions in April 2010 and continued to do so at least through October 2010, when she purportedly experienced her exposure injury. (Rec. Doc. 15809-1). As such, she too satisfies the requisite time parameters of Class membership.

8

As outlined in the Declaration of the Claims Administrator for the Medical Benefits Settlement, Matthew Garretson, which is attached hereto as Exhibit 1, there is no record of these four Plaintiffs properly opting out of the Medical Benefits Settlement. Plaintiffs Kastorff, Mendoza, Moss, and Wallace are thus bound by the terms of the Medical Benefits Settlement and their B3 claims against the Clean-Up Responder Defendants should be dismissed with prejudice. *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* Nos. 2:10-CV-3896, 2:11-CV-826, 2:12-968, 2015 WL 3648728, at *6 (E.D. La. June 10, 2015) (granting Defendants' motion for summary judgment because Plaintiff is a Class member who did not opt out and thus his exposure claims are released vis-à-vis the Defendants, all of whom are listed on Exhibit 6 to the Medical Benefits Settlement).

## IV. THE OSC SUBMISSIONS FAIL TO RAISE ANY ISSUE MATERIAL TO THE CLEAN-UP RESPONDER DEFENDANTS' ENTITLEMENT TO SUMMARY JUDGMENT

As noted above, seven of the Plaintiffs have offered no explanation for their failure to comply with the requirements of PTO 57 and submit a timely questionnaire. *See, e.g., In re: Vioxx Products Liability Litigation*, 388 Fed. Appx. 391, 397-98 (5th Cir. July 16, 2010) (affirming district court's dismissal of claims with prejudice where Plaintiffs failed to comply with the Court's *Lone Pine* order) (*citing Acuna*, 200 F.3d at 340). Moreover, none of these Plaintiffs' submissions have raised any legal or factual issue regarding the Clean-Up Responder Defendants' entitlement to summary judgment. These submissions fail to reference, let alone discuss, any specific conduct on the part of any of the Clean-Up Responder Defendants. Rather, these Plaintiffs' OSC submissions offer nothing more than conclusory allegations and unsubstantiated assertions regarding their individual claims, and thus are insufficient to defeat summary judgment. For these reasons, and for the additional reasons discussed below,

Plaintiffs' submissions in connection with the OSC are insufficient and the Proposed Order should be entered.

Even if the Court determines that any of these eight Plaintiffs are entitled to pursue their B3 claims (and it should not, for the reasons articulated herein), the Court should simply include them in the group of eleven Plaintiffs for whom the Court has reserved judgment, and enter the Proposed Order with respect to all other B3 Plaintiffs. (Rec. Doc. 15711-1).

### A. Submission of Anita K. Kastorff (Rec. Doc. 15800)

Kastorff failed to opt out of the Medical Benefits Settlement, and is thus barred from pursuing her B3 claims against the Clean-Up Responder Defendants. She also failed to submit a questionnaire pursuant to PTO 57, despite conceding that the MDL-related "letters and packets always found [her]" (Rec. Doc. 15800 at 1) and indicating that she remains represented by an attorney, who should have received PTO 57 both via F&S[6] and by email from the PSC. Kastorff has provided no justification for her failure to so comply and her claim should be dismissed for the same reasons articulated in the Proposed Order regarding Plaintiffs Who Did Not Submit Disclosures Pursuant to PTO 57 ("Grouping #1") and Plaintiffs Who Failed to Comply with the Requirements of PTO 57 ("Grouping # 3"). (Rec. Doc. 15711-1 at 25, 28-31).

Even if the Court were to consider the information Kastorff has provided in her submission, her account contains no evidence that any of the Clean-Up Responder Defendants failed to adhere to the directives of the federal government or that the dispersant operations conducted by the Clean-Up Responder Defendants were not approved by or exceeded the authority conferred by the federal government. Similarly lacking are any of the required

---

[6] As this Court has previously noted, "[a]ll attorneys in this MDL are required to register for this service" pursuant to Pretrial Order No. 12. *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* 2015 WL 3648728, at * 5 n. 11.

10

supportive details, such as the date(s), time(s), duration(s), and location(s) of the alleged exposure incident(s), the Clean-Up Responder Defendants(s) alleged to be responsible for the exposure incident(s), and any identifiable characteristics about the plane(s) that conducted the spray(s). Kastorff's vague and speculative allegations thus fall short of creating a genuine issue of material fact.

### B. Submission of Jeremiah M. LaBrosse (Rec. Doc. 15811)

LaBrosse appears to be represented by counsel[7] and has provided no justification for his failure to comply with PTO 57 and submit a B3 questionnaire. Accordingly, his B3 claim against the Clean-Up Responder Defendants should be dismissed for the same reasons delineated in the Proposed Order with respect to Groupings #1 and #3.

Even if the Court were to consider the information LaBrosse has provided in his submission, his vague and conclusory allegations regarding the provision of safety gear while he worked as a clean-up worker fall short. For example, he fails to specify what exactly he means by "protection" and what equipment he alleges he was not provided. (Rec. Doc. 15811 at 1). More particularly, he fails to identify any evidence that the "protection" allegedly missing was required by the federal government for his specific clean-up activity, nor does he provide any details regarding any directive or instruction concerning safety gear issued by the federal government that any of the Clean-Up Responder Defendants violated. Importantly, he does not reference any Clean-Up Responder Defendant or tie any alleged act or omission of a Clean-Up Responder Defendant to any safety-related instruction(s) or order(s) issued by the federal government. Moreover, LaBrosse does not describe how any purported act or omission related

---

[7] The unredacted exhibits to the November 21, 2012 Declaration of Matthew Garretson, copies of which were provided to the Clean-Up Responder Defendants on August 2, 2013 (Rec. Doc. 10920), as well as LaBrosse's short-form joinders (Case 2:10-CV-08888, Doc. Nos. 56724 and 94739), identify LaBrosse's counsel.

11

to safety gear caused his alleged B3 injury, illness, or medical condition. LaBrosse's submission thus fails to raise a genuine issue of material fact regarding whether any Clean-Up Responder Defendant violated any safety-related directives issued by the federal government.

### C. Submission of Maria Mendoza (Rec. Doc. 15809)

Like Kastorff, Mendoza failed to opt out of the Medical Benefits Settlement and has provided no justification for failing to comply with PTO 57, and so her claim should be dismissed for the same reasons.

Moreover, despite Mendoza's arguments in her submission that she "was not provided a PTO-57 questionnaire form to provide to the Court," it does not appear that Mendoza has filed any materials pursuant to Pretrial Orders 24 and 25 (Rec. Docs. 982, 983) to assert herself as a B3 Plaintiff in this litigation. There is also no discernible record of her having filed an individual action against any Clean-Up Responder Defendant and so she has no valid pending claim against this group. As such, since there was no indication that Mendoza had any intention of pursuing a B3 claim against any Clean-Up Responder Defendant until she filed her response to the OSC, Mendoza was not a B3 Plaintiff to whom PTO 57 was directed in the first instance.

Putting that aside, it does not appear from the face of her submission that Mendoza is even pursuing a claim against any of the Clean-Up Responder Defendants, but instead, against her former employer, C and G Welding, Inc. ("C and G"). C and G is not a Clean-Up Responder Defendant and so Mendoza's arguments concerning this entity not only fail to demonstrate a basis for relief against the Clean-Up Responder Defendants, but are irrelevant as to whether the Court should issue the Proposed Order as to the Clean-Up Responder Defendants. In any event, because Mendoza did not submit a timely request for exclusion from the Medical Benefits

12

Settlement, she is barred from pursuing any B3 personal injury claim against any of the Clean-Up Responder Defendants.

### D. Submissions of Tyrone Moss (Rec. Doc. 15823) and Aaron Wallace (Rec. Docs. 15799, 15801)

Like Kastorff and Mendoza, Moss and Wallace are Class members who did not opt out of the Medical Benefits Settlement and have failed to provide any justification for their failure to comply with the terms of PTO 57. Their claims should therefore be similarly dismissed. Although both Moss and Wallace do not appear to be represented by counsel, they are also obligated to adhere to deadlines set by the Court in its orders, as *pro se* status does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (*citing Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975)); *see also, e.g., In re Vioxx Products Liability Litigation*, 499 Fed. Appx. 362, 363 (5th Cir. Dec. 4, 2012) (affirming a judgment dismissing *pro se* Plaintiff's claim for failure to comply with a *Lone Pine* order, noting that "it was Bilal's obligation to produce evidence supporting his claim, and he did not").

Even if the Court were to consider the information Moss has provided in his submission, all he has alleged is that he "worked in close contact with contaminants" and that it is possible his medical condition may deteriorate over time. (Rec. Doc. 15823). That Moss may have been exposed during the cleanup has no bearing on the issues of derivative immunity and implied preemption and the Clean-Up Responder Defendants' entitlement to summary judgment. Similarly, Wallace's submission fails to raise any competent proof to dispute the Clean-Up

Responder Defendants' *prima facie* showing of entitlement to derivative immunity and the applicability of the implied conflict preemption doctrine to the B3 claims.[8]

### E. Submissions of Roland J. Myers (Rec. Doc. 15796) and Freddie M. Galloway (Rec. Doc. 15829)

Resident Plaintiffs Myers and Galloway both failed to submit a questionnaire pursuant to PTO 57 and have presented no justification for that failure. Although it does not appear that Galloway is represented by counsel, like Moss and Wallace, *pro se* status does not excuse her noncompliance.[9] Both Myers and Galloway's claims should be dismissed for the reasons detailed in the Proposed Order with respect to Groupings #1 and #3.

Even if the Court were to consider the information Myers and Galloway have provided in their submissions, all they have alleged is that they were exposed to oil given the proximity of their respective residences to the nearby river. (Rec. Docs. 15796 at 1, 15829 at 1). That Myers and Galloway may have been exposed is irrelevant to the Clean-Up Responder Defendants' entitlement to derivative immunity and a finding of implied preemption. Further, among other things, Myers and Galloway have failed to provide any evidence that any Clean-Up Responder Defendant(s) failed to act pursuant to the authority and direction of the federal government and thus caused their B3 injuries and/or damages.

### F. Submission of Scea B. Burrage (Rec. Doc. 15822)

Burrage is one of the eleven Plaintiffs for whom the Court has elected to reserve judgment in the Proposed Order. (Rec. Doc. 15711-1 at 31-32). Consequently, her arguments regarding the merits of her claim are premature and irrelevant as to whether the Court should enter the Proposed Order. As the Court has only permitted a response from the Clean-Up

---

[8] Further, it appears from the face of one of his two submissions that Wallace is levying his B3 claims against parties that are not the Clean-Up Responder Defendants. (Rec. Doc. 15799).
[9] Myers' short-form joinder (Case 2:10-CV-08888, Doc. No. 119971) identifies Myers' counsel.

Responder Defendants in connection with the OSC and Proposed Order, and has not yet approved briefing regarding the sufficiency of the aforementioned eleven Plaintiffs' questionnaires, the Clean-Up Responder Defendants will not address here the insufficiency of Burrage's questionnaire.

## CONCLUSION

For the foregoing reasons, as well as those previously set forth in the Clean-Up Responder Defendants' summary judgment briefing, the Clean-Up Responder Defendants respectfully request that their motions for summary judgment be granted and that the Court issue the Proposed Order attached as Exhibit A to the OSC (Rec. Doc. 15711-1), dismissing all but eleven of the B3 claims against the Clean-Up Responder Defendants with prejudice.

Dated: February 4, 2016

/s/ Michael J. Lyle

Michael J. Lyle (DC #475078, IL #6199227)
Eric C. Lyttle (DC #482856)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street NW, 11th floor
Washington, DC 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Sylvia E. Simson (NY #4803342)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Patrick E. O'Keefe (LA # 10186)
Philip S. Brooks, Jr. (LA # 21501)
MONTGOMERY BARNETT, L.L.P.
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3300
Telephone: (504) 585-3200
Facsimile: (504) 585-7688

Attorneys for O'BRIEN'S RESPONSE MANAGEMENT, L.L.C. and NATIONAL RESPONSE CORPORATION

 /s/ Ben L. Mayeaux
Frank X. Neuner, Jr. (LA #7674)
Ben L. Mayeaux (LA #19041)
Jed M. Mestayer (LA #29345)
NEUNERPATE
One Petroleum Center, Suite 200
1001 W. Pinhook Rd.
Lafayette, LA  70503
Telephone: (337) 237-7000
Facsimile: (337) 233-9450

Attorneys for AIRBORNE SUPPORT, INC. and AIRBORNE SUPPORT INTERNATIONAL, INC.

/s/ Alan M. Weigel

Alan M. Weigel (NY #3065307)
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: 212-885-5000
Facsimile: 917-332-3836

Attorney for MARINE SPILL RESPONSE CORPORATION

/s/ Leo R. McAloon, III

Leo R. McAloon, III (LA # 19044)
Michael D. Cangelosi (LA #  30427)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
New Orleans, LA 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011

Attorneys for DYNAMIC AVIATION GROUP, INC.

/s/ Kevin R. Tully
Kevin R. Tully (LA #1627)
H. Carter Marshall (LA #28136)
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street, Suite 2300
New Orleans, LA 70130-6078
Telephone: (504) 561-5700
Facsimile: (504) 593-4220

Attorneys for INTERNATIONAL AIR RESPONSE, INC. and LYNDEN INCORPORATED

 /s/ George E. Crow
George E. Crow (TX # 05151900)
LAW OFFICE OF GEORGE E. CROW
P.O. Box 30
Katy, TX 77492
For Overnight Physical Delivery use
1519 Miller Avenue
Katy, TX 77493
Telephone: (281) 391-9275

Attorney for LANE AVIATION, INC.


 /s/ Harold J. Flanagan
Harold J. Flanagan (LA # 24091)
Brandon C. Briscoe (LA # 29542)
Sean P. Brady (LA # 30410)
Andy Dupre (LA # 32437)
FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 2405
New Orleans, LA 70170
Telephone: 504-569-0235
Facsimile: 504-592-0251

Attorneys for DRC EMERGENCY SERVICES, LLC

 /s/ John E. Galloway
John E. Galloway (LA #5892)
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street, Suite 4040
New Orleans, LA 70139
Telephone: (504) 525-6802
Facsimile: (504) 525-2456

Attorney for TIGER RENTALS, LTD., THE MODERN GROUP, LTD., and THE MODERN GROUP GP-SUB, INC.

17

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Clean-Up Responder Defendants' Joint Response to Plaintiffs' Submissions in Connection With the Order to Show Cause as to the B3 Claims has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 4th day of February, 2016.

/s/ Michael J. Lyle
Michael J. Lyle