**COVINGTON**

BEIJING   BRUSSELS   LONDON   LOS ANGELES
NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Neil K. Roman

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 5695
nroman@cov.com

**Via Email**                                                                                          January 29, 2016

The Honorable Sally Shushan
U.S. District Court for the Eastern District of Louisiana
500 Poydras Street, Rm. 345
New Orleans, Louisiana 70130

> **Re: OPA Test Cases – BP's Challenge to Bisso's Request to Claw Back Documents**

Dear Judge Shushan:

Pursuant to paragraphs 6 and 7 of Pretrial Order No. 14, BP challenges Bisso's January 21 request to claw back five of its post-spill financial projections as privileged communications and/or privileged work product.[1] These documents, which are enclosed for the Court's *in camera* review, are:

- Bisso50437391 (marked during Mr. Weisgarber's deposition as Ex. 2);
- Bisso50436969 (marked during Mr. Weisgarber's deposition as Ex. 3);
- Bisso50436970;
- Bisso50436971 (marked during Mr. Weisgarber's deposition as Ex. 4); and
- Bisso50436972.

The current record—including sworn deposition testimony—offers no basis for concluding that these documents are privileged.

---

[1] BP has sequestered these documents pending the Court's resolution of the parties' dispute, pursuant to Pretrial Order No. 14, paragraph 7.

COVINGTON

Judge Shushan
January 29, 2016
Page 2

In February 2012, Bisso created five spreadsheets containing financial projections purporting to reflect Bisso's anticipated performance in the years following the Spill. These financial projections were last modified by Bisso's Interim CFO at the time, Mr. Weisgarber. They are standalone documents (*e.g.*, not e-mail attachments) and do not appear at any other place in Bisso's production.

BP asked Mr. Weisgarber about three of the projections during his deposition on January 13, 2016. Mr. Weisgarber testified that he created similar financial projections in the ordinary course of his business responsibilities as Interim CFO and that he had no role in Bisso's claims preparation. No formal privilege or work-product objections were raised. Specifically, Plaintiff's counsel "reserve[d] [the] right to revisit this specific area of questioning" but admitted that "we have no basis to prevent the witness from testifying regarding the document today." Weisgarber Dep. 46:3–16, Jan. 13, 2016.

More than a week later, on January 21, counsel for Bisso issued a claw-back notice related to these financial projections, asserting attorney-client and work product privileges. Despite Mr. Weisgarber's testimony, Bisso now claims the financial projections at issue "were specifically created at [Paul Sterbcow's] and [Bisso's economic loss expert's] request as part of the effort to settle Bisso's OPA economic loss claim with BP before suit was filed." Bisso's claw-back request should be denied for three reasons.

***First,*** there does not appear to be a basis to assert attorney-client privilege or the work-product doctrine over these documents. "[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treas.,*

COVINGTON

Judge Shushan
January 29, 2016
Page 3

*IRS*, 768 F.2d 719, 720 (5th Cir. 1985).  The work-product doctrine protects from disclosure materials "prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3); *Hodges, Grant & Kaufmann*, 768 F.2d at 721; *see also Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981) ("Rule 26(b)(3) codifies the work-product doctrine.").  These documents are not attorney-client communications, and there is no clear evidence in the record that they were requested by or provided to counsel—for example, nothing on Bisso's privilege log appears to reflect communications from Mr. Weisgarber to outside counsel to provide financial information along these lines.[2]  Indeed, the properties of these documents reveal that Mr. Robert Weisgarber was involved in preparing them during his tenure as Bisso's Interim CFO in 2012—he was the last person to save the documents—and there are other financial forecasts in the record, to which Bisso has not objected.  Most importantly, Mr. Weisgarber testified that he created financial forecasts pursuant to his "ordinary business responsibilities." Weisgarber Dep. 46:18–49:2.

**Second,** Bisso's contention that these documents were compiled in connection with its presentment claim does not alter the analysis.  Bisso has attempted three times to limit discovery into the presentment materials and the Court has properly rejected the first two attempts.  It should reject this third attempt as well.  As an initial matter, Mr. Weisgarber testified unequivocally that he did not do any work to analyze the

---

[2] In fact, Bisso took the position on redirect examination that Mr. Weisgarber would not have been privy to information about Bisso's damages claim in his position as Interim CFO.  *See* Weisgarber Dep. 199:21–201:4.

COVINGTON

Judge Shushan
January 29, 2016
Page 4

impact of the Spill on Bisso, either in his CFO capacity or for any other reason, and that he was not involved in preparing Bisso's presentment materials (which were submitted many months after these documents were created, in late November 2012). Weisgarber Dep. 33:15–35:8. There is a conflict between Mr. Weisgarber's testimony and Bisso's current position. Again, at no point during Mr. Weisgarber's deposition did Bisso attempt to clarify his testimony, and Bisso did not seek to claw back the documents until eight (8) days after Mr. Weisgarber's deposition.[3]

**Third,** to the extent Bisso argues that these financial spreadsheets were prepared for its presentment claims, such factual financial information—even if protected by attorney-work product—should be discoverable because the presentment materials were provided to BP for its analysis. BP is entitled to the underlying financial information that is allegedly the basis for Bisso's damages and claims. *See, e.g.*, *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) ("[T]he work product privilege is waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered."). Further, even if a third party communication is obtained or prepared with an eye toward litigation, it may be discoverable if the "one who would invade that privacy [can] establish adequate reasons to justify production." *Hickman v. Taylor*, 329 U.S. 495, 512 (1947); *see also* Fed. R. Civ. P. Rule 26(b)(3). BP respectfully submits that the information contained in the spreadsheets is vital to numerous aspects

---

[3] Notably, Bisso was sufficiently confident in Mr. Weisgarber's testimony that it waived the right to read and sign the transcript.

**COVINGTON**

Judge Shushan
January 29, 2016
Page 5

of its defense against Bisso's claims, such as the reliability of Bisso's forecasts and completeness of presentment.

\* \* \*

Given the factual record developed at Mr. Weisgarber's deposition and the nature of the financial information contained in the documents, BP respectfully requests that the Court deny Bisso's claw-back request.

Sincerely,

*/s/ Neil K. Roman*

Neil K. Roman

Enclosures

cc: Paul M. Sterbcow
Conrad S.P. "Duke" Williams
James P. Roy
Stephen J. Herman
J. Andrew Langan, P.C.
Matthew T. Regan, P.C.
Christopher W. Keegan