UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| This Filing Applies to: | JUDGE BARBIER |
| Nos. 13-706, 13-810, 13-1143, 13-1185, 13-1386 and 13-2006[1] | MAGISTRATE JUDGE SHUSHAN |

<u>ORDER</u>

[OPA Test Cases – Responses of Wadleigh and Blake to
BP's Interrogatories (Rec. doc. 15898)]

The defendant, BP Exploration & Production, Inc. ("BP"), and three of the plaintiffs in the OPA Causation Test Cases are proceeding under a Court supervised pre-trial schedule. <u>See</u> Rec. doc. 15838 and similar orders. Pursuant to the schedule, the plaintiffs filed a renewed motion to strike affirmative defenses and BP filed a motion to dismiss the Moratoria claims. <u>Id</u>. at 3. The parties are required to file cross-motions for summary judgment by April 4, 2016. <u>Id</u>.

> The purpose of the cross-motions for summary judgment is to resolve whether, as a matter of law, there is a cause of action or a claim for damages caused by the government's imposition of the drilling moratorium or for the government's failure to issue permits.

Rec. doc. 15664 at 3. To present the cross-motions for summary judgment, the plaintiffs must attempt to demonstrate that there is "no genuine dispute as to any material fact" on whether each plaintiff sustained at least some damages as a result of the government's imposition of the drilling

---

[1] The OPA Causation Test Cases are:

   Bisso Marine Company, Inc. v. BP Exploration & Production, Inc., 13-0706.
   Wadleigh Industries, Inc. v. BP Exploration & Production, Inc., et al, 13-0810.
   Certified Platform Services, LLC v. BP Exploration & Production, Inc., 13-1143.
   Blake International USA Rigs, LLC v. BP Exploration & Production, Inc., et al, 13-1185.
   Seahawk Liquidating Trust, et al v. BP Exploration & Production Inc., et al, 13-1386.
   Black Elk Energy Offshore Operations, LLC v. BP Exploration & Production, Inc., et al, 13-2006.

moratorium or for the government's failure to issue permits.  Fed. R. Civ. P. 56(a).  While the amount of the damages is disputed, the facts underlying the alleged instances of Moratoria or Permitoria damages must be undisputed.

Wadleigh Industries, Inc. ("Wadleigh") and Blake International USA Rigs, LLC ("Blake") were ordered to "serve <u>verified</u> responses to BP's interrogatories. . ." and declarations from their expert, Harold Asher.  Rec. doc. 15664 at 1-2 (emphasis added).[2]  On January 8, 2016, Blake served its verified third amended answers to defendants' first set of interrogatories.  On January 8, 2016, Wadleigh served its second supplemental, amended and restated answers to defendants' first set of interrogatories which were not verified.[3]  On January 29, 2016, Wadleigh and Blake served declarations from Mr. Asher.

BP contends that the revised interrogatory responses lack basic facts to which it is entitled. Rec. doc. 15898.  Wadleigh and Blake quote the scheduling order statement on the purpose of the cross-motions for summary judgment.  They urge that with the information provided in their discovery responses along with the Asher declarations, the discovery responses are adequate for the purpose of the cross-motions for summary judgment.  Rec. doc. 15899.

"An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. . . ."  Fed. R. Civ. P. 33(a)(2).  "The answer must include all information within the party's control or known by the party's agents.  This includes *facts* in an attorney's possession and information supplied to the party by others."  Baicker-McKee Jansen Corr, <u>Federal Civil Rules Handbook</u> (2011) Rule 33 at 854 (footnote omitted and emphasis in

---

[2]  There is no issue with the interrogatory responses from Bisso Marine Company ("Bisso"), the third OPA Causation Test plaintiff.  Rec. doc. 15664 at 1.

[3]  Wadleigh shall provide <u>verified</u> supplemental interrogatory responses as required by the scheduling order and Fed. R. Civ. P. 33(b)(2).

original).  The Court's review of the interrogatory responses and the Asher declarations demonstrates that the interrogatory responses are insufficient.

## Wadleigh

Interrogatory no. 1 seeks a description in full detail of the damages claimed by Wadleigh, including the basis, amounts and calculations thereof.  Wadleigh provided a two page response describing in general terms the cause of the damages and BP's alleged liability for lost profits and earning capacity.  In general terms it described four types of services performed by it in the Gulf of Mexico ("GOM").  The Asher declaration indicates that Wadleigh considered three of these as its core business:  (a) crane repair, maintenance, servicing/inspection; and (b) heavy equipment and rig component repair, maintenance, and servicing/inspection; and (c) engineering and design of rig components.  See Asher Wadleigh Declaration – Part 5.

Wadleigh reports that it maintains Master Service Agreements with many of its clients.  In response to interrogatory no. 15, Wadleigh identified 21 of its customers who it contends were directly or indirectly prohibited from working in the GOM as result of the DWH spill.  It reports Master Service Agreements or hold harmless agreements with nine of them.  In response to interrogatory no. 16, Wadleigh states that the DWH spill caused the rigs of its clients and customers to discontinue work while the spill was ongoing and even afterwards.  While it states that work for these customers decreased, it provides no identification of particular customers.  It does not identify work orders that were cancelled, requests for bids that were withdrawn, or bids that were rejected on account of the DWH spill.  Asher's report does not provide the detail required by the interrogatories.  Instead, it details a comparison of 2012 and 2013 profit (monthly average) with May 2010 to December 2011 profit.  The analysis sheds no light Wadleigh's work for particular clients, work orders or bids.  Wadleigh simply states that it was unable to replace existing agreements or work for servicing and

3

repair of offshore equipment in the period following the oil discharge through 2011.

In Interrogatory no. 2, BP sought the identification of:

> [E]ach item or subset of your damages in terms of event, lost opportunity, cancelled or delayed contract, lost sales, or other unit or category, including a detailed description of when and how each such loss occurred.

Wadleigh referred to its objections and responses to interrogatory nos. 1, 6, 15, 16, 19 and 22. The responses to interrogatory nos. 1, 15 and 16 are discussed above. In response to interrogatory no. 6, Wadleigh provided a brief history of its business since 1984, the core and non-core services provided by it, the general relationship of drilling activity to the price of oil at different periods, and a general description of its business relationship with its customers (e.g., "a well owner/operator needs servicing of a rig component or heavy equipment. . ."). In response to interrogatory no. 19, Wadleigh identifies its core competencies for the third time (see also responses to interrogatory nos. 1 and 6). It adds a one paragraph description of services offered by it. In response to interrogatory no. 22, it provides a two paragraph description of its manufacturing services. With the exception of a 2013-2014 agreement to construct four cranes for Hercules Drilling, no particular customer or contract is identified.

**Wadleigh shall supplement its responses to interrogatory nos. 1 and 2 and verify them in accord with the Federal Rules of Civil Procedure**.

### Blake

In response to interrogatory no. 1, Blake states that in 2008 it purchased nine platform rigs from Pride. Many of these rigs (an exact number is not provided) were on contract or nearing the end of contracts which had been entered into by Pride, including some in Mexico. By the end of 2009 they were demobilizing to the GOM. Blake was in negotiations with Energy XXI to use rigs 1501 and 1502 in two Main Pass projects. Blake contends that Energy XXI could not get permits

for the two Main Pass projects. Blake negotiated a contract with PEMEX for rigs 1501 and 1502 that was awarded in mid-2011. The PEMEX rates were not as good as Blake anticipated with the Energy XXI projects. This accounts for two of the nine rigs. It does not account for the other seven rigs.

Asher's declaration states that at the time of the spill Blake owned nine rigs. As a result of the spill Blake lost profits on five of the rigs. In part 6 of the declaration Asher reports that "Blake has advised me" that two of the rigs would have worked in the GOM during November 2010 to December 2013 at particular day rates. Those are rigs 1501 and 1502.

In part 13 of his declaration Asher reports that he was advised by Blake that it would have placed three rigs (Nos. 1505, 1006 and 1007) at work in the GOM. Neither Blake in its interrogatory responses nor Asher in his declaration refer to a particular customer, rig location, contract or permit issue for the three rigs.

**Blake shall supplement its responses to the interrogatories with the specific information required for rigs 1505, 1006 and 1007.**

In part 20, Asher reports that Blake advised him of a mitigation expense of about $5 million that would not have been incurred but for the spill. The cost was incurred to convert rig 1505 from a 1,000 horsepower rig to a 1,500 horsepower rig. This bare bone statement is insufficient. There is no explanation for this "mitigation expenditure" in the responses to the interrogatories.

**Blake shall supplement its responses to the interrogatories with specific information on the alleged mitigation expenditure.**

IT IS ORDERED that: (1) BP's motion to compel supplemental responses by Wadleigh and Blake (Rec. doc. 15898) is GRANTED; (2) by **Tuesday, February 24, 2016**, Wadleigh and Blake shall supplement their interrogatory responses as provided herein; (3) the deadline for an appeal of

5

this order is **Friday, February 19, 2016;** and (4) the order will not be stayed pending appeal unless Judge Barbier enters an order to that effect.

New Orleans, Louisiana, this 18th day of February, 2016.

                                        **SALLY SHUSHAN**
                                        United States Magistrate Judge