# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 <br><br> SECTION J |
| This document relates to: <br> All Cases and No. 12-970 | * * * * * * * | HONORABLE CARL J. BARBIER <br><br> MAGISTRATE JUDGE SHUSHAN |

---

## MEMORANDUM IN SUPPORT OF BP'S MOTION TO VACATE AND STAY PAYMENT OF AWARDS TO CLAIMANT 100261264

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ ii

Introduction..................................................................................................................1

I.      The $6.6 Million in Awards to Claimant 100261264 Are At Odds With
        The Terms Of The Wetlands Framework ..................................................4

        A.      The Wetlands Framework Awards Compensation Based On Tax
                Parcels .............................................................................................4

        B.      Policy 443 Is At Odds With And Misinterprets The Wetlands
                Framework .......................................................................................9

        C.      The More Than $6 Million In Awards To Claimant 100261264 Are
                Unauthorized...................................................................................12

II.     A Preliminary Injunction Is Necessary To Prevent More Than $6 Million
        In Unauthorized Payments.........................................................................16

Conclusion .................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt. Ltd.*, 456 Fed. App'x 184 (3d Cir. 2012) .................................................................................................................18

*Deerfield Med. Ctr. v. City of Deerfield Beach,* 661 F.2d 329 (5th Cir. Unit B Nov. 1981) ...................................................................................................................19

*Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554 (5th Cir. 1987) ....................................18, 19

*In re Fredeman Litig.*, 843 F.2d 821 (5th Cir. 1988) ...................................................................18

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011).....................................................................17, 18

*Merchs. Capital Res., Inc. v. W. Gravel Inc.*, No. 10-CV-01807 (DSD/JJK), 2010 WL 2814325 (D. Minn. July 16, 2010).........................................................................18

*Strouse Greenberg Props. VI Ltd. P'ship v. CW Capital Asset Mgmt. LLC*, 442 F. Supp. 2d 313 (E.D. La. 2006) .............................................................................................19

*Tennessee Corp. v. Hartford Accident & Indem. Co.*, 463 F.2d 548 (5th Cir. 1972) .....................5

**OTHER AUTHORITIES**

Rule 65 of the Federal Rules of Civil Procedure ...........................................................................1

**COURT FILINGS IN MDL 2179**

Settlement Agreement, May 3, 2012, Doc. No. 6430........................................................... *passim*

**EXHIBITS TO THIS FILING**

Claim Numbers for Claims with Eligibility Notices Issued to Claimant 100261264 (attached as Exhibit 1) ...............................................................................1, 15, 19

Declaration of Christopher Esbrook (attached as Exhibit 2) ..........................................6-7, 8-9, 14

BP Objections to Policy 443 (attached as Exhibit 3).....................................................................9

Wetlands Instructional Booklet (attached Exhibit 4)...................................................................10

Settlement Program's Informational Website Screenshot (attached as Exhibit 5).......................11

Cameron Parish Tax Assessment (attached as Exhibit 6).......................................................12, 17

1927 Paper Map (attached as Exhibit 7)........................................................................... 12, 17-18

Tobin Parcel Photograph (attached as Exhibit 8) ........................................................................12

Letter From Daniel Cantor to Patrick Hron (February 11, 2016) (attached as Exhibit 9)............16

Electronic Mail from Patrick Hron to Daniel Cantor (February 12, 2016) (attached as
    Exhibit 10) ..........................................................................................................................16

Electronic Mail from Daniel Cantor to Patrick Hron (February 14, 2016) (attached as
    Exhibit 11) ..........................................................................................................................16

Electronic Mail from Patrick Hron to Daniel Cantor (February 15, 2016) (attached as
    Exhibit 12) ..........................................................................................................................16

Policy 443 (attached as Exhibit 13) ....................................................................................... *passim*

<u>Introduction</u>

Pursuant to Section 18.1 of the Economic and Property Damage Settlement Agreement and Rule 65 of the Federal Rules of Civil Procedure, BP respectfully requests that the Court vacate and stay payment of 839 awards totaling $6.6 million to Claimant 100261264.  The claim numbers for the awards are set forth at Exhibit 1 hereto.

The 839 awards at issue were all made under the Economic and Property Damage Settlement Agreement's Wetlands Framework (Exhibit 12A) and all concern a single property located in Cameron Parish, Louisiana.  The Wetlands Framework compensates claimants on a tax parcel basis, meaning that the owner of a single tax parcel is compensated once for all real property assessed under a single tax parcel.  Compensation for non-oiled property such as the parcel at issue is calculated on a per acre basis, with a minimum award of $15,750.  Because the tax parcel at issue qualifies only for the minimum $15,750 payment, Claimant 100261264 is thus entitled under the Settlement Agreement to a single payment of $15,750 for the single tax parcel at issue.  However, the Settlement Program has awarded one of the two 50% owners of the subject tax parcel more than $6.6 million, which is **839** times what the Settlement Agreement calls for.  The $6.6 million issued to date for this single parcel is expected to double, as it represents the award to one of the two 50% owners, based on ownership according to the Settlement Program.[1]  When a similar award is issued to the other 50% owner, the Settlement Program will have transformed what should have been a single claim entitled to a single $15,750 award under the Settlement Agreement into 800 plus awards totaling more than $12 million for a single property that has never been developed and was not even oiled.

_____

[1] It appears Claimant 100261264 is now asserting a 100% ownership interest.

The Settlement Program reached this result by applying Policy 443, which provides that where real property assessed under a single tax parcel contains multiple lots or tracts (referred to herein interchangeably as "lots"), the Settlement Program will compensate each lot as an Eligible Parcel provided certain prerequisites are met.[2] Thus, the result of Policy 443 is that an owner of a single tax parcel containing multiple lots will be compensated multiple times (in this case more than 800 times) for the same property.

The $6.6 million award to Claimant 100261264 violates both the terms and the intent of the Wetlands Framework. The Wetlands Framework itself uses the term "Parcel", not "lots". The term "lot" is found nowhere in the Wetlands Framework. In addition, the Coastal Real Property Framework, which precedes the Wetlands Framework in the Settlement Agreement and which employs the same approach as the Wetlands Framework for determining eligible properties, defines the term "Parcel" to mean tax parcel. This confirms that when used in the Wetlands Framework, the term "Parcel" means tax parcel. Moreover, when negotiating the Settlement Agreement, the parties themselves jointly identified all eligible wetlands properties based on their parcel, not lot, status and memorialized such parcels in a map attached to the Settlement Agreement. That map identifies the Cameron Parish parcel at issue as one single parcel entitled to one payment. And furthermore, the Claims Administrator's wetlands database which is prescribed by the Settlement Agreement as the best evidence of eligible parcels was based on tax parcels and identified the subject property as a single parcel, until Policy 443 rewrote the Settlement Agreement. Finally, the Settlement Program itself applied the Wetlands Framework on a per tax parcel basis for more than a year before announcing Policy 443.

---

[2] Policy 443 is attached as Exhibit 13.

Even if Policy 443 were valid, the award to Claimant 100261264 would be in error because the subject parcel does not meet the prerequisites of Policy 443.  Immediately below is an aerial photo of the single tax parcel at issue.  The boundaries of the parcel are highlighted in red.

Tobin Parcel for which Claims Administrator has issued 839 awards to Claimant 100261264



Almost one hundred years ago, a predecessor owner recorded a rudimentary handwritten map purporting to create 800 plus lots on the single parcel.  According to the above photo, the property remains largely undeveloped.  The handwritten map did not even provide a legal description of the paper lots.  This is crucial, because Policy 443 requires that each lot have a separate legal description used by taxing authorities.  The paper lots on the subject parcel do not have a legal description, so they do not qualify for treatment as separate Eligible Parcels even under Policy 443 itself.

BP sought to challenge the above referenced 800 plus awards to Claimant 100261264 under Section 6 of the Settlement Agreement.  However, the Settlement Program refused to allow the appeals to proceed, taking the position that the $6 million plus in awards issued to date for a single tax parcel do not meet the $25,000 appeals threshold because the Settlement Program

broke the $6 million plus in awards into 800 plus pieces. Following the Settlement Program's rejection of its attempt to appeal, BP asked the Settlement Program to maintain the status quo by temporarily refraining from issuing payment on the 800 plus awards until the Court has an opportunity to consider the instant motion. The Settlement Program rejected that request as well, leaving BP exposed to the payment of more than $6 million in unauthorized awards.

For the above reasons, BP respectfully requests that the Court, pursuant to its authority in Section 18 of the Settlement Agreement, enforce the terms of the Settlement Agreement by vacating the 839 awards to Claimant 100261264 and staying payment of these awards. Alternatively, if the Court would prefer that this matter first proceed through the Appeal Panel process, BP requests in the alternative that the Court order the Settlement Program to allow BP's appeal with regard to Claimant 100261264 to proceed.[3]

I.     The $6.6 Million In Awards To Claimant 100261264 Are
       At Odds With The Terms Of The Wetlands Framework

       A.     The Wetlands Framework Awards Compensation Based On Tax Parcels

Both the express text of the Settlement Agreement and the actions of the parties and the Settlement Program in implementing the express text confirm that the Wetlands Framework is based on tax parcels, not lots. As an initial matter, the Wetlands Framework uses the term "Parcel" repeatedly and never makes reference to "lots". The Wetlands Framework opens with the following statement: "Eligible Claimants shall be comprised of claimants who do not fall

---

[3] BP certifies pursuant to Section 18.2 of the Settlement Agreement that it has attempted to use the appeals process set forth in Section 6 of the Settlement Agreement but such effort was denied by the Settlement Program. In addition, BP has consulted with the Settlement Program, including through the Claims Administration Panel process as well as through other dialogue, in an attempt to address the problems that arise from Policy 443. Such efforts have not been successful.

within the exclusions to the Economic Loss and Property Class Definition and who were owners of ***Eligible Parcels*** during the time period April 20, 2010 to [the date of the Settlement Agreement]."  Settlement Agreement, Ex. 12A at 1.A (emphasis added).  The framework then proceeds to define Eligible Parcels as "[***P***]***arcels*** located within the Wetlands Real Property Claim Zone."  *Id*. at 1.C (emphasis added).  The "Wetlands Real Property Claims Zone" is comprised of parcels that (i) were directly intersected by the SCAT Line or would have been had the SCAT Line been contiguous and (ii) were identified in certain NRD assessments as having been oiled.  *Id*., App. B.  Simply put, every step of the process for identifying eligible properties in Exhibit 12A is focused on "Parcels", not lots.

That the term "Parcel" means tax parcel and not lots is confirmed by the use of the term in the preceding and analogous section of the Settlement Agreement.  The Coastal Real Property Framework, which is set forth at Exhibit 11A of the Settlement Agreement, also defines eligible properties as parcels that intersect the SCAT Line.  Exhibit 11A explains that "[a] parcel is a specific tract of real property defined by a legal description of boundaries used ***for taxing purposes***."  Settlement Agreement, Ex. 11A at 1.C.i (emphasis added).  The fact that the Coastal Real Property Framework and the Wetlands Framework both use the term "Parcel" and both define an Eligible Parcel by virtue of its intersection with the SCAT Line (or areas that would intersect if the line was contiguous) demonstrates that the parties intended the term "Parcel" to have the same meaning in both frameworks.  *See Tennessee Corp. v. Hartford Accident & Indem. Co.*, 463 F.2d 548, 551-52 (5th Cir. 1972) ("In the construction of a written instrument it is firmly established that ordinarily the same word therein occurring more than once is to be given the same meaning unless the context indicates that a different meaning was intended.").

In addition to the express terms of the Settlement Agreement, the conduct of the parties and the Settlement Program further confirm that the term "Parcel" refers to a tax parcel. The Wetlands Framework requires the Claims Administrator to maintain a database that contains the core information necessary to determine whether a parcel is an Eligible Parcel and if so how much compensation the owner of the Eligible Parcel is entitled to. Specifically, the Settlement Agreement provides: "The Claims Administrator shall maintain a Geographic Information Systems database ("Administrator's Database") containing the results of SCAT, NRD Pre-assessment, NRD Rapid Assessment, NRD CWVA, and the best available information on parcel boundaries for all real property within the Wetlands Real Property Claim Zone." Settlement Agreement, Ex. 12A at 1.D.iii.

In order to assemble and provide this information to the Claims Administrator for use in the database, BP and Class Counsel, as part of the negotiation of the Wetlands Framework, literally sat in a room and jointly identified on a tax parcel by tax parcel basis which parcels constitute Eligible Parcels and whether the parcels were oiled. Declaration of Christopher Esbrook ("Esbrook Decl."), ¶ 3 (attached as Exhibit 2). There was never any discussion of compensating individual lots within a parcel. *Id.* ¶ 5. Rather, the focus was on tax parcels. *Id.* Actual tax parcel information was obtained from the Terrebonne Parish taxing authorities and was used by the parties to identify Eligible Parcels, thus confirming the parties' intent that the Wetlands Framework operates on a per parcel basis. For the other parishes, at the time the parties met to identify Eligible Parcels under Exhibit 12A, maps of the tax parcels were not readily available within the tight timeframes of the negotiations. *Id.* ¶ 3. Therefore, for purposes of identifying Eligible Parcels, the parties used, as the best available approximation of tax parcels, a commercially available data set of Louisiana parcels from by P2 Energy Solutions and

known as "Tobin Data".  *Id.*  The Tobin Data for the parcel owned by Claimant 100261264

shows one single parcel, not 800 parcels.  *Id.* ¶ 4, Ex. A.  The parcel at issue is outlined in red in

the below extract from the Tobin Data used by the parties.

Tobin Parcel for which Claims Administrator has issued 839 awards to Claimant 100261264



The parties memorialized in a map the results of their property by property exercise to

identify Eligible Parcels.  This map is attached as Appendix C to the Wetlands Framework and is

referred to as the Eligible Parcel Compensation Category Map.  The Eligible Parcel

Compensation Category Map identifies, based on tax assessment data from Terrebonne Parish

and the Tobin Data, each Eligible Parcel and whether each Eligible Parcel is oiled or not oiled.

As the Settlement Agreement explains about the map:  "Attached as Appendix C is a map

classifying each known ***Eligible Parcel*** into a Compensation Category by applying the

information in the Administrator's Database as of the settlement date." Settlement Agreement,

Ex. 12A at 1.D.iii (emphasis added).  The Eligible Parcel Compensation Category Map does not

divide Eligible Parcels into lots as is done by Policy 443.  *Id.*, App. C.  For example, with regard

to the single parcel owned by Claimant 100261264 for which the Settlement Program issued 800

plus awards last week, Appendix C of the Wetlands Framework identifies one single Eligible

Parcel, not 800 plus Eligible Parcels.  The relevant portion of Appendix C is reproduced

immediately below with the property owned by Claimant 100261264 shown as a single Eligible

Parcel highlighted in red.[4]

**Parcel for which Claims Administrator has issued 839 awards to Claimant 100261264,
as represented in Appendix C of Wetlands Real Property Framework**



Once the Settlement Agreement was executed, an extra step was taken to ensure that the

Claims Administrator's database contained the most up-to-date information about which tax

parcels constitute Eligible Parcels.  Information was obtained from the taxing authorities in each

Parish as to which tax parcels fall within the boundaries of the Wetlands Real Property Claims

Zone that had been created using the Tobin Data.  The updated database reported one

Compensation Amount per tax parcel; it did not report Compensation Amounts for each lot

within a tax parcel.  Esbrook Decl., ¶ 7.  The updated database was then transmitted to the

Claims Administrator, who accepted the database and implemented it for more than a year before

announcing Policy 443.  *Id.*

---

[4] The below image is reproduced at a higher resolution.

In sum, the text and structure of the Wetlands Framework, as well as the actions and course of dealing of the parties and the Settlement Program, confirm that the term "Parcel" in the Wetlands Framework means tax parcel, not lot.

B.     Policy 443 Is At Odds With And Misinterprets The Wetlands Framework

For more than a year following the opening of the Settlement Program, the Settlement Program applied the Wetlands Framework in accordance with the terms of the Settlement Agreement and the intent of the parties, namely treating each tax parcel as a single Eligible Parcel.  Esbrook Decl., ¶ 7.  Then, the Settlement Program reversed course and announced that going forward it would treat every lot within a tax parcel as a separate Eligible Parcel provided that such lots met certain prerequisites.  This fundamental revision to the Wetlands Framework was unauthorized as the Settlement Program is required to enforce the Agreement according to its terms.  *See* Settlement Agreement, § 4.3.1.[5]

Policy 443 begins with the premise that because the Wetlands Framework does not define the term "Parcel", the Settlement Program may import meaning to the term from outside of the Settlement Agreement.  However, this approach ignores the fact that, as explained above, the text of the Wetlands Framework, the definition of "Parcel" in the analogous Coastal Real Property Framework, the parties' joint identification of all Eligible Parcels on a tax parcel rather than lot basis, and the preparation and use of the Claims Administrator's Database on a tax parcel rather than lot basis leave no doubt that the parties intended for the Wetlands Framework to operate on

---

[5] When the Claims Administrator first announced his intent to issue Policy 443, BP filed written objections.  *See* BP Objections to Policy 443 (attached as Exhibit 3).  Following a Claims Administration Panel, the Claims Administrator expressed his intent to proceed with the issuance of the Policy.  BP, in the interest of avoiding immediate litigation and assessing how the Policy would be applied to actual claims, reserved its rights to challenge the Policy at a later time and deferred to the Claims Administrator.  *See id.* at 1.  Recent events confirm that the impacts of this improper Policy are significant, and thus BP has filed this motion while respectfully continuing to reserve its rights with regard to Policy 443.

a tax parcel basis.  Thus, this is not a situation where the Settlement Program was presented with no guidance on the meaning of the term "Parcel" and needed to look to external sources for a definition.  To the contrary, the Settlement Agreement and the parties' course of dealing provided the Settlement Program with clear directions to apply the Wetlands Framework on a per tax parcel basis, and indeed the Settlement Program understood and followed those directions for more than a year.

Even if there was a need to consult sources outside of the Settlement Agreement, the sources relied upon by the Settlement Program do not support the interpretation proffered in Policy 443.  For example, Policy 443 cites to the definition of the term "Parcel" in an instructional booklet for wetlands claims prepared by a Settlement Program Vendor.[6]  That definition defines a "Parcel" as "[a] plot of land that can be sold or purchased."  Wetlands Instructional Booklet at 4.  As an initial matter, how a Settlement Program Vendor defines "Parcel" is not the relevant question.  Rather, the relevant question is what does the Settlement Agreement provide, and as discussed above, the Settlement Agreement provides for the use of tax parcels.

Moreover, Policy 443 omits important portions of the very wetlands instructional booklet it relies upon, and those omitted portions confirm that the instructional booklet was not purporting to depart from the Wetlands Framework's per-tax-parcel approach.  Page 5 of the wetlands instructional booklet informs the reader that in order to determine whether a given property is an Eligible Parcel, the reader may call the Settlement Program or consult the Settlement Program's informational website, www.deepwaterhorizonsettlements.com.  *Id.* at 5. That website contains the Eligible Parcel Compensation Category Map (Appendix C to the

---

[6] The wetlands instructional booklet is attached as Exhibit 4.

Wetlands Framework), which identifies every Eligible Parcel known to the parties as of the date of the Settlement Agreement.[7]  The map does not provide for the separate compensation of individual lots.  Settlement Agreement, Ex. 12A, App. C.  For example, the parcel at issue owned by Claimant 100261264 is shown as a single Eligible Parcel on the Eligible Parcel Compensation Category Map.  *See supra* at 8.  Thus, the wetlands instructional booklet confirms that the Wetlands Framework operates on a per tax parcel basis, and certainly does not support the Settlement Program's interpretation.

Policy 443 also relies on a definition of "Parcel" from Webster's New World Dictionary: "a piece, as of land, usually a specific part of a larger acreage or estate."  The first part of this definition can apply to a tax parcel and begs the question of what is compensable under the Settlement Agreement.  Moreover, to the extent that Policy 443 relies on the second part of the definition regarding a parcel "usually" being part of a bigger piece of property, that definition does not comport with the facts regarding wetlands parcels.  As Policy 443 acknowledges, most tax parcels are made up of a single lot, and thus neither the lot nor the tax parcel is "usually" part of a bigger unit of property.  Policy 443 at 1 ("Most parishes in the Wetland Real Property Claim Zone assign a separate Tax Assessment ID to individual lots or tracts…").

Last, Policy 443 relies on Section 4.3.7.  But this provision does not purport to and cannot change other substantive provisions of the Settlement Agreement.  Rather, it merely provides claimants with administrative assistance in assembling their claims and obtaining the compensation they are entitled to ***under the terms of the Settlement Agreement***:

> The Settlement Program, including the Claims Administrator and
> Claims Administration Vendors, shall work with Economic Class
> Members (including individual Economic Class Members' counsel

---

[7] Attached as Exhibit 5 hereto is a screenshot from the Settlement Program's informational website.

and Class Counsel) to facilitate Economic Class Members'
assembly and submission of Claims Forms, including all
supporting documentation necessary to process Claim Forms under
the applicable Claims Processes. The Settlement Program,
including the Claims Administrator and Claims Administration
Vendors, shall use its best efforts to provide Economic Class
Members with assistance, information, opportunities and notice so
that the Economic Class Member has the best opportunity to be
determined eligible for and receive the Settlement Payment(s) ***to
which the Economic Class Member is entitled under the terms of
the Agreement***.

Settlement Agreement, § 4.3.7 (emphasis added).  Nothing in Section 4.3.7 of the Settlement

Agreement permits the Settlement Program to change the terms of the Settlement Agreement or

reject clear evidence regarding the parties' intent concerning the manner in which a particular

term should be applied.

    C.    <u>The More Than $6 Million In Awards To Claimant 100261264 Are Unauthorized</u>

Policy 443 transformed what should have been a single $15,750 award for a single, non-

oiled property into 839 plus awards that when all is said and done will exceed $12 million for a

single, non-oiled property.

The property at issue is a single tax parcel located in Cameron Parish.  Cameron Parish

taxes the single property as agricultural land and brackish water marsh.  *See* Cameron Parish Tax

Assessment (attached as Exhibit 6).  In 1927, a predecessor owner of the parcel recorded in the

property record a hand-drawn, rudimentary map purporting to create more than 800 lots within

the single parcel.  *See* 1927 Paper Map (attached as Exhibit 7).  The hand-drawn map does not

contain a legal description of each "lot."  *Id*.  The great majority, if not the entirety, of the

supposed "lots" have never been developed.  *See* Tobin Parcel Photograph (attached as Exhibit

8).  And there does not appear to be road access to the vast majority of the purported lots,

meaning they could not be developed in their current state.  Immediately below is a recent aerial photo of the property, with the tax parcel boundaries outlined in red

Tobin Parcel for which Claims Administrator has issued 839 awards to Claimant 100261264



And immediately below is the same property with the lots outlined on the rudimentary 1927 map superimposed.

Tobin Parcel for which Claims Administrator has issued 839 awards to Claimant 100261264



As discussed in Section I.A above, the text of the Settlement Agreement and the actions of the parties establish that the owner of a tax parcel is only entitled to one award for a single tax parcel.  There can be absolutely no doubt as to the application of this rule for the instant parcel

because BP and Class Counsel specifically discussed this parcel and identified it as one, single non-oiled Eligible Parcel on the Eligible Parcel Compensation Category Map attached as Appendix C of the Wetlands Framework.  The below image represents the portion of the Eligible Compensation Category Map on which Claimant's property is displayed, with the boundaries of Claimant's single Eligible Parcel highlighted in red.

**Parcel for which Claims Administrator has issued 839 awards to Claimant 100261264, as represented in Appendix C of Wetlands Real Property Framework**



Still further, the Claims Administrator's Database, before modification pursuant to Policy 443, also identified the property at issue as a single Eligible Parcel entitled to a single $15,750 award. Esbrook Decl., ¶ 4, 6.

Not only is treating this property as a single Eligible Parcel mandated by the Settlement Agreement, it is the only logical result.  The results flowing from Policy 443 are inconsistent with the structure of the Wetlands Framework.  The Wetlands Framework sensibly provides more compensation to owners of oiled Eligible Parcels than to owners of non-oiled Eligible Parcels.  For example, Section 2.C.vi of the Wetlands Framework compensates oiled Eligible Parcels as follows (a) $25,000 per acre for the oiled primary area, (b) $10,000 per acre for the

14

buffer area, and (c) $11,000 per acre for the non-oiled primary area.  Settlement Agreement, Ex. 12A at 2.C.vi.  Non-oiled eligible parcels on the other hand are only entitled to $4,500 per acre for the non-oiled primary area, with a minimum payment of $15,750.  *Id.* at 2.C.vii, 2.C.ix.b. Most of the Eligible Parcels containing more than one lot are located in Cameron Parish, no portion of which was reported as oiled by the Macondo spill by SCAT or NRD assessments.  As a result, Policy 443 has the impact of greatly increasing compensation to non-oiled properties by awarding the $15,750 minimum payment multiple times over, in some cases making awards to non-oiled properties much larger than awards to oiled properties.  For example, the more than $12 million award to Claimant 100261264 is one of the largest awards issued to a Wetlands claimant—oiled or non-oiled—to date.

* * *

For all of the above reasons, BP respectfully requests that the Court vacate the awards to Claimant 100261264 attached hereto as Exhibit 1.

II.     A Preliminary Injunction Is Necessary To Prevent
        More Than $6 Million In Unauthorized Payments

The Settlement Program will soon issue more than $6 million of unauthorized payments to Claimant 100261264. BP filed a notice of appeal pursuant to Section 6 of the Settlement Program seeking review by the Appeal Panel. Letter From Daniel Cantor to Patrick Hron (February 11, 2016) (attached as Exhibit 9). However, the Settlement Program refused to process the appeal, taking the position that because it had broken the $6 million plus award into more than 800 pieces each in the amount of $7,875, the $25,000 appeal threshold is not satisfied. Electronic Mail from Patrick Hron to Daniel Cantor (February 12, 2016) (attached as Exhibit 10). This position is incorrect given that it is the Settlement Program that has subdivided the award into 800 pieces. Subsequently, BP informed the Settlement Program that it would be filing the instant motion with the Court, and asked that the Settlement Program maintain the status quo and not make payments on the 800 plus awards until the Court has an opportunity to review BP's motion. Electronic Mail from Daniel Cantor to Patrick Hron (February 14, 2016) (attached as Exhibit 11). Once again, the Settlement Program refused BP's request. Electronic Mail from Patrick Hron to Daniel Cantor (February 15, 2016) (attached as Exhibit 12). As a result, there is a real risk that the Settlement Program will soon make payment on the 800 plus unauthorized awards totaling more than $6 million. Accordingly, a preliminary injunction is necessary.

The four elements for the issuance of a preliminary injunction are as follows:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).  All four elements are squarely satisfied in this case.

First, BP has a substantial likelihood of success on the merits.  As discussed in detail above, there is no mention of lots in the Wetlands Framework.  To the contrary, the Wetlands Framework is replete with references to the term "Parcel".  In addition, a preceding section of the Settlement Agreement, the Coastal Real Property Framework, uses the same methodology as the Wetlands Framework and specifically defines "Parcel" to mean tax parcel.  Moreover, the parties jointly created a map of all Eligible Parcels (Appendix C to the Wetlands Framework), which identifies Eligible Parcels and does not treat multiple lots within a tax parcel as separate parcels.  Indeed, the parcel at issue in this motion is identified as a single Eligible Parcel entitled to one payment.  Finally, the Claims Administrator's database, which incorporates the Eligible Parcel Compensation Category Map set forth at Appendix C of the Wetlands Framework and which the Settlement Agreement deems the best evidence of whether a parcel is eligible, used tax parcels, not lots, until the issuance of Policy 443.  In short, the entire body of evidence confirms that the Wetlands Framework operates on a tax parcel basis.

Moreover, BP has a substantial likelihood of success even if Policy 443 is valid.  Under Policy 443, multiple lots will only be treated as distinct Eligible Parcels if, among other things, each lot "has its own legal description of boundaries used for taxing purposes, which fits the definition of Parcel in the Coastal Framework written by the Parties."  Policy 443 at 2.  The paper lots within the tax parcel owned by Claimant 100261264 do not have their own legal description of boundaries used for taxing purposes.  There is no such description on the tax assessment.  *See* Cameron Parish Tax Assessment (attached as Exhibit 6).  And, indeed, the hand written 1927 paper map purporting to create the lots does not provide legal descriptions.  *See*

1927 Paper Map (attached as Exhibit 7).  Thus, regardless of the validity of Policy 443, the 800

plus awards were in error for they do not satisfy the elements of Policy 443.

Second, there is a very substantial threat of irreparable harm if the preliminary injunction

is not granted.  More than $6 million dollars of unauthorized awards will soon be issued if such

payment is not enjoined.  BP has sought to maintain the status quo by (a) filing appeals pursuant

to Section 6 of the Settlement Agreement and (b) asking the Settlement Program to refrain from

issuing payment until the Court has the opportunity to consider this Motion.  However, the

Settlement Program has rejected both requests and has stated that it will proceed with payments.

*See Janvey*, 647 F.3d at 601 ("threatened harm" was "sufficient" due to "likelihood of each

individual removing or dissipating the frozen assets but for the preliminary injunction"); *In re*

*Fredeman Litig.*, 843 F.2d 821, 827 (5th Cir. 1988) ("[A]n injunction may issue to protect assets

that are the subject of the dispute." (citing *De Beers Consol. Mines v. United States*, 325 U.S.

212, 220 (1945)); *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 561 (5th Cir. 1987) (court

may "properly freez[e] assets prior to a final determination on the merits").

Third, the harm of not issuing the injunction far outweighs any harm from the issuance of

the injunction.  The subject property was not oiled by the Macondo spill, and thus Claimant

100261264 is not awaiting compensation for having its property oiled.  Moreover, no claimant

has a legitimate interest in an award to which they are not entitled.  *See Bancroft Life & Cas.*

*ICC, Ltd. v. Intercontinental Mgmt. Ltd.*, 456 Fed. App'x 184, 188-89 (3d Cir. 2012);  *Dixon*,

835 F.2d at 563; *Merchs. Capital Res., Inc. v. W. Gravel Inc.*, No. 10-CV-01807 (DSD/JJK),

2010 WL 2814325, at *1-2 (D. Minn. July 16, 2010).  On the other hand, BP is at risk of having

to pay more than $6 million in awards that are not authorized by the Settlement Agreement.

Fourth, the public interest is served by correctly interpreting and applying the Settlement

Agreement.  There is no public interest in paying claimants for non-existent losses created only by misinterpreting the Agreement's BEL Framework.  *Cf. Dixon*, 835 F.2d at 563; *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338-39 (5th Cir. Unit B Nov. 1981).  By contrast, there is a strong public interest in enforcing the Settlement Agreement and preserving the funds for the purposes for which they were intended.  *See Strouse Greenberg Props. VI Ltd. P'ship v. CW Capital Asset Mgmt. LLC*, 442 F. Supp. 2d 313, 321 (E.D. La. 2006) (concluding that "there is a greater public interest in granting injunctive relief to assure that the funds remain available to enforce" a contract than in allowing the funds to be used for other efforts).

Accordingly, BP respectfully requests that the Court enjoin the payment of the 839 awards identified by claim number on Exhibit 1 hereto.  In the alternative, should the Court prefer that the Appeal Panel review the awards to Claimant 100261264 in the first instance, BP respectfully requests that the Court order the Settlement Program to process BP's notice of appeal with regard to Claimant 100261264.

<u>Conclusion</u>

For the above reasons, BP respectfully requests that the Court vacate the 839 awards identified on Exhibit 1 hereto and enjoin the payments of such awards.

Dated: February 18, 2016                    Respectfully submitted,


                                            /s/ *Don K. Haycraft*_____
Allison Rumsey                              S. Gene Fendler (Bar #05510)
ARNOLD & PORTER LLP                         Don K. Haycraft (Bar #14361)
601 Massachusetts Avenue, NW                R. Keith Jarrett (Bar #16984)
Washington, DC  20001                       LISKOW & LEWIS
Telephone:  (202) 942-5000                  701 Poydras Street, Suite 5000
Facsimile:  (202) 942-5999                  New Orleans, LA  70139-5099
                                            Telephone:  (504) 581-7979
                                            Facsimile:  (504) 556-4108

*OF COUNSEL*


                  *ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*
                      *AND BP AMERICA PRODUCTION COMPANY*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I filed a copy of the above and foregoing pleading

electronically with the Court's CM/ECF system on February 18, 2016.  I further certify that I

delivered a copy of the above and foregoing pleading to the following via File & Serve Express

and electronic mail, on February 18, 2016:

James P. Roy
Domengeaux, Wright, Roy & Edwards
P. O. Box 3668
556 Jefferson St.
Lafayette, LA 70502-3668
Email: jimr@wrightroy.com

Stephen J. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
(504) 581-4892
Email: sherman@hhkc.com

David Bruchhaus
Mudd & Bruchhaus, L.L.C.
410 E. College Street
Lake Charles, LA 70605
(337) 562-2327
Email: dbruchhaus@camtel.net

*/s/ Don K. Haycraft*
Don K. Haycraft