Exhibit 3

| | |
|---|---|
| **From:** | noreply@one.dhecc.com |
| **To:** | Douglas, Charles W |
| **Subject:** | Party Response |
| **Date:** | Wednesday, June 19, 2013 1:55:25 PM |
| **Importance:** | High |

This email is an official communication from the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Program.

A designated user for one of the Parties has responded to the following policy or procedure:

**ID**

**Claim Type / Review Process**

**Name**

**Current Status**

Pol-443

Wetlands

Compensating Individual Parcels Aggregated Together Under a Single Tax Assessment ID

Policy or Procedure Announced to Parties for Positions

**Response from:** Esbrook, Christopher
**Response:** Defer to Claims Administrator Decision
**Comments:** If the Claims Administrator issues Policy No. 443 as written, BP defers to the Claims Administrator's decision. However, if the Claims Administrator modifies Policy No. 443, BP requests that the policy be reissued for comment by the parties. Class Counsel has proposed a modification that seeks to remove from Policy No. 443 one of the Claims Administrator's three requirements in the policy - the requirement that "the parish separately assigns a tax assessment value to the tract or lot." The Claims Administrator included that requirement because, as Policy No. 443 states, the fact that a "lot is separately valued for taxing purposes" means that it "fits the definition of Parcel in the Coastal Framework written by the Parties." That is because the Coastal Framework defines the term "parcel" as "a specific tract of real property defined by a legal description used for taxing purposes." (Settlement Agreement, Ex. 11, ?1. C. i.)(emphasis added) If a lot is not separately valued for taxing purposes, then it is not "used for taxing purposes," and thus does not fit the definition of parcel in the Settlement Agreement. Accordingly, BP objects to Class Counsel's proposed modification because it runs contrary to the reasoning of Policy No. 443 and the plain language of the Settlement Agreement upon which it was based.

To review the policy or procedure, go to https://www2.deepwaterhorizoneconomicsettlement.com and enter your Login ID and Password and click the Login button to access the site. Select the Policy Keeper application and the policy or procedure will be in the **Requested Input from Parties or Policies/Procedures Announced to Parties for Positions** for your review. If you have any questions, contact the Policy Keeper Coordinator, Matthew Hazzard, at (804)521‐7256 or mhazzard@browngreer.com.

Thank you,

This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e‐mail message and delete all copies of the original communication. Thank you for your

| | |
|---|---|
| **From:** | noreply@one.dhecc.com |
| **To:** | Douglas, Charles W |
| **Subject:** | Party Response |
| **Date:** | Sunday, July 14, 2013 10:32:38 PM |
| **Importance:** | High |

This email is an official communication from the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Program.

A designated user for one of the Parties has responded to the following policy or procedure:

**ID**

**Claim Type / Review Process**

**Name**

**Current Status**

Pol-443

Wetlands

Compensating Individual Parcels Aggregated Together Under a Single Tax Assessment ID

Policy or Procedure Announced to Parties for Positions

**Response from:** Esbrook, Christopher
**Response:** Request Panel Hearing
**Comments:** Policy 443 is contrary to the plain language of the Settlement Agreement and, therefore, BP respectfully requests a panel hearing. Policy 443 proposes to treat lots/tracts within a parcel as their own individual "parcels" under the Wetlands Compensation Framework despite the fact that the Settlement Agreement clearly defines a parcel as "a specific tract of real property defined by a legal description of boundaries used for taxing purposes," which are provided in the parcel's tax assessment. (Settlement Agreement, Ex. 11, ? 1. C. i.) Moreover, Policy 443 is contrary to the intent of the parties and may be impossible to administer because the data regarding individual lots/tracts within a parcel is not within the Claims Administrator's Database and may not even exist. Policy 443 impermissibly re-writes the definition of parcel in the Settlement Agreement to make "each individual tract or lot [] eligible to receive compensation under the Wetlands Compensation Framework" if three criteria - found nowhere in the Settlement Agreement - are fulfilled. The Claims Administrator may not re-write the terms of the Settlement Agreement.

To review the policy or procedure, go to https://www2.deepwaterhorizoneconomicsettlement.com and enter your Login ID and Password and click the Login button to access the site. Select the Policy Keeper application and the policy or procedure will be in the **Requested Input from Parties or Policies/Procedures Announced to Parties for Positions** for your review. If you have any questions, contact the Policy Keeper Coordinator, Matthew Hazzard, at (804)521-7256 or mhazzard@browngreer.com.

Thank you,

This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your

| | |
|---|---|
| **TO:** | Patrick Juneau, Claims Administrator |
| **FROM** | BP |
| **DATE** | August 20, 2013 |
| **SUBJECT:** | Panel Hearing Addressing Two Proposed Policies Relating to the Framework for Wetland Real Property Claims: <br> (i) Policy 442 re Tax Adjudication Policy and <br> (ii) Policy 443 re Lots/Tracts in a Single Parcel |

The Claims Administrator's office issued proposed Policies 442 and 443 both relating to the Compensation Framework for Wetlands Real Property Claims. Both policies are contrary to the plain language of the Settlement Agreement and, therefore, BP has respectfully requested a panel hearing to address Policies 442 and 443. This letter provides additional context for the panel hearing.

Policy 442 proposes to disregard tax adjudications in determining whether a claimant owns a wetlands parcel despite the fact that Louisiana law is clear that a tax adjudication vests the State of Louisiana with ownership rights in the parcel until the parcel is redeemed or the tax adjudication cancelled. (La. Const. Art. 7, Section 25; La. R.S. 47:2246; La. R.S. 47:2133). Thus, the CSSP is proposing in Policy 442 to compensate claimants who do not own wetlands parcels, rather those parcels are owned by the State of Louisiana. Such a policy is in clear violation of the Settlement Agreement which requires proof of parcel ownership and compensation only to wetlands parcel owners.

Policy 443 proposes to treat lots/tracts within a wetlands parcel as their own individual "parcels" under the Compensation Framework for Wetlands Real Property Claims despite the fact that the Settlement Agreement clearly defines a parcel as "a specific tract of real property *defined by a legal description of boundaries used for taxing purposes*," which are provided in the parcel's tax assessment. (Settlement Agreement, Ex. 11, § 1. C. i., emphasis added) Policy 443 is contrary to the intent of the parties and likely will be impossible to administer because the data regarding individual lots/tracts within a parcel is not within the Claims Administrator's Database and may not exist. Moreover, implementing Policy 443 would impermissibly subject BP to double-payment, triple-payment, or overpayments in even greater multiples thereof.

As described below, BP is aware that ▒▒▒▒▒▒▒▒▒▒, had significant involvement with regard to both policies. Given that both policies directly contradict the express language of the Settlement Agreement, and will result in improper windfall payments to wetlands claimants, BP

1

requests the Claims Administrator reconsider both policies and revise them to conform to the terms of the Settlement Agreement.

1. **Policy 442 Contradicts the Settlement Agreement by Disregarding Tax Adjudications in Determining Whether a Claimant Is Owner of a Wetlands Parcel.**

Proposed Policy 442 for evaluating the ownership of wetlands parcels that have been adjudicated to the State of Louisiana for unpaid taxes directly contradicts the plain language of the Settlement Agreement.

Under the Settlement Agreement, only the owner of an Eligible Parcel is eligible to receive compensation under the Compensation Framework for Wetlands Real Property Claims. (Settlement Agreement, Ex. 12, § 1. A.)  The Settlement Agreement requires the Claims Administrator to "determine whether an Eligible Claimant(s) is the owner of an Eligible Parcel." (Id., § 1. A. i.)  The Claims Administrator does not have the authority to ignore information bearing on whether a claimant is the owner of a parcel, nor to compensate a person or entity that is not the owner of a parcel.  (Id.)

Originally, the Claims Administrator issued Policy 442, which addressed how the Claims Administrator would evaluate competing chains of title for Wetlands Real Property claims -- i.e., where two parties have competing ownership claims in a parcel.  In particular, original Policy 442 addressed how the Claims Administrator would evaluate whether a claimant was the owner of a parcel that had been adjudicated to the State of Louisiana for unpaid taxes.  Where a parcel is adjudicated to the State of Louisiana for unpaid taxes, the State of Louisiana is vested with ownership rights in the parcel unless and until the prior owner pays the unpaid taxes or the tax adjudication is cancelled.  (La. Const. Art. 7, Section 25). Policy 442 as originally issued provided that the Claims Administrator would simply "*disregard the tax adjudications* in the process of determining ownership" of a parcel.  (Policy 442 issued on June 12, 2013, § II. D, emphasis added.)

This originally issued policy was contrary to the Claims Administrator's duty under the Settlement Agreement to "determine whether an Eligible Claimant(s) is the owner of an Eligible Parcel." (Id., § 1. A. i.)  The Claims Administrator does not have the authority to ignore this highly relevant evidence regarding the ownership of an Eligible Parcel, including information regarding tax adjudications.  In fact, it is particularly erroneous to ignore tax adjudications because Louisiana law is clear that a tax adjudication vests the State of Louisiana with ownership rights in the parcel. (La. Const. Art. 7, Section 25).  Accordingly, a claimant is not the owner of a tax adjudicated parcel, and thus cannot be an Eligible Claimant under the Settlement Agreement because the State owns the parcel until the parcel is redeemed or the tax adjudication cancelled.  (Id.; La. R.S. 47:2246; La. R.S. 47:2133)  Moreover, ignoring a tax adjudication creates the likelihood of double payment for BP because both the claimant and the State of Louisiana have competing ownership claims that must be addressed through administrative or judicial remedies.  The State of Louisiana has a lawsuit pending against BP.

2

In response to the June 12 issuance of Policy 442, BP proposed to modify Policy 442 so that the Claims Administrator would determine ownership of a parcel that has been adjudicated to the State of Louisiana through a tax sale consistent with how he determines ownership of any other parcel - namely, by considering all relevant information related to ownership, including a tax adjudication.

On July 11, the Claims Administrator issued a revised Policy 442. While revised Policy 442 includes some revised language regarding tax adjudicated parcels, the effect of the policy is still to disregard tax adjudications in the process of determining ownership. (Policy 442 issued on July 11, 2013, § II. D.) This time, rather than explicitly stating that the Claims Administrator will disregard tax adjudications, revised Policy 442 provides that a claimant will be considered the owner of a parcel and will eligible for compensation if the claimant is "(1) still the record owner and has not redeemed the property; and (2) if the State has not sold the property to a third party, or proceeded to confirm its own title." (Id.)

The language of revised Policy 442 is, however, tantamount to disregarding a tax adjudication which vests ownership of the parcel with the State of Louisiana. Where a claimant has not redeemed a parcel and the State has not sold it to a third party, the State maintains its ownership interest in the parcel such that the claimant cannot be considered the owner of the parcel under the Settlement Agreement. That is because a tax adjudication vests the State with ownership rights in the parcel until the parcel is redeemed or the tax sale is cancelled. (La. Const. Art. 7, Section 25; La. R.S. 47:2246; La. R.S. 47:2133). Accordingly, revised Policy 442 remains in direct conflict with the plain language of the Settlement Agreement which requires the Claims Administrator to determine whether a claimant is the owner of a parcel and does not authorize the claims Administrator simply disregard ownership information like tax adjudications.

Moreover, revised Policy 442 provides that the Claims Administrator will review the status of a parcel's title "as of the time of the spill," which is in direct conflict with the Settlement Agreement. The Settlement Agreement is clear that the Claims Administrator must determine whether a claimant is the owner of a parcel "*during the time period April 20, 2010 to [the date of the Settlement Agreement]*." (Settlement Agreement, § 1. A. i., emphasis added) Accordingly, the Claims Administrator may not merely determine whether a claimant owned the parcel "as of the time of the spill," but instead must determine whether the claimant in fact owned the parcel during the entire period from April 20, 2010 to the date of the Settlement Agreement, which is April 18, 2012.

Finally, BP is deeply concerned about the circumstances surrounding revised Policy 442 because ▓▓▓▓▓▓▓▓ had significant involvement in its development. On January 29, 2013, ▓▓▓▓▓▓ met with the Claims Administrator, the Claims Administrator's title expert ▓▓▓▓, and BP's title expert ▓▓▓▓▓▓ to discuss the ownership of a tax adjudicated parcels. Following the meeting, ▓▓▓▓▓ e-mailed ▓▓▓▓▓ requesting BP's position on the matter. ▓▓▓▓▓▓ e-mailed ▓▓▓▓ on numerous occasions in February and March 2013 following up on BP's position. On March 20, 2013, ▓▓▓▓▓ e-mailed ▓▓▓▓▓ a letter explaining

3

that a tax adjudication vests the State of Louisiana with ownership rights in the parcel until the parcel is redeemed or the tax adjudication cancelled. ▮▮▮▮▮ attended a follow-up meeting on March 28, 2013 to discuss how to evaluate the ownership of tax adjudicated parcels for which ▮▮▮▮▮ submitted wetlands claims. The meeting was also attended by the Claims Administrator, ▮▮▮▮, BP, Class Counsel, and counsel for ▮▮▮▮▮, ▮▮▮▮▮. Following the meeting, ▮▮▮▮▮ sent an e-mail to BP and Class Counsel requesting further input on the ownership of tax adjudicated parcels. BP submitted its response to ▮▮▮▮▮ request on Policy Keeper on April 4, 2013. While BP is aware of the foregoing examples of ▮ ▮▮▮▮▮ involvement in the development of this policy, it is unclear to what extent she had additional involvement or communications that were not shared with BP.

### 2. Policy 443 Contradicts the Settlement Agreement By Improperly Treating Lots/Tracts Within a Wetlands Parcel as Their Own Individual "Parcels"

On July 12, 2013, the Claims Administrator issued a revision to Policy 443. This revision improperly proposes to treat lots/tracts within a wetlands parcel as their own individual "parcels" under the Compensation Framework for Wetlands Real Property Claims. With this revision, Revised Policy 443 has been re-drafted to adopt Class Counsel's initial proposed modification, and now departs significantly from the content of Policy 443 as originally issued. Revised Policy 443 directly contradicts the plain language of the Settlement Agreement, the intent of the parties, and is impossible to administer. Attempting to implement Revised Policy 443 would significantly delay the processing of wetlands claims because the data required is not within the Claims Administrator's Database, nor is there any certainty that such data even exits. Indeed, the fact that this data is not contained within the Claims Administrator's database, reflects that it was not the parties' intent that lots/tracts within a wetlands parcel be deemed their own individual parcels.

Under the Settlement Agreement, only an "Eligible Parcel" is entitled to receive Wetlands Real Property Compensation. (Ex. 12, § 1. A.) The term "parcel" is explicitly defined in the Settlement Agreement as "a specific tract of real property *defined by a legal description of boundaries used for taxing purposes*." (Ex. 11, § 1. C. i., emphasis added) The "boundaries used for taxing purposes" are the boundaries used by the parish tax assessor and which are provided in a parcel's tax assessment. Thus, a parcel is the area of land defined by the boundaries provided in the parcel's tax assessment.

Consistent with the definition of the term "parcel" in the Settlement Agreement, the Claims Administrator's Database was created to aid in administering the Compensation Framework for Wetlands Real Property Claims by BP's mapping expert, and accepted by Class Counsel, using parcels' tax assessment boundaries. Pursuant to the Settlement Agreement, the Claims Administrator's Database contains "the best available information on parcel boundaries for all real property within the Wetlands real Property Claim Zone." (Ex. 12, § 1. D. iii.) Under the Settlement Agreement, the Claims Administrator has the duty to "apply the appropriate

Compensation Category for each Eligible Parcel based upon the information in the Administrator's Database." (Id.)

In its original form, proposed Policy 443 provided that individual lots/tracts within a tax assessment wetlands parcel would not be eligible for compensation unless the following three criteria were met: "(1) the parish separately assigns a tax assessment value to the tract or lot; (2) there is a distinct legal description for the tract or lot within the tax assessment record(s) prepared by the parish; and (3) the tract or lot is located within the Wetlands Real Property Claim Zone." (Policy 443, issued on June 12, 2013, § II.)

After the Claims Administrator issued proposed Policy 443 in its original format, both Class Counsel and BP provided comments. Class Counsel proposed a modification to remove the first of the three criteria from Policy 443 such that an individual lot/tract within a wetlands parcel would be compensable under the Settlement Agreement even if the parish did not separately assign a value to the lot/tract. BP deferred to the Claims Administrator on Policy 443 as written but requested that the policy be reissued if the Claims Administrator accepted Class Counsel's modification explaining that any such modification would put Policy 443 in direct conflict with the definition of "parcel" in the Settlement Agreement.

Ignoring BP's comment, and in direct contravention of the plain language of the Settlement Agreement, the Claims Administrator has issued a Revised Policy 443 that adopts Class Counsel's proposed modification. Revised Policy 443 removes the criterion that the parish separately assign a tax assessment value to the tract/lot.

Revised Policy 443 proposes that each individual tract/lot within a single tax assessment wetlands parcel will be eligible for compensation if: (1) each tact or lot is separately identified or included as a taxable "unit" on the tax assessment and is included in the total taxable value; (2) there is a distinct legal description for the tract or lot within the tax assessment; and (3) the tract/lot is located within the Wetlands Real Property Claim Zone. (Policy 443, issued on July 12, 2013, § II.)

The effect of Revised Policy 443 is that individual tracts/lots within a wetlands parcel would be considered their own individual "parcels" under the Settlement Agreement. This is in direct conflict with the plain language of the Settlement Agreement and would rewrite the terms of the Settlement Agreement agreed to by the Parties. The Settlement Agreement could not be clearer that a parcel means "a specific tract of real property defined by a legal description of boundaries used for taxing purposes," which are provided in a parcel's tax assessment. (Ex. 11, § 1. C. i.) Consistent with that definition, the Settlement Agreement requires a claimant to submit the tax assessment notice for the claimant's parcel. (Ex. 12, Appendix F, § 1. b.) The Settlement Agreement does not require any documents regarding individual lots/tracts because it was not contemplated that individual lots/tracts would be eligible for payment.

The negotiating history and intent of the Settlement Agreement additionally confirms that a parcel is defined by the boundaries of its tax assessment. BP and Class Counsel spent countless hours reviewing a map of the Wetlands Real Property Claim Zone ("Wetlands Zone")

5

which included, where available, parcel boundaries provided in the parcel's tax assessment. BP and Class Counsel reviewed the map parcel-by-parcel to ensure that the Zone was acceptable to the parties. At no time did the parties discuss or agree to compensate individual lots/tracts within a wetlands parcel.

Moreover, the Administrator's Database contains the parcel boundaries for the Eligible Parcels within the Wetlands Zone based upon the parcel boundaries provided in the parcel's tax assessment. The Administrator's Database does not contain any information regarding individual lots/tracts within each wetlands parcel. Class Counsel reviewed the Administrator's Database during negotiations and the implementation of the Settlement Agreement and never once objected on the basis that it did not contain information regarding lots/tracts. Had the parties really agreed to separately compensate lots/tracts within a parcel, it would defy logic for the Class Counsel not to object to the fact that the Administrator's Database contained no information regarding lots/tracts. But, Class Counsel did not object, and that is because the parties agreed that a parcel's boundaries were those provided by the tax assessment.

Revised Policy 443 impermissibly re-writes the definition of parcel in the Settlement Agreement. The Settlement Agreement is clear that only an "Eligible Parcel" may receive wetlands compensation. (Ex. 12, § 1. A.) Policy 443 ignores that and re-writes the Settlement Agreement to make "each individual tract or lot [] eligible to receive compensation under the Wetlands Compensation Framework" if three criteria - *found nowhere in the Settlement Agreement* - are fulfilled. The Claims Administrator may not rewrite the terms of the Settlement Agreement.

Revised Policy 443 is drafted with an assumption by the Claims Administrator that the only reason that multiple lots are included in a tax assessment is for administrative efficiency and thus it would be unfair not to separately compensate individual lots within a parcel. Putting aside the fact that this should be totally irrelevant as the Settlement Agreement is perfectly clear that only parcels can receive compensation, such an assumption is not correct. Lots are simply a way to identify smaller portions of a parcel and thus multiple lots may be included in a tax assessment because that is how the parcel as a whole can be described.

In fact, certain regulations prevent building a home on only one lot because lots are simply smaller potions of land within a parcel. Revised Policy 443 provides the tax assessment breakdown excerpted below as purported support for the Claims Administrator's assumption that multiple lots are grouped into one tax assessment as a matter of administrative convenience:

| Status: | | Assessment Breakdown | | | | |
|---|---|---|---|---|---|---|
| CLASS | LAND DESCRIPTION | FACTOR | QUANTITY | ADJ. MARKET VALUE | ASSESSMENT | EXEMPTION |
| 3400 | RESIDENTIAL SUBD. LOT | AV01 | 4.00 Units | $10,000.00 | 1,000 | NONE |

Legal Description: (See listing report for full legal description if required.)
LOTS ▮ BLK 1 UNIT 6 ▮ IN SECS 10-12 ▮ (#286786 987-228 FROM ▮ ET AL) (#303956
T/SALE TO ▮ ) (#308487 REDEMPTION)
(#312142 SPEC WARR DEED FROM ▮ (#314782 FROM ▮ )

6

This tax assessment breakdown corresponds to a parcel in ▮▮▮▮▮▮ in Cameron Parish.  Property owners in ▮▮▮▮▮▮ are prohibited from building a home with a septic tank unless their parcel is comprised of at least four lots. (Louisiana Administrative Code, Title 51, Part XIII, §511(B)).  Accordingly, the four lots in this tax assessment are not grouped together for administrative convenience, but instead are merely a way to describe the smaller portions within this one parcel.  In other words, the four "lots" are not themselves separate parcels, but rather four components of one parcel whose location and boundaries can only be described by referring to the four lots which constitute it.

Moreover, implementing Policy 443 may be impossible, and at best, will cause a 6 - 8 month delay in processing wetlands claims.  The data required to make a determination pursuant to Policy 443 is not included in the Administrator's Database, nor is it clear such data exists.  One of the reasons that the Settlement Agreement defines a parcel by its tax assessment boundaries is that those boundaries are objective, well known, and easy to administer.  In contrast, the exact boundaries of lots/tracts within a parcel may be impossible to map in many cases because assessor plat maps or other sources of lot/tract information will be out of date, incomplete, or otherwise insufficient to complete the required mapping with the level of precision required to compensate a claimant.  Even if individual lots/tracts within a parcel were able to be mapped, implementing Policy 443 would require a complete re-working of the Administrator's Database because it does not contain any information about individual lots/tracts within a parcel.  The process to re-create the Administrator's Database would take 6 - 8 months, during which time wetlands claims could not be processed.

Implementing Policy 443 would impermissibly subject BP to double-payment, triple-payment, or overpayments in even greater multiples thereof.  In the Holly Beach examplar tax assessment above, the claimant who owns this one eligible parcel in Cameron Parish (which was never oiled) that happens to contain four lots, would be entitled to one minimum payment of $15,750 under the plain language Settlement Agreement.  (Ex. 12 § 2. C. ix. b.)  If Policy 443 is implemented, however, that same claimant would receive $63,000 for his single parcel ($15,750 x 4), subjecting BP to an overpayment four times in excess of what was bargained for in the Settlement Agreement.

On July 17, 2013, Class Counsel proposed yet another modification to Policy 443 contending, incredibly, that revised Policy 443 do "does not go quite far enough" because potentially not all lots/tracts within a parcel would be separately compensated under Policy 443 if "units" are used to identify individual lots/tracts.  Class Counsel thus proposes that the Claims Administrator remove the first of the three criteria in Revised Policy 443.  Class Counsel's modification, like Revised Policy 443 itself, is outrageous because, for the reasons articulated above, separately compensating *any* lots/tracts within a wetlands parcel is contrary to the plain language of the Settlement Agreement, the negotiating history, and the intent of the parties.  The affidavit of ▮▮▮▮▮▮ discussing the meaning of a "unit" within a parcel's tax assessment is totally irrelevant because no lots/tracts within a parcel can be separately compensated under the Settlement Agreement regardless of whether or not they are described as a unit.  Indeed, the fact that there is such confusion on Class Counsel's part with regard to how they proposed for the

7

Claims Administrator to identify lots/tracts within a wetlands parcel only further emphasizes that the parties did not discuss or intend lots/tracts to be separately compensated. Moreover, ▮ ▮ statement that lots/tracts are "used for taxing purposes" is similarly immaterial because it does not matter if lots/tracts are merely used in some vague way for taxing purposes. Instead, the Settlement Agreement is clear that a parcel is defined by the "*boundaries* used for taxing purposes," which are clearly provided in a parcel's tax assessment, and contained in the Administrator's Database which Class Counsel reviewed and approved. (Settlement Agreement, Ex. 11, § 1. C. i., emphasis added)

Revised Policy 443 and Class Counsel's recent modification seek to transform the method for compensating wetlands parcels such that it would bear little resemblance to the plain language of the Compensation Framework for Wetlands Real Property Claims. The Claims Administrator is bound by the Settlement Agreement and may not re-write it as Revised Policy 443, or Class Counsel's modification, proposes.

BP is also deeply concerned because ▮ also had significant involvement in the development of Policy 443. On February 15, 2013, ▮ e-mailed Class Counsel requesting an agenda for an upcoming meeting where various wetlands issues, including the definition of a parcel, would be discussed. Class Counsel submitted the agenda to ▮ on February 18, 2013. ▮ met with the parties and the Claims Administrator where the definition of a parcel was debated. Class Counsel and BP told ▮ and the Claims Administrator that the parties would continue to discuss the issue. ▮ exchanged numerous e-mails with Class Counsel and BP during April 2013 regarding the status of the parties' discussions regarding the issue. On May 10, 2013, Class Counsel sent an e-mail to ▮ laying out its position on the issue. BP also submitted its position in an e-mail to ▮ on May 16, 2013. While BP is aware of the foregoing examples of ▮ involvement in the development of this policy, it is unclear to what extent she had additional involvement or communications that were not shared with BP.

\* \* \*

Based on the above, BP has requested a panel hearing to address Policies 442 and 443 because they are both in direct conflict with the plain language of the Settlement Agreement.

8



**From:** Steve Herman [mailto:SHERMAN@hhklawfirm.com]
**Sent:** Monday, September 16, 2013 6:21 PM
**To:** Orran Brown; Patrick Juneau; mjuneau@dheclaims.com; Matthew Hazzard
**Cc:** jimr@wrightroy.com; ; Moskowitz, Keith; Bloom, Wendy L.
**Subject:** BP Oil - Final Policies After 8/21/13 Panel Session

To avoid any confusion or doubt, Class Counsel also defer at this point to each and all of these final Policies.  Thanks.

**From:** Bloom, Wendy L. [mailto:wbloom@kirkland.com]
**Sent:** Monday, September 16, 2013 5:59 PM
**To:** Orran Brown; Patrick Juneau; mjuneau@dheclaims.com; Matthew Hazzard
**Cc:** Steve Herman; jimr@wrightroy.com; ; Moskowitz, Keith
**Subject:** Final Policies After 8/21/13 Panel Session

Orran,

This e-mail responds to your September 6, 2013 and September 11, 2013 e-mails attached below in which you asked if the Parties object to and intend to seek review by the Court of Policies 442, 443, 459, 464, and 473 – which were discussed at the August 21, 2013 Panel Hearing.  At this time, BP requests that each policy be classified as "Defer to the Claims Administrator."  BP incorporates herein its prior comments, submissions and objections relating to these policies, including BP's statements at the August 21, 2013 Panel Meeting.  This response and "Defer to Claims Administrator" classification does not in any way waive any of BP's objections previously submitted relating to these policies.

By deferring to the Claims Administrator, BP understands the CSSP will issue each policy subject to BP's reservation of its right to object to the policy and to application of the policy in the future, including, but not limited to, instances where the policy is applied to specific claims.  Moreover, BP does not waive any right to challenge these policies in individual claim appeals and/or to seek Court resolution with regard to the content of these policies or their application to specific claims under Section 4.3.4., and BP notes that there is no time limit under Section 4.3.4 to seek Court resolution

and BP may request Court resolution pursuant to Section 4.3.4 at any time. (*Id.*) BP specifically reserves its right to do so.

More specifically, BP states:

**Policy 442 - Wetlands Real Property Claims: Competing Chains of Title.**

BP requests that policy 442 be designated as defer to the Claims Administrator. BP incorporates herein its April 4, 2013 response to the Settlement Program's Request for Input on this issue; BP's June 19, 2013 and July 13, 2013 responses and comments relating to this proposed policy; and BP's August 20, 2013 Memorandum submitted in advance of the August 21, 2013 Panel Hearing.

**Policy 443 - Wetlands Real Property Claims: Compensating Individual Parcels Aggregated Under a Single Tax Assessment ID.**

BP requests that policy 443 be designated as defers to the Claims Administrator. This response does not in any way waive any of BP's objections previously submitted relating to these policies.

BP maintains its position that Policy 443 is in error because it proposes to treat lots/tracts within a wetlands parcel as their own individual "parcels" under the Compensation Framework for Wetlands Real Property Claims despite the fact that the Settlement Agreement clearly defines a parcel as "a specific tract of real property defined by a legal description of boundaries used for taxing purposes," which are provided in the parcel's tax assessment. (Settlement Agreement, Ex. 11, § 1. C. i., emphasis added) Policy 443 is contrary to the intent of the parties and impermissibly subjects BP to double-payment, triple-payment, or overpayments in even greater multiples thereof. BP's classification of these policies as a deferral to the Claims Administrator is based on the Settlement Program's current practices and procedures, and BP reserves the full right to comment upon, object to or take other action arising from the implementation of these policies by the Claims Administrator. BP incorporates herein its June 19, 2013 and July 14, 2013 responses and comments relating to this proposed policy; and BP's August 20, 2013 Memorandum submitted in advance of the August 21, 2013 Panel Hearing.





Thanks,

Wendy

**Wendy Bloom | Kirkland & Ellis LLP**
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2343 **DIRECT** | (312) 862-2200 **FAX**
wendy.bloom@kirkland.com





*This electronic mail is intended to be received and read only by certain individuals. It may contain information that is privileged or protected from disclosure by law. If it has been misdirected, or if you suspect you received this in error, please notify me by replying and then delete this message and your reply. These restrictions apply to any attachment to this email.*


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communicat