

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

**Patrick A. Juneau**
*Claims Administrator*

February 24, 2016

*Via email:* ▓▓▓▓▓▓▓▓▓▓▓▓▓
Honorable Carl J. Barbier
United States District Judge
Eastern District of Louisiana
500 Camp Street
New Orleans, LA 70130

 Re: MDL No. 2179 – BP's Motion to Vacate and Stay Payment of Awards to Claimant 100261264 [Doc. 15903]

Dear Judge Barbier:

 As directed by the Court, the attached package presents the history of Policy 443 from its initial announcement through its approval and final announcement on September 18, 2013, including the positions taken by BP and Class Counsel in connection with the policy. We understand that the Court intends to make this a part of the record in connection with its consideration of BP's Motion to Vacate and Stay Payment of Awards to Claimant 100261264 [Doc. 15903].

 If the Court requires anything further or has any questions, please let me know.

Sincerely,

PATRICK A. JUNEAU
Claims Administrator

cc (via email): Allison Rumsey (allison.rumsey@aporter.com)
    Don K. Haycraft (dkhaycroft@liskow.com)
    David Bruchaus (dbruchaus@camtel.net)
    Stephen J. Herman (Sherman@hhk.com)
    James P. Roy (jimr@wrightroy.com)
    Eric Nitcher (eric.nitcher@uk.bp.com)

| Policy 443: Wetlands Real Property Claims: Compensating Individual Parcels Aggregated Under a Single Tax Assessment ID | |
|---|---|
| **Wetlands Meeting with Parties:** 2/21/13 | **BP Response Date:** 5/16/13 |
| | **CC Response Date:** 5/10/13 |
| **Announced Date:** 6/12/13 | **BP Response Date:** 6/19/13 |
| | **CC Response Date:** 6/13/13 |
| **Reissued Date:** 7/12/13 | **BP Response Date:** 7/14/13 |
| | **CC Response Date:** 7/17/13 |
| On 8/20/13, BP circulated a memo further explaining its position on Policy 443. BP's memo is attached. | |
| **Panel Hearing:** 8/21/13 | |
| **Email to Parties After Panel Hearing:** 8/8/13 | **BP Response Date:** 9/16/13 |
| | **CC Response Date:** 9/16/13 |

Comments and Decisions by the Parties:

**Wetlands Meeting with Parties**

    1. **BP**
        a. Date:  5/16/13
        b. Comment:

    See items 3A – 3D in the attached email correspondence from Chris Esbrook.

    2. **Class Counsel**
        a. Date:  5/10/13
        b. Comment:

    See items 3 – 6 in the attached email correspondence from Steve Herman.

**From:** "Esbrook, Christopher J." <cesbrook@kirkland.com>
**Date:** May 16, 2013, 11:59:04 AM EDT
**To:** Christine Reitano <creitano@dheclaims.com>
**Cc:** Patrick Juneau <pjuneau@dheclaims.com>, Orran Brown
<OBrown@browngreer.com>, "Rose McCabe LeBreton (rlebreton@lawla.com)"
<rlebreton@lawla.com>, David Smith <dsmith@browngreer.com>, Robert
Edgecombe <redgecombe@gcrincorporated.com>, "cfayard@gmail.com"
<cfayard@gmail.com>, John Baden <jbaden@motleyrice.com>, Calvin Fayard
<Calvin@fayardlaw.com>, "jimr@wrightroy.com" <jimr@wrightroy.com>,
'Steve Herman' <SHERMAN@hhklawfirm.com>, "*mark.Holstein@bp.com"
<mark.Holstein@bp.com>, "Bloom, Wendy L." <wbloom@kirkland.com>,
"Moskowitz, Keith" <keith.moskowitz@dentons.com>
**Subject: RE: BP Oil - Wetlands**

Dear Christine,

BP respectfully submits the following response regarding the Wetlands and
Coastal issues discussed at the February meeting with Class Counsel and the
Claims Administrator.  As explained more fully below, BP and Class Counsel
have met on multiple occasions and have worked collaboratively to come to an
agreement on the MasterCARD issue and the removal of 123 parcels from the
Administrator's Database that fall outside the Wetlands Zone.  BP and Class
Counsel could not, however, reach an agreement regarding the issue of multiple
lots on one Eligible Parcel despite the fact that the Settlement Agreement is clear
that only an Eligible Parcel (and not a "lot") is compensable under the Wetlands
Framework.

1. MasterCARD Issue

BP and Class Counsel met to discuss the MasterCARD issue and, as Steve
Herman indicated in Class Counsel's May 10, 2013 e-mail, the parties have
worked collaboratively to come to an agreement on how this issue should be
handled.

As background on this issue, the Administrator's Database for the Coastal
settlement contains the Parcel ID Numbers and County Land Use Designations of
parcels within the Coastal Real Property Claim Zone.  Those Parcel ID Numbers
and County Land Use Designations were obtained from the county tax rolls,
including the Baldwin County, Alabama tax roll.  There are certain parcels in
Administrator's Database that have a County Land Use Designation of
"Condominium MasterCARD" or "MasterCARD" as assigned by the Baldwin
County Tax Assessor. When a condominium development is filed and recorded
with Baldwin County, the Baldwin County Tax Assessor creates a MasterCARD
Parcel ID Number for the entire condominium development, while the individual
condominium units (along with associated shared interest in the common area) are
assigned their individual Parcel ID Numbers.  In some cases, a MasterCARD

Parcel ID Number in the Administrator's Database is only a "placeholder" because it is not associated with any actual real property interest - all of the interest in the real property rests with the individual condominium units which have been assigned their own Parcel ID Numbers. Such "placeholder" Parcel ID Numbers are not compensable under the Coastal Framework. There also may be instances, however, where a MasterCARD Parcel ID Number is not merely a placeholder because it is associated with actual real property such that it would be compensable assuming the other criteria in the Coastal Framework are met. As such, Coastal claims made for MasterCARD Parcel ID Numbers must be reviewed by the Claims Administrator to determine whether the MasterCARD parcel is a placeholder or whether it is actually associated with any real property.

BP and Class Counsel agreed that parcels in the Administrator's Database with a County Land Use Designation of Condominium MasterCARD or MasterCARD will be flagged, not removed from the Administrator's Database. If a claim for a MasterCARD parcel is submitted, Alvarez & Marsal (A&M) will work with the Claims Administrator to perform a review of the MasterCard parcel to determine whether it is eligible for compensation under the Coastal Framework. Though the review will be tailored to the particular parcel and associated documents, the review will typically involve the following:

- Examine the Deed to determine whether the legal description matches the property acquired by the developer of the condominium.

- Examine other publically available documents to determine if the property is a condominium and whether individual units exist. A&M will most often examine the Declaration of Condominium, which is filed in the Probate Judge's office before the condominium development is constructed.

- Examine the deeds and County Tax and/or Appraisal Notices for the individual units within the condominium development to verify that individual parcels exist for each unit, were sold by the developer, and that the total 2010 appraised value of the individual units approximates the Tax and/or Appraisal Notice stated 2010 appraised value of the MasterCARD parcel, although this may not always be the case.

- Examine the County Tax and/or Appraisal Notice for the MasterCARD parcel to determine whether:

    o MasterCARD appears on the 2010 tax notice as a legal description and/or County Land Use Designation, and

    o the parcel is a "taxed parcel," meaning whether the county has levied a tax on the value of the MasterCARD parcel and confirm the property tax payment history is $0.00 and the property taxes for the entire condominium are allocated to each unit.

This review is intended to assist the Claims Administrator in determining if a claim for a MasterCARD parcel is compensable pursuant to the Coastal Framework.  This review does not create any additional criteria for claimants to fulfill and the same post-claim challenge processes available to claimants will apply for MasterCARD claims as they do with all other claims under the Coastal Framework.

<u>2. St. Mary's Parish - Removal of Parcels Located Outside of the Wetlands Real Property Claim Zone</u>

BP agrees that the 123 parcels identified by GCR as located outside of the Wetlands Real Property Claim Zone should be removed from the Wetlands Claims Administrator's Database.

<u>3. A. Multiple Lots on One Parcel in Cameron Parish</u>

The Wetlands settlement is a parcel-based settlement and it may not now be transformed into a lot-based settlement as proposed by Class Counsel.  There are three settlement frameworks related to real property in the Settlement Agreement - Wetlands, Coastal and Real Property Sales.  The Wetlands, Coastal, and Real Property Sales frameworks were all negotiated, drafted, and agreed to as parcel-based settlements.  All three frameworks use the term "parcel," not "lot," to describe the real property eligible for payment - the Wetlands and Coastal Frameworks define the properties eligible for payment as "Eligible Parcel" and the Real Property Sales Framework uses the term "Residential Parcel."  (Ex. 11, §1. A.; Ex. 12, § 1. A.; Ex. 13 §1. B.)  The term parcel is specifically defined in the Settlement Agreement as "a specific tract of real property defined by a legal description of ***boundaries used for taxing purposes***" which is provided in a parcel's 2010 Tax Assessment.  (Ex. 11, §1. C.)(emphasis added).  Accordingly, wetlands claimants may only be compensated for an Eligible Parcel - defined by the "boundaries used for taxing purposes" in the tax assessment - and may not be compensated for individual lots that may fall within the Eligible Parcel.  Indeed, the term "lot" does not even appear in any of the settlement frameworks related to real property, much less the Wetlands Framework.  There is simply no authority for the Claims Administrator to compensate individual lots and ignore the clear language in the Settlement Agreement that provides only Eligible Parcels may receive the Wetlands Real Property Compensation Amount.

The Claims Administrator uses the example of Jon Thompson who made a claim under the Wetlands Framework for his Eligible Parcel located in Cameron Parish.  Mr. Thompson has one Eligible Parcel the boundaries of which are "defined by the legal description of boundaries used for taxing purposes" and contained in Tax Assessment ID 500016201.  Pursuant to the Wetlands Framework, Mr. Thompson's Eligible Parcel is entitled to minimum payment for Compensation Category B as his parcel was never oiled.  It is irrelevant to the implementation of the Wetlands Framework whether or not Mr. Thompson's Eligible Parcel contains multiple lots just as it is irrelevant to the implementation

whether Mr. Thompson's Eligible Parcel contains multiple sections, units, tracts, or any other description of property not provided for in the Settlement Agreement. The Settlement Agreement is absolutely clear that only an Eligible Parcel may be compensated under the Wetlands Framework.

3. B. Multiple Lots on One Parcel in Other Parishes

As explained above, the Settlement Agreement is clear that only an Eligible Parcel may be compensated under the Wetlands Framework. This is true regardless of which Parish the Eligible Parcel is located. The Claims Administrator uses the example of Paul Gement who made a claim under the Wetlands Framework for his Eligible Parcel located in St. Tammany Parish. Mr. Gement has one Eligible Parcel the boundaries of which are "defined by the legal description of boundaries used for taxing purposes" and contained in Tax Assessment ID 1370772534. Pursuant to the Wetlands Framework, Mr. Gement's Eligible Parcel is entitled to minimum payment for Compensation Category B as his parcel was never oiled. It is irrelevant to the implementation of the Wetlands Framework whether or not Mr. Gement's Eligible Parcel contains multiple lots just as it is irrelevant to the implementation whether Mr. Gement's Eligible Parcel contains multiple sections, units, tracts, or any other description of property not provided for in the Settlement Agreement.

3. C. Prorating Compensation Amounts

The Claims Administrator asks how to treat a situation under the Wetlands Framework in which an Eligible Claimant sells a portion of his Eligible Parcel during the period of eligibility. In the example provided by the Claims Administrator, Jerry Ware owned an Eligible Parcel for the entire period of eligibility, but sold a portion of the parcel to a buyer ("Buyer") on September 28, 2010. First, as explained above, whether or not Mr. Ware's Eligible Parcel contained any lots, sections, tracts, etc., is irrelevant to the implementation of the Wetlands Framework. Moreover, the Wetlands Framework provides clear rules for how to handle this situation. Mr. Ware was the owner of an Eligible Parcel "during the time period April 20, 2010 to [the date of the Settlement Agreement]" and is thus an Eligible Claimant (assuming he is not otherwise excluded). (Settlement Agreement, Ex. 12, §1. A.) Applying the rules in Section 2 of the Wetlands Framework, Mr. Ware's Eligible Parcel is entitled to the non-oiled minimum payment. (*Id*. at §2. C. ix. b.) Because Mr. Ware owned the Eligible Parcel for the entire period of eligibility, he is entitled to the full non-oiled minimum payment. (*Id*. at 2. E.) The Buyer may also own an Eligible Parcel if the portion of Mr. Ware's parcel that he bought is within the Wetlands Real Property Claim Zone. If it is in fact located within the Wetlands Real Property Claim Zone, and the Buyer is an Eligible Claimant, the Buyer would be entitled to the compensation pursuant to Section 2 of the Wetlands Framework. (*Id*. at 2. C.) Since the Buyer, however, did not own the Eligible Parcel for the entire period of eligibility, he would be entitled to his pro rate portion of the Wetlands Real Property Compensation Amount determined by the

number of days the Buyer was in legal possession of the Eligible Parcel between April 20, 2010 and the date of the Settlement Agreement.  (*Id*. at 2. E. ii.)

3. D. Multiple Lots/Tracts on One Parcel in Cameron Parish with Varying Ownership Interests

The Claims Administrator asks how to compensate Margaret Munro under the Wetlands Framework.  Ms. Munro is a partial owner of one Eligible Parcel.  Specifically, Ms. Munro owns 100% of certain areas on the Eligible Parcel and 33% of others.  This Eligible Parcel, the boundaries of which are defined by Tax Assessment ID 501101300, would be entitled to the non-oiled minimum of $15,750 under the Section 2 of the Wetlands Framework.  (Settlement Agreement, Ex. 12, §2. C. ix. b.)  Where, as here, there are multiple owners of an Eligible Parcel, the Wetlands Framework provides that "the Wetlands Real Property Compensation Amount shall be allocated based on the period of legal possession of the particular Eligible Parcel by each Eligible Claimant between April 20, 2010, and [the date of the Settlement Agreement]."  (Settlement Agreement, Ex. 12, §2. E. ii.)  Accordingly, Ms. Munro will be allocated her portion of the $15,750 based on the portion of the Eligible Parcel for which she had legal possession during the period of eligibility.


Best,
Chris

Christopher J. Esbrook
KIRKLAND & ELLIS LLP
300 North Lasalle Street
Chicago, IL  60654
312.862.2032 (Tel)
312.862.2200 (Fax)
christopher.esbrook@kirkland.com

**From:** Steve Herman <SHERMAN@hhklawfirm.com>
**Date:** Friday, May 10, 2013 2:29 PM
**To:** Christine Reitano <creitano@dheclaims.com>
**Cc:** "'JIMR@wrightroy. com'" <JIMR@wrightroy.com>, David Smith <dsmith@browngreer.com>, 'Robert Edgecombe' <redgecombe@gcrincorporated.com>, Rose LeBreton <rlebreton@lawla.com>, 'Mark Holstein' <Mark.Holstein@bp.com>, "'keith. com'" <keith.moskowitz@snrdenton.com>
**Subject:** BP Oil - Wetlands

Class Counsel respectfully submit the following regarding the Wetlands and Coastal issues discussed at the February Wetlands Meeting with the Claims Administrator:

Master CARD Issue

It is our understanding that the Master CARD issue has been previously addressed and the issue has been resolved, as described by Chris Boutwell who attended the meetings on behalf of Class Counsel.

St. Mary's Parish – Removal of parcels subsequently deemed ineligible

This issue arose when it became known that the parcel eligibility mapping database included 123 parcels which were not actually eligible for compensation. This occurred due to the fact that there was limited information regarding parcel divisions in St. Mary's Parish at the time the settlement was entered into. There have been at least four claims which have been submitted on ineligible parcels. At the February meeting, it is our understanding that those four parcels would be compensated, but that the remaining parcels which are now ineligible will not be compensated.

In a meeting with Robert Edgecombe at GCR, with Class Counsel and BP present, all 123 parcels which have been determined to be ineligible were examined and Class Counsel does not object to their removal from eligibility. At the same time, there were approximately 748 parcels which were initially determined to be ineligible in St.

Mary's Parish, but have now been determined to be eligible. Class Counsel has no objection or problem with the inclusion of these additional parcels in the eligibility database.

Class Counsel believes that the adjustments made by Robert Edgecombe and GCI are acceptable and that he and his team are working conscientiously and diligently to develop the most accurate database possible. It is Class Counsel's position that if there is future database modification which could result in the removal of eligible parcels, that Class Counsel be notified and given the opportunity for input prior to removal of any parcels. This would apply to all parishes, not just St. Mary's Parish.

Multiple Lots on One Tax Assessment in Cameron Parish

The issue was raised about how the Claims Administrator should handle situations where there are numerous lots falling under a single Tax Assessment ID number in Cameron Parish. The single Tax Assessment ID is an efficiency instituted by the Parish Assessor's office and should not have bearing on the treatment of the clearly separate lots as individual parcels. Each lot could be separately acquired or alienated and bear little relation to the single Tax Assessment ID. In its memo, the Claims Administrator identifies a Mr. Thompson in Cameron Parish, who has argued that each of his four lots, which fall under the same Tax Assessment ID number should be treated as separate parcels. Class Counsel agrees with this argument and takes the same position. Class Counsel believes that in any situation where there are multiple independent lots within a single Tax Assessment ID number in Cameron Parish, that each individual lot should be treated as a separate parcel for compensation calculations.

Multiple Lots on One Tax Assessment in other parishes

This is analogous to the Tax Assessment issue in Cameron Parish, and Class Counsel takes the same position articulated above. Multiple individual lots should be treated as separate parcels for compensation

calculations, regardless of whether they fall under a single Tax
Assessment ID.  Claimants should not be penalized for the Tax
Assessor's Office using efficiencies in the handling of the multiple
lots under one owner and one Tax Assessment ID.

Prorating Compensation Amounts for Transfer of Multiple Lots

This issue was described in the Claims Administrator's memo
regarding a Mr. Ware, who had ownership of three lots falling under
one Tax Assessment ID number during the time of the spill, and sold
one of them during the eligibility period.  There are two issues.  The
first being that each individual lot should be treated separately,
regardless of falling under one Tax Assessment ID number.  The
second is that the single lot sold during the eligibility period should be
prorated between Mr. Ware and the new owner of the lot.  Class
Counsel believes in this situation, that the eligibility calculations
should be made as follows: Each individual parcel should be given its
own eligibility determination and compensation calculation.  As such,
Mr. Ware should receive 100% compensation for each of the two lots
he owned throughout the eligibility period.  For the lot that was sold
during the eligibility period, Mr. Ware should receive pro-rated
compensation for the period in which he owned the property during
the eligibility period.

Multiple Lots/Tracts on One Tax Assessment in Cameron Parish with
Varying Ownership Interests

This issue relates to a Ms. Munro in Cameron Parish who filed for 8
separate lots falling under one Tax Assessment ID number, and for
which Ms. Munro has varying ownership interests in the different
lots.  Again, Class Counsel takes the position that each lost be given
an individual determination, regardless of the fact that it falls under
one Tax Assessment ID number.  This would require eligibility and
compensation determinations on eight separate lots/parcels.  When
they are broken down by lot, it then becomes much easier to pro-rate

the compensation award to Ms. Munro based upon her ownership interests in each specific individual lot.

```
CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information
intended
solely for the addressee.  Please do not read, copy, or
disseminate it unless
you are the addressee.  If you have received it in error, please
call us
(collect) immediately at (504) 581-4892 and ask to speak with the
message
sender.  Also, we would appreciate your forwarding the message
back to us and
deleting it from your system.  Thank you.
```

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## WETLANDS REAL PROPERTY CLAIMS:  COMPENSATING INDIVIDUAL PARCELS AGGREGATED TOGETHER UNDER A SINGLE TAX ASSESSMENT ID

### I.  Introduction.

The Wetlands Claims Administrator's Database ("Wetlands Database") identifies all Eligible Parcels located in the Wetlands Real Property Claim Zone that may be compensated under the terms of the Settlement Agreement. A mapping vendor selected by BP created the Wetlands Database and provided it to the Claims Administrator under the terms of the Settlement Agreement and with the consent of Class Counsel.  It constructed the Wetlands Database based on available parish tax assessment records so that: (1) each Eligible Parcel corresponds to the Tax Assessment ID assigned to it by the parish where the property is located; and (2) the Compensation Amount for each Eligible Parcel is tied to the Tax Assessment ID.  Under the Wetlands Compensation Framework in Exhibit 12A to the Settlement Agreement, the Claims Administrator is required to use this Wetlands Database to determine whether a Parcel is eligible for payment in the Wetlands program and, if so, the amount of the payment.

Most parishes in the Wetlands Real Property Claim Zone assign separate Tax Assessment IDs to individual lots or tracts of land.  If a claimant owns multiple lots or tracts and the parish assigns a separate Tax Assessment ID to each lot or tract, then the claimant is assigned separate Compensation Amounts for each Eligible Parcel in the Wetlands Database.  However, a parish may, solely for reasons of administrative efficiency, combine all of an owner's pieces of real property on one Tax Assessment ID, rather than issuing separate Tax Assessment IDs for each piece of land.  When lots or tracts are grouped together under one Tax Assessment ID, the Wetlands Database identifies them as one Parcel, which means they are assigned a Compensation Amount for only one Parcel in the Wetlands Database, regardless of the number of lots or tracts included under that Tax Assessment ID.  This causes these claimants to get payment for one Parcel, whereas if the parish had placed each piece of property on its own Tax Assessment ID, under Exhibit 12A the claimant would get a Wetlands payment for each one in the Wetlands Database.  Adhering to the structure of the Wetlands Database in those situations causes such claimants to receive less compensation than if their parish placed each of the lots or tracts on separate Tax Assessment IDs.

Section 1.C. of Exhibit 12A to the Settlement Agreement provides that "Eligible Parcels shall be defined as parcels located within the Wetlands Real Property Claim Zone."  Exhibit 12A does not specifically define the term "parcel." However, Section 1.C.i. of the Coastal Compensation Framework (Exhibit 11A) defines "parcel" as "a specific tract of real property defined by a legal description of boundaries used for taxing purposes."  The Wetlands Instruction Booklet on how to fill out the Wetlands Claim Form, which both BP and Class Counsel approved, defines a parcel as "[a] plot of land that can be sold or purchased."  Webster's New World Dictionary, Second College Edition, defines a parcel as "a piece, as of land, usually a specific part of a large acreage or estate."

The Claims Administrator has determined that separate pieces of land owned by a claimant that are grouped together under one Tax Assessment ID shall be compensated as separate Parcels under the Wetlands framework, because:

1

426951

(1) Each lot is separately valued for taxing purposes and has its own "legal description[s] of boundaries" and thus fits the definition of Parcel in the Coastal Framework written by the Parties.

(2) Each lot is "a plot of land that can be sold or purchased" and thus fits the definition of Parcel in the Wetlands Instruction Booklet approved by the Parties.

(3) Each lot is "a piece" or "a specific part of a large acreage or estate" and thus fits Webster's definition of "parcel."

(4) The Wetlands framework in Exhibit 12A does not mandate that the form of a Tax Assessment ID control over the substance of paying compensation amounts that are measured by size of a lot and how much of it was oiled.  There is no explicit requirement in the Settlement Agreement or Exhibit 12A that an Eligible Parcel must correspond to one Tax Assessment ID or that the Wetlands Database be set up on that premise.

(5) Section 4.3.7 of the Settlement Agreement provides that "The Settlement Program…shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement."  The parishes that combine parcels under one Tax Assessment ID create disparate treatment toward Class Members.  By compensating each Parcel separately, the Claims Administrator will provide payments to the Economic Class Members that they are entitled to receive.

## II.    <u>Policy Statement.</u>

If the Claims Administrator determines that a particular parish consolidates multiple real property tracts or lots owned by a claimant into a single Tax Assessment ID, then each individual tract or lot is eligible to receive compensation under the Wetlands Compensation Framework if: (1) the parish separately assigns a tax assessment value to the tract or lot; (2) there is a distinct legal description for the tract or lot within the tax assessment record(s) prepared by the parish; and (3) the tract or lot is located within the Wetlands Real Property Claim Zone.  In these situations, the Claims Administrator will update the Claims Administrator's Database to include separate Compensation Amounts for each lot or tract, rather than an aggregate Compensation Amount for all lots or tracts combined under one Tax Assessment ID.

2

**Policy Announced to Parties for Positions**

1. **BP**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  6/19/13
   c. Comment:

If the Claims Administrator issues Policy No. 443 as written, BP defers to the Claims Administrator's decision.  However, if the Claims Administrator modifies Policy No. 443, BP requests that the policy be reissued for comment by the parties.  Class Counsel has proposed a modification that seeks to remove from Policy No. 443 one of the Claims Administrator's three requirements in the policy - the requirement that "the parish separately assigns a tax assessment value to the tract or lot."  The Claims Administrator included that requirement because, as Policy No. 443 states, the fact that a "lot is separately valued for taxing purposes" means that it "fits the definition of Parcel in the Coastal Framework written by the Parties."  That is because the Coastal Framework defines the term "parcel" as "a specific tract of real property defined by a legal description used for taxing purposes."  (Settlement Agreement, Ex. 11, §1. C. i.)(emphasis added)  If a lot is not separately valued for taxing purposes, then it is not "used for taxing purposes," and thus does not fit the definition of parcel in the Settlement Agreement.  Accordingly, BP objects to Class Counsel's proposed modification because it runs contrary to the reasoning of Policy No. 443 and the plain language of the Settlement Agreement upon which it was based.

2. **Class Counsel**
   a. Decision:  Propose Modification
   b. Date:  6/13/13
   c. Comment:

It is our understanding is that this Policy was formulated primarily to address Parcels located in Parishes (including particularly Cameron Parish) where, for administrative reasons, separate tracts are assessed together in a single notice.  The Policy's requirement, however, that "each lot is separately valued for taxing purposes" would effectively render it meaningless, as Cameron Parish (for example) does not assign a tax assessment value to each tract or lot.  Each land class (e.g. "AG LAND", "SALT WTR MARSH") receives a separately assigned tax assessment value, but each land tract does not.  From the face of the tax assessment notice, there is no way to correlate each separate tract into a particular land class.  Notably, Wetlands Framework compensation does not depend in any way on the tax assessment value of each parcel, but only on the amount of acreage within the Oiled or Non-Oiled Primary Area and Buffer Area. Acreage can be readily determined from property descriptions and the mapping database without reference to the assessed value of each individual tract.

> **WETLANDS REAL PROPERTY CLAIMS:  COMPENSATING INDIVIDUAL PARCELS AGGREGATED TOGETHER UNDER A SINGLE TAX ASSESSMENT ID**

## I.  Introduction.

The Wetlands Claims Administrator's Database ("Wetlands Database") identifies all Eligible Parcels located in the Wetlands Real Property Claim Zone that may be compensated under the terms of the Settlement Agreement.  A mapping vendor selected by BP created the Wetlands Database and provided it to the Claims Administrator under the terms of the Settlement Agreement and with the consent of Class Counsel.  It constructed the Wetlands Database based on available parish tax assessment records so that: (1) each Eligible Parcel corresponds to the Tax Assessment ID assigned to it by the parish where the property is located; and (2) the Compensation Amount for each Eligible Parcel is tied to the Tax Assessment ID.  Under the Wetlands Compensation Framework in Exhibit 12A to the Settlement Agreement, the Claims Administrator is required to use this Wetlands Database to determine whether a Parcel is eligible for payment in the Wetlands program and, if so, the amount of the payment.

Most parishes in the Wetlands Real Property Claim Zone assign separate Tax Assessment IDs to individual lots or tracts of land.  If a claimant owns multiple lots or tracts and the parish assigns a separate Tax Assessment ID to each lot or tract, then the claimant is assigned separate Compensation Amounts for each Eligible Parcel in the Wetlands Database.  However, a parish may, solely for reasons of administrative efficiency, combine all of an owner's pieces of real property on one Tax Assessment ID, rather than issuing separate Tax Assessment IDs for each piece of land.  When lots or tracts are grouped together under one Tax Assessment ID, the Wetlands Database identifies them as one Parcel, which means they are assigned a Compensation Amount for only one Parcel in the Wetlands Database, regardless of the number of lots or tracts included under that Tax Assessment ID.  This causes these claimants to get payment for one Parcel, whereas if the parish had placed each piece of property on its own Tax Assessment ID, under Exhibit 12A the claimant would get a Wetlands payment for each one in the Wetlands Database.  Adhering to the structure of the Wetlands Database in those situations causes such claimants to receive less compensation than if their parish placed each of the lots or tracts on separate Tax Assessment IDs.

Section 1.C. of Exhibit 12A to the Settlement Agreement provides that "Eligible Parcels shall be defined as parcels located within the Wetlands Real Property Claim Zone."  Exhibit 12A does not specifically define the term "parcel." However, Section 1.C.i. of the Coastal Compensation Framework (Exhibit 11A) defines "parcel" as "a specific tract of real property defined by a legal description of boundaries used for taxing purposes."  The Wetlands Instruction Booklet on how to fill out the Wetlands Claim Form, which both BP and Class Counsel approved, defines a parcel as "[a] plot of land that can be sold or purchased."  Webster's New World Dictionary, Second College Edition, defines a parcel as "a piece, as of land, usually a specific part of a large acreage or estate."

The Claims Administrator has determined that separate pieces of land owned by a claimant that are grouped together under one Tax Assessment ID shall be compensated as separate Parcels under the Wetlands framework, because:

1

(1) Each lot is (1) identified as a "unit" by the tax assessor and is included in the total taxable value, and (2) has its own "legal description of boundaries used for taxing purposes," which fits the definition of Parcel in the Coastal Framework written by the Parties.

Below is an example from Cameron Parish where there are four lots listed under one Tax Assessment ID.  Currently, in the Claims Administrator's Database, all four lots are treated as one Eligible Parcel and the claimant will receive one minimum compensation amount for $15,750.  Under this proposed policy, assuming all four lots are located in the Wetlands Claim Zone, the Claims Administrator's Database would compensate each individual lot at $15,750, and the claimant would receive a total of $63,000.

Status:  **ACTIVE 500016201**          **Assessment Breakdown**

| CLASS | LAND DESCRIPTION | FACTOR | QUANTITY | ADJ. MARKET VALUE | ASSESSMENT | EXEMPTION |
|---|---|---|---|---|---|---|
| 3400 | RESIDENTIAL SUBD. LOT | AV01 | 4.00 Units | $10,000.00 | 1,000 | NONE |

Legal Description:(See listing report for full legal description if required.)
LOTS 9, 10, 53 & 54 BLK 1 UNIT 6  HOLLY BEACH SUB IN SECS 10-12 T15S R11W (#286786 987-228 FROM WILMA BRIDE ET AL) (#303956 T/SALE TO RAINBOW RIGHTEOUS) (#306487 REDEMPTION)
(#312142 SPEC WARR DEED FROM MARY L JAX)(#314782 FROM R JAX)

(2) Each lot is "a plot of land that can be sold or purchased" and thus fits the definition of Parcel in the Wetlands Instruction Booklet approved by the Parties.

(3) Each lot is "a piece" or "a specific part of a large acreage or estate" and thus fits Webster's definition of "parcel."

(4) The Wetlands framework in Exhibit 12A does not mandate that the form of a Tax Assessment ID control over the substance of paying compensation amounts that are measured by size of a lot and how much of it was oiled.  There is no explicit requirement in the Settlement Agreement or Exhibit 12A that an Eligible Parcel must correspond to one Tax Assessment ID or that the Wetlands Database be set up on that premise.

(5) Section 4.3.7 of the Settlement Agreement provides that "The Settlement Program…shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement."  The parishes that combine parcels under one Tax Assessment ID create disparate treatment toward Class Members.  By compensating each Parcel separately, the Claims Administrator will provide payments to the Economic Class Members that they are entitled to receive.

2

426951

**II.    <u>Policy Statement</u>.**

If the Claims Administrator determines that a particular parish consolidates multiple real property tracts or lots owned by a claimant into a single Tax Assessment ID, then each individual tract or lot is eligible to receive compensation under the Wetlands Compensation Framework if: (1) each tract or lot is separately identified or included as a taxable "unit" on the tax assessment and is included in the total taxable value; (2) there is a distinct legal description for the tract or lot within the tax assessment record(s) prepared by the parish; and (3) the tract or lot is located within the Wetlands Real Property Claim Zone.  In these situations, the Claims Administrator will update the Claims Administrator's Database to include separate Compensation Amounts for each lot or tract, rather than an aggregate Compensation Amount for all lots or tracts combined under one Tax Assessment ID.

426951

**Reissued Policy for Parties' Positions**

1. **BP**
   a. Decision:  Request Panel Hearing
   b. Date:  7/14/13
   c. Comment:

   Policy 443 is contrary to the plain language of the Settlement Agreement and, therefore, BP respectfully requests a panel hearing. Policy 443 proposes to treat lots/tracts within a parcel as their own individual "parcels" under the Wetlands Compensation Framework despite the fact that the Settlement Agreement clearly defines a parcel as "a specific tract of real property defined by a legal description of boundaries used for taxing purposes," which are provided in the parcel's tax assessment.  (Settlement Agreement, Ex. 11, § 1. C. i.)  Moreover, Policy 443 is contrary to the intent of the parties and may be impossible to administer because the data regarding individual lots/tracts within a parcel is not within the Claims Administrator's Database and may not even exist.  Policy 443 impermissibly re-writes the definition of parcel in the Settlement Agreement to make "each individual tract or lot [] eligible to receive compensation under the Wetlands Compensation Framework" if three criteria - found nowhere in the Settlement Agreement - are fulfilled.  The Claims Administrator may not re-write the terms of the Settlement Agreement.

2. **Class Counsel**
   a. Decision:  Request Panel Hearing
   b. Date:  7/17/13
   c. Comment:

   We would first "Propose a Modification" (see attached).

## WETLANDS REAL PROPERTY CLAIMS:  COMPENSATING INDIVIDUAL PARCELS AGGREGATED TOGETHER UNDER A SINGLE TAX ASSESSMENT ID

## I.  Introduction.

The Wetlands Claims Administrator's Database ("Wetlands Database") identifies all Eligible Parcels located in the Wetlands Real Property Claim Zone that may be compensated under the terms of the Settlement Agreement.  A mapping vendor selected by BP created the Wetlands Database and provided it to the Claims Administrator under the terms of the Settlement Agreement and with the consent of Class Counsel.  It constructed the Wetlands Database based on available parish tax assessment records so that: (1) each Eligible Parcel corresponds to the Tax Assessment ID assigned to it by the parish where the property is located; and (2) the Compensation Amount for each Eligible Parcel is tied to the Tax Assessment ID.  Under the Wetlands Compensation Framework in Exhibit 12A to the Settlement Agreement, the Claims Administrator is required to use this Wetlands Database to determine whether a Parcel is eligible for payment in the Wetlands program and, if so, the amount of the payment.

Most parishes in the Wetlands Real Property Claim Zone assign separate Tax Assessment IDs to individual lots or tracts of land.  If a claimant owns multiple lots or tracts and the parish assigns a separate Tax Assessment ID to each lot or tract, then the claimant is assigned separate Compensation Amounts for each Eligible Parcel in the Wetlands Database.  However, a parish may, solely for reasons of administrative efficiency, combine all of an owner's pieces of real property on one Tax Assessment ID, rather than issuing separate Tax Assessment IDs for each piece of land.  When lots or tracts are grouped together under one Tax Assessment ID, the Wetlands Database identifies them as one Parcel, which means they are assigned a Compensation Amount for only one Parcel in the Wetlands Database, regardless of the number of lots or tracts included under that Tax Assessment ID.  This causes these claimants to get payment for one Parcel, whereas if the parish had placed each piece of property on its own Tax Assessment ID, under Exhibit 12A the claimant would get a Wetlands payment for each one in the Wetlands Database.  Adhering to the structure of the Wetlands Database in those situations causes such claimants to receive less compensation than if their parish placed each of the lots or tracts on separate Tax Assessment IDs.

Section 1.C. of Exhibit 12A to the Settlement Agreement provides that "Eligible Parcels shall be defined as parcels located within the Wetlands Real Property Claim Zone."  Exhibit 12A does not specifically define the term "parcel." However, Section 1.C.i. of the Coastal Compensation Framework (Exhibit 11A) defines "parcel" as "a specific tract of real property defined by a legal description of boundaries used for taxing purposes."  The Wetlands Instruction Booklet on how to fill out the Wetlands Claim Form, which both BP and Class Counsel approved, defines a parcel as "[a] plot of land that can be sold or purchased."  Webster's New World Dictionary, Second College Edition, defines a parcel as "a piece, as of land, usually a specific part of a large acreage or estate."

The Claims Administrator has determined that separate pieces of land owned by a claimant that are grouped together under one Tax Assessment ID shall be compensated as separate Parcels under the Wetlands framework, because:

426951

(1) Each lot is (1) identified as a "unit" by the tax assessor and is included in the total taxable value, and (2) has its own "legal description of boundaries used for taxing purposes," which fits the definition of Parcel in the Coastal Framework written by the Parties.

Below is an example from Cameron Parish where there are four lots listed under one Tax Assessment ID. Currently, in the Claims Administrator's Database, all four lots are treated as one Eligible Parcel and the claimant will receive one minimum compensation amount for $15,750. Under this proposed policy, assuming all four lots are located in the Wetlands Claim Zone, the Claims Administrator's Database would compensate each individual lot at $15,750, and the claimant would receive a total of $63,000.

Status: **ACTIVE 500016201**

## Assessment Breakdown

| CLASS | LAND DESCRIPTION | FACTOR | QUANTITY | ADJ. MARKET VALUE | ASSESSMENT | EXEMPTION |
|-------|------------------|--------|----------|-------------------|------------|-----------|
| 3400 | RESIDENTIAL SUBD. LOT | AV01 | 4.00 Units | $10,000.00 | 1,000 | NONE |

Legal Description:(See listing report for full legal description if required.)
LOTS 9, 10, 53 & 54 BLK 1 UNIT 6 HOLLY BEACH SUB IN SECS 10-12 T16S R11W (#286786 987-228 FROM WILMA BRIDE ET AL) (#303956 T/SALE TO RAINBOW RIGHTEOUS) (#306487 REDEMPTION) (#312142 SPEC WARR DEED FROM MARY L JAX)(#314782 FROM R JAX)

(2) Each lot is "a plot of land that can be sold or purchased" and thus fits the definition of Parcel in the Wetlands Instruction Booklet approved by the Parties.

(3) Each lot is "a piece" or "a specific part of a large acreage or estate" and thus fits Webster's definition of "parcel."

(4) The Wetlands framework in Exhibit 12A does not mandate that the form of a Tax Assessment ID control over the substance of paying compensation amounts that are measured by size of a lot and how much of it was oiled. There is no explicit requirement in the Settlement Agreement or Exhibit 12A that an Eligible Parcel must correspond to one Tax Assessment ID or that the Wetlands Database be set up on that premise.

(5) Section 4.3.7 of the Settlement Agreement provides that "The Settlement Program…shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement." The parishes that combine parcels under one Tax Assessment ID create disparate treatment toward Class Members. By compensating each Parcel separately, the Claims Administrator will provide payments to the Economic Class Members that they are entitled to receive.

2

II.     **Policy Statement.**

If the Claims Administrator determines that a particular parish consolidates multiple real property tracts or lots owned by a claimant into a single Tax Assessment ID, then each individual tract or lot is eligible to receive compensation under the Wetlands Compensation Framework if: (1) each tract or lot is separately identified or included as a taxable "unit" on the tax assessment and is included in the total taxable value; (2) there is a distinct legal description for the tract or lot within the tax assessment record(s) prepared by the parish; and (3) the tract or lot is located within the Wetlands Real Property Claim Zone.  In these situations, the Claims Administrator will update the Claims Administrator's Database to include separate Compensation Amounts for each lot or tract, rather than an aggregate Compensation Amount for all lots or tracts combined under one Tax Assessment ID.

426951

**Memorandum: Compensating Individual Wetlands Parcels**
**Aggregated Together Under a Single Tax Assessment ID**

The Claims Administrator's Proposed Policy is a step in the right direction, but does not go quite far enough. A requirement that each tract or lot be identified as a taxable "unit" in an assessment breakdown would mean Eligible tracts or lots lying within a subdivision will each be compensated as individual Parcels, but those tracts not within a subdivision will not.

The Proposed Policy was suggested to deal with parishes like Cameron Parish that assess multiple tracts or lots in a single assessment notice. Cameron Parish provides an "Assessment Breakdown" on the assessment notices which divide the assessed property into classes, indicate the number of units within each class, and assess a total value to each class. *See generally* Affidavit of Mona B. Kelley, CLA, attached hereto as "Exhibit A".

The Proposed Policy would not compensate non-subdivision lots/tracts in the same way as subdivision lots/tracts. Each subdivision lot/tract is a "unit" in the Assessment Breakdown, but this is not the case with lots/tracts that are not a part of a subdivision.

If located within subdivisions, tracts/lots of the same size are aggregated together as "units" in the Assessment Breakdown and assessed together by class (e.g., all 1 acre lots are units in a 1 acre class, all 2 acre lots are units in a 2 acre class, etc.). Below is an example of four subdivision tracts/lots aggregated together as four units.

| Status: ACTIVE 500016201 | Assessment Breakdown | | | | |
|---|---|---|---|---|---|
| CLASS | LAND DESCRIPTION | FACTOR | QUANTITY | ADJ. MARKET VALUE | ASSESSMENT | EXEMPTION |
| 3400 | RESIDENTIAL SUBD. LOT | AV01 | 4.00 Units | $10,000.00 | 1,000 | NONE |

Legal Description:(See listing report for full legal description if required.)
LOTS 9, 10, 53 & 54 BLK 1 UNIT 6  HOLLY BEACH SUB IN SECS 10-12 T16S R11W (#286786 987-228 FROM WILMA BRIDE ET AL) (#303956 T/SALE TO RAINBOW RIGHTEOUS) (#306487 REDEMPTION)
(#312142 SPEC WARR DEED FROM MARY L JAX)(#314782 FROM R JAX)

If tracts/lots are not located within subdivisions, they are not individually listed in the Assessment Breakdown. Instead, the overall acreage is classified under the 1995 Soil Survey of Cameron Parish made by the U.S. Dept. of Agriculture, and aggregated together by type. In this case, each unit represents the number of acres from all tracts containing land of a particular class. A single tract may contain land of more than one class. Below is an example of an Assessment Breakdown of tracts not located within a subdivision.

Status: **ACTIVE 501088754**            **Assessment Breakdown**

| CLASS | LAND DESCRIPTION | FACTOR | QUANTITY | ADJ MARKET VALUE | ASSESSMENT | EXEMPTION |
|-------|------------------|--------|----------|------------------|------------|-----------|
| 1265 | AG. LAND CLASS IIIW - Use Val. | AG02 | 1.00 Units | $19.00 | 19 | NONE |
| 1200 | AG. LAND CLASS III - Use Value | AG03 | 11.00 Units | $220.00 | 220 | NONE |
| 1300 | AG. LAND CLASS IV - Use Value | AG04 | 74.00 Units | $1,184.00 | 1,184 | NONE |
| 2200 | BRSH WTR. MARSH - Use Value | BM01 | 1272.00 Units | $7,632.00 | 7,632 | NONE |

Legal Description: (See listing report for full legal description if required.)
* TOTAL ACRES: 1357.77778 ACS
UND 1/9 INTEREST IN  THE FOLL KNOWN AS "THE JOYCE TRACT":
T14S R11W:  SECT 19, ENTIRE, SEC 20, ENTIRE, SEC 22 ENTIRE, SEC 23 ENTIRE, SEC 24 ENTIRE, SEC 25 ENTIRE, SEC
26 ENTIRE, SEC 27 ENTIRE, SEC 28 ENTIRE, SEC 29 ENTIRE, SEC 30 ENTIRE, SEC 31 ENTIRE, SEC 32 ENTIRE, SEC 33 ENTIRE, SEC 34
ENTIRE, SEC 35 W/2, SE/4, W/2NE/4, NE/4NE/4, SEC 36: NW/4NW/4, NE/4NE/4 SAVE & EXCEPT FROM THE ABOVE DES LAND 480 ACS
OWNED BY MATHILDA GED- DINGS GRAY IN T14S R11W, DES BY METES & BDS IN THAT CERT RECIPROCAL AGREEEMENT BETWEEN
LUTCHER & MOORE LUMBER CO & MATHILDA GRAY DATED 19TH OF JULY 1935,
#31872 27-206.
T14S R12W:  SEC 23 ENTIRE, SEC 24 ENTIRE, SEC 25 ENTIRE, SEC 26 ENTIRE, SEC 36 ENTIRE.
 T15S R11W:  SEC 2, N/2 OF SEC, SEC 3, W/2, W/2SE/4, W/2NE/4, NE/4NE/4, SEC 4 ENTRE, SEC 5 ENTIRE, SEC 6 ENTIRE, SEC 7 ENTIRE,
SEC 8 ENTIRE SEC (FRL),  SEC 9
ENTIRE SEC (FRL), SEC 10 NW/4, W/2NE/4, SW/4, W/2SE/4.
T15S R12W:  SEC 7 ENTIRE, SEC 10 ENTIRE (FRL)
***TOTAL OVERALL ACREAGE OF 12,220 / 9 = 1357.77778 ACS FOR BETSY***
(#101342) (#157418 404-521) (#116956) (#117272) (#180847 521-134) (#192707)
(#200254 623-483) (#206992)
(#266479 915-249 FROM FINA OIL & CHEMICAL CO)
(#266484 915-572 ASSIGNMENT)
(#268908 924-865 CASTEX ENERGY TO LATERRE CO LTD)
(#223833 734-301 MULLINS INV TO LMD INVEST MTD PTN)
(#272064 936-704 LATERRE CO LTD TO MIRANT SOUTH LOUISIANA FEE LLC)
(#308390 CASH SALE FROM BETSY MECOM)

In the above example the total acreage of each separately described tract of land (e.g., "T14S R12W: SEC 23 ENTIRE") is combined and then classified according to the 1995 Soil Survey scheme. The acreage of each class of land is displayed as "Units" and assessed by class. The Assessor uses the legal descriptions to map the boundaries of each tract, calculate the acreage, and determine the applicable land class(es). Thus, the legal descriptions "are used for taxing purposes." The tracts are susceptible to sale as discrete tracts of land. Nevertheless, the Proposed Policy would combine all tracts into a single Parcel.

A requirement that each tract/lot be identified as a "unit" on an Assessment Breakdown places an arbitrary constraint on the definition of Parcel. There can be no dispute that a non-subdivision tract/lot, located within the Wetlands Compensation Zone would be considered an Eligible Parcel if it were the only tract/lot listed on the assessment notice. Why then, should it not be considered a discrete Parcel if it is joined on the assessment notice by another such tract?

Much of the land within the Wetlands Real Property Compensation Zone is not subdivided because it is marshland. The percentage of Cameron Parish landowners who receive assessment notices which list multiple tracts/lots is about 90%. The Proposed Policy would be unfair to those landowners who own tracts of land which has not been subdivided.

# Exhibit A

STATE OF LOUISIANA    :
                           : ss.

PARISH OF CAMERON    :

## AFFIDAVIT OF MONA B. KELLEY, CLA

BEFORE ME, Notary Public, in and for the Parish of Cameron, State of Louisiana, appeared the Honorable Mona B. Kelley, CLA, who after first having been sworn, did depose and state that:

1) My name is Mona B. Kelley, Certified Louisiana Assessor, and I am of the age of majority and have personal knowledge of the facts stated herein, and am competent to testify accordingly.

2) I am the elected Cameron Parish Assessor.

3) The Office of the Cameron Parish Assessor is the authority in Cameron Parish responsible for the assessment of immovable and movable property for tax purposes and the issuance of Real Estate Assessments.

4) The Real Estate Assessments issued by the Office of the Cameron Parish Assessor often list and assess multiple tracts, lots, or parcels of land on a single Notice.

5) Cameron Parish Real Estate Assessments which list multiple tracts, lots, or parcels of land and provide legal descriptions of the separate tracts, lots, or parcels, do not indicate a separate tax assessment value for each tract, lot, and/or parcel.

6) The Real Estate Assessments provide an "Assessment Breakdown" which divides the ownership interests into "classes" of land such as "AG. LAND CLASS IIIW", "SALT WTR. MARSH", or "RESIDENTIAL SUBD. LOT" and indicate a quantity of "Units" and a tax assessment for each class owned. Land is classified under a system set forth in

the Soil Survey of Cameron Parish, issued in April of 1995 by the U.S. Department of Agriculture, and as set by the Louisiana Tax Commission.

7) The number of Units as per the Assessment Breakdown may correspond to the number of tracts, lots, parcels, or acres owned, depending on the classes of land assessed within the Real Estate Assessment.

8) On the face of the Real Estate Assessment, there is no way to correlate a tax assessment value set forth in the Assessment Breakdown with an individual tract, lot, or parcel described in the Legal Description. Multiple tracts, lots, or parcels may be included within a single land class without an indication that such is the case. Furthermore, areas of a single lot, tract, or parcel may fall into more than one land class and be valued for assessment accordingly.

9) It is only when a tract, lot, or parcel listed in the Real Estate Assessment is located in a residential subdivision that each tract, lot, or parcel will be considered a discrete "Unit" in the Assessment Breakdown, regardless of the acreage of the particular tract, lot, or parcel. Residential subdivision tracts, lots, or parcels of similar size are aggregated and assessed together in the Assessment Breakdown; e.g., all tracts, lots, or parcels within a residential subdivision containing one acre are listed in one line on the Assessment Breakdown, those with one-half an acre are on a separate line, etc.

10) Tracts, lots, and parcels of land in Cameron Parish which are located adjacent and/or near to the Gulf of Mexico are often not located within residential subdivisions; rather, they are marshlands which have not been subdivided. When not part of a residential subdivision, for purposes of the Assessment Breakdown, the "Unit" descriptor refers to

Page 2 of 4

the number of acres in each land class, not the number of tracts, lots, or parcels in each land class.

11) Cameron Parish is divided into six Wards. In most cases, separate tracts, lots or parcels are assessed together on the same Real Estate Assessment when they are located within the same Parish Ward. Exceptions include circumstances where different tracts, lots, or parcels within the same Ward are acquired by a person at different times or under differently spelled names. In these cases, the tracts, lots, or parcels may be assessed separately in different Real Estate Assessments.

12) The legal descriptions of the tracts, lots, or parcels of land set forth in the Real Estate Assessments, though not separately valued, are used for taxing purposes.

13) The purposes behind the policy of listing multiple tracts, lots, or parcels of land on a single Real Estate Assessment arise from administrative efficiency and what I understand to be the preferences of Cameron Parish landowners who do not wish to receive multiple Real Estate Assessments when they own multiple tracts, lots, or parcels.

14) According to the best estimate of the Office of the Cameron Parish Assessor, the percentage of Cameron Parish land owners who receive Real Estate Assessments which list multiple tracts, lots, or parcels is 90%, more or less.

Further, Affiant sayeth naught.

Page 3 of 4

SUBSCRIBED AND SWORN to before me, Notary Public, at Cameron Parish, Louisiana, this _____ 1st _____ day of _____ July _____, 2013.


_Mona B. Kelley_
Mona B. Kelley, CLA

_LeAnn Stewart_
Notary Public

My Commission Expires: 6-30-16

Seal:

Page 4 of 4

TO:             **Patrick Juneau, Claims Administrator**

**FROM**        **BP**

**DATE**        **August 20, 2013**

**SUBJECT:**    **Panel Hearing Addressing Two Proposed Policies Relating to the**
                **Framework for Wetland Real Property Claims:**
                **(i) Policy 442 re Tax Adjudication Policy and**
                **(ii) Policy 443 re Lots/Tracts in a Single Parcel**

The Claims Administrator's office issued proposed Policies 442 and 443 both relating to the Compensation Framework for Wetlands Real Property Claims.   Both policies are contrary to the plain language of the Settlement Agreement and, therefore, BP has respectfully requested a panel hearing to address Policies 442 and 443.  This letter provides additional context for the panel hearing.

Policy 442 proposes to disregard tax adjudications in determining whether a claimant owns a wetlands parcel despite the fact that Louisiana law is clear that a tax adjudication vests the State of Louisiana with ownership rights in the parcel until the parcel is redeemed or the tax adjudication cancelled.  (La. Const. Art. 7, Section 25; La. R.S. 47:2246; La. R.S. 47:2133). Thus, the CSSP is proposing in Policy 442 to compensate claimants who do not own wetlands parcels, rather those parcels are owned by the State of Louisiana.  Such a policy is in clear violation of the Settlement Agreement which requires proof of parcel ownership and compensation only to wetlands parcel owners.

Policy 443 proposes to treat lots/tracts within a wetlands parcel as their own individual "parcels" under the Compensation Framework for Wetlands Real Property Claims despite the fact that the Settlement Agreement clearly defines a parcel as "a specific tract of real property *defined by a legal description of boundaries used for taxing purposes*," which are provided in the parcel's tax assessment.  (Settlement Agreement, Ex. 11, § 1. C. i., emphasis added)  Policy 443 is contrary to the intent of the parties and likely will be impossible to administer because the data regarding individual lots/tracts within a parcel is not within the Claims Administrator's Database and may not exist.  Moreover, implementing Policy 443 would impermissibly subject BP to double-payment, triple-payment, or overpayments in even greater multiples thereof.

As described below, BP is aware that Christine Reitano, had significant involvement with regard to both policies.  Given that both policies directly contradict the express language of the Settlement Agreement, and will result in improper windfall payments to wetlands claimants, BP

requests the Claims Administrator reconsider both policies and revise them to conform to the terms of the Settlement Agreement.

    **1.   Policy 442 Contradicts the Settlement Agreement by Disregarding Tax Adjudications in Determining Whether a Claimant Is Owner of a Wetlands Parcel.**

        Proposed Policy 442 for evaluating the ownership of wetlands parcels that have been adjudicated to the State of Louisiana for unpaid taxes directly contradicts the plain language of the Settlement Agreement.

        Under the Settlement Agreement, only the owner of an Eligible Parcel is eligible to receive compensation under the Compensation Framework for Wetlands Real Property Claims. (Settlement Agreement, Ex. 12, § 1. A.)  The Settlement Agreement requires the Claims Administrator to "determine whether an Eligible Claimant(s) is the owner of an Eligible Parcel." (Id., § 1. A. i.)  The Claims Administrator does not have the authority to ignore information bearing on whether a claimant is the owner of a parcel, nor to compensate a person or entity that is not the owner of a parcel.  (Id.)

        Originally, the Claims Administrator issued Policy 442, which addressed how the Claims Administrator would evaluate competing chains of title for Wetlands Real Property claims -- i.e., where two parties have competing ownership claims in a parcel.  In particular, original Policy 442 addressed how the Claims Administrator would evaluate whether a claimant was the owner of a parcel that had been adjudicated to the State of Louisiana for unpaid taxes.  Where a parcel is adjudicated to the State of Louisiana for unpaid taxes, the State of Louisiana is vested with ownership rights in the parcel unless and until the prior owner pays the unpaid taxes or the tax adjudication is cancelled.  (La. Const. Art. 7, Section 25). Policy 442 as originally issued provided that the Claims Administrator would simply "***disregard the tax adjudications*** in the process of determining ownership" of a parcel.  (Policy 442 issued on June 12, 2013, § II. D, emphasis added.)

        This originally issued policy was contrary to the Claims Administrator's duty under the Settlement Agreement to "determine whether an Eligible Claimant(s) is the owner of an Eligible Parcel."  (Id., § 1. A. i.)  The Claims Administrator does not have the authority to ignore this highly relevant evidence regarding the ownership of an Eligible Parcel, including information regarding tax adjudications.  In fact, it is particularly erroneous to ignore tax adjudications because Louisiana law is clear that a tax adjudication vests the State of Louisiana with ownership rights in the parcel. (La. Const. Art. 7, Section 25).  Accordingly, a claimant is not the owner of a tax adjudicated parcel, and thus cannot be an Eligible Claimant under the Settlement Agreement because the State owns the parcel until the parcel is redeemed or the tax adjudication cancelled.  (Id.; La. R.S. 47:2246; La. R.S. 47:2133)  Moreover, ignoring a tax adjudication creates the likelihood of double payment for BP because both the claimant and the State of Louisiana have competing ownership claims that must be addressed through administrative or judicial remedies.  The State of Louisiana has a lawsuit pending against BP.

In response to the June 12 issuance of Policy 442, BP proposed to modify Policy 442 so that the Claims Administrator would determine ownership of a parcel that has been adjudicated to the State of Louisiana through a tax sale consistent with how he determines ownership of any other parcel - namely, by considering all relevant information related to ownership, including a tax adjudication.

On July 11, the Claims Administrator issued a revised Policy 442.  While revised Policy 442 includes some revised language regarding tax adjudicated parcels, the effect of the policy is still to disregard tax adjudications in the process of determining ownership.  (Policy 442 issued on July 11, 2013, § II. D.)  This time, rather than explicitly stating that the Claims Administrator will disregard tax adjudications, revised Policy 442 provides that a claimant will be considered the owner of a parcel and will eligible for compensation if the claimant is "(1) still the record owner and has not redeemed the property; and (2) if the State has not sold the property to a third party, or proceeded to confirm its own title."  (Id.)

The language of revised Policy 442 is, however, tantamount to disregarding a tax adjudication which vests ownership of the parcel with the State of Louisiana.  Where a claimant has not redeemed a parcel and the State has not sold it to a third party, the State maintains its ownership interest in the parcel such that the claimant cannot be considered the owner of the parcel under the Settlement Agreement. That is because a tax adjudication vests the State with ownership rights in the parcel until the parcel is redeemed or the tax sale is cancelled.  (La. Const. Art. 7, Section 25; La. R.S. 47:2246; La. R.S. 47:2133).  Accordingly, revised Policy 442 remains in direct conflict with the plain language of the Settlement Agreement which requires the Claims Administrator to determine whether a claimant is the owner of a parcel and does not authorize the claims Administrator simply disregard ownership information like tax adjudications.

Moreover, revised Policy 442 provides that the Claims Administrator will review the status of a parcel's title "as of the time of the spill," which is in direct conflict with the Settlement Agreement.  The Settlement Agreement is clear that the Claims Administrator must determine whether a claimant is the owner of a parcel "*during the time period April 20, 2010 to [the date of the Settlement Agreement]*."  (Settlement Agreement, § 1. A. i., emphasis added) Accordingly, the Claims Administrator may not merely determine whether a claimant owned the parcel "as of the time of the spill," but instead must determine whether the claimant in fact owned the parcel during the entire period from April 20, 2010 to the date of the Settlement Agreement, which is April 18, 2012.

Finally, BP is deeply concerned about the circumstances surrounding revised Policy 442 because Christine Reitano had significant involvement in its development.  On January 29, 2013, Ms. Reitano met with the Claims Administrator, the Claims Administrator's title expert Peter Title, and BP's title expert Peggy Adams to discuss the ownership of a tax adjudicated parcels. Following the meeting, Ms. Reitano e-mailed Ms. Adams requesting BP's position on the matter. Ms. Reitano e-mailed Ms. Adams on numerous occasions in February and March 2013 following up on BP's position.  On March 20, 2013, Ms. Adams e-mailed Ms. Reitano a letter explaining

that a tax adjudication vests the State of Louisiana with ownership rights in the parcel until the parcel is redeemed or the tax adjudication cancelled.  Ms. Reitano attended a follow-up meeting on March 28, 2013 to discuss how to evaluate the ownership of tax adjudicated parcels for which Lake Eugenie submitted wetlands claims.  The meeting was also attended by the Claims Administrator, Mr. Title, BP, Class Counsel, and counsel for Lake Eugenie, Berwick Duvall.  Following the meeting, Ms. Reitano sent an e-mail to BP and Class Counsel requesting further input on the ownership of tax adjudicated parcels.  BP submitted its response to Ms. Reitano's request on Policy Keeper on April 4, 2013.  While BP is aware of the foregoing examples of Ms. Reitano's involvement in the development of this policy, it is unclear to what extent she had additional involvement or communications that were not shared with BP.

**2.  Policy 443 Contradicts the Settlement Agreement By Improperly Treating Lots/Tracts Within a Wetlands Parcel as Their Own Individual "Parcels"**

On July 12, 2013, the Claims Administrator issued a revision to Policy 443.  This revision improperly proposes to treat lots/tracts within a wetlands parcel as their own individual "parcels" under the Compensation Framework for Wetlands Real Property Claims.  With this revision, Revised Policy 443 has been re-drafted to adopt Class Counsel's initial proposed modification, and now departs significantly from the content of Policy 443 as originally issued. Revised Policy 443 directly contradicts the plain language of the Settlement Agreement, the intent of the parties, and is impossible to administer.  Attempting to implement Revised Policy 443 would significantly delay the processing of wetlands claims because the data required is not within the Claims Administrator's Database, nor is there any certainty that such data even exits. Indeed, the fact that this data is not contained within the Claims Administrator's database, reflects that it was not the parties' intent that lots/tracts within a wetlands parcel be deemed their own individual parcels.

Under the Settlement Agreement, only an "Eligible Parcel" is entitled to receive Wetlands Real Property Compensation.  (Ex. 12, § 1. A.)  The term "parcel" is explicitly defined in the Settlement Agreement as "a specific tract of real property ***defined by a legal description of boundaries used for taxing purposes***."  (Ex. 11, § 1. C. i., emphasis added) The "boundaries used for taxing purposes" are the boundaries used by the parish tax assessor and which are provided in a parcel's tax assessment.  Thus, a parcel is the area of land defined by the boundaries provided in the parcel's tax assessment.

Consistent with the definition of the term "parcel" in the Settlement Agreement, the Claims Administrator's Database was created to aid in administering the Compensation Framework for Wetlands Real Property Claims by BP's mapping expert, and accepted by Class Counsel, using parcels' tax assessment boundaries.  Pursuant to the Settlement Agreement, the Claims Administrator's Database contains "the best available information on parcel boundaries for all real property within the Wetlands real Property Claim Zone."  (Ex. 12, § 1. D. iii.)  Under the Settlement Agreement, the Claims Administrator has the duty to "apply the appropriate

Compensation Category for each Eligible Parcel based upon the information in the Administrator's Database."  (Id.)

In its original form, proposed Policy 443 provided that individual lots/tracts within a tax assessment wetlands parcel would not be eligible for compensation unless the following three criteria were met: "(1) the parish separately assigns a tax assessment value to the tract or lot; (2) there is a distinct legal description for the tract or lot within the tax assessment record(s) prepared by the parish; and (3) the tract or lot is located within the Wetlands Real Property Claim Zone."  (Policy 443, issued on June 12, 2013, § II.)

After the Claims Administrator issued proposed Policy 443 in its original format, both Class Counsel and BP provided comments.  Class Counsel proposed a modification to remove the first of the three criteria from Policy 443 such that an individual lot/tract within a wetlands parcel would be compensable under the Settlement Agreement even if the parish did not separately assign a value to the lot/tract.  BP deferred to the Claims Administrator on Policy 443 as written but requested that the policy be reissued if the Claims Administrator accepted Class Counsel's modification explaining that any such modification would put Policy 443 in direct conflict with the definition of "parcel" in the Settlement Agreement.

Ignoring BP's comment, and in direct contravention of the plain language of the Settlement Agreement, the Claims Administrator has issued a Revised Policy 443 that adopts Class Counsel's proposed modification.  Revised Policy 443 removes the criterion that the parish separately assign a tax assessment value to the tract/lot.

Revised Policy 443 proposes that each individual tract/lot within a single tax assessment wetlands parcel will be eligible for compensation if: (1) each tact or lot is separately identified or included as a taxable "unit" on the tax assessment and is included in the total taxable value; (2) there is a distinct legal description for the tract or lot within the tax assessment; and (3) the tract/lot is located within the Wetlands Real Property Claim Zone.  (Policy 443, issued on July 12, 2013, § II.)

The effect of Revised Policy 443 is that individual tracts/lots within a wetlands parcel would be considered their own individual "parcels" under the Settlement Agreement.  This is in direct conflict with the plain language of the Settlement Agreement and would rewrite the terms of the Settlement Agreement agreed to by the Parties.  The Settlement Agreement could not be clearer that a parcel means "a specific tract of real property defined by a legal description of boundaries used for taxing purposes," which are provided in a parcel's tax assessment.  (Ex. 11, § 1. C. i.)  Consistent with that definition, the Settlement Agreement requires a claimant to submit the tax assessment notice for the claimant's parcel.  (Ex. 12, Appendix F, § 1. b.)  The Settlement Agreement does not require any documents regarding individual lots/tracts because it was not contemplated that individual lots/tracts would be eligible for payment.

The negotiating history and intent of the Settlement Agreement additionally confirms that a parcel is defined by the boundaries of its tax assessment.  BP and Class Counsel spent countless hours reviewing a map of the Wetlands Real Property Claim Zone ("Wetlands Zone")

which included, where available, parcel boundaries provided in the parcel's tax assessment.  BP and Class Counsel reviewed the map parcel-by-parcel to ensure that the Zone was acceptable to the parties.  At no time did the parties discuss or agree to compensate individual lots/tracts within a wetlands parcel.

Moreover, the Administrator's Database contains the parcel boundaries for the Eligible Parcels within the Wetlands Zone based upon the parcel boundaries provided in the parcel's tax assessment.  The Administrator's Database does not contain any information regarding individual lots/tracts within each wetlands parcel.  Class Counsel reviewed the Administrator's Database during negotiations and the implementation of the Settlement Agreement and never once objected on the basis that it did not contain information regarding lots/tracts.  Had the parties really agreed to separately compensate lots/tracts within a parcel, it would defy logic for the Class Counsel not to object to the fact that the Administrator's Database contained no information regarding lots/tracts.  But, Class Counsel did not object, and that is because the parties agreed that a parcel's boundaries were those provided by the tax assessment.

Revised Policy 443 impermissibly re-writes the definition of parcel in the Settlement Agreement.  The Settlement Agreement is clear that only an "Eligible Parcel" may receive wetlands compensation. (Ex. 12, § 1. A.)  Policy 443 ignores that and re-writes the Settlement Agreement to make "each individual tract or lot [] eligible to receive compensation under the Wetlands Compensation Framework" if three criteria - *found nowhere in the Settlement Agreement* - are fulfilled.  The Claims Administrator may not rewrite the terms of the Settlement Agreement.

Revised Policy 443 is drafted with an assumption by the Claims Administrator that the only reason that multiple lots are included in a tax assessment is for administrative efficiency and thus it would be unfair not to separately compensate individual lots within a parcel.  Putting aside the fact that this should be totally irrelevant as the Settlement Agreement is perfectly clear that only parcels can receive compensation, such an assumption is not correct.  Lots are simply a way to identify smaller portions of a parcel and thus multiple lots may be included in a tax assessment because that is how the parcel as a whole can be described.

In fact, certain regulations prevent building a home on only one lot because lots are simply smaller potions of land within a parcel.  Revised Policy 443 provides the tax assessment breakdown excerpted below as purported support for the Claims Administrator's assumption that multiple lots are grouped into one tax assessment as a matter of administrative convenience:

| Status: ACTIVE 500016201 | | **Assessment Breakdown** | | | | |
|---|---|---|---|---|---|---|
| **CLASS** | **LAND DESCRIPTION** | **FACTOR** | **QUANTITY** | **ADJ. MARKET VALUE** | **ASSESSMENT** | **EXEMPTION** |
| 3400 | RESIDENTIAL SUBD. LOT | AV01 | 4.00 Units' | $10,000.00 | 1,000 | NONE |

Legal Description:*(See listing report for full legal description if required.)*
LOTS 9, 10, 53 & 54 BLK 1 UNIT 6  HOLLY BEACH SUB IN SECS 10-12 T15S R11W (#286786 987-228 FROM WILMA BRIDE ET AL) (#303968
T/SALE TO RAINBOW RIGHTEOUS) (#308487 REDEMPTION)
(#312142 SPEC WARR DEED FROM MARY L JAX)(#314782 FROM R JAX)

This tax assessment breakdown corresponds to a parcel in Holly Beach in Cameron Parish. Property owners in Holly Beach are prohibited from building a home with a septic tank unless their parcel is comprised of at least four lots. (Louisiana Administrative Code, Title 51, Part XIII, §511(B)). Accordingly, the four lots in this tax assessment are not grouped together for administrative convenience, but instead are merely a way to describe the smaller portions within this one parcel. In other words, the four "lots" are not themselves separate parcels, but rather four components of one parcel whose location and boundaries can only be described by referring to the four lots which constitute it.

Moreover, implementing Policy 443 may be impossible, and at best, will cause a 6 - 8 month delay in processing wetlands claims. The data required to make a determination pursuant to Policy 443 is not included in the Administrator's Database, nor is it clear such data exists. One of the reasons that the Settlement Agreement defines a parcel by its tax assessment boundaries is that those boundaries are objective, well known, and easy to administer. In contrast, the exact boundaries of lots/tracts within a parcel may be impossible to map in many cases because assessor plat maps or other sources of lot/tract information will be out of date, incomplete, or otherwise insufficient to complete the required mapping with the level of precision required to compensate a claimant. Even if individual lots/tracts within a parcel were able to be mapped, implementing Policy 443 would require a complete re-working of the Administrator's Database because it does not contain any information about individual lots/tracts within a parcel. The process to re-create the Administrator's Database would take 6 - 8 months, during which time wetlands claims could not be processed.

Implementing Policy 443 would impermissibly subject BP to double-payment, triple-payment, or overpayments in even greater multiples thereof. In the Holly Beach examplar tax assessment above, the claimant who owns this one eligible parcel in Cameron Parish (which was never oiled) that happens to contain four lots, would be entitled to one minimum payment of $15,750 under the plain language Settlement Agreement. (Ex. 12 § 2. C. ix. b.) If Policy 443 is implemented, however, that same claimant would receive $63,000 for his single parcel ($15,750 x 4), subjecting BP to an overpayment four times in excess of what was bargained for in the Settlement Agreement.

On July 17, 2013, Class Counsel proposed yet another modification to Policy 443 contending, incredibly, that revised Policy 443 do "does not go quite far enough" because potentially not all lots/tracts within a parcel would be separately compensated under Policy 443 if "units" are used to identify individual lots/tracts. Class Counsel thus proposes that the Claims Administrator remove the first of the three criteria in Revised Policy 443. Class Counsel's modification, like Revised Policy 443 itself, is outrageous because, for the reasons articulated above, separately compensating *any* lots/tracts within a wetlands parcel is contrary to the plain language of the Settlement Agreement, the negotiating history, and the intent of the parties. The affidavit of Mona Kelly discussing the meaning of a "unit" within a parcel's tax assessment is totally irrelevant because no lots/tracts within a parcel can be separately compensated under the Settlement Agreement regardless of whether or not they are described as a unit. Indeed, the fact that there is such confusion on Class Counsel's part with regard to how they proposed for the

Claims Administrator to identify lots/tracts within a wetlands parcel only further emphasizes that the parties did not discuss or intend lots/tracts to be separately compensated.  Moreover, Ms. Kelly's statement that lots/tracts are "used for taxing purposes" is similarly immaterial because it does not matter if lots/tracts are merely used in some vague way for taxing purposes.  Instead, the Settlement Agreement is clear that a parcel is defined by the "*boundaries* used for taxing purposes," which are clearly provided in a parcel's tax assessment, and contained in the Administrator's Database which Class Counsel reviewed and approved.  (Settlement Agreement, Ex. 11, § 1. C. i., emphasis added)

    Revised Policy 443 and Class Counsel's recent modification seek to transform the method for compensating wetlands parcels such that it would bear little resemblence to the plain language of the Compensation Framework for Wetlands Real Property Claims.  The Claims Administrator is bound by the Settlement Agreement and may not re-write it as Revised Policy 443, or Class Counsel's modification, proposes.

     BP is also deeply concerned because Christine Reitano also had significant involvement in the development of Policy 443.  On February 15, 2013, Ms. Reitano e-mailed Class Counsel requesting an agenda for an upcoming meeting where various wetlands issues, including the definition of a parcel, would be discussed.  Class Counsel submitted the agenda to Ms. Reitano on February 18, 2013.  Ms. Reitano met with the parties and the Claims Administrator where the definition of a parcel was debated.  Class Counsel and BP told Ms. Reitano and the Claims Administrator that the parties would continue to discuss the issue.  Ms. Reitano exchanged numerous e-mails with Class Counsel and BP during April 2013 regarding the status of the parties' discussions regarding the issue.  On May 10, 2013, Class Counsel sent an e-mail to Ms. Reitano laying out its position on the issue.   BP also submitted its position in an e-mail to Ms. Reitano on May 16, 2013.  While BP is aware of the foregoing examples of Ms. Reitano's involvement in the development of this policy, it is unclear to what extent she had additional involvement or communications that were not shared with BP.

                                        * * *

    Based on the above, BP has requested a panel hearing to address Policies 442 and 443 because they are both in direct conflict with the plain language of the Settlement Agreement.

**From:** Orran Brown
**Sent:** Wednesday, September 11, 2013 11:56 AM
**To:** Steve Herman (SHERMAN@hhklawfirm.com); James P. Roy (jimr@wrightroy.com); 'Moskowitz, Keith' (keith.moskowitz@dentons.com); Mark D. Staley (mstaley@pncpa.com); Rice, Joe (jrice@motleyrice.com)
**Cc:** pjuneau@dheclaims.com; mjuneau@dheclaims.com; Matthew Hazzard; David Smith
**Subject:** RE: Final Policies After 8/21/13 Panel Session

I would like to clarify the request below.  Mr. Juneau asks that if any Party objects to a policy and intends to seek review of such policy by the Court pursuant to Section 4.3.4 of the Settlement Agreement, that you notify him of that position on or before Monday, 9/16/13.  Thank you.

Orran

---

**From:** Orran Brown
**Sent:** Friday, September 06, 2013 4:29 PM
**To:** Steve Herman (SHERMAN@hhklawfirm.com); James P. Roy (jimr@wrightroy.com); 'Moskowitz, Keith' (keith.moskowitz@dentons.com); Mark D. Staley (mstaley@pncpa.com); Rice, Joe (jrice@motleyrice.com)
**Cc:** pjuneau@dheclaims.com; mjuneau@dheclaims.com; Matthew Hazzard; David Smith
**Subject:** Final Policies After 8/21/13 Panel Session

Mr. Juneau asked that I send you the attached PDF, which contains the final policies adopted by the Claims Administrator on five items reviewed in the 8/21/13 Panel session.  To assist your review of these policies, on any policy that changed as a result of the meeting, the PDF contains a clean version of the adopted policy, followed by a tracked changes version to show you what changed after the Panel meeting.

Mr. Juneau asks that if any Party objects to a policy and intends to refer such policy to the Court for resolution pursuant to Section 4.3.4 of the Settlement Agreement, that you do so on or before Monday, 9/16/13.  Thank you.

Orran

**Orran L. Brown**
**BROWNGREER PLC**
250 Rocketts Way
Richmond, Virginia 23231
Telephone: (804) 521-7201
Facsimile: (804) 521-7299
www.browngreer.com

*This electronic mail is intended to be received and read only by certain individuals. It may contain information that is privileged or protected from disclosure by law. If it has been misdirected, or if you suspect you received this in error, please notify me by replying and then delete this message and your reply. These restrictions apply to any attachment to this email.*

**Email to Parties for Positions after Panel Hearing**

1. **BP**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  9/16/13
   c. Comment:

   BP requests that policy 443 be designated as defers to the Claims Administrator.  This response does not in any way waive any of BP's objections previously submitted relating to these policies.  BP maintains its position that Policy 443 is in error because it proposes to treat lots/tracts within a wetlands parcel as their own individual "parcels" under the Compensation Framework for Wetlands Real Property Claims despite the fact that the Settlement Agreement clearly defines a parcel as "a specific tract of real property defined by a legal description of boundaries used for taxing purposes," which are provided in the parcel's tax assessment.  (Settlement Agreement, Ex. 11, § 1. C. i., emphasis added)  Policy 443 is contrary to the intent of the parties and impermissibly subjects BP to double-payment, triple-payment, or overpayments in even greater multiples thereof. BP's classification of these policies as a deferral to the Claims Administrator is based on the Settlement Program's current practices and procedures, and BP reserves the full right to comment upon, object to or take other action arising from the implementation of these policies by the Claims Administrator. BP incorporates herein its June 19, 2013 and July 14, 2013 responses and comments relating to this proposed policy; and BP's August 20, 2013 Memorandum submitted in advance of the August 21, 2013 Panel Hearing.

2. **Class Counsel**
   a. Decision:  Defer to Claims Administrator Decision
   b. Date:  9/16/13
   c. Comment:

   To avoid any confusion or doubt, Class Counsel also defer at this point to each and all of these final Policies.  Thanks.

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-443 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

| I. Profile  - EXTERNAL | | |
|---|---|---|
| **Subject** | Compensating Individual Parcels Aggregated Under a Single Tax Assessment ID | |
| **Active Date** | 9/18/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibit 12A |
| **Affected Claim Types and/or Review Processes** | | Wetlands |

| II. Summary |
|---|
| Please see attached Final Policy Memo. |

**FINAL POLICY ANNOUNCEMENT**

**POLICY 443: WETLANDS REAL PROPERTY CLAIMS:  COMPENSATING INDIVIDUAL PARCELS AGGREGATED UNDER A SINGLE TAX ASSESSMENT ID**

## I.  Introduction.

The Wetlands Claims Administrator's Database ("Wetlands Database") identifies all Eligible Parcels located in the Wetlands Real Property Claim Zone that may be compensated under the terms of the Settlement Agreement.  A mapping vendor selected by BP created the Wetlands Database and provided it to the Claims Administrator under the terms of the Settlement Agreement and with the consent of Class Counsel.  It constructed the Wetlands Database based on available parish tax assessment records so that: (1) each Eligible Parcel corresponds to the Tax Assessment ID assigned to it by the parish where the property is located; and (2) the Compensation Amount for each Eligible Parcel is tied to the Tax Assessment ID.  Under the Wetlands Compensation Framework in Exhibit 12A to the Settlement Agreement, the Claims Administrator is required to use this Wetlands Database to determine whether a Parcel is eligible for payment in the Wetlands program and, if so, the amount of the payment.

Most parishes in the Wetlands Real Property Claim Zone assign separate Tax Assessment IDs to individual lots or tracts of land.  If a claimant owns multiple lots or tracts and the parish assigns a separate Tax Assessment ID to each lot or tract, then the claimant is assigned separate Compensation Amounts for each Eligible Parcel in the Wetlands Database.  However, a parish may, solely for reasons of administrative efficiency, combine all of an owner's pieces of real property on one Tax Assessment ID, rather than issuing separate Tax Assessment IDs for each piece of land.  When lots or tracts are grouped together under one Tax Assessment ID, the Wetlands Database identifies them as one Parcel, which means they are assigned a Compensation Amount for only one Parcel in the Wetlands Database, regardless of the number of lots or tracts included under that Tax Assessment ID.  This causes these claimants to get payment for one Parcel, whereas if the parish had placed each piece of property on its own Tax Assessment ID, under Exhibit 12A the claimant would get a Wetlands payment for each one in the Wetlands Database.  Adhering to the structure of the Wetlands Database in those situations causes such claimants to receive less compensation than if their parish placed each of the lots or tracts on separate Tax Assessment IDs.

Section 1.C. of Exhibit 12A to the Settlement Agreement provides that "Eligible Parcels shall be defined as parcels located within the Wetlands Real Property Claim Zone."  Exhibit 12A does not specifically define the term "parcel." However, Section 1.C.i. of the Coastal Compensation Framework (Exhibit 11A) defines "parcel" as "a specific tract of real property defined by a legal description of boundaries used for taxing purposes."  The Wetlands Instruction Booklet on how to fill out the Wetlands Claim Form, which both BP and Class Counsel approved, defines a parcel as "[a] plot of land that can be sold or purchased."  Webster's New World Dictionary, Second College Edition, defines a parcel as "a piece, as of land, usually a specific part of a large acreage or estate."

1

The Claims Administrator has determined that separate pieces of land owned by a claimant that are grouped together under one Tax Assessment ID shall be compensated as separate Parcels under the Wetlands framework, because:

(1) Each Parcel is (1) separately identified on the tax assessment and is included in the total taxable value, and (2) has its own "legal description of boundaries used for taxing purposes," which fits the definition of Parcel in the Coastal Framework written by the Parties.

Below is an example from Cameron Parish where there are four lots listed under one Tax Assessment ID. Currently, in the Claims Administrator's Database, all four lots are treated as one Eligible Parcel and the claimant will receive one minimum compensation amount for $15,750. Under this proposed policy, assuming all four lots are located in the Wetlands Claim Zone, the Claims Administrator's Database would compensate each individual lot at $15,750, and the claimant would receive a total of $63,000.

Status: **ACTIVE 500016201**     **Assessment Breakdown**

| CLASS | LAND DESCRIPTION | FACTOR | QUANTITY | ADJ. MARKET VALUE | ASSESSMENT | EXEMPTION |
|---|---|---|---|---|---|---|
| 3400 | RESIDENTIAL SUBD. LOT | AV01 | 4.00 Units | $10,000.00 | 1,000 | NONE |

Legal Description:(See listing report for full legal description if required.)
LOTS 9, 10, 53 & 54 BLK 1 UNIT 6  HOLLY BEACH SUB IN SECS 10-12 T15S R11W (#286786 987-228 FROM WILMA BRIDE ET AL) (#303956 T/SALE TO RAINBOW RIGHTEOUS) (#306487 REDEMPTION)
(#312142 SPEC WARR DEED FROM MARY L JAX)(#314782 FROM R JAX)

(2) Each lot is "a plot of land that can be sold or purchased" and thus fits the definition of Parcel in the Wetlands Instruction Booklet approved by the Parties.

(3) Each lot is "a piece" or "a specific part of a large acreage or estate" and thus fits Webster's definition of "parcel."

(4) The Wetlands framework in Exhibit 12A does not mandate that the form of a Tax Assessment ID control over the substance of paying compensation amounts that are measured by size of a lot and how much of it was oiled. There is no explicit requirement in the Settlement Agreement or Exhibit 12A that an Eligible Parcel must correspond to one Tax Assessment ID or that the Wetlands Database be set up on that premise.

(5) Section 4.3.7 of the Settlement Agreement provides that "The Settlement Program…shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement." The parishes that combine parcels under one Tax Assessment ID create disparate treatment toward Class Members. By compensating each Parcel separately, the Claims Administrator will provide payments to the Economic Class Members that they are entitled to receive.

2

II.    **Policy Statement.**

      If the Claims Administrator determines that a particular parish consolidates multiple real property tracts or lots owned by a claimant into a single Tax Assessment ID, then each individual tract or lot is eligible to receive compensation under the Wetlands Compensation Framework if: (1) each tract or lot is separately identified on the tax assessment and is included in the total taxable value; (2) there is a distinct legal description for the tract or lot within the tax assessment record(s) prepared by the parish; and (3) the tract or lot is located within the Wetlands Real Property Claim Zone.  In these situations, the Claims Administrator will update the Claims Administrator's Database to include separate Compensation Amounts for each lot or tract, rather than an aggregate Compensation Amount for all lots or tracts combined under one Tax Assessment ID.