# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

March 09, 2016

Ms. Mary Olive Pierson
8702 Jefferson Highway
Suite B
Baton Rouge, LA 70809-0000

>    No. 16-30208    In re: Christine Reitano
>                    USDC No. 2:10-MD-2179
>                    USDC No. 2:13-CV-6360
>                    USDC No. 2:13-CV-6362
>                    USDC No. 2:15-CV-567

Dear Ms. Pierson,

We have docketed the petition for writ of mandamus, and ask you to use the case number above in future inquiries.

Filings in this court are governed strictly by the Federal Rules of **Appellate** Procedure. We cannot accept motions submitted under the Federal Rules of **Civil** Procedure. We can address only those documents the court directs you to file, or proper motions filed in support of the appeal. See FED R. APP. P. and 5TH CIR. R. 27 for guidance. We will not acknowledge or act upon documents not authorized by these rules.

**Attention Attorneys:** Attorneys are required to be a member of the Fifth Circuit Bar and to register for Electronic Case Filing. The "Application and Oath for Admission" form can be printed or downloaded from the Fifth Circuit's website, www.ca5.uscourts.gov. Information on Electronic Case Filing is available at www.ca5.uscourts.gov/cmecf/.

>                    Sincerely,
>
>                    LYLE W. CAYCE, Clerk
>
>                    *Dantrell Johnson*
>
>                    By: _____
>                    Dantrell L. Johnson, Deputy Clerk
>                    504-310-7689

cc:  Mr. Michael E. Baughman
     Mr. William W. Blevins
     Mr. Jeffrey Bossert Clark, Sr.
     Mr. Don Keller Haycraft
     Mr. Phillip A. Wittmann

CASE NO. _____

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## IN RE:   CHRISTINE REITANO

_____

PETITION FOR WRIT OF MANDAMUS OF CHRISTINE REITANO

_____

## ON PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES
## DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

(1) CASE NO. 2:13-CV-06360
AND
CASE NO. 2:13-CV-06362
Christine Reitano vs. BP Exploration & Production, Inc. and Patrick A. Juneau

(2) CASE NO. 2:15-CV-00567
Christine Reitano vs. Freeh Group International Solutions, LLC and Louis J. Freeh

*AUTOMATICALLY CONSOLIDATED INTO*

CASE NO. 2:10-MDL-02179-CJB-SS
In re: Oil Spill by the Oil Rig 'Deepwater Horizon' in the Gulf of Mexico,
on April 20, 2010

| *Counsel for Christine Reitano* | |
|---|---|
| Mary Olive Pierson (La Bar No 11004) | Patrick J. Fanning, (La. Bar No. 5441) |
| Attorney at Law | 238 Huey P. Long Ave. |
| P.O. Box 14647 (70898) | Gretna, LA 70053 |
| 8702 Jefferson Highway, Suite B | Phone: (504) 368-7888 |
| Baton Rouge, LA 70809 | Fax: (504) 368-7263 |
| Telephone: (225) 927-6765 | Email: pfanninglaw@aol.com |
| Facsimile: (225) 927-6775 | |
| Email: mop@mopslaw.com | |

# CERTIFICATE OF INTERESTED PERSONS
_____

CASE NO. _____

IN RE: CHRISTINE REITANO
_____

Pursuant to 5th Cir. R. 28.2.1, undersigned counsel for Petitioner hereby certifies that the following listed persons and entities have an interest in the outcome of this case.  These representations are made so that the judges of this court may evaluate possible disqualification or recusal in this appeal.

1.      Christine Reitano, Petitioner;

2.      Mary Olive Pierson and Patrick J. Fanning, counsel for Petitioner, Christine Reitano;

3.      Patrick A. Juneau and his counsel, Phillip A. Wittmann, John M. Landis, and Maggie A. Broussard (Stone Pigman Walther Wittmann, LLC) and David Israel and Kevin G. Barreca (Sessions, Fishman, Nathan & Israel, LLC);

4.      BP Exploration & Production, Inc. and counsel, Don K. Haycraft, Thomas J. McGoey, II, Shannon S. Holtzman, Devin C. Reid, and Tyler Trew (Liskow & Lewis) and Richard C. Godfrey, P.C. and J. Andrew Langan, P.C. (Kirkland & Ellis, LLP (Chicago, IL)) and Jeffrey Bossert Clark and Dominic E. Draye (Kirkland & Ellis, LLP (Washington, DC));

i

5.     The Freeh Group International Solutions, LLC and Louis J. Freeh and their counsel of record, Michael E. Baughman and Eli Segal (Pepper Hamilton, LLP);

6.     Honorable Carl Barbier, Judge presiding over MDL 2179 in the USDC, Eastern District of Louisiana;

7.     Honorable Lance Africk, Judge, USDC, Eastern District of Louisiana, Section I, transferor Judge in Case No. 2:15-cv-00567.

8.     Class Counsel Representatives, Stephen J. Herman and James P. Roy.[1]

_____/s/Mary Olive Pierson_____ `
MARY OLIVE PIERSON
*Counsel for Christine Reitano*

---

[1] In response to an inquiry sent to Mr. Herman and Mr. Roy in advance of Ms. Reitano's second motion to sever, they sent an email response stating that they "take no position on her request and leave it to the Court."

## NO REQUEST FOR ORAL ARGUMENT

Petitioner believes that (1) the original improper consolidation as well as the prolonged, continued illegal consolidation of her cases for two years with MDL 2179; (2) the repeated refusal of the court to even consider her requests for relief and severance; (3)the unconstitutional and continued denial of due process; (4) the denial of equal protection; and (5) the denial of relief by the Judicial Panel on Multi-District Litigation (JPML) due to "lack of jurisdiction" of her cases in the MDL, are so clearly established and so urgent that oral argument is not necessary to grant the requested writ.  If the court determines that argument would be helpful in deciding the matter, Petitioner will gladly participate.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...........................................................i

NO REQUEST FOR ORAL ARGUMENT ........................................................... iii

TABLE OF CONTENTS...........................................................................iv

TABLE OF AUTHORITIES ......................................................................vi

I.  RELIEF SOUGHT.................................................................................1

     A.    Substantive Relief -Writ of Mandamus.................................................1

     B.    Procedural Relief Sought-Expedited Consideration ............................6

II.  ISSUE PRESENTED ...........................................................................6

III. FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED ........7

     A.    Introduction and Summary of Argument .............................................7

     B.    Ms. Reitano's Two Suits: Unrelated to Basis for MDL 2179 .............10

          1.    Ms. Reitano's First Suit: BP and Pat Juneau - Defendants .......10

          2.    Ms. Reitano's Second Suit: Louis Freeh and Company, Defendants ................................................................................14

IV.  ARGUMENT .....................................................................................17

     A.    The District Court Abused its Discretion by Not Severing and Remanding Ms. Reitano's cases on Its Own Initiative........................17

     B.    The District Court's Improper Issuance and Continuation of a Stay.............................................................................................21

V.  LEGAL ANALYSIS ..........................................................................23

     A.    Pretrial Order No. 11 Bundles Inapplicable .......................................24

     B.    Centralization and Coordination Under 28 U.S.C. §1407: No benefit to Ms. Reitano's Cases......................................................25

     C.    Convenience and Efficiency Can Never be Purchased at the Cost of Fairness .......................................................................25

VI.  CONCLUSION AND PRAYER FOR RELIEF..............................................27

CERTIFICATE OF SERVICE ...........................................................................28

CERTIFICATE OF COMPLIANCE.....................................................................29

# TABLE OF AUTHORITIES

28 U.S.C. §1651 ........................................................................................................1

28 U.S.C. §1407 ..................................................................................................18, 25

Fed. R. App. P. 21 ...................................................................................................1

*Arnold v. Eastern Airlines, Inc.*, 712 F. 2d 899, 906 (C.A. 4th 1983)
    (en banc), cert. denied, 464 U.S. 1040, 104 S. Ct. 703 (1984) ...................26

*Clinton v. Jones*, 520 U.S. 681, 706 (1997)...........................................................21

*Colorado River Water Conservation Dist. v. United States*
    424 U.S. 800, 817 (1976) ..................................................................................21

*In re Activated Carbon-Based Hunting Clothing*, 2012 WL 72844, at *5..............18

*In re Brand-Name Prescription Drugs Antitrust Litig.*,
    170 F. Supp.2d 1350, 1352 (JPML 2001) ......................................................18

*In Re: Brooklyn Navy Yard Asbestos Litig*, 971 F. 2d 831, 853 (2d Cir. 1992) ......26

*In re Checking Account Overdraft Litig.*,
    818 F. Supp. 2d 1373, 1373 (J.P.M.L. 2011) ................................................25

*In re Dresser Indus., Inc.,* 972 F.2d 540, 543 (5th Cir. 1992)...................................5

*In re Light Cigarettes*, 2012 WL 6151510, at *3....................................................18

*In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000)................................................19

*In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993)....................26

*In re United States*, 397 F.3d 274, 282 (5th Cir. 2005) .............................................4

*Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285, (2d Cir.),
    cert. denied, 498 .S.920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990) ...............25

*Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ......................................21

*Malcolm v. National Gypsum Co.*, 995 F. 2d 346, 349 (C.A. 2 (N.Y.), 1993.........26

*Woodson v. Surgitek, Inc.*, 57 F. 3d 1406, 1417 (5th Cir. 1995).............................21

# I. <u>RELIEF SOUGHT</u>

## A.  Substantive Relief-Writ of Mandamus

Pursuant to 28 U.S.C. §1651 and Fed. R. App. P. 21, Petitioner, Christine Reitano, seeks relief from (1) an unconstitutional denial of due process of her claims; (2) an erroneous and prolonged consolidation of her civil cases with MDL 2179; (3) an unconstitutional denial of equal protection; (4) an indefinite and, therefore, permanent injunction on the prosecution of her cases; (5) an unconstitutional refusal to even consider her repeated and legitimate requests for relief citing Pretrial Order No. 15 in MDL 2179; and (6) the Judicial Panel on Multi-District Litigation's (JPML) refusal to consider a motion to remand based on "lack of jurisdiction."

This request for relief arises out of two lawsuits filed by Ms. Reitano which were precipitously, and without any consideration or notice, consolidated with MDL 2179. MDL 2179 was created by the JPML for joinder of all cases which "indisputably share factual issues concerning the cause (or causes) of the Deepwater Horizon explosion/fire and the role, if any, that each defendant played in it."  Neither of Ms. Reitano's cases arise out of the cause of the explosion or who was responsible for it. In fact, her claims did not arise until events which occurred three years after the explosion.

1

Ms. Reitano is an attorney who, on April 1, 2012, became a contract employee of the Claims Administration Office (CAO) established for the processing of the claims in MDL 2179. On June 26, 2013, she was precipitously and without cause terminated from her job at the claims office by Pat Juneau, the Claims Administrator.

Ms. Reitano's first suit was originally filed on October 21, 2013 in the CDC of Orleans Parish. She sued BP and Mr. Juneau for Bad Faith Breach of Contract, Wrongful Termination, Denial of Equal Protection pursuant to the Louisiana Constitution, defamation and damages. In spite of the lack of a federal question or diversity, the defendants each filed separate notices of removal and upon arrival in the USDC, EDLA, the case was not randomly allotted and was immediately assigned/transferred to Division J (Judge Carl Barbier) and automatically consolidated with MDL No. 2179 pursuant to Pretrial No. 1.[2] Twice, on December 5, 2013 and October 29, 2015, Ms. Reitano filed motions to unconsolidate/sever her first case from the MDL and, in the second motion, she included a request for suggestion of remand to be sent to the JPML. Both requests were automatically denied within 24 hours of submission.

---

[2] For some reason, and although there is only one case, each removal notice was given a separate docket number.  Docket Nos. 2:13-cv-0630 and 2:13-cv-0632 are one and the same case.

2

Ms. Reitano's second suit was filed on February 23, 2015 against Mr. Louis Freeh and the Freeh Group International Solutions. This suit was filed in USDC, EDLA for damages arising out of Mr. Freeh's false allegations against Ms. Reitano which he repeatedly and publicly made until he was forced to admit that he had no evidence to support his false allegations. Ms. Reitano's suit against Mr. Freeh was allotted to Section I, Judge Lance Africk, However, three days after it was filed, Judge Africk, without notice, transferred the case to Division J where it was automatically, without notice again, consolidated[3] with MDL 2179 pursuant to Pretrial Order No. 1 and indefinitely stayed pursuant to Pretrial Order No. 15.

Stymied by the two refusals of Judge Barbier to consider severance of her first case from the MDL, the automatic stay on her suit against Mr. Freeh, and in total desperation, Ms. Reitano turned to the JPML and on February 26, 2016, filed a motion to remand her cases to their original courts. One business day later, the JPML declared that it had no jurisdiction over Ms. Reitano's cases in MDL 2179!

Ms. Reitano and her cases are apparently imprisoned in MDL 2179, without bail, and neither the district court nor the JPML will even consider the merits of her legitimate requests to escape or be bailed out.  Ms. Reitano has nowhere else to go

---

[3] Ms. Reitano filed an objection to the consolidation which has never been considered.  Case No. 2:15-cv-00567, Rec. Doc. 4.

to seek relief other than this Honorable Fifth Circuit. It is indisputable that her cases have nothing to do with the cause of the explosion of the Macondo Well or who is responsible, yet they have been lumped together into the MDL for years.  Her first suit has been stayed for over two years and four months and her second suit has been stayed for over a year. It is not hard to imagine what is happening to the witnesses who may die or move and not be able to be found or the documents which may be lost or destroyed because Ms. Reitano is even stayed from seeking a litigation hold on documents in possession of the defendants.

Ms. Reitano has repeatedly sought relief from the District Court as well as the JPML without any success. In fact, there's no indication that the district court or the JPML even considered the merits of the requests for severance and remand. The District Court has never ruled on the basis for consolidating Ms. Reitano's claims with the MDL in the first place. Pursuant to Pretrial Orders issued long in advance of Ms. Reitano's claims, the court has refused to take any action or to even consider the merits of Ms. Reitano's requests for relief - a simple and legitimate severance from the MDL.

Petitioner recognizes the extraordinary requirements for a writ of mandamus. *See In re United States*, 397 F.3d 274, 282 (5th Cir. 2005) ("(1) the party seeking issuance of the writ [must] have no other adequate means to attain the relief he

4

desires; (2) the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable; and (3) even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.") (citation and internal quotation marks omitted). This is an extraordinary case. The continued and lengthy deprivation of Ms. Reitano's fundamental rights is so clear, the harm is so obvious, and relief so necessary that this Court must act. *In re Dresser Indus., Inc.,* 972 F.2d 540, 543 (5th Cir. 1992) (mandamus is appropriate "when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court") (citation omitted).

Ms. Reitano has exhausted all apparent avenues of relief and only gets ignored. With all due respect, the District Court's repeated refusals to consider Ms. Reitano's requests are manifestly illegal. They violate the most fundamental notions of due process. Therefore, she turns to this Honorable Appellate Court for intervention and an order to the district court to release Ms. Reitano's claims from MDL 2179. Cases 2:13-cv-0630 and 2:13-cv-0632 should be remanded to the Clerk of the Eastern District for random allotment and Case No. 2:15-cv-00567 should be remanded to Section I, Judge Africk, where it was randomly and originally allotted.

### B.      Procedural Relief Sought—Expedited Consideration.

This Honorable Appellate Circuit is the court of last resort for Ms. Reitano. She is illegally in MDL 2179 and has no apparent hope of ever getting out because the district court will not even read her motions to be severed and the JPML claims lack of jurisdiction.  Ms. Reitano begs this court to intervene and stop the flagrant abuse of discretion being exercised by Judge Barbier and the continued violation of Ms. Reitano's constitutional rights.

In addition to the substantive relief sought and due to the unbelievably harsh and lengthy time these matters have been stayed for no apparent, legal or valid reason, Ms. Reitano is also asking for expedited consideration of this Request for a Writ of Mandamus.

## II.  ISSUE PRESENTED

Whether this Court should issue a Writ of Mandamus to compel the District Court to sever Ms. Reitano's cases, which have nothing to do with the explosion of the Macondo Well in 2010, from MDL 2179 and return them to the transferor court in the case of Docket No. 2:15-cv-00567 (Section I, Judge Africk) and to the Clerk of the Eastern District for random allotment in Docket Nos. 2:13-cv-0630 and 2:13-cv-0362, so that she may prosecute her civil cases which have been unconstitutionally stayed for years.

## III.  FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

### A.  Introduction and Summary of Argument

The BP Macondo Well blew up in the Gulf of Mexico off the coast of Louisiana on April 20, 2010.  MDL 2179 was established on August 10, 2010 by Transfer Order of the JPML transferring to the Eastern District of Louisiana, Section J, all of the actions which "indisputably share factual issues concerning the cause (or causes) of the Deepwater Horizon explosion/fire and the role, if any, that each defendant played in it.[4]  Ms. Reitano is neither a plaintiff nor a defendant in any case arising out of the explosion.  On April 1, 2012, she became a contract employee of the Claims Administration Office (CAO) established for the processing of claims. Her employment had zero to do with the cause of the explosion or what the multiple defendants had to do with it.

On June 26, 2013, she was precipitously and without cause terminated from her job at the CAO by Pat Juneau, the Claims Administrator.  The facts of her first case, all arise out of the wrongful termination, have absolutely nothing to do with the cause or causes of the explosion of the BP well and they did not even occur until three years after the explosion.

---

[4] Exhibit 1, Transfer Order, MDL 2179, Rec. Doc. 1.

On September 6, 2013, after a brief, superficial and biased investigation and based on provably false conclusions. Mr. Louis Freeh and his company issued a report concluding falsely that Ms. Reitano was guilty of misconduct including criminal conduct and conspiracy.  As a result of Mr. Freeh's erroneous conclusions, Ms. Reitano was named as a "show cause" party and ordered to show cause why she should not be sanctioned by the Court.  This "show cause" proceeding lasted well over a year and, in the end, Mr. Freeh was forced to admit he had no evidence to support his "version" of the facts related to Ms. Reitano and he had no evidence to dispute Ms. Reitano's accurate, truthful and also sworn version of the events related to her alleged misconduct.  The Court ordered Ms. Reitano released from the show cause order and no sanctions were imposed on her.

Ms. Reitano filed two suits:  (1) one against BP and Mr. Juneau with claims related to her wrongful termination; and (2) one against Mr. Freeh and his company, after Mr. Freeh admitted he had no evidence to support his oft-repeated, worldwide, false accusations against Ms. Reitano--even after he had sworn testimony from third party witnesses that his conclusions and allegations were false.  Both of these suits were improperly consolidated, without notice, with MDL 2179.  In spite of two requests to the district court for severance and a motion for remand filed in the

JPML, which was also ignored based on the JPML's self-professed lack of jurisdiction over MDL 2179, Ms. Reitano has not been able to escape MDL 2179.

There is absolutely nowhere else for Ms. Reitano to go, other than this Honorable Appellate Court, to seek relief from her unconstitutional confinement in MDL 2179.  Moreover, her illegal treatment begs the question: Why does the district court have such a fervent and obviously determined desire to keep her totally unrelated cases in the MDL?  Surely lack of work is not the answer.  In fact, it has been suggested that the reason for the court's refusal to consider the motions is that there are too many cases and the judge does not have time to consider relief for two singular cases.  There are two ironies of that suggestion: (1) The Judge has considered at least two other identical requests and granted a severance in both cases;[5] and (2) Ms. Reitano is actually and legitimately attempting to reduce the workload of the court by removing two cases from the MDL docket.  If the judge would only have his law clerk summarize the motions, he could responsibly report to the court that only the word "GRANTED" need be written or stamped and then add the electronic signature.

---

[5] A motion to sever by a Pro Se Plaintiff  in Case No. 11-1096, <u>Velma Jean Richards v. British Petroleum-BP, et al</u>, Granted 10-21-11, Rec. Doc. 4377; and a motion to sever by Pierre Mabile (Rec. Doc. 15462),  Granted  on 10-16-15, Rec. Doc. 15475.

Only two plausible reasons for the denial of consideration come to mind:  (1) the court is so biased *against* Ms. Reitano or her counsel, he refuses to let her cases proceed; or (2) the court is so biased *in favor of* the defendants in her cases that he wants to delay their day of reckoning as long as possible.  In the meantime, no discovery has occurred and the possibility of losing evidence and witnesses increases every day, and the damage to Ms. Reitano continues to mount.

**B.    Ms. Reitano's Two Suits: Unrelated to Basis for MDL 2179**

**1.    <u>Ms. Reitano's First Suit: BP and Pat Juneau - Defendants</u>**

Ms. Reitano's first suit was originally filed on October 21, 2013, in the Civil District Court of Orleans Parish.[6]  She sued BP and Mr. Juneau for Bad Faith Breach of Contract, wrongful termination, Denial of Equal Protection pursuant to the Louisiana Constitution, Defamation and Damages.  Although there were no federal questions or causes of action alleged and diversity of citizenship does not exist, on November 7, 2013, each of the defendants filed Notices of Removal to the United States District Court (USDC) for the Eastern District of Louisiana (EDLA).[7]  Upon arrival in the USDC, and without notice, the case was not randomly allotted and was immediately    assigned/transferred    to    Section    J    (Judge    Carl    Barbier)    and

---

[6] Exhibit 2, the Petition.  The case was allotted to Division N and given Docket No. 2013-9913 in Civil District Court for Orleans Parish.

[7] Exhibit 2-A.  Removal Notices of BP and Juneau, 2:13-cv-06360 and 2:13-cv-06362, respectively.

automatically consolidated with the Deepwater Horizon MDL No. 2179, pursuant to Pretrial Order No. 1 entered in August, 2010.[8]

At the time of the removal, and relying on Local Rule 3.1, Mr. Juneau filed a "Notice of Collateral Proceedings" attempting to relate Ms. Reitano's case against him to the other cases in the MDL which were only joined because they "indisputably share factual issues concerning the cause (or causes) of the Deepwater Horizon explosion/fire and the role, if any, that each defendant played in it." There is no sanctuary for Mr. Juneau in Local Rule 3.1 because, not only are Ms. Reitano's claims against him not a "material part" of the subject matter of the cases in MDL 2179, her claims do not involve ANY part, much less a *material* part, of the subject matter of the other actions cited by Mr. Juneau, in his notice of collateral proceedings, i.e. *In re: Oil Spill*-MDL 2179 and *Bon Secour Fisheries*-12-cv-970. Neither the Transfer Order from the JPML nor the local rules can change the fact that Ms. Reitano's claims against Mr. Juneau, BP and Mr. Freeh are totally unrelated to the subject matter of MDL 2179--the explosion of the Macondo Well in 2010 and who caused it.

Then, on November 20, 2013, in response to a motion for extension of time to plead filed by one of the defendants, the Court specifically ordered Ms. Reitano's

---

[8] Exhibit 3, Pretrial Order No. 1, MDL 2179, Rec. Doc. 2.

case stayed with no responsive pleadings, motions, etc., allowed until ordered by the Court.[9]

On December 5, 2013, Ms. Reitano filed a "Motion to Unconsolidate Case from MDL, Randomly Allot and Transfer to Another Section of Court" in which she raised issues unique to and distinguishing her case from any relationship to any other case in the MDL—a de facto motion to remand or to suggest remand.[10]  On the very next day, December 6, 2013, the Court denied the motion without a hearing or any reasons given.[11]

Almost two years later, on October 9, 2015, Ms. Reitano received notice that another litigant, Pierre Mabile, had filed in MDL 2179 a motion to sever his case from the MDL.[12]  Mr. Mabile's motion was initially denied by way of an automated reply citing Pre-Trial Order No. 15.  Then, one week later, the Court surprisingly changed course, without explanation, and granted Mr. Mabile's motion on October 16, 2015.[13]

Buoyed by Mr. Mabile's success and the similarity of his position, on October 29, 2015, Ms. Reitano filed a Renewed Motion to Sever Action or, in the Alternative,

---

[9] Exhibit 4.  MDL 2179, Rec. Doc. No. 11874.
[10] Exhibit 5.  MDL 2179, Rec. Doc. No. 11933. Memorandum in Support is Rec. Doc. 11933-1.
[11] Exhibit 6. MDL 2179, Rec. Doc. No. 11935.
[12] Exhibit 7, Mabile motion, MDL 2179 Rec. Doc. 15462.
[13] Exhibit 8, MDL 2179, Rec. Doc. No. 15475.

Motion for a Suggestion of Remand to be Sent to the Judicial Panel On Multidistrict Litigation.[14]  On October 30, 2015, the Clerk entered an automatic reply staying Ms. Reitano's motion pursuant to Pretrial Order No. 15.[15] Pretrial Order No. 15, is an all-inclusive stay entered on November 5, 2010 which specifically mentions motions to remand being stayed.[16]  By virtue of the automatic nature of the notice from the Clerk and with all due respect, Ms. Reitano represents that her motion was not even read by the court to determine what was in it or if it had merit.  For over two years, the district court has refused to consider either of Ms. Reitano's motions to sever and/or her alternative Motion for a Suggestion of Remand.

And, so it was that Ms. Reitano was then forced to turn elsewhere for relief. She filed a motion to remand directly to the JPML, hoping for relief.[17]  No such luck. Within one business day, the Clerk of the JPML entered an order denying the motion for remand citing its "Lack of Jurisdiction."[18]

---

[14] Exhibit 9.  With permission from Mr. Mabile's attorney, Ms. Reitano used a portion of the legal arguments made by Mr. Mabile in his motion which were obviously successful.
[15] Exhibit 10.  MDL 2179, Rec. Doc. No. 15518.
[16] Exhibit 13, MDL 2179, Rec. Doc. No. 676.
[17] Exhibit 15.
[18] Exhibit 15-A.

## 2.    Ms. Reitano's Second Suit: Louis Freeh and Company, Defendants

In July, 2013, the Court appointed Louis Freeh as a Special Master to investigate alleged fraud being committed in the administration of claims by the Claims Office. Ms. Reitano, without any cause or reason, was named as a "show cause" party to show cause why she should not be sanctioned by the court for alleged misconduct, including criminal conduct. To say that the faulty investigation of Ms. Reitano by Mr. Freeh was, at best, superficial, biased and based on inadmissible and incompetent evidence, would be a gross understatement. It was intentionally misleading and, as to Ms. Reitano, had no evidence, admissible or not, to support its false and so-called "findings." Mr. Freeh not only made things up, but he actually "found" nothing on Ms. Reitano to support his claims. Early in the investigation, it was proved with sworn and irrebuttable testimony from third party witnesses that Mr. Freeh's investigators were obviously and intentionally misrepresenting hearsay information they gathered from key witnesses just to make Ms. Reitano "look" guilty of misconduct.

Mr. Freeh stood firm on and even repeated his false conclusions for months until he was forced by the court to show his cards. As the objections to his

investigation moved closer to a real hearing,[19] and in advance of the hearing, the Court ordered Mr. Freeh and the "show cause" parties to file a list of disputed and undisputed facts and designate the evidence they would produce to prove the elements of their claims or defenses.  At this point, Mr. Freeh was forced to admit that he had no evidence of any participation by Ms. Reitano in any of the misconduct regarding the Thonn "referral" fee he had vigorously alleged. The creation and distribution of the Thonn fee was the only serious claim Mr. Freeh had made against Ms. Reitano and he had to give it up because he did not have and never had any evidence to support it because the claim was false ab initio.  In fact, the authentic and admissible evidence he actually possessed contradicted his baseless claims against Ms. Reitano.

In Mr. Freeh's mandated memorandum before the hearing on objections to his biased and faulty report, he finally admitted he had no evidence to support his claims against Ms. Reitano:

> 3.      Reitano asked the Andry Lerner firm to honor the same 20 percent contingency fee agreement with Thonn that she had used. The Andry Lerner firm agreed to do so.  **Reitano testified she had**

---

[19] A status conference and hearing were only granted after one of the "show cause" parties filed a writ of mandamus on August 29, 2014, in this appellate court after multiple attempts to get a hearing had been denied, without reasons, for over a year.  Three days after the writ was filed, the District Court suddenly reversed course and on September 3, 2014, ordered a status conference which ultimately resulted in a hearing held on November 7, 2014.  The writ filed in the Fifth Circuit was denied on September 8, 2014, five days after the trial judge granted the status conference

**no continuing financial interest in the Thonn claims after she began work at the CAO, and no evidence contradicts her statement.** *See* Report at 26.

*Factual Issues in Dispute*: **None**. (Emphasis added).[20]

At the conclusion of the hearing on November 7, 2014, the Court found that Ms. Reitano did not request or know about the distribution of the referral fee in the Thonn case[21] and subsequently entered a written order that "No sanctions are imposed on Ms. Reitano."[22]

Armed with the admission by Mr. Freeh that he did not have, and actually never had, any evidence to support his so-called "findings," Ms. Reitano filed a second suit for damages on February 23, 2015 against Mr. Freeh and The Freeh Group International Solutions, LLC in USDC, EDLA, Docket Number 2:15-cv-00567.[23]  The case was randomly allotted originally to Section "I" but, three days after being filed, the court in Section I (Judge Africk), without notice, transferred the case to Division J[24] where it was automatically consolidated, without notice, with MDL 2179 to suffer the same fate as Ms. Reitano's first suit—stayed until further notice—imprisoned in MDL 2179 without bail.

---

[20] Freeh Submission, MDL 2179, Rec. Doc. 13504 - pg. 3, filed October 17, 2014.
[21] Hearing transcript, 11/07/14, Oral Reasons, Pages 248-249.
[22] Exhibit 11, ORDER filed 2/26/15, MDL 2179 Rec. Doc 14221.
[23] Exhibit 12, USDC, EDLA Case No. 2:15-cv-567, Doc. 1; Transferred to MDL 2179
[24] Exhibit 12-A, Transfer Order to MDL 2179.  Consolidation predetermined by Pretrial Order No. 1.

After learning her lesson in her first suit (twice) that any request for severance or a suggestion of remand would be automatically denied without any consideration of what the motion contained, Ms. Reitano did not make the obviously wasted effort to ask the district court, a third time, for a severance or suggestion of remand in her second suit.  Instead, Ms. Reitano filed a motion to remand in the JPML and included both of her suits in her motion which was, without consideration of the contents of the motion, automatically denied by the Clerk of the Panel, based on a declaration of "lack of jurisdiction" of the MDL.[25]

## IV.   ARGUMENT

### A.  The District Court Abused its Discretion by Not Severing and Remanding Ms. Reitano's cases on Its Own Initiative.

Without motion of either party and without any action taken on the part of the JPML, both of Ms. Reitano's cases find themselves consolidated and stayed indefinitely within MDL 2179.  Therefore, we look to multi-district jurisprudence governing remand.

The transferee judge is uniquely situated to determine when remand is appropriate:

> After all, the transferee judge is charged with the day-to-day supervision of centralized pretrial proceedings and, accordingly, has special *insight* into the question of whether further coordinated or

---

[25] Exhibits 15 and 15A.

consolidated proceedings are likely to be useful.  A transferee judge's suggestion of remand to the Panel is an obvious indication that he has *concluded* that the game is no longer worth the candle (and, therefore, that he perceives his role under [28 U.S.C.] section 1407 to have ended).[26]  (Emphasis added).

This presumed special *insight* is obviously based on the necessary assumption that the transferee court has actually *looked at* and considered the request for remand. The automated denials of Ms. Reitano's two requests for severance and suggestion of remand are a clear indication that the district court has not looked at (insight) or considered the requests.

In determining whether to sever a case or suggest remand, the transferee court should be guided by the JPML's standards for remand.[27]  Generally, the decision turns on whether the cases will benefit from further coordinated proceedings as *__part__* of the MDL.[28]  In making its determination, the Court *looks*[29] to the totality of the circumstances.[30]  Remand is appropriate where everything that remains to be done is case-specific or where remand "will serve the convenience of the parties and

---

[26] *In re Brand-Name Prescription Drugs Antitrust Litig*., 170 F. Supp.2d 1350, 1352 (JPML 2001).

[27] *See In re Activated Carbon-Based Hunting Clothing*, 2012 WL 72844, at *5.

[28] *Id.*

[29] With all due respect, we note that it appears that the transferee court has not "looked" at Ms. Reitano's first or second motion to sever, which also contained an alternative request for a suggestion of remand to be sent to the JPML.

[30] *See In re Light Cigarettes*, 2012 WL 6151510, at *3.

witnesses and will promote the just and efficient conduct of the litigation."[31]
Typically, the transferee judge recommends *on his own initiative* the remand of an
action by filing a suggestion of remand with the Panel or, simply severing and
remanding the case to its original court, as Judge Barbier did in this case for at least
two other litigants.[32]

The district court recently deemed it appropriate to except from the automatic
stay a motion to sever filed by Pierre Mabile, another litigant in the MDL who was
in the same situation as Ms. Reitano. Mr. Mabile sued BP alleging that he designed
a device used by BP to halt the oil spill from the Macondo Well. Mr. Mabile filed a
Motion to Sever his action from MDL 2179 on October 9, 2015.[33] It was initially
denied with the same automated reply received by Ms. Reitano based on Pretrial
Order 15. Although Mr. Mabile admitted that his claim shared a general "factual
backdrop" with MDL 2179, a week later, on October 16, 2015, Judge Barbier found
that the Mabile facts were not shared with any of the claims bundled in MDL 2179.
The judge then reversed course, excepted Mabile's case from the stay, and granted
his Motion to Sever. No such due process or equal protection was accorded to Ms.
Reitano. When she filed her motion to sever, days after Mabile's was granted,

---

[31] *Id.* (quoting *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000)).
[32] See Footnote 5.
[33] Exhibit 7.

including (with permission) the legal arguments of Mr. Mabile, her motion was automatically denied.

Ms. Reitano respectfully submits that not only do her claims not arise from *some* of the same transactions or occurrences surrounding the explosion of BP's Well, as Mr. Mabile's motion conceded, Ms. Reitano's claims do not share *any* factual backdrop with *any* actions in MDL No. 2179 and certainly do not share any legal issues.

To say that Ms. Reitano's cases do not now and never would have benefitted from the framework provided by the centralized proceedings for discovery and motion practice is a profound understatement.   Taking into consideration that plaintiff's claims could not ever benefit from inclusion in MDL 2179, the transferee judge should have ***promptly*** severed Ms. Reitano's cases, **on his own initiative.**

Ms. Reitano's position in the MDL demands a severance and remand from the transferee court because her cases meet all of the JPML's standards for remand.  Ms. Reitano's actions do not share any common questions of fact with the actions previously transferred to MDL No. 2179; most, if not all, pretrial proceedings are likely complete; the entirety of Ms. Reitano's discovery is, and always was "case-specific;" remand "will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the litigation;" and remand will terminate

the ongoing, daily damage to Ms. Reitano and her family.  Unfortunately, as far as Ms. Reitano's cases are concerned, the USDC for the EDLA is apparently closed for business—indefinitely.

### B.    The District Court's Improper Issuance and Continuation of a Stay

It is well recognized that district courts have broad discretion and authority to stay proceedings as incidental to their power to control their own docket.[34]  As part of this broad discretion, a district court may stay or dismiss a suit that is duplicative of another federal court suit.[35]

In the instant cases, there has never been any risk of duplicative litigation in competing federal courts sufficient to order a stay.  Ms. Reitano's cases were automatically consolidated with the MDL pursuant to Pretrial Order No. 1 when one was removed from state court and the other was transferred from Section I to Section J, without notice.  Thus, there were no crossroads where her actions sat in one federal court waiting for the JPML to decide whether they more properly belonged in another.

---

[34] See *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Woodson v. Surgitek, Inc.*, 57 F. 3d 1406, 1417 (5th Cir. 1995*). Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

[35] See *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, …though no precise rule has evolved, ***the general principle is to avoid duplicative litigation***.").

21

The stay of Ms. Reitano's proceedings does not have the prescribed effect appropriate of a stay in a multidistrict litigation of avoiding duplicative discovery efforts, unnecessary expenditures of judicial resources and the parties' resources, and it did not maximize judicial economy among the courts.   All the stay accomplished was to remove her cases from their original judge to the transferee judge who, according to Pretrial Orders Nos. 1 and 15, would never have to do anything in the cases until he decided to send them back to the transferor court, no matter how long that would take.  Her cases have simply been stopped, dead in their tracks, and nothing in the cases has been accomplished for over two years.  Period.

The stay did have, however, and still has the effect of extreme prejudice to Ms. Reitano.  Ms. Reitano hasn't been asked to merely suffer a wait of a few weeks or even a few months pending a determination regarding transfer by the Panel as is typical in MDL proceedings.  Ms. Reitano has suffered prejudice without recourse or process for two years in a situation that cannot be justified by any legal or equitable rationale.  Here, the court has not stayed Ms. Reitano's action temporarily simply to permit an issue of transfer to be decided by the Panel; rather the court has barred the prosecution of her claims altogether and indefinitely which has the same effect as a permanent injunction—which is also not warranted for any reason.

# V.  <u>LEGAL ANALYSIS</u>

All attempts to get the district court to sever Ms. Reitano's cases and send them back to the transferor courts have fallen on deaf ears and blind eyes.  Her requests were automatically and immediately denied based on a pre-existing stay.[36] Even the JPML has denied her motion to remand, citing "lack of jurisdiction."  If the JPML has no jurisdiction, then Judge Barbier must have it and he refuses to consider any of Ms. Reitano's motions.  Ms. Reitano is now forced to file this request for extraordinary relief and ask this Honorable Appellate Court to order the district court to do what it has repeatedly, illegally and erroneously refused to do.

Specifically, Plaintiff submits the following facts which cannot be disputed: (1) Her cases do not involve common issues of law or fact with the issues in MDL 2179; (2) Her cases do not fit the consolidated case management, settlement and trial preparation activities with which the MDL proceeding as a whole has been concerned; (3) while the real affected MDL parties have completed a majority of the joint discovery, there has been no discovery in Ms. Reitano's cases; (4) the discovery in Ms. Reitano's case is and has always been 100% case-specific and completely unrelated to MDL 2179; and (5) no good cause exists for continuing to delay remand at this time.

---

[36] Pretrial Order No. 15, Exhibit 13.

## A.     Pretrial Order No. 11 Bundles Inapplicable.

If it is not yet clear that Ms. Reitano's cases do not belong in MDL 2179, the Court need only look to Pretrial Order No. 11 which delineates the four categories of claims to be litigated within MDL No. 2179, referred to as Pleading Bundles A, B, C, and D.[37]  Pleading Bundle A encompasses personal injury and death caused by the explosion.[38]  Pleading Bundle B, which includes subcategories, encompasses various types of private individual and business loss claims arising from the explosion.[39]  Pleading Bundle C covers public damage claims[40] and Pleading Bundle D is for claims involving injunctive and/or regulatory relief.[41]

Importantly, Section IV (E) of Pre-Trial Order Number 11 states:

> E. Designation of Subsequently-Added Cases.   All cases subsequently added to this proceeding as a tag-along action or by removal or transfer to or original filing with this Court shall be assigned to a Pleading Bundle, as necessary or appropriate, in accordance with the above.[42]

Plaintiff's claims against BP, Mr. Juneau and Mr. Freeh do not fit within any of the Pleading Bundles because plaintiff's claims are totally unrelated to the BP well explosion.  Therefore, this Court should order the district court to immediately

---

[37] Exhibit 14,  Pretrial Order No. 11 (Oct. 19, 2010) MDL  2179, Rec. Doc. 569.
[38] See *id.*
[39] See id. At 3.
[40] See id. At 4.
[41] See id. At 5.
[42] See id. At 5.

remove Ms. Reitano's cases from MDL 2179 and return them to the transferor courts without further delay.

### B.  Centralization and Coordination under 28 U.S.C. §1407: No benefit to Ms. Reitano's Cases

A Section 1407 forum is appropriate for actions sharing factual questions arising from the same occurrence.  While it is true that "the relative merits of transferring new tag-along actions to an ongoing MDL can change over time as the transferee court completes its primary tasks and cases already in the centralized proceedings progress towards trial or other resolution,"[43]  Ms. Reitano's cases clearly never could have benefited from the coordination and consolidation that Section 1407 centralization provides because her cases do not involve even a single common question of fact or law with the other MDL cases.  This complete lack of factual and legal overlap has been readily evident from the moment plaintiff's cases were automatically consolidated by fiat into MDL 2179.

### C.  Convenience and Efficiency Can Never be Purchased at the Cost of Fairness

In *Johnson v. Celotex Corp.*,[44] the court held that, although consolidation may enhance judicial efficiency, "considerations of convenience and economy must yield

---

[43] See, *In re Checking Account Overdraft Litig.*, 818 F. Supp. 2d 1373, 1373 (J.P.M.L. 2011).
[44] 899 F.2d 1281, 1285, (2d Cir.), cert. denied, 498 U.S.920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990),

to a paramount concern for a fair and impartial trial."  The court in *In re Repetitive Stress Injury Litig.* found:[45]

> As we have recently cautioned, "The systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's – and defendant's – cause not be lost in the shadow of a towering mass litigation."

The principles of commonality or judicial efficiency which favor consolidation do not exist in the present case. Instead, if convenience matters, the only parties who have benefitted are the defendants in Ms. Reitano's cases who benefit from the delay and have not been required to answer for their misdeeds.

*The benefits of efficiency can never be purchased at the cost of fairness.*[46]

Considerations of convenience may not prevail where the inevitable consequence to another party is harmful and causes serious prejudice.[47]

Keeping Ms. Reitano's case in this MDL with an indefinite stay is 100% seriously prejudicial, incredibly harmful and grossly unfair to Ms. Reitano.

---

[45] 11 F.3d 368, 373 (2d Cir. 1993); citing *In Re: Brooklyn Navy Yard Asbestos Litig*, 971 F. 2d 831, 853 (2d Cir. 1992).
[46] *Malcolm v. National Gypsum Co.*, 995 F. 2d 346, 349 (C.A. 2 (N.Y.), 1993.
[47] *Arnold v. Eastern Airlines, Inc*., 712 F. 2d 899, 906 (C.A. 4th 1983) (en banc), cert. denied, 464 U.S. 1040, 104 S. Ct. 703 (1984).

## VII.   CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, for the reasons stated herein, Ms. Christine Reitano moves this Honorable Court to:

1. Expedite this proceeding due to the extended and harmful delays already caused by the unwarranted and indefinite stay, exacerbated by the transferee court's refusal to even consider two previously filed motions to sever her cases and remand to the transferor courts;

2. Order the district court to sever from MDL 2179 her suit against BP and Mr. Juneau (Docket Nos. 2:13-cv-06360 and 2:13-cv-06362—MDL 2179) and remand it to the Clerk of the USDC, EDLA for random allotment to another section of the court; and

3. Order the district court to sever from MDL 2179 her suit against Mr. Freeh (Docket No. 2:15-cv-00567, MDL 2179) and remand it to Judge Lance Africk, Section I, USDC, EDLA.

Respectfully submitted:

_____/s/Mary Olive Pierson_____`
Mary Olive Pierson (La Bar No 11004)
P.O. Box 14647 (70898)
8702 Jefferson Highway, Suite B
Baton Rouge, LA 70809
Telephone: (225) 927-6765
Facsimile: (225) 927-6775
Email: mop@mopslaw.com

27

Patrick J. Fanning, (La. Bar No. 5441)
238 Huey P. Long Ave.
Gretna, LA 70053
Phone: (504) 368-7888
Fax: (504) 368-7263
Email: pfanninglaw@aol.com

*Counsel for Christine Reitano*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Petition for Writ of Mandamus were electronically filed with the Fifth Circuit United States Court of Appeals and has been served on all counsel listed on the Certificate of Interested Persons and on the clerk for the United States District Court for the Eastern District of Louisiana via the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 8th day of March, 2016.

_____/s/Mary Olive Pierson_____`
MARY OLIVE PIERSON

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the length limitation of Fed. R. App. P. 32(a)(7)(A) because this brief is less than thirty (30) pages, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the type-volume limitation as set forth in Fed. R. App. P. 32(a)(7)(B)(i) because it is under the 14,000 word limitation.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font (12 point for footnotes).

I further certify that (1) all required privacy redactions have been made in this brief in compliance with 5th Cir. Rule 25.2.13; (2) any paper copies provided to the Court will be exact copies of the electronic version, in compliance with 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.


        /s/Mary Olive Pierson      `
        MARY OLIVE PIERSON