# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * * * * | **MDL NO. 2179** <br> **SECTION J** |
| **This document relates to:** <br> **All Cases and No. 12-970** | * * * * * * * | **HONORABLE CARL J. BARBIER** <br><br> **MAGISTRATE JUDGE SHUSHAN** |

## BP'S REPLY IN SUPPORT OF ITS MOTION TO VACATE AND STAY PAYMENT OF AWARDS TO CLAIMANT 100261264

Claimant seeks a more than $12 million windfall—one of the largest awards ever made under the Settlement Agreement's Wetlands Framework—for a largely undeveloped property that was not touched by a drop of Macondo oil and for which the Settlement Agreement only provides for a single $15,750 payment. There is no basis in the Settlement Agreement for Claimant's position. The Settlement Agreement itself defines the term "Parcel" as a tax parcel. Settlement Agreement (hereinafter, "S.A."), Ex. 11A § 1.C.i. Moreover, the very property at issue was identified as a single Eligible Parcel in the Settlement Agreement itself. *Id*., Ex. 12A, App. C. This was no accident. The BP and Plaintiffs Steering Committee negotiators sat in a room and literally identified each Eligible Parcel, including the property at issue. *See* Declaration of Christopher Esbrook ¶ 3 (Ex. 2 to BP's Mem. In Support, Record Doc. No. 15903-4) (hereinafter "Esbrook Decl."). In no case did the negotiators treat every lot within an Eligible Parcel as separately compensable parcels. *Id*. at ¶ 5. And still further, the Claims Administrator's own database—which the Wetlands Framework deems the best evidence—treated the subject parcel as a single Eligible Parcel entitled to a single payment of $15,750 until it was changed following the adoption of Policy 443. *Id*. at ¶¶ 6-7.

Claimant's logic in support of its requested windfall is unsound. Claimant asks the Court to treat its single Eligible Parcel as if it were 839 Parcels. If the Court did so, none of the lots would meet the Settlement Agreement's express criteria for compensation as none were directly intersected by the SCAT Line or were documented as oiled in certain specified NRD reports. S.A., Ex. 12A, App. B.

But the Court need not decide upon the meaning of the term Parcel in order to resolve this Motion. Even if one assumes Policy 443 to be valid, the claims at issue do not satisfy the mandatory criteria of the Policy itself. Specifically, Policy 443 only treats individual lots within

a tax parcel as separate Eligible Parcels if, among other things, the lot has "its own legal description of boundaries used for taxing purposes." Policy 443 at 2. There is no evidence in the record that the lots at issue have their own legal description of boundaries, be it for taxing purposes or otherwise. Tellingly, nowhere in its 28 page brief does Claimant identify a legal description of the boundaries of the lots at issue. Instead, Claimant merely argues that there is a "property description of the subdivision." Claimant's Mem. In Opp. (Record Doc. No. 16015) (hereinafter, "Opp. Mem.") at 1. Describing where on the state survey grid the subdivision is located is far different than providing the legal description of the boundaries for each lot. In the absence of an established legal description of the boundaries of each lot, Policy 443 does not, by its own terms, apply. Thus, it is unnecessary to reach the question of the validity of Policy 443 in order to reverse the 839 awards.

Claimant's remaining arguments also lack merit. BP has not ratified or waived anything and is not judicially estopped. From its very first communication on the subject of Policy 443, BP expressed explicitly that (i) it objected to the Policy and (ii) it was reserving its rights to challenge the Policy in the future. The practice of deferring to a Claims Administrator Policy while reserving rights to raise a later challenge was actually suggested by Class Counsel in the first instance and was used by Class Counsel itself in this case.

Finally, Claimant's accusation that BP has manipulated the map in its opening brief is wrong. The differences that Claimant alleges are either nonexistent or are irrelevant discrepancies between mapping approaches.

Accordingly, BP respectfully requests that the Court vacate and reverse the 839 awards to Claimant, identified on Exhibit 1 to BP's opening brief, and instruct the Settlement Program to

2

issue a revised eligibility notice for a total amount of $15,750, the amount due under the Wetlands Framework.

I.      Claimant Does Not Satisfy The Requirements Of Policy 443

Regardless of how the term "Parcel" is ultimately defined, Claimant does not satisfy the mandatory criteria of Policy 443. These criteria are prerequisites to treating individual lots within a tax parcel as separate Eligible Parcels. Policy 443 is clear that it will only deem individual lots in a tax parcel as separate Eligible Parcels if, among other things, the lot at issue has "its own legal description of boundaries used for taxing purposes." Policy 443 at 2. There is no evidence in the record of a legal description of boundaries, for taxing purposes or otherwise, for any of the 839 lots at issue. Claimant itself does not point to a single legal description of the boundaries of any lot. Instead, Claimant points to the fact that the underlying plat references the sections, township and range, as well as the length and width of the lots. Opp. Mem. at 1. But none of these features is a legal description of ***boundaries of the lots at issue*** providing information as to where each lot begins and ends. Rather, they are merely descriptors in the Public Land Survey System that tells one that the entirety of the property is located in Sections 27-32 of Township 15S in Range 13W. Nothing in this description tells one anything about the legal boundaries ***of any given lot***. See Ex. A to Opp. Mem. The tax assessment for the property at issue likewise contains the same basic section, township and range descriptions and does not contain any description of legal boundaries of the individual lots. See Ex. D to Opp. Mem. In the absence of legal descriptions of the boundaries of each of the lots at issue, Policy 443 does not apply, and the entire tax parcel is to be treated as a single Eligible Parcel.[1]

---

[1] Claimant argues that once it has provided ownership documentation for the lots, "no further inquiry is allowed or required by the Claims Administrator to approve, pay, and settle the claims." Opp. Mem. at 10. This is wrong. As explained above, Policy 443 expressly requires, among other elements, the existence of a legal description of the boundaries of each lot at issue. See Policy 443 at 2.

3

II.     The $12 Million Plus Award At Issue Is At Odds With
        The Express Terms And Intent Of The Settlement Agreement

Claimant argues that the term "Parcel" is not defined in the Settlement Agreement. Opp. Mem. at 6. That is not correct. It is defined in the Settlement Agreement's Coastal Real Property Framework, which precedes the Wetlands Framework and uses the same concept of zones and relationship to the SCAT Line as the Wetlands Framework. The Settlement Agreement defines a "Parcel" as "a specific tract of real property defined by ***a legal description of the boundaries used for taxing purposes***." S.A., Ex. 11A § 1.C.i (emphasis added). In other words, the parties agreed that the land subject to a single assessment by the local taxing authority would constitute a single parcel for purposes of compensation.[2] Given that the term "Parcel" is clearly defined in Exhibit 11A and that Exhibit 11A uses the same concepts as the Wetlands Framework, standard principles of contract interpretation presume that the parties intended for the term to have the same meaning when used in Exhibit 12A absent some indication to the contrary. *Tennessee Corp. v. Hartford Accident & Indem. Co.*, 463 F.2d 548, 551-52 (5th Cir. 1972).

Moreover, there is no need to guess what the parties intended as to how to treat the property at issue, for this very property is specifically addressed in both the Settlement Agreement and in the Claims Administrator's Database that was created pursuant to the terms of the Wetlands Framework. When negotiating the Settlement Agreement, the parties sat in a conference room and literally went through every Parcel that might constitute an Eligible Parcel.[3]

---

[2] Claimant points to a prior declaration from the Cameron Parish tax assessor stating that multiple lots are included on single tax assessments for, among other reasons, administrative convenience. Opp. Mem. at 13. The reason why multiple lots are included on a given tax assessment is irrelevant. As a matter of law, the Settlement Agreement provides that such multiple lots are to be treated as a single Eligible Parcel. S.A., Ex. 11A § 1.C.i.

[3] Claimant asserts that there is no evidence in the record of the parties discussion of the subject property. Opp. Mem. at 12 n.13. This is incorrect. The Declaration of Christopher Esbrook, attached as Exhibit 2 to BP's opening brief, explains that "During the negotiations, I met with representatives of the Plaintiffs Steering Committee to

4

The parties did so using the actual tax assessment information for Terrebonne Parish, confirming what the Settlement Agreement expressly states, namely that the term "Parcel" means tax parcel. If the parties thought the term meant something else, they would not have used available tax assessment mapping. As to other parishes, the parties used the best approximation of tax parcel maps available under the time constraints of the negotiations, namely the Tobin Data. S.A., Ex. 12A, App. B at 2; Esbrook Decl. ¶ 3. At the conclusion of this exercise, the parties prepared Appendix C to the Wetlands Framework, which memorializes "each known ***Eligible Parcel*** into a Compensation Category by applying the information in the Administrator's Database as of the settlement date."[4] S.A., Ex. 12A § 1.D.iii (emphasis added). Of critical importance, the property at issue is identified on Appendix C as one single Eligible Parcel entitled to one single payment of $15,750. Esbrook Decl., Ex. B. In addition, not only was the subject property identified as a single Eligible Parcel, in no case during the creation of Appendix C did the parties treat any individual lot within a tax parcel as a separate Eligible Parcel.

Claimant suggests that the parties' express determination that the property at issue is one, single Eligible Parcel entitled to one, single award of $15,750 was based on incomplete

---

Footnote continued from previous page
identify every Eligible Parcel within the Wetlands Real Property Claim Zone. Esbrook Decl. ¶ 3. Mr. Esbrook goes on to explain that the parties used Tobin Data for the Cameron Parish properties, that the parties identified the subject property as a single Eligible Parcel, and that this was memorialized in Appendix C to the Wetlands Framework. *Id*. ¶¶ 3-6. Moreover, regardless of what the parties discussed, Appendix C to Exhibit 12A could not be clearer that the property at issue is identified as a single Eligible Parcel entitled to a single $15,750 payment.

[4] Claimant argues that "[i]dentifying Long Beach Subdivision as one 'taxing parcel' would be factually and legally impossible since there are nearly one thousand (1,000) different lots and nearly one hundred (100) different owners of those lots in the Long Beach Subdivision." Opp. Mem. at 11-12. This statement reflects a lack of understanding of the Wetlands Framework and how Cameron Parish handles sales of lots within a subdivision. As explained above, Appendix C to the Wetlands Framework, as well as the Claims Administrator's Database prior to implementation of the Policy 443, treated the 839 lots as one, single tax parcel. There is nothing "legally or factually impossible" about doing so. All 839 of the lots owned by Claimant are in fact the subject of one, singular tax assessment by Cameron Parish. *See* Ex. D to Opp. Mem. And as to previously sold lots, those lots received their own tax assessment subsequent to the sale, are thus separate tax parcels, and have nothing to do with the claim in question. Moreover, even if they were not, the Wetlands Framework has a specific provision for allocating awards among multiple owners, *see* S.A., Ex. 12A § 2.E.ii. Although, based on Claimant's representation, that provision is not implicated here as Claimant proclaims to be the sole owner of all of the lots at issue.

information. This is demonstrably wrong. As to all properties, the parties constructed Appendix C based on the best available approximation of tax parcels given the time constraints, not lots. Moreover, once the Settlement Agreement was executed, the parties then obtained tax assessment information from jurisdictions for which it had not been previously available and included that information in the Claims Administrator's Database.[5] The inclusion of that information, including the fact that Claimant's single tax parcel contained numerous paper lots, did not cause the parties to change the database or their conclusion that Claimant's single Eligible Parcel was only entitled to one payment of $15,750. Esbrook Decl. ¶¶ 6, 7.

Similarly flawed is Claimant's argument that Sections 1.F and 1.G of the Wetlands Framework somehow authorize the Settlement Program to transform what the parties agreed would be treated as a single Eligible Parcel into multiple Eligible Parcels. The language quoted by Claimant in no way supports Claimant's position. Section 1.F of the Wetlands Framework recognizes the possibility that the mapping data used by the parties may have inadvertently omitted a given property that is actually located within the Wetlands Zone. *See* S.A., Ex. 12 A § 1.F. Therefore, this provision allows the Claims Administrator to add to the universe of Eligible Parcels an Eligible Parcel that had been previously omitted provided that the Claimant provides certain proof: "Accordingly, real property located in the Wetlands Real Property Claim Zone ***not identified as a parcel*** [in the database] shall nonetheless be classified by the Claims Administrator as an Eligible Parcel provided the claimant documents the following…." *Id.* (emphasis added). This provision has no application to the property at issue. The subject

---

[5] That the parties used the Tobin Data as the best available approximation of tax parcels and then supplemented the Tobin Data with the actual tax parcel data demonstrates that the following statement by Claimant is simply wrong: "It would have been impossible for the parties to agree as to any type of 'tax parcel' for Cameron Parish as suggested by BP, as admittedly neither party had access to the tax assessments for Cameron Parish at the time of the settlement." Opp. Mem. at 6.

6

property was, from the beginning, identified as an Eligible Parcel in the Claims Administrator Database.  Indeed, it was identified as one, single Eligible Parcel on Appendix C to Exhibit 12A.  Claimant simply desires to change the compensation value associated with the property.  But that is not what Section 1.F of Exhibit 12A provides for.  Similarly, Section 1.G upon which Claimant relies permits the Claims Administrator to update the name of the owner of an Eligible Parcel where the original information was incorrect.  *See* S.A., Ex. 12A § 1.G.  This provision, too, is irrelevant to the issue at hand.  There is no dispute about ownership in this motion.

Perhaps the best proof that Claimant's proposed interpretation is unsound is the fact that if one accepts Claimant's interpretation, Claimant would be entitled to no compensation for the lots at issue.  The Wetlands Zone only includes parcels that (i) were directly intersected by the SCAT Line or would have been had the SCAT Line been contiguous and (ii) were identified in certain NRD assessments as having been oiled.  S.A., Ex. 12A, App. B.  Accepting solely for purposes of illustration that each of Claimant's 839 paper lots is a separate Parcel under the Wetlands Framework, none of the 839 lots was directly intersected by the SCAT Line or would have been if the SCAT Line was contiguous.  And none was identified as oiled on an NRD report.  Thus, none of the 839 paper lots would ever qualify as an Eligible Parcel.  To this point, Claimant would counter that all of the paper lots fall within the Wetlands Zone map as depicted in the Settlement Agreement.  But that Zone was constructed using the best approximation of tax parcels available given the time constraints.  If Claimant is to prevail on its contention that each lot is an Eligible Parcel, then that same definition must be used to determine whether any of the lots are located within the Wetlands Zone.

Still further, Claimant has no response to the fact that its proposed outcome would be inconsistent with the structure of the Wetlands Framework.  The Wetlands Framework intends

for oiled properties to receive greater compensation than non-oiled properties.  S.A., Ex. 12A §§ 2.C.vi-vii.  Yet, in attempting to transform a single Eligible Parcel into 839 Eligible Parcels, Claimant seeks an award for a property that was not impacted by a single drop of Macondo Oil that dwarfs the awards granted for many large oiled properties.

Unable to rebut the fact that the parties themselves agreed that the subject property would be treated as one, single Eligible Parcel entitled to one payment of $15,750, Claimant attacks, without basis, the maps and photos included in BP's opening brief, accusing BP of altering the documents.  Opp. Mem. at 4-5.  BP did nothing of the sort.  Specifically, Claimant quibbles with whether the western boundary of the lots at issue ends right before or right after a road (Long Beach Road) running north to south along the western side of the property.  The answer does not make the slightest difference to the question of whether the lots at issue are one or multiple Eligible Parcels, or how this claim is calculated.  The slight discrepancy between BP's map and Claimant's map turns on minor differences regarding how sections are depicted in the Tobin data used by the parties versus the depiction of section boundaries in the data set used by Claimant.  Next, Claimant argues that the lots at issue extend slightly beyond the eastern and southern boundaries of the Eligible Parcel as depicted in the Tobin data.  BP does not disagree.  The extension over the southern end is shown in the photo in BP's opening brief, and a higher resolution picture of BP's map shows the same thing.  Moreover, this fact is irrelevant.  The point of the Tobin data for the lot in question is that BP and the Plaintiffs Steering Committee agreed, and memorialized in Appendix C to the Wetlands Framework, that the property at issue would be treated as one Eligible Parcel entitled to one minimum payment.  The fact that one row of the lots overlaps one of the boundaries drawn on the Tobin data changes nothing.  Claimant also argues that "Long Beach Subdivision has road right[s] of way on the original plat."  *Id.* at 5.

BP agrees. Indeed, the map that Claimant criticizes also contains road right of ways. And even if it did not, that would have no impact on the question at hand.

Finally, BP did not in any way ratify or waive its objection to Policy 443. In every communication to the Settlement Program about Policy 443, BP noted its strong objection to the Policy. Ex. 3 at 14 to BP's Mem. In Support (Record Doc. No. 15903-5). Rather than engaging in premature litigation about a Policy that had not yet been applied to actual claims, BP elected to defer to the Claims Administrator, while expressly and fully reserving its rights to challenge the Policy at a later time. *Id*. When BP deferred to the Claims Administrator, it could not have been clearer that it was preserving its objections and its rights to challenge the Policy at a later time:

> By deferring to the Claims Administrator, BP understands the CSSP will issue each policy subject to BP's reservation of its right to object to the policy and to application of the policy in the future, including, but not limited to, instances where the policy is applied to specific claims. Moreover, BP does not waive any right to challenge these policies in individual claim appeals and/or to seek Court resolution with regard to the content of these policies or their application to specific claims under Section 4.3.4., and BP notes that there is no time limit under Section 4.3.4 to seek Court resolution and BP may request Court resolution pursuant to Section 4.3.4 at any time. (*Id.*) BP specifically reserves its right to do so.

*Id.* at 14-15.

Claimant's judicial estoppel argument likewise is meritless. Judicial estoppel requires a number of elements, none of which is present in this case. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 332 (5th Cir. 2007). Here, there was no prior inconsistent position taken in an earlier judicial proceeding. Indeed, there was no prior judicial proceeding, and the position taken by BP during the Policy 443 drafting process was the exact same that it is taking now, namely that Policy 443 is invalid. And BP has not

9

obtained any unfair advantage by deferring to the Claims Administrator, a process created by and frequently used by Class Counsel. BP was express about its retention of rights, and the Settlement Program itself concurred with BP's interpretation for more than a year.

Nor does the fact that the Settlement Program found each award at issue to be below the threshold for appealing to the Settlement Program Appeal Panel support Claimant's position. This Court has independent jurisdiction pursuant to Section 18.1 of the Settlement Agreement to address misinterpretations and misapplications of the Agreement. This jurisdiction is not dependent on whether the Appeal Panel likewise has jurisdiction.[6]

## Conclusion

For all of the above reasons, BP respectfully requests that the Court vacate and reverse the 839 awards listed on Exhibit 1 to BP's opening memoranda, and instruct the Settlement Program to reissue one, single Eligibility Notice in the amount of $15,750.

Date: April 4, 2016                                              Respectfully submitted,


                                                                 /s/ Don K. Haycraft
Allison Rumsey                                                   Don K. Haycraft (Bar #14361)
ARNOLD & PORTER LLP                                              R. Keith Jarrett (Bar #16984)
601 Massachusetts Avenue, NW                                     LISKOW & LEWIS
Washington, DC  20001                                            701 Poydras Street, Suite 5000
Telephone:  (202) 942-5000                                       New Orleans, Louisiana 70139-5099
Facsimile:  (202) 942-5999                                       Telephone: (504) 581-7979
                                                                 Facsimile: (504) 556-4108
*OF COUNSEL*
                                                                 ***Attorneys for BP Exploration & Production***
                                                                 ***Inc. and BP America Production Company***

---

[6] Although not necessary to reach this issue, the Settlement Program erred in refusing to permit BP to appeal to the Appeal Panel. Appendix C is clear that the parties agreed to treat the property at issue as one single Eligible Parcel. The Settlement Program has awarded more than $6 million to date with regard to this single Eligible Parcel. As such, the $25,000 pre-RTP threshold for filing an appeal pursuant to Section 6 of the Settlement Agreement has easily been exceeded. The fact that the Settlement Program broke this award for a single Eligible Parcel into hundreds of pieces cannot deprive BP of its rights pursuant to Section 6 of the Settlement agreement.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & Serve Xpress in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on April 4, 2016.

/s/ Don K. Haycraft
Don K. Haycraft