UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig** ) | | |
| **"Deepwater Horizon" in the** ) | **MDL NO. 2179; SECTION J** | |
| **Gulf of Mexico, on April 20, 2010** ) | | |
| ) | **JUDGE CARL J. BARBIER** | |
| **This document relates to:** ) | | |
| ) | **MAG JUDGE SHUSHAN** | |
| **12 -970,** *Bon Secour Fisheries, Inc. et al.* ) | | |
| ***v. BP Exploration Production Inc.;*** ) | | |
| **cases within Pleading Bundle B1** ) | **Oral Argument Requested** | |
| ) | | |
| **and All Civil Actions, including** ) | | |
| **13-6008; 13-6009; 13:6010; 13:5367;** ) | | |
| **14:1106; 14:357; 14:358; 14:359;** ) | | |
| **14:1321 and 15:6651** ) | | |

### MEMORANDUM IN SUPPORT OF MOTION FOR ADDITIONAL TIME

#### I.   Introduction

On March 29, 2016 this Court issued P.T.O. 60 requiring all non-governmental economic loss and property damage claims to file individual lawsuits and to file sworn statements by May 2, 2016.[1] Brent Coon & Associates ("BCA") respectfully requests an additional ninety (90) days, or another amount of time that the Court would otherwise deem reasonable, to comply with P.T.0. 60.

BCA and associated counsel represent approximately 3,600 claimants that are not part of the DHECC who would apparently be subject to this order. This number based on the opt-out and excluded categories BCA is able to determine internally. If indeed BCA's claimants the only ones charged with filing individual lawsuits, it would be a monumental task in itself. However, BCA's clients are not the only ones affected by P.T.O. 60. According to the Court's Order which denied BCA's request for a Motion for a Status Conference, **Magistrate Judge Shushan noted that there**

---

[1] Rec. Doc. 16050

1

**are an estimated 85,000 valid opt-out and excluded plaintiffs.**[2] Even a herculean effort by BCA, other law firms, and all unrepresented individuals will almost to fall short given this extraordinarily quick time frame.

BCA supports this Court's efforts to finally resolve the non-class cases; however, the time given to comply is simply too short in light of the current status of this litigation. Since the dissolution of the GCCF, BCA and associated counsel have only been able to settle a mere handful of cases outside of the DHECC out of thousands of claimants. BP clearly eschewed its responsibilities under the Oil Pollution Act of 1990, 33 U.S.C. 3701 *et seq.* (OPA) by failing to pay claimants for OPA demands sent to them directly after the dissolution of the GCCF and the formation of the DHECC.

## II.   Argument

### A. SUMMARY

There are number of procedural and logistical hurdles to clear in complying with P.T.O. 60. An outline of these issues is presented in this summary, and several of them are fleshed out further below.

Procedural hurdles include: (1) how newly filed cases in 2016 will be in compliance with OPA's three year statute of limitation; (2) how newly created cases can be transferred out of the Eastern District and/or remanded back to State Court if they did not originate in those courts; (3) P.T.O. 60 does not appear to make exception for claims currently before the DHECC; and (4) for states with a mechanism for dealing with a mass joinder of claims (such as Texas) claimants will simply have their claims unbundled up only to be re-bundled at a later date.

Logistical hurdles include: (1) the simple enormity of trying to settle and/or file new lawsuits for thousands of BCA clients and more than 85,000 total claims in less than a month; (2)

---

[2] Rec. Doc. 15820

sorting out which claims are actually subject to the order (i.e. whether they are opt-out or excluded from the class; (3) fighting inertia to get clients to understand the impact of their failure to act (by signing sworn statements) immediately after no action has been taken on their claims for years; (4) communicating with thousands of clients regarding how to fill out the sworn statement with technical facts about their claims to be in compliance with P.T.O. 60; (5) coordinating all of this efforts with BCA's more than 30 joint venture partner law firms spread out all over the country and (6) the logistics of filing thousands of complaints via CM/ECF in a short time frame.

### B. PROCEDURAL ISSUES

According to the Oil Pollution Act of 1990 states that "[n]o claim may be presented under this section for recovery of damages unless the claims is presented within 3 years after the date on which the injury and its connection with the discharge in question were reasonably discoverable with the exercise of due care."   33 U.S.C. 3701 §1012(h)(2).   Additionally, OPA allows "a claim presented in accordance with subsection (a) and (1) each person to whom the claim is presented denies all liability for the claim, or (2) the claim is not settled by an person by payment within 90 days after the date upon (A) the claim was presented…the claimant may elect to commence an action in court against the responsible party…" 33 U.S.C. 3701 §1013 (h)(c).

The 5th Circuit has further clarified this issue by ruling that a "Claimant Must Comply with Both the Presentment Requirement and the Three-Year Period of Limitations Under the OPA." *Chuc Nguyen et al. v. American Commercial Lines, L.L.C.,* 15-30070 at 13 (5th Cir. Oct. 8, 2015).  An "…action for damages is marred under the OPA unless it is brought: Within  3  years  after…  [t]he dates on which the loss and the connection of the loss with the discharge in question are reasonably discoverable with the discharge in question are reasonably discoverable with the exercise of due care…" *Chuc Nguyen et al. v. American Commercial Lines, L.L.C.,* 15-30070 (5th Cir. Oct. 8, 2015) *(citing* 33 U.S.C. §2717(f)(1).

The filing of new complaints and subsequent dismissal timely filed "Mass Joinder" Lawsuits opens up the possible defense by BP that they would not otherwise have.  More importantly it opens up a defense that could potentially leave claimants with no remedy.

### C. LOGISTICAL ISSUES

BCA has long supported the Court allowing opt-out and excluded claimants to move forward.[3]  As such BCA applauds the Court for taking action on this matter; however, as currently drafted, P.T.O. 60 appears to be just one more hurdle being put in place to prevent legitimate claims against BP to move forward.  Had BP lived up to its obligations under OPA and resolved, or even made **ANY** effort to resolve the excluded and opt-out claims, not included in the class settlement over the last four years, then BCA and the Court would be left with a relative few remaining claims to sort out prior to the May 2 deadline.  Instead, nearly all of the excluded and opt-out claims are forced to spring into action to comply.

Claimants with individual claims that will ultimately measure in the thousands or even hundreds of thousands of dollars will need to pay $400 to file an individual claim.  It is very unlikely that many of the 85,000 claimants filed individual claims, and instead were short form joinder cases or mass joinder cases.  As a result, if all 85,000 are unable to settle, P.T.O. 60 operates as tax of nearly $34,000,000 against the victims of the *Deepwater Horizon* Oil Spill.

The actual filing of the individual complaints with the CM/ECF system will result in a complete nightmare scenario if hundreds of law firms file tens of thousands of complaints in late April and the first two days of May.  It is unknown whether the CM/ECF can even handle that kind of volume.

BCA as a firm has a somewhat unique issue with the ability to comply with P.T.O. 60 because we are unable to fully determine which clients are subject to it.  BCA law firm has

---

[3] Rec. Doc. 14927.

repeatedly asked Class Counsel, BP, and the Claims Administrator to reconcile which BCA clients are associated with opt-out, revoked opt out, and excluded categories of the Settlement Agreement. BCA filed a Motion to Compel Reconciliation of Brent Coon & Associates Opt-Out, Revoked Opt-Out and Excluded Clients on March 19, 2015.[4] To date that motion has not been ruled on and as a result who exactly is in the class remains ambiguous.

BP's OPA program did no favors on this issue. Their denial letters typically directed claimants to the DHECC. At the same time they did not provide any identifying information other than the claimants' names. With nearly 10,000 (many of Vietnamese origin with identical surnames) clients BCA understandably has many claimants with the same name.[5] Repeated requests to BP for clarification fell on deaf ears. Additionally, there were numerous contradictory documents issued by the DHECC and BP's OPA program. On the same claim the DHECC would declare a claimant excluded, but BP would refer the claim to the DHECC as a class member.

BCA's Memorandum in Support of Motion to Compel Reconciliation is attached as Exhibit A to this motion. As outlined in the Motion to Compel Reconciliation, BCA is unable to determine who is included in the class settlement. Opt-outs had to be individually signed by the claimants to be accepted. BCA sent approximately 2,500 client signed opt-out forms prior to the deadline, but we have no way of knowing exactly which clients sent them directly to the DHECC. Additionally, anyone who sent a timely opt-out form (either directly or through BCA was encouraged to opt back in via a letter sent directly to them. BCA has no way of knowing which clients sent this revocation form and sent it back. BCA respectfully asks the Court to rule on our prior Motion to Compel Reconciliation and force BP and the DHECC to immediately begin to work with us to sort out which claims are part of the class and which are not. This is important both to avoid unnecessary filings and to present accurate information on the sworn statement required by P.T.O. 60.

---

[4] Rec. Doc. 14263.
[5] By way of example, BCA represents or represented more than a dozen claimants with the name Thanh Nguyen.

An additional complications is that several BCA claimants sent in releases based on eligibility notices from the DHECC only to learn that their claim had finally been deemed opted out of the class. Some of these claims have been in limbo for several years. It is unclear whether or not they have actually released their claims or not. This further demonstrates that the DHECC, the party in the best position to know, is virtually clueless as to who exactly is a member of the class settlement.

P.T.O 60 requires "each such plaintiff" to file an individual lawsuit meaning one Complaint per plaintiff. P.T.O. 60 makes exceptions for certain related parties, but does not appear to make an exception for all related parties. Specifically, there is no provision outlining a provision for related businesses. Examples include an owner with more than one business or a group of interrelated business. We respectfully request additional clarification on this issue to insure compliance with the Court's order, but minimizing the need to separate and later combine related lawsuits.

In addition to filing an individual lawsuit, P.T.O. 60 mandates the filing of a Sworn Statement to be filed with the PSC and with BP. The Form Sworn Statement found as Exhibit A to the P.T.O. 60 will confuse many Claimants. For businesses, it will be confusing from the very start, as there is no place on the entire form that asks for the business name. The form requires a number of very specific legal facts that a lay plaintiff simply will not understand much less know the answer to. The litany of wholesale changes in this litigation is unprecedented and has resulted in a very confused client base. Simply put, most of our clients will not know the answers to technical questions such as whether they opted-out of the class or/are excluded (in fact no one knows exactly because BP hasn't been forced to challenge this to date), how their case was filed (and more specifically what cause number), and how and when a presentment was made. BCA has most of the answers, but it is simply not feasible to communicate individually with thousands of clients all of this information in less than 30 days.

The CM/ECF system is the only method for filing the required individual complaints. It is unknown whether the system can handle the volume of filings that is likely to come at the 11th hour, potentially 85,000 or more cases. A slowdown of the system is a virtual certainty, but it is unknown to what extent. For BCA, manually filing approximately several thousand individual petitions will be virtually impossible with just one CM/ECF account in the Eastern District of Louisiana and will require additional BCA attorney so enroll as counsel for these cases just to make it feasible to comply with P.T.O. 60's individual filing requirement. BCA has reached out to the Clerk's office to determine how to get additional CM/ECF accounts in the Eastern District of Louisiana for BCA attorneys.

### III.     Conclusion

Most of the cases the P.T.O. 60 apparently applies to, have been filed since 2013, but no action has taken place on them in the past three years. These claimants have been in limbo and will be difficult to corral on such short notice. BCA has finalized a methodology to use our database to complete most of the information required in the sworn statements, but to do so the forms must be mailed out to the clients. It is expected that all of these forms will be mailed out over the weekend. BCA also anticipates the filing of the first individual lawsuits as early as next week. This Motion is not filed for delay, but so that justice may be done. BCA is working diligently to comply with PTO 60 and request some additional time to complete the required documentation and filing for our several thousand clients.

Dated: April 8, 2016.