# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010 | *   **MDL NO. 2179** |
|  | * |
|  | *   **SECTION: J** |
|  | * |
| *This document relates to:* | * |
|  | * |
| Nos. 12-970, 15-4143, | *   **HONORABLE CARL J. BARBIER** |
| 15-4146 and 15-4654 | * |
|  | *   **MAGISTRATE JUDGE SALLY** |
|  | *   **SHUSHAN** |
|  | * |
|  | * |
|  | * |
|  | * |

---

## PRELIMINARY APPROVAL ORDER

### [As to the Proposed HESI and Transocean Punitive Damages and Assigned Claims Class Action Settlements]

On May 29, 2015 and September 4, 2015, Class Counsel for the *Deepwater Horizon*

Economic and Property Damages Settlement Class ("DHEPDS Class")[1] and the Plaintiffs'

Steering Committee (collectively, "PSC") filed two essentially and functionally identical

settlement agreements in these proceedings: (1) the "HESI Punitive Damages and Assigned

Claims Settlement (Amended As of September 2, 2015)" (and Addenda and Exhibits thereto)

---

[1] The DHEPDS Class was defined and formally certified by this Court in its <u>Order</u> and <u>Judgment</u> of December 21, 2012 [Rec. Doc. 8139]. This class certification and the class action settlement for which it was certified have been affirmed on appeal and are final and effective for the purposes of the DHEPDS Agreement, as amended on May 2, 2012, including exhibits thereto [Rec. Docs. 6430 through 6430-45] which provide for the assignment, to the DHEPDS Class, of the claims against HESI that are proposed to be resolved by the HESI Settlement Agreement. *See In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *cert. denied*, 135 S.Ct. 754 (2014). The class definition of the DHEPDS Class, as set forth in said December 21, 2012 <u>Order and Reasons</u>; [Granting Final Approval of the Economic and Property Damages Settlement Agreement]; <u>Order and Judgment Granting Final Approval of Economic and Property Damages Settlement and Confirming Certification of the Economic and Property Damages Settlement Class</u>, and <u>Appendices</u> thereto [Rec. Docs. 8138 and 8139] is hereby incorporated by reference and as fully set forth in this Order.

(collectively, "Proposed HESI Settlement" or "HESI Settlement Agreement") [Rec. Docs. 15322-1 through 15322-6]; and (2) the Transocean Punitive Damages and Assigned Claims Settlement Agreement [Rec. Docs. 14644-1 through 14644-5] (and Addenda and Exhibits thereto) (the "Transocean Settlement Agreement") (collectively, "the Proposed Settlements").[2]

A Motion for an order (a) conditionally and preliminarily certifying the "New Punitive Damages Settlement Class" (sometimes referred to as the "New Class") for settlement purposes only, (b) appointing class representatives and settlement class counsel for the New Punitive Damages Settlement Class, (c) preliminarily approving the Proposed Settlements, (d) scheduling a Fairness Hearing, and (e) approving the proposed New Punitive Damages Class Action Settlement Notice and Notice Plan, was submitted by the PSC [Rec. Doc. 16161].

In sum, the Proposed Settlements create a "Punitive Damages Settlement Class" or "New Class" for purposes of effectuating allocation and distribution of a portion of the aggregate settlement benefits totaling $1,239,750,000,[3] as between and among the New Class and the previously-certified DHEPDS Class, in order to resolve the bundle of claims that the DHEPDS Class received by assignment from BP, and punitive damages claims that the New Class Members assert against HESI and Transocean in their recently-filed Class Action Complaints.[4]

Magistrate Judge Wilkinson, serving as the Allocation Neutral under the Settlement Agreements, has determined that $902,083,250 will be allocated to the New Class, and that $337,666,750 will be allocated to the existing DHEPDS Class [Rec. Doc. 15652].

---

[2] For purposes of the Proposed Settlement and this Order, "HESI" means and includes Halliburton Energy Services, Inc. and Halliburton Company; and "Transocean" means and includes Triton Asset Leasing GmbH, Transocean Deepwater Inc., Transocean Offshore Deepwater Drilling Inc., and Transocean Holdings LLC.

[3] HESI is contributing $1,028,000,000 and Transocean is contributing $211,750,000.

[4] As noted herein, these settlements additionally provide for additional payments of class action attorneys fees, if and as approved by the Court, up to the aggregate amount of $124,950,000, in addition to the Class Benefits, with HESI contributing $99,950,000 and Transocean contributing $25,000,000.

## A.   *DEEPWATER HORIZON* LITIGATION BACKGROUND

On April 20, 2010, a blowout, explosion, and fire occurred aboard the DEEPWATER HORIZON, a semi-submersible offshore drilling rig, as it was engaged in drilling activities on the "Macondo Well" on the Outer Continental Shelf off the coast of Louisiana.  These events led to eleven deaths, dozens of injuries, and a massive discharge of oil into the Gulf of Mexico that continued for nearly three months.  On August 10, 2010, the Judicial Panel on Multidistrict Litigation centralized all federal actions (excluding securities suits) in this Court pursuant to 28 U.S.C. § 1407.  Eventually, hundreds of cases with thousands of individual claimants would be consolidated with this Multidistrict Litigation ("MDL").

On October 19, 2010, the Court issued Pretrial Order 11 [Rec. Doc. 569] ("PTO 11"), creating pleading bundles for various types of claims. Relevant here is the "B1 bundle," which encompasses all private claims for economic loss and property damage, as well as "Bundle C," which includes public claims for damages brought by local government entities.  (PTO 11 ¶ III(B1) and (C)).  In accordance with PTO 11, the PSC filed the B1 Master Complaint on December 15, 2010 [Rec. Doc. 879], a First Amended B1 Master Complaint on February 9, 2011 [Rec. Doc. 1128], and, in accordance with PTO 33, a voluntary Local Government Entity Master Complaint [Rec. Doc. 1510]. Numerous Defendants filed motions to dismiss the First Amended B1 Complaint and the Local Government Master Complaint.  On August 26, 2011, and December 9, 2011, the Court issued Orders and Reasons granting in part and denying in part these motions [Rec. Docs. 3830, 4845].  Halliburton and Transocean also answered the First Amended Complaint [Rec. Docs. 1398 and 4118].  Phase one of a multi-phase trial in Transocean's Limitation and Liability Action, Case No. 10-2771, was originally scheduled for February 27, 2012.

During the pre-trial phase, the parties engaged in extensive discovery and motion practice, including taking well over 300 depositions, producing over 90 million pages of documents, and exchanging more than 80 expert reports on an intense and demanding schedule. Depositions were conducted on multiple tracks and on two continents.  Discovery was kept on course by weekly discovery conferences before Magistrate Judge Shushan.  The Court also held monthly status conferences with the parties.  During and after the approval process for the DHEPDS (more fully discussed *infra*), the Court conducted bench trials and issued findings on Phases I and II of its multiphase trial plan, as described in its (corrected) September 9, 2014 Findings of Fact and Conclusions of Law:  Phase One Trial [Rec. Doc. 13381-1] ("Phase One Findings") and January 15, 2015 Findings of Fact and Conclusions of Law: Phase Two Trial [Rec. Doc. 14021] ("Phase Two Findings").

On March 2, 2012, the Court was informed that BP and the PSC had reached an Agreement-in-Principle on proposed settlements. Consequently, the Court adjourned Phase I of the trial, because of the potential for realignment of the parties in this litigation and substantial changes to the current trial plan. [Rec. Doc. 5955].  In April 2012, the PSC filed a new class action complaint to serve as the vehicle for the proposed Economic and Property Damage Settlement.  *See* No. 12-970, *Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al.*, and submitted the proposed Settlement for preliminary approval, which was granted by Order dated May 2, 2012 [Rec. Doc. 6148].

The DHEPDS class notice and settlement approval process continued throughout 2012, culminating, after full hearing and consideration, in the Court's December 21, 2012 Order and Reasons [Rec. Doc. 8138] and Final Order and Judgment [Rec. Doc. 8139] granting final approval of the DHEPDS. Appellate challenges followed, including some by the settling

defendant BP, and the DHEPDS became final in 2014.  The DHEPDS claims deadline occurred on June 8, 2015, and the Claims Administration process continues.  To date, over 330,000 DHEPDS claims have been reviewed, and over 123,000 claims, totaling over $6.7 billion, have been paid to DHEPDS class members [Rec. Doc. 16064-1].

The DHEPDS released class members' claims against BP and most of the other defendants, but retained punitive damages claims against HESI and Transocean, and further assigned BP's compensatory and punitive damages claims against the two companies to the DHEPDS Settlement Class.   Pursuant to the Agreement, BP would satisfy plaintiffs' compensatory damages claims against BP, HESI and Transocean, but plaintiffs could pursue their punitive damage claims against Halliburton and Transocean.  The Agreement further provided that plaintiffs would not execute on any future damages award against HESI and Transocean, including an award on BP's assigned claims, unless and until a court finally determined that Transocean and HESI could not recover such damages from BP. (*See also* Proposed Settlement Ex. 21, Rec. Doc. 6430-39).

    On September 7, 2014, HESI filed its original Settlement Agreement resolving claims assigned to the DHEPDS Settlement Class and punitive damages claims made by the New Class.

On September 9, 2014, the Court issued its Phase One Findings [Rec. Doc. 13381-1], which held, among other things, that under the facts of this case, the conduct of HESI and Transocean did not rise to the level of gross negligence, recklessness, or other egregious conduct. Hence, no punitive damages against Transocean or HESI were warranted, nor was there any basis to invalidate the BP-HESI or BP-Transocean indemnity agreements and releases.

Due to the uncertainty of litigation, Transocean ultimately reached a similar settlement agreement to that made by HESI, resolving the same sets of claims made against Transocean.

The Proposed Settlements, described below, feature Aggregate Payments totaling $1,239,750,000 for both the DHEPDS and New Classes; inter-class allocation by a court-appointed Allocation Neutral; and claims administration and distribution under court auspices.

### B.   OVERVIEW OF THE PROPOSED SETTLEMENTS[5]

The Proposed Settlements resolve all the DHEPDS Class' assigned claims against HESI and Transocean and all punitive damages claims by a "New Class" of private individuals, businesses and local government entities (the Proposed Punitive Damages Settlement Class) for punitive damages attendant to certain property damage resulting from the "*Deepwater Horizon Incident.*"[6]  To commence the class action settlement notice and approval process and, if conferred upon final approval, effectuate the HESI and Transocean Settlements, the PSC seeks to conditionally certify the New Proposed Punitive Damages Settlement Class pursuant to Federal Rule 23(a) and (b)(3).

The Proposed Punitive Damages Settlement Class is defined as:

> (1)   All Natural Persons, businesses, trusts, non-profits, or any other Entity who, anytime between April 20, 2010 through April 18, 2012, owned, leased, rented or held any proprietary interest in Real Property (a) alleged

---

[5] The Proposed Settlement Agreements are lengthy and detailed documents with many defined terms of art.  This summary is intended only to convey a general description of the Proposed Settlements.  Parties, claimants, etc. should refer to the Proposed Settlement documents [Rec. Docs. 15322-1 through 15322-6, and Rec. Docs. 14644-1 through 14644-5] to understand any specific component or term of the Proposed Settlement.

[6] The Proposed Settlements cumulatively define "Deepwater Horizon Incident" as:

the events, actions, inactions and omissions leading up to and including (i) the blowout of the MC252 WELL; (ii) design, planning, preparation, or drilling of the MC252 Well; the services contracted for or provided by Transocean or by any other person with respect to the MC252 Well, the Deepwater Horizon Mobile Offshore Drilling Unit ("MODU") and its appurtenances (including the riser and blowout preventer); the (iii) the explosions and fire on board the Deepwater Horizon on or about April 20, 2010; (iv) the sinking of the Deepwater Horizon on or about April 22, 2010; (v) efforts to control the MC252 Well; (vi) the release of oil, other hydrocarbons and other substances from the MC252 Well and/or the Deepwater Horizon and its appurtenances; (vii) the efforts to contain the MC252 Well; (viii) response activities, including the VoO Program; (ix) any damages to the MC252 Well, any reservoir, aquifer, geological formation, or underground strata related to the foregoing; and (x) the subsequent clean up and remediation efforts and all other responsive actions taken in connection with the blowout of the MC252 Well.

(HESI Settlement, Definitions ¶(o),[ Rec. Doc. 15322-1 at 10], Transocean Settlement, [Rec. Doc. 14644-1 at 9-10]).

to have been touched or physically damaged by oil, other hydrocarbons, or other substances from the MC252 Well or the *Deepwater Horizon* MODU and its appurtenances (including the riser and blowout preventer), (b) alleged to have been touched or physically damaged by substances used in connection with the *Deepwater Horizon* Incident, or (c) classified as having or having had the presence of oil thereupon in the database of the *Deepwater Horizon* Unified Command Shoreline Cleanup Assessment Team ("SCAT" database).

(2)    All Natural Persons, businesses, trusts, non-profits, or any other Entity who, anytime between April 20, 2010 through April 18, 2012, owned, chartered, leased, rented or held any proprietary interest in Personal Property located in Gulf Coast Areas or Identified Gulf Waters, alleged to have been touched or physically damaged by (a) oil, other hydrocarbons, or other substances from the MC252 Well or the *Deepwater Horizon* MODU and its appurtenances (including the riser and blowout preventer), or (b) substances used in connection with the *Deepwater Horizon* Incident.

(3)    All Commercial Fishermen or Charterboat Operators who, anytime from April 20, 2009 through April 18, 2012, (a) owned, chartered, leased, rented, managed, operated, utilized or held any proprietary interest in commercial fishing or charter fishing Vessels that were Home Ported in or that landed Seafood in the Gulf Coast Areas, or (b) worked on or shared an interest in catch from Vessels that fished in Specified Gulf Waters and landed Seafood in the Gulf Coast Area.

(4)    All Natural Persons who, anytime between April 20, 2009 through April 18, 2012, fished or hunted in the Identified Gulf Waters or Gulf Coast Areas to harvest, catch, barter, consume or trade natural resources including Seafood and game, in a traditional or customary manner, to sustain basic family dietary, economic security, shelter, tool, or clothing needs.

Cumulatively excluded from the Proposed Punitive Damages Settlement Class are the following:

(1)    Any New Class Member who timely and properly elects to opt out of the New Class under the procedures established by the Court;

(2)    Defendants in MDL 2179;

(3)    The Court, including any sitting judges on the United States District Court for the Eastern District of Louisiana, their law clerks serving during the pendency of MDL 2179, and any immediate family members of any such judge or law clerk;

(4)     Governmental Organizations, meaning **(i)** the government of the United States of America; **(ii)** the state governments of Texas, Louisiana, Mississippi, Alabama, and Florida (including any agency, branch, commission, department, unit, district or board of the state); and **(iii)** officers or agents of the U.S., states, and/or Indian tribes appointed as "Natural Resource Damages Trustees" pursuant to the Oil Pollution Act of 1990 as a result of the *Deepwater Horizon* Incident.  Governmental Organizations do *not* include any local government such as a county, parish, municipality, city, town, or village (including any agency, branch, commission, department, unit, district or board of such local government);

(5)     Any Natural Person or Entity who or that made a claim to the GCCF, was paid, and executed a valid GCCF Release and Covenant Not to Sue, provided, however, that a GCCF Release and Covenant Not to Sue covering only Bodily Injury Claims shall not be the basis for exclusion of a Natural Person;

(6)     BP Released Parties and individuals who were employees of BP Released Parties during the Class Period;

(7)     HESI and Individuals who were employees of HESI during the Class Period; and

(8)     Transocean and individuals who were employees of Transocean during the Class Period.

## C.     MONETARY TERMS:  AGGREGATE PAYMENTS/CLASS BENEFITS

The Proposed Settlements release the *Deepwater Horizon* Incident Assigned Claims[7] of the DHEPDS Class and the Punitive Damages Claims[8] of the "New Class" against HESI and Transocean in return for Aggregate Payments totaling $1,239,750,000 (the "Aggregate Payments") to resolve both the alleged liability to the New Class for Punitive Damages Claims

---

[7] As defined in the Settlement Agreements, Assigned Claims means all of the claims defined in Section 1.1.3 of Exhibit 21 to the DHEPDS, but does not include the "Retained Claims" defined in Section 1.1.4 of Exhibit 21 to the DHEPDS.

[8] As defined in the Settlement Agreements, Punitive Damages Claims means any claim, counterclaim, cross-claim, demand, charge, dispute, controversy, action, cause of action, suit, proceeding, arbitration, alternative dispute resolution, inquiry, investigation or notice, whether of a civil, administrative, investigative, private or other nature, and whether pending, threatened, present or initiated in the future, and whether known or unknown, suspected or unsuspected, under any current or future local, state, federal, foreign, tribal, supranational or international law, regulation, equitable principle, contract or otherwise, for Punitive Damages whether brought directly, by subrogation, by assignment or otherwise.

and the alleged liability to the DHEPDS Class for the Assigned Claims against HESI under the DHEPDS.  The Proposed Settlements are to be administered together, and administrative costs (for class notice, claims administration and taxes) are to be paid from the Aggregate Payments.

###    D.     STRUCTURE AND ALLOCATION

The Proposed Settlements provide for a neutral third party to allocate the Aggregate Payments as between the two Classes; that the Parties may not cancel or terminate the Settlement Agreement based on the Allocation Neutral's allocation; and that the defendants have no responsibility or liability for the allocation.  Magistrate Judge Joseph C. Wilkinson, Jr. was appointed by the Court to serve as the "Allocation Neutral" to allocate the HESI Aggregate Payment between the New Class and the DHEPDS Class, subject to the terms of the Settlement Agreements,[9] and it is the Court's determination that the Allocation Neutral has appropriately performed his assigned function.

In accordance with the Court's September 29, 2015 Order [Rec. Doc. 15398], Magistrate Judge Wilkinson conducted a status conference to receive input from counsel and issued an appropriate scheduling order for the allocation process [Rec. Docs. 15459 and Transcript from Oct. 8, 2015 Status Conference].  Judge Wilkinson received and reviewed submissions from interested parties, and, after careful consideration, determined that a reasonable allocation would be $902,083,250 (representing 72.8% of the Aggregate Payments) to the New Class, and $337,666,750 (representing 27.2 % of the Aggregate Payments) to the existing DHEPDS Class. [Rec. Doc. 15652].   Judge Wilkinson thoughtfully and comprehensively addressed the issues, and the Court agrees with his allocation.

---

[9] *See* September 29, 2015 *Order Appointing Magistrate Judge Joseph C. Wilkinson, Jr. As Allocation Neutral* [Rec. Doc. 15398].

1.      **Establishment of a Court-Supervised Claims Program for the Punitive Damages Settlement Class.**

The Settlement Agreements provide for establishment of a Court-supervised claims program for the New Class.  Pursuant to the Settlement Agreements, a Claims Administrator would be appointed by the Court to develop and administer a Distribution Model for the Court-supervised Claims Program.  On October 23, 2015, the Court appointed Michael J. Juneau to serve as the Claims Administrator for the New Punitive Damages Settlement Class [Rec. Doc. 15481].  The Claims Administrator has sought and received input on a number of issues, [Rec. Doc. 15657], and is in the process of finalizing a Distribution Model, which will be presented, for approval, to the Court.

The plan for distribution of payments to the Punitive Damages Settlement Class will include general standards and guidelines to establish a claim for Real Property damage, for Personal Property damage, including Vessel damage, for commercial fishing loss, for charter fishing loss, and for subsistence loss.  HESI and Transocean shall not have any responsibility or liability whatsoever for the distribution or method of distribution of the Aggregate Payment to claimants.

2.      **Distribution of Settlement Benefits to the DHEPDS Class.**

The occurrence of the Effective Date is a condition precedent to distribution of any funds to the DHEPDS Class.  After the Effective Date, the portion of the Aggregate Payment allocated to the DHEPDS Class, minus any relevant previously-incurred Administrative Costs will be placed in a sub-fund of the Settlement Fund created for the DHEPDS Class subject to further order of the Court.

3.      **Appeals of Claims Determinations.**

In developing the Court Supervised Claims Program for the New Class, the Claims Administrator shall establish rules for appealing the determinations of the Claims Administrator to the Court.  The Court's decision on any such appeal involving the amount of any payment to any individual claimant (other than a determination that a claimant is not entitled to any payment due to a failure to meet the class definition) shall be FINAL and BINDING, as the Settlement Agreements provide that there shall be NO appeal to any other court, including the U.S. Court of Appeals for the Fifth Circuit.

4.      **Attorneys' Fees.**

Finally, HESI and Transocean have agreed to pay any award for common benefit and/or Rule 23(h) attorneys' fees of up to $99,950,000 (HESI), and $25,000,000 (Transocean) respectively, as may be approved by the Court.  The Settlement agreements state, and the Court credits, that the parties began negotiating these amounts, (which are in addition to the $1,028,000,000 HESI class benefit and the $211,750,000 Transocean class benefit), only after there was agreement on all material terms of the Proposed Settlements.  Any award of attorneys' fees or costs from this separate fund is subject to separate motions and determination by the Court under Rule 23(h).

E.      **LEGAL STANDARDS**

1.      **Preliminary Approval**

Federal Rule of Civil Procedure 23 governs class actions, including the requirements for class certification and settlement.  "'Before an initial class ruling, a proposed class settlement may be effectuated by stipulation of the parties agreeing to a temporary settlement class for purposes of settlement only.'"  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2012 WL 92498, at *8 (E.D. La. Jan. 10, 2012) (quoting 4 William B. Rubinstein et

al., *Newberg on Class Actions* § 11:22 (4th ed. 2010)); *see also Manual for Complex Litigation (Fourth)* [MCL 4th] § 21.612 (2004) ("Parties quite frequently enter into settlement agreements before a decision has been reached whether to certify a class.").  "Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits."  MCL 4th § 21.612.  However, even in this context the requirements for class certification in Rule 23(a) and (b) must be satisfied, except that a court need not inquire whether the case, if tried, would present intractable management problems under Rule 23(b)(3)(D).  *Id.* § 22.921 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997)).  Additionally, the terms of the proposed settlement must comport with Rule 23(e).

Courts have developed a two-step process when considering a proposed settlement of a class action, which this Court follows.  *See Chinese-Manufactured Drywall*, 2012 WL 92498, at *7.  First, if the class was not previously certified, as is the case with the Proposed Punitive Damages Settlement Class here, the Court "'should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).'"  *Id.* (quoting MCL 4th § 21.632).  Also, the Court must "'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.'"  *Id.* (quoting MCL 4th § 21.632).  Second, if preliminary approval is granted and following the notice and opt-out period, the Court holds a Rule 23(e)(2) final fairness hearing to decide whether to approve or disapprove the settlement.  *See id.*  Final determination on class certification is also reserved for the final fairness review.

## 2.     Rule 23(a) and (b) Criteria for Class Certification

With respect to class certification, Rule 23(a) requires that:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "The first two requirements focus on the characteristics of the class; the second two focus instead on the desired characteristics of the class representatives." *Chinese-Manufactured Drywall*, 2012 WL 92498 at *8 (quotations and citations omitted).  This assures that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests. *Id.*

As to Rule 23(a)(1)'s "numerosity" requirement, the mover typically must show that "joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'" *Id.* at *9 (quoting *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La.2006)).  However, "a good-faith estimate of the class size is sufficient when the precise number of class members is not readily ascertainable."  1 William B. Rubenstein, *Newberg on Class Actions* §§ 3:12, 3:13 (5th ed. 2011). Numerosity frequently receives summary treatment and is often uncontested.  *Id.*

Rule 23(a)(2)'s "commonality" requirement is met "when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quotations and citations omitted).

Rule 23(a)(3)'s "typicality" requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Id*. The typicality inquiry does not test whether the class members suffered varying harms; diversity in damages "will not affect their legal or remedial theories, and thus does not defeat typicality." *Id*.

Rule 23(a)(4)'s "adequacy" requirement is satisfied where: "(1) the named plaintiffs' counsel will prosecute the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members." *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex. 2010); *see also Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005). Finally, Rule 23(a) also contains an implied requirement that the class be adequately defined and clearly ascertainable. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012).

As mentioned, in addition to the requirements of Rule 23(a), one of the subsections of Rule 23(b) must be satisfied in order to be certified as a class. Here, the PSC moves for Settlement Class certification under Rule 23(b)(3), which provides:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> . . .
>
> (3)   the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "To succeed under Rule 23(b)(3), Plaintiffs must sufficiently demonstrate both predominance of common class issues and that the class action mechanism is the superior method of adjudicating the case." *Chinese-Manufactured Drywall*, 2012 WL 92498 at *9 (citations and quotations omitted).  The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citation omitted). "To predominate, common issues must form a significant part of individual cases." *In re Vioxx*, 239 F.R.D. at 460 (citing *Mullen*, 186 F.3d at 626).  Because class certification is for settlement-only purposes, the Court need not inquire whether the case, if tried, would present intractable management problems. *Amchem*, 521 U.S. at 620; *Deepwater Horizon II*, 739 F.3d 790, 817-818 (5th Cir. 2014).  "Together subsection (a) and (b) requirements insure that a proposed class has sufficient unity so that the absent class members can fairly be bound by decisions of the class representatives. *Chinese- Manufactured Drywall*, 2012 WL 92498 at *8 (citations and quotations omitted).

### 3.     Rule 23(e) Criteria for Preliminary Approval of a Proposed Class Settlement

Turning to the terms of the settlement, Rule 23(e) places the burden of persuasion on the movers that the proposed settlement is "fair, reasonable, and adequate." *Id*. at *7.  However, the standards for granting preliminary approval are not as stringent as those applied to a motion for final approval:  "The questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *In re OCA, Inc.*

*Securities & Derivative Litig.*, No. 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008)

(quotations and citations omitted); *see also In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634

(2d Cir. 1980) (describing preliminary approval as "a determination that there is what might be

termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as

to its fairness") (citations omitted).  If the proposed settlement "discloses no reason to doubt its

fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class

representatives or segments of the class, does not grant excessive compensation to attorneys, and

appears to fall within the range of possible approval, the court should grant preliminary

approval."  *OCA*, 2008 WL 4681369, at *11 (citations omitted).  "If the Court finds portions of

the proposed settlement problematic, it may indicate preliminary disapproval of the agreement

and recommend that the parties make certain revisions or modifications."  *Chinese-*

*Manufactured Drywall*, 2012 WL 92498, at *7.

Courts have held that "approval of settlement class actions under Rule 23(e) requires

closer judicial scrutiny than approval of settlements reached only after class certification has

been litigated through the adversary process."  MCL 4th § 21.612.  However, "[e]xtended

litigation between or among adversaries," as occurred here, "might bolster confidence that the

settlement negotiations were at arm's length."  *Id.*  "If, by contrast, the case is filed as a

settlement class action or certified for settlement with little or no discovery, it may be more

difficult to assess the strengths and weaknesses of the parties' claims and defenses, to determine

the appropriate definition of the class, and to consider how class members will actually benefit

from the proposed settlement."  *Id.*; *see also id.* § 22.921 ("If the case has been litigated

extensively, the judge may have sufficient reliable information to determine whether the class

should be certified and whether the settlement terms are the fair, reasonable, and adequate result of arms-length negotiations.").

### 4.    Rule(c)(2)(B) and (e)(1) Criteria Regarding Notice

Where parties seek certification of a settlement class pursuant to Rule 23(b)(3) and approval of a settlement pursuant to Rule 23(e), notice of the class settlement must meet the requirements of both Rule 23(c)(2)(B) and Rule 23(e)(1). *In re CertainTeed Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 480 (E.D. Pa. 2010); *accord In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 231 (S.D. W. Va. 2005); *see also* MCL 4th § 21.633 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  Rule 23(c)(2)(B) states:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
>
> (ii)     the definition of the class certified;
>
> (iii)    the class claims, issues, or defenses;
>
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)     that the court will exclude from the class any member who requests exclusion;
>
> (vi)    the time and manner for requesting exclusion; and
>
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. Proc. 23(c)(2)(B). The notice requirements of Rule 23(e)(1) are less stringent:

> The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal.

Fed. R. Civ. P. 23(e)(1).  Subject to the minimum requirements of due process, notice under Rule (e)(1) gives the Court discretion over the form and manner of notice.  *See Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir. 1979).  Significantly, compliance with Rule 23(c)(2)(B) can satisfy the Due Process Clause.  *See In re Enron Corp. Secs., Derivs., & "ERISA" Litig.*, No. MDL-1446, 2008 WL 4178151, at *2 (S.D. Tex. Sept. 8, 2008).  Class Action Settlement notices must also provide key dates and deadlines for opting out, and for objecting, and apprise class members of the date, time and place of the Fairness Hearing.[10]

### F.  ORDER WITH REASONS

NOW, THEREFORE, based upon (i) the HESI and Transocean Settlement Agreements (including the respective requirements for Final Approval Orders); (ii) the supporting briefs and papers; (iii) the proposed forms of Class Notice; (iv) the program for directing Notice to the Class submitted to the Court; (v) this Court's familiarity with the questions and determinations of fact and law arising, litigated, and in some cases tried and adjudicated in these proceedings; (vi) this Court's observation of the conduct of counsel for the parties in prosecuting and defending this litigation, coordinating discovery, preparing for and presenting at trial, and negotiating at arm's length a proposed settlement; (vii) this Court's familiarity with the settlement approval process, class notice programs, and claims administration of the prior class settlements with BP in this litigation; (viii) the recommendations of counsel for the moving parties; (ix) the requirements of substantive and procedural law; (x) this Court's familiarity with the factual and legal issues implicated in the maritime punitive damages claims and controversies the proposed settlement would resolve; and (ix) this Court's satisfaction that the proposed settlement appears to fall within the range of possible final approval, and that a hearing should be

---

[10] *See* the "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) included on the Federal Judicial Center's website.  *See* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

held after the best practicable notice to members of the Class to finally determine if the terms of the proposed Settlement are fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23(e),

THE MOTION FOR PRELIMINARY APPROVAL, CLASS CERTIFICATION, AND APPROVAL OF CLASS NOTICE [Rec. Doc. 16161] IS **GRANTED**, AND IT IS HEREBY ORDERED AND DECLARED THAT:

## I.   <u>Jurisdiction and Venue</u>

1.      The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1331 & 1333, and 33 U.S.C. § 2717(b).

2.      Venue is also proper in this District pursuant to 28 U.S.C. §§ 1391 & 1407, and 33 U.S.C. § 2717(b).

## II.   <u>Preliminary and Conditional Certification of Class for Settlement Purposes Only</u>

3.      On a preliminary basis and for settlement purposes only, for purposes of enabling and effectuating the issuance of notice and setting of a formal hearing to determine whether the terms of the Proposed Settlement should be finally approved as fair, reasonable, and adequate, the proposed Punitive Damages Settlement Class is conditionally certified under Federal Rule of Civil Procedure 23(a) & 23(b)(3).  The class is defined as follows:

(a)      PUNITIVE DAMAGES SETTLEMENT CLASS DEFINITION[11]

(1)      All Natural Persons, businesses, trusts, non-profits, or any other Entity who, anytime between April 20, 2010 through April 18, 2012, owned, leased, rented or held any proprietary interest in Real Property (a) alleged to have been touched or physically damaged by oil, other hydrocarbons, or other substances from the MC252 Well or the *Deepwater Horizon* MODU and its appurtenances (including the riser and blowout preventer), (b) alleged to have been touched or physically damaged by substances used in connection with the *Deepwater Horizon* Incident, or (c) classified as

---

[11] The Class Definition includes certain capitalized defined terms, the meaning of which are given in the Settlement Agreements. [Rec. Docs. 15322-1 through 15322-6, and Rec. Doc. 14644-1 through 14644-5].

having or having had the presence of oil thereupon in the database of the *Deepwater Horizon* Unified Command Shoreline Cleanup Assessment Team ("SCAT" database).

(2)     All Natural Persons, businesses, trusts, non-profits, or any other Entity who, anytime between April 20, 2010 through April 18, 2012, owned, chartered, leased, rented or held any proprietary interest in Personal Property located in Gulf Coast Areas or Identified Gulf Waters, alleged to have been touched or physically damaged by (a) oil, other hydrocarbons, or other substances from the MC252 Well or the *Deepwater Horizon* MODU and its appurtenances (including the riser and blowout preventer), or (b) substances used in connection with the *Deepwater Horizon* Incident.

(3)     All Commercial Fishermen or Charterboat Operators who, anytime from April 20, 2009 through April 18, 2012, (a) owned, chartered, leased, rented, managed, operated, utilized or held any proprietary interest in commercial fishing or charter fishing Vessels that were Home Ported in or that landed Seafood in the Gulf Coast Areas, or (b) worked on or shared an interest in catch from Vessels that fished in Specified Gulf Waters and landed Seafood in the Gulf Coast Area.

(4)     All Natural Persons who, anytime between April 20, 2009 through April 18, 2012, fished or hunted in the Identified Gulf Waters or Gulf Coast Areas to harvest, catch, barter, consume or trade natural resources including Seafood and game, in a traditional or customary manner, to sustain basic family dietary, economic security, shelter, tool, or clothing needs.

Excluded from the Punitive Damages Settlement Class are the following:

(1)     Any New Class Member who timely and properly elects to opt out of the New Class under the procedures established by the Court;

(2)     Defendants in MDL 2179, and individuals who are current employees of Halliburton, or who were employees of Halliburton during the Class Period;

(3)     The Court, including any sitting judges on the United States District Court for the Eastern District of Louisiana, their law clerks serving during the pendency of MDL 2179, and any immediate family members of any such judge or law clerk;

(4)     Governmental Organizations, meaning **(i)** the government of the United States of America; **(ii)** the state governments of Texas, Louisiana, Mississippi, Alabama, and Florida (including any agency, branch, commission, department, unit, district or board of the state); and **(iii)** officers or agents of the U.S., states, and/or Indian tribes appointed as

"Natural Resource Damages Trustees" pursuant to the Oil Pollution Act of 1990 as a result of the *Deepwater Horizon* Incident.  Governmental Organizations do *not* include any local government such as a county, parish, municipality, city, town, or village (including any agency, branch, commission, department, unit, district or board of such local government);

(5)     Any Natural Person or Entity who or that made a claim to the GCCF, was paid, and executed a valid GCCF Release and Covenant Not to Sue, provided, however, that a GCCF Release and Covenant Not to Sue covering only Bodily Injury Claims shall not be the basis for exclusion of a Natural Person;

(6)     BP Released Parties and individuals who were employees of BP Released Parties during the Class Period;

(7)     HESI and individuals who were employees of HESI during the Class Period; and

(8)     Transocean and individuals who were employees of Transocean during the Class Period.

4.     The Court hereby adopts the defined terms and definitions set forth in the Proposed Settlement Agreements and their Exhibits within the Class Definition set forth hereinabove, which shall be provided to potential class members *via* the Notice Plan, such as by posting on the Settlement website.

5.     The Court finds that the terms of the HESI and Transocean Proposed Settlements are fair, reasonable and adequate to the DHEPDS Class.  The Court has preliminarily reviewed the allocation performed by Magistrate Judge Wilkinson, [Rec. Doc. 15652], and finds the allocation to be fair, reasonable, and appropriate, on a preliminary and conditional basis;  the Court will consider final approval of the allocation, as well as the Settlements, at the formal Fairness Hearing.

6.     The Court preliminarily and conditionally finds, for settlement purposes only, that the terms of the HESI and Transocean Proposed New Punitive Damages Settlements are sufficiently fair, reasonable, adequate, and consistent with governing law to warrant: (a)

preliminary approval; (b) the preliminary and conditional certification of the settlement class; (c) the scheduling of the Fairness Hearing; (d) the distribution of Notice to the New Class.

7.     The Court is satisfied for preliminary purposes that a settlement class made up of persons or entities who have maritime standing to make claims for punitive damages under general maritime law, consistent with the *Robins Dry Dock* and *TESTBANK* decisions (and other jurisprudential progeny) should be conditionally certified.[12]

8.     Specifically, this Court finds and holds that the Punitive Damages Settlement Class satisfies the following requirements of class action case law, Federal Rule of Civil Procedure Rule 23(a), and Federal Rule of Civil Procedure 23(b)(3):

(a)     <u>Ascertainability</u>:  The Punitive Damages Settlement Class, as defined above, is discrete and ascertainable.  It is objectively defined by reference to 1) a discrete time frame (between April 18, 2010 through April 18, 2012); 2) ownership of real or personal property within specific geographical boundaries that were touched by oil or other MC252 Well or *Deepwater Horizon* incident-related substances; and 3) specified fishing-related activities, such that those receiving notice can determine whether they are members of the Class.

(b)     <u>Numerosity</u>:  The Punitive Damages Settlement Class consists of thousands of individuals and businesses whose property or fishing operations were involved or harmed by the MC252 substances.

---

[12] *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927); *Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985) (en banc); and *In re Deepwater Horizon*, 808 F. Supp. 2d 943, 958-961 (E.D. La. 2011).

(c)   <u>Commonality</u>:  The commonality requirement is satisfied because members of the Punitive Damages Settlement Class share numerous common legal and factual questions, the resolution of which would advance the ultimate determination of punitive damages, which the Supreme Court has emphasized relates primarily to defendants' conduct. *See Exxon Shipping*, 554 U.S. 471 at 504.  This litigation arises out of a single incident, albeit one that unfolded over months, and what has become a similarly defined term of art (the "Deepwater Horizon Incident") in these and the prior BP settlement.  Such questions evaluating the conduct of a defendant under federal maritime law, including the standard under which punitive damages are available, and the answers to these common questions are both critical to the litigation and have shaped the terms and conditions of the proposed Settlement.  The Class is united in interest in the pursuit of and recovery of punitive damages.  Moreover, punitive damages vindicate another common interest that of society itself in punishment and deterrence as it relates to conduct that transgresses societal norms and expectations.  *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 568 (1995); *Exxon Shipping*, 554 U.S. at 493.  Accordingly, Rule 23(a)(2)'s commonality requirement is satisfied.

(d)   <u>Typicality</u>: The claims of the Punitive Damages Settlement Class Representatives are typical of the claims of the Class.  The Class Representatives' claims arise from the same underlying event and course of conduct; the Class Representatives share the same maritime legal

theories as the claims of the Class Members; and the Class

Representatives include at least one representative asserting each category

(property owners and fishing enterprises) covered by the proposed

Settlement.  Typicality "focuses on the similarity between the named

plaintiffs' legal and remedial theories and the theories of those whom they

purport to represent." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d

620, 625 (5th Cir. 1999).  Both the representatives and the class comprise

those who may have standing to assert punitive damages claims that arise

from the Deepwater Horizon Incident under general maritime law.  In

addition, the Class Representatives will advance the interests of all Class

Members. Rule 23(a)(3)'s typicality requirement is therefore satisfied.

(e)     <u>Adequacy</u>:  "Rule 23(a)(4) is satisfied where:  (1) the named plaintiffs'

counsel will prosecute the action zealously and competently; (2) the

named plaintiffs possess a sufficient level of knowledge about the

litigation to be capable of taking an active role in and exerting control over

the prosecution of the litigation; and (3) there are no conflicts of interest

between the named plaintiffs and the absent class members." *Hamilton v.

First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex., 2010); *see

also Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005).

Here, it is understood and expected that the Class Representatives are and

will remain reasonably informed about the settlement terms and process;

that they will fairly and adequately protect the interests of the Class;  have

no conflicts with each other;  and are represented by qualified counsel who

are competent to represent the Class and prosecute this litigation.  The Class Counsel regularly engage in complex litigation similar to the present case and have demonstrated their dedication by devoting substantial effort, energy, and resources to the prosecution of this action, including discovery, trials, and appeals; and by negotiating, finalizing, and implementing the HESI and Transocean settlements.  *See Stimson v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002).  Accordingly, Rule 23(a)(4)'s adequacy requirement is met.

(f) <u>Predominance</u>:This is, unlike most mass torts, a single-incident disaster, governed predominantly by a single body of federal law and, as to the punitive damage claims, general maritime law.  Common factual and legal questions include liability for punitive damages arising from the operation and blowout of the MC252 Well, the sinking of the *Deepwater Horizon*, and its sequelae.  In the absence of settlement, the availability of punitive damages would be argued and ultimately determined on appeal, with a complete factual record—the record in the limitation trial.  The settling defendants' conduct did not vary among Class members.  The facts of what happened, why, and who is liable in what degrees are of record. These facts, the degree of responsibility this Court has found on the part of HESI and Transocean, and legal questions of the allowance of punitive damages to punish and deter defendants under general notions of law, are all common.  Because defendants' conduct did not differentiate among Class members, it would be neither necessary nor appropriate to require or

allow their individual adjudication or piecemeal resolution. Such questions are best and properly decided—or resolved—in a single, inclusive scenario—on a class basis. In short, the proposed Punitive Damages Settlement Class is sufficiently cohesive to warrant adjudication by representation. The claims are related, cohesive, and all arise out of the same nucleus of operative facts. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620-21 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297, 338 (3d Cir. 2011) (en banc), *cert. denied; Murray v. Sullivan*, 132 S.Ct. 1876 (2012), No. 11-1111, 2012 WL 779996 (U.S. Apr. 2, 2012); *see also Exxon Shipping*, 554 U.S. at 518. Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied.

(g)    Superiority: This Court need not decide whether a class is superior from the standpoint of trial management, nor need the parties agree or concede on this point. When confronted with a "request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citation omitted); *Deepwater Horizon*, 739 F.3d at 818; *Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at *8 (N.D. Tex. Aug. 4, 2011); *In re Chinese- Manufactured Dry Wall Prods., Liab. Litig.*, 2012 WL 92498 (E.D. La. Jan. 10, 2012). This is an appropriate case for class treatment, as the litigation is unusually complex and expensive, and it involves many thousands of plaintiffs whose claims arise from the same event, under the same body of

maritime law.  Class treatment therefore allows many plaintiffs to recover

who might otherwise be unable to do so.  Moreover, a settlement that

provides a comprehensive, court-supervised, and internally consistent

mechanism for allocating and distributing a punitive damages award is

superior to many thousands of separate determinations of damages.  The

litigation of these issues on a case-by-case basis is insufficient and

inappropriate given the trials-derived findings to date.  Such piecemeal

litigation would needlessly tax the resources of the judiciary and the

Parties.  A class action procedure, with clearly defined roles for the

parties, their counsel, and the Court, and the due process protections for

absent class member claimants uniquely afforded by Rule 23, is available

here, and it is superior to other available methods for fairly and efficiently

resolving the punitive damages controversy.  This is particularly true in

the case of punitive damages, to which there is no individual entitlement,

and which serve a non-compensatory purpose.  *See Exxon Shipping*,

554 U.S. at 513.  The class members do have a legitimate common interest

in the fair and equitable distribution of a reasonable and proportional

punitive damages award—or settlement—among them—and the class

action's procedure best serves these goals in the settlement setting.

Rule 23(b)(3)'s superiority requirement is satisfied.

### III.  Preliminary Approval of Class Action Settlement and Scheduling of Fairness Hearing

9.     The Court preliminarily approves the HESI and Transocean Settlement

Agreements filed with this Court on May 29, 2015 and September 4, 2014 [Rec. Docs. 15322-1

through 15322-6, and Rec. Docs. 14644-1 through 14644-5], as fair, reasonable, adequate, entered in good faith, free of collusion, and within the range of possible judicial approval.

10.      The Court finds, upon its own observation and experience over the course of this litigation, including monthly status conferences, weekly discovery conferences, extensive pleadings and motion practice, the design, organization, scheduling, and conduct of a multi-phase trial, the intensive discovery and preparation for these trial phases, and the numerous issues and proceedings in the course of administration and implementation of the prior DHEPDS settlement, that counsel for the Parties have significant experience in litigating complex litigation, class actions in general, and maritime proceedings in particular, have comprehensive knowledge of the factual and legal issues in this litigation, and brought this experience and information to bear in negotiating a settlement suited to the circumstances, including the stage of maturity of this litigation.

11.      The Parties engaged in a vigorous and arms-length settlement process, free of collusion.  The Parties engaged in substantial discovery and motion practice to evaluate the merits of the punitive damages claims and defenses, and extensively investigated and analyzed the facts and legal issues surrounding those claims and defenses. Pretrial discovery and trial preparation included well over 300 depositions, the production, review, and analysis of millions of documents; the retention and discovery of numerous scientific, technical, and industry experts; and the extensive associated investigation and analyses of the facts and legal issues surrounding relevant claims and defenses.  The trial of Phases I and II, occurring over many months, and the resulting detailed Findings of Fact and Conclusions of Law for Phases I and II, attest to the depth of information possessed by the parties—and the Court—at this stage of the *Deepwater Horizon* proceedings.

12.     At this stage, the Settlement Agreements appear fair, have no obvious deficiencies, do not improperly grant preferential treatment to the Class Representatives or to segments of the Class, and do not grant excessive compensation to attorneys.  Indeed, they consistently provide for a neutral and systematic determination of an equitable distribution of the aggregate settlement amounts, and a claims process supervised by the Court.  As with the DHEPDS settlement with BP, class counsel/common benefit fees and costs will not be deducted from or applied against payments to the class, but are paid separately, over and above, the class fund, by HESI and Transocean, in an amount (equivalent to approximately 10%) of the aggregate Class benefit that appears reasonable and compares favorably to settlements of similar magnitude.  It falls within the range of possible judicial approval.  The Proposed Settlements thus merit preliminary approval, particularly in light of the law collected in the *Manual for Complex Litigation  (Fourth)* §§ 21.612, 21.62, and 21.632 (2004).

13.     This preliminary approval is subject to further and final consideration at a Fairness Hearing (the "Fairness Hearing"), which shall be held at **9:30 a.m.** on **Thursday, October 20, 2016**, before this Court in Courtroom C268 of the United States District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana, 70130.  The New Class will be provided notice of the date, time, place and purpose of the Fairness Hearing as set forth in the Notice Plan approved by and implemented pursuant to this Order.

14.     At the Fairness Hearing, this Court will consider:  (1) whether to grant final approval of the Proposed Settlement pursuant to Rule 23(e) as fair, reasonable, adequate, and in the best interests of the Class and to authorize all acts necessary to consummate and effectuate the terms and conditions of the Proposed Settlement; (2) whether the Court should certify the Punitive Damages Settlement Class for settlement purposes only; (3) whether the Court should

enter a Final Judgment approving the Settlement and dismissing the Action with prejudice while retaining jurisdiction to enforce the Final Judgment, Settlement Agreements, and any follow-on litigation; (4) whether the fees and expenses submitted by Class Counsel should be approved; (5) the merits of any objections to the Settlements; and (6) such other matters as the Court may deem necessary and appropriate.

15.     In considering whether to grant final approval to the Settlement Agreement after the Fairness hearing, the Court will review and consider the six "*Reed* factors":

(1)     [T]he existence of fraud or collusion behind the settlement;

(2)     the complexity, expense, and likely duration of the litigation;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the probability of plaintiffs' success on the merits;

(5)     the range of possible recovery; and

(6)     the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors, Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)); *see also Union Asset Mgmt. Holding A.G. v. Dell*, 669 F.3d 632, 639 (5th Cir. 2012); *In re Katrina Canal Breaches Litig.*, 628 F.3d at 194; *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).

## IV.     <u>Appointment of Class Counsel and Class Representatives</u>

16.     The counsel previously appointed in Pretrial Order 46 [Rec. Doc. 4226] as Plaintiffs' Co-Liaison Counsel and Interim Class Counsel, Stephen J. Herman and James Parkerson Roy, are hereby appointed as Lead Settlement Class Counsel.

17.     The counsel previously appointed and re-appointed by the Court to serve on the Plaintiffs' Steering Committee and to serve the common benefit, as described in its Pretrial

Orders Nos. 8, 9, 46, 55, and September 29, 2015 [Rec. Docs. 506, 508, 4226, 11557, and 15384], are hereby appointed to serve as Class Counsel for the Punitive Damages Settlement Class under Rules 23(e) and 23(g), and shall act on behalf of the Class Representatives and all members of the Settlement Class.

18.     The following individuals, identified as individual and representative Plaintiffs in the Class Action Complaints, filed herein on September 4, 2015 are hereby appointed as the Class Representatives of the conditionally certified Punitive Damages Settlement Class, for settlement purposes only:  John M. Petitjean, David Yates, Edward Reels, Jeb Morgan, Geralyn Morales, and Joseph Taliancich.

19.     This Order is entered for the purposes of initiating, implementing, and facilitating the procedures contained in Fifth Circuit law and those recommended in the *Manual for Complex Litigation (Fourth)* to give notice to the New Class and proceed toward the Fairness Hearing, to assist the Class Members in learning of their rights and options under the Settlement, and to assist the Court in making its independent, informed, and final determination as to whether the Settlement Agreement merits final approval and whether the Punitive Damages Settlement Class certification should be confirmed under Rules 23(a), (b)(3), and (e), for the collective purpose of effectuating the settlement. If this Settlement Agreement is terminated or is not consummated for any reason, the foregoing certification of the Class and appointment of Class Counsel and Class Representatives shall be vacated and of no further effect with respect to any party to, or claim asserted in, this action.

20.     The Court has previously approved the Escrow Fund provisions of the Settlement Agreements, and the appointment of UBS AG as Escrow Agent with the authority and duties set

forth in the Agreements [Rec. Docs. 13649, 14906]. The Court will retain continuing jurisdiction over the Settlement Funds.

**V.**      **Approval of Class Notice**

21.      The Court approves the form and content of the New Class Notices as attached to the Declaration of Shannon R. Wheatman [Rec. Doc. 16161-2] as well as the Class Notice Plan described in same Exhibit, as satisfying the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(1), and due process.

22.      The Class Notices clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) for the New Class, the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the New Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

23.      Using the extensive data on class members' names and addresses gathered throughout the litigation, the Class Notice Plan contemplates direct mailed notice to individual Class members, to the extent known, and their attorneys, to the extent known. In addition, the Notice Plan provides for published Notice in selected regional and local media, with a notice effort focusing on the main impact areas for maritime law claimants. A complete copy of the Proposed Settlements with exhibits will be provided to any individuals or entities wishing to determine whether they are class members and what their rights are under the Proposed Settlement. An "earned media" program will also be implemented, including multiple press releases, radio public service announcements and broadcast spots with narrative 15, 30, and 60-second scripts. There will also be a case website where potential class members can obtain additional information and documents that will be regularly updated to provide useful

information about the Settlement. This Notice Plan provides the best notice practicable under the circumstances pursuant to Fed. R. Civ. P. 23(c)(2)(B).

24.     In addition, the Court finds that the Class Notice and the Class Notice Plan comply with Fed. R. Civ. P. 23(e)(1)'s requirement that the Court direct notice to New Class Members in a reasonable manner.  The Class Notice Plan is reasonably calculated to inform interested parties of the pendency of the settlement and afford them an opportunity to determine whether they are class members, seek all relevant information about the Proposed Settlements, determine their rights under the Proposed Settlement, and present their objections, if any.

25.     In conclusion, the Court finds that the Class Notice Plan will provide notice in a reasonable manner to all class members who would be bound by the Settlement, including individual notice to all members who can be identified through reasonable effort, thus constituting the best notice that is practicable under the circumstances, and orders that the Notice Plan be implemented immediately.

26.     In furtherance of the Notice Plan, the Court also directs the Claims Administrator, Michael J. Juneau, to submit the Distribution Model to the Court on or before **Wednesday, June 15, 2016**, which shall also be posted on the Settlement website at that time.

27.     The Court directs counsel for the Parties, no later than ten days before the date of the Fairness Hearing, to file with the Court evidence that the Class Notice Plan has been carried out.

28.     The Court appoints **Garden City Group** as the Class Notice Administrator to implement the Class Notice and Class Notice Plan.  This Court may, at its sole discretion, request reports or information from the Notice Administrator.  The Notice Administrator shall be

responsible for reporting and providing information to the Court at such frequency and in such manner as the Court directs.

29.     This Court shall have ongoing and exclusive jurisdiction over the Class Notice Administrator and shall retain such jurisdiction through and after the Settlement Agreement's Effective Date, in the event it occurs.

## VI.    Procedures and Deadlines for Objecting, Opting Out, and Appearing at the Fairness Hearing

30.     Any New Class Member may present written objections explaining why the Agreement should not be approved as fair, reasonable and adequate; why attorneys' fees and expenses to Class Counsel should not be awarded in the amounts requested; or why judgment should not be entered as to that Class Member.  Specifically, any New Class Member wishing to object to any aspect of the Agreement must file a written statement of the objection(s) with the Court, and serve same on Class Counsel, HESI Counsel and Transocean Counsel, by first-class mail, no later than **Friday**, **September 23**, **2016**.  The written statement of the objection(s) must include (a) a detailed statement of the Class Member's objection(s), as well as the specific reasons, if any, for each objection, including any evidence and legal authority the Class Member has to support each objection and any evidence the Class Member has in support of his/her/its objection(s); (b) the Class Member's name, address and telephone number; (c) written proof that the individual or entity is in fact a New Punitive Damages Settlement Class Member, such as proof of residency, ownership of property and the location thereof, and/or business operation and the location thereof; and (d) any other supporting papers, materials or briefs the Class Member wishes the Court to consider when reviewing the objection. Any Class Member who fails to comply with these provisions shall waive and forfeit any and all rights to object to the Proposed

Settlement, shall be forever foreclosed from making any objection to it, and shall be bound by all the terms of the Proposed Settlement and by all proceedings, orders and judgments in this matter.

31.    Any New Class Member who wishes to exclude himself, herself, or itself from the Class must submit a written exclusion request, following the instructions in the Class Notice, which must be received by HESI/TO Punitive Damages & Assigned Claims Settlement, Exclusions Department, P.O. Box 102604, Dublin, Ohio 43017-5760, properly addressed and postmarked no later than **Friday**, **September 23**, **2016**. **All such written requests must be signed by the Natural Person or Entity seeking to exclude himself, herself or itself from the Class**, but may be submitted by attorneys for such Natural Persons or Entities.

32.    New Class Members who do not timely and properly Opt Out shall, in all respects, be bound by all terms of the Settlement Agreements and the Final Order and Judgment, shall be entitled to all procedural opportunities and protections described herein and provided by the Court, and all claims for which they qualify under its terms, and shall be permanently and forever barred from commencing, instituting, maintaining or prosecuting any action based on any Released Claim against any Released Parties in any court of law or equity, arbitration tribunal, administrative proceeding, or other forum.

33.    Members of the existing DHEPDS Class may present written objections as to why the Settlements should not be approved, with respect to the Assigned Claims, in accordance with the procedures and requirements set forth in Paragraph 29, above.  Members of the existing DHEPDS cannot opt out of the proposed Halliburton and Transocean Settlements, because the opt-out deadline expired when the DHEPDS Class Settlement was approved by the Court in 2012.

34.     Within ten days after the deadline for New Class Members to request exclusion from the Class, Class Counsel and Counsel for the Released Parties shall exchange a complete list of all timely and valid requests for exclusion received as of that date. This list may be supplemented after the Fairness Hearing to the extent any additional timely and valid requests for exclusion are submitted.

35.     Any New Class Member may revoke his, her, or its Opt Out from the New Class and thereby receive the benefit of the Settlement up until three (3) days prior to the Fairness Hearing; or later, if the Parties consent in their sole and unilateral discretion; or otherwise, if the Court so orders on good cause shown.

## VII.     <u>Additional Directives</u>

36.     Nothing in this Order shall be construed or used as an admission, concession, or declaration by or against any of the settling Parties:  (1) as to the certification of any other class in this or any other action for any purpose other than the effectuation of the proposed Settlement Agreement; or (2) as to any fault, wrongdoing, breach, or liability.  This Order shall not be construed as a finding or conclusion of the Court with respect to the merit or lack of merit of any claim asserted in this action or of any defense to any claim asserted in this action.  Neither the Proposed Settlements nor the Court's orders issued in connection with consideration of the Settlements, including this Order, shall be offered into evidence or used in this or any other proceeding for any purpose, including, but not limited to, the existence, certification, or maintenance of any other class for any other purpose.

37.     Consistent with this Court's supplemental and ancillary jurisdiction, its general case management authority and Rule 23(d) and (e), the Court explicitly retains continuing and exclusive jurisdiction over the Parties, the DHEPDS and New Settlement Class Members, and the HESI and Transocean Settlement Agreements to interpret, implement, administer, and

enforce the Settlement Agreements in accord with their terms, during the period before the Fairness Hearing and final review of the Settlement Agreements conclude.

38.     Upon consummation and approval of the Settlements provided for in the Settlement Agreements, the Settlement Agreements and each and every term and provision thereof and exhibits thereto shall be deemed incorporated herein as if explicitly set forth and shall have the full force and effect of an Order of this Court.

39.     For convenience, pertinent deadlines are reproduced here:

    a)     Notice to be sent out in accordance with the Notice Plan

    b)     Submission and posting of the Distribution Model by the Claims Administrator **Wednesday, June 15, 2016**

    c)     Motion papers in support of final settlement approval to be filed by **Friday, August 5, 2016**

    d)     Objections to be filed by **Friday, September 23, 2016**

    e)     Opt-Out period to be closed by **Friday, September 23, 2016**

    f)     Reply submissions to be filed by **Friday, October 16, 2016**

    g)     Fairness Hearing on **Thursday, October 20, 2016** at **9:30 a.m.**

40.     Upon motion of any Party, the Court may, for good cause, extend any of the deadlines set forth in this Order, if necessary and appropriate, upon practicable notice to the Class, such as on the Court and Settlement websites.

ORDERED this 12th day of April, 2016.

_____
**CARL J. BARBIER**
**UNITED STATES DISTRICT JUDGE**