UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

In Re:  Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf
of Mexico, on April 20, 2010                                   2:10 MDL NO. 2179

                                                                                            SECTION J

Hume C. Coleman
Claim ID 352670
Claimant ID 100238437

                                                                                         JUDGE BARBIER

     Claimant,

                                                                       MAG JUDGE SHUSAN

This Document Relates To:
12-970
_____/

## CLAIMANT HUME C. COLEMAN'S MEMORANDUM IN SUPPORT OF HIS MOTION TO AMEND BUSINESS ECONOMIC LOSS CLAIM TO ADD ZONE A REAL PROPERTY CLAIM

      Claimant, Hume C. Coleman, Claim ID 352670 (Claimant ID 100238437) by and through his undersigned counsel and pursuant to the Settlement Agreement, and Federal Rule of Civil Procedure 15, files this Memorandum in Support of his Motion to Amend his Business Economic Loss ("BEL") Claim to Add Zone A, Coastal Real Property Claim, and in support thereof would state as follows:

      1.     Claimant, Hume C. Coleman, Claim ID 352670 (Claimant ID 100238437), (hereinafter "Coleman") at all times material to the claim, owned with his brothers, Jason and Michael Coleman, a Gulf-front property that is in the

1

Coastal Real Property Claim Zone A, (herein after "The Property." The Claimant was authorized by his brothers to file their claims for loss of rental income and diminished value of The Property as a result of the BP oil spill.

2.  When the clerk assigned to this matter filed the claim, he registered and filed the claim for Coleman's Business Economic Loss, for lost income but failed include in that Claim, the claim for the Zone A Coastal Real Property diminished value of The Property. A copy of the claim is attached hereto as Exhibit "1." When the client inquired concerning the status of his claims shortly after the June 8, 2015 deadline for filing claims, the omission of the other portion of the claim was discovered.

3.  When another clerk tried to amend Coleman's claim to include the Zone A Coastal Real Property claim there was no form or procedure available to do so. The clerk and undersigned then immediately started an inquiry to find out how to amend the claim to include this overlooked element of the claimant's loss.

4.  All that is required to perfect a Coastal Real Property Claim is to give the address showing that it is in Zone A and establish the claimant's ownership of the property. The tax records have been accepted to show proof of ownership. The address of The Property clearly indicated that address was in Zone A.

5.  Although the undersigned attorney communicated with the DHECC for several months regarding how he could amend this claim, he was advised in

late August 2015, that the appropriate action was to file a paper claim with the Claims Administrator.  As a result, on August 21, 2015, a paper claim containing the amendment was filed via certified mail with Patrick Juneau.  (A copy of that letter and claim are attached hereto as Exhibit "2").  The letter and claim made it clear that the paper claim was simply an amendment of the prior claim to include a claim for the loss of value of The Property as recognized in the Court Supervised Class Action Settlement Agreement. A copy of the tax records and map attached to that letter clearly establish both ownership and location.

6. However, while the claim that was filed by Coleman on The Property is in the Incompleteness Appeal Review process, the Claims Administrator recently advised the undersigned that the diminished value issue is not covered by the Incompleteness process and that the only remedy is to seek permission from the court to amend the claim.

7. Coleman should be allowed to amend his claim to include the diminished value of The Property as the result of this property being a Zone A Coastal Real Property, as its omission from the original claim was clearly the result of excusable neglect. Additionally, the Claims Administrator's application of the Claims Procedure to deny Coleman the right to amend his claim to include his other losses on the same Property, is a contrary to the spirit and intention of the Settlement Agreement and liberality of amending claims under Federal law.

8. While Mr. Coleman was represented by counsel in this case, each claims process is supposed to be designed so that the claimant can submit it himself. Furthermore, the parties to the Settlement Agreement envisioned that Claimants and their counsel would be assisted in every way necessary to make sure that no Claimant forfeited any portion of any claim due to mistake, or confusion. In furtherance of that intent, the Agreement specifically provides under ¶ 4.3.7 that:

> **The Settlement Program**, including the Claims Administrator and Claims Administration Vendors, **shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement.** (emphasis supplied).
>
> The Claims Administration Vendors shall evaluate and process information in the completed Claim Forms and all supporting documentation under the terms in the Economic Damage Claims Process to produce the greatest ECONOMIC DAMAGE COMPENSATION AMOUNT that such information and supporting documentation allows under the terms of the ECONOMIC DAMAGE CLAIM FRAMEWORK. (emphasis in original).

9. The Claims Administrator announced a Policy for Processing Incomplete Claims on March 26, 2013. *Deepwater Horizon Economic and PropertySettlement,* (unknown). www.deepwaterhorizoneconomicsettlement.com

/docs/Announcement of Policy for Processing Incomplete Claims.pdf. Under that procedure if a claim is incomplete there should be two written notices sent out, an initial notice and a follow up, instructing the claimant to file the missing document(s) within 30 days or request an extension. "If a claimant fails to respond to the first written notification of Incompleteness, or responds but the claim is still incomplete, the Claims Administrator issues a Follow-Up Incompleteness Notice." If the claimant still fails to submit the required documents or respond he will be given an "Incompleteness Denial Notice" but told that the he has 30 days to request reconsideration.

10. The Settlement Agreement, and the procedures established by the Claims Administrator made it clear that they recognized that claimants and their counsel were not always going to submit everything that they were required to submit in order to fully document their claims. That is why the Claims Administrator established a procedure to allow claimants to get notice and the opportunity to correct their errors, at least 3 times and even if they still had not done so, to appeal under ¶ 6.1.1.1.

11. The stated policies of the Claims Administrator and the Settlement Agreement itself indicate that everything should be done in order to not only allow claimants to make claims but to also to assist them to file all of their claims and to

5

produce the "greatest ECONOMIC DAMGE COMPENSATION AMOUNT" that is allowed.  (emphasis in original).

12.     The courts and the rules of procedure also envision great liberality in allowing amendments of claims.  Rule 15(a) of the Federal Rules of Civil Procedure provides that within a certain time a party may amend his pleading as a matter of course.  Otherwise, "a party may amend his pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

13.     In *Chitimacha Tribe of Lousiana, et. al v. Harry L. Laws Company, Inc.*,  690 F. 2d 1157 (5th Cir. 1982),   the court denied  the Tribe's  motion to amend for a variety of reasons including the fact that they **would not be denied any relief,** and that the "sole effect of the amendment is to furnish a gratuitous basis for disqualifying" the judge.  (at p. 1164).  (emphasis supplied).

But the court in that case also discusses Rule 15 and its intent stating:

> Rule 15(a) envinces a bias in favor of granting leave to
> amend. Its purpose is to assist the disposition of a case on
> its merits, and to prevent pleadings from becoming ends
> in themselves.  (at p. 1163).

The Fifth Circuit distinguished *Chitimacha* from a case such as the one at bar:

> in which incomplete or inadequate pleadings, uncorrected
> by amendment, doomed the plaintiff's recovery.  (at p.
> 1164).

6

14.     The decision also set forth some of the criteria to be used in determining whether or not to permit an amendment.

> In exercising its discretion, the trial court should consider whether permitting the amendment would cause undue delay in the proceedings or undue prejudice to the nonmoving party, whether the movant is acting in bad faith or with a dilatory motive, or whether the movant has previously failed to cure deficiencies in his pleadings. The court may weigh in the movant's favor any prejudice that might arise from a denial of leave to amend. In keeping with the purposes of the rule, the court should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation. Finally, the court should consider whether the amendment adds substance to the original allegations, and whether it is germane to the original case of action. (at p. 1163).

15.     In this case, the amendment would not cause any delay as the current claim on The Property in still in the Incompleteness phase.  Nor would it cause the nonmoving party any prejudice as these Zone A claims were contemplated by the Settlement Agreement and it was clear from the original claim filed that this property was in that zone.  On the other hand denial of leave to amend would clearly harm the Claimant by denying him the right to damages to which he is clearly entitled.

16.     Additionally, as soon as this omission was discovered, the undersigned took steps and followed the instructions given by the DHECC as to how to proceed.

7

17. The amendment is also germane to the substance of the original claim and allows Coleman to obtain the economic damages that he is supposed to recover under the Settlement Agreement and contains no surprise as it was clear from his Claim that this property was in Zone A.

18. In *Union Texas Products Corporation v. Federal Energy Regulatory Commission,* 899 F.2d 432 (5th Cir. 1990), the court considered the consequences of Union Texas' failure to file a Sec. 4, rate increase application, although the information was otherwise available. The decision discussed the fact that the purpose of Sec. 4 is to give advanced notice of proposed rate changes to the Commission to determine if they are "just and reasonable." In the *Union* case a blanket affidavit was filed for the purpose of collecting inflation adjustments. Attached to it was an affidavit which contained all the required information for each of its rate schedules including those which should have appeared in the Sec. 4 rate increase application. While the regulations required Union Texas to file a Sec. 4 application and further amend its blanket affidavit once a determination was made as to which wells it would apply, due to an " inadvertent clerical error" it failed to file a rate change notice on the required form number 556 when that determination became final. Some six years after filing of the blanket affidavit the Commission advised Union Texas of its failure to file the form number FERC 559 for each of the five rate schedules and it submitted the missing forms. However

the Director then ruled that the company's collection authority had lapsed during the interim six year and that the excess amounts collected were to be refunded to its customers.

19.  Union appealed arguing that they should not be precluded from collecting the inflation adjustment even though it had inadvertently neglected to file the required form because all the required information was already on file with the Commission. The Commission upheld the director ruling that Union Texas' blanket affidavit could not be treated as the equivalent of a Sec. 4 rate filing.

20.  The Fifth Circuit overruled the Commission finding that:

> (i) the error was technical and limited to a clerical mistake, (ii) the information needed appeared elsewhere in the filing, (iii) the Commission made no unanswered request for a proper form, and (iv) a contrary result would work such an exorbitant forfeiture as to constitute a manifest injustice. (at p. 442).

21.  The court in that case held that:

> Because all of the missing information was on file with the Commission, albeit not on a single one-page form as the regulations technically require, because the other criteria of *Superior*[1] were clearly satisfied, we hold the

---

[1] In *Superior Oil Company V. Federal Energy Regulatory Commission*, 667 F. 2d 1180 (5th Cir. 1982), the issue concerning the effective date for rate increases, when the company submitted to the Commission certain rollover gas contracts between it and a gas pipeline company together with certain schedules and blanket affidavits however due to a clerical error failed to include the required Schedule 507 form. The Commission later notified Superior that it's filing was defective at which point it filed the required form. When the Commission refused to apply it retroactively, Superior would have lost $1.4 million in revenue. The

> Commission abused its discretion in imposing a $1.8 million penalty on Union Texas for failing to file a form at FERC number 557.(at p. 432)

22. As in the two cases cited, while the Program Administrator had the right to insist that Claims be filed in a certain manner and on its approved forms, both the administrator and the Court have a duty to allow Claims to be amended to fulfill the purpose and intent of the Settlement Agreement. To do otherwise would allow a rightful claim to be forfeited on a technical, minor, clerical error and to do so would work a manifest injustice.

WHEREFORE, Hume C. Coleman requests this Court to grant this Motion to Amend his Claim to add his Zone A Coastal Real Property Claim to his Business Economic Loss Claim, and or to treat the original claim on The Property as incomplete and to allow it to be processed with that original claim.

Respectfully Submitted.

---

court relied on principles of civil procedure that when an amendment to a complaint is allowed not introducing a new cause of action, the date of the commencement of the suit and not the amendment governs in applying the statute of limitations. The court also noted that the original materials were also kept on file. Because the additional form did not change the proposed rates the Commission should not have treated this as a new filing and to act otherwise would have only imposed a "severe penalty" for an "inconsequential clerical error" The court went on noting "certainly the Commission has the power to specify the form in which necessary information should be submitted and the prerogative to require that a specified format be followed…However, the Commissions punctilious insistence that the failure to follow directions in the minor respect here involved should result in such a disproportionately heavy penalty works a manifest injustice and constitutes an abuse of discretion." (at p. 1180).

**LYONS & FARRAR, P.A.**
Attorneys for Claimant

 /s/ Douglas S. Lyons
**DOUGLAS S. LYONS**
Florida Bar No. 128277
 1637 Metropolitan Blvd.
Ste. A-2
Tallahassee, Fl. 32308
(850) 222-8811
Primary:  dougl@lyonsandfarrar.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 14, 2016  and correct copy of the foregoing Claimant's Memorandum in Support of His Motion to Amend Business Economic Loss Claim to Add Zone A Coastal Real Property Claim was filed with the Clerk of the Panel via the JPML CM/ECF system, which will send notice of the same to all counsel of record.

 /s/ Douglas S. Lyons
Douglas S. Lyons

\\SERVER\Common\DSL\1 - BP Oil Spill Litigation\! 1 - Clients\Coleman, Hume Clay\Real Property Claim\pleading\memorandum\memoranduminsupportofmotiontoamend.final.docx928