UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, on APRIL 20, 2010 | * | |
| | * | |
| | * | |
| THIS DOCUMENT RELATES TO: | * | |
| ALL CASES | * | JUDGE BARBIER |
| | * | |
| | * | MAG. JUDGE SHUSHAN |

**************************************

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR RECONSIDERATION OF PRE-TRIAL ORDER NO. 60**

MAY IT PLEASE THE COURT:

The O'Reilly Family, Earline Verdin, and Metairie Bank (collectively Claimants) understand and appreciate the Court's desire to move the remaining claims associated with the Deepwater Horizon Oil Spill forward. However, for the reasons explained below they respectfully request that the Court reconsider the issuance of PTO 60 and permit the Claimants and those similarly situated to have the opportunity to be heard and apprise the Court of the effects of that order. Claimants respectfully suggest that the Court will benefit from a full consideration of these effects.

PTO 60 does three things:

- Dismisses the Amended B1 Master Complaint.

- Requires that all plaintiffs who have not released their claims, and who filed an individual lawsuit, to now file a sworn statement in the specified form by May 2, 2016.

- Requires that all plaintiffs who have not released their claims, and who filed a Short Form joinder in the B1 Master Complaint or were part of a mass joinder lawsuit, now must file an individual lawsuit, with no more than one plaintiff per lawsuit, by May 2, 2016.[1]
- Claimants not complying with these requirements will have their claims deemed to be dismissed with prejudice without further notice.

Claimants submit that PTO 60 should be reconsidered for the following reasons:

- The practical and legal effects of the dismissal of the Amended B1 Master Complaint and the requirement to file an individual lawsuit are unclear, and in some respects inequitable.
- A complaint may be dismissed *sua sponte* only on conditions that are just, which should include notice and an opportunity to respond.
- The requirement of filing an individual complaint, in conjunction with the pending, unresolved class action complaints, raises difficult issues regarding the statute of limitations.
- Dismissing all but single plaintiff lawsuits upsets claimants' right to shape their Complaints and the joinder rules found in the Federal Rules of Civil Procedure, in a costly and inefficient manner.

## I. Factual Background of Claimants

The O'Reilly Family claimants consists of eighteen individuals who are co-owners in indivision of coastal property that was oiled by the *Deepwater Horizon* Spill. Despite two hundred years of undisputed ownership of the tract, the DHCC Settlement Program has stated that the

---

[1] The Court has subsequently granted a two-week extension of the May 2 deadline to the Claimants.

O'Reilly family may not be deemed "eligible" because the same property is now, for the first time, claimed by a third party as a result of a purported survey error. This is the O'Reilly family's only claim and they have not signed any release. The O'Reilly Family believes, based on statements made by this Honorable Court at the fairness hearing, that if they do not qualify for compensation under any of the claim methodologies in the Settlement Program that they are not in fact class members. In order to preserve this argument and their right to recover, they wish to join together in a single suit, while at the same time pursuing the Wetland Property claim with the Settlement Program.

Earline Verdin is an elder member of the Pointe-Au-Chien Indian tribe who survives by consuming local seafood given to her by family and non-family members of her tribe. The impact of the Deepwater Horizon spill on her food supply is her only individual claim. Because the Settlement Program only provides compensation to the subsistence harvester of seafood and not to the recipient who also suffered a loss, Ms. Verdin opted out of the Settlement Program. To preserve her ability to assert a right of action for damage to her subsistence use, Ms. Verdin, along with many other of her tribe members who consumed subsistence harvest but did not harvest themselves, joined in Mass Joinder 2:13-cv-2038. She has not released her claims to date.

Metairie Bank is mid-sized local bank in an area impacted by the oil spill. It suffered losses due to the spill, but is excluded from participating in the CSSP by the terms of the Settlement Agreement. It first filed a Short Form joinder on April 19, 2013 based on the notices advising that this was a protective measure that anyone with a claim should make. It has never filed or joined in any lawsuit, but it is covered by the class descriptions in several class actions. Metairie Bank first presented its claim to BP on May 6, 2013, obviously after the filing of the Short Form joinder. It has not released its claims to date.

**II.     The Dismissal of Short Forms, the Master Complaint, and Mass Joinder Complaints May Only Be Ordered After Providing Notice and An Opportunity to Respond.**

The Fifth Circuit has consistently held that a district court can dismiss a complaint *sua sponte* only "'as long as the procedure employed is fair.'" *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir.1998)); *see also* 5B Charles Allen Wright & Arthur Miller, Federal Practice and Procedure § 1357 (3d ed. 2004). The Fifth Circuit has "'suggested that fairness in this context requires both notice of the court's intention [to dismiss *sua sponte*] and an opportunity to respond.'" *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir.2007) (quoting *Carroll*, 470 F.3d at 1177). The brief opportunity to <u>comply</u> with PTO 60 is, of course, not an opportunity to be heard as to the merits of PTO 60.

PTO 60 appears to dismiss not just the Master Complaint, but also the mass joinder complaints, class complaints, and Short Form Joinders. It is unclear what the date for an appeal of any such dismissals would be, or whether the tolling of the statute of limitations afforded by the class complaints has also ended. It is unclear whether a Short Form is even a lawsuit at all, rather than a Notice of Claim. In light of this and in keeping with Fifth Circuit precedent, PTO 60 should be reissued as a Proposed Order, along with a Notice of Submission deadline, and served to the impacted to provide them an opportunity to respond.

**III.    Claimants Should Be Heard As To Whether They Have Properly Joined Their Claims In A Single Suit Or May Do So Now**.

Federal Rule of Civil Procedure 20 provides in pertinent part:

(a) Persons Who May Join or Be Joined.

(1) Plaintiffs. Persons may join in one action as plaintiffs if:

>   (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
>   (B) any question of law or fact common to all plaintiffs will arise in the action.

Plaintiffs in any pending mass joinder suits, including Mass Joinder 2:13-cv-2038 clearly fit within the ambit of this rule. They assert rights jointly or severally arising out of the *Deepwater Horizon* incident, and, as the very existence of this MDL attests, there are common questions of law and fact.

PTO 60 does not provide the individualized consideration of severed or dismissed plaintiffs required by the Federal Rules of Civil Procedure, before potentially extinguishing claimants' causes of action or forcing them into burdensome, standalone lawsuits. Under Rule 21, governing disposition of misjoined parties,

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21 (emphasis added). It is unquestioned that district judges have considerable discretion "to remedy misjoinders either by severing claims or dismissing them without prejudice." *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844 (3d Cir. 2006). But "that discretion, while accorded a wide fairway, ventures into unplayable rough when it prejudices substantial rights." *Id*.

Accordingly, the Fifth Circuit has made clear that prior to severing a party, the court must conduct an individualized analysis of whether the particular plaintiffs should be joined or severed and the corresponding prejudice that would result. *See Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir.1995) (Wisdom, J.); *In re Rolls Royce Corp.*, 775 F.3d 671, 680

& n.40 (5th Cir. 2014) (specifying the "public and private" factors considered by district courts within the circuit in determining whether to sever joined claims).

In *Appelwhite,* for instance, the district court certified a punitive-damages class in a mass toxic-tort suit. 67 F.3d at 572. The court then issued a case-management order requiring that any subsequent suits be maintained as separate actions. *Id.* at 573. A group of over two hundred plaintiffs responded to the certification notice by filing a new mass-joinder arising from the same incident, which the district court dismissed. *Id.* at 572–73. The Fifth Circuit vacated and remanded the district court's dismissal of the mass-joinder suit on the basis of the "blanket" case-management order. *Id.* at 574. The Fifth Circuit held that the district court's discretion to sever joint actions "should be exercised after an examination of the individual case," and remanded for the district court to determine whether the specific two-hundred-odd "plaintiffs are properly joined and whether they should be allowed to continue in one action." *Id.* at 574. In this case, the court similarly should evaluate the possible prejudice to sub-categories of plaintiffs, such as those similarly situated to the Claimants in this motion, before requiring every plaintiff to maintain a standalone action.

The need for more particularized review is especially compelling because of the harsh penalty of dismissal "with prejudice without further notice" imposed for failing to comply with PTO 60. PTO 60 at 4. Under Rules 20 and 21, courts generally only "drop" a misjoined party by dismissing the party *without* prejudice to refile. *See DirecTV*, 467 F.3d at 844–45. And, given the possible statute of limitations problems in dismissing a severed claim, "district courts who dismiss rather than sever must conduct a prejudice analysis, including loss of otherwise timely claims if new suits are blocked by statutes of limitations." *Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 975 (9th Cir. 2015). The court should permit the parties an opportunity to address the

possible issues that would result from severing and dismissing claims prior to PTO-60's going into effect.

The parties or the Court may of course act to determine whether any specific joinder of plaintiffs is appropriate, but that has not occurred at this point, and should only occur after appropriate process. PTO 60's blanket severance requirement will lead to inequitable results. PTO 60 appears to prevent even the O'Reilly Family claimants from joining in a single lawsuit over a co-owned piece of property,[2] a right Rule 20 clearly affords them.[3] They must instead file 18 individual suits at a family cost of $7,200. Similarly, the roughly 50 Pointe-Au-Chien tribal members who are subsistence seafood recipients, manifestly among the poorest of the spill's victims, are prevented from jointly asserting their near identical small claims and instead must pay a collective $20,000. They have a right to have their concerns briefed and then considered by the Court before PTO 60 imposes such a burden.

### IV. PTO 60 Forces Claimants to Abandon Class Tolling Protections And File A Potentially Time-Barred Lawsuit.

PTO 60 is specifically aimed at individuals who are not in the BP Economic Settlement Class, by reason of either not being class members or being excluded or opt-outs. However, these same individuals are putative class members in numerous other litigation class actions filed immediately after the spill and still pending in this MDL. *See, e.g.,* 2:10-cv-1222 (filed April 28, 2010); 2:10-cv-01248 (filed April 30, 2010). Except for the *Bon Secour* Settlement Class, the Court has not ruled on certification in any pending *Deepwater Horizon* class action. Those class

---

[2] PTO 60 specifies in footnote 3: "This does not include complaints that contain related parties such as husband and wife or co-owners of a business". But the footnote modifies §6(B)(i), which only addresses suits that have already been filed - not entirely new lawsuits. PTO 60 also does not specify whether this right extends to property damage claims. Given the consequences for failure to comply with PTO 60, Claimants should not be left to rely on their interpretation that they would seem to be related parties "such as husband and wife or co-owners of a business."

[3] Rule 83 of the Federal Rules of Civil Procedure clearly provides that local rules and practices may not be inconsistent with the terms of the rules. Any determination that joinder of claims under Rule 20 is not permitted must be based on individualized consideration of the facts of a claim.

actions have been stayed pursuant to Case Management Order No. 1 section VII since October of 2010. [Rec. Doc. 569.]

Requiring putative class members to file individual lawsuits at this stage in the proceeding is troubling on a number of fronts. By requiring putative class members of the pending class actions to file individual suits, PTO 60 is essentially forcing them to preemptively "opt out" of the potential class. *See State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1233 (10th Cir. 2008) (referring to such suits as "early opt-outs"); *In re BP p.l.c. Sec. Litig.*, No. 4:13-CV-1393, 2014 WL 4923749, 3 (S.D. Tex. Sept. 30, 2014). Counsel is aware of no authority for forcing putative class members to abandon the protections and benefits of collective prosecution afforded by Federal Rule of Civil Procedure 23 prior to the class certification decision. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552 (1974) ("Not until the existence and limits of the class have been established...does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case"); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008) ("[T]he *American Pipe* doctrine protects plaintiffs from being forced to file suit before the certification decision"); *In re Katrina Canal Breaches Consol. Litig.*, No. CIVA 05-4182, 2008 WL 2692674, at *3 (E.D. La. July 2, 2008) ("[I]t was not the purpose of *American Pipe* . . . to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative"); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352-53 (1983) ("Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims").

With class certification still unresolved, PTO 60 places spill victims in a difficult position. Either the Claimants could ignore PTO 60 and face dismissal by this Honorable Court,

or Claimants could comply with PTO 60 and file suit, risking dismissal in future proceedings, for example on appeal to the Fifth Circuit, on the basis of OPA's statute of limitations. The Supreme Court has established that a class action complaint tolls the running of the statute of limitations for putative class members who file individual suits *after* class certification is decided. *See Crown, Cork & Seal Co.*, *supra*. However, the Supreme Court has not yet decided whether a putative class member who files a lawsuit *before* class certification is resolved may also rely on the class complaint to toll the limitations period, or whether such a plaintiff has "forfeited" his opportunity to rely on *American Pipe* tolling. *See In re Refrigerant Compressors Antitrust Litig.*, 92 F. Supp. 3d 652, 659 (E.D. Mich. 2015) (explaining the "forfeiture rule" adopted by the Sixth Circuit and other courts).

The federal circuits are split as to the effect of a lawsuit filed before class certification is decided, and the Fifth Circuit has yet to weigh in. *Compare In re WorldCom Sec. Litig.*, 496 F.3d 245 (2d Cir. 2007) (summarizing the circuit split and extending *American Pipe* tolling to pre-certification suits); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223 (10th Cir. 2008) (same); *and In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2008) (same); *with Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553 (6th Cir. 2005) (explaining the rationale for not extending *American Pipe* tolling to pre-certification suits, and citing multiple district court cases in accord); *with Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983) ("The policies behind Rule 23 and *American Pipe* would not be served, and in fact would be disserved, by guaranteeing a separate suit at the same time that a class action is ongoing."); *see also In re BP p.l.c. Sec. Litig.*, No. 4:13-CV-1393, 2014 WL 4923749, at *3 (S.D. Tex. Sept. 30, 2014) (noting the "split of authority on this issue" and the lack of Fifth Circuit guidance).

To put it in practical terms, a claimant would be perfectly correct to have thought: "I will have basically three years if class certification is denied to work up and present my own claim and file suit. I'll wait and see how the class action turns out."

Over five years have passed since the Deepwater Horizon event, which commenced a three-year limitations period that, absent some tolling mechanism, has lapsed. 33 U.S.C. § 2717. This Court should reconsider its decision to force putative class members of a still-pending class to rely on unsettled legal theories which may ultimately end in the dismissal of their claims. The Court's authority in managing this complex litigation is great. However, that authority cannot extend to ordering each putative class member to file an individual lawsuit and abandon the class protections upon which they have relied.

### V. PTO 60's 30-day Filing Period Strips Claimants' Opportunity To Timely Present As Required By OPA.

The Sworn Statement required of all affected by PTO 60 requires the swearer to attest whether he or she presented 90 days prior to filing a lawsuit or joining the B1 Complaint. What exactly constitutes adequate "presentment" is not settled. The Court has already ruled that presentment is a mandatory condition precedent, absent which a suit should be dismissed without prejudice to be re-filed after presentment. [Rec. Doc. 3830 § H.] Presumably there are thousands of opt out and excluded claimants affected by PTO 60 who filed a Short Form prior to the lapse of the 90 day period following adequate presentment. However, in its ruling on the motion to dismiss the B1 Master Complaint, the Court did not determine what constitutes adequate presentment or which claims had been improperly and untimely presented, and consequently did not dismiss those claims without prejudice to be re-filed prior to running of the three year statute of limitations. [*Id.*] Claimants have specifically relied on that ruling, particularly since they may also be relying on class tolling in not filing individual lawsuits to date.

PTO 60 does not allow more than 90 days before requiring the filing of an individual lawsuit. This puts claimants in an untenable position if they have not yet adequately presented, particularly if PTO 60 has dismissed all class actions. To the extent such a claimant files suit by May 2, 2016 but has not adequately presented and allowed 90 days to elapse, that claimant's dismissal "without prejudice" at some point in the future may well have the ultimate effect of a dismissal with prejudice.

### VI. It Is Inefficient To Order All Moratorium Claimants To File A $400 Lawsuit When Their Claims Have Been Dismissed And Are On Appeal.

Claimants who were injured by the government moratorium on drilling activities following the *Deepwater Horizon* explosion are excluded from the Settlement Classes and are therefore covered by PTO 60's requirements. The Court has dismissed the claims of the Test Moratorium Claimants as being without merit. [Rec. Doc. 15987.] That dismissal has recently been appealed. *See In Re: Deepwater Horizon*, CA 16-30245 (5th Cir. 3/23/2016). Requiring all Moratorium Claimants to file individual lawsuits, at $400 each, for claims that the Court has already ruled have no merit, while the appeal of that ruling remains ongoing, is an inefficient use of resources by both the Court and claimants. Moratorium Claimants should be allowed to wait and see if an appellate court overturns this Court's ruling before being forced to file individual suits for claims that have already been dismissed.

### VII. Seamen Who Signed A GCCF Release Are Covered By a Pending Class Action

PTO 60 by its terms does not apply to claimants who have signed a release. However, the Court indicates in footnote 1 that it "will issue a separate Order with respect to dismissal of released claims." This appears to indicate that all those who have signed a release are subject to dismissal without further hearing or process. Waltzer Wiygul and Garside highlights for the

Court that it has filed a narrowly tailored class action on behalf of seamen who signed a release in the GCCF process. [2:13-cv-2029.] Seamen are wards of the Court and the well-established requirements for obtaining a binding release on them were not followed by the GCCF. In addition, these seamen were made subject to common misrepresentations in the effort to induce them to sign. These issues should be fully developed before an order dismissing all claims of all persons who have signed any release. Releases obtained from seamen in the GCCF process were legally deficient and cannot prevent seamen from full recovery for their losses.

### VIII.   Many Claimants Properly Rely On The Benefits Of Collective Actions.

Many Claimants have not filed individual lawsuits because their claims are small, or their right to recover is unclear, and they do not want to undergo the rigors and expense of discovery and trial against a massive litigator like BP. These are exactly the sort of claims for which Rules 20 and 23 are designed to provide relief. The benefits of proceeding as a class or through mass joinder are undeniable for small claims. The Court should only deny those benefits when the normal process of briefing and hearings on the propriety of class certification or joinder reveals that the requirements for certification or joinder are not met.

If the Court does not believe that the class vehicle is appropriate, a negative ruling on certification for the pending class actions – after notice and hearing – would have the same eventual effect of requiring individual lawsuits, while maintaining the protections of *American Pipe* tolling and avoiding this dilemma for putative class members. And if the Court takes issue with the mass joinders filed, the Court can find misjoinder and require more reasoned partitions (and in instances individual suits), sever the actions to continue as individual suits, or dismiss individuals *without prejudice* as required by Rule 21.  See FRCP 21; Direct TV, Inc. v. Leo, 467 F.3d 842, 844-45 (3rd Cir. 2006) (Rule 21 dismissal for misjoinder is without prejudice).

**IX.    Relief Requested**

Claimants recognize the Court's intent in managing the cases that will devolve to other courts on deconsolidation. Recognizing that many mass joinders and class actions were justifiably tailored for an earlier stage in this complex litigation (including 2:13-cv-2038), PTO 60 could have required the proponents to reshape the complaints. But to broadcloth remove all collective action, without notice and comment, and without first providing an opportunity to correct any infirmities identified by the Court, imposes unintended hardships on the persons the Oil Pollution Act and General Maritime Law were intended to protect.

In this memorandum, Claimants have raised some of the most pressing concerns they have in relation to PTO 60. Other claimants and attorneys in this litigation may have further concerns or analyses that have not been raised here. Claimants request that the Court reconsider the finality of PTO 60, and instead deem PTO 60 a proposed order. Claimants request that the Court continue the May 2, 2016 filing deadline for individual lawsuits and set a deadline for submission of briefing regarding PTO 60's propriety or efficacy as currently drafted. The Court has followed this same procedure in the past at important junctures in this litigation and following it now will allow fuller consideration of issues raised by the order and will comply with the Fifth Circuit's mandate for fairness in *sua sponte* dismissals.

[SIGNATURE BLOCK ON THE NEXT PAGE]

Respectfully submitted,

*/s/ Clay Garside*
Clay Garside (LA Bar # 29873)
Waltzer Wiygul & Garside, LLC
14399 Chef Menteur Highway, Ste D
New Orleans, LA 70129
clay@wwglaw.com
Tele:   (504) 254-4400
Fax:    (504) 254-1112

Robert Wiygul (LA Bar # 17411)
Waltzer Wiygul & Garside, LLC
1011 Iberville Drive
Ocean Springs, MS 39564
robert@wwglaw.com
Tel: (228) 872-1125
Fax: (228) 872-1128

Joel Waltzer (LA Bar # 19268)
Waltzer Wiygul & Garside, LLC
1000 Behrman Highway
Gretna, LA 70056
joel@wwglaw.com
Tel: (504) 340-6300
Fax: (504) 340-6330

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing Memorandum has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 25th day of April, 2016.

*/s/ Clay Garside*