## EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
Civil Action No. 10-MD-2179-CJB-SS

**SWORN STATEMENT** FOR DISCLOSURES REGARDING REMAINING
NON-GOVERNMENTAL ECONOMIC LOSS AND PROPERTY DAMAGE CLAIMS  (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Sutter | Luther | Oneal | II |

| Phone Number | E-Mail Address |
|---|---|
| 501-315-1910 | luthersutter@yahoo.com |

| Current Mailing Address | City / State / Zip |
|---|---|
| 310 West Conway Benton AR 72015 | Benton AR 72015 |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| NONE | NONE |

**Any prior Mailing Address used by Plaintiff from April 2010 to present?**

None

**Any prior name used by Plaintiff from April 2010 to present?**

None

**The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff:**

4257

Please indicate your status:

[X] Properly opted out of the Economic and Property Damages Settlement*

☐ Not a member of the Economic and Property Damages Settlement Class

☐ Member of the Economic and Property Damages Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A

**You are pursuing a claim against at least one B1 Defendant by way of (*select all that apply*):**

☐ Joinder in the Amended B1 Master Complaint (Rec. Doc. 1128)*

☐ Individual Action, (including a new action filed because plaintiff previously only had short form joinder on file),  Eastern District of Louisiana Case No. _____.

☐ Individual Action filed because plaintiff previously was part of mass-joinder Complaint; list both prior   Eastern District of Louisiana Case No. _____ and new Individual Action Case No._____

☒ Other: U.S.D.C. Southern District of Alabama

* A copy of your timely Short Form Joinder(s) (and any Plaintiff Profile Form(s)) must be included with your service of this Exhibit A.

**Presentment:**

Did you, the plaintiff seeking relief, present this claim at least 90 days prior to filing a lawsuit or joining the B1 Complaint?

Yes ___X___.     No _____.

If Yes, please identify:

1.  The program to which presentment was made by the plaintiff: Fineburg _____

2.  The date of presentment (MM/DD/YYYY): 10 / 07 / 2011.

3.  The claim number(s) (if available). 1146315 _____.

4.  Did you execute a release of your claims upon receiving payment through any claims program:

Yes _____.     No ___X___.

*If you need more space to detail your response, please attach additional pages if necessary. Make sure to indicate the question you are continuing to answer.*

_____

_____

_____

_____

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: _____ , 2016

Location (City and State): _____

_____
Signature of Plaintiff (**Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf**)

_____
Print Name

**The service of this sworn statement and supporting information pursuant to this Order must be on both Counsel for BP and the PSC on or before <u>May 2, 2016</u>.  Service can be made via United States mail at the following addresses:**

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steve Herman or Jim Roy |
| Kirkland & Ellis LLP | The Exchange Centre, Suite 2000 |
| 300 North LaSalle St, | 935 Gravier Street |
| Suite 2400 | New Orleans, LA 70112 |
| Chicago IL 60654 | |

**Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon Plaintiffs' Steering Committee and Counsel for BP via File & ServeXpress ("F&S").**

3

## IN RE: OIL SPILL by "Deepwater Horizon"
## DIRECT FILING SHORT FORM[1]

Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982
**(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)**

| MDL 2179 | SECTION: J | JUDGE CARL BARBIER |
|---|---|---|

### CLAIM IN LIMITATION--JOINDER IN MASTER ANSWER--INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.,* No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.,* in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Sutter | Luther and Pamela | | |

| Phone Number | E-Mail Address |
|---|---|
| 501-868-4768 | luthersutter@yahoo.com |

| Address | City / State / Zip |
|---|---|
| 13208 Natural Steps | Roland, Arkansas 72135 |

| INDIVIDUAL CLAIM | ☐ | BUSINESS CLAIM | ✓ |
|---|---|---|---|

| Employer Name | Business Name |
|---|---|
| | Luther Sutter |
| Job Title / Description | Type of Business |
| | rental/ real estate investment |
| Address | Address |
| | 13208 Natural Steps |
| City / State / Zip | City / State / Zip |
| | Roland, Arkansas 72135 |
| Last 4 digits of your Social Security Number | Last 4 digits of your Tax ID Number |
| | 4257 |

| Attorney Name | Firm Name |
|---|---|
| Address | City / State / Zip |
| Phone Number | E-Mail Address |

| Claim filed with BP? | YES ☐   NO ☐ | Claim Filed with GCCF?: | YES ✓   NO ☐ |
|---|---|---|---|
| If yes, BP Claim No.: | | If yes, Claimant Identification No.: | 1146315 |

**Claim Type (Please check all that apply):**

| | | | |
|---|---|---|---|
| ✓ | Damage or destruction to real or personal property | ✓ | Fear of Future Injury and/or Medical Monitoring |
| ✓ | Earnings/Profit Loss | | Loss of Subsistence use of Natural Resources |
| | Personal Injury/Death | | Removal and/or clean-up costs |
| | | ✓ | Other: Buyer refused to close sale |

---

[1] This form should be filed with the U.S. District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130, in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Brief Description:**

1. For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury.  For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred.  For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

I had a contract to sell my property in Gulf Shores, Alabama before the Oil Spill.  The Buyer refused to close.  The property is located at 1328, 1334, and 1376 West Lagoon, Gulf Shores, AL 36542.  *I have also been foreclosed upon as a result, on property in Biloxi, MS.*

2. For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

3. For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

2

**Please check the box(es) below that you think apply to you and your claims:**
<u>Non-governmental Economic Loss and Property Damage Claims (Bundle B1)</u>

☐ 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.

☐ 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.

☑ 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.

☐ 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.

☑ 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.

☐ 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.

☑ 7 Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.

☐ 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.

☐ 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.

☐ 10. Person who utilizes natural resources for subsistence.

☑ 11. Other: _Rental Business_

<u>Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)</u>

☐ 1. Boat captain or crew involved in the Vessels of Opportunity program.

☐ 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.

☐ 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.

☐ 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.

☐ 5. Resident who lives or works in close proximity to coastal waters.

☐ 6. Other: _____

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

_Pamela P. Pfeifer Sutter_
Claimant or Attorney Signature

Luther Sutter     _Pamela Pfeifer Sutter_
Print Name

4/9/2011
Date

3

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

## SWORN DECLARATION

COMES Ted Upshaw who, under penalty of perjury of the Laws of the United States of America, declares as follows:

My name is Ted Upshaw, and I am over the age of eighteen (18). I make this statement under penalty of perjury of the Laws of the United States of America.

Mr. Sutter owns three duplexes on West Lagoon in Gulf Shores, Alabama. Mr. Sutter presented me with this opportunity, in light of his wife's success at renting these buildings. I am a real estate agent, and I rent property as well. In April, 2010, I agreed to buy these three duplexes so that Mr. Sutter could build a house located nearby. I have attached the three contracts. Decked Out has over 5000 square feet and has been rented for approximately six thousand dollars a week during the peak season of 16 weeks. Edgewater has about 3700 square feet, and it rents for about four thousand a week during the peak season of 16 weeks. SeaBreeze and Suncatcher have eight bedrooms and rents for about five thousand dollars a week. The purchase price was two million, two hundred twenty-five thousand dollars, with Mr. Sutter agreeing to continue to market and rent the property without charge. Since the rental income has now substantially decreased, I will not close until the oil spill is cleaned up.

I declare under penalty of perjury of the Laws of the United States of America that the foregoing is true and correct.

Ted Upshaw

## CONTRACT FOR THE SALE OF REAL PROPERTY

THIS AGREEMENT made between Luther Sutter   (the Seller) and Ted Upshaw (the Buyer), WITNESSETH:

1. Agreement of Sale and Purchase.  The Seller hereby agrees to sell and the Buyer agrees to purchase the following described real property, for the price, on the terms, and subject to the conditions hereinafter set forth:

**1376 West Lagoon, Gulf Shores, Alabama in Baldwin County Alabama**

2. Purchase Price.  The Buyer hereby agrees to pay and the Seller agrees to accept the sum of seven hundred fifty thousand dollars for the subject property on or before 10/1/2010.

3. Title Documents.  At Buyer's expense, Seller shall provide Buyer with title insurance.  Buyer will bear its share of the closing costs, and Seller will bear its share of the closing costs.

4. Taxes.  The Seller agrees to pay the prorated taxes due for 2010 through the date of closing, and all prior years on the property, if any, and the Buyer agrees that Buyer will pay the prorated taxes for 2010 after the date of closing and all subsequent years thereon in addition to the amounts due herein.  Should the Buyer fail to pay these taxes when due, Buyer will be in default.

5. Assignment.  This contract may not be assigned, transferred, pledged or sold by the Buyer without the written consent of the Seller first obtained, but may be assigned by the Seller without Buyer's consent.

6. Possession.  The Buyer shall be entitled to possession of the property as of closing.

7. Contingency. The Buyer shall make all payments in a timely manner.  Seller shall market and rent the subject property for three years after closing free of charge.  In the event the property does not rent for last year's rents before closing, Buyer can, in his sole discretion, rescind this contract.

8. General.  This contract has been mutually drafted.  Time is of the essence.  Should Buyer breach this agreement, Buyer agrees to pay Seller's attorney's fees and costs.  Buyer agrees to give Seller the right of first refusal, should Buyer elect to sell the subject property.  The Law of the State of Arkansas applies to this contract.

9. L. Oneal Sutter is an inactive real estate agent and an attorney.  He does not represent any party to this transaction.  Ted Upshaw is a real estate broker.

1

10.    Should any part of this contract be declared illegal or unenforceable, the remainder of this contract shall be valid.

IN WITNESS WHEREOF, the parties have hereunto set their hands this 18th day of April, 2010.

_____
Luther Sutter Seller

_____
Ted Upshaw

2

CONTRACT FOR THE SALE OF REAL PROPERTY

THIS AGREEMENT made between Luther Sutter  (the Seller) and Ted Upshaw (the Buyer), WITNESSETH:

1.      Agreement of Sale and Purchase.  The Seller hereby agrees to sell and the Buyer agrees to purchase the following described real property, for the price, on the terms, and subject to the conditions hereinafter set forth:

**1332 West Lagoon, Gulf Shores, Alabama in Baldwin County Alabama**

2.      Purchase Price.  The Buyer hereby agrees to pay and the Seller agrees to accept the sum of seven hundred thousand dollars for the subject property on or before 10/1/2010.

3.      Title Documents.   At Buyer's expense, Seller shall provide Buyer with title insurance.  Buyer will bear its share of the closing costs, and Seller will bear its share of the closing costs.

4.      Taxes.  The Seller agrees to pay the prorated taxes due for 2010 through the date of closing, and all prior years on the property, if any, and the Buyer agrees that Buyer will pay the prorated taxes for 2010 after the date of closing and all subsequent years thereon in addition to the amounts due herein.  Should the Buyer fail to pay these taxes when due, Buyer will be in default.

5.      Assignment.  This contract may not be assigned, transferred, pledged or sold by the Buyer without the written consent of the Seller first obtained, but may be assigned by the Seller without Buyer's consent.

6.      Possession.  The Buyer shall be entitled to possession of the property as of closing.

7.      Contingency. The Buyer shall make all payments in a timely manner.  Seller shall market and rent the subject property for three years after closing free of charge.  In the event the property does not rent for last year's rents before closing, Buyer can, in his sole discretion, rescind this contract.

8.      General.  This contract has been mutually drafted.  Time is of the essence.  Should Buyer breach this agreement, Buyer agrees to pay Seller's attorney's fees and costs.  Buyer agrees to give Seller the right of first refusal, should Buyer elect to sell the subject property.  The Law of the State of Arkansas applies to this contract.

9.      L. Oneal Sutter is an inactive real estate agent and an attorney.  He does not represent any party to this transaction.  Ted Upshaw is a real estate broker.

1

10.     Should any part of this contract be declared illegal or unenforceable, the remainder of this contract shall be valid.

IN WITNESS WHEREOF, the parties have hereunto set their hands this 18th day of April, 2010.

_____
Luther Sutter Seller

_____
Ted Upshaw

2

CONTRACT FOR THE SALE OF REAL PROPERTY

THIS AGREEMENT made between Luther Sutter  (the Seller) and Ted Upshaw (the Buyer), WITNESSETH:

1.     Agreement of Sale and Purchase.  The Seller hereby agrees to sell and the Buyer agrees to purchase the following described real property, for the price, on the terms, and subject to the conditions hereinafter set forth:

**1328 West Lagoon, Gulf Shores, Alabama in Baldwin County Alabama**

2.     Purchase Price.  The Buyer hereby agrees to pay and the Seller agrees to accept the sum of eight hundred fifty thousand dollars for the subject property on or before 10/1/2010.

3.     Title Documents.   At Buyer's expense, Seller shall provide Buyer with title insurance.  Buyer will bear its share of the closing costs, and Seller will bear its share of the closing costs.

4.     Taxes.  The Seller agrees to pay the prorated taxes due for 2010 through the date of closing, and all prior years on the property, if any, and the Buyer agrees that Buyer will pay the prorated taxes for 2010 after the date of closing and all subsequent years thereon in addition to the amounts due herein.  Should the Buyer fail to pay these taxes when due, Buyer will be in default.

5.     Assignment.  This contract may not be assigned, transferred, pledged or sold by the Buyer without the written consent of the Seller first obtained, but may be assigned by the Seller without Buyer's consent.

6.     Possession.   The Buyer shall be entitled to possession of the property as of closing.

7.     Contingency. The Buyer shall make all payments in a timely manner.  Seller shall market and rent the subject property for three years after closing free of charge.  In the event the property does not rent for last year's rents before closing, Buyer can, in his sole discretion, rescind this contract.

8.     General.  This contract has been mutually drafted.  Time is of the essence.  Should Buyer breach this agreement, Buyer agrees to pay Seller's attorney's fees and costs.  Buyer agrees to give Seller the right of first refusal, should Buyer elect to sell the subject property.  The Law of the State of Arkansas applies to this contract.

9.     L. Oneal Sutter is an inactive real estate agent and an attorney.  He does not represent any party to this transaction.  Ted Upshaw is a real estate broker.

1

10.    Should any part of this contract be declared illegal or unenforceable, the remainder of this contract shall be valid.

IN WITNESS WHEREOF, the parties have hereunto set their hands this 18th day of April, 2010.

_____
Luther Sutter Seller

_____
Ted Upshaw

2





**JAMES P. NIX, JR.**
**Baldwin County Revenue Commissioner**
P.O. Box 1389
Bay Minette, AL 36507-1389

Here To Serve

| | |
|---|---|
| NOTICE DATE: | 12/05/2008 |
| PPIN #: | 283242 |
| PARCEL #: | |
| | 67-06-24-4-000-018.002-902 |

SUTTER, LUTHER A/K/A SUTTER, LUTHER ONE A/K/A
P O BOX 26321
LITTLE ROCK AR 72221-6321

TAX DISTRICT:                    08

## Valuation Notice

You are hereby notified that Baldwin County's market value estimate appears below under the heading **"TOTAL APPRAISED VALUE" (Land and Improvements)**. Should you determine that this value estimate does not reasonably represent Market Value as of October 1, 2007 and you have information or evidence you would like to present to support your position, you may file an appeal of the County's appraised value and request a hearing for your valuation appeal.

**YOUR APPEAL MUST BE IN WRITTEN FORM, MUST HAVE A CONTACT PHONE NUMBER AND MUST BE FILED WITHIN 30 DAYS OF THIS NOTICE.** IF YOU PREFER, APPEAL FORMS CAN BE FOUND ON THE COUNTY WEB SITE: www.revcomm.co.baldwin.al.us OR AT THE NEAREST REVENUE COMMISSION OFFICE (Bay Minette, Fairhope, Foley or Robertsdale). YOU MAY HAND DELIVER YOUR APPEAL TO A REVENUE COMMISSION OFFICE OR MAIL TO:

BOARD OF EQUALIZATION
P. O.BOX 1389
BAY MINETTE, AL. 36507.

SUGGESTED INFORMATION TO BRING TO YOUR APPEAL HEARING:

A. Purchase of property within one year before October 1, 2007.
B. Professional fee appraisal completed within one year before October 1, 2007.
C. The sale of (3) comparable properties as close as possible to October 1, 2007.
D. Income approach to value for commercial properties.
E. A factual error concerning your property or our value estimate.

### IF YOU HAVE ANY QUESTIONS, PLEASE CALL (251) 937-0245

| | |
|---|---|
| Notice Date | 12/05/2008 |
| Total Appraised Value | 561,000 |
| Total Current Use Value (if applicable) | 0 |
| Total Assessed Value | 56,100 |
| Estimated Tax Amount | 1,851.30 |

**THIS IS NOT A TAX STATEMENT YOUR TAX STATEMENT WILL BE MAILED IN A FEW WEEKS.** 134799 | 1-1   DTA
**TAXES ARE BASED ON THE ASSESSED VALUE MULTIPLIED BY THE MILLAGE RATE.**



**JAMES P. NIX, JR.**
**Baldwin County Revenue Commissioner**
P.O. Box 1389
Bay Minette, AL 36507-1389

Here To Serve



**VALUATION NOTICE**

| | |
|---|---|
| NOTICE DATE: | 12/05/2008 |
| PPIN #: | 283241 |
| PARCEL #: | |
| | 67-06-24-4-000-018.002-901 |
| TAX DISTRICT: | 08 |

SUTTER, LUTHER A/K/A SUTTER, LUTHER ONEAL
P O BOX 26321
LITTLE ROCK AR  72221-6321

IhnIuIdnIdnIdndnIdnIlImdInnIhnIdnIdndudnIlnlll

## Valuation Notice

You are hereby notified that Baldwin County's market value estimate appears below under the heading **"TOTAL APPRAISED VALUE"** (Land and Improvements). Should you determine that this value estimate does not reasonably represent Market Value as of October 1, 2007 and you have information or evidence you would like to present to support your position, you may file an appeal of the County's appraised value and request a hearing for your valuation appeal.

**YOUR APPEAL MUST BE IN WRITTEN FORM, MUST HAVE A CONTACT PHONE NUMBER AND MUST BE FILED WITHIN 30 DAYS OF THIS NOTICE.** IF YOU PREFER, APPEAL FORMS CAN BE FOUND ON THE COUNTY WEB SITE: www.revcomm.co.baldwin.al.us OR AT THE NEAREST REVENUE COMMISSION OFFICE (Bay Minette, Fairhope, Foley or Robertsdale). YOU MAY HAND DELIVER YOUR APPEAL TO A REVENUE COMMISSION OFFICE OR MAIL TO:

> BOARD OF EQUALIZATION
> P. O.BOX 1389
> BAY MINETTE, AL. 36507.

SUGGESTED INFORMATION TO BRING TO YOUR APPEAL HEARING:

A. Purchase of property within one year before October 1, 2007.
B. Professional fee appraisal completed within one year before October 1, 2007.
C. The sale of (3) comparable properties as close as possible to October 1, 2007.
D. Income approach to value for commercial properties.
E. A factual error concerning your property or our value estimate.

## IF YOU HAVE ANY QUESTIONS, PLEASE CALL (251) 937-0245

| | |
|---|---|
| Notice Date | 12/05/2008 |
| Total Appraised Value | 561,000 |
| Total Current Use Value (if applicable) | 0 |
| Total Assessed Value | 112,200 |
| Estimated Tax Amount | 3,702.60 |

**THIS IS NOT A TAX STATEMENT YOUR TAX STATEMENT WILL BE MAILED IN A FEW WEEKS.**
**TAXES ARE BASED ON THE ASSESSED VALUE MULTIPLIED BY THE MILLAGE RATE.**   134798 | 1-1   DTA

## SWORN DECLARATION

COMES Luther Sutter, who, under penalty of perjury of the Laws of the United States of America, declares as follows:

My name is Luther Sutter, and I am over the age of eighteen (18). I make this statement under penalty of perjury of the Laws of the United States of America.

I own property located in the 1300 block of West Lagoon in Gulf Shores, Alabama. In April of 2010, I entered into an agreement to sell some of my property and build a house located nearby. Mr. Noe had built a house for me in 2006, so I decided to ask him to build another house for me next door. He gave me the quote attached hereto, and I agreed to start building, once the sale of my other property closed. The Buyer for the other property has now refused to close because of the oil spill, and I cannot afford to build the home now, even though Mr. Noe completed the Pier for me.

I declare under penalty of perjury of the Laws of the United States of America that the foregoing is true and correct.

_Luther Sutter_  6/23/10

Luther Sutter
501-952-7140

## SWORN DECLARATION

COMES Kevin Noe, who, under penalty of perjury of the Laws of the United States of America, declares as follows:

My name is Kevin Noe, and I am over the age of eighteen (18). I make this statement under penalty of perjury of the Laws of the United States of America.

Mr. Sutter and his family company own property located in the 1300 block of West Lagoon in Gulf Shores, Alabama. Mr. Sutter asked me to build a pier for him in early 2010 in preparation for building a home. Mr. Sutter told me he could not build the home until some of his other property sold. So, I had to get a variance from the City of Gulf Shores to build Mr. Sutter's pier. I was asked during the meeting on March 30, 2010 when Mr. Sutter planned to build his house, and I told the City that he intended to build this summer. I gave Mr. Sutter the quote attached hereto in April 2010, and he agreed to start building, once the sale of his other property closed. Mr. Sutter has told me the buyer for the other property has now refused to close because of the oil spill, and he cannot afford to build the home now, even though I completed the Pier for him.

I declare under penalty of perjury of the Laws of the United States of America that the foregoing is true and correct.

_Kevin Noe_
Kevin Noe

6-23-2010

Cornerstone Construction

# Estimate

P. O. Box 179
Orange Beach,, AL 36561
Office 251-981-9995
Fax   251-981-9996

| Date | Estimate # |
|------|-----------|
| 4/12/2010 | 210 |

| Name / Address |
|----------------|
| Luther Sutter<br>310 W. Conway<br>Benton, AR 72035<br>W: 501-224-1050 F:501-315-1916<br>1334 W. Lagoon Av |

| Item | Description | Total |
|------|-------------|-------|
| Crowne & Chair | 2 piece crown in both master bedroom & baths - downstairs foyer - kitchen - family rooms - one piece crown upstairs bedrooms and baths | 3,000.00 |
| Custom Built Closets | Custom built closets | 1,000.00 |
| Electrical Fixtures | **Allowance** | 8,000.00 |
| Electrical Labor | SET OUTSIDE SERVICE - POOL POWER - UNDERGROUND - GRINDER - TRIM OUT | 13,900.00 |
| Heat and Air | SET UNITS 2 trane 18 seer | 14,300.00 |
| Plumbing Labor | rough in slab - house - trim out fixtures - underground water line - sewer | 14,680.00 |
| Plumbing Fixtures | ALLOWANCE | 8,000.00 |
| Grinder Pump | GRINDER AND WATER TO ROAD AND HOOK UP | 3,000.00 |
| Alarm System | **Allowance** | 1,500.00 |
| Audio System | Nothing figured **add $$$ if needed** | 2,500.00 |
| Cabinets | PROVIDED BY OWNER & INSTALLED BY CONTRACTOR | 20,800.00 |
| Counter Tops | granite  ALLOWANCE | 5,000.00 |
| Appliances | down draft stove - washer - dryer - ice machine - refrigator - microwave - dishwasher - mini refergator ect.  **Allowance** | 9,000.00 |
| Flooring | hardwood - tile carpet - labor & materials  ** Allowance**  could vary due to flooring selection | 18,000.00 |
| Tile Shower | Master shower tile labor & materials | 3,000.00 |
| Tile | Tile around whirlpool baths labor & materials | 1,000.00 |
| Tile | Tile upper porch | 850.00 |
| Waterproofing | Under flooring of the up stairs deck area | 600.00 |
| Hardware | door knobs - deadbolts ect. | 1,000.00 |
| Hardware Install | Estimate Labor-Knobs, Handles, Hinges, Accessories etc... | 200.00 |
| mirrors | estimated | 500.00 |
| Shower Door | estimated | 850.00 |
| Bath Accessories | Allowance | 300.00 |
| Bath Access Installation | Towel bar - paper holder - ect. | 100.00 |
| Punch Out | | 500.00 |
| Clean Final | | 800.00 |
| Vents (Dryer, Fan,stove etc...) | dryer vents - stove vents - bath vents | 350.00 |
| Miscellaneous |  you should consider a buffer for here if needed | 5,000.00 |
| Landscaping | minor land scaping allowed | 2,500.00 |
| pool |  figured into bid | 24,500.00 |
| Boardwalk | from pool across wetlands to peir | 5,650.00 |
| Profit & Overhead | 16%= 8% overhead & 8% profit | 54,085.00 |
| | 2,611 s/f  s/f of total heat & cooled area = $150.17 per s/f | |

| CALL IF YOU HAVE ANY QUESTIONS | | **Total** |
|-------------------------------|--|-----------|



Cornerstone Construction

P. O. Box 179
Orange Beach,, AL 36561
Office 251-981-9995
Fax   251-981-9996

# Estimate

| Date | Estimate # |
|------|-----------|
| 4/12/2010 | 210 |

**Name / Address**

Luther Sutter
310 W. Conway
Benton, AR 72035
W: 501-224-1050 F:501-315-1916
1334 W. Lagoon Av

| Item | Description | Total |
|------|-------------|-------|
| Permits & Fees | Building permit & Impact Fee | 6,500.00 |
| Start-Up Draw | | 1,000.00 |
| Electrical Tap | Deposit for power at new house | 50.00 |
| Temp Power | Set up for temp power during construction | 250.00 |
| Survey | Boundary - final - elevation cert. - stake out | 1,500.00 |
| Dumpster | | 1,000.00 |
| Port a Potty | | 550.00 |
| Silt Fence | to protect water run off and construction debris | 200.00 |
| Excavation | | 2,000.00 |
| Dirt or Fill for land | White sand only to fill in  **estimated** | 3,000.00 |
| Layout | | 250.00 |
| Piling Labor | Set Pilings 32 x $150.00 + backhoe & set up | 8,600.00 |
| Tractor Work | Estimate-Tractor Time | 600.00 |
| Gravel | 3 loads of crushed limestone - 2 loads of 57 mix | 2,500.00 |
| Slab | | 5,900.00 |
| Slab Labor | | 2,800.00 |
| Pump truck | If needed | 900.00 |
| Extermination | .20 per s/f | 500.00 |
| Building Materials | Estimated to the best of our ability's **(Will vary from actual cost)** Lumbar - plywood - beams - floor trusses - pilings - decking - nails - bolts - straps - interior trim - doors - windows - drywall - siding - ect. ect. | 39,500.00 |
| Frame Labor | Frame labor - build ALL decks - EXTERIOR stairs - ALL underpinning -ALL  porch ceilings  - tiki bar - strapping 1st floor system - bolting pilings - X bracing - FIRST FLOOR FRAMING OF FLOOR AREA ABOVE PILINGS ect. ect.  ( DOES NOT INCLUDE THE FRAMING OF 1 &2ND STORY WALLS - 2ND STORY FLOOR SYSTEM - INTERIOR STAIRS - ANY ROOF FRAMING - SOFFETTS - SIDING - EXTERIOR TRIM - HANDRAILS - | 28,500.00 |
| Equipment Rental | CRANE ESTIMATE | 1,500.00 |
| Misc. Carpentry | For what ever is needed ** may or may not be used** | 1,500.00 |
| Handrail | aluminum handrails and screen porch up stairs master deck   *** ALLOWANCE *** Estimated | 10,000.00 |
| Roof Labor & Materials | | 12,230.00 |
| Insulation | R - 38 in attic - R 19 UNDER 1ST FLOOR - r 19 in walls | 3,320.00 |
| Drywall Labor | Orange peel finish ceilings & walls | 6,850.00 |
| Paint Ext | Hardy siding - Gables - Porch ceilings - underpinning - soffetts - ect. | 6,300.00 |
| Paint Int | Walls - Ceilings - trim - Doors - Steps - closet shelving - ect. ect. | 14,200.00 |
| Trim Labor | Set doors - base - aprons - wrap windows | 4,000.00 |
| Stairs | | 1,650.00 |

| CALL IF YOU HAVE ANY QUESTIONS | **Total** |
|---|---|

Page 1



Cornerstone Construction

P. O. Box 179
Orange Beach,, AL 36561
Office 251-981-9995
Fax   251-981-9996

# Estimate

| Date | Estimate # |
|------|------------|
| 4/12/2010 | 210 |

| Name / Address |
|----------------|
| Luther Sutter<br>310 W. Conway<br>Benton, AR 72035<br>W: 501-224-1050 F:501-315-1916<br>1334 W. Lagoon Av |

| Item | Description | Total |
|------|-------------|-------|
| | 257 s/f storage + 253 + 477 + 94 verandas = 1,081 s/f + 2,611 = 3,692 s/f<br>total built space =                    $106.20 per s/f<br>1,848 s/f parking area + 2,611 s/f heat & cooled + 1,081 s/f storage &<br>verandas = 5,540 total built space =              $70.77  per s/f | |

| CALL IF YOU HAVE ANY QUESTIONS | **Total** | $392,115.00 |
|--------------------------------|-----------|-------------|

Page 2



## Edgewater 1 & 2

| Date: | Name: | Amt PD | Amt Due: |
|---|---|---|---|
| 5/29-6/5 | | | $4506.60 |
| 6/5-6/12 | Armstrong | $3000.00 | |
| 6/12-6/19 | Henry | $3951.60 | |
| 6/19-6/26 | DuCharme | $4062.60 | |
| 6/26-7/3 | Streuber | $4062.60 | cancelled |
| 7/3-7/10 | White | $4062.60 | |
| 7/10-7/17 | Bock | $ 600.00 | $3462.60 |
| 7/17-7/24 | Crabb | $ 600.00 | ($3462.60) |
| 7/24-7/31 | Connally | $4062.60 | |
| 7/31-8/7 | Nichols/Lutes | $600.00 | $3029.70 |

# Decked Out 3 & 4 weeks

| Date: | Name: | Amt PD | Amt Due: |
|---|---|---|---|
| 5/29-6/5 | Sutter | | |
| 6/5-6/12 | Robinson | | $6371.40 |
| 6/12-6/19 | Sommer | $5927.40 | came |
| 6/19-6/26 | Hedenberg | $6371.40 | came |
| 6/26-7/3 | Nash | | $6371.40 |
| 7/3-7/10 | Tucker | $5927.40 | came |
| 710-7/17 | Wright | $4706.40 | came |
| 7/17-7/24 | Gaston | | $6371.40 |
| 7/25-8/1 | Patterson | $ 600.00 | $5771.40 |

## Seabreeze:

| Date: | Name: | Amt PD | Amt Due: |
|---|---|---|---|
| 5/29-6/5 | Townsend | $2852.70 | |
| 6/5-6/12 | Puckett | $2852.70 | |
| 6/12-6/19 | Auciello | $2852.70 | |
| 6/19-6/26 | Flesch | $1300.00 | $1200.00 |
| 6/26-7/3 | Gibson | | $3074.70 |
| 7/3-7/10 | Gibson | | $3074.70 |
| 7/10-7/17 | Boyd | $2747.25 | Cancelled |
| 7/17-7/24 | Vasquez | $2686.20 | |
| 7/24-7/31 | Belknap | $ 600.00 | $2030.70 |
| 7/31-8/7 | Chandler   NC | $ 300.00 | $1964.70 |

## Suncather:

| Date: | Name: | Amt PD | Amt Loss: |
|---|---|---|---|
| 5/29-6/5 | Townsend | $2852.70 | |
| 6/5-6/12 | Puckett | $2852.70 | |
| 6/12-6/19 | Auciello | $2852.70 | |
| 6/19-6/26 | Flesch | $ 300.00 | $2200.00 |
| 6/26-7/3 | Gibson | | $3074.70 |
| 7/3-7/10 | Gibson | | $3074.70 |
| 7/10-7/17 | Boyd | $2747.25 | Cancelled |
| 7/17-7/24 | Vasquez | $2686.20 | |
| 7/24-7/31 | Belknap | $1200.00 | $1430.70 |
| 7/31-8/7 | Chandler | $ 300.00 | $1964.70 |

<u>SWORN DECLARATION</u>

COMES Bill Whitmore who, under penalty of perjury of the Laws of the United States of America, declares as follows:

My name is Bill Whitmore, and I am over the age of eighteen (18). I make this statement under penalty of perjury of the Laws of the United States of America.

Mr. Sutter owns two duplexes on West Lagoon in Gulf Shores, Alabama. I am Mr. Sutter's banker, and I work at Simmons First. Mr. Sutter has several loans with my bank, and I have known him for several years. In fact, while working at another Bank, I financed the construction of Decked Out for him. In March of 2010, Mr. Sutter contacted me and told me that he had a buyer for some of his property in Gulf Shores, AL. He told me that he intended to apply some of those proceeds to decrease his interest costs. Mr. Sutter is presently paying A rate of 7.5 % in interest.

I declare under penalty of perjury of the Laws of the United States of America that the foregoing is true and correct.

Bill Whitmore
Bill Whitmore
501-771-5310

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

THE PEOPLES BANK, BILOXI, MISSISSIPPI                                    **PLAINTIFF**

VS.                                           CIVIL ACTION NO. A2402·2011·12

GP DEVELOPMENT GROUP, LLC,
MICHAEL E. EARL, ROGER L. RAMSEY,
LARRY L. SEWARD, JR., D. CLAYTON HENDRIX,
and LUTHER SUTTER                                                    **DEFENDANTS**

### COMPLAINT

COMES NOW, the Plaintiff, The Peoples Bank, Biloxi, Mississippi ("Peoples Bank"), and

files its Complaint against Defendants GP Development Group, LLC, Michael E. Earl, Roger L.

Ramsey, Larry L. Sewart, Jr., D. Clayton Hendrix, and Luther Sutter, as follows:

### PARTIES

1.    Plaintiff, Peoples Bank, is a Mississippi banking institution, with its principal place of

business in Biloxi, Mississippi.

2.    GP Development Group, LLC ("GP"), is a Mississippi limited liability company and can be

served with process on its registered agent, Charles McKellar, 910 Desoto Ave., Ocean

Springs, Mississippi, 39564.

3.    Michael E. Earl ("Earl") is a resident of Kansas and can be served with process at 4800

College Boulevard, Overland Park, Kansas, 66211.

4.    Roger L. Ramsey ("Ramsey") is a resident of Nevada and can be served with process at 8912

Canyon Springs Drive, Las Vegas, Nevada, 89117.

5.    Larry L. Seward, Jr. ("Seward") is a resident of Kansas and can be served with process at

1130 South 200th Street, Pittsburg, Kansas, 66762.

1

6.  D. Clayton Hendrix ("Hendrix") is a resident of Arizona and can be served with process at #1 Carwin Drive, Benton, Arkansas, 72015.

7.  Luther Sutter ("Sutter") is a resident of Arizona and can be served with process at 310 Natural Resources Drive, Little Rock, Arkansas, 72205.

## JURISDICTION

8.  This Court has jurisdiction of this action pursuant to Miss. Code Ann. § 9-7-81.

9.  All applicable agreements were entered into in Harrison County, Mississippi.

10. The property that partially secured repayment of indebtedness to Peoples Bank is located in First Judicial District, Harrison County, Mississippi.

11. Venue is proper in this Court pursuant to Miss. Code Ann. § 11-11-3.

## INTRODUCTION

12. Pursuant to a Promissory Note dated April 19, 2007, Peoples Bank loaned GP Two Million Eight Hundred Seventy-one Three Hundred Sixty and 00/100 Dollars ($2,871,360.00), secured in part by a Deed of Trust on certain real property in Harrison County, Second Judicial District, Mississippi.  As additional security, Earl, Ramsey, Seward, Hendrix, and Sutter each executed, in favor of Peoples Bank, a Guaranty as to the indebtedness of GP due Peoples Bank.  GP defaulted, Peoples Bank foreclosed, and Peoples Bank seeks collection of the balance of the indebtedness owed to it.

## FACTS

13. On or about April 19, 2007, GP executed a Promissory Note in favor of Peoples Bank ("Note"), which said Note refinanced certain loan indebtedness due Peoples Bank, in the principal amount of Two Million Eight Hundred Seventy-one Three Hundred Sixty and 00/100 Dollars ($2,871,360.00).  As partial security for repayment of the indebtedness due

2

Peoples Bank, GP executed a Deed of Trust in favor of Peoples Bank, which is recorded as Instrument No. 2007-8841t-JI. *See* GP Promissory Note and Deed of Trust attached as Exhibit "A".

14.   As additional security for repayment of the indebtedness, on or about April 19, 2007 Earl, Ramsey, Seward, Hendrix, and Sutter each executed a Guaranty in favor of Peoples Bank wherein Earl, Ramsey, Seward, Hendrix, and Sutter each guaranteed payment of the indebtedness due Peoples Bank arising under the Note. (Earl, Ramsey, Seward, Hendrix, and Sutter are collectively referred to herein as "Guarantors") *See* Guaranty Agreements attached as Exhibits "B", "C", "D", "E", and "F".

15.   That GP failed to make payment of principal and interest due under the Note. As such, GP defaulted under its obligations under the Note and Deed of Trust.

16.   On November 5, 2010, Peoples Bank exercised its rights under the Deed of Trust and foreclosed on the real property that partially secured repayment of the indebtedness under the Note. The real property was struck off to Peoples Bank for less than the principal amounts an indebtedness under the Note, which said Deed of Trust secured.

17.   As of November 10, 2010, a principal balance in the amount of $1,297,519.74 remains unpaid.

18.   GP remains in default, and neither GP nor any of the loan Guarantors have paid any of the deficiency due and owing to Peoples Bank.

## COUNT 1 – Collection on Note and Deed of Trust from GP

19.   Peoples Bank incorporates each and every allegation set forth above.

20.   GP and the Guarantors of GP's indebtedness have failed to make payment of the remaining indebtedness due Peoples Bank under the Note.

21.   Pursuant to the Note and Deed of Trust, Peoples Bank is entitled to an award of its reasonable attorneys' fees and costs in bringing this action and in collecting the indebtedness due it.

22.   Pursuant to the Note and Deed of Trust, Peoples Bank demands payment from GP in an amount equal to remaining outstanding principal, accrued interest, costs of collection and foreclosure, and attorneys' fees incurred in the collection attempts and the foreclosure.

### COUNT II – Collection on Guarantys of Debts for GP

23.   Peoples Bank incorporates each and every allegation set forth above.

24.   Earl is in default under his obligations due Peoples Bank as set forth in the Guaranty he executed in which he guaranteed payment of the indebtedness due Peoples Bank under the Note.

25.   Ramsey is in default under his obligations due Peoples Bank as set forth in the Guaranty he executed in which he guaranteed payment of the indebtedness due Peoples Bank under the Note.

26.   Seward is in default under his obligations due Peoples Bank as set forth in the Guaranty he executed in which he guaranteed payment of the indebtedness due Peoples Bank under the Note.

27.   Hendrix is in default under his obligations due Peoples Bank as set forth in the Guaranty he executed in which he guaranteed payment of the indebtedness due Peoples Bank under the Note.

28.   Sutter is in default under his obligations due Peoples Bank as set forth in the Guaranty he executed in which he guaranteed payment of the indebtedness due Peoples Bank under the Note.

4

29.     GP and the Guarantors of GP's indebtedness have failed to make payment of the remaining indebtedness due Peoples Bank under the Note.

30.     Pursuant to the Note and Deed of Trust, Peoples Bank is entitled to an award of its reasonable attorneys' fees and costs in bringing this action and in collecting the indebtedness due it.

31.     Pursuant to the Note and Deed of Trust, Peoples Bank demands payment from GP in an amount equal to remaining outstanding principal, accrued interest, costs of collection and foreclosure, and attorneys' fees incurred in the collection attempts and the foreclosure.

    WHEREFORE, PREMISES CONSIDERED, Peoples Bank demands judgment of and from GP, Earl, Ramsey, Seward, Hendrix, and Sutter in the amount of remaining outstanding principal, accrued interest through the date of judgment herein, reasonable attorneys' fees, the costs of foreclosure, and the costs of bringing this litigation.

                    THE PEOPLES BANK, BILOXI, MISSISSIPPI

                    BY: _____
                          David M. Allen

OF COUNSEL:
DAVID M. ALLEN (MS Bar No. 01355)
Page, Mannino, Peresich & McDermott, PLLC
P.O. Drawer 289
Biloxi, MS 39533
228-374-2100 Telephone
228-432-5539 Facsimile

**COVER SHEET**
**Civil Case Filing Form**
*(To be completed by Attorney/Party*
*Prior to Filing of Pleading)*

Mississippi Supreme Court
Administrative Office of Courts

Form AOC/01
(Revised 1/1/2001)

**Court Identification**

Docket Number

| | | | | | | |
|---|---|---|---|---|---|---|
| 2 | 4 | 4 | 8 | 1 | C | C |

County #   Judicial   Court ID
District  (CH, Cl, CO)

| | | | | |
|---|---|---|---|---|
| 0 | 1 | 1 | | |

Month   Date   Year

This area to be completed by clerk

Case Year

| | | | |
|---|---|---|---|
| 2 | 0 | 1 | 1 |

Docket Number

| | | | | |
|---|---|---|---|---|
| | | | 1 | 4 |

Local Docket ID

Case Number if filed prior to 1/1/94

IN THE CIRCUIT   COURT OF HARRISON   COUNTY

Short Style of Case:  THE PEOPLES BANK, BILOXI, MISSISSIPPI V. GP DEVELOPMENT GROUP, LLC, ET AL.
Party Filing Initial Pleading: Type/Print Name   DAVID M. ALLEN, ESQ.                      MS Bar No.  01355
_____ Check (✓) if Not an Attorney   _____ Check (✓) if Pro Hac Vice   Signature _____
Compensatory Damages Sought: $ _____   Punitive Damages Sought $ _____

Is Child Support contemplated as an issue in this suit?   _____ Yes   ✓ No   If "yes" is checked, please submit a completed Child Support
Information Sheet with Final Decree/Judgment

PLAINTIFF - PARTY(IES) INITIALLY BRINGING SUIT SHOULD BE ENTERED FIRST (FIRST NAME IN SHORT STYLE) - ENTER ADDITIONAL PLAINTIFFS ON SEPARATE FORM

Individual _____   (                    )
           Last Name              First Name              Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV
   Address of Plaintiff _____
_____ Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
   Estate of _____
_____ Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
   D/B/A / Agency _____
Business  THE PEOPLES BANK, BILOXI, MISSISSIPPI. 152 LAMEUSE ST., BILOXI, MS 39532
           Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated
_____ Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
   D/B/A: _____

DEFENDANT - NAME OF DEFENDANT (FIRST NAME IN SHORT STYLE) - ENTER ADDITIONAL DEFENDANTS ON SEPARATE FORM

Individual _____   (                    )
           Last Name              First Name              Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV
_____ Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
   Estate of _____
_____ Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
   D/B/A / Agency _____
Business  GP DEVELOPMENT GROUP, LLC, A MISSISSIPPI LLC, 910 DESOTO AVE., OCEAN SPRINGS, MS 39564
           Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated
_____ Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:
   D/B/A: _____
ATTORNEY FOR THIS DEFENDANT: _____ Bar No.   or   Name: _____   Pro Hac Vice (✓) ___
   (if known)

In left hand column, check one (1) box that best describes
the nature of this suit. In right hand column check all
boxes which indicate secondary claims.

**Business/Commercial**
- Accounting (Business)
- Bankruptcy
- Business Dissolution - Corporation
- Business Dissolution - Partnership
- ✓ Debt Collection
- Employment
- Examination of Debtor
- Execution
- Foreign Judgment
- Garnishment
- Pension
- Receivership
- Replevin
- Stockholder Suit
- Other _____

**Domestic Relations**
- Child Custody/Visitation
- Child Support
- Contempt
- Divorce: Fault
- Divorce: Irreconcilable Differences
- Domestic Abuse
- Emancipation
- Modification
- Paternity
- Property Division
- Separate Maintenance
- Termination of Parental Rights
- UIFSA (formerly URESA)
- Other _____

**Contract**
- Breach of Contract
- Installment Contract
- Insurance
- Product Liability Under Contract
- Specific Performance
- Other _____

**Probate**
- Accounting (Probate)
- Birth Certificate Correction
- Commitment
- Conservatorship
- Guardianship
- Heirship
- Intestate Estate
- Minor's Settlement
- Muniment of Title
- Name Change
- Power of Attorney
- Testate Estate
- Will Contest
- Other _____

**Statutes/Rules**
- Bond Validation
- Civil Forfeiture
- Declaratory Judgment
- ERISA
- Eminent Domain
- Extraordinary Writ
- Federal Statutes
- Injunction or Restraining Order
- Municipal Annexation
- Racketeering (RICO)
- Railroad
- Seaman
- Other _____

**Appeals**
- Administrative Agency
- County Court
- Hardship Petition (Driver License)
- Justice Court
- MS Employment Security Comm'n
- Municipal Court
- Oil & Gas Board
- Workers' Compensation
- Other _____

**Children and Minors - Non-Domestic**
- Adoption - Uncontested
- Adoption - Contested
- Consent to Abortion for Minor
- Removal of Minority
- Other _____

**Torts-Personal Injury**
- Bad Faith
- Fraud
- Loss of Consortium
- Malpractice - Legal
- Malpractice - Medical
- Negligence - General
- Negligence - Motor Vehicle
- Products Liability
- Wrongful Death
- Other _____

**Mass Tort**
- Asbestos
- Chemical Spill
- Dioxin
- Hand/Arm Vibration
- Hearing Loss
- Radioactive Materials
- Other _____

**Real Property**
- Adverse Possession
- Ejectment
- Eminent Domain
- Judicial Foreclosure
- Lien Assertion
- Partition
- Receiver Appointment
- Tax Sale: Confirmation/Cancellation
- Title, Boundary &/or Easement
- Other _____

**Civil Rights**
- Elections
- Habeas Corpus
- Post Conviction Relief
- Prisoner
- Other _____

MAR. 9. 2011  3:18PM  `CIRCUIT COURT BILOXI                  NO. 114   P. 8

IN THE CIRCUIT _____ COURT OF HARRISON _____ COUNTY, MISSISSIPPI

_Second_ JUDICIAL DISTRICT, CITY OF _Biloxi_

Docket No. _2011_ - _18_ _243_        Docket No. If Filed
          File Yr   Chronological No.   Clerk's Local ID   Prior to 1/1/94 _____

DEFENDANTS IN REFERENCED CAUSE - Page 1 of _2_ Defendants Pages
IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET

**Defendant #2:**

Individual: EARL _____ MICHAEL _____ ( _____ ) _____ _____
            Last Name                First Name          Maiden Name, if Applicable   Middle Init.   Jr/Sr/II/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
   Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:
   D/B/A _____

Business 4800 COLLEGE BLVD., OVERLAND PARK, KS 66211 _____
         Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:
   D/B/A _____

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____ Pro Hac Vice (✓)___ Not an Attorney(✓)___

**Defendant #3:**

Individual: RAMSEY _____ ROGER _____ ( _____ ) L _____ _____
            Last Name                First Name          Maiden Name, if Applicable   Middle Init.   Jr/Sr/II/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
   Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:
   D/B/A _____

Business 8912 CANYON SPRINGS DR., LAS VEGAS, NV 89117 _____
         Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:
   D/B/A _____

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____ Pro Hac Vice (✓)___ Not an Attorney(✓)___

**Defendant #4:**

Individual: SEWARD _____ LARRY _____ ( _____ ) L _____ JR
            Last Name                First Name          Maiden Name, if Applicable   Middle Init.   Jr/Sr/II/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
   Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:
   D/B/A _____

Business 1130 SOUTH 200TH ST., PITTSBURG, KS 66762 _____
         Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:
   D/B/A _____

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____ Pro Hac Vice (✓)___ Not an Attorney(✓)___

MAR. 9. 2011  3:18PM    CIRCUIT COURT BILOXI                    NO. 114   P. 9

IN THE CIRCUIT _____ COURT OF HARRISON _____ COUNTY, MISSISSIPPI

_Second_ JUDICIAL DISTRICT, CITY OF _Biloxi_

Docket No. _2011_ - _12_ _842_   Docket No. If Filed
                File Yr      Chronological No.      Clerk's Local ID      Prior to 1/1/94 _____

### DEFENDANTS IN REFERENCED CAUSE - Page _2_ of _2_ Defendants Pages
### IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET

**Defendant # _5_ :**

Individual: HENDRIX _____ D. CLAYTON _____ ( _____ ) _____ _____
              Last Name              First Name           Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
    Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:
    D/B/A _____

Business  #1 CARWIN DR., BENTON, AR 72015
          Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated
___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:
    D/B/A _____

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____ Pro Hac Vice (✓) ___ Not an Attorney(✓)___

**Defendant # _6_ :**

Individual: SUITER _____ LUTHER _____ ( _____ ) _____ _____
              Last Name              First Name           Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
    Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:
    D/B/A _____

Business  310 NATURAL RESOURCES DR., LITTLE ROCK, AR 72205
          Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated
___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:
    D/B/A _____

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____ Pro Hac Vice (✓) ___ Not an Attorney(✓)___

**Defendant # ___ :**

Individual: _____ _____ _____ ( _____ ) _____ _____
              Last Name              First Name           Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
    Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:
    D/B/A _____

Business _____
          Enter legal name of business, corporation, partnership, agency - if Corporation, indicate state where incorporated
___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:
    D/B/A _____

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____ Pro Hac Vice (✓) ___ Not an Attorney(✓)___

File No. 0012330  Page #1



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
1328 West Lagoon Avenue
Unit B (East), Sunrise Lagoon
Gulf Shores, AL  36542

### FOR:
Luther Sutter
P.O. Box 2012
Benton, AR  72018

### AS OF:
11/30/2010

### BY:
Andrew D. Wilcoxon
Bufkin Appraisal Company
Post Office Box 2777
Gulf Shores, Alabama 36547
(251) 968-8235

Bufkin Appraisal Company

File No. 0012330 Page #2

**Individual Condominium Unit Appraisal Report**

ADW12330
File # 0012330

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address **1328 West Lagoon Avenue** Unit # **B** City **Gulf Shores** State **AL** Zip Code **36542** | |
| Borrower **N/A** Owner of Public Record **Luther Sutter** County **Baldwin** | |
| Legal Description **Unit B (East), Sunrise Lagoon** | |
| Assessor's Parcel # **67-06-24-4-000-018.002-902** Tax Year **2010** R.E. Taxes $ **1,023.66** | |
| Project Name **Sunrise Lagoon** Phase # **N/A** Map Reference **Slide 2150-D** Census Tract **114.04** | |
| Occupant ☒ Owner ☒ Tenant ☐ Vacant Special Assessments $ **Unknown** HOA $ **Assess** ☒ per year ☐ per month | |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | |
| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) **Legal Purposes** | |
| Lender/Client **Luther Sutter** Address **P.O. Box 2012, Benton, AR 72018** | |
| Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No | |
| Report data source(s) used, offering price(s), and date(s). **According to the Baldwin County MLS, the subject is not currently listed and has not been** | |
| **listed within the past twelve months.** | |
| I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. **N/A** | |

**CONTRACT**

| | |
|---|---|
| Contract Price $ **N/A** Date of Contract **N/A** Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s) **N/A** | |
| Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ YES ☐ NO | |
| If Yes, report the total dollar amount and describe the items to be paid. **N/A** | |

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | Condominium Unit Housing Trends | | | Condominium Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☐ Increasing ☐ Stable ☒ Declining | | | PRICE | AGE | | One-Unit | 40 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☐ In Balance ☒ Over Supply | | | $ (000) | (yrs) | | 2-4 Unit | 10 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☐ Under 3 mths ☐ 3-6 mths ☒ Over 6 mths | | | 150 Low | 1-2 | | Multi-Family | 40 % |
| Neighborhood Boundaries **The neighborhood is bound on the south by the Gulf of Mexico, the west** | | | | | | 500 High | 25 | | Commercial | 10 % |
| **by Lagoon Pass, the north by the Little Lagoon, and the east by 11th Street.** | | | | | | 300 Pred. | 10 | | Other | % |

Neighborhood Description **The subject is located in a resort neighborhood of Gulf Shores which benefits from its proximity to the Gulf of Mexico and Little Lagoon. Development in this vicinity consists primarily of condominiums and single family dwellings which are utilized as second homes along with scattered small resort related commercial uses.**

Market Conditions (including support for the above conclusions) **Until mid-2005, demand exceeded supply and prices increased accordingly. Over the past four years an increased supply along with diminished demand has caused prices to decline. Additionally, the Deepwater Horizon oil spill has caused market apprehension for water-front and water related properties.**

**SITE**

| | |
|---|---|
| Topography **Basically level/Part Wet** Size **50' x 329' x 57.93' x 299.6'** Density **2 Units/0.36 Acre +/-** View **Good/Lagoon-Air** | |
| Specific Zoning Classification **R-2** Zoning Description **Residental Single Family & Duplex** | |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming – Do the zoning regulations permit rebuilding to current density? ☒ Yes ☐ No | |
| ☐ No Zoning ☐ Illegal (describe) | |
| Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe | |

**PROJECT SITE**

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street **Asphalt** | ☒ | ☐ |
| Gas | ☐ | **None** | Sanitary Sewer | ☒ | | Alley **None** | | |

| | |
|---|---|
| FEMA Special Flood Hazard Area ☒ Yes ☐ No FEMA Flood Zone **AE** FEMA Map # **01003C1076L** FEMA Map Date **07/17/2007** | |
| Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe | |
| Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe | |
| **The attached tax assessor's plat depicts the subject site and location of "Lagoon Sunrise". The subject is one half of a duplex building,** | |
| **which is a condominium unit. This is common for duplex buildings in this market area. According to the site map, the northern portion of** | |
| **the site contains wetlands.** | |
| Data source(s) for project information **Probate Records, Condominium Declaration Documents, FEMA Flood Maps, City Zoning Ordinances, etc.** | |

**PROJECT INFORMATION**

| Project Description ☐ Detached ☒ Row or Townhouse ☐ Garden ☐ Mid-Rise ☐ High-Rise ☒ Other (describe) **Duplex** | | | | | | |
|---|---|---|---|---|---|---|
| **General Description** | **General Description** | **Subject Phase** | | **If Project Completed** | | **If Project Incomplete** |
| # of Stories **3** | Exterior Walls **ComBrd** | # of Units | **2** | # of Phases | **1** | # of Planned Phases | **N/A** |
| # of Elevators **None** | Roof Surface **Metal** | # of Units Completed | **2** | # of Units | **2** | # of Planned Units | **N/A** |
| ☒ Existing ☐ Proposed | Total # Parking **4** | # of Units For Sale | **-0-** | # of Units for Sale | **-0-** | # of Units for Sale | **N/A** |
| ☐ Under Construction | Ratio (spaces/units) **2** | # of Units Sold | **1+/-** | # of Units Sold | **1+/-** | # of Units Sold | **N/A** |
| Year Built **2007** | Type **Assign** | # of Units Rented | **1+/-** | # of Units Rented | **1+/-** | # of Units Rented | **N/A** |
| Effective Age **3 Years** | Guest Parking **Avg** | # of Owner Occupied Units | **-1-** | # of Owner Occupied Units | **-1-** | # of Owner Occupied Units | **N/A** |

| | |
|---|---|
| Project Primary Occupancy ☐ Principle Residence ☒ Second Home or Recreational ☐ Tenant | |
| Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No | |
| Management Group - ☒ Homeowners' Association ☐ Developer ☐ Management Agent - Provide name of management company. | |

| | |
|---|---|
| Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project? ☒ Yes ☐ No If Yes, Describe | |
| **Both units are owned by one entity.** | |

| | |
|---|---|
| Was the project created by the conversion of existing building(s) into a condominium? ☐ Yes ☒ No If Yes, describe the original use and date of conversion. | |

| | |
|---|---|
| Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)? ☒ Yes ☐ No If No, describe | |

| | |
|---|---|
| Is there any commercial space in the project? ☐ Yes ☒ No If Yes, describe and indicate the overall percentage of the commercial space. | |

Form 1073 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0012330   Page #3

ADW12330

## Individual Condominium Unit Appraisal Report

File # 0012330

**PROJECT INFORMATION**

Describe the condition of the project and quality of construction.   **The subject is one-half of a duplex which has good construction quality and appeal.**

Describe the common elements and recreational facilities.   **Grounds; Driveways; Etc.**

Are any common elements leased to or by the Homeowners' Association? ☐ Yes ☒ No If Yes, describe the rental terms and options.

Is the project subject to a ground rent? ☐ Yes ☒ No If Yes, $ **N/A** per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type? ☒ Yes ☐ No If No, describe and comment on the effect on value and marketability.   **The parking facilities are adequate for the subject project.**

**PROJECT ANALYSIS**

I ☐ did ☒ did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.   **The condominium association dues are by assessment which is typical for this type of project.**

Are there any other fees (other than regular HOA charges) for the use of the project facilities? ☐ Yes ☒ No If Yes, report the charges and describe.   **None known**

Compared to other competitive projects of similar quality and design, the subject unit charge appears ☐ High ☒ Average ☐ Low If High or Low, describe

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?
☐ Yes ☒ No If Yes, describe and explain the effect on value and marketability.   **To the appraiser's knowledge, there are no adverse conditions within the project's documents which would affect values or marketability. The documents have not been fully reviewed.**

Unit Charge $ _____ per month X 12 = $ **Assess** per year   Annual assessment charge per year per square feet of gross living area = $ _____
Utilities included in the unit monthly assessment ☒ None ☐ Heat ☐ Air Conditioning ☐ Electricity ☐ Gas ☐ Water ☐ Sewer ☐ Cable ☐ Other (describe)

**UNIT DESCRIPTION**

| General Description | Interior | materials/condition | Amenities | Appliances | Car Storage |
|---|---|---|---|---|---|
| Floor #   **1st** | Floors | **Wood, Cpt, Tile/Gd** | ☐ Fireplace(s) # | ☒ Refrigerator | ☐ None |
| # of Levels   **Two** | Walls | **Drywall/Good** | ☐ WoodStove(s) # | ☒ Range/Oven | ☐ Garage ☒ Covered ☐ Open |
| Heating Type **F.A.**  Fuel **Elec.** | Trim/Finish | **Deluxe,Wood/Good** | ☒ Deck/Patio | ☒ Disp  ☒ Microwave | # of Cars   **Park Under** |
| ☒ Central AC ☐ Individual AC | Bath Wainscot | **Tile, FG/Good** | ☒ Porch/Balcony | ☒ Dishwasher | ☐ Assigned ☐ Owned |
| ☐ Other (describe) | Doors | **HC/Good** | ☐ Other | ☒ Washer/Dryer | Parking Space # |
| Finished area above grade contains: | | **8** Rooms | **3** Bedrooms | **2.5** Bath(s) | **2,557** Square Feet of Gross Living Area Above Grade |

Are the heating and cooling for the individual units separately metered? ☒ Yes ☐ No If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)   **9' ceilings; Stainless appliance; Granite counter tops; Separate tub and shower in master bath; Custom tile work; Extensive porches and decking; Etc.**

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   **The subject is in good condition with no needed repairs apparent.**

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe
**There were no deficiencies or adverse conditions noted from the inspection.**

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe
**The subject does conforms to the neighborhood.**

**PRIOR SALE HISTORY**

I ☐ did ☒ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)   **Baldwin County Multiple Listing Service/Baldwin County Probate Records/Real Estate Activity Reporting System**
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)   **Baldwin County Multiple Listing Service/Baldwin County Probate Records/Real Estate Activity Reporting System**
Report the results of the research and analysis of the prior sales or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No sales within 3 years. | 03/26/2010 | 12/03/2009 | No other recent sales. |
| Price of Prior Sale/Transfer | N/A | N/A (Foreclosure) | N/A (Foreclosure) | N/A |
| Data Source(s) | MLS/REARS/Probate | Instrument #1232245 | Instrument #1212943 | MLS/REARS/Probate |
| Effective Date of Data Source(s) | 11/2010 | 11/2010 | 11/2010 | 11/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales.   **To the appraiser's knowledge, there have been no sales involving the subject unit within the past three years. Comparables 1-2 and 4 were previously transferred through foreclosure. There are no other known sales of the comparables within the past year.**

File No. 0012330  Page #4

## Individual Condominium Unit Appraisal Report

ADW12330
File # 0012330

There are __N/A__ comparable properties currently offered for sale in the subject neighborhood ranging in price from $ N/A to $ N/A .
There are __N/A__ comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ N/A to $ N/A .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 1328 West Lagoon Ave Gulf Shores, AL 36542 | 1384 West Lagoon Avenue Gulf Shores, Alabama 36542 | | 203 West 13th Street Gulf Shores, Alabama 36542 | | 1964 West Beach Boulevard Gulf Shores, Alabama 36542 | |
| Project Name and Phase | Sunrise Lagoon Condominium Unit B | Laguna Sands Condominium Unit B | | Sawgrass Pointe Condominium Unit 3 | | Heron Landing Unit 2 | |
| Proximity to Subject | | 0.1 mile | | 0.4 mile | | 1.5 mile | |
| Sale Price | $ N/A | | $ 190,000 | | $ 190,000 | | $ 205,100 |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 93.83 sq. ft. | | $ 98.45 sq. ft. | | $ 158.99 sq. ft. | |
| Data Source(s) | | MLS #163007 | | Instrument #1227381/ReMax | | MLS #166880/Realty South | |
| Verification Source(s) | | Exit Realty Innovations | | Appraisal Files | | Appraisal Files | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Cash No S.C. | | Conventional No S.C. | | Conventional No S.C. | |
| Date of Sale/Time | | 09/15/2010 | -4,000 | 03/31/2010 | -12,700 | 11/19/2010 | |
| Location | Good-Average | Good-Average | | Good-Average | | Good-average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| HOA Mo. Assessment | Assessment | Assessments | | Assessments | | $262.000 | |
| Common Elements and Rec. Facilities | Grounds/ Driveway | Grds/Driveway Pool/Pier | -10,000 | Grounds/Pool Driveway | -10,000 | Pool/Pier/ Beach Access | -40,000 |
| Floor Location | 1st | 1st | | 1st | | 1st | |
| View | Good/Lagoon | Good/Lagoon | | Good/Lagoon | | Good/Lagoon | |
| Design (Style) | Duplex | Duplex | | Duplex | | Duplex | |
| Quality of Construction | Good-Average | Good-Average | | Good-Average | | Good-Average | |
| Actual Age | 3 Years | 4 Years | | 12 Yrs/Eff.10 | +7,000 | 15 Years | +12,000 |
| Condition | Good-Average | Good-Average | | Good-Average | | Good-Average | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8  3  2.5 | 7  4  3.5 | -5,000 | 6  3  3 | -2,500 | 6  3  3 | -2,500 |
| Gross Living Area | 2,557 sq. ft. | 2,025 sq. ft. | +27,000 | 1,930 sq. ft. | +31,000 | 1,290 sq. ft. | +63,000 |
| Basement & Finished Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central | Central | | Central | | Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | Park Under | Park Under | | Park Under | | Park Under | |
| Porch/Patio/Deck | Porches/Stg. | Porches/Stg | | Porches/Stg | | Decks/Storage | |
| | | | | | | Furnished | -10,000 |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 8,000 | ☒ + ☐ - | $ 12,800 | ☒ + ☐ - | $ 22,500 |
| Adjusted Sale Price of Comparables | | Net Adj. 4.2 % Gross Adj. 24.2 % | $ 198,000 | Net Adj. 6.7 % Gross Adj. 33.3 % | $ 202,800 | Net Adj. 11.0 % Gross Adj. 62.2 % | $ 227,600 |

Summary of Sales Comparison Approach   The comparables are sales of duplex units in the subject's competitive market area. Comparables 1, 2,
and 4 are sales of a duplex units with a shared swimming pool; Comparable 3 is located in a project with a swimming pool, pier and
deeded beach access; therefore, adjustments were necessary. Comparable 4 has an inferior view, but is in closer proximity to the central
sector of Gulf Shores. Adjustments for date of sale were utilized to reflect decreases which have occurred in this market area (at 10% per
annum). There have been few sales of duplex units within the past year and significant adjustments were required. There are no other
comparable sales which would require less adjustment. After adjustments for dissimilarities, these sales indicate a relatively wide range
in value for the subject. Based on this analysis, the subject's current market value is $215,000.

Indicated Value by Sales Comparison Approach $  215,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | N/A | X Gross Rent Multiplier | N/A | = $ | | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)   Although rental income may contribute to a purchasing decision for some
resort condominium buyers in this market area, it is rarely the primary motivation. A significant percentage of buyers utilize these units
as primary residences or second homes. Therefore, the Income Approach is not felt to be a reliable indicator of value for the subject.

Indicated Value by: Sales Comparison Approach $  215,000                Income Approach (if developed) $

The Market Approach was the only method used in valuing the subject. This method is the most reliable approach in estimating the value
of condominiums. Analyzing sales of similar properties provides the best indication of current market value as it measures the
motivations of buyers and sellers. As explained above, the Income Approach is not a reliable method of valuation in this circumstance.
The Cost Approach is not applicable as the subject is a single unit in a multi-unit project.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  The subject has been valued "as
is", exclusive of furnishings or other personal property. Refer to the addendum for additional certifications, comments, etc.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$  215,000  , as of  11/30/2010  , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 465 March 2005                     Page 3 of 6                     Fannie Mae Form 1073 March 2005

File No. 0012330   Page #5

## Individual Condominium Unit Appraisal Report

ADW12330
File # 0012330

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE:  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:  The intended user of this appraisal report is the lender/client.

MARKET VALUE:  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

File No. 0012330 | Page #6

### Individual Condominium Unit Appraisal Report

ADW12330
File # 0012330

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

File No. 0012330  Page #7

## Individual Condominium Unit Appraisal Report

ADW12330
File # 0012330

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Andrew D. Wilcoxon | Name  Edward M. Bufkin, SRA |
| Company Name  Bufkin Appraisal Company | Company Name  Bufkin Appraisal Company |
| Company Address  Post Office Box 2777 | Company Address  Post Office Box 2777 |
| Gulf Shores, Alabama  36547-2777 | Gulf Shores, AL  36547-2777 |
| Telephone Number  (251) 968-8235 | Telephone Number  (251) 968-8235 |
| Email Address  bufklnappraisal@gulftel.com | Email Address  bufkinappraisal@gulftel.com |
| Date of Signature and Report  12/06/2010 | Date of Signature  12/06/2010 |
| Effective Date of Appraisal  11/30/2010 | State Certification #  R00049 |
| State Certification # | or State License # |
| or State License #  T01834 | State  AL |
| or Other                    State # | Expiration Date of Certification or License  9/30/2011 |
| State  AL |  |
| Expiration Date of Certification or License  9/30/2011 | SUBJECT PROPERTY |
|  | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 1328 West Lagoon Avenue, # B | Date of Inspection |
| Gulf Shores, AL 36542 | ☒ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $    215,000 | Date of Inspection  11/30/2010 |
| LENDER/CLIENT |  |
| Name | COMPARABLE SALES |
| Company Name  Luther Sutter | ☐ Did not inspect exterior of comparable sales from street |
| Company Address  P.O. Box 2012, Benton, AR 72018 | ☒ Did inspect exterior of comparable sales from street |
|  | Date of Inspection  11/30/2010 |
| Email Address  luthersutter@yahoo.com |  |

Form 1073 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0012330  Page #8

## Individual Condominium Unit Appraisal Report

ADW12330
File # 0012330

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address and | 1328 West Lagoon Avenue | 116 West 5th Avenue | | | | | |
| Unit #  Gulf Shores, AL 36542 | | Gulf Shores, Alabama 36542 | | | | | |
| Project Name and | Sunrise Lagoon | Twelve Palms | | | | | |
| Phase  Condominium Unit B | | Condominium Unit B | | | | | |
| Proximity to Subject | | 2.0 miles | | | | | |
| Sale Price | $ N/A | $ 299,900 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 91.16 sq. ft. | | $ sq. ft. | | $ sq. ft. | |
| Data Source(s) | | MLS #166456 | | | | | |
| Verification Source(s) | | Century 21 Meyer Real Estate | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Conventional | | | | | |
| Concessions | | No S.C. | | | | | |
| Date of Sale/Time | | 08/31/2010 | -7,500 | | | | |
| Location | Good-Average | Good/5% | -15,000 | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| HOA Mo. Assessment | Assessment | Assessments | | | | | |
| Common Elements | Grounds/ | Pier/Grounds | -20,000 | | | | |
| and Rec. Facilities | Driveway | Drives/Pool | | | | | |
| Floor Location | 1st | 1st | | | | | |
| View | Good/Lagoon | Avg/Canal | +20,000 | | | | |
| Design (Style) | Duplex | Duplex | | | | | |
| Quality of Construction | Good-Average | Good-Average | | | | | |
| Actual Age | 3 Years | 4 Years | | | | | |
| Condition | Good-Average | Good-Average | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8 \| 3 \| 2.5 | 9 \| 5 \| 4.5 | -10,000 | | | | |
| Gross Living Area | 2,557 sq. ft. | 3,290 sq. ft. | -37,000 | sq. ft. | | sq. ft. | |
| Basement & Finished | None | None | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | Central | Central | | | | | |
| Energy Efficient Items | Standard | Standard | | | | | |
| Garage/Carport | Park Under | Park Under | | | | | |
| Porch/Patio/Deck | Porches/Stg. | Porches/Stg | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 69,500 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net 23.2 % | | Net % | | Net % | |
| of Comparables | | Gross 36.5 % | $ 230,400 | Gross % | $ | Gross % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No sales within 3 years. | 06/07/2010 | | |
| Price of Prior Sale/Transfer | N/A | N/A (Foreclosure) | | |
| Data Source(s) | MLS/REARS/Probate | Instrument #1239086 | | |
| Effective Date of Data Source(s) | 11/2010 | 11/2010 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Form 1073.(AC) — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0012330  Page #9

| Borrower | N/A | | | File No. 0012330 | |
|---|---|---|---|---|---|
| Property Address | 1328 West Lagoon Avenue | | | | |
| City | Gulf Shores | County Baldwin | | State AL | Zip Code 36542 |
| Lender/Client | Luther Sutter | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

**This Appraisal Report is one of the following types:**

☐ Self Contained    (A written report prepared under Standards Rule  2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ Summary    (A written report prepared under Standards Rule  2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted Use    (A written report prepared under Standards Rule  2-2(c) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

— The statements of fact contained in this report are true and correct.

— The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

— I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.

— I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

— My engagement in this assignment was not contingent upon developing or reporting predetermined results.

— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.

— Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

— Unless otherwise indicated, I have performed no services regarding the subject property within the prior three years, as an appraiser or in any other capacity.

## Comments on Appraisal and Report Identification
Note any USPAP related issues requiring disclosure and any State mandated requirements:

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name:  Andrew D. Wilcoxon | Name:  Edward M. Bufkin, SRA |
| Designation: | Designation:  SRA |
| Date Signed:  12/06/2010 | Date Signed:  12/06/2010 |
| State Certification #: | State Certification #:  R00049 |
| or State License #:  T01834 | or State License #: |
| State:  AL | State:  AL |
| Expiration Date of Certification or License:  9/30/2011 | Expiration Date of Certification or License:  9/30/2011 |
| | Supervisory Appraiser inspection of Subject Property: |
| Effective Date of Appraisal:  11/30/2010 | ☐ Did Not ☐ Exterior-only from street ☒ Interior and Exterior |

## Supplemental Addendum

File No.   0012330

| | | | | |
|---|---|---|---|---|
| Borrower/Client | N/A | | | |
| Property Address | 1328 West Lagoon Avenue | | | |
| City  Gulf Shores | County  Baldwin | State  AL | | Zip Code  36542 |
| Lender   Luther Sutter | | | | |

### SCOPE OF THE APPRAISAL
This appraisal is based upon information which includes an exterior inspection of the subject property and neighborhood, economic influences, public records, conversations with real estate brokers and other informed individuals, and other sources which are identified. All sources and data are considered reliable. The appraiser has not placed emphasis on any data or sources that are not considered reliable. Data regarding market sales is contained within the report and has been verified by sources as noted.

### PURPOSE AND INTENDED USE OF THE APPRAISAL
The purpose of this appraisal is to estimate the market value of the subject as defined herein. The function and only intended use of the appraisal is to assist the named lender/client in evaluating the subject for legal purposes. This report is not intended for any other use.

### APPRAISAL REPORT OPTION
The communication to the client is a Summary Appraisal Report in accordance with Standards Rule 2-2 (b) of the Uniform Standards of Professional Appraisal Practice as developed by the Appraisal Standards Board of The Appraisal Foundation.

### METHODS OF VALUATION
In estimating the value of residential property, all three of the traditional approaches to value must be considered and utilized if applicable. The final value estimate for the subject property is based upon a reconciliation of the approaches that are utilized with the most emphasis placed on the most relevant and reliable data. In this instance, only the Sales Comparison Approach, or Market Approach, has been utilized.

The Income Approach has not been applied to the subject property as it is located in an area where condominium units are usually owner occupied second homes that are typically purchased for use, and not strictly for their income producing capabilities. The Income Approach is most relevant when appraising properties that are frequently purchased for their income potential where the primary motivation of typical purchasers is to receive income, not personal use. While many units such as the subject are rented on a part time basis, they are also typically used as second homes. The amount of rental income varies widely among units due to differences in owner use and occupancy. Though rental income may contribute to a purchasing decision for some resort condominium buyers in this market area, it is rarely the primary motivation.

The Sales Comparison Approach is a valuation method that is based upon comparisons between the subject and the most similar market sales of comparable properties. When sufficient data is available regarding comparable sales, the Market Approach can usually be considered the best indicator of a property's market value.

Due to the difficulties inherent in estimating the value of the pro-rata share of common elements in a condominium project and the construction cost of an individual unit in a multi-unit building, the Cost Approach is not applicable.

### MARKET CONDITIONS
Strong demand for property and a limited supply had resulted in increasing values until mid-2005; however, after a period of market inactivity, values have declined substantially in most condominium projects over the past four years.

Substantial new development between 2000 and 2005 has resulted in an oversupply which was largely absorbed by preconstruction purchasers; however, the change in market conditions has resulted in many of these properties being foreclosed or worth less than their original purchase prices. This is a resort area where the majority of the recent purchasers have been speculators which has caused the market to be more volatile than in most traditional residential areas. Analysis of recent and past sales indicates values have declined from 10% to as much as 50% dependent on the project and unit type.

Market activity has increased for those properties whose list prices have been lowered due to the market correction. A large number of foreclosures have been offered for sale and these properties represent a significant percentage of market activity.

### ESTIMATE OF REASONABLE EXPOSURE TIME
In accordance with Standards Rule 1-2 (c) of the Uniform Standards of Professional Appraisal Practice (USPAP), an opinion of reasonable exposure time linked to an opinion of market value as defined within this report must be developed by the appraiser. Exposure time can be defined as the estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market.

An estimate of reasonable exposure time for the subject is approximately six months based upon actual marketing periods for similar properties as well as the appraiser's conversations with real estate brokers and other individuals who are knowledgeable regarding this market area and properties similar to the appraised property. This estimate of typical exposure time is based upon the assumption that the subject had been adequately exposed under competent management and offered for sale at an amount relatively close (10% +/-) to the appraised value shown in this report.

Marketing times in this area vary widely due to variations in listing prices combined with an oversupply of inventory. Properties which are aggressively priced typically have relatively short marketing times while those that are overpriced have extended marketing times due to the abundance of lower priced competitive listings. Properties offered for significantly more than market value will experience long marketing periods due to competition from the current oversupply of inventory.

## Supplemental Addendum

File No. 0012330| Page #11

File No.   0012330

| | | | |
|---|---|---|---|
| Borrower/Client   N/A | | | |
| Property Address   1328 West Lagoon Avenue | | | |
| City   Gulf Shores | County  Baldwin | State  AL | Zip Code  36542 |
| Lender   Luther Sutter | | | |

Several of the comparables sales in this report experienced lengthy marketing times; however, the units were typically placed under contract in a three to six month period when their listing price was lowered to a competitive level. Marketing time is purely a function of pricing in the current environment. Typically, marketing times are six to twelve months which is a result of overpricing for a period of time prior to lowering to a competitive level.

FINAL RECONCILIATION
The most weight has been placed on the Market Approach, or Sales Comparison Analysis, in arriving at a final value estimate for the subject. This method measures the actions and motivations of buyers and sellers by virtue of direct comparisons between the subject and sales of similar properties. When adjustments are made to the comparable sales to reflect typical market reaction to the differences between the properties, an indication of market value is provided.

APPRAISERS CERTIFICATIONS-ANDREW D. WILCOXON
This assignment was made subject to regulations of the State of Alabama Real Estate Appraisers Board.

APPRAISERS CERTIFICATIONS-EDWARD M. BUFKIN
This assignment was made subject to regulations of the State of Alabama Real Estate Appraisers Board.  The state certified appraiser who performed this appraisal has met the requirements of the Board that allow this report to be regarded as a "certified appraisal".

I certify that, to the best of my knowledge and belief, the reported analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute.  I further certify that the use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

The Appraisal Institute conducts a mandatory program of continuing education for its designated members.  As of the date of this report I, Edward M. Bufkin, SRA, have completed the requirements of the continuing education program of the Appraisal Institute.

SYNOPSIS OF APPRAISER'S QUALIFICATIONS-EDWARD M. BUFKIN
Engaged full time as a real estate appraiser since 1985. Self employed since 1995. Received a Bachelor of Science in Business Administration with a major emphasis in Real Estate and Insurance from the University of Southern Mississippi in 1982. Granted an Alabama Real Estate Brokers License in 1983. Successfully completed numerous courses and seminars over the past twenty-seven years. Clients include virtually all major lending institutions and mortgage brokers in the area. Holds State Certificates R00049 from the Alabama Real Estate Appraisers Board and RD4605 from the Florida Real Estate Appraisers Board. Designated as an SRA member by the Appraisal Institute.

File No. 0012330 Page #12

## Subject Property Photographs

| | | | |
|---|---|---|---|
| Borrower/Client | N/A | | |
| Property Address | 1328 West Lagoon Avenue | | |
| City  Gulf Shores | County  Baldwin | State  AL | Zip Code  36542 |
| Lender   Luther Sutter | | | |



**Subject Front**

| | |
|---|---|
| 1328 West Lagoon Avenue | |
| Sales Price | N/A |
| Gross Living Area | 2,557 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Good-Average |
| View | Good/Lagoon |
| Site | Duplex |
| Quality | Good-Average |
| Age | 3 Years |



**Subject Rear**



**Subject Street**

File No. 0012330 Page #13

## Subject Property Photographs

| | |
|---|---|
| Borrower/Client   N/A | |
| Property Address  1328 West Lagoon Avenue | |
| City  Gulf Shores   County  Baldwin   State  AL   Zip Code  36542 | |
| Lender   Luther Sutter | |



**Subject Interior**

1328 West Lagoon Avenue
| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 2,557 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Good-Average |
| View | Good/Lagoon |
| Site | Duplex |
| Quality | Good-Average |
| Age | 3 Years |



**Subject Interior**



**Subject Interior**

File No. 0012330 Page #14

## Subject Property Photographs

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 1328 West Lagoon Avenue |
| City Gulf Shores | County Baldwin | State AL | Zip Code 36542 |
| Lender | Luther Sutter |



### Subject Interior

| | |
|---|---|
| 1328 West Lagoon Avenue | |
| Sales Price | N/A |
| Gross Living Area | 2,557 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Good-Average |
| View | Good/Lagoon |
| Site | Duplex |
| Quality | Good-Average |
| Age | 3 Years |



### Subject Interior



### Subject Interior

File No. 0012330 Page #15

## Subject Property Photographs

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 1328 West Lagoon Avenue |

| City Gulf Shores | County Baldwin | State AL | Zip Code 36542 |
|---|---|---|---|

| Lender | Luther Sutter |
|---|---|



**Subject Interior**

| 1328 West Lagoon Avenue | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 2,557 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Good-Average |
| View | Good/Lagoon |
| Site | Duplex |
| Quality | Good-Average |
| Age | 3 Years |



**Subject Interior**



**Subject Interior**

File No. 0012336 Page #16

## Subject Property Photographs

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 1328 West Lagoon Avenue |
| City   Gulf Shores | County  Baldwin            State  AL              Zip Code  36542 |
| Lender   Luther Sutter | |



**Subject Interior**

**1328 West Lagoon Avenue**

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 2,557 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Good-Average |
| View | Good/Lagoon |
| Site | Duplex |
| Quality | Good-Average |
| Age | 3 Years |



**View**



**View**

File No. 0012330  Page #17

## Subject Property Photographs

| | | |
|---|---|---|
| Borrower/Client | N/A | |
| Property Address | 1328 West Lagoon Avenue | |
| City Gulf Shores | County Baldwin | State AL | Zip Code 36542 |
| Lender Luther Sutter | | |



**View**

| | |
|---|---|
| | 1328 West Lagoon Avenue |
| Sales Price | N/A |
| Gross Living Area | 2,557 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Good-Average |
| View | Good/Lagoon |
| Site | Duplex |
| Quality | Good-Average |
| Age | 3 Years |



**View**



**View**

File No. 0012330  Page #18

## Comparable Sale Photographs

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 1328 West Lagoon Avenue |
| City  Gulf Shores | County  Baldwin        State  AL        Zip Code  36542 |
| Lender  Luther Sutter | |



### Comparable 1

**1384 West Lagoon Avenue**
| | |
|---|---|
| Prox. to Subject | 0.1 mile |
| Sale Price | 190,000 |
| Gross Living Area | 2,025 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.5 |
| Location | Good-Average |
| View | Good/Lagoon |
| Site | |
| Quality | Good-Average |
| Age | 4 Years |



### Comparable 2

**203 West 13th Street**
| | |
|---|---|
| Prox. to Subject | 0.4 mile |
| Sale Price | 190,000 |
| Gross Living Area | 1,930 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | Good-Average |
| View | Good/Lagoon |
| Site | |
| Quality | Good-Average |
| Age | 12 Yrs/Eff.10 |



### Comparable 3

**1964 West Beach Boulevard**
| | |
|---|---|
| Prox. to Subject | 1.5 mile |
| Sale Price | 205,100 |
| Gross Living Area | 1,290 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | Good-Average |
| View | Good/Lagoon |
| Site | |
| Quality | Good-Average |
| Age | 15 Years |

File No. 0012330 Page #19

## Comparable Photographs

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 1328 West Lagoon Avenue |
| City Gulf Shores | County Baldwin | State AL | Zip Code 36542 |
| Lender | Luther Sutter |



### Comparable 4

**116 West 5th Avenue**

| | |
|---|---|
| Prox. to Subject | 2.0 miles |
| Sale Price | 299,900 |
| Gross Living Area | 3,290 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4.5 |
| Location | Good/5% |
| View | Avg/Canal |
| Site | |
| Quality | Good-Average |
| Age | 4 Years |

### Comparable 5

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

### Comparable 6

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

## Location Map

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 1328 West Lagoon Avenue | | | | |
| City | Gulf Shores | County | Baldwin | State | AL | Zip Code | 36542 |
| Lender | Luther Sutter | | | | |



File No. 0012330| Page #21

## Flood Map

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 1328 West Lagoon Avenue | | | | |
| City Gulf Shores | County Baldwin | | State AL | Zip Code 36542 | |
| Lender Luther Sutter | | | | | |



File No. 0012330  Page #22

## Aerial Map

| | |
|---|---|
| Borrower/Client  N/A | |
| Property Address  1328 West Lagoon Avenue | |
| City  Gulf Shores   County  Baldwin   State  AL   Zip Code  36542 | |
| Lender  Luther Sutter | |



File No. 0012330| Page #23

## Tax Assessor's Map

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1328 West Lagoon Avenue | | | | | | |
| City | Gulf Shores | County | Baldwin | State | AL | Zip Code | 36542 |
| Lender | Luther Sutter | | | | | | |



File No. 0012330 Page #24

**Site Map**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 1328 West Lagoon Avenue | | | | |
| City | Gulf Shores | County | Baldwin | State | AL | Zip Code | 36542 |
| Lender | Luther Sutter | | | | |



File No. 0012330  Page #25

## Building Sketch (Page - 1)

| | |
|---|---|
| Borrower/Client  N/A | |
| Property Address  1328 West Lagoon Avenue | |
| City  Gulf Shores | County  Baldwin | State  AL | Zip Code  36542 |
| Lender  Luther Sutter | |



Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | Unit A First Level | 882.8 | |
| | Unit B First Level | 882.8 | |
| | Unit A Second Level | 897.0 | |
| | Unit B Second Level | 897.0 | |
| | Unit A Third Level | 777.4 | |
| | Unit B Third Level | 777.4 | 5114.5 |
| P/P | First level Porch | 299.0 | |
| | Screened Porch | 144.0 | |
| | Screened Porch | 144.0 | |
| | Second Level Porch | 299.0 | |
| | Third Level Porch | 239.2 | |
| | 3rd Level Pch (Lag) | 149.5 | |
| | Deck | 478.4 | 1753.1 |
| | Net LIVABLE Area | (Rounded) | 5114 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| | Breakdown | Subtotals |
| Unit A First Level | | |
| | 12.0  x   60.0 | 720.0 |
| | 3.0  x   55.2 | 162.8 |
| Unit B First Level | | |
| | 14.9  x   55.2 | 825.2 |
| | 4.8  x   12.0 | 57.6 |
| Unit A Second Level | | |
| | 14.9  x   60.0 | 897.0 |
| Unit B Second Level | | |
| | 15.0  x   60.0 | 897.0 |
| Unit A Third Level | | |
| | 14.9  x   52.0 | 777.4 |
| Unit B Third Level | | |
| | 14.9  x   52.0 | 777.4 |
| 8 Items | (Rounded) | 5114 |

File No. 0012330| Page #26

# INVOICE

**FROM:**

Edward M. Bufkin
Bufkin Appraisal Company
Post Office Box 2777
Gulf Shores, AL 36547-2777

Telephone Number: (251) 968-8235    Fax Number:  (251) 968-7679

| INVOICE NUMBER |
| --- |
| 0012330 |

| DATE |
| --- |
| 12/06/2010 |

**TO:**

Luther Sutter
P.O. Box 2012
Benton, AR 72018

Telephone Number:          Fax Number:
Alternate Number:          E-Mail: luthersutter@yahoo.com

| REFERENCE | |
| --- | --- |
| Internal Order #: | 0012330 |
| Lender Case #: | |
| Client File #: | |
| Main File # / on form: | 0012330 |
| Other File # / on form: | ADW12330 |
| Federal Tax ID: | 63-1265388 |
| Employer ID: | |

**THANK YOU FOR YOUR BUSINESS!**

## DESCRIPTION

|  |  |
| --- | --- |
| Lender: **Luther Sutter** | Client:  **Luther Sutter** |
| Purchaser/Borrower: **N/A** | |
| Property Address: **1328 West Lagoon Avenue** | |
| City: **Gulf Shores** | |
| County: **Baldwin** | State: **AL**          Zip:  **36542** |
| Legal Description: **Unit B (East), Sunrise Lagoon** | |

| FEES | AMOUNT |
| --- | --- |
| Appraisal Fee - $250 per report ($750 total) | 250.00 |
| | |
| **SUBTOTAL** | 250.00 |

| PAYMENTS | AMOUNT |
| --- | --- |
| Check #:          Date:          Description: | |
| Check #:          Date:          Description: | |
| Check #:          Date:          Description: | |
| **SUBTOTAL** | |
| **TOTAL DUE** | $      250.00 |

File No. 0012324[ Page #1]



# APPRAISAL OF REAL PROPERTY

### LOCATED AT:
1324 West Lagoon Avenue
East 1/2 of Lot 5, Carl T. Martin Unit of Gulf Shores
Gulf Shores, AL 36542

### FOR:
Luther Sutter
P.O. Box 2012
Benton, AR 72018

### AS OF:
11/30/2010

### BY:
Andrew D. Wilcoxon
Bufkin Appraisal Company
Post Office Box 2777
Gulf Shores, Alabama 36547
(251) 968-8235
bufkinappraisal@gulftel.com

File No. 0012324 Page #2

**LAND APPRAISAL REPORT**

ADW12324
File No. 0012324

**IDENTIFICATION**

| | |
|---|---|
| Borrower N/A | |
| Property Address 1324 West Lagoon Avenue | Census Tract 114.04    Map Reference Slide 2150-D |
| City Gulf Shores | County Baldwin | State AL | Zip Code 36542 |

Legal Description East 1/2 of Lot 5, Carl T. Martin Unit of Gulf Shores
Sale Price $ N/A    Date of Sale N/A    Loan Term N/A    yrs.    Property Rights Appraised ☒ Fee   ☐ Leasehold   ☐ De Minimis PUD
Actual Real Estate Taxes $ 990.00    (yr)    Loan charges to be paid by seller $ N/A    Other sales concessions N/A
Lender/Client Luther Sutter    Address P.O. Box 2012, Benton, AR 72018
Occupant Vacant    Appraiser Andrew D. Wilcoxon    Instructions to Appraiser Estimate market value

**NEIGHBORHOOD**

| | | | | | |
|---|---|---|---|---|---|
| Location | ☐ Urban | ☒ Suburban | ☐ Rural | | Good Avg. Fair Poor |
| Built Up | ☐ Over 75% | ☒ 25% to 75% | ☐ Under 25% | Employment Stability | ☐ ☒ ☐ ☐ |
| Growth Rate | ☐ Fully Dev. | ☐ Rapid | ☐ Steady | ☒ Slow | Convenience to Employment | ☐ ☒ ☐ ☐ |
| Property Values | | ☐ Increasing | ☐ Stable | ☒ Declining | Convenience to Shopping | ☐ ☒ ☐ ☐ |
| Demand/Supply | | ☐ Shortage | ☐ In Balance | ☒ Oversupply | Convenience to Schools | ☐ ☒ ☐ ☐ |
| Marketing Time | | ☐ Under 3 Mos. | ☐ 4-6 Mos. | ☒ Over 6 Mos. | Adequacy of Public Transportation | ☐ ☒ ☐ ☐ |
| Present Land Use | 50% 1 Family | 10% 2-4 Family | % Apts. | 30% Condo 10% Commercial | Recreational Facilities | ☐ ☒ ☐ ☐ |
| % Industrial | % Vacant | % | | Adequacy of Utilities | ☒ ☐ ☐ ☐ |
| Change in Present Land Use | ☒ Not Likely | ☐ Likely (*) | ☐ Taking Place (*) | Property Compatibility | ☐ ☒ ☐ ☐ |
| (*) From | To | | | Protection from Detrimental Conditions | ☐ ☒ ☐ ☐ |
| Predominant Occupancy | ☒ Owner | ☐ Tenant | % Vacant | Police and Fire Protection | ☐ ☒ ☐ ☐ |
| Single Family Price Range | $ 100,000 to $ 1,000,000 | Predominant Value $ 300,000 | | General Appearance of Properties | ☐ ☒ ☐ ☐ |
| Single Family Age | 5 yrs. to 50 yrs. | Predominant Age 25 yrs. | | Appeal to Market | ☐ ☒ ☐ ☐ |

Comments including those factors, favorable or unfavorable, affecting marketability (e.g. public parks, schools, view, noise): **The subject is located in an established resort/residential neighborhood near the Gulf of Mexico and Little Lagoon. Development in the area consists primarily of modest, raised cottages used as both primary and second homes along with commercial uses and high density condominiums concentrated along the main arteries. There are no adverse conditions other than the lack of demand for vacant lots. See comments below.**

**SITE**

Dimensions 50' x 308' +/-    =    15,400 Sq. Ft. or Acres    ☐ Corner Lot
Zoning classification R-2 Residential Single Family and Duplex    Present Improvements ☐ do ☐ do not conform to zoning regulations
Highest and best use    ☐ Present use    ☒ Other (specify) Single family/duplex site when demand warrants/currently idle

| | | | | |
|---|---|---|---|---|
| | Public | Other (Describe) | OFF-SITE IMPROVEMENTS | Topo Level, Partially wet |
| Elec. | ☒ | | Street Access ☒ Public ☐ Private | Size Typical for area |
| Gas | ☐ | | Surface Asphalt | Shape Basically square |
| Water | ☒ | | Maintenance ☒ Public ☐ Private | View Lagoon |
| San. Sewer | ☒ | | ☐ Storm Sewer ☐ Curb/Gutter | Drainage Appears adequate |
| | | Underground Elect. & Tel | ☐ Sidewalk ☒ Street Lights | Is the property located in a HUD Identified Special Flood Hazard Area? ☒ No ☐ Yes |

Comments (favorable or unfavorable including any apparent adverse easements, encroachments, or other adverse conditions): **The attached maps depict the site. The lot is level and has marsh lands between its building site and shoreline. The site fronts directly on a the Little Lagoon. According to FEMA Flood Insurance Rate Map 01003C1076L of Gulf Shores, Alabama, dated July 17, 2007, the site is in Zone AE. The subject site feature a 270' +/- pier leading to 31' X 22' dock with two boat slips.**

The undersigned has recited three recent sales of properties most similar and proximate to subject and has considered these in the market analysis. The description includes a dollar adjustment reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the comparable property is superior to or more favorable than the subject property, a minus (-) adjustment is made thus reducing the indicated value of subject; if a significant item in the comparable is inferior to or less favorable than the subject property, a plus (+) adjustment is made thus increasing the indicated value of the subject.

**MARKET DATA ANALYSIS**

| ITEM | SUBJECT PROPERTY | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1324 West Lagoon Avenue | State Highway 180 | | 8483 State Highway 180 | | 534 West Canal Drive | |
| | Gulf Shores, Alabama 36542 | Lot 1, Bay Highlands | | Lot 22, Gulf Beach Land/Dev. | | Canal Division of Gulf Shores | |
| Proximity to Subject | | 9.1 miles | | 9.0 miles | | 2.6 miles | |
| Sales Price | $ N/A | | $ 100,000 | | $ 95,000 | | $ 110,000 |
| Price | $ | $ | | $ | | $ | |
| Data Source | Inspection | MLS #150440/Owen Realty | | MLS #148001/Meyer RE | | MLS #142609/Century 21 Meye | |
| Date of Sale and Time Adjustment | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| | N/A | 10/20/2010 | | 06/14/2010 | | 10/01/2010 | |
| Location | Good-Average | Average/25% | +25,000 | Average/25% | +24,000 | Average/10% | +11,000 |
| Site/View | 50' x 308' +/- | 100' x 117'/Eff Eq. | | 50' x 260'/Eff Eq. | | 50' x 158'/Eff Eq. | |
| Topography | Level/Cleared | Level/Cleared | | Level/Cleared | | Level/Cleared | |
| Frontage/View | Lagoon/Good | Bay/Good | | Bay/Good | | Canal/Good | |
| | Pier/Dock | Bulkhead | +5,000 | None | +10,000 | None | +10,000 |
| Sales or Financing Concessions | N/A | Cash No S.C. | | Cash No S.C. | | Conventional No S.C. | |
| Net Adj. (Total) | | ☒ + ☐ − | $ 30,000 | ☒ + ☐ − | $ 34,000 | ☒ + ☐ − | $ 21,000 |
| Indicated Value of Subject | | Net 30.0 % | $ 130,000 | Net 35.8 % | $ 129,000 | Net 19.1 % | $ 131,000 |

Comments on Market Data: **The four comparables are sales in the subject's competitive market area. There have been no sales of similar lagoon-front lots within the past year; therefore, the comparables used are considered the best available indicators of value. Based upon this analysis, the subject's current market value is $130,000. Refer to Page 3 for additional comments.**

**RECONCILIATION**

Comments and Conditions of Appraisal: **The subject site appears to have been purchased for $250,000 per Baldwin County Probate Instrument #1091448 dated 12/20/2007 (post foreclosure). There have been no other sales involving the subject property within the past year. The subject has not been offered for sale on the local MLS within the past year. Refer to the addendum for additional comments, certifications, etc. There have been no other sales involving the Comparables within the past year.**

Final Reconciliation: **The Market Approach was the only method utilized in estimating the value of the subject property. This approach measures buyer and seller behavior by virtue of direct comparisons between the subject property and market sales of comparable properties.**

I ESTIMATE THE MARKET VALUE, AS DEFINED, OF SUBJECT PROPERTY AS OF    11/30/2010    to be $ 130,000

| | |
|---|---|
| Andrew D. Wilcoxon | Edward M. Bufkin, SRA    ☒ Did   ☐ Did Not Physically Inspect Property |
| Appraiser(s) | Review Appraiser (if applicable) |

[Y2K]

# LAND APPRAISAL REPORT
## MARKET DATA ANALYSIS

File No. 0012324   Page #3

ADW12324

File No. 0012324

| ITEM | SUBJECT PROPERTY | COMPARABLE NO. 4 | | COMPARABLE NO. 5 | | COMPARABLE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 1324 West Lagoon Avenue Gulf Shores, Alabama 36542 | 3254 Sea Horse Circle Lot 29, Laguna Key | | | | | |
| Proximity to Subject | | 4.5 miles | | | | | |
| Sales Price | $ N/A | $ 225,000 | | $ | | $ | |
| Price | $ | $ | | $ | | $ | |
| Data Source | Inspection | MLS#151800/Beach Bound RE | | | | | |
| | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Date of sale and Time Adjustment | N/A | 09/23/2009 | -39,000 | | | | |
| Location | Good-Average | Good/10% | -22,500 | | | | |
| Site/View | 50' x 308' +/- | 75' x 418' | -25,000 | | | | |
| Topography | Level/Cleared | Dune/Cleared | -20,000 | | | | |
| Frontage/View | Lagoon/Good | Lagoon/Good | | | | | |
| | Pier/Dock | None | +10,000 | | | | |
| | | | | | | | |
| Sales or Financing Concessions | N/A | Cash No S.C. | | | | | |
| Net Adj. (Total) | | ☐ + ☒ − $ 96,500 | | ☐ + ☐ − $ | | ☐ + ☐ − $ | |
| Indicated Value of Subject | | Net 42.9 % $ 128,500 | | Net % $ | | Net % $ | |

Comments: Comparables 1 and 2 are located on Mobile Bay in Fort Morgan, and while their views are Comparable, proximity to Gulf Shores is considered inferior. Comparable 3 is located on the Intercoastal Waterway, which is superior for boating amenities, but is somewhat distant from the Gulf beaches. Comparable 4 is a Lagoon front lot that is somewhat dated and is located in a highly restricted development. Additionally, this Comparable is larger and has a more favorable "dune" topography which is not in a FEMA Flood Hazard Area. Adjustments for this Comparable were made at 15% per annum to account for differences in market conditions. Adjustments have been made to the Comparables for the contributory value of the pier and boat dock.

There have been two relatively recent sales of improved lagoon front properties which have sold for $200,000 or less. 1464 Sandpiper Lane, which is in close proximity to the subject, sold for $172,500 on 03/12/2010 and 402 Minnow Lane sold for $200,000 on 06/17/2010. These examples of sites improved with homes illustrate the overall lack of demand and with market extraction (for the improvements) help support the estimated value for the subject site.

Due to the increased supply of foreclosure and short sale properties during the past five years and an overall lack of demand for vacant lots, values have significantly decreased. The market for vacant land has been significantly impacted as a result of the continuous decrease in existing home values, which has also experienced large declines in recent years due to various factors. This situation is impacted by market participants' inability to purchase a vacant site, improve it, and remain competitive with current supply prices which has driven prices below actual costs as foreclosures and short sales continue to be the bulk of the supply. Additionally, the Deepwater Horizon oil spill has caused market apprehension for water-front and water related properties.

File No. 0012324  Page #4

| Borrower | N/A | | | | File No. 0012324 |
|---|---|---|---|---|---|
| Property Address | 1324 West Lagoon Avenue | | | | |
| City | Gulf Shores | County Baldwin | | State AL | Zip Code 36542 |
| Lender/Client | Luther Sutter | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal Report is one of the following types:

☐ **Self Contained** (A written report prepared under Standards Rule 2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ **Summary** (A written report prepared under Standards Rule 2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ **Restricted Use** (A written report prepared under Standards Rule 2-2(c) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
— The statements of fact contained in this report are true and correct.
— The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.
— I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
— My engagement in this assignment was not contingent upon developing or reporting predetermined results.
— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
— Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).
— Unless otherwise indicated, I have performed no services regarding the subject property within the prior three years, as an appraiser or in any other capacity.

### Comments on Appraisal and Report Identification
Note any USPAP related issues requiring disclosure and any State mandated requirements:

**APPRAISER:**

Signature:

Name: Andrew D. Wilcoxon
Designation:
Date Signed: 12/06/2010
State Certification #:
or State License #: T01834
State: AL
Expiration Date of Certification or License: 9/30/2011

Effective Date of Appraisal: 11/30/2010

**SUPERVISORY APPRAISER (only if required):**

Signature:

Name: Edward M. Bufkin, SRA
Designation: SRA
Date Signed: 12/06/2010
State Certification #: R00049
or State License #:
State: AL
Expiration Date of Certification or License: 9/30/2011
Supervisory Appraiser Inspection of Subject Property:
☐ Did Not   ☐ Exterior-only from street   ☒ Interior and Exterior

## Supplemental Addendum

File No.  0012324

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 1324 West Lagoon Avenue | | | | |
| City Gulf Shores | | County Baldwin | | State AL | Zip Code 36542 |
| Lender | Luther Sutter | | | | |

### SCOPE OF THE APPRAISAL
This appraisal is based upon information which includes the inspection of the subject property and neighborhood, economic influences, public records, conversations with real estate brokers and other informed individuals, and other sources which are identified. All sources and data are considered reliable. The appraiser has not placed emphasis on any data or sources that are not considered reliable. Data regarding market sales is contained within the report and has been verified by sources as noted.

### PURPOSE AND INTENDED USE OF THE APPRAISAL
The purpose of this appraisal is to estimate the market value of the subject as defined herein. The function and only intended use of the appraisal is to assist the named lender/client in evaluating the subject for legal purposes. This report is not intended for any other use.

### APPRAISAL REPORT OPTION
The communication to the client is a Summary Appraisal Report in accordance with Standards Rule 2-2 (b) of the Uniform Standards of Professional Appraisal Practice as developed by the Appraisal Standards Board of The Appraisal Foundation.

### ESTIMATE OF REASONABLE EXPOSURE TIME
In accordance with Standards Rule 1-2 (c) of the Uniform Standards of Professional Appraisal Practice (USPAP), an opinion of reasonable exposure time linked to an opinion of market value as defined within this report must be developed by the appraiser. Exposure time can be defined as the estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market.

An estimate of reasonable exposure time for the subject is approximately twelve months based upon actual marketing periods for similar properties as well as the appraiser's conversations with real estate brokers and other individuals who are knowledgeable regarding this market area and properties similar to the appraised property. This estimate of typical exposure time is based upon the assumption that the subject had been adequately exposed under competent management and offered for sale at an amount relatively close (10% +/-) to the appraised value shown in this report. Marketing times are typically influenced by competitive pricing in the current market. Aggressively priced properties often require less exposure time.

### FINAL RECONCILIATION
The Market Approach was the only method utilized in estimating the value of the subject property. This approach measures buyer and seller behavior by virtue of direct comparisons between the subject property and market sales of comparables properties.

### APPRAISERS CERTIFICATIONS-ANDREW D. WILCOXON
This assignment was made subject to regulations of the State of Alabama Real Estate Appraisers Board.

### APPRAISERS CERTIFICATIONS-EDWARD M. BUFKIN
This assignment was made subject to regulations of the State of Alabama Real Estate Appraisers Board. The state certified appraiser who performed this appraisal has met the requirements of the Board that allow this report to be regarded as a "certified appraisal".

Neither the appraiser or any other employee of Bufkin Appraisal Company have performed any services regarding the subject property within the three year period immediately preceding acceptance of the assignment, as an appraiser or in any other capacity.

I certify that, to the best of my knowledge and belief, the reported analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute. I further certify that the use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

The Appraisal Institute conducts a mandatory program of continuing education for its designated members. As of the date of this report I, Edward M. Bufkin, SRA, have completed the requirements of the continuing education program of the Appraisal Institute.

### SYNOPSIS OF APPRAISER'S QUALIFICATIONS-EDWARD M. BUFKIN
Engaged full time as a real estate appraiser since 1985. Self employed since 1995. Received a Bachelor of Science in Business Administration with a major emphasis in Real Estate and Insurance from the University of Southern Mississippi in 1982. Granted an Alabama Real Estate Brokers License in 1983. Successfully completed numerous courses and seminars over the past twenty-seven years. Clients include virtually all major lending institutions and mortgage brokers in the area. Holds State Certificates R00049 from the Alabama Real Estate Appraisers Board and RD4605 from the Florida Real Estate Appraisers Board. Designated as an SRA member by the Appraisal Institute.

File No. 0012324 Page #6

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> *Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2.  The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.  The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.  The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.  The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.  The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Bufkin Appraisal Company
Form ACR  DEFD — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1.  I have researched the subject market area and have selected a minimum of three recent sales of properties most similar an proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment wher appropriate to reflect the market reaction to those items of significant variation.  If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2.  I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report.  I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3.  I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4.  I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction.  I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5.  I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6.  I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7.  I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective dat of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8.  I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report.  I further certify that I have noted any apparent or known adverse conditions in the subjec improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them.  I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9.  I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report.  I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifie: and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**   1324 West Lagoon Avenue, Gulf Shores, AL 36542

| **APPRAISER:** | **SUPERVISORY APPRAISER (only if required):** |
|---|---|
| Signature: | Signature: |
| Name:  Andrew D. Wilcoxon | Name:  Edward M. Bufkin, SRA |
| Date Signed:  12/06/2010 | Date Signed:  12/06/2010 |
| State Certification #: | State Certification #:  R00049 |
| or State License #:  T01834 | or State License #: |
| State:  AL | State:  AL |
| Expiration Date of Certification or License: 9/30/2011 | Expiration Date of Certification or License: 9/30/2011 |
| | ☒ Did      ☐ Did Not Inspect Property |

Form ACR_DEFD — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0012324  Page #8

## Subject Photos

| | | |
|---|---|---|
| Borrower/Client  N/A | | |
| Property Address  1324 West Lagoon Avenue | | |
| City  Gulf Shores | County  Baldwin | State  AL | Zip Code  36542 |
| Lender  Luther Sutter | | |



**Subject Front**

1324 West Lagoon Avenue



**Subject Rear**



**Subject Street**

File No. 0012324| Page #9

### Subject Photos

| | |
|---|---|
| Borrower/Client  N/A | |
| Property Address  1324 West Lagoon Avenue | |
| City  Gulf Shores   County  Baldwin   State  AL   Zip Code  36542 | |
| Lender  Luther Sutter | |



**Additional Rear**

1324 West Lagoon Avenue



**Pier**



**Dock with Slips**

File No. 0012324| Page #10

## Comparables Map

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1324 West Lagoon Avenue | | | | | |
| City Gulf Shores | | County Baldwin | | State AL | | Zip Code 36542 |
| Lender Luther Sutter | | | | | | |



File No. 0012324| Page #11

## Area Map

| | | | |
|---|---|---|---|
| Borrower/Client   N/A | | | |
| Property Address  1324 West Lagoon Avenue | | | |
| City   Gulf Shores | County   Baldwin | State   AL | Zip Code   36542 |
| Lender   Luther Sutter | | | |



File No. 0012324 Page #12

## Flood Map

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 1324 West Lagoon Avenue | | | | |
| City | Gulf Shores | County | Baldwin | State | AL | Zip Code | 36542 |
| Lender | Luther Sutter | | | | |



File No. 0012324| Page #13

**Aerial Map**

| Borrower/Client N/A | | | | |
|---|---|---|---|---|
| Property Address 1324 West Lagoon Avenue | | | | |
| City Gulf Shores | County Baldwin | State AL | | Zip Code 36542 |
| Lender Luther Sutter | | | | |



File No. 0012324I Page #15

## Site Map

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 1324 West Lagoon Avenue |
| City  Gulf Shores | County  Baldwin |
| Lender  Luther Sutter | |

City  Gulf Shores   County  Baldwin   State  AL   Zip Code  36542



File No. 0012324  Page #16

# INVOICE

**FROM:**
Edward M. Bufkin
Bufkin Appraisal Company
Post Office Box 2777
Gulf Shores, AL 36547-2777
Gulf Shores
Telephone Number: (251) 968-8235     Fax Number: (251) 968-7679

| INVOICE NUMBER |
|---|
| 0012324 |
| **DATE** |
| 12/06/2010 |

**TO:**

Luther Sutter
P.O. Box 2012
Benton, AR 72018

Telephone Number:          Fax Number:
Alternate Number:          E-Mail: luthersutter@yahoo.com

| REFERENCE | |
|---|---|
| Internal Order #: | 0012324 |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | 0012324 |
| Other File # on form: | ADW12324 |
| Federal Tax ID: | 63-1265388 |
| Employer ID: | |

**WE APPRECIATE YOUR BUSINESS**

## DESCRIPTION

Lender: Luther Sutter                    Client: Luther Sutter
Purchaser/Borrower: N/A
Property Address: 1324 West Lagoon Avenue
City: Gulf Shores
County: Baldwin                    State: AL                    Zip: 36542
Legal Description: East 1/2 of Lot 5, Carl T. Martin Unit of Gulf Shores

| FEES | AMOUNT |
|---|---|
| Appraisal Fee - $250 per report ($750 total) | 250.00 |
| | |
| **SUBTOTAL** | 250.00 |

| PAYMENTS | AMOUNT |
|---|---|
| Check #:     Date:     Description: | |
| Check #:     Date:     Description: | |
| Check #:     Date:     Description: | |
| **SUBTOTAL** | |
| **TOTAL DUE** | $     250.00 |

March 24, 2011

Attn: Rick Carruth
          RE/MAX  - Orange Beach

From: Bruce Tew
          404-925-5051 cell

RE: 1376 B Laguna Sands.

      5 pgs. total

Mar 24 11 10:48a     TEW PHONE/FAX                    7707889027                      p.2



## PURCHASE AGREEMENT



LISTING COMPANY: Realty South OB            SELLING COMPANY: ReMax OB

**EFFECTIVE DATE:** (To be completed by the last party to sign or Initial acceptance of the final offer.)

Date _____ Initials _____

PLEASE READ CAREFULLY - This is a legally binding agreement. If you have any questions, please seek advice of legal counsel. You may retain legal counsel to review and/or prepare this Purchase Agreement for you. This is a preprinted Purchase Agreement and prior to its signing by all parties is subject to negotiation between the parties to the Agreement. Wherever Purchaser or Seller is mentioned, below if there is more than one Purchaser or more than one Seller party to this agreement, it is understood that the words Purchaser or Seller shall represent all Purchaserser all Sellers.

**REAL ESTATE CONSUMER'S AGENCY DISCLOSURE:**

THE LISTING COMPANY _____ IS:   THE SELLING COMPANY ReMax OB _____ IS:
                          Print                                                    Print

(Two blocks may be checked)                  (Two blocks may be checked)
☐ An agent of the seller                     ☑ An agent of the seller
☐ An agent of the buyer                      ☒ An agent of the buyer
☐ An agent of both the seller and buyer      ☐ An agent of both the seller and buyer
and is acting as a limited Consesual dual agent.   and acting as a limited consensual dual agent
☐ Assisting the ____buyer____seller as a transaction broker   ☐ Assisting the ____buyer____Seller as a transaction broker
☐ Seller(s) Initials _____        ☐ Purchaser(s) Initials: _WJ7T_

**PURCHASER'S OFFER:**

**1. THE UNDERSIGNED, HEREINAFTER CALLED THE PURCHASER, HEREBY OFFERS TO PURCHASE THE PROPERTY**

Located in the City of Gulf Shores            County of ___Baldwin___, Alabama, commonly known as:

Laguna Sands #1376B _____, and legally described as: 1376 West Lagoon Ave

Gulf Shores, Al 36542 #1376B

for the sum of (exactly) ONE HUNDRED EIGHTY THOUSAND            Dollars ($) 180,000.00

**2. THE TERMS OF THIS PURCHASE SHALL INDICATED BY "X" BELOW (UNMARKED ITEMS DO NOT APPLY):**

☐ **CASH:** The full purchase price upon execution and delivery of Warranty Deed/Bill of Sale.

☒ **NEW CONVENTIONAL MORTGAGE:** The full purchase price upon execution and delivery of Warranty Deed/Bill of Sale, contingent upon Purchaser's ability to obtain a 30 year fixed (type) mortgage in the amount of $ 135,000.00 at an annual interest rate not to exceed 6 % of computed monthly, for which Purchaser agrees to apply for immediately and accept promptly if tendered. All prepaid and loan closing costs which lender requires borrower to pay shall be paid by Purchaser. Discount points not to exceed _____ % of mortgage amount to be paid by ☐ Purchaser ☐ Seller. Origination fee not to exceed _____ % of mortgage amount to be paid by ☐ Purchaser ☐ Seller. All other lender fees to be paid by ☐ Purchaser ☐ Seller, unless otherwise specified herein. ☐ Purchaser ☐ Seller to make repairs or replacements as required for mortgage loan purposes, not to exceed $ _____ not including possible repairs as may be required by paragraphs 5 and 9 below.

☐ **PRE-QUALIFICATION:** Purchaser has been pre-approved for loan in the amount of $ _____ by _____ loader. Written verification from lender must be attached to this Purchase Agreement

☐ **VENDOR'S LIEN DEED: $** _____ upon execution and delivery of Warranty Deed/Bill of Sale reserving a Vendor's Lien wherein the balance of $ _____ shall be amortized for a period of _____ years and shall be payable in _____ monthly/or _____ annual Installments of $ _____ ☐ including ☐ plus interest at _____ % per annum. interest to start on date of closing and the first payment to become due _____ after closing. There ☐ shall ☐ shall not be a prepayment penalty of _____% of the unpaid balance. Vendor's Lien ☐ shall ☐ shall not be assumable without written consent of lien holder, and the Vendor's Lien Note ☐ shall ☐ shall not Contain a late charge provision of _____% of payment due when paid more than _____ days after due date thereof. Purchaser agrees to provide at his/her expense a credit report, verification of income or other financial data satisfactory to Seller. The Vendors Lien shall require Purchaser to pay all ad valorem taxes when due and to furnish hazard insurance coverage on buildings and improvements (and flood insurance if required by Seller) with standard mortgage clause. Purchaser to supply first year's insurance policy at closing and continue insurance coverage on the buildings and improvements for the term of the Vendor's Lien.

☐ **FHA/VA MORTGAGE: SEE ATTACHED ADDENDUM**
**OTHER MORTGAGE PROVISIONS:** _____

_____

**APPRAISAL** This offer ☒ is ☐ is not subject to property appraising for at least the purchase price. The Purchaser shall, however, have the privilege and option of proceeding with the consummation of the contract without regard to the amount of the appraised valuation.

INITIALS BELOW INDICATE RECEIPT OF PAGE I OF 4 OF THIS AGREEMENT.
SELLER(S) INITIALS _____ PURCHASER(S) INITIALS _WJ7T_

This Purchase Agreement is for the exclusive use of members of the Baldwin County Association of REALTORS®

3. **ALL IMPROVEMENTS, PERMANENT FIXTURES AND APPURTENANCES ARE INCLUDED IN THE PURCHASE PRICE, EXCEPT:** NO EXCEPTIONS, PROPERTY TO CONVEY AS SEEN ON 3/23/11. FULLY FURNISHED.

4. **NO ITEMS OF PERSONAL PROPERTY** shall be transferred to purchase unless specifically itemized herein. Fixtures and improvements located on Fair hope Single Tax Corporation property shall be part of the property and not considered personal.

ANY **PERSONAL PROPERTY** that does remain is of **NO VALUE** for appraisal and mortgage loan purposes unless otherwise noted.

5. **PURCHASER HAS EXAMINED THIS PROPERTY** and agrees to accept same in its present condition, except as may be specified herein. Heating, cooling and air-conditioning equipment, including window units, plumbing, and electrical systems and all included appliances **shall** be warranted by Seller to be in working order at time of conveyance. Providing utility availability, if necessary, for this inspection is the responsibility of the ☐ Purchaser ☒ Seller. Purchaser may be required to sign a final Walk-through/Systems Check Inspection Form, indicating that the inspection was completed and that the property was acceptable, unless otherwise noted on the form. Purchaser understands that if a Sales Associate accompanies Purchaser on this final inspection it will be as a courtesy only and not as a person qualified to detect any defect. Cost of septic tank inspection and cost of well water testing, if any required, shall be paid for by ☐ Purchaser ☐ Seller.

6. **PURCHASER IS AWARE** that professional inspection of home structure and systems, and any other items of importance to Purchaser, are available by a representative of Purchaser's choosing. Sale ☒ Is ☐ Is not subject to said inspection. If sale is subject to said inspection, Purchaser agrees to pay for same, and if said inspection is found to be unsatisfactory to Purchaser, Seller is to be notified in writing within ____10____ business days of acceptance of this agreement. Otherwise, this contingency will be considered removed at the expiration of such period.

7. **A HOME WARRANTY** subject to limitations, exclusions, and deductibles, ☐ shall ☐ shall not be furnished at expense of ☐ Purchaser ☐ Seller.

8. **LEAD-BASED PAINT DISCLOSURE AND CONTINGENCY.** Federal law requires that for all residential dwellings constructed prior to 1978, Purchaser is put on notice of his/her rights to test for lead-based paint. **Check here** ☐ **If a lead-based paint warning is attached** and made part of this Purchaser Agreement.

9. **SELLER SHALL FURNISH WRITTEN EVIDENCE**, from a bonded and licensed termite control company, that a **visual inspection by them of accessible areas of the dwelling, carport and garage** indicated that the dwelling, carport and garage are free from active infestation by wood-destroying insects or fungus and damage caused by currently active infestation. The current termite contract if any, is to be transferred to Purchaser at Purchaser's expense. If a Structural Damage Report is required by Lender, the cost shall be paid by ☐ **Purchaser** ☒ **Seller.**

10. **ALL AD VALOREM TAXES, HOMEOWNERS ASSOCIATION DUES AND ANY RENTS** being collected from existing tenants, are to be prorated at closing. Purchaser to honor any confirmed rentals booked at time of closing at published rental rates. All security deposits, keys and lease or rental management agreements to be transferred to Purchaser at closing. **NOTE:** Taxes are prorated based upon current information furnished by the Revenue Commissioner's Office. Brokers and Real Estate Associates cannot and do not assume any responsibility for any change, modification or adjustment to the current tax assessment by the Revenue Commissioner's Office. If property is assessed under the **CURRENT USE CLASSIFICATION**, then any rollback or other additional assessment levied against property as a result of this sale shall be paid by ☐ Purchaser ☒ Seller.

11. **PROPERTY ASSESSMENTS** which become a lien on the property prior to closing date shall be paid by the Seller, without proration. Any public improvements, now installed but not yet a lien, shall be paid by ☐ **Purchaser** ☒ **Seller.** Any Homeowners Association assessments known to the parties at the time of the execution of Purchase Agreement that become due prior to closing shall be paid by ☐ **Purchaser** ☒ **Seller.** Homeowners Association assessments that have been approved by the Association which become due after closing shall be paid by ☒ **Purchaser** ☐ **Seller.**

12. **A CURRENT SURVEY** ☐ **shall** ☐ **shall not** be furnished prior to closing and paid for by ☐ **Purchaser** ☐ **Seller.**

13. A. **PURCHASER** to pay closing agent settlement fee, recording fee and mortgagee title insurance policy required by lender.
    B. **SELLER** to pay for preparation of Warranty Deed/Bill of Sale and Owner's Title Insurance Policy in the amount of the purchase price.

INITIALS BELOW INDICATE RECEIPT OF PAGE 2 OF 4 OF THIS AGREEMENT.
SELLER(S) INITIALS _____    PURCHASER(S) INITIALS __WBT__

This Purchase Agreement is for the exclusive use of members of the Baldwin County Association of REALTORS®

Mar 24 11 10:49a        TEW PHONE/FAX                                7707889027                    p.4

14. **SALE SHALL BE CLOSED AND DEED/BILL OF SALE** delivered on __APRIL 25_____ ,20 _11__, or sooner, if mutually agreed upon in writing by Purchaser and Seller. Time shall be of the essence with all terms and conditions and particulars of this agreement. Title is to be taken in the names(s) of __WILLIAM BRUCE TEW_____

_____

☒ **with** ☐ **without** right of survivorship, in a form satisfactory to Purchaser. The property is sold and is to be conveyed subject to mineral and mining rights not owned by Seller and subject to present zoning and flood plain classification, utility easements, covenants, restrictions and building set back lines. Seller owned mineral rights ☐ **do** ☐ **do not** convey.

15. **A PERIOD OF THIRTY (30) DAYS** from the date of closing, as stated in paragraph 14, shall be allowed for closing if the closing is delayed by reason of title defects that can be readily corrected.

16. **A PERIOD OF TEN (10) DAYS** from date of closing, as stated in paragraph 14, shall be allowed for closing if the terms of purchase require a new mortgage and the lender issues a written unconditional commitment-letter no later than the date of closing in paragraph 14 above but is delayed in consummating the mortgage.

17. **RISK OR LOSS BY FIRE or other casualty, or condemnations shall be on the Seller until title Is conveyed.**

18. **POSSESSION TO BE GIVEN the Purchaser** ☒ **at closing or** ☐ _____ **days after closing.** In the event Seller retains possession of the property beyond this date, Seller shall pay $ _____ per day as rental, but will vacate by _____ ,20 _____
_____ ☐ a.m. ☐ p.m., without fail. Seller does hereby guarantee that at the date of surrender of occupancy by the Seller, the property shall be in the same condition as on the day of closing. Seller shall provide to Purchaser keys and/or means to operate all property locks, mailboxes and security systems at date of possession. _(WBT 3-24-11)_

19. **FOR VALUABLE CONSIDERATION** Purchaser gives the Listing Broker above named until ~~3/28~~ _3/25_ ,20 _11_
__5__ ☐ a.m. ☒ p.m., to obtain the written acceptance of this offer and agrees that this offer, when signed, will constitute a binding agreement between the Purchaser and Seller. Purchaser herewith deposits $ 2,500. in the form of ☐ **cash** ☒ **check** evidencing Purchaser's good faith, to be deposited in escrow by **Selling Broker (herein referred to as Holder) upon acceptance of** offer and to be applied to the purchase price at time of closing. If this offer is not accepted, the earnest money deposit is to be returned to the Purchaser. If this offer is accepted and the title is not marketable, or if the terms of purchase are contingent upon ability to obtain a new mortgage or Vendor's Lien or other contingencies as specified which cannot be met, this deposit to be refunded upon written agreement signed by Purchaser and Seller. The parties to this Agreement **understand and acknowledge** that disbursement of earnest monies held by Holder/Escrow Agent can occur only as follows: (A) at closing; (B) upon written agreement signed by Purchaser and Seller; or (C) upon court order. **In the event a dispute arises between Purchaser and Seller as to the final disposition of the earnest money, Holder shall be authorized to Interplead the earnest money Into a Court of competent jurisdiction. Holder shall be entitled to be compensated by the party who does not prevail In the Interpleader Action for Its costs and expenses, Including reasonable attorney's fees incurred In filing said Interpleader.** All parties to this Agreement agree that Holder may deposit the earnest money in an interest - bearing escrow/trust account and that Holder will retain the interest earned on said deposit. In the event Earnest Money check is returned for insufficient funds or otherwise not honored by the bank drawn upon and Purchaser has not delivered good funds to Holder within three (3) days of bank's notice to Holder, then and in that event, the Seller, at his sole discretion shall have the right to terminate this Agreement by giving written notice to the Purchaser.

20. **Other provisions:** __PURCHASER TO VIEW AND APPROVE CONDO DOC AND FINANCES.__

_____

_____

_____

21. **DEFAULT LEGAL REMEDIES:**
**A. Default by PURCHASER:** In the event that PURCHASER fails to consummate this Agreement, **SELLER** shall have the right to pursue any remedy available at law or in equity as a result of such breach, including specifically, without limitation, the right (a) to **RETAIN the EARNEST MONEY,** (b) the right to **ENFORCE SPECIFIC PERFORMANCE** of this Agreement, and (c) the right to **TERMINATE this AGREEMENT,** and thereafter **RECOVER DAMAGES** against **PURCHASER** for breach by PURCHASER thereof.
**B. Default by SELLER:** In the event that **SELLER** fails to consummate this Agreement, **PURCHASER** shall have the right to pursue any remedy available at law or in equity as a result of such breach, including specifically, without limitation, the right (a) to receive the **RETURN** of the **EARNEST MONEY,** (b) the right to **ENFORCE SPECIFIC PERFORMANCE** of the obligation of Seller to execute the documents required to convey the Real Property to **PURCHASER,** and (c) the right to **TERMINATE this AGREEMENT** and thereafter **RECOVER DAMAGES** against **SELLER** for breach by SELLER thereof.
**C. ARBITRATION:** If an Arbitration clause is attached to this Purchase Agreement as an addendum and is signed by all Purchaser and Sellers to this Purchase Agreement, the same shall supersede the remedies provided for elsewhere.

INITIALS BELOW INDICATE RECEIPT OF PAGE 3 OF 4 OF THIS AGREEMENT.
SELLER(S) INITIALS _____ PURCHASER(S) INITIALS _WBT_

This Purchase Agreement is for the exclusive use of members of the Baldwin County Association of REALTORS®

**22. THE PURCHASE PRICE AND TERMS OF THIS SALE MAY BE DISCLOSED,** after closing, by the real estate companies for use in the ordinary conduct of their business. Real Estate Brokers/Sales Associates may benefit financially as a result of recommending real estate-related services to clients and customers. All parties to this Agreement are advised to also seek other services or compare cost of services in these related fields and do business with whomever or wherever is most desirable to them.

**23. PURCHASER AND SELLER hereby acknowledge and confirm that this Purchase Agreement states the entire agreement between the parties hereto and no modification of this Agreement shall be binding unless attached hereto and signed by both Purchaser and Seller.**

**24. THE FACSIMILE TRANSMISSION** of a signed copy hereof or any counteroffer to the other party or his/her Sales Associate, followed by facsimile acknowledgment of receipt, shall constitute delivery of said signed document. The parties agree to affirm such delivery by mailing or personally delivering a signed original copy to the other party or his/her Sales Associate.

**25. ALL PARTIES TO THIS PURCHASE AGREEMENT** understand and acknowledge that Listing Brokers/Selling Brokers and/or Sales Associates are not parties to this Purchase Agreement and as such do not assume any liability for performance or nonperformance of any parties to this agreement.

**26. PURCHASER ACKNOWLEDGES RECEIPT** of a copy of this Agreement and attached addenda, if any, which are made a part of this Purchase Agreement. Date _3/24_ ,20 _11_ _5_ ☐ a.m. ☒ p.m.,

Purchaser X _William Bruce Tew_ (print) _William Bruce Tew_ SS # _XXXXXXXXXX_

Purchaser X _____ (print) _____ SS # _____

Purchaser's Address _____ Phone: (res) _____ (wk) _____

Witness X _____ Selling Associate: X _RICK CARRUTH SR_ (res) _____ (wk) _752-7663_

**27 .SELLER'S ACCEPTANCE OF OFFER/RECEIPT OF ACCEPTANCE:** Date: _____ ,20 ___ _____ ☐ a.m. ☐ p.m.
The above offer is hereby accepted _____

**In the event a counteroffer Is made,** it shall expire on _____ ,20 ___ _____ ☐ a.m. ☐ p.m. , if Purchaser has not given prior written acceptance. Seller acknowledges receipt of a copy of this Agreement and attached addenda, if any which are made part of this Purchase Agreement.

Seller X _____ (print) _____ SS # _____
(print name as title is held)

Seller X _____ (print) _____ SS # _____
(print name as title is held)

Seller's Address _____ Phone: (res.) _____ (wk) _____

Witness X _____ Listing Associate: X _____ (res.) _____ (wk) _____

**28. PURCHASER'S ACCEPTANCE OF COUNTEROFFER/RECEIPT** OF ACCEPTANCE:
Purchaser acknowledges receipt of Seller's acceptance of Purchaser's offer. In the event this acceptance was subject to certain changes from the Purchaser's offer, the Purchaser agrees to accept said changes. All other provisions of the original offer remain unchanged.

Date: _____ ,20 _____ ☐ a.m. ☐ p.m., Purchaser X _____

INITIALS BELOW INDICATE RECEIPT OF PAGE 4 OF 4 OF THIS AGREEMENT.
SELLER(S) INITIALS _____ PURCHASER(S) INITIALS _WBT_

This Purchase Agreement is for the exclusive use of members of the Baldwin County Association of REALTORS®



PRESS FIRMLY you are writing through 4 copies.

PURCHASE AGREEMENT
RESIDENTIAL PROPERTY



EFFECTIVE DATE: DATE: _____    INITIALS: _____ / _____
(To be completed by the last party to sign acceptance of the final offer.)

**PLEASE READ CAREFULLY** - Alabama is a Caveat Emptor State. If you have any questions, please seek advice of legal counsel. This is a legally binding preprinted Purchase Agreement and prior to its signing by all parties is subject to negotiation between the parties to the Agreement. You may retain legal counsel to review and/or prepare this Purchase Agreement for you. Wherever Buyer or Seller is mentioned below, if there is more than one Buyer or more than one Seller party to this Agreement, it is understood that the words Buyer or Seller shall represent all Buyers or all Sellers. Any items left unmarked do not apply and are not material to this transaction.

**REAL ESTATE CONSUMER'S AGENCY DISCLOSURE (RECAD):**
The Listing Company is: REALTY SOUTH ORANGE BEACH       The Selling Company is: REMAX OF GULF SHORES
(Two blocks may be checked)                           (Two blocks may be checked)

| | | | |
|---|---|---|---|
| ☒ | An agent of the Seller | ☐ | An agent of the Seller |
| ☐ | An agent of the Buyer | ☒ | An agent of the Buyer |
| ☐ | An agent of both the Seller and Buyer, and is acting as a limited consensual dual agent | ☐ | An agent of both the Seller and Buyer, and is acting as a limited consensual dual agent |
| ☐ | Assisting the ___ Buyer ___ Seller as a Transaction Broker | | Assisting the ___ Buyer ___ Seller as a Transaction Broker |

INITIAL 

_____ /
Seller(s) Initials

PLS /
Buyer(s) Initials

Subject to the terms, conditions, addendums, and disclosures contained or referenced herein, the undersigned execute this Purchase Agreement ("Agreement") as follows:

1.  **PROPERTY AND PURCHASE PRICE:** Buyer hereby offers to buy and Seller hereby agrees to sell the Property located in or near GULF SHORES _____ Alabama, whose commonly known address is 1376 WEST LAGOON AVENUE and which is legally described as UNIT 1376 A OF LAGUNA SANDS TAX PPIN# 273363 _____ ("Property") together with all improvements, shrubbery, plantings, fixtures, appurtenances, and subject to any existing building and use restrictions, recorded covenants, deed restrictions, previous mineral exclusions, zoning ordinances, zoning restrictions, zoning designation, the current flood plain and governmental or subdivision regulations and easements, if any, of record, for the sum of ONE HUNDRED NINETY THOUSAND DOLLARS _____ ($ 190,000.00 _____).

2.  **THE TERMS OF THE PURCHASE SHALL BE AS MARKED BELOW:**

    A.  **x___ CASH.** The full Purchase Price upon execution and delivery of Warranty Deed or Warranty Bill of Sale with required Lease.

    B.  ____ **NEW MORTGAGE.** The full Purchase Price upon execution and delivery of Warranty Deed/Warranty Bill of Sale, contingent upon Buyer's ability to obtain a _____ year _____ (type) mortgage in the approximate amount of $_____, or in amount equal to or greater than _____% of the Purchase Price, at an INTEREST RATE NOT TO EXCEED _____%, which Buyer agrees to apply for immediately, use best efforts to obtain, and accept promptly if tendered. All lender required, or related fees and credit report fee shall be paid by the Buyer, unless otherwise agreed upon in writing by all parties. Buyer shall pay all loan closing costs unless otherwise noted, including prepaid items and recording fees. Written notification from the lender that Buyer's ability to obtain financing under the terms of this Agreement is within the lender's guidelines is to be provided within _____ business days of the Effective Date of this Agreement.

    C.  ____ VENDOR'S LIEN DEED:  SEE ATTACHED ADDENDUM
    D.  ____ FHA/VA MORTGAGE:  SEE ATTACHED ADDENDUM
    E.  ____ OTHER MORTGAGE PROVISIONS: _____

    _____
    _____

This Purchase Agreement is for the exclusive use of members of the Baldwin County Association of REALTORS®.
The Baldwin County Association of REALTORS®, Inc., and its members, are not engaged in rendering legal, accounting or other professional service by approving this form. This form is published as a service to member real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form. If a user of this form makes any substantive changes to any portions above, the form will no longer be an approved form. Buyer and Seller are encouraged to seek advice from legal and tax advisors prior to the purchase or sale of any property.

INITIALS BELOW INDICATE RECEIPT OF PAGE 1 OF 6 PAGES OF THIS AGREEMENT.
SELLER(S) INITIALS: _____ _____   PURCHASER(S) INITIALS: PLS _____ _____

10/2009

PROPERTY ADDRESS <u>1376 WEST LAGOON AVENUE, GULF SHORES, AL 36542</u>

3.     **PERSONAL PROPERTY:** No items of personal property shall be transferred to Buyer unless specifically itemized herein: <u>ALL CONVEY AS VIEWED ON 3/15/11</u>
<u> </u>. Any items of personal property listed herein or otherwise attached hereto shall be conveyed at no value for appraisal purposes. Fixtures and improvements located on Fairhope Single Tax Corporation property shall be part of the Property and not considered personal.

4.     **TERMITE REPORT:** Seller is to furnish at Seller's expense an Alabama Wood Infestation Report issued by a bonded and licensed pest control company stating that a visual inspection of accessible areas of the dwelling and garage and/or carport and any detached buildings given value by an appraisal indicates there is no visible sign of infestation or damage by Formosan and subterranean termites, powder post beetles, wood boring beetles, dry wood termites and wood decaying fungi. If active infestation or fungus is reported, treatment of the entire dwelling will be required unless Property is under a current termite contract in which case a re-treatment of the affected area will be permitted. Treatment will also be required in affected outbuildings if required by lender. A structural inspection by a licensed contractor at <u>X  </u> Seller's <u>  </u> Buyer's expense may be required by the lender if any evidence of previous infestation and/or damage is found. If not required by the lender, Buyer may order a structural inspection, satisfactory to Buyer at Buyer's expense. Existing termite contract will be kept current and transferred to Buyer at Closing, subject to termite company approval, the cost of the transfer to be at Buyer's expense. If Property is not covered by an existing termite contract, Seller <u>  </u> shall <u>  </u> shall not provide termite replacement coverage <u>  </u> with <u>  </u> without Formosan coverage at Seller's expense.

5.     **APPRAISAL:** This offer <u>  </u> is <u>X  </u> is not subject to Property appraising for at least the Purchase Price. If the offer is subject to said appraisal and the Property does not appraise for at least the Purchase Price, Seller is to be notified in writing within <u>  </u> business days following the Effective Date of this Agreement or this contingency shall be deemed removed. The Buyer shall, however, have the privilege and option to waive this contingency and proceed with the consummation of this Agreement without regard to the amount of the appraised valuation. (If Fairhope Single Tax Corporation Property, an appraisal is required at the expense of <u>  </u> Buyer <u>  </u> Seller).

6.     **INSURANCE:** This offer <u>  </u> is <u>X  </u> is not subject to Buyer's ability to obtain insurance in an amount and for a cost satisfactory to Buyer and Buyer's lender (if applicable). If satisfactory insurance cannot be obtained, Seller is to be notified in writing within <u>  </u> business days following the Effective Date of this Agreement or this contingency shall be deemed removed.

7.     **INSPECTIONS:** This offer <u>X  </u> is <u>  </u> is not contingent on inspection(s) satisfactory to Buyer. Any inspections and report, if ordered by Buyer, shall be at Buyer's expense. If any such inspection is not satisfactory, Seller shall be notified in writing within <u>*10*</u> business days following the Effective Date of this Agreement or this contingency shall be deemed removed. Seller is not obligated to pay for improvements recommended by such inspection other than those that may be required by other provisions of this Agreement. If requested, Buyer shall furnish Seller, at no cost, a copy of any inspection reports. The cost of any septic tank inspection or the cost of well water testing, if required, shall be paid by <u>  </u> Buyer <u>  </u> Seller. Any connection fees required for said inspections shall be paid by <u>  </u> Buyer <u>  </u> Seller.

8.     **MINERAL RIGHTS:** Subject to the provisions herein, Seller owned mineral rights <u>  </u> do <u>  </u> do not convey.

9.     **SYSTEMS AND COMPONENTS/FIXTURES:** Seller <u>X  </u> does <u>  </u> does not warrant that the heating, cooling and air conditioning equipment, including window units, plumbing, electrical systems and all included appliances shall be in proper working order at time of Closing.

10.     **CONDITION OF PROPERTY:** Upon Closing, Seller shall leave the Property clean and free of debris. **Except to the extent expressly set forth herein,** (1) Neither Seller nor Broker nor any REALTOR® makes any representations or warranties regarding condition of the Property; (2) Buyer has the obligation to determine any and all conditions of the Property material to Buyer's decision to buy the Property, including but not limited to, the condition of the heating, cooling, plumbing and electrical systems and any built-in appliances; the roof and the basement, including leaks therein; the presence of asbestos or toxic mold; the presence of arsenic in treated wood; the size and area of the Property; construction materials and workmanship; the proper construction of the Property by the builder or the developer; structure condition; utility and sewer or septic system availability, condition and location; water service and well water system quality and condition; subsurface and subsoil conditions, sinkholes and mining or other soil conditions, including radon or other potentially hazardous gases or toxic materials; Property access, easements, covenants, restrictions, developments, structures and any matters affecting the character of the neighborhood or subdivision; and (3) **IT IS THE BUYER'S DUTY TO THOROUGHLY INSPECT THE PROPERTY PRIOR TO CLOSING. THIS TRANSACTION IS CONSIDERED AN AS-IS WHERE-IS SALE EXCEPT AS OTHERWISE PROVIDED HEREIN.** Unless otherwise addressed in Paragraph 7 above, Seller will provide utilities and access for Buyer's inspection(s).

This Purchase Agreement is for the exclusive use of members of the Baldwin County Association of REALTORS®.
The Baldwin County Association of REALTORS®, Inc., and its members, are not engaged in rendering legal, accounting or other professional service by approving this form. This form is published as a service to member real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form. If a user of this form makes any substantive changes to any portions above, the form will no longer be an approved form. Buyer and seller are encouraged to seek advice from legal and tax advisors prior to the purchase or sale of any property.

INITIALS BELOW INDICATE RECEIPT OF PAGE 2 OF 6 PAGES OF THIS AGREEMENT.
SELLER(S) INITIALS: <u>  </u> <u>  </u> PURCHASER(S) INITIALS: <u>DCS</u> <u>  </u>

PROPERTY ADDRESS 1376 WEST LAGOON AVENUE, GULF SHORES, AL 36542 _____

11. **HOME WARRANTY:** A home warranty subject to limitations, exclusions and deductibles _____ shall _____ shall not be furnished at the expense of _____ Buyer _____ Seller, from _____ (warranty company), at a cost not to exceed $ _____, and shall be ordered by the _____ Listing Company _____ Selling Company.

12. **LEAD-BASED PAINT DISCLOSURE AND CONTINGENCY:** Federal law requires that for all residential dwellings constructed prior to 1978, Buyer is put on notice of his/her rights to test for lead-based paint. Check here _____ if a lead-based paint warning is attached and made part of this Agreement.

13. **TITLE INSURANCE/CONVEYANCE:** An Owner's policy of title insurance in the amount of the Purchase Price shall be provided at Closing. Closing shall be at a location of Seller's election unless otherwise noted here: _____; Title is to be taken in the name(s) of: PATRICIA LYNETTE SMITH _____ _____, _____ with _____ without right of survivorship, in a form satisfactory to Buyer. If Fairhope Single Tax Corporation Property is being conveyed it will be subject to a 99 year Lease as referenced above.

14. **PROPERTY TAXES AND LEASE PAYMENTS:** All property taxes and lease payments being collected from existing leases are to be prorated at time of Closing. All security deposits, keys and lease agreements or rental management agreements to be transferred to Buyer at Closing, subject to current lease agreements and management agreements. NOTE: Taxes are prorated based upon current information furnished by the Revenue Commissioner's Office. REALTORS® cannot and do not assume any responsibility for any change, modification or adjustment to the current tax assessment by the Revenue Commissioner's Office. If Property is assessed under CURRENT USE CLASSIFICATION, any roll back or other additional assessment levied against Property as a result of this sale shall be paid by X Buyer _____ Seller. Any additional information regarding tax prorations should be obtained directly from the title company.

15. **UNPAID ASSESSMENTS:** Any Property assessments which become a lien attached to the Property prior to the Closing Date shall be paid by the Seller, without proration. Any public improvements, now installed but not yet filed as a lien, shall be paid by _____ Buyer X _____ Seller. Any Owners Association assessments that are due and payable prior to the Effective Date of this Agreement shall be paid by _____ Buyer X _____ Seller. Any Owners Association assessments known to the parties at the time of the Effective Date of this Agreement that *become* due prior to Closing but after the date of Effective Date of this Agreement shall be paid by _____ Buyer X _____ Seller. Any Owners Association assessments that are approved by the Association prior to the Closing Date but do not become due and payable until after the Closing date shall be paid by X _____ Buyer _____ Seller.

16. **DISCLOSURE:** The Purchase Price and the terms of this sale may be disclosed, after Closing, by the real estate companies for use in the ordinary conduct of their business. REALTORS® may benefit financially as a result of recommending real estate-related services to clients and customers. All parties to this Agreement are advised to also seek other services or compare cost of services in these related fields and do business with whomever or wherever is most desirable to them.

17. **SURVEY:** Select one of the following:
   A. _____ A survey showing all improvements shall be provided to Buyer at _____ Buyer's _____ Seller's expense and ordered by the _____ Listing Company _____ Selling Company.
   B. _____ Seller will provide and Buyer will accept an existing survey or plat.
   C. _____ Buyer has been given the opportunity to request a new survey or to accept an existing survey or plat and has declined.
   D. _____ Additional survey requirements: _____ _____ _____

18. **CLOSING AND POSSESSION DATES:** The sale shall be Closed and the Warranty Deed or Warranty Bill of Sale with required Lease delivered on APRIL 29 , 20 11 , or sooner if mutually agreed upon in writing by Buyer and Seller. Time is of the essence with respect to all terms, conditions, obligations and particulars of this Agreement. Possession is to be given the Buyer at Closing or within _____ _____ days after Closing, unless provided herein, Seller warrants that the Property shall be in substantially the same condition at the Closing Date as it is as of the Effective Date, and further agrees to be responsible for any move out related damage. In the event Seller retains possession of the Property beyond the Closing Date, Seller does hereby warrant that at the date of surrender of occupancy by Seller, the Property shall be in the same condition as of the Closing Date. NOTE: If Buyer is to be given possession prior to Closing, or if Seller is to remain in possession after Closing, it is recommended that the parties enter into a written occupancy agreement. Seller shall provide to Buyer keys, garage door opener(s) and/or means to operate all Property locks, mailboxes, garage doors and security systems and means of access to all Property amenities at date of possession.

This Purchase Agreement is for the exclusive use of members of the Baldwin County Association of REALTORS®.
The Baldwin County Association of REALTORS®, Inc., and its members, are not engaged in rendering legal, accounting or other professional service by approving this form. This form is published as a service to member real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form. If a user of this form makes any substantive changes to any portions above, the form will no longer be an approved form. Buyer and seller are encouraged to seek advice from legal and tax advisors prior to the purchase or sale of any property.

INITIALS BELOW INDICATE RECEIPT OF PAGE 3 OF 6 PAGES OF THIS AGREEMENT.
SELLER(S) INITIALS: _____  _____     PURCHASER(S) INITIALS: DLS _____



10/2009

PROPERTY ADDRESS 1376 WEST LAGOON AVENUE, GULF SHORES, AL 36542

19. **CLOSING COSTS:** BUYER to pay Closing agent settlement fee, recording fee, any mortgagee title insurance policy required by Lender and all fees required for the transfer of Property pursuant to Fairhope Single Tax Corporation requirements. SELLER to pay for preparation of Warranty Deed or Warranty Bill of Sale and Owner's Title Insurance Policy in the amount of the Purchase Price. All other costs shall be borne as otherwise indicated herein, or as specifically agreed to in writing.

20. **EXTENSION OF CLOSING DATE:** A period of TEN (10) days from the Closing Date in Paragraph 18 above shall be allowed if the Closing is delayed by reason of title defects that can be readily corrected. A period of FIVE (5) days from Closing Date contained in Paragraph 18 above shall be allowed for Closing if the terms of purchase require a new mortgage and the lender has issued a written unconditional commitment letter no later than the date of Closing named above, but is otherwise reasonably delayed in consummating the mortgage as set forth herein.

21. **RISK OF LOSS:** If the Property is destroyed or materially damaged by reason of fire, flood, hurricane, named tropical storm, tornado, or other acts of God between the Effective Date of this Agreement and the Closing Date, and Seller is unable to restore it to its previous condition prior to said Closing Date, the Buyer shall have the option of canceling this Agreement and recovering the Earnest Money pursuant to Paragraph 22 herein, provided that notice of cancellation is received prior to Closing Date or Buyer may otherwise accept the Property in its damaged condition. Risk of loss, as set forth above or by condemnation, shall be on the Seller until title is conveyed.

22. **FOR VALUABLE CONSIDERATION CLAUSE:** Buyer gives the Listing Broker above named until MARCH 18 , 20 11 , at _____ a.m. 12 p.m., to obtain the written acceptance of this offer and agrees that this offer, when signed, will constitute a binding Agreement between the Buyer and Seller. Buyer herewith deposits $ 2,000.00 as Earnest Money in the form of _____ cash X check evidencing Buyer's good faith, to be deposited in escrow by Selling Broker (herein referred to as Holder), unless otherwise noted herein below, upon Acceptance of offer and to be applied to the Purchase Price at time of Closing. If this offer is not accepted, the earnest money deposit is to be returned to the Buyer. If this offer is accepted and the title is not marketable, or if the terms of purchase are contingent upon ability to obtain a new mortgage or Seller Financing or other contingencies as specified which cannot be met, and which are not otherwise satisfied or removed, this deposit to be refunded upon written instructions signed by Buyer and Seller. The parties to this Agreement understand and acknowledge that disbursement of earnest monies held by Holder/Escrow Agent can occur only as follows: (A) at Closing; (B) upon written agreement signed by Buyer and Seller; or (C) upon court order. **In the event a dispute arises between Buyer and Seller as to the final disposition of the earnest money, Holder shall be authorized to Interplead the earnest money into a Court of competent jurisdiction pending a decision by said court. Holder shall be entitled to be compensated by the party who does not prevail, or otherwise out of said interplead funds, in the Interpleader action for its costs and expenses, including reasonable attorney's fees incurred in filing said Interpleader.** All parties to this Agreement agree that Holder may deposit the earnest money in an interest-bearing escrow/trust account and that Holder will retain the interest earned on said deposit. In the event Earnest Money check is returned for insufficient funds or otherwise not honored by the bank drawn upon, the Buyer shall be required to deliver good funds to Holder within three (3) days of bank's notice to Holder. If Buyer does not deliver said good funds, then and in that event, the Seller, at his sole discretion, shall have the right to terminate this Agreement by giving written notice to the Buyer.

23. **OTHER OFFERS WHILE BUYER'S OFFER IS PENDING:** Buyer hereby acknowledges that offers other than Buyer's offer may have been made or may be made before Seller acts on or while Seller is considering Buyer's offer or counteroffer. While the Buyer's offer or counteroffer is pending, and before this Agreement becomes Effective, Seller hereby expressly reserves the right to reject Buyer's offer or counteroffer or to withdraw any offer previously made by Seller to Buyer relating to the Property, and to accept any other offer or counteroffer. THIS OFFER AND ANY COUNTEROFFER MAY BE WITHDRAWN AT ANY TIME PRIOR TO ACCEPTANCE BY BOTH BUYER AND SELLER.

24. **DEFAULT/LEGAL REMEDIES:**
   A. Default by BUYER: In the event that Buyer fails to consummate this Agreement, Seller shall have the right to pursue any remedy available at law or in equity as a result of such breach, including specifically, without limitation, the right (a) to retain the Earnest Money, (b) the right to enforce specific performance of this Agreement, and (c) the right to terminate this Agreement, and thereafter recover damages against Buyer for breach by Buyer thereof.
   B. Default by SELLER: In the event that Seller fails to consummate this Agreement, Buyer shall have the right to pursue any remedy available at law or in equity as a result of such breach, including specifically, without limitation, the right (a) to receive the return of the Earnest Money, (b) the right to enforce specific performance of the obligation of this Agreement and thereafter recover damages against Seller for breach by Seller thereof.
   C. Arbitration: If an Arbitration clause is attached to this Agreement as an addendum and is signed by both Buyers and Sellers to this Agreement, the same shall supersede the default remedies provided for herein.

This Purchase Agreement is for the exclusive use of members of the Baldwin County Association of REALTORS®.
The Baldwin County Association of REALTORS®, Inc., and its members, are not engaged in rendering legal, accounting or other professional service by approving this form. This form is published as a service to member real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form. If a user of this form makes any substantive changes to any portions above, the form will no longer be an approved form. Buyer and seller are encouraged to seek advice from legal and tax advisors prior to the purchase or sale of any property.

INITIALS BELOW INDICATE RECEIPT OF PAGE 4 OF 6 PAGES OF THIS AGREEMENT.
SELLER(S) INITIALS: ____ ____   PURCHASER(S) INITIALS: RS ____

10/2009

PROPERTY ADDRESS 1376 WEST LAGOON AVENUE, GULF SHORES, AL 36542

25.   **ELECTRONIC SIGNATURES:** Electronic signatures or facsimiles of a signed copy, or of any offer or counteroffer to the other party or his/her REALTOR®/Sales Associate/Agent shall constitute delivery of said signed document unless otherwise noted herein: _____

26.   **OTHER AGREEMENTS/DISCLAIMER:** It is agreed by the parties that the Buyer in making this offer and in entering into this Agreement has not relied upon any statement, representation, promise, understanding or agreement whatsoever, whether expressed or implied, by the Seller, or any REALTOR® outside the written parameters of this Agreement. No modification of this Agreement shall be binding unless attached hereto and signed by both Buyer and Seller. All parties to this Agreement understand and acknowledge that REALTORS® are not parties to this Agreement, and as such, do not assume any liability for performance or nonperformance of any parties to this Agreement. Further, Seller and Buyer agree to discharge and release the brokers and sales associates from any claims, demands, damages, actions, causes of actions or suits at law arising in any way from this Agreement related to the Property, and shall include but not be limited to the condition of the heating, cooling, plumbing, water and electrical systems and any built-in appliances; the roof and the basement, including leaks therein; the presence of asbestos, arsenic in treated wood, toxic mold or fungus; the size and area of the Property; the quality of the workmanship or construction materials, including floors; the structural condition; the condition, availability or location of utilities, sewer or septic system; the investment or resale value of the Property; subsurface or subsoil conditions such as sinkholes, mining or other soil conditions, including radon or other potentially hazardous gases or toxic materials; the existence of, or damage from, wood destroying insects and/or fungus, or vermin/pest infestation; Property access, easements, covenants, restrictions, development structure, and appurtenances thereto, and any matters affecting the character of the neighborhood; the past, present, or future financial stability of the property owners' association, builder or developer, or the future insurability of the Property; or the compliance of the builder or developer under any warranty or any related mortgage terms.  Seller and Buyer acknowledge and agree that if such matters are of concern to them in the decision to sell or purchase the Property, they have sought and obtained independent advice relative thereto.

_____          _____
      **Buyer's Initials**                          **Seller's Initials**

27.   **ADDITIONAL PROVISIONS:** Additional provisions to this Agreement are set forth herein or on the attached Addendum(s) which shall be signed by all parties and shall be part of this Agreement: offer subject to final approval of price & terms from the lien holder.Should lien holder approval not be received within 30 days of acceptance of this agreement then at Buyer's discretion, this agreement shall be considered null and void with earnest refunded to Buyer with no further obligation by either party.

28.   **OBLIGATION FOR FEES AND EXPENSES:** Buyer and Seller acknowledge that in the event this Agreement is cancelled or said transaction does not close for any reason, fees or costs paid in advance may be non-refundable. REALTORS® are not to be held liable for any conditions or non-performance of this Agreement and have not given any professional, legal or tax advice.

29.   **BUYER AND SELLER ACKNOWLEDGE** that they have read this entire agreement and all addendums as itemized in this paragraph 29 and accept the same. _____

BUYER _Patricia Lynette Smith_ (PRINT) PATRICIA LYNETTE SMITH          DATE: 3/15 , 20 11

BUYER _____ (PRINT) _____          DATE: _____, 20 ____

Buyer's Mailing Address _____

_____          Zip Code _____

Home Phone _____ Cell or Work _____ E-mail _____

Selling Agent _____ Cell or Work _____ Home _____ E-mail _____

This Purchase Agreement is for the exclusive use of members of the Baldwin County Association of REALTORS®.
The Baldwin County Association of REALTORS®, Inc., and its members, are not engaged in rendering legal, accounting or other professional service by approving this form. This form is published as a service to member real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form. If a user of this form makes any substantive changes to any portions above, the form will no longer be an approved form. Buyer and seller are encouraged to seek advice from legal and tax advisors prior to the purchase or sale of any property.

INITIALS BELOW INDICATE RECEIPT OF PAGE 5 OF 6 PAGES OF THIS AGREEMENT.
SELLER(S) INITIALS: _____  _____     PURCHASER(S) INITIALS: PLS  _____

10/2009

PROPERTY ADDRESS 1376 WEST LAGOON AVENUE, GULF SHORES, AL 36542 _____

SELLER'S ACCEPTANCE OFFER/COUNTER OFFER: _____ ACCEPTED ____ COUNTERED AS FOLLOWS:

_____
_____
_____
_____

In the event a counter offer is made, it shall expire on _____, 20___. _____ am _____ pm

SELLER _____ (PRINT) _____ DATE:_____, 20____

SELLER _____ (PRINT) _____ DATE:_____, 20____

Seller's Mailing Address_____
Zip Code _____ Home Phone _____ Cell or Work _____ E-mail_____

Listing Agent_____ Cell or Work_____ Home_____ E-mail_____

BUYER'S ACCEPTANCE OF COUNTER OFFER: ____ ACCEPTED _____ COUNTERED, AS PER ATTACHED ADDENDUM.
Provisions of the original offer not changed by the counteroffer remain in effect.

BUYER: _____ (PRINT) _____ DATE:_____, 20____

BUYER: _____ (PRINT) _____ DATE:_____, 20____

SELLER'S ACCEPTANCE OF COUNTER OFFER: _____ ACCEPTED _____ COUNTERED, AS PER ATTACHED ADDENDUM.
Provisions of the original offer not changed by the counter offer remain in effect.

SELLER: _____ (PRINT) _____ DATE: _____, 20____

SELLER: _____ (PRINT) _____ DATE: _____, 20____

**PLEASE NOTE: INITIALS AND EFFECTIVE DATE TO BE COMPLETED ON PAGE 1 OF THIS AGREEMENT BY THE LAST PARTY TO SIGN THE FINAL OFFER OR COUNTER OFFER.**

This Purchase Agreement is for the exclusive use of members of the Baldwin County Association of REALTORS®.
The Baldwin County Association of REALTORS®, Inc., and its members, are not engaged in rendering legal, accounting or other professional service by approving this form. This form is published as a service to member real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form. If a user of this form makes any substantive changes to any portions above, the form will no longer be an approved form. Buyer and seller are encouraged to seek advice from legal and tax advisors prior to the purchase or sale of any property.

INITIALS BELOW INDICATE RECEIPT OF PAGE 6 OF 6 PAGES OF THIS AGREEMENT.
SELLER(S) INITIALS: _____ _____    PURCHASER(S) INITIALS: _____ _____

10/2009

TED E SMITH      12-09
PATRICIA H SMITH
DREW SMITH
23835 CO RD 85
ROBERTSDALE, AL 36567

1128

63-474/632
37

Pay to the
Order of ___ Re/Max of Gulf Shores ___

3/15/11

Date

$ 2000.00

Two Thousand + no/100 ___ Dollars

Vision Bank
Robertsdale, Alabama 36567
251-947-3101

For ___

Patricia H Smith

⑈063204746⑈   20166192⑈   1128