# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:   OIL SPILL by the OIL RIG
            "DEEPWATER HORIZON" in the
            GULF OF MEXICO, on
            APRIL 20, 2010

THIS DOCUMENT RELATES TO:

*The Remaining Claims in B3 Bundle Against the*
*Clean Up Responder Defendants: Torrey Barlow*
*(12-2248), Joseph Brown (12-2333), Scea*
*Burrage (10-8888, Docs. 89515 & 108885), Roy*
*Causey (10-8888, Doc. 34909), Jorey Danos*
*(13-3747), William Fitzgerald o/b/o Nathan*
*Fitzgerald (13-00650), Thomas Hines (13-2360;*
*10-8888, Doc. 22261 & 84046)), Frank Howell*
*(13-3747), Douglas Maurras (12-2048), Kirk*
*Prest (10-8888, Doc. 89566), John Wunstell, Jr.*
*(10-2543; 10-8888, Doc. 57007).*

MDL NO. 2179

SECTION: J

JUDGE CARL BARBIER
MAG. JUDGE SALLY SHUSHAN

## RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MARINE SPILL RESPONSE CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON THE REMAINING CLAIMS IN THE "B3" BUNDLE ON GROUNDS OF IMMUNITY AND PREEMPTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, Marine Spill Response Corporation ("MSRC") respectfully submits the following Statement of Undisputed Material Facts in support of its Motion for Summary Judgment on the remaining claims in the "B3" pleading bundle on grounds of immunity and preemption and to supplement the Joint Statement of Undisputed Facts submitted by the Clean-up Responder Defendants dated May 9, 2016.  MSRC also incorporates herein by reference the Clean-Up Responder Defendants' Joint Statement of Undisputed Material Facts in Support of Their Individual Motions for Summary Judgment on Derivative

Immunity and Preemption Grounds dated May 18, 2012 (Rec. Doc. 6535-3), all exhibits submitted in support of the Joint Statement of Material Facts, and MSRC's Statement of Undisputed Material Facts in support of its Motion for Summary Judgment on Grounds of Immunity and Preemption dated May 18, 2012.   (Rec. Doc. 6547-3.)

1.      MSRC did not employ plaintiffs Scea Burrage, Torrey Barlow, Joseph Brown, Roy Causey, Nathan Fitzgerald, Thomas Hines, Kirk Prest, Frank Howell, Doug Maurras, Jorey Danos, or John Wunstell.   (Declaration of Donald A. Toenshoff, Jr., dated April 29, 2016 ("Toenshoff Decl.") ¶ 6 and note 1.)

2.      MSRC had no role or responsibility in training Messrs. Barlow, Brown, Causey, Fitzgerald, Hines, Prest, Howell, Maurras, Danos, or Wunstell, providing them with any equipment, including personal protective equipment ("PPE"), or directing or supervising their work.   (*Id.*)

3.      During the DEEPWATER HORIZON response, MSRC had no role in supervising or directing any beach and/or coastal cleanup or near-shore booming or decontamination operations.   (*Id.* ¶ 7.)

4.      MSRC did not have any role in directing the off-shore patrol by small boats searching for and/or reporting oil slicks mentioned in the PTO No. 57 Questionnaire filed by Frank Howell, or in deciding where and when such searches would take place.   (*Id.* ¶ 8.)

5.      MSRC's roles in the aerial dispersant operation were to provide dispersants from its inventory, to locate additional dispersant sources, and to provide logistical and other support to the two aircraft contractors under contract with MSRC, to

2

the United States Air Force Reserve ("USAFR"), and to other aircraft operators arranged directly by BP.  (*Id.* ¶ 9.)

6.     MSRC did not apply any dispersant from response resources it directly owned or operated during the response.  (*Id.*)

7.     Dispersant was applied by third party contractors, including the two contractors under contract to MSRC, the USAFR, and organizations directly under contract to BP.  (*Id.*)

8.     The dispersants supplied by MSRC were in liquid form, not a powder. (*Id.* ¶ 10.)

9.     The aircraft used for dispersant operations during the Deepwater Horizon response by MSRC's subcontractors were C-130 spray aircraft and King Air spotter aircraft.  (*Id.* ¶ 11.)

10.     Neither MSRC nor its subcontractors utilized any helicopters as either spray or spotter aircraft.  (*Id.*)

11.     During the DEEPWATER HORIZON spill response, no aerial dispersant spray missions were authorized or conducted within three nautical miles ("nm") of shore or where the water depth was less than 10 meters.  (*Id.* ¶ 12.)

12.     During the DEEPWATER HORIZON spill response, no aerial dispersant spray operations were authorized or conducted outside of daylight hours, and where weather would preclude the pilots from visibly discerning the horizon and any people or other obstacles in the flight path.  (*Id.* ¶ 13.)

3

13.     During the first few days of aerial dispersant spray operations, dispersant operations were conducted using a minimum 500 foot safety setback from any vessel or platform as governed by Federal Aviation Administration flight rules.   (*Id.* ¶ 14.)

14.     On April 30, 2010, the vessel and platform proximity restrictions were increased to one nm.   (*Id.*)

15.     On May 6, 2010, the safety setback for vessel and platforms was expanded to two nm.   (*Id.*)

16.     During the period May 23 to May 28, 2010, all in-situ burn ("ISB") operations took place within the radius of 5 to 10 miles from the spill source.   (*Id.* ¶ 15.)

17.     During the DEEPWATER HORIZON response, MSRC's role in in-situ burning of Macondo 252 Oil was limited to supplying fire boom and personnel to serve as resources regarding instructions for the fire boom's use.   (*Id.* ¶ 16.)

18.     MSRC had no role in deciding where, when or how to conduct ISB operations or in formulating or implementing any safety procedures for ISB operations. (*Id.*)

19.     During the period May 23 to May 28, 2010, all aerial dispersant spray missions conducted by MSRC's subcontractors were conducted greater than 11 nautical miles from the site of the spill.   (*Id.* ¶ 17.)

20.     All aerial dispersant spray missions conducted from the Stennis Airport by MSRC's subcontractors fully complied with all government approvals or directions concerning limitations on the time of spray operations, or the proximity to land, shallow water, vessels, platforms, and/or ISB operations.   (*Id.* ¶ 18.)

Dated: May 9, 2016

Respectfully submitted,

**BLANK ROME LLP**

By:    /s/ *Alan M. Weigel*_____

Alan M. Weigel, Esq.
Attorneys for Marine Spill Response Corporation
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: 212-885-5000
Facsimile: 917-332-3836
E-mail: aweigel@blankrome.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing Rule 56.1 Statement of Undisputed Material Facts in Support of Marine Spill Response Corporation's Motion for Summary Judgment has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of May 2016.

/s/ *Alan M. Weigel*_____
Alan M. Weigel

810517.00025/102227929v.1