# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010<br><br>THIS DOCUMENT RELATES TO:<br><br>*The Remaining Claims in B3 Bundle Against the Clean Up Responder Defendants: Torrey Barlow (12-2248), Joseph Brown (12-2333), Scea Burrage (10-8888, Docs. 89515 & 108885), Roy Causey (10-8888, Doc. 34909), Jorey Danos (13-3747), William Fitzgerald o/b/o Nathan Fitzgerald (13-00650), Thomas Hines (13-2360; 10-8888, Doc. 22261 & 84046)), Frank Howell (13-3747), Douglas Maurras (12-2048), Kirk Prest (10-8888, Doc. 89566), John Wunstell, Jr. (10-2543; 10-8888, Doc. 57007).* | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br>MAG. JUDGE SALLY SHUSHAN |

## MEMORANDUM OF LAW IN SUPPORT OF MARINE SPILL RESPONSE CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON THE REMAINING CLAIMS IN THE "B3" PLEADING BUNDLE ON GROUNDS OF IMMUNITY AND PREEMPTION

BLANK ROME LLP
ATTORNEYS FOR DEFENDANT
MARINE SPILL RESPONSE CORPORATION
ALAN M. WEIGEL
405 LEXINGTON AVENUE
THE CHRYSLER BUILDING
NEW YORK, NY 10174
(212) 885-5000

810517.00025/102228252v.1

## **TABLE OF CONTENTS**

Page (s)

PRELIMINARY STATEMENT ................................................................................................1

FACTS ............................................................................................................................................1

ARGUMENT ..................................................................................................................................3

    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF MSRC BECAUSE THERE IS NO GENUINE DISPUTE OF MATERIAL FACT REGARDING MSRC'S ENTITLEMENT TO IMMUNITY FROM THE B3 CLAIMS AND/OR THAT THE B3 CLAIMS ARE PREEMPTED ..................................3

        A.    MSRC Complied With And Did Not Exceed Or Disobey Any Federal Government Spill Response Directives. ..........................................................5

        B.    The Allegations Concerning The Use Of Dispersants ..............................6

        C.    The Allegations Concerning Clean-Up Workers ......................................7

CONCLUSION .............................................................................................................................8

**PRELIMINARY STATEMENT**

Marine Spill Response Corporation ("MSRC") respectfully submits this Memorandum of Law in support of its Motion for an order of summary judgment dismissing with prejudice all remaining claims asserted against MSRC in the First Amended Master Complaint in Accordance with PTO No. 11 Section III.B(3) (Rec. Doc. 1812) (hereinafter the "B3 Complaint") on the grounds that MSRC has derivative immunity from such claims, or alternatively, that such claims are barred by the doctrine of federal law preemption. This Memorandum of Law supplements the Joint Memorandum submitted by the Clean-Up Responder Defendants dated May 9, 2016 (which is hereby incorporated in its entirety by reference).

The PTO No. 57 Questionnaires filed by the remaining eleven B3 plaintiffs fail to raise any genuine issue of fact material to MSRC's entitlement to summary judgment on the grounds that MSRC has derivative immunity from the claims asserted against it in the B3 Complaint and/or that the B3 claims are preempted under federal law. Accordingly, MSRC requests that the Court grant its motion and dismiss all remaining claims against it with prejudice.

**FACTS**

The facts of the DEEPWATER HORIZON oil spill response are well known to this Court and are summarized in the Court's Order and Reasons As to the B3 Claims Against the Clean-Up Responder Defendants, MDL No. 2179, 2016 U.S. Dist. LEXIS 18248, at *5-6, 27-31 (E. D. La. Feb. 16, 2016) (Rec. Doc. 15853) (hereinafter "B3 Order"). Following the explosion, sinking, and discharge of oil from the Macondo well and the DEEPWATER HORIZON, MSRC responded to the Gulf of Mexico incident under the direction and control of the federal government in order to attempt to mitigate the damage caused by the oil spill, along with many other response organizations. MSRC provides herein details regarding its roles in the

1

DEEPWATER HORIZON response efforts with specific reference to the allegations raised by the PTO No. 57 Questionnaires filed by the remaining eleven B3 plaintiffs. MSRC also incorporates by reference the factual background set forth in the Joint Memorandum filed by the Clean-Up Responder Defendants dated May 9, 2016, the Clean-up Responder Defendants' Joint Statement of Undisputed Material Facts in Support of Their Individual Motions for Summary Judgment on Derivative Immunity and Preemption Grounds dated May 18, 2012 (Rec. Doc. 6535-3), all exhibits submitted in support of the Joint Statement of Material Facts, and MSRC's Statement of Undisputed Material Facts in support of its Motion for Summary Judgment on Grounds of Immunity and Preemption dated May 18, 2012. (Rec. Doc. 6547-3.)

During the DEEPWATER HORIZON response, MSRC did not employ any of the remaining eleven B3 plaintiffs. (Declaration of Donald A. Toenshoff, Jr., dated April 29, 2016 ("Toenshoff Decl.") ¶ 6 and note 1.) MSRC had no role or responsibility in training these individuals, providing them with any equipment, including personal protective equipment ("PPE"), or directing or supervising their work. (Toenshoff Decl. ¶ 6.)

During the DEEPWATER HORIZON response, MSRC had no role in supervising or directing any beach and/or coastal cleanup or near-shore booming or decontamination operations (*Id*. ¶ 7), or in directing the off-shore patrol activities conducted by small boats searching for and/or reporting oil slicks, or in deciding where and when such searches would take place. (*Id*. ¶ 8.) MSRC also had no role in deciding where, when or how to conduct in-situ burning ("ISB") operations or in formulating or implementing any safety procedures for ISB operations. (*Id*. ¶ 16.)

MSRC's roles in the aerial dispersant operation were to provide dispersants from its inventory, to locate additional dispersant sources, and to provide logistical and other support to

2

the two aircraft contractors under contract with MSRC, to the United States Air Force Reserve ("USAFR"), and to other aircraft operators arranged directly by BP.  MSRC did not apply any dispersant from response resources it directly owned or operated during the response.  (*Id*. ¶ 9.)  The dispersants supplied by MSRC were in liquid form, not a powder.  (*Id*. ¶ 10.)  Neither MSRC nor its subcontractors utilized any helicopters as either spray or spotter aircraft.  (*Id*. ¶ 11.)

During the DEEPWATER HORIZON spill response, no aerial dispersant spray missions were authorized or conducted within three nautical miles ("nm") of shore or where the water depth was less than 10 meters.  (*Id*. ¶ 12.)  No aerial dispersant spray operations were authorized or conducted outside of daylight hours.  (*Id*. ¶ 13.)  In June and July 2010, no spray operations were conducted less than to nm from any vessels or platforms.  (*Id*. ¶ 14.)  During the period May 23 to May 28, 2010, all aerial dispersant spray missions conducted by MSRC's subcontractors were conducted greater than one nm from the site of any ISB operations.  (*Id*. ¶¶ 15, 17.)

## ARGUMENT

### THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF MSRC BECAUSE THERE IS NO GENUINE DISPUTE OF MATERIAL FACT REGARDING MSRC'S ENTITLEMENT TO IMMUNITY FROM THE B3 CLAIMS AND/OR THAT THE B3 CLAIMS ARE PREEMPTED

MSRC incorporates by reference the legal arguments set forth in the Joint Memorandum submitted by the Clean-Up Responder Defendants dated May 9, 2016, as well as the general application of those arguments to the claims against the Clean-Up Responder Defendants in the B3 Complaint.  In addition, MSRC sets out below its specific arguments as to why the Questionnaires filed in Response to PTO 57 fail to raise any genuine issue of fact material to MSRC's arguments that it is entitled to derivative immunity, or in the alternative, that the B3

3

claims against MSRC are preempted under federal law, entitling MSRC to the entry of an order of summary judgment dismissing the remaining eleven B3 claims with prejudice.

The Court has already held that MSRC is entitled to derivative government immunity under the Clean Water Act ("CWA"), 33 U.S.C. § 1321 (j)(8), for the spill response activities it carried out pursuant to the authorization and direction of the federal government. (B3 Order at 19 – 20.) The Court also has held that MSRC is entitled to derivative discretionary function immunity under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), because it acted as a government agent during the spill response and the government's decisions are shielded from actions in tort. (B3 Order at 20 – 22.) Accordingly, MSRC is entitled to both CWA derivative and FTCA discretionary function immunity, or both, for any damages resulting from its actions or omissions during the DEEPWATER HORIZON response so long as MSRC adhered to, and acted within the scope of, the federal government's directives.

Additionally, where compliance with both federal and state regulations is a physical impossibility, and state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, tort claims brought by the B3 plaintiffs which conflict with the CWA, Oil Pollution Act ("OPA") and the National Contingency Plan ("NCP") are preempted under the doctrine of implied conflict preemption. (B3 Order at 22 – 24.) Although not discussed in the B3 Order, MSRC also respectfully submits that the B3 claims against MSRC are preempted under the doctrine of field preemption because they directly conflict with Congressional intent that decisions regarding response efforts must be governed by the procedures and criteria set forth in the CWA and NCP and Congress has left no room for states to supplement these decisions. *See, e.g., Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 385 (5th Cir. 2004).

810517.00025/102228252v.1

A. **MSRC Complied With And Did Not Exceed Or Disobey Any Federal Government Spill Response Directives**

The undisputed evidence demonstrates that there is no genuine issue of material fact that at any time during the DEEPWATER HORIZON response MSRC, its employees, or subcontractors failed to comply with any governmental directives and authorizations relating to their response functions and operations, or that at any time MSRC, its employees, or subcontractors exceeded those directives and authorizations. All aerial dispersant spray missions conducted by MSRC's subcontractors fully complied with all government approvals or directions concerning limitations on the time of spray operations, or the proximity to land, shallow water, vessels, platforms, and/or ISB operations. (Toenshoff Decl. ¶ 18.) Thus, MSRC is entitled to share in the federal government's broad immunity for all oil spill response actions taken under the CWA and the NCP.

Moreover, as the evidence submitted indicates that the clean-up activities undertaken by MSRC were executed pursuant to the authorization, direction, and ultimate control of the federal government, and fell within the scope of the CWA and NCP, MSRC has established a *prima facie* basis for dismissal of the B3 claims based on conflict and or field preemption.

The PTO 57 Questionnaire responses fail to raise a single genuine issue of material fact that would preclude the Court from granting summary judgment on the grounds of immunity and/or preemption. During the DEEPWATER HORIZON response, MSRC did not employ B3 plaintiffs Scea Burrage, Torrey Barlow, Joseph Brown, Roy Causey, Nathan Fitzgerald, Thomas Hines, Kirk Prest, Frank Howell, Doug Maurras, Jorey Danos, or John Wunstell. (Toenshoff Decl. ¶ 6 and note 1.) None of the Questionnaires submitted by these remaining eleven B3 plaintiffs name MSRC, its employees, or subcontractors. They make no factual allegations that MSRC, its employees, or subcontractors failed in any way to comply with any governmental

directives and authorizations or exceeded those directives and authorizations. Rather, the Questionnaires contain nothing more than unsupported generalized assertions of wrongdoing, most of which implicate activity that MSRC had absolutely no involvement with. Without more, the Questionnaires are not sufficient to refute MSRC's *prima facie* showing of entitlement to summary judgment. Accordingly, the Court should enter an order granting summary judgment to MSRC dismissing all remaining claims against MSRC in the B3 Complaint with prejudice.

**B.     The Allegations Concerning The Use Of Dispersants**

The Questionnaires filed by Messrs. Maurras, Danos, and Wunstell allege that these individuals were improperly exposed to aerial dispersant spraying. None of these Questionnaires, however, allege that MSRC or its subcontractors conducted this aerial dispersant spraying and do not allege that MSRC or its subcontractors violated any government orders or directives concerning aerial dispersant operations.

The Questionnaire filed by Douglas Maurras alleges he was exposed to dispersant in the form of a white powder dropped from a yellow helicopter. There can be no dispute, however, that the dispersants supplied by MSRC for the DEEPWATER HORIZON response were in liquid form, not a powder (Toenshoff Decl. ¶ 10), and neither MSRC nor its subcontractors conducted spray operations from helicopters. (*Id*. ¶ 11.)

The Questionnaire filed by Jorey Danos alleges that he was exposed to dispersants sprayed from aircraft, once during the day less than one mile from shore, once in the same location at night, and two other times when aircraft overflew his position. There can be no dispute, however, that during the DEEPWATER HORIZON spill response, no aerial dispersant spray missions were authorized or conducted within 3 nm of shore (Toenshoff Decl. ¶ 12), or outside of daylight hours. (*Id*. ¶ 13.) In June and July 2010, the dates Danos alleges he was

6

exposed to aerial spraying, no spray operations were conducted closer than 2 nm from any vessels or platforms.  (*Id.* ¶ 14.)

The Questionnaire filed by John Wunstell alleges that during the period May 22 through May 28, 2010 he was sprayed with dispersants while working in the vicinity of ISB operations and that spraying in his vicinity continued at night.  The evidence demonstrates, however, that during the period May 23 to May 28, 2010, all aerial dispersant spray missions conducted by MSRC's subcontractors were conducted greater than 1 nm from the site of any ISB operations (Toenshoff Decl. ¶¶ 15, 17), and none were conducted outside of daylight hours.  (*Id.* ¶ 13.)

Accordingly, the Questionnaires of Messrs. Maurras, Damos, and Wunstell do not raise any genuine issues of material fact that would preclude the Court from granting MSRC summary judgment on the grounds of immunity and/or preemption.

C.     **The Allegations Concerning Clean-Up Workers**

The Questionnaires filed Messrs. Barlow, Brown, Causey, Fitzgerald, Hines, Howell, and Prest[1] allege that these individuals were not provided with adequate personal protective equipment ("PPE") while participating in beach and/or coastal clean-up and/or laying and decontaminating booms, vessels and other equipment.  MSRC had no role or responsibility in training these individuals, providing them with any equipment, including personal protective equipment ("PPE"), or directing or supervising their work.  (Toenshoff Decl. ¶ 6.)  During the DEEPWATER HORIZON response, MSRC had no role in supervising or directing any beach and/or coastal cleanup or near-shore booming or decontamination operations.  (*Id.* ¶ 7.)

---

[1] The Questionnaire filed by Scea Burrage alleges that she was a resident living in close proximity to coastal waters, and not a clean-up worker involved in the Deepwater Horizon response efforts.  She was not an employee of MSRC.  (Toenshoff Decl. note 1.)  Her only allegation of exposure was that she smelled oil in the air.  She makes no allegations concerning MSRC or MSRC's subcontractors.

7

The Questionnaire filed by Frank Howell alleges he was exposed to dispersants on the surface of the Gulf of Mexico while conducting searches for oil slicks. MSRC did not have any role in directing the off-shore patrol by small boats searching for and/or reporting oil slicks, or in deciding where and when such searches would take place. (Toenshoff Decl. ¶ 8.)

Accordingly, the Questionnaires of Messrs. Barlow, Brown, Causey, Fitzgerald, Hines, Howell, and Prest do not raise any genuine issues of material fact that would preclude the Court from granting MSRC summary judgment on the grounds of immunity and/or preemption.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Joint Memorandum submitted by the Clean-Up Responder Defendants dated May 9, 2016, MSRC respectfully requests that the Court enter an order granting summary judgment dismissing the remaining claims against it in the B3 Complaint with prejudice.

Dated:     May 9, 2016

                                  Respectfully submitted,
                                  **BLANK ROME LLP**

                        By     /s/ *Alan M. Weigel*
                                  Alan M. Weigel, Esq.
                                  Attorneys for Marine Spill Response Corporation
                                  The Chrysler Building
                                  405 Lexington Avenue
                                  New York, NY 10174
                                  Telephone: 212-885-5000
                                  Facsimile: 917-332-3836
                                  E-mail: aweigel@blankrome.com

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Memorandum of Law in Support of Marine Spill Response Corporation's Motion for Summary Judgment has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of May 2016.

      By:    */s/ Alan M. Weigel*