**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| | * | **MDL NO. 2179** |
| **IN RE:  OIL SPILL by the OIL RIG** | * | |
| **"DEEPWATER HORIZON" in the** | * | |
| **GULF OF MEXICO, on** | * | |
| **APRIL 20, 2010** | * | **SECTION: J** |
| | * | |
| **THIS DOCUMENT RELATES TO:** | * | |
| | * | |
| *ALL CASES IN PLEADING BUNDLE B3* | * | **JUDGE BARBIER** |
| | * | **MAG. JUDGE SHUSHAN** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**CLEAN-UP RESPONDER DEFENDANTS' MEMORANDUM**
**IN SUPPORT OF THEIR OMNIBUS MOTION FOR SUMMARY**
**JUDGMENT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................2

PROCEDURAL POSTURE ...........................................................................................4

I.      The B3 Master Complaint and Summary Judgment Briefing ...........................4

II.     PTO 57 and Resultant Questionnaires ...........................................................6

III.    The B3 Order to Show Cause and Subsequent Dismissal Order ....................8

FACTUAL BACKGROUND ..........................................................................................9

I.      INCIDENT ACTION PLANS ..........................................................................9

II.     DISPERSANT GROUP OPERATIONS ........................................................10

III.    CLEANUP WORKER SAFETY AND PERSONAL PROTECTIVE
        EQUIPMENT ...............................................................................................11

IV.     THE REMAINING B3 PLAINTIFFS' QUESTIONNAIRES ...........................13

ARGUMENT ...............................................................................................................14

I.      THE COURT HAS ALREADY HELD THAT DERIVATIVE IMMUNITY AND
        IMPLIED PREEMPTION ARE AVAILABLE TO THE CLEAN-UP
        RESPONDER DEFENDANTS WITH RESPECT TO THE B3 CLAIMS....................15

II.     THE REMAINING B3 PLAINTIFFS' QUESTIONNAIRES DO NOT REBUT
        THE OVERWHELMING EVIDENCE THAT THE CLEAN-UP RESPONDER
        DEFENDANTS COMPLIED WITH THE FEDERAL GOVERNMENT'S
        DIRECTIVES ...............................................................................................17

        A.      Questionnaire of Torrey Barlow ...........................................................19

        B.      Questionnaire of Joseph Brown ...........................................................20

        C.      Questionnaire of Scea Burrage ............................................................21

        D.      Questionnaire of Roy Causey ..............................................................21

        E.      Questionnaires of Jorey Danos ............................................................23

        F.      Questionnaire of Nathan Fitzgerald ......................................................25

        G.      Questionnaire of Thomas Hines............................................................25

| | H. | Questionnaire of Frank Howell | 26 |
|---|---|---|---|
| | I. | Questionnaire of Doug Maurras | 27 |
| | J. | Questionnaire of Kirk Prest | 29 |
| | K. | Questionnaire of John Wunstell | 29 |
| III. | | CERTAIN CLEAN-UP RESPONDER DEFENDANTS ARE NOT IDENTIFIED AT ALL IN THE REMAINING B3 PLAINTIFFS' QUESTIONNAIRES AND SHOULD BE DISMISSED FROM THIS MDL ON THIS THRESHOLD BASIS ALONE | 31 |
| IV. | | ANY SUGGESTION OR REQUEST FOR FURTHER DISCOVERY FROM THE REMAINING B3 PLAINTIFFS IN THEIR QUESTIONNAIRES SHOULD BE REJECTED | 32 |
| CONCLUSION | | | 34 |

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acuna v. Brown & Root Inc.,*
  200 F.3d 335 (5th Cir. 2000) .................................................................................18, 32

*Alejo v. Heller,*
  328 F.3d 930 (7th Cir. 2003) ...............................................................................................23

*Badon v. R J R Nabisco Inc.,*
  224 F.3d 382 (5th Cir. 2000) ...............................................................................................14

*BMG Music v. Martinez,*
  74 F.3d 87 (5th Cir. 1996) ...................................................................................................17

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ...............................................................................................................14

*Davis v. Fort Bend County,*
  765 F.3d 480 (5th Cir. 2014) ...............................................................................................14

*DIRECTV, Inc. v. Budden,*
  420 F.3d 521 (5th Cir. 2005) ...............................................................................................17

*Donald Doss v. M/V K2,*
  No. 15-cv-1539, 2016 WL 1545630 (5th Cir. Apr. 15, 2016) ..............................................33

*Edwards v. Your Credit, Inc.,*
  148 F.3d 427 (5th Cir. 1998) ...............................................................................................14

*Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta,*
  458 U.S. 141 (1982) ...............................................................................................................16

*Grieveson v. Anderson,*
  538 F.3d 763 (7th Cir. 2008) ...........................................................................................22, 23

*Hathaway v. Bazany,*
  507 F.3d 312 (5th Cir. 2007) ...............................................................................................14

*Hines v. Davidowitz,*
  312 U.S. 52 (1941) ...............................................................................................................18

*Little v. Liquid Air Corp.,*
  37 F.3d 1069 (5th Cir. 1994) ...........................................................................................14, 20

*McFaul v. Valenzuela,*
  684 F.3d 564 (5th Cir. 2012) ...............................................................................................14

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,*
  MDL No. 2179, 2011 WL 4575696 (E.D. La. Sept. 30, 2011) ..............................................5

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*,
  MDL No. 2179, 2012 WL 5960192 (E.D. La. Nov. 28, 2012) ................................................9

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
  MDL No. 2179, 2016 WL 614690 (E.D. La. Feb. 16, 2016) ......................................... passim

*Raby v. Livingston*,
  600 F.3d 552 (5th Cir. 2010) ..............................................................................................33

*SEC v. Spence & Green Chem. Co.*,
  612 F.2d 896 (5th Cir. 1980) ..............................................................................................33

*Scaffidi v. Thompson-Hayward Chem., Inc.*,
  No. 94-CV-3860, 1997 WL 469966 (E.D. La. Aug. 12, 1997) ...........................................33

*Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Center, Inc.*,
  No. 11-CV-2002, 2012 WL 1698365 (E.D. La. May 15, 2012)...........................................17

*Tyler v. Cedar Hill Independent Sch. Dist.*,
  426 F. App'x 306 (5th Cir. 2011) .......................................................................................17

*United States v. Lawrence*,
  276 F.3d 193 (5th Cir. 2001) ..............................................................................................24

*Vais Arms, Inc. v. Vais*,
  383 F.3d 287 (5th Cir. 2004) ..............................................................................................17

*In re Vioxx Prods. Liab. Litig.*,
  2012 WL 1398622 ..................................................................................................15, 19, 32

*Washington v. Armstrong World Indus., Inc.*,
  839 F.2d 1121 (5th Cir. 1988) ............................................................................................33

*Yearsley v. W.A. Ross Constr.*,
  309 U.S. 18, 20-21 (1940) ...................................................................................................16

## **Statutes**

28 U.S.C. § 2680(a) .......................................................................................................................15

33 U.S.C. § 1321(j)(8) ...................................................................................................................15

## **Rules and Regulations**

Fed. R. Civ. P. 16(f) ................................................................................................................18, 32

Fed. R. Civ. P. 41(b) .....................................................................................................................32

Fed. R. Civ. P. 56 ......................................................................................................................1, 14

LR 56.1 ............................................................................................................................................1

Pursuant to the Court's Order establishing a briefing schedule regarding the remaining B3[1] claims against the Clean-Up Responder Defendants[2] in this multidistrict litigation (Rec. Doc. 16165), Rule 56 of the Federal Rules of Civil Procedure, and Local Civil Rule 56.1, the Clean-Up Responder Defendants respectfully submit this Memorandum in Support of their Omnibus Motion for Summary Judgment (the "Motion"), seeking dismissal with prejudice of the eleven remaining B3 claims (collectively, the "Remaining B3 Plaintiffs")[3] asserted against them, whether by joinder in the First Amended Master Complaint in Accordance with PTO No. 11 Section III.B(3) (Rec. Doc. 1812) (hereinafter the "B3 Master Complaint"), individual complaint, or otherwise.  This Memorandum is accompanied by a Joint Statement of Undisputed Material Facts ("SUMF") and associated Exhibits.[4]

In so doing, the Clean-Up Responder Defendants renew, and incorporate by reference, their previously-filed individual motions for summary judgment on derivative immunity and preemption grounds, which sought dismissal with prejudice of all remaining claims asserted against them in the B3 Master Complaint (together, the "Individual Summary Judgment Motions"), and accompanying memoranda, affidavits, declarations, and exhibits.  (Rec. Docs. 6536–6536-4, 6538–6538-3, 6546–6546-4, 6547–6547-3, 6551–6551-3, 6553–6553-6, 6557–6557-4, 6559–6559-3, 6597–6597-1).  The Clean-Up Responder Defendants also incorporate by

---

[1]   The "B3" pleading bundle is defined at Pretrial Order No. 11 ("PTO 11") (Rec. Doc. 569 at 3) and Pretrial Order No. 25 (Rec. Doc. 983 at 2).

[2]   The Clean-Up Responder Defendants are the following: O'Brien's Response Management, L.L.C. (formerly known as O'Brien's Response Management, Inc.) ("O'Brien's"), National Response Corporation ("NRC"), Marine Spill Response Corporation, Dynamic Aviation Group, Inc., Airborne Support, Inc., Airborne Support International, Inc., DRC Emergency Services, LLC ("DRC"), International Air Response, Inc., Lynden, Inc., Lane Aviation, Inc., Tiger Rentals, Ltd., The Modern Group, Ltd., and The Modern Group GP-SUB, Inc.

[3]   The eleven individuals with claims still pending against the Clean-Up Responder Defendants are Torrey Barlow, Joseph Brown, Scea Burrage, Roy Causey, Jorey Danos, Nathan Fitzgerald, Thomas Hines, Frank Howell, Doug Maurras, Kirk Prest, and John Wunstell.

[4]   For purposes of judicial efficiency, the Clean-Up Responder Defendants have opted to move for summary judgment as a group and present the factual and legal issues in one place so as to avoid unnecessary duplication.

reference their joint memorandum of law and joint statement of undisputed material facts in support of these individual motions for summary judgment, as well as the exhibits annexed thereto (together with the Individual Motions, the "Summary Judgment Briefing").  (Rec. Doc. 6545 to 6545-49).

## PRELIMINARY STATEMENT

On February 16, 2016, the Court dismissed the overwhelming majority of the B3 claims asserted against the Clean-Up Responder Defendants with prejudice, reserving judgment only as to eleven Plaintiffs who continue to pursue a claim against these entities arising out of the *Deepwater Horizon* oil spill response and clean-up effort.  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2016 WL 614690, at *15 (E.D. La. Feb. 16, 2016).  While all of the Remaining B3 Plaintiffs submitted a timely sworn statement pursuant to Pretrial Order No. 57 ("PTO 57") (Rec. Doc. 13158) and provided a written response to all of the questions posed in the requisite form (Rec. Doc. 13158-1) (the "Questionnaire"),[5] none of these Questionnaires raise a genuine issue of fact material to the Clean-Up Responder Defendants' entitlement to derivative immunity under the Clean Water Act ("CWA") and discretionary function immunity under the Federal Tort Claims Act ("FTCA") for their actions during the cleanup, or to the applicability of the implied conflict preemption doctrine to the B3 claims.

Specifically, none of the Remaining B3 Plaintiffs have offered competent evidence that any Clean-Up Responder Defendant violated or exceeded an instruction or order issued by the federal government, or acted without its authority, in performing their response activities.  Thus,

---

[5]   As all of the Remaining B3 Plaintiffs properly opted out of, or were not covered by, the Medical Benefits Class Action Settlement (the "Medical Benefits Settlement"), they may still pursue claims against released parties, including the Clean-Up Responder Defendants.  (Rec. Docs. 6427-8, 8217, 8218).

not one of these claimants has provided the specific evidence the Court deemed necessary to defeat summary judgment in issuing PTO 57 in the first place.  Rather, the Remaining B3 Plaintiffs have offered nothing more than vague, self-serving statements and unsubstantiated assertions of wrongdoing similar to those contained in the affidavits and declarations submitted by the Plaintiffs' Steering Committee ("PSC") in connection with opposing the Summary Judgment Briefing, which already were deemed insufficient by the Court.  *See In re Oil Spill*, 2016 WL 614690, at *5, *9.  As such, the Remaining B3 Plaintiffs have not and cannot refute the Clean-Up Responder Defendants' *prima facie* showing of entitlement to summary judgment, and the last few B3 claims should be dismissed with prejudice.

In addition, the Remaining B3 Plaintiffs' Questionnaires lack other threshold elements needed to establish liability:

- Five of the Remaining B3 Plaintiffs (**Torrey Barlow, Scea Burrage, Jorey Danos, Thomas Hines, and Kirk Prest**) have not referenced, and thus have certainly failed to implicate, any of the Clean-Up Responder Defendants in their Questionnaires.  Rather, these Questionnaires concern purported conduct by BP or other parties, or generally allege that wrongdoing took place without identifying any Clean-Up Responder Defendant or what action any Clean-Up Responder Defendant undertook that is allegedly responsible for Plaintiff's purported injury.

- In fact, only six Questionnaires (**Joseph Brown, Roy Causey, Nathan Fitzgerald, Frank Howell, Doug Maurras, and John Wunstell**) even attempt to identify a Clean-Up Responder Defendant.  But these Plaintiffs have failed to tie specific conduct on the part of these Clean-Up Responder Defendants (**DRC, O'Brien's, and NRC)** to their

injuries or to identify anything these Clean-Up Responder Defendants did that was contrary to a federal directive.

- Ten of the thirteen Clean-Up Responder Defendants (**Marine Spill Response Corporation, Dynamic Aviation Group, Inc., Airborne Support, Inc., Airborne Support International, Inc., International Air Response, Inc., Lynden, Inc., Lane Aviation, Inc., Tiger Rentals, Ltd., The Modern Group, Ltd., and The Modern Group GP-SUB, Inc.**) are not even referenced in any of the Remaining B3 Plaintiffs' Questionnaires. The Remaining B3 Plaintiffs' failure to identify, and thus implicate, these entities justifies dismissal with prejudice of all of the remaining B3 claims against them in this multidistrict litigation.

For all these reasons, and as discussed further below, the Remaining B3 Plaintiffs have failed to put forward any competent evidence in their Questionnaires that raises any genuine issue of fact material to the issues of derivative immunity and implied preemption. The Clean-Up Responder Defendants are therefore entitled to summary judgment and the Remaining B3 Plaintiffs' claims should be dismissed with prejudice.

## PROCEDURAL POSTURE

### I. The B3 Master Complaint and Summary Judgment Briefing

In PTO 11, the Court established eight separate "pleading bundles" for different categories of cases and claims in this multidistrict litigation, with the "B3" bundle being relevant to this Motion. (Rec. Doc. 569 at 3). The B3 Master Complaint filed by the PSC did not specifically identify a single plaintiff, but rather, purported to assert various "claims for relief" on behalf of five categories of plaintiffs. Plaintiffs were permitted to join in the B3 Master Complaint by filing short forms pursuant to Pretrial Orders 20, 24, and 25. (Rec. Docs. 904, 982, 983). Plaintiffs could also file individual complaints and be deemed a B3 plaintiff in this

litigation.  (Rec. Doc. 983 at 2).  All of the Remaining B3 Plaintiffs filed short-forms joining in the B3 Master Complaint and/or filed individual petitions against the Clean-Up Responder Defendants asserting personal injury and exposure, and thus "B3," claims.[6]

On September 30, 2011, the Court ruled on the Clean-Up Responder Defendants' motions to dismiss the B3 Master Complaint (Rec. Doc. 4159),[7] dismissing all but two causes of action asserted therein, namely negligence and gross negligence under maritime law.  *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179, 2011 WL 4575696, at *12 (E.D. La. Sept. 30, 2011).  In so doing, the Court recognized the availability of derivative immunity and preemption, holding that while neither was established on the face of the B3 Master Complaint, the facts may reveal that the Clean-Up Responder Defendants are "entitled to derivative governmental immunity," or that the B3 claims are preempted, if they were complying with the federal government's instructions.  *Id.* at *6-8, 12.  The Court expressly preserved these defenses and permitted them to be reasserted.  *Id.* at *12.

Following the benefit of targeted discovery on these issues, and in accordance with the Court's Schedule for Limited B3 Discovery (Rec. Doc. 5000), the Clean-Up Responder Defendants filed the Summary Judgment Briefing on May 18, 2012, seeking dismissal with prejudice of all remaining claims asserted against them in the B3 Master Complaint on derivative

---

[6]   In addition to certain individual actions, Plaintiffs Torrey Barlow, Joseph Brown, Scea Burrage, Roy Causey, Thomas Hines, Kirk Prest, and John Wunstell have all filed short forms asserting their status as a B3 plaintiff.  (Case No. 2:10-CV-08888, Rec. Docs. 22261, 34909, 56125, 57007, 61409, 80870, 84046, 89515, 108885, 111959, 130886, 136935).  Plaintiffs Jorey Danos, Nathan Fitzgerald, Frank Howell, and Doug Maurras have filed individual petitions asserting dispersant exposure claims against several Clean-Up Responder Defendants which were consolidated with this MDL.  *See Danos et al. v. BP America Production Company et al.*, Case No. 2:13-CV-03747 (E.D. La. removal filed May 22, 2013); *Fitzgerald et al. v. BP Exploration & Production Inc. et al.*, Case No. 2:13-CV-00650 (E.D. La. complaint filed Apr. 8, 2013); *Martin et al. v. BP Exploration & Production Inc. et al.*, Case No. 2:12-CV-02048 (E.D. La. complaint filed Aug. 9, 2012); *see also* SUMF ¶¶ 34-35, 40-41, 47, 56-57, 60, 63-64, 67-68, 72, 81, 85-86.

[7]   An Amended Order and Reasons was issued on October 4, 2011 to reflect several non-substantive changes.  (Rec. Doc. 4209).

immunity and preemption grounds.  The PSC filed their Omnibus Opposition to the Individual Summary Judgment Motions (the "Summary Judgment Opposition") on June 18, 2012, arguing, among other things, that the Clean-Up Responder Defendants are not entitled to such defenses because it is disputable whether they complied with the federal government's directions during the clean-up.  (Rec. Doc. 6696).  To that end, the PSC submitted thirteen affidavits and declarations in support of the Summary Judgment Opposition that set forth certain assertions regarding the response activities.  (Rec. Docs. 6696-15–6696-27).  On July 11, 2012, the Clean-Up Responder Defendants filed their Joint Reply Memorandum in further support of the Individual Summary Judgment Motions (the "Summary Judgment Reply"), reiterating why they are entitled to derivative immunity and implied preemption in this context and arguing that the affidavits and declarations submitted by the PSC fail to raise a genuine issue of material fact. (Rec. Doc. 6878).  Oral argument was held and the motions were taken under advisement.

## II.      PTO 57 and Resultant Questionnaires

At the June 27, 2013 Status Conference, the Court addressed the pending Individual Summary Judgment Motions and stated that derivative immunity would bar claims against the Clean-Up Responder Defendants so long as they acted pursuant to the direction of the federal government during the clean-up effort.  Further, the Court noted that the thirteen affidavits and declarations submitted by the PSC in support of their Summary Judgment Opposition were insufficient, as they contained nothing more than vague and generalized statements.  In lieu of issuing a blanket order dismissing all of the B3 claims against the Clean-Up Responder Defendants, however, the Court opted to give Plaintiffs another opportunity to come forward with specific evidence, should they have any, that the Clean-Up Responder Defendants violated or exceeded the federal government's instructions, or acted beyond the authority conferred by the federal government, during the *Deepwater Horizon* oil spill response and clean-up effort.  To

that end, the Court instructed Liaison Counsel to co-develop a protocol akin to a *Lone Pine* order, the results of which would permit the Court to rule on the Individual Summary Judgment Motions.  This "B3 protocol" was subsequently set forth in PTO 57 and its accompanying Questionnaire issued by the Court on July 17, 2014.  (Rec. Doc. 13158).

From the outset, PTO 57 made clear that its purpose was for Plaintiffs to come forward with their "specific evidence" that any Clean-Up Responder Defendant(s) failed to act pursuant to the authority and direction of the federal government during the clean-up and thus caused their injuries.[8]  *Id.* at 1-2.  Plaintiffs with such "specific evidence" were instructed to provide (1) employment-related information, if they served as a clean-up worker; (2) a specific explanation of the circumstances of alleged exposure, including the pathway of exposure, the date(s), time(s), and location(s) of exposure, the duration of exposure, and the Clean-Up Responder Defendant(s) alleged to be responsible for the exposure; (3) a specific description of the alleged injury, illness, or medical condition sustained as a result of Plaintiff's alleged exposure; (4) with respect to each Clean-Up Responder Defendant alleged to be responsible for the alleged exposure, the basis for Plaintiff's identification, the act(s) or omission(s) that caused Plaintiff's injury, the date(s), time(s), and location(s) of such act(s) or omission(s) and the circumstances under which the act(s) or omissions(s) arose, and how the act(s) or omission(s) caused Plaintiff's injury, illness, or medical condition; and (5) details and specific evidence regarding how the aforementioned act(s) or omission(s) violated or exceeded the federal government's instruction(s) or order(s), or was/were undertaken without any federal government's instruction(s) or order(s).  *Id.* at 6-9. With respect to each federal government agency instruction or order allegedly violated or

---

[8]   PTO 57 also indicated that Plaintiffs had to (1) have properly opted out of the Medical Benefits Settlement or be ineligible for Medical Benefits Settlement Class membership and (2) desire to pursue a claim against any Clean-Up Responder Defendant(s) arising out of the clean-up.  (Rec. Doc. 13158 at 2, 6).  PTO 57 was clear that it did not concern, and had no effect on, B3 claims brought against any other parties, including BP Exploration & Production Inc. and BP America Production Company.  *Id.* at 2, 10.

exceeded, Plaintiffs were instructed to specify (1) the instruction or order and which agency, and who at the agency, issued it; (2) the date, time, and manner of issuance; (3) the Clean-Up Responder Defendant(s) that received it; (4) the basis for their knowledge that it was violated or exceeded by the Clean-Up Responder Defendant(s); and (5) their specific evidence to that effect. *Id.* at 8-9.

Pursuant to the Court's instruction, the PSC and the Clean-Up Responder Defendants, by and through Liaison Counsel, developed and submitted the Joint Report Regarding Claimants' Compliance with PTO 57 (the "Joint Report") on November 14, 2014.  (Rec. Doc. 13667).  The Joint Report relayed that the parties had agreed to several groupings with respect to compliance with PTO 57, including the grouping of those eleven Plaintiffs that had provided a written response to all 5 questions posed in the Questionnaire.  *Id.* at 2-6.[9]  The parties did not agree as to whether those eleven Plaintiffs' Questionnaires were sufficient as to content.

## III.   The B3 Order to Show Cause and Subsequent Dismissal Order

On January 7, 2016, the Court issued an Order to Show Cause as to the B3 Claims Against the Clean-Up Responder Defendants (the "OSC"), ordering any Plaintiff opposed to the Court entering its proposed Order & Reasons (the "Proposed Order") to show cause, in writing, by January 28, 2016.  (Rec. Doc. 15711).  Eight individual Plaintiffs provided a submission in response to the OSC (Rec. Docs. 15796, 15799, 15800, 15801, 15809, 15811, 15822, 15823, and 15829) and the Clean-Up Responder Defendants submitted their response thereto on February 4, 2016.  (Rec. Doc. 15830).  The Court overruled these eight Plaintiffs' objections (Rec. Doc. 15852), and subsequently issued a slightly edited version of the Proposed Order (the "B3 Dismissal Order").  *See In re Oil Spill*, 2016 WL 614690, at *1-15.  The B3 Dismissal Order

---

[9]  The Remaining B3 Plaintiffs' Questionnaires are attached as Exhibits 18, 19, 21, 22, 24-28, and 30-32 to the SUMF.

granted the Individual Summary Judgment Motions and dismissed all of the B3 claims against the Clean-Up Responder Defendants with prejudice, carving out and reserving judgment as to the eleven Remaining B3 Plaintiffs' claims. *Id.* at *15. The Clean-Up Responder Defendants' Individual Summary Judgment Motions thus remain pending as to the Remaining B3 Plaintiffs' claims.

## FACTUAL BACKGROUND

The Clean-Up Responder Defendants incorporate herein by reference the Factual Background section of their Joint Memorandum in Support of Their Individual Motions for Summary Judgment on Derivative Immunity and Preemption Grounds (Rec. Doc. 6545 at 6-24).[10] In addition, the Clean-Up Responder Defendants refer the Court to its prior discussion of the evidence submitted by the Clean-Up Responder Defendants in the B3 Dismissal Order, *In re Oil Spill*, 2016 WL 614690, at *7-9, and to its discussion of the relevant statutory and regulatory framework, the role of the Federal On-Scene Coordinator ("FOSC"), and the dispersant approval processes in ruling on Nalco's[11] motion for summary judgment. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179, 2012 WL 5960192, at *6-9, 13-14 (E.D. La. Nov. 28, 2012).

## I.    INCIDENT ACTION PLANS

Beginning on April 21, 2010, and continuing throughout the *Deepwater Horizon* spill response, "Incident Action Plans" were prepared on a daily basis that contained detailed instructions for that day's activities that were reviewed, signed, and approved by the Federal On-Scene Coordinator ("FOSC"), the lead federal official running the response, and/or the FOSC's

---

[10]   The Court has already overruled the PSC's objections to the use of the Clean-Up Responder Defendants' stipulations with the United States and expressly considered them in the B3 Dismissal Order. *See In re Oil Spill*, 2016 WL 614690, at *7.

[11]   "Nalco" refers to Nalco Company, Nalco Holdings LLC, Nalco Finance Holdings LLC, and Nalco Holding Company.

representative(s).[12]  The instructions in the Incident Action Plans were group and task specific, and included specific health and safety directives when appropriate.[13]

At the time of issuance, the United States had authorized and/or directed all spill response orders set forth in each Incident Action Plan, which was then delivered to the Incident Command Posts for execution by, among other parties, the Clean-Up Responder Defendants.[14]  The FOSC's representatives and other federal officials were present in the various Incident Command Posts to monitor the execution of the detailed instructions contained in the Incident Action Plans.[15]

The Clean-Up Responder Defendants participated in the *Deepwater Horizon* spill response efforts in accordance with the roles, if any, assigned to them within the Unified Area Command ("UAC") and the Incident Command Posts.[16]  The Clean-Up Responder Defendants complied with all federal government directives and orders applicable to them throughout the *Deepwater Horizon* response and did not exceed those directions and orders.[17]

## II.    DISPERSANT GROUP OPERATIONS

All of the dispersant application operations conducted by the Aerial Dispersant Group at the Incident Command Post in Houma, Louisiana (the "Dispersant Group") were tracked, recorded, and reported.[18]  The Dispersant Group would report on any known dispersant incidents resulting in the unplanned discharge of dispersant from an aircraft or within an aircraft.[19]  The Dispersant Group also would record any reports received of purported dispersant exposure and

---

[12] *See* SUMF ¶ 1.
[13] *See* SUMF ¶ 4.
[14] *See* SUMF ¶ 2.
[15] *See* SUMF ¶ 3.
[16] *See* SUMF ¶ 32.
[17] *See* SUMF ¶ 33; *see also* SUMF Exhibit 23 ¶ 5 and SUMF Exhibit 29 ¶ 9.
[18] *See* SUMF ¶ 10.
[19] *See* SUMF ¶ 11.

the results of each investigation of such reports, including when and how the investigation indicated that the mission at issue was compliant with federally-approved guidelines.[20]

The Dispersant Group only conducted aerial spraying sorties during daylight hours.[21] Indeed, the FOSC and its representative(s) did not authorize dispersant spraying operations beyond such hours.[22]   Consequently, no Clean-Up Responder Defendant conducted any dispersant missions outside of daylight hours.[23]

## III.   CLEANUP WORKER SAFETY AND PERSONAL PROTECTIVE EQUIPMENT

The FOSC "had the ultimate responsibility for directing response efforts and addressing worker health and safety concerns throughout the entire response area," as set forth in the National Contingency Plan ("NCP").[24]   Pursuant to the FOSC's request, the U.S. Occupational Safety and Health Administration ("OSHA") deployed its staff to assist the UAC and its Incident Command Posts with health and safety issues at the beginning of the *Deepwater Horizon* oil spill clean-up effort.[25]   OSHA then "aggressively" oversaw and monitored worker safety efforts to ensure that clean-up workers were adequately protected from the health and safety hazards associated with their clean-up activities.[26]

In those instances where personal protective equipment ("PPE") was required, employers were responsible for supplying it.[27]   PPE was ordered at the very beginning of the response by the Responsible Party and staging areas were set up throughout the Gulf, near field operations,

---

[20]   *See* SUMF ¶ 12.
[21]   *See* SUMF ¶ 7.
[22]   *See* SUMF ¶ 8.
[23]   *See* SUMF ¶ 9.
[24]   *See* SUMF ¶ 13.
[25]   *See* SUMF ¶¶ 15-16.
[26]   *See* SUMF ¶ 16.
[27]   *See* SUMF ¶ 24.

where clean-up workers were instructed to obtain their PPE.[28]   OSHA personnel were deployed to and stationed at many different locations in the field, including staging areas across the Gulf, on board "near-shore vessels doing booming, skimming operations, and in situ burning operations," and on board "offshore vessels for longer periods."[29]   OSHA professionals would also visit a variety of worksites on a daily basis, including staging areas, decontamination sites, and Vessels of Opportunity vessels, to ensure adherence to their guidance and standards and "to provide appropriate worker safety and health protections."[30]   In fact, OSHA made over 4,200 site visits over the course of the response, spanning onshore, near-shore, and offshore sites in Louisiana, Mississippi, Alabama, and Florida, to ensure adequate worker protection.[31]   OSHA thus ensured that workers "receive[d] appropriate training and that they use[d] proper personal protective equipment," which would vary based on the task that they were performing.[32]

OSHA also developed a chemical exposure sampling strategy "based on the specific tasks workers would be performing, the chemicals of concern from the oil and dispersants, and available Occupational Exposure Limits," and then conducted various sampling efforts to evaluate worker exposure.[33]   OSHA "ensured that respirators were used wherever the data indicated that they were necessary," such as "workers on vessels near the source of the crude oil discharge," with the guiding principle that "respirators should be considered the protection of last resort."[34]

The UAC would direct when a respirator was required to be used in the clean-up effort and would indicate this requirement in the formal instructions disseminated through the Incident

---

[28]   *See* SUMF ¶¶ 17-18.
[29]   *See* SUMF ¶ 19.
[30]   *See* SUMF ¶ 29; *see also* SUMF ¶ 20.
[31]   *See* SUMF ¶ 30.
[32]   *See* SUMF ¶ 21.
[33]   *See* SUMF ¶ 22.
[34]   *See* SUMF ¶ 23.

Command System.[35]  The UAC's "Respiratory Protection" policy stated that respirators were only required for and used by workers aboard source control vessels and vessels spraying dispersant onto the surface of the Gulf of Mexico near the wellhead when real-time air monitoring exceeded specified action levels.[36]  The air monitoring and water sampling efforts undertaken during the *Deepwater Horizon* response to assess exposure levels and thus worker protection issues "show[ed] that exposures are well below OSHA occupational health limits."[37]

## IV.    THE REMAINING B3 PLAINTIFFS' QUESTIONNAIRES

Marine Spill Response Corporation, Dynamic Aviation Group, Inc., Airborne Support, Inc., Airborne Support International, Inc., International Air Response, Inc., Lynden, Inc., Lane Aviation, Inc., Tiger Rentals, Ltd., The Modern Group, Ltd., and The Modern Group GP-SUB, Inc. are not identified or in any way referenced in any of the Remaining B3 Plaintiffs' Questionnaires.[38]

DRC is referenced in the Questionnaires of Plaintiffs Joseph Brown and Nathan Fitzgerald.[39]  O'Brien's is referenced in the Questionnaires of Plaintiffs Frank Howell, Doug Maurras, and John Wunstell, and NRC is referenced in the Questionnaires of Plaintiffs Roy Causey and Frank Howell.[40]  But O'Brien's and NRC did not employ Messrs. Causey, Howell, Maurras, and Wunstell, or, in fact, any of the Remaining B3 Plaintiffs.[41]

---

[35]  *See* SUMF ¶ 25.

[36]  *See* SUMF ¶¶ 26-27.

[37]  *See* SUMF ¶ 31.

[38]  *See* SUMF ¶¶ 39, 43, 50, 54, 59, 62, 66, 70, 74, 84, 88.  Mr. Wunstell does identify an entity named Tiger Safety, LLC in its Questionnaire, but Tiger Safety, LLC is not a Clean-up Responder Defendant. *See* SUMF Exhibit 32 at 2-4.

[39]  *See* SUMF ¶¶ 43, 62.  Further, Mr. Brown was not an employee of DRC, but rather, entered into a Master Vessel Charter Agreement with DRC.  *See* SUMF ¶ 45.

[40]  *See* SUMF ¶¶ 54, 70, 74, 88.

[41]  *See* SUMF ¶¶ 55, 71, 76, 90; *see also* SUMF Exhibit 23 ¶3 and SUMF Exhibit 29 ¶3.

## ARGUMENT

Federal Rule of Civil Procedure 56 provides that summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Davis v. Fort Bend County*, 765 F.3d 480, 484 (5th Cir. 2014) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In so doing, however, the movant "need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). "The burden then shifts to 'the nonmoving party, . . . [who must] designate 'specific facts showing that there is a genuine issue for trial.'" *Davis*, 765 F.3d at 484 (*quoting Celotex*, 477 U.S. at 324).

While "[f]actual controversies are construed in the light most favorable to the nonmovant," this is the case "only if both parties have introduced evidence showing that an actual controversy exists." *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). "[Courts] do not, however, in the absence of any ***proof***, assume that the nonmoving party could or would prove the necessary facts." *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (*quoting Little*, 37 F.3d at 1075) (emphasis added). The nonmoving party's burden is not satisfied by creating "some metaphysical doubt as to the material facts." *Little*, 37 F.3d at 1075. Put differently, "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (*citing Hathaway v. Bazany*, 507 F. 3d 312, 319 (5th Cir. 2007)).

The Court has already held that the evidence submitted by the Clean-Up Responder Defendants is "sufficient to demonstrate that they did not exceed or disobey the authority conferred by the federal government in connection with the response operations." *In re Oil Spill*, 2016 WL 614690, at *9. Nothing in the Remaining B3 Plaintiffs' Questionnaires creates any genuine issue of material fact to the Clean-Up Responder Defendants' *prima facie* showing of entitlement to summary judgment. The Clean-Up Responder Defendants are therefore entitled to summary judgment because they have derivative CWA immunity for their activities during the cleanup.

The Clean-Up Responder Defendants are also entitled to summary judgment because they have derivative FTCA discretionary function immunity and because the remaining B3 claims asserted against them are barred by the doctrine of implied conflict preemption. Finally, the Clean-Up Responder Defendants are entitled to summary judgment in light of the Remaining B3 Plaintiffs' failure to provide any substantive evidence in response to PTO 57 and thus cannot make even the "minimal required showing of a potentially meritorious claim." *In re Oil Spill*, 2016 WL 614690, at *14 (*quoting In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2012 WL 1398622, at *4 (E.D. La. Apr. 23, 2012)).

**I.  THE COURT HAS ALREADY HELD THAT DERIVATIVE IMMUNITY AND IMPLIED PREEMPTION ARE AVAILABLE TO THE CLEAN-UP RESPONDER DEFENDANTS WITH RESPECT TO THE B3 CLAIMS**

The Court has already found "that the federal government directed and led the *Deepwater Horizon* response in the exercise of its legitimate authority" and "validly conferred authority upon the Clean-Up Responder Defendants to carry out various oil spill response activities." *In re Oil Spill*, 2016 WL 614690, at *9. Consequently, the Clean-Up Responder Defendants are entitled to both CWA derivative immunity, 33 U.S.C. § 1321(j)(8), and FTCA discretionary function immunity, 28 U.S.C. § 2680(a), provided they complied with, and did not exceed, the

federal government's directives.  *See id.* at *9-10 (relying on the derivative immunity principles articulated in *Yearsley v. W.A. Ross Constr.*, 309 U.S. 18, 20-21 (1940)).

Similarly, provided the Clean-Up Responder Defendants obeyed the federal directives during the response, which they did, the remaining B3 claims asserted against them may be dismissed in accordance with the doctrine of implied conflict preemption.  Indeed, to the extent the Remaining B3 Plaintiffs allege that the Clean-Up Responder Defendants violated state or maritime law, it would have been physically impossible for them to have complied with such laws without violating the CWA, the Oil Pollution Act, and the NCP.  *See Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982).  Moreover, the Remaining B3 Plaintiffs' claims "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in promoting an effective and efficient federal response to significant oil spills. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  As previously held by the Court, "permitting the B3 claims to proceed against the Clean-Up Responder Defendants could cause private responders to think twice before participating in other clean-up efforts.  It is precisely this second-guessing of the government's decisions that would 'stand as an obstacle' to federal law." *In re Oil Spill*, 2016 WL 614690, at *11.

As set forth in more detail below, none of the Remaining B3 Plaintiffs' Questionnaires have provided any evidence sufficient to create a cognizable issue of fact as to whether the Clean-Up Responder Defendants violated or disobeyed the authority conferred onto them by the federal government during the *Deepwater Horizon* response and clean-up effort.  As such, the Clean-Up Responder Defendants should be granted summary judgment on derivative immunity and preemption grounds.

## II.  THE REMAINING B3 PLAINTIFFS' QUESTIONNAIRES DO NOT REBUT THE OVERWHELMING EVIDENCE THAT THE CLEAN-UP RESPONDER DEFENDANTS COMPLIED WITH THE FEDERAL GOVERNMENT'S DIRECTIVES

It is well-settled that "vague, self-serving statements" in a sworn statement do not and cannot raise a genuine issue of material fact, particularly when made in the face of "overwhelming evidence" to the contrary. *Vais Arms, Inc. v. Vais*, 383 F. 3d 287, 294 (5th Cir. 2004); *see also, e.g.*, *Tyler v. Cedar Hill Independent Sch. Dist.*, 426 F. App'x 306, 309 (5th Cir. 2011) ("We have repeatedly held that self-serving affidavits, without more, will not defeat a motion for summary judgment") (citations omitted); *Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Center, Inc.*, No. 11-CV-2002, 2012 WL 1698365, at *13 (E.D. La. May 15, 2012) (Barbier, J.) (*citing DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005)) (finding that summary judgment is appropriate where the only evidence provided is a "conclusory, self serving statement [in an affidavit] without any factual support in the record"). And yet that is all the Remaining B3 Plaintiffs have offered as "evidence in support of the[ir] theor[ies]" that the Clean-Up Responder Defendants violated, exceeded, or acted outside of federal government directives in answering Question #5[42] to and other components of the Questionnaire.  *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996).  None of the Questionnaires thus raise a genuine dispute as to any material fact and cannot sufficiently counter the significant evidence submitted by the Clean-Up Responder Defendants establishing that they all complied with, and did not exceed, the federal government's instructions and orders during the *Deepwater Horizon* response.

---

[42]   Question #5 of the Questionnaire required each Plaintiff to state, for each Clean-Up Responder Defendant, whether and how the alleged act(s) or omission(s) that caused Plaintiff's injury violated or exceeded any federal government instruction(s) or order(s) or was/were undertaken without any such instruction(s) or order(s).  (Rec. Doc. 13158-1 at 4-5).  Question #5 also required each Plaintiff to set forth a number of supporting details, including the basis for their knowledge and their specific evidence. *Id.*

None of the Remaining B3 Plaintiffs have set forth, with any specificity, the instruction or order that was violated or exceeded by a Clean-Up Responder Defendant; when and in what manner the instruction or order was given, including which federal government agency and which official at that agency gave the instruction or order; and the basis for Plaintiff's knowledge that, and specific evidence that, such a violation (or action beyond the scope of government authority) by a Clean-Up Responder Defendant took place.  PTO 57 was clear on its face that all of these items had to be specified by Plaintiffs in their Questionnaires.  (Rec. Docs. 13158 at 8-9, 13158-1 at 4-5).

In failing to set forth specific evidence that the Clean-Up Responder Defendants did not act pursuant to the authority and direction of federal government, as well as failing to set forth other critical information to support their claims, the Remaining B3 Plaintiffs have also failed to comply with the content requirements of PTO 57 and their claims should be dismissed with prejudice on that basis as well.  The Court has previously held that "the purpose of PTO 57 was to screen those Plaintiffs who can clarify the basis for their B3 claims against any Clean-Up Responder Defendant(s) from those who cannot."  *In re Oil Spill*, 2016 WL 614690, at *14.  The Remaining B3 Plaintiffs, like those who submitted blank Questionnaires or provided a written response to only some of the questions posed in the Questionnaire, "have failed to provide all of the required details."  *Id*.  Consequently, their claims should also be dismissed with prejudice pursuant to this Motion for failure to adhere to such requirements.  *See, e.g., Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340-41 (5th Cir. 2000) (affirming the district court's dismissal under Fed. R. Civ. P. 16(f), noting that "[e]ach plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for

his injuries"); *In re Vioxx*, 2012 WL 1398622, at *4 (noting that it is appropriate to grant summary judgment where the disclosure fails to present the "minimal required showing" for inferring a viable claim).    The deficiencies in each of the Remaining B3 Plaintiffs' Questionnaires are addressed in turn below, and dismissal of these claims is now appropriate.

In addition to the individual deficiencies discussed below, all of the Remaining B3 Plaintiffs have provided insufficient details regarding the circumstances surrounding their alleged exposure to oil, dispersant, chemicals, and/or toxic substances during the clean-up.  PTO 57 instructed Plaintiffs to provide "[a] specific explanation of the circumstances of alleged exposure to oil, dispersants, chemicals, and/or toxic substances during the clean-up, including the pathway of exposure (*e.g.*, ingestion, inhalation, dermal contact, etc.), the date(s), time(s), and location(s) of exposure, the duration of exposure, and the Clean-Up Responder Defendant(s) alleged to be responsible for the exposure."  (Rec. Doc. 13158 at 7, 13158-1 at 2).  Yet all of the Remaining B3 Plaintiffs have failed to specify all of these details, in varying degrees, in their Questionnaires.

###    A.    Questionnaire of Torrey Barlow

Mr. Barlow's Questionnaire does not reference any of the Clean-Up Responder Defendants, and so does not implicate any Clean-Up Responder Defendant as having gone beyond or outside the federal government's authority during the *Deepwater Horizon* response. Rather, Mr. Barlow asserts that he "was not provided with the protective equipment to satisfy OSHA's minimum requirements" when he served as a clean-up worker and that "Global Fabrication and Lawson Environmental failed to comply with the OSHA minimum requirements, notwithstanding [the] requirement that all response activities comply with OSHA standards."[43] Because Mr. Barlow's allegations concern parties that are not Clean-Up Responder Defendants,

---

[43]    SUMF Exhibit 18 at 5.

their conduct is irrelevant to this Motion, as they do not support a claim against the Clean-Up Responder Defendants.  Moreover, in alleging that he was not provided with adequate PPE like a respirator "that could prevent the inhalation of toxic fumes,"[44] Mr. Barlow has not substantiated his allegation by providing any evidence that a respirator was required by federal authorities for his specific activity.

### B.      Questionnaire of Joseph Brown

Mr. Brown alleges in a conclusory fashion that he "was not provided with the protective equipment to satisfy OSHA'[s] minimum requirements" and that DRC "specifically instructed [him] not to wear protective equipment."[45]  He further alleges that DRC "failed to comply with OSHA minimum requirements, notwithstanding [the] requirement that all response activities comply with OSHA standards."[46]  But he provides no supportive details such as when, where, and by whom he was instructed "not to wear" PPE, whether these instructions related specifically to a certain type of PPE (such as a respirator, which was used in limited circumstances),[47] whether he demanded any PPE, and if so, when and to whom, and what type of PPE he should have received if all federal directives had been adhered to.  At best, he has presented "some metaphysical doubt" as to whether DRC complied with PPE directives.  *Little*, 37 F.3d at 1075.  And even if these allegations are true, he has not shown that it was DRC's responsibility to provide him with the PPE he alleges he did not receive.[48]

---

[44]   SUMF Exhibit 18 at 4.
[45]   SUMF Exhibit 19 at 5.
[46]   SUMF Exhibit 19 at 5.
[47]    *See* SUMF ¶¶ 23, 25-27; *see also In re Oil Spill*, 2016 WL 614690, at *9 ("Among other things, OSHA assisted in determining the 'Respiratory Protection' policy for the clean-up efforts that was developed by the UAC and based on air sampling results, agreeing that 'respirators should be considered the protection of last resort, as they can be physically taxing on the body, particularly for workers who have not used them before and in conditions of extreme heat.") (citations omitted).
[48]    *See* SUMF ¶¶ 45-46 (establishing that the parties' June 15, 2010 Master Vessel Chart Agreement expressly stated that DRC would not be responsible for the provision of PPE).

### C.     Questionnaire of Scea Burrage

Ms. Burrage's Questionnaire also does not reference any of the Clean-Up Responder Defendants.  Ms. Burrage merely asserts that she was "not a worker" and "live[d] close to coastal water."[49]  Ms. Burrage does not even identify any purported wrongdoing – let alone who may be responsible for it and how it contravened a federal government directive – and so her Questionnaire is insufficient and fails to raise a genuine issue of material fact.

### D.     Questionnaire of Roy Causey

Mr. Causey asserts that he "was not provided a respirator or effective protective equipment," and then vaguely refers to OSHA's permissible exposure limits and the National Institute for Occupational Safety and Health's recommended exposure limits, asserts that he worked long hours in high heat, and contends that "hot water pressure washing and chemical dispersant increase [a] high level of toxic chemical fumes."[50]  Mr. Causey's vague allegations fail to offer any proof that any allegedly wrongful conduct by the Clean-Up Responder Defendant he identifies, NRC, was unauthorized by the federal government.  To the extent he is contending that he was exposed beyond such exposure limits and was not adequately protected, he has still failed to show how any act or omission by NRC was in violation of a government instruction or order.  In fact, the evidence submitted by the Clean-Up Responder Defendants makes clear that OSHA and other agencies conducted various sampling efforts to evaluate worker exposure and "ensure that protective measures [were] adequate."[51]  Air monitoring and water sampling was continuously conducted, with data showing "exposures [] well below OSHA occupational health limits."[52]  OSHA also "aggressively" oversaw and monitored worker safety

---

[49]  SUMF Exhibit 21 at 5.
[50]  SUMF Exhibit 22 at 3, 5-6.
[51]  *See* SUMF ¶¶ 22, 31.
[52]  *See* SUMF ¶ 31.

efforts to ensure that clean-up workers were adequately protected from the health and safety hazards associated with their clean-up activities.[53]  Moreover, Mr. Causey was not employed by NRC.[54]  Thus, even if PPE was required for his activities during the *Deepwater Horizon* response, NRC was under no duty to provide it to him.[55]

In addition, Mr. Causey fails to specify, with respect to any identified Clean-Up Responder Defendant specifically, the act(s) or omission(s) that caused his injury, the date(s), time(s), and location(s) of such act(s) or omission(s), and how such act(s) or omission(s) caused his injury.  Specifically, he asserts that he has been continuously ill "since working with Northstar[,] AMI[,] BP[,] NRCES[, and] NRC,"[56] but does not separately set forth the act(s) or omission(s) of each of these entities, when and where they occurred, and how they caused his injury or illness.  PTO 57 made clear that Plaintiffs were to put forward their specific evidence with respect to each Clean-Up Responder Defendant individually, as opposed to treating all of the companies as a collective whole.  Indeed, PTO 57 repeatedly used the phrases "with respect to each," "for each," and "as to each" in its instructions to ensure that Plaintiffs understood they could not simply make broad allegations as to the group.  (Rec. Docs. 13158 at 7-8, 13158-1 at 2, 4-5).  And yet Mr. Causey has still lumped together his allegations as to multiple parties – both Clean-Up Responder Defendant and not – and sidestepped distinguishing the action(s) or omission(s) of each one individually.  As such, he has failed to tie the act(s) or omission(s) of NRC to the injuries he allegedly suffered.  *See, e.g., Grieveson v. Anderson*, 538 F.3d 763, 777-78 (7th Cir. 2008) ("Vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged []conduct, do not raise a genuine issue of material

---

[53]  *See* SUMF ¶ 16.
[54]  SUMF ¶ 55.
[55]   *See* SUMF ¶ 24.
[56]  SUMF Exhibit 22 at 4.

fact with respect to those defendants.") (*citing Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003)).

### E.       Questionnaires of Jorey Danos

Mr. Danos does not reference any of the Clean-Up Responder Defendants in his two Questionnaires, and for this reason alone, his Questionnaires are irrelevant to this Motion and need not detain the Court.   Regardless, even if they did implicate the Clean-Up Responder Defendants, the conclusory and unsubstantiated allegations contained therein regarding the use of dispersants fail to raise a genuine issue of material fact regarding the Clean-Up Responder Defendants' derivative immunity and implied preemption arguments.

Mr. Danos asserts that in June 2010, he witnessed dispersants being sprayed from "a plane I now know as C130" when the vessel he was working on was "anchored out a mile or less."[57]   He further alleges that dispersants were sprayed "at night in the same location," as he "heard engines from the plane getting closer to the vessel, then lights from the plane."[58]   Finally, he alleges that unidentified planes sprayed him "in June and July 2010" in unidentified locations.[59]   Mr. Danos' vague and unsubstantiated allegations fail to reference any party in particular and thus do not implicate any Clean-Up Responder Defendant.   They also fail to raise a genuine issue of material fact with respect to the federal government's direction and control over all aerial dispersant operations.

First, his assertion that dispersants were sprayed at night because he heard an airplane flying above the vessel on which he was working during nighttime hours is speculative, unsupported by the overwhelming evidence to the contrary, and operationally unsound, as it

---

[57]   SUMF Exhibit 24 at 5; SUMF Exhibit 25 at 5.
[58]   SUMF Exhibit 24 at 5; SUMF Exhibit 25 at 5.
[59]   SUMF Exhibit 24 at 2-3, 7; SUMF Exhibit 25 at 2-3, 7.

would be impossible to see the oil sheens to be dispersed from the air at night.[60]  The Clean-Up Responder Defendants have unequivocally established that aerial dispersant missions were only authorized to be conducted, and were in fact only conducted, during daylight hours.[61]  As such, these speculative and "self-serving allegations" by Mr. Danos in his Questionnaire "are not the type of significant probative evidence required to defeat summary judgment."  *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).

By the same token, Mr. Danos' other accounts of dispersant exposure, including that which involved his vessel being "anchored out a mile or less," do not contain any evidence that such operations, even assuming they occurred, were not approved by the federal government.[62] The substantial evidence submitted by the Clean-Up Responder Defendants demonstrates that all aerial dispersant operations were conducted pursuant to the authorization, direction, and/or control of the FOSC and/or the FOSC's representatives, and that the Dispersant Group investigated all purported accounts of spray incidents by clean-up workers, ultimately determining all of these accounts to be fallacious in that the missions at issue were undertaken in compliance with federal directives.[63]  Mr. Danos' accounts also prove nothing because they lack the minimum necessary supportive details, such as the date(s), time(s), and precise geographic location(s) and coordinates of the alleged incident(s), as well as identifiable characteristics about the plane(s) and individual(s) that conducted the spray(s).

---

[60]   SUMF Exhibit 24 at 5, 7; SUMF Exhibit 25 at 5, 7.

[61]   *See* SUMF ¶¶ 7-9.

[62]   SUMF Exhibit 24 at 2-3, 5, 7; SUMF Exhibit 25 at 2-3, 5, 7.

[63]   *See* SUMF ¶¶ 10-12; *see also In re Oil Spill*, 2016 WL 614690, at *8 (discussing the evidence submitted by the Clean-Up Responder Defendants regarding aerial dispersant operations and concluding that this evidence "demonstrates that they complied with the FOSC dispersant authorizations").  To the extent Mr. Danos' account is the same June 24, 2010 account reported on and discussed in the Dispersant Group's After Action Report, an investigation concluded that all dispersant spraying that day was undertaken consistent with government-approved instructions and that "most likely the vessel saw the engine exhaust which is considerable from a C-130."  SUMF Exhibit 7 at 36 (N9G001-000276).

### F.      Questionnaire of Nathan Fitzgerald

Mr. Fitzgerald alleges that he "was not provided with any respiratory protection or other personal protection equipment by his employers," including DRC.[64]  This is nothing more than a conclusory allegation concerning the supposed need for respirators during Mr. Fitzgerald's activities.  But Mr. Fitzgerald has not substantiated his allegations by providing evidence that the PPE he was allegedly missing was required by the federal authorities for his specific response activities, nor has he submitted competent evidence that the federal authorities required respirators for his activities.  And above all, Mr. Fitzgerald concedes that he cannot provide any information regarding any violation of a federal government instruction or order by the Clean-Up Responder Defendants, electing instead to request further discovery.[65]

In addition, Mr. Fitzgerald asserts, while reiterating a need for discovery, that he was "not provided with any respiratory protection or other personal protection equipment by his employers."[66]  He identifies several employers in his Questionnaire, including DRC as well as other entities that are not Clean-Up Responder Defendants.[67]  Mr. Fitzgerald does not separately set forth the act(s) or omission(s) of each of these entities, when and where they occurred, and how they caused his injury or illness.  He has thus failed to put forward his specific evidence with respect to DRC individually as required by PTO 57.  *See supra* at 22-23.

### G.      Questionnaire of Thomas Hines

Mr. Hines does not reference any of the Clean-Up Responder Defendants in his Questionnaire, and generally asserts that "safety issues were overlooked" and that he was

---

[64]   SUMF Exhibit 26 at 4.
[65]   SUMF Exhibit 26 at 5.
[66]   SUMF Exhibit 26 at 4.
[67]   SUMF Exhibit 26 at 2.

"picking up oil from the Gulf [without] protection."[68]  These vague allegations do not reference any party in particular and thus fail to implicate any of the Clean-Up Responder Defendants.  To the extent Mr. Hines' conclusory allegations concern his purported employer, Aerotek,[69] this entity is not a Clean-Up Responder Defendant and such conduct is irrelevant to the Clean-Up Responder Defendants' entitlement to summary judgment.   Moreover, Mr. Hines does not substantiate his allegations by providing any specific description, let alone evidence, of what kind of safety issues were overlooked and what PPE he was allegedly missing, such that his Questionnaire fails to raise a genuine issue of material fact.

### H.    Questionnaire of Frank Howell

Mr. Howell admits that he has no specific evidence that a federal government instruction or order was violated or exceeded by the Clean-Up Responder Defendants.[70]  Nevertheless, he sets forth a number of conclusory allegations – regarding a wide range of topics – anyway, all of which fail to raise a genuine issue of material fact.  By way of example, he alleges that the Material Safety Data Sheets ("MSDSs") for the dispersants used were not made available to him and that he was denied a respirator, including at a safety meeting where he "explained [his] distress" about potential dispersant exposure to "a group of approximately 20 USCG licensed captains."[71]  Mr. Howell's conclusory allegation that MSDSs were unavailable, without showing that this was in violation of a government order and led to his injury, is insufficient.[72]  Importantly, Mr. Howell also concedes that the safety and health issues that are the subject of his claim, notably the purported "ban on respirators," involved directives from the U.S. Coast Guard

---

[68]   SUMF Exhibit 28 at 9.
[69]   *See* SUMF Exhibit 28 at 2.
[70]   SUMF Exhibit 28 at 12 (responding to Question #5 with "I don't have answers for 5(a)(i)(1-(5)").
[71]   SUMF Exhibit 28 at 9, 13-15.
[72]   Further, the record is clear that the MSDSs were available for review in the Incident Command Posts. *See* SUMF ¶ 5.

("USCG").[73]   Mr. Howell also contends that the training he was supposed to receive was "great[l]y ab[b]reviated," but admits that the USCG was present at the safety briefings he attended, and has not shown that the training he received therein was not approved by the federal government.[74]   In short, his Questionnaire is replete with conclusory allegations, rank speculation, and unsubstantiated assertions of purported misconduct—none of which are sufficient to refute the Clean-Up Responder Defendants' *prima facie* showing of entitlement to summary judgment.

In addition, Mr. Howell references both O'Brien's and NRC in his Questionnaire, among other corporate entities as well as the USCG.[75]   First, Mr. Howell was not employed by either O'Brien's or NRC.[76]   Thus, even if respirators were required for his activities – which he has not sufficiently demonstrated – neither O'Brien's or NRC were under a duty to provide a respirator to Mr. Howell.[77]   Moreover, in setting forth the alleged act(s) or omission(s) in his Questionnaire, he uses the phrases "all collectively, "they," and "all of these," and does not set forth separately what each entity did, when and where that entity did it, and how that conduct caused his injury or illness.   Thus he too has improperly lumped together his allegations and sidestepped distinguishing the action(s) or omission(s) of each Clean-Up Responder Defendant individually, and in turn, failed to tie the act(s) or omission(s) of each Clean-Up Responder Defendant to the injuries he allegedly suffered, as required by PTO 57.  *See supra* at 22-23.

## I.   Questionnaire of Doug Maurras

Mr. Maurras asserts that "white dispersant powder" was dropped on his Dauphin Island, Alabama worksite on May 15, 2010, and that while he "do[es] not know who gave that order, . . .

---

[73]   *See* SUMF Exhibit 28 at 15; *see also id.* at 9, 13 and SUMF ¶¶ 23, 25-27.
[74]   *See* SUMF Exhibit 28 at 9.
[75]   SUMF Exhibit 28 at 3, 9-10.
[76]   *See* SUMF ¶ 71.
[77]    *See* SUMF ¶ 24.

it was a huge mistake according to [his] boss Jim Fox [and] the reaction of the other 2 supervisors running the worksite."[78]  Mr. Maurras thus concedes that he has no basis for stating, or specific evidence showing, that this dispersant operation, assuming it occurred, was not approved by the federal government.  Put differently, he does not, and admits he cannot, specify what federal government instruction was violated or exceeded when his purported exposure took place.  Nor does Mr. Maurras provide supportive details such as who purportedly dropped this dispersant, his geographic location and/or coordinates during this incident, or any identifiable characteristics about the aircraft at issue.  Mr. Maurras' account also runs counter to the substantial evidence in the record making clear that the dispersants used in the *Deepwater Horizon* response were liquids, not powders.[79]  Mr. Maurras' unsubstantiated dispersant exposure assertions thus fall short of creating a genuine issue of material fact.

Mr. Maurras also asserts that there was "no safety training or ready medical attention being provided[;] that was obviously O'Brien, Moran [and] Boom Tech's call[,] not the Coast Guard."[80]  But by his own admission, the USCG was not requiring the training and medical attention he contends should have been available.  As a result, no Clean-Up Responder Defendant violated a government instruction.  In any event, Mr. Maurras does not assert that these purported acts caused his own injuries, a necessary component of a viable claim.

Finally, Mr. Maurras references Clean-Up Responder Defendant O'Brien's in a chain of relationships, but does not set forth separately any act(s) or omission(s) on the part of O'Brien's, when and where it occurred, and how it caused his injury, grouping O'Brien's with another

---

[78]  *See* SUMF Exhibit 30 at 3, 5-6.
[79]  *See* SUMF ¶ 6.
[80]  SUMF Exhibit 30 at 5.  Elsewhere in his Questionnaire, Mr. Maurras contends that he worked for Boom Technology Inc. ("Boom Tech."), who in turn worked for Moran Environmental Recovery, LLC ("Moran"), who worked "under" O'Brien's.  *See* SUMF Exhibit 30 at 2, 6.

entity, Moran.[81]  Thus, he too has failed to distinguish the action(s) or omission(s) of O'Brien's individually and tie them to the injuries he allegedly suffered.  *See supra* at 22-23.

### J.     Questionnaire of Kirk Prest

The Questionnaire submitted by Mr. Prest does not contain any reference to any of the Clean-Up Responder Defendants.   Rather, Mr. Prest contends that his injuries are "BP's responsibility and ultimate obligation" and that "BP failed to provide any protective equipment during the clean up activities."[82]   Like Mr. Barlow, Mr. Prest's allegations only concern a party that is not a Clean-Up Responder Defendant, so their conduct is irrelevant to this Motion.  And he has not identified anything a Clean-Up Responder Defendant did or did not do in violation of a federal directive.

### K.     Questionnaire of John Wunstell

Mr. Wunstell asserts in his Questionnaire that he was not properly warned of safety risks or given "proper safety equipment or instructions," and in response to Question #5, merely refers to the petition in his individual action.[83]   In that petition, he alleges that he was not given adequate personal protective or respiratory equipment or adequately trained in safety issues, that adequate air monitoring equipment and procedures were not provided, and that his vessel was not properly decontaminated.

Mr. Wunstell's allegations concerning the adequacy or effectiveness of the PPE provided, the air monitoring efforts, safety training, and the provision of respirators are nothing more than rank speculation.   The extensive and indisputable factual record is clear that OSHA and the

---

[81]   *See generally* SUMF Exhibit 30.  Mr. Maurras was not employed by O'Brien's.  *See* SUMF ¶ 76.  To the extent Mr. Maurras is attempting to hold O'Brien's responsible for the action(s) and omission(s) of Moran as they concern worker safety, Moran's service agreements with O'Brien's made clear that Moran would be liable for all labor and employment-related requirements, including to its subcontractors – not O'Brien's.  *See* SUMF ¶¶ 78-80.
[82]   SUMF Exhibit 31 at 4-5.
[83]   SUMF Exhibit 32 at 3, 5.

UAC, led by the FOSC, developed and enforced PPE guidelines and a respirator use policy, and that OSHA played an active and aggressive role in the response, ensuring that workers were receiving appropriate training, using appropriate PPE, and that respirators were being used whenever the monitoring data indicated doing so was necessary, with the guiding principle that "respirators should be considered the protection of last resort."[84]   Notably, air monitoring and water sampling was continuously conducted, with data showing "exposures [] well below OSHA occupational health limits."[85]   Mr. Wunstell has submitted no competent evidence that the federal government required more PPE than what he received, nor has he submitted competent evidence that a respirator was required to be worn during the *in situ* burn operations he was allegedly engaged in and that this order was issued to and received by O'Brien's and then violated.   Moreover, Mr. Wunstell was not employed by O'Brien's.[86]   Therefore, even if additional PPE was required, O'Brien's was under no duty to provide it to Mr. Wunstell.[87]

As for Mr. Wunstell's allegation that his vessel was not properly decontaminated, nothing in his Questionnaire (or the petition referred to therein) states the decontamination procedure approved by the government that should have been adhered to and was not – let alone which federal government agency issued the decontamination instruction or order and the official that relayed it, to whom the instruction or order was relayed, when and how the instruction or order was communicated, and the basis for and specific evidence that the omission violated or exceeded the aforementioned instruction or order.

---

[84]   *See* SUMF ¶¶ 14-16, 19-23, 25-31; *see also In re Oil Spill*, 2016 WL 614690, at *9 (discussing the evidence submitted by the Clean-Up Responder Defendants regarding the FOSC's "ultimate responsibility for . . . addressing worker health and safety concerns," with OSHA's support, and OSHA's role in PPE and respirator guidelines).
[85]   *See* SUMF ¶ 31.
[86]   *See* SUMF ¶ 90.
[87]   *See* SUMF ¶ 24.

Finally, Mr. Wunstell contends that he "was sprayed with dispersant chemicals, aerially deployed, over several nights on the week of May 24, 2010."[88]  For the same reasons articulated above in connection with Mr. Danos' Questionnaire, *see supra* at 23-24, this self-serving and conclusory statement is insufficient to raise a genuine issue of material fact. In fact, Mr. Wunstell's Questionnaire provides no more color on this issue than the affidavit he submitted in support of the Summary Judgment Opposition (Rec. Doc. 6696-27), which was deemed vague and insufficient by the Court.

**III.  CERTAIN CLEAN-UP RESPONDER DEFENDANTS ARE NOT IDENTIFIED AT ALL IN THE REMAINING B3 PLAINTIFFS' QUESTIONNAIRES AND SHOULD BE DISMISSED FROM THIS MDL ON THIS THRESHOLD BASIS ALONE**

A survey of the disclosures provided by the Remaining B3 Plaintiffs demonstrates that ten of the Clean-Up Responder Defendants – Marine Spill Response Corporation, Dynamic Aviation Group, Inc., Airborne Support, Inc., Airborne Support International, Inc., International Air Response, Inc., Lynden, Inc., Lane Aviation, Inc., Tiger Rentals, Ltd., The Modern Group, Ltd., and The Modern Group GP-SUB, Inc. – are not referenced in any way in these Questionnaires.  The failure of the Remaining B3 Plaintiffs to identify any of these entities as being responsible for their alleged exposure injuries, as well as the failure to identify any act(s) or omissions(s) of these entities and how that conduct caused their alleged injuries, justifies dismissal with prejudice at this juncture.

PTO 57 specifically instructed Plaintiffs to identify each Clean-Up Responder Defendant alleged to be responsible for their alleged injury, and ***to state separately as to each such Clean-Up Responder Defendant*** certain critical information, including but not limited to the act(s) or omission(s) that purportedly caused their injury, when and where the act(s) or omission(s) took

---

[88]   SUMF Exhibit 32 at 3.

place, and how the act(s) or omission(s) caused Plaintiff's injury. (Rec. Docs. 13158 at 7-9, 13158-1 at 4-5) (emphasis added). By failing to set forth any such content as to these entities, the Remaining B3 Plaintiffs have failed to make "the minimal required showing of a potentially meritorious claim" against them. *In re Oil Spill*, 2016 WL 614690 at *14 (*quoting In re Vioxx*, 2012 WL 1398622, at *4). It is therefore appropriate to grant summary judgment, and dismiss with prejudice, all pending B3 claims against these ten Clean-Up Responder Defendants. *See id.* (*citing Acuna*, 200 F.3d at 340-41, Fed. R. Civ. P. 16(f), and Fed. R. Civ. P. 41(b)).

Similarly, even the Remaining B3 Plaintiffs that do reference a Clean-Up Responder Defendant in their Questionnaires only reference one or two of them.[89] Thus, in addition to the arguments discussed in Parts I-III herein, *see supra* at 14-31, for the same reasons articulated above as to the Remaining B3 Plaintiffs' claims against the unidentified Clean-Up Responder Defendants, the claims against DRC by Plaintiffs Causey, Howell, Maurras, and Wunstell, the claims against O'Brien's by Plaintiffs Brown, Causey, and Fitzgerald, and the claims against NRC by Plaintiffs Brown, Fitzgerald, Maurras, and Wunstell should be dismissed with prejudice.

## IV.   ANY SUGGESTION OR REQUEST FOR FURTHER DISCOVERY FROM THE REMAINING B3 PLAINTIFFS IN THEIR QUESTIONNAIRES SHOULD BE REJECTED

Several of the Remaining B3 Plaintiffs implicitly acknowledge that the "evidence" they have submitted in response to PTO 57 is insufficient to create a genuine issue of material fact because they attempt to hedge their bets by arguing that they need, or could benefit from, further discovery. Specifically, Messrs. Barlow, Brown, Danos, Fitzgerald, and Maurras have all articulated a desire for further discovery.[90] Notably, these Plaintiffs have all made this plea in answering Question #5, arguably the most critical section of the Questionnaire as it is where

---

[89]   *See* SUMF ¶¶ 43, 54, 62, 70, 74, 88.
[90]   *See* SUMF Exhibit 18 at 5; SUMF Exhibit 19 at 5; SUMF Exhibit 25 at 7, 9; SUMF Exhibit 26 at 4-5; and SUMF Exhibit 30 at 5.

Plaintiffs were to set forth the basis for any contention that any Clean-Up Responder Defendant(s) acted beyond or outside the authority conferred by the federal government.  (Rec. Doc. 13158-1 at 4-5).

These Remaining B3 Plaintiffs' "cry of prematurity cannot preclude summary judgment." *Scaffidi v. Thompson-Hayward Chem., Inc.*, No. 94-CV-3860, 1997 WL 469966, at *3 (E.D. La. Aug. 12, 1997).  PTO 57 made clear that its purpose was to give Plaintiffs "yet **another** opportunity" to identify specific facts and evidence, should they exist, that the Clean-Up Responder Defendants did not perform their response activities consistent with federal directives. *In re Oil Spill*, 2016 WL 614690, at *5, *9-11 (emphasis added).  This additional opportunity followed the PSC's long record of seeking, at every turn, to avoid the burdens associated with the discovery and adjudication of the Clean-Up Responder Defendants' immunity and preemption arguments.  *See* Summary Judgment Reply at 22-29 (setting forth the chronology of events and the PSC's dilatory tactics).  And it is well-settled that litigants cannot "simply rely on vague assertions that additional discovery will produce needed but unspecified facts, particularly where, as here, ample time and opportunities for discovery have already lapsed."  *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980) (citations omitted); *see also Donald Doss v. M/V K2*, No. 15-CV-1539, 2016 WL 1545630, at *2 n.14 (5th Cir. Apr. 15, 2016) (granting summary judgment and noting that one "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts") (*quoting Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).  In short, the Remaining B3 Plaintiffs' claims that "further discovery . . . **might** reveal facts" that they are "currently unaware of" are insufficient to defeat summary judgment.  *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123 (5th Cir. 1988) (emphasis added) (citation omitted).

## **CONCLUSION**

For the foregoing reasons, and those set forth in the Clean-Up Responder Defendants'
prior Summary Judgment Briefing, the Clean-Up Responder Defendants respectfully request that
they be granted summary judgment and that the Remaining B3 Plaintiffs' claims be dismissed
with prejudice.

Dated:  May 9, 2016

Respectfully submitted,

/s/ Michael J. Lyle

Michael J. Lyle (DC #475078, IL #6199227)
Eric C. Lyttle (DC #482856)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street NW, 11th floor
Washington, DC 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Sylvia E. Simson (NY #4803342)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Patrick E. O'Keefe (LA # 10186)
MONTGOMERY BARNETT, L.L.P.
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3300
Telephone: (504) 585-3200
Facsimile: (504) 585-7688

Attorneys for O'BRIEN'S RESPONSE
MANAGEMENT, L.L.C. and NATIONAL
RESPONSE CORPORATION

/s/ Ben L. Mayeaux

Frank X. Neuner, Jr. (LA #7674)
Ben L. Mayeaux (LA #19041)
Jed M. Mestayer (LA #29345)
NEUNERPATE
One Petroleum Center, Suite 200
1001 W. Pinhook Rd.
Lafayette, LA  70503
Telephone: (337) 237-7000
Facsimile: (337) 233-9450

Attorneys for AIRBORNE SUPPORT, INC. and
AIRBORNE SUPPORT INTERNATIONAL, INC.

/s/ Alan M. Weigel

Alan M. Weigel (NY #3065307)
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: 212-885-5000
Facsimile: 917-332-3836

Attorney for MARINE SPILL
RESPONSE CORPORATION

/s/ Leo R. McAloon, III

Leo R. McAloon, III (LA # 19044)
Michael D. Cangelosi (LA #  30427)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
New Orleans, LA 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011

Attorneys for DYNAMIC AVIATION
GROUP, INC.

/s/ Kevin R. Tully

Kevin R. Tully (LA #1627)
H. Carter Marshall (LA #28136)
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street, Suite 2300
New Orleans, LA 70130-6078
Telephone: (504) 561-5700
Facsimile: (504) 593-4220

Attorneys for INTERNATIONAL
AIR RESPONSE, INC. and
LYNDEN INCORPORATED

/s/ George E. Crow
George E. Crow (TX # 05151900)
LAW OFFICE OF GEORGE E. CROW
P.O. Box 30
Katy, TX 77492
For Overnight Physical Delivery use
1519 Miller Avenue
Katy, TX 77493
Telephone: (281) 391-9275

Attorney for LANE AVIATION, INC.


/s/ Harold J. Flanagan
Harold J. Flanagan (LA # 24091)
Brandon C. Briscoe (LA # 29542)
Sean P. Brady (LA # 30410)
Andy Dupre (LA # 32437)
FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 2405
New Orleans, LA 70170
Telephone: 504-569-0235
Facsimile: 504-592-0251

Attorneys for DRC EMERGENCY SERVICES, LLC

/s/ John E. Galloway
John E. Galloway (LA #5892)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, Suite 4040
New Orleans, LA 70139
Telephone: (504) 525-6802
Facsimile: (504) 525-2456

Attorney for TIGER RENTALS,
LTD., THE MODERN GROUP,
LTD., and THE MODERN GROUP
GP-SUB, INC.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing Memorandum in Support of the Clean-Up Responder Defendants' Omnibus Motion for Summary Judgment has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of May, 2016.

/s/ Michael J. Lyle
Michael J. Lyle