**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | * | **MDL NO. 2179** |
| IN RE:  OIL SPILL by the OIL RIG | * | |
| "DEEPWATER HORIZON" in the | * | |
| GULF OF MEXICO, on | * | |
| APRIL 20, 2010 | * | |
| | * | **SECTION: J** |
| | * | |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| *ALL CASES IN PLEADING BUNDLE B3* | * | **JUDGE BARBIER** |
| | * | **MAG. JUDGE SHUSHAN** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**CLEAN-UP RESPONDER DEFENDANTS' STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF THEIR OMNIBUS MOTION FOR SUMMARY
JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1, the Clean-Up Responder Defendants[1] submit this Joint Statement of Undisputed Material Facts in Support of their Omnibus Motion for Summary Judgment (the "SUMF").  In so doing, the Clean-Up Responder Defendants incorporate by reference, in its entirety, their Joint Statement of Undisputed Material Facts in Support of Their Individual Motions for Summary Judgment on Derivative Immunity and Preemption Grounds, filed on May 18, 2012 ("Prior SUMF") (Rec. Doc. 6545-49),[2] and reiterate and/or add the following:

### *The Deepwater Horizon Response and Clean-Up Effort*

1. Beginning on April 21, 2010, and continuing throughout the *Deepwater Horizon* spill response, "Incident Action Plans" were prepared on a daily basis that contained detailed instructions for that day's activities that were reviewed, signed, and approved by the Federal On-Scene Coordinator ("FOSC") and/or the FOSC's representative(s).  Ex. 1 – Joint Stipulations of Fact Between the Clean-Up Responder Defendants and the United States of America (hereinafter "Joint Stipulations") at ¶ 26; *see also* Prior SUMF ¶ 53 and Exhibits 15-A through 15-G attached thereto (Rec. Docs. 6545-15 – 6545-21).

2. At the time of issuance, the United States had authorized and/or directed all spill response orders set forth in each Incident Action Plan, which was then delivered to the Incident Command Posts for execution by, among other parties, the Clean-Up Responder Defendants.  Ex. 1 – Joint Stipulations, *supra* ¶ 1, at ¶ 26; *see also* Prior SUMF ¶¶ 54-55.

---

[1]    The Clean-Up Responder Defendants are the following: O'Brien's Response Management, L.L.C. (formerly known as O'Brien's Response Management, Inc.) ("O'Brien's), National Response Corporation ("NRC"), Marine Spill Response Corporation ("MSRC"), Dynamic Aviation Group, Inc., Airborne Support, Inc., Airborne Support International, Inc., DRC Emergency Services, LLC ("DRC"), International Air Response, Inc., Lynden, Inc., Lane Aviation, Inc., Tiger Rentals, Ltd., The Modern Group, Ltd., and The Modern Group GP-SUB, Inc.

[2]    All capitalized terms used in this SUMF and not otherwise defined shall have the meanings set forth in the Prior SUMF.

3. The FOSC's representatives and other federal officials were present in the various Incident Command Posts to monitor the execution of the detailed instructions contained in the Incident Action Plans.  Ex. 1 – Joint Stipulations, *supra* ¶ 1, at ¶ 29; *see also* Prior SUMF ¶ 82.

4. The instructions in the Incident Action Plans were group and task specific and included specific health and safety directives when appropriate.  *See, e.g.*, Ex. 2A – Excerpts from Incident Action Plan – Period 18 (May 8, 2010 – May 9, 2010) (hereinafter "Period 18 IAP"); Ex. 2B – Excerpts from Incident Action Plan – Period 29 (May 19, 2010 – May 20, 2010) (hereinafter "Period 29 IAP"); Ex. 2C – Excerpts from Incident Action Plan – Period 42 (June 1, 2010 – June 2, 2010) (hereinafter "Period 42 IAP"); *see also* Exhibits 15-A through 15-G to the Prior SUMF (Rec. Docs. 6545-15 – 6545-21).

5. The Incident Action Plans indicated that certain documents would be available upon request for review, including various safety plans and the Material Safety Data Sheets (the "MSDSs") for Corexit EC9500A and Corexit EC9527A, the two dispersants applied to the surface of the Gulf of Mexico during the *Deepwater Horizon* response.  *See, e.g.*, Ex. 2A – Period 18 IAP, *supra* ¶ 4, at HCG154-001953; Ex. 2B – Period 29 IAP, *supra* ¶ 4, at HCG154-003373; Ex. 2C – Period 42 IAP, *supra* ¶ 4, at HCG154-005391; *see also* Ex. 1 – Joint Stipulations, *supra* ¶ 1, at ¶¶ 30, 33.

6. The MSDSs for Corexit EC9500A and Corexit EC9527A indicate that the physical state of these products is "liquid."  Ex. 3 – Nalco Safety Data Sheet for Corexit EC9500A (NRC034117–034128) at 5 (NRC034121); Ex. 4 – Nalco Safety Data Sheet for Corexit EC9527A, *available at* https://www.osha.gov/oilspills/msds.html, at 4.

7.  The Aerial Dispersant Group at the Incident Command Post in Houma, Louisiana (the "Dispersant Group") only conducted aerial spraying sorties during daylight hours. *See* Ex. 5 – Aerial Dispersant Group – Houma Operations – Interim Plan (July 23, 2010) (OBR004152 – 004179) (hereinafter "Dispersant Group Interim Plan") at 3 (OBR004154) ("Dispersant spraying operations are conducted during day light only"); *see also* Ex. 2A – Period 18 IAP, *supra* ¶ 4, at HCG154-002027; Ex. 2B – Period 29 IAP, *supra* ¶ 4, at HCG154-003427 – HCG154-003428; and Ex. 2C – Period 42 IAP, *supra* ¶ 4, at HCG154-005525 – 005526 (listing aerial dispersant operations in the organizational charts for daytime operational activities).

8.  The FOSC and its representative(s) did not authorize dispersant spraying operations beyond daylight hours.  Ex. 1 – Joint Stipulations, *supra* ¶ 1, at ¶ 44; *see also* Ex. 6 – Excerpts from the On-Scene Coordinator Report—Deepwater Horizon Oil Spill (Sept. 2011), *available at* www.uscg.mil/foia/docs/DWH/FOSC_DWH_Report.pdf (hereinafter "On-Scene Coordinator Report"), at 36 ("Aerial dispersant spraying operations could occur during daylight hours only.").

9.  The Clean-Up Responder Defendants did not conduct any dispersant spray missions outside of daylight hours.  Ex. 1 – Joint Stipulations, *supra* ¶ 1, at ¶ 45.

10. All of the dispersant application operations were tracked, recorded, and reported. *See* Ex. 5 – Dispersant Group Interim Plan, *supra* ¶ 7, at 16-17 (OBR004157 – 004158) (noting that "[a]ll spray and spotter planes are required to have and activate their GPS tracking system on board to allow for physical tracking of the airplanes as well as document the spray locations for documenting and reporting" as well as the "standardized reporting requirements" engaged in by the Dispersant Group); Ex. 7 – After Action Report, Houma ICP Aerial Dispersant

3

Group, Deepwater Horizon MC252 Aerial Dispersant Response (Dec. 31, 2010) (N9G001-000241 – 000320) (hereinafter "Dispersant Group After Action Report") at 26-42 (N9G001-000266 – 000282) (setting forth the Chronology of Dispersant Related Events and an Overview of Dispersant Operations).

11. The Dispersant Group reported on known dispersant incidents resulting in the unplanned discharge of dispersant from an aircraft or within an aircraft, as required. *See* Ex. 7 – Dispersant Group After Action Report, *supra* ¶ 10, at 27 (N9G001-000267) (reporting on the "emergency dispersant discharge of approximately 1,000 gallons of Corexit 9500" on April 29, 2010); 29 (N9G001-000269) (reporting on the "dispersant system sump tank leak spilling about 100 gallons of dispersant into the aircraft" on May 14, 2010); and 34 (N9G001-000274) (reporting on the "failure of the cam lock caused a release of approximately 20 gallons of Corexit EC9500A into the aircraft" on June 13, 2010); *see also* Ex. 2A – Period 18 IAP, *supra* ¶ 4, at HCG154-001969, Ex. 2B – Period 29 IAP, *supra* ¶ 4, at HCG154-003262; Ex. 2C – Period 42 IAP, *supra* ¶ 4, at HCG154-005605 (requiring the Dispersant Group to report on unplanned events or incidents).

12. The Dispersant Group also recorded all reports it received of purported dispersant exposure and the results of each investigation of such reports, including when and how the investigation indicated that the mission at issue was compliant with federally-approved guidelines. Ex. 7 – Dispersant Group After Action Report, *supra* ¶ 10, at 28 (N9G001-000268), 31 (N9G001-000271), 32 (N9G001-000272), 33 (N9G001-000273), 36 (N9G001-000276); *see also* Prior SUMF ¶ 74 ("The Clean-Up Responder Defendants complied in full with each and every one of the FOSC dispersant authorizations.").

13. Pursuant to the National Contingency Plan ("NCP"), the FOSC "had the ultimate responsibility for directing response efforts and addressing worker health and safety concerns throughout the entire response area."  Ex. 8 – U.S. Department of Labor, Occupational Health and Safety Administration, Deepwater Horizon Oil Spill: OSHA's Role in the Response (May 2011), *available at* http://www.osha.gov/oilspills/dwh_osha_response_0511a.pdf (hereinafter "OSHA's Role in the Response"), at 4.

14. The oil spill response actions performed during the *Deepwater Horizon* clean-up effort had to comply with the U.S. Occupational Safety and Health Administration's ("OSHA") Hazardous Waste and Emergency Response Standard, 29 C.F.R. 1910.120, per the NCP.  Ex. 8 – OSHA's Role in the Response, *supra* ¶ 13, at 4; Ex. 9 – Memorandum of Understanding Between the Occupational Safety and Health Administration, Department of Labor and the Federal On Scene Coordinator, Department of Homeland Security Concerning Occupational Safety and Health Issues Related to the Deepwater Horizon Oil Spill Response (HCG037-000249–000251) (hereinafter "OSHA/FOSC MOU"), at HCG037-000249.

15. The FOSC requested that OSHA provide it, the Unified Area Command ("UAC"), and its Incident Command Posts with health and safety guidance and expertise.  Ex. 8 – OSHA's Role in the Response, *supra* ¶ 13, at 4.

16. OSHA personnel began working within the Incident Command System at the beginning of the *Deepwater Horizon* spill response and, among other things, "aggressively" oversaw and monitored worker safety efforts to ensure that clean-up workers were adequately protected from the health and safety hazards associated with their clean-up activities.  Ex. 8 – OSHA's Role in the Response"), *supra* ¶ 13, at 3-5.

5

17. From the beginning of the response, the NCP Responsible Party ordered personal protective equipment ("PPE") and "established numerous staging areas to deliver the material to the field in a timely manner." Ex. 6 – On-Scene Coordinator Report, *supra* ¶ 8, at 89.

18. Clean-up workers "were instructed to pick up their PPE" at the staging areas set up across the Gulf "close to field operations," and "[a]ll responders accessed the PPE" at these areas. Ex. 6 – On-Scene Coordinator Report, *supra* ¶ 8, at 89.

19. OSHA personnel were deployed to and stationed at many different locations in the field, including staging areas across the Gulf, on board "near-shore vessels doing booming, skimming operations, and in situ burning operations," and aboard "offshore vessels for longer periods." *See, e.g.*, Ex. 10 – U.S. Department of Labor, Keeping Workers Safe During Oil Spill Response and Cleanup: Update on OSHA Activities (June 8, 2010), *available at* http://www.hsdl.org/?view&did=22775 (hereinafter "OSHA Keeping Workers Safe Report"), at 1.

20. "Every day, between 20 and 25 OSHA compliance officers [would] travel to all staging areas to ensure that workers are protected from safety and health hazards." Ex. 10 – OSHA Keeping Workers Safe Report, *supra* ¶ 19, at 2.

21. OSHA ensured that workers "receive[d] appropriate training and that they use[d] proper personal protective equipment," which would vary based on the task that they were performing. Ex. 9 – OSHA/FOSC MOU, *supra* ¶ 14, at HCG037-000249; *see also* Ex. 11 – OSHA On-Shore and Off-Shore PPE Matrixes for Gulf Operations (Aug. 14, 2010), *available at* https://www.osha.gov/oilspills/gulf-operations-ppe-matrix.pdf (detailing minimum requirements and additional considerations by task).

22. OSHA developed a chemical exposure sampling strategy "based on the specific tasks workers would be performing, the chemicals of concern from the oil and dispersants, and available Occupational Exposure Limits," and then conducted various sampling efforts to evaluate worker exposure.  Ex. 8 – OSHA's Role in the Response, *supra* ¶ 13, at 7-8.

23. OSHA "ensured that respirators were used wherever the data indicated that they were necessary," such as "workers on vessels near the source of the crude oil discharge," with the guiding principle that "respirators should be considered the protection of last resort."  Ex. 8 – OSHA's Role in the Response, *supra* ¶ 13, at 8-9; *see also* Prior SUMF ¶ 97 (noting OSHA's view on limited respirator use).

24. In those instances where personal protective equipment was required, employers were responsible for supplying it.  *See* Ex. 12 – E-mail from Frank Cesario to Host of Recipients enclosing OSHA Fact Sheet (May 26, 2010) (NRC039414–039419) (OSHA Fact Sheet noting that employers must "give you the personal protective equipment you need to do the job safely" and that "protective equipment requirements depend on the hazards of each job"); *see also* Ex. 13 – Excerpts from the National Institute of Environmental Health Sciences and OSHA Oil Spill Cleanup Training Tool – Safety and Health Awareness for Oil Spill Cleanup Workers (OBR03178, produced natively) at 3 (noting that under the Occupational Safety and Health Act, "employers must [] provide training and required protective equipment").

25. The UAC would direct when a respirator was required to be used in the clean-up effort and would indicate this requirement in the formal instructions disseminated through the Incident Command System.  Ex. 14 – Excerpts from the Deposition of Douglas Suttles, May 19-20, 2011, at 671:25-673:1.

26. The UAC's "Respiratory Protection" policy stated that respirators were only required for and used by workers aboard source control vessels and vessels spraying dispersant onto the surface of the Gulf of Mexico near the wellhead when real-time air monitoring exceeded specified action levels.  Ex. 15 – E-mail from Steve Rupkey to Host of Recipients enclosing ICP Houma Fact Sheet on Respiratory Protection Employed in the MC-252 Response (June 24, 2010) (NRC035062–035069) (hereinafter "Respiratory Protection Policy"), at NRC035067.

27. Per the UAC's "Respiratory Protection Policy," respirators were not required to be worn during the *in situ* burning operations in the ordinary course.  *See* Ex. 15 – Respiratory Protection Policy, *supra* ¶ 26, at NRC035067 (stating that respirators were not required for offshore *in situ* burning activities); *see also* Ex. 16 – National Institute for Occupational Safety and Health, Health Hazard Evaluation of Deepwater Horizon Response Workers, HETA 2010-0115, Interim Report #2 (July 12, 2010), *available at* http://www.cdc.gov/niosh/hhe/pdfs/interim_report_2.pdf, at 2B-8 (discussing evaluation of *in situ* burning operations and finding that the monitoring data did not warrant continuous respirator use during *in situ* burning operations).

28. OSHA confirmed that there were no reports of emergency situations "where workers [involved in *in situ* burning efforts] were exposed in the [smoke] plume" during the *Deepwater Horizon* response.  Ex. 8 – OSHA's Role in the Response, *supra* ¶ 13, at 10.

29. Over the course of the response, OSHA professionals visited a variety of worksites on a daily basis, including staging areas, decontamination sites, and Vessels of Opportunity ("VoO") vessels, to ensure adherence to their guidance and standards and "to provide appropriate

worker safety and health protections." Ex. 8 – OSHA's Role in the Response, *supra* ¶ 13, at 5.

30. OSHA made over 4,200 site visits, spanning onshore, near-shore, and offshore sites in Louisiana, Mississippi, Alabama, and Florida, to ensure adequate worker protection. Ex. 8 – OSHA's Role in the Response, *supra* ¶ 13, at 1, 5-6.

31. From the beginning of the *Deepwater Horizon* response, "air monitoring and water sampling [were undertaken] to determine the potential level of exposure, if any, to oil and dispersant, and to ensure that protective measures are adequate . . . Monitoring results show[ed] that exposures [were] well below OSHA occupational health limits." Ex. 17 – Excerpts from Incident Action Plan – Period 40 (May 30, 2010 –May 31, 2010) at HCG154-005427.

32. The Clean-Up Responder Defendants participated in the *Deepwater Horizon* spill response efforts in accordance with the roles, if any, assigned to them within the UAC and the Incident Command Posts. Ex. 1 – Joint Stipulations, *supra* ¶ 1, at ¶ 28.

33. The Clean-Up Responder Defendants complied with all federal government directives and orders applicable to them throughout the *Deepwater Horizon* response and did not exceed those directions and orders. (Rec. Docs. 6536-3 ¶ 15; 6536-4 ¶ 15; 6538-3 ¶ 7; 6546-3 ¶¶ 5, 9, 15, 27; 6547-2 ¶¶ 35-36; 6551-2 ¶ 26; 6553-3 ¶ 18; 6557-4 at Exhibit 3 ¶ 21; 6559-2 ¶ 12).

### *Facts Specific to Plaintiff Torrey Barlow*

34. On April 19, 2011 and April 20, 2011, Torrey Barlow submitted Direct Filing Short Forms joining in the Master Complaint for the B3 pleading bundle (the "B3 Master Complaint"). (Case No. 2:10-CV-08888, Rec. Docs. 61409, 80870).

35. On September 11, 2012, Mr. Barlow filed an individual action alleging, among other things, dispersant exposure, which was consolidated with this MDL. *Barlow v. BP Exploration &*

*Production, Inc.*, Case No. 2:12-CV-02248 (E.D. La. complaint filed Sept. 11, 2012).  None

of the Clean-Up Responder Defendants are named defendants in this action.  *Id.*

36. On September 20, 2014, Mr. Barlow executed a sworn statement pursuant to Pretrial Order

No. 57 ("PTO 57") (Rec. Doc. 13158).  *See* Ex. 18 – Form for Disclosures Clarifying the

Basis for B3 Claims Against the Clean-Up Responder Defendants by Torrey Barlow (Sept.

20, 2014) (hereinafter "Barlow Questionnaire").

37. In the Barlow Questionnaire, Mr. Barlow alleges that he worked for "Global Fabrication,

LLC and Lawson Environmental" during the *Deepwater Horizon* response and that personnel

from these entities assured him that "additional protective equipment, such as face masks and

respirators, were not necessary."  Ex. 18 – Barlow Questionnaire, *supra* ¶ 36, at 2, 4.

38. Mr. Barlow alleges in the Barlow Questionnaire that "Global Fabrication and Lawson

Environmental failed to comply with the OSHA minimum requirements, notwithstanding

[the] requirement that all response activities comply with OSHA standards."  Ex. 18 –

Barlow Questionnaire, *supra* ¶ 36, at 5.

39. Mr. Barlow does not reference any Clean-Up Responder Defendant(s), or identify any

specific act(s) or omissions(s) of any Clean-Up Responder Defendant(s), in the Barlow

Questionnaire.  *See generally* Ex. 18 – Barlow Questionnaire, *supra* ¶ 36.

### *Facts Specific to Plaintiff Joseph Brown*

40. On April 14, 2011, Joseph Brown submitted a Direct Filing Short Form joining in the B3

Master Complaint.  (Case No. 2:10-CV-08888, Rec. Doc. 56125).

41. On September 21, 2012, Mr. Brown filed an individual action alleging, among other things,

dispersant exposure, which was consolidated with this MDL.  *Brown et al. v. BP Exploration*

*& Production, Inc.*, Case No. 2:12-CV-02333 (E.D. La. complaint filed Sept. 21, 2012). DRC is the only Clean-Up Responder Defendant named in this action.  *Id.*

42. On September 20, 2014, Mr. Brown executed a sworn statement pursuant to PTO 57.  *See* Ex. 19 – Form for Disclosures Clarifying the Basis for B3 Claims Against the Clean-Up Responder Defendants by Joseph Brown (Sept. 20, 2014) (hereinafter "Brown Questionnaire").

43. DRC is the only Clean-Up Responder Defendant referenced in the Brown Questionnaire. *See generally* Ex. 19 – Brown Questionnaire, *supra* ¶ 42.

44. In the Brown Questionnaire, Mr. Brown alleges that he served as a participant in the VoO program and that DRC "was listed as a charter of [his] twenty-five foot vessel."  Ex. 19 – Brown Questionnaire, *supra* ¶ 42, at 2.

45. Mr. Brown entered into a Master Vessel Charter Agreement with DRC on June 15, 2010 (the "Brown Charter Agreement").  Ex. 20 – Declaration of Kristy Fuentes in Support of the Clean-Up Responder Defendants' Motion for Summary Judgment ("Fuentes Decl.") at 2.

46. Article 2 of the Brown Charter Agreement states that "BP will ensure that all VESSEL crews engaged in oil spill response activities (1) receive all necessary training for such activities as per the HRP, (2) receive all necessary credentials for such activities as per the HRP, and (3) receive all necessary protective equipment for such activities as per the HRP," and Article 17 indicates that Mr. Brown was not an employee of DRC.  *See* Ex. 20 – Fuentes Decl., *supra* ¶ 45, at Exhibit A.

### *Facts Specific to Plaintiff Scea Burrage*

47. On April 21, 2011 and September 26, 2011, Scea Burrage submitted Direct Filing Short Forms joining in the B3 Master Complaint.  (Case No. 2:10-CV-08888, Rec. Docs. 89515, 108885).

48. On August 18, 2014, Ms. Burrage executed a sworn statement pursuant to PTO 57.  *See* Ex. 21 – Form for Disclosures Clarifying the Basis for B3 Claims Against the Clean-Up Responder Defendants by Scea Burrage (Aug. 18, 2014) (hereinafter "Burrage Questionnaire").

49. In the Burrage Questionnaire, Ms. Burrage alleges that she lived close to coastal waters and did not serve as a clean-up worker during the response.  Ex. 21 – Burrage Questionnaire, *supra* ¶ 48, at 2-5.

50. Ms. Burrage does not reference any Clean-Up Responder Defendant(s), or identify any specific act(s) or omissions(s) of any Clean-Up Responder Defendant(s), in the Burrage Questionnaire.  *See generally* Ex. 21 – Burrage Questionnaire, *supra* ¶ 48.

### *Facts Specific to Plaintiff Roy Causey*

51. On March 28, 2011, Roy Causey submitted a Direct Filing Short Form joining in the B3 Master Complaint.  (Case No. 2:10-CV-08888, Rec. Doc. 34909).

52. On April 22, 2013, Mr. Causey filed an individual action alleging, among other things, dispersant exposure, which was consolidated with this MDL.  *Anderson et al. v. BP Exploration & Production, Inc.*, Case No. 2:13-CV-02342 (E.D. La. complaint filed Apr. 22, 2013).  None of the Clean-Up Responder Defendants are named defendants in this action.  *Id.*

53. On July 30, 2014, Mr. Causey executed a sworn statement pursuant to PTO 57.  *See* Ex. 22 –

     Form for Disclosures Clarifying the Basis for B3 Claims Against the Clean-Up Responder

     Defendants by Roy Causey (July 30, 2014) (hereinafter "Causey Questionnaire").

54. NRC is the only Clean-Up Responder Defendant referenced in the Causey Questionnaire. *See*

     *generally* Ex. 22– Causey Questionnaire, *supra* ¶ 53.

55. Mr. Causey was not employed by NRC.  *See* Ex. 23 – Declaration of Steven Candito in

     Support of the Clean-Up Responder Defendants' Motion for Summary Judgment ("Candito

     Decl.") at ¶ 3.

### *Facts Specific to Plaintiff Jorey Danos*

56. On August 3, 2011, Jorey Danos submitted a Direct Filing Short Form joining in the B3

     Master Complaint.  (Case No. 2:10-CV-08888, Rec. Doc. 107241).  He subsequently filed a

     Dismissal Form as to this claim on April 16, 2013.  (Case No. 2:10-CV-08888, Rec. Doc.

     129913).

57. On April 17, 2013, Mr. Danos filed an individual action alleging, among other things,

     dispersant exposure, which was removed to the U.S. District Court for the Eastern District of

     Louisiana on May 22, 2013 and consolidated with this MDL.  *Danos et al. v. BP America

     Production Company et al.*, Case No. 2:13-CV-03747 (E.D. La. removal filed May 22,

     2013).

58. On September 9, 2014, Mr. Danos executed two sworn statements pursuant to PTO 57,

     which are substantially similar in content.  *See* Ex. 24 – Form for Disclosures Clarifying the

     Basis for B3 Claims Against the Clean-Up Responder Defendants by Jorey Danos (Sept. 9,

     2014) (hereinafter "Danos Questionnaire"); Ex. 25 – Form for Disclosures Clarifying the

Basis for B3 Claims Against the Clean-Up Responder Defendants by Jorey Danos (Sept. 9, 2014) (hereinafter "Second Danos Questionnaire").

59. Mr. Danos does not reference any Clean-Up Responder Defendant(s), or identify any specific act(s) or omissions(s) of any Clean-Up Responder Defendant(s), in the Danos Questionnaire or the Second Danos Questionnaire. *See generally* Ex. 24 – Danos Questionnaire, *supra* ¶ 58; Ex. 25 – Second Danos Questionnaire, *supra* ¶ 58.

### *Facts Specific to Plaintiff Nathan Fitzgerald*

60. On April 8, 2013, William J. Fitzgerald, III and Dianna M. Fitzgerald filed an individual action on Nathan J. Fitzgerald's behalf alleging, among other things, dispersant exposure, which was consolidated with this MDL. *Fitzgerald et al. v. BP Exploration & Production Inc. et al.*, Case No. 2:13-CV-00650 (E.D. La. complaint filed Apr. 8, 2013).

61. On September 18, 2014, William J. Fitzgerald, III executed a sworn statement pursuant to PTO 57 on Nathan Fitzgerald's behalf. *See* Ex. 26 – Form for Disclosures Clarifying the Basis for B3 Claims Against the Clean-Up Responder Defendants by Nathan Fitzgerald (Sept. 18, 2014) (hereinafter "Fitzgerald Questionnaire").

62. DRC is the only Clean-Up Responder Defendant referenced in the Fitzgerald Questionnaire. *See generally* Ex. 26 – Fitzgerald Questionnaire, *supra* ¶ 61.

### *Facts Specific to Plaintiff Thomas Hines*

63. On March 21, 2011 and April 20, 2011, Mr. Hines submitted two Direct Filing Short Forms joining in the B3 Master Complaint. (Case No. 2:10-CV-08888, Rec. Docs. 22261, 84046).

64. On April 22, 2013, Mr. Hines filed an individual action alleging, among other things, dispersant exposure, which was consolidated with this MDL. *Gentry et al. v. BP Exploration*

14

*& Production, Inc.*, Case No. 2:13-CV-02360   (E.D. La. complaint filed Apr. 22, 2013).

None of the Clean-Up Responder Defendants are named in this action.  *Id.*

65. On July 29, 2014, Mr. Hines executed a sworn statement pursuant to PTO 57.  *See* Ex. 27 –

Form for Disclosures Clarifying the Basis for B3 Claims Against the Clean-Up Responder

Defendants by Thomas Hines (July 29, 2014) (hereinafter "Hines Questionnaire").

66. Mr. Hines does not reference any Clean-Up Responder Defendant(s), or identify any specific

act(s) or omissions(s) of any Clean-Up Responder Defendant(s), in the Hines Questionnaire.

*See generally* Ex. 27 – Hines Questionnaire, *supra* ¶ 65.

### *Facts Specific to Plaintiff Frank Howell*

67. On April 21, 2011, Mr. Howell submitted a Direct Filing Short Form joining in the B3

Master Complaint.  (Case No. 2:10-CV-08888, Rec. Doc. 88100).  He subsequently filed a

Dismissal Form as to this claim on April 16, 2013.  (Case No. 2:10-CV-08888, Rec. Doc.

129915).

68. On April 17, 2013, Mr. Howell filed an individual petition alleging, among other things,

dispersant exposure, which was removed to the U.S. District Court for the Eastern District of

Louisiana on May 22, 2013 and consolidated with this MDL.  *Danos et al. v. BP America*

*Production Company et al.*, Case No. 2:13-CV-03747 (E.D. La. removal filed May 22,

2013).

69. On September 21, 2014, Mr. Howell executed a sworn statement pursuant to PTO 57.  *See*

Ex. 28 – Form for Disclosures Clarifying the Basis for B3 Claims Against the Clean-Up

Responder Defendants by Frank Howell (Sept. 21, 2014) (hereinafter "Howell

Questionnaire").

70. O'Brien's and NRC are the only Clean-Up Responder Defendants referenced in the Howell Questionnaire. *See generally* Ex. 28 – Howell Questionnaire, *supra* ¶ 69.

71. Mr. Howell was not employed by either O'Brien's or NRC.  *See* Ex. 23 – Candito Decl., *supra* ¶ 55, at ¶ 3; Ex. 29 – Declaration of Robert Anderson in Support of the Clean-Up Responder Defendants' Motion for Summary Judgment ("Anderson Decl.") ¶ 3.

### *Facts Specific to Plaintiff Doug Maurras*

72. On August 9, 2012, Doug Maurras filed an individual petition alleging, among other things, dispersant exposure, which was consolidated with this MDL (the "Maurras Action").  *Martin et al. v. BP Exploration & Production Inc.*, Case No. 2:12-CV-02048  (E.D. La. complaint filed Aug. 9, 2012).

73. On September 21, 2014, Mr. Maurras executed a sworn statement pursuant to PTO 57.  *See* Ex. 30 – Form for Disclosures Clarifying the Basis for B3 Claims Against the Clean-Up Responder Defendants by Doug Maurras (Sept. 21, 2014) (hereinafter "Maurras Questionnaire").

74. O'Brien's is the only Clean-Up Responder Defendant referenced in the Maurras Questionnaire. *See generally* Ex. 30 – Maurras Questionnaire, *supra* ¶ 73.

75. Mr. Maurras alleges in the Maurras Questionnaire that his employer was "Boom Technology Inc. under O'Brien's []and Moran Environmental." Ex. 30 – Maurras Questionnaire, *supra* ¶ 73, at 2.

76. Mr. Maurras was not employed by O'Brien's.  *See* Ex. 29 – Anderson Decl., *supra* ¶ 71, at ¶ 3.

77. Mr. Maurras' alleged employer, Boom Technology Inc., did not have a direct contractor relationship with O'Brien's.  *See* Ex. 29 – Anderson Decl., *supra* ¶ 71, at ¶ 4.

78. On June 1, 2010, Moran Environmental Recovery, LLC ("Moran") entered into a Management Services Agreement (the "MSA") with O'Brien's in connection with the *Deepwater Horizon* response effort.  *See* Ex. 29 – Anderson Decl., *supra* ¶ 71, at ¶ 5.  The MSA provided that, except as specifically provided therein, it would be governed by the same terms and conditions of a Contractor Services Agreement entered into with Marine Spill Response Corporation on March 25, 2002 (the "Contractor Agreement").  *Id.*

79. Pursuant to Exhibit D-2 to the Contractor Agreement, Moran agreed to provide its employees and agents with all necessary personal protective equipment.  Ex. 29 – Anderson Decl., *supra* ¶ 71, at ¶ 6.

80. An August 4, 2010 amendment to the MSA added an additional paragraph regarding compliance with employment and labor law, stating that Moran would comply with and be solely responsible for all "applicable provisions of all U.S. Federal, state, and local laws, rules, regulations, ordinances, and other legal requirements of every kind relating to employees, workers, service providers, and/or laborers."  Ex. 29 – Anderson Decl., *supra* ¶ 71, at ¶ 7.

### *Facts Specific to Plaintiff Kirk Prest*

81. On February 24, 2012, April 18, 2013, and September 16, 2014, Kirk Prest submitted Direct Filing Short Forms joining in the B3 Master Complaint.  (Case No. 2:10-CV-08888, Rec. Docs. 111959, 130886, 136935).

82. On August 18, 2014, Mr. Prest executed a sworn statement pursuant to PTO 57.  *See* Ex. 31 – Form for Disclosures Clarifying the Basis for B3 Claims Against the Clean-Up Responder Defendants by Kirk Prest (Aug. 18, 2014) (hereinafter "Prest Questionnaire").

83. In the Prest Questionnaire, Mr. Prest alleges that his injuries are "BP's responsibility and ultimate obligation" and that "BP failed to provide any protective equipment during the clean up activities." Ex. 31 – Prest Questionnaire, *supra* ¶ 82, at 4-5.

84. Mr. Prest does not reference any Clean-Up Responder Defendant(s), or identify any specific act(s) or omissions(s) of any Clean-Up Responder Defendant(s), in the Prest Questionnaire. *See generally* Ex. 31 – Prest Questionnaire, *supra* ¶ 82.

### *Facts Specific to Plaintiff John M. Wunstell, Jr.*

85. On July 20, 2010, Mr. Wunstell filed an individual action alleging, among other things, dispersant exposure, which was removed to the U.S. District Court for the Eastern District of Louisiana on August 6, 2010 and consolidated with this MDL (the "Wunstell Action"). *Wunstell et al. v. BP, PLC et al.*, Case No. 2:10-CV-02543 (E.D. La. removal filed Aug. 6, 2010).

86. On April 16, 2011, Mr. Wunstell submitted a Direct Filing Short Form joining in the B3 Master Complaint.  (Case No. 2:10-CV-08888, Rec. Doc. 57007).

87. On September 17, 2014, Mr. Wunstell  executed a sworn statement pursuant to PTO 57.  *See* Ex. 32 – Form for Disclosures Clarifying the Basis for B3 Claims Against the Clean-Up Responder Defendants by John M. Wunstell, Jr. (Sept. 17, 2014) (hereinafter "Wunstell Questionnaire").

88. O'Brien's is the only Clean-Up Responder Defendant referenced in the Wunstell Questionnaire.  *See generally* Ex. 32 – Wunstell Questionnaire, *supra* ¶ 87.

89. Mr. Wunstell referenced his petition to the Wunstell Action throughout the Wunstell Questionnaire and attached it thereto.  *See generally* Ex. 32 – Wunstell Questionnaire, *supra* ¶ 87.  In this petition, Mr. Wunstell alleges that he "entered into a Master Vessel Charter

18

Agreement under which Defendant BP chartered [his vessel] RAMIE'S WISH pursuant to the [Vessels of Opportunity Program]." *Id.* at 9 (page 3 of petition).

90. Mr. Wunstell was not employed by O'Brien's. *See* Ex. 29 – Anderson Decl., *supra* ¶ 71, at ¶ 3.

Dated: May 9, 2016


Respectfully submitted,

/s/ Michael J. Lyle

Michael J. Lyle (DC #475078, IL #6199227)
Eric C. Lyttle (DC #482856)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street NW, 11th floor
Washington, DC 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100


Sylvia E. Simson (NY #4803342)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100


Patrick E. O'Keefe (LA # 10186)
MONTGOMERY BARNETT, L.L.P.
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3300
Telephone: (504) 585-3200
Facsimile: (504) 585-7688


Attorneys for O'BRIEN'S RESPONSE
MANAGEMENT, L.L.C. and NATIONAL
RESPONSE CORPORATION

/s/ Ben L. Mayeaux

Frank X. Neuner, Jr. (LA #7674)
Ben L. Mayeaux (LA #19041)
Jed M. Mestayer (LA #29345)
NEUNERPATE
One Petroleum Center, Suite 200
1001 W. Pinhook Rd.
Lafayette, LA  70503
Telephone: (337) 237-7000
Facsimile: (337) 233-9450


Attorneys for AIRBORNE SUPPORT, INC. and
AIRBORNE SUPPORT INTERNATIONAL, INC.


/s/ Alan M. Weigel

Alan M. Weigel (NY #3065307)
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: 212-885-5000
Facsimile: 917-332-3836


Attorney for MARINE SPILL
RESPONSE CORPORATION


/s/ Leo R. McAloon, III

Leo R. McAloon, III (LA # 19044)
Michael D. Cangelosi (LA #  30427)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
New Orleans, LA 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011


Attorneys for DYNAMIC AVIATION
GROUP, INC.


/s/ Kevin R. Tully

Kevin R. Tully (LA #1627)
H. Carter Marshall (LA #28136)
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street, Suite 2300
New Orleans, LA 70130-6078
Telephone: (504) 561-5700
Facsimile: (504) 593-4220


Attorneys for INTERNATIONAL
AIR RESPONSE, INC. and
LYNDEN INCORPORATED

/s/ George E. Crow
George E. Crow (TX # 05151900)
LAW OFFICE OF GEORGE E. CROW
P.O. Box 30
Katy, TX 77492
For Overnight Physical Delivery use
1519 Miller Avenue
Katy, TX 77493
Telephone: (281) 391-9275

Attorney for LANE AVIATION, INC.


/s/ Harold J. Flanagan
Harold J. Flanagan (LA # 24091)
Brandon C. Briscoe (LA # 29542)
Sean P. Brady (LA # 30410)
Andy Dupre (LA # 32437)
FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 2405
New Orleans, LA 70170
Telephone: 504-569-0235
Facsimile: 504-592-0251

Attorneys for DRC EMERGENCY SERVICES, LLC

/s/ John E. Galloway
John E. Galloway (LA #5892)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, Suite 4040
New Orleans, LA 70139
Telephone: (504) 525-6802
Facsimile: (504) 525-2456

Attorney for TIGER RENTALS,
LTD., THE MODERN GROUP,
LTD., and THE MODERN GROUP
GP-SUB, INC.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Clean-Up Responder Defendants' Joint Statement of Undisputed Material Facts in Support of their Omnibus Motion for Summary Judgment has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of May, 2016.

/s/ Michael J. Lyle
Michael J. Lyle