UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KEY WEST FRESH FROZEN LLC,            CAUSE NO.: 2:13-cv-01630
13605 GULF BLVD LLC,
6840 FRONT STREET LLC,
592 N.E. 185th STREET LLC,
FISHBUSTERZ FREIGHT COMPANY LLC,
FISHBUSTERZ MADEIRA BEACH BOAT YARD LLC ,
CHARLIE RENIER, and
ERIC DICKSTEIN,

    *Plaintiffs*

vs.

BP EXPLORATION & PRODUCTION, INC.,
BP AMERICA PRODUCTION COMPANY, and
BP P.L.C.

    *Defendants*

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. On or about April 20, 2010, the *Deepwater Horizon* drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252 (the "Spill"), and resulting in the worst maritime environmental disaster in United States history.

2. Plaintiffs in this action are related businesses in an integrated seafood processing enterprise in Florida and the two co-owners and managers of those businesses. Before the Spill, the entities functioned by moving fresh Gulf seafood from dock to wholesaler to plant and to customers. The Spill destroyed the seafood supply and devastated Plaintiffs' businesses. Each Plaintiff suffered injury, damage, and/or economic losses as a result of the Spill.

3. Plaintiffs are properly joined in this Complaint pursuant to Fed. R. Civ. P. 20(a)(1)(B).[1]

4. Plaintiffs brought this civil action as a related action in the matter entitled IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010, MDL No. 2179.

5. Plaintiffs bring this case against the following defendants:

   a) BP Exploration & Production, Inc., a Delaware corporation with its principal place of business in Warrenville, Illinois.  This court has personal jurisdiction over BP Exploration because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana;

   b) BP America Production Company, a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana;

   c) BP p.l.c., a British public limited company with its corporate headquarters in London, England.  This court has general jurisdiction over BP p.l.c pursuant to Louisiana's long arm general jurisdiction provision, in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.

In this Complaint, the term "BP" refers collectively to Defendants BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c.

6. Subject-matter jurisdiction in this Court is appropriate pursuant to 28 U.S.C. §§ 1327, 1331, 1333;  33 U.S.C. §§ 1321, 2702, 2717, 43 U.S.C. §§ 1332, 1333, and 1349(b).

7. Venue in this district is permitted by 33 U.S.C. § 2717 and 43 U.S.C. § 1349.

8. Plaintiffs are residents/citizens of Florida and claim damages as set forth below.

---

[1] If the Court intended, through Pretrial Order No. 60 to require each individual plaintiff to file a lawsuit despite the permissive joinder rule, Plaintiffs will amend accordingly.  According to Rule 21, misjoinder is not grounds for dismissal.

9. Upon current information and belief, Plaintiffs sustained injuries and damages from the BP Oil Spill as a result of the following factual circumstances:

10. Plaintiff Key West Fresh Frozen LLC ("Key West Fresh") was a seafood processing company operating out of a 70,000 square foot plant in St. Petersburg, Florida. It processed millions of pounds of seafood per year supplied by company-owned wholesalers, Fishbusterz LLC, Fishbusterz Miami LLC, and Fishbusterz Madeira Beach LLC (all referred to as "Fishbusterz").[2]

11. Plaintiff 13605 Gulf Blvd LLC owned real property where wholesaler Fishbusterz operated in Madeira Beach, Florida.

12. Plaintiff 6840 Front Street LLC owned real property where wholesaler Fishbusterz operated in Key West, Florida.

13. Plaintiff 592 N.E. 185th Street LLC owned real property where wholesaler Fishbusterz operated in Miami, Florida.

14. Plaintiff Fishbusterz Freight Company LLC ("Freight") was a trucking company that was set up to transport seafood between the Fishbusterz wholesalers and the Key West Fresh plant.

15. Plaintiff Fishbusterz Madeira Beach Boat Yard LLC ("Boat Yard") is a marine repair and maintenance company in Madeira Beach, Florida.

16. Plaintiff Charlie Renier, a veteran commercial fisherman, co-founded all the entities and developed the business model.

17. Plaintiff Eric Dickstein, a highly-qualified corporate management consultant, partnered with Charlie Renier in establishing the entities and coordinated business model.

---

[2] None of these entities is a party to this action. Fishbusterz LLC accepted a final payment from GCCF; Fishbusterz Madeira Beach LLC filed a claim with the Court Supervised Settlement Program. Fishbusterz Miami LLC closed before the Spill.

18. Renier and Dickstein operated these entities as a unique vertically-integrated business that would allow related entities to occupy every level of the seafood supply chain. The Fishbusterz wholesalers bought fish directly from commercial fishing boats. The Freight company delivered that fish to the Key West Fresh plant. The plant produced shrimp, fish, and lobster for sale to restaurants, grocery stores, and markets. Processing waste was made into bait and sold to fishermen.

19. Before the Spill, the Key West Fresh plant employed 150 workers who processed millions of pounds of Gulf shrimp, bait, mullet, lobster, kingfish, and mackerel using state-of-the-art processing technology including a nitrogen freezing tunnel for individually quick-frozen (IQF) Gulf shrimp and a cooking line for value-added products such as breaded catfish fillets. The plant's major customers included Margaritaville, Whole Foods, Harris Teeter, Publix, and Winn Dixie.

20. In January, 2009, Key West Fresh began to develop a relationship with the United States military. After subcontracting to fill a $10,000,000 military order, the Department of Defense suggested that Key West Fresh become a primary vendor and sell directly to the military. Key West Fresh undertook the grueling 18 month process to be approved by the Defense Logistics Agency ("DLA") to provide seafood products to the United States Army. The company invested in capital improvements required to pass the DLA inspections and obtained the required insurance. The DLA approved Key West Fresh as a supplier for the Army Food Program.

21. The Spill occurred during shrimp and grouper season. When the fishing grounds closed, fishermen could not go out to fish, they did not buy bait from Key West Fresh, and they

did not return with product for the wholesalers to purchase and ship to Key West Fresh to process. The businesses could not generate revenue.

22. On June 20, 2010, Key West Fresh transferred its right to military contracts to a competitor in an attempt to keep the facility operating. It subleased a portion of its plant facility to save overhead expenses and continue to make lease payments until lobster season opened in August.

23. Four days later, on June 24, 2010, Agility Defense & Government Services sent its first military purchase order to Key West Fresh. Because it had transferred its military contract rights, however, Key West Fresh could not fill this purchase order.

24. Key West Fresh lost sales because it could not fill customer or military purchase orders. Key West Fresh also applied for GCCF funds to keep the business in operation until fishing resumed. It submitted a claim to GCCF for emergency payment but heard no response from GCCF for several months. By the time that Key West Fresh owners Charlie Renier and Eric Dickstein met with Ken Feinberg in January 2012, it was too late for an emergency payment to save the business. The plant closed. Key West Fresh suffered devastating loss of revenue and property including tangible and intangible business assets.

25. The Fishbusterz wholesalers could not purchase fish from fishermen or sell seafood to the Key West Fresh plant. Fishbusterz suffered dramatic loss of revenue.

26. 13605 Gulf Blvd LLC owned real property where Fishbusterz Madeira Beach LLC operated. Without income from the related businesses, this entity could not meet its obligations to its mortgage lender. The property was foreclosed.

27.     6840 Front Street LLC owned real property where Fishbusterz LLC operated. Without income from the related businesses, this entity could not meet its obligations to its mortgage lender. The property was foreclosed.

28.     592 N.E. 185th Street LLC owned real property where Fishbusterz Miami LLC operated in Miami. After the Spill, the business could not secure a tenant for the seafood processing property. The property is in foreclosure proceedings.

29.     Freight's trucks sat idle with no seafood to transport to or from fishing boats, seafood wholesalers, or to the Key West Fresh plant. Without those orders, and payments from the seafood entities, Freight had no revenue.

30.     The Boat Yard lost customers as fishing ground closures prevented commercial fishermen from using their boats (or performing maintenance services). Visible surface oil prevented recreational boating as well. The Boat Yard's revenue sharply declined. In addition, the adjacent property where Fishbusterz previously operated was lost in foreclosure. These businesses were forced to consolidate operations on the Boat Yard's property, resulting in less dockage for the fish house and less upland for boat maintenance and repair.

31.     Charlie Renier lost income from the operation of the Fishbusterz and Key West Fresh businesses. He also lost the value of his investments in the various entities and their business assets and properties.

32.     Eric Dickstein lost income from the operation of each of the entities. He also lost the value of his investments in the various entities and their business assets and properties. Additionally, because he lost income from the businesses, he was forced to sell his residential property in a short sale and lost the cash down payment and equity in that property.

## CAUSE OF ACTION
### (Oil Pollution Act, 33 U.S.C. 2702, *et. seq.*)

33. All factual allegations set out above are incorporated into this count as if fully stated here.

34. Defendants are jointly or severally responsible party for the discharge of oil from the Deepwater Horizon drilling rig into or upon the navigable waters and adjoining shorelines.

35. As a result of that discharge, Plaintiffs suffered covered damages as set out in 33 U.S.C.§ 2702(b)(2)(D)-(E).

36. Specifically, Plaintiffs suffered lost revenues, lost profits, and lost earning capacity as a result of the Spill's impact on natural resources, closure of fishing grounds, and presence of oil in the waters and on the beaches of the Gulf, all of which prevented Plaintiffs from operating their business.

37. As described above, the Spill caused Plaintiffs to suffer individual and joint losses of revenue, profits, and earning capacity. When the Fishbusterz wholesalers could not supply fish, Freight lost income it would have derived from transporting that fish to Key West Fresh Frozen LLC's processing plant. In turn, the Key West Fresh Frozen plant had no fish to process and sell to military and retail customers. And because fishing grounds were closed, the Boat Yard could not sell supplies or services to fishing boats.

38. Before filing suit, Plaintiffs presented their claims for damages to Defendants in accordance with 33 U.S.C. § 2713.

39. Plaintiffs met the section 2713 presentment requirements by submitting a written claim to BP, the responsible party, for a sum certain for compensation for damages from the incident via certified mail on January 12, 2013. More than ninety days have elapsed since that date, and none of Plaintiffs' claims have been settled by payment. Plaintiff Eric Dickstein

received a letter denying his claim on April 15, 2013. Plaintiffs have thus satisfied the mandatory condition precedent to file this civil action under OPA.

40. As a result of the Defendants' negligence, strict liability, gross negligence, willful and wanton conduct, and violations of applicable safety, construction or operating regulations/statutes, Plaintiffs have sustained and will continue to sustain damages indefinitely into the future. These damages include, but are not limited to, the following:

- a) compensatory damages for loss of revenue, profit, income, investments, assets, real property, personal property, and any other economic loss;

- b) punitive and/or exemplary damages;

- c) pre-judgment and post-judgment interest at the maximum rate allowable by law;

- d) attorneys' fees, claims preparation expenses, and costs of litigation;

- e) declaratory and injunctive relief; and

- f) such other and further relief and damages available under all applicable state and federal laws, as well as any and all relief that the Court deems just and appropriate.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly, severally and solidarily, for the injuries and damages as set forth above, any and all other and further relief and damages available under all applicable state and federal laws, and any general and equitable relief that the Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Respectfully submitted,

*/s/ Scott Summy*
**BARON & BUDD, P.C.**
SCOTT SUMMY
ssummy@baronbudd.com
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas  75219
Telephone:  (214) 521-3605
Facsimile:  (214) 520-1181

**COSSICH, SUMICH, PARSIOLA & TAYLOR, LLC**
PHILIP F. COSSICH, JR., #1788 (T.A.)
pcossich@cossichlaw.com
DAVID A. PARSIOLA, #21005
dparsiola@cossichlaw.com
BRANDON J. TAYLOR, #27662
btaylor@cossichlaw.com
8397  Highway 23, Suite 100
Post Office Box 400
Belle Chasse, Louisiana  70037
Telephone:  (504) 394-9000
Facsimile:  (504) 394-9110

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to File and Serve Xpress in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of April, 2016.

*/s/ Scott Summy*
Scott Summy

9