UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEAN BLANCHARD SEAFOOD, INC.;** <br> **DEAN BLANCHARD; and** <br> **JODIE BLANCHARD** <br> **(Plaintiffs)** | **CAUSE NO.:   2:13-CV-01978** |
| **VERSUS** | |
| **BP EXPLORATION & PRODUCTION, INC.,** <br> **BP AMERICA PRODUCTION COMPANY, and** <br> **BP P.L.C.** <br> **(Defendants)** | |

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1.

On or about April 20, 2010, the *Deepwater Horizon* drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252 (the "Spill"), and resulting in the worst maritime environmental disaster in United States history.

2.

Plaintiffs, DEAN BLANCHARD SEAFOOD, INC., DEAN BLANCHARD, and JODIE BLANCHARD, have suffered economic injury, damage and/or losses as a result of the oil spill. The Spill destroyed the Gulf waters, the seafood supply and devastated Plaintiffs' business. Each Plaintiff suffered injury, damage, and/or economic losses as a result of the Spill.

3.

Plaintiffs are properly joined in this Complaint pursuant to Fed. R. Civ. P. 20(a)(1)(B).[1]

---

[1] According to Rule 21, misjoinder is not grounds for dismissal.  If the Court intended, through Pretrial Order No. 60 to require each individual plaintiff to file a lawsuit despite the joinder rule, Plaintiffs will amend accordingly.

4.

Plaintiffs brought this civil action as a related action in the matter entitled IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010, MDL No. 2179.

5.

Plaintiffs bring this case against the following defendants:

a) BP Exploration & Production, Inc., a Delaware corporation with its principal place of business in Warrenville, Illinois. This court has personal jurisdiction over BP Exploration because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana;

b) BP America Production Company, a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana;

c) BP p.l.c., a British public limited company with its corporate headquarters in London, England. This court has general jurisdiction over BP p.l.c. pursuant to Louisiana's long arm general jurisdiction provision, in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.

In this Complaint, the term "BP" refers collectively to Defendants BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c.

6.

Subject-matter jurisdiction in this Court is appropriate pursuant to, inter alia, 28 U.S.C. §§ 1327, 1331, 1333; 33 U.S.C. §§ 1321, 2702, 2717, 43 U.S.C. §§ 1332, 1333, and 1349(b).

7.

Venue in this district is permitted by 33 U.S.C. § 2717 and 43 U.S.C. § 1349.

8.

Plaintiff, DEAN BLANCHARD SEAFOOD, INC., is a business with its headquarters located in Grand Isle, Jefferson Parish, Louisiana, and claims damages as set forth below.

9.

Plaintiff, DEAN BLANCHARD, is a resident/citizen of Grand Isle, Jefferson Parish, Louisiana, and claims damages as set forth below.

10.

Plaintiff, JODIE BLANCHARD, is a resident/citizen of Grand Isle, Jefferson Parish, Louisiana, and claims damages as set forth below.

11.

Upon current information and belief, Plaintiffs sustained injuries and damages from the BP Oil Spill as a result of the following factual circumstances:

PLAINTIFFS' BACKGROUND

9.

Plaintiff Dean Blanchard ("Dean") entered the shrimping business in 1973, initially working for his grandfather and his partner, Wayne Estay. In 1982, Dean's grandfather gave Dean a choice: take over his interest in his partnership with Estay or start his own shrimping business. Dean chose the latter and started Plaintiff Dean Blanchard Seafood, Inc. ("Blanchard Seafood"), serving as its President and CEO from that time to the present day. Meanwhile, Estay purchased the grandfather's interest, which set the stage for a fierce competition for shrimp and contracts between Blanchard Seafood and Estay. In its first year of business, Dean and Blanchard Seafood worked tirelessly to attract shrimp to their dock and earn a profit margin of $0.20 per pound of shrimp. In 1986, Blanchard Seafood moved to its current location where it purchased shrimp and fish and began selling ice and diesel. To attract the fishermen to its dock,

Blanchard Seafood offered competitive prices for seafood and offered ice and diesel on credit in return for the fishermen's catches. This practice continues through today.

10.

In 2000, the Gulf of Mexico shrimping industry (from fishermen to docks to processors to wholesalers and retailers) had an extraordinary year, and it is common knowledge within the industry (and the numbers substantiate it) that such a bumper crop year occurs every ten years.

11.

By around 2004, Blanchard Seafood's only competition on Grand Isle (America's unofficial shrimp capital) was Estay, and by that time, Blanchard Seafood's profits were double those of Estay's. On December 31, 2008, after 26 years of competing with Blanchard Seafood, Estay finally threw in the towel and closed his business, thus making Dean Blanchard the shrimp king of America's shrimp capital, Grand Isle.

12.

Although it was Blanchard's first year as shrimp king, the year 2009 proved to be a building and rebuilding year for Blanchard Seafood. First, Blanchard Seafood was still recovering from the devastation left behind by Hurricanes Gustav and Ike, which together caused hundreds of thousands of dollars in damages. Second, after years of development and thousands in development and testing costs, Blanchard Seafood finally mastered and instituted a proprietary system by which it could preserve the fish and shrimp it purchased and begin building an inventory. Third, Blanchard Seafood stepped up its efforts to market the shrimp it was buying and processing, ultimately earning spots on two Winn Dixie grocery store chain commercials and earning contracts with other retailers and wholesalers of seafood.

13.

Therefore, Blanchard Seafood entered 2010 with (1) the expectation that the fishermen would catch a bonanza of shrimp and fish (being ten years since the 2000 bumper crop year); (2) its facilities back in shape and much improved; (3) an inventory of shrimp and fish from 2009 because of its revolutionary seafood preservation system; and (4) lucrative contracts and purchase orders for shrimp and fish from retailers and wholesalers.

## THE BP OIL SPILL HITS PLAINTIFFS' BUSINESS

14.

Then, the April 20, 2010 BP Oil Spill occurred on the eve of the 2010 shrimping season and turned the Gulf of Mexico shrimping industry upside down. Arguably, no one was, and has been, more injured monetarily and psychologically from the Oil Spill than Blanchard Seafood and its principal officers, Dean and Jodie Blanchard.

15.

The BP Oil Spill started a tragic chain of events that have both adversely affected Plaintiffs' profits and impaired their earning capacity, and the devastating dominoes have not stopped falling. First, the oil spill contaminated the waters from which is harvested the seafood Plaintiffs buy, process, and resell. As a result, such seafood either became sick or unhealthy, died, or migrated away from the contamination. Also, in the areas in and around the BP Oil Spill, the Gulf waters have been closed to fishing, smothered with equally dangerous and toxic dispersants, and/or trashed by months of cleanup activity. Then, because the seafood is gone or undesirable and/or because the Gulf waters around Plaintiffs' facilities are contaminated or

closed, the fishermen from whom Plaintiffs buy seafood either followed the seafood to other areas of the Gulf (too far away from Plaintiffs to make it economical to deliver their catches to Plaintiffs) or did not fish at the same levels to which they were accustomed. So, because there was a shortage of seafood available, prices rose (which further shrank Plaintiffs' already slim profit margins) and purchase orders and contracts went unfilled.

16.

In addition, Plaintiffs have been confronted with a negative public stigma attached to their seafood from the Gulf, which has diminished the number of purchase orders and contracts for Plaintiffs' seafood. Despite a shortage in seafood and a reduced number of purchase orders and contracts for Plaintiffs' seafood, they have continued to incur the same amount of expenses in labor and overhead. Also, Plaintiffs have had to incur additional expenses to adapt or alter what they did and do, such as changes in the types of seafood types they purchase and process, or changes in the provisions or amenities they offer others in the processing stages (e.g., packaging, freezing, storage). Furthermore, Plaintiffs have discontinued use of four ice machines and storage units (totaling $1,200,000.00) because of the lack of shrimp coming into their facilities. Finally, Plaintiffs have hundreds of thousands of dollars in accounts receivable for fishermen who have taken ice and fuel on credit before the 2010, 2011, and 2012 shrimping seasons, but who have either quit fishing or had to chase the shrimp farther to the east or west of Grand Isle, because of the absence of shrimp in the Barataria Bay / Grand Isle region due to oil and dispersants, and have not returned to us to offload because of the fuel and time it would take to return to Plaintiffs. Needless to say, Plaintiffs have been devastatingly damaged as a direct result of the BP Oil Spill.

## THE BP OIL SPILL ALSO DAMAGES PLAINTIFFS' REAL PROPERTY

17.

Plaintiffs are also the owners of real property on and around their place of business and throughout Grand Isle and the surrounding area. Some, if not all, of Plaintiffs' real property was damaged physically and/or economically as a result of the BP Oil Spill. With this Complaint, Plaintiffs also seek to recover these real property damages from the defendants.

## CAUSE OF ACTION

### (Oil Pollution Act, 33 U.S.C. 2702, *et. seq.*)

18.

Defendants are jointly or severally responsible party for the discharge of oil from the Deepwater Horizon drilling rig into or upon the navigable waters and adjoining shorelines.

19.

As a result of that discharge, Plaintiffs suffered covered damages as set out in 33 U.S.C.§ 2702(b)(2)(D)-(E).

20.

Specifically, Plaintiffs suffered lost revenues, lost profits, and/or lost earning capacity as a result of the Spill's impact on natural resources, closure of fishing grounds, and presence of oil in the waters and on the beaches of the Gulf..

21.

Before filing suit, Plaintiffs presented its claim for damages to Defendants in accordance with 33 U.S.C. § 2713.

22.

Plaintiffs met the presentment requirements by submitting a written claim to BP, the responsible party, for a sum certain for compensation for damages from the incident via certified mail on January 19, 2013. More than ninety days have elapsed since that date, and none of Plaintiffs' claims have been settled by payment.

23.

Plaintiff DEAN BLANCHARD received a letter from the BP Claims Program referring his case to the settlement program on April 6, 2013.

24.

Plaintiff JODIE BLANCHARD received an offer letter from the BP Claims Program for her individual economic loss claim on April 16, 2013 in the amount of $19,771.16. The BP Claims Program sent a follow up letter about the offer on May 8, 2014. Plaintiff JODIE BLANCHARD rejected this offer via certified mail on May 14, 2014 because the offer was grossly insufficient. Another copy of the rejection letter was sent to the BP Claims Program on June 13, 2014. Plaintiff JODIE BLANCHARD also received a letter denying her Property Damage claim on May 2, 2014.

25.

Plaintiff DEAN BLANCHARD SEAFOOD, INC. received a letter denying its claim on June 7, 2013.

26.

Plaintiffs have thus satisfied the mandatory condition precedent to file this civil action under OPA.

27.

As a result of the Defendants' negligence, strict liability, gross negligence, willful and wanton conduct, and violations of applicable safety, construction or operating regulations/statutes, Plaintiffs have sustained and will continue to sustain damages indefinitely into the future. These damages include, but are not limited to, the following:

a) compensatory damages for loss of revenue, profit, income, investments, assets, real property, personal property and any other economic loss;

b) punitive and/or exemplary damages;

c) pre-judgment and post-judgment interest at the maximum rate allowable by law;

d) attorneys' fees, claims preparation expenses, and costs of litigation;

e) declaratory and injunctive relief; and

f) such other and further relief and damages available under all applicable state and federal laws, as well as any and all relief that the Court deems just and appropriate.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly, severally and solidarily, for the injuries and damages as set forth above, any and all other and further relief and damages available under all applicable state and federal laws, and any general and equitable relief that the Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Respectfully submitted,

**BARON & BUDD, P.C.**

BY: /s/ Scott Summy
SCOTT SUMMY (Texas Bar No. 19507500)
ssummy@baronbudd.com
MITCHELL MCCREA (Texas Bar No. 24041435)
mmccrea@baronbudd.com
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
PHILIP F. COSSICH, JR., #1788 (T.A.)
pcossich@cossichlaw.com
DAVID A. PARSIOLA, #21005
dparsiola@cossichlaw.com
BRANDON J. TAYLOR, #27662
btaylor@cossichlaw.com
8397 Highway 23, Suite 100
Post Office Box 400
Belle Chasse, Louisiana 70037
Telephone: (504) 394-9000
Facsimile: (504) 394-9110

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to File and Serve Xpress in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of May, 2016.