UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SEASCAPE RESORTS, INC.,**          CAUSE NO.: 2:13-cv-01968
**SEASCAPE TOWN CENTER 08, LLC,**
**SRI HOLDING, LLC and**
**M&C ENTERPRISES, LLC,**
**(Plaintiffs)**

**vs.**

**BP EXPLORATION & PRODUCTION, INC.,**
**BP AMERICA PRODUCTION COMPANY, and**
**BP P.L.C.**
**(Defendants)**

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. On or about April 20, 2010, the *Deepwater Horizon* drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252 (the "Spill"), and resulting in the worst maritime environmental disaster in United States history.

2. Plaintiffs, SEASCAPE RESORTS, INC., SEASCAPE TOWN CENTER 08, LLC, SRI HOLDING, LLC and M&C ENTERPRISES, LLC (collectively "SEASCAPE") are related businesses that are a vertically integrated real estate developer and owner of one of the largest resorts in Destin, Florida. Through various entities, Plaintiff provides full resort services, including, vacation condo rentals, resort services including golf, restaurants, and activities. Before the Oil Spill, Plaintiff also had planned a town center on its property to offer retail, restaurants, and other services to its resort customers.  As a result of the Oil Spill and its impact on tourism, development was halted. As a result of the Oil Spill, SEASCAPE has suffered damages, including but not limited to, loss of income and profits, loss of development, losses for

expenses incurred for development derailed by the Oil Spill, loss of property value, nuisance, and property damage.

3.  Plaintiffs are properly joined in this Complaint pursuant to Fed. R. Civ. P. 20(a)(1)(B).[1]

4.  Plaintiffs brought this civil action as a related action in the matter entitled IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010, MDL No. 2179.

5.  Plaintiffs bring this case against the following defendants:

    a)  BP Exploration & Production, Inc., a Delaware corporation with its principal place of business in Warrenville, Illinois.  This court has personal jurisdiction over BP Exploration because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana;

    b)  BP America Production Company, a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana;

    c)  BP p.l.c., a British public limited company with its corporate headquarters in London, England.  This court has general jurisdiction over BP p.l.c pursuant to Louisiana's long arm general jurisdiction provision, in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.

In this Complaint, the term "BP" refers collectively to Defendants BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c.

6.  Subject-matter jurisdiction in this Court is appropriate pursuant to, inter alia, 28 U.S.C. §§ 1327, 1331, 1333;  33 U.S.C. §§ 1321, 2702, 2717, 43 U.S.C. §§ 1332, 1333, and 1349(b).

---

[1] According to Rule 21, misjoinder is not grounds for dismissal.  If the Court intended, through Pretrial Order No. 60 to require each individual plaintiff to file a lawsuit despite the joinder rule, Plaintiffs will amend accordingly.

7.  Venue in this district is permitted by 33 U.S.C. § 2717 and 43 U.S.C. § 1349. Plaintiffs are residents/citizens of Florida and claim damages as set forth below.

8.  Upon current information and belief, Plaintiffs sustained injuries and damages from the BP Oil Spill as a result of the following factual circumstances:

9.  Plaintiffs developed, own, and manage Seascape Resorts, a master-planned vacation community located directly on the beach in Destin, Florida. Seascape Resorts consists of high-rise condos with Gulf water views and direct beach access. SEASCAPE owns condo units managed by Plaintiffs as part of Seascape's Resort. Plaintiffs offer full amenities, including golf, a restaurant, beach access, full service gym and amenities. Seascape's income draws from tourists and out of town visitors. Seascape earns revenue from condo rental management, resort fees, management fees, amenities, housekeeping, maintenance, food & beverage, golf, and beach access. In addition, Plaintiffs offer brokerage services to buyers and sellers of condos. An integral component of Plaintiffs' success is ownership of 2000 linear feet of privately owned beach.

10. In addition to its resort operation (described above), Plaintiffs had development plans in place before the Oil Spill. Plaintiffs hold unique development rights called Development of Regional Impact ("DRI") which grants the right to develop an additional 850 multi-family units and 200,000 square feet of commercial space.

11. Before the Oil Spill, Plaintiffs commissioned a master-plan to develop Seascape Town Center and develop the remaining multi-family units. Seascape Town Center was planned as a 45,000 square foot mixed-use facility composed of retail and restaurant space. The Plaintiffs began development and incurred development related expenses including architect fees, civil engineering fees, infrastructure fees, state/county and government fees in excess of $1 million

dollars. Plaintiffs had commissioned architectural designs for a high rise building to accommodate the development of multi-family units. Golf re-design plans were also commissioned and Plaintiffs hired a brokerage firm that had interviewed several prospective retail and restaurant clients.

12. In June 2010, Oil washed onto Plaintiffs' beaches and development came to a grinding halt. Due to the Oil Spill, Plaintiffs were forced to place development on hold.

13. As a result of the Oil Spill, unprecedented amounts of raw crude oil, emulsified and weathered oil, natural gas, chemical dispersants, and other toxic pollutants have contaminated the Gulf of Mexico and the Gulf Coastal areas – a total petroleum discharge of 6.9 million barrels, not including the millions of gallons of chemical dispersants and other toxic pollutants that were also released as a result of the Spill. The chemical dispersants used by BP during the Spill response may be harmful to the health of humans and marine life. Over two million gallons of chemical dispersants were released into Gulf waters to disperse the oil coming from the damaged well. The environmental effects of using chemical dispersants in such magnitude and at such depths have never been tested.

14. The Oil Spill and the Spill response have also caused damage to real property owned by Plaintiffs in the Gulf Coastal Zone, resulting in physical damage and loss of property values. The Spill response resulted in intrusion onto and damage to Plaintiffs' property, including the annoyance, disruption and physical damage caused by vehicles, heavy machinery, boom, staging areas, and other materials and activities on or near Plaintiffs' properties.

15. Because of the size and nature of the surface oil slick, the subsurface oil plumes, and weathered oil on shorelines, and the toxic effects of the oil and other substances released during the Spill on humans and the Gulf Coastal Zone environment, there have been and will

continue to be further economic losses and diminution of property values to the Plaintiffs who own and/or rent properties in the Gulf Coastal Zone. Because investigations are ongoing, there are many other potential effects from the Spill that have not yet become known, and Plaintiffs reserve the right to amend this Complaint, after additional information becomes available.

16. Due the Oil Spill, tourists sought out other resorts and beaches that were uncontaminated with oil and many may never return or visit. As a result of the Oil Spill and its impact on tourism, development was delayed. Plaintiffs' eventually moved forward on developing the town center project in 2015. Given Plaintiffs' development rights are set to expire in 2027, Plaintiffs may be unable to fully execute its master plan and will continue to suffer damage.

17. As a result of the Oil Spill, Plaintiffs have suffered damages, including but not limited to, loss of income and profits, loss of development, losses for expenses incurred for development derailed by the Oil Spill, loss of property value, nuisance, and property damage.

## CAUSE OF ACTION
### (Oil Pollution Act, 33 U.S.C. 2702, *et. seq*.)

18. Defendants are jointly or severally responsible party for the discharge of oil from the Deepwater Horizon drilling rig into or upon the navigable waters and adjoining shorelines.

19. As a result of that discharge, Plaintiffs suffered covered damages as set out in 33 U.S.C.§ 2702(b)(2)(D)-(E).

20. Specifically, Plaintiffs suffered lost revenues, lost profits, and lost earning capacity as a result of the Spill's impact on natural resources, closure of fishing grounds, and presence of oil in the waters and on the beaches of the Gulf, all of which prevented Plaintiffs from operating their business.

21. Before filing suit, Plaintiffs presented their claims for damages to Defendants in accordance with 33 U.S.C. § 2713.

22. Plaintiffs met the presentment requirements by submitting a written claim to BP, the responsible party, for a sum certain for compensation for damages from the incident via certified mail on January 18, 2013. More than ninety days have elapsed since that date, and none of Plaintiffs' claims have been settled by payment. Plaintiffs have thus satisfied the mandatory condition precedent to file this civil action under OPA.

23. As a result of the Defendants' negligence, strict liability, gross negligence, willful and wanton conduct, and violations of applicable safety, construction or operating regulations/statutes, Plaintiffs have sustained and will continue to sustain damages indefinitely into the future. These damages include, but are not limited to, the following:

   a) compensatory damages for loss of revenue, profit, income, investments, assets, real property, personal property, and any other economic loss;

   b) punitive and/or exemplary damages;

   c) pre-judgment and post-judgment interest at the maximum rate allowable by law;

   d) attorneys' fees, claims preparation expenses, and costs of litigation;

   e) declaratory and injunctive relief; and

   f) such other and further relief and damages available under all applicable state and federal laws, as well as any and all relief that the Court deems just and appropriate.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly, severally and solidarily, for the injuries and damages as set forth above, any and all other and further relief and damages available under all applicable state and federal laws, and any general and equitable relief that the Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Respectfully submitted,

_____
SCOTT SUMMY (Texas Bar No. 19507500)
ssummy@baronbudd.com
CARY McDOUGAL (Texas Bar No. 13569600)
cmcdougal@baronbudd.com
IRMA ESPINO (Georgia Bar No. 558220)
iespino@baronbudd.com
**BARON & BUDD, P.C.**
3102 Oak Lawn Ave., Suite 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181


**COSSICH, SUMICH, PARISOLA & TAYLOR, LLC**
PHILIP F. COSSICH, JR. #1788 (T.A.)
pcossich@cossichlaw.com
DAVID A. PARSIOLA, #21005
dparsiola@cossichlaw.com
BRANDON J. TAYLOR, #27662
Btaylor@cossichlaw.com
8397 Highway 23, Suite 100
Post Office Box 400
Belle Chasse, Louisiana 70037
Telephone# (504) 394-9000
Facsimile: (504) 394-9110

**LAW OFFICE OF THOMAS P. WILLINGHAM, P.C.**
THOMAS WILINGHAM
tom@tpwpc.com
3800 Colonnade Parkway, Suite 330
Birmingham, AL 35243
Telephone: (205) 578-7679

>  **YES LAW GROUP, LLC**
>  YEHUDA SMOLAR
>  [ysmolar@yeslawgroup.com](mailto:ysmolar@yeslawgroup.com)
>  500 Bishop Street, Suite A-6
>  Atlanta, GA 30318
>  Telephone:  (404) 525-3900

### **WAIVER OF SERVICE**

Plaintiffs will request that defendants waive service pursuant to Federal Rule of Civil Procedure 4(d).