## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **A.B. Dock Services, Inc.** | * | |
| | * | |
| *Plaintiff* | * | **CIVIL ACTION No: 2:13-cv-01650** |
| | * | |
| **VERSUS** | * | |
| | * | |
| **BP Exploration & Production, Inc.;** | * | **SECTION: J** |
| **BP America Production Company; BP** | * | |
| **p.l.c.; Transocean Ltd.; Transocean** | * | |
| **Offshore Deepwater Drilling, Inc.;** | * | |
| **Transocean Deepwater, Inc.;** | * | **JUDGE BARBIER** |
| **Transocean Holdings, LLC; Triton** | * | |
| **Asset Leasing GmbH; Halliburton** | * | |
| **Energy Services, Inc.; and Sperry** | * | |
| **Drilling Services, a division of** | * | **MAG. JUDGE SHUSHAN** |
| **Halliburton Energy Services, Inc.** | * | |
| | * | |
| *Defendants* | * | |

## FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY DEMAND

NOW COMES PLAINTIFF, A.B. Dock Services, Inc., through undersigned counsel, who does allege, aver, and represent as follows:

### Introduction

1.     This Court has already held that Defendants' are liable under general maritime law for the April 20, 2010 explosion aboard the Deepwater Horizon and the ensuing oil spill. Comparative fault was apportioned as follows: 67% - BP, 30% - Transocean, 3% - Halliburton. The Court further held, inter alia, that the conduct of BP and its employees – including senior

1

management on the Deepwater Horizon – was egregious, and that "the discharge of oil 'was the result of gross negligence or willful misconduct.'"[1]

2.      At the time of the Deepwater Horizon explosion and ensuing oil spill, Plaintiff, A.B. Dock, operated a marine service station facility in Cameron, Louisiana, just off the busy Calcasieu Pass waterway, a few hundred yards inland from the Gulf of Mexico.  A.B. Dock's location made it an ideal stop for vessels of all types, as the Calcasieu Pass links the Gulf of Mexico to the Port of Lake Charles and its bustling waterfront casinos and restaurants just a few miles to the north.

3.      Significantly, A.B. Dock sits in the heart of an isolated region of S.W. Louisiana – accessible only by boat, for the most part – that is widely regarded as having the finest sport fishing and hunting anywhere in the world.  Plaintiff's facility is (*was*, rather) literally surrounded by hundreds of thousands of acres of protected wildlife habitats and wetlands.  The Cameron Prairie and Lacassine National Wildlife Refuges are located immediately to the north east and east, and just beyond that lie the White Lake Conservation Area and Rockefeller State Wildlife Refuge & Game Preserve.  A.B. Dock is bordered to the west by the Sabine National Wildlife Refuge.  A number of world-class hunting and fishing lodges and guide services are located in and around the area, and private camps are spread throughout.

4.      A marine service station such as A.B. Dock operates much like a regular land-based gas station, the main difference being that instead of cars and trucks, the typical customer operates a vessel.  Prior to the spill, boat traffic on and along the Calcasieu Pass was consistent and busy as vessels of virtually every make and size would regularly pull alongside to purchase fuel, water, ice and other supplies needed for their waterborne journeys.  A substantial portion of this boat traffic

---

[1] In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010, 21 F. Supp. 3d 657, 737 (E.D. La. 2014).

consisted of tourists, sport fishermen, and hunters.  These, along with commercial fishing and shrimp vessels comprised the majority of customers and revenues prior to the catastrophic explosion and spill.  However, after the April 20, 2010 explosion and spill A.B. Dock suffered a sharp drop in revenue as much of the Gulf was closed to commercial fishing and tourists shied from the region as the spill dragged on for month after month.  Additionally, Plaintiff's dock and the surrounding premises and property became contaminated from oil from the spill.

5.     Plaintiff's business never recovered, and A.B. Dock eventually succumbed to the damages and economic injuries inflicted by the Deepwater Horizon catastrophe.

## Nature of the Action

6.     On April 20, 2010, a well blowout on the oil rig Deepwater Horizon in the Gulf of Mexico caused explosions and a fire aboard the Deepwater Horizon, and after burning for two days, the rig sank, commencing an oil spill of over 200 million gallons that interfered with, damaged, depleted, and destroyed offshore, marine and coastal environments in the Gulf of Mexico, Louisiana, Mississippi, Alabama, Texas, and Florida (the "Spill"). As a direct and foreseeable result of the Spill and its devastating impact on the marine and coastal environments, the oil and gas exploration, production and maritime businesses, suppliers and associated activities in the Gulf of Mexico were significantly impacted, resulting in economic losses to Plaintiff.

## PARTIES, JURISDICTION, AND VENUE

7.     Plaintiff, **A.B. Dock Services, Inc.**, is a business domiciled in Louisiana at 501 Gulf Beach Hwy, Cameron, LA 70631.

8.     Defendant, **BP Exploration & Production, Inc.** ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois. BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil

Pollution of 1990, 33 U.S.C. §2714. This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

9.      Defendant, **BP America Production Company** ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over BP America, because BP America is registered to do business m Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

10.     Defendant **BP p.l.c**. is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division within BP Exploration and BP America, through vertical business arrangements aligned by product or service groups. BP p.l.c.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally. Plaintiffs further adopt and incorporate by reference all jurisdictional allegations against BP p.l.c. set forth in Paragraphs 212-218 of the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* as well as the District Court's Phase One Trial Findings of Fact and Conclusions of Law.

10.     BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as the "BP Defendants" or "BP."

11.     Defendant, **Transocean Ltd.** ("Transocean Ltd.") is a Swiss corporation that maintains substantial U. S. offices in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. According to its Complaint and Petition for Exoneration from or Limitation of Liability in The MDL, Transocean Ltd. was an owner, managing owner, owner *pro hac vice,* and/or operator of the Deepwater Horizon.

12.     Defendant, **Transocean Offshore Deepwater Drilling, Inc.** ("Transocean Offshore") is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Offshore is affiliated with Transocean Ltd. and was an owner, managing owner, owner *pro hac vice,* and/or operator of the Deepwater Horizon.

13.     Defendant, **Transocean Deepwater, Inc.** ("Transocean   Deepwater"), is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Deepwater is affiliated with Transocean Ltd. and was an owner, managing owner, owner *pro hac vice,* and/or operator of the Deepwater Horizon.

14.     Defendant, **Transocean Holdings, LLC** ("Transocean Holdings") is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Holdings is affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean Offshore. Transocean Holdings and party to the contract with BP regarding the lease of the Deepwater Horizon for drilling operations in the Gulf of Mexico. On April 28, 2010, the U.S. Coast Guard named Transocean Holdings as a "Responsible Party" under the Oil Pollution Act for the surface oil spill resulting from the blowout by the Deepwater Horizon.

15.     Defendant, **Triton Asset Leasing GmbH** ("Triton") is a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is affiliated with Transocean Ltd. and is an owner, managing owner, owner *pro hac vice,* and/or operator of the Deepwater Horizon.

16.     Defendants, Transocean Ltd., Transocean Deepwater, Transocean Offshore, Transocean Holdings, and Triton are hereinafter referred to collectively as "Transocean."

17.     Defendant, **Halliburton Energy Services, Inc.** is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations.

18.     Haliburton division **Sperry Drilling Services** (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations. "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

19.     Plaintiff brings these claims pursuant to Federal General Maritime Law including and/or the Oil Pollution Act of 1990 ("OPA"), 33 USC §2701, et seq.

20.     Plaintiffs reserve all rights, claims, and/or causes of action against Transocean and Halliburton.

21.     Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United

States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction." Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 USC §2717(b) (the "OPA").

22.     Venue is proper in this jurisdiction because the Defendants' actions, inactions, and failures directly and proximately caused the damage and harm to the Plaintiff in this jurisdiction.

## FACTUAL BACKGROUND

23.     On April 20, 2010, the *Deepwater Horizon* Mobile Offshore Drilling Unit (MODU) was engaged in drilling a deep water oil and gas well in Mississippi Canyon Block 252, within the United States' exclusive economic zone in the Gulf of Mexico (the "Macondo Well"). BP had leased the *Deepwater Horizon* from Transocean Ltd., for the purpose of drilling the Macondo Well.

24.     On April 20, 2010, while temporarily abandoning the Macondo Well, the employees and agents of the defendants lost control of the well, resulting in an explosion and fire aboard the *Deepwater Horizon,* the sinking of the *Deepwater Horizon* and resultant tragic loss of life.

25.     Additionally, and for over twelve weeks following the aforementioned explosion, oil spewed from the damaged well into the navigable waters of the Gulf of Mexico, the United States' exclusive economic zone in the Gulf of Mexico, and the shores of the Gulf of Mexico (the "Macondo Spill").

26.     Each day during the course of the Oil Spill, tens of thousands of crude oil gushed from the wellhead and broken riser, bubbling up to the surface and flattening out into a widening slick of oil, as well as spreading out in vast subsurface plumes. Ultimately, almost five million

barrels (210 million gallons) of crude oil spilled into the Gulf of Mexico.

27.     The Deepwater Horizon's well blowout and the subsequent explosions, fire, sinking, and Oil Spill were foreshadowed by a string of disastrous incidents and near-misses in Defendants' operations on land and at sea, as well as poor decisions-making by Defendants and their employees, as they ignored crucial safety issues, cut corners, and violated federal and state law to save time and money in favor of production and profit and at the expense of worker and environmental protection. All the while, Defendants continues to evade and subvert industry regulations.

28.     Prior to the Spill, the defendants had actual and/or constructive knowledge of significant problems related to the *Deepwater Horizon's* equipment and maintenance that could lead to loss of life, serious injury, and/or environmental damage, including problems with the vessel's Blowout Preventer ("BOP"), electronic fire and gas and alarm systems, computer software systems, purge air systems, and other vessel equipment.

29.     The loss of well control and the resulting harm was due to the negligent, reckless, callous, and grossly negligent actions on the part of the defendants before, during, and after the blowout.

30.     Furthermore, the failure to plan, monitor, control, and contain the well, as well as the failure to mitigate risk and damages sprang from long-standing grossly negligent conduct on the part of the corporate management of the defendants.

31.     The Deepwater Horizon Incident has impacted and continues to impact the shorelines, beaches, shores, marshes, harbors, estuaries, bayous, bays, and waters of the Gulf of Mexico in both the United States and Mexico. In fact, the use of the dispersants by BP caused the

oil to stay under the surface of the Gulf moving in giant plumes throughout the entire Gulf of Mexico, destroying reefs and plankton which will affect the entire Gulf of Mexico for years.

32.     The Deepwater Horizon incident and the resulting contamination of the Gulf of Mexico have caused and will continue to cause a loss of revenue for individuals and entities in both the United States and Mexico that rely on the use of the Gulf of Mexico and/or its marine life.

33.     Plaintiff would show pursuant to §1007 of OPA (33 U.S.C. 2707), that it has presented its claims in accordance with OPA guidelines and more than ninety (90) days has elapsed since said presentment without payment.  Said presentment of each claim was made in January of 2013 directly to the BP Claims office in Houston, Texas.  Plaintiff also filed claims with the Deepwater Horizon Economic Claims Center ("DHECC").  Plaintiff further shows that it has not been compensated by any party in connection with the Deepwater Horizon catastrophe.

## CLAIMS FOR RELIEF

### COUNT 1: NEGLIGENCE

34.     Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated here.

35.     At all times material hereto, Drilling Defendants were participating in drilling operations onboard the Deepwater Horizon in the Gulf of Mexico.

36.     At all times material hereto, Drilling Defendants owed and breached duties of ordinary and reasonable care to Plaintiff in connection with the drilling operations of the Deepwater Horizon and the maintenance of the vessel, its appurtenances and equipment, and additionally owed and breached duties to Plaintiffs to guard against and/or prevent the risk of an oil spill.

37.     The existence and breach of these legal duties are established under the general maritime law and state law as deemed applicable herein.

38.     Plaintiff, as owners, lessors, lessees, and/or operators of real property at or near the coast of the Gulf of Mexico and/or businesses or employees of businesses that are dependent upon the Gulf of Mexico's marine and coastal environments for their livelihood and income, were within an appreciable zone of risk and, as such, were obligated to protect them.

39.     The blowout and explosions on the Deepwater Horizon, its sinking and the resulting Spill were caused by the joint and concurrent negligence of Defendants which renders them jointly, severally, and solidarily liable to Plaintiff.

40.     Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiff and the Gulf of Mexico's marine and coastal environments and estuarine areas.

41.     Defendants were under a duty to exercise reasonable care while participating in drilling operations on the Deepwater Horizon to ensure that a blowout and subsequent oil spill did not occur as a result of such operations.

42.     Defendants were under a duty to exercise reasonable care to ensure that if crude oil discharged in the event of a blowout, that it would be contained and/or stopped within the immediate vicinity of the Deepwater Horizon in an expeditious manner.

43.     Defendants knew or should have known that the acts and omissions described herein could result in damage to Plaintiffs.

44.     Defendants, respectively and collectively, failed to exercise reasonable care while participating in drilling operations to ensure that a blowout and subsequent oil spill did not occur, and thereby breached duties owed to Plaintiff.

45.    Defendants, respectively and collectively, failed to exercise reasonable care to ensure that oil would expeditiously and adequately be contained within the immediate vicinity of the Deepwater Horizon in the event of a blowout, and thereby breached duties owed to Plaintiff.

46.    Defendants, respectively and collectively, failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures, and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters of the Gulf of Mexico, and thereby breached duties owed to Plaintiff.

47.    The conduct of the Defendants with regard to the manufacture, maintenance and/or operation of drilling operations and oil rigs such as the Deepwater Horizon and its appurtenances and equipment is governed by numerous state and federal laws and permits issued under the authority of these laws.   These laws and permits create statutory standards that are intended to protect and benefit Plaintiff.   One or more of the Drilling Defendants violated these statutory standards.

48.    The violations of these statutory standards constitute negligence per se under Louisiana, Texas, Mississippi, Alabama, Florida, and the general maritime law.

49.    At all times material hereto the Deepwater Horizon was owned, navigated, manned, possessed, managed, and controlled by Transocean.

50.    As the owner and manager of the Deepwater Horizon, Transocean owed duties of care to Plaintiffs to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the Deepwater Horizon with reasonable and ordinary care.

51.    Transocean breached its duties to Plaintiffs by, *inter alia*, failing to properly manage, control, maintain and operate the Deepwater Horizon and its safety equipment, including the gas sensors, air intake valves, emergency shutdown systems, and BOP, and in disabling vital

alarm systems on the Deepwater Horizon before the blowout.

52.     Transocean also breached its duties to Plaintiff by making and/or acquiescing to a series of reckless decisions concerning, *inter alia*, well design, the use of centralizers, mudding operations, cementing, integrity testing, deployment of the casing hanger lockdown sleeve, spacer material, and simultaneous operations causing worker confusion and loss of focus.

53.     Defendants also violated the International Safety and Management Code ("ISM"), as adopted by the International Convention for the Safety at Life at Sea ("SOLAS"), which provides rules and standards to ensure that ships are constructed, equipped, and manned to safeguard life at sea, by failing to properly maintain the vessel, train personnel, and perform appropriate risk assessment analyses.   See 46 USC §§ 3201-3205 and 33 CFR §§ 96.230 and 96.250.

54.     At all times material hereto, the Deepwater Horizon was leased and operated pursuant to a contract between Transocean and BP. Together, Transocean and BP and other Drilling Defendants were responsible for design and well control.

55.     BP owed duties to Plaintiff to, *inter alia*, exercise reasonable care to design, create, manage and control the well and the flow of hydrocarbons therefrom in a safe and prudent manner and to conduct its drilling operations with reasonable and ordinary care.

56.     BP breached its duties to Plaintiffs by, *inter alia*:

a.      choosing and implementing a less expensive and less time- consuming long string well design, which had few barriers against a gas blowout, instead of a safer liner/tieback design which would have provided additional barriers to gas blowout, despite its knowledge that the liner/tieback design was a safer option;

b.      using pipe material that it knew, and which it recognized before the blowout, might

collapse under high pressure;

c.      using too few centralizers to ensure that the casing was centered into the wellbore;

d.      failing to implement a full "bottoms-up" circulation of mud between the running of the casing and the beginning of the cement job in violation of industry standards;

e.      failing to require comprehensive lab testing to ensure the density of the cement, and failing to heed the ominous results of negative pressure testing which indicated that the cement job was defective;

f.      cancelling the cement bond log test that would have determined the integrity of the cement job;

g.      failing to deploy the casing hanger lockdown sleeve to prevent the wellhead seal from being blown out by pressure from below;

h.      using an abnormally large quantity of mixed and untested spacer fluid;

i.      failing to train drilling vessel workers and/or onshore employees, and to hire personnel qualified in risk assessment and management of complex systems like they found on the Deepwater Horizon;

j.      requiring simultaneous operations in an effort to expedite the project, making it difficult for workers to track fluid volumes in the wellbore; and

k.      causing property damage to the vessels involved in the clean-up and remediation program, and failing to properly administer and provide payment for work, time, and/or property damage to those entities and workers participating in the program.

57.     All of the foregoing acts and/or omissions by BP proximately caused and/or contributed to Plaintiff's' injuries and damages.

58.     At all times material hereto, Halliburton was responsible for cementing the well

that was the subject of the Spill, and further was engaged in testing, analysis, and monitoring of the aforementioned well.

59.     At all times material hereto, Halliburton owed duties to Plaintiff to, *inter alia*, exercise reasonable care in conducting its cementing, testing, analysis and monitoring of the Deepwater Horizon's well.

60.     Halliburton breached its duties to Plaintiff by, *inter alia*, failing to exercise reasonable care in conducting its cementing, testing, analysis, and monitoring of the Deepwater Horizon's well. Halliburton was negligent by, *inter alia*, failing to use a full "bottoms-up" circulation of mud between the running of the casing and the beginning of the cement job in violation of industry standards; failing to require comprehensive lab testing to ensure the density of the cement, and failing to heed the ominous results of negative pressure testing which indicated that the cement job was defective; cancelling, or acquiescing in the cancellation of, the cement bond log test that would have determined the integrity of the cement job; failing to deploy, or acquiescing in the decision not to deploy, the casing hanger lockdown sleeve to prevent the wellhead seal from being blown out by pressure from below, all of which proximately caused and/or contributed to Plaintiffs' injuries and damages.

61.     In addition to the negligent actions described herein, and in the alternative thereto, the damages suffered by Plaintiffs were caused by the acts and/or omissions of Defendants that are beyond proof by the Plaintiffs, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the blowout, explosions, fire, sinking, and Spill resulted from the negligence of Defendants. The blowout, explosions, fire, sinking, and the resulting Spill would not have occurred had the Defendants satisfied the duty of care imposed on them and Plaintiffs, therefore, plead the doctrine of *res ipsa loquitur*.

62.     In addition to the foregoing acts of negligence, Plaintiff avers that the blowout, explosions, fire, and resulting Spill were caused by the joint, several, and solidary negligence and fault of Defendants in the following non- exclusive particulars:

a.      Failing to properly operate the Deepwater Horizon;

b.      Operating the Deepwater Horizon in such a manner that a fire and explosions occurred onboard, causing it to sink and resulting in the Spill;

c.      Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

d.      Acting in a careless and negligent manner without due regard for the safety of others;

e.      Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have averted the blowout, explosions, fire, sinking, and Spill;

a.      Operating the Deepwater Horizon with untrained and unlicensed personnel;

b.      Negligently hiring, retaining and/or training personnel;

c.      Failing to take appropriate action to avoid or mitigate the accident;

d.      Negligently implementing or failing to implement policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

e.      Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

f.      Failing to warn in a timely manner;

g.      Failing to timely bring the oil release under control;

h.      Failing to provide appropriate accident prevention equipment;

i.      Failing to observe and read gauges that would have indicated excessive pressures in the well;

j.      Failing to react to danger signs; and

k.      Such other acts of negligence and omissions as will be shown at the trial of this matter; all of which acts are in violation of the general maritime law.

63.     Plaintiffs are entitled to a judgment finding Defendants liable, jointly, severally, and solidarily, to Plaintiffs for damages suffered as a result of Defendants' negligence and awarding Plaintiffs adequate compensation therefor in amounts determined by the trier of fact.

64.     The damages to Plaintiffs were also caused by and/or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

65.     As a direct and proximate result of the Defendants' negligence, Plaintiffs have each suffered and will continue to suffer significant physical, economic and other damages, including but not limited to diminution of value to business, loss of income and revenue, loss of business, good will, stigma damages, and any incidental or consequential damages resulting from Defendants' conduct.

66.     The Defendants are liable jointly and severally for Plaintiffs' damages resulting from Defendants negligence.

WHEREFORE, the Plaintiffs, demand judgment for damages against the Defendants, together with pre-judgment interest, costs and demands trial by jury of all issues so triable as of right by jury.

## COUNT 2: GROSS NEGLIGENCE AND WILLFUL MISCONDUCT

67.     Plaintiff re-alleges each and every allegation set forth in all preceding paragraphs

as if fully restated here.

68.      Drilling Defendants owed and breached duties of ordinary and reasonable care to Plaintiffs in connection with the maintenance of, and drilling operation on, the Deepwater Horizon, and additionally owed and breached duties to Plaintiffs to guard against and/or prevent the risk of the Spill. The existence and breach of these legal duties are established under the general maritime law and state law as deemed applicable herein.

69.      Drilling Defendants breached their legal duty to Plaintiffs and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the negligent manufacture, maintenance, and/or operation of the Deepwater Horizon.

70.      Drilling Defendants knew or should have known that their wanton, willful, and reckless misconduct would result in a disastrous blowout and oil spill, causing damage to those affected by the Spill.

71.      Transocean acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, disabling the gas alarm system aboard the Deepwater Horizon.

72.      BP and Transocean acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, failing to use a sufficient number of "centralizers" to prevent channeling during the cement process; failing to run a "bottoms-up" circulation of the drilling mud prior to beginning the cement job; disregarding proper drilling, casing, mudding, and cementing procedures; failing to ensure that that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects an uncontrolled oil spill into the waters of the Gulf of Mexico.

73.      BP, Transocean, and Halliburton acted with gross negligence, willful misconduct,

and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, using an inappropriate cement mixture for the well; failing to appropriately test that cement mixture prior to using it in the well; failing to run a cement bond log to evaluate the integrity of the cement job; and failing to deploy the casing hanger lockdown sleeve prior to commencing the mud displacement process in the well.

74.     BP and Transocean acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, using an untested, abnormally large volume of mixed spacer solutions to avoid having to properly dispose of the two separate spacer substances as hazardous wastes.

75.     BP and Transocean acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, defectively designing, recklessly maintaining and altering, and/or wantonly operating and/or using the BOP appurtenant to the Deepwater Horizon.

76.     As a result of Defendants, BP, Halliburton, and Transocean's gross negligence, willful misconduct, and reckless disregard, Plaintiffs are entitled to a judgment finding Defendants, BP, Halliburton, and Transocean, liable to Plaintiffs for damages suffered in an amount to be determined by the trier of fact, including but not limited to punitive damages.

WHEREFORE, the Plaintiffs, demand judgment for damages against the Defendants, together with pre-judgment interest, costs and demands trial by jury of all issues so triable as of right by jury.

## COUNT 3: CLAIMS UNDER THE OIL POLLUTION ACT

77.     Under the circumstances, and pursuant to the Oil Pollution Act of 1990, BP Exploration (as the responsible party for the Macondo Spill, is liable and strictly liable to Plaintiff,

without limitation, for damages arising from and/or due to the Macondo Spill including costs and pre-judgment and post-judgment interest.

78.     Additionally, BP, Transocean and Halliburton are liable to Plaintiff under general maritime law and hence, are liable not only for compensatory damages but also punitive damages relating to the gross negligence and willful misconduct of the defendants.

79.     Plaintiff further adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against the Defendants as responsible parties under the Oil Pollution Act, 33 USC §2701, et seq., which holds responsible parties liable to plaintiffs for removal costs and damages arising out of the following:

      a.     Loss of Natural Resources;

      b.     Loss or Damage to Real or Personal Property;

      c.     Subsistence Use;

      d.     Loss of Revenues;

      e.     Loss of Profits and/or Earning Capacity; and

      f.     Loss of Public Services.

80.     As a direct and proximate result of Defendants' negligence, Plaintiff suffered a loss of income, loss of the use of the Gulf of Mexico and its coastline for commercial and tourism purposes, and damages associated and inconvenience sustained by the closure of the Gulf water areas, harbors, marinas, boat launches and waterways, including loss of their livelihood which directly depends upon the Gulf of Mexico.

## CLAIMS FOR RELIEF

WHEREFORE, Plaintiff, A.B. Dock Services, demands judgment against

Defendants, jointly, severally, and *in solido,* as follows:

      a.      Economic and compensatory damages in amounts to be determined at trial;

      b.      Punitive damages;

      c.      Pre-judgment and post-judgment interest at the max rate allowed by law;

      d.      Reasonable claims preparation expenses;

      e.      Attorneys' fees;

      f.      Costs of litigation; and

      g.      Such other relief available under all applicable state and federal laws and

any relief the Court deems just and appropriate.

## JURY TRIAL DEMANDED

      Respectfully submitted,

      **JASON J. JOY & ASSOCIATES, PLLC**

      By:     /s/ Jason J Joy
      Jason Joy (Texas Bar No.: 24058932)
      jason@jasonjoylaw.com
      Michael Barcus (Texas Bar. No.: 24097339)
      michael@jasonjoylaw.com
      Colin Wood (Texas Bar. No.: 24082535)
      colin@jasonjoylaw.com
      Mariko Weaver (Texas Bar. No.: 24100030)
      mariko@jasonjoylaw.com
      JASON J. JOY & ASSOCIATES, PLLC
      909 Texas St., Suite 1801
      Houston, Texas 77002
      Telephone: (713) 221-6500
      Facsimile: (713) 221-1717

**BANKSTON DUHON LLC**

/s/ Wyman E. Bankston
WYMAN E. BANKSTON (BAR NO. 30384)
13922 Florida Boulevard
Post Office Box 305
Livingston, Louisiana 70754-0305
Telephone: (225) 435-4980
Facsimile: (225) 435-4978

*Attorneys for Plaintiff, A.B. Dock Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing First Amended Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accord with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this the 19th day of May, 2016.

Respectfully Submitted

/s/     Jason J. Joy
Jason J. Joy