UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 |
| | | SECTION: J |
| This Document Relates To: | * | |
| | | JUDGE BARBIER |
| *No. 12-970* | * | |
| | | MAG. JUDGE SHUSHAN |
| | * | |

## ORDER & REASONS

Before the Court is the **Motion of the Deepwater Horizon Economic Claims Center ("DHECC") for Return of Payments Made to Crystal Seafood Company, Inc. ("Crystal"), and Others (Rec. Doc. 14613)** and related briefing. (Crystal Opp'n, Rec. Doc. 14948; DHECC Reply, Rec. Doc. 14998; Crystal Sur-Reply, Rec. Doc. 15346; DHECC Resp. to Sur-Reply, Rec. Doc. 15376).[1] The DHECC asserts that Crystal submitted a fraudulent claim to the DHECC and seeks restitution from Crystal, Crystal's principals, and Crystal's attorneys. Having considering the parties' briefs, attached exhibits, and the applicable law, the Court will grant the DHECC's motion for reasons set forth below.[2]

## BACKGROUND

This Order & Reasons assumes the reader's familiarity with the 2010 Gulf of Mexico oil spill, Multidistrict Litigation 2179, the *Deepwater Horizon* Economic and Property Damages

---

[1] Crystal Seafood Company, Inc. and the DHECC filed, respectively, a motion to sur-reply (Rec. Doc. 15356) and a motion to respond to same (Rec. Doc. 15376). The Court grants both motions and has considered these briefs with the DHECC's motion.

[2] The DHECC's motion originally sought restitution from Alliance & Associates, LLC ("Alliance"), as well as from Crystal. Alliance and Crystal both claimed to be seafood processing companies that operated at the same address in Port Arthur, Texas. Alliance never responded to the DHECC's motion, and Alliance's attorneys returned the $533,475.11 in legal fees it had received in connection with Alliance's claim. The Court eventually entered a default judgment against Alliance in the amount of $1,600,920.34, plus post-judgment interest. (Rec. Doc. 15433). Consequently, this Order focuses on Crystal.

Settlement ("Settlement," Rec. Doc. 6430),[3] and the DHECC. The Court retains continuing and exclusive jurisdiction to interpret, implement, administer, and enforce the Settlement (Settlement §§ 4.2.3, 4.3.10, 4.4.7, 18.1; Order & Judgment ¶¶ 9, 17, Rec. Doc. 8139). In 2013, the Court appointed a Special Master to, among other things, examine and investigate past or pending claims submitted to the DHECC which are deemed suspicious and to initiate legal action to "clawback" the payment of fraudulent claims. (Rec. Doc. 11288 at 3). This process eventually transitioned to the Claims Administrator for the DHECC. (Rec. Docs. 14514, 14543). Following an investigation into Crystal's claims, the Claims Administrator and the Special Master jointly filed the instant clawback motion on behalf of the DHECC. (Rec. Doc. 14613). Motions of this sort are in the nature of the proper administration and enforcement of a settlement program under the Court's exclusive control and jurisdiction; the Court's power to order equitable remedies as a result of fraudulent conduct is broad, flexible, and long-standing. (*See* Thonn Order at 13-14, Rec. Doc. 12794).[4]

In August 2012, Crystal submitted a Business Economic Loss ("BEL") claim to the DHECC, describing itself as follows:

> Crystal Seafood Company (the "Company") is a Primary Seafood Processor. The Company operates its business at 3933 South Martin Luther King Dr., Port Arthur, Texas. Before the explosion of the Deepwater Horizon and the ensuing oil spill, its primary business was the purchase, processing, and sale of Gulf shrimp. The Company would purchase shrimp caught in Texas, Louisiana, and federal waters of the Gulf of Mexico directly from Shrimp Fishermen in the Port Arthur area. The Company would then process the shrimp, and sort, grade by size, clean, de-head, ice, freeze, salt, package, and store shrimp for shipment to customers.

---

[3] Some of the capitalized terms used here are defined in the Settlement.
[4] The Court has previously ruled on many other "clawback" motions. (*See* Thonn Order, Rec. Doc. 12794; Burrle Order, Rec. Doc. 14747; Zirlott Order, Rec. Doc. 14752; Lambert Order, Rec. Doc. 14780; Taylor Order, Rec. Doc. 14813; Parker Order, Rec. Doc. 15325; Alfonso Order, Rec. Doc. 15400; Riley Order, Rec. Doc. 15448; Vision Design Order, Rec. Doc. 15744; Hai Do Order, Rec. Doc. 15845). The Fifth Circuit recently affirmed one of these decisions where the Court granted a clawback motion. *See In re Deepwater Hoorizon*, No. 15-30574, 2016 WL 1397663, -- F. App'x -- (5th Cir. April 8, 2016).

(DHECC Mot., Ex. B ¶ (B)(9), Rec. Doc. 14613-4).  This Order will refer to 3933 South Martin Luther King Dr. as "the Port Arthur Location."  The BEL claim form also asked,

> Has your business ceased operations, declared bankruptcy or liquidated substantially all of its assets since May 1, 2010?  If your business failed between May 1, 2010 and December 31, 2011, stop filling out this Claim Form and submit the Failed Business Economic Loss Claim Form (Red Form) instead.

Crystal answered "No" to this question.  (DHECC Mot., Ex. B ¶ (B)(11), Rec. Doc. 14613-4). On December 19, 2012, the DHECC issued an eligibility notice on Crystal's claim and eventually paid it $1,034,228.42.  However, the DHECC did not compensate Crystal as a Primary Seafood Processor.  Instead, the DHECC treated Crystal as "Primary Seafood Industry II," which receives a lower Risk Transfer Premium ("RTP") multiplier than a Primary Seafood Processor (2.25 vs. 3.0).

## ARGUMENT AND EVIDENCE PRESENTED BY THE DHECC

Only class members are eligible for compensation under the Settlement.  The thrust of the DHECC's motion is that Crystal fraudulently misrepresented its status as a class member, which required it to show that it "owned, operated, or leased a physical facility" in the gulf coast area "at any time from April 20, 2010 to April 16, 2012."  (Settlement § 1.2.1.)  The DHECC also contends that even if Crystal met the class definition, it should have identified itself as a Failed Business, in which case it would not have met the requirements for compensation under the Failed Business Compensation Framework.  (Motion at 12-13, Rec. Doc. 14613-2).  The Court views this as an alternative argument.

The following facts are either admitted or uncontroverted by Crystal:

1. Crystal is primarily owned by Loc Chanh "Victor" Tran.  Victor Tran's brother, Christopher Tran, also owns a share of Crystal.  Victor Tran owns other companies, including Lot, Inc. ("Lot") and Titan Seafood Company ("Titan").

3

2.     Crystal and Titan filed BEL claims with the DHECC, and Lot filed a "Failed Business" claim with the DHECC.  Christopher Tran was the authorized business representative for all three claims.

3.     Crystal did not own the land or the buildings at the Port Arthur Location.  Lot owned the land and the buildings at the Port Arthur Location.  Lot also owned the adjacent property, 3931 South Martin Luther King Dr.

4.     In January 2009, Victor Tran pleaded guilty to making false statements to the U.S. Small Business Administration in order to obtain Hurricane Rita relief funds for Titan.  On April 8, 2009, Victor Tran was arrested on an application for revocation of pretrial release.  Victor Tran was incarcerated from April 2009 until September 2012.

5.     In April or May 2009, about a year before the oil spill began, Crystal stopped processing shrimp.  Crystal has never resumed shrimp processing.

6.     After Crystal ceased processing shrimp, it had a considerable inventory of frozen shrimp.  In June 2009, Crystal shipped its frozen shrimp inventory to Florida for cold storage.  Tampa Bay Fisheries, Inc., Crystal's main customer, then purchased this shrimp as needed over time.  Tampa Bay Fisheries bought the last of Crystal's inventory in August of 2010.  Crystal has not sold shrimp since.

7.     Each of the six checks from Tampa Bay Fisheries to Crystal for the frozen shrimp were mailed to an address in California, not the Port Arthur Location.

8.     In July 2009, about nine months before the oil spill began, Victor Tran's wife wrote a letter to the judge preparing to sentence Victor Tran.  Her letter indicates that Victor Tran's businesses were having difficulty before his incarceration and that matters have become worse since.  Moreover, she states, "Essentially all business operations have ceased.  The boats

are gone. I have had to let go of most employees with the promise that I will call them back as soon as I can." (DHECC Reply, Ex. 1, Rec. Doc. 14998-1).

9. On September 1, 2009, a few months after Victor Tran was incarcerated, Lot leased the Port Arthur Location and the adjacent property to Flor-Tex Shrimp Company, LLC ("Flor-Tex"), a company owned by Tampa Bay Fisheries, Inc. The lease granted Flor-Tex "the right to operate any and all equipment maintained and remaining on the premises." (DHECC Motion, Ex. G ¶ 4, Rec. Doc. 14613-9).

10. Flor-Tex was the only seafood processing operation at the Port Arthur Location from September 2009 until Flor-Tex vacated the property in November 2010.

11. In July 2012, Christopher Tran submitted a declaration to the DHECC concerning Lot's Failed Business claim in which he stated, "Lot, Inc. has been left vacant since Flor-Tex left and has lost all of its revenue. Despite significant efforts, I have been unable to resume processing operations or find other tenants for the facilities. The processing plant has remained idle since Flor-Tex vacated the premises." (DHECC Mot., Ex. H ¶¶ 6-7, Rec. Doc. 14613-10).

12. Crystal's 2010 tax return states that Crystal "DISPOSED" all of its depreciable equipment in that year. (DHECC Reply, Ex. 2, Rec. Doc. 14998-2). Crystal's 2010 monthly profit and loss ("P&L") statement similarly reflects that Crystal claimed equipment depreciation only from January to April of 2010, with no equipment depreciation expense listed for the remainder of the year. (DHECC Reply, Ex. 4, Rec. Doc. 14988-4). Crystal's 2011 tax return lists no depreciable assets.[5]

13. Crystal's 2010 P&L lists no expenses for employee salaries, telephones, utilities, shop supplies, rent, etc.

---

[5] While Crystal attacks the reliability and meaning of these statements, as well as what conclusions, if any, should be drawn from them, Crystal does not dispute that the documents contain the statements set forth above.

5

## DISCUSSION

In order for the DHECC's motion to succeed on the briefs and without an evidentiary hearing, there must be no dispute as to material fact that (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury. *See In re Deepwater Horizon*, No. 15-30574, 2016 WL 1397663 at *3, -- F. App'x -- (5th Cir. April 8, 2016); Alfonso Order at 6-7, Rec. Doc. 15400).

Crystal represented to the DHECC that it was a "Primary Seafood Processor" that "operates its business at 3933 South Martin Luther King Dr."  Crystal now admits that it "was not actively processing seafood at the time of the spill" (Crystal Opp'n p.13, Rec. Doc. 14948), nor has it ever resumed shrimp processing. (*See id.* at 17).  As Crystal points out, however, the DHECC's eligibility notice designated Crystal as Primary Seafood Industry II, not as a Primary Seafood Processor, meaning that the DHECC paid Crystal as a commercial seafood wholesaler or retailer.  Primary Seafood Industry II receives a lower RTP than Primary Seafood Processor.  Thus, Crystal is correct when it argues that the DHECC did not rely on and was not damaged by Crystal's misrepresentation that it was a Primary Seafood Processor.

Two questions remain, however.  First, did Crystal fraudulently misrepresent that it "owned, operated, or leased a physical facility" in the gulf coast area "at any time from April 20, 2010 to April 16, 2012?" (Settlement § 1.2.1.).  Second, did Crystal fraudulently misrepresent that it was not a "Failed Business?"

The Court will assume, but does not decide, that there is at least a genuine dispute as to a material fact relative to the first question. Moving to the second question, the Settlement defines a "Failed Business" as

> a business Entity that . . . subsequent to May 1, 2010 but prior to December 31, 2011, either (i) ceased operations and wound down, or (ii) entered bankruptcy or (iii) otherwise initiated or completed a liquidation of substantially all of its assets . . . .

(Settlement § 38.68). As mentioned above, Crystal indicated "No" on its claim form in response to the question "Has your business ceased operations, declared bankruptcy or liquidated substantially all of its assets since May 1, 2010?" In his affidavit submitted with Crystal's opposition to the DHECC's motion, Victor Tran states that Crystal owns various shrimp processing equipment. (Crystal Opp'n, Ex. 1 ¶¶ 8, 10, Rec. Doc. 14948-1). He specifically mentions an IQF (individually quick frozen) machine, shrimp de-heading systems, and 120 vats. (*Id.*) However, Victor Tran's representations are squarely contradicted by Crystal's 2010 tax return, which states that Crystal "disposed" of all of its depreciable equipment in 2010, including but not limited to "IQF System," "Deheading Equipment," and "Vats."[6] Similarly, Crystal's 2010 monthly P&L statement shows that it claimed equipment depreciation only from January to April 2010, with no equipment expenses listed for any of the remaining months of the year. Crystal's 2011 tax return similarly lists no depreciable assets owned by Crystal. These documents show that Crystal completed a liquidation of substantially all of its assets between May 1, 2010 and December 31, 2011, particularly when considered with the following facts:

- Crystal ceased processing shrimp in April or May of 2009 and has never resumed shrimp processing.

---

[6] Crystal argues that "disposed" is unreliable and unclear. (*See* Crystal Sur-Reply p.2, Rec. Doc. 15346-1). These arguments lack merit for the reasons presented by the DHECC. (*See* DHECC Resp. to Sur-Reply, Rec. Doc. 15376-2).

7

- Crystal shipped the last of its frozen shrimp inventory to Florida in June of 2009, where it was sold off by August 2010.  Crystal has not sold shrimp since.

- Victor Tran's wife's stated in July 2009 that "Essentially all business operations have ceased" following Victor Tran's incarceration.

- Lot leased the Port Arthur Property to Flor-Tex in September 2009.

- Christopher Tran stated in July 2012 that "Lot, Inc. [which owned the Port Arthur Location] has been left vacant since Flor-Tex left [in November 2010] and has lost all of its revenue."

- Crystal's 2010 P&L lists no expenses for employee salaries, telephones, utilities, shop supplies, rent, etc.

The conclusion that Crystal owns no equipment is also consistent with a letter Lot wrote to the Gulf Coast Claims Facility ("GCCF") in 2011.  Crystal contends in its opposition to the instant motion that there are two main buildings at the Port Arthur Location and the adjacent address: the larger, main building houses equipment allegedly owned by Crystal and the smaller building houses equipment owned by Lot.   (*See* Crystal Opp'n pp.2-3, Rec. Doc. 14948).  Yet, Lot told the GCCF in January 2011 that

> The [shrimp processing] plant actually has two separate and complete buildings and each has a complete set of equipment, meaning that ***LOT, Inc. has double the equipment***.  [T]he buildings can be run individually or simultaneously based on volume.
> . . .
> In September, 2009, LOT, Inc. entered into a lease agreement with [Flor-Tex] which allowed them to operate the shrimp plant—including ***all equipment*** at the plant. . . .
> . . .
> [After the lease with Flor-Tex ended,] LOT, Inc. has . . . put ***the plant*** on the market to sell.

8

(DHECC Motion, Ex. H, Rec. Doc. 14613-10 (ECF p. 103-05) (emphasis added)).[7]

The only evidence Crystal offers to show that it owns the equipment, as opposed to Lot or any other entity, is the affidavit of Victor Tran, Crystal's primary owner. In light of the evidence presented by the DHECC, this is insufficient to create a genuine issue of material fact. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Bartucci v. Jackson*, No. 04-2977, 2006 WL 2631925, at *5 (E.D. La. Sept. 13, 2006) (collecting cases where a party's own affidavit, deposition, or verified pleadings were insufficient to defeat summary judgment when the statements are self-serving and conclusory).

Finally, Crystal does not dispute the DHECC's assertion that had Crystal's claim been considered under the Failed Business Framework, as opposed to the BEL Framework, the claim would have been denied because the P&L statements reflected an EBITDA ("earnings before interest, income taxes, depreciation, amortization and owner's compensation") of negative $180,849.29 in the 12 months prior to May 1, 2010. Thus, Crystal's misrepresentation caused harm to the DHECC.

In conclusion, there is no genuine dispute as to a material fact. The evidence establishes, clearly and convincingly, that Crystal defrauded the DHECC when it misrepresented itself as an on-going business and not a Failed Business. The Court will grant the DHECC's motion and require Crystal to pay restitution to the DHECC in the amount of $1,034,228.42. Furthermore, the Court finds for reasons asserted by the DHECC that it is appropriate to pierce Crystal's corporate veil and hold Victor Tran and Christopher Tran liable, jointly and severally, with

---

[7] Lot similarly told the DHECC in July 2012 that Lot "placed the land ***and facilities*** on the market but has been unable to sell it." (DHECC Motion, Ex. H, Rec. Doc. 14613-10 (ECF p. 2) (emphasis added)).

9

Crystal.  The Court will also require Crystal's attorney, Faegre, Baker, Daniels LLP to return the $258,527.21 it received on a contingent-fee basis for representing Crystal's claim.  (*See* Thonn Order at 22-26, Rec. Doc. 12794; Burrle Order at 6, Rec. Doc. 14747).

## CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Crystal's Motion for Leave to File Sur-Reply (Rec. Doc. 15346) and the DHECC's Motion to File a Response to Crystal's Sur-Reply (Rec. Doc. 15376) are GRANTED.

IT IS FURTHER ORDERED that the DHECC's Motion for Return of Payments Made to Crystal Seafood Company, Inc., and Others (Rec. Doc. 14613) is GRANTED.

The Court will enter a judgment vacating the award in favor of Crystal and holding Crystal, Victor Tran, and Christopher Tran liable, jointly and severally, to the DHECC in the amount of $1,034,228.42, plus post-judgment interest.  The judgment will also hold Faegre, Baker, Daniels LLP jointly and severally liable with Crystal, Victor Tran, and Christopher Tran, but only up $258,527.21, plus post-judgment interest.  In no event shall the total restitution payable to the DHECC exceed $1,034,228.42, excluding any post-judgment interest.

New Orleans, Louisiana, this 24th day of May, 2016.

_____
United States District Judge