IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 15-30597

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:10-CV-3896

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2016

Lyle W. Cayce
Clerk

**Certified as a true copy and issued as the mandate on Apr 28, 2016**

Attest:
*Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

IN RE: DEEPWATER HORIZON

------------------------------------------

SEACOR HOLDINGS, INCORPORATED; SEACOR OFFSHORE, L.L.C.; SEACOR MARINE, L.L.C., As Beneficial Owner, Registered Owner, And Managing Owner of the M/V Seacor Vanguard Petitioning for Exoneration From or Limitation of Liability,

      Petitioners - Appellees

v.

DUWAYNE MASON,

      Claimant - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, p.l.c.,

      Appellees

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

# JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that appellant pay to appellees the costs on appeal to be taxed by the Clerk of this Court.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 15-30598
_____

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:11-CV-826

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2016

Lyle W. Cayce
Clerk

IN RE: DEEPWATER HORIZON
-------------------------------------------
DUWAYNE MASON,

    Plaintiff - Appellant

v.

SEACOR MARINE, L.L.C.,

    Defendant - Appellee

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that appellant pay to appellees the costs on appeal to be taxed by the Clerk of this Court.



**Certified as a true copy and issued
as the mandate on Apr 28, 2016**

Attest:

**Clerk, U.S. Court of Appeals, Fifth Circuit**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 15-30597

---

IN RE: DEEPWATER HORIZON

------------------------------------------

SEACOR HOLDINGS, INCORPORATED; SEACOR OFFSHORE, L.L.C.; SEACOR MARINE, L.L.C., As Beneficial Owner, Registered Owner, And Managing Owner of the M/V Seacor Vanguard Petitioning for Exoneration From or Limitation of Liability,

      Petitioners - Appellees

v.

DUWAYNE MASON,

      Claimant - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, p.l.c.,

      Appellees

*************************************************************************

No. 15-30598

IN RE: DEEPWATER HORIZON

------------------------------------------

DUWAYNE MASON,

      Plaintiff - Appellant

United States Court of Appeals
Fifth Circuit
**FILED**
April 6, 2016
Lyle W. Cayce
Clerk

Nos. 15-30597 cons w/ No. 15-30598

v.

SEACOR MARINE, L.L.C.,

    Defendant - Appellee

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, p.l.c.,

    Appellees

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge.

    Duwayne Mason appeals the district court's grant of summary judgment in favor of Seacor Holdings, Inc., Seacor Offshore, L.L.C., and Seacor Marine, L.L.C. (collectively, "Seacor"), as well as the denial of Mason's motion to be recognized as a plaintiff who opted out of the class action settlement at issue in this case. For the reasons that follow, we AFFIRM.

I.

    This is one of the many cases to arise from the Deepwater Horizon oil spill, the facts of which are well known and need not be recited at great length. Suffice it to say, Seacor owned and operated the M/V SEACOR VANGUARD, a vessel that assisted in putting out the fire after the explosion in the Gulf of Mexico and that subsequently took part in the cleanup efforts.

2

Nos. 15-30597 cons w/ No. 15-30598

In response to a class action filed against it relating to damages stemming from the Deepwater Horizon incident, Seacor filed a limitation of liability action under 46 U.S.C. § 30505 ("Limitation Action"). Duwayne Mason, an employee of Seacor and a member of the crew aboard the M/V SEACOR VANGUARD, filed a claim in the Limitation Action, alleging that while assisting in the firefighting efforts aboard the M/V SEACOR VANGUARD, he was "subjected to intense, prolonged exposure to chemicals, smoke, heat[,] and other noxious by-products of the rig fire resulting in severe and permanent damage to . . . claimant's lungs and other parts of his body." In a separate lawsuit against Seacor, Mason further alleged that "[w]hile engaged in collecting the oil and dispersant, plaintiff was exposed to crude oil, chemical components of the crude oil, chemical dispersant[,] and other noxious by-products of the rig fire and oil spill, resulting in severe and permanent damage to his lungs and other parts of his body." These two claims were consolidated with the Deepwater Horizon multidistrict litigation ("MDL").

"In order to manage this complex litigation, the district court issued Pretrial Order No. 11 establishing several 'pleading bundles' into each of which claims of similar nature would be placed for the purpose of filing a master complaint, answers, and any Rule 12 motions." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 419 (5th Cir. 2013). Relevant to this appeal are bundles: B3, which included claims related to cleanup efforts and personal injury or medical monitoring claims for exposure or other injuries; and B4, which included claims against owners and operators of response vessels. After the district court ruled on motions to dismiss related to pleading bundle B3, BP American Production Co., BP Exploration & Production Inc., and BP P.L.C. (collectively, "BP") negotiated the Medical Benefits Settlement Agreement (the "Agreement"), which addresses the claims in the B3 pleading bundle. The Agreement was filed with the district court on April 18, 2012, and

3

Case: 15-30597    Document: 00513483751    Page: 4    Date Filed: 04/28/2016
Case 2:10-md-02179-CJB-DPC   Document 18460   Filed 05/03/16   Page 7 of 19

Nos. 15-30597 cons w/ No. 15-30598

subsequently amended on May 1, 2012. This Agreement applied to the "Medical Benefits Settlement Class," which was defined as natural persons who worked as clean-up workers between April 20, 2010, and April 16, 2012. The agreement further defined "clean-up workers" as natural persons who performed response activities, which in turn was defined as "the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances . . . ."

Under the Agreement, all released claims of the class members against all released parties would be dismissed once the Agreement became effective, including those for personal and bodily injuries related to the Deepwater Horizon incident. The Agreement specifically identifies the released parties as including, among others, Seacor. The district court preliminarily approved the Agreement and set forth procedures for individuals to opt out from the Medical Benefits Settlement Class.[1] The initial opt-out deadline was ultimately extended to November 1, 2012. The court granted final approval of the Agreement on January 11, 2013, and the effective date of the Agreement was February 12, 2014.

After the Agreement had been filed with the court, but several months before the opt-out period had expired, Mason moved to sever his claims from

---

[1] The court ordered that "any Medical Benefits Settlement Class Member wishing to exclude himself or herself from the Medical Benefits Settlement Class must submit a written request stating 'I wish to exclude myself from the Medical Benefits Settlement Class' (or substantially similar clear and unambiguous language), and also containing that Medical Benefits Settlement Class Member's printed name, address, phone number, and date of birth, and enclosing a copy of his or her driver's license or other government-issued identification. The written request to Opt Out must be signed by the Medical Benefits Settlement Class Member seeking to exclude himself or herself from the Medical Benefits Settlement Class . . . ." The Agreement also describes this opt-out procedure.

Case: 15-30597    Document: 00513483751    Page: 5    Date Filed: 04/28/2016
Case 2:10-md-02179-CJB-DPC   Document 18460   Filed 05/03/16   Page 8 of 19

Nos. 15-30597 cons w/ No. 15-30598

the MDL. This motion provided that "Mason hereby certifies that he has filed no claim in connection with the BP oil spill nor have any claims been submitted in connection with the [Agreement]." Furthermore, it stated that "[u]ndersigned counsel has thoroughly investigated the nature of the [Agreement] and is satisfied that an adequate remedy is not available for his client within the ambit of that settlement. Undersigned counsel's investigation has been confirmed through detailed discussions with members of the Plaintiffs' Steering Committee handling the MDL."

In its opposition to the motion to sever—filed over a month before the opt-out period expired—Seacor noted that Mason's claims appeared to fall within the ambit of the B3 pleading bundle and the Agreement. Seacor also opposed the motion to sever because it claimed it would "necessarily have to implead others who may have caused" the oil spill at the heart of the class action if "compelled to defend itself in a proceeding that raises the very same issues as those common to the B3 and B4 pleading bundles." On March 5, 2013—after the opt-out deadline—the court denied the motion to sever.[2] Three weeks later, Mason contacted the claims administrator of the Agreement, maintaining that he was not a member of the Medical Benefits Settlement Class, and stating that if he were a member, he wished to be excluded. The

---

[2] After the opt-out deadline, in response to the denial of the motion to sever, Mason's counsel filed an affidavit seeking to clarify that he did not view Mason's claims as falling within the Agreement or as relating to the oil spill because they were filed against Seacor, not BP, and because Mason did not personally collect dispersant or participate in recovery and cleanup efforts, except as an engineer in the engine room of the M/V SEACOR VANGUARD while other crew members helped with those efforts. As discussed herein, Mason does not appeal his status as a member of the Medical Benefits Settlement Class. Therefore, we need not and do not address whether the district court properly concluded that Mason is a member of the Medical Benefits Settlement Class whose claims constitute "Released Claims" under the Agreement.

5

Case: 15-30597    Document: 00513483751    Page: 6    Date Filed: 04/28/2016
Case 2:10-md-02179-CJB-DPC   Document 18460   Filed 05/03/16   Page 9 of 19

Nos. 15-30597 cons w/ No. 15-30598

court denied Mason's subsequent motion to reconsider or in the alternative to extend the opt-out deadline.[3]

After the Agreement became effective, Seacor moved for summary judgment on Mason's claims against it, citing the release provision of the Agreement. The district court granted the motion and entered final judgment in favor of Seacor, holding that Mason "is a member of the Medical Class" covered by the Agreement and that his claims against Seacor had been released by the Agreement. Additionally, in accordance with its denial of Mason's motion to sever, the district court concluded that Mason's motion to sever was not an effective opt out of the Agreement and that Mason's counsel received sufficient actual notice of that Agreement, and the court declined to extend the opt-out deadline for Mason. Mason timely appealed.

## II.

We have jurisdiction over this appeal from an order of final judgment under 28 U.S.C. § 1291. As a preliminary matter, Mason does not appeal his status as a member of the Medical Benefits Settlement Class. Moreover, there is no dispute that Mason did not follow the opt-out procedure set forth by the district court. Rather, Mason's appeal is best understood as raising two issues:

> 1. Whether the district court abused its discretion in failing to determine that Mason had opted out through informal means; and

---

[3] Mason moved for the district court to extend the deadline to opt out, and his appellate briefs include vague language concerning the district court's refusal to extend the opt-out deadline. Yet, Mason does not now appear to challenge the district court's refusal to extend the opt-out deadline. Even if he meant to pursue this issue on appeal, Mason's briefing is vague and entirely unsupported by any citations to authority. We thus do not consider whether the district court should have extended the time for Mason to opt out, as we find any argument on this issue abandoned through inadequate briefing. *See, e.g., Young v. Repine (In re Repine)*, 536 F.3d 512, 518 n.5 (5th Cir. 2008); *see also* FED. R. APP. P. 28(a)(8).

6

Case: 15-30597    Document: 00513483751    Page: 7    Date Filed: 04/28/2016
Case 2:10-md-02179-CJB-DPC   Document 18460   Filed 05/03/16   Page 10 of 19

Nos. 15-30597 cons w/ No. 15-30598

     2. Whether the district court erroneously determined that Mason had received sufficient notice of the Medical Benefits Settlement Agreement.

We address each issue in turn.

*A. Informal Opt Out*

As a threshold issue, Mason contends it is unclear what standard of review applies to whether a "non-formal" attempt to opt out should be recognized in these circumstances. To the extent we have not spoken on the proper standard of review for a district court's determination of whether a member of a class action proposed for settlement under Rule 23(b)(3) & (c)(2)(B) has opted out of that class, we hold that review is for an abuse of discretion. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1096 (5th Cir. 1977) ("In the management of class actions, Federal Rule Civil Procedure 23 necessarily vests the district courts with a broad discretion to enable efficacious administration of the course of the proceedings . . . ."); *see also Sanders v. John Nuveen & Co.*, 524 F.2d 1064, 1075 (7th Cir. 1975), *vacated on other grounds*, 425 U.S. 929 (1976); *cf. Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC*, 534 F.3d 469, 473 (5th Cir. 2008) (reviewing a district court's decision whether to extend the opt-out period for an abuse of discretion).

We have consistently applied the abuse of discretion standard in analogous contexts. *Cf. Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004) ("[A] district court's denial of a motion to opt out of a class certified under Rule 23(b)(2) is reviewed for abuse of discretion."); *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 679 (5th Cir. Unit B 1982) ("A district court's decision on class certification is reviewable only for abuse of discretion."). Other federal courts of appeals have also applied the abuse of discretion standard in similar circumstances. *See, e.g., In re Managed Care Litig.*, 605 F.3d 1146, 1150 (11th Cir. 2010) (reviewing "denials of requests for extensions of time to opt out and denials of assertions of judicial estoppel under the abuse-of-discretion

Case: 15-30597   Document: 00513483751   Page: 8   Date Filed: 04/28/2016
Case 2:10-md-02179-CJB-DPC   Document 18460   Filed 05/03/16   Page 11 of 19

Nos. 15-30597 cons w/ No. 15-30598

standard"); *In re Painewebber Ltd. Partnerships Litig.*, 147 F.3d 132, 135 (2d Cir. 1998) (similar); *cf. In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1208–10 (D.C. Cir. 2003) (reviewing for an abuse of discretion the district court's decision to allow an untimely opt out); *Silber v. Mabon*, 18 F.3d 1449, 1453 (9th Cir. 1994) (reviewing the denial of a motion to opt out for an abuse of discretion).

Having established the proper standard of review, we turn to Mason's arguments on the merits. In his first issue on appeal, Mason maintains that his conduct was sufficient to opt out of the Medical Benefits Settlement Agreement by informal means. In so arguing, he points to four actions: (1) the motion to sever; (2) the motion for reconsideration; (3) communication with the claims center; and (4) the request for an extension of the opt-out deadline. The latter three all occurred after the opt-out deadline, so we do not consider them. We consider only Mason's argument that the motion to sever should be deemed an effective "informal" opt out. *Cf. In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288, 1289–91 (10th Cir. 1974) (holding that conduct *prior to the opt-out deadline* was sufficient to constitute an opt out); *Council on Soc. Work Educ., Inc. v. Tex. Instruments Inc.*, 105 F.R.D. 68, 71 (N.D. Tex. 1985) (similar).

We have not directly addressed the degree to which an effort to opt out that does not conform to the designated procedures can be treated as an effective opt out. Case law from other circuits and from the district courts suggests that an opt out request need not perfectly conform to the format chosen by the district court or the proposed settlement agreement to effectively express a desire to opt out of a class action settlement. For example, in *In re Four Seasons Securities Laws Litigation*, the Tenth Circuit concluded that notice of an intent to opt out was communicated by a letter sent to a trustee and the plaintiffs' attorneys from a class-member bank, inquiring whether the

8

Case: 15-30597    Document: 00513483751    Page: 9    Date Filed: 04/28/2016
Case 2:10-md-02179-CJB-DPC   Document 18460   Filed 05/03/16   Page 12 of 19

Nos. 15-30597 cons w/ No. 15-30598

bank could submit a modified form so that it could remain a member of the class and still pursue a separate suit previously filed in state court. 493 F.2d at 1289–91; *see also Self v. Ill. Cent. R.R.*, No. CIV. A. 96-4141, 1999 WL 262099, at *1–2 (E.D. La. Apr. 29, 1999) (construing a motion to remand a case to state court as sufficiently expressing an intent to opt out when 586 individual plaintiffs "vigorously opposed" removal and inclusion with the class action and following remand, proceeded in state court without notice of the need to opt out of the federal action); *Bonner v. Tex. City Indep. Sch. Dist. of Tex.*, 305 F. Supp. 600, 617 (S.D. Tex. 1969) (declining to certify a class action and relying on the trial testimony of three potential class members that they did not wish to be involved in the action in any way as evincing a desire to opt out of the potential class).

These decisions logically follow from the desire not to require class members "to retain counsel and prepare a formal legal document" in order to opt out while preventing excessive informal opt outs that "might pose problems of authenticity and ambiguity." 7AA CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1787 (3d ed. 2005). In cases often involving hundreds of unrepresented and potentially unsophisticated parties, some courts have concluded that "considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to be excluded." *Id.* Although we have not addressed the precise requirements for allowing class members to informally opt out of class settlements, other courts have concluded that reasonableness is key. *Cf. In re Four Seasons*, 493 F.2d at 1291 ("A *reasonable* indication of a desire to opt out ought to be sufficient." (emphasis added)); *Plummer v. Chem. Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982) ("Any *reasonable* indication of a desire to opt out should suffice." (emphasis added)); *Johnson v. Hercules Inc.*, No. CV298-102, 1999 WL 35648160, at *5 (S.D. Ga. Apr. 28, 1999) ("The Court requires nothing more,

Case: 15-30597    Document: 00513483751    Page: 10    Date Filed: 04/28/2016
Case 2:10-md-02179-CJB-DPC   Document 18460   Filed 05/03/16   Page 13 of 19

Nos. 15-30597 cons w/ No. 15-30598

and nothing less, than an unequivocal, explicit, *reasonable*, and timely request for exclusion." (emphasis added)).

We need not decide whether to adopt the approach of these other courts because, even assuming arguendo that we did so, we are presented with vastly different circumstances in this case from those in these other cases. Rather than an informal but unequivocal expression of a desire to opt out or the submission of an imperfect opt out request, the conduct of Mason and his attorneys more closely resembles an after-the-fact attempt to depict completely distinct litigation conduct in another sphere as expressing a desire to opt out.

The district court provided sound reasons for refusing to treat the motion to sever as an opt out. Mason's attorney made clear in an affidavit filed with the district court that he had not discussed the need to opt out with his client before the opt-out date. Additionally, Mason did not sign the motion to sever. These facts show that the motion to sever could not have been interpreted as an informal but effective opt out in this case, to the extent that we would even recognize such an opt out. As the district court noted, the Agreement required that an opt out be signed by the class member, not the attorney, in order to "ensure that the exclusion was with the client's express consent." The district court noted that it "consistently enforced" this "common and practical requirement" throughout the MDL. Since Mason's attorney failed to discuss the need to opt out with his client before the opt-out deadline and Mason did not sign the motion to sever, the district court reasonably concluded the motion to sever could not have been interpreted as an effective opt out of the Agreement. Additional factors supporting the district court's decision include that the motion to sever itself was not "unequivocal" in evincing a desire to opt out, particularly in the event that it was denied. The district court also found relevant that Mason's attorney had actual notice of the settlement and said he

10

Case: 15-30597     Document: 00513483751     Page: 11     Date Filed: 04/28/2016
Case 2:10-md-02179-CJB-DPC   Document 18460   Filed 05/03/16   Page 14 of 19

Nos. 15-30597 cons w/ No. 15-30598

had "thoroughly investigated" the Agreement,[4] and that Mason's attorney had not followed a court-ordered procedure that would have given him additional information about the Agreement.

Additionally, the district court expressed concern about setting precedent for similar requests in the MDL. That concern has particular relevance in this litigation. Although a concern for encouraging clarity in opt out requests is relevant in many class actions, this case is no ordinary class action. It is particularly complex, even epic, given the number of plaintiffs and defendants, the different types of claims involved (represented by the various pleading bundles), and the thousands of filings before the district court. Indeed, the docket sheet for this case spans over 1,300 pages of the appellate record, representing almost 15,000 docket entries.

The gargantuan size and extraordinary complexity of this litigation therefore supports the district court's decision. This multidistrict litigation "consists of hundreds of cases, with over 100,000 individual claimants . . . ." *Ctr. for Biological Diversity*, 704 F.3d at 419. When the district court approved the Agreement, it noted the class had potentially 200,000 members and that over 1,700 individuals sent opt-out requests to the claims administrator. Given the size and complexity of this MDL proceeding, the court and parties should not have to intuit an opt out from vague statements made in one of thousands of filings before the court. To hold otherwise would allow class members to make ambiguous statements and motions while waiting to see if the outcome of the class action is favorable. The 1966 amendments to Rule 23 sought to

---

[4] As we discuss *infra*, notice to Mason's attorney is imputed to Mason. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 & n.10 (1962); *Resendiz v. Dretke*, 452 F.3d 356, 362 (5th Cir. 2006); *Wilson v. Sec'y, Dep't of Veterans Affairs on Behalf of Veterans Canteen Servs.*, 65 F.3d 402, 405 (5th Cir. 1995), *as amended on denial of reh'g* (Nov. 1, 1995); *cf. New York v. Hill*, 528 U.S. 110, 115 (2000).

Nos. 15-30597 cons w/ No. 15-30598

prevent exactly this type of gamesmanship. *See In re Nissan Motor*, 552 F.2d at 1104; *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999).[5]

The district court has "especially strong and flexible" managerial power in this highly complex MDL. *Ctr. for Biological Diversity*, 704 F.3d at 432. We will not disturb the eminently reasonable use of that discretion in this circumstance, which does not involve an unrepresented class member, an imperfect opt out request, or an unequivocal but informal expression of an intent to opt out. Accordingly, even assuming arguendo that a reasonable indication of a desire to opt out would suffice, we conclude that the district court did not abuse its discretion in determining that Mason's conduct did not reasonably indicate a desire to opt out of the Medical Benefits Settlement Class.

*B. Notice of the Medical Benefits Settlement Agreement*

In his second issue on appeal, Mason maintains that the notice of the Agreement was constitutionally deficient in both delivery and content. These objections seek to challenge the sufficiency of the notice given regarding the Medical Benefits Settlement Agreement, although this court has already affirmed the district court's order approving the Agreement and the attendant notice procedures. *See In re Deepwater Horizon*, 739 F.3d 790, 819–21 (5th Cir. 2014). In fact, BP and others challenged the sufficiency of the notice given to absent class members as part of that appeal, and a panel of this court

---

[5] Mason asserts that the district court erroneously failed to consider the complexity and confusing nature of his claim vis-à-vis the pleading bundles in determining whether he informally opted out. First, Mason has not identified any authority that this consideration is relevant under the law. Second, there is no indication that the district court failed to consider this fact. Third, even assuming this consideration is relevant to the informal opt-out analysis, the remaining facts still overwhelmingly support the district court's decision determining that Mason did not informally opt out, particularly since Mason was represented by counsel to aid him in any complexities.

12

Case: 15-30597     Document: 00513483751     Page: 13     Date Filed: 04/28/2016
Case 2:10-md-02179-CJB-DPC   Document 18460   Filed 05/03/16   Page 16 of 19

Nos. 15-30597 cons w/ No. 15-30598

concluded the district court did not abuse its discretion in finding notice of the Agreement was sufficient. *See id.* at 819.

"As a general rule, a judgment in a class action will bind the members of the class." *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1054 (5th Cir. 1979), *abrogated in part on other grounds by Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 560 (5th Cir. 1983). Since Mason does not appeal his status as a member of the Medical Benefits Settlement Class or whether his claims are now "Released Claims" under the Agreement, the judgment affirming approval of the Agreement would typically bar his challenge to notice given about the Agreement.

However, there is an "exception to this rule[,] grounded in due process." *Kemp*, 608 F.2d at 1054. For example, the Eleventh Circuit has held that "[a]bsent class members can collaterally challenge the res judicata effect of a prior class judgment . . . because there was not adequate notice . . . ." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1312–13 (11th Cir. 2012). We held similarly in an unpublished opinion, ultimately concluding that a class member who was not truly absent and who received the required notice was precluded from challenging the prior class action judgment. *See Hunter v. Transamerica Life Ins. Co.*, 498 F. App'x 430, 435 (5th Cir. 2012)[6]; *cf. Gonzales v. Cassidy*, 474 F.2d 67, 74 (5th Cir. 1973).

The facts of this case indicate that Mason may not collaterally attack the class action judgment. Mason argues he was deprived of due process because Mason's attorney did not realize Mason would be considered a member of the Medical Benefits Settlement Class, did not receive any of the electronic filing notifications from the MDL, did not receive the Class Action Settlement

---

[6] Although *Hunter* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

13

Case: 15-30597     Document: 00513483751     Page: 14     Date Filed: 04/28/2016
Case 2:10-md-02179-CJB-DPC   Document 18460   Filed 05/03/16   Page 17 of 19

Nos. 15-30597 cons w/ No. 15-30598

Notification, and paid no attention to published notifications regarding the Agreement. While *absent* class members may collaterally attack a class action judgment for a lack of notice and due process, Mason was arguably not absent because his counsel had actual notice of the Agreement. *See Hunter*, 498 F. App'x at 435; *Kemp*, 608 F.2d at 1054. Mason's attorney represented to the district court that he discussed the Agreement with the "Plaintiffs' Steering Committee handling the MDL" and that he "thoroughly investigated the nature of the [Agreement]." Even if he elected not to sign up to receive electronic notifications of filings in the MDL, in contravention of the district court's orders, Mason's attorney clearly had notice of the Agreement itself.[7]

These circumstances are inconsistent with the usual context in which we allow collateral attacks by an absent class member who lacked notice and any opportunity to object to a proposed settlement agreement. *Cf. Juris*, 685 F.3d at 1312–14. It is well established that notice to Mason's attorney is imputed to Mason. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 & n.10 (1962); *Resendiz v. Dretke*, 452 F.3d 356, 362 (5th Cir. 2006); *Wilson v. Sec'y, Dep't of Veterans Affairs on Behalf of Veterans Canteen Servs.*, 65 F.3d 402, 405 (5th Cir. 1995), *as amended on denial of reh'g* (Nov. 1, 1995). "Thus, this is not a case where an absent class member did not receive notice at all." *Hunter*, 498 F. App'x at 435. Mason had actual notice through his counsel, which satisfies due process.[8] *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260,

---

[7] Because we determine that Mason's counsel received actual notice, we do not address BP and Seacor's arguments that constructive notice given in this case also satisfies due process requirements.

[8] Although we conclude Mason is precluded from collaterally attacking the judgment approving the Agreement, even if we assumed arguendo that Mason could attack the notice related to the Agreement, we would find his challenge meritless. Mason claims, inter alia, that the notice was deficient because "nothing in the notice would have alerted Mason that his Jones Act claims against Seacor, his employer, were subsumed in the settlement . . . ." Yet, the notice explicitly stated that "BP and all of the 'Released Parties' (identified in Section II.MMMM of the Medical Benefits Settlement Agreement)" would be released by the

Nos. 15-30597 cons w/ No. 15-30598

272 (2010) (holding that the receipt of actual notice regarding the contents of a Chapter 13 plan satisfied the creditor's due process rights); *Kemp*, 608 F.2d at 1054.[9]

For these reasons, the judgment of the district court is AFFIRMED.

---

Agreement for class members who did not opt out. Seacor is identified in the Agreement as a Released Party, an Agreement Mason's counsel claimed to have "thoroughly investigated." Even if Seacor was not specifically named in the notice sent to class members, other courts have found such notice sufficient. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 104–05, 109, 114 (2d Cir. 2005); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006).

[9] *See also Nunley v. Dep't of Justice*, 425 F.3d 1132, 1139 (8th Cir. 2005) (noting in the context of a forfeiture notice that "a person cannot complain about the constitutionality of the method used to provide notice when he or she has received actual notice (assuming it is timely), for he or she has suffered no harm"); *see, e.g.*, *Diaz v. Romer*, 9 F.3d 116, 1993 WL 425143, at *1 (10th Cir. 1993) (unpublished) ("Because [the class member] had actual notice of the settlement agreement, he was not denied due process.").

15

# United States Court of Appeals

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

April 28, 2016

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

    **No. 15-30597   Cons w/No. 15-30598**
                       **In Re: Deepwater Horizon**
                       USDC No. 2:10-MD-2179
                       USDC No. 2:10-CV-3896
                       USDC No. 2:11-CV-826

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                            Sincerely,

                            LYLE W. CAYCE, Clerk

                            By: _____
                            Sabrina B. Short, Deputy Clerk
                            504-310-7817

cc:
    Mr. Andrew Joseph Baer
    Mr. Jeffrey Bossert Clark Sr.
    Mr. Richard Cartier Godfrey
    Mr. Jeremy Thomas Grabill
    Mr. Gary Alan Hemphill
    Mr. James Andrew Langan
    Mr. Michael J. Lyle
    Mr. Eric Christopher Lyttle
    Ms. Nancy Jane Marshall
    Mr. Joseph Lee McReynolds
    Mr. Patrick E. O'Keefe
    Mr. Scott Eric Silbert
    Ms. Sylvia E. Simson
    Mr. Joseph P. Tynan