IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 15-30574

_____

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:12-CV-970

United States Court of Appeals
Fifth Circuit
**FILED**
April 8, 2016
Lyle W. Cayce
Clerk

IN RE: DEEPWATER HORIZON

_____

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED, ET AL.,

    Plaintiffs

v.

BP EXPLORATION & PRODUCTION, INCORPORATED, ET AL.,

    Defendants

JASON ZIRLOTT; CAPTAIN JAY, L.L.C.,

    Movants - Appellants

v.

LOUIS J. FREEH,

    Appellee

**Certified as a true copy and issued as the mandate on May 02, 2016**

**Attest:**
*Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that movants-appellants pay to appellee the costs on appeal to be taxed by the Clerk of this Court.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 15-30574

IN RE: DEEPWATER HORIZON

───────────────────────

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED, ET AL.,

  Plaintiffs

v.

BP EXPLORATION & PRODUCTION, INCORPORATED, ET AL.,

  Defendants

JASON ZIRLOTT; CAPTAIN JAY, L.L.C.,

  Movants - Appellants

v.

LOUIS J. FREEH,

  Appellee

United States Court of Appeals
Fifth Circuit
**FILED**
April 8, 2016
Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-970
USDC No. 2:10-MD-2179

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

No. 15-30574

PER CURIAM:[*]

In 2014, Special Master Louis J. Freeh filed a motion with the district court overseeing the *Deepwater Horizon* settlement fund to have Capt Jay, LLC, and Jason Zirlott remit monetary amounts that they collected from the fund. Freeh argued that Capt Jay and Zirlott had submitted fraudulent claims for compensation and separately moved for the district court to bar Capt Jay and Zirlott from further collecting from the settlement fund. Exercising its continuing supervision over the settlement fund, the district court granted both motions. Capt Jay and Zirlott timely appealed. We hold that the district court did not abuse its discretion when it granted both motions and AFFRIM the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the multidistrict litigation (MDL), *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 10-MD-2179, that resulted after a number of private plaintiffs brought civil claims against BP plc in the wake of the 2010 Deepwater Horizon oil spill. The claims were consolidated into the *Deepwater Horizon* MDL, and the matter was transferred by the United States Judicial Panel on Multidistrict Litigation to Judge Carl Barbier in the United States District Court for the Eastern District of Louisiana on August 10, 2010. In 2012, counsel for BP and the Plaintiffs Steering Committee (PSC) in the MDL reached an agreement to settle claims for economic damages arising from the oil spill. And on December 21, 2012, the district court approved the *Deepwater Horizon* Economic and Property Damages Settlement Agreement (Settlement Agreement). Included under the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

Case: 15-30574    Document: 00513487033    Page: 3    Date Filed: 05/02/2016
Case 2:10-md-02179-CJB-DPC   Document 18463   Filed 05/03/16   Page 5 of 14

No. 15-30574

Settlement Agreement was a Seafood Compensation Plan that covered commercial fishermen, seafood crews, or seafood vessel owners that operated vessels in Gulf Coast areas around the time of the Deepwater Horizon oil spill. To implement and administer the Settlement Agreement, the court established the *Deepwater Horizon* Court Supervised Settlement Program (Settlement Program) whereby entities and individuals, who fell within the settlement class, could submit claims for compensation for economic losses. Under the terms of the Settlement Agreement, the court retained continuing and exclusive jurisdiction over the administration of claims under the Settlement Program and was tasked with resolving disputes concerning the enforcement of the Settlement Agreement.

On July 2, 2013, the district court appointed Louis J. Freeh as Special Master, pursuant to Federal Rule of Civil Procedure 53, on suspicion that ethical violations and other misconduct were taking place in the Settlement Program. Freeh was tasked with performing an external investigation of the Settlement Program, conducting fact finding as to possible ethical violations or misconduct in the Settlement Program, and examining internal compliance programs and anti-corruption controls. On September 6, 2013, the district court directed Freeh to investigate any past or pending claims submitted to the Settlement Program and to initiate legal action in order to recover any funds paid out on fraudulent claims by the Settlement Program. Freeh's investigation turned to claims submitted by Capt Jay, LLC, and Jason Zirlott for lost commercial fishing income, for which they had received payment from the Settlement Program.

Capt Jay, an Alabama company engaged in commercial fishing and water debris cleanup, had filed a shrimp vessel owner claim with the Settlement Program on November 19, 2012, seeking compensation from the Seafood Compensation Program. Zirlott, an employee of Capt Jay, filed his

Case: 15-30574    Document: 00513487033    Page: 4    Date Filed: 05/02/2016
Case 2:10-md-02179-CJB-DPC   Document 18463   Filed 05/03/16   Page 6 of 14

No. 15-30574

own shrimp vessel captain claim thereafter. In support of their claims, Capt Jay and Zirlott submitted supporting documentation that included accounting statements, official licenses, and tax forms that Capt Jay filed with the Internal Revenue Service (IRS) from 2007 to 2009. In submitting their claims, Capt Jay and Zirlott both filed sworn, written statements on November 29, 2012, that Capt Jay's 2009 gross receipts from shrimping in Gulf Coast areas totaled $162,364—a figure that matched Capt Jay's gross receipts in the Form 1065 it submitted to the IRS in 2009. Based on the documentation provided, the Settlement Program determined that Capt Jay was entitled to $248,371.29 on its claim but awarded the company $85,357.82, based on deductions for prior payments from the Settlement Program. The Settlement Program determined that Zirlott was entitled to $196,906.96 on his shrimp vessel captain claim but, after adding reimbursement for accounting expenses, increased the award to $197,384.31. Capt Jay's and Zirlott's attorneys at the time received $43,222.81 in attorneys' fees for handling the claims.[1]

On October 7, 2014, Freeh, pursuant to his duties as Special Master, moved to have Capt Jay and Zirlott remit the payments they received from the Settlement Program and moved for an order prohibiting both from receiving any more compensation from the Settlement Program. According to Freeh, subsequent investigation revealed that Capt Jay and Zirlott had submitted fraudulent claims for compensation. In particular, Freeh alleged that Capt Jay and Zirlott knowingly presented false information and concealed information when they claimed that their 2009 revenue came from shrimping activities alone when, in fact, over 80 percent of this revenue came from marine debris cleanup work. And in a separate motion, Freeh argued that this

---

[1] The attorneys later withdrew from further representation of both claimants and repaid their fees to the Settlement Program on October 3, 2014.

4

Case: 15-30574    Document: 00513487033    Page: 5    Date Filed: 05/02/2016
Case 2:10-md-02179-CJB-DPC   Document 18463   Filed 05/03/16   Page 7 of 14

No. 15-30574

deceptive conduct precluded Capt Jay and Zirlott from collecting further amounts from the Settlement Program. Capt Jay and Zirlott opposed both of Freeh's motions. They argued that they reasonably believed marine debris cleanup could be compensable under the Settlement Program, provided all materials disclosing their income, and innocently made any alleged misrepresentations.

The district court granted both of Freeh's motions on June 24, 2015. Interpreting the terms of the Seafood Compensation Plan, the district court rejected any argument that Capt Jay and Zirlott's marine debris cleanup was covered by the Settlement Agreement. According to the district court, Capt Jay and Zirlott had not merely filed tax returns with the Settlement Program but had personally averred, in sworn statements, that all of their revenue came "from 'shrimp' landed in 2009." The district court therefore concluded, as a matter of law, that Capt Jay and Zirlott had committed fraud.[2] In light of this finding, the court entered final judgment under Rule 54(b), ordering restitution of the amounts Capt Jay and Zirlott had received and barring both parties from further participation in the Settlement Program. Capt Jay and Zirlott timely appealed on July 1, 2015.[3]

## II. STANDARD OF REVIEW

We have acknowledged that "a district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("[A] court has the power to conduct an independent investigation in order to determine whether

---

[2] The court rejected ancillary arguments from Capt Jay and Zirlott that they had not signed the sworn statements, only their lawyers had, and that entities responsible for administering the Settlement Program were at fault for not discovering the misinformation in the claims.

[3] On appeal, Special Master Louis J. Freeh defends the district court's judgment.

5

Case: 15-30574 Document: 00513487033 Page: 6 Date Filed: 05/02/2016
Case 2:10-md-02179-CJB-DPC Document 18463 Filed 05/03/16 Page 8 of 14

No. 15-30574

it has been the victim of fraud."). We review a district court's exercise of this inherent power, absent any challenge to the underlying settlement, "for abuse of discretion." *In re DEEPWATER HORIZON*, 786 F.3d 344, 354 (5th Cir. 2015). Similarly, "[w]e review the imposition of sanctions [under a court's inherent power] for an abuse of discretion." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Harmon v. Journal Pub. Co.*, 476 F. App'x 756, 757 (5th Cir. 2012) (per curiam) (unpublished) (citation omitted). We review *de novo* any questions regarding the interpretation of a settlement agreement as questions of law. *Waterfowl Ltd. Liab. Co. v. United States*, 473 F.3d 135, 141 (5th Cir. 2006).

## III. FRAUD AND SANCTIONS

Before proceeding to the merits of Capt Jay and Zirlott's appeal regarding fraud, we note that the parties dispute which substantive law the district court should have applied in finding fraud. Capt Jay and Zirlott, without explanation, argue that Alabama substantive law applies to the instant matter and that the district court could not have found fraud under Alabama law. In response, Freeh argues that general maritime law applies to issues arising under the Settlement Program. We hold that general maritime law applies to the instant matter. This is because the Settlement Agreement, by its express terms, states that its interpretation and enforcement is governed by general maritime law and the Oil Pollution Act of 1990 (OPA).[4] *See In re*

---

[4] Section 36.1 of the Agreement states:

Notwithstanding the law applicable to the underlying claims, which the Parties dispute, this Agreement and the Release and Individual Releases hereunder shall be interpreted in accordance with General Maritime Law as well as in a manner intended to comply with OPA.

6

Case: 15-30574 Document: 00513487033 Page: 7 Date Filed: 05/02/2016
Case 2:10-md-02179-CJB-DPC Document 18463 Filed 05/03/16 Page 9 of 14

No. 15-30574

*Deepwater Horizon*, 739 F.3d 790, 804 n.53 (5th Cir. 2013) (noting that the Settlement Agreement is governed by the substantive law of the OPA and federal maritime law). Because general maritime law applies, we apply traditional common law fraud rules to determine whether the district court abused its discretion in finding fraud. *See Johnson v. GlobalSantaFe Offshore Servs, Inc.*, 799 F.3d 317, 321 (5th Cir. 2015) ("Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." (quoting *E. River S.S. Corp. v Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986))). We have recognized that common law fraud exists where:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance on upon the representation; and (6) the party suffered injury.

*In re DEEPWATER HORIZON*, 786 F.3d at 363 (quoting *O'Hare v. Graham*, 455 F. App'x 377, 379–80 (5th Cir. 2011) (per curiam) (unpublished)); *see also Black Gold Marine, Inc. v. Jackson Marine Co., Inc.*, 759 F.2d 466, 470 (5th Cir. 1985). Under common law principles, "[a] transfer induced by fraud or material misrepresentation is subject to rescission and restitution." Restatement (Third) of Restitution and Unjust Enrichment § 13 (Am. Law Inst. 2011).

The district court here did not abuse its discretion in finding fraud and ordering restitution based on the facts before it. Capt Jay and Zirlott defrauded the Settlement Program when they filed sworn statements affirming that the revenue shown on their 2009 tax returns came only from commercial shrimp landings, when in fact 80 percent of the revenue came from marine debris cleanup. As the district court properly concluded, the

7

Case: 15-30574    Document: 00513487033    Page: 8    Date Filed: 05/02/2016
Case 2:10-md-02179-CJB-DPC   Document 18463   Filed 05/03/16   Page 10 of 14

No. 15-30574

Settlement Agreement's Shrimp Compensation Plan governs the compensation criteria under the Settlement Agreement.[5] And that Compensation Plan specifically provides compensation for loss of revenue from "shrimp landings in the Gulf Coast Areas," but not for marine debris cleanup. Therefore, Capt Jay and Zirlott made knowingly false representations when seeking compensation from the Settlement Program for their marine debris cleanup work. In turn, the Settlement Program relied on these misrepresentations in dispersing money from the settlement fund to Capt Jay and Zirlott.

Capt Jay and Zirlott argue that any misrepresentation was at most a misunderstanding based on the ambiguity of the terms of the Settlement Agreement and on Zirlott's high-school-level education. However, the district court specifically found that Zirlott knew his claim for compensation to be false when he made it, as Zirlott stated on a claim form "that he had earned $162,364 'from the sales of fish'" in 2009. And while Capt Jay and Zirlott asserted that the Compensation Plan was ambiguous, the district court also found that the Compensation Plan's criteria were "unambiguous" so that Capt Jay and Zirlott could not have been mistaken that marine debris cleanup was not covered by the Settlement Agreement.

---

[5] The Shrimp Compensation Plan was attached as an exhibit to the Settlement Agreement and states:

> The Seafood Compensation Program shall cover and compensate Commercial Fishermen, Seafood Boat Captains, all other Seafood Crew, Oyster Leaseholders, and Seafood Vessel Owners for economic loss claims relating to Seafood. All economic loss claims by Commercial Fishermen, Seafood Boat Captains, all other Seafood Crew, Oyster Leaseholders, and Seafood Vessel Owners relating to Seafood will be part of and must be brought under the Seafood Compensation Program.

Capt Jay and Zirlott cite a number of federal regulations and other authorities that they argue make it reasonable to assume that marine debris cleanup revenue was compensable under the Settlement Program. These authorities are inapposite.

Case: 15-30574     Document: 00513487033     Page: 9     Date Filed: 05/02/2016
Case 2:10-md-02179-CJB-DPC   Document 18463   Filed 05/03/16   Page 11 of 14

No. 15-30574

Alternatively, Capt Jay and Zirlott argue that the common law requirement of reliance for fraud is not satisfied here because they submitted all of their documentation and an inspection of this documentation would have revealed that 80 percent of Capt Jay's revenue came from marine debris cleanup. Capt Jay and Zirlott's alternative arguments on reliance are also without merit. For common law fraud, we look to justifiable reliance as the common law standard for reliance. *See Field v. Mans*, 516 U.S. 59, 71–75 (1995). Under this standard, unless a fraudulent misrepresentation is patently apparent, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id.* at 70 (quoting Restatement (Second) of Torts, § 540 (Am. Law Inst. 1976)). The documents filed by Capt Jay and Zirlott suggested that their 2009 revenue came from shrimping and not marine debris cleanup, and Capt Jay and Zirlott do not suggest how any misrepresentation would have been patently apparent to the administrators of the Settlement Program. Moreover, reliance is not lacking because the administrators failed to investigate the claims more thoroughly, as "[t]he requirement of [justifiable reliance] does not impose a duty of active investigation on a plaintiff, and does not entitle a defendant to exploit a plaintiff's foolishness with impunity." Restatement (Third) of Torts: Liab. for Econ. Harm § 11 cmt. d (Am. Law Inst. 2014).

The district court similarly did not abuse its discretion in imposing sanctions that prohibited Capt Jay and Zirlott from further participating in the Settlement Agreement's Seafood Compensation Program.[6] Within its

---

[6] Capt Jay and Zirlott argue that the district court applied judicial estoppel in barring them from further participation in the Settlement Program and that the elements of judicial estoppel are not present in its case. While the district court did not make clear whether it was exercising its inherent power to sanction or applying judicial estoppel, we interpret its judgment as exercising its inherent power to sanction. *See Blanco River, L.L.C. v. Green*, 457

9

Case: 15-30574    Document: 00513487033    Page: 10    Date Filed: 05/02/2016
Case 2:10-md-02179-CJB-DPC   Document 18463   Filed 05/03/16   Page 12 of 14

No. 15-30574

"inherent powers," a district court has "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44–45. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. Accordingly, when "invoking its inherent power" to sanction, a district court "must comply with the mandates of due process." *Id.* at 50. And we have noted that sanctions under a district court's inherent powers generally require a finding of "bad faith" by the district court. *In re Sealed Appellant*, 194 F.3d 666, 671 (5th Cir. 1999). But "specific findings [of bad faith] are unnecessary to understand the misconduct giving rise to [a] sanction," "[w]hen bad faith is patent from the record" and "may be inferred." *Id.*

The district court complied with due process when it gave Capt Jay and Zirlott the opportunity to respond in writing to Freeh's motion that they be barred from receiving further compensation. *See Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1192 (5th Cir. 1996) ("[T]he opportunity to respond through written submissions [to motions for sanctions] usually constitutes sufficient opportunity to be heard."). And, as previously mentioned, the district court made the requisite finding of bad faith when it found that Capt Jay and Zirlott had engaged in fraud by falsely misrepresenting that all of their 2009 revenue came from shrimping. *See Chambers*, 501 U.S. at 46 ("[I]f a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess [sanctions] against the responsible party . . . as it may when a party 'shows bad faith.'" (citations omitted)); *cf. Takeda Chem. Indus., Ltd. v. Mylan Lab., Inc.*, 549 F.3d 1381, 1391 (Fed Cir. 2008) (noting

---

F. App'x 431, 438–40 (5th Cir. 2012) (per curiam) (unpublished) (determining the basis for sanctions from a district court where the basis was not mentioned by the district court); *Hazeur v. Keller Indus.*, No. 92-3488, 1993 WL 14973, at *5–6 (5th Cir. Jan. 11, 1993) (per curiam) (unpublished) (noting that a court does not have to expressly state that it is sanctioning under its inherent power to comply with due process).

No. 15-30574

that conduct that did not amount to fraud could still be considered bad faith and subject a party to sanctions). Based on these facts, the district court did not abuse its discretion by barring Capt Jay and Zirlott from collecting funds from the Settlement Program.

## IV. CONCLUSION

For the reasons herein, we AFFIRM the district court's judgment.

11

# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

May 02, 2016

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

    No. 15-30574   In Re: Deepwater Horizon
                       USDC No. 2:10-MD-2179
                       USDC No. 2:12-CV-970

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                             Sincerely,

                             LYLE W. CAYCE, Clerk

                             By: _____
                             Dawn D. Victoriano, Deputy Clerk
                             504-310-7717

cc:    Mr. Gregory A. Paw
        Mr. Martin Edward Regan Jr.