IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 15-30395

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:12-CV-970

United States Court of Appeals
Fifth Circuit
**FILED**
March 8, 2016
Lyle W. Cayce
Clerk

**Certified as a true copy and issued as the mandate on May 10, 2016**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

In Re: DEEPWATER HORIZON

*******************************************************

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED, ET AL.,

    Plaintiffs

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

    Defendants - Appellees

v.

JOHNNY SEXTON,

    Claimant - Appellant

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that claimant-appellant pay to defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 15-30395

United States Court of Appeals
Fifth Circuit
**FILED**
March 8, 2016
Lyle W. Cayce
Clerk

In Re: DEEPWATER HORIZON

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

LAKE EUGENIE LAND ; DEVELOPMENT, INCORPORATED, ET AL.,

    Plaintiffs

v.

BP EXPLORATION ; PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

    Defendants - Appellees

v.

JOHNNY SEXTON,

    Claimant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-MD-2179

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PER CURIAM:\*

---

   \* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30395

For at least the ninth time[1] since the institution of the Economic and Property Damages Class Action Settlement in *In re: Oil Spill by the Oil Rig "Deepwater Horizon,"* MDL No. 2179, we are called upon to review the actions of the Court Supervised Settlement Program and the district court judge under the terms of the settlement agreement. That agreement is described at length in the district court's final approval order. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 903–10 (E.D. La. 2012) *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). The present case involves a putative claim on the Seafood Compensation Fund, a $2.3 billion fund intended to compensate fishermen, crew, and other seafood industry participants for any decline in revenue they suffered as a result of the Deepwater Horizon explosion and oil spill.

Seafood Claims are subject to unique treatment under the Settlement Agreement. Unlike other types of claims, they were to be satisfied out of a limited fund. This meant that Seafood Claims could not be paid on a rolling basis; the number and value of claims had to be known before total distribution of the fund could be accomplished. To expedite that process, the Settlement Agreement set a much earlier bar date for claims on the Seafood Compensation Fund as opposed to other types of claims. *Compare* Settlement Agreement ¶ 5.11.9 (Seafood Claims due "30 days after the date of entry of the Final Order and Judgment by the Court") *with id.* ¶ 4.4.4 (all other claims due "April 22, 2014 or six (6) months after the Effective Date, whichever occurs later").

---

[1] *In re Deepwater Horizon*, — F.3d —, 2016 WL 759890 (5th Cir. Feb. 25, 2016); *In re Deepwater Horizon*, — Fed. App'x —, 2015 WL 8476589 (5th Cir. Dec. 9, 2015); *In re Deepwater Horizon*, 793 F.3d 479 (5th Cir. 2015); *In re Deepwater Horizon*, 785 F.3d 1003 (5th Cir. 2015); *In re Deepwater Horizon*, 785 F.3d 986 (5th Cir. 2015); *In re Deepwater Horizon*, 616 Fed. App'x 699 (5th Cir. 2015); *In re Deepwater Horizon*, 744 F.3d 370 (5th Cir. 2014); *In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013).

No. 15-30395

The Program began accepting Seafood Claims before the Settlement Agreement achieved final approval by the district court, and continued taking those claims for 30 days after final approval. In total, the Program accepted Seafood Claims over a 7-month period between June 2012 and January 2013.

In addition to setting a deadline for filing, the Settlement Agreement specified what needed to be filed for a Seafood Claim to be processed. These included a sworn Claim Form and documentation to support the claimant's past income and availability for employment during the months of the oil spill.

Johnny Sexton worked as a deckhand on a fishing vessel out of Santa Rosa Beach, Florida. He hired a law firm to file a Seafood Claim on his behalf. Sexton's Seafood Claim filing was handled by a legal assistant at the firm. The day before the bar date, the legal assistant filed a Registration Form and certain supporting documentation for Sexton. He filed these documents as a favor to a coworker at the firm who was more familiar with the claims filing process. The legal assistant did not file a sworn Claim Form for Sexton,[2] and later explained that he did not realize he needed to.

Two months after the January 2013 bar date, when the legal assistant's error was discovered, Sexton's law firm reached out to the Claims Administrator to explain the error and request an extension. As the firm was awaiting a response, the Claims Administrator announced a policy for dealing with late-filed Seafood Claims (the Untimely Seafood Claims Procedure). As relevant here, that policy specified that an untimely claim would be reviewed for "excusable neglect" under the following factors:

---

[2] It is unclear whether there was a Claim Form to be filed at the time the legal assistant uploaded Sexton's Registration Form and supporting documentation. Evidence in the record suggests that Sexton's Claim Form was not finalized until many months later.

3

Case: 15-30395　　Document: 00513499914　　Page: 4　　Date Filed: 05/10/2016
Case 2:10-md-02179-CJB-DPC   Document 18467   Filed 05/16/16   Page 6 of 11

No. 15-30395

(1)　　The danger of prejudice to all Seafood Compensation Program Claimants who submitted and prosecuted timely Seafood Claim Forms;

(2)　　The length of the tardy-filing Claimant's delay or Claimant's counsel's delay beyond the 1/22/13 Bar Date;

(3)　　The potential impact the tardy-filing will have on the Seafood Compensation Program; and

(4)　　The reason for the tardy-filing Claimant's delay or Claimant's counsel's delay, including (a) whether the delay was within the reasonable control of the Claimant or the Claimant's counsel and (b) whether the Claimant or the Claimant's counsel acted in good faith.

The policy concluded that the "bar for excusing a Claimant's or Claimant's Counsel's neglect will necessarily be high."

Pursuant to this policy, the Program denied the law firm's request for an extension on Sexton's Seafood Claim. The law firm sought reconsideration within the Program. When that was unsuccessful, the law firm filed a motion for relief with the district court. The motion was styled as a "motion for extension," but both parties have treated it—and we will as well—as a motion for discretionary review under Paragraph 6.6 of the Settlement Agreement. *See* Settlement Agreement ¶ 6.6 ("The Court maintains the discretionary right to review any Appeal determination [by the Program] to consider whether the determination was in compliance with the Agreement."). The district court summarily denied the motion without responsive briefing or a hearing.

Sexton asks us to provide the extension that the Program and the district court did not. He faults the Program and district court for (1) not properly applying the "excusable neglect" standard in his case and (2) not treating the filing of his Registration Form and supporting documents as the filing of a timely (albeit insufficiently supported) Claim.

4

No. 15-30395

Our touchstone for this appeal is the Settlement Agreement itself. Its terms govern the claims administration process. And they do not provide any grounds for disturbing the Program's and district court's actions regarding Sexton's untimely Seafood Claim. We note the features of the Settlement Agreement which compel this conclusion.

First, the Settlement Agreement established a clear bar date for Seafood Claims. That deadline is contained both within the Settlement Agreement itself and in a separate protocol for the Seafood Compensation Fund attached to the Settlement Agreement. *See* Settlement Agreement ¶ 5.11.9; Seafood Compensation Program (Exhibit 10) at 2. The protocol states that "[a]ny claim . . . not filed as of the Bar Date shall be rejected." *See* Exhibit 10 at 71, 78. The district court noted that the Seafood Compensation Program bar date was well publicized and widely known.

Second, the Settlement Agreement specifies in several places that the event which must be accomplished by any given bar date—in other words, the event that constitutes the filing of a claim—is the filing of the Claim Form. *See* Settlement Agreement ¶¶ 4.4.4, 5.11.8, 5.11.9; *see also* Exhibit 10 at 2. That the Claim Form must be "sworn" is emphasized by the Settlement Agreement and the Seafood Compensation Fund protocol. *See* Settlement Agreement ¶¶ 4.4.5, 5.11.10; *see also* Exhibit 10 at 2, 67, 71, 78-79.

Third, each type of claim has different requirements for what supporting documents (in addition to the Claim Form) must be provided to substantiate the claim. Perhaps in recognition of the complexity of the various protocols, the Settlement Agreement provided for a second layer of review on whether a claim's supporting documentation is sufficient for the claim to be processed. *See* Settlement Agreement ¶ 6.1.1. In the event that a claim's supporting documentation is deemed or conceded to be insufficient, the Settlement Agreement provides that "at any time prior to termination of the Settlement

5

Case: 15-30395     Document: 00513499914     Page: 6     Date Filed: 05/10/2016
Case 2:10-md-02179-CJB-DPC   Document 18467   Filed 05/16/16   Page 8 of 11

No. 15-30395

Agreement" the claimant can "resubmit the Claim." *See id.* ¶ 6.1.1.1. There is no similar scheme for missing Claim Forms. This underscores the point made above—the event that triggers the recognition of a claim is the filing of the Claim Form. In other words, the Settlement Agreement does not support treating the filing of supporting documentation without a Claim Form (as Sexton did) as equivalent to filing a claim.[3]

Fourth, the supervisory role of the district court is limited to discretionary review of the outcomes of internal appeals conducted by the Settlement Program itself, *see* Settlement Agreement ¶ 6.6, and to "enforce[ment], implement[ation], and interpret[ation]" of the Settlement Agreement, *id.* ¶ 18.1.

Against that backdrop, there is no basis for finding that the Claims Administrator acted contrary to the Settlement Agreement or that the district court abused its discretion by summarily denying Sexton's "motion for extension." As Sexton himself concedes, the Settlement Agreement does not provide "any procedure for requesting extension [of filing deadlines] or appealing denials of such requests." The Claims Administrator's Untimely Seafood Claims Procedure filled a blank space in the Settlement Agreement. Assuming that there was authority for such improvisation,[4] the Procedure is not based on any language in the Settlement Agreement itself. Therefore, the

---

[3] This is fatal to Sexton's equitable tolling argument.

[4] This court has recognized in the past that the Claims Administrator cannot reasonably administer the Settlement Program without devising some additional procedures and policies. *See In re Deepwater Horizon*, 785 F.3d 986, 997–1103 (5th Cir. 2015) (reviewing Final Rules promulgated by the Claims Administrator for conformity with the Settlement Agreement, the Federal Rules, and prior appeals). Moreover, the Settlement Agreement contemplates such action by the Claims Administrator. *See* Settlement Agreement ¶ 4.3.1 (providing that Claims Administrator shall "implement and administer the Settlement" in accordance with the Settlement Agreement "and/or as agreed to by the Parties and/or as approved by the Court"); *id.* ¶ 6.3 (providing that the "Settlement Program may establish additional procedures for the Appeal Process not inconsistent with Exhibit 25").

Case: 15-30395   Document: 00513499914   Page: 7   Date Filed: 05/10/2016
Case 2:10-md-02179-CJB-DPC   Document 18467   Filed 05/16/16   Page 9 of 11

No. 15-30395

Settlement Agreement is of no help in determining whether the Claims Administrator properly administered its own policy. More importantly, Sexton does not argue that the substance of the Untimely Seafood Claims Procedure was contrary to the Settlement Agreement. He simply argues that it was misapplied to the circumstances of his case.

Ultimately Sexton's appeal fails because the Untimely Seafood Claims Procedure established a discretionary standard for admitting late-filed Seafood Claims. Sexton tries to argue that the discretion was abused by referencing case law on "excusable neglect" as that term is invoked in various federal rules and statutes.[5] While the Procedure was modeled on the excusable neglect standard, it was tailored to fit the requirements of the Seafood Compensation Program. It presumed prejudice for every late-filed Claim given the nature of the limited Seafood Compensation Fund and the intent to make two rounds of distributions to approved claimants. And the other factors of the test were equivocal in Sexton's case.

We need not dwell on whether we would have reached the same result as the Claims Administrators had we applied the Untimely Seafood Claims Procedure in the first instance. Because it set a discretionary standard, with

---

[5] The most important of these cases is *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), which established the following factors for assessing "excusable neglect" in a case involving Bankruptcy Rule 9006(b)(1):

(1) danger of prejudice to the opposing party;

(2) the length of the delay and its potential impact on judicial proceedings;

(3) the reason for the delay, including whether it was within the reasonable control of the movant; and

(4) whether the movant acted in good faith.

The Fifth Circuit has adapted the *Pioneer* factors to a number of different procedural rules. *See, e.g., Silvercreek Mgmt., Inc. v. Banc of America Secs., LLC*, 534 F.3d 469, 472 (5th Cir. 2008) (Federal Rule of Civil Procedure 60(b)); *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 469 (5th Cir. 1998) (Federal Rule of Appellate Procedure 4(a)(5)); *United States v. Clark*, 51 F.3d 42, 44 (5th Cir. 1995) (Federal Rule of Appellate Procedure 4(b)).

Case: 15-30395    Document: 00513499914    Page: 8    Date Filed: 05/10/2016
Case 2:10-md-02179-CJB-DPC   Document 18467   Filed 05/16/16   Page 10 of 11

No. 15-30395

no mooring in the Settlement Agreement itself, Sexton's "motion for extension" in the district court presented no issue that the district court needed to decide as a matter of its discretionary review. In related appeals that have reached this court, we have resolved whether the district court abused its discretion on the basis of whether the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement,[6] or had the clear potential to contradict or misapply the Settlement Agreement.[7] Neither circumstance applies here.

If the discretionary nature of the district court's review is to have any meaning, the court must be able to avoid appeals like this one which involve no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise the correctness of a discretionary administrative decision in the facts of a single claimant's case. *See In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015) ("We do not intend any part of this opinion to turn the district court's discretionary review into a mandatory review. To do so would frustrate the clear purpose of the Settlement Agreement to curtail litigation.").

AFFIRMED.

---

[6] *See In re Deepwater Horizon*, 616 Fed. App'x 699, 703 (5th Cir. 2015) (no abuse of discretion when "the Claims Administrator's interpretation of the Settlement Agreement was correct" and appellant's award had been "properly calculated").

[7] *See In re Deepwater Horizon*, — Fed. App'x —, 2015 WL 8476589, at *3–*4 (5th Cir. Dec. 9, 2015) (abuse of discretion not to review an individual claim determination when issue of how to interpret the Settlement Agreement had been presented in several claims and had split internal appeals panels within the Settlement Program).

# United States Court of Appeals

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

May 10, 2016

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

    **No. 15-30395    In re: Deepwater Horizon**
                          USDC No. 2:10-MD-2179
                          USDC No. 2:12-CV-970

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                                Sincerely,

                                LYLE W. CAYCE, Clerk

                                By: _____
                                Sabrina B. Short, Deputy Clerk
                                504-310-7817

cc:
    Mr. Jeffrey Bossert Clark Sr.
    Mr. Thomas George Hungar
    Ms. Marsha L. Lyons
    Mr. Scott Payne Martin