### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig | MDL No. 2179 |
| "Deepwater Horizon" | |
| in the Gulf of Mexico, | |
| on April 20, 2010 | SECTION: J |
| | |
| This Document Relates to: | |
| Salvesen v. Feinberg, et al., | JUDGE BARBIER |
| 2:11-cv-02533 | MAG. JUDGE SHUSHAN |
| Pinellas Marine Salvage Inc., et al. v. Feinberg, et al., | |
| 2:11-cv-1987 | |
| Ditch v. Feinberg et al., | |
| 2:13-cv-06014 | |

_____/

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION TO REMAND

## BACKGROUND

**I.      Salvesen v. Feinberg, et al., 2:11-cv-02533**

On June 15, 2011, Plaintiff Salvesen filed his action against Defendants Kenneth R.

Feinberg, Feinberg Rozen, LLP, d/b/a GCCF, and William G. Green, Jr. in the Circuit Court of

the Twentieth Judicial Circuit in and for Lee County, Florida asserting claims for gross

negligence, negligence, negligence per se, fraud, fraudulent inducement, promissory estoppel,

and unjust enrichment under Florida state law. The case was subsequently transferred by the

JPML to the MDL 2179 Court on October 6, 2011. Plaintiff re-filed his Motion to Remand and

Memorandum in Support with this Honorable Court on November 14, 2011 (Rec. Doc. 4575).

Plaintiff filed his Second Refiling of Motion to Remand and Memorandum in Support of His

Second Refiling of Motion to Remand with this Honorable Court on November 13, 2012 (Rec.

Doc. 7884, Exhibit B). Plaintiff filed his Motion to Nullify Every Gulf Coast Claims Facility
Release and Covenant Not to Sue and his Request for Oral Argument with this Honorable Court
on May 26, 2015. Plaintiff filed his Motion to Remand or, in the Alternative, Motion to
Commence Formal Discovery and his Request for Oral Argument with this Honorable Court on
May 26, 2015.

## II.      Pinellas Marine Salvage Inc., et al. v. Feinberg, et al., 2:11-cv-1987

On February 25, 2011, Plaintiffs filed their action against Defendants Kenneth R.
Feinberg and Feinberg Rozen, LLP, d/b/a GCCF, in the Circuit Court of the Sixth Judicial
Circuit in and for Pinellas County, Florida asserting claims for gross negligence, negligence,
negligence per se, fraud, fraudulent inducement, promissory estoppel, and unjust enrichment
under Florida state law. The case was subsequently transferred by the JPML to the MDL 2179
Court on August 9, 2011. Plaintiffs re-filed their Motion to Remand and Memorandum in
Support with this Honorable Court on November 14, 2011 (Rec. Doc. 4574). Plaintiffs filed their
Second Refiling of Motion to Remand and Memorandum in Support of Their Second Refiling of
Motion to Remand with this Honorable Court on November 13, 2012. Plaintiffs filed their
Motion to Remand or, in the Alternative, Motion to Commence Formal Discovery and
Memorandum in Support with this Honorable Court on April 24, 2014 (Rec. Doc. 12708).

## III.     Ditch v. Feinberg et al., 2:13-cv-06014

On June 12, 2013, Plaintiff Ditch, a victim of Defendants' "Expedited EAP Denial"
strategy, filed his action against Defendants in the Circuit Court of the Twentieth Judicial Circuit
in and for Lee County, Florida asserting claims for gross negligence, negligence, negligence per

se, fraud, fraudulent inducement, promissory estoppel, and unjust enrichment under Florida state law. The case was subsequently transferred by the JPML to the MDL 2179 Court on October 2, 2013. Plaintiff filed his Motion to Nullify Every Gulf Coast Claims Facility Release and Covenant Not to Sue and his Request for Oral Argument with this Honorable Court on May 26, 2015. Plaintiff filed his Motion to Remand or, in the Alternative, Motion to Commence Formal Discovery and his Request for Oral Argument with this Honorable Court on May 26, 2015.

## LAW AND ARGUMENT

It is important to note that Kenneth R. Feinberg and Feinberg Rozen, LLP, d/b/a GCCF, and William G. Green, Jr. are not named Defendants in *any* Master Complaint in MDL 2179. In sum, neither Plaintiffs nor Defendants in the present cases are associated with MDL 2179.

Pursuant to this Court's Pretrial Order No. 15 (Rec. Doc. 676), "Pending further orders of this Court, all pending and future motions, including Motions to Remand, are continued without date unless a motion is specifically excepted from the continuance by the Court."

District Courts hold "the general discretionary power……..to stay proceedings in the interest of justice and in control of their dockets." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544-45 (5th Cir. 1983). *See also Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) (explaining that "the power to stay proceedings is incidental to the power inherent in every court"). Courts traditionally weigh three factors which are generally relevant to a stay [in this context]: (1) potential prejudice to the nonmovant; (2) hardship and inequity to the movant; and (3) the judicial resources to be saved by avoiding duplicative litigation. *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 979 (S.D. Tex 2011); *see also Meinhart v. Halliburton Energy Servs., Inc.*,

No. H-11-0073, 2011 WL 1463600 at *7 (S.D. Tex. Apr. 4, 2011).

Although *Curtis* and *Meinhart* focused on a stay pending transfer to this MDL, the stay standards are universal features of basic equity and thus are equally applicable to the question of whether Plaintiffs' pending Motions to Remand now in this Court should remain stayed. Again, Plaintiffs respectfully point out to this Honorable Court that each of the three classic equitable factors weigh in favor of immediately lifting the stay and granting Plaintiffs' Motions to Remand.

Moreover, if a class member is unsatisfied with an applicable settlement, he or she has the right to choose whether to remain a class member. *See In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 440 (S.D. Tex. 1999). By opting out, those who are unhappy with the settlements' provisions escape their binding effect, and thus are free to pursue their claims and seek the relief they desire. *See In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28-29 (D.C. Cir. 2000). Here, each Plaintiff has opted out of the settlement agreements and "thus are free to pursue their claims and seek the relief they desire."

Allowing Feinberg, et al. to further harm Plaintiffs' financial condition by placing Plaintiffs' Motions to Remand on indefinite hold merely rewards the already recalcitrant Defendants. By forcing Plaintiffs in the instant cases to await resolution of irrelevant discovery and factual disputes relating to completely different parties, theories of recovery and remedies, consolidation with MDL 2179 unreasonably delays Plaintiffs' pursuit of their claims.

For the foregoing reasons, Plaintiffs respectfully request that this Court except their Motion to Remand from the continuance ordered in Pre-Trial Order 15 and enter an order remanding their actions to the U.S. District Court for the Middle District of Florida.

I.      **The Damages Incurred by Plaintiffs Did Not "Result From" the BP Oil Spill.**

Plaintiffs respectfully point out to this Honorable Court that the present cases are the only three cases of their kind filed in any court in the country.

In each case, Plaintiffs' damages did not "result from" the oil spill. Defendants are not "Responsible Parties" under OPA. *See* 33 U.S.C. § 2701(32)(C). Defendants are independent contractors that administer, settle, and authorize the payment of certain claims asserted against BP, the "Responsible Party." Here, Defendants' "Delay, Deny, Defend" strategy or "Expedited EAP Denial" strategy and associated tortious acts, *not acts by BP*, resulted in the financial ruin of Plaintiffs. Accordingly, the damages incurred by Plaintiffs as a result of Defendants' tortious acts are not recoverable by Plaintiffs under OPA.

II.     **The Stay Imposed on the Plaintiffs' Motions to Remand Was Initially Inappropriate and Remains So. The Continued Refusal of the MDL 2179 Court to Permit Formal Discovery on Feinberg, et al. Is Equally Egregious.**

On August 10, 2010, the United States Judicial Panel on Multidistrict Litigation ("JPML") issued its Transfer Order (Rec. Doc. 1) wherein it clearly states:

> "IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Eastern District of Louisiana are transferred to the Eastern District of Louisiana and, with the consent of that court, assigned to the Honorable Carl J. Barbier *for coordinated or consolidated pretrial proceedings* with the actions pending in that district and listed on Schedule A." (Emphasis added)

Plaintiffs respectfully point out to this Honorable Court that the JPML transferred, albeit inappropriately, their actions to MDL 2179 *for coordinated or consolidated pretrial proceedings*. These actions were not transferred for the purpose of ensuring that Feinberg, et al. are never held accountable for their tortious acts.

The JPML has previously made clear that, where related claims *are being litigated* in the centralized proceedings in MDL 2179, a case is appropriate for transfer even if it raises different factual issues from the personal injury and economic loss actions in MDL 2179. (4/18/11 Transfer Order, MDL 2179, Doc. No. 555 (transferring contract actions related to VoO program to MDL 2179 where "related claims already [were] being litigated in the centralized proceedings"). The three present cases are not "being litigated" in MDL 2179. These three cases are being inappropriately and indefinitely stayed (in essence, "warehoused") in MDL 2179.

### A.      The Court Has Declined to Permit Formal Discovery on Feinberg, et al.

Once these cases were transferred to the MDL 2179 Court, not only were the cases automatically stayed, but the claims were inexplicably deemed "amended, restated, and superseded" by the allegations and claims of the Master Complaint in Pleading Bundle B1 (*See* Pre-Trial Order No. 25, Para. 5, Jan. 12, 2011).

On August 29, 2011, Plaintiffs' Counsel emailed a letter to James Parkerson Roy wherein he informed Mr. Roy that the *Pinellas Marine Salvage, Inc., et al. v. Kenneth R. Feinberg, et al.* case had been transferred to MDL 2179. The letter, in pertinent part, stated "I would like to commence discovery as soon as possible. Since this action does not involve common questions of fact with actions previously transferred to MDL No. 2179, please advise as to how we may most expeditiously initiate and coordinate discovery......I look forward to working with you on this case." On September 5, 2011, Plaintiff's Counsel received an email from Stephen J. Herman wherein Mr. Herman stated, "*please be advised that the Court has, thus far, declined to permit formal discovery on Feinberg or the GCCF.*"

On December 25, 2012, the undersigned counsel received an email from Stephen J.

Herman wherein Mr. Herman stated, "….I would suggest that your clients not participating in

the Economic Settlement will best be served if you: (i) ensure that you and/or they make

Presentment of what you and/or they believe to be their full damages before January 18, 2013;

and then, having made such presentment, (ii) file (or re-file) (and/or amend) suit on their behalf

by April 20, 2013; and then (iii) with respect to any client whom you believe to have executed an

invalid GCCF Release, assemble and prepare the best case you can to support the argument that

such Release was procured under fraud, error or duress."

> **B.      The PSC Intentionally Failed to Notify All GCCF Victims (Its Clients) That a
> Lawsuit May be Filed Against Kenneth R. Feinberg, et al. Without Having to
> Fulfill the OPA "Presentment" Requirement.**

GCCF victims may file an action alleging that Defendants Kenneth R. Feinberg, Feinberg

Rozen, LLP, d/b/a GCCF, misled them by employing a "Delay, Deny, Defend" strategy. This

strategy, commonly used by unscrupulous insurance companies, is as follows: "Delay payment,

starve claimant, and then offer the economically and emotionally-stressed claimant a miniscule

percent of all damages to which the claimant is entitled. If the financially ruined claimant rejects

the settlement offer, he or she may sue." In sum, Plaintiffs would allege that BP is responsible

for the oil spill incident; Feinberg, et al. (*independent contractors*), via employment of their

"Delay, Deny, Defend" strategy, are responsible for not compensating and thereby financially

ruining Plaintiffs.

Since Feinberg, et al is not a "Responsible Party" and therefore may not be sued under

OPA, a lawsuit against Feinberg, et al. may be filed immediately because it does not require

"Presentment." Moreover, the PSC should have advised all GCCF victims in regard to the statute of limitations and the associated tolling of the statute of limitations for class actions and fraudulent concealment or a misrepresentation by the defendant.

  **C.**  **The PSC, Which Intentionally Failed to Adequately Challenge the Legality of the GCCF Release and Covenant Not to Sue for the Previous Two Years, Suddenly Advises Non-PSC Attorneys to "Assemble and Prepare the Best Case You Can to Support the Argument That Such Release Was Procured Under Fraud, Error or Duress."**

The ultimate objective of the "Delay, Deny, Defend" strategy of Feinberg, et al. was to obtain a signed "Release and Covenant Not to Sue" from as many BP oil spill victims as possible.

Feinberg, et al. cannot justify limiting payments under the Quick Payment Final Claim program to just $5,000 for individuals and $25,000 for businesses. There is no evidence that these amounts even remotely represent adequate consideration to compensate claimants for the damages that claimants did or will suffer.

Plaintiffs respectfully point out to this Honorable Court that *if the PSC had properly filed the B1 Master Complaint under OPA, **a strict liability statute**, rather than alleging claims under admiralty law, Feinberg, et al. would never have been allowed to use the Release and Covenant Not to Sue to illegally exclude approximately 200,000 BP oil spill victims from the E&PD class settlement.*

On December 31, 2012, the undersigned counsel noted in his letter to Stephen J. Herman, "It has been, and remains, the responsibility of the PSC to 'assemble and prepare the best case to support the argument that such Release was procured under fraud, error or duress.' On

September 25, 2012, my clients filed their Motion to Nullify Each and Every Gulf Coast

Claims Facility Release and Covenant Not to Sue. (*See* Rec. Doc. 7473-1). Please feel free to use

the legal argument in this motion to assist with the preparation of the PSC case."

On December 9, 2013, the undersigned counsel sent an email to Stephen J. Herman

wherein he inquired, "Please advise as to when the Court will permit formal discovery on

Feinberg or the GCCF." Mr. Herman's terse response was "No idea." The undersigned counsel

then asked Mr. Herman, "Would you be kind enough to attempt to find out when the Court will

permit formal discovery on Feinberg or the GCCF?" Mr. Herman responded, "Yes. At an

appropriate time."

Plaintiffs respectfully point out to this Honorable Court that "an appropriate time" to

commence formal discovery on Feinberg, et al. has long since passed.

The purpose of the Federal Rules of Civil Procedure is "to secure the just, speedy, and

inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

III. **Pretrial Order No. 60 Requires This Honorable Court to Grant Plaintiffs' Motion to Remand Their Actions to the U.S. District Court for the Middle District of Florida Without Further Delay.**

Pretrial Order No. 60 ("PTO 60"), in pertinent part, provides:

Pursuant to Paragraph 6A(i) of PTO 60, "Any Plaintiff who previously filed an individual lawsuit must complete the **sworn statement** in the form reflected in **Exhibit A**."

In regard to any Plaintiff who previously filed an individual lawsuit, Exhibit A clearly states, "**You are pursuing a claim against at least one B1 Defendant**…."

Exhibit A further addresses the issue of "**Presentment**." It asks any Plaintiff who previously filed an individual lawsuit, "Did you, the plaintiff seeking relief, present this claim at least 90 days prior to filing a lawsuit or joining the B1 Complaint?"

Finally, PTO 60 requires any Plaintiff who previously filed an individual lawsuit "shall serve the **sworn statement** on the Plaintiffs' Steering Committee ("PSC") and counsel for BP…" The deadline stated in PTO 60 for the PSC and BP to provide the Court with a list of all plaintiffs who did not comply with PTO 60 is up to and including June 3, 2016. For all other Plaintiffs, the Court will discuss procedures for addressing their claims at a hearing to be set by further Order of the Court.

In accordance with Pretrial Order No. 11, the Plaintiffs' Steering Committee ("PSC") filed a B1 Master Complaint (Rec. Doc. 879) and a First Amended Master Complaint (Rec. Doc. 1128) (collectively "B1 Master Complaint"). Plaintiffs named the following as Defendants in their B1 Master Complaint: BP Exploration & Production, Inc., BP Production Company and B.P. p.l.c. (collectively "BP"); Transocean Ltd., Transocean Offshore, Transocean Deepwater, Transocean Holdings (collectively "Transocean"); Halliburton; M-I; Cameron; Weatherford; Anadarko, Anadarko E&P (collectively "Anadarko"); MOEX Offshore, MOEX USA (collectively "MOEX"); and MOECO. (Rec. Doc. 3830).

As explained *supra*,

(a) Kenneth R. Feinberg and Feinberg Rozen, LLP, d/b/a GCCF, and William G. Green, Jr. are not named Defendants in *any* Master Complaint in MDL 2179. In sum, Defendants Feinberg, et al. are not B1 Defendants; and
(b) Since Feinberg, et al is not a "Responsible Party" and therefore may not be sued under OPA, a lawsuit against Feinberg, et al. may be filed immediately because it does not require "Presentment."

The purpose of PTO 60 is to assist the Court in streamlining the remaining claims against *B1 Defendants* and to facilitate the administration of MDL 2179 and the prosecution of the actions therein.

Plaintiffs respectfully point out that although their cases are not addressed in PTO 60, in order to facilitate the administration of MDL 2179 and the prosecution of the actions therein,

this Honorable Court should remand their actions to the U.S. District Court for the Middle

District of Florida without further delay.

**IV.    Plaintiffs' Motion to Remand Should be Granted Because MDL 2179 and Feinberg's Fund Approach to Resolving Mass Claims Are Wrong for America!**

Plaintiffs respectfully point out to this Honorable Court that MDL 2179 and Feinberg's

fund approach to resolving mass claims are wrong for America.

The BP Oil Spill Multidistrict Litigation ("MDL 2179") officially started on August 10,

2010. The Transfer Order issued on that date by the JPML clearly states:

> "Centralization may also facilitate closer coordination with Kenneth Feinberg's administration of the BP compensation fund."

From the very beginning, the purpose of MDL 2179 has been to replace democratic

adversarial litigation with a fund approach to compensating victims of the BP oil spill. BP and

the PSC reported settlement negotiations began "in earnest" in February 2011 for two distinct

class action settlements: a Medical Benefits Settlement and an Economic and Property Damages

Settlement." In sum, the PSC initiated settlement negotiations "in earnest" merely four (4)

months after Judge Barbier appointed members to the PSC. Clearly, the MDL 2179 class

settlement was not achieved in the full context of adversarial litigation. The vast majority of BP

oil spill victims will never have their day in court. Judicial economy, rather than justice, is the

primary objective.

The fund approach to resolving mass claims, e.g., those claims resulting from the BP oil

spill incident, ought to be viewed with a significant degree of concern. The precedent established

by the JPML and the MDL 2179 Court is clear:

A "Responsible Party" under the Oil Pollution Act of 1990 ("OPA 90") may now enter into a contract with a politically well-connected third party "Claims Administrator," e.g., Kenneth R. Feinberg and Feinberg Rozen, LLP, d/b/a Gulf Coast Claims Facility ("GCCF"). This third party "Administrator / Straw Person," *directly and excessively compensated by the party responsible for the oil spill incident*, may totally disregard OPA 90, operate the claims process of the responsible party as fraudulently and negligently as it desires for the sole purpose of limiting the liability of, and providing closure to, the responsible party, and the third party "Administrator / Straw Person" shall never be held accountable for its tortious acts.

On August 23, 2010, Feinberg Rozen, LLP, doing business as GCCF, replaced the claims process which BP had established to fulfill its obligations pursuant to OPA 90.

Feinberg used the fear of costly and protracted litigation to coerce victims of the BP oil spill to accept grossly inadequate settlements from GCCF. During town hall meetings organized to promote GCCF, Feinberg repeatedly told victims of the BP oil spill, "the litigation route in court will mean uncertainty, years of delay and a big cut for the lawyers." "I am determined to come up with a system that will be more generous, more beneficial, than if you go and file a lawsuit." "It is not in your interest to tie up you and the courts in years of uncertain protracted litigation when there is an alternative that has been created," Feinberg said. He added, "I take the position, if I don't find you eligible, no court will find you eligible."

GCCF employed two strategies to limit BP's liability:

(a) an "Expedited Emergency Advance Payment ("EAP") Denial" strategy. This strategy is as follows: "Fail to verify, investigate, and appraise the amount of loss claimed by the claimant in the EAP claim and deny the EAP claim without ever requesting supporting documentation from the claimant;" and

(b) a "Delay, Deny, Defend" strategy against legitimate oil spill victims. This strategy, commonly used by unscrupulous insurance companies, is as follows: "Delay payment, starve claimant, and then offer the economically and emotionally-stressed claimant a miniscule percent of all damages to which the claimant is entitled. If the financially ruined claimant rejects the settlement offer, he or she may sue."

The ultimate objective of Feinberg's "Expedited EAP Denial" strategy and "Delay, Deny, Defend" strategy was to limit BP's liability by obtaining a signed "Release and Covenant Not to Sue" from as many BP oil spill victims as possible.

Feinberg's "Release and Covenant Not to Sue" requirement (which violates OPA 90, State contract law, and is contrary to public policy) forced economically and emotionally-stressed victims of the BP oil spill to sign a release and covenant not to sue in order to receive a miniscule payment amount for all damages, including future damages, they incur.

Feinberg's actions, although unconscionable, have proven to be very effective for GCCF and BP:

(a) GCCF forced **84.68%** of the claimants to sign a "Release and Covenant Not to Sue" in which the claimant agreed not to sue BP and all other potentially liable parties;
(b) Only **15.32%** of the claimants were not required to sign a "Release and Covenant Not to Sue" in order to be paid;
(c) **GCCF denied payment to approximately 61.46% of the claimants who filed claims;**
(d) The average total amount paid per claimant by GCCF was a paltry $27,466.47; and
(e) Feinberg's "Release and Covenant Not to Sue" excluded approximately 200,000 BP oil spill victims from the MDL 2179 economic and property damages class settlement agreement.

The operation of GCCF has allowed BP to control, manage, and settle its liabilities on highly preferential terms; has permitted members of the MDL 2179 Plaintiffs' Steering Committee, who are directly appointed by Judge Barbier, to be excessively compensated for merely negotiating a collusive settlement agreement; and has enabled judges to clear their dockets of large numbers of cases. In sum, fund approaches to resolving massive liabilities shift power over claims resolution entirely into the hands of self-interested parties and largely evade judicial scrutiny and oversight.

Efficiency is not the only touchstone of justice. A substantial body of opinion and a respect for jurisdictional principles suggest that a plaintiff ordinarily has a right to a trial in the forum of his or her choosing. *See*, e.g., *Koster v. (Am.) Lumbermens Mut. Cas. Co*., 330 U.S. 518, 524 (1947) (noting that a plaintiff ordinarily should not be denied the advantages of his chosen jurisdiction). Aggregation of cases for the purpose of facilitating settlement is a byproduct of §1407, but is not its central statutory purpose. *See In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000). *Id.*

Judicial economy is undoubtedly well-served by MDL consolidation when scores of similar cases are pending in the courts. Nevertheless, the excessive delay and marginalization of juror fact finding (i.e., dearth of jury trials) associated with traditional MDL practice are developments that cannot be defended. *Delaventura v. Columbia Acorn Trust*, 417 F. Supp. 2d at 153 (D. Mass. 2006). The appropriate focus for fund resolution of mass claims should be justice for the claimants, not merely judicial economy and closure for the corporate misfeasor.

**V.     At the Very Least, Plaintiffs Should be Allowed to Freely Pursue Their Claims and Seek the Relief They Desire Against Defendants Feinberg, et al. in Order to Diminish the Appearance of Impropriety by the MDL 2179 Court.**

Plaintiffs, recognizing the need to: (a) avoid the appearance of impropriety, and (b) demonstrate compliance with the canons of judicial conduct designed to maintain public confidence in the judiciary, respectfully point out the following to this Honorable Court.

Legislative history indicates that 28 U.S.C. § 455(a) was meant to lessen the traditional "duty to sit," and, as the Supreme Court has indicated, to require avoidance of even the appearance of partiality. *Liljeberg v. Health Serv. Acquisition Corp*., 486 U.S. 847, 860-61, 108

-14-

S.Ct. 2194, 2202-03, 100 L.Ed.2d 855 (1988). Recusal may be required even in the absence of actual partiality if there is an objectively reasonable basis for doubting the judge's impartiality. _Id_. _See_ Code of Judicial Conduct, Canon 2 (1973): "[A] judge should avoid impropriety and the appearance of impropriety in all his activities."

The proper standard for ascertaining whether a judge's impartiality might reasonably be questioned under Section 455(a) is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt, not in the mind of the judge, or even necessarily that of the litigant, but rather in the mind of the reasonable person. See *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir. 1976), cert. denied, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977).

In *Republic of Panama v. The American Tobacco Company, Inc., et al.*, the Fifth Circuit pointed out that denial of recusal is reviewed for abuse of discretion. *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999). Section 455(a) states that a judge should recuse himself "in any proceeding in which his impartiality might reasonably be questioned." "In order to determine whether a court's impartiality is reasonably in question, the objective inquiry is whether a well-informed, thoughtful and objective observer would question the court's impartiality." *Trust Co. v. N.N.P.*, 104 F.3d 1478, 1491 (5th Cir. 1997) (citing *United States v. Jordan*, 49 F.3d 152, 155-58 (5th Cir.1995)). The review of a recusal order under § 455(a) is "extremely fact intensive and fact bound," thus a close recitation of the factual basis for the appellants recusal motion is necessary. The Fifth Circuit has previously pointed out, the purpose of § 455(a), and the principle of recusal itself is not just to prevent *actual* partiality, but to "avoid even the appearance of partiality." *Jordan*, 49 F.3d at 155. The analysis of a § 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of

the facts and circumstances of the particular claim. *United States v. Bremers*, 195 F.3d 221, 225 (5th Cir. 1999) (citing *Jordan*, 49 F.3d at 157).

Moreover, in *Republic of Panama v. The American Tobacco Company, Inc., et al*., citing *Tramonte v. Chrysler Corporation*, 136 F.3d 1025,1027-29 (5th Cir. 1998), the Fifth Circuit further held that if the district court judge should have recused himself any orders entered following disposition of the recusal motion should be vacated.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant their Motion to Remand their actions to the U.S. District Court for the Middle District of Florida.

DATED: June 1, 2016                                     Respectfully submitted,

                                                         **/s/ Brian J. Donovan_____**
                                                         Brian J. Donovan
                                                         Attorney for Plaintiffs
                                                         Florida Bar No. 143900
                                                         3102 Seaway Court, Suite 304
                                                         Tampa, FL 33629
                                                         Tel: (352)328-7469
                                                         BrianJDonovan@verizon.net