UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| Of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | |
| Applies To: | * | Judge Barbier |
| No.12-970, 15-4143, 15-4146 & 15-4654 | * | Mag. Judge Shushan |

**New Class Claims Administrator's Proposed Distribution Model for the Combined Halliburton Energy Services, Inc. and Transocean Ltd. Settlements Fund**

Pursuant to this Court's October 23, 2015, Order [Rec. Doc. 15481], and in accordance with the provisions of the HESI Punitive Damages and Assigned Claims Settlement Agreement and the Transocean Punitive Damages and Assigned Claims Settlement Agreement ("Settlement Agreements")[1], the New Class Claims Administrator has undertaken the responsibility for (1) establishing appropriate criteria for evaluating the New Class members' claims, (2) reviewing and evaluating the New Class members' claims in accordance with those criteria, (3) establishing proposed allocations to New Class members in accordance with those evaluations, and (4) preparing a proposed plan for distribution of the funds to qualified New Class members.

I now submit the proposed New Class Distribution Model (the "Distribution Model").

I have reviewed the record in this matter, including detailed review of both Settlement Agreements. I have reviewed the settlement agreement and relevant file materials from the Deepwater Horizon Economic and Property Damage Settlement ("DHEPDS"). I have conferred with the attorneys involved in the case. I have consulted with experts in various fields, including those with expertise in the equitable and efficient processing of claims in the class action context. I have invited submissions from any interested party and have reviewed the many submissions made in that regard.

**GENERAL PRINCIPLES**

The following are general principles upon which the proposed Distribution Model is based:

(1)     This Distribution Model in general seeks to identify and compensate those persons and those entities that have standing to assert claims for punitive damages pursuant to *Robins Dry Dock* and its progeny and as agreed to by the respective parties in both Settlement Agreements.

(2)     Particular guidance has been obtained from the following court decisions:

(a)     *Robins Dry Dock v. Flint*, 275 U.S. 203 (1927);

(b)     *State of Louisiana v M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985);

(c)     *In re: Deepwater Horizon*, 784 F.3d 1019 (5th Cir. 2015); and

---

[1] All capitalized terms shall have the meaning as defined herein, or, if not specifically defined, as they are defined in the Settlement Agreements. If a capitalized term relates to the DHEPDS Agreement, the term will be preceded with "DHEPDS" and its definition shall be that which is provided in the DHEPDS Agreement.

(d)     *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL 2179, United States District Court, Eastern District of Louisiana [Rec. Doc. 3830, Order & Reasons dated 8/26/11].

(3)     The prevailing case law provides that standing to assert *Robins Dry Dock* punitive damage claims is afforded to those who had a proprietary interest in real or personal property that was physically damaged by oil or substances used in the Deepwater Horizon Incident.

(4)     To show a sufficient proprietary interest, the general rule is that one must show that he/she is the owner of the damaged property.  *In re: Deepwater Horizon*, 784 F.3d 1019, 1025 (5th Cir. 2015).  Something just shy of outright ownership may qualify as a "proprietary interest" if one has "control over the property tantamount to full ownership."  *In re: Deepwater Horizon*, 784 F.3d 1019, 1026 (5th Cir. 2015).

(5)     Some courts have also recognized an exception to this physical damage requirement and have extended *Robins Dry Dock* standing to commercial fishermen.  *See State of Louisiana v M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985); *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL 2179, United States District Court, Eastern District of Louisiana [Rec. Doc. 3830, Order & Reasons dated 8/26/11]; John Paul Jones, *The Sky Has Not Fallen Yet on Punitive Damages in Admiralty Cases*, 83 Tul.L.Rev. 1289 (2009); Benjamin J. Steinberg and Dwayne Antonio Robinson, *Making BP's Blood Curd-Le: Duty, Economic Loss and the Potential Cardozian Nightmare after Curd v. Mosaic Fertilizer*, 63 Fla.L.Rev. 1245 (2011).

(6)     Some argue that though it has been cited in court opinions, this commercial fishermen exception has not yet actually been applied by the United States Court of Appeals for the Fifth Circuit ("U.S. Fifth Circuit").  *See* Benjamin J. Steinberg and Dwayne Antonio Robinson, *Making BP's Blood Curd-Le: Duty, Economic Loss and the Potential Cardozian Nightmare after Curd v. Mosaic Fertilizer*, 63 Fla.L.Rev., 1245 (2011).

(7)     Property owners whose property was physically damaged by oil or substances from the Deepwater Horizon Incident have the clearest and most established right to assert claims under *Robins Dry Dock*; thus, this Distribution Model affords an enhanced value to those categories of claims.

(8)     Charterboat Operators and Loss of Subsistence fishermen do not have clear *Robins Dry Dock* standing under existing law; thus, this Distribution Model affords a somewhat discounted value to these categories of claims.

(9)     This Distribution Model affords the greatest priority to the claim types that have the clearest and longest recognized standing to assert claims for punitive damages under the *Robins Dry Dock* line of cases, then looking to exceptions for inclusion, in the following order of priority: (a) those who held a proprietary interest in property that was physically damaged, (b) commercial fishermen, (c) subsistence fishermen, and (d) charterboat operators.

(10)    Significant time, effort, and expense have already been incurred by the DHEPDS in reviewing and evaluating claims that also fit within the definition of the New Class.  The terms of the DHEPDS have previously been reviewed by both the District Court and the U.S. Fifth Circuit and have been found to be fair and equitable.  Processing of claims within the DHEPDS has been accompanied by extensive due process rights, including repeated reviews by the claims processors as well as appeal rights to an independent appeals panel, the District Court, and even the U.S. Fifth Circuit.  This Distribution Model seeks to take advantage of the extensive efforts already expended under the

DHEPDS and thereby to streamline the claims review process and to avoid significant duplication of time and expense, savings of which all work to the benefit of the New Class members.

(11)     With respect to New Class members who did not have claims evaluated under the DHEPDS, this Distribution Model seeks to generally apply the same types of eligibility requirements and to generally achieve similar evaluations as those that would have been determined under the DHEPDS to utilize as a basis for apportioning awards in this program.

(12)     The Settlement Agreements as they pertain to the New Class seek to compensate those persons and entities that have standing to assert claims for punitive damages under maritime law as against HESI or Transocean as a result of the Deepwater Horizon Incident.  The Settlement Agreements do not provide for compensation for compensatory damages in any respect.

(13)     The award amounts under this Distribution Model represent compensation for the claimants' potential claims for punitive damages under maritime law.  This Distribution Model does not seek to award money for compensatory damages.

(14)     Under maritime law, a claimant may obtain punitive damages only if that claimant has a valid claim for underlying compensatory damages.  Accordingly, this Distribution Model does not assign any value to the claims of those who have not received compensatory damages through some vehicle or have a pending claim or lawsuit to recover compensatory damages arising from the Deepwater Horizon Incident.

(15)     The DHEPDS evaluated and granted awards to the vast majority of the claimants who fall within the New Class.  This Distribution Model utilizes the extensive work performed by the DHEPDS in that respect.

(16)     For those DHEPDS Class Members whose claim(s) were evaluated by the DHEPDS, eligibility within the New Class will be based solely upon the submissions made to the DHEPDS and upon the determination(s) made by the DHEPDS.

(17)     For those persons or entities who were members of the DHEPDS Class but elected not to file one of the claim types identified below, this Distribution Model does not assign a value to their claims since they no longer have a right to recover compensatory damages (nor correspondingly any related punitive damages) by virtue of the class-wide release from the DHEPDS.

(18)     Certain claimants were not included within the DHEPDS (excluded industries, those who validly opted out, and those who did not have a potential claim within any DHEPDS Damage Category), and for those claimants, this Distribution Model allows for them to file new claims.

(19)     For those claimants who were not included within the DHEPDS and are allowed to file a new claim under this Distribution Model, their claims will be assigned no value unless they adequately preserved their right to pursue damages by complying with the MDL-2179 Pretrial Order 60 [Rec. Doc.16050].

(20)     This Distribution Model will:

(a)     Identify the eligibility requirements and establish a process for determining the HESI/Transocean Settlements compensation amount baseline (the "Base Compensation Amount") for each New Class Claimant:

i.   For DHEPDS-determined claims, utilize the DHEPDS calculations for DHEPDS base compensation amounts for all claims, adding the DHEPDS Risk Transfer Premiums to Real Property and Personal Property claims as applicable; and

ii.  For New Class members without a DHEPDS claim who have standing to file a new claim, such claims will be evaluated using similar methodologies to those established in the DHEPDS frameworks as further discussed below;

(b)   Evaluate the strength of each Claim Category based on principles of general maritime law in accordance with the *Robins Dry Dock* line of cases;

(c)   Establish an enhancement or reduction value for each Claim Category that will be applied to the Base Compensation Amounts for claims within that Claim Category to determine the final claim value;

(d)   Determine Settlement Funds allocation percentages for each Claim Category that will be applied to the Net Settlement Funds prior to the proration process.

**ELIGIBILTY – CLAIM CATEGORIES AND CLAIM TYPES**

The "New Class" settlements are intended to compensate those individuals and entities that have standing to make punitive damages claims under general maritime law arising from the Deepwater Horizon Incident.  Under *Robins Dry Dock* and its progeny, such claimants fall into two general categories: (1) those whose property was physically damaged by oil or other Spill[2]-related substances from the incident, and (2) commercial fishermen.

The Settlement Agreements define the New Class as follows:

(1)  Those who held a proprietary interest in real property that was touched or physically damaged by oil or other substances from the Deepwater Horizon Incident;
(2)  Those who held a proprietary interest in personal property that was touched or physically damaged by oil or other substances from the Deepwater Horizon Incident;
(3)  Commercial Fishermen and Charterboat Operators; and
(4)  Subsistence fishermen and hunters.

**I.   Real Property Damage Claim Category**

For purposes of identifying real property that was touched or physically damaged by oil or other substances from the Deepwater Horizon Incident, I conclude that the same maps that were utilized in the DHEPDS should be utilized here. Specifically, the Coastal Real Property (Exhibits 11B&C to the DHEPDS Settlement Agreement), Real Property Sales (Exhibit 13B) and Wetlands Real Property (Exhibits 12B, C, and D) Zone maps identified areas bordering the Gulf of Mexico from Florida to Texas where oil or other Spill-related substances likely reached the shore.  In general, areas included within those maps were those areas that were monitored by the Deepwater Horizon Unified Command Shoreline Cleanup Assessment Teams ("SCAT") for the presence of oil following the Spill.  Within those areas, enhanced

---

[2] "Spill" shall be defined as an equivalent term to the Deepwater Horizon Incident as defined in the Settlement Agreements.

compensation was given to those sections where a SCAT team member documented the actual, physical presence of oil.  I conclude that these maps are the most appropriate tool for identifying those portions of real property that were likely touched by oil or other Spill-related substances from the Deepwater Horizon Incident and thus eligible for compensation under this Distribution Model.

Consistent with the eligibility requirements of the DHEPDS, a parcel not located within the Coastal Real Property Claim Zone, the Real Property Sales Claim Zone or the Wetlands Real Property Claim Zone may be added to such zone if the parcel is documented as oiled pursuant to SCAT or by an official assessment conducted by the National Resources Trustees in connection with the Deepwater Horizon Incident.  To be considered for zone inclusion, the claimant will need to file a Parcel Eligibility Determination Request with supporting documentation from SCAT or NRD indicating the property was oiled for review and determination by the New Class Claims Administrator.  This opportunity will only be extended to New Class members that were excluded from filing this claim type in the DHEPDS.  No other parcels outside such zones shall be considered an eligible parcel.

Claims determined to be eligible for the following claim types under the DHEPDS shall be considered likewise eligible for compensation under this portion of the Distribution Model:

- Coastal Real Property ("CRP") (including Physical Damage to Real or Personal Property)
- Real Property Sales ("RPS")
- Wetlands Real Property ("WRP") (including Physical Damage to Real or Personal Property)
- Oyster Leaseholder

As to claimants who opted-out of the DHEPDS settlement or who were excluded from DHEPDS Class membership, they may qualify for compensation if they meet the eligibility requirements for one of these four (4) claim types.  Eligibility will be consistent with the eligibility requirements under the DHEPDS as outlined below.

## II.    Personal Property Damage Claim Category

Claims determined to be eligible for the following claim type under the DHEPDS shall be considered likewise eligible for compensation under this portion of the Distribution Model:

- Vessel Physical Damage

As to claimants who opted-out of the DHEPDS settlement or who were excluded from DHEPDS Class membership, they may qualify for compensation if they meet the eligibility requirements for the Vessel Physical Damage claim type.  Eligibility will be consistent with the eligibility requirements under the DHEPDS as outlined below.

As to physical damage to personal property outside the scope of the CRP, WRP, and Vessel Physical Damage claim types, a claim may be submitted for any such other personal property damage in excess of $500.

## III.    Commercial Fishermen and Charterboat Operators Claim Category

Claims determined to be eligible for the following claim types under the DHEPDS shall be considered likewise eligible for compensation under this portion of the Distribution Model:

- Seafood Compensation Program (except for Oyster Leaseholder)
- Business Economic Loss[3] ("BEL") for Charterboat Operators (as identified by the NAICS code 487210, as confirmed by the DHEPDS)
  - Individual Economic Loss ("IEL") for Charterboat crew members (as identified by the NAICS code 487210, as confirmed by the DHEPDS)

As to claimants who opted-out of the DHEPDS settlement or who were excluded from DHEPDS Class membership, they may qualify for compensation if they meet the eligibility requirements for the Commercial Fishermen or Charterboat Operators claim type. Eligibility will be consistent with the eligibility requirements under the DHEPDS as outlined below.

IV.    **Loss of Subsistence Claim Category**

Claims determined to be eligible for the following claim type under the DHEPDS shall be considered likewise eligible for compensation under this portion of the Distribution Model:

- Subsistence

As to claimants who opted-out of the DHEPDS settlement or who were excluded from DHEPDS Class membership, they may qualify for compensation if they meet the eligibility requirements for the Loss of Subsistence claim type. Eligibility will be consistent with the eligibility requirements under the DHEPDS as outlined below.

**DEEPWATER HORIZON ECONOMIC & PROPERTY DAMAGE SETTLEMENT (DHEPDS)**

I conclude that this Distribution Model should place significant reliance upon portions of the DHEPDS. The DHEPDS has already been reviewed and found to be fair and reasonable by both the District Court and the U.S. Fifth Circuit.[4] Extensive time, effort, and expense have been expended by the DHEPDS over the past four (4) years in reviewing and evaluating claims that are in part the same as those at issue in the New Class. Any costs spent reviewing and evaluating claims in the New Class serve to reduce the total sum available for distribution to the New Class members. It is thus of benefit to the New Class members to limit administrative costs as much as possible. Reliance upon the extensive work already performed by the DHEPDS greatly assists in achieving that goal. Further, reliance upon the DHEPDS contributes toward consistency and fairness amongst New Class members. As to those claimants who did not participate in the DHEPDS (opt-outs and excluded persons/entities), this Distribution Model seeks to apply standards that are consistent with those of the DHEPDS such that both sets of claimants are treated on a comparable and consistent basis.

**ELIGIBILTY REQUIREMENTS AND CALCULATION METHODOLOGY FOR NEWLY FILED CLAIMS**

The chart below depicts who should file a New Class claim and identifies why certain groups, even if potentially eligible for benefits under the Settlement Agreements, should not file a claim. The vast majority of New Class members will not need to file a New Class claim in order to have their claim(s) considered for eligibility. All DHEPDS claims for "relevant claim types"[5] will be transferred from

---

[3] BEL claims will include standard BEL as well as Start-Up BEL and Failed BEL DHEPDS claim types.

[4] The Parties' use of a purely mathematical formula for establishing causation for BEL claims in DHEPDS, affording the Claims Administrator no discretion to make any sort of subjective assessment as to causation, is not being relied upon or duplicated in this Distribution Model.

[5] A "relevant claim type" as used herein means CRP, RPS, WRP, Vessel Physical Damage, Seafood Compensation, Business Economic Loss (BEL) for Charterboat Operators (as identified by assigned NAICS code), Individual

the DHEPDS Program to this program pursuant to the Court's Order Regarding Production and Confidentiality of Information Related to the Administration of the Halliburton Energy Services, Inc. and Transocean Settlement Agreements [Rec. Doc. 16271] for consideration.  Filing additional claims will delay processing times and increase the costs of administration, which will be paid out of the Settlement Funds reducing the amount available for distribution.

If, based on the chart below, an individual or entity is required to file a New Class claim, that party will be required to complete the Claim Form attached as Exhibit 1 to this Distribution Model.  Documentation requested will be required, and failing to provide the required documentation may result in rejection.

| Are you… | Should you file a New Class claim? | Why? |
| --- | --- | --- |
| A person or entity that was a member of the DHEPDS Class and filed a "relevant claim type" in DHEPDS? | No | New Class claim determinations/eligibility will be based solely on the submissions already made to the DHEPDS and upon the determination(s) by the DHEPDS. Filing an additional claim cannot change your DHEPDS determination or award amount and will unnecessarily delay processing and payment of all claims in addition to increasing administrative costs, which must be paid from the Settlement Funds[6] before the pro rata distribution to New Class eligible claimants will occur. |
| A person or entity that was a member of the DHEPDS Class and elected not to file a "relevant claim type" in the DHEPDS? | No | Such persons and entities have received no compensatory damages and are barred from asserting claims for compensatory damages in the future as a result of the DHEPDS class-wide release.  Consequently, no punitive damages may be awarded under this Distribution Model. |
| A person or entity who received payment from BP pursuant to a voluntary settlement with BP, other than a settlement through the Gulf Coast Claims Facility ("GCCF") or BP Claims Center (OPA claims), and which settlement did *not* include a release of claims for punitive damages against HESI and Transocean? | Yes | Such claim(s) will be subject to the eligibility and documentation requirements for that specific claim type. Required documentation for such claimants shall include a copy of the settlement addendum utilized by the Court-appointed Neutrals[7], a copy of the subject settlement agreement itself, or a third-party listing of such settlements as deemed reliable by the Claims Administrator. |

Economic Loss (IEL) for Charterboat crew members (as identified by assigned NAICS code) and Loss of Subsistence. No other DHEPDS claim types are eligible for consideration under this Distribution Model.

[6] The "Settlement Funds" refer to the combined values of the Settlement Agreements available for the benefit of the New Class.

[7] The Court-appointed Neutrals are Mike Moore and Drake Martin.

| Are you… | Should you file a New Class claim? | Why? |
|---|---|---|
| A person or entity who gave up your rights to pursue claims for punitive damages from HESI and Transocean pursuant to your signed release with the GCCF or BP Claims Center (OPA Claims)? | No | Such persons and entities gave up the right to receive punitive damages from HESI and/or Transocean upon executing a GCCF Release and Covenant Not to Sue or a BP Claims Process Full and Final Release, Settlement, and Covenant Not to Sue. <br><br> Please note, the BP Claims Center is not the same as the individual settlement process being supervised by the Court-appointed Neutrals and was unrelated to the DHEPDS Program also commonly referred to as the Deepwater Horizon Economic Claims Center ("DHECC") or the Court Supervised Settlement Program ("CSSP"). |
| A person or entity that filed a valid opt-out for the DHEPDS? | Yes | Such claim(s) will be subject to the eligibility and documentation requirements for New Claimants[8] under each specific claim type filed. <br><br> Required documentation for such claimants shall include proof of claimant's timely preservation of rights to a claim for damages by compliance with MDL-2179 Pretrial Order 60. |
| A person or entity that was not a DHEPDS Class Member by virtue of being an "excluded" individual or entity (local governments, oil & gas industry, etc.)? | Yes | Such claim(s) will be subject to the eligibility and documentation requirements for New Claimants under each specific claim type filed.  Please note, certain industries noted as "excluded" in the DHEPDS Agreement were allowed to file CRP and WRP claims; if you were among those exceptions, you will be barred from filing a New Class claim for any "relevant claim type" for which you had the right to file in the DHEPDS. <br><br> Required documentation for such claimants shall include proof of claimant's timely preservation of rights to a claim for damages by compliance with MDL-2179 Pretrial Order 60. |
| A person or entity that was not a member of the DHEPDS Class, but sustained personal property physical damage in excess of $500 as a result of the Deepwater Horizon Incident? | Yes | Such claim(s) will be subject to the eligibility and documentation requirements for the personal property physical damage claim type. <br><br> Required documentation for such claimants shall include proof of claimant's timely preservation of rights to a claim for damages by compliance with MDL-2179 Pretrial Order 60. |

The information in the chart above will be widely disseminated via the website, included in frequently asked questions, and the Claim Form in an effort to educate New Class members on what is

---

[8] "New Claimants" shall mean individuals and entities that did not file a DHEPDS claim or other claim upon which to have his/her/its New Class punitive damages award assessed.

needed to determine eligibility and to assist the New Class in preserving the maximum portion of the Settlement Funds for distribution by avoiding the filing of unnecessary claims.

**I.      Real Property Damage Claim Category**

For all real property and associated personal property claims it is anticipated that the only parties eligible to file new claims will be:

(1)  Excluded industries that were not given the opportunity to file a CRP or WRP claim pursuant to the DHEPDS Agreement[9] who are not excluded under the terms of the Settlement Agreements;
(2)  Local Governments, as defined in the Settlement Agreements; and
(3)  Individuals/entities that received confirmation of having filed a valid Opt-Out request for the DHEPDS.

**A.      Coastal Real Property Claim Type**

New CRP claims will be assessed using methodology nearly identical to the DHEPDS framework at Exhibit 11 of the DHEPDS Agreement with the adjustments noted below.  A Base Compensation Amount using the Coastal Real Property Zone maps created for DHEPDS will be established, inclusive of the DHEPDS Risk Transfer Premium ("RTP") multiplier of 2.5.  The minimum compensation amounts noted in DHEPDS based on land use designations will not be considered in this program.

| CRP Claim Zone | Base Compensation Calculation Formula |
|---|---|
| A1 | (2010 Applicable Property Tax[10] x 40%) x 2.5 |
| A2 | (2010 Applicable Property Tax x 45%) x 2.5 |
| B1 | (2010 Applicable Property Tax x 30%) x 2.5 |
| B2 | (2010 Applicable Property Tax) x 35% x 2.5 |

Zero loss will be assigned to claims for CRP Zone A and B properties purchased/leased on or after January 1, 2011, as any buyer/lessee at that time had adequate notice of the potential for Spill-related damage prior to making an offer to purchase.

---

[9] *See* DHEPDS Agreement at Section 2: Exclusions from the Economic and Property Damages Settlement Class Definition and Section 1.3.1.11 allowing businesses/employers in certain otherwise excluded industries to file CRP and Wetlands claims.

[10] "2010 Applicable Property Tax" was defined by the DHEPDS framework as an Eligible Parcel's 2010 County Appraised Value multiplied by 1.18% ("Applicable Tax Rate").  "County Appraised Value" was defined as it appears on each county/parish tax assessments as follows:

Florida: Escambia, Okaloosa, Santa Rosa, Walton, Bay, Gulf, Franklin, and Wakulla counties use "Just Value"
Alabama: Baldwin County use "True Value"; Mobile County use "Market Value"
Mississippi:  Jackson is "TOTALVAL"; Harrison use "Total Value"; Hancock use "LRTOT"
Louisiana: Grand Isle and Jefferson parishes use "Fair Market Value"

In the event the County Appraised Value is net of a Homestead Exemption, such amount shall be added to the County Appraised Value for purposes of calculating the Base Compensation Amount.

New Claimants will have the opportunity to request reconsideration of the Coastal Real Property Zone for a parcel using a standardized Parcel Eligibility Determination form that must be accompanied by official SCAT or NRD assessment reports showing oiling occurred.

**B.    Wetlands Real Property Claim Type**

Assessments for WRP claims will be completed on an acreage basis by zone using the same values per acre as provided for in the DHEPDS framework at Exhibit 12 of the DHEPDS Agreement, inclusive of the RTP multiplier.

| WRP Claim Zone | Base Compensation Calculation Formula |
|---|---|
| A | (Oiled Primary Area Acres x $25,000) + (Non-Oiled Primary Area Acres x $11,000) + (Buffer Area Acres x $10,000) |
| B | Non-Oiled Primary Area Acres x $4,500 |

**C.    Real Property Sales Claim Type**

RPS claims for residential properties within the original DHEPDS Real Property Sales Damage Claim Zone will be valued as 12.5% of the final sales price; the same value assigned by the DHEPDS framework.

Zero loss will be assigned to claims for properties purchased on or after January 1, 2011, as clean-up had been substantially accomplished by this date and owners had the opportunity to make claims for damages via the DHEPDS program.

**D.    Oyster Leaseholder Claim Type**

The value associated with Oyster Leaseholder's proprietary rights in their leases, rather than associated economic losses, will be compensated under this portion of the Distribution Model in similar fashion to the DHEPDS framework on an acreage basis depending on the location of the lease within the DHEPDS Oyster Leasehold Compensation Zone[11] as follows:

| Oyster Leasehold Compensation Zone | Base Compensation Per Acre |
|---|---|
| A | $2,000 |
| B | $1,000 |
| C | $400 |

Economic losses associated with Oyster Leaseholder Lost Income and Oyster Harvester claims will be assessed under the DHEPDS Seafood Compensation Program calculation methodology.

**E.    Personal Property Damage Claims Associated to Real Property Claims**

If a New Class member wishes to make a claim for personal property damages associated with a Real Property claim, for example damage to a structure/fixture, or movable personal property located on the parcel at the time of the Spill or during the clean-up process, the claimant will need to provide contemporaneous photos, videos, damage reports, purchase receipts/valuation documentation, repair/replacement cost estimates/receipts, and an affidavit regarding the damage for consideration by

---

[11] *See* DHEPDS Agreement, Exhibit 10, sub-Exhibit 1.

the New Class Claims Administrator.  Additional claims by New Class members with a prior DHEPDS CRP or WRP claim that failed to include personal property damage are barred.

Valuation will be determined based on a case-by-case basis using the contemporaneous documentation provided by the claimant to establish a loss value and then applying the RTP multiplier of 2.5.

Given the time and cost associated with the review of claims and the likely proration factor based on the value of the New Class portion of the Settlement Funds, only claims with a potential value of $500 or more will be considered.  Claims under this threshold should not be submitted and, if submitted, will be summarily denied.

### F.    Real Property Documentation Requirements

Required documentation for such claimants shall include proof of claimant's timely preservation of its rights to a claim for damages by compliance with MDL-2179 Pretrial Order 60 in addition to the following claim type-specific documentation:

| Documentation Required | Coastal Real Property | Wetlands Real Property | Real Property Sales | Oyster Leaseholder |
|---|---|---|---|---|
| 2010 Property Tax Bill | X | X | | |
| Deed showing ownership on 4/20/2010 | X | X | X | |
| Lease w/ Proof of Payment | X | | | |
| Purchase contract and any amendments | | | X | |
| Proof of transaction closing: HUD statement, closing statement, deed of transfer | | | X | |
| 2010 Oyster Leases | | | | X |
| Oyster Leaseholder Claimant Sworn Written Statement (SWS-4) | | | | X |
| For claims including damage to Personal Property at the real property location, include: Personal Property Damage Claimant Sworn Written Statement (SWS-1) and supporting documentation | X | X | | |

### II.    Personal Property Damage Claim Category

Personal property damages not associated with a Real Property claim will be eligible to file pursuant to the Settlement Agreements.  Parties eligible to file new claims may include:

(1)   Excluded industries that were not given the opportunity to file pursuant to the DHEPDS Agreement who are not excluded under the terms of the Settlement Agreements;

(2)   Local Governments, as defined in the Settlement Agreements;

(3)   Individuals/entities that received confirmation of having filed a valid Opt-Out request for the DHEPDS; and

(4)   The limited number of individuals/entities that were not DHEPDS Class Members whose claims for physical damage to personal property were not compensable under any of the DHEPDS Damage Categories.

### A.    Vessel Physical Damage Claim Type

Given the limited number of parties that are anticipated to be eligible to file a new claim in this claim category, a simplified calculation model will be employed for this claim category.

New Claimants must be able to demonstrate he/she/it:

(1)   Owned a vessel damaged as a result of the Deepwater Horizon Incident;
(2)   Did not sign a GCCF Release;
(3)   Did not sign a Vessel of Opportunity Receipt and Release Letter Agreement regarding damage reimbursement;
(4)   Can document the claimed damages occurred on or before December 31, 2010; and
(5)   Are prepared to submit a sworn written statement confirming the condition of the vessel prior to the damage occurring.

Damage valuations for new claims will be based on the length of the vessel.  The median DHEPDS dollar value per foot of vessel length for damaged vessels has been established by the New Class Claims Administrator [12] as follows:

| Vessel Physical Damage | Base Compensation Per Foot of Damaged Vessel |
|---|---|
| Value per Linear Foot | $275 |

Vessel length will be rounded to the nearest foot, with 6" or more being rounded up to the next foot.

Separate claims must be filed by each co-owner for his/her/its share (unless married co-owners), but confirmation of other owners' names must be provided with each partial claim.

Damages incurred after January 1, 2011, will not be considered given the exceedingly limited likelihood the damage could be proven to be the result of the Deepwater Horizon Incident.

---

[12] The Base Compensation per Foot of Damaged Vessel Length was based primarily on the median damage value per foot of vessel length; the DHEPDS VPD Claim Type was over 90% resolved at the time of median calculation. The Claims Administrator redacted any DHEPDS Vessel Physical Damages claim where a GCCF Release had been executed from the median calculation as well as DWH resolved VPD claims with inadequate data to be considered in the median calculation.

**B.**    **Other Personal Property Damage in Excess of $500 Claim Type**

Claimants will be required to provide documentation collected contemporaneous to the date of damage, which may include, but is not limited to: photos, videos, damage reports, purchase receipts/valuation documentation, repair/replacement cost estimates/receipts, and an affidavit regarding the damage for consideration by the New Class Claims Administrator.

Given the time and cost associated with the review of claims and the likely proration factor based on the value of the New Class portion of the Settlement Funds, only claims with a potential value of $500 or more will be considered.  Claims under this threshold should not be submitted and, if submitted, will be summarily denied.  The New Class Claims Administrator will cap the pool for claims in this category at $50,000 as further described in the Allocation/Calculation section below.

Each claim will be valued on a case-by-case basis using the contemporaneous documentation provided by the claimant to establish a loss value, or, in the discretion of the New Class Claims Administrator, a $100 flat rate may be applied if any element necessary for individual calculation of an otherwise eligible claim is omitted from the initial filing, which will be noted in the determination letter to the claimant.  This alternate valuation will be utilized in an attempt to reduce administrative time and costs associated with requesting and reviewing additional documentation to reach an exact, individualized damage value where such endeavor is not likely to yield a payable amount to the claimant that is equal to or greater than the cost of conducting further evaluation.

**C.**    **Personal Property Damage Documentation Requirements**

Required documentation for such claimants shall include proof of claimant's timely preservation of its rights to a claim for damages by compliance with MDL-2179 Pretrial Order 60 in addition to the following claim type-specific documentation:

| Documentation Required | Personal Property Damages >$500 unrelated to Real Property | Vessel Physical Damage |
| --- | --- | --- |
| Personal Property Damage Claimant Sworn Written Statement (SWS-1) and supporting documentation | X | |
| Vessel Physical Damage Claimant Sworn Written Statement (SWS-9) and supporting documentation | | X |
| 2010 Vessel Registration | | X |
| Vessel Title | | X |

**III.**    **Commercial Fishermen & Charterboat Operators Claim Category**

It is anticipated that nearly all New Claimants in this category will be Menhaden (pogy) fishermen that were excluded from participating in the DHEPDS program.  The potential groups who would not have been allowed to file a Seafood Compensation claim in DHEPDS could include:

(1)  Excluded industries that were not given the opportunity to file pursuant to the DHEPDS Agreement who are not excluded under the terms of the Settlement Agreements; and

(2)  Individuals/entities that received confirmation of having filed a valid Opt-Out request for the DHEPDS who timely filed individual lawsuit filed in MDL-2179 to preserve his/her/its rights.

Required documentation for such claimants shall include proof of claimant's timely preservation of its rights to a claim for damages by compliance with MDL-2179 Pretrial Order 60.

Additionally, the New Class Claims Administrator has received copies of the various state and federal licensure databases for commercial and recreational fishing; to the extent a license is needed for any of the Commercial Fishermen claim types, these databases will be utilized.  If a license cannot be identified within the database, a claimant will have the opportunity to provide a copy of the license in question as part of the claims review process.

For reasons of administrative efficiency and in order to limit administrative costs borne by the New Class, the compensation period will be consistent with the prior DHEPDS Class Period for similar claims; no compensation will be awarded for dates prior to April 20, 2010, or after April 16, 2012.

        **A.**       **Menhaden Catch Type**

Menhaden landings and revenues from 2009 and 2010, per publically-available National Wildlife and Fishery Service data, were compared to calculate an industrywide, Gulf-based lost revenue for 2010, estimated to be attributable to the Spill.  The New Class Claims Administrator reviewed NOAA Menhaden data for other years, considered adjustments taken into account as part of DHEPDS Frameworks for other Seafood Compensation catch types, and consulted with industry experts to establish a loss valuation model (as Menhaden claims were not considered by the DHEPDS).  Based on this analysis, it was determined that a 17% loss value would be assigned based on revenues for the industry as a whole.  Using industry-supplied information, and after comparing loss values to that of similar claim types and similar vessel sizes, the Claims Administrator established a Base Compensation Amount for the various Operator Types.

It should be noted that only Vessel Owners/Lessees may have more than one claim (one claim per vessel actively fishing in 2010).  For all other Operator Types, annual income data provided by various sources and review of the other similar claim type valuations were considered in establishing the overall loss values; only one claim may be filed by any one individual for their dominant 2010 Operator Type.

As such, flat dollar loss valuations for the Menhaden Operator Types have been established as follows:

| Menhaden Operator Type | Base Compensation Amount |
|---|---|
| Vessel Owner/Lessee | $184,000 |
| Boat Captain | $20,100 |
| Boat Pilot | $6,550 |
| Mate | $5,350 |
| Fisherman | $4,000 |
| Chief Engineer | $6,700 |
| 2nd Engineer | $4,750 |
| Aerial Spotter | $13,600 |
| Cook | $4,250 |

Documentation requirements for the various Menhaden Operator Types and Crew will include:

| Menhaden Documentation Required | Menhaden Vessel Owner/ Lessee | Menhaden - All Other Operator Types |
|---|---|---|
| Proof of vessel ownership/lease 4/20/2010 - 12/31/2010 | X | |
| Vessel Commercial Fishing Licenses 2009/2010 (one per vessel claimed) | X | |
| Vessel Name/Registration Number (state & federal, all vessels claimed) | X | |
| Gulf Coast Area Home Port Proof 4/20/2010-12/31/2010 | X | |
| Vessel Boat Captain Status Sworn Written Statement (SWS-6); if Boat Captain was not also Owner/Lessee affidavit must contain all Boat Captain names for Class Period for each vessel claimed | X | |
| 2010 Boat Captain's license, if applicable | | X |
| 2010 W-2 related to Menhaden Fishing | | X |
| 2010 Tax Returns | X | X |
| Employment Contract/Catch Share Contract for 2010 (if available) | | X |
| Vessel Log, Captain's Log, Share Sheets, Sales/Production reports, as available | X | |

**B.    Shrimp Catch Type**

Shrimp Compensation claims for Vessel Owners, Vessel Lessees, and Boat Captains by eligible New Claimants will be assigned a Base Compensation Amount by the New Class Claims Administrator. The Base Compensation Amounts were established primarily on the median DHEPDS base loss compensation for the same shrimp Operator Type[13] for the vessel size and cooling type, as applicable.[14]

The claim valuation matrix below was established using DHEPDS determination data from subsets of eligible Shrimp claims' DHEPDS base compensation amounts for the Operator Types noted in each DHEPDS vessel length range/vessel cooling mechanism type (ice or freezer), as applicable, pursuant to the DHEPDS Seafood Compensation Framework.  The Shrimp Base Compensation Amounts are as follows:

| Shrimp Operator Type | <30 ft | 30-45 ft | 45-75 ft (Ice) | 45-75 ft (Freezer) | 75+ ft (Ice) | 75+ ft (Freezer) |
|---|---|---|---|---|---|---|
| Vessel Owner/Lessee | $1,200 | $5,400 | $6,800 | $13,450 | $11,500 | $20,250 |
| Boat Captain | $1,450 | $6,600 | $10,850 | $24,800 | $21,050 | $44,000 |

---

[13] Operator Types for all Catch Types other than Menhaden are defined for purposes of the Distribution Model to include Boat Captains, Vessel Owners, and Vessel Lessees across all DHEPDS Seafood Compensation claim types.

[14] The Claims Administrator utilized data subsets from the DHEPDS Seafood Compensation Seafood Program to identify various median values for Catch Type/Operator Type combinations discussed in this Distribution Plan; at the time the data was extracted, in excess of 97% of Seafood Compensation claims were resolved.

Documentation requirements for the various Shrimp Operator Types will include:

| Shrimp Documentation Required | Vessel Owner | Vessel Lessee | Boat Captain |
|---|---|---|---|
| Proof of vessel ownership 4/20/2010 - 12/31/2010 | X | | |
| Vessel Commercial Fishing License 2009/2010 | X | X | |
| Vessel Name/Registration Number (state & federal) | X | X | |
| Gulf Coast Area Home Port or Landings Proof 4/20/2010-4/16/2012 | X | X | |
| Vessel Ownership-Lease Status Claimant Sworn Written Statement (SWS-7) and supporting documentation | X | X | |
| Vessel Boat Captain Status Claimant Sworn Written Statement (SWS-6) and supporting documentation | X | X | |
| Boat Captain's license 2009/2010 | | | X |
| Proof of Boat Captain employment 4/20/2010-4/16/2012 on vessel(s) home ported or with landings in the Gulf Coast Areas | | | X |
| 2010 Tax Returns | X | X | X |
| Proof of vessel size & cooling mechanism (ice or freezer) | X | X | X |
| Vessel Log, Captain's Log, Share Sheets, Sales/Production reports, if available | X | X | X |

**C.** **Oyster (excluding Real Property Oyster Leaseholder claims) Blue Crab, Finfish, and Other Seafood Catch Types**

Base Compensation Amounts for Oyster, Blue Crab, Finfish, and Other Seafood Vessel Owners, Vessel Lessees, and Boat Captains by eligible New Claimants were also established by reviewing DHEPDS base compensation amount data subsets for resolved DHEPDS Seafood Compensation Program claims.

The Claims Administrator determined a Base Compensation Amount for each of the DHEPDS Catch Type/Operator Types combinations noted below, again, basing these values primarily on the medians established during review of the data subsets.  These values will be applied as the Base Compensation Amounts for any eligible new claims received:

| Operator Type | Base Compensation Amount |
|---|---|
| Oyster Vessel Owner/Lessee | $3,500 |
| Oyster Leaseholder Lost Interest | $8,700 |
| Oyster Harvester & Leaseholder Lost Interest | $28,000 |
| Oyster Boat Captain | $3,700 |
| Blue Crab Vessel Owner/Lessee | $2,800 |
| Blue Crab Boat Captain | $2,100 |
| Finfish Vessel Owner/Lessee | $1,650 |
| Finfish Boat Captain | $1,200 |
| Other Seafood Vessel Owner/Lessee | $750 |
| Other Seafood Boat Captain | $500 |

Documentation requirements will include the following:

| Other Seafood Compensation Categories Documentation Required | Oyster | | | | Finfish, Blue Crab, and Other Seafood | | |
|---|---|---|---|---|---|---|---|
| | Leaseholder Lost Interest[15] | Vessel Owner | Vessel Lessee | Boat Captain | Vessel Owner | Vessel Lessee | Boat Captain |
| Proof of vessel ownership 4/20/2010 - 12/31/2010 | | X | | | X | | |
| Proof of oyster bed leasehold 4/20/2010 – 12/31/2010 | X | | | | | | |
| Vessel Commercial Fishing License 2009/2010 | | X | X | | X | X | |
| Vessel Name/Registration Number (state & federal) | | | X | | X | X | |
| Gulf Coast Area Home Port Proof 4/20/2010-12/31/2010 | | | | | X | X | |
| Oyster Leaseholder Claimant Sworn Written Statement (SWS-4) and supporting documentation | | X | X | | X | X | |
| Vessel Boat Captain Status Claimant Sworn Written Statement (SWS-6) and supporting documentation | | X | X | | X | X | |
| Boat Captain's license 2009/2010 (issued before 4/20/2010 for Oyster claims) | | | | X | | | X |

[15] Oyster Leaseholder Lost Interest and Vessel Lessee/Operator claims will be combined and will use the Oyster Combined Harvester and Leaseholder median; documentation for both of the appropriate categories should be provided by the claimant.

| Other Seafood Compensation Categories Documentation Required | Oyster | | | | Finfish, Blue Crab, and Other Seafood | | |
|---|---|---|---|---|---|---|---|
| | Leaseholder Lost Interest | Vessel Owner | Vessel Lessee | Boat Captain | Vessel Owner | Vessel Lessee | Boat Captain |
| Proof of Boat Captain employment 4/20/2010-4/16/2012 on vessel(s) home ported or with landings in the Gulf Coast Areas | | | | X | | | X |
| 2010 Tax Returns | X | X | X | X | X | X | X |
| Vessel Log, Captain's Log, Share Sheets, Sales/Production reports, if available | | X | X | X | X | X | X |
| Proof of Gulf Coast Area landings 2010 | | X | X | X | | | |
| Contract/agreement for harvesting for Zone A, B, or C leases | X | | | | | | |
| Oyster Leaseholder Claimant Sworn Written Statement (SWS-4) and supporting documentation | X | | | | | | |

D.    **Individual Fishing Quotas Claim Type**

New Individual Fishing Quotas (IFQ) share claims will be evaluated using the same methodology as described in the DHEPDS Seafood Compensation framework.  The eligible IFQ species noted below[16] will be given a value as noted, then multiplied by .625 to establish the Base Compensation Amount.

| Species | Price per .0001% of Allowed Catch /1 IFQ Share |
|---|---|
| Red Snapper | $44.90 |
| Gag Grouper | $6.75 |
| Red Grouper | $20.67 |
| Deep Water Grouper | $4.99 |
| Shallow Water Grouper | $1.64 |
| Tilefish | $1.08 |

Documentation requirements will include proof of IFQ share ownership from the issuing agency, along with an affidavit that the share(s) were not sold to another party, or, if sold or co-owned, an affidavit confirming sale supported by any agreements or documentation including name of seller and purchaser,

---

[16] *See* DHEPDS Agreement Exhibit 10, Section II.B. 3-4 for further details.

percentages/terms, proof of payment, co-ownership agreement, etc.  Partial claims where a share was divided/co-owned will be allowed, but documentation of all owners will be required on each claim.

| Documentation Required | Individual Fishing Quotas (IFQ) |
|---|---|
| Individual Fishing Quota Claimant Sworn Written Statement (SWS-5) and supporting documentation | X |

### E.     Seafood Crew Claim Type

New Seafood Crew claimants, other than Menhaden crew, that meet eligibility requirements will have the median, eligible DHEPDS Crew claim value applied:[17]

| Seafood Crew | Base Compensation Amount |
|---|---|
| Seafood Crew Claim Valuation | $3,500 |

Limited documentation for verification purposes will be required as follows:

| Documentation Required | Seafood Crew |
|---|---|
| Seafood Crew Compensation Plan Claimant Sworn Written Statement (SWS-2) and supporting documentation | X |

This data will be matched against existing data for Seafood Compensation claims and/or verified with the claimed employer(s). Additional documentation may be required to substantiate a claim. Failure to provide documentation showing rights to pursue compensatory damages have been reserved by the claimant pursuant to MDL-2179 Pretrial Order 60 will result in a valuation of $0.

### F.     Charterboat Operators Claim Type

New Charterboat Operator claims will be assessed using a set value established by the New Class Claims Administrator.  The value was based primarily on the median for a set of identified Charterboat Operator BEL claims (inclusive of Failed BEL and Start-up BEL claims) confirmed to fall under NAICS Code 487210 by the DHEPDS Program, which delineates the business as a charterboat operation. The value utilized was the DHEPDS base compensation before the application of RTP.

| Charterboat Operators | Base Compensation Amount |
|---|---|
| Charterboat Operator Claim Valuation | $22,700 |

---

[17] The median Seafood Crew claim value was established based on actual DHEPDS data when 95.97% of all Seafood Compensation claims were resolved.

Limited documentation will be required for verification purposes as noted below:

| Documentation Required | Charterboat Operator |
|---|---|
| 2010 Charterboat License | X |
| Proof of Vessel Ownership/Lease 4/20/2010 - 12/31/2010 | X |
| Vessel Name/Registration Number (state & federal, all vessels claimed) | X |
| Gulf Coast Area Home Port Proof 4/20/2010 - 12/31/2010 | X |
| Charterboat Operator/Crew Claimant Sworn Written Statement (SWS-3) (sections A and B only) and supporting documentation | X |

Failure to provide documentation showing rights to pursue compensatory damages have been reserved by the claimant pursuant to MDL-2179 Pretrial Order 60, in addition to the Claim Type-specific documentation noted above, will result in a valuation of $0.

### G.    Charterboat Crew Claim Type

New Charterboat Crew claimants must have worked on an eligible charterboat during the compensation period and provide the required documentation.  Claims that meet these criteria and are eligible to file as New Claimants will be assessed a Base Compensation Amount set by the New Class Claims Administrator.  This value was set based on very limited DHEPDS eligible claim data as few claimants could meet the DHEPDS documentation requirements and consultation with industry experts. Given the limited number of claims received in DHEPDS and their relatively low value, this category is limited to a maximum payout of $50,000 of the Settlement Funds, so this amount could be subject to proration as further described in the Allocation/Calculation section below should a large number of eligible New Class claimants be deemed payable.

| Charterboat Crew | Base Compensation Amount |
|---|---|
| Charterboat Crew Claim Valuation | $500 |

Limited documentation will be required for verification purposes as described below:

| Documentation Required | Charterboat Crew |
|---|---|
| Charterboat Operator/Crew Claimant Sworn Written Statement (SWS-3) (sections A and C only) and supporting documentation | X |

### IV.    Loss of Subsistence Claim Category

There are few eligible New Claimants with Loss of Subsistence claims anticipated as the only group that could be eligible who were not allowed to file in DHEPDS was individuals who received confirmation of having filed a valid Opt-Out request for the DHEPDS.

Required documentation for such claimants shall include proof of claimant's timely preservation of rights to a claim for damages by compliance with MDL-2179 Pretrial Order 60.

Loss of Subsistence claimants will receive an equal share of the Subsistence claims pool, which is anticipated to be divided amongst approximately 40,000 individuals, as further described in the Allocation/Calculation section below.

| Documentation Required | Loss of Subsistence |
|---|---|
| Loss of Subsistence Claimant Sworn Written Statement (SWS-8) | X |

For reasons of administrative efficiency and in order to limit administrative costs borne by the New Class, the compensation period will be consistent with the prior DHEPDS Class Period for similar claims; no damages will be awarded for dates prior to April 20, 2010, or after December 31, 2011.

**ALLOCATION / CALCULATION**

The DHEPDS used customized frameworks to evaluate the various DHEPDS Damage Category claim types in varying ways.  For example, Charterboat Operators' damages were valued under the Business Economic Loss (BEL) methodologies, but the claims of Commercial Fishermen were evaluated under an entirely separate framework with its own methodology broken out further into sub-categories of seafood and awards that were distributed from a segregated fund, collectively known as the Seafood Compensation Program.  As a result, awards under the DHEPDS are generally proportionate within a given DHEPDS Claim Type, but those awards are not as reasonably comparable between differing DHEPDS Claim Types.

This Distribution Model was designed to keep this structure in mind, while additionally taking into account those claims types with the highest likelihood of recovery under general maritime law and the *Robins Dry Dock* line of cases.  The estimated[18] DHEPDS compensation amount determinations[19] for *Robins Dry Dock*-eligible claims were utilized as a compensatory damages baseline, allowing for allocation of the gross Settlement Funds into sub-pool percentages of the distributable funds.  This methodology has the benefit of allowing the New Class Claims Administrator greater flexibility in distributing certain claim categories that may have complete DHEPDS data available before others.

**I.    Allocation Reasoning**

To allocate the Settlement Funds into sub-pool percentages that can later be applied to the net value of the Settlement Funds after deduction for administrative costs and expenses, each Claim Category was first assessed for the strength of the claims within the Claim Category and given a valuation.  The following steps were utilized:

(1)  Evaluate the general maritime law principles at play and identify claim characteristics that would yield preference under the *Robins Dry Dock* line of cases;

(2)  Assess each Claim Category's strength in light of general maritime law principles and the *Robins Dry Dock* pure economic loss rule, and assign a preference level; and

---

[18] Actual DHEPDS determinations were included as available. DHEPDS pending, but undetermined, claim values were estimated based on an analysis including application of the acceptance rate to date for that particular DHEPDS claim type multiplied by the average of prior paid claims for that claim type.

[19] Real Property and Personal Property claim categories, based on their *Robins Dry Dock* viability, include RTP values in the baseline calculation; the determination to include or exclude RTP is further discussed under the individual claim type analysis sections.

(3)   As appropriate, establish an enhancement or reduction to be applied to the underlying DHEPDS compensation amount and/or compensation amount, plus RTP in the calculation section below.

The following levels of preference and associated descriptions are intended to summarize the overarching principles related to the payment of punitive damages under general maritime law, *Robins Dry Dock,* and its progeny.  Each of the Claim Categories was assessed and identified as falling under one of the following preference levels.  This identified the strength of claims within each Claim Category and served as the basis for any enhancement or reduction of the Base Compensation Amounts discussed later in this Distribution Model.

Tier 1 is the highest level of preference and Tier 4 is the lowest, with the most limited likelihood of recovery upon application of general maritime law principles, particularly *Robins Dry Dock* limitations.

| Preference Level | Description |
|---|---|
| Tier 1 | Most likely to recover under general maritime law; meets the physical damage to real or personal property requirement identified by *Robins Dry Dock* and its progeny. |
| Tier 2 | Highly likely to recover; this tier represents economic damages associated with physical damage to real or personal property, the cornerstone of eligibility for claims made under general maritime law and the *Robins Dry Dock* line of cases.  These are the strongest economic claims that can be made. |
| Tier 3 | Special exemptions to the long-standing *Robins Dry Dock* pure economic loss limitations were established in some circuits. |
| Tier 3A | Case law in some circuits has established and applied an exception for commercial fishermen citing preferred treatment of the commercial fishing industry as "favored" by general maritime law; it is acknowledged that commercial landings are not property of the fishermen until caught, but it was determined that commercial fishing losses are reasonably foreseeable in the event of an environmental disaster like an oil spill, thus exempting these purely economic losses from the long-standing precedent excluding this type of loss from punitive damage compensation per *Robins Dry Dock*. |
| Tier 3B | Following a similar line of thought for the commercial fishing exemption, an allowance was carved out by the  United States Ninth Circuit Court of Appeals for subsistence fishermen, but given less favorable treatment than commercial fishermen with awards under this exemption later being reduced. |
| Tier 4 | Claims with no identifiable physical damages; these are claims for economic damages only, but similarly situated to commercial fishermen and, as such, looking to the justification that economic damages should have been reasonably foreseeable, are inclusive of claims that have never been deemed exempt from the *Robins Dry Dock* limitations. |

###### A.      Real Property Damage

Real Property claims under the Settlement Agreements require physical contact with oil or other Spill-related substances; these damages fit the requirements for Tier 1 preference.  This type is considered strong in light of the prevailing law.  Given economic damages appurtenant to the physical damage would be considered for compensation under general maritime law and would be considered Tier 2 claims, it is proposed that those Real Property claims that received an RTP award in addition to compensatory damages in their DHEPDS claim valuation retain that RTP value as part of their Base

Compensation Amount.  To further underscore the value of the Tier 1 preference and the appurtenant economic losses related to the physical damages, an additional 65% enhancement of the DHEPDS Estimated Award[20] baseline is proposed.

New claims will receive the same level of preference and an increase to base compensation equivalent to their counterpart DHEPDS-assessed claims.

This methodology was specifically designed to acknowledge and reasonably account for the economic losses associated with physical damage to real property even though such economic losses were not included within the scope of the DHEPDS compensation figure for the DHEPDS property damage claim types.  Rather, these losses were associated with Business Economic Loss claims related to the same property.  BEL claims associated with real property ownership were not considered by this Distribution Model directly due to the administrative time and cost that would be associated with that analysis and certain missing data elements within the DHEPDS data that would have been required for this program.  Further, this methodology seeks to yield as close to a 1:1 compensatory to punitive damages ratio after proration as possible given the value of the Settlements.

DHEPDS claim types that will be considered eligible include: CRP (all zones, inclusive of claims for physical damage to personal property), WRP (all zones, inclusive of claims for physical damage to personal property), RPS, and Oyster Leaseholder.[21]

### B.    Personal Property Damage

Physical contact with oil or other Spill-related substances related to the Deepwater Horizon Incident causing damage to personal property is also a Tier 1 claim.  As such, claims for personal property losses that were filed in DHEPDS in association with Real Property CRP and WRP claims will also include any RTP awarded as part of their Base Compensation Amount, and new claims will receive an equivalent enhancement.[22]  All claims in the personal property claim category are proposed to receive a 65% enhancement to account for economic losses associated with physical damage to personal property.

For Vessel Physical Damage claims, no RTP was available in DHEPDS, but this claim type will receive a full DHEPDS compensation amount calculation value for its baseline, in addition to the 65% enhancement.  Furthermore, in many instances, vessel owners are also Seafood Compensation claimants; thus, additional economic losses may be represented elsewhere in the Distribution Model.

Given the program anticipates a limited number of valid, new personal property claims with damages in excess of $500 (unrelated to damage to real property), the fund pool for this limited claim type has been restricted to a *de minimus* value of $50,000.

---

[20] *See* allocation chart below, Footnote 18 regarding the calculation of DHEPDS Estimated Awards.

[21] RTP is not available for RPS or Oyster Leaseholder claims, but this was considered by the Claims Administrator and determined to be acceptable as most RPS claimants were also able to make a CRP claim, thus they are being fully compensated between the two categories and most Oyster Leaseholders also have an Oyster Leaseholder Lost Income claim, so their economic losses are being considered elsewhere as well.

[22] For the sake of administrative efficiency the valuation associated with DHEPDS Physical Damage to Personal Property claims associated to a CRP or WRP claim are included in the chart at the end of this section as part of the CRP and WRP values; treatment for allocation purposes remains constant regardless, but the distribution timeline could vary.

C.        **Commercial Fishermen & Charterboat Operators**

The recovery of punitive damages for commercial fishermen is based on an exception to the *Robins Dry Dock* pure economic loss rule.  Despite the fact that the fish upon which commercial fishermen derive economic benefit are not "owned" prior to being caught, this exception arose out of cases in the United States Ninth and Eleventh Circuit Courts of Appeals in which commercial fishermen were identified as a group whose losses are reasonably foreseeable in the event of an environmental disaster in state or federal waters.  These claims do not meet the longstanding historical limitations set forth by *Robins Dry Dock* and general maritime law; but rather, they depend upon the application of an exemption to that longstanding historical rule.  Some argue that though it has been cited in court opinions, this commercial fishermen exception has not yet actually been adopted and applied by the U.S. Fifth Circuit.  *See* Benjamin J. Steinberg and Dwayne Antonio Robinson, *Making BP's Blood Curd-Le: Duty, Economic Loss and the Potential Cardozian Nightmare after Curd v. Mosaic Fertilizer, 63 Fla.L.Rev. 1245 (2011).*  Given their somewhat less concretely established standing under *Robins Dry Dock* and its progeny, commercial fishermen claims are afforded a lesser priority under this Distribution Model than are Real Property and Personal Property claims, along with their appurtenant economic loss claims noted above.  However, given fishermen have a long history of being favored under maritime law, no reduction has been applied to this category of Tier 3A claims.

Charterboat Operators, inclusive of crew, were specifically noted in the Settlement Agreements despite not having a clear exception available in any jurisdiction, although an argument could be made that if commercial fishermen are detrimentally affected because of their reliance on fisheries within public waters, similar deference should be given to charterboat operations that rely on many of the same fisheries for their livelihood.  That said, given the more remote likelihood of recovery under general maritime law, these claims received a Tier 4 level of preference and a reduction in value from the DHEPDS compensation amount baseline (or generally equivalent new claim calculation) in the amount of 55%.

D.        **Loss of Subsistence**

The U.S. Fifth Circuit has not, to date, recognized an exception to the *Robins Dry* Dock physical damage requirement for Subsistence fishermen. Nonetheless, Subsistence fishermen were specifically noted in the Settlement Agreements, and valid arguments can be made in favor of their right to recover punitive damages including those based on their similarities with commercial fishermen as well as arguments based on case law arising from Alaska's Exxon Valdez oil spill.  Given such viable arguments, it is recommended that these claims be assigned some value under this Distribution Model.  That said, a clearly established right to punitive damages under existing U.S. Fifth Circuit law and objective evidence upon which to evaluate such claims is lacking.  As a practical matter, these claims are assigned a Tier 3B level, yielding a greater reduction in value than the Commercial Fishermen due, in part, to these additional issues with proof of loss.  As such, a reduction of 50% was applied to the DHEPDS Estimated Awards value to establish the pool for Loss of Subsistence distribution.

It was further determined that a better means of distribution would be to divide the limited funds available equally among all eligible Loss of Subsistence claimants, rather than proportionally based on their use of that right for the benefit themselves and others - the basis of DHEPDS compensatory damage calculations - given the right to hunt or fish is equivalent among all claimants.

II.        **Calculation Methodology**

The goals of this Distribution Model calculation methodology are to:

(1) Afford what are reasonably proportionate awards to all members of the New Class, taking into account the extent of underlying compensatory damages and their likelihood of recovery *under Robins Dry Dock;*

(2) Accomplish this end in the most cost-efficient manner possible as the New Class will bear the burden of the administrative expenses; and

(3) Expedite payments to the greatest degree possible as it has already been six years since the Deepwater Horizon Incident occurred increasing the likelihood that contact information is becoming outdated.

To best accomplish this, a Prorated Gross Settlement Fund Allocation has been established among the various New Class claim categories, which was then converted to percentages that will be applied to the Net Settlement Fund.[23] Establishing these allocations will allow for distribution of each claim category's share of the Settlement Funds, less administrative expenses or any reserve necessary for anticipated additional administrative expenses, while expediting payment and reducing the administrative overhead including questions about when the distribution will occur for those claims. As such, the New Class Claims Administrator will have the flexibility to distribute any claim category when its review data is complete and the distribution is approved.

| New Class Claim Category | Estimated DHEPDS Awards By Category[24] | Recommended Priority Enhancement / Reduction | Prorated Gross Settlement Fund Allocation (Dollars) | Prorated Gross Settlement Fund Allocation (Percentage) |
|---|---|---|---|---|
| Real Property | $1,556,230,365 | 65% | $721,097,762 | 79.94% |
| Personal Property | $11,856,576 | 65% | $5,543,885 | 0.61% |
| Commercial Fishermen[25] | $573,734,626 | --- | $161,119,231 | 17.86% |
| Charterboat | $14,467,143 | (55%) | $1,818,851 | .20% |
| Loss of Subsistence | $88,981,560 | (50%) | $12,494,139 | 1.39% |
| **TOTAL** | $2,245,270,271 | (55% )- 65% | $902,083,250 | 100.00% |

Once a Net Settlement Fund value is established and the Prorated Gross Settlement Fund Allocation Percentage is applied, this will determine a distribution pool value for that New Class claim category.

[23] The Net Settlement Fund is the New Class $902,083,250 allocation of the Settlement Funds less any administrative costs and expenses, and any reserve deemed appropriate by the Claims Administrator. The Net Settlement Value will be set, at the earliest, when the first New Class Claim Category data is complete, inclusive of all DHEPDS calculations for relevant DHEPDS claim types and any new claims (but the Claims Administrator is not required to do so at that time and may wait for a later time as he deems appropriate). Such action may require a Distribution Order from the Court as well. Should additional New Class Claim Types remain pending, an administrative costs reserve may be established as well.

[24] This value represents DHEPDS determination data available as of December 17, 2015, along with estimated values for pending, but undetermined claims. Estimated values were based on an analysis of determined claims data. The acceptance rate to date for that particular DHEPDS claim type was applied to the undetermined claim count, then multiplied by the average DHEPDS compensation amount of prior paid claims for that claim type, including or excluding RTP as delineated in the valuation reasoning sections above.

[25] Although the Settlement Agreements contemplate Commercial Fishermen and Charterboat claimants to be comingled in one claim category, segregation for allocation purposes is necessary due to the significant differences in their likelihood of recovery under *Robins Dry Dock.*

With some limited exceptions, each Claim Category's pool will be divided proportionately among the eligible claims within that category based on the base compensation amounts determined by the DHEPDS and/or this program.  The formula for these standard claims is as follows:

Step 1: (Claimant's Base Compensation Amount) / (Total of all Base Compensation Amounts for all claimants in that claim category)

Step 2: Multiply (Step 1 Value) x (Claim Category Net Settlement Fund Pool Value[26]) to determine their HESI/Transocean Award

Loss of Subsistence claims will not receive a proportional value based on the individual claimant's Base Compensation Amount, but rather an equal share as divided among all eligible Loss of Subsistence claims based on the Loss of Subsistence allocation of the Net Settlement Fund.

Maximum pool values were set for personal property claims in excess of $500 in damage (unrelated to Real Property damage) and Charterboat crew claims, both being set with maximum pool values of $50,000, which, if claims exceed that threshold after initial application of the claim category's *pro rata*, may result in the need to calculate a claim category sub-type *pro rata*.

### Allocation Amongst Claim Categories

**Based on the analysis as outlined above, the New Class Claims Administrator recommends allocating the Aggregate Payments, less administrative fees, expenses, and any necessary reserve value, into Claim Category Net Settlement Fund Pools that will then be subject to further proportional allocation among eligible New Class members with valid claims in each Claim Category.  This recommendation is based on an analysis of the DHEPDS paid claims and the estimated value of DHEPDS undetermined claims for eligible DHEPDS Claim Types.  The recommended allocation amongst Claim Categories is the following:**

| New Class Claim Category | Net Settlement Fund Percentage Allocation |
|---|---|
| Real Property | 80.0% |
| Personal Property | 0.6% |
| Commercial Fishermen[27] | 17.8% |
| Charterboat | 0.2% |
| Loss of Subsistence | 1.4% |
| TOTAL | 100.00% |

**In the event new claims significantly alter the claim mix or values for the New Class Claim Types, the New Class Claims Administrator reserves the right to reallocate as much as 3% of the overall Settlement Funds between the Claim Categories to accommodate statistically significant**

---

[26] The Claim Category Net Settlement Fund Pool Value is the dollar value available for distribution for a particular claim category after reduction of administrative fees, expenses, and any reserve from the Aggregate Payments after applying the Net Settlement Fund Allocation Percentages noted below.

[27] Although the Settlement Agreements include both Commercial Fishermen and Charterboat claimants in the same paragraphs, segregation for allocation purposes is necessary due to the significant differences in their likelihood of recovery under *Robins Dry Dock*.

**fluctuations in the Claim Category mix or value prior to final allocation in anticipation of the first round of distribution.**

### APPEALS PROCESS

Per the Settlement Agreements, claimants have the right to make an appeal to the District Court regarding program claim determinations.

When determination letters are issued, each will include a program-level appeal form.  For those claimants who choose to submit an appeal regarding their program determination, the New Class Claims Administrator will review the program findings on all timely-filed appeals and issue a final determination letter.

All final determination letters from the New Class Claims Administrator will include a District Court appeal form.  Those claimants who wish to request District Court review may utilize this form to do so by the date indicated on the form.  Per the Settlement Agreements, the District Court's finding is final and is not appealable to the U.S. Fifth Circuit or any other judicial body.

Of significant note, the underlying DHEPDS calculation methodology, framework, and eligibility determinations were previously subject to a right of appeal within the DHEPDS program; these findings are final and are not subject to appeal in this program.  Only determinations made directly by this program are subject to appeal.

### MISCELLANEOUS

Those claimants who were subject to a valid and final FWA denial under the DHEPDS program, who were subject to a clawback motion granted by the court in the DHEPDS program, or who were otherwise subject to a finding of fraud or material misrepresentation shall not be eligible for compensation under this Distribution Model.

Any claimant whose claim in this program contains fraud or material misrepresentation in any respect shall not be eligible for compensation under this Distribution Model.

The New Class Administrator reserves the right to require additional documentation or to consider appropriate alternative documentation he deems to be reliable and appropriate for verification and evaluation of a given claim.

The New Class Claims Administrator reserves the right to adjust the award amount in any specific case for equitable purposes in light of exceptional or extraordinary facts or circumstances relative to that claim.

Respectfully submitted this 13th day of June 2016.

/s/ Michael J. Juneau
MICHAEL J. JUNEAU, Bar No. 18277
NEW CLASS CLAIMS ADMINISTRATOR
P.O. Box 51268
Lafayette, LA 70505-1268
Telephone No. (337) 269-0052

# EXHIBIT 1



Must be
Postmarked
No Later Than
December 15, 2016

**Halliburton/Transocean Punitive Damages &
Assigned Claims Settlements
PO Box 10260
Dublin, OH 43017-5760
1-877-940-7792
GulfSpillPunitiveDamagesSettlement.com**



Claim Number:

Control Number:

| PART I - GENERAL INSTRUCTIONS |
| --- |

1. **IN MOST CASES YOU DO NOT NEED TO FILE A CLAIM FORM; IF YOU WERE A DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT (DHEPDS) CLAIMANT YOUR DHEPDS CLAIM WILL BE TRANSFERRED AUTOMATICALLY FOR REVIEW.** You are urged to carefully read the Distribution Model available for review or download from GulfSpillPunitiveDamagesSettlement.com.

   Old Class Assigned Claims also settled under the HESI and Transocean Settlements will not be allocated by the New Class Claims Administrator. **DO NOT FILE A NEW CLASS CLAIM** if your only potential eligibility is as an Old Class Assigned Claims class member.

   All capitalized terms used in the Claim Form shall have the same meaning as defined in the Distribution Model or Settlement Agreements; all are available for download at GulfSpillPunitiveDamagesSettlement.com or you may request mailed copies by calling 1-877-940-7792.

2. If you are **NOT** a member of the New Class OR the questions in Part II - "Should I File a Claim?" indicate you do not need to file a New Class claim, **DO NOT** submit a Claim Form.

   The value of the Settlement Fund will be reduced by the amount of administrative costs and expenses used to determine claims and notify claimants; filing unnecessary claims will reduce the amount of funds available for distribution to the New Class.

3. If after completing Part II - "Should I File a Claim?" you are not sure if you need to file a New Class claim, please contact the Claims Administrator at 1-877-940-7792 or email Questions@GulfSpillPunitiveDamagesSettlement.com.

4. **All Claim Forms must be postmarked no later than December 15, 2016.** Do not email Claim Forms. Mail your completed and signed Claim Form addressed to the Claims Administrator at:

   HESI/Transocean Punitive Damages &
   Assigned Claims Settlements
   c/o Garden City Group, LLC
   PO Box 10260
   Dublin, OH 43017-5760

5. All claims must be made by the individual(s) or entity that incurred the loss at the time of the Spill unless documentation can be provided demonstrating a transfer of that interest; this documentation may include, but is not limited to the following:

   For Individuals - In the event of death or incapacity, executors/administrators, guardians/conservators, and trustees may complete and sign the Claim Form, but they must provide proof of their authority (e.g., court appointment, power of attorney, letters testamentary/domiciliary/administration, copy of trust instrument, proof of succession, etc.).

   For Entities – Proof of transfer would include purchase agreement signed by all parties, dissolution documentation showing who received final disposition of assets.

**Important** - *This form should be completed IN CAPITAL LETTERS using BLACK or DARK BLUE ballpoint/fountain pen. Characters and marks used should be similar in the style to the following:*

A B C D E F G H I J K L M N O P Q R S T U V W X Y Z 1 2 3 4 5 6 7 0

**To view Garden City Group, LLC's Privacy Notice, please visit http://www.gardencitygroup.com/privacy**



2

## PART I - GENERAL INSTRUCTIONS (CONTINUED)

6.   Claims will be delineated by taxpayer identification number for the claiming individual or entity in similar fashion to the handling by the Deepwater Horizon Economic & Property Damages Settlement (DHEPDS).

The prior exception for Real Property held jointly by a married couple will continue; for this claim type only one claim by one spouse will encompass 100% of the interest in the real property owned by the married couple.

**Please remember to consult Part II - "Should I File a Claim?" to determine if a Claim Form is actually required in order to evaluate your claim for a HESI/Transocean punitive damages award.**

7.   If you are *eligible to file* a Claim Form this is not a guarantee that your claim will yield a punitive damages award value.

8.   If Part II - "Should I File a Claim?" instructs you to file a Claim Form, you must fully complete the Claim Form and provide the required documentation.  Additional documentation may be required.  Failure to timely provide documentation as requested may result in rejection of your New Class claim.

## PART II - SHOULD I FILE A CLAIM?

1.   Are you a DHEPDS Class member that filed a "relevant claim type"[1] in the DHEPDS Program (also known as the Deepwater Horizon Economic Claims Center or "DHECC" or Court Supervised Settlement Program ("CSSP") from June 4, 2012 -  June 8, 2015?

☐ Yes - Go to Question 1a                                           ☐ No - Go to Question 2

1a.   Did you receive a payment from the DHEPDS Program?

☐   Yes - STOP; DO NOT FILE A NEW CLASS CLAIM.          ☐ No - Go to Question 1b
Your DHEPDS claim will transfer for consideration
automatically.

1b.   Are you still waiting for a determination on your DHEPDS claim?

☐ Yes - Go to Question 4                                           ☐ No - Go to Question 1c

1c.   Was your DHEPDS Program claim denied because you had a valid DHEPDS Opt Out?

☐ Yes - Go to Question 8                                           ☐ No - Go to Question 1d

1d.   Was your DHEPDS Program claim denied for another reason or withdrawn after issuance of an FWA Investigation Notice?

☐ Yes - STOP; DO NOT FILE A NEW CLASS CLAIM.          ☐ No - STOP; REQUEST ADDITIONAL ASSISTANCE.

New Class claim determinations/eligibility will be based solely on the submissions already made to the DHEPDS and upon the determination(s) by the DHEPDS.

Filing an additional claim cannot change your DHEPDS determination or award amount and will unnecessarily delay processing and payment of all claims in addition to increasing administrative costs, which must be paid from the Settlement Funds[2]  before the pro rata distribution to New Class eligible claimants will occur.

Call the HESI/Transocean Helpline at 1-877-940-7792 or email Questions@ GulfSpillPunitiveDamagesSettlement.com to request assistance in determining if you need to file a Claim Form.  Please contact the Claims Administrator at least two weeks in advance of the Claims Filing Deadline, December 15, 2016, if you require assistance.

---

[1] A "relevant claim type" as used herein means claims for Coastal Real Property (CRP), Real Property Sales (RPS), Wetlands Real Property (WRP), Vessel Physical Damage, Seafood Compensation, Business Economic Loss (BEL) for Charterboat Operators (as identified by assigned NAICS code), Individual Economic Loss (IEL) for Charterboat crew members (as identified by assigned NAICS code), and/or Loss of Subsistence.

Claims for other categories such as Vessels of Opportunity Charter Payment, BEL claims for any business other than a Charterboat Operation (including Start-Up, Failed, Individual Periodic Vendor, and Festival Vendor), IEL for any profession except a Charterboat Crew member are not eligible for punitive damages under general maritime law and will not be considered for New Class inclusion; all eligible, payable DHEPDS claims will remain part of the Old Class Assigned Claims portion of the Settlements.  The Old Class Assigned Claims allocation will be administered by the DHEPDS Claims Administrator, which is unrelated to the New Class claims process.



| PART II - SHOULD I FILE A CLAIM? (CONTINUED) |
| --- |

2.  Are you a person or entity that could have filed a claim with the DHEPDS (you were a DHEPDS Class member), but elected not to file a "relevant claim type" in the DHEPDS?

☐ Yes - Go to Question 4            ☐ No - Go to Question 3

3.  Are you a person or entity who received payment from BP pursuant to a voluntary settlement with BP, other than a settlement through the Gulf Coast Claims Facility ("GCCF"), and which settlement did not include a release of claims for punitive damages against Halliburton and Transocean?

☐ Yes - COMPLETE THE CLAIM FORM BELOW.            ☐ No - Go to Question 4

> All New Class claims will be subject to eligibility and documentation requirements for each specific claim type indicated by the claimant (CRP, WRP, RPS, Oyster Leaseholder, Vessel Physical Damage, Personal Property Damage >$500, Seafood Compensation, Charterboat Operator, Charterboat Crew, or Loss of Subsistence).

4.  Are you a person or entity that filed a valid opt-out for the DHEPDS?

☐ Yes - Go to Question 8            ☐ No - Go to Question 5

5.  Are you a person or entity that executed a GCCF Release and Covenant Not to Sue (other than those for bodily injury only) or BP Claims Process Full and Final Release, Settlement, and Covenant Not to Sue that gave up your rights to pursue claims for punitive damages from HESI and Transocean pursuant to your signed release?

☐ Yes - STOP; DO NOT FILE A CLAIM FORM.            ☐ No - Go to Question 6

> If you gave up your right to pursue punitive damages from HESI and Transocean, you cannot be compensated from these settlements and your claim will be rejected.

6.  Are you a person or entity that was "excluded" from participating in the DHEPDS (local governments, oil & gas industry, etc.)?

☐ Yes - Go to Question 8            ☐ No - Go to Question 7

7.  Are you a person or entity that sustained personal property physical damage in excess of $500 as a result of the Deepwater Horizon Incident, but whose claim circumstance was not recognized under the DHEPDS Claim Types?

☐ Yes - Go to Question 8            ☐ No - STOP; DO NOT FILE A CLAIM FORM.

> Such persons and entities have received no compensatory damages and are barred from asserting claims for compensatory damages in the future as a result of the DHEPDS class-wide release. Consequently, no punitive damages may be awarded under the Distribution Model.

---

2  The "Settlement Funds" refer to the combined values of the Settlement Agreements available for the benefit of the New Class.



| PART II - SHOULD I FILE A CLAIM? (CONTINUED) |
|---|

8.  Based on your prior answers, you are either (a) an individual or entity who was not a DHEPDS Class member by virtue of the type of claim; (b) an individual or entity that was a DHEPDS "excluded" party;[3] or (c) validly Opted Out of the DHEPDS Class.

Have you preserved your rights in compliance with PTO 60?[4]

☐ Yes - COMPLETE THE CLAIM FORM BELOW.

Required documentation for such claimants shall include proof of claimant's timely preservation of its rights to a claim for damages by compliance with MDL-2179 Pretrial Order 60, or, if you settled your claim with Court-appointed Neutrals, provide a copy of your settlement agreement.

All New Class claims will be subject to eligibility and documentation requirements for each specific claim type indicated by the claimant (CRP, WRP, RPS, Oyster Leaseholder, Vessel Physical Damage, Personal Property Damage >$500, Seafood Compensation, Charterboat Operator, Charterboat Crew, or Loss of Subsistence).

☐ No - STOP; IF FILED, YOUR NEW CLASS CLAIM WILL BE VALUED AT $0.

Claims from claimants who were not included within the DHEPDS and are otherwise allowed to file a New Class claim will be assigned no value unless they adequately preserved their right to pursue damages by complying with PTO 60.

---

[3] Certain industries noted as "excluded" in the DHEPDS Agreement were allowed to file CRP and WRP claims; if you were among those exceptions, you will be barred from filing a New Class claim for any "relevant claim type" for which you had the right to file in the DHEPDS.

[4] MDL-2179 issued Pretrial Order 60 ("PTO 60") on March 29, 2016, requiring individuals and entities to preserve their rights to pursue a claim for damages by filing an individual law suit no later than May 2, 2016, unless an extension was granted by the Court for that party. PTO 60 is available on the "Court Documents" tab of the website, GulfSpillPunitiveDamagesSettlement.com.

| PART III - CLAIMANT INFORMATION |
|---|

**Claimant Information:**

**Claimant Name** (if filing on behalf of a business, enter the Business Name here):

**Claimant Taxpayer Identification Number** (Social Security/Individual Taxpayer Identification Number for Individuals or employer identification number for entities):

**Address Line 1:**

**Address Line 2:**

**City:**                                             **State:**        **Zip Code:**

**Country:**                                   **Phone Number:**

**Email Address:**




| PART III - CLAIMANT INFORMATION (CONTINUED) |
|:---:|

## Claimant/Business Representative Information (not attorney, not claims preparer):

**Representative Name** (if applicable):

**Representative Title:**

**Address Line 1:**

**Address Line 2:**

**City:**                    **State:**    **Zip Code:**

**Country:**                 **Phone Number:**

**Email Address:**

## Attorney Information:

**Attorney Firm Name** (if applicable):

**Attorney Name:**

**Firm Contact:**

**Address Line 1:**

**Address Line 2:**

**City:**                    **State:**    **Zip Code:**

**Country:**                 **Phone Number:**

**Email Address:**



## PART III - CLAIMANT INFORMATION (CONTINUED)

### Claims Preparer Information:

**Claims Preparer Firm Name** (if applicable):

**Claims Preparer Contact Party:**

**Address Line 1:**

**Address Line 2:**

**City:**                                                                        **State:**      **Zip Code:**

**Country:**                                               **Phone Number:**
                                                                              –              –

**Email Address:**

## PART IV - CLAIM FORM

Select the applicable claim types within each of the five Claim Categories by checking the appropriate boxes and completing the required information fields. At the end of each section is a Required Documentation Matrix; provide all required documentation with your completed, signed Claim Form. All of the Sworn Written Statements (SWS) listed in the matrix at the end of each Claim Category section are available for download on the Claim Form page of the settlement website, GulfSpillPunitiveDamagesSettlement.com.

Failing to fully complete the applicable sections of the Claim Form or provide documentation as requested will delay processing and may result in rejection of your claim; if you have questions, please contact the Claims Administrator for assistance at 1-877-940-7792 or email Questions@GulfSpillPunitiveDamagesSettlement.com for assistance.

### ATTENTION: ALL NEW CLASS CLAIMANTS – REQUIRED DOCUMENTATION

**Required Documentation**

In addition to selecting any/all Claim Types by checking the appropriate boxes in the Claim Category sections below, all claimants must provide the required documentation listed in the matrix at the end of each Claim Category section. All of the Sworn Written Statements (SWS) listed in the matrix at the end of each Claim Category section are available for download on the Claim Form page of the settlement website, GulfSpillPunitiveDamagesSettlement.com. If you have questions about what documentation is required, please call 1-877-940-7792 or email Questions@GulfSpillPunitiveDamagesSettlement.com. Claims received without the required documentation may be rejected.

**Pretrial Order 60 Compliance**

New Class claims must be accompanied by documentation demonstrating compliance with PTO 60, which typically will be a copy of a timely-filed individual lawsuit bearing a Docket Number assigned by the MDL-2179 Court UNLESS you entered into a settlement directly with BP facilitated by the Court-appointed Neutrals; then you may wish to provide a copy of your settlement agreement to avoid any processing delays.

New Class claims received from claimants who have not complied with the requirements of PTO 60 will receive a value of $0.

Parties who settled with the GCCF or BP Claims Center have released their rights to punitive damages against HESI and Transocean and will not be eligible to participate. Do not file a claim if you have signed a GCCF Release and Covenant Not to Sue (other than those for bodily injury only) or BP Claims Process Full and Final Release, Settlement, and Covenant Not to Sue.



| PART IV - CLAIM FORM (CONTINUED) |
| :---: |

| CLAIM CATEGORY I: REAL PROPERTY |
| :---: |

☐ **COASTAL REAL PROPERTY** (inclusive of Personal Property loss/damage to structures on the premises due to the Spill)

**Property Street Address:**

**City:**                                                                    **State:**        **Zip Code:**

**Owner(s) Name(s) and Percentage Ownership (attach additional sheet if more than two (2) owners):**

**Name:**                                                                                      **Percentage:**

**Name:**                                                                                      **Percentage:**

**Describe any Personal Property/structure damages on this property associated with the Deepwater Horizon Incident (attach additional sheet if additional space is needed):**

**Item/Description:**                                          **Purchase Price:**
$                .

**Damage Description:**                                        **Repair/Replacement Cost:**
$                .

---

☐ **WETLANDS REAL PROPERTY** (inclusive of Personal Property loss/damage to structures on the premises due to the Spill)

**Parcel Identification Number:**

**County/Parish:**

**Owner(s) Name(s) and Percentage Ownership (attach additional sheet if more than two (2) owners):**

**Name:**                                                                                      **Percentage:**

**Name:**                                                                                      **Percentage:**

**Describe any Personal Property/structure damages on this property associated with the Deepwater Horizon Incident (attach additional sheet if additional space is needed):**

**Item/Description:**                                          **Purchase Price:**
$                .

**Damage Description:**                                        **Repair/Replacement Cost:**
$                .



## ☐ REAL PROPERTY SALES

**Property Street Address:**

**City:**                                                                                              **State:**        **Zip Code:**

**2010 Property Tax Parcel Identification Number:**                    **County/Parish:**

**Owner(s) Name(s) and Percentage Ownership (attach additional sheet if more than two (2) owners):**

**Name:**                                                                                                                      **Percentage:**

**Name:**                                                                                                                      **Percentage:**

**Date of Purchase Contract:**               **Date of Purchase Contract Amendment** (if applicable, add additional sheet if needed)

☐ ☐ / ☐ ☐ / 2 0 1 0                     ☐ ☐ / ☐ ☐ / 2 0 1 0

**Date of Closing:**                           **Closing Price:**

☐ ☐ / ☐ ☐ / 2 0 1 0                     $ ☐ ☐ ☐ ☐ ☐ ☐ . ☐ ☐

## ☐ OYSTER LEASEHOLDER

**Oyster Lease Numbers** (attach an additional sheet if needed):

**Lease Details/Geographic Boundaries:**

**Lease Issued By:**

**Sublease:**     ☐ Yes         ☐ No              **Co-Lessor:**  ☐ Yes      ☐ No

**Real Property Required Documentation Matrix:**

| Documentation Required | Coastal Real Property | Wetlands Real Property | Real Property Sales | Oyster Leaseholder |
|---|---|---|---|---|
| 2010 Property Tax Bill | X | X | | |
| Deed showing ownership on 4/20/2010 | X[4] | X | X | |
| Lease w/ Proof of Payment | X[5] | | | |
| Purchase contract and any amendments | | | X | |
| Proof of transaction closing: HUD statement, closing statement, deed of transfer | | | X | |
| 2010 Oyster Lease(s) | | | | X |
| Oyster Leaseholder Claimant Sworn Written Statement (SWS-4) | | | | X |
| For claims including damage to Personal Property at the real property location, include: Personal Property Damage Claimant Sworn Written Statement (SWS-1) and supporting documentation | X | X | | |

---

[4] Required if you owned the Parcel or Deeded Boat Slip.

[5] Required if you owned the Parcel or Deeded Boat Slip and leased it to someone else for 60 days or longer or if you leased the Parcel from someone else for 60 days or longer at any time between April 20, 2010 and December 31, 2010.



| PART IV - CLAIM FORM (CONTINUED) |
|:---:|

| CLAIM CATEGORY II: PERSONAL PROPERTY DAMAGE |
|:---:|

## ☐ VESSEL PHYSICAL DAMAGE

## ☐ PERSONAL PROPERTY DAMAGE IN EXCESS OF $500

**Personal Property Required Documentation Matrix:**

| Documentation Required | Personal Property Damages >$500 unrelated to Real Property | Vessel Physical Damage |
|---|:---:|:---:|
| Personal Property Damage Claimant Sworn Written Statement (SWS-1) and supporting documentation | X | |
| Vessel Physical Damage Claimant Sworn Written Statement (SWS-9) and supporting documentation | | X |
| 2010 Vessel Registration | | X |
| Vessel Title | | X |

| CLAIM CATEGORY III: COMMERCIAL FISHERMEN |
|:---:|

| Compensable Seafood Claim Types fished in 2010: | Operator Type(s) claimed: | |
|---|---|---|
| | **Non-Menhaden:** | **Menhaden:** |
| ☐ Menhaden<br>☐ Shrimp<br>☐ Oyster<br>☐ Finfish<br>☐ Finfish Individual Fishing Quota<br>☐ Blue Crab<br>☐ Other Seafood | ☐ Vessel Owner<br>☐ Vessel Lessee<br>☐ Boat Captain<br>☐ Seafood Crew<br>   (Non-Menhaden)<br>☐ Leaseholder Lost Interest<br>   (Includes Harvester if Applicable) | ☐ Vessel Owner/Lessee   ☐ Chief Engineer<br>☐ Boat Captain           ☐ 2nd Engineer<br>☐ Boat Pilot              ☐ Aerial Spotter<br>☐ Mate                  ☐ Cook<br>☐ Fisherman |

**All Seafood Claim/Operator Types:**

**2010 Vessel Name(s):**

**2010 Vessel Owner Name(s):**

**2010 Boat Captain(s) Name(s):**

**2010 Home Port:**

**Vessel Registration Number (State & Federal, if known):**



| PART IV - CLAIM FORM (CONTINUED) |
|---|

**Shrimp Seafood Claim Type ONLY:**

**Vessel Length:**

| | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Cooling Mechanism:** ☐ Ice   ☐ Freezer

**Seafood Compensation Required Documentation Matrices:**

| Documentation Required | Menhaden Vessel Owner/ Lessee | Menhaden - All Other Operator Types |
|---|---|---|
| Proof of vessel ownership/lease 4/20/2010 - 12/31/2010 | X | |
| Vessel Commercial Fishing Licenses 2009/2010 (one per vessel claimed) | X | |
| Vessel Name/Registration Number (state & federal, all vessels claimed) | X | |
| Gulf Coast Area Home Port Proof 4/20/2010-12/31/2010 | X | |
| Vessel Boat Captain Status Claimant Sworn Written Statement (SWS-6) and supporting documentation | X | |
| 2010 Boat Captain's license, if applicable | | X |
| 2010 W-2 related to Menhaden Fishing | | X |
| 2010 Tax Returns | X | X |
| Employment Contract/Catch Share Contract for 2010 (if available) | | X |
| Vessel Log, Captain's Log, Share Sheets, Sales/Production reports, as available | X | |

| Documentation Required | Shrimp Vessel Owner | Shrimp Vessel Lessee | Shrimp Boat Captain |
|---|---|---|---|
| Proof of vessel ownership 4/20/2010 - 12/31/2010[6] | X | | |
| Vessel Commercial Fishing License 2009/2010 | X | X | |
| Vessel Name/Registration Number (state & fed) | X | X | |
| Gulf Coast Area Home Port or Landings Proof 4/20/2010-4/16/2012 | X | X | |
| Vessel Ownership-Lease Status Claimant Sworn Written Statement (SWS-7) and supporting documentation | X | X | |
| Vessel Boat Captain Status Claimant Sworn Written Statement (SWS-6) and supporting documentation | X | X | |
| Boat Captain's license 2009/2010 | | | X |
| Proof of Boat Captain employment 4/20/2010-4/16/2012 on vessel(s) home ported or with landings in the Gulf Coast Areas | | | X |
| 2010 Tax Returns | X | X | X |
| Proof of vessel size & cooling mechanism (ice or freezer) | X | X | X |
| Vessel Log, Captain's Log, Share Sheets, Sales/Production reports, if available | X | X | X |

[6] Options include: vessel registration, trip tickets with vessel registration information, federal registration information on federal fisheries permits, state/federal registration database information, saltwater products license showing vessel registration numbers, vessel registration receipts or vessel title.  In all instances the documentation must be for the proper time period.



| PART IV - CLAIM FORM (CONTINUED) |
|---|

| Documentation Required | Seafood Crew | Individual Fishing Quotas (IFQ) |
|---|---|---|
| Seafood Crew Compensation Plan Claimant Sworn Written Statement (SWS-2) and supporting documentation | X | |
| Individual Fishing Quota Claimant Sworn Written Statement (SWS-5) and supporting documentation | | X |

| Documentation Required | Oyster | | | | Finfish, Blue Crab, and Other Seafood | | |
|---|---|---|---|---|---|---|---|
| | Leaseholder Lost Interest[7] | Vessel Owner | Vessel Lessee | Boat Captain | Vessel Owner | Vessel Lessee | Boat Captain |
| Proof of vessel ownership 4/20/2010 - 12/31/2010 | | X | | | X | | |
| Proof of oyster bed leasehold 4/20/2010 – 12/31/2010 | X | | | | | | |
| Vessel Commercial Fishing License 2009/2010 | | X | X | | X | X | |
| Vessel Name/Registration Number (state & federal) | | | X | | X | X | |
| Gulf Coast Area Home Port Proof 4/20/2010- 12/31/2010 | | | | | X | X | |
| Oyster Leaseholder Claimant Sworn Written Statement (SWS-4) and supporting documentation | | X | X | | X | X | |
| Vessel Boat Captain Status Claimant Sworn Written Statement (SWS-6) and supporting documentation | | X | X | | X | X | |
| Boat Captain's license 2009/2010 (issued before 4/20/2010 for Oyster claims) | | | | X | | | X |
| Proof of Boat Captain employment 4/20/2010-4/16/2012 on vessel(s) home ported or with landings in the Gulf Coast Areas | | | | X | | | X |
| 2010 Tax Returns | X | X | X | X | X | X | X |
| Vessel Log, Captain's Log, Share Sheets, Sales/ Production reports, if available | | X | X | X | X | X | X |
| Proof of Gulf Coast Area landings 2010 | | X | X | X | | | |
| Contract/agreement for harvesting for Zone A, B, or C leases | X | | | | | | |
| Oyster Leaseholder Claimant Sworn Written Statement (SWS-4) and supporting documentation | X | | | | | | |

| CLAIM CATEGORY IV: CHARTERBOAT |
|---|

| ☐ **CHARTERBOAT OPERATOR** |
|---|

| ☐ **CHARTERBOAT CREW** |
|---|



| PART IV - CLAIM FORM (CONTINUED) |
|---|

**Charterboat Required Documentation Matrix:**

| Documentation Required | Charterboat Operator | Charterboat Crew |
|---|---|---|
| 2010 Charterboat License | X | |
| Proof of vessel ownership/lease 4/20/2010 - 12/31/2010 | X | |
| Vessel Name/Registration Number (state & federal, all vessels claimed) | X | |
| Gulf Coast Area Home Port Proof 4/20/2010 - 12/31/2010 | X | |
| Charterboat Operator/Crew Claimant Sworn Written Statement (SWS-3) (sections A and B only) and supporting documentation | X | |
| Charterboat Operator/Crew Claimant Sworn Written Statement (SWS-3) (sections A and C only) and supporting documentation | | X |

| CLAIM CATEGORY V: LOSS OF SUBSISTENCE |
|---|

| ☐ **LOSS OF SUBSISTENCE** |
|---|

**Loss of Subsistence Required Documentation Matrix:**

| Documentation Required | Loss of Subsistence |
|---|---|
| Loss of Subsistence Claimant Sworn Written Statement (SWS-8) | X |

| PART V - CERTIFICATION RELEASE & SIGNATURE |
|---|

**Certification**

I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the information provided in this Claim Form is true and accurate to the best of my knowledge, and that supporting documents attached to or submitted in connection with this form and the information contained therein are true, accurate, and complete to the best of my knowledge, and I understand that false statements or claims made in connection with this Claim Form may result in fines, imprisonment, and/or any other remedy available by law to the Federal Government, and that suspicious claims will be forwarded to federal, state, and local law enforcement agencies for possible investigation and prosecution. By submitting this Claim Form, I consent to the use and disclosure by the Claims Administrator and those assisting the Claims Administrator of any information about me that they believe necessary and/or helpful to process my claim for compensation and any payment resulting from that claim.

Signature: _____     Title (if applicable): _____

Printed Name: _____     Date: _____