UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| This Document Relates to: | |
| No. 12-970 | JUDGE BARBIER |
| | MAGISTRATE SHUSHAN |

CLASS COUNSEL'S MOTION TO IMPLEMENT CHANGES
AND PROCEDURES TO EXPEDITE FINAL DISTRIBUTION OF THE
SEAFOOD COMPENSATION FUND

NOW INTO COURT, come Co-Lead Class Counsel, who respectfully move for an Order

intended to expedite the closing out the Seafood Compensation Program and the distribution of

the remainder of the Seafood Compensation Fund, by (i) amending the Seafood Neutrals'

Recommendations for Supplemental Distribution; (ii) authorizing compromise payments to be

made out of the Seafood Fund; and (iii) authorizing any subsequent contingent Seafood

Payments to be made out of the Transocean Insurance Proceeds:

Elimination of Section III(B)

I.

The Seafood Compensation Fund ("Seafood Fund") is a guaranteed and capped $2.3

billion fund established under the Settlement Agreement that is dedicated solely to the payment

of claimants holding eligible Seafood Claims.[1]

---

[1] *See generally* Economic Agreement, Section 5.2.

II.

At this point, the DHECC has processed the overwhelming majority of Seafood Claims, and has paid a total of approximately $1,662,753,901,[2]  leaving approximately $637 million in the Seafood Fund for distribution to claimants holding eligible Seafood Claims.

III.

Under the Recommendations promulgated by the Seafood Neutrals and adopted by the Court,[3] the subsequent seafood distributions are to be made *pro rata* based on the amounts paid to claimants under the initial seafood distributions.

IV.

Accordingly, the calculation of the amounts payable to eligible claimants under subsequent seafood distributions would be the result of straight-forward arithmetical calculations, which would permit a prompt and relatively simple path to making the subsequent seafood distributions.

V.

Section III(B) of the Recommendations directed the Claims Administrator to engage in a further review of the underlying claims that had already been determined to be eligible under the normal DHECC processing protocols in order to confirm that such initial distributions were not based on erroneous calculations or fraud.  Any errors were to be taken into account before any subsequent distributions could be made.   In the event of fraud, moreover, subsequent

---

[2] *See* Status Report – Ex. A. (Program Statistics as of May 1, 2016) [Rec. Doc. 18573-1] (June 1, 2016) p.3 (Table 4, Line 1).

[3] *See* Court-Designated Seafood Neutrals' Recommendations for Seafood Compensation Program Supplemental Distribution [Rec. Doc. 13416-1] (Sept. 19, 2014) ("Recommendations"), *and* Court's Order Adopting Court-Designated Seafood Neutrals' Recommendations for Seafood Compensation Program Supplemental Distribution [Rec. Doc. 13678] (Nov. 18, 2014).

distributions would be forfeited by the responsible claimant, and the funds otherwise attributable

to that claimant would be distributed *pro rata* to the other eligible Seafood Claimants.

VI.

Since the time that the Recommendations were announced and adopted by the Order,

certain claimants have appealed their seafood claims to the Fifth Circuit, which has resulted in

further delays in completing the supplemental seafood distributions than were originally

contemplated, with the anticipated effect of potentially delaying significantly the completion of

the supplemental seafood claims distribution process.

VII.

In addition, there are several Seafood Claimants who were initially determined to be

eligible and who received payments out of the Fund, but whose claims were subsequently

corrected or denied under Section III(B) while awaiting supplemental distribution, and are now

seeking re-review, reconsideration, settlement program appeals, requests for discretionary

review, and/or appeals to the U.S. Fifth Circuit.

VIII.

Class Counsel believe that the benefit to the eligible Seafood Claimants in final

distribution without further delay far outweighs the possibility that such distributions might

ultimately be slightly greater if the Section III(B) is fully and finally implemented, concluded,

and resolved.

IX.

Any funds freed up for distribution based on a final disposition of error or fraud would

have to be spread out and shared *pro rata* over hundreds of millions of dollars with thousands of

claimants, and hence the potential benefit to each of those claimants will be *de minimus*,[4] especially when compared to the delays engendered by continued implementation of Section III(B).

X.

Simply stated, the only class members who might be benefited by the continued implementation of Section III(B) are the very same class members who would be prejudiced by the delays that would result from such continued implementation. In balancing the potential benefits of Section III(B) against the probable downside, Class Counsel believe that the interests of eligible seafood claimants are much better served by discontinuing the further implementation of Section III(B) and re-review of claims already reviewed, notwithstanding the potential for marginal increased *pro rata* payments, in order to avoid the concomitant appeals and delays which would result by its further implementation.

XI.

Class Counsel therefore request that the Court amend the Recommendations and Order to remove Section III(B) in its entirety, and, except to the extent that the Claims Administrator in his discretion determines otherwise, to authorize and direct the Claims Administrator to vacate and set aside any denials of any claimants' right to receive any seafood supplemental distributions effected pursuant to and in accordance with the Recommendations which are currently on re-review, reconsideration or appeal, or subject to any rights to re-review, reconsideration or appeal, and as a corollary, directing the dismissal of any appeals from any such denials as moot.

---

[4] *See, e.g.,* Memo to Claims Administrator (June 8, 2015) [Rec. Doc. 14914-3] at pp.2-3.

Authorization to Pay Compromise Amounts from the Seafood Fund

XII.

In addition to the foregoing, and to further expedite the completion of the seafood distribution process, Class Counsel respectfully request that, in order to facilitate resolution of those relatively few remaining Seafood Claims which have not reached final determination or are in re-review or reconsideration, or are on appeal, this Court  provide specific authorization to the Claims Administrator, at his option, to either (i) remit out of the Seafood Fund directly to Seafood Claimants any amounts reasonably required to fund any settlements or compromises reached between such Claimants and any Court-appointed Neutrals in full payment and satisfaction of those Claimants' Seafood Claims, on such terms and conditions to which they may agree; or (ii) reimburse such amounts out of the Seafood Fund to any third party who may fund any such settlements.

XIII.

There is a population of Seafood Claimants – estimated to be approximately 200 in number – whose Seafood Claims have not yet been finally determined and are currently in some stage of processing, re-review, reconsideration, appeal or other review, and who have not yet been paid any amounts on their seafood claims or have not had their Seafood Claims finally denied.

XIV.

As long as these claims remain unprocessed, it is difficult for the Claims Administrator to estimate the *pro rata* percentages to be paid to Seafood Claimants who have received initial payments, and potentially large reserves would be required, thus potentially delaying the completion of the Seafood Claim distribution process and closing out of the Seafood Fund.

XV.

Class Counsel believe that at least some of these claimants whose Seafood Claims have not been fully processed in the first instance may be willing to agree to accept in full compromise lesser amounts than the amounts to which they might arguably be entitled under the terms of the Settlement Agreement, and waive the right to receive any subsequent seafood distribution payments, in order to be paid more promptly and without facing the potential delay of re-review, reconsideration or appeals.

XVI.

The Claims Administrator has informed Class Counsel that he currently may not have the authority to allow payments to be made out of the Seafood Fund in amounts different from those determined to be appropriate under the protocols under which the Claims Administrator operates, absent an Order by the Court specifically authorizing the same.

XVII.

As with respect to the rationale for removing Section III(B) described above, Class Counsel believe that paying certain seafood claimants some lesser agreed-upon amount than what they might otherwise arguable be entitled – though perhaps more than what might otherwise ultimately be determined to be appropriate (if any amount at all) -- would have a relatively negligible impact on the subsequent distribution to be paid to any single seafood claimant;   the benefit of facilitating the closing out of the Seafood Fund more expeditiously outweighs any possible compromise payments which might not have been allowed had the claims gone through full processing.

XVIII.

Accordingly, Class Counsel request that the Court authorize the Claims Administrator,  at

his option, to either (i) remit out of the Seafood Fund directly to Claimants any amounts

reasonably required to fund any settlements or compromises reached between such Claimants

and any Court-appointed Neutrals in full payment and satisfaction of those Claimants' Seafood

Claims, on such terms and conditions to which they may agree; or (ii) reimburse such amounts

out of the Seafood Fund to any other third party who may fund any such settlements.

<u>Authorization to Make Any Contingent Seafood Payments</u>
<u>Out of the Transocean Insurance Proceeds</u>

XIX.

Finally, in order to expedite the completion of the seafood claim distribution process,

Class Counsel request that the Court authorize – contingently, as it may be necessary, in the

event that any remaining unresolved Seafood Claim become payable after final distribution of

the Seafood Fund – the Claims Administrator to augment the Seafood Compensation Fund with

amounts contained in the insurance proceeds fund established pursuant to Section 5.14 of the

Settlement Agreement (the "Section 5.14 Fund").

XX.

Notwithstanding efforts to expedite the processing of all Seafood Claims, including

implementing the measures described in the first parts of this motion, it is likely that at least a

small number of Seafood Claims may not be fully processed and administered to the point of

eligibility, payment or denial.  In order to account for such claims, the Claims Administrator,

under the existing Seafood Compensation Program, would likely have to establish a reserve for

some portion of the Seafood Fund, which would delay the completion of the Seafood Compensation Program, and hence delay seafood claimants from receiving the full amounts to which they might be entitled.  In addition, it will likely be administratively burdensome and may, as a practical matter, not be realistically feasible, to attempt to distribute the remainder of that reserve (if any) at the end of the day.

## XXI.

On or around September 22, 2014, $82.17 million in Transocean Insurance Proceeds were deposited into the Settlement Trust,[5] pursuant to Section 5.14 of the Settlement Agreement, which expressly provides that one of the permitted uses of this Section 5.14 Fund is "(b) to augment the Seafood Compensation Program", subject to Court approval.

## XXII.

In order to avoid the need for the Claims Administrator to establish a reserve in the Seafood Fund before final distribution, Class Counsel respectfully request that the Court now authorize that up to $10 million of the Section 5.14 Fund be made available on a contingent basis, and allow the Claims Administrator to make use of such funds as necessary to account for any Seafood Claims and/or supplemental distributions that might become final and payable after the conclusion of the Seafood Compensation Program and final distribution of the Fund.

---

[5] *See* Order [Rec. Doc. 13424] (Sept. 22, 2014).

No Opposition

XXIII.

The BP Defendants, the Claims Administrator, and the Seafood Neutrals (with respect to the proposed amendments to their Recommendations) have each been consulted, and have no objection to the present motion.

**WHEREFORE** Class Counsel respectfully pray for an Order: (i) amending the Recommendations and the Order adopting same by (a) deleting from the Recommendations Section III(B) on page 15 in its entirety, and (b) except to the extent that the Claims Administrator, in his discretion, determines otherwise, authorizing and directing that the Claims Administrator vacate and set aside any denials of any claimants' right to receive any seafood supplemental distributions effected pursuant to and in accordance with the Recommendations which are currently on re-review, reconsideration or appeal, or subject to any rights to re-review, reconsideration or appeal, and as a corollary, directing the dismissal of any appeals from any such denials as moot; (ii) authorizing the Claims Administrator, at his option, to either (a) remit out of the Seafood Fund directly to Seafood Claimants any amounts reasonably required to fund any settlements or compromises reached between such Claimants and any Court-appointed Neutrals in full payment and satisfaction of those Claimants' Seafood Claims, on such terms and conditions to which they may agree; or (b) reimburse such amounts out of the Seafood Fund to any other third party who may fund any such settlements;  and (iii) authorizing, as necessary, contingent seafood payments out of the insurance proceeds fund provided for in Section 5.14 of

the Settlement Agreement, not to exceed $10 million, if necessary to address any seafood payments and/or supplemental distributions that may become final and payable after the conclusion of the Seafood Program and final distribution of the Seafood Fund.

This 14th day of June, 2016.

Respectfully submitted,


  /s/  Stephen J. Herman              
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhklawfirm.com

*Co-Lead Class Counsel*

  /s/  James Parkerson Roy            
**James Parkerson Roy**, La. Bar No. 11511
**DOMENGEAUX WRIGHT ROY EDWARDS**
   **& COLOMB, LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com

*Co-Lead Class Counsel*


## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that the above and foregoing Motion will be served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pre-Trial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 14th day of June, 2016.


                                        /s/ Stephen J. Herman and James Parkerson Roy