**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | * | **MDL NO. 2179** |
| **IN RE:  OIL SPILL by the OIL RIG** | * | |
| **"DEEPWATER HORIZON" in the** | * | |
| **GULF OF MEXICO, on** | * | |
| **APRIL 20, 2010** | * | **SECTION: J** |
| | * | |
| **THIS DOCUMENT RELATES TO:** | * | |
| | * | |
| *ALL CASES IN PLEADING BUNDLE B3* | * | **JUDGE BARBIER** |
| | * | **MAG. JUDGE SHUSHAN** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CLEAN-UP RESPONDER DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT OF THEIR OMNIBUS MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ....................................................................................................2

I.     THE REMAINING B3 PLAINTIFFS HAVE FAILED TO RAISE A GENUINE
ISSUE OF MATERIAL FACT ......................................................................4

    A.    The Evidence Submitted by Torrey Barlow is Insufficient .....................................4

    B.    The Evidence Submitted by Joseph Brown is Insufficient .....................................8

    C.    The Evidence Submitted by Scea Burrage is Insufficient .....................................10

    D.    The Evidence Submitted by Kirk Prest is Insufficient.............................................12

    E.    The Evidence Submitted by Nathan Fitzgerald is Insufficient .............................14

    F.    That the Remainder of the Remaining B3 Plaintiffs Have Not Opposed the
Properly-Supported Motion Further Supports Granting It.....................................15

II.    THE REMAINING B3 PLAINTIFFS' REQUEST FOR FURTHER
DISCOVERY SHOULD ONCE AGAIN BE REJECTED ...............................................16

CONCLUSION..................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acuna v. Brown & Root Inc.*,
   200 F.3d 335 (5th Cir. 2000) ....................................................................................4

*Alejo v. Heller*,
   328 F.3d 930 (7th Cir. 2003) ...................................................................................13

*Bosarge v. Cheramie Marine LLC*,
   121 F. Supp. 3d 599 (E.D. La. 2015) .........................................................................3

*Buford v. U.S. Postal Service*,
   43 F.3d 670 (5th Cir. 1994) ......................................................................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................................3, 8

*Cormier v. Pennzoil Expl. & Prod. Co.*,
   969 F.2d 1559 (5th Cir. 1992) .................................................................................14

*Danos v. Union Carbide Corp.*,
   541 F. App'x 464 (5th Cir. 2013) .............................................................................16

*Davis v. Fort Bend County*,
   765 F.3d 480 (5th Cir. 2014) .....................................................................................3

*DIRECTV, Inc. v. Budden*,
   420 F.3d 521 (5th Cir. 2005) ...................................................................................13

*Donald Doss v. M/V K2*,
   No. 15-CV-1539, 2016 WL 1545630 (5th Cir. Apr. 15, 2016) ................................17

*Duplantis v. Shell Offshore, Inc.*,
   948 F.2d 187 (5th Cir. 1991) ...................................................................................11

*Galindo v. Precision Am. Corp.*,
   754 F.2d 1212 (5th Cir. 1985) ...................................................................................7

*Geiserman v. MacDonald*,
   893 F.2d 787 (5th Cir. 1990) ...................................................................................16

*Grieveson v. Anderson*,
   538 F.3d 763 (7th Cir. 2008) ...................................................................................13

*Hathaway v. Bazany*,
   507 F.3d 312 (5th Cir. 2007) .....................................................................................3

*Jones v. FJC Sec. Servs., Inc.*,
   612 F. App'x 201 (5th Cir. 2015) .............................................................................15

*Knighten v. Cave & McKay*,
  32 F.3d 566 (5th Cir. 1994) ...................................................................17

*Lacoste v. Pilgrim Int'l*,
  No. 07-CV-2904, 2009 WL 1565940 (E.D. La. June 3, 2009)................................10

*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994) ...................................................................3, 8

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990)...........................................................................15, 16

*McCarty v. Thaler*,
  376 F. App'x 442 (5th Cir. 2010) ...............................................................15

*McFaul v. Valenzuela*,
  684 F.3d 564 (5th Cir. 2012) ...................................................................3

*Nissho-Iwai Am. Corp. v. Kline*,
  845 F.2d 1300 (5th Cir. 1988) ..................................................................15

*Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*,
  922 F.2d 220 (5th Cir. 1991) ...................................................................7

*Otto Candies, Inc. v. McDermott Int'l, Inc.*,
  600 F. Supp. 1334 (E.D. La. 1985)..............................................................9

*Raby v. Livingston*,
  600 F.3d 552 (5th Cir. 2010) ...................................................................17

*Sailboat Bay Apartments, LLC v. United States*,
  No. 14-CV-2344, 2016 WL 1366607 (E.D. La. Apr. 6, 2016)................................10

*SEC v. Spence & Green Chem. Co.*,
  612 F.2d 896 (5th Cir. 1980) ...................................................................17

*Smoothie King Franchises, Inc. v. Southside Smoothie &*
  *Nutrition Center, Inc.*,
  No. 11-CV-2002, 2012 WL 1698365 (E.D. La. May 15, 2012)................................13

*Stagliano v. Cincinnati Ins. Co.*,
  633 F. App'x 217 (5th Cir. 2015) ...............................................................7

*St. Paul Barge Line, Inc. v. Conticarriers and Terminals, Inc.*,
  No. 88-CV-5688, 1991 WL 55827 (E.D. La. Apr. 8, 1991)..................................9

*Texas and New Orleans Barge Line, Inc. v. Tug PATSY H*,
  279 F. Supp. 697 (E.D. La. 1968) ..............................................................9

*Theriot v. Bay Drilling Corp.*,
  783 F.2d 527 (5th Cir. 1986) ...................................................................9

iii

*Tyler v. Cedar Hill Independent Sch. Dist.*,
    426 F. App'x 306 (5th Cir. 2011) .......................................................................13

*Vais Arms, Inc. v. Vais*,
    383 F.3d 287 (5th Cir. 2004) ..........................................................................13

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ...........................................................................7

*Washington v. Armstrong World Indus., Inc.*,
    839 F.2d 1121 (5th Cir. 1988) .........................................................................7

*Watts v. Kroger Co.*,
    170 F.3d 505 (5th Cir. 1999) ..........................................................................14

*Winfun v. Daimler Chrysler Corp.*,
    255 F. App'x 772 (5th Cir. 2007) ...................................................................16

*Young v. Williams*,
    No. 1:06-CV-55, 2008 WL 623847 (N.D. Miss. Mar. 4, 2008) ...........................11

### <u>Rules and Regulations</u>

29 C.F.R. 1910.120 ...................................................................................................5

40 C.F.R. Pt. 300, App. E, Section 5.3.8 ...................................................................5

Fed. R. Civ. P. 6(b)(1)(B) ........................................................................................15

Fed. R. Civ. P. 16(b) ...........................................................................................15, 16

Fed. R. Civ. P. 16(f) .................................................................................................4

Fed. R. Civ. P. 41(b) .................................................................................................4

Fed. R. Civ. P. 56 ...................................................................................................16

### <u>Other Authorities</u>

Fed. Jud. Ctr., Admiralty & Mar. Law § 44-2 ...........................................................9

The Clean-Up Responder Defendants[1] respectfully submit this Joint Reply Memorandum (the "Joint Reply") in Further Support of their Omnibus Motion for Summary Judgment (the "Motion") (Rec. Doc. 17643).[2] Because none of the eleven remaining B3[3] claimants (each a "Remaining B3 Plaintiff," and collectively, the "Remaining B3 Plaintiffs")[4] have raised a genuine issue of fact material to the Clean-Up Responder Defendants' right to derivative immunity and implied preemption, the Court should grant the Clean-Up Responder Defendants' Motion and dismiss the Remaining B3 Plaintiffs' claims asserted against them with prejudice.

## PRELIMINARY STATEMENT

Six of the Remaining B3 Plaintiffs – Roy Causey, Jorey Danos, Thomas Hines, Frank Howell, Doug Maurras, and John Wunstell – do not even attempt to oppose the Motion. Of the five Remaining B3 Plaintiffs that did submit some form of opposition (each an "Opposition," and collectively, the "Oppositions") – Torrey Barlow, Joseph Brown, Scea Burrage, Nathan Fitzgerald, and Kirk Prest – none of them contest the legal underpinnings of the Motion, dispute the availability of derivative immunity and preemption, or challenge the content requirements of the *Lone Pine* protocol employed by the Court in Pretrial Order No. 57 ("PTO 57") (Rec. Doc. 13158). Instead, even at this late stage, the "evidence" these five Remaining B3 Plaintiffs have

---

[1] The Clean-Up Responder Defendants are the following: O'Brien's Response Management, L.L.C. (formerly known as O'Brien's Response Management, Inc.) ("O'Brien's"), National Response Corporation, Marine Spill Response Corporation ("MSRC"), Dynamic Aviation Group, Inc., Airborne Support, Inc., Airborne Support International, Inc., DRC Emergency Services, LLC ("DRC"), International Air Response, Inc., Lynden, Inc., Lane Aviation, Inc., Tiger Rentals, Ltd., The Modern Group, Ltd., and The Modern Group GP-SUB, Inc.

[2] In the interest of judicial economy, this Joint Reply addresses all of the oppositions and responses in one omnibus reply. (Rec. Docs. 17730, 18427, 18477, 18589, 18626, 18726, and 18727). It also serves as MSRC's Reply Memorandum in Support of its individual Motion for Summary Judgment on derivative immunity and preemption grounds, which supplemented the Motion. (Rec. Doc. 17642).

[3] The "B3" pleading bundle is defined at Pretrial Order No. 11 (Rec. Doc. 569 at 3) and Pretrial Order No. 25 (Rec. Doc. 983 at 2).

[4] The eleven individuals with claims still pending against the Clean-Up Responder Defendants are Torrey Barlow, Joseph Brown, Scea Burrage, Roy Causey, Jorey Danos, Nathan Fitzgerald, Thomas Hines, Frank Howell, Doug Maurras, Kirk Prest, and John Wunstell.

submitted consists of little more than conclusory declarations, unexplained photographs, and requests for further discovery that this Court already has rejected.  (Rec. Doc. 18483).[5]

None of this refutes the federal government's stipulations or the documentary evidence submitted by the Clean-Up Responder Defendants in support of their Motion on derivative immunity and preemption grounds.  None of it creates a material issue of fact as to whether any Clean-Up Responder Defendant violated or exceeded an instruction or order issued by the federal government, or acted without its authority, in performing their response activities during the *Deepwater Horizon* clean-up effort.  And none of it precludes entry of summary judgment on these well-established grounds.

For all these reasons, as well as those articulated in the Memorandum in Support of the Motion (Rec. Doc. 17643-1) and the Clean-Up Responder Defendants' previously-filed summary judgment opening and reply briefing (the "Prior Summary Judgment Briefing") (Rec. Docs. 6536–6536-4, 6538–6538-3, 6545–6545-49, 6546–6546-4, 6547–6547-3, 6551–6551-3, 6553–6553-6, 6557–6557-4, 6559–6559-3, 6597–6597-1, 6842–6842-8, 6843, 6845, 6849, 6852, 6854–6854-1, 6859, 6878, 6897–6897-1, and 6919–6919-1), the Court should grant the Motion and dismiss the Remaining B3 Plaintiffs' claims with prejudice.

## ARGUMENT

Once a party moving for summary judgment has met its "responsibility of informing the district court of the basis for its motion, and identif[ied] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," "[t]he burden then shifts to

---

[5]   None of these five Remaining B3 Plaintiffs dispute the fact that ten of the Clean-Up Responder Defendants (MSRC, Dynamic Aviation Group, Inc., Airborne Support, Inc., Airborne Support International, Inc., International Air Response, Inc., Lynden, Inc., Lane Aviation, Inc., Tiger Rentals, Ltd., The Modern Group, Ltd., and The Modern Group GP-SUB, Inc.) are not even referenced in any of the Remaining B3 Plaintiffs' Questionnaires.  (Rec. Docs. 17643 at 4, 17643-1 at 4).  This only reinforces why dismissal with prejudice of all of the remaining B3 claims against these entities is appropriate.

'the nonmoving party, . . . [who must] designate 'specific facts showing that there is a genuine issue for trial.'" *Davis v. Fort Bend County*, 765 F.3d 480, 484 (5th Cir. 2014) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The Remaining B3 Plaintiffs have not met that burden in this case.

It is well-settled that a nonmoving party's burden cannot be satisfied by creating "some metaphysical doubt as to the material facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Nor can summary judgment "be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela,* 684 F.3d 564, 571 (5th Cir. 2012) (*citing Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).  Moreover, "the evidence proffered by the [non-movant] to satisfy his burden of proof must be competent and admissible at trial," as "inadmissible evidence cannot be relied upon to create an issue of material fact for the purpose of defeating a summary judgment motion."  *Bosarge v. Cheramie Marine LLC*, 121 F. Supp. 3d 599, 602-03 (E.D. La. 2015) (citations omitted).

Here, all the Remaining B3 Plaintiffs have offered to the Court – to the extent they even oppose the Motion – are their own self-serving declarations replete with conclusory allegations and unsubstantiated assertions of purported wrongdoing, similarly conclusory and unreliable "expert" declarations, an unsworn statement of counsel, and other incompetent and inadmissible evidence.  And more than half of the Remaining B3 Plaintiffs have not even attempted to show that a genuine issue of material fact exists for trial, thereby reinforcing why the Motion should be granted.  In short, as the Remaining B3 Plaintiffs have failed to present competent summary judgment evidence that any Clean-Up Responder Defendant violated or exceeded any instruction or directive from the federal government during the *Deepwater Horizon* response, let alone that any such action or omission resulted in their specific injuries, they have not presented the

specific evidence the Court deemed necessary in issuing PTO 57 in the first place and the Clean-Up Responder Defendants' Motion should be granted.

## I.     THE REMAINING B3 PLAINTIFFS HAVE FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT

### A.     The Evidence Submitted By Torrey Barlow is Insufficient

The sworn statement Mr. Barlow submitted pursuant to PTO 57 did not reference any Clean-Up Responder Defendant and thus did not implicate any Clean-Up Responder Defendant as having gone beyond or outside the federal government's authority during the *Deepwater Horizon* response.  (Rec. Docs. 17643-1 at 19, 17643-2 ¶¶ 37-39).  Only now, faced with the Clean-Up Responder Defendants' well-supported Motion, does Mr. Barlow attempt to implicate any conduct by O'Brien's, alleging for the first time that the vessel upon which he worked during the clean-up "was leased, chartered, contracted for, and/or under the direction and control of O'Brien's []."  (Rec. Docs. 18477 at 2, 18626 at 2).  Notably, Mr. Barlow does not even attempt to articulate when he purportedly "discovered" this fact, only vaguely stating that he made this "discovery" after he filed his complaint on September 11, 2012 – ***more than two years*** before his PTO 57 response was due.  (Rec. Docs. 18477 at 2, 18477-1 ¶ 2, 18626  at 2, 18626-2 ¶ 2).  The Court can and should disregard these eleventh-hour allegations against O'Brien's – as well as all of the evidence submitted by Mr. Barlow in connection with them – as Mr. Barlow failed to identify that he wished to pursue a claim against O'Brien's in his PTO 57 Questionnaire and therefore failed to comply with the Court's express instructions in its pretrial order.[6]

In any event, Mr. Barlow's belated efforts are of no avail.  Even if the Court were to consider the evidence submitted by Mr. Barlow in connection with his newly-asserted allegations

---

[6]  *See* Fed. R. Civ. P. 16(f) (authorizing courts to impose sanctions if a party "fails to obey a scheduling or other pretrial order"); Fed. R. Civ. P. 41(b) (authorizing the dismissal of a claim if a plaintiff fails to prosecute or comply with a court order); *see also, e.g., Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340-41 (5th Cir. 2000) (affirming the district court's dismissal under Fed. R. Civ. P. 16(f) for failure to comply with a *Lone Pine* order).

against O'Brien's, neither Mr. Barlow's own declaration nor the declaration of his purported expert, Michael Klein, P.E, create a material issue of fact.  Indeed, the contentions of Mr. Barlow and his purported expert are premised on allegations that O'Brien's did not comply with the Occupational Safety and Health Act (the "OSH Act") and/or Occupational Safety and Health Administration ("OSHA") regulations.  These contentions are factually and legally deficient for a number of reasons.

First, the OSH Act and OSHA regulations only apply to Mr. Barlow's employer, which he concedes is not O'Brien's.  (Rec. Doc. 17643-33 ¶ 3).  Mr. Barlow admits that he was employed by Global Fabrications, LLC ("Global Fabrications"), which is not O'Brien's or any other Clean-Up Responder Defendant.  (Rec. Docs. 18477-1 ¶ 2, 18626-2 ¶ 2).  The undisputed fact that Global Fabrications, not O'Brien's, was Mr. Barlow's employer is dispositive.  Indeed, Mr. Barlow offers no evidence to dispute the fact that Global Fabrications, as his employer, and/or BP, as the Responsible Party for the *Deepwater Horizon* oil spill, were responsible for OSH Act and/or OSHA regulations compliance as it concerned his clean-up work.  (Rec. Doc. 17643-2 ¶¶ 14, 17, 24); *see also* 40 C.F.R. Pt. 300, App. E, Section 5.3.8 (noting that "[r]esponse actions under the [National Contingency Plan] shall comply with the provisions for response action worker safety and health in 29 CFR 1910.120," that "[i]n a response action taken by a responsible party, the responsible party must assure that an occupational safety and health program consistent with 29 CFR 1910.120 is made available for the protection of workers at the response site," that OSH Act requirements and regulations must be complied with, and that "private employers are directly responsible for the health and safety of their own employees"); 29 CFR 1910.120 (relaying OSHA standards in the hazardous waste operations and emergency response context).

Second, Mr. Barlow attempts to obscure the crucial distinction between an employer and a non-employer – *i.e.*, those required to comply with the OSH Act and OSHA regulations as to a particular individual and those who are not – by stating that the vessel upon which he was working during the response, the M/V ODYSSEA ATLAS, was "leased, chartered, contracted for, and/or under the direction and control of O'Brien's." (Rec. Docs. 18477-1 ¶ 2, 18626-2 ¶ 2). But this conclusory allegation is not substantiated with any supportive details or legal argument, such as the basis for his conclusion that such a relationship existed (*e.g.*, a contract) and how or why this purported relationship created an obligation on the part of O'Brien's to provide him with the personal protective equipment ("PPE") and training (and related warnings) which he alleges he did not receive. Likewise, Mr. Barlow provides no evidence to support his baseless contention that O'Brien's "is a creating employer, exposing employer, correcting employer, and/or controller employer under OSHA's Multi-Employer Worksite Policy." (Rec. Docs. 18589 ¶ 5, n.4, 18626-1 ¶ 5, n.4). Indeed, Mr. Barlow concocts his OSH Act and OSHA theories out of thin air, citing no case law or legal authority of any kind.

Third, outside of the unsupported allegations regarding a lease/charter/contract, Mr. Barlow has not provided any competent evidence or legal authority that O'Brien's otherwise had a duty to provide him with PPE, training, and other safety-related guidance, and that O'Brien's somehow violated this duty in failing to abide by the federal government's requirements for his specific clean-up activity. Mr. Barlow has also not substantiated his allegations by providing any evidence that additional PPE, such as a face mask or respirator, was required by federal authorities for his specific activity. (Rec. Docs. 18477-1 ¶ 4, 18626-2 ¶ 4).

Fourth, the declaration of Mr. Michael Klein, P.E., Mr. Barlow's purported "expert," is equally incompetent because its conclusory opinions rest solely on Mr. Barlow's unsubstantiated

factual allegation that the M/V ODYSSEA ATLAS was "leased, chartered, contracted for, and/or under the direction and control of O'Brien's" and his unsupported legal conclusion that such relationship put O'Brien's – rather than Mr. Barlow's employer, Global Fabrications, or BP as the Responsible Party – under a legal duty to provide PPE, training and the like.  (Rec. Docs. 18477-2, 18626-3).  It is well-established in the Fifth Circuit that expert declarations which are not supported by sufficient facts and are wholly conclusory, such as this, are insufficient to defeat summary judgment.  *See, e.g., Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015) ("[W]e think that a single conclusory expert affidavit, devoid of any factual support or explanation of the expert's basis for concluding that observed damage occurred as a result of a particular hail storm within the policy period, was insufficient to meet Plaintiffs' burden of 'designat[ing] specific facts showing that there is a genuine issue for trial' on this essential element of their insurance contract claim."); *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 224-25 (5th Cir. 1991) (finding that the expert's affidavit was "wholly or almost wholly conclusory and [] not supported by sufficient facts," stating that the Fifth Circuit has "recognized that there is a level of conclusoriness below which an affidavit must not sink if it is to provide the basis for a genuine issue of material fact," and noting that "unsupported . . . affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment") (*citing Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123–24 (5th Cir. 1988) and *quoting Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (holding that the expert's testimony was "no more than [plaintiff']s testimony dressed up and sanctified as the opinion of an expert" and that his "subjective" opinion "lack[ed] the foundation and reliability necessary" and was properly excluded below).

Finally, Mr. Barlow relies upon allegations set forth in his individual complaint to dispute the facts set forth by the Clean-Up Responder Defendants.  (Rec. Docs. 18589 ¶ 4, 18626-1 ¶ 4). A nonmoving party, however, must "go beyond the pleadings" to designate specific facts showing that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 324.  Accordingly, Barlow's "attempt to rely on his complaint to demonstrate the existence of a material fact issue is insufficient to preclude summary judgment."  *Buford v. U.S. Postal Service*, 43 F.3d 670, at *2 (5th Cir. 1994).

### B.      The Evidence Submitted By Joseph Brown is Insufficient

Like Mr. Barlow, Mr. Brown has submitted two declarations with his Opposition – his own as well as a declaration by Michael Klein, P.E.  (Rec. Docs. 18477-3, 18477-4, 18626-4, and 18626-5).  His declaration reiterates what he set forth in his PTO 57 Questionnaire, namely that he entered into a Master Vessel Charter Agreement with DRC and that DRC "specifically instructed" him "not to wear protective safety equipment."  (Rec. Docs. 18477-3 ¶¶ 3, 5, 18626-4 ¶¶ 3, 5).

Yet again, Mr. Brown's declaration provides no supportive details, such as when, where, and by whom he was instructed "not to wear" PPE; whether these instructions related specifically to a certain type of PPE (such as a respirator, which was used in limited circumstances); whether he demanded any PPE, and if so, when and to whom; and what type of PPE, if any, he should have received if all federal directives had been adhered to.  At best, he has presented "some metaphysical doubt" as to whether DRC complied with PPE directives, which is insufficient to rebut the Motion.  *Little*, 37 F.3d at 1075.  And again, Mr. Klein's wholly conclusory "expert" declaration, like the declaration he submitted on behalf of Mr. Barlow, relies on unsubstantiated allegations sourced solely to Mr. Brown and unsupported legal conclusions. It therefore is insufficient for the same reasons.  *See supra* at 6-7.

8

Mr. Brown (and his purported expert, Mr. Klein) also relies on OSH Act and OSHA regulations, but he is not an employee of DRC.  As discussed above, *see supra* at 5-6, the undisputed fact that DRC is not Mr. Brown's employer is dispositive, and Mr. Brown cites no authority of any kind to the contrary.  Moreover, Mr. Brown, has not disputed the fact – nor can he – that he agreed to the terms set forth at Articles 2 and 17 in his contract with DRC.[7]  These provisions provide that "BP will ensure that all VESSEL crews engaged in oil spill response activities (1) receive all necessary training for such activities as per the HRP, (2) receive all necessary credentials for such activities as per the HRP, and (3) receive all necessary protective equipment for such activities as per the HRP," and that Mr. Brown was not an employee of DRC, respectively.  (Rec. Docs. 17643-2 ¶46, 17643-24 at Exhibit A, Art. 2 and Art. 17).  Thus, under the terms of this contractual arrangement, Mr. Brown agreed that it would be BP's responsibility – and ***not*** DRC's – to provide him with the PPE he alleges he did not receive and that he would not be considered a DRC employee for any reason.  Mr. Brown also has, like Mr. Barlow, failed to provide any competent evidence or legal authority to support his contention that DRC "is a creating employer, exposing employer, correcting employer, and/or controller employer under OSHA's Multi-Employer Worksite Policy" (Rec. Docs. 18589 ¶ 8, n. 6, 18626-1 ¶ 8, n. 6) – and importantly, that this somehow trumps the express terms of his contract.

---

[7]   The nature of the Master Vessel Charter Agreement was undoubtedly maritime in nature, *see Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986) (setting forth the standard between maritime and non-maritime contracts), which is supported by the contract's choice-of-law provision deeming it to be governed by maritime law. (Rec. Doc. 17643-24 at Exhibit A, Art. 19).  Maritime charter agreements "are to be interpreted in accordance with general principles of contractual construction" and "[t]he parties to a charter may contract as they choose, and are bound by the terms of the contract as written." *St. Paul Barge Line, Inc. v. Conticarriers and  Terminals, Inc. et al.*, No. 88-CV-5688, 1991 WL 55827, at *2 (E.D. La. Apr. 8, 1991) (*citing Otto Candies, Inc. v. McDermott Int'l, Inc.*, 600 F. Supp. 1334, 1339 (E.D. La. 1985), *affirmed* 785 F.2d 1033 (5th Cir. 1986) and *Texas and New Orleans Barge Line, Inc. v. Tug PATSY H*, 279 F. Supp. 697 (E.D. La. 1968)); *see also* Fed. Jud. Ctr., Admiralty & Mar. Law § 44-2 ("Freedom of contract is the touchstone to the resolution of charter party disputes between owner and charterer.  The rules applicable to charter party disputes derive from the terms of the charter party itself . . . .").

Finally, Mr. Brown cites to his complaint in his Statement of Material Facts that Present Genuine Issues.  (Rec. Docs. 18589 ¶ 7, 18626-1 ¶ 7).  Like Mr. Barlow, Mr. Brown cannot rely on his complaint to designate specific facts showing that a genuine issue for trial exists.  *See supra* at 8.

### C.     The Evidence Submitted By Scea Burrage is Insufficient

Ms. Burrage repeatedly highlights in her Opposition that she submitted a timely response to all of the questions posed in her PTO 57 Questionnaire.  (Rec. Doc. 17730 at 1-3, 5-6, 10).  That she provided a timely written response to all of the questions posed, however, is irrelevant to the sufficiency of those responses and does not raise any genuine issue of material fact in connection with the Clean-Up Responder Defendants' derivative immunity and preemption arguments.

Ms. Burrage offers several materials along with her Opposition, none of which are competent summary judgment evidence, and none of which raise a genuine issue of material fact.  She has offered two photographs – one of a purported clean-up worker working without a "face mask" and "not properly protected from oil contact," and one of a purported plane spraying dispersant – as well as unauthenticated medical statements and invoices.  (Rec. Doc. 17730 at 15-22).  The photographs are not accompanied by any description, let alone a sworn statement, detailing where they came from; when, where, and by whom they were taken; who was photographed; and whether they even relate to the *Deepwater Horizon* incident.  It is well-settled that "unauthenticated, unexplained photographs" such as these do not and cannot show a genuine issue of fact.  *Lacoste v. Pilgrim Int'l*, No. 07-CV-2904, 2009 WL 1565940, at *7 (E.D. La. June 3, 2009); *see also, e.g., Sailboat Bay Apartments, LLC v. United States*, No. 14-CV-2344, 2016 WL 1366607, at *7 (E.D. La. Apr. 6, 2016) (finding that where the plaintiff "fails to suggest who took the photographs or when the photographs were taken," "the photographs are incompetent

summary judgment evidence" because "[u]ndated, unauthenticated photographs . . . have no probative value on summary judgment" and "add[] nothing to the summary judgment record").

In any event, Ms. Burrage is a self-identified resident Plaintiff and does not dispute the fact that she never served as a clean-up worker during the response.  (Rec. Doc. 17643-2 ¶ 49).  Accordingly, she would have had no need to receive and use PPE on the job (including any face mask), and because she was not employed by any Clean-Up Responder Defendant, no Clean-Up Responder Defendant would have had a duty to provide her with any PPE.  She also was not working where the aerial dispersant operations were undertaken, as authorized by the federal government.  Further, she did not set forth any allegations regarding the provision of PPE or exposure as a result of the aerial dispersant operations in her PTO 57 Questionnaire.  Thus, putting aside the competency of this evidence, it is wholly irrelevant to, and therefore cannot support, her allegations.

The unauthenticated medical statements and invoices submitted by Ms. Burrage are similarly incompetent and inadmissible.  *See, e.g., Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991) ("It has long been settled law that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence.") (citations omitted); *Young v. Williams*, No. 1:06-CV-55, 2008 WL 623847, at *3 (N.D. Miss. Mar. 4, 2008) ("The Plaintiff has not offered any authenticating evidence that the medical records produced are what he asserts they are.  Without more, the Court is unable to consider those records as dispositive of his condition . . . However, even if the Court was able to consider the[m] . . . , the documents submitted are not enough to raise a genuine issue as to the Plaintiff's injury, and more pertinently, the cause thereof.").  In any event, these documents have nothing to do with whether

the Clean-Up Responder Defendants failed to comply with the government's instructions or directives during the clean-up.

### D.     The Evidence Submitted By Kirk Prest is Insufficient

Mr. Prest's PTO 57 Questionnaire contains no reference or allegation specific to any Clean-Up Responder Defendant; rather, his Questionnaire articulates that his injuries are "BP's responsibility and ultimate obligation" and that "BP failed to provide any protective equipment during the clean[-]up activities." (Rec. Docs. 17643-1 at 29, 17643-2 ¶¶ 83-84).  Although Mr. Prest now attempts to sidestep this concession in an effort to survive the Motion, his allegation that he has "rights for his personal injury claims against the Clean-Up Responder Defendants" (Rec. Doc. 18726 at 6) because these entities were named in the First Amended Master Complaint in Accordance with PTO No. 11 Section III.B(3) (Rec. Doc. 1812) (the "B3 Master Complaint") is beside the point.  That the Clean-Up Responder Defendants are named defendants in the B3 Master Complaint is not determinative of whether Mr. Prest properly complied with PTO 57's express requirements and made his specific allegations as to any Clean-Up Responder Defendant(s) *in his Questionnaire*.  The undisputed fact is that he did not.

The substance of Mr. Prest's declaration attached to his Opposition is equally unavailing. Mr. Prest alleges in a conclusory fashion that he was exposed during his work on the clean-up; that he "asked for personal protective equipment and was told that there was no mention of the use of personal protective equipment;" and that "[t]he Clean-Up Responder Defendants participated in the post-explosion Oil Spill remediation and response efforts.  This participation included but was not limited to negligently and/or intentionally spraying and/or directing the spraying of chemical dispersants in the immediate vicinity of clean-up and response workers without warning the clean-up and response works and/or providing personal protective

equipment to the clean-up and response workers."  (Rec. Doc. 18726-2 ¶ 10).[8]  These vague and speculative allegations lack the minimum necessary supportive details, such as when, where, and by whom he was told PPE need not be used and what type of PPE he should have received, if any, if all federal directives had been adhered to.  And he still has not identified conduct specific to any Clean-Up Responder Defendant, let alone an employment relationship with one that might have given rise to a duty to provide the PPE he alleges he was owed.

The wholly conclusory and unsubstantiated statement that all of the Clean-Up Responder Defendants were negligent in connection with the aerial dispersant operations and the provision of safety gear also fails to create any material issue of fact.  *See, e.g., Grieveson v. Anderson*, 538 F.3d 763, 777-78 (7th Cir. 2008) ("Vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged [] conduct, do not raise a genuine issue of material fact with respect to those defendants.") (citing *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003)).  This too is contrary to PTO 57, which made clear that Plaintiffs were to put forward their specific evidence with respect to each Clean-Up Responder Defendant individually, as opposed to treating all of the companies as a collective whole.  (Rec. Doc. 17643-1 at 22-23).  In short, the vague and self-serving statements in Mr. Prest's declaration, without more, cannot defeat the Motion.  *See, e.g., Tyler v. Cedar Hill Independent Sch. Dist.*, 426 F. App'x 306, 309 (5th Cir. 2011); *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004); *Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Center, Inc.*, No. 11-CV-2002, 2012 WL 1698365, at *13 (E.D. La. May 15, 2012) (Barbier, J.) (*citing DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005)) (all refusing to consider conclusory and self-serving sworn statements as competent summary judgment evidence).

---

[8]  Neither Mr. Prest nor any of the Remaining B3 Plaintiffs that filed an Opposition have specifically alleged exposure from aerial dispersant operations in their Oppositions or their PTO 57 sworn statements.

### E.     The Evidence Submitted By Nathan Fitzgerald is Insufficient

Mr. Fitzgerald contends that he disputes a number of the facts submitted by the Clean-Up Responder Defendants in their Joint Statement of Undisputed Material Facts in Support of the Motion.  (Rec. Doc 18727-1 at 1).  But the support for the overwhelming majority of these facts are government-issued reports and materials – by OSHA and the U.S. Coast Guard – as well as the Clean-Up Responder Defendants' stipulations with the United States (Rec. Doc. 17643-2 at 16-18, 20-21, 29-30, 32, and 33), and Mr. Fitzgerald submits no specific evidence and designates no specific facts to rebut them.  Mr. Fitzgerald does not even offer any facts of which he might have personal knowledge, but rather specifically states that he does not "currently possess any factual basis to contest" specific factual statements submitted by the Clean-Up Responder Defendants or any of the factual statements submitted by MSRC.  (Rec. Doc. 18727-1 at 1-2).

In fact, all Mr. Fitzgerald has offered to the Court is a tack-on at the end of his Statement Regarding Contested Facts, signed by counsel, which states that "Plaintiffs aver" that Fitzgerald "was never ordered or instructed to obtain or pick up [PPE]," "was not provided any [PPE] . . . during his employment during the Deepwater Horizon response," and "was not properly trained." (Rec. Doc. 18727-1 at 2).  As this Statement was not sworn and is not based on counsel's own personal knowledge, it constitutes nothing more than counsel say-so and is undeniably incompetent evidence.  *See, e.g., Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (finding that an affidavit executed by plaintiff's attorney was not based on personal knowledge, and because it "rel[ied] on hearsay statements," the court could not consider it in ruling on a summary judgment motion); *see also Watts v. Kroger Co.*, 170 F.3d 505, 508-09 (5th Cir. 1999) ("We hold that the district court did not abuse its discretion in striking the statements. Because the statements were unsworn and were not presented to the court in a form required by Rule 56 we cannot say that the district court acted outside of its boundaries.");

*Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) ("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment.") (citations omitted).

In any event, these vague and speculative allegations lack the minimum necessary supportive details, such as when, where, and by whom Mr. Fitzgerald was told PPE need not be used and what type of PPE he should have received, if any, if all federal directives had been adhered to.

### F.    That the Remainder of the Remaining B3 Plaintiffs Have Not Opposed the Properly-Supported Motion Further Supports Granting It

Three of the Remaining B3 Plaintiffs articulated to the Court, via response to the Motion or otherwise, that they would not be opposing the Motion.  John Wunstell, Jr. stated in his response that he "does not substantively oppose the Motion" but reserves his rights against BP. (Rec. Doc. 18427).   Counsel for Plaintiffs Thomas Hines and Roy Causey stated, in the Opposition submitted on behalf of Plaintiffs Torrey Barlow and Joseph Brown, that "none of the Clean-up Responder Defendants are named in the[ir individual B3] actions and based thereon does not file this Memorandum on behalf of [Messrs.] Hines and [] Causey."  (Rec. Docs. 18477 at 1 n.1, 18626 at 1 n.1).  And three other Remaining B3 Plaintiffs – Jorey Danos, Frank Howell, and Douglas Maurras – have not submitted an opposition, notwithstanding the Court's order granting them a two-week extension to do so.  (Rec. Doc. 18483).[9]

---

[9]  The Clean-Up Responder Defendants note that the June 7, 2016 extended deadline to oppose or respond to the Motion has come and gone, and Messrs. Danos, Howell, and Maurras have not requested a second extension of time, let alone made a sufficient showing of excusable neglect under Rule 6(b)(1)(B).  The Court can and should refuse to provide them with yet another opportunity to oppose the Motion should they seek it.  *See, e.g., Jones v. FJC Sec. Servs., Inc.*, 612 F. App'x 201, 203-04 (5th Cir. 2015) (finding that the district court did not abuse its discretion "by failing to grant a second extension of time for [plaintiff's] response to the motion for summary judgment" under Rule 16(b)); *McCarty v. Thaler*, 376 F. App'x 442, 443-44 (5th Cir. 2010) (affirming the lower court's denial of plaintiff's extension request, noting that "any grant of an extension that is filed after the time for a response has expired may only be granted upon a finding of excusable neglect" and that "[e]ven if good cause and excusable neglect are shown, it nonetheless remains a question of the court's discretion") (*citing Lujan v. Nat'l Wildlife Fed'n*,

It is well-settled in the Fifth Circuit that "[i]f a party fails to oppose a motion for summary judgment, then the district court is permitted to consider the facts listed in support of the motion as undisputed and grant summary judgment if those facts would entitle the movant to judgment as a matter of law." *Danos v. Union Carbide Corp.*, 541 F. App'x 464, 466 (5th Cir. 2013); *see also, e.g., Winfun v. Daimler Chrysler Corp.*, 255 F. App'x 772, 774-75 (5th Cir. 2007) ("Chrysler identified sufficient record evidence to establish that there is no genuine issue of material fact, and that Chrysler is entitled to judgment as a matter of law . . . Winfun did not oppose summary judgment and did not designate any specific material facts showing a genuine issue for trial . . . We likewise find none. Accordingly, we affirm the District Court's grant of summary judgment in favor of Chrysler on all Winfun's claims.") (citations omitted).  Here, the Clean-Up Responder Defendants have properly informed the Court of the basis for their Motion and provided significant competent evidence in support thereof.  That these six Remaining B3 Plaintiffs have not disputed the facts submitted by the Clean-Up Responder Defendants only reinforces the Clean-Up Responder Defendants' entitlement to relief under Fed. R. Civ. P. 56.

## II.   THE REMAINING B3 PLAINTIFFS' REQUEST FOR FURTHER DISCOVERY SHOULD ONCE AGAIN BE REJECTED

Four of the five Remaining B3 Plaintiffs that submitted an Opposition implicitly acknowledge that the evidence they have submitted to oppose the Motion is insufficient to create a genuine issue of material fact because they argue, once again, that they need more discovery. (Rec. Docs. 18477 at 6-8, 18626 at 6-8, 18726 at 7-8, 18727 at 3-4).  But the Court has already rejected the argument that the Motion is premature and the prior request for a continuance and

---

497 U.S. 871, 894-98 (1990); *Geiserman v. MacDonald,* 893 F.2d 787, 793 (5th Cir. 1990); and Fed. R. Civ. P. 6(b)(1)(B)).

further discovery on immunity and preemption issues.  (Rec. Doc. 18483).[10]  Indeed, Plaintiffs have had ample opportunity to develop and come forward with facts supporting their B3 claims against the Clean-Up Responder Defendants, and there is no reason to believe that additional discovery would produce any evidence creating a genuine issue of material fact.  Moreover, the Motion is premised on the Remaining B3 Plaintiffs' responses to PTO 57 and was filed following the Court's own order to do so.  (Rec. Doc. 16165).

In short, the Court carefully considered the prior request for more discovery and denied it.  There is simply no basis to reconsider.[11]  And because litigants cannot "simply rely on vague assertions that additional discovery will produce needed but unspecified facts, particularly where, as here, ample time and opportunities for discovery have already lapsed," this argument is insufficient to defeat summary judgment.  *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980) (citations omitted); *see also Donald Doss v. M/V K2 et al.*, No. 15-CV-1539, 2016 WL 1545630, at *2 n.14 (5th Cir. Apr. 15, 2016) (granting summary judgment and noting that one "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts") (*quoting Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).

---

[10]  Curiously, the Opposition filed on Mr. Fitzgerald's behalf contends that the Court has not ruled on his motion to conduct discovery.  (Rec. Doc. 18727 at 3).  But this Opposition was served via File & ServeXpress at 6:15 a.m. on June 8, 2016, approximately six hours past the Court's extended deadline to file an opposition or response to the Motion.  The timing of this Opposition's filing suggests that the extended deadline was made aware to Fitzgerald, and because that extended deadline was provided in the same order denying his request for further discovery, he should have been made aware of the Court's decision to deny his discovery request too.

[11]  Mr. Prest argues that he "will be denied due process if his claims against the Clean-Up Responder Defendants are dismissed without permitting him the opportunity to participate in discovery."  (Rec. Doc. 18726 at 8).  Similarly, the Opposition submitted on behalf of Mr. Fitzgerald sets forth that due process will be denied if "their own discovery" is not permitted.  (Rec. Doc. 18727 at 4).  This argument should be rejected for all the reasons previously articulated by the Clean-Up Responder Defendants, which are incorporated herein by reference.  (Rec. Doc. 18438).  The Court is well within its discretion to grant summary judgment "without permitting irrelevant and unnecessary discovery."  *Knighten v. Cave & McKay*, 32 F.3d 566, at *3 (5th Cir. 1994) (rejecting Appellant's due process argument).

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in the Clean-Up Responder Defendants' joint opening brief and the Prior Summary Judgment Briefing, the Clean-Up Responder Defendants respectfully request that they be granted summary judgment and that the Remaining B3 Plaintiffs' claims asserted against them, whether by joinder in the B3 Master Complaint, individual complaint, or otherwise, be dismissed with prejudice.

Dated: June 14, 2016


Respectfully submitted,

/s/ Michael J. Lyle

Michael J. Lyle (DC #475078, IL #6199227)
Eric C. Lyttle (DC #482856)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street NW, 11th floor
Washington, DC 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100


Sylvia E. Simson (NY #4803342)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100


Patrick E. O'Keefe (LA # 10186)
MONTGOMERY BARNETT, L.L.P.
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3300
Telephone: (504) 585-3200
Facsimile: (504) 585-7688


Attorneys for O'BRIEN'S RESPONSE
MANAGEMENT, L.L.C. and NATIONAL
RESPONSE CORPORATION

/s/ Ben L. Mayeaux

Frank X. Neuner, Jr. (LA #7674)
Ben L. Mayeaux (LA #19041)
Jed M. Mestayer (LA #29345)
NEUNERPATE
One Petroleum Center, Suite 200
1001 W. Pinhook Rd.
Lafayette, LA  70503
Telephone: (337) 237-7000
Facsimile: (337) 233-9450


Attorneys for AIRBORNE SUPPORT, INC. and
AIRBORNE SUPPORT INTERNATIONAL, INC.

/s/ Alan M. Weigel

Alan M. Weigel (NY #3065307)
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: 212-885-5000
Facsimile: 917-332-3836


Attorney for MARINE SPILL
RESPONSE CORPORATION

/s/ Leo R. McAloon, III

Leo R. McAloon, III (LA # 19044)
Michael D. Cangelosi (LA #  30427)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
New Orleans, LA 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011


Attorneys for DYNAMIC AVIATION
GROUP, INC.

/s/ Kevin R. Tully

Kevin R. Tully (LA #1627)
H. Carter Marshall (LA #28136)
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street, Suite 2300
New Orleans, LA 70130-6078
Telephone: (504) 561-5700
Facsimile: (504) 593-4220


Attorneys for INTERNATIONAL
AIR RESPONSE, INC. and
LYNDEN INCORPORATED

/s/ George E. Crow
George E. Crow (TX # 05151900)
LAW OFFICE OF GEORGE E. CROW
P.O. Box 30
Katy, TX 77492
For Overnight Physical Delivery use
1519 Miller Avenue
Katy, TX 77493
Telephone: (281) 391-9275

Attorney for LANE AVIATION, INC.

/s/ Harold J. Flanagan
Harold J. Flanagan (LA # 24091)
Brandon C. Briscoe (LA # 29542)
Sean P. Brady (LA # 30410)
Andy Dupre (LA # 32437)
FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 2405
New Orleans, LA 70170
Telephone: 504-569-0235
Facsimile: 504-592-0251

Attorneys for DRC EMERGENCY SERVICES, LLC

/s/ John E. Galloway
John E. Galloway (LA #5892)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, Suite 4040
New Orleans, LA 70139
Telephone: (504) 525-6802
Facsimile: (504) 525-2456

Attorney for TIGER RENTALS,
LTD., THE MODERN GROUP,
LTD., and THE MODERN GROUP
GP-SUB, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Joint Reply Memorandum in Support of the Clean-Up Responder Defendants' Omnibus Motion for Summary Judgment has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of June, 2016.

/s/ Michael J. Lyle
Michael J. Lyle
