**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re: Oil Spill by the Oil Rig                             **MDL NO. 2179**
 "Deepwater Horizon" in the Gulf
of Mexico, on April 20, 2010                     **SECTION J**
*Applies to 12-970:*                                  **JUDGE BARBIER**
*Bon Secour Fisheries, et al., on*
*Behalf of themselves and all similarly situated,*
*vs. BP Exploration & Production, Inc., et al.*
*AND*
*Claim ID #242209*

## MEMORANDUM IN SUPPORT OF MOTION FOR EXTENSION OF TIME FOR DISCRETIONARY REVIEW

Claimant Snug Harbor Marina, LLC ("Claimant") submits this Memorandum in Support of its Motion for Extension of Time for Discretionary Review. During the time period to request Discretionary Review, the Claimant's owner was hospitalized and was therefore unable to timely make this request. In further support, Claimant submits the following:

### Procedural Background

Claimant filed a *pro se* Business Economic Loss ("BEL") Claim with the Deepwater Horizon Economic & Property Damage Claims Center ("DHECC") in 2013. The business is a marina located at 10335 Gulf Beach Hwy, Pensacola, Florida, which is in Zone A pursuant to the Settlement Agreement. Therefore, Claimant is "not required to provide any evidence of causation" pursuant to the Settlement Agreement.

Until recently, Claimant has been unrepresented by legal counsel. Michael Greene, Claimant's owner, was the sole person responsible for the claim. Even without counsel, Greene submitted documents required by the Settlement Agreement, including but not limited to Claimant's Registration Form, Claim Form, and its tax returns for 2009-2011.

Greene engaged in communications with the DHECC and/or Brown Greer regarding

Claimant's profit & loss statements. Greene explained the marina's hundreds of thousands

of dollars in losses due to the BP oil spill by letter dated February 19, 2014 (Doc ID

13843966) and again on May 28, 2014 (Doc ID 14584811). Greene also submitted profit &

loss statements for Claimant on May 28, 2014 (Doc ID 14584858, 15010750, 15010758,

17428475, 15010754, 17428484).  Those P&Ls covered 2009-2011 and included financial

activity in 2009 and 2011, but did not include any revenues or expenses in 2010.   The

DHECC then issued an Incompleteness Denial Notice ("IDN") due to the alleged absence of

P&Ls in 2010 (Doc ID 15139026).  That IDN was dated August 12, 2014, but is dated

September 3, 2014 on Claimant's portal.

On September 9, 2014, Claimant timely requested reconsideration and again Greene

submitted a letter with P&Ls (Doc IDs 15167524, 17428505, 15170751, 17428513,

15170761, 17428508, 15167529, 15170821).  Until this point, all P&Ls identified revenue

from the sales of the boat slips and expenses from the cost of the boat slip.  Claimant has no

sales in 2010 and Greene was under the impression that since there were no sales in 2010,

there was nothing to report in 2010.

During the next nine months, Greene inquired about the status of the claim, but was

unable to learn any details about the claim.  Of course, this is not uncommon for the

DHECC for BEL claims to sit untouched for long periods of time, especially during that

time period.

On May 14, 2015, Greene wrote a letter stating the following, in pertinent part:

Please accept this as a follow up letter to my claim for economic and
property damage for Snug Harbor Marina.

I have completed everything that I have been asked for along with submitting

invoices and tax returns for this property. It has been almost one year and I have heard nothing and there is nothing posted on my portal about my claim.

When I have called about the claim, I am told that there are things about the claim that the claims administrator has been unable to verify. When I asked what these things are, I am told that Deepwater cannot tell me the things that need verifying. This totally makes no sense to me whatsoever.

If I do not know what you are having problems verifying, there is no way I can verify them for you. Being that I have submitted all the tax returns and sales information along with the original costs, I cannot imagine what you are having trouble verifying.

*See* Doc ID 16789572.

On August 14, 2015, the DHECC issued a Denial Notice.  Claimant timely requested

reconsideration on August 24, 2015, with Greene writing the following:

This marina was constructed before the spill and we had sales before the spill and after the spill.  The economic impact from the spill is crystal clear in this case.  All I have been told is that some of the information I provided could not be verified but nobody will tell me what cannot be verified.  I feel as if I have been given the run around ever since I filed this claim. This claim should have been one of the easiest claims to finalize but nobody will tell me what information they need to verify. There is not that much information with this claim but if I do not know what needs verifying, I can't verify it. You cannot just deny this claim as it meets all the criteria set forth. I humbly ask you to reconsider this claim and feel free to call me to discuss what you are struggling getting verified.

*See* Doc ID 17640349

The DHECC then issued a Post-Reconsideration Denial Notice on September 14,

2015.  (Doc ID 18038045).  The Denial Notice concluded "you were not doing business or

operating in the Gulf Coast Areas or Specified Gulf Waters at the time of the Oil Spill, April

20, 2010."  That is not true.  Claimant timely filed an Appeal on October 14, 2015, writing:

This claim was denied due to the fact that "you were not doing business or operating in the Gulf Coast Areas or Specified Gulf Waters at the time of the Oil Spill, April 20, 2010." This is simple inaccurate information as I was operating in Grand Bay at Perdido Key, Florida.  I have provided this

information several time and the address is 10335 Gulf Beach Hwy, Pensacola, Florida and all the real property claims were paid on the Condo in front of the Marina due to the fact that they were in the affected area so it only seems logical that if the Marina, that is in the intercoastal waterway attached to the condo would be in the affected area.

Claimant's deadline to submit its Opening Memorandum was October 25, 2015.

However, Claimant did not receive notice of that deadline until October 27, 2015 (Doc ID 18307881). Greene immediately wrote the DHECC the following:

To Whom It May Concern:

I am in receipt of a Notice of Claimant Appeal of Denied Claim. This Notice has a deadline of 10/25/2015 to file the required Claimant Opening Memorandum. I received the email about this Notice on 10/26/15 at 9:12 PM and it was posted to the portal on 10/27/15.

There is no way that I can offer an opening statement by 10/25/15 when the notice was not delivered until after that date. I am not really sure which way to go now with this appeal. I am willing to file the opening statement or I am willing to come to the appeal hearing and deliver my opening statements.

I do not believe that I have missed deadlines or violated any procedures and I do not believe the courts are going to allow this claim to be closed due to the fact that I did not get my opening statement delivered. For some reason it appears that BP is and has been trying to close this file since I first filed it. All I have received is vague answers about all the issues that have arisen.

Now my question is what happens now? I have not had an opportunity to present my opening statement so if the appeal is denied, it seems like this will be inadequate and unfair to me.

*See* Doc ID 18312065.

There was no further communication with this *pro se* Claimant. The DHECC denied Claimant's appeal by notice on February 2, 2016. Claimant's deadline to request discretionary review was set for February 19, 2016. Greene had repeatedly filed documents to pursue this claim, and Claimant intended to do so until the claim was paid.

During this time period, Mr. Greene was hospitalized.

On April 19, 2016, Claimant hired counsel and uploaded a document to the Portal, stating the following:

> Please consider this document the Claimant's good faith request for relief from the deadline to request discretionary court review, pursuant to Policy 251, the District Court's applicable orders, the Federal Rules of Civil Procedure, and/or any other applicable rules.
>
> Claimant respectfully submits circumstances that constitute "excusable neglect" – namely that Mike Greene, who owns 100% of the Claimant's stock, was hospitalized with a serious illness and was unable to timely request discretionary review.
>
> The reasons for the delay were due to circumstances beyond the Claimant's control. There is no prejudice to BP, as the claim was denied based on an incompleteness issue and not substantively denied.

*See* Doc ID 19210967.

Upon inquiry by newly-retained counsel, Claimant informed Counsel that Claimant did indeed have operational expenses throughout 2009-2011.  Claimant provided a ledger showing those expenses to Counsel, who uploaded those to Claimant's portal on May 4, 2016 (*see* Doc ID 19290940).  Counsel also submitted a virtually identical version of this motion on May 20, 2016 in the Claimant's portal.

Counsel recently learned of the details of each of those expenses, such as monthly payments to Gulf Power for Claimant's electric bills; a payment for its 2010 annual report to the Florida Department of Environment; payment of legal expenses to Beggs & Lane; payment to Baldwin County for a fire inspection; and payment to the original designer of the marina for consultation fees relating to signage compliance.  Clearly, Claimant was operating in the Gulf Coast Areas at the time of the Oil Spill, April 20, 2010.

### Legal Authorities

Rule 60(b) states that a "court may relieve a party from a final judgment, order, or proceeding" for "excusable neglect."  FRCP 60(b)(1).  The "decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court." *Edwards v. City of Houston,* 78 F.3d 983, 995 (5th Cir.1996).  As to what sort of neglect is "excusable," the U.S. Supreme Court has concluded "that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship,* 507 U.S. 380, 395, 113 S. Ct. 1489, 1498, 123 L. Ed. 2d 74 (1993).  The "relevant circumstances" include the risk of prejudice to the non-movant; the length of delay; the reason for delay, including whether it was within the reasonable control of the movant; and whether the movant acted in good faith. *Id.*  The Fifth Circuit has applied these factors to requests for relief under Rule 60(b)(1). *See Silvercreek Mgmt., Inc. v. Banc of America Sec., LLC,* 534 F.3d 469, 472 (5th Cir.2008).

Analyzing these factors, the reason for the delay was outside the reasonable control of Claimant.  Greene's serious and unexpected illness caused Mr. Greene to miss the deadline to file a Request for Discretionary Review.  This *pro se* Claimant acted in good faith at all times pertinent to this claim.

The length of delay is short.  Within 60 days of the deadline, Claimant filed on its portal a "good faith request for relief from the deadline to request discretionary court review."  Claimant recently  gathered and provided details on its 2010 expenses and is now explaining each of those expenses in this document.

One other factor worth considering is the claimant-friendly nature of the BP settlement.  Section 4.3.7. of the Settlement Agreement provides that:

The Settlement Program, including the Claims Administrator and Claims Administration Vendors, shall work with Economic Class Members (including individual Economic Class Members' counsel and Class Counsel) to facilitate Economic Class Members' assembly and submission of Claims Forms, including all supporting documentation necessary to process Claim Forms under the applicable Claims Processes. The Settlement Program, including the Claims Administrator and Claims Administration Vendors, shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement.

Based on this language from the settlement agreement, and the fact that Claimant was operating *pro se*, the Court should at least hear Claimant's request for discretionary review.

Finally, there is no prejudice to BP.  Claimant is a business located in Zone A.  BP has agreed that the oil spill caused those businesses damage, provided that Claimant can prove damages.  Here, the DHECC denied the claim based on something that is *false* – that Claimant was not operating in the Gulf Areas in 2010.

In conclusion, Claimant is simply asking for the opportunity to request discretionary review by the Court.

Dated:  June 15, 2016.                                    Respectfully submitted,


                                                          By: */s/ David Shelton*
                                                               David Shelton

OF COUNSEL:

David W. Shelton (MSB 99675)            Frederick G. (Rick) Davis, Jr. (MSB 99562)
SHELTON DAVIS, PLLC                     SHELTON DAVIS, PLLC
1223 Jackson Ave. East, Ste. 202        117 Park Circle Drive
Oxford, Mississippi 38655               Flowood, Mississippi 39232
Tel: 662-281-1212                       Tel: 601-932-1142
Fax: 662-281-1312                       Fax: 601-608-7809
Email: David@SheltonDavisPllc.com       Email: Rick@SheltonDavisPllc.com