UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | MDL NO. 2179 |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | SECTION:  J |
| | * | |
| | * | |
| This Documents Relates to: | * | JUDGE BARBIER |
| Case No. 2:13-cv-02033 | * | |
| Case No. 2:16-cv-11519 | | |
| Case No. 2:16-cv-11641 | | MAGISTRATE JUDGE SHUSHAN |
| Case No. 2:16-cv-11707 | * | |
| Case No. 2:16-cv-11711 | | |
| | * | |

**RESPONSE TO SHOW CAUSE RE: COMPLIANCE WITH PTO 60**

NOW INTO COURT, through the undersigned counsel, comes Plaintiff CHAPEL HILL, LLC ("Chapel Hill"), Plaintiff COASTAL MINING & MARINE, LLC ("Coastal Mining"), and its two wholly owned subsidiaries, Plaintiff PEARLINGOTN CLAY, LLC ("Pearlington Clay"), and Plaintiff PEARLINGTON CLAY PORT, LLC ("Pearlington Clay Port") (collectively, the "Chapel and Coastal entities") who respectfully submit to this Honorable Court that that Plaintiffs have complied with PTO 60 and the Court should not dismiss Plaintiffs' B1 claims with prejudice for the following reasons:

1.     On March 29, 2016, while all pending litigation in MDL 2179 (other than test cases) was stayed, the Court issued Pretrial Order No. 60 ("PTO 60"), which required individual plaintiffs to file sworn written statements along with various supporting documentation by May 2, 2016.[1]  [Rec. Doc. 16050].

---

[1] The Court extended the deadline to comply with PTO 60 to May 16, 2016.

2.     On April 26, 2016, Plaintiff CHAPEL HILL, LLC complied with PTO 60 and filed its sworn written statement along with the requisite supporting documentation in Civil Case No. 2:13-cv-02033. [Rec. Doc. 6].

3.     On April 26, 2016, Plaintiff COASTAL MINING & MARINE, LLC complied with PTO 60 and filed its sworn written statement along with the requisite supporting documentation in Civil Case No. 2:13-cv-02033. [Rec. Doc. 7].

4.     On April 26, 2016, Plaintiff PEARLINGTON CLAY, LLC complied with PTO 60 and filed its sworn written statement along with the requisite supporting documentation in Civil Case No. 2:13-cv-02033. [Rec. Doc. 8].

5.     On April 26, 2016, Plaintiff PEARLINGTON CLAY PORT, LLC complied with PTO 60 and filed its sworn written statement along with the requisite supporting documentation in Civil Case No. 2:13-cv-02033. [Rec. Doc. 9].

6.     In addition to filing the sworn written statements, PTO 60 also required individual plaintiffs in consolidated actions to file new, separate complaints unless they are related parties. [Rec. Doc. 16050].

7.     PTO 60 did not require related parties file separate lawsuits. [Rec. Doc. 16050 at ¶ B(i), n. 3]. PTO specifically provides:

> "(i)    Where Plaintiff did not file an individual lawsuit, but instead filed a SFJ and/or were part of a complaint with more than one plaintiff, **each such plaintiff** must, by May 2, 2016, file an individual lawsuit (Complaint) (one per plaintiff), using the caption reflected in **Exhibit C….**"
>
> n.3 "This does not include complaints that contain related parties such as a husband and wife or co-owners of a business. Where two or more related parties are joined in a single complaint, those plaintiffs will be considered as having filed an individual complaint."

8.      The four Chapel and Coastal entities were a party to a single complaint and were properly joined pursuant to Fed. R. Civ. P. 20(a)(1)(B).  Specifically, on April 20,2013, a complaint naming all four (4) Chapel & Coastal entities was filed in MDL 2179 in Civil Action No. 2:13-cv-02033 for  the related-party plaintiffs: (1) Chapel Hill, LLC; (2) Coastal Mining & Marine, LLC; and (3) Pearlington Clay, LLC, a subsidiary of Coastal Mining & Marine, LLC; and (4) Pearlington Clay Port, LLC, a subsidiary of Coastal Mining and Marine, LLC. [ Rec. Doc. 1].

9.      The Chapel & Coastal entities  have common ownership and the claims of each Plaintiff arise from the same common nucleus of operative facts.  Each asserts a right to relief that arises out of the same transaction and/or occurrence and questions of law or fact common to all Plaintiffs.  A summary of the Chapel & Coastal entities are related is as follows:

   a.   Plaintiff CHAPEL HILL, LLC is a Louisiana and Mississippi construction and contracting company that was awarded a $64,950,000.00 contract from the U.S. Army Corps of Engineers ("USACE") in December 2009 to supply earthen materials for the repair of the Mississippi River levee in Orleans Parish. The scope of the contract required barge movement of more than 6 million tons of earthen clay material from the Hancock Port in Mississippi to the New Orleans East Levee Areas.  The contracted performance method was to be by barge from Hancock County, Mississippi to Orleans Parish, Louisiana – 26 nautical miles.

   b.   Chapel Hill subcontracted with several entities to perform its contractual obligations. Coastal Mining & Marine, LLC, is the parent company of two Mississippi companies Chapel Hill hired to mine and load the clay material:  (1) Pearlington Clay, LLC, a subsidiary of Coastal Mining & Marine, LLC, contracted to provide all of the clay material to Chapel Hill at $1 per ton; and (2) Pearlington Clay Port, LLC, another subsidiary of Coastal Mining & Marine, LLC, contracted to "through put" all of the clay material through its port loading facilties at the Hancock Port at $1 per ton.

   c.   Barging of the earrthen clay material commenced on or about the first week of March, 2010.

   d.   Despite vanishing marine assests following the Oil Spill on April 20, 2010, Chapel Hill had marine vessels under contract and continued barging the clay

    material from the Hancock Port to New Orleans.

e. On or about July 6, 2010, Chapel Hill learned that oil from the Oil Spill had reached the Rigolets railroad bridge where the Pearl River intersects the Gulf of Mexico and the Intercoastal Canal which was the only marine movement route. Discovery of oil on its only marine movement route, and the potential contamination of the barges caused Chapel Hill to transition to trucking the clay material which was a 50 mile one-way haul at 20 tons per truck as opposed to approximately 5,000 tons per marine/barge 26 mile one-way push. Volume potential went from 20,000 tons per day to about 2,500 tons per day and jeopardized Chapel Hill's timely delivery of the clay under its contract with the USACE. Chapel Hill also incurred increased transporation costs to truck the clay to New Orleans as opposed to barging it.

f. On or about July 22, 2010, the USACE issued a "partial termination" of its contract Chapel Hill reducing it from 6.1 million tons to 1.85 million tons because Chapel Hill could not meet the delivery milestones required by the contract due to the changed mode of transportation caused by the Oil Spill. The "partial termination" of Chapel Hill's contract from 6.1 million tons to 1.85 million tons of clay material was proximately caused by the Oil Spill. The USACE's reduction in clay reduced Chapel Hill's contract by more than $46,573,508.

g. As a result of the "partial termination" of Chapel Hill's contract with the USACE, Pearlington Clay, a subsidiary of Coastal Mining & Marine, LLC, who was contracted to provide all 6.1 million tons of clay, lost 4.3 million tons at $1 per ton.

h. As a result of the "partial termination" of Chapel Hill's contract with the USACE, Pearlington Clay Port, a subsidiary of Coastal Mining & Marine, LLC, who was contracted to "through put" all clay under the contract through its port loading facilities at $1 per ton, lost 5.6 million tons at $1 per ton.

i. As discussed, Coastal Mining & Marine, LLC owns Pearlington Clay and Pearlington Clay Port. Similiarly, Chapel Hill and Coastal Mining & Marine share a similar owner, Johnny Dollar. Mr. Dollar holds a 25% interest in Coastal Mining & Marine. Mr. Dollar and another company he owns, DeLoutre Property Rentals, LLC, are the sole members of Chapel Hill.

j. Therefore, it is clear that the four entites share common ownership, are further related through contract and subcontract, and the facts surrounding their claims are identical.

10. According to Fed. R. Civ. P. Rule 21, misjoinder is not grounds for dismissal. However, the Court entered PTO 60, which required individual plaintiffs who were not "related parties" to file separate lawsuits.

11. Believing they were related parties pursuant to PTO 60 but desiring clarification from the Court and confirmation of their compliance with PTO 60, on May 9, 2016, Plaintiffs filed an *Exparte/Consent Motion for Permissive Joinder of Parties and Consolidation of Claims* [Rec. Doc. 17589].

12. On June 3, 2016, the Court ordered BP to submit *in camera* to the Court and to the PSC: (a) a list of plaintiffs BP believes in good faith made submissions to PTO 60 that complied with the requirements of PTO 60; and (b) a list of plaintiffs whose submission BP in good faith believes are materially deficient for one or more identified reasons. [Rec. Doc. 18659].

13. With no ruling on Plaintiffs' prior motion, on June 3, 2016, the Chapel & Coastal entities filed a new motion requesting consideration of their previously filed motion regarding compliance with PTO 60. [Rec. Doc. 18675, *Exparte/Consent Motion for Consideration of Previously Filed Motion Regarding Compliance with PTO 60*].

14. On June 7, 2016, the Court entered an Order to Show Cause Re: Compliance with PTO 60, which requires any plaintiff identified in Exhibit 2 as having a deficient PTO 60 submission to show cause in writing by June 28, 2016, why the Court should not dismiss their B1 claims. [Rec. Doc. 18724].

15. Plaintiffs CHAPEL HILL, LLC and COASTAL MINING & MARINE, LLC appeared on Exhibit 2 as having been identified by BP with deficient PTO 60 submissions because no individual complaint was on file.[2] [Rec. Doc. 18724-3 at p. 4]. Lack of an individual

---

[2] Counsel would note that the subsidiary plaintiffs of Coastal Mining & Marine, LLC were not listed on Exhibit 2. However, out of an extreme measure of caution, Counsel has filed individual lawsuits for all four (4) parties: (1) Chapel Hill, LLC [2:16-cv-11519]; (2) Coastal Mining & Marine, LLC [2:16-cv-11641]; (3) Pearlington Clay, LLC [2:16-cv-11707]; and (4) Pearlington Clay Port, LLC [2:16-cv-11711].

complaint was the **only** deficiency alleged by BP on Exhibit 2.  BP admitted that both Chapel Hill and Coastal Mining's PTO 60 submission were timely, had proper responses regarding presentment, had proper  responses regarding release, were signed by Plaintiff and were filed with Exhibit A.  [Rec. Doc. 18724-3 at p. 4]

16. Counsel would note for the Court, and in the event of remand, for any subsequent Court, that counsel believes the Chapel & Coastal entities  were properly joined from inception in the original  complaint [2:13-cv-02033] and believes that for reasons of judicial economy and efficiency, these actions should be (or remain) consolidated and these parties should be (or remain) joined going forward.

17. Further, Counsel would note for the Court that they represent multiple non-related parties in the BP Litigation, and they were selective and only filed 9 multiple-party civil actions in MDL 2179, where the parties were properly joined under Fed. R. Civ. P. 20(a)(1)(B).  Based on current information and belief, Counsel filed 139 B1 lawsuits in this MDL but only 9 were single complaints with more than one plaintiff and the other 130 were individual complaints with one plaintiff.  Counsel filed the multiple-party complaints purposefully and based on a good faith belief that these 9 actions with plaintiffs with common ownership or common facts should be filed together for judicial economy.  Finally, counsel would also note for the Court that of the 139 lawsuits filed in this MDL, 128 lawsuits have been (or will be) dismissed with prejudice, leaving counsel only representing 11 B1 lawsuits pending within this MDL.  While these lawsuits are unrelated to the Chapel & Coastal entities' claims, it shows good faith on the part of their counsel to avoid improper joinder, and to properly apply the federal joinder rules in this action and others pending within the MDL.

18. Accordingly, even though the undersigned counsel believes the Chapel & Coastal entities are related parties and pursuant to PTO 60 they are considered as having filed an individual Complaint, out of an extreme abundance of caution, the undersigned counsel filed new individual Complaints for the Chapel and Coastal entities in response to the *Order to Show Cause Re: Compliance with PTO 60* [Rec. Doc. 18724]. A copy of the filed Complaints are attached hereto as Exhibits "A", "B", "C" and "D", respectively.

19. Counsel respectfully submits that the original complaint [2:13-cv-02033] with the four Chapel & Coastal entities should not be dismissed and should be allowed to proceed and to remain subject to further proceedings before this Honorable Court. Alternatively, in the event the Court determines that the Chapel and Coastal entities should proceed with separate complaints, then Counsel respectfully submits that the four new individual complaints [2:16-cv-11519, 2:16-cv-11641, 2:16-cv-11707 and 2:16-cv-11711] should not be dismissed and should be allowed to proceed forward and remain subject to further proceedings before this Honorable Court.

20. Accordingly, for these reasons, Plaintiff CHAPEL HILL, LLC, Plaintiff COASTAL MINING & MARINE, LLC, and its two wholly owned subsidiaries, Plaintiff PEARLINGOTN CLAY, LLC, and Plaintiff PEARLINGTON CLAY PORT, LLC respectfully submit that they have completely and correctly complied with the requirements of PTO 60 and that their B1 claims and causes of action should not be dismissed with prejudice for failing to comply with the requirements of PTO 60.

WHEREFORE, Plaintiff CHAPEL HILL, LLC, Plaintiff COASTAL MINING & MARINE, LLC, and its two wholly owned subsidiaries, Plaintiff PEARLINGOTN CLAY, LLC, and Plaintiff PEARLINGTON CLAY PORT, LLC respectfully move this Honorable Court not

to dismiss their B1 claims and allow these cases to remain subject to further proceedings before this Honorable Court.

Respectfully submitted on this 27th day of June, 2016.

    WILLIAMSON & RUSNAK
    */s/ Jimmy Williamson*
    Jimmy Williamson
    Federal ID No. 51896
    Texas State Bar No. 21624100
    Email: jimmy@jimmywilliamson.com
    Cyndi M. Rusnak
    Federal ID No. 24724
    Texas State Bar No. 24007964
    Email: cyndi@jimmywilliamson.com
    William Dills
    Texas State Bar No. 24067421
    Email: billy@jimmywilliamson.com
    4310 Yoakum Boulevard
    Houston, Texas 77006
    (713) 223-3330 – Telephone
    (713) 223-0001 – Facsimile

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing Response to Order to Show Cause Re: Compliance with PTO 60 has been served on all counsel by electronically uploading same to Lexis Nexis File & Serve in accordance with Pretrial Order Number 12, and the foregoing was electronically filed with the Clerk of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 27th day of June, 2016.

DATE: June 27, 2016                */s/ Jimmy Williamson*
                                        JIMMY WILLIAMSON