EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
Civil Action No. 10-MD-2179-CJB-SS

**SWORN STATEMENT** FOR DISCLOSURES REGARDING REMAINING
NON-GOVERNMENTAL ECONOMIC LOSS AND PROPERTY DAMAGE CLAIMS  (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Barrera | Joaquin | | |

| Phone Number | E-Mail Address |
|---|---|
| 011 55 982 825 90 47 | |

| Current Mailing Address | City / State / Zip |
|---|---|
| Calle Francisco I Madero S/N  Loc. Isla Aguada | Carmen, CAMP 24375 |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| Anthony G. Buzbee<br>The Buzbee Law Firm | cadams@txattorneys.com |

Any prior Mailing Address used by Plaintiff from April 2010 to present?

Any prior name used by Plaintiff from April 2010 to present?

The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff:

Please indicate your status:

☐ Properly opted out of the Economic and Property Damages Settlement*

☒ Not a member of the Economic and Property Damages Settlement Class

☐ Member of the Economic and Property Damages Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A

3

**EXHIBIT**

**A-1**

You are pursuing a claim against at least one B1 Defendant by way of (*select all that apply*):

☐ Joinder in the Amended B1 Master Complaint (Rec. Doc. 1128)*

☐ Individual Action, (including a new action filed because plaintiff previously only had short form joinder on file), Eastern District of Louisiana Case No. _____.

☒ Individual Action filed because plaintiff previously was part of mass-joinder Complaint; list both prior Eastern District of Louisiana Case No. **13-cv-2791** _____ and new Individual Action Case No. **To be determined** _____

☐ Other:_____

* A copy of your timely Short Form Joinder(s) (and any Plaintiff Profile Form(s)) must be included with your service of this Exhibit A.

**Presentment:**

Did you, the plaintiff seeking relief, present this claim at least 90 days prior to filing a lawsuit or joining the B1 Complaint?

Yes **X** _____.    No _____.

If Yes, please identify:

1. The program to which presentment was made by the plaintiff: **BP Houston Claims office and/or Gulf Coast Claims Facility.** _____.

2. The date of presentment (MM/DD/YYYY): **1/18/2013** _____.

3. The claim number(s) (if available). **1019778-01 / 1640966** _____.

4. Did you execute a release of your claims upon receiving payment through any claims program:

Yes _____.    No **X** _____.

*If you need more space to detail your response, please attach additional pages if necessary. Make sure to indicate the question you are continuing to answer.*

_____
_____
_____
_____

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: _____, 2016

Location (City and State): _____

_____
Signature of Plaintiff (*Plaintiff's Attorney <u>Cannot</u> Sign on Plaintiff's Behalf*)

_____
Print Name

The service of this sworn statement and supporting information pursuant to this Order must be on both Counsel for BP and the PSC on or before <u>May 2, 2016</u>. Service can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steve Herman or Jim Roy |
| Kirkland & Ellis LLP | The Exchange Centre, Suite 2000 |
| 300 North LaSalle St, | 935 Gravier Street |
| Suite 2400 | New Orleans, LA 70112 |
| Chicago IL 60654 | |

Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon Plaintiffs' Steering Committee and Counsel for BP via File & ServeXpress ("F&S").



E-SERVICE
59071719
May 27 2016
04:31PM
File & ServeXpress

# THE BUZBEE LAW FIRM

*www.txattorneys.com*

13 de mayo de 2016

**Correo EE.UU.**
Juan Cordova
Calle Francisco I Madero 119  Villa Cuauhtemoc
86760, Centla, TAB

      S.C.P.P. 20 De Abril Del Poblado Ignacio Zaragoza, S.C. de R.L. de C.V.

      RE:    Derrame de petróleo del 20 de Abril del 2010

      **ATENCIÓN INMEDIATA – REGRESA LA HOJA AJUNTADA A ESTA CARTA. SI NO, EL JUEZ VA DESESTIMAR TU CASO SIN OPORTUNIDAD A PRESENTAR CASO DE NUEVO.**

Juan Cordova:

      Esta carta es un **pedido urgente** para que firme y regrese la hoja de declaración adjunta en referencia de las pérdidas que sufrió en conexión con el derrame de petróleo del 20 de Abril de 2010. Tu caso está pendiente en la Corte Federal de los EE.UU., pero el juez ha emitido una orden que afecta tu caso. **SE REQUIERE SU ATENCIÓN INMEDIATA.** Ayer el juez emitido una orden, requiriendo cada cliente a someter la hoja adjunta a esta carta antes del 2 de Mayo de 2016. **Favor de regresar a mí la hoja tan pronto sea posible, a no más tardar el 13 de Abril de 2016.**

      El no regresar esta declaración va resultar en desestimar de su caso. El juez solamente dio 30 días para someter las declaraciones. La Corte esta ordenando que **usted** firme la declaración o tu caso va ser desestimado sin oportunidad para presentar un nuevo caso.

      Favor revisa la última hoja. 1) Escribe la fecha, 2) escribe el estado y cuidad, 3) firma tu nombre y apellido, y 4) escribe tu nombre y apellido. Regresa por fax 1-713-223-5909 o correo electrónico cadams@txattorneys.com. Si yo no recibo la declaración antes del 13 de Abril de 2016, yo no voy a tener suficiente tiempo para someter la hoja a la Corte.

                   Atentamente,

                   *Caroline Adams*

                   Caroline E. Adams

CEA/mg/app
8383

**EXHIBIT**

**A-2**

## EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
Civil Action No. 10-MD-2179-CJB-SS

**SWORN STATEMENT** FOR DISCLOSURES REGARDING REMAINING
NON-GOVERNMENTAL ECONOMIC LOSS AND PROPERTY DAMAGE CLAIMS (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| S.C.P.P. 20 De Abril Del Poblado Ignacio Zaragoza, S.C. de R.L. de C.V. | | | |

| Phone Number | E-Mail Address |
|---|---|
| 011 52 993 101 20 53 | |

| Current Mailing Address | City / State / Zip |
|---|---|
| Calle Francisco I Madero 119 Villa Cuauhtemoc | Centla / TAB / 86760 |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| Anthony G. Buzbee The Buzbee Law Firm | cadams@txattorneys.com |

Any prior Mailing Address used by Plaintiff from April 2010 to present?

Any prior name used by Plaintiff from April 2010 to present?

The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff:

Please indicate your status:

☐ Properly opted out of the Economic and Property Damages Settlement*

☒ Not a member of the Economic and Property Damages Settlement Class

☐ Member of the Economic and Property Damages Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A

3

You are pursuing a claim against at least one B1 Defendant by way of (*select all that apply*):

☐ Joinder in the Amended B1 Master Complaint (Rec. Doc. 1128)*

☐ Individual Action, (including a new action filed because plaintiff previously only had short form joinder on file), Eastern District of Louisiana Case No. _____.

☒ Individual Action filed because plaintiff previously was part of mass-joinder Complaint; list both prior Eastern District of Louisiana Case No. **13-cv-2791**_____ and new Individual Action Case No. **To be determined**_____

☐ Other:_____

* A copy of your timely Short Form Joinder(s) (and any Plaintiff Profile Form(s)) must be included with your service of this Exhibit A.

Presentment:

Did you, the plaintiff seeking relief, present this claim at least 90 days prior to filing a lawsuit or joining the B1 Complaint?

Yes **X**_____    No _____

If Yes, please identify:

1. The program to which presentment was made by the plaintiff: **BP Houston Claims office and/or Gulf Coast Claims Facility.**

2. The date of presentment (MM/DD/YYYY): _____**1/18/2013**_____

3. The claim number(s) (if available). **/**_____.

4. Did you execute a release of your claims upon receiving payment through any claims program:

Yes_____    No **X**_____.

*If you need more space to detail your response, please attach additional pages if necessary. Make sure to indicate the question you are continuing to answer.*

_____

_____

_____

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: May 15, 2016

Location (City and State): Centla, Tabasco

Signature of Plaintiff (*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf*)

Domingo Gordillo Chable
Print Name

The service of this sworn statement and supporting information pursuant to this Order must be on both Counsel for BP and the PSC on or before May 2, 2016. Service can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steve Herman or Jim Roy |
| Kirkland & Ellis LLP | The Exchange Centre, Suite 2000 |
| 300 North LaSalle St, | 935 Gravier Street |
| Suite 2400 | New Orleans, LA 70112 |
| Chicago IL 60654 | |

Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon Plaintiffs' Steering Committee and Counsel for BP via File & ServeXpress ("F&S").

3



E-SERVICE
59071719
May 27 2016
04:31PM
File & ServeXpress

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | § | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | § | SECTION J |
| GULF OF MEXICO, on | § | |
| APRIL 20, 2010 | § | JUDGE BARBIER |
| | § | MAG. JUDGE SHUSHAN |
| This Document Relates to: | § | |
| Pleading Bundle B1 | § | |

| | | |
|---|---|---|
| S.C.P.P. 20 DE ABRIL DEL POBLADO IGNACIO | § | CIVIL ACTION  NO. _____ |
| ZARAGOZA, S.C. DE R.L. DE C.V. | | |
| | § | |
| | § | SECTION  J |
| VS. | § | |
| | § | JUDGE BARBIER |
| BP P.L.C.; BP AMERICA, INC.; BP | § | |
| PRODUCTS NORTH AMERICA, INC.; | § | MAG. JUDGE SHUSHAN |
| BP AMERICA PRODUCTION COMPANY; | § | |
| BP EXPLORATION & PRODUCTION, INC. | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S S.C.P.P. 20 DE ABRIL DEL POBLADO IGNACIO ZARAGOZA, S.C. DE R.L. DE C.V. COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, S.C.P.P. 20 De Abril Del Poblado Ignacio Zaragoza, S.C. de R.L. de C.V., complaining of the Defendants named herein, and files this Complaint, and in support thereof, would show as follows:

## I. INTRODUCTION

1.  This Court found Defendants' conduct egregious and held Defendants liable under general maritime law and apportioned the comparative fault of BP, Transocean, and Halliburton for the blowout, explosion, and oil spill on April 20, 2010 involving the Deepwater

1

Horizon.[1]   The Court found fault as follows: 67% BP, 30% Transocean, and 3% Halliburton. Six years later, the victims of the spill still try to recover and reurge claims pursuant to the Court's Pre-Trial Order 60.[2]

2.      Plaintiff seeks damages as a Mexican fishing association, working directly in the fishing industry and was affected by the impact of the Gulf Oil Spill. Plaintiff does business along the Gulf Coast in the United States of America, as well as in the States of Veracruz, Tamaulipas and Yucatan and other states along the Gulf Coast in the Republic of Mexico and has a proprietary interest in the waters effected by the spill.

3.      Plaintiff brings this suit against the Defendants for losses, injuries and damages, including actual, compensatory and punitive damages, arising out of the catastrophic and avoidable oil spill in the Gulf of Mexico caused by the April 20, 2010 explosion and fire aboard the Deepwater Horizon oil rig ("Deepwater Horizon"), and the resulting discharge of unprecedented volumes of crude oil into the Gulf of Mexico.  This massive and uncontrolled discharge of oil has polluted the waters and natural resources in the Gulf of Mexico and continues to threaten territorial waters and shores surrounding Texas, Louisiana and other shores along the Gulf Coast in the United States as well as Veracruz, Tamaulipas, Yucatan and other Gulf Coast States in Mexico.

## II. PARTIES

4.      Plaintiff is a fisherman, or group of fishermen, and the business was impacted by the Oil Spill with the primary resident in Mexico.

5.      Defendant BP Exploration & Production Inc. ("BPXP") is a Delaware corporation with its principal place of business in Warrenville, Illinois.   BPXP was a

---

[1] *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 21 F. Supp. 3d 746 (Ed.La. Sept. 2014).
[2] Plaintiff previously filed a lawsuit, and all claims previously asserted timely are incorporated herein.

leaseholder and the designated operator in the lease granted by the former Minerals Management Service[3] ("MMS") allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252, the location known as "Macondo" where the Oil Spill originated. BPXP was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. § 2714. This court has personal jurisdiction over BPXP, because BPXP is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

6. Defendant BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas. BP America was the party to the Drilling Contract with Transocean Ltd. for the drilling of the Macondo well by the Deepwater Horizon vessel. This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

7. Defendant BP p.l.c. is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. BP p.l.c. is one of the world's largest energy companies with over 80,000 employees and $239 billion in revenues in 2009. BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division in which BPXP and BP America fall, through vertical business arrangements aligned by product or service groups. BP p.l.c.'s operations are worldwide, including in the United States. Defendants BPXP and BP

---

[3] The MMS, a federal entity that divides the Gulf of Mexico's seafloor into rectangular "blocks," and then auctions the rights to drill for oil and gas beneath those blocks of seafloor, was reorganized as the Bureau of Ocean Energy Management, Regulation and Enforcement (BOEMRE) on June 18, 2010; however, it shall be referred to as the MS throughout this document.

America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally.

8.     BP p.l.c. states that it is the leading producer of oil and natural gas in the United States and the largest investor in U.S. energy development.  A sampling of BP p.l.c.'s contacts with the U.S. are as follows:  (a) BP p.l.c.'s American Depository Shares are listed on the New York Stock Exchange and BP p.l.c. is one of the largest non-U.S. companies listed on the NYSE; (b) roughly 40% of BP's shares are owned by U.S. individuals and institutions; (c) BP p.l.c. files annual reports with the U.S. Securities and Exchange Commission; (d) approximately 60% of BP p.l.c.'s fixed assets are located in the U.S. or the European Union; and (e) BP p.l.c. reports having 2,000 U.S.-based employees in non-Exploration & Production, non-Refining & Marketing BP entities.

9.     Alternatively, if BP p.l.c. contests that it is subject to jurisdiction under Louisiana's long-arm jurisdiction statute, then this Court may exercise personal jurisdiction over BP p.l.c. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, the federal long-arm jurisdiction provision, because claims in this action arise under federal law, the exercise of jurisdiction over BP p.l.c. is consistent with the United States Constitution and laws," and BP p.l.c. has been served with a summons on the original Master Complaint.

10.     This Court also has specific jurisdiction over BP p.l.c. pursuant to Louisiana's long-arm specific jurisdiction provision (13 Louisiana Statute § 3201(B)), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.  Plaintiff's causes of action arise out of wrongful conduct committed by BP p.l.c., directly or indirectly by its agents, which caused injury or damage in Louisiana by an offense or quasi offense committed through an act or omission outside of Louisiana.  These acts or omissions took place both before the blowout

resulting in the Oil Spill and in the negligent conduct of BP, p.l.c. after the blowout in attempting to contain the catastrophic damage caused by the Oil Spill. BP, p.l.c. regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. In addition, BP p.l.c. has had continuous and systematic contacts with Louisiana (and with the United States more generally), and has been served with a summons on the original Complaint.

11.     In addition, this Court also has personal jurisdiction over BP p.l.c. under agency principles, because BP p.l.c.'s agents, BP America and BPXP, do business in Louisiana. BP America and BPXP are both wholly-owned subsidiaries of BP p.l.c. In BP p.l.c.'s Annual Report for 2009, in which it presents a consolidated financial statement that includes BP America and BPXP, BP p.l.c. states that it "controls" both BP America and BPXP, among other subsidiaries, meaning that it has "the power to govern the financial and operating policies of the [subsidiary] so as to obtain benefit from its activities . . . ."

12.     BP p.l.c.'s direct, joint and/or assumed responsibility and/or liability for safety and well control, both before and/or after the explosions and blowout on April 20, 2010, is further evidenced by the announcement of the Macondo Project on the BP website hosted and copyrighted by BP p.l.c., the publication of information concerning the casualty and spill on the BP website hosted and copyrighted by BP, the express and/or implied acceptance of responsibility for the safety of BP operations in North America and the Gulf of Mexico in statements by officers of BP p.l.c., the presence (upon information and belief) of a BP p.l.c. officer or employee on the Deepwater Horizon for the celebration that occurred shortly before the explosions and fire, the direct participation of BP p.l.c. employees in the post-casualty investigation, the direct participation of BP p.l.c. officers and employees in the

Governmental post-casualty investigations, the direct participation of BP p.l.c. officers and employees in the post-casualty well-control efforts, and the direct participation of BP p.l.c. in the establishment and/or funding of the Escrow Fund and/or Gulf Coast Claims Facility.

13.    BPXP, BP America, and BP p.l.c. are generally referred to herein collectively as "BP."  As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operations.

### III. JURISDICTION AND VENUE

14.    Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction."

15.    This Court has jurisdiction over these claims pursuant to the Oil Pollution Act, 33 U.S.C. § 2717 (b) (the "OPA").

16.    Prosecution and venue of this class action in this district is proper under 28 U.S.C. § 1391 because Defendants do business herein and the events or omissions giving rise to the claims asserted herein occurred in this district.  Venue is also proper pursuant to the OPA, 33 U.S.C. 2717 (b), as the discharge occurred in this district.  Venue is also appropriate in this district consistent with 28 U.S.C. § 1407 and the 2010 Transfer Order of the Judicial Panel on Multidistrict Litigation.  See *In re Oil Spill by the Oil Rig "Deepwater Horizon"* in the Gulf of Mexico, on April 20, 2010, 731 F. Supp. 2d 1352 (J.P.M.L. 2010) and this Court's Pretrial Order No. 60 (Rec. Doc. 904), which directed plaintiffs to file their complaints arising out of the Deepwater Horizon Incident in this District.

17.     Jurisdiction of these claims for Mexican citizens also exists pursuant to 2 U.S.C. §1350, also called the Alien Tort Claims Act ("ATCA"), which allows District Courts to have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.  Pursuant to the International Covenant and Civil and Political Rights, Mexico has adopted the proclamation of the United Nations to protect and recognize the inherent dignity and of the equal and inalienable rights of the human family giving citizens of the United States and other countries the same rights as the Mexican citizens.  Clearly, the acts of these Defendants has violated the rights of the Mexican citizens in their ability to live (subsistence) and in their right to work on the water to make their living.

18.     Plaintiff shows the North American Agreement on Environmental Cooperation expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations.  See Article 6 of the Agreement.  This Agreement automatically came into effect after entry into force of NAFTA. Some of the primary objectives of the agreement include the following:  (1) foster the protection and improvement of the environment in the territories of the Parties for the well-being of present and future generations; (2) enhance compliance with, and enforcement of, environmental laws and regulations; and (3) promote transparency and public participation in the development of environmental laws, regulations and policies; and (4) promote pollution prevention policies and practices.  Article 6 purports to give private access the other government's remedies.  The Agreement/Treaty states as follows:

2.     Each Party shall ensure that persons with a legally recognized interest under its law in a particular matter have appropriate access to administrative, quasi-judicial or judicial proceedings for the enforcement of the Party's environmental laws and regulations.

3.  Private access to remedies shall include rights, in accordance with the Party's law, such as:

    a.  To sue another person under that Party's jurisdiction for damages;

    b.  To seek sanctions or remedies such as monetary penalties, emergency closures or orders to mitigate the consequences of violations of its environmental laws and regulations;

    c.  To request the competent authorities to take appropriate action to enforce that Party's environmental laws and regulations in order to protect the environment or to avoid environmental harm; or

    d.  To seek injunctions where a person suffers, or may suffer, loss, damage or injury as a result of conduct by another person under that Party's jurisdiction contrary to that Party's environmental laws and regulations or from tortious conduct.

Plaintiff would show pursuant to §1007 of OPA (33 U.S.C. 2707), that they have all presented their claims in accordance with OPA guidelines and more than ninety (90) days has elapsed since said presentment without payment. Said presentment of each claim was made to the Gulf Coast Claims Facility ("GCCF") in 2012, and again in January of 2013 directly to the BP Claims office in Houston, Texas. Plaintiff was not eligible to file a claim with the Deepwater Horizon Economic Claims Center ("DHECC") as a foreign claimant. Plaintiff shows that it has not been compensated by anyone and such recovery is authorized by treaties and agreements the United States has with Mexico or by federal law.

## IV. FACTUAL ALLEGATIONS

19.  On April 20, 2010, a well blowout on the oil rig Deepwater Horizon in the Gulf of Mexico marked the beginning of what would become the most pervasive and devastating environmental disaster in the history of the United States and Mexico. The uncontrolled blowout caused explosions and a raging fire aboard the Deepwater Horizon; after burning for two days, the rig sank, commencing an oil spill of unprecedented proportion that damaged, depleted, and destroyed marine, estuarine, and coastal environments in the Gulf

of Mexico, Louisiana, Mississippi, Alabama, Texas, and Florida in the United States and in the waters near Veracruz, Tamaulipas, Yucatan and the other Gulf Coast States in Mexico (the "Oil Spill"). In fact, it is anticipated the entire Gulf of Mexico ecosystem will be affected for a decade or more. In the twelve weeks it took to cap the blown-out well, over 210 million gallons of oil gushed unchecked into the Gulf of Mexico, causing widespread and disastrous environmental and economic damage to the people, businesses, and environment of the Gulf of Mexico.

20. This Complaint asserts claims under general federal maritime law, including federal common law and federal statutory law, specifically the Oil Pollution Act of 1990, seeking damages for the Plaintiff herein including actual, compensatory, and punitive damages, arising from the well blowout, fire, and explosions aboard, and sinking of, the Deepwater Horizon on April 20, 2010, and the subsequent Oil Spill in the Gulf of Mexico.

21. On April 20, 2010, at approximately 9:45 p.m. CST, an uncontrolled well blowout caused explosions on the Deepwater Horizon, an oil rig vessel engaged in oil exploration drilling operations in the Gulf of Mexico. The explosions ignited a raging fire, fueled by gas spewing onto the vessel from the blown-out well. After burning for two days, the Deepwater Horizon sank to the ocean floor.

22. Each day during the course of the Oil Spill, tens of thousands of barrels of crude oil gushed from the wellhead and broken riser, bubbling up to the surface and flattening out into a widening slick of oil, as well as spreading out in vast subsurface plumes. Ultimately, almost five million barrels (210 million gallons) of crude oil spilled into the Gulf of Mexico.

23. The Deepwater Horizon's well blowout and the subsequent explosions, fire, sinking, and Oil Spill were foreshadowed by a string of disastrous incidents and near misses in

9

Defendants' operations on land and at sea, as well as poor decision-making by Defendants and their employees, as they ignored crucial safety issues, cut corners, and violated federal and state law to save time and money in favor of production and profit and at the expense of worker safety and environmental protection.   All the while, Defendants continued to evade and subvert industry regulations.

24. Defendants   could   have   prevented   this   catastrophe   by   using   proper   risk management practices, following deepwater drilling industry standards, following required safety protocols and precautionary procedures, properly maintaining equipment, and using widely available emergency safety technology but, with little regard for the risk to the vessel workers or the environment, Defendants chose to violate or ignore operational discipline, and to save money and time at the expense of safety.  Their cost-cutting measures, consistent with their long corporate histories of flagrant disregard for safety, were taken with willful, wanton, and reckless indifference to the disastrous results to the workers aboard the vessel, the environment, and the economic interests, businesses, and property of Plaintiff herein.

25. Defendants  repeatedly  made  decisions  impacting  the  safety  of  the  vessel,  its workers, the environment, and the health, welfare, and value of the people, businesses, and property of the Gulf states in the United States and Mexico in the direction of short-term gain, through reduced schedule and reduced cost, rejecting adequate and responsible risk-analysis checks and balances to weigh cost and time versus risk and safety.  The result was both predictable in outcome and unprecedented in scale.  Moreover, because their conduct endangered the health and safety of a large region and population, caused and increased the risk of serious injury and bodily harm, and affected a financially vulnerable population dependent on the Gulf of Mexico, the degree of reprehensibility of Defendants' conduct is at the highest level.

26. The Oil Spill has caused, and continues to cause, devastating environmental and economic damage. For example, there have been thousands of square miles of waters closed to fishing, swimming and/or boating, and thousands of square miles of historic coastal marshes, delicate estuaries, cypress forests, barrier islands, and white sand beaches compromised in both the United States and Mexico. Fishermen and marine-related businesses have lost and continue to lose income and their businesses; the tourism industry and hotels, resorts, restaurants, and other tourism-reliant businesses, including churches, have lost and continue to lose income; and property owners have suffered the loss, damage and/or diminution of the value of their properties throughout the Gulf Coast Areas[4].

27. Collectively, the well blowout, the explosions and fire aboard the Deepwater Horizon, the sinking of the rig, the subsequent Oil Spill, the efforts to cap the blown-out well, the clean-up efforts, and the operations surrounding those events and activities comprise the "Deepwater Horizon Incident."[5]

28. Investigators also found that a stifling bureaucracy imposed by onshore management bred resentment among Transocean vessel workers. Workers complained that past problems were only investigated by the company in order to place blame, rather than to learn from the mistakes. Although workers "often saw unsafe behavior at the rig" many expressed fears of reprisals for reporting problems, especially to supervisors based in Houston. This

---

[4] As defined below, the "Gulf Coast Areas" are the States of Louisiana, Mississippi, and Alabama, the counties of Chambers, Galveston, Jefferson and Orange in the State of Texas, and the counties of Bay, Calhoun, charlotte, Citrus, Collier, Dixie, Escambia, Franklin, Gadsden, Gulf, Hernando, Hillsborough, Holmes, Jackson, Jefferson, Lee, Leon, Levy, Liberty, Manatee, Monroe, Okaloosa, Pasco, Pinellas, Santa Rosa, Sarasota, Taylor, Wakulla, Walton and Washington in the State of Florida.

[5] More specifically, the "Deepwater Horizon Incident" refers to the events, actions, inactions, and omissions leading up to and including (i) the blowout of the Macondo well on April 20, 2010, (ii) the explosions and fire aboard the Deepwater Horizon, (iii) the sinking of the Deepwater Horizon on April 22, 2010, (iv) the release of oil, other hydrocarbons, and other substances from the blown-out well and the Deepwater Horizon, (v) the efforts to contain the blown-out well, (vi) response activities, including the VoO Program; (vii) the operation of the Gulf Coast Claims Facility; and (viii) BP's public statements relating to all of the foregoing.

tension between the vessel and the beach likely played a role in discouraging workers on Deepwater Horizon from reporting problems or anomalies like the abnormal negative pressure results to their supervisors onshore.

29.    As Defendants internally prioritize profits over safety at every level of their companies, they continue to resist and evade regulation of the oil exploration and production industry.   For example, despite the known vulnerabilities and shortcomings of BOPs in deepwater drilling, this year BP helped finance a study to support their argument that BOP pressure tests should be required with less frequency — every 35 days rather than the current frequency of every 14 days.  This change would save the industry $193 million per year in "lost productivity."  BP has also actively opposed MMS rules requiring drilling vessel lessees and operators to develop and audit their own Safety and Emergency Management Plans, insisting that voluntary compliance will suffice.  The Deepwater Horizon disaster is a tragic example to the contrary.

30.    Decisions tradeoffs, actions, and inactions by Defendants, including the risky well design, inadequately tested cement, tests that were skipped or misinterpreted, and procedures that deviated from industry norms, all contributed to, and practically ensured the blowout of the Macondo well.   At no time did any of Defendants report regulatory violations to the authorities, or call to stop work because of unsafe decisions, plans, actions, or conditions in the well or on the vessel.   The carelessness, nonchalance, inexperience, and distraction of Defendants resulted in insufficient well monitoring and overlooking the signs of an influx for 49 minutes prior to the blowout.   Once the well blew out, Defendants' poor vessel maintenance and intentional bypass of alarms and emergency systems contributed to the failure of safety mechanisms, exacerbated the disaster, and likely caused the unnecessary deaths

and injuries of vessel workers, and the destruction of the Deepwater Horizon. Underlying it all, Defendants' corporate cultures of trading safety for speed, production, and profit, and encouraging their employees to do the same, sped the inevitable approach of catastrophe.

Impact of the Deepwater Horizon Incident on Plaintiff, the Environment, and Economy

31.     For over twelve weeks, unprecedented amounts of raw crude oil, emulsified and weathered oil, natural gas, chemical dispersants, and other toxic pollutants spewed into the Gulf of Mexico — a total petroleum discharge of 6.9 million barrels, not including the 1.8 million gallons of chemical dispersants and any other toxic pollutants that were also released as a result of the Oil Spill.

32.     The oil released in the course of the Oil Spill contains benzene, toluene, polyaromatic hydrocarbons, and other compounds (collectively referred to as Total Petroleum Hydrocarbons, or "TPH"), all of which are known carcinogens. Discharge of the toxic pollutants, as identified in 40 C.F.R. § 401.15, likely includes, but is not limited to, benzene, toluene, naphthalene, polynuclear aromatic hydrocarbons (including, but not limited to, phenanthrene, benzanthracenes, benzophyrenes, benzofloranthene, chrysenes, dibenzan-thracenes, and idenopyrenes), fluoranthene, arsenic, cadmium, copper, mercury, and nickel, all of which are hazardous to the health of humans and marine life. Upon information and belief, BP has analyzed and knows the exact concentrations of each of the toxic pollutants present in the oil coming from its wells.

33.     The chemical dispersants used by BP during the Oil Spill response may be harmful to the health of humans and marine life. Over two million gallons of chemical dispersants were released into Gulf waters to disperse the oil coming from the damaged well. According to environmental experts in the Deepwater Horizon Study Group, oil recovery

(such as skimming) is preferable to chemical dispersion because recovery actually removes the oil from the environment, rather than simply spreading it through the water column and sinking it to the sea floor, where it can continue to cause environmental damage to the Gulf ecosystem while no longer causing public relations damage to BP. The environmental effects of using chemical dispersants in such magnitude and at such depths have never been tested.

34.     The Deepwater Horizon Incident has impacted and continues to impact Plaintiff and the shorelines, beaches, shores, marshes, harbors, estuaries, bayous, bays, and waters of the Gulf of Mexico in both the United States and Mexico. In fact, the use of the dispersants by BP caused the oil to stay under the surface of the Gulf moving in giant plumes throughout the entire Gulf of Mexico, destroying reefs and plankton which will affect the entire Gulf of Mexico for years.

35.     The Deepwater Horizon Incident and the resulting contamination of the Gulf of Mexico have caused and will continue to cause a loss of revenue for individuals and entities in both the United States and Mexico that rely on the use of the Gulf of Mexico and/or its marine life.

## V. CLAIMS FOR RELIEF

### A.     Negligence

36.     Plaintiff re-alleges each and every allegation set forth in all preceding paragraphs as if fully restated here, in the claim for negligence under federal common law.

37.     At all times material hereto, Defendants were participating in drilling operations onboard the Deepwater Horizon in the Gulf of Mexico.

38.     At all times material hereto, Defendants owed and breached duties of ordinary and reasonable care to Plaintiff in connection with the drilling operations of the Deepwater Horizon and the maintenance of the vessel, its appurtenances and equipment, and

additionally owed and breached duties to Plaintiff to guard against and/or prevent the risk of an oil spill.

39.     The existence and breach of these legal duties are established under the general maritime law and state law as deemed applicable herein.

40.     Plaintiff is businesses that are dependent upon the Gulf of Mexico's marine and coastal environments for their livelihood and income, were within an appreciable zone of risk and, as such, were obligated to protect them. Plaintiff has a proprietary interest in the waters of the Gulf of Mexico.

41.     The Deepwater Horizon Incident was caused by the joint and concurrent negligence of Defendants, Transocean, and Halliburton, which renders them jointly, severally, and solidarily liable to Plaintiff.

42.     Defendants knew of the dangers associated with deepwater drilling and failed to take appropriate measures to prevent damage to Plaintiff and the Gulf of Mexico's marine and coastal environments and estuarine areas in both the United States and Mexico.

43.     Defendants were under a duty to exercise reasonable care while participating in drilling operations on the Deepwater Horizon to ensure that a blowout and subsequent oil spill did not occur as a result of such operations.

44.     Defendants were under a duty to exercise reasonable care to ensure that if crude oil discharged in the event of a blowout, that it would be contained and/or stopped within the immediate vicinity of the Deepwater Horizon in an expeditious manner.

45.     Defendants knew or should have known that the acts and omissions described herein could result in damage to Plaintiff.

46.     Defendants, respectively and collectively, failed to exercise reasonable care while participating in drilling operations to ensure that a blowout and subsequent oil spill did not occur, and thereby breached duties owed to Plaintiff.

47.     Defendants, respectively and collectively, failed to exercise reasonable care to ensure that oil would expeditiously and adequately be contained within the immediate vicinity of the Deepwater Horizon in the event of a blowout, and thereby breached duties owed to Plaintiff.

48.     Defendants, respectively and collectively, failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters of the Gulf of Mexico, and thereby breached duties owed to Plaintiff.

49.     The conduct of the Defendants with regard to the manufacture, maintenance and/or operation of drilling operations and oil rigs such as the Deepwater Horizon and its appurtenances and equipment is governed by numerous state and federal laws and permits issued under the authority of these laws.   These laws and permits create statutory standards that are intended to protect and benefit Plaintiff, including, but not limited to, those set forth in the OPA, and regulations that govern the National Oil and Hazardous Substances Contingency Plan[6] (e.g., 40 C.F.R. § 300.150).   One or more of the Defendants violated these statutory standards.

50.     In addition to the allegations of statutory and regulatory violations made elsewhere in this Complaint, the BSEE found that Defendants, BP, Transocean, and Halliburton violated the following federal regulations:

---

[6]Response actions under the National Oil and Hazardous Substances Contingency Plan must comply with provisions for response actions under 29 C.F.R. § 1910.120.  These regulations impose upon Defendants a standard of care to which Defendants did not adhere.

a.      BP, Transocean, and Halliburton failed to protect health, safety, property, and the environment by failing to perform all operations in a safe and workmanlike manner, in violation of 30 C.F.R. § 250.107(a)(1);

b.      BP, Transocean, and Halliburton did not take measures to prevent unauthorized discharge of pollutants into offshore waters, in violation of 30 C.F.R. § 250.300;

c.      BP, Transocean, and Halliburton failed to take necessary precautions to keep the well under control at all times, in violation of 30 C.F.R. § 250.401(a);

d.      BP did not cement the well in a manner that would properly control formation pressures and fluids and prevent the direct or indirect release of fluids from any stratum through the wellbore into offshore waters, in violation of 30 C.F.R. §§ 250.420(a)(1) and (2);

e.      BP failed to conduct an accurate pressure integrity test, in violation of 30 C.F.R. § 250.427;

f.      BP and Transocean failed to maintain the Deepwater Horizon's BOP system in accordance with the American Petroleum Institute's Recommended Procedure 53 section 18.10.3, in violation of 30 C.F.R. § 250.446(a);

g.      BP failed to obtain approval of the Temporary Abandonment procedures it actually used at the Macondo well, in violation of 30 C.F.R. § 250.1721(a);

h.      BP failed to conduct an accurate pressure integrity test at the 13-5/8" liner shoe, in violation of 30 C.F.R. § 250.427; and

i.      BP failed to suspend drilling operations at the Macondo well when the safe drilling margin identified in the approved application for permit to drill was not maintained, in four separate violations of 30 C.F.R. § 250.427(b).

51.     The violations of these statutory standards constitute negligence per se under federal law.

52.     Defendants also violated the International Safety and Management Code ("ISM"), as adopted by the International Convention for the Safety at Life at Sea ("SOLAS"), which provides rules and standards to ensure that ships are constructed, equipped, and manned to safeguard life at sea, by failing to properly maintain the vessel, train personnel,

and perform appropriate risk assessment analyses. See 46 U.S.C. §§ 3201-3205; 33 C.F.R. § 96.230; 33 C.F.R. § 96.250.

53.     At all times material hereto, the Deepwater Horizon was leased and operated pursuant to a contract between Transocean and BP.     Together, Transocean and BP were responsible for design and well control.

54.     BP owed duties to Plaintiff herein to, inter alia, exercise reasonable care to design, create, manage and control the well and the flow of hydrocarbons therefrom in a safe and prudent manner and to conduct its drilling operations with reasonable and ordinary care.

55.     BP breached its duties to Plaintiff by, inter alia:

    a. choosing and implementing a less expensive and less time-consuming long string well design, which had few barriers against a gas blowout, instead of a safer liner/tieback design which would have provided additional barriers to gas blowout, despite its knowledge that the liner/tieback design was a safer option;

    b. using pipe material that it knew, and which it recognized before the blowout, might collapse under high pressure;

    c. using too few centralizers to ensure that the casing was centered into the wellbore;

    d. failing to implement a full "bottoms-up" circulation of mud between the running of the casing and the beginning of the cement job in violation of industry standards;

    e. failing to require comprehensive lab testing to ensure the density of the cement, and failing to heed the ominous results of negative pressure testing which indicated that the cement job was defective;

    f. cancelling the cement bond log test that would have determined the integrity of the cement job;

    g. failing to deploy the casing hanger lockdown sleeve to prevent the wellhead seal from being blown out by pressure from below;

      h.   using an abnormally large quantity of mixed and untested spacer fluid;

      i.   failing to train drilling vessel workers and/or onshore employees, and to hire personnel qualified in risk assessment and management of complex systems like that found on the Deepwater Horizon;

      j.   requiring simultaneous operations in an effort to expedite the project, making it difficult for workers to track fluid volumes in the wellbore; and,

56.     All of the foregoing acts and/or omissions by BP proximately caused and/or contributed to Plaintiff's economic damages.

57.     In addition to the negligent actions described herein, and in the alternative thereto, the damages suffered by Plaintiff was caused by the acts and/or omissions of Defendants that are beyond proof by the Plaintiff, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the Deepwater Horizon Incident resulted from the negligence of Defendants.  The Deepwater Horizon Incident would not have occurred had the Defendants satisfied the duty of care imposed on them and Plaintiff, therefore, plead the doctrine of *res ipsa loquitur*.

58.     In addition to the foregoing acts of negligence, Plaintiff aver that the Deepwater Horizon Incident was caused by the joint, several, and solidary negligence and fault of Defendants in the following non-exclusive particulars:

      a.   Failing to properly operate the Deepwater Horizon;

      b.   Operating the Deepwater Horizon in such a manner that a fire and explosions occurred onboard, causing it to sink and resulting in the Oil Spill;

      c.   Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

      d.   Acting in a careless and negligent manner without due regard for the safety of others;

      e.   Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had

been so promulgated, implemented and enforced, would have averted the blowout, explosions, fire, sinking, and Oil Spill;

f.   Operating the Deepwater Horizon with untrained and unlicensed personnel;

g.   Negligently hiring, retaining and/or training personnel;

h.   Failing to take appropriate action to avoid or mitigate the accident;

i.   Negligently implementing or failing to implement policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

j.   Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

k.   Failing to warn in a timely manner;

l.   Failing to timely bring the oil release under control;

m.   Failing to provide appropriate accident prevention equipment;

n.   Failing to observe and read gauges that would have indicated excessive pressures in the well;

o.   Failing to react to danger signs; and

p.   Such other acts of negligence and omissions as will be shown at the trial of this matter; all of which acts are in violation of the general maritime law.

59.      Plaintiff isentitled to a judgment finding Defendants liable, jointly, severally, and solidarily, to Plaintiff for economic damages suffered as a result of Defendants' negligence and awarding Plaintiff adequate compensation therefor in amounts determined by the trier of fact.

60.      The injuries to Plaintiff were also caused by and/or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

61.     As a direct and proximate result of Defendants' negligence, Plaintiff suffered a loss of income, loss of the use of the Gulf of Mexico and  its  coastline  for commercial and tourism purposes, and damages associated and inconvenience sustained by the closure of the Gulf water areas, harbors, marinas, boat launches and waterways, including loss of their livelihood which directly depends upon the environmental health of the Gulf of Mexico.

62.     As a direct and proximate result of the Defendants' negligence, Plaintiff has Subsistence Damage claims and suffered economic and cultural damages due to the inability to use the natural resources of the Gulf of Mexico for their income and personal and family subsistence.

B. Gross Negligence and Willful Misconduct

63.     Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully restated here, in this claim for relief for gross negligence and willful misconduct under federal common law.

64.     Defendants owed and breached duties of ordinary and reasonable care to Plaintiff in connection with the maintenance of, and drilling operation on, the Deepwater Horizon, and additionally owed and breached duties to Plaintiff i to guard against and/or prevent the risk of the Oil Spill.  The existence and breach of these legal duties are established under the general maritime law and state law as deemed applicable herein.

65.     Defendants breached their legal duty to Plaintiff and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the negligent manufacture, maintenance, and/or operation of the Deepwater Horizon.

66.     Defendants knew or should have known that their wanton, willful, and reckless misconduct would result in a disastrous blowout and oil spill, causing damage to those affected by the Deepwater Horizon Incident.

67.     Defendants acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiff by, inter alia, failing to use a sufficient number of "centralizers" to prevent channeling during the cement process; failing to run a bottoms up circulation of the drilling mud prior to beginning the cement job; disregarding proper drilling, casing, mudding, and cementing procedures; failing to ensure that that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects an uncontrolled oil spill into the waters of the Gulf of Mexico.

68.     Defendants acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment by using an inappropriate cement mixture for the well; failing to appropriately test that cement mixture prior to using it in the well; failing to run a cement bond log to evaluate the integrity of the cement job; and failing to deploy the casing hanger lockdown sleeve prior to commencing the mud displacement process in the well.

69.     Defendants acted with gross negligence, willful misconduct and reckless disregard for human life and the safety and health of the environment by, inter alia, using an untested, abnormally large volume of mixed spacer solutions to avoid having to properly dispose of the two separate spacer substances as hazardous wastes.

70.     Defendants acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment byrecklessly

maintaining and altering, and/or wantonly operating and/or using the BOP appurtenant to the Deepwater Horizon.

    C. <u>The Oil Pollution Act</u>

71.    Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully restated here. Plaintiff have made "presentment" of their claims and have not been compensated by anyone. Said presentments were reurged in January of 2013 to the BP claims office in Houston, Texas.

72.    The Oil Pollution Act, 33 U.S.C. §2701, et seq. (the "OPA"), imposes liability upon a "responsible party for a … vessel or a facility from which oil is discharged … into or upon navigable waters or adjoining shorelines" for the damages that result from such incident as well as removal costs. 33 U.S.C. § 2702.

73.    The Coast Guard has named BP as the responsible party for the release of oil; thus, BP is strictly liable pursuant to §2702 of the OPA for all the damages resulting from the Deepwater Horizon Incident.

74.    As a result of the disaster and Defendants' gross negligence or willful misconduct with respect to the acts and omissions alleged herein, all responsible parties have caused and are liable for the following past, present and future expenses and damages Plaintiff suffered, which damages are the type of damages that may be recovered pursuant to the Oil Pollution Act.

75.    Further, Plaintiff has not been compensated for their losses, nor will they as Mexican law does not allow these claims as stated above as it is not the proper forum.

76.    In addition, Plaintiff shows that there are a number of treaties between the United States and Mexico that protect the citizens of both countries. See, for example, Code of Federal Civil Proceedings (Codigo Federal de Procedimientos Civiles) and International Covenant on

Civil and Political Rights. Under both of these treaties, Mexico has equal treaty rights with the United States on behalf of its citizens.

77.     Plaintiff also alleges violations of the Alien Tort Claims Act (ATCA) in that these Defendants have destroyed basic human rights by depriving the Plaintiff of survival (subsistence) and the freedom and right to make a living on the water as part of their lifelong profession. These violations violate the law of nations and equate to human rights violations if they are not allowed to participate in a remedy for these damages and the abuse they have suffered which damages are identical to the United States' citizens.

78.   Plaintiff shows that the North American Agreement on Environmental Cooperation expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations. See Article 6 of the Agreement. This Agreement automatically came into effect after entry into force of NAFTA. Some of the primary objectives of the agreement include the following: (1) foster the protection and improvement of the environment in the territories of the Parties for the well-being of present and future generations; (2) enhance compliance with, and enforcement of, environmental laws and regulations; and (3) promote transparency and public participation in the development of environmental laws, regulations and policies; and (4) promote pollution prevention policies and practices. Article 6 purports to give private access the other government's remedies. The Agreement/Treaty states as follows:

> Each Party shall ensure that persons with a legally recognized interest under its law in a particular matter have appropriate access to administrative, quasi-judicial or judicial proceedings for the enforcement of the Party's environmental laws and regulations.
>
> Private access to remedies shall include rights, in accordance with the Party's law, such as:
>
> a. To sue another person under that Party's jurisdiction for damages;

b. To seek sanctions or remedies such as monetary penalties, emergency closures or orders to mitigate the consequences of violations of its environmental laws and regulations;

c. To request the competent authorities to take appropriate action to enforce that Party's environmental laws and regulations in order to protect the environment or to avoid environmental harm; or

d. To seek injunctions where a person suffers, or may suffer, loss, damage or injury as a result of conduct by another person under that Party's jurisdiction contrary to that Party's environmental laws and regulations or from tortious conduct.

79.     Further, §2707(b) allows a foreign claimant to make a claim for damages resulting from a discharge or substantial threat of a discharge of oil in or on the territorial sea, internal waters, or adjacent shorelines of a foreign country if the discharge is from: (1) an outer continental shelf facility (as is here) or a deepwater port (as is here); or (2) a vessel in navigable water (as is here).

80.     Plaintiff demands compensation from Defendants in amounts to be determined by the trier of fact, said amounts to include:

a. Damages for injury to, or economic losses and damage resulting from destruction of sea life the Plaintiff relies on to make their living and their subsistence.

b. Damages equal to the loss of profits/earnings, or impairment of earning capacity, due to the injury, destruction, or loss of natural resources for which these Plaintiff relies.

c. Loss of subsistence.

81.     Defendants are not entitled to limit their liability under Section 2704(a) of the OPA because the Deepwater Horizon Incident was proximately caused by their gross negligence, willful misconduct, or violation of applicable safety, construction or operating regulations. 33 U.S.C. § 2704(c).

82.     Moreover, in its "Statement of BPXP & Production Inc. Re Applicability of Limitation of Liability Under Oil Pollution Act of 1990," filed on October 19, 2010, BP waived the statutory limitation on liability under the OPA.

83.     As a result of the Deepwater Horizon Incident, Plaintiff has not been able to use natural resources (air and water, and potentially wetlands and other areas and spaces that have and/or may become contaminated by the spilled oil), and they are entitled to recover from Defendants for such damages in amounts to be determined by the trier of fact, in addition to the damages as set forth below.

84.     As a result of the Deepwater Horizon Incident, Plaintiff is entitled to damages pursuant to Section 2702(b)(2)(B), which provides for recovery of damages to real or personal property, including "[D]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property, including the diminution in the value of their property."

85.     As a result of the Deepwater Horizon Incident, Plaintiff is entitled to damages pursuant to Section 2702(b)(2)(C), which provides for recovery for "[D]amages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."

86.     As a result of the Deepwater Horizon Incident, Plaintiff is entitled to damages pursuant to Section 2702(b)(2)(E), which provides for "[D]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

87. To the extent required by law, and/or by consent or stipulation by BP, Plaintiff satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b), as to each and all defendants, by the submission of their claims to the Gulf Coast Claims Facility (the "GCCF") and/or BP and/or its agents or designees.

88. In its "Statement Of BP Exploration & Production Inc. Re Applicability Of Limitation Of Liability Under Oil Pollution Act of 1990" filed on October 19, 2010, BP waived the statutory limitation on liability under the OPA.

89. Plaintiff also alleges violations of the Alien Tort Claims Act (ATCA) in that these Defendants have destroyed basic human rights by depriving this Plaintiff of survival (subsistence) and the freedom and right to make a living on the water as part of their lifelong profession. These violations violate the law of nations and equate to human rights violations if they are not allowed to participate in a remedy for these damages and the abuse they have suffered which damages are identical to the United States' citizens.

90. Plaintiff further shows that pursuant to Article 6 of the North American Agreement on Environmental Cooperation, Mexican citizens have the ability to sue for their damages and losses.

D. Punitive Damages under All Claims

91. Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully restated here, and assert, in additional support of its claim for punitive damages under federal, statutory, maritime, and federal common law.

92. Defendants engaged in conduct so reckless, willful, wanton and in such utter and flagrant disregard for the safety and health of the public and the environment in their activities leading up to and/or during the Deepwater Horizon Incident, as alleged herein, that an

award of punitive damages against them at the highest possible level is warranted and necessary to impose effective and optimal punishment and deterrence. Plaintiff, society and the environment cannot afford and should never be exposed to the risks of another disaster of the magnitude caused by Defendants' misconduct herein. Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the Deepwater Horizon by performing a critical well pressure test with untrained and unqualified personnel and by callously ignoring and/or misinterpreting abnormal "red flag" pressure test results.

93.     Defendants' corporate culture caused and allowed them to disregard the lessons they should have learned and applied from previous incidents at their facilities that resulted in extensive damage and loss of live; instead, Defendants continued to place others at risk in the interests of cost-cutting and financial gain.

94.     Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the Deepwater Horizon by using a well design with too few barriers to gas flow.

95.     Defendants' conduct was oppressive, wanton, malicious, reckless, or grossly negligent each time they"

    a.  failed to properly maintain and/or operate the Deepwater Horizon;

    b.  operated the Deepwater Horizon in such a manner the safety and integrity of the vessel and the well were disregarded to save time and money;

    c.  ignored warnings that the integrity of the well, the cementing job, and the vessel were in jeopardy;

    d.  failed to promulgate, implement, and enforce proper rules and regulations to ensure the safe operations of the Deepwater Horizon;

    e.   violated MMS regulations for the safe design and operation of oil wells and drilling rigs in the Gulf of Mexico;

    f.   failed to take appropriate action to avoid or mitigate the accident;

    g.   failed to implement policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

    h.   failed to ensure that the Deepwater Horizon and its equipment were free from defects, properly maintained and/or in proper working order;

    i.   failed to provide appropriate disaster prevention equipment;

    j.   failed to have an appropriate emergency spill response plan or readily available spill response equipment.

96.      Accordingly, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

97.      WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, and solidarily, as follows:

    a.   economic and compensatory damages in amounts to be determined at trial;

    b.   punitive damages;

    c.   pre-judgment and post-judgment interest at the maximum rate allowable by law;

    d.   costs of litigation;

    e.   declaratory and injunctive relief;

    f.   such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

Respectfully submitted,

## THE BUZBEE LAW FIRM

By:    */S/ Anthony G. Buzbee*
          Anthony G. Buzbee
          Attorney in Charge
          State Bar No. 24001820
          S.D. Tex. I.D. No. 22679
          Caroline E. Adams
          State Bar No. 24011198
          S.D. Tex. I.D. No. 27655
          J.P. Morgan Chase Tower
          600 Travis, Suite 7300
          Houston, Texas 77002
          Telephone: (713) 223-5393
          Facsimile: (713) 223-5909
          www.txattorneys.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing Plaintiff's Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 and 60, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on May 6, 2016.

          /s/ Caroline Adams
          **CAROLINE E. ADAMS**



APRIL 18, 2014

THE BUZBEE LAW FIRM
600 TRAVIS ST STE 7300
HOUSTON, TX 77002-3004

Re:     *Claim Determination Notification*
          Claim Number: 1002547-01

Dear ANTHONY BUZBEE:

The BP Claims Program has evaluated the above-referenced claim submitted on behalf of THE BOULEVARD GROUP, LLC in relation to the Deepwater Horizon incident on April 20, 2010 and subsequent oil spill.  We previously requested information necessary to process your claim, and further corresponded with you that the claim would be considered inactive until we received the information. We still have not received the requested information.  Therefore, your claim is denied.[1]

You may have a right to file a claim with the National Pollution Funds Center ("NPFC").  For more information, please visit the NPFC's Oil Spill Claims website at www.uscg.mil/npfc/Claims or call the NPFC toll-free at 1-800-280-7118.

Sincerely,

BP Claims Program

---

[1] This letter does not constitute a finding that the presentment requirements of the Oil Pollution Act have been satisfied.

EXHIBIT

A-3

In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010

Case 2:10-md-02179-CJB-DPC   Document 20526-1   Filed 06/28/16   Page 39 of 50
Case 2:16-cv-06279   Document 1   Filed 05/16/16   Page 1 of 2

## SWORN STATEMENT FOR DISCLOSURES REGARDING REMAINING
NON-GOVERNMENTAL ECONOMIC LOSS AND PROPERTY DAMAGE CLAIMS (B1 CLAIMS)

| Last Name<br>The Boulevard Group, LLC | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Phone Number<br>228-365-4647 | | E-Mail Address<br>jd30097@gmail.com | |
| Current Mailing Address<br>11340 Medlock Bridge Road #212 | | City / State / Zip<br>Duluth, GA 30097 | |
| Attorney Name and Firm<br>Anthony G. Buzbee<br>The Buzbee Law Firm | | Attorney E-Mail Address<br>cadams@txattorneys.com | |

Any prior Mailing Address used by Plaintiff from April 2010 to present?

8700 Front Beach Rd unit 3309 Panama City Beach, Florida 32407 + POB 18469, PCB, FL 32417

Any prior name used by Plaintiff from April 2010 to present?



The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff:

27-0328531

Please indicate your status:

☐ Properly opted out of the Economic and Property Damages Settlement*

☒ Not a member of the Economic and Property Damages Settlement Class

☐ Member of the Economic and Property Damages Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A

**You are pursuing a claim against at least one B1 Defendant by way of (*select all that apply*):**

☐   Joinder in the Amended B1 Master Complaint (Rec. Doc. 1128)*

☐   Individual Action, (including a new action filed because plaintiff previously only had short form joinder on file),  Eastern District of Louisiana Case No. _____.

☒   Individual Action filed because plaintiff previously was part of mass-joinder Complaint; list both prior  Eastern District of Louisiana Case No. **13-cv-2791**_____and new Individual Action Case No. **To be determined**_____

☐   Other:_____

  * A copy of your timely Short Form Joinder(s) (and any Plaintiff Profile Form(s)) must be included with your service of this Exhibit A.

**Presentment:**

Did you, the plaintiff seeking relief, present this claim at least 90 days prior to filing a lawsuit or joining the B1 Complaint?

         Yes **X**_____.    No _____.

If Yes, please identify:

1.  The program to which presentment was made by the plaintiff: **BP Houston Claims office and/or Gulf Coast Claims Facility.**_____.

2.  The date of presentment (MM/DD/YYYY):  **12/31/2012**_____.

3.  The claim number(s) (if available). **1002547-01 /**_____.

4.  Did you execute a release of your claims upon receiving payment through any claims program:

         Yes _____.    No **X**_____.

*If you need more space to detail your response, please attach additional pages if necessary. Make sure to indicate the question you are continuing to answer.*
_____

_____

_____

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: 04/11/16 , 2016

Location (City and State): Duluth, Georgia

The Boulevard Group, LLC - By its Manager
Signature of Plaintiff (*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf*)

The Boulevard Group, LLC By: James M. Quale, Manager
Print Name

The service of this sworn statement and supporting information pursuant to this Order must be on both Counsel for BP and the PSC on or before May 2, 2016. Service can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steve Herman or Jim Roy |
| Kirkland & Ellis LLP | The Exchange Centre, Suite 2000 |
| 300 North LaSalle St, | 935 Gravier Street |
| Suite 2400 | New Orleans, LA 70112 |
| Chicago IL 60654 | |

Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon Plaintiffs' Steering Committee and Counsel for BP via File & ServeXpress ("F&S").

## EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
Civil Action No. 10-MD-2179-CJB-SS

**SWORN STATEMENT** FOR DISCLOSURES REGARDING REMAINING
NON-GOVERNMENTAL ECONOMIC LOSS AND PROPERTY DAMAGE CLAIMS (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Garcia | Juan | | |

| Phone Number | E-Mail Address |
|---|---|
| 868-812-2582 | |

| Current Mailing Address | City / State / Zip |
|---|---|
| 11 Rio Conchos #507, Col San Francisco | Matamoros, Tamps 87350 |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| Anthony G. Buzbee<br>The Buzbee Law Firm | cadams@txattorneys.com |

Any prior Mailing Address used by Plaintiff from April 2010 to present?

Any prior name used by Plaintiff from April 2010 to present?

The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff:

Please indicate your status:

☐ Properly opted out of the Economic and Property Damages Settlement*

☒ Not a member of the Economic and Property Damages Settlement Class

☐ Member of the Economic and Property Damages Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A

3

**EXHIBIT**

**A-4**

**You are pursuing a claim against at least one B1 Defendant by way of (*select all that apply*):**

☐　Joinder in the Amended B1 Master Complaint (Rec. Doc. 1128)*

☐　Individual Action, (including a new action filed because plaintiff previously only had short form joinder on file),  Eastern District of Louisiana Case No. _____.

☒　Individual Action filed because plaintiff previously was part of mass-joinder Complaint; list both prior  Eastern District of Louisiana Case No. **13-cv-2791**_____and new Individual Action Case No. **To be determined**_____

☐　Other:_____

 * A copy of your timely Short Form Joinder(s) (and any Plaintiff Profile Form(s)) must be included with your service of this Exhibit A.

**Presentment:**

Did you, the plaintiff seeking relief, present this claim at least 90 days prior to filing a lawsuit or joining the B1 Complaint?

　　　　　Yes **X**_____.　　No _____.

If Yes, please identify:

1.  The program to which presentment was made by the plaintiff: **BP Houston Claims office and/or  Gulf Coast Claims Facility.**_____.

2.  The date of presentment (MM/DD/YYYY):  **1/18/2013**_____.

3.  The claim number(s) (if available).  **/**_____.

4.  Did you execute a release of your claims upon receiving payment through any claims program:

　　　　　Yes _____.　　No **X**_____.

*If you need more space to detail your response, please attach additional pages if necessary. Make sure to indicate the question you are continuing to answer.*
_____

_____

_____

2

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: Abril 8 , 2016

Location (City and State): _____

14 y Rio Conchos #501 H. matamoros tam
Signature of Plaintiff (*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf*)

Juan manuel Garcia Lozano
Print Name

The service of this sworn statement and supporting information pursuant to this Order must be on both Counsel for BP and the PSC on or before May 2, 2016. Service can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steve Herman or Jim Roy |
| Kirkland & Ellis LLP | The Exchange Centre, Suite 2000 |
| 300 North LaSalle St, | 935 Gravier Street |
| Suite 2400 | New Orleans, LA 70112 |
| Chicago IL 60654 | |

Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon Plaintiffs' Steering Committee and Counsel for BP via File & ServeXpress ("F&S").

## EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
Civil Action No. 10-MD-2179-CJB-SS

**SWORN STATEMENT** FOR DISCLOSURES REGARDING REMAINING
NON-GOVERNMENTAL ECONOMIC LOSS AND PROPERTY DAMAGE CLAIMS  (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| **Gonzalez** | **Jose** | | |

| Phone Number | E-Mail Address |
|---|---|
| **011 52 (232)3 21 10 77** | **rosayeyr@hotmail.com** |

| Current Mailing Address | City / State / Zip |
|---|---|
| **Carretera Gutierez Zamora-Nautla, Poza Rica s/n** | **Casitas Tecolutla, VER** |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| **Anthony G. Buzbee**<br>**The Buzbee Law Firm** | **cadams@txattorneys.com** |

Any prior Mailing Address used by Plaintiff from April 2010 to present?

Any prior name used by Plaintiff from April 2010 to present?

The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff:

Please indicate your status:

☐  Properly opted out of the Economic and Property Damages Settlement*

☒  Not a member of the Economic and Property Damages Settlement Class

☐  Member of the Economic and Property Damages Settlement Class

☐   Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A

**EXHIBIT**

**A-5**

3

**You are pursuing a claim against at least one B1 Defendant by way of (*select all that apply*):**

☐    Joinder in the Amended B1 Master Complaint (Rec. Doc. 1128)*

☐    Individual Action, (including a new action filed because plaintiff previously only had short form joinder on file),  Eastern District of Louisiana Case No. _____.

☒    Individual Action filed because plaintiff previously was part of mass-joinder Complaint; list both prior   Eastern District of Louisiana Case No. **13-cv-2791**_____and new Individual Action Case No. **To be determined**_____

☐    Other:_____

 * A copy of your timely Short Form Joinder(s) (and any Plaintiff Profile Form(s)) must be included with your service of this Exhibit A.

**Presentment:**

Did you, the plaintiff seeking relief, present this claim at least 90 days prior to filing a lawsuit or joining the B1 Complaint?

              Yes **X**_____.     No _____.

If Yes, please identify:

1.  The program to which presentment was made by the plaintiff: **BP Houston Claims office and/or Gulf Coast Claims Facility.**_____.

2.  The date of presentment (MM/DD/YYYY):  **1/18/2013**_____.

3.  The claim number(s) (if available). **1093795-01 / 1641034**_____.

4.  Did you execute a release of your claims upon receiving payment through any claims program:

              Yes _____.     No **X**_____.

*If you need more space to detail your response, please attach additional pages if necessary. Make sure to indicate the question you are continuing to answer.*
_____

_____

_____

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: _13- ABRIL_ , 2016

Location (City and State): _CASITAS, TECOLUTIA , VERACRUZ._


Signature of Plaintiff (*Plaintiff's Attorney __Cannot__ Sign on Plaintiff's Behalf*)


JOSE FELIPE GONZALEZ JACINTO
Print Name


The service of this sworn statement and supporting information pursuant to this Order must be on both Counsel for BP and the PSC on or before May 2, 2016. Service can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steve Herman or Jim Roy |
| Kirkland & Ellis LLP | The Exchange Centre, Suite 2000 |
| 300 North LaSalle St, | 935 Gravier Street |
| Suite 2400 | New Orleans, LA 70112 |
| Chicago IL 60654 | |


Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon Plaintiffs' Steering Committee and Counsel for BP via File & ServeXpress ("F&S").

3

## EXHIBIT A

| In re: Oil Spill by the Oil Rig *"Deepwater Horizon"* in the Gulf of Mexico, on April 20, 2010 |
|---|

Civil Action No. 10-MD-2179-CJB-SS

**SWORN STATEMENT** FOR DISCLOSURES REGARDING REMAINING
NON-GOVERNMENTAL ECONOMIC LOSS AND PROPERTY DAMAGE CLAIMS  (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Islas | Silvia | | |

| Phone Number | E-Mail Address |
|---|---|
| **011 52 (232)3 21 10 26** | **rosayeyr@hotmail.com** |

| Current Mailing Address | City / State / Zip |
|---|---|
| **Carretera Gutierez Zamora-Nautla, Poza Rica s/n** | **Casitas Tecolutla, VER** |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| **Anthony G. Buzbee**<br>**The Buzbee Law Firm** | **cadams@txattorneys.com** |

Any prior Mailing Address used by Plaintiff from April 2010 to present?

Any prior name used by Plaintiff from April 2010 to present?

The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff:

Please indicate your status:

☐  Properly opted out of the Economic and Property Damages Settlement*

☒  Not a member of the Economic and Property Damages Settlement Class

☐  Member of the Economic and Property Damages Settlement Class

☐   Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A

**EXHIBIT**

**A-6**

**You are pursuing a claim against at least one B1 Defendant by way of (***select all that apply***):**

☐    Joinder in the Amended B1 Master Complaint (Rec. Doc. 1128)*

☐    Individual Action, (including a new action filed because plaintiff previously only had short form joinder on file),  Eastern District of Louisiana Case No. _____.

☒    Individual Action filed because plaintiff previously was part of mass-joinder Complaint; list both prior   Eastern District of Louisiana Case No. **13-cv-2791**_____and new Individual Action Case No. **To be determined**_____

☐    Other:_____

 * A copy of your timely Short Form Joinder(s) (and any Plaintiff Profile Form(s)) must be included with your service of this Exhibit A.

**Presentment:**

Did you, the plaintiff seeking relief, present this claim at least 90 days prior to filing a lawsuit or joining the B1 Complaint?

            Yes **X**_____.    No _____.

If Yes, please identify:

1.  The program to which presentment was made by the plaintiff: **BP Houston Claims office and/or Gulf Coast Claims Facility.**_____.

2.  The date of presentment (MM/DD/YYYY): **1/18/2013**_____.

3.  The claim number(s) (if available). **1093797-01 / 1641035**_____.

4.  Did you execute a release of your claims upon receiving payment through any claims program:

            Yes _____.    No **X**_____.

*If you need more space to detail your response, please attach additional pages if necessary. Make sure to indicate the question you are continuing to answer.*
_____

_____

_____

2

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: _13 ABRIL_, 2016

Location (City and State): _CARITAS, TECOLUTLA, VERACRUZ_

_Velacruz.    Silvia Islas G._
Signature of Plaintiff (*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf*)

_SILVIA ISIAS GARCIA._
Print Name

The service of this sworn statement and supporting information pursuant to this Order must be on both Counsel for BP and the PSC on or before **May 2, 2016**. Service can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steve Herman or Jim Roy |
| Kirkland & Ellis LLP | The Exchange Centre, Suite 2000 |
| 300 North LaSalle St, | 935 Gravier Street |
| Suite 2400 | New Orleans, LA 70112 |
| Chicago IL 60654 | |

Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon Plaintiffs' Steering Committee and Counsel for BP via File & ServeXpress ("F&S").

3