# STATE OF LOUISIANA *DEEPWATER HORIZON* OUTSIDE COUNSEL RATES

David Hammer, "Attorney General Called Out for Giving Contracts to Top Campaign Donors" WWL TV (May 20, 2013)

(originally posted at: http://www.wwltv.com/news/eyewitness/davidhammer/Attorney---General---called---out---208249341.html)

(available at: http://coalitionforcommonsense.com/images/legislation/wwl5-20.pdf) (last visited: June 4, 2016)

Kyle Barnett, "Political Contributors Reap Lucrative Legal Contracts in BP Litigation; Biggest Contractor, Caught Napping in Court, Has Reaped $12M" *Louisiana Record* (April 23, 2015)

http://louisianarecord.com/...ibutors-reap-lucrative-legal-contracts-in-bp-litigation-biggest-contractor-caught-napping-in-court-has-reaped-12m

**Attorney General called out for giving contracts to top campaign donors**

WWL-TV
May 20, 2013

**David Hammer / Eyewitness News**
**Email: dhammer@wwltv.com | Twitter: @davidhammerWWL**
http://www.wwltv.com/news/eyewitness/davidhammer/Attorney-General-called-out-208249341.html

Louisiana Attorney General Buddy Caldwell is using illegal, contingency-fee contracts to hire his top supporters to represent the state in its biggest tort cases, lawsuit watchdogs allege.

And even when Caldwell hires outside lawyers on an hourly basis, there are questions about whether the state is getting its money's worth.

Louisiana Lawsuit Abuse Watch and the national American Tort Reform Association are calling out Caldwell for giving hourly contracts worth upwards of $27 million to some of his top campaign contributors.

"The attorney general is contracting out much of the state's legal business to a small group of politically connected trial lawyers," said Melissa Landry, executive director of Lawsuit Abuse Watch.

"Many of those individuals are campaign contributors."

Allen Usry, Caldwell's campaign chief, has 11 contracts to represent the attorney general's office. Usry, his family and other attorneys at Usry, Weeks & Matthews combined to give Caldwell's campaign more than $100,000.

Another contract recipient is Wade Shows, who served as Caldwell's campaign treasurer.

The conservative blog site TheHayride.com used a public records request to gather all of the attorney general's outside legal contracts, and Landry found that 13 firms that received much of the lucrative contract work had given a combined $277,000 to Caldwell's campaigns.

When we confronted Caldwell with the numbers, the attorney general said: "OK. But that's 13 out of 700 or 800 lawyers" that he's hired as outside counsel.

And when we asked him why he doesn't open the contracting process to a public review process, as is done with most professional services for government agencies, he said he needs to have a special level of trust with the lawyers he brings in.

"I just gotta do things my way," he said. "I'm from a small town and you gotta know people, and you know if you've had contact with them if they've got a certain skill set."

That's precisely the problem, says Tiger Joyce, president of the American Tort Reform Association.

"To say there are only a handful of people I know and trust, that's an unacceptable answer," Joyce said. "And any reform would begin with the notion of public bidding for those services."

**Contingency fees?**
The watchdogs are also questioning the legality of contracts of open-ended value that pay outside lawyers based on a negotiated fee or a percentage of whatever the state collects once the case is adjudicated or a settlement is reached.

These critics and constitutional scholars point to a 1997 state Supreme Court decision that found contingency-fee contracts unconstitutional if they pay lawyers from a portion of the state's award without legislative approval.

"Rather than paying them a reasonable hourly fee based on their work, he's promising them a large percentage of the state's award," Landry said after finding payments to contract attorneys that amount to 20 percent of the total settlement. Caldwell says the critics have it all wrong. The contracts that pay attorneys only if they win the case are not contingency-fee contracts, he said, because the outside law firms get paid above and beyond anything the state recovers. The outside attorneys are left to negotiate their own fees with the defendants or the judge after the state gets paid, Caldwell said.

And Caldwell says that kind of contract saves the state a considerable amount of money and also gives it more leverage in litigation. He said the outside law firms take on all of the risk, all of the costs of depositions and discovery, so Louisiana isn't cowed anymore by concerns over whether it can afford those upfront litigation costs.

"That's why they've been ripping us off," Caldwell said of big drug companies that the state is now pursuing in court. "… because the state couldn't afford the cost for the litigation. And that's what I've given them. I brought this to the attention, I got the outside firms to spend the money, take all the hit for the costs. So if they lose, they gotta pay all the costs and the state is out nothing."

He says he's found a way to "work around" the 1997 Supreme Court decision. He said that on major Medicaid fraud cases, he can use a state law called the MAPIL Statute that explicitly directs violators to pay all court costs and attorneys' fees.

But Dane Ciolino, a constitutional law professor at Loyola University, says regardless of the MAPIL Statute, it violates the state Ethics Code to have private defendants paying lawyers for their public work.

"They're trying to make it work despite the significant limitations imposed by the Ethics Laws and by the Louisiana Constitution," Ciolino said.

Caldwell's position that these are not "contingency fee" contracts appears to be contradicted by the state's own Office of Contractual Review, which specifically noted on the approval of one deal that it was a "conting fee."

**Hourly rates questioned too**
After the 2010 BP oil spill, Caldwell wasn't shy about asking the Legislature to give him the power to hire outside attorneys on a contingency-fee basis. Only Louisiana and Wisconsin explicitly forbid the practice without legislative approval. But the Louisiana Legislature twice voted against allowing Caldwell to hire outside counsel on contingency.

So, in the case of the BP trial and others, Caldwell was forced to hire outside attorneys on an hourly basis. And here is where he's come under fire again. He's paid about $15 million so far to a team of lawyers to represent the state's claims against BP, and the bulk of those claims haven't even been heard yet.

Caldwell argues the state is lucky to have the lead attorney on the case, Allan Kanner of New Orleans, at a rate of $600 an hour, because he is a leading light in the field of environmental law and has the expertise to go up against BP defense lawyers making about $1,200 an hour.

"I am really lucky," Caldwell said. "Allan Kanner is one of the best, if not the very best oil and gas, environmental attorney on the North American continent, and he is respected as such. And when you can get someone like that for $600 an hour, Jesus. We're doing really, really good to have him available."

But Kanner has found himself crosswise with the federal judge presiding over the BP case.

U.S. District Judge Carl Barbier has battled with Caldwell's office over how the Gulf states should be represented at trial. Louisiana wanted a separate trial for government claims, but Barbier combined government and private claims and directed the states to pay 4 percent of their awards to the team of private attorneys driving the litigation.

Caldwell fought to exempt Louisiana from the order and kept Kanner's team in place. At one point, Barbier wrote that Louisiana "has obstructed and frustrated the

legal process." Caldwell said that was "legal speak" from Barbier and he doesn't pay attention to it.

Instead, Caldwell says his decision to pay hourly rates to outside lawyers rather than paying the private plaintiffs steering committee 4 percent of Louisiana's take will bring tens of millions more into state coffers. One analysis showed that rather than the $25 million Caldwell's office has spent to date on litigation, the 4-percent bill would already exceed $100 million, even though the bulk of the state's share of fines and penalties still hasn't been determined.

**Sleeping on the clock?**
The contentiousness seemed to ramp up with the start of the trial this spring, when Caldwell made his only courtroom appearance and questioned why BP's financial partner in the blown out well, Anadarko, had not been mentioned. Barbier interrupted Caldwell mid-sentence to tell him that Anadarko had been dismissed from the case.

And the bitterness came to a head last month when Barbier interrupted testimony to accuse Kanner of falling asleep at the plaintiffs' table.

"Wait one second. Would somebody tap Mr. Kanner and wake him up? Mr. Kanner, are you awake?" Barbier said.

"Yes, your honor," Kanner responded.

"Did you get enough sleep last night?" Barbier continued. "If you need to get up and walk out and get some air, you can do it, but we need to keep you awake, OK?"

We asked Caldwell what he thought of Kanner allegedly sleeping on the job, and the attorney general said he "should be sleeping" because the state shouldn't have had to participate in that part of the trial anyway.

Then, he took another swipe at the judge.

"I'm not concerned at all because (Kanner) couldn't have been sleeping more than 30 seconds and the judge is sleeping part of that time, too," Caldwell said defiantly.

The plaintiffs steering committee came to Judge Barbier's defense Tuesday.

"It is evident to any objective observer that Judge Barbier has shepherded this litigation forward with the utmost integrity and competence," said co-lead plaintiffs' attorneys Steve Herman and Jim Roy. "Any statement to the contrary is simply not true.

"For nearly three years -– and throughout every minute of this spring's trial -- we, along with dozens of other lawyers involved in this case, have observed first-hand Judge Barbier's exemplary diligence, thoroughness and engagement."

Louisiana AG political contributors reap lucrative legal contracts in BP litigation; Biggest contractor, caught napping in court, has reaped $12M | Louisiana Record

Case 2:10-md-02179-CJB-DPC   Document 21024-19   Filed 07/15/16   Page 7 of 10



News   About   Contact   Arguments

# political contributors reap lucrative legal contracts in BP litigation; Biggest contractor, caught napping in court, has reaped $12M

Kyle Barnett Apr. 23, 2015, 5:10pm

NEW ORLEANS – Political contributors to Louisiana Attorney General Buddy Caldwell have billed taxpayers more than $13.2 million in legal fees, representing the

Louisiana AG political contributors reap lucrative legal contracts in BP litigation; Biggest contractor, caught napping in court, has reaped $12M | Louisiana Record

Case 2:10-md-02179-CJB-DPC   Document 21024-19   Filed 07/15/16   Page 8 of 10

state in Deepwater Horizon litigation that has not gone to trial yet.

Five years after the oil spill, several private attorneys are racking up fees under no-bid contracts that pay up to $600 per hour. The contracts and invoices, obtained from a public records request by the legal watchdog group Louisiana Lawsuit Abuse Watch, reveal political contributors to Caldwell are receiving the bulk of the work.

The records show 11 private law firms have billed for work under state contracts. Of the 11 firms, eight have made political donations to Caldwell, according to state campaign finance records.

"Despite recent reforms aimed at improving transparency and accountability in the Attorney General's Office, it appears that the gravy train of contracts for politically connected trial lawyers continues to roll down the tracks in Louisiana," Melissa Landry, executive director of Louisiana Lawsuit Abuse Watch, said.

According to state records, the beneficiaries of the no-bid contracts are law firms whose principals held official positions with Caldwell's campaign organization.

This group includes T. Allen Usry, of New Orleans-based Usry, Weeks & Matthews, who served as campaign manager for Caldwell in the 2011 race. Records show his firm has billed more than $7 million in legal fees associated with the Deepwater Horizon case.

Another lawyer, E. Wade Shows, of Baton Rouge-based Shows, Cali & Walsh, was Caldwell's campaign manager in 2011. The Shows firm has billed $656,000 for work associated with Deepwater Horizon legal work on behalf of the state.

Neither Usury or Shows responded to a request for comment.

Louisiana AG political contributors reap lucrative legal contracts in BP litigation; Biggest contractor, caught napping in court, has reaped $12M | Louisiana Record

Case 2:10-md-02179-CJB-DPC   Document 21024-19   Filed 07/15/16   Page 9 of 10

Louisiana campaign finance records show that Usry, Weeks & Matthews employees and their relatives gave $115,000 to Caldwell's campaign.

Employees of Shows, Cali & Walsh gave Caldwell's campaign $15,000, according to campaign finance records.

Political connections with Caldwell also extend to another firm, Henry Dart, Attorneys at Law PLC, of Covington. The firm, a small practice with just two attorneys and a paralegal, billed Louisiana taxpayers $3.2 million for Deepwater Horizon work. Campaign finance records show that Dart employees gave Caldwell $35,000 in political donations.

The Dart firm's invoices show his staff investing an extraordinary amount of time on the Deepwater Horizon case. For example, Dart submitted invoices in February, March and April 2011 claiming more than 400 hours a month of work on the Deepwater Horizon case.

"Did Mr. Dart really work 100 hours a week or 13 hours a day, every day including Saturdays and Sundays for three months straight?" Landry said.

Dart did not respond to a request for comment on how he was able to accrue the number of work hours he billed to the state.

Other notable campaign contributors who were granted state contracts to work on behalf of the Louisiana Attorney General's Office to assist with the Deepwater Horizon litigation include solo practitioner Ceila Cangelosi who received $323,819 and Faircloth, Melton & Keiser – led by trial attorney Jimmy Faircloth who is former executive counsel to Gov. Bobby Jindal – received $1,309,881 in the past three years alone.

Louisiana AG political contributors reap lucrative legal contracts in BP litigation; Biggest contractor, caught napping in court, has reaped $12M | Louisiana Record

Case 2:10-md-02179-CJB-DPC   Document 21024-19   Filed 07/15/16   Page 10 of 10

The biggest recipient of Deepwater Horizon contract dollars was New Orleans-based law firm Kanner & Whiteley, which has brought in $12,117,711 from their Deepwater Horizon contract with the Louisiana Attorney General's Office. While the firm and its partners were not listed as campaign contributors to Caldwell they have faced criticism for the quality of their work in the case.

Lead partner Allan Kanner, who makes the most of any contract attorney working on the case at $600 an hour, was once even called out by U.S. District Judge Carl Barbier, who is overseeing the Deepwater Horizon case, for sleeping in open court.

In contrast to how Caldwell's office has handled the ongoing litigation, the Florida Attorney General's Office has contracted with three outside law firms who will split 2.5 percent of the state's overall award in the matter. However, unlike in Louisiana, these contracts were awarded through an open bidding process.

Alabama Attorney General Luther Strange has publicly said he intends to handle the Deepwater case using primarily in-house counsel. The Alabama case is likely to be the first of the government litigation against BP to actually go to trial, scheduled for next year.

For work in the years leading up to 2013, Strange's office reported spending $200,000 on its in-house legal team. In comparison, Caldwell's office spent $15.4 million on outside legal counsel over the same time period.

In December 2011, Barbier brought up Caldwell's spending on the Deepwater case in open court noting that while Strange saw fit to use staff attorneys in the matter, the Louisiana Attorney General "apparently [had] no qualms about paying substantial legal fees to multiple lawyers."

Caldwell's office declined a request for comment on this story.