STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 20, 2010 | MDL No. 2179 <br><br> SECTION: J |
| This document relates to: <br> ALL CASES | JUDGE BARBIER <br> MAGISTRATE JUDGE SHUSHAN |

## AFFIDAVIT OF PHILIP A. GARRETT, C.P.A.

STATE OF LOUISIANA        :

PARISH OF ORLEANS        :

Philip A. Garrett, being duly sworn according to law deposes and says:

1. This affidavit is being submitted in connection with the Petition for Reimbursement of Expenses and Collective Common Benefit Fee Award, filed pursuant to Pretrial Order No. 59 ("PTO 59").

2. I am a certified public accountant. For over 35 years I was associated with the public accounting firm of Wegman Dazet & Company and I am now associated with the firm of Philip A. Garrett, CPA. A copy of my curriculum vitae summarizing my training and experience in the field of public accounting is attached to this report and affidavit as Exhibit "1."

3. Pretrial Order No. 9 ("PTO 9") [Rec. Doc. 508] approved my retention to assist and provide accounting services to Plaintiffs' Liaison Counsel, the Plaintiffs' Steering Committee ("PSC"), and the Court in MDL No. 2179, as follows:

1

> Plaintiffs' Liaison Counsel have retained and the Court approves the retention of Philip Garrett, CPA ("PG"), to assist and provide accounting services to Plaintiffs' Liaison Counsel, the Plaintiff's Steering Committee, and the Court in MDL 2179.  PG will be assisting in compiling submissions and will provide reports to Plaintiff's Liaison Counsel who shall submit them to the Court on a monthly basis.  These reports will include both time and expenses and will summarize, with back-up detail, the submissions of all firms.  Submission of time and expense records to PG and the Court shall be considered as if submitted under seal.

PTO 9, ¶ I (3).

4.  PTO 9 set forth the standards and procedures to be utilized by any counsel seeking common benefit fees and/or expense reimbursement (*i.e.*, potential "Fee Applicants" or "Common Benefit Attorneys").  PTO 9 requires that all time and expenses that are submitted to me through the Philip Garrett Case Cost Management System located at www.garrettco-ccms.com/bp ("PG CCMS") be incurred only for work authorized in advance by the PSC through the Plaintiffs' Liaison Counsel or Executive Committee.  PTO 9, ¶ I (1).  Prior to the formation of the PSC, such work had to be authorized by the Plaintiffs' Liaison Counsel or the Court.  *Id.*  PTO 9 further provides that the time and expense guidelines are intended for all activities performed and expenses incurred by counsel (including state court counsel) which relate to matters common to all claimants in MDL 2179.  PTO 9, ¶ I (2).

5.  During the period from October 2010 through today, my work as the Court-appointed "accountant" primarily involved a review of these time and expense reports of Common Benefit Attorneys to determine whether they complied with the dictates of PTO 9. Where it was determined that a submission of common benefit time and expense was not in compliance with PTO 9, or the procedures established by Plaintiffs' Liaison Counsel, the

2

submitting Fee Applicant was advised of this determination through the PG CCMS and given an opportunity to correct it. I routinely have kept the Court apprised of my ongoing activities in reviewing time and expenses of Fee Applicants in this litigation.

6. The protocol that I observed in reviewing the time and expense submissions of the Common Benefit Attorneys consisted of the following:

   a. Initially, we reviewed each submission to determine if it complied with the form requirements of PTO 9.[1] Among other things, this examination focused on whether the Fee Applicant reported time according to the guidelines of PTO 9 (as amended), whether appropriate time records were included with the submission, whether the position of each timekeeper (*e.g.*, attorney, para-professional, etc.) was disclosed, whether the reported time was properly categorized and coded in accordance with the requirements of PTO 9, and whether the Fee Applicant attached records documenting its claimed expenses. If the submissions complied with the procedural requirements of PTO 9, we proceeded to examine them further as set forth below. If we discovered deficiencies in compliance with the procedural requirements of PTO 9, the Fee Applicant was notified of same via the PG CCMS and given an opportunity to correct the form.

   b. Once we received a time or expense record that was in proper form, we examined the submission rigorously to determine whether we could accept the submission or whether there were circumstances present which would require us to disallow items of time or expense from inclusion under the terms of PTO 9. If we determined the submission was in compliance with PTO 9, we accepted the hours and/or held costs and noted the same on the PG CCMS. If we determined there were items not in compliance, we notified the Fee Applicant of same, conditionally disallowing the inclusion of that counsel's time and expenses. In the conditional disallowance notifications, we clearly advised the Fee Applicant of each type of item contained in the submission which was subject to disallowance. Typically, we provided illustrations of each such item from the Fee Applicant's time and expense records. The notifications provided a period of time for the counsel to correct the deficiencies in its submission insofar as it was able to do so truthfully. In most of these cases, we ultimately issued a notification accepting the counsel's revised submission of time and/or expense. In some cases,

---

[1] PTO 9 was amended on April 1, 2011 (Order [Rec. Doc. 1838]) and on March 19, 2014 (Pretrial Order No. 56 [Rec. Doc. 12542]).

3

       however, we were required to disallow specific line items of time and/or expense, and an appropriate notification issued.

    c. After the above-outlined process, we checked the arithmetic accuracy of the summaries of time and expense submitted by each Common Benefit Attorney based on the underlying detail records that were supplied to us. This procedure was limited to items of time and expense.

7. In regular monthly reports, I informed the Court of all items of time and expense that were accepted, as well as the items that were disallowed. Under PTO 9, my determination as to whether to allow or disallow any item of time or expense of any Fee Applicant was a matter of procedural convenience for the Court and not a determination on the merits. I made no subjective judgment regarding the value of any time allowed and attempted to judge solely upon objective criteria. The Court's orders made it clear that an allowance or disallowance by me was without prejudice to a determination by the Court of the merits of any submission at a time and manner determined by the Court.

8. On July 15, 2015, the Court entered PTO 59 (Appointment of Common Benefit Fee and Cost Committee ("FCC") and Guidelines for Common Benefit Attorneys' Fees and Costs Reimbursement) [Rec. Doc. 14863]. This order provided direction and established guidelines for the orderly and efficient presentation to the Court of an aggregate fee and cost petition to allow for the determination of an award of common benefit attorneys' fees and expense reimbursement, and subsequently an allocation recommendation to assist the Court with determining a fair and equitable allocation of the common benefit fee and costs award among eligible Fee Applicants.

9. PTO 59 required all potential Fee Applicants to review and audit their firm's submissions to me from the inception of the litigation through and including March 31, 2015

4

("Initial Cut-Off Date"). *See* PTO 59, ¶ 9. In connection with this review and self-audit, PTO 59 provided an opportunity for counsel to request on or before September 15, 2015, that I modify certain time and/or expenses to amend or correct any submissions that did not comply with PTO 9. *See* PTO 59, ¶ 10.[2]

10.    Following the issuance of PTO 59, various counsel requested that I modify, *i.e.*, delete, certain time and/or expenses in their submissions. In some cases, counsel notified us (sometimes through Special Counsel to the FCC) that they intended to delete all of their time and/or expenses and waive common benefit fees and reimbursement of expenses. We reviewed and amended, as appropriate, revised submissions by counsel so that the PG CCMS was updated to reflect time and expenses that were accurate and in accordance with submissions made by counsel who sought compensation for common benefit time and reimbursement of expenses pursuant to PTO 9 and PTO 59.

11.    In accordance with PTO 59, on February 19, 2016, I posted on the PG CCMS the final, corrected hours and expenses from inception of the litigation through the extended Initial Cut-Off Date, which were accepted by me pursuant to PTO 9, and I provided all potential Fee Applicants with instructions on how to view their final corrected hours and expenses on this system.

12.    Pursuant to PTO 9, 107 potential Fee Applicants submitted time and/or expenses to me. I ultimately accepted a total of 585,947.65 hours and $7,268,882.42 in held costs for

---

[2] Subsequently, the Initial Cut-Off Date was extended to December 31, 2015 [Rec. Doc. 15828].

these Common Benefit Attorneys, collectively, from the inception of the litigation through December 31, 2015.

13. Pursuant to PTO 59, the Common Benefit Attorneys voluntarily withdrew in the aggregate 26,582.65 hours (resulting in accepted hours as of December 2015 of 559,365.00) and $160,970.06 (resulting in accepted held costs as of December 2015 of $7,107,912.36) in held costs. Some of these firms did so by waiving their claim to common benefit fees and reimbursement of common benefit expenses.

14. For the period from January 1, 2016 through April 30, 2016, 29 of the potential Fee Applicants submitted time and/or expenses to me. I have accepted an additional 8,831.20 hours and $79,785.94 in held costs for these firms, collectively, for that period of time.

15. Copies of all submissions provided to me by Common Benefit Attorneys are available to the Court through protected access via the PG CCMS.

16. In addition to the reimbursable held costs incurred by Common Benefit Attorneys individually, certain reimbursable "shared costs," as defined by PTO 9, were incurred by the PSC on behalf of all claimants. I have conducted a review of all of the payments of shared costs incurred for the administration of the MDL, as authorized by the Court. *See* Rec. Docs. 8607, 9520, 10796, 11796, 12664, 13342, 13677, 14432, 15644, and 15916. These expenses total $37,597,151.98 (including the $1,800,000 in unreimbursed assessments). In accordance with PTO 9, I have concluded that these shared costs are properly documented, bona fide expenses of the PSC, which are properly subject to reimbursement.

17. My review of time and expense submissions pursuant to PTO 9, from the date of my retention in this litigation through May 1, 2016, has required the expenditure of 7,710.69

6

hours of professional accounting time by myself and the members of my staff, resulting in billings totaling $1,002,389.98, including costs.

FURTHER AFFIANT SAYETH NOT.

_____
PHILIP A. GARRETT, C.P.A.

Sworn & Subscribed
before me this 10th
day of JULY, 2016.

_____
NOTARY PUBLIC

LINDA W. DeLAUGHTER
Notary Public
STATE of LOUISIANA
NOTARY ID # 12159
St. Tammany Parish

7

**PHILIP A. GARRETT, CPA**
**600 Northwoods Drive**
**Abita Springs, LA  70420**
**985-635-1500**
**pgarrett@garrettco.com**

as of 12/31/2015

**Education and Certification**

- Bachelor of Science in Accounting, University of New Orleans, December 1972
- Certified Public Accountant

**Significant Career Experience:**

Over 40 years of accounting, auditing, and consulting experience in serving clients in a variety of industries.  Associated with Wegmann Dazet and Company from staff to managing partner. Retired on December 31,2007 and started Philip A. Garrett, CPA later in 2008.

In addition to accounting and auditing services, Mr. Garrett has provided consulting assistance covering a broad array of matters.  The following list highlights selected issues and experience:

- Sale and purchase of business entities ranging in asset values up to $100 million
- Business valuations
- Preparation of financial packages to assist clients in arranging for financing of major projects and acquisitions
- Reconstruction of financial records
- Employee benefits and compensation
- Business plans, budgeting, and financial projections
- Assistance in the acquisition and installation of computer systems
- Financial reorganization
- Tax, financial, and retirement planning
- Representation before tax authorities
- Evaluation of financial and accounting documents of borrowers for banks

**Multi-District Litigation**

Serve as court appointed accountant to assist and report on plaintiffs' time and costs for litigation. Cases involve issuance of reports on time and costs as well as testimony in certain instances. Have worked on the following MDL's:

- Propulsid Product Liability  MDL1355
- Vioxx Product Liability MDL 1657
- Chinese Drywall MDL 2047
- BP "Deepwater Horizon"  MDL 2179
- TI "Bogalusa Papermill" class action
- Pool Corporation MDL 2328
- Granuflo MDL 2428
- Xarelto MDL 2592
- Benicar MDL 2606 (costs only)

**Training and Teaching Experience**

Guest lecturer for the University of New Orleans, Louisiana State Society of CPAs and numerous business associations.  Topics include:

- Planning for Profits
- Getting Behind the Numbers
- Cash Flow Analysis
- Tax Planning, both corporate and individual
- Valuation of a Closely-Held Corporation
- Pricing Strategies
- Cost Reduction

**Professional Affiliations**

- American Institute of Certified Public Accountants
- Society of Louisiana Certified Public Accountants

**Bankruptcy Consulting Experience**

Experience in bankruptcy and litigation support consulting and/or expert testimony includes the following issues:

- Examiner for U.S. Bankruptcy Court to report on adherence of debtor to court order
- Use of loan proceeds--real estate project
- Arbitration of fixed asset dispute
- Analysis of construction documents
- Evaluation of profitability plan of debtor in bankruptcy
- Damage calculation
- Assistance to debtors and creditors with bankruptcy process

**Litigation Experience As Consultant Or Expert Witness** -- (All cases where a report and/or expert testimony was completed not including MDL cases)

| Type of Client | Client | Attorney or Law Firm | Date | Services |
|---|---|---|---|---|
| Defendant | Robert Grocers | Schonekas, Evans and McGoey | 2013 | Report and deposition |
| Plaintiff | VanHoose Insurance Agency | Joe Ward | 2012 | Consultation and report |
| Defendant | Polyflow, Inc | Nancy Degan | 2011 | Consultation and report |
| Plaintiff | John Davis, CPA | Al Ajubita and Rodney Cashe | 2010 | Consultation and testimony and reports |
| Plaintiff | Concerned Care Home Health | Joe Ward | 2010 | Report and testimony |
| Plaintiff | Hess Construction | Joe Ward | 2009 | Report and testimony |
| Plaintiff | Dr. Hawthorne et al | Nancy Degan | 2009 | Consultation |
| Plaintiff | Action Screen Printers | Stephen Chiccarelli | 2008 | Report |
| Plaintiff | Quality Amusements | Joe Friend Breazeale, Sachee & Wilson | 2008 | Consultation and Report |
| Defendant | Houston National Insurance Co. | Eric Burt Degan, Blanchard & Nash | 2008 | Consultation |
| Defendant | State Farm Insurance | Burt Carnahan | 2008 | Consultation, Report & Deposition |
| Plaintiff | Big River Enterprises, Inc | Steven Griffith | 2008 | Report |
| Plaintiff | Premier Industries | George Pivach | 2007 | Report and Consultation |
| Plaintiff | Robert Grocers et al | Phil Franco | 2007-Present | Testimony, Report and Deposition |
| Plaintiff | Fordoche vs TEPI | Joe Ward | 2007 | Report and Deposition |
| Debtor | Pelts and Skins (alligator farm) | Doug Draper | 2007 | Report and Testimony |
| Plaintiff | The Wood Group | Ben Banta | 2007 | Report and Analysis |
| Defendant | Preston Law Firm vs Cowan Law Firm | Kyle Schonekas | 2007 | Arbitration Testimony and Deposition |

| Type of Client | Client | Attorney or Law Firm | Date | Services |
|---|---|---|---|---|
| Plaintiff | BCM, LLC, et al. v. Copeland of New Orleans | Roy Cheatwood | 2006 | Testimony in State Court in Lafayette, LA |
| Plantiff | Jon Sgular et al vs Emerson Process Mgmt et al | Michael Lehman Couhig Partners | 2006 - 2007 | Report and deposition |
| Defendant | Arr-Maz Products vs. Sonitrol (ADT) Damages calculation after building destroyed by fire | Michael Lehman Couhig Partners | 2005-2006 | Report only |
| Defendant | Jitney Jungle Bankruptcy Valuation of Company as of preference period | Doug Draper | 2005 | Report only |
| Plaintiff | Cross Marine v. Soloman Smith Barney Securities case – Return on Investment | Bruce Schewe | 2004-2005 | Report only |
| Defendant | Bruno, et al. v. Hattier, Sanford and Reynoir, LLP Securities case – Return on Investment | Bruce Schewe | 2005 | Report only |
| Plaintiff | Decorte, et al. v. Eddie Jordan, et al. | Clem Donelon/ Lisa Brener | 2004-2005 | Report, Deposition & Federal Court Testimony |
| Defendant | John B. Steigner v. Elaine D. Scott, et al. | Maurice Mathieu/ Burt Carnahan | 2004 | Report for Mediation |
| Defendant | City of New Orleans v. Municipal Administrative Services, Inc. | Randy Smith | 2004 | Deposition & Federal Court Testimony |
| Plaintiff | JRL Enterprises, Inc. v. Procorp Associates, Inc. et al. | Joseph Ward | 2003/ 2005 | Report, Depositions, and Federal Court Testimony |
| Plaintiff | Evans Industries, Inc. v. J.D. Edwards World Solutions Company et al. | Stone Pigman | 2003-2004 | Report and Testifying at Arbitration |

Other cases dating back into the 1990's are available upon request