# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 15-30265

_____

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:12-CV-970

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2016

Lyle W. Cayce
Clerk

IN RE:  DEEPWATER HORIZON

-----------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED,

      Plaintiff

v.

BP EXPLORATION & PRODUCTION, INCORPORATED,  ET AL.,

      Defendants

GLEN J. LERNER;  JONATHAN BEAUREGARD ANDRY; ANDRY
LERNER, L.L.C.,

      Movants - Appellants

v.

LOUIS J. FREEH, Special Master,

      Appellee

Appeals from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

# J U D G M E N T

 This cause was considered on the record on appeal and was argued by counsel.

 It is ordered and adjudged that we affirm the district court's sanction order and hold that the district court did not abuse its discretion in denying Andry Lerner, L.L.C.'s motion to alter or amend its prior orders, and we leave open to the district court the possibility of amending its orders governing the escrowed funds upon submission of a properly supported motion.

 IT IS FURTHER ORDERED that each party bear its own costs on appeal.



**Certified as a true copy and issued
as the mandate on Jul 22, 2016**

**Attest:**

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30265

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2016

Lyle W. Cayce
Clerk

IN RE:  DEEPWATER HORIZON

-----------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED,

> Plaintiff,

v.

BP EXPLORATION & PRODUCTION, INCORPORATED, ET AL.,

> Defendants.

GLEN J. LERNER; JONATHAN BEAUREGARD ANDRY; ANDRY LERNER, L.L.C.,

> Movants – Appellants,

v.

LOUIS J. FREEH, Special Master,

> Appellee.

Appeals from the United States District Court
for the Eastern District of Louisiana

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:

No. 15-30265

Glen Lerner and Jonathan Andry appeal the district court's sanction order disqualifying them from further participation in the Court-Supervised Settlement Program related to the Deepwater Horizon oil spill, and Andry Lerner, L.L.C. appeals the denial of its motion to alter or amend the restrictions imposed on related attorneys' fees that were escrowed in connection with the sanction. Because the district court acted within its inherent authority to supervise the settlement program and did not abuse its discretion in imposing the sanction, we AFFIRM the district court's sanction order. In light of Freeh's representation that the parties intend to agree to appropriate amendments to the restrictions on the escrowed fees, we hold that the district court did not abuse its discretion in denying Andry Lerner, L.L.C.'s motion to alter or amend and we leave open to the district court the possibility of amending its orders upon submission of a properly supported motion.

## I.

This case arises from an investigation into improprieties in the Court-Supervised Settlement Program (CSSP) responsible for a class of claims related to the Deepwater Horizon oil spill. The focus of the investigation was attorney Lionel Sutton, who together with his wife, Christine Reitano, worked as a staff attorney with the CSSP. Before Sutton and Reitano worked for the CSSP, they represented clients with CSSP claims through their firm, Sutton & Reitano. They transferred those clients to other firms before becoming CSSP staff attorneys.

Among the firms receiving these clients was Andry Lerner, L.L.P. (AndryLerner), a New Orleans law firm focused on representing CSSP claimants. Appellants Jonathan Andry and Glen Lerner were equity shareholders in AndryLerner. Lerner, a Nevada attorney, also had an ongoing business relationship with Sutton in a water reclamation company called Crown LLC (Crown), which paid Sutton $10,000 per month. Sutton referred

2

No. 15-30265

one of his CSSP clients, Casey Thonn, to AndryLerner.  Andry, a Louisiana attorney, became counsel of record for Thonn.  From January to June 2013, while Sutton was employed by the CSSP, Andry and Lerner paid Sutton just over $40,000 in three referral fee payments for the Thonn case.  AndryLerner circuitously sent these payments to Lerner's Las Vegas law firm, which in turn transferred the money to a Crown corporate account to which Sutton had access and from which he withdrew the payments.

Sutton subsequently resigned from the CSSP, and in July 2013, the district court overseeing the CSSP appointed appellee Louis Freeh as a special master and charged him to "perform an independent external investigation into the facts and circumstances that led to the resignation of [Sutton]" and "conduct fact-finding as to any other possible ethical violations or misconduct by the CSSP."  Three months later, Freeh produced an 89-page report detailing misconduct by Sutton, Andry, Lerner, and others.  This report was based on a 66-day investigation in which Freeh conducted more than eighty interviews and reviewed extensive written records.  Freeh recommended that Andry and Lerner be prevented from representing claimants in the CSSP.

The district court ordered Lerner and Andry to show cause why they and AndryLerner should not be disqualified from representing CSSP claimants under the unclean hands doctrine.  After receiving discovery from Freeh's investigative records, Lerner, Andry, and AndryLerner filed responses in opposition to Freeh's report.  The district court held an evidentiary hearing and made findings on the record at the hearing, followed by a written order several months later.

The district court applied the Louisiana Rules of Professional Conduct, finding that Andry and Lerner had violated multiple rules.  The district court found that Andry had violated the ethics rules by aiding and facilitating the payment of improper referral fees to Sutton and by lying during the

No. 15-30265

investigation.  The district court found that Lerner knew that it was improper to pay referral fees to Sutton and knew or should have known that it was a conflict of interest for Lerner to be a business partner with Sutton, and that Lerner could not escape responsibility by relying on Sutton's statement to him that there was no conflict of interest.  Based on these findings, the district court disqualified Sutton, Lerner, and Andry from participating in the CSSP.

The court also prohibited Lerner and Andry from collecting attorneys' fees in connection with CSSP claims, except that it allowed AndryLerner to collect fees for previous legal work performed on legitimate CSSP claims. However, all such fees were escrowed pursuant to an earlier court order, and the court ordered that "[t]he remaining escrowed fees shall not be released to AndryLerner, Jon Andry, or Glen Lerner until all remaining AndryLerner claims have been resolved and the Court orders the release of the remaining fees."  AndryLerner subsequently moved to alter and amend the district court's order to allow for payments to third-party creditors and further protect the escrow account from the risk of bank failure.  The district court denied the motion in relevant part.

Lerner and Andry both appeal the sanction order.  Lerner argues that: (1) the district court exceeded its inherent power to sanction Lerner because his conduct did not constitute direct defiance of the court; (2) Lerner was denied due process by not being given the opportunity to challenge the appointment of Freeh or to review all the evidence relied on by Freeh; (3) the district court erred in determining that Lerner violated Rule 1.5(e) of the Louisiana Rules of Professional Conduct; and (4) the district court erred in sanctioning Lerner for violations of Rule 8.4(a), (c), and (d) of the Louisiana Rules of Professional Conduct on the basis of its finding that he knew or should have known that he was in violation of the rules.  Andry argues that: (1) the court abused its discretion in sanctioning Andry for aiding and abetting the

No. 15-30265

payment of an improper referral fee; (2) the district court abused its discretion in sanctioning Andry for knowingly making a false statement to the tribunal in violation of Rule 3.3 of the Louisiana Rules of Professional Conduct; (3) the district court abused its discretion in sanctioning Andry for violating Rule 8.4(a), (c), and (d) of the Louisiana Rules of Professional Conduct; and (4) the district court's sanctions were excessive.[1]  AndryLerner adopts Lerner and Andry's arguments and also appeals the denial of its motion to alter or amend the sanction order.

## II.

A federal court may hold attorneys accountable to the state code of professional conduct. *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 341 (5th Cir. 1993).  "Sanctions imposed against an attorney by a district court are reviewed for abuse of discretion." *United States v. Brown*, 72 F.3d 25, 28 (5th Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).  "That discretion is abused if the ruling is based on an 'erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)).  Questions regarding the applicability of ethics rules are reviewed *de novo*. *See id.* ("[T]he question of whether [appellant's] conduct was subject to sanction under [Rule 8.2 of the Louisiana Rules of Professional Conduct] is a legal issue which must be reviewed *de novo*.").

---

[1] Andry also argues for the first time in his reply brief that the procedure employed in this case, which restricts his access to previously earned attorneys' fees, constitutes an unconstitutional taking in violation of his due process rights.  This argument is not responsive to any argument raised by Freeh and therefore is untimely and will not be considered. *See United States v. Ramirez*, 557 F.3d 200, 203 (5th Cir. 2009) ("This court does not entertain arguments raised for the first time in a reply brief.").  Andry's passing argument that "the district court unconstitutionally prohibited [him] from confronting his accuser" is also raised only in his reply brief and is therefore untimely.

No. 15-30265

We generally review a decision on a motion to alter or amend judgment for abuse of discretion, although to the extent that it involves a reconsideration of a question of law, the standard of review is *de novo*. *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).

We review the district court's decisions regarding discovery and motions for disqualification for abuse of discretion, as discussed in more detail below. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000); *Sensley v. Albritton*, 385 F.3d 591, 598 (5th Cir. 2004).

## III.

Lerner first argues that the district court lacked inherent power to sanction him because his actions "were not before the District Court and cannot be said to have constituted the requisite disobedience or 'direct defiance' within the District Court's purview to sanction."[2]  Lerner argues that his conduct "all occurred in conjunction with the administration of the CSSP" and notes that the district court determined that it "did not cause or result in any corruption of the claim evaluation process."  Lerner relies on *F.D.I.C. v. Maxxam, Inc.*, in which this court explained that inherent power sanctions for conduct not occurring in trial are limited to situations in which "a party engages in 'bad-faith conduct' which is 'in direct defiance *of the sanctioning court*.'"  523 F.3d 566, 591 (5th Cir. 2008) (citation omitted).  The *Maxxam* court reversed a $50 million sanction where the improper conduct was in "a proceeding that was not before the district court and did not challenge the district court's authority."  *Id.* at 593.

Freeh argues that *Maxxam* is distinguishable because "the sanctions here addressed misconduct that threatened the integrity of a court function

_____

[2] Andry also mentions this point in passing but does not identify it as an issue on appeal.

6

No. 15-30265

under the district court's direct supervision" as well as "misconduct during the district court's investigation of the matter." We agree. Indeed, the district court noted in its order that "the Court retains continuing and exclusive jurisdiction over the administration, implementation, and enforcement of the Settlement and over each class member and their counsel for any suit, action, proceeding, or dispute arising out of or relating to the Settlement." This is materially different from the situation in *Maxxam*, in which the misconduct occurred in an unrelated tribunal—an administrative proceeding in Washington, D.C.—not overseen by the district court in Texas. Here, we conclude that the district court's inherent authority to police serious misconduct before it extended to the CSSP over which it retained continuing and exclusive jurisdiction.[3]

Furthermore, the district court strongly rejected Appellants' argument that no harm had been done to the CSSP. In announcing its oral findings, the district court explained that:

> [Andry's attorney] said one thing that I have to strongly disagree with here when [he] said despite all of this there was no harm done. The harm that's been done by all that's occurred in this case here is to the integrity of this Court Supervised Settlement Program, to the integrity of the legal system.
>
> The fallout from what started with Mr. Sutton's misconduct and mushroomed from there has caused or created a tremendous injury

---

[3] We have relied on *Maxxam* to reverse inherent power sanctions imposed for conduct during arbitration, holding that because the conduct "was neither before the district court nor in direct defiance of its orders, the conduct [was] beyond the reach of the court's inherent authority to sanction." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 461 (5th Cir. 2010). The *Positive Software* court was especially concerned that "the sanctions order threaten[ed] unduly to inflate the judiciary's role in arbitration," explaining that the Federal Arbitration Act "provides for minimal judicial involvement in resolving an arbitrable dispute; the court is limited to only a few narrowly defined, largely procedural tasks." *Id.* at 462. Here, in contrast, the district court retains continuing and exclusive jurisdiction over the administration and implementation of the CSSP and all disputes arising therefrom.

7

No. 15-30265

> to what we are doing here. It ultimately led to much of what's
> happened since then in the sense of claims being delayed, the
> claims program being shut down for a period of time, a tremendous
> amount of adverse publicity, criticisms of Mr. Juneau, of the claims
> facility, of the Court, of everybody concerned with this.

We reject Lerner's argument that the district court was powerless to address this serious harm to the CSSP. In light of the district court's direct, continuous, and exclusive supervision of the CSSP, we hold that the district court acted within its inherent authority when it sanctioned misconduct threatening the integrity of the CSSP.

## IV.

Lerner next argues that his due process rights were violated because he was not given notice or an opportunity to be heard before the district court appointed Freeh to investigate his conduct, and because Freeh had conflicts of interest that should have disqualified him.

Rule 53 requires that "[b]efore appointing a master, the court must give the parties notice and an opportunity to be heard." Fed. R. Civ. P. 53(b)(1). As Freeh points out, the rule says nothing about non-parties, and Lerner does not claim to be a party. *Cf. Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 455–56 (9th Cir. 2009) (affirming appointment of special master in class action suit where named plaintiffs and defendant consented, even though unnamed plaintiff was not provided with notice and an opportunity to object).

Assuming, *arguendo*, that Lerner had a right to notice, he waived his right to object to Freeh's appointment because he raised no objection until after Freeh's adverse report was issued. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410 (9th Cir. 1990) ("[A]n objection to the appointment of a special master must be made at the time of the appointment or within a reasonable time thereafter or the party's objection is waived."); *cf. McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 925 F.2d 853, 857 (5th Cir. 1991) ("A party

No. 15-30265

waives his objection when he participates in a proceeding before a magistrate and fails to make known his lack of consent or fails to object to any other procedural defect in the order referring the matter to the magistrate until after the magistrate has issued her report and recommendations."); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th Cir. 1986) ("Counsel, knowing the facts claimed to support a § 455(a) recusal for appearance of partiality may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits.").[4]

Furthermore, Lerner has not shown that the district court abused its discretion by denying his motion to disqualify Freeh.  Rule 53 requires that a special master "must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification."  Fed. R. Civ. P. 53(a)(2).  "A motion to disqualify brought under 28 U.S.C. § 455 is 'committed to the sound discretion of the district judge'" and is reviewed for abuse of discretion.  *Sensley*, 385 F.3d at 598 (citation omitted).  Lerner complains that Freeh is a partner and executive chairman in a law firm that has ties to Kirkland Ellis, the primary attorney for BP in this matter, and that Freeh formerly partnered with a judge who has served as an ombudsman for BP.[5]  Lerner cites no authority establishing that these relationships are

---

[4] Lerner argues for the first time in his reply brief that he did not waive his objection because Freeh "did not reveal his relationship with the Williams & Connolly law firm until January 8, 2014, months after he filed his Report" and Lerner joined Andry's objection to Freeh's continuance as special master two weeks later.  However, Freeh's relationship with Williams & Connolly was not identified among the purported conflicts of interest of which Lerner complained in his initial brief, and Lerner does not contend that any of the other purported conflicts on which he did rely were discovered after Freeh issued his report.

[5] On the other hand, Freeh's firm is also adverse to BP in six matters.

No. 15-30265

sufficient to disqualify Freeh from serving as a special master, nor does he dispute that Freeh properly disclosed these purported conflicts at the time of his appointment and that Lerner did not object until months later, after the adverse report was issued.  Under these circumstances, the district court did not abuse its discretion when it declined to disqualify Freeh.

## V.

Lerner argues that "[d]ue process demands that [he] be afforded a meaningful opportunity to contest the alleged factual underpinnings of the Special Master's Report," and that the district court denied him this right by denying him complete access to the investigative record relied upon by Freeh in compiling his report and by rejecting his requests to interview or depose employees of the Claims Administration Office.  Specifically, Lerner contests the withholding of some of the "alleged co-conspirators' communications," complaining that "only those emails identified through an extremely narrow search field were made available" to him.

Rule 53 requires that in acting on a special master's report, "the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."  Fed. R. Civ. P. 53(f)(1).  Parties may file objections to the report, which the court generally reviews *de novo*.  *Id.* 53(f)(2), (3).  Lerner argues that "[i]mplicit in these rules is the requirement that a party affected by a Special Master's report be given an opportunity to examine all of the evidence relied upon by the Special Master in making his recommendations, absent compelling circumstances to the contrary."  The sole case on which Lerner relies—for the proposition that "traditional notions of due process apply to the reports of special masters"—does not state that proposition, much less that due process requires full access to all evidence.  *See*

No. 15-30265

*Ruiz v. Estelle*, 679 F.2d 1115, 1162–63 (5th Cir.), *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982).

Instead, Rule 53 allows the district court to determine "the nature of the materials to be preserved and filed as the record of the master's activities." Fed. R. Civ. P. 53(b)(2)(C); *see also id.*, Advisory Committee Notes (2003 Amendment) ("The materials to be provided to support review of the report will depend on the nature of the report. The master should provide all portions of the record preserved under Rule 53(b)(2)(C) that the master deems relevant to the report. The parties may designate additional materials from the record, and may seek permission to supplement the record with evidence. The court may direct that additional materials from the record be provided and filed."). Thus, the district court was not required as a matter of course to give Lerner access to all materials on which Freeh relied.

Nor did the district court abuse its discretion in setting limits on the information produced to Lerner. "We review a district court's discovery decisions for abuse of discretion and will affirm such decisions unless they are arbitrary or clearly unreasonable." *Moore*, 233 F.3d at 876. "This court will disregard a district court's discovery error unless that error affected the 'substantial rights of the parties.' The burden of proving substantial error and prejudice is upon the appellant." *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 469 (5th Cir. 2009) (citations omitted). Here, the district court ordered Freeh to provide Lerner "access to information relevant to portions of the Special Master's Report concerning [him]" and to redact portions of discovery not relevant to a particular party. When AndryLerner requested further production, the court granted the motion in part and referred any further discovery issues to a magistrate judge, who then conducted an in camera review and made further discovery available to Lerner. Lerner has neither shown that the district court's decisions were arbitrary or clearly

11

No. 15-30265

unreasonable nor demonstrated any prejudice to his substantial rights. Accordingly, his due process claim fails.

## VI.

Lerner and Andry each challenge the district court's finding that they violated Rule 1.5(e) of the Louisiana Rules of Professional Conduct when they paid $40,000 in fees to Sutton for the Thonn claim. Rule 1.5(e) provides:

> A division of fee between lawyers who are not in the same firm may be made only if:
>
> (1) the client agrees in writing to the representation by all of the lawyers involved, and is advised in writing as to the share of the fee that each lawyer will receive;
>
> (2) the total fee is reasonable; and
>
> (3) each lawyer renders meaningful legal services for the client in the matter.

La. R. Prof'l Conduct 1.5(e). The district court, after quoting the rule, explained the violation as follows during its oral findings:

> It's a pretty obvious ethical rule -- I know in Louisiana, I suspect in many other states -- that you can't get a referral fee or whatever you call it unless you have actually done some work. You can't just get a fee for referring a case to another lawyer without doing some work. The work has to be meaningful and it has to be in proportion or based on an assessment of the work you have done.
>
> In this case none of that occurred, as I see it. The 50 percent, rather obviously, wasn't based on any kind of assessment of how much work Ms. Reitano had done compared to how much AndryLerner had done. It was simply their usual or rather typical referral fee to a referring lawyer.

The district court reiterated in its written order that "the Court finds that Sutton, Andry, and Lerner violated Rule 1.5(e) regarding the division of fees between lawyers who are not in the same firm."

Lerner argues that the district court abused its discretion because: (1) the evidence showed that the work actually performed on the Thonn claim by

No. 15-30265

Sutton & Reitano before referral was substantial; (2) Rule 1.5(e) is satisfied if an antecedent 50-50 fee sharing agreement turns out to reflect the proportionate division of labor; and (3) there was no evidence that the division of labor in this case between Andry and Sutton & Reitano was not 50-50. Andry argues that Rule 1.5(e) is inapplicable because "[t]his was not a referral fee case as a matter of fact and law but, instead, was a *quantum meruit* fee agreed to by Sutton and Lerner," making this "a case of successive law firms as opposed to a situation involving a referral fee agreement."

The district court properly applied Rule 1.5(e) and characterized this as a referral fee arrangement after it found that AndryLerner "sent a letter to Ms. Reitano enclosing a referral fee agreement, which she says she sent at the request of Jon Andry, and it provided for a 50/50 split or a 50 percent referral fee, which as it turned out is exactly what occurred in this case." The district court did not err in finding that the 50-50 division of fees "wasn't based on any kind of assessment of how much work Ms. Reitano had done compared to how much AndryLerner had done." Nor was the district court's implicit conclusion that the actual work performed by Reitano and AndryLerner was disproportionate based on a clearly erroneous assessment of the evidence.[6] Accordingly, the district court did not abuse its discretion in determining that Lerner and Andry violated Rule 1.5(e).

## VII.

Andry challenges the district court's finding that he violated Rule 3.3 of the Louisiana Rules of Professional Conduct, which provides that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or

---

[6] Freeh's counsel pointed out at oral argument that the CSSP had authorized a payment to Thonn of approximately $1,000 when Reitano referred the claim to AndryLerner, and after AndryLerner's appeal of the claim, Thonn received more than $150,000 for his claim.

13

No. 15-30265

fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." La. R. Prof'l Conduct 3.3(a)(1). The district court found that Andry violated Rule 3.3 by making false statements during the investigation into the improper fee payments:

> When initially questioned by Michael Juneau of the Claims Administrator's staff, Andry flatly denied knowledge of any payments to Lionel Sutton. Later, when questioned under oath by the Special Master on July 30, 2013, Jon Andry made several statements that were inaccurate or untrue. Specifically, Andry denied that Sutton had any interest in AndryLerner's cases. Andry stated to the Special Master, "I never had any idea about payments to Sutton until recently," and he claimed that he did not know anything about the fees being paid to Sutton "until all this broke out publicly." Based on the emails and other evidence submitted, these statements were obviously false, as Andry knew that Lerner intended to pay Sutton with the same monies that Andry sent to Lerner in Las Vegas.

Andry disputes this finding, arguing that the e-mails on which the district court relied to determine that Andry had knowledge of the fee agreement were hearsay and that the district court misunderstood those e-mails.

The district court found that Andry knew about the payments to Sutton based on a December 2012 e-mail in which Andry told Lerner to pay Sutton out of Lerner's share of the Thonn fee and a March 2013 e-mail in which Andry was copied on discussions of the payment:

> So what I conclude from those messages is that although Mr. Jon Andry knew that it was improper for Andry Lerner to pay these monies as a referral fee to Mr. Sutton while he was employed inside the program, nonetheless he sends the money to Mr. Lerner, washes his hands of it and says [in the December 2012 e-mail], "You just got the money. Pay it out of there."

Andry argues that the e-mails are hearsay. Because Andry did not object to their consideration by the district court, we review his challenge for plain error. *See Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 648

No. 15-30265

(5th Cir. 1991) ("When a party fails to object to the admission of evidence, we review for plain error.") (citing Fed. R. Evid. 103(a)).[7]  To establish plain error, Andry must show that: (1) the district court erred, (2) the error was clear or obvious, (3) the error affected his substantial rights, and (4) this court should exercise its discretion to correct the error because the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  Andry has not even attempted to argue that he can establish plain error, and accordingly, we decline to exercise our discretion to correct any error.  *See, e.g.*, *United States v. Rivera*, 784 F.3d 1012, 1019 (5th Cir.) ("We have . . . refused to correct plain errors when, as here, the complaining party makes no showing as to the fourth prong."), *reh'g denied*, 797 F.3d 307 (5th Cir. 2015).  Accordingly, Andry's hearsay argument fails.

Andry next argues that the district court misunderstood his statement, "You just got the money. Pay it out of that," in the December 2012 e-mail to Lerner.  Andry argues that this statement "was the opposite of an instruction. It was a statement of his position, that he was not going to pay Sutton, and that if Lerner wanted to pay Sutton he could pay him out of his half."  Andry's counsel pressed this point at oral argument, arguing that Andry had always been opposed to the payment of any fees to Sutton and ultimately told Lerner to pay Sutton out of Lerner's share of the fee because he believed Lerner would not pay Sutton unless he could take the money out of Andry's share of the fee.

---

[7] Andry argues that the issue was preserved because a co-defendant objected to Freeh's report and evidence "to the extent that both were hearsay," but he does not cite to any objection in the record.  Even assuming, *arguendo*, that such an objection was made and that it excuses Andry's failure to object, a general objection to all of the evidence "to the extent that [it is] hearsay" is insufficient to preserve the issue on appeal.  *See United States v. Lewis*, 796 F.3d 543, 546 (5th Cir. 2015) ("A loosely formulated and imprecise objection will not preserve error.") (citation omitted).

No. 15-30265

Even though Andry's proposed interpretation of the e-mail is plausible, the district court's alternate interpretation of "Pay it out of that" as an instruction to Lerner is also plausible and does not reflect a clearly erroneous view of the evidence.   In any event, the December 2012 and March 2013 e-mails at the very least demonstrate that Andry had knowledge of the improper payments to Sutton, such that his subsequent statements to the contrary were false.

Andry's attempts to explain away several false statements are unavailing.  The district court found that Andry made false statements to the CSSP's special counsel in June 2013 when he was asked whether Sutton had any financial interest in any of Andry's claims and replied that Sutton had no financial interest of any kind, including shared fees or referral fees, in any claim of Andry's, including Thonn's claim.  This conversation occurred after the December 2012 and March 2013 e-mails discussing payments to Sutton for the Thonn claim.  In light of these e-mails, the district court also found that Andry was untruthful when he told Freeh in July 2013 that he had not known about the fee being paid to Sutton until it broke publicly and that he "never had any idea about payments to Sutton until recently."  On this record, the district court did not abuse its discretion in determining that Andry knowingly made false statements in violation of Rule 3.3.

## VIII.

Lerner and Andry each challenge the district court's determination that they violated Rule 8.4(a), (c) and (d) of the Louisiana Rules of Professional Conduct.  Those provisions state that:

It is professional misconduct for a lawyer to:

(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

. . .

No. 15-30265

(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]

(d) Engage in conduct that is prejudicial to the administration of justice[.]

La. R. Prof'l Conduct 8.4.

Lerner argues that the district court erroneously conflated his conduct with that of Sutton and Andry and held him liable for Sutton's violations merely because Lerner did not make further inquiry after Sutton told him that there was no conflict of interest in the fee-sharing arrangement or in their separate business arrangement.  Relying on criminal law, Rule 5.1 (which governs when supervising attorneys are liable for their supervisees' misconduct and is therefore irrelevant here), and case law from other jurisdictions, Lerner argues that he cannot be held liable for Sutton's conduct on the basis of negligence alone.  He argues that the record shows that he inquired of Sutton whether a conflict or other problem existed, Sutton lied to him and told him there was no conflict, and it was reasonable for Lerner to believe Sutton, who had been his friend for decades.

Lerner's argument fails because the district court did not sanction Lerner for negligently failing to inquire about Sutton's ethical violations, but rather for his own knowing violations of Rule 8.4:

> With respect to Mr. Lerner, again *there's no question that Mr. Lerner was well aware that it was improper for these payments to be made* to a lawyer working inside the claims facility while Mr. Lerner and his firm were representing approximately a thousand claimants before the same program, the same facility.
>
> *He also knew or had to know that it was a huge conflict of interest* for him to be a business partner of Mr. Sutton in this outfit called Crown, LLC and to be making substantial monthly payments to Mr. Sutton while, again, he was asking Mr. Sutton from time to time to help him move his claims along.

17

No. 15-30265

The conflict of interest here was so blatant and so obvious that we had a paralegal that recognized these conflicts of interest and these lawyers didn't. It's just mind-boggling to me. *So I think they knew exactly what they were doing. I don't believe that they didn't know that these were big conflicts of interest.*

As far as Mr. Lerner, Mr. Lerner claims that, "Well, I just asked Mr. Sutton if it was a conflict of interest and he said no, so I thought it was okay." Well, you know, Mr. Lerner is a lawyer too. He can't just rely on what Mr. Sutton tells him as far as whether the circumstances, the knowledge he has, creates a conflict of interest. He apparently does nothing else. He doesn't ask Mr. Sutton to get anything in writing to waive any kind of possible conflict. He doesn't approach Mr. Juneau. Apparently he doesn't get an ethics opinion from anybody. He just does it. He just makes the payment. Again, he assists Mr. Sutton in using this circuitous routing of these payments.

Again, *Mr. Lerner had multiple conflicts he was aware of.* When Ms. Reitano goes to work there, *he knows* now his business partner's wife is working inside the program. The second conflict is that *he knows* Mr. Sutton is demanding and requesting -- pressuring him, really, for payment of these referral fees on the Thonn claims.

Lastly, importantly again, *he knows* that they are also doing business simultaneously in this other outfit called Crown, an ongoing business relationship with a lot of money passing back and forth while all this is going on.

(emphasis added). These findings are consistent with the court's written order. Accordingly, although the district court chastised Lerner for not investigating further, it held him liable for *knowingly* violating the ethical rules and assisting Sutton in violating the ethical rules, not for negligence. Because the district court's ruling was not based on a clearly erroneous assessment of the evidence, the district court did not abuse its discretion in finding that Lerner violated Rule 8.4.

As for Andry, the district court found that he too knew that the fee sharing was improper and knowingly violated Rule 8.4:

No. 15-30265

> Andry knew it was improper to pay a referral fee to Lionel Sutton
> while Sutton was employed as an attorney in the CSSP. While
> attempting to wash his hands of the matter, Andry in fact aided
> and facilitated the payment of the improper referral fees to Lionel
> Sutton by routing the money to his law partner Glen Lerner's office
> in Las Vegas, knowing full well that Lerner would use this money
> to pay Sutton. Still more troubling is Jon Andry's conduct and
> false statements during the investigation.

Andry disputes the finding that he knowingly or willfully violated Rule 8.4, arguing that he "was adamant about and objected to Sutton receiving any fee" and that there is no evidence that he violated any section of Rule 8.4. Andry's argument is premised on the assertion that he did not violate Rules 1.5(e) or 3.3 and that the e-mails on which the district court relied were inadmissible hearsay.

We have already rejected the arguments on which Andry relies. Without the exclusion of the December 2012 and March 2013 e-mails, Andry cannot show that the district court relied on a clearly erroneous assessment of the evidence in determining that Andry knew about the improper payments and told Lerner to pay Sutton. Nor did the district court rely on a clearly erroneous assessment of the evidence in finding that Andry routed money to Lerner's office knowing it would be paid to Sutton or that Andry made false statements during the investigation. Accordingly, the district court did not abuse its discretion in finding that Andry violated Rule 8.4.

## IX.

Finally, Andry argues that the district court's sanctions were excessive in light of the limitations on a district court's use of its inherent power to sanction. *See Chambers*, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion."). In his reply brief, Andry argues for the first time that "[g]iven the fact that Appellant and his firm were only representing claimants before the CSSP, the district court's

19

No. 15-30265

sanctions amount to a professional death sentence."[8]  Andry argues that the sanction is especially severe in light of the fact that his misconduct only involved one out of the 600 claimants he represented.

Andry has not shown that his disqualification from participation in the CSSP was an excessive sanction.  "In imposing a sanction after a finding of misconduct, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors." *In re Sealed Appellant*, 194 F.3d 666, 673 (5th Cir. 1999).  The district court found that Andry engaged in misconduct and deliberately made false statements in response to the resulting investigation, and that these actions caused "tremendous injury" to the CSSP, including "claims being delayed, the claims program being shut down for a period of time, a tremendous amount of adverse publicity, [and] criticisms of Mr. Juneau, of the claims facility, of the Court, of everybody concerned with this."  The district court narrowly tailored its sanction to prohibit Andry only from further participation in the CSSP, rather than disbarring or suspending him.  Thus, the sanction does not restrict Andry's practice of law in any context other than the CSSP.  Under these circumstances, the district court did not abuse its discretion in fashioning an appropriate sanction for Andry.

## X.

AndryLerner seeks relief from the district court's two orders denying AndryLerner access to funds earned in connection with prior CSSP claims. AndryLerner moved to alter or amend these orders, which motion the court denied.  On appeal, AndryLerner argues that the orders should be amended in

---

[8] To the extent that Andry's argument was not presented in his original brief, so as to allow Freeh the opportunity to respond, it is not properly before the court. *Ramirez*, 557 F.3d at 203.

No. 15-30265

three ways: (1) the district court should clarify what the condition "all remaining AndryLerner claims have been resolved" means; (2) the orders should be revised to allow payments to outside creditors; and (3) additional escrow accounts should be authorized for the deposit of legal fees earned in excess of the $250,000 for which the escrow account is insured, in order to protect against possible bank failure. We review the district court's ruling on a motion to alter or amend judgment for abuse of discretion. *Ross*, 426 F.3d at 763.

AndryLerner raises important concerns about protecting the escrowed funds, and at oral argument, Freeh's counsel represented that these concerns can be resolved by agreement. The problem, according to Freeh's counsel, is that AndryLerner did not adequately identify the relevant account balances to the district court in support of its motion. In light of the apparent deficiencies in AndryLerner's presentation of its motion to amend, the district court did not abuse its discretion in denying the motion. However, we emphasize that nothing in our opinion prevents the district court from reexamining the terms of the sanction if presented with a new and properly supported motion to alter or amend its orders restricting the escrowed funds, and, in light of Freeh's representation at oral argument, we expect that the parties will work together in good faith to propose reasonable modifications to which they can all agree.

## XI.

The district court acted within its inherent authority to supervise the settlement program and did not abuse its discretion in finding that Andry and Lerner violated the Louisiana Rules of Professional Conduct or in fashioning an appropriate sanction. Accordingly, we AFFIRM the district court's sanction order. We hold that the district court did not abuse its discretion in denying Andry Lerner, L.L.C.'s motion to alter or amend its prior orders, and we leave

No. 15-30265

open to the district court the possibility of amending its orders governing the escrowed funds upon submission of a properly supported motion.

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

July 22, 2016

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

     No. 15-30265     In re: Deepwater Horizon
                       USDC No. 2:10-MD-2179
                       USDC No. 2:12-CV-970

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Dawn D. LeBlanc, Deputy Clerk
                        504-310-7717

cc:   Mr. Jonathan B. Andry
       Mr. Douglas Scott Draper
       Mr. Dominic P. Gentile
       Mrs. Pauline Fransen Hardin
       Mr. Lewis Scott Joanen
       Mr. Gregory A. Paw