UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

MEMORANDUM IN SUPPORT OF MOTION OF THE
DHECC FOR RETURN OF PAYMENTS MADE TO
CLAIMANT MARTIN FORMENTO AND MADE IN RELIANCE ON FINANCIAL DATA
PROVIDED BY CLAIMS PREPARER WILLIAM A. BECKER CONSULTING, LLC

The DHECC moves to have claimant Martin Formento d/b/a Leave It To Beaver Charters (collectively "Formento") and claims preparer William A. Becker Consulting LLC ("Becker")[2] pay and return payments the DHECC made in reliance on false financial data they provided in support of Formento's Business Economic Loss ("BEL") claim, and to prohibit them from receiving or participating in any further distributions from the DHECC. Formento and Becker submitted false monthly profit and loss statements created to significantly increase claimant's purported economic loss suffered after the oil spill. *See* Ex. A, Declaration of J. Lynn Barker. Relying on these representations, the DHECC paid Formento $185,503.41, and Becker received a fee from the award.

---

[2] Its principal, William Becker, died on July 10, 2014. According to the records of the Florida Secretary of State, he and Patricia Becker were the former managers. According to its latest annual report, Patricia Becker is now the sole manager and registered agent for service of process, at 1127 Gulf Stream Lane, Key Largo, Florida 33037. *See*, Florida Secretary of State's records, Ex. B. Becker has held itself out as being the "the leading claims filing agency in Monroe County, FL, and dedicated customer of the BP Claim Pro Solution for filing BP oil spill claims for clients throughout the Florida Keys", and "processed claims valued in excess of $170 Million". *See,* BP Claim Pro article, Ex. C.

Efforts with Formento and Restivo and Reilly, LLC, former counsel for Formento, to attempt to resolve the issues presented in the accompanying Motion have not resulted in a resolution. William Becker is now deceased; efforts to resolve the issues presented with Patricia Becker, the company's current agent, likewise have not resulted in resolution.

### A. *Background*

The Claims Administrator has authority to ensure the integrity of the DHECC by initiating clawback proceedings of fraudulent claims. See Order of May 6, 2015 (Rec. Doc. 14543); Settlement Agreement at ¶ 4.3.10. The Court retains continuing jurisdiction over the Settlement Agreement. Id. at ¶¶ 4.4.7 and 18.1. Disputes concerning enforcement of the Settlement Agreement are to be resolved by motion to the Court. Id.

### B. *The DHECC Claims*

Formento filed a BEL claim with the DHECC, asking to have the claim paid on historical income as reported in monthly profit and loss statements ("P&Ls") and federal tax returns. William Becker (now deceased), of Becker, prepared the BEL claim for Formento, communicated with the DHECC on claimant's behalf, and provided documentation to the DHECC for his accounting support services.

1. General Requirements for Business Economic Loss Claims

The Settlement Agreement requires business claimants to provide the DHECC with, among other documents, federal tax returns and monthly P&Ls for the selected Benchmark Period, 2010, and, at times, 2011. *See* Settlement Agreement Ex. 4A at ¶¶ 3-4.

The DHECC calculates compensation using the data provided by claimants. The DHECC permits claimants, and the professionals retained by them, to create monthly P&Ls when the claimants did not maintain such information during their normal course of

- 3 -

business.  *See* DHECC Policy 286.  The P&Ls must be based on contemporaneous source documents, such as bank statements, invoices, and purchase orders, and must show the actual monthly revenues and expenses.  *See* DHECC Policy 355 v.2.

The BEL compensation framework consists of two steps.  The first step compensates claimants for certain reductions in their variable profits, by comparing variable profits for three or more consecutive months between May and December 2010 with variable profits for those same months during a Benchmark Period.  The second step compensates claimants for the incremental profits they might have generated in the absence of the oil spill relative to revenue from a Benchmark Period.  Claimants also receive a risk transfer premium to determine a total settlement award.

      2.     <u>Claimant's Business Economic Loss Claim and Payment</u>

Aided by Becker, Formento filed a BEL claim with the DHECC.  Because the DHECC will reimburse claimants for reasonable and necessary accounting fees related to the preparation of claims, Formento sought reimbursement for Becker's accounting support services, and authorized Becker to communicate with the DHECC on his behalf.

Becker provided the DHECC with an executed Sworn Written Statement for Claimant Accounting Support ("SWS-38"), representing that he worked "under the direct supervision of a Certified Public Accountant," whose license was active and in good standing, and the financial information provided to the DHECC was prepared on a consistent basis and the implications of information known or reasonably suspected to be untrue or inaccurate have not been ignored.  *See* Ex. D.  Becker also provided an invoice for its services.  *Id*.

On July 6, 2012, Formento filed its BEL claim with Becker's assistance, and provided the DHECC with federal tax returns and monthly P&Ls prepared using the cash method of accounting.  *See* Ex. A, Declaration at ¶¶ 5.b, 5.d.

      a.    <u>Claimant prepares and submits conflicting P&Ls</u>

On November 23, 2010 Formento filed a request for an emergency advance with the GCCF, accompanied by what were purported to be his 2008-2009 federal income tax returns. The 2008-2009 tax returns were not actually filed with the IRS until December 6, 2010 and December 17, 2010, respectively. The GCCF denied the request for an emergency advance on December 14, 2010.  Thereafter, on September 12, 2011 Formento filed a claim with the GCCF and submitted the same 2008-2009 tax returns as submitted previously, 2010 tax returns which were filed with the IRS on September 22, 2011, and monthly P&Ls for 2008-2010 (with a "print date" of September 8, 2011, the "First Set of P&Ls") showing $83,115 of annual revenue in 2008, $ 82,468 in 2009, and $52,611 in 2010.  *Id*. at ¶ 5.d. The figures reflected in the First Set of P&Ls did not match the information contained in the 2008-2009 tax returns[3], and the GCCF issued a deficiency letter to Formento on October 22, 2011.

Thereafter, on November 7, 2011, Becker  provided new P&Ls on Formento's behalf (with a "print date" of October 11, 2011, the "Second Set of P&Ls") and a letter of explanation containing Formento's signature and indicating ". . . we have asked our accountant to review and correct our P & L statements for 2009 through 2010".  *Id*. at ¶ 5.d. The Second Set of P&Ls reflected annual revenue of $130,000 in 2008, $100,000 in 2009,

---

[3] However, the First Set of P&Ls did indeed match the bank statements and other financial data later produced by Formento, so they were they correct, accurate P&Ls.

- 4 -

and $39,621 in 2010, consistent with the revenue reported on the 2008-2009 tax returns that had been submitted in 2010 and the later-filed 2010 tax returns. *Id.* at ¶ 5.d. On December 30, 2011 the GCCF issued a denial letter.

Formento then filed his BEL claim with the DHECC on July 6, 2012, supported by the same tax returns and the "Second Set" of P&Ls that had been provided to the GCCF. On October 2, 2012, a DHECC analyst contacted Becker to discuss issues identified during the accounting review and requested clarification of the income statement data and IRS transcripts for 2008-2010. *Id.* at ¶ 5.f. On October 18, 2012, the DHECC received tax transcripts for 2008-2010. *Id.* at ¶ 5.g. The tax transcripts reflected annual revenue consistent with the annual amounts reported on the second set of P&Ls and tax returns. *Id.* at ¶ 5.g.

Relying on the Second Set of P&Ls, the DHECC used the average of 2008-2009 for May – October as Formento's Benchmark Period and found as follows:

| Period | Revenue | Variable Expenses | Variable Profit |
|---|---|---|---|
| Benchmark | 68,617.90 | 13,173.28 | 55,444.62 |
| 2010 Compensation | 8,925.26 | 6,180.47 | 2,744.79 |
| | | **Lost Variable Profits:** | 52,699.83 |

From this data, the DHECC awarded and paid Formento $185,503.41, including $1,054.00 for accounting support.[4]

## C. *Evidence of the Fraudulent Claims*

The totality of the record shows that there is no genuine issue as to any material fact and that the DHECC is entitled to a judgment as a matter of law. *See* Order & Reasons on

---

[4] It is also possible that Becker received a percentage of that award under a contingency fee arrangement.

Special Master's Motion for Return of Payment at 19 (Doc. Rec. 12794) (Apr. 29, 2014) (hereinafter "Order & Reasons").

Here, the record unquestionably reveals that Formento presented the false information that Becker prepared to the Court-supervised DHECC to obtain $185,503.41 for his BEL claim from the Deepwater Horizon Trust. *See* Ex. A, Dec. at 5.o. Formento and Becker had submitted two sets of conflicting monthly P&Ls to the GCCF. The information contained in the First Set of P&Ls submitted to the GCCF when he sought an emergency advance (but not to the DHECC) presented an accurate depiction of Formento's financial status. However, when Formento filed his actual claim with the GCCF, he replaced or superseded the First Set of P&Ls by submitting the Second Set of P&Ls, and then later submitted only the Second set of P&Ls to the DHECC when he filed his BEL claim. Key financial data in the Second Set of P&Ls – the ones submitted to the DHECC - was fabricated, and contained artificial monthly revenue and expense amounts that misrepresented the finances of Formento, shifting revenue away from the compensation period and thus artificially inflating the lost variable profit. *Id*. These misrepresentations increased the award amount paid by the DHECC. *Id*. at 5.

Formento had contemporaneous financial data in the form of bank records. *Id*. at 4. The DHECC subpoenaed the bank statements which reflected monthly revenue consistent with the First Set of P&Ls which had been submitted to the GCCF, not the Second Set of P&Ls. *Id*. In fact, each month's revenue for 2008 through 2010 on the Second Set of P&Ls was different than the amounts shown in the bank records making clear that claimant increased revenue for the Benchmark months (2008-2009) and decreased revenue for the

compensation months (2010), thereby causing a larger variable loss for the award computation in order to fraudulently increase the award amount.  *Id.* at 5.o.

A comparison of the bank statements to the revenue from the Second Set of P&Ls (the ones filed with the DHECC) makes this point clear, as illustrated in the charts below. More specifically, for 2008, the revenue shifting results in a $46,884.79 increase of revenue in the period of April through December:

| Bank Statement Date | Bank Deposits | Revenue reported on P&L dated 09/06/11 | Revenue reported on P&L dated 10/11/11 | Difference |
|---|---|---|---|---|
| | | 2008 | | |
| 01/31/08 | 4,550.00 | 4,550.00 | 4,550.00 | |
| 02/28/08 | 5,437.55 | 5,437.55 | 5,437.55 | |
| 03/31/08 | 10,026.66 | 10,026.66 | 10,026.66 | |
| 04/30/08 | 7,130.00 | 7,130.00 | 17,130.00 | 10,000.00 |
| 05/31/08 | 4,525.00 | 4,525.00 | 14,525.00 | 10,000.00 |
| 06/30/08 | 5,790.00 | 5,790.00 | 15,790.00 | 10,000.00 |
| 07/31/08 | 7,500.00 | 7,500.00 | 17,500.00 | 10,000.00 |
| 08/31/08 | 7,251.00 | 7,251.00 | 14,135.79 | 6,884.79 |
| 09/30/08 | 6,130.00 | 6,130.00 | 6,130.00 | |
| 10/31/08 | 5,650.00 | 5,650.00 | 5,650.00 | |
| 11/30/08 | 2,350.00 | 2,350.00 | 2,350.00 | |
| 12/31/08 | 16,775.00 | 16,775.00 | 16,775.00 | |
| | 83,115.21 | 83,115.21 | 130,000.00 | 46,884.79 |

*Id.* at 5.j.  For 2009, the revenue shifting results in an increase of $11,512.00 in revenue in the period of April through December: (as shown on the following page)

| Bank Statement Date | Bank Deposits | 2009 Revenue Reported on P&L dated 9/8/2011 | Revenue Reported on P&L dated 10/11/2011 | Difference |
|---|---|---|---|---|
| 01/31/09 | 8,280.00 | 8,280.00 | 8,280.00 | |
| 02/28/09 | 5,850.00 | 5,850.00 | 5,850.00 | |
| 03/31/09 | 9,750.00 | 9,750.00 | 9,750.00 | |
| 04/30/09 | 3,650.00 | 3,650.00 | 5,650.00 | 2,000.00 |
| 05/31/09 | 8,883.00 | 8,883.00 | 11,883.00 | 3,000.00 |
| 06/30/09 | 15,990.00 | 15,990.00 | 17,990.00 | 2,000.00 |
| 07/31/09 | 9,000.00 | 9,000.00 | 12,000.00 | 3,000.00 |
| 08/31/09 | 6,830.00 | 6,830.00 | 8,830.00 | 2,000.00 |
| 09/30/09 | 7,270.00 | 7,270.00 | 9,270.00 | 2,000.00 |
| 10/31/09 | 2,170.00 | 0.00 | 3,532.00 | 1,362.00 |
| 11/30/09 | 5,150.00 | 1,300.00 | 1,300.00 | -3,850.00 |
| 12/31/09 | 5,665.00 | 5,665.00 | 5,665.00 | |
| | 88,488.00 | 82,468.00 | 100,000.00 | 11,512.00 |

*Id.* at 5.k.  For 2010, the revenue shifting results in reporting of $12,900.37 less in revenue in the period of April through December:

| Bank Statement Date | Bank Deposits | 2010 Revenue Reported on P&L dated 11/23/10 | Revenue Reported on P&L dated 10/11/2011 | Difference |
|---|---|---|---|---|
| 01/31/10 | 3,250.00 | 3,250.00 | 3,250.00 | |
| 02/28/10 | 5,524.95 | 5,524.95 | 5,524.95 | |
| 03/31/10 | 5,061.48 | 5,061.48 | 5,061.48 | |
| 04/30/10 | 8,520.00 | 8,520.00 | 7,820.00 | -700.00 |
| 05/31/10 | 5,838.00 | 5,838.00 | 1,195.26 | -4,642.74 |
| 06/30/10 | 2,360.00 | 2,360.00 | 760.00 | -1,600.00 |
| 07/31/10 | 7,150.00 | 7,150.00 | 1,200.00 | -5,950.00 |
| 08/31/10 | 1,700.00 | 0.00 | 600.00 | -1,100.00 |
| 09/30/10 | 1,400.00 | 1,000.00 | 3,000.00 | 1,600.00 |
| 10/31/10 | 6,730.00 | 2,170.00 | 2,170.00 | -4,560.00 |
| 11/30/10 | 1,550.00 | 4,850.00 | 2,152.37 | 602.37 |
| 12/31/10 | 3,436.94 | 6,886.94 | 6,886.94 | 3,450.00 |
| | 52,521.37 | 52,611.37 | 39,621.00 | -(12,900.37) |

*Id*. at 5.l.

The DHECC relied upon the Second Set of P&Ls to compare the pre-spill variable profit with the variable profit in the 2010 compensation period months.  Shifting the 2010 revenue away from the 2010 compensation period and understating variable profits had the effect of artificially overstating the loss resulting in a larger award calculation.  *Id*. at 5.o.

Had the figures from the bank statements been accurately reported, Formento would have received a significantly different award.  Specifically, based on the figures from the monthly bank statements, it is clear that Formento received an overpayment of approximately $114,000, when the DHECC paid him $185,503.41 on his BEL claim.  *Id*. at 5.

In addition, a DHECC investigator interviewed Formento[5] who could provide no explanation as to why the revenues reflected in his bank deposits differed from the Second Set of P&Ls submitted in support of his BEL claim.  *Id*. at 5.m.  Formento claimed he was not familiar with the  Second Set of P&Ls, however, he confirmed his signature on the letter providing to the GCCF the 2nd set of P&Ls and stating in part "As per your request we have asked our accountant to review and correct our P&L statements for 2009 through 2010. These tabulations have been entered into our revised P&L Summary as well as the Attachment A & B".  Formento also referred the DHECC investigator to his ex-girlfriend Allison Hayden, who he said dealt with Becker.

A DHECC investigator interviewed Hayden who said she assisted Formento in preparing his tax returns, and printed tax returns and P&Ls for Formento to take to Becker,

---

[5] William Becker could not be interviewed since he died in 2014. Therefore, the Court could never have the benefit of his testimony and has before it all of the pertinent evidence it would ever have.

but had no direct contact with Becker. *Id*. at 5.n. Hayden said she did not recall printing a second set of P&Ls, and was unaware that Formento submitted to the GCCF a second set of P&Ls, which in turn were submitted to the DHECC. Hayden confirmed that Formento's untimely tax returns were prepared in 2010 for purpose of Formento's claim, first presented to the GCCF, and later with the DHECC.[6] The DHECC relied on the tax returns and the fraudulent Second Set of P&Ls in calculating Formento's award.

### D. *Legal Analysis*

The Court's power to remedy fraudulent conduct is a broad, flexible and long-standing power. *See Hazel-Atlas Glass Co. v. Hartford Empire Co.,* 322 U.S. 238, 244 (1944) (affirming judicial power to set aside fraudulently begotten judgments as such cases present "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"); Order & Reasons at 21.

    1.    <u>Becker and Formento's Actions Satisfy the Elements of Fraud</u>

To prove fraud in this context, the DHECC must show that (1) Becker and Formento made a material representation; (2) their representation was false; (3) when Becker and Formento made the representation, they knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the DHECC (the other party); (5) the DHECC acted in reliance upon the representation; and (6) the DHECC suffered injury. Order & Reasons on Motion of the DHECC for Return of Payments Made to Crystal Seafood

---

[6] The revenue shifting on the Second Set of P&Ls did not result in additional taxes, as the annual revenue remained unchanged.

Company, Inc. and Others at 6 (Rec. Doc. 18456) (citing *In re Deepwater Horizon*, No. 15-30574, 2016 WL 1397663 at *3, -- F. App'x – (5th Cir. April 8, 2016); Alfonso Order at 6-7, Rec. Doc. 15400)).

Becker and Formento made material representations when they submitted financial documents purporting to accurately represent Formento's financial status before and after the spill. As shown from the evidence, these representations made by Becker and Formento through the claim filing were false. The evidence also shows that based on Formento's position within his own company and Becker's experience through the BP claims filing process, they knew the representations were false when they made them, or at the very minimum, they made the representations recklessly without any knowledge of the truth and as a positive assertion. The very act of submitting the claim, swearing under penalty of perjury to the truthfulness and accuracy of all documents contained within it, shows that Becker and Formento made the representations with the intention that the DHECC act upon them. The DHECC relied on the misrepresentations as seen through the eligibility notice to Formento, and the DHECC suffered injury as Becker and Formento's false representations significantly inflated the claim award.

In light of the evidence, the DHECC seeks an order compelling Formento and Becker to pay and return all payments made on this claim. The return of these payments will make the DHECC whole, deprive claimant and claim preparer of an unjust enrichment, and deter others from engaging in similar misconduct. See Order & Reasons at 22. Based on Formento's and Becker's conduct, they should be held liable, *in solido*, for the full amount paid by the DHECC, and should also be prohibited from receiving from or participating in any further distributions from the DHECC.

### 2. Formento and Becker Should Make Restitution to the DHECC Based on Misrepresentations of Monthly Financial Documents

The evidence shows that Formento and Becker presented false information to the DHECC to obtain compensation for Formento and for Becker's fee. They provided the DHECC with P&Ls showing annual amounts consistent with untimely federal tax returns created solely to support the claim, and in which the monthly revenue and expense amounts were manipulated to increase the DHECC award. The individual who assisted claimant in preparing the tax returns admitted to DHECC investigators that the returns were created solely for the claim.

Since Formento and Becker had prepared and presented the First Set of P&Ls to the GCCF (which matched the bank statements and other financial data later submitted), Formento and Becker had to know that the Second Set of P&Ls were false and would be provided to and relied upon by the DHECC in determining the claim. Becker holds an obligation to those he actually knew would rely on the misrepresentation in the claim accounting work. *First National Bank of Commerce v. Monco Agency Inc.*, 911 F.2d 1053, 1060-62 (5th Cir. 1990) (endorsing application of misrepresentation standard for accountants under Louisiana law and Section 552); Restatement (Second) of Torts § 552 (providing liability for those who fail to exercise reasonable care and, as a result, supply "false information for the guidance of others in their business transactions" and thereby cause a pecuniary loss).

Unlike cases where privity between the accounting work and the end user may be more remote, Becker prepared the accounting work specifically for presentation to the DHECC to induce payment of the claim. Becker owed a duty of presenting accurate

- 12 -

financial information to the DHECC, an entity charged with safeguarding a Trust benefitting those harmed by the spill.  *See United States v. Arthur Young & Co.*, 465 U.S. 805, 818 (1984) (accountants hold a "public watchdog" function that "requires complete fidelity to the public trust").

      3.      Formento Should Make Restitution to the DHECC for
             All Amounts Paid because of the Misrepresentations to the DHECC

Formento may argue that he was not responsible and that instead Becker is responsible for the misrepresentations to the DHECC.  However, restitution is an equitable remedy that deprives a party of a benefit that in good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance.  *Schock v. Nash*, 732 A.2d 217, 232-233 (Del. 1999); Order & Reasons on Special Master's Motion for Return of Payment at 20-21 & n.15 (Doc. Rec. 12794).  Whether or not Formento knew of the misrepresentations on the Second Set of P&Ls, he nevertheless has been unjustly enriched through the misstatements.

The claimants' fault or lack thereof, however, is not relevant to the obligation to make restitution of a payment not owed.  Had claimant's monthly financial condition been accurately reported, Formento would have received only a fraction of the payment from the DHECC.  If claimants were allowed to keep claim payments when such payments were not owed to them, claimants would be unjustly enriched. Thus, Formento should make restitution to the DHECC of the payments received on the claim based on the accounting data.

      4.      Becker Should be Held Liable for 100% of the DHECC Loss,
             In Solido with the Claimant

In other clawback actions, the Court has ordered restitution in the first instance primarily against the claimant(s) to whom or for whose account the DHECC payment was

made as a result of the claimant's fraudulent acts. However, the Court has also previously imposed solidary liability upon claims preparers, attorneys or other third parties (even be innocent and without fault), to the extent they were "enriched" by contingency fee payments derived from the claimants' payment awards. As the Court has noted, the restitution payments would be appropriate even without any wrongdoing or fault since the purpose of restitution is not to punish wrongdoing but to effect recovery of what was incorrectly and unjustifiably paid, in implementation of the Court's "well-recognized equitable power to devitalize a fraudulently obtained result".[7]

Apparently Becker did not receive or personally benefit to the same extent as did Formento; Formento's DHECC payment totaled $185,503.41. The amount Becker received is unclear. Notwithstanding, it is clear that not only did Becker profit out of DHECC awards made to the claimant on whose behalf it provided claims preparation services, but Becker was also the party who actually committed the fraud upon the DHECC resulting in the payments made to the claimant. As such, this Court can and should order Becker to restore to the DHECC not only any amounts actually received for services performed, but the entire amount of the loss suffered by the DHECC as a result of its fraud - regardless of the amount of actual benefit – *in solido* with the claimant.

There is substantial authority addressing whether a restitution order against a party committing fraud should be (a) limited to the amount or benefit actually received by that party, or (b) measured by the amount of loss suffered by the payor as a result of that fraud in the context of SEC civil enforcement actions. For example, in *SEC v. Contorinis*, 743 F.3d

---

[7] Order & Reasons on Motion of the Special Master for Return of Payments Made to Casey Thonn and Others (Rec. Doc. 12794)

296 (2d Cir. 2014), an insider trading case, the Court ordered the offending party to disgorge not only the profit he personally gained, but also all profits generated from his fraudulent actions.

As the *Contorinis* court noted in its footnote 5, there was earlier Fifth Circuit precedent that limited a violator's disgorgement to the amount of the fee actually received because anything above that would be considered a penalty assessment and thus be beyond the restitution remedy. *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978). Though *Blatt*'s rationale was followed by the Southern District of Texas in 2010, *SEC v. Gunn*, 2010 WL 3359465 (N.D. Tex. 2010), and by the Northern District of Georgia in 2015, *SEC v. Megalli*, 2015 WL 9703789 (N.D. Ga. 2015), since *Blatt* - though without citing or addressing Blatt - the Fifth Circuit has appeared to order disgorgement in amounts exceeding the amounts to which the party committing the fraud actually benefited in two unreported[8] decisions. *See*, *SEC v. Halek*, 537 Fed. Appx. 576 (5th Cir. 2013); *SEC v. United Energy Partners, Inc.*, 88 Fed. Appx. 744 (5th Cir. 2004).

We recognize that the rules applicable to SEC enforcement actions, where deterrence is the key objective, may differ from actions between private parties. *See*, *SEC v. Tome*, 833 F.2d 1086, 1096 (2nd Cir. 1987); *SEC v. First City Financial Corp., Ltd.*, 890 F.2d 1215, n. 24 (D.C. Cir. 1989). However, the rationale of cases like *Contorinis* is fully consistent with the Court's equitable power to fashion an appropriate restitution remedy, and is consistent with the Restatement of Restitution. As the introductory note to the "Measure of Recovery" topic of the *Restatement (First) of Restitution* I 8 2 (1937) recites:

> "In such cases [where the amount of gain may differ from the amount of loss] the measure of restitution is determined with reference to the tortiousness of the

---

[8] Under FRAP 32.1(a)(1), there is no prohibition against citing unreported decisions.

>defendant's conduct or the negligence or fault of one or both of the parties in creating the situation giving rise to the right of restitution. **If the defendant was tortious in his acquisition of the benefit, he is required to pay for what the other has lost although that is more than the recipient is benefited**" [emphasis added].

*See also*, *Halladay v. Verschoor*, 381 F.2d 100, 113 (8th Cir. 1967) (allowing restitution recovery to the extent of the loss).

Furthermore, should the Court have any pause in casting Becker in judgment, *in solido* with the claimant, for the full award based on an unjust enrichment/restitution analysis, there is ample alternative authority to do so. For notwithstanding any issue of unjust enrichment/restitution, Becker patently committed the intentional tort of common law fraud against the DHECC, causing it foreseeable damages beyond any benefit it might have received. As comment b to a later version of the Restatement recognizes:

>"With few exceptions, a claimant entitled to a disgorgement remedy in restitution might instead recover compensation for the injury caused by the defendant's tort or other breach of duty.
>
>Restatement (Third) of Restitution and Unjust Enrichment § 3 (2011).

This Court has already applied the elements of common law fraud as the predicate to its prior restitution orders, and the Court has those elements as recently adopted by the 5th Circuit in *Zirlott* and this Court in its *Crystal* Order before it in the instant motion. (*See* p. 13, *supra*). Those same elements are applicable to the intentional tort of fraud. All of those elements are satisfied as to Becker, as has been submitted by the DHECC in section D.1 of this memorandum.

Once the Court concludes that the DHECC's right to restitution is established under the Rule 56 summary judgment standard, the same standard should necessarily also be

satisfied for tort purposes since that alternative cause of action would be based on the same facts - rendering Becker liable for all foreseeable tort damages.[9]

For these reasons, Becker should be cast in judgment for the full $185,503.41 loss suffered by the DHECC, *in solido* with Formento, regardless of the amount and extent of direct benefit received.

Thus, Becker should also make restitution to the DHECC of the payments received on the claim based on the misrepresentations of the accounting data, *in solido* with Formento.

     5.     The Court Should Order the Return of All Funds Received By Professionals Who Assisted Formento to Submit a False Claim

The professionals who helped Formento the claim also should return any payment received based on Formento's claim. *See* Order & Reasons at 26, *SEC v. Blatt*, 583 F.2d 1325, 1335-36 (5th Cir. 1978). Money paid by contingency fee arrangements may be recouped through restitution where the client's judgment is reversed or voided. *See Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996); Order & Reasons at 22-23. Because no fee is due, retaining a payment made on a contingency fee contract under such circumstances would be an unjust enrichment. *Id.* at 24. Whether these professionals knew of the falsity of Formento's claim is immaterial to their duty to make restitution of sums that have been received as a result of this improper claim. Order & Reasons at 23; *Schock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999).

---

[9] Conversely, there should not be any requirement to file a separate complaint to allege fraud, or any proscription against combining restitution claims with fraud claims, where based on the same underlying facts.  As this Court has already explained in its *Thonn* decision, "the filing of a separate complaint has not historically been required when the movant seeks to reverse a judgment obtained through fraud", and relief can be granted by motion.  Thonn Order, at 15 (Rec. Doc. 12794).  Moreover, joinder of a restitution claim and an alternative tort claim is clearly permitted under FRCP 18.

Here, Formento's lawyers, Restivo and Reilly, LLC received a percentage of the awards paid to Formento for its BEL claim based upon a five percent contingency fee contract and were paid $9,275.17.  The contingency fee would not have been payable to his lawyers if the DHECC had not paid Formento's fraudulent claims. The contingency fees should be returned to the DHECC.

### E. *Conclusion*

For the reasons stated, the DHECC seeks entry of a judgment requiring (a) Formento and Becker, *in solido*, to make restitution to the DHECC for, and pay to the DHECC, the sum of $185,503.41, and (b) prohibiting any further distributions from, or participation by either of them in, the DHECC.  Further, any other professionals who have taken or received any funds from or through Formento and/or Becker should be ordered to disgorge such amounts, *in solido* with Formento and Becker, to the extent of any sums they received.

    Respectfully submitted,

    Patrick Juneau
    Claims Administrator

    By: ___/s/ Kevin Colomb _____
    Kevin Colomb
    Manager of Compliance and Internal Integrity

Dated:  August 1, 2016