# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

In Re: Oil Spill by the Oil Rig     *        MDL 2179
"Deepwater Horizon" in the Gulf of
Mexico, on April 20, 2010         *        SECTION: J

This Document Relates To:         *        JUDGE BARBIER

*Remaining Claims in B3 Bundle Against*   *        MAG. JUDGE SHUSHAN
*the Clean-Up Responder Defendants:*
    *Torrey Barlow (12-2248; 10-8888,*    *
      Rec. Docs. 61409 & 80870);*
    *Joseph Brown (12-2333; 10-8888,*    *
      Rec. Doc. 56125);*
    *Scea Burrage (10-8888, Docs. 89515*   *
      & 108885);*
    *Roy Causey (10-8888, Doc. 34909);*    *
    *Jorey Danos (13-3747);*
    *Nathan Fitzgerald (13-00650);*       *
    *Thomas Hines (13-2360; 10-8888,*
      *Docs. 22261 & 84046);*        *
    *Frank Howell (13-3747);*
    *Douglas Maurras (12-2048);*        *
    *Kirk Prest (10-8888, Doc. 89566);*
    *John Wunstell, Jr. (10-2543; 10-*     *
    *8888, Doc. 57007)*

---

## ORDER & REASONS

### [As to the Clean-Up Responder Defendants' Motions for Summary Judgment Against the Remaining B3 Plaintiffs]

On February 16, 2016, the Court dismissed with prejudice most of the claims in the "B3"

pleading bundle—the bundle containing, inter alia, claims for personal injury and wrongful death

allegedly due to exposure to oil and/or chemical dispersant following the DEEPWATER

HORIZON/Macondo Well incident—against the "Clean-Up Responder Defendants."[1] *In re: Oil*

---

[1] The "Clean-Up Responder Defendants" are O'Brien's Response Management, L.L.C. (formerly known as O'Brien's Response Management, Inc.), National Response Corporation, Marine Spill Response Corporation, Dynamic Aviation Group, Inc., Airborne Support, Inc., Airborne Support International, Inc., DRC Emergency

*Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179, 2016 WL 614690 (E.D. La. Feb. 16, 2016) (Rec. Doc. 15853).  That ruling did not dismiss, and the Court expressly reserved judgment on, claims by eleven B3 plaintiffs listed in the caption above (sometimes referred to as the "Remaining B3 Plaintiffs").[2]  The Court now turns its attention to the Remaining B3 Plaintiffs' claims against the Clean-Up Responder Defendants.

Before the Court are the Clean-Up Responder Defendants' Omnibus Motion for Summary Judgment ("Omnibus Motion") (Rec. Doc. 17643), Marine Spill Response Corporation's Motion for Summary Judgment (Rec. Doc. 17642), and Lynden Inc.'s Renewed Motion for Summary Judgment on Lack of *In Personam* Jurisdiction (Rec. Doc. 17505), all of which seek the dismissal of the B3 claims by the Remaining B3 Plaintiffs, insofar as those claims are asserted against the Clean-Up Responder Defendants.  The Court also has received and considered responses from six of the Remaining B3 Plaintiffs: John Wunstell, Jr. (Rec. Doc. 18427), Torrey Barlow (Rec. Doc. 18626), Joseph Brown (*Id.*), Kirk Prest (Rec. Doc. 18726), William and Dianna Fitzgerald, individually and on behalf of Nathan Fitzgerald (Rec. Doc. 18727), and Scea Burrage (Rec. Doc. 17730).   The Clean-Up Responder Defendants' filed a joint reply (Rec. Doc. 18847), and Lynden, Inc. filed a separate reply.  (Rec. Doc. 18832).

## I.      BACKGROUND AND PROCEDURAL HISTORY

### A.      The Incident and Resultant Oil Spill

On April 20, 2010, a blowout and explosions occurred on the DEEPWATER HORIZON semi-submersible drilling rig, which had been engaged in drilling activities in Mississippi Canyon Block 252—the location known as "Macondo"—on the Outer Continental Shelf off the

---

Services, LLC, International Air Response, Inc., Lynden, Inc., Lane Aviation, Inc., Tiger Rentals, Ltd., The Modern Group, Ltd., and The Modern Group GP-SUB, Inc.

[2] The February 16, 2016 decision also did not dismiss or otherwise address any claim asserted against any party that was not one of the specifically identified "Clean-Up Responder Defendants."

coast of Louisiana.  The HORIZON sank two days later, oil began to discharge into the Gulf of Mexico, and the flow of oil continued for three months until the well was capped on July 15, 2010. The Macondo Well was later sealed with the completion of a relief well on September 19, 2010.  Clean-up activities and efforts to minimize the impact of the spill continued for months thereafter.

This complex response effort included a variety of federal and state government entities and officials, BP Exploration & Production, Inc. and/or its affiliated entities (collectively, "BP"), who had been designated the "responsible party" for the oil spill under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 et seq., and a variety of other entities and individuals that were engaged to respond to the oil spill, including the Clean-Up Responder Defendants.  Response activities included skimming oil from the surface of the water, conducting controlled *in situ* burning of oil, placing containment and sorbent boom, onshore and beach clean-up, decontaminating vessels that engaged in various response efforts, and the application of dispersants to the surface of the Gulf of Mexico.  Dispersants "are chemical agents that emulsify, disperse, or solubilize oil into the water column or promote the surface spreading of oil slicks to facilitate dispersal of the oil into the water column," 40 C.F.R. § 300.5, and are used in oil spill response operations to reduce the impact of the spill.

### B.    The B3 Master Complaint

On August 10, 2010, the Judicial Panel on Multidistrict Litigation transferred cases arising from the DEEPWATER HORIZON incident to this Court for consolidated or coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.  *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010).  In order to facilitate the effective administration of this multidistrict litigation and the prosecution

of the coordinated actions herein, the Court established eight separate "pleading bundles" for different categories of cases and claims, including the "B3" pleading bundle, defined to concern claims relating to the post-explosion clean-up efforts, including personal injury and/or medical monitoring claims for exposure or other injury occurring after the explosion and fire of April 20, 2010. (Rec. Doc. 569 at 1-5, Rec. Doc. 983 at 2).  Pursuant to Pretrial Order No. 11 (Rec. Doc. 569), the PSC filed a "B3" Master Complaint on December 15, 2010 (Rec. Doc. 881), which was amended on March 30, 2011 (Rec. Doc. 1812) and remains the operative Master Complaint. Plaintiffs were permitted to join in the B3 Master Complaint by filing short forms pursuant to Pretrial Orders 20, 24, and 25. (Rec. Docs. 904, 982, 983).  Plaintiffs could also file individual petitions or complaints and be deemed "B3" plaintiffs.  (Rec. Doc. 983 at 2).

The B3 Master Complaint asserted various claims for relief on behalf of five categories of plaintiffs: (1) boat captains and crew involved in the Vessels of Opportunity ("VoO") Program ("VoO Plaintiffs"); (2) workers involved in decontaminating vessels; (3) other vessel captains and crew who were not involved in the VoO program; (4) clean-up workers and beach personnel who were involved in the onshore clean-up activities; and (5) residents "who live and work in close proximity to coastal waters or who otherwise allege that they were exposed to oil and/or dispersants (e.g., while on vacation)."  (Rec. Doc 1812 at ¶21).  Generally, the B3 Master Complaint alleged that plaintiffs engaged in a variety of clean-up activities and were exposed to oil, dispersants, and other chemicals while doing so as a result of various actions or omissions of, among others, the Clean-Up Responder Defendants.  Further, it alleged that the Defendants "failed to use reasonably safe dispersant chemicals or other chemicals in their attempts to respond to the oil spill, and thereby exacerbated the pollution of the Gulf of Mexico and injury to Plaintiffs," "ignored worker safety concerns," and failed to supply workers with appropriate

protective equipment such as respirators.  (*Id.* at ¶¶ 150, 156, 184, 189, 190).  The Clean-Up Responder Defendants are all named defendants in the B3 Master Complaint.  (*Id.* at ¶¶ 62-72).  Also named as defendants in the B3 Master Complaint are Nalco, which manufactured the chemical dispersant used during the response, and the entities involved in drilling the Macondo Well, such as BP.

### C.   The Clean-Up Responder Defendants' Motions to Dismiss

The Clean-Up Responder Defendants and Nalco moved to dismiss the claims asserted against them in the B3 Master Complaint, arguing, among other things, that they are entitled to derivative immunity under the Clean Water Act ("CWA"), 33 U.S.C. § 1321(j)(8), entitled to discretionary function immunity under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), and that Plaintiffs' claims are preempted by the CWA and its associated regulations. On September 30, 2011, the Court issued its Order and Reasons (Rec. Doc. 4159) granting in part and denying in part these motions to dismiss. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179, 2011 WL 4575696 (E.D. La. Sept. 30, 2011). An Amended Order and Reasons was issued on October 4, 2011, to address several non-substantive changes.  (Rec. Doc. 4209).  In that Order, the Court recognized the availability of derivative immunity to private parties.  Despite finding that derivative immunity was "not established on the face of the Complaint," the Court noted that "it seems at this point that if the facts revealed that the Clean–Up [Responder] Defendants were using dispersants as directed by the federal government, then they would be entitled to derivative governmental immunity." *Id.* at *7, 12.  The Court further held that the preemption arguments were "not established on the face of the Complaint," but found them to be "certainly plausible." *Id.* at *8, 12. The ruling made

clear that such defenses were preserved and expressly permitted them to be re-asserted at a later time. *Id.* at *12.

### D.    Limited B3 Discovery

Following the issuance of the Court's Order and Reasons, a "Schedule for Limited B3 Discovery" was designed to develop the facts necessary for the Clean-Up Responder Defendants and Nalco to "file motions renewing their preemption [and] derivative immunity arguments." (Rec. Docs. 4472, 5000).  During that time, the Clean-Up Responder Defendants served written discovery to the B3 plaintiffs and to the United States regarding preemption and immunity issues, responded to written discovery served by the PSC, produced thousands of documents, and entered into joint stipulations of fact with the United States regarding issues relevant to their derivative immunity and implied preemption arguments.  The PSC responded to the Clean-Up Responder Defendants' written discovery but did not produce any documentation which may have been in the possession of individual plaintiffs or their counsel in response to these requests. The PSC (who, at that time, was engaged in confidential settlement negotiations with BP, but not the Clean-Up Responder Defendants, with respect to the B3 claims) did not request or notice any 30(b)(6) depositions of United States or Clean-Up Responder Defendant witnesses, or any other depositions, relevant to the Clean-Up Responder Defendants' derivative immunity or preemption defenses during the B3 discovery period.[3]  On February 16, 2012, the PSC filed a motion to amend the B3 Master Complaint, which effectively sought to dismiss the Clean-Up Responder Defendants from the B3 Master Complaint *without* prejudice, while reserving the right of any individual plaintiff to later proceed with such claims. (Rec. Doc. 5718).   The Clean-Up Responder Defendants objected to the PSC's motion, unless dismissal was *with* prejudice. (Rec. Doc. 5828).  After receiving additional statements from interested parties, the Court ruled on

---

[3] The PSC did, however, take the 30(b)(6) deposition of Nalco.

April 16, 2012, that it would not dismiss, with or without prejudice, the Clean-Up Responder Defendants at that time. (Rec. Doc. 6247).

### E.       The Clean-Up Responder Defendants' Motions for Summary Judgment

Following the permitted B3 discovery period, and in accordance with the schedule set forth by the Court (Rec. Docs. 4472, 5000), the Clean-Up Responder Defendants filed in May 2012 individual motions for summary judgment, seeking dismissal with prejudice of all remaining claims asserted against them in the B3 Master Complaint.  (Rec. Docs. 6536, 6538, 6546, 6547, 6551, 6553, 6557, 6559, 6597).   The Clean-Up Responder Defendants reasserted their derivative immunity defenses and argued that they were entitled to dismissal because they performed their actions in responding to the DEEPWATER HORIZON oil spill pursuant to the authorization, direction, and ultimate control of the federal government.  They also reasserted their arguments that the plaintiffs' remaining claims should be dismissed because they conflict with, and thus are preempted by, the comprehensive federal response scheme set forth in the CWA, the Oil Pollution Act of 1990 ("OPA"), and the National Contingency Plan ("NCP") codified at 40 C.F.R. pt. 300., because the Clean-Up Responder Defendants were compelled by law to obey the federal directives issued.  Nalco also filed a motion for summary judgment that raised a similar conflict preemption defense.  (Rec. Doc. 6541)

On June 18, 2012, the PSC filed an Omnibus Opposition to the summary judgment motions.  (Rec. Doc. 6696).  Among other things, the PSC argued that the Clean-Up Responder Defendants are not entitled to derivative immunity because it is disputable whether they complied with the federal government's instructions and authorizations during the clean-up.  The PSC submitted thirteen affidavits and declarations in support of their opposition brief, which contained certain allegations concerning the response activities.   The PSC also argued that

preemption is inapplicable, citing the CWA and OPA savings clauses, as well as the CWA immunity provision for responders, 33 U.S.C. § 1321(c)(4)(B).  In addition, the PSC maintained that additional discovery is necessary to develop the factual record and that the Court should not consider the stipulations the Clean-Up Responder Defendants entered into with the federal government.  (Rec. Doc. 6696 at 25-26).

In their reply briefs, the Clean-Up Responder Defendants highlighted the Court's previous ruling that derivative immunity and implied preemption were available in this context and reiterated why they are entitled to these defenses based on the undisputed facts submitted.  (Rec. Docs. 6842, 6843, 6845, 6849, 6852, 6854, 6859, 6878, 6897).  The reply briefing also argued that the affidavits and declarations submitted by the PSC failed to raise a genuine issue of material fact, that the PSC had a full and fair opportunity to conduct additional discovery, but made the strategic decision not to do so, and that the request for further discovery should be rejected.  The Clean-Up Responder Defendants similarly noted that the PSC did not provide any objections to the stipulations between the Clean-Up Responder Defendants and the United States at the time set forth in the Court's discovery schedule, and failed to offer any competent evidence to refute their contents.

The United States also submitted a statement of interest in connection with the PSC's Omnibus Opposition, highlighting that the United States "undertook significant efforts to review the documentary evidence available and canvass the relevant witnesses to assemble stipulations that were eventually served on the other parties."  (Rec. Doc. 6851 at 1).  Among other things, the United States noted that it "responded to a large number of Requests for Admission served by BP and other parties that relate to dispersant use," and that "[t]he limited B3 discovery order . . . allowed all parties, not just defendants, to request documents and/or depositions, . . . [such that]

the PSC had the opportunity to contest the stipulations with written discovery or deposition requests . . . but did not do so." (Rec. Doc. 6851 at 1-2).

Oral argument was held in connection with the Clean-Up Responder Defendants' and Nalco's summary judgment motions on July 13, 2012, and the Court took them under advisement. On November 28, 2012, the Court granted Nalco's motion for summary judgment (Rec. Doc. 8037), concluding that the claims against it were preempted by the CWA and the NCP. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179, 2012 WL 5960192 (E.D. La. Nov. 28, 2012). That ruling did not address the Clean-Up Responder Defendants' motions, however.

### F.     The Medical Benefits Class Action Settlement

On January 11, 2013, the Court issued its approval order and judgment (Rec. Docs. 8217, 8218), granting final approval of the Medical Benefits Class Action Settlement ("Medical Benefits Settlement"), which resolved certain claims of individuals engaged as clean-up workers and residents of particular geographical boundaries in the Gulf of Mexico related to their exposure to oil and/or dispersants arising from the DEEPWATER HORIZON incident and subsequent response efforts. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 295 F.R.D. 112 (E.D. La. 2013). The Medical Benefits Settlement became effective on February 12, 2014.

Medical Benefits Settlement class members ("Medical Class") who did not wish to be bound by the Medical Benefits Settlement were required to exclude themselves, or "opt out," pursuant to the procedures set forth in Section XI.E of the Medical Benefits Settlement (Rec. Doc. 6427-1) and Paragraph 29 of the Court's Preliminary Approval Order concerning the Medical Benefits Settlement (Rec. Doc. 6419), as amended by the Court's Order extending the

opt-out deadline to November 1, 2012. (Rec. Doc. 7176).  Thus, any plaintiff who is a member of the Medical Class and did not opt out by the deadline set by the Court is now bound by the Medical Benefits Settlement.  As all of the Clean-Up Responder Defendants are released parties under the Medical Benefits Settlement (Rec. Doc. 6427-8), only opt-out plaintiffs may proceed with exposure-based claims, including claims of personal injury, medical monitoring, loss of consortium, or wrongful death, against the Clean-Up Responder Defendants.

### G.     Pretrial Order No. 57

At a June 27, 2013 Status Conference, the Court addressed the Clean-Up Responder Defendants' pending motions for summary judgment and stated that the Clean-Up Responder Defendants would be entitled to derivative immunity for the actions that are the subject of the B3 Master Complaint if they acted pursuant to the direction of the federal government during the DEEPWATER HORIZON response.  The Court also noted that the affidavits and declarations submitted by the PSC in opposition to the Clean-Up Responder Defendants' motions for summary judgment contained only vague and generalized statements.  Nevertheless, the Court indicated that it may be possible that some B3 claimants have evidence that the Clean-Up Responder Defendants acted beyond, or outside, the authority conferred by the federal government during these clean-up response operations.  Accordingly, the Court instructed Plaintiffs' Liaison Counsel and Defense Liaison Counsel for the Clean-Up Responder Defendants to develop a protocol akin to a *Lone Pine* Order whereby B3 claimants would be required to provide basic evidence to support their claims, ultimately permitting the Court to rule on the Clean-Up Responder Defendants' pending summary judgment motions ("the B3 protocol").

Following the efforts of Liaison Counsel for the parties, on July 17, 2014, the Court entered Pretrial Order No. 57 ("PTO 57"), formally establishing the B3 protocol. (Rec. Doc. 13158). PTO 57 made clear that the purpose of the B3 protocol was, among other things, to give plaintiffs an opportunity to come forward with specific evidence, should they have any, demonstrating that the actions of the Clean-Up Responder Defendants were not performed "pursuant to the authorization, direction, and ultimate control of the federal government." (*Id.* at 1-2). Plaintiffs who (1) properly opted out of the Medical Benefits Settlement or are not a member of the Medical Class, (2) desired to pursue a claim against any Clean-Up Responder Defendant(s) arising out of the clean-up, including personal injury and/or medical monitoring claims alleging exposure to oil, dispersants, chemicals, and/or toxic substances used during the clean-up, whether by joinder in the B3 Master Complaint, individual complaint, or otherwise, and (3) had evidence that any Clean-Up Responder Defendant(s) acted beyond or outside of the authority conferred by the federal government, were instructed to serve Liaison Counsel for the Clean-Up Responder Defendants and Plaintiffs' Liaison Counsel with a sworn statement setting forth certain information by September 22, 2014. (Rec. Doc. 13158 at 6). The form for such a sworn statement, or "Questionnaire," was attached to PTO 57 as Exhibit A. (Rec. Doc. 13158-1).

PTO 57 required that plaintiffs provide: (1) certain employment-related information, if they served as a clean-up worker during the Deepwater Horizon oil spill response; (2) a specific explanation of the circumstances of alleged exposure, including the pathway of exposure, the date(s), time(s), and location(s) of exposure, the duration of exposure, and the Clean-Up Responder Defendant(s) alleged to be responsible for the exposure; (3) a specific description of the alleged injury, illness, or medical condition sustained as a result of such exposure; (4) the

basis for the identification of each Clean-Up Responder Defendant alleged to be responsible for such exposure, the act(s) or omission(s) that caused Plaintiff's injury, illness, or medical condition as well as the date(s), time(s), and location(s) of such act(s) or omission(s) and the circumstances under which it/they arose, and how the act(s) or omission(s) caused their injury, illness, or medical condition; and (5) details and specific evidence regarding how the previously-identified act(s) or omission(s) violated or exceeded the federal government's instruction(s) or order(s), or was/were undertaken without any such instruction(s) or order(s), and led to the alleged injury, illness, or medical condition.  (Rec. Doc. 13158 at 6-9).

On September 22, 2014, several plaintiffs who had previously filed B3 individual actions against various Clean-Up Responder Defendants moved for an extension of time to file a response to PTO 57.  (Recs. Docs. 13422, 13426).  Specifically, these plaintiffs requested an extension of time to respond until the discovery stay in their individual cases is lifted and they can conduct "adequate discovery," or in the alternative, 60 days from the date they received information responsive to their pending Freedom of Information Act requests.  The Court held that such relief would "negate[] the purpose of the PTO 57 protocol," denied the motions, and instructed these Plaintiffs to comply with PTO 57 within fourteen calendar days. (Rec. Doc. 13439).

Pursuant to PTO 57, the PSC and the Clean-Up Responder Defendants, by and through Plaintiffs' Liaison Counsel and Defense Liaison Counsel, developed a Joint Report Regarding Claimants' Compliance with PTO 57 ("Joint Report") and submitted it to the Court on November 14, 2014.  (Rec. Doc. 13667).  In the Joint Report, the parties advised the Court that they complied with the notice procedures set forth in PTO 57 and that they had received 102 Questionnaires.  The parties also advised the Court that they had agreed to several groupings

with respect to compliance with PTO 57, namely those Questionnaires that: (1) were served past the deadline; (2) were submitted by clean-up workers who did not opt out of the Medical Benefits Settlement; (3) were "blank," in that they did not provide information in response to any of the questions posed in the Questionnaire; (4) provided information in response to some, but not all, of the questions posed in the Questionnaire; and (5) provided a written response to all questions posed in the Questionnaire.   The fifth group contained the eleven Remaining B3 Plaintiffs.

On January 7, 2016, the Court issued an Order to Show Cause, indicating that it had considered the briefing related to the Clean-Up Responder Defendants' summary judgment motions, as well as the Joint Report, and was prepared to dismiss most of the B3 claims against the Clean-Up Responder Defendants with prejudice.  (Rec. Doc. 15711).  The Order directed plaintiffs opposed to the dismissal of their B3 claims(s) with prejudice to show cause in writing on or before January 28, 2016, why the Court should not dismiss their claim(s).  Eight plaintiffs responded to the Show Cause Order.  On February 16, 2016, the Court overruled these objections (Rec. Doc. 15852) and issued an Order & Reasons (Rec. Doc. 15853) that granted summary judgment and dismissed all of the B3 claims against the Clean-Up Responder Defendants, except for claims by the Remaining B3 Plaintiffs.  *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179, 2016 WL 614690 at *15 (E.D. La. Feb. 16, 2016).  The Court reserved judgment with respect to these eleven plaintiffs.

### H.   Present Motions

On April 8, 2016, the Court issued a briefing schedule inviting the Clean-Up Responder Defendants to file motions targeting the remaining B3 claims against them.  (Rec. Doc. 16165). The Clean-Up Responder Defendants jointly filed the instant Omnibus Motion, arguing that none

of the eleven Questionnaires raise a genuine issue of fact material as to their entitlement to immunity under the CWA or the FTCA or to the applicability of implied conflict preemption. (Rec. Doc. 17643).  Specifically, they argue that none of the remaining B3 plaintiffs have offered competent evidence that any Clean-Up Responder Defendant violated or exceeded an instruction or order issued by the federal government, or acted without its authority, in performing response activities.  One of the Clean-Up Responder Defendants, Marine Spill Response Corporation, also filed its own motion, which supplemented the Omnibus Motion with facts and arguments specific to it.  (Rec. Doc. 17642).  Lynden, Inc., another Clean-Up Responder Defendant, also filed a "Renewed Motion for Summary Judgment on Lack of *In Personam* Jurisdiction."  (Rec. Doc. 17505).

Some of the Remaining B3 Plaintiffs responded with their own motion under Federal Rule 56(d), requesting permission to conduct discovery and an additional 120 days to respond to the Clean-Up Responder Defendants' motions (Rec. Doc. 18404).  The Clean-Up Responder Defendants opposed this request, arguing, inter alia, that the plaintiffs failed to provide any details or reasoning whatsoever as to why additional discovery was warranted and how such discovery would inform the factual question at issue, as required under Rule 56(d).  (Rec. Doc. 18438).  The Court granted plaintiffs a two-week extension to the response deadline, but it otherwise denied the motion "for reasons stated by the Clean-Up Responder Defendants."  (Rec. Doc. 18483).

Six of the Remaining B3 Plaintiffs then filed responses to the summary judgment motions (Rec. Docs. 17730, 18427, 18626, 18726, 18727), and the Clean-Up Responder Defendants replied (Rec. Docs. 18847, 18832).  The Court then took the matter under advisement.

14

## II.    DISCUSSION

### A.    The Omnibus Motion

The Court first considers the Clean-Up Responder Defendants' Omnibus Motion.  For essentially the same reasons expressed in the February 16, 2016 Order & Reasons, the Clean-Up Responder Defendants have carried their initial burden on summary judgment of showing they are entitled to derivative immunity and/or the remaining B3 claims are preempted.  *See In re: Oil Spill*, 2016 WL 614690 at *9-*11.  The burden now shifts to the Remaining B3 Plaintiffs to show that there is a genuine issue for trial.  *See Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014).

> 1.    *Roy Causey, Jorey Danos, Thomas Hines, Frank Howell, Doug Maurras, and John Wunstell, Jr.*

Six of the eleven Remaining B3 Plaintiffs do not oppose or failed to oppose the Omnibus Motion.  Roy Causey, Jorey Danos, Frank Howell, Thomas Hines, and Doug Maurras did not file a response with the Court.   John Wunstell, Jr. filed a response stating that he "does not substantively oppose the [Omnibus] Motion." (Rec. Doc. 18427).[4]  Consequently, the Court considers the Clean-Up Responder Defendants' joint motion to be unopposed by these six B3 Plaintiffs.  Because the Clean-Up Responder Defendants have met their burden on summary judgment, the Court will dismiss with prejudice the B3 claims of Roy Causey, Jorey Danos, Frank Howell, Thomas Hines, Doug Maurras, and John Wunstell, Jr. insofar as those claims are asserted, or could have been asserted, against the Clean-Up Responder Defendants.

---

[4]  Wunstell also made clear that he reserved his rights to proceed against the BP with respect to his personal injury (exposure) claims.  According to Wunstell, "[d]ismissal of the Cleanup Responder Defendants does not limit, reduce or exclude any cause of action against the BP Defendants named in his Complaint for the conduct stated therein." (Rec. Doc. 18427) (citations omitted).

2.    *Torrey Barlow*

Torrey Barlow[5] stated in his PTO 57 Questionnaire that he performed oil spill response activities from the vessel ODYSSEA ATLAS where he handled oil- and dispersant- covered boom, resulting in his injuries.  (Ex. 18 to Omnibus Mot., Rec. Doc. 17643-22).  Barlow's Questionnaire further states that the ODYSSEA ATLAS was under the direction and control of Global Fabrication, LLC and Lawson Environmental and that these entities failed to provide him with adequate protective equipment.  Global Fabrication, LLC and Lawson Environmental are not "Clean-Up Responder Defendants," therefore Barlow's allegations against them are irrelevant to the instant motion.  Barlow's Questionnaire does not mention any Clean-Up Responder Defendant.  In his response to the Omnibus Motion, Barlow now attempts to implicate O'Brien's Response Management, L.L.C. ("O'Brien's"), a Clean-Up Responder Defendant.  Barlow states in his response that "[f]ollowing the filing of his Complaint [on September 11, 2012], Mr. Barlow discovered that the M/V Odyssea Atlas . . . was leased, chartered, contracted for, and/or under the direction and control of O'Brien's"; that O'Brien's failed to provide Barlow with adequate protective equipment, etc.; and that Barlow intends to move for leave to amend his complaint to add O'Brien's as an additional defendant.  (Rec. Doc. 18626 at 2 & n.2).

The purpose of PTO 57 was to "establish a protocol for specific disclosures clarifying the basis for the 'B3' claims asserted against the Clean-Up Responder Defendants" so as to "permit[] the Court to rule on the Clean-Up Responder Defendants' pending summary judgment motions." (Rec. Doc. 13158 at 1, 5).[6]  PTO 57 and the Questionnaire specifically asked plaintiffs to

---

[5] Torrey Barlow entered this litigation by filing two short form joinders (No. 10-8888, Rec. Docs. 61409, 80870) and a complaint (No. 12-2248).

[6] PTO 57 also stated, "The *Lone Pine*-type protocol articulated below will assist the Court to streamline the remaining B3 claims, rule on the Clean-Up Responder Defendants' pending summary judgment motions, and

identify "the Clean-Up Responder Defendant(s) alleged to be responsible for his exposure." (Rec. Doc. 13158-1 ¶ 2).[7]   PTO 57 warned that failure to comply with PTO 57's requirements would subject the plaintiff's claims against the Clean-Up Responder Defendants to dismissal. (Rec. Doc. 13158 at 9-10).   As explained, Barlow did not mention O'Brien's or any other Clean-Up Responder Defendant in his Questionnaire.   Consequently, the Court will not consider Barlow's eleventh-hour attempt to assert claims and evidence against O'Brien's.   The Court will dismiss with prejudice Torrey Barlow's B3 claims, whether alleged or not, against the Clean-Up Responder Defendants, including O'Brien's.

### 3.   *Scea Burrage*

Scea Burrage,[8] who is pro se, stated in her PTO 57 Questionnaire that she was not a cleanup worker; rather, she lives near the coast where she smelled fumes in the air and became ill.   (Ex. 21 to Omnibus Mot., Rec. Doc. 17643-25).   Her questionnaire does not mention a Clean-Up Responder Defendant, much less assert that a Clean-Up Responder Defendant took an action that was not pursuant to the authorization, direction, and ultimate control of the federal government.   This trend continues in her response to the Omnibus Motion.   (Rec. Doc. 17730). Burrage attaches to her response medical bills to support her claim that she was injured by exposure to oil and/or dispersant (*id.* at 17-22), but this evidence has no bearing on whether the Clean-Up Responder Defendants are entitled to their derivative immunity or preemption defenses.   Burrage also submits a picture of a clean-up worker and writes "No face mask . . . Not properly protected from oil contact." (*Id.* at 15).   Assuming that this picture depicts a worker from the DEEPWATER HORIZON response, it is irrelevant to Burrage's claims given her

---

[7] Both PTO 57 and the Questionnaire listed O'Brien's as one of the "Clean-Up Responder Defendants."
[8] Scea Burrage entered this litigation by filing two short form joinders.   (No. 10-8888, Rec. Docs. 89515, 10885).

facilitate the administration of this MDL and the prosecution of the coordinated actions herein." (Rec. Doc. 13158 at 5-6).

admission that she is not a clean-up worker.  Burrage also attaches a picture of an airplane spraying chemical dispersant over water.  (*Id.* at 16).  Assuming that this picture is also from the DEEPWATER HORIZON response, there is nothing to suggest that this spraying occurred without federal authorization or outside the scope of same.  In short, Scea Burrage has not shown that the Clean-Up Responder Defendants are not entitled to summary judgment against her claims.  The Court will dismiss with prejudice Torrey Barlow's B3 claims, whether alleged or not, against the Clean-Up Responder Defendants.

### 4.   *Kirk Prest*

In his PTO 57 Questionnaire, Kirk Prest[9] claimed to have performed a number of jobs during the response such as wildlife search and rescue, oil search and reporting, and monitoring and overseeing bird scare cannons.  (Ex. 31 to Omnibus Mot., Rec. Doc. 17643-35).  Prest's Questionnaire does not mention any of the Clean-Up Responder Defendants; he claims instead that his injuries are "BP's responsibility and ultimate obligation" because "BP failed to provide any protective equipment during the clean up activities" and "provided no safety during the clean up." (*Id.*)  In his response to the Clean-Up Responder Defendants' Omnibus Motion, Prest attempts to lay blame on all of the Clean-Up Responder Defendants.  However, like Barlow, this attempt comes too late, and, in any respect, the allegations in Prest's declaration are too vague to create a genuine issue of fact.  The Court will dismiss with prejudice Prest's B3 claims, whether alleged or not, against the Clean-Up Responder Defendants.

### 5.   *Nathan Fitzgerald*

Nathan Fitzgerald died on April 9, 2012.  In 2013, his parents filed a lawsuit on his behalf and their own, which was consolidated with this MDL.  (No. 13-0650).  Fitzgerald's father submitted a PTO 57 Questionnaire stating that Nathan Fitzgerald was employed by DRC

---

[9] Kirk Prest entered this litigation by filing a short form joinder.  (No. 10-8888, Rec. Doc. 89566).

Emergency Services, LLC ("DRC") during the response to work aboard vessels that recovered oil-saturated boom.  (Ex. 26 to Omnibus Motion, Rec. Doc. 17643-30).[10]  The Questionnaire asserts that Fitzgerald was exposed to oil and chemical dispersant while performing this work, which caused him to develop acute biphenotypic leukemia.  Notably, the Questionnaire also states that DRC did not provide Fitzgerald with any personal protective equipment ("PPE").

DRC is one of the "Clean-Up Responder Defendants."  According to a declaration by DRC's Chief Operating Officer, DRC entered into a contract with BP to conduct certain response activities during the oil spill.  (Rec. Doc. 6559-2 ¶ 3).  These activities included contracting with and mobilizing local vessel owners to perform oil spill response activities, employing vessels to collect and contain spilled oil, and beach and marsh clean-up operations. (*Id.* ¶ 5).  DRC does not dispute that it employed Fitzgerald during the response.

Although DRC was BP's contractor, it claims that it was subject to the ultimate authority and direction of the federal government during the oil spill response.  (*Id.* ¶ 3).  Consistent with this assertion, DRC admits that "[t]he oil spill response actions performed during the *Deepwater Horizon* clean-up effort had to comply with the U.S. Occupational Safety and Health Administration's ("OHSA") Hazardous Waste and Emergency Response Standard."  (Defs.' Stmt. of Uncontested Facts ¶ 14, Rec. Doc. 17643-2).  OSHA prepared a "PPE Matrix" for the response that, as described by DRC, details the "minimum [PPE] requirements and additional considerations by task."  (*Id.* ¶ 21; Ex. 11 to Omnibus Mot., Rec. Doc. 17643-15).  DRC further admits that, when PPE was required, employers were responsible for providing it to their employees. (Def.'s Stmt. of Uncontested Facts ¶ 24, Rec. Doc. 17643-2).  According to the PPE Matrix, a "Barrier Apron and/or Barrier Sleeves and/or Barrier Pants" is required when

---

[10] The Questionnaire mentions other businesses that employed Fitzgerald or trained him.  However, these entities are not Clean-Up Responder Defendants and, therefore, are irrelevant to the instant motion.

performing offshore boom retrieval.  (Ex. 11 to Omnibus Mot., Rec. Doc. 17643-15).  The Matrix also indicates that additional PPE, such as nitrile gloves, a breathable barrier suit, and/or an impervious suit may be required under certain circumstances when performing this task.

DRC argues that Fitzgerald's evidence is too vague to raise a genuine issue of material fact.  The Court does not agree.  Given that DRC was required, as Fitzgerald's employer, to provide Fitzgerald with some PPE intended to mitigate chemical exposure, and considering that DRC allegedly supplied Fitzgerald with *no* PPE, there is at least a genuine dispute as to a material fact as to whether DRC complied with an applicable and relevant federal regulation or directive during the response.[11]  Accordingly, DRC is not entitled to a derivative immunity defense or a preemption defense as a matter of law; the Court will deny the motion for summary judgment insofar as it relates to DRC.  However, because Fitzgerald does not have any evidence that would defeat summary judgment with respect to the other Clean-Up Responder defendants, the Court will grant summary judgment in their favor and dismiss with prejudice Fitzgerald's and his parents' B3 claims asserted against the Clean-Up Responder Defendants other than DRC.

### 6.     *Joseph Brown*

Joseph Brown[12] stated in his PTO 57 Questionnaire that DRC chartered his 25-foot vessel as part of the Vessels of Opportunity Program.  (Ex. 19 to Omnibus Mot., Rec. Doc. 17643-24).  While under charter, Brown supplied boom to other vessels, set anchors to hold boom in place, and maintained and repaired existing boom.  Brown further claims that he "was specifically instructed by agents/representatives of [DRC] not to wear protective safety equipment" and that "[d]ue to the absence of necessary protective equipment, [he] inhaled toxic

---

[11] DRC also contends that the evidence submitted with Fitzgerald's response to the Omnibus Motion—an unsworn statement by the Fitzgeralds' attorney—is inadmissible because it is neither sworn nor based on the attorney's personal knowledge.  However, the Court has not relied on the attorney's statement; rather, it has relied on Fitzgerald's father's sworn statement in the PTO 57 Questionnaire, the admissibility of which DRC does not attack.
[12] Joseph Brown filed a short form joinder (No. 10-8888, Rec. Doc. 56125) and a complaint (No. 12-2333).

fumes and experienced dermal contact with contaminated water," resulting in his injuries.  (*Id.* at 3).

DRC argues that it is not Brown's "employer" and therefore not responsible for providing Brown with PPE.  DRC points out that the charter party states that Brown is an "independent contractor" and not DRC's employee.  (Ex. 20, art. 17, to Omnibus Motion, Rec. doc. 17643-24). The charter party also states that BP would ensure that vessel crews engaged in oil spill response activities would receive all necessary PPE and training.  (*Id.* art. 2).  Brown responds by briefly asserting in a footnote that DRC is a "creating employer," "exposing employer," "correcting employer," and/or "controlling employer" under OSHA's Multi Employer Citation Policy, CPL 02-0.124.

If DRC was required to provide Brown with PPE and/or training, then, as with Nathan Fitzgerald, there would be a material issue of fact as to whether DRC complied with an applicable and relevant federal regulation or directive during the response.  However, the issue of whether DRC was Brown's "employer" or was otherwise responsible for providing Brown with PPE and/or training is inadequately developed.  Consequently, the Court will deny summary judgment at this time insofar as it relates to DRC, but the issue of whether DRC was Brown's "employer" or was otherwise responsible for providing Brown with PPE, training, etc., is preserved.  Nevertheless, the Court will dismiss with prejudice Brown's B3 claims asserted against the Clean-Up Responder Defendants other than DRC, because Brown does not have any evidence that would defeat summary judgment with respect to them.

### B.    Remaining Motions

As mentioned, Marine Spill Response Corporation filed its own motion for summary judgment, which supplemented the Omnibus Motion with facts and arguments specific to Marine

Spill Response Corporation.  (Rec. Doc. 17642).  For the reasons provided above, the Court will grant that motion.

Lynden, Inc. filed a "Renewed Motion for Summary Judgment on Lack of *In Personam* Jurisdiction."  (Rec. Doc. 17505).  Because the Court has granted the Omnibus Motion and dismissed any B3 claims against Lynden, Inc., this motion is moot.

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Clean-Up Responder Defendants' Omnibus Motion for Summary Judgment (Rec. Doc. 17643) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the B3 claims by nine of the Remaining B3 Plaintiffs—Torrey Barlow (12-2248; 10-8888, Rec. Docs. 61409 & 80870), Scea Burrage (10-8888, Docs. 89515 & 108885), Roy Causey (10-8888, Doc. 34909), Jorey Danos (13-3747), Thomas Hines (13-2360; 10-8888, Docs. 22261 & 84046), Frank Howell (13-3747), Douglas Maurras (12-2048), Kirk Prest (10-8888, Doc. 89566), and John Wunstell, Jr. (10-2543; 10-8888, Doc. 57007)—against all of the Clean-Up Responder Defendants listed in footnote 1, *supra*, are DISMISSED WITH PREJUDICE, whether those claims are asserted by joinder in the B3 Master Complaint, individual complaint, or otherwise.

IT IS FURTHER ORDERED that the B3 claims by Nathan Fitzgerald (13-00650) and Joseph Brown (12-2333; 10-8888, Rec. Doc. 56125) against the Clean-Up Responder Defendants listed in footnote 1, *supra*, <u>except</u> for DRC Emergency Services, LLC are DISMISSED WITH PREJUDICE, whether those claims are asserted by joinder in the B3 Master Complaint, individual complaint, or otherwise.  The B3 claims of Nathan Fitzgerald and Joseph

22

Brown against DRC Emergency Services, LLC are preserved and subject to further proceedings of this Court.

IT IS FURTHER ORDERED that Marine Spill Response Corporation's Motion for Summary Judgment (Rec. Doc. 17642) is GRANTED.

IT IS FURTHER ORDERED that Lynden Inc.'s Renewed Motion for Summary Judgment on Lack of *In Personam* Jurisdiction (Rec. Doc. 17505) is MOOT.

This Order & Reasons does not dismiss or otherwise affect claims against any defendants who are not the "Clean-Up Responder Defendants" listed in footnote 1, *supra*.

Signed in New Orleans, Louisiana, this 2nd day of August, 2016.

_____
United States District Court

**Note to Clerk:**
Mail a copy of this Order & Reasons to Scea Burrage (10150 Woodie Lane, Irvington, AL 36544), who is *pro se*.