UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  Oil Spill by the Oil Rig** **"Deepwater Horizon" in the Gulf** **of Mexico, on April 20, 2010** *This Document Relates to:* Nos. 12-970, 15-4143, 15-4146 and 15-4654 | **MDL No. 2179** **SECTION: J** **JUDGE BARBIER** **MAGISTRATE WILKINSON** |

**FINAL APPROVAL BRIEF**

**[Halliburton-Transocean Settlements]**

## Introduction

Based on the Court's prior rulings in this litigation, there can be no serious question as to the propriety of the Halliburton-Transocean Class Settlements:

1. The Court has already fully and finally approved a larger and more diverse settlement class for certification under Rule 23(b)(3);[1]

2. The Phase One and Phase Two Trial proceedings further and conclusively establish the existence of common and predominant issues under Rule 23(a)(2) and (b)(3) which can be, and in fact were, manageably and effectively tried on a common and class-wide basis;[2] and,

3. Because, based on the Court's liability findings, neither Halliburton nor Transocean is liable for punitive damages to the members of the plaintiff class,[3] the relief provided is clearly fair, reasonable and adequate, under Rule 23(e).

For these reasons, for the reasons previously stated in the Court's Preliminary Approval Order,[4] for the reasons provided in the attached Exhibits and other references, and for the reasons outlined further below, the Halliburton and Transocean Settlements should be fully and finally approved by the Court.

---

[1] ORDER AND REASONS [Rec. Doc. 8138] (Dec. 21, 2012) (reported at: In re Deepwater Horizon, 910 F.Supp.2d 891 (E.D.La. 2012)), aff'd, 739 F.3d 790 (5th Cir. 2014) ("Deepwater Horizon II"), rehearing en banc denied, 756 F.3d 320 (5th Cir. 2014), cert. denied, 135 S.Ct. 754 (2014).

[2] FINDINGS OF FACT AND CONCLUSIONS OF LAW – PHASE ONE TRIAL (corrected) [Rec. Doc. 13381-1] (Sept. 4, 2014) (rev. Sept. 9, 2014) (reported at: In re Deepwater Horizon, 21 F.Supp.3d 657 (E.D.La. 2014)), and FINDINGS OF FACT AND CONCLUSIONS OF LAW – PHASE TWO TRIAL [Rec. Doc. 14021] (Jan. 15, 2015). While the claims in the Transocean Limitation Action were not technically certified for class treatment under Rule 23, the common liability issues were tried on behalf of all claimants-in-limitation in one proceeding in much the same way that the common issues would be tried in a certified class action on a common and class-wide basis.

[3] PHASE ONE FINDINGS, p.135 ¶543 and p.152 ¶612 (Deepwater Horizon, 21 F.Supp.3d at 746-747 and 757); (see also PHASE TWO FINDINGS, p.37 ¶250). In addition, with respect to the claims that were assigned to the existing Economic & Property Damages Settlement Class, the Court found that the contractual indemnities and releases running in favor of Halliburton and Transocean were fully valid and enforceable. See PHASE ONE FINDINGS, pp.144-145 ¶¶583-585 and p.153 ¶615 (Deepwater Horizon, 21 F.Supp.3d at 752 and 757).

[4] Rec. Doc. 16183 (April 12, 2016).

## Table of Contents

Introduction . . . . . . . . . . . 2

Table of Contents . . . . . . . . . 3

The New Punitive Damages Class Satisfies the Requirements of Rule 23 . . 4

       Rule 23(a) Prerequisites . . . . . . . 4

           Numerosity . . . . . . . . 4

           Commonality . . . . . . . . 5

           Typicality . . . . . . . . 5

           Adequacy of Representation . . . . . . 6

           Presence of an Ascertainable Class . . . . . 6

       Rule 23(b)(3) Requirements . . . . . . 7

           Predominance of Common Issues . . . . . 7

           Superiority . . . . . . . . 9

The Settlements are Fair, Reasonable and Adequate . . . . . 9

       The Allocation between the Existing BP Economic Class and the
New Class was Well-Considered, and is Fair to Both Classes . . 10

       The Distribution Model for the New Class was Well-Considered
and is Fair to the Members of the New Class . . . . . 11

       The Settlements Satisfy the *Reed* Factors, and Are Fair, Reasonable and
Adequate with Respect to Both Classes . . . . . 12

The Class Notice was Effective and Sufficient under Due Process and Rule 23 . 14

The Common Benefit Attorneys Fees Are Reasonable and Appropriate . . 15

List of Exhibits . . . . . . . . 19

List of Additional References . . . . . . . 20

Conclusion . . . . . . . . . 21

Certificate of Service . . . . . . . . 23

## The New Punitive Damages Class Satisfies the Requirements of Rule 23

The New Punitive Damages Class, defined at pages 19-21 of the Preliminary Approval Order,[5] fully satisfies both the prerequisites of Federal Rule of Civil Procedure 23(a) and the further requirements of Rule 23(b)(3).

### Rule 23(a) Prerequisites

The New Punitive Damages Class satisfies the four prerequisites enumerated in Rule 23(a) – *i.e.* numerosity, commonality, typicality, and adequacy of representation – as well as the judicially established requirement for an objectively ascertainable class.

### Numerosity

Based on the most recent BP Economic Settlement Program Status Report, over 113,000 people and businesses located in the Gulf Coast Area submitted Seafood, Coastal, Wetlands, Subsistence, Vessel Damage and Real Property Sales Claims to the *Deepwater Horizon* Settlement Program, with over 84,000 such Claims determined to be Eligible for compensation thus far.[6]  As many, if not all, of these claimants, (as well as some people, businesses and local government entities that opted out or were excluded from the BP Economic Class), fall within the Halliburton-Transocean New Punitive Damages Class, the numerosity requirement is clearly satisfied.[7]

---

[5] Rec. Doc. 16183 (April 12, 2016), Section II ¶(3)(a).

[6] *See generally* STATUS REPORT FOR THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT PROGRAM - Ex. A (July 1, 2016) [Rec. Doc. 21365-1] at pp.1-2.  These figures do not include the BEL or IEL Claims of Charterboat owners and/or fishermen, who may additionally be eligible for compensation from the New Halliburton-Transocean Settlement Class.

[7] *See generally* KLONOFF DECLARATION (Aug. 5, 2016) (submitted herewith as Exhibit 1) at p.20 ¶¶58-59; PRELIMINARY APPROVAL ORDER [Rec. Doc. 16183] (April 12, 2016) at p.22 ¶8(b); Mullen v. Treasure Chest Casino, 186 F.3d 620, 624 (5th Cir. 1999).

*Commonality*

The claims of the New Classmembers against Halliburton and Transocean are replete with common questions of fact and law, as defined by the U.S. Supreme Court in *Wal-Mart v. Dukes,*[8] and the U.S. Fifth Circuit Court of Appeals.[9]  The punitive damage claims sought to be certified and resolved herein all arise under a common body of general maritime law.  The Phase One and Phase Two Trial proceedings conclusively establish that the material factual and legal questions regarding the defendants' potential liability thereunder are "capable of classwide resolution" such that the determination of their truth or falsity "will resolve an issue that is central to the validity of each one of the claims in one stroke."[10]  The claims all arise from the same discrete, single-location, single-event disaster,[11] and the classmembers are united in their pursuit of punitive damages from each of the settling defendants.[12]

*Typicality*

The claims of the class representatives are typical of the claims of the New Classmembers as a whole.   The named plaintiffs' claims have "the same essential

[8] Wal-Mart Stores Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011).

[9] In re Deepwater Horizon, 739 F.3d 790, 810-812 (5th Cir. 2014) ("*Deepwater Horizon II*"), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 754 (2014); M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 840 (5th Cir.2012).

[10] Wal-Mart, 131 S.Ct. at 2551; Deepwater Horizon II, 739 F.3d at 810-812; M.D. v. Perry, 675 F.3d at 840. *See generally* FINDINGS OF FACT AND CONCLUSIONS OF LAW – PHASE ONE TRIAL (corrected) [Rec. Doc. 13381-1] (Sept. 4, 2014) (rev. Sept. 9, 2014) (reported at: In re Deepwater Horizon, 21 F.Supp.3d 657 (E.D.La. 2014)), *and* FINDINGS OF FACT AND CONCLUSIONS OF LAW – PHASE TWO TRIAL [Rec. Doc. 14021] (Jan. 15, 2015). While the claims in the Transocean Limitation Action were not technically certified for class treatment under Rule 23, the common liability issues were tried on behalf of all claimants-in-limitation in one proceeding in much the same way that the common issues would be tried in a certified class action on a common and class-wide basis.

[11] ORDER AND REASONS [Rec. Doc. 8138] (Dec. 21, 2012), p.27 (In re Deepwater Horizon, 910 F.Supp.2d 891, 915 (E.D. La. 2012)) ("Importantly, the spill is a single-event, single-location disaster, and so the primary focus of any trial would be BP's conduct and that of its contractors"), *aff'd,* 739 F.3d 790 (5th Cir. 2014), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 754 (2014).

[12] *See generally* KLONOFF DECLARATION, pp.20-21 ¶¶60-61; PRELIMINARY APPROVAL ORDER, p.23 ¶8(c); Deepwater Horizon II, 739 F.3d at 810-812; *see also* Exxon Shipping Co. v. Baker, 554 U.S. 471 (2008).

characteristics" of the putative class members, and there are no "unique defenses against a named plaintiff" which would "threaten to become the focus of the litigation."[13]

## *Adequacy of Representation*

Both the members of the New Punitive Damages Class and the existing BP Economic & Property Damages Class have been adequately represented throughout these proceedings, including the negotiation of the Halliburton and Transocean Settlements, the allocation of combined settlement proceeds between the two classes, and the internal distribution of such proceeds to the members of the New Punitive Damages Settlement Class. The representatives of both the existing BP Economic Class and the New Halliburton-Transocean Punitive Damages Class are knowledgeable about the claims and the terms of the respective settlements, which they have followed, participating in each approval process.[14] Class Counsel have avoided intra-class conflicts,[15] and have zealously pursued the claims of both settlement classes.[16]

## *Presence of an Ascertainable Class*

While not expressly enumerated under Rule 23(a), the courts have generally required that the proponents of a class action ensure that the class be defined clearly, such that the putative

---

[13] *See generally* KLONOFF DECLARATION, pp.21-22 ¶¶62-64; PRELIMINARY APPROVAL ORDER, pp.23-24 ¶8(d); James v. City of Dallas, 254 F.3d 551, 571 (5th Cir. 2001); Mullen, supra, 186 F.3d at 625; In re Enron Corp. Secs. Litig., 529 F.Supp.2d 644, 674 (S.D. Tex. 2006).

[14] *See* Deepwater Horizon II, 739 F.3d at 812-813, *and* DECLARATIONS OF NEW CLASS REPRESENTATIVES (submitted herewith as Exhibit 5 (*in globo*)) at ¶¶5-7. *See also, generally* KLONOFF DECLARATION, pp.22-23 ¶¶65-66; PRELIMINARY APPROVAL ORDER, pp.24-25 ¶8(e).

[15] *See generally* KLONOFF DECLARATION, pp.23-25 ¶¶67-72; Deepwater Horizon II, 739 F.3d at 812-814; (*see also, e.g.,* HERMAN-ROY DECLARATION (July 14, 2016) (submitted herewith as Exhibit 2) at p.31 fn.150).

[16] *See generally* KLONOFF DECLARATION, pp.25-26 ¶74; FITZPATRICK DECLARATION (July 14, 2016) (submitted herewith as Exhibit 6) p.26 ¶36; PRELIMINARY APPROVAL ORDER, p.25 ¶8(e); ORDER AND REASONS [Rec. Doc. 8138] (Dec. 21, 2012) pp.29-30 (Deepwater Horizon, 910 F.Supp.2d at 916); *see also, generally* HERMAN-ROY DECLARATION (Exhibit 2).

class members are objectively ascertainable.[17]   In this particular case, the New Class definition "is objective and precise and does not turn on the merits."[18]

### Rule 23(b) Requirements

The New Punitive Damages Class also satisfies the two requirements of Federal Rule of Civil Procedure 23(b)(3), namely that the common issues predominate over the individual issues and that the class action device is superior to other available methods for resolving the controversy.

### Predominance of Common Issues

As noted, the Phase One and Phase Two Trial proceedings conclusively demonstrate the existence of predominant issues that can be (and, in fact, were) manageably and effectively tried on a common and essentially "class-wide" basis.   Further addressing the predominance requirement under Rule 23(b)(3), Professor Klonoff observes the following:

> The centerpiece of the controversy for the New Class members is the potential liability of HESI and Transocean for punitive damages in connection with the events surrounding the *Deepwater Horizon* oil spill and cleanup.  The reprehensibility of the conduct of HESI and Transocean is unquestionably an important and overarching issue that does not vary by class member.  The Fifth Circuit has recognized, in this litigation and elsewhere, that punitive damages claims are suitable for classwide treatment under analogous circumstances. *See, e.g., In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (approving certification of settlement class where common issues included "[w]hether punitive damages are available as a matter of law" (alteration in original)), *cert. denied*, 135 S.Ct. 754 (2014); *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 471 (5th Cir. 1982) (approving district court's certification of

---

[17]  *See, e.g.,* John v. National Security Fire & Casualty Co., 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23"); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) (Federal Judicial Center 2004) §21.222.

[18]  KLONOFF DECLARATION pp.19-20 ¶57.  *See also* PRELIMINARY APPROVAL ORDER, p.22 ¶8(a).

(b)(3) class of asbestos claimants in which the common issues included the amount of punitive damages for which defendants were liable); *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1019 (5ᵗʰ Cir. 1992) (affirming proposed trial plan for single-incident class action involving punitive damages claim).

By contrast, the individualized issues are easily managed: They involve merely the mechanical task of allocating punitive damages among New Class members.  As myriad courts have stated, mere differences in damages do not defeat class certification.[19]

Another factor favoring predominance here is that all of the New Class's claims for punitive damages arise under general maritime law.  By contrast, many mass tort cases that have failed the criteria for class certification involved the laws of all 50 states and the District of Columbia, thus creating myriad individualized issues.[20]

Furthermore, a finding of predominance is supported by a long line of cases—culminating in the BP settlement in the instant case—finding "single incident" tort cases to be suitable for class certification.[21] *See also In re Deepwater Horizon*, 910 F.Supp.2d 891, 923 (E.D.La. 2012) ("here each class member traces his injury directly to the same genesis—a single well blowout stemming from the same operative causes" (citation

---

[19] *See, e.g.*, <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S.Ct. 1036, 1045 (2016) (quoting Wright, Miller & Kane treatise for the proposition that predominance can be satisfied even if individualized damages issues exist); <u>Bell Atl. Corp. v. AT&T Corp.</u>, 339 F.3d 294, 306 (5ᵗʰ Cir. 2003) (recognizing that "relatively few motions to certify a class fail because of disparities in the amount of damages suffered by the class members" and that "[e]ven wide disparity among class members as to the amount of damages suffered does not necessarily mean that class certification is inappropriate"); <u>Messner v. Northshore Univ. HealthSystem</u>, 669 F.3d 802, 815 (7ᵗʰ Cir. 2012) ("[i]t is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)") (citations omitted); <u>Allapattah Servs. v. Exxon Corp.</u>, 333 F.3d 1248, 1261 (11ᵗʰ Cir. 2003) ("numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate").

[20] *See, e.g.*, <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 624 (1997); <u>Johnson v. Nextel Communications Inc.</u>, 780 F.3d 128, 132 (2d Cir. 2015); <u>Matter of Rhone-Poulenc</u>, 51 F.3d 1293, 1300–1303 (7ᵗʰ Cir. 1995); <u>Castano v. American Tobacco Co.</u>, 84 F.3d 734, 741 (5ᵗʰ Cir. 1996); <u>Zinser v. Accufix Research Institute, Inc.</u>, 253 F.3d 1180, 1189 (9ᵗʰ Cir. 2001); <u>In re Paxil Litig.</u>, 212 F.R.D. 539, 551 (C.D. Cal. 2003); <u>In re Rezulin Prods. Liab. Litig.</u>, 210 F.R.D. 61, 70–71 (S.D.N.Y. 2002).

[21] *See, e.g.*, <u>In re Deepwater Horizon</u>, 739 F.3d 790, 816 (5ᵗʰ Cir. 2014) (noting that the Fifth Circuit has "previously affirmed class certification in mass accident cases, as in other cases in which virtually every issue prior to damages is a common issue" (footnotes and internal quotation marks omitted); <u>In re Deepwater Horizon</u>, 910 F.Supp.2d 891, 927 (E.D.La. 2012) ("Courts in this District agree that it is appropriate, in circumstances where the underlying facts and nature of the case warrant, to certify class actions in environmental disaster and other toxic exposure cases" (citing cases)); <u>Watson v. Shell Oil Co.</u>, 979 F.2d 1014, 1021–22 & n.37 (5ᵗʰ Cir. 1992) (affirming district court's (b)(3) certification of a class alleging injury from an an explosion at defendant's manufacturing facility); <u>Turner v. Murphy Oil USA, Inc.</u>, 234 F.R.D. 597 (E.D.La. 2006) (certifying (b)(3) class alleging property damage from an oil spill at defendant's refinery); <u>In re Train Derailment near Amite, La.</u>, 2006 U.S. Dist. LEXIS 32839 (E.D.La. May 24, 2006) (certifying (b)(3) class and approving settlement).

> omitted)), *aff'd*, 739 F.3d 790 (5th Cir. 2014), *cert. denied*, 135 S.Ct. 754 (2014).  This case is thus a far cry from a mass tort case in which most of the time would be focused on specific causation or other highly individualized inquiries.

KLONOFF DECLARATION, pp.26-28 ¶¶77-80.  Even more so than in *Deepwater Horizon II,* the legal and factual issues common to the members of the New Class predominate over any individual issues – which are, of course, as a practical matter, resolved by the proposed Settlements and Distribution Model.[22]

*Superiority*

With respect to the punitive damages claims resolved by the Halliburton and Transocean Settlements, it is clear that the use of a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. Rule Civ. Pro. 23(b)(3).[23]

### The Settlements are Fair, Reasonable and Adequate

Under the Court's Phase One and Phase Two Trial Findings, neither Halliburton nor Transocean has any exposure for punitive damages,[24] nor any liability for damages in connection with the assigned claims.[25]  Therefore, virtually any relief to the BP Economic Class and/or to a New Punitive Damages Class Member would be fair, reasonable, and adequate, under the facts and the law of this case.   Nevertheless, and in any event, the allocation between the two classes

---

[22] *See* Amchem, supra, 521 U.S. at 620 (in a settlement class, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

[23] *See generally* KLONOFF DECLARATION pp.28-31 ¶¶81-91.  *See also, e.g.,* Deepwater Horizon II, 739 F.3d at 819 n.130.

[24] PHASE ONE FINDINGS, p.135 ¶543 and p.152 ¶612 (In re Deepwater Horizon, 21 F.Supp.3d 657, 746-747 and 757 (E.D.La. 2014)); *see also* PHASE TWO TRIAL FINDINGS [Rec. Doc. 14021] (Jan. 15, 2015) p.37 ¶250 ("the evidence in the Source Control segment does not change the Court's conclusions from Phase One").

[25] PHASE ONE FINDINGS, pp.144-145 ¶¶583-585 and p.153 ¶615 (Deepwater Horizon, 21 F.Supp.3d at 752 and 757).

was fair and reasonable; the distribution model for the Halliburton-Transocean Settlement Class is fair and reasonable; and the relief provided to each and both classes is fair, reasonable and adequate under the *Reed* factors and Federal Rule 23(e).[26]

*The Allocation between the Existing BP Economic Class and the New Class was Well-Considered, and is Fair to Both Classes*

As the Court found at the time of preliminary approval, "Judge Wilkinson thoughtfully and comprehensively addressed the issues" as the appointed Allocation Neutral under the terms of the settlements; the Court found "the allocation to be fair, reasonable, and appropriate, on a preliminary and conditional basis."[27]

In support of final approval, Professor Klonoff summarizes the allocation,[28] and observes as follows:

> Judge Wilkinson has performed the critical task of dividing the overall proceeds between the Old Class and the New Class. He executed that task in his December 10, 2015 Neutral Allocation. In my opinion, his 37-page decision is carefully reasoned, thorough, and persuasive. It reflects impressive knowledge of the intricacies of the *Deepwater Horizon* litigation, and the overarching objective of his analysis is to achieve overall fairness. His conclusion that the New Class, rather than the Old Class, should receive the lion's share of the settlement proceeds (72.8%) is difficult to quarrel with. His rationale—supported by a rigorous review of maritime principles governing punitive damages—is that New Class members have significantly stronger claims than do the Old Class members. As Judge Wilkinson notes, "[t]he members of the New Class are plaintiffs who were most directly, seriously and obviously damaged by the explosion and oil spill for which BP, Halliburton and Transocean were jointly responsible." Neutral Allocation at 5–6.

---

[26] *See* Reed v. General Motors Corp., 703 F.2d 170, 172 (5th Cir. 1983).

[27] PRELIMINARY APPROVAL ORDER, p.9 and p.21 ¶5.

[28] KLONOFF DECLARATION, pp.11-13 ¶¶32-37 (summarizing NEUTRAL ALLOCATION AND REASONS [Rec. Doc. 15652] (Dec. 11, 2015)).

One might quibble with the precise allocation numbers: 72.8% for the New Class versus, e.g., 69% or 74%. But that type of argument can be made in virtually every settlement. The key point, in my opinion, is that the allocation mechanism does not raise disabling conflicts of interest. Here, the decision on how to divide the proceeds between the New Class and the Old Class (subject to this Court's approval) was made by someone who indisputably was not biased in favor of any segment of the class. All class members were treated fairly and objectively based on the relative strength (by category) of their punitive damages claims. And class counsel ensured the integrity of the process by declining to advocate for any specific allocation. See PSC Submission Regarding the Allocation of Halliburton and Transocean Settlement Proceeds (Doc. 15569) (filed 11/13/15) at 1. Indeed, class counsel, HESI, and Transocean all agreed to be bound by Judge Wilkinson's allocation (assuming approval by this Court). See Preliminary Approval Order at 9.

KLONOFF DECLARATION, pp.23-24 ¶¶69-70. The allocation of settlement proceeds is fair and reasonable to both the BP Economic Class and to the members of the New Punitive Damages Class.

*The Distribution Model for the New Class was Well-Considered and is Fair to the Members of the New Class*

In developing an internal allocation and distribution model for the New Class,[29] the New Class Claims Administrator likewise "carefully and objectively analyzed the relative strength of the claims in each category" to arrive at a distribution model that is "thorough, careful, and well reasoned" and includes features that are designed to "ensure fairness to all segments of the class."[30]

---

[29] *See* NEW CLASS CLAIMS ADMINISTRATOR'S PROPOSED DISTRIBUTION MODEL FOR THE COMBINED HALLIBURTON ENERGY SERVICES, INC. AND TRANSOCEAN LTD. SETTLEMENTS FUND [Rec. Doc. 18797] (June 13, 2016).

[30] KLONOFF DECLARATION, pp.24-25 ¶71. *See also* HERMAN-ROY DECLARATION, p.31 fn.150.

*The Settlements Satisfy the Reed Factors, and Are Fair, Reasonable and Adequate with Respect to Both Classes*

While, given the Court's liability findings, virtually any relief to the classes would seem to be fair, reasonable, and adequate, Professor Klonoff nevertheless evaluates the proposed Settlements under the Fifth Circuit's formal Rule 23(e) *Reed* factor six-part test.[31]

First, he notes the absence of any fraud or collusion between or among the parties.[32]

Second, he notes that this case is "exceedingly complicated—factually, legally, and logistically."[33]

Third, he notes that "voluminous" discovery and "substantial trial proceedings" have occurred.[34] "Few class settlements can match this one in terms of the information known to the Court and the parties at the time of settlement."[35]

Fourth, he notes the uphill battle that plaintiffs were facing on liability, both from the outset, and particularly now that the Court has made its liability findings.[36] "At bottom, class counsel negotiated extremely valuable and impressive settlements, even though (1) this Court would ultimately decimate (with respect to HESI) and had already essentially decimated (with respect to Transocean) the claims of both the New Class and the Old Class, and (2) the two classes were left with what would have been extremely challenging positions on appeal. It is,

---

[31] *See* PRELIMINARY APPROVAL ORDER, p.30 ¶15; *citing*, Reed v. General Motors Corp., 703 F.2d 170, 172 (5th Cir. 1983).

[32] KLONOFF DECLARATION, pp.32-35 ¶¶98-103; *see also* PRELIMINARY APPROVAL ORDER, p.28 ¶11; *see also, generally* HERMAN-ROY DECLARATION.

[33] KLONOFF DECLARATION, p.35 ¶105.

[34] KLONOFF DECLARATION, pp.35-36 ¶107; *see, e.g.,* HERMAN-ROY DECLARATION, pp.12-13 ¶¶36-45 and pp.27-29 ¶¶89-99.

[35] KLONOFF DECLARATION, p.35 ¶107.

[36] KLONOFF DECLARATION, pp.36-38 ¶¶108-114.

under the circumstances, nothing short of remarkable that class counsel were able to negotiate settlements worth well in excess of a billion dollars."[37]

Next, Professor Klonoff notes that, in connection with the allocation process, Magistrate Judge Wilkinson estimated the potential punitive damage recovery to the New Class at $10.825 billion, and received confidential estimates of up to $37 billion with respect to the potential value of the assigned claims to the existing BP Economic Class.[38]  However, as noted, the Court already found, after a comprehensive liability trial, that neither Halliburton nor Transocean have any exposure for punitive damages.[39]  In addition, and even putting aside the enforceability of the indemnities and releases,[40] the Old Class, standing in BP's shoes, would have only been able to recover, at most, 3% of those total potential estimated damages suffered by BP from Halliburton, and only 30%, at most, from Transocean.[41]  As well as other legal impediments.[42] Hence, these "theoretical recoveries for the two classes are unrealistic 'pie in the sky' numbers" and, given "that the pertinent issues have already been adjudicated at trial, and that the two classes are facing an enormous uphill battle on appeal, this *Reed* factor should be given little weight."[43]

---

[37] KLONOFF DECLARATION, p.38 ¶114.

[38] KLONOFF DECLARATION, p.38 ¶115.

[39] PHASE ONE FINDINGS, p.135 ¶543 and p.152 ¶612 (Deepwater Horizon, 21 F.Supp.3d at 746-747 and 757); *see also* PHASE TWO FINDINGS, p.37, ¶250 ("the evidence in the Source Control segment does not change the Court's conclusions from Phase One").

[40] PHASE ONE FINDINGS, pp.144-145 ¶¶583-585 and p.153 ¶615 (Deepwater Horizon, 21 F.Supp.3d at 752 and 757) (finding that the releases and indemnities in favor of BP are valid and enforceable).

[41] PHASE ONE FINDINGS, p.136 ¶544 and p.152 ¶612 (Deepwater Horizon, 21 F.Supp.3d at 747 and 757) (allocating 67% of the fault to BP, 30% to Transocean, and 3% to Halliburton); *see also* PHASE TWO FINDINGS, p.37, ¶249 (BP's conduct, as presented in Phase Two, "does not make it a superseding cause of the oil spill, nor does BP's conduct warrant a reallocation of comparative fault among BP, Transocean, and Halliburton").

[42] *See generally* HALLIBURTON'S MOTION FOR JUDGMENT ON THE PLEADINGS RE BP'S ASSIGNMENT OF CLAIMS [Rec. Doc. 8268] (Jan. 17, 2013); TRANSOCEAN'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO CLAIMS ASSIGNED UNDER THE SETTLEMENT AGREEMENT [Rec. Doc. 8120] (Dec. 21, 2012).

[43] KLONOFF DECLARATION, p.38 ¶115.

Finally, the PSC / Class Counsel and all Class Representatives support the Settlements,[44] and only *two* opt-out requests had been received as of July 28, 2016.[45]

### The Class Notice was Effective and Sufficient under Due Process and Rule 23

The Class Notice Plan was approved by the Court on April 12, 2016,[46] and was amended slightly on June 8, 2016.[47]  Garden City and Kinsella confirm that such notice was effectively disseminated, and re-affirm conformity with the requirements of Rule 23(c)(2)(B), Rule 23(e)(1), and the Due Process Clause.[48]

In particular, notice expert Shannon Wheatman opines that the Court-approved Notices "were noticeable, clear, concise, substantive, and informative," that "the Notice Plan provided the best notice practicable under the circumstances," and, in conclusion: "The Notice Plan, as designed, is fully compliant with Rule 23 of the Federal Rules of Civil Procedure and satisfies due process requirements."[49]

---

[44] *See, e.g.,* HERMAN-ROY DECLARATION, pp.30-31 ¶104, *and* DECLARATIONS OF NEW CLASS REPRESENTATIVES (submitted herewith as Exhibit 5 (*in globo*)) at ¶7.

[45] *See* CIRAMI DECLARATION (July 29, 2016) (submitted herewith as Exhibit 3) at p.8.

[46] PRELIMINARY APPROVAL ORDER, pp.32-34 ¶¶21-29 (approving the Class Notice and Notice Plan described in and attached to the Declaration of Shannon R. Wheatman (March 31, 2016) [Rec. Doc. 16161-2]).

[47] *See* ORDER (June 8, 2016) [Rec. Doc. 18733] at p.2.

[48] *See generally* WHEATMAN DECLARATION (July 29, 2016) (submitted herewith as Exhibit 4); CIRAMI DECLARATION (July 29, 2016) (submitted herewith as Exhibit 3).

[49] *See generally* WHEATMAN DECLARATION (July 29, 2016) p.2 ¶¶4(b), 5 and p.5 ¶15.

### The Common Benefit Attorneys Fees Are Reasonable and Appropriate

After the Aggregate Payments of $1,239,750,000 were negotiated and agreed to, Halliburton and Transocean agreed to pay up to an additional $124,950,000 in common benefit costs and/or fees, as may be approved and awarded by the Court.[50]

This fee, if awarded, amounts to 9.92% of the Aggregate Payments, which is reasonable and appropriate under the relevant caselaw.[51]  Significantly, however, the common benefits fees awarded are being paid, over and above, by the defendants, rather than being deducted from the corpus of the settlement funds, and hence are considered to be part of the total benefit to the class.[52]  When the $124.95 million in potential fees is added to the $1.24 billion in Aggregate Payments, the agreed-to fee drops to only 9.16% of the total benefits.

As the Court is aware, Class Counsel and other Common Benefit Attorneys have submitted a separate fee petition in connection with the BP Class Settlements.[53]  Because the money allocated to the BP Economic Settlement out of the Halliburton/Transocean Settlements based on the assignment could be credited to either the BP Settlement or to the Halliburton/Transocean Settlements;  and because much of the same common benefit work was

---

[50] *See* HALLIBURTON SETTLEMENT, Sections 23(a) and 23(b) [Rec. Doc. 15322-1]; TRANSOCEAN SETTLEMENT, Sections 23(a) and 23(b) [Rec. Doc. 14644-1].

[51] *See generally* FITZPATRICK DECLARATION (July 14, 2016) (submitted herewith as Exhibit 6) at pp.17-21 ¶¶29-31 and Table 1, and pp.32-34 ¶¶47-51; KLONOFF DECLARATION, pp.40-41 ¶¶121-123.

[52] *See, e.g.,* Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery"); In re G.M. Pick-Up Truck Fuel Tank Lit., 55 F.3d 768, 802 (3rd Cir. 1996) (noting that the first edition of the MANUAL FOR COMPLEX LITIGATION recognized that fees "paid by the defendant(s) are properly part of the settlement funds"); In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 330 n.99 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) ("although the class settlement and the attorneys' fee award were negotiated independently, [defendant] was responsible for both and therefore they are drawn from the same 'fund'"); In re Domestic Air Transportation Antitrust Litig., 148 F.R.D. 297, 354 (N.D.Ga. 1993) ("Whether the cash portion of the settlement is used to pay attorneys or to distribute certificates to class members, the expenditure of the fund inures to the benefit of the class. Accordingly, the Court rejects the argument that the calculation of the value of the common fund should exclude all cash used to pay attorneys' fees and the expenses of the claims administration"); Vista Healthplan, Inc. v. Warner Holdings Co. III, 246 F.R.D. 349, 364 (D.D.C. 2007) (explaining that "because the attorneys' fees are borne by defendants and not plaintiffs, they represent a valuable part of the settlement").

[52] *See generally* FEE PETITION (July 15, 2016) [Rec. Doc. 21098].

undertaken for the benefit of both BP Settlement Classmembers and Transocean/Halliburton New Class Members (whose memberships, indeed, tend to largely overlap);   Class Counsel believe it is also appropriate to provide the Court with an analysis of the collective BP/Transocean/Halliburton Settlement benefits relative to the collectively sought BP/Transocean/Halliburton common benefit fees.[54]  When the total estimated payouts of $11.24 billion to $14.24 billion are compared against the total requested fees of $680.15 million, the percentage falls into a range of 4.78% to 6.05%.[55]

In addition, Common Benefit Attorneys have been awarded $40 million for the work they performed pursuant to joint-prosecution agreements with the State of Louisiana and the State of Alabama with respect to their economic loss damage recoveries.[56]   When the total BP/Halliburton/Transocean/Alabama/Louisiana recoveries of $13.24 billion to $16.24 billion are compared with the total potential $720.15 million in common benefit fees, the percentage falls into a range of just 4.43% to 5.44%.



[54] *See, e.g.,* FITZPATRICK DECLARATION pp.27-28 ¶39 *and* HERMAN-ROY DECLARATION pp.35-36 ¶124.

[55] The total estimated payouts of $11.24 billion to $14.24 billion do *not* include the potential reimbursement of litigation expenses or common benefit fees that may be awarded out of the BP Class Settlements ($600 million) or the Transocean/Halliburton Settlements ($124.95 million).  When that additional $724.95 million in benefits to the classes is factored in, the percentage range drops to 4.54% to 5.67%.

[56] *See* Certificates of Non-Objection and Order (Oct. 5, 2015) [Rec. Doc. 15437 and 15441].

Finally, and to be sure, the PSC and other Common Benefit Attorneys are _not_ making any claim for common benefits fees with respect to GCCF payments, Clean Water Act penalties, the Local Government Settlements, or the Settlements with the States of Florida, Mississippi, or Texas.  Nevertheless, petitioners indisputably acted for the benefit of the Local Governments, acted for the benefit of GCCF claimants, and worked cooperatively with the United States and counsel for the States, and therefore believe that such recoveries are relevant to the overall analysis with respect to the reasonableness of the total requested fees.[57]  When such recoveries are considered, the total fees amount to only 2.25% to 2.48% of the non-NRD _Deepwater Horizon_ related recoveries.[58]

In performing a rough "lodestar" "cross-check" out of an abundance of caution, and looking solely to the Transocean and Halliburton Settlements, a conservative 527,081 hours against a $124.95 million common benefit fee award yields a blended rate (including the multiplier) of just $237.06 per hour.[59]  Looking at the Transocean and Halliburton Settlements combined with the BP Fee Agreement, a cross-check of 527,081 hours against a potential $680.15 million common benefit fee award yields a blended rate (including the multiplier) of $1,290 per hour.  And looking at the BP Class Settlements, the Halliburton and Transocean Settlements, and the State Settlements, together, a cross-check of 527,081 hours against a potential $720.15 million common benefit fee award yields a blended rate of $1,366 per hour.

---

[57] _See, e.g.,_ ORDER AND REASONS (Dec. 28, 2011) [Rec. Doc. 5022], at p.3 ("there can be no question that the PSC has taken seriously its fiduciary obligations in the best interests of all claimants, both private and governmental").

[58] _See generally_ OVERVIEW OF CLASS BENEFITS (submitted herewith as Exhibit 7) at p.4.

[59] For the collective number of common benefit hours, _see_ HERMAN-ROY DECLARATION, pp.33-35 ¶¶117-123.

At the $456 average hourly rate approved in *Enron* back in 2008,[60] this yields a multiplier of only 2.99 for the total potential collective fee award – well within the 3.14 to 3.64 average found in other "super mega-fund" cases.[61]

In light of all relevant circumstances, the fees that Halliburton and Transocean have agreed to pay with respect to the Halliburton-Transocean Settlements are fair and reasonable when viewed within the context of the entire *Deepwater Horizon* related litigation.[62]

---

[60] *See* In re Enron Corp. Securities, Derivative and ERISA Lit., 586 F.Supp.2d 732, 779-780 (S.D.Tex. 2008).

[61] *See* FITZPATRICK DECLARATION, pp.20-21 Table 1, pp.26-31 ¶¶38-45, and pp.34-35 ¶52. *See also, generally* FEE PETITION (July 15, 2016) [Rec. Doc. 21098] at pp.104-123 (and Exhibits 23, 24, 25 and 26 thereto [Rec. Docs. 21098-16 thru 21098-19]).

[62] *See generally* KLONOFF DECLARATION, pp.39-41 ¶¶118-123; FITZPATRICK DECLARATION, pp.32-35 ¶¶46-52; HERMAN-ROY DECLARATION (Exhibit 2); OVERVIEW OF CLASS BENEFITS (Exhibit 7). *See also, generally* FEE PETITION (July 15, 2016) (including Exhibits) [Rec. Docs. 21098 thru 21098-19].

## List of Exhibits

1.   DECLARATION OF ROBERT H. KLONOFF  (Aug. 5, 2016)

2.   DECLARATION OF STEPHEN J. HERMAN AND JAMES PARKERSON ROY  (July 14, 2016)

3.   DECLARATION OF STEPHEN J. CIRAMI  (July 29, 2016)

4.   DECLARATION OF SHANON R. WHEATMAN, PHD.  (July 29, 2016)

5.   NEW PUNITIVE DAMAGE CLASS REPRESENTATIVE DECLARATIONS (*in globo*)
     Declaration of Geralyn Morales (July 18, 2016)
     Declaration of John M. Petitjean (July 19, 2016)
     Declaration of Joseph M. Taliancich (July 21, 2016)
     Declaration of William David Yates (July 27, 2016)
     Declaration of Edward Reels (July 27, 2016)
     Declaration of Jeb Morgan (July 27, 2016)

6.   DECLARATION OF BRIAN T. FITZPATRICK (July 14, 2016)

7.   OVERVIEW OF CLASS BENEFITS

## List of Additional References

a.   ORDER AND REASONS [Rec. Doc. 8138] (Dec. 21, 2012) (reported at: In re Deepwater Horizon, 910 F.Supp.2d 891 (E.D.La. 2012)), *aff'd*, 739 F.3d 790 (5th Cir. 2014) ("*Deepwater Horizon II*"), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 754 (2014).

b.   FINDINGS OF FACT AND CONCLUSIONS OF LAW – PHASE ONE TRIAL (corrected) [Rec. Doc. 13381-1] (Sept. 4, 2014) (rev. Sept. 9, 2014) (reported at: In re Deepwater Horizon, 21 F.Supp.3d 657 (E.D.La. 2014)).

c.   FINDINGS OF FACT AND CONCLUSIONS OF LAW – PHASE TWO TRIAL [Rec. Doc. 14021] (Jan. 15, 2015).

d.   SECOND AMENDED HESI PUNITIVE DAMAGES AND ASSIGNED CLAIMS SETTLEMENT AGREEMENT (Amended as of September 2, 2015) [Rec. Docs. 15322-1 thru 15322-6].

e.   TRANSOCEAN PUNITIVE DAMAGES AND ASSIGNED CLAIMS SETTLEMENT AGREEMENT (May 29, 2015) [Rec. Docs. 14644-1 thru 14644-5].

f.   NEUTRAL ALLOCATION AND REASONS [Rec. Doc. 15652] (Dec. 11, 2015).

g.   PRELIMINARY APPROVAL ORDER [Rec. Doc. 16183] (April 12, 2016).[63]

h.   Class Notice and Notice Plan described in and attached to the DECLARATION OF SHANNON R. WHEATMAN (March 31, 2016) [Rec. Doc. 16161-2] and amended by ORDER (June 8, 2016) [Rec. Doc. 18733] at p.2.

h.   NEW CLASS CLAIMS ADMINISTRATOR'S PROPOSED DISTRIBUTION MODEL FOR THE COMBINED HALLIBURTON ENERGY SERVICES, INC. AND TRANSOCEAN LTD. SETTLEMENTS FUND [Rec. Doc. 18797] (June 13, 2016).

i.   DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGE SETTLEMENT CLAIMS ADMINISTRATOR'S REPORT RE: HALLIBURTON AND TRANSOCEAN SETTLEMENTS [Rec. Doc. 18796] (June 13, 2016).

j.   PETITION FOR REIMBURSEMENT OF EXPENSES AND COLLECTIVE COMMON BENEFIT FEE AWARD (July 15, 2016) (including Exhibits) [Rec. Docs. 21098 thru 21098-19].

k.   STATUS REPORT NO. 3 – BY THE NEW CLASS CLAIMS ADMINISTRATOR OF THE TRANSOCEAN AND HALLIBURTON SETTLEMENTS [Rec. Doc. 21366] (Aug. 1, 2016).

---

[63] *See also* ORDER [Rescheduling the Fairness Hearing and Other Dates for the Proposed HESI and Transocean Class Action Settlements] [Rec. Doc. 16900] (May 6, 2016).

## CONCLUSION

For the above and foregoing reasons, the Halliburton and Transocean Settlements should be fully and finally approved.

This 5th day of August, 2016.

Respectfully submitted,

_/s/   Stephen J. Herman_                           _/s/ James Parkerson Roy_
**Stephen J. Herman**, La. Bar No. 23129       **James Parkerson Roy**, La. Bar No.11511
**HERMAN HERMAN & KATZ LLC**                   **DOMENGEAUX WRIGHT ROY EDWARDS**
820 O'Keefe Avenue                                     **& COLOMB LLC**
New Orleans, Louisiana 70113                   556 Jefferson Street, Suite 500
Telephone: (504) 581-4892                        Lafayette, Louisiana 70501
Fax No. (504) 569-6024                             Telephone: (337) 233-3033
E-Mail: sherman@hhklawfirm.com             Fax No. (337) 233-2796
*Co-Lead Class Counsel*                            E-Mail: jimr@wrightroy.com
                                                              *Co-Lead Class Counsel*

### CLASS COUNSEL

Brian H. Barr                                            Robin L. Greenwald
LEVIN, PAPANTONIO, THOMAS,            WEITZ & LUXENBERG, PC
MITCHELL, ECHSNER & PROCTOR, PA     700 Broadway
316 South Baylen St., Suite 600               New York, NY  10003
Pensacola, FL 32502-5996                        Office:  (212) 558-5802
Office:  (850) 435-7045                            Telefax: (212) 344-5461
Telefax: (850) 436-6187                           E-Mail:  rgreenwald@weitzlux.com
E-Mail: bbarr@levinlaw.com

                                                              Rhon E. Jones
Jeffrey A. Breit                                        BEASLEY, ALLEN, CROW, METHVIN,
BREIT DRESCHER & IMPREVENTO      PORTIS & MILES, P. C.
Towne Pavilion Center II                          218 Commerce St., P.O. Box 4160
600 22nd Street, Suite 402                        Montgomery, AL 36104
Virginia Beach, Virginia 23451                 Office:  (334) 269-2343
Office:  (757) 670-3888                            Telefax: (334) 954-7555
Telefax: (757) 670-3895                           E-Mail:  rhon.jones@beasleyallen.com
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail:  duke@williamslawgroup.org

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Brief will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pre-Trial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 5th day of August, 2016.

/s/ Stephen J. Herman and James Parkerson Roy