UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010<br><br>This document relates to:<br>Case No. 2:11-CV-03180 and<br>Case No. 2:11-CV-02766 | MDL NO. 2179<br><br>SECTION: J<br><br>Honorable Carl J. Barbier<br><br>Magistrate Judge Shushan |

### COMPLAINT IN INTERVENTION

### INTRODUCTION

1. Plaintiffs-in-intervention are attorneys ("Intervening Attorneys") who were terminated without compensation by their clients ("Defendants-in-Intervention") after a settlement was reached in the *Deepwater Horizon* oil spill lawsuit.

2. Defendants-in-Intervention retained Intervening Attorneys to represent them in the *Deepwater Horizon* oil spill matter and signed written contingent fee agreements (CFA). On behalf of Defendants-in-Intervention, Intervening Attorneys prepared and filed Gulf Coast Claims Facility (GCCF) claims, commissioned expert reports, filed direct actions in the Multi-District Litigation (MDL) in both Case Number 2:11-CV-03180 and Case Number 2:11-CV-02766, negotiated with the Plaintiffs' Steering Committee (PSC) and BP for settlement, and calculated and documented the claims of Defendants-in-Intervention under the settlement agreement, among other legal work. When only administrative tasks related to obtaining payment from the *Deepwater Horizon* Claims Center remained to be completed, Defendants-in-Intervention dismissed Intervening Attorneys without cause.

1



## THE PARTIES

3.   Plaintiffs-in-Intervention: Stephen S. Kreller of The Kreller Law Firm, William L. Roberts and Craig S. Coleman of Faegre Baker Daniels, LLP (formerly Faegre & Benson, LLP), and Duncan Lott and Casey L. Lott of Langston & Lott, PA (referred to collectively as "Intervening Attorneys").

4.   Defendants-in-Intervention are all United States citizens of the full age of majority and include the following individuals and entities (referred to collectively as "Defendants-in-Intervention"):

    a.   Richard Johnson (DWH ClaimantID 100021751);

    b.   Melonie Johnson (DWH ClaimantID 100021745);

    c.   Can Cong Nguyen (GCCF Claim No. 3164011; DWH ClaimantID 100000928);

    d.   Chi Nguyen d/b/a Carmel's Seafood (DWH ClaimantID 100001242);

    e.   Michael Gollott (DWH ClaimantID 100000540, name misspelled as "Gollot, Michael" in Compl. Ex. A in case 2:11-cv-02766);

    f.   Charles Huber d/b/a Tasha Lou, LLC (DWH ClaimantID 100000247);

    g.   Kim Le (GCCF Claim No. 1057761);

    h.   Rickey (R.J.) Frickey d/b/a Neversatisfied, LLC (DWH ClaimantID 100000657, name misspelled as "Frickey, Ricky" in Compl. Ex. A in case 2:11-cv-02766 Compl.);

    i.   Nhat (Van) Le (DWH ClaimantID 100000467 and/or 100000324, name misspelled as "Nhat, Vam Le" in Compl. Ex. A in case 2:11-cv-02766);

      j. <u>Hon Van Truong</u> (DWH ClaimantID 100000956, name misspelled as "Hong Truong" in Compl. in case 2:11-cv-03180); and

      k. <u>Bobby Tank Sr.</u> (DWH ClaimantID 100000273);

      l. <u>Luom Nguyen</u> (DWH ClaimantID 100000678).

## JURISDICTION AND VENUE

5. This claim is being filed pursuant to Rule 24(c) of the Federal Rules of Civil Procedure.

6. This Court has jurisdiction of this matter pursuant to Article III of the Constitution of the United States and 28 U.S.C. § 1367(a). Because the Court has jurisdiction over the underlying MDL, it has supplemental jurisdiction over these related attorney compensation claims.

7. The underlying MDL is venued in the Eastern District of Louisiana. Thus, venue of this action in this District is also proper.

## FACTUAL BACKGROUND

**A. Legal Services Provided to Defendants-in-Intervention**

8. Intervening Attorneys provided the legal services described in this section to all Defendants-in-Intervention unless specifically noted otherwise.

9. Intervening Attorneys actively and aggressively pursued Defendants-in-Intervention's GCCF claims through Mr. Ken Feinberg and also aggressively pursued their claims in the MDL.

10. Intervening Attorneys dedicated a team of attorneys to work with Defendants-in-Intervention on these claims. The attorneys personally investigated, documented, and handled their claims and have corresponded with them on an ongoing basis. Intervening Attorneys had

3

client interviews and meetings with Defendants-in-Intervention to fully investigate and document their GCCF claims, MDL seafood claims and Vessels of Opportunity program claims.

11. Intervening Attorneys collected and analyzed all necessary business records related to Defendants-in-Intervention claims.

12. Intervening Attorneys hired experts, including National Resource Consultants, whose marine biologists testified in the Exxon Valdez litigation and have assessed biological and market damages caused by multiple oil spills. Intervening Attorneys also hired Corky Perret, a forty-year veteran of the Mississippi Department of Marine Resources and an expert on Gulf fisheries. The expert team prepared multiple reports presenting damage models designed to compensate commercial fishing businesses, like those of Defendants-in-Intervention, for the full range of biological and market impacts caused by the oil spills. The damage models quantified ongoing and likely future damages through the use of risk multipliers. Intervening Attorneys paid for these experts and the reports.

13. Intervening Attorneys met with Mr. Feinberg and GCCF multiple times in Washington, D.C. to negotiate with GCCF on behalf of Defendants-in-Intervention. This included a meeting in which Intervening Attorneys flew experts to Washington, D.C. to present their findings, including their expert reports and damage models, to Mr. Feinberg and GCCF. The efforts of Intervening Attorneys resulted in significant revisions to GCCF's methodologies for seafood related claims.

14. Intervening Attorneys prepared fully documented and detailed claims to GCCF for Defendants-in-Intervention. Those claims included extensive analysis of biological damages and lost revenues caused by the oil spill, and were supported by expert reports including reports

from one of the leading experts from the Exxon Valdez litigation. Intervening Attorneys paid for these experts and the reports.

15. Intervening Attorneys filmed and produced a video on behalf of Defendants-in-Intervention for presentation to GCCF and BP's counsel.

16. In conjunction with the hired experts, Intervening Attorneys developed damage methodologies including the use of damage multipliers and reimbursement for property damage. These methodologies and concepts have been incorporated into the Seafood Compensation Program and are integral to the compensation that Defendants-in-Intervention will receive under the Settlement Agreement's formulas.

17. Intervening Attorneys represented Defendants-in-Intervention in the *In Re Deepwater Horizon* litigation on a direct action basis.

18. The GCCF claims and supporting documentation Intervening Attorney submitted for Defendants-in-Intervention are now being used by the Seafood Compensation Program to calculate their compensation.

19. Intervening Attorneys extensively participated in settlement negotiations with the PSC and BP regarding compensation for seafood related and Vessels of Opportunity claims.

20. Additionally, Intervening Attorneys extensively participated in mediations with Special Master John W. Perry, Jr. and Dan J. Balhoff regarding the formulas and compensation available under the Seafood Compensation and Vessels of Opportunity programs.

21. Since filing of the settlement agreement, Intervening Attorneys have documented the claims of Defendants-in-Intervention to ensure collection of all information necessary to obtain compensation under the Seafood Compensation Program. Intervening Attorneys calculated their claims under the settlement.

22. In addition to group meetings with clients, Intervening Attorneys consulted with Defendants-in-Intervention individually to review the settlement terms and explain how much money they will receive under the settlement.

23. On May 2, 2012, the Court granted preliminary approval of the settlement, including the Seafood Compensation and Vessels of Opportunity programs. (Rec. Doc. No. 6418.) Between May 22, 2012 and October 12, 2012, Defendants-in-Intervention notified Intervening Attorneys of their desire to dismiss the attorneys without cause.

24. Intervening Attorneys have done everything necessary to obtain settlements for Defendants-in-Intervention. At this point, the only thing left to be done on behalf of these former clients is to fill out online forms with the information Intervening Attorneys have collected, generated, and reviewed.

**B. Representation Agreements with Defendants-in-Intervention**

25. On March 3, 2011, Richard and Melonie Johnson retained Intervening Attorneys to represent them in their claims with GCCF at a cost included contingency fee of 18 percent. On July 9, 2011, Mr. and Mrs. Johnson retained Intervening Attorneys to pursue their Vessels of Opportunity program claims at a cost included contingency fee of 18 percent. On December 20, 2011, Mr. and Mrs. Johnson retained Intervening Attorneys to represent them in the MDL at a cost included contingency fee of 25 percent. The fee arrangement would remain at 25 percent even if Mr. and Mrs. Johnson elected to opt-out of participation in the Seafood Compensation Program. On or about June 29, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Mr. and Mrs. Johnson notified Intervening Attorneys of their desire to terminate the attorneys.

26. On March 9, 2011, Can Cong Nguyen retained Intervening Attorneys to represent him in his Vessels of Opportunity program claims at a cost included contingency fee of 18 percent. On December 19, 2011, Mr. Nguyen retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Nguyen would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about May 28, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Mr. Nguyen sent Intervening Attorneys a letter terminating representation by the attorneys.

27. On March 14, 2011, Chi Nguyen d/b/a Carmel's Seafood retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. In a separate agreement also signed on March 14, 2011, Mr. Nguyen retained Intervening Attorneys to pursue his Vessels of Opportunity claims, at a cost included contingency fee of 18 percent. On December 5, 2011, Mr. Nguyen retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Nguyen would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about May 28, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Mr. Nguyen that he was terminating representation by the attorneys.

28. On March 17, 2011, Michael Gollott retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. On July 19, 2011, Mr. Gollott retained Intervening Attorneys to pursue his Vessels of Opportunity claims, at a cost

included contingency fee of 18 percent. On December 21, 2011, Mr. Gollott retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Gollott would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about June 26, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Mr. Gollott that he was terminating representation by the attorneys.

29. On April 11, 2011, Charles A. Huber d/b/a Tasha Lou, LLC retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. On July 20, 2011, Mr. Huber retained Intervening Attorneys to pursue his Vessels of Opportunity claims, at a cost included contingency fee of 18 percent. On December 22, 2011, Mr. Huber retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Huber would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about August 7, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Mr. Huber that he was terminating representation by the attorneys.

30. On May 5, 2011, Kim Le retained Intervening Attorneys to represent her claims with the GCCF and pursue her Vessels of Opportunity claims at a cost included contingency fee of 18 percent. On December 5, 2011, Ms. Le retained Intervening Attorneys to represent her in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Ms. Le would remain at 25 percent even if she elected to opt-out of participation in the

Seafood Compensation Program. On or about May 22, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Ms. Le that she was terminating representation by the attorneys.

31. On June 1, 2011, Rickey (R.J.) Frickey d/b/a Neversatisfied, LLC retained Intervening Attorneys to represent his claims with the GCCF and pursue his Vessels of Opportunity claims at a cost included contingency fee of 18 percent. On December 14, 2011, Mr. Frickey retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Frickey would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On October 12, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received e-mail notification from Mr. Frickey that he was terminating representation by the attorneys.

32. On June 6, 2011, Nhat Van Le retained Intervening Attorneys to represent his claims with the GCCF and pursue his Vessels of Opportunity claims at a cost included contingency fee of 18 percent. On December 16, 2011, Mr. Le retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Le would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On July 19, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Mr. Le that he was terminating representation by the attorneys.

33. On June 3, 2011, Hon Van Truong retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. On July 5, 2011, Mr. Truong retained Intervening Attorneys to pursue his Vessels of Opportunity claims, also at a cost included contingency fee of 18 percent. On November 4, 2011, Mr. Truong retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Truong would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about May 29, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Hon Van Truong that he was terminating representation by the attorneys.

34. On July 1, 2011, Bobby Tank Sr. retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. On July 6, 2011, Mr. Tank retained Intervening Attorneys to pursue his Vessels of Opportunity claims, also at a cost included contingency fee of 18 percent. On December 15, 2011, Mr. Tank retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Tank would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about July 5, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received a letter dated June 29, 2012 from Mr. Tank stating that he was terminating representation by the attorneys.

35. On September 1, 2011, Luom Nguyen retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. On December 19, 2011, Mr. Nguyen retained Intervening Attorneys to represent him in the MDL at a cost included

contingency fee of 18 percent for his Vessels of Opportunity Program claims and 25 percent for any recovery as a result of the lawsuit concerning the *Deepwater Horizon* oil spill. The fee arrangement with Mr. Nguyen would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about July 27, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received a letter from Mr. Nguyen stating that he was terminating representation by the attorneys.

## COUNT I
## BREACH OF CONTRACT

36.     Intervening Attorneys incorporate all preceding paragraphs as if fully set forth herein.

37.     Defendants-in-Intervention and Intervening Attorneys entered into written CFAs. By the terms of those contracts, Defendants-in-Intervention were obligated to pay Intervening Attorneys a percentage of any amount recovered by Defendants-in-Intervention.

38.     At all relevant times, Intervening Attorneys complied with the terms of the CFAs and have fully and substantially performed their contractual obligations.

39.     Defendants-in-Intervention have failed to pay Intervening Attorneys the contracted for contingent fee for legal services rendered. Nor have Intervening Attorneys collected any fees directly from the *Deepwater Horizon* Claims Center.

40.     Defendants-in-Intervention have breached their contracts with Intervening Attorneys.

41.     As a result of Defendants-in-Intervention's breach of the CFAs, Intervening Attorneys have suffered damages.

11

## COUNT II
## QUANTUM MERUIT OR EQUITABLE RELIEF

42. Intervening Attorneys incorporate all preceding paragraphs as if fully set forth herein.

43. Defendants-in-Intervention and Intervening Attorneys had a written contract for legal services. There was an express understanding between Defendants-in-Intervention and Intervening Attorneys that payment of a fee was dependent upon and would come from any recovery for Defendants-in-Intervention.

44. Intervening Attorneys performed copious amounts of valuable legal work on behalf of Defendants-in-Intervention, as explained in paragraphs 8-24 *supra*, resulting in a settlement.

45. In an attempt to avoid paying Intervening Attorneys' fee, Defendants-in-Intervention terminated Intervening Attorneys after the settlement was reached and all work, other than minor administrative tasks, was complete. Any further work on Defendants-in-Intervention's claims must rely on the information collected and work already performed by Intervening Attorneys.

46. Defendants-in-Intervention were provided timely notice by letter of Intervening Attorneys claims.

47. Intervening Attorneys have suffered damages and are entitled to recover the full 25 percent provided for in their contingency fee agreements, which is the reasonable value of the services rendered.

**WHEREFORE**, Intervening Attorneys, Stephen S. Kreller of The Kreller Law Firm, William L. Roberts, and Craig S. Coleman of Faegre Baker Daniels LLP (formerly Faegre & Benson LLP), and Duncan Lott and Casey L. Lott of Langston & Lott, PA, pray that a copy of this Complaint in Intervention be served upon Defendants-in-Intervention herein; that they be duly cited to appear and answer the same and that, after all legal delays and due proceedings had, there be judgment herein in favor of Intervening Attorneys, Stephen S. Kreller of The Kreller Law Firm, William L. Roberts, and Craig S. Coleman of Faegre Baker Daniels LLP (formerly Faegre & Benson LLP), and Duncan Lott and Casey L. Lott of Langston & Lott, PA, for all costs incurred by Intervening Attorneys in connection with the legal services rendered on behalf of the Defendants-in-Intervention, and for legal fees incurred by Intervening Attorneys in representing Defendants-in-Intervention, for the contingency fee as stated in the retainer agreement with Intervening Attorneys, which represents a reasonable value of Intervening Attorneys' services, together with legal interest thereon from date of judicial demand until paid, for all costs of these proceedings and for any other fees as directed by the court, and for all general and equitable relief.

Date: November 20, 2012

RESPECTFULLY SUBMITTED:

BY: /s/ *Stephen S. Kreller*

THE KRELLER LAW FIRM

Stephen S. Kreller (LA # 28440)
757 St. Charles Avenue, Suite 301
New Orleans, LA  70130
Telephone:  504-484-3488
Facsimile:  504-294-6091
Email:  ssk@krellerlaw.com

FAEGRE BAKER DANIELS, LLP
William L. Roberts (admitted pro hac vice)
Craig S. Coleman (admitted pro hac vice )

13

2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone:  612-766-7000
Facsimile:  612-766-1600

LANGSTON & LOTT, P.A.
Duncan Lott (admitted pro hac vice)
Casey L. Lott (admitted pro hac vice)
100 South Main Street
Booneville, MS  38829
Telephone:  662-728-9733
Facsimile:  662-728-1992

**ATTORNEYS FOR PLAINTIFFS IN INTERVENTION**