UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 |
| This Document Relates To: | * | SECTION: J |
| *No. 12-970* | * | JUDGE BARBIER |
| | * | MAG. JUDGE WILKINSON |

## ORDER & REASONS

Before the Court is the **Motion of the Deepwater Horizon Economic Claims Center for Return of Payments Made to Claimants from the Vessels SIR LAWRENCE, CAPT T, LADY KATHLEEN and Others (Rec. Doc. 14761)** and related briefing. (Opp'n, Rec. Doc. 15388; DHECC Reply, Rec. Doc. 15482; Mot. to Sur-Reply, Rec. Doc. 15559).[1] The DHECC contends that Gulf Finest Investment Co., LVS Investment Group Inc., Sinh Tran, Christine Ho, and Ngoc Lam (collectively, "Claimants") submitted fraudulent claims to the Deepwater Horizon Economic Claims Center ("DHECC"), which it paid, and seeks a judgment requiring them to make restitution to the DHECC. For reasons set forth below, the Court will grant the motion with respect to Christine Ho and deny the motion with respect to the other Claimants.

## BACKGROUND

This Order & Reasons largely assumes the reader's familiarity with the 2010 Gulf of Mexico oil spill, Multidistrict Litigation 2179, the *Deepwater Horizon* Economic and Property Damages Settlement ("Settlement," Rec. Doc. 6430), the Seafood Compensation Program (Ex.

---

[1] Claimants moved to file a sur-reply. The Court will grant that motion and has considered the sur-reply with the other briefing.

10 to the Settlement), and the DHECC.[2]  The Court retains continuing and exclusive jurisdiction to interpret, implement, administer, and enforce the Settlement (Settlement §§ 4.2.3, 4.3.10, 4.4.7, 18.1; Order & Judgment ¶¶ 9, 17, Rec. Doc. 8139).  In 2013, the Court appointed a Special Master to, among other things, examine and investigate past or pending claims submitted to the DHECC which are deemed suspicious and to initiate legal action to "clawback" the payment of fraudulent claims.  (Rec. Doc. 11288 at 3).  This process eventually transitioned to the Claims Administrator for the DHECC.  (Rec. Docs. 14514, 14543).  The Court has previously ruled on multiple other "clawback" motions.[3]  As will be mentioned below, there is some factual overlap between the instant motion and one of these prior clawback motions.  (*See* Crystal Seafood Order, Rec. Doc. 18456).

Claimants each filed shrimp vessel owner or shrimp vessel captain claims with the DHECC under the Settlement's Seafood Compensation Program.  The DHECC found each of these claims eligible for compensation and paid a total of $2,365,396.72.  The claims and individual payment amounts are detailed below.  Following an investigation into these claims, the Claims Administrator and the Special Master jointly filed on behalf of the DHECC the instant "clawback" motion.  Although Claimants were represented by counsel, shortly before the DHECC filed its motion those attorneys withdrew their representation and repaid the $591,349.19 in legal fees collected on the claims.  Thus, the total amount now sought by the DHECC is $1,774,047.53.  Claimants subsequently retained new counsel.

---

[2] Some of the capitalized terms used here are defined in the Settlement.
[3] *See* Thonn Order, Rec. Doc. 12794; Burrle Order, Rec. Doc. 14747; Zirlott Order, Rec. Doc. 14752; Lambert Order, Rec. Doc. 14780; Taylor Order, Rec. Doc. 14813; Parker Order, Rec. Doc. 15325; Alfonso Order, Rec. Doc. 15400; Riley Order, Rec. Doc. 15448; Vision Design Order, Rec. Doc. 15744; Hai Do Order, Rec. Doc. 15845; Crystal Seafood Order, Rec. Doc. 18456.  The Fifth Circuit recently affirmed one of these decisions.  *See In re Deepwater Hoorizon*, No. 15-30574, 2016 WL 1397663, -- F. App'x -- (5th Cir. April 8, 2016) (unpublished per curiam).

**LEGAL STANDARD**

General maritime law applies to this matter. *In re Deepwater Horizon*, No. 15-30574, 2016 WL 1397663 at *3, -- F. App'x -- (5th Cir. April 8, 2016) (unpublished per curiam). The DHECC's motion is based on a claim of fraud. The elements of fraud under general maritime law are the same as under traditional common law: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance on upon the representation; and (6) the party suffered injury. *Id.* Furthermore, in order for the DHECC's motion to succeed on the briefs and without an evidentiary hearing, there must be no genuine dispute as to a material fact and the DHECC must be entitled to judgment as a matter of law. (*See* Thonn Order at 17, Rec. Doc. 12794; Parker Order at 4-5, Rec. Doc. 15325); *Cf. In re Deepwater Horizon*, 786 F.3d 344, 364 & n.68 (5th Cir. 2015) (when defendant presented substantial, but controverted, evidence that plaintiff submitted a wholly fabricated claim to settlement facility, district court should have held an evidentiary hearing to determine each witness' credibility).

**ARGUMENTS & DISCUSSION**

The thrust of the DHECC's motion is that each of the claims were based on fabricated trip tickets that did not represent genuine sales of shrimp.

**A.      Claims Based on the CAPT T**

LVS Investment Group Inc. ("LVS"), through its principal Sinh Tran (sometimes referred to as "Sinh," to avoid confusion with Christopher Tran and Victor Tran), filed a shrimp vessel owner claim relating to the CAPT T, a 93-foot freezer vessel. Sinh filed a captain claim

3

for this vessel. LVS and Sinh sought to have the claims paid under the Expedited Compensation Method using 2009 as the benchmark year. Given the size and type of vessel, LVS and Sinh needed to show that the CAPT T earned at least $400,000 in shrimp landings in 2009 in order to qualify for compensation under the Expedited Compensation Method. The Settlement required that shrimp claims be supported by either trip tickets or tax returns, among other documents. (Settlement, Ex. 10, Rec. Doc. 6430-22 at ECF p.12). LVS and Sinh submitted the following documents in support of their claims: five trip tickets reflecting $492,149.78 in shrimp landings for the CAPT T in 2009; LVS's 2009 corporate tax return, reflecting $492,150 in gross receipts; a sworn written statement wherein Sinh declared under penalty of perjury that the CAPT T had $492,150.00 in shrimp landings in 2009; and Sinh's 2009 tax return, reflecting he had $13,500 in gross income from "fishing" and $12,000 in gross income from work as a "seafood processor." The DHECC found both claims eligible and paid $397,868.24 to LVS and $228,444.00 to Sinh Tran. LVS later received another $262,733.06 as part of the Seafood Supplemental Distribution. Sinh Tran's supplemental distribution was placed on hold. From these amounts, former counsel received $222,261.33, which has been returned to the DHECC.

As mentioned, the DHECC's motion asserts that the trip tickets submitted for the CAPT T were fabricated and do not represent actual shrimp landings. All five of the trip tickets were purportedly issued by Titan Seafood Co. ("Titan"). Titan is owned by Victor Tran, who is the brother of Sinh and Christopher Tran (who filed the captain claim for the LADY KATHLEEN, discussed below).[4] The DHECC claims that Titan ceased operating in April 2009, when Victor

---

[4] In addition to filing the captain claim for the LADY KATHLEEN, Christopher Tran, acting as Titan's business representative, also filed a Business Economic Loss claim on behalf of Titan. Victor Tran and Christopher Tran owned another company, Crystal Seafood Company, Inc ("Crystal"). Christopher Tran filed a claim on behalf of Crystal as well. The DHECC paid the Crystal claim, but the Titan claim is still pending before the DHECC. On May 24, 2016, the Court determined Crystal's claim to be fraudulent and required Victor, Christopher, and Crystal to pay restitution. (Rec. Doc. 18456).

4

Tran was incarcerated. One of the five "Titan" trip tickets is dated April 4, 2009; the other four are dated between July 2009 and December 2009. None of the five trip tickets were recorded in the Texas trip ticket database.

Sinh Tran admits that he fabricated all five of the trip tickets. (Opp'n at 6-7, Rec. Doc. 15388). Nevertheless, Claimants argue that their claims were based on genuine shrimp landings. Sinh states in an affidavit that his prior experience with the Gulf Coast Claims Facility, a settlement program that preceded the DHECC, led him to believe that he needed to submit trip tickets or else the claims would be denied. Sinh states that he no longer possessed trip tickets from 2009, so he used LVS's 2009 corporate tax return and Sinh's personal notes of the CAPT T's shrimping activity to create the five "Titan" trip tickets. Furthermore, LVS and Sinh point out that while the five "Titan" trip tickets do not appear in the Texas trip ticket database, other trip tickets for the CAPT T were recorded in the Texas and Louisiana trip ticket databases. The two databases contain a total of eight trip tickets, reflecting that the CAPT T had $449,779.44 in shrimp revenue in 2009, which is over the $400,000 revenue threshold needed for Expedited Compensation. Seven of these trip tickets are from companies other than Titan. One ticket is from Titan, but it is from January 2009, before Titan allegedly ceased operating. In addition to the information in the databases, LVS and Sinh also produce two checks from 2009 totaling $70,000 paid by Sophies Seafood, Inc. Although these shrimp sales are not recorded in any database, no party disputes that wholesale shrimp purchasers sometimes do not issue a trip ticket or, when they do, do not record the trip ticket with the state. Thus, LVS and Sinh urge that they have evidence of $519,779.44 in 2009 shrimp revenue for the CAPT T. LVS and Sinh also note that the CAPT T's shrimp landings for 2008 were $532,536.61, suggesting that shrimp landings in excess of $400,000 in 2009 was not an anomaly.

The DHECC does not contend that the trip tickets recorded in the Texas and Louisiana databases are not genuine, nor does the DHECC dispute that the CAPT T had at least $449,779.44 in shrimp revenue in 2009.  Thus, there is no dispute that the CAPT T had more than $400,000 in shrimp revenue in 2009, meaning LVS and Sinh would have qualified under the Expedited Compensation Method, which is the method both requested.[5]

The DHECC does suggest that the two checks totaling $70,000 from Sophies Seafood, Inc. might actually be related to the SIR LAWRENCE, not the CAPT T, but those facts are disputable.  In any respect, the $70,000 from Sophies Seafood, Inc. is in addition to the $449,779.44 in recorded trip tickets; therefore, LVS and Sinh would still qualify under the Expedited Compensation Method even if the $70,000 was excluded.  The DHECC does question why Sinh chose to fabricate trip tickets when he could have requested records from the seafood purchasers or from the state databases.  For his part, Sinh states in an affidavit that he did request invoices from Flor-Tex, the company that purchased much the CAPT T's shrimp in 2009, but Flor-Tex refused his request.[6]  Sinh also claims that he did not know the Texas trip ticket database existed (he does not mention the Louisiana database).  The DHECC offers nothing to contradict Sinh's explanation.[7]  Finally, the DHECC points out that Sinh's personal tax return was never filed with the IRS, but this does not establish that the CAPT T did not have at least $449,779.44 in 2009 shrimp revenue.  Given that the DHECC does not dispute that the CAPT T

---

[5] Claimants point out that while LVS was initially determined to be eligible under the Expedited Compensation Method, the DHECC decided on its own to revise its determination and found LVS eligible under the Historical Revenue Method, increasing LVS's compensation amount by approximately $65,000.  The DHECC does not address this fact.  From the DHECC's papers, one would believe LVS was paid under the Expedited Compensation Method.  Because the DHECC raises no arguments regarding the Historical Revenue Method, the Court will not consider what effect, if any, compensation under the Historical Revenue Method would have on its analysis.

[6] As explained in the Court's May 24, 2016 decision to clawback payments to Crystal Seafood Company, Inc. and others (Rec. Doc. 18456), about five months after Titan allegedly ceased operating in April 2009, Flor-Tex began processing shrimp at the former Titan/Crystal location until around November 2010.

[7] This is in contrast to the claims relating to the SIR LAWRENCE, where the DHECC argues that the fabricated trip tickets enabled Christine Ho to recover as a vessel captain, when she was plainly not entitled to that award.

had at least $449,779.44 in shrimp revenue in 2009, Sinh's tax return does not create even a genuine dispute as to whether the Claimants met the Expedited Compensation Method revenue threshold.

To be clear, it is troubling that LVS and Sinh submitted fabricated trip tickets to the DHECC. However, because there is no dispute that the CAPT T had at least $449,779.44 in shrimp revenue in 2009, which is over the revenue threshold for the Expedited Compensation Method, the DHECC has failed to show that their misrepresentation was material or that it caused damage to the DHECC. Accordingly, the Court will deny the DHECC's motion with respect to LVS and Sinh Tran.

**B.     Claims Based on the SIR LAWRENCE**

Gulf Finest Investment Co. ("Gulf Finest"), acting through its principal, Sinh Tran, filed a shrimp vessel owner claim relating to the SIR LAWRENCE, an 88-foot freezer vessel. Christine Ho filed a shrimp boat captain claim for that vessel. Given the size and type of vessel, Gulf Finest and Ho needed to show that the SIR LAWRENCE had at least $400,000 in shrimp revenue during the benchmark period in order to qualify for compensation under the Expedited Compensation Method. Using 2009 as the benchmark year, the DHECC found both claims eligible under the Expedited Compensation Method and paid $467,250 to Gulf Finest and $288,750 to Ho. The DHECC later paid Gulf Finest an additional $236,325.35 and Ho an additional $177,098.15 under the Seafood Supplemental Distribution program. From these amounts, former counsel received $277,355.88, which has been returned to the DHECC.

In support of their claims, Gulf Finest and Ho submitted five trip tickets reflecting $472,779.39 in shrimp landings in 2009. All five of these tickets were purportedly issued by Titan after it allegedly ceased operating, and none of these are recorded in a state trip ticket

7

database.  As with the CAPT T claims, the DHECC contends that all five trip tickets were fabricated.  The DHECC also points out that Christine Ho filed a claim with the GCCF on behalf of World Nails II, a business she claimed to own.  Ho's 2008 and 2009 tax returns submitted to the GCCF state that Ho is a "beautician."

     Christine Ho does not contest the DHECC's motion with regard to her vessel captain claim and concedes that the motion may be granted with respect to her.  (Opp'n at 2 n.2, Rec. Doc. 15388).  As to Gulf Finest's vessel owner claim, Sinh again admits that he fabricated the trip tickets.  Similar to the CAPT T claims, Sinh asserts that he no longer had 2008 or 2009 trip tickets in his possession, so he used Gulf Finest's tax returns and his personal notes to create the Titan invoices.  However, Claimants point out that the Texas and Louisiana databases do record trip tickets for the SIR LAWRENCE in 2009 that total $335,419.41.  Claimants also present four trip tickets that were not recorded in any state database.  Three of these are from Flor-Tex (*see* footnote 6 and related text, *supra*) and reflect $56,081.00 in additional shrimp landings.  The fourth unrecorded "trip ticket" is actually a check from Crab International for $88,650.00.  Thus, Claimants assert that there is evidence showing the SIR LAWRENCE earned $480,150.41 from shrimping in 2009.

     In reply, the DHECC points out that the $88,650 check from Crab International is likely duplicative of a trip ticket that was recorded in the Louisiana database.  Deducting this amount from SIR LAWRENCE's 2009 totals brings its shrimp revenue down to $391,500.41, which is below the $400,000.00 threshold for Expedited Compensation.  However, the Settlement permits benchmark revenue to come from either 2009, the average of 2008-2009, or the average of 2007-2009.  Gulf Finest's claim to the DHECC also stated that SIR LAWRENCE had $430,530.47 in 2008 shrimp revenue, which was apparently based on Gulf Finest's 2008 tax return.  This return

was filed on December 7, 2009—months before the oil spill occurred—so there is little reason to suspect that the return was artificially inflated. Claimants also submit with their opposition trip tickets (recorded and unrecorded) reflecting shrimp landings in 2008 that total approximately $600,000. Thus, the record before the Court reflects that the SIR LAWRENCE had at least $430,530.47 in 2008 shrimp revenue. Consequently, even if the SIR LAWRENCE only had $391,500.41 in 2009 shrimp revenue, if this amount is averaged with the 2008 revenue of $430,530.47, the SIR LAWRENCE's benchmark revenue would still exceed the $400,000 revenue threshold.[8]

As with the CAPT T claims, the DHECC has failed to show that Gulf Finest's misrepresentation was "material" or that it caused damage to the DHECC. Accordingly, the motion will be denied with respect to Gulf Finest. However, in light of Christine Ho's admission, the motion will be granted with respect to her.

### C. Claims Based on the LADY KATHLEEN

Ngoc Lam filed a shrimp vessel owner claim for the LADY KATHLEEN. Christopher Tran (sometimes referred to as "Christopher" to avoid confusion with Sinh Tran and Victor Tran) filed a shrimp boat captain claim for the LADY KATHLEEN. Lam and Christopher sought to be paid under the Historical Revenue Method, using 2008 as their benchmark year.[9] In support of their claims, Lam and Christopher submitted eight trip tickets purportedly issued by Titan in 2008 which reflect $467,067 in shrimp revenue. Relying on these trip tickets, the DHECC found these claimants had established a 2008 benchmark revue of $467,067. After deducting for prior spill-related payments, Lam was paid $366,927.92. From this amount,

---

[8] Additionally, if the DHECC is correct that the $70,000 from Sophies Seafood, Inc. pertains to shrimp caught by the SIR LAWRENCE and not the CAPT T (*see* discussion re CAPT T, *supra*), then, after adding that amount to the $391,500.41, the SIR LAWRENCE has over $400,000 in 2009 shrimp revenue.

[9] Because the LADY KATHLEEN allegedly suffered a major mechanical failure in 2009, the DHECC excluded that year from consideration.

9

former counsel received $91,731.98, which has been returned to the DHECC. The DHECC also found Christopher eligible for $249,501.78 in compensation, but payment was placed on hold. Consequently, the DHECC's motion does not seek to clawback payments from Christopher.

As with the claims submitted for the CAPT T and SIR LAWRENCE, the DHECC argues that the eight Titan trip tickets submitted by Lam and Christopher are fabrications. Unlike the CAPT T and SIR LAWRENCE claims, however, here the DHECC concedes that Titan was operating as a seafood processing facility in 2008. Instead, the DHECC's fraud allegation is largely based on the fact that none of the trip tickets appear in the Texas or Louisiana trip ticket database and that seven of the eight trip tickets differ in appearance from other Titan trip tickets that are found in the Texas database. As to the latter point, the DHECC points out that the trip tickets in the Texas database use serif and italicized typeface for the "Titan" name and identifying information, whereas the seven trip tickets submitted by Lam and Christopher use sans-serif and un-italicized typeface. (*See* Motion p.11, Rec. Doc. 14761-1). The DHECC also notes other anomalies with the way numeric values are presented on these seven tickets.[10] The DHECC also supports its position by pointing out that Christopher Tran is the vice president and a board member of Titan. Finally, the DHECC notes that $467,067 in revenue reflected on the Titan trip tickets submitted to the DHECC is more than double the gross shrimping revenue Lam reported on her 2008 federal tax return. The DHECC argues that this supports its position that the Claimants fraudulently inflated the gross shrimping revenue attributable to the LADY KATHLEEN.

Unlike the claims based on the CAPT T and the SIR LAWRENCE, Claimants respond here by asserting that the invoices submitted for the LADY KATHLEEN are valid and

---

[10] For example, the "unit price" is only listed to the 1/10th of a dollar, rather than the 1/100th of a dollar. The numbering of the seven trip tickets is also out of sequence with other Titan tickets in the Texas database from the same time period.

genuine—the fact that the invoices do not appear in the Texas database does not establish that they were fabricated. Indeed, the DHECC does not dispute that it is the commercial purchaser's, not the vessel owner's, responsibility to file trip tickets with the state, nor does it dispute that it is not uncommon for purchasers to fail to do this. The Claimants also submit the declaration of Thomas Crane, who oversaw Titan's shrimp processing facility. Crane states that while he knew that shrimp purchases needed to be reported to the National Oceanic and Atmospheric Administration, he was not aware that Titan needed to file trip tickets with the State of Texas until August 2009, when he was cited with (and later pled guilty to) a class "C" misdemeanor for failing to do so. (Ex. D to Claimant's Response, Rec. Doc. 15388-4). Crane states that he did not file any Titan trip tickets with the state during 2007 and 2008, and that any trip tickets that were reported to the State during that time would have been done by one of the two secretaries working at Titan. Crane also provides an explanation for the irregular appearance of the seven Titan invoices: He states that Titan did not have a central computer server; rather, each of the company's six computers contained its own invoice template. Thus, an invoice generated from one computer might not be consistent with an invoice from another computer. As to the discrepancy between the shrimp revenue reported in Lam's 2008 tax return and the shrimp revenue reported in the trip tickets, Claimants only argue that the discrepancy is immaterial given that the DHECC did not rely on the tax return.

There is reason to be suspicious of Lam's and Christopher's claims based on the LADY KATHLEEN. However, here the DHECC's burden is not satisfied by raising suspicion. On the present record, there is at least a genuine dispute as to whether the 2008 trip tickets were fabricated. It is undisputed that Titan was operating as a shrimp processor in 2008. It is undisputed that the LADY KATHLEEN was owned by Lam and captained by Christopher and

that the LADY KATHLEEN was engaged in and earned revenue from commercial shrimping in 2008. There is no dispute that trip tickets are not always filed with the state; the fact that a trip ticket does not appear in a state database does not establish its non-existence. Crane's declaration, particularly the fact that he was cited for failing to file trip tickets, supports the Claimants' version of the facts that the tickets are authentic, although unfiled. The irregular appearance of the trip tickets obviously raises concern, but Crane's explanation regarding the lack of a central server must be accepted under the present legal standard. The fact that Lam's 2008 tax return reflects less than half the revenue in the trip tickets also raises suspicion about the tickets' authenticity, but it hardly establishes as a matter of law that she defrauded the DHECC.[11]

The Court does not weigh evidence at this stage. There are material facts in dispute. Consequently, the DHECC is not entitled to the relief it seeks absent an evidentiary hearing. The motion will be denied with respect to Ngoc Lam.

## CONCLUSION

For these reasons,

IT IS ORDERED that the Motion for Leave to File Sur-Reply (Rec. Doc. 15559) is GRANTED.

IT IS FURTHER ORDERED that the Motion of the Deepwater Horizon Economic Claims Center for Return of Payments Made to Claimants from the Vessels SIR LAWRENCE, CAPT T, LADY KATHLEEN and Others (Rec. Doc. 14761) is GRANTED IN PART and with respect to Christine Ho and DENIED IN PART and with respect to Gulf Finest Investment Co., LVS Investment Group Inc., Sinh Tran, and Ngoc Lam.

---

[11] For one thing, it is possible that the trip tickets are accurate and that Lam grossly underreported her taxes.

New Orleans, Louisiana, this 23rd day of August, 2016.

_____
United States District Judge