UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : : | MDL 2179 SECTION "J" |
| This Document Applies to: | : : | Judge Barbier |
| No. 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al. | : : : | Mag. Judge Shushan |

**SUR-REPLY OF CLAIMANTS GULF FINEST INVESTMENT, CO.; LVS INVESTMENT GROUP, INC.; SINH TRAN; NGOC LAM; AND CHRISTOPHER TRAN**

Gulf Finest Investment Co. ("Gulf Finest"), LVS Investment Group Inc. ("LVS"), Sinh Tran, Ngoc Lam, and Christopher Tran (collectively, "Claimants") respectfully request this Court's consideration of their Sur-Reply.

The Special Master has failed to establish that, based on the undisputed facts in the record, he is entitled to judgment as a matter of law with respect to the elements of common law fraud. *See* Fed. R. Civ. P. 56(c). Namely, (1) that the defendant made a false representation of material fact; (2) that the defendant knew or believed that the representation was false; (3) that the defendant intended to defraud the plaintiff by inducing the plaintiff to act in reliance on the representation; (4) that the plaintiff justifiably relied on the representation; and (5) that the plaintiff was damaged because of such reliance.[1] The Special Master, again, cites virtually no law in his Reply brief to support the position that the payments should be clawed back, and provides no legal analysis as to how the elements of fraud are satisfied here.

While the Special Master states repeatedly that Claimants made false representations, he ignores the fact that the false representation was not material, there was no

---

[1] *See, e.g., Operaciones Tecnicas Marinas v. Diversified Marine Servs.*, 926 F. Supp. 2d 858, 862 (E.D. La. 2013); *Bulgo v. Munoz*, 853 F.2d 710, 716 (9th Cir. 1988).

intent to defraud because Claimants were entitled to the payments, the DHECC did not rely on the false statements, and the DHECC was not damaged. In that regard, the false representation with the *Sir Lawrence* and *Capt T* vessel owner claims and the *Capt T* captain claim was that the invoices, themselves, were not genuine; the representations as to qualifying shrimp landings for those vessels were not false. A finding of fraud requires both intent to make a false representation and intent to defraud with that false representation.[2] Moreover, the false information contained in the invoices is details of the sales that were not material to Claimants' eligibility, and the claims were supported by other material documentation upon which the DHECC actually relied in paying the claims. As to the *Lady Kathleen* claims, there was no false representation. None of the issues raised in the Reply brief changes this analysis, many of the facts asserted are incorrect, and the Special Master has not presented clear and convincing evidence of fraud.

## I. The Capt T Claims.

It is undisputed that the *Capt T* had more than $400,000 in qualifying shrimp revenue in 2009 to qualify for the expedited compensation model, the method that both LVS and Sinh requested for calculating their claims. Records on file in the Texas trip ticket database and the Louisiana trip ticket database conclusively establish that the *Capt T*'s 2009 shrimp landings were no less than $449,779.44; that is the value of the trip tickets on file. *See* Opp., Ex. "B-2." As such, both the *Capt T*'s vessel owner claim and boat captain claim were properly paid to the correct Claimant and neither the DHECC nor any other Claimant was damaged by the DHECC's supposed reliance on the inauthentic trip tickets. Therefore, even if the Special Master is correct that the accounting provided by Claimants for the *Capt T* includes $70,000 in payments from

[2] *See U.S. v. Godwin*, 566 F.2d 975, 976 (5th Cir. 1978) ("intent to deceive and intent to defraud are not synonymous.").

Sophie's Seafood that could possibly be related instead to shrimp sales for the *Sir Lawrence*, that amount is in addition to the $449,779.44 in shrimp landings on file in Louisiana and Texas.[3]

Moreover, whether the Sophie's Seafood payment is attributable to the *Capt T* is irrelevant – Claimants provided a thorough analysis of their shrimp sales in order to show the reliability of the $492,150 in sales that Sinh represented to the DHECC as the *Capt T*'s 2009 shrimp landings. However, the payment under the expedited compensation model is the same, regardless, because claims were paid the same amount if shrimp revenue for the benchmark period "meets/exceeds your Minimum Qualifying Revenue," which for a vessel the size of the *Capt T* was $400,000. *See, e.g.*, Ex. "A," Sinh Eligibility Notice, attached hereto, at p. 6.

The Special Master also fails to establish other elements of fraud. In particular, the DHECC did not rely on the inauthentic trip tickets when paying the claims.[4] The boat captain claim was paid on the basis of the following: "The claimant has submitted a SWS-1, confirming revenue which is located on the 2009 Form 1120 [corporate tax return]…The claim is compensable for $288,750.00 under the Expedited Compensation Method." Ex. "A," at p. 2 (Reconsideration Analysis). The claim was originally denied because the DHECC only included trip tickets filed in the Louisiana database, but upon reconsideration of Sinh's sworn written statement that the *Capt T* had $492,750 in total shrimp landings in 2009, and LVS' timely-filed 2009 corporate tax return confirming the same amount, the DHECC concluded that the expedited compensation criteria had been met. *See* Ex. "B," SWS-1, attached hereto; Opp. Ex. "H," LVS Tax Transcript. Thus, the DHECC did not rely on the trip ticket documentation submitted by Sinh. Nor did the DHECC need to rely on the trip tickets submitted: claimants could submit

---

[3] The DHECC's claim is also unlikely, particularly with regard to the $50,000 check from Sophie's Seafood that states in the memo line that the payment is for the "Justin Boy," which is a name that the *Capt T* has gone by over the years. *See* Opp. Ex. "B" & "B-2."

[4] *See, e.g., Armenian Assembly of America v. Cafesjian*, 924 F. Supp. 2d 183 (D.D.C.).

either trip ticket documentation or tax returns and sufficient documentation, such as the SWS-1, to identify the gross revenue derived from shrimping for the vessel during the benchmark year.[5] As such, the claim was properly documented and paid.

The DHECC based LVS' vessel owner claim on the same documentation – and calculated the claim under the expedited compensation method for a vessel with shrimp revenue at or above $400,000 – in its initial eligibility notice. *See* Opp. Ex. "E," LVS Eligibility, at p. 5 (information relied upon stated as "Sworn Written Statement."). LVS accepted that award of $332,750; however, the DHECC of its own accord revised LVS' eligibility notice to include trip tickets found in the Louisiana database of $108,792 in 2009 and $65,027 in 2008. *See* Opp. Ex. "F," LVS Revised Eligibility. Therefore, based on the Sworn Written Statement and the Louisiana trip ticket database, the DHECC determined that, under the Historical Revenue Method, the vessel owner claim should be increased by approximately $60,000. *See id*., at pp. 5, 7. But again, the DHECC did not rely on the inauthentic Titan trip tickets in calculating the claim. Moreover, no evidence of the *Capt T*'s 2008 shrimp landings was submitted in support of the claim, and the *Capt T* had far more shrimp landings in 2008 than the $65,027 shown in the Louisiana database. Had Claimants submitted information reflecting the *Capt T*'s 2008 shrimp landings, the true damages assessment would have been even higher. *See, e.g.,* Opp. Ex. "B-1" (documenting $532,526.61 in 2008 *Capt T* landings in Texas and Louisiana).

---

[5] This underscores why the Special Master's argument that the invoices that Sinh created do not "match" the Texas database is unpersuasive. Even assuming that the details of the database are completely accurate, which they are not, any failure to exactly replicate that data is not a material misrepresentation. Claims were paid based solely on tax returns and sworn statements as to the total volume of shrimp sales, with no information as to the details of each trip. The total value of shrimp landings for the year is the only issue that is significant. In that regard, more than sufficient documentation has been presented to establish that the corporate tax returns filed by Sinh accurately represent the total shrimp landings for his vessels. *See also* Ex. "I," 2007 Gulf Finest Tax Return, attached hereto (reporting pre-oil spill gross shrimp revenue of approximately $450,000 not even included in DHECC claim); Ex. "C-1," 2014 Notes and Documentation, attached hereto (similar notes of shrimp landings for *Capt T* and *Sir Lawrence* as used to calculate DHECC claims).

The claims only needed to be supported by a tax return and a Sworn Written Statement – there was no need to submit the Titan trip tickets – and both claims were in fact paid in reliance on the LVS tax return and Sinh's Sworn Written Statement. Therefore, the Special Master is incorrect that the DHECC "paid claimants based on false representations and fake records." In addition, the falsity (inauthentic additional documentation) was not a material false representation because the representation as to qualifying shrimp income was true. Further, *Hazel-Atlas Glass v. Hartford Empire Co.*, the only case cited by the Special Master, is distinguishable – the false document at issue was, itself, materially misleading because the deceptive attribution of authorship to a neutral person changed the meaning of the information contained in the document.[6] That is clearly not the situation here.

The Special Master's argument regarding Sinh's 2009 personal tax return misses the mark for similar reasons. First, it was not "fabricated;" failure to file the return was inadvertently. *See* Ex. "C," Second Sinh Decl., attached hereto. Second, it was not material to the determination of Sinh's boat captain claim, which is the only claim for which it could possibly have relevance, because the DHECC did not rely upon it in paying the claim. As explained, the DHECC relied solely on Sinh's Sworn Written Statement and LVS' corporate tax return in paying the claim.[7] Most importantly, unlike other claimants where this Court has addressed the issue of a tax return submitted in support of a claim when that return was never filed with the IRS, here, there was no misrepresentation or intent to defraud.[8] In those cases, the claimant submitted the fake tax return so that he appeared to have income from shrimping when

---

[6] 322 U.S. 238, 246-27 (1944).

[7] Nor would the DHECC ever rely on his personal tax return to calculate the captain claim because the claim is compensable based on the gross shrimping revenue from the captain's vessel, not his personal take-home pay.

[8] *See, e.g.*, Thonn Order, Rec. Doc. 12794 (fake tax return representing fake income).

he did not; here, there is no doubt that Sinh is a full-time commercial shrimper who derived his 2009 income from shrimp landings on the *Capt T*. *See* Opp Ex. "B-2" (Texas database and all 2009 trip tickets for *Capt T* listing Sinh Tran as Captain).

**II.    The Sir Lawrence Claims**

The issues raised in the Reply brief with regard to Gulf Finest's vessel owner claim are similarly misleading or immaterial. For example, Claimants have agreed not to contest the captain claim paid to Christine Ho, and whether the vessel owner claim paid to Gulf Finest is valid and supported by genuine shrimp landings for the *Sir Lawrence* has nothing to do with that claim. The validity of each claim was determined on the facts of that claim, and Ms. Ho's eligibility for the captain claim has no bearing on Gulf Finest's eligibility for the vessel owner claim.[9] And at any rate, Ms. Ho has agreed not to contest the claim, so there is no harm to be remedied.[10] Further, the Special Master's contention that Phi Nguyen served as boat captain for the *Sir Lawrence* in 2009, thereby insinuating that Ms. Ho's claim, which was based on 2009 sales, prevented an innocent third party from receiving the boat captain's share, is simply untrue. Phi Nguyen never captained the *Sir Lawrence* in 2009. *See* Ex. "C," attached hereto.

Indeed, Mr. Nguyen's own submissions to the DHECC do not support such a proposition. In Mr. Nguyen's initial Sworn Written Statement submitted to the DHECC, and not

---

[9]   *See, e.g., Simons v. Gorsuch*, 715 F.2d 1248 (7th Cir. 1983) ("nothing in [the] allegations of wrongdoing goes to the grounds upon which the case was decided."). In addition, the misunderstanding of the eligibility criteria for the seafood program was that Ms. Ho has a boat captain's license, which she has used to serve as the boat captain for the *Sir Lawrence* many times both before and after the oil spill. Ms. Ho, however, now understands that she did not meet the specific criteria for payment under the Settlement Agreement.

[10]  Moreover, Sinh and Ms. Ho do not live together. *See* Ex. "C," attached hereto. While the Special Master makes much of Ms. Ho identifying Sinh as her spouse, he neglects to mention that in 2013 when the DHECC inquired about her marital status, she reported that she was "Single." *See* Ex. "D," Certification of Marital Status, attached hereto. Ms. Ho also did not decline an "interview" with the DHECC – when undersigned counsel attempted to settle the matter, reporting to counsel for the Special Master that Ms. Ho would not be contesting her claim, counsel for the Special Master stated that he wanted to depose Ms. Ho. However, there was nothing left to investigate, as Ms. Ho was not contesting the claim.

provided with the Special Master's Reply brief, Mr. Nguyen reported $600,000 in shrimp landings on the *Sir Lawrence* in 2008, and none for that vessel in 2009. *See* Ex. "E," Nguyen SWS, attached hereto. Mr. Nguyen then apparently changed his sworn written statement to report a much lower shrimp landing value for the *Sir Lawrence* in 2008 and included for the first time, $23,910.05 in 2009 landings. *See* Ex. "F," Second SWS, attached hereto. The problems with Mr. Nguyen's claim, and its non-payment, have nothing to do with Sinh or Ms. Ho.[11]

Moreover, the only documentation that even arguably supports Mr. Nguyen captaining the *Sir Lawrence* at any time during 2009 is the Texas trip ticket database that contains <u>one trip</u> (July 6, 2009) listed under Mr. Nguyen's name, which resulted in the approximate $23,000 shrimp landing that Mr. Nguyen reported to the DHECC when it became clear that he did not have sufficient documentation of his legitimate 2009 landings on another vessel. *See* Reply Br., Ex. "D." As explained, Texas processors are far from meticulous in reporting shrimp sales, and the database often contains errors. *See also* Ex. "C," attached hereto. Further, it is unclear which "Flor-Tex records" the Special Master is referring to that purportedly show "numerous payments for work performed by Nguyen along with Sinh Tran" on the *Sir Lawrence* because nothing is attached to the Reply brief in support of these statements.

Presumably, the Special Master is referring to Flor-Tex cancelled checks that he produced to Claimants' counsel in this litigation, which document numerous Flor-Tex 2009 payments to Sinh Tran for both the *Capt T* and the *Sir Lawrence*. *See* Ex. "G," Flor-Tex Checks, attached hereto. However, those records do not support the Special Master's contention: the records show a few small payments to a Luc Nguyen (not Phi Nguyen or Loc Phi Nguyen) for work on the *Justin Boy*, which is the *Capt T*. *See id*. In other words, the only payments in the

---

[11] Even if this approximately $23,000 in 2009 shrimp landings for the *Sir Lawrence* were attributable to Mr. Nguyen, that amount is too small to make any difference in the calculation of his claim.

7

Flor-Tex records to anyone other than Sinh is approximately $2,500 paid for work on a different vessel to a different person. *See id*.[12] As such, no other Claimant was harmed by the *Sir Lawrence*'s 2009 boat captain claim being paid to Ms. Ho, and again, Claimants are not contesting that claim.

Most importantly, contrary to the Special Master's assertion, the *Sir Lawrence* had sufficient shrimp revenue to qualify for the vessel owner claim. As with the *Capt T*, the claim could have been paid on the basis of the Gulf Finest tax returns submitted to the DHECC, showing $472,780 in gross shrimp revenue for the *Sir Lawrence* in 2009. *See* Ex. "H," attached hereto. Gulf Finest also submitted its 2008 tax return showing $430,521 in gross shrimp revenue for the *Sir Lawrence*. *See* Opp. Ex. "J." The reliability of the Gulf Finest tax returns, and the fact that the *Sir Lawrence* regularly lands in excess of $400,000 in shrimp, is further supported by reviewing Gulf Finest's 2007 tax return, which was filed almost two years before the oil spill and was not even submitted as part of Claimant's claim. *See* Ex. "I," Tax Return, attached hereto. The 2007 return shows $450,320 in shrimp landings for the *Sir Lawrence*. *See id*.

In addition, the accounting provided by Claimants with their Opposition demonstrates the reliability of Claimants genuine shrimp sales during the benchmark years; it was not intended to serve as a perfect accounting – Claimants specifically stated that they do not have all of the back-up documentation from so many years ago.[13] Therefore, even if the DHECC is correct that one payment in the *Sir Lawrence*'s 2009 accounting is duplicative, the other documentation submitted to the DHECC and provided to the Court is sufficient to establish that

---

[12] This small amount was likely paid to Luc Nguyen for work de-heading shrimp caught on the *Capt T* and sold to Flor-Tex. None of the Flor-Tex invoices or trip tickets provided in this case by the Special Master or Claimants identifies Phi Nguyen as the boat captain for the *Sir Lawrence*. *See* Opp. Exs. "B-2" & "B-5."

[13] The 2007 tax return supports the credibility of Claimants' accounting to this Court, which documented $437,867.52 in 2007 *Sir Lawrence* shrimp sales, very close to the amount reported to the IRS. *See* Opp. Ex. "B-3."

the *Sir Lawrence* met the $400,000 threshold to qualify for payment under the expedited compensation model. For example, even if the Court were to accept the $391,000 in 2009 shrimp revenue that the DHECC alleges is all that Claimants can document in trip tickets for that year, when averaged with the *Sir Lawrence*'s documented 2008 shrimp revenue, the vessel's benchmark revenue is well in excess of $400,000.[14] Finally, the Flor-Tex payment records attached hereto include an October 2009 check for $20,000 that was not previously included in Claimants' calculations or the Texas database, establishing that the invoice and trip ticket records for 2009 are also in excess of $400,000. *See* Ex. "G," attached hereto. Accordingly, neither the DHECC nor any other claimant was damaged by paying the vessel owner claim.

### III. The Lady Kathleen Claims.

As explained, claims could either be supported by tax returns or trip tickets. The *Lady Kathleen* claims were supported by genuine trip tickets, upon which the DHECC relied, and therefore, it is immaterial whether that documentation also matches the tax returns filed by Ms. Lam, upon which the DHECC did not rely in paying the claims.[15] Moreover, the DHECC cannot base a claim of fraud on documentation it always had in its possession, rather than newly discovered information.[16]

It is also simply not true that none of the *Lady Kathleen* invoices have the same appearance as other Titan trip tickets. For example, the attached 2007 *Lady Kathleen* invoices

---

[14] Further, that only accounts for documented shrimp landings provided by Claimants to the DHECC. As stated above, if the *Sir Lawrence*'s 2007 shrimp landings were included in the average, it would exceed $400,000 by an even greater amount.

[15] It is also not surprising that Ms. Lam's tax return for 2009 reports a much lower volume of shrimp sales for the *Lady Kathleen*. That year was a low year due to a mechanical failure on the *Lady Kathleen*, which is why Claimants sought to exclude 2009 from their DHECC claims calculation.

[16] *See* Fed. Rules Civ. Proc. 60(b); *Rayford v. N.Y. Life Ins. Co.*, 359 F. Supp. 139, 144 (E.D. La. 1973) (voluntary disclosure of relevant facts showed lack of intent to deceive); *Hawes v. Kilpatrick Funeral Homes, Inc.*, 887 So.2d 711, 715 (La. App. 2 Cir. 2004) (no fraud where the facts can be ascertained from the documents).

9

submitted to the DHECC have a very similar appearance to 2007 *Sir Lawrence* invoices (not submitted in support of the *Sir Lawrence* claims) that are all within a few weeks of each other, two of which are consecutively numbered on the exact same day. *See* Ex. "J," 2007 Invoices, attached hereto. Similarly, the attached 2008 invoices from all three vessels have a consistent appearance and invoice numbering over the timeframe. *See* Ex. "K," 2008 Invoices, attached hereto. As explained by Tommy Crane, the invoices differ in appearance because they were printed from the hard drives of different computers that were not linked to a central server. *See* Opp. Ex. "D." The fact that invoices for different vessels from a similar time period are consistent in appearance furthers this explanation.

Mr. Crane also stated under oath that no Titan trip tickets were reported to the Texas database in 2007 and 2008 because he was not even aware that there was a reporting requirement. *See id*. Therefore, the fact that the *Lady Kathleen* 2007 and 2008 trip tickets do not appear in the database has nothing to do with whether they are genuine. Likewise, the existence of three 2009 Titan trip tickets in the database, all of which reflect minimal shrimp landings, that Claimants did not provide to the DHECC with their claims does not support a conclusion that the 2007 and 2008 invoices are not genuine. Claimants provided the DHECC with the invoices they had in their possession, which included very few 2009 invoices because Claimants sought to exclude that year from the calculation due to a major mechanical failure. Claimants only provided one 2009 invoice to the DHECC, and that invoice was not even included in the calculation because 2009 was excluded from the *Lady Kathleen*'s benchmark period.[17]

---

[17] Notwithstanding the irrelevance of the one 2009 invoice, the Special Master's assertion that Titan stopped all processing the very day that Victor Tran was incarcerated is inconsistent with how businesses function and unsupported by the evidence presented from Sinh and Christopher that they assisted in running the processing facility after Victor was incarcerated. *See* Opp. Exs. "A" & "B"

Accordingly, at the very least, Claimants have presented evidence that genuine issues of material fact exist as to whether the *Lady Kathleen* claims were properly paid and judgment should not be granted as a matter of law. Based on the foregoing and Claimants' Opposition, the DHECC's Motion should be denied.

<div style="text-align: right;">

Respectfully submitted

/s/ Ellie T. Schilling
William P. Gibbens, 27225
Ellie T. Schilling, 33358
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Fax: (504) 680-6051
billy@semmlaw.com
ellie@semmlaw.com

Attorneys for Claimants, Gulf Finest Investment Co., LVS Investment Group Inc., Sinh Tran, Ngoc Lam, and Christopher Tran

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing pleading was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of November, 2015.

<div style="text-align: right;">

/s/ Ellie T. Schilling
ELLIE T. SCHILLING

</div>