## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: Oil Spill by the Oil Rig | ) | |
| "Deepwater Horizon in the | ) | **MDL No. 2179** |
| Gulf of Mexico, on April 20, 2010 | ) | **Section J** |
| | ) | |
| | ) | **Judge Carl J. Barbier** |
| **This document relates to:** | ) | |
| | ) | **Mag Judge Shushan** |
| | ) | |
| No. 12-970, *Bon Secour* | ) | |
| *Fisheries, Inc. et al. v. BP* | ) | |
| *Exploration Production Inc., et al*) | | |

---

### OPPOSITION TO MOTION OF THE DHECC FOR
### RETURN OF PAYMENTS MADE TO CLAIMANT MARTIN FORMENTO
### AND WILLIAM A. BECKER CONSULTING, LLC

### I.      INTRODUCTION

DHECC alleges that Martin Formento (Claimant) and preparer William A. Becker

Consulting LLC (Becker) fraudulently presented financial data for the purpose of

increasing Formento's post-spill economic loss. According to DHECC it reasonably

relied on the alleged fraudulent data when it awarded and made payment to Formento.

DHECC seeks a return of all payments made from both parties and Forment's attorneys.

The motion fails for the following reasons:

1.      The alleged fraudulent actions in the motion preceded knowledge of loss

calculation methodology in the Deepwater Amended Settlement Agreement, that became

effective in 2012, so that the claimant and Becker could not have intended to defraud DHECC;

2.      The evidence of actions taken by the claimant and Becker is not consistent with DHECC's claims of fraud and creates issues of fact. In fact, Formento's financial documents show he acted *against* his best interests when preparing profit and loss statements just as he had before the spill when filing his tax returns.

3.      There is no evidence that Becker was complicit with Formento by submitting claimant's second set of profit and loss statements. Becker had no reason to doubt the validity of the statements and did not have control over their creation.

## II.      Legal Standards

### A.      Summary Judgment Generally

DHECC can only obtain summary judgment on a fraud claim if it shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). "The non-moving party can then defeat the motion by either countering with sufficient evidence of its own, or 'showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party.' *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1265 (5th Cir. 1991). Any factual controversies must be construed in the light most favorable to the non-mover, assuming an actual controversy exists. *Edwards v. Your Credit, Inc.,* 148 F.3d 427, 432 (5th Cir. 1998). Summary judgment must be denied when reasonable minds might differ on the inferences arising from the undisputed facts. *Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 352 (5th Cir. 1989)."

In that regard, summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The initial burden of showing that no genuine issue of material fact exist rests with the movant. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The court's function on a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Moreover, "if the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp,* 37 F.3d 1069, 1075 (5th Cir. 1994). Only when the moving party has discharged its initial burden, does the burden shift to the non-moving party to set forth specific facts showing there is a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e).

### B.      Fraud – The Required Elements

The Amended Settlement Agreement governing the settlement program, provides that general maritime law applies to any disputes regarding the Agreement or the settlement program. Amended Settlement Agreement, § 36.1. General maritime law incorporates the common law of fraud. *See Black Gold Marine, Inc. v. Jackson Marine Co., Inc.,* 759 F.2d 466, 470 (5th Cir. *1985); Operaciones Technicas Marnas S.A.S. v. Diversified Marine Servs, LLC,* 926 F. Supp. 2d 858, 862 (E.D. La. 2013); *Cargill, Inc. v. Degesch Am., Inc. 875* F. Supp. 2d 667, 674 (E.D. La. 2012); *Elmwood Dry Dock &*

*Repair v. H & A Trading Co., Ltd.,* Nos. 93-02156, 94- 01844, 94-*03783, 97-00191, 1997 WL 781298, at \*21 (E.D. La. Dec. 16, 1997).*

DHECC must establish that based on the undisputed facts in the record, they are entitled to judgment as a matter of law with respect to each of the five elements of common law fraud:

1.      Claimant made a false representation;

2.      Claimant knew or believed that the representation was false;

3.      Claimant intended to defraud the DHECC by inducing the DHECC to act in reliance on the representation;

4.      DHECC justifiably relied on the representation; and

5.      DHECC was damaged because of such reliance.

*See eg Operaciones,* 926 F. Sup. 2d at 862; *Cargill,* 975 F. Supp. 2d at 674; *Elmwood,* 1997 WL 781298, at 21-22.

The existence of fraud is a question of fact.  *Terrebonne Concrete LLC v. CED Enters., LLC*, No. 2011-0072, 76 So. 3d 503, 510 (La. App. 1 Cir. 8/17/2011).

**C.     Intent to Defraud Is Measured at the Time the Alleged Representation Is Made.**

The element of intent refers to a specific intent.  *Chateau Homes ex rel. RJM, Inc. v. Aucoin*, Nos. 11-C4-1118-1119, 97 So. 3d 398, 404-405 (La. App. 5th Cir. 5/31/15). In other words, fraud cannot be predicated on a mistake or negligence, even gross negligence.  *Terrebonne Concrete LLC*, 76 So. 3d at 509  (president of company not liable for fraud by silence when there was no evidence of a breach of a duty to speak, affirmative representation or knowing concealment of information).

**The inquiry focuses on the defendant's specific intent *at the time the alleged representation was made.*** The general rule is that "plaintiffs must show that the defendant knew, *at the time the representations were made*, that they were false.  37 Am. Jur 2d. *Fraud & Deceit* § 109 (2013) (emphasis added).  In some circumstances, the requisite intent can be inferred from the parties' acts after the representation was made. *Id.*

One Fifth Circuit case squarely addresses the issue.  In *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390 (5th Cir. 2010), the question arose in the context of a settlement agreement of a prior fraud and breach of contract case involving the sale of securities.  The plaintiff, Arete Partners, sued Gunnerman for breach of the settlement agreement and fraud.  This second action was also settled and the terms of the settlement agreement, which were complicated, were read into the record.  *Id.* at 392.  The parties later modified the agreement's terms with respect to cash payments and stock transfers.  Gunnerman breached the modified, second settlement agreement by failing to send an expected payment.

The district court ruled for Arete Partners on both claims and Gunnerman appealed.  In reversing the district court, the Fifth Circuit recited the elements of fraudulent inducement in Texas, which are somewhat similar to the elements of fraud in Louisiana.  The court stated, "[a] party's intent is determined at the time the party made the representation; however, a party's intent may be inferred by the party's subsequent acts following the representation."  *Id.* at 394.  Further, "[t]he evidence must be relevant to the defendant's intent at the time the representation was made."  The Fifth Circuit concluded that Gunnerman did not have the intent, at the time the agreement was

modified, to not perform the agreement or intend that Arete Partners rely on the modified terms to its detriment.  *Id.* at 398.

Similarly, in *Farm & Ranch Servs., Ltd. v. LT Farm & Ranch, LLC*, 779 F. Supp. 2d 949 (S.D. Iowa 2011), the assignee of a right to assignment held by a defunct Texas bank sued an LLC ("LT") which owned farmland in Iowa.  LT had agreed to assign payments it received from the U.S. Department of Agriculture, in accordance with the Conservation Reserve Program (CRP) to the bank, but failed to do so.  *Id.* at 952.  The complaint asserted a variety of claims, including fraud.  LT counterclaimed for restitution of the funds it had already assigned, contending the agreement to assign the payments to the bank was unenforceable.  *Id.*  The district court rejected the counterclaim.   With respect to the fraud claim, the Assignee contended that LT made a false promise of future performance—that it would assign over its interest in the CRP payments to the bank.  The district court noted that, under Iowa law, the Assignee "must prove by the preponderance of the clear, satisfactory and convincing evidence that LT knew the representation was false when made, in other words, that at the time LT made the statement, it had an existing intent to deceive."  *Id.* at 966.  The fact that LT made the required payments initially, but stopped making them after it learned that another person acted improperly with respect to the federal program, was evidence that LT did not make any actionable misrepresentations at the time it entered into the agreement to assign the CRP payments. *Id.  See also Purcell Co. v. Spriggs Enters., Inc.*, 431 So. 2d 515 (Ala. 1983) (fraud cannot be established if plaintiff does not prove defendant did not intend to perform at the time promise to perform was made); *Capp Indus., Inc. v. Schoenberg*, 932 A.2d 453 (Conn. Ct. App. 2007) (in action involving mechanics' liens and lien waiver, plaintiff

could not prove fraud when there was no evidence that contractor created false financial documents at the time work was being performed).

The existence of fraud is a question of fact. *Terrebonne Concrete LLC v. CED Enters., LLC*, No. 2011-0072, 76 So. 3d 503, 510 (La. App. 1 Cir. 8/17/2011). As this opposition shows, they have failed in conclusively proving the elements of Fraud, as they are required to do.

### D.      Death Penalty Sanctions

Assuming, for arguments sake that the DHECC could meet the burden of proof on each and every element of fraud, they must further show that the conduct of Claimant warrants the death penalty sanction they seek, chiefly to take away any recovery by Formento of what the DHECC admits they are owed under the terms of the settlement. In the underlying order supporting the Clawback Motion, the Court relies on the Restatement (Third) of Restitution and Unjust Enrichment § 1(2011) to state that restitution is the proper remedy for fraud on the DHECC. Here the DHECC seeks not just restitution for what they argue should not have been paid, but the return of monies they do not dispute were owed to Claimant, as well as barring him from any further participation in the Class Settlement. That is not restitution, it is instead a sanction, and requires further review and additional findings.

A party may be sanctioned for the following under the court's inherent powers: for bad faith, willful disobedience of a court order, or fraud on the Court. *Chambers v. NASCO, Inc.*, 501 U.S. at 32, 45-56 (1991). "[A person] whom the court proposes to sanction must receive 1) specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and 2) an opportunity to be heard on that

matter, and must be forewarned of the authority under which sanctions are being

considered, and given a chance to defend himself against specific charges." *Wilson v.*

*CITIGROUP, NA*, 702 F. 3d 720, 725 (2d Cir. 2012). While the court can authorize

sanctions under its inherent power even when there are procedural rules or statutes that

sanction the same conduct, the court should not rely on its inherent power if the conduct

can be adequately sanctioned under an FRCP, Statute, or Local Rules. *Chambers*, 501

U.S. at 49-50; FRCP 83(b).

> In a relevant case the Court found:

> > We have held that exercise of a court's power to impose "inherent   power
> > sanctions that are fundamentally penal" requires that it find bad      faith by clear
> > and convincing evidence. *Shepherd*, 62 F.3d at 1478; see also id. at 1474-78;
> > *Aoude v. Mobil Oil Corp*., 892 F.2d 1115, 1118 (1st Cir. 1989) (requiring   clear
> > and convincing evidence of bad faith to impose inherent power dismissal for
> > a fraud on the court). In contrast, "issue-related sanctions [that] are fundamentally
> > remedial rather than punitive and do not preclude a trial on the merits" --such as
> > barring admission of evidence or considering an issue established for the purpose
> > of the action--can be imposed on a showing that the sanctioned party resisted
> > discovery by a preponderance of the evidence. *Shepherd*, 62 F.3d at 1478. The
> > clear and convincing standard "generally requires the trier of fact, in
> > viewing each party's pile of evidence, to reach a firm conviction of the truth of the
> > evidence about which he or she is certain." *United States v. Montague,* 40 F.3d
> > 1251, 1255, 309 U.S.App.D.C. 220 (D.C. Cir. 19th)
> > *Parsi v. Daioleslam,* 778 F.3d 116, 131 (D.C. Cir. 2015).

Based on review of the case law, falsifying documents could certainly be called a

fraud on the Court (see e.g., *Lundahl v. Halabi,* 773 F.3d 1061, (10th Cir. 2014) ("Ms.

Lundahl had a history, noted by many courts, of perpetrating fraud on the court, including

using aliases and falsifying documents."). But, based on the above analysis, it appears the

bad faith requirement would still have to be satisfied.

### E.      Principles of Equity

The "Applicable Law" section of the Settlement Agreement provides that the

Agreement be interpreted in accordance with general maritime law.[1] Maritime law is firmly grounded in principles of equity. Under maritime law, a court may adapt rules to the equities of a particular situation. *See Compania Anonnima Venezolana De Navigacion v. A.J. Perez Export Company*, 303 F.2d 692,699 (5th Cir. 1962); *Smith v. Seaport Marine*, Inc., 981 F. Supp. 2d 1188 (S.D. Ala. 2013.) This response clearly shows that the evaluation of claims in the Class has gone astray in a way not envisioned by the parties and contrary to principals of equity and fairness. This notion applies both to the methodologies the DHECC used to investigate the claimant and more importantly to the remedy sought in the Clawback Motion.

### III.    ARGUMENT

**A**.    **The Facts Presented by DHECC Do Not Establish Fraud, Because There Is No Evidence that Claimant and Becker Intended to Create a False Impression of the Losses Sustained at the Time the Financial Documents and Tax Returns Were Prepared.**

DHECC depends primarily on tax returns, bank statements, and profit and loss statements to prove fraud. Particularly disturbing to DHECC is the second set of profit and loss statements prepared by claimant and reviewed by claimant's accountant, before Becker submitted them to GCCF on claimant's behalf.

**A.1.    Time of the alleged fraud.** There are fatal faults with DHECC's claim. First, is the timing of preparation of the second profit and loss statements, vis-a-vis the calculation methodology of the new Settlement. The second profit and loss statements were submitted to the GCCF to be calculated by methods used before the Amended Settlement Agreement and the DHECC program was in place.  Once the DHECC was in place, the calculation methods changed from GCCF based on trending revenue, using a

---

[1] Rec. Doc. 6430-1 at 36.1.

May to December average, to using a direct monthly comparison. Use of the required new method itself was sufficient to create greater income and resulting losses with only a few month's changes in revenue.

Because the revenue reported by claimant under GCCF showed a healthy increase in the second profit and loss statements during the months April through August, 2008, DHECC concluded the figures had been tailored to increase claimant's award under the Amended Settlement. That is what DHECC is claiming – that it was defrauded, not the GFCC.

But at the time the second statements were prepared and submitted, the new program requirements had not been established and were not known. Even if one were to set out to defraud by misrepresenting revenue or expenses, they would not know how to accomplish the task without knowing the new program calculation methodology. Intent to defraud requires a specific intent. *See Chateau Homes ex rel. RJM, Inc. v. Aucoin* at 404-4054. A party's intent is determined at the time the party made the representation. *See Arete Partners, L.P. v. Gunnerman* at 394. For this reason, claimant could not have intended to defraud the program at the time, and fraud cannot be proven.

Becker concedes that the fact that the 2008 and 2009 tax revenue totals exceed bank revenue totals appears to be an indication of claimant tailoring profit and loss statements to the new program. But that is only an appearance and cannot be a fact. The sequence of events alone negates that conclusion. The profit and loss statements were produced before the DHECC program existed.

In addition, Exhibit G to the Theisen Declaration shows that there was not only an increase in the revenue, but the expenses also increased. *See* Theisen Dec. 10.i. Theisen

notes that the variable expenses in 2008 and 2009 increased with the revenue. In 2010 the revenue may have decreased, but the variable expenses increased slightly. A person with pre-knowledge of the Deepwater Horizon Settlement would also know to **decrease** the variable expenses to increase the value of the BEL claim.

     **A.2.** **The 2007 Tax Return.** Claimant's 2007 tax return was considered by Barker, although he did not include IRS tax transcripts for 2007 as he did for 2008 and 2009. *See* Barker Dec. 5.c.1. and Exhibit A to the Barker Dec. Becker did not comment on the 2007 return except to report the amount of revenue.

     DHECC relies heavily on Barker's finding that the 2008 and 2009 returns showed tax revenue totals much higher than bank revenue totals for the same period, and Barker's conclusion that this is evidence of tailoring documents to defraud the program. But claimant's earlier 2007 tax revenue was also higher than his bank revenue. Following is a chart showing the differences from 2007 – 2009. There is a simple consistency in claimant's business and the way he prepares his taxes that precedes the current claim of fraud. It is also not unusual for charter boat fishing vessels to receive a substantial amount of cash that is declared on their tax returns, yet not necessarily deposited into their bank accounts. The evidence is consistent and does not suggest fraud when viewed in context.

| YEAR | TAX TOTAL | BANK TOTAL | PERCENT HIGHER |
|------|-----------|------------|----------------|
| 2007 | $78,796 | $68,796 | 12.6% |
| 2008 | $130,000 | $83,115 | 36.1% |
| 2009 | $100,000 | $88,488 | 11.5% |

**A.3.    The Month Of April, 2008**. DHECC also relies heavily on Barker's table of differences between reported profit and loss revenue and bank deposits in 2008. *See* Barker Dec. 5.j.  Barker highlights the suspect benchmark months and figures, implying that the profit and loss statements for 10/11/11 were also tailored specifically to defraud and mislead. Setting aside the timing argument above and focusing solely on the table, claimant has attributed more than 20% of the allegedly contrived additional revenue to a month that does not benefit him at all. If claimant was intending to defraud the new program, or to follow the lead of another such as Becker, attributing this amount to April, rather than September, was a major mistake that would not have increased the value of his claim. Barker does not consider this result nor explain how he sees the April difference.

One of the primary and practical differences between the GCCF and the DHECC calculations is that GCCF considered all months from May-Dec equally as an average, and DHECC increases claim values substantially when revenue changes are more concentrated in a few months. Barker goes to great lengths to demonstrate how claimant concentrated his revenue changes on his second set of profit and loss statements as an indication of intent to defraud the DHECC. But concentrating revenue was not ideal for GCCF, the program for which the profit and loss statements were corrected.

It is also important to note that the second profit and loss statements did not alter claimant's tax liability or increase his net taxable income. The second set of profit and loss statements was not an attempt to defraud, but was at most an attempt to match revenue with expenses.

**B**.    **Becker Was Not Complicit With Claimant By Submitting Claimant's Second Set Of Profit And Loss Statements.**

Barker accuses Becker, Formento's claim processor, of being complicit in the creation of the second set of profit and loss statements. This accusation is completely unfounded.

In fact, Barker submitted the second set of claimant's profit and loss statements with an accompanying letter of explanation signed by claimant. The claimant's letter specifically states claimant intended to have ***his accountant*** review and correct his profit and loss statements. *See* Barker Dec. 5.d.4, and Theisen Dec. 10.e.

Becker was not claimant's accountant and did not prepare the second set of claimant's profit and loss statements. See Theisen Dec. 10.e. Becker would have had no reason to doubt the validity of the claimant's profit and loss statements as presented to Becker and did not have control over their creation.

## CONCLUSION

DHECC has not carried its initial burden of establishing that no disputed issues of material fact exist. *See* Fed. R. Civ. P. 56(c). Specifically:

1.  Claimant could not have had the requisite intent to defraud a program that did not yet have known calculation methodologies in place when claimant submitted its financial documents.

2.  Claimant's 2007 tax return shows claimant historically failed to match tax return revenue and bank revenue, and his 2008 and 2009 returns were consistently prepared, rather than altered to defraud. His 2008-2009 profit and loss statement was prepared in a way that actually diminished the value of his claim.

13

3.  In any event, Becker was not involved in preparing the allegedly fraudulent profit and loss statements, and had no part in their creation.

4.  There are disputed issues of fact and interpretation that cannot be resolved by summary judgment.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Becker respectfully asks the Court to deny the Motion of the DHECC For Return of Payments Made to Martin Formento and his attorneys, and to William A Becker Consulting, LLC in its entirety, and for any further relief to which it may be justly entitled.

Respectfully submitted, the 20th day of September, 2016.

Respectfully submitted,

/s/ Bernadette Restivo____
Bernadette Restivo
Restivo & Vigil-Farinas LLC
Fla. Bar No. 484512
103400 Overseas Highway
Pink Plaza, Suite 237
Key Largo, FL  33037
Tel.: (305) 453-4961
Fax: (888) 496-4131
Bernadette@rvflaw.com
Attorney for *Formento* and
Restivo & Reilly LLC.

/s/ Dennis M. Malone____
Dennis M.
Malone
Colorado Bar No. 5645
100 E. Main Street, Suite 209
Trinidad, CO 812082
Tel.: (719) 846-4428
Fax: (719) 846-7917
dennis@colocounsel.com
*Attorney for William A Becker Consulting, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system and that pursuant to Pretrial Order #12 in the MDL 2179 will send an electronic notice of filing to the following: Kevin Colomb.

Respectfully submitted,
/s/ Bernadette Restivo____
Bernadette Restivo
Restivo & Vigil-Farinas LLC
103400 Overseas Highway
Pink Plaza, Suite 237
Key Largo, FL  33037
Tel.: (305) 453-4961
Fax: (888) 496-4131
bernadette@rvflaw.com