# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

<table>
<tr>
<td>

IN RE: OIL SPILL BY THE OIL RIG
"DEEPWATER HORIZON" IN THE GULF
OF MEXICO, ON APRIL 20, 2010

_____

*This Document Relates to:*
Nos. 12-970, 15-4143, 15-4146 and 15-4654

</td>
<td>

MDL No. 2179

SECTION: "J" (1)

HONORABLE CARL J. BARBIER

MAGISTRATE JUDGE
JOSEPH C. WILKINSON, JR.

</td>
</tr>
</table>

### OBJECTIONS TO FINAL CONFIRMATION AND/OR APPROVAL
### OF PROPOSED HESI AND TRANSOCEAN SETTLEMENT AGREEMENTS

MAY IT PLEASE THE COURT:

NOW COME the members of the New Punitive Damages Settlement Class ("New Class") listed and identified in Exhibit "1" submitted herewith (the "Objectors"), who appear through undersigned counsel, and object to the requested final confirmation and/or approval of the Proposed HESI and Transocean Settlement Agreements for the reasons set forth below.

The Objectors listed in Exhibit "1" are New Class Members who owned property within the Coastal Real Property Zone at the time of the Deepwater Horizon explosion. Their properties are either beach-front properties, or are located in beach-front communities which grant owners an easement for the use of the beach. In all instances, the beaches fronting these homes and communities became contaminated with oil from the explosion or from clean-up activities conducted thereafter.

## I.  INTRODUCTION.

The Proposed Settlements are intended to settle punitive damage claims asserted on behalf of the New Class Members in two Class-Action Complaints filed September 04, 2015, one against HESI and one against Transocean [Civil Actions Nos. 15-cv-4143 and 15-cv-4146]. On its face, PTO 60 does not require that New Class Members do anything to preserve the claims that had already been asserted on their behalves in the two Class-Action Complaints.

However, after the Proposed Settlements were reached; after the Court issued the Preliminary Approval Order; and after the Notice of the Proposed Settlements was approved and published, several additional requirements for participation in the Proposed Settlements have been added and communicated to the New Class Members.  First, the Claim Form that must be submitted by any New Class Member to obtain an award from the Proposed Settlements states that "[r]equired documentation for such claimants shall include proof of a claimant's timely preservation of its rights to a claim for damages by compliance with MDL-2179 Pretrial Order 60, or, if you settled your claim with Court-appointed Neutrals, provide a copy of your settlement agreement."  See, Exhibit "2".  Second, the Claim Form also states that "claims from claimants who were not included within the DHEPDS and are otherwise allowed to file a New Class claim will be assigned no value unless they adequately preserved their right to punitive damages by complying with PTO 60."  Third, the New Claims Administrator's Proposed Distribution Model ("Distribution Model") [Rec. Doc. 18797] requires compliance with PTO 60 as a condition for an award.  Fourth, the Claims Administrator has explained that claimants who did not comply with PTO 60 are members of the New Class but will get an award of $0.  *See* Exhibit "3."

Prior compliance with PTO 60 as a condition for receiving an award from the Proposed Settlements, which is a requirement that appears only in the Claim Form and in the Distribution Model, but not in the Proposed Settlement Agreements or in any of the pleadings filed seeking confirmation thereof, effectively modifies the definition of the New Class, as agreed by the parties, as advertised to the public, and as preliminarily approved by the Court, and results in disparate treatment of the New Class Members who did not comply with PTO 60 or who were unable to settle with the Neutrals.

## II.  BACKGROUND.

On May 29, 2015 and September 4, 2015, Class Counsel for the *Deepwater Horizon* Economic and Property Damages Settlement Class ("DHEPDS Class") and the Plaintiffs' Steering Committee (collectively, "PSC") filed two essentially and functionally identical settlement agreements in these proceedings: (1) the "HESI Punitive Damages and Assigned Claims Settlement (Amended As of September 2, 2015)" (and Addenda and Exhibits thereto) (collectively, "Proposed HESI Settlement" or "HESI Settlement Agreement") [Rec. Docs. 15322-1 through 15322-6]; and (2) the Transocean Punitive Damages and Assigned Claims Settlement Agreement [Rec. Docs. 14644-1 through 14644-5] (and Addenda and Exhibits thereto) (the "Transocean Settlement Agreement") (collectively, "the Proposed Settlements").

A Motion for an order (a) conditionally and preliminarily certifying the "New Punitive Damages Settlement Class" (the "New Class") for settlement purposes only, (b) appointing class representatives and settlement class counsel for the New Punitive Damages Settlement Class, (c) preliminarily approving the Proposed Settlements, (d) scheduling a Fairness Hearing, and (e) approving the proposed New Punitive Damages Class Action Settlement Notice and Notice Plan, was also submitted by the PSC.  [Rec. Doc. 16161].

The Proposed Settlements create a "New Punitive Damages Settlement Class" or "New Class" for purposes of effectuating allocation and distribution of a portion of the aggregate settlement benefits totaling $1,239,750,000, as between and among the New Class and the previously-certified DHEPDS Class, in order to resolve the bundle of claims that the DHEPDS Class received by assignment from BP, and punitive damages claims that the New Class Members asserted against HESI and Transocean in their recently-filed Class Action Complaints. [Civil Actions Nos. 15-cv-4143 and 15-cv-4146].

Magistrate Judge Wilkinson, serving as the Allocation Neutral under the Settlement Agreements, has determined that $902,083,250 will be allocated to the New Class, and that $337,666,750 will be allocated to the existing DHEPDS Class [Rec. Doc. 15652].

The Proposed Settlements are intended to resolve all the DHEPDS Class' assigned claims against HESI and Transocean and all punitive damages claims by a "New Class" of private individuals, businesses and local government entities (the Proposed Punitive Damages Settlement Class) for punitive damages attendant to certain property damage resulting from the "*Deepwater Horizon Incident*."  To commence the class action settlement notice and approval process and, if conferred upon final approval, effectuate the HESI and Transocean Settlements, the PSC requested that the Court conditionally certify the Proposed New Punitive Damages Settlement Class pursuant to Federal Rule 23(a) and (b)(3). [Rec. Doc. 16183].

In the Proposed Settlements; in the Class-Action Complaints; and in all the papers submitted to the Court seeking approval of the Proposed Settlements, the Proposed New Punitive Damages Settlement Class is defined as:

(1)     All Natural Persons, businesses, trusts, non-profits, or any other Entity who, anytime between April 20, 2010 through April 18, 2012, owned, leased, rented or held any proprietary interest in Real Property (a) alleged to have been touched or physically damaged by oil, other hydrocarbons, or other substances from the MC252 Well or the *Deepwater Horizon* MODU and its appurtenances (including the riser and blowout preventer), (b) alleged to have been touched or physically damaged by substances used in connection with the *Deepwater Horizon* Incident, or (c) classified as having or having had the presence of oil thereupon in the database of the *Deepwater Horizon* Unified Command Shoreline Cleanup Assessment Team (õSCATö database).

(2)     All Natural Persons, businesses, trusts, non-profits, or any other Entity who, anytime between April 20, 2010 through April 18, 2012, owned, chartered, leased, rented or held any proprietary interest in Personal Property located in Gulf Coast Areas or Identified Gulf Waters, alleged to have been touched or physically damaged by (a) oil, other hydrocarbons, or other substances from the MC252 Well or the *Deepwater Horizon* MODU and its appurtenances (including the riser and blowout preventer), or (b) substances used in connection with the *Deepwater Horizon* Incident.

(3)     All Commercial Fishermen or Charterboat Operators who, anytime from April 20, 2009 through April 18, 2012, (a) owned, chartered, leased, rented, managed, operated, utilized or held any proprietary interest in commercial fishing or charter fishing Vessels that were Home Ported in or that landed Seafood in the Gulf Coast Areas, or (b) worked on or shared an interest in catch from Vessels that fished in Specified Gulf Waters and landed Seafood in the Gulf Coast Area.

(4)     All Natural Persons who, anytime between April 20, 2009 through April 18, 2012, fished or hunted in the Identified Gulf Waters or Gulf Coast Areas to harvest, catch, barter, consume or trade natural resources including Seafood and game, in a traditional or customary manner, to sustain basic family dietary, economic security, shelter, tool, or clothing needs.

On a preliminary basis and for settlement purposes only, to enable and effectuate the issuance of notice and setting of a formal hearing to determine whether the terms of the Proposed Settlements should be finally approved as fair, reasonable, and adequate, the proposed New Punitive Damages Settlement Class was conditionally certified by the Court on April 12, 2016 under Federal Rule of Civil Procedure 23(a) & 23(b)(3).  The New Class is defined as follows:

(a)     PUNITIVE DAMAGES SETTLEMENT CLASS DEFINITION

(1)     All Natural Persons, businesses, trusts, non-profits, or any other Entity who, anytime between April 20, 2010 through April 18, 2012, owned, leased, rented or held any proprietary interest in Real Property (a) alleged to have been touched or physically damaged by oil, other hydrocarbons, or other substances from the MC252 Well or the *Deepwater Horizon* MODU and its appurtenances (including the riser and blowout preventer), (b) alleged to have been touched or physically damaged by substances used in connection with the *Deepwater Horizon* Incident, or (c) classified as having or having had the presence of oil thereupon in the database of the *Deepwater Horizon* Unified Command Shoreline Cleanup Assessment Team (õSCATö database).

(2)     All Natural Persons, businesses, trusts, non-profits, or any other Entity who, anytime between April 20, 2010 through April 18, 2012, owned, chartered, leased, rented or held any proprietary interest in Personal Property located in Gulf Coast Areas or Identified Gulf Waters, alleged to have been touched or physically damaged by (a) oil, other hydrocarbons, or other substances from the MC252 Well or the *Deepwater Horizon* MODU and its appurtenances (including the riser and blowout preventer), or (b) substances used in connection with the *Deepwater Horizon* Incident.

(3)     All Commercial Fishermen or Charterboat Operators who, anytime from April 20, 2009 through April 18, 2012, (a) owned, chartered, leased, rented, managed, operated, utilized or held any proprietary interest in commercial fishing or charter fishing Vessels that were Home Ported in or that landed Seafood in the Gulf Coast Areas, or (b) worked on or shared an interest in catch from Vessels that fished in Specified Gulf Waters and landed Seafood in the Gulf Coast Area.

(4)     All Natural Persons who, anytime between April 20, 2009 through April 18, 2012, fished or hunted in the Identified Gulf Waters or Gulf Coast Areas to harvest, catch, barter, consume or trade natural resources including Seafood and game, in a traditional or customary manner, to sustain basic family dietary, economic security, shelter, tool, or clothing needs.

The Court also preliminarily approved the HESI and Transocean Settlement Agreements filed with the Court on May 29, 2015 and September 4, 2015 [Rec. Docs. 15322-1 through 15322-6, and Rec. Docs. 14644-1 through 14644-5], as fair, reasonable, adequate, entered in good faith,

free of collusion, and within the range of possible judicial approval. [Rec. Doc. 16183].

Furthermore, the Court approved the form and content of the New Class Notices attached to the Declaration of Shannon R. Wheatman [Rec. Doc. 16161-2] as well as the Class Notice Plan described in same Exhibit, as satisfying the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(1), and due process. [Rec. Doc. 16183].

The Court found that the Class Notices clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) for the New Class, the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the New Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members. *See* Fed. R. Civ. P. 23(c)(2)(B) [Rec. Doc. 16183].  *See*, Exhibits "4" and "5" submitted with these Objections.

### III.  REASONS FOR THE OBJECTIONS.

1.      **The Proposed Settlements are unfair and unreasonable because they impose requirements upon the Objectors that are not imposed on all New Class Members.**

The Distribution Model prepared by the Claims Administrator [Rec. Doc. 18797] states, in part, at p. 3, ¶ 14:

> Under maritime law, a claimant may obtain punitive damages only if that claimant has a valid claim for underlying compensatory damagesí .

The Claims Administrator does not cite any support for that statement.  Actually, a correct statement of the law is that a party may recover punitive damages from a defendant if the party has recovered compensatory damages from the same defendant.  The maximum amount of punitive damages allowed is a multiple of the compensatory damages obtained from the same defendant.  *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008); *BMW of North America, Inc. v.*

*Gore*, 517 U.S. 557 (1996).  A party may not claim punitive damages from one defendant based on compensatory damages obtained from <u>another</u> defendant.

The Settlement Administrator apparently believes that a claimant may recover punitive damages from HESI and/or Transocean  based on economic damages obtained from <u>BP</u> through the DHEPDS or through settlement with the Neutrals.   Based on this erroneous belief, the Settlement Administrator further states in the Distribution Model at p. 3, ¶ 14:

> í  . Accordingly, this Distribution Model does not assign any value to the claims of those who have not received compensatory damages through <u>some</u> <u>vehicle</u> [such as settlement with BP or the Neutrals] or have a pending claim or lawsuit to recover compensatory damages arising from the Deepwater Horizon Incident.

Based on this erroneous understanding of the maritime law, the Settlement Administrator states, in p. 3, ¶¶  18 and 19, that claimants who were not included within the DHEPDS (either because the DHEPDS excluded them, or because the claimants opted out of the DHEPDS), are members of the New Class and will be allowed to file a claim under his Distribution Model, but their claims will be assigned <u>no</u> <u>value</u> unless they complied with PTO 60.

However, with respect to being able to obtain punitive damages from HESI or Transocean under maritime law, there is no distinction between (1) those New Class Members who settled with the Neutrals and recovered settlement funds from BP; but received <u>nothing</u> from HESI or Transocean and voluntarily dismissed their suits; and (2) those New Class Members who did not comply with PTO 60, received <u>nothing</u> from HESI or Transocean, and had their claims dismissed by the Court.  Both groups received nothing from HESI or Transocean and both groups do not have pending claims for economic damages against them.

The Proposed Settlements and their Distribution Model does not provide equal treatment to two  groups  of  claimants  (both  New  Class  Members)  who  will  not  receive  compensatory

damages from HESI or Transocean.  While neither group will recover compensatory damages from HESI or Transocean, one group will be allowed to recover an award from the Proposed Settlements, but the other group will not.

Objectors also note that a New Class Member who complied with PTO 60 but subsequently (say, today) voluntarily dismissed or abandoned his claim against HESI or Transocean, would be allowed to obtain an award from the Proposed Settlements even though the claimant (like the Objectors) will receive nothing from HESI or Transocean for economic damages.  That amounts to unequal treatment of class members.  The fact is that conditioning recovery from the Proposed Settlements on whether the New Class Members settled with the Neutrals, or complied with PTO 60, is wrong and results in unequal treatment of New Class Members ó ó the Objectors.

**2. Neither the Proposed Settlements nor the Notice of Settlements informed the New Class Members that in order to recover an award from the Proposed Settlements they needed to comply with PTO 60.**

PTO 60 does not state anywhere that New Class Members would not be allowed to receive an award if they did not comply with PTO 60.  More importantly, though, neither the Proposed Settlements nor the Notice of Settlements informed the New Class Members of the need to comply with PTO 60 as a condition to obtain an award from the Proposed Settlements.

If a claim is certified and settled simultaneously, "[s]ufficient information about the case should be provided to enable class members to make an informed decision about their participation."  Manual for Complex Litigation, Fourth, § 21.311.  Here, the Notice of Settlements did not inform the New Class Members that in order to receive an award from the Proposed Settlements they had to maintain a claim (or suit) for economic damages against HESI and Transocean even _after_ the date of the settlement, or comply with PTO 60, or settle with the

Neutrals. This information was crucial to any class member who was trying to decide if he needed to spend the necessary funds required to comply with PTO 60 and file a new suit, which is what PTO 60 required.

### 3. The additional requirements imposed after the Proposed Settlements were reached should have no bearing on the New Class Members' ability to obtain an award.

The Proposed Settlements were reached and/or amended on May 29, 2015 and September 2, 2015. These Proposed Settlements say nothing about a need to maintain a viable claim for economic damages into the future as a condition for obtaining an award from the Proposed Settlements.

The New Class is defined, in part, as "(1) [a]ll Neutral Personsí   who, anytime between April 20, 2010 through April 18, 2012, owned, leased, rented or held any proprietary interest in Real Property (a) alleged to have been touched or physically damaged by oilí ." Thus, the critical period is April 20, 2010 to April 18, 2012. Events that took place after that period ó ó such as non-compliance with PTO 60, which was issued March 29, 2016, or settlement with the Neutrals after March 29, 2016, have nothing to do with New Class Members' ability to obtain an award from the Proposed Settlements.

### 4. The additional requirements redefine the New Class described in the Proposed Settlement Agreements.

The additional requirements imposed by the Claims Administrator essentially create a new and different class ó ó distinct from the class defined in the Proposed Settlement Agreements. The new and redefined class includes persons who owned Real Property between April 20, 2010 and April 18, 2012 <u>and</u> who either settled their claims against BP with the Neutrals or complied with PTO 60. This class is different than the class advertised through the Notice of Settlements.

**5.      The Objectors have claims that are pending.**

All the Objectors are class members in a class action that is pending before this Court. Civil Action No. 2:13-97.  In that suit, the class representative claims, on behalf of all class members, that PTO 60 does not apply to class actions and, thus, their claims are not subject to PTO 60. [Rec. Doc. 21131].  Consequently, even if the Court gives final approval to the Proposed Settlement Agreements, the Objectors should be allowed to receive an award from the Proposed Settlements.

WHEREFORE, the Objectors pray that the Court deny final confirmation and/or approval of the Proposed HESI and Transocean Settlement Agreements.

Dated: September 23, 2016

Respectfully Submitted:

*/s/*Camilo K. Salas III
Camilo K. Salas III (LSBA 11657)
SALAS & Co., L.C.
650 Poydras Street, Suite 2000
New Orleans, LA  70130
Telephone:  504-799-3080
Fax:  504-799-3085
E-Mail:  csalas@salaslaw.com
Attorneys for the Objectors

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 23rd day of September, 2016, I electronically filed the foregoing with the Clerk of the United States District Court for the Eastern District of Louisiana using the CM/ECF system which will send notification of such filing to the all attorneys for all parties that have appeared.  I also certify that on the 23rd day of September, 2016 I sent the foregoing pleading with all Exhibits by first class mail to each of the following attorneys:

| New Class Counsel | |
|---|---|
| James P. Roy<br>Domengeaux Wright Roy Edwards & Colomb<br>556 Jefferson Street, Suite 500<br>P. O. Box 3668<br>Lafayette, LA 70501 | Stephen J. Herman<br>Herman Herman & Katz<br>820 O'Keefe Avenue<br>New Orleans, LA 70113 |

| Defendants' Counsel | |
|---|---|
| **For HESI:**<br><br>Christopher J. Bellotti<br>Senior Counsel<br>Halliburton Energy Services, Inc.<br>3000 N. Sam Houston Parkway East<br>Bldg. J., Room 432<br>Houston, TX 77032-3219<br><br>R. Alan York<br>Godwin PC<br>1331 Lamar<br>Suite 1665<br>Houston, Texas 77010 | **For Transocean:**<br><br>Brady Long<br>Senior Vice President and General Counsel<br>Transocean Ltd.<br>Chemin de Blandonnet 10<br>1214 Vernier, Switzerland<br><br>Roby Goldstein<br>Legal Counsel, Disputes and Human Relations<br>Transocean Offshore Deepwater Drilling Inc.<br>4 Greenway Plaza<br>Houston, TX 77046 |

/s/Camilo K. Salas III