UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG  *  | | |
| "DEEPWATER HORIZON IN THE  *  | | MDL 2179 |
| GULF OF MEXICO,  *  | | |
| ON APRIL 20, 2010  *  | | SECTION "J"(2) |
| *  | | |
| This document applies to:  *  | | JUDGE BARBIER |
| *  | | |
| No. 12-970, Bon Secour Fisheries, Inc.,  *  | | MAG. JUDGE WILKINSON |
| et al. v. BP Exploration & Prod. Inc., et al.  *  | | |
| *  | | |

**OPPOSITION OF BRIANTE PALAZAENO TO THE MOTION OF THE DHECC FOR RETURN OF PAYMENTS MADE TO MAXIM, L.C., BRIANTE PALAZAENO AND OTHERS**

Briante Palazaeno, through his undersigned counsel, submits this opposition to the motion of the DHECC for return of payments made to Maxim, L.C., Briante Palazaeno and others. As the following establishes, genuine disputes exist as to material facts relied upon by DHECC. Accordingly, DHECC's motion should be denied. *See* "Hai Do Clawback Motion Order", 2016 WL 558214 (E.D. La. Feb. 11, 2016) (Barbier, J.) (denying DHECC's motion for return of payments made to Hai Do and others because a genuine dispute as to a material fact existed) ("*Hai Do*").

**BACKGROUND**

At the time of the Deepwater Horizon oil spill, Maxim, L.C., a Louisiana limited liability company ("Maxim"), operated an Italian restaurant in New Orleans' warehouse district called *Leonardo Trattoria* (the "Restaurant"). Shelly Licciardi ("Licciardi") was the managing member of Maxim. Leonardo Daniele ("Daniele") managed the Restaurant's day-to-day operations and

was a member of Maxim, L.C. Briante Palazaeno ("Palazaeno") was the leaseholder of the location where Maxim was doing business as *Leonardo Trattoria*.

In July 2012, Attorney Richard L. Traina ("Traina") was employed by the law firm Mollere, Flanagan & Landry, L.L.C. ("MFL").[1] As DHECC notes, Palazaeno engaged Traina and MFL to represent Maxim in connection with Maxim's Business Economic Loss ("BEL") claim with DHECC for economic losses suffered by the Restaurant (DHECC supporting memorandum, p. 6). A *Fee Agreement and Authority to Represent* was executed by Licciardi on behalf of Maxim doing business as *Leonardo Trattoria* and accepted by Traina on behalf of MFL in July 2012 (DHECC Exhibit M).[2]

Documentation supporting Maxim's BEL claim was submitted through DHECC's claims portal. Traina relayed to DHECC additional information provided by Palazaeno in response to specific requests from DHECC (DHECC Exhibit H). In March 2013, DHECC was satisfied with the documentation supporting Maxim's claim and awarded Maxim $245,796.90 (DHECC Exhibit L). Maxim accepted the award and, pursuant to its fee agreement with MFL, received $183,182.68. MFL received $62,614.22 (DHECC Exhibits N and X). MFL's and Traina's representation of Maxim was concluded.

Nothing more was heard from DHECC about Maxim's BEL claim for two years. In early 2015, DHECC began subpoenaing Maxim for its financial and corporate records. Traina agreed to represent Maxim for the limited purpose of coordinating the response to subpoena sent to Maxim. In the memorandum filed on behalf of MFL, representations were made that Palazaeno

---

[1]  Traina left MFL in July 2014. He is an Assistant Attorney General at the Louisiana Department of Justice.

[2]  DHECC began accepting claims in June 2012. As such, Maxim's BEL claim was submitted early in DHECC's existence. DHECC's BEL claim acceptance and payment standards were not as strict in the program's nascency as they became as the program matured.

retained Traina to represent Maxim and Palazaeno relative to subpoenae received from the DHECC. However, Palazaeno did not retain Traina to represent he or Maxim in relation to any subpoenae received from the DHECC. The only contact Palazaeno and Traina had after Maxim's DHECC claim had concluded occurred when Traina called seeking permission from Palazaeno to accept service of a subpoena on Palazaeno's behalf. Palazaeno refused to grant Traina the permission he sought.

Again, DHECC went silent. In February 2016, DHECC reached out to Traina and MFL and advised that it had concluded that Maxim's BEL claim was fraudulent and that DHECC would be filing its clawback motion and seeking the return of the full $245,796.90 awarded Maxim (including the $62,614.22 attorney fee that MFL received).[3] Traina and MFL were surprised and questioned how DHECC reached such a conclusion; after all, neither had heard anything from DHECC since June 2015. The answer was alarming.

DHECC knew that Maxim was represented by Traina and MFL in connection with Maxim's BEL claim (DHECC Exhibits M and N). DHECC learned in June 2015 that Traina left MFL for the Department of Justice and that Traina was no longer representing Maxim. DHECC, however, **never** reached out to MFL to advise that it was investigating possible fraud in connection with Maxim's BEL claim.

Instead, DHECC conducted discovery concerning Maxim's BEL claim without the participation of **anyone** on behalf of Maxim or MFL. DHECC never attempted to contact Palazaeno about the discovery it unilaterally conducted. It is crystal clear that DHECC did not contact Traina or MFL. DHECC unilaterally did at least the following:

---

[3] DHECC does not allege any fraud by MFL or Traina because they did not commit any.

- Interviewed Licciardi on August 25, 2015 and obtained an affidavit from her (DHECC supporting memorandum, p. 3; DHECC Exhibit O, p. 1)[4]

- Interviewed David Sewell, CPA ("Sewell"), the accountant who Licciardi not Palazaeno hired to prepare the financial documents necessary to file Maxim's BEL claim (DHECC supporting memorandum, pp. 6, 10)[5]

- Subpoenaed City of New Orleans sales tax records for Maxim (DHECC supporting memorandum, p. 10)

- Obtained Maxim bank deposit records (DHECC supporting memorandum, p. 10)

- Deposed Julio Archila ("Archila") on January 19, 2016 (DHECC supporting memorandum, p. 7; DHECC Exhibit Q)

Although all of DHECC's unilateral discovery was improper, the use of Archila's deposition (DHECC Exhibit Q) as an exhibit to DHECC's motion is particularly inappropriate. Archila had **nothing** to do with Maxim's BEL claim; Archila testified that he "was not aware that there was even a Maxim [BEL] claim" until a DHECC investigator showed up at his house (DHECC Exhibit Q, p. 14). Instead, DHECC apparently wishes to use Archila's testimony simply to attempt to show that Palazaeno was a "bad man" based on events that allegedly occurred well after Maxim's BEL claim was submitted and approved.

DHECC attorneys Corey Moll and Kevin Columb have, in telephone conversations with MFL's managing partner Raymond Landry, acknowledged that DHECC erred in unilaterally conducting discovery without at least advising MFL that DHECC was doing so.[6] Nevertheless,

---

[4]     DHECC gratuitously notes that it interview Licciardi "[w]ith her attorney present" (DHECC supporting memorandum, p. 3). Maxim or MFL, however, were not present.

[5]     According to DHECC, at Sewell's interview Sewell stated that Palazaeno provided all of the financial information that Sewell used to prepare Maxim's P&Ls and tax returns, answered questions that Sewell had about the business, and completed monthly financial statement templates that were submitted to DHECC (DHECC supporting memorandum, p. 10). Sewell failed to mention that Sewell was retained by Licciardi. It was only after he was hired by Licciardi that Licciardi and Palazaeno met with Sewell and/or Sewell's staff member relative to Sewell's preparation of Maxim's profit and loss statements and tax returns.

[6]     Despite acknowledging DHECC's error, Attorneys Moll and Columb declined MFL's offer to compromise the claim against it for return of its attorney fee. *See* DHECC supporting memorandum, p. 2 (noting that discussions with counsel have not resolved the issues presented in the clawback motion).

DHECC now wishes to rely on that discovery in seeking the return of Maxim's award.  DHECC should not be allowed to and its motion should fail.

## LAW

For DHECC to succeed on its motion, it must show that there is no genuine dispute that (1) Palazaeno made a false representation; (2) he knew or believed that the representation was false, or had an insufficient basis to make the representation; (3) he intended to induce DHECC to act in reliance on the information; (4) DHECC justifiably relied on Palazaeno's representation; and (5) damage resulted from the reliance.  *Hai Do, supra* (*citing* Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Servs., L.L.C., 926 F. Supp. 2d 858, 862 (E.D. La. 2013)).

The foregoing elements must be supported by uncontroverted and convincing evidence. *See* "Burrle Clawback Motion Order," rec. doc. 14747; 2015 WL 3891840, *3 (E.D. La. June 23, 2015) (Barbier, J.).  The showing requires exceptionally strong proof.  C&B Sales & Serv., Inc. V. McDonald, 95 F.3d 1308, 1315 (5th Cir. 1996).  If evidence of one of the elements is missing, a clawback motion cannot succeed.  *See* "Taylor Clawback Motion Order," rec. doc. 114813; 2015 WL 3891840, *3 (E.D. La. July 7, 2015) (Barbier, J.) (treating a clawback motion as a motion for summary judgment under Federal Rule 56 and noting that factual controversies must be construed in the light most favorable to the non-mover – here, Maxim/Palazaeno).

The facts must prove a claimant's conscious behavior or motive to defraud.  Operaciones, 913 F. Supp. 2d at 259.  Generic allegations of financial self-interest do not satisfy this motive requirement.  *See* Cargill, Inc. v. Degesch Am., Inc., 875 F. Supp. 2d 667, 676 (E.D. La. 2012) (citations omitted).

Claimants hold vested property rights in the payments from a class settlement fund.  *E.g.,* Klier v. Elf Atochem N. Am., Inc., 658 F.3d 468, 474 (5th Cir. 2011).  Thus, DHECC should not

5

proceed in a manner that would deny a claimant's due process rights, such as conducting discovery without the participation of the claimant and other interested parties

## ARGUMENT

Application of the precepts noted above shows that DHECC's motion cannot succeed; particularly in light of the improper unilateral discovery that DHECC conducted and the genuine issues of material fact that discovery spawned.

DHECC claims that, at Sewell's interview, Sewell stated that Palazaeno provided all of the financial information that Sewell used to prepare Maxim's P&Ls and tax returns, answered questions that Sewell had about the business, and completed monthly financial statement templates that were submitted to DHECC (DHECC supporting memorandum, p. 10).  DHECC also, however, notes that Sewell "recalled meeting **Licciardi and Palazaeno** for the first time at his H&R Block office" (DHECC supporting memorandum, p. 12) (emphasis added).  Because DHECC interviewed Sewell on its own, no one was able to question Sewell about his meeting Licciardi and ask him what Licciardi may have said about her involvement with Maxim, the Restaurant, and Maxim's BEL claim.

Additionally, no one was able to question Licciardi directly about her involvement with Maxim, the Restaurant, and Maxim's BEL claim.  Instead, DHECC submitted with its motion a simple, one-page affidavit of Licciardi that, at a minimum, is internally inconsistent when its averments are investigated.

In her affidavit, Licciardi swore that she "had only very limited involvement" with the Maxim and the Restaurant (DHECC Exhibit O, p. 1, § 2).  However, Licciardi then averred that she complained to GCCF about the disposition of a $150,000.00 Emergency Advance Payment

("EAP") on behalf of the Restaurant that the then-manager of the Restaurant, Leonardo Daniele, received and apparently converted to his individual use (Id., § 3).

In response to Licciardi's complaint, GCCF wrote to Licciardi at the Restaurant's address on St. Charles Avenue in New Orleans, noting that Licciardi contacted GCCF about the disposition of the Restaurant's EAP and stating the following to Licciardi:

> On 12/29/10, the GCCF received certain documents **from you**, including Articles of Organization for a company called Maxim LC **that show you** as the registered agent/manager of that company. . . . **You have stated** that Maxim LC does business as Leonardo Trattoria and presented a copy of a check from a business account on which the names Maxim LC and Leonardo Trattoria appear. All the other documents **you sent us** refer only to Maxim LC. In the section of the Initial Report **that you submitted** with the Articles of Organization that asks for the names and addresses of the managers or members of the company, you are listed as a "manager."

(DHECC Exhibit H, pp. 4-5; letter from GCCF to Licciardi dated January 13, 2011) (emphasis added).

Licciardi's interactions with the GCCF belie her assertion that she "had only very limited involvement" with Maxim and the Restaurant. Licciardi contacted GCCF on behalf of Maxim. Licciardi made representations to the GCCF about Maxim and provided GCCF with documentation concerning Maxim and the Restaurant. Licciardi apparently was not as passive as DHECC argues.

Moreover, DHECC claims that "Licciardi "does not know, nor has she ever met Traina" (DHECC supporting memorandum, p. 14). That assertion is absent from Licciardi's sworn affidavit and therefore is suspect. The assertion also is contradicted by Palazaeno's affidavit (Exhibit A, ¶ 3).

As Exhibits A – D to MFL's opposition show, Traina wrote Licciardi directly in her capacity as representation/manager of Maxim and the Restaurant. Traina did so both in

7

connection with his then-general representation of Maxim and the Restaurant (Exhibit A) and in connection with Maxim's BEL claim (Exhibits B – D), including sending Licciardi a fully-executed copy of the *Fee Agreement and Authority to Represent* executed by Licciardi on behalf of Maxim and accepted by Traina on behalf of MFL in July 2012 (Exhibit D).  Because DHECC proceeded with improper unilateral discovery, no one was able to question Licciardi about, *inter alia,* her involvement with Maxim and the Restaurant and whether she did know about Maxim's BEL claim.

Next, DHECC attempts to reply on an email exchange between Palazaeno and Sewell's assistant to show "[e]vidence of Palazaeno's manipulation of the claim" (DHECC supporting memorandum, p. 13).  DHECC seems to argue that Palazaeno's email that "I think they should vary per mo – So they r not the same ea mo – Your thoughts" shows that Palazaeno was urging Sewell's assistant to vary sales figures so that Costs of Goods Sold was not a uniform percentage of sales (DHECC supporting memorandum, pp. 9-10; DHECC Exhibits S, T1, T2, and T3).  However, an equally plausible interpretation is that Palazaeno was concerned that the figures did not vary – the same concern shared by DHECC.  In any event, the figures submitted to DHECC did not vary despite Palazaeno's supposed urging (DHECC Exhibits S, T1, T2, and T3).  Thus, Palazaeno did not manipulate the claim.

DHECC also attempts to rely on Maxim bank deposit records that it obtained "with Licciardi's consent as a responsible corporate officer at the time" (DHECC supporting memorandum, p. 10).  DHECC attempts to use those bank records to show disparities between revenues reported on Maxim's P&Ls with what DHECC terms "known contemporaneously reported records, i.e. bank statements and sales tax records."  According to DHECC, "the P&L's show much larger reported revenue figures that those shown on the bank and sales tax records

during the same monthly time periods. The apparent over-reporting of revenue caused damage to the program by significantly inflating Maxim's award amount" (DHECC supporting memorandum, p. 11).

The Maxim bank deposit records that DHECC obtained with Licciardi's consent consist of records of four accounts at the Whitney National Bank in New Orleans (DHECC Exhibit Y). DHECC did not, however, review **all** of Maxim's bank accounts. As Palazaeno's affidavit shows, Maxim had a fifth Whitney National Bank account as well as one (1) Chase Bank account and three (3) Capital One Bank accounts (Exhibit A, ¶ 7). Because DHECC did not review those additional bank account statements in connection with its analysis, genuine disputes as to material facts exist that preclude the granting of its motion.

Finally, any reliance by DHECC on Maxim's reported City of New Orleans sales tax records must be viewed with skepticism. While Licciardi and Daniele may have under-reported Maxim and/or the Restaurant's sales to the City to lower their City sales tax liability, Palazaeno never participated in the preparation if the New Orleans city sales tax submissions. The sales tax calculations were computed solely by Licciardi and Daniele.

In sum, many genuine disputes exist as to the material facts upon which DHECC attempts to rely in its motion. Additionally, DHECC has not met its burden under the legal tenets discussed above. DHECC's motion cannot succeed.

## **CONCLUSION**

As the foregoing demonstrates, DHECC's motion with respect to Palazaeno should be denied. All funds received relative to the DHECC claims of Maxim were used for the benefit of Maxim. Palazaeno did not benefit from any of the funds received by Maxim.

9

        Respectfully submitted,

        */s/ Frank G. DeSalvo*_____
        **FRANK G. DeSALVO (#4898)**
        **FRANK G. DeSALVO, APLC**
        739 Baronne Street
        New Orleans, LA 70113
        Telephone:   (504) 524-4191
        Facsimile:   (504) 821-0036
        Email:          frankd@fdesalvo.com
                      sbourgeois@fdesalvo.com

## Certificate of Service

I hereby certify that on October 3 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Frank G. DeSalvo*_____