UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Wilkinson |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

REPLY IN SUPPORT OF MOTION OF THE DHECC FOR RETURN
OF PAYMENTS MADE TO MARTIN FORMENTO AND MADE IN RELIANCE ON FINANCIAL
DATA PROVIDED BY CLAIMS PREPARER WILLIAM A. BECKER CONSULTING, LLC.

The Claims Administrator, Patrick A. Juneau, on behalf of the Deepwater Horizon

Economic Claims Center ("DHECC"), replies to the Opposition filed by William A. Becker

Consulting, LLC ("Becker")[1] to the Claims Administrator's Motion for Return of Payments

Made to Claimant Marin Formento ("Formento") and Made in Reliance on Financial Data

Provided by Claims Preparer William A. Becker Consulting, LLC (Rec. Doc. 21402) (the

"Motion").  In the Opposition, Becker states that the DHECC's Motion should be denied

because: (a) the alleged fraudulent action (submission of the false second set of P&L's)

preceded knowledge of the DHECC loss calculation methodology, (b) the actions taken by

Formento and Becker were inconsistent with any claim of fraud, and (c) there was no

evidence presented that Becker was "complicit" with Formento's submission of a second

set of P&L's.  None of those contentions have merit.

---

[1] The text of the Opposition does not say specifically on whose behalf the Opposition was filed. However, the prayer seeks relief only on behalf of "Becker"- though the signature blocks   identify counsel for "Formento" and for Restivo & Reily LLC (Formento's attorneys, who received a portion of Formento's award under a contingency fee contract),  in addition to Becker.

First, Becker contends that because the DHECC award calculation method did not yet exist when Formento and Becker submitted either set of P&L's, the P&L's could not have been tailored to inflate a claim award. This contention is belied by Becker's own exhibit to the Opposition, specifically Exhibit D, which shows a clear understanding that even the GCCF would employ a pre and post-spill comparison of monthly profits between the months of May and December. *See* Opp. Ex. D. The same P&L's submitted to the GCCF were submitted to the DHECC; Becker cannot now claim that they had different intentions for each program.

While Becker invokes the timing of the submission of the financial statements to bootstrap hypothetical arguments with respect to the claimant's intent to defraud the DHECC, not once does it offer evidence to refute the falsity of the second set of P&L's upon which the DHECC relied. Whether this representation was false is a threshold element to a determination of fraud. There is no dispute that Formento was in possession of contemporaneous source documents in the form of bank statements. However, the second set of P&L's, upon which the DHECC relied, were not consistent with those contemporaneous documents.[2] Matching the first set, the bank statements would have formed the basis for accurate P&L's. Yet, Formento and Becker chose to submit P&L's (the second set) that contained data vastly different than that contained in Formento's bank statements. The second set of P&L's did not match the bank statements; the first set of P&L's did not match the tax returns but did match the bank statements, Formento and Becker were aware of this, yet submitted the second set of P&L's anyway.

---

[2] As stated in the Motion, the first set of P&L's submitted to the DHECC was accurate, as corroborated by information contained within Formento's bank statements.

Becker attempts to shun responsibility for the submission of the false second set of P&L's supporting Formento's claim.  However, the evidence shows that  Becker was heavily involved since  he was Formento's claim preparer. Consequently, Becker had the requisite knowledge to mislead the DHECC with Formento's second set of P&L's.  Other than a denial of Becker's responsibility, the Opposition presents no evidence to  negate Becker's level of involvement.  Nor does Becker even attempt to refute the authorities presented by the DHECC in the Memorandum supporting the Motion establishing why Becker should be held liable for 100% of the DHECC loss, *in solido* with Formento.

A.    Formento and Becker's Fraudulent Actions Require Restitution

The totality of the evidence presented shows that there is no genuine issue as to any material fact and the DHECC is entitled to judgment as a matter of law. *See* Order & Reasons on Special Master's Motion for Return of Payment Made to Casey Thonn and Others at 19 (Rec. Doc. 12794).  Becker asserts that the factual background surrounding the submission of Formento's claim creates a dispute of fact.  However, Becker's attempt to create a genuine issue of material fact through an unsupported assertion that it   did not intend to defraud the DHECC is insufficient to defeat the Motion.

Becker attempts to muddy the waters and try to contend that material issues of fact exist.  It does so in the discussion on pages 9-12 of the Opposition, and through the declaration of Thomas R. Theisen.  However, the precise calculation methodologies involved and the details of revenues and expense items are not material in view of the undisputed fact that the second set of P&L's submitted were knowingly inconsistent with bank statements.

3

Further, Becker asserts that there is no evidence to suggest that Becker was "complicit with Formento" by submitting the second set of P&L's.  However, Becker was intimately involved in Formento's submissions to the GCCF.  Specifically, as originally stated in Barker's Declaration, ¶ 5.d.4, Becker sent an email to the GCCF containing a letter with Formento's signature, which explained that the second set of P&L's were being submitted to the GCCF to correct the first set.  Yet, when asked about the second set of P&L's, Formento claimed to be unaware of the submission of a second set.  *See* Declaration Barker, at ¶ 5.m.

Becker pitches much of its argument in the Opposition upon an alleged insufficient showing of intent to defraud by both Formento and Becker when submitting the DHECC claim.  Becker seeks to rely upon cases decided under state laws, including a Louisiana 5th Circuit Court of Appeals case[3], which refers to "specific intent" as an element in determining whether tort fraud occurred in an alleged case of contractor fraud.  Becker also urges that fraud cannot be predicated on mistake or negligence.  In its rulings on these motions, this Court has not looked to state court standards that draw only on unique circumstances, rather this Court has drawn on authority which provides this Court power to remedy fraudulent conduct.  *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 244 (1944) (affirming judicial power to set aside fraudulently begotten judgments as such cases present "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"); Order and Reasons on Motion for Return of Payments against Casey Thonn and Others, at 21.  By submitting false financial documents within Formento's claim,

---

[3] Chateau Homes *ex rel*. RJM, Inc. v. Aucoin, 97 So.3d 398, 404-405 (La. App. 5th Cir. 2015).

both Formento and Becker exhibited fraudulent conduct that this Court has the power to remedy.

Becker also cites *Arete Partners, L.P. v. Gunnerman*[4].  This case is presumably referenced because it speaks to intent. But the guidance contained in *Gunnerman* remains specific to that of a potential instance of fraud committed during a private settlement negotiation.  In its analysis of fraud, *Gunnerman* draws on Texas state law, not upon the already established common law elements of fraud this Court and the 5th Circuit have applied to decisions on motions for return of payments.  Nonetheless, the reference Becker makes from *Gunnerman* that "a party's intent may be inferred by the party's subsequent acts following the representation" falls in line with behavior exhibited by Formento and Becker.  Specifically, although the false second set of P&L's were created prior to the existence of the DHECC, Formento and Becker still caused these false P&L's to be submitted to the DHECC knowing that they were inconsistent with the bank statements .  Formento and Becker's submission of false documents, after certifying their truthfulness under penalty of perjury, was not a passive occurrence, but instead an act committed as an assertion to cause the DHECC's reliance upon them.

Becker also expends a fair amount of the Opposition, specifically ¶ III.A.1 – A.3, hypothesizing that because there might have been more effective ways of defrauding the DHECC, Formento and Becker did not defraud the DHECC.  But the threshold issue is that Becker and Formento knowingly submitted false financial documents in order to inflate Formento's award.  There is no need or relevance for any inquiry that would bear upon how successful they could have perceived themselves to be in their fraudulent submissions.

---

[4] 594 F.3d 390 (5th Cir. 2010).

Becker disputes that the timing of its submissions on Formento's behalf negates any ability to have defrauded the DHECC in ¶ III.A.1. However, as previously discussed in this Reply, Becker knew that it was required throughout both the GCCF and DHECC to show that Formento experienced a downturn in months May through December of 2010 as compared to the same months in the years immediately preceding the spill.  Becker highlights in ¶III.A.2. that Formento's 2007 tax revenue was also higher than revenue in his bank statements (as it was in 2008 and 2009), arguing that the claim the overstatements in 2008 and 2009, when viewed in this context are less indicative of fraudulent intent. However, as submitted in Barker's Declaration ¶ 5.i., the 2007 comparison of bank statements to tax returns was put forward to show a pattern of a $10,000 difference between revenue deposited and revenue reported.   In ¶ III.A.3, Becker submits as evidence the suggestion that if Becker was attempting to defraud the DHECC, it would not have placed 20% of the "contrived" revenue to April, a month that would not benefit Formento in either the DHECC or GCCF.  Through this assertion Becker still offers no evidence as to how the remaining inflated revenues reflect actual earnings by Formento.

Simply stated, as the evidence shows they misled the DHECC through the submitted financial documentation, the claim award should be rescinded and Becker, as well as Formento, should be ordered to return the ill-gotten proceeds.  Becker has not established the existence of a dispute of fact by contending that the claim could have essentially been more fraudulent.

B.      Formento and Becker's Misrepresentation to the DHECC Satisfies the
        Court's Legal Standard for Return of Payments

This Court has set out that in order to sustain a motion for return of payments, the DHECC must satisfy the following: (1) Becker and Formento made a material

representation; (2) their representation was false; (3) when Becker and Formento made the representation, they knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the DHECC (the other party); (5) the DHECC acted in reliance upon the representation; and (6) the DHECC suffered injury. Order & Reasons on Motion of the DHECC for Return of Payments Made to Crystal Seafood Company, Inc. and Others at 6 (Rec. Doc. 15325) (citing *In re Deepwater Horizon*, No. 15-30574, 2016 WL 1397663 at *3, -- F. App'x – (5th Cir. April 8, 2016); Alfonso Order, at 6-7, (Rec. Doc. 15400)).  The DHECC satisfied these elements in the Motion.  The standard by which the Motion is to be evaluated is the already established elements of fraud - as opposed to Becker's inference of behavior deduced by the timing of the submission of a false statement.

The representation made by Formento and Becker was a material representation. The DHECC has established that each must claimant submit financial documentation in the form of tax returns profit and loss statements, among other financial documents, in order to substantiate its claim.  As they were required for the claim, Formento and Becker made a material representation by submitting the tax returns and profit and loss statements.

The falsity of Formento and Becker's representation, presented in depth through evidence submitted with the DHECC's Memorandum in Support of the Motion (Rec. Doc. 21402-2), shows consistent variations between the monthly amounts contained within the second set of P&L's and the monthly net taxable deposits contained within the bank statements.

The evidence shows that when Becker and Formento made the representation, submitting the second set of P&L's, they knew the representation to be false.  Formento

submitted a first set of P&L's, which matched the monthly net taxable deposit amounts contained within his bank statements.  As Formento was the owner of his company and Becker was responsible for his claim preparation, both parties had superior access to the company's true financial information, and thus were in the best position to know that what was submitted to the DHECC was false.  *In re HealthSouth Corp. Shareholders Litigation*, 845 A.2d 1096, 1105-06 (Del. Ch. 2003), *aff'd.* 847 A.2d 1121 (Del. 2004).[5]

At a minimum, Becker and Formento made this representation recklessly without any knowledge of its truth and as a positive assertion.  Submission of the P&L's to the DHECC portal in furtherance of a claim is a positive assertion.  Further, failure to verify and reconcile a critical profit and loss statement to the company's bank records, a verifiable and contemporaneous source of financial information, is evidence that the representation, at a minimum, was made recklessly.

The assertive effort to induce the DHECC (and before that, the GCCF) to rely upon Formento and Becker's representation shows that it was made with the intent that it be acted upon.  When initially informed that  the first set of P&L's did not match the annual total of the  tax return, Formento and Becker submitted a new set that did match.  Alleviating this purported discrepancy was intended to cause the DHECC to act upon the representation.

With the tax returns for the requisite time period in hand, the DHECC did, in fact, rely upon the corresponding P&L's (the second set) submitted by Formento and Becker as evidenced by the DHECC's issuance of an award to Formento.

---

[5] In *Healthsouth* the CEO of HealthSouth, who had submitted an incorrect value of his shares to the company's board, was "the party with superior access to information and the primary duty to ensure the accuracy of the financial statements."

Whether the DHECC suffered injury is not in dispute.  Although Formento and Becker contend through the Theisen declaration that the original amount of damage claimed by the DHECC to be incorrect, the alternative amount sworn to by Theisen still shows damage to the DHECC in the amount of $67,852.37.  The DHECC maintains the correctness of the methodology employed by Barker in his declaration, showing the DHECC suffered injury in the amount of $114,000.

        C.      <u>Neither Becker nor Formento is Entitled to Any Funds from the DHECC</u>

Becker suggests that full restitution would be punitive in nature, a "death penalty,"[6] and therefore unwarranted.  This Court, however, has already held that upon a finding of fraud, it is both reasonable and proper that the claimant make restitution for all of the funds that he received as a result of his fraudulent claim.  See Order & Reasons on Special Master's Motion for Return of Payment Made to Jarrod A. Burrle at 5 (Rec. Doc. 14747), Thonn at 21-26, Alfonso at 9-10.  Further in the event the Court has found individuals to have acted in bad faith, the Court has invoked its authority to issue a sanction.  *See* Order & Reasons on the DHECC's Motion for Return of Payment Made to Tommy Pham, at 6.  Here, Formento received $184,503.41 as a result of his fraudulent claim, made in reliance on financial data provided by Becker.  Both should be required to return this full amount.

As the Court has recognized many times, it is well-accepted that one who receives a judgment through fraud is bound to make restitution.  Zirlott, at 6, <u>Restatement (Third) of Restitution and Unjust Enrichment</u> § 13 (2011) ("A transfer induced by fraud or material misrepresentation is subject to rescission and restitution.  The transferee is liable in

---

[6] Return of the full award amount is not a sanction, nor a "death penalty"; it is the proper result upon a finding of fraud committed upon the DHECC.

restitution as necessary to avoid unjust enrichment.")  Restitution here is both reasonable and proper.

       D.    <u>Conclusion</u>

      Formento and Becker's misrepresentation to the DHECC defrauded and caused damage to a program set up to protect proceeds intended for those harmed by the spill. This type of fraud against the DHECC cannot be tolerated.  *Hazel-Atlas*, at 246 (stating that "institutions set up to protect and safeguard the public [are] institutions in which fraud cannot complacently be tolerated consistently with the good order of society.").

      The totality of the record shows that Formento and Becker defrauded the DHECC, and the Claims Administrator is entitled to judgment as a matter of law.  The Claims Administrator respectfully requests that the Motion be granted.  Formento and Becker should be cast in judgment, *in solido*, for the full amount of the DHECC award. And Formento's counsel, Restivo & Reilly LLC, should be cast in judgment *in solido* with them to the extent of the $9,275.17 it received through the Formento award under its contingency fee contract.

                              Respectfully submitted,

                              Patrick A. Juneau
                              Claims Administrator


                              By: ____/s/ Kevin Colomb_____
                              Kevin Colomb
                              Manager of Compliance and Internal Integrity

Dated:  October 7, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing papers have been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, and that a copy of the foregoing have been served this 7th day of October, 2016, by electronic mail, on the following:

Bernadette Restivo
Restivo & Vigil-Farinas, LLC
103400 Overseas Hwy.
Pink Plaza, Suite 237
Key Largo, FL 33037

Dennis M. Malone
100 E. Main Street, Suite 209
Trinidad, CO 81082
*Attorney for William A. Becker Consulting, LLC*