UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | |
| This Document Relates To: | * | JUDGE BARBIER |
| | * | |
| No. 15-4143, 15-4146 & 15-4654 | * | MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### NEW CLASS CLAIMS ADMINISTRATOR'S CLARIFICATION OF NEW CLASS DISTRIBUTION MODEL ISSUES

NOW COMES the Claims Administrator for the New Class, Michael J. Juneau, who submits the following comments in an effort to clarify certain issues raised by recent filings made in connection with the Court's consideration of the proposed settlements and the proposed New Class Distribution Model. These comments are intended to provide the Court with an understanding of some of the rationale underlying the New Class Distribution Model so that the Court may have complete information in considering the issues before the Court in connection with the Fairness Hearing scheduled for November 10, 2016. These comments are limited to claims filed under the New Claims Distribution Model and do not attempt to address any matters concerning claims under the DHEPDS nor the Old Class.

1. <u>Compliance with MDL 2179 Pre-Trial Order 60</u>.

The New Class Distribution Model attempts to assign a reasonable value to class members' potential claims for punitive damages under general maritime law as set forth in the *Robins Dry Dock* line of cases. One group of New Class members considered in that regard consists of those that:

(a) Have received no compensatory damages through any avenue to date (those who may have opted out of the Deepwater Economic and Property Damage Settlement ("DHEPDS") and also have not received anything through a voluntary settlement, etc.); *and*

(b) Have no reasonable likelihood of recovering compensatory damages in the future given that any such claims have been dismissed for failure to comply with MDL 2179 Pre-Trial Order 60.

The relationship between the value of a claimant's compensatory damages and its punitive damages was thoroughly discussed by Magistrate Wilkinson in his decision as the Allocation Neutral in this matter:

> In Baker, in the context of the Exxon Valdez litigation, the United States Supreme Court exhaustively reviewed the history of punitive damages awards in addressing what constitutes an appropriately recoverable amount of punitive damages under general maritime law. The Court determined that the best approach to decide the propriety of a punitive damages award is "pegging punitive to compensatory damages using a ratio or maximum multiple. . . . [T]he potential relevance of the ratio between compensatory and punitive damages is indisputable, being a central feature in our due process analysis." Baker, 554 U.S. at 507.
> At the conclusion of its extensive discussion, the Supreme Court held that, "given the need to protect against the possibility (and the disruptive cost to the legal system) of awards that are unpredictable and unnecessary, either for deterrence or for measured retribution, we consider that a 1:1 ratio [of compensatory to punitive damages], which is above the median award, is a fair upper limit in such maritime cases." Id. at 513 (emphasis added). [Rec. Doc. 15652, 12/10/15, pages 12-13]

Given that these individuals and entities have not and will not likely recover any compensatory damages, the New Class Distribution Model assesses the most reasonable value of their corresponding punitive damage claim as zero dollars ($-0-).

One filing objecting to the New Class Distribution Model argues that monies paid for compensatory damages either in the DHEPDS or through settlements facilitated by the Court-

appointed Neutrals were monies paid by BP and not paid by either Halliburton or Transocean. But those monies were paid in exchange for release of compensatory damage claims against BP and an agreement not to pursue such claims against Halliburton and Transocean. The New Class Distribution Model has considered that compensatory damages potentially applicable at least in part to all parties, including Halliburton and Transocean, have been paid in those instances, thus making payment of punitive damages to those claimants reasonable. In contrast, the group of claimants who have had no compensatory damage recovery at all and have no reasonable chance for such recovery in the future are most appropriately assigned a punitive damage value of zero dollars ($-0-).

    2.   <u>Tax-Exempt Entity Document Requirements</u>.

The New Class Distribution Model requires submission of certain documents to enable the settlement program to adequately assess a property owner's claim – typically a property deed, a tax bill, a tax assessed value, etc. Certain filings made by government entities have expressed concern that such requirements are impossible for tax-exempt entities to satisfy given the particular circumstances in a specific jurisdiction. The New Class Distribution Model anticipated situations that presented unique circumstances, and for that reason, the New Class Distribution Model affords the New Class Claims Administrator discretion to adjust the documentation requirements as appropriate for extraordinary situations:

> The New Class Claims Administrator reserves the right to require additional documentation or to consider appropriate alternative documentation he deems to be reliable and appropriate for verification and evaluation of a given claim. [Rec. Doc. 18797, 6/13/16, page 27]

Further, any determinations made by the New Class Claims Administrator in this regard are subject to review by the Court as provided by the settlement-wide appeals process.

    3.    <u>Reclassification of Wetlands Real Property Claims</u>.

The New Class Distribution Model seeks to implement the same process in evaluating Wetlands Real Property claims as that has been used in evaluating Wetlands Real Property claims in the DHEPDS over the past four-plus (4+) years. One filing has indicated concern that the New Class Distribution Model may not allow reclassification of a "non-oiled" parcel to "oiled" despite submission of adequate documentation to support such a reclassification. But such a reclassification was allowed under the DHEPDS and will likewise be allowed for new claims filed under the New Class Distribution Model. Although it was always intended that such reclassification would be permissible for new claims filed in the New Class consistent with the process utilized in the DHEPDS, in order to further clarify this point, the New Class Claims Administrator has modified the Parcel Eligibility Determination Form to make this explicit. As to what documentation should be required for a reclassification (either from "non-oiled" to "oiled" or from outside the Wetlands zone entirely to within the Wetlands zone), the evidence standard under the New Class Distribution Model will be the same as that utilized under the DHEPDS for the last four (4) years. To utilize a different standard would result in inequities and inconsistencies that were deemed to be undesirable when formulating the New Class Distribution Model. Further, reliance upon limited government or academic reports was deemed more conducive to reliability and consistency as opposed to reliance upon "experts' interpretations" submitted by claimants as suggested in one of the recent court filings. Additionally, as noted above, the New Class Administrator has the discretion to consider

alternative documentation where appropriate, and determinations are subject to review by this Court.

        Submitted this 11th day of October, 2016.

                              Respectfully Submitted,

                                 /s/Michael J. Juneau
                            MICHAEL J. JUNEAU, Bar No. 18277
                            NEW CLASS CLAIMS ADMINISTRATOR
                            P.O. Box 51268
                            Lafayette, LA 70505-1268
                            Telephone No. (337) 269-0052