UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>*This Document Relates to:*<br><br>Nos. 12-970, 15-4143,<br>15-4146 and 15-4654 | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE WILKINSON |

### REPLY BRIEF
### IN SUPPORT OF FINAL APPROVAL OF HALLIBURTON AND TRANSOCEAN SETTLEMENTS OF ASSIGNED AND NEW CLASS CLAIMS

In accordance with the Court's Orders of April 12, 2016,[1] and May 6, 2016,[2] appointed Class Counsel for the Economic & Property Damages Settlement Class and Settlement Class Counsel for the New Class respectfully submit the following Reply Brief in further support of Final Approval,[3] and in response to the seven limited Objections[4] which have been submitted:

**MAY IT PLEASE THE COURT:**

Not one class member has objected to the approval of the Settlements themselves. Not one member of either the Old Class or the New Class has objected to the Neutral's Allocation. Not one New Class member has objected to the propriety of certification for settlement purposes under

---

[1] PRELIMINARY APPROVAL ORDER [Rec. Doc. 16183] (April 12, 2016).

[2] ORDER [Rec. Doc. 16900] (May 6, 2016) p.1 and p.2(f).

[3] *See* Rec. Doc. 21423.

[4] Rec. Docs. 21716, 21719, 21723, 21740, 21741, 21745, and 21752. (*See also* Rec. Doc. 21717 (Mot. to Intervene, with proposed Objection [Rec. Doc. 21718])).

Page | 1

Rule 23(b)(3).  Not one New Class member has objected to the fairness, reasonableness or adequacy of the New Class Settlement, under Rule 23(e).  Not one class member has objected to the notice.  Not one class member has objected to the requested attorneys' fees.

The handful of objectors merely object to the proposed New Class Distribution Model, which:

- Is fair and reasonable;[5]

- Was developed by an impartial and disinterested neutral,[6] with open input from the New Class members, and a considerable amount of prior experience with Spill-related issues and claims;[7]

- Is based largely upon frameworks and criteria that were fully and finally approved by the Court in *Deepwater Horizon II*;[8]

- Is itself subject to final approval by this Honorable Court, and may be modified by the Court in the event of any perceived deficiency;  and,

- Affords each New Class member with the right of an administrative appeal in the event of any claim-specific perceived unfairness or anomaly.[9]

---

[5] *See generally* NEW CLASS CLAIMS ADMINISTRATOR'S PROPOSED DISTRIBUTION MODEL [Rec. Doc. 18797] (June 13, 2016);  NEW CLASS CLAIMS ADMINISTRATOR'S CLARIFICATION OF DISTRIBUTION MODEL ISSUES [Rec. Doc. 21778] (Oct. 11, 2016);  KLONOFF DECLARATION (Aug. 5, 2016) [Rec. Doc. 21423-1] at pp.24-25 ¶71; HERMAN-ROY DECLARATION (July 14, 2016) [Rec. Doc. 21423-2] at p.31 fn.150.

[6] Which process was approved by the U.S. Fifth Circuit for internal allocation of the Seafood Compensation Fund in Deepwater Horizon II, 739 F.3d 790, 812-814 (5th Cir. 2014).

[7] *See* PROPOSED DISTRIBUTION MODEL, pp.1-4.

[8] *See generally* ORDER AND REASONS [Rec. Doc. 8138] (Dec. 21, 2012) (reported at: In re Deepwater Horizon, 910 F.Supp.2d 891 (E.D.La. 2012)), *aff'd,* 739 F.3d 790 (5th Cir. 2014) ("*Deepwater Horizon II*"), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 754 (2014).

[9] *See* SECOND AMENDED HESI PUNITIVE DAMAGES AND ASSIGNED CLAIMS SETTLEMENT AGREEMENT (Amended as of September 2, 2015) [Rec. Doc. 15322-1] at p.22, ¶8(e); TRANSOCEAN PUNITIVE DAMAGES AND ASSIGNED CLAIMS SETTLEMENT AGREEMENT (May 29, 2015) [Rec. Doc. 14644-1] at p.23, ¶8(e).  *See also* CLARIFICATION OF DISTRIBUTION MODEL ISSUES, at pp.4, 5.

Notably, only 36, out of over 100,000 New Class members,[10] (*i.e.* less than 0.036%), have chosen to opt out of the Settlement Class, and one of the relatively few "objections" to the New Class is actually a plea by additional fishermen to expand the New Class definition so that they can be *included* in the Settlements.[11]

For these reasons, for the reasons previously submitted, and for the reasons further outlined below, there can be little doubt that the Settlements are fair, reasonable and adequate to both the members of the Old Class and the members of the New Punitive Damages Settlement Class.

**Plaquemines Parish Government Objection to the Distribution Model**  [Rec. Doc. 21716]

Plaquemines Parish and related objectors make it clear that they "do not object to the HESI-Transocean Punitive Damages Settlement," but only "to certain terms and operational clauses … in the New Class Claims Administrator's Proposed Distribution Model."[12] In particular, these objectors raise concerns with the proof required for ownership of wetlands real property claims, as well as the evidence allowed to establish the existence or extent of oiling on such properties. While such objections to the proposed Distribution Model should not defeat final approval of the Settlements for the reasons outlined *supra*,[13] the Claims Administrator has nevertheless made it

---

[10] According to the Settlement Program statistics, 10,543 Seafood claimants, 28,657 Coastal claimants, 4,497 Wetlands claimants, 1,610 Real Property Sales Loss claimants, 67,184 Subsistence claimants, and 1,308 Vessel Damage claimants submitted claims to the *Deepwater Horizon* Economic & Property Damages Settlement Program. *See* STATUS REPORT – Ex. A [Rec. Doc. 21753-1] (Sept. 1, 2016), Table 2. This does not include Charterboat Operators and other New Class members who may have opted out of or were excluded from the Old Class.

[11] *See* MOT. TO INTERVENE [Rec. Doc. 21717].

[12] OBJECTIONS AND PROPOSED AMENDMENTS BY THE PARISH OF PLAQUEMINES, ET AL [Rec. Doc. 21716] at p.1.

[13] Namely: **(a)** The proposed Distribution Model is fair and reasonable. **(b)** The proposed Distribution Model was developed by an impartial and disinterested neutral. **(c)** Both the neutral internal allocation process and the substantive criteria and frameworks upon which much of the proposed Distribution Model is based were fully and finally approved by the Court in *Deepwater Horizon II*. **(d)** The Proposed Distribution Model is subject to final approval by the Court, and could be modified in the event of any perceived deficiency. And **(e)** the Settlements afford each New Class member with the right of an administrative appeal in the event of any claim-specific perceived unfairness or anomaly.

clear that: **(i)** "the New Class Distribution Model affords the New Class Claims Administrator discretion to adjust the documentation requirements as appropriate for extraordinary situations,"[14] and **(ii)** "reclassification of a 'non-oiled' parcel to 'oiled' … was allowed under the DHEPDS and will likewise be allowed for new claims filed under the New Class Distribution Model," utilizing the same evidentiary standard that has been "utilized under the DHEPDS for the last four (4) years."[15]  This limited objection to the proposed Distribution Model is therefore moot.

**South Texas Shrimpers "Objection"**  [Rec. Doc. 21718]

As addressed more fully in Class Counsel's separately filed Opposition to Motion for Leave to Intervene,[16] these "objectors" are not New Class members, (nor even Old Class members), and therefore have no standing to object. *See, e.g.,* In re Deepwater Horizon, 910 F.Supp.2d 891, 941 (E.D.La. 2012), *aff'd,* 739 F.3d 790 (5th Cir.), *cert. denied,* 135 S.Ct. 754 (2014); *citing,* In re Vioxx Prods. Liab. Litig., 388 Fed.Appx. 391, 395 (5th Cir. 2010) (per curiam); Feder v. Electronic Data Systems Corp., 248 Fed.Appx. 579, 580 (5th Cir. 2007); Agretti v. ANR Freight Sys., Inc., 982 F.2d 242, 246 (7th Cir. 1992); Transamerican Refining Corp. v. Dravo Corp., 952 F.2d 898, 900 (5th Cir.1992); Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir.1989); 4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) §11:55.

Nevertheless, with respect to the fairness, reasonableness, and adequacy of the Settlements, these would-be "objections" actually support the Settlements, which are so favorable that additional litigants would like to be included.

---

[14] CLARIFICATION OF NEW CLASS DISTRIBUTION MODEL ISSUES [Rec. Doc. 21778] at p.3.

[15] CLARIFICATION, at p.4.

[16] *See* OPPOSITION [Rec. Doc. 21784] (Oct. 14, 2016), to MOTION TO INTERVENE [Rec. Doc. 21717] (Sept. 23, 2016).

**Schoenberger Objection**   [Rec. Doc. 21719]

The Schoenbergers do not object to the overall Settlements, but only to the Distribution Model.  Specifically, they want to be allocated more from the New Class than they received from the Old Class.[17]  For all of the reasons previously stated, such an objection to the Distribution Model should not preclude full and final approval of the Settlements.  It is certainly reasonable to utilize the final Eligibility Determinations from the previous Settlement Program, whose substantive frameworks and procedural mechanisms were fully and finally approved in *Deepwater Horizon II*.[18]  The Schoenbergers had the right to opt out of the New Class, but chose not to.  And, to the extent that the Schoenbergers might dispute their New Class allocations, there is the right to seek review of the New Class determination, in the form of an administrative appeal.

**The PTO 60 Objectors**   [Rec. Doc. 21723]

The PTO 60 Objectors do not object to the overall Settlements, but only to the New Class Distribution Model.  While this objection should not preclude final approval for all of the reasons previously stated,[19] the Objection seems premised on a fundamental mis-understanding of the underlying proceedings and settlements to-date:  Putting aside the issue of whether these objectors' interpretation of *Exxon* and *Gore* is legally correct, (which seems doubtful),[20] the crux of the

---

[17] *See generally* OBJECTION TO PROPOSED DISTRIBUTION MODEL [Rec. Doc. 21719] at pp.2-3 and 4-5.

[18] *See* PROPOSED DISTRIBUTION MODEL, General Principle No. 10.

[19] In addition to the points that Class Counsel have made *supra,* the Claims Administrator has specifically addressed this issue in his October 11, 2016 CLARIFICATION OF NEW CLASS DISTRIBUTION MODEL ISSUES [Rec. Doc. 21778] at pp.1-3.

[20] Whether as a matter of substantive general maritime law or as a matter of Constitutional Due Process, it seems clear that the Court is primarily concerned with ensuring that a defendant's overall punitive damage exposure is tethered in some way to the overall damages or injuries emanating from that defendant's conduct, and not with the specific source of any compensatory damage payment. *See* BMW of North America v. Gore, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose"); Exxon Shipping Co. v. Baker, 554 U.S. 471, 502 (2008) ("a penalty should be reasonably predictable in its severity, so that even Justice Holmes's 'bad man' can look ahead with some ability to know what the stakes are in choosing one course of action or another…. And when the bad man's counterparts turn up from time to time, the penalty scheme they face ought to threaten them with a fair probability of suffering in like degree when they wreak like damage").

objection seems to be that there is (allegedly) no difference between New Class members who settled with the Neutrals and New Class members who failed to comply with PTO 60, as "Both groups received nothing from HESI or Transocean and both groups do not have pending claims for damages against them."[21]  *However,* in the case of New Class members who settled their BP claims with the Neutrals (generally *reserving* their punitive claims against Transocean and HESI), BP was effectively paying for the compensatory damages caused by Transocean and HESI, by operation and effect of the indemnity agreements between and among the jointly and severally liable defendants.[22]

These objectors, by contrast, apparently:

- Could have, but elected not to, participate in the BP Economic & Property Damages Settlement;

- Failed, in the six-plus years since the Spill, to file any Complaint, Short-Form Joinder, or Claim-in-Limitation;

- Could not or would not settle with the Neutrals; and,

- Despite being served with PTO 60,[23] failed to comply with its requirements, in order to preserve their compensatory – and, hence, punitive – damages claims.

---

[21] OBJECTIONS TO FINAL CONFIRMATION AND/OR APPROVAL [Rec. Doc. 21723] at p.8.

[22] The New Class members' punitive damage claims at issue arise under the general maritime law, which visits joint and several liability for compensatory damages upon multiple joint tortfeasors.  In this case, however, BP was required to pay all compensatory damages to all plaintiffs by virtue of the indemnity agreements between Halliburton/Transocean and BP. (Indeed, the continued and final enforceability of said indemnity agreements was part of the consideration for these Settlement Agreements. *See, e.g.,* SECOND AMENDED HALLIBURTON AGREEMENT [Rec. Doc. 15322-1] at p.38, ¶19(a)(xi).) As a practical matter, BP was also satisfying its obligations under OPA, which renders the Responsible Party liable for all compensatory damages in the first instance.  Absent the indemnity and release agreements between BP and Halliburton/Transocean, however, BP would have been able to recoup some of those compensatory damage payments from Halliburton and Transocean, the settling parties.

[23] *See* FILE & SERVE EXPRESS TRANSACTION No. 58783085 (March 29, 2016) [submitted herewith as Exhibit 1] at p.26.

The PTO 60 Objectors, moreover, had the opportunity – *after* reviewing the proposed Distribution Model – to opt out of the New Class settlement, but elected to participate instead.

Not only is the Claims Administrator's proposed Distribution Model eminently reasonable in this regard,[24] but allowing an unknown universe of people who, after more than six years, have not complied with PTO 60, to now come forward and submit additional new (unliquidated) claims would likely increase the administrative expenses and delay – which would arguably be detrimental to the collective interests of the New Class as a whole.[25]

**Galan Objections**  [Rec. Docs. 21740, 21741]

It is unclear whether either Galan Real Estate Company or Cypress Lake No. 1 LLC is a member of the New Class. To the extent either or both of these Objectors are New Class members, they do not appear to object to the overall Settlements, but only to the proposed New Class Distribution Model. Such objections should not preclude final approval for all of the reasons previously stated.

To the extent that Galan Real Estate Company or Cypress Lake No. 1 LLC are members of the BP Economic & Property Damages Settlement Class, and are objecting to the distribution model for the assigned claims portion of the Settlements proposed by the Claims Administrator for the Old Class,[26] the Claims Administrator and Trustee of the BP Economic Settlement was vested with the authority to make such a *pro rata* distribution, subject to Court approval, when the

---

[24] *See generally* CLARIFICATION OF PROPOSED DISTRIBUTION MODEL, at pp.1-3.

[25] *See generally* HERMAN-ROY DECLARATION [Rec. Doc. 21423-2] at p.31 fn.150.

[26] *See* DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGE SETTLEMENT CLAIMS ADMINISTRATOR'S REPORT RE: HALLIBURTON AND TRANSOCEAN SETTLEMENTS [Rec. Doc. 18796] (June 13, 2016).

Economic & Property Damages Class Settlement was fully and finally approved.[27]  In the alternative, and in any event, such an objection is not supported by any evidentiary showing, and is not well-founded in fact, in equity, or in law.

**Preston Hobson Objection**  [Rec. Doc. 21745]

Mr. Hobson does not object to the overall fairness, reasonableness, or adequacy of the Settlements.  Mr. Hobson's objection, rather, appears to be that the New Class Distribution Model "fails to provide any assurance that Hobson will receive any consideration for his release of the settling defendants."[28]

First, such objections to the proposed Distribution Model should not preclude final approval, for all of the reasons previously stated.  Secondly, Mr. Hobson had the opportunity – after reviewing the proposed Distribution Model – to opt out of the New Class settlement, but elected to participate instead.  If, finally, and nevertheless, it is true that "oil from the spill did touch and damage Mr. Hobson's lot on Dauphin Island,"[29] and Mr. Hobson can establish that consistent with the requirements of the Distribution Model,[30] Mr. Hobson will be entitled to compensation from the New Class.

---

[27] *See, e.g.,* ECONOMIC & PROPERTY DAMAGES SETTLEMENT AGREEMENT, Section 5.14 [Rec. Doc. 6276-1, at 53].

[28] CLASS ACTION SETTLEMENT OBJECTION [Rec. Doc. 21745] at p.3, ¶10.

[29] CLASS ACTION SETTLEMENT OBJECTION, at p.3, ¶9.

[30] *See, e.g.,* CLARIFICATION OF PROPOSED DISTRIBUTION MODEL, at p.4 ("reclassification of a 'non-oiled' parcel to 'oiled' … was allowed under the DHEPDS and will likewise be allowed for new claims filed under the New Class Distribution Model," utilizing the same evidentiary standard that has been "utilized under the DHEPDS for the last four (4) years").

**City of Biloxi Request for Clarification**  [Rec. Doc. 21752]

The City of Biloxi requested clarification with respect to the proof requirements for real property claims, as the City does not pay property taxes on City-owned properties.  In response, the Claims Administrator has made it clear that he "anticipated situations that presented unique circumstances, and for that reason, the New Class Distribution Model affords the New Class Claims Administrator discretion to adjust the documentation requirements as appropriate for extraordinary situations."[31]  Accordingly, the limited and conditional "objection" to the Distribution Model by the City of Biloxi is moot.

## Conclusion

Based on the record, the evidence, and the law of this case;  for the above and foregoing reasons;  and for the reasons previously provided;  the Halliburton and Transocean Settlements should be fully and finally approved.

This 14th day of October, 2016.


Respectfully submitted,


| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
|---|---|
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| **HERMAN HERMAN & KATZ LLC** | **DOMENGEAUX WRIGHT ROY EDWARDS** |
| 820 O'Keefe Avenue | **& COLOMB LLC** |
| New Orleans, Louisiana 70113 | 556 Jefferson Street, Suite 500 |
| Telephone: (504) 581-4892 | Lafayette, Louisiana 70501 |
| Fax No. (504) 569-6024 | Telephone: (337) 233-3033 |
| E-Mail: sherman@hhklawfirm.com | Fax No. (337) 233-2796 |
| *Co-Lead Class Counsel* | E-Mail: jimr@wrightroy.com |
| | *Co-Lead Class Counsel* |

---

[31] CLARIFICATION OF DISTRIBUTION MODEL, at p.3.

## CLASS COUNSEL

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

| | |
|---|---|
| Alphonso Michael "Mike" Espy<br>MORGAN & MORGAN, P.A.<br>188 East Capitol Street, Suite 777<br>Jackson, MS 39201<br>Office: (601) 949-3388<br>Telefax: (601) 949-3399<br>E-Mail: mike@mikespy.com | Scott Summy<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219<br>Office: (214) 521-3605<br>Telefax: (214) 599-1172<br>E-Mail: ssummy@baronbudd.com |
| Calvin C. Fayard, Jr.<br>FAYARD & HONEYCUTT<br>519 Florida Avenue, SW<br>Denham Springs, LA 70726<br>Office: (225) 664-4193<br>Telefax: (225) 664-6925<br>E-Mail: calvinfayard@fayardlaw. | Conrad S.P. "Duke" Williams<br>WILLIAMS LAW GROUP<br>435 Corporate Drive, Suite 101<br>Maison Grand Caillou<br>Houma, Louisiana 70360<br>Office: (985) 876-7595<br>Fax No. (985) 876-7594<br>E-Mail: duke@williamslawgroup.org |
| Ervin A. Gonzalez<br>COLSON HICKS EIDSON<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Office: (305) 476-7400<br>Telefax: (305) 476-7444<br>E-Mail: ervin@colson.com | Joseph F. Rice<br>MOTLEY RICE LLC<br>28 Bridgeside Blvd.<br>Mount Pleasant, SC 29464<br>Office: (843) 216-9159<br>Fax No. (843) 216-9290<br>E-Mail: jrice@motleyrice.com |

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that the above and foregoing Reply Brief will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pre-Trial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 14th day of October, 2016.

/s/ Stephen J. Herman and James Parkerson Roy