# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § | MDL No. 2179<br><br>SECTION: J<br><br>HONORABLE JUDGE BARBIER |
| Applies to: Nos. 12-970, 15-4143, 15-4146, 15-4654 | § § § § | MAGISTRATE JUDGE WILKINSON |

## TRANSOCEAN'S REPLY BRIEF IN RESPONSE TO OBJECTIONS AND IN FURTHER SUPPORT OF FINAL APPROVAL OF PUNITIVE DAMAGES AND ASSIGNED CLAIMS SETTLEMENT

Triton Asset Leasing GmbH, Transocean Deepwater Inc., Transocean Offshore Deepwater Drilling Inc., and Transocean Holdings LLC ("Transocean") respectfully submit this reply brief in response to objections and in further support of final approval of the Transocean Punitive Damages and Assigned Claims Settlement Agreement (the "Settlement Agreement") (Rec. Docs. 14644-1 through 14644-5).

There are no real objections to approval of the Settlement Agreement. Of the eight objections filed, one is from a group of claimants who are not class members and therefore do not have standing to object, three were filed by apparent class members whose objections are to the New Class Distribution Model, not the Settlement Agreement, two were filed by local governments seeking clarification of acceptable forms of proof and have been mooted by the New Class Claims Administrator's Clarification of New Class Distribution Model Issues (Rec. Doc. 21778), and two were filed by pro se claimants who appear to be asking to be included in the New Class.

1

In addition to the lack of any real objection to the Settlement Agreement, the low number of opt out requests[1] demonstrates that the Agreement provides a fair, reasonable, and adequate resolution of the settled claims and should therefore be approved under Federal Rule of Civil Procedure 23. Accordingly, the Court should enter an order finally approving the Settlement Agreement.

## I. There Are No Real Objections to the Settlement Agreement

### A. The South Texas Shrimpers Are Not Class Members and Do Not Have Standing to Object

The South Texas Shrimpers claim that "during the relevant timeframe of April 20, 2009 through April 18, 2012, [they] owned, chartered, leased, rented, managed, operated, utilized or held [a] proprietary interest in commercial fishing or charter fishing vessels or worked on or shared an interest in catch from vessels that fished in Specified Gulf Waters, as defined in the proposed New Class," but "landed or home ported outside of the Gulf Coast Area, as currently defined in the proposed New Class, which extends into Texas only through Galveston County." (Rec. Doc. 21718 at 2). The South Texas Shrimpers request that the definition of Gulf Coast Area be expanded to include four Texas counties.[2] *Id.* at 5.

Because it is clear that the South Texas Shrimpers are not Class Members, they have no standing to object to the Settlement Agreement. *See, e.g., In re Deepwater Horizon*, 910 F. Supp. 2d 891, 941 (E.D. La. 2012) ("Plaintiffs falling outside the settlement class are entirely unaffected by the Settlement, and thus lack standing to challenge it."), *aff'd*, 739 F.3d 790 (5th Cir.), *cert. denied*, 135 S.Ct. 754 (2014). Moreover, the fact that they object to being excluded

---

[1] The opt out information provided by Garden City Group indicates a total of 36 opt out requests were timely made.

[2] The South Texas Shrimpers have also filed a Motion to Intervene in the New Class. (Rec. Doc. 21717).

2

from, and seek to intervene in, the New Class underscores the fairness of the Settlement Agreement.

### B. The Objections By Apparent Class Members Are to the Distribution Model, Not the Settlement Agreement

#### 1. The Schoenberger Claimants Filed An "Objection to Proposed Distribution Model"

The Schoenberger Claimants do not object to the Settlement Agreement, but to the New Class Distribution Model as the title of their pleading makes clear.  In particular, the Schoenberger Claimants object "to certain provisions of the Claims Administrator's Proposed Distribution Model, since it may have the effect of unfairly excluding three of their claims from this Settlement."  (Rec. Doc. 21719 at 1).  The Schoenberger Claimants argue that although they have *Robins Dry Dock* standing and should receive the highest priority under subpart 9 of the Proposed Distribution Model, their claims appear to be barred by subpart 16, which states that for DHEPDS Class Members whose claims were evaluated by DHEPDS, eligibility within the New Class will be based solely upon the submissions made to the DHEPDS and upon the determinations made by the DHEPDS. *Id.* at 3.  This objection to the New Class Distribution Model should not defeat final approval of the Settlement Agreement for several reasons, including that the New Class Distribution Model is fair and reasonable,[3] was developed by an impartial and disinterested neutral,[4] is based largely upon frameworks and criteria fully and finally approved by the Fifth Circuit in *Deepwater II*,[5] is itself subject to final approval and/or

---

[3] *See generally*, New Class Claims Administrator's Proposed Distribution Model (Rec. Doc. 18797).

[4] *See Deepwater Horizon II*, 739 F.3d 790, 812-14 (5th Cir. 2014) (approving similar process for internal allocation of the Seafood Compensation Fund).

[5] *See generally*, Order and Reasons (Rec. Doc. 8138) (reported at: *In re Deepwater Horizon*, 910 F. Supp. 2d 891 (E.D. La. 2012)), *aff'd*, 739 F.3d 790 (5th Cir. 2014) ("*Deepwater Horizon II*"), *rehearing en banc denied*, 756 F.3d 320 (5th Cir. 2014), *cert. denied*, 135 S.Ct. 754 (2014).

3

modification by the Court, and affords each New Class member with the right of an administrative appeal of any claim-specific perceived unfairness or anomaly.[6]

### 2. The PTO 60 Objectors Also Object to the Distribution Model, Not the Settlement Agreement

The PTO 60 objectors do not object to the Settlement Agreement, but rather the "additional requirements for participation in the Proposed Settlements…added and communicated to the New Class Members" since the Preliminary Approval Order was issued and Notice of the Proposed Settlements published.  (Rec. Doc. 21722 at 2).  In particular, the PTO 60 objectors point to the requirement of compliance with PTO 60, found in the Claim Form and Proposed Distribution Model, as problematic.  *Id.* at 3.  The Claims Administrator has addressed the issue of compliance with PTO 60 in his New Class Claims Administrator's Clarification of New Class Distribution Model Issues and Transocean defers to that explanation. (Rec. Doc. 21778 at 1-3).  Moreover, this objection to the New Class Distribution Model should not impede approval of the Settlement Agreement for the same reasons stated above with respect to the Schoenberger Claimants.

### 3. Preston Hobson Objects That He is Not Guaranteed Compensation Under the Distribution Model

Preston Hobson objects to the Settlement Agreement because the New Class Distribution Model fails "to provide any assurance that Hobson will receive any consideration for his release of the settling defendants."  *Id.* at ¶ 10; *see also id.* at ¶ 11 ("Due to this lack of consideration on behalf of members having no assurance of adequate consideration for their release of the settling defendants, Hobson objects to the proposed settlement and his inclusion in the class definition.").

---

[6] *See* Transocean Punitive Damages and Assigned Claims Settlement Agreement (May 29, 2015) (Rec. Doc. 14644-1) at 23.

As with the Schoenberger Claimants and the PTO 60 objectors, the Hobson objection to the New Class Distribution Model should not preclude final approval of the Settlement Agreement.

  **C.**  **The Local Governments Seek Only to Clarify Acceptable Forms of Proof and Their "Objections" Have Been Mooted By the Claims Administrator**

The Parish of Plaquemines, the Plaquemines Parish School Board, the Town of Grand Isle and Grand Isle Independent Levee District, and the Town of Lafitte (collectively, "Plaquemines Parish, Grand Isle, and Lafitte") filed objections in order "to seek modification in the Proposed Distribution Model to include specific forms of proof which more accurately coincide with the real property claims of local governmental entities….[and] to expand the evidence allowed to prove the actual oiling of real properties." (Rec. Doc. 21716 at 1-2). They do not object to the actual terms of the Settlement Agreement.

With respect to the proof of ownership required for Wetlands Real Property Claims, Plaquemines Parish, Grand Isle, and Lafitte argue that the items listed in the Proposed Distribution Model (Parcel Identification Number, 2010 Property Tax Bill, and Deed showing ownership on 4/20/2010) are "relatively nonexistent when dealing with real properties owned by local governmental entities" because "local governmental entities do not pay property taxes to themselves." *Id.* at 2. Accordingly, "in an abundance of caution," Plaquemines Parish, Grand Isle, and Lafitte "object to the language limiting the forms of proof as being the only evidence allowed to support a real property claim" under the Settlement Agreement. *Id.* at 3. They suggest that the New Class Claims Administrator should instead accept any reliable proof of property ownership (such as conveyance records, transfers, judicial determinations, title opinions and/or title letters), particularly when the ownership of the property is not contested by a

competing claim of another New Class member. *Id.*[7]  Similarly, the City of Biloxi, Mississippi ("Biloxi") submitted an "objection / clarification" in which it outlines three issues for clarification with respect to documentation that will be sufficient to support its claims regarding property within the Coastal Real Property Zone maps.  (Rec. Doc. 21752 at 2-3).

The clarifications sought by the local governments as to the adequacy of proof have been addressed by the Claims Administrator and are therefore moot.  Specifically, the New Class Claims Administrator's Clarification of New Class Distribution Model Issues explains that the "New Class Distribution Model anticipated situations that presented unique circumstances, and for that reason, [it] affords the New Class Claims Administrator discretion to adjust the documentation requirements as appropriate for extraordinary situations....Further, any determinations made by the New Class Claims Administrator in this regard are subject to review by the Court as provided by the settlement-wide appeals process."  (Rec. Doc. 21778 at 3-4 (citing Rec. Doc. 18797 at 27) ("The New Class Claims Administrator reserves the right to require additional documentation or to consider appropriate alternative documentation he deems to be reliable and appropriate for verification and evaluation of a given claim.")).  Accordingly, concerns over acceptable documentation have been resolved and should not impede approval of the Settlement Agreement.

> **D. Although It is Not Clear Whether the Pro Se Claimants Are Class Members or Not, Their "Notices to Object" Appear to Ask to Be Included in the Class**

It is not clear whether Pro Se Claimants Galan Real Estate Company and Cypress Lake NO.I, LLC are New Class members, but even if they are, their "Notice[s] to Object" do not

---

[7] Plaquemines Parish, Grand Isle, and Lafitte also seek to clarify the evidence allowed to prove oiling of real property.  (Rec. Doc. 21716 at 5-7).

actually object to the Settlement Agreement. Instead, they indicate that they did not recover under the BP Settlement and request that they "be in this new class or roll over into said new class of HESI." (Rec. Docs. 21740 and 21741).

## II. The Low Numbers of Objections and Opt-Outs Are Evidence of the Settlement Agreement's Fairness

As noted, only 8 claimants objected to, and only 36 claimants timely opted out of, the Settlement Agreement. These extremely low objection and opt-out rates are evidence of the Settlement Agreement's fairness.[8] *See, e.g.*, *Hammon v. Barry*, 752 F. Supp. 1087, 1092-93 (D.D.C. 1990) ("While the fact that a relatively small percentage of the class members objects to a proposed settlement is not dispositive, '[c]ourts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections.'") (alteration in original) (quoting 2 H. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.47, at 463 (2d ed.)); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'"); *Cobell v. Salazar*, 679 F.3d 909, 920 (D.C. Cir. 2012) ("Indeed, the existence of the opt-out alternative effectively negates any inference that those who did not exercise that option considered the settlement unfair.").

## CONCLUSION

For the foregoing reasons, and those set forth in the Motion and Memorandum filed by Transocean and HESI, the Motion, Memorandum, and Declarations filed by the PSC,[9] and the Reply

---

[8] Moreover, the quality of the opt outs is not good, as the vast majority appear to be from claimants who are not New Class members.

[9] Transocean does not adopt each specific assertion contained in the PSC's Motion, Memorandum, and Declarations, but Transocean joins in the request that the Settlement Agreement be fully and finally approved by the

7

Briefs filed by the PSC and HESI, the Settlement Agreement provides a fair, reasonable, and adequate resolution of the settled claims and should be approved under Federal Rule of Civil Procedure 23. Accordingly, Transocean respectfully request that the Court enter an order finally approving the Settlement Agreement.

October 14, 2016                          Respectfully Submitted,

  s/ Brad D. Brian                                  s/ Steven L. Roberts
Brad D. Brian                                      Steven L. Roberts
Daniel B. Levin                                 SUTHERLAND ASBILL & BRENNAN LLP
MUNGER TOLLES & OLSON LLP              1001 Fannin Street, Suite 3700
355 So. Grand Avenue, 35th Floor           Houston, Texas 77002
Los Angeles, CA 90071                      Tel: (713) 470-6100
Tel: (213) 683-9100                         Fax: (713) 354-1301
Fax: (213) 683-5180                        Email: steven.roberts@sutherland.com,
Email: brad.brian@mto.com
           daniel.levin@mto.com

                                                           s/ Kerry J. Miller
                                                         Kerry J. Miller
                                                         BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
                                                         201 St. Charles Avenue, Suite 3600
                                                         New Orleans, LA 70170
                                                         Tel: (504) 566-8646
                                                         Fax: (504) 585-6946
                                                         Email: kjmiller@bakerdonelson.com

**ATTORNEYS FOR TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., TRANSOCEAN DEEPWATER INC., TRANSOCEAN HOLDINGS LLC, AND TRITON ASSET LEASING GmbH.**

---

Court, and agrees with the PSC that the Settlement Agreement meets the procedural and legal requirements for Final Approval.

8

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Reply Brief in Response to Objections and In Further Support of Punitive Damages and Assigned Claims Settlement Agreement will be served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 14th day of October 2016.

      /s/ Kerry J. Miller

9