UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Wilkinson |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

**REPLY IN SUPPORT OF MOTION OF THE DHECC FOR RETURN
OF PAYMENTS MADE TO MAXIM, L.C., BRIANTE PALAZAENO AND OTHERS**

The Claims Administrator, Patrick A. Juneau, on behalf of the Deepwater Horizon

Economic Claims Center ("DHECC"), replies to the almost identical, "copy cat" Oppositions

[Rec. Docs. 21709 and 21759] filed separately by Briante Palazaeno ("Palazaeno") and

Mollere, Flanagan, & Landry, L.L.C. ("MFL")(collectively "Opponents") to the Claims

Administrator's Motion for Return of Payments Made to Maxim, L.C., Briante Palazaeno,

and Others (Rec. Doc. 18516) (the "Motion").

A.   **MAXIM, L.C. HAS NOT OPPOSED THE MOTION, AND JUDGMENT SHOULD
BE ENTERED AGAINST IT BY DEFAULT.**

First, it must be noted that although Opponents Palazaeno (the claimant's principal

and alter ego) and MFL (the claimant's attorneys) filed their Oppositions on behalf of their

respective selves, no appearance was entered and no opposition whatsoever was filed to

the Motion by or on behalf of Maxim, L.C. ("Maxim"), the claimant itself.  As a result, insofar

as the Motion was brought against Maxim, it should be deemed unopposed, and this Court

should enter judgment against Maxim as prayed for in the Motion by default.  As a

corollary, MFL must be cast in judgment *in solido* with Maxim to the extent of the

$62,614.22 it received under its contingency fee contract, derivatively and without the need to show any fault on its part.

### B.   THE FLIMSY UNDERPINNINGS OF THE OPPOSITIONS ARE INSUFFICIENT TO DEFEAT THE MOTION, AND JUDGMENT SHOULD BE ENTERED AGAINST OPPONENTS.

The Oppositions do not even address – much less refute - most of the facts and issues presented in the Memorandum supporting the Motion and in the evidence presented by the DHECC in support of the Motion.  As such, the bulk of the DHECC's position is not really opposed – including the lengthy legal discussion of why Palazaeno should be found liable *in solido* with Maxim for the full amount of the claim award.  In the Oppositions, Opponents contend that the Motion should be denied because: (i) disputes of fact allegedly exist as to the level of involvement and manipulation by Palazaeno in connection with the preparation and filing of Maxim's Business and Economic Loss ("BEL") claim; and (ii) the DHECC allegedly conducted "improper unilateral discovery" in arriving at the conclusion that Palazaeno fraudulently obtained an inflated award on behalf of Maxim.  These contentions are without merit.

#### 1.   No Disputed Issues of Material Fact have Been Established.

Opponents' assertion of the existence of disputed issues of material fact is long on argument, but devoid of evidentiary support.  The **only** "evidence" presented by MFL consists of four innocuous letters [MFL Exs. A-D] purportedly to show some level of involvement by Shelly Licciardi ("Licciardi"), and a theretofore unfiled affidavit "by Maxim or Briante Palazaeno" [MFL Ex. F][1].  The only "evidence" presented by Palzaeno was his

---

[1] MFL Ex. E is not probative evidence since it is just an irrelevant newspaper article.

own affidavit [Palazaeno Ex. A][2], which says nothing of real substance, and by its omissions it really supports the Motion – as will be explained.  The bulk of the Oppositions are rooted in the notion that Licciardi had more involvement within the filing and preparation of the Maxim BEL claim than what she swore to in her affidavit and more than what the DHECC presented in the Motion.  While Palazaeno's later-filed affidavit (Palazaeno Ex. A.) may recite certain additional facts not included in Licciardi's affidavit, specifically her alleged agreement to the Traina and MFL legal representation, Licciardi does not dispute having limited involvement in Maxim and the Leonardo Trattoria restaurant, or following up with a believed error in the company's GCCF claim.  Most importantly, while attempting to question DHECC's assertions as to the level of Licciardi's participation within Maxim or any disaster relief claims, Opponents present nothing to refute the fact that Palazaeno was the individual who pursued this claim and took all the necessary steps to ensure receipt of a fraudulently inflated BEL claim from the DHECC.

### 2.  The Alleged "Improper Unilateral Discovery" Contention is a "Red Herring".

Opponents also contend that the DHECC conducted "improper unilateral discovery" in uncovering the facts and circumstances that formed the basis for its seeking return of payments from Palazaeno for a fraudulently inflated claim.  The term of "unilateral discovery" employed by Opponents is misguided.  In no uncertain terms, on September 6, 2013, this Court directed then Special Master Louis J. Freeh, to "examine and investigate…any past or pending claims submitted to the CSSP which are deemed to be suspicious." (emphasis added).  *See* Order, Regarding Special Master Louis J. Freeh's Report

---

[2] This is apparently the affidavit that MFL said would be forthcoming – apparently without even seeing it or knowing if would be submitted by Maxim or Palazaeno.

of September 6, 2013, at 2-3. (Rec. Doc. 11288).  Further, this Court directs the initiation of "legal action to 'clawback' the payment of any fraudulent claims." *Id*.  The function of the Special Master, as the Court is aware, has since transitioned to the Claims Administrator's Office.  Prior to the drafting of the Motion and its subsequent filing, employees of the Office of the Special Master and the DHECC conducted an investigation, as part of this Court's mandate, into the Maxim BEL claim.  This investigation entailed issuance of subpoenas for records, an action this Court ordered may occur "without notice or service of any parties in this matter." *See* Order, Regarding Update of the Claims Administrator of May 6, 2015, at 2. (Rec. Doc. 14543).  The actions of the Special Master and the DHECC were part of a Court ordered investigation overseen by the Court Supervised Settlement Program.  No actions of either entity were improper, nor did they entail "discovery" as Opponents contend.

   At the time of the investigation there was no pending lawsuit, motion, or contested matter to form any predicate for the use of "discovery", as Opponents describe the process. The purpose of the investigation was to determine, in the first instance, whether there were any improprieties and whether any clawback motion should be filed.  If the outcome of the investigation had been negative, the Motion would not have been filed.  Simply stated, there was no obligation to coordinate the investigation with any counsel or anyone else.[3]  The investigatory process was to determine facts.  If Opponents believed that any of the facts developed and presented by the DHECC were erroneous or incomplete, they were free to present countervailing evidence, including affidavits from anyone.  And yet, all they

---

[3] As an aside, it is also peculiar that MFL makes much of the supposed dichotomy between MFL and Traina. MFL suggests that DHECC should have known that Traina was no longer with MFL, and should have brought MFL into this fray earlier. But Traina was with MFL when the Maxim claim was filed and it was more than reasonable for DHECC to contact Traina. Indeed, it is difficult to believe that Traina would not or should not have alerted MFL to the investigation that he was aware was proceeding. Any complaint that MFL might have in that regard should be directed to Traina, not to the DHECC.

came forward with were the four inconsequential letters [MFL Exs. A-D] and the self-serving Palzaeno affidavit [Palazaeno Ex. A] – which are clearly insufficient to suggest a disputed issue of material fact or to defeat the Motion.

### C.    PALAZAENO'S FRAUDULENT ACTIONS REQUIRE RESTITUTION.

The totality of the evidence presented by the DHECC with the Motion, which has not been countervailed by the scant letters and single affidavit submitted by Opponents, shows that there is no genuine issue as to any material fact and the DHECC is entitled to judgment as a matter of law. *See* Order & Reasons on Special Master's Motion for Return of Payment Made to Casey Thonn and Others at 19 (Rec. Doc. 12794).  Opponents assert that the factual background surrounding the submission of Maxim's claim creates a dispute of fact. However, Opponents' attempt to create a genuine issue of material fact through unsupported assertions that there was no intention to defraud the DHECC is insufficient to defeat the Motion.

Opponents' attempt to muddy the waters and try to contend that material issues of fact exist.  They do this primarily by attempting to place Licciardi closer to the fraudulent actions of Palazaeno, but also by proffering theoretical arguments that attempt to explain away Palazaeno's submission of fraudulent documents while doing nothing to dispute the facts put forward by the DHECC.

Opponents proffer Licciardi's testimony from her affidavit (Motion, Ex. O) that she had "very limited involvement" with Maxim and the restaurant as a dispute of fact when held against her complaint to the GCCF regarding a payout to a former employee.  Not only does this contention fail to dispute the fact put forward by Licciardi's testimony, it is far from material to the fact that Palazaeno submitted false documents to the DHECC to obtain

an inflated claim award.  Additionally, while Opponents attempt in argument only to bring Licciardi closer to the employment of David Sewell, CPA ("Sewell"), who assisted in the compilation Maxim's P&L's from data submitted by Palazaeno; their mention of Sewell meeting with both Palazaeno and Licciardi only restates what the DHECC already represented to the Court in its Motion and certainly does not call any facts into dispute.  *See* Motion, at 12 (Rec. Doc. 18516).  While Opponents mention this meeting, they offer nothing to refute the fact that the evidence shows it was only Palazaeno who communicated with the CPA and offered the financial data to complete the claim preparation process.

Opponents also call into question the fact that Licciardi was unfamiliar with attorney Traina.  Specifically, they point to exhibits in the Opposition (MFL Exs. A – D) that show Traina writing to Licciardi regarding the representation of Maxim, but no responses from Licciardi to Traina are offered by Opponents.  This exhibition of one way communication does nothing to refute the sworn testimony of Licciardi that she had never met Traina.  Moreover, it certainly does nothing to refute the fact that Palazaeno signed the fee agreement form and was the individual who communicated with Traina in order to ensure the filing of the claim.

Opponents argue with the portrayal of the evidence showing Palazaeno's suggestion to Sewell's assistant that the numbers within the P&L's "should vary per mo – So they r not the same ea mo." Opp., at 8, citing DHECC Memorandum in Support at 9-10.  Highlighting that the submitted P&L's contain numbers that  do not vary despite Palzaeno's urging, Opponents leap to the conclusion that this shows he did not manipulate the claim.  This argument is misguided, as the very suggestion by Palazaeno that the CPA's assistant change

the numbers from what he gave them shows his intent to manipulate any document in efforts to ensure a claim award.

Opponents also take issue with the DHECC's reliance on the known Maxim bank accounts in order to compare a contemporaneous financial source to the documents submitted by Palazaeno.  Opponents claim, through Palazaeno's affidavit, [Palzaeno Ex. A] that Maxim had other bank accounts into which Maxim sales revenues were deposited. Palazaeno's affidavit provides the account numbers for these accounts.  But this assertion does not call into dispute the financial figures the DHECC employed to determine the falsity of the P&L's submitted by Palazaeno.  Opponents make reference to these additional accounts.  However, no mention is made of any amounts deposited into any of the accounts, and Opponents make no claim that any of the accounts referenced would refute the evidence put forward by the DHECC.[4]  Indeed, the fact that Opponents would highlight the existence of other accounts, but not provide further information as to the amounts in the accounts and their purported correlations with the facts presented with the claim, raises even more suspicion and makes it even clearer that any other bank account information would not be supportive of Opponents' position.

Opponents also criticize the DHECC's comparison of Maxim's P&L's to the City sales tax returns.  However, while critical of the City's enforcement standards at the time, Opponents do not dispute the fact that these records would represent a contemporaneous

---

[4] Pursuant to its authority under this Court's Order of May 6, 2015 (Rec. Doc. 14543), the DHECC has issued subpoenas to each of the named banks for records of each stated account number, which have not yet been responded to.  As such, the DHECC respectfully requests to reserve its right to supplement this pleading with the results of these subpoenas, if necessary.

representation of Maxim's finances and remain vastly different from the P&L's that Maxim/Palazaeno caused the DHECC to rely upon.

### D. PALAZAENO'S MISREPRESENTATION TO THE DHECC SATISFIES THE COURT'S LEGAL STANDARD FOR RETURN OF PAYMENTS.

This Court has set out that in order to sustain a motion for return of payments, the DHECC must satisfy the following: (1) Maxim/Palazaeno made a material representation; (2) their representation was false; (3) when Maxim/Palazaeno made the representation, they knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the DHECC (the other party); (5) the DHECC acted in reliance upon the representation; and (6) the DHECC suffered injury. Order & Reasons on Motion of the DHECC for Return of Payments Made to Crystal Seafood Company, Inc. and Others at 6 (Rec. Doc. 15325) (citing *In re Deepwater Horizon*, No. 15-30574, 2016 WL 1397663 at *3, -- F. App'x – (5th Cir. April 8, 2016); Alfonso Order, at 6-7, (Rec. Doc. 15400)).  The DHECC satisfied these elements through the evidence submitted with and the reasons and authorities cited in the Memorandum filed with Motion.  The Motion is to be evaluated by the established elements of fraud previously recognized by the Court - which elements are not defeated through Palazaeno's attempt to draw innocent individuals closer to the bad faith assertions and fraudulent actions he committed upon the DHECC.

Opponents reference the governing elements in the Opposition, correctly stating that "if evidence of one of the elements is missing, a clawback motion cannot succeed." *See* Opp. at 5, citing the Taylor Order, (Rec. Doc. 114813).  Opponents however fail to show that evidence of any of the elements is lacking, and their unsupported assertions and

complaints regarding "unilateral discovery" are not sufficient to overcome the summary judgment standard.

Every representation made by Palazaeno to the DHECC on behalf of Maxim was a material representation.  The DHECC has established that each claimant must submit financial documentation in the form of tax returns and profit and loss statements, among other financial documents, in order to substantiate its claim.  As they were required for the claim, Maxim/Palazaeno made a material representation by submitting the financial documents to the DHECC.

The falsity of Palazaeno's representation, presented through evidence submitted in DHECC's Memorandum in Support of the Motion (Rec. Doc. 18516-2), shows that the P&L's submitted by Palazaeno are largely inflated as compared to any other available and reliable contemporaneous source of Maxim's income for the relevant time period.

The evidence shows that when Palazaeno submitted Maxim's inflated P&L's, he knew that representation to be false.  Evidence of Palazaeno's knowledge was originally exposed in the DHECC's memorandum as evidenced by his communication with the CPA to complete the P&L's so that the claim could be filed.  Further, Palazaeno's knowledge can be gleaned from Maxim's submission of corporate documents that register Palazaeno's deceased dog as the company's agent.  At a minimum, the evidence already presented by the DHECC in its Motion and Memorandum shows that Palazaeno made this representations recklessly without any knowledge of its truth and as a positive assertion.

Palazaeno's efforts to ensure the completion of the P&L's for submission and the filing of the questionable state corporate documents show that his representations were made with the intent that it be acted upon by the DHECC.

9

With all of the required documents in hand, the DHECC did, in fact, rely upon the P&L's and tax documents submitted by Palazaeno as evidenced by the DHECC's issuance of an award.  Further, whether the DHECC suffered injury is not in dispute.  As outlined in the DHECC's Memorandum, Palazaeno submitted vastly inflated P&L's on behalf of Maxim which largely inflated the award amount attained by Maxim, L.C.

### E.    CONCLUSION

Palazaeno's misrepresentation to the DHECC defrauded and caused damage to a program set up to protect proceeds intended for those harmed by the spill.  This type of fraud against the DHECC cannot be tolerated.  *Hazel-Atlas*, at 246 (stating that "institutions set up to protect and safeguard the public [are] institutions in which fraud cannot complacently be tolerated consistently with the good order of society.").

The totality of the record shows that Maxim/Palazaeno defrauded the DHECC, and the Claims Administrator is entitled to judgment as a matter of law.  The Claims Administrator respectfully requests that the Motion be granted.  For reasons previously stated in the memorandum, Palazaeno should be cast in judgment, *in solido*, for the full amount of the DHECC award.  And as they received an award in contingency as counsel, MFL, should be cast in judgment *in solido* with Maxim and Palazaeno to the extent of the $62,614.22 it received through the Maxim award under its contingency fee contract.

Respectfully submitted,

Patrick A. Juneau
Claims Administrator


By: _____/s/ Kevin Colomb_____
Kevin Colomb
Manager of Compliance and Internal Integrity

Dated:  October 17, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing papers have been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, and that a copy of the foregoing have been served this 17th day of October, 2016, by electronic mail, on the following:

Frank G. DeSalvo, Esq.
739 Barronne Street
New Orleans, LA 70113
*Attorney for Briante Palazaeno*

Raymond Landry, Esq
Mollere, Flanagan, and Landry, LL.C.
2341 Metairie Rd.
Metairie, LA 70004
*Attorney for Mollere, Flanagan & Landry*

_____/s/ Kevin Colomb_____
Kevin Colomb