**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * | **MDL No. 2179** |
| | * | |
| | * | **SECTION: J** |
| | * | |
| | * | **JUDGE BARBIER** |
| **This Document Applies to:** | * | |
| ***No. 12-970*** | * | **MAG. JUDGE WILKINSON** |

---

**MEMORANDUM SUBMITTED BY RAYMOND G. FLORES IN OPPOSITION TO DHECC'S MOTION FOR RETURN OF PAYMENTS**

**NOW INTO COURT**, through undersigned counsel, comes Certified Public Accountant, Raymond G. Flores ("Mr. Flores"), who files this Memorandum in Opposition to the Motion for Return of Payments filed by Deepwater Horizon Economic Claims Center ("DHECC") (Rec. Doc. 21470) and the DHECC's Memorandum in Support thereof ("Clawback Memorandum"). (Rec. Doc. 21470-2 ).

On August 10, 2016, the DHECC filed the Clawback Motion directed to Herminia Medina d/b/a Tin Tin's Oriental Food Store, Lansdon Flooring, LLC and Bellasia Nail and Spa Salon, as claimants (collectively referred to hereafter as "Claimants"), and Mr. Flores as claims preparer for each claim (Rec. Doc. 21470).

As per the Clawback Motion, the DHECC seeks to "clawback" and hold Mr. Flores personally, and individually, liable for the repayment of Business Economic Loss ("BEL") claims awarded and paid by the DHECC under the Settlement Agreement to the Claimants on the basis of fraud.

Mr. Flores is a Certified Public Accountant ("CPA"). As per the Clawback Motion and Memorandum, the DHECC accuses Mr. Flores of utilizing his skills as a CPA to fraudulently prepare false profit and loss statements ("P&Ls") in conjunction with assisting Claimants with the filing and submission of their respective claims.

Mr. Flores has prepared over 100 BP oil spill claims for third parties which have not been challenged. (See, Affidavit of Ray Flores, ¶ 29). Out of over a hundred of claims, only three are being challenged on the basis of fraud. *Id.* Significantly, the three challenged claims just so happen to be the only claims Mr. Flores prepared for businesses which did not maintain P&Ls in the regular course of business. Accordingly, as part of the claims process and guidelines, Mr. Flores was required to create the P&Ls for Claimants and did so using three primary sources of information as follows: (1) bank records of Claimants; (2) documentation provided by Claimants; and (3) verbal information provided by each Claimant. (See, Affidavit of Ray Flores, ¶ 4). Unfortunately, the DHECC is using the Claimants lack of regularly maintained P&Ls as both a sword and a shield to clawback claims on the basis of fraud solely against the Mr. Flores, the CPA.

**DHECC's Position**

The DHECC's position is that the CPA intentionally manipulated the P&Ls to trigger a claim under the claims criteria. To do so, the DHECC alleges that, despite having contemporaneous source documents, Mr. Flores over-reported revenue during the periods at issue in the monthly P&Ls from 2007 through 2009, while under-reported revenue in the 2010 compensation period. In addition, to hide the intentional manipulation, DHECC's position is that Mr. Flores carefully made sure that the total annual figures reflected in the claimants' tax returns were consistent with revenue reported in

the P&Ls.[1]

In other words, the DHECC's position is that the CPA used the annual revenue reported by claimants to the IRS, but then shifted the month to month figures within that annual period in order to qualify claimants for a claim. Citing DHECC Policy 355v.2, the DHECC notes that the P&L's must be based on contemporaneous source documents, such as bank statements, invoices, and purchase orders, and must show the actual monthly revenues and expenses. DHECC states that during investigation, Mr. Flores admitted that he had used the contemporaneous source documents to create the P&Ls.[2]

However, because Mr. Flores could not produce the client's complete contemporaneous source documents when an investigator showed up at his office, and did not produce complete documents for several months thereafter, the DHECC assumes and concludes that the P&L's created by Mr. Flores were not supported by any such documentation.

It is of the utmost importance that the DHECC's entire basis for fraud is based on the erroneous assumption that the bank account records of Claimants accurately reflect the gross receipts of their respective businesses.[3] To this end, the foundation of the DHECC's assertion of fraud is based on the comparison of the banking records of Claimants, to that of the Claimaints' P&Ls created by Mr. Flores. The DHECC contends that the banking records it subpoenaed are

---

[1]It is illogical for the DHECC to contends that the fact that total annual revenues in the P&Ls are consistent with the total annual revenues in the claimants' tax returns evidence skilled fraud of Mr. Flores for purpose illogical and not proof of anything. Mr. Flores prepared Claimants IRS Tax Returns. Obviously, the P&Ls would have to be consistent with any annual revenue reported in Claimants Tax Returns. In fact, for business which did not regularly maintain P&L's, one would logically expect the CPA to start with the income reported in the tax return and then to back up from their and reconcile monthly revenue with supporting documentation from the client.

[2] Mr. Flores does not dispute this fact, he simply disputes the improper assumptions and by the DHECC that bank records accurately reflect gross receipts as explained below.

[3] This flawed and unsubstantiated reasoning will be refuted in greater detail below.

grossly inconsistent with the P&Ls, and thus, submits this variance as conclusive evidence of fraud. Based on this flawed oversimplification, the DHECC concludes that: 1) Mr. Flores made false representations when he submitted misleading P&L's that were not based on contemporaneous source documents in his possession; and 2) Mr. Flores knew the P&L's were false when he made the statements.

The DHECC's is asking this Court to find an intent to defraud solely against the CPA, Mr. Flores (not the Claimants) as a means to subject both Mr. Flores and the Claimants, respectively, to joint and several liability for return of the paid claims.

Significantly, DHECC admits that there is no proof of fraudulent conduct on the part of Claimants. (See, Rec. Doc. 21470-2, pg. 15). Notwithstanding the admitted lack of proof against Claimants, and while admitting the complexity of the accounting, the DHECC is asking the Court to find that the Mr. Flores risked his livelihood and career by intentionally defrauding the DHECC for relatively small claims and small compensation, for businesses which did not maintain P&Ls in the regular course of business.

To support its conclusory allegations of fraud against the Claimants' CPA as the basis for clawback, the only deposition taken was of one Claimant, the sole owner of Tin Tin's, Herminia Medina. Rather than deposing the CPA himself regarding the complex accountings, the DHECC relies on the sole deposition of Ms. Medina who was born and educated in the Philippines and who now runs a small business out of Pensacola, Florida. In its Clawback Memorandum, the DHECC states that Mr. Flores was uncooperative during its investigation, yet the DHECC never even sought his deposition. Accordingly, in addition to addressing the substantive flaws of the DHECC's analysis, the above facts not only open the door to, but also compel Mr. Flores to address the inherent unfairness and inaccuracy of these allegations to prevent any conscious or subconscious

bias to him. Consequently, prior to addressing the accounting analysis, Mr. Flores submits a brief explanation of the investigation conducted by the DHECC.

**DHECC Investigation**

The investigation of the subject claims occurred well over a year and only resulted in the allegation of fraud against Mr. Flores in his capacity as the CPA and claims preparer.[4] Mr. Flores only sought assistance of counsel after being placed on notice of the Clawback Motion. During the investigation, a DHECC investigator showed up at his office for an unscheduled visit demanding to interview Mr. Flores while he was meeting with clients. (See, Affidavit of Ray Flores, ¶23). Mr. Flores did not attempt to hinder the investigation, but certainly was embarrassed about having his staff interrupt his client meeting at the demand of the investigator. *Id.* Nonetheless, Mr. Flores did work with the investigator of the DHECC and its counsel to submit to interviews; the interviews were always brief. *Id.* Other than being interviewed briefly, Mr. Flores only received subpoenas for documents. Mr. Flores was never subpoenaed for deposition.

As a result, Mr. Flores did not appreciate any need for counsel during the investigation and only realized the necessity for same after being placed on notice of the Clawback Motion. The DHECC gained well over a year head start in preparing the Clawback Motion, while Mr. Flores has had a fraction of the time to respond. Nonetheless, the DHECC has portrayed Mr. Flores as uncooperative in the investigation by the failure to provide requested documentation until a Motion

---

[4] As an aside, contrary to the Clawback Memorandum, Mr. Flores was not primarily involved in preparing the BEL claims for the Claimants. Mr. Flores, initially assisted Tin Tin and Bellasia in filing claims with the GCCF and he created their P&Ls to file with the GCCF. Mr. Flores also prepared Landson Flooring's P&Ls. Once the DHECC settlement program took effect, Mr. Flores transferred nearly all of the oil spill claims he was working on to another accounting firm, HSG Accounting, in Panama City, Florida. After transfer, he had very little involvement in the subject claims. (See, Affidavit of Ray Flores, ¶'s 5, 12).

to Compel was filed and also by the provision of incomplete documentation. Mr. Flores takes great exception to his portrayal in a false light. As noted above, Mr. Flores is compelled to respond to same to prevent any potential conscious or subconscious bias towards him by these unsubstantiated allegations.

Contrary to the conclusory allegations of the DHECC, Mr. Flores did utilize contemporaneous source documents when creating the P&Ls for the Claimants and the variances between the banking records and the P&L's are not academic in terms of accounting. The documentation and analysis will be discussed more fully below. But, to place the issues of documentation in context, it is required to understand the relationship between Mr. Flores and the Claimants. Mr. Flores's CPA practice focuses on business clients for which he provides regular and ongoing work for throughout the year, as opposed to clients who simply need an their annual IRS Tax return prepared and filed. (See, Affidavit of Ray Flores, ¶23). The Claimants do not fit within this definition as the Claimants are former clients of his father and Mr. Flores relationship with is typically limited to the preparation and filing of Claimants annual IRS Tax returns. *Id.*

As a result, while Mr. Flores may have some business or banking records left over in a file for the Claimants in conjunction with preparing their annual returns, such record retention is the exception, rather than the rule. *Id.* at ¶24. When preparing Claimants annual returns, Mr. Flores is provided pertinent financial documentation by the Claimants and then after completing and filing the returns, Mr. Flores returns their documentation. *Id.* at ¶25.

In other words, Mr. Flores does not engage in a document retention practice for once a year clients as such is cost prohibitive and not required. Likewise, Mr. Flores's preparation of Claimants P&Ls was similar to that of their annual returns in terms of documentation retention. *Id.* Mr. Flores prepared Claimaints' P&Ls to assist with the oil spill claims process. Claimants provided Mr. Flores

with documentation, including contemporary source documents, to substantiate the P&Ls. However, Mr. Flores did not retain all source documentation provided by the Claimants and returned much of said documents. *Id.* Nonetheless, Mr. Flores did provide the GCCF and the DHECC with documents he thought were required, and also provided additional documents specifically requested during the claims process. *Id.*

During the investigation, the DHECC requested the contemporaneous source documentation Mr. Flores utilized in creating the P&Ls. During the time period of the initial request, Mr. Flores's ability to provide whatever documents he still had within his possession was hindered by personal issues and computer hijackers. *Id.* at ¶25. With regard to personal issues, Mr. Flores was in turmoil all while trying to manage his own livelihood due to: 1) his wife suffering with postpartum depression following the birth of their child; and 2) the near drowning of a child/relative at his pool while the child was living with him (which required resuscitation and hospitalization). *Id.* at ¶28. With regard to his computer virus issues, Mr. Flores was ultimately forced to pay the cyber terrorists to release his computer system from their virus lockdown, via Bitcoin a/k/a cryptocurrency. *Id.* at ¶26. Once Mr. Flores was able to retrieve his computer access, he provided whatever documents were in his possession. However, Mr. Flores never represented that the documents he was able to provide comprised all of the contemporaneous source documents he utilized to create the P&Ls.

Regardless, Mr. Flores was never subpoenaed for deposition. Rather, as noted above, the DHECC chose only to subpoena one Claimant for deposition, the sole owner of Tin Tin's, Herminia Medina. The DHECC has attached the transcript of Ms. Medina's deposition taken on November 10, 2015 as **Exhibit "J"** to its Clawback Memorandum. Interestingly, the DHECC quotes Ms. Medina's deposition and cites the testimony contending that her banking records reflect "all of her financial information". (See, Rec. Doc. 21470-2, pg. 7). Aside from the magnification and

exaggeration of the evidentiary value of the banking records in a vacuum which will be addressed below, neither the quoted provision of the transcript or the entire transcript support such a conclusion. Again, it is significant to note that instead of deposing Mr. Flores, the DHECC attaches this sole deposition transcript as an exhibit to its Clawback Memorandum. Undersigned respectfully submits that nothing in this transcript evidences fraud on the part of Mr. Flores. To the contrary, a plain reading of the transcript reflects nothing more than a tired, confused and emotional person who speaks English as her second language.

For example, Ms. Medina's deposition took place on Tuesday November 10, 2015. Ms. Medina testified that she had been working a festival out of town over the weekend from early morning until midnight for several days; she had only returned back to Pensacola Sunday evening before her deposition. (See, pages 17-21 of **Exhibit "J"** to Clawback Memorandum, Rec. Doc. 21470-16). Ms. Medina explained that she had not prepared for the deposition as she had to sleep on Monday. *Id.* Ms. Medina also repeatedly said she was tired and noted that to comply with the subpoena she had to secure documents the morning of the deposition from Mr. Flores because she did not have time to review her own files due to time constraints. *Id.* Significantly, upon information and belief, Mr. Flores attempted to attend the deposition, but was informed by DHECC counsel that he could not attend. Mr. Flores submits that the deposition of Ms. Medina fails to offer any support for the DHECC's allegations of fraud.

The DHECC would have this Court believe that poor paperwork constitutes fraud. However, this view has no basis in law or fact. Unfortunately, documentation issues are a persistent problem in small sole proprietorship businesses.

In particular, the Claimants at issue are not sophisticated business people which are skilled at maintaining business records to a standard of self-verification. For example, Ms. Medina is not a

sophisticated business person. She was educated in the Philippines and speaks English only as a second language. (See, Rec. Doc. 21470-16, pages 9-10). Ms. Medina's business experience is basically informal and learned on the job while working for her families similar type business in the Philippines. *Id.* at pages 11-13. In fact, the level of sophistication of the Claimants is precisely why Mr. Flores was required to create P&Ls for the Claimants. Consequently, the documents in this case are admittedly confusing. However, the Claimants' maintenance of confusing accounting records which are not self-authenticating or self-verified is not the standard and does not constitute fraud. Simply Put, the Claimants at issue are exactly the type of claimants who where damaged by the oil spill, and for whom the BEL program was designed to protect. Therefore, Mr. Flores submits that context is important and respectfully requests that this Court adjudge this matter in accordance with his task as a CPA in assisting these small family businesses at issue, with unsophisticated owners trying to maneuver a complex claims process to save their livelihood.

**Legal Standard for Fraud under the General Maritime Law**

The DHECC's Clawback Motion is based on a claim of fraud against Mr. Flores and the general maritime law applies to such motions. *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179, 2016 WL 4437960, at *1–2 (E.D. La. 2016), citing *In re Deepwater Horizon*, No. 15-30574, 2016 WL 1397663 at *3, 643 Fed.Appx. 377 (5th Cir. April 8, 2016) (unpublished per curiam).

The elements of fraud under general maritime law are the same as under traditional common law: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance on upon the representation; and (6) the

party suffered injury. *Id.* Furthermore, in order for the DHECC's motion to succeed on the briefs and without an evidentiary hearing, there must be no genuine dispute as to a material fact and the DHECC must be entitled to judgment as a matter of law. *Id.*, citing Thonn Order at 17, Rec. Doc. 12794; Parker Order at 4-5, Rec. Doc. 15325); *Cf. In re Deepwater Horizon*, 786 F.3d 344, 364 & n.68 (5th Cir. 2015) (when defendant presented substantial, but controverted, evidence that plaintiff submitted a wholly fabricated claim to settlement facility, district court should have held an evidentiary hearing to determine each witness' credibility).

**Erroneous Assumptions and Conclusions of DHECC and Reconciliation by Mr. Flores regarding Claim Calculations pertaining to Claimants**

The DHECC's Motion and Memorandum lack any evidentiary support of fraud. The DHECC chose not to examine Mr. Flores by deposition, the very actor whose skill the DHECC contends created the fraudulent product. The DHECC has simply made its own interpretation of the accounting for each Claimant and solely relies on same. The DHECC's own unsubstantiated and unverified interpretation does not evidence fraud. The DHECC is grossly oversimplifying the accounting in an attempt to flip the burden of fraud on Mr. Flores.

The DHECC's assertion of fraud is based on the comparison of the banking records of Claimants, to that of the Claimants' P&Ls created by Mr. Flores. The DHECC contends that the banking records it subpoenaed are grossly inconsistent with the P&Ls, and thus, submits this variance as conclusive evidence of fraud. However, Mr. Flores never represented that the documents he was able to provide the DHECC during its investigation comprised all of the contemporaneous source documents he utilized to create the P&Ls. More importantly, is the fact that the banking records of Claimants cannot be considered in a vacuum.

The DHECC's entire basis for fraud is based on the erroneous assumption that the bank account records of Claimants accurately reflect the gross receipts of their respective businesses. As attested to via his affidavit submitted in opposition to the Clawback Motion, Mr. Flores did utilize contemporaneous source documents when creating the P&Ls for the Claimants and he fully explains the variances between the banking records and the P&Ls. (See, Affidavit of Ray Flores).

In conjunction with this explanation, Mr. Flores evaluated each claimants records, including the bank account records relied upon by the DHECC and prepared reconciliations demonstrating the accuracy of the P&Ls. The reconciliations are attached as exhibits to Mr. Flores affidavit. (See, Affidavit of Ray Flores). In further support of his accounting, accurate creation of P&Ls and reconciliations, Mr. Flores respectfully submits the affidavits in support of this Opposition of the following Claimants, Ms. Medina of Tin Tin's and Eva Lansdon, one of the Managing Members of Lansdon Flooring, LLC. These affidavits are being filed contemporaneously with this Opposition.

Based on the above and the affidavits in support, Mr. Flores respectfully submits that the DHECC is not entitled to any relief requested in its Clawback Motion and Memorandum and respectfully requests that this Court deny its Motion with prejudice. In the alternative, Mr. Flores submits that, at the very least, there are material facts in dispute preventing judgment as a matter of law in favor of the DHECC at this stage of the proceeding as such disputed issues of material fact would require adjudication via evidentiary hearing.

WHEREFORE, Mr. Flores respectfully requests that this Court deny the DHECC's Motion for Return of Payments.

Respectfully submitted this 3rd day of November, 2016.

/s/ H. Lee Strayhan, III
H. LEE STRAYHAN, III
Louisiana Bar No. 27098
CLARK PARTINGTON
4100 Legendary Drive, Suite 200
Destin, Florida 32541
(850) 650-3304
Email: lstrayhan@clarkpartington.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing motion has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 3rd day of November, 2016.

/s/ H. Lee Strayhan, III
H. LEE STRAYHAN, III