UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL BY THE         *    10-MD-2179
        *DEEPWATER HORIZON*       *
        IN THE GULF OF MEXICO     *    Section J
        ON APRIL 20, 2010         *
                                  *    November 10, 2016
                                  *
Relates to:  All cases, including *
             15-4143, 15-4146,    *
             15-4654, 12-970      *
                                  *
* * * * * * * * * * * * * * * * * *


FAIRNESS HEARING BEFORE THE
HONORABLE CARL J. BARBIER
UNITED STATES DISTRICT JUDGE


<u>Appearances</u>:


For the Class:              Domengeaux Wright Roy Edwards
                              & Colomb, LLC
                            BY:  JAMES PARKERSON ROY, ESQ.
                            556 Jefferson Street, Suite 500
                            Lafayette, Louisiana 70501


For the Class:              Herman Herman & Katz, LLC
                            BY:  STEPHEN J. HERMAN, ESQ.
                            820 O'Keefe Avenue
                            New Orleans, Louisiana 70113


For Halliburton:            Reed Smith, LLP
                            BY:  R. ALAN YORK, ESQ.
                            811 Main Street, Suite 1700
                            Houston, Texas 77002

<u>Appearances</u>:

For Transocean:                 Baker Donelson Bearman
                                  Caldwell & Berkowitz, PC
                                BY:  KERRY J. MILLER, ESQ.
                                201 St. Charles Avenue, Suite 3600
                                New Orleans, Louisiana 70170


Also Participating:             Michelle LaCount, Esq.
                                Michael J. Juneau, Esq.
                                Scott R. Bickford, Esq.
                                Kevin C. Schoenberger, Esq.
                                Camilo K. Salas III, Esq.


Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
                                500 Poydras Street, Room B-275
                                New Orleans, Louisiana 70130
                                (504) 589-7778




Proceedings recorded by mechanical stenography using
computer-aided transcription software.

**<u>INDEX</u>**

|                               | <u>Page</u> |
|-------------------------------|------|
| James P. Roy, Esq.            | 6    |
| Stephen J. Herman, Esq.       | 13   |
| Michelle LaCount, Esq.        | 19   |
| Michael J. Juneau, Esq.       | 22   |
| R. Alan York, Esq.            | 39   |
| Kerry J. Miller, Esq.         | 42   |
| Scott R. Bickford, Esq.       | 44   |
| Kevin C. Schoenberger, Esq.   | 50   |
| Camilo K. Salas III, Esq.     | 53   |
| Michael J. Juneau, Esq.       | 61   |

**PROCEEDINGS**

**(November 10, 2016)**

     **THE COURT:**  Good morning, everyone.  Good to see everybody again.  It feels like déjà vu all over except we don't have quite the crowd we used to get here.  I don't know why that is.

     Stephanie, you can call the case.

     **THE DEPUTY CLERK:**  MDL 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*:  Civil Action 15-4143, *John M. Petitjean, et al. v. Halliburton Energy, Inc., et al.*; Civil Action 15-4146, *John M. Petitjean, et al. v. Triton Asset Leasing GmbH, et al.*; Civil Action 15-4654, *Economic and Property Damages Settlement Class v. Halliburton Energy*; Civil Action 12-970, *Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production, Inc., et al.*

     **THE COURT:**  Counsel, particularly those who want to formally appear here on behalf of one of the parties to these settlements, please make your appearances now.

     **MR. HERMAN:**  Good morning, Your Honor.  Steve Herman for the class.

     **MR. ROY:**  Good morning, Your Honor.  Jim Roy for the class.

     **MR. MILLER:**  Good morning, Judge Barbier.  Kerry Miller for Transocean.  I have with me here Carter Williams,

09:37

1  also for Transocean.

2          MR. WILLIAMS:  Good morning.

3          THE COURT:  Good morning.

4          MR. YORK:  Good morning, Your Honor.  Alan York for

5  Halliburton.  I have with me Brad Taylor, also appearing for

6  Halliburton.

7          THE COURT:  Okay.  Very well.

8          MR. FAYARD:  Good morning, Your Honor.  Calvin Fayard

9  for the class.

10          THE COURT:  Did we have a sign-in sheet?  Did we use

11  one this morning?

12          Has everybody signed in?  As long as you have

13  signed in, unless you plan to speak, it's not necessary

14  otherwise to identify yourself right now.

15          MR. SALAS:  May it please the Court.  Camilo Salas,

16  Your Honor.  I would like to speak on behalf of some objectors.

17          THE COURT:  I'm going to call for the objectors at

18  the appropriate time.

19          MR. SALAS:  Thank you.

20          THE COURT:  The way I plan to proceed is we will have

21  a presentation first on behalf of class counsel, giving us an

22  overview of the settlement, the background and so forth, and

23  any class issues with respect to both certification of a

24  settlement class and the settlements themselves.

25          We will talk about the notice procedure.  We

1    have a presentation by Mr. Juneau, the younger, as opposed to

2    his father.

3                    Mr. Juneau, are you going to give us a report on

4    behalf of both the New Class, of which you are the

5    administrator, and on behalf of your father?  Of course, you

6    have been working with your father with respect to the

7    Old Class also.  Correct?

8              **MR. JUNEAU:**  Yes, Judge.

9              **THE COURT:**  Then we will have comments by counsel for

10   Halliburton, counsel for Transocean, then we will take up any

11   objections and perhaps rebuttal comments, and we will go from

12   there.

13                    So Mr. Roy and Mr. Herman.

14             **MR. ROY:**  Thank you, Your Honor.

15                    I'm going to address first, on behalf of class

16   counsel, sort of a general overview of where we are and how we

17   got here in these two settlements, and then Steve is going to

18   address the specific class issues.

19                    During the time that we were negotiating

20   settlement terms with BP, we were also negotiating possible

21   settlement with HESI and exploring settlement options with

22   Transocean.  This process went on for a considerable amount of

23   time.  It went on leading up to the Phase One trial and it, of

24   course, extended on and off afterwards.

25                    Subsequent to the settlement with BP, the

09:40

1    discussions focused on resolutions of both claims of the
2    Old Class and proposed New Class because, really, outstanding
3    after your Phase One decision was only a punitive damage claim
4    remaining against Halliburton and against Transocean and, in
5    addition to that, the so-called assigned claims that the
6    Old Class, the BP economic and property damage class, had
7    negotiated to get all of BP's claims that it had against
8    Transocean and HESI.
9            So the bottom line is on September 2, 2014,
10   Halliburton and class counsel filed a proposed settlement
11   agreement.  A few days later this Court issued its Phase One
12   findings holding there was no gross negligence, recklessness,
13   or other egregious conduct on the part of either Halliburton or
14   Transocean.
15           Now, that was a very significant ruling that, of
16   course, we disagreed with, but nevertheless it was your ruling.
17   The effect of those determinations was that there could be no
18   punitive damages against either Halliburton or Transocean.  The
19   second effect, when you concluded that the indemnity agreement
20   and hold harmless agreement between BP and Transocean and
21   Halliburton was, in fact, valid, then it, at least for the time
22   being, killed the potential for the assigned claims.
23           So while it was possible that class counsel
24   could convince the Fifth Circuit that Your Honor, with all due
25   respect, was in error in these rulings, the parties were of the

1  mind that there was serious doubt that that would happen.

2  Regardless, there was risk out there for Transocean.

3  Transocean entered into settlement discussions again with class

4  counsel, and a settlement was ultimately entered into and filed

5  into the record on May 29, 2015.

6  Negotiations with both Halliburton and

7  Transocean were almost all done under the supervision of

8  Magistrate Judge Sally Shushan.  We'll get to the amounts in a

9  moment, but to be clear, Judge Shushan intervened on a number

10  of occasions to facilitate some very difficult, complex

11  discussions that were ultimately resolved successfully.

12  So the Halliburton and Transocean settlements

13  were intended to resolve both the assigned claims and the

14  punitive damage claims.  With Halliburton and Transocean in

15  aggregate agreeing to put up $1,241,887,000 for the benefit of

16  the classes, the total funds then had to be allocated because

17  class counsel wanted to avoid the appearance of a conflict in

18  allocating how much of that money went to the Old Class under

19  the assignment and how much of it went to the New Class for

20  punitive damage claims.

21  So to eliminate the risk of an appearance of a

22  conflict, the settlement agreements contemplated that

23  Your Honor would appoint a neutral to receive arguments and

24  evidence and to actually make an allocation recommendation to

25  Your Honor.  You appointed Magistrate Judge Wilkinson, who

09:45

1    served as the Court-appointed allocation neutral and who, in

2    fact, did make an allocation recommendation dividing the

3    settlement proceeds between the two settlements.

4              Judge Wilkinson undertook to establish

5    reasonable allocation and solicited and received input from

6    counsel, class members, and other interested parties.  Class

7    counsel, liaison, the PSC, nor any other class counsel

8    advocated for any particular allocation to avoid any perceived

9    conflict.

10             After carefully considering the facts and

11   circumstances, Judge Wilkinson determined that a proper

12   allocation would be 72.8 percent to the New Class, the punitive

13   damage class, and 27.2 percent to the Old Class.  Those numbers

14   in aggregate ended up being $903,638,743.58 to the New Class

15   and $338,247,923.42 to the Old Class.

16             So how were these classes to be administered?

17   Your Honor appointed a claims administrator for the New Class,

18   Michael Juneau, who had been intimately aware of much of the

19   underlying litigation and settlement process that had been

20   going on with the BP economic and property damage class and, in

21   short, was able to get up and running very, very quickly.

22             Both these classes are different from the BP in

23   one major manner and that is that costs of administration come

24   from the settlement corpus itself.  So it was very important to

25   make sure that whatever plan for distribution and

09:47

1    administration was adopted was an efficient, cost-effective one

2    that would not consume a whole lot of the corpus of the

3    settlement for the class members unnecessarily.

4              Mr. Juneau has --

5         **THE COURT:**  In fact, that's one of the reasons I

6    appointed Judge Wilkinson, because we work a lot cheaper here

7    than some of these special masters.

8         **MR. ROY:**  No comment.

9              Mr. Juneau developed a distribution model, which

10   we will get to in just a few minutes.  He will address it also

11   himself and has submitted it to the Court after receiving input

12   from counsel.

13             Halliburton and Transocean also agreed, subject

14   to Court approval, to pay up to an additional $124.95 million

15   in common benefit costs and attorneys' fees, and that is before

16   you as well and briefed.

17             You granted preliminary approval on April 12,

18   2016, and determined that Judge Wilkinson had appropriately

19   performed his assigned function as to allocation neutral and

20   agreed with Judge Wilkinson's allocation.

21             To be clear, the original number from

22   Halliburton that Judge Wilkinson allocated actually was

23   increased by about $2 million later unilaterally by

24   Halliburton.  So before you is a slightly higher number, but

25   the allocation percentages are identical.

09:49

1          You conditionally certified the New Class and

2    preliminarily determined that the settlement terms were fair,

3    reasonable, and adequate.  You also approved the notice plan

4    and established a schedule with the opportunity to opt out or

5    file any objections.

6          So what is the New Class distribution model?

7    Very simply stated, Mr. Juneau has published to you and to the

8    public a model that looks to *Robins Dry Dock* and its progeny,

9    and the distribution model benefits from the prior

10   infrastructure, knowledge, experience, and determination of the

11   *Deepwater Horizon* economic and property damage settlement.

12          The specifics, from 40,000 feet, of the

13   New Class distribution model are Mr. Juneau prioritized the

14   claims in his recommendation to you and generally said he

15   anticipates about 80 percent of the corpus going to real

16   property claims, about .6 percent going to personal property

17   claims, 17.8 percent to commercial fishermen claims, .2 percent

18   to charter boat claims, and 1.4 percent to subsistence claims.

19   He has reserved the ability to reallocate within those

20   categories by as much as 3 percent.

21          Each claim category's eligible funds generally

22   are divided based on compensation determinations that have been

23   or will be made in the economic and property damage settlement

24   program that's been going on now for several years under the

25   auspices of Pat Juneau, the administrator.

1    So, in essence, a huge cost savings is able to
2    be effected by taking the data from the Old Class and
3    transferring the relevant data to Mr. Mike Juneau in the
4    New Class and not even requiring people that qualify for real
5    property claims, personal property, commercial fishermen,
6    charter boats, subsistence -- not even requiring them, if they
7    got an award in the Old Class, to do anything else in the
8    New Class.  So it was a massive time savings and economic
9    savings from an administrative standpoint.
10    Now, there will be new applications coming in
11    from people that were excluded from the Old Class for one
12    reason or another that otherwise may qualify under the
13    New Class, and Mr. Juneau has made provisions for that as well.
14    So what happens to the money that's under the
15    assignment portion of the settlement that Judge Wilkinson gave
16    to the Old Class subject to your approval and concurrence?  Pat
17    Juneau has recommended that these monies be distributed to the
18    economic and property damage claimants that actually received
19    money pro rata based upon what they were paid out of the
20    economic and property damage settlement program, subject to a
21    cap of $150,000 a claim and subject to a minimum payment of
22    $100 per eligible claim.
23    So to recap before we move into class
24    certification issues, the original Halliburton settlement was
25    for $1,028,000,000.  Halliburton increased that to

1    $1,030,136,667.  The Transocean class is $211,750,000.  The

2    aggregate of the two available to be distributed between the

3    two classes subject to the allocation is $1,241,886,667.

4              Unless you have any further questions on

5    background, Your Honor, I'll tender to Mr. Herman.

6              **THE COURT:**  Okay.  Thank you.

7              Mr. Herman.

8              **MR. HERMAN:**  Good morning, Your Honor.

9              **THE COURT:**  Good morning.

10             **MR. HERMAN:**  In our papers and in your preliminary

11   approval order and in Professor Klonoff's declaration, there is

12   a rigorous analysis of all of the elements of Rule 23, that

13   they are all satisfied under the rule, which is what's

14   generally required.  Professor Klonoff kind of bottom-lines why

15   it's so evident this is appropriate for class certification

16   with just a couple points.

17             As Your Honor will recall, the BP settlement

18   already went through a complete process to final approval, with

19   the Fifth Circuit approving that settlement in *Deepwater*

20   *Horizon II* and then cert denied by the U.S. Supreme Court.  So

21   if class certification was appropriate in that case, then it

22   would certainly seem to be appropriate, at least for settlement

23   purposes, in this case, which is more narrow and more focused

24   and less complex.  Just to kind of bottom-line it, what

25   Professor Klonoff observes is:

"The class certification issues raised by the New Class are less complicated and difficult than those in the previously certified Old Class.

"First, whereas the certified Old Class claims in the BP settlement involved a host of compensatory and punitive damage claims, claims in the New Class are much more focused as they address solely the question of punitive damages under *Robins Dry Dock* and its progeny.

"Second, instead of being forced to predict how a classwide trial would unfold, as was necessary in the BP settlement (and most other class settlements), this Court now has the benefit of the Phase One and Phase Two proceedings, which show that the case can be effectively and efficiently adjudicated on a classwide basis.

"Thus, in light of the opinions of this Court and the Fifth Circuit approving certification of the BP settlement class, it follows *a fortiori* that a class certification is proper here."

Going on to settlement fairness approval, again, Your Honor, in your preliminary approval order, in our motion papers, and in Professor Klonoff's declaration we go through all of the *Reed* factors one by one that are generally looked to by the Fifth Circuit to find out whether a settlement is fair, reasonable, and adequate under Rule 23(e).  Professor Klonoff just kind of bottom-lines it here and says:

1     ". . . an appeal by the Old and New Classes

2     would be a long shot at best.  This Court, after years of

3     effectively overseeing this litigation and after conducting

4     extensive trial proceedings, has issued detailed and

5     well-reasoned findings and conclusions.  It would be an uphill

6     battle, to say the least, for class members to convince the

7     Fifth Circuit to undo this Court's pertinent Phase One factual

8     or legal rulings."

9          He goes on to point out that in addition to the

10    factual conclusions themselves that it was just regular

11    negligence and not more egregious conduct, we would have two

12    additional burdens at the Fifth Circuit.  One is -- and this

13    was our stumbling block with BP -- we have to --

14          **THE COURT:**  *P&E Boat Rentals.*

15          **MR. HERMAN:**  *P&E Boat Rentals*, exactly.

16          Then the second issue that was still out there,

17    Your Honor ruled in your B1 order that OPA did not displace the

18    general maritime law claims for punitive damages.  That issue

19    would have been heavily contested at the Fifth Circuit -- well,

20    it definitely was by BP, and even Halliburton and Transocean

21    filed amicus briefs on that.  That appeal has now been

22    dismissed.  We would have had to have your order on that

23    affirmed, and that was maybe a little bit less than certain.

24    Professor Klonoff says:

25          "At bottom, class counsel negotiated extremely

09:57

1    valuable and impressive settlements. . . .

2              "It is, under the circumstances, nothing short

3    of remarkable that class counsel were able to negotiate

4    settlements worth well in excess of a billion dollars."

5              One thing that the Court has the benefit of now

6    that you didn't have at the time of preliminary approval is we

7    now know what the class' response to the settlement was in

8    terms of how many people opted out and how many objections were

9    filed.  We know that there's at least 100,000 New Class

10   members.  I think it's well over that.  Just by looking at

11   Mr. Pat Juneau's reports from the Old Class, we can tell

12   through those claims categories that there's over 100,000

13   New Class members.

14             Using 100,000 as a conservative number, we only

15   have 30 total final opt-out requests from this settlement.

16   Several of those people appear not even to be class members.

17   You have less than .03 percent of the class members opting out,

18   which is infinitesimally low.  I don't even remember what the

19   blow provision is.  I assume Kerry or Alan is going to address

20   that.  I think it was like 10 or 15 percent.  Here we are at

21   less than 3/100 of 1 percent opting out.

22             We only had nine objections filed.  One

23   objection was really just a request for clarification, which

24   Mike Juneau has now clarified, so that's moot.  It's unclear

25   whether some of these objectors are either New or Old Class

09:59

1   members and may not even have standing in the first place.  One

2   of the objections, notably, is a motion to intervene by

3   fishermen who are not in the settlement but want to be in it.

4   So they think the settlement is so good that their objection to

5   it is that they are not included.

6            There's no objections to the actual settlements

7   themselves.  There's no objection to certification for

8   settlement purposes under Rule 23.  There's no objection to the

9   fairness, reasonableness, or adequacy of the settlements

10  themselves.  There's no objection to the allocation that was

11  done by Magistrate Wilkinson allocating the funds between the

12  Old Class and the New Class.  There was no objection to the

13  class notice.  There's no objection to the request for

14  attorneys' fees.

15           The objections that we have are objections to

16  the distribution model.  We would make several points about

17  that as class counsel, and then Mike Juneau may want to address

18  this further.

19           The bottom line is the distribution model is

20  fair and reasonable.  It was developed by an impartial and

21  disinterested neutral.  The process of having a disinterested

22  neutral develop the distribution model was effectively approved

23  already from a class cert/adequacy of representation standpoint

24  in *Deepwater Horizon II* because, if Your Honor recalls, that's

25  exactly what we did with the seafood program.  Some of the

10:00

1   objectors said that that wasn't sufficient, and the

2   Fifth Circuit said it was.  We do use the same process here

3   that was already approved in *Deepwater Horizon II*.

4            In addition, Mr. Juneau had open input from

5   New Class members.  He invited anyone to give him their

6   opinion, argument, evidence on how the distribution model

7   should be set up, and he considered that.

8            Also, as Jim pointed out, Mr. Juneau was

9   involved in the administration of the BP settlement program.

10  He used and had a considerable amount of knowledge and

11  experience from the claims that were filed and the way they

12  were administered in that settlement.  He was very familiar

13  with the scope and the nature of the claims.

14           In addition, the distribution model is based

15  largely upon frameworks already approved by the Fifth Circuit

16  in *Deepwater Horizon II*.  So it's largely already been approved

17  in that sense.

18           In addition, we note that the model itself is

19  subject to final approval by Your Honor.  We think it's good

20  the way it is, that it's fair, reasonable, and equitable.  But

21  if Your Honor found that there was some issue or deficiency you

22  were concerned with, we think you would have the ability to

23  change the distribution model but still approve the overall

24  settlements and the class settlement.

25           Then, finally, the distribution model affords

1   each New Class member the right of an administrative appeal in

2   the event of any claim-specific perceived unfairness or

3   anomaly.  If there's some claim-specific issue that's kind of

4   an anomaly and somebody thinks the distribution model isn't

5   fair to them, they have the right of an administrative appeal,

6   not an appeal to the U.S. Fifth Circuit.

7              I would be happy to answer any other questions

8   the Court might have.

9         **THE COURT:**  Not at this time.  Thank you.

10        **MR. HERMAN:**  Thank you.

11        **THE COURT:**  Let's have a brief overview of how notice

12  was provided to the absent class members.

13        **MS. LaCOUNT:**  Good morning, Your Honor.  I'm

14  Michelle LaCount.  I'm here from the Garden City Group, LLC.

15  We were the appointed notice administrator for the Halliburton

16  and Transocean settlements, which was a commingled program

17  pursuant to the instructions of the parties and the notice plan

18  that was submitted by Kinsella Media through class counsel for

19  the Court's approval and was part of the preliminary approval

20  papers and the preliminary approval order.

21             We disseminated the notice.  We did the initial

22  notice on June 15, 2016.  We utilized e-mail wherever possible

23  to minimize the costs associated with the notice program if we

24  were able to make direct contact with a claimant using an

25  e-mail address on file from the *Deepwater Horizon* economic

1    settlement program or other means, including the short form

2    joinders as well as additional lists that had been utilized in

3    the DHEPDS notice program.  For those who did not have an

4    e-mail address or for whom the e-mail did not actively get

5    received, it bounced back, we utilized mail.  As you can see,

6    over 500,000 pieces were sent out in total.

7            With regard to returns, we handled undeliverable

8    items from USPS.  As is the standard, if they were returned to

9    us with an address, we forwarded those on.  If they were

10   returned without, the notice claim called for advanced address

11   searching, which we did.  We were able to remail many items as

12   a result.

13           The notices included a website as well as a

14   toll-free phone number for the case.  The website has had

15   pretty good traffic since we made it live just before the

16   notice mailing went out on June 15, over 20,000 visitors, some

17   people coming back more than once.  It includes all the major

18   documents for the case, including court documents.  We have had

19   a little over 1,000 inquiries handled either through the

20   website or the direct e-mail address.

21           We have had nearly 21,000 calls as of last week,

22   many of them coming in the first couple weeks after the notice

23   program began, about 4,700 in those first two weeks.  We have

24   the post office box at the Dublin, Ohio, facility.  There we

25   handle millions of mail pieces a year.  They are carefully

1  tracked and associated back to the individual claimant's record

2  of notice that had been mailed out.

3            We also handled getting the CAFA notices out for

4  both Halliburton and Transocean, so that has also been handled.

5            Are there any questions?

6       THE COURT:  No.  I see on here you also were the

7  outlet to receive or the place where people mailed opt-outs and

8  so forth.

9       MS. LaCOUNT:  Yes, sir.  There were 36 opt-outs

10  received, and six of those were revoked earlier this week.

11       THE COURT:  Even though settlement hasn't been

12  finally approved yet, there's a procedure in place, as I

13  appreciate it, where people can go ahead and file claims?

14       MS. LaCOUNT:  Absolutely.  Mike Juneau will be

15  addressing that further, but the claims process began on

16  June 15 as well.  The claim forms are available on the website

17  for download, or we have the ability to mail those out if

18  someone requests it by phone, e-mail, or hard copy mail.

19       THE COURT:  What is your website?

20       MS. LaCOUNT:  Your Honor, the website is

21  GulfSpillPunitiveDamagesSettlement.com.

22       THE COURT:  Thank you very much.

23       MS. LaCOUNT:  Thank you, Your Honor.

24       THE COURT:  Mr. Juneau, let's hear from you on the

25  distribution plans for -- well, which one would you like to

10:07

1    speak about first?  Old or New?

2              MR. JUNEAU:  Assuming she can get that PowerPoint up,

3    we will start with the New Class.  If she can't, I will jump to

4    the Old Class.  There we go.

5              Judge, I'm Mike Juneau, the New Class claims

6    administrator.  My goal here today is to give a brief overview

7    of the distribution model that was developed both with respect

8    to the New Class and the Old Class.

9              I first want to address, though, the New Class,

10   if we can go to the first slide.

11             Judge, just to put us where we are in the

12   process, you had granted preliminary approval back in April.

13   In your preliminary approval order, you ordered the

14   distribution models to be developed and to be made public,

15   filed with the Court.  We also published that on the public

16   website at the time.  That was done in June of this year.  Both

17   the New Class and the Old Class distribution models were filed

18   with the Court and on the website.

19             We are here today for the fairness hearing.  The

20   one other deadline still in the future for anyone filing a

21   claim in the New Class, which was established in your

22   preliminary approval order, the deadline for that is

23   December 15, 2016.

24             Now, once the distribution model was prepared

25   and filed with the Court in June, a website was created at that

1    time as well, and on that website claim forms are available,

2    various questions, various documents, information all on that

3    website.  So from June until the present, people that want to

4    file a claim or are required to file a new claim to get any

5    recovery have access to that on the website.

6              It's something they can print out, or if they

7    want to request it by phone they can.  They need to fill that

8    out and mail in the claim form.  It's not a computer-submitted

9    claim form.  It's something you need to actually mail into the

10   Garden City facility.  That's where we are, just to give you an

11   overview of the dates.

12             My task with respect to the New Class was to

13   develop a distribution model that was a fair, reasonable,

14   equitable allocation of the money that was allocated to this

15   New Class.  The New Class is one for punitive damages, those

16   who had arguable standing to recover punitive damages under

17   maritime law.

18             In my mind in looking at this, there were two

19   major categories of that.  One was the very clear

20   *Robins Dry Dock* requirement that you had physical damage to

21   property from the oil or contaminants from the oil spill.  So

22   that was the criteria set long ago in *Robins Dry Dock* and

23   discussed by courts throughout the years, that in order to

24   recover you actually have to have physical damage to your

25   property.  That is the *Robins Dry Dock* requirement.  That's one

10:10

1    category of claimants.

2                    The other are really what I would call

3    exceptions to that rule or people that are granted a right to

4    pursue punitive damages even though not necessarily having

5    physical damage to their own property or arguably would have

6    such standing.  So those would be commercial fishermen, which

7    courts have pretty regularly granted an exception to;

8    subsistence, charter boat operators, and charter boat crew

9    perhaps not quite as clear in varying stages, but arguably

10   would have an argument, hey, I'm standing in the same shoes as

11   a commercial fisherman or whatnot, so I'm entitled to get

12   punitive damages as well.

13           THE COURT:  Well, I will just state my appreciation

14   of the current state of the law in that area.  Obviously, if

15   you meet the *Robins Dry Dock* test where you have an actual

16   proprietary interest, which is generally equated to ownership

17   or something equivalent to ownership of a piece of property

18   that is physically damaged by oil, then you can have a claim

19   for economic damages under general maritime law.  Otherwise, it

20   becomes much more questionable.

21                   Commercial fishermen, as you indicated, have

22   been recognized as an exception to the *Robins Dry Dock* test

23   where for certain historical reasons some courts have said -- I

24   know the Ninth Circuit has -- I don't think has recognized

25   commercial fishermen, for example, as having a right to bring a

10:12

1    claim for purely economic damages without physical damage to

2    their own property as an exception to *Robins Dry Dock*.

3    However, I will just state, to put this in all proper context

4    here, I don't believe commercial fishermen even, that has ever

5    actually been recognized by the Fifth Circuit.  I know it

6    hasn't been recognized by the U.S. Supreme Court.  So that's

7    still something that's open for debate, is my point, as to how

8    far this exception goes.

9            Then even more so, it would be more questionable

10   whether anybody else, any of these other categories beyond

11   commercial fishermen themselves -- for example, subsistence

12   claimants, charter boat operators, charter boat crews -- would

13   be able to get around *Robins Dry Dock*.  I'm sure that's the

14   kind of thing you have taken into account, the relative

15   strengths or weaknesses of those types of claims.

16           **MR. JUNEAU:**  It is, Judge.  I'll address that in a

17   minute when I get to the slide about the allocation.

18           I have identified each of these categories

19   because these categories were specifically identified in the

20   settlement agreements.  As I appreciate it, that's because the

21   parties recognize, even though not established or maybe even

22   not ultimately would prevail, there is an argument that these

23   type people would be entitled to recover so they want to be

24   included.  My job, as I viewed it, was in part to assess that,

25   assess how strong their argument would be, and prioritize them.

10:13

1        You will see in the allocation, those that

2    actually had damage to property they own, a proprietary

3    interest in their property, had the highest priority.  We kind

4    of go down in priorities.  That was part of what I tried to do

5    in this distribution model.

6        We did want to include all of these because they

7    were all specifically identified in the settlement agreement as

8    being groups that would arguably have such a claim for punitive

9    damages.

10   **THE COURT:**  Right.

11   **MR. JUNEAU:**  So taking these groups, my task was to

12   identify them, develop a model that would identify them and

13   fairly compensate them with those kind of factors considered

14   and do it in a way that was as efficient and cost-effective as

15   possible.

16       As Mr. Roy indicated, this is a capped

17   settlement fund.  Any money that is spent administering this

18   claim, evaluating the individual claims is money that reduces

19   the total amount that's available to be paid to the class

20   members.  The distribution model that was developed did seek to

21   identify and evaluate claims in a way that was as

22   cost-effective as possible.

23       To accomplish that, we relied largely on what

24   existed in the old BP settlement, the old *Deepwater Horizon*

25   economic and property damage settlement.  There were a few

10:15

1  factors that are important to that:

2  First, that program has been going on for

3  4 years now, 4 1/2 years, lots of millions of dollars,

4  tremendous amount of effort.  To duplicate all that in this

5  New Class would seem to me to be an unnecessary expenditure of

6  money.

7  Secondly, the frameworks that were developed in

8  that Old Class, the BP class, were frameworks that had been

9  approved by this Court and had been approved by the

10  Fifth Circuit, denied writ at the U.S. Supreme Court.  So there

11  is some approval already granted to the frameworks that are

12  there, that evaluation process.

13  Thirdly, that process had extensive due process

14  rights, I would call them.  Particular claimants, if they

15  didn't like the evaluation that program came up with, they

16  could request re-review within the program.  If they didn't

17  like that, there's an independent appeals panel within that

18  program.  If they disagreed with that, they could appeal

19  directly to you, Judge.  If they disagreed with your decision

20  or your decision not to look at it, they could appeal all the

21  way to the United States Fifth Circuit.

22  So those sort of procedural protections, I

23  thought, were very important and give some credence to the

24  ultimate determinations made within that BP settlement program.

25  So I felt pretty safe in relying on those rather than trying to

1    duplicate them again and spend all that money.

2                    In the old BP settlement program, there are

3    certain claim types that coincide with these *Robins Dry Dock*

4    categories we talked about before.  I have outlined those claim

5    types here on this PowerPoint.

6                    What this distribution model provides is we are

7    going to identify -- anybody that has a claim in the old BP

8    program of this claim type, they automatically qualify as a

9    New Class member.  They don't have to file a claim form.  They

10   automatically qualify.  We automatically transfer all of the

11   data from the old program to this one, and we use the

12   determinations that were made in that program to then allocate

13   the money within this new program.  So these claim types are

14   the ones that coincide with the categories that we outlined

15   earlier.

16                   Not everyone, though, has a claim in the old BP

17   program.  This slide attempts to identify generally the three

18   groups or entities or people that are involved in this

19   New Class.

20                   First is those who were claimants in the BP

21   program.  The beauty of this New Class, in my view, is they

22   don't have to do anything.  The information is automatically

23   transferred.  They don't have to file a claim form.  They don't

24   have to submit any documents or claims.  We just take the data

25   from the old BP program and we use that.  We are just going to

10:17

1   send them a check based on the allocation that's available of

2   the money within this New Class.  That's the first and by far

3   the largest group of claimants in this New Class, those who

4   were in the BP class and had one of those claim types that I

5   had identified earlier.

6              The second group would be those who opted out or

7   were excluded from the BP class.  Opt-outs, it's kind of

8   obvious what those are.  The excluded parties would have been

9   local governments, local school boards, local cities.  They

10  could not be a part of the BP program.

11             There were certain industries that were

12  excluded.  Real estate developers or the oil and gas industry

13  or insurance industry, those were excluded.  Of the excluded

14  parties, some of those are still eligible in the new program,

15  but they will have to file a new claim.  That's what in large

16  part this New Class will have to do, evaluate those claims.  We

17  are trying to do it on a basis -- this distribution model has

18  to apply essentially the same criteria we used under the BP

19  program, apply that same criteria to the new claims that are

20  filed in this program.  We will be arriving at evaluations that

21  are equivalent or comparable to those that were arrived at

22  under the BP program.

23             THE COURT:  I guess I have two questions.  First of

24  all, with respect to the first category, people who are in the

25  Old Class, received an award, I understand that.

10:19

1      This distribution will have to await the
2  completion of the Old Class program first, right?
3          **MR. JUNEAU:**  Yes, sir.
4          **THE COURT:**  So you will know what determinations for
5  everybody actually were in that old program.
6          With respect to people who were class members in
7  the Old Class but opted out or were excluded from the
8  Old Class, that's the second category you have up there.
9          **MR. JUNEAU:**  Yes, sir.
10         **THE COURT:**  They must file a claim?
11         **MR. JUNEAU:**  Yes.
12         **THE COURT:**  How are you going to go about
13  evaluating -- maybe this is not the right phrase, but are you
14  going to try to estimate what they would have gotten if they
15  had been in the Old Class?
16         **MR. JUNEAU:**  In effect, we are doing that.  We are
17  doing that by applying the same criteria.
18         Frankly, Judge, in the BP class, the most
19  problematic type of claims are the business economic loss
20  claims.  Those are ones accountants get in and look at profit
21  and loss statements.
22         **THE COURT:**  Those claims are not part of this class.
23         **MR. JUNEAU:**  They are not.  That's a good thing --
24         **THE COURT:**  Right.
25         **MR. JUNEAU:**  -- for administration purposes.

10:20

1        How we would arrive at that number -- for
2  example, the biggest property damage categories are coastal
3  real property, which largely is from the coast of Mississippi
4  eastward, and wetlands real property claims, which is largely
5  the coast of Louisiana.  There is a map, a SCAT map used.
6  That's the map that if you fall within that map, you are
7  considered to be eligible for compensation.  There's a formula
8  that's used to arrive at the number.

9        How we use that in the new program, we use the
10  very same maps.  We use the very same formulas.  So you need to
11  submit proof that you owned the property.  We can establish
12  that that property is within that map, and we can apply the
13  formula to it.  So we are going to arrive at a number that
14  would be the same as the number you would have gotten under the
15  *Deepwater Horizon* program.

16        **THE COURT:**  Some of these parties, of course, by now,
17  4 1/2 years down the line, some of these opt-outs -- I would
18  suspect large numbers of these opt-outs and excluded claimants
19  have, in fact, settled their claims now outside the settlement
20  program.  So you are going to use that information, I suppose,
21  or are you?

22        **MR. JUNEAU:**  I'm not going to use their settlement
23  number, no, Judge.  What we are going to use is give us the
24  documents, and we are going to arrive at a formula that the old
25  BP program would have used.

1       **THE COURT:**  Even if they have otherwise settled

2   outside the program?

3       **MR. JUNEAU:**  Yes, because I don't know what the

4   settlement was for.  I can't really use that number.  It might

5   have been for partially a business economic loss claim and

6   partially a property claim.  There might have been several

7   things mixed in there together.  What we want to do is focus on

8   the eligible property using the same formula for that claim

9   type that would have been used in the *Deepwater Horizon*.

10      **THE COURT:**  Okay.  Go ahead.

11      **MR. JUNEAU:**  The third category, there has been a

12   program established by this Court where you appointed some

13   settlement neutrals -- Magistrate Shushan and Mike Moore and

14   Drake Martin and others -- to settle a bunch of claims.  Those

15   don't fall in either one of the first two categories because

16   they ended up withdrawing their claim.  They had filed probably

17   a claim in the BP program, but they withdrew it because of the

18   settlement with the Court-appointed neutral.  They never opted

19   out or excluded.  That category --

20      **THE COURT:**  Well, to be clear, the Court-appointed

21   neutrals did have a phase of their program where they did

22   resolve or attempt to resolve -- in fact, they did resolve

23   large numbers of the opt-out and excluded claims.

24      **MR. JUNEAU:**  That's true, Judge.

25      **THE COURT:**  Then they are now looking at, as you

10:23

1    said, claims where people may have filed a claim in the

2    settlement program but elected voluntarily to settle outside

3    the program.

4         **MR. JUNEAU:**  The way this distribution model deals

5    with that group of people is if you got money, you got

6    compensatory damages, you were paid compensatory damages, part

7    of this Court-appointed neutrals process -- okay.  You had

8    compensatory damages, you are eligible to file a claim, but you

9    need to file a new claim here in the program.  So they are

10   treated like an opt-out or excluded party.  You are eligible,

11   but you have to file a claim.  You have to submit the

12   documents, and we will apply the formula.

13        **THE COURT:**  So, again, in terms of how you plan to

14   evaluate those claimants, whoever files a New Class claim in

15   the third category, they are going to be treated and evaluated

16   in the same methodology as Category 2?

17        **MR. JUNEAU:**  Yes, which are going to be the same

18   methodologies as the BP program used, which is Category 1.

19        **THE COURT:**  Okay.

20        **MR. JUNEAU:**  We are trying to achieve uniformity

21   there.

22        **THE COURT:**  Okay.

23        **MR. JUNEAU:**  Those are the three large groups.  The

24   major part of what I did, I think, was to try to look at all of

25   these different categories, as you noted, and assess the

1    strength of the argument, how many people fit in the category,

2    what the values of those claims were, how strong was their

3    claim under *Robins Dry Dock* or some exception to it, and then

4    allocate the total funds available to each of those categories

5    of claimants.

6             That's what this allocation model was,

7    80 percent going to the real property, .6 going to personal

8    property.  That's largely because there are not that many

9    claims in that category.

10             So this really, honestly, Judge, is kind of the

11    guts of the distribution model in terms of how the money is to

12    be spent.  My appreciation is there has been no objection to

13    this aspect of it, which is really the factoring in of all the

14    separations and priorities and what category of claimants

15    should get what amount of money.

16             Just to give you an idea of the number of

17    claimants involved in that sort of thing, this is the automatic

18    transfer of claims data I told you about, the existing BP

19    program.  This tells the different claim types in those

20    categories.  A total of about 172,000 claim files are

21    automatically being transferred to the New Class so that that

22    number of people don't have to do anything.  We are just going

23    to take that data and use it and base their evaluation on that.

24            **THE COURT:**  Again, the only claims that would be

25    transferred would be claimants in each of these categories who

1    actually received an award, right?

2              MR. JUNEAU:  We actually will transfer everyone,

3    whether you received an award or not.  You might have been

4    denied.  If you were denied, we will have that data in our

5    database.  We are going to deny it too, to be honest.  Because

6    your award was zero, that's going to be the value that I assign

7    to that claim in our program too.  So this number would include

8    not only those that were paid, but also those that were denied.

9              THE COURT:  That's based on the premise under

10   maritime law that, generally speaking, you need to have

11   sustained and recovered compensatory damages before you are

12   entitled to punitive damages.

13             MR. JUNEAU:  Which is one principle, yes, Judge.

14             THE COURT:  Yes.

15             MR. JUNEAU:  My job was to assign a punitive damage

16   value.  I felt like for those that have gotten no compensatory

17   damages and will not get future compensatory damages, zero, the

18   only fair punitive damage number for that is likewise zero.  So

19   that is one of the principles in this distribution log.

20             THE COURT:  Thank you.

21             MR. JUNEAU:  To give you an indication of what's

22   happened thus far, not a whole lot.  These are the number of

23   claim forms that have been submitted since June.  You will see

24   a total of 250.  Compared to 172,000 that have just been

25   automatically transferred, that number is not that significant.

1    I suspect there's going to be a good many more claim forms

2    submitted between now and December 15.

3              THE COURT:  They all come in right before the

4    deadline.

5              MR. JUNEAU:  Exactly.  Still, the vast, vast majority

6    of claims in this program are going to be claims that get

7    transferred from the BP settlement.

8              THE COURT:  Right.  I suspect you will get people who

9    are in the Old Class and don't need to file a new claim that

10    will probably file a new claim anyway.  So you are going to

11    have some duplication to sort out.

12              MR. JUNEAU:  I think that's definitely true.  We

13    would hope not.  We tried to make really clear if you were in

14    the Old Class, if you got money from BP in that BP settlement,

15    you don't need to do anything.  Do nothing.  Because if you do,

16    it just costs us money to receive it, process it, identify it

17    as a duplicate.

18              THE COURT:  Could you have a situation where --

19    because I know that there were some of these.  I don't know

20    where this stands in terms of the old program.  If somebody has

21    a claim in the old program which has not been determined yet, I

22    guess it's theoretically possible they could be told at the end

23    of the day, look, sorry, you are not getting paid because you

24    are not really a class member, in the Old Class.

25              MR. JUNEAU:  Yes.

10:29

1    **THE COURT:**  In other words, they filed a claim, but
2   it's determined -- because I know we had cases like that where
3   in evaluating, for whatever reason, they are not a class
4   member.
5        **MR. JUNEAU:**  That's correct.
6        **THE COURT:**  So they couldn't then rely on the
7   transfer.  They would have to file a new claim.
8        **MR. JUNEAU:**  That's true.
9        **THE COURT:**  They may have claimants that file,
10   understandably, a new claim just to be certain that they are
11   in, you know.
12        **MR. JUNEAU:**  That's correct, Judge.  You're right.
13   Hopefully that's a small group.  Actually, if they are not a
14   member of that Old Class -- they may not know it yet, but if
15   they are not a member, they do need to file a new claim in this
16   New Class.
17        **THE COURT:**  Right.
18        **MR. JUNEAU:**  Judge, you had asked about the website.
19   This is it, GulfSpillPunitiveDamagesSettlement.com.  Any
20   relevant information is posted there, updates, distribution
21   models.  That's kind of our go-to place.  Anybody looking for
22   information, that's where they can get it.
23        **THE COURT:**  Ben, do we have that website posted on
24   our Court website?  If we don't, we need to make sure it's
25   posted prominently in one of the top banners.

10:30

1        **MR. JUNEAU:**  Judge, I would like to move on to the

2  Old Class distribution model, if I can, that's developed by

3  Patrick Juneau.

4        **THE COURT:**  Okay.

5        **MR. JUNEAU:**  That deals with BP's assigned claims to

6  the old settlement class.  So Pat Juneau created a distribution

7  model and filed that on this website and with the Court back in

8  June as well.  I understand there has been no objection or any

9  kind of filings with respect to that by anyone.

10       Quite simply, what his distribution model says

11  is he is going to just take anybody that was paid in the old BP

12  program and distribute this new money on a proportional basis

13  to the entire class.  He has put a couple of parameters on

14  that.  The maximum distribution would be $150,000, and the

15  minimum distribution would be $100.

16       Now, if your proportional amount comes out to

17  $5, what he said is he is going to up it to $100, so nobody

18  will be paid less than $100.  If you are entitled to anything,

19  you are going to get at least $100.  None of that can be done

20  until he completes the processing of the old BP claims; but

21  once that's done, he is just going to distribute the allocated

22  money on a proportional basis.

23        **THE COURT:**  That won't require anybody filing a new

24  claim for this money or anything.  It will just be done

25  automatically.

10:32

1      **MR. JUNEAU:**  We already have all that information in
2      the BP settlement program database.  Again, it's transferred or
3      handled automatically.  Nobody needs to do anything.  They are
4      just going to get another check.

5              **THE COURT:**  With the caveat that it's going to be a
6      while before any of these distributions, in the Old Class or
7      the New Class, from these two settlements go out.  All of this
8      is contingent, both the Old Class distributions and the
9      New Class distributions, on completion of the existing economic
10     settlement program, right?

11             **MR. JUNEAU:**  Yes, sir.  My understanding is Mr. Pat
12     Juneau has indicated that currently his projection for that
13     would be September of next year, completing the processing for
14     the most part in that BP program.  That's subject to change,
15     but that's their current projection for the timing of that.

16             **THE COURT:**  Okay.

17             **MR. JUNEAU:**  Thank you, Judge.

18             **THE COURT:**  Thank you.

19              All right.  Halliburton.  Mr. York.

20             **MR. YORK:**  Good morning, Your Honor.

21             **THE COURT:**  Good morning.

22             **MR. YORK:**  Alan York appearing on behalf of
23     Halliburton.

24              As Mr. Roy mentioned, Halliburton was obviously
25     involved in settlement negotiations over a relatively lengthy

10:33    1    period of time, working directly with Calvin Fayard and

2    Joe Rice as well as Steve Herman and Jim Roy, with the gentle

3    and sometimes not so gentle persuasion of Judge Shushan as well

4    as her guidance.

5              **THE COURT:**  That little lady?

6              **MR. YORK:**  Judge, I know that you would agree with

7    this wholeheartedly.  The work she did in this case, not only

8    to get these settlements across the goal line but to get the

9    attorneys focused constantly on depositions and everything

10   else, was an amazing feat.  She's an amazing person.

11             **THE COURT:**  I'm going to seal that part of the

12   record.  We don't want her reading that.  She might up her

13   hourly rate now that she's back in the real world.

14             **MR. YORK:**  With everyone's assistance we were able

15   to, in September of 2014, reach a settlement agreement prior to

16   the Court's issuance of its Phase One findings and conclusions

17   that, based upon the potential exposure to liability of

18   Halliburton, Halliburton adjudged to be fair and reasonable and

19   an adequate and appropriate assessment of its exposure, which

20   also was fair and adequate and reasonable, we believe, to the

21   two sets of claimants that we were including in the settlement

22   agreement, which has already been referenced, the assigned

23   claims and the punitive damage claims.

24                  The assigned claims, as the Court is well aware,

25   were assigned from BP to the *Deepwater Horizon* Economic and

1  Property Damages Settlement Class as a juridical entity.  So as

2  a result of the settlements, what Halliburton will receive for

3  the settlement of those claims is a class release because the

4  claims are held by the class as an entity.

5           With regard to the punitive damage claims, we

6  will receive also a class release from the new punitive damages

7  class.  Discussion is still under way as to whether we will

8  also include individual release language on the settlement

9  checks when those are issued, but that's an issue we will take

10 up as we go along.

11          As the Court is also aware, by the terms of the

12 settlement, Halliburton made an aggregate payment rather than

13 trying to divide the funds between those two different classes.

14 Once Transocean also settled, that entire amount of money went

15 to Judge Wilkinson, who performed an allocation process.

16 Halliburton was involved in that, without taking a position on

17 how it should be allocated, and provided Judge Wilkinson with

18 whatever information he required in order to make the

19 allocation that this Court has since approved as an appropriate

20 allocation of the aggregate payments.

21          As the Court is also aware, the Halliburton

22 settlement agreement included a termination provision that

23 would have potentially allowed Halliburton to terminate the

24 settlement agreement in the event that opt-out numbers of

25 certain classes of claimants reached a certain level or in the

10:36

1    event that a certain amount of actual coastal property acreage

2    opted out of the settlement.  We have reviewed the opt-outs.

3    As has been mentioned, the opt-outs are very minimal.  At this

4    point there is no basis for Halliburton to exercise its

5    termination provision under the settlement agreement.  So as a

6    matter of record, we make clear to the Court we would not be

7    doing that.

8              So today, Judge, we appear in support of the

9    arguments and the issues that have been presented by the

10   Plaintiffs' Steering Committee, by class counsel, by the notice

11   organization, as well as the New Class claims administrator on

12   behalf of himself and the Old Class claims, and say that we

13   believe these settlements are fair, adequate, and reasonable to

14   the claimants.  We support final approval of the settlement as

15   it has been presented to the Court.

16              THE COURT:  All right.  Thank you very much.

17              Transocean.  Mr. Miller.

18              MR. MILLER:  Good morning, Judge Barbier.  Kerry

19   Miller on behalf of Transocean.

20              I just really want to adopt the comments made by

21   Mr. Herman and Mr. Roy and Mr. York preceding me.  Really, I

22   think the only distinguishing points to make on the part of

23   Transocean is that Transocean entered into final settlement

24   negotiations with the PSC after the Phase One trial and the

25   Phase One ruling came out but while appeals were pending at the

10:37

1  U.S. Fifth Circuit Court of Appeals.  We had those

2  negotiations.  Those negotiations culminated into a settlement

3  between Transocean and the PSC that was very similar to the

4  settlement that Halliburton had previously reached with the

5  PSC.  That was the model.

6         As with Halliburton, Transocean did have an

7  opt-out right under the settlement or right to terminate its

8  obligation to go forward on the settlement based upon the

9  number and the quality of the opt-outs.  That threshold has not

10  been met, as presented by Garden City and by Mr. Herman and

11  Mr. Roy.  The opt-out numbers are very low for this settlement,

12  so Transocean will not be exercising any termination rights and

13  going forward with the settlement.

14         Your Honor, after the settlement was reached,

15  Transocean, like Halliburton and the PSC, participated in

16  Judge Wilkinson's allocation process.  We attended his status

17  conference, provided him information he requested.  Halliburton

18  took no position but answered his questions.  He came up with

19  an allocation decision, I think, last December.

20         The next phase of that was to work with

21  Mr. Juneau and with Garden City and with the PSC and Kinsella

22  coming up with a good notice plan, working with Mr. Juneau,

23  giving him information that he needed to come up with his

24  distribution model.  Again, Transocean took no part in that,

25  only provided information to Mr. Juneau he thought was relevant

10:39

1    or helpful to his analysis.

2              Finally, Your Honor, in connection with the

3    settlement that was reached between Transocean and the PSC, all

4    appeals against Transocean with respect to the Phase One ruling

5    have been dismissed.  Your Honor's Phase One ruling with

6    respect to finding no gross negligence is a final judgment as

7    to Transocean.

8              With that said, Your Honor, unless the Court has

9    any questions, those are my remarks.

10         **THE COURT:**  Thank you very much.

11              We do have a few objections.  I'm not sure who

12   is present.  I know a couple people at least are present and

13   would like to speak briefly on those.  I will hear from those

14   now.

15              First, the Court had a request from Mr. Aaron

16   Wallace.  I don't know if Mr. Wallace is present.  This is a

17   *pro se* claimant.  Mr. Wallace had requested to speak.  He is

18   apparently not present.

19              We will move on to Plaquemines Parish.

20   Mr. Bickford.

21         **MR. BICKFORD:**  Good morning, Your Honor.  Scott

22   Bickford representing Plaquemines Parish, Plaquemines Parish

23   School Board, Grand Isle, and the City of Lafitte.

24              Judge, as a preface, I have worked with

25   Special Master Juneau over the last several months regarding

1   some of the issues that are the subject of this objection.  I

2   understand this is a captive fund and don't wish to have the --

3          THE COURT:  Hold on one second.  Whose phone is that?

4   All right, Mr. Leger.  I should have said this in the

5   beginning.  Make sure your phones are turned off or silenced.

6              Go ahead, Mr. Bickford.

7          MR. BICKFORD:  I understand this is a captive fund.

8   We don't wish to burden Mr. Juneau.  To that extent, our

9   objection --

10          THE COURT:  Wait one second.  There's some coughing

11   going on around here.

12              Go ahead.  I'm sorry.

13          MR. BICKFORD:  Our objection is with the distribution

14   model, not with the --

15          THE COURT:  You don't object to the settlement, the

16   certification of the class for settlement purposes, or the

17   actual settlement itself, right?

18          MR. BICKFORD:  No.  Actually, we were asked by

19   Judge Wilkinson to represent the New Class in the briefings on

20   the distribution between the New and Old Classes.  So, no, we

21   are fine with that.

22              There are two issues on the distribution model

23   we have.  One is the proof of the proprietary interest that

24   Plaquemines Parish and municipalities may have.  We were

25   excluded from the original class; therefore, none of the

1    architecture or structure of the original class system really

2    applies to us.

3              Because we are a public entity, our proprietary

4    interest in certain properties that we own isn't as neatly put

5    forth as if you owned a house on St. Charles Avenue and had a

6    deed and a property tax bill.  We have nonrevenue-producing

7    properties, nonrevenue properties that are in the middle of the

8    marsh, that are not on the assessor's role because they don't

9    produce revenues because we don't tax ourselves.  There's a

10   different category of proof that we have to propose to show

11   proprietary interest in those properties in order to qualify

12   our property under a *Robins Dry Dock* scenario.

13             Mr. Juneau and I have had extensive

14   conversations about this.  We have had extensive conversations

15   with Garden City as well, who is doing some of the work on

16   that, as well as some experts that he has as well.

17             We proposed language to Mr. Juneau which would

18   broaden the definitions, which was alternatively (as read):

19   "The New Class administrator shall accept as rebuttable proof

20   of ownership of property, particularly when the ownership of

21   the property is not contested by a competing claim, any

22   reliable proof of property ownership such as conveyance

23   records, transfers, judicial determinations, title opinions or

24   letters, and land records of a local government entity."  That

25   was the additional language we had proposed to Mr. Juneau.

1           The second issue we had on the distribution

2     model was proof of additional oiling.  The present distribution

3     model relies heavily on SCAT data.  That SCAT data was

4     developed in the course of searching the various shorelines to

5     find oiling and repair those issues.

6           The documentation that has been produced from

7     NOAA particularly shows that that SCAT data basically is far

8     short of the amount of oiling that was actually done in a lot

9     of the marsh areas.  NOAA within the past six months has made

10    public information that they provided to the trustees, which

11    was detailed aerial photographs and detailed radar assessments

12    of where oiling went into various particular marshes.  That is

13    all GIS'd into shapefiles that are computer generated.  They

14    can be laid over maps similar to the SCAT data is now.

15          The problem that we have is that although

16    Mr. Juneau would under this scenario accept that data, that

17    data is in the form of pictures and aerial photography and

18    radar things.  The plan, as it sits now, doesn't allow any

19    expert commentary as to what that particular data shows.

20          **THE COURT:**  Are you suggesting we are going to have

21    to have trials on each of these?  We are not going to do that.

22    This is a settlement.  We are not going to set up a system

23    where we have to try those issues.

24          **MR. BICKFORD:**  No, that wasn't my -- what we proposed

25    to Mr. Juneau was a party may include for purposes of

explanation such independent documentation in the form of
government or academic publications or maps, which is what he
is allowing now, an opinion of a competent expert to explain or
clarify the significance or applicability of such proof.  The
explanation for any one parcel may not exceed two pages, which
shall include the expert's qualification to comment on such
evidence.

Our concern is that that evidence, in and of
itself, doesn't say anything.  If, in fact, I'm contending that
I have 100 acres of oiled property not shown on SCAT maps but
are shown on this aerial photography, I don't know that
Mr. Juneau himself is qualified to read an aerial photograph to
say, "Yes, indeed, Mr. Bickford, this shapefile that you
supplied, along with this aerial photograph, basically shows
oiling in this marsh, and I'm going to add that to the
assessment I have on your piece of property."

Those are our two concerns.

THE COURT:  I understand your concerns.  They are
valid concerns.

I'll just say this.  I think the issues you are
raising are premature here today for purposes of what we are
here for today, which is to approve the settlement itself.  The
distribution model was publicized.  It's out there to allow
people to use it in any way they think possible.  In the end,
Mr. Juneau will make these determinations under the settlement.

1    Anyone who is not satisfied with what he arrives at can appeal
2    to the Court and make whatever arguments they want.  I'm not
3    going to get down into the weeds or marsh grasses at this time.
4         **MR. BICKFORD:**  I appreciate that, Judge.  The only
5    reason we make the objection is because this is a bit different
6    than normal procedures in terms of approving a class action
7    where the distribution model was basically put up before the
8    actual class was certified and there was no hearing itself on
9    the distribution model.
10        **THE COURT:**  Actually, a lot of times classes are
11   certified without a distribution model.  That comes after the
12   fact.
13        **MR. BICKFORD:**  Well, yes, and then the distribution
14   model is presented afterwards, at which point objections can be
15   made.
16        **THE COURT:**  You will be able to make an objection, if
17   you wish, at the time you get your distribution.  You are no
18   worse off.  I just don't see how it's relevant to what we are
19   here for today.  I will tell you I agree with Mr. Juneau's
20   approach.  I know he spent an enormous amount of time with you
21   and with others talking about these issues.  I'm sure he will
22   continue to do so.
23             Just as the *Deepwater Horizon* economic claims
24   program has worked, there's a lot of leeway for the claims
25   administrator to consider unique situations, so to speak, like

1    you mention your client may have, and take all of that into

2    consideration, take whatever information he thinks is relevant

3    into account, make his objective determination.  Then if

4    somebody is not satisfied with that, there is an avenue of

5    appeal.  For purposes of today, I don't know what else we can

6    say about that.

7            **MR. BICKFORD:**  Thank you, Your Honor.

8            **THE COURT:**  Thank you.

9                South Texas Shrimpers.  Is anyone here

10   representing South Texas Shrimpers?  I think they were

11   represented by counsel.  They filed a written objection.  No

12   one appears to be here on behalf of that party.

13               Schoenberger.

14           **MR. SCHOENBERGER:**  Good morning, Your Honor.

15   Kevin Schoenberger, attorney for the Schoenberger claimants.

16           **THE COURT:**  You are also a claimant, right?

17           **MR. SCHOENBERGER:**  I am a claimant individually, yes.

18           **THE COURT:**  This is a family property, right?

19           **MR. SCHOENBERGER:**  These are my siblings or by

20   marriage, that's right.

21               I'm filing this objection not because I object

22   to the class action settlement.  I don't.  I totally agree with

23   the class action settlement.  The problem that happened in this

24   particular case is that when I submitted the claims in 2012 on

25   the computer portal, the portal rejected the claims as being

10:50

1   not in the claim zone.  I did not file a --

2           THE COURT:  The appeal was filed too late.

3   Ultimately, that's the bottom line.  Your appeal from that

4   determination was filed too late, and the Fifth Circuit

5   affirmed that issue.

6           MR. SCHOENBERGER:  Correct.  That's right.

7           THE COURT:  Now, as I appreciate it, there's

8   information to say that one or more of these parcels are, in

9   fact, in the zone.

10          MR. SCHOENBERGER:  There's no question because the

11  co-owners were paid.

12          THE COURT:  Right.

13          MR. SCHOENBERGER:  I'm here to protect the record, I

14  guess.

15          THE COURT:  Well, I understand, but it seems to me

16  you are in the same position as Mr. Bickford here.  You're

17  projecting what the result might be under Mr. Juneau's ultimate

18  claim determination.  It seems to me that's premature since you

19  are not objecting to the settlement itself.  You have a right

20  to file -- and, again, this may be one of these unique

21  situations where you may be able to -- I don't know all the

22  details of your case.  I have this general picture of what

23  happened.  You may be able to show Mr. Juneau that for the

24  reasons you state you are entitled to an award.

25          MR. SCHOENBERGER:  That's right.  I intend to do

10:51

1    something by December 15.  I wanted to come to the Court just

2    for guidance or see if anybody else was like me, number one,

3    which apparently nobody has voiced the objection.  The only

4    concern I had was because, well, you got zero, and we multiply

5    a formula times zero, and you are getting zero even though you

6    should have been paid.  I just put it on the record.  I do

7    intend to file the claim forms by December 15.  I realize the

8    prematurity.

9              THE COURT:  No, I understand.  Thank you very much.

10             There are objectors -- I don't have the full

11   name.  It's Cypress, LLC, or something, a Mr. Galan.  Is

12   Mr. Galan here or anyone on his behalf?  I don't think

13   Mr. Galan is an attorney, but it's apparently his entities.  No

14   one here on behalf of that objection.

15             Preston Hobson.  Is Mr. Preston Hobson here?

16             Is that another *pro se* claimant, Ben?

17        THE LAW CLERK:  No, he is represented.

18        THE COURT:  He is represented.

19             Scott Poynter.  Mr. Poynter apparently is not

20   here.  He had requested to speak, but apparently he is not

21   present.

22             City of Biloxi.  Anyone here on behalf of the

23   City of Biloxi?  They are also represented, obviously.  I think

24   they made similar objections to Mr. Bickford.  They are

25   obviously a public entity and don't have maybe deeds to certain

10:53

1    properties.  I think those are the same type of issues.  Again,

2    I think that's premature for today, but anyway they are not

3    here.

4              I think the last objection is on behalf of,

5    Mr. Salas, your client, at least it's the last one I'm aware

6    of.

7              Anyone here for any other objector I have not

8    called out?  Apparently not.

9              All right, Mr. Salas.

10             **MR. SALAS:**  Good morning, Your Honor.

11             **THE COURT:**  Good morning.

12             **MR. SALAS:**  Your Honor, I represent about 150

13   individuals and entities that own property that has been either

14   contaminated by oil or alleged to be contaminated by oil.

15   These property owners, they were either not covered by the BP

16   settlement or either opted out of the BP settlement.

17             The reason we are objecting is because these

18   individuals are being treated in a different manner as to the

19   rest of the class members.  They are certainly class members by

20   the definition of the class.  Subsequent to the settlement

21   being reached among the parties, after the Court gave

22   preliminary approval to the settlement and even after the

23   notices were published, there have been some additional

24   requirements that have been imposed for these folks to receive

25   any compensation under the new settlement since they are

10:55

1   members of the New Class.  I think that --

2            **THE COURT:**  What's the new requirement?

3            **MR. SALAS:**  The new requirement is that they must

4   have complied with PTO 60 or they must have either settled with

5   the neutrals.

6            **THE COURT:**  Isn't that just a way of showing you have

7   either received compensatory damages or have a likelihood or

8   you will receive compensatory damages?  You need to show that

9   to meet the punitive damage test.  In other words, you can't

10  recover punitives unless you have recovered or are entitled to

11  compensatories.  So if you have a situation where somebody for

12  whatever reason has not and cannot recover compensatories, I

13  don't think that's a new requirement.  That's just common

14  sense.  That's how a punitive damage program would work.  So

15  I'm not sure I am understanding your argument.

16           **MR. SALAS:**  The specific requirement is either you

17  settled with the neutrals or --

18           **THE COURT:**  Or you have a live claim.

19           **MR. SALAS:**  Or you have a live claim.

20           **THE COURT:**  Your clients, as I appreciate it -- did

21  they all opt out?

22           **MR. SALAS:**  Yes.

23           **THE COURT:**  Of the BP economic settlement?

24           **MR. SALAS:**  Some of them opted out and some of them

25  were not covered by it.

1          THE COURT:  What type of claimants do you represent

2     who were not covered?

3          MR. SALAS:  Well, for the property owners, you're

4     right, Judge.  All of them opted out.

5          THE COURT:  They all are opt-outs?

6          MR. SALAS:  Yes.

7          THE COURT:  So all of your clients opted out of this

8     settlement, right?

9          MR. SALAS:  Yes.

10         THE COURT:  There was a neutrals program where the

11    neutrals made attempts to settle or amicably resolve opt-outs

12    and excluded claims.

13         MR. SALAS:  That's right.

14         THE COURT:  Your clients for whatever reason have not

15    settled their claims through the neutrals, right?

16         MR. SALAS:  We received no offers.

17         THE COURT:  I said for whatever reasons have not

18    settled their claims through neutrals, right?

19         MR. SALAS:  Right.

20         THE COURT:  The third factor is I issued something

21    called PTO 60, which required, after all of that, if someone

22    still had what they believed was a live claim but had never

23    filed an individual complaint, they had only filed some type of

24    aggregate group complaint or a short form joinder or just a

25    claim in the limitation or whatever, I gave deadlines for

1   people to file individual complaints so we would know exactly

2   who is left.  As I appreciate it, your clients didn't do that

3   either.

4         MR. SALAS:  No.

5         THE COURT:  Your clients didn't do that, right?

6         MR. SALAS:  No.

7         THE COURT:  Your clients didn't do that.  Then we had

8   this settlement, the distribution model -- which is really what

9   you are arguing with, right?  You are not contesting the

10  settlement itself?

11        MR. SALAS:  Right, but the distribution model.

12        THE COURT:  You are not trying to blow up the actual

13  class settlement.

14        MR. SALAS:  That's right.

15        THE COURT:  You are like some of these other people

16  here.  You are arguing about the details of the distribution

17  model.

18        MR. SALAS:  Correct.

19        THE COURT:  That was published on June 13.  The

20  opt-out deadline was September 23, right?

21        MR. SALAS:  That's right.

22        THE COURT:  So you or your clients had an opportunity

23  to look at that distribution model, which is what you are

24  complaining about now, between June and September and make a

25  decision whether to stay in this class or opt out the class.

10:59

1  You elected to stay in.  Your clients elected to stay in this
2  class, right?
3          **MR. SALAS:**  That's right.
4          **THE COURT:**  Where does that leave you?
5          **MR. SALAS:**  Well, they want to ask the Court to
6  remove that requirement that has been imposed by --
7          **THE COURT:**  If you didn't like it, why didn't your
8  clients opt out?
9          **MR. SALAS:**  Well, they could have done that, but they
10  could have stayed in the class.  That's what the purpose of
11  objecting is, to ask the Court to rectify an issue that the
12  Court can rectify so everybody, including my clients, will take
13  advantage of this settlement.
14          Your Honor, my clients are members of a class
15  action that has not been decided yet.
16          **THE COURT:**  Why didn't your clients comply with
17  PTO 60?
18          **MR. SALAS:**  Because they were members of the class
19  action.
20          **THE COURT:**  It certainly was not the intent of the
21  Court to except out people like your client from complying --
22  the whole idea of PTO 60 was that everybody that's out there
23  left would show up and say, "Here I am," you know, wave your
24  hand, "Here I am.  I'm still alive here."  I don't understand
25  why you didn't do that or why your clients didn't do that.

1       **MR. SALAS:**   The way we read the order, PTO 60, it was

2   addressed to anybody who was part of the mass tort.  Those were

3   suits where people had listed 100 people in a suit, for

4   example, and we understood that to be the Court trying to split

5   out those groups that had been improperly joined.

6       **THE COURT:**   I think you misinterpreted it.  When that

7   order came out, it was pretty explicit to me.  It seemed like

8   if you had any question about that, you would have raised that

9   at the time, you would have inquired, you would have filed

10   something and said, "Hey, does this apply to us?"  I would have

11   told you what my intent was, which I think PTO 60 did.  I just

12   don't understand how you end up in the position where you are

13   now, Mr. Salas.

14       **MR. SALAS:**   Judge, we have a claim that has not

15   been -- class action has not been determined.  That suit is

16   pending before this Court.  It has not been adjudicated.

17       **THE COURT:**   You didn't comply with PTO 60 is the

18   problem.  You can't just ignore an order.  You can't just say,

19   "Well, I have this suit.  I don't have to comply with an order

20   of the Court."

21       **MR. SALAS:**   Your Honor, to the extent we have a claim

22   pending before the Court, we have a possibility of obtaining

23   some type of damages, economic damages for my clients.  That's

24   what the model says.  As long as you have some means of

25   obtaining or at least the possibility of obtaining some kind of

1   damages for your clients, you are entitled to participate in

2   the settlement as a member of the New Class.  That's what --

3           THE COURT:  Your people own what?  Waterfront

4   properties?

5           MR. SALAS:  Yes.

6           THE COURT:  What are these?  Condominiums?

7   Businesses?  What are they?

8           MR. SALAS:  Homes.  Mostly homes.

9           THE COURT:  What area of the Gulf?

10          MR. SALAS:  Between Destin and Panama City.  These

11  are people whose properties are covered under the maps that

12  were prepared for the other settlement.

13          THE COURT:  So that means you're a member of the

14  class and you didn't opt out.

15          MR. SALAS:  That's right.

16          THE COURT:  I don't think anybody is arguing about

17  that.

18          MR. SALAS:  The question is, Your Honor, whether or

19  not these folks should be -- any recovery, whether they should

20  be zero.  They are members of a class who upfront are being

21  told you will get nothing.  A class action settlement --

22          THE COURT:  It seems like to me if I represented

23  those folks and I knew that my clients were members of a class,

24  but when I looked at the distribution model it said you are

25  going to get nothing even though you are a member of the class,

11:03

1    I know what action I would have taken.  If I wanted to pursue

2    those claims, I would have opted them out.

3           MR. SALAS:  Your Honor, the purpose is that this

4    model did not come out until after PTO 60 had come out, until

5    all of that had taken place, and basically when --

6           THE COURT:  Well, even more so. I don't want to

7    belabor this any further because I have said it about three

8    times now.  By the time of the opt-out deadline -- which was

9    September 23, I think -- by that time you had had several

10   months where you knew about PTO 60 and you knew about the

11   distribution model.  You or your client, on behalf of your

12   clients, elected not to opt out.  That's where you are.

13              Besides that, I think this is premature.  Maybe

14   you can make an argument to Mr. Juneau to convince him.  We'll

15   see where all that lands.  You're not objecting to the

16   settlement itself.  I understand your arguments, Mr. Salas.

17          MR. SALAS:  Thank you, Your Honor.

18          THE COURT:  I haven't made final rulings.  I'm just

19   telling you here what it looks like to me.  I think you have

20   some problems, but we will see how that all unfolds.  Okay?

21          MR. SALAS:  Thank you.

22          THE COURT:  So those are all the objections.  Any

23   replies or comments, first from class counsel, to any of the

24   objectors?

25          MR. HERMAN:  Thank you, Your Honor.  We would be

1   happy to answer any questions from the Court, but I think we

2   have covered this in our reply brief.

3           THE COURT:  Okay.  From Halliburton?

4           MR. YORK:  Again, do you have any questions

5   Your Honor?  We have nothing.

6           THE COURT:  Transocean?

7           MR. MILLER:  The same for Transocean.

8           THE COURT:  Mr. Juneau?

9           MR. JUNEAU:  Judge, I would be happy to explain.

10          THE COURT:  I think it would be helpful if you

11  commented, first of all, in response to Mr. Bickford's

12  concerns.  I know you have had discussions and you filed some

13  sort of clarification in the record.

14          MR. JUNEAU:  Sure.  Well, he cited some language.  We

15  haven't agreed to any of that.  I want to make that real clear,

16  what he cited as language --

17          THE COURT:  So is it your position, as the

18  Court-appointed claims administrator, the current language of

19  your distribution model is sufficient to allow you to address

20  the concerns raised by Mr. Bickford?

21          MR. JUNEAU:  Yes, it is, Judge.  Let me talk about it

22  just for a second.

23          THE COURT:  Okay.

24          MR. JUNEAU:  On the second issue he raised, about

25  going from a nonoiled classification to an oiled

11:06

1    classification, there's maps based on the SCAT data, where the
2    SCAT teams went out and if they found oil, that's put into the
3    oiled category.  It's a higher rate of compensation.  If the
4    SCAT teamed looked at it, they are on the map, but maybe they
5    didn't find oil, so for that property it goes into the nonoiled
6    category.

7                    There is a provision -- in the BP settlement
8    there's one.  In this model there is too.  Despite the SCAT
9    team saying they didn't find oil, if you have evidence that
10   there was actual oil on your property, you have the ability to
11   be reclassified from the nonoiled category into the higher
12   compensation oiled category.

13                    That's what Mr. Bickford was saying.  There is a
14   standard, and that's Exhibit 12 of the BP settlement, and we
15   are using exactly the same standard.  I think it's important.
16   It's a standard that's been applied for four years now.  It's a
17   standard that was part of what was approved by this Court
18   previously in the BP settlement, approved by the Fifth Circuit,
19   so it's a standard that has --

20            THE COURT:  So a local government, for example, which
21   I think are his types of claimants, if they had not been
22   expressly excluded from that economic settlement, this is the
23   same standard.

24            MR. JUNEAU:  That would be the same standard,
25   absolutely.  Now, what it says is you submit documentation in

1   the form of a government or academic publication or map that
2   establishes the presence of oil, in essence.  That's crucial.
3   It is not you going out to take pictures yourself of oil on a
4   property.  It has to be a government or academic publication or
5   map.

6                   What I understand Mr. Bickford's concern to be
7   is -- we do have that, he says.  We have government maps.  We
8   have Navy maps --

9            THE COURT:  He is saying you won't be able to
10  understand it.  So what's your response to that?

11           MR. JUNEAU:  He is probably right, I won't be able to
12  understand much.  The person who does the mapping stuff
13  probably can understand a whole lot of stuff.  The answer to
14  that, though, is what is required is what's in this standard,
15  which is a government publication or map.  If he wants to
16  provide us with some explanations or some expert data,
17  whatever, that will help us understand --

18           THE COURT:  You will take that into account.

19           MR. JUNEAU:  Fine.  Submit it.  We will consider it.
20  That's all part of the process.  So that's all going to be
21  considered, but it is the government map or publication that
22  rules.  It is not some expert that's hired by one party that
23  comes in and it's his opinion.  It has to be something that's
24  established by the map.  If he can help us understand it,
25  that's great.

1          THE COURT:  Good.

2          MR. JUNEAU:  The second issue was his ownership.  The

3    settlement provides, look, you need to establish that you own

4    this property, which the basic requirement is give us your

5    deed, and we look at the tax assessor's records.  That works

6    for 99 percent of the people.  That's not a problem.  We can go

7    to the tax assessor's records.  It provides that and verifies

8    that.

9          What Mr. Bickford says is that doesn't work in

10   Plaquemines Parish because the tax assessor's records don't

11   show our property because they don't tax, and we don't really

12   have a deed for these things either.  It's all complicated

13   history about we got it through a donation long ago, whatever.

14   It's very complicated.

15          I understand that.  There was a specific

16   provision in the New Class model, and that's why I think the

17   language is sufficient.  I'll read this one, Judge.  It says

18   (as read):  "The New Class administrator reserves the right to

19   require additional documentation or to consider appropriate

20   alternative documentation he deems to be reliable and

21   appropriate for verification and evaluation of a given claim."

22          That's exactly what we have here.  We have a

23   unique circumstance.  They say, look, given the situation in

24   Plaquemines Parish, we can't give you what the vast, vast

25   majority of people can.  That's fine.  We need to sit down and

1    talk about what is reliable, adequate proof just to show us you

2    own the property.  That's part of the claims process.  We

3    haven't gotten there yet.

4              To the extent, by the way, that he is not

5    satisfied with what the claims processing people do, he can

6    appeal personally to me.  And then if they don't like that

7    result, whatever I decide in that respect, they have the right

8    to appeal to you, Judge.

9              So to the extent any of the issues have not been

10   properly addressed in my discretion, you absolutely have

11   oversight over all of that.  As to the --

12        **THE COURT:**  What about Mr. Schoenberger?  His

13   situation is a little bit different.  I don't know if it's

14   totally unique, if there are any other people that fall in that

15   category.

16        **MR. JUNEAU:**  I don't either, Judge.  I do think

17   there's an issue.  Here's a party that has gotten no

18   compensatory damages and has no ability to get it in the future

19   because they are barred by the classwide release in the BP

20   settlement, so the underlying compensatory might be zero.  How,

21   then, do we award punitive damages on top of that?  I don't

22   know the details of that claim to address that.  I think it's

23   the product of the specifics of that particular claim that

24   would have to fall within that provision as well.

25              There actually is another provision in the

1  settlement that says even beyond the document requirements

2  that -- I'll read the last sentence (as read):  "The New Class

3  claims administrator reserves the right to adjust the award

4  amount in any specific case for equitable purposes in light of

5  exceptional or extraordinary facts or circumstances relative to

6  that claim."

7         I think that claim would fall probably more

8  likely in that category.  If there are certain equitable

9  considerations, just a unique situation that calls for exercise

10  of discretion just to correct that one situation, that can be

11  done too.  Again, you have oversight over that as well.

12         As to the opt-outs that didn't comply with

13  PTO 60, I do disagree with the way that that was phrased.  I'm

14  not requiring anything, at least it's not the way the

15  distribution model is drafted.  My task, as I viewed it, was to

16  give a punitive damage number that is a fair assessment of what

17  an appropriate punitive damage award would be.  To do that, I

18  want to look at the underlying compensatory damages.

19         The requirement, which is applicable to all --

20  people that participated in the neutrals process, that opted

21  out, that participated in the BP settlement program, that same

22  standard, that same rationale is applied to all.

23         I ask:  Have you gotten compensatory damages?

24  Do you have a right to recover them in the future?  Do you have

25  a reasonable chance of recovering them in the future?

1          The neutrals settlement people, their answer is:

2   Yes.  Yes, I have got compensatory damage.  Here it is.  I've

3   gotten a settlement of a case.

4          BP program people got money and compensatory

5   damages too.

6          This category of people that have to answer that

7   no, then I'm asking:  Well, might you get them in the future?

8   What are your chances of getting them in the future?

9          I read your orders as being clear up to this

10  point, Judge.  You said, look, if you feel you really have a

11  claim to pursue, you need to comply with this PTO 60.  If you

12  didn't, you dismissed all those claims.  So from my

13  perspective, anybody that falls in that category, if they

14  weren't on the Pretrial Order 60 list, if they didn't comply

15  with that, I don't think they have a reasonable chance of

16  recovery.

17         I think the fairest evaluation of a punitive

18  damage award for those is zero because they received no

19  compensatory and they have not a reasonable chance.  Maybe

20  somebody could argue they will overturn things on appeal before

21  the Fifth Circuit, but I don't think it's a very reasonable

22  one.

23         That's the rationale for that aspect of the

24  distribution model.  That's why that was created.

25         **THE COURT:**  Thank you.

11:14

1          Anybody have anything else?

2          I'm going to take this under advisement.  We

3    will issue a written ruling at some point.

4          I'll just say for the record what is rather

5    obvious.  First of all, I don't see that there are any real

6    objections to the actual settlements themselves or to the

7    fairness, reasonableness, or adequacy of the settlements.

8    There's been no objection the Court is aware of to

9    Judge Wilkinson's allocation.  There's been no objection to

10   class notice, no objection to the request for attorneys' fees,

11   no objection to certification of the class for settlement

12   purposes under Rule 23.

13          Mr. York, did you want to mention anything of

14   what we talked about?

15   **MR. YORK:**  No, Your Honor.  I think in Garden City's

16   presentation they noted that the CAFA notices have gone out.

17   **THE COURT:**  All right.  Very well.  I'm certainly

18   strongly inclined to approve this as presented by the parties

19   to the settlement, but I'm going to do so in writing at the

20   appropriate time.

21          I should also add that I have given this some

22   thought.  I haven't issued an order on this yet.  It may be a

23   separate order.  It may be included in the same order approving

24   the settlement.

25          Unlike the BP economic settlement, we had kind

11:16

1    of a unique situation there where in that settlement, long

2    before final approval of the settlement or the effective date

3    of the settlement, claims were being not only filed, but claims

4    were being paid under that program.  So on June 15, 2012, in

5    Record Document 6684, I issued an order capping individual

6    attorneys' fees for the reasons stated therein at 25 percent.

7    I think it's appropriate to make sure people understand that

8    same order is going to apply to any claims filed in this

9    program on these two settlements.  We will include that in a

10   separate order or include it in any order approving the

11   settlements.

12           Anyone have anything else?  All right.  Have a

13   good day.

14           **THE DEPUTY CLERK:**  All rise.

15           (Proceedings adjourned.)

16                        * * *

17                  <u>**CERTIFICATE**</u>

18           I, Toni Doyle Tusa, CCR, FCRR, Official Court
     Reporter for the United States District Court, Eastern District
19   of Louisiana, certify that the foregoing is a true and correct
     transcript, to the best of my ability and understanding, from
20   the record of proceedings in the above-entitled matter.

21

22

23                     *s/ Toni Doyle Tusa*
                       Toni Doyle Tusa, CCR, FCRR
                       Official Court Reporter

24

25

MR. BICKFORD: [8] 44/20 45/6 45/12
45/17 47/23 49/3 49/12 50/6
MR. FAYARD: [1] 5/7
MR. HERMAN: [6] 4/19 13/7 13/9
15/14 19/9 60/24
MR. JUNEAU: [43] 6/7 22/1 25/15
26/10 30/2 30/8 30/10 30/15 30/22
30/24 31/21 32/2 32/10 32/23 33/3
33/16 33/19 33/22 35/1 35/12 35/14
35/20 36/4 36/11 36/24 37/4 37/7
37/11 37/17 37/25 38/4 38/25 39/10
39/16 61/8 61/13 61/20 61/23 62/23
63/10 63/18 64/1 65/15
MR. MILLER: [3] 4/23 42/17 61/6
MR. ROY: [3] 4/21 6/13 10/7
MR. SALAS: [36] 5/14 5/18 53/9 53/11
54/2 54/15 54/18 54/21 54/23 55/2
55/5 55/8 55/12 55/15 55/18 56/3 56/5
56/10 56/13 56/17 56/20 57/2 57/4
57/8 57/17 57/25 58/13 58/20 59/4
59/7 59/9 59/14 59/17 60/2 60/16
60/20
MR. SCHOENBERGER: [7] 50/13
50/16 50/18 51/5 51/9 51/12 51/24
MR. WILLIAMS: [1] 5/1
MR. YORK: [7] 5/3 39/19 39/21 40/5
40/13 61/3 68/14
MS. LaCOUNT: [5] 19/12 21/8 21/13
21/19 21/22
THE COURT: [120]
THE DEPUTY CLERK: [2] 4/7 69/13
THE LAW CLERK: [1] 52/16

## $

$1,028,000,000 [1] 12/25
$1,030,136,667 [1] 13/1
$1,241,886,667 [1] 13/3
$1,241,887,000 [1] 8/15
$100 [5] 12/22 38/15 38/17 38/18
38/19
$124.95 [1] 10/14
$124.95 million [1] 10/14
$150,000 [2] 12/21 38/14
$2 [1] 10/23
$2 million [1] 10/23
$211,750,000 [1] 13/1
$338,247,923.42 [1] 9/15
$5 [1] 38/17
$903,638,743.58 [1] 9/14

## .

.03 [1] 16/17
.03 percent [1] 16/17
.2 [1] 11/17
.2 percent [1] 11/17
.6 [2] 11/16 34/7
.6 percent [1] 11/16

## 1

1 percent [1] 16/21
1,000 [1] 20/19
1.4 percent [1] 11/18
10 [3] 1/6 4/2 16/20
10-MD-2179 [1] 1/4
100 [2] 16/21 58/3
100 acres [1] 48/10
100,000 [3] 16/9 16/12 16/14
12 [2] 10/17 62/14
12-970 [2] 1/8 4/14

## 1 (cont)

12 [1] 56/19
15 [8] 19/22 20/16 21/16 22/23 38/2
52/1 52/7 69/4
15 percent [1] 16/20
15-4143 [1] 1/7
15-4146 [2] 1/7 4/11
15-4654 [2] 1/8 4/13
150 [1] 53/12
17.8 percent [1] 11/17
1700 [1] 1/22
172,000 [2] 34/20 35/24

## 2

20 [2] 1/5 4/9
20,000 [1] 20/16
201 [1] 2/4
2010 [2] 1/5 4/10
2012 [2] 50/24 69/4
2014 [2] 7/9 40/15
2015 [1] 8/5
2016 [5] 1/6 4/2 10/18 19/22 22/23
21,000 [1] 20/21
2179 [2] 1/4 4/8
23 [6] 13/12 14/24 17/8 56/20 60/9
68/12
25 percent [1] 69/6
250 [1] 35/24
27.2 percent [1] 9/13
275 [1] 2/10
29 [1] 8/5

## 3

3 percent [1] 11/20
3/100 [1] 16/21
30 [1] 16/15
36 [1] 21/9
3600 [1] 2/4

## 4

4 1/2 [1] 31/17
4 1/2 years [1] 27/3
4 years [1] 27/3
4,700 [1] 20/23
40,000 feet [1] 11/12
4143 [2] 1/7 4/10
4146 [2] 1/7 4/11
4654 [2] 1/8 4/13

## 5

500 [2] 1/16 2/10
500,000 [1] 20/6
504 [1] 2/11
556 [1] 1/16
589-7778 [1] 2/11

## 6

60 [12] 54/4 55/21 57/17 57/22 58/1
58/11 58/17 60/4 60/10 66/13 67/11
67/14
6684 [1] 69/5

## 7

70113 [1] 1/20
70130 [1] 2/10
70170 [1] 2/4
70501 [1] 1/17
72.8 percent [1] 9/12
77002 [1] 1/23
7778 [1] 2/11

## 8

80 percent [2] 11/15 34/7
811 [1] 1/22
820 [1] 1/19

## 9

970 [2] 1/8 4/14
99 percent [1] 64/6

## A

a fortiori [1] 14/17
Aaron [1] 44/15
ability [6] 11/19 18/22 21/17 62/10
65/18 69/19
able [12] 9/21 12/1 16/3 19/24 20/11
25/13 40/14 49/16 51/21 51/23 63/9
63/11
about [30] 5/25 10/23 11/15 11/16
17/16 20/23 22/1 25/17 28/4 30/12
34/18 34/20 37/18 46/14 49/21 50/6
53/12 56/16 56/24 58/8 59/16 60/7
60/10 60/10 61/21 61/24 64/13 65/1
65/12 68/14
above [1] 69/20
above-entitled [1] 69/20
absent [1] 19/12
absolutely [3] 21/14 62/25 65/10
academic [3] 48/2 63/1 63/4
accept [2] 46/19 47/16
access [1] 23/5
accomplish [1] 26/23
account [3] 25/14 50/3 63/18
accountants [1] 30/20
achieve [1] 33/20
acreage [1] 42/1
acres [1] 48/10
across [1] 40/8
action [12] 4/10 4/11 4/13 4/14 49/6
50/20 50/23 57/15 57/19 58/15 59/21
60/1
Action 15-4143 [1] 4/10
actively [1] 20/4
actual [8] 17/6 24/15 42/1 45/17 49/8
56/12 62/10 68/6
actually [15] 8/24 10/22 12/18 23/9
23/24 25/5 26/2 30/5 35/1 35/2 37/13
45/18 47/8 49/10 65/25
add [2] 48/15 68/21
addition [5] 7/5 15/9 18/4 18/14 18/18
additional [7] 10/14 15/12 20/2 46/25
47/2 53/23 64/19
address [15] 6/15 6/18 10/10 14/7
16/19 17/17 19/25 20/4 20/9 20/10
20/20 22/9 25/16 61/19 65/22
addressed [2] 58/2 65/10
addressing [1] 21/15
adequacy [3] 17/9 17/23 68/7
adequate [6] 11/3 14/24 40/19 40/20
42/13 65/1
adjourned [1] 69/15
adjudged [1] 40/18
adjudicated [2] 14/14 58/16
adjust [1] 66/3
administered [2] 9/16 18/12
administering [1] 26/17
administration [4] 9/23 10/1 18/9 30/25
administrative [3] 12/9 19/1 19/5
administrator [11] 6/5 9/17 11/25 19/15
22/6 42/11 46/19 49/25 61/18 64/18
66/3

# A

adopt [1] 42/20
adopted [1] 10/1
advanced [1] 20/10
advantage [1] 57/13
advisement [1] 68/2
advocated [1] 9/8
aerial [5] 47/11 47/17 48/11 48/12 48/14
affirmed [2] 15/23 51/5
affords [1] 18/25
after [19] 7/3 9/10 10/11 15/2 15/3 20/22 42/24 43/14 49/11 53/21 53/22 55/21 60/4
afterwards [2] 6/24 49/14
again [12] 4/4 8/3 14/19 28/1 33/13 34/24 39/2 43/24 51/20 53/1 61/4 66/11
against [1] 7/4 7/4 7/7 7/18 44/4
aggregate [6] 8/15 9/14 13/2 41/12 41/20 55/24
ago [2] 23/22 64/13
agree [3] 40/6 49/19 50/22
agreed [3] 10/13 10/20 61/15
agreeing [1] 8/15
agreement [9] 7/11 7/19 7/20 26/7 40/15 40/22 41/22 41/24 42/5
agreements [2] 8/22 25/20
ahead [4] 21/13 32/10 45/6 45/12
aided [1] 2/15
al [6] 4/10 4/11 4/12 4/12 4/15 4/16
ALAN [4] 1/22 5/4 16/19 39/22
alive [1] 57/24
all [52] 1/7 4/4 7/7 7/24 8/7 13/12 13/13 14/22 20/17 23/2 25/3 26/6 26/7 27/4 27/20 28/1 28/10 29/24 33/24 34/13 36/3 39/1 39/7 39/19 42/16 44/3 45/4 47/13 50/1 51/21 53/9 54/21 55/4 55/5 55/7 55/21 60/5 60/15 60/20 60/22 61/1 63/20 63/20 64/12 65/11 66/19 66/22 67/12 68/5 68/17 69/12 69/14
alleged [1] 53/14
allocate [2] 28/12 34/4
allocated [5] 8/16 10/22 23/14 38/21 41/17
allocating [2] 8/18 17/11
allocation [22] 8/24 9/1 9/2 9/5 9/8 9/12 10/19 10/20 10/25 13/3 17/10 23/14 25/17 26/1 29/1 34/6 41/15 41/19 41/20 43/16 43/19 68/9
allow [3] 47/18 48/23 61/19
allowed [1] 41/23
allowing [1] 48/3
almost [1] 8/7
along [2] 41/10 48/14
already [8] 13/18 17/23 18/3 18/15 18/16 27/11 39/1 40/22
also [23] 2/6 5/1 5/5 6/7 6/20 10/10 10/13 11/3 18/8 21/3 21/4 21/6 22/15 35/8 40/20 41/6 41/8 41/11 41/14 41/21 50/16 52/23 68/21
alternative [1] 64/20
alternatively [1] 46/18
although [1] 47/15
am [4] 50/17 54/15 57/23 57/24
amazing [2] 40/10 40/10
amicably [1] 55/11
amicus [1] 15/21
among [1] 53/21

amount [11] 6/22 18/19 26/19 27/4 34/15 38/18 41/14 42/14 47/8 49/20 66/4
amounts [1] 8/8
analysis [2] 13/12 44/1
anomaly [2] 19/3 19/4
another [4] 12/12 39/4 52/16 65/25
answer [5] 19/7 61/1 63/13 67/1 67/6
answered [1] 43/18
anticipates [1] 11/15
any [39] 5/23 6/10 9/7 9/8 9/8 11/5 13/4 19/2 19/7 21/5 23/4 25/10 26/17 28/24 37/19 38/8 39/6 43/12 44/9 46/21 47/18 48/5 48/24 53/7 53/25 58/8 59/19 60/7 60/22 60/23 61/1 61/4 61/15 65/9 65/14 66/4 68/5 69/8 69/10
anybody [10] 25/10 28/7 37/21 38/11 38/23 52/2 58/2 59/16 67/13 68/1
anyone [9] 18/5 22/20 38/9 49/1 50/9 52/12 52/22 53/7 69/12
anything [12] 12/7 28/22 34/22 36/15 38/18 38/24 39/3 48/9 66/14 68/1 68/13 69/12
anyway [2] 36/10 53/2
apparently [6] 44/18 52/3 52/13 52/19 52/20 53/8
appeal [14] 15/1 15/21 19/1 19/5 19/6 27/18 27/20 49/1 50/5 51/2 51/3 65/6 65/8 67/20
appeals [4] 27/17 42/25 43/1 44/4
appear [3] 4/18 16/16 42/8
appearance [2] 8/17 8/21
appearances [3] 1/13 2/1 4/19
appearing [2] 5/5 39/22
appears [1] 50/12
applicability [1] 48/4
applicable [1] 66/19
applications [1] 12/10
applied [2] 62/16 66/22
applies [1] 46/2
apply [6] 29/18 29/19 31/12 33/12 58/10 69/8
applying [1] 30/17
appoint [1] 8/23
appointed [10] 8/25 9/1 9/17 10/6 19/15 32/12 32/18 32/20 33/7 61/18
appreciate [6] 21/13 25/20 49/4 51/7 54/20 56/2
appreciation [2] 24/13 34/12
approach [1] 49/20
appropriate [11] 5/18 13/15 13/21 13/22 40/19 41/19 64/19 64/21 66/17 68/20 69/7
appropriately [1] 10/18
approval [19] 10/14 10/17 12/16 13/11 13/18 14/19 14/20 16/6 18/19 19/19 19/19 19/20 22/12 22/13 22/22 27/11 42/14 53/22 69/2
approve [3] 18/23 48/22 68/18
approved [11] 11/3 17/22 18/3 18/15 18/16 21/12 27/9 27/9 41/19 62/17 62/18
approving [5] 13/19 14/16 49/6 68/23 69/10
APRIL [4] 1/5 4/9 10/17 22/12
April 12 [1] 10/17
April 20 [1] 4/9
architecture [1] 46/1
are [153]
area [2] 24/14 59/9

areas [1] 47/9
arguable [1] 28/16
arguably [3] 24/5 24/9 26/8
argue [1] 67/20
arguing [3] 56/9 56/16 59/16
argument [7] 18/6 24/10 25/22 25/25 34/1 54/15 60/14
arguments [4] 8/23 42/9 49/2 60/16
around [2] 25/13 45/11
arrive [4] 31/1 31/8 31/13 31/24
arrived [1] 29/21
arrives [1] 49/1
arriving [1] 29/20
as [105]
ask [3] 57/5 57/11 66/23
asked [2] 37/18 45/18
asking [1] 67/7
aspect [2] 34/13 67/23
assess [3] 25/24 25/25 33/25
assessment [3] 40/19 48/16 66/16
assessments [1] 47/11
assessor's [4] 46/8 64/5 64/7 64/10
Asset [1] 4/12
assign [2] 35/6 35/15
assigned [8] 7/5 7/22 8/13 10/19 38/5 40/22 40/24 40/25
assignment [2] 8/19 12/15
assistance [1] 40/14
associated [2] 19/23 21/1
assume [1] 16/19
Assuming [1] 22/2
at [48] 5/17 7/21 13/22 15/2 15/12 15/19 15/25 16/6 16/9 16/10 16/20 19/9 20/24 22/16 22/25 23/18 27/10 27/20 29/20 29/21 30/20 31/1 31/8 31/13 31/24 32/25 33/24 36/22 38/19 42/3 42/25 44/12 49/1 49/3 49/14 49/17 53/5 56/23 58/9 58/25 59/24 62/4 64/5 66/14 66/18 68/3 68/19 69/6
attempt [1] 32/22
attempts [2] 28/17 55/11
attended [1] 43/16
attorney [2] 50/15 52/13
attorneys [1] 40/9
attorneys' [4] 10/15 17/14 68/10 69/6
auspices [1] 11/25
automatic [1] 34/17
automatically [8] 28/8 28/10 28/10 28/22 34/21 35/25 38/25 39/3
available [3] 13/2 21/16 23/1 26/19 29/1 34/4
avenue [4] 1/19 2/4 46/5 50/4
avoid [2] 8/17 9/8
await [1] 30/1
award [10] 12/7 29/25 35/1 35/3 35/6 51/24 65/21 66/3 66/17 67/18
aware [6] 9/18 40/24 41/11 41/21 53/5 68/8

# B

B-275 [1] 2/10
B1 [1] 15/17
back [6] 20/5 20/17 21/1 22/12 38/7 40/13
background [2] 5/22 13/5
Baker [1] 2/2
banners [1] 37/25
BARBIER [3] 1/11 4/24 42/18
barred [1] 65/19
base [1] 34/23

**B**

based [8] 11/22 12/19 18/14 29/1 35/9 40/17 43/8 62/1
basic [1] 64/4
basically [4] 47/7 48/14 49/7 60/5
basis [5] 14/14 29/17 38/12 38/22 42/4
battle [1] 15/6
be [87]
Bearman [1] 2/2
beauty [1] 28/21
because [31] 7/2 8/16 10/6 17/24 25/19 25/20 26/6 32/3 32/15 32/17 34/8 35/5 36/15 36/19 36/23 37/2 41/3 46/3 46/8 46/9 49/5 50/21 51/10 52/4 53/17 57/18 60/7 64/10 64/11 65/19 67/18
becomes [1] 24/20
been [52] 6/6 9/18 9/19 11/22 11/24 15/19 15/21 18/16 20/2 21/2 21/4 21/11 24/22 25/5 25/6 27/2 27/8 27/9 29/8 30/15 32/5 32/6 32/9 32/11 34/12 35/3 35/23 35/24 36/21 38/8 40/22 42/3 42/9 42/15 43/10 44/5 47/6 52/6 53/13 53/23 53/24 57/6 57/15 58/5 58/15 58/15 58/16 62/16 62/21 65/9 68/8 68/9
before [14] 1/11 10/15 10/24 12/23 20/15 28/4 35/11 36/3 39/6 49/7 58/16 58/22 67/20 69/2
began [2] 20/23 21/15
beginning [1] 45/5
behalf [15] 4/18 5/16 5/21 6/4 6/5 6/15 39/22 42/12 42/19 50/12 52/12 52/14 52/22 53/4 60/11
being [12] 7/22 9/14 14/9 26/8 34/21 50/25 53/18 53/21 59/20 67/9 69/3 69/4
belabor [1] 60/7
believe [3] 25/4 40/20 42/13
believed [1] 55/22
Ben [2] 37/23 52/16
benefit [4] 8/15 10/15 14/12 16/5
benefits [1] 11/9
Berkowitz [1] 2/3
Besides [1] 60/13
best [2] 15/2 69/19
between [17] 7/20 9/3 13/2 17/11 36/2 41/13 43/3 44/3 45/20 56/24 59/10
beyond [2] 25/10 66/1
Bickford [10] 2/7 44/20 44/22 45/6 48/13 51/16 52/24 61/20 62/13 64/9
Bickford's [2] 61/11 63/6
biggest [1] 31/2
bill [1] 46/6
billion [1] 16/4
Biloxi [2] 52/22 52/23
bit [3] 15/23 49/5 65/13
block [1] 15/13
blow [2] 16/19 56/12
Board [1] 44/23
boards [1] 29/9
boat [7] 11/18 15/14 15/15 24/8 24/8 25/12 25/12
boats [1] 12/6
Bon [1] 4/14
Bon Secour [1] 4/14
both [10] 5/23 6/4 7/1 8/6 8/13 9/22 21/4 22/7 22/16 39/8
bottom [7] 7/9 13/14 13/24 14/25 15/25 17/19 51/3
bottom-line [1] 13/24
bottom-lines [2] 13/14 14/25
bounced [1] 20/5
box [1] 20/24
BP [50] 4/15 6/20 6/25 7/6 7/20 9/20 9/22 13/17 14/5 14/10 14/16 15/13 15/20 18/9 26/24 27/8 27/24 28/2 28/7 28/16 28/20 28/25 29/4 29/7 29/10 29/18 29/22 30/18 31/25 32/17 33/18 34/18 36/7 36/14 36/14 38/11 38/20 39/2 39/14 40/25 53/15 53/16 54/23 62/7 62/14 62/18 65/19 66/21 67/4 68/25
BP's [2] 7/7 38/5
Brad [1] 5/5
brief [3] 19/11 22/6 61/2
briefed [1] 10/16
briefings [1] 45/19
briefly [1] 44/13
briefs [1] 15/21
bring [1] 24/25
broaden [1] 46/18
bunch [1] 32/14
burden [1] 45/8
burdens [1] 15/12
business [2] 30/19 32/5
Businesses [1] 59/7
but [40] 7/16 8/9 10/24 17/3 18/20 18/23 21/15 24/9 29/15 30/7 30/13 32/17 33/2 33/8 33/11 35/8 37/1 37/14 38/20 39/15 40/8 41/9 42/25 43/18 48/10 51/15 52/13 52/20 53/2 55/22 56/11 57/9 59/24 60/20 61/1 62/4 63/21 67/21 68/19 69/3

**C**

CAFA [2] 21/3 68/16
Caldwell [1] 2/3
call [4] 4/7 5/17 24/2 27/14
called [4] 7/5 20/10 53/8 55/21
calls [2] 20/21 66/9
Calvin [2] 5/8 40/1
came [4] 27/15 42/25 43/18 58/7
Camilo [2] 2/8 5/15
can [27] 4/7 14/13 16/11 20/5 21/13 22/2 22/10 23/6 23/7 24/18 31/11 31/12 37/22 38/2 38/19 47/14 49/1 49/14 50/5 57/12 60/14 63/13 63/24 64/6 64/25 65/5 66/10
can't [6] 22/3 32/4 54/9 58/18 58/18 64/24
cannot [1] 54/12
cap [1] 12/21
capped [1] 26/16
capping [1] 69/5
captive [1] 45/2 45/7
carefully [2] 9/10 20/25
CARL [1] 1/11
Carter [1] 4/25
case [11] 4/7 13/21 13/23 14/13 20/14 20/18 40/7 50/24 51/22 66/4 67/3
cases [2] 1/7 37/2
categories [14] 11/20 16/12 23/19 25/10 25/18 25/19 28/4 28/14 31/2 32/15 33/25 34/4 34/20 34/25
category [20] 24/1 29/24 30/8 32/11 32/19 33/15 33/16 33/18 34/1 34/9 34/14 46/10 62/3 62/6 62/11 62/12 65/15 66/8 67/6 67/13
Category 2 [1] 33/16

category's [1] 11/21
caveat [1] 38/5
CCR [3] 2/9 69/18 69/23
cert [2] 13/20 17/23
cert/adequacy [1] 17/23
certain [11] 15/23 24/23 28/3 29/11 37/10 41/25 41/25 42/1 46/4 52/25 66/8
certainly [4] 13/22 52/19 57/20 68/17
CERTIFICATE [1] 69/17
certification [10] 5/23 12/24 13/15 13/21 14/1 14/16 14/18 17/7 45/16 68/11
certified [5] 11/1 14/3 14/4 49/8 49/11
certify [1] 69/19
chance [3] 66/25 67/15 67/19
chances [1] 67/8
change [2] 18/23 39/14
Charles [1] 2/4
charter [6] 11/18 12/6 24/8 24/8 25/12 25/12
cheaper [1] 10/6
check [2] 29/1 39/4
checks [1] 41/9
Circuit [18] 7/24 13/19 14/16 14/23 15/7 15/12 15/19 18/2 18/15 19/6 24/24 25/5 27/10 27/21 43/1 51/4 62/18 67/21
circumstance [1] 64/23
circumstances [3] 9/11 16/2 66/5
cited [2] 61/14 61/16
cities [1] 29/9
City [9] 19/14 23/10 43/10 43/21 44/23 46/15 52/22 52/23 59/10
City's [1] 68/15
Civil [4] 4/10 4/11 4/13 4/14
claim [69] 7/3 11/21 12/21 12/22 19/2 19/3 20/10 21/16 22/21 23/1 23/4 23/4 23/8 23/9 24/18 25/1 26/8 26/18 28/3 28/4 28/7 28/8 28/9 28/13 28/16 28/23 29/4 29/15 30/10 32/5 32/6 32/8 32/16 34/19 34/20 35/7 35/24 36/7 36/9 36/10 36/21 37/1 37/7 37/10 37/15 38/24 46/21 51/1 51/18 52/7 54/18 54/19 55/22 55/25 58/14 58/21 64/21 65/22 65/23 66/6 66/7 67/11
claim-specific [1] 19/2 19/3
claimant [5] 19/24 44/17 50/16 50/17 52/16
claimant's [1] 21/1
claimants [19] 12/18 24/1 25/12 27/14 28/20 29/3 31/18 33/14 34/5 34/14 34/17 34/25 37/9 40/21 41/25 42/14 50/15 55/1 62/21
claims [71]
clarification [2] 16/23 61/13
clarified [1] 16/24
clarify [1] 48/4
class [164]
Class v [1] 4/14
class' [1] 16/7
classes [9] 8/16 9/16 9/22 13/3 15/1 41/13 41/25 45/20 49/10
classification [2] 61/25 62/1
classwide [3] 14/10 14/14 65/19
clear [9] 8/9 10/21 23/19 24/9 32/20 36/13 42/6 61/15 67/9
client [4] 50/1 53/5 57/21 60/11
clients [17] 54/20 55/7 55/14 56/2 56/5

# C

clients... [12] 56/7 56/22 57/1 57/8 57/12 57/14 57/16 57/25 58/23 59/1 59/23 60/12
co [1] 51/11
co-owners [1] 51/11
coast [2] 31/3 31/5
coastal [2] 31/2 42/1
coincide [2] 28/3 28/14
Colomb [1] 1/15
come [6] 9/23 36/3 43/23 52/1 60/4 60/4
comes [3] 38/16 49/11 63/23
coming [4] 12/10 20/17 20/22 43/22
comment [2] 10/8 48/6
commentary [1] 47/19
commented [1] 61/11
comments [4] 6/9 6/11 42/20 60/23
commercial [8] 11/17 12/5 24/6 24/11 24/21 24/25 25/4 25/11
commingled [1] 19/16
Committee [1] 42/10
common [2] 10/15 54/13
comparable [1] 29/21
Compared [1] 35/24
compensate [1] 26/13
compensation [5] 11/22 31/7 53/25 62/3 62/12
compensatories [2] 54/11 54/12
compensatory [16] 14/5 33/6 33/6 33/8 35/11 35/16 35/17 54/7 54/8 65/18 65/20 66/18 66/23 67/2 67/4 67/19
competent [1] 48/3
competing [1] 46/21
complaining [1] 56/24
complaint [2] 55/23 55/24
complaints [1] 56/1
complete [1] 13/18
completes [1] 38/20
completing [1] 39/13
completion [2] 30/2 39/9
complex [2] 8/10 13/24
complicated [3] 14/2 64/12 64/14
complied [1] 54/4
comply [6] 57/16 58/17 58/19 66/12 67/11 67/14
complying [1] 57/21
computer [4] 2/15 23/8 47/13 50/25
computer-aided [1] 2/15
computer-submitted [1] 23/8
concern [3] 48/8 52/4 63/6
concerned [1] 18/22
concerns [5] 48/17 48/18 48/19 61/12 61/20
concluded [1] 7/19
conclusions [3] 15/5 15/10 40/16
concurrence [1] 12/16
conditionally [1] 11/1
Condominiums [1] 59/6
conduct [2] 7/13 15/11
conducting [1] 15/3
conference [1] 43/17
conflict [3] 8/17 8/22 9/9
connection [1] 44/2
conservative [1] 16/14
consider [3] 49/25 63/19 64/19
considerable [2] 6/22 18/10
consideration [1] 50/2
considerations [1] 66/9
considered [4] 18/7 26/13 31/7 63/21
considering [1] 39/12
constantly [1] 40/9
consume [1] 10/2
contact [1] 19/24
contaminants [1] 23/21
contaminated [2] 53/14 53/14
contemplated [1] 8/22
contending [1] 48/9
contested [2] 15/19 46/21
contesting [1] 56/9
context [1] 25/3
contingent [1] 39/8
continue [1] 49/22
conversations [2] 46/14 46/14
conveyance [1] 46/22
convince [2] 7/24 15/6 60/14
copy [1] 21/18
corpus [1] 9/24 10/2 11/15
correct [7] 6/7 37/5 37/12 51/6 56/18 66/10 69/19
cost [4] 10/1 12/1 26/14 26/22
cost-effective [3] 10/1 26/14 26/22
costs [4] 9/23 10/15 19/23 36/16
coughing [1] 45/10
could [7] 7/17 7/24 27/16 27/18 27/20 29/10 36/18 36/22 57/9 57/10 67/20
couldn't [1] 37/6
counsel [7] 4/17 5/21 6/9 6/10 6/16 7/10 7/23 8/4 8/17 9/6 9/7 9/7 10/12 15/25 16/3 17/17 19/18 42/10 50/11 60/23
couple [4] 13/16 20/22 38/13 44/12
course [5] 6/5 6/24 7/16 31/16 47/4
court [53] 1/1 2/9 5/15 7/11 9/1 10/11 10/14 13/20 14/11 14/15 15/2 16/5 19/8 20/18 22/15 22/18 22/25 25/6 27/9 27/10 32/12 32/18 32/20 33/7 37/24 38/7 40/24 41/11 41/19 41/21 42/6 42/15 43/1 44/8 44/15 49/2 52/1 53/21 57/5 57/11 57/12 57/21 58/4 58/16 58/20 58/22 61/1 61/18 62/17 68/8 69/18 69/18 69/23
Court's [3] 15/7 19/19 40/16
Court-appointed [5] 9/1 32/18 32/20 33/7 61/18
courts [3] 23/23 24/7 24/23
covered [5] 53/15 54/25 55/2 59/11 61/2
created [3] 22/25 38/6 67/24
credence [1] 27/23
crew [1] 24/8
crews [1] 25/12
criteria [4] 23/22 29/18 29/19 30/17
crowd [1] 4/5
crucial [1] 63/2
culminated [1] 43/2
current [3] 24/14 39/15 61/18
currently [1] 39/12
Cypress [1] 52/11

# D

damage [28] 7/3 7/6 8/14 8/20 9/13 9/20 11/11 11/23 12/18 12/20 14/6 23/20 23/24 24/5 25/1 26/2 26/25 31/2 35/15 35/18 40/23 41/5 54/9 54/14 66/16 66/17 67/2 67/18
damaged [1] 24/18
damages [30] 4/13 7/18 14/7 15/18 23/15 23/16 24/4 24/12 24/19 25/1
26/9 33/6 33/6 33/8 35/11 35/12 35/17 35/17/17 41/6 54/7 54/8 58/23 58/23 59/1 65/18 65/21 66/18 66/23 67/5
data [16] 12/2 12/3 28/11 28/24 34/18 34/23 35/4 47/3 47/3 47/7 47/14 47/16 47/17 47/19 62/1 63/16
database [2] 35/5 39/2
date [1] 69/2
dates [1] 23/11
day [2] 36/23 69/13
days [1] 7/11
deadline [5] 22/20 22/22 36/4 56/20 60/8
deadlines [1] 55/25
deals [2] 33/4 38/5
debate [1] 25/7
December [5] 22/23 36/2 43/19 52/1 52/7
December 15 [4] 22/23 36/2 52/1 52/7
decide [1] 65/7
decided [1] 57/15
decision [5] 7/3 27/19 27/20 43/19 56/25
declaration [2] 13/11 14/21
deed [3] 46/6 64/5 64/12
deeds [1] 52/25
deems [1] 64/20
DEEPWATER [13] 1/4 4/9 11/11 13/9 17/24 18/3 18/16 19/25 26/24 31/15 32/9 40/25 49/23
Deepwater Horizon [8] 4/9 11/11 19/25 26/24 31/15 32/9 40/25 49/23
Deepwater Horizon II [3] 17/24 18/3 18/16
deficiency [1] 18/21
definitely [2] 15/20 36/12
definition [1] 53/20
definitions [1] 46/18
denied [5] 13/20 27/10 35/4 35/4 35/8
deny [1] 35/5
depositions [1] 40/9
Despite [1] 62/8
Destin [1] 59/10
detailed [3] 15/4 47/11 47/11
details [3] 51/22 56/16 65/22
determination [4] 11/10 50/3 51/4 51/18
determinations [7] 7/17 11/22 27/24 28/12 30/4 46/23 48/25
determined [6] 9/11 10/18 11/2 36/21 37/2 58/15
develop [3] 17/22 23/13 26/12
developed [8] 10/9 17/20 22/7 22/14 26/20 27/7 38/2 47/4
developers [1] 29/12
DHEPDS [1] 20/3
did [22] 5/10 5/10 9/2 15/17 17/25 19/21 20/3 20/4 20/11 26/6 26/20 32/21 32/21 32/22 33/24 40/7 43/6 51/1 54/20 58/11 60/4 68/13
didn't [18] 16/6 27/15 27/16 56/2 56/5 56/7 57/7 57/7 57/16 57/25 57/25 58/17 59/14 62/5 62/9 66/12 67/12 67/14
different [8] 9/22 33/25 34/19 41/13 46/10 49/5 53/18 65/13
difficult [2] 8/10 14/2
direct [2] 19/24 20/20
directly [2] 27/19 40/1
disagree [1] 66/13
disagreed [2] 27/18 27/19

**D**

discretion [2] 65/10 66/10
discussed [1] 23/23
Discussion [1] 41/7
discussions [4] 7/1 8/3 8/11 61/12
disinterested [2] 17/21 17/21
dismissed [3] 15/22 44/5 67/12
displace [1] 15/17
disseminated [1] 19/21
distinguishing [1] 42/22
distribute [2] 38/12 38/21
distributed [2] 12/17 13/2
distribution [54] 9/25 10/9 11/6 11/9
11/13 17/16 17/19 17/22 18/6 18/14
18/23 18/25 19/4 21/25 22/7 22/14
22/17 22/24 23/13 26/5 26/20 28/6
29/17 30/1 33/4 34/11 35/19 37/20
38/2 38/6 38/10 38/14 38/15 43/24
45/13 45/20 45/22 47/1 47/2 48/23
49/7 49/9 49/11 49/13 49/17 56/8
56/11 56/16 56/23 59/24 60/11 61/19
66/15 67/24
distributions [3] 39/6 39/8 39/9
DISTRICT [5] 1/1 1/2 1/12 69/18 69/18
divide [1] 41/13
divided [1] 11/22
dividing [1] 9/2
do [36] 12/7 18/2 26/4 26/14 28/22
29/16 29/17 32/7 34/22 36/15 36/15
36/15 37/15 37/23 39/3 44/11 47/21
49/22 51/25 52/6 55/1 56/2 56/5 56/7
57/25 57/25 61/4 63/7 65/5 65/16
65/21 66/13 66/17 66/24 66/24 68/19
Dock [12] 11/8 14/8 23/20 23/22 23/25
24/15 24/22 25/2 25/13 28/3 34/3
46/12
document [2] 66/1 69/5
documentation [5] 47/6 48/1 62/25
64/19 64/20
documents [6] 20/18 20/18 23/2 28/24
31/24 33/12
does [3] 57/4 58/10 63/12
doesn't [3] 47/18 48/9 64/9
doing [4] 30/16 30/17 42/7 46/15
dollars [2] 16/4 27/3
Domengeaux [1] 1/15
don't [47] 4/5 4/5 16/18 24/24 25/4 28/9
28/22 28/23 28/23 32/3 32/15 34/22
36/9 36/15 36/19 37/24 40/12 44/16
45/2 45/8 45/15 46/8 46/9 48/11 49/18
50/5 50/22 51/21 52/10 52/12 52/25
54/13 57/24 58/12 58/19 59/16 60/6
64/10 64/11 64/11 65/6 65/13 65/16
65/21 67/15 67/21 68/5
donation [1] 64/13
done [9] 8/7 17/11 22/16 38/19 38/21
38/24 47/8 57/9 66/11
Donelson [1] 2/2
doubt [1] 8/1
down [4] 26/4 31/17 49/3 64/25
download [1] 21/17
Doyle [5] 2/9 69/18 69/22 69/23
drafted [1] 66/15
Drake [1] 32/14
Dry [12] 11/8 14/8 23/20 23/22 23/25
24/15 24/22 25/2 25/13 28/3 34/3
46/12
Dry Dock [11] 11/8 14/8 23/22 23/25
24/15 24/22 25/2 25/13 28/3 34/3

46/12
Dublin [1] 20/24
due [2] 7/24 27/13
duplicate [3] 27/4 28/1 36/17
duplication [1] 36/11
During [1] 6/19
déjà [1] 4/4
déjà vu [1] 4/4

**E**

e-mail [6] 19/22 19/25 20/4 20/4 20/20
21/18
each [6] 11/21 19/1 25/18 34/4 34/25
47/21
earlier [3] 21/10 28/15 29/5
EASTERN [2] 1/2 69/18
eastward [1] 31/4
economic [21] 4/13 7/6 9/20 11/11
11/23 12/8 12/18 12/20 19/25 24/19
25/1 26/25 30/19 32/5 39/9 40/25
49/23 54/23 58/23 62/22 68/25
Edwards [1] 1/15
effect [3] 7/17 7/19 30/16
effected [1] 12/2
effective [4] 10/1 26/14 26/22 69/2
effectively [3] 14/13 15/3 17/22
efficient [2] 10/1 26/14
efficiently [1] 14/13
effort [1] 27/4
egregious [2] 7/13 15/11
either [14] 7/13 7/18 16/25 20/19 32/15
53/13 53/15 53/16 54/4 54/7 54/16
56/3 64/12 65/16
elected [4] 33/2 57/1 57/1 60/12
elements [1] 13/12
eligible [7] 11/21 12/22 29/14 31/7 32/8
33/8 33/10
eliminate [1] 8/21
else [7] 12/7 25/10 40/10 50/5 52/2
52/6 69/12
end [3] 36/22 48/24 58/12
ended [2] 9/14 32/16
Energy [2] 4/11 4/14
enormous [1] 49/20
entered [3] 8/3 8/4 42/23
entire [2] 38/13 41/14
entities [3] 28/18 52/13 53/13
entitled [8] 24/11 25/23 35/12 38/18
51/24 54/10 59/1 69/20
entity [5] 41/1 41/4 46/3 46/24 52/25
equated [1] 24/16
equitable [4] 18/20 23/14 66/4 66/8
equivalent [2] 24/17 29/21
error [1] 7/25
ESQ [9] 1/16 1/19 1/22 2/3 2/6 2/6 2/7
2/7 2/8
essence [2] 12/1 63/2
essentially [1] 29/18
establish [3] 4/9 31/11 64/3
established [5] 11/4 22/21 25/21 32/12
63/24
establishes [1] 63/2
estate [1] 29/12
estimate [1] 30/14
et [6] 4/10 4/11 4/12 4/12 4/15 4/16
et al [5] 4/10 4/12 4/12 4/15 4/16
evaluate [3] 26/21 29/16 33/14
evaluated [1] 33/15
evaluating [2] 26/18 30/13 37/3
evaluation [5] 27/12 27/15 34/23 64/21

46/12
evaluations [1] 29/20
even [18] 12/4 12/6 15/20 16/16 16/18
17/1 21/11 24/4 25/4 25/9 25/21 25/21
32/1 52/5 53/22 59/25 60/6 66/1
event [3] 19/2 41/24 42/1
ever [1] 25/4
everybody [5] 4/4 5/12 30/5 57/12
57/22
everyone [3] 4/3 28/16 35/2
everyone's [1] 40/14
everything [1] 40/9
evidence [5] 8/24 18/6 48/7 48/8 62/9
evident [1] 13/15
exactly [6] 15/15 17/25 36/5 56/1 62/15
64/22
exceed [1] 48/5
except [2] 4/4 57/21
exception [5] 24/7 24/22 25/2 25/8 34/3
exceptional [1] 66/5
exceptions [1] 24/3
excess [1] 16/4
excluded [14] 12/11 29/7 29/8 29/12
29/13 29/13 30/7 31/18 32/19 32/23
33/10 45/25 55/12 62/22
exercise [2] 42/4 66/9
exercising [1] 43/12
Exhibit [1] 62/14
Exhibit 12 [1] 62/14
existed [1] 26/24
existing [2] 34/18 39/9
expenditure [1] 27/5
experience [2] 11/10 18/11
expert [4] 47/19 48/3 63/16 63/22
expert's [1] 48/6
experts [1] 46/16
explain [2] 48/3 61/9
explanation [2] 48/1 48/5
explanations [1] 63/16
explicit [1] 58/7
Exploration [1] 4/15
exploring [1] 6/21
exposure [2] 40/17 40/19
expressly [1] 62/22
extended [1] 9/2
extensive [4] 15/4 27/13 46/13 46/14
extent [4] 45/8 58/21 65/4 65/9
extraordinary [1] 66/5
extremely [1] 15/25

**F**

facilitate [1] 8/10
facility [2] 20/24 23/10
fact [8] 7/21 9/2 10/5 31/19 32/22 48/9
49/12 51/9
factor [1] 55/20
factoring [1] 34/13
factors [3] 14/22 26/13 27/1
facts [2] 9/10 66/5
factual [2] 15/7 15/10
fair [11] 11/2 14/23 17/20 18/20 19/5
23/13 35/18 40/18 40/20 42/13 66/16
fairest [1] 67/17
fairly [1] 26/13
fairness [5] 1/11 14/19 17/9 22/19 68/7
fall [5] 31/6 32/15 65/14 65/24 66/7
falls [1] 67/13
familiar [1] 18/12

**F**

family [1] 50/18
far [4] 25/8 29/2 35/22 47/7
father [3] 6/2 6/5 6/6
Fayard [2] 5/8 40/1
FCRR [3] 2/9 69/18 69/23
feat [1] 40/10
feel [1] 67/10
feels [1] 4/4
fees [4] 10/15 17/14 68/10 69/6
feet [1] 11/12
felt [2] 27/25 35/16
few [4] 7/11 10/10 26/25 44/11
Fifth [17] 7/24 13/19 14/16 14/23 15/7
15/12 15/19 18/2 18/15 19/6 25/5
27/10 27/21 43/1 51/4 62/18 67/21
Fifth Circuit [17] 7/24 13/19 14/16
14/23 15/7 15/12 15/19 18/2 18/15
19/6 25/5 27/10 27/21 43/1 51/4 62/18
67/21
file [21] 11/5 19/25 21/13 23/4 23/4
28/9 28/23 29/15 30/10 33/8 33/9
33/11 36/9 36/10 37/7 37/9 37/15 51/1
51/20 52/7 56/1
filed [23] 7/10 8/4 15/21 16/9 16/22
18/11 22/15 22/17 22/25 29/20 32/16
33/1 37/1 38/7 50/11 51/2 51/4 55/23
55/23 58/9 61/12 69/3 69/8
files [2] 33/14 34/20
filing [3] 22/20 38/23 50/21
filings [1] 38/9
fill [1] 23/7
final [8] 13/18 16/15 18/19 42/14 42/23
44/6 60/18 69/2
finally [3] 18/25 21/12 44/2
find [4] 14/23 47/5 62/5 62/9
finding [1] 44/6
findings [3] 7/12 15/5 40/16
fine [3] 45/21 63/19 64/25
first [20] 5/21 6/15 14/4 17/1 20/22
20/23 22/1 22/9 22/10 27/2 28/20 29/2
29/23 29/24 30/2 32/15 44/15 60/23
61/11 68/5
Fisheries [1] 4/15
fisherman [1] 24/11
fishermen [8] 11/17 12/5 17/3 24/6
24/21 24/25 25/4 25/11
fit [1] 34/1
focus [1] 32/7
focused [4] 7/1 13/23 14/7 40/9
folks [3] 53/24 59/19 59/23
follows [1] 14/17
forced [1] 14/9
foregoing [1] 69/19
form [9] 20/1 23/8 23/9 28/9 28/23
47/17 48/1 55/24 63/1
formally [1] 4/18
forms [5] 21/16 23/1 35/23 36/1 52/7
formula [6] 31/7 31/13 31/24 32/8
33/12 52/5
formulas [1] 31/10
forth [3] 5/22 21/8 46/5
fortiori [1] 14/17
forward [2] 43/8 43/13
forwarded [1] 20/9
found [2] 18/21 62/2
four [1] 62/16
four years [1] 62/16
frameworks [4] 18/15 27/7 27/8 27/11

Frankly [1] 30/18
free [1] 20/4
full [1] 52/10
function [1] 10/19
fund [2] 26/17 45/2 45/7
funds [5] 8/16 11/21 17/11 34/4 41/13
further [4] 13/4 17/18 21/15 60/7
future [7] 22/20 35/17 65/18 66/24
66/25 67/7 67/8

**G**

Galan [3] 52/11 52/12 52/13
Garden [6] 19/14 23/10 43/10 43/21
46/15 68/15
Garden City [5] 19/14 23/10 43/10
43/21 46/15
Garden City's [1] 68/15
gas [1] 29/12
gave [3] 12/15 53/21 55/25
general [4] 6/16 15/18 24/19 51/22
generally [7] 11/14 11/21 13/14 14/22
24/16 28/17 35/10
generated [1] 47/13
gentle [2] 40/2 40/3
get [27] 4/5 7/7 8/8 9/21 10/10 20/4
22/2 23/4 24/11 25/13 25/17 30/20
34/15 35/17 36/6 36/8 37/22 38/19
39/4 40/8 40/8 49/3 49/17 59/21 59/25
65/18 67/7
getting [4] 21/3 36/23 52/5 67/8
GIS'd [1] 47/13
give [11] 6/3 18/5 22/6 23/10 27/23
31/23 34/16 35/21 64/4 64/24 66/16
given [3] 64/21 64/23 68/21
giving [2] 5/21 43/23
GmbH [1] 4/12
go [15] 6/11 14/21 21/13 22/4 22/10
26/4 30/12 32/10 37/21 39/7 41/10
43/8 45/6 45/12 64/6
go-to [1] 37/21
goal [2] 22/6 40/8
goes [3] 15/9 25/8 62/5
going [51] 5/17 6/3 6/15 6/17 9/20
11/15 11/16 11/24 14/19 16/19 27/2
28/7 28/25 30/12 30/14 31/13 31/20
31/22 31/23 31/24 33/15 33/17 34/7
34/7 34/22 35/5 35/6 36/1 36/6 36/10
38/11 38/17 38/19 38/21 39/4 39/5
40/11 43/13 45/11 47/20 47/21 47/22
48/15 49/3 59/25 61/25 63/3 63/20
68/2 68/19 69/8
gone [1] 68/16
good [27] 4/3 4/3 4/20 4/22 4/24 5/2
5/3 5/4 5/8 13/8 13/9 17/4 18/19 19/13
20/15 30/23 36/1 39/20 39/21 42/18
43/22 44/21 50/14 53/10 53/11 64/1
69/13
got [9] 6/17 12/7 33/5 33/5 36/14 52/4
64/13 67/2 67/4
gotten [7] 30/14 31/14 35/16 65/3
65/17 66/23 67/3
government [8] 46/24 48/2 62/20 63/1
63/4 63/7 63/15 63/21
governments [1] 29/9
Grand [1] 44/23
Grand Isle [1] 44/23
granted [5] 10/17 22/12 24/3 24/7
27/11
grasses [1] 49/3
great [1] 63/25

gress [2] 7/12 44/6
group [6] 19/14 29/3 29/8 33/5 37/13
55/24
groups [5] 26/8 26/11 28/18 33/23 58/5
guess [3] 29/3 36/22 51/14
guidance [2] 40/4 52/2
GULF [3] 1/5 4/9 59/9
GulfSpillPunitiveDamagesSettlement.co
m [2] 21/21 37/19
guts [1] 34/11

**H**

had [56] 7/6 7/7 8/16 9/18 9/19 10/18
15/22 16/22 18/4 18/10 20/2 20/14
20/18 20/21 21/2 22/12 23/16 23/20
26/2 26/3 27/8 27/9 27/13 29/4 29/5
30/15 32/16 33/7 37/2 37/18 43/1 43/4
44/15 44/17 46/5 46/13 46/14 46/25
47/1 52/4 52/20 55/22 55/22 55/23
56/7 56/22 58/3 58/5 58/8 60/4 60/5
60/9 60/9 61/12 62/21 68/25
Halliburton [38] 1/21 4/11 4/14 5/5 5/6
6/10 7/4 7/10 7/13 7/18 7/21 8/6 8/12
8/14 10/13 10/22 10/24 12/24 12/25
15/20 19/15 21/4 39/19 39/23 39/24
40/18 40/18 41/2 41/12 41/16 41/21
41/23 42/4 43/4 43/6 43/15 43/17 61/3
hand [1] 57/24
handle [1] 20/25
handled [5] 20/7 20/19 21/3 21/4 39/3
happen [1] 8/1
happened [3] 35/22 50/23 51/23
happens [1] 12/14
happy [3] 19/7 61/1 61/9
hard [1] 21/18
harmless [1] 7/20
has [51] 5/12 10/4 10/11 11/7 11/19
12/13 12/17 14/12 15/4 15/21 16/5
16/24 20/14 21/4 24/24 24/24 25/4
27/2 28/7 28/16 29/17 32/11 34/12
36/20 36/21 38/8 38/13 39/12 40/22
41/19 42/3 42/15 43/9 44/8 46/16 47/6
47/9 49/24 52/3 53/13 54/12 57/6
57/15 58/14 58/15 58/16 62/19 63/4
63/23 65/17 68/5
hasn't [2] 21/11 25/6
have [165]
haven't [4] 60/18 61/15 65/3 68/22
having [3] 17/21 24/4 24/25
he [41] 10/10 11/14 11/19 15/9 18/5
18/7 18/10 18/12 38/11 38/13 38/17
38/17 38/20 38/21 41/18 43/17 43/18
43/23 43/25 44/17 46/16 48/2 49/1
49/20 49/21 50/2 52/17 52/18 52/20
52/20 61/14 61/16 61/24 63/7 63/9
63/11 63/15 63/24 64/20 65/4 65/5
hear [2] 21/24 44/13
hearing [3] 1/11 22/19 49/8
heavily [2] 15/19 47/3
held [1] 41/4
help [2] 63/17 63/24
helpful [2] 44/1 61/10
her [3] 40/4 40/12 40/12
here [38] 4/5 4/18 4/25 6/17 10/6 14/18
14/25 16/20 18/2 19/14 21/6 22/6
22/19 25/4 28/5 33/9 45/11 48/21
48/22 49/19 50/9 50/12 51/13 51/16
52/12 52/14 52/15 52/20 52/22 53/3
53/7 56/16 57/23 57/24 57/24 60/19
62/22 67/2

## H

Here's [1] 65/17
Herman [10] 1/18 1/18 1/19 4/20 6/13
13/5 13/7 40/2 42/21 43/10
HESI [2] 6/21 7/8
hey [2] 24/10 58/10
higher [3] 10/24 62/3 62/11
highest [1] 26/3
him [4] 18/5 43/17 43/23 60/14
himself [3] 10/11 42/12 48/12
hired [1] 63/22
his [16] 6/2 10/9 11/14 38/10 39/12
43/16 43/18 43/23 44/1 50/3 52/12
52/13 62/21 63/23 64/2 65/12
historical [1] 24/23
history [1] 64/13
Hobson [2] 52/15 52/15
hold [2] 7/20 45/3
holding [1] 7/12
homes [2] 59/8 59/8
honest [1] 35/5
honestly [1] 34/10
Honor [38] 4/20 4/22 5/4 5/8 5/16 6/14
7/24 8/23 8/25 9/17 13/5 13/8 13/17
14/20 15/17 17/24 18/19 18/21 19/13
21/20 21/23 39/20 43/14 44/2 44/8
44/21 50/7 50/14 53/10 53/12 57/14
58/21 59/18 60/3 60/17 60/25 61/5
68/15
Honor's [1] 44/5
HONORABLE [1] 1/11
hope [1] 36/13
Hopefully [1] 37/13
HORIZON [13] 1/4 4/9 11/11 13/20
17/24 18/3 18/16 19/25 26/24 31/15
32/9 40/25 49/23
Horizon II [1] 13/20
host [1] 14/5
hourly [1] 40/13
house [1] 46/5
Houston [1] 1/23
how [24] 6/16 8/18 8/19 9/16 14/9 16/8
16/8 18/6 19/11 25/7 25/25 30/12 31/1
31/9 33/13 34/1 34/2 34/11 41/17
49/18 54/14 58/12 60/20 65/20
However [1] 25/3
huge [1] 12/1

## I

I'll [6] 13/5 25/16 48/20 64/17 66/2 68/4
I'm [27] 5/17 6/15 19/13 19/14 22/5
24/10 24/11 25/13 31/22 40/11 44/11
45/12 48/9 48/15 49/2 49/21 50/21
51/13 53/5 54/15 57/24 60/18 66/13
67/7 68/2 68/17 68/19
I've [1] 67/2
idea [2] 34/16 57/22
identical [1] 10/25
identified [4] 25/18 25/19 26/7 29/5
identify [7] 5/14 26/12 26/12 26/21 28/7
28/17 36/16
if [59] 12/6 13/21 17/24 18/21 19/3
19/23 20/8 20/9 21/17 22/3 22/10 23/6
24/14 27/14 27/16 27/18 27/19 30/14
31/6 32/1 33/5 35/1 36/13 36/14 36/15
36/20 37/13 37/14 37/24 38/2 38/16
38/18 44/16 46/5 48/9 49/16 50/3 52/2
54/11 55/21 57/7 58/8 59/22 60/1
61/10 62/2 62/3 62/9 62/21 63/15

## 

63/24 65/6 65/13 65/14 66/8 67/10
67/11 67/13 67/14
ignore [1] 58/18
II [4] 13/20 17/24 18/3 18/16
III [1] 2/8
impartial [1] 17/20
important [4] 9/24 27/1 27/23 62/15
imposed [2] 53/24 57/6
impressive [1] 16/1
improperly [1] 58/5
in [238]
In re [1] 4/8
Inc [3] 4/11 4/15 4/15
inclined [1] 68/18
include [7] 26/6 35/7 41/8 47/25 48/6
69/9 69/10
included [5] 17/5 20/13 25/24 41/22
68/23
includes [1] 20/17
including [5] 1/7 20/1 20/18 40/21
57/12
increased [2] 10/23 12/25
indeed [1] 48/13
indemnity [1] 7/19
independent [2] 27/17 48/1
INDEX [1] 3/1
indicated [3] 24/21 26/16 39/12
indication [1] 35/21
individual [6] 21/1 26/18 41/8 55/23
56/1 69/5
individually [1] 50/17
individuals [2] 53/13 53/18
industries [1] 29/11
industry [2] 29/12 29/13
infinitesimally [1] 16/18
information [13] 23/2 28/22 31/20 37/20
37/22 39/1 41/18 43/17 43/23 43/25
47/10 50/2 51/8
infrastructure [1] 11/10
initial [1] 19/21
input [3] 9/5 10/11 18/4
inquired [1] 58/9
inquiries [1] 20/19
instead [1] 14/9
instructions [1] 19/17
insurance [1] 29/13
intend [2] 51/25 52/7
intended [1] 8/13
intent [2] 57/20 58/11
interest [5] 24/16 26/3 45/23 46/4
46/11
interested [1] 9/6
intervene [1] 17/2
intervened [1] 8/9
intimately [1] 9/18
into [17] 8/3 8/4 8/5 12/23 23/9 25/14
42/23 43/2 47/12 47/13 49/3 50/1 50/3
62/2 62/5 62/11 63/18
invited [1] 18/5
involved [6] 14/5 18/9 28/18 34/17
39/25 41/16
is [178]
Isle [1] 44/23
isn't [3] 19/4 46/4 54/6
issuance [1] 40/16
issue [12] 15/16 15/18 18/21 19/3 41/9
47/1 51/5 57/11 61/24 64/2 65/17 68/3
issued [6] 7/11 15/4 41/9 55/20 68/22
69/5
issues [13] 5/23 6/18 12/24 14/1 42/9

## 

45/1 45/22 47/5 47/23 48/20 49/21
53/1 65/9
it [105]
it's [34] 5/13 13/15 16/10 16/24 18/16
18/19 18/20 23/6 23/8 23/9 29/7 36/22
37/2 37/24 39/2 39/5 48/23 49/18
52/11 52/13 53/5 62/3 62/15 62/16
62/16 62/19 63/23 64/14 64/14 65/13
65/22 66/14 67/21 69/7
items [2] 20/8 20/11
its [7] 7/11 11/8 14/8 40/16 40/19 42/4
43/7
itself [9] 9/24 18/18 45/17 48/9 48/22
49/8 51/19 56/10 60/16

## J

JAMES [1] 1/16
Jefferson [1] 1/16
Jim [3] 4/22 18/8 40/2
job [2] 25/24 35/15
Joe [1] 40/2
Joe Rice [1] 40/2
John [2] 4/10 4/12
John M. Petitjean [1] 4/12
joinder [1] 55/24
joinders [1] 20/2
joined [1] 58/5
JUDGE [45] 1/12 4/24 6/8 8/8 8/9 8/25
9/4 9/11 10/6 10/18 10/20 10/22 12/15
22/5 22/11 25/16 27/19 30/18 31/23
32/24 34/10 35/13 37/12 37/18 38/1
39/17 40/3 40/6 41/15 41/17 42/8
42/18 43/16 44/24 45/19 45/25 54/4
58/14 61/9 61/21 64/17 65/8 65/16
67/10 68/9
Judge Barbier [2] 4/24 42/18
Judge Shushan [2] 8/9 40/3
Judge Wilkinson [5] 9/4 9/11 10/6
10/18 45/19
Judge Wilkinson's [2] 43/16 68/9
judgment [1] 44/6
judicial [1] 46/23
jump [1] 22/3
June [11] 19/22 20/16 21/16 22/16
22/25 23/3 35/23 38/8 56/19 56/24
69/4
June 13 [1] 56/19
June 15 [4] 19/22 20/16 21/16 69/4
Juneau [37] 2/6 6/1 6/3 9/18 10/4 10/9
11/7 11/13 11/25 12/3 12/13 12/17
16/24 17/17 18/4 18/8 21/14 21/24
22/5 38/3 38/6 39/12 43/21 43/22
43/25 44/25 45/8 46/13 46/17 46/25
47/16 47/25 48/12 48/25 51/23 60/14
61/8
Juneau's [3] 16/11 49/19 51/17
juridical [1] 41/1
just [41] 10/10 13/16 13/24 14/25 15/10
16/10 16/23 20/15 22/11 23/10 24/11
25/3 28/24 28/25 34/16 34/22 35/24
36/16 37/10 38/11 38/21 38/24 39/4
42/20 48/20 49/18 49/23 52/1 52/6
54/6 54/13 55/24 58/11 58/18 58/18
60/18 61/22 65/1 66/9 66/10 68/4

## K

Katz [1] 1/18
KERRY [4] 2/3 4/24 16/19 42/18
Kevin [2] 2/7 50/15
Kevin Schoenberger [1] 50/15

**K**

killed [1] 7/22
kind [13] 13/14 13/24 14/25 19/3 25/14
26/3 26/13 29/7 34/10 37/21 38/9
58/25 68/25
Kinsella [2] 19/18 43/21
Klonoff [4] 13/14 13/25 14/24 15/24
Klonoff's [2] 13/11 14/21
knew [1] 59/23 60/10 60/10
know [25] 4/5 16/7 16/9 24/24 25/5
30/4 32/3 36/19 36/19 37/2 37/11
37/14 40/6 44/12 44/16 48/11 49/20
50/5 51/21 56/1 57/23 60/1 61/12
65/13 65/22
knowledge [2] 11/10 18/10

**L**

LaCount [2] 2/6 19/14
lady [1] 40/5
Lafayette [1] 1/17
Lafitte [1] 44/23
laid [1] 47/14
land [1] 46/24
lands [1] 60/15
language [7] 41/8 46/17 46/25 61/14
61/16 61/18 64/17
large [4] 29/15 31/18 32/23 33/23
largely [6] 18/15 18/16 26/23 31/3 31/4
34/8
largest [1] 29/3
last [6] 20/21 43/19 44/25 53/4 53/5
66/2
late [2] 51/2 51/4
later [3] 7/11 10/23
law [5] 15/18 23/17 24/14 24/19 35/10
leading [1] 6/23
Leasing [1] 4/12
least [9] 7/21 13/22 15/6 16/9 38/19
44/12 53/5 58/25 66/14
leave [1] 57/4
leeway [1] 49/24
left [2] 56/2 57/23
legal [1] 15/8
Leger [1] 45/4
lengthy [1] 39/25
less [6] 13/24 14/2 15/23 16/17 16/21
38/18
Let [1] 61/21
let's [2] 19/11 21/24
letters [1] 46/24
level [1] 41/25
liability [1] 40/17
liaison [1] 9/7
light [2] 14/15 66/4
like [21] 4/4 5/16 16/20 21/25 27/15
27/17 33/10 35/16 37/2 38/1 43/15
44/13 49/25 52/2 56/15 57/7 57/21
58/7 59/22 60/19 65/6
likelihood [1] 54/7
likely [1] 66/8
likewise [1] 35/18
limitation [1] 55/25
line [6] 7/9 13/24 17/19 31/17 40/8 51/3
lines [2] 13/14 14/25
list [1] 67/14
listed [1] 58/3
lists [1] 20/2
litigation [2] 9/19 15/3
little [4] 15/23 20/19 40/5 65/13

live [4] 20/15 54/18 54/19 55/22
LLC [4] 1/7 1/18 19/14 52/11
LLP [1] 1/21
local [5] 29/9 29/9 29/9 46/24 62/20
log [1] 35/19
long [6] 5/12 15/2 23/22 58/24 64/13
69/1
look [10] 27/20 30/20 33/24 36/23
56/23 64/3 64/5 64/23 66/18 67/10
looked [1] 14/22 59/24 62/4
looking [4] 16/10 23/18 32/25 37/21
looks [2] 11/8 60/19
loss [3] 30/19 30/21 32/5
lot [7] 10/2 16/6 35/22 47/8 49/10
49/24 63/13
lots [1] 27/3
LOUISIANA [7] 1/2 1/17 1/20 2/4 2/10
31/5 69/19
low [2] 16/18 43/11

**M**

M. [1] 4/12
made [13] 11/23 12/13 20/15 22/14
27/24 28/12 41/12 42/20 47/9 49/15
52/24 55/11 60/18
Magistrate [4] 6/8 8/25 17/11 32/13
Magistrate Shushan [1] 32/13
mail [12] 19/22 19/25 20/4 20/4 20/5
20/20 20/25 21/17 21/18 21/18 23/8
23/9
mailed [2] 21/2 21/7
mailing [1] 20/16
Main [1] 1/22
major [4] 9/23 20/17 23/19 33/24
majority [2] 36/5 64/25
make [21] 4/19 8/24 9/25 17/16
19/24 36/13 37/24 41/18 42/6 42/22
45/5 48/25 49/2 49/5 49/16 50/3 56/24
60/14 61/15 69/7
manner [2] 9/23 53/18
many [7] 16/8 16/8 20/11 20/22 34/1
34/8 36/1
map [11] 31/5 31/5 31/6 31/6 31/12
62/4 63/1 63/5 63/15 63/21 63/24
mapping [1] 63/12
maps [8] 31/10 47/14 48/2 48/10 59/11
62/1 63/7 63/8
maritime [4] 15/18 23/17 24/19 35/10
marriage [1] 50/20
marsh [4] 46/8 47/9 48/15 49/3
marshes [1] 47/12
Martin [1] 32/14
mass [1] 58/2
massive [1] 12/8
Master [1] 42/16
masters [1] 10/7
matter [2] 42/6 69/20
maximum [1] 38/14
may [17] 5/15 8/5 12/12 17/1 17/17
33/1 37/9 37/14 45/24 47/25 48/5 50/1
51/20 51/21 51/23 68/22 68/23
May 29 [1] 8/5
maybe [7] 15/23 25/21 30/13 52/25
60/13 62/4 67/19
MD [1] 1/4
MDL [1] 4/8
me [12] 4/25 5/5 27/5 42/21 51/15
51/18 52/2 58/7 59/22 60/19 61/21
65/6
means [3] 20/1 58/24 59/13

mechanical [1] 2/15
Media [1] 19/16
meet [2] 24/15 54/9
member [9] 19/1 28/9 36/24 37/4 37/14
37/15 59/2 59/13 59/25
members [19] 9/6 10/3 15/6 16/10
16/13 16/16 16/17 17/1 18/5 19/12
26/20 30/6 53/19 53/19 54/1 57/14
57/18 59/20 59/23
mention [2] 50/1 68/13
mentioned [2] 39/24 42/3
met [1] 43/10
methodologies [1] 33/18
methodology [1] 33/16
MEXICO [2] 1/5 4/9
Michael [2] 2/6 9/18
Michelle [2] 2/6 19/14
Michelle LaCount [1] 19/14
middle [1] 46/7
might [8] 19/8 32/4 32/6 35/3 40/12
51/17 65/20 67/7
Mike [6] 12/3 16/24 17/17 21/14 22/5
32/13
MILLER [4] 2/3 4/25 42/17 42/19
million [2] 10/14 10/23
millions [2] 20/25 27/3
mind [2] 8/1 23/18
minimal [1] 42/3
minimize [1] 19/23
minimum [2] 12/21 38/15
minute [1] 25/17
minutes [1] 10/10
misinterpreted [1] 58/6
Mississippi [1] 31/3
mixed [1] 32/7
model [52] 10/9 11/6 11/8 11/9 11/13
17/16 17/19 17/22 18/6 18/14 18/18
18/23 18/25 19/4 22/7 22/24 23/13
26/5 26/12 26/20 28/6 29/17 33/4 34/6
34/11 38/2 38/7 38/10 43/5 43/24
45/14 45/22 47/2 47/3 48/23 49/7 49/9
49/11 49/14 56/8 56/11 56/17 56/23
58/24 59/24 60/4 60/11 61/19 62/8
64/16 66/15 67/24
models [3] 22/14 22/17 37/21
moment [1] 8/9
money [20] 8/18 12/14 12/19 23/14
26/17 26/18 27/6 28/1 28/13 29/2 33/5
34/11 34/15 36/14 36/16 38/12 38/22
38/24 41/14 67/4
monies [1] 12/17
months [3] 44/25 47/9 60/10
Moore [1] 32/13
moot [1] 16/24
more [12] 13/23 13/23 14/6 15/11
20/17 24/20 25/9 25/9 36/1 51/8 60/6
66/7
morning [19] 4/3 4/20 4/22 4/24 5/2 5/3
5/4 5/8 5/11 13/8 13/9 19/13 39/20
39/21 42/18 44/21 50/14 53/10 53/11
most [3] 14/11 30/18 39/14
Mostly [1] 59/8
motion [2] 14/20 17/2
move [3] 12/23 38/1 44/19
Mr [2] 12/3 45/6
Mr. [65] 6/1 6/3 6/13 6/13 10/4 10/9
11/7 11/13 12/13 13/5 13/7 16/11 18/4
18/8 21/24 26/16 39/11 39/19 39/24
42/17 42/21 42/21 42/21 43/10 43/11
43/21 43/22 43/25 44/15 44/16 44/17

# M

Mr.... [34] 44/20 45/4 45/8 46/13 46/17 46/25 47/16 47/25 48/12 48/13 48/25 49/19 51/16 51/17 51/23 52/11 52/12 52/13 52/15 52/19 52/24 53/5 53/9 58/13 60/14 60/16 61/8 61/11 61/20 62/13 63/6 64/9 65/12 68/13
Mr. Aaron [1] 44/15
Mr. Bickford [7] 44/20 48/13 51/16 52/24 61/20 62/13 64/9
Mr. Bickford's [2] 61/11 63/6
Mr. Galan [3] 52/11 52/12 52/15
Mr. Herman [5] 6/13 13/5 13/7 42/21 43/10
Mr. Juneau [24] 6/1 6/3 10/4 10/9 11/7 11/13 12/13 18/4 18/8 21/24 43/21 43/22 43/25 45/8 46/13 46/17 46/25 47/16 47/25 48/12 48/25 51/23 60/14 61/8
Mr. Juneau's [2] 49/19 51/17
Mr. Leger [1] 45/4
Mr. Miller [1] 42/17
Mr. Pat [2] 16/11 39/11
Mr. Poynter [1] 52/19
Mr. Preston [1] 52/15
Mr. Roy [5] 6/13 26/16 39/24 42/21 43/11
Mr. Salas [4] 53/5 53/9 58/13 60/16
Mr. Schoenberger [1] 65/12
Mr. Wallace [2] 44/16 44/17
Mr. York [3] 39/19 42/21 68/13
much [11] 8/18 8/19 9/18 11/20 14/6 21/22 24/20 42/16 44/10 52/9 63/12
multiply [1] 52/4
municipalities [1] 45/24
must [3] 30/10 54/3 54/4
my [23] 22/6 23/12 23/18 24/13 25/7 25/24 26/11 28/21 34/12 35/15 39/11 44/9 47/24 50/19 57/12 57/14 58/11 58/23 59/23 65/10 66/15 67/12 69/19

# N

name [1] 52/11
narrow [1] 13/23
nature [1] 18/13
Navy [1] 63/8
nearly [1] 20/21
neatly [1] 46/4
necessarily [1] 24/4
necessary [5] 5/13 14/10
need [13] 23/7 23/9 31/10 33/9 35/10 36/9 36/15 37/15 37/24 54/8 64/3 64/25 67/11
needed [1] 43/23
needs [1] 39/3
negligence [3] 7/12 15/11 44/6
negotiate [1] 16/3
negotiated [2] 7/7 15/25
negotiating [2] 6/19 6/20
negotiations [5] 8/6 39/25 42/24 43/2 43/2
neutral [6] 8/23 9/1 10/19 17/21 17/22 32/18
neutrals [11] 32/13 32/21 33/7 54/5 54/17 55/10 55/11 55/15 55/18 66/20 67/1
never [3] 32/18 55/22
nevertheless [1] 7/16
new [75]

New Class [43] 9/14 11/1 11/6 11/13 12/4 12/8 12/13 14/2 14/6 16/5 16/13 17/12 18/5 19/1 22/3 22/5 22/8 22/9 22/17 22/21 23/12 23/15 23/15 27/5 28/9 28/19 28/21 29/2 29/3 29/16 33/14 34/21 37/16 39/7 39/9 42/11 45/19 46/19 54/1 59/2 64/16 64/18 66/2
next [2] 39/13 43/20
nine [1] 16/22
Ninth [1] 24/24
Ninth Circuit [1] 24/24
no [40] 7/12 7/17 10/8 17/6 17/7 17/8 17/10 17/12 17/13 21/6 31/23 34/12 35/16 38/8 42/4 43/18 43/24 44/6 45/18 45/20 47/24 49/8 49/17 50/11 51/10 52/9 52/13 52/17 55/16 56/4 56/6 65/17 65/18 67/7 67/18 68/8 68/9 68/10 68/11 68/15
NOAA [2] 47/7 47/9
nobody [3] 38/17 39/3 52/3
none [2] 38/19 45/25
nonoiled [3] 61/25 62/5 62/11
nonrevenue [2] 46/6 46/7
nonrevenue-producing [1] 46/6
nor [1] 9/7
normal [1] 49/6
not [94]
notably [1] 17/2
note [1] 18/18
noted [2] 33/25 68/16
nothing [5] 16/2 36/15 59/21 59/25 61/5
notice [17] 5/25 11/3 17/13 19/11 19/15 19/17 19/21 19/22 19/23 20/3 20/10 20/16 20/22 21/2 42/10 43/22 68/10
notices [4] 20/13 21/3 53/23 68/16
November [2] 1/6 4/2
now [28] 4/19 5/14 7/15 11/24 12/10 14/11 15/21 16/5 16/7 16/24 22/24 27/3 31/16 31/19 32/25 36/2 38/16 40/13 44/14 47/14 47/18 48/3 51/7 56/24 58/13 60/8 62/16 62/25
number [20] 8/9 10/21 10/24 16/14 20/14 31/1 31/8 31/13 31/14 31/23 32/4 34/16 34/25 37/7 35/18 35/22 35/25 43/9 52/2 66/16
numbers [5] 9/13 31/18 32/23 41/24 47/11

# O

O'Keefe [1] 1/19
object [2] 45/15 50/21
objecting [4] 51/19 53/17 57/11 60/15
objection [23] 16/23 17/4 17/7 17/8 17/10 17/12 17/13 34/12 38/8 45/1 45/9 45/13 49/5 49/16 50/11 50/21 52/3 52/14 53/4 68/8 68/9 68/10 68/11
objections [13] 6/11 11/5 16/8 16/22 17/2 17/6 17/15 17/15 44/11 49/14 52/24 60/22 68/6
objective [1] 50/3
objector [1] 53/7
objectors [6] 5/16 5/17 16/25 18/1 52/10 60/24
obligation [1] 43/8
observes [1] 13/25
obtaining [3] 58/22 58/25 58/25
obvious [2] 29/8 68/5
obviously [4] 24/14 39/24 52/23 52/25
occasions [1] 8/10

off [3] 6/21 45/5 49/18
offers [1] 55/18
office [1] 20/24
Official [3] 2/9 69/18 69/23
Ohio [1]
oil [15] 1/4 4/8 4/9 23/21 23/21 24/18 29/12 53/14 53/14 62/2 62/5 62/9 62/10 63/2 63/3
oiled [4] 48/10 61/25 62/3 62/12
oiling [5] 47/2 47/5 47/8 47/12 48/15
okay [11] 5/7 13/6 32/10 33/7 33/19 33/22 38/4 39/16 60/20 61/3 61/23
old [49] 6/7 7/2 7/6 8/18 9/13 9/15 12/2 12/7 12/11 12/16 14/3 14/4 15/1 16/11 16/25 17/12 22/1 22/4 22/8 22/17 26/24 26/24 27/8 28/2 28/7 28/11 28/16 28/25 29/25 30/2 30/5 30/7 30/8 30/15 31/24 36/9 36/14 36/20 36/21 36/24 37/14 38/2 38/6 38/11 38/20 39/6 39/8 42/12 45/20
Old Class [29] 6/7 7/2 7/6 8/18 9/13 9/15 12/2 12/7 12/11 12/16 16/11 16/25 17/12 22/4 22/8 22/17 27/8 29/25 30/2 30/7 30/8 30/15 36/9 36/14 36/24 37/14 38/2 38/6 42/12
on [102]
once [4] 20/17 22/24 38/21 41/14
one [48] 4/18 5/11 6/23 7/3 7/11 9/23 10/1 10/5 12/11 14/12 14/22 14/22 15/7 15/12 16/5 16/22 17/1 21/25 22/20 23/15 23/19 23/25 28/11 29/4 32/15 35/13 35/19 37/25 40/16 42/24 42/25 44/4 44/5 45/3 45/10 45/23 48/5 50/12 51/8 51/20 52/2 52/14 53/5 62/8 63/22 64/17 66/10 67/22
ones [2] 28/14 30/20
only [13] 7/3 16/14 16/22 34/24 35/8 35/18 40/7 42/22 43/25 49/4 52/3 55/23 69/3
OPA [1] 15/17
open [2] 18/4 25/7
operators [2] 24/8 25/12
opinion [3] 18/6 48/3 63/23
opinions [2] 14/15 46/23
opportunity [2] 11/4 56/22
opposed [1] 6/1
opt [25] 11/4 16/15 21/7 21/9 29/7 31/17 31/18 32/23 33/10 41/24 42/2 42/3 43/7 43/9 43/11 54/21 55/5 55/11 56/20 56/25 57/8 59/14 60/8 60/12 66/12
opt-out [5] 16/15 32/23 33/10 41/24 43/7 43/11 56/20 60/8
opt-outs [11] 21/7 21/9 29/7 31/17 31/18 42/2 42/3 43/9 55/5 55/11 66/12
opted [11] 16/8 29/6 30/7 32/18 42/2 53/16 54/24 55/4 55/7 60/2 66/20
opting [2] 16/17 16/21
options [1] 6/21
or [99]
order [22] 13/11 14/20 15/17 15/22 19/20 22/13 22/22 23/23 41/18 46/11 58/1 58/7 58/18 58/19 67/14 68/22 68/23 68/23 69/5 69/8 69/10 69/10
ordered [1] 22/13
orders [1] 67/9
organization [1] 42/11
original [4] 10/21 12/24 45/25 46/1
Orleans [3] 1/20 2/4 2/10
other [15] 7/13 9/6 9/7 14/11 19/7 20/1

**O**

other... [9] 22/20 24/2 25/10 37/1 53/7 54/9 56/15 59/12 65/14
others [2] 32/14 49/21
otherwise [4] 5/14 12/12 24/19 32/1
our [15] 13/10 14/20 15/13 35/4 35/7 37/21 37/24 45/8 45/13 46/3 46/12 48/8 48/17 61/2 64/11
ourselves [1] 46/9
out [55] 8/2 11/4 12/19 14/23 15/9 15/16 16/8 16/15 16/17 16/21 18/8 20/6 20/16 21/2 21/3 21/17 23/6 23/8 29/6 30/7 32/19 32/23 33/10 36/11 38/16 39/7 41/24 42/2 42/25 43/7 43/11 48/23 53/8 53/16 54/21 54/24 55/4 55/7 56/20 56/25 57/8 57/21 57/22 58/5 58/7 59/14 60/2 60/4 60/4 60/8 60/12 62/2 63/3 66/21 68/16
outlet [1] 21/7
outlined [1] 28/4 28/14
outs [11] 21/7 21/9 29/7 31/17 31/18 42/2 42/3 43/9 55/5 55/11 66/12
outside [3] 31/19 32/2 33/2
outstanding [1] 7/2
over [11] 4/4 16/10 16/12 20/6 20/16 20/19 39/25 44/25 47/14 65/11 66/11
overall [1] 18/23
overseeing [1] 15/3
oversight [2] 65/11 66/11
overturn [1] 67/20
overview [5] 5/22 6/16 19/11 22/6 23/11
own [8] 24/5 25/2 26/2 46/4 53/13 59/3 64/3 65/2
owned [2] 31/11 46/5
owners [3] 51/11 53/15 55/3
ownership [6] 24/16 24/17 46/20 46/20 46/22 64/2

**P**

Page [1] 3/2
pages [1] 48/5
paid [10] 12/19 26/19 33/6 35/8 36/23 38/13 38/18 51/11 52/6 69/4
Panama [1] 59/10
panel [1] 27/17
papers [3] 13/10 14/21 19/20
parameters [1] 38/13
parcel [1] 48/5
parcels [1] 51/8
Parish [6] 44/19 44/22 44/22 45/24 64/10 64/24
PARKERSON [1] 1/16
part [17] 7/13 19/19 25/24 26/4 29/10 29/16 30/22 33/6 33/24 39/14 40/11 42/22 43/24 58/2 62/17 63/20 65/2
partially [2] 32/5 32/6
participate [1] 59/1
participated [3] 43/15 66/20 66/21
Participating [1] 2/6
particular [6] 9/8 27/14 47/12 47/19 50/24 65/23
particularly [3] 4/17 46/20 47/7
parties [10] 4/18 7/25 9/6 19/17 25/21 29/8 29/14 31/16 53/21 68/18
party [5] 33/10 47/25 50/12 63/22 65/17
past [1] 47/9
Pat [5] 11/25 12/16 16/11 38/6 39/11

Patrick [1] 38/3
pay [1] 19/6
payment [2] 12/21 41/12
payments [1] 41/20
PC [1] 2/3
pending [3] 42/25 58/16 58/22
people [36] 12/4 12/11 16/8 16/16 20/17 21/7 21/13 23/3 24/3 25/23 28/18 29/24 30/6 33/1 33/5 34/1 34/22 36/8 44/12 48/24 56/1 56/15 57/21 58/3 58/3 59/3 59/11 64/6 64/25 65/5 65/14 66/20 67/1 67/4 67/6 69/7
per [1] 12/22
perceived [2] 9/8 19/2
percent [14] 9/12 9/13 11/15 11/16 11/17 11/17 11/18 11/20 16/17 16/20 16/21 34/7 64/6 69/6
percentages [1] 10/25
performed [2] 10/19 41/15
perhaps [2] 6/11 24/9
period [1] 40/1
person [2] 40/10 63/12
personal [3] 11/16 12/5 34/7
personally [1] 65/6
perspective [1] 67/13
persuasion [2] 40/3
pertinent [1] 15/7
Petitjean [2] 4/10 4/12
phase [13] 6/23 7/3 7/11 14/12 14/12 15/7 32/21 40/16 42/24 42/25 43/20 44/4 44/5
Phase One [10] 6/23 7/3 7/11 14/12 15/7 40/16 42/24 42/25 44/4 44/5
Phase Two [1] 14/12
phone [4] 20/14 21/18 23/7 45/3
phones [1] 45/5
photograph [2] 48/12 48/14
photographs [1] 47/11
photography [2] 47/17 48/11
phrase [1] 30/13
phrased [1] 66/13
physical [4] 23/20 23/24 24/5 25/1
physically [1] 24/18
picture [1] 51/22
pictures [2] 47/17 63/3
piece [2] 24/17 48/16
pieces [2] 20/6 20/25
place [5] 17/1 21/7 21/12 37/21 60/5
Plaintiffs' [1] 42/10
plan [8] 5/13 5/20 9/25 11/3 19/17 33/13 43/22 47/18
plans [1] 21/25
Plaquemines [6] 44/19 44/22 44/22 45/24 64/10 64/24
please [2] 4/19 5/15
point [6] 15/9 25/7 42/4 49/14 67/10 68/3
pointed [1] 18/8
points [3] 13/16 17/16 42/22
portal [2] 50/25 50/25
portion [1] 12/15
position [5] 41/16 43/18 51/16 58/12 61/17
possibility [1] 52/22 58/25
possible [7] 6/20 7/23 19/22 26/15 26/22 36/22 48/24
post [1] 20/24
posted [3] 37/20 37/23 37/25
potential [2] 7/22 40/17
potentially [1] 41/23

PowerPoint [2] 22/2 28/5
Poydras [1] 2/6
Poynter [2] 52/19 52/19
preceding [1] 42/21
predict [1] 14/9
preface [1] 44/24
preliminarily [1] 11/2
preliminary [10] 10/17 13/10 14/20 16/6 19/19 19/20 22/12 22/13 22/22 53/22
premature [4] 48/21 51/18 53/2 60/13
prematurity [1] 52/8
premise [1] 35/9
prepared [2] 22/24 59/12
presence [1] 63/2
present [7] 23/3 44/12 44/12 44/16 44/18 47/2 52/21
presentation [3] 5/21 6/1 68/16
presented [5] 42/9 42/15 43/10 49/14 68/18
Preston [2] 52/15 52/15
Pretrial [1] 67/14
pretty [4] 20/15 24/7 27/25 58/7
prevail [1] 25/22
previously [3] 14/3 43/4 62/18
principle [1] 35/13
principles [1] 35/19
print [1] 23/6
prior [2] 11/9 40/15
priorities [2] 26/4 34/14
prioritize [1] 25/25
prioritized [1] 11/13
priority [1] 26/3
pro [3] 12/19 44/17 52/16
pro rata [1] 12/19
pro se [2] 44/17 52/16
probably [5] 32/16 36/10 63/11 63/13 66/7
problem [4] 47/15 50/23 58/18 64/6
problematic [1] 30/19
problems [1] 60/20
procedural [1] 27/22
procedure [2] 5/25 21/12
procedures [1] 49/6
proceed [1] 5/20
proceedings [6] 2/15 4/1 14/12 15/4 69/15 69/20
proceeds [1] 9/3
process [17] 6/22 9/19 13/18 17/21 18/2 21/15 22/12 27/12 27/13 27/13 33/7 36/16 41/15 43/16 63/20 65/2 66/20
processing [3] 38/20 39/13 65/5
produce [1] 46/9
produced [1] 47/6
producing [1] 46/6
product [1] 65/23
Production [1] 4/15
Professor [6] 13/11 13/14 13/25 14/21 14/24 15/24
Professor Klonoff's [1] 14/21
profit [1] 30/20
progeny [2] 11/8 14/8
program [57] 11/24 12/20 17/25 18/9 19/16 19/23 20/1 20/3 20/23 27/2 27/15 27/16 27/18 27/24 28/2 28/8 28/11 28/12 28/13 28/17 28/21 28/25 29/10 29/14 29/19 29/20 29/22 30/2 30/5 31/9 31/15 31/20 31/25 32/2 32/12 32/17 32/21 33/2 33/3 33/9 33/18 34/19 35/7 36/6 36/20 36/21

**P**

program... [11]  38/12 39/2 39/10 39/14 49/24 54/14 55/10 66/21 67/4 69/4 69/9
projecting [1]  51/17
projection [2]  39/12 39/15
prominently [1]  37/25
proof [8]  31/11 45/23 46/10 46/19 46/22 47/2 48/4 65/1
proper [3]  9/11 14/18 25/3
properly [1]  65/10
properties [7]  46/4 46/7 46/7 46/11 53/1 59/4 59/11
property [47]  4/13 7/6 9/20 11/11 11/16 11/16 11/23 12/5 12/5 12/18 12/20 23/21 23/25 24/5 24/17 25/2 26/2 26/3 26/25 31/2 31/3 31/4 31/11 31/12 32/6 32/8 34/7 34/8 41/1 42/1 46/6 46/12 46/20 46/21 46/22 48/10 48/16 50/18 53/13 53/15 55/3 62/5 62/10 63/4 64/4 64/11 65/2
proportional [3]  38/12 38/16 38/22
propose [1]  46/10
proposed [5]  7/2 7/10 46/17 46/25 47/24
proprietary [5]  24/16 26/2 45/23 46/3 46/11
protect [1]  51/13
protections [1]  27/22
provide [1]  63/16
provided [5]  19/12 41/17 43/17 43/25 47/10
provides [3]  28/6 64/3 64/7
provision [7]  16/19 41/22 42/5 62/7 64/16 65/24 65/25
provisions [1]  12/13
PSC [7]  9/7 42/24 43/3 43/5 43/15 43/21 44/3
PTO [11]  54/4 55/21 57/17 57/22 58/1 58/11 58/17 60/4 60/10 66/13 67/11
PTO 60 [9]  57/17 57/22 58/1 58/11 58/17 60/4 60/10 66/13 67/11
public [6]  11/8 22/14 22/15 46/3 47/10 52/25
publication [4]  63/1 63/4 63/15 63/21
publications [1]  48/2
publicized [1]  48/23
published [4]  11/7 22/15 53/23 56/19
punitive [25]  7/3 7/18 8/14 8/20 9/12 14/6 14/7 15/18 23/15 23/16 24/4 24/12 26/8 35/12 35/15 35/18 40/23 41/5 41/6 54/9 54/14 65/21 66/16 66/17 67/17
punitives [1]  54/10
purely [1]  25/1
purpose [2]  57/10 60/3
purposes [9]  13/23 17/8 30/25 45/16 47/25 48/21 50/5 66/4 68/12
pursuant [1]  19/17
pursue [3]  24/4 60/1 67/11
put [8]  8/15 22/11 25/3 38/13 46/4 49/7 52/6 62/2

**Q**

qualification [1]  48/6
qualified [1]  48/12
qualify [5]  12/4 12/12 28/8 28/10 46/11
quality [1]  43/9
question [4]  14/7 51/10 58/8 59/18

questionable [2]  24/20 25/9
questions [3]  13/4 19/7 21/5 23/2 23/23 43/18 44/9 61/1 61/4
quickly [1]  9/21
quite [3]  4/5 24/9 38/10

**R**

radar [2]  47/11 47/18
raised [4]  14/1 58/8 61/20 61/24
raising [1]  48/21
rata [1]  12/19
rate [2]  40/13 62/3
rather [3]  27/25 41/12 68/4
rationale [2]  66/22 67/23
re [3]  1/4 4/8 27/16
re-review [1]  27/16
reach [1]  40/15
reached [5]  41/25 43/4 43/14 44/3 53/21
read [8]  46/18 48/12 58/1 64/17 64/18 66/2 66/2 67/9
reading [1]  40/12
real [9]  11/15 12/4 29/12 31/3 31/4 34/7 40/13 61/15 68/5
realize [1]  52/7
reallocate [1]  11/19
really [14]  7/2 16/23 24/2 32/4 34/10 34/13 36/13 36/24 42/20 42/21 46/1 56/8 64/11 67/10
reason [6]  12/12 37/3 49/5 53/17 54/12 55/14
reasonable [13]  9/5 11/3 14/24 17/20 18/20 23/13 40/18 40/20 42/13 66/25 67/15 67/19 67/21
reasonableness [2]  17/9 68/7
reasoned [1]  15/5
reasons [5]  10/5 24/23 51/24 55/17 69/6
rebuttable [1]  46/19
rebuttal [1]  6/11
recall [1]  13/17
recalls [1]  17/24
recap [1]  12/23
receive [7]  8/23 21/7 36/16 41/2 41/6 53/24 54/8
received [10]  9/5 12/18 20/5 21/10 29/25 35/1 35/3 54/7 55/16 67/18
receiving [1]  10/11
recklessness [1]  7/12
reclassified [1]  62/11
recognize [1]  25/21
recognized [4]  24/22 24/24 25/5 25/6
recommendation [3]  8/24 9/2 11/14
recommended [1]  12/17
record [10]  8/5 21/1 40/12 42/6 51/13 52/6 61/13 68/4 69/5 69/20
Record Document 6684 [1]  69/5
recorded [1]  2/15
records [5]  46/23 46/24 64/5 64/7 64/10
recover [6]  23/16 23/24 25/23 54/10 54/12 66/24
recovered [2]  35/11 54/10
recovering [1]  66/25
recovery [3]  23/5 59/19 67/16
rectify [2]  57/11 57/12
reduces [1]  26/18
Reed [2]  1/21 14/22
referenced [1]  40/22
regard [2]  20/7 41/5

regarding [1]  44/25
Regardless [1]  8/2
regular [1]  15/10
regularly [1]  24/7
rejected [1]  50/25
Relates [1]  1/7
relative [2]  25/14 66/5
relatively [1]  39/25
release [4]  41/3 41/6 41/8 65/19
relevant [5]  12/3 37/20 43/25 49/18 50/2
reliable [3]  46/22 64/20 65/1
relied [1]  26/23
relies [1]  47/3
rely [1]  37/6
relying [1]  27/25
remail [1]  20/11
remaining [1]  7/4
remarkable [1]  16/3
remarks [1]  44/9
remember [1]  16/18
remove [1]  57/6
Rentals [2]  15/14 15/15
repair [1]  47/5
replies [1]  60/23
reply [1]  61/2
report [1]  6/3
Reporter [2]  2/9 69/18 69/23
reports [1]  16/11
represent [3]  45/19 53/12 55/1
representation [1]  17/23
represented [5]  50/11 52/17 52/18 52/23 59/22
representing [2]  44/22 50/10
request [6]  16/23 17/13 23/7 27/16 44/15 68/10
requested [3]  43/17 44/17 52/20
requests [2]  16/15 21/18
require [2]  38/23 64/19
required [5]  13/14 23/4 41/18 55/21 63/14
requirement [9]  23/20 23/25 54/2 54/3 54/13 54/16 57/6 64/4 66/19
requirements [5]  53/24 66/1
requiring [3]  12/4 12/6 66/14
reserved [1]  11/19
reserves [2]  64/18 66/3
resolutions [1]  7/1
resolve [5]  8/13 32/22 32/22 32/22 55/11
resolved [1]  8/11
respect [11]  5/23 6/6 7/25 22/7 23/12 29/24 30/6 38/9 44/4 44/6 65/7
response [3]  16/7 61/11 63/10
rest [1]  53/19
result [4]  20/12 41/2 51/17 65/7
returned [2]  20/8 20/10
returns [1]  20/7
revenues [1]  46/9
review [1]  27/16
reviewed [1]  42/2
revoked [1]  21/10
Rice [1]  40/2
Rig [1]  4/9
right [51]  5/14 19/1 19/5 24/3 24/25 26/10 30/2 30/13 30/24 35/1 36/3 36/8 37/12 37/17 39/10 39/19 42/16 43/7 43/7 45/4 45/17 50/16 50/18 50/20 51/6 51/12 51/19 51/25 53/9 55/4 55/8 55/13 55/15 55/18 55/19 56/5 56/9

**R**

right... [14] 56/11 56/14 56/20 56/21
57/2 57/3 59/15 63/11 64/18 65/7 66/3
66/24 68/17 69/12
rights [2] 27/14 43/12
rigorous [1] 13/12
rise [1] 69/14
risk [2] 8/2 8/21
Robins [12] 11/8 14/8 23/20 23/22
23/25 24/15 24/22 25/2 25/13 28/3
34/3 46/12
Robins Dry Dock [1] 23/20
role [1] 46/8
Room [1] 2/10
Roy [9] 1/15 1/16 4/22 6/13 26/16
39/24 40/2 42/21 43/11
rule [6] 13/12 13/13 14/24 17/8 24/3
68/12
Rule 23 [4] 13/12 14/24 17/8 68/12
ruled [1] 15/17
rules [1] 63/22
ruling [6] 7/15 7/16 42/25 44/4 44/5
68/3
rulings [3] 7/25 15/8 60/18
running [1] 9/21

**S**

safe [1] 27/25
said [11] 1/14 18/1 18/2 24/23 33/1
38/17 44/8 45/4 55/17 58/10 59/24
60/7 67/10
Salas [6] 2/8 5/15 53/5 53/9 58/13
60/16
Sally [1] 8/8
same [21] 18/2 24/10 29/18 29/19
30/17 31/10 31/10 31/14 32/8 33/16
33/17 51/16 53/1 61/7 62/15 62/23
62/24 66/21 66/22 68/23 69/8
satisfied [4] 13/13 49/11 50/4 65/5
savings [3] 12/1 12/8 12/9
say [11] 15/6 42/12 48/9 48/13 48/20
50/6 51/8 57/23 58/18 64/23 68/4
saying [3] 8/8 63/12 63/9
says [9] 14/25 15/24 38/10 58/24 62/25
63/7 64/9 64/17 66/1
SCAT [10] 31/5 47/3 47/3 47/7 47/14
48/10 62/1 62/2 62/4 62/8
scenario [2] 46/12 47/16
schedule [1] 11/4
Schoenberger [5] 2/7 50/13 50/15
50/15 65/12
school [2] 29/9 44/23
scope [1] 18/13
Scott [3] 2/7 44/21 52/19
se [2] 44/17 52/16
seafood [1] 17/25
seal [1] 40/11
searching [2] 20/11 47/4
second [11] 7/19 14/9 15/16 29/6 30/8
45/3 45/10 47/1 61/22 61/24 64/2
Secondly [1] 27/7
Secour [1] 4/14
Section [1] 1/5
see [10] 4/3 20/5 21/6 26/1 35/23
49/18 52/2 60/15 60/20 68/5
seek [1] 26/20
seem [2] 13/22 27/5
seemed [1] 58/7
seems [3] 51/15 51/18 59/22

send [1] 29/1
sense [2] 18/17 34/14
sent [1] 20/6
sentence [1] 66/2
separate [2] 68/23 69/10
separations [1] 34/14
September [6] 7/9 39/13 40/15 56/20
56/24 60/9
September 2 [1] 7/9
September 23 [2] 56/20 60/9
serious [1] 8/1
served [1] 9/7
set [3] 18/7 23/22 47/22
sets [1] 50/21
settle [3] 32/14 33/2 55/11
settled [7] 31/19 32/1 41/14 54/4 54/17
55/15 55/18
settlement [119]
settlements [20] 4/19 5/24 6/17 8/12
9/3 14/11 16/1 16/4 17/6 17/9 18/24
19/16 39/7 40/8 41/2 42/13 68/6 68/7
69/9 69/11
several [6] 11/24 16/16 17/16 32/6
44/25 60/9
shall [2] 46/19 48/6
shapefile [1] 48/13
shapefiles [1] 47/13
she [4] 22/2 22/3 40/7 40/12
she's [2] 40/10 40/13
sheet [1] 5/10
shoes [1] 24/10
shorelines [1] 47/4
short [5] 9/21 16/2 20/1 47/8 55/24
shot [1] 15/2
should [8] 18/7 34/15 41/17 45/4 52/6
59/19 59/19 68/21
show [7] 14/13 46/10 51/23 54/8 57/23
64/11 65/1
showing [1] 54/6
shown [2] 48/10 48/11
shows [1] 47/7 47/19 48/14
Shrimpers [2] 50/9 50/10
Shushan [2] 8/8 8/9 32/13 40/3
siblings [1] 50/19
sign [1] 5/10
sign-in [1] 5/10
signed [2] 5/12 5/13
significance [1] 48/4
significant [2] 7/15 35/25
silenced [1] 45/5
similar [3] 43/3 47/14 52/24
simply [2] 11/7 38/10
since [5] 20/15 35/23 41/19 51/18
53/25
sir [4] 21/9 30/3 30/9 39/11
sit [1] 64/25
sits [1] 47/18
situation [7] 36/18 54/11 64/23 65/13
66/9 66/10 69/1
situations [2] 49/25 51/21
six [2] 21/10 47/9
slide [3] 22/10 25/17 28/17
slightly [1] 10/24
small [1] 37/13
Smith [1] 1/21
so [77]
so-called [1] 7/5
software [1] 2/15
solely [1] 14/7
solicited [1] 9/5

some [38] 5/16 8/10 10/7 16/25 17/25
18/21 19/3 20/16 24/23 27/11 27/23
29/14 31/16 31/17 32/12 34/3 36/11
36/19 45/1 45/10 46/15 46/16 53/23
54/24 54/24 55/23 56/15 58/23 58/24
58/25 60/20 61/12 61/14 63/16 63/16
63/22 68/3 68/21
somebody [5] 19/4 36/20 50/4 54/11
67/20
someone [2] 21/18 55/21
something [9] 23/6 23/9 24/17 25/7
52/1 52/11 55/20 58/10 63/23
sometimes [1] 40/3
sorry [2] 36/23 45/12
sort [5] 6/16 27/22 34/17 36/11 61/13
South [2] 50/9 50/10
South Texas [1] 50/9 50/10
speak [7] 5/13 5/16 22/1 44/13 44/17
49/25 52/20
speaking [1] 35/10
special [2] 10/7 44/25
Special Master [1] 44/25
specific [6] 6/18 19/2 19/3 54/16 64/15
66/4
specifically [2] 25/19 26/7
specifics [2] 11/12 65/23
spend [1] 28/1
spent [3] 26/17 34/12 49/20
spill [3] 1/4 4/8 23/21
split [1] 58/4
St [1] 2/4
St. [1] 46/5
St. Charles Avenue [1] 46/5
stages [1] 24/9
standard [10] 20/8 62/14 62/15 62/16
62/17 62/19 62/23 62/24 63/14 66/22
standing [4] 17/1 23/16 24/6 24/10
standpoint [2] 12/9 17/23
stands [1] 36/20
start [1] 22/3
state [4] 24/13 24/14 25/3 51/24
stated [2] 11/7 69/6
statements [1] 30/21
STATES [4] 1/1 1/12 27/21 69/18
status [1] 43/16
stay [3] 56/25 57/1 57/1
stayed [1] 57/10
Steering [1] 42/10
stenography [1] 2/15
Stephanie [1] 4/7
STEPHEN [1] 1/19
Steve [3] 4/20 6/17 40/2
still [9] 15/16 18/23 22/20 25/7 29/14
36/5 41/7 55/22 57/24
Street [3] 1/16 1/22 2/10
strength [1] 34/1
strengths [1] 25/15
strong [2] 25/25 34/2
strongly [1] 68/18
structure [1] 46/1
stuff [2] 63/12 63/13
stumbling [1] 15/13
subject [8] 10/13 12/16 12/20 12/21
13/3 18/19 39/14 45/1
submit [5] 28/24 31/11 33/11 62/25
63/19
submitted [6] 10/11 19/18 23/8 35/23
36/2 50/24
Subsequent [1] 6/25 53/20
subsistence [4] 11/18 12/6 24/8 25/11

**S**

successfully [1] 8/11
such [6] 24/6 26/8 46/22 48/1 48/4 48/6
sufficient [3] 18/1 61/19 64/7
suggesting [1] 47/20
suit [3] 58/3 58/15 58/19
Suite [3] 1/16 1/22 2/4
suits [1] 58/3
supervision [1] 8/7
supplied [1] 48/14
support [2] 42/8 42/14
suppose [1] 31/20
Supreme [3] 13/20 25/6 27/10
Supreme Court [2] 25/6 27/10
sure [9] 9/25 25/13 37/24 44/11 45/5
49/21 54/15 61/14 69/7
suspect [3] 31/18 36/1 36/8
sustained [1] 35/11
system [2] 46/1 47/22

**T**

take [11] 6/10 28/24 34/23 38/11 41/9
50/1 50/2 57/12 63/3 63/18 68/2
taken [3] 25/14 60/1 60/5
taking [3] 12/2 26/11 41/16
talk [3] 5/25 61/21 65/1
talked [2] 28/4 68/14
talking [1] 49/21
task [3] 23/12 26/11 66/15
tax [6] 46/6 46/9 64/5 64/7 64/10 64/11
Taylor [1] 5/5
team [1] 62/9
teamed [1] 62/4
teams [1] 62/2
tell [2] 16/11 49/19
telling [1] 60/19
tells [1] 34/19
tender [1] 13/5
terminate [2] 41/23 43/7
termination [3] 41/22 42/5 43/12
terms [8] 6/20 11/2 16/8 33/13 34/11
36/20 41/11 49/6
test [3] 24/15 24/22 54/9
Texas [3] 1/23 50/9 50/10
than [10] 10/7 14/2 15/23 16/17 16/21
20/17 27/25 38/18 41/12 49/6
Thank [19] 5/19 6/14 13/6 19/9 19/10
21/22 21/23 35/20 39/17 39/18 42/16
44/10 50/7 50/8 52/9 60/17 60/21
60/25 67/25
that [389]
that's [73]
their [16] 17/4 18/5 24/5 25/2 25/25
26/3 31/19 31/22 32/16 32/21 34/2
34/23 39/15 55/15 55/18 67/1
them [18] 12/6 19/5 20/22 25/25 26/12
26/12 26/13 27/14 28/1 29/1 54/24
54/24 55/4 60/2 66/24 66/25 67/7 67/8
themselves [6] 5/24 15/10 17/7 17/10
25/11 68/6
then [22] 6/9 6/10 6/17 7/21 8/16 13/20
13/21 15/16 17/17 18/25 24/18 25/9
28/12 32/25 34/3 37/6 49/13 50/3 56/7
65/6 65/21 67/7
theoretically [1] 36/22
there [53] 6/12 7/12 7/17 8/1 8/2 8/2
12/10 13/11 15/16 17/12 18/21 20/24
21/5 21/9 22/4 23/18 25/22 26/25
27/10 27/12 28/2 29/11 30/8 31/5 32/6
32/7 32/11 33/21 34/8 34/12 36/19
37/20 38/4 42/4 45/22 48/23 49/8 50/4
52/10 53/23 55/10 57/22 62/7 62/8
62/10 62/13 64/15 65/3 65/14 65/25
66/8 68/5 69/1
there's [22] 16/9 16/12 17/6 17/7 17/8
17/10 17/13 19/3 21/12 27/17 31/7
36/1 45/10 46/9 49/24 51/7 51/10 62/1
62/8 65/17 68/8 68/9
therefore [1] 45/25
therein [1] 69/6
these [42] 4/18 6/17 7/25 9/16 9/22
10/7 12/17 16/25 25/10 25/18 25/19
25/22 26/6 26/11 28/3 28/13 31/16
31/17 31/18 33/25 34/25 35/22 36/19
39/6 39/7 40/8 42/13 47/21 48/25
49/21 50/19 51/8 51/20 53/15 53/17
53/24 56/15 59/6 59/10 59/19 64/12
69/9
thing [4] 16/5 25/14 30/23 34/17
things [4] 32/7 47/18 64/12 67/20
think [39] 16/10 16/20 17/4 18/19 18/22
24/24 33/24 36/12 42/22 43/19 48/20
48/24 50/10 52/12 52/23 53/1 53/2
53/4 54/1 54/13 58/6 58/11 59/16 60/9
60/13 60/19 61/1 61/10 62/15 62/21
64/16 65/16 65/22 66/7 67/15 67/17
67/21 68/15 69/7
thinks [2] 19/4 50/2
third [3] 32/11 33/15 55/20
Thirdly [1] 27/13
this [110]
those [60] 4/17 7/17 9/13 11/19 14/2
16/12 16/16 20/3 20/9 20/23 21/10
21/17 23/15 24/6 25/15 26/1 26/13
27/22 27/25 28/4 28/20 29/3 29/4 29/6
29/8 29/13 29/14 29/16 29/21 30/20
30/22 32/14 33/14 33/23 34/2 34/4
34/19 35/8 35/8 35/16 41/3 41/9 41/13
43/1 43/2 44/9 44/13 44/13 46/11 47/5
47/23 48/17 53/1 58/2 58/5 59/23 60/2
60/22 67/12 67/18
though [8] 21/11 22/9 24/4 25/21 28/16
52/5 59/25 63/14
thought [1] 27/23 43/25 68/22
three [3] 28/17 33/23 60/7
threshold [1] 43/9
through [8] 13/18 14/21 16/12 19/18
20/19 55/15 55/18 64/13
throughout [1] 23/23
thus [2] 14/15 35/22
time [17] 5/18 6/19 6/23 7/21 12/8 16/6
19/9 22/16 23/1 40/1 49/3 49/17 49/20
58/9 60/8 60/9 68/20
times [3] 49/10 52/5 60/8
timing [1] 39/15
title [1] 46/23
today [8] 22/6 22/19 42/8 48/21 48/22
49/19 50/5 53/2
together [1] 32/7
told [4] 34/18 36/22 58/11 59/21
toll [1] 20/14
toll-free [1] 20/14
Toni [4] 2/9 69/18 69/22 69/23
too [7] 35/5 35/7 51/2 51/4 62/8 66/11
67/5
took [2] 43/18 43/24
top [2] 37/25 65/21
tort [1] 58/2
total [7] 8/16 16/15 20/6 26/19 34/4
34/20 35/24
totally [2] 50/22 65/14
tracked [1] 21/1
traffic [1] 20/15
transcript [1] 69/19
transcription [2] 2/15
transfer [4] 28/10 34/18 35/2 37/7
transferred [6] 28/23 34/21 34/25 35/25
36/7 39/2
transferring [1] 12/3
transfers [1] 46/23
Transocean [35] 2/2 4/25 5/1 6/10 6/22
7/4 7/8 7/14 7/18 7/20 8/2 8/9 8/7 8/12
8/14 10/13 13/1 15/20 19/16 21/4
41/14 42/17 42/19 42/23 42/23 43/3
43/6 43/12 43/15 43/24 44/3 44/4 44/7
61/6 61/7
treated [3] 33/10 33/15 53/18
tremendous [1] 27/4
trial [6] 6/23 14/10 15/4 42/24
trials [1] 47/21
tried [2] 26/4 36/13
Triton [1] 4/12
true [4] 32/24 36/12 37/8 69/19
trustees [1] 47/10
try [3] 30/14 33/24 47/23
trying [6] 27/25 29/17 33/20 41/13
56/12 58/4
turned [1] 45/5
Tusa [4] 2/9 69/18 69/22 69/23
two [17] 6/17 9/3 13/2 13/3 14/12 15/11
20/23 23/18 29/23 32/15 39/7 40/21
41/13 45/22 48/5 48/17 69/9
type [8] 25/23 28/8 30/19 32/9 53/1
55/1 55/23 58/23
types [7] 25/15 28/3 28/5 28/13 29/4
34/19 62/21

**U**

U.S [5] 13/20 19/6 25/6 27/10 43/1
ultimate [2] 27/24 51/17
ultimately [4] 8/4 8/11 25/22 51/3
unclear [1] 16/24
undeliverable [1] 20/7
under [29] 8/7 8/18 11/24 12/12 12/14
13/13 14/8 14/24 16/2 17/8 23/16
24/19 29/18 29/22 31/14 34/3 35/9
41/7 42/5 43/7 46/12 47/16 48/25
51/17 53/25 59/11 68/2 68/12 69/4
underlying [3] 9/19 65/20 66/18
understand [18] 29/25 38/8 45/2 45/7
48/18 51/15 52/9 57/24 58/12 60/16
63/6 63/10 63/12 63/13 63/17 63/24
64/15 69/7
understandably [1] 37/10
understanding [3] 39/11 54/15 69/19
understood [1] 58/4
undertook [1] 9/4
undo [1] 15/7
unfairness [1] 19/2
unfold [1] 14/10
unfolds [1] 60/20
uniformity [1] 33/20
unilaterally [1] 10/23
unique [6] 49/25 51/20 64/23 65/14
66/9 69/1
UNITED [4] 1/1 1/12 27/21 69/18
United States [1] 27/21
unless [4] 5/13 13/4 44/8 54/10

## U

Unlike [1] 68/25
unnecessarily [1] 10/3
unnecessary [1] 27/5
until [4] 23/3 38/20 60/4 60/4
up [23] 6/10 6/23 8/15 9/14 9/21 10/14
 18/7 22/2 27/15 30/8 32/16 38/17
 40/12 41/10 43/18 43/22 43/23 47/22
 49/7 56/12 57/23 58/12 67/9
updates [1] 37/20
upfront [1] 59/20
uphill [1] 15/5
upon [4] 12/19 18/15 40/17 43/8
us [13] 5/21 6/3 20/9 22/11 31/23
 36/16 46/2 58/10 63/16 63/17 63/24
 64/4 65/1
use [13] 5/10 18/2 28/11 28/25 31/9
 31/9 31/10 31/20 31/22 31/23 32/4
 34/23 48/24
used [8] 4/5 18/10 29/18 31/5 31/8
 31/25 32/9 33/18
using [5] 2/15 16/14 19/24 32/8 62/15
USPS [1] 20/8
utilized [3] 19/22 20/2 20/5

## V

valid [2] 7/21 48/19
valuable [1] 16/1
value [2] 35/6 35/16
values [1] 34/2
various [4] 23/2 23/2 47/4 47/12
varying [1] 24/9
vast [4] 36/5 36/5 64/24 64/24
verification [1] 64/21
verifies [1] 64/7
very [22] 5/7 7/15 8/10 9/21 9/21 9/24
 11/7 18/12 21/22 23/19 27/23 31/10
 31/10 42/3 42/16 43/3 43/11 44/10
 52/9 64/14 67/21 68/17
view [1] 28/21
viewed [2] 25/24 66/15
visitors [1] 20/16
voiced [1] 33/2
voluntarily [1] 33/2
vu [1] 4/4

## W

Wait [1] 45/10
Wallace [3] 44/16 44/16 44/17
want [17] 4/17 17/3 17/17 22/9 23/3
 23/7 25/23 26/6 32/7 40/12 42/20 49/2
 57/5 60/6 61/15 66/18 68/13
wanted [3] 8/17 52/1 60/1
wants [1] 63/15
was [109]
wasn't [2] 18/1 47/24
Waterfront [1] 59/3
wave [1] 57/23
way [14] 5/20 18/11 18/20 26/14 26/21
 27/21 33/4 41/7 48/24 54/6 58/1 65/4
 66/13 66/14
we [174]
We'll [2] 8/8 60/14
weaknesses [1] 25/15
website [16] 20/13 20/14 20/20 21/16
 21/19 21/20 22/16 22/18 22/25 23/1
 23/3 23/5 37/18 37/23 37/24 38/7
weeds [1] 49/3
week [2] 20/21 21/10
weeks [2] 20/22 20/23

well [36] 5/7 10/16 12/13 15/5 15/19
 16/4 16/10 20/20 21/3 21/16 21/23
 23/1 24/12 24/13 32/20 38/8 40/2 40/3
 40/24 42/11 46/15 46/16 46/16 49/13
 51/15 52/4 55/3 57/5 57/9 58/19 60/6
 61/14 65/24 66/11 67/7 68/17
well-reasoned [1] 15/5
went [9] 6/22 6/23 8/18 8/19 13/18
 20/16 41/14 47/12 62/2
were [68] 6/19 6/20 7/25 8/7 8/11 8/13
 9/16 11/2 12/11 12/19 16/3 16/8 18/11
 18/12 18/22 19/15 19/24 20/6 20/8
 20/9 20/11 21/6 21/9 21/10 22/17
 23/18 25/19 26/7 26/25 27/7 27/8
 27/23 28/12 28/20 29/4 29/7 29/11
 29/11 29/13 29/21 30/5 30/6 30/7 33/6
 34/2 35/4 35/8 35/8 36/13 36/19 40/14
 40/21 40/25 42/25 45/18 45/24 50/10
 51/11 53/15 53/23 54/25 55/2 57/18
 58/2 59/12 59/23 69/3 69/4
weren't [1] 67/14
wetlands [1] 31/4
what [66] 11/6 12/14 12/19 13/24 16/7
 16/18 17/25 21/19 24/2 26/4 26/23
 28/6 29/8 29/15 30/4 30/14 31/23 32/3
 32/7 33/24 34/2 34/6 34/14 34/15
 38/10 38/17 41/2 47/19 47/24 48/2
 48/21 49/1 49/18 50/5 51/17 51/22
 55/1 55/22 56/8 56/23 57/10 58/11
 58/24 59/2 59/3 59/6 59/7 59/9 60/1
 60/19 61/16 62/13 62/17 62/25 63/6
 63/14 64/9 64/22 64/24 65/1 65/5
 65/12 66/16 67/8 68/4 68/14
what's [5] 13/13 35/21 54/2 63/10
 63/14
whatever [12] 9/25 37/3 41/18 49/2
 50/2 54/12 55/14 55/17 55/25 63/17
 64/13 65/7
whatnot [1] 24/11
when [8] 7/19 25/17 41/9 46/20 50/24
 58/6 59/24 60/5
where [28] 6/16 21/7 21/13 22/11
 23/10 24/15 24/23 32/12 32/21 33/1
 36/18 36/20 37/2 37/22 47/12 47/23
 49/7 51/21 54/11 55/10 57/4 58/3
 58/12 60/10 60/12 60/15 62/1 69/1
whereas [1] 14/4
wherever [1] 19/22
whether [8] 14/23 16/25 25/10 35/3
 41/7 56/25 59/18 59/19
which [39] 6/4 10/9 13/13 13/23 14/13
 16/18 16/23 19/16 20/11 21/25 22/21
 24/6 24/16 31/3 31/4 33/17 33/18
 34/13 35/13 36/21 40/19 40/22 46/17
 46/18 47/10 48/2 48/5 48/22 49/14
 52/3 55/21 56/8 56/23 58/11 60/8
 62/20 63/15 64/4 66/19
while [3] 7/23 39/6 42/25
who [23] 4/17 8/25 9/1 9/18 17/3 20/3
 23/16 28/20 29/3 29/6 29/24 30/6
 34/25 36/8 41/15 44/11 46/15 49/1
 55/2 56/2 58/2 59/20 63/12
whoever [1] 33/14
whole [4] 10/2 35/22 57/22 63/13
wholeheartedly [1] 40/7
whom [1] 20/4
whose [2] 45/3 59/11
why [8] 4/6 13/14 57/7 57/16 57/25
 57/25 64/16 67/24
Wilkinson [11] 8/25 9/4 9/11 10/6 10/18

will [36] 5/7 10/16 12/13 15/5 15/19
 10/22 12/15 17/11 11/15 41/17 45/19
 10/2 45/16 69/9
Wilkinson's [3] 9/1 10/20 45/16
will [51] 5/20 5/25 6/9 6/10 6/11 10/10
 10/10 11/23 12/10 13/17 21/14 22/3
 22/3 24/13 25/3 26/1 29/15 29/16
 29/20 30/1 30/4 33/12 35/2 35/4 35/7
 35/23 36/8 36/10 38/18 38/24 41/2
 41/6 41/7 41/9 43/12 44/13 44/19
 48/25 49/16 49/19 49/21 54/8 57/12
 59/21 60/20 63/17 63/18 63/19 67/20
 68/3 69/9
Williams [1] 4/25
wish [3] 45/2 45/8 49/17
withdrawing [1] 32/16
withdrew [1] 32/17
within [10] 11/19 27/16 27/17 27/24
 28/13 29/2 31/6 31/12 47/9 65/24
without [4] 20/10 25/1 41/16 49/11
won't [3] 38/23 63/9 63/11
words [2] 37/1 54/9
work [6] 10/6 40/7 43/20 46/15 54/14
 64/9
worked [2] 44/24 49/24
working [3] 6/6 40/1 43/22
works [1] 64/5
world [1] 40/13
worse [1] 49/18
worth [1] 16/4
would [69] 5/16 8/1 8/23 9/12 10/2
 13/22 14/10 15/2 15/5 15/11 15/19
 15/22 17/16 18/22 19/7 21/25 24/2
 24/5 24/6 24/10 25/9 25/12 25/22
 25/23 25/25 26/8 26/12 27/5 27/14
 29/6 29/8 30/14 31/1 31/14 31/14
 31/17 31/25 32/9 34/24 34/25 35/7
 36/13 37/7 38/1 38/14 38/15 39/13
 40/6 41/23 42/6 44/13 46/17 47/16
 54/14 56/1 57/23 58/8 58/9 58/9 58/10
 60/1 60/2 60/25 61/9 61/10 62/24
 65/24 66/7 66/17
Wright [1] 1/15
writ [1] 27/10
writing [1] 68/19
written [2] 50/11 68/3

## Y

year [3] 20/25 22/16 39/13
years [7] 11/24 15/2 23/23 27/3 27/3
 31/17 62/16
yes [21] 6/8 21/9 30/3 30/9 30/11 32/3
 33/17 35/13 35/14 36/25 39/11 48/13
 49/13 50/17 54/22 55/6 55/9 59/5
 61/21 67/2 67/2
yet [6] 21/12 36/21 37/14 57/15 65/3
 68/22
YORK [6] 1/22 5/4 39/19 39/22 42/21
 68/13
you [202]
you're [5] 37/12 51/16 55/3 59/13 60/15
younger [1] 6/1
your [91]
Your Honor [35] 4/22 5/4 5/8 5/16 6/14
 7/24 8/23 8/25 9/17 13/5 13/8 13/17
 14/20 15/17 17/24 18/19 18/21 19/13
 21/23 39/20 43/14 44/2 44/8 44/21
 50/7 50/14 53/10 53/12 57/14 58/21
 59/18 60/3 60/17 61/5 68/15
Your Honor's [1] 44/5
yourself [2] 5/14 63/3

Z
zone [2]  51/1 51/9