UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE OIL SPILL BY THE OIL RIG | * | CIVIL ACTION: 10-MD-2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO ON APRIL 20, 2010 | * | SECTION "J" |
| | * | |
| THIS DOCUMENT RELATES ONLY TO: | * | HONORABLE CARL J. BARBIER |
| Civil Action Nos. 10-2771; 10-8888; | * | |
| 10-9999; and 14-1525 | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN RESPONSE
TO MOTION FOR ATTORNEY'S FEES
FILED BY WALTZER, WIYGUL & GARSIDE, L.L.C.**

**MAY IT PLEASE THE COURT:**

This memorandum is submitted on behalf of plaintiffs, Mark E. Peneguy, Edward W. Peneguy, Jr., Richard A. Peneguy, Jr., and Wendell H. Cook, Jr., in response to the "Motion for Attorney's Fees" filed by Waltzer, Wiygul & Garside, L.L. P. ("WW&G") (R. Doc. 21922) and this Court's Minute Entry dated September 15, 2016. R. Doc. 21679.[1]

---

[1] Each of these plaintiffs along with their respective family members and assignees were added as plaintiffs in these actions by Order dated August 28, 2014 and Amended Complaint filed March 10, 2015. See 14-CV-1525, R. Docs. 57 and 59. Mark E. Peneguy *et al* are filing their signed consent form as enclosed with this Court's letter to interested counsel dated September 16, 2016. R. Doc. 21680. In addition, Mark E. Peneguy *et al* filed answers to the WW&G motion and to the Wisner Donation's *ex parte* motion to deposit funds into the registry of the Court. See R. Docs. 21859 and 21860. Hereinafter, Mark E. Peneguy *et al*, their family members, donees, and assignees, are referred to as "Wisner Heirs."

1

I.      **Summary of Wisner Heirs' position.**

The Wisner Heirs confirm WW&G's statement to this Court in Note 1 of its memorandum that the Wisner Donation Committee has not approved the contingent fee amount and there has not been an audit either of fees or expenses.[2] As more particularly noted below, legally required details related to the contingent fee calculation, expenses, credits, and offsets, have not been provided by the involved attorneys to their clients and to the Court.

The Wisner Heirs agree that *Saucier v. Hayes Dairy Products, Inc., 373 So. 2d 102* (La. 1978), *on rehearing, 373 So. 2d. 114* (La. 1978) controls. *Luter v. John W. Stone Oil Dist.*, 607 Fed. Appx. 367, 370 (5th Cir. 2015). The effect of *Saucier* is that only one contingent fee is due in this matter despite there being multiple attorney-claimants to that fee. The contingent fee should be calculated in accordance with the identical tiered fee provisions found in paragraph 4(c) of the respective engagement agreements signed by the Wisner Donation with WW&G and with Herman Herman & Katz LLC *et al,* (hereinafter "Joint Venture").[3]

---

[2]    The Wisner Donation Committee is composed of representatives of each of the five beneficiaries or beneficiary groups: The City of New Orleans, the University Medical Center, the Administrators of the Tulane Educational Fund, The Salvation Army, Inc., and the Wisner Heirs, donees, and assignees. Although the Wisner Donation trust is in wind down, it is the responsibility of the Committee to continue, as it has for over 80 years, to manage the extensive assets, business dealings, and litigation involving those assets. Additional background is found in the Declaration of Cathy Norman Penland filed as R. Doc. 21922-4.

[3]    Attached as Exhibit A is a copy of the October 4, 2010 WW&G engagement agreement with the Wisner Donation previously filed as R. Doc. 14952-4. Attached as Exhibit B is a copy of the "Retainer Agreement/Contingent Fee Agreement" signed by the Wisner Donation and the Joint Venture on October 17, 2012 but effective on or about July 1, 2012. The client under both agreements is the "Edward Wisner Donation" which is defined as inclusive of the donation's beneficiaries. There are differences in the overall agreements but paragraph 4(c) in each is identical.

For the first $10 million of benefits received, the fee is eighteen percent. For the remaining benefits received, the fee is twelve percent.

The $30 million settlement between the Wisner Donation and BP is payable over 22 years without interest. BP retains the use and time value of the unpaid funds. Because the contingent fee agreements specify that fees are due only on "benefits received," fees are payable only from amounts paid by BP and received by the Wisner Donation over the 22 year payout period.

The Wisner Heirs do not object to WW&G's request for fifty percent of the proportionate contingent fee due from each payment.

Paragraph 4(c) of the engagement agreements require that the contingent fee "be based on the gross present value of benefits received by the [Wisner] Donation." No discount rate is stated. Therefore, the Court must determine one.

However, before the contingent fee can be calculated, the engagement agreements require taking case expenses into account and that certain offsets and credits be applied. In its submissions, WW&G provides details and largely complies with this Court's September 15, 2016 Order, with Local Rules 54.2 and 67.3, and Louisiana Rules of Professional Conduct ("LRPC"), Rule 1.5(c). The Joint Venture has not yet complied although it is hoped that its expected filings in this record will constitute compliance.

Without the benefit of the Joint Venture's compliance with its ethical obligations under the rules, and without the benefit of the necessary verified details, the Court cannot make the determinations necessary to properly resolve this matter.

**II.    Background.**

The Wisner Heirs are beneficiaries of the Wisner Donation, and collectively own a forty percent beneficial interest. The Wisner Heirs have a significant interest in the outcome of this

proceeding for several reasons. First, as beneficiaries, they will bear a significant financial burden of the fees and expenses that the Court finds due. Second, as beneficiaries, they were clients of the Joint Venture until July 22, 2014 when the Joint Venture told them to obtain separate counsel which they did. Third, they are included as settling claimants in the May 2016 settlement with BP.

Both on behalf of the Wisner Donation, and on its own behalf as a fee claimant, the Joint Venture deposited $2,160,011.92 into the registry of this Court pursuant to a motion and Order. R. Docs. 21746 and 21755. The Joint Venture's motion expressly states that there is a dispute and challenge to the fees and costs arising out of the BP settlement; that its motion "promotes fairness to all parties by ensuring that no payment is issued to any attorney in this case without a court order"; and that each party should be provided an opportunity to be heard. The Wisner Heirs agree and request that this Court proceed accordingly.

There are two sets of attorneys claiming fees and costs in this matter, the Joint Venture, whose representation began on or about July 31, 2012 and continues through today on behalf of the Wisner Donation, but which terminated as to the Wisner Heirs on July 22, 2014, and WW&G, who represented the Wisner Donation in the BP litigation from about October 4, 2010 until it was terminated in July 2012 and replaced by the Joint Venture.

The Joint Venture has not provided to the Wisner Donation, to the beneficiaries, or to the Court, a final and complete accounting and calculation of the fees due in this matter or of how those fees should be divided.[4] Neither has the Joint Venture provided a breakdown of the elements

---

[4] In an answer filed on September 26, 2016 to the WW&G complaint, the Joint Venture alleges on behalf of the Wisner Donation that WW&G's engagement "was not a valid contract" and that WW&G "has been fully compensated for all work performed." R. Doc. 21732. Therefore, presumably, the Joint Venture will contend that 100 percent of all fees due including the amount on deposit in the registry of the Court should be paid to it. Nevertheless, the Joint Venture should,

4

of the costs and expenses that it claims. The Joint Venture merely states in its motion that it is depositing "total combined costs" of $927,173.12.

The Wisner Donation and its beneficiaries are entitled to a complete accounting of all fees and expenses alleged to be due for the entire settlement (payable over 22 years in annual installments) before the Court entertains the question of how to divide fees or of proper disbursements from the registry. There should be no piecemeal parsing of fees or fee calculations each year as is suggested by the Joint Venture's motion to deposit.

**III.   Applicable ethical and legal rules.**

First, Rules 1.5(a) and (c) of the Louisiana Rules of Professional Conduct, entitled "Fees", adopted by this Court by Local Rule 83.2.3, states in relevant part:

> (a)   A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
>
> * * *
>
> (c)   Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

Second, Local Rule 54.2 provides;

> In all cases in which a party seeks attorneys' fees, the party must submit to the court a verified, contemporaneous report reflecting the date, time involved, and nature of the services performed.

This Court ordered WW&G to comply with Rule 54.2. Because the Joint Venture is itself a claimant to 100 percent of the contingent fee in this matter, it should also comply with Rule 54.2.

Third, Local Rule 67.3 provides in relevant part:

---

and presumably will, provide a complete accounting in accordance with its ethical and legal obligations.

5

> Funds may be disbursed from the registry of the court only upon order of a judge of this court. Counsel must file a motion for disbursement and must satisfy the court of the recipient's entitlement to the funds sought to be reimbursed.

Application of LR 67.3 has been invoked by the deposit of funds in this Court's registry.

## IV. This Court's determination should proceed only from a complete record based upon compliance with the rules.

The funds in the registry are the property of the Wisner Donation and its beneficiaries. The claimants to all or part of these funds are the Joint Venture and WW&G with any remainder after proper disbursements reverting to the Wisner Donation and its beneficiaries. However, given the nature of this proceeding, under the terms of LRPC Rule 1.5(c), this Court can only make a proper determination if the Joint Venture and WW&G comply with their ethical and legal obligations to provide a final and complete accounting of fees and expenses due with expenses broken down so that the elements can be evaluated and, if appropriate, traversed. Although a few details may require clarification, WW&G's submission appears in large measure to comply.

As to the amount deposited in the Court's registry, there is a lack of clarity as to the propriety of the amounts stated. The Joint Venture stated in its motion to deposit that it was depositing funds representing "total combined costs" of $927,173.12, and "attorney's fees" of $1,232,838.80. The Joint Venture did not state how these numbers were derived although it is obvious that these amounts are based upon only the first of twenty-two annual payments due under the settlement with BP and not the entire settlement. Responding to an inquiry from counsel for WW&G, the Joint Venture, through Soren Gisleson, stated the following in an email dated October 5, 2016:

> "…the figures are the Joint Venture's costs ($927,173.12) and attys fees ($1,232,838.80). WW&G's intervention does not have any claim to reimbursement of our costs, so how it is calculated is immaterial. The attys' fees portion is 25% of the first payment less

6

the amount the JV attorneys were reimbursed by BP for time spent while the Access Agreement was still in effect."[5]

The deficiency in this explanation is that, as to the entire settlement, including the first annual payment, several varying fee calculations are set forth in paragraph 4(c) of the engagement agreements. The Joint Venture has not stated in its filing which, if any, of these calculations it has applied and the basis – much less the validity – of its application.

Paragraph 4(c) states:

> For services rendered in connection with physical damages and restoration costs, as well as final economic loss damages, the Donation will pay Attorneys a contingency fee based on the gross present value of benefits received by the Donation pursuant to a judgment or agreement involving any defendant, or any entity related to any defendant, in the following percentages:

Following this provision is a schedule of reducing percentages applicable to "benefits received" up to $10,000,000, between $10,000,000 and $50,000,000, and over $50,000,000. Within each category three separate percentages are set out each of which is triggered by one of the following events: (i) if the matter is resolved without suit; (ii) if the matter is resolved after suit but prior to a signed Order setting the case for trial; and (iii) if the matter is resolved after the first Order is signed setting the case for trial.

There is no dispute that the Wisner Donation's claims were resolved after suit was filed. However, the only relevant case set for trial was No. 14-1525, the Access Agreement action. This was an action on a contract. It was not an action that could result in an award of general damages

---

[5] As the Court knows, the Access Agreement was the subject of discrete contract litigation, number 14-1525 on the docket of this Court (hereinafter, "Access Agreement action").

under OPA.[6] However, the remaining claims were resolved prior to a signed order setting the case for trial.

In addition, each engagement agreement sets forth hourly rates in relation to "legal services reimbursed by BP [pursuant to the Access Agreement] as part of a claim for oil spill removal/response costs," and states in paragraph 4(a), "[a]ll monthly amounts actually received by [attorneys] under this provision will be credited as an offset against any contingent fee [owed] [awarded] and payable under paragraph 4(c)."

Both engagement agreements also provide, through an example of a theoretical fee calculation, that case costs and expenses are to be deducted prior to figuring the contingent fee.[7]

The crux of this proceeding is the initial requirement that the Court determine which of the contingent fee formulas applies. The Court can only make this determination after it has been provided all relevant information as to the conditions, case expenses, set-offs, and credits that apply. In particular, the following determinations must be made:

- The "gross present value of benefits received."

- The case costs and expenses to be deducted before application of a contingent fee percentage.

- Whether the trial order in No. 14-1525 (the Access Agreement action) constitutes a "signed order setting the case for trial."

---

[6]  See the Complaint in No. 14-1525 R. Doc. 1 and February 3, 2015 Order setting Bench Trial.

[7]  Paragraph 7 of the WW&G agreement (Exhibit A) and paragraph 8 of the Joint Venture agreement (Exhibit B).

- The amount of fees reimbursed or reimbursable by BP to WW&G and to the Joint Venture pursuant to the Access Agreement to be "credited as an offset" against any contingent fee due.

## V. The position of the Wisner Heirs is stated below but must in part remain open until the facts and figures are put of record.

Given that the Joint Venture has not satisfied the requirements either of its engagement agreement or of the applicable rules, and that WW&G has provided some details, perhaps must clarify some details, and cannot provide those details which only the Joint Venture has in its possession, this matter is not ripe for decision. The Wisner Heirs and the Wisner Donation do not have all of the answers although, as clients, they are legally entitled to detailed, verifiable answers before they are required to pay a contingent fee or any claimed expenses. Under the engagement agreements, LRPC Rules 1.5(a), 1.5(c), and Local Rules 54.2 and 67.3, the burden is upon counsel to discharge their ethical and legal obligations to provide these answers, and counsel have not met that burden.

In addition, once these answers are provided, the Wisner Heirs and any interested party should have a reasonable opportunity to traverse any answer(s) that they have a question about. Once the details are known and verified, this Court's resolution should not be difficult.

### A. The matter was resolved prior to a signed order setting the case for trial.

Only the contractual action on the Access Agreement was set for trial. The principal damages action was not set for trial. In his affidavit dated November 18, 2016 (R. Doc. 21922-3), Joel Waltzer states at ¶ 73, "The Neutral Process final settlement … was paid 'in connection with physical damages and restoration costs, as well as final economic loss damages.' § 4(c). WW&G is owed a contingent fee under § 4(c)." Mr. Waltzer was significantly involved in the settlement process and knows this case as well as anyone. His citation to § 4(c) attributes the settlement to

9

the general damages claim. Consistently, the settlement agreement with BP[8] does not allocate an amount to the Access Agreement action. It is, therefore, a reasonable determination that the settlement occurred before the issuance of a signed order setting the case for trial. WW&G does not strongly advocate for a different determination.[9]

### B. Fees are payable over the same time frame as the settlement.

The engagement agreements are specific: a contingent fee is payable only on "benefits received," not on the amount of the settlement. Exhibits A and B at ¶ 4(c). The settlement is payable over a 22 year period without interest. The first payment was due and paid on or about October 1, 2016. The remaining payments are due and payable on October 1 of each succeeding year through 2037. The settlement payments are not guaranteed. They are not "benefits received" unless and until they are in the hands of the Wisner Donation. Until they are, no contingent fee is due. Any other result potentially yields a windfall for the attorneys and an unacceptable loss to the Wisner Donation and its beneficiaries. The single contingent fee should be payable over the same 22-year period in the same yearly proportion as the settlement payments.

WW&G has indicated its consent to payments over time. See Joel Waltzer affidavit at ¶ 83. The Joint Venture's motion to deposit contains an initial fee calculation based solely upon the first year's settlement payment indicating that the Joint Venture will accept payment over time.

---

[8] Entitled "Full and Final Release, Settlement, and Covenant Not to Sue".

[9] See Joel Waltzer affidavit at ¶ 77 and n. 1 where Mr. Waltzer provides the Court with optional contingent fee calculations either of which seemingly is acceptable to WW&G. The alternative would be for the Court to receive evidence on the proper allocation of the settlement amount as between the general damages case and the Access Agreement action. This evidence likely would be highly subjective and controversial and may require going into the confidential settlement discussions. Because the settlement agreement makes no allocation, the Court should undertake such an analysis only if it is convinced that it is necessary in order to determine a reasonable fee.

C.    **The calculation steps.**

As of this filing, here are the calculation steps as understood by the Wisner Heirs:

1. Determine "gross present value of benefits received."

2. Subtract reasonable expenses.

3. Figure contingent fee on resulting amount @ 18% first $10 million and 12% over $10 million.

4. Determine division of contingent fee as between WW&G and Joint Venture and allocate payments proportionately over 22 years.

5. Credits/offsets against contingent fee shares:

    a. As to WW&G share: amount previously paid by Wisner Donation to WW&G – to be determined.

    b. As to WW&G share: amounts billed to and paid by, or which should have been billed to and paid by BP to WW&G pursuant to Access Agreement – amounts to be determined.

    c. As to Joint Venture Share: amounts billed to and paid by, or which should have been billed to and paid by BP to the Joint Venture pursuant to Access Agreement – amounts to be determined.

    d. As to Joint Venture Share: Additional amounts found due to WW&G from the Wisner Donation or from the Wisner Heirs (proportionate to their fee burden).[10]

---

[10]    In their answer to the motion to deposit (R. Doc. 21860), the Wisner Heirs allege in ¶ 12: "To the extent that the Joint Venture attorneys are found entitled to fees for services rendered, the proportionate share of fees ultimately to be borne by the Wisner Heirs who are plaintiffs pursuant to the amended complaint filed in March 2015 should be set off by any amounts owed to WW&G for services rendered after July 22, 2014." Because WW&G's services after July 22, 2014 benefited all plaintiffs especially in the settlement process (see Joel Waltzer affidavit at ¶¶ 64 through 70), it is reasonable to wrap all of WW&G's fees into the single contingent fee. If the Court disagrees, the post-July 22, 2014 unpaid fees due to WW&G should be subtracted from the present value amount pursuant to paragraphs 8 and 9 of the Joint Venture's engagement agreement (Exhibit B).

11

## VI. Conclusion.

The fee calculation that this Court determines is both reasonable and proper under the engagement agreements will apply over the remainder of the 21 years that the settlement is paid out. There should be no reason for further dispute or discussion. The calculation should be automatic. This will benefit all parties and put this matter completely to rest. Therefore, it is essential that the involved attorneys provide all necessary detail to the Court, that the parties be afforded the opportunity to review and, as appropriate, traverse the details, and that the Court's determination come only after all information and positions are before it.

Respectfully submitted,

**MONTGOMERY BARNETT, L.L.P.**

By: /s/ Daniel Lund
_____
DANIEL LUND (Bar No. 12782)
E-mail: dlund@monbar.com
JOHN Y. PEARCE (Bar No. 10374)
E-mail: jpearce@monbar.com
STEPHEN L. WILLIAMSON (Bar No. 8316)
E-Mail: swilliamson@monbar.com
C. BYRON BERRY, JR. (Bar No. 21476)
E-Mail: bberry@monbar.com
3300 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-3300
Telephone: (504) 585-3200
Facsimile: (504) 585-7688
Attorneys for
Mark E. Peneguy, Edward W. Peneguy, Jr.,
Richard A. Peneguy, Jr., and Wendell H. Cook, Jr.

Case 2:10-md-02179-CJB-DPC   Document 21958   Filed 12/05/16   Page 13 of 13

13

CERTIFICATE OF SERVICE

    The undersigned attorney hereby certifies that he has electronically filed the foregoing Memorandum in Response to Motion for Attorney's Fees Filed by Waltzer, Wiygul & Garside, L.L.C. with the Clerk of Court by using the CM/ECF system on this 5th day of December, 2016, which will send a copy of the foregoing pleading to counsel of record by notice of electronic filing.

                                                /s/ Daniel Lund