## RETAINER AGREEMENT/CONTINGENT FEE AGREEMENT

1. The **Edward Wisner Donation**, as authorized by vote of the Edward Wisner Donation Advisory Committee, and through its authorized agent whose signature is found below, does hereby appoint the following to be its attorneys regarding its interests in all manners arising from the BP/Deepwater Horizon Oil Spill:

Stephen J. Herman
Soren E. Gisleson
HERMAN HERMAN & KATZ LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113

James Parkerson Roy
Bob Wright
DOMENGEAUX WRIGHT ROY
& EDWARDS LLC
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501

Calvin C. Fayard, Jr.
C. Caroline Fayard
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726

Fred Herman
Law Offices of Fred Herman
1010 Common St., Suite 3000
New Orleans, LA 70112

Walter J. Leger, Jr.
LEGER & SHAW
600 Carondelet Street
New Orleans, Louisiana 70130



EXHIBIT B

2. Definitions:

Donation refers to the Edward Wisner Donation, and its heirs, successors, beneficiaries, trustees, donees, legatees, reversionary interest holders and assigns.

Attorneys refers to all lawyers and law firms identified in Paragraph 1.

Oil Spill, BP Oil Spill, or simply Spill, refers to the oil contamination subsequent to the destruction of Transocean's Deepwater Horizon on April 20, 2010.

Property refers to all property owned and/or managed by the Donation.

3. The Donation empowers Attorneys to take any and all actions and provide such legal advice as Attorneys deem appropriate, to investigate and prosecute all claims for damages and relief against any and all parties responsible for damage to Donation property and interests, whether corporeal or not, and to coordinate, negotiate, and be the primary contact with any and all adverse or interested parties. The Donation specifically authorizes Attorneys to file suit, litigate, negotiate, and gain any provisional and final relief, whether by judgment, administrative action or consent of the parties, on the Donation's behalf in any manner consistent with Attorneys' professional judgment. The scope of this agreement include all pollution response activities, remediation, mitigation, assessment and restoration of Donation properties, all to be exercised in accordance with Attorneys' professional judgment on the Donation's behalf.

4. In exchange for the provision of services as outlined above, the Donation will pay Attorneys as a fee for Attorneys services pursuant to the LESSER OF two methodologies. The first methodology is as follows:

    (a) For legal services reimbursed by BP as part of a claim for oil spill removal/response costs, the Donation agrees to pay Attorneys $365/hr for the services of Steve Herman, Jim Roy, Bob Wright, Calvin Fayard, Fred Herman, and Walter Leger, $355/hr for the services of Caroline Fayard and Soren Gisleson, $265/hr for the services of any other attorneys from the law firms identified in Paragraph 1; and $85/hr for paralegal services, plus costs and expenses directly attributable to the prosecution of these claims.

    The Donation will be invoiced for removal/response related professional services on a monthly basis. Said fees shall be paid only upon receipt of funds from BP for said purpose.

    All monthly amounts actually received by Attorneys under this provision will be credited as an offset against any contingent fee awarded and payable under paragraph 4(c).

(b) For Attorneys' services associated with obtaining interim or partial payments of oil spill damages other than response/removal costs (such as lost income or rent), Donation agrees to pay Attorneys ten percent of the amount received from BP or Transocean, whether on a monthly, bi-annual or other basis. If interim payments of Oil Spill damages are made entirely without Attorneys' assistance, the Donation will owe no fee on that amount. If interim payment of Oil Spill damages is tendered without the assistance of Attorneys, and Attorneys' efforts subsequently result in a source agreeing to pay a greater amount, no matter how small, then the ten percent fee will be calculated based on the difference between the amount originally offered and the amount actually paid. Any payment of fees on interim payments will be deducted from any contingency fee calculated under Paragraph 4(c).

(c) For services rendered in connection with physical damages and restoration costs, as well as final economic loss damages, the Donation will pay Attorneys a contingency fee based on the gross present value of benefits received by the Donation pursuant to a judgment or agreement involving any defendant, or any entity related to any defendant, in the following percentages:

For benefits received, up to $10,000,000:
(i) 10% if the matter is resolved without suit;
(ii) 18% if the matter is resolved after suit but prior to a signed Order setting the case for trial;
(iii) 25% if the matter is resolved after the first Order is signed setting the case for trial

For benefits received between $10,000,000 and $50,000,000:
(i) 6% if the matter is resolved without suit;
(ii) 12% if the matter is resolved after suit but prior to a signed Order setting the case for trial;
(iii) 18% if the matter is resolved after an Order is signed setting the case for trial.

For benefits valued over $50,000,000:
(i) 3% if the matter is resolved without suit;
(ii) 6% if the matter is resolved after suit but prior to a signed Order setting the case for trial;
(iii) 9% if the matter is resolved after an Order is signed setting the case for trial.

5. The alternate method for payment of Attorneys Fees is the Attorneys' Agreement with the City of New Orleans which was publicly procured by the City. A copy of the Agreement is attached as Exhibit "A" to this Agreement and all terms and conditions are incorporated as if explicitly stated herein.

6. The Donation understands that it is responsible for the reimbursement of direct costs paid by Attorneys specifically connected to the pursuit of its claims, and agrees to reimburse Attorneys for these costs, upon settlement or upon reimbursement from BP.

7. The Donation understands that multiple lawsuits, including many class actions, have been filed relating to the Oil Spill. Attorneys intend to represent the Donation in an independent lawsuit. It is possible that any action on behalf of the Donation will be consolidated or grouped with other actions at least until undersigned can break it out. As a result, the Donation may be responsible for a share of costs and expenses common to all plaintiffs as determined by the court. Examples of common expenses include, but are not limited to, travel expenses, deposition and court costs and expert witness fees. Attorneys agree to share its fees with any other firm that may be awarded such a common fund attorneys fee, such that the liability for fees to Donation is not increased.

8. The Donation and Attorneys agree that any amounts received in settlement or judgment will be distributed in this order: From the gross total amount, Attorneys will deduct case costs and common pro rata litigation related expenses which have not been paid by Attorneys, then attorneys fees, then all direct and pro rata expenses paid by Attorneys. The following is an example of how attorneys' fees would be calculated under this Paragraph and Paragraph 4. The assumptions for this example are as follows:

   a. Donation expends $500,000 on costs related to the spill and its property.
   b. BP pays Donation Attorneys removal/recovery attorneys fees totaling $100,000.
   c. With Attorneys' help, BP pays Donation interim damages totaling $400,000. Donation in turn has already paid W&W $40,000 in fees for same pursuant to paragraph 4(b).
   d. BP agrees to pay damages and restoration expenses with a net present value of $5,500,000.
   e. Suit has been filed, but no order has been entered setting the case for trial.

   On these assumptions, the fee would be calculated as follows: The contingent fee under 4(c) is calculated on gross value of the settlement less expenses paid by Donation ($5.5M - $.5M=$5.0M). From the gross contingency fee ($5M x .18 = $900K), fees already paid are deducted, totaling $760,000 ($900K - $100K - $40K = $760,000).

   Distribution under Paragraph 5 will be controlled by the terms and conditions outlined in Exhibit "A". Attorneys will provide the Donation with calculations under both alternate payment methods.

9. The Donation understands that the fees and costs outlined above are the most Donation will pay for these expenses and that any and all fees and costs that may be due and owing to previous counsel Waltzer & Wiygul will be deducted from the above fee and cost structure.

4 of 6

10. The Donation agrees that nothing contained herein shall constitute an agreement for Attorneys to perform legal services that arise in a separate proceeding regarding the ownership, condition or use of the property not contemplated above, including, but not limited to, government administrative actions for clean up or remediation of the property or defending claims by adjoining or nearby landowners for damages resulting from Wisner's ownership of these properties or the operations thereupon.

11. The Donation acknowledges that Attorneys represent the City of New Orleans in its BP Oil claims. The Donation Advisory Committee to the Trustee considered this potential conflict and had the opportunity to consult with outside counsel, and the Donation Advisory Committee took a vote that it has waived any potential conflict this may create. Accordingly, Trustee hereby waives any conflict of interest due to Attorneys representation of the City of New Orleans in its BP oil claims.

12. The Donation acknowledges that Attorneys are working pursuant to an Agreement that fees and costs will be shared among them. The first 50% of the net fees will be divided equally with each law firm receiving 10%. The remaining 50% of the net fee will be divided among the law firms pursuant to the amount of work performed by each of the law firms.

13. The Donation understands and agrees that Louisiana law governs this contract. The Donation authorizes Attorneys to associate other attorneys and to hire experts who in their judgment may help facilitate prosecution of the case.

14. This contract alone governs the relationship between the parties, and it may be modified only in writing by the consent of both parties. This contact operates retroactively to commence on the date Attorneys was first asked to provide legal services.

Contract signed as per Resolution of the Edward Wisner Donation Advisory Committee, September 25, 2010, in New Orleans, Louisiana this 17 day of October, 2012.

The Edward Wisner Donation,                         Attorneys,

By: _____                          _____
Mitch Landrieu, in his capacity as                  Stephen J. Herman
Mayor of the City of New Orleans                    Soren E. Gisleson
and Trustee of the Wisner Donation                  HERMAN HERMAN & KATZ LLC
                                                    820 O'Keefe Avenue
                                                    New Orleans, Louisiana 70113

_[signature]_
James P. Roy
Bob Wright La Bar No. 13691
DOMENGEAUX WRIGHT ROY
& EDWARDS LLC
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501

_[signature]_
Fred Herman
Law Offices of Fred Herman
1010 Common St., Suite 3000
New Orleans, LA 70112

_[signature]_
Walter J. Leger, Jr.
LEGER & SHAW
600 Carondelet Street
New Orleans, Louisiana 70130

_[signature]_
Calvin C. Fayard
C. Caroline Fayard
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726

K11-*****

PROFESSIONAL SERVICES AGREEMENT
BETWEEN
THE CITY OF NEW ORLEANS
AND
THE JOINT VENTURE OF THE LAW FIRMS OF HERMAN, HERMAN, KATZ & COTLAR;
LEGER SHAW; FAYARD & HONEYCUTT; THE LAW OFFICES OF FRED L. HERMAN;
and DOMENGEAUX WRIGHT ROY & EDWARDS

THIS AGREEMENT, made and entered into this 21st day of June, 2011, and effective as of ~~June~~ December 25, 2011 by and between the City of New Orleans, herein represented by Mitchell J. Landrieu, Mayor, ("City") and the and the joint venture of the law firms Herman, Herman, Katz & Cotlar; Leger Shaw; Fayard & Honeycutt; the Law Offices of Fred L. Herman; and Domengeaux Wright Roy & Edwards (collectively, "Contractor"), herein represented by Russ M. Herman, its duly authorized representative, ("Contractor Representative"), witnesses that,

WHEREAS, the City desires to engage the Contractor to render professional legal services to the City regarding its claim for damages in the Deepwater Horizon Litigation (*City of New Orleans v. BP, et al.*, MDL No. 2179), and ancillary matters associated therewith; and

WHEREAS, Contractor, whose Representative's office is located at 820 O'Keefe Avenue, New Orleans, Louisiana 70113-1116, is qualified and willing to perform such services, and both the City and the Contractor desire hereby to detail their related agreement.

NOW THEREFORE, the City of New Orleans and the Contractor, for the consideration and under the conditions set forth, agree as follows:

CONTRACTED SERVICES: The Contractor will perform all professional legal services necessary to assist the City Attorney's office in connection with the City's claim for damages in the Deepwater Horizon Litigation, and all ancillary matters associated therewith.

1. FEES: It is understood that any Common Benefit Fee and/or cost percentage awarded by the Court to be paid out of the City's recovery will be deducted from any Contingency Fee that may be owed to Contractor pursuant to this Agreement.

1

a. CONTINGENCY FEE STRUCTURE:

   i. Representation through December 31, 2011, on a *pro bono* basis. No fee will be charged by Contractor on any recovery secured during the *Pro Bono* Term. However, in the event of a recovery secured during the *Pro Bono* Term, the City would reimburse Contractor for all litigation costs or expenses incurred in the preparation of the City's claims. Contractor attorneys would each separately reserve the right (if any) to their share of common benefit fees (if any) which might be awarded by the Court in connection with the City's recovery.

   ii. A ten percent (10%) contingency fee on any recovery collected as part of a "global settlement" or other negotiations from January 1, 2012 through June 30, 2012, net of litigation costs or expenses.

   iii. A thirteen-and-a-half percent (13.5%) contingency fee on any recovery collected as part of a "global settlement" or other negotiations after July 1, 2010 through December 31, 2012, net of litigation costs or expenses.

   iv. A seventeen-and-a-half percent (17.5%) contingency fee on any recovery collected as part of a "global settlement" or other negotiations after January 1, 2013, net of litigation costs or expenses.

   v. A twenty percent (20%) contingency fee, net of litigation costs or expenses, on any recovery requiring a formal trial of some or all of the claims of the City in order to secure a settlement or judgment.

   vi. A twenty-two-and-a-half (22.5%) contingency fee, net of litigation costs or expenses, on any recovery negotiated or awarded following the appeal of a judgment of the City's claims on the merits.

2

b. COMMON BENEFIT FEES: Common Benefit Fees and/or expenses (if any) awarded by the Court to be paid out of the City's recovery will be deducted from any Contingency Fee that may be owed to Contractor pursuant to this Agreement. All contracting attorneys each and separately reserve the right (if any) to their share of Common Benefit Fees (if any), which might be awarded by the Court in connection with the City's recovery.

c. LITIGATION COSTS: Contractor will advance litigation costs and expenses necessary for the prosecution of the City's claims, but will be reimbursed out of any recovery. All contracting attorneys will utilize (and their Contingency Fees will be subject to) common benefit costs, fees, expenditures, and other efforts.

2. TERM: The term of this Agreement is three years, beginning on the effective date of this Contract. By agreement of both parties, this Contract may be extended beyond the original term for up to five additional successive one-year terms.

3. AUTHORITY TO SETTLE: The authority to settle the claim of the City of New Orleans resides solely with the City of New Orleans, through and by its elected Mayor, Mitchell J. Landrieu. Contractor and the City Attorney's Office of the City of New Orleans are responsible to communicate all settlement offers to the Mayor or his written designee. The City, through and by the Mayor, has the sole authority to determine whether to participate in a "global settlement," if any.

4. FURTHER PROVISIONS: The City and the Contractor bind themselves under the Additional Terms and Conditions attached hereto.

5. AMENDMENT: This agreement is not to be modified except by written amendment executed by the parties hereto.

3

IN WITNESS WHEREOF the parties hereto have made and executed this Agreement effective the day and year above written:

HERMAN, HERMAN, KATZ
& COTLAR, LLP

RUSS M. HERMAN, ESQ.
By Stephen J. Herman, Partner
Tax ID No. ~~XXXXXXXXX~~

Representing the Joint Venture of the Law Firms of Herman, Herman, Katz & Cotlar; Leger Shaw; Fayard & Honeycutt; the Law Offices of Fred L. Herman; and Domengeaux Wright Roy & Edwards

CITY OF NEW ORLEANS

12-29-16

By: MITCHELL J. LANDRIEU, MAYOR

FORM AND LEGALITY APPROVED:

Law Department, City of New Orleans

4

PROFESSIONAL SERVICES AGREEMENT
BETWEEN
THE CITY OF NEW ORLEANS ("City")
AND
THE JOINT VENTIRE OF THE LAW FIRMS OF HERMAN, HERMAN, KATZ & COTLAR;
LEGER SHAW; FAYARD & HONEYCUTT; THE LAW OFFICES OF FRED L. HERMAN;
and DOMENGEAUX WRIGHT ROY & EDWARDS (Collectively, "Contractor")

## ADDITIONAL TERMS AND CONDITIONS

1. **EQUAL EMPLOYMENT OPPORTUNITY**: In all hiring or employment made possible by, or resulting from this contract, there (1) will not be any discrimination against any employee or applicant for employment because of race, color, religion, gender, age, physical or mental disability, national origin, sexual orientation, creed, culture, or ancestry, and (2) where applicable, affirmative action will be taken to ensure that the Contractors employees are treated during employment without regard to their race, color, religion, gender, age, physical or mental disability, national origin, sexual orientation, creed, culture, or ancestry. This requirement shall apply to, but not be limited to the following: employment, upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation and selection for training, including apprenticeship. All solicitations or advertisements for employees shall state that all qualified applicants will receive consideration for employment without regard to race, color, religion, gender, age, physical or mental disability, national origin, sexual orientation, creed, culture, or ancestry.

2. **ASSIGNABILITY**: The Contractor shall not assign any interest in this agreement and shall not transfer any interest in the same without prior written consent of the City of New Orleans.

3. **CONFLICT OF INTEREST**: In the interest of ensuring that efforts of the Contractor do not conflict with the interests of the City, and in recognition of the Contractor's responsibility to the City, the Contractor agrees to decline any offer of employment if its independent work on behalf of the City is likely to be adversely affected by the acceptance of such employment. The initial determination of such a possibility rests with the Contractor. It is incumbent upon the Contractor to notify the City and provide full disclosure of the possible effects of such employment on the Contractor's independent work in behalf of the City. Final decision on any disputed offers of other employment for the Contractor shall rest with the City.

4. **INDEMNIFICATION**: The Contractor shall indemnify and save the City harmless against any and all claims, demands, suits, judgments of sums of money to any party accruing against the City for loss of life or injury or damage to persons or property growing out of, resulting from, or by reason of any act or omission or the operation of the Contractor, its agents, servants or employees while engaged in or about or in connection with the discharge or performance of the services to be done or performed by the Contractor hereunder and shall also hold the City harmless from any and all claims and/or liens for labor, services, or materials furnished to the Contractor in connection with the performance of its obligation under this Agreement.

5. **ACKNOWLEDGMENT OF EXCLUSION OF WORKER'S COMPENSATION COVERAGE**: Contractor herein expressly agrees and acknowledges that it is an independent contractor as defined in R.S. 23:1021 (6) and as such, it is expressly agreed and understood between

5

the parties hereto, in entering into this services agreement, that the City of New Orleans shall not be liable to the Contractor for any benefits or coverage as provided by the Workmen's Compensation Law of the State of Louisiana, and further, under the provisions of R.S. 23:1034 anyone employed by the Contractor shall not be considered an employee of the City for the purpose of Worker's Compensation coverage.

6. <u>ACKNOWLEDGMENT OF EXCLUSION OF UNEMPLOYMENT COMPENSATION COVERAGE</u>: Contractor herein expressly declares and acknowledges that it is an independent contractor, and as such is being hired by the City under this agreement for hire as noted and defined in R.S. 23:1472 (E), and therefore, it is expressly declared and understood between the parties hereto, in entering into this services agreement, or agreement for hire, and in connection with unemployment compensation only, that:

    a. Contractor has been and will be free from any control or direction by the City over the performance of the services covered by this contract; and

    b. Services to be performed by Contractor are outside the normal course and scope of the City's usual business; and

    c. Contractor has been independently engaged in performing the services listed herein prior to the date of this agreement.

Consequently, neither Contractor nor anyone employed by Contractor shall be considered an employee of the City for the purpose of unemployment compensation coverage, the same being hereby expressly waived and excluded by the parties hereto.

7.    <u>WAIVER OF SICK AND ANNUAL LEAVE BENEFITS</u>: It is expressly agreed and understood between the parties that the Contractor, acting as an independent agent, shall not receive any sick and annual leave benefits from the City of New Orleans.

8.    <u>JURISDICTION</u>: The Contractor hereby consents and yields to the jurisdiction of the State Civil Courts of the Parish of Orleans, and does hereby formally waive any pleas of jurisdiction on account of the residence elsewhere of the Contractor.

9. .  <u>CANCELLATION</u>: Either party to this contract may terminate the agreement at any time during the term of the agreement by giving the other party written notice of said intention to terminate at least (30) days before the date of termination.

10.   <u>SOLICITATION</u>: The Contractor has not employed or retained any company or person, other than a bona fide employee working solely for him, to solicit or secure the subject contract. The Contractor has not paid or agreed to pay any person, other than a bona fide employee working for him, any fee, commission, percentage, gift, or any other consideration contingent upon or resulting from the subject contract.

11.   <u>AUDIT AND OTHER OVERSIGHT</u>: It is agreed that the Contractor will abide by all provisions of City Code §2-1120, including but not limited to City Code §2-1120(12), which requires the contractor to provide the Office of Inspector General with documents and information as requested. Failure to comply with such requests shall constitute a material breach of the contract.

In signing this contract, the Contractor agrees that it is subject to the jurisdiction of the Orleans Parish Civil District Court for purposes of challenging a subpoena.