# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Wilkinson |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

## DECLARATION OF J. LYNN BARKER

J. Lynn Barker hereby declares and states as follows:

1.  I am over the age of 18 years, and I am a resident of the state of Tennessee.

2.  I am presently employed as a financial investigator for the Deep Water Horizon Claims
    Center (DHECC). For approximately 30 years, I was employed as a Special Agent with
    the Internal Revenue Service ("IRS") - Criminal Investigation Division. My duties
    consisted of conducting in-depth financial investigations regarding tax fraud and money
    laundering and utilized indirect methods for income computations. I have testified in
    numerous federal trials as a fact and expert witness regarding financial investigations and
    the analysis performed to determine income. After retirement from the IRS I was a
    contract instructor for the National Criminal Investigation Training Academy teaching
    financial investigative techniques to new agents.

3.  My investigation shows that William Becker Consulting created profit and loss
    statements ("P&Ls") for five claimants based on the "4 Penny Method" that was used in
    determining the compensation award for each of these BEL claims. More specifically,
    my investigation revealed:

    a.  The 4 Penny Method is a monthly allocation of revenue and variable expenses
        based on the Monroe County 4 Penny Tax that is levied on motels, hotels, and
        registered rental units in Monroe County. This tourism tax is the most accurate
        gauge as to the number of tourist staying in the Florida Keys.
        William Becker Consulting used data from a Florida Department of Revenue
        management report that reflects the 4 penny tourism tax revenue collected and
        remitted in Monroe County by month to calculate the monthly percentage of the
        total revenue collected for the year. For claimants that did not have books and
        records, Becker used these monthly percentages to create monthly P&Ls by

1

allocating the claimant's annual revenue and expenses reported on their federal tax return that were submitted to DHECC.

The 4 penny tax percentages Becker calculated is a statistical representation of the monthly bed tax collected which is a trend measurement of tourist staying in the Florida Keys. These percentages are not a true and accurate representation of the actual revenue earned and expenses paid for these claimants.

In June 2014, BrownGreer Forensic Accountants noticed anomalies in Trend Analyses of several BEL claims prepared by William Becker Consulting. This led to further investigation that discovered several Becker claimants submitted fabricated P&Ls. Becker Consulting allocated annual income for these claimants in fixed percentages among the months of each year.

The Forensic Accountants identified additional claimants whose P&Ls had the same percentage changes between the same months of successive years. Further analysis of these claimant's P&Ls revealed that the claims preparer used the same fixed percentages to allocate annual income among the months of the year.

The profit and loss statements of these claimants exhibit one of two patterns. In the first pattern, years 2007 and 2008 show the following percentages for a January through December: 9.6%, 11.9%, 14.2%, 9.9%, 8.7%, 7.6%, 8.3%, 6.3%, 3.0%, 5.6%, 6.8%, and 8.1%. Year 2009 income is distributed among the months of January through December with the following percentages: 10.2%, 11.2%, 12.5%, 10.6%, 8.7%, 8.2%, 9.3%, 7.2%, 4.7%, 4.8%, 5.4%, and 7.2%. Year 2010 income is distributed among the months of January through December with the following percentages: 12.9%, 14.7%, 17.0%, 13.9%, 8.6%, 5.5%, 4.4%, 3.1%, 3.4%, 4.6%, 5.0%, and 7.0%. The fixed pattern suggests that the financial documents submitted were fabricated.

In addition to different claimant's P&Ls showing the same pattern of distribution of annual income, the income and variable expenses in all years are front loaded. The total of the percentages for the Benchmark Months May – December 2008, 2009 and 2010 is 54.4%, 55.5% and 41.6%, respectively. When Becker created the profit and loss statements he applied these percentages to the annual revenue and variable expenses to arrive at the variable profit. As a result, the variable profits for the Benchmark period will always be higher than the variable profits for the Compensation period, thereby always creating a loss for the compensation award.

2

b. Chris Unger, husband of Bernadette Reilly of Restivo & Reilly Attorneys, developed a document management system and claims estimator software program named "Goldmine" for Becker.

c. The Goldmine software was designed to estimate the claim amount, and was never intended to compute the actual claim amount. Goldmine estimated the claim amount by using the claimant's annual revenue and variable expenses to create monthly P&L amounts using the Monroe County Florida 4 Penny tourist tax numbers.

d. The DHECC paid five claimants, for whom William Becker Consulting created P&Ls, the following amounts on their BEL claims:

| Claimant | Claimant ID | Amount Paid |
|----------|-------------|-------------|
| James Aurelio | 100098554 | 98,447.10 |
| Outpost Marine | 100080399 | 91,002.01 |
| Theodore Wheeler | 100083075 | 41,654.25 |
| Stephen Ferrara | 100135202 | 46,993.95 |
| Carol Nelson | 100033620 | 35,503.11 |
| | Total | $313,600.42 |

4. Generally, a Form SWS-38 is submitted to DHECC with each claim in which an accountant is used for the claim preparation. The accountant has to be either a Certified Public Accountant, Enrolled Agent, an individual with an IRS PTIN number or someone under supervision of the aforementioned. My review of Becker prepared claims revealed more than 500 Form SWS-38's submitted to the DHECC containing Miriam Hughes' signature.

5. A Form SWS-38 was submitted for the above referenced five claims showing William A. Becker prepared their claims under the supervision of Miriam Hughes, CPA. Each of those Form SWS-38's contained the exact same photocopy of Miriam Hughes' signature, and a date ranging from 6/12/12 to 10/16/12.

a. During the course of my investigation I interviewed Miriam Hughes on 05/04/15. Hughes stated she had an accounting practice in the Key Largo area from 2002 to 2007, at which time she moved to North Carolina. Hughes said she worked remotely with her clients and would travel to the Florida Keys four times a year to meet with clients. Hughes said she provided accounting services for William Becker Consulting during 2011 but never supervised the preparation of claims. Hughes stated she has no knowledge of what a Form SWS-38 was and has never signed one. Hughes said

3

Becker asked Hughes to sign her name on a blank sheet of paper for him to transfer to a form for Hughes' client for whom Becker was filing a DHECC claim.

b. During the course of my investigation, my colleague interviewed Alyse Ferrer, a former employee of William Becker Consulting, who stated she was told by Becker to cut and paste Hughes' signature on numerous SWS-38s.

c. During the course of my investigation, my colleague interviewed Gerald Creasman, Certified Public Accountant, who said Becker told him that he had a CPA, Miriam Hughes, as his business accountant but she was so busy doing his stuff that she had no time to prepare any P&Ls for Becker's clients. Creasman stated that Tom Theisen, a Becker employee, asked Creasman for his CPA license number to use as the supervising CPA on SWS-38s Becker intended to submit to the DHECC. Creasman said he refused.

6. In my investigations for the DHECC and throughout my career I consistently used the bank deposits method of proof, one of the primary indirect methods of proof used by the government in computing taxable income. This method of proof was approved in *Gleckman v. United States*, 80 F.2d 394, 399-401 (8th Cir. 1935). Under the bank deposits method, all deposits to the taxpayer's bank and similar accounts in a single year are added together to determine the gross deposits. Non-taxable deposits, such as gifts, transfers of money between accounts, loans and other non-income items, are then identified. The difference between the gross deposits and the non-taxable deposits is called net taxable bank deposits. Net taxable bank deposits can also be referred to as actual revenue.

7. In the course of my investigation of Claimants James Aurelio (Claimant ID 10098554), Outpost Marine (Claimant ID 100080399), Theodore Wheeler (Claimant ID 100083075), Stephen Ferrara (Claimant ID 100135202), and Carol Nelson (Claimant ID 100033620), I obtained bank statements, deposited items and P&Ls and conducted interviews. I used the bank deposits methodology to analyze deposits and eliminate non-taxable items, and then compared the monthly taxable deposits to the reported monthly revenue to determine any variances. I also compared any available contemporaneously prepared monthly P&Ls for each claimant to their reported revenue to determine any variances.

8. My investigation of claimant James Aurelio - Guy's Towing, BEL Claimant ID #100098554, revealed that the compensation award of $98,447.10, the amount claimant received, was overpaid by approximately $54,000 due to the understating of claimant's revenue for 2009 – 2010 and the use of the 4 Penny method to falsely allocate monthly revenue and variable expenses which affected the variable profits for the Benchmark and Compensation months that are used for the award calculation. More specifically, my investigation revealed:

4

a. Guy's Towing is a towing business that includes the sale of abandoned vehicles he towed. Aurelio filed individual income tax returns (Form 1040) reporting his business income on Schedule C using the cash method which is noted on Schedule C. Aurelio filed claims with GCCF and DHECC. The DHECC claim was computed by using 2007/2008/2009 with the months of May through December as the Benchmark Period. The DHECC paid James Aurelio $98,447.10 on 11/15/12, which includes $1,000 for accounting support.

b. On or about 08/01/11, James Aurelio filed a claim with GCCF under the name of Guys Towing Sales & Service (1629595).

   1. Aurelio submitted income tax returns for 2008-2010, bank statements for 2009 and 2010 and 2010 monthly P&Ls prepared by H&R Block (Doc. ID# 4249492). True and correct copies of these documents Aurelio submitted are attached as Declaration Dec. Exs. A through F. The 2008 tax return was prepared by Keys Accounting & Tax Service and the 2009-2010 returns were prepared by Jackson Hewitt Tax Service.

   2. On 09/27/11, GCCF issued a denial letter to Guys Towing Sales & Service for insufficient documentation to support the claim.

c. On or about 08/08/12, James Aurelio Sr. dba Guy's Towing filed a BEL claim with the DHECC (100098554) with the assistance of William Becker Consulting.

   1. 2008-2010 tax returns were submitted to the DHECC consistent with the returns claimant submitted to the GCCF. *See* Dec. Exs. A, B and C.

   2. A 2007 tax return prepared by Gerald Creasman, CPA (Doc. ID# 3185509), a true and correct copy which is attached as Dec. Ex. G, was also submitted to the DHECC.

   3. Also submitted to the DHECC were monthly P&Ls for 2007-2010 (Doc. ID# 5171961) prepared by William Becker Consulting using the 4 Penny method to allocate revenue and relied upon by DHECC to calculate the claim award. True and correct copies of the 2007-2010 P&Ls are attached as Dec. Ex. H. The total annual revenue reported on the P&Ls is consistent with the gross receipts reported on the tax returns.

   4. The bank statements submitted for Guys Towing Sales & Service's GCCF claim were not transferred to the DHECC portal due, likely to the different name of the claim.

5. In the course of my investigation I interviewed Sandi Haab of Keys Accounting & Tax Service on 08/20/15. Haab stated she obtained bank statements, cancelled checks and invoices from Aurelio that were entered into QuickBooks to create a general ledger, P&Ls and prepare the 2008 tax return. The DHECC issued a subpoena to Keys Accounting & Tax Service for 2008 bank statements and P&Ls for Guy's Towing. True and correct copies of the 2008 bank statements, 2008 monthly P&Ls and 2008 general ledger Keys Accounting & Tax Service produced in response to the subpoena are attached as Dec. Exs. I, J and K.

6. In the course of my investigation I interviewed Marshall Walker, owner of the H&R Block franchise, on 08/20/15. Walker stated James Aurelio, Sr. came to his office and said he needed monthly P&Ls prepared for 2010. Walker said Aurelio provided bank statements, cancelled checks and receipts for use in the preparation of the monthly statements. Walker said he noted some discrepancies in the information Aurelio provided for the last five months which included deposits from PayPal. Walker said this was a one-time service and H&R Block did not prepare Aurelio's 2010 tax return. *See* Dec. Ex. F for the 2010 monthly P&Ls prepared by H&R Block.

7. In the course of my investigation I interviewed James Aurelio Sr. on 08/20/15. Aurelio stated all revenue was deposited and no loans or other non-taxable source of funds were deposited. Aurelio said the revenue deposited consisted of checks, credit card and PayPal payments. Aurelio said he used Jackson Hewitt to prepare his tax returns because the other tax preparers would not allow him enough expenses for gas and oil. Aurelio said he provided Jim Mahley of William Becker Consulting with his tax returns and bank statements for his claim preparation. Aurelio could not provide a clear answer as to why he had H&R Block prepare the 2010 P&Ls. Aurelio could not explain inconsistencies in his reported revenue, and why the H&R Block statements show a total revenue of $92,000; his tax return shows a total revenue of $60,000; and the bank statements show deposits of $111,000.

8. In the course of my investigation I telephonically interviewed Gerald Creasman, CPA on 08/25/15. Creasman stated 2007 was the last year he prepared a tax return for Aurelio. Creasman said when he no longer provides tax service for a client he destroys any support records after the three year IRS statute of limitations.

9. In the course of my investigation I obtained tax records from Jackson Hewitt for 2009-2010. A Jackson Hewitt representative said they did not prepare any P&Ls for Aurelio and they do not have copies of any documents presented by

Aurelio for use in the preparation of his tax returns. I analyzed the 2008 bank
statements obtained from Keys Accounting to determine net taxable deposits.
Key's Accounting used the claimant's bank records to record monthly income
that was used in preparing the tax return. The 2008 deposits, after adjustments
made by Keys Accounting for non-income items, are consistent with the
reported tax return revenue and the net taxable deposits. The net taxable
deposits for the Benchmark Period/Months (BM) are $25,399.95 greater than
the revenue reported on the P&Ls submitted to DHECC. I created the below
chart to illustrate the difference noted above.

| Bank Statement Period | 2008 Bank Deposits | Non-Income Deposits | 2008 Net Taxable Deposits | Revenue Reported on 2008 P&L Keys Acctg | Revenue Reported on 2008 P&L Submitted to DHECC | Difference |
|---|---|---|---|---|---|---|
| Jan | 16,283.22 | -864.49 | 15,418.73 | 15,418.73 | 15,553.00 | -134.27 |
| Feb | 24,306.00 | -15,800.00 | 8,506.00 | 8,506.00 | 19,328.00 | -10,822.00 |
| Mar | 8,789.00 | -500.00 | 8,289.00 | 8,289.00 | 22,957.00 | -14,668.00 |
| Apr | 16,229.00 | | 16,229.00 | 16,229.00 | 16,006.00 | 223 |
| May | 16,642.00 | | 16,642.00 | 16,642.00 | 14,095.00 | 2,547.00 |
| June | 24,411.00 | -5.00 | 24,406.00 | 24,406.00 | 12,361.00 | 12,045.00 |
| July | 7,971.00 | -2.00 | 7,969.00 | 7,969.00 | 13,414.00 | -5,445.00 |
| Aug | 17,271.00 | | 17,271.00 | 17,271.00 | 10,207.00 | 7,064.00 |
| Sept | 8,508.00 | | 8,508.00 | 8,508.00 | 4,795.00 | 3,713.00 |
| Oct | 20,940.00 | -171.00 | 20,769.00 | 20,769.00 | 9,040.00 | 11,729.00 |
| Nov | 8,814.00 | | 8,814.00 | 8,814.00 | 11,049.00 | -2,235.00 |
| Dec | 9,185.95 | | 9,185.95 | 9,185.95 | 13,204.00 | -4,018.05 |
| | 179,350.17 | 17,342.49 | 162,007.68 | 162,007.68 | 162,009.00 | -1.32 |
| BM | | | 113,564.95 | 113,564.95 | 88,165.00 | 25,399.95 |

10. I analyzed the 2009 bank statements submitted to GCCF to determine net
taxable deposits. The net taxable deposits for 2009 totaled $155,473.22 which is
$76,829 greater than the revenue reported on the P&Ls and tax returns. The net
taxable deposits for the Benchmark Months (BM) are $61,288.74 more than
shown on the P&Ls submitted to DHECC. I created the below chart to illustrate
the aforementioned difference.

7

| Bank Statement Period | 2009 Net Taxable Deposits | Revenue Reported on 2009 P&L Submitted to DHECC | Difference |
|---|---|---|---|
| Jan | 13,034.90 | 7,998.00 | 5,036.90 |
| Feb | 9,929.00 | 8,832.00 | 1,097.00 |
| Mar | 11,102.58 | 9,807.00 | 1,295.58 |
| Apr | 16,471.00 | 8,360.00 | 8,111.00 |
| May | 6,845.00 | 6,826.00 | 19 |
| June | 30,513.25 | 6,480.00 | 24,033.25 |
| July | 13,147.00 | 7,306.00 | 5,841.00 |
| Aug | 13,103.00 | 5,694.00 | 7,409.00 |
| Sept | 13,084.00 | 3,657.00 | 9,427.00 |
| Oct | 7,190.09 | 3,775.00 | 3,415.09 |
| Nov | 9,140.40 | 4,286.00 | 4,854.40 |
| Dec | 11,913.00 | 5,623.00 | 6,290.00 |
| | 155,473.22 | 78,644.00 | 76,829.22 |
| BM | 104,935.74 | 43,647.00 | 61,288.74 |

11. I analyzed the 2010 bank statements submitted to GCCF to determine net taxable deposits. The net taxable deposits for 2010 total $111,806.23 which is $51,263 more than the reported revenue on the DHECC P&Ls and tax returns. The H&R Block prepared statements (*See* Dec. Ex. F) are consistent with the bank deposits except for the months when the PayPal deposits were treated as non-income items and removed from the monthly revenue amounts. When the PayPal deposits of $19,478 are added back as income, as noted as being income per the interview with Aurelio, the revenue reported on the H&R Block statements is consistent with the net taxable deposits. The net taxable deposits for the Compensation Period (CP) are $50,851.86 more than the revenue reported on the P&Ls submitted to DHECC. I created the below chart to illustrate the aforementioned difference.

8

| Bank Statement Period | 2010 Net Taxable Deposits | Revenue Reported on H&R Block 2010 P&L | Revenue Reported on 2010 P&L Submitted to DHECC | Difference |
|---|---|---|---|---|
| Jan | 7,516.37 | 7,516.00 | 7,792.00 | -275.63 |
| Feb | 8,543.00 | 8,543.00 | 8,906.00 | -363 |
| Mar | 8,596.00 | 8,596.00 | 10,268.00 | -1,672.00 |
| Apr | 11,125.00 | 11,125.00 | 8,403.00 | 2,722.00 |
| May | 6,496.00 | 6,496.00 | 5,194.00 | 1,302.00 |
| June | 7,870.06 | 7,870.00 | 3,324.00 | 4,546.06 |
| July | 9,968.00 | 6,712.00 | 2,658.00 | 7,310.00 |
| Aug | 13,524.00 | 6,002.00 | 1,865.00 | 11,659.00 |
| Sept | 7,134.80 | 7,134.00 | 2,071.00 | 5,063.80 |
| Oct | 7,972.00 | 4,772.00 | 2,785.00 | 5,187.00 |
| Nov | 11,230.00 | 5,730.00 | 3,039.00 | 8,191.00 |
| Dec | 11,831.00 | 11,813.00 | 4,238.00 | 7,593.00 |
|  | 111,806.23 | 92,309.00 | 60,543.00 | 51,263.23 |
| BM | 76,025.86 | 56,529.00 | 25,174.00 | 50,851.86 |

12. I was not able to obtain and analyze 2007 bank statements and deposits. Gerald Creasman represented to me that he destroyed those records after the three year IRS statue.

13. Based on my investigation, it is clear that the revenue on the 2009 and 2010 tax returns was fraudulently understated for the purpose of increasing the BEL claim award. William Becker Consulting used the understated tax returns to fabricate false monthly P&Ls using the 4 Penny method to allocate revenue and variable expenses. While the 2009 and 2010 bank statements were provided to William Becker Consulting, those source documents were not used to determine monthly revenue because the net taxable deposits were more than the revenue reported on the tax returns. In addition, while the 2008 bank records and monthly P&Ls from Keys Accounting & Tax Service were available to the claimant, he did not provide them to William Becker Consulting. Again, claimant and Becker did not use available source documents, and instead William Becker Consulting used a method to falsely allocate revenue based on a tourism sales tax percentage. In short, the revenue for the Benchmark months

9

was overstated and the revenue for the compensation months was understated, thereby causing a larger variable loss in order to fraudulently increase the BEL award amount.

14. DHECC relied on the tax returns and the profit and loss statements created by William Becker Consulting's 4 Penny method in calculating Aurelio's award. As a result, the DHECC paid the claimant $98,447.10, approximately $54,000 more than that to which he would have been entitled as a result of the understating of revenue for 2009 and 2010 and false allocation of revenue to the Benchmark and Compensation months to inflate the award.

9. My investigation of claimant Outpost Marine, BEL Claimant ID #100080399, revealed that the compensation award of $91,002.01, the amount claimant received, was overpaid by approximately $24,000 due to understating of revenue for 2009 – 2010 and use of the 4 Penny method to falsely allocate monthly revenue and variable expenses which affected the variable profits for the Benchmark and Compensation months that are used for the award calculation. More specifically, my investigation revealed:

a. Outpost Marine is a recreational fishing accommodation providing a completely provisioned mothership with gourmet meals and luxury staterooms. Outpost Marine reports their income on a Form 1120S (Subchaper S Corporation) using the accrual method of accounting, as noted on the tax returns. The tax return's balance sheets do not show any accounts receivables or payables for 2007-2010 which are indicators of the accrual method. The corporation is jointly owned by Fred and Penny Wheeler.

b. On or about 07/16/12, Fred Wheeler filed a claim on behalf of Outpost Marine with the DHECC with the assistance of William Becker Consulting. The Benchmark year is 2009 and used the months of May-December. The DHECC paid Outpost Marine $91,002.01 on 11/13/12, which includes $1,000 for accounting support.

1. Monthly P&Ls for 2007-2010 prepared by William Becker Consulting using the 4 Penny method (Doc. ID #5634363), true and correct copies of which are attached as Dec. Ex. P, were also submitted to the DHECC.

2. In the course of my investigation I telephonically interviewed Penny Wheeler on 08/19/15 regarding the claim for Outpost Marine. Wheeler said their claim was paid several years ago and she had no reason to discuss it further.

3. In September 2015, I obtained and analyzed the 2009 bank statements and deposited items for Outpost Marine's checking and savings accounts located at Capital Bank to determine net taxable deposits. The only deposit to the savings account was a $10,000 transfer from the checking account. The net taxable deposits for 2009 totaled $153,006.61, which is $16,959.61 more than reported on

the tax return and P&Ls. The description on the deposited items reflected they were deposits or final payment for fishing charters. Deposited items did not reveal any descriptions that indicated they were not income. The net taxable deposits for the Benchmark months (BM) are $35,808.25 greater than the revenue reported on the P&Ls. This understatement is due to the underreported revenue and the revenue allocation used by Becker's 4 Penny method. This has the effect of understating variable profits. I created the below chart to illustrate the difference noted above:

| Bank Statement Period | Net Taxable Checking Deposits | Revenue Reported on 2008 P&L Submitted to DHECC | Difference |
|---|---|---|---|
| 2/1/2009 | 11,680.13 | 13,836.00 | -2,155.87 |
| 3/1/2009 | 10,015.50 | 15,278.00 | -5,262.50 |
| 3/31/2009 | 5,400.00 | 16,965.00 | -11,565.00 |
| 4/30/2009 | 14,596.73 | 14,462.00 | 134.73 |
| 5/31/2009 | 16,449.70 | 11,809.00 | 4,640.70 |
| 6/30/2010 | 18,573.80 | 11,210.00 | 7,363.80 |
| 8/2/2010 | 21,137.00 | 12,639.00 | 8,498.00 |
| 8/31/2009 | 18,716.25 | 9,850.00 | 8,866.25 |
| 9/30/2009 | 9,590.00 | 6,326.00 | 3,264.00 |
| 11/1/2009 | 22,547.50 | 6,530.00 | 16,017.50 |
| 11/30/2009 | 4,300.00 | 7,415.00 | -3,115.00 |
| 12/31/2009 | 0 | 9,727.00 | -9,727.00 |
| | 153,006.61 | 136,047.00 | 16,959.61 |
| BM | 111,314.25 | 75,506.00 | 35,808.25 |

4. In September 2015, I obtained and analyzed the 2010 bank statements and deposited items for Outpost Marine's checking and savings accounts located at Capital Bank to determine net taxable deposits. The net taxable deposits for the two accounts total $138,809, which is $25,097 more than reported on the tax return and profit and loss statements. The checking deposits total $113,712 which is the amount of the revenue reported on the 2010 tax return and profit and loss statements which is consistent with the cash method of accounting. My analysis revealed there were two transfers from the savings account into the checking account totaling $15,000 that was incorrectly treated as revenue. The savings

account contained revenue deposits that totaled $40,097, which was not included on the tax return or profit and loss statements. The description on the deposited items in the savings account reflected they were deposits or final payment for fishing charters. The savings deposits of $40,097, less the $15,000 transfers to checking total $25,097, is treated as revenue. The net taxable deposits for the Compensation Period (CP) are $44,833 greater than the amount reported on the profit and loss statements used by DHECC to compute the award. This has the effect of understating the variable profits. I created the below chart to illustrate the differences noted above:

| Statement Month | Checking Deposits | Transfers | Savings Deposits | Net Taxable Deposits | Revenue DHECC P/L | Difference |
|---|---|---|---|---|---|---|
| 01/31/10 | 8,450.00 | | | 8,450.00 | 14,635.00 | -6,185.00 |
| 02/28/10 | 0.00 | | 6,945.00 | 6,945.00 | 16,727.00 | -9,782.00 |
| 03/31/10 | 12,900.00 | | 6,800.00 | 19,700.00 | 19,286.00 | 414.00 |
| 05/02/10 | 11,600.00 | -5,000.00 | 5,000.00 | 11,600.00 | 15,783.00 | -4,183.00 |
| 05/31/10 | 37,650.00 | -10,000.00 | | 27,650.00 | 9,756.00 | 17,894.00 |
| 06/30/10 | 0.00 | | | 0.00 | 6,243.00 | -6,243.00 |
| 08/01/10 | 16,919.00 | | 8,602.00 | 25,521.00 | 4,992.00 | 20,529.00 |
| 08/31/10 | 3,706.00 | | | 3,706.00 | 3,502.00 | 204.00 |
| 09/30/10 | 10,570.00 | | 12,750.00 | 23,320.00 | 3,889.00 | 19,431.00 |
| 10/31/10 | 8,700.00 | | | 8,700.00 | 5,231.00 | 3,469.00 |
| 11/30/10 | 3,217.00 | | | 3,217.00 | 5,708.00 | -2,491.00 |
| 12/31/10 | 0.00 | | | 0.00 | 7,960.00 | -7,960.00 |
| | 113,712.00 | -15,000.00 | 40,097.00 | 138,809.00 | 113,712.00 | 25,097.00 |
| CP | | | | 92,114.00 | 47,281.00 | 44,833.00 |

5. In the course of my investigation I telephonically interviewed Denise Bay of Patience Accounting on 10/08/15. Bay stated Maria Sommeroff sold her accounting and tax practice to Bay during 2015. Bay further stated she has prepared the tax returns for Outpost Marine since 2013. Bay said she used bank statements, cancelled checks and credit card statements to post in QuickBooks for the preparation of the tax returns. Bay said Sommeroff purged her records after three years. Numerous unsuccessful attempts have been made to contact Sommeroff.

6. Based on my investigation, it is clear that the revenue on the 2009 and 2010 tax returns and P&Ls were fraudulently understated. William Becker Consulting used the understated tax returns to fabricate false monthly P&Ls using the 4 Penny method to allocate revenue. In short, revenue for the Benchmark months

was overstated and revenue for the compensation months was understated, thereby causing a larger variable loss in order to fraudulently increase the BEL award amount.

7. DHECC relied on the tax returns and the P&Ls to calculate Outpost Marine's award. As a result, the DHECC paid the claimant $91,002.01, approximately $23,000 more than that to which it would have been entitled had revenue not been understated and falsely allocated to the Benchmark and Compensation months to inflate the award.

10. My investigation of Theodore Wheeler dba Anima Charters & Sailing, BEL Claimant ID #100083075, revealed that Becker used the 4 Penny method to falsely allocate monthly revenue and variable expenses which affected the variable profits for the Benchmark and Compensation months that was used for the award calculation. Although the 4 Penny method was used, Wheeler was not entitled to any of the compensation award of $41,654.25 he was paid due to Wheeler and/or William Becker Consulting misrepresenting his address as being in the compensation zone. More specifically, my investigation revealed:

a. Theodore Wheeler is a contract sailing instructor for Blue Water Sailing School (BWSS) located at 924 NE 20 Avenue, Fort Lauderdale, FL. Wheeler filed individual income tax returns (Form 1040) reporting his income on Schedule C using the cash method as noted on the tax returns.

b. On or about 05/22/12, Wheeler filed a claim on behalf of Anima Charters & Sailing with the GCCF (3588021) for an interim payment. The GCCF Interim Payment Claim Form shows Wheeler's personal and business address as 822 NE 16 Court, Ft. Lauderdale, FL. A true and correct copy of the GCCF Interim Payment Claim is attached as Dec. Ex. Q. The unsigned claim form shows William Becker as the authorized business representative. The GCCF portal shows the claim as incomplete with no supporting documents submitted.

c. On or about 10/25/12, Wheeler filed a claim on behalf of Anima Charters & Sailing with DHECC (100083075) with the assistance of William Becker Consulting. The Benchmark year is 2009 and used the months of May-December. The DHECC paid Theodore Wheeler $41,654.25 on 02/20/13, which includes $1,000 for accounting support.

1. Wheeler submitted a DHECC Registration Form (Doc. ID #5721897) showing the name of his business as Anima Charters & Sailing with an address of 822 NE 16 Court, Ft. Lauderdale, FL, Monroe County, a true and correct copy of which is attached as Dec. Ex. R. The registration form shows Wheeler's home address as

13

924 NE 20 Avenue, Marathon, FL, Monroe County, and that Anima Charters & Sailing was incorporated during in 1986 in Ft. Lauderdale, FL. Fort Lauderdale, FL is located in Broward County, and Marathon, FL is located in Monroe County. A search of the Florida Secretary of State's website for corporations did not show a registration for Anima Charters & Sailing as being incorporated.

2.  Wheeler submitted a DHECC Business Economic Loss Claim Form (Purple Form) (Doc. ID #5722083), a true and correct copy of which is attached as Dec. Ex. S, showing the business name of Anima Charters & Sailing with a business address of 924 NE 20 Avenue, Marathon, FL, Monroe County. The form was electronically signed by Wheeler on 10/25/12.

3.  Tax returns for 2008-2010 to the DHECC (Doc. IDs 5721921, 5721925 and 5721931), true and correct copies of which are attached as Dec. Exs. T, U and V, were submitted to the DHECC. The returns show the same home address and business address at 822 NE 16th Court, Ft. Lauderdale, FL. The returns appear to be self-prepared and contained unusual characteristics such as being partially typed and partially handwritten.

4.  IRS Form 1099-Misc for 2008, 2009 and 2010 (Doc. ID #5721913, 5721914 and 5721918) were also submitted to the DHECC, true and correct copies of which are attached as Dec. Ex. W. The Form 1099 was issued by BWSS, Inc., 922 NE 20th Ave, Fort Lauderdale, FL. The recipient listed on the form is Theodore Wheeler, P.O. Box 30033, Fort Lauderdale, FL.

5.  P&Ls for 2008-2010 (Doc. ID #5762541, 5762591 and 5762610) also were submitted to the DHECC, true and correct copies of which are attached as Dec. Ex X. The P&Ls were prepared by William Becker Consulting using the 4 Penny method which allocates monthly revenue based on the annual revenue shown on Wheeler's tax returns.

6.  In the course of my investigation I telephonically interviewed David Pyle on 08/27/15, owner of Blue Water Sailing School (BWSS). Pyle said BWSS is a sailing school located 922 NE 20th Ave, Ft. Lauderdale, FL and departs from Ft. Lauderdale, FL, travels to the northern Florida Keys, and returns to Ft. Lauderdale. Pyle said BWSS does not have an office or base of operation located in the Florida Keys. Pyle stated that Theodore Wheeler was an independent contractor that provided sailing instructions for BWSS. Pyle said BWSS provided the sailing vessel and paid all the related expenses. Pyle said Wheeler owns a personal sailboat that is docked at the marina where BWSS is located but Wheeler never used his personal boat for BWSS sailing instructions. Pyle said Wheeler resides in Ft. Lauderdale, FL. Pyle provided a statement of account transactions

14

for Ted Wheeler for the period 1/1/09 to 12/31/10.  The statement shows dates, check numbers, payee (Ted Wheeler) and amounts (Dec. Ex. XX).  The annual amounts paid to Wheeler is consistent with the Form 1099 issued to Wheeler for 2009 and 2010.

7. I created the below charts for 2009 and 2010 to compare the actual monthly revenue BWSS paid to Wheeler to the revenue reported on the P&Ls.  The gross receipts reported on the 2009 and 2010 tax returns are greater than the amounts reported on the Form 1099 from BWSS by $2,730.00 and $916.00 respectively. Wheeler indicated in the interview this was due to sailing charters other than BWSS.  It is unknown what month(s) this revenue was received.  The difference in the actual revenue and reported revenue for the Benchmark and Compensation period is minimal.

| Month | 2009 Revenue from Blue Water Sailing | Revenue Reported on 2009 P&L Submitted to DHECC | Difference |
|-------|-------|-------|-------|
| Jan | 3,300.00 | 3,054.00 | 246.00 |
| Feb | 1,100.00 | 3,372.00 | -2,272.00 |
| Mar | 3,300.00 | 3,745.00 | -445.00 |
| Apr | 3,300.00 | 3,192.00 | 108.00 |
| May | 2,250.00 | 2,607.00 | -357.00 |
| June | 1,700.00 | 2,474.00 | -774.00 |
| July | 1,150.00 | 2,790.00 | -1,640.00 |
| Aug | 2,200.00 | 2,174.00 | 26.00 |
| Sept | 2,200.00 | 1,396.00 | 804.00 |
| Oct | 2,200.00 | 1,441.00 | 759.00 |
| Nov | 2,500.00 | 1,637.00 | 863.00 |
| Dec | 2,100.00 | 2,147.00 | -47.00 |
|  | 27,300.00 | 27,300.00 | -2,729.00 |
| Other | 2,730.00 |  | 2,730.00 |
|  | 30,030.00 | 30,030.00 | 1.00 |
| BM | 16,300.00 | 16,666.00 | -366.00 |

15

| Month | 2010 Revenue from Blue Water Sailing | Revenue Reported on 2010 P&L Submitted to DHECC | Difference |
|---|---|---|---|
| Jan | 2,700.00 | 1,384.00 | 1,316.00 |
| Feb | 1,100.00 | 1,582.00 | -482.00 |
| Mar | 2,200.00 | 1,824.00 | 376.00 |
| Apr | | 1,493.00 | -1,493.00 |
| May | | 923.00 | -923.00 |
| June | | 591.00 | -591.00 |
| July | | 475.00 | -475.00 |
| Aug | | 331.00 | -331.00 |
| Sept | | 368.00 | -368.00 |
| Oct | 395.00 | 495.00 | -100.00 |
| Nov | 2,445.00 | 540.00 | 1,905.00 |
| Dec | 1,000.00 | 753.00 | 247.00 |
| | 9,840.00 | 10,759.00 | -919.00 |
| Other | 916.00 | | 916.00 |
| | 10,756.00 | 10,759.00 | -3.00 |
| CP | 3,480.00 | 4,476.00 | -996.00 |

8. In the course of my investigation I telephonically interviewed Theodore Wheeler on 09/15/15 at his 822 NE 16th Ct, Ft. Lauderdale, FL residence. Wheeler said he was on the staff of BWSS as a contract sailing instructor. Wheeler said the boats would depart Ft. Lauderdale, FL and sail to the Florida Keys and return. Wheeler said he has a 38' sail boat which is docked at the marina where BWSS is located. Wheeler stated that he used his boat for instructional services at BWSS and had to pay expenses for the operation of his boat. Wheeler said his business location was the same address as BWSS, which is 924 NE 20th Ave, Ft. Lauderdale, FL. I advised Wheeler that a Business Economic Loss Claim Form (Purple Form) was filed with his claim showing his business address as 924 NE 20 Avenue, Marathon, FL. Wheeler admitted that was incorrect and stated that his business address was located in Ft. Lauderdale, FL.

9. In the course of my investigation I used the DHECC address locator which is available on Deepwater Horizon's web site to determine if Wheeler's Fort Lauderdale's personal and business addresses were in the economic zone which

would allow him to make a DHECC claim. The DHECC address locator reflected that the claimant's address was not in the DHECC economic zone.

10. Based on my investigation, it is clear that Wheeler's business address was misrepresented as being in Marathon, FL which is in the DHECC economic zone A. Wheeler resided at 822 NE 16 Court, Ft. Lauderdale, FL and was a contract instructor for BWSS located at 924 NE 20th Ave, Ft. Lauderdale, FL. Neither Wheeler's nor BWSS's address is located in a DHECC economic zone.

11. DHECC relied on the representations in the registration form and Purple form in determining that the claimant was located in DHECC economic zone A in computing his compensation award. This fraudulent misrepresentation caused the DHECC to pay the claimant $41,654.25 to which he was not entitled.

11. My investigation of claimant Stephen Ferrara, BEL Claim #100135202, revealed that he was not entitled to a compensation award of $46,993.75 which he was paid. The claimant's revenue for 2008 – 2010 was understated and William Becker Consulting's use of the 4 Penny method falsely allocated monthly revenue and variable expenses which affected the variable profits for the Benchmark and Compensation months that are used for the award calculation. More specifically, my investigation revealed:

a. Stephen Ferrara, a farrier located in Key Largo, FL, replaces and repairs horse shoes, and provides services in Islamorada, Miami and Homestead, FL. The business revenue and expenses are reported on Form 1040 (Individual Income Tax Return) Schedule C using the cash method of accounting as noted on the tax returns. Ferrara is married and files a separate tax return from his wife.

b. On or about 11/08/12, Ferrara filed a claim with DHECC with the assistance of William Becker Consulting. The DHECC computed the claim using the Benchmark years of 2007/2008/2009 and the months of May – December. The DHECC paid Ferrara $46,993.95 on 02/20/13, which includes $1,000 for accounting support.

  1. Federal income tax returns prepared by Gloria M. Batule, CPA, Miami, FL, for 2007-2010 (Doc. ID #6179652, 6179660, 9179668 and 6179679, respectively) were submitted to the DHECC, true and correct copies of which are attached as Dec. Exs. Y, Z, AA and BB, were submitted to the DHECC.

  2. P&Ls for 2007-2010 (Doc. ID # 6179615, 6179622, 6179634 and 6179642, respectively) also were submitted to the DHECC, true and correct copies of which are attached as Dec. Ex. CC. The gross receipts reported on the tax returns are consistent with the annual revenue reported on these P&Ls.

3. In October 2015, I obtained and analyzed the 2008 - 2010 Bank of America bank statements and deposited items for the account of Stephen Ferrara to determine net taxable deposits. Due to Bank of America's retention policy, records were only available for September 2008 through December 2010. The bank statements cut off period each month is around the 11th day as oppose to the end of the month. I performed a deposit analysis on a monthly basis that included deposits from the first to the end of each month. The deposited items consisted of checks from customers, Tally Ho Farms, transfers from savings, stock sales, tax refunds, gifts, cash and other non-revenue items. The checks from Tally Ho Farms, owned by Ferrara's wife, are classified as transfers, not income. I identified the non-income deposited items by the nature of the description on the deposit and information I obtained in my interview with Stephen Ferrara, as noted below. When there was no clear explanation of a deposit item from the records or Ferrara, I treated the deposit as non-revenue. I created the charts below illustrating my revenue analysis for 2008-2010.

4. As the chart I created below illustrates, the 2008 net taxable deposits for September – December total $34,075, which is $15,622 greater than the revenue reported on the P&Ls for the same months. This difference understates the variable profit for these months which are in the Benchmark period.

| Month | 2008 Deposits | Non Revenue | 2008 Net Taxable Deposits | 2008 P/L | Difference |
|-------|---------------|-------------|---------------------------|----------|------------|
| Sept  | 11,800.20     | -2,000.00   | 9,800.20                  | 2,323.00 | 7,477.20   |
| Oct   | 9,985.00      | -3,700.00   | 6,285.00                  | 4,380.00 | 1,905.00   |
| Nov   | 9,435.00      |             | 9,435.00                  | 5,353.00 | 4,082.00   |
| Dec   | 10,055.00     | -1,500.00   | 8,555.00                  | 6,397.00 | 2,158.00   |
|       | 41,275.20     | -7,200.00   | 34,075.20                 | 18,453.00| 15,622.20  |

5. As the chart I created below illustrates, the 2009 net taxable deposits total $89,583.64, which is $22,336.64 more than the revenue reported on the 2009 P&Ls and tax return. The difference in net taxable deposits and revenue for the Benchmark months is $20,128.30. This difference understates the variable profit for the Benchmark months (BM).

| Month | 2009 Deposits | Non Revenue | 2009 Net Taxable Deposits | 2009 P/L | Difference |
|-------|---------|---------|---------|---------|---------|
| Jan | 30,898.34 | -23,000.00 | 7,898.34 | 6,839.00 | 1,059.34 |
| Feb | 8,130.00 | -1,500.00 | 6,630.00 | 7,552.00 | -922.00 |
| Mar | 10,064.25 | -1,964.25 | 8,100.00 | 8,386.00 | -286.00 |
| Apr | 12,655.00 | -3,150.00 | 9,505.00 | 7,148.00 | 2,357.00 |
| May | 7,610.30 | | 7,610.30 | 5,837.00 | 1,773.30 |
| June | 8,810.00 | -1,500.00 | 7,310.00 | 5,541.00 | 1,769.00 |
| July | 8,320.00 | -1,500.00 | 6,820.00 | 6,247.00 | 573.00 |
| Aug | 13,560.00 | -6,400.00 | 7,160.00 | 4,869.00 | 2,291.00 |
| Sept | 8,455.00 | -1,500.00 | 6,955.00 | 3,127.00 | 3,828.00 |
| Oct | 7,655.00 | -1,860.00 | 5,795.00 | 3,228.00 | 2,567.00 |
| Nov | 11,864.17 | -4,679.17 | 7,185.00 | 3,665.00 | 3,520.00 |
| Dec | 12,880.00 | -4,265.00 | 8,615.00 | 4,808.00 | 3,807.00 |
| | 140,902.06 | -51,318.42 | 89,583.64 | 67,247.00 | 22,336.64 |
| BM | | | 57,450.30 | 37,322.00 | 20,128.30 |

6. As the chart I created below illustrates, the 2010 net taxable deposits total $84,818.94, which is $19,694.94 more than the revenue reported on the profit and loss statements and tax returns. The difference in net taxable deposits and revenue for the Compensation Period (CP) is $28,619.94. This difference has the effect of understating variable profits.

| Month | 2010 Deposits | Non Revenue | 2010 Net Taxable Deposits | 2010 P/L | Difference |
|-------|---------|---------|---------|---------|---------|
| Jan | 8,800.00 | -1,500.00 | 7,300.00 | 8,381.00 | -1,081.00 |
| Feb | 10,440.00 | -1,900.00 | 8,540.00 | 9,580.00 | -1,040.00 |
| Mar | 11,114.15 | -4,069.15 | 7,045.00 | 11,045.00 | -4,000.00 |
| Apr | 13,635.00 | -7,400.00 | 6,235.00 | 9,039.00 | -2,804.00 |
| May | 10,883.94 | -2,750.00 | 8,133.94 | 5,588.00 | 2,545.94 |
| June | 6,995.00 | -375.00 | 6,620.00 | 3,575.00 | 3,045.00 |
| July | 10,350.00 | -4,800.00 | 5,550.00 | 2,859.00 | 2,691.00 |
| Aug | 10,085.00 | -2,800.00 | 7,285.00 | 2,006.00 | 5,279.00 |
| Sept | 10,300.00 | -2,300.00 | 8,000.00 | 2,227.00 | 5,773.00 |
| Oct | 8,760.24 | -2,565.24 | 6,195.00 | 2,996.00 | 3,199.00 |
| Nov | 13,225.00 | -6,320.00 | 6,905.00 | 3,269.00 | 3,636.00 |
| Dec | 10,350.00 | -3,340.00 | 7,010.00 | 4,559.00 | 2,451.00 |
| | 124,938.33 | -40,119.39 | 84,818.94 | 65,124.00 | 19,694.94 |
| CP | | | 55,698.94 | 27,079.00 | 28,619.94 |

7. In the course of my investigation I interviewed Stephen Ferrara on 10/12/15. Ferrara said he is a farrier and performs services in Islamorada, Miami and Homestead, FL. Ferrara said customers pay by cash, check and credit card and all income is deposited into his bank account, but he does not have a bookkeeping system to record income and expenses. Ferrara stated he gives his CPA his bank statements, billings, accounts receivable and expense reports to prepare his tax return. Ferrara said he and his wife, Karen Flynn, file separate tax returns. I questioned Ferrara about the non-income deposit items I identified from my bank deposit analysis, and Ferrara said: (a) Flynn owns Tally Ho Farms and writes checks to Ferrara for half of the monthly mortgage and household expenses; (b) he received a $4,000 loan and gifts for birthdays and anniversary from his mother, Caroline Tracey; (c) he borrowed money from Capital One which was deposited into his bank account; and (d) the cash deposits were for sale items such as a trailer and possibly gifts or loans from his mother.

8. I recalculated the award by using the net taxable deposits for 2010, 2009 and September – December 2008 as revenue for the Benchmark and Computation period. Due to not having source documents for 2007 and part of 2008, I used the revenue reported on the P&Ls. I used the variable expense amounts that DHECC used for their computation. My recalculation shows the claimant did not have a net variable loss and would not be entitled to any claim amount.

9. Based on my investigation, it is clear that the revenue on the 2008-2010 tax returns and P&Ls were fraudulently understated which increased the BEL claim awards. The understatement for the Benchmark and Compensation period for 2008 (four months in which records were available) is $15,622.20; 2009 is $20,128.30; and 2010 is $28,619.94. William Becker Consulting used the 4 Penny method to incorrectly allocate the understated monthly revenue. Again, instead of using available source documents, a method to falsely allocate revenue based on a tourism sales tax percentage was used. In short, the revenue for the Benchmark months and the compensation months was understated, which resulted in no variable loss.

10. DHECC relied on the tax returns and the P&Ls submitted in support of the claim. As a result, the DHECC paid the claimant $46,993.95, when the claimant was not entitled to any award had revenue not been understated and falsely allocated to the Benchmark and Compensation.

12. My investigation of claimant Carol Nelson dba Carol Nelson Pro Cleaning, Claimant #100033620, revealed that the compensation award of $35,503.11, the amount claimant received from GCCF and DHECC, was overpaid by approximately $35,000 due to William Becker Consulting using the 4 Penny method to falsely allocate monthly revenue and variable expenses which effected the variable profits for the Benchmark and Compensation months that are used for the award calculation. More specifically, my investigation revealed:

   a. Carol Nelson operates a cleaning company that services rental properties consisting of condominiums, houses and timeshares used by tourist. The business revenue and expenses are reported on Form 1040 (Individual Income Tax Return) Schedule C using the cash method of accounting as noted on the tax returns.

   b. On or about 05/21/12, Carol Nelson dba Carol Nelson Pro Cleaning filed a GCCF claim (3587706) for an interim payment with the assistance of William Becker Consulting.

      1. Income tax returns prepared by Edna Horowitz, Tavernier, FL for 2008-2010 (Doc. ID #5581067), true and correct copies of which are attached as Dec. Exs. DD, EE and FF, were submitted.

      2. On 06/03/12, GCCF issued a determination letter on the interim payment to Carol Nelson, including a $7,988.44 interim payment.

   c. On or about 07/16/12, Carol Nelson dba Carol Nelson Pro Cleaning filed a claim with DHECC with the assistance of William Becker Consulting. The DHECC claim was computed using 2008 and 2009 as the Benchmark Period and used the months of May through December. The DHECC paid Carol Nelson $35,503.11 on 11/23/12, which includes $1,000 for accounting support.

      1. The same Income Tax Returns for 2008-2010 (Doc. ID #2381746, 2381778 and 2381813, respectively) submitted to the GCCF were submitted to the DHECC. *See* Dec. Exs. DD, EE and FF, respectively.

      2. P&Ls for 2008-2010 prepared by William Becker Consulting using the 4 Penny method to allocate monthly revenue (Doc. ID #5358279) also were submitted to the DHECC. True and correct copies of the P&Ls are attached as Dec. Ex. GG. The annual gross receipts for the P&Ls are consistent with the gross receipts reported on the tax returns.

   d. During the course of my investigation I telephonically interviewed Edna Horowitz on 12/14/15. Horowitz said she prepared the 2008-2010 tax returns for Carol Nelson using monthly P&Ls she created in QuickBooks. Horowitz said she used bank

statements, cancelled checks and receipts to make entries into QuickBooks. Horowitz said she was aware that William Becker prepared Nelson's claim but neither Nelson nor Becker requested the monthly P&Ls from her. Horowitz, upon permission from Nelson, said she would provide copies of Nelson's 2008-2010 monthly P&Ls, which I later obtained.

e.  In December 2015, I obtained the 2008-2010 monthly P&Ls from Horowitz for Carol Nelson Pro Cleaning, true and correct copies of which are attached as Dec. Exs. HH, II and JJ. The total revenue reflected on Nelson's P&Ls is the same as the total revenue reported on the P&Ls prepared by William Becker Consulting and the tax returns prepared by Horowitz. I created the below charts to illustrate the difference in monthly revenue reported on Nelson's P&Ls compared to those prepared by William Becker Consulting.

f.  As the chart I created below illustrates, the 2008 P&Ls prepared by Horowitz shows revenue for the Benchmark months (BM) of $79,210.16 which is $13,707.16 more than the Becker prepared statements using the 4 Penny method. This difference has the effect of understating variable profits.

| Month | 2008 P&L Claimant | 2008 P&L DHECC | Difference |
|---|---|---|---|
| Jan | 10,320.00 | 11,555.00 | -1,235.00 |
| Feb | 10,988.00 | 14,359.00 | -3,371.00 |
| Mar | 8,775.00 | 17,055.00 | -8,280.00 |
| Apr | 11,070.00 | 11,892.00 | -822.00 |
| May | 7,865.00 | 10,472.00 | -2,607.00 |
| June | 7,900.16 | 9,184.00 | -1,283.84 |
| July | 5,245.00 | 9,966.00 | -4,721.00 |
| Aug | 20,430.00 | 7,583.00 | 12,847.00 |
| Sept | 9,080.00 | 3,563.00 | 5,517.00 |
| Oct | 10,965.00 | 6,716.00 | 4,249.00 |
| Nov | 8,830.00 | 8,209.00 | 621.00 |
| Dec | 8,895.00 | 9,810.00 | -915.00 |
|  | 120,363.16 | 120,364.00 | -0.84 |
| BM | 79,210.16 | 65,503.00 | 13,707.16 |

g.  As the chart I created below illustrates, the 2009 P&Ls prepared by Horowitz shows revenue for the Benchmark months (BM) of $47,902.40, which is $2,414.00 more than

the Becker prepared statements using the 4 Penny method. This difference has the effect of understating variable profits.

| Month | 2009 P&L Claimant | 2009 P&L DHECC | Difference |
|---|---|---|---|
| Jan | 9,031.50 | 8,336.00 | 695.50 |
| Feb | 7,370.00 | 9,205.00 | -1,835.00 |
| Mar | 8,450.00 | 10,221.00 | -1,771.00 |
| Apr | 9,210.00 | 8,713.00 | 497.00 |
| May | 5,135.00 | 7,114.00 | -1,979.00 |
| June | 6,480.00 | 6,754.00 | -274.00 |
| July | 4,885.00 | 7,614.00 | -2,729.00 |
| Aug | 4,685.00 | 5,934.00 | -1,249.00 |
| Sept | 3,987.00 | 3,811.00 | 176.00 |
| Oct | 6,975.00 | 3,934.00 | 3,041.00 |
| Nov | 7,810.00 | 4,467.00 | 3,343.00 |
| Dec | 7,945.00 | 5,860.00 | 2,085.00 |
|  | 81,963.50 | 81,963.00 | 0.50 |
| BM | 47,902.00 | 45,488.00 | 2,414.00 |

h. As the chart I created below illustrates, the 2010 P&Ls prepared by Horowitz shows revenue for the Compensation Period (CP) of $56,892.30, which is $22,053.50 more than the Becker prepared statements using the 4 Penny method. This difference has the effect of understating variable profits. (See chart on following page)

| Month | 2010 P&L Claimant | 2010 P&L DHECC | Difference |
|-------|------------------|----------------|------------|
| Jan | 6,600.00 | 10,784.00 | -4,184.00 |
| Feb | 5,610.00 | 12,325.00 | -6,715.00 |
| Mar | 8,605.00 | 14,210.00 | -5,605.00 |
| Apr | 6,080.00 | 11,630.00 | -5,550.00 |
| May | 6,478.00 | 7,189.00 | -711.00 |
| June | 5,445.00 | 4,600.00 | 845.00 |
| July | 6,950.00 | 3,678.00 | 3,272.00 |
| Aug | 6,147.50 | 2,581.00 | 3,566.50 |
| Sept | 8,040.00 | 2,866.00 | 5,174.00 |
| Oct | 7,187.00 | 3,854.00 | 3,333.00 |
| Nov | 9,365.00 | 4,206.00 | 5,159.00 |
| Dec | 7,280.00 | 5,865.00 | 1,415.00 |
| | 83,787.50 | 83,788.00 | -0.50 |
| CP | 56,892.30 | 34,839.00 | 22,053.50 |

i.  Based on my investigation it is clear that revenue and variable expenses for the Benchmark and Compensation periods were falsely allocated by the 4 Penny method. The net effect of these understatements is a reduction of the variable loss of $13.992.92. The correct variable loss should be $220.80. In short, revenue for the Benchmark months and the compensation months was understated.

j.  DHECC relied on the P&Ls prepared by Becker to calculate the claimant's award. As a result, the DHECC paid the claimant $43,491.55, when the claimant was only entitled to approximately $500 had revenue and variable expenses not been falsely allocated to the Benchmark and Compensation months to inflate the award.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on November **22**, 2016

J. Lynn Barker

# EXHIBIT B

# Electronic Articles of Organization For
# Florida Limited Liability Company

 **353**
FILED 8:00 AM
April 19, 2016
Sec. Of State
cgolden

## Article I

The name of the Limited Liability Company is:

GUYS TOWING SALES & SERVICE LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

99275 OVERSEAS HIGHWAY
APT. 4
KEY LARGO, FL.   33037

The mailing address of the Limited Liability Company is:

99275 OVERSEAS HIGHWAY
APT. 4
KEY LARGO, FL.   33037

## Article III

The name and Florida street address of the registered agent is:

JAMES J AURELIO SR.
99275 OVERSEAS HIGHWAY
APT. 4
KEY LARGO, FL.   33037

Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.

Registered Agent Signature:   JAMES AURELIO SR.

## Article IV

The name and address of person(s) authorized to manage LLC:


███████353
FILED 8:00 AM
April 19, 2016
Sec. Of State
cgolden

Title:   AMBR
JAMES J AURELIO SR
99275 OVERSEAS HIGHWAY APT 4
KEY LARGO, FL.   33037

Title:   AMBR
GAETANO A BAUST
92157 OVERSEAS HIGHWAY LOT M11
TAVERNIER, FL.   33070

## Article V

The effective date for this Limited Liability Company shall be:

04/14/2016

Signature of member or an authorized representative

Electronic Signature: JAMES AURELIO SR.

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

# EXHIBIT C

**2016 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L11000███████

Entity Name: WILLIAM A. BECKER CONSULTING, LLC

**Current Principal  Place of Business:**

1127 GULF STREAM LANE
KEY LARGO, FL  33037

**Current Mailing Address:**

1127 GULF STREAM LANE
KEY LARGO, FL  33037  US

**FEI Number:** ████████                                    **Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

BECKER, PATRICIA
1127 GULF STREAM LANE
KEY LARGO, FL  33037  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

                        Electronic Signature of Registered Agent                                                               Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGR |
| Name | BECKER, PATRICIA |
| Address | 1127 GULFSTREAM LN |
| City-State-Zip: | KEY LARGO FL  33037 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: PATRICIA BECKER                              MANAGER                    03/30/2016

                        Electronic Signature of Signing Authorized Person(s) Detail                                       Date

# EXHIBIT D

## Restivo & Reilly LLC

Attorneys at Law

103400 Overseas Highway, Suite 237, Key Largo, Florida 33037 • (305) 453-4961 • Fax (886) 496-4131

### Contingency Fee Agreement

I, Guys Towing _____, hereby retain and employ Restivo & Reilly, LLC, as my attorneys to represent me in my claims for against BP and/or Hyundai Heavy Industries and/or Transocean and/or Anadarko Petroleum Corp. and/or MOEX Offshore 2007 and/or Mitsui and/or Gulf Coast Claims Facility for lost profits and/or lost income resulting from the Deepwater Horizon Oil Spill.

The undersigned client has, before signing this contract, received and read this document and understands each of the rights set forth therein. The undersigned client has voluntarily signed the statement and received a signed copy to refer to while being represented by the undersigned attorneys. The undersigned client acknowledges that he/ she has not been solicited by the firm of Restivo & Reilly, LLC. The undersigned attorneys acknowledge that the client has a pre-existing contingency fee arrangement with William A. Becker Consulting, LLC, and that the fees to be paid to Restivo and Reilly, LLC are separate and apart from the client's pre-existing contingency fee arrangement with William A. Becker Consulting, LLC.

THE PARTIES AGREE that the attorneys may advance the costs of filing fees which will be recovered by the attorneys from any recovery. The Parties agree that attorney's fees may be awarded by the Court or paid directly by the Defendants. In the event that attorney's fees are not awarded by the Court or paid by Defendants directly, as compensation for attorney services, I agree to pay my attorneys, from the proceeds or recovery, the following fee:*

Joinder in the Deepwater Horizon Economic & Property Damages Class and settlement of claim for the duration of the Court-Ordered stay of litigation:

If you accept settlement offered in class-action lawsuit, 5% (excluding fees owed to William A. Becker Consulting, LLC.)

If you reject the settlement offer/opt out of the settlement group, and proceed with litigation:

20% of settlement paid to client before all fees and costs (excluding fees owed to William A. Becker Consulting, LLC.)

An additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment.

I understand this contract may be canceled by written notification to the attorney at any time within three (3) business days of the date the contract was signed, as shown below, and if canceled the client shall not be obligated to pay any fees to the attorneys for the work performed during that time. If the attorneys have advanced funds to others in representation of the client, the attorneys are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client.

DATED this _____ day of _____, 2012.

_____          _____
Client Signature / Phone                    Jessica Reilly, Esquire


**Bernadette Restivo** • Licensed in Florida and Ohio • bernadette@restivoandreilly.com
**Jessica Reilly** • Licensed in Florida • jessica@restivoandreilly.com

# Restivo & Reilly, LLC

## Attorneys at Law

103400 Overseas Highway, Suite 237, Key Largo, Florida 33037 • (305) 453-4961 • Fax (888) 496-4131

### Contingency Fee Agreement

I, _Fred L Wheeler_ , hereby retain and employ Restivo & Reilly, LLC, as my attorneys to represent me in my claims for against BP and/or Hyundai Heavy Industries and/or Transocean and/or Anadarko Petroleum Corp. and/or MOEX Offshore 2007 and/or Mitsui and/or Gulf Coast Claims Facility for lost profits and/or lost income resulting from the Deepwater Horizon Oil Spill.

The undersigned client has, before signing this contract, received and read this document and understands each of the rights set forth therein. The undersigned client has voluntarily signed the statement and received a signed copy to refer to while being represented by the undersigned attorneys. The undersigned client acknowledges that he/ she has not been solicited by the firm of Restivo & Reilly, LLC. The undersigned attorneys acknowledge that the client has a pre-existing contingency fee arrangement with William A. Becker Consulting, LLC, and that the fees to be paid to Restivo and Reilly, LLC are separate and apart from the client's pre-existing contingency fee arrangement with William A. Becker Consulting, LLC.

THE PARTIES AGREE that the attorneys may advance the costs of filing fees which will be recovered by the attorneys from any recovery. The Parties agree that attorney's fees may be awarded by the Court or paid directly by the Defendants. In the event that attorney's fees are not awarded by the Court or paid by Defendants directly, as compensation for attorney services, I agree to pay my attorneys, from the proceeds or recovery, the following fee:*

Joinder in the Deepwater Horizon Economic & Property Damages Class and settlement of claim for the duration of the Court-Ordered stay of litigation:

If you accept settlement offered in class-action lawsuit, 5% (excluding fees owed to William A. Becker Consulting, LLC.)

If you reject the settlement offer/opt out of the settlement group, and proceed with litigation:

20% of settlement paid to client before all fees and costs (excluding fees owed to William A. Becker Consulting, LLC.)

An additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment.

I understand this contract may be canceled by written notification to the attorney at any time within three (3) business days of the date the contract was signed, as shown below, and if canceled the client shall not be obligated to pay any fees to the attorneys for the work performed during that time. If the attorneys have advanced funds to others in representation of the client, the attorneys are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client.

DATED this _12_ day of _June_, 2012.

Client Signature / Phone

DBA out postmarine

Jessica Reilly, Esquire

**Bernadette Restivo** • Licensed in Florida and Ohio • bernadette@restivoandreilly.com
**Jessica Reilly** • Licensed in Florida • jessica@restivoandreilly.com

Restivo & Reilly, LLC
Attorneys at Law

103400 Overseas Highway, Suite 237, Key Largo, Florida 33037 • (305) 453-4961 • Fax (888) 496-4131

Contingency Fee Agreement

I, **Anima Charters and Sailing**, hereby retain and employ Restivo & Reilly, LLC, as my attorneys to represent me in my claims for against BP and/or Hyundai Heavy Industries and/or Transocean and/or Anadarko Petroleum Corp. and/or MOEX Offshore 2007 and/or Mitsui and/or Gulf Coast Claims Facility for lost profits and/or lost income resulting from the Deepwater Horizon Oil Spill.

The undersigned client has, before signing this contract, received and read this document and understands each of the rights set forth therein. The undersigned client has voluntarily signed the statement and received a signed copy to refer to while being represented by the undersigned attorneys. The undersigned client acknowledges that he/ she has not been solicited by the firm of Restivo & Reilly, LLC. The undersigned attorneys acknowledge that the client has a pre-existing contingency fee arrangement with William A. Becker Consulting, LLC, and that the fees to be paid to Restivo and Reilly, LLC are separate and apart from the client's pre-existing contingency fee arrangement with William A. Becker Consulting, LLC.

THE PARTIES AGREE that the attorneys may advance the costs of filing fees which will be recovered by the attorneys from any recovery. The Parties agree that attorney's fees may be awarded by the Court or paid directly by the Defendants. In the event that attorney's fees are not awarded by the Court or paid by Defendants directly, as compensation for attorney services, I agree to pay my attorneys, from the proceeds or recovery, the following fee:*

Joinder in the Deepwater Horizon Economic & Property Damages Class and settlement of claim for the duration of the Court-Ordered stay of litigation:

If you accept settlement offered in class-action lawsuit, 5% (excluding fees owed to William A. Becker Consulting, LLC.)

If you reject the settlement offer/opt out of the settlement group, and proceed with litigation:

20% of settlement paid to client before all fees and costs (excluding fees owed to William A. Becker Consulting, LLC.)

An additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment.

I understand this contract may be canceled by written notification to the attorney at any time within three (3) business days of the date the contract was signed, as shown below, and if canceled the client shall not be obligated to pay any fees to the attorneys for the work performed during that time. If the attorneys have advanced funds to others in representation of the client, the attorneys are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client.

DATED this _21_ day of _SEPT_, 2012.

_____
Client: Theodore Wheeler, (954) 763-8464

_____
for Jessica Reilly, Esquire

**Bernadette Restivo** • Licensed in Florida and Ohio • bernadette@restivoandreilly.com
**Jessica Reilly** • Licensed in Florida • jessica@restivoandreilly.com

# Restivo & Reilly, LLC
## Attorneys at Law

103400 Overseas Highway, Suite 237, Key Largo, Florida 33037 • (305) 453-4961 • Fax (888) 496-4131

### Contingency Fee Agreement

I, _Stephen Ferrara_, hereby retain and employ Restivo & Reilly, LLC, as my attorneys to represent me in my claims for against BP and/or Hyundai Heavy Industries and/or Transocean and/or Anadarko Petroleum Corp. and/or MOEX Offshore 2007 and/or Mitsui and/or Gulf Coast Claims Facility for lost profits and/or lost income resulting from the Deepwater Horizon Oil Spill.

The undersigned client has, before signing this contract, received and read this document and understands each of the rights set forth therein. The undersigned client has voluntarily signed the statement and received a signed copy to refer to while being represented by the undersigned attorneys. The undersigned client acknowledges that he/ she has not been solicited by the firm of Restivo & Reilly, LLC. The undersigned attorneys acknowledge that the client has a pre-existing contingency fee arrangement with William A. Becker Consulting, LLC, and that the fees to be paid to Restivo and Reilly, LLC are separate and apart from the client's pre-existing contingency fee arrangement with William A. Becker Consulting, LLC.

THE PARTIES AGREE that the attorneys may advance the costs of filing fees which will be recovered by the attorneys from any recovery. The Parties agree that attorney's fees may be awarded by the Court or paid directly by the Defendants. In the event that attorney's fees are not awarded by the Court or paid by Defendants directly, as compensation for attorney services, I agree to pay my attorneys, from the proceeds or recovery, the following fee:*

Joinder in the Deepwater Horizon Economic & Property Damages Class and settlement of claim for the duration of the Court-Ordered stay of litigation:

If you accept settlement offered in class-action lawsuit, 5% (excluding fees owed to William A. Becker Consulting, LLC.)

If you reject the settlement offer/opt out of the settlement group, and proceed with litigation:

20% of settlement paid to client before all fees and costs (excluding fees owed to William A. Becker Consulting, LLC.)

An additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment.

I understand this contract may be canceled by written notification to the attorney at any time within three (3) business days of the date the contract was signed, as shown below, and if canceled the client shall not be obligated to pay any fees to the attorneys for the work performed during that time. If the attorneys have advanced funds to others in representation of the client, the attorneys are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client.

DATED this _8_ day of _Oct_, 2012.

_____
Client Signature / Phone

_____
Jessica Reilly, Esquire

**Bernadette Restivo** • Licensed in Florida and Ohio • bernadette@restivoandreilly.com
**Jessica Reilly** • Licensed in Florida • jessica@restivoandreilly.com

CONTINGENT FEE CONTRACT

I, __Carol Nelson__, hereby retain and employ Restivo & Reilly, LLC, as my attorneys to represent me in my claims for against BP and/or Hyundai Heavy Industries and/or Transocean and/or Anadarko Petroleum Corp. and/or MOEX Offshore 2007 and/or Mitsui and/or Gulf Coast Claims Facility for lost profits and/or lost income resulting from the Deepwater Horizon Oil Spill.

The undersigned client has, before signing this contract, received and read this document and understands each of the rights set forth therein. The undersigned client has voluntarily signed the statement and received a signed copy to refer to while being represented by the undersigned attorneys. The undersigned client acknowledges that he/ she has not been solicited by the firm of Restivo & Reilly, LLC. The undersigned attorneys acknowledge that the client has a pre-existing contingency fee arrangement with William A. Becker Consulting, LLC, and that the fees to be paid to Restivo and Reilly, LLC are separate and apart from the client's pre-existing contingency fee arrangement with William A. Becker Consulting, LLC.

THE PARTIES AGREE that the attorneys may advance the costs of filing fees which will be recovered by the attorneys from any recovery. The Parties agree that attorney's fees may be awarded by the Court or paid directly by the Defendants. In the event that attorneys fees are not awarded by the Court or paid by Defendants directly, as compensation for attorney services, I agree to pay my attorneys, from the proceeds or recovery, the following fee:*

Joinder in the Deepwater Horizon Economic & Property Damages Class and settlement of claim for the duration of the Court-Ordered stay of litigation:

If you accept settlement offered in class-action lawsuit, 5% (excluding fees owed to William A. Becker Consulting, LLC.)

If you reject the settlement offer/opt out of the settlement group, and proceed with litigation:

20% of settlement paid to client before all fees and costs (excluding fees owed to William A. Becker Consulting, LLC.)

An additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment.

I understand this contract may be canceled by written notification to the attorney at any time within three (3) business days of the date the contract was signed, as shown below, and if canceled the client shall not be obligated to pay any fees to the attorneys for the work performed during that time. If the attorneys have advanced funds to others in representation of the client, the attorneys are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client.

DATED this __22__ day of __May__, 2012.

_Carol Nelson_
Client Signature / Phone

_Jessica Reilly, Esquire_

# EXHIBIT E

# Final Fee Disbursement Agreement

Guy's Towing

| | |
|---|---:|
| Compensation Amount: | 38,978.84 |
| Risk Transfer Premium: | 58,468.26 |
| Accounting Support: | 1,000.00 |
| Less Any Prior Spill-Related Payments: | - |
| Total Amount: | 98,447.10 |
| Accounting Fee Paid By Client: | 1,000.00 |
| Balance of Accounting Fee to William A. Becker Consulting if any: | - |
| Total Award Amount less Accounting Support: | 97,447.10 |

| | | | |
|---|---|---|---:|
| Recovery Fee to William A. Becker Consulting: | Recovery % | 20% | 19,489.42 |
| Recovery Fee to Restivo and Reilly: | Recovery % | 5% | 4,872.36 |
| Net to Client From Recovery: | | | 73,085.33 |
| Accounting Fee Reimbursement: | | | 1,000.00 |
| Total To Client: | | | 74,085.33 |

Signed _____
James Aurelio Sr

Signed _____
William A. Becker Consulting, LLC.

Signed _____
Restivo and Reilly, LLC.

# Final Fee Disbursement Agreement

### Outpost Marine Inc.

| | | | |
|---|---|---|---|
| Compensation Amount: | | | 25,714.86 |
| Risk Transfer Premium: | | | 64,287.15 |
| Accounting Support: | | | 1,000.00 |
| Less Any Prior Spill-Related Payments: | | | -- |
| Total Amount: | | | 91,002.01 |
| Accounting Fee Paid By Client: | | | 1,000.00 |
| Balance of Accounting Fee to William A. Becker Consulting if any: | | | -- |
| Total Award Amount less Accounting Support: | | | **90,002.01** |
| Recovery Fee to William A. Becker Consulting: | Recovery % | 20% | 18,000.40 |
| Recovery Fee to Restivo and Reilly: | Recovery % | 5% | 4,500.10 |
| Net to Client From Recovery: | | | 67,501.51 |
| Accounting Fee Reimbursement: | | | **1,000.00** |
| Total To Client: | | | **68,501.51** |

Signed  _____
Fred Wheeler

Signed  _____
William A. Becker Consulting, LLC.

Signed  _____
Restivo and Reilly, LLC.

# Final Fee Disbursement Agreement

## ANIMA CHARTERS & SAILING

| | |
|---|---:|
| Compensation Amount: | 11,615.50 |
| Risk Transfer Premium: | 29,038.75 |
| Accounting Support: | 1,000.00 |
| Less Any Prior Spill-Related Payments: | - |
| Total Amount: | 41,654.25 |
| Accounting Fee Paid By Client: | - |
| Balance of Accounting Fee to William A. Becker Consulting if any: | 1,000.00 |
| Total Award Amount less Accounting Support: | 40,654.25 |

| | | | |
|---|---|---|---:|
| Recovery Fee to William A. Becker Consulting: | Recovery % | 20% | *9,130.85* ~~1,000.00~~ 8,130.85 |
| Recovery Fee to Restivo and Reilly: | Recovery % | 5% | 2,032.71 |
| Net to Client From Recovery: | | | 30,490.69 |
| Accounting Fee Reimbursement: | | | - |
| Total To Client: | | | **30,490.69** |

| | | |
|---|---|---:|
| Signed | _____<br>Theodore Wheeler | 2/21/2013 |
| Signed | _____<br>William A. Becker Consulting, LLC. | |
| Signed | _____<br>Restivo and Reilly, LLC. | |

# Final Fee Disbursement Agreement

Stephen Ferrara

| | |
|---|---:|
| Compensation Amount: | 18,397.58 |
| Risk Transfer Premium: | 27,596.37 |
| Accounting Support: | 1,000.00 |
| Less Any Prior Spill-Related Payments: | -- |
| Total Amount: | 46,993.95 |
| Accounting Fee Paid By Client: | 250.00 |
| Balance of Accounting Fee to William A. Becker Consulting if any: | 750.00 |
| Total Award Amount less Accounting Support: | **45,993.95** |

| | | | |
|---|---|---|---:|
| Recovery Fee to William A. Becker Consulting: | Recovery % | 20% | 9,198.79 |
| Recovery Fee to Restivo and Reilly: | Recovery % | 5% | 2,299.70 |
| Net to Client From Recovery: | | | 34,495.46 |
| Accounting Fee Reimbursement: | | | **250.00** |
| Total To Client: | | | **34,745.46** |
| Accounting Fee to William A. Becker Consulting | | | 750.00 |

Signed _____          2/8/2013
                    Stephen Ferrara

Signed _____
              William A. Becker Consulting, LLC.

Signed _____
                  Restivo and Reilly, LLC.

# Final Fee Disbursement Agreement

Carol Nelson Pro Cleaning

| | | | | |
|---|---|---|---|---|
| Compensation Amount: | | | | 16,996.62 |
| Risk Transfer Premium: | | | | 25,494.93 |
| Accounting Support: | | | | 1,000.00 |
| Less Any Prior Spill-Related Payments: | | | | 7,988.44 |
| Total Amount: | | | | 35,503.11 |
| Accounting Fee Paid By Client: | | | | 1,000.00 |
| Balance of Accounting Fee to William A. Becker Consulting if any: | | | | - |
| Total Award Amount less Accounting Support: | | | | **34,503.11** |
| | Recovery Fee to William A. Becker Consulting: | Recovery % | 20% | 6,900.62 |
| | Recovery Fee to Restivo and Reilly: | Recovery % | 5% | 1,725.16 |
| | Net to Client From Recovery: | | | 25,877.33 |
| | Accounting Fee Reimbursement: | | | **1,000.00** |
| | Total To Client: | | | **26,877.33** |

Signed  _____
Carol Nelson

Signed  _____
William A. Becker Consulting, LLC.

Signed  _____
Restivo and Reilly, LLC.