IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | SECTION J |
| | * | |
| | * | HONORABLE CARL J. |
| | * | BARBIER |
| *No. 12-970, Bon Secour Fisheries, Inc. et al.* | * | |
| *v. BP Exploration & Production, Inc., et al.* | * | |
| | * | |
| | * | |

## MOTION FOR AID IN CONSUMMATION OF
## SETTLEMENT AGREEMENT

Boh Bros. Construction Company, L.L.C. ("Boh Bros.") submits this Motion for Aid in Consummation of Settlement Agreement, pursuant to Rule 16 of the Federal Rules of Civil Procedure and the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Settlement Agreement").

## INTRODUCTION

Boh Bros. has, over the last four years, expended *extraordinary* time, money and resources working with Program Vendors, providing them unfettered and continuous access to company representatives, internal and external accountants, and volumes of highly confidential information (well beyond the parameters of the Settlement Agreement) in a determined effort to facilitate the processing of its Business Economic Loss ("BEL") claim.  Boh Bros. worked extensively with PwC accountants to facilitate the analysis of Boh Bros.' BEL claim under Policy 495.  As explained by the Claims Administrator, "this was a massive undertaking across every facet of the Settlement Program."  At the end of 2015, PwC advised that the accountants were finished with the analysis of Boh Bros.' claim.   Then in early 2016, the Claims

1

Administrator told Boh Bros. that the Settlement Program was placing Boh Bros.' claim "on moratoria hold" because of three (3) *de minimis* tasks comprising .018% (or less than two-one hundredths of a percent) of total revenue.   Although Boh Bros. disputes that such *de minimis* work (none of which is oil and gas, offshore or moratoria) is a basis for "moratoria hold",  Boh Bros. suggested an easy solution: just back the *de minimis* revenue out.  On October 30, 2016, the Claims Administrator advised the Settlement Program cannot finalize Boh Bros. BEL claim until "BP agrees" on a "procedure" for backing out this *de minimis* revenue.  The particular facts surrounding the processing of Boh Bros.' BEL claim as outlined in Exhibit "A", demonstrate a compelling need for the court's assistance.

## BACKGROUND

Beginning in 2012, Boh Bros. submitted extensive source documentation, confidential financial and customer files and access to management, accountants and lawyers.   In January, 2013, the Settlement Program asked for further confidential files (including contract files/ledgers detailing customer, project and revenues for each year 2008-2011) to confirm what Boh Bros. had already attested to, that Boh Bros. is not a Department of Defense ("DOD") contractor, *i.e.* less than 50% of claimants 2010 annual revenue is from  DOD contracts.[1]  Boh Bros. complied and the Program Vendors concurred that Boh Bros. is a "Highway, Bridges and Distribution Line" contractor, not a DOD contractor.  The Settlement Program then announced that because Boh Bros.' website had a picture of a boat (related to bridge repair of the Twin Span post-Katrina), Boh Bros.' claim was sent to review for "potential moratoria loss", notwithstanding:

---

[1] Less than 22% of Boh Bros. annual revenue in 2010 was from DOD contracts as defined under the Settlement Agreement and Policy 465; less than 14% in each year 2008-2011.

i.    Boh Bros.' NAICS code is <u>not</u> marked by an "x" in Exhibit 19 to the Settlement Agreement;

ii.    Exhibit 19 to the Settlement Agreement, expressly <u>excludes</u> claims of companies such as Boh Bros. who are "Roadway, Highways, Bridges and Distribution Line Contractors" from moratoria review; and

iii.    In its claim form, Boh Bros. answered "No" under oath to the question about providing significant services to the oil and gas industry in the Gulf of Mexico.

Boh Bros. then produced more highly confidential customers' files, affidavits and unrestrained access to management, accountants and lawyers, demonstrating that Boh Bros. is not an industry type subject to moratoria review. The Settlement Program finally removed Boh Bros. from moratoria limbo. This was confirmed by the Settlement Program's lead accountant in charge of "moratoria losses".

Seemingly satisfied with Boh Bros.' eligibility, the Settlement Program spent two years analyzing documents to "match revenue to expenses". In July, 2014, the Settlement Program advised that Boh Bros.' claim was in accounting review under Policy 495 to determine if there were any unresolved matching issues. As noted by the Claims Administrator, "substantial effort was required to implement the methodologies. This effort was a massive undertaking and required the cooperation and collaboration of every vendor across every facet of the Program." Notwithstanding the magnitude of time and resources, Boh Bros. participated in good faith and honored each request to facilitate the Policy 495 and construction methodology analysis. On November 15, 2015, PwC advised Boh Bros. that the accountant in charge of calculating Boh Bros.' claim was "very close to finishing".

In December, 2015, the Claims Administrator asked about 3 *de minimis* projects because of a "keyword" search performed by unidentified members of a new "moratoria team". These 3

tasks were all land based and clearly not oil and gas or moratoria.  Boh Bros. then spent the next four months meeting with the Claims Administrator, Vendors and consultants and providing every scrap of paper and information on these 3 *de minimis* tasks.

As the record shows, the Bisso "engagement" was a 2008 task comprising less than .009% of the total yearly revenue for 2008.  In 2009, the Bisso task comprised less than .0005% of the total yearly revenue for 2009 and Versabar less than .008%.  New Industries was less than .0330%.  All of the work was *de minimis*/infinitesimal.  None of the work was oil and gas related; the work to complete each task took less than a couple of days.  All of the tasks were performed onshore.  The sum of the three tasks comprise less than .018% - or less than two-one hundredths of a percent of total revenue for the benchmark years.  (or about as close to zero as you can get).

On February 26, 2016, the Claims Administrator explained that the Settlement Program will keep Boh Bros.' claim on hold until BP agrees on how to "back out" potential moratoria loss <u>no</u> <u>matter</u> <u>how</u> *de minimis* the pennies.  This decision is based on Boh Bros.' 3 tasks for Bisso, New Industries and Versabar, as "those companies appear to be engaged in moratoria-related projects associated with offshore oil and gas drilling in the Gulf of Mexico".

## THE LAW

Placing Boh Bros.' claim on perpetual hold pending an "agreement by BP" is inconsistent with the Settlement Agreement, every Policy Decision, and all relevant appeal decisions.  The appeal panel/court decisions uphold awards to claimants with far more "connexity" to "oil and gas/moratoria" than Boh Bros.

4

**Order and Judgment (Claim No. 16-13976; Claim ID #19468) dated October 12, 2016**. The court upheld the Claims Administrator's determination that the claim was not excluded as "oil and gas" related. The Court reversed the decision of the Appeal Panel even though the parent company "was a cradle to grave oil company which engaged in the full array of operations beginning with exploration and extraction and ending with the retail sale of fill". The Court found "whether or not [a claimant] is excluded from the Settlement turns on what NAICS code best describes the **primary** nature of claimant's business" and notwithstanding the fact "that [claimant] admits it engaged in some excluded activities – it wholesaled gasoline to third-parties and operated two refineries".

**2016-192.** Claimant is a metal fabricator (located in a major center for oil and gas activities) and some but not all of its customers include oil and gas companies. Although claimant has customers in the oil and gas industry, it also has customers outside the oil and gas industry. Just because a company has some customers in oil and gas does not make it a member of the industry. To rule otherwise would lead to absurd results. Otherwise, every widget manufacturer that sells some of its products to an oil company would be a member of the oil and gas industry. This result was surely not intended by the Settlement Agreement. BP's argument that the claimant is excluded lacks all merit. BP's suggestion that some of claimant's losses stem from the federal moratoria is also without basis. Claimant noted that almost all of its products and services were onshore. There is no basis for a moratoria review.

**Claimant ID #100274212, Claim ID 282530.** "Claimant does not operate in the Gulf of Mexico". It performs services only on inland waterways...Section 38.93 requires a moratoria review only for losses related to "offshore oil industry activity"...[Claimants] NAICS code [was] not listed in Exhibit 19.

**Claimant ID #100153453, Claim ID #112545.** The mere fact that claimant might sell a junction box or central panel to a company that has oil and gas operations does not automatically constitute it a member of the oil and gas industry.

**2014-748.** Claimant's customers include those involved in oil and gas industry. However, claimant's primary business is not oil and gas and the NAICS code assigned claimant is not one of those listed in Exhibit 17 or 19 of the Settlement Agreement.

**2014-762.** Claimant is a Houma machine shop. Claimant's NAICS code is not excluded. There is a question that some of the claimant's customers are in the oil and gas industry; however, the Claims Administrator did not err in failing to exclude this claimant. For example, a food distributor who supplies groceries to offshore oil and gas companies is not in the oil and gas industry. A uniform company who supplies uniforms to offshore oil and gas companies is not in the oil and gas industry. Thus, the oil and gas exclusion is without merit.

**2014-858.** Claimant is a Lockport, Louisiana chemical company. Claimant's NAICS code is not excluded. Panel upheld the award notwithstanding that claimant is a division of a

5

company which has interests in oil and gas wells and is affiliated with an oilfield, and that claimant services customers in the oil and gas industry.

**2015-291**. Claimant is a hydraulic cylinder manufacturer. Claimant's NAICS code is not excluded. Claimant attests on its claim form that it "did not provide significant services, goods and/or supplies to businesses in the Gulf of Mexico in 2009". Restrictions in the Settlement Agreement do not apply to this claimant.

**2015-421**. Claimant has both onshore and offshore business. Claimant's NAICS code is not excluded. Onshore business is clearly not excluded. Offshore business includes sales to corporations with NAICS codes that are excluded. This type of proof is one step shy of what is needed. BP cannot argue that claimants' NAICS code is excluded.

**2015-482**. Claimants overall activities are not significantly involved in the offshore drilling industry. A moratoria analysis is not necessary.

**2015-525**. Claimant is a pipe wholesaler supplier. Claimant did not provide significant services, goods and/or supplies to any business in the offshore, oil and gas industry in 2009. No moratoria analysis is necessary.

**2015-538**. Claimant is contracted by oil and gas companies to negotiate the purchase of oil and gas leases. Since claimant's business was primary onshore, there is no moratoria loss.

**2015-675**. Claimant owns forty-two gas stations. The task is to examine the claimant's primary business activities; if the code appears on Exhibit 17, the claim is excluded; if not, the claim is eligible.

**2015-731**. Claimant purchases fuel, loads fuel into pumper trucks, then delivers and sells the fuel dockside to boats and marinas. Claimant's code is not listed in Exhibit 17. Claimant is not excluded.

**2015-1029**. Claimant is a fabricator of piping, heat, exchanges, and pressure vessels. Claimant's code is not excluded or marked by x on Exhibit 19. No moratoria analysis is necessary.

**2015-1040**. Claimant is a fire safety and equipment company with customers in the mining, food services, construction and chemical industries in addition to oil and gas industry. Claimant's NAICS code is not listed in Exhibit 17. Some, but not all, of claimant's customers are themselves members of the oil and gas industry. There is nothing in the Settlement Agreement that would impute the oil and gas industry exclusion to claimants who sell products or provide services to excluded entities. Further, even though claimant had made statements to a federal agency that losses suffered by employees resulted from the moratoria, claimant's NAICS code is not listed on Exhibit 19; so a moratoria evaluation was unnecessary.

6

**2015-1122**. Claimant is in business of "Sales and Services – Steel Fabrication". Claimant's NAICS code is not listed in Exhibit 17. Although claimant may fabricate produces for potential use in the oil and gas industry, claimant's primary business is not excluded.

**2015-1150**. Claimant conducts training in various industries, including the oil and gas industry. The claim form in the GCCF program represents its business as "training oil field workers" and several of its customers engage in the oil and gas industry. Program vendors fully investigated claimant's activities and revenue *vis-à-vis* potential offshore involvement and the award is not impacted by moratoria losses.

**2015-1335**. Claimant is a Rayne, Louisiana lessor/seller of blast-resistant buildings to the "offshore sector". Claimant mainly sold to land-based operations. No moratoria analysis is necessary.

**2015-1420**. Claimant's clients were severely impacted by the oil spill and moratorium; work forces were reduced. Claimant, however, had no direct connection to the oil and gas industry. There is simply an insufficient nexus to the oil and gas industry to trigger a non-mandatory analysis. To hold otherwise would require such an analysis for other businesses with no connection to the oil and gas industry. Nothing in the Settlement Agreement would require this degree of moratoria analysis. BP's argument for expansion of the moratoria loss is rejected.

**2015-1453**. Claimant is a sand and limestone business in Amelia, Louisiana. Claimant admits that some of its 2009 revenue is derived from provision of services, goods and/or supplies to businesses in the oil and gas industry. BP argues that such revenues should be removed from the compensation schedule. Claimant's industry is not marked in Exhibit 19 for automatic moratoria review. The Settlement Agreement does not define the terms "caused by" or "resulting from" moratoria loss. However, Section 38.93 is clear that moratoria losses requiring exclusions are those resulting from the federal moratorium on drilling that occurred in May 2010. In other words, only those incurred in 2010 are excluded.

**#293699; 11/24/15**. Claimant is a contractor who performs welding services. From 2008-2010, claimant derived an average of 90% of its revenues performing welding services for oil and gas business. The panel concluded claimant's primary business based on its NAICS code is not oil and gas. The focus is on the claimant's business, not its customer base or revenue source.

**ID #158748**. Claimant is a steel fabrication company and manufacturer's pipe racks, structures and buildings at four oil refinery facilities. The claimant is not the onsite contractor for the refinery, and therefore, not primarily engaged in the oil and gas industry.

**2015-1474**. Claimant manufacturers safety harnesses and fire protection products; some items are for potential use in the oil and gas industry. Claimant's NAICS code is not listed on Exhibit 19 pertaining to moratoria losses. Claimant did not provide significant services, goods or supplies to any business in the offshore, oil and gas industry in 2009.

7

**2016-646**. Claimant is a distribution center for a producer of gas and fluid system components for various industries. The record shows no significant revenues were received from the oil and gas industry during 2009.

**2016-1236**. Claimant fabricates for refineries, but is not on-site contractor. A review of customer lists evidences the company services a broad of industries and is not primarily engaged in the oil and gas industry.

**See also, 2016-1336; 2016-135**.

All of these decisions clearly hold that the focus is on the claimant's business, not its customers or revenues. Here, the Settlement Program could easily back out the revenue associated with Boh Bros.' "3 engagements"; they are *de minimis* and have no conceivable effect on causation and/or compensation. For the high level PwC forensic accountants who have analyzed Boh Bros.' claim for the past four years, this would be a pretty mundane task, especially compared to the extensive analysis already undertaken. However, the Settlement Program has advised Boh Bros. that the Settlement Program will not finalize Boh Bros.' claim until "BP and the PSC" agree.

These actions have landed Boh Bros. in a conundrum never envisioned by the Settlement Agreement. Boh Bros. filed its claim in good faith to protect its rights, and continues to advocate the Settlement Agreement. To date, Boh Bros. has expended considerable time, money, and resources pursuing its rights under the Settlement Agreement, while assuming all of the risks, costs, and uncertainties of an ever changing process. Yet still, Boh Bros. is no more certain of *how, when* or *if* its claim will be processed.

Boh Bros. recognizes the value of the Settlement. More importantly, Boh Bros. has tried, at its expense, to navigate the Kafkaesque legal landscape of the Settlement Agreement. Boh Bros. also recognizes that it is not feasible for the Court to act as an arbitrator of each individual

8

claim. The consideration, evaluation and processing of individual claims is rightfully within the province of the Claims Administrator, the court-approved Vendors and the Appeal Panel. (See Rules for Appeal). However, the Claims Administrator has taken the position that it will not proceed with Boh Bros.' claim unless BP approves. This position allows BP to effectively usurp the authority of the Claims Administrator, his Vendors and the Appeal Panel, and thwarts fair and consistent administration of the Settlement Program.

Section 36, "Applicable Law" of the Settlement Agreement provides that the Agreement be interpreted in accordance with general maritime law. Maritime law is firmly grounded in principles of equity. Under maritime law, a court may adapt rules to the equities of a particular situation.[2] The processing of this BEL claim has gone astray in a way not envisioned by the parties and contrary to principles of equity and fairness and to the Appeal Panel Decisions. Boh Bros. seeks the Court's intervention to assure a fair resolution in harmony with rules of justice, expressed rules of procedure, the Settlement Agreement and Appeal Panel Decisions. There is, in the case of this claimant -- who has no resolution in sight -- a compelling need for "a path forward." Boh Bros. implores the Court to assist in defining this path.

---

[2] As Justice John R. Brown wrote, "The Chancellor is no longer fixed to the woolsack. He may stride the quarter-deck of maritime jurisprudence and, in the role of admiralty judge, dispense, as would his landlocked brother, that which equity and good conscience impels. *Compania Anonima Venezolana De Navigacion v. A. J. Perez Export Company* 303 F.2d 692, 699 (5th Cir., 1962); *Smith v. Seaport Marine, Inc.,* 981 F. Supp. 2d 1188 (S.D.Ala. 2013).

S:\Deepwater Horizon Settlement\Pleadings - USDC, MDL #2179\161107 Boh Bros. Mtn for Aid in Consummation of Stlmnt Agr.docx

Respectfully Submitted,

**KINGSMILL RIESS, L.L.C.**

By:     *s/ Marguerite K. Kingsmill*
        Marguerite K. Kingsmill (#7347)
        201 St. Charles Avenue, Suite 3300
        New Orleans, Louisiana 70170-3300
        Telephone: (504) 581-3300
        Facsimile:  (504)581-3310

*Attorneys for Boh Bros. Construction Co., L.L.C.*
*and Broadmoor, L.L.C.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing Motion for Aid in Consummation

of Settlement Agreement has been served on All Counsel by electronically uploading the same to

Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and/or by electronically

serving all liaison counsel by e-mail, and that the foregoing was electronically filed with the

Clerk of Court of the United States District Court for the Eastern District of Louisiana by using

the CM/ECF System, which will send a notice of electronic filing in accordance with the

procedures established in MDL 2179, on this 7th day of November, 2016.

*s/ Marguerite K. Kingsmill*

10

**BOH BROS. CONSTRUCTION CO., L.L.C.**
DWH Claimant ID:  100131904
DWH Claim ID:  93256

<hr>

**EXHIBIT "A"**

**<u>CHRONOLOGY</u>**

- **<u>October 2012</u>**, Boh Bros. submits a BEL claim in the amount of $17,138,555, supported by documents reflecting the business structure and ownership of Boh Bros., contemporaneously-prepared monthly profit and loss statements that tie to Boh Bros.' federal tax returns; federal tax returns; and financial statements audited (establishing monthly revenues and expenses for 2007 – 2011) by Ernst & Young.  The claim is independently verified by local accounting firm, Bourgeois Bennett.

- Between **<u>October 2012 and November 2013</u>**, numerous Settlement Program vendors request additional source documentation from Boh Bros.  Settlement Program vendors, including Pricewaterhouse Coopers ("PwC"), ask for and receive multiple conferences with Boh Bros.' internal and external accountants and with Bourgeois Bennett.  Boh Bros. produces volumes of supplemental source documents as requested.

- **<u>December 2013</u>**, Boh Bros. writes Claims Administrator, Patrick Juneau, and requests a status conference in order to see if Boh Bros.' Claim is close to an eligibility notice and what, if any, additional documents need to be filed.

- **<u>January 15, 2013</u>**, Boh Bros. attends a meeting with Mr. Juneau and numerous PwC accountants, during which Mr. Juneau asks PwC: "What else do you need from Boh Bros.?"  PwC states that all it needs are records from 2008-2011 showing a breakdown of revenue by project, so that PwC can analyze whether Boh Bros. is a DOD contractor.  Significantly, Boh Bros. is *not* a DOD contractor, and produces the source project files.  The claims facility confirms this.

- **<u>March 22, 2013</u>**, PwC advises Boh Bros. that PwC will complete the evaluation of Boh Bros.' claim by the end of the week.

- Contrary to PwC's advices, the claims facility announces that because Boh Bros. website had a picture of a boat (related to bridge repair to the Twin Span post-Katrina), Boh Bros.' claim has been sent to review for "potential moratoria loss", notwithstanding the fact that:

**BOH BROS. CONSTRUCTION CO., L.L.C.**
DWH Claimant ID:  100131904
DWH Claim ID:  93256

1.      Boh Bros.' NAICS code is <u>not</u> marked by an "x" in Exhibit 19 to the Settlement Agreement;

2.      Exhibit 19 to the Settlement Agreement, expressly <u>excludes</u> claims of companies such as Boh Bros. who are "Roadway, Highways, Bridges and Distribution Line Contractors" from moratoria review; and

3.      In its claim form, Boh Bros. answered "No" to the question about providing significant services to the oil and gas industry in the Gulf of Mexico.

•       Nonetheless, the claims facility also requests Boh Bros. to submit more highly confidential project files showing the nature of its work. Boh Bros. does so, together with an affidavit from the President of its company showing that Boh Bros.' principal work is Highway, Bridges, Roads and Distribution Lines and the balance is civil.

•       **May 2013**, the claims facility removes Boh Bros. from moratoria review and PwC advises that the only additional documents needed to finalize Boh Bros.' claim are documents confirming "below-the-line expenses." Boh Bros. provides these documents.

•       The claims facility then spends the next year analyzing the supplemental financial documentation provided by Boh Bros. in order to "match revenues to expenses".

•       **June, 2014**, after the Fifth Circuit stay is lifted, Boh Bros. follows up with PwC to inquire about the status of Boh Bros.' claim.

•       **July 16, 2014** an attorney with the claims facility advises that Boh Bros.' claim is back in accounting review under Policy 495 to determine if there are any unresolved matching issues.

•       **October 21, 2014**, Boh Bros. again contacts the attorney for the claims facility noting that Boh Bros. has not received any information on the processing of Boh. Bros.' claim other than the notification that the Policy 495 process is underway. Boh Bros. requests a status conference with PwC, as PwC has previously confirmed the magnitude of work (over the last two years) PwC has already performed on Boh Bros.' claim.

•       **October 29, 2014**, without notice or explanation from the claims facility, its vendors, or PwC, Boh Bros.' portal reflects that Boh Bros.' claim is "re-routed" for another moratoria review and that the accountants have ceased "the Policy 495 review".

•       Boh Bros. assumes this was an error and contacts the attorney for the claims facility.

•       **November 11, 2014**, as to the "re-routing" of Boh Bros.' claim to moratoria review, the claims facility again refers to Boh Bros.' website.

**BOH BROS. CONSTRUCTION CO., L.L.C.**
DWH Claimant ID:  100131904
DWH Claim ID:  93256

- **March 30, 2015**, Robert S. Boh, President of Boh Bros., and counsel meet with Ted Martens (the PwC accountant in charge of "moratoria review") and John Petzold (the PwC accountant handling the claim of Boh Bros.). Mr. Martens brings a list of projects that the new PwC moratoria team has extracted from Boh Bros.' confidential customer files and "flagged" as potential services to the "oil and gas industry in the Gulf of Mexico," and, therefore, subject to "potential moratoria review".

- At the meeting on **March 30, 2015**, Mr. Boh reviews in detail each and every "flagged project" with Mr. Martens. Mr. Boh explains the nature of the work, the location, the client/customer etc. As explained, none of the projects are for services to the oil and gas industry in the Gulf of Mexico. Most of the projects are civil/land-based projects and a few are pilings or work in protected waters. Mr. Boh further explains that Boh Bros. does not have any equipment for use in the Gulf and does not perform such work. Mr. Martens concurs in removing Boh Bros. from "moratoria review". Mr. Petzold assures Mr. Boh, that notwithstanding all of this, PwC would continue with the processing of Boh Bros.' claim. Mr. Petzold requests some supplemental documentation and Boh Bros. provides this.

- **August 10, 2015**, Boh Bros requests an update on the progress with the processing of Boh Bros.' claim and anticipated timetable for resolution, noting it has been three years since Boh Bros. submitted its claim; two years since the Settlement Program evaluated and removed Boh Bros. from moratoria review; another year since the Settlement Program re-routed Boh Bros. to moratoria review; and nine months since the meeting with PwC, promising removal again from moratoria review and final processing of the claim. The portal still reflects that Boh Bros.' claim is stuck in "moratoria limbo".

- **November 18, 2015**, Robert S. Boh, president of Boh Bros. and counsel participated in a telephone conference with the claims facility, Ted Martens (a partner in PwC's New York office and head of the Settlement Program's "moratoria review team"), Tom Frangella and John Petzold, also a partner in PwC New York and the lead accountant for calculating Boh Bros. claim. During the telephone conference, Mr. Martens asked about three (3) projects -- all of which were delineated in the March 2013 production of documents, all of which were discussed in the March 2015 meeting, and all of which are land based and clearly, obviously, not moratoria/oil and gas projects. Further, none of the projects were performed in 2009, except one -- the 2009 Versabar project, which was less than one day's work and generated a mere $32,000 in revenue (i.e., .0008% of the total revenue for that year).

- **November 19, 2015**, Robert Boh, president of Boh Bros, and counsel participated in a telephone conference with the claims facility, Ted Martens, John Petzold, and Randy Young (the Settlement Program's third party "oil and gas" expert). During the telephone conference, Mr. Young asked Boh Bros. a few questions about the same three projects. Mr. Boh answered again, and Mr. Young confirmed that was "all he had." Mr. Petzold confirmed that the accountant team in charge of calculating Boh Bros. claims was "very close" to finishing.

3

**BOH BROS. CONSTRUCTION CO., L.L.C.**
DWH Claimant ID:  100131904
DWH Claim ID:  93256

- **December 8, 2015**, the Settlement Program asked about the same project files produced in March 2013, because of a "keyword" search performed by unidentified members of the "Moratoria Team."  Once again, we called upon Boh Bros. to provide information on projects that files clearly show are *de minimis*, ranging from 0.0005% - 0.1897% of total yearly revenue with only one project at slightly more than 1%, i.e., 1.0210%.

- **December 10, 2015**, Robert S. Boh, president of Boh Bros, and counsel provided the Settlement Program with details and documentation confirming that none of the work performed on the flagged projects are moratoria/oil and gas related.

- **February 26, 2016**, the Settlement Program, for the first time in the four year history of this claim, advised that until BP agreed on how to "back out" these *de minimis* alleged "moratoria losses" the Settlement Program could not finish processing Boh Bros.' claim.

- **September 2016 – October 2016**, Boh Bros. again proposed an easy solution to the dilemma, suggesting the Settlement Program simply back out the *de minimis* revenue, a relatively simple endeavor for the sophisticated forensic accountants who have analyzed Boh Bros.' claim for four years.  The Settlement Program said it could not do this unless BP agreed.

4