UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE OIL SPILL BY THE OIL RIG | * | CIVIL ACTION: 10-MD-2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO ON APRIL 20, 2010 | * | SECTION "J" |
| | * | |
| THIS DOCUMENT RELATES ONLY TO: | * | HONORABLE CARL J. BARBIER |
| Civil Action Nos. 10-2771; 10-8888; | * | |
| 10-9999; and 14-1525 | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**WISNER HEIRS REPLY
TO JOINT VENTURE ATTORNEYS' MEMORANDUM**

Plaintiffs, Mark E. Peneguy, Edward W. Peneguy, Jr., Richard A. Peneguy, Jr., and Wendell H. Cook, Jr., reply to the Joint Venture Attorneys' response memorandum. R. Doc. 21970 (hereinafter "JV" and "JV Mem.")[1]

PREFATORY STATEMENT

The Wisner Heirs' sole purpose here is for the claimant attorneys to be paid their proper fees and expenses. The matter has ended up in this Court's hands upon initiation by the two groups of claimant attorneys themselves. Ethical standards are implicated in this Court's determinations. As a general principle in this Circuit, a district court is obligated to enforce ethical rules applicable to conduct occurring in connection with any proceeding before it. *In re American Airlines, Inc.*,

---

[1] As previously noted in R. Doc. 21958 at note 1, Mark E. Peneguy, *et al*, their family members, donees, and assignees, are referred to for convenience as the "Wisner Heirs." All are plaintiffs in this matter; all are beneficiaries of the Wisner Trust; all were clients of the JV.

1

972 F.2d 605, 611 (5th Cir. 1992); *Johnson v. Clark Gin Service, Inc.*, E.D. La. Nos. 15-2290 (c/w other cases), 2016 WL 7017267 at *7 (12/01/06).

1. **The JV has not satisfied its LRPC Rule 1.5 ethical and legal obligations to its clients.**

The JV has made no attempt to satisfy its ethical and legal obligations to establish the reasonableness of its claimed fees and expenses (LRPC Rule 1.5(a)), or to show the method of its determination. *Id.* at 1.5(c).

The clients' obligation to pay a reasonable fee and to reimburse reasonable expenses is established by contract – the engagement agreements. The Rules of Professional Conduct are superimposed upon those contracts.

This Court already has enunciated the applicable standards of contact interpretation. R. Doc. 174 (CA No. 14-1525). The JV's principal submission – its opposition to the WW&G Motion (R. Doc. 4969) – does not address its engagement agreement under these standards. The JV merely declares at page 4 of R. Doc. 21969:

> The Joint Venture's contract with the Donation and signed by the Trustee provides for a 25% fee for the first $10 million and an 18% fee for the remaining $20 million of the settlement. *Joint Venture Contract*, at ¶ 4(c) [Rec. Doc. 21922-9]. These percentages apply because some of the Donation's claims "for physical damages and restoration costs" were scheduled for trial through the Access Agreement dispute in No. 14-1525. The litigation costs and relevant back-up were provided to the Trustee, through the City Attorney, months ago who is currently undergoing a review as to reasonableness. A separate application for payment of costs in the registry of the Court will be made after the Trustee's representative makes a decision.[2]

This is not the explanation called for by Rule 1.5 unless the engagement agreement means only what the JV says it means. There are several issues raised by the JV's quoted statement.

---

2   Footnote omitted.

2

- The engagement agreement has a tiered fee structure with multiple percentages in each tier, triggered by conditions. There is no agreement or determination as to which, if any, condition was satisfied.

- How were "some of the Donation's claims for 'physical damages and restoration costs' scheduled for trial through the Access Agreement dispute in No. 14-1525" in the light of this Court's summary judgment ruling that no damages caused by oil washing ashore from the spill and no damages under state tort laws, the OPA, the CWA, the OCSLA, or federal maritime law, are covered by the Access Agreement? R. Doc. 174 at p. 9. The Wisner Heirs suggest that any overlap was collateral because no non-contractual damages were awardable in the Access Agreement action.

- If there was collateral overlap as the JV suggests, does that satisfy the condition that "the matter is resolved after the first Order is signed setting the case for trial" per ¶ 4(c) of the engagement agreements? The Wisner Heirs think not because the matter or case for non-contractual general damages was not set for trial.

- If "litigation costs" and back-up were "provided to the Trustee, through the City Attorney," that is not the same as providing the detail to the JV's clients, the Wisner Donation through its managing Committee, and the beneficiaries. Mr. Gisleson states it differently at ¶ 17 of his declaration, *i.e.*, that he provided cost detail to "the then Trustee designee, Suchitra Satpathi" in September 2016 and a "second time…to City Attorney Rebecca Dietz…[who] is in the process of reviewing…to

3

determine whether they are reasonable and adequate." The City Attorney is not the attorney for the Wisner Donation or for the beneficiaries.[3]

- If, as Mr. Gisleson states (*Id.*), the JV will provide the "line-item breakdown" to this Court, why does the JV object to providing the same detail to its clients?

These are all issues that are apparent on the face of the JV's submission. The law and this Court's own rules ethically and legally obligate counsel to provide their clients with complete detail. It is not the clients', nor this Court's, obligation to ferret out the detail.

**2. The JV Mem. raises additional questions that it does not answer.**

a. <u>Standing</u>.

In addition to calling into question the standing of Mark E. Peneguy, *et al*, the JV raises a question as to its own standing. The JV states that it is the "true party in interest" on this motion and that it has filed its papers on its own behalf and not on behalf of its client, the Wisner Donation. JV Mem. n. 2. The JV has not intervened as a party. There is no legal basis for the JV to simply "appear" through a memorandum. Therefore, its status is at best unclear.

The JV has cut its client loose. Therefore, the Wisner Donation is unrepresented in this matter even though it is a client whose funds are at issue.

There is also the ethical and procedural question of whether the Court should proceed with the Wisner Donation now unrepresented.

Ignoring their own lack of standing, the JV challenges the standing of Mark E. Peneguy, *et al*, on the basis that "they do not have a right to the attorneys' fees at issue" (JV Mem. p. 2), and

---

[3] Furthermore, the by-laws of the Wisner Committee, signed and put into effect by the Trustee (R. Doc. 21922-4 at pages 46-62 (10 and 2179)) state in Article I, Sections 4 and 5, that the Committee supervises, coordinates, and directs the administration of the Wisner Donation's properties and "all business activities on, or connected with, the Donation Properties." Norman Declaration, R.Doc. 21922-4 at Exhibit E, pages 1-2.

4

that they "seem to be income beneficiaries" having "no actual title to the Wisner Donation properties." *Id.*  Both statements are incorrect.

First, Mark E. Peneguy, *et al*, and the Wisner Heirs were clients of the JV.  This is conceded in note 2 of the JV Mem.[4]  As clients of the JV, the Wisner Heirs have the right to approve the fees and expenses charged by their attorneys.  La. Rules of Professional Conduct ("LRPC") Rule 1.5(c).

Second, as to status, the 1929 document and Final Judgment that established the Wisner Heirs' rights expressly state that "…said donated property shall be held in indivision… ."[5]

Although the Wisner Trust continues in its wind down phase, upon termination of the trust, the trust assets automatically vest in the beneficiaries by operation of law.  *Roberts v. Anderson*, 733 F.Supp. 1040, 1051 (E.D. La. 1990); *McAllister v. FSLIC*, 709 F.Supp. 697, 700 (M.D. La. 1989); La. R.S. 9:2029.

      b.    <u>Hourly fee or percentage</u>?

The JV's engagement agreement states in ¶ 4(a) that "[f]or legal services reimbursed by BP as part of a claim for oil spill removal/response costs," that is, the Access Agreement contractual claim, fees will be charged on an hourly basis and billed monthly.

---

[4] "[T]he Joint Venture Team was hired to represent the collective interests of the Donation and the collective interests of the Donation and its beneficiaries vis-à-vis BP… ."  R. Doc. 21970 at no. 2.  See also, client definition in JV engagement agreement (R. Doc. 21958-2 at p. 2); Herman Declaration at P 11(i) (R. Doc. 21969-1); and JV Opposition (R. Doc. 21969) at n. 12.

[5] The Wisner Heirs' rights were established pursuant to an Agreement of Compromise and Settlement dated September 17, 1929 that was incorporated in and became a Final Judgment of the Civil District Court for the Parish of Orleans, Louisiana, in Case No. 178,463.  Copies of the Agreement and the Final Judgment are attached as Exhibits A-1 and A-2.  See also Exhibit B to Norman Declaration, R. Doc. 21922-4 at pages 35-40 (10 md 2179).

The JV adamantly points out that WW&G billed on an hourly basis and was paid over $350,000 for services in this category. R. doc. 21969 at p.16. Apparently, the JV did not, except to the extent of billing BP only $17,161.20. Gisleson Decl., R. Doc. 21969-1 at ¶ 19.

There is no clear provision in the engagement agreements as to whether any further recovery in contract under the Access Agreement, is subject to an hourly or percentage fee. The intent clearly was that counsel be paid hourly and that BP reimburse all such fees and costs. Therefore, if, as Mr. Gisleson asserts in ¶¶ 15, 16, 19, and 20 of his declaration (*Id.*), the Access Agreement case became "incredibly hard fought," "labor intensive," and involved nearly $1 million in expenses, "100,000s of documents," "thousands of hours," etc., and, inferentially, was the settlement driver, the JV needs to answer several questions.

- Why wasn't BP billed for more than $17,161.20 during the nearly two years that the JV worked on the case until BP rescinded the Access Agreement on May 22, 2014? See R. Doc. 174 (14-1525) at p. 13 (citing *In re* Oil Spill, 2014 WL 4693068, at *11).

- Are all fees and expenses that should have been but were not billed by the JV to BP for reimbursement (and now, presumably, are released) deductable from any hourly or percentage fee now due the JV? If not deductable, fees will be charged on recovery of amounts that BP was required to reimburse and in fact was reimbursing.

- What part of the BP settlement is attributable to the Access Agreement action and should the fee for this recovery be hourly?

* * *

  c. Where is the basic fee calculation taking into account the "gross present value of benefits recovered" and all credits, offsets, and deductions that are due?

At page 11 of their initial memorandum (R. Doc. 29958), the Wisner Heirs set out the fee calculation steps for a contingent fee. These steps are applicable to both claimant counsels.[6] WW&G has not yet responded to this memorandum. The JV has responded. It has not disagreed, but it ignores these steps, each of which is required by its engagement agreement.

---

[6] These steps are:

 1. Determine "gross present value of benefits received."

 2. Subtract reasonable expenses.

 3. Figure contingent fee on resulting amount @ 18% first $10 million and 12% over $10 million.

 4. Determine division of contingent fee as between WW&G and JV and allocate payments proportionately over 22 years.

 5. Credits/offsets against contingent fee shares:

  a. As to WW&G share: amount previously paid by Wisner Donation to WW&G – to be determined.

  b. As to WW&G share: amounts billed to and paid by, or which should have been billed to and paid by BP to WW&G pursuant to Access Agreement – amounts to be determined.

  c. As to JV Share: amounts billed to and paid by, or which should have been billed to and paid by BP to the JV pursuant to Access Agreement – amounts to be determined.

  d. As to JV Share: Additional amounts found due to WW&G from the Wisner Donation or from the Wisner Heirs (proportionate to their fee burden). [Footnote omitted.]

      d.    <u>Appropriate Resolution</u>.

The Wisner Heirs make the following suggestions to the Court for resolving this matter and bringing it to a close. By no means do the Wisner Heirs or undersigned counsel claim expertise in the subjects of the BP litigation or the numerous litigation activities of WW&G and the JV. Nor is there intent other than to have the attorneys properly compensated and reimbursed under their engagement agreements. Indeed, that is the precise goal compelled by the nature of this proceeding, by Rule 1.5, and by LR 54.2 and 67.3.

First, the Wisner Donation, acting through the Wisner Committee, should be represented by unconflicted counsel. At this point, the Wisner Donation is unrepresented.

Second, this Court is requested to interpret the engagement agreement – taking evidence if necessary – in order to establish the applicable fee model, whether hourly, contingent, or mixed. On two occasions already, this Court has set out the applicable standards of contract interpretation. *In re Oil Spill*, No. MDL 2179, 2014 WL 4693068, at *7 (E.D. La. 9/22/14); and, R. Doc. 174 (14-1525), at p. 6. However, the Court then was addressing an unambiguous contract. The engagement letters here are, in part, ambiguous. Therefore, two additional rules apply:

> <u>La. C.C. art. 2056</u>: In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.

* * *

> <u>La. C.C. art. 2057</u>: In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligations.

* * *

These principles are applicable to attorney-client engagement contracts. *Doucet v. Standard Supply & Hardware Co.*, 250 So.2d 549, 550 (La. App. 3 Cir. 1971) (applying

predecessor article to Article 2056); *Chittenden v. State Farm Mutual Auto. Ins. Co.*, 872 So.2d 580, 583 (La. App. 4 Cir. 2004) (applying Article 2057).

Third, unless the parties can agree, the Court is requested to appoint an expert to calculate the gross present value of benefits received by the Wisner Donation pursuant to ¶ 4(c) of the engagement agreements.

Fourth, the Court is requested to order the JV to provide the following:

- Full itemized detail and back-up for its claim for reimbursement of expenses and costs.

- Itemization of services in compliance with LR 54.2 (i) related to services performed under ¶ 4(a) of its engagement agreement in connection with the Access Agreement action; and (ii) related to damage claims by the Wisner Donation which could not be satisfied by an award in the Access Agreement action.

- Copies of all bills prepared for submission to BP under the Access Agreement whether or not transmitted to BP.

- Itemization of each applicable credit, offset, or deduction from its requested fee.

## CONCLUSION

This matter has been made more difficult due to the JV's submissions. Until the JV complies with its ethical and legal obligations, resolution is not possible.

Respectfully submitted,

**MONTGOMERY BARNETT, L.L.P.**

By:   /s/ Daniel Lund
_____
DANIEL LUND (Bar No. 12782)
E-mail: dlund@monbar.com
JOHN Y. PEARCE (Bar No. 10374)
E-mail: jpearce@monbar.com

        STEPHEN L. WILLIAMSON (Bar No. 8316)
        E-Mail: swilliamson@monbar.com
        C. BYRON BERRY, JR. (Bar No. 21476)
        E-Mail: bberry@monbar.com
        3300 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163-3300
        Telephone: (504) 585-3200
        Facsimile: (504) 585-7688
        Attorneys for
        Mark E. Peneguy, Edward W. Peneguy, Jr.,
        Richard A. Peneguy, Jr., and Wendell H. Cook, Jr.

## CERTIFICATE OF SERVICE

      The undersigned attorney hereby certifies that he has electronically filed the foregoing "Wisner Heirs'" Reply to JV Attorneys' Memorandum with the Clerk of Court by using the CM/ECF system, which will send a copy of the foregoing pleading to counsel of record by notice of electronic filing and also has electronically served interested counsel via email on this 16th day of December, 2016.

        /s/ Daniel Lund
        _____