IN THE UNITED STATE DISTRICT COURT

FOR THE EASTERN DISRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * MDL NO. 2179 <br> * <br> * Section J <br> * <br> * HONORABLE <br> * CARL J. BARBIER <br> * |
| This document relates to Case No. 12-970. | * MAGISTRATE <br> * JUDGE WILKINSON |

Coastal Business Products; Dan Karpuk Heating & Cooling; Psychological Medical Solutions; Teel & Waters Realty Company; Coastal Brick, LLC: Allen Ray McGinnis; Brandon O. Stewart, PA; and Elzbiata Stinebaugh,

   Plaintiffs/Petitioners,

v.

Patrick Juneau, Claims Administrator for the Deepwater Horizon Economic Claims Center,

   Defendant.

_____/

### PETITIONERS' EMERGENCY MOTION FOR A PRELIMINARY, MANDATORY INJUNCTION REQUIRING THE CLAIMS ADMINISTRATOR TO PROCESS PETITIONERS' CLAIMS

     Plaintiffs/Petitioners Coastal Business Products, Dan Karpuk Heating & Air, Inc., Psychological Medical Solutions, Teel & Waters Realty Company, Coastal Brick, LLC, Allen Ray McGinnis, Brandon O. Stewart, PA, and Elzbiata Stinebaugh (hereinafter "Petitioners") move this Court for a preliminary, mandatory injunction requiring the Claims Administrator process and consider Petitioners' claims and to inform Petitioners as to any decisions made.

1

In support of this motion, Petitioners state as follows:

1. The Petitioners initiated claims with the Claims Administrator, as follows:

| CLAIMANT | CLAIM # | INITIATED NO LATER THAN |
|---|---|---|
| Coastal Business Products | 100294052 | 7/24/2014 |
| Dan Karpuk Heating & Air, Inc. | 100326752 | 6/05/2015 |
| Psychological Medical Solutions | 100298348 | 6/05/2015 |
| Teel & Waters Realty Company | 100326757 | 6/05/2015 |
| Coastal Brick, LLC | 100296630 | 6/05/2015 |
| Allen Ray McGinnis | 100327287 | 6/08/2015 |
| Brandon O. Stewart, PA | 100326742 | 6/08/2015 |
| Elzbiata Stinebaugh | 100327802 | 6/08/2015 |

2. In initiating those claims, the attorney for Petitioners utilized the claims portal as he had in filing over sixty (60) previous claims; yet, the Claims Administrator continues to breach his obligation to faithfully implement and administer the Agreement according to its terms and consistent with its stated purpose by failing to advise Petitioners regarding the status, if any, of their claims.

3. Petitioners' claims contained all of the information required by the ASA and were submitted in compliance with generally accepted accounting principles based on accurate business data and the claims were filed in compliance with the arbitrary deadline imposed on claimants.

4. However, in reviewing Petitioners' dockets on the Claims Administrator's Claim Portal, Petitioners' attorney noted that the "purple form" does not appear on the claim dockets of Petitioners. Petitioners' attorney electronically filled out and filed the "purple form" with each of the listed claims just as he has for approximately sixty (60) claims before the claims subject of this motion. See, affidavits of Dolores Reed and John N.C. Ledbetter attached as Exhibits "A" and "B."

5. Petitioners' attorney has attempted to communicate with the Claims Administrator to find out why Petitioners claims are not being processed, but to no avail. The contact staff employed by the Claims Administrator, while polite and empathetic, cannot and have not enlightened Petitioners' attorney as to any reason why the Petitioners' claims have not been processed, other than the purple claim form was filed.

6. Thus, believing the Claims Administrator has taken the position that the "purple form" is a jurisdictional prerequisite that must be filed before the Claims Administrator reviews claims-made, the Petitioners moved the Claims Administrator to so notice Claimants of that position and enter an order allowing them seven (7) days to file their "purple forms" (even though the Claimants have filed the information that would be set out in the more-summary "purple forms").[1]

7. As before, the Claims Administrator has failed to respond to this motion. See Exhibit "C," being a copy of one the motions filed with the Claims' Administrator on August 16, 2016. Petitioners' attorney filed the same motion for each Petitioner with the Claims Administrator and just as the Claims Administrator has failed to process Petitioners' claims, he has also failed to process or consider Petitioners' motions.

8. Rule 8[2], as well as constitutional due process, requires the Claims Administrator to issue its Rule 8 outcome notice IF the Claims Administer has decided not to consider Claimants' claims. Once the Rule 8 "outcome notice" is issued, then Claimants can move for

---

[1] Indeed, the DHCC Guide to documents required for a claim says only that the "purple form" must be filed to make an economic loss claim complete. Nothing says that the "purple form" is the claim itself.

[2] Rule 8 of the Rules Governing the Appeals Process effective January 8, 2016. That notice for an incomplete submission of a claim is required is confirmed in Rule 7 that a claimant may appeal any post-reconsideration notice except for notices of post-reconsideration incompleteness denials. Thus, the DWHCC process demands that any adverse action taken in regard to a claim must be noticed to the claimant. Here, Petitioners are without knowledge as to the status of their claims. Petitioners only know that the Claims Administrator has ignored their claims.

3

reconsideration of whatever the Claims Administrator cites as the Claims Administrators legal basis to ignore the claims and, then, pursue appellate relief.

9. Failure to provide notice of error or deficiency after a claimant has filed a detailed claim proven by expert analysis violates Claimants' constitutional rights.

10. To correct this erroneous implementation and breach of the Agreement, Petitioners requests this Court's review of the Claims Administrator's execution of the terms of the Agreement and entry of a preliminary injunction ordering the Claims Administrator to process Petitioners claims or to inform them as to the status of their claims so that Petitioners can invoke the proper appeals processes.

11. This Court has jurisdiction over both the Claims Administrator and the Settlement Program to enter Petitioners' requested injunction. As the Court explained in approving the Agreement, the "Settlement Program and Claims Administrator are subject to this Court's continuing and exclusive jurisdiction." Rec. Doc. 8138 at 9. Mr. Patrick Juneau was appointed by the Court to be Claims Administrator of the Settlement Program. Rec. Doc. 6418 ¶ 23 (appointing Claims Administrator). Moreover, under the Agreement as entered by the Court, the "Claims Administrator shall be selected and appointed by the Court, and shall be responsible to the Court, [and] serve as directed by the Court ..." Agreement ¶ 4.3.1.

12. The Claims Administrator is thus before the Court and acting under the Court's supervision as administrator of the Agreement. Accordingly, this motion is directed toward Mr. Patrick Juneau in his official capacity as Claims Administrator of the Settlement Program. Rec. Doc. 6418 ¶ 23; Rec. Doc. 8139 ¶ 4 (confirming the Claims Administrator's appointment). Similarly, the Agreement provides that the "Court shall retain ongoing and exclusive jurisdiction over the Settlement Program until the consideration and determination of all Claims is complete

and the Settlement Program is terminated by the Court." Agreement ¶ 4.3.2.

13.     A preliminary injunction should be granted where a movant establishes "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey*, 647 F.3d 585, 595 (5th Cir. 2011). Petitioners' requests for a preliminary injunction satisfies each of these elements.

14.     **The Merits:** Petitioners have a substantial likelihood of succeeding on the merits of this procedural faux pas. To obtain a preliminary injunction, "'[a]ll courts agree that [movant] must present a prima facie case but need not show that he is certain to win.'" *Janvey*, 647 F.3d at 596 (quoting Wright & Miller, 11A FEDERAL PRACTICE & PROCEDURE § 2948.3 (2d ed. 1995)). Where a movant raises "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation," that is sufficient. *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011); *see also Finlan v. City of Dallas*, 888 F. Supp. 779, 791 (N.D. Tex. 1995).

15.     By failing to process Petitioners' claims even to the point of denying them, the Claims Administrator has breached his obligations under the Agreement and ignored its plain terms to make decisions.

16.     **Irreparable Harm to Petitioners:** Petitioners will suffer irreparable injury unless this Court acts now to enter the requested preliminary injunction requiring the Claims Administrator to process Petitioners' claims and to inform Petitioners of the reasons for denying same if same are denied. Unless enjoined, the Claims Administrator and Settlement Program will ignore Petitioners' claims and, eventually, close the Settlement Program without ever

having informed Petitioners about the status of their claims.

17. Thus, the Claims Administrator can be compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion. This Court can compel the Claims Administrator to act, but has no power to specify what the action must be. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004).

18. Unless this Court orders the Claims Administrator to decides the merits of the claims, Petitioners have no remedy at all – not for money damages or anything else.

19. **Threatened Injuries To Petitions Vastly Outweigh Any Risk of Comparative Harm To Others:** The threatened permanent injury to Petitioners outweighs any harm that the mandatory injunction might cause to other claimants. The Settlement Program will continue to pay the vast majority of claimants and only Petitioners will be left without remedy or understanding about why no action has been taken by the Claims Administrator.

20. Likewise, the Claims Administrator and Settlement Program will not be injured by the injunction, as their duty is to comply with the terms of the Agreement, pay claims, or deny claims. The Claims Administrator and Settlement Program violate their duties when they, as here, fail to act.

21. **The Public Interest Supports An Injunction:** The interest of the public will best be served by entry of the requested preliminary injunction. The entire settlement is based on the substantial public interest in treating claimants with the same economic losses uniformly and administering the claims process according to its terms and consistent with its objectives.

WHEREFORE, for the reasons set forth above, and considering such other arguments and evidence as may properly come before the Court, Petitioners respectfully request that the

Court enter a mandatory order requiring the Claims Administrator and Settlement Program to adjudicate Petitioners' claims and to correctly and lawfully notify Petitioners of the actions taken by no later than January 20, 2017.

JOHN N.C. LEDBETTER, ESQ.
Ledbetter & Associates, P.L.
4641 Gulfstarr Drive, Suite 102
Destin, Florida 32541
led@destinlawgroup.com
850.650.1040

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing pleading has been served on Counsel for the Claims Administrator by electronically filing with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 30th day of December 2016.

/s/ John N.C. Ledbetter