# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig        MDL No. 2179
     Deepwater Horizon   in the Gulf
     of Mexico, on April 20, 2010

                              **SECTION: J**

**These Pleadings apply to:**
*Claims in  B1" Bundle*                **JUDGE BARBIER**

**These Pleadings apply to:**          **MAGISTRATE SHUSHAN**
**No._____**

---

                               **CIVIL ACTION 2:13-cv-1439**

                               **SECTION: J**

                               **JUDGE BARBIER**

                               **MAGISTRATE SHUSHAN**

**JENSEN BEACH MARKETING, INC.,**
**A FLORIDA CORPORATION, ET AL.,**
        **Plaintiffs,**
**v.**

**BP EXPLORATION & PRODUCTION**
**INC.; BP AMERICA PRODUCTION**
**COMPANY; BP p.l.c.; TRANSOCEAN**
**OFFSHORE DEEPWATER DRILLING, INC.;**
**TRANSOCEAN HOLDINGS, LLC; and**
**HALLIBURTON ENERGY SERVICES, INC.,**
        **Defendants.**

---

## COMPLAINT FOR PRIVATE ECONOMIC LOSSES OF THE NAMED INDIVIDUALS AND ENTITIES WHICH HAVE OPTED OUT OF THE AMENDED *DEEPWATER HORIZON* ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT (Rec. Doc. 6430-1) AND OF THE NAMED INDIVIDUALS AND ENTITIES WHOSE CLAIMS ARE EXCLUDED (EITHER EXPLICITLY OR IMPLICITLY) FROM THE AMENDED *DEEPWATER HORIZON* ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

**Page**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
I. THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    A. Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    B. The Defendants. Identity, Jurisdiction and Venue . . . . . . . . . . . . . . . . . . . . . . . . 8

II. FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III. CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    Claims Under General Maritime Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    A. Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    B. Gross Negligence and Willful Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    Claims under the Oil Pollution Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    State Law Claims for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    A. Fraudulent Concealment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    B. Strict Liability Pursuant To The Florida Pollutant Discharge Prevention
        and Control Act Fla. Stat. § 376.011-376.21     Florida Plaintiffs Against BP
        and Transocean . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    C. Strict Liability Pursuant to the Florida Water Quality Assurance Act,
        §§ 376.30-376.317, Fla. Stat., Florida Plaintiffs Against All Defendants . . . . . . . . 33
    D. Strict Liability for Ultra-Hazardous Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    E. Punitive Damages     All Plaintiffs Against All Defendants Under All Claims . . . . 36
    F. Declaratory Relief Against BP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    G. Prayer for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    H. Jury Demand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Appendix: Names of the Plaintiff individuals and entities to this Complaint.

Exhibit A : Records of and testimony before the National Commission on the
Deepwater Horizon Oil Spill and Offshore Drilling, pp. 87-127 and footnotes on pp.
321-327 contained in the National Commission s Report to the President dated
January 2011.

Exhibit B : Proposed Second Amended Cross-Claim of Co-Defendant Halliburton
Energy Services, Inc., filed in the U. S. District Court for the Eastern District of
Louisiana in Multi-District Litigation in case number 2179 (Rec. Doc. 3893).

## INTRODUCTION

On April 20, 2010, a well blowout on the vessel Deepwater Horizon in the Gulf of
Mexico marked the beginning of what would become the most pervasive and devastating
environmental disaster in the history of the United States. The blowout and subsequent
explosions, fire, and sinking of the vessel resulted in an oil spill of unprecedented proportions
that damaged, depleted and destroyed marine, estuarine, and coastal environments in the Gulf of
Mexico, Louisiana, Mississippi, Alabama, Texas, and Florida (the "Spill"). Although the blown
out well is now capped, the disastrous environmental and economic effects of the Spill are
widespread and will likely remain so for decades.

Hundreds of individual and class actions were filed in state and federal courts on behalf
of the thousands of victims of the Spill. By order entered on August 10, 2010, the Multi-district
Litigation Panel (the "MDL Panel") transferred all such actions then pending to this Court. *See
In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
MDL No. 2179, --- F. Supp. 2d ----, 2010 WL 3166434, 2010 AMC 1977 (JPML, August 10,
2010) (the "Transfer Order"). On August 27, 2010, this Court entered an order (Rec. Doc. 110)
appointing Plaintiffs' Co-Liaison Counsel, and by order dated September 8, 2010 (Rec. Doc.
506), appointed a Plaintiffs' Steering Committee (PSC). On October 19, 2010, this Court
entered its Pre-Trial Order No. 11/Case Management Order No. 1 (Rec. Doc. 569, hereinafter
"CMO No. 1"), wherein it directed the filing of Master Complaints on behalf of the Plaintiffs.

On December 15, 2010, the PSC filed a "Master Complaint, Cross Claim and Third-Party
Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section
III, (B1) ["B1 Bundle"] (Rec. Doc. 879, pp. 39-174). On February 9, 2011, the PSC filed a

First Amended Master Complaint, Cross Claim and Third-Party Complaint for Private

Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III, (B1) [ B1

Bundle ] (Rec. Doc. 1128, pp. 46-197). In the PSC s original Master Complaint (Rec. Doc.

879, pp. 39-40) and First Amended Master Complaint (Rec. Doc. 1128, pp. 46-47), the PSC

stated that the Complaint is brought:

> ...on behalf of those plaintiffs seeking non-governmental economic loss and
> property damages and who have filed and/or may hereinafter file their claims in
> this Court or whose claims have been and/or may hereafter be transferred to this
> Court pursuant to the Transfer Order, and as a class action.

On April 18, 2012, the PSC entered into a proposed *Deepwater Horizon* Economic and

Property Damages Settlement Agreement (the Settlement Agreement , Rec. Doc. 6276-1) with

BP Exploration & Production Inc., BP American Production Company, and BP p.l.c. (hereinafter

the BP Entities or BP ). On May 2, 2012, the Court entered a Preliminary Approval Order

(Rec. Doc. 6418) conditionally and preliminarily certifying the Settlement Agreement. The

Preliminary Approval Order incorporated changes to the Settlement Agreement proposed by joint

motion of the PSC and the BP Entities (Rec. Doc. 6414-2). The resulting settlement document

filed May 3, 2012, is designated *Deepwater Horizon* Economic and Property Damages

Settlement Agreement as Amended on May 2, 2012" (the Amended Settlement Agreement , or

the Settlement , Rec. Doc. 6430-1). The Preliminary Approval Order also appointed class

representatives and lead and settlement class counsel.

On the same day the Preliminary Approval Order was entered, the PSC filed an

Amended Class Action Complaint for Private Economic Losses and Property Damages (the

Amended E&PD Complaint , Rec. Doc. 6412),

> ...on behalf of those persons (individuals and entities) seeking private (non-governmental) economic loss and property damages who are within the Economic & Property Damages Class defined in the Class Allegations section of this Complaint ( the E&PD Class ). As to all other persons (individuals and entities), the previously filed First Amended Master Class Action Complaint, Cross-Claim, and Third Party Complaint (Rec. Doc. 1128) continues in effect and is not superseded by this Complaint.

(Rec. Doc. 6412, pp. 1-2).

The E&PD Class defined in the class allegations section of the Amended E&PD Complaint excludes thousands, if not tens of thousands, of individuals and entities, including the Plaintiffs herein, who suffered economic loss and property damage as a result of the Spill, and who are (a) expressly excluded from the Settlement, or (b) impliedly excluded from the Settlement because their claims do not fit within the Settlement Compensation framework, or (c) have opted out of the Settlement because they would receive inadequate compensation or no compensation under the claim calculation formulas in the Settlement. The impliedly excluded group includes government workers, who, ironically, fit within the E&PD Class definition and compensation framework and are not expressly excluded from the Settlement or afforded the right to an individual economic loss claim in the Settlement outside of their government employment. The Deepwater Horizon Economic Claims Center (DHECC) has consistently denied compensation to government workers after being advised by counsel for the PSC and the BP Entities that the Settlement Agreement intended to exclude them.

On November 8, 2012, the Court conducted a fairness hearing to consider final approval of the Economic and Property Damages Settlement. By order and judgment filed December 21, 2012, the Court granted final approval of the Settlement (Rec. Docs. 8138 and 8139).

The Amended Settlement Agreement provides that the statutes of limitation (three years

for both OPA and maritime claims) will begin to run once an Economic Class Member opts out of the Economic Class, and ...any time already elapsed for any Plaintiffs or Economic Class Members on any applicable statutes of limitations shall not be reset.... (Rec. Doc. 6276-1, p. 62, § 7.3.1). Despite the looming statute of limitations, the PSC has taken no discernable action to protect the rights and claims of individuals and entities, including Plaintiffs herein, who have opted out of the Settlement or are excluded from the Settlement. Plaintiffs could not determine with certainty that they would be excluded from the final Settlement approved by the court, or excluded from reasonable compensation under the final Settlement, until less than four months before the statute of limitations will run on their claims.

The Plaintiffs, whose names are set forth in the Appendix to this Complaint, by their undersigned counsel, submit this Complaint for Private Economic Losses of the Named Individuals and Entities Which Have Opted Out of the Amended *Deepwater Horizon* Economic and Property Damages Settlement Agreement (Rec. Doc. 6430-1) and of the Named Individuals and Entities Whose Claims Are Excluded (Either Explicitly or Implicitly) From the Amended *Deepwater Horizon* Economic and Property Damages Settlement Agreement, for actual, compensatory, and punitive damages arising from the well blowout, vessel explosions and subsequent Spill by the Deepwater Horizon oil vessel in the Gulf of Mexico on April 20, 2010, and further state as follows:

1. On April 20, 2010, at approximately 9:45 p.m. CST, a well blowout caused explosions on the Deepwater Horizon, an oil vessel in the Gulf of Mexico, igniting a raging, gas-fueled fire on the vessel. After burning for two days, the vessel sank to the ocean floor. As the Deepwater Horizon tipped into the sea, the long riser pipe connecting the vessel to the wellhead on the

Page 4 of 43

seafloor bent and broke, leaving the pipe leaking oil out of its now open end as well as through two breaks along its length. An emergency valve, installed on the wellhead for just such a disaster, failed to seal the wellhead as it should have, causing the blown-out well to spew oil into the Gulf waters.

2. Each day during the course of the Spill, tens of thousands of barrels of crude oil gushed from the wellhead and broken riser, bubbling up to the surface and flattening out into a widening slick of oil, as well as spreading out in vast subsurface plumes. On the surface, the shifting smear was large enough to be visible from outer space, at times covering tens of thousands of square miles, and spreading with the wind and currents towards the Gulf states coastlines, where oil made landfall on white sand beaches and in ecologically sensitive marshes and estuaries, damaging the environment and real and personal property throughout the coastal zones of the Gulf states ("Coastal Zone"). Underwater, huge plumes of oil and dispersant chemicals swirled through the entire water column and came to rest on the seafloor at many different depths, damaging ecosystems and privately owned and leased sea beds throughout the Gulf of Mexico.

3. The Deepwater Horizon s well blowout and the subsequent explosions, fire, sinking, and Spill were foreshadowed by a string of disastrous incidents and near misses in Defendants operations on land and at sea, as well as poor decision-making by Defendants and their employees, as they ignored crucial safety issues, cut corners, and violated federal and state law to save time and money in favor of production and profit and at the expense of worker safety and environmental protection. All the while, Defendants continued to evade and subvert industry regulations.

4.   Defendants could have prevented this catastrophe by using deepwater drilling best practices, following required safety protocols and precautionary procedures, properly maintaining equipment, and using widely available emergency safety technology but, with little regard for the risk to the vessel workers or the environment, Defendants chose to violate or ignore operational discipline, and save money and time at the expense of safety. Their cost-cutting measures were outrageous    consistent with their long corporate histories of flagrant disregard for safety and were taken with willful, wanton, and reckless indifference to the disastrous results to the workers aboard the vessel, the environment, and Plaintiffs.

5.   Defendants repeatedly made decisions impacting the safety of the vessel, its workers, the environment, and the health, welfare, and value of the people, businesses, and property of the Gulf states in the direction of short-term gain, through reduced schedule and reduced cost, rejecting adequate and responsible risk analysis checks and balances to weigh cost and time versus risk and safety. The result was both predictable in outcome and unprecedented in scale. Moreover, because their conduct endangered the health and safety of a large region and population, caused and increased the risk of serious injury and bodily and emotional harm, and affected a financially vulnerable population dependent upon the Gulf of Mexico, the degree of reprehensibility of Defendants  conduct is at the highest level.

6.   The Spill has caused, and continues to cause, devastating environmental and economic damage. For example, there have been thousands of square miles of waters closed to fishing, swimming and/or boating, and thousands of square miles of historic coastal marshes, delicate estuaries, cypress forests, barrier islands, and white sand beaches compromised. Fishermen and marine-related businesses have lost and continue to lose income and their businesses; the tourism

industry and hotels, resorts, restaurants, and other tourism-reliant businesses have lost and continue to lose income; and real property owners have suffered the loss, damage, and/or diminution of the value of their properties throughout the Coastal Zone.

7.  Because of the size and nature of the surface oil slick, the subsurface oil plumes, and weathered oil on shorelines, and the toxic effects of the oil and other substances released during the Deepwater Horizon Incident on humans, marine life, and the Gulf of Mexico environment, including the shorelines, inlets, bays, salt marshes, estuaries and adjoining Gulf waters of the States of Texas, Louisiana, Mississippi, Alabama and Florida, there have been and will continue to be further economic losses and diminution of property values to individuals and entities owning and/or leasing residential, commercial and investment properties in the Gulf Coast areas.

## I. THE PARTIES

### A. Plaintiffs

8.  Plaintiffs are individuals and entities who have suffered property losses, economic damages, and other costs as a result of the Spill, who are specifically or implicitly excluded from the Settlement or who have opted out of the Settlement.  All Plaintiffs whose claims are included in the Amended Settlement Agreement have timely and properly opted out of the Settlement.

9.  The Plaintiffs whose damages occurred in the State of Florida, as set forth in the Appendix to this Complaint (the  Florida Plaintiffs ), suffered and/or continue to suffer damages to and/or loss of real and personal property (including diminution of value), and/or loss of business and profits and/or income, and/or loss of loss of employment and employment benefits as a direct and proximate result of Defendants  acts and/or omissions:

10.  The Plaintiffs whose damages occurred in states or jurisdictions other than the State

of Florida, as set forth in the Appendix to this Complaint, suffered and/or continue to suffer

damages to and/or loss of real and personal property (including diminution of value), and/or loss

of business and profits and/or income, and/or loss of loss of employment and employment

benefits as a direct and proximate result of Defendants acts and/or omissions:

### B. The Defendants. Identity, Jurisdiction and Venue

11.  Defendant, BP Exploration & Production, Inc. ( BP Exploration ), is a Delaware

corporation that at all pertinent times was doing business in the State of Louisiana. BP

Exploration was a lease holder and the designated operator in the lease granted by the former

Minerals Management Service[1] ( MMS ) allowing it to perform oil exploration, drilling, and

production-related operations in Mississippi Canyon Block 252, the location known as

 Macondo  where the Spill originated. BP Exploration was designated as a  Responsible Party

by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. § 2714. This court has

personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in

Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

12. Defendant, BP America Production Company ( BP America ), is a Delaware

corporation that at all pertinent times was doing business in the State of Louisiana.  BP America

was a party to the Drilling Contract with Transocean Ltd. for the drilling of the Macondo well by

the Deepwater Horizon vessel. This Court has personal jurisdiction over BP America, because

BP America is registered to do business in Louisiana, does business in Louisiana, and has a

---

[1]The MMS, a federal entity that divides the Gulf of Mexico s seafloor into rectangular
 blocks,  and then auctions the rights to drill for oil and gas beneath those blocks of seafloor,
was reorganized as the Bureau of Ocean Energy Management, Regulation, and Enforcement
(BOEMRE) on June 18, 2010; however, it shall be referred to as the MMS throughout this
document.

registered agent in Louisiana.

13.   Defendant, BP p.l.c., is a British public limited company with its corporate
headquarters in London, England. BP p.l.c. is the global parent company of the worldwide
business operating under the  BP  logo. BP p.l.c. is one of the world s largest energy companies
with over 80,000 employees and $239 billion in revenues in 2009. BP p.l.c. operates its various
business divisions, such as the  Exploration and Production  division in which BP Exploration
and BP America fall, through vertical business arrangements aligned by product or service
groups. BP p.l.c. s operations are worldwide, including in the United States. Defendants BP
Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently
controlled by BP p.l.c. so as to be BP p.l.c. s agents in Louisiana and the U.S. more generally.

14.   BP p.l.c. states that it is the leading producer of oil and natural gas in the United
States and the largest investor in U.S. energy development. A sampling of BP p.l.c. s contacts
with the U.S. are as follows: (a) BP p.l.c. s American Depository Shares are listed on the New
York Stock Exchange and BP p.l.c. is the largest non-U.S. company listed on the NYSE; (b)
roughly 40% of BP s shares are owned by U.S. individuals and institutions; (c) BP p.l.c. files
annual reports with the U.S. Securities and Exchange Commission; (d) approximately 60% of BP
p.l.c. s fixed assets are located in the U.S. or the European Union; and (e) BP p.l.c. reports
having 2,100 U.S.-based employees in non-Exploration & Production, non-Refining &
Marketing BP entities.

15.   This Court has general jurisdiction over BP p.l.c. pursuant to Louisiana s long-arm
general jurisdiction provision (13 Louisiana Statute § 3201(B)), in combination with Rule
4(k)(1)(A) of the Federal Rules of Civil Procedure. BP p.l.c. does business in Louisiana, has

continuous and systematic contacts with Louisiana (and the U.S. more generally).

16. Alternatively, if BP p.l.c. contests that it is subject to jurisdiction under Louisiana s long-arm jurisdiction statute, then this Court may exercise personal jurisdiction over BP p.l.c. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, the federal long-arm jurisdiction provision, because claims in this action arise under federal law, and the exercise of jurisdiction over BP p.l.c. is consistent with the United States Constitution and laws.

17. This Court also has specific jurisdiction over BP p.l.c. pursuant to Louisiana s long-arm specific jurisdiction provision (13 Louisiana Statute § 3201(B)), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. Plaintiffs  causes of action arise out of wrongful conduct committed by BP p.l.c., directly or indirectly by its agents, that caused injury or damage in Louisiana by an offense or quasi offense committed through an act or omission outside of Louisiana, and BP, p.l.c. regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. These acts or omissions took place both before the blowout resulting in the Spill and in the negligent conduct of BP, p.l.c. after the blowout in attempting to contain the catastrophic damage caused by the Spill.

18. In addition, this Court also has personal jurisdiction over BP p.l.c. under agency principles because BP p.l.c. s agents, BP America and BP Exploration, do business in Louisiana. BP America and BP Exploration are both wholly-owned subsidiaries of BP p.l.c. In BP p.l.c. s Annual Report for 2009, in which it presents a consolidated financial statement that includes BP America and BP Exploration, BP p.l.c. states that it  controls  both BP America and BP Exploration, among other subsidiaries, meaning that it has  the power to govern the financial and

operating policies of the [subsidiary] so as to obtain benefit from its activities . . . . .

19. BP p.l.c. s direct, joint and/or assumed responsibility and/or liability for safety and well control, both before and/or after the explosions and blowout on April 20, 2010, is further evidenced by the announcement of the Macondo Project on the BP website hosted and copyrighted by BP p.l.c., the publication of information concerning the casualty and Spill on the BP website hosted and copyrighted by BP, the express and/or implied acceptance of responsibility for the safety of BP operations in North America and the Gulf of Mexico in statements by officers of BP p.l.c., the presence (upon information and belief) of a BP p.l.c. officer or employee on the Deepwater Horizon for the celebration that occurred shortly before the explosions and fire, the direct participation of BP p.l.c. employees in the post-casualty investigation, the direct participation of BP p.l.c. officers and employees in the Governmental post-casualty investigations, the direct participation of BP p.l.c. officers and employees in the post-casualty well-control efforts, and the direct participation of BP p.l.c. in the establishment and/or funding of the Escrow Fund and/or Gulf Coast Claims Facility.

20. BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as BP or the BP Entities. As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operations.

21. Defendant, Transocean Offshore Deepwater Drilling, Inc. ( Transocean Offshore ), is a Delaware corporation that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Offshore is affiliated with Transocean Ltd. and was an owner,

managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

22.  Defendant, Transocean Holdings, LLC ( Transocean Holdings ), is a Delaware corporation that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Holdings is affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean Offshore. Transocean Holdings is an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon and participated in the Deepwater Horizon s offshore oil drilling operations at the Macondo prospect, where the Spill originated.  More specifically, Transocean Holdings is party to the contract with BP regarding the lease of the Deepwater Horizon for drilling operations in the Gulf of Mexico. On April 28, 2010, the U.S. Coast Guard named Transocean Holdings as a  Responsible Party  under the Oil Pollution Act for the surface Spill resulting from the blowout by the Deepwater Horizon.

23.  Defendants, Transocean Offshore and Transocean Holdings, are hereinafter referred to collectively as  Transocean.  At the Macondo site, Transocean provided the Deepwater Horizon vessel and personnel to operate it. At all times relevant to the Spill, Transocean, subject to BP s inspection and approval, was responsible for maintaining well control equipment, such as the blowout preventer and its control systems. Transocean also provided operational support for drilling-related activities on board the Deepwater Horizon, as well as onshore supervision and support for those drilling activities at all times relevant to the Spill.

24.  Defendant, Halliburton Energy Services, Inc., is a Delaware corporation registered to do business and doing business in the State of Louisiana. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations. Halliburton was

responsible for the provision of technical advice about the design, modeling, placement, and testing of the cement that was used in the Macondo well. At and before the time of the blowout, Halliburton was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons like gas and oil.

25. Halliburton division Sperry Drilling Services (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations. Throughout this Complaint, Halliburton shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

26. To the extent necessary, Plaintiffs specifically reserve the right to amend this Complaint to name additional parties defendant, pursuant to future conduct, further information learned through discovery or investigation, or any other reason.

27. This Court has jurisdiction over this action pursuant to: (1) 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is an action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business; (2) 28 U.S.C. § 1333(1), made applicable by the Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 30101, because of the maritime nature of some of the claims asserted herein (saving to Plaintiffs all other remedies to which they are otherwise entitled); and (3) 28 U.S.C. § 1331, because some of the claims asserted herein arise under the laws of the United States of America including the Oil Pollution Act, 33 U.S.C. § 2717 (b) ( OPA ). All the maritime claims are brought on the law side of the

Court with a request for a trial by jury.

28. This Court has subject matter jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a) because such claims are so related to the claims within the Court s original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

29. Prosecution of this action in this district is proper under 28 U.S.C. § 1391(b)(2) and (3) because the events or omissions giving rise to the claims asserted herein occurred in this district. Venue is otherwise appropriate in this district consistent with 28 U.S.C. § 1407 and the 2010 Transfer Order of the Judicial Panel on Multidistrict Litigation ( JPML ). See In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010, MDL No. 2179, --- F. Supp. 2d ----, 2010 WL 3166434, 2010 AMC 1977 (JPML, August 10, 2010). Venue is also proper pursuant to the OPA, 33 U.S.C. 2717 (b), as the discharge occurred in this district. In addition, venue is proper pursuant to this Court s Pretrial Order No. 20, which allows plaintiffs to directly file their complaints arising out of the Spill in this District.

30. This Court s exercise of general jurisdiction is appropriate as to each of the defendants because they have substantial or continuous and systematic contacts with this district.

## II. **FACTUAL ALLEGATIONS**

31. As supplement to the allegations set forth in Plaintiffs Introduction (pp. 1-7 of this Complaint), Plaintiffs adopt, incorporate by reference and reallege the factual allegations set forth in the First Amended Master Complaint, Cross-claim, and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III(B1) [ B1 Bundle ] (Rec. Doc. 1128, ¶¶ 258-543), and the factual allegations set forth in ¶¶ 32-283 and ¶¶

302-305 of the Amended Class Action Complaint for Private Economic Losses and Property Damages (Rec. Doc. 6412). Plaintiffs additionally allege that BP has agreed to plead guilty to fourteen felony counts brought by the U. S. Department of Justice for misconduct or neglect of ship s officers, five years probation, and payment of a fine of 4.5 billion dollars for its outrageous acts and omissions which caused the Spill and the deaths of eleven rig workers. Likewise, Transocean has entered into an agreement with the U. S. Department of Justice to plead guilty to criminal violation of the Clean Water Act and pay a $400,000,000.00 criminal penalty for proceeding with the Macondo drilling project in the face of clear danger signs.

## III. CLAIMS FOR RELIEF

### Claims Under General Maritime Law
### All Plaintiffs Against All Defendants

**A. Negligence**

32. Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

33. At all times material hereto, Defendants were participating in drilling operations onboard the Deepwater Horizon in the Gulf of Mexico.

34. At all times material hereto, Defendants owed and breached duties of ordinary and reasonable care to Plaintiffs in connection with the drilling operations of the Deepwater Horizon and the maintenance of the vessel, its appurtenances and equipment, and additionally owed and breached duties to Plaintiffs to guard against and/or prevent the risk of an oil spill.

35. The existence and breach of these legal duties are established under the general maritime law and state law as deemed applicable herein.

36.  Plaintiffs, as owners lessors, lessees, and/or operators of real property at or near the coast of the Gulf of Mexico and/or businesses or employees of businesses that are dependent upon the Gulf of Mexico s marine and coastal environments for their livelihood and income, were within an appreciable zone of risk, and, as such, Defendants were obligated to protect them.

37.  The blowout and explosions on the Deepwater Horizon, its sinking and the resulting Spill were caused by the joint and concurrent negligence of Defendants which renders them jointly, severally, and solidarily liable to Plaintiffs.

38.  Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiffs and the Gulf of Mexico s marine and coastal environments and estuarine areas.

39.  Defendants were under a duty to exercise reasonable care while participating in drilling operations on the Deepwater Horizon to ensure that a blowout and subsequent oil spill did not occur as a result of such operations.

40.  Defendants were under a duty to exercise reasonable care to ensure that if crude oil discharged in the event of a blowout, that it would be contained and/or stopped within the immediate vicinity of the Deepwater Horizon in an expeditious manner.

41.  Defendants knew or should have known that the acts and omissions described herein could result in damage to Plaintiffs.

42.  Defendants, respectively and collectively, failed to exercise reasonable care while participating in drilling operations to ensure that a blowout and subsequent oil spill did not occur, and thereby breached duties owed to Plaintiffs.

43.  Defendants, respectively and collectively, failed to exercise reasonable care to ensure

that oil would expeditiously and adequately be contained within the immediate vicinity of the Deepwater Horizon in the event of a blowout, and thereby breached duties owed to Plaintiffs.

44. Defendants, respectively and collectively, failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects an uncontrolled oil spill into the waters of the Gulf of Mexico, and thereby breached duties owed to Plaintiffs.

45. The conduct of the Defendants with regard to the maintenance and/or operation of drilling operations and oil rigs such as the Deepwater Horizon and its appurtenances and equipment is governed by numerous state and federal laws and permits issued under the authority of these laws. These laws and permits create statutory standards that are intended to protect and benefit Plaintiffs. One or more of the Drilling Defendants violated these statutory standards.

46. The violations of these statutory standards constitute negligence per se under Louisiana, Texas, Mississippi, Alabama, Florida, and the general maritime law.

47. At all times material hereto the Deepwater Horizon was owned, navigated, manned, possessed, managed, and controlled by Transocean.

48. As the owner and manager of the Deepwater Horizon, Transocean owed duties of care to Plaintiffs to, *inter alia*, man, possess, manage, control, navigate, maintain and operate the Deepwater Horizon with reasonable and ordinary care.

49. Transocean breached its duties to Plaintiffs by, *inter alia*, failing to properly manage, control, maintain and operate the Deepwater Horizon and its safety equipment, including the gas sensors, air intake valves, emergency shut down systems, and BOP, and in disabling vital alarm systems on the Deepwater Horizon before the blowout.

50. Transocean also breached its duties to Plaintiffs by making and/or acquiescing to a series of reckless decisions concerning, *inter alia*, well design, the use of centralizers, mudding operations, cementing, integrity testing, deployment of the casing hanger lockdown sleeve, spacer material, and simultaneous operations causing worker confusion and loss of focus.

51. Defendants also violated the International Safety and Management Code ( ISM ), as adopted by the International Convention for the Safety at Life at Sea ( SOLAS ), which provides rules and standards to ensure that ships are constructed, equipped, and manned to safeguard life at sea, by failing to properly maintain the vessel, train personnel, and perform appropriate risk assessment analyses. *See* 46 USC §§ 3201-3205 and 33 CFR §§ 96.230 and 96.250.

52. At all times material hereto, the Deepwater Horizon was leased and operated pursuant to a contract between Transocean and BP. Together, Transocean and BP and the other Defendants were responsible for design and well control.

53. BP owed duties to Plaintiffs to, *inter alia*, exercise reasonable care to design, create, manage and control the well and the flow of hydrocarbons therefrom in a safe and prudent manner and to conduct its drilling operations with reasonable and ordinary care.

54. BP breached its duties to Plaintiffs by, *inter alia*:

(a) choosing and implementing a less expensive and less time-consuming long string well design, which had few barriers against a gas blowout, instead of a safer liner/tieback design which would have provided additional barriers to gas blowout, despite its knowledge that the liner/tieback design was a safer option;

(b) using pipe material that it knew, and which it recognized before the blowout, might collapse under high pressure;

(c) using too few centralizers to ensure that the casing was centered into the wellbore;

(d) failing to implement a full bottoms-up circulation of mud between the running of the casing and the beginning of the cement job in violation of industry standards;

(e) failing to require comprehensive lab testing to ensure the density of the cement, and failing to heed the ominous results of negative pressure testing which indicated that the cement job was defective;

(f) cancelling the cement bond log test that would have determined the integrity of the cement job;

(g) failing to deploy the casing hanger lockdown sleeve to prevent the wellhead seal from being blown out by pressure from below;

(h) using an abnormally large quantity of mixed and untested spacer fluid;

(i) failing to train drilling vessel workers and/or onshore employees, and to hire personnel qualified in risk assessment and management of complex systems like that found on the Deepwater Horizon;

(j) requiring simultaneous operations in an effort to expedite the project, making it difficult for workers to track fluid volumes in the wellbore; and,

55. All of the foregoing acts and/or omissions by BP proximately caused and/or contributed to Plaintiffs injuries and damages.

56. At all times material hereto, Halliburton was responsible for cementing the well that was the subject of the Spill, and further was engaged in testing, analysis, and monitoring of the aforementioned well.

57. At all times material hereto, Halliburton owed duties to Plaintiffs to, *inter alia*,

exercise reasonable care in conducting its cementing, testing, analysis and monitoring of the Deepwater Horizon s well.

58. Halliburton breached its duties to Plaintiffs by, *inter alia*, failing to exercise reasonable care in conducting its cementing, testing, analysis, and monitoring of the Deepwater Horizon s well. Halliburton was negligent by, *inter alia*, failing to use a full bottoms-up circulation of mud between the running of the casing and the beginning of the cement job in violation of industry standards; failing to require comprehensive lab testing to ensure the density of the cement, and failing to heed the ominous results of negative pressure testing which indicated that the cement job was defective; cancelling, or acquiescing in the cancellation of, the cement bond log test that would have determined the integrity of the cement job; failing to deploy, or acquiescing in the decision not to deploy, the casing hanger lockdown sleeve to prevent the wellhead seal from being blown out by pressure from below, all of which proximately caused and/or contributed to Plaintiffs injuries and damages.

59. In addition to the negligent actions described herein, and in the alternative thereto, the injuries and damages suffered by Plaintiffs were caused by the acts and/or omissions of Defendants that are beyond proof by the Plaintiffs, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the blowout, explosions, fire, sinking, and Spill resulted from the negligence of Defendants. The blowout, explosions, fire, sinking, and the resulting Spill would not have occurred had the Defendants satisfied the duty of care imposed on them and Plaintiffs, therefore, plead the doctrine of *res ipsa loquitur*.

60. In addition to the foregoing acts of negligence, Plaintiffs aver that the blowout,

explosions, fire, and resulting Spill were caused by the joint, several, and solidary negligence and fault of Defendants in the following non-exclusive particulars:

(a) Failing to properly operate the Deepwater Horizon;

(b) Operating the Deepwater Horizon in such a manner that a fire and explosions occurred onboard, causing it to sink and resulting in the Spill;

(c) Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

(d) Acting in a careless and negligent manner without due regard for the safety of others;

(e) Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have averted the blowout, explosions, fire, sinking, and Spill;

(f) Operating the Deepwater Horizon with untrained and unlicensed personnel;

(g) Negligently hiring, retaining and/or training personnel;

(h) Failing to take appropriate action to avoid or mitigate the accident;

(i) Negligently implementing or failing to implement policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

(j) Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

(k) Failing to warn in a timely manner;

(l) Failing to timely bring the oil release under control;

(m) Failing to provide appropriate accident prevention equipment;

(n) Failing to observe and read gauges that would have indicated excessive pressures in

the well;

(o) Failing to react to danger signs; and

(p) Such other acts of negligence and omissions as will be shown at the trial of this matter; all of which acts are in violation of the general maritime law.

61.  Plaintiffs are entitled to a judgment finding Defendants liable, jointly, severally, and solidarily, to Plaintiffs for damages suffered as a result of Defendants negligence and awarding Plaintiffs adequate compensation therefor in amounts determined by the trier of fact.

62.  The injuries to Plaintiffs were also caused by and/or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

63.  As a direct and proximate result of Defendants acts and/or omissions, the Plaintiffs have suffered , *inter alia*: (1) damages resulting from damage to fish, oyster, scallop, crab and other commercially valuable marine populations; and from the closure and pollution of the Gulf water areas, harbors, marinas, boat launches and waterways, including the loss of their livelihoods which directly depend upon a supply of fish, shrimp, oysters and crabs from the Gulf of Mexico, loss of income, loss of the right of use of the Gulf of Mexico, and Louisiana, Texas, Mississippi, Alabama, and Florida saltwater areas, and costs associated and inconvenience sustained as a result of the closure and pollution of the Gulf water areas; and/or (2) damages associated with a loss of income and inconvenience due to the inability to provide goods and services relating to offshore oil recovery and exploration activities; and/or (3) damages associated with a loss of income and inconvenience due to their inability, and the inability of their customers and clients, to use the Gulf of Mexico and the Coastal Zone for recreational

purposes, and also due to the pollution, and the perception of pollution by their customers and clients, of the Gulf of Mexico and the Coastal Zone; (4) and/or damages associated with loss of income due to the inability of fishermen and other seamen to use the Gulf of Mexico for commercial purposes, and inconvenience caused by the closure of the Gulf water areas, harbors, marinas, boat launches and waterways, and also due to the pollution, and the perception of pollution by the customers and clients of their employers, of the Gulf of Mexico and the Coastal Zone; and/or (5) damage to their property, diminution of value and/or loss of use of their property, loss of sales contracts and marketability, stigma damages resulting from the taint of their property caused by the Spill, loss of income and inconvenience resulting from the decrease in tourism due to the pollution, and public perception of pollution, of the Gulf resulting from the Spill; and/or (6) loss of income, loss of profits, and inconvenience due to increased foreclosures, diminution in property values, and loss of business resulting from the Spill; and/or (7) the loss of their livelihoods, business, income, and profits caused by the moratorium placed on deepwater drilling in the Gulf of Mexico by the Department of Interior on May 28, 2010 in response to the Spill, which was a proximate and foreseeable result of the conduct of Defendants; and/or (8) damages associated with loss of income and employment benefits relating to their government employment caused by the tourist exodus from the Gulf Coast areas following the Spill and resulting budgetary restraints and diminished need for employee services experienced by government entities in the Gulf coast area following the Spill; and/or (9) damages of individuals and entities who have one or more valid claims under the OPA and have executed a final Release and Covenant Not to Sue in favor of BP, who have suffered, *inter alia*, damages as the result of giving a final release under financial duress, for insufficient and inadequate compensation which

did not fully compensate them for the damages to which they are entitled under the OPA. Such Plaintiffs are improperly banned from recovering additional compensation under the Settlement based on an unauthorized, void and/or voidable  final  release obtained by BP or its agent, the GCCF, in exchange for compensation which should have been interim compensation under the OPA.

### B. Gross Negligence and Willful Misconduct

64.  Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

65.  Defendants owed and breached duties of ordinary and reasonable care to Plaintiffs in connection with the maintenance of, and drilling operation on, the Deepwater Horizon, and additionally owed and breached duties to Plaintiffs to guard against and/or prevent the risk of the Spill. The existence and breach of these legal duties are established under the general maritime law and state law as deemed applicable herein.

66.  Defendants breached their legal duty to Plaintiffs and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the negligent maintenance, and/or operation of the Deepwater Horizon.

67.  Defendants knew or should have known that their wanton, willful, and reckless misconduct would result in a disastrous blowout and oil spill, causing damage to those affected by the Spill.

68.  Transocean acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, disabling the gas alarm system aboard the Deepwater Horizon.

69. BP and Transocean acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, failing to use a sufficient number of centralizers to prevent channeling during the cement process; failing to run a bottoms up circulation of the drilling mud prior to beginning the cement job; disregarding proper drilling, casing, mudding, and cementing procedures; failing to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects an uncontrolled oil spill into the waters of the Gulf of Mexico.

70. BP, Transocean, and Halliburton acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, using an inappropriate cement mixture for the well; failing to appropriately test that cement mixture prior to using it in the well; failing to run a cement bond log to evaluate the integrity of the cement job; and failing to deploy the casing hanger lockdown sleeve prior to commencing the mud displacement process in the well.

71. BP and Transocean acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, using an untested, abnormally large volume of mixed spacer solutions to avoid having to properly dispose of the two separate spacer substances as hazardous wastes.

72. BP and Transocean acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, recklessly maintaining and altering, and/or wantonly operating and/or using the BOP appurtenant to the Deepwater Horizon.

## Claims Under the Oil Pollution Act

### All Plaintiffs Against BP and Transocean

73.  Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

74.  The Oil Pollution Act, 33 U.S.C. § 2701, *et seq.* (the OPA ), imposes liability upon a responsible party for a... vessel or a facility from which oil is discharged...into or upon navigable waters or adjoining shorelines for the damages that result from such incident as well as removal costs. 33 U.S.C. § 2702.

75.  The Coast Guard has named BP as the responsible party for the downhole release of oil and Transocean as the responsible party for the release of diesel on the surface. Therefore, BP and Transocean are strictly liable pursuant to Section 2702 of the OPA for all the damages resulting from the Spill.

76.  Defendants BP and Transocean are not entitled to limit their liability under Section 2704(a) of the OPA because the Spill was proximately caused by their gross negligence, willful misconduct, or violation of applicable safety, construction or operating regulations. 33 U.S.C. § 2704(c).

77.  Moreover, in its Statement of BP Exploration & Production Inc. Re Applicability of Limitation of Liability Under Oil Pollution Act of 1990, filed on October 19, 2010, BP waived the statutory limitation on liability under the OPA.

78.  As a result of the Spill, Plaintiffs have not been able to use natural resources (air and water, and potentially wetlands and other areas and spaces that have and/or may become contaminated by the spilled oil), and they are entitled to recover from BP and Transocean for

Page 26 of 43

such damages in amounts to be determined by the trier of fact, in addition to the damages as set
forth below.

79. As a result of the Spill, Plaintiffs are entitled to damages pursuant to Section
2702(b)(2)(B), which provides for recovery of damages to real or personal property, including
 [D]amages for injury to, or economic losses resulting from destruction of, real or personal
property, which shall be recoverable by a claimant who owns or leases that property , including
the diminution in the value of their property.

80. As a result of the Spill, Plaintiffs are entitled to damages pursuant to Section
2702(b)(2)(E), which provides for  [D]amages equal to the loss of profits or impairment of
earning capacity due to the injury, destruction, or loss of real property, personal property, or
natural resources, which shall be recoverable by any claimant.

81. To the extent required by law, and/or by consent or stipulation by BP, Plaintiffs have
timely satisfied all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b), as to each
and all defendants, by the submission of their claims to the Gulf Coast Claims Facility (the
 GCCF ) and/or BP and/or its agents or designees.

82. In its  Statement Of BP Exploration & Production Inc. Re Applicability of
Limitation of Liability Under Oil Pollution Act of 1990  filed on October 19, 2010, BP waived
the statutory limitation on liability under the OPA.

## STATE LAW CLAIMS FOR RELIEF

### A.  Fraudulent Concealment

#### All Plaintiffs Against All Defendants

83. Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if

fully restated here.

84. To the extent available under state law, Plaintiffs are entitled to recovery against Defendants for their fraudulent concealment of material facts concerning the Spill.

85. After the explosions, Defendant BP attempted to downplay and conceal the severity of the Spill. BP s initial leak estimate of 1,000 barrels per day was found by government investigators to be a fraction of the actual leakage amount of 50,000 barrels of oil per day.

86. Moreover, in the aftermath of the blowout, BP did not provide complete and timely announcements and warnings about the severity, forecast and trajectory of the Spill.

87. In addition, BP misrepresented its capabilities to respond to the Spill. BP overstated its ability to a handle a blowout in its Exploration Plan, wherein it claimed that in the event of a blowout resulting in an oil spill, it was  unlikely to have an impact based on the industry wide standards for using proven equipment and technology for such responses.

88. In fact, BP did not have proven equipment and technology to respond to the Spill. Instead, according to the letter to Attorney General Eric Holder by Members of Congress on May 17, 2010, it did not  ...in any way appear that there was  proven equipment and technology  to respond to the spill, which could have tragic consequences for local economies and the natural resources of the Gulf of Mexico.  As noted further in that letter,  much of the response and implementation of spill control technologies appear[ed] to be taking place on an ad hoc basis.

89. BP admitted on May 10, 2010, that  [a]ll of the techniques being attempted or evaluated to contain the flow of oil on the seabed involve significant uncertainties because they have not been tested in these conditions before.

90. Despite its inability to respond and control the Spill, BP resisted requests from

scientists to use sophisticated instruments at the ocean floor that would have provided a more accurate picture of the amount of oil that was gushing from the well.

91. The severity, forecast and trajectory of the Spill, and BP s ability to respond to the Spill, were material facts that BP had a duty to disclose.

92. In addition, Defendant Halliburton misrepresented and concealed the stability of the cement used at the Macondo well, despite having performed three tests before the Spill, all of which demonstrated that the foam cement used at Macondo was unstable.

93. The instability of the cement used at the Macondo well and the results of the testing performed before the Spill were material facts that Halliburton had a duty to disclose.

94. Moreover, BP was aware, before the Spill, that Halliburton s testing had revealed that the concrete foam was unstable, yet it concealed this material fact.

95. Transocean misrepresented and concealed the condition of the Deepwater Horizon and the known hazards associated with the disabling of, and/or failure to maintain, its safety features and appurtenances, including, inter alia, its BOP and gas alarm system.

96. Transocean also misrepresented and concealed the safety record of the vessel, which was based on false data supplied by its personnel.

97. Transocean misrepresented and concealed the condition of many key components, including, inter alia, the BOP rams and failsafe valves, which had not been fully inspected for ten years before the blowout, and at least 36 components and systems on the vessel that were in  bad  or  poor  condition, and which it was aware might lead to loss of life, serious injury or environmental damage.

98. The foregoing known hazards, poor condition, and maintenance and safety issues

associated with the Deepwater Horizon and its appurtenances and equipment were material facts that Transocean had a duty to disclose.

99. Defendants failed to disclose or concealed the foregoing material facts, and their failure to do so induced Plaintiffs to act or to refrain from acting to protect their property, businesses, livelihoods and income.

100. As a direct and proximate result of the fraudulent concealment of the foregoing material facts by Defendants, Plaintiffs suffered damage to their businesses, livelihood, income and damage to and diminution in value of their property, for which they are entitled to compensation.

101. Moreover, the acts of misrepresentation and concealment of the foregoing material facts by were willful, wanton, and/or in callous disregard for the safety of others and, accordingly, Plaintiffs are entitled to an award of punitive damages.

**B. Strict Liability Pursuant To The Florida Pollutant Discharge Prevention and Control Act Fla. Stat. § 376.011-376.21**

**Florida Plaintiffs Against BP and Transocean**

102. Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

103. At all relevant times, BP and Transocean owned, leased, operated, and/or maintained the Deepwater Horizon and the Macondo well. The Deepwater Horizon was both a vessel , as defined by § 376.031(20)(a), Fla. Stat., and an offshore facility , as defined by § 376.031(21)(c), Fla. Stat., and a terminal facility , as defined by § 376.031(23), Fla. Stat.

104. On or about April 20, 2010, BP and Transocean began discharging pollutants which extended into and upon the coastal waters, estuaries, tidal flats, salt marshes, wetlands, beaches

and lands adjoining the seacoast of the State of Florida in violation of § 376.041, Fla. Stat.  The

Coast Guard has named BP as the responsible party for the downhole release of oil and

Transocean as the responsible party for the release of diesel on the surface.  Therefore, BP and

Transocean are responsible parties, as defined by § 376.031(16), Fla. Stat., for the illegal

discharge and  are liable under Florida law for all damages, as defined by Florida law, to Florida

Plaintiffs.

105.  At all relevant times, said Defendants had a statutory duty to Florida Plaintiffs to

maintain and operate the Deepwater Horizon and the Macondo well so as to not create or sustain

hazardous conditions due to the discharge of pollutants as defined by the Florida Pollutant

Discharge Prevention and Control Act, Fla. Stat. §§ 376.011 - 376.17 and §§ 376.19 - 376.21.

106.  At all relevant times, said Defendants breached their statutory duty to the Florida

Plaintiffs by discharging, or allowing to be discharged, crude oil and toxic dispersants into the

Gulf of Mexico and allowing the massive oil spill, combined with toxic dispersants, to migrate

into Florida s marine and coastal areas, in violation of Florida Law, Fla. Stat. §§ 376.011 -

376.21.  Those affected marine and coastal areas are the location of Florida Plaintiffs  real and

personal properties and the environment and natural resources in which said Plaintiffs have a

protected economic interest.

107.  Florida law creates a private right of action for damages resulting from pollution,

and BP and Transocean are strictly liable to Florida Plaintiffs under § 376.205, which provides in

pertinent part:

> Notwithstanding any other provision of law, any person may bring a cause of
> action against a responsible party in a court of competent jurisdiction for damages,
> as defined in § 376.031, resulting from a discharge or other condition of pollution
> covered by §§ 376.011-376.21.  In any such suit, it shall not be necessary for the

person to plead or prove negligence in any form or manner. Such person need
only plead and prove the fact of the prohibited discharge or other pollutive
condition and that it occurred.

The Spill constitutes a prohibited discharge within the meaning of Florida law and it has

occurred.

108. Fla. Stat. § 376.031(5) defines damage as follows:

Damage means the documented extent of any destruction to or loss of any real
or personal property, or the documented extent, pursuant to s. 376.121, of any
destruction of the environment and natural resources, including all living things
except human beings, as the direct result of the discharge of a pollutant.

109. The immediate discharge from the Spill occurred into waters outside the territorial

limits of Florida; however, lands and waters within the territorial limits of Florida have been

directly affected by the discharge and are reasonably expected to continue to be so affected.

110. As a direct and proximate result of the Spill and post-Spill clean-up activities,

Florida Plaintiffs have sustained damage to their real and personal properties and to the

environment and natural resources in which said Plaintiffs have a protected economic interest,

and they are entitled to recover from Defendants for such damages in amounts to be determined

by the trier of fact.

111. The said Florida Act contains no presentation requirement. *See* Fla. Stat. § 376.205.

In accordance with Section 768.81(4)(b), Fla. Stat., statutory provisions apportioning damages on

the basis of comparative fault are not applicable to actions for recovery of actual economic

damages resulting from pollution, and Defendants are jointly and severally liable for all

economic damages alleged in this Complaint.

112. By reason of the foregoing, Florida Plaintiffs have incurred damages in an amount

to be determined at trial, and they are entitled to an award of compensatory and punitive damages

against BP and Transocean, together with statutory interest and costs of litigation, including attorneys fees and expert witness fees, and such an award is in the public interest.

**C. Strict Liability Pursuant to the Florida Water Quality Assurance Act, §§ 376.30-376.317, Fla. Stat.**

**Florida Plaintiffs Against All Defendants**

113. Florida Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

114. Defendants acts and omissions, as hereinbefore alleged, resulted in the discharge of pollutants and/or hazardous substances into or upon the surface or groundwater and lands of the State of Florida in violation of standards of the Florida Department of Environmental Regulation as defined in § 403.803(13), Fla. Stat., which discharge was a violation of and prohibited by § 376.302(1)(a), Fla. Stat.

115. As held by the Florida Supreme Court in *Curd v. Mosaic Fertilizer, LLC*, 39 So.3d 1216 (Fla. 2010), § 376.313(3) recognizes (subject to exceptions not applicable to any of the Defendants) ...a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by §§ 376.30-376.317". The only defenses to such cause of action are those specified in § 376.308, Fla. Stats., none of which are available or applicable to any of the Defendants.

116. At all relevant times, Defendants had a statutory duty to Florida Plaintiffs to conduct their drilling operations at the Macondo site so as not to discharge pollutants or hazardous substances which contaminated the surface and/or ground waters or lands of the State of Florida in violation of any standard of the Florida Department of Environmental Regulation as defined in § 403.803(13), Fla. Stat., in violation of Section 376.302(1)(a), Fla. Stat.

Page 33 of 43

117.  At all relevant times, Defendants breached their statutory duty to the Florida Plaintiffs by discharging, or allowing the discharge, of pollutants into the Gulf of Mexico and allowing the massive oil spill to migrate into the surface or the ground waters and lands of the State of Florida, including Panama City Beach, Florida, in violation of Section 376.302(1)(a), Fla. Stat.

118.  Defendants are strictly liable to Florida Plaintiffs under § 376.313(3), which creates a private right of action under the Florida Water Quality Assurance Act, and provides as follows:

> Except as provided in s. 376.3078(3) and (11), nothing contained in ss. 376.30-376.317 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.317.  Nothing in this chapter shall prohibit or diminish a party s right to contribution from other parties jointly or severally liable for a prohibited discharge of pollutants or hazardous substances or other pollution conditions.  Except as otherwise provided in subsection (4) or subsection (5), in any such suit, it is not necessary for such person to plead or prove negligence in any form or manner.  Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it has occurred.  The only defenses to such cause of action shall be those specified in s. 376.308.

119.  The private cause of action created by the Florida Water Quality Assurance Act is a strict liability cause of action.  The Florida Plaintiffs  ...need only plead and prove the fact of the prohibitive discharge or other pollutive condition and that it has occurred  § 376.313(3), Fla. Stat.  The Spill constitutes a prohibited discharge within the meaning of the Florida Water Quality Assurance Act, and it has occurred.

120.  As a direct and proximate result of Defendants  breach of statutory duty to Florida Plaintiffs, said Plaintiffs have suffered destruction to and/or loss of real and personal property and further damages resulting from destruction of the environment and natural resources and living things (except human beings).

121. § 376.313(6), Fla. Stat., provides that the court "...in issuing any final judgment in any such action, may award costs of litigation (including reasonable attorney s and expert witness fees) to any party, whenever the court determines such an award is in the public interest ", and such an award is in the public interest.

122. By reason of the foregoing, Florida Plaintiffs have incurred damages in an amount to be determined at trial, and are entitled to an award of compensatory and punitive damages against Defendants, together with statutory interest and costs of litigation, including attorneys fees and expert witness fees. Pursuant to § 768.81(4)(b), Fla. Stat., Defendants are jointly and severally liable to Florida Plaintiffs for all economic damages alleged in this Complaint.

### D. Strict Liability for Ultra-Hazardous Activity

### All Plaintiffs Against All Defendants

123. Plaintiffs allege each and every allegation set forth in all proceeding paragraphs as if fully restated here.

124. The Defendants activity of attempting to recover crude oil and natural gas by drilling in a fragile, unstable rock formation in approximately 5,000 feet of water and more than 13,000 feet below the sea bottom, and seeking to release toxic, explosive hydrocarbons which are under high pressure is, and was known by Defendants to be, an ultra-hazardous or abnormally dangerous activity for which the Defendants are strictly liable to persons such as Plaintiffs within the zone of risk created by Defendants said activity whom Defendants should recognize as likely to be harmed by the miscarriage of the activity.

125. The foregoing doctrine of strict liability for ultra-hazardous activity is set forth in *Great Lakes Dredging and Dock Company v. Sea Gull Operating Corp*, 460 So.2d 510, 512 (Fla.

3d DCA 1984).

126.  Plaintiffs were in the zone of risk created by Defendants ultra-hazardous activity, and it was foreseeable that Plaintiffs would be damaged by the miscarriage of such ultra-hazardous activity.

127.  As a direct and proximate consequence of the miscarriage of Defendants ultra-hazardous or abnormally dangerous activity as aforesaid, Plaintiffs have incurred damaged in an amount to be determined at trial, and are entitled to an award of compensatory and punitive damages against the Defendants, together with statutory interest and costs of litigation.

### E.  Punitive Damages

### All Plaintiffs Against All Defendants Under All Claims

128. Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

129.  Defendants engaged in conduct so reckless, willful, wanton and in such utter and flagrant disregard for the safety and health of the public and the environment in their activities leading up to and/or during the blowout, explosions, fire, and Spill, as alleged herein, that an award of punitive damages against them at the highest possible level is warranted and necessary to impose effective and optimal punishment and deterrence. Plaintiffs, society and the environment cannot afford and should never be exposed to the risks of another disaster of the magnitude caused by Defendants misconduct herein.

130.  BP and Transocean focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the Deepwater Horizon by performing a critical well pressure test with untrained and unqualified

personnel and by callously ignoring and/or misinterpreting abnormal red flag pressure test results.

131. BP s corporate culture caused and allowed it to disregard the lessons it should have learned and applied from previous incidents at its facilities that resulted in extensive damage and loss of live; instead, it continued to place others at risk in the interests of cost-cutting and financial gain.

132. Transocean callously and with reckless disregard for human life disabled the flammable gas alarm system aboard the Deepwater Horizon and prevented said system from operating properly and preventing or containing the explosions, fire and loss of life.

133. BP and Transocean focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the Deepwater Horizon by using a well design with too few barriers to gas flow.

134. BP and Transocean focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the Deepwater Horizon by failing to use a sufficient number of centralizers to prevent channeling during the cement process.

135. BP, Transocean, and Halliburton focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the Deepwater Horizon by failing to run a bottoms up circulation of the drilling mud prior to beginning the cement job.

136. BP, Transocean, and Halliburton focused primarily on profit while disregarding public and environmental health and safety while undertaking their highly dangerous activities on

the Deepwater Horizon by using an inappropriate cement mixture for the type of rock formation surrounding the well, and by failing to appropriately test that cement mixture prior to using it in the well.

137. BP, Transocean, and Halliburton focused primarily on profit while disregarding public and environmental health and safety while undertaking their highly dangerous activities on the Deepwater Horizon by failing to run a cement bond log to evaluate the integrity of the cement job.

138. BP, Transocean, and Halliburton focused primarily on profit while disregarding public and environmental health and safety while undertaking their highly dangerous activities on the Deepwater Horizon by failing to deploy the casing hanger lockdown sleeve prior to commencing the mud displacement process in the well.

139. BP and Transocean focused primarily on profit while disregarding public and environmental health and safety while undertaking their highly dangerous activities on the Deepwater Horizon by using an untested, abnormally large volume of mixed spacer solutions to avoid having to properly dispose of the two separate spacer substances as hazardous wastes.

140. BP, Transocean, and Halliburton focused primarily on profit while disregarding public and environmental health and safety while undertaking their highly dangerous activities on the Deepwater Horizon by ignoring and/or misinterpreting abnormal, red flag pressure test results.

141. BP and Transocean recklessly, willfully and/or wantonly caused or contributed to the catastrophic Spill by their grossly inadequate maintenance, and reckless and improper operation and use of the BOPs appurtenant to the Deepwater Horizon.

142. BP and Transocean recklessly, willfully and/or wantonly failed to ensure that oil would expeditiously and adequately be contained within the immediate vicinity of the Deepwater Horizon in the event of a blowout.

143. BP and Transocean recklessly, willfully and/or wantonly caused or contributed to the catastrophic Spill through their collective and respective disregard for proper drilling, casing, mudding, and cementing procedures.

144. BP and Transocean willfully and/or wantonly failed to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects an uncontrolled oil spill into the waters of the Gulf of Mexico.

145. BP recklessly, willfully and/or wantonly failed to utilize reasonably safe dispersant chemicals in its haphazard attempts to respond to the Spill, and thereby exacerbated and worsened the pollution of the Gulf of Mexico. The synergistic toxicity to marine life of the combination of Macondo crude oil and Corexit 9500A dispersant used by BP is up to 52 times greater than either the oil or dispersant separately.

146. In addition, after the blowout and before the well was finally sealed, BP was aware of procedures that would immediately block the flow of oil into the Gulf, yet it delayed the implementation of any such procedures, and limited its efforts to plug the well to options that would salvage the well for future use, instead of selecting procedures that would stop the flow of oil as soon as possible regardless of the well s continued functionality. As such, BP increased the magnitude of, and damage caused by, the Spill by willfully and/or wantonly and recklessly choosing its profits over the lives of the workers on the vessel, the safety of the environment, and the health, welfare, and value of the people, businesses, and property of the Gulf states.

147.  Defendants  conduct was oppressive, wanton, malicious, reckless, or grossly negligent each time they:

(a) failed to properly maintain and/or operate the Deepwater Horizon;

(b) operated the Deepwater Horizon in such a manner the safety and integrity of the vessel and the well were disregarded to save time and money;

(c) ignored warnings that the integrity of the well, the cementing job, and the vessel were in jeopardy;

(d) failed to promulgate, implement, and enforce proper rules and regulations to ensure the safe operations of the Deepwater Horizon;

(e) violated MMS regulations for the safe design and operation of oil wells and drilling rigs in the Gulf of Mexico;

(f) failed to take appropriate action to avoid or mitigate the accident;

(g) failed to implement policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

(h) failed to ensure that the Deepwater Horizon and its equipment were free from defects, properly maintained and/or in proper working order;

(i) failed to provide appropriate disaster prevention equipment;

(j) failed to have an appropriate emergency spill response plan or readily available spill response equipment.

148.  Defendants  conduct, as described more fully hereinabove, is at the highest level of reprehensibility, warranting and necessitating the imposition of punitive damages at the highest level, because Defendants  conduct was motivated by financial gain; because it injured and

endangered human and environmental health and safety; because it caused devastating damage and loss to the livelihoods, businesses, and properties of Plaintiffs; because it was not isolated or accidental, but part of a culture and ongoing pattern of conduct that consistently and repeatedly ignored risks to others in favor of financial advantage to Defendants; and because it has accordingly caused societal harm, moral outrage and condemnation, and the need to punish Defendants and deter further repetition by Defendants and others.

149.  In support of Plaintiffs  claim for punitive damages against Defendants, the Plaintiffs and Florida Plaintiffs, pursuant to § 768.72(1), Fla. Stat., proffer evidence based on the internal documents of BP and Halliburton, and data records of the vessel Deepwater Horizon, provided to the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling, and sworn testimony taken before the National Commission, Commission Staff, and the Deepwater Horizon Joint Investigation Team, contained in pages 87-127, and referenced in footnotes on pages 321-327, of the National Commission s Report to the President dated January 2011, attached as Exhibit  A  to this Complaint.  In further support of Plaintiffs  claim for punitive damages against BP, the Plaintiffs and Florida Plaintiffs, pursuant to § 768.72(1), Fla. Stat., proffer evidence based on the proposed Second Amended Cross-Claim of Co-Defendant Halliburton Energy Services, Inc., filed in the U.S. District Court for the Eastern District of Louisiana in Multi-District Litigation case number 2179 (Rec. Doc. 3893), a copy of which is attached as Exhibit  B  to this Complaint.

150.  Accordingly, Plaintiffs are entitled to an award of punitive damages in an amount to be determined at trial.

### F. Declaratory Relief Against BP

### All Plaintiffs Against BP

151.  Plaintiffs seek a declaration by the Court that the conduct of BP and its agents and representatives, including the Gulf Coast Claims Facility ( GCCF ), in obtaining final releases and/or assignments of claims against other parties, persons, or entities is not an obligation or proper function of BP under the OPA.

### G. Prayer for Relief

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly, severally, and solidarily, as follows:

(a) Economic and compensatory damages in amounts to be determined at trial;

(b) punitive damages;

(c) pre-judgment and post-judgment interest at the maximum rate allowable by law;

(d) attorneys  fees and costs of litigation;

(e) declaratory and injunctive relief;

(f) Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

### H. Jury Demand

Plaintiffs demand trial by jury on all claims and issues so triable.

S/Professor P. Tim Howard

Professor P. Tim Howard
Howard & Associates, Attorneys at Law, P.A.
8511 Bull Headley Road, Suite 405
Tallahassee, Florida 32312
(850) 298-4455 - telephone
(850) 216-2537 - facsimile
Florida Bar No. 655325
tim@howardjustice.com
Counsel for Plaintiffs

S/Douglas S. Lyons

Douglas S. Lyons
Lyons and Farrar, P.A.
325 North Calhoun Street
Tallahassee, Florida 32301
(850) 222-8811 - telephone
(850) 222-5583 - facsimile
Florida Bar No. 128277
doug.lyons@lyonsandfarrar.com
Counsel for Plaintiffs

S/Samuel T. Adams

Samuel T. Adams
460 Grace Avenue
Post Office Box 191
Panama City, Florida 32402-0191
(850) 785-3469 - telephone
(850) 640-1562 - facsimile
Florida Bar No. 160184
tom@samueltadams.com
Counsel for Plaintiffs

EXHIBIT 2

<u>APPENDIX TO COMPLAINT</u>

**Names of the Plaintiff Individuals and Entities to Complaint for Private Economic Losses Which Have Opted out of the Amended *Deepwater Horizon* Economic and Property Damages Settlement Agreement (Rec. Doc. 6430-1) and of the Named Individuals and Entities Whose Claims Are Excluded (Either Explicitly or Implicitly) from the Amended *Deepwater Horizon* Economic and Property Damages Settlement Agreement**

**PLAINTIFFS WHOSE DAMAGES OCCURRED IN FLORIDA**

1.  Jensen Beach Marketing, Inc., a Florida corporation
2.  1 Shot Charters, Inc., a Florida corporation
3.  77 Seafood Market, Inc., a Florida corporation
4.  Advanced Sign Solutions, Inc., a Florida corporation
5.  Affiliates Insurance & Investment Inc., a Florida corporation
6.  Affordable Transmissions and Parts, Inc., a Florida corporation
7.  Alabama Landmark Corporation of Florida, a Florida corporation
8.  Alabama Suco, Inc., a Florida corporation
9.  All Pro Watercraft & ATV Service, Inc., a Florida corporation
10. Allen Brothers Seafood & Trucking, Inc., a Florida corporation
11. America's Best Construction, Inc., a Florida corporation
12. Andrew Adkison Inc., a Florida corporation
13. Apalach Holding Company, Inc., a Florida corporation
14. Apalachee Bay Enterprises, Inc., a Florida corporation
15. Aqua Dry of the Emerald Coast, Inc., a Florida corporation
16. Artistic Neon & Signs, Inc., a Florida corporation
17. Back Beach Automotive Services, Inc., a Florida corporation
18. Bay Street Deli, Inc., a Florida corporation
19. Bayou Bubba's Seafood, Inc., a Florida corporation
20. Beach Boys Realty Incorporated, a Florida corporation
21. Billy Richardson, P.A., a Florida corporation
22. Black Angus Restaurant & Lounge, Inc., a Florida corporation
23. Blakemore Coatings, Inc., a Florida corporation
24. Bruce Bush Construction, Inc., a Florida corporation
25. Bruner Lumber Company, Inc., a Florida corporation
26. Calhoun-Liberty Abstract Company, a Florida corporation
27. Carefree Pool and Spa Services, Inc., a Florida corporation
28. Century I, Inc., a Florida corporation
29. Chasnan, Inc., a Florida corporation
30. Cheung Won, Inc., a Florida corporation
31. Coastal Concrete Specialists, Inc., a Florida corporation
32. Coastal Excavation and Pavers Inc, a Florida corporation
33. Cullen Video, Inc., a Florida corporation
34. David P. Bjorkman Inc., a Florida corporation
35. David Scott Fine Jewelry, Inc., a Florida corporation
36. DTG of Bay County, Inc., a Florida corporation
37. Emerald Coast Rental Services Inc., a Florida corporation
38. Emerald Surf Water Sports Inc., a Florida corporation
39. Eye Center of North Florida, P.A., a Florida corporation
40. Faith Christian Family Church of Panama City Beach, Inc., a Florida corporation
41. Forgotten Beach Coast Realty, Inc., a Florida corporation

42.    Forgotten Coast Mortgage, Inc., a Florida corporation
43.    G. David Co., a Florida corporation
44.    Glenda Moore Enterprises, Inc., a Florida corporation
45.    Ground Floor Inc., a Florida corporation
46.    Guadalajara Mexican Grill, Inc., a Florida corporation
47.    Gulf Coast Grease Corp., a Florida corporation
48.    Gulf Coast Rehabilitation & Consulting Service Inc., a Florida corporation
49.    Gulf Framers, Inc., a Florida corporation
50.    Havi-Clean, Inc., a Florida corporation
51.    Hobbs Plumbing, Inc., a Florida corporation
52.    HPPS, Inc, a Florida corporation
53.    Independent Appliance, Inc., a Florida corporation
54.    Jane Araguel, PA, a Florida corporation
55.    J. Michael Pons Construction Inc., a Florida corporation
56.    John L. Gioiello, P.A., a Florida corporation
57.    Johnny's Clams, Inc., a Florida corporation
58.    Justice Design Studio, PC, a Florida corporation
59.    KAB Painting, Inc., a Florida corporation
60.    Kelli's Marine Inc., a Florida corporation
61.    Kevin Carter Construction, Inc., a Florida corporation
62.    Kindel Lanes, Inc., a Florida corporation
63.    Landmark General Contractors, Inc., a Florida corporation
64.    Lee's Commercial Construction I Inc, a Florida corporation
65.    Leisure Real Estate Advisors Inc., a Florida corporation
66.    LLGM Investments, L.C., a Florida limited liability company
67.    Los Rancheros of Panama City Beach, Inc., a Florida corporation
68.    Los Rancheros of Panama City, Inc., a Florida corporation
69.    Mark's Insurance Agency, Inc., a Florida corporation
70.    Martin Theatre, Inc., a Florida corporation
71.    McGlynn Laboratories, Inc., a Florida corporation
72.    McNeil Carroll Engineering, Inc., a Florida corporation
73.    N22 LC, a Florida corporation
74.    Neptune's Garden Inc., a Florida corporation
75.    Northwest Florida Land Investments, Inc., a Florida corporation
76.    Olive Leaves Nutrition & Consultation Center, Inc., a Florida corporation
77.    Padgett Business Services of North Florida, Inc., a Florida corporation
78.    Pamela Scott Inc, a Florida corporation
79.    Panhandle Parties, Inc., a Florida corporation
80.    Park Concession Recreation and Preservation Inc., a Florida corporation
81.    Penderck Enterprises, Inc., a Florida corporation
82.    Personal Investments Inc, a Florida corporation
83.    Phil Houston Appraisal Service, Inc., a Florida corporation
84.    Practical Pig Storage, Inc., a Florida corporation

85. Pro's Roofing Inc., a Florida corporation
86. Red Bay Sand Co., Inc., a Florida corporation
87. Rivermont Development Corp., a Florida corporation
88. Rowland Publishing, Inc., a Florida corporation
89. Rupert's Cleaners, Inc., a Florida corporation
90. Salvatore's Pizza and Wings, Inc., a Florida corporation
91. Sea Oats Medical Clinic. Inc., a Florida corporation
92. Servall Mortgage Corporation, a Florida corporation
93. Sharp Carpet & Ceramic Tile, Inc., a Florida corporation
94. Shimmering Sands Realty Inc., a Florida corporation
95. Southeast Supply, Inc., a Florida corporation
96. Southern Framing & Finish, Inc., a Florida corporation
97. Speed & Custom Marine Incorporated, a Florida corporation
98. Sunshine Water & Mold, Inc., a Florida corporation
99. Surplus Sales Service, Incorporated, a Florida corporation
100. Tassel's of Panama City, Inc., a Florida corporation
101. Taylor's Building Supply, Inc., a Florida corporation
102. Terror, Inc, a Florida corporation
103. The Ashley Group of Panama City Beach, Inc., a Florida corporation
104. The New Wave Riders, Inc., a Florida corporation
105. The Paint Booth Inc., a Florida corporation
106. Thunder Beach Productions, Inc., a Florida corporation
107. Tim Allen & Associates, Inc., a Florida corporation
108. Trojan Manufacturing Company, Inc., a Florida corporation
109. Verandas at Rivermark, Inc., a Florida corporation
110. Vickie's Diner, Inc., a Florida corporation
111. Virga Law Offices, P.A., a Florida corporation
112. Virga Realty, Inc., a Florida corporation
113. Virga Ventures, Inc., a Florida corporation
114. Washers-R-Us Inc., a Florida corporation
115. Washington County Kennel Club, Incorporated, a Florida corporation
116. Willie G's Restaurant, Inc., a Florida corporation
117. Willis Conservatory of Classical Ballet, Inc., a Florida corporation
118. World Six, Inc., a Florida corporation
119. Zamanta III, Inc., a Florida corporation
120. 101 Franklin Boulevard, LLC, a Florida limited liability company
121. Accent Property & Mold Inspections, LLC, a Florida limited liability company
122. Adventure Watersports of NWF, LLC, a Florida limited liability company
123. All Coverage Insurance, LLC, a Florida limited liability company
124. Allan Farms, .LLC., a Florida limited liability company
125. AMC Electric, L.LLC., a Florida limited liability company
126. As Seen on TV & More, LLC, a Florida limited liability company
127. Ashcroft's Interior Trim, LLC, a Florida limited liability company

128. ASLF, LLC, a Florida limited liability company
129. Assisi Development, LLC, a Florida limited liability company
130. Avidiam LLC, a Florida limited liability company
131. B & H Investments of Bay County, LLC, a Florida limited liability company
132. Beach Therapeutic Massage, LLC, a Florida limited liability company
133. Bella Land Holdings, LLC, a Florida limited liability company
134. Black Jack Custom Cycles of Panama City Beach, LLC, a Florida limited liability company
135. Bo Rodriguez Construction, LLC, a Florida limited liability company
136. Boland, Lawson, & Webb .LLC., a Florida limited liability company
137. Brown Insurance Services, LLC, a Florida limited liability company
138. Burnt Store Amenities, LLC, a Florida limited liability company
139. Byrd Brothers, LLC, a Florida limited liability company
140. C & B Enterprises, LLC, a Florida limited liability company
141. Callaway Bayou Land Holdings, LLC, a Florida limited liability company
142. Carrabelle Ventures, LLC, a Florida limited liability company
143. CELTAE, LLC, a Florida limited liability company
144. Clam Key Seafood, LLC, a Florida limited liability company
145. Construction Resources LLC, a Florida limited liability company
146. Creekside Partners, LLC, a Florida limited liability company
147. Destiny Builder Group, LLC, a Florida limited liability company
148. Ebro Holdings Company, LLC, a Florida limited liability company
149. Fann Construction, LLC, a Florida limited liability company
150. Fathoms Steam Room & Raw Bar LLC, a Florida limited liability company
151. Fisher Charters of the Emerald Coast, L.L.C., a Florida limited liability company
152. G&G Real Estate, LLC, a Georgia limited liability company
153. Gant & Shivers Homes, LLC, a Mississippi limited liability company
154. Gary's Marine Service of NW FL, LLC, a Florida limited liability company
155. Golden Island International, LLC, a Georgia limited liability company
156. Guadalajara Mexican Grill of Callaway, LLC, a Florida limited liability company
157. H&H Enterprises of PC BCH LLC, a Florida limited liability company
158. Homes & Land, LLC, a Florida limited liability company
159. Hotel Reflections LLC, a Florida limited liability company
160. Intercoastal Enterprises, LLC, a Florida limited liability company
161. JEM-PC Beach, LLC, a Florida limited liability company
162. K & M Enterprises of Grayton, LLC, a Florida limited liability company
163. KS Carroll Properties, L.L.C., a Michigan limited liability company
164. Keith Krum Construction LLC, a Florida limited liability company
165. L & M of St Andrews LLC, a Florida limited liability company
166. L. Lance & Associates, LLC, a Florida limited liability company
167. L. Lance Security Service, LLC, a Florida limited liability company
168. LLGM Investments, L.C., a Florida limited liability company
169. Maura M Schroeder, P.A., a Florida limited liability company

170. McFatter Fence & Construction Company, LLC, a Florida limited liability company
171. Mindwaves Hypnosis, LLC, a Florida limited liability company
172. Overstreet Partners, LLC, a Florida limited liability company
173. Panama Sun, LLC, a Florida limited liability company
174. Panhandle Translation Service, LLC., a Florida limited liability company
175. PCB Hotel, LLC, a Florida limited liability company
176. P & G, L.L.C., a Florida limited liability company
177. Premier Properties of Bay County, LLC, a Florida limited liability company
178. Pro Choice Painting, LLC, a Florida limited liability company
179. Ram Marketing Group, LLC., a Florida limited liability company
180. Realmark Burnt Store Marina, L.L.C., a Florida limited liability company
181. Realmark Management Services, LLC, a Florida limited liability company
182. Realmark Marina View South II, L.L.C., a Florida limited liability company
183. Realmark Marina View South, L.L.C., a Florida limited liability company
184. REDI II, LLC, a Florida limited liability company
185. Reid's Court, LLC, a Florida limited liability company
186. Revelay Investment, LLC, a Florida limited liability company
187. Roberson Investments, LLC, a Florida limited liability company
188. Romain Motier, LLC, a Florida limited liability company
189. Rosewood Development Company of North West Florida, , a Florida limited liability company
190. Sawgrass Construction, LLC., a Florida limited liability company
191. Sawgrass Park, L.L.C., a Florida limited liability company
192. Second to None, LLC, a Florida limited liability company
193. Sheesha Cafe, LLC, a Florida limited liability company
194. Splash-Biloxi, LLC, a Florida limited liability company
195. St. Andrews Mini Mart, L.L.C , a Florida limited liability company
196. Sterling Tampa Development Group, LLC, a Florida limited liability company
197. Student Breaks, L.L.C., a Florida limited liability company
198. Sunset Isle Partners, LLC, , a Florida limited liability company
199. Sunshine State Partners, L.L.C., a Florida limited liability company
200. Tapestry Park North, LLC, a Florida limited liability company
201. The Conklin Group LLC, a Florida limited liability company
202. The Fresh Catch Seafood Market, LLC, a Florida limited liability company
203. The Sterling Companies, LLC, a Florida limited liability company
204. Total Concept Realty, LLC, a Florida limited liability company
205. Total Management Realty, LLC, a Florida limited liability company
206. Uptown Grayton, LLC, a Florida limited liability company
207. Vantagepointe Callaway, LLC, a Florida limited liability company
208. Virga Investments, LLC, a Florida limited liability company
209. Wandra A Beaudry, LLC, a Florida limited liability company
210. Watson Bayou Land Holdings, LLC, a Florida limited liability company
211. Whirlwind Restoration Services by Cody Corbin, LLC, a Florida limited liability company

212. Wine Bait & Nails, LLC, a Florida limited liability company
213. Withers & Associates Realty L.L.C., a Florida limited liability company
214. Xact Accounting, LLC, a Florida limited liability company
215. Justice Group, LLC, a South Carolina limited liability company
216. MJM Real Estate Investments, LLC, a Tennessee limited liability company
217. DTP Diecast Solutions, LLC, an Alabama limited liability company
218. Logistic Services of Alabama, L.L.C., an Alabama limited liability company
219. Front Beach Associates, Ltd., an Ohio limited partnership
220. Abdelmoamen Abou Bakr dba Mona's Accessories
221. Barney L. Pippin dba Pippin Watercraft
222. Billy Keyser d/b/a Gadsden County Mullet Association
223. Billy W. White dba Real Estate Sales
224. Bo Lee dba Back Beach Plaza
225. Bonita L. Milstead dba Bonnie Milstead
226. Carol L. Cairns dba I Got It Maid
227. Christian T. Jasperson dba Christian's Lawn Service
228. Coantley Enterprises Inc., dba The Butler's Pantry
229. Daniel Goodwin dba International Computer Services
230. David Rich dba Sunshine Riding Trails
231. Foodservice America Corporation dba My Caterer!
232. Gary A. Brannon dba Fishnstix
233. George F. Sengel, III, dba Advanced Real Estate Appraising
234. Glenn Masteller, dba Butcher's Choice
235. Gregory S. Paris dba Paris Distributing
236. GSW Holdings, LLC, a Mississippi limited liability company, dba Mariner's Cove
Development Company, LLC
237. Jacob Cocke dba Big Cocke Charters
238. Jason Godfrey dba Godfrey and Son Transportation
239. Jason M. Webb dba Sunnyside Pool Services
240. Jay Brad Quinn dba Legends Classic Car Restoration
241. Karen L. Glancy dba Heavenly Hair
242. Karen L. Peters dba Gleaming Cleaning
243. Karen R. Ferguson dba Blu Starr Services
244. Blount/McNeil, Inc., a Florida corporation, dba Kelly Plantation Partners
245. Kel-Sail Corporation dba Rustler's Reef
246. Kim Stone dba Kim Stone Photography
247. Thomas and Leslie Allen dba Lafayette Properties LLP
248. Lawrence W. Curry dba Curry Lawn Service
249. Linda Rivers dba Life Helpers
250. Mary Ann Larson dba M & S Beach Rentals
251. May T. Nguyen dba L.A. Nails Design
252. Melanie A. Monta dba Melanie A. Monta
253. Mercedes Franklin dba Meche

254.   P&G, LLC, a Florida limited liability company, dba Hometown BP & Deli
255.   Pauline M. Bocalan dba House of Eggrolls
256.   Phillip Wilds dba Anchored Charters Guild Service
257.   Redondo A. Masslieno dba Redondo Masslieno Distributing
258.   Roger D. Worley dba Worley's Lawn Care
259.   Thomas and Leslie F. Allen dba TNB Financial Services
260.   United Business Partners, LLC, a Florida limited liability company, dba Insurance Zone
261.   Velma M. Phillips dba Velma Phillips
262.   Wanda G. Elliott dba Happy Hands Cleaning Service
263.   Wayne H. Thomas dba Huey Thomas Trucking
264.   William and Linda Bush dba Alta, Ltd.
265.   William Pat Kinser dba 98 Real Estate
266.   William Ray Grantham dba Holiday Terrace
267.   Johnny Abbott
268.   Kelli Abbott
269.   James Adams
270.   Grace Alessi
271.   Craig Alexander
272.   Courtney Aljohani
273.   Greg Allen
274.   Leonard Allen
275.   Leslie F. Allen
276.   Luda Allen
277.   Sandra Allen
278.   Sherri Allen
279.   Thomas Allen
280.   Andrew Amison
281.   Melissa Anderson
282.   Tanya Anderson
283.   Thomas Anderson
284.   Bertram Andrews
285.   Joan G. Annis
286.   Martha Argueta
287.   Deana Armstrong
288.   Kathleen Atkins-Gunter
289.   Catharine Augustine
290.   Leon Aurty
291.   Michelle Ayotte
292.   Johnathan Azevedo
293.   Sriprai Bair
294.   David Baker
295.   Roger Baldwin
296.   Sherry S. Ballinger

297.    Annie Banks
298.    James Banks
299.    Scotty Banks
300.    Caden Barber
301.    Jelp Barber
302.    Wade Barber
303.    Earl Barnes
304.    Gerald Barnes
305.    Everette Barrack
306.    Kelly Barrett
307.    Rick Barrett
308.    Lynn Kathleen Barrier
309.    Peggy Beasley
310.    Patricia Bechtold
311.    Susan Bell
312.    Stanley Benecki
313.    Eddie Benton
314.    Edward Bien Aime
315.    Paul Bing
316.    Lanny Blair
317.    Rachel Blair
318.    Gary Bolt
319.    Mary Beth Bolton
320.    Robert R. Bolton
321.    Michael Boone
322.    Melanie A. Boso
323.    Tammy Bowers
324.    Jennifer Bowman
325.    Chris Boyer
326.    Stephen Branch
327.    Ignatius Brannon
328.    Melba Bridges
329.    Richard H. Brigman
330.    Melissa Britcher
331.    Andre Brooks
332.    Cynthia Brooks
333.    Alphene Brown
334.    David Brown
335.    James Brown
336.    Michael Brown
337.    Tony Brown
338.    Jessica Bruhmuller
339.    William Bruhmuller

340.   Jason Bruner
341.   Stephen Bryant
342.   Kevin Buckland
343.   Bobby Bullock
344.   Steven Lloyd Burchfield
345.   Ralph Burdeshaw
346.   Angela Burger
347.   Ryan Burke
348.   Dennis Burke, Jr.
349.   Donald Kevin Burnes
350.   Jon Mark Burress
351.   Marion Busby
352.   Brian Bush
353.   William Bush
354.   Tonya Butchikas
355.   Victoria Butler
356.   Michael Cain
357.   William Calderon
358.   George Camelo
359.   Suzanne Cammack
360.   Phyllis Campisi
361.   George Cargill
362.   Jeff Carlisle
363.   Gary Carr
364.   Scott Carruthers
365.   Vionaka Carter
366.   Stella Chagares
367.   Amanda H. Chambers
368.   Lawton Chambers
369.   Gerald Chappell
370.   Robin Chappell
371.   Nick Charles
372.   Edwin Chason
373.   W. D. Chatham
374.   Carlos Chavira
375.   Cynthia K. Chavira
376.   Jo Chonko
377.   Mark A. Clark
378.   Christopher Claypole
379.   Sherry Clayton
380.   Timothy Cleary
381.   James Cobb
382.   Hume  Clay  Coleman

383.    Michelle Collins
384.    Christina Cone
385.    Glen Connally
386.    Johnny Conner
387.    Hugh  Vic  Conrad
388.    Deborah Cooper
389.    John Cooper
390.    Jonathan Cooper
391.    Thomas Cooper
392.    Jack Corfield
393.    John Corlett
394.    Herbert Cotty
395.    Harrison Coulter
396.    Selena Coulter
397.    James Franklin Coulter, Jr.
398.    James Franklin Coulter, Sr.
399.    Reginald Cox
400.    Bobby Creamer
401.    James Creamer
402.    Joshua Creamer
403.    Tolan Cropper
404.    Ralph Crosby
405.    Ruth Crosby
406.    Gary Crouse
407.    Marissa Crow
408.    Johnathyn Crum
409.    May I. Cuesta-Clarke
410.    Donald Cummings
411.    Margaret Cummings
412.    Lloyd R. Cuthrell, Jr.
413.    Rebecca Dain
414.    Liet Dang
415.    Joseph Davis
416.    Angie Dean
417.    Ramona Dean
418.    Ronnie Dean
419.    Dale Deas
420.    James Deas
421.    Joshua Deas
422.    Shane Debowski
423.    Joan Dennis
424.    Anthony Derck
425.    Mary Derck

426.	Cesar Diaz
427.	Steve Dick
428.	Susan Dillard
429.	James Dinse
430.	Charles Dotson
431.	Bradley Douglas
432.	Kimberly Douglas
433.	Robert L. Douglas
434.	Rhonda Doyle
435.	Jennifer P. Dudley
436.	Justin Duncan
437.	Rebekah M. Duncan
438.	Dennis M. Dunnigan
439.	Patricia J. Durham
440.	Carole Earwood
441.	James Earwood
442.	Larry Elliott
443.	Lynn Ellis
444.	Walter Ellis
445.	Carl Elmore
446.	Nicholas Emerson
447.	Charles Entrekin
448.	Allen Essig
449.	Rebecca Estey
450.	Daniel Evans
451.	Pierre Evariste
452.	Terry Ezell
453.	Melinie Facer
454.	Jennifer M. Faircloth
455.	Lisa W. Felix
456.	Luis Felix
457.	Teresa Fiddler
458.	James E. Fisher
459.	Daniel Flores
460.	Micheal D. Foate
461.	Vivian K. Foate
462.	James Foley
463.	Billy Ford
464.	Mercedes Franklin
465.	Johnson Franklin
466.	Joe Free
467.	Penny Freigo
468.	Paul Froehlich

469. Michael Fuentes
470. Joseph Fuller
471. Michael Gailfoil
472. Diana Gaines
473. Rolando Gamez
474. Charlie Gant
475. Michelle L. Garl
476. Laura R. Garland
477. Marisa Carol Garner
478. Bobby Garrett, Jr.
479. Bobby Garrett, Sr.
480. Cody Garrett
481. Hank Garrett
482. Gabrielle Garrison
483. Christopher A. Gay
484. Martha Gherardi
485. William Gianelloni
486. Joseph Gibson
487. Caleb Gilbert
488. James Gilbert
489. Thaddeus Gilbert
490. Ralph Gill
491. Jason Gleason
492. Donna Godwin
493. Truman Goins
494. Charles Golden
495. Rolando Gomez
496. Lisa Gonzales
497. Andy Gonsalves
498. Leslie Goodwin
499. Eddie Gordon
500. Thomas Gorski
501. Christopher Gragg
502. Lori Graham
503. Christopher Granger
504. Douglas Gray
505. Emery Green
506. George Griffin
507. Helen Griffin
508. Don Griswold
509. Alicia Gunter
510. William Gunter
511. Johnny Gurganus

512. Raymond Guthrie
513. Roger Hager
514. Kelly Haire
515. Danny Halstead, Jr.
516. Laura Hand
517. Katherine Hansli
518. Viann Hardy
519. Teresa Harless
520. Angela Harper
521. Jennifer Harrell (Singleton)
522. Terry Harrelson
523. Horace Harris
524. Lindsay S. Harris
525. Michael W. Harris
526. Benjamin Harrison
527. David Hartman
528. Takevia Hartsfield
529. Chad Harvey
530. Fred Harwell
531. Andrea Hathcox
532. Jeffie Hayes
533. Jeffrey Heath
534. Holly Herbert
535. William Hedbawny
536. Daniel Hedgecock
537. Gary Heil
538. Pamela Heil
539. Andrew Helms
540. Alvin Hendrix
541. Annette Hengge
542. Raul Hernandez
543. Cory Herrman
544. Yvonne Hester
545. Heather Hicks
546. Larry Hightower
547. Gregory Hill
548. Jeremiah Hill
549. Michelle Hill
550. Russell Hinckley
551. Barbara I. Hindman
552. Tina Hinds
553. Earl Hobbs
554. Matthew Hodges

555.   William Holland
556.   Alex Hollingsworth
557.   Taylor Hollis
558.   John Holman
559.   David Holstein
560.   James Michael Holton
561.   Jimmy Horne, Jr.
562.   Carroll Howell
563.   Daphne Howington
564.   John Huber
565.   Nicholas Hudgins
566.   Robert Hudson
567.   MichaeL Hughes
568.   Alton O. Humphrey
569.   Linda Humphreys
570.   Chelsea Hunt
571.   Lorenzo Hunt
572.   Clifford Hunter
573.   Cecil Bobby Hurst
574.   Renardo Hutcherson
575.   April Hutchinson
576.   Barry Lee Hutchinson
577.   Bill Hutto
578.   Sean Irvin
579.   Craig Jarvis
580.   Kendreck Jenkins
581.   Thomas Jennings
582.   Paul Jensen
583.   Carl Johns
584.   Duane Johnson
585.   Janette Johnson
586.   Jon Johnson
587.   Kathy Lynn Johnson
588.   Pat Johnson
589.   Steve Johnson
590.   Glenn Jones
591.   Jacqueline Jones
592.   Jason Jones
593.   Clayton Jordan
594.   Selena Jordan
595.   Mona Joseph
596.   Amber L. Keenam
597.   Jody Keenam

598.   George Kellam
599.   John Kelly
600.   Melissa Kelso
601.   Gerald Kent
602.   Luke Kesnen
603.   John Kiger
604.   Tina Kilgore
605.   Miles King
606.   William Pat Kinser
607.   David Kintner
608.   Tina Kirby
609.   Kraig Kitchen
610.   Kyle Kohler
611.   Marcia Kowalski
612.   Andrey Krasilnikov
613.   George Krishack
614.   Suzanne Labarbera
615.   Kara M. Landiss
616.   Michael Langley
617.   Robert Lansford
618.   Chadwick Large
619.   Trevino Larry
620.   Mary Ann Larson
621.   Lisa Lawrenson
622.   Richard LeBlanc
623.   Robert Kevin Lee
624.   Ronald Lee
625.   Shani S. Lee
626.   Robert Leger
627.   Rebecca Lester (Ehringer)
628.   Violet Lomon
629.   William Lomon
630.   Jacob Londono
631.   Nicholas Long
632.   Ruth Lopez
633.   David Louviere
634.   Kelly Love
635.   Alberto A. Loyola
636.   Austin Luckett
637.   Jennifer Mac Bride
638.   Wayne Maddox
639.   Leah Manry
640.   Charles Markham

641. Daniel Martin
642. William Martina
643. Marina Martins
644. James Mason
645. Casey Matsil
646. Leon Matsil
647. Michael Matthews
648. Jennifer McCarty
649. Lynn McClain
650. Richard McClanahan
651. Martha McClung
652. Robert McConnell
653. John McCoy
654. Kent McCoy
655. Danny McDonald
656. Michele McDonald
657. Charles McEwen
658. Timothy McEwwn
659. Johnathan McGlamry
660. Christine McLaughlin
661. Jimmy McNeil
662. John McNeil
663. Roy McQuagge
664. Shannon Medeiros
665. Emily Melton
666. Michael Melton
667. Jimmy Messer
668. Lance Meyer
669. William Middleton
670. Ashley Millender
671. Crystal Millender
672. Fred Anthony Millender
673. Johnathan Millender
674. Michael Millender
675. Pamela Millender
676. Richard Millender
677. Travis Millender
678. Daryl Miller
679. Kathy Miller
680. Michael Miller
681. Pamela D. Millirons
682. Montrell Mitchell
683. Thomas Mizener

| | |
|---|---|
| 684. | Gena Mollica |
| 685. | Olivier Monod |
| 686. | Edward Moore |
| 687. | Elton Moore |
| 688. | Katie Moore |
| 689. | Gary Donald Mooring |
| 690. | Steven Morabito |
| 691. | Joe Morales |
| 692. | Michael Moring |
| 693. | Steven Moroney |
| 694. | Kimberly Morris |
| 695. | Natalia Moryc |
| 696. | Eddie Murrah |
| 697. | Carl Murray |
| 698. | Carl Nance |
| 699. | Michael Neal |
| 700. | Myron Neal |
| 701. | James Neves |
| 702. | Robert New |
| 703. | David Newton |
| 704. | Roger Newton |
| 705. | Bui Nguyen |
| 706. | Donnie Nichols |
| 707. | Roger Nichols |
| 708. | Tammy Nichols |
| 709. | Belinda Nowling |
| 710. | Jeremy Nowling |
| 711. | Tony Nowling |
| 712. | Timothy O'Connor |
| 713. | Terry O'Donnell |
| 714. | Robert Oenbrink |
| 715. | Christine Oenes |
| 716. | Linda D. Ogburn |
| 717. | Kelli R. Oglesby |
| 718. | Clifford Oliver |
| 719. | Robert Ordonez |
| 720. | Stacia Osteen |
| 721. | Richard Ousley |
| 722. | Phillip Owens |
| 723. | Jonathan Pace |
| 724. | Reginald Pace |
| 725. | Tamara Parens |
| 726. | Mathew Paris |

727.    Floyd Parramore
728.    Derek Payne
729.    William Payne
730.    Katherine K. Peacock-Morgan
731.    Christina Pearson
732.    Michael Pearson
733.    Eddie Perdue
734.    Denise Perkins
735.    Roger Pertrella
736.    William Petry
737.    Doug Phillips
738.    James Phillips
739.    Janice Phillips
740.    Phon Phommovang
741.    Robert Pickett
742.    Michael R. Pierce
743.    Joseph Pike
744.    Julie Pike
745.    Rex Pippin
746.    Robert A. Pirrung
747.    Crystal Pitts
748.    Mario Plaza
749.    Kristy Plum
750.    John Plumadore
751.    Barbara Polous
752.    Paula Polous
753.    Derick Poppelreiter
754.    James Porter
755.    Richard Porter
756.    Sandy Powell
757.    Coy Prescott
758.    Clyde Pringle
759.    Jamie Proctor
760.    Steven Proctor
761.    Janet Purvis
762.    Anthony Pusey
763.    Joseph Putnal, Jr.
764.    Joseph Putnal, Sr.
765.    Mason Putnal
766.    Calib Putnal, III
767.    Kirk Pyle
768.    Andrew Quick
769.    Helen Quiggle

770. Ashley Raffield
771. Rodney Raffield
772. Jeremy Raines
773. Wendell Raisbeck
774. Maygan Ramsey
775. Vivian Ransom
776. Charles Ray
777. Carl Reese
778. Kandi Reeves
779. Debra Register
780. Lanny Rester
781. Terri Rester
782. Martha Rice
783. Carrie Richards
784. Rodney Richards
785. Vincent Riggio
786. Torey Rincon
787. Lawrence Ritchie
788. Jay Roach
789. Richard Roach
790. Lark E. Roan
791. Carl Roberts
792. David Roberts
793. Earl Roberts
794. Leonard Roberts
795. Ryan Roberts
796. Tim Roberts
797. O. J. Robinson
798. Nicholas Roeske
799. Curtis Rogers
800. Lisa Roos
801. Scott Rose
802. Dexter Roulhac
803. Chester Rowland
804. Tina Rowland
805. Maxima Royster
806. Kenneth Rucker
807. Clifford Ruden
808. Carlos Russell
809. Michelle Russo
810. Ruby Rutherford
811. Lydia Sallinger
812. Tasha Sammons

813.   Carl Sanders
814.   Nora Sanders
815.   Tracy Sanders
816.   Lisa Santucci
817.   Aubrey Sasnett
818.   Dell Schneider
819.   Roland Schoelles
820.   Karen Schoen
821.   Burton Schuler, DPM
822.   John Scola
823.   Morris Sconiers
824.   Chris Scott
825.   Lyn Scott
826.   James Seeba
827.   William Seeberger
828.   Kevin Seedorf
829.   Wayne Seiler
830.   Rita Sengel
831.   James Shaw
832.   Rhonda Sheffield
833.   Timothy Shick
834.   Melissa Shirah
835.   Jamie Shiver
836.   Jimmy Shiver, Jr.
837.   Stephen Shivers, Sr.
838.   Marsha Shoemaker
839.   Carolyn Sikora
840.   Samantha Simmons
841.   Robert Simpson
842.   Timothy Skiba
843.   Robert Sklar
844.   Donald Slocum
845.   Brenda Smith
846.   James Smith
847.   Jason Smith
848.   Jep Smith
849.   Jesse Smith
850.   Jordan Smith
851.   Keith Smith
852.   Mark Smith
853.   Ronnie Smith
854.   Troy L. Smith
855.   Jeanette Snavely

856.   Lance Souza
857.   Cindy Sowell
858.   Kyle Spell
859.   Helen T. Spoher
860.   Ashley Spradley
861.   Melody Wise Squires
862.   Pierre St.Germain
863.   Monica Stanton
864.   Russell Stegeman
865.   Christopher T. Stehr
866.   Diana Stein
867.   Marion Stephen-Harris
868.   Daniel Stepp
869.   Joseph Stevens
870.   Perry Stevens
871.   Patricia Stoops
872.   Justin C. Strickland
873.   David Strohmeier
874.   Tina Strohmeier
875.   Anne A. Stroud
876.   Patricia A. Subjek
877.   Paul Sudatz
878.   George Suggs
879.   Ann Sutton
880.   Kim Sutton
881.   Robert Sutton
882.   Eusebio Talamantez
883.   Rob Tallent
884.   Bill Tate
885.   Eric Taunton
886.   Mitchell Taylor
887.   Eric Ray Thacker
888.   Connie Then
889.   James Thomas
890.   Janet Thomas
891.   Sherman Thomas
892.   Carol Thompson
893.   Chris Thompson
894.   Edward Thompson
895.   Jesse Thompson
896.   Robert Thompson
897.   Lucious Tibbs, III
898.   Robert Tipps

899.   Arnold Tolliver
900.   Nicholas Tomlinson
901.   Duane Topham
902.   Jimi Topham
903.   Shelton Trail
904.   Mark Tranchina
905.   Robert Tucker
906.   Alana Turner
907.   Johnny Turner
908.   Melanie Turner
909.   Trudy A. Van Horn
910.   Raymond Van Nortwick
911.   Jacqueline Van Zant
912.   George Vanbuskirk
913.   James Varner
914.   Alan Vaughn
915.   Phillip Vinson
916.   Wayne Vinson
917.   Joey Virga
918.   Gerard Virga, Jr.
919.   Gerard Virga, Sr.
920.   Sean Wahl
921.   Clinton Walker
922.   David Walker
923.   Kelly Walker
924.   Linda Walker
925.   Marina Walker
926.   Sherrie Walker
927.   Vincent Walker
928.   Bobby Ray Walters
929.   Elizabeth Ward
930.   George Ward, Jr.
931.   George Ward, Sr.
932.   Dana Ware
933.   Thomas Warner
934.   Larry Warren
935.   Sherrie Warren
936.   Wallace Watkins
937.   Robert Watson
938.   Dwight R. Weathers
939.   Sutton Webb
940.   Wayne "Spider" Webb
941.   Thomas Webber

| | |
|---|---|
| 942. | Anthony Westling |
| 943. | Justin Wheeler |
| 944. | Otis Wheeler |
| 945. | Tanja Wheeler |
| 946. | Trent Wheeler |
| 947. | Jack Whetstine |
| 948. | Craig Whiddon, Jr. |
| 949. | Bradley Whitman |
| 950. | Drew Whitman |
| 951. | Dewey Williams |
| 952. | Douglas Williams |
| 953. | John Williams |
| 954. | Linda Williams |
| 955. | Melissa Williams |
| 956. | Scott Williams |
| 957. | Lynn Wilson |
| 958. | Wendy Windham |
| 959. | James Windsor |
| 960. | Karl E. Wiselogel, Jr. |
| 961. | Marlene Wood |
| 962. | Jacob Woodby |
| 963. | Nancy Woody |
| 964. | Jason Woolard |
| 965. | Bruce Workman |
| 966. | Pamela S. Wortman |
| 967. | Bradley Wright |
| 968. | Jamison Wright |
| 969. | Jeff Wright |
| 970. | Frank Wyant |
| 971. | Mark Yanklewitz |
| 972. | Judith Yates |
| 973. | Robert Yeager |
| 974. | Donald Yerbey |
| 975. | Thelma Yeselevige |
| 976. | Nancy G. Young |
| 977. | Robert Yountz |
| 978. | Amanda Yowell |
| 979. | Theus Yowell |
| 980. | Basera Zaman |
| 981. | Blanca Zaman |
| 982. | Khalid Zaman |
| 983. | Nadir Zaman |
| 984. | Tahir Zaman |

<u>**PLAINTIFFS WHOSE DAMAGES OCCURRED IN ALABAMA**</u>

985.   Dothan Neon, Inc., an Alabama corporation
986.   Atlas Towing LLC, an Alabama limited liability company
987.   Hometown Lenders, L.L.C., an Alabama limited liability company
988.   Anthony Henry dba Clean Cut Lawn Care
989.   Christopher Stehr dba First Choice
990.   Carin Grice
991.   Tim Watson
992.   Bernard Williams

<u>**PLAINTIFFS WHOSE DAMAGES OCCURRED IN LOUISIANA**</u>

993.   Shivers Properties, Inc., a Louisiana corporation
994.   Brookshire Gardens, L.L.C., a Louisiana limited liability company
995.   Gant & Shivers Properties, LLC, a Louisiana limited liability company
996.   Kat's Kracklins & Cruz Catering, LLC, a Louisiana limited liability company
997.   Kings Ranch, LLC, a Louisiana limited liability company
998.   Logistics, Dispatch and Management Services LLC, a Florida limited liability company
999.   Leslie Allen
1000.  Kelly Barrett
1001.  James Billotte
1002.  Eric Bonvillain
1003.  Joan Corfield
1004.  Ronald Helmer
1005.  Lynn McClain
1006.  Rodney Necaise
1007.  Karl Schroeder
1008.  Jill Seiler
1009.  Bailey Shivers
1010.  Keith A. Tisdale

<u>**PLAINTIFFS WHOSE DAMAGES OCCURRED IN MISSISSIPPI**</u>

1011.  Gant & Shivers Homes, LLC, a Mississippi limited liability company
1012.  L & L Coastal Development, LLC, a Mississippi limited liability company
1013.  North Oaks Development, LLC, a Mississippi limited liability company
1014.  Bui Nguyen dba Ocean Springs Development
1015.  Sharon Burdeshaw
1016.  Phillip Clayton
1017.  Sadiq Dhalai
1018.  Pamela Heil
1019.  Jimmy Lowry

1020.   Gregory Middleton
1021.   Rodney Necaise
1022.   Stephen Shivers, Jr.
1023.   Stephen Shivers, Sr.
1024.   Daryl Wallace

### PLAINTIFFS WHOSE DAMAGES OCCURRED IN TEXAS

1025.   Pasadena Hotel Management, LLC, dba LaQuinta Inn & Suites, a Texas limited liability
        company
1026.   Jonathan Richard
1027.   Javier Villareal

### PLAINTIFFS WHOSE DAMAGES OCCURRED IN MARYLAND

1028.   Nabaa Gas Montgomery Village LLC, a Maryland limited liability company

### PLAINTIFFS WHOSE DAMAGES OCCURRED IN MASSACHUSETTS

1029.   Roger Doame

### PLAINTIFFS WHOSE DAMAGES OCCURRED IN GEORGIA

1030.   Diana Carlisle