**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | **SECTION:  J** |
| | * | |
| | * | |
| This Documents Relates to: | * | **JUDGE BARBIER** |
| Case No. 2:13-cv-02033 | * | |
| Case No. 2:16-cv-11519 | * | |
| Case No. 2:16-cv-11641 | * | **MAGISTRATE JUDGE WILKINSON** |
| Case No. 2:16-cv-11707 | * | |
| Case No. 2:16-cv-11711 | * | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
RECONSIDERATION WITH RESPECT TO
THE COURT'S ORDER OF DECEMBER 16, 2016 DISMISSING
THE CLAIMS OF CHAPEL HILL, LLC; COASTAL MINING & MARINE LLC;
PEARLINGTON CLAY LLC, A SUBSIDIARY OF COASTAL MINING & MARINE
LLC; AND PEARLINGTON CLAY PORT LLC, A SUBSIDIARY OF COASTAL
MINING & MARINE LLC**

NOW INTO COURT, through the undersigned counsel, comes Plaintiff CHAPEL HILL,

LLC, (Plaintiff in Cases 2:13-cv-02033 and 2:16-cv-11519), ("Chapel Hill"), Plaintiff COASTAL

MINING & MARINE, LLC, (Plaintiff in Cases 2:13-cv-02033 and 2:16-cv-11641), ("Coastal

Mining"), and its two wholly owned subsidiaries, Plaintiff PEARLINGTON CLAY, LLC

(Plaintiff in Cases 2:13-cv-02033 and 2:16-cv-11707), ("Pearlington Clay"), and Plaintiff

PEARLINGTON CLAY PORT, LLC, (Plaintiff in Cases 2:13-cv-02033 and 2:16-cv-11711),

("Pearlington Clay Port"), (collectively, the "the Chapel Hill Plaintiffs"), and file this Combined

Memorandum in Support of their Motion for Reconsideration, to alter or amend judgment, and/or

for relief from judgment, with respect to the Court's Order of December 16, 2016 dismissing the

Chapel Hill Plaintiffs with prejudice, pursuant to Rule 59(e) and Rule 60(b), Fed. R. Civ. P., and

in support thereof would show unto the court as follows:

## I.    INTRODUCTION

The Chapel Hill Plaintiffs have shown a willingness, from the time they filed suit in 2013, to proceed with their claim in a proper and effective way.  At every turn, the Chapel Hill Plaintiffs have demonstrated a willingness to abide by the spirit of judicial economy, the rules of the Court, and have sought proper guidance from this Court.  This behavior on the part of the Chapel Hill Plaintiffs warrants no sanctions, or, at a maximum, a lesser sanction than involuntary dismissal without adjudication on the merits.

Under the facts of this case, a dismissal with prejudice without adjudication on the merits flies in the face of Fifth Circuit law, (as well as law from other circuits).  Such involuntary dismissal should only be made upon: (1) a showing of a clear record of delay, or contumacious conduct, or prejudice, and (2) when lesser sanctions would not better serve justice.  *See* discussion below, *infra.*  None of these can be supported in regards to the Chapel Hill Plaintiffs.

Additionally, the Fifth Circuit usually looks for an aggravating factor, on top of the first two prongs, before upholding involuntary dismissal with prejudice.  No aggravating factors are present: there was no prejudice to BP, or the court system, and any delay (in filing individual lawsuits, which is the **only** alleged violation of PTO #60), was *de minimis,* (38 days, during which a stay was in place), the delay was not caused by intentional conduct or conscious indifference, and any delay is solely attributable to plaintiffs' counsel, the Williamson law firm (not the Chapel Hill Plaintiffs themselves).

The gist of the argument:  the Chapel Hill Plaintiffs never demonstrated conscious disregard for this Court or its orders – the Chapel Hill Plaintiffs never indicated their unwillingness to proceed – the Chapel Hill Plaintiffs have always indicated a desire to adjudicate their case on the merits – the Chapel Hill Plaintiffs have taken multiple actions that show that they are not, and

were not, consciously indifferent to the Court's Orders – the Chapel Hill Plaintiffs have a valid argument that they are "related parties" under PTO #60 and should be treated as such for the purpose of pursuing their claims – and the Chapel Hill Plaintiffs have done nothing that would justify the dismissal of their case without any opportunity to cure.

The Chapel Hill Plaintiffs opted out, made presentment, filed a stand-alone lawsuit in which they were the only plaintiffs, timely filed sworn statements in compliance with PTO #60, timely filed motions with the Court requesting an individual declaration that they were in compliance with PTO #60, and even filed, as a precaution, individual lawsuits. There is literally nothing in the record to demonstrate that the Chapel Hill Plaintiffs were intentionally, or consciously, disregarding the Court's orders. Therefore, the Chapel Hill Plaintiffs respectfully request the Court reconsider its December 16, 2016 Order & Reasons as to the Chapel Hill Plaintiffs, to reinstate their claims, and allow them to proceed with an adjudication of their claims on the merits.

## II.    PROCEDURAL HISTORY

In October 2012, the Chapel Hill Plaintiffs opted out of the class action. [*See* Case 2:13-cv-02033 ECF 6-9].

In January 2013, the Chapel Hill Plaintiffs made presentment to BP pursuant to the terms of OPA. [*See* Case 2:16-cv-11519 ECF 1; Case 2:16-cv-11641 ECF 1; Case 2:16-cv-11707 ECF 1; Case 2:16-cv-11711 ECF 1]. On April 20, 2013, the Chapel Hill Plaintiffs filed an individual suit requesting relief under the OPA for their damages. [Case 2:13-cv-02033 ECF 1, the "Chapel Hill Suit"]. The stand-alone suit filed in April 2013 did not name any extraneous plaintiffs, and did not rely upon the Short Form Joinder provisions that the Court had established in connection with the BP Class Action. [*See id.*]. Nor was the Chapel Hill Suit part of a mass joinder. The

only plaintiffs named were four (4) parties who were seeking relief under a common nucleus of operative facts, *infra*. Rather, the opt-out, the presentment, and the filing of an individual lawsuit were all specifically premised upon the prosecution of a single lawsuit, turning on a common loss that had occurred as a result of the BP Spill. Any other approach would have been illogical, and at variance with normal federal practice.

The Chapel Hill Plaintiffs are, and were at all relevant times, represented by Jimmy Williamson, P.C. (the "Williamson law firm"). The Williamson law firm, as a matter of course, did not rely upon "mass joinder pleading" to protect the rights of its individual BP litigation clients.[1] To put counsel's decisions into context, the Williamson law firm filed over 140 individual petitions in 2013.[2] Very few of those cases had multiple plaintiffs, and for those that did have multiple plaintiffs, there was a cogent reason why those plaintiffs were named in one lawsuit. Out of almost 200 BP litigation claimants represented by the Williamson law firm, the Williamson law firm filed over 150 individual petitions, paying individual filing fees.

After PTO #60, the Williamson law firm, who still represented several litigation claimants, (many of the Williamson law firm's original BP litigation claimants had resolved their claims by March 29, 2016 and therefore no further action was necessary), filed additional individual lawsuits for particular claimants who were named in multiple party lawsuits; these additional lawsuits were filed because the Williamson law firm thought their status as "related" parties might be questioned. This demonstrates that the Williamson law firm was trying to prosecute the BP litigation cases (including the Chapel Hill Plaintiffs' case), in accordance with the Court's orders.[3]

---

[1] In an abundance of caution, in April 2013, the Chapel Hill Plaintiffs filed short form joinders, in addition to their individual petition. [*See* Docs. 127443 and 128330]. This is only further evidence that the Chapel Hill Plaintiffs were trying to do everything possible to prosecute their case on the merits.

[2] The Williamson law firm asks that the Court take judicial notice of its docket.

[3] The Williamson law firm asks the Court to take judicial notice of its docket. The approach taken on the entire Williamson law firm docket is additional evidence that the Williamson law firm was not trying to

After the original suit was filed, the Chapel Hill Suit was transferred to this Court, pursuant to the provisions surrounding the BP oil spill litigation pre-trial orders, and pursuant to those orders, was placed under a stay. [*See* Case 2:13-cv-02033 ECF 2 and 4].    From April 20, 2013, to this day, the Chapel Hill Plaintiffs have not been allowed to prosecute their case, serve discovery, take depositions, ask for a pretrial order, or trial, or in any way proceed to adjudication on the merits.  The Chapel Hill Plaintiffs accepted these conditions as appropriate, and without complaint, given the mammoth proceedings arising from the BP oil spill and MDL, and took no action in violation of the Court's Orders.  The Chapel Hill Plaintiffs also took part in the neutral's program, but did not resolve their complaints at that stage.  Rather, the Chapel Hill Plaintiffs patiently waited for their opportunity to have their case adjudicated upon the merits.

On March 29, 2016, the Court entered a pretrial order, "PTO #60".  [MDL ECF 16050]. PTO #60 required, among other things, the filing of sworn statements.  [*See id.*].  PTO #60 also required that there be individual lawsuits filed on behalf of any claimants who were "B1" plaintiffs, (private, non-governmental claimants who are not covered by the BP Class Action proceedings), and who were not "related" parties.  [*See id.*].

The Chapel Hill Plaintiffs believe that they timely complied with PTO #60.  The Chapel Hill Plaintiffs timely filed individual sworn statements, (signed by the clients), on April 26, 2016, in accordance with the March 29, 2016 Order.  [Case 2:13-cv-02033 ECF 6-9].  Significantly, PTO #60 stated, in part:

> This does not include complaints that contain **related parties** such as husband and wife **or co-owners of a business**.  Where two or more **related parties** are joined in a single complaint, those plaintiffs would be considered as having filed an individual complaint.

---

ignore, or avoid, the provisions of PTO #60, and was certainly not indifferent, or consciously indifferent to, or intentionally ignoring, the orders of the Court.

[MDL ECF 16050, fn. 3, (emphasis added)]. The Court gave no more instruction or detail on what it considered to be "related parties," or "co-owners of a business."  Since the Williamson law firm believed the Chapel Hill Plaintiffs were related parties (as detailed below), counsel did not think it necessary to file further individual lawsuits.  In fact, the Williamson law firm thought they were not supposed to file individual lawsuits.

On May 9, 2016, before the May 16th deadline, [MDL ECF 16570], based upon the belief that the Chapel Hill Plaintiffs were related parties, and to verify compliance with PTO #60, the Williamson law firm filed an *Exparte/Consent Motion for Permissive Joinder of Parties and Consolidation of Claims* for the Chapel Hill Plaintiffs.  [MDL ECF 17589].  That motion sought the Court's guidance, and ruling, on the propriety of the Chapel Hill Plaintiffs proceeding in one lawsuit.  [MDL ECF 17589].  After not receiving a ruling from the Court on the pending motion for permissive joinder, the Chapel Hill Plaintiffs filed another motion on June 3, 2016, for consideration of the previously filed motion. [MDL ECF 18675].

That same day, June 3, 2016, without any ruling on the pending Chapel Hill Plaintiffs' motions, the Court ordered BP to submit *in camera* a list of plaintiffs that BP believed made **materially deficient** submissions in response to PTO #60.[4]  [MDL ECF 18659].  No definition of "materially deficient" was provided; the Williamson law firm, counsel for the Chapel Hill Plaintiffs, did not feel that any deficiency that they could be accused of was material.

On June 7, 2016, without resolution of the Chapel Hill Plaintiffs' motions and requests for guidance from the Court, an Order to Show Cause re: Compliance with PTO #60 was entered.

---

[4] BP, of course, is not an independent observer, nor without a direct pecuniary interest; they have a direct financial interest in avoiding adjudication on the merits, especially on claims with significant financial damages.

[MDL ECF 18724].  The Chapel Hill Plaintiffs were included on Exhibit 2 as having "materially deficient" PTO #60 Submissions.  [*See* MDL ECF 18724-3, pp. 5].

While the Chapel Hill Plaintiffs always thought that they were in compliance with PTO #60, they concurrently thought that, should the Court disagree with their conclusion, they would be advised of a ruling, and given an appropriately reasonable amount of time to cure.   Given the multiple actions taken by the Chapel Hill Plaintiffs to prosecute their case, (opting out, making presentment, filing an individual lawsuit, filing PTO #60 required sworn statements, filing the motion for permissive joinder, and filing the motion requesting a ruling), counsel for the Chapel Hill Plaintiffs did not believe that they could ever be legitimately accused of being intentionally, or consciously, indifferent to the Court's desires with regards to PTO #60.

The Chapel Hill Plaintiffs, however, in what they saw as a precautionary action, decided to take additional efforts to ensure that the Court knew that they were trying to appropriately prosecute their case.  On June 23 and 24, 2016, the Chapel Hill Plaintiffs filed four (4) individual lawsuits, (one for each plaintiff).[5]  [Case 2:16-cv-11519 ECF 1; Case 2:16-cv-11641 ECF 1; Case 2:16-cv-11707 ECF 1; Case 2:16-cv-11711 ECF 1].  On June 27, 2016, the Chapel Hill Plaintiffs also filed their Response to Show Cause re: Compliance with PTO #60, reciting that they believed they were in compliance with PTO #60.  [MDL ECF 20295].

---

[5] Counsel for the Chapel Hill Plaintiffs did not believe at that time this was required in their particular circumstances, given that they believed they were related parties.  As of this date, the Court had not ruled that the Chapel Hill Plaintiffs were not related parties, nor had the Court provided any further clarification of what the terms "related parties" or "co-owners of a business," meant.  However, the filing of the individual lawsuits, on June 23-24, 2016, for the Chapel Hill Plaintiffs constitutes additional evidence, on top of that already cited, that the Chapel Hill Plaintiffs were not being intentionally indifferent, or consciously indifferent, to the Court's orders.  As pointed out in detail below, the delay of approximately 38 days in filing the individual lawsuits had no impact whatsoever upon the court system, the administration of justice, the administration of the Court's docket, and has not caused prejudice to BP.

On July 13, 2016, BP filed an Updated PTO #60 compliance list.  [MDL ECF 20992].
Again, BP claimed that the Chapel Hill Plaintiffs were "materially deficient" in their PTO #60
submission.  [*See* MDL ECF 20992-3, p. 6].  The Court entered a new Order re: Compliance with
PTO #60 on July 14, 2016 requiring BP to file objections to plaintiffs' responses to the Show
Cause Order.  [MDL ECF 20996].  On July 21, 2016, in response to the Court's order, BP filed its
objections and responses to plaintiffs' PTO 60 show cause submissions.  [MDL ECF 21131].

BP's objection to the Chapel Hill Plaintiffs' filings claimed the Chapel Hill Plaintiffs were
"significantly late" on their PTO #60 submission.[6]  [MDL ECF 21131-8].  The Chapel Hill
Plaintiffs' delay was barely a month, and prior to that time, they had fully complied with the other
requirements of PTO #60 and moved the Court for clarification on the joinder/related party issue.
Even during the "delay," the Chapel Hill Plaintiffs continued to seek the Court's guidance, by way
of its June 3rd motion for consideration of the outstanding May 9th motion.  That *de minimis* delay
cannot be classified, under any lexicography, as a period of significant inactivity.  The Chapel Hill
Plaintiffs' filed their response to BP's objection on July 28, 2016, again asserting that they were
in compliance with PTO #60.  [MDL ECF 21338].

The Court, on July 22, 2016, entered an Order Regarding New Lawsuits Filed Pursuant to
PTO #60, for each of the Chapel Hill Plaintiffs' individual cases.  [*See* Case 2:16-cv-11519 ECF
4; Case 2:16-cv-11641 ECF 4; Case 2:16-cv-11707 ECF 4; Case 2:16-cv-11711 ECF 4].  The
Court had still not accepted, or rejected, or ruled upon, the Chapel Hill Plaintiffs' motions claiming
to be related parties, and, therefore, in compliance with PTO #60.

---

[6] A delay of 38 days, when the case was under a stay order, (May 16 to June 23-24), and literally nothing happened in the case, which continues to this day, could not possibly be "significant" under the facts of this particular case or docket.

Nearly five months later, on December 16, 2016, with the stay still in place, with no further action by BP or the Court, the Court entered its Orders & Reasons regarding PTO #60 and remaining claims in pleading bundle B1. [MDL ECF 22003]. Without any opportunity to cure, or lesser sanctions imposed, the Court dismissed the claims of the Chapel Hill Plaintiffs with prejudice. [*Id.*] It is this Order that the Chapel Hill Plaintiffs ask the Court to reconsider, alter, amend, or otherwise provide relief from today.

### III.    MATERIAL UNDERLYING FACTS

The underlying facts support the Chapel Hill Plaintiffs' argument that they firmly believed, and continue to believe, that they are related parties, and/or co-owners of a business, and should be allowed to prosecute their claims in one single cause, as opposed to four individual causes. Of course, if the Court were to conclude that they are related parties, then the Chapel Hill Plaintiffs are now, and have always been, in compliance with the Court's Order of March 29, 2016.

Chapel Hill is a Louisiana and Mississippi construction and contracting company that was awarded a $64,950,000.00 contract from the U.S. Army Corps of Engineers ("USACE") in December 2009. Chapel Hill was to supply earthen materials, (clay), for the repair of the Mississippi River levee in Orleans Parish. The scope of the contract required movement of more than 6 million tons of earthen clay material from the Hancock Port in Mississippi to the New Orleans East Levee Areas. The contracted performance method was to be by barge, which was the only realistic way to transport that many tons of clay, from Hancock County, Mississippi to New Orleans, East – 26 nautical miles. [*See* Case 2:16-cv-11519 ECF 1; Case 2:16-cv-11641 ECF 1; Case 2:16-cv-11707 ECF 1; Case 2:16-cv-11711 ECF 1]. The barges would utilize the Intracoastal Waterway.

Chapel Hill, (owned by Johnny Dollar), had three related entities with common ownership

to assist with its business enterprise. Coastal Mining, (owned 25% by Johnny Dollar), is the parent company of two Mississippi: (1) Pearlington Clay, LLC, a subsidiary of Coastal Mining & Marine, LLC, was contracted to provide all of the clay material to Chapel Hill at $1 per ton; and (2) Pearlington Clay Port, LLC, another subsidiary of Coastal Mining & Marine, LLC, was contracted to "through put" all of the clay material through its port loading facilties at the Hancock Port at $1 per ton. [*See* Case 2:16-cv-11519 ECF 1; Case 2:16-cv-11641 ECF 1; Case 2:16-cv-11707 ECF 1; Case 2:16-cv-11711 ECF 1]. All the Chapel Hill Plaintiffs were delivering the same clay, to the same purchaser, on the same waterways, pursuant to a single contract. The owners were all co-owners, and beneficiaries, of the business enterprise.

Barging of the clay commenced on or about the first of March, 2010. [*See* Case 2:16-cv-11519 ECF 1; Case 2:16-cv-11641 ECF 1; Case 2:16-cv-11707 ECF 1; Case 2:16-cv-11711 ECF 1]. On or about July 6, 2010, the Chapel Hill Plaintiffs learned that oil from the BP Spill had reached the Rigolets railroad bridge where the Pearl River intersects the Gulf of Mexico and the Intercoastal Canal. This was the only marine movement route available for performance of the Army Corps of Engineers contract. Discovery of oil on its only marine route, and, therefore, facing the potential contamination of barges coming up the Pearl River, the Chapel Hill Plaintiffs transitioned to trucks. This was a 50 mile one-way haul at 20 tons per truck as opposed to 5,000 tons per a marine/barge 26 mile one-way push. Volume went from 20,000 tons per day to 2,500 tons per day and the transition prevented Chapel Hill's (and its co-owners) timely delivery of the clay under its contract with the USACE. Chapel Hill also incurred increased transporation costs by trucking the clay to New Orleans as opposed to barging. [*See* Case 2:16-cv-11519 ECF 1; Case 2:16-cv-11641 ECF 1; Case 2:16-cv-11707 ECF 1; Case 2:16-cv-11711 ECF 1].

Because of the inability to deliver in volume, the USACE issued a "partial termination" of

its contract with Chapel Hill, reducing it from 6.1 million tons to 1.85 million tons.  This was because Chapel Hill could not meet the delivery milestones required by the contract due to the changed mode of transportation caused directly by the BP Spill.  The USACE's reduction in clay reduced Chapel Hill's contract by more than $46,573,508, which included the loss to Chapel Hill (and its co-owners) of several million dollars of profits.  [*See* Case 2:16-cv-11519 ECF 1; Case 2:16-cv-11641 ECF 1; Case 2:16-cv-11707 ECF 1; Case 2:16-cv-11711 ECF 1].

As a result of the "partial termination" of Chapel Hill's contract with the USACE, Pearlington Clay, a subsidiary of Coastal Mining & Marine, LLC, who was contracted to provide all 6.1 million tons of clay, lost the sale of 4.3 million tons of clay at $1 per ton.  As a result of the "partial termination" of Chapel Hill's contract with the USACE, Pearlington Clay Port, a subsidiary of Coastal Mining & Marine, LLC, who was contracted to "through put" all clay at its terminal under the contract through its port loading facilities at $1 per ton, lost 5.6 million tons at $1 per ton.  [*See* Case 2:16-cv-11519 ECF 1; Case 2:16-cv-11641 ECF 1; Case 2:16-cv-11707 ECF 1; Case 2:16-cv-11711 ECF 1].  Chapel Hill itself, of course, lost the profits which would otherwise have been earned through the term of the contract.

Chapel Hill's lost earnings and profits were directly caused by the BP Oil Spill and Deepwater Horizon Incident. This single contract had a face value of $64,950,000.00.  The Chapel Hill Plaintiffs losses resulted from the loss of the specific contact, a single business venture.  [*See* Case 2:16-cv-11519 ECF 1; Case 2:16-cv-11641 ECF 1; Case 2:16-cv-11707 ECF 1; Case 2:16-cv-11711 ECF 1; *see also* Affidavits of Johnny Dollar and James Parrish attached to the Motion for Reconsideration].

# IV.    ARGUMENT & AUTHORITIES

A district court has wide discretion to order a new trial whenever prejudicial error has occurred. 9B Charles Alan Wright et al, *Federal Practice and Procedure* § 2531 (3d ed). The Chapel Hill Plaintiffs feel that the above recitation of facts, as well as, the legal factors outlined below, show clearly how, in this particular case, reconsideration should be granted. Rule 59(e), Fed. R. Civ. P., allows reconsideration when there is a need to correct a clear error of law or to prevent manifest injustice. *See Edward H. Bohlin Co., Inc. v. Banning Co., Inc.,* 6 F.3d 350, 355 (5th Cir. 1993). Rule 60, Fed. R. Civ. P., balances the principle of finality of a court order "with the interest of the court in seeing that justice is done in light of all the facts." *Hesling v. CSX Transp., Inc.,* 396 F.3d 632, 638 (5th Cir. 2005).

"[D]ismissal with prejudice will be affirmed only if: (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) lesser sanctions would not serve the best interests of justice. **Because this test is conjunctive, both elements must be present**." *Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014)(citing *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 417 (5th Cir.2006)(emphasis added).

> Possible lesser sanctions include stay, dismissal, and reinstatement; award of attorney's fees; assessment of fines, costs, or damages; fining the party or disciplining the attorney; warning; or conditional reinstatement. *Thanksgiving Tower Partners*, 1993 WL 35716, at *8. A court may issue the "lenient sanction" of providing the plaintiff with additional chances after a procedural default, which may then justify dismissal with prejudice if the court's leniency is met with further default.

*Darville v. Turner Indus. Grp., LLC*, 305 F.R.D. 91, 96 (M.D. La. 2015).

## A.    The Court should employ lesser sanctions before dismissing the action.

Given that the Chapel Hill Plaintiffs clearly believed that they were in compliance with PTO #60, and that they sought a ruling from the Court that they were in compliance, the Court

could have ruled on the question of whether the Chapel Hill Plaintiffs were "related parties." Assuming the Court denied that motion, the Court easily could grant, without any prejudice, a brief extension of time to the Chapel Hill Plaintiffs to file individual lawsuits.  This approach would protect BP and the court system, not cause any delay or miscarriage of justice, and be in accordance with Fifth Circuit law, and the law of other circuits, that favors adjudication on the merits as opposed to involuntary dismissal.

"Our case law is very clear that we should not dismiss a cause of action as a sanction unless all other lesser sanctions have been considered and found ineffective."  *Compaq Computer Corp. v. Ergonome Inc*., 387 F.3d 403, 415 (5th Cir. 2004)(J. Pickering, concurring); *see also Millan v. USAA General Indem. Co.,* 546 F.3d 321, 326 (5th Cir. 2008)(dismissal with prejudice only appropriate if the failure to comply with the court order was the result of purposeful delay or contumaciousness and the record reflects that the district court employed lesser sanctions before dismissing the action); *Long v. Simmons,* 77 F.3d 878, 880 (5th Cir. 1996)(citing *Burden v. Yates,* 644 F.2d 503 (5th Cir. 1981)); *Gray v. Fid. Acceptance Corp*., 634 F.2d 226, 227 (5th Cir.1981); *Glasper v. Morgan,* 547 F.Supp.2d 561, 566 (E.D. LA 2008).   "[T]he flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed, and that sanctions must be narrowly tailored to serve only their necessary function."  *Blessey Marine Servs., Inc. v. Jeffboat, LLC,* No. CIV.A. 10-1863, 2011 WL 3349844, at *6 (E.D. La. Aug. 3, 2011)(internal citations omitted).

## B.    There is no record of any significant delay or contumacious conduct.

Contumacious conduct is a "stubborn resistance to authority." *Darville v. Turner Indus. Grp., LLC*, 305 F.R.D. 91, 94 (M.D. La. 2015)(citing *McNeal v. Papasan,* 842 F.2d 787, 792 (5th Cir. 1988)).  Such behavior can be established by a record of a plaintiff failing to comply with

multiple orders and rules of the court.  *Darville*, 305 F.R.D. at 94 (citing *Callip v. Harris County Child Welfare Dept.*, 757 F.2d 1513, 1520-21 & n. 10 (5th Cir. 1985)).  Such behavior goes beyond a failure to comply with a scheduling or pre-trial order.  *Id.*

The sort of delay contemplated in cases where there is involuntary dismissal with prejudice, is longer than even a few months, and characterized by significant periods of total inactivity.  *See Millan v. USAA Gen. Indem. Co.,* 546 F.3d 321, 326–27 (5th Cir. 2008)(citing *McNeal v. Papasan*, 842 F.2d 787, 791 (5th Cir.1988)).  Noncompliance with a single pretrial order which results in functionally no delay, as the entirety of the action is stayed, is not extreme enough to warrant the sanction of dismissal of the action.  *See Darville v. Turner Indus. Grp., LLC,* 305 F.R.D. 91, 95 (M.D. La. 2015).

## C.    Additional Fifth Circuit authority.

In addition to the two requirements discussed above, the Fifth Circuit "usually" looks for an aggravating factor.  *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 418 (5th Cir. 2006). Aggravating factors that favor dismissal include, delay directly attributable to the plaintiff, instead of the plaintiff's attorney; "actual prejudice to the defendant;" or "delay caused by intentional conduct."  *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008); *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir.1986); s*ee also Ford v. Sharp*, 758 F.2d 1018 (5th Cir. 1985); *Darville v. Turner Indus. Grp., LLC,* 305 F.R.D. 91, 94 (M.D. La. 2015).

None of these aggravating factors are present.  Any "delay" in filing individual lawsuits is attributable directly to the Chapel Hill Plaintiffs' attorneys, not the parties.  The record contains no indication that the Chapel Hill Plaintiffs failed to comply with this Court's order out of contumaciousness.  As set out *infra*, there was no prejudice to BP.  Therefore, the law and the

record support a reconsideration of the Order & Reasons as applied to the Chapel Hill Plaintiffs. *See Long v. Simmons,* 77 F.3d 878, 880 (5th Cir. 1996).

**D.     There was no prejudice to BP nor to the Court.**

Even assuming the Chapel Hill Plaintiffs were in violation of PTO #60, it cannot possibly be argued that there was any prejudice to BP or to the Court.[7]   Pursuant to the Court's order regarding new lawsuits filed pursuant to PTO #60 on April 15, 2016, all new lawsuits, (and previous suits), were, and are, STAYED until further order of the Court.   [MDL ECF 16225].   The newly filed lawsuits added no new parties or new claims, and BP cannot possibly argue any lack of proper notice or other issue causing prejudice, based on the filing of the new Chapel Hill Plaintiffs' lawsuits, 38 days after the deadline of May 16, 2016.

No case specific discovery has been done, or allowed.   No depositions have been taken, nor discovery exchanged, nor pretrial proceedings held.   None of the litigation cases have been remanded to the courts in which they were originally filed.   The stay order continues to this day, January 2017.   BP has not possibly been prejudiced by the "delay" of filing individual lawsuits on June 23-24, 2016, instead of May 16, 2016, (about 38 days).

Here, the Chapel Hill Plaintiffs timely filed PTO #60 sworn statements, did not file a "mass joinder" lawsuit, and did not rely solely upon short form joinders.   In other words, the Chapel Hill Plaintiffs complied with all aspects of PTO #60, with the only arguable exception being the "delay" in filing four "individual" lawsuits on June 23-24, 2016, instead of May 16, 2016.   This extremely short "delay", (during which no orders were issued by the Court, no actions were taken with regard

---

[7] As argued throughout, the Chapel Hill Plaintiffs believed they were in compliance with PTO #60. Certainly, the evidence is overwhelming that the Chapel Hill Plaintiffs did not intend to violate PTO #60, nor be consciously indifferent to it.

to the docket, and no actions were taken with regard to the merits of individual specific cases), was not, and cannot realistically be considered to be, "significant".

Even now, several months later, in January 2017, the remaining BP litigation cases have not been remanded, or released, for case specific discovery. Therefore, there is no evidence, nor could there be any evidence, that any prejudice or harm occurred to BP as a result of this sequence of events. Nor can it be said that there has been any harm to the overall disposition of the Court's docket, or the administration of justice. This factor weighs heavily in favor of allowing the Chapel Hill Plaintiffs to have their case adjudicated on the merits, as opposed to involuntary dismissal.

**E.     Under ordinary federal practice, the Chapel Hill Plaintiffs are related parties that would naturally be joined in a single suit for judicial economy.**

In normal federal jurisprudence, if the Chapel Hill Plaintiffs had filed four separate lawsuits, the cases would have been consolidated in the interest of judicial efficiency, to avoid the possibility of inconsistent judicial results, and to prevent duplicative and repetitive discovery. Rule 20(a)(1), Fed. R. Civ. P., provides that: persons may join in one action as plaintiffs if: (1) they assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all plaintiffs will arise in the action. Fed. R. Civ. P. 20. The Fifth Circuit has described Rule 20 as creating a two-prong test, allowing joinder of plaintiffs when (1) their claims arise out of the "same transaction, occurrence, or series of transactions or occurrences" and when (2) there is at least one common question of law or fact linking all claims. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)(citing *Applewhite v. Reichhold Chems., Inc.,* 67 F.3d 571, 574 n. 11 (5th Cir. 1995)). Both prongs of the test have been met here, and, therefore, "permissive joinder of plaintiffs ... is at the option of the plaintiffs." *Id.*; *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is towards entertaining the broadest possible scope of action

consistent with fairness to the parties; **joinder of claims, parties and remedies is strongly encouraged**."(emphasis added)).

In ordinary federal jurisprudential practice, had four separate lawsuits been filed, the Chapel Hill Plaintiffs may very well have been accused of "forum shopping" in order to try to "cherry pick" a specific Federal court for their claims.  In normal federal jurisprudence, counsel for the Chapel Hill Plaintiffs could have been criticized for creating unnecessary judicial inefficiency, (i.e., the court would have to go to the trouble of consolidating the claims).

Please also note that the four individual complaints (filed on June 23-24, 2016) contain identical liability allegations, identical operative facts, identical causation allegation, and identical allegations regarding whether or not the BP oil spill caused damage to the Chapel Hill Plaintiffs. They turn upon a common business enterprise, namely, performance of the USACE contract.  All four (4) Chapel Hill Plaintiffs will be using the same witnesses, the same documents, the same exhibits, and will be briefing the same issues of law.

The purpose of this section is not to be contentious with the Court.  The Chapel Hill Plaintiffs understand that the Court has now ruled that, in the judgment of the Court, they are not related parties under PTO #60.  Obviously, the Chapel Hill Plaintiffs respectfully disagree with that conclusion.  The purpose of this section, however, is to demonstrate that given the underlying facts and the procedural history of this case, the Chapel Hill Plaintiffs were not being disrespectful, or disregarding, PTO #60.  Rather, the Chapel Hill Plaintiffs were under a good faith belief that they were in compliance, and were taking actions to obtain judicial approval of their course of conduct.  That is exceptionally strong evidence that the Chapel Hill Plaintiffs were not engaging in intentional, or conscious, neglect.  Under Fifth Circuit law, (as well as other circuits), if the

mistake in interpreting the pre-trial order is innocent or inadvertent, a lesser sanction should be imposed, rather than involuntary dismissal on the merits.

**F.      Law from other circuits also supports the imposition of lesser sanctions before dismissal with prejudice.**

Other circuits are in general agreement with the Fifth Circuit, namely, dismissal with prejudice is an extreme sanction and should be used only in cases of willful disobedience of a court order.  *Compare Gonzalez v. Firestone Tire & Rubber Co*., 610 F.2d 241, 247 (5th Cir.1980); *Hutchins v. A.G. Edwards & Sons, Inc.,* 116 F.3d 1256, 1260 (8th Cir. 1997).  Case law is abundant:

a.      Sanctions should fit the occasion and should not be harsher than necessary in order to effectuate the remedy the Court needs.  *See McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir. 1996)("The district judge should first consider less drastic alternatives…"); *Lucas v. Miles,* 84 F.3d 532, 535 (2nd Cir. 1996);

b.      Dismissal for failure to prosecute is a harsh sanction and should only be used in extreme situations such as when there is a clear record of delay or contempt or when less drastic sanctions are unavailable.  *See Hutchins v. A.G. Edwards & Sons, Inc.,* 116 F.3d 1256, 1260 (8th Cir. 1997);

c.      A presumption shall be made that cases should be adjudicated upon the merits, as opposed to being dismissed without an adjudication of the merits.  *See Emerson v. Thiel Coll.,* 296 F.3d 184, 190 (3rd Cir. 2002)("[D]ismissal with prejudice is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits.").  Only parties who have shown to be consciously indifferent to the prosecution of the case should be subject to the most severe sanctions.  *See Mann v. Lewis,* 108 F.3d 145, 147 (8th Cir. 1997)("[N]ot every instance of failure to comply with an order of court, however inexcusable, justifies total extinction of a client's cause of action." (internal citations omitted));

      d.      Was there any prejudice to the defendant?  *See Lucas v. Miles,* 84 F.3d 532, 535 (2nd Cir. 1996); *Robson v. Hallenbeck,* 81 F.3d 1, 2 (1st Cir. 1996)("[D]ismissal might appear harsh where no prior warning was given and there was no showing of special prejudice to the opponents or the court.").  Here, given the stay, BP is exactly in the same position it was in on March 29, 2016;

      e.      Was the alleged wrongful conduct willful disobedience? *See Hutchins v. A.G. Edwards & Sons, Inc.,* 116 F.3d 1256, 1260 (8th Cir. 1997).  Here, the Chapel Hill Plaintiffs, or their counsel, were not willfully ignoring the Court's Order, or even trying to avoid it;

      f.      The court's need to manage its docket needs to be balanced with the parties' right to due process and a fair chance to be heard.  *See Lucas v. Miles,* 84 F.3d 532, 535 (2nd Cir. 1996)("[A] balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard.").  The retention of this case will not interfere with judicial process, (given that the cases are still under a stay Order, discovery can still not proceed, and a remand to the original court has not occurred), so it cannot possibly be said that retention of the Chapel Hill Plaintiffs on the docket will interfere with the orderly disposition of the BP litigation cases;

      g.      The duration of how long plaintiffs failed to comply with the Court's orders; here, the delay was short.  *See Lucas v. Miles,* 84 F.3d 532, 535 (2nd Cir. 1996)(Lucas' non-compliance was no more than 39 days and not significant);

      h.      Whether the record reflects contempt to the Court by the Chapel Hill Plaintiffs; here, no contempt is reflected at all.  *See Robson v. Hallenbeck,* 81 F.3d 1, 2 (1st Cir. 1996)("[C]ounsel's disregard of a prior warning from the court exacerbates the offense.");

i.      The merits of the claim should be considered, *see McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir. 1996); as shown herein, the Chapel Hill Plaintiffs believe that they have a meritorious, financially significant claim that deserves to be adjudicated on the merits, as opposed to being procedurally summarily dismissed;

j.      The parties should be given the chance to amend their complaint or respond to the Court's orders, as opposed to having their case dismissed *sua sponte. Catz v. Chalker,* 142 F.3d 279, 285 (6th Cir. 1998), *amended,* 243 F.3d 234 (6th Cir. 2001);

k.      Dismissal with prejudice is appropriate only in limited circumstances and doubt should be resolved in favor of reaching a decision on the merits. *See Emerson v. Thiel Coll.,* 296 F.3d 184, 190 (3rd Cir. 2002);

l.      The Court should determine whether the Chapel Hill Plaintiffs have personal responsibility for the conduct (here, any mistake was a mistake of counsel). *See* Affidavit of Jimmy Williamson attached to the Motion for Reconsideration; *see also Betty K Agencies, Ltd. v. M/V Monada,* 432 F.3d 1333, 1337-1338 (11th Cir. 2005); and

m.      Any history by the parties of delay. *See In re Bluestein & Co.,* 68 F.3d 1022, 1025 (7th Cir. 1995). Here, there is certainly no history of delay evidenced by the Chapel Hill Plaintiffs.

**G.   Examples from this Court.**

The Court's Order & Reasons, [MDL ECF 22003], references an order the Court had previously entered on May 4, 2016, on Case 13-2300, regarding an unrelated set of plaintiffs, on a different fact pattern, represented by different counsel. That Order denied the plaintiffs motion to remain joined in one civil action number, and then **granted those parties an extension to comply** with the requirements of PTO #60. [MDL ECF 16755].

Two important considerations should be noted about Hammock Bay: (1) the first, and most important, consideration is that the Court gave Hammock Bay, after it denied its motion, an opportunity to cure; and, (2) the facts surrounding Hammock Bay are not analogous to the facts surrounding Chapel Hill.  Most significantly, the Court granted those parties an extension of time to comply with PTO #60.  [MDL ECF 16755].

The Chapel Hill Plaintiffs also consider themselves analogous to Bayou Caddy, a party to a suit with three originally named plaintiffs.  [*See* MDL ECF 22003, pp. 7-8].  Two of the plaintiffs went back into the class action after the filing of the lawsuit.  Bayou Caddy did not timely file a motion to amend its complaint.  [*Id.*]  The Court, however, (correctly), held that Bayou Caddy was the only remaining plaintiff, and therefore, was in compliance; the Court granted Bayou Caddy an opportunity to amend.  [*Id.*]

Also, in the case of Shelly Ladner, [MDL ECF 22003, p. 12], the Court granted plaintiff's motion for leave to file an amended complaint, which accords with relief that the Chapel Hill Plaintiffs consider appropriate.

## H.      Monetary sanctions.

The Chapel Hill Plaintiffs, and their counsel, do not believe that sanctions are appropriate. Justice, and the rules, would be best served by allowing the Chapel Hill Plaintiffs a chance to cure. Particularly considering that the Chapel Hill Plaintiffs have already cured, a lesser sanction would be completely effective in securing the interest of justice.  However, the Chapel Hill Plaintiffs, (and, specifically, their counsel, the Williamson law firm), out of respect to the Court, hereby offers to pay any monetary sanctions that the Court may impose in connection with this matter. *Please see* Affidavit of Jimmy Williamson attached to the Motion for Reconsideration.

The absolute, positively, most that could be said regarding the Chapel Hill Plaintiffs' failure to comply is a delay between May 16, 2016 and June 23-24 2016.  In order to ensure, however, that the Court does not conclude that the Chapel Hill Plaintiffs are trying to avoid their responsibilities to the Court, the Williamson law firm, counsel for the Chapel Hill Plaintiffs, agrees to pay any, and all, monetary sanctions, that the Court thinks appropriate and any monetary sanction imposed will be paid by the Williamson law firm personally.

### III.   CONCLUSION & PRAYER

WHEREFORE, Plaintiff CHAPEL HILL, LLC, Plaintiff COASTAL MINING & MARINE, LLC, and its two wholly owned subsidiaries, Plaintiff PEARLINGTON CLAY, LLC, and Plaintiff PEARLINGTON CLAY PORT, LLC respectfully move this Honorable Court to reverse, revise, or otherwise alter or amend, its order of December 16, 2016 and reinstate the Chapel Hill Plaintiffs' cases for adjudication upon the merits.

Respectfully submitted on this 12th day of January, 2017.

**LEWIS, KULLMAN, STERBCOW & ABRAMSON**

*/s/ Paul M. Sterbcow*
Paul M. Sterbcow, T.A. (#17817)
Lewis, Kulliman, Sterbcow & Abramson
601 Poydras Street, Suite 2615
New Orleans, LA 70130
(504) 588-1500
(504) 588-1514          Facsimile
sterbcow@lksalaw.com

**WILLIAMSON & RUSNAK**

*/s/ Jimmy Williamson*
Jimmy Williamson
Federal ID No. 51896
Texas State Bar No. 21624100
Email: jimmy@jimmywilliamson.com
Cyndi M. Rusnak
Federal ID No. 24724

Texas State Bar No. 24007964
Email: cyndi@jimmywilliamson.com
William Dills
Texas State Bar No. 24067421
Email: billy@jimmywilliamson.com
4310 Yoakum Boulevard
Houston, Texas 77006
(713) 223-3330 – Telephone
(713) 223-0001 – Facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Memorandum has been served on all counsel by electronically uploading same to Lexis Nexis File & Serve in accordance with Pretrial Order Number 12, and the foregoing was electronically filed with the Clerk of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of January, 2017.

DATE: January 12, 2017                     /s/ Jimmy Williamson
                                            JIMMY WILLIAMSON