IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | * | MDL 2179 |
|     "Deepwater Horizon" in the Gulf | * | |
|     of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| | * | JUDGE BARBIER |
| | * | |
| This Document Relates To: | * | MAGISTRATE JUDGE |
| | * | WILKINSON |
| Case No. 2:13-cv-5367 | * | |
| Case No. 2:16-cv-06333 | * | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT MOTION TO FILE UNDER SEAL PLAINTIFFS' MOTION FOR RECONSIDERATION WITH RESPECT TO THE COURT'S ORDER OF DECEMBER 16, 2016, DISMISSING THE CLAIMS OF HENRY L. PERRY, ST. JOE BEACH PROPERTY, LLC, BUNGALOWS AT SANCTUARY BEACH, LLC**

## I. INTRODUCTION

This individual Plaintiffs' compliance with PTO 60 cannot be viewed in a vacuum. The reality is that HENRY L. PERRY, ST. JOE BEACH PROPERTY, LLC, BUNGALOWS AT SANCTUARY BEACH, LLC lawsuit was filed TIMELY, several years ago, as part of a master complaint filed elsewhere which was transferred to this Court ONLY for purposes of uniform pretrial preparations. The case was properly consolidated with others and should have remained properly consolidated with others until it was resolved or REMANDED back to the chosen forum of the PLAINTIFFS, which was Florida, for trial.  Nonetheless, Plaintiffs COMPLIED with PTO 60 by filing a BRAND NEW COMPLAINT in a timely manner with this court.  Plaintiffs only kept their personal claims together. Henry L. Perry, St. Joe Beach Property, LLC, Bungalows at Sanctuary Beach, LLC share ownership and additional common facts and therefore would in all likelihood be tried together regardless.  The additional demand that each of these two common entity and loss basis claims should be further punished with the additional costs and requirements of further

1

segregation makes no sense. Moreover, an ultimate decision of this Court to administer the DEATH PENALTY of sanctions in dismissal, without so much as a hearing or any requests for additional layers of compliance, is unduly harsh and penal in nature.

This Court allowed these claims and many thousands of other claims excluded from the DHECC class settlement, or otherwise opted out of the DHECC class settlement, to sit in this Court for over SIX YEARS from the date of the incident and several years after they were transferred to this Court, with zero discovery, zero hearings and zero consideration. Plaintiffs understood the enormity of the litigation but disagreed that there was no reason to leave all of these claims with no disposition process for years while the Court dealt with other priorities. Plaintiffs' counsel filed numerous motions to address these cases and many others in the interim, including motions to remand, motions to set for status conference, motions to remit to formal mediation, and motions to set individual discovery. Not one hearing was granted on any of these motions, many filed several years ago.  Then suddenly, after years of inactivity on these claims, this Court issued PTO 60, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and try to come to terms with tens of thousands of unresolved claims or file additional formal pleadings and additional documentation with the Court.

Plaintiffs counsel's firm alone was handling close to ten thousand claims subject to these new orders last year.  In fact, approximately 90% of those claims ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which resulted in several last minute extensions by the Court, and granted only specifically to those who filed motions requesting same. BCA alone filed several hundred NEW complaints on unresolved cases ▮▮▮▮▮▮ ▮▮▮▮▮ in spite of the fact that they were all before the court in other pleadings already,

2

nearly ALL of them from transfers from other Courts and made over Plaintiffs objections. BCA only paired any claims left pursuant to PTO 60 when they had common individual fact patterns, including common ownership and common interests such that they would be tried concurrently regardless. The vast majority of the additional claims filed did not have any such facts and were all filed one at a time, in spite of the near impossibility to deal with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ many thousands of potential new filings and forms with this court all to be completed within a matter of weeks after over half a decade of complete inactivity.

Brent Coon & Associates ("BCA") has been responsible for a case load over 10,000 *Deepwater Horizon* cases that were transferred to this Court. Most of these claims were not part of the Deepwater Horizon Economic and Property Damages Class Settlement and therefore barred from participating in the settlement administered by the Deepwater Horizon Economic and Property Damages Claim Center ("DHECC"). Numerous claims were excluded by design from the DHECC; still others chose to opt out of the DHECC process. These cases sat on the sidelines with no real method for resolution until March of 2016.

Prior to being put on the sidelines, Plaintiffs' substantially complied with the many administrative requirements, including PTO 60. Plaintiff timely filed an OPA presentment with responsible parties. See Exhibit A. Plaintiff filed their lawsuit timely. See Exhibit B at Pages 54 & 55. The original cases that were filed in Florida in Federal Court and then transferred by CTO Order over the client objections. Plaintiff filed Motion to Remand in July of 2015. As a result of this transfer, Plaintiffs' case sat for three more years with zero activity. Plaintiffs' requests that the Court take affirmative action on the case and request for trial went unheeded. Instead, this Court, six years after the oil spill, issued an order out

3

of the blue stating all parties must IMMEDIATELY SETTLE or file additional "individual" complaints.

On March 29, 2016 the Court issued Pre-Trial Order No. 60 ("PTO 60"). Rec. Doc. 16050. PTO 60 was unexpected by Plaintiff or Plaintiffs' Counsel. It directed BCA to either settle or file new individual lawsuits on behalf of thousands of claimants, essentially in a month's time. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Plaintiffs' Counsel appreciates the Court's efforts on closure to those we represent in the MDL. However, PTO 60 was unfair, unrealistic and inappropriate to mandate after six years to move so many from ground zero in such an abbreviated time. Nonetheless, BCA worked tirelessly to comply with the Order. From March until mid-July almost all BCA employees and attorneys worked virtually every day to comply with the ever changing directives from the Court ▮▮▮▮▮▮▮▮. In addition to the BCA BP department, the entire BCA asbestos department and numerous members of support staff spent the next two months working exclusively on this project. Furthermore, many additional contract and temporary workers were hired and dozens of support staff and counsel were recruited from within our network of joint ventured claims with other firms. All of these people worked nights and weekends, but the end result was extremely successful. Due to the passage of time, almost six years at this juncture, many of the clients were difficult to even find. Many had worked in the transient coastal tourism and fishing industries, and that vocation, compounded by the layoffs, resulted in the majority of the BCA docket being comprised of claimants who frequently moved and changed contact information. As a consequence, BCA, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ had to

4

find over 2,000 clients who had fallen through the cracks. This involved yet another massive undertaking with the retention of a team of private investigators, field liaisons, skip trace searches, employer contacts, family contacts, and neighbor contacts just to try to find all of these people again on such short notice.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████ The net result was that accords were reached on approximately 7,500 cases, leaving only about 200 identified claimants to file new lawsuits in further compliance with PTO 60.   Out of that 200 which filed additional PTO 60 lawsuits, all but about 60 have now settled.

███████████████████████████████████████
████████████████████████████████ ██████
█████████████████████████████████████ █
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████

It is understandable why the Court request new filings for short form joinders on master complaints.  Once the master complaints bundles were dismissed by the Court the Plaintiffs cases were no longer tied to a stand-alone complaint. Such is not the case with this complaint the Court has dismissed.   Here, Plaintiffs' cases included in its own filing with their own choice of venue.  This should not be disturbed. Regardless, Plaintiffs here filed a

5

new PTO 60 compliant in a timely manner with the additional required information signed by the Plaintiffs, and only left these two claims together because of their common issues. If this Court believes that regardless of all of these additional background facts that these two Plaintiffs must file completely separate Complaints, Plaintiffs request permission and leave to do so a this juncture and that they will comply with such mandate.

## II. PTO 60 VIOLATES DUE PROCESS

Under the original deadline set out by PTO 60, this was simply impossible in such a short timeframe. As a result PTO 60 had to be modified a number of times to allow more cases to be resolved. In spite of these modifications PTO 60 was unfair and violated due process. It attempts to impose the Court's will on where Plaintiff case would ultimately be heard at trial. Plaintiffs' choice of forum is, however, entitled to substantial deference. *See Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947).

The duty of an MDL Court is to provide "coordinated and consolidated pre-trial proceedings." 28 U.S.C. § 1407(a). Furthermore, the goal is of transferring cases to an MDL Court is to "promote the just and efficient conduct of such actions. *Id.* Six years after the oil spill the Court instead mandated new filings directly into the Eastern District of Louisiana. These new individual filing only effectuated another filing fee with this Court where they were already properly presented. Notwithstanding this, BCA cooperated with the Order and took our 100 plus cases ████████████████████████ and filed the lawsuits in compliance with PTO60.

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). However, "§ 1407 not only authorizes the panel to transfer for coordinated or consolidated pretrial proceedings, but

obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course." *In re Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998).   "Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated."   28 U.S.C. § 1407(a). The Supreme Court correctly points out that the word shall is mandatory in this instance. *In re Lexecon, Inc.*, 523 U.S. at 35.   Dismissing the original action and requiring a new filing directly in the Eastern District of Louisiana is simply an end-run around the mandates of 1407.

### III.   PTO 60 ALLOWS FOR THE JOINDER OF THIS CLAIM

PTO 60 is itself ambiguous regarding the joinder of related claims.   Footnote 3 of PTO 60 states, "This does not include complaints that contain related parties such as a husband and wife or co-owners of a business.   Where two or more related parties are joined in a single complaint, those plaintiffs will be considered as having filed an individual complaint."   The issue of the ambiguity of this footnote was raised by BCA on or about April 9, 2016 when we requested addition time to comply with PTO 60 in our Memorandum in Support of Motion For Additional Time.   Rec. Doc. 16167-1.   The Court did not provide the requested clarification.

Again, this claim cannot be viewed in a vacuum as it was the only PTO 60 lawsuit filed by BCA.   Dozens of other lawsuits were filed pursuit to PTO 60 as individual lawsuits. In this case, and in a few others it was clear that the companies were interconnected (E.g. co-owners, parent company/subsidiary company, interrelated stakeholders, common shareholders) and these related parties were grouped together in one lawsuit pursuant to the exception found in Footnote 3.

Henry L. Perry is the owner of both St. Joe Beach Property, LLC, Bungalows at Sanctuary Beach, LLC and as such they are clearly "related parties" that fall under the exception created by Footnote 3. See Exhibit C and Exhibit D at paragraph 8 and 9.  More importantly the facts supporting these two claims are virtually identical, and separating these claims does nothing to support the cause of judicial efficiency.   Therefore, their compliant should be treated as filing an individual compliant.   Dismissal of these claims for failure to comply with PTO 60 is therefore inappropriate.   Again, the Plaintiffs would request alternative relief of permission to further segregate, re-plead, and re-file in further comport to the Court orders if such be the case.

In fact, Plaintiffs would show these ambiguities left other firms, including lawyers who were on this Courts appointed Plaintiff Steering Committee, interpreting the Orders in this same way.   See Exhibit E. Plaintiffs Memorandum in support of motion for reconsideration with respect to the claims of Chapel Hill, et al, filed by Mssrs, Paul Sterbcow and Jimmy Williamson).   How can Plaintiffs counsel here and Plaintiffs be punished for following the lead of this Court's OWN hand- picked liaisons to the rest of the Plaintiffs and their Counsel in how to interpret PTO 60 and address it accordingly?

IV.  **PLAINTIFFS OFFER TO COMPLY WITH ANY FURTHER CLARIFIED INTERPRETATIONS OF PTO 60 AND TO COMMIT TO ANY OTHER DETERMINED SANCTIONS APPROPRIATE TO THE CONDUCT**

Plaintiffs would show that any non-compliance with the PTO 60 orders was not from any intentional act, or any effort to effectuate any delay or prejudice to any party.  In fact, Plaintiffs would show to the contra, that efforts were made to comply with PTO 60, even while disagreeing with it, and do so in a manner that would further the efficiency of the judicial process by keeping these two conjoined cases together and yet segregated from the master complaint involving many hundreds of other unrelated claims that brought about

8

their original presence before this Court. As set out above, Plaintiffs' made a good faith effort to comply with PTO 60.  As a result, there is no prejudice or delay to any of the Parties as a result of any perceived defects in compliance with PTO 60.

Plaintiff's incorporate and adopt by reference the arguments and authorities found in See Exhibit E concerning the appropriateness of lesser sanctions in this matter.  And although Plaintiffs do not believe they have failed in any way in complying with a reasonable interpretation of PTO 60, they agree to the imposition of any other lesser penalty appropriately measured to the perceived conduct.