IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 15-30599

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:12-CV-970

United States Court of Appeals
Fifth Circuit
**FILED**
January 6, 2017
Lyle W. Cayce
Clerk

IN RE: DEEPWATER HORIZON

-------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; ET AL,

    Plaintiffs

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; ET AL,

    Defendants

WOODBRIDGE BARIC PRE-SETTLEMENT FUNDING, L.L.C.,

    Movant - Appellant

v.

LOUIS J. FREEH, Special Master,

    Appellee

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before BENAVIDES, DENNIS, and SOUTHWICK, Circuit Judges.

J U D G M E N T

    This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is reversed.

IT IS FURTHER ORDERED that appellee pay to appellant the costs on appeal to be taxed by the Clerk of this Court.

**Certified as a true copy and issued as the mandate on Jan 30, 2017**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Print Form

# BILL OF COSTS

**NOTE:** The Bill of Costs is due in this office *within 14 days from the date of the opinion,* See FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

Lake Eugenie Land & Development, Incorporated, et al. v. BP Exploration and Production, Incorporated, et al.   No. 15-30599

The Clerk is requested to tax the following costs against: Appellee Louis J. Freeh, Special Master

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($500.00) | | | | 500 | | | | 500.00 |
| Appendix or Record Excerpts | 4 | 66 | 0.15 | 39.6 | 4 | 66 | .15 | 39.60 |
| Appellant's Brief | 7 | 35 | 0.15 | 36.75 | 7 | 35 | .15 | 36.75 |
| Appellee's Brief | | | | | | | | |
| Appellant's Reply Brief | 7 | 24 | 0.15 | 25.2 | 7 | 24 | .15 | 25.20 |
| Other: | | | | | | | | |
| | | | Total $ | 601.55 | | | Costs are taxed in the amount of $ | 601.55 |

Costs are hereby taxed in the amount of $ 601.55 this 30th day of January, 2017.

LYLE W. CAYCE, CLERK

State of
County of _____

By _____
Deputy Clerk

I, Anton L. Hasenkampf, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 13 day of January, 2017.

(Signature)

*SEE REVERSE SIDE FOR RULES
GOVERNING TAXATION OF COSTS

Attorney for Appellant Woodbridge Baric Pre-Settlement

REVISED January 9, 2017

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30599

United States Court of Appeals
Fifth Circuit
**FILED**
January 6, 2017
Lyle W. Cayce
Clerk

IN RE: DEEPWATER HORIZON

-------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; ET AL,

      Plaintiffs

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; ET AL,

      Defendants

WOODBRIDGE BARIC PRE-SETTLEMENT FUNDING, L.L.C.,

      Movant - Appellant

v.

LOUIS J. FREEH, Special Master,

      Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before BENAVIDES, DENNIS, and SOUTHWICK, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Case: 15-30599    Document: 00513853882    Page: 2    Date Filed: 01/30/2017
Case 2:10-md-02179-CJB-DPC  Document 22144  Filed 01/30/17  Page 5 of 14

No. 15-30599

Woodbridge Baric Pre-Settlement Funding, L.L.C. (Woodbridge Baric), appeals the district court's order that it pay $20,000 in restitution to the Deepwater Horizon Court-Supervised Settlement Program. In 2012 Woodbridge Baric loaned Jarrod Burrle $24,000. Woodbridge Baric and Burrle agreed that Burrle would not be required to repay the loan if his economic loss claims in connection with the Deepwater Horizon oil spill fail unless he had misrepresented his claim to Woodbridge Baric, in which case Burrle agreed to indemnify Woodbridge Baric and hold it harmless. In 2013, the settlement program paid over $50,000 on one of Burrle's claims, and Burrle's attorneys paid Woodbridge Baric $20,000 of those funds in partial repayment of the loan. Subsequently, Louis Freeh, appointed by the district court as a special master to investigate misconduct in the administration of the settlement program, determined that Burrle's claim was fraudulent and moved the court to order Burrle and others, including Woodbridge Baric, to make restitution for the funds paid in connection with that claim. The district court granted the motion as to Woodbridge Baric, finding that Woodbridge Baric would be unjustly enriched if allowed to retain the $20,000 from Burrle. For the following reasons, we reverse the district court's judgment against Woodbridge Baric.

I

In 2010, Burrle filed claims for compensation, including a claim for lost income from commercial fishing, with the Gulf Coast Claims Facility, which was tasked with processing claims related to the Deepwater Horizon oil spill. In early 2012, Burrle entered into three separate "pre-settlement funding contracts" with Woodbridge Baric.[1] Under these contracts, Woodbridge Baric

---

[1] In an October 2001 opinion, the Office of the Attorney General of the State of Louisiana opined that pre-settlement funding contracts constitute a consumer loan as defined in the Louisiana Consumer Credit Law. La. Atty. Gen. Op. No. 2001-160, 2001 La.

Case: 15-30599    Document: 00513853882    Page: 3    Date Filed: 01/30/2017
Case 2:10-md-02179-CJB-DPC Document 22144 Filed 01/30/17 Page 6 of 14

No. 15-30599

agreed to loan Burrle a total of $24,000, referred to as an "advance," at a specified interest rate.[2] Each of the three contracts provided that "[i]n the event [Burrle does] not recover any money from the 'lawsuit/claim,' [Burrle] shall not be obligated to repay the advance to [Woodbridge Baric]." The contracts also provided that if Burrle's representations to Woodbridge Baric regarding his claims were false, he would be required to indemnify Woodbridge Baric for its losses and expenses, including the principal amount of the loan.[3]

In December 2012, the district court approved the Deepwater Horizon Economic and Property Damages Settlement Agreement in a class action concerning the Deepwater Horizon oil spill. In accordance with the settlement agreement, the district court established the Deepwater Horizon Court-Supervised Settlement Program to implement and administer the settlement agreement, including the processing of individual claims for compensation.

---

AG LEXIS 489. The special master does not dispute that Woodbridge Baric's pre-settlement funding contracts with Burrle were consumer loan agreements.

[2] The contracts purported to "assign[ ] an interest" in Burrle's claims to Woodbridge Baric. However, as the special master points out, the Deepwater Horizon settlement agreement prohibits the assignment of rights or claims arising out of the Deepwater Horizon incident and declares any such assignment "void, invalid, and of no force and effect."

[3] Specifically, the pre-settlement funding contracts provided, in relevant part:

> **5. Representations and Warranties**: To induce "Woodbridge Baric" to pay "Me" [Burrle] the Advance and to take an assignment and or right of first distribution of my "Lawsuit/Claims," "I" hereby make the following representations and warranties under penalty of perjury . . . "I" understand that "Woodbridge Baric" is relying on the below representations and warranties to pay me the Advance. In the event any of my representations and warranties below are untrue, "I" agree to indemnify and hold harmless "WOODBRIDGE BARIC" against all losses, expenses [and] costs (including the Advanced Amount . . . ).

As part of his representations and warranties under the contracts, Burrle guaranteed that any information he provided to Woodbridge Baric relating to his claim or to Woodbridge Baric's decision to provide him with funding was "accurate and complete in all respects."

3

Shortly after the settlement program began operations, Burrle refiled his claims for compensation with the program.

In 2013, the settlement program approved Burrle's commercial fishing claim and paid him $50,015.87. Following receipt of the claim payment, Burrle's attorneys paid Woodbridge Baric $20,000 on Burrle's behalf as a partial repayment of its loan. Several months later, the district court appointed the special master, directing him to investigate claims submitted to the settlement program and initiate legal action to "clawback" funds paid on fraudulent claims. After investigating Burrle's claims, the special master determined that they were fraudulent. The special master then filed a motion asking the district court to require Burrle and third parties who benefitted from the settlement program's payment on Burrle's commercial fishing claim to return that payment.

The district court ultimately granted the special master's motion, finding that Burrle submitted fraudulent documents and made false statements in connection with his claim. In addition to ordering Burrle to repay all funds paid on his claim to the settlement program, the district court ordered Burrle's lawyers and Woodbridge Baric to repay the funds they received in connection with his claim. As to Woodbridge Baric, the district court determined that it would be unjustly enriched if allowed to retain the funds, reasoning that Woodbridge Baric's right to Burrle's repayment of the loan was contingent upon the success of Burrle's claims, which ultimately failed. Thus, the district court entered judgment against Woodbridge Baric in the amount of $20,000.00. Woodbridge Baric appeals.

## II

As an initial matter, the parties disagree on the relevant standard of review on appeal. The special master argues that the district court's judgment

Case: 15-30599    Document: 00513853882    Page: 5    Date Filed: 01/30/2017
Case 2:10-md-02179-CJB-DPC   Document 22144   Filed 01/30/17   Page 8 of 14

No. 15-30599

was a decision to grant relief from a judgment under Federal Rule of Civil Procedure 60(b), which is reviewed for abuse of discretion. Woodbridge Baric responds that the district court's entry of a final judgment against it was essentially a grant of summary judgment, and thus review is de novo. However, we need not decide the nature of the district court's ruling. Even if characterized as a decision to grant relief from a judgment under Rule 60(b), this court reviews de novo any question of law underlying the district court's decision. *See Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir. 2006). Because the parties' respective arguments pertain only to questions of law, we will review the district court's determinations as to those questions de novo. *See id.*

"It is a long-standing legal principle that a person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable." *Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996) (citations, alteration, and internal quotation marks omitted); *accord United States v. Morgan*, 307 U.S. 183 (1939); *Atlantic Coast Line R. Co. v. Florida*, 295 U.S. 301, 309 (1935); RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 18 ("A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment."). Thus, it is well established that when a prior judgment is invalidated, the district court has inherent equitable power to enforce restitution of what has been done in compliance with its prior judgment. *See, e.g., Baltimore & O. R. Co. v. United States*, 279 U.S. 781, 786 (1929); *Morgan*, 307 U.S. at 198.

The court's power being equitable in nature, restitution pursuant to this power is a matter of equity rather than a matter of right. *Atlantic Coast Line*,

Case: 15-30599 Document: 00513853882 Page: 6 Date Filed: 01/30/2017
Case 2:10-md-02179-CJB-DPC Document 22144 Filed 01/30/17 Page 9 of 14

No. 15-30599

295 U.S. at 310; *Mohamed*, 91 F.3d at 1126. To prevail, a party seeking restitution "must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it." *Id.* at 309. "The question no longer is whether the law would put [the possessor] in possession of the money if the transaction were a new one. The question is whether the law will take it out of his possession after he has been able to collect it." *Id.* at 310.

Relevant to the instant case, it is a generally recognized rule of equity that a third party who receives funds in good faith from a judgment creditor in satisfaction of a debt is not liable to repay those funds in restitution. *See*, *e.g.*, *Mohamed*, 91 F.3d at 1126 ("[E]quity will not compel restitution from a third party who receives monies, in good faith, from the initial judgment creditor in payment of a debt."); *see also Equilease Corp. v. Hentz*, 634 F.2d 850, 853 (5th Cir. 1981) (applying Florida law and stating, "[I]t is patently unfair to require an innocent payee who has received and used the money to satisfy a debt to repay the money"); RESTATEMENT § 67(1)(a) (a bona fide payee who "accepts the funds in satisfaction or reduction of the payee's valid claim as creditor" is not liable to repay the funds). Relying on this rule, Woodbridge Baric argues that it is a bona fide payee who received funds from Burrle in partial satisfaction of a valid claim. In this regard, Woodbridge Baric notes that it made a $24,000 loan to Burrle and that it is undisputed that it had no knowledge of the fraudulent nature of Burrle's settlement program claim. Woodbridge Baric also highlights that it was not a party to Burrle's litigation before the settlement program, notwithstanding its expectation of receiving a share of the proceeds of his claims.

The district court concluded that Woodbridge Baric was not entitled to retain the funds because its right to Burrle's repayment of the loan was

Case: 15-30599   Document: 00513853882   Page: 7   Date Filed: 01/30/2017
Case 2:10-md-02179-CJB-DPC   Document 22144   Filed 01/30/17   Page 10 of 14

No. 15-30599

contingent upon the successful settlement of Burrle's claims. Because Burrle's fraudulent claim ultimately failed, the district court determined that Woodbridge Baric would be unjustly enriched if allowed to retain the funds. In so concluding, the district court relied on an exception, recognized by some courts, to the rule that bona fide third-party payees are not liable in restitution. Under this exception, an attorney who receives a share of a judgment pursuant to a contingency-fee agreement does not take the money as a bona fide payee. *E.g.*, *Mohamed*, 91 F.3d at 1127; *Cox v. Cox*, 780 N.E.2d 951, 962 (Mass. App. Ct. 2002); *see also* RESTATEMENT § 18 cmt. g. This exception rests on the premise that by conditioning his or her fees on success in litigation, the attorney assumes the risk of non-recovery. *E.g.*, *Mohamed*, 91 F.3d at 1127; RESTATEMENT § 18 cmt. g. Because the initial judgment creditor ultimately collects nothing after the judgment is reversed, the attorney is also entitled to nothing pursuant to the terms of the fee agreement and is therefore liable to repay the funds in restitution. *Mohamed*, 91 F.3d at 1127. Many authorities have therefore likened an attorney with a contingency fee agreement to a real party in interest or assignee *pro tanto* of the client's judgment and thus view the attorney as standing in the client's shoes. *See e.g.*, *Mohamed*, 91 F.3d at 1127; *Excel Corp. v. Jimenez*, 7 P.3d 1118, 1126 (Kan. 2000); *Abrahami v. UPC Const. Co.*, 670 N.Y.S.2d 457, 468 (N.Y. App. Div. 1998).

While the logic of this exception could arguably extend to non-attorneys, so far, all of the cases that discuss this exception have involved attorneys. *See, e.g.*, *Mohamed*, 91 F.3d at 1127; *Cox*, 780 N.E.2d at 962; *Excel Corp.*, 7 P.3d at 1126; *Abrahami*, 670 N.Y.S.2d at 468; *Ehsani v. McCullough Family P'ship*, 159 P.3d 407, 411 (Wash. 2007) (en banc). This is not surprising considering that attorneys are far more likely than anyone else to condition their rights to payment upon the results of litigation. But we need not decide whether this

Case: 15-30599    Document: 00513853882    Page: 8    Date Filed: 01/30/2017
Case 2:10-md-02179-CJB-DPC   Document 22144   Filed 01/30/17   Page 11 of 14

No. 15-30599

exception applies beyond the context of attorneys' contingency fees because, even assuming this exception could apply to non-attorneys, it would have no application in this case.

Woodbridge Baric's right to Burrle's repayment of the principal amount of its loan did not depend solely on the success of Burrle's claims: Woodbridge Baric's contracts with Burrle expressly required Burrle to indemnify and hold Woodbridge Baric harmless for the loss of the principal amount of the loan if his representations to Woodbridge Baric regarding his claims were not accurate and complete in all respects. Although Woodbridge Baric assumed some of the risks associated with non-recovery in its contracts with Burrle, it specifically disclaimed the risk that Burrle had asserted fraudulent claims and withheld that information from it.[4] Accordingly, Woodbridge Baric was entitled to Burrle's full repayment of the principal under their contracts. Where, as here, a "bona fide creditor is entitled to payment regardless of the judgment's validity, that creditor is not unjustly enriched by retention of the payment after the judgment's reversal." *Cox*, 780 N.E.2d at 962. In other

---

[4] We need not decide whether an attorney would be able to assert bona fide payee status under similar circumstances, as that case is not before us. We note, however, that, unlike lenders, attorneys have both a legal and an ethical duty to reasonably investigate the facts prior to filing pleadings with the court. *See, e.g.*, *Callahan v. Schoppe*, 864 F.2d 44, 46 (5th Cir. 1989) ("Rule 11 of the Federal Rules of Civil Procedure imposes a duty of reasonable investigation into the facts and the law prior to filing a document with a court."); Mod. Rules Prof. Cond. § 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous."); *In re Zohdy*, 892 So.2d 1277 (La. 2005) (lawyer who sought to intervene in chemical products liability class action violated rules of professional conduct by failing to investigate whether his clients were exposed to chemical). Courts may wish to consider an attorney's disregard for these duties in determining whether the attorney's acceptance of payment pursuant to his client's fraudulent claim was in good faith. *Cf. Excel Corp. v. Jimenez*, 7 P.3d 1118, 1126 (Kan. 2000) (an attorney's status as an officer of the court "places him on a different legal footing," and the court could not approve the retention of an attorney's fees where the client was guilty of fraudulent conduct in procuring the judgment).

Case: 15-30599    Document: 00513853882    Page: 9    Date Filed: 01/30/2017
Case 2:10-md-02179-CJB-DPC   Document 22144   Filed 01/30/17   Page 12 of 14

No. 15-30599

words, because Burrle's payment to Woodbridge Baric discharged an unconditional, bona fide obligation, Woodbridge Baric is not liable in restitution to the settlement program. *See id.*

Treating an attorney with a contingency fee agreement as standing in his or her client's shoes is only warranted to the extent the attorney's claim against the client rests solely upon the now-failed contingency. *See Mohamed*, 91 F.3d at 1127 (remanding for determination of the portion of proceeds retained by attorney that represented payment of a contingent fee); *Abrahami*, 670 N.Y.S.2d at 468 (holding that law firm was liable for restitution of contingency fee but not of other, non-contingent fees following vacatur of judgment); *cf. Ehsani*, 159 P.3d at 411 ("[T]here is no unjust enrichment vis-à-vis the judgment debtor where a party receives only that to which he is entitled under the terms of a valid, preexisting agreement with the judgment creditor."). Consider an attorney with a fee-for-service arrangement under which the client is to pay the attorney $1,000, regardless of the result of litigation. In this scenario, if an initially favorable judgment is subsequently overturned or nullified, the attorney would not be liable to repay the fee in restitution. *See, e.g.*, *Mohamed*, 91 F.3d at 1126; *see also* RESTATEMENT § 67(1)(a). Now assume that the fee agreement also provides that in the event the attorney obtains a favorable result in litigation, the client must pay the attorney a total of $1,500. If the initially favorable judgment is subsequently invalidated, must the attorney forfeit not only the $500 that were contingent upon success in litigation but also the $1,000 he would have been entitled to regardless of the outcome? We see no basis in precedent or in equity for requiring such an odd result. *Cf. Ehsani*, 159 P.3d at 411; *Abrahami*, 670 N.Y.S.2d at 468; *Cox*, 780 N.E.2d at 958 n.12, 962 & n.19 ("[An] attorney is not liable in restitution to the judgment debtor upon reversal of the judgment

Case: 15-30599    Document: 00513853882    Page: 10    Date Filed: 01/30/2017
Case 2:10-md-02179-CJB-DPC   Document 22144   Filed 01/30/17   Page 13 of 14

No. 15-30599

unless the judgment debtor . . . proves either that the payment did not discharge an unconditional, bona fide obligation the client had to the attorney or that, although the payment did discharge such an obligation, other circumstances exist that make the attorney's retention of the payment unjust," such as "breach of some duty, a violation of trust, bad faith, or fraud").

Because Woodbridge Baric's claim for the repayment of the loan was not purely contingent upon the success of Burrle's claims for compensation, the failure of this contingency did not extinguish Woodbridge Baric's claim and does not prevent Woodbridge Baric from asserting its valid interest in defense of its right to retain the funds as a bona fide payee. *See Abrahami*, 670 N.Y.S.2d at 468; *see also Cox*, 780 N.E.2d at 962. While the special master argues that Burrle did not purport to pay Woodbridge Baric under the warranty provisions of their agreements, Burrle nonetheless paid Woodbridge Baric in partial satisfaction of a valid debt.[5] At bottom, Woodbridge Baric was simply not unjustly enriched by its good faith acceptance of the funds from Burrle in partial repayment of his debt. *See Mohamed*, 91 F.3d at 1126-27; *see also* RESTATEMENT §§ 18 cmt. g, 67(1)(a) & (c).

### III

For these reasons, the judgment of the district court is REVERSED.

---

[5] At oral argument, the special master argued for the first time that Burrle may be able to defend himself from Woodbridge Baric's claim against him by asserting that the interest rate the parties had agreed upon was usurious under Louisiana law. This argument is forfeited. *See Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 270 (5th Cir. 1998) ("Needless to say, we do not generally consider points raised for the first time at oral argument."). In any case, as discussed above, Woodbridge Baric had loaned Burrle $24,000 but received only $20,000 in partial repayment of Burrle's debt. The special master has not established that a credit provider's usurious interest rate relieves the consumer from the obligation to repay the *principal* under Louisiana state law. *Cf*. LA. REV. STAT. § 9:3552(A)(1)(a) (providing that a credit provider's violation of the provisions of this chapter, including by charging an excessive interest rate, entitles the consumer to a refund of all loan finance charges but not a refund of the principal).

# United States Court of Appeals

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

January 30, 2017

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

    No. 15-30599   In Re: Deepwater Horizon
                           USDC No. 2:10-MD-2179
                           USDC No. 2:12-CV-970

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Enclosed for the district court and counsel is the approved bill of costs.

                                Sincerely,

                                LYLE W. CAYCE, Clerk

                                By: _____
                                Dantrell L. Johnson, Deputy Clerk
                                504-310-7689

cc w/encl:
    Mr. George Davidson Fagan
    Mr. Anton L. Hasenkampf
    Mr. Gregory A. Paw
    Ms. Margaret Frohn Swetman