**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179 |
| | | SECTION J |
| This document relates to: | * * | Judge Barbier |
| *All cases* | * * | Magistrate Judge Wilkinson |

**LIAISON COUNSEL MEMORANDUM PROVIDING STATUS REPORT**
**FOR THE FEBRUARY 17, 2017 STATUS CONFERENCE**

Pursuant to the Court's Order of December 16, 2016 (Rec. Doc. 22007), Liaison Counsel jointly submit this report in advance of the status conference on February 17, 2017.

**INTRODUCTION**

Litigation relating to the *Deepwater Horizon* Incident has been pending before this Court since shortly after April 20, 2010.  On August 10, 2010, the Judicial Panel on Multidistrict Litigation created MDL 2179, transferring the vast majority of civil actions relating to the Incident (other than shareholder actions later consolidated into MDL 2185) to this Court.  Since that time, more than 100,000 plaintiffs filed claims in these proceedings.  Many of these plaintiffs were parties to thousands of civil actions that were filed in this Court, while others appeared via more than 100,000 short-form joinders filed in this Court.  The Panel also transferred many hundreds of additional related actions to these proceedings, recognizing that MDL 2179 is "an extremely large and highly complex MDL."  *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010 (No. II)*, 961 F. Supp. 2d 1355,

1357 (J.P.M.L. 2013).   As of February 14, 2017, more than 22,000 pleadings have been filed as part of the Court's docket in this MDL.

Through the Court's efforts over the past seven years, the large majority of claims in MDL 2179 have now been resolved and dismissed.  As described in **Part I** of this status report, the Court has ruled on numerous dispositive motions, held three phases of trial involving federal, state, and private parties, approved (preliminarily or finally) and supervised four class settlements, entered a consent decree for a global government entity settlement, and overseen the individual settlements of a vast number of claims through its appointed Neutrals.

Certain unresolved claims remain in MDL 2179, however, and require further attention from the Court and the parties.   **Part II** of this status report provides a description of the remaining matters in MDL 2179, and counsel will be prepared to discuss the case management steps for these remaining matters at the February 17 conference.

## I.   PROCEEDINGS COMPLETED TO DATE.

### A.  Structure, Pleadings, and Dispositive Motions.

Early in these proceedings, the Court appointed a Plaintiffs' Steering Committee and Plaintiffs' Liaison Counsel (Rec. Doc. 506), as well as a Defense Steering Committee and Defense Liaison Counsel (Rec. Doc. 567).  The Court also established eight separate "pleading bundles" for the various categories of cases and claims in MDL 2179.   (PTO 11, Rec. Doc. 569) The "bundles" were organized as follows:

Bundle A:      April 20, 2010 Personal Injury and Death Claims

Bundle B1:     Non-Governmental Economic Loss and Property Damages

Bundle B2:     Racketeer Influenced and Corrupt Organizations Act ("RICO") Claims

Bundle B3:     Clean-Up, Medical Monitoring, and Post-April 20 Personal Injury Claims

Bundle B4:     Post-Explosion Emergency Responder Claims

Bundle C:      Public Damage Claims by Government Entities

Bundle D1:     Injunctive and Regulatory Claims Against Private Parties

Bundle D2:     Injunctive and Regulatory Claims Against the Government[1]

After master complaints were filed for many of these Pleading Bundles, the Court issued major rulings on dispositive motions addressing the claims and defenses in MDL 2179.  These dispositive orders included:

- Order Dismissing the D1 Master Complaint (June 16, 2011 - Rec. Doc. 2784)

- Order Dismissing the B2 Master Complaint (July 15, 2011 - Rec. Doc. 3330)

- Order Dismissing in Part the B1 Master Complaint (August 26, 2011 - Rec. Doc. 3830)

- Order Dismissing in Part the B3 Master Complaint (September 30, 2011 & October 4, 2011 - Rec. Docs. 4159, 4209)

- Order Dismissing Bundle B4 Cases (October 12, 2011 - Rec. Doc. 4285)[2]

- Order Dismissing in Part the Complaint of the States of Alabama and Louisiana (November 14, 2011 - Rec. Doc. 4578)

- Order Dismissing in Part the Voluntary Master Complaint for Local Government Entity Claims and Dismissing Claims by Louisiana Parish District Attorneys (December 9, 2011 - Rec. Doc. 4845)

- Orders Dismissing the Complaints of the Mexican States of Quintana Roo, Tamaulipas, and Veracruz (December 9, 2011 & September 6, 2013 - Rec. Docs. 4845, 11281)

---

[1]   No master complaint for D2 claims was ever filed, and Liaison Counsel are aware of no pending actions in MDL 2179 that fall within the D2 Pleading Bundle.

[2]   The Court's order dismissed all "claims against the alleged owners and/or operators of rescue vessels that answered the Deepwater Horizon distress call and responded to the emergency after the explosion" (Rec. Doc. 4285 at 1) other than the personal injury claim of DuWayne Mason (10-3896).  Mr. Mason's claim was subsequently dismissed by the Court in June 2015 (Rec. Doc. 14709), and the Fifth Circuit affirmed the Court's ruling.  *In re Deepwater Horizon*, 819 F.3d 190 (5th Cir. 2016).  Liaison Counsel are aware of no remaining actions in MDL 2179 that fall within the B4 Pleading Bundle.

- Order Regarding Additional Insured Coverage Claims (November 15, 2011 - Rec. Doc. 4588)

- Orders Regarding Halliburton's and Transocean's Claim for Indemnification by BP (January 26, 2012 & January 31, 2012 - Rec. Docs. 5446, 5493)

- Order Regarding Defendants' Liability under the United States' Oil Pollution Act and Clean Water Act Claims (February 22, 2012 - Rec. Doc. 5809)

- Order Regarding Real Estate "Stigma," Recreation, and BP Dealer Claims (October 1, 2012 - Rec. Doc. 7526)

- Order Dismissing Claims for Economic Losses Allegedly Resulting from the 2010 Federal Moratoria on Deepwater Drilling (March 10, 2016 - Rec. Doc. 15987)

**B.  Trial Proceedings.**

From 2010 to 2015, the Court oversaw pretrial proceedings and conducted bench trials for three major trial phases in MDL 2179, with two trials in 2013 and a third trial in early 2015. In preparation for the trial proceedings, the parties engaged in an extraordinary amount of discovery within a compressed time period.  With respect to the first phase alone, this included taking 311 depositions, producing approximately 90 million pages of documents, and exchanging more than 80 expert reports on an intense and demanding schedule.  Depositions were conducted on multiple tracks and on two continents.  Discovery was kept on course by weekly discovery conferences before Magistrate Judge Shushan.  The Court also held monthly status conferences with the parties.  (*See* Rec. Doc. 8138.)

In 2013, the Court conducted the Trial of Liability, Limitation, Exoneration, and Fault Allocation (the "Limitation and Liability Trial").  This trial addressed issues asserted in or relevant to the claims, counterclaims, cross-claims, third-party claims, and comparative fault defenses raised in Transocean's Limitation of Liability Action and proceeded in two phases. Phase 1 commenced on February 25, 2013 and addressed the causes of the *Deepwater Horizon*

casualty and oil spill.  The presentation of evidence in Phase 1 was completed on April 17, 2013, and over the eight weeks of trial the Court heard testimony from 62 witnesses, with 39 witnesses appearing live at trial and the remainder testifying by video deposition.  In addition, the parties used more than 500 demonstratives during the 29 days of trial, and the Court admitted into evidence more than 900 trial exhibits.  Phase 2 commenced on September 30, 2013 and addressed both "source control" (*i.e.*, the capping and sealing of the Macondo well) and the quantification of the oil discharged (including flow rate).  The presentation of evidence in Phase 2 was completed on October 18, 2013.  Over the three weeks of trial, the Court heard testimony from 50 witnesses, with 28 witnesses appearing live at trial, and 22 witnesses testifying via video deposition.  The parties used 604 demonstratives, and the Court admitted into evidence 1,670 trial exhibits.

On September 4, 2014, the court issued its ruling with respect to Phase 1 (Rec. Docs. 13355, 13381 (amended order)).  On January 15, 2015, the court issued its ruling with respect to Phase 2 (Rec. Doc. 14021).

Following the Phase 1 and Phase 2 trials, the Court took up the United States' Clean Water Act civil penalties claims against BP Exploration & Production Inc. and Anadarko Petroleum Company as the next phase (the "Penalty Phase") of the MDL 2179 litigation.  The Court indicated that, in this phase, it would determine in a non-jury proceeding the amount of civil penalties arising under the Clean Water Act based on (1) the court's ruling in the Phase 1 proceedings as to the degree of the defendants' culpability; (2) the court's ruling in the Phase 2 proceedings as to the number of barrels of oil discharged; and (3) the application of the Clean Water Act's eight penalty factors.  The Penalty Phase trial commenced on January 20, 2015, and the parties concluded the presentation of evidence on February 2, 2015.  Over the two weeks of

trial, the Court heard testimony from 29 witnesses, with 23 witnesses appearing live at trial, and 6 witnesses testifying via video deposition. The parties used 594 demonstratives, and the Court admitted into evidence 809 trial exhibits. On November 30, 2015, after BP and the United States had reached a settlement and filed a proposed Consent Decree, the Court issued its ruling with respect to the Penalty Phase (Rec. Doc. 15606) solely as applicable to non-settling defendant Anadarko, and on December 16, 2015, it issued a final judgment as to the penalty to be paid by Anadarko Petroleum Company (Rec. Doc. 15659). On April 4, 2016, the Court entered a final judgment with respect to the United States' claim against BP Exploration & Production Inc. on the terms set forth in a Consent Decree, which the Court entered after a period of public comment (Rec. Doc. 16095).

### C. Economic Loss Test Cases.

Beginning in 2013, the Court commenced proceedings for a number of test cases consisting of the State of Alabama's economic loss claims, as well as a number of private plaintiffs with economic loss claims under the Oil Pollution Act ("OPA"). Following discovery in the Alabama test case, and based on the July 2015 settlement agreement between (BP Exploration & Production Inc.) ("BPXP") and the Gulf States, the Court dismissed the State of Alabama's claims in October 2015 on the joint motion of BPXP and Alabama. (Rec. Doc. 15440) On March 10, 2016, the Court ruled on cross-motions by BPXP and the OPA Test Case plaintiffs, ruling that BPXP is not, as a responsible party under OPA, liable for economic losses that resulted from the 2010 deepwater drilling moratoria and related permitting process (Rec. Doc. 15987). The OPA Test Case plaintiffs filed and then withdrew appeals of the Court's order, after resolving and dismissing their claims.

6

### D.  PTO 57 Process for B3 Claims Against Responder Defendants.

In July 2014, the Court established a protocol in Pretrial Order 57 for disclosures clarifying the basis for the B3 claims against the Clean-Up Responder Defendants.  (Rec. Doc. 13158)  The Court ruled that the Clean-Up Responder Defendants were entitled to derivative immunity under the Clean Water Act for the actions that are the subject of the Amended B3 Master Complaint if they performed those actions pursuant to the authorization, direction, and ultimate control of the federal government.  PTO 57 required that B3 plaintiffs with unreleased claims against Clean-Up Responder Defendants provide information about the nature of their claims, including "details and specific evidence regarding how the previously-identified act(s) or omission(s) violated or exceeded the federal government's instruction(s) or order(s), or was/were undertaken without any such instruction(s) or order(s), and led to the alleged injury, illness, or medical condition."  (Rec. Doc. 21406 at 12.)  Following a show cause process and further motion practice and briefing, the Court in August 2016 dismissed all B3 plaintiffs' claims against approximately thirteen Clean-Up Responder Defendants with the exception of the B3 claims by Nathan Fitzgerald (13-00650) and Joseph Brown (12-2333; 10-8888, Rec. Doc. 56125) against DRC Emergency Services, LLC.   (Order and Reasons As to the Clean-Up Responder Defendants' Motions for Summary Judgment Against the Remaining B3 Plaintiffs, Rec. Doc. 21406.)  The Court's August 2016 Order and Reasons did not, however, dismiss or otherwise affect claims against any defendants who are not the "Clean-Up Responder Defendants" specifically identified in the Order and Reasons.

### E.  Settlements.

#### 1.  Class Settlements.

Since 2012, the Court has overseen four class settlements in MDL 2179 that have

7

resolved the vast majority of both private economic loss claims and medical claims arising from the Incident.

### a. Economic and Property Damages Settlement.

On May 2, 2012, the Court preliminarily approved a proposed class settlement (the "E&PD Settlement") between BP and the Plaintiff Steering Committee to resolve certain claims for economic loss and property damage resulting from the Incident. (Rec. Doc. 6418)  The Court's order likewise conditionally certified a settlement class consisting of private individuals and businesses defined by (1) geographic bounds (principally Louisiana, Mississippi, Alabama, and certain coastal counties in eastern Texas and western Florida, as well as specified adjacent Gulf waters and bays) and (2) six categories of losses or damages.  (*Id.* at 5-7.)  In exchange for the remedies provided under the E&PD Settlement, BP obtained a broad classwide release as well as a signed individual release from each claimant that accepted a payment pursuant to the E&PD Settlement Agreement.

The E&PD Settlement excluded certain categories of claims, including bodily injury claims, BP shareholder claims, claims for moratoria losses, claims relating to menhaden fishing, and certain claims based on the substantive nature of the claimant's business (*i.e.*, financial institutions, certain types of funds, financial trusts, and other financial vehicles, gaming industry, insurance entities, oil and gas industry, defense contractors, and real estate developers).  In addition, class members were afforded an opportunity to opt out of the settlement class, and approximately 13,000 individuals and entities submitted timely requests to opt out of the E&PD Settlement Class, although certain of those individuals and entities subsequently revoked their opt out requests.  The Claims Administrator for the E&PD Settlement initiated the Court Supervised Settlement Program ("CSSP") on June 2, 2012.

Following a fairness hearing, the Court granted final approval to the E&PD Settlement on December 21, 2012.  (Rec. Doc. 8138.)  The Court's final approval order was affirmed by the Fifth Circuit and all appeals were subsequently exhausted on December 8, 2014.  The deadline for the submission of claims was six months after that date, on June 8, 2015, although the CSSP continues to process claims.  Pursuant to the Court's Order of December 16, 2016 (Rec. Doc. 22007), the Claims Administrator for the E&PD Settlement also submitted a status report in advance of the February 17, 2017 status conference.  (Rec. Doc. 22149)

**b.  Medical Benefits Settlement.**

On May 2, 2012, the Court preliminarily approved a proposed class settlement (the "Medical Settlement" or "MSA") between BP and the Plaintiff Steering Committee to resolve certain medical claims resulting from the Incident.  (Rec. Doc. 6419)  The Court's order conditionally certified a settlement class consisting generally of response workers and certain Gulf Coast residents.  The Medical Settlement provides a range of benefits to class members, including: (1) compensation for Specified Physical Conditions; (2) a 21-year Periodic Medical Consultation Program for qualifying class members; (3) a $105 million Gulf Region Health Outreach Program, designed to help improve the healthcare system for class members in the Gulf Coast communities; and (4) the Back-End Litigation Option, which provides class members the ability to bring actions in federal court for compensatory damages for Later-Manifested Physical Conditions.  In exchange for these benefits, MSA class members provide a comprehensive release of their claims against BP and other entities involved in the Incident.  Class members were afforded an opportunity to opt out of the settlement class, and approximately 1639 individuals submitted timely requests to opt out of the Medical Settlement Class, although certain of those individuals subsequently revoked their opt out requests.

Following a fairness hearing, the Court granted final approval of the Medical Settlement on January 11, 2013.  (Rec. Doc. 8217.)  The appeals of the Court's final approval order were dismissed in February 2014, and the MSA became effective on February 12, 2014.  The deadline for the submission of Proof of Claim Forms under the MSA was one year after that date, on February 12, 2015.  A total of 37,249 Proof of Claim Forms were submitted to the Medical Claims Administrator, with 1,386 pending determination. (*See* Medical Claims Administrator Claims Progression Waterfall Report as of 12/30/16).  Since the effective date of the MSA, there have been sixteen Back-End Litigation Option lawsuits filed by class members; eight of which have been dismissed, and eight remain pending.  Pursuant to the Court's Order of December 16, 2016 (Rec. Doc. 22007), the Medical Claims Administrator also submitted a status report in advance of the February 17, 2017 status conference.  (Rec. Doc. 22245)

### c.  Halliburton and Transocean Punitive Damages and Assigned Claims Settlements.

On April 12, 2016, the Court preliminarily approved class settlements between Halliburton and the Plaintiff Steering Committee, and between Transocean and the Plaintiff Steering Committee, to resolve certain claims for punitive damages (which were not released pursuant to the E&PD Settlement or Medical Settlement), as well as for certain claims against Halliburton and Transocean that were assigned by BP to the E&PD Settlement Class.  (Rec. Doc. 16183.)  The Court conditionally certified a new settlement class of punitive damages claimants, which under the Halliburton and Transocean class settlements (and the allocation approved by the Court) would receive approximately $902 million, while the E&PD Settlement Class (to whom certain claims were assigned by BP) would receive approximately $338 million.  The Court also approved a class notice plan.  The Court held a fairness hearing on November 10,

2016, at which time it took the issue of final approval under advisement.  The deadline to file claim forms under the Halliburton and Transocean class settlements was December 15, 2016.

Pursuant to the Court's Order of December 16, 2016 (Rec. Doc. 22007), the Claims Administrator for the Halliburton and Transocean Punitive Damages and Assigned Claims Settlements also submitted a status report in advance of the February 17, 2017 status conference. (Rec. Doc. 22177)

## 2.   Government Entity Settlements.

On October 5, 2015, the United States lodged with the Court a proposed Consent Decree between the United States, the Gulf States, and BPXP.  By its terms, the Consent Decree fully and finally resolved as to BP any and all natural resource damages claims of the United States, the five Gulf States, and their respective natural resource trustees, all Clean Water Act penalty claims, and certain other claims of the United States and the Gulf States.  In exchange, BPXP agreed to pay to the United States a civil penalty of $5.5 billion under the Clean Water Act, payable over 15 years; $7.1 billion to the United States and the five Gulf states over 15 years for natural resource damages;[3] and $4.9 billion to settle economic and other claims made by the five Gulf Coast states, payable over 18 years.  After a period of public comment, the Court entered the Consent Decree on April 4, 2016.  Following the Court's entry of the Consent Decree, BP, PSC, the United States, and the State of Alabama voluntary dismissed their appeals to the Fifth Circuit of the Court's Phase 1 and Phase 2 rulings.[4]

---

[3]   This is in addition to the $1 billion previously committed by BPXP for early restoration.  BPXP also agreed to set aside an additional amount (up to $700 million) consisting of $232 million and an NRD interest payment partly to cover any further natural resource damages that were unknown at the time of the agreement.

[4]   In January 2013, the Court consolidated with MDL 2179 and stayed Case No. 12-987, *United States of America ex rel. Adam W. Dillon v. BP p.l.c., et al.*, a relator action filed putatively on behalf of the United States of America for alleged violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.  The action remained pending

BP also reached resolutions in 2015 with the vast majority of local government entities ("LGEs") that had preserved their claims, whereupon the Court dismissed the voluntary master complaint for local government entities, and the LGEs dismissed their claims against BP and other defendants.  (Rec. Doc. 15269)

### 3.   Settlement of Opt Out and Excluded Claims in Bundle B1.

Between January 1, 2016 and July 29, 2016, certain Court-appointed Neutrals (Hon. Sally Shushan, Patrick A. Juneau, and Louis Freeh) oversaw a confidential settlement process with respect to the claims of numerous MDL 2179 plaintiffs who had opted out of or had claims excluded from the E&PD Settlement.  As a result of the work by the Neutrals, numerous plaintiffs in MDL 2179 resolved their claims and then released and dismissed their pending claims against BP and certain, though not all, other defendants.

In March 2016, the Court dismissed the amended B1 master complaint as having "no further administrative or procedural benefit."  (Pretrial Order 60, Rec. Doc. 16050, at 2.) Pursuant to its inherent power to manage and control its own docket, the Court required plaintiffs in pleading bundle B1 who had filed a timely claim and not previously released their claim to file and serve on BP a sworn statement disclosing information regarding their claims.  In addition, the court required those B1 plaintiffs who had not previously filed an individual complaint (defined as a complaint not joined in by any other plaintiffs) against BP to file a new individual complaint.  Under Pretrial Order 60, plaintiffs who failed to comply with the sworn statement requirement or the new individual complaint requirement by the compliance deadline were to

---

until recently notwithstanding the Court's entry on April 4, 2016 of the Consent Decree among BP, the United States, and the five Gulf States.  (Rec. Doc. 16093.)  Under the Consent Decree, BP agreed to pay "$82.6 million in settlement of the United States' claims under the False Claims Act, 31 U.S.C. § 3729 et seq.," and the United States covenanted not to sue any BP entity for any False Claims Act claim arising from the Deepwater Horizon Incident.  (*Id*. at ¶¶ 24, 60.)  On February 3, 2017, Mr. Dillon filed a notice of voluntary dismissal of his claims.  (Rec. Doc. 22179.)

have their claims deemed dismissed with prejudice without further notice.

Following a show cause process, the Court recognized approximately 1,000 remaining B1 plaintiffs to be compliant with PTO 60 and subject to further proceedings in MDL 2179. (Rec. Docs. 20996, 22003.)  The claims of any other remaining B1 plaintiffs were dismissed. (*Id.*)  Certain plaintiffs who were found noncompliant with PTO 60 and had their claims dismissed by the Court's December 16, 2016 Reconciliation Order have filed motions for reconsideration and/or notices of appeal.

### 4.  Other Settlements.

Numerous other settlements have resolved claims in MDL 2179.  Nearly all claims for wrongful death or personal injuries arising directly from the events of April 20, 2010 have been resolved by settlement.   In addition, on May 20, 2015, BP and Transocean, and BP and Halliburton, entered into confidential settlement agreements to resolve the final remaining disputes between these parties stemming from the Incident.  BP also resolved the claims between it and other current or former MDL 2179 defendants who were contractors or working interest owners at the Macondo well, including Weatherford U.S., L.P., Anadarko Petroleum Company, MOEX Offshore 2007 LLC, and Cameron International Corporation.

## II.    REMAINING MATTERS IN MDL 2179.

Although the large majority of claims in MDL 2179 have been resolved, many claims remain pending on the docket.[5]  BP believes that a very large number of these pending claims are

---

[5]    In addition to the general description below of the remaining matters in MDL 2179, BP is providing (as Attachment A hereto) a good faith list with basic information on the MDL 2179 member cases that remain to be resolved as to claims against BP, including whether the actions were originally filed in or removed to the Eastern District of Louisiana or were transferred to this Court by the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407.  The parties recognize that there may be additional claimants who have claims remaining against Halliburton and/or Transocean that are not included on this list.  In particular, the list does not include cases which have been settled and voluntarily dismissed but expressly reserved and excluded claims for

subject to dismissal based upon the Court's prior orders, lack of OPA presentment, or release (including membership in the settlement classes and their attendant releases). Certain of these claims may require further proceedings, including but not limited to dispositive motion practice. Counsel will be prepared to discuss the future case management of these actions at the February 17 status conference.

### A. Cases in PTO 11 Pleading Bundles.

#### 1. Pleading Bundle A: April 20, 2010 Personal Injury and Death Claims.

Settlements have been reached with respect to all alleged personal injury and wrongful death claims arising from the explosions and fire on board the *Deepwater Horizon* on April 20, 2010. In five such actions in MDL 2179 (10-04427, 11-00263, 11-00923, 11-00945, 11-01774), however, notices of dismissal or motions to dismiss have yet to be filed.

With respect to the decedent Roy Kemp, the personal representative of Mr. Kemp's estate previously settled all claims associated with the death of Mr. Kemp with the Gulf Coast Claims Facility. Two actions in MDL 2179 (12-01895, 13-06013) are being maintained by the mother of Mr. Kemp. Because, under the Death on the High Seas Act, the personal representative of the decedent's estate is the party with the power to bring and/or settle the wrongful death claim for all potential plaintiffs, it is BP's position that the current Kemp actions are not properly pending.

Finally, three plaintiffs (Bradley Shivers, Mark Mead, and Scott Russell) have filed actions alleging that they suffered psychological injury as a result of observing the fire on the *Deepwater Horizon* in the distance from their fishing vessel and arriving on the scene to assist

---

punitive damages against Halliburton and Transocean from that dismissal. The list also does not include the remaining short-form joinders that were filed in case number 10-08888, including those joining the B3 Pleading Bundle.

with the rescue.  (10-03261)  Messrs. Shivers, Mead, and Russell do not allege any physical injury resulting from the events of April 20, 2010.[6]

## 2. Pleading Bundle B1: Non-Governmental Economic Loss and Property Damages.

The Court has identified approximately 1,000 Bundle B1 plaintiffs as compliant with Pretrial Order 60 and subject to further proceedings in MDL 2179.   (Order Regarding Compliance with PTO 60, Rec. Doc. 20996 (identifying 962 plaintiffs as compliant with PTO 60); PTO 60 Reconciliation Order, Rec, Doc. 22003 (identifying approximately 57 additional plaintiffs as compliant with PTO 60).)  Subsequently, certain PTO 60-compliant B1 plaintiffs dismissed their claims (though some expressly reserved their punitive damages claims against Halliburton and Transocean), and thus the current number of B1 plaintiffs with pending claims against BP is fewer than 1,000.  The claims of all other B1 plaintiffs have been dismissed,[7] and the Court has dismissed the B1 master complaint and has also dismissed all short-form joinders to the extent they include B1 claims.

It is BP's position that the claims of many of the remaining B1 plaintiffs are subject to dismissal through dispositive motion practice on various grounds.  These include, but are not limited to, many plaintiffs' failure to make timely presentment of their claims under OPA, prior release of plaintiffs' claims (including through membership in the E&PD Settlement Class), the unavailability of OPA claims by certain foreign plaintiffs, and the displacement of foreign

---

[6]   Although their complaint was pending in MDL 2179 at the time, the Court did not include the *Shivers* case in its list of Bundle A cases attached to Pretrial Order 25 (Rec. Doc. 983-1), and it has never been formally assigned to a pleading bundle.  For purposes of this report, however, the *Shivers* case is discussed alongside the Bundle A cases because it arises from the events of April 20, 2010.

[7]   A number of plaintiffs have filed motions for reconsideration of the dismissal of their claims by the Reconciliation Order, which are currently being briefed pursuant to the Court's briefing order (Rec. Doc. 22138).  Certain plaintiffs also filed notices of appeal of the Reconciliation Order, which are currently pending. (Rec. Docs. 22085, 22095, 22096, 22097, 22099, 22098, 22139, 22140, 22141, 22142, 22223.)

claimants' maritime law claims by OPA.[8]  Further, many if not most of the claimants who have reserved claims against Halliburton and/or Transocean will have those claims resolved through the pending settlements related to those claims, or may be subject to dismissal based upon failure to meet criteria necessary to maintain their claim.  BP, Halliburton, and Transocean will be prepared to discuss these issues at the status conference.

### 3.  Pleading Bundle B2:  RICO Claims

Four actions joined by six plaintiffs (10-4487, 10-4489, 10-2749, 10-4490) joined the Master Complaint for RICO claims, which the Court dismissed in 2011.  (Order and Reasons as to B2 Master Complaint, Rec. Doc. 3330.)  Subsequently, one additional plaintiff filed an action (11-00867) that included a RICO claim against BP.

BP believes that these RICO claims are subject to dismissal based on application of the Court's prior ruling on the RICO master complaint.

### 4.  Pleading Bundle B3:  Clean-Up, Medical Monitoring, and Post-April 20 Personal Injury Claims.

Pleading Bundle B3 currently contains the largest number of plaintiffs with claims formally pending on the MDL 2179 docket.  BP estimates that more than 200 remaining actions in MDL 2179 (some of which include large numbers of plaintiffs) plead some manner of B3 claims, and thousands of additional individuals have filed short-form joinders that identify themselves as B3 claimants or as having a claim for personal injury, fear of future injury, or medical monitoring.  BP believes, however, that a very large portion of these plaintiffs are members of the Medical Settlement Class who have released their claims and are therefore subject to dismissal as litigants in MDL 2179.  Additionally, claims within this bundle remain

---

[8]    BP also reserves all of its rights concerning its arguments that OPA displaces all forms of maritime claims.

pending against both Halliburton and Transocean.  BP, Halliburton, and Transocean will be prepared to discuss these issues and the future case management of the B3 cases at the status conference.

### 5.  Pleading Bundle C:  Public Damage Claims.

The vast majority of claims in Bundle C have been resolved and dismissed, and the Court dismissed the Voluntary Master Complaint for LGE claims on August 28, 2015.  (Rec. Doc. 15269.)  Currently, claims by three local government entities and two foreign governments remain pending and unresolved:  City of Daphne, Alabama (15-06130), the Plaquemines Parish Government (11-00916, 13-00316), the City of Treasure Island, (13-05354, 13-05360), the United Mexican States (13-01441), and the Mexican State of Yucatán (13-06649).  The claims of any qualifying LGEs against Halliburton and/or Transocean should be resolved by the pending settlements with those parties.

BP, Halliburton, and Transocean believe the State of Yucatán's claim is subject to dismissal based on application of the Court's prior orders.  In particular, the Court has dismissed similar claims by the Mexican States of Veracruz, Tamaulipas, and Quintana Roo (Rec. Docs. 4848, 11281), and the Fifth Circuit later affirmed the dismissal of those Mexican States' claims. *In re Deepwater Horizon*, 784 F.3d 1019, 1021 (5th Cir.), *cert. denied sub nom. State of Veracruz, Republic of Mexico v. BP, P.L.C.*, 136 S. Ct. 536, 193 L. Ed. 2d 427 (2015).

### 6.  Pleading Bundle D1:   Injunctive and Regulatory Claims Against Private Parties.

Two pending actions filed by two plaintiffs (10-03255 and 10-03879) joined the Master Complaint for D1 claims, which the Court dismissed in 2011.  (Order and Reasons as to D1 Master Complaint, Rec. Doc. 2784.)   BP believes that the D1 claims in these actions are subject

to dismissal based on the application of the Court's prior ruling on the D1 master complaint.

### B.  MDL 2179 Cases Not Clearly in Any Pleading Bundle.

Several actions have been consolidated with MDL 2179 that do not fall clearly within any of the established pleading bundles.  These include the following matters:

#### 1.  CSSP-Related Claims.

Several actions in MDL 2179 have been filed against BP and others that arise from the operation of the CSSP.  The actions against BP include claims filed by Christine Reitano (13-06360, 13-06362), Gilbert V. Andry, IV and The Andry Law Firm LLC (14-01647), and Jonathan Andry and The Andry Law Group (15-01781).

#### 2.  Intellectual Property/Use-of-Idea Claims.

Two member cases in MDL 2179 filed by private individuals (William Boateng, 11-01383, Aaron Wallace, 13-06153) allege that BP made use of plaintiffs' intellectual property in conducting its response to the oil spill.

Dated:  February 14, 2017

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Kristopher S. Ritter
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Jeffrey B. Clark
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005-5793
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

*Attorneys for BP Exploration & Production*
*Inc. and BP America Production Company*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2017.

                                                 /s/ Don K. Haycraft
                                                   Don K. Haycraft