UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig § <br> "Deepwater Horizon" in the § <br> Gulf of Mexico, on April 20, 2010 § <br> § <br> This document relates to: § <br> § <br> 12-97, *Bon Secour Fisheries, Inc. et al.* § <br> *v. BP Exploration Production Inc.;* § <br> cases within Pleading Bundle B1 § <br> And All Civil Actions § | MDL NO. 2179; SECTION J <br><br> JUDGE CARL J. BARBIER <br><br> MAG JUDGE SHUSHAN |

## MEMORANDUM IN SUPPORT OF
## MOTION TO GRANT OPT-OUT REVOCATION

### BACKGROUND

1.   Fertitta Hospitality, LLC ("FH") is comprised of Hilton and San Luis Resort located in Galveston Texas. Landry's Crab Shack, Inc. ("LCS") is comprised of Aquarium Restaurant, Boardwalk Inn, Cadillac Bar, Flying Dutchman, Joe's Crab Shack, Kemah Boardwalk, and Red Sushi located in Kemah, Texas.

2.   In August and September 2012, FH's and LCS's corporate counsel filed claims for FH's Hilton and LCS's Boardwalk Inn, Flying Dutchman, and Red Sushi in the Court Supervised Settlement Program ("CSSP").

3.   On October 31 and November 1, 2012, the Law Offices of A. Craig Eiland opted-out FH's San Luis Resort and LCS's Aquarium Bar, Cadillac Bar, Joe's Crab Shack, and Kemah Boardwalk.

4.   December 15, 2012 was the deadline to voluntarily revoke opt-outs (*i.e.*, revocation not subject to BP's approval).

5. On March 1, 2013, FH and LCS each received a "Notice of Closed Claim: Opt Out Claimants" from the CSSP due to the fact that our office had opted-out several claims while choosing to have other claims proceed under the Settlement Agreement.

6. On April 15, 2013, our office revoked all the opt-outs related to FH and LCS so that the related claims in the CSSP could continue to be processed.

7. April 20, 2013 was the deadline to file Short Form Joinders. Our firm did not file Short Form Joinders or Complaints on the five opted-out claims as we had no desire to pursue them since we had recently learned that they would interfere with the four claims filed in the CSSP.

8. On August 16, 2013, nearly four months after the Short Form Joinder deadline, we received official letters from BP denying our opt-out revocations. While deciding on how to handle this predicament, this Court issued an injunction on October 18, 2013 which halted the filing of documents, motions, and the like.

## ARGUMENT

9. FH and LCS were unnecessarily prejudiced by BP's actions and good cause can be shown for this Court to allow the claims to be processed under Section 8.2.5 of the Settlement Agreement. Pursuant to Section 8.2.5 of the Settlement Agreement:

> Any Economic Class Member may revoke his, her or its Opt Out from the Economic Class and thereby receive the benefit of this Economic and Property Damage Settlement up until three (3) days prior to the Fairness Hearing; or later, if the BP Parties consent in their sole and unilateral discretion as provided in 8.2.6 below; **or otherwise, if the Court so orders on good cause shown** (emphasis added).

The Settlement Agreement does not define "good cause." Thus, Claimants are left to argue the following in its attempt to effectuate revocation of its Opt-Outs on good cause shown.

2

10. FH and LCS have four claims in the CSSP and five claims that made presentment, but did not file Short Form Joinders or Complaints. Prior to any published decisions or policies regarding Multi-Facility Businesses, we were under the impression that an entity with multiple, separate and distinct businesses with separate and distinct profit and loss statements could opt-in some of those businesses while opting-out others. Acting upon this belief, counsel pursued claims to maximize the recovery of economic damages sustained by Claimants that were caused by the Deepwater Horizon Oil Spill.

11. Considering the above timeline, it is clear that good cause exists as FH and LCS were prejudiced by the CSSP's notification that their claims could not proceed in the Settlement Program, followed by BP's rejection of our Opt-Out Revocations. The timing of the notice and rejection effectively locked all nine claims in limbo as they are able to recover damages under neither the CSSP nor as an opt-out. Alternatively, if BP had timely denied the Opt-Out Revocation, Claimants would have filed Short Form Joinders or Complaints for all nine claims. Since BP was encouraging and promoting the CSSP and the Class Settlement over litigation, Claimant's counsel reasonably anticipated BP would grant the Opt-Out Revocation.

12. Alternatively, BP can remedy this situation themselves, without the Court's involvement, by allowing FH and LCS to revoke its opt-outs for these two entities so that their previously filed claims can be processed in the CSSP.

## CONCLUSION

13. With four claims stayed in the CSSP and five claims making presentment, but not filing Short For Joinders, we believe the Court, pursuant to its discretionary power granted by Section 8.2.5 of the Settlement Agreement, should overrule BP and allow revocation of FH's and LCS's opt-outs based upon the "good cause" shown. Should the

3

Court overrule BP's rejection, the four claims in the CSSP can continue to be processed under the terms of the Settlement Agreement.