UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL BY THE OIL RIG    *       10-MD-2179
         *DEEPWATER HORIZON* IN THE  *
         GULF OF MEXICO ON           *
         APRIL 20, 2010              *       Section J
                                     *
                                     *
Applies to:  10-CV-2771, 10-CV-8888 *       January 25, 2017
             10-CV-9999, 14-CV-1525 *
                                     *
* * * * * * * * * * * * * * * * * * *

TRANSCRIPT OF ORAL ARGUMENT BEFORE
THE HONORABLE JOSEPH C. WILKINSON JR.
UNITED STATES MAGISTRATE JUDGE

<u>Appearances</u>:

For Edward Wisner                Herman Herman & Katz, LLC
Donation:                        BY:   SOREN E. GISLESON, ESQ.
                                 820 O'Keefe Avenue
                                 New Orleans, Louisiana 70113


For Edward Wisner                Law Offices of Fred L. Herman
Donation:                        BY:   FRED L. HERMAN, ESQ.
                                 1010 Common Street, Suite 3000
                                 New Orleans, Louisiana 70112


For Edward Wisner                Fayard & Honeycutt, APC
Donation:                        BY:   CALVIN C. FAYARD JR., ESQ.
                                 519 Florida Avenue, SW
                                 Denham Springs, Louisiana 70726

<u>Appearances</u>:

For Edward Wisner                Leger & Shaw
Donation:                        BY:  MATT LANDRY, ESQ.
                                 935 Gravier Street, Suite 2150
                                 New Orleans, Louisiana 70112


For Waltzer Wiygul               Smith & Fawer, LLP
& Garside, LLC:                  BY:  STEPHEN M. GELÉ, ESQ.
                                      DYLAN LEACH, ESQ.
                                 201 St. Charles Avenue, Suite 3702
                                 New Orleans, Louisiana 70170


For Mark Peneguy, et al.:        Montgomery Barnett, LLP
                                 BY:  DANIEL LUND, ESQ.
                                      JOHN Y. PEARCE, ESQ.
                                 1100 Poydras Street, Suite 3300
                                 New Orleans, Louisiana 70163


Also Present:                    Zach Butterworth
                                 Mark E. Peneguy
                                 Jessica Quin
                                 Joel Waltzer
                                 Robert Wiygul


Official Court Reporter:         Toni Doyle Tusa, CCR, FCRR
                                 500 Poydras Street, Room B-275
                                 New Orleans, Louisiana 70130
                                 (504) 589-7778


Proceedings recorded by mechanical stenography using
computer-aided transcription software.

**PROCEEDINGS**

**(January 25, 2017)**

**THE COURT:**  Good morning.  Be seated, please.

This morning we have for oral argument the motion of intervenor, Waltzer Wiygul & Garside, LLC, for attorneys' fees.  Counsel, make your appearances, please.

**MR. GELÉ:**  Stephen M. Gelé and Dylan Leach, on behalf of the law firm of Smith & Fawer, representing Waltzer Wiygul & Garside.

**MR. GISLESON:**  Soren Gisleson on behalf of the donation.  I guess we will introduce each other individually.

**MR. HERMAN:**  Fred Herman, Your Honor, on behalf of the donation and the joint venture.

**THE COURT:**  Good morning.

**MR. HERMAN:**  Mr. Fayard is here as well, as well as a representative from Mr. Leger.  Mr. Gisleson will argue.

**THE COURT:**  Good morning.

**MR. HERMAN:**  Good morning.

**MR. GISLESON:**  Good morning.

**MR. FAYARD:**  Good morning.

**MR. LUND:**  Good morning, Your Honor.  Daniel Lund and John Pierce of Montgomery Barnett.  We are here on behalf of Mark E. Peneguy, Richard Peneguy, Wendell Cook, and Edward Peneguy.

**THE COURT:**  Good morning.

11:07

1          **MR. LUND:**  Good morning, sir.

2          **THE COURT:**  First, a few jurisdictional matters we

3     have to attend to, gentlemen.

4                I have a motion to intervene filed by the joint

5     venture.  For the record, let me say that consents to proceed

6     before a magistrate judge pursuant to 28 U.S.C. § 636(c) were

7     previously executed in this matter.

8                Mr. Waltzer, are you present?

9          **MR. WALTZER:**  Yes, I am.

10         **THE COURT:**  Stand.  Mr. Waltzer, you executed the

11    consent on behalf of the intervenor, Waltzer Wiygul & Garside,

12    LLC, on September 28, 2016.  It's record document 197 in

13    14-1525, also 21783 in the MDL.  Is that right, Mr. Waltzer?

14         **MR. WALTZER:**  I believe that's correct, yes.

15         **THE COURT:**  Would you like to see it to eliminate any

16    belief when you answer my question?

17         **MR. WALTZER:**  That's correct, Your Honor.

18         **THE COURT:**  Is that your signature that appears on

19    the consent form?

20         **MR. WALTZER:**  Yes, I have viewed that.

21         **THE COURT:**  Did you execute it on behalf of the

22    intervenor?

23         **MR. WALTZER:**  Yes, I did.

24         **THE COURT:**  Mr. Fred Herman.

25         **MR. HERMAN:**  Yes, Your Honor.

1    **THE COURT:**  You executed the consent form, which is
2    also 197 and the same document numbers in both the individual
3    case and the MDL, on behalf of the donation; is that right?
4            **MR. HERMAN:**  Yes, Your Honor.
5            **THE COURT:**  Is that your signature?
6            **MR. HERMAN:**  Yes, Your Honor.
7            **THE COURT:**  You were counsel of record for the
8    donation at the time you did that, right?
9            **MR. HERMAN:**  Yes, Your Honor.
10           **THE COURT:**  I now have a motion to intervene on
11   behalf of the joint venture.
12           **MR. HERMAN:**  Yes, Your Honor.
13           **THE COURT:**  It's represented that there's no
14   opposition, correct?  Does anybody have any opposition to the
15   motion to intervene?
16           **MR. GELÉ:**  Your Honor, there's no opposition to
17   either --
18           **THE COURT REPORTER:**  I'm sorry.  Tell me your name
19   again.
20           **MR. GELÉ:**  Stephen M. Gelé.
21           **THE COURT:**  Speak slowly and don't bend over.  Stand
22   up straight.  That's it.  Be erect in all manner, in all ways.
23   There you go.  Look at you.  You are beautiful now.
24           **MR. GELÉ:**  Waltzer Wiygul & Garside have no
25   objection.

11:09

1        **THE COURT:**  All right.  No objection by anybody?

2              All right.  Now I need a consent form signed on

3   behalf of the joint venture.

4        **MR. HERMAN:**  I'll be happy to do that, Your Honor.

5        **THE COURT:**  Here it is, Mr. Herman, or whoever is

6   going to sign.

7        **MR. HERMAN:**  I'll be happy to sign it, Your Honor.

8        **THE COURT:**  Happiness is so hard to achieve around

9   here, generally speaking.

10        **MR. HERMAN:**  I'm a happy guy.

11        **THE COURT:**  Just put that's on behalf of the joint

12   venture.

13        **MR. HERMAN:**  I put "for" behind my name.

14        **THE COURT:**  Okay.  Thank you.  I'm going to sign the

15   order granting the motion to intervene right now.

16        **MR. HERMAN:**  Today is the 25th, I believe.

17        **THE COURT:**  Yes, sir.  All right.  Thank you very

18   much.  Now we have the consent of everybody with an interest in

19   the attorneys' fee dispute, right?  Correct?

20        **MR. GISLESON:**  Yes, Your Honor.

21        **MR. HERMAN:**  Yes, sir.

22        **THE COURT:**  Okay.  Well, that was taken care of quite

23   expeditiously, I must say.

24              Who is going to argue this for the law firm?

25   Mr. Gelé?

 1          **MR. GELÉ:**  Yes, Your Honor.  I'm here on behalf of

 2   Waltzer Wiygul & Garside.

 3          **THE COURT:**  Are you ready to start?

 4          **MR. GELÉ:**  Yes, I am, but I was wondering if you

 5   wanted Mr. Lund to present since he is the one who asked for

 6   oral argument.  We did not.  I'm very prepared to --

 7          **THE COURT:**  You certainly don't have to say anything.

 8          **MR. GELÉ:**  I'm prepared to explain what we did in our

 9   memoranda, but I'm not sure if the Court wants to hear that or

10   if the Court wants to hear the separate issues that were

11   brought up by some of the beneficiaries.  I'm happy to present.

12          **THE COURT:**  I don't really care what order you go in.

13   Go ahead.

14          **MR. GELÉ:**  Dan?

15          **MR. LUND:**  Go ahead.

16          **MR. GELÉ:**  Okay.

17          **THE COURT:**  I have some questions to ask you first.

18          **MR. GELÉ:**  Sure.

19          **THE COURT:**  Is there any dispute that the total fee

20   owed is $6.1 million?

21          **MR. GELÉ:**  Yes, Your Honor.  My understanding is that

22   we are not -- we have not briefed that issue.

23          **THE COURT:**  What do you think the total fee owed is?

24          **MR. GELÉ:**  We do not take a position, Your Honor.

25   I've been instructed by my clients not to take a position.  We

1    provided numbers in the affidavit of Mr. Waltzer.

2              THE COURT:  All right.  Then sit down.

3         MR. GELÉ:  Thank you, Your Honor.

4              THE COURT:  Who disputes it?  What do you think the

5    total fee owed is?

6         MR. LUND:  Well, as I have pointed out in our

7    memorandum, we can't make that calculation, but we have a

8    suggestion for the Court as to what we think it is.

9              THE COURT:  You misunderstand me.  The contingency

10   fee agreements are the same in terms of calculating the --

11        MR. LUND:  In terms of paragraph 4, the percentages

12   are the same.

13             THE COURT:  Right.  So what is your position as to

14   what the total fee owed is?  Dollar sign and numbers.

15        MR. LUND:  Yes.  If we have to take a position before

16   the joint venture takes a position, it would be that the fee

17   should be based upon a settlement of the case before the case

18   was set for trial.  Therefore, it's 18 percent of --

19             THE COURT:  No, you're erroneous about that.  So what

20   is your calculation of the fee, the total fee that's owed?  We

21   have two law firms that dispute who gets what out of the fee.

22   My order was an order setting this for trial.  What is the fee?

23        MR. LUND:  18 percent of the first $10 million and

24   12 percent thereafter, provided those calculations are made on

25   the basis of what's called a discounted present cash value,

11:13

1  which has not been calculated.

2  THE COURT:  The discounted present cash value

3  argument is rejected.  What is the fee?

4  MR. LUND:  I don't have a bottom line number for you,

5  Your Honor, because I represent clients who are entitled -- the

6  burden is on the lawyers to make that calculation, show the

7  method of determination.  The client has no burden of proof or

8  burden of persuasion on that point.

9  THE COURT:  Yes, sir.  Thank you, Mr. Lund.  You can

10  sit down.

11  MR. LUND:  Thank you.

12  THE COURT:  What does the joint venture estimate the

13  total fee to be?

14  MR. GISLESON:  The joint venture agrees with

15  Your Honor, which is $6.1 million, which is 25 percent --

16  THE COURT:  So you think the fee gets calculated on

17  the basis of 25 percent of the first $10 million and 18 percent

18  of the next $20 million?

19  MR. GISLESON:  Correct, Your Honor.

20  THE COURT:  Not 18 percent of the whole $30 million?

21  MR. GISLESON:  Correct, Your Honor.

22  THE COURT:  Thank you.

23  What does the Walzter Wiygul firm argue?

24  MR. GELÉ:  Your Honor, I've been instructed not to

25  take a position as to the total calculation, but we believe

11:14

1    that that calculation would be a fair reading of the contract.

2    We do not oppose that calculation per se, nor do we oppose the

3    position of Mr. Lund.  It's the position of Waltzer Wiygul &

4    Garside, since they represent parties in this, that the Court

5    should decide the issue of the access agreement and the Court

6    should decide the issue of whether or not there should be a

7    present value calculation.

8            THE COURT:  There is going to be no present value

9    calculation.

10           MR. GELÉ:  Then, Your Honor, we believe that the

11   reading --

12           THE COURT:  There's no basis for a present value

13   calculation in any of the law that applies to this case, in my

14   view.  By the way, does everybody agree that Louisiana law

15   applies to this fee dispute?

16           MR. HERMAN:  Yes, Your Honor.

17           THE COURT:  Anybody disagree?

18           MR. GELÉ:  Yes, Your Honor.

19           THE COURT:  Mr. Lund.

20           MR. LUND:  We agree, but we think the contracts are

21   the law between the parties.

22           THE COURT:  Yes, they are.  So what do you think the

23   fee is, Mr. Lund -- I'll ask you again and try to get a direct

24   answer from you -- based on what I have told you about your

25   arguments?

1          **MR. LUND:**  I have not made a present value

2     calculation.

3          **THE COURT:**  Do you have a calculator?  There's not

4     going to be a present value calculation.  That argument is

5     rejected.

6          **MR. LUND:**  In the absence of a present value

7     calculation and we are looking at the gross amount of

8     $30 million, then the fee would be 18 percent of the first

9     $10 million, 12 percent of the remaining $20 million, payable

10    over the same time period as the settlement itself is payable,

11    but there would be subtractions from that.  There are certain

12    credits and offsets that are due as well.

13         **THE COURT:**  Look, let me ask you to make some

14    assumptions that I know you disagree with, but I disagree with

15    you.

16         **MR. LUND:**  All right.

17         **THE COURT:**  My order was an order setting this for

18    trial, so forget about the 18 of the first 10 and the 12 of the

19    20.  My order was an order setting it for trial.  There's not

20    going to be a present value discount.  I don't know of any

21    basis for that.  What is the fee?

22         **MR. LUND:**  Well, I can make you a calculation, but I

23    would have to give you the offsets and the credits that are due

24    as well.  The figures that relate to those numbers, Your Honor,

25    are peculiar and within the possession of the joint venture.

11:16

1    **THE COURT:**  All right.  I'll tell you what.  Go

2  ahead, Mr. Lund, make your arguments.  Make all your arguments.

3  Step up to the podium.

4    **MR. LUND:**  Thank you, Your Honor.  Good morning.

5    The unusual aspect of this matter that's before

6  you this morning is that the lawyers who are seeking the fees

7  in this case have not acknowledged, much less complied with

8  their obligations under Rule 1.5(a) and (c) of the Louisiana

9  Rules of Professional Conduct.  The briefing that's been given

10 to you, Your Honor, leaves this Court in no better position

11 than it leaves our client because those obligations require

12 that the amount of the fee be submitted to the client for

13 approval, along with its method of determination, and that

14 there be a full accounting for the costs that are claimed as

15 reimbursable costs.  Those two steps have not been taken.

16    **THE COURT:**  Hold on one second.

17    **MR. LUND:**  Thank you.

18    **THE COURT:**  Is the amount of costs at issue in this

19 motion?

20    **MR. LUND:**  Sure.  There's a --

21    **THE COURT:**  I have a motion for attorneys' fees.

22    **MR. LUND:**  Well, if you would look at the submissions

23 of the parties, including the motion to deposit the

24 $2.2 million, plus or minus, in the registry of the Court, it

25 was stated in that motion by the joint venture -- who at that

1   time was appearing for the donation, but it's now appearing for

2   itself -- that that amount of money included 927,000-some-odd

3   dollars of reimbursable costs.  Those costs have never been

4   broken out, broken down, nor has the detail been provided to

5   support those costs.

6           **THE COURT:**  I don't have any motion in front of me to

7   set the costs.  This is a motion for attorneys' fees.

8                 Isn't that right, Mr. Gelé?  Mr. Gelé, is that

9   right?

10          **MR. GELÉ:**  Yes, Your Honor, that is correct.  For the

11   record, Your Honor, Waltzer Wiygul & Garside is not claiming

12   costs.  That's being claimed by the JV.

13           **THE COURT:**  Right.  This is a motion for attorneys'

14   fees.

15          **MR. LUND:**  All right.  Well, then I suppose that

16   $927,000 would just remain in the registry of the Court subject

17   to applications for payment, which would be governed by

18   Rule 67.3 of this Court.

19           **THE COURT:**  I don't have anything about these costs.

20          **MR. LUND:**  I don't have any problem with that.

21           **THE COURT:**  I don't know why they would deposit it.

22   I have a motion for attorneys' fees.

23          **MR. LUND:**  Well, I want to make something really

24   clear, Your Honor, and that is that my clients are not opposed

25   to an award of attorneys' fees.  That's not the point at all.

11:19

1   The attorneys who handled these matters should be paid and

2   should be paid correctly.  Nor are we involved in and don't

3   intend to be involved in the question of whether the

4   Waltzer Wiygul contract is a valid contract or what the

5   allocation should be.  Our dog is not in that fight.

6          **THE COURT:**  I understand.

7          **MR. LUND:**  Now, let me tell this to the Court.  In

8   the papers filed by the joint venture in its motion to

9   intervene, which was just filed a week or two ago, record

10  document 22122, they state that Waltzer Wiygul's complaint does

11  not concern the amount of the fee.  I'm not sure where that

12  leads us if that is correct, but I believe that that's way too

13  narrow a view.

14          Both sets of lawyers who have appeared in this

15  case -- in the motion for attorneys' fees that was filed by

16  Waltzer Wiygul & Garside and in the motion to intervene, both

17  sets of attorneys stated, Your Honor, that they are seeking to

18  recover fees earned.  That's not my language.  That's their

19  language, "fees earned."  What I respectfully suggest to you,

20  Judge Wilkinson, is that before you can make an award of fees

21  earned, you must determine what fees earned are.  In this case,

22  we have written fee contracts which determine what those fees

23  are, as I know that you well understand.

24          Now, despite this matter having been set last

25  September 15, and despite the money being deposited on

11:21

1    September 30, and despite frankly repeated calls that the

2    attorneys simply discharge their duty to provide a statement of

3    the fees earned and the manner of determination of those

4    fees -- and, incidentally, a statement of the costs with the

5    supporting detail -- none of that has been done.  So what I

6    would --

7         **THE COURT:**  You found the materials that have been

8    submitted in connection with this motion insufficient to

9    establish --

10        **MR. LUND:**  I didn't hear the first part of what you

11   said.

12        **THE COURT:**  Do you find the submissions that have

13   been made in connection with this motion insufficient to

14   determine the amount of the fees?

15        **MR. LUND:**  Well, I hate to say I find it, but I

16   concluded that they are.

17        **THE COURT:**  Sorry.

18        **MR. LUND:**  The reason I have is this.  First of

19   all --

20        **THE COURT:**  I mean "find" in the ordinary sense.

21        **MR. LUND:**  Right.  Okay.

22        **THE COURT:**  You can make findings.

23        **MR. LUND:**  Well, I have concluded.  I think

24   Waltzer Wiygul & Garside in their motion and memorandum went a

25   long way toward trying to comply with Rule 1.5, particularly in

11:22

1    Mr. Waltzer's affidavit.  Toward the end of that affidavit --

2    in paragraph 77, I believe it is -- he made an express

3    calculation of the fees.  He showed certain offsets and

4    deductions.  He did that calculation on the basis of the higher

5    percentages, the 25 and 18 percent.  Then at footnote 1 in that

6    affidavit he said the other calculation is a calculation on the

7    basis if the case was not set for trial and it would be 18 and

8    12.  They indicated that they were comfortable with either one

9    of those outcomes.

10                  As far as the joint venture is concerned, the

11   only thing that has been presented to you, as far as I can

12   ascertain, is at page 4 of their memorandum, 29969, where they

13   simply say the following.  They say the 25 and 18 percent

14   percentages apply, quote, because some claims for physical

15   damages and restoration costs were set for trial, but that's

16   not the criterion under the contract.  Under the contract it

17   says the case must be set for trial.

18                  You held in one of your rulings -- and I cited

19   it in my reply memorandum, and it's pretty clear that the only

20   matter that was set -- as to the only matter set for trial, the

21   access agreement case, that included only contractual damages

22   and not the general damages that might be claimed on account of

23   the oil spill itself.

24                  So where does that leave the parties and the

25   Court?  I submit that it may leave the parties and the Court in

1    the position of not being able to make a clear resolution of

2    whether the case was set for trial using the language of the

3    contract because those contracts, those engagement agreements,

4    are ambiguous.  That being the case, Your Honor, Louisiana law

5    says that those types of ambiguous payment provisions -- that's

6    Articles 2056 and 2057 of the Louisiana Civil Code -- are

7    construed first against the party who provided the language of

8    the contract -- in this case it was the lawyers -- and 2057

9    says it's construed against the obligee, the party to whom the

10   monies are owed.

11           My suggestion to you is that there is truly an

12   issue in this case as to whether, quote, the case was set for

13   trial; and that in default of any attempt, really, any

14   suggestion by the other side, any presentation by the joint

15   venture that the entire matter was set for trial, that you

16   should hold that these contracts are ambiguous, they are

17   construed against the attorneys, and that the one fee that

18   unmistakably applies is the 18 percent and the 12 percent

19   numbers.  So that's our suggestion to you.

20           Then the only other thing that would have to be

21   done is that the offsets and credits would have to be applied.

22   Again, that information is in the hands of the attorneys.  It's

23   not in the hands of my clients.

24           We also have a very unique circumstance here

25   regarding the donation itself.  The donation is the party who

11:26

1    made the deposit.  The donation is the party who, through the

2    joint venture, answered the complaint of Waltzer Wiygul, and

3    now apparently the donation is unrepresented because the joint

4    venture has intervened in its own right as the real party in

5    interest.

6              I have given a lot of thought to what the

7    significance of that is at this point.  Obviously my clients

8    have a significant interest in this matter and they can tee up

9    the issue, but I do find it's odd that the donation itself is

10   no longer a party before this Court.  Now, I heard counsel say

11   that they are appearing for themselves and for the donation, so

12   maybe there's an explanation there that I'm not aware of.

13             What we had intended to do and what I will do

14   now, Judge Wilkinson, is suggest to you that you are clearly in

15   a position today, on the basis of this hearing, to make a

16   ruling on the issues that affect only the Waltzer Wiygul firm

17   versus the joint venture firm as to contract validity and

18   proper division of fees between them.

19             Beyond that, it had been our intention to

20   suggest and I will suggest that the most efficacious thing the

21   Court might do is appoint a CPA to make the calculations called

22   for by the fee agreements, ascertain the proper credits and

23   offsets, give that recommendation to the Court -- it should not

24   be all that difficult if the attorneys cooperate and provide

25   the necessary information -- and then the Court can rule on

1    what those amounts should be and will, furthermore, not have

2    any problems under Rule 67.3 as to applications for funds from

3    the registry of the Court.

4              THE COURT:  Are your clients willing to pay for that?

5              MR. LUND:  Well, I think it's not anything I have

6    discussed with them, but my suggestion would be that the cost

7    of that special master, so to speak, would come out of those

8    registry funds.

9              THE COURT:  So that's a no?

10             MR. LUND:  I'm sorry?

11             THE COURT:  That's a no?

12             MR. LUND:  Well, it's a qualified no because I

13   haven't actually addressed the point of costs.

14             THE COURT:  I interpret what you said to be no.

15             MR. LUND:  I'm sorry?

16             THE COURT:  I interpret what you said to be no.

17             MR. LUND:  Well, we would prefer another result.  Let

18   me put it that way.  Thank you.

19             THE COURT:  That further confirms my view that your

20   answer to my question was no.

21                  Response, Mr. Gelé?

22             MR. GELÉ:  Yes, Your Honor.

23             THE COURT:  What do I have in front of me here?

24             MR. GELÉ:  You have our fee application, Your Honor.

25             THE COURT:  Just fees, right?

11:29

1        **MR. GELÉ:**  Yes, Your Honor.

2        **THE COURT:**  Nothing about costs?

3        **MR. GELÉ:**  Nothing about costs because whatever costs

4    were incurred by Waltzer Wiygul & Garside were reimbursed.  We

5    have no claim for costs at this point.

6        **THE COURT:**  You represented the donation under a

7    contingency fee agreement?

8        **MR. GELÉ:**  Yes, Your Honor.

9        **THE COURT:**  You also had an agreement that BP would

10   pay certain of your fees, right?

11       **MR. GELÉ:**  BP reimbursed part of the fees that were

12   charged on the hourly basis as part of the blended fee

13   relationship that we had with the donation.  So, yes, part of

14   the fees were partially reimbursed.  Approximately 800 hours of

15   work was partially reimbursed and 1,200 hours of work was not

16   reimbursed whatsoever.

17            Your Honor, first I just make it very clear per

18   the previous proceedings that Waltzer Wiygul & Garside has no

19   quarrel with this Court's calculation of the fee.  My

20   understanding is you calculated it at 25 percent of $10 million

21   at $2.5 million, 18 percent of $20 million at $3.6 million,

22   which added together is $6.1 million.  We argue we should get

23   50 percent of that fee, which would be $3,050,000.

24       **THE COURT:**  I wouldn't waste a lot of your breath on

25   that argument.

1    **MR. GELÉ:**  Okay, Your Honor.  We also note to the

2  Court, in all honesty, that under the contract the donation is

3  due an offset.  So out of that $3,050,000 or whatever number

4  based on whatever percentage calculation this Court would do,

5  that offset should be subtracted and the difference, which at

6  50 percent would be $2.6 million --

7           **THE COURT:**  Wait.  Start over.

8           **MR. GELÉ:**  Sure, Your Honor.  The total fee that's

9  owed to all counsel Your Honor has calculated at $6.1 million.

10          **THE COURT:**  Right.

11          **MR. GELÉ:**  Waltzer Wiygul & Garside has no quarrel

12  with that.  Then, Your Honor, we believe the next step is you

13  need to determine -- and you did that based on a contingency

14  fee agreement, and I'm assuming you did that based on a

15  contingency fee agreement signed by Waltzer Wiygul & Garside.

16  A key finding here, which has been challenged by the JV, is

17  whether or not that contingency fee agreement is valid.  We

18  argue it is valid and, therefore, we should share in your

19  calculation.

20          **THE COURT:**  So what are the offsets?

21          **MR. GELÉ:**  The offset is $358,969, Your Honor.

22          **THE COURT:**  That's what has already been paid.

23          **MR. GELÉ:**  Yes, Your Honor.  That's what was

24  partially reimbursed Waltzer Wiygul & Garside and was actually

25  paid by BP, which was part of the work that was very artfully

1   done by Waltzer Wiygul & Garside was to have BP pay those fees.

2          THE COURT:   So what would that leave?  Do my math for

3   me.

4          MR. GELÉ:   Sure.  At 50 percent that would leave

5   $2,691,031.

6          THE COURT:   Forget the 50 percent.  You're not

7   getting 50 percent.  You're not getting that.  So you are

8   conceding that whatever I calculate your fee to be, subtract

9   $358,969 from?

10         MR. GELÉ:   Exactly, Your Honor, yes.

11         THE COURT:   Gotcha.

12         MR. GELÉ:   That's exactly what we are conceding.

13         THE COURT:   I understand.

14         MR. GELÉ:   You don't have to do a percentage.  We are

15  fine if you want to take it off the top, but we believe the JV

16  would probably have a quarrel with that.  So we are willing to

17  concede that you do the percentage and then you would take that

18  off.

19         THE COURT:   Okay.

20         MR. GELÉ:   Your Honor, I'm happy to address --

21         THE COURT:   I'm not doing a percentage.

22         MR. GELÉ:   Okay.  Well, then, Your Honor, I would

23  like to argue why we should receive a significant amount of the

24  $6.1 million if Your Honor does not wish to do it by a

25  percentage.

11:32

1    **THE COURT:**  I'm doing it by the *Saucier* standards.

2    **MR. GELÉ:**  Okay.  Well, Your Honor, it's our

3    understanding of the law that under *Saucier* you would look at

4    the percentage fee and you would calculate a number, and then

5    you would split that between the two parties.  You can do that

6    based on a percentage or any other methodology.

7    **THE COURT:**  I have your motion for attorneys' fees.

8    **MR. GELÉ:**  Yes, Your Honor.

9    **THE COURT:**  I have to find what is a reasonable

10   attorneys' fee for your client applying the *Saucier* factors.

11   **MR. GELÉ:**  $2.6 million, Your Honor.

12   **THE COURT:**  No, that's what I have to do.

13   **MR. GELÉ:**  Right.

14   **THE COURT:**  I understand that you have done it that

15   way, and I want you to understand you're not getting that.

16   **MR. GELÉ:**  Okay, Your Honor.

17   **THE COURT:**  Okay.

18   **MR. GELÉ:**  Well, then, Your Honor, would it be

19   helpful if I explain to the Court why we think we should get a

20   substantial fee --

21   **THE COURT:**  It might be helpful if you did that in

22   terms of the *Saucier* factors.

23   **MR. GELÉ:**  Sure, Your Honor.  Just to be clarified --

24   because I'm prepared to argue this, but I don't believe

25   Your Honor needs to hear this -- there's no issue in

11:33

1   Your Honor's mind that the contingency fee agreement signed by
2   Waltzer Wiygul & Garside was valid?
3           THE COURT:   None whatsoever.
4           MR. GELÉ:   Thank you, Your Honor.   I don't wish to
5   waste the Court's time.
6           THE COURT:   You're not wasting my time.   I have
7   nothing else to do.
8           MR. GELÉ:   Your Honor, I would note that application
9   of the *Saucier* factors supports awarding Waltzer Wiygul &
10  Garside what we estimate to be 50 percent -- the Court may not
11  accept that, but in our view it should be a substantial
12  percentage because they did approximately 50 percent of the
13  work, and their work led to approximately 50 percent of the
14  benefit.
15          THE COURT:   I could not disagree with that more.
16          MR. GELÉ:   Well, Your Honor, let me kind of present
17  you with why we look at it as though we did about half.
18  Obviously if Your Honor believes that's not accurate and if you
19  have specific quarrels with what I'm saying, I'm happy to
20  address them.
21              I think if you just look at the hours,
22  Waltzer Wiygul & Garside estimated their hours at 2,000 hours.
23  It's true that they were partially compensated for some of
24  those hours, but that is what the deduction of $358,000 is for
25  under the contract.   The JV estimated their hours at 2,500

1    hours.  If you compare those two numbers, the percentages would

2    be in the mid 40s.  So just based on the submissions of both

3    sides, neither of which were challenged --

4        **THE COURT:**  What is this 1,180 hours of uncompensated

5    time that is included in the submissions of the clients?

6        **MR. GELÉ:**  That's the 1,200 hours I was referring to,

7    Your Honor.

8        **THE COURT:**  1,180?

9        **MR. GELÉ:**  Yes.  1,180, yes, Your Honor.  So those

10   hours should be compensated.  We believe that those hours

11   should be compensated not just based on an hourly rate, but

12   because it was a contingency fee contract it should be

13   compensated based upon some proportion to the ultimate benefit

14   that was brought to the client, which was $30 million.

15       **THE COURT:**  The fact that it's a contingency fee

16   contract is one of eight different factors to be considered --

17       **MR. GELÉ:**  Yes, Your Honor.

18       **THE COURT:**  -- and not the most important one either.

19       **MR. GELÉ:**  No, it is not.  So there's a rough

20   comparing of 2,000 hours to 2,500 hours.  That 2,000 hours has

21   not been traversed in any way by the JV.  The JV admits in

22   their 2,500 hours, that included reviewing copious information

23   that was provided by Waltzer Wiygul & Garside, which would not

24   have been necessary had Waltzer Wiygul & Garside just simply

25   continued with the case, so they shouldn't be able to claim

11:35

1  those hours.  Those hours aren't exactly quantified, but my

2  take is that they weren't completely insubstantial.

3          The second factor, Your Honor, is the likelihood

4  of whether or not this employment would preclude other

5  employment by the lawyer.  In other words, what did

6  Waltzer Wiygul & Garside give up?  They gave up a lot.  They

7  are environmental lawyers.  They could have been much more

8  involved in the regular BP claims process.  They had some

9  involvement, but they totally dedicated a substantial amount of

10  their practice -- including the two lead partners, Joel Waltzer

11  and Robert Wiygul -- to the donation's claims for months and

12  months, I mean, for a total of 25 months, but at the beginning

13  they were working over 60-hour weeks.  That involvement has

14  been confirmed with affidavits from the clients, the people

15  they were interacting with.  I don't think there's any argument

16  that they dedicated their firm to this claim for a large period

17  of time that cost their ability to go out and seek other

18  clients and take on other cases.

19          THE COURT:  Would you excuse me for one minute?

20          MR. GELÉ:  Yes, Your Honor.

21          THE COURT:  Kathy, go back and get my calculator.

22          Go ahead.

23          MR. GELÉ:  The next factor, which I don't believe is

24  a major one, is the fee customarily charged.  The Court --

25          MR. HERMAN:  Your Honor, may I be excused for one

11:37

1   moment?

2            **THE COURT:**  Certainly.

3            **MR. HERMAN:**  Thank you.

4            **MR. GELÉ:**  The Court set the maximum fee on a

5   contingency fee contract in the BP case at 25 percent.

6   Obviously the percentages that this Court used to reach the

7   $6.1 million is below that.  We also cited reasonable hourly

8   rates that the courts have awarded in these cases in the

9   affidavits.  So we don't believe that any of our claim goes

10  beyond what's customarily charged in either a contingency fee

11  case in general, in a contingency fee case within the BP

12  process, or in an environmental case.

13            The next issue, which I think is very important,

14  is the amount involved and the results obtained.  Obviously the

15  amounts involved were very large as the ultimate settlement to

16  the neutral process was $30 million.  The results obtained, I

17  would argue, were excellent by Waltzer Wiygul & Garside.  They

18  were able to very creatively shift the initial attorneys' fees

19  and expert fees from the client to BP, which dramatically

20  reduced the risk to the client by bringing these cases.

21            I would note, Your Honor, that it was not at all

22  clear at the inception of responding to the BP oil spill that

23  BP would simply settle up these cases.  In the *Exxon Valdez*

24  spill, that case went on for decades before substantial amounts

25  were paid to the victims.  So at the very beginning of this

1   case it was very unclear how it was going to play out and,

2   therefore, that stratagem was very beneficial to the donation

3   and was frankly unique to environmental lawyers who were very

4   familiar with the prevalent federal statutes and the regulatory

5   scheme for them to be able to achieve that.

6           Also, through those 25 months they were able to

7   create the entire foundation of the evidence and the experts

8   that were later used by the JV when they got into the more

9   courtroom litigation and depositions.  But had that ephemeral

10  evidence not been preserved, then there would not have been any

11  evidence for the JV to bring to bear.

12          Additionally, they obtained experts, which there

13  were many, many players involved, many stakeholders in the BP

14  oil spill, and those experts may not have been around forever.

15  So they were quickly able to find highly qualified experts that

16  were later used by the JV.  Again, that foundation allowed the

17  JV to later bring the case to the neutral process and obtain a

18  $30 million settlement.

19          The next factor, Your Honor, is time

20  limitations.  They had extreme time limitations, including in

21  June of 2010, right after the spill occurred, time was of the

22  essence.  Oil was washing on the shores.  The evidence was not

23  going to exist forever, and they had to pretty much dedicate

24  their entire firm, including the two main partners, to

25  obtaining that evidence and preserving it, which later led to

1    the settlement.  It was a completely active engagement that
2    consumed their firm.
3                    The next factor, Your Honor, is the nature and
4    length of the professional relationship.  Your Honor,
5    Waltzer Wiygul & Garside had never represented the donation
6    before.  They were never promised any representation of the
7    donation afterwards.  This wasn't a long-term client that
8    lawyers would typically give a discount to.  This was going to
9    be probably a one-time case; that whatever fee they earned,
10   they would earn on this case, and then they would have to go
11   off and find different clients.
12                   We believe that that factor argues for a higher
13   fee for them because this wasn't a regular client that they
14   would have for decades.  They were totally dedicating their
15   firm and risking that when this case was over they would not be
16   able to find clients to replace this client to fund their firm.
17                   The next factor is the experience, reputation,
18   and ability of the lawyers.  These two lawyers have over
19   20 years of environmental experience.  This is what they do.
20   They are somewhat uniquely qualified for this area.  They knew
21   both the federal statutes inside and out and they knew the
22   regulatory system inside and out, and they were able to use it
23   to the advantage of the donation.
24                   The next factor, Your Honor, is whether or not
25   the fee was fixed or contingent.  Your Honor, I would beg this

11:41   1    Court not to consider simply doing an hourly calculation

2    because at the time that Waltzer Wiygul & Garside took this

3    case there was an extreme risk.  The *Exxon Valdez* case did not

4    pay off quickly.  It took years and years of --

5                **THE COURT:**  That's why sometimes people get

6    multipliers once you do the first calculation.

7                **MR. GELÉ:**  Yes, Your Honor, and we actually cited a

8    multiplier in justifying the amount of the fee that we are

9    asking for in a similar methodology used by Judge Barbier.

10   That's why we think that the fee we are asking for is

11   reasonable.

12               **THE COURT:**  Judge Barbier used a 2.34 multiplier.

13               **MR. GELÉ:**  Yes, Your Honor.  Per the calculations at

14   the end of our brief, if you use that multiplier times the

15   number of hours worked by Waltzer Wiygul times a reasonable

16   rate for their work --

17               **THE COURT:**  What do you think a reasonable rate for

18   their work is?

19               **MR. GELÉ:**  Somewhere in the 400s, Your Honor.  They

20   gave a discount for the donation.

21               **THE COURT:**  So do you have a pen?  Do you have a pen?

22               **MR. GELÉ:**  Yes, I do, Your Honor.

23               **THE COURT:**  Do you have a calculator?

24               **MR. GELÉ:**  Yes, we do, Your Honor.

25               **THE COURT:**  Take 1,180 hours times 450.  What do you

11:42

1    come up with?

2              MR. GELÉ:  We have 531,000, Your Honor.

3              THE COURT:  Multiply it by 2.34.

4              MR. GELÉ:  That's $1.2 million.  Exactly, Your Honor,

5    $1,242,540.

6              THE COURT:  Subtract $358,969.

7              MR. GELÉ:  That's $883,571, Your Honor.

8              THE COURT:  Why isn't that a reasonable fee for your

9    clients?

10             MR. GELÉ:  I think the reason why that fee is a bit

11   low, Your Honor -- I'm not going to say it's, quote,

12   unreasonable, but the reason why it's somewhat low is that that

13   fee would end up only being, using the 1.2 number, one-fifth of

14   the total fee, and I think it can certainly be argued my

15   clients did more than one-fifth of the work, and they also

16   certainly provided more than one-fifth of the benefit.

17             THE COURT:  Okay.  You can sit down.

18             MR. GELÉ:  Thank you, Your Honor.

19             THE COURT:  Response?

20             MR. GISLESON:  Good morning, Your Honor.  Soren

21   Gisleson.

22                  Going maybe in reverse chronological order by

23   points to the most recent point that you made, unless

24   Your Honor has any questions that you wish to jump into, I

25   would like to address Your Honor's most recent calculation --

1       THE COURT:  Yes, please.

2       MR. GISLESON:  -- specifically, your 2.34 multiplier

3  that you suggested or borrowed from Judge Barbier.

4       THE COURT:  Yes.

5       MR. GISLESON:  It's our opinion that such a

6  multiplier would be inappropriate in this case simply because

7  multipliers typically address issues related to risk.  There's

8  no better --

9       THE COURT:  There's a contingent fee contract in this

10 case for both of the law groups involved, correct?

11      MR. GISLESON:  It is the Cadillac of contingency fee

12 agreements, the likes of which a typical plaintiff lawyer never

13 gets ever, ever, ever.

14      THE COURT:  I'm sorry.  I'm not following you.

15      MR. GISLESON:  What it is is it's a no-risk

16 contingency fee contract in which they got paid an hourly

17 rate -- a good hourly rate -- for every hour that they worked

18 plus zero out-of-pocket expenses.  There's probably no greater

19 illustration of that example the fact that the joint venture

20 lawyers have 900-something-thousand dollars --

21      THE COURT:  How am I supposed to account for the

22 *Saucier* factors if I don't use a multiplier?

23      MR. GISLESON:  I don't think you necessarily need to

24 use a multiplier.

25      THE COURT:  You agree that there's eight *Saucier*

11:45

1    factors?

2              **MR. GISLESON:**  Correct.

3              **THE COURT:**  The first one is time and rate.

4              **MR. GISLESON:**  Correct.

5              **THE COURT:**  There's seven more.

6              **MR. GISLESON:**  Correct.

7              **THE COURT:**  How do I account for the reasonableness

8    of the fee if I don't either add or subtract from the rate

9    minus time spent accounting for the other factors?

10              **MR. GISLESON:**  Your Honor has the kind of discretion

11   to where Your Honor can go from zero to a percentage if

12   Your Honor chooses an hourly rate with a multiplier, an hourly

13   rate with no multiplier.  The issue isn't necessarily whether

14   *Saucier* factors apply.  It's a weighting that goes on, along

15   with the general context of how --

16              **THE COURT:**  Right.

17              **MR. GISLESON:**  You know, many of these *Saucier*

18   factors have to do with uncertainty and risk and being unsure

19   and being able to achieve some future result, and that just

20   wasn't the case at the time that they were engaged in their

21   administrative oversight of those particular experts on the

22   beach.

23              I'm not going to go and sort of rehash our brief

24   because we think that we have argued and articulated all the

25   individual reasons, but there's nothing that they did that

11:47

1  would justify, frankly, in our opinion one-sixth of the fee
2  simply because that would put them on par with each one of the
3  five-member joint venture law firms.

4          The compelling factor is what they are really
5  looking for is for compensation for work performed four years
6  before the settlement was perfected in this case, where they
7  don't have any legal right to any work involved in litigating
8  this case, the 40 depositions across the country, the more than
9  $900,000 worth of costs and expenses, the real true time and
10 effort that it took in litigating and almost trying this case.
11 Your Honor had a front row seat through all of it.

12         **THE COURT:**  I sure did.  That's why I know without a
13 question in my mind that if you and the joint venture get
14 five-sixths of this fee, you deserve it.  Anything else?

15         **MR. GISLESON:**  Briefly, briefly, briefly to touch on
16 the Peneguys' statements, it's telling that there's a motion
17 for fees on the table and the mover didn't request oral
18 argument.  We didn't request oral argument.  They have a real
19 standing issue in the first order.  They don't have a right to
20 the attorney fee dispute between the two parties.

21         The issue of expenses is not on the table.  It
22 will be at some future time.  We have a representative,
23 Your Honor, who is the mayor/trustee representative of the
24 Wisner Donation present if Your Honor has any questions for
25 him.  His name is Zach Butterworth.

11:49

1          THE COURT:  No.

2          MR. GISLESON:  He is here, in case needed, to further

3    confirm it's the trustee's position unequivocally that the

4    25 percent/18 percent fee rate applies to this particular

5    settlement.

6              As far as the expenses, it's the trustee's

7    position that there's an advisory committee meeting next week

8    in which the trustee is going to say, "We have reviewed these

9    expenses.  We think they are reasonable," and the trustee is

10   going to choose to put that --

11         THE COURT:  You're talking about the costs aspect,

12   the 900-something-thousand dollars?

13         MR. GISLESON:  Yes.

14         THE COURT:  That's not in front of us.

15         MR. GISLESON:  Okay.  You know, at the end of the

16   day, the Peneguys haven't filed a motion or a pleading.  They

17   have nothing on the table.  They answered an intervention that

18   named one defendant and one defendant only, and that's the

19   donation.  They have got no standing.  They just sort of came

20   out of nowhere and appeared.  That violates and tries to usurp

21   the trustee's authority, because at the end of the day it's the

22   trustee who has the responsibility to make that initial call on

23   fees and costs and everything else.  Whether the trustee

24   decides to later bring that to the advisory committee is his

25   call.

1          I think Your Honor probably knows where he is

2   headed.  I'm not going to belabor anything else unless

3   Your Honor has any questions for me.

4          **THE COURT:**  No questions.

5          **MR. GISLESON:**  Thank you.

6          **THE COURT:**  Any response by anybody?

7          **MR. GELÉ:**  Very briefly, Your Honor, if you will

8   indulge me.

9          **THE COURT:**  Sure.

10         **MR. GELÉ:**  I take from Your Honor's comments that

11  Your Honor believes that a reasonable fee would end up

12  somewhere around $900,000.  What I would suggest to Your Honor

13  is a few things why Your Honor may want to consider going a

14  little higher than that.

15         One is that based on the calculation that we

16  just did here, Your Honor, you did not give, for the 1,180

17  hours, the -- I'm sorry.  You did the multiplier times 450

18  hours times the 1,180 hours --

19         **THE COURT:**  Stop, stop, stop.

20         **MR. GELÉ:**  Excuse me?

21         **THE COURT:**  Start again.

22         **MR. GELÉ:**  Sure.  Two different sets of hours, 1,180

23  hours and 800 hours.  You did the multiplier --

24         **THE COURT:**  What are the 800 hours?

25         **MR. GELÉ:**  I'm sorry?

11:51

1    THE COURT:  What are the 800 hours you are talking

2    about?

3    MR. GELÉ:  The 800 hours are the hours that were

4    partially reimbursed by BP.

5    THE COURT:  I thought this exhibit to the affidavit

6    was for uncompensated work.

7    MR. GELÉ:  It is, Your Honor, but that work is

8    partially uncompensated.  In other words, the fee that was --

9    THE COURT:  What work, the uncompensated work?

10   MR. GELÉ:  The 800 hours.

11   THE COURT:  What 800 hours?

12   MR. GELÉ:  Well, there's 780 hours.  I'm rounding up.

13   There are 780 hours that were worked by Waltzer Wiygul &

14   Garside, and those hours were billed.  Those bills were sent to

15   BP.

16   THE COURT:  And they were paid.

17   MR. GELÉ:  And they were paid.  However, the rate on

18   those hours was not the usual rate.  They are not the rate that

19   Your Honor was suggesting.

20   THE COURT:  It was an agreed upon rate, right?

21   MR. GELÉ:  It was an agreed upon rate plus there

22   would be a contingency on top of that.

23   THE COURT:  Uh-huh.

24   MR. GELÉ:  So, Your Honor, I think to be fair you

25   should take --

11:52

1          THE COURT:  Fair?

2          MR. GELÉ:  -- that rate, that $350, and add $100 an

3    hour to it, going up to the $450 rate, and multiplying that

4    times approximately 800 hours and at least adding another

5    $80,000 or so to make this number at least reach net, after you

6    take off the $358,000, a million dollars.  The number you were

7    reaching for your calculation was $883,000, technically.  My

8    suggestion is if you consider the hours that were only

9    partially compensated, it should at least be increased to a

10   million.

11          The other thing that I would note, Your Honor,

12   is that I think there were some things that were stated by the

13   JV that I think I would like to very briefly respond to.

14          One is there was no risk because there was an

15   hourly rate.  I believe that if this Court would say that

16   because there was an hourly rate that was part of a negotiation

17   between Waltzer Wiygul & Garside and BP that protected the

18   donation as well as Waltzer Wiygul & Garside, that you would be

19   disadvantaging Waltzer Wiygul & Garside for having the

20   brilliance of negotiating that agreement with BP.  In other

21   words, they are kind of being disadvantaged for their own

22   brilliant stroke that was meant to protect their client.

23          THE COURT:  That is something.

24          Toni, would you have that last part about the

25   brilliance transcribed so I can get it laminated.

1          **MR. GELÉ:**  I'm glad I at least amused, Your Honor.

2          **THE COURT:**  I am amused by that.

3          **MR. GELÉ:**  I do believe that, in effect, they are

4     being disadvantaged because of one of their greatest

5     accomplishments within the case.  I don't believe that,

6     therefore, the Court should look at those hours as compensated

7     hours or leave a percentage factoring to go to an hourly

8     factoring because they were able to get reimbursed, which was

9     really to the benefit of the donation as much as to their

10     benefit and took a good bit of legal acumen to accomplish that.

11          So I would ask at a minimum, even using the

12     formula that Your Honor is using, that you would raise the

13     $883,000 to closer to a million or above a million based upon

14     some compensation for the differential between the hourly rate

15     that Waltzer Wiygul received that was paid by BP and the more

16     appropriate rate, which would have been about a hundred dollars

17     extra an hour.

18          Beyond that, Your Honor, I would just note that

19     I very much understand Your Honor's perception that based on

20     what you saw and experienced that you may find it reasonable

21     that four-fifths or five-sixths of the fee would go to the JV

22     rather than Waltzer Wiygul & Garside.

23          The first thing I would like to note is that the

24     first argument made by the JV is simply not belied by the

25     record.  They are claiming there's all these firms involved,

11:55

1    but if you look at actually what they submitted, it looks like

2    Mr. Gisleson did the vast majority of the work.  I mean, other

3    firms did some work, but there was almost nothing submitted

4    showing the work the other firms did.

5           My second point, Your Honor, is that I think

6    Your Honor's perception is correct.  What you saw, the filings

7    that you saw and the discovery that you saw, may suggest a

8    weighting towards the JV.  However, what Your Honor didn't see

9    was all the foundational work that was done by Waltzer Wiygul &

10   Garside, and that foundational work had to be done immediately,

11   was all-consuming.

12          **THE COURT:**  The foundational work is not reflected in

13   the submissions that your client has made?  It is.

14          **MR. GELÉ:**  Yes, Your Honor.

15          **THE COURT:**  Yes, it is.  Yes, I see it.

16          **MR. GELÉ:**  Our suggestion is that when that

17   foundational work is properly weighed, then Waltzer Wiygul &

18   Garside's proportion of the fee should be more than one-fifth

19   or one-sixth; that it should be a higher percentage because

20   that totally consumed them for a period.  It also gave all the

21   evidence and all of the legal basis that the JV would have been

22   able to run with and then eventually settle the case with the

23   help of the neutral.

24          Excuse me, Your Honor.

25          **THE COURT:**  You got compensated for the 780 hours,

11:57

1    Mr. Waltzer.  If you want to stand up and talk, why don't you

2    ask me if you can stand up and talk.  If you want your lawyer

3    to do it, then why don't you let your lawyer do it.

4              Are you finished?

5         **MR. GELÉ:**  Yes, Your Honor.  All that I would note is

6    I think at a minimum, even based on your methodology, it should

7    be somewhere over a million net.

8         **THE COURT:**  Okay.  Thank you.

9         **MR. GELÉ:**  Thank you, Your Honor.

10        **THE COURT:**  We are going to have to disagree on that.

11             Go ahead.

12        **MR. LUND:**  Thank you, Your Honor.  If you will allow

13   it, I would like to just respond briefly --

14        **THE COURT:**  Sure.

15        **MR. LUND:**  -- on four points, but very briefly, if

16   that's okay.

17        **THE COURT:**  Sure.

18        **MR. LUND:**  First of all, the cornerstone of our

19   position, the cornerstone which I know you have looked at, is

20   Rule 1.5 of the Rules of Professional Conduct, which expressly

21   state that upon termination of a representation in a contingent

22   fee matter, the lawyers shall provide the client with a written

23   statement stating the outcome of the matter and, if there's a

24   recovery, showing the remittance to the client, i.e., after the

25   fee, and the method of its determination.

1       That has not been done.  The clients in this

2   matter have never had the opportunity to check and, if

3   appropriate, traverse that statement.  I would respectfully

4   submit to Your Honor that the Court is not in a position to

5   provide that statement from the attorneys' files.

6       Second, the trustee is not the donation.  In a

7   trust where the trustee is subject to the plenary control of a

8   committee -- this has not been briefed to you, but it has now

9   been addressed by Mr. Gisleson -- that trustee is indeed

10  subject to the plenary control of that committee.

11      That committee has not acted on this fee

12  application.  It has not acted on a statement of the fee and

13  how it was determined because it's never seen such a statement.

14  The reference to the trustee's representative -- I don't know

15  if you stated his name or not, Mr. Butterworth, who is here

16  today and is an assistant city attorney -- the city attorney is

17  not the attorney for the donation, never has been.

18      Third, Your Honor, the question of my client's

19  standing -- and I know you have read all this, but I would like

20  to just highlight these points.

21      **THE COURT:**  Sure.

22      **MR. LUND:**  My clients are clients of Waltzer Wiygul &

23  Garside under their fee agreement.  They are clients of the JV

24  under their fee agreement.  The client is defined as including

25  the beneficiaries of the trust, and they will incur a

1  significant financial burden in relation to the payment of
2  these fees, they and their family.

3  　　　　　　Second, my clients and their family members and
4  their assignees were settling claimants with BP under the
5  precise terms of the BP settlement, again looking at the
6  definition of who the settling claimants were.

7  　　　　　　Third, as the clients, they are the parties and
8  frankly the only parties who have the right to receive and to
9  then approve or traverse that statement of the fee and the
10  determination thereof.

11  　　　　　　Now, perhaps the Court is indicating to us,
12  "Well, Mr. Lund, take that up with the Louisiana Attorney
13  Disciplinary Board."  I don't know.

14  　　　**THE COURT:**  I'm not indicating anything.  I'm just
15  sitting here.

16  　　　**MR. LUND:**  Well, okay.  Fine.  I don't attribute any
17  particular indications to the Court.

18  　　　**THE COURT:**  Let the record reflect that thought never
19  occurred to me.

20  　　　**MR. LUND:**  It's very unusual that a Court would be
21  calculating a fee that a group of lawyers is seeking when the
22  client, who is the party entitled to receive a statement of
23  that fee and how it is calculated, has not received that
24  statement, and there's been no compliance with the legal and
25  ethical responsibility that lawyers have.  I'm not impugning

12:01    1   anyone, but it just hasn't been done.

         2           MR. HERMAN:  Yeah, you are.

         3           MR. GISLESON:  Absolutely.  I would like one minute

         4   to respond, Your Honor.

         5           THE COURT:  Are you impugning -- go ahead, Mr. Lund.

         6   That's all right.

         7           MR. LUND:  Finally, Mr. Gisleson --

         8           THE COURT:  Is there anything uglier than this?  I've

         9   been here for 22 years.  Every time I have a fee dispute like

        10   this, it turns out to be the ugliest thing I have that day.

        11           MR. LUND:  Well, I guess it's depends on your

        12   perspective.

        13           THE COURT:  That's my perspective.

        14           MR. LUND:  Okay.

        15           THE COURT:  I have had so many of these in the last

        16   22 years that I hesitate to even go down the recollection path,

        17   but it always ends up like this.

        18           MR. LUND:  Well, there's no resistance on my clients'

        19   part to payment of a fee, that's not where we are coming

        20   from --

        21           THE COURT:  I understand.

        22           MR. LUND:  -- just that it be done correctly and that

        23   the ethical and legal responsibility is to be discharged.

        24               Finally, I understood Mr. Gisleson to make the

        25   statement that the 25/18 percent percentages were clear under

1    the fee agreements.  Well, I only suggest that the Court has to
2    enforce the entirety of the fee agreements and not just a
3    portion of it.  I won't go through the parts we haven't
4    addressed, but if you look at the access agreement provisions,
5    Section 4(a) of that agreement, it indicates that the work
6    performed on the access agreement case is to be billed monthly
7    on an hourly basis, that the contingency fee doesn't even apply
8    to that.
9              So there's a great deal of ambiguity in those
10   agreements.  To simply look at one portion of the contract
11   without the entire contract, if that's what we are doing, I
12   submit it's not the right way to proceed.  So I wanted to
13   respond to those points to make sure the record reflects our
14   position.
15             **THE COURT:**  Thank you, Mr. Lund.
16             **MR. HERMAN:**  May I be heard, Your Honor?
17             **THE COURT:**  Sure, sure.
18             **MR. HERMAN:**  Fred Herman on behalf of himself, the
19   joint venture, and -- contrary to arguments here -- the Wisner
20   Donation.
21             By the way, that's Zach Butterworth.  He is
22   executive counsel to the mayor.  He is not a city attorney or
23   an assistant city attorney.
24             Your Honor, my first point is that I thought I
25   heard Mr. Gelé argue for a $400-per-hour calculation and

1   Your Honor took $450.

2           THE COURT:  Yeah, $450.

3           MR. HERMAN:  My second point is that there was no

4   work -- none -- done by Waltzer Wiygul after we got into the

5   case and after many, many, many attempts to bring them in so

6   that we wouldn't have to spend the time getting up to speed on

7   things that they had done that were supposed to be beneficial

8   when, in fact, there was a lot that they had done that needed

9   to be addressed.

10              This fee dispute -- and I take umbrage and I

11   object to the Court's characterizations that there's been any

12   ugliness between Waltzer Wiygul or this joint venture.

13          THE COURT:  I didn't make any comment on ugliness

14   until Mr. Lund raised the perception -- mistaken -- that I had

15   insinuated something that I certainly did not intend to

16   insinuate.

17          MR. HERMAN:  I certainly appreciate that and wanted

18   to make that clear for the record.

19              Now, let's talk about his client's right to be

20   here.

21          THE COURT:  "His" is Mr. Lund?

22          MR. HERMAN:  Yes.  Rather than Mr. Lund, let's talk

23   about the couple or few Wisner folks who came in to oppose this

24   process or make -- not make an argument that we are not

25   entitled to a fee, but now that we have done something

12:05

1   unethical and that --

2           **THE COURT:**  Let me just say that -- I'm sorry.  Go

3   ahead.

4           **MR. HERMAN:**  I would like to make the record, Judge.

5           **THE COURT:**  Go ahead, please.  I'm sorry I

6   interrupted you.  I apologize.

7           **MR. HERMAN:**  Thank you.  Thank you.  Not that they

8   are objecting to any fee, they just think we breached our duty

9   to them, and they have brought charges like this against us

10  before.  This is not the first time.

11          The second and the most important where I'm

12  concerned, Mr. Lund, through his argument on behalf of these

13  few Wisner heirs -- and no other beneficiary has entered this

14  fray -- perhaps has some jurisdiction or standing vis-à-vis

15  whatever contract Mr. Wiygul and Mr. Waltzer entered into to

16  represent those Peneguys individually.  Perhaps he has some

17  standing there, but I don't know why.  The work that was done

18  by them to bring this settlement to bear is overvalued at

19  one-sixth of the fee by at least a factor of 200 percent.

20          Now, having said that, I want to be sure this is

21  on the record, and I would ask the Court to memorialize this in

22  an order because I know you have made this ruling, or I think I

23  heard it.  The trustee has indicated -- and, by the way, the

24  trustee, that issue who decides and the plenary powers and all

25  that stuff, we don't take a position on that.  They litigated

1   that with the city.  We have stayed out of that fight.  We have

2   always taken our direction from the trustee.  The trustee has

3   seen fit to approach the advisory committee.  He gets a vote of

4   the advisory committee and sometimes acts accordingly and

5   sometimes simply exercises his power and discretion to act as

6   the trustee.

7           It's a misrepresentation to say that they have

8   never seen any cost accounting or fee calculations.  Those have

9   been provided to Mr. Butterworth on behalf of the trustee and

10  they have been provided to the city attorney.  Those are who we

11  have to take direction from.  Your Honor can imagine that if

12  every single beneficiary were to try to direct us in the

13  litigation, which is exactly what Mr. Lund is arguing to you,

14  it would be an absurd outcome.

15          Third, the trustee, as we appreciate it, intends

16  to bring this issue to the board or his committee.  So I don't

17  understand why they make the argument, Judge, that (1) they

18  don't know anything about it and (2) they have never been

19  properly advised.  We will confront them and deal with them,

20  should they wish to make a complaint to disciplinary counsel,

21  with the facts and we will deal with this there.

22          For here, Your Honor, I believe the only

23  nastiness between the attorneys in this case has been as a

24  result of efforts by certain Peneguy heirs to disrupt this

25  process.  They have done it from the beginning.  They have had

1   a feud with the mayor.  They have resolved it in litigation.

2   They have entered a memorandum of understanding, and they

3   operate as they have always operated.  This isn't new to this

4   administration.  This has been the history of the Wisner

5   Donation, always some tension with the mayor.  Not our fight.

6   Thank you.

7           **MR. BUTTERWORTH:**  Your Honor, may I speak?  Zach

8   Butterworth on behalf of --

9           **THE COURT:**  Any objection?

10          **MR. GELÉ:**  No, Your Honor.

11          **MR. LUND:**  No.  I would ask Mr. Butterworth to

12   indicate who he is speaking on behalf of.

13          **MR. BUTTERWORTH:**  I'm the mayor's designee on the

14   Wisner advisory board.  We welcome the Court's written order

15   around setting of the percentage of the fee and look forward to

16   receiving that from the Court.  We think that would assuage any

17   concerns from any board members about future questions around

18   that as well as the present value calculation.  I think these

19   are arguments that certain beneficiaries have made.  There's an

20   open question.  Many of the board members are not attorneys and

21   certainly not as skilled as this Court, and we would welcome

22   that order.

23          **THE COURT:**  Anything else anybody has to say?

24          **MR. GELÉ:**  Your Honor, if I can have two sentences on

25   one very narrow thing that Mr. Herman said.  He alluded to

1    attempts by the JV to work things out with Waltzer Wiygul.

2    I'll just tell Your Honor that I think for purposes of this

3    it's irrelevant.  There's been no allegation that Waltzer

4    Wiygul & Garside or Waltzer Wiygul was terminated for cause.

5    We simply don't agree with his characterization.  Thank you,

6    Your Honor.

7              **THE COURT:**  That was four sentences.

8              **MR. GELÉ:**  I apologize, Your Honor.

9              **MR. LUND:**  I apologize to Mr. Butterworth if I called

10   him an assistant city attorney.  He is special counsel to the

11   mayor, but he is not counsel to the advisory committee or to

12   the donation itself, Your Honor.

13             I would simply ask you to look at the JV's

14   contractual agreement.  It is with the donation as its client,

15   and the donation is stated as including the beneficiaries.

16             I appreciate Mr. Butterworth's statement.  I

17   appreciate the spirit in which it was given, but I don't

18   believe that he is authorized on behalf of the donation or on

19   any of the members of the advisory committee to waive their

20   right to the accountings that are called for by the rules.

21   Thank you very much.

22             **THE COURT:**  You're welcome.

23             **MR. BUTTERWORTH:**  Your Honor, I apologize.  May I

24   respond?

25             **THE COURT:**  Sure.

12:12

1          **MR. BUTTERWORTH:**  There's no waiving of accounting in
2     anything I said.  I just asked the Court to memorialize this
3     ruling in writing around the present value as well as the
4     percentage of the contract owed.
5               **THE COURT:**  Is everybody finished?
6               **MR. GELÉ:**  Yes, Your Honor.
7               **THE COURT:**  I think you all might have a
8     misunderstanding of what's going on around here.  I have one
9     simple thing in front of me and nothing else.  I don't have the
10    history of the Wisner Donation.  I don't have any internecine
11    battles that might have been waged between the present or the
12    past mayor and the donation or any of its beneficiaries.  I
13    have none of that.  I don't even have this question of the
14    costs in front of me.  That's not in front of me.  I don't even
15    have the question of whether the joint venture's -- whatever
16    fee they think they might be entitled to is reasonable or not.
17    That's not even in front of me either.
18               I have one question in front of me:  What is the
19    amount of the fee, if any, that should be awarded to the law
20    firm of Waltzer Wiygul & Garside, LLC?  That is it.
21               Most of -- well, maybe not most.  I wasn't
22    keeping percentage calculations as you all were talking.  A lot
23    of what has been said today has nothing to do with the issue
24    that's in front of me.
25               I try -- sometimes I fail.  I try to do the

12:13

1   following when I have something to decide:  Figure out, first
2   of all, what it is you have to decide, and don't do anything
3   else.
4           So what have I got to decide today?  A motion
5   for attorneys' fees by the Waltzer Wiygul & Garside, LLC firm.
6   I just like saying "Waltzer Wiygul & Garside, LLC."  It's just
7   got a nice ring to it.  That's why I'm not going to call you
8   all "WWG."
9           Now, Mr. Butterworth --
10          **MR. BUTTERWORTH:**  Yes, sir.
11          **THE COURT:**  -- I hate to disappoint you.  There's not
12  going to be a written ruling because I'm going to rule right
13  now.  I'm going to do the best I can.  If you would like to get
14  a copy of it, you can ask Ms. Tusa.  She would be happy to make
15  you a copy.
16          The motion is granted in part and it is denied
17  in part.  It's granted insofar as it seeks an order of
18  recognizing that the Waltzer Wiygul & Garside firm is entitled
19  to fees.  It's denied insofar as it requests that that fee be
20  50 percent of the contingent fee.
21          I find that there is a different way of
22  calculating a reasonable fee when we have this kind of dispute
23  over who gets what between lawyers from a contingent fee, and
24  it's set out in the *Saucier* decision -- the one on rehearing,
25  not the original one -- that the Louisiana Supreme Court

decided a while back.

       First, I note for the record -- as required by *Archie v. Christian*, 808 F.2d 1132 (5th Cir. 1987), and *Withrow v. Roell*, 288 F.3d 199 (5th Cir. 2002) -- that written consents to proceed before the magistrate judge concerning this intervention have been received and filed in the record under the record document numbers that I previously recited and the one that was received today.

       Now, pursuant to its contingency fee agreement, Waltzer Wiygul & Garside, LLC, in this motion that's in front of me seeks an award of attorneys' fees it says it earned in prosecuting the Wisner Donation's claims against BP arising from the oil spill that occurred in April of 2010.  The motion seeks 50 percent of the total contingency fees earned in obtaining the settlement with BP in the amount of $30 million.

       The law firm of Waltzer Wiygul & Garside seeks 50 percent of the fees earned in obtaining the settlement.  The settlement occurred about two years after the Waltzer firm was discharged on July 31, 2012, and the joint venture -- which is a group of law firms including Herman Herman & Katz, Leger & Shaw, Fayard & Honeycutt, the Law Offices of Fred L. Herman, and Domengeaux Wright Roy & Edwards.  That's the joint venture. They took over representation when the Waltzer firm was discharged.  The joint venture's representation was under a nearly identical fee agreement as the one that had been entered

1    into between the donation and the Waltzer firm.

2                Now, both the joint venture and Waltzer Wiygul &

3    Garside conducted their representation of the donation pursuant

4    to these contingency fee contracts that I previously mentioned.

5    Paragraph 4(c) of both contingency fee contracts reads

6    (as read):

7                "For services rendered in connection with

8    physical damages and restoration costs as well as final

9    economic loss damages, the donation will pay attorneys a

10   contingency fee based on the gross present value of benefits

11   received by the donation pursuant to a judgment or agreement

12   involving any defendant or any entity related to the defendant

13   in the following percentages:

14               "For benefits received up to $10,000 [sic],

15   18 percent if the matter is resolved after suit but prior to a

16   signed order setting the case for trial, 25 percent if the

17   matter is resolved after the first order is signed setting the

18   case for trial;

19               "For benefits received between $10 million and

20   $50 million, 12 percent if the matter is resolved after suit

21   but prior to a signed order setting the case for trial,

22   18 percent if the matter is resolved after the first order is

23   signed setting the case for trial."

24               The contingency fee clause and the contracts of

25   representation as a whole are clear.  They are unambiguous.

12:18

1    The recitation for services rendered in connection with
2    physical damages and restoration costs as well as final
3    economic loss damages is a broad-ranging legal undertaking that
4    encompasses all elements of the work for which compensation is
5    sought in this motion.
6            I don't remember the date now, but my order
7    which is in dispute I find was an order setting this matter for
8    trial within the meaning of this agreement.  Therefore, the
9    higher percentages in paragraph 4(c) are triggered, and the fee
10   should be calculated on the basis of 25 percent of the
11   settlement amount for benefits received up to $10 million and
12   18 percent for the amounts between $10 million and $50 million.
13   The settlement amount in this case was $30 million.  Therefore,
14   the contingent fee at issue is $6.1 million.
15           I'm sorry.  I said $10,000 earlier.  I meant
16   $10 million.  The contingent fee is $6.1 million.
17           I find that the Waltzer Wiygul & Garside
18   contingency agreement is valid, and I reject the various
19   arguments that have been asserted in connection with this
20   motion regarding the alleged invalidity of the agreement.  The
21   bylaws of the donation delegate to the donation advisory
22   committee -- on which the city, through the mayor's
23   appointment, has a member -- and its secretary-treasurer/land
24   manager the authority to enter into contracts with authority
25   with attorneys and other professionals.

I find that on July 1, 2010, the committee voted
to hire Waltzer Wiygul & Garside subject to the city waiving
conflicts in two unrelated cases.  I find that the City of
New Orleans, through its then city attorney, waived the
conflict both orally and via e-mail and did so with actual
authority to do so.  The subsequent opinion issued by the city
attorney that the contract was null and void I find was
erroneous.

On September 28, 2010, the committee voted to
engage Waltzer Wiygul & Garside and authorized the donation
secretary-treasurer/land manager to sign a retainer agreement,
which she did.

On July 31, 2012, Waltzer Wiygul & Garside was
discharged without cause and the joint venture was hired to
represent the donation.

I also find that contracts for professional
services like the one between Waltzer Wiygul & Garside and the
donation are not subject to Louisiana's Public Bid Law or
Procurement Code under Louisiana Revised Statue 39:1617 and the
Louisiana attorney general's opinion 04-0284, which can be
found at 2004 WL 2843098, November 23, 2004.  The law cited by
others in this matter for the proposition that the Waltzer firm
was required to go through a bid process does not apply to
contracts with attorneys.

Now, the parties agree that Louisiana law

12:22

1    governs this dispute.  When we have a contingent fee agreement

2    with claims by more than one law firm as to entitlement to the

3    contingent fee, resolution of that for the claim of any law

4    firm that seeks some portion of the contingent fee are governed

5    by the standards set out by the Louisiana Supreme Court in

6    *Saucier v. Hayes Dairy Products, Inc.*, which was originally

7    issued at 373 So.2d 102, a 1978 decision, and then there was a

8    rehearing opinion, the same citation.

9              Essentially, to summarize, what the Louisiana

10   Supreme Court found is that only one contingency fee should be

11   paid by the client, the amount of the fee to be determined

12   according to the highest ethical contingency percentage to

13   which the client contractually agreed.  The fee should in turn

14   be allocated between or among the various attorneys involved in

15   handling the claim in question, such fee apportionment to be on

16   the basis of factors which are set forth in the Code of

17   Professional Responsibility.

18             The Louisiana Supreme Court recognized that

19   determination of this reasonable, nonexcessive fee that's owed

20   to any of the claimed lawyers is not a simple matter.  Focusing

21   alone upon the attorneys' investment of time or even

22   considering, in addition, such matters as counsel's skill, the

23   importance of the case, and other readily identifiable factors

24   does an injustice to the attorney.  What must be considered

25   instead are all of the various factors that are set out in the

Code and that the Supreme Court set out in the *Saucier* decision.

Although they divided it into eight factors, it really is more than eight.  They include:  the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee was fixed or contingent.

Now, in this case, as suggested in the first of the eight factors in *Saucier*, we begin with an assessment of the number of hours and whether the number of hours sought is reasonable, and then we move to the hourly rates to be employed.

The principals of the Waltzer Wiygul law firm, Mr. Waltzer and Mr. Wiygul, have thoroughly supported their motion with their own declarations and various exhibits attached.  One of those exhibits is a summary of the Waltzer Wiygul & Garside uncompensated work done for the Wisner

1    Donation.  It's at record document 21922-3, page 49.  The total

2    reflected is 1,180 hours.

3              Based on the overall record and evidence that's

4    been submitted in connection with this motion, I find that this

5    number of hours represents a reasonable, nonduplicative,

6    nonexcessive number of hours worked before the agreement or the

7    representation of the Waltzer Wiygul firm was terminated.  I,

8    therefore, start my evaluation of the *Saucier* factors with

9    1,180 reasonable hours expended.  That takes us to the

10   reasonable rate.

11             Mr. Waltzer is an attorney in good standing in

12   this Court, whose character, experience, and skills are

13   well-known by the Court.  He has 28 years of experience.

14   Mr. Wiygul I can say the same things about.  His experience,

15   expertise, and character are well-known to the Court.  He has

16   24 years of relevant practice in this regard.

17             Hourly rates are to be computed according to the

18   prevailing rates and the relevant legal market, which is the

19   New Orleans area market.  I have done numerous rate

20   calculations myself, and in this instance I am most affected by

21   or concerned with the rates that I set in the oil spill

22   moratorium case that came out of the BP spill in a report and

23   recommendation I sent to Judge Feldman, which he adopted on

24   June 1, 2011, where I found rates for similarly experienced

25   lawyers ranging between $415 an hour and $450 an hour to be

1    reasonable.

2              I am also influenced in this matter by

3    Judge Barbier's recent order of October 25, 2016, in the BP MDL

4    in which he applied an average blended hourly rate of $450 an

5    hour to the applying lawyers.

6              I think if you take the rates I used five years

7    ago -- six years ago almost now -- in the oil spill moratorium

8    and Judge Barbier's $450-an-hour rate calculated more recently,

9    considering the experience and the declarations of Mr. Waltzer

10   and Mr. Wiygul in this matter, that a $450-an-hour rate is

11   appropriate in this matter.

12             So I take the 1,180 hours and I multiply it by

13   $450 and that comes out to $531,000.  That's just for time and

14   labor, which is one factor in the *Saucier* evaluation.  The

15   other factors include the ones I have already mentioned, but I

16   think that three of them justify a multiplier of that base

17   amount.

18             The first factor that justifies a multiplier is

19   the likelihood that the acceptance of the particular employment

20   will preclude other employment by the lawyer.  In this instance

21   at least, that subsumes the time limitations imposed by the

22   other circumstances factor.  There was a time crunch at the

23   beginning of this, when the Waltzer Wiygul firm was involved,

24   that occupied most of the lawyers' time and had to have

25   precluded them from other employment at that time.

12:31

1    The next factor that justifies a multiplier of
2  some sort is the amount involved and the results obtained.
3  Now, the amount involved was immense.  The results obtained
4  were spectacular.  This $30 million settlement was outstanding.
5  I have my doubts about whether -- in my case at least, which
6  doesn't encompass the whole thing -- anything like that would
7  have been obtained after trial.  However, I have to say that
8  the lion's share of the spectacular result that was obtained is
9  attributable to the joint venture and not to the intervenors.
10  Some portion of it must be attributed to the Waltzer Wiygul
11  firm, but again I say that most of the successful results
12  obtained are attributable to the efforts of the joint venture.
13    The last factor that I think justifies a
14  multiplier is whether the fee is fixed or contingent.  Part of
15  this fee was fixed that the Waltzer Wiygul firm earned, but it
16  was a small part.  The contract is clear they are entitled to
17  some kind of contingent fee.  With all due respect to the
18  arguments that the joint venture has made, this was no
19  risk-free undertaking.  The risk involved in any kind of
20  contingent fee agreement is open and obvious.
21    I think those three factors justify some kind of
22  multiplier of the $531,000 base fee.  Now, again, I was
23  thinking about this in a vacuum.  I thought that doubling it
24  would be a decent multiplier.  I saw, then, that Judge Barbier,
25  in doing his more recent fee award, set on 2.34.  I'm going to

12:33

1  adopt that as a reasonable multiplier in this case considering
2  the upping that has to go on when I apply *Saucier* factors.
3          By the way, I should mention that as far as I'm
4  concerned, all of the other *Saucier* factors, they are not a
5  reason to deduct anything.  They are more or less neutral or
6  they are subsumed in the fee rates that I have already
7  permitted.  $450 an hour, that's about the highest rate we
8  authorize around here.  I think it's the highest rate I have
9  ever authorized.  I don't see any basis in the remaining
10 *Saucier* factors to make any kind of deduction.
11         So I'm going to apply the 2.34 multiplier, and
12 that would bring us to a total of $1,242,540.  As Mr. Gelé has
13 stated, that must be offset by the amounts already paid,
14 $358,969, which leaves a fee due and owing to the Waltzer
15 Wiygul law firm of $883,571.
16         Now, I further find that there's no basis or
17 reason for reducing that number to any kind of present value.
18 An $883,571 fee is a reasonable fee, which is what the *Saucier*
19 case really boils down to, whether the fee is reasonable when
20 applying the factors that are set out in that decision.
21         Now, there is no motion in front of me
22 concerning costs; therefore, I'm going to enter a partial final
23 judgment on attorneys' fees in the amount of $883,571.
24         Anything further?
25     MR. HERMAN:  Your Honor, I don't know if you have

12:36    1   considered in your calculation or in your reading how that fee
         2   is to be paid.
         3           THE COURT:  Immediately out of the registry of the
         4   Court.
         5           MR. HERMAN:  The entire --
         6           THE COURT:  The entire $883,571.
         7           MR. HERMAN:  Your Honor, that puts us having to wait
         8   21 years for our fee.
         9           THE COURT:  Yeah, I know.
        10           MR. HERMAN:  Thank you, Your Honor.
        11           THE COURT:  You're welcome.
        12               Anything else?
        13           MR. HERMAN:  No, not from me.
        14           THE COURT:  Court is in recess.
        15           THE DEPUTY CLERK:  All rise.
        16               (Proceedings adjourned.)
        17                           * * *
        18                      **CERTIFICATE**
        19           I, Toni Doyle Tusa, CCR, FCRR, Official Court
        20   Reporter for the United States District Court, Eastern District
        21   of Louisiana, certify that the foregoing is a true and correct
        22   transcript, to the best of my ability and understanding, from
        23   the record of proceedings in the above-entitled matter.
        24
        25                           *s/ Toni Doyle Tusa*
                                     Toni Doyle Tusa, CCR, FCRR
                                     Official Court Reporter

MR. BUTTERWORTH: [5]  49/6 49/12
50/22 50/25 52/9
MR. FAYARD: [1]  3/19
MR. GELÉ: [84]
MR. GISLESON: [23]  3/9 3/18 6/19
9/13 9/18 9/20 31/19 32/1 32/4 32/10
32/14 32/22 33/1 33/3 33/5 33/9 33/16
34/14 35/1 35/12 35/14 36/4 44/2
MR. HERMAN: [30]  3/11 3/14 3/17
4/24 5/3 5/5 5/8 5/11 6/3 6/6 6/9 6/12
6/15 6/20 10/15 26/24 27/2 44/1 45/15
45/17 46/2 46/16 46/21 47/3 47/6
62/24 63/4 63/6 63/9 63/12
MR. LUND: [45]  3/20 3/25 7/14 8/5
8/10 8/14 8/22 9/3 9/10 10/19 10/25
11/5 11/15 11/21 12/3 12/16 12/19
12/21 13/14 13/19 13/22 14/6 15/9
15/14 15/17 15/20 15/22 19/4 19/9
19/11 19/14 19/16 41/11 41/14 41/17
42/21 43/15 43/19 44/6 44/10 44/13
44/17 44/21 49/10 50/8
MR. WALTZER: [5]  4/8 4/13 4/16 4/19
4/22
THE COURT REPORTER: [1]  5/17
THE COURT: [177]
THE DEPUTY CLERK: [1]  63/14

<hr>

**$**

$1,242,540 [2]  31/5 62/12
$1.2 [1]  31/4
$1.2 million [1]  31/4
$10 [8]  8/23 9/17 11/9 20/20 54/19
55/11 55/12 55/16
$10 million [6]  8/23 9/17 11/9 54/19
55/11 55/16
$10,000 [2]  54/14 55/15
$100 [1]  38/2
$2,691,031 [1]  22/5
$2.2 [1]  12/24
$2.2 million [1]  12/24
$2.5 [1]  20/21
$2.6 [2]  21/6 23/11
$2.6 million [1]  23/11
$20 [3]  9/18 11/9 20/21
$20 million [3]  9/18 11/9 20/21
$3,050,000 [2]  20/23 21/3
$3.6 [1]  20/21
$30 [8]  9/20 11/8 25/14 27/16 28/18
53/15 55/13 61/4
$30 million [7]  9/20 11/8 27/16 28/18
53/15 55/13 61/4
$350 [1]  38/2
$358,000 [2]  24/24 38/6
$358,969 [4]  21/21 22/9 31/6 62/14
$400 [1]  45/25
$400-per-hour [1]  45/25
$415 [1]  59/25
$450 [9]  38/3 46/1 46/2 59/25 60/4
60/8 60/10 60/13 62/7
$450-an-hour [2]  60/8 60/10
$50 [2]  54/20 55/12
$50 million [2]  54/20 55/12
$531,000 [2]  60/13 61/22
$6.1 [8]  7/20 9/15 20/22 21/9 22/24
27/7 55/14 55/16
$6.1 million [8]  7/20 9/15 20/22 21/9
22/24 27/7 55/14 55/16
$80,000 [1]  38/5

<hr>

$883,000 [2]  38/7 39/13
$883,571 [9]  31/7 62/15 62/18 62/23
63/6
$900,000 [2]  34/9 36/12
$927,000 [1]  13/16

<hr>

**0**

0284 [1]  56/20
04-0284 [1]  56/20

<hr>

**1**

1,180 [10]  25/4 25/8 25/9 30/25 36/16
36/18 36/22 59/2 59/9 60/12
1,200 [2]  20/15 25/6
1.2 [1]  31/13
1.5 [3]  12/8 15/25 41/20
10 [1]  11/18
10-CV-2771 [1]  1/7
10-CV-8888 [1]  1/7
10-CV-9999 [1]  1/8
10-MD-2179 [1]  1/4
1010 [1]  1/19
102 [1]  57/7
1100 [1]  2/10
1132 [1]  53/3
12 [2]  11/18 16/8
12 percent [4]  8/24 11/9 17/18 54/20
14-1525 [1]  4/13
14-CV-1525 [1]  1/8
15 [1]  14/25
1525 [2]  1/8 4/13
18 [3]  11/18 16/7 20/21
18 percent [11]  8/18 8/23 9/17 9/20
11/8 16/5 16/13 17/18 54/15 54/22
55/12
197 [2]  4/12 5/2
1978 [1]  57/7
1987 [1]  53/3
199 [1]  53/4

<hr>

**2**

2,000 [3]  24/22 25/20 25/20
2,500 [3]  24/25 25/20 25/22
2.34 [5]  30/12 31/3 32/2 61/25 62/11
20 [2]  1/6 11/19
20 years [1]  29/19
200 percent [1]  47/19
2002 [1]  53/4
2004 [2]  56/21 56/21
201 [1]  2/7
2010 [5]  1/6 28/21 53/13 56/1 56/9
2011 [1]  59/24
2012 [2]  53/19 56/13
2016 [2]  4/12 60/3
2017 [2]  1/7 3/2
2056 [1]  17/6
2057 [2]  17/6 17/8
21 years [1]  63/8
2150 [1]  2/3
21783 [1]  4/13
2179 [1]  1/4
22 [2]  44/9 44/16
22122 [1]  14/10
23 [1]  56/21
24 years [1]  59/16
25 [8]  1/7 3/2 9/15 16/5 16/13 26/12
28/6 60/3
25 percent [5]  9/17 20/20 27/5 54/16
55/10
25 percent/18 percent [1]  35/4

<hr>

25/18 percent [1]  44/25
25th [1]  6/18
275 [1]  2/16
2771 [1]  1/7
28 [3]  4/12 56/9 59/13
28 U.S.C [1]  4/6
2843098 [1]  56/21
288 [1]  53/4
29969 [1]  16/12

<hr>

**3**

30 [1]  15/1
3000 [1]  1/19
31 [2]  53/19 56/13
3300 [1]  2/10
3702 [1]  2/7
373 [1]  57/7
39:1617 [1]  56/19

<hr>

**4**

40 [1]  34/8
400s [1]  30/19
40s [1]  25/2
450 [2]  30/25 36/17
49 [1]  59/1

<hr>

**5**

50 percent [11]  20/23 21/6 22/4 22/6
22/7 24/10 24/12 24/13 52/20 53/14
53/17
500 [1]  2/16
504 [1]  2/17
519 [1]  1/22
531,000 [1]  31/2
589-7778 [1]  2/17
5th [1]  53/3
5th Cir [1]  53/4

<hr>

**6**

60-hour [1]  26/13
636 [1]  4/6
67.3 [2]  13/18 19/2

<hr>

**7**

70112 [2]  1/19 2/4
70113 [1]  1/16
70130 [1]  2/17
70163 [1]  2/11
70170 [1]  2/7
70726 [1]  1/22
77 [1]  16/2
7778 [1]  2/17
780 [3]  37/12 37/13 40/25

<hr>

**8**

800 [8]  20/14 36/23 36/24 37/1 37/3
37/10 37/11 38/4
808 [1]  53/3
820 [1]  1/16
8888 [1]  1/7

<hr>

**9**

900-something-thousand [2]  32/20
35/12
927,000-some-odd [1]  13/2
935 [1]  2/3
9999 [1]  1/8

<hr>

**A**

ability [4]  26/17 29/18 58/14 63/22

able [11]  17/1 25/25 27/18 28/5 28/6
28/15 29/16 29/22 33/19 39/8 40/22
about [20]  8/19 10/24 11/18 13/19 20/2
20/3 24/17 35/11 37/2 38/24 39/16
46/19 46/23 48/18 49/17 53/18 59/14
61/5 61/23 62/7
above [2]  39/13 63/23
above-entitled [1]  63/23
absence [1]  11/6
Absolutely [1]  44/3
absurd [1]  48/14
accept [1]  24/11
acceptance [2]  58/7 60/19
access [4]  10/5 16/21 45/4 45/6
accomplish [1]  39/10
accomplishments [1]  39/5
according [2]  57/12 59/17
accordingly [1]  48/4
account [3]  16/22 32/21 33/7
accounting [4]  12/14 33/9 48/8 51/1
accountings [1]  50/20
accurate [1]  24/18
achieve [3]  6/8 28/5 33/19
acknowledged [1]  12/7
across [1]  34/8
act [1]  48/5
acted [2]  42/11 42/12
active [1]  29/1
acts [1]  48/4
actual [1]  56/5
actually [4]  19/13 21/24 30/7 40/1
acumen [1]  39/10
add [2]  33/8 38/2
added [1]  20/22
adding [1]  38/4
addition [1]  57/22
Additionally [1]  28/12
address [4]  22/20 24/20 31/25 32/7
addressed [4]  19/13 42/9 45/4 46/9
adjourned [1]  63/16
administration [1]  49/4
administrative [1]  33/21
admits [1]  25/21
adopt [1]  62/1
adopted [1]  59/23
advantage [1]  29/23
advised [1]  48/19
advisory [8]  35/7 35/24 48/3 48/4 49/14
50/11 50/19 55/21
affect [1]  18/16
affected [1]  59/20
affidavit [5]  8/1 16/1 16/1 16/6 37/5
affidavits [2]  26/14 27/9
after [11]  28/21 38/5 41/24 46/4 46/5
53/18 54/15 54/17 54/20 54/22 61/7
afterwards [1]  29/7
again [8]  5/19 10/23 17/22 28/16 36/21
43/5 61/11 61/22
against [1]  17/7 17/9 17/17 47/9 53/12
ago [3]  14/9 60/7 60/7
agree [5]  10/14 10/20 32/25 50/5 56/25
agreed [3]  37/20 37/21 57/13
agreement [25]  10/5 16/21 20/7 20/9
21/14 21/15 21/17 24/1 38/20 42/23
42/24 45/4 45/5 45/6 50/14 53/9 53/25
54/11 55/8 55/18 55/20 56/11 57/1
59/6 61/20
agreements [7]  8/10 17/3 18/2 32/12

45/1 45/2 45/10
agrees [1]  9/11
ahead [8]  7/13 7/15 12/2 26/22 41/11
44/5 47/3 47/5
aided [1]  2/20
al [1]  2/9
all [37]  5/22 5/22 6/1 6/2 6/17 8/2 11/16
12/1 12/2 13/15 13/25 15/19 18/24
21/2 21/9 27/21 33/24 34/11 39/25
40/9 40/11 40/20 40/21 41/5 41/18
42/19 44/6 47/24 51/7 51/22 52/2 52/8
55/4 57/25 61/17 62/4 63/15
all-consuming [1]  40/11
allegation [1]  50/3
alleged [1]  55/20
allocated [1]  57/14
allocation [1]  14/5
allow [1]  41/12
allowed [1]  28/16
alluded [1]  49/25
almost [3]  34/10 40/3 60/7
alone [1]  57/21
along [2]  12/13 33/14
already [4]  21/22 60/15 62/6 62/13
also [12]  2/12 4/13 5/2 17/24 20/9 21/1
27/7 28/6 31/15 40/20 56/16 60/2
Although [1]  58/3
always [4]  44/17 48/2 49/3 49/5
am [6]  4/9 7/4 32/21 39/2 59/20 60/2
ambiguity [1]  45/9
ambiguous [3]  17/4 17/5 17/16
among [1]  57/14
amount [20]  11/7 12/12 12/18 13/2
14/11 15/14 22/23 26/9 27/14 30/8
51/19 53/15 55/11 55/13 57/11 58/10
60/17 61/2 61/3 62/23
amounts [5]  19/1 27/15 27/24 55/12
62/13
amused [2]  39/1 39/2
another [2]  19/17 38/4
answer [3]  4/16 10/24 19/20
answered [2]  18/2 35/17
any [43]  4/15 5/14 7/10 10/13 11/20
13/6 13/20 17/13 17/13 17/14 19/2
23/6 25/21 26/15 27/9 28/10 29/6
31/24 34/7 34/7 34/24 36/3 36/6 43/16
46/11 46/13 47/8 48/8 49/9 49/16
49/17 50/19 51/10 51/12 51/19 54/12
54/12 57/3 57/20 61/19 62/9 62/10
62/17
anybody [5]  5/14 6/1 10/17 36/6 49/23
anyone [1]  44/1
anything [15]  7/7 13/19 19/5 34/14 36/2
43/14 44/8 48/18 49/23 51/2 52/2 61/6
62/5 62/24 63/12
APC [1]  1/21
apologize [4]  47/6 50/8 50/9 50/23
apparent [1]  58/7
apparently [1]  18/3
appearances [3]  1/13 2/1 3/6
appeared [2]  14/14 35/20
appearing [3]  13/1 13/1 18/11
appears [1]  4/18
application [3]  19/24 24/8 42/12
applications [2]  13/17 19/2
applied [2]  17/21 60/4
applies [5]  1/7 10/13 10/15 17/18 35/4
apply [6]  16/14 33/14 45/7 56/23 62/2
62/11
applying [1]  23/10 60/5 62/20

appoint [1]  18/21
appointment [1]  53/23
apportionment [1]  57/15
appreciate [4]  46/17 48/15 50/16 50/17
approach [1]  48/3
appropriate [3]  39/16 42/3 60/11
approval [1]  12/13
approve [1]  43/9
approximately [4]  20/14 24/12 24/13
38/4
APRIL [2]  1/6 53/13
April of [1]  53/13
Archie [1]  53/3
are [84]
area [2]  29/20 59/19
aren't [1]  26/1
argue [9]  3/16 6/24 9/23 20/22 21/18
22/23 23/24 27/17 45/25
argued [2]  31/14 33/24
argues [1]  29/12
arguing [1]  48/13
argument [13]  1/11 3/4 7/6 9/3 11/4
20/25 26/15 34/18 34/18 39/24 46/24
47/12 48/17
arguments [7]  10/25 12/2 12/2 45/19
49/19 55/19 61/18
arising [1]  53/12
around [6]  6/8 28/14 36/12 49/15 49/17
51/3 51/8 62/8
artfully [1]  21/25
Articles [1]  17/6
articulated [1]  33/24
as [63]  3/15 3/15 3/15 8/6 8/8 8/13
9/25 11/10 11/12 11/24 12/14 14/23
16/10 16/10 16/11 16/11 16/20 17/12
18/4 18/17 19/2 20/12 24/17 27/15
35/6 35/6 38/18 38/18 39/6 39/9 39/9
42/24 43/7 48/5 48/15 48/23 49/3
49/18 49/18 49/21 49/21 50/14 50/15
51/3 51/3 51/22 52/17 52/19 53/2
53/25 54/6 54/8 54/8 54/25 55/2 55/2
57/2 57/22 58/16 62/1 62/3 62/3 62/12
as read [1]  54/6
ascertain [2]  16/12 18/22
ask [9]  7/17 10/23 11/13 39/11 41/2
47/21 49/11 50/13 52/14
asked [2]  7/5 51/2
asking [2]  39/9 30/10
aspect [2]  12/5 35/11
asserted [1]  55/19
assessment [1]  58/17
assignees [1]  43/4
assistant [3]  42/16 45/23 50/10
assuage [1]  49/16
assuming [1]  21/14
assumptions [1]  11/14
at [56]  5/8 5/23 11/7 12/18 12/22 12/25
13/25 16/5 16/12 18/7 20/5 20/20
20/21 20/21 21/5 21/9 22/4 23/3 24/17
24/21 24/22 24/25 26/12 27/5 27/21
27/22 27/25 30/2 30/13 33/20 34/22
35/15 35/21 38/4 38/5 38/9 39/1 39/6
39/11 40/1 41/6 41/19 43/5 45/4 45/10
47/18 47/19 50/13 55/14 56/21 57/7
59/1 60/21 60/22 60/25 61/5
attached [1]  58/24
attempt [1]  17/13
attempts [2]  46/5 50/1
attend [1]  4/3
attorney [14]  34/20 42/16 42/16 42/17

## A

attorney... [10] 43/12 45/22 45/23
48/10 50/10 56/4 56/7 56/20 57/24
59/11
attorneys [12] 14/1 14/17 15/2 17/17
17/22 18/24 48/23 49/20 54/9 55/25
56/24 57/14
attorneys' [16] 3/6 6/19 12/21 13/7
13/13 13/22 13/25 14/15 23/7 23/10
27/18 42/5 52/5 53/11 57/21 62/23
attributable [2] 61/9 61/12
attribute [1] 43/16
attributed [1] 61/10
authority [4] 35/21 55/24 55/24 56/6
authorize [1] 62/8
authorized [3] 50/18 56/10 62/9
Avenue [3] 1/16 1/22 2/7
average [1] 60/4
award [4] 13/25 14/20 53/11 61/25
awarded [2] 27/8 51/19
awarding [1] 24/9
aware [1] 18/12

## B

B-275 [1] 2/16
back [2] 26/21 53/11
Barbier [4] 30/9 30/12 32/3 61/24
Barbier's [2] 60/3 60/8
Barnett [2] 2/9 3/22
base [2] 60/16 61/22
based [15] 8/17 10/24 21/4 21/13 21/14
23/6 25/2 25/11 25/13 36/15 39/13
39/19 41/6 54/10 59/3
basis [14] 8/25 9/17 10/12 11/21 16/4
16/7 18/15 20/12 40/21 45/7 55/10
57/16 62/9 62/16
battles [1] 51/11
be [91]
beach [1] 33/22
bear [2] 28/11 47/18
beautiful [1] 5/23
because [24] 9/5 12/11 16/14 17/3 18/3
19/12 20/3 23/24 24/12 25/12 29/13
30/2 32/6 33/24 34/2 35/21 38/14
38/16 39/4 39/8 40/19 42/13 47/22
52/12
been [45] 7/25 9/1 9/24 12/9 12/15
13/3 13/4 14/24 15/5 15/7 15/13 16/11
18/19 21/16 21/22 25/21 25/24 26/7
26/14 28/10 28/10 28/14 39/16 40/21
42/1 42/8 42/9 42/17 43/24 44/1 44/9
46/11 48/9 48/10 48/18 48/23 49/4
50/3 51/11 51/23 53/6 53/25 55/19
59/4 61/7
before [13] 1/11 4/6 8/15 8/17 12/5
14/20 18/10 27/24 29/6 34/6 47/10
53/5 59/6
beg [1] 29/25
begin [1] 58/17
beginning [4] 26/12 27/25 48/25 60/23
behalf [17] 3/7 3/10 3/12 3/22 4/11
4/21 5/3 5/11 6/3 6/11 7/1 45/18 47/12
48/9 49/8 49/12 50/18
behind [1] 6/13
being [9] 13/12 14/25 17/1 17/4 31/13
33/18 33/19 38/21 39/4
belabor [1] 36/2
belied [1] 39/24
belief [1] 4/16

believe [18] 4/14 6/16 9/25 10/10 14/12
16/2 27/12 29/13 34/24 35/10 36/23
27/9 29/12 38/15 39/3 39/5 48/22
50/18
believes [1] 24/18 36/11
below [1] 27/7
bend [1] 5/21
beneficial [2] 28/2 46/7
beneficiaries [5] 7/11 42/25 49/19
50/15 51/12
beneficiary [2] 47/13 48/12
benefit [5] 24/14 25/13 31/16 39/9
39/10
benefits [4] 54/10 54/14 54/19 55/11
best [2] 52/13 63/22
better [2] 12/10 32/8
between [16] 10/21 18/18 23/5 34/20
38/17 39/14 46/12 48/23 51/11 52/23
54/1 54/19 55/12 56/17 57/14 59/25
beyond [3] 18/19 27/10 39/18
bid [2] 56/18 56/23
billed [2] 37/14 45/6
bills [1] 37/14
bit [2] 31/10 39/10
blended [2] 20/12 60/4
board [5] 43/13 48/16 49/14 49/17
49/20
boils [1] 62/19
borrowed [1] 32/3
both [9] 5/2 14/14 14/16 25/2 29/21
32/10 54/2 54/5 56/5
bottom [1] 9/4
BP [22] 20/9 20/11 21/25 22/1 26/8
27/5 27/11 27/19 27/22 27/23 28/13
37/4 37/15 38/17 38/20 39/15 43/4
43/5 53/12 53/15 59/22 60/3
breached [1] 47/8
breath [1] 20/24
brief [2] 30/14 33/23
briefed [2] 7/22 42/8
briefing [1] 12/9
briefly [7] 34/15 34/15 34/15 36/7 38/13
41/13 41/15
brilliance [1] 38/20 38/25
brilliant [1] 38/22
bring [7] 28/11 28/17 35/24 46/5 47/18
48/16 62/12
bringing [1] 27/20
broad [1] 55/3
broad-ranging [1] 55/3
broken [2] 13/4 13/4
brought [3] 7/11 25/14 47/9
burden [4] 9/6 9/7 9/8 43/1
but [44] 7/4 7/9 8/7 9/25 10/20 11/11
11/14 11/22 13/1 14/12 15/15 16/15
18/9 19/6 22/15 23/24 24/11 24/24
25/11 26/1 26/9 26/12 28/9 31/12
33/25 37/7 40/1 40/3 41/15 42/8 42/19
44/1 44/17 45/4 46/25 47/18 50/1
50/17 54/15 54/21 55/6 60/15 61/11
61/15
Butterworth [9] 2/12 34/25 42/15 45/21
48/9 49/8 49/11 50/9 52/9
Butterworth's [1] 50/16
bylaws [1] 55/21

## C

Cadillac [1] 32/11
calculate [2] 22/8 23/4
calculated [7] 9/1 9/16 20/20 21/9

calculating [3] 9/19 43/21 52/22
calculation [28] 8/7 8/20 9/6 9/25 10/1
10/2 10/7 10/9 10/13 11/2 11/4 11/7
11/22 16/3 16/4 16/6 16/6 20/19 21/4
21/19 30/1 30/6 31/25 36/15 38/7
45/25 49/18 63/1
calculations [6] 8/24 18/21 30/13 48/8
51/22 59/20
calculator [3] 11/3 26/21 30/23
call [3] 35/22 35/25 52/7
called [4] 8/25 18/21 50/9 50/20
calls [1] 15/1
CALVIN [1] 1/21
came [3] 35/19 46/23 59/22
can [19] 9/9 11/22 14/20 15/22 16/11
18/8 18/25 23/5 31/14 31/17 33/11
38/25 41/2 48/11 49/24 52/13 52/14
56/20 59/14
can't [1] 8/7
care [2] 6/22 7/12
case [51] 5/3 8/17 8/17 10/13 12/7
14/15 14/21 16/7 16/17 16/21 17/2
17/4 17/8 17/12 17/12 17/22 25/25 27/5
27/11 27/11 27/12 27/24 28/1 28/17
29/9 29/10 29/15 30/3 30/3 32/6 32/10
33/20 34/6 34/8 34/10 35/2 39/5 40/22
45/6 46/5 48/23 54/14 54/18 54/21
54/23 55/13 57/23 58/16 59/22 61/5
62/1 62/19
cases [5] 26/18 27/8 27/20 27/23 56/3
cash [2] 8/25 9/2
cause [2] 50/4 56/14
CCR [3] 2/16 63/19 63/25
certain [5] 11/11 16/3 20/10 48/24
49/19
certainly [7] 7/7 27/2 31/14 31/16 46/15
46/17 49/21
CERTIFICATE [1] 63/18
certify [1] 63/21
challenged [2] 21/16 25/3
character [2] 59/12 59/15
characterization [1] 50/5
characterizations [1] 46/11
charged [4] 20/12 26/24 27/10 58/9
charges [1] 47/9
Charles [1] 2/7
check [1] 42/2
choose [1] 35/10
chooses [1] 33/12
Christian [1] 53/3
chronological [1] 31/22
Cir [2] 53/3 53/4
circumstance [1] 17/24
circumstances [2] 58/12 60/22
citation [1] 57/8
cited [4] 16/18 27/7 30/7 56/21
city [12] 42/16 42/16 45/22 45/23 48/1
48/10 50/10 55/22 56/2 56/3 56/4 56/6
Civil [1] 17/6
claim [6] 20/5 25/25 26/16 27/9 57/3
57/15
claimants [2] 43/4 43/6
claimed [4] 12/14 13/12 16/22 57/20
claiming [2] 13/11 39/25
claims [5] 16/14 26/8 26/11 53/12 57/2
clarified [1] 23/23
clause [1] 54/24
clear [9] 13/24 16/19 17/1 20/17 27/22
42/25 46/18 54/25 61/16

clearly [1] 18/14
client [22] 9/7 12/11 12/12 23/10 25/14
27/19 27/20 29/7 29/13 29/16 38/22
40/13 41/22 41/24 42/24 43/22 50/14
57/11 57/13 58/7 58/11 58/13
client's [2] 42/18 46/19
clients [19] 7/25 9/5 13/24 17/23 18/7
19/4 25/5 26/14 26/18 29/11 29/16
31/9 31/15 42/1 42/22 42/22 42/23
43/3 43/7
clients' [1] 44/18
closer [1] 39/13
Code [4] 17/6 56/19 57/16 58/1
come [2] 19/7 31/1
comes [1] 60/13
comfortable [1] 16/8
coming [1] 44/19
comment [1] 46/13
comments [1] 36/10
committee [13] 35/7 35/24 42/8 42/10
42/11 48/3 48/4 48/16 50/11 50/19
55/22 56/1 56/9
Common [1] 1/19
compare [1] 25/1
comparing [1] 25/20
compelling [1] 34/4
compensated [7] 24/23 25/10 25/11
25/13 38/9 39/6 40/25
compensation [3] 34/5 39/14 55/4
complaint [3] 14/10 18/2 48/20
completely [2] 26/2 29/1
compliance [1] 43/24
complied [1] 12/7
comply [1] 15/25
computed [1] 59/17
computer [1] 2/20
computer-aided [1] 2/20
concede [1] 22/17
conceding [2] 22/8 22/12
concern [1] 14/11
concerned [4] 16/10 47/12 59/21 62/4
concerning [2] 53/5 62/22
concerns [1] 49/17
concluded [2] 15/16 15/23
Conduct [2] 12/9 41/20
conducted [1] 54/3
confirm [1] 35/3
confirmed [1] 26/14
confirms [1] 19/19
conflict [1] 56/5
conflicts [1] 48/19
confront [1] 48/19
connection [6] 15/8 15/13 54/7 55/1
55/19 59/4
consent [5] 4/11 4/19 5/1 6/2 6/18
consents [2] 4/5 53/5
consider [3] 30/1 36/13 38/8
considered [3] 25/16 57/24 63/1
considering [3] 57/22 60/9 62/1
construed [3] 17/7 17/9 17/17
consumed [2] 29/2 40/20
consuming [1] 40/11
context [1] 33/15
contingency [24] 8/9 20/7 21/13 21/15
21/17 24/1 25/12 25/15 27/5 27/10
27/11 32/11 32/16 37/22 45/7 53/9
53/14 54/4 54/5 54/10 54/24 55/18
57/10 57/12

contingent [14] 29/25 32/9 41/21 52/20
52/23 55/14 55/16 57/1 57/3 57/4
58/15 61/14 61/17 61/20
continued [1] 25/25
contract [21] 10/1 14/4 14/4 16/16
16/16 17/3 17/8 18/17 21/2 24/25
25/12 25/16 27/5 32/9 32/16 45/10
45/11 47/15 51/4 56/7 61/16
contracts [10] 10/20 14/22 17/3 17/16
54/4 54/5 54/24 55/24 56/16 56/24
contractual [2] 16/21 50/14
contractually [1] 57/13
contrary [1] 45/19
control [2] 42/7 42/10
Cook [1] 3/23
cooperate [1] 18/24
copious [1] 25/22
copy [2] 52/14 52/15
cornerstone [2] 41/18 41/19
correct [14] 4/14 4/17 5/14 6/19 9/19
9/21 13/10 14/12 32/10 33/2 33/4 33/6
40/6 63/21
correctly [2] 14/2 44/22
cost [3] 19/6 26/17 48/8
costs [23] 12/14 12/15 12/18 13/3 13/3
13/5 13/7 13/12 13/19 15/4 16/15
19/13 20/2 20/3 20/5 34/9 35/11
35/23 51/14 54/8 55/2 62/22
could [2] 24/15 26/7
counsel [8] 3/6 5/7 18/10 21/9 45/22
48/20 50/10 50/11
counsel's [1] 57/22
country [1] 34/8
couple [1] 46/23
COURT [51] 1/1 2/16 7/9 7/10 8/8 10/4
10/5 12/10 12/24 13/16 13/18 14/7
16/25 16/25 18/10 18/21 18/23 18/25
19/3 21/2 21/4 23/19 24/10 26/24 27/4
27/6 30/1 38/15 39/6 42/4 43/11 43/17
43/20 45/1 47/22 49/16 49/21 51/2
52/25 57/5 57/10 57/18 58/1 59/12
59/13 59/15 63/4 63/14 63/19 63/20
63/25
Court's [4] 20/19 24/5 46/11 49/14
courtroom [1] 28/9
courts [1] 27/8
CPA [1] 18/21
create [1] 28/7
creatively [1] 27/18
credits [4] 11/12 11/23 17/21 18/22
criterion [1] 16/16
crunch [1] 60/22
customarily [3] 26/24 27/10 58/9
CV [4] 1/7 1/7 1/8 1/8

D

Dairy [1] 57/6
damages [7] 16/15 16/21 16/22 54/8
54/9 55/2 55/3
Dan [1] 7/14
DANIEL [2] 2/9 3/21
date [1] 55/6
day [3] 35/16 35/21 44/10
deal [3] 45/9 48/19 48/20
decades [2] 27/24 29/14
decent [1] 61/24
decide [5] 10/5 10/6 52/1 52/2 54/4
decided [1] 53/1
decides [2] 35/24 47/24
decision [4] 52/24 57/7 58/2 62/20

declarations [2] 58/23 60/9
dedicate [1] 56/23
dedicated [2] 26/9 26/16
dedicating [1] 29/14
deduct [1] 62/5
deduction [2] 24/24 62/10
DEDUCTIONS [1] 16/4
DEEPWATER [1] 1/5
default [1] 17/13
defendant [4] 35/18 35/18 54/12 54/12
defined [1] 42/24
definition [1] 43/6
delegate [1] 55/21
Denham [1] 1/22
denied [2] 52/16 52/19
depends [1] 44/11
deposit [3] 12/23 13/21 18/1
deposited [1] 14/25
depositions [2] 28/9 34/8
deserve [1] 34/14
designee [1] 49/13
despite [3] 14/24 14/25 15/1
detail [2] 13/4 15/5
determination [6] 9/7 12/13 15/3 41/25
43/10 57/19
determine [4] 14/21 14/22 15/14 21/13
determined [2] 42/13 57/11
did [26] 4/21 4/23 5/8 7/6 7/8 16/4
21/13 21/14 23/21 24/12 24/17 26/5
30/3 31/15 33/25 34/12 36/16 36/16
36/17 36/23 40/2 40/3 40/4 46/15 56/5
56/12
didn't [5] 15/10 34/17 34/18 40/8 46/13
difference [1] 21/5
different [4] 25/16 29/11 36/22 52/21
differential [1] 39/14
difficult [1] 18/24
difficulty [1] 58/5
direct [2] 10/23 48/12
direction [2] 48/2 48/11
disadvantaged [2] 38/21 39/4
disadvantaging [1] 38/19
disagree [5] 10/17 11/14 11/14 24/15
41/10
disappoint [1] 52/11
discharge [1] 15/2
discharged [4] 44/23 53/19 53/24 54/14
disciplinary [2] 43/13 48/20
discount [3] 11/20 29/8 30/20
discounted [2] 8/25 9/2
discovery [1] 40/7
discretion [2] 33/10 48/5
discussed [1] 19/6
dispute [10] 6/19 7/19 8/21 10/15 34/20
44/9 46/10 52/22 55/7 57/1
disputes [1] 8/4
disrupt [1] 48/24
DISTRICT [4] 1/1 1/2 63/20 63/20
divided [1] 58/3
division [1] 18/18
do [41] 6/4 7/23 7/24 8/4 10/2 10/2
10/22 11/3 15/12 18/9 18/13 18/13
18/21 19/23 21/4 22/2 22/14 22/17
22/24 23/5 23/12 24/7 29/19 30/6
30/17 30/21 30/21 30/22 30/23 30/24
30/25 33/7 33/18 39/3 41/3 41/3 51/23
51/25 52/2 52/13 56/6
document [5] 4/12 5/2 14/10 53/7 59/1
document 21922-3 [1] 59/1
does [9] 5/14 9/12 9/23 10/14 14/10

**D**

does... [4] 16/24 22/24 56/23 57/24
doesn't [2] 45/7 61/6
dog [1] 14/5
doing [5] 22/21 23/1 30/1 45/11 61/25
Dollar [1] 8/14
dollars [5] 13/3 32/20 35/12 38/6 39/16
Domengeaux [5] 7/3 52/22
don't [41] 5/21 7/7 12/9 9/4 11/20 13/6
13/19 13/20 13/21 14/2 22/14 23/24
24/4 26/15 26/23 27/9 32/22 32/23
33/8 34/7 34/19 39/5 41/1 41/3 42/14
43/13 43/16 47/17 47/25 48/16 48/18
50/5 50/17 51/9 51/10 51/13 51/14
52/2 55/6 62/9 62/25
donation [47] 1/15 1/18 1/21 2/3 3/11
3/13 5/3 5/8 13/1 17/25 17/25 18/1
18/3 18/9 18/11 20/6 20/13 21/2 28/2
29/5 29/7 29/23 30/20 34/24 35/19
38/18 39/9 42/6 42/17 45/20 49/5
50/12 50/14 50/15 50/18 51/10 51/12
54/1 54/3 54/9 54/11 55/21 55/21
56/10 56/15 56/18 59/1
donation's [2] 26/11 53/12
done [17] 15/5 17/21 22/1 23/14 40/9
40/10 42/1 44/1 44/2 46/4 46/7 46/8
46/25 47/17 48/25 58/25 59/19
doubling [1] 61/23
doubts [1] 61/5
down [6] 8/2 9/10 13/4 31/17 44/16
62/19
Doyle [4] 2/16 63/19 63/24 63/25
dramatically [1] 27/19
due [5] 11/12 11/23 21/3 61/17 62/14
duty [2] 15/2 47/8
DYLAN [2] 2/6 3/7

**E**

e-mail [1] 56/5
each [2] 3/11 34/2
earlier [1] 55/15
earn [1] 29/10
earned [10] 14/18 14/19 14/21 14/21
15/3 29/9 53/11 53/14 53/17 61/15
EASTERN [2] 1/2 63/20
economic [2] 54/9 55/3
Edward [5] 1/15 1/18 1/21 2/2 3/23
Edwards [1] 53/22
effect [1] 39/3
efficacious [1] 18/20
effort [1] 34/10
efforts [2] 48/24 61/12
eight [5] 25/16 32/25 58/3 58/4 58/17
either [6] 5/17 16/8 25/18 27/10 33/8
51/17
elements [1] 55/4
eliminate [1] 4/15
else [8] 24/7 34/14 35/23 36/2 49/23
51/9 52/3 63/12
employed [1] 58/20
employment [7] 26/4 26/5 58/8 58/8
60/19 60/20 60/25
encompass [1] 61/6
encompasses [1] 55/4
end [6] 16/1 30/14 31/13 35/15 35/21
36/11
ends [1] 44/17
enforce [1] 45/2
engage [1] 56/10

engaged [1] 33/20
engagement [2] 17/3 29/1
enter [2] 55/24 62/22
entered [4] 47/13 47/15 49/2 53/25
entire [6] 17/15 28/7 28/24 45/11 63/5
63/6
entirety [1] 45/2
entitled [7] 9/5 43/22 46/25 51/16 52/18
61/16 63/23
entitlement [1] 57/2
entity [1] 54/12
environmental [4] 26/7 27/12 28/3
29/19
ephemeral [1] 28/9
erect [1] 5/22
erroneous [2] 8/19 56/8
ESQ [8] 1/15 1/18 1/21 2/3 2/6 2/6 2/9
2/10
essence [1] 28/22
Essentially [1] 57/9
establish [1] 15/9
estimate [2] 9/12 24/10
estimated [2] 24/22 24/25
et [1] 2/9
ethical [3] 43/25 44/23 57/12
evaluation [2] 59/8 60/14
even [8] 39/11 41/6 44/16 45/7 51/13
51/14 51/17 57/21
eventually [1] 40/22
ever [4] 32/13 32/13 32/13 62/9
every [3] 32/17 44/9 48/12
everybody [3] 6/18 10/14 51/5
everything [1] 35/23
evidence [7] 28/7 28/10 28/11 28/22
28/25 40/21 59/3
exactly [2] 22/10 22/12 26/1 31/4 48/13
example [1] 32/19
excellent [1] 27/17
excuse [3] 26/19 36/20 40/24
excused [1] 26/25
execute [1] 4/21
executed [3] 4/7 4/10 5/1
executive [1] 45/22
exercises [1] 48/5
exhibit [1] 37/5
exhibits [2] 58/23 58/24
exist [1] 28/23
expeditiously [1] 6/23
expended [1] 59/9
expenses [4] 32/18 34/9 34/21 35/6
35/9
experience [7] 29/17 29/19 58/13 59/12
59/13 59/14 60/9
experienced [2] 39/20 59/24
expert [1] 27/19
expertise [1] 59/15
experts [5] 28/7 28/12 28/14 28/15
33/21
explain [2] 7/8 23/19
explanation [1] 18/12
express [1] 16/2
expressly [1] 41/20
extra [1] 39/17
extreme [2] 28/20 30/3
Exxon [2] 27/23 30/3

**F**

F.2d [1] 53/3
F.3d [1] 53/4
fact [3] 25/15 32/19 46/8

factor [14] 26/3 26/23 28/19 29/3 29/12
29/17 29/24 59/4 59/19 60/14 60/18
60/22 61/1 61/13
factoring [2] 39/7 39/8
factors [21] 23/10 23/22 24/9 25/16
32/22 33/1 33/9 33/14 33/18 57/16
57/23 57/25 58/3 58/17 59/8 60/15
61/21 62/2 62/4 62/10 62/20
facts [1] 48/21
fail [1] 51/25
fair [3] 10/1 37/24 38/1
familiar [1] 28/4
family [2] 43/2 43/3
far [4] 16/10 16/11 35/6 62/3
Fawer [2] 2/5 3/8
Fayard [1] 1/21 1/21 3/15 53/21
FCRR [2] 2/16 63/19 63/25
federal [2] 28/4 29/21
fee [123]
fees [35] 3/6 12/6 12/21 13/7 13/14
13/22 13/25 14/15 14/18 14/19 14/20
14/21 14/22 15/3 15/4 15/14 16/3
18/18 19/25 20/10 20/11 20/14 22/1
23/7 27/18 27/19 34/17 35/23 43/2
52/5 52/19 53/11 53/14 53/17 62/23
Feldman [1] 59/23
feud [1] 49/1
few [4] 4/2 36/13 46/23 47/13
fifth [4] 31/13 31/15 31/16 40/18
fifths [1] 39/21
fight [3] 14/5 48/1 49/5
Figure [1] 52/1
figures [1] 11/24
filed [6] 4/4 14/8 14/9 14/15 35/16 53/6
files [1] 42/5
filings [1] 40/6
final [3] 54/8 55/2 62/22
Finally [2] 44/7 44/24
financial [1] 43/1
find [18] 15/12 15/15 15/20 18/9 23/9
28/15 29/11 29/16 39/20 52/21 55/7
55/17 56/1 56/3 56/7 56/16 59/4 62/16
finding [1] 21/16
findings [1] 15/22
fine [2] 22/15 43/16
finished [2] 41/4 51/5
firm [26] 3/8 6/24 9/23 18/16 18/17
26/16 28/24 29/2 29/15 29/16 51/20
52/5 52/18 53/16 53/18 53/23 54/1
56/22 57/2 57/4 58/21 59/7 60/23
61/11 61/15 62/15
firms [6] 8/21 34/3 39/25 40/3 40/4
53/20
first [24] 4/2 7/17 8/23 9/17 11/8 11/18
15/10 15/18 17/7 20/17 30/6 33/3
34/19 39/23 39/24 41/18 45/24 47/10
52/1 53/2 54/17 54/22 58/16 60/18
fit [1] 48/3
five [4] 34/3 34/14 39/21 60/6
five-member [1] 34/3
five-sixths [2] 34/14 39/21
fixed [4] 29/25 58/15 61/14 61/15
Florida [1] 1/22
Focusing [1] 57/20
folks [1] 46/23
following [4] 16/13 32/14 52/1 54/13
footnote [1] 16/5
foregoing [1] 63/21
forever [2] 28/14 28/23
forget [2] 11/18 22/6

## F

form [3] 4/19 5/1 6/2
formula [1] 39/12
forth [1] 57/16
forward [1] 49/15
found [4] 15/7 56/21 57/10 59/24
foundation [2] 28/7 28/16
foundational [4] 40/9 40/10 40/12 40/17
four [4] 34/5 39/24 41/15 50/7
four years [1] 34/5
four-fifths [1] 39/21
frankly [4] 15/1 28/3 34/1 43/8
fray [1] 47/14
Fred [6] 1/18 1/18 3/12 4/24 45/18 53/21
free [1] 61/19
front [12] 13/6 19/23 34/11 35/14 51/9 51/14 51/14 51/17 51/18 51/24 53/10 62/21
full [1] 12/14
fund [1] 29/16
funds [2] 19/2 19/8
further [4] 19/19 35/2 62/16 62/24
furthermore [1] 19/1
future [3] 33/19 34/22 49/17

## G

Garside [46] 2/6 3/5 3/9 4/11 5/24 7/2 10/4 13/11 14/16 15/24 20/4 20/18 21/11 21/15 21/24 22/1 24/2 24/10 24/22 25/23 25/24 26/4 26/6 27/17 29/5 30/2 37/14 38/17 38/18 38/19 39/22 40/10 42/23 50/4 51/20 52/5 52/6 52/18 53/10 53/16 54/3 55/17 56/2 56/10 56/13 56/17 58/25
Garside's [1] 40/18
gave [3] 26/6 30/20 40/20
GELÉ [9] 2/6 3/7 5/20 6/25 13/8 13/8 19/21 45/25 62/12
general [3] 16/22 27/11 33/15
general's [1] 56/20
generally [1] 6/9
gentlemen [1] 4/3
get [9] 10/23 20/22 23/19 26/21 30/5 34/13 38/25 39/8 52/13
gets [5] 8/21 9/16 32/13 48/3 52/23
getting [4] 22/7 22/7 23/15 46/6
GISLESON [8] 1/15 3/10 3/16 31/21 40/2 42/9 44/7 44/24
give [5] 11/23 18/23 26/6 29/8 36/16
given [3] 12/9 18/6 50/17
glad [1] 39/1
go [21] 5/23 7/12 7/13 7/15 12/1 26/17 26/21 26/22 29/10 33/11 33/23 39/7 39/21 41/11 44/5 44/16 45/3 47/2 47/5 56/23 62/2
goes [2] 27/9 33/14
going [26] 6/6 6/14 6/24 10/8 11/4 11/20 28/1 28/23 29/8 31/11 31/22 33/23 35/8 35/10 36/2 36/13 38/3 41/10 51/8 52/7 52/12 52/12 52/13 61/25 62/11 62/22
good [14] 3/3 3/14 3/17 3/18 3/19 3/20 3/21 3/25 4/1 12/4 31/20 32/17 39/10 59/11
got [7] 28/8 32/16 35/19 40/25 46/4 52/4 52/7
Gotcha [1] 22/11
governed [2] 13/17 57/4
governs [1] 57/1
granted [2] 12/6 52/17
granting [1] 6/15
Gravier [1] 2/3
great [1] 45/9
greater [1] 32/18
greatest [1] 39/4
gross [2] 11/7 54/10
group [2] 43/21 53/20
groups [1] 32/10
guess [3] 3/11 44/11
GULF [1] 1/5
guy [1] 6/10

## H

had [20] 18/13 18/19 20/9 20/13 25/24 26/8 28/9 28/20 28/23 29/5 34/11 40/10 42/2 44/15 46/7 46/8 46/14 48/25 53/25 60/24
half [1] 24/17
handled [1] 14/1
handling [1] 57/15
hands [2] 17/22 17/23
Happiness [1] 6/8
happy [7] 6/4 6/7 6/10 7/11 22/20 24/19 52/14
hard [1] 6/8
has [43] 9/1 9/7 13/4 15/5 16/11 18/4 20/18 21/9 21/11 21/16 21/22 25/20 26/13 31/24 33/10 34/24 35/22 36/3 40/13 42/1 42/8 42/8 42/11 42/12 42/17 43/23 45/1 47/13 47/14 47/16 47/23 48/2 48/23 49/4 49/23 51/23 51/23 55/23 59/13 59/15 61/18 62/2 62/12
hasn't [1] 44/1
hate [2] 15/15 52/11
have [131]
haven't [3] 19/13 35/16 45/3
having [4] 14/24 38/19 47/20 63/7
Hayes [1] 57/6
he [20] 7/5 16/2 16/3 16/4 16/6 35/2 36/1 45/21 45/22 47/16 48/3 49/12 49/25 50/10 50/11 50/18 59/13 59/15 59/23 60/4
headed [1] 36/2
hear [4] 7/9 7/10 15/10 23/25
heard [4] 18/10 45/16 45/25 47/23
hearing [1] 18/15
heirs [2] 47/13 48/24
held [1] 16/18
help [1] 40/23
helpful [2] 23/19 23/21
here [18] 3/15 3/22 6/5 6/9 7/1 17/24 19/23 21/16 35/2 36/16 42/15 43/15 44/9 45/19 46/20 48/22 51/8 62/8
Herman [12] 1/15 1/15 1/18 3/12 4/24 6/5 45/18 49/25 53/20 53/20 53/21
hesitate [1] 44/16
higher [5] 16/4 29/12 36/14 40/19 55/9
highest [3] 57/12 62/7 62/8
highlight [1] 42/20
highly [1] 28/15
him [2] 34/25 50/10
himself [1] 45/18
hire [1] 56/2
hired [1] 56/14
his [11] 34/25 35/24 42/15 46/19 46/21 47/12 48/5 48/16 50/5 59/14 61/25
history [2] 49/4 51/10
honesty [1] 21/2
Honeycutt [2] 1/21 53/21
Honor [129]
Honor's [5] 24/1 31/25 36/10 39/19 40/6
HONORABLE [1] 1/11
HORIZON [1] 1/5
hour [11] 26/13 32/17 38/3 39/17 45/25 59/25 59/25 60/5 60/8 60/10 62/7
hourly [16] 20/12 25/11 27/7 30/1 32/16 32/17 33/12 33/12 38/15 38/16 39/7 39/14 45/7 58/19 59/17 60/4
hours [48] 20/14 20/15 24/21 24/22 24/22 24/24 24/25 25/1 25/4 25/6 25/10 25/10 25/20 25/20 25/20 25/22 26/1 26/1 30/15 30/25 36/17 36/18 36/18 36/22 36/23 36/23 36/24 37/1 37/3 37/3 37/10 37/11 37/12 37/13 37/14 37/18 38/4 38/8 39/6 39/7 40/25 58/18 58/18 59/2 59/5 59/6 59/9 60/12
how [7] 28/1 32/21 33/7 33/15 42/13 43/23 63/1
However [3] 37/17 40/8 61/7
huh [1] 37/23
hundred [1] 39/16

## I

I'll [5] 6/4 6/7 10/23 12/1 50/2
I'm [43] 5/18 6/10 6/14 7/1 7/6 7/8 7/9 7/11 14/11 18/12 19/10 19/15 21/14 22/20 22/21 23/1 23/24 24/19 24/19 31/11 32/14 32/14 33/23 36/2 36/17 36/25 37/12 39/1 43/14 43/14 43/25 47/2 47/5 47/11 49/13 52/7 52/12 52/13 55/15 61/25 62/3 62/11 62/22
I've [3] 7/25 9/24 44/8
i.e [1] 41/24
identical [1] 53/25
identifiable [1] 57/23
if [48] 7/4 7/9 7/10 8/15 12/22 14/12 16/7 18/24 22/15 22/24 23/19 23/21 24/18 24/18 24/21 25/1 30/14 32/22 33/8 33/11 34/13 34/24 36/7 38/8 38/15 40/1 41/1 41/2 41/2 41/12 41/15 41/23 42/2 42/15 45/4 45/11 48/11 49/24 50/9 51/19 52/13 54/15 54/16 54/20 54/22 58/7 60/6 62/25
illustration [1] 32/19
imagine [1] 48/11
immediately [2] 40/10 63/3
immense [1] 61/3
importance [1] 57/23
important [3] 25/18 27/13 47/11
imposed [2] 58/11 60/21
impugning [2] 43/25 44/5
in [182]
inappropriate [1] 32/6
Inc [1] 57/6
inception [1] 27/22
incidentally [1] 15/4
include [2] 58/4 60/15
included [4] 13/2 16/21 25/5 25/22
including [7] 12/23 26/10 28/20 28/24 42/24 50/15 53/20
increased [1] 38/9
incur [1] 42/25
incurred [1] 20/4
indeed [1] 42/9

**I**

indicate [1] 49/12
indicated [2] 16/8 47/23
indicates [1] 45/5
indicating [2] 43/11 43/14
indications [1] 43/17
individual [2] 5/2 33/25
individually [2] 3/11 47/16
indulge [1] 36/8
influenced [1] 60/2
information [3] 17/22 18/25 25/22
initial [2] 27/18 35/22
injustice [1] 57/24
inside [2] 29/21 29/22
insinuate [1] 46/16
insinuated [1] 46/15
insofar [2] 52/17 52/19
instance [2] 59/20 60/20
instead [1] 57/25
instructed [2] 7/25 9/24
insubstantial [1] 26/2
insufficient [2] 15/8 15/13
intend [2] 14/3 46/15
intended [1] 18/13
intends [1] 48/15
intention [1] 18/19
interacting [1] 26/15
interest [3] 6/18 18/5 18/8
internecine [1] 51/10
interpret [2] 19/14 19/16
interrupted [1] 47/6
intervene [6] 4/4 5/10 5/15 6/15 14/9
 14/16
intervened [1] 18/4
intervenor [3] 3/5 4/11 4/22
intervenors [1] 61/9
intervention [2] 35/17 53/6
into [7] 28/8 31/24 46/4 47/15 54/1
 55/24 58/3
introduce [1] 3/11
invalidity [1] 55/20
investment [1] 57/21
involved [16] 14/2 14/3 26/8 27/14
 27/15 28/13 32/10 34/7 39/25 57/14
 58/5 58/10 60/23 61/2 61/3 61/19
involvement [2] 26/9 26/13
involving [1] 54/12
irrelevant [1] 50/3
is [203]
isn't [4] 13/8 31/8 33/13 49/3
issue [15] 7/22 10/5 10/6 12/18 17/12
 18/9 23/25 27/13 33/13 34/19 34/21
 47/24 48/16 51/23 55/14
issued [2] 56/6 57/7
issues [3] 7/10 18/16 32/7
it [101]
it's [35] 4/12 5/13 8/18 10/3 13/1 16/19
 17/9 17/22 18/9 19/5 19/12 23/2 24/23
 25/15 31/11 31/12 32/5 32/15 33/14
 34/16 35/3 35/6 35/21 42/13 43/20
 44/11 45/12 48/7 50/3 52/6 52/17
 52/19 52/24 59/1 62/8
its [9] 12/13 14/8 18/4 41/25 50/14
 51/12 53/9 55/23 56/4
itself [6] 11/10 13/2 16/23 17/25 18/9
 50/12

**J**

January [2] 1/7 3/2

**Jessica [1] 2/13**

Joel [2] 2/14 26/10
JOHN [2] 2/10 3/22
joint [30] 3/13 4/4 5/11 6/3 6/11 8/16
 9/12 9/14 11/25 12/25 14/8 16/10
 17/14 18/2 18/3 18/17 32/19 34/3
 34/13 45/19 46/12 51/15 53/19 53/22
 53/24 54/2 56/14 61/9 61/12 61/18
JOSEPH [1] 1/11
JR [2] 1/11 1/21
judge [14] 1/12 4/6 14/20 18/14 30/9
 30/12 32/3 47/4 48/17 53/5 59/23 60/3
 60/8 61/24
Judge Barbier [3] 30/12 32/3 61/24
Judge Barbier's [2] 60/3 60/8
Judge Feldman [1] 59/23
Judge Wilkinson [2] 14/20 18/14
judgment [2] 54/11 62/23
July [3] 53/19 56/1 56/13
July 1 [1] 56/1
July 31 [2] 53/19 56/13
jump [1] 31/24
June [2] 28/21 59/24
June 1 [1] 59/24
jurisdiction [1] 47/14
jurisdictional [1] 4/2
just [27] 6/11 13/16 14/9 19/25 20/17
 23/23 24/21 25/2 25/11 25/24 33/19
 35/19 36/16 39/18 41/13 42/20 43/14
 44/1 44/22 45/2 47/2 47/8 50/2 51/2
 52/6 52/6 60/13
justifies [3] 60/18 61/1 61/13
justify [3] 34/1 60/16 61/21
justifying [1] 30/8
JV [17] 13/12 21/16 22/15 24/25 25/21
 25/21 28/8 28/11 28/16 28/17 38/13
 39/21 39/24 40/8 40/21 42/23 50/1
JV's [1] 50/13

**K**

Kathy [1] 26/21
Katz [2] 1/15 53/20
keeping [1] 51/22
key [1] 21/16
kind [9] 24/16 33/10 38/21 52/22 61/17
 61/19 61/21 62/10 62/17
knew [2] 29/20 29/21
know [16] 11/14 11/20 13/21 14/23
 33/17 34/12 35/15 41/19 42/14 42/19
 43/13 47/17 47/22 48/18 62/25 63/9
known [2] 59/13 59/15
knows [1] 36/1

**L**

labor [2] 58/4 60/14
laminated [1] 38/25
land [2] 55/23 56/11
LANDRY [1] 2/3
language [4] 14/18 14/19 17/2 17/7
large [2] 26/16 27/15
last [4] 14/24 38/24 44/15 61/13
later [5] 28/8 28/16 28/17 28/25 35/24
law [22] 1/18 3/8 6/24 8/21 10/13 10/14
 10/21 17/4 23/3 32/10 34/3 51/19
 53/16 53/20 53/21 56/18 56/21 56/25
 57/2 57/3 58/21 62/15
lawyer [5] 26/5 32/12 41/2 41/3 58/9
 58/14 60/20
lawyers [18] 9/6 12/6 14/14 17/8 26/7
 28/3 29/18 29/18 29/18 32/20 41/22

**43/21 43/25 52/23 57/20 58/14 59/25**

 60/5
lawyers' [1] 60/24
LEACH [2] 2/6 3/7
lead [1] 26/10
leads [1] 14/12
least [7] 38/4 38/5 38/9 39/1 47/19
 60/21 61/5
leave [5] 16/24 16/25 22/2 22/4 39/7
leaves [1] 12/10 12/11 62/14
led [2] 24/13 28/25
legal [9] 34/7 39/10 40/21 43/24 44/23
 55/3 58/6 58/10 59/18
Leger [3] 2/2 3/16 53/20
length [2] 29/4 58/12
less [2] 12/7 62/5
let [8] 4/5 11/13 14/7 19/17 24/16 41/3
 43/18 47/2
let's [2] 46/19 46/22
like [17] 4/15 22/23 31/25 38/13 39/23
 40/1 41/13 42/19 44/3 44/9 44/17 47/4
 47/9 52/6 52/13 56/17 61/6
likelihood [3] 26/3 58/7 60/19
likes [1] 32/12
limitations [4] 28/20 28/20 58/11 60/21
line [1] 9/4
lion's [1] 61/8
litigated [1] 47/25
litigating [2] 34/7 34/10
litigation [3] 28/9 48/13 49/1
little [1] 36/14
LLC [8] 1/15 2/6 3/5 4/12 51/20 52/5
 52/6 53/10
LLP [2] 2/5 2/9
locality [1] 58/9
long [2] 15/25 29/7
long-term [1] 29/7
longer [1] 18/10
look [12] 5/23 11/13 12/22 23/3 24/17
 24/21 39/6 40/1 45/4 45/10 49/15
 50/13
looked [1] 41/19
looking [3] 11/7 34/5 43/5
looks [1] 40/1
loss [2] 54/9 55/3
lot [5] 18/6 20/24 26/6 46/8 51/22
LOUISIANA [21] 1/2 1/16 1/19 1/22 2/4
 2/7 2/11 2/17 10/14 12/8 17/4 17/6
 43/12 52/25 56/19 56/20 56/25 57/5
 57/9 57/18 63/21
Louisiana's [1] 56/18
low [2] 31/11 31/12
LUND [16] 2/9 3/21 7/5 9/9 10/3 10/19
 10/23 12/2 43/12 44/5 45/15 46/14
 46/21 46/22 47/12 48/13

**M**

made [11] 8/24 11/1 15/13 16/2 18/1
 31/23 39/24 40/13 47/22 49/19 61/18
magistrate [3] 1/12 4/6 53/5
mail [1] 56/5
main [1] 28/24
major [1] 26/24
majority [1] 40/2
make [27] 3/6 8/7 9/6 11/13 11/22 12/2
 12/2 12/23 14/20 15/22 17/1 18/15
 18/21 20/17 35/22 38/5 44/24 45/13
 46/13 46/18 46/24 46/24 47/4 48/17
 48/20 52/14 62/10
manager [2] 55/24 56/11

# M

manner [2]  5/22 15/3
many [9]  28/13 28/13 28/13 33/17
44/15 46/5 46/5 46/5 49/20
Mark [3]  2/9 2/13 3/23
market [2]  59/18 59/19
master [1]  19/7
materials [1]  15/7
math [1]  22/2
MATT [1]  2/3
matter [21]  4/7 12/5 14/24 16/20 16/20
17/15 18/8 41/22 41/23 42/2 54/15
54/17 54/20 54/22 55/7 56/22 57/20
60/2 60/10 60/1 63/23
matters [3]  4/2 14/1 57/22
maximum [1]  27/4
may [10]  16/25 24/10 26/25 28/14
36/13 39/20 40/7 45/16 49/7 50/23
maybe [3]  18/12 31/22 51/21
mayor [6]  34/23 45/22 49/1 49/5 50/11
51/12
mayor's [2]  49/13 55/22
mayor/trustee [1]  34/23
MD [1]  1/4
MDL [3]  4/13 5/3 60/3
me [27]  4/5 5/18 8/9 11/13 13/6 14/7
19/18 19/23 22/3 24/16 26/19 36/3
36/8 36/20 40/24 41/2 43/19 47/2 51/9
51/14 51/14 51/17 51/18 51/24 53/11
62/21 63/13
mean [3]  15/20 26/12 40/2
meaning [1]  55/8
meant [2]  38/22 55/15
mechanical [1]  2/19
meeting [1]  35/7
member [2]  34/3 55/23
members [4]  43/3 49/17 49/20 50/19
memoranda [1]  7/9
memorandum [5]  8/7 15/24 16/12
16/19 49/2
memorialize [2]  47/21 51/2
mention [1]  62/3
mentioned [2]  54/4 60/15
method [3]  9/7 12/13 41/25
methodology [3]  23/6 30/9 41/6
MEXICO [1]  1/5
mid [1]  25/2
might [6]  16/22 18/21 23/21 51/7 51/11
51/16
million [40]  7/20 8/23 9/15 9/17 9/18
9/20 11/8 11/9 11/9 12/24 20/20 20/21
20/21 20/21 20/22 21/6 21/9 22/24
23/11 25/14 27/7 27/16 28/18 31/4
38/6 38/10 39/13 39/13 41/7 53/15
54/19 54/20 54/21 55/12 55/12 55/13
55/14 55/16 55/16 61/4
mind [2]  24/1 34/13
minimum [2]  39/11 41/6
minus [2]  12/24 33/9
minute [2]  26/19 44/3
misrepresentation [1]  48/7
mistaken [1]  46/14
misunderstand [1]  8/9
misunderstanding [1]  51/8
moment [1]  27/1
money [2]  13/2 14/25
monies [1]  17/10
Montgomery [2]  2/9 3/22
monthly [1]  45/6

months [4]  26/11 26/12 26/12 28/6
moratorium [2]  59/22 60/7
more [14]  24/15 26/7 28/8 31/15 31/16
33/5 34/8 39/15 40/18 57/2 58/4 60/8
61/25 62/5
morning [13]  3/3 3/4 3/14 3/17 3/18
3/19 3/20 3/21 3/25 4/1 12/4 12/6
31/20
most [40]  18/20 25/18 31/23 31/25
47/11 51/21 51/21 59/20 60/24 61/11
motion [31]  3/5 4/4 5/10 5/15 6/15
12/19 12/21 12/23 12/25 13/6 13/7
13/13 13/22 14/8 14/15 14/16 15/8
15/13 15/24 23/7 34/16 35/16 52/4
52/16 53/10 53/13 55/5 55/20 58/23
59/4 62/21
move [1]  58/19
mover [1]  34/17
Mr [7]  4/13 6/25 10/19 13/8 44/7 45/15
47/15
Mr. [43]  3/15 3/16 3/16 4/8 4/10 4/24
6/5 7/5 8/1 9/9 10/3 10/23 12/2 13/8
16/1 19/21 40/2 41/1 42/9 42/15 43/12
44/5 44/24 45/25 46/14 46/21 46/22
47/12 47/15 48/9 48/13 49/11 49/25
50/9 50/16 52/9 58/22 58/22 59/11
59/14 60/9 60/10 62/12
Mr. Butterworth [5]  42/15 48/9 49/11
50/9 52/9
Mr. Butterworth's [1]  50/16
Mr. Fayard [1]  3/15
Mr. Fred [1]  4/24
Mr. Gelé [4]  13/8 19/21 45/25 62/12
Mr. Gisleson [3]  3/16 40/2 42/9 44/24
Mr. Herman [2]  6/5 49/25
Mr. Leger [1]  4/8
Mr. Lund [12]  7/5 9/9 10/3 10/23 12/2
43/12 44/5 46/14 46/21 46/22 47/12
48/13
Mr. Waltzer [7]  4/8 4/10 8/1 41/1 58/22
59/11 60/9
Mr. Waltzer's [1]  16/1
Mr. Wiygul [4]  47/15 58/22 59/14 60/10
Ms. [1]  52/14
Ms. Tusa [1]  52/14
much [7]  6/18 12/7 26/7 28/23 39/9
39/19 50/21
multiplier [19]  30/8 30/12 30/14 32/2
32/6 32/22 32/24 33/12 33/13 36/17
36/23 60/16 60/18 61/1 61/14 61/22
61/24 62/1 62/11
multipliers [2]  30/6 32/7
multiply [2]  31/3 60/12
multiplying [1]  38/3
must [6]  6/23 14/21 16/17 57/24 61/10
62/13
my [38]  4/16 6/13 7/21 7/25 8/22 10/13
11/17 11/19 13/24 14/18 16/19 17/11
17/23 18/7 19/6 19/19 19/20 20/19
22/2 24/6 26/1 26/21 31/14 34/13 38/7
40/5 42/18 42/22 42/3 44/13 44/18
45/24 46/3 55/6 58/9 61/5 61/5 63/22
myself [1]  59/20

# N

name [4]  5/18 6/13 34/25 42/15
named [1]  35/18
narrow [2]  14/13 49/25
nastiness [1]  48/23
nature [1]  29/3 58/12

nearly [1]  53/25
necessarily [2]  32/23 33/15
necessary [2]  18/25 25/24
need [3]  6/2 21/13 32/23
needed [2]  35/2 46/8
needs [1]  23/25
negotiating [1]  38/20
negotiation [1]  38/16
neither [1]  25/3
net [2]  38/5 41/7
neutral [4]  27/16 28/17 40/23 62/5
never [10]  13/3 29/5 29/6 32/12 42/2
42/13 42/17 43/18 48/8 48/18
new [9]  1/16 1/19 2/4 2/7 2/11 2/17
49/3 56/4 59/19
New Orleans [2]  56/4 59/19
next [10]  9/18 21/12 26/23 27/13 28/19
29/3 29/17 29/24 35/7 61/1
nice [1]  52/7
no [42]  5/13 5/16 5/24 6/1 8/19 9/7
10/8 10/12 12/10 18/10 19/9 19/11
19/12 19/14 19/16 19/20 20/5 20/18
21/11 23/12 23/25 25/19 32/8 32/15
32/18 33/13 35/1 35/19 36/4 38/14
43/24 44/18 46/3 47/13 49/10 49/11
50/3 51/1 61/18 62/16 62/21 63/13
no-risk [1]  32/15
nonduplicative [1]  59/5
none [4]  15/5 24/3 46/4 51/13
nonexcessive [2]  57/19 59/6
nor [3]  10/2 13/4 14/2
not [106]
note [8]  21/1 24/8 27/21 38/11 39/18
39/23 41/5 53/2
nothing [8]  20/2 20/3 24/7 33/25 35/17
40/3 51/9 51/23
novelty [1]  58/5
November [1]  56/21
November 23 [1]  56/21
now [28]  5/10 5/23 6/2 6/15 6/18 13/1
14/7 14/24 18/3 18/10 18/14 42/8
43/11 46/19 46/25 47/20 52/9 52/13
53/9 54/2 55/6 56/25 58/16 60/7 61/3
61/22 62/16 62/21
nowhere [1]  35/20
null [1]  56/7
number [12]  9/4 21/3 23/4 30/15 31/13
38/5 38/6 58/18 58/18 59/5 59/6 62/17
numbers [7]  5/2 8/1 8/14 11/24 17/19
25/1 53/7
numerous [1]  59/19

# O

O'Keefe [1]  1/16
object [1]  46/11
objecting [1]  47/8
objection [3]  5/25 6/1 49/9
obligations [2]  12/8 12/11
obligee [1]  17/9
obtain [1]  28/17
obtained [9]  27/14 27/16 28/12 58/10
61/2 61/3 61/7 61/8 61/12
obtaining [3]  28/25 53/15 53/17
obvious [1]  61/20
Obviously [4]  18/7 24/18 27/6 27/14
occupied [1]  60/24
occurred [2]  28/21 43/19 53/13 53/18
October [1]  60/3
October 25 [1]  60/3
odd [2]  13/2 18/9

**O**

Offices [1] 1/18 53/21
off [5] 22/15 22/18 29/11 30/4 38/6
Official [3] 2/16 63/19 63/25
offset [4] 21/3 21/5 21/21 62/13
offsets [6] 11/12 11/23 16/3 17/21
18/23 21/20
oil [9] 1/4 1/4 16/23 27/22 28/14 28/22
53/13 59/1 60/7
okay [16] 6/14 6/22 7/16 15/21 21/1
22/19 22/22 23/2 23/16 23/17 31/17
35/15 41/8 41/16 43/16 44/14
on [89]
once [1] 30/6
one [39] 7/5 12/16 16/8 16/18 17/17
25/16 25/18 26/19 26/24 26/25 29/9
31/13 31/15 31/16 33/3 34/1 34/2
35/18 35/18 36/15 38/14 39/4 40/18
40/19 44/3 45/10 47/19 49/25 51/8
51/18 52/24 52/25 53/8 53/25 56/17
57/2 57/10 58/24 60/14
one-fifth [4] 31/13 31/15 31/16 40/18
one-sixth [3] 34/1 40/19 47/19
one-time [1] 29/9
ones [1] 60/15
only [13] 16/11 16/19 16/20 16/21
17/20 18/16 31/13 35/18 38/8 43/8
45/1 48/22 57/10
open [2] 49/20 61/20
operate [1] 49/3
operated [1] 49/3
opinion [5] 32/5 34/1 56/6 56/20 57/8
opportunity [1] 42/2
oppose [3] 10/2 10/2 46/23
opposed [1] 13/24
opposition [3] 5/14 5/14 5/16
or [53] 6/5 7/9 9/7 10/6 12/24 14/4 14/9
21/3 21/17 23/6 26/4 27/12 29/24
29/25 32/3 33/8 35/16 38/5 39/7 39/13
39/21 40/19 42/15 43/9 45/22 46/12
46/23 46/24 47/14 47/22 48/8 48/16
50/4 50/11 50/18 51/11 51/12 51/16
54/11 54/12 56/18 57/14 57/21 58/11
58/14 58/15 59/6 59/21 61/14 62/5
62/5 62/16 63/1
oral [5] 1/11 3/4 7/6 34/17 34/18
orally [1] 56/5
order [6] 6/15 7/12 8/22 8/22 11/17
11/17 11/19 11/19 31/22 34/19 47/22
49/14 49/22 52/17 54/16 54/17 54/21
54/22 55/6 55/7 60/3
ordinary [1] 15/20
original [1] 52/25
originally [1] 57/6
Orleans [8] 1/16 1/19 2/4 2/7 2/11 2/17
56/4 59/19
other [24] 3/11 16/6 17/14 17/20 23/6
26/4 26/5 26/17 26/18 33/9 37/8 38/11
38/20 40/2 40/4 47/13 55/25 57/23
58/8 60/15 60/20 60/22 60/25 62/4
others [1] 56/22
our [21] 7/8 8/6 12/11 14/5 17/19 18/19
19/24 23/2 24/11 27/9 30/14 32/5
33/23 34/1 40/16 41/18 45/13 47/8
48/2 49/5 63/8
out [23] 8/6 8/21 13/4 19/7 21/3 26/17
28/1 29/21 29/22 32/18 35/20 44/10
48/1 50/1 52/1 52/24 57/5 57/25 58/1
59/22 60/13 62/20 63/3

out-of-pocket [1] 32/18
outcome [2] 41/23 48/15
outcomes [1] 16/9
outstanding [1] 61/4
over [9] 5/21 11/10 21/7 26/13 29/15
29/18 41/7 52/23 53/23
overall [1] 59/3
oversight [1] 33/21
overvalued [1] 47/18
owed [9] 7/20 7/23 8/5 8/14 8/20 17/10
21/9 51/4 57/19
owing [1] 62/14
own [3] 18/4 38/21 58/23

**P**

page [2] 16/12 59/1
page 4 [1] 16/12
paid [12] 14/1 14/2 21/22 21/25 27/25
32/16 37/16 37/17 39/15 57/11 62/13
63/2
papers [1] 14/8
par [1] 34/2
paragraph [4] 8/11 16/2 54/5 55/9
part [12] 15/10 20/11 20/12 20/13
21/25 38/16 38/24 44/19 52/16 52/17
61/14 61/16
partial [1] 62/22
partially [7] 20/14 20/15 21/24 24/23
37/4 37/8 38/9
particular [5] 33/21 35/4 43/17 58/8
60/19
particularly [1] 15/25
parties [10] 10/4 10/21 12/23 16/24
16/25 23/5 34/20 43/7 43/8 56/25
partners [2] 26/10 28/24
parts [1] 45/3
party [7] 17/7 17/9 17/25 18/1 18/4
18/10 43/22
past [1] 51/12
path [1] 44/16
pay [5] 19/4 20/10 22/1 30/4 54/9
payable [2] 11/9 11/10
payment [4] 13/17 17/5 43/1 44/19
PEARCE [1] 2/10
peculiar [1] 11/25
pen [2] 30/21 30/21
Peneguy [6] 2/9 2/13 3/23 3/23 3/24
48/24
Peneguys [2] 35/16 47/16
Peneguys' [1] 34/16
people [2] 26/14 30/5
per [4] 10/2 20/17 30/13 45/25
per se [1] 10/2
percent [37] 8/18 8/23 8/24 9/15 9/17
9/17 9/20 11/8 11/9 16/5 16/13 17/18
17/18 20/20 20/21 20/23 21/6 22/4
22/6 22/7 24/10 24/12 24/13 27/5 35/4
35/4 44/25 47/19 52/20 53/14 53/17
54/15 54/16 54/20 54/22 55/10 55/12
percentage [15] 21/4 22/14 22/17
22/21 22/25 23/4 23/6 24/12 33/11
39/7 40/19 49/15 51/4 51/22 57/12
percentages [8] 8/11 16/5 16/14 25/1
27/6 44/25 54/13 55/9
perception [3] 39/19 40/6 46/14
perfected [1] 34/6
perform [1] 58/6
performed [2] 34/5 45/6
performing [1] 58/14
perhaps [3] 43/11 47/14 47/16

period [3] 11/10 26/16 40/20
permitted [1] 48/7
perspective [2] 44/12 44/13
persuasion [1] 9/8
physical [3] 16/14 54/8 55/2
Pierce [1] 3/22
plaintiff [1] 32/12
play [1] 28/1
players [1] 28/13
pleading [1] 35/16
please [4] 3/3 3/6 32/1 47/5
plenary [3] 42/7 42/10 47/24
plus [3] 12/24 32/18 37/21
pocket [1] 32/18
podium [1] 12/3
point [9] 9/8 13/25 18/7 19/13 20/5
31/23 40/5 45/24 46/3
pointed [1] 8/6
points [4] 31/23 41/15 42/20 45/13
portion [1] 45/3 45/10 57/4 61/10
position [17] 7/24 7/25 8/13 8/15 8/16
9/25 10/3 10/3 12/10 17/1 18/15 35/3
35/7 41/19 42/4 45/14 47/25
possession [1] 11/25
power [1] 48/5
powers [1] 47/24
Poydras [2] 2/10 2/16
practice [2] 26/10 59/16
precise [1] 43/5
preclude [3] 26/4 58/8 60/20
precluded [1] 60/25
prefer [1] 19/17
prepared [3] 7/6 7/8 23/24
present [20] 2/12 4/8 7/5 7/11 8/25 9/2
10/7 10/8 10/12 11/1 11/4 11/6 11/20
24/16 34/24 49/18 51/3 51/11 54/10
62/17
presentation [1] 17/14
presented [1] 16/11
preserved [1] 28/10
preserving [1] 28/25
pretty [2] 16/19 28/23
prevailing [1] 59/18
prevalent [1] 28/4
previous [1] 20/18
previously [3] 4/7 53/7 54/4
principals [1] 58/21
prior [2] 54/15 54/21
probably [4] 22/16 29/9 32/18 36/1
problem [1] 13/20
problems [1] 19/2
proceed [3] 4/5 45/12 53/5
proceedings [5] 2/19 3/1 20/18 63/16
63/23
process [7] 26/8 27/12 27/16 28/17
46/24 48/25 56/23
Procurement [1] 56/19
Products [1] 57/6
professional [6] 12/9 29/4 41/20 56/16
57/17 58/12
professionals [1] 55/25
promised [1] 29/6
proof [1] 9/7
proper [2] 18/18 18/22
properly [3] 40/17 48/19 58/6
proportion [2] 25/13 40/18
proposition [1] 56/22
prosecuting [1] 53/12
protect [1] 38/22
protected [1] 38/17

**P**

provide [4]  15/2 18/24 41/22 42/5
provided [8]  8/1 8/24 13/4 17/7 25/23
31/16 48/9 48/10
provisions [2]  17/5 45/4
Public [1]  56/15
purposes [1]  50/2
pursuant [4]  4/6 53/9 54/3 54/11
put [5]  6/11 6/13 19/18 34/2 35/10
puts [1]  63/7

**Q**

qualified [3]  19/12 28/15 29/20
quantified [1]  26/1
quarrel [3]  20/19 21/11 22/16
quarrels [1]  24/19
question [10]  4/16 14/3 19/20 34/13
42/18 49/20 51/13 51/15 51/18 57/15
questions [7]  7/17 31/24 34/24 36/3
36/4 49/17 58/5
quickly [2]  28/15 30/4
Quin [1]  2/13
quite [1]  6/22
quote [3]  16/14 17/12 31/11

**R**

raise [1]  39/12
raised [1]  46/14
ranging [2]  55/3 59/25
rate [28]  25/11 30/16 30/17 32/17
32/17 33/3 33/8 33/12 33/13 35/4
37/17 37/18 37/18 37/20 37/21 38/2
38/3 38/15 38/16 39/14 39/16 59/10
59/19 60/4 60/8 60/10 62/7 62/8
rates [8]  27/8 58/19 59/17 59/18 59/21
59/24 60/6 62/6
rather [2]  39/22 46/22
RE [1]  1/4
reach [2]  27/6 38/5
reaching [1]  38/7
read [2]  42/19 54/6
readily [1]  57/23
reading [3]  10/1 10/11 63/1
reads [1]  54/5
ready [1]  7/3
real [3]  18/4 34/9 34/18
really [7]  7/12 13/23 17/13 34/4 39/9
58/4 62/19
reason [5]  15/18 31/10 31/12 62/5
62/17
reasonable [20]  23/9 27/7 30/11 30/15
30/17 31/8 35/9 36/11 39/20 51/16
52/22 57/19 58/19 59/5 59/9 59/10
60/1 62/1 62/18 62/19
reasonableness [1]  33/7
reasons [1]  33/25
receive [3]  22/23 43/8 43/22
received [8]  39/15 43/23 53/6 53/8
54/11 54/14 54/19 55/11
receiving [1]  49/16
recent [4]  31/23 31/25 60/3 61/25
recently [1]  60/8
recess [1]  63/14
recitation [1]  55/1
recited [1]  53/7
recognized [1]  57/18
recognizing [1]  52/18
recollection [1]  44/16
recommendation [2]  18/23 59/23

**record** [17]  4/5 4/12 5/7 13/11 14/9
39/25 43/18 45/13 46/16 47/4 47/21
53/2 53/6 53/7 59/1 59/3 63/23
record document 197 [1]  4/12
recorded [1]  2/19
recover [1]  14/18
recovery [1]  41/24
reduced [1]  27/20
reducing [1]  42/7
reference [1]  42/14
referring [1]  25/6
reflect [1]  43/18
reflected [2]  40/12 59/2
reflects [1]  45/13
regard [1]  59/16
regarding [2]  17/25 55/20
registry [5]  12/24 13/16 19/3 19/8 63/3
regular [2]  26/8 29/13
regulatory [2]  28/4 29/22
rehash [1]  33/23
rehearing [1]  52/24 57/8
reimbursable [2]  12/15 13/3
reimbursed [8]  20/4 20/11 20/14 20/15
20/16 21/24 37/4 39/8
reject [1]  55/18
rejected [2]  9/3 11/5
relate [1]  11/24
related [2]  32/7 54/12
relation [1]  43/1
relationship [3]  20/13 29/4 58/13
relevant [2]  16/9 59/18
remain [1]  13/16
remaining [1]  11/9 62/9
remember [1]  55/6
remittance [1]  41/24
rendered [2]  54/7 55/1
repeated [1]  15/1
replace [1]  29/16
reply [1]  16/19
report [1]  59/22
Reporter [3]  2/16 63/20 63/25
represent [4]  9/5 10/4 47/16 56/15
representation [7]  29/6 41/21 53/23
53/24 54/3 54/25 59/7
representative [4]  3/16 34/22 34/23
42/14
represented [3]  5/13 20/6 29/5
representing [1]  3/8
represents [1]  59/5
reputation [2]  29/17 58/13
request [2]  34/17 34/18
requests [1]  52/19
require [1]  12/11
required [3]  53/2 56/23 58/5
requisite [1]  58/6
resistance [1]  44/18
resolution [2]  17/1 57/3
resolved [5]  49/1 54/15 54/17 54/20
54/22
respect [1]  61/17
respectfully [2]  14/19 42/3
respond [5]  38/13 41/13 44/4 45/13
50/24
responding [1]  27/22
response [3]  19/21 31/19 36/6
responsibility [4]  35/22 43/25 44/23
57/17
restoration [3]  16/15 54/8 55/2
result [1]  19/17 33/19 48/24 61/8
results [6]  27/14 27/16 58/10 61/2 61/3

**retainer** [1]  56/11
reverse [1]  31/22
reviewed [1]  35/8
reviewing [1]  25/22
Revised [1]  56/19
Richard [1]  3/23
RIG [1]  1/4
right [33]  4/13 5/3 5/8 6/1 6/2 6/15 6/17
6/19 8/2 8/13 11/16 12/1 13/8 13/9
13/13 13/15 15/21 18/4 19/25 20/10
21/10 23/13 28/21 33/16 34/7 34/19
37/20 43/8 44/6 45/12 46/19 50/20
52/12
ring [1]  52/7
rise [1]  63/15
risk [8]  27/20 30/3 32/7 32/15 33/18
38/14 61/19 61/19
risk-free [1]  61/19
risking [1]  29/15
Robert [2]  2/14 26/11
Roell [1]  53/4
Room [1]  2/16
rough [1]  25/19
rounding [1]  37/12
row [1]  34/11
Roy [1]  53/22
rule [12]  8/18 13/18 15/25 18/25 19/2
41/20 52/12
Rule 1.5 [3]  12/8 15/25 41/20
Rule 67.3 [2]  13/18 19/2
rules [2]  12/9 41/20 50/2
ruling [4]  18/16 47/22 51/3 52/12
rulings [1]  16/18
run [1]  40/22

**S**

said [9]  15/11 16/6 19/14 19/16 47/20
49/25 51/2 51/23 55/15
same [6]  5/2 8/10 8/12 11/10 57/8
59/14
Saucier [19]  23/1 23/3 23/10 23/22
24/9 32/22 32/25 33/14 33/17 52/24
57/6 58/1 58/17 59/8 60/14 62/2 62/4
62/10 62/18
saw [5]  39/20 40/6 40/7 40/7 61/24
say [16]  4/5 6/23 7/7 15/15 16/13 16/13
18/10 31/11 35/8 38/15 47/2 48/7
49/23 59/14 61/7 61/11
saying [2]  24/19 52/6
says [4]  16/17 17/5 17/9 53/11
scheme [1]  28/5
se [1]  10/2
seat [1]  34/11
seated [1]  3/3
second [7]  12/16 26/3 40/5 42/6 43/3
46/3 47/11
secretary [2]  55/23 56/11
secretary-treasurer/land [2]  55/23
56/11
Section [2]  1/6 45/5
see [4]  4/15 40/8 40/15 62/9
seek [1]  26/17
seeking [3]  12/6 14/17 43/21
seeks [5]  52/17 53/11 53/14 53/16 57/4
seen [3]  42/13 48/3 48/8
sense [1]  15/20
sent [2]  37/14 59/23
sentences [2]  49/24 50/7
separate [1]  7/10

September [4]  4/12 14/25 15/1 56/9
September 15 [1]  14/25
September 28 [2]  4/12 56/9
September 30 [1]  15/1
service [1]  58/6
services [5]  54/7 55/1 56/17 58/10 58/14
set [20]  8/18 13/7 14/24 16/7 16/15 16/17 16/20 16/20 17/2 17/12 17/15 27/4 52/24 57/5 57/16 57/25 58/1 59/21 61/25 62/20
sets [3]  14/14 14/17 36/22
setting [9]  8/22 11/17 11/19 49/15 54/16 54/17 54/21 54/23 55/7
settle [2]  27/23 40/22
settlement [15]  8/17 11/10 27/15 28/18 29/1 34/6 35/5 43/5 47/18 53/15 53/17 53/18 55/11 55/13 61/4
settling [2]  43/4 43/6
seven [1]  33/5
shall [1]  41/22
share [2]  21/18 61/8
Shaw [2]  2/2 53/21
she [2]  52/14 56/12
shift [1]  27/18
shores [1]  28/22
should [31]  8/17 10/5 10/6 10/6 14/1 14/2 14/5 17/16 18/23 19/1 20/22 21/5 21/18 22/23 23/19 24/11 25/10 25/11 25/12 37/25 38/9 39/6 40/18 40/19 41/6 48/20 51/19 55/10 57/10 57/13 62/3
shouldn't [1]  25/25
show [1]  9/6
showed [1]  16/3
showing [2]  40/4 41/24
sic [1]  54/14
side [1]  17/14
sides [1]  25/3
sign [5]  6/6 6/7 6/14 8/14 56/11
signature [2]  4/18 5/5
signed [7]  6/2 21/15 24/1 54/16 54/17 54/21 54/23
significance [1]  18/7
significant [3]  18/8 22/23 43/1
similar [1]  30/9 58/9
similarly [1]  59/24
simple [2]  51/9 57/20
simply [12]  15/2 16/13 25/24 27/23 30/1 32/6 34/2 39/24 45/10 48/5 50/5 50/13
since [2]  7/5 10/4
single [1]  48/12
sir [5]  4/1 6/17 6/21 9/9 52/10
sit [3]  8/2 9/10 31/17
sitting [1]  43/15
six [1]  60/7
sixth [3]  34/1 40/19 47/19
sixths [2]  34/14 39/21
skill [2]  57/22 58/6
skilled [1]  49/21
skills [1]  59/12
slowly [1]  5/21
small [1]  61/16
Smith [2]  2/5 3/8
so [40]  6/8 8/13 8/19 9/16 10/22 11/18 15/5 16/24 17/19 18/11 19/7 19/9 20/13 21/3 21/20 22/2 22/7 22/16 25/2

25/9 25/19 25/25 27/9 27/25 28/15 30/21 37/24 38/5 38/23 39/11 44/15 45/9 45/12 46/5 48/16 52/4 56/5 56/6 60/12 62/11
So.2d [1]  57/7
software [1]  2/20
some [21]  7/11 7/17 11/13 13/2 16/14 24/23 25/13 26/8 33/19 34/22 38/12 39/14 40/3 47/14 47/16 49/5 57/4 61/2 61/10 61/17 61/21
something [7]  13/23 32/20 35/12 38/23 46/15 46/25 52/1
sometimes [4]  30/5 48/4 48/5 51/25
somewhat [2]  29/20 31/12
somewhere [3]  30/19 36/12 41/7
SOREN [3]  1/15 3/10 31/20
sorry [10]  5/18 15/17 19/10 19/15 32/14 36/17 36/25 47/2 47/5 55/15
sort [3]  33/23 35/19 61/2
sought [2]  55/5 58/18
speak [3]  5/21 19/7 49/7
speaking [2]  6/9 49/12
special [2]  19/7 50/10
specific [1]  24/19
specifically [1]  32/2
spectacular [2]  61/4 61/8
speed [1]  46/6
spend [1]  46/6
spent [1]  33/9
spill [10]  1/4 16/23 27/22 27/24 28/14 28/21 53/13 59/21 59/22 60/7
spirit [1]  50/17
split [1]  23/5
Springs [1]  1/22
St [1]  2/7
stakeholders [1]  28/13
stand [4]  4/10 5/21 41/1 41/2
standards [2]  23/1 57/5
standing [6]  34/19 35/19 42/19 47/14 47/17 59/11
start [4]  7/3 21/7 36/21 59/8
state [2]  14/10 41/21
statement [12]  12/25 14/17 38/12 42/15 50/15 62/13
statement [1]  15/2 15/4 41/23 42/3 42/5 42/12 42/13 43/9 43/22 43/24 44/25 50/16
statements [1]  34/16
STATES [3]  1/1 1/12 63/20
stating [1]  41/23
Statue [1]  56/19
statutes [2]  34/4 29/21
stayed [1]  48/1
stenography [1]  2/19
step [2]  12/3 21/12
STEPHEN [3]  2/6 3/7 5/20
steps [1]  12/15
stop [3]  36/19 36/19 36/19
straight [1]  5/22
stratagem [1]  28/2
Street [4]  1/19 2/3 2/10 2/16
stroke [1]  38/22
stuff [1]  47/25
subject [5]  13/16 42/7 42/10 56/2 56/18
submissions [5]  12/22 15/12 25/2 25/5 40/13
submit [3]  16/25 42/4 45/12
submitted [5]  12/12 15/8 40/1 40/3 59/4
subsequent [1]  56/6
substantial [3]  23/20 24/11 26/9 27/24

subsumed [1]  62/5
subsumes [1]  60/21
subtract [3]  22/8 31/6 33/8
subtracted [1]  21/5
subtractions [1]  11/11
successful [1]  61/11
such [4]  32/5 42/13 57/15 57/22
suggest [7]  14/19 18/14 18/20 18/20 36/12 40/7 45/1
suggested [2]  32/3 58/16
suggesting [1]  37/19
suggestion [7]  8/8 17/11 17/14 17/19 19/6 38/8 40/16
suit [2]  54/15 54/20
Suite [4]  1/19 2/3 2/7 2/10
summarize [1]  57/9
summary [1]  58/24
support [1]  13/5
supported [1]  58/22
supporting [1]  15/5
supports [1]  24/9
suppose [1]  13/15
supposed [2]  32/21 46/7
Supreme [5]  52/25 57/5 57/10 57/18 58/1
Supreme Court [4]  52/25 57/10 57/18 58/1
sure [18]  17/18 12/20 14/11 21/8 22/4 23/23 34/12 36/9 36/22 41/14 41/17 42/21 45/13 45/17 45/17 47/20 50/25
SW [1]  1/22
system [1]  29/22

T

table [3]  34/17 34/21 35/17
take [18]  7/24 7/25 8/15 9/25 22/15 22/17 26/2 26/18 30/25 36/10 37/25 38/6 43/12 46/10 47/25 48/11 60/6 60/12
taken [3]  6/22 12/15 48/2
takes [2]  8/16 59/9
talk [4]  41/1 41/2 46/19 46/22
talking [3]  35/11 37/1 51/22
technically [1]  38/7
tee [1]  18/8
tell [4]  5/18 12/1 14/7 50/2
telling [1]  34/16
tension [1]  49/5
term [1]  29/7
terminated [2]  50/4 59/7
termination [1]  41/21
terms [4]  8/10 8/11 23/22 43/5
than [11]  12/11 31/15 31/16 34/8 36/14 39/22 40/18 44/8 46/22 57/2 58/4
Thank [21]  6/14 6/17 8/3 9/9 9/11 9/22 12/4 12/17 19/18 24/4 27/3 31/18 36/5 41/8 41/9 41/12 45/15 47/7 47/7 49/6 50/5 50/21 63/10
that [389]
that's [47]  4/14 4/17 5/22 6/11 8/20 12/5 12/9 13/12 13/25 14/12 14/18 14/18 16/15 17/5 17/19 19/9 19/11 21/8 21/22 21/23 22/12 23/12 24/18 25/6 30/5 30/10 31/4 31/7 34/12 35/14 35/18 41/16 44/6 44/13 44/19 45/11 45/21 51/14 51/17 51/24 52/7 53/10 53/22 57/19 59/3 60/13 62/7
their [32]  12/8 14/18 15/2 15/24 16/12 14/18 24/22 24/25 25/22 26/10 26/16

**T**

their... [21]  26/17 28/24 29/2 29/14
29/16 30/16 30/18 33/20 38/21 38/22
39/4 39/9 42/23 42/24 43/2 43/3 43/4
50/19 54/3 58/22 58/23
them [14]  18/18 19/6 24/20 28/5 29/13
34/2 40/20 46/5 47/9 47/18 48/19
48/19 60/16 60/25
themselves [1]  18/11
then [28]  8/2 10/10 11/8 13/15 16/5
17/20 18/25 21/12 22/17 22/22 23/4
23/18 28/10 29/10 40/17 40/22 41/3
43/9 56/4 57/7 58/19 61/24
there [28]  5/23 7/19 10/6 10/8 11/11
11/11 12/14 17/11 18/12 20/10 28/12
30/3 37/13 37/21 38/12 38/14 38/14
38/16 40/3 44/8 46/3 46/8 47/17 48/21
52/21 57/7 60/22 62/21
there's [30]  5/13 5/16 10/12 11/3 11/19
12/20 18/12 23/25 25/19 26/15 32/7
32/9 32/18 32/25 33/5 33/25 34/16
35/7 37/12 39/25 41/23 43/24 44/18
45/9 46/11 49/19 50/3 51/1 52/11
62/16
thereafter [1]  8/24
therefore [8]  8/18 21/18 28/2 39/6 55/8
55/13 59/8 62/22
thereof [1]  43/10
these [16]  13/19 14/1 17/16 27/8 27/20
27/23 29/18 33/17 35/8 39/25 42/20
43/2 44/15 47/12 49/18 54/4
they [99]
thing [9]  16/11 17/20 18/20 38/11 39/23
44/10 49/25 51/9 61/6
things [5]  36/13 38/12 46/7 50/1 59/14
think [37]  7/23 8/4 8/8 9/16 10/20 10/22
15/23 19/5 23/19 24/21 26/15 27/13
30/10 30/17 31/10 31/14 32/23 33/24
35/9 36/1 37/24 38/12 38/13 40/5 41/6
47/8 47/22 49/16 49/18 50/2 51/7
51/16 60/6 60/16 61/13 61/21 62/8
thinking [1]  61/23
Third [3]  42/18 43/7 48/15
this [114]
thoroughly [1]  58/22
those [35]  8/24 11/24 12/11 12/15 13/3
13/5 14/22 15/3 16/9 17/3 17/3 17/5
19/1 19/7 22/1 24/24 25/1 25/9 25/10
26/1 26/1 28/6 28/14 33/21 37/14
37/14 37/18 39/6 45/9 45/13 47/16
48/8 48/10 58/24 62/1
though [1]  24/17
thought [5]  18/6 37/5 43/18 45/24
61/23
thousand [2]  32/20 35/12
three [2]  60/16 61/21
through [8]  18/1 28/6 34/11 45/3 47/12
55/22 56/4 56/23
time [28]  5/8 11/10 13/1 24/5 24/6 25/5
26/17 28/19 28/20 28/21 29/9 30/2
33/3 33/9 33/20 34/9 34/22 44/9 46/6
47/10 57/21 58/4 58/11 60/13 60/21
60/22 60/24 60/25
times [6]  30/14 30/15 30/25 36/17
36/18 38/4
today [6]  6/16 18/15 42/16 51/23 52/4
53/8
together [1]  20/22
told [1]  10/24

**U**

U.S.C [1]  4/6
uglier [1]  44/8
ugliest [1]  44/10
ugliness [2]  46/12 46/13
Uh [1]  37/23
Uh-huh [1]  37/23
ultimate [2]  25/13 27/15
umbrage [1]  46/10
unambiguous [1]  54/25
uncertainty [1]  33/18
unclear [1]  28/1
uncompensated [5]  25/4 37/6 37/8 37/9
58/25
under [15]  12/8 16/16 16/16 19/2 20/6
21/2 23/3 24/25 42/23 42/24 43/4
44/25 53/6 53/24 56/19
understand [8]  14/6 14/23 22/13 23/14
23/15 39/19 44/21 48/17
understanding [5]  7/21 20/20 23/3 49/2
63/22
understood [1]  44/24
undertaking [2]  55/3 61/19
unequivocally [1]  35/3
unethical [1]  47/1
unique [2]  17/24 28/3
uniquely [1]  29/20
UNITED [3]  1/1 1/12 63/20

unless [2]  31/23 36/2
unmistakably [1]  17/18
unreasonable [1]  31/12
unrelated [1]  56/3
unrepresented [1]  18/3
unsure [1]  33/18
until [1]  46/14
unusual [2]  12/5 43/20
up [19]  5/22 7/11 12/3 18/8 26/6 26/6
27/23 31/1 31/13 36/11 37/12 38/3
41/1 41/2 43/12 44/17 46/6 54/14
55/11
upon [7]  8/17 25/13 37/20 37/21 39/13
41/21 57/21
upping [1]  62/2
us [8]  14/12 35/14 43/11 47/9 48/12
59/9 62/12 63/7
use [4]  29/22 30/14 32/22 32/24
used [7]  27/6 28/8 28/16 30/9 30/12
60/6
using [5]  2/19 17/2 31/13 39/11 39/12
usual [1]  37/18
usurp [1]  35/20

**V**

vacuum [1]  61/23
Valdez [2]  27/23 30/3
valid [5]  14/4 21/17 21/18 24/2 55/18
validity [1]  18/17
value [13]  8/25 9/2 10/7 10/8 10/12
11/1 11/4 11/6 11/20 49/18 51/3 54/10
62/17
various [4]  55/18 57/14 57/25 58/23
vast [1]  40/2
venture [28]  3/13 4/5 5/11 6/3 6/12
8/16 9/12 9/14 11/25 12/25 14/8 16/10
17/15 18/2 18/4 18/17 32/19 34/3
34/13 45/19 46/12 53/19 53/22 54/2
56/14 61/9 61/12 61/18
venture's [2]  51/15 53/24
versus [1]  18/17
very [19]  6/17 7/6 17/24 20/17 21/25
27/13 27/15 27/18 27/25 28/1 28/2
28/3 36/7 38/13 39/19 41/15 43/20
49/25 50/21
via [1]  56/5
victims [1]  17/25
view [4]  10/14 14/13 19/19 24/11
viewed [1]  4/20
violates [1]  35/20
vis [2]  47/14 47/14
vis-à-vis [1]  47/14
void [1]  56/7
vote [1]  48/3
voted [2]  56/1 56/9

**W**

waged [1]  51/11
wait [2]  21/7 63/7
waive [1]  50/19
waived [1]  56/4
waiving [2]  51/1 56/2
Waltzer [78]
Waltzer Wiygul [5]  14/4 15/24 24/22
26/6 29/5
Waltzer's [1]  16/1
Walzter [1]  9/23
want [7]  13/23 22/15 23/15 36/13 41/1
41/2 47/20
wanted [3]  7/5 45/12 46/17

**W**

wants [2]  7/9 7/10
was [94]
washing [1]  28/22
wasn't [4]  29/7 29/13 33/20 51/21
waste [2]  20/24 24/5
wasting [1]  24/6
way [11]  10/14 14/12 15/25 19/18
23/15 25/21 45/12 45/21 47/23 52/21
62/3
ways [1]  5/22
we [88]
week [2]  14/9 35/7
weeks [1]  26/13
weighed [1]  40/17
weighting [2]  33/14 40/8
welcome [4]  49/14 49/21 50/22 63/11
well [34]  3/15 3/15 6/22 8/6 11/12
11/22 11/24 12/22 13/15 13/23 14/23
15/15 15/23 19/5 19/12 19/17 22/22
23/2 23/18 24/16 37/12 38/18 43/12
43/16 44/11 44/18 45/1 49/18 51/3
51/21 54/8 55/2 59/13 59/15
well-known [2]  59/13 59/15
Wendell [1]  3/23
went [2]  15/24 27/24
were [45]  4/6 5/7 7/10 16/8 16/15 20/4
20/4 20/11 20/14 24/23 25/3 26/13
26/15 27/15 27/17 27/18 27/25 28/3
28/6 28/8 28/13 28/15 28/16 29/6
29/14 29/22 33/20 37/3 37/13 37/14
37/14 37/16 37/17 38/6 38/8 38/12
38/12 39/8 43/4 43/6 44/25 46/7 48/12
51/22 61/4
weren't [1]  26/2
what [66]
what's [3]  8/25 27/10 51/8
whatever [7]  20/3 21/3 21/4 22/8 29/9
47/15 51/15
whatsoever [2]  20/16 24/3
when [13]  4/16 28/8 29/15 40/16 43/21
46/8 52/1 52/22 53/23 57/1 60/23 62/2
62/19
where [10]  14/11 16/12 16/24 33/11
34/6 36/1 42/7 44/19 47/11 59/24
whether [15]  10/6 14/3 17/2 17/12
21/17 26/4 29/24 33/13 35/23 51/15
58/15 58/18 61/5 61/14 62/19
which [45]  5/1 9/1 9/15 9/15 13/17 14/9
14/22 20/22 20/23 21/5 21/16 21/25
25/3 25/14 25/23 26/23 27/13 27/19
28/12 28/25 32/12 32/16 35/8 39/8
39/16 41/19 41/20 48/13 50/17 53/19
55/4 55/7 55/22 56/12 56/20 57/6
57/13 57/16 59/18 59/23 60/4 60/14
61/5 62/14 62/18
while [1]  53/1
who [24]  6/24 7/5 8/4 8/21 9/5 12/6
12/25 14/1 14/14 17/7 17/25 18/1 28/3
34/23 35/22 42/15 43/6 43/8 43/22
46/23 47/24 48/10 49/12 52/23
whoever [1]  6/5
whole [3]  9/20 54/25 61/6
whom [1]  17/9
whose [1]  59/12
why [16]  13/21 22/23 23/19 24/17 30/5
30/10 31/8 31/10 31/12 34/12 36/13
41/1 41/3 47/17 48/17 52/7
WILKINSON [3]  1/11 14/20 18/14

will [14]  3/11 3/16 18/13 18/20 19/1
34/22 36/7 41/21 42/23 46/19 48/21
54/9 58/8 60/20
willing [2]  19/4 22/16
wish [4]  22/24 24/4 31/24 48/20
Wisner [13]  1/15 1/18 1/21 2/2 34/24
45/19 46/23 47/13 49/4 49/14 51/10
53/12 58/25
within [4]  11/25 27/11 39/5 55/8
without [3]  34/12 45/11 56/14
Withrow [1]  53/4
Withrow v [1]  53/4
Wiygul [69]
Wiygul's [1]  14/10
WL [1]  56/21
won't [1]  45/3
wondering [1]  7/4
words [3]  26/5 37/8 38/21
work [27]  20/15 20/15 21/25 24/13
24/13 30/16 30/18 31/15 34/5 34/7
37/6 37/7 37/9 37/9 40/2 40/3 40/4
40/9 40/10 40/12 40/17 45/5 46/4
47/17 50/1 55/4 58/25
worked [4]  30/15 32/17 37/13 59/6
working [1]  26/13
worth [1]  34/9
would [83]
wouldn't [2]  20/24 46/6
Wright [1]  53/22
writing [1]  51/3
written [5]  14/22 41/22 49/14 52/12
53/4
WWG [1]  52/8

**Y**

Yeah [3]  44/2 46/2 63/9
years [12]  29/19 30/4 30/4 34/5 44/9
44/16 53/18 59/13 59/16 60/6 60/7
63/8
yes [46]  4/9 4/14 4/20 4/23 4/25 5/4 5/6
5/9 5/12 6/17 6/20 6/21 7/1 7/4 7/21
8/15 9/9 10/16 10/18 10/22 13/10
19/22 20/1 20/8 20/13 21/23 22/10
23/8 25/9 25/9 25/17 26/20 30/7 30/13
30/22 30/24 32/1 32/4 35/13 40/14
40/15 40/15 41/5 46/22 51/6 52/10
you [165]
you're [8]  8/19 22/6 22/7 23/15 24/6
35/11 50/22 63/11
your [162]
Your Honor [99]
Your Honor's [5]  24/1 31/25 36/10
39/19 40/6

**Z**

Zach [4]  2/12 34/25 45/21 49/7
zero [2]  32/18 33/11