UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG<br>*DEEPWATER HORIZON* IN THE<br>GULF OF MEXICO ON<br>APRIL 20, 2010 | * <br> * <br> * <br> * <br> * <br> * | 10-MD-2179<br><br><br>Section J<br> |
| Applies to:  10-CV-2771, 10-CV-8888<br>10-CV-9999, 14-CV-1525 | * <br> * <br> * | January 25, 2017 |

* * * * * * * * * * * * * * * * * *

EXCERPT FROM PROCEEDINGS BEFORE THE
HONORABLE JOSEPH C. WILKINSON JR.
UNITED STATES MAGISTRATE JUDGE

<u>Appearances</u>:

| | |
|---|---|
| For Edward Wisner<br>Donation: | Herman Herman & Katz, LLC<br>BY:  SOREN E. GISLESON, ESQ.<br>820 O'Keefe Avenue<br>New Orleans, Louisiana 70113 |
| For Edward Wisner<br>Donation: | Law Offices of Fred L. Herman<br>BY:  FRED L. HERMAN, ESQ.<br>1010 Common Street, Suite 3000<br>New Orleans, Louisiana 70112 |
| For Edward Wisner<br>Donation: | Fayard & Honeycutt, APC<br>BY:  CALVIN C. FAYARD JR., ESQ.<br>519 Florida Avenue, SW<br>Denham Springs, Louisiana 70726 |

EXHIBIT 3

Appearances:

| | |
|---|---|
| For Edward Wisner Donation: | Leger & Shaw<br>BY:  MATT LANDRY, ESQ.<br>935 Gravier Street, Suite 2150<br>New Orleans, Louisiana 70112 |
| For Waltzer Wiygul & Garside, LLC: | Smith & Fawer, LLP<br>BY:  STEPHEN M. GELÉ, ESQ.<br>     DYLAN LEACH, ESQ.<br>201 St. Charles Avenue, Suite 3702<br>New Orleans, Louisiana 70170 |
| For Mark Peneguy, et al.: | Montgomery Barnett, LLP<br>BY:  DANIEL LUND, ESQ.<br>     JOHN Y. PEARCE, ESQ.<br>1100 Poydras Street, Suite 3300<br>New Orleans, Louisiana 70163 |
| Also Present: | Zach Butterworth<br>Mark E. Peneguy<br>Jessica Quih<br>Joel Waltzer<br>Robert Wiygul |
| Official Court Reporter: | Toni Doyle Tusa, CCR, FCRR<br>500 Poydras Street, Room B-275<br>New Orleans, Louisiana 70130<br>(504) 589-7778 |

Proceedings recorded by mechanical stenography using computer-aided transcription software.

**EXCERPT**

**(January 25, 2017)**

**THE COURT:** The motion is granted in part and it is denied in part. It's granted insofar as it seeks an order of recognizing that the Waltzer Wiygul & Garside firm is entitled to fees. It's denied insofar as it requests that that fee be 50 percent of the contingent fee.

I find that there is a different way of calculating a reasonable fee when we have this kind of dispute over who gets what between lawyers from a contingent fee, and it's set out in the *Saucier* decision -- the one on rehearing, not the original one -- that the Louisiana Supreme Court decided a while back.

First, I note for the record -- as required by *Archie v. Christian*, 808 F.2d 1132 (5th Cir. 1987), and *Withrow v. Roell*, 288 F.3d 199 (5th Cir. 2002) -- that written consents to proceed before the magistrate judge concerning this intervention have been received and filed in the record under the record document numbers that I previously recited and the one that was received today.

Now, pursuant to its contingency fee agreement, Waltzer Wiygul & Garside, LLC, in this motion that's in front of me seeks an award of attorneys' fees it says it earned in prosecuting the Wisner Donation's claims against BP arising from the oil spill that occurred in April of 2010.  The motion

12:16      1   seeks 50 percent of the total contingency fees earned in
           2   obtaining the settlement with BP in the amount of $30 million.
           3              The law firm of Waltzer Wiygul & Garside seeks
           4   50 percent of the fees earned in obtaining the settlement.  The
           5   settlement occurred about two years after the Waltzer firm was
           6   discharged on July 31, 2012, and the joint venture -- which is
           7   a group of law firms including Herman Herman & Katz, Leger &
           8   Shaw, Fayard & Honeycutt, the Law Offices of Fred L. Herman,
           9   and Domengeaux Wright Roy & Edwards.  That's the joint venture.
          10   They took over representation when the Waltzer firm was
          11   discharged.  The joint venture's representation was under a
          12   nearly identical fee agreement as the one that had been entered
          13   into between the Donation and the Waltzer firm.
          14              Now, both the joint venture and Waltzer Wiygul &
          15   Garside conducted their representation of the Donation pursuant
          16   to these contingency fee contracts that I previously mentioned.
          17   Paragraph 4(c) of both contingency fee contracts reads
          18   (as read):
          19              "For services rendered in connection with
          20   physical damages and restoration costs as well as final
          21   economic loss damages, the Donation will pay attorneys a
          22   contingency fee based on the gross present value of benefits
          23   received by the Donation pursuant to a judgment or agreement
          24   involving any defendant or any entity related to the defendant
          25   in the following percentages:

12:18

1           "For benefits received up to $10,000 [sic],
2  18 percent if the matter is resolved after suit but prior to a
3  signed order setting the case for trial, 25 percent if the
4  matter is resolved after the first order is signed setting the
5  case for trial;
6           "For benefits received between $10 million and
7  $50 million, 12 percent if the matter is resolved after suit
8  but prior to a signed order setting the case for trial,
9  18 percent if the matter is resolved after the first order is
10 signed setting the case for trial."
11          The contingency fee clause and the contracts of
12 representation as a whole are clear.  They are unambiguous.
13 The recitation for services rendered in connection with
14 physical damages and restoration costs as well as final
15 economic loss damages is a broad-ranging legal undertaking that
16 encompasses all elements of the work for which compensation is
17 sought in this motion.
18          I don't remember the date now, but my order
19 which is in dispute I find was an order setting this matter for
20 trial within the meaning of this agreement.  Therefore, the
21 higher percentages in paragraph 4(c) are triggered, and the fee
22 should be calculated on the basis of 25 percent of the
23 settlement amount for benefits received up to $10 million and
24 18 percent for the amounts between $10 million and $50 million.
25 The settlement amount in this case was $30 million.  Therefore,

12:20   1   the contingent fee at issue is $6.1 million.
2               I'm sorry.  I said $10,000 earlier.  I meant
3   $10 million.  The contingent fee is $6.1 million.
4               I find that the Waltzer Wiygul & Garside
5   contingency agreement is valid, and I reject the various
6   arguments that have been asserted in connection with this
7   motion regarding the alleged invalidity of the agreement.  The
8   bylaws of the Donation delegate to the Donation advisory
9   committee -- on which the city, through the mayor's
10  appointment, has a member -- and its secretary-treasurer/land
11  manager the authority to enter into contracts with authority
12  with attorneys and other professionals.
13              I find that on July 1, 2010, the committee voted
14  to hire Waltzer Wiygul & Garside subject to the city waiving
15  conflicts in two unrelated cases.  I find that the City of
16  New Orleans, through its then city attorney, waived the
17  conflict both orally and via e-mail and did so with actual
18  authority to do so.  The subsequent opinion issued by the city
19  attorney that the contract was null and void I find was
20  erroneous.
21              On September 28, 2010, the committee voted to
22  engage Waltzer Wiygul & Garside and authorized the Donation
23  secretary-treasurer/land manager to sign a retainer agreement,
24  which she did.
25              On July 31, 2012, Waltzer Wiygul & Garside was

12:22     1    discharged without cause and the joint venture was hired to
          2    represent the Donation.
          3                I also find that contracts for professional
          4    services like the one between Waltzer Wiygul & Garside and the
          5    Donation are not subject to Louisiana's Public Bid Law or
          6    Procurement Code under Louisiana Revised Statue 39:1617 and the
          7    Louisiana attorney general's opinion 04-0284, which can be
          8    found at 2004 WL 2843098, November 23, 2004.  The law cited by
          9    others in this matter for the proposition that the Waltzer firm
         10    was required to go through a bid process does not apply to
         11    contracts with attorneys.
         12                Now, the parties agree that Louisiana law
         13    governs this dispute.  When we have a contingent fee agreement
         14    with claims by more than one law firm as to entitlement to the
         15    contingent fee, resolution of that for the claim of any law
         16    firm that seeks some portion of the contingent fee are governed
         17    by the standards set out by the Louisiana Supreme Court in
         18    *Saucier v. Hayes Dairy Products, Inc.*, which was originally
         19    issued at 373 So.2d 102, a 1978 decision, and then there was a
         20    rehearing opinion, the same citation.
         21                Essentially, to summarize, what the Louisiana
         22    Supreme Court found is that only one contingency fee should be
         23    paid by the client, the amount of the fee to be determined
         24    according to the highest ethical contingency percentage to
         25    which the client contractually agreed.  The fee should in turn

be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors which are set forth in the Code of Professional Responsibility.

The Louisiana Supreme Court recognized that determination of this reasonable, nonexcessive fee that's owed to any of the claimed lawyers is not a simple matter. Focusing alone upon the attorneys' investment of time or even considering, in addition, such matters as counsel's skill, the importance of the case, and other readily identifiable factors does an injustice to the attorney. What must be considered instead are all of the various factors that are set out in the Code and that the Supreme Court set out in the *Saucier* decision.

Although they divided it into eight factors, it really is more than eight. They include: the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and

12:25

ability of the lawyer or lawyers performing the services; and whether the fee was fixed or contingent.

Now, in this case, as suggested in the first of the eight factors in *Saucier*, we begin with an assessment of the number of hours and whether the number of hours sought is reasonable, and then we move to the hourly rates to be employed.

The principals of the Waltzer Wiygul law firm, Mr. Waltzer and Mr. Wiygul, have thoroughly supported their motion with their own declarations and various exhibits attached. One of those exhibits is a summary of the Waltzer Wiygul & Garside uncompensated work done for the Wisner Donation. It's at record document 21922-3, page 49. The total reflected is 1,180 hours.

Based on the overall record and evidence that's been submitted in connection with this motion, I find that this number of hours represents a reasonable, nonduplicative, nonexcessive number of hours worked before the agreement or the representation of the Waltzer Wiygul firm was terminated. I, therefore, start my evaluation of the *Saucier* factors with 1,180 reasonable hours expended. That takes us to the reasonable rate.

Mr. Waltzer is an attorney in good standing in this Court, whose character, experience, and skills are well-known by the Court. He has 28 years of experience.

12:27

1  Mr. Wiygul I can say the same things about.  His experience,
2  expertise, and character are well-known to the Court.  He has
3  24 years of relevant practice in this regard.
4           Hourly rates are to be computed according to the
5  prevailing rates and the relevant legal market, which is the
6  New Orleans area market.  I have done numerous rate
7  calculations myself, and in this instance I am most affected by
8  or concerned with the rates that I set in the oil spill
9  moratorium case that came out of the BP spill in a report and
10 recommendation I sent to Judge Feldman, which he adopted on
11 June 1, 2011, where I found rates for similarly experienced
12 lawyers ranging between $415 an hour and $450 an hour to be
13 reasonable.
14          I am also influenced in this matter by
15 Judge Barbier's recent order of October 25, 2016, in the BP MDL
16 in which he applied an average blended hourly rate of $450 an
17 hour to the applying lawyers.
18          I think if you take the rates I used five years
19 ago -- six years ago almost now -- in the oil spill moratorium
20 and Judge Barbier's $450-an-hour rate calculated more recently,
21 considering the experience and the declarations of Mr. Waltzer
22 and Mr. Wiygul in this matter, that a $450-an-hour rate is
23 appropriate in this matter.
24          So I take the 1,180 hours and I multiply it by
25 $450 and that comes out to $531,000.  That's just for time and

12:30

1  labor, which is one factor in the *Saucier* evaluation.  The
2  other factors include the ones I have already mentioned, but I
3  think that three of them justify a multiplier of that base
4  amount.
5       The first factor that justifies a multiplier is
6  the likelihood that the acceptance of the particular employment
7  will preclude other employment by the lawyer.  In this instance
8  at least, that subsumes the time limitations imposed by the
9  other circumstances factor.  There was a time crunch at the
10 beginning of this, when the Waltzer Wiygul firm was involved,
11 that occupied most of the lawyers' time and had to have
12 precluded them from other employment at that time.
13      The next factor that justifies a multiplier of
14 some sort is the amount involved and the results obtained.
15 Now, the amount involved was immense.  The results obtained
16 were spectacular.  This $30 million settlement was outstanding.
17 I have my doubts about whether -- in my case at least, which
18 doesn't encompass the whole thing -- anything like that would
19 have been obtained after trial.  However, I have to say that
20 the lion's share of the spectacular result that was obtained is
21 attributable to the joint venture and not to the intervenors.
22 Some portion of it must be attributed to the Waltzer Wiygul
23 firm, but again I say that most of the successful results
24 obtained are attributable to the efforts of the joint venture.
25      The last factor that I think justifies a

12:32

multiplier is whether the fee is fixed or contingent. Part of this fee was fixed that the Waltzer Wiygul firm earned, but it was a small part. The contract is clear they are entitled to some kind of contingent fee. With all due respect to the arguments that the joint venture has made, this was no risk-free undertaking. The risk involved in any kind of contingent fee agreement is open and obvious.

I think those three factors justify some kind of multiplier of the $531,000 base fee. Now, again, I was thinking about this in a vacuum. I thought that doubling it would be a decent multiplier. I saw, then, that Judge Barbier, in doing his more recent fee award, set on 2.34. I'm going to adopt that as a reasonable multiplier in this case considering the upping that has to go on when I apply *Saucier* factors.

By the way, I should mention that as far as I'm concerned, all of the other *Saucier* factors, they are not a reason to deduct anything. They are more or less neutral or they are subsumed in the fee rates that I have already permitted. $450 an hour, that's about the highest rate we authorize around here. I think it's the highest rate I have ever authorized. I don't see any basis in the remaining *Saucier* factors to make any kind of deduction.

So I'm going to apply the 2.34 multiplier, and that would bring us to a total of $1,242,540. As Mr. Gelé has stated, that must be offset by the amounts already paid,

12:34

1   $358,969, which leaves a fee due and owing to the Waltzer
2   Wiygul law firm of $883,571.
3             Now, I further find that there's no basis or
4   reason for reducing that number to any kind of present value.
5   An $883,571 fee is a reasonable fee, which is what the *Saucier*
6   case really boils down to, whether the fee is reasonable when
7   applying the factors that are set out in that decision.
8             Now, there is no motion in front of me
9   concerning costs; therefore, I'm going to enter a partial final
10  judgment on attorneys' fees in the amount of $883,571.
11            Anything further?
12       **MR. HERMAN:**  Your Honor, I don't know if you have
13  considered in your calculation or in your reading how that fee
14  is to be paid.
15       **THE COURT:**  Immediately out of the registry of the
16  Court.
17       **MR. HERMAN:**  The entire --
18       **THE COURT:**  The entire $883,571.
19       **MR. HERMAN:**  Your Honor, that puts us having to wait
20  21 years for our fee.
21       **THE COURT:**  Yeah, I know.
22       **MR. HERMAN:**  Thank you, Your Honor.
23       **THE COURT:**  You're welcome.
24            Anything else?
25       **MR. HERMAN:**  No, not from me.

**THE COURT:** Court is in recess.

**THE DEPUTY CLERK:** All rise.

(Proceedings adjourned.)

\* \* \*

## CERTIFICATE

I, Toni Doyle Tusa, CCR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of proceedings in the above-entitled matter.

*s/ Toni Doyle Tusa*
Toni Doyle Tusa, CCR, FCRR
Official Court Reporter

MR. HERMAN: [5]  13/11 13/16 13/18 13/21 13/24
THE COURT: [6]  3/2 13/14 13/17 13/20 13/22 13/25
THE DEPUTY CLERK: [1]  14/1

## $

$1,242,540 [1]  12/24
$10 [4]  5/6 5/23 5/24 6/3
$10 million [3]  5/6 5/23 6/3
$10,000 [2]  5/1 6/2
$30 [3]  4/2 5/25 11/16
$30 million [3]  4/2 5/25 11/16
$358,969 [1]  13/1
$415 [1]  10/12
$450 [6]  10/12 10/16 10/20 10/22 10/25 12/19
$450-an-hour [2]  10/20 10/22
$50 [2]  5/7 5/24
$50 million [2]  5/7 5/24
$531,000 [2]  10/25 12/9
$6.1 [2]  6/1 6/3
$6.1 million [2]  6/1 6/3
$883,571 [4]  13/2 13/5 13/10 13/18

## 0

0284 [1]  7/7
04-0284 [1]  7/7

## 1

1,180 [3]  9/14 9/21 10/24
10-CV-2771 [1]  1/7
10-CV-8888 [1]  1/7
10-CV-9999 [1]  1/8
10-MD-2179 [1]  1/4
1010 [1]  1/19
102 [1]  7/19
1100 [1]  2/10
1132 [1]  3/15
12 percent [1]  5/7
14-CV-1525 [1]  1/8
1525 [1]  1/8
18 percent [3]  5/2 5/9 5/24
1978 [1]  7/19
1987 [1]  3/15
199 [1]  3/16

## 2

2.34 [2]  12/12 12/23
20 [1]  1/6
2002 [1]  3/16
2004 [2]  7/8 7/8
201 [1]  2/7
2010 [4]  1/6 3/25 6/13 6/21
2011 [1]  10/11
2012 [2]  4/6 6/25
2016 [1]  10/15
2017 [2]  1/7 3/2
21 years [1]  13/20
2150 [1]  2/3
2179 [1]  1/4
23 [1]  7/8
24 years [1]  10/3
25 [3]  1/7 3/2 10/15
25 percent [2]  5/3 5/22
275 [1]  2/16
2771 [1]  1/7
28 [2]  6/21 9/25
2843098 [1]  7/8

288 [1]  3/16

## 3

3000 [1]  1/19
31 [2]  4/6 6/25
3300 [1]  2/10
3702 [1]  2/7
373 [1]  7/19
39:1617 [1]  7/6

## 4

49 [1]  9/13

## 5

50 percent [3]  3/7 4/1 4/4
500 [1]  2/16
504 [1]  2/17
519 [1]  1/22
589-7778 [1]  2/17
5th [1]  3/15
5th Cir [1]  3/16

## 7

70112 [2]  1/19 2/4
70113 [1]  1/16
70130 [1]  2/17
70163 [1]  2/11
70170 [1]  2/7
70726 [1]  1/22
7778 [1]  2/17

## 8

808 [1]  3/15
820 [1]  1/16
8888 [1]  1/7

## 9

935 [1]  2/3
9999 [1]  1/8

## A

ability [2]  9/1 14/9
about [5]  4/5 10/1 11/17 12/10 12/19
above [1]  14/10
above-entitled [1]  14/10
acceptance [2]  8/19 11/6
according [2]  7/24 10/4
actual [1]  6/17
addition [1]  8/9
adjourned [1]  14/3
adopt [1]  12/13
adopted [1]  10/10
advisory [1]  6/8
affected [1]  10/7
after [6]  4/5 5/2 5/4 5/7 5/9 11/19
again [2]  11/23 12/9
against [1]  3/24
ago [2]  10/19 10/19
agree [1]  7/12
agreed [1]  7/25
agreement [10]  3/21 4/12 4/23 5/20 6/5 6/7 6/23 7/13 9/18 12/7
aided [1]  2/20
al [1]  2/9
all [5]  5/16 8/12 12/4 12/16 14/2
alleged [1]  6/7
allocated [1]  8/1
almost [1]  10/19
alone [1]  8/8
already [3]  11/2 12/18 12/25

also [3]  2/12 7/3 10/14
Although [1]  8/15
am [2]  10/7 10/14
among [1]  8/1
amount [9]  4/2 5/23 5/25 7/23 8/22 11/4 11/14 11/15 13/10
amounts [2]  5/24 12/25
any [8]  4/24 4/24 7/15 8/7 12/6 12/21 12/22 13/4
anything [4]  11/18 12/17 13/11 13/24
APC [1]  1/21
apparent [1]  8/19
Appearances [2]  1/13 2/1
applied [1]  10/16
Applies [1]  1/7
apply [3]  7/10 12/14 12/23
applying [2]  10/17 13/7
appointment [1]  6/10
apportionment [1]  8/2
appropriate [1]  10/23
APRIL [2]  1/6 3/25
April of [1]  3/25
Archie [1]  3/15
are [17]
area [1]  10/6
arguments [2]  6/6 12/5
arising [1]  3/24
around [1]  12/20
as [17]
as read [1]  4/18
asserted [1]  6/6
assessment [1]  9/4
at [8]  6/1 7/8 7/19 9/13 11/8 11/9 11/12 11/17
attached [1]  9/11
attorney [5]  6/16 6/19 7/7 8/11 9/23
attorneys [4]  4/21 6/12 7/11 8/1
attorneys' [3]  3/23 8/8 13/10
attributable [2]  11/21 11/24
attributed [1]  11/22
authority [3]  6/11 6/11 6/18
authorize [1]  12/20
authorized [2]  6/22 12/21
Avenue [3]  1/16 1/22 2/7
average [1]  10/16
award [2]  3/23 12/12

## B

B-275 [1]  2/16
back [1]  3/13
Barbier [1]  12/11
Barbier's [2]  10/15 10/20
Barnett [1]  2/9
base [2]  11/3 12/9
based [2]  4/22 9/15
basis [4]  5/22 8/3 12/21 13/3
be [15]
been [5]  3/18 4/12 6/9 9/16 11/19
before [3]  1/11 3/17 9/18
begin [1]  9/4
beginning [1]  11/10
benefits [4]  4/22 5/1 5/6 5/23
best [1]  14/9
between [7]  3/10 4/13 5/6 5/24 7/4 8/1 10/12
bid [2]  7/5 7/10
blended [1]  10/16
boils [1]  13/6
both [3]  4/14 4/17 6/17
BP [4]  3/24 4/2 10/9 10/15

**B**

bring [1] 12/24
broad [1] 5/15
broad-ranging [1] 5/15
but [6] 5/2 5/8 5/18 11/2 11/23 12/2
Butterworth [1] 2/12
bylaws [1] 6/8

**C**

calculated [2] 5/22 10/20
calculating [1] 3/9
calculation [1] 13/13
calculations [1] 10/7
CALVIN [1] 1/21
came [1] 10/9
can [2] 7/7 10/1
case [11] 5/3 5/5 5/8 5/10 5/25 8/10 9/3 10/9 11/17 12/13 13/6
cases [1] 6/15
cause [1] 7/1
CCR [3] 2/16 14/6 14/13
CERTIFICATE [1] 14/5
certify [1] 14/8
character [2] 9/24 10/2
charged [1] 8/21
Charles [1] 2/7
Christian [1] 3/15
Cir [2] 3/15 3/16
circumstances [2] 8/24 11/9
citation [1] 7/20
cited [1] 7/8
city [5] 6/9 6/14 6/15 6/16 6/18
claim [2] 7/15 8/2
claimed [1] 8/7
claims [2] 3/24 7/14
clause [1] 5/11
clear [2] 5/12 12/3
client [5] 7/23 7/25 8/19 8/23 8/25
Code [3] 7/6 8/3 8/13
comes [1] 10/25
committee [3] 6/9 6/13 6/21
Common [1] 1/19
compensation [1] 5/16
computed [1] 10/4
computer [1] 2/20
computer-aided [1] 2/20
concerned [2] 10/8 12/16
concerning [2] 3/17 13/9
conducted [1] 4/15
conflict [1] 6/17
conflicts [1] 6/15
connection [4] 4/19 5/13 6/6 9/16
consents [1] 3/17
considered [2] 8/11 13/13
considering [3] 8/9 10/21 12/13
contingency [9] 3/21 4/1 4/16 4/17 4/22 5/11 6/5 7/22 7/24
contingent [11] 3/7 3/10 6/1 6/3 7/13 7/15 7/16 9/2 12/1 12/4 12/7
contract [2] 6/19 12/3
contracts [6] 4/16 4/17 5/11 6/11 7/3 7/11
contractually [1] 7/25
correct [1] 14/8
costs [3] 4/20 5/14 13/9
counsel's [1] 8/9
COURT [15]
crunch [1] 11/9
customarily [1] 8/21

**CV** [4] 1/7 1/7 1/8 1/8

**D**

Dairy [1] 7/18
damages [4] 4/20 4/21 5/14 5/15
DANIEL [1] 2/9
date [1] 5/18
decent [1] 12/11
decided [1] 3/13
decision [4] 3/11 7/19 8/14 13/7
declarations [2] 9/10 10/21
deduct [1] 12/17
deduction [1] 12/22
DEEPWATER [1] 1/5
defendant [2] 4/24 4/24
delegate [1] 6/8
Denham [1] 1/22
denied [2] 3/4 3/6
determination [1] 8/6
determined [1] 7/23
did [2] 6/17 6/24
different [1] 3/8
difficulty [1] 8/17
discharged [3] 4/6 4/11 7/1
dispute [3] 3/9 5/19 7/13
DISTRICT [4] 1/1 1/2 14/7 14/7
divided [1] 8/15
do [1] 6/18
document [2] 3/19 9/13
document 21922-3 [1] 9/13
does [2] 7/10 8/11
doesn't [1] 11/18
doing [1] 12/12
Domengeaux [1] 4/9
don't [3] 5/18 12/21 13/12
Donation [14] 1/15 1/18 1/21 2/3 4/13 4/15 4/21 4/23 6/8 6/8 6/22 7/2 7/5 9/13
Donation's [1] 3/24
done [2] 9/12 10/6
doubling [1] 12/10
doubts [1] 11/17
down [1] 13/6
Doyle [4] 2/16 14/6 14/13 14/13
due [2] 12/4 13/1
DYLAN [1] 2/6

**E**

e-mail [1] 6/17
earlier [1] 6/2
earned [4] 3/23 4/1 4/4 12/2
EASTERN [2] 1/2 14/7
economic [2] 4/21 5/15
Edward [4] 1/15 1/18 1/21 2/2
Edwards [1] 4/9
efforts [1] 11/24
eight [3] 8/15 8/16 9/4
elements [1] 5/16
else [1] 13/24
employed [1] 9/7
employment [5] 8/20 8/20 11/6 11/7 11/12
encompass [1] 11/18
encompasses [1] 5/16
engage [1] 6/22
enter [2] 6/11 13/9
entered [1] 4/12
entire [2] 13/17 13/18
entitled [3] 3/5 12/3 14/10
entitlement [1] 7/14

entity [1] 4/24
erroneous [1] 8/20
ESQ [8] 1/15 1/18 1/21 2/3 2/6 2/6 2/9 2/10
Essentially [1] 7/21
et [1] 2/9
ethical [1] 7/24
evaluation [2] 9/20 11/1
even [1] 8/8
ever [1] 12/21
evidence [1] 9/15
EXCERPT [2] 1/11 3/1
exhibits [2] 9/10 9/11
expended [1] 9/21
experience [5] 8/25 9/24 9/25 10/1 10/21
experienced [1] 10/11
expertise [1] 10/2

**F**

F.2d [1] 3/15
F.3d [1] 3/16
factor [5] 11/1 11/5 11/9 11/13 11/25
factors [12] 8/3 8/10 8/12 8/15 9/4 9/20 11/2 12/8 12/14 12/16 12/22 13/7
far [1] 12/15
Fawer [1] 2/5
Fayard [3] 1/21 1/21 4/8
FCRR [3] 2/16 14/6 14/13
fee [36]
fees [5] 3/6 3/23 4/1 4/4 13/10
Feldman [1] 10/10
filed [1] 3/18
final [3] 4/20 5/14 13/9
find [9] 3/8 5/19 6/4 6/13 6/15 6/19 7/3 9/16 13/3
firm [14] 3/5 4/3 4/5 4/10 4/13 7/9 7/14 7/16 9/8 9/19 11/10 11/23 12/2 13/2
firms [1] 4/7
first [5] 3/14 5/4 5/9 9/3 11/5
five [1] 10/18
fixed [3] 9/2 12/1 12/2
Florida [1] 1/22
Focusing [1] 8/7
following [1] 4/25
foregoing [1] 14/8
forth [1] 8/3
found [3] 7/8 7/22 10/11
Fred [3] 1/18 1/18 4/8
free [1] 12/6
front [2] 3/22 13/8
further [2] 13/3 13/11

**G**

Garside [11] 2/6 3/5 3/22 4/3 4/15 6/4 6/14 6/22 6/25 7/4 9/12
GELÉ [2] 2/6 12/24
general's [1] 7/7
gets [1] 3/10
GISLESON [1] 1/15
go [2] 7/10 12/14
going [3] 12/12 12/23 13/9
good [1] 9/23
governed [1] 7/16
governs [1] 7/13
granted [2] 3/3 3/4
Gravier [1] 2/3
gross [1] 4/22
group [1] 4/7
GULF [1] 1/5

## H

had [2]  4/12 11/11
handling [1]  8/2
has [6]  6/10 9/25 10/2 12/5 12/14 12/24
have [14]  3/9 3/18 6/6 7/13 9/9 10/6 11/2 11/11 11/17 11/19 11/19 12/18 12/20 13/12
having [1]  13/19
Hayes [1]  7/18
he [4]  9/25 10/2 10/10 10/16
here [1]  12/20
Herman [7]  1/15 1/15 1/18 1/18 4/7 4/7 4/8
higher [1]  5/21
highest [3]  7/24 12/19 12/20
hire [1]  6/14
hired [1]  7/1
his [2]  10/1 12/12
Honeycutt [2]  1/21 4/8
Honor [3]  13/12 13/19 13/22
HONORABLE [1]  1/11
HORIZON [1]  1/5
hour [6]  10/12 10/12 10/17 10/20 10/22 12/19
hourly [3]  9/6 10/4 10/16
hours [7]  9/5 9/5 9/14 9/17 9/18 9/21 10/24
how [1]  13/13
However [1]  11/19

## I

I'm [5]  6/2 12/12 12/15 12/23 13/9
identical [1]  4/12
identifiable [1]  8/10
if [7]  5/2 5/3 5/7 5/9 8/19 10/18 13/12
Immediately [1]  13/15
immense [1]  11/15
importance [1]  8/10
imposed [2]  8/23 11/8
in [64]
Inc [1]  7/18
include [2]  8/16 11/2
including [1]  4/7
influenced [1]  10/14
injustice [1]  8/11
insofar [2]  3/4 3/6
instance [2]  10/7 11/7
instead [1]  8/12
intervenors [1]  11/21
intervention [1]  3/18
into [3]  4/13 6/11 8/15
invalidity [1]  6/7
investment [1]  8/8
involved [7]  8/1 8/17 8/22 11/10 11/14 11/15 12/6
involving [1]  4/24
is [41]
issue [1]  6/1
issued [2]  6/18 7/19
it [11]  3/3 3/4 3/6 3/23 3/23 8/15 8/15 10/24 11/22 12/2 12/10
it's [5]  3/4 3/6 3/11 9/13 12/20
its [3]  3/21 6/10 6/16

## J

January [2]  1/7 3/2
Jessica [1]  2/13
Joel [1]  2/14
JOHN [1]  2/10
joint [8]  4/6 4/9 4/11 4/14 7/1 11/21 11/24 12/5
JOSEPH [1]  1/11
JR [2]  1/11 1/21
judge [6]  1/12 3/17 10/10 10/15 10/20 12/11
Judge Barbier [1]  12/11
Judge Barbier's [2]  10/15 10/20
Judge Feldman [1]  10/10
judgment [2]  4/23 13/10
July [3]  4/6 6/13 6/25
July 1 [1]  6/13
July 31 [2]  4/6 6/25
June [1]  10/11
June 1 [1]  10/11
just [1]  10/25
justifies [3]  11/5 11/13 11/25
justify [2]  11/3 12/8

## K

Katz [2]  1/15 4/7
kind [6]  3/9 12/4 12/6 12/8 12/22 13/4
know [2]  13/12 13/21
known [2]  9/25 10/2

## L

labor [2]  8/16 11/1
land [2]  6/10 6/23
LANDRY [1]  2/3
last [1]  11/25
law [11]  1/18 4/3 4/7 4/8 7/5 7/8 7/12 7/14 7/15 9/8 13/2
lawyer [3]  8/21 9/1 11/7
lawyers [5]  3/10 8/7 9/1 10/12 10/17
lawyers' [1]  11/11
LEACH [1]  2/6
least [2]  11/8 11/17
leaves [1]  13/1
legal [4]  5/15 8/18 8/22 10/5
Leger [2]  2/2 4/7
length [1]  8/24
less [1]  12/17
like [2]  7/4 11/18
likelihood [2]  8/19 11/6
limitations [2]  8/23 11/8
lion's [1]  11/20
LLC [3]  1/15 2/6 3/22
LLP [2]  2/5 2/9
locality [1]  8/21
loss [2]  4/21 5/15
LOUISIANA [16]
Louisiana's [1]  7/5
LUND [1]  2/9

## M

made [1]  12/5
magistrate [2]  1/12 3/17
mail [1]  6/17
make [1]  12/22
manager [2]  6/11 6/23
Mark [2]  2/9 2/13
market [2]  10/5 10/6
MATT [1]  2/3
matter [11]  5/2 5/4 5/7 5/9 5/19 7/9 8/7 10/14 10/22 10/23 14/10
matters [1]  8/9
mayor's [1]  6/9
MD [1]  1/4
MDL [1]  10/15
me [3]  3/23 13/8 13/25
meaning [1]  5/20
meant [1]  6/2
mechanical [1]  2/19
member [1]  6/10
mention [1]  12/15
mentioned [2]  4/16 11/2
MEXICO [1]  1/5
million [11]  4/2 5/6 5/7 5/23 5/24 5/24 5/25 6/1 6/3 6/3 11/16
Montgomery [1]  2/9
moratorium [2]  10/9 10/19
more [5]  7/14 8/16 10/20 12/12 12/17
most [3]  10/7 11/11 11/23
motion [8]  3/3 3/22 3/25 5/17 6/7 9/10 9/16 13/8
move [1]  9/6
Mr. [7]  9/9 9/9 9/23 10/1 10/21 10/22 12/24
Mr. Gelé [1]  12/24
Mr. Waltzer [3]  9/9 9/23 10/21
Mr. Wiygul [3]  9/9 10/1 10/22
multiplier [8]  11/3 11/5 11/13 12/1 12/9 12/11 12/13 12/23
multiply [1]  10/24
must [3]  8/11 11/22 12/25
my [5]  5/18 9/20 11/17 11/17 14/9
myself [1]  10/7

## N

nature [1]  8/24
nearly [1]  4/12
neutral [1]  12/17
New [8]  1/16 1/19 2/4 2/7 2/11 2/17 6/16 10/6
New Orleans [2]  6/16 10/6
next [1]  11/13
no [4]  12/5 13/3 13/8 13/25
nonduplicative [1]  9/17
nonexcessive [2]  8/6 9/18
not [7]  3/12 7/5 7/10 8/7 11/21 12/16 13/25
note [1]  3/14
novelty [1]  8/17
November [1]  7/8
November 23 [1]  7/8
now [10]  3/21 4/14 5/18 7/12 9/3 10/19 11/15 12/9 13/3 13/8
null [1]  6/19
number [5]  9/5 9/5 9/17 9/18 13/4
numbers [1]  3/19
numerous [1]  10/6

## O

O'Keefe [1]  1/16
obtained [6]  8/22 11/14 11/15 11/19 11/20 11/24
obtaining [2]  4/2 4/4
obvious [1]  12/7
occupied [1]  11/11
occurred [2]  3/25 4/5
October [1]  10/15
October 25 [1]  10/15
Offices [2]  1/18 4/8
Official [3]  2/16 14/6 14/14
offset [1]  12/25
oil [5]  1/4 1/4 3/25 10/8 10/19
on [15]
one [9]  3/11 3/12 3/20 4/12 7/4 7/14 7/22 9/11 11/1

## Q

ones [1] 11/2
only [1] 7/22
open [1] 12/7
opinion [3] 6/18 7/7 7/20
or [15]
orally [1] 6/17
order [8] 3/4 5/3 5/4 5/8 5/9 5/18 5/19 10/15
original [1] 3/12
originally [1] 7/18
Orleans [8] 1/16 1/19 2/4 2/7 2/11 2/17 6/16 10/6
other [8] 6/12 8/10 8/20 11/2 11/7 11/9 11/12 12/16
others [1] 7/9
our [1] 13/20
out [8] 3/11 7/17 8/12 8/13 10/9 10/25 13/7 13/15
outstanding [1] 11/16
over [2] 3/10 4/10
overall [1] 9/15
owed [1] 8/6
owing [1] 13/1
own [1] 9/10

## P

page [1] 9/13
paid [3] 7/23 12/25 13/14
paragraph [2] 4/17 5/21
part [4] 3/3 3/4 12/1 12/3
partial [1] 13/9
particular [2] 8/20 11/6
parties [1] 7/12
pay [1] 4/21
PEARCE [1] 2/10
Peneguy [2] 2/9 2/13
percent [9] 3/7 4/1 4/4 5/2 5/3 5/7 5/9 5/22 5/24
percentage [1] 7/24
percentages [2] 4/25 5/21
perform [1] 8/18
performing [1] 9/1
permitted [1] 12/19
physical [2] 4/20 5/14
portion [2] 7/16 11/22
Poydras [2] 2/10 2/16
practice [1] 10/3
preclude [2] 8/20 11/7
precluded [1] 11/12
present [3] 2/12 4/22 13/4
prevailing [1] 10/5
previously [2] 3/19 4/16
principals [1] 9/8
prior [2] 5/2 5/8
proceed [1] 3/17
proceedings [4] 1/11 2/19 14/3 14/10
process [1] 7/10
Procurement [1] 7/6
Products [1] 7/18
professional [3] 7/3 8/4 8/24
professionals [1] 6/12
properly [1] 8/18
proposition [1] 7/9
prosecuting [1] 3/24
Public [1] 7/5
pursuant [3] 3/21 4/15 4/23
puts [1] 13/19

## Q

question [1] 8/2
questions [1] 8/17
Quih [1] 2/13

## R

ranging [2] 5/15 10/12
rate [7] 9/22 10/6 10/16 10/20 10/22 12/19 12/20
rates [7] 9/6 10/4 10/5 10/8 10/11 10/18 12/18
RE [1] 1/4
read [1] 4/18
readily [1] 8/10
reading [1] 13/13
reads [1] 4/17
really [2] 8/16 13/6
reason [2] 12/17 13/4
reasonable [10] 3/9 8/6 9/6 9/17 9/21 9/22 10/13 12/13 13/5 13/6
received [6] 3/18 3/20 4/23 5/1 5/6 5/23
recent [2] 10/15 12/12
recently [1] 10/20
recess [1] 14/1
recitation [1] 5/13
recited [1] 3/19
recognized [1] 8/5
recognizing [1] 3/5
recommendation [1] 10/10
record [6] 3/14 3/18 3/19 9/13 9/15 14/10
recorded [1] 2/19
reducing [1] 13/4
reflected [1] 9/14
regard [1] 10/3
regarding [1] 6/7
registry [1] 13/15
rehearing [2] 3/11 7/20
reject [1] 6/5
related [1] 4/24
relationship [1] 8/25
relevant [2] 10/3 10/5
remaining [1] 12/21
remember [1] 5/18
rendered [2] 4/19 5/13
report [1] 10/9
Reporter [3] 2/16 14/7 14/14
represent [1] 7/2
representation [5] 4/10 4/11 4/15 5/12 9/19
represents [1] 9/17
reputation [1] 8/25
requests [1] 3/6
required [3] 3/14 7/10 8/17
requisite [1] 8/18
resolution [1] 7/15
resolved [4] 5/2 5/4 5/7 5/9
respect [1] 12/4
Responsibility [1] 8/4
restoration [2] 4/20 5/14
result [1] 11/20
results [4] 8/22 11/14 11/15 11/23
retainer [1] 6/23
Revised [1] 7/6
RIG [1] 1/4
rise [1] 14/2
risk [2] 12/6 12/6
risk-free [1] 12/6
Robert [1] 2/14
Roell [1] 3/16
Room [1] 2/16
Roy [1] 4/9

## S

said [1] 6/2
same [2] 7/20 10/1
Saucier [10] 3/11 7/18 8/13 9/4 9/20 11/1 12/14 12/16 12/22 13/5
saw [1] 12/11
say [3] 10/1 11/19 11/23
says [1] 3/23
secretary [2] 6/10 6/23
secretary-treasurer/land [2] 6/10 6/23
Section [1] 1/6
see [1] 12/21
seeks [5] 3/4 3/23 4/1 4/3 7/16
sent [1] 10/10
September [1] 6/21
September 28 [1] 6/21
service [1] 8/18
services [5] 4/19 5/13 7/4 8/22 9/1
set [8] 3/11 7/17 8/3 8/12 8/13 10/8 12/12 13/7
setting [5] 5/3 5/4 5/8 5/10 5/19
settlement [6] 4/2 4/4 4/5 5/23 5/25 11/16
share [1] 11/20
Shaw [2] 2/2 4/8
she [1] 6/24
should [4] 5/22 7/22 7/25 12/15
sic [1] 5/1
sign [1] 6/23
signed [4] 5/3 5/4 5/8 5/10
similar [1] 8/21
similarly [1] 10/11
simple [1] 8/7
six [1] 10/19
skill [2] 8/9 8/18
skills [1] 9/24
small [1] 12/3
Smith [1] 2/5
so [4] 6/17 6/18 10/24 12/23
So.2d [1] 7/19
software [1] 2/20
some [5] 7/16 11/14 11/22 12/4 12/8
SOREN [1] 1/15
sorry [1] 6/2
sort [1] 11/14
sought [2] 5/17 9/5
spectacular [2] 11/16 11/20
spill [5] 1/4 3/25 10/8 10/9 10/19
Springs [1] 1/22
St [1] 2/7
standards [1] 7/17
standing [1] 9/23
start [1] 9/20
stated [1] 12/25
STATES [3] 1/1 1/12 14/7
Statue [1] 7/6
stenography [1] 2/19
STEPHEN [1] 2/6
Street [4] 1/19 2/3 2/10 2/16
subject [2] 6/14 7/5
submitted [1] 9/16
subsequent [1] 6/18
subsumed [1] 12/18
subsumes [1] 11/8
successful [1] 11/23
such [2] 8/2 8/9

## S

suggested [1]  9/3
suit [2]  5/2 5/7
Suite [4]  1/19 2/3 2/7 2/10
summarize [1]  7/21
summary [1]  9/11
supported [1]  9/9
Supreme [5]  3/12 7/17 7/22 8/5 8/13
Supreme Court [4]  3/12 7/22 8/5 8/13
SW [1]  1/22

## T

take [2]  10/18 10/24
takes [1]  9/21
terminated [1]  9/19
than [2]  7/14 8/16
Thank [1]  13/22
that [63]
that's [6]  3/22 4/9 8/6 9/15 10/25 12/19
their [3]  4/15 9/9 9/10
them [2]  11/3 11/12
then [4]  6/16 7/19 9/6 12/11
there [4]  3/8 7/19 11/9 13/8
there's [1]  13/3
therefore [4]  5/20 5/25 9/20 13/9
these [1]  4/16
they [8]  4/10 5/12 8/15 8/16 12/3 12/16 12/17 12/18
thing [1]  11/18
things [1]  10/1
think [5]  10/18 11/3 11/25 12/8 12/20
thinking [1]  12/10
this [27]
thoroughly [1]  9/9
those [2]  9/11 12/8
thought [1]  12/10
three [2]  11/3 12/8
through [3]  6/9 6/16 7/10
time [8]  8/8 8/16 8/23 10/25 11/8 11/9 11/11 11/12
today [1]  3/20
Toni [4]  2/16 14/6 14/13 14/13
took [1]  4/10
total [3]  4/1 9/13 12/24
transcript [1]  14/9
transcription [1]  2/20
treasurer [2]  6/10 6/23
trial [6]  5/3 5/5 5/8 5/10 5/20 11/19
triggered [1]  5/21
true [1]  14/8
turn [1]  7/25
Tusa [4]  2/16 14/6 14/13 14/13
two [2]  4/5 6/15

## U

unambiguous [1]  5/12
uncompensated [1]  9/12
under [3]  3/18 4/11 7/6
understanding [1]  14/9
undertaking [2]  5/15 12/6
UNITED [3]  1/1 1/12 14/7
unrelated [1]  6/15
up [2]  5/1 5/23
upon [1]  8/8
upping [1]  12/14
us [3]  9/21 12/24 13/19
used [1]  10/18
using [1]  2/19

## V

vacuum [1]  12/10
valid [1]  6/5
value [2]  4/22 13/4
various [4]  6/5 8/1 8/12 9/10
venture [7]  4/6 4/9 4/14 7/1 11/21 11/24 12/5
venture's [1]  4/11
via [1]  6/17
void [1]  6/19
voted [2]  6/13 6/21

## W

wait [1]  13/19
waived [1]  6/16
waiving [1]  6/14
Waltzer [25]
was [24]
way [2]  3/8 12/15
we [5]  3/9 7/13 9/4 9/6 12/19
welcome [1]  13/23
well [4]  4/20 5/14 9/25 10/2
well-known [2]  9/25 10/2
were [1]  11/16
what [4]  3/10 7/21 8/11 13/5
when [6]  3/9 4/10 7/13 11/10 12/14 13/6
where [1]  10/11
whether [5]  9/2 9/5 11/17 12/1 13/6
which [16]
while [1]  3/13
who [1]  3/10
whole [2]  5/12 11/18
whose [1]  9/24
WILKINSON [1]  1/11
will [3]  4/21 8/20 11/7
Wisner [6]  1/15 1/18 1/21 2/2 3/24 9/12
within [1]  5/20
without [1]  7/1
Withrow [1]  3/16
Withrow v [1]  3/16
Wiygul [21]
WL [1]  7/8
work [2]  5/16 9/12
worked [1]  9/18
would [3]  11/18 12/11 12/24
Wright [1]  4/9
written [1]  3/16

## Y

Yeah [1]  13/21
years [6]  4/5 9/25 10/3 10/18 10/19 13/20
you [3]  10/18 13/12 13/22
You're [1]  13/23
your [5]  13/12 13/13 13/13 13/19 13/22
Your Honor [3]  13/12 13/19 13/22

## Z

Zach [1]  2/12