Case 2:10-md-02179-CJB-JCW   Document 22295-2   Filed 02/22/17   Page 1 of 1

## EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHARLES A. BOGGS | * | CIVIL ACTION NO.: 2:16-CV-13476 |
| VERSUS | * | SECTION: J |
| BP EXPLORATION & PRODUCTION, INC., ET AL. | * | JUDGE BARBIER |
| | * | MAG. JUDGE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## FILING OF SWORN STATEMENT FOR DISCLOSURE OF B3 CLAIMS

8/1/2016                                                  LAED CM/ECF - Live

## Complaints and Other Initiating Documents
<u>2:16-cv-13476 Boggs v. BP Exploration & Production, Inc. et al</u>

### U.S. District Court

### Eastern District of Louisiana

#### Notice of Electronic Filing

The following transaction was entered by Loehn, Thomas on 8/1/2016 at 1:19 PM CDT and filed on 8/1/2016

**Case Name:**      Boggs v. BP Exploration & Production, Inc. et al
**Case Number:**   <u>2:16-cv-13476</u>
**Filer:**            Charles A. Boggs
**Document Number:** <u>1</u>

**Docket Text:**
**COMPLAINT against All Defendants (Filing fee $ 400 receipt number 053L-5602712) filed by Charles A. Boggs. (Attachments: # (1) Exhibit, # (2) Exhibit, # (3) Exhibit)Attorney Thomas Edward Loehn added to party Charles A. Boggs(pty:pla).(Loehn, Thomas)**

**2:16-cv-13476 Notice has been electronically mailed to:**

Thomas Edward Loehn    tloehn@yahoo.com, cguice@boggsloehnrodrigue.com, jhiggins@boggsloehnrodrigue.com, kheld@boggsloehnrodrigue.com

**2:16-cv-13476 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091133085 [Date=8/1/2016] [FileNumber=8112103-0]
[a84b5e48073171a34aa891e98fee8fbd61978f7a97fc0b5c597db664ee32476c6814
9a5f9c7cb4357333684091da4982ebea4e548f54fdbf283b7b99d81d6ffe]]
**Document description:**Exhibit
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091133085 [Date=8/1/2016] [FileNumber=8112103-1]
[75ece30491e29a2d0034069acf20bb951bc450ffd6bfd81bdd4fb81405692ee64816
631793f20cd1d353ca22a05e96712c49d2b45cdc36c4a8ec85d60e15e579]]
**Document description:**Exhibit
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091133085 [Date=8/1/2016] [FileNumber=8112103-2]
[3386d5bc791c243c6e2c60903fd63f82ae3c143b4b23aff9a3c86e9e6636003dea85
6f7d43d35c82b6acd9168d6c14f46e3fcda3e1336548e2daba330b75b689]]
**Document description:**Exhibit
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091133085 [Date=8/1/2016] [FileNumber=8112103-3]
[90c0f97969f7f503a92a3076972a2473831e80165fbadb500277c97200c836f14dfa
76a9691d5a7cc33509f000eeaff29fb78aa6c9dac6e8a3e4c66500f51e73]]

LAED CM/ECF - Live

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL 2179 |
| | * | SECTION: J |
| | * | JUDGE BARBIER |
| This Document Relates to: *Pleading Bundle B1 and B3* | * | MAG. JUDGE SHUSHAN |

| | | |
|---|---|---|
| **Charles A. Boggs** | * | CIVIL ACTION NO. _____ |
| | * | SFJ No.: 11988 |
| **VERSUS** | * | SECTION J |
| | * | |
| **BP Exploration & Production, Inc.; BP America Production Company; BP p.l.c.; Transocean Ltd.; Transocean Offshore Deepwater Drilling, Inc.; Transocean Deepwater, Inc.; Transocean Holdings, LLC; Triton Asset Leasing GmbH; Halliburton Energy Services, Inc.; and Sperry Drilling Services, a division of Halliburton Energy Services, Inc.** | * | JUDGE BARBIER |
| | * | MAG. JUDGE SHUSHAN |

## COMPLAINT AND/OR AMENDED COMPLAINT FILED ON BEHALF OF CHARLES A. BOGGS

### I.

NOW COMES, Charles A. Boggs, a person of the full age of majority and resident/citizen of the State of Mississippi, and, with respect avers:

1.    Plaintiff filed a short form law joinder (hereinafter referred to as "SFJ"), alleging personal injury and property damage, as inter related, and joined claims and causes of

action. The short form lawsuit (Document No. 11988) is attached hereto as Exhibit A and made a part hereof. These two counts are adopted herein and plead as if copied in extenso.

2.    Plaintiff filed an Objection to Fairness of Proposed Coastal Real Property Claim Settlement and Proposed Property Damages Settlement on June 19, 2012 (Document No. 42 in 2:10-cv-07777), which is attached, along with its corresponding exhibits, as Exhibit B. and made a part hereof.

3.    Plaintiff is an individual who was injured as a result of the exposure to oil and/or oil-dispersing chemicals and/or decontaminants on and around his residence at 630 West Beach Boulevard, Long Beach, Mississippi.

4.    Defendant, BP Exploration & Production, Inc. (hereinafter "BP Exploration") is a Delaware corporation with its principal place of business in Warrensville, Illinois. BP Exploration was a leaseholder and the designated operator in the lease granted by the former Minerals Management Service (hereinafter "MMS") allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252, the location known as "Macondo," where the oil spill originated.[1]  BP Exploration was designated as a "responsible party" by the U.S. Coast Guard under the Oil Pollution Act of 1990 (hereinafter "OPA"), 33 U.S.C. § 2714.

5.    Defendant, BP America Production Company (hereinafter "BP America") is a Delaware corporation with its principal place of business in Houston, Texas. BP America was the party to the drilling contract with Transocean Ltd. for the drilling of the Macondo well by the *Deepwater Horizon* vessel.

6.    Defendant, BP P.L.C., is a British public limited company with its corporate headquarters in London, England. BP P.L.C. is a global parent company of the worldwide business

---

[1] The MMS, a federal entity that divides the Gulf of Mexico's seafloor into rectangular "blocks," and then auctions the rights to drill for oil and gas beneath those blocks of seafloor, was reorganized as the Bureau of Ocean Energy Management, Regulation, and Enforcement (BOEMRE) on June 18, 2010; however, it is referred to as the MMS throughout this document.

operating under the "BP" logo. BP. P.L.C. is one of the world's largest energy companies, with over 80,000 employees and $239 billion revenues in 2009. BP P.L.C. operates it various business divisions, such as the "Exploration and Production" division in which BP Exploration and BP America fall, through vertical business arrangements aligned by product or service groups. BP P.L.C.'s operations are worldwide, including in the United States. Defendants, BP Exploration and BP America are wholly-owned subsidiaries of BP P.L.C. and are sufficiently controlled by BP P.L.C. so as to be BP P.L.C.'s agents in Louisiana and the U.S. more generally.

7.       BP P.L.C. states that it is the leading producer of oil and natural gas in the United States and the largest investor in U.S. energy development. A sampling of BP P.L.C.'s contacts with the U.S. are as follows: (a) BP P.L.C.'s American Depository Shares are listed on the New York Stock Exchange (hereinafter "NYSE") and BP P.L.C. is the largest non-U.S. company listed on the NYSE; (b) roughly 40% of BP's shares are owned by U.S. individuals and institutions; ( c) BP P.l.C. files annual reports with the U.S. Securities and Exchange Commission; (d) approximately 60% of BP P.L.C.'s fixed assets are located in the U.S. or the European Union; and (e) BP P.L.C. reports having 2,000 U.S.-based employees in non-Exploration and Production, non-Refining and Marketing BP entities.

8.       BP Exploration, BP America and BP P.L.C. are generally referred to herein collectively as "BP." As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operations.

## II. JURISDICTION AND VENUE

9.       Jurisdiction exists before this Court pursuant to Article II, Section 2 of the United States Constitution, which the federal judiciary to hear "all Cases of admiralty and maritime Jurisdiction."

10.       In addition, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1333, and the Admiralty Extension Action 46 U.S.C. § 30101.

3

11.     This Court has personal jurisdiction over BP Exploration and BP America because each is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

12.     This Court may exercise personal jurisdiction over BP P.L.C. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, the federal long-arm jurisdiction provision, because claims in this action arise under federal law, the exercise of jurisdiction over BP P.L.C. is consistent with the United States Constitution and laws, BP P.L.C. will be served with a summons and this Complaint.

13.     This Court has jurisdiction over BP P.L.C. pursuant to Louisiana's long-arm statute (La. Rev. Stat. Ann. § 13:3201(B), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. Plaintiff's causes of action arise out of wrongful contact committed by BP P.L.C., directly or indirectly by its agents, which caused injury or damage in Louisiana by an offense and/or quasi-offense committed through an act or omission outside of Louisiana. These act or omissions took place both before the blowout resulting in the oil spill, which is described more fully below, and in the negligent conduct of BP P.L.C. after the blowout in attempting to contain the spill, BP P.L.C. regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. BP P.L.C. has had continuous and systematic contact in Louisiana (and with the United States more generally).

14.     In addition, this Court also has personal jurisdiction over BP P.L.C. under agency principles because BP P.L.C.'s agents, BP America and BP Exploration, do business in Louisiana. In BP P.L.C.'s Annual Report for 2009, in which its presents a consolidated financial statement that includes BP America and BP Exploration, BP P.L.C. states that it "controls" both BP America and BP Exploration, among other subsidiaries, meaning that it has "the power to govern the financial operating policies of the [subsidiary] so as to obtain benefit from its activities...."

15.     BP P.L.C.'s direct, joint and/or assumed responsibility and/or liability for safety and well control, both before and/or after the explosions and blowout on April 20, 2010, is further

4

evidenced by the announcement of the Macondo Project on the BP website hosted and copyrighted by BP P.L.C., the publication of information concerning the casualty and spill on the BP website hosted and copyrighted by BP, the express and/or implied acceptance of responsibility for safety of BP operations in North America and the Gulf of Mexico in statements by officers of BP P.L.C., the presence (upon information and belief) of a BP P.L.C. officer or employee on the *Deepwater Horizon* for the celebration that occurred shortly before the explosions and fire, the direct participation of BP P.L.C. employees in the post-casualty investigations, the direct participation of BP P.L.C. officers employees in the post-casualty well-control efforts, and the direct participation of BP P.L.C. in the establishment and/or funding of the Escrow Fund and/or Gulf Coast Claims Facility.

16.     Venue is appropriate in this District under 28 U.S.C. § 1391, because the events or omissions giving rise to the claims asserted herein occurred in this District.

17.     The amount in controversy exceeds $75,000.00 exclusive of interests and costs.

### III. FACTUAL

### ALLEGATIONS

A.     The *Deepwater Horizon* Catastrophe

18.     The *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible oil vessel built in 2001. It was one of the largest vessels of its kind.

19.     BP leased the *Deepwater Horizon* through September 2013 to drill exploratory wells at Macondo prospect site in Mississippi Canyon Block 252, a location on the Outer Continental Shelf off the coast of Louisiana.

20.     On April 20, 2010, the workers on the *Deepwater Horizon* oil rig lost control of the Macondo well just after the final cementing work was completed. During the course of the cementing work, an explosion occurred on the *Deepwater Horizon* and it caught fire.

21.     The explosion and fire caused the deaths of eleven (11) people and injures of many other workers on the vessel. After burning for two (2) days, the vessel sank to the ocean floor.

5

22.      The *Deepwater Horizon* has been connected to the wellhead at the seafloor by a 5,000 foot pipe called a riser. As the *Deepwater Horizon* tipped into the sea, it pulled the riser down with it, bending and breaking the pipe. Oil flowed from the now-open end of the riser, as well as through two breaks along its length. An emergency valve, installed on the wellhead for just such a disaster, failed to seal the wellhead as it should have, causing the blown-out well to spew oil into the Gulf waters (the "Oil Spill").

23.      Crude oil was discharged before the *Deepwater Horizon* finally sank on April 22, 2010, and the rate of discharge increased once the *Deepwater Horizon* sank to the ocean floor.

24.      After the explosions, BP attempted to downplay and conceal the severity of the Oil Spill. Government investigators have found BP's initial leak estimate of 1,000 barrels per day to be a fraction of its measured leakage amount, which in fact exceeded 50,000 barrels per day. Additionally, an internal BP document from around the time of the spill shows that the company's own analysis had actually estimated that the rate of oil spillage could reach 100,000 barrels, or 4,200,000 gallons per day.

25.      Each day during the course of the Oil Spill, tens of thousands of barrels of crude oil gushed from the wellhead and broken riser, bubbling up to the surface and flattening out into a widening slick of oil, as well as spreading out in vast subsurface plumes. On the surface, the shifting mass was large enough to be visible from outer space, at times covering tens of thousands of square miles, and spreading with the wind and currents towards the Gulf States coastlines.

26.      Beginning on or about April 30, 2010, oil made landfall along the Gulf Coast on white sand beaches, leased and privately owned subsurface areas, and in ecologically sensitive marshes and estuaries. Under water, immense plumes of oil and dispersant chemicals swirled through the entire water column, damaging ecosystems throughout the Gulf of Mexico.

27.      The oil spewed from the well for over twelve (12) weeks until BP finally capped the well on July 15, 2010. Ultimately, almost five million barrels (210 million gallons) of crude oil spilled in the Gulf of Mexico.

28.      The crude oil carried with it significant public health risks. Crude oil has many

6

highly toxic chemical ingredients that can damage every system in the body.

**B.    The Response Effort and the Use of Chemical Dispersants**

29.    In the wake of the disaster, and pursuant to its duties BP began implementing a program to attempt to prevent the gushing oil from reaching the shores of the Gulf states. This disaster response plan had three primary components: offshore containment; shoreline protection; and subsea response.

30.    As part of its offshore containment response program, BP directed the use of vessels to, *inter alia,* recover oil coming to the surface of the Gulf of Mexico; skim oil from the surface of the water; and conduct in-*situ* burning of oil that had reached the surface of the water. BP also employed vessels to tow and deploy booms-floating barriers intended to contain, deflect, or hold back oil floating in the water's surface.

31.    In addition, BP's response plan included the use of chemical dispersants that were intended to break down the oil into finely dispersed droplets.

32.    The dispersants used by BP are known to cause, *inter alia,* headaches; nausea; vomiting; diarrhea; abdominal pains; dizziness; chest pains and tightness; irritation of the skin, eyes, nose, throat and lung; breathing difficulties and respiratory system damage; asthma attacks; hypertension; damage to the liver and kidneys; central nervous system depression; neurotoxic effects; damage to red blood cells; genetic damage and mutations; reproductive and development damage; immune system damage; cardiac arrhythmia; cardiovascular damage; and increased severity of chronic obstructive pulmonary disease.

33.    To date, BP and its contractors have used more than 1.8 million gallons of chemical dispersants in the Gulf of Mexico in connection with the Oil Spill.

**C.    Plaintiff's Exposure to Oil and Harmful Chemicals and their Resulting Injuries and Damages**

34.    Plaintiff resided and still currently resides at 630 West Beach Boulevard, Long Beach, Mississippi. He was exposed to areas where oil had reached his property. In this capacity, Plaintiff was exposed to oil and dispersants.

7

35.     As a result of his exposure to the crude oil and chemical dispersants, Plaintiff began to suffer serious personal bodily injury.

36.     Plaintiff was a leukemia patient, having been treated first with chemotherapy (which resulted in a remission), only to suffer a recurrence. The recurrence of leukemia caused plaintiff to undergo further chemotherapy, followed by a bone marrow transplant.

37.     This sequence of the disease, chemotherapy, repeat chemotherapy, and having his immune system so fully weakened so that he could accept the bone marrow of a non-related donor without rejecting the foreign bone marrow, destroyed the immune system of plaintiff in the near term and debilitated his immune system for the remainder of his life.

38.     Prior to the above, plaintiff had an active law practice in New Orleans, but the cancer and its treatment so weakened plaintiff (completely depleting his energy and morale), so that he was required to retire from his active law practice, sell his home, and move to retirement in Long Beach, Mississippi. Plaintiff's practice consisted of medical malpractice and, after the cancer and recurrence, he could not provide the required level of representation and advocacy.

39.     At the time of the catastrophe herein, plaintiff and his wife were peacefully settled at their residence in Long Beach, Mississippi, on property which has been in the family since the end of the Civil War.

40.     The oil from the Deep Water Horizon intruded on the home of plaintiff and his wife, causing a film to develop on the house. In addition, oil infiltrated the plaintiff's property via a bayou just a few feet north of plaintiffs home.

41.     As a result of the leakage of oil and the dispersants, Plaintiff, being extremely immune compromised, suffered greatly. He had congestion of his airway, nose, throat and lungs. He suffered eye irritation, tearing and congestion. He had abdominal and bowel illness. Such was his illness that his local oncologist recommended that he return to M. D. Anderson Hospital in Houston, Texas, for evaluation and treatment.

42.     Upon the advice of his oncologist, plaintiff flew to M.D. Anderson and was evaluated for the possibility of another recurrence of leukemia.

8

43. Further, plaintiff came under the care of a lung specialist who treated his symptoms caused by exposure to oil on his home and land. The symptoms were made much more severe due to plaintiff's immune deficiency and fibrosis of the lung caused by many previous doses of chemotherapy.

44. Plaintiff was damaged in two ways, both interrelated. First, by the oil films which settled on his home. The GCCF inspected the home and paid $5,500 to clean the oil from the home to attempt to assuage some of plaintiff's symptoms. See attached Exhibit C. The GCCF hired counsel before paying plaintiff $5,500. After inspecting plaintiff's home and the aforesaid bayou, the GCCF paid to have the oil film removed by a contractor who power washed the exterior of the house and the porches. So thick was the oil on the porches, that they had to be repainted, paid for by GCCF. Plaintiff is entitled to compensatory damages and punitive damages under applicable law.

45. Second, the aforesaid oil and its fumes, laying as a film on plaintiff's home, caused severe and debilitating injury to plaintiff, which is referenced above and the full extent of which will be proved at the trial of this matter.

**D.     BP's Willful and Wanton Conduct**

46. BP focused primarily on profit and disregarded public and environmental health and safety while undertaking ultra-hazardous activities on the *Deepwater Horizon* by, among other things:

a.     performing a critical well pressure test with untrained and unqualified personnel and callously ignoring and/or misinterpreting abnormal "red flag" pressure test results;

b.     using a well design with too few barriers to gas flow;

c.     failing to use a sufficient number of "centralizers" to prevent channeling during the cement process;

d.     failing to run a bottoms up circulation of the drilling mud prior to beginning the cement job;

e.     failing to run a cement bond log to evaluate the integrity of the cement job;

9

f.    failing to deploy the casing hanger lockdown sleeve prior to commencing the mud
      displacement process in the well;

g.    using an untested, abnormally large volume of mixed spacer solutions to avoid
      having to properly dispose of the two separate space substances as hazardous
      wastes;

h.    grossly inadequate maintenance, and reckless and improper operation and use of
      the blowout preventers appurtenant to the *Deepwater Horizon*;

i.    failing to ensure that oil would be expeditiously and adequately be contained
      within the immediate vicinity of the Deepwater Horizon in the event of a blowout;

j.    failing to ensure the adequate safeguards, protocols, procedures and resources
      would be readily available to prevent and/or mitigate the effects of an uncontrolled
      oil spill; and

k.    failing to use reasonably safe dispersant chemicals in the attempt to respond to the
      oil spill.

47.    BP's corporate culture caused and allowed it to disregard the lessons it should have
learned and applied from previous incidents at its facilities that resulted in extensive damages
and loss of life; instead, it continued to place others at risk in the interests of cost-cutting and
financial gain.

48.    In addition, after the blowout and before the well was finally sealed, BP was aware
of procedures that would immediately block the flow of oil into the Gulf, yet it delayed the
implementation of any such procedures, and limited its efforts to plug the well to options that would
salvage the well for future use, instead of selecting procedures that would stop the flow of the
oil as soon as possible regardless of the well's continued functionality. As such, BP increased
the magnitude of, and the damage caused by, the spill by willfully, wantonly, and/or recklessly
choosing its profits over the lives of the workers on the vessel, the safety of the environment, and
the health, welfare, and value of the people, businesses, and property of the Gulf states.

49.    BP, by its conscious and/or deliberate unreasonable acts and/or omissions

10

complained of herein, displayed gross negligence, reckless indifference, willfulness, and/or wantonness.

## IV. CAUSES OF ACTION

### A. CAUSE OF ACTION AS TO BP (NEGLIGENCE UNDER GENERAL MARITIME LAW)

50.     Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully stated herein.

51.     The existence and breach of Defendant BP's legal duties are established under general maritime law.

52.     At all times material hereto, BP owed duties of ordinary and reasonable care to Plaintiff in connection with the drilling operations and maintenance of the *Deepwater Horizon*, including it appurtenances and equipment.  BP additionally owed duties to guard against and/or prevent the risk of an oil spill and to mitigate the harm if an oil spill did occur.

53.     Further, BP owed duty to Plaintiff to exercise due care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures.

54.     BP had a heightened duty of care to Plaintiff because of the great danger associated with exposure to oil, dispersants and/other hazardous chemicals.

55.     The risk of injury and loss to Plaintiff was reasonably foreseeable, and BP knew of the dangers associated with deep water drilling.  Specifically, at all times relevant to this litigation, BP knew or should have known that:

    a.     crude oil contains chemicals hazardous to human health;

    b.     chemical dispersants contain chemicals hazardous to human health;

    c.     Plaintiff should have been adequately and timely warned of the harmful effects of crude oil and chemical dispersants, and the hazardous substances that they contain; and

    d.     failure to exercise reason able care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures would result in

11

harm to Plaintiff.

56.     BP breached its duty of care to Plaintiff in the following non-exclusive respects:

a.      failing to prevent the explosion on board the *Deepwater Horizon*;

b.      failing to cap the Macondo well in a timely manner;

c.      failing to warn Plaintiff, public officials, and government agencies of the harmful effects of crude oil, chemical dispersants and any mixture thereof, and the hazardous chemicals they contain;

d.      failing to conform to the provision of the National Contingency Plan relating to the use of aerial chemical dispersants in the proximity of vessels and shallow waters;

e.      failing to coordinate and conduct aerial spraying sorties in a manner so as to eliminate the risk of vessels and crew members being exposed to aerial chemical dispersants; and

f.      failing to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures.

57.     Defendants' breach of their duties posed an unreasonable risk of harm to Plaintiff.

58.     Plaintiff suffered injury, loss and damages as a direct and proximate result of Defendants' willful, wanton, reckless, and/or grossly negligent breach of their aforementioned duties and, therefore, Plaintiff is entitled to recover actual and punitive damages.

**B.      FOR A FOURTH CAUSE OF ACTION AS TO BP (GROSS NEGLIGENCE UNDER THE GENERAL MARITIME LAW)**

59.     Plaintiff realleges each and every allegation set forth in all proceeding paragraphs as if fully restated herein.

60.     BP had a heightened duty of care to Plaintiff because of the great danger associated with exposure to oil dispersants, and/or hazardous chemicals.

61.     BP breached their legal duty to Plaintiff and failed to exercise reasonable care and

12

acted with reckless, willful, and wanton disregard in their negligent failure to prevent and contain the Oil Spill.

62.     BP knew or should have known that their willful, wanton, and reckless conduct would cause injury to Plaintiff.

63.     Plaintiff's injury and damages were caused by Defendants' willful, wanton, and reckless, and/or grossly negligent conduct and, therefore, Plaintiff is entitled to recover actual and punitive damages.

## C.     FOR A FIFTH CAUSE OF ACTION AS TO BP (NEGLIGENCE PER SE UNDER GENERAL MARITIME LAW AND FEDERAL LAW)

64.     Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully stated herein.

65.     BP's conduct with regard to the manufacture, maintenance and/or operation of oil- drilling vessels such as the *Deepwater Horizon*, the release of hazardous and toxic chemicals into the environment, and the application of dispersants and other hazardous chemicals is governed by federal laws and permits issued under the authority of these laws.  These laws and permits create statutory and regulatory standards that are intended to protect and to benefit Plaintiff, including, but not limited to, those that govern the National Oil and Hazardous Substances Contingency Plan, *see, e.g.,* 40 C.F.R. § 300.150.  BP failed to adhere to the requirements for response actions established by the National Contingency Plan, 29 C.F.R. § 1910.20.  BP therefore breached its responsibilities under this regulatory provision.

66.     In addition, the federal Bureau of Safety and Environmental Enforcement ("BSEE") found that BP violated the following federal regulations:

a.      BP failed to protect health, safety, property, and the environment by failing to perform all operations in a safe and workmanlike manner, in violation of 30 C.F.R. § 250.107(a)(1);

b.      BP did not take measures to prevent unauthorized discharge of pollutants into offshore waters, in violation of 30 C.F.R. § 250.300;

13

c.     BP failed to take necessary precautions to keep the well under control at all times, in violation of 30 C.F.R. § 250.401(a);

d.     BP did not cement the well in a manner that would properly control formation pressures and fluids and prevent the direct or indirect release of fluids from any stratum through the wellbore into offshore waters, in violation of 30 C.F.R. §§ 250.420(a)(1) and (2);

e.     BP failed to conduct an accurate pressure integrity test, in violation of 30 C.F.R. §250.427;

f.     BP failed to maintain the *Deepwater Horizon's* BOP system in accordance with the American Petroleum Institute's Recommended Procedure 53 section 18.10.3, in violation of 30 C.F.R. § 250.446(a);

g.     BP failed to obtain approval of the Temporary Abandonment procedures it actually used at the Macondo well, in violation of 30 C.F.R. § 250.1721(1);

h.     BP failed to conduct an accurate pressure integrity test at the 13-5/8" liner shoe, in violation of 30 C.F.R. § 250.427; and

i.     BP failed to suspend drilling operations at the Macondo well when the safe drilling margin identified in the approval application for the permit to drill was not maintained, in four separate violations of 30 C.F.R. § 250.427(b).

67.     BP's violations of these statutory and/or regulatory standards constitute negligence *per se* under federal law, as well as general maritime law.

68.     BP had actual and/or constructive knowledge of the facts and circumstances leading to and causing the incidents described herein, which in turn caused Plaintiff's injuries, and their actions and inactions were grossly negligent, reckless, willful and/or wanton.

69.     As a direct and proximate cause of BP's violation of statutory and/or regulatory standards, the Plaintiff has suffered injuries and is entitled to actual and punitive damages.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.   compensatory damages in amounts to be determined at trial;

2.   actual damages including, but not limited to:

    a. past future medical expenses;

    b. past and future loss of personal services; and

    c. past and future intangible losses, including those for pain and suffering.

3.   punitive damages;

4.   pre-judgment and post-judgment interest at the maximum rate allowable by law;

5.   attorney's fees and costs of litigation; and

6.   any other relief the Court deems just and proper.

Respectfully submitted,

**BOGGS, LOEHN & RODRIGUE**

/s/Thomas E. Loehn
**THOMAS E. LOEHN (LA 8663)**
2324 Severn Avenue, Suite 100
Metairie, Louisiana 70001
Telephone: (504) 828-1202
Facsimile: (504) 828-1208
E-mail: tloehn@yahoo.com
*Attorney for Plaintiff, Charles A. Boggs*

/s/Charles A. Boggs
**CHARLES A. BOGGS (MS 982837)**
630 West Beach Boulevard
Long Beach, Mississippi 39560
Telephone: (228) 806-8228
Facsimile: (228) 863-6795
E-mail: cboggs8@gmail.com
*Attorney for Plaintiff, Charles A. Boggs*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2016, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court of the Eastern District of Louisiana via the CM/ECF System, and provided notice by and through LexisNexis File & Serve to all counsel of record.

/s/ Thomas E. Loehn
THOMAS E. LOEHN

15

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>Civil Action No. 10-MD-2179-CJB-SS |
|---|

| FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND<br>POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND<br>ALL OTHER B3 CLAIMS |
|---|

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| BOGGS | Charles | Archibald | |

| Phone Number<br>228-806-8228<br>228-863-6795 | E-Mail Address<br>cboggs@gmail.com |
|---|---|

| Current Mailing Address<br>630 West Beach Blvd | City / State / Zip<br>LONG Beach, Ms.<br>39560 |
|---|---|

| Employer at Time of Incident<br>RETIRED/S.S. DISABILITY | Date of Birth<br>3-13-46 |
|---|---|

| Attorney Name and Firm<br>Boggs, Loehn + Rodrigue<br>Thomas E. Loehn | Attorney E-Mail Address<br>Tloehn@yahoo.com |
|---|---|

| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address?<br>630 West Beach Blvd., LONG Beach, Ms. 39560 |
|---|

| Any prior name used by Plaintiff from April 2010 to present?<br>N/A |
|---|

| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff<br>0554 | Business Name (for non-medical, non-personal injury claims) |
|---|---|

Please indicate your status:

✓ Properly opted out of the Medical Benefits Settlement* (See Attached)

☐ Not a member of the Medical Benefits Settlement Class

☐ Member of the Medical Benefits Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A.

Did you participate in any of the following Response Activities* in response to the *Deepwater Horizon* incident?

☐ Captain, crew, or other worker employed under the Vessels of Opportunity ("VoO") program who performed Response Activities.

☐ Workers employed to perform the decontamination of vessels involved in Response Activities.

☐ Captains, crew, and other workers on vessels other than VoO who performed Response Activities.

☐ Onshore personnel employed to perform Response Activities.

☐ Persons involved in the recovery, transport, and decontamination of wildlife affected by the *Deepwater Horizon* incident.

* Response Activities is defined as the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

**You are pursuing a claim against at least one B3 Defendant by way of (*select all that apply*):**

✓ A Previously-Filed Individual Action, Eastern District of Louisiana Case No. 2:16-cv-13476

☐ A New Individual Action (filed because plaintiff previously had only a short-form joinder* on file), Eastern District of Louisiana Case No. _____.

☐ A New Individual Action (filed because plaintiff previously was part of Complaint with more than one plaintiff or a putative class action).  List both prior Eastern District of Louisiana Case No. _____ and new Individual Action Case No._____

☐ Other:_____

* A copy of your timely SFJ(s) (and any PPFs) must be included with your service of this Exhibit A.

**You are pursuing a claim against at least one B3 Defendant for (*select all that apply*):**

☐ Personal injury or wrongful death arising from circumstances <u>other than</u> alleged exposure to crude oil or dispersants.

    If so, describe the alleged injury and identify the location and approximate date of the alleged

    injury: _____

    _____

☑ Medical monitoring, personal injury, or wrongful death arising from alleged exposure to crude oil or dispersants.

    If so, identify the location and approximate date of the alleged exposure: MY home,
630 West Beach Blvd, Long Beach, Ms Exposure
To oil on my home, my Land + in my Bayou From Time OF
ARRIVAL OF SAID OIL & Fumes

    If so, describe the alleged injury and identify the location and approximate date of the alleged

    injury: Leukemia Patient- Severe + Dibilitating
Symptoms - Lung Breathing, Congestion, Bed-Ridden
(See Multiple Doctor Reports, Doctor & Medicine Bills in
GCCF Claim File + Daily Log in GCCF File

☐ Vessels of Opportunity Contract Claim.

☐ Non-Vessels-of-Opportunity Contract Claim Related to the Response.

☐ Other. Please specify: _____ .

**GCCF Claim:**

Did you, the plaintiff seeking relief, present this claim to the Gulf Coast Claims Facility ("GCCF")?

    Yes ____✓____ .     No _____ .

If Yes, please identify:

    GCCF paid $5,500
to remove oil from
1. The claim number(s) (if available). 113125    my home (address
above )

2. Did you execute a release of your claims upon receiving payment through the GCCF:

    Yes _____ .     No ____✓____ .

3

I state under penalty of perjury that the foregoing is true and correct.  Executed on the following date at the following location:

Date: Feb. 27 , 2017

Location (City and State): Long Beach, Ms. 39560

Charles Archibald Boggs

Signature of Plaintiff (*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf*)

Charles Archibald Boggs

Print Name

**This Sworn Statement and any supporting information must be filed with the Court and served on both Counsel for BP and the PSC on or before April 12, 2017.  Service on Counsel for BP and the PSC can be made via United States mail at the following addresses:**

| **Counsel for BP** | **MDL 2179 Plaintiffs' Steering Committee** |
|---|---|
| Attn: J. Andrew Langan | Attn: Steven J. Herman |
| Kirkland & Ellis LLP | Herman, Herman, Katz & Cotlar, LLP |
| 300 North LaSalle St, | 820 O'Keefe Avenue |
| Suite 2400 | New Orleans, LA 70113 |
| Chicago IL 60654 | |

**Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon the PSC and Counsel for BP via File & ServeXpress ("F&S").**

4

**Charlie Boggs**

| | |
|---|---|
| **From:** | Deepwater Horizon Medica  Benefits Claims Administrator |
| | [info@deepwaterhorizon... ... ... ...lement.com] |
| **Sent:** | Tuesday, August 14, 2012 3: : ? P,vl |
| **To:** | Charlie Boggs |
| **Cc:** | Deepwater Horizon Medical Benefits Claims Administrator |
| **Subject:** | [TICK:7002] RE: opt out |

Dear Mr. Boggs,

Thank you for your inquiry. The following information may be helpful in answering your question regarding Opting Out.

To Opt Out of (exclude yourself) from the Medical Class, you must mail in a written request stating "I wish to exclude myself from the Medical Class." Your written request must include your full name, address, phone number, date of birth, and a copy of your driver's license or other government issued identification. You must sign your written request.

Your written request to Opt Out must be postmarked by October 1, 2012 and mailed to:

Deepwater Horizon Medical Benefits Settlement Opt Outs
935 Gravier Street, Suite 1400
New Orleans, LA 70112

This is the only way to Opt Out of the Medical Class.

If you have further questions, please do not hesitate to email again or call our toll-free number at 1-877-545-5111.
Sincerely,


Deepwater Horizon Medical Benefits Claims Administrator




From: Charlie Boggs [cboggs8@gmail.com]
Sent: Monday, August 13, 2012 8:05 AM
To: Deepwater Horizon Medical Benefits Claims Administrator
Cc: Deepwater Horizon Medical Benefits Claims Administrator
Subject: opt out


Please tell me how to opt out. Please tell me whom to write, where and what language must be in the opt out letter. Thanks. Charles A. Boggs
This transmission is intended for the sole use of the individual or entity to whom it is addressed, and may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated agent is strictly prohibited. If your receipt of this transmission is in

error, please notify the Garretson Resolution Group immediately by calling 1-888-556-7526, or by reply to this transmission.

Charles A. Boggs
630 West Beach Blvd
Long Beach, Ms. 39560

TO: Deepwater Horizon Medical Benefits Settlement
     935 Gravier St. Suite 1400
     New Orleans, La. 70112

Aug 14, 2012

I wish to exclude myself from the
Medical Class. My full name is Charles
Archebald Boggs. Address is listed
above. Phone #'s are: h) 228-863-6795.
c) 228-806-8228. My date of birth is 3-13-46
a copy of my driver's lescense is enclosed.

    You did not respond to my Objection
to Fairness filed in the MDL action.

    I am excluding myself from the Medical
Class and The Economic and Property Damage Class

Charles A Boggs

## Charlie Boggs

| | |
|---|---|
| **From:** | Questions DHECC [questions@dhecc.com] |
| **Sent:** | Monday, August 13, 2012 9:08 AM |
| **To:** | 'Charlie Boggs' |
| **Cc:** | Questions DHECC |
| **Subject:** | RE: op out |

*This is an official communication from the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Program ("Settlement Program").*

Thank you for your email. To validly exclude yourself from the Economic Class, you must submit a written request stating "I wish to be excluded from the Economic Class." The request must include your printed name, address and phone number and must be postmarked no later than October 1, 2012. The written request must be signed by the Natural Person or Entity seeking to exclude himself, herself or itself from the Economic Class, even if they are represented by an attorney. Electronic signatures will not be accepted. The request should be mailed to:

Deepwater Horizon Court-Supervised Settlement Program
Exclusions Department
P.O. Box 222
Hammond, LA 70404-0222

If you have additional questions about the DWH Settlement Program or need additional assistance, you may call us at our Claimant Communications Center at 1-800-353-1262, email us at Questions@DHECC.com, or visit a Claimant Assistance Center. A complete list of the 18 Claimant Assistance Center locations can be found at the Settlement Program website: www.deepwaterhorizoneconomicsettlement.com. For additional information regarding the use of the Portal, how to complete the Registration Form, or how to complete a Claim Form please visit: http://deepwaterhorizoneconomicsettlement.com/tutorials.php.

**DWH Questions Group**
**Deepwater Horizon Claims Center**
DEEPWATER Questions@DHECC.com
HORIZON www.deepwaterhorizoneconomicsettlement.com
CLAIMS
CENTER

*This electronic mail is intended to be received and read only by certain individuals. It may contain information that is privileged or protected from disclosure by law. If it has been misdirected, or if you suspect you received this in error, please notify me by replying and then delete this message and your reply. These restrictions apply to any attachment to this email.*

**From:** Charlie Boggs [mailto:cboggs8@gmail.com]
**Sent:** Monday, August 13, 2012 8:04 AM
**To:** Questions DHECC
**Subject:** op out

Please tell me how to op out, who to write, where, what to say. Thanks. Charles A. Boggs

1

Charles A. Boggs

630 West Beach Blvd

Long Beach, Ms. 39560

To: Deepwater Horizon Court Supervised Settlement
Exclusions Dept                                    Aug 13, 2012
P.o. Box 222
Hammond, LA. 70404-0222

I wish to be excluded from

both The Economic and Property

Damages Claims and the Medical

Claims.

Charles A. Boggs
In Proper Person
Charles a Boggs

See Document No 27410
2019 T. ... Et Filed in MDL 2170

Coastal Rental LLC
630 West Beach Blvd
Long Beach, Ms. 39560
Charles A. Boggs- owner
tel 228-863-6795    c) 228-863-6795

To: Deepwater Horizon Supervised Settlement
Exclusions Dept.
P.o. Box 222
Hammond, La. 70404-0222


As the Owner of Coastal Rental LLC,
I, Charles A. Boggs (Charles A. Boggs) inform
you that Coastal Rental LLC wishes to
be excluded from the Economic and
Property Claims.
    The GCCF Claimant ID No
is 1131473.
    As an attorney, as well as owner,
I filed suit in the MDL action 2170
for Coastal Rental, LLC on the Court
approval "long hand" printed form.

Charles A. Boggs