UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | MDL 2179 |
| **Deepwater Horizon in the** | * | |
| **Gulf of Mexico on April 20, 2010** | * | SECTION J |
| | * | |
| | * | Honorable CARL J. BARBIER |
| **This document relates to:** | * | |
| **All Cases and No. 12-970** | * | Magistrate Judge WILKINSON |

**BP's MEMORANDUM IN OPPOSITION TO
CLAIMANT NOS. 100201250, 100272198, 10027042 AND 100167847'S
MOTION TO INTERPRET AND ENFORCE THE SETTLEMENT AGREEMENT**

Claimants' Motion to Interpret and Enforce The Settlement Agreement ("Motion") should be denied because it is (i) premature and unripe, and (ii) inconsistent with the Economic and Property Damage Settlement Agreement's ("Settlement Agreement") established procedures for claimants to challenge a determination of the Claims Administrator. In addition, although it is unnecessary for the Court to reach this issue, the portions of Policy 345 about which Movants complain are proper, reasonable interpretations of the Settlement Agreement.

Movants, four Business Economic Loss ("BEL") claimants, take issue with certain provisions of the Claims Administrator's Policy 345. Movants suggest that the contested provisions of Policy 345 will prevent them from satisfying the requirements of Exhibit 4B of the Settlement Agreement. Critically, however, Movants have admitted that not one of them actually has had a claim denied as a result of the provisions of Policy 345 for which they now seek Court relief. Simply put, there is no actual, tangible dispute about a claim to be resolved at this time. Therefore, the motion is premature and unripe.

Moreover, even if there was an actual dispute impacting an actual claim of Movants, the Motion is not the proper procedural means to resolve disputes about specific claims in the first

1

instance. Rather, Section 6 of the Settlement Agreement establishes an appellate review process. Pursuant to that process, any claimant who has a claim denied by the Claims Administration may seek reconsideration from the Claims Administrator, then have that denial reviewed *de novo* by the Appeal Panel established pursuant to the Settlement Agreement, and finally petition for review by this Court. Thus, if and when any of Movants here actually has a claim denied as a result of the portions of Policy 345 about which they complain, that Movant may avail itself to the appellate review process provided for by Section 6 of the Settlement Agreement. There is no need for judicial review of the claims at issue at this time.

Finally, not only is the present motion procedurally improper, it is also substantively incorrect. The Customer Mix Test is one of multiple options for satisfying Exhibit 4B of the Settlement Agreement. It affirmatively places the burden of proof on the claimant to come forward with certain factual proof, including among other things the location of its customers. There is nothing unreasonable or improper about Policy 345, which simply requires that the claimant meet its burden of proof and provide the required documentation before the Claims Administrator will deem the Customer Mix Test satisfied.

For all of the above reasons, BP respectfully requests that the Court deny the Motion.

## I.     The Motion Is Premature And Unripe

The Motion asserts that certain provisions of Policy 345 are preventing Movants from satisfying Exhibit 4B's Customer Mix Test and thus qualifying for compensation under the Settlement Agreement. However, none of the Movants has actually had a claim denied by the provisions of Policy 345 about which they complain. Movants admitted this fact at the February 17, 2017 status conference:

> Movants' Counsel:  The claims are still pending and have not yet been settled.

> The Court: So they haven't been finally determined one way or the other?
>
> Movants' Counsel: They have not been finally determined.

Transcript of February 17, 2017 Status Conference at 49.

This Court hears and adjudicates actual, ripe cases in controversy, not hypothetical, theoretical disputes. For this reason alone, the Motion should be denied.

## II.     The Motion Is Inconsistent With The <u>Settlement Agreement's Established Dispute Resolution Process</u>

Even if an actual dispute or controversy existed (and it does not), the Motion should still be denied because Movants have not followed the established process for challenging the denial of a claim. Section 6 of the Settlement Agreement establishes an appeal process to review determinations by the Claims Administrator, including the denial of claims. In the first instance, a dissatisfied claimant may seek reconsideration by the Claims Administrator of the determination. Settlement Agreement, Sec. 6.1.2.1.1. If the claimant remains unsatisfied following reconsideration, the claimant has a right to file an appeal to the Appeal Panel established pursuant to Section 6 of the Settlement Agreement: "A Claimant may Appeal within 30 days of the issuance of final written notice from the Settlement Program of a determination of final compensation award." *Id.*, Sec. 6.1.2.3. The Appeal Panel performs a *de novo* review based on the complete record: "The Standard of Review by the Appeal Panelist or Appeal Panel shall be a de novo review of the complete record of that Claimant in the Settlement Program to enforce compliance with this Agreement as approved by the Court." *Id.*, Sec. 6.4. And finally, if the claimant is dissatisfied with the decision of the Appeal Panel, it may request that the Court exercise its discretionary right to review the decision of the Appeal Panel. *Id.*, Sec. 6.6.

In the event that Movants' claims are actually denied in the future as a result of the provisions of Policy 345 that they complain about, Movants can challenge the denials under the

3

Section 6 appeals process. There is no reason for this Court to decide the Motion before the Claims Administrator has actually reviewed and determined the claim, the claimant has sought reconsideration, and the Appeal Panel has reviewed the determination of the Claims Administrator. As the Court observed at the February 17, 2017 status conference:

> THE COURT: Aren't you kind of putting the cart before the horse here? It seems to me your remedy would be once Mr. Juneau -- I am assuming at some point he is going to determine your claim, he may deny it, it sounds like what you're thinking he may deny it, and then you'd have the right of appeal. In other words, there's a whole appellate process in place in this case, I'm sure you're familiar with it, where if you get denied by his office, you go to the appellate panel. And if you get denied by them, you have the right to request discretionary review from me. And if I decline to grant discretionary review, you even can go to the Fifth Circuit. So why are we dealing with this in this format here?

Transcript of February 17 Status Conference at 49-50.

On the other hand, there are multiple reasons why the premature judicial review requested by Movants would be imprudent. *First*, Movants seek to engage in piecemeal litigation of their claims bouncing from the Claims Administrator to this Court and then back to the Claims Administrator. Section 6 of the Settlement Agreement, on the other hand, sets forth an orderly process whereby the Claims Administrator first makes a determination based on the record and the parties then have an opportunity to appeal an asserted error to the Appeal Panel, which performs a *de novo* review based on the entire record. *Second*, the proper implementation of the Customer Mix Test is best addressed in the context of a discrete factual record that will allow the parties and the Court to understand the full implications of the issues being raised. Movants cite data alleged to be from one of the claims at issue, *see* Motion at 14-15. But the proper interpretation of the Customer Mix Test should not be decided based on isolated factual information; instead, it should be evaluated in the context of a specific claim with the full set of relevant factual information in the record.

In sum, in addition to being premature and unripe, the Motion does not follow the Section 6 procedures for resolving disputes about claim determinations, and therefore should be denied.

**III.     Policy 345 Is a Proper Interpretation of the Settlement Agreement**

Because the Motion is premature and does not follow the Section 6 appeal process, there is no need for the Court to reach the merits.  Should the Court nevertheless decide to address the merits, the provisions of Policy 345 that Movants seek to challenge are correct, reasonable interpretations of the Settlement Agreement.

    A.     The Requirements of Exhibit 4B of the Settlement Agreement

Claimants must satisfy one of Exhibit 4B's multiple tests in order to qualify for an award. Certain of the tests simply compare patterns in a claimant's pre-and-post-spill revenue, requiring a prescribed decline in 2010 and a prescribed recovery in 2011.  These tests do not require proof of the customer mix of the revenue. *See, e.g.*, Settlement Agreement, Ex. 4B, Sec. II.A.  If a claimant is unable to meet these revenue pattern tests, Exhibit 4B nonetheless allows a claimant to satisfy its requirements if the claimant, for example, can show a lower level of revenue decline in 2010 and recovery in 2011, or simply a lower level of decline, provided that Claimant also makes certain affirmative proof.  This affirmative proof includes, among other things, a showing that either

- "The claimant ***demonstrates*** a decline of 10% in the share of total revenue generated by non-local customers [defined as customers who reside more than 60 miles from the claimant's business location] over the same period of three consecutive months from May-December 2010…compared to the same three consecutive month period in 2009…" Ex. 4B at 2 (emphasis added).  Or

- "For business claimants that have customers in Zones A-C, the claimant ***demonstrates*** a decline of 10% in the share of total revenue generated by customers located in Zones A-C over the same period of the three consecutive months from May-December 2010…compared to the same three consecutive month period in 2009…" *Id*. (emphasis added)

The above-quoted showing of a decline in non-local customers or of customers in Zones A-C is often referred to as the "Customer Mix Test".

Exhibit 4B clearly puts the burden of demonstrating satisfaction of the Customer Mix Test on the claimant. As the above-quoted text provides, the claimant must "demonstrate[]" that it satisfies the requirements of the Customer Mix Test. That is not surprising given the test requires input of the claimant's customer geographic data and is an alternative to the revenue pattern tests that do not require a specific customer mix. Exhibit 4B further specifies that the claimant may rely on a broad range of documents to satisfy the Customer Mix Test. These include:

- customer credit card receipts or other contemporaneously maintained records of payment; or
- customer registration logs (e.g., hotel registries); or
- documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
- business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.

Ex. 4B at 2.

B.     The Claims Administrator's Policy 345

To rely on the Customer Mix Test, a claimant must establish the location of its customers. The question, then, is what happens if that location is unknown for some or all customers? If a business had a cash transaction with no documents specifying the location of the customer, should that customer be considered local (within 60 miles) or non-local (more than 60 miles)? Should it be considered from within Zones A, B and C, or outside those Zones?

The Claims Administrator addressed this issue in Final Policy 345 v.3: Business Economic Loss Claims: Application of the Customer Mix Test ("Policy 345"). Policy 345 provides two unremarkable observations about how the Claims Administrator will interpret and implement the Customer Mix Test. *First*, if a claimant has not provided address information for a given customer, it is assumed that the customer's revenue would not aid the claimant in satisfying the Customer Mix Test. For example, if a claimant has $50,000 in cash revenue with no customer information in a given year, Policy 345 treats the revenue as local if it is 2009 revenue and non-local if it is 2010 revenue. Policy 345 at 3. This policy flows directly from the text of Exhibit 4B, which requires the claimant to demonstrate that it has the requisite customer geographical mix.

*Second*, and related, where a claimant provides only the P.O. Box, Zip Code or City, but not a street address for a customer, the customer's address will be considered unknown. Once again, this policy interpretation is on all fours with the Settlement Agreement. If a claimant has not provided the Claims Administrator with complete information about a customer's location, the Claims Administrator will not assume the location of the customer.

C.     Policy 345 Reasonably Interprets the Settlement Agreement

Should the Court decide to reach the merits of Policy 345, it should uphold the Policy 345's provisions for handling customers whose locations are unknown for purposes of the Customer Mix Test, for a number of reasons.

*First*, as the Policy itself explains, Exhibit 4B puts the burden of demonstrating that the Customer Mix Test is met on the claimant.  It is the claimant that has access to the underlying information, and if that information is insufficient to meet the Customer Mix Test, then the claimant cannot rely on that prong of the available options under Exhibit 4B.

Movants suggest that Exhibit 4B's listing of available sources of information is not intended to explain how a claimant can meet its burden, but is part and parcel of the test itself.  In other words, Movants argue, only the customers for whom the listed documents are available are considered under the Customer Mix Test--the rest can be ignored.  But that is simply not what the Settlement Agreement says.  It requires proving that the test is met "as reflected" in the specified documents. Ex. 4B at 2.

That the listed categories of permissible proof documents are not part of the test itself is made clear by the fact that Exhibit 4B repeats the test without including the listed categories.  It states: "To pass the test, claimants must demonstrate proof of a decline of 10% or more in the share of total revenue generated by non-local customers over the same period of three consecutive months from May-December 2010 as selected by the claimant for the Modified V-Test or Down Only Test compared to the same three consecutive months in 2009."  Ex. 4B at 13.  In other words, the categories of proof tell claimants how they can demonstrate compliance with the test (providing flexibility to claimants in the process), but are not part of the test itself.

8

Movants also argue that businesses with a high percentage of cash customers without customer information will have a difficult time meeting the Customer Mix Test. This argument misses the point. The Customer Mix Test is not the only option available to BEL claimants. No Customer Mix Test need be met at all if the claimant's downturn in 2010 revenue and upturn in 2011 were high enough to meet Exhibit 4B's revenue pattern test or if the claimant can show actual contracts that were cancelled for spill-related reasons. *See* Ex. 4B at II.A, II.D. And in fact, Movants do not dispute that all-cash businesses will be unable to meet the Customer Mix Test, as they have no information on the geographical distribution of their customers. Thus, the Settlement Agreement contemplates that not all tests will be viable options for all businesses.

Finally, Movants take issue with Policy 345's rule that a customer's address will be deemed incomplete if the claimant does not provide the customer's actual street address. Once again, Policy 345 is sound. In order to determine whether a claimant has established the required customer mix to satisfy Exhibit 4B, the Claims Administrator must make determinations as to whether a given customer is within 60 miles of the claimant as well as whether the customers are in a specifically defined geographic zone. Ex. 4B at 2. Therefore, the Claims Administrator needs complete, accurate address information. This issue was addressed in a recent Appeal Panel Decision. Claim No. 1934XX (Feb. 7, 2017). The Panel stated:

> As noted above, Claimant argues that the Program should use the Zip Codes of the PO Box addresses in order to determine the customer's location. This Panel acknowledges that in some instances this approach might result in determining an accurate location for a customer. However, this approach has some shortcomings. For instance, what if a Zip Code includes addresses that were both more than and less than 60 miles from the Claimant's location? Or what if a Zip Code includes addresses that were both Zone B and Zone D? Further, what if a customer, whose physical address was local, charged his/her purchase to his/her employer, whose Zip Code address was more than 60 miles from Claimant's location?
>
> Claimant also argues that the Program has the obligation to investigate the PO Box addresses and come up with the physical addresses. This Panel disagrees. The

9

Settlement Program makes it fairly clear that the Claimant has the burden of providing documentation sufficient to meet Causation.

In light of the issues associated with PO Box addresses, this Panel is of the opinion that Policy 345 v.3's approach is reasonable.

The Claims Administrator's requirement that claimants must provide complete customer location data for purposes of a test that turns on the costumers location is entirely reasonable and consistent with the terms of Exhibit 4B, which place the burden of proof on the claimant.

Conclusion

For the reasons stated, the Motion should be denied.

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Devin C. Reid (Bar #32645)
**LISKOW & LEWIS**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

-and-

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 10th day of March 2017.

                   /s/ Don K. Haycraft