UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE OIL SPILL BY THE OIL RIG | * | CIVIL ACTION: 10-MD-2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO ON APRIL 20, 2010 | * | SECTION "J" |
| | * | |
| THIS DOCUMENT RELATES ONLY TO: | * | HONORABLE CARL J. BARBIER |
| Civil Action Nos. 10-2771; 10-8888; | * | |
| 10-9999; and 14-1525 | * | MAGISTRATE JUDGE |
| | * | JOSEPH C. WILKINSON, JR. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN PARTIAL OPPOSITION TO**
**JOINT VENTURE ATTORNEYS' MOTION FOR FEES**

MAY IT PLEASE THE COURT:

      This memorandum is submitted on behalf of Mark E. Peneguy, Edward W. Peneguy, Jr., Richard A. Peneguy, Jr., and Wendell H. Cook, Jr., who agree that the Joint Venture Attorneys (hereinafter "JV") are entitled to a fee under their engagement contract with the Wisner Donation ("WD") pursuant to the JV's motion. R. Doc. 22267. However, they respectfully suggest that the issue is the proper amount of that fee. Rule 1.5(a) of the Louisiana Rules of Professional Conduct mandates that attorneys shall not make an agreement for, charge, or collect an unreasonable fee.[1]

---

[1] It is well-settled that a prohibition against unreasonable attorney's fees exists in Louisiana, and such prohibition cannot be abrogated by a valid contingency fee contract. *Foley & Lardner, L.L.P. v. Aldar Investments, Inc*., 491 F. Supp. 2d 595, 606 (M.D. La. 2007) (citations omitted). Irrespective of the contractual arrangement between the client and the attorney, the courts have the right to review contingency fee contracts to determine whether the fee is excessive. *Id*. "The court's focus is on whether the amount of fees is 'reasonable.'" *Id*. (citing Louisiana Rules of Professional Conduct Rule 1.5).

1

## I.   The engagement contract dated October 17, 2012.

The Court is already familiar with the engagement contract containing the following provisions (summarized) regarding the fee calculation:

Under the WD/JV contract -

• ¶ 4 (preamble): the fee shall be the "LESSER OF" two methodologies—one under the contingent fee provisions of the WD/JV contract and the other under the contract between the JV and the City of New Orleans ("CNO") which is attached and incorporated in the WD/JV contract. See also, ¶ 8 (final paragraph).[2]

• ¶ 4(c): the contingent fee shall be "based on the gross present value of benefits received by the Donation."

• ¶ 8: "amounts received in a settlement…will be distributed in this order: From the gross total amount, Attorneys will deduct [1] case costs and common pro rata litigation related expenses which have not been paid by Attorneys, [2] then attorneys fees, [3] then all direct and pro rata expenses paid by Attorneys." [Bracketed numbers supplied].

Under the CNO/JV contract -

¶ 1(a)(iv): 17.5% contingency fee "on any recovery collected as part of a 'global settlement' or other negotiations after January 1, 2013, net of litigation costs or expenses."

¶ 1(a)(v): 20% contingency fee "on any recovery requiring a formal trial of some or all of the claims of the City in order to secure a settlement or judgment."

## II.   This Court's prior determination of the Waltzer Wiygul & Garside Motion guides resolution of the JV's motion.

On January 25, 2017, this Court decided Waltzer Wiygul & Garside's Motion for fees, holding:

---

[2] The WD/JV engagement contract inclusive of the incorporated CNO/JV engagement contract was prepared and furnished to the WD by the JV. Therefore, in the case of any doubt or ambiguity in the contract provisions, the contracts must be interpreted against the JV. La. C.C. art. 2056; *Doucet v. Standard Supply & Hardware Co.,* 250 So. 2d 549, 550 (La. App. 3 Cir. 1971) (applying predecessor article to Art. 2056); *Chittenden v. State Farm Mutual Auto Ins. Co.,* 872 So. 2d 580, 583 (La. App. 4 Cir. 2004).

> When we have a contingent fee agreement with claims by more than one law firm as to entitlement to the contingent fee, resolution of that for the claim of any law firm that seeks some portion of the contingent fee are governed by the standards set out by the Louisiana Supreme Court in *Saucier v. Hayes Dairy Products, Inc.*, which was originally issued at 373 So. 2d 102, a 1978 decision, and then there was a rehearing opinion, the same citation.
>
> Essentially, to summarize, what the Louisiana Supreme Court found is that only one contingency fee should be paid by the client ….[3]

The JV is a group of law firms that collectively seeks a portion of the contingency fee. Because *Saucier* governs, it overrides the engagement contract to any extent that the contract is not consistent with the principle that the client owes only "one contingency fee."

This Court's decision has simplified the matter for present purposes. The Wisner Donation owes but one fee to be allocated between the two competing groups of attorneys. *Id.* at pp. 7-8.

Waltzer Wiygul & Garside was found to be entitled to a fee for its services of $1,242,540. *Id.* at p.12. Because $358,969 of that fee already had been paid by the Wisner Donation, the judgment in favor of Waltzer Wiygul & Garside was for the remainder owed $883,571. *Id.* at pp. 12-13. The $883,571 now also has been paid by the Wisner Donation from its funds that were deposited in the registry of the court.[4] The entire $1,242,540 must be credited against the "one contingency fee." The fact that a small part, $171,417, was reimbursed by BP, is irrelevant. This reimbursement is a benefit to the Wisner Donation, not to the JV.

Under *Saucier*, the remainder of the "one contingency fee" is the amount that the Wisner Donation now owes to the JV. To determine that remainder, the Court must determine the

---

[3] Excerpt from Proceedings on January 25, 2017, R. Doc. 22267-4 at p. 7.

[4] See R. Doc. 22224.

amount of the "one contingency fee." The simple formula where "x" equals the one contingency fee is: $x - \$1,242,540$ = amount due the JV.

Initially, on January 25, 2017, the Court stated that the one contingency fee is $6,100,000.[5] However, in the Court's written Order filed the same date, the Court stated that it had not calculated the total contingent fee due to all attorneys "based on the gross present value of benefits received by the Donation (the $30 million settlement), as set out in paragraph 4(c) of both contingent fee contracts" because that would not change the calculation of the reasonable amount due only to Waltzer Wiygul & Garside. The Court noted, "reduction of the 'benefits received' to gross present value may affect the amount of fees ultimately due to the Joint Venture…."[6]

### III. The calculation under the WD/JV contract is straightforward under the "one contingency fee" principle.

At page 9 of its memorandum, the JV has provided a calculation of its claim for a fee of $5,154,196.49. That calculation is not correct.

Accepting the JV's gross present value number for present purposes,[7] the JV's calculation should be modified as follows:

---

[5] R. Doc. 22267-4 at pp. 6.

[6] Hearing and Order on Motion (1/25/2017), R. Doc. 22134.

[7] The JV calculated gross present value using a starting date of October 1, 2016, the date of BP's first payment to the Wisner donation, rather than the settlement date of mid-May, 2016. See JV Exh. 2, R. Doc. 22267-3. Using the later date results in a higher gross present value and favors the JV.

| | |
|---|---|
| Total Settlement | $30,000,000.00 |
| Gross Present Value | $24,840,876.06 |
| Less Expenses owed JV | -$    909,024.00[8] |
| Less Unreimbursed Expenses of WD | -$    375,000.00[9] |
| Sub Total | $23,556,852.06 |
| 25% of $10,000,000.00 | $ 2,500,000.00 |
| 18% of $13,556,852.06 | $ 2,440,233.37 |
| One Contingency Fee | $ 4,940,233.37 |
| Less Fee Paid to Waltzer Wiygul & Garside | -$ 1,242,540.00 |
| Fee Due JV | $ 3,697,693.37 |
| Less "Courtesy" Credit per JV calculation | -$      17,161.20 |
| Total Due JV | $3,680,532.17[10] |

As discussed further in Section V, the JV's fee should be paid in installments as its client receives each settlement installment payment over the 22-year payment period. The JV seeks a one-time, immediate payment arguing that if it must be paid over time, "then the fees would be calculated on the full value of the individual settlement payments at the time of receipt by the

---

[8] These expenses are deducted prior to the fee calculation pursuant to the WD/JV contract ¶8 (preface) and ¶8, subpart (e). The amount was stipulated. R. Doc. 22224.

[9] The amount of the WD's unreimbursed expenses has been in controversy but the JV acceded to the $375,000 in a settlement analysis given to its client, the Wisner Donation.

[10] Under this or any of the calculations in the memorandum, the JV has no basis to challenge the reasonableness of the resulting fee. The JV asserts at page 3 of its memorandum that it has documented over 2000 hours in this matter. If tested on an hourly rate basis, a fee of $3,680,532.17, therefore, works out to an hourly rate in the area of $1,800 per hour, well above the hourly rate enhanced by a 2.34 multiplier ($1,053 per hour) previously found reasonable by this Court. Mr. Gisleson's 12/8/17 Declaration states that the JV's recorded time is 2046 hours but that the actual time spent "confidently exceeds 2500 hours." R. Doc. 21969-1 at ¶ 20. Whether 2000, 2046, or 2500, the effective hourly rate is still well above that approved by the Court as would be the case with other calculations in this memorandum.

Donation and it would make no sense to define the fee in terms of present value."[11] If the JV is correct, the fee calculation would be the same as the calculation above except for the gross present value figure. Thus, the "one contingency fee" would be $5,868,875.68. After crediting the fees paid to Waltzer Wiygul & Garside and the "courtesy" credit, the total fee due the JV would be $4,609,174.48.

### IV. The contract requires that there be an alternate calculation under the engagement contract between the JV and the City of New Orleans.

Whether the 17.5% or the 20% contingent fee applies under the CNO/JV contract depends upon whether the settlement required "a formal trial of some or all of the claims of the [WD] in order to secure a settlement or judgment." This condition was not satisfied.

As the JV emphasizes in its memorandum, this matter was settled "one week before the March 7, 2016 trial date."[12] The JV will nevertheless contend as indicated at footnote 5 of its memorandum that because of the common benefit Phase One and Phase Two trials that took place in 2013, the higher 20% contingency fee applies. The JV's position, however, is incorrect and defies logic.[13]

Case number 14-1525 was filed on July 1, 2014, well after the Phase One and Phase Two trials. Case number 14-1525 was set for trial by this Court and it was this trial setting that resulted in this Court's ruling that the higher contingent fee percentages (25% and 18%) applied

---

[11] JV Mem., R. Doc. 22267-1 at p. 7. But see, note 2 *supra*.

[12] JV Mem., R. Doc. 22267-1 at pages 2, 5, and 6.

[13] In addition, it was not specifically the JV, but the Plaintiffs' Steering Committee and common benefit attorneys who tried the Phase One and Phase two cases. All of the involved attorneys including the JV are to be compensated for that work pursuant to Judge Barbier's October 25, 2016 Order. R Doc. 21849. By relying upon its work as common benefit counsel to ask for the higher percentage under the CNO/JV contract, the JV effectively is asking to be compensated twice for the same work—as common benefit counsel and as WD counsel.

under the WD/JV contract.[14] Otherwise, the applicable percentages would have been 18% and 12%.

It is not logical to conclude that an action expressly settled before trial, was actually tried in part over a year before the action was even filed. The question is not whether the Phase One and Phase Two trials may have resulted in later stipulations or even summary judgment as to particular issues. Under the specific contract language, the question is whether any part of number 14-1525 was formally tried. In fact, it could not have been. Thus, the 17.5% contingent fee is the one called for to be applied under the CNO/JV contract.

Nevertheless, for the Court's convenience, both calculations are provided below.

1. Total Settlement                                    $30,000,000.00
   Less Expenses owed JV                               -$     909,024.00
   Less Unreimbursed Expenses of WD                    -$     375,000.00
          Sub Total                                    $28,715,976.00

   One Contingency fee at 17.5%                        $ 5,025,295.80
   Less Fee Paid to Waltzer Wiygul & Garside           -$ 1,242,540.00
          **Total due JV**                             $3,782,755.80

2. Total Settlement                                    $30,000,000.00
   Less Expenses owed JV                               -$     909,024.00
   Less Unreimbursed Expenses of WD                    -$     375,000.00
          Sub Total                                    $28,715,976.00

   One Contingency fee at 20%                          $5,743,195.20
   Less Fee Paid to Waltzer Wiygul & Garside           -$1,242,540.00
          **Total due JV**                             $4,500,655.20

Neither of these calculations results in a LESSER fee than that calculated above under the WD/JV contract using the gross present value. However, each is less than the fee calculated under the WD/JV contract without using gross present value ($4,609,174.48).

---

[14] Excerpt from Proceedings on January 25, 2017, R. Doc. 22267-4 at p. 5.

### V. The contingency fee is payable to the JV only over the life of the settlement—22 years.

The 22-year payout is based both upon the contracts' language and upon the ethics of the matter.

First, the WD/JV contract expressly states that the fee is due on "benefits received." This language cannot be ignored. The benefits received under the settlement are payable in varying increments over a 22-year period.[15] If it is the CNO/JV contract that applies, the fee is due on "any recovery collected" or on "any recovery." The amounts due under the settlement are collected or recovered only in the same incremental payments over 22 years.

Therefore, the plain language of each contract requires that the fee due the JV be paid in increments only as the WD receives what it is due under the settlement. The JV argues to the contrary, stating that "[b]y calculating the contingency fee on the 'present value' of the settlement, the Contingency Fee Contract contemplates [*i.e.*, admitting that the contract does not expressly state] payment of the fee first – at the time it is valued."[16] This position is contradicted by the express language just quoted above. The fee cannot be calculated and paid only as receipts and collections occur, but at the same time paid up-front in a lump sum.

In stating in paragraph 4(c) that "…the Donation will pay Attorneys a contingency fee based on the gross present value of benefits received by the Donation…," the contract expressly stated that the payment of fees would correspond in time to the payments received by the Wisner Donation and that the client and the attorneys would share the risk of non-payment. By seeking immediate payment, the JV would place the entire risk of BP's default in future payments on the

---

[15] An excerpt of the settlement agreement containing the payment increments over time is attached as Exhibit A.

[16] JV Mem., R. Doc. 22267-1 at p. 7, bracketed material supplied.

8

Wisner Donation and take none of that risk itself. However, as Judge Brady held in *Foley* (491 F. Supp. 2d at 607), "[w]ith contingency fee contracts, the attorney must bear the risk of loss insofar as legal services are concerned."[17]

Second, Russ Herman of Herman Herman & Katz, the lead law firm for the JV in this fee matter, has written specifically on the ethics of this situation. Mr. Herman states that the obligation of the attorney in a structured payment situation is to receive payment only as and when the client is paid. Mr. Herman wrote in 2016:

> Most attorneys insist on payment immediately. However, ethically, it would appear that unless the client agrees to payment of the total fee up front, before accepting the structured settlement, the contingency fee should be paid in installments as the client receives each installment payout. Clients generally are concerned with the amount the client will realize from the up-front portion of the settlement. Payment of the entire attorney's fee immediately will affect the up-front payment. This may be an important consideration in the client's decision to accept the offer or not.[18]

The WD has not agreed to the up-front payment that the JV seeks. To the contrary, the Wisner Committee with the concurrence of the Trustee has expressed its concern that the contingency fee in this case be paid only as the WD receives its settlement payments over time. A resolution was recently adopted stating this.[19]

The same basic principle stated by Mr. Herman is found in the Restatement (Third) of the Law Governing Lawyers § 35 (2000), providing in Section (2) that, "Unless the contract construed in the circumstances indicates otherwise, when a lawyer has contracted for a

---

[17] BP and its parent and related entities are not "too big to fail" as proven by the bankruptcies of Texaco, Inc., General Motors Corporation, and Lehman Brothers.

[18] Herman, 1 La. Practice Series, Pers. Injury, § 6.151, "Caveat - Conflict of interest with client regarding attorney's fees - Contingency fee complications - Lump sum or periodic payments." (August 2016).

[19] Copy of this resolution is attached as Exhibit B.

contingent fee, the lawyer is entitled to receive the specified fee only when and to the extent the client receives payment." In Comment (e), it is explained that under this rule, the lawyer is entitled to receive the stated share of each payment if and when it is made to the client unless the contract provides otherwise.

Third, in its best light, the JV's argument for immediate payment is based upon an ambiguous contract—one that makes no express reference to fees in connection with a structured settlement but which instead makes conflicting references to the timing of payment if JV's inference from the reference to gross present value is accepted. The JV prepared and furnished the contract. The ambiguity must be construed against the JV and in favor of the Wisner Donation.[20]

## VI. Conclusion.

The LESSER of the fees calculated under the WD/JV engagement contract is the amount of $3,680,532.17 calculated under the WD/JV contract using the gross present value of the settlement. Alternatively, the LESSER is the 17.5% calculation, and in the further alternative, the 20% calculation under the CNO/JV contract. The fee is payable over 22 years in increments rationally related to the annual payments to be received by the Wisner Donation. It is respectfully suggested that this should be the declaration of this Court.

Respectfully submitted,

**GORDON ARATA MONTGOMERY BARNETT**

By:   /s/ Daniel Lund
_____

---

[20] Note 2, *supra*.

        DANIEL LUND (Bar No. 12782)
        E-mail: dlund@gamb.law
        JOHN Y. PEARCE (Bar No. 10374)
        E-mail: jpearce@gamb.law
        STEPHEN L. WILLIAMSON (Bar No. 8316)
        E-Mail: swilliamson@gamb.law
        C. BYRON BERRY, JR. (Bar No. 21476)
        E-Mail: bberry@gamb.law
        201 St. Charles Avenue, 40th Floor
        New Orleans, Louisiana 70170-4000
        Telephone: (504) 582-1111
        Facsimile: (504) 582-1121
        Attorneys for
        Mark E. Peneguy, Edward W. Peneguy, Jr.,
        Richard A. Peneguy, Jr., and Wendell H. Cook, Jr.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he has electronically filed the foregoing Memorandum with the Clerk of Court by using the CM/ECF system, which will send a copy of the foregoing pleading to counsel of record by notice of electronic filing and also has electronically served interested counsel via email on this 14th day of March, 2017.

        /s/ Daniel Lund
        _____