UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| This document relates to: | JUDGE BARBIER |
| Relevant Civil Actions Nos. 13-1971; 14-1525; 10-8888 Doc No. 133248; 10-9999 Doc. No. 401 | MAGISTRATE WILKINSON |

**JOINT VENTURE ATTORNEYS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO CONTINGENCY FEE AGREEMENT**

NOW INTO COURT come the "Joint Venture Attorneys"[1] hired to represent the Edward Wisner Donation ("Wisner" or "Donation") and respectfully submit this Reply Memorandum in Support of Motion for Attorneys' Fees Pursuant to Contingency Fee Agreement. The only Opposition was filed by four income beneficiaries with less than a collective 5% interest in the income of the Donation and should be disregarded for three simple reasons: (1) the income beneficiaries do not have standing; (2) "gross present value" means the fee is calculated from the "gross" without deductions and paid in the "present"; and (3) the City of New Orleans Contract provides a higher attorney fee.

In sum, the Joint Venture lawyers stand by the fee calculation in its motion.

---

[1] These Joint Venture Attorneys (sometimes referred to as the "Joint Venture" or "Joint Venture Team") include the following five law firms: Herman Herman & Katz; Fayard & Honeycutt; Fred L. Herman; Leger & Shaw; and Domengeaux Wright Roy Edwards & Colomb.

I.      **The Income Beneficiaries Do Not Have Standing.**

The Donation as a legal entity ended by its own terms in 2014, 100 years after it was established. *In re Edward Wisner Donation*, 150 So.3d 391, 397 (La. App. 4th Cir. 2014) ("The trust terms clearly provide that the trust terminates 100 years after its inception, which is August 4, 2014."). No successor entity has taken its place. The only remaining existing entities are the Trustee, the Mayor of the City of New Orleans, and the Wisner Advisory Committee, a creation of the New Orleans City Council comprised of five representatives who vote on issues related to administration. *Id.* at 401 ("The City Council, an indisputable public body, formed the Advisory Committee . . . .").

Neither the Trustee nor the Advisory Committee has filed an opposition to the Joint Venture's motion.

Additionally, the income beneficiaries have not raised any causes of action or defenses; they have not filed any motions or made any legal claims for relief. The income beneficiaries "answered" the Intervention filed by Waltzer, Wiygul & Garside, LLC, ("WWG") without being named as a defendant or an interested party and without making any showing of being any party in interest. [Rec. Doc. 21859] They have also never intervened into this case or controversy pursuant to Rule 24 of the *Federal Rules of Civil Procedure*. As a result, the income beneficiaries have no legal basis to be present in this Court, and their arguments, like their appearance, should be disregarded.

II.     **"Gross Present Value" Means The Attorney's Fee Is Calculated From The "Gross" And Is Paid In The "Present".**

In their Opposition, the income beneficiaries put forth confusing proposed calculation after

2

confusing proposed calculation. When added to its earlier briefing on the issue, Rec. Doc. 21958, the income beneficiaries have now provided the Court with at least four more calculations for a grand total of about seven calculations. These various calculations and shifting numbers expose the income beneficiaries' arguments as simply not credible.

The income beneficiaries' calculations deviate from the Joint Venture's in four material respects: (1) they deduct $358,969 from the Joint Venture fee for WWG's fee in addition to the $883,571 previously awarded by the Court; (2) they deduct the Joint Venture's expenses and costs from the gross; (3) they deduct $375,000 from the gross as a Donation unreimbursed expense; and (4) they urge payment of the fee over the life of the settlement payments. The Contingency Fee Agreement directly contradicts each of the income beneficiaries' calculations.

### A. The Agreement Does Not Support a Deduction of $358,969 from the Joint Venture Fee.

The income beneficiaries seek reduction of the fee by applying an unfounded deduction as it relates to WWG's fee. The income beneficiaries argue that a deduction should be applied after the Joint Venture fee is calculated for $358,969. The income beneficiaries claim that this Court awarded fees to WWG of $1,242,540 and then deducted $358,969 for payments already received from the Donation. This is a tortured reading of the Court's judgment.

What this Court actually did was issue a Judgment of $883,571 awarding WWG attorney's fees from the Joint Venture's one fee. [Rec. Doc. 22135] (The Joint Venture's fee is properly reduced by the $883,571.) The Judgment was *not* in the amount of $1,242,540. *Id.* Simply because the Court decided to employ a calculation that deducted an amount already paid to WWG does not translate into an obligation that the Joint Venture must bear or be penalized for. Instead,

3

the terms of the Agreement control.

The principle of "one fee" simply means that the fee is to be calculated from one contract and that the client will not be on the hook for two contingency fees stacked one on top of the other. *O'Rourke v. Cairns*, 683 So. 2d 697, 705 (La. 1996) ("[A] client is only liable for one fee even if there are two or more attorneys involved . . . ."). That did not happen here because the Court elected to proceed pursuant to the Agreement between the Joint Venture and the Donation. As such, the terms, conditions, and methodologies control as to the proper calculation, not a dispute between or among law firms.

**B.  The Agreement Does Not Support a Deduction to the Gross Settlement Amount for Either the Joint Venture's Expenses or any Donation Expenses.**

The income beneficiaries' argument as it relates to these deductions impermissibly rewrites the Agreement to a net value settlement. The Agreement states, in no uncertain terms, that the attorney's fees are calculated from the *gross* value of the Settlement – not the net value. The income beneficiaries' arguments require a complete disregard for the meaning of "gross value". The Agreement clearly provides that fees are to be calculated from only one of two methodologies – that found in Paragraph 4, a sliding scale of percentages based on the value of the recovery, or that found in Paragraph 5, the formula based in the City of New Orleans Agreement.

As this Court has already held, the Agreement clearly provides that a 25% fee applies to the first $10 million and the 18% fee applies to the remaining $20 million. Paragraph 4 does not include any reduction to the fee. That is the entire calculation of the fee as provided in the Agreement.

Nor does Paragraph 8 support these deductions. Paragraph 8 pertains to the order of

4

distribution. Paragraph 8 squarely places the payment of fees before the client recovery. To the extent Paragraph 8 appears to speak to categories of damages merely reflects a scenario when the recovery (by settlement or judgment) is broken down by multiple categories (such as attorney's fees, restoration costs, expenses, etc.). However, this settlement was for one lump sum. When there is one sum to cover all categories of damages, these provisions do not apply.

Paragraph 8's example and proposed method of calculation assumes separate payments at the same time. Paragraph 8's example does not make sense in the situation, such as here, where the Donation did not pay attorney's fees to the Joint Venture during the Access Agreement (like it paid to WWG) and where the Joint Venture paid its expenses and costs. Paragraph 8's proposed calculation goes awry because there are no multiple payments in this settlement for multiple categories. Paragraph 8 presupposes there are separate payments for attorney's fees, restoration damages, and interim damages. That is not what happened here – in this case there has been one lump sum. It is easy to deduct attorney's fees from Paragraph 8's example because the example assumes a separate, additional payment in the imagined scenario; it is easy to back out incurred expenses of the Donation because the example assumes a separate, additional payment in the imagined scenario for interim damages. Here, there was one payment to cover everything, and no separate additional amounts to back out.

Finally, it should be noted that the income beneficiaries have not provided any evidentiary support for the $375,000 amount of unreimbursed expenses. The income beneficiaries simply drop a footnote and state that "the JV acceded to the $375,000 in a settlement analysis given to its client, the Wisner Donation." *Partial Opposition to Joint Venture Attorney's Motion for Fees*, at 5, n.9. The Joint Venture objects to any reliance on settlement discussions as a basis to support

5

the income beneficiaries' arguments.  *See* FED. R. EVID. 408.

### C. "Present Value" Means Payment in the Present.

The income beneficiaries' argument that the attorney's fee should be paid over time is directly contradicted by the plain terms of the Agreement.  The "present value" calculation is a common term in attorney's fee agreements that directly provide for the payment of fees immediately.  The rationale is simple – if the client is to wait for its money to be paid out over time, then the attorneys who are to be paid first should be paid at a discounted rate that calculates the contingency fee based on today's value of the settlement.  Obviously, if the entire settlement was to be paid immediately and there was no payment over time, then "present value" would be meaningless.  "Present value" only makes sense in the scenario where settlement payments are made over time.

Another section of the Agreement that concerns *when* attorney's fees should be paid is Paragraph 8:  "The Donation and Attorneys agree that any amounts received in settlement or judgment *will be distributed in this order*: from the gross total amount, Attorneys will deduct case costs and common pro rata litigation related expenses which have not been paid by Attorneys, then attorney's fees, then all direct and pro rata expenses paid by Attorneys."  *Contingency Fee Agreement*, ¶ 8 (emphasis supplied).  Attorney's fees are to be paid after case costs.  Case costs have been paid.  It is now time for payment of attorney's fees.

The income beneficiaries also cite to various sources that state that a contingency fee should be paid out whenever the payments are issued.  However, every single one of those sources specifically state that the fee agreement with the client can provide for the lawyers to be paid first.  As demonstrated above, the Agreement specifically provides for such a fee-first

payment term.

The income beneficiaries even quoted a passage from Russ Herman. However, they stopped short of the next paragraph:

> Given the increased popularity of structured settlements, counsel should anticipate the possibility of such a settlement at the time the fee agreement with the client is negotiated. For example, state in the contingent fee agreement that fees will be calculated on a structured settlement's costs *(present value) and may be paid at settlement*. Where the attorney's fee is structured, it should bear a rational relationship to true value.

HERMAN, 1 LA. PRACTICE SERIES, PERSONAL INJURY, § 6.151 (2016) (emphasis supplied), attached as Exhibit "1". Mr. Herman specifically approves a contingency fee for structured payments to be paid up front if the fee agreement provides for *present value*.

There is simply no escaping that the Agreement provides for the fee to be paid first based on a present value calculation. The Agreement specifically provides for it, the Agreement uses all of the correct terminology, and the Agreement even provides for its payment after litigation costs.

**III.    The City of New Orleans Methodology Provides for a Higher Fee Calculation Than the Wisner Methodology.**

The Joint Venture also represented the City of New Orleans in its BP claim. To address some of the beneficiaries' concerns at the time that the Joint Venture may have more of an interest in the City's claim than the Donations, the Joint Venture agreed to insert a clause that it would not charge the Donation a higher fee than it would charge the City. If the City methodology resulted in a lower fee, then the Joint Venture would agree to use that instead for the Donation's benefit. In other words, the Donation would always get at least as good a deal as the City.

In this instance, however, the City methodology results in a higher fee than the Donation Agreement. The City of New Orleans understood that trials were conducted that concerned liability under maritime law and the Oil Pollution Act. As a result, the City agreed to pay the Joint Venture a 20% fee instead of the lower 17.5%. There is no dispute that the City in fact paid a 20% contingency fee. As such, a 20% fee would also apply to the Donation.

Even the income beneficiaries understand this: "None of these calculations [under the City fee agreement] results in a LESSER fee than that calculated above under the WD/JV contract using the gross present value." *Opposition*, at 7 (emphasis in original). While they go on to state that the Joint Venture's methodology is still higher, the income beneficiaries continue to misapply the terms of the Agreement by (a) deducting the $358,969 WWG payment from the Joint Venture fee in addition to the $883,571 already deducted by this Court, and (b) offsetting the $375,000 from the gross amount. Just by correcting these two mistakes, the calculation of fees under the City Agreement shoots up to $5,818.195.10, an amount exceeding the present value calculation ($5,154,196.49).

**Conclusion**

Accordingly, the Joint Venture respectfully moves for an attorney fee award of $5,154,196.49, as follows:

| | |
|---|---|
| Total Settlement | $30,000,000.00 |
| Gross Present Value | $24,840,876.06 |
| | |
| 25% of $10,000,000.00 | $ 2,500,000.00 |
| 18% of $14,840,876.06 | $ 2,671,357.69 |
| | |
| Total Fee (JV and WWG) | $ 5,171,357.69 |
| | |
| Less Credit | -  $ 17,161.20 [2] |
| | |
| **Total** | **$ 5,154,196.49** |

The Joint Venture respectfully moves for the motion to be granted.

                                                        Respectfully submitted:

Stephen J. Herman (La. Bar #23129)
Soren E. Gisleson (La. Bar #26302)
HERMAN HERMAN & KATZ LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581 4892
Fax No. (504) 569 6024
E Mail: sherman@hhkc.com
E-Mail: sgisleson@hhkc.com

Walter J. Leger, Jr. (La. Bar #827 8)
Christine Sevin Fayard (La. Bar # 32683)
LEGER & SHAW
935 Gravier Street, Suite 2150
New Orleans, LA 70112
Phone: (504) 588 9043
Fax: (504) 588 9980
Email: wleger@legershaw.com
Email: csevin@legershaw.com

---

[2]  The Joint Venture has elected, as a client courtesy, to deduct the fees paid to it directly by BP under the Access Agreement.

James Parkerson Roy (La. Bar #11511)
Bob Wright (La. Bar #1369 1)
DOMENGEAUX WRIGHT ROY & EDWARDS LLC
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233 3033
Fax No. (337) 233 2796
E Mail: jimr@wrightroy.com

Calvin C. Fayard, Jr. (La. Bar #5486)
C. Caroline Fayard (La. Bar #30888)
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664 4193
Telefax: (225) 664 6925
EMail: calvinfayard@fayardlaw.com


Fred Herman (La Bar #6811)
Thomas J. Barbera (La Bar# 18719)
LAW OFFICES OF FRED HERMAN
1010 Common St., Suite 3000
New Orleans, LA 70112
Phone: 504 581 7068
Fax: 504 581 7083
Email: fherman@fredhermanlaw.com
tbarbera@fredhermanlaw.com

*Attorneys for the Joint Venture*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing will be filed into the record, thereby effecting service through the Court's electronic filing system, and will further serve upon all counsel of record, including the City Attorney and counsel for members of the Advisory Committee, *via* email, this 17th day of March, 2017.

s/Soren E. Gisleson