UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * * * * | **MDL NO. 2179**<br>**SECTION J**<br>**JUDGE BARBIER** |
| **This Document Relates To:** | * * | **MAGISTRATE JUDGE WILKINSON** |
| **ALL CASES** | * * * | |

**BP'S MEMORANDUM IN SUPPORT OF ITS
DISPOSITIVE MOTION AS TO RELEASED CLAIMS
PURSUANT TO PTO NO. 64, SECTION I.B1 ("B1 BUNDLE")**

Pursuant to PTO 64, BP Exploration & Production Inc. and BP America Production Company (collectively, "BP" or the "BP Defendants") respectfully request that the Court dismiss the claims of those Remaining B1 Plaintiffs,[1] including those identified in the attached Exhibit A, which have previously settled and released their claims against BP.[2]

BACKGROUND

Since April 2010, BP has provided compensation for losses arising from the *Deepwater Horizon* Incident through claims programs and multiple class settlements that have included

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth in Pretrial Order No. 64 (Rec. Doc. 22297) ("PTO 64").

[2] Exhibit A lists the actions filed by Remaining B1 Plaintiffs who, to BP's present knowledge, have released their claims against BP (and certain other released parties) through (a) the Gulf Coast Claims Facility ("GCCF"), (b) the BP Claims Program (or BP Claims Process) ("BPCP"), or (c) membership in the *Deepwater Horizon* Economic and Property Damages Settlement Class, including but not limited to their signing individual releases pursuant to this settlement. Exhibit A identifies as settlement class members those Remaining B1 Plaintiffs where the reporting that CSSP provides BP pursuant to this Court's prior orders indicates that the plaintiff has received a CSSP determination from the Claims Administrator as to one or more of their claims. Other Remaining B1 Plaintiffs may later be determined by the Court Supervised Settlement Program ("CSSP") or otherwise to be settlement class members, and BP reserves the right to seek dismissal of their claims at that time. In addition, BP has entered into individual settlements of the claims of certain Remaining B1 Plaintiffs, whose voluntary dismissal of their claims in MDL 2179 remains in process. BP reserves its right to seek dismissal of those claims by motion if necessary.

1

hundreds of thousands of individuals and businesses. As part of those resolutions, these claimants released their claims against BP and, further, fell within the scope of a general class release. Forty of the Remaining B1 Plaintiffs are among those individuals and businesses who have released their claims, yet continue to have claims pending in this action.

BP quickly established programs to compensate affected parties and mitigate effects on Gulf communities. Within days of the spill, BP executed a claims-processing system (the Initial Claims Facility), which had paid out nearly $400 million to individuals and businesses by August 2010. In June 2010, BP reached an agreement with the White House to establish a $20 billion trust, among other things, to compensate and settle economic losses from the spill. The GCCF was established and began accepting claims in August 2010. Under the direction of claims administrator Kenneth Feinberg and subject to the U.S. Department of Justice's oversight, the GCCF compensated over 220,000 claimants for spill-related losses. In 2012, BP reached a class-wide settlement with individuals and businesses asserting economic and property damages ("B1") claims. In March 2012, the Court entered an order creating a process to facilitate the transition from the GCCF to the replacement claims process envisioned by this economic and property damages settlement (the CSSP). The Court found the Economic and Property Damages Settlement Agreement, as amended on May 2, 2012, (Rec. Doc. 6430) (the "Settlement Agreement") to be fair, reasonable, and adequate and granted final approval of that settlement.[3] Finally, in June 2012, BP instituted a new claims program (the BPCP) to compensate claimants

---

[3] Order and Judgment Granting Final Approval of Economic and Property Damages Settlement and Confirming Certification of the Economic and Property Damages Settlement Class (Rec. Doc. 8139), entered on Dec. 21, 2012 ("Order and Judgment"), ¶ 1. The Court further found that the class notice and class notice plan satisfied and continued to satisfy the applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act (28 U.S.C. § 1711 *et seq.*), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V). *Id.*, ¶ 6. With respect to class members who are minors, lack capacity, or are incompetent, the Court found the Settlement Agreement was fair, reasonable, and adequate. *Id.* ¶ 7.

for economic and property damages related to the spill that are not covered by the Settlement Agreement.

These compensation programs maximized efficiency in identifying, preserving, and compensating claims. In exchange, each program either required (CSSP and BPCP) or included the option (GCCF) of releasing BP and certain other parties from claims associated with the *Deepwater Horizon* incident, allowing BP to manage and resolve tens of thousands of claims with finality. Many claimants participated in these programs, received compensation, and signed (or were otherwise subject to) releases.

Following this Court's Pretrial Order 60 (Rec. Doc. 16050), the Court in PTO 64 granted leave to BP to identify any Remaining B1 Plaintiffs who have released their B1 claims and to file a dispositive motion by March 22, 2017. Based on information available to it at this time, BP has identified 40 Remaining B1 Plaintiffs who have released their claims. For the reasons discussed below, those plaintiffs' claims should be dismissed with prejudice.

## ARGUMENT

### I.   SEVEN REMAINING B1 PLAINTIFFS WHO EXECUTED GCCF RELEASES SHOULD BE DISMISSED.

To date, BP has identified seven Remaining B1 Plaintiffs who signed a release and covenant not to sue ("GCCF Release"), in consideration of payment by the GCCF. *See* Ex. A at 1. Those seven signed GCCF Releases are attached hereto as <u>Exhibit B</u>. The releases are valid contracts that should be enforced against their respective signatories.

#### A.   Legal Standard

Each GCCF Release is governed by the laws of "the state of residence of the Claimant at the time of signing this Release." *See, e.g.*, Ex. B at 6, Release and Covenant Not to Sue ¶ 10. Five releases were executed by residents of Florida and two by residents of Louisiana.

Under both Louisiana and Florida law, a release is a form of contract and must be interpreted pursuant to contract law. *See Skidmore v. Beech Aircraft Corp.*, 672 F. Supp. 923, 925–26 (M.D. La. 1987) (citing Louisiana state cases); *Little v. Seterus, Inc.*, No. 16-CV-60700, 2017 WL 606340, at *2 (S.D. Fla. Feb. 13, 2017). "Unambiguous releases of past, present or future known or unknown claims bar those claims." *Am.'s Favorite Chicken Co. v. Suryoutomo*, 889 F. Supp. 916, 918 (E.D. La. 1995) (citing *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1310-13 (5th Cir. 1983)); *accord also Little v. Seterus*, 2017 WL 606340, at *3 (upholding general release, including of unknown or future injuries, in settlement agreement: "The plain language in the Settlement Agreement compels this result and the Court may not rewrite those terms").

"[A] valid release [is] binding on unequivocal abandonment of the action against the released party." *Skidmore,* 672 F. Supp. at 926 (M.D. La. 1987); *accord Crystal Colony Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 6 F. Supp. 3d 1295, 1300 (S.D. Fla. 2014) (upholding release of claims as enforceable and binding between the parties, and overruling plaintiff's argument that consideration failed because plaintiff was not fully compensated for its loss).[4]

---

[4] *Accord* Texas, Mississippi, and Alabama law on the validity of a release of claims, generally: *Sterling Equities, Inc. v. Chubb Custom Ins. Co.*, 806 F. Supp. 2d 1004, 1008 (S.D. Tex. 2011) (A release "operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter.") (quoting *Dresser Indus., Inc. v. Page Petroleum, Inc., et al.*, 853 S.W.2d 505, 508 (Tex.1993)); *Preferred Risk Mut. Ins. Co. v. Collier*, 712 F. Supp. 96, 99 (S.D. Miss. 1989) ("The Mississippi cases make it clear that Mississippi has a strong and abiding policy favoring settlement, and under Mississippi law, a release is valid and enforceable and cannot be set aside absent fraud."); *Roberson Excavation, Inc. v. Dale Cty. Water Auth.*, No. 1:15-CV-939-MHT, 2016 WL 5799051, at *5 (M.D. Ala. Sept. 9, 2016), report and recommendation adopted, No. 1:15CV939-MHT, 2016 WL 5843214 (M.D. Ala. Oct. 3, 2016) ("If the express provisions of a release are unambiguous, then, in accordance with contract principles generally, they will be taken as expressing the intent of the parties.") (quoting *Nix v. Henry C. Beck Co.*, 572 So.2d 1214, 1217 (Ala. 1990)); *see also* Ala. Code § 12-21-109 ("All receipts, releases and discharges in writing . . . must have effect according to their terms and the intentions of the parties thereto.").

4

### B.     The GCCF Releases Are Unambiguous, Valid, and Enforceable.

The GCCF Release was issued by the GCCF Claims Administrator, Kenneth Feinberg, after review by the U.S. Department of Justice to ensure fairness to claimants. The GCCF Release provided, among other things:

> In consideration of payment in the amount of [relevant amount], Claimant hereby releases and forever discharges, and covenants not to sue [the BP Defendants] for any losses, damages, costs, expenses, injuries, claims, causes of actions, liabilities, or other relief that Claimant has or may have, whether known or unknown, whether present or future, whether direct or indirect, whether legal or equitable, arising from or relating in any way to the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon drilling rig, and the subsequent oil spill in the Gulf of Mexico . . . .

Ex. B at 6, Release and Covenant Not to Sue ¶ 1. The release further provided:

> Claimant also, on behalf of Claimant's spouse, heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, affiliates, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, and attorneys (collectively, "Affiliates"), hereby releases and forever discharges, and covenants not to sue BP and the other Released Parties for any Claims released by Claimant pursuant to Paragraph 1 above.

*Id.* at 6, Release and Covenant Not to Sue ¶ 2.[5] Each GCCF Release signatory agreed to "dismiss with prejudice within 10 days of executing this Release any litigation concerning the

---

[5] In their previous PTO 60 show cause filing in this litigation, Remaining B1 Plaintiffs Crabco and Mr. Peeper's Best, LLC ("Mr. Peeper's") admitted that the Court-appointed Neutrals had concluded that Crabco had released its claims through a GCCF Release, but Crabco and Mr. Peepers took the position that the release was on behalf of Crabco's principal (Jerry Wayne Tharp) only. (Rec. Doc. 20541 (mistakenly identified as James Tharp).) BP submits that the Neutrals' assessment was correct. Rather than being a separate legal entity from Mr. Tharp, Crabco is instead a trade name personally registered by Mr. Tharp. (Exhibit C, Louisiana Secretary of State Trade Name Materials for Crabco.) Accordingly, Crabco has no claims separate from Mr. Tharp's claims, and Crabco's claims are encompassed within Mr. Tharp's release. *See* La. Code Civ. Proc. Ann. art. 687 ("A person who does business under a trade name shall sue in his own name to enforce a right created by or arising out of the doing of such business."); *Robinson v. Heard*, 2001-1697 (La. 2/26/02), 809 So. 2d 943, 946 ("A sole proprietorship is not a legal entity. It is merely a designation assigned to a manner of doing business by an individual. While the individual involved in the sole proprietorship may consider the business to be separate and distinct from his/her person, there exists no legal distinction between the individual and the business."); *Sole Proprietorship*, Black's Law Dictionary (10th ed. 2014) ("A business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity.") Likewise, Mr. Peeper's claims are also included in Mr. Tharp's release because it is a joint venture partner with Tharp and Crabco. Crabco and Mr. Peeper's's complaint alleges that "Crabco created Mr. Peeper's as its ***agent and/or joint venture partner*** to handle this new business venture" for which it alleges economic losses. (Case No. 13-01076, Compl. ¶¶ 6-7, 29

[*Deepwater Horizon*] Incident (other than litigation alleging only Bodily Injury or Securities Claims) filed by or on behalf of Claimant against BP or any other Released Parties." *See, e.g.*, Ex. B at 6, Release and Covenant Not to Sue ¶ 7.  In exchange, each GCCF Release signatory received final compensation for its claims.  *See id.* at 4-5, Release and Covenant Not to Sue at 2-3 of 7.

The GCCF Release clearly and repeatedly identified the implications of signing:

> By signing the attached Release, you are forever giving up and discharging any rights which you may have for any costs, damages or other relief related to or arising from the Incident . . . , even if you are not currently aware of such costs or damages and even if such costs or damages arise in the future (i.e., additional oil impacts) or do not manifest themselves until the future.

*Id.* at 4, Release and Covenant Not to Sue at 2 of 7.  The release cautioned, "If you want to file a lawsuit regarding the Incident or make a claim against the Oil Spill Liability Trust Fund, do not sign this Release." *Id.*

Numerous terms in the GCCF Releases demonstrate that signatories executed the releases knowingly and voluntarily, and BP has no reason to believe otherwise.  *Id.* at 2, Instructions for Completing the Release ¶ 4 (release instructions stated, "***Understanding Your Rights.  . . . Do not sign the Release unless you understand and agree to its terms.***") (emphasis in original); *see also id.* at 1 ("***All claimants have the right to consult with an attorney of their own choosing prior to accepting any settlement or signing a release of legal rights.***") (emphasis in original); *id.* at 4, Release and Covenant Not to Sue at 2 of 7 ("By signing the attached Release, you acknowledge that you have read and understand the terms of the Release, and that you execute the Release voluntarily and without being pressured or influenced by, and without relying upon,

---

(emphasis added)).  As noted above, Mr. Tharp's GCCF Release also extends to both "agents" and "joint venturers" of the claimant executing the release.  Accordingly, both Crabco's and Mr. Peeper's's claims are released through Mr. Tharp's GCCF Release.

any statement or representation made by any person acting on behalf of BP or any other released party").

The seven Remaining B1 Plaintiffs—and any others—who signed a GCCF Release in exchange for payment by the GCCF should be bound to their agreement to release their claims and dismiss their litigation against BP and other released parties. Their complaints asserting B1 claims should be dismissed.

## II.   THIRTY-THREE REMAINING B1 PLAINTIFFS WHO ARE MEMBERS OF THE ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS SHOULD BE DISMISSED.

To date, BP has identified 33 Remaining B1 Plaintiffs who were neither excluded from nor opted out of that Settlement Class and whose claims are therefore enjoined by the Court's Order and Judgment.

Based on BP's review and analysis of determined CSSP claims reporting provided to BP by the Claims Administrator, 33 Remaining B1 Plaintiffs have (1) submitted claims to the CSSP, thus holding themselves out as settlement class members; (2) did not opt out of the class settlement; and (3) received a determination on their CSSP claim *other than* a determination that the Claims Administrator had determined them to be excluded from the settlement class. By their own representation and the Claims Administrator's confirmation, those plaintiffs are subject to the class release and this Court's injunction, and their claims should be dismissed.

In addition, BP believes there are other Remaining B1 Plaintiffs who are Settlement Class Members and who may have submitted a claim to the CSSP, but have not yet received a determination from the Claims Administrator. For example, there are an additional 13 Remaining B1 Plaintiffs (identified on the attached Exhibit D) who BP believes to be class members, but for whom BP does not currently have any record of a CSSP determination. Although those 13 plaintiffs previously submitted claims to the BPCP, the BPCP redirected them

7

to the CSSP when review of their claims submissions indicated that those plaintiffs were likely to be settlement class members. In addition, certain of those 13 plaintiffs, and at least one other Remaining B1 Plaintiff, have admitted to BP and this Court in their complaints and/or their PTO 60 sworn statements that they are members of the Settlement Class.[6] For example, plaintiff Adams Home of NW FL alleged in its complaint that "Plaintiff believes it is a member of the *Deepwater Horizon* Economic and Property Damages Settlement Class" and is only filing the action "to protect and preserve" its rights. (Case No. 13-01494, Compl. ¶ 6; *see also* Case No. 13-01494, Sworn Statement (Rec. Doc. 6).) BP reserves the right to identify any additional Remaining B1 Plaintiffs, including the 14 plaintiffs listed on Exhibit D, who subsequently receive claim determinations or other similar confirmation from the CSSP that demonstrate them to be settlement class members and to renew its motion as to those plaintiffs.

Because the Remaining B1 Plaintiffs discussed above are members of the Economic and Property Damages Settlement Class, their claims are released and enjoined and must be dismissed with prejudice. In its Order and Judgment, the Court found that "both the general classwide release ("Economic Class Release") contained in Section 10 of the Settlement Agreement and the Individual Release contained in Exhibit 26 to the Settlement Agreement are valid and enforceable and were the product of intense and detailed negotiations between the parties in light of prior experience by the parties in *Deepwater Horizon*-related litigation . . . ." Order and Judgment ¶ 8 (emphases added).[7] The Court added that the Settlement Agreement "shall be the ***exclusive remedy*** for any and all Released Claims by or on behalf of the Economic Class, Plaintiffs or any and all Economic Class Members against any and all Released

---

[6] These plaintiffs' admissions regarding their class membership are cited on Exhibit D.

[7] The CSSP releases are governed by General Maritime Law and shall be interpreted in a manner intended to comply with OPA. Settlement Agreement § 36.1.

Parties . . . ." *Id.* ¶ 9 (emphasis added).  The Court dismissed with prejudice all of those released claims and all "Related Claims," *id.* ¶¶ 10-11, and permanently barred and enjoined each Economic Class Member (as defined in the Order and Judgment) from commencing, filing, initiating, asserting, instituting, maintaining, consenting to and/or prosecuting any judicial, arbitral, or regulatory action against BP and other released parties with respect to the released claims.  *Id.* ¶¶ 13-14 (BP may recover costs from any class member that refuses to dismiss released claims).

In accordance with the Settlement Agreement and the Order and Judgment, BP respectfully requests that the Court dismiss the complaints of all Remaining B1 Plaintiffs that are Economic and Property Damages Settlement Class Members and who assert claims that have been released and dismissed, including the complaints identified in Exhibit A.[8]

---

[8] In addition to the Released B1 Plaintiffs, one other Economic and Property Damages Settlement class member is currently seeking to pursue B1-type claims against BP notwithstanding the Court's release and injunction in an action currently outside of MDL 2179.  *See Envtl. Litig. Grp. PC v. BP p.l.c., et al.* (C.A. No. 2:17-cv-00050) (N.D. Ala., Jan. 12, 2017).  After the denial of its claim by the CSSP, Environmental Litigation Group PC ("ELG") filed suit against BP in Alabama state court.  BP removed ELG's action to the United States District Court for the Northern District of Alabama, and it is currently subject to the Judicial Panel on Multidistrict Litigation's Conditional Transfer Order 134 ("CTO-134"), which would transfer ELG's case to these proceedings.  ELG filed a motion to vacate CTO-134, which the Panel will hear at its March 30, 2017 hearing session.  BP believes that ELG's action may be transferred to MDL 2179 as soon as mid-April 2017.

## CONCLUSION

For the foregoing reasons, BP respectfully requests that all released claims of the Remaining B1 Plaintiffs, including those identified in Exhibit A, be dismissed with prejudice.

Dated: March 22, 2017

        Respectfully submitted,

        /s/ Don K. Haycraft_____

**LISKOW & LEWIS**

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar # 16984)
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

**KIRKLAND & ELLIS LLP**

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

Jeffrey B. Clark
(jclark@kirkland.com)
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Christopher W. Keegan
(chris.keegan@kirkland.com)
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

*Attorneys for the BP Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of March, 2017.

    /s/ *Don Haycraft*
    Don Haycraft