UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 20, 2010** | **MDL No. 2179** |
| | **SECTION: J** |
| **This document relates to:  No. 10-2543** | **JUDGE BARBIER** |
| | **MAGISTRATE WILKINSON** |

## FIRST AMENDED AND RESTATED COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come plaintiffs, John Wunstell, Jr. and Kelly Blanchard, both majors domiciled in the Parish of Lafourche, State of Louisiana, who represent as follows:

I.

Made defendants herein are:

**A.    BP, PLC** ("BP"), a foreign corporation authorized to do and doing business in the State of Louisiana;

**B.    BP EXPLORATION AND PRODUCTION, INC.** ("BP Products"), a foreign corporation authorized to do and doing business in the State of Louisiana; and

**C.    BP AMERICA PRODUCTION COMPANY, INC.** ("BP America"), a foreign corporation authorized to do and doing business in the State of Louisiana (collectively referred to as "BP").

1

II.

Plaintiffs, John Wunstell, Jr., and Kelly Blanchard, seek damages that are reasonable in the premises against the foregoing defendants, jointly, severally and *in solido*, for the following reasons:

III.

On or about April 20, 2010, the M/V DEEPWATER HORIZON exploded and/or caught fire as the result of a massive blowout of an oil well in the Gulf of Mexico.

IV.

Upon information and belief, the massive oil leak was the largest uncontrolled release of oil, gasses and other contaminants in the history of the United States.

V.

At all times pertinent hereto, plaintiffs, John Wunstell, Jr. and Kelly Blanchard, were owners and operators of a shrimping/fishing vessel, RAMIE'S WISH, and used said vessel in the business of commercial fishing and shrimping.

VI.

Because of the massive oil release in the Gulf of Mexico, defendant, BP began seeking vessels in the area of southeast Louisiana in order to provide various types of remediation, containment and response services, commonly referred to as the "Vessel of Opportunity Program" ("VOP").

VII.

On or about May 1, 2010, plaintiffs, John Wunstell, Jr. and Kelly Blanchard, as co-owners of RAMIE'S WISH, entered into a Master Vessel Charter Agreement under which defendant, BP, chartered RAMIE'S WISH pursuant to the VOP.

VIII.

Pursuant to the Charter Agreement, BP agreed that the general maritime laws of the United States should govern "all matters of construction, validity and performance" of the Charter Agreement, and that only in the event that the general maritime laws of the United States do not apply, the laws of the State of Louisiana shall govern.

IX.

The Charter Agreement further provides that any court of competent jurisdiction in New Orleans, Louisiana, is the proper venue for any dispute under said Charter Agreement.

X.

The Charter Agreement was subsequently amended by court order, applying retroactively to the date of the initial signing of the Charter Agreement.

XI.

Under the amended Charter Agreement, BP was obligated to ensure that all vessel crews engaged in oil spill response activities received all necessary training for such activities, received all necessary credentials for such activities, and received all necessary protective equipment for said activities.

XII.

At all times pertinent hereto, BP was responsible for and exercised direct control over, the Horizon Response Program ("HRP") and was obligated to ensure the safety and wellbeing of crew members of vessels chartered by BP in the Vessel of Opportunity Program.

XIII.

At all times pertinent hereto, the safety, operations and direction of RAMIE'S WISH was under the control, supervision and direction of BP.

XIV.

At all times pertinent hereto, RAMIE'S WISH was assigned to the burn unit/burn team of the Horizon Response Program.  Mr. Wunstell collected the oil for burning at MC252, otherwise known as ground zero.  Mr. Wunstell worked in tandem with a second boat with an approximately 400 foot boom tied between both boats with a 150 foot rope to each boat for an approximate total length of 700 feet.  They would collect the oil inside the dragged boom.  The approximate average of volume for oil collected between the boats was 400 feet long, 200-300 feet wide, and up to 18 inches deep.  Once the oil was collected, an ignition boat would fire a flare with a kerosene source into the oil, setting it ablaze.  During the burning, the vessel stayed connected to the boom and was typically within 300 feet of the burning oil for the entire time.

XV.

At all times pertinent hereto, plaintiff, John Wunstell, Jr., was acting as Captain aboard RAMIE'S WISH, and under the direction of BP.

XVI.

The burn unit/burn team operated in the Gulf of Mexico in the area where massive quantities of oil, gas and other contaminants were leaking from the uncontrolled well, to use containment equipment to gather this oil, gas and other contaminants at the surface of the water, to either participate in or be present when said material was then ignited, and then to stand by and observe the burning oil, gasses and other chemicals.  The team stayed on site 24 hours a day and slept on the vessel.

XVII.

As a result of their job responsibilities, vessels involved in the burn unit/burn teams were exposed to massive quantities of crude oil, crude oil vapors, dispersants that were being injected into the well site and/or sprayed onto the surface of the water, other gasses or chemicals being released by the uncontrolled well release, as well as fumes from the burning of all these materials, which caused the release of noxious fumes and/or particles to which crew members were exposed.  On at least one occasion, the crew experienced falling liquid after the planes that sprayed dispersants passed overhead.  The crew would wake up each morning to experience the vessel covered with a film of oil and/or dispersants.

XVIII.

At all times pertinent hereto, the defendants, BP failed to provide any type of respirators and/or compressed air and/or other means of respiratory protection, despite clear knowledge that crew members working aboard vessels in the burn unit/burn team were being repeatedly exposed to extensive vapors and noxious fumes.

5

XIX.

At all times pertinent hereto, in meetings and discussions in connection with hiring on with the Vessel of Opportunity Program, vessel owners, including John Wunstell, Jr., were advised that the appropriate procedure would be that vessels, upon completion of a shift of work, would be brought inland and would undergo thorough detoxification to remove oil and chemicals from said vessels. However, that procedure was not followed with regard to the fishing/shrimp vessels involved in the Vessel of Opportunity Program, though the larger command vessels were, in fact, regularly detoxed and decontaminated.

XX.

On or about May 28, 2010, plaintiff, John Wunstell, Jr., was aboard RAMIE'S WISH as Captain and was involved in the duties and operations of the burn unit/burn team. Having been exposed to various vapors and noxious fumes and chemicals as described hereinabove, Mr. Wunstell became severely ill with a severe headache, nausea, and shortness of breath. The headaches had begun several days earlier and had progressively worsened until they had become constant. Mr. Wunstell was also suffering from chest pain and an irritation in his nose. He also suffered from a severe rise in blood pressure. Mr. Wunstell also adopts and incorporates by reference all medical issues he identified in his Exhibit "A".

XXI.

Because of his critical condition, plaintiff, John Wunstell, Jr., was taken by helicopter to West Jefferson Medical Center, where upon arrival, his clothing was removed and he underwent spraying and decontamination before being seen in the hospital.

XXII.

Upon being discharged from the hospital, Mr. Wunstell has continued to remain under a physician's care, continues to suffer headaches, nausea, and pulmonary difficulties.  In addition, he has been traumatized by the repeated exposures to various chemicals, noxious fumes and particulars, causing him deep fear and concern relating to his conditions.  These injuries remain debilitating to him.

XXIII.

Plaintiff, John Wunstell, Jr., remains on active treatment and care at this time for his injuries and conditions.

XXIV.

The BP defendants were negligent in causing the fire and explosion and the uncontrolled release of massive oil, chemicals and gasses, resulting in injuries and damages to plaintiffs.

XXV.

The BP Defendants were negligent under the general maritime laws and/or by state law supplementing maritime law, as well as state law negligence claims, in the following particulars or as may be shown at the trial of this matter:

- A. Failing to comply with the terms and conditions of the Charter Agreement with respect to providing training for crew members in the Vessel of Opportunity Program, including plaintiff, John Wunstell, Jr.;

- B. Failing to provide John Wunstell, Jr. with adequate personal protection from the fumes, gasses, noxious chemicals and particles to which he became exposed while working as part of the burn unit/burn team;

C. Failing to have adequate ventilation, respiratory equipment, compressed air or other means of providing good air supply to members of the crews in the Vessels of Opportunity Program, including John Wunstell, Jr.;

D. Ordering, instructing, employing and/or directing the Vessels of Opportunity into areas of extreme danger for exposure to crude oil, crude oil fumes, burning crude oil fumes and noxious chemicals and particles, as well as various other chemicals, either injected into the well or sprayed onto the surface of the water and oil;

E. Failing to thoroughly advise crew members such as John Wunstell, Jr. of the nature and dangers of the hazardous chemicals and noxious fumes to which he would be exposed as a member of the burn unit/burn team;

F. Failing to provide adequate pre-job physical and safety training to guard against potential exposures and hazards involved in the burn unit/burn team;

G. Failing to appropriately monitor medical conditions of crew members by having pre-job laboratory testing of potential chemical exposure with follow-up testing at either periodic periods of time and/or after suspected exposure to noxious chemicals and fumes;

H. Continuing with their inadequate safety programs despite knowledge of repeated injuries and complaints by crew members of vessels in the Vessels of Opportunity Program;

I. Discouraging the use of respirators or other respiratory protective equipment without considering the respiratory problems and issues faced by crew members, such as John Wunstell, Jr.;

J. Failing to provide complete decontamination and removal of oil and chemicals from RAMIE'S WISH on a regular basis, as previously promised;

K. Failing to have adequate air monitoring equipment and/or properly trained individuals monitoring the air quality and/or inadequate procedures for monitoring air quality aboard the vessels in the Vessels of Opportunity Program; and

8

      L.      Subjecting crew members, such as John Wunstell, Jr., to exposure to numerous combinations of chemicals, as well as burning these chemicals and creating a toxic mixture of fumes which defendants never properly warned and/or protected the crew members from such exposure.

## XXVI.

The wrongful and negligent conduct of the defendants as stated above has caused injury to the plaintiff, John Wunstell, Jr., requiring medical treatment in the past and likely to require medical treatment in the future, causing him pain, suffering and mental anguish, loss of enjoyment of life, loss of income, depression and fear of the unknown with regard to his medical condition and safety. Plaintiff seeks damages that are reasonable in the premises to compensate him for the many injuries that he has incurred as a result of the defendants' wrongful conduct.

## XXVII.

Plaintiffs, John Wunstell, Jr. and Kelly Blanchard, as co-owners of RAMIE'S WISH, have sustained damages and injuries to their vessel, requiring complete detoxification of said vessel, requiring removal of paint and chemicals from the decks, bow, railings and other equipment of said vessel, requiring complete repainting of said vessel, as well as other potential damages to the vessel with regard to its lost use and unavailability for continued employment in the Vessel of Opportunity Program because of the wrongful conduct of the defendants. Plaintiffs, John Wunstell, Jr. and Kelly Blanchard, seek damages that are reasonable in the premises to compensate them for the damages to the vessel which they own.

XXVIII.

Plaintiffs, John Wunstell, Jr. and Kelly Blanchard, seek punitive damages under maritime law and/or alternatively under state law, on the grounds that the wrongful conduct of the defendants has been wanton, reckless and in gross disregard for the safety and health of the plaintiffs.  Plaintiffs therefore seek punitive damages against said defendants to punish them for their gross disregard for the safety and health of the plaintiffs.

XXIX.

In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiffs were caused by the acts and/or omissions of the Defendants that are beyond proof by the Plaintiff, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the fire, explosion, sinking and oil spill resulted from the negligence of Defendants.  Furthermore, the fire, explosion, sinking and the resulting oil spill would not have occurred had the Defendants exercised the high degree of care imposed on them and Plaintiffs, therefore, plead the doctrine of res ipsa loquitur.

## MEDICAL MONITORING CLAIM

XXX.

Defendants' misconduct caused Plaintiffs to be exposed to disastrous levels of crude oil, crude oil vapors, natural gas, dispersants, and other gasses and chemicals ("harmful substances"). Not only is this the largest oil spill in the country's history but it is also believed to be the largest use of dispersants ever.

XXXI.

The exposure to these harmful substances was compounded exponentially by the burning technique employed by Defendants as a remediation method. Upon information and belief, exposure to these substances creates an unreasonable risk of harm because it creates an exposure to the following non-exclusive list of one or more components and/or by-products: (1) aromatic hydrocarbons; (2) straight chained hydrocarbons; (3) benzene rings; (4) polycyclic aromatic hydrocarbons; (5) crude oil constituents; (6) heavy metals; (7) naphthalene; (8) benzopyrene diol epoxide; (9) 2-butoxyethanol; and (10) numerous other dangerous substances.

XXXII.

Defendants knew or should have known that exposure to these substances in these amounts created an unreasonable risk of harm to Plaintiffs.

XXXIII.

At all material times, Plaintiffs were unaware and had no reasonable way to know or realize that their significant exposure to these substances created an unreasonable risk of harm. As a proximate result of this exposure, Plaintiffs suffered a significantly increased risk of contracting a serious latent disease and/or medical condition, including, but not limited to the following: scrotal cancer, esophageal cancer, stomach cancer, lung cancer, intenstinal cancer, kidney cancer, bladder cancer, leukemia, lymphoma, skin cancer, brain cancer, synovial sarcoma, breast cancer, laryngeal cancer.

XXXIV.

Plaintiffs' risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he not been exposed and (b) the chances of members of the public at large of developing the disease.

XXXV.

A monitoring procedure exists that makes the early detection of the disease possible. Many of the environmental diseases from toxic exposure are chronic in nature and may take years to develop. Clinical warning signs can be utilized to prevent the development of disease. Some diseases can be reversed if detected early enough. When the environmental disease cannot be prevented, early detection can affect the disease process such that proper treatment may be received early for the best results. The object of medical surveillance is to detect the development of a disorder while the disorder is still subclinical (without symptoms).

XXXVI.

The monitoring procedure can be prescribed by a qualified physician and is reasonably necessary according to contemporary scientific principles. The development of abnormal laboratory tests during medical surveillance may provide a warning signal of developing disease or malignancy.

XXXVII.

The monitoring regime would be different from that normally recommended in the absence of exposure. Procedures may include, but not be limited, to the evaluation of hematological, clinical chemistry, urinalysis, occult blood, and immunological parameters.

XXXVIII.

There is demonstrated clinical value in the early detection and diagnosis of the disease. Combined with physician evaluation and additional medical monitoring procedures, early diagnosis provides successful treatment, prevention of loss of life, and reduction in pain and suffering and health care costs

XXXIX.

Plaintiffs are entitled to a judgment finding Defendants liable to Plaintiffs as a result of Defendants' negligence and establishing a medical monitoring program.

XL.

The BP defendants' aforementioned misconduct also caused Kelly Blanchard, Mr. Wunstell's wife, to suffer loss of support and companionship, thereby giving rise to a loss of consortium claim under Louisiana law.

XLI.

Plaintiffs request a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally and in solido, for all compensatory, punitive, equitable, general, and specific damages stated herein as well as any other such further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

RESPECTFULLY SUBMITTED BY:

/s Soren E. Gisleson
Soren E. Gisleson, T.A. (LA Bar No. 26302)
Stephen J. Herman (LA. Bar No. 23129)
James C. Klick (LA Bar No. 7451)
Joseph E. Cain (LA Bar No. 29785)
Herman Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax: (504) 569-6024
E-Mail: sgisleson@hhklawfirm.com


Mr. Bob F. Wright (LA Bar No. 13691)
James P. Roy (LA Bar No. 11511)
Elwood Stevens (LA Bar No. 12459)
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502
Telephone: (337) 233-3033
Facsimile: (337) 233-2796


*Attorneys for Plaintiffs*