UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUSIANIANA


In Re: Oil Spill by the Oil Rig      *     MDL 2179
    "Deepwater Horizon" in the Gulf
    Of Mexico, on April 20, 2010     *     SECTION: J

                      *     JUDGE BARBIER

This Document Relates To:
*Pleading Bundle B1*            *     MAG. JUDGE WILKINSON

<u>PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR RESPONSE TO BP'S
MOTION AS TO RELEASED CLAIMS PURSUANT TO PTO NO. 64, SECTION 1, B1</u>

Pursuant to Federal Rules of Civil Procedure 27(3) and PTO 64, Plaintiffs respectfully requests that BP's Motion as to Released Claims Pursuant to PTO No. 64, Section 1, B1 requesting the Court dismiss the claims of those Remaining B1 Plaintiffs be denied.

BACKGROUND

Following the devastation caused by the *Deepwater Horizon* incident on April 20, 2010, BP, as the responsible party, started a claims program and multiple class settlements in order to begin compensating victims of the disaster. Among those parties affected by the disaster were seafood workers who were devastated by the oil spill's impact on the Gulf of Mexico. Under §2705 of Oil Pollution Act, BP, as the responsible party, was required to establish a procedure to pay interim, short term damages to claimants who were affected by the oil spill. As these interim payments dried up, Plaintiffs were asked to sign settlement agreements which contained releases and covenants not to sue BP. At a time when they were unable to earn a livelihood due to the conditions in the gulf caused by the Deepwater Horizon, Plaintiffs, seafood workers in the Gulf, were asked to sign these releases.

The local economy for the Gulf Coast was devastated. Orders for seafood from the Gulf were being cancelled. The health of the Gulf was not determined and it was totally unfair and

1

unreasonable to not provide some compensation until the full nature and extent of the damage to the Gulf had been determined that it was safe to fish in the Gulf again and the fear of the public that fish from the Gulf was overcome. As the Court is well aware, settling a personal injury claim before a personal injury client has achieved maximum medical improvement is tantamount to malpractice. Nowhere is this practice of getting premature release claims more abhorrent than in the application to seafood workers. How could seafood workers be required to sign releases until the full nature and extent of the damage to the gulf and the seafood therein had been determined.

In many instances these releases were obtained by deceptive practices representing that if they didn't sign this release they would receive nothing for their claim. Many of the practices were coercive in obtaining the releases presented at a time when claimants had no sources of income and were unable to provide for their families and would sign anything necessary to meet their needs and to salvage what they had.

## ARGUMENT

The executed GCCF releases not to sue should be found invalid and unenforceable. Maritime workers are provided additional protection under admiralty law. BP's Motion and accompanying Memorandum fail to address the fact that many of the remaining release claimants are maritime workers. "Every court should watch with jealousy an encroachment upon the rights of seamen, because they are unprotected and need counsel" *Harden v. Gordon*, 11 F. Cas. 480 (C.C.D. Me. 1823). The court in *Haden* found that:

> the most rigid scrutiny is instituted into the terms of every contract, in which they [seamen] engage. If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable.

The Supreme Court has recognized these additional protections afforded to seaman, particularly when it applies to releases signed by seamen giving up certain legal rights. "The wardship theory has, as was recognized by the courts below, marked consequence on the treatment given seamen's releases. Such releases are subject to careful scrutiny. 'One who claims that a seaman has signed away his rights to what in law is due him must be prepared to take the burden of sustaining the release as fairly made with and fully comprehended by the seaman.'" *Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 247-48, 63 S. Ct. 246, 252 (1942). In *Garrett,* the Supreme Court reversed the Pennsylvania Supreme Court's ruling that the burden of proof on releases was on Plaintiff; a maritime worker who claimed he did not remember signing the release and even if he did sign it, it was obtained by fraud under the belief it was for unpaid wages; to prove the release signed by Plaintiff. The Supreme Court found that under Federal law, the burden is on the party seeking to enforce the release to prove that the release is valid. BP argues that the inclusion of certain language "demonstrates that signatories executed the releases knowingly and voluntarily, and BP has no reason to believe otherwise." (BP's Memorandum in Support of Its Dispositive Motion as to Released Claims Pursuant to PTO No. 64, Section 1 B1, Page 6). The language included in the release alone does not meet the high burden set by the Supreme Court in *Garrett*, but merely suggests BP had no reason to believe they did not understand the terms.

In *Garrett,* the Supreme Court held that "the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding." *Id at* 248 BP again has failed to meet this high

burden to show that the release claimants were fully apprised of their legal rights when executing

these releases at a time when the extent of the damage to the Gulf was not yet fully understood.

These releases were executed by seafood workers when they were unable to earn a living due to

the BP Oil Spill and were desperate for any help. This court has a duty to protect these seafood

workers. "Seamen, of course, are wards of admiralty whose rights federal courts are duty-bound

to jealously protect." *Bass v. Phx. Seadrill/78, Ltd.,* 749 F.2d 1154, 1160-61 (5th Cir. 1985)

When these seamen were signing these releases, they were not fully aware of the legal

rights they were signing away as many if not most were not represented by an attorney. The Fifth

Circuit has held that when examining the validity of a release executed by a seaman, "[o]ur

ultimate concern in these cases is not whether the seaman has received what the court considers

to be adequate consideration for the rights he has relinquished; rather, we inquire whether the

seaman relinquished those rights with "'an informed understanding of his rights and a full

appreciation of the consequences' when he executed the release." *Id* at 1161. In *Bass*, the Fifth

Circuit remanded the case to the District Court after it only examined whether or not Plaintiff

received adequate compensation for his claim, which is just one of many factors that need to be

examined when considering whether or not the seaman had a full understanding of his rights

when he signed a release. Defendant's contention that the "Release and Covenant Not to Sue"

included in the release was "unambiguous, valid and enforceable" yet does not explain how the

seafood workers, as wards of the court, were fully apprised of the consequences of signing the

releases. BP has not provided the Court any reference to the amount of claimants who were

represented by attorneys when executing these releases, what information was told to the seaman

prior to signing the releases or any other factors. The "Fifth Circuit has reiterated the need to

protect seamen as wards of admiralty." *Asignacion v. Schiffahrts,* No. 11-627, 2011 U.S. Dist.

4

LEXIS 55707, at 19 (E.D. La. 2011). BP, as the party seeking to enforce these releases, bears the

burden of proving that the seaman were fully appraised of what legal rights they were signing

away when they executed these releases and has not yet met that burden.

BP's Motion and accompanying Memorandum argues that under both Louisiana and

Florida Contract law, releases are contracts and are interpreted under contact law. Under Florida

contract law, duress is an affirmative defense to the enforcement of a contract which was

accepted by a party under duress. In the aftermath of the *Deepwater Horizon* incident, many

local residents of the Gulf Coast were desperate for help. In the Florida case of *Mullan v Bishop*

*of the Diocese of Orlando* 540 So2d 174, 177 (Fla. 5th DCA l989) the Fifth District Court of

Appeal discussed why acceptance of benefits alone is not sufficient to determine that a

"ratification" has occurred. In *Mullan*, Plaintiff appealed a summary judgement which had been

entered against him in his action for damages for being forced to resign from his employment

contract under duress and threats of immediate dismissal without benefits. The court held in that

case that the acceptance of those benefits did not constitute ratification.  The court found that

Mullen had "no choice" but to either accept what was offered to him or "let his family suffer".

The court went on to state that "...an agreement, induced by duress has been ratified, should be

rejected where it appears that at the time of the alleged ratification the duress which originally

induced the agreement has continued to operate." *Id* at 177. Like the Plaintiff in *Mullan*, the

release claimants were under financial duress when they were coerced into signing the release

agreements in order to receive some compensation for their damages.

## CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that BP's Motion as to Released

Claims be denied.

Dated: April 4, 2017

RESPECTFULLY SUBMITTED,

/s/ Douglas S. Lyons
Douglas S. Lyons
Lyons and Farrar, P.A.
1637 Metropolitan Blvd., Suite A-2
Tallahassee, FL  32308
(850) 222-8811 - telephone
(850) 222-5583 - facsimile
Florida Bar No. 128277
doug.lyons@lyonsandfarrar.com

**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Plaintiffs' Response to BP's Motion as to Released Claims Pursuant to PTO No. 64 has been served on all counsel by electronically uploading the same to File & Serve Xpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179, on this 4th day of April, 2017.

/s/ Douglas S. Lyons
Douglas S. Lyons