IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, | *<br>*   MDL No. 2179<br>*<br>*   Section: J |
| This Document Relates to: | *<br>*   Judge Barbier |
| *No. 2:13-cv-6649* | *<br>*   Magistrate Judge Wilkinson<br>*<br>* |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE CLAIMS OF THE MEXICAN STATE OF YUCATÁN**

| | |
|---|---|
| Matthew T. Regan, P.C.<br>J. Andrew Langan, P.C.<br>Elizabeth A. Larsen<br>Kristopher S. Ritter<br>Kirkland & Ellis LLP<br>300 North LaSalle Street<br>Chicago, IL 60654<br>Telephone:  312-862-2000<br>Facsimile:  312-862-2200<br><br>Robert C. "Mike" Brock, P.C.<br>Jeffrey B. Clark<br>Kirkland & Ellis LLP<br>655 Fifteenth Street, N.W.<br>Washington, D.C. 20005<br>Telephone:  202-879-5000<br>Facsimile:  202-879-5200 | Don K. Haycraft (Bar #14361)<br>R. Keith Jarrett (Bar #16984)<br>Liskow & Lewis<br>701 Poydras Street, Suite 5000<br>New Orleans, LA 70139-5099<br>Telephone:  504-581-7979<br>Facsimile:  504-556-4108 |

*Attorneys for the BP Defendants*

(Counsel for Additional Defendants Listed on Signature Page)

**INTRODUCTION**

On September 18, 2013, plaintiff, the Mexican State of Yucatán, filed a lawsuit against BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively, "BP" or the "BP Defendants"); Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, Triton Asset Leasing GmbH (collectively, "Transocean"); and Halliburton Energy Services, Inc. (and its product service line Sperry Drilling Services) (collectively, "HESI") alleging damages resulting from the *Deepwater Horizon* oil spill and asserting claims under the Oil Pollution Act of 1990 ("OPA"), maritime law, and/or Florida state law.

Under this Court's case management orders, proceedings on Yucatán's complaint have been stayed since its transfer to this MDL. Recently, the Court, noting that similar claims brought by three other Mexican States had been dismissed by this Court and that the Fifth Circuit had affirmed that dismissal, ordered that defendants could file a motion to dismiss Yucatán's claims. (Rec. Doc. 22297 at 5-6.) Based on this Court's previous rulings in virtually identical cases and decisions affirming this Court issued by the Fifth Circuit, Yucatán's complaint should be dismissed in its entirety. ***First***, this Court should follow its own decision (which the Mexican States whose claims were previously dismissed did not even appeal to the Fifth Circuit) holding that the Mexican States could not meet OPA's requirements for foreign claimants. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 835 F. Supp. 2d 175, 180-82 (E.D. La. 2011). ***Second***, under the Fifth Circuit's binding precedent, the maritime law claims brought by Yucatán must be dismissed because under *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), Yucatán—like the other Mexican States—does not have a sufficient proprietary interest in the resources it alleges were damaged. *See In re*

*Deepwater Horizon*, 784 F.3d 1019, 1030-31 (5th Cir. 2015).  **Finally**, the state law claims brought by Yucatán must also be dismissed because of the Fifth Circuit's controlling decision affirming this Court's holding that state law claims arising from the *Deepwater Horizon* spill are preempted by OPA.  *See In re Deepwater Horizon*, 745 F.3d 157, 169-174 (5th Cir. 2014).

## BACKGROUND

### I. The Complaint Filed by Yucatán.

The Mexican State of Yucatán filed its lawsuit in the Southern District of Florida on September 18, 2013.  The case was transferred to this MDL by the Judicial Panel on Multidistrict Litigation, and subsequently stayed pursuant to this Court's pretrial orders.  Yucatán brought claims under OPA (First Claim), negligence (Second Claim), and gross negligence (Third Claim).  The claims for negligence and gross negligence are pled in the alternative under maritime law and/or Florida or other state law.  (Compl. ¶¶ 105, 136.)

Yucatán seeks recovery for various categories of alleged damages including:

- Various expenses and costs allegedly incurred or likely to be incurred related to the oil spill and Yucatán's response;

- Alleged damages arising from the cancellation and/or postponement of certain developmental projects;

- Alleged damages for net costs of providing increased or additional public services;

- Alleged past, present, and future injuries to marine life and wildlife, waters, and other natural and economic resources;

- Alleged past, present, and future loss of State revenues from taxes and other sources; and

- Alleged past, present, and future damages due to alleged long-term stigma.

*Id.* ¶ 102.  Yucatán also seeks to recover punitive damages.  *Id.* ¶¶ 145-165.

Yucatán alleges that it "has a concurrent proprietary interest over the subject matter of this dispute with the federal government of Mexico."  *Id.* ¶ 41.  It further alleges that its "affected

2

natural resources belong to, are managed by, controlled by, or are appertaining to Yucatán, and its duties to protect these natural resources are concurrent with the" Mexican federal government. *Id.* ¶ 2.  It alleges that it has duties to tend to those natural resources which arise from Mexican law, including Articles 27, 29, and 39-43 of the Mexican Constitution, and Article 7 of the Ley General del Equilibrio Biologico y la Proteccion Al Ambiente (General Law of Ecological Balance and Environmental Protection or "GLEBEP").  *Id.* ¶ 2, 14.  Yucatán further alleges that "[t]he natural resources belong to, are managed by, controlled by, or appertain to Yucatán."  *Id.* ¶ 14.

With respect to OPA, Yucatán alleges that it "is a Government of a foreign country; alternatively or concurrently, it is a governmental political subdivision of a foreign country. . . . Yucatán's governor, as head of the foreign government of Yucatán, has chosen to act as Trustee for the State of Yucatán for purposes of this action.  This trustee shall act on behalf of the foreign government of the Yucatán, in accordance with his mandate in Mexico and in compliance with requirements under the OPA."  *Id.*  Yucatán also alleges:

> There is reciprocity of remedies for Mexican and United States parties in their respective courts.  (*See Reciprocity of Remedies between the United States of America and Mexico.  Ley General del Equilibrio Ecologico y la Proteccion al Ambiente, Art. 203; Codigo Federal de Procedimientos Civiles, Articulo 1910; Codigo Civil Federal, Art. 1, Art. 12, Art. 23-24, 33; and United States Case Law.*[])]  Yucatán has not been otherwise compensated for removal costs or damages; and its recovery is, or shall be authorized pursuant to 33 U.S.C. § 2707.

*Id.* ¶ 15; *see also id.* ¶ 101.

## II. Relevant Rulings from this Court and the Fifth Circuit.

In September 2010, three other Mexican States—Quintana Roo, Tamaulipas, and Veracruz—each filed lawsuits similar to that later filed by Yucatán. (Civ. A. Nos. 10-4239, 10-4240, 10-4241.)  In these actions, the States asserted claims under OPA, as well as claims of negligence, gross negligence, negligence per se, private nuisance, and public nuisance.  These

3

claims were subject to motion practice, and all claims were ultimately dismissed by this Court, with the Fifth Circuit affirming those dismissals to the extent appealed.

### A. This Court's December 2011 Ruling Dismissing Certain Government Claims.

In December 2011, following motion practice, this Court dismissed the Mexican States' OPA claims for failure to meet OPA's requirements for foreign claimants. *In re Oil Spill*, 835 F. Supp. 2d at 180-82. This Court explained that "[a]s to the Mexican States' OPA claims, foreign claimants may recover under OPA only in select situations," *id.* at 181, and cited the relevant provision of OPA:

> (a) Required showing by foreign claimants
> (1) In general
> In addition to satisfying the other requirements of this Act, to recover removal costs or damages resulting from an incident a foreign claimant shall demonstrate that—
>> (A) the claimant has not been otherwise compensated for the removal costs or damages; and
>> (B) recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants.

33 U.S.C. § 2707(a)(1). The Court noted that "[t]he Mexican States do not contend that 'the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants.'" *In re Oil Spill*, 835 F. Supp. 2d at 181. The Court then examined four documents that the Mexican States contended satisfied OPA's treaty or executive agreement prong, but found that none of the four documents authorized recovery by the Mexican States. *Id.* at 181-82.

In the December 2011 Order, the Court also held that the Mexican States' maritime law claims could go forward only to the extent that they could demonstrate an injury to a proprietary interest. *Id.* at 182. In that same decision, the Court, applying its previous decision dismissing

4

the state law claims of the States of Alabama and Louisiana, (Rec. Doc. 4578 at 6-17), also dismissed the state law claims of certain other government entities, including state law claims for penalties brought by certain Louisiana Parish District Attorneys. *In re Oil Spill*, 835 F. Supp, 2d at 179-80. The Court explained:

> The Order on the States' Actions held that penalties asserted by the States under their respective pollution laws were preempted in this instance by the Clean Water Act, largely due to the Supreme Court's interpretation of the Clean Water Act in *International Paper Co. v. Ouellette*, 479 U.S. 481, 107 S. Ct. 805, 93 L.Ed.2d 883 (1987). (Rec. Doc. 4578 at 9–17). This reasoning is equally applicable to penalties asserted [by the Parishes].

*In re Oil Spill*, 835 F. Supp. 2d at 179 n.5.

### B. The Fifth Circuit's Ruling Affirming that the Louisiana Parish District Attorneys' Claims Were Preempted.

The Louisiana Parishes appealed this Court's ruling that their state law claims were preempted by the Clean Water Act. On February 24, 2014, the Fifth Circuit affirmed. It explained that the Clean Water Act "and its implementing regulations comprehensively govern oil exploration and development on the [Outer Continental Shelf], including BP's conduct of the Macondo well operations pursuant to" a National Pollution Discharge Elimination System permit. *In re Deepwater Horizon*, 745 F.3d at 166. The Court then discussed *Ouellette* and its progeny, explaining that:

> The [*Ouellette*] Court described how the enactment of the federal CWA displaced federal common law with a complex scheme of cooperative federalism, delegating to states the authority to issue NPDES effluent discharge permits to point sources within their borders while retaining primary federal responsibility to eliminate water pollution. The Court then applied the standards of conflict preemption, concluding that the "CWA precludes a court from applying the law of an affected State against an out-of-state source."

*Id.* at 167 (internal citations omitted). The Court rejected the Parishes' attempts to distinguish *Ouellette*. *Id.* at 169 ("The Supreme Court's subsequent interpretation of *Ouellette* substantially undermines any cramped reading of the case."). The Court concluded that, "*Ouellette* forms a

5

controlling backdrop for resolving claims caused by the blowout. ***Federal law, the law of the point source, exclusively applies to the claims generated by the oil spill in any affected state or locality***." *Id.* at 171 (emphasis added).

### C. The Decisions by this Court and the Fifth Circuit Holding that the Mexican States Lacked the Necessary Proprietary Interest under *Robins Dry Dock*.

As noted above, this Court's December 2011 ruling permitted the Mexican States' claims to proceed "only to the extent there has been a physical injury to a proprietary interest." *In re Oil Spill*, 835 F. Supp. 2d at 182. This holding was based on *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). *Id.* at 178.

The parties engaged in limited expert discovery and ultimately motion practice on the issue of whether the Mexican States had the necessary *Robins Dry Dock* proprietary interests under Mexican law in the natural resources allegedly damaged by the spill. Following the parties' exchange of expert submissions on Mexican law, the parties cross-filed for summary judgment on the issue of whether the Mexican States had sufficient proprietary interests to pursue their maritime law claims. After conducting what the Fifth Circuit later deemed "an exhaustive inquiry into Mexican law," *see In re Deepwater Horizon*, 784 F.3d at 1023, this Court held that the Mexican States did not have the requisite proprietary interests in the natural resources allegedly damaged by oil. (Order & Reasons [As to the Cross Motions for Summary Judgment regarding the claims by the Mexican States], Rec. Doc. 11281.)

The Mexican States appealed this decision to the Fifth Circuit.[1] On May 1, 2015, the Fifth Circuit affirmed this Court's ruling. *In re Deepwater Horizon*, 784 F.3d at 1032. First, the Fifth Circuit rejected the Mexican States' argument that the guilty pleas entered by BPXP and

---

[1] In their appeal, the Mexican States did not challenge this Court's previous ruling that they could not pursue claims under OPA. Accordingly, the Fifth Circuit has never addressed that issue and the Court's ruling remains law of the case.

Transocean prevented the application of the *Robins Dry Dock* rule. *Id.* at 1023-1025. Noting that almost all of the conduct to which BPXP and Transocean had pled amounted only to criminal negligence (and not intentional conduct), the Court found that there was "no principled reason to distinguish between civil and criminal negligence" in applying *Robins Dry Dock*. *Id.* at 1025. Further addressing BPXP's guilty plea to intentional obstruction of a congressional investigation, the Fifth Circuit agreed with this Court that misrepresentations to Congress "were not 'causally related to the blowout, the oil spill, or the alleged harm to the Mexican States.'" *Id.* (citing *In re Oil Spill*, 970 F. Supp. 2d at 524, 528 (E.D. La. 2013)).

The Fifth Circuit then discussed the various sources of Mexican law relied on by the parties. First, it discussed Article 27 of the Mexican Constitution, which provides:

> Ownership of lands and waters within the boundaries of national land territory is vested originally in the Nation, which has had and has, the right to transmit title thereof to private persons, thereby constituting private property. . . .
>
> The Nation has full ownership over all natural resources of the continental shelf and the seabed and subsoil of the marine areas of the islands. . . .
>
> The Nation has full ownership over the waters of territorial sea in the extension and under the terms set forth by International Law. . . .
>
> In the cases established in [the preceding two paragraphs], the Nation's dominion is inalienable and not subject to the statute of limitation and the exploitation, use or enjoyment of the resources in question by private persons or by companies incorporated in accordance with Mexican laws, may not be undertaken save by means of concessions granted by the President of the Republic and in accordance with the rules and conditions set forth by the Laws.

784 F.3d at 1027 (citing Political Constitution of the United Mexican States, Article 27, ¶¶ 1, 4–6). The Fifth Circuit commented that "[t]his constitutional provision is essentially decisive of this case." *Id.* The court also noted that "[a]n elaborate regime of Mexican federal statutory law—while certainly allotting some power to the states—further establishes federal supremacy with respect to the property at issue." *Id.* at 1029 (providing examples of Mexican federal

7

statutory provisions). The Fifth Circuit also acknowledged that "[t]he State Constitutions of Veracruz, Quintana Roo, and Tamaulipas provide that the individual states maintain a degree of autonomy and freedom," *id.* at 1029, but further stated that "[a]lthough the language of the constitutions is expansive, there is substantial language in these documents recognizing the superior authority of the federal government." *Id.*

> Having surveyed these authorities, the Fifth Circuit concluded:
>
> Ultimately, the question in this case is not whether the Mexican States have *some* authority to use or exploit *some* of the land and other resources at issue here. They likely do. The question is whether their proprietary interests rise to the requisite level. They do not.
>
> We recognize that the *Robins Dry Dock* analytical framework does not easily map on to an intragovernmental relationship. However, the Mexican Constitution is sufficiently clear about the distribution of property rights in the country for us to conclude that the Mexican States in no way resemble owners permitted to recover economic damages in our case law.
>
> . . .
>
> The Mexican Constitution vests ownership of "lands and waters within the boundaries of national land territory" in the "Nation." Mexican Constitution, Article 27. The GLEBEP gives the federal government power over "matters affecting the ecological balance . . . originating . . . in areas beyond the jurisdiction of any State." *See* GLEBEP, Article 5. . . . The state constitutions, the above-listed laws, and Plaintiffs' cited affidavits bespeak a role for the states in managing some of the country's property. But they do not provide the Mexican States with the crucial proprietary interest for purposes of *Robins Dry Dock*.

*Id.* at 1030-31.

8

**ARGUMENT**

**I.    The Court Should Follow its Previous Ruling that the Mexican States Do Not Meet the Requirements that OPA Places on Foreign Claimants.**

This Court correctly determined that Quintana Roo, Tamaulipas, and Veracruz could not meet OPA's foreign claimant requirements, and there is no basis for the Court to depart from its previous ruling as to Yucatán. Indeed, the Court should follow its ruling absent any "legal or factual distinction that would require the Court to treat [this party's] claims differently." *See In re Diamond B. Marine Servs. Inc.*, No. 99-1346, 2000 WL 805235, at *2 (E.D. La. June 21, 2000) (applying law of the case doctrine to dismiss a party's claim, when court had previously dismissed substantially identical claims brought by other parties earlier in the same proceedings). Here, Yucatán's OPA claims are legally and factually indistinguishable from those brought by the other Mexican States.

The State of Yucatán nonetheless suggests that it may recover under OPA because "[t]here is reciprocity of remedies for Mexican and United States parties in their respective courts." (Compl. ¶ 15; *see also id.* ¶ 101.) Yucatán specifically cites:

   1) Ley General del Equilibrio Ecologico y la Proteccion al Ambiente (GLEBEP), Art. 203;

   2) Codigo Federal de Procedimientos Civiles, Art. 1910;

   3) Codigo Civil Federal, Art. 1, Art. 12, Art. 23-24, 33; and

   4) United States Case Law.

*Id.* But Yucatán's reliance on GLEBEP, other Mexican laws, and United States case law is inapposite given what OPA requires of foreign claimants. Such claimants must demonstrate that "recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or **the Secretary of State, in consultation with the Attorney General and**

9

*other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants*." 33 U.S.C. § 2707(a)(1)(B) (emphasis added). OPA does not invite the courts to determine whether the United States and another country provide reciprocal remedies in deciding whether a foreign claimant can recover under OPA; instead, only the Secretary of State may make that determination. Thus, plaintiff's reliance on Mexican statutes and (unspecified) United States case law to demonstrate supposed reciprocity is entirely unavailing.[2]

## II. The Fifth Circuit Has Decided that Only the Mexican Federal Government—Not Mexican States—Has the Proprietary Interests Necessary to Pursue Any Maritime Claims Under *Robins Dry Dock*.

The Fifth Circuit's decision affirming the dismissal of the maritime law claims brought by Quintana Roo, Tamaulipas, and Veracruz is likewise dispositive of the maritime law claims brought by Yucatán.[3] As the Fifth Circuit held, "the Mexican Constitution is sufficiently clear about the distribution of property rights in the country for us to conclude that the Mexican States in no way resemble owners permitted to recover damages under our case law." *In re Deepwater Horizon*, 784 F.3d at 1030.

Like the other Mexican States, Yucatán nonetheless alleges that "[t]he natural resources [allegedly damaged] belong to, are managed by, controlled by, or appertain to Yucatán."

---

[2] Yucatán's assertion that its "governor, as head of the foreign government of Yucatán, has chosen to act as Trustee for the State of Yucatán" is also contrary to OPA. (Compl. ¶ 14.) OPA provides that liability for natural resources damages for foreign claimants, will be "*to the government of the foreign country* for natural resources belonging to, managed by, controlled by, or appertaining to such country." 33 U.S.C. § 2706(a)(4) (emphasis added). It further provides that "[t]he head of any foreign government may designate the trustee who shall act on behalf of that government as trustee for natural resources under this Act." *Id.* § 2706(b)(5). Since liability is only to the governments of foreign *countries*, only the head of the *government of a foreign country* may designate a trustee. Thus, Yucatán's assertion that it may designate itself as trustee is baseless; only the President of Mexico may make that designation.

[3] There is no evidence that oil from the *Deepwater Horizon* spill ever reached Mexican waters or coasts. To the contrary, all available evidence confirms that it did not. Nonetheless, for purposes of this motion, plaintiff's allegations to the contrary are assumed to be true.

10

(Compl. ¶ 14; *compare* Mem. in Support of the Mexican States of Quintana Roo's, Tamaulipas', and Veracruz' Joint Motion for Summary Judgment Regarding Proprietary Interests, Rec. Doc. 8178-1 at 8-9 ("The States of Tamaulipas, Veracruz, and Quintana Roo have proprietary interests in and to their coastlines, beaches, islands, estuaries, natural resources, marine, coastal and estuarine environments, marine life, beaches, other parts of the Gulf of Mexico, waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, marshlands, and other natural and economic resources, eco-systems of offshore waters, fish, oysters, shrimp crabs, crayfish, other marine life, lagoons, wetlands, intertidal zones, fishing operations, fishing industry, coastlines, animals, plants, marine life and wildlife along and off the State's coast.") (citing the Mexican States' complaints).)  But this bare assertion cannot be credited in light of the Fifth Circuit's analysis of Mexican law.

Yucatán also specifically relies on Articles 27, 29, and 39-43 of the Mexican Constitution and Article 7 of the GLEBEP in order to establish that it "individually ***and/or concurrently with the Federal Government of Mexico***, has a duty and responsibility to protect the natural resources which are affected by this spill."  Compl. ¶ 14 (emphasis added).  But as the Fifth Circuit's holding makes clear, any such concurrent power with the Mexican Federal Government is simply insufficient given that Mexican "federal law places the bulk of the power here in the hands of the federal government."  *In re Deepwater Horizon*, 784 F.3d at 1031.  "The state constitutions, the above-listed laws, and Plaintiffs' cited affidavits bespeak a role for the states in managing some of the country's property.  But they do not provide the Mexican States with the crucial proprietary interest for purposes of *Robins Dry Dock*."  *Id.*

As to the provisions specifically noted by Yucatán, this Court is, of course, familiar with Article 27 of the Constitution, which both this Court and the Fifth Circuit found central to the

11

*Robins Dry Dock* analysis. In addition to Article 27, Article 42 was also provided in the previous materials, *see* Rec. Doc. 8167-8 at 9 (defining "national [land] territory"), and the Fifth Circuit relied on that provision in finding that "[n]ational land territory," a term used in Article 27, was defined expansively in Article 42. *In re Deepwater Horizon*, 784 F.3d at 1027 n.10.

Some of the provisions of the Mexican Constitution relied upon by Yucatán were not included in the translated materials provided during the prior briefing on these issues. However, the Mexican Supreme Court has created a translation of that document for English speaking readers, and, for the Court's convenience, defendants are attaching the portions of the Constitution relied upon by Yucatán. *See* Ex. A; http://www.wipo.int/edocs/lexdocs/laws/en/mx/mx047en.pdf (last visited April 5, 2017); *see also* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

Defendants are at a loss to explain what import Yucatán is placing on Article 29 (involving the powers of the President of the Republic to suspend constitutional rights in cases of certain emergencies); Article 39 (providing that national sovereignty is vested in the people), Article 40 (establishing Mexico as a Republic composed of States); Article 41 (providing that "[t]he people exercise their sovereignty through the Powers of the Union, in the cases under their jurisdiction, and through the Powers of the States concerning their internal régimes, in the terms respectively established by this Federal Constitution and the particular constitutions of the States, which may never contravene the provisions of the Federal Pact" and further concerning elections and related issues); and Article 43 (listing the States that make up the Union). None of these constitutional articles provide any basis for departing from the Fifth Circuit's binding precedent,

since they show, at most, that the Mexican States may have some concurrent interests under the Constitution, but no interests that are sufficient to show a proprietary interest under *Robins Dry Dock* and its progeny.

Finally, both this Court and the Fifth Circuit specifically addressed Article VII of the GLEBEP, and found that it did not alter the conclusion that the Mexican States did not have the requisite proprietary interest.  *See In re Deepwater Horizon*, 784 F.3d at 1029 ("[W]hile Mexico's [GLEBEP] affords some power to Mexican states over environmental matters, *see* GLEBEP, Article 7, only the federal government is responsible for '[a]ttending to matters affecting the ecological balance . . . originating in the territory or areas subject to other States' sovereignty and jurisdiction,' *see* GLEBEP, Article 5."); *In re Oil Spill*, 970 F. Supp. 2d at 535 ("Article 7(XII) of Mexico's [GLEBEP] does provide that '[p]articipation in environmental emergencies and contingencies, subject to the policies and programs of civil protection established for that purpose' corresponds to the Mexican States.  The Mexican States claim that this provision 'grant[s] [the] States *exclusive* control of environmental emergencies.'  This characterization is flatly contradicted by Article 5(VII) of that statute, which gives the federal government the power of '[p]articipation in the prevention and control of environmental emergencies and contingencies.'") (internal citations omitted).[4]

---

[4]  BP and Transocean also maintain that an alternate ground exists for dismissal of Yucatán's maritime law claims for negligence and gross negligence against BP and Transocean, which are "Responsible Parties" under OPA—that is, that these claims are displaced by the exclusive remedies provided by OPA.  BP and Transocean made this argument with respect to the other Mexican States before this Court and the Fifth Circuit, but both Courts declined to address the argument.  Given that the Fifth Circuit's binding ruling on the proprietary interest issue clearly controls whether Yucatán may pursue any maritime law claims, BP and Transocean expect that the Court will dispose of such claims on those grounds.  Therefore, BP and Transocean propose to conserve the time and efforts of the parties and this Court by omitting their displacement arguments from this briefing, while nonetheless reserving such arguments.  Should this Court wish to address the displacement arguments, BP and Transocean would, of course, be happy to

**III.     The Fifth Circuit's Decision in the Louisiana Parishes' Appeal Requires Dismissal of Yucatán's State Law Claims.**

In *In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014), the Fifth Circuit held in the Louisiana Parishes case that "Federal law, the law of the point source, exclusively applies to the claims generated by the [*Deepwater Horizon*] oil spill in any affected state or locality." *Id.* at 171. Accordingly, Yucatán cannot bring claims under the laws of Florida or any other state, and any state law claims must be dismissed.

## CONCLUSION

Defendants respectfully request that this Court dismiss the claims of the Mexican State of Yucatán in their entirety.

---

Footnote continued from previous page

submit a supplemental brief. HESI likewise joins in this statement regarding the impact of OPA displacement regarding the imposition of any liability against it, and specifically reserves its arguments in that regard.

Dated April 5, 2017

<u>/s/ Don K. Haycraft</u>
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone: 504-581-7979
Facsimile: 504-556-4108

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Elizabeth A. Larsen
Kristopher S. Ritter
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200

Robert C. "Mike" Brock, P.C.
Jeffrey B. Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: 202-879-5000
Facsimile: 202-879-5200

***Attorneys for BP Defendants***

/s/ *Kerry J. Miller*
Kerry J. Miller (#24562)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone:   (504) 566-8646
Facsimile:     (504) 585-6946
Email:    kjmiller@bakerdonelson.com

***Attorneys for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH***

*/s/ R. Alan York*
R. Alan York
REED SMITH LLP
State Bar No. 22167500
AYork@ReedSmith.com
811 Main Street
Suite 1700
Houston, Texas 77002
Telephone:  713-469-3800
Facsimile:  713-469-3899

Donald E. Godwin
GODWIN BOWMAN & MARTINEZ PC
State Bar No. 08056500
DGodwin@GodwinLaw.com
1201 Elm Street
Suite 1700
Dallas, Texas 75270
Telephone:  214-939-4400
Facsimile:  214-760-7332

***Attorneys for Halliburton Energy Services, Inc. (and its Product Service Line, Sperry Drilling Services)***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of April, 2017.

Dated: April 5, 2017                                                Respectfully submitted,

                                                                       */s/ Don K. Haycraft*
                                                                       Don K. Haycraft