UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  **Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL No. 2179** |
| This Document Relates to: | **SECTION: J** |
| *All Cases* | |
| (including, particularly, Nos. 12-968, 12-970, 15-4143, 15-4146 and 15-4654) | **JUDGE BARBIER** |
| | **MAGISTRATE WILKINSON** |

## FEE AND COST COMMITTEE RECOMMENDATION FOR PROPOSED COST REIMBURSEMENTS AND FEE ALLOCATION

Pursuant to Paragraphs 24-30 of PRE-TRIAL ORDER NO. 59,[1] as clarified and amended,[2] the appointed Common Benefit Fee and Cost Committee ("FCC") respectfully submits the proposed FCC recommendation for the reimbursement of Held Costs, proposed reimbursement of outstanding assessments for Shared Expenses,[3] and the proposed allocation of Common Benefit Fees:

---

[1] Rec. Doc. 14863 (July 15, 2015) at pp.11-15.

[2] *See generally* FIRST AMENDMENT TO PRETRIAL ORDER NO. 59 [Rec. Doc. 15828] (Feb. 3, 2016); SECOND AMENDMENT TO PRETRIAL ORDER NO. 59 [Rec. Doc. 16020] (March 22, 2016); THIRD AMENDMENT TO PRETRIAL ORDER NO. 59 [Rec. Doc. 18641] (June 2, 2016); FOURTH AMENDMENT TO PRETRIAL ORDER NO. 59 [Rec. Doc. 21897] (Nov. 10, 2016).

[3] Historically, Common Benefit Attorneys have contributed "assessments" into a Shared Expense Account, from which Shared Expenses are paid or reimbursed on approval of Co-Liaison Counsel. After approval of the BP Economic Settlement, all Common Benefit Attorneys were reimbursed their then-outstanding assessments for Shared Expenses out of the Common Benefit Fee and Cost Fund established therein. *See* Rec. Doc. 8607. Since that time, the PSC member firms have been replenishing the Shared Expense Account, and reimbursing themselves, with Court approval, out of the BP Common Benefit Fee and Cost Fund, on a periodic basis. *See, e.g.,* Rec. Docs. 9520, 10796, 11796, 12664, 13342, 13677, 14432, 15644, 15916. As noted *infra,* a reserve is recommended to be withheld to cover ongoing Shared Expenses, as well as any additional Held Costs and/or as potential compensation for other future common benefit efforts. With respect to assessments for Shared Expenses, it is suggested that each PSC firm be reimbursed now, and that any further funding of Shared Expenses be made out of this reserve. As noted *infra,* it is anticipated that the remainder of the reserve would be distributed to the Common Benefit Attorneys in the same proportion as allocated for common benefit fees within this Recommendation, on a *pro rata* basis.

## Fee Committee Review Process

On July 15, 2015, the Court entered Pre-Trial Order No. 59, which required Common Benefit Attorneys to audit their time and expense submissions, and to delete any and all submissions that might have been related to individually represented clients, as opposed to common benefit, were duplicative, or were otherwise inappropriate.

As described in the Aggregate Fee Petition, Common Benefit Firms reviewed their previous time and expense submissions, and reduced their own time by 26,583 hours, while also eliminating over $120,000 in previously submitted Held Costs.

The Fee Committee and Special Counsel then reviewed the audited time and expense submissions, as well as the Fee Affidavits and Memos submitted by each Common Benefit Fee Applicant,[4] and conducted interviews with a representative of each Common Benefit Firm.[5]

The Fee Committee conducted 74 interviews, spanning a total of 12 business days, and engaged in preliminary deliberations regarding the comparative benefits and contributions made by each Common Benefit Firm.

Over the course of these proceedings, additional hours and costs were formally withdrawn by several of the Common Benefit Attorneys, and, in some cases, the Firm's claims for an allocation of potential common benefit fees was formally waived.

Based on its review of the audited time submissions, together with the affidavits and interviews, the Fee Committee felt confident that a minimum of 518,250 hours were reasonably expended though the end of 2015 for the common benefit of class members and others affected by

---

[4] *See* PRE-TRIAL ORDER NO. 59, ¶¶15-17 and Exhibit A.

[5] Paragraph 29 of Pre-Trial Order No. 59 was amended to allow firms submitting less than 250 hours to waive the Fee Interview, and rely solely upon their time submissions and Fee Affidavits. *See* SECOND AMENDMENT TO PTO 59 [Rec. Doc. 16020] (March 22, 2016).

the *Deepwater Horizon* Incident, in accordance with the Court's directives;  and, based on the work of the Fee Committee though that point in time,[6] the Aggregate Fee Petition was submitted.

Following the issuance of the Court's Order and Reasons approving the Aggregate Common Benefit Fee and Costs Award,[7] the Fee Committee conducted further discussions and deliberations regarding the relative benefits and contributions made by each potential Common Benefit Fee Applicant, and an appropriate allocation of the common benefit fees which might ultimately be approved and/or awarded.

In accordance with the Fourth Amendment to Pre-Trial Order No. 59,[8] the Fee and Cost Committee considered any and all additional time submitted by Common Benefit Attorneys in 2016.

With this background, and in accordance with the Court's directives, the Fee and Cost Committee provided, by unanimous vote, an Initial Recommendation to the one hundred and twenty-two (122) potential Common Benefit Cost and/or Fee Applicants on February 15, 2017. Common Benefit Fee Applicants were invited to raise any questions, concerns, or preliminary objections with Co-Liaison Counsel, in advance of the formal objection deadline, and approximately a dozen in-person meetings or conference calls were conducted.

On or before the March 17, 2017 deadline, a total of nineteen (19) written responses to the FCC's Initial Recommendation were submitted.  Of these, fifteen (15) were styled as formal

---

[6] *See generally* FEE PETITION [Rec. Doc. 21098] pp.76-78; HERMAN-ROY DECLARATION (July 14, 2016) [Rec. Doc. 21098-1] ¶¶ 117-124;  GARRETT AFFIDAVIT (July 10, 2016) [Rec. Doc. 21098-2] ¶¶ 8-17.

[7] ORDER AND REASONS (Oct. 25, 2016) [Rec. Doc. 21849].  (The Court subsequently approved an aggregate class counsel / common benefit fee award in connection with the Halliburton and Transocean Settlements, *see* ORDER AND REASONS (Feb. 15, 2017) [Rec. Doc. 22252] at pp.46-47.)

[8] Rec. Doc. 21879.

Objections,[9] while the another four (4) Common Benefit Fee Applicants made it clear that they were not "objecting" to the Initial Recommendation, but were seeking reconsideration of their proposed allocations.[10]

### GENERAL OBSERVATIONS
### IN RESPONSE TO OBJECTIONS AND REQUESTS FOR RECONSIDERATION

Quite naturally, the objectors and others seeking reconsideration, like most people, tend to view the litigation through the prism of their own individual experience. Those focused on the trial tend to think that trial efforts should be more heavily weighted, while those on the settlement team view the negotiations as more important to the overall success of the case. Those on the science teams tend to think that environmental and/or economic development should be more heavily credited, while those focused on the liability issues view those efforts as more central to the litigation. People who advanced certain projects or positions tend to characterize certain ascribed results in terms of "but for" causation, where, stepping back, it is generally the case that many others were also advancing the same or similar positions, or providing the same or similar information, or contributing to the same or similar projects; and that the benefits ultimately obtained by the Settlement Classes and other Plaintiffs in MDL 2179 generally culminated from a confluence of multiple different efforts on the part of numerous Common Benefit Attorneys,

---

[9] The firms formally objecting to the FCC's Initial Recommendation were Baron & Budd, Beasley Allen, Bilek Law Firm, Breit Drescher Imprevento, Chhabra & Gibbs, the Cochran Firm, Lange Clark, Cossich Sumich Parsiola & Taylor, Gainsburgh Benjamin, Martzell Bickford & Centola, Penton Law Firm, Waltzer Wiygul & Garside, and Tom Young. While it's not completely clear whether Mr. Friedlander intended to formally object to the Initial Recommendation or simply seek reconsideration of his proposed allocation, we have grouped his submission with the formal Objections. Motley Rice refers to its submission as a "request for reconsideration or an objection," which we have treated as a formal Objection.

[10] The firms not objecting to the FCC's Initial Recommendation, but nevertheless seeking reconsideration, are Fayard & Honeycutt, Lewis Kullman Sterbcow & Abramson, and Lieff Cabraser. The Williams Law Group seeks provisional reconsideration in the event that the FCC and/or the Special Master materially increases the recommended allocations of other comparable firms.

working separately and together, in synergy.  The Fee and Cost Committee members attempted to do their best to balance these competing viewpoints, with an overall perspective.

Several of the objectors and others seeking reconsideration have also seized upon the effective "hourly rates" that can be reverse-engineered from the Initial Recommendation.  Perhaps predictably, those whose recommended award translates to less than a 1:1 ratio of percentage-of-total-hours to percentage-of-total-fees argue that the FCC erred in applying any type of qualitative analysis to the nature or number of hours submitted, while those whose recommended award translates to a 1:1 or greater ratio argue that the FCC placed too much emphasis upon the recorded hours, and should have adopted a more subjective approach.  A couple points relative to these issues bear note.

*First,* the FCC did not employ a "lodestar" or "hourly rate" approach.  As noted in the Aggregate Fee Petition, the Fee Committee did not solicit from Common Benefit Attorneys what they might claim to be their own individual or average blended hourly "rates".[11]  Nor did the FCC interpret its task to simply apply a single blended hourly rate to all hours that had been submitted in the case.  (Indeed, if a straight mathematical calculation had been intended, what would be the purpose of going through the entire PTO 59 process, or even appointing a Fee Committee?)  Rather, the Court asked the Fee Committee to rely, in part, upon "the FCC's subjective

---

[11] In addition to the caselaw which supports the use of a blended rate for streamlined cross-check purposes in these types of cases, (*see generally* FEE PETITION [Rec. Doc. 21098] at pp.106-108), the FCC, on behalf of all Common Benefit Attorneys, noted that "many of the petitioning Common Benefit Attorneys typically work on a contingency fee basis, and have no established hourly rates. The hourly business that some of the Common Benefit Firms do have is generally limited, or sporadic; the applicable rates vary widely by the type of matter, and by geography; and would typically arise in family law, or real estate, or small business commercial matters, or other one-off disputes, which are not very comparable to this type of high-stakes complex litigation. While some of the Common Benefit Firms have had specific rates submitted and approved in previous class actions, the experience of some of those attorneys has been fairly isolated, and/or occurred in the relatively distant past. And even the rates of more established class action firms tend to vary somewhat according to the type of litigation, the firm's role in the litigation, and, where blended, the rates of the other firms who were participating in the litigation alongside them." FEE PETITION, at p.108.  (This general approach appears to have been accepted by the Court in its FEE APPROVAL ORDER [Rec. Doc. 21849] at p.40.)

understanding of the relevant contributions of each Fee Applicant."[12]  The over-arching guideline

for the FCC to consider was the relative common benefit contribution of each Fee Applicant to the

outcome of the litigation, "including whether the Fee Applicant:

a.  Made no known material common benefit contribution to the litigation;

b.  Made isolated material common benefit contributions, but mostly "monitored" the material common benefit efforts of other firms and perhaps performed some document review;

c.  Made periodic material common benefit contributions and/or mostly performed document review;

d.  Made consistent material common benefit contributions from inception of the litigation through 2013;

e.  Made consistent material common benefit contributions from inception of the litigation through the current date;

f.  Was a leader taking primary responsibility to accomplish the goals of the PSC and was heavily relied upon by Co-Liaison Counsel and provided consistent material common benefit contributions, full-time at times, from inception of the litigation through 2013;

g.  Was a leader taking primary responsibility to accomplish the goals of the PSC and was heavily relied upon by Co-Liaison Counsel and provided consistent material common benefit contributions, full-time at times, from inception of the litigation through the current date;

h.  Was a senior leader taking primary responsibility to accomplish the goals of the PSC, organized others and/or led a team of common benefit attorneys and was heavily relied upon by Co-Liaison Counsel and provided consistent material common benefit contributions almost full-time for a substantial time during the litigation; or

i.  Was a senior leader providing maximum senior leadership effort in terms of intensity, consistency, and duration relative to all other common benefit counsel, taking primary responsibility for entire litigation to accomplish the goals of the PSC, engaging in overall strategic planning since the inception of the litigation, organizing others and/or leading one or more teams of common benefit attorneys, providing consistent material common benefit contributions, virtually full-time for

---

[12] PRE-TRIAL ORDER NO. 59, ¶25.

much of the litigation, and will likely continue to assume a key leadership role for several more years."[13]

In applying the "*Johnson* factors"[14] along with these criteria, the FCC considered the time submitted;  the experience, skill and reputation of the firm's attorneys;  and customary rates;[15]  but did not, at any time, assign particular "rates", or "multipliers", to a firm's accepted hours, and then use that to derive the ultimate fee recommendation.

*Second,* the FCC did not "delete" nor "disallow" time that was submitted by a Common Benefit Fee Applicant in accordance with Pre-Trial Order No. 9.  The Fee Committee did, for aggregate cross-check purposes, determine that, of the 585,947.65 collective hours that had been initially accepted by Mr. Garrett, the Court could conservatively rely that "a minimum of 518,250 hours were reasonably expended thru the end of 2015."[16]  But this was an aggregate, not firm-specific, decision.  To be sure, the FCC, during the allocation process, did consider the time submitted by each firm in light of the qualitative factors high-lighted by the Court in Paragraphs 10 and 28 of Pre-Trial Order No. 59.[17]  But no specific hours were "deleted" or "disallowed".

Some objectors and those seeking reconsideration have also complained that the thumbnail descriptions of their efforts contained within the Initial Recommendation failed to capture the full extent of the firm's purported efforts in the litigation.   While the FCC has gone back to ensure that all efforts referenced in the written responses to the Initial Recommendation have been fully

---

[13] PRE-TRIAL ORDER NO. 59, ¶26.

[14] *See* PRE-TRIAL ORDER NO. 59, ¶27 (*citing* Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

[15] In a few cases, Common Benefit Fee Applicants submitted their own firm's claimed hourly rates to the Fee Committee in connection with their Fee Affidavits and/or Memos.  In those cases, the FCC took such rates into consideration, (along with all of the other relevant factors).  Where suggested rates were not formally submitted, the FCC was nevertheless generally aware of, and did take into consideration, (along with the other relevant factors), the customary rates that would have likely been charged by and/or approved for different firms, practicing in different parts of the country.

[16] *See* FEE PETITION, p.77.

[17] As well as the *Johnson* factors, (noted *supra*), per Paragraph 27 of PTO 59.

considered, the descriptions in the Initial Recommendation and in this Final Recommendation were and are intended to be only thumbnail summaries.  The FCC has reviewed and considered the full Fee Affidavits, Memos, time and expense submissions, Fee Interviews (if any), Objections (if any), and requests for reconsideration (if any) – as well as the Fee Committee members' own personal knowledge and recollections regarding the efforts and contributions of the applicant attorneys and firms – in making each recommended fee and/or cost allocation.

Finally, it has been suggested by some that the FCC, the Special Master and/or the Court should make different allocations for the BP Class Settlements derived common benefit fees, the Transocean derived common benefit fees, the Halliburton derived common benefit fees, and the common benefit fees derived from BP's settlements with the States.  To be sure, the Fee Committee did consider the relative contributions of each firm to the Halliburton, Transocean, and/or State Settlements, along with the BP Class Settlements, as part of the overall analysis.  Nevertheless, for the reasons stated in the aggregate Fee Petition submitted by the Fee and Cost Committee on behalf of all Common Benefit Attorneys,[18] which have since been implicitly acknowledged[19] and expressly adopted[20] by the Court, the FCC continues to believe that a single common benefit fee recommendation should take into consideration the entire body of common benefit efforts by each Common Benefit Attorney firm, and should not attempt to distinguish between time or expenses that might arguably relate more or less to the results ultimately obtained in the BP Settlements, the Halliburton Settlement, the Transocean Settlement, or the economic loss claims of the States.

---

[18] *See* FEE PETITION [Rec. Doc. 21098] (July 21, 2016) at pp.102-103, *and,* HERMAN-ROY DECLARATION (July 14, 2016) [Rec. Doc. 21098-1] at ¶124.  (*See also* FINAL HALLIBURTON/TRANSOCEAN SETTLEMENT APPROVAL BRIEF [Rec. Doc. 21423] at pp.15-16)

[19] *See, e.g.,* ORDER AND REASONS (Oct. 25, 2016) [Rec. Doc. 21849] at pp. 36, 40 (considering all 527,000 common benefit hours advanced in support of the aggregate BP Fee Petition); *and* ORDER AND REASONS (Feb. 15, 2017) [Rec. Doc. 22252] at p.47 (considering the total hours and total benefits together as further basis for approval of the Halliburton/Transocean Settlements class counsel/common benefit fees).

[20] *See* FOURTH AMENDMENT TO PRETRIAL ORDER NO. 59 [Rec. Doc. 21879], ¶¶ 2, 3.

With those general observations:

**RECOMMENDED COST REIMBURSEMENTS
AND COMMON BENEFIT FEE ALLOCATION**

Based on the entire record in these proceedings, including the time and expense submissions to Mr. Garrett in accordance with Pre-Trial Order No. 9, any self-auditing or revisions to such time and expense submissions in accordance with Pre-Trial Order No. 59, the Fee Affidavits, the supporting Memoranda, the Fee Interviews, the formal Objections to the FCC Initial Recommendation, and the requests for reconsideration, (as well as the FCC members' own personal knowledge and recollections regarding the comparative efforts of the potential Common Benefit Fee Applicant firms), and in light of the considerations set forth in Paragraphs 24-28 of Pre-Trial Order No. 59, the Fee and Cost Committee, upon unanimous agreement,[21] and subject to a proposed reserve of approximately $16.5 million,[22] makes the following final recommended allocation to each potential Common Benefit Fee Applicant Firm, and recommended Held Cost reimbursement and/or reimbursement for Shared Expense assessments[23]:

**Amedee, Roy F., Jr. - Law Offices of** – Worked on the medical monitoring pleading and claim development from the formation of the MDL into 2011.  The firm submitted a total of 89.75 Hours (0.0162% of Total Hours submitted), and contributed $13,000.00 toward Shared

---

[21] While all of these recommendations were and are unanimous, one of the Fee and Cost Committee members, Mr. Fayard, recused himself from consideration of the final recommended common benefit fee allocations to his own firm and to Motley Rice.

[22] The proposed recommended fee allocations total approximately $704.5 million, leaving a proposed reserve of approximately $16.5 million, in order to account for ongoing Liaison Counsel, Class Counsel, PSC, and/or other costs and common benefit responsibilities, (including approximately $5-7 million in accrued costs and expenses to date).  It is anticipated that, net of tax and expenses, any and all QSF earnings will accrue as part of said Reserve, and, after the satisfaction of additional Held Costs, Shared Expenses and/or fees for future common benefit services (if any), the remainder of the reserve would be distributed to Common Benefit Attorneys in the same relative proportions to this recommended fee allocation, on a *pro rata* basis.

[23] As noted above, most assessments for Shared Expenses have been reimbursed, with approval of the Court, on an interim and interlocutory basis.  It is anticipated and requested that, in addition to approving the reimbursement of the outstanding assessments to the PSC member firms, (specifically $100,000 to each firm, as set forth further herein), the Court also fully and finally approve the payment of all previously incurred Shared Expenses.

Expenses.[24]  No Held Costs were submitted.  Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$64,578.82</u>[25] (0.0092%).

**<u>Anderson Kill & Olick, PC</u>** – Focused on the research, analysis and review of potentially available insurance policies from 2011 through the time that the BP Settlements were announced in early 2012.  The firm also did some drafting of an *amicus* brief that was contemplated for potential filing in the BP-Transocean insurance and indemnity appeal in 2013.  The firm submitted a total of 2,336.75 Hours (including 0.18% of total Attorney Hours submitted).  The firm did not make any Shared Cost contributions.  The firm submitted $5,312.00 in Held Costs.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$1,291,576.47</u>[26] (0.1834%), and reimbursement of <u>$4,789</u> in Held Costs.

**<u>Andry Law Group, LLC</u>** – Served as Co-Coordinator of the Long-Term Health Effects Work Group, and provided assistance in the Depository / "War Room" in connection with the discovery, document review, and trial prep effort.  Mr. Andry was broadly involved in the pre-MDL effort, and worked on the medical monitoring case and associated environmental issues from the formation of the MDL through the time that the BP Settlements were announced in early 2012.  An associate's work in the Depository extended into early 2013.  The firm submitted a total of 4,091.6 Hours (0.7366% of Total Hours submitted), and contributed $165,000.00 towards Shared Expenses.  The firm submitted $10,411.44 in Held Costs.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$2,583,152.95</u>[27] (0.3669%), and reimbursement of <u>$9,500</u> in Held Costs.[28]

---

[24] As noted above, all Shared Expense contributions (or "assessments") from non-PSC Common Benefit Firms, like Mr. Amedee's firm, were reimbursed out of the Common Benefit Cost and Fee Fund after the BP Economic and Medical Benefits Settlements achieved final approval, in early 2013.

[25] Specifically $50,000 from the BP Settlement Cost and Fee Fund, $3,210.18 from the State Settlement Cost and Fee Fund, and $11,368.64 from the Halliburton/Transocean Settlement Cost and Fee Fund. For purposes of this footnote and all similar references herein to a proposed allocation from the Halliburton/Transocean Settlement Cost and Fee Fund, said allocation is comprised of 79.992% from the Halliburton Common Benefit Fee and Cost Fund QSF established at UBS pursuant to Rec. Doc. 13649, and 20.008% from the Transocean Settlement Common Benefit Fee and Cost Fund QSF established at UBS pursuant to Rec. Doc. 14906.

[26] Specifically $1,000,000 from the BP Settlement Cost and Fee Fund, $64,203.69 from the State Settlement Cost and Fee Fund, and $227,372.78 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[27] Specifically $2,000,000.00 from the BP Settlement Cost and Fee Fund, $128,407.38 from the State Settlement Cost and Fee Fund, and $454,745.57 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[28] The Fee Committee has not taken into consideration any of the issues raised in the FREEH REPORT [Rec. Doc. 11287].  Whether and/or how such findings might or might not affect the allocation or award of common benefit fees to the Andry Law Firm is left to the sound judgment and discretion of the Court.

**Aylstock Witkin Kreiss & Overholtz, PLLC** – Made an initial Shared Assessment contribution of $50,000, but submitted no common benefit time or Fee Affidavit. The Fee Committee therefore recommends no common benefit fee allocation. The firm submitted no Held Costs.

**Bagwell, David A.** – Performed legal research and briefing on maritime law and related issues from May 2010 through essentially mid-2011, when the B1 Motions to Dismiss were argued and submitted. Mr. Bagwell submitted a total of 691 Hours (0.1244% of Total Hours submitted), and $4,856.15 in Held Costs. Mr. Bagwell contributed $43,000.00 towards Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $645,788.24[29] (0.0917%), and reimbursement of $4,856.15 in Held Costs.

**Jones Ward PLC (fomerly Bahe Cook Cantley & Jones PLC)** – Contributed to the work groups that were designed to monitor and attempt to address facility-wide issues with the Gulf Coast Claims Facility (GCCF), from shortly after the MDL formation through early 2012 when the CGGF was transitioned into the Class Settlement Program. The firm submitted a total of 666.21 Hours (0.1199% of Total Hours submitted), and contributed $13,000.00 towards Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $129,157.65[30] (0.0183%). The firm submitted no Held Costs.

**Barker Boudreaux Lamy & Foley** – Although the firm contributed and initial $10,000 in assessments towards Shared Expenses, it submitted no common benefit time in accordance with Pre-Trial Order No. 9, nor any Fee Affidavit in accordance with Pre-Trial Order No. 59. The Fee Committee therefore does not recommend any common benefit fee allocation. The firm submitted no Held Costs.

**Baron & Budd, PC** – Was appointed to the Executive Committee and contributed to the development of the scientific and environmental issues, through the time that the BP Settlements were announced in early 2012. The firm's members had also assisted with some of the pre-MDL organization and briefing, and further participated in various Executive Committee and PSC strategy discussions and projects, on a periodic basis, throughout the litigation. The firm provided Depository support, Phase Two discovery, and assistance to the Insurance Work Group. The firm submitted a total of 13,049.15 Hours (2.3492% of Total Hours submitted), and $432,466.16 in Held Costs. The firm had contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013.[31] The FCC initially recommended an

---

[29] Specifically $500,000 from the BP Settlement Cost and Fee Fund, $32,101.85 from the State Settlement Cost and Fee Fund, and $113,686.39 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[30] Specifically $100,000 from the BP Settlement Cost and Fee Fund, $6,420.37 from the State Settlement Cost and Fee Fund, and $22,737.28 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[31] *See* Footnote 3, *supra*.

allocation of $15,498,917.71 (2.2011%).  The firm, despite having been allocated what it describes as an "Effective Hourly Rate" or "EHR" of $1,187.73, objects primarily on the basis of the firm's purported prior environmental litigation experience.  At the same time, however, the firm was not involved in the Phase One Trial, Phase Two Trial, or OPA Test Cases;  did not materially participate on the settlement team;  was not actively involved in the settlement implementation and approval effort; did not contribute materially to the legal research and briefing once the MDL was formed;  and was only dedicated to the common benefit effort thru the time that the BP Settlements were announced in early 2012, with only sporadic Phase Two Deposition and/or general PSC efforts thereafter.  Based on a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the Objection, and in light of the General Observations *supra* and the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of $15,498,917.71[32] (2.2011%), plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $412,500 in Held Costs.

**Barrios, Kingsdorf & Casteix, LLP** – Ms. Barrios served as a Co-Coordinator of the Economic and Property Damages Model Work Groups from the formation of the MDL through early 2012 when the BP Settlements were announced.  At that time, the firm assisted with the selection of settlement class representatives and preparation of their affidavits for final approval. The firm also had some participation in settlement administration and *amicus* work on the BEL "matching" and non-profit issues.  In 2015, Ms. Barrios was appointed to the Fee Committee, and has performed additional services in that regard.  The firm submitted a total of 928.10 Hours (0.1671% of Total Hours submitted), and $7,023.36 in Held Costs.  The firm also contributed $215,000.00 toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $1,291,576.47[33] (0.1834%), and reimbursement of $6,263.71 in Held Costs.

**Beasley, Allen, Crow, Methvin, Portis & Miles, PC** – Was appointed to the PSC and made substantial contributions with respect to development of the scientific and environmental issues, the BP Economic Class Settlement negotiations, and settlement implementation, both with respect to the BEL "matching" issues and with respect to the general Class Counsel assistance of plaintiffs' attorneys, CPAs, and unrepresented claimants with questions regarding Settlement Program claims and appeals.  The firm, which separately and independently represented the State of Alabama, in different capacities, and on various bases, also assisted with the general coordination of private and Government claims.  The firm submitted a total of 25,202.05 Hours

---

[32] Specifically $12,000,000 from the BP Settlement Cost and Fee Fund, $770,444.29 from the State Settlement Cost and Fee Fund, and $2,728,473.42 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[33] Specifically $1,000,000 from the BP Settlement Cost and Fee Fund, $64,203.69 from the State Settlement Cost and Fee Fund, and $227,372.78 from the Halliburton/Transocean Settlement Cost and Fee Fund.

(4.537% of Total Hours submitted),[34] and $552,325.38 in Held Costs.   The firm had contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013.   The FCC initially recommended an allocation of $24,539,953.04 (3.4851%). The firm submitted an objection, which primarily focuses on the firm's contributions to the BP Class Settlement Business Economic Loss (BEL) Frameworks, and the benefits conferred by those Frameworks to the class.   The Fee Committee, however, took these contributions and benefits into consideration in making its Initial Recommendation.   At the same time, moreover, it can be noted that the firm did not participate in the Phase One or Phase Two Trials, nor the OPA Test Cases, nor the Phase One or Phase Two Deposition Teams, nor the legal research and briefing, nor the Fifth Circuit Appeals, nor the Transocean and Halliburton Settlements, nor the development nor implementation of the Medical Settlement, nor case administration;   and, while contributing to the BP Economic Settlement implementation and approval process, had completed its intensive full-time common benefit efforts in New Orleans when the BP Class Settlements were announced in April of 2012.   Based on a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the Objection, and in light of the General Objections *supra* and the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of <u>$24,539,953.04</u>[35] (3.4851%), plus reimbursement of the firm's outstanding <u>$100,000</u> in Shared Expense assessments, and reimbursement of <u>$520,000</u> in Held Costs.


**Becker and Hebert** – Submitted 1,728.35 Hours (0.3111% of Total Hours submitted) and $5,530.44 in Held Costs associated with the discovery effort.  The firm also contributed $43,000.00 toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-

---

[34] A number of concerns were raised, initially by Mr. Garrett, and later by the Fee Committee, regarding the Beasley Allen time submissions.  In particular, it was noted that Beasley Allen was submitting time expended to advance the State of Alabama's individual damage claims.  Beasley Allen took the position that, because such efforts arguably fell under the written Joint-Prosecution Agreement (JPA) that was originally entered between Co-Liaison Counsel (on behalf of the PSC and Common Benefit Attorneys) and the State of Alabama, such time and efforts could be submitted and treated as "Common Benefit".  Mr. Garrett disagreed, however, and instructed the firm to delete Alabama-specific time.  From the Fee Committee's perspective: **(i)** time and efforts primarily directed toward the proof of Alabama's specific damages do not appear to be "common benefit" as defined in Pre-Trial Orders Nos. 9 and 59; **(ii)** Beasley Allen was separately compensated for this work as part of the BP Settlements with the States; and **(iii)** the JPA and Hold-Back Agreements with Alabama were effectively modified by the Court – with consent of the Parties – as part of that same series of State Settlements. *See generally* Rec. Doc. 15437 (Certificates of Non-Objection to Proposed Order) (Oct. 5, 2015).  Complicating matters further, it appears that when Mr. Garrett instructed the firm to remove Alabama-specific time, some of the same hours appear to have been retroactively re-characterized and re-submitted as "common benefit" time. The Fee Committee has done its best to credit Beasley Allen fully for its common benefit efforts, including its assistance in developing and coordinating State, Local Government, NRD assessment and private damages claims generally.  At the same time, however, the FCC does not believe it is appropriate to compensate the firm, out of the common benefit awards, for work undertaken for the establishment of Alabama's individual damages claims.

[35] Specifically $19,000,000 from the BP Settlement Cost and Fee Fund, $1,219,870.13 from the State Settlement Cost and Fee Fund, and $4,320,082.91 from the Halliburton/Transocean Settlement Cost and Fee Fund.

28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$452,051.76</u>[36] (0.0642%), and reimbursement of <u>$4,141.69</u> in Held Costs.

**Beevers & Beevers, LLP** – Submitted 93 Hours (0.0167% of Total Hours submitted) and $552.45 in Held Costs in connection with water sampling and other development of the ecological case, as well as information that was used for the development of the Seafood Compensation Program. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$96,868.24</u>[37] (0.0138%), and reimbursement of <u>$552.45</u> in Held Costs.

**Berniard Law Firm** – Made an initial Shared Assessment contribution of $13,000, but submitted no common benefit time or Fee Affidavit, advising the Fee Committee that the firm was making no claim for common benefit fees. The firm submitted no Held Costs.

**Bilek Law Firm, LLP** – Engaged in various pre-MDL efforts associated with research, briefing, VoO contracts, and the securing of environmental and other samples. Contributed to the jurisdictional and other related discovery and briefing associated with BP plc and the MOEX entities from the establishment of the MDL through mid-2011. Submitted a total of 1,052 Hours (0.1894% of Total Hours submitted) and $10,433.92 in Held Costs. The firm also contributed $50,000.00 in assessments toward Shared Expenses. The FCC initially recommended an allocation of $1,033,261.18 (0.1467%). The firm objects to what it describes as a "negative discount of .0004227," noting the early efforts to reform the VoO MVCAs and to raise health concerns with the Court. While the FCC credited the Bilek Firm with these efforts, it could be noted that the Bilek Firm was not involved in the Phase One or Two Trial, nor the OPA Test Cases, nor the VoO Test Case program, nor the settlement team, nor the settlement implementation and approval effort, nor any of the Fifth Circuit Appeals, nor the Science Group, nor the Medical Settlements, nor the Transocean, Halliburton or State Settlements, nor case administration, nor did they work in the Depository, and had essentially completed all of their common benefit efforts by the middle of 2011.[38] Based on a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the Objection, and in light of the General Observations *supra* and the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee

---

[36] Specifically $350,000 from the BP Settlement Cost and Fee Fund, $22,471.29 from the State Settlement Cost and Fee Fund, and $79,580.47 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[37] Specifically $75,000 from the BP Settlement Cost and Fee Fund, $4,815.28 from the State Settlement Cost and Fee Fund, and $17,052.96 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[38] It is also the FCC's recollection that HHK partner Jim Klick had separately secured a letter agreement with BP Counsel on the VoO contracts at the same time, if not actually prior to, the Consent Judgment obtained by the Bilek Firm and others (including Sher Garner, Jones Swanson, Stuart Smith, and Mr. Fayard); and that the associated efforts relating to some of the potential health risks to clean-up workers were being pursued by other groups of attorneys (including HHK, DWRE, W&L, and WWG, as well as the other members of the Bilek / Garner / Jones / Smith / Exnicios group), were only marginally successful in changing the Clean-Up and Responder Defendants' practices, and, with respect to samples and documents, would be developed in the ordinary course of discovery anyway.

continues to recommend an allocation of $\underline{\$1,033,261.18}$[39] (0.1467%), and reimbursement of $\underline{\$10,000}$ in Held Costs.

**Bilzin, Sumberg, Baena, Price & Axelrod** – Contributed to the work groups that were designed to monitor and attempt to address facility-wide issues with the GCCF, from shortly after the MDL formation through early 2012 when the BP Class Settlements were announced. The firm submitted a total of 275.75 Hours (0.0496% of Total Hours submitted), and $3,452.32 in Held Costs. The firm also contributed $33,000.00 towards Shared Expenses. The Fee Committee initially recommended a common benefit fee allocation of $51,663.06. Upon reconsideration, and based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $\underline{\$124,000}$ and reimbursement of $\underline{\$3,452.32}$ in Held Costs.

**Breazeale, Sachse, & Wilson, LLP** – Performed some work on environmental and scientific issues from March 2011 through September 2011. Submitted a total of 178.2 Hours (0.0321% of Total Hours submitted), and $548.12 in Held Costs. The firm also contributed $23,000.00 towards Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $\underline{\$45,205.18}$[40] (0.0064%), and reimbursement of $\underline{\$548.12}$ in Held Costs.

**Breit, Drescher, Imprevento & Walker, PC** – Was appointed to the PSC, and committed substantially to the litigation, essentially re-locating to New Orleans from the formation of the MDL through the Phase One Trial in April of 2013.[41] The firm assumed a large responsibility for the management and oversight of the Depository in 2010 - 2013, as well as significant participation in the legal research and briefing, and participation on the Phase One Trial Team. The firm submitted 19,173.26 Hours (3.4516% of Total Hours submitted), and $291,405.74 in Held Costs. The firm had contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013. The firm's initial fee allocation recommendation was $25,831,529.52 (3.6685%). An objection was filed, pointing out that the "effective hourly rate" derived from the initial recommended allocations was only 14th among all Common Benefit Firms, and noting both the benefits of coordination with the State of Alabama and the level of sacrifice endured by the firm. The FCC acknowledges and credited the firm with such hard work and sacrifice in its evaluation, but notes, at the same time, that the firm was not materially involved in the settlement effort, the settlement implementation and approval effort, the Science Group, the

---

[39] Specifically $800,000 from the BP Settlement Cost and Fee Fund, $51,362.95 from the State Settlement Cost and Fee Fund, and $181,898.23 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[40] Specifically $35,000 from the BP Settlement Cost and Fee Fund, $2,247.13 from the State Settlement Cost and Fee Fund, and $7,958.05 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[41] Like most members of the Phase One Trial Team, Mr. Breit was able to return home and take a break from most common benefit work from the time that the Agreement-in-Principle was signed and the Phase One Trial was continued in early March 2012 thru November or December of 2012 when he and the other Trial Team Members started to re-focus on the rescheduled February 2013 Phase One Trial.

development of the medical case, the Phase Two Trial effort, nor the OPA Test Cases. Based on a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the Objection, and in light of the General Observations *supra* and the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of <u>$25,831,529.52</u>[42] (3.6685%), plus reimbursement of the firm's outstanding <u>$100,000</u> in Shared Expense assessments, and reimbursement of <u>$285,000</u> in Held Costs.

**Brent Coon & Associates** – Provided, in the early stages of the MDL, background and insight regarding BP and its corporate culture which Mr. Coon had gained from the previous Texas City Explosion litigation, and was appointed to some of the initial discovery work groups. The firm submitted a total of 1,539.95 Hours (0.2772% of Total Hours submitted), and $4,333.97 in Held Costs. The firm also contributed $65,000.00 in assessments towards Shared Expenses. Based on a complete review of the time and expense records, and the Fee Interview,[43] and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$361,641.41</u>[44] (0.0514%), and reimbursement of <u>$3,464.40</u> in Held Costs.[45]

**Bruno and Bruno** – Assisted with the overall structure and management of the Master Complaints; was part of the Phase One Deposition Team; and provided substantial assistance in the Depository. The firm submitted 6,535.40 Hours (1.1765% of Total Hours submitted), and $28,038.16 in Held Costs. The firm also contributed $215,000.00 in assessments towards Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$4,520,517.67</u>[46] (0.642%), and reimbursement of <u>$26,904.27</u> in Held Costs.

**Center for Biological Diversity** – Submitted 20.75 Hours (0.0037% of Total Hours submitted), for work on the "D1" Bundle pleadings and briefing, from October 2010 thru May of 2011. The firm did not contribute to Shared Expenses. Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs

---

[42] Specifically $20,000,000 from the BP Settlement Cost and Fee Fund, $1,284,073.82 from the State Settlement Cost and Fee Fund, and $4,547,445.70 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[43] The Fee Affidavit submitted by Brent Coon & Associates was not timely under Pre-Trial Order No. 59. The Fee Committee has not taken this into consideration for the purposes of this recommendation. Whether and/or how such failure might affect the allocation or award of common benefit fees to Brent Coon & Associates is left to the sound judgment and discretion of the Court.

[44] Specifically $280,000 from the BP Settlement Cost and Fee Fund, $17,977.03 from the State Settlement Cost and Fee Fund, and $63,664.38 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[45] We note that Brent Coon & Associates submitted an objection to the BP Economic & Property Damages Class Settlement, and filed an appeal to the final approval of same. However, the Fee Committee has not factored this into its recommendation. Whether and/or such objection and appeal might or might not affect the allocation or award of common benefit fees to Brent Coon & Associates is left to the sound judgment and discretion of the Court.

[46] Specifically $3,500,000 from the BP Settlement Cost and Fee Fund, $224,712.92 from the State Settlement Cost and Fee Fund, and $795,804.75 from the Halliburton/Transocean Settlement Cost and Fee Fund.

10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $19,373.65[47] (0.0028%). No Held Costs were submitted.

**Chhabra and Gibbs, PA** – Contributed to the Economic & Property Damages Modeling Work Group, through the time that the BP Settlements were announced in early 2012. Submitted 1,281 Hours (0.2306% of Total Hours submitted), and $2,959.40 in Held Costs. The firm also contributed $43,000.00 in assessments toward Shared Expenses. The FCC initially recommended an allocation of $387,472.95 (0.055%). The firm objected to what it perceived as a "cutting" of the firm's hours, seeking a fee allocation of 0.2306% of the aggregate fees. Based on the General Observations *supra,* and a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the Objection, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of $387,472.95[48] (0.055%), and reimbursement of $2,959.40 in Held Costs.

**Clark, Lange - Law Office of** – Submitted 143.45 Hours (0.0294% of Total Hours submitted), and $4,166.44 in Held Costs, in conjunction with the VoO Test Cases, from approximately June 2011 until the BP Settlements were announced (and the VoO contractual claims were effectively settled) in February of 2012.[49] The firm did not contribute any assessments toward Shared Expenses. The FCC initially recommended an allocation of $38,746.29 (0.0055%). Mr. Clark objected. Based on a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the Objection, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $75,000, and reimbursement of $4,000 in Held Costs.

**Cochran Firm, PC** – Submitted $118,962.75 in Held Costs that were rejected by Mr. Garrett. The firm did not submit any time in accordance with Pre-Trial Order No. 9, nor contribute any assessments toward Shared Expenses. The firm did not submit a Fee Affidavit in accordance with Pre-Trial Order No. 59, and the Fee Committee assumed that no common benefit cost or fee allocation was being pursued. After the FCC therefore initially recommended no cost or fee allocation, the firm objected, requesting the $118,962.75 in costs that had been previously submitted. The costs at issue relate to experts who were initially retained to conduct water sampling prior to the formation of the MDL. After the MDL was created, the firm apparently attempted to submit these expenses as "Held Costs" which were rejected by Mr. Garrett, as expert fees and expenses under PTO 9 are generally treated as "Shared" expenses. The PSC later invited that these types of costs be submitted to the Science Group, which ultimately deferred consideration to the Fee Committee. The Fee Committee does not know whether the Court might

---

[47] Specifically $15,000 from the BP Settlement Cost and Fee Fund, $963.06 from the State Settlement Cost and Fee Fund, and $3,410.59 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[48] Specifically $300,000 from the BP Settlement Cost and Fee Fund, $19,261.11 from the State Settlement Cost and Fee Fund, and $68,211.84 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[49] Mr. Clark also submitted an additional 20 Hours and $577.42 in travel costs associated with his Common Benefit Fee submission in 2016, which the Fee Committee did not consider.

accept or consider common benefit expenses in the absence of an affidavit under Pre-Trial Order No. 59.  However, the Fee Committee would recommend reimbursement of <u>$118,962.75</u> in costs.

**Colson Hicks Eidson** – Appointed to PSC.  Assisted with development of the BOP case; researching and briefing regarding the medical monitoring causes of action; the preparation of deposition summaries and general chronologies; and initial Phase Two discovery.  The firm submitted 9,311.75[50] Hours (1.6771% of Total Hours submitted), and $114,859.35 in Held Costs. The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$7,749,458.85</u>[51] (1.1006%), plus reimbursement of the firm's outstanding <u>$100,000</u> in Shared Expense assessments, and reimbursement of <u>$107,000</u> in Held Costs.

**Cossich, Sumich, Parsiola & Taylor, LLC** – Was appointed to the PSC and contributed substantial efforts to the development of scientific and environmental issues through the time that the BP Settlements were announced in early 2012.  Members of the firm also assisted with Phase One discovery and expert prep in the Depository, until shortly before the Phase One Trial in early 2013.  With general, periodic, continuing PSC participation thereafter.  The firm submitted a total of 11,225.85 Hours (2.0255% of the Total Hours submitted), and approximately $317,875.99 in Held Costs.[52]  The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013.  The FCC initially recommended an allocation of $11,624,188.28 (1.6508%).  The firm objected, arguing that it was not fully credited for its work on the Science Committee and was "penalized" for "not being allowed to continue working" after the BP Class Settlements were announced.[53]  The Fee Committee, in fact, to the contrary, gave the firm substantial credit on the environmental work-up.  However, and at the same time, it could be noted that the firm was not involved in the Phase One or Phase Two Trial, nor the

---

[50] Initially 9,315.75 Hours were submitted, but the firm agreed that 4.00 Hours were mistakenly recorded to BP, instead of *Chinese Drywall*, and should be removed.

[51] Specifically $6,000,000 from the BP Settlement Cost and Fee Fund, $385,222.14 from the State Settlement Cost and Fee Fund, and $1,364,236.71 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[52] The firm submitted $164,875.99 in Held Costs that were accepted by Mr. Garrett, as well as an additional $153,000 in expenses relating to various experts, which, based on consultation between and among Co-Liaison Counsel and Mr. Garrett, were neither accepted nor rejected, but deferred for consideration by the Fee and Cost Committee.

[53] Among other things, the firm complains that it was supporting the Phase One Trial effort through an associate, Ms. Treadway, who was "hired away" by another Common Benefit Firm, effectively terminating Cossich Sumich Parsiola & Taylor's efforts in that regard.  Initially, it is important to note that the firm was credited by the FCC for the Depository and Phase One trial prep work that was performed by Ms. Treadway while employed by CSP&T, (as noted in the Initial Recommendation and above).  Nevertheless, and any event, to the best of Co-Liaison Counsel's recollection, Ms. Treadaway had actually been seeking other employment while employed by CSP&T, and had inquired as to potential positions with Co-Liaison Counsel earlier in the litigation.  Shortly before the Phase One Trial, Ms. Treadaway came to Co-Liaison Counsel and apologized, but CSP&T did not want her to do any more common benefit work, as she was needed back at the firm to help process the firm's individual Settlement Program Claims.  At which point, Ms. Treadaway was hired to do common benefit work by Co-Liaison Counsel's firm.

OPA Test Cases, nor the taking of any depositions, nor the settlement team,[54] nor the settlement implementation and approval effort, nor any of the Fifth Circuit Appeals, nor the Medical Settlements, nor the Transocean, Halliburton or State Settlements, nor general case administration, and had essentially completed most of its common benefit efforts by the time the BP Class Settlements were announced in April of 2012. Based on a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the Objection, and in light of the General Observations *supra* and the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of $11,624,188.28[55] (1.6508%),[56] plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $230,000 in Held Costs.[57]

    **Cunningham Bounds, LLC** – Was appointed to the PSC. Mr. Cunningham served as a Co-Coordinator of the Phase One Deposition Team and Co-Lead of the Phase One Trial Team. Other members of the firm assisted in Phase One discovery, expert preparation, trial prep, and trial, as well as general support in the Depository. Members of the firm also participated in the post-settlement litigation with BP, general settlement implementation in the Program, and Class Counsel assistance to other plaintiffs' attorneys, CPAs and unrepresented claimants with their Settlement Program claims and appeals. Mr. Cunningham was also a member of the PSC whom Co-Liaison Counsel generally relied upon for leadership and overall strategy. In 2015, Mr. Cunningham was appointed to the Fee Committee, and has provided further services in that capacity. The firm submitted 21,732.84 Hours (3.9124% of the Total Hours submitted), and $651,491.84 Held Costs.[58] The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of

---

[54] The firm complains that it was not fully credited with information and insights provided to the settlement team in furtherance of the settlement negotiations, particularly as to the Seafood Fund and Program. These efforts were taken into consideration and credited by the Fee Committee. At the same time, however, it was the recollection and perception of the FCC that much of the firm's advocacy in this regard was intended to advance the interests of the firm's own clients, (in many cases vis-à-vis other classmembers), with only a partial or derivative benefit to the common and collective interests of the class and/or MDL plaintiffs as a whole.

[55] Specifically $9,000,000 from the BP Settlement Cost and Fee Fund, $577,833.22 from the State Settlement Cost and Fee Fund, and $2,046,355.06 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[56] The Fee Committee notes that Cossich Sumich Parsiola & Taylor has an agreement with The Murray Law Firm to split any common benefit fees awarded to each firm on a 50/50 basis. The Fee Committee has not taken this agreement into consideration in any way in making this proposed allocation.

[57] Most of the issues surrounding CSP&T's cost submissions, (including significant parts of the accepted $164,875.99 as well as the additionally claimed $153,000.00), arise from expert/consultant and other related expenses that were incurred initially (and presumably used to advance) the firm's own clients' cases, but were then, at some point, also provided to PSC members for potential relevance to the common benefit effort. The FCC believes that it is fair and reasonable to treat a portion, but not all, of these expert and consultant expenses as "common benefit", and, in light of the relevant history and circumstances, the records submitted, the Fee Affidavit and Memo, and the Fee Interview, a total Held Cost reimbursement of $230,000.00 is recommended.

[58] Like CSP&T, (and HHK, among other firms, discussed *infra*), Cunningham Bounds has approximately $65,921.42 in costs for experts and consultants retained for the potential benefit of both the firm's own individual clients and the common benefit effort generally. As in the case of other firms, the FCC believes it is reasonable and appropriate to treat a portion, but not all, of these expenses as "common benefit".

the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $42,622,023.70[59] (6.053%), plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $620,000 in Held Costs.

**Cutter Law, PC (f/k/a Kershaw, Cutter)** – Focused on the initial written discovery upon BP, and the MOEX and Anadarko defendants.  The firm submitted 173.6 Hours (0.0313% of Total Hours submitted), and $2,454.01 in Held Costs that were accepted, plus an additional $7,534.27 in travel expenses for which the supporting documentation was not initially submitted due to clerical oversight.[60]  The firm also contributed $33,000.00 in assessments towards Shared Expenses.  Fee Committee initially recommended an allocation of $38,747.29 (0.0055%).  Upon reconsideration, and based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $50,000, and reimbursement of $2,454.01 in Held Costs accepted by Mr. Garrett.  The Fee Committee does not believe that it has the authority to grant Mr. Cutter's Motion for Consideration of Corrections to Expenses,[61] but, should the Court decide to consider such expenses, would recommend that the additional 7,534.27 in Held Costs be reimbursed.

**Dampier, Stephen - Law Office of** – Although the firm had submitted 425.4 Hours and $3,319.92 in Held Costs, Mr. Dampier did not appear for his Fee Interview, and ultimately withdrew the firm's common benefit fee application.

**Davis Law Firm** – Did not submit time in accordance with Pre-Trial Order No. 9, nor a Fee Affidavit in accordance with Pre-Trial Order No. 59.  The Fee Committee therefore recommends no common benefit fee allocation.  No Held Costs were submitted.

**Davis, Gary A. & Associates** – Contributed to several research and briefing projects between the formation of the MDL and 2012.  The firm submitted a total of 163 Hours (0.0293% of Total Hours submitted), and $605.01 in Held Costs, that were accepted by Mr. Garrett.[62]  The firm also contributed $13,000.00 in assessments towards Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $51,663.06[63] (0.0073%), and reimbursement of $605.01 in Held Costs.

---

[59] Specifically $33,000,000 from the BP Settlement Cost and Fee Fund, $2,118,721.80 from the State Settlement Cost and Fee Fund, and $7,503,301.90 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[60] *See* Rec. Doc. 21895.

[61] *See* Rec. Doc. 21895.

[62] An additional 14.75 Hours were rejected as untimely.  Mr. Davis believes that they were timely submitted. In the overall analysis, these hours were not material to the Fee Committee's recommendation.

[63] Specifically $40,000 from the BP Settlement Cost and Fee Fund, $2,568.15 from the State Settlement Cost and Fee Fund, and $9,094.91 from the Halliburton/Transocean Settlement Cost and Fee Fund.

**deGravelles, Palmintier, Holthaus & Fruge, LLP** – Was appointed to the PSC, and made substantial contributions to the law and maritime research and briefing, RICO pleading and briefing, Phase One discovery, Phase One trial, Phase One post-trial, and OPA Test Case efforts. Were also called upon to assist with the negotiation and drafting of the Assignment of BP Claims that was incorporated into the BP Economic & Property Damages Settlement.  The firm submitted 22,294.05 Hours (4.0135% of Total Hours submitted), and $122,495.23 in Held Costs.  The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $25,831,529.52[64] (3.6685%), plus the reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $120,000 in Held Costs.[65]

**Diaz Law Firm** – Submitted 1,505.95 Hours (0.2771% of Total Hours submitted), and $25,460.33 in Held Costs, primarily associated with Depository work performed by associates, off and on, from the establishment of the MDL until the latter part of 2012.  The firm also contributed $43,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $1,000,971.77[66] (0.1422%), and reimbursement of $24,000 in Held Expenses.

**Diliberto & Kirin LLC** – Although the firm had submitted $205.65 in Held Costs, and contributed $43,000.00 in assessments toward Shared Expenses, the firm submitted no Fee Affidavit, advising the Fee Committee that no application for common benefit fees was being made.

**Dodson, Hooks & Frederick** – Submitted 4,479.35 Hours (0.8064% of Total Hours submitted), primarily associated with Depository work performed by associates, off and on, from the establishment of the MDL until the BP Settlements were announced in early 2012.  The firm also contributed $13,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified

---

[64] Specifically $20,000,000 from the BP Settlement Cost and Fee Fund, $1,284,073.82 from the State Settlement Cost and Fee Fund, and $4,547,445.70 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[65] The Fee Committee notes that deGravelles Palmintier Holthaus & Fruge has an agreement to share common benefit fees with Dodson Hooks & Frederick, Walters Papillion Thomas & Cullens, and the Koederitz Law Firm.  The Fee Committee has not taken this agreement into consideration in any way in making this proposed allocation.

[66] Specifically $775,000 from the BP Settlement Cost and Fee Fund, $49,757.86 from the State Settlement Cost and Fee Fund, and $176,213.91 from the Halliburton/Transocean Settlement Cost and Fee Fund.

in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$1,000,971.77</u>[67] (0.1422%).[68]  No Held Costs were submitted.

  **Domengeaux Wright Roy & Edwards** – Partner Jim Roy served as pre-MDL Co-Liaison Counsel for the cases consolidated in the EDLA, Co-Liaison Counsel in the MDL, Co-Lead Class Counsel for the BP Settlement Classes, Co-Lead Settlement Class Counsel for the Halliburton/Transocean Settlement Class, member of the Plaintiffs' Executive Committee, Co-Chair of the Fee Committee, and *ex officio* member of the PSC.  Mr. Roy and other members of Domengeaux Wright Roy & Edwards, together with Herman Herman & Katz, oversaw and steered the entire litigation effort, from Depository / War Room management;  to the Phase One, Phase Two, (limited Phase Three), and OPA Test Case discovery, pre-trial, and trial efforts (including an active Phase One Trial participant);  to the settlement negotiations with BP, Halliburton, and Transocean, as well as settlement approval, and settlement implementation;  to Class Counsel assistance to other plaintiffs' attorneys, CPAs, and unrepresented claimants;  to post-settlement administrative disputes, litigation, and appeals;  to substantive legal research and briefing;  to approval, payment, and reimbursement of Shared Expenses and other general planning and administration;  to coordination with Defendants, Special Masters, the Court, the States, and the United States;  to assistance provided to *pro se* litigants;  to case-management orders and procedures;  to public relations efforts;  to the monitoring of and coordination with MDL Panel, MDL 2185, Government, and other satellite investigations, lawsuits, and proceedings;  and to general communications, coordination, organization, and strategy.  The litigation required full-time devotion and pre-occupation, with substantial personal and professional sacrifice, (among other things, effectively re-locating to New Orleans for approximately three years), from May of 2010 through approximately March of 2016, when the OPA Test Cases were dismissed – and with continuing time and responsibilities to this day.  The firm submitted a total of 51,000.72 Hours (9.1814% of Total Hours submitted), and $264,609.90 in Held Costs.  The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$87,827,200.35</u>[69] (12.4729%), plus reimbursement of the firm's outstanding <u>$100,000</u> in Shared Expense assessments, and reimbursement of <u>$260,000</u> in Held Costs.

  **Dugan Firm** – Did not submit time in accordance with Pre-Trial Order No. 9, nor a Fee Affidavit in accordance with Pre-Trial Order No. 59.  The Fee Committee therefore recommends no common benefit fee allocation. No Held Costs were submitted.

---

[67] Specifically $775,000 from the BP Settlement Cost and Fee Fund, $49,757.86 from the State Settlement Cost and Fee Fund, and $176,213.91 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[68] The Fee Committee notes that Dodson Hooks & Frederick has an agreement to share common benefit fees with deGravelles Palminter Holthaus & Fruge, Walters Papillion Thomas & Cullens, and the Koederitz Law Firm. The Fee Committee has not taken this agreement into consideration in any way in making this proposed allocation.

[69] Specifically $68,000,000 from the BP Settlement Cost and Fee Fund, $4,365,850.97 from the State Settlement Cost and Fee Fund, and $15,461,349.38 from the Halliburton/Transocean Settlement Cost and Fee Fund.

**Duval, Funderburk, Sundbery, Lovell & Watkins** – Contributed to the development of environmental and ecological issues, and assisted with preparation of some of the class representatives and settlement implementation, particularly with respect to wetlands claims, from the establishment of the MDL through 2012. The firm submitted 1,797.63 Hours (0.3236% of Total Hours submitted), and $16,213.88 in Held Costs. The firm also contributed $215,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $1,291,576.47[70] (0.1834%), plus reimbursement of $15,000 in Held Costs.

**Eastland Law Offices, PLLC** – Prior to the formation of the MDL, the firm prepared RICO complaints in Florida, Louisiana and Mississippi, for which the firm was paid $50,000.00 by Levin Papantonio, Domengeaux Wright Roy & Edwards, Herman Herman & Katz, Fayard & Honeycutt, and the Andry Law Group. After the formation of the MDL, the firm worked on the RICO Master Complaint, Case Statement, and Rule 12 briefing, submitting 2,013.25 Hours (0.3624% of the Total Hours submitted), and $231.27 in Held Costs, through May of 2011, when the RICO Motions were under submission. The firm also contributed $215,000.00 in assessments to Shared Expenses. Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $355,183.53[71] (0.0504%), and reimbursement of $231.27 in Held Costs.

**Evers Law Group** – Assisted with GCCF supervision, science and expert development, and the PSC / Common Benefit PR effort, submitting 991.30 Hours (0.1785% of Total Hours submitted), and $4,208.48 in Held Costs, for work performed primarily prior to the announcement of the BP Settlements in early 2012. The firm also contributed $23,000.00 in assessments toward Shared Expenses. Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $471,425.42[72] (0.067%), and reimbursement of $4,208.48 in Held Costs.

**Fayard & Honeycutt, APC, and Calvin C. Fayard, Jr., APC** – Calvin Fayard Jr. was appointed to the PSC, and was the designated PSC member responsible for exploring settlement opportunities, working closely with Mr. Rice, Mr. Herman, and Mr. Roy on the BP Settlement negotiations, as well as the Halliburton settlement. The firm also assumed a leadership role on the Insurance Work Group, as well as the Medical Monitoring Work Group, and provided ongoing support in the Depository through the Phase Two Trial in October of 2013. The firm also assisted with settlement implementation, particularly with respect to Wetlands and Subsistence Claims,

---

[70] Specifically $1,000,000 from the BP Settlement Cost and Fee Fund, $64,203.69 from the State Settlement Cost and Fee Fund, and $227,372.78 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[71] Specifically $275,000 from the BP Settlement Cost and Fee Fund, $17,656.01 from the State Settlement Cost and Fee Fund, and $62,527.52 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[72] Specifically $365,000 from the BP Settlement Cost and Fee Fund, $23,434.35 from the State Settlement Cost and Fee Fund, and $82,991.07 from the Halliburton/Transocean Settlement Cost and Fee Fund.

and also assisted with the post-settlement litigation. In 2015, Mr. Fayard was appointed to the Fee and Cost Committee, and has performed additional services in that capacity. The firm submitted 25,881.79 Hours (4.6593% of Total Hours submitted), and $233,219.35 in Held Costs. The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013. The FCC initially recommended an allocation of $36,164,141.32 (5.1359%). Despite having voted to approve the Initial Recommendation, including the proposed allocation to Fayard & Honeycutt and/or Calvin F. Fayard, Jr., in its entirety, the firm nevertheless now complains that the recommendation is not "fair" to the firm. Mr. Fayard recused himself from further consideration of the recommended common benefit fee allocation to the firm, and the remainder of the Fee Committee, based on the General Observations *supra* and a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, the request for reconsideration, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, continues to recommend an allocation of $36,164,141.32[73] (5.1359%), plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $225,000 in Held Costs.

**Finkelstein Thompson LLP** – Submitted 25.25 Hours (0.0045% of Total Hours submitted), and $945.20 in Held Costs in February of 2012 relating to science and discovery. The firm did not make any contribution for Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $19,373.65[74] (0.0028%), and reimbursement of $945.20 in Held Costs.

**Fishman, Haygood, Phelps, Walmsley, Willis & Swanson** – Provided primarily legal research and briefing for the Master Complaints, the Rule 12 Motions, and GCCF supervision during the pre-MDL time period through the end of 2010. The firm submitted 645.35 Hours (0.1162% of Total Hours submitted), and $2,848.75 in Held Costs, and contributed $43,000.00 in assessments to Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $258,315.30[75] (0.0367%), and reimbursement of $2,848.75 in Held Costs.

**Friedlander, Gregory M. & Assoc.** – Although the firm did not submit contemporaneous time records in accordance with Pre-Trial Order No. 9, the firm submitted a Fee Affidavit and appeared for an interview before the FCC. Mr. Friedlander did not serve on a Common Benefit Work Group, and was not assigned any common benefit work by Co-Liaison Counsel. Nevertheless, Mr. Friedlander believes that he is entitled to a common benefit fee for having written a letter brief to Magistrate Wilkinson concerning the allocation of the

---

[73] Specifically $28,000,000 from the BP Settlement Cost and Fee Fund, $1,797,703.34 from the State Settlement Cost and Fee Fund, and $6,366,437.98 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[74] Specifically $15,000 from the BP Settlement Cost and Fee Fund, $963.06 from the State Settlement Cost and Fee Fund, and $3,410.59 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[75] Specifically $200,000 from the BP Settlement Cost and Fee Fund, $12,840.74 from the State Settlement Cost and Fee Fund, and $45,474.56 from the Halliburton/Transocean Settlement Cost and Fee Fund.

Halliburton/Transocean Settlement proceeds between the "New Class" and the "Old Class." The Fee Committee does not know whether the Court might accept or consider common benefit efforts in the absence of any timely submission of hours by the Common Benefit Attorneys in question, but made an initial provisional recommendation of $10,322.44 (0.0015%). Mr. Friedlander objects (or at the very least seeks reconsideration), requesting that he be awarded $25,000. Again, the Fee Committee does not know whether the Court might accept or consider common benefit efforts in the absence of any timely submission of hours by the Common Benefit Attorneys in question, but if the Court were to accept and consider the firm's efforts, the Fee Committee recommends an allocation of $25,000.

**Friedman Dazzio** – Worked primarily on the property damages issues, including particularly the potential "stigma" damages claims, after the formation of the MDL though October of 2012. The firm submitted 675.85 Hours (0.1217% of Total Hours submitted), and $9,361.90 Held Costs. The firm also contributed $23,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $129,157.65[76] (0.0183%), and reimbursement of $9,200 in Held Costs.

**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC** – Was initially involved in the establishment and organization of the Depository, as well as the e-discovery protocols. The firm also then participated in the Phase One discovery effort, with an emphasis on Cameron's potential liability. The firm submitted 716.05 Hours (0.1289% of Total Hours submitted), and $9,773.83 net Held Costs. The firm also contributed $215,000.00 in assessments toward Shared Expenses. The FCC initially recommended an allocation of $904,103.53 (0.1284%). The firm objects, on the basis that an effective hourly rate of $1,262/hr is not a fair or appropriate "market" or "benchmark" rate for the firm's work. While the Fee Committee places a high value on the quality of the firm's work, it could be noted that such efforts were limited, both in scope and in duration. Based on a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the Objection, and in light of the General Observations *supra* and the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of $904,103.53[77] (0.1284%), and reimbursement of $9,773.83 in Held Costs.

**Gilbert LLP** – Assisted the Insurance Work Group in the discovery and analysis of potentially available insurance coverage from essentially March of 2011 through the announcement of the BP Settlements in early 2012. The firm submitted 1,059 Hours (0.1906% of Total Hours submitted), and submitted $5,654.03 in Held Costs. The firm did not contribute any assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs

---

[76] Specifically $100,000 from the BP Settlement Cost and Fee Fund, $6,420.37 from the State Settlement Cost and Fee Fund, and $22,737.28 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[77] Specifically $700,000 from the BP Settlement Cost and Fee Fund, $44,942.58 from the State Settlement Cost and Fee Fund, and $159,160.95 from the Halliburton/Transocean Settlement Cost and Fee Fund.

10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $1,033,261.18[78] (0.1467%), and reimbursement of $5,654.03 in Held Costs.

**Girardi & Keese** – Submitted a total of 20 Hours, and contributed $23,000.00 in assessments toward Shared Expenses. The firm never submitted a Fee Affidavit and did not appear for its scheduled Fee Interview. The Fee Committee does not recommend any common benefit fee allocation. No Held Costs were submitted.

**Glago Law Firm** – Submitted a total of 140 Hours, and contributed $43,000.00 in assessments toward Shared Expenses. However, the firm did not submit a Fee Affidavit, and advised the Committee that it was not making a common benefit fee application. No Held Costs were submitted.

**Goldberg Finnegan Mester** – Contributed to the sampling and testing effort, the GCCF related projects, and the VoO Test Cases, from the formation of the MDL until the BP Settlements were announced in early 2012. The firm submitted 296.40 Hours (0.0496% of Total Hours submitted), and $749.77 in Held Costs, and contributed $13,000.00 in assessments to Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $64,578.82[79] (0.0092%).[80]

**Grossman Roth, PA** – Was a Co-Coordinator of the Insurance Work Group, submitting 189.30 Hours (0.0341% of Total Hours submitted), and $5,410.46 in Held Costs, as well as $115,000.00 in assessments toward Shared Expenses. The Fee Committee initially recommended a common benefit fee allocation of $51,663.06 (0.0073%). Upon reconsideration, and based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $124,000, and reimbursement of $4,500 in Held Costs.

**Healy, George W. IV & Assoc.** – Submitted 562.6 Hours (0.1013% of Total Hours submitted), and $1,060.85 in Held Costs.[81] The firm also contributed $43,000.00 toward Shared Expenses. The firm did some work in the Depository, off and on. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee

---

[78] Specifically $800,000 from the BP Settlement Cost and Fee Fund, $51,362.95 from the State Settlement Cost and Fee Fund, and $181,898.23 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[79] Specifically $50,000 from the BP Settlement Cost and Fee Fund, $3,210.18 from the State Settlement Cost and Fee Fund, and $11,368.64 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[80] The Held Costs submitted are for travel to New Orleans in July of 2012, which would seem related to individual client representation. The Committee therefore recommends no Held Cost reimbursement.

[81] While Held Costs of $12,161.99 had been submitted to Mr. Garrett, Mr. Healy made clear in his Fee Affidavit and Interview that he was only seeking reimbursement of $1,060.85 in Held Costs.

recommends an allocation of $129,157.65[82] (0.0183%), and reimbursement of $1,060.85 in Held Costs.

**The Law Offices of Fred L. Herman** – Although initially contributing $33,000 in assessments towards Shared Expenses, the firm submitted no common benefit time in accordance with Pre-Trial Order No. 9, nor Fee Affidavit in accordance with Pre-Trial Order No. 59. The Fee Committee therefore does not recommend any common benefit fee allocation. No Held Costs were submitted.

**Herman, Herman & Katz** – HHK partner Steve Herman served as pre-MDL Co-Liaison Counsel for the cases consolidated in the EDLA, Co-Liaison Counsel in the MDL, Co-Lead Class Counsel for the BP Settlement Classes, Co-Lead Settlement Class Counsel for the Halliburton/Transocean Settlement Class, member of the Plaintiffs' Executive Committee, Co-Chair of the Fee Committee, and *ex officio* member of the PSC. Steve Herman and other members of Herman Herman & Katz, together with Domengeaux Wright Roy & Edwards, oversaw and steered the entire litigation effort, from Depository / War Room management; to the Phase One, Phase Two, (limited Phase Three), and OPA Test Case discovery, pre-trial, and trial efforts (including active Phase One Trial participant); to the settlement negotiations with BP, Halliburton, and Transocean, as well as settlement approval, and settlement implementation; to Class Counsel assistance to other plaintiffs' attorneys, CPAs, and unrepresented claimants; to post-settlement administrative disputes, litigation, and appeals; to substantive legal research and briefing; to approval, payment, and reimbursement of Shared Expenses and other general planning and administration; to coordination with Defendants, Special Masters, the Court, the States, and the United States; to assistance provided to *pro se* litigants; to case-management orders and procedures; to public relations efforts; to the monitoring of and coordination with MDL Panel, MDL 2185, Government, and other satellite investigations, lawsuits, and proceedings; and to general communications, coordination, organization, and strategy. The litigation required full-time devotion and pre-occupation, from May of 2010 through approximately March of 2016, when the OPA Test Cases were dismissed – and with continuing time and responsibilities to this day. The firm submitted a total of 57,849.40 Hours (10.4143% of Total Hours submitted), and $180,078.98 in Held Costs.[83] The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $87,827,200.35[84] (12.4729%), plus reimbursement of the firm's

---

[82] Specifically $100,000 from the BP Settlement Cost and Fee Fund, $6,420.37 from the State Settlement Cost and Fee Fund, and $22,737.28 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[83] These expenses include approximately $87,446.81 related to experts and consultants that were retained to advance both HHK individual clients' cases and the common benefit effort. They were denoted as "Held Costs" as a placeholder for consideration by the Science Group, and, ultimately, the Common Benefit Fee and Cost Committee. As with CSP&T and other firms, the FCC believes that it is reasonable and appropriate to treat some portion, but not all, of these expert and consultant expenses as "common benefit".

[84] Specifically $68,000,000 from the BP Settlement Cost and Fee Fund, $4,365,850.97 from the State Settlement Cost and Fee Fund, and $15,461,349.38 from the Halliburton/Transocean Settlement Cost and Fee Fund.

outstanding $100,000 in Shared Expense assessments, and reimbursement of $112,493.87 in Held Costs.

**Hilliard Munoz Gonzales, LLP** – Submitted a total of 136.90 Hours, and $4,725.85 in Held Costs. The firm did not contribute any assessments toward Shared Expenses. The firm did not submit a Fee Affidavit. The Fee Committee does not recommend any common benefit fee allocation.

**Irpino Law Firm** – Provided extensive pre-trial, discovery, and trial support in the Depository and in Court with respect to e-discovery, privilege, and confidentiality issues, through the conclusion of the Phase One Trial in April of 2013.[85] Also assisted with the PSC / Common Benefit website, the Court's oilspilldocs website, and PSC / Common Benefit PR. The firm submitted 18,453.45 Hours (3.3221% of Total Hours submitted), $60,239.77 in Held Costs, and contributed $240,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $14,207,341.23[86] (2.0177%), and reimbursement of $60,000 in Held Costs.

**Johnston, Neil C. - Law Office of** – Submitted 15.20 Hours (0.0027% of Total Hours submitted) for work performed in November and December of 2015 in connection with the Halliburton/Transocean settlement allocation. Based on a review of the time records and Fee Affidavit, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $15,498.66[87] (0.0022%). No Held Costs were submitted.

**Jones Law Firm** – Did not submit time in accordance with Pre-Trial Order No. 9, nor a Fee Affidavit in accordance with Pre-Trial Order No. 59.[88] The Fee Committee therefore recommends no common benefit fee allocation. No Held Costs were submitted.

**Jones, Swanson, Huddell & Garrison** – Contributed to the coordinated pre-MDL effort and were leaders in the GCCF-related common benefit work after the formation of the MDL through the time that the BP Settlements were announced in early 2012. The firm submitted 1,555.50 Hours (0.28% of Total Hours submitted), and submitted $10,950.87 in Held Costs, and contributed $215,000.00 in assessments toward Shared Expenses. Based on a complete review of

---

[85] Although Co-Liaison Counsel and the Phase Two Trial Team were primarily relying on others, Mr. Irpino also provided some assistance to them with the exhibits used in the Phase Two Trial, in October of 2013.

[86] Specifically $11,000,000 from the BP Settlement Cost and Fee Fund, $706,240.60 from the State Settlement Cost and Fee Fund, and $2,501,100.63 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[87] Specifically $12,000 from the BP Settlement Cost and Fee Fund, $770.39 from the State Settlement Cost and Fee Fund, and $2,728.27 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[88] It appears that what was formerly the "Jones Law Firm" submitted its time and expenses as the law firm of Bahe Cook Cantley & Jones PLC, (now Jones Ward PLC), discussed *supra*.

the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $1,291,576.47[89] (0.1834%), and reimbursement of $10,950.87 in Held Costs.[90]

**King, Krebs & Jurgens, PLLC** – Although the firm did not submit contemporaneous time records in accordance with Pre-Trial Order No. 9, did not serve on a Common Benefit Work Group, and was not assigned any common benefit work by Co-Liaison Counsel, the firm believes that it is entitled to a common benefit fee for having assisted Mr. Bickford with a submission that was made on behalf of its own clients and other "New Class" members in the Halliburton/Transocean Settlement Neutral Allocation process.[91]  The Fee Committee does not know whether the Court might accept or consider common benefit efforts in the absence of any timely submission of hours by the Common Benefit Attorneys in question.  If, however, the Court were to accept and consider the firm's efforts, the Fee Committee recommends an allocation of $12,915.55[92] (0.0018%).  No Held Costs were submitted.

**Koederitz Law Firm** – Assisted with the research and briefing to transfer the Limitation Action from the Southern District of Texas to the Eastern District of Louisiana, and continued to assist their joint venturers with maritime research and briefing.[93]  The firm submitted 151 Hours (0.0272% of Total Hours submitted).  The firm made no Shared Cost contributions.  Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $32,289.41[94] (0.0046%).  No Held Costs were submitted.

**Kozyak, Tropin & Throckmorton, PA** – Although the firm submitted 716.10 Hours,[95] it did not ever volunteer to serve on any Common Benefit Work Group, was not assigned any common benefit work by Co-Liaison Counsel, did not submit a Fee Affidavit, and did not appear for a Fee Interview.  The Fee Committee recommends no common benefit fee allocation.

---

[89] Specifically $1,000,000 from the BP Settlement Cost and Fee Fund, $64,203.69 from the State Settlement Cost and Fee Fund, and $227,372.78 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[90] We note that the firm, on behalf of some of its clients, submitted an objection to certain aspects of the BP Economic & Property Damages Class Settlement.  However, the Fee Committee has not factored this into its recommendation.  Whether and/or how such objection might or might not affect the allocation or award of common benefit fees to Jones Swanson Huddell & Garrison is left to the sound judgment and discretion of the Court.

[91] *See, e.g.,* FOURTH AMENDMENT TO PTO 59 at p.2 fn.5, and Rec. Docs. 21720 and 21739.

[92] Specifically $10,000 from the BP Settlement Cost and Fee Fund, $641.99 from the State Settlement Cost and Fee Fund, and $2,273.56 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[93] The Koederitz Law Firm has an agreement to share common benefit fees with deGravelles Palmintier Holthaus & Fruge, Dodson Hooks & Frederick, and Walters Papillion Thomas & Cullens.  The Fee Committee has not taken this agreement into consideration in any way in making this proposed allocation.

[94] Specifically $25,000 from the BP Settlement Cost and Fee Fund, $1,605.09 from the State Settlement Cost and Fee Fund, and $5,684.32 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[95] The firm also attempted to submit $9,415.81 in Held Costs, all of which were rejected by Mr. Garrett.

**Kreindler & Kreindler LLP** – Was a leader of the PSC / Common Benefit PR effort, and also contributed to the Medical Monitoring Work Group, as well as assisting with the post-settlement litigation and appeals with BP. The firm submitted 5,172.6 Hours (0.9312% of Total Hours submitted), $76.60 in Held Costs, and $165,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$3,874,729.42</u>[96] (0.5503%), and reimbursement of <u>$76.60</u> in Held Costs.

**Lambert Firm** – Submitted 48 Hours (0.0086% of Total Hours submitted), and initially $10,107.59 in Held Costs, relating to miscellaneous administrative matters. Prior to the formation of the MDL, the firm was involved in an effort to retain potential experts. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$19,373.65</u>[97] (0.0028%), and reimbursement of <u>$4,000</u> in Held Costs.

**Lamothe Law Firm** – Submitted 346.60 Hours (0.0624% of Total Hours submitted), and $796.40 in Held Costs, as well as $23,000.00 in assessments toward Shared Expenses, between the formation of the MDL and when the BP Settlements were announced in early 2012, primarily relating to environmental issues and VoO-related claims. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$96,868.24</u>[98] (0.0138%), and reimbursement of <u>$796.40</u> in Held Costs.

**Landry, David L. – The Law Office of** – Although the firm did not submit contemporaneous time records in accordance with Pre-Trial Order No. 9, did not serve on a Common Benefit Work Group, and was not assigned any common benefit work by Co-Liaison Counsel, the firm believes that it is entitled to a common benefit fee for having assisted Mr. Bickford with a submission that was made on behalf of its own clients and other "New Class" members in the Halliburton/Transocean Settlement Neutral Allocation process.[99] The Fee Committee does not know whether the Court might accept or consider common benefit efforts in the absence of any timely submission of hours by the Common Benefit Attorneys in question. If, however, the Court were to accept and consider the firm's efforts, the Fee Committee recommends an allocation of <u>$12,915.55</u>[100] (0.0018%). No Held Costs were submitted.

---

[96] Specifically $3,000,000 from the BP Settlement Cost and Fee Fund, $192,611.07 from the State Settlement Cost and Fee Fund, and $682,118.35 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[97] Specifically $15,000 from the BP Settlement Cost and Fee Fund, $963.06 from the State Settlement Cost and Fee Fund, and $3,410.59 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[98] Specifically $75,000 from the BP Settlement Cost and Fee Fund, $4,815.28 from the State Settlement Cost and Fee Fund, and $17,052.96 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[99] *See, e.g.,* FOURTH AMENDMENT TO PTO 59 at p.2 fn.5, and Rec. Docs. 21720 and 21739.

[100] Specifically $10,000 from the BP Settlement Cost and Fee Fund, $641.99 from the State Settlement Cost and Fee Fund, and $2,273.56 from the Halliburton/Transocean Settlement Cost and Fee Fund.

**Lanier Law Firm** – Contributed $13,000 in initial assessments towards Shared Expenses, but submitted no common benefit time in accordance with Pre-Trial Order No. 9, nor Fee Affidavit in accordance with Pre-Trial Order No. 59.  The Fee Committee therefore does not recommend any common benefit fee allocation.  No Held Costs were submitted.

**Le Tran & Lang** – Contributed $65,000 in assessments towards Shared Expenses, but submitted no common benefit time in accordance with Pre-Trial Order No. 9, nor Fee Affidavit in accordance with Pre-Trial Order No. 59.  The Fee Committee therefore does not recommend any common benefit fee allocation.  No Held Costs were submitted.

**Leger & Shaw** – The firm participated on the Phase One deposition and Phase One Trial teams;  served as a Co-Coordinator of the GCCF Outreach Work Group;  participated with the PSC in overall strategy and coordination;  and assisted with the development of economic models, particularly regarding the coordination and development of local government claims.  The firm submitted 6,235.85 Hours (1.1226% of Total Hours submitted), and $19,517.87 in Held Costs, as well as $240,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $9,041,035.33[101] (1.284%), and reimbursement of $15,017.87 in Held Costs.[102]

**Lemmon Law Firm** – The firm assisted in the Depository; participated on the Phase Two deposition and trial preparation team; participated with the PSC in overall strategy and coordination;  and assisted with the development of the environmental and ecological issues.  The firm submitted 1,217.25 Hours (0.2191% of Total Hours submitted), and $5,723.00 in Held Costs, and contributed $100,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $2,066,522.37[103] (0.2935%), and reimbursement of $5,593 in Held Costs.

**Levin, Sedran & Berman** – Provided assistance in the Depository and assisted with legal research and briefing, in 2010 and 2011, submitting 2,157.90 Hours (0.3885% of Total Hours submitted), $25,171.78 in Held Costs, and $215,000.00 in assessments toward Shared Expenses. Based on a complete review of these time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order

---

[101] Specifically $7,000,000 from the BP Settlement Cost and Fee Fund, $449,425.84 from the State Settlement Cost and Fee Fund, and $1,591,609.49 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[102] The Held Costs submitted include $9,000 in expert fees retained for the benefit of both the firm's own individual clients and the common interests of local governments generally.  As in other similar situations noted *supra,* the Fee and Cost Committee recommends that some, but not all, of these expenses (specifically one-half, or $4,500) be reimbursed as "common benefit".

[103] Specifically $1,600,000 from the BP Settlement Cost and Fee Fund, $102,725.91 from the State Settlement Cost and Fee Fund, and $363,796.46 from the Halliburton/Transocean Settlement Cost and Fee Fund.

No. 59, the Fee Committee recommends an allocation of $1,291,576.47 [104] (0.1834%), and reimbursement of $25,000 in Held Costs, in connection with this common benefit work.  In 2015, Mr. Levin and Mrs. Duggan were appointed Special Counsel to the Fee Committee, which is being compensated separately, subject to approval by the Court.

**Levin, Papantonio, Thomas Mitchell Rafferty & Proctor** – Was appointed to the PSC and the Plaintiffs' Executive Committee, essentially re-locating to New Orleans from the formation of the MDL through the Phase Two Trial in October of 2013.  Mr. Barr was one of the primary attorneys that Co-Liaison Counsel relied upon for leadership and overall strategy.  He served as one of the leaders of the Science Group, the Phase Two Trial Team leader, and was one of the primary attorneys responsible for PSC / Common Benefit Attorneys communications and PR.  The firm also provided support in the Depository, and with respect to Phase Two Discovery.  Mr. Barr had some participation in the BP Economic Settlement negotiations, and also participated in settlement implementation and the post-settlement disputes.  In 2015, Mr. Barr was appointed to the Fee and Cost Committee, and has performed additional services in that capacity.  The firm submitted 10,287.35 Hours (1.852% of Total Hours and 2.21% of all Attorney Hours submitted), and $271,719.21 in Held Costs. The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $23,894,164.80 [105] (3.3934%), plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $260,000 in Held Costs.

**Lewis Tien** – Contributed $10,000 in assessments towards Shared Expenses, but submitted no common benefit time in accordance with Pre-Trial Order No. 9, nor Fee Affidavit in accordance with Pre-Trial Order No. 59.  The Fee Committee therefore does not recommend any common benefit fee allocation.  No Held Costs were submitted.

**Lewis, Kullman, Sterbcow & Abramson** – Was appointed to serve on the PSC, and assumed a substantial leadership role in the discovery, trial preparation, and trial effort.  Mr. Sterbcow was a Co-Chair of the Phase One Deposition Team, a Co-Chair of the Phase One Trial Team, and assumed an active leadership role in the preparation and litigation of the OPA Test Cases.  The firm provided continuous support within the depository, and also assisted with research and briefing, as well as general PSC duties and overall litigation strategy.  The firm submitted 15,785.55 Hours (2.8908% of Total Hours, including 3.42% of total Attorney Hours, submitted),[106] and $73,396.86 in Held Costs.  The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013.

---

[104] Specifically $1,000,000 from the BP Settlement Cost and Fee Fund, $64,203.69 from the State Settlement Cost and Fee Fund, and $227,372.78 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[105] Specifically $18,500,000 from the BP Settlement Cost and Fee Fund, $1,187,768.28 from the State Settlement Cost and Fee Fund, and $4,206,396.52 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[106] An additional 299.75 Hours were rejected by Mr. Garrett, due to what the firm believes was a clerical error.  In the overall analysis, these hours were not material to the Fee Committee's recommendation.

The FCC initially recommended an allocation of $28,414,682.47 (4.0354%). The firm does not object to the Initial Recommendation, but seeks reconsideration of the firm's allocation, pointing to the intensity and duration of the commitment to the litigation from inception thru the dismissal of the OPA Test Cases in March of 2016. The Fee Committee acknowledges this. Yet, based on the General Observations *supra,* and a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the request for reconsideration, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of $28,414,682.47[107] (4.0354%), plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $72,000 in Held Costs.

**Lieff Cabraser Heimann & Bernstein, LLP** – Was appointed to serve on the PSC, and played a lead role in the research, preparation, drafting and other coordination of pleadings, briefs, and appeals. The firm participated in BP Settlement Negotiations, the settlement approval process, the settlement implementation process, and the post-settlement disputes. The firm was also involved in the selection and preparation of class reps, and the development of economic and property damages models. The firm was initially appointed to address potential jurisdictional and/or liability issues regarding Transocean's foreign parent corporation, the MOEX and Anadarko entities, and BP plc. The firm also assisted with Halliburton and Transocean class settlement approval and implementation, and provided support in the Depository. The firm submitted 11,670.45 Hours (2.101% of the Total Hours submitted),[108] and $598,474.71 in Held Costs. The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013. The FCC initially recommended an allocation of $18,082,070.66 (2.568%). The firm emphasizes that it is not objecting to the Initial Recommendation, but believes that reconsideration of the firm's allocation is appropriate, particularly in light of Mrs. Cabraser's unique level of skill and experience, and the fact that Lieff Cabraser, perhaps unlike other firms, has high hourly rates which have been approved in numerous other class actions and are supported by paying clients. The Fee Committee acknowledges this. Yet, based on the General Observations *supra,* and a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the request for reconsideration, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of $18,082,070.66[109] (2.568%), plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $590,000 in Held Costs.

---

[107] Specifically $22,000,000 from the BP Settlement Cost and Fee Fund, $1,412,481.20 from the State Settlement Cost and Fee Fund, and $5,002,201.27 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[108] An additional 73.15 Hours were rejected by Mr. Garrett, which the firm believes should have been accepted. In the overall analysis, these hours were not material to the Fee Committee's recommendation.

[109] Specifically $14,000,000 from the BP Settlement Cost and Fee Fund, $898,851.67 from the State Settlement Cost and Fee Fund, and $3,183,218.99 from the Halliburton/Transocean Settlement Cost and Fee Fund.

**Lockridge, Grindal & Nauen, PLLP** – Although the firm submitted 46.5 Hours, and submitted $1,220.40 in Held Costs, the firm did not submit a Fee Affidavit, advising the Fee Committee that it was not making a common benefit fee application.

**Lovelace Law Firm PA** – Submitted 117.45 Hours (0.0211% of Total Hours submitted), and $3,130.37 in Held Costs, associated with the preliminary development of property damages claims. The firm also contributed $13,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $38,747.29[110] (0.0055%), and reimbursement of $3,130.37 in Held Costs.

**Lundy, Lundy, Soileau & South** – Was appointed to the PSC, and made substantial contributions to the Science Group, the Phase Two discovery and trial teams, the negotiation and implementation of the Medical Settlement, and some assistance with the implementation of the Economic Settlement, particularly with respect to Wetlands Claims. The firm also provided support in the Depository, and was somewhat involved in the preparation of the OPA Test Cases. The firm submitted 12,654.45 Hours (2.2781% of Total Hours submitted), and $215,989.33 in Held Costs. The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $20,019,435.38[111] (2.8431%), plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $212,000 in Held Costs.

**Martzell Bickford & Centola** – Prior to the formation of the MDL, the firm actively participated in both the Transocean Limitation Action and the Coast Guard / MBI Hearings. Mr. Bickford also participated on the Phase One Deposition Team, consulted with respect to potential criminal law issues, and contributed to the PSC submissions regarding witnesses who had invoked the Fifth Amendment. The firm also provided substantial support in the Depository, throughout much of the litigation. Mr. Bickford, on behalf of his own clients and other "New Class" Members, also participated in the Halliburton/Transocean Settlements Neutral Allocation (and internal Distribution Model) process.[112]   The firm submitted a total of 7,781.25 Hours (of which approximately 1,285.75 (or 0.28% of total) were Attorney Hours, and approximately 6,495.5 were Paralegal Hours (1.4008% of Total Hours submitted)),[113] as well as $37,755.98 in Held Costs. The

---

[110] Specifically $30,000 from the BP Settlement Cost and Fee Fund, $1,926.11 from the State Settlement Cost and Fee Fund, and $6,821.18 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[111] Specifically $15,500,000 from the BP Settlement Cost and Fee Fund, $995,157.21 from the State Settlement Cost and Fee Fund, and $3,524,278.17 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[112] *See, e.g.,* FOURTH AMENDMENT TO PTO 59 at p.2 fn.5, and Rec. Docs. 21720 and 21739.

[113] In general, only licensed attorneys were permitted to perform document review and other trial preparation in the War Room / Depository. However, a Martzell Bickford paralegal, Mr. Rodriguez, had proven extremely helpful, and Co-Liaison Counsel agreed to make an exception in his case.

firm also contributed $33,000.00 in assessments toward Shared Expenses.  The FCC initially recommended an allocation of $3,228,941.19 (0.4586%).  The firm objects, pointing largely to efforts that were taken on behalf of the firm's clients, Mr. Roshto and Mr. Williams, including participation in the MBI Hearings, as well as Mr. Rodriquez's work in the Depository, (which the Fee Committee had recognized).[114]  Based on a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the Objection, and in light of the General Observations *supra* and the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of $3,228,941.19[115] (0.4586%), and reimbursement of $37,500 in Held Costs.

**Matthews, Lawson, McCutcheon & Joseph** – Participated in the Phase One discovery effort, and provided significant IT and other administrative support in the Depository into 2013, with the preparation of Phase Two.  The firm submitted 10,858.75 Hours (1.9548% of Total Hours submitted), and $239,001.98 in Held Costs, as well as $215,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $8,395,247.09[116] (1.1923%), and reimbursement of $230,000 in Held Costs.

**McCorvey, Derriel C. - Law Office of** – Submitted 501.5 Hours (0.0903% of Total Hours submitted), and $1,660.38 in Held Costs, primarily in connection with GCCF oversight.  The firm also contributed $23,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $322,894.12[117] (0.0459%), and reimbursement of $1,660.38 in Held Costs.

**McKenzie Hall & De La Piedra, PA** – Submitted 408 Hours (0.0734% of Total Hours submitted), and $4,040.26 in Held Costs, primarily in connection with property damages loss research under Florida law, GML, and OPA. The firm also contributed $43,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, and the

---

[114] The firm points to one iteration of what was generally referred to as the "TO Evidence Memo", and draws connections between that document and the Court's ultimate Phase One Findings.  It is the recollection of the Fee Committee, however, that Mr. Rodriquez was only one of several different authors who contributed to the Evidence Memo, which was further transformed and revised, by other Trial Team members, with a considerable amount of time and effort, into what would ultimately become the PSC's Post-Trial Brief, Reply Brief, and Proposed Phase One Findings – which, of course, the Court considered amidst the totality of the evidence presented, and along with the Proposed Phase One Findings submitted by the BP Defendants and by Halliburton.

[115] Specifically $2,500,000 from the BP Settlement Cost and Fee Fund, $160,509.23 from the State Settlement Cost and Fee Fund, and $568,431.96 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[116] Specifically $6,500,000 from the BP Settlement Cost and Fee Fund, $417,323.99 from the State Settlement Cost and Fee Fund, and $1,477,923.10 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[117] Specifically $250,000 from the BP Settlement Cost and Fee Fund, $16,050.92 from the State Settlement Cost and Fee Fund, and $56,843.20 from the Halliburton/Transocean Settlement Cost and Fee Fund.

Fee Affidavit,[118] and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $161,447.06[119] (0.0229%), and reimbursement of $3,810.36 in Held Costs.

**Morgan & Morgan** – Served on the PSC; participated in the development of scientific, economic, and environmental issues;  assisted with the PSC / Common Benefit Attorney communication and PR efforts;  served on the Phase Two Deposition and Phase Two Trial Team, while providing Depository support, through the Phase Two Trial in October of 2013.  The firm submitted 12,796.4 Hours (2.3037% of Total Hours submitted), and $203,222.83 in Held Costs. The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $15,498,917.71[120] (2.2011%), plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $200,000 in Held Costs.

**Morris Bart, LLC** – While contributing $10,000.00 in assessments toward Shared Expenses, the firm did not submit any hours in compliance with Pre-Trial Order No.9,[121] nor a Fee Affidavit as required by Pre-Trial Order No. 59, and did not appear to be making a common benefit fee application.  Co-Liaison Counsel were contacted informally by the firm after the deadline for objections to the Initial Recommendation had already passed, and advised accordingly.

**Motley Rice, LLC** – Was appointed to the PSC in 2011, but, shortly after the establishment of the MDL in 2010, had already begun working closely with Co-Liaison Counsel and Mr. Fayard with respect to the exploration of settlement opportunities.  Motley Rice took the lead with respect to much of the settlement discussions with BP, and also participated in the settlement negotiations with Halliburton.  The firm provided support in the Depository, and with respect to GCCF outreach and supervision, and was intimately involved in assisting Co-Liaison Counsel with settlement approval, settlement implementation, and the post-settlement litigation with BP.   The firm submitted in 24,700.8 Hours (4.4467% of Total Hours submitted), and $678,979.43 in accepted Held Costs.[122]   The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013.   The FCC initially recommended an allocation of $38,747,294.27 (5.5028%).  The firm has sought reconsideration and/or objection, seeking a 15% increase in its proposed allocation.  While the Fee Committee did

---

[118] Mr. McKenzie was in poor health, and, sadly, passed away prior to his scheduled Fee Interview.

[119] Specifically $125,000 from the BP Settlement Cost and Fee Fund, $8,025.46 from the State Settlement Cost and Fee Fund, and $28,421.60 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[120] Specifically $12,000,000 from the BP Settlement Cost and Fee Fund, $770,444.29 from the State Settlement Cost and Fee Fund, and $2,728,473.42 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[121] The firm sought to submit 275 Hours and $40.00 in Held Costs which we rejected by Mr. Garrett.

[122] The firm submitted approximately $125,000 in additional Held Costs that were rejected as untimely, as well as approximately $1 million in private air expenses, which have been taken into consideration generally with respect to the recommended fee allocation, and which are addressed more fully below.

place a high value on the firm's contributions and the benefits derived therefrom,[123] it could also be noted that the firm did not participate in the Phase One or Phase Two Trials, the Science Group, the OPA Test Cases, Medical Settlement implementation, was only minimally involved in the research and writing and appeal efforts, did not take any depositions, was not materially involved in case administration, and, indeed, the firm's efforts, while both intensive and effective, were concentrated largely within a one-year time-frame, from the Summer of 2011 thru April of 2012. Based on a complete review of the time records, the Fee Affidavit, the Fee Interview, and the request for reconsideration, and in light of the General Observations *supra* and the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee[124] continues to recommend an allocation of $38,747,294.27[125] (5.5028%), plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments.  With respect to the Held Costs timely submitted to and accepted by Mr. Garrett, the Committee recommends reimbursement of $675,000.  With respect to the $1,094,000 in additionally claimed private air travel expenses, the Fee and Cost Committee does not believe that it has the authority to depart from the requirements and limitations set forth by the Court in Pre-Trial Order No. 9.  At the same time, however, the Fee Committee notes that, at least with respect to several of the flights at issue, the private jet allowed not only members of Motley Rice, but also Co-Liaison Counsel and other members of the Negotiating Team, to get to and from important meetings, under various time pressures, that would have been largely infeasible (or at least extremely wasteful) to conduct by ordinary commercial travel.  Therefore, to the extent the Court might deem it appropriate to grant a departure or exception from Pre-Trial Order No. 9, the Fee and Cost Committee would recommend the reimbursement of an additional $250,000.00 in Held Costs.

**Murray Law Firm** – Primarily assisted with the effort to identify, collect, and preserve environmental samples.  The firm also assisted with some legal research and briefing.  The firm submitted 5,530.50 Hours (including approximately 1,701.25 (or 0.37% of total) Attorney Hours, and approximately 3,829.25 in Paralegal Hours) (totaling 0.9956% of Total Hours submitted), as well as $94,251.46 in Held Costs.[126]  The firm also contributed $215,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-

---

[123] Notably, when one compares the ratio of percentage-of-time-submitted to percentage-of-fees-recommended, Motley Rice comes out to a factor of 1.24, as compared to only 1.19 for Herman Herman Katz, as Co-Lead Counsel.

[124] Mr. Fayard, having voted for the Initial Recommendation to Motley Rice, recused himself from consideration of the Final Recommendation.

[125] Specifically $30,000,000 from the BP Settlement Cost and Fee Fund, $1,926,110.72 from the State Settlement Cost and Fee Fund, and $6,821,183.55 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[126] Like CSP&T, HHK, and other firms noted *supra*, the Murray Firm submitted approximately $35,000 in expenses for experts and consultants that were retained for the potential benefit of both individual clients and the common benefit effort generally.  As with the other firms, the FCC believes that it is reasonable and appropriate to treat a portion, but not all, of these expert and consultant expenses as "common benefit".

Trial Order No. 59, the Fee Committee recommends an allocation of $\underline{\$2,583,152.95}$[127] (0.3669%),[128] and reimbursement of $\underline{\$80,000}$ in Held Costs.

**Musslewhite & Associates, PC** – Engaged in preliminary development of the liability issues and experts, as well as some environmental sample collection and testing, primarily prior to the formation of the MDL, and assisted with the initial MDL discovery. Submitted 702.5 Hours (0.1265% of Total Hours submitted), and $4,765.02 in Held Costs, and contributed $33,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $\underline{\$142,073.42}$[129] (0.0202%), and reimbursement of $\underline{\$2,800}$ in Held Costs.

**Nast Law LLC** – Although submitting 79.25 Hours, and $94.73 in Held Costs, the firm did not submit a Fee Affidavit, advising the Fee Committee that it is not making a common benefit fee application.

**Neblett, Beard & Arsenault** – Although initially submitting 123.40 Hours, and $9,826.56 in Held Costs, the firm withdrew from the Common Benefit Work Group to which its members had been assigned shortly after the formation of the MDL. The initial assessment toward Shared Expenses was returned to the firm, and all claim to common benefit fees was waived.

**Penton Law Firm** – Participated in the Coast Guard / MBI hearings prior to the formation of the MDL, and the Phase One Deposition Team, through essentially the end of 2011. The firm submitted 5,699.70 Hours (1.0261% of Total Hours submitted, including 0.77% of total Attorney Hours submitted), and $27,278.39 in Held Costs, and contributed $165,000.00 in assessments toward Shared Expenses. The FCC initially recommended an allocation of $7,426,564.73 (1.0547%). The firm objected, pointing largely to efforts that were taken on behalf of the firm's clients, Mr. Roshto and Mr. Williams, including participation in the MBI Hearings. The Fee Committee considered and credited the firm for these efforts. However, it could also be noted that Mr. Penton was not involved in the actual Phase One Trial, nor the Phase Two Trial effort, nor the OPA Test Cases, nor the Science Group, nor legal research and briefing, nor the development of the medical case, nor the settlement team, nor settlement implementation and approval,[130] nor case

---

[127] Specifically $2,000,000.00 from the BP Settlement Cost and Fee Fund, $128,407.38 from the State Settlement Cost and Fee Fund, and $454,745.57 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[128] We note that the Murray Law Firm has an agreement with Cossich Sumich Parsiola & Taylor to split any common benefit fees awarded to each firm on a 50/50 basis. The Fee Committee has not taken this agreement into consideration in any way in making this proposed allocation.

[129] Specifically $110,000 from the BP Settlement Cost and Fee Fund, $7,062.41 from the State Settlement Cost and Fee Fund, and $25,011.01 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[130] Mr. Penton appears to take credit for convincing the Medical Settlement Objectors to drop their objections and appeal. While Mr. Penton's efforts may have contributed to the dismissal of the appeal, it seems likely that such dismissal was more the result of the depositions taken and Motion for Sanctions filed by Class Counsel. With respect to the Economic & Property Damages Settlement, we note that the firm, on behalf of some of its clients, submitted an objection to certain aspects of the settlement. However, the Fee Committee has not factored this into its recommendation. Whether and/or how such objection might or might not affect the allocation or award of common benefit fees to the Penton Law Firm is left to the sound judgment and discretion of the Court.

administration; and had largely concluded all common benefit efforts by the end of 2011.[131] Based on a complete review of the time and expense records, the Fee Affidavit, the Fee Interview, and the Objection, and in light of the General Observations *supra* and the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of $7,426,564.73[132] (1.0547%), and reimbursement of $26,000 in Held Costs.

**Podhurst Orsek, PA** – Although submitting 51.25 Hours, and $111.46 in Held Costs, primarily related to the RICO claims, the firm did not file a Fee Affidavit, and did not appear for a Fee Interview.  The Fee Committee recommends no common benefit fee allocation.

**Ranier Law Firm** – Served as Co-Coordinator of the Insurance Work Group, which focused on the research, analysis and review of potentially available insurance policies from the latter part of 2010 through the time that the BP Settlements were announced in early 2012.  Among other things, Mr. Ranier enlisted the assistance of Anderson Kill, a firm experienced in this type of analysis and evaluation.  The Ranier Law Firm submitted 493.75 Hours (0.0889% of Total Hours submitted), and $3,499.46 in Held Costs, and contributed $215,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $684,535.54[133] (0.0972%), and reimbursement of $3,499.46 in Held Costs.

**Reeves & Mestayer** – Attempted to submit 29 Hours that were not timely re-submitted, and expended an additional 82.50 Hours that were not timely submitted in accordance with Pre-Trial Order No. 9.  (The firm did submit $610.28 in Held Costs, and contributed $23,000.00 in assessments toward Shared Expenses.)  The Fee Committee does not know whether the Court might accept or consider common benefit efforts in the absence of any timely submission of hours by the Common Benefit Attorneys in question.  If, however, the Court were to accept and consider the firm's efforts – which primarily relate to legal research and the associated development of economic and property damages claims – the Fee Committee, based on a complete review of the time records submitted with the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, would recommend an allocation of $64,578.82[134] (0.0092%).  The Committee also recommends reimbursement of the $610.28 in Held Costs.

**Reich & Binstock, LLP** – Submitted 974.82 Hours (0.1755% of Total Hours submitted), and $44,633.43 in Held Costs, primarily associated with environmental sampling, ecological

---

[131] It was also the recollection of some Fee Committee members that Mr. Penton's Phase One Deposition efforts were often not fully coordinated with the Depository and other members of the Deposition Team.

[132] Specifically $5,750,000 from the BP Settlement Cost and Fee Fund, $369,171.22 from the State Settlement Cost and Fee Fund, and $1,307,393.51 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[133] Specifically $530,000 from the BP Settlement Cost and Fee Fund, $34,027.96 from the State Settlement Cost and Fee Fund, and $120,507.58 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[134] Specifically $50,000 from the BP Settlement Cost and Fee Fund, $3,210.18 from the State Settlement Cost and Fee Fund, and $11,368.64 from the Halliburton/Transocean Settlement Cost and Fee Fund.

research, and various administrative issues, in 2010 and 2011.  The firm also contributed $23,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $161,447.06[135] (0.0229%), and reimbursement of $40,000 in Held Costs.

**Rhine Law Firm PC** – Did not submit any common benefit time in accordance with Pre-Trial Order No. 9, nor Held Costs, nor assessments toward Shared Expenses, nor any Fee Affidavit in accordance with Pre-Trial Order No. 59.  The Fee Committee therefore does not recommend any common benefit fee allocation.

**Schechter, McElwee, Shaffer & Harris, LLP** – Submitted 83.75 Hours (0.0151% of Total Hours submitted), principally concerning initial third-party discovery efforts directed to Schlumberger.  The firm also contributed $215,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $64,578.82[136] (0.0092%).   No Held Costs were submitted.

**Searcy, Denney, Scarola, Barnhart & Shipley, PA** – Although the firm submitted 83.50 Hours, and $3,293.06 in Held Costs, and contributed $65,000.00 in assessments toward Shared Expenses, the firm did not submit a Fee Affidavit, advising the Fee Committee that it is making no common benefit fee application.

**Seeger Weiss** – Was active in the management of the Depository, and the initial discovery and e-discovery discussions and protocols, from the formation of the MDL though early 2011.  The firm submitted 489.70 Hours (0.0882% of Total Hours submitted), and $37,020.05 in Held Costs, and contributed $50,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $516,630.59[137] (0.0734%), and reimbursement of $25,000 in Held Costs.

**Shelby Roden, LLC** – Contributed to the development of economic models and property damages development, primarily from the formation of the MDL through the announcement of the BP Settlements in 2012.  The firm submitted 260.25 Hours (0.0469% of Total Hours submitted), and $7,334.01 in Held Costs, and contributed $43,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order

---

[135] Specifically $125,000 from the BP Settlement Cost and Fee Fund, $8,025.46 from the State Settlement Cost and Fee Fund, and $28,421.60 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[136] Specifically $50,000 from the BP Settlement Cost and Fee Fund, $3,210.18 from the State Settlement Cost and Fee Fund, and $11,368.64 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[137] Specifically $400,000 from the BP Settlement Cost and Fee Fund, $25,681.48 from the State Settlement Cost and Fee Fund, and $90,949.11 from the Halliburton/Transocean Settlement Cost and Fee Fund.

No. 59, the Fee Committee recommends an allocation of <u>$51,663.06</u>[138] (0.0073%), and reimbursement of <u>$6,000</u> in Held Costs.

   **<u>Sher Garner Cahill Richter Klein & Hilbert</u>** – Was very involved in the pre-MDL organization and effort to obtain and preserve samples, to protect claimants in the GCCF, and to ensure fairness in the VoO program and worker safety.  After the formation of the MDL, the firm helped to coordinate the initial written discovery on BP, and provided various research and briefing on the legal issues, through the submission of the Rule 12 briefing and argument in 2011. Submitted 2,706.4 Hours (including 0.35% of total Attorney Hours submitted), $12,722.20 in Held Costs, and $215,000 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$1,679,049.42</u>[139] (0.2385%), and reimbursement of <u>$12,722.20</u> in Held Costs.[140]

   **<u>Simmons, Hanly, Conroy (f/k/a Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP)</u>** – Provided support in the Depository, and, in particular, assembled and managed the PSC / Common Benefit library of scientific, environmental and ecological studies, references, research, and reports, essentially through the time that the BP Settlements were announced in 2012.  The firm submitted 5,317.11 Hours (0.9578% of Total Hours submitted), and $149,008.90 in Held Costs, and contributed $165,000.00 in assessments toward Shared Assessments.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$5,166,305.90</u>[141] (0.7337%), and reimbursement of <u>$146,000</u> in Held Costs.

   **<u>Singleton Law Firm</u>** – Did not timely submit any hours in accordance with Pre-Trial Order No. 9.[142]  The firm did submit $2,571.73 in Held Costs, and contributed $43,000.00 in assessments toward Shared Expenses.  Mr. Singleton did not attend his Fee Interview.  It is the Fee Committee's understanding that the firm only seeks reimbursement of Held Costs, and does not intend to pursue any common benefit fee application.  The Committee recommends reimbursement of <u>$2,571.73</u> in Held Costs.

---

[138] Specifically $40,000 from the BP Settlement Cost and Fee Fund, $2,568.15 from the State Settlement Cost and Fee Fund, and $9,094.91 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[139] Specifically $1,300,000 from the BP Settlement Cost and Fee Fund, $83,464.80 from the State Settlement Cost and Fee Fund, and $295,584.62 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[140] We note that the firm, on behalf of some of its clients, submitted an objection to certain aspects of the BP Economic & Property Damages Class Settlement.  However, the Fee Committee has not factored this into its recommendation.  Whether and/or how such objection might or might not affect the allocation or award of common benefit fees to Sher Garner is left to the sound judgment and discretion of the Court

[141] Specifically $4,000,000 from the BP Settlement Cost and Fee Fund, $256,814.76 from the State Settlement Cost and Fee Fund, and $909,491.14 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[142] Mr. Singleton believes that he submitted a total of 45 Hours, but Mr. Garrett has no record of such submissions.

**Spagnoletti & Co.** – Participated in the Insurance Work Group. The firm submitted 139.5 Hours (0.0251% of Total Hours submitted), and $3,303.57 in Held Costs, and contributed $215,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $64,578.82[143] (0.0092%), and reimbursement of $3,000 in Held Costs.

**State of Alabama Office of Attorney General** – Received an additional $10,000,000.00 from the BP Defendants in consideration for attorneys' fees and/or other litigation expenses in connection with the settlements between BP and the States,[144] and, by stipulation dated September 30, 2015, agreed to waive any and all further claim for common benefit costs and/or fees, in conjunction with same.

**Tammy Tran Law Firm** – Although appointed to a Common Benefit Work Group, and providing some common benefit services, Ms. Tran did not ever submit any time to Mr. Garrett, and advised, from the outset, that she would not be seeking any common benefit fees.

**Taylor Martino** – Although the firm contributed an initial $10,000 in assessments towards Shared Expenses, it submitted no common benefit time in accordance with Pre-Trial Order No. 9, nor any Fee Affidavit in accordance with Pre-Trial Order No. 59. The Fee Committee therefore does not recommend any common benefit fee allocation. No Held Costs were submitted.

**Tebbutt, Charles M. - Law Offices of** – Was primarily responsible for the "D1" claims, including the appeal and remand of claims brought under the EPCRA. The firm submitted 1,449.45 Hours (0.2609% of Total Hours submitted), and $1,917.49 in Held Costs. The firm did not make any assessments towards Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $387,472.95[145] (0.055%), and reimbursement of $1,917.49 in Held Costs.

**Thornhill Law Firm** – Substantially contributed to the Phase One written discovery, the Phase One Deposition Team, and served on the Phase One Trial Team, from the formation of the MDL through the Phase One Trial in early 2103. The firm submitted 5,974.57 Hours (1.0756% of Total Hours submitted), and $30,644.51 in Held Costs, as well as $215,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-

---

[143] Specifically $50,000 from the BP Settlement Cost and Fee Fund, $3,210.18 from the State Settlement Cost and Fee Fund, and $11,368.64 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[144] *See* Rec. Doc. 15437 (Certificates of Non-Objection to Proposed Order) (Oct. 5, 2015).

[145] Specifically $300,000 from the BP Settlement Cost and Fee Fund, $19,261.11 from the State Settlement Cost and Fee Fund, and $68,211.84 from the Halliburton/Transocean Settlement Cost and Fee Fund.

28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$8,072,352.98</u>[146] (1.1464%), and reimbursement of <u>$30,500</u> in Held Costs.

 **<u>Ungar & Byrne, APLC</u>** – Submitted 46.50 Hours in connection with the VoO Test Cases between November 2011 and January of 2012.  The firm also contributed $10,000.00 in assessments toward Shared Expenses.  The firm did not submit a Fee Affidavit, and advised the Committee that it is not pursuing a common benefit fee application.  No Held Costs were submitted.

 **<u>Vincent, William S. - Law Office of</u>** – Assisted with some of the ecological issues from the formation of the MDL through 2011, and provided some assistance to the PSC for the negotiation of the Seafood Compensation Fund and to the Seafood Neutral for the development of the Seafood Compensation Program.[147]  The firm submitted in 691.5 Hours (including 0.08% of total Attorney Hours submitted), and contributed $13,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$193,736.47</u>[148] (0.0275%).  No Held Costs were submitted.

 **<u>Waite, Schneider, Bayless & Chesley</u>** – Participated in the RICO Work Group.  The firm submitted 1,590.75 Hours (0.2864% of Total Hours submitted), and $13,918.89 in Held Costs, and contributed $65,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview,[149] and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$96,868.24</u>[150] (0.0138%), and reimbursement of <u>$13,918.89</u> in Held Costs.

 **<u>Waitz Law Firm</u>** – Although the firm contributed an initial $10,000 in assessments towards Shared Expenses, it submitted no common benefit time in accordance with Pre-Trial Order No. 9, nor any Fee Affidavit in accordance with Pre-Trial Order No. 59.  The Fee Committee therefore does not recommend any common benefit fee allocation.  It appears that the Waitz Law Firm is, however, due to an oversight, still owed reimbursement of its initial <u>$10,000</u> Shared Expense assessment.

---

[146] Specifically $6,250,000 from the BP Settlement Cost and Fee Fund, $401,273.07 from the State Settlement Cost and Fee Fund, and $1,421,079.91 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[147] As in the case of firms who prepared submissions regarding the "Old Class" vs. "New Class" HESI/TO Settlement allocation, this education and advocacy was, of course, also (and perhaps predominantly) for the benefit of the firm's own clients;  however, they were asked to provide information and insight by Co-Liaison Counsel, for the common benefit of other potential Seafood Claimants.

[148] Specifically $150,000 from the BP Settlement Cost and Fee Fund, $9,630.55 from the State Settlement Cost and Fee Fund, and $34,105.92 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[149] Apparently due to health reasons, Joseph M. Bruno, Sr. "represented" the firm before the Fee Committee.

[150] Specifically $75,000 from the BP Settlement Cost and Fee Fund, $4,815.28 from the State Settlement Cost and Fee Fund, and $17,052.96 from the Halliburton/Transocean Settlement Cost and Fee Fund.

**Walters, Papillion, Thomas, Cullens, LLC** – Participated in the initial written discovery effort and assisted its joint venturers from time to time with legal research and briefing.[151]  The firm submitted 166.5 Hours (0.03% of Total Hours submitted), and contributed $13,000.00 in assessments toward Shared Expenses. Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $38,747.29[152] (0.0055%). No Held Costs were submitted.

**Waltzer & Wiygul, LLP (now Waltzer Wiygul & Garside (WWG))** – Helped to prepare and coordinate the "D1" pleading, research, and briefing;  assisted with GCCF outreach and supervision;  was very involved in the VoO Test Case project;  participated, off and on, in various environmental and Governmental-related research and discovery projects;  and provided information and analyses for the Seafood Compensation Program and Fund.[153]   The firm submitted 3,282.69 Hours (0.591% of Total Hours submitted), and $2,142.31 in Held Costs, and contributed $50,000.00 in assessments toward Shared Expenses. The FCC initially recommended an allocation of $1,679,049.42 (0.2385%). The firm objected, noting that its effective hourly rate was lower than that of other firms with whom WWG believes itself to be comparable. The Fee Committee considered and credited WWG with the efforts that are noted in the firm's written Objection. Yet, at the same time, it could also be noted that WWG was not involved in the Phase One discovery or trial effort, nor the Phase Two discovery or trial effort, nor the OPA Test Cases, nor the settlement team, nor settlement implementation and approval, nor case administration; and had largely concluded all common benefit efforts by April of 2012. It is, moreover, the recollection and perception of the Fee Committee, (in addition to the General Observations *supra*), that much of the firm's advocacy was largely intended to advance the interests of its own clients, (in some cases vis-à-vis other classmembers), with only a partial or derivative benefit to the common and collective interests of the class and/or MDL plaintiffs as a whole. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues

---

[151] Walters Papillion Thomas & Cullens has an agreement to share common benefit fees with deGravelles Palmintier Holthaus & Fruge, Dodson Hooks & Frederick, and the Koederitz Law Firm.  The Fee Committee has not taken this agreement into consideration in any way in making this proposed allocation.

[152] Specifically $30,000 from the BP Settlement Cost and Fee Fund, $1,926.11 from the State Settlement Cost and Fee Fund, and $6,821.18 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[153] This education and advocacy was, of course, also (if not predominantly) for the benefit of WWG's own clients;  however, there was also likely some common benefit to various other members of the Seafood Program.

to recommend an allocation of $1,679,049.42[154] (0.2385%), and reimbursement of $2,123.94 in Held Costs.[155]

**Waters Law Firm** – Helped to coordinate and conduct the maritime law research and briefing, primarily in 2010 and 2011.  The firm submitted 591 Hours (0.1064% of Total Hours submitted), and $16,663.39 in Held Costs, and contributed $43,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $645,788.24[156] (0.0917%), and reimbursement of $16,500 in Held Costs.

**Watts Guerra LLP** – Was appointed to the PSC and provided significant contributions to the Phase One liability effort, including initial written discovery, the Phase One Deposition Team, the Phase One Trial Team, and general Depository support, from the formation of the MDL until shortly before the Phase One Trial in February of 2013.  The firm submitted 18,704.97 Hours (3.3673% of Total Hours submitted), and $143,215.81 in Held Costs.  The firm also contributed $680,000.00 in assessments toward Shared Expenses. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $16,790,494.18[157] (2.3845%), plus reimbursement of $141,000 in Held Costs.[158]

---

[154] Specifically $1,300,000 from the BP Settlement Cost and Fee Fund, $83,464.80 from the State Settlement Cost and Fee Fund, and $295,584.62 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[155] As in our Initial Recommendation, the Fee Committee notes that the firm, on behalf of "Go Fish", submitted an objection to certain aspects of the BP Economic & Property Damages Class Settlement, and attempted to appeal the final approval of same;  yet the Fee Committee has not factored this into its recommendation, and leaves the question of whether and/or how such objection and appeal might or might not affect the allocation or award of common benefit fees to WWG to the judgment and discretion of the Court.  WWG suggests, in its written Objection to the FCC's Initial Recommendation, that WWG's objection to the BP Class Settlement resulted in improvements to the settlement which benefitted the class.  It is the Fee Committee's recollection, however, that Class Counsel and many others were also advocating to the Seafood Neutral that there be no VoO Set-Off within the Seafood Compensation Program, and that Commercial Fishermen were always intended under the Settlement Agreement to be able to make Subsistence and other non-Seafood-related Claims; to the extent that BP might have argued to the contrary, Class Counsel would have certainly advanced that position before the Claims Administrator, (and, since the issue relates to Claims outside of the Seafood Program, this would have been a Claims Administrator determination, not the Seafood Neutral's).   Additionally, and as noted *supra*, it was the perception and recollection of the Fee Committee that, in connection with the Seafood Compensation Fund and Program negotiations in particular, WWG was largely trying to advance the interests of its own clients, with only partial or derivative benefits to the class as a whole.

[156] Specifically $500,000 from the BP Settlement Cost and Fee Fund, $32,101.85 from the State Settlement Cost and Fee Fund, and $113,686.39 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[157] Specifically $13,000,000 from the BP Settlement Cost and Fee Fund, $834,647.98 from the State Settlement Cost and Fee Fund, and $2,955,846.20 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[158] The Fee Committee has not taken into consideration any of the issues raised in BP's Complaint and Motion to Enjoin the Seafood Program [Civil Action No. 2:13-cv-6674].  Whether and/or how such allegations might or might not affect the allocation or award of common benefit fees to Watts Guerra is left to the sound judgment and discretion of the Court.  The Fee Committee does note that Mr. Watts was acquitted by the jury in the criminal trial that was held in the Southern District of Mississippi.

**Weitz & Luxenberg, PC** – Was appointed to the PSC, and made substantial contributions to many facets of the litigation, essentially re-locating to New Orleans from the formation of the MDL until the end of the Phase Two Trial in October of 2013. Mrs. Greenwald served as one of the leaders of the Science Group, a Phase Two Trial Team member, and a negotiator of the Medical Benefits Settlement. The firm also provided support in the Depository, and worked on the VoO Test Cases, Phase Two Discovery, and the "B3" / Nalco / Clean-Up discovery, motions, and PTO 57. Additionally, the firm assisted with pre-trial research and briefing, and also assisted with appeals. The firm also played a major role in Medical Settlement approval, implementation, administration, the post-settlement Chronic SPC dispute, and the BELO CMO. In 2015, Mrs. Greenwald was appointed to the Fee and Cost Committee, and has performed additional services in that capacity. The firm submitted 24,459.49 Hours (including 4.4033% of Total Hours submitted, and 5.17% of total Attorney Hours submitted), and $509,859.28 in Held Costs. The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013. Based on a complete review of the time and expense records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$41,976,235.46</u>[159] (5.9613%), plus reimbursement of the firm's outstanding <u>$100,000</u> in Shared Expense assessments, and reimbursement of <u>$505,000</u> in Held Costs.

**Whitfield, Bryson & Mason** – Provided some initial OPA research and assisted with GCCF supervision. The firm submitted 175.45 Hours (0.0316% of Total Hours submitted), and $1,286.40 in Held Costs, and contributed $60,000.00 in assessments toward Shared Expenses. Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of <u>$51,663.06</u>[160] (0.0073%), and reimbursement of <u>$1,286.40</u> in Held Costs.

**Wiggins, Childs, Quinn, Pantazis, Fisher & Goldfarb LLC**[161] – Submitted 156.5 Hours (0.0282% of Total Hours submitted), and $1,723.10 in Held Costs, primarily related to periodic Depository and discovery deposition support. Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and

---

[159] Specifically $32,500,000 from the BP Settlement Cost and Fee Fund, $2,086,619.95 from the State Settlement Cost and Fee Fund, and $7,389,615.51 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[160] Specifically $40,000 from the BP Settlement Cost and Fee Fund, $2,568.15 from the State Settlement Cost and Fee Fund, and $9,094.91 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[161] Apparently there is some potential dispute as to whether some or all of the common benefit fees requested should be awarded to Wiggins Childs and/or to Mr. Joshua D. Wilson's new law firm, King & Ballow, or some combination thereof. From the Fee Committee's perspective, the FCC reviewed and considered one single body of time submissions, a single Fee Affidavit, and a single Fee Interview. How any fees that might ultimately be awarded are internally distributed between and among the present and/or former Wiggins Child partners and/or other attorneys would seem to be an internal matter between and among them, about which the FCC expresses no opinion.

26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $38,746.29[162] (0.0055%), and reimbursement of $1,723.10 in Held Costs.

**Williams Law Group LLC** – Was appointed to the PSC in 2011, but, shortly after the establishment of the MDL in 2010, had already begun to serve as one of the Co-Coordinators of the Phase One Deposition Team.  Thereafter, the firm continued to assume a substantial role in the discovery, trial preparation, and trial effort, as a member of the Phase One Trial Team.  Mr. Williams was appointed by Co-Liaison Counsel to head up the OPA Test Cases.  The firm provided continuous support within the depository, as well as general PSC duties and overall litigation strategy.  Mr. Williams also participated very briefly in the BP settlement negotiations.  The firm submitted 15,849.70 Hours (2.8533% of Total Hours, including 3.39% of total Attorney Hours, submitted), and $5,063.25 in Held Costs.  The firm had also contributed $680,000.00 in assessments towards Shared Expenses when such expenses started to be reimbursed in early 2013.  The FCC initially recommended an allocation of $28,414,682.47 (4.0354%).  Mr. Williams does not object to the Initial Recommendation, but seeks provisional reconsideration of the firm's recommended allocation in the event that the recommended allocations of other comparable firms are increased.  Based on a complete review of the time records, the Fee Affidavit, the Fee Interview, and the provisional request for reconsideration, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee continues to recommend an allocation of $28,414,682.47[163] (4.0354%), plus reimbursement of the firm's outstanding $100,000 in Shared Expense assessments, and reimbursement of $5,063.25 in Held Costs.

**Williamson & Rusnak** – Primarily served on the Phase One Deposition and Phase One Trial Teams.  The firm also provided general Depository support, assisted with some of the Phase Two theories, and was called upon to fulfill some client-specific related responsibilities with respect to one of the OPA Test Cases.  The firm submitted 9,884.60 Hours (1.7795% of Total Hours submitted), and $202,782.37 in Held Costs. The firm also contributed $315,000.00 in assessments toward Shared Expenses.  Based on a complete review of the time records, the Fee Affidavit, and the Fee Interview, and in light of the factors identified in Paragraphs 10, 15 and 26-28 of Pre-Trial Order No. 59, the Fee Committee recommends an allocation of $12,915,764.76[164] (1.8343%), plus reimbursement of $190,000 in Held Costs.

**Young, Tom - Law Office of** – In the wake of BP's challenges to the settlements based on the "matching" issue and otherwise, Mr. Young was asked to assist in the PSC / Common Benefit public relations and *amicus* support efforts.  Mr. Young estimates that approximately 1,500 such hours were expended between January 2013 and December of 2015;  however, such hours were not contemporaneously maintained, nor timely submitted to Mr. Garrett in accordance with

[162] Specifically $30,000 from the BP Settlement Cost and Fee Fund, $1,926.11 from the State Settlement Cost and Fee Fund, and $6,821.18 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[163] Specifically $22,000,000 from the BP Settlement Cost and Fee Fund, $1,412,481.20 from the State Settlement Cost and Fee Fund, and $5,002,201.27 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[164] Specifically $10,000,000 from the BP Settlement Cost and Fee Fund, $642,036.91 from the State Settlement Cost and Fee Fund, and $2,273,727.85 from the Halliburton/Transocean Settlement Cost and Fee Fund.

Page 47 of 50

Pre-Trial Order No. 9. (Mr. Young attempted to re-create such records, retroactively, after he realized that he had not been complying with PTO 9.) A total of 270.20 contemporaneously recorded hours (0.0486% of the Total Hours submitted) were then timely submitted in 2016, relating primarily to the aggregate settlement allocation of the "assigned" portions of the Halliburton and Transocean Settlements, which inure to the benefit of the BP Economic & Property Damages Class. Initially, based on the hours that were timely submitted, the Fee Committee recommended an allocation of $129,157.65 (0.0183%). The firm filed an objection, primarily urging the FCC to make a provisional recommendation, in the event that the Court might consider his efforts for which time was not contemporaneously submitted. The Fee Committee continues to recommend an allocation of <u>$129,157.65</u>[165] (0.0183%) with respect to the time submitted in accordance with Pre-Trial Order No. 9. With respect to the firm's previous efforts, the Fee Committee does not know whether the Court might consider the value of additional common benefit efforts in the absence of contemporaneously recorded and submitted time records.[166] If, however, the Court were to accept and consider the value of the firm's additional efforts, (divorced from the estimated number of hours themselves), the Fee Committee would recommend an additional allocation of <u>$100,000.</u> The firm contributed no assessments for Shared Expenses, and no Held Costs were submitted.

**Zatzkis McCarthy** – Although initially contributing $43,000 in assessments towards Shared Expenses, the firm submitted no common benefit time in accordance with Pre-Trial Order No. 9, nor Fee Affidavit in accordance with Pre-Trial Order No. 59. The Fee Committee therefore does not recommend any common benefit fee allocation. No Held Costs were submitted.


Respectfully Submitted, this <u>11th</u> day of <u>April</u>, <u>2017</u>, by:

THE COMMON BENEFIT
COST AND FEE COMMITTEE

James Parkerson Roy
Domengeaux Wright Roy & Edwards
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Co-Chair of Fee Committee*

Stephen J. Herman
Herman Herman & Katz LLC

---

[165] Specifically $100,000 from the BP Settlement Cost and Fee Fund, $6,420.37 from the State Settlement Cost and Fee Fund, and $22,737.28 from the Halliburton/Transocean Settlement Cost and Fee Fund.

[166] It is the FCC's recollection, with respect to the hours themselves, that Mr. Young informally sought permission from Judge Shushan to submit these estimated hours beyond the PTO 9 deadlines, and that such request was denied.

820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhklawfirm.com
*Co-Chair of Fee Committee*

Mr. Brian Barr
Levin Papantonio Thomas Mitchell
Raferty & Proctor
316 South Baylen St., Suite 600
Pensacola, FL 32502
Phone: (850) 435-7045
E-mail: bbarr@levinlaw.com
*FCC Member*

Ms. Dawn Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras St, Suite 3650
New Orleans   LA 70139
Phone:  (504) 524-3300
E-mail: barrios@bkc-law.com
*FCC Member*

Mr. Robert Cunningham
Cunningham Bounds LLC
1601 Dauphin St.
Mobile, AL 36604
Phone:  (251) 471-6191
E-mail: RTC@Cunninghambounds.com
*FCC Member*

Mr. Calvin C. Fayard, Jr.
Fayard & Honeycutt, APC
519 Florida Avenue, SW
Denham Springs, LA  70726
Phone: (225) 664-4193
E-mail: calvinfayard@fayardlaw.com
*FCC Member*

Ms. Robin Greenwald
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003

Phone: (212) 558-5802
E-mail: rgreenwald@weitzlux.com
*FCC Member*

                    Arnold Levin
                    Sandra L. Duggan
                    Levin Sedran & Berman
                    510 Walnut Street, Suite 500
                    Philadelphia, Pennsylvania 19106
                    Telephone: (215) 592-1500
                    Fax No. (215) 592-4663
                    E-Mail: sduggan@lfsblaw.com
                    *Special Counsel to the Fee Committee*

## <u>CERTIFICATE OF SERVICE</u>

    **WE HEREBY CERTIFY** that the above and foregoing Recommendation will be submitted to the Special Master, John W. Perry, Jr., and will further be filed into the record *via* the Court's electronic ECF/PACER filing system and provided to all potential Common Benefit Fee Applicants *via* E-Mail, this <u>11th</u> day of <u>April</u>, <u>2017</u>.

                    <u>/s/ Stephen J. Herman and James Parkerson Roy</u>