IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>Applies to:<br><br>ALL CASES IN PLEADING BUNDLE B3 and All Civil Actions, including 2:13-cv-01263, 2:13-cv-1727, 2:12-cv-981, and 2:13-cv-1648 | Civil Action No. 2:10-MD-02179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br><br>MAG. JUDGE WILKINSON<br><br>ORAL ARGUMENT REQUESTED |

## AFFIDAVIT OF SALVADORE CHRISTINA, JR., ESQUIRE

I, Salvadore Christina, Jr., personally appeared before a notary public, and after being sworn, I submit the following:

1. I am an attorney in good standing and admitted in the United States District Court of the Eastern District of Louisiana. I am a member of the Becnel Law Firm, LLC. Our firm Plaintiffs ("Clients") who opted out of the court-supervised settlement programs and filed suit in MDL 2179 for personal injuries resulting from the Deepwater Horizon Oil Spill in the Gulf of Mexico on April 20, 2010 (the "Gulf Oil Spill") and the consequent remedial efforts.

2. At the Class Action Settlement Fairness Hearing that was held on November 8, 2012, it was argued by the Plaintiffs Steering Committee, and acknowledged by the Court, that the Medical Benefits Settlement was not designed for individuals with serious chronic health

conditions caused by the Gulf Oil Spill, and such individuals should opt-out of the class settlement.

3. The vast majority of our Clients were clean-up workers who suffered and continue to suffer from serious, chronic health conditions caused by substantial exposures to toxic chemicals related to the Gulf Oil Spill.

4. This Affidavit is offered in support of a motion to extend the time in which our Clients have to comply with Pretrial Order ("PTO") 63 dated February 22, 2017.

5. It has been nearly seven (7) years since the Gulf Oil Spill disaster. Our Clients' cases were filed four (4) to five (5) years ago, but have been stayed by the Court. We appreciate the Court's recent actions to allow us to begin to pursue the claims of our Clients.

6. Since taking on representation of our Clients, we have worked diligently to gather information related to their cases, maintain contact with the clients, and update their files as necessary.

7. Under the terms of PTO 63, our Clients' cases will be dismissed <u>with prejudice</u> if they do not respond with a completed sworn statement and separately filed lawsuit on or before the April 12, 2017 deadline. This arbitrary deadline threatens the due process rights of many individuals who have met every standard requirement under the Federal Rules of Civil Procedure, in addition to past Court mandated requirements, and have waited patiently for years to pursue their legitimate rights to litigate outside the class settlement.

8. PTO 63 was filed by the Court on February 22, 2017. This was the first time we were advised that a sworn statement would be required in addition to filing individual lawsuits for each of our nearly nine hundred (900) Clients. Respectfully, these new requirements, that exceed what is required by the Federal Rules of Civil Procedures, and the arbitrary deadline, are

unduly burdensome considering the fact that our opt-out cases have been pending for the last four (4) to five (5) years.

9. Coordinating the completion, execution, and return of sworn statements from our Clients is difficult. Although mostly concentrated in the Southeast, our Clients live throughout the United States. When we send documents to our Clients for execution, they typically return those documents by mail. Unfortunately, most of our Clients are economically disadvantaged and do not have access to email. Thus, most of our communication with our Clients is by telephone, U.S. Mail and Federal Express. This process can take several weeks and, in many cases, up to ninety (90) days or more.

10. Additionally, many of our Clients frequently change their location and their residence. Because the status of the B3 Pleading Bundle's claims has remained unchanged for quite a while, our Clients have not always immediately updated us with their new addresses. Often returned mail is the only means alerting us that our Clients' addresses have changed. Typically, returned mail reaches us in approximately thirty (30) days. Many times, after receiving returned mail, we have to search to find family members to assist us in locating our Clients.

11. Although we anticipated being able to meet the April 12, 2017 deadline for many Clients, it appears to us that the deadline cannot be met for all Clients. Strict enforcement of this deadline and dismissing cases with prejudice will be devastating to Clients who have valid claims that were not adequately addressed by the class settlement and have waited years for their cases to become active.

12. A thirty (30) day extension would allow us a more reasonable opportunity to meet the requirements of PTO 63 for all our Clients. Throughout the extension, we would file the

NPCHAR1:1959797.1

required documents as they become available. Upon information and belief, an extension of ninety (90) days would not be prejudicial to Defendants, and would serve the ends of justice.

                                                               Salvadore Christina, Jr.

SWORN to before me,

this 12th day of April, 2017.

Toni Becnel
Notary Public for Louisiana
My commission expires: at Death
425 W. Airline, Suite B
LaPlace, LA 70068