**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | SECTION J |
| | * | |
| *No. 12-970, Bon Secour Fisheries, Inc., et al* | * | HONORABLE CARL J. |
| *v. BP Exploration & Production, Inc., et al* | * | BARBIER |
| | * | |

---

**MEMORANDUM IN SUPPORT OF BOH BROS. CONSTRUCTION COMPANY,
L.L.C.'S MOTION TO CONFIRM ITS SETTLEMENT RIGHTS AS A BEL CLAIMANT
AND CLARIFY, ALTER OR AMEND THE MARCH 17, 2017 ORDER ACCORDINGLY**

**MAY IT PLEASE THE COURT:**

On March 17, 2017, this Honorable Court ordered that any claimant who has received a notice from the Settlement Program that its claim is subject to "Moratoria Hold" shall have the option to opt out of the Settlement and proceed in litigation. As demonstrated herein, Boh Bros. Construction Company, L.L.C. ("Boh Bros.") does not provide "support services to the offshore oil and gas industry" and has been improperly relegated to moratoria hold. Thus, Boh Bros. requests that the Court confirm Boh Bros.' settlement rights as a BEL claimant, and clarify, alter, or amend the March 17, 2017 Order, so as to allow Boh Bros. to proceed with its claim under the Settlement Agreement.

**I.      INTRODUCTION**

On November 7, 2016, Boh Bros. filed a Motion for Aid in Consummation of the Settlement Agreement, requesting the Court's assistance in defining a path forward in light of the moratoria hold. Although the Court did not rule on Boh Bros.' motion, by order dated December 16, 2016, the Court set an in-court status conference for February 17, 2017, to discuss unresolved issues in the Settlement. (R. Doc. 22007). The Court's Agenda for the status conference included Class Counsel's Motion to Authorize Claims Administrator to Implement the Settlement

Agreement with Respect to Oil & Gas Support Services Industry Claims and "Moratoria Loss" Holds / Review, which was filed on August 27, 2013 (Rec. Doc. 11156).

During the status conference on February 17, 2017, the Court noted that there are approximately 700 claims that have been identified as possible moratoria-related claims pending in the Settlement Program. As explained by the Court, these claims "have been kind of in a black hole purgatory … unable to be moved for the last several years[,] largely because … BP believes that the settlement agreement requires that there be an agreement between the parties, between class counsel and BP, as to what the criteria would be to identify whether a claim is or isn't moratoria…. and distinguish between the moratoria part of someone's claim and the non-moratoria part."[1] At the status conference, Class Counsel confirmed that they "had some good discussions with BP in advance of this conference," and could hopefully come to a solution if they had a little more time.[2] Based on the parties representations, the Court allowed BP and Class Counsel 60 days to resolve the issue and "reach some consensus" on how to process claims that include some moratoria losses.[3] Boh Bros. attended the conference, and felt confident that the moratoria hold would be resolved.

On March 17, 2017, the Court issued an Order that states, in pertinent part:

- "IT IS ORDERED that any Claimant who has received a notice from the Settlement Program that his, her, or its claim is subject to a 'Moratoria Hold' and that claim has not been resolved by March 25, 2017, shall have the option to exclude ('Opt Out') that claim from the Settlement Program and proceed in litigation. Claimants who wish to avail themselves of this option must properly complete and submit the attached Opt-Out Form (Exhibit A to this Order) no later than April 24, 2017;"

Boh Bros. and its counsel are not privy to the discussions among Class Counsel, BP, the Claims Administrator, and/or other court-appointed representatives; however, the March 17, 2017 Order

---

[1] *See* Transcript of Status Conference, February 17, 2017, p. 45.
[2] *Id.*
[3] *Id.*

appears inconsistent with the representations made by the parties during the February 17, 2017 status conference.

As a result of the Order, Boh Bros. is unsure of the steps to be taken in order to protect its interests under the Settlement Agreement. Boh Bros. has actively supported and participated in the Settlement process for the past five years.[4] Boh Bros. continues to advocate the Settlement Agreement and the work of the Claims Administrator. Boh Bros. does not provide support services to the oil and gas industry under Exhibit 19, and did not suffer any moratoria losses. Indeed, both the head of the Settlement Program's moratoria review team and the Settlement Program's third party "oil and gas" expert concurred that Boh Bros.' claim does not include moratoria losses and Boh Bros. should be removed from moratoria hold. (*See* Affidavit of Robert S. Boh, attached hereto as Exhibit "A"). Notwithstanding, Boh Bros.' claim remains on moratoria hold.

As demonstrated herein, condemning Boh Bros.' claim to perpetual moratoria purgatory is contrary to the Settlement Agreement, every Policy Decision, all relevant appeal decisions, and contrary to the due process protections afforded to Boh Bros. as a class member under Rule 23 of the Federal Rules of Civil Procedure.

## II.    BOH  BROS.' ROLE IN THE SETTLEMENT PROGRAM

Boh Bros. has, over the last five years, expended extraordinary time, money and resources working with Program Vendors, providing them unfettered and continuous access to company representatives, internal and external accountants, and volumes of highly confidential information (well beyond the parameters of the Settlement Agreement) in a determined effort to facilitate the processing of its Business Economic Loss ("BEL") claim. Boh Bros. worked

---

[4] Counsel for Boh Bros. did not solicit Deepwater Horizon claims; its representation of Boh Bros. in this matter arises out of a historical attorney-client relationship between Boh Bros. and undersigned counsel.

extensively with PwC accountants to facilitate the analysis of its BEL claim under Policy 495 and the Construction Methodology. As noted by the Claims Administrator, the analysis of Boh Bros.' claim under Policy 495 "was a massive undertaking across every facet of the Settlement Program." In November 2015, PwC advised that they were "very close to finishing" the analysis of Boh Bros.' claim. Then in December 2015, the Claims Administrator advised that Boh Bros.' claim was "on moratoria hold" because of three (3) *de minimis* tasks comprising .018% (or less than two-one hundredths of a percent) of Boh Bros.' total revenue in the benchmark years. Although Boh Bros. disputes that such *de minimis* work is a basis for "moratoria hold" (none of the work was offshore, or oil and gas/moratoria related), Boh Bros. suggested an easy solution: just back out the *de minimis* revenue. On October 30, 2016, the Claims Administrator advised that the Settlement Program cannot finalize Boh Bros.' BEL claim until "BP agrees" on a "procedure" for backing out this *de minimis* revenue. The particular facts surrounding the processing of Boh Bros.' BEL claim are outlined in the Affidavit of Robert S. Boh, President of Boh Bros., attached hereto as Exhibit "A."

Beginning in 2012, Boh Bros. submitted extensive source documentation and confidential project files to the Settlement Program, and provided continuous access to management, accountants and lawyers in order to facilitate the processing of its BEL claim. In January, 2013, the Settlement Program asked for confidential files (including contract files/ledgers detailing customer, project and revenues for each year 2008-2011) to confirm what Boh Bros. had already attested to, *i.e.*, that Boh Bros. is not a Department of Defense ("DOD") contractor (*i.e.* less than 50% of claimants 2010 annual revenue is from DOD contracts). Boh Bros. complied and the Program Vendors concurred that Boh Bros. is a "Highway, Bridges and Distribution Line" contractor, not a DOD contractor. The Settlement Program then announced

that because Boh Bros.' website had a picture of a boat (related to <u>bridge</u> repair of the Twin Span post-Katrina), Boh Bros.' claim was sent to review for "potential moratoria loss," notwithstanding:

    i.    Boh Bros.' NAICS code is <u>not</u> marked by an "x" in Exhibit 19 to the Settlement Agreement (regarding "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses");

    ii.    Exhibit 19 to the Settlement Agreement, expressly <u>excludes</u> from moratoria review the claims of companies such as Boh Bros., who are "Roadway, Highways, Bridges and Distribution Line Contractors";

    iii.    In its claim form, Boh Bros. answered "No" to Question 10, attesting, under oath, that Boh Bros. did **not** provide significant services to the oil and gas industry in the Gulf of Mexico in 2009.

Boh Bros. then produced more highly confidential customer files and affidavits, and provided unrestrained access to management, accountants and lawyers, demonstrating that Boh Bros. is not an industry type subject to moratoria review. The Settlement Program finally removed Boh Bros. from moratoria purgatory in May 2013. This decision was confirmed by the Settlement Program's lead accountant in charge of "moratoria review."

Seemingly satisfied with Boh Bros.' eligibility, the Settlement Program spent two years analyzing documents to "match revenue to expenses." In July, 2014, the Settlement Program advised that Boh Bros.' claim was in accounting review under Policy 495 to determine if there were any unresolved matching issues. As noted by the Claims Administrator, "substantial effort was required to implement the methodologies. This effort was a massive undertaking and required the cooperation and collaboration of every vendor across every facet of the Program." Notwithstanding the magnitude of time and resources, Boh Bros. participated in good faith and honored each request to facilitate the Policy 495 and construction methodology analysis. On

November 15, 2015, PwC advised Boh Bros. that the accountant in charge of calculating Boh Bros.' claim was "very close to finishing."

In December, 2015, the Claims Administrator asked about 3 *de minimis* tasks because of a "keyword" search performed by unidentified members of a new "moratoria team." These 3 tasks were all land based and clearly not oil and gas related. Nevertheless, Boh Bros. spent the next four months meeting with the Claims Administrator, Vendors, and consultants, and providing every scrap of paper and information on these 3 *de minimis* tasks. As the record shows, one Bisso "engagement" comprised less than .009% of the total yearly revenue for 2008 and less than .0005% of the total yearly revenue for 2009; one New Industries task comprised less than .0330% of the total yearly revenue for 2008; and one Versabar task comprised less than .008% of the total yearly revenue in 2009. All of the work was *de minimis*/infinitesimal, and the work to complete each task took less than a couple of days. The sum of the three tasks comprises less than .018% - **or less than two-one hundredths of a percent** of total revenue for the benchmark years (or about as close to ***ZERO*** as you can get).

On February 26, 2016, the Claims Administrator advised that, although Boh Bros. clearly had compensable BEL losses, the Settlement Agreement would keep Boh Bros.' Claim on moratoria hold until BP agrees on how to analyze claims determined to contain potential moratoria losses, no matter how *de minimis* the pennies. As explained by the Claims Administrator's Office, this decision was based on the Settlement Program's conclusion that the revenue related to the three *de minimis* tasks was "derived from customers that appear to be engaged in moratoria-related projects associated with offshore oil and gas drilling in the Gulf of Mexico."

## III.   BP'S EFFORTS TO USURP THE ROLE OF THE CLAIMS ADMINISTRATOR

Since the inception of the Settlement Agreement, BP has vigorously fought to alter the negotiated terms of the Settlement Agreement and impose heightened burdens and restrictions on claimants seeking to recover just compensation for their losses. With the implementation of Policy 495, for example, thousands of legitimate claimants were denied eligibility under a Settlement Agreement, which (as negotiated) provided no terms or conditions that allowed for the smoothing of revenue. Now, BP has adopted an equally effective strategy to deprive claimants of just compensation by simply refusing to allow the processing of claims that have any "indicia" of *potential* moratoria loss (no matter how *de minimis*), and refusing to implement the moratoria provisions of the Settlement Agreement as negotiated, written, and agreed upon. Contrary to the Settlement Agreement, and at the direction of BP, claims with little to no moratoria loss have been relegated to "moratoria hold," where they remain, unprocessed, for an indefinite period of time, unless and until BP agrees to a protocol for processing claims with moratoria loss.[5]

The scales of justice are far from balanced with respect to the perpetual moratoria hold, which has been unfairly imposed on good faith claimants such as Boh Bros. On one side of the equation, claimants relegated to moratoria hold are stripped of their right to have their BEL claims processed (at the eleventh hour), after having already invested tremendous time and expense pursuing their claims under the ever-changing landscape of the Settlement Agreement. On the other side of the equation, BP is reaping enormous benefits from its refusal to agree on a protocol for processing claims with potential moratoria loss -- effectively avoiding the payment

---

[5] Notably, BP had no problem agreeing to a protocol (over the objection of Class Counsel), which was financially beneficial to BP (*i.e.*, Policy 495). BP spearheaded and relentlessly pursued the matching protocol of Policy 495, which operates to dramatically reduce the number of claimants who are able to satisfy causation under the Settlement Agreement, and significantly diminishes the compensation awards to eligible claimants.

of legitimate claims by simply denying the discernible terms of the Settlement Agreement (which BP has repeatedly touted as "claimant-friendly").

Magnifying the injustice to claimants, BP has compelled the Settlement Program to expand the parameters of moratoria review beyond the express limitations set in Settlement Agreement. Whereas the Settlement Agreement clearly restricts moratoria review to "Support Services to Oil and Gas Industry" (and more specifically, those claimants who performed "significant" services to the offshore oil and gas industry in 2009), BP contends that all claimants with any *undefined* "indicia" of "potential moratoria loss" (no matter how *de minimis*) are subject to moratoria hold. By unlawfully expanding the parameters of moratoria review, BP has diverted hundreds of claims, **not subject to moratoria review under the Settlement Agreement**, to perpetual moratoria hold -- where claims are neither processed by the Claims Administrator, nor paid by BP.

Despite Class Counsel's efforts to oppose BP's improper expansion of moratoria review, BP has strong-armed its way to a claims-processing embargo for all claims with any "indicia" of potential moratoria loss.[6] As a result, Boh Bros. -- whose *potential* moratoria losses comprise .018% (or **less than two-one hundredths of a percent**) of its revenue in the benchmark years -- is nevertheless trapped in moratoria hold, where Boh Bros. has no access to the appellate process and no ability to challenge the improper application of the Settlement Agreement terms and conditions.

---

[6] Arguably, any claimant in Southeast Louisiana could have an "indicia" of "*potential* moratoria loss." That is precisely why the Settlement Agreement strictly limits moratoria review to claimants identified as "support services to the oil and gas industry" under Exhibit 19, who provided "significant" services to the oil and gas industry in 2009. Question 10 in the BEL claim form provides, "[t]he Claims Administrator considers that an entity provided 'significant' services, goods, and/or supplies to businesses in the offshore oil and gas industry in the Gulf of Mexico in 2009 if 33% or more of its 2009 net revenue was derived from such activities."

Without oversight or consequence, BP has deprived Boh Bros. of its rights under the Settlement Agreement. In particular, Section 4.4.9 of the Settlement Agreement guarantees that "there will be no negative inference or presumption of any kind as to the eligibility or right of any Economic Class Member to receive a Settlement Payment under the terms of the Settlement Agreement."[7] Section 6.1 guarantees that each Claimant will have "up to three opportunities, depending on the circumstances, to have their Claims reconsidered and reviewed to assure accuracy, transparency, independence, and adherence by the Settlement Program to the terms of the Settlement Agreement."[8] And Section 4.4.7 guarantees that "the criteria, documentation, proof, and Compensation Amount provisions of each of the Claims categories shall apply equally to all Claimants."[9] The record demonstrates that BP will continue to put up roadblocks and perpetuate the moratoria hold for financial gain, regardless of the resulting inequities to good faith claimants like Boh Bros.

While Boh Bros. appreciates the Court's attempt to balance the scales of justice, the opt-out alternative provided in the Court's March 17, 2017 Order is not a viable option for Boh Bros. Boh Bros.' claim is pursuant to (not outside) the Settlement Agreement. Boh Bros. has already invested **extraordinary** time, expense, and resources to facilitate its claim under the Settlement Agreement. As an advocate of the Settlement, Boh Bros. has navigated the ever changing landscape of the Settlement Agreement and actively participated in the claims process for five years. On November 15, 2015, PwC advised Boh Bros. that the accountant in charge of calculating Boh Bros.' claim was "very close to finishing" the analysis of Boh Bros.' claim

---

[7] Boh Bros. is clearly the recipient of negative inferences (in violation of Section 4.4.9), given that its moratoria hold is based solely on the determination that its customers for three *de minimis* tasks "appear to be engaged in moratoria-related projects associated with offshore oil and gas drilling in the Gulf of Mexico."

[8] Boh Bros. has been denied *any* opportunity for reconsideration or review of its moratoria hold, notwithstanding the guarantees in Section 6.1 of the Settlement Agreement.

[9] Numerous appeal decisions reject BP's contention that moratoria review is warranted "just because a company has some customers in oil and gas" (*see e.g.*, Appeal Panel Decision 2016-192) -- demonstrating that the criteria has not be equally applied to Boh Bros., in violation of Section 4.4.7.

(including an extensive Policy 495 analysis under the Construction Methodology). Boh Bros. is at the finish line -- held up only by its improper relegation to moratoria hold. Under these facts, the opt-out alternative is highly prejudicial to Boh Bros., while *beneficial* to BP (who caused the Deepwater Horizon explosion).

As a party disadvantaged by the apparent unequal bargaining power afforded to claimants in this Settlement, and directly aggrieved by BP's unlawful expansion of the moratoria review criteria, Boh Bros. respectfully requests the Court's assistance in enforcing the terms of the Settlement Agreement, extricating Boh Bros. from perpetual moratoria hold, and directing the Settlement Program to complete the processing of Boh Bros.' claim.

## IV.    MISAPPLICATION OF THE SETTLEMENT AGREEMENT TO BOH BROS.

### A.  Boh Bros. Does Not Provide "Support Services to Oil and Gas Industry" and is Excluded From Moratoria Review Under The Settlement Agreement.

The specific facts surrounding Boh Bros.' BEL claim demonstrate, beyond any doubt, that Boh Bros. has been improperly relegated to moratoria hold. Moratoria review is expressly restricted under the Settlement Agreement to those claimants identified as "Support Services to Oil and Gas Industry" under Section 5.10, Exhibit 16, and Exhibit 19 to the Settlement Agreement. As per Section 5.10.3 of the Settlement Agreement (regarding "Support Services to the Oil and Gas Industry"), only businesses with an NAICS Code specifically marked in Exhibit 19 are subject to moratoria review. Section 5.10.3.1.1 provides that businesses with an NAICS code identified in Section I of Exhibit 19 are subject to *mandatory* moratoria review. Section 5.10.3.1.2 provides that businesses with an NAICS code identified in Section II of Exhibit 19 are subject to the following question: "[i]n 2009, did your business provide significant services, goods, and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico?" Section 5.10.3.1.2 further provides: "**[i]f the Claimant responds negatively, its Claim shall**

10

**proceed under the Economic Damage Claim Process.**" These provisions are not subject to interpretation, negotiation, or dispute; they are unequivocal. BP agreed to these terms, and BP (and the Settlement Program) are bound to enforce these provisions as written.

As referenced in Section 5.10.3, Exhibit 19 provides a list of "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses." Exhibit 19 is split into two sections: Section I identifies (by NAICS Code) those "Industry Types Subject to Automatic Review by Claims Administrator for Potential Moratoria Losses." Significantly, **Section I expressly excludes from moratoria review the claims of companies such as Boh Bros., who are engaged in "highway, street, bridge and distribution line construction."** Section II identifies (by NAICS Code) those "Industry Types Subject to Question Regarding Support Services to Oil & Gas Industry and Possible Review by Claims Administrator for Potential Moratoria Losses." Section II provides:

> "For businesses the Claims Administrator determines fall within the following codes and description marked with an 'x,' claimant must submit a sworn claim form answering this question: 'In 2009, did your business provide significant services, goods, and/or supplies to the offshore oil and gas industry in the Gulf of Mexico?'"

Question 10 on the BEL Claim Form poses the above referenced question, and provides the following definition of "significant" as used therein:

> "The Claims Administrator considers that **an entity provided 'significant' services, goods, and/or supplies** to businesses in the offshore oil and gas industry in the Gulf of Mexico in 2009 **_if 33% or more of its 2009 net revenue was derived from such activities_**."

Approved Policy 304 (regarding "Moratoria Losses: Implementing Section II of Exhibit 19") mirrors the definition of "significant" provided in Question 10 of the BEL Claim Form, and provides, in pertinent part:

"Pursuant to Section II of Exhibit 19, Business Economic Loss claimants with a NAICS Code and business activities marked with an "X" in Section II of Exhibit 19 must answer the following question: "In 2009, did your business provide significant services, goods, and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico?.... To capture this information, the Claims Administrator asks Business Economic Loss claimants this question in each Claim Form…. If the business or employer responds negatively, the claim proceeds under normal processing, without analysis for potential moratoria losses. The Claims Administrator will advise claimants that the Claims Administrator considers that **an entity provided "significant" services**, goods, and/or supplies to businesses in the offshore oil and gas industry in the Gulf of Mexico in 2009 **if 33.00% or more of its 2009 net revenue was derived from such activities**. Subject to the analysis of claims to prevent fraud, **the Claims Administrator will observe the claimant's Claim Form answer to this question and will not independently determine whether the entity provided "significant" services, goods, and/or supplies to businesses in the offshore oil and gas industry in the Gulf of Mexico in 2009**."[10]

Boh Bros.' NAICS Code, which is 234100 for "Highway, Street, Bridge, and Tunnel Construction," is not listed anywhere on Exhibit 19, neither in Section I (regarding mandatory moratoria review), nor Section II (regarding potential moratoria review). In addition, Boh Bros. responded negatively to Question 10 on the BEL claim form, attesting that it did not provide significant services to the oil and gas industry in 2009. Consequently, Boh Bros. is not properly classified as "Support Services to Oil and Gas Industry" under Section 5.10.3, and is not subject to moratoria review. As **required** under Section 5.10.3.1.2, Boh Bros.' claim *should* have proceeded under the Economic Damage Claim Process based on its negative response to Question 10. Instead, Boh Bros.' claim was referred to moratoria review, in violation of the Settlement Agreement.

By unilaterally thwarting the claims process, disregarding the express terms of the Settlement Agreement in Section 5.3.10 and Exhibit 19, and improperly relegating claims with any "indicia" of "potential moratoria losses" to moratoria hold, BP has breached the clear terms of the Settlement Agreement and deprived Boh Bros. of due process of the law.

---

[10] *See* Approved Policy 304.

12

**B. Placing Boh Bros.' Claim On Perpetual Moratoria Hold Pending An "Agreement By BP" Is Inconsistent With All Relevant Appeal Panel Decisions, Decisions of This Court, and the Fifth Circuit Court of Appeal and Contrary to the Principles of Due Process.**

Appeal panels and the court have consistently upheld awards to claimants with far more "connexity" to "oil and gas/moratoria" than Boh Bros. In **Discretionary Court Review 2016-842** (October 12, 2016), this Court reversed the unanimous finding of the Appeal Panel that claimant was an excluded member of the Oil and Gas Industry, where the claimant's parent company was an "cradle to the grave oil company, which engaged in a full array of operations beginning with exploration and extraction and ending with the retail sale of fuel." Three additional facts stand out in this appeal: (1) the claimant, on its federal tax returns, selected an NAICS Code (for "petroleum refineries") that is expressly excluded from the Settlement under Exhibit 17; (2) the claimant admittedly engaged in some excluded oil and gas activity, including the wholesale distribution of gasoline to third-parties and the operation of two refineries; and (3) the claimant could only attribute 60% of its revenue to non-excluded retail activity.

In reinstating the Claim Administrator's determination that the claimant was not an excluded oil and gas business, the Court disregarded the NAICS Code selected by the claimant for its tax returns, reasoning:

> "[W]hether or not [the claimant] is excluded from the Settlement turns on what NAICS code best describes the **primary** nature of [the claimant's] business." (emphasis added by the Court).

As noted by the Court, "the NAICS Code most appropriately assigned to this business is 447110, 'Gasoline Stations with Convenience Stores....'" Strictly construing the language in Exhibit 17, the Court held that "[b]ecause NAICS code 447110 is not listed in Exhibit 17, claimant [     ] is not excluded from the Settlement."

By way of contrast, Boh Bros. -- whose exclusive business ("Highway, Road, Bridge, and Distribution Line Construction") is expressly excluded from moratoria review under Exhibit 19 -- is trapped in perpetual moratoria. Boh Bros.' predicament is entirely inconsistent with the Court's ruling in Appeal 2016-842. First and foremost, the claimant in Appeal 2016-842 was allowed to pursue its BEL claim under the Settlement, even though it admittedly engaged in excluded oil and gas activities, and attributed 40% of its revenue to same. Boh Bros., on the other hand, has been prevented from pursuing its BEL claim because of *potential* (not actual) moratoria losses, which total .018% (less than two one-hundredths of a percent) of its total revenue for the benchmark years. Moreover, while the Court strictly construed Exhibit 17 in Appeal 2016-842, to apply only to those businesses with an NAICS code specifically identified therein, BP misinterprets Exhibit 19 in this matter to extend the parameters of moratoria review beyond the NAICS codes identified in Exhibit 19. While the claimant in Appeal 2016-842 was afforded the right of appeal to ensure adherence to the Settlement Agreement, Boh Bros. (who was wrongfully condemned to moratoria hold) has been stripped of its right to appeal, and left with no recourse.

In **Appeal 2016-192**, the appeal panel found "no basis for a Moratoria review," despite the facts that (1) claimant (a metal fabricator) is "located in a major center for Oil and Gas exploration activity;" (2) some of claimant's products are "used in the petrochemical and petroleum industries;" and (3) claimant "acknowledges that it has customers in the Oil and Gas Industry." As succinctly stated by the panel:

> **"Just because a company has some customers in oil and gas does not make it a member of the industry.** To rule otherwise would lead to absurd results. Otherwise, every widget manufacturer that sells some of its products to an oil company would be a member of the oil and gas industry. This result was surely not intended by the Settlement Agreement."

*See also*:

**Appeal 2017-164**. "[T]his Panel rejects the notion that a claimant's customer list determines a claimant's primary business activity. To rule otherwise would lead to incongruous results. For instance, a catering company whose customer list includes primarily off shore drilling companies is engaged in the catering business, not the oil and gas business."

**Appeal 2015-731**. Panel strictly construed Exhibit 17 and upheld an award to claimant, who "purchases fuel from third parties, loads the fuel into pumper trucks, then delivers and sells the fuel dockside to boats and marinas (among other customers)." Because claimant's NAICS Code was not identified in Exhibit 17, Claimant was not an excluded entity.

**Appeal 2014-828**. Panel rejected BP's arguments that a chemical company, which "services customers in the oil and gas industry," is excluded under Exhibit 17 and/or subject to moratoria review. Noting that claimant's NAICS Code is not listed in Exhibit 17, the panel affirmed the award to claimant, even though claimant was a division of a company that has "interests" in oil and gas wells and is "affiliated" with an oil field.

**Appeal 2015-482**. Panel rejected BP's argument that a manufacturer of noise pollution barriers is subject to moratoria review based on web information, which "indicates that Claimant is deeply imbedded in the offshore drilling industry." In upholding the award to claimant, the panel reasoned that claimant's "overall activities are not significantly involved in the offshore drilling industry under Ex. 16 and 19 and Policy 302."

**Appeal 2015-675**. Claimant owns forty-two gas stations. The task is to examine the claimant's primary business activities; if the code appears on Exhibit 17, the claim is excluded; if not, the claim is eligible.

**Appeal 2014-748**. Panel rejected BP's contention that moratoria review should have been performed, where claimant's website indicated that it "sells construction and mining machinery and equipment to oil and gas companies." Even though claimant's customers include those involved in the oil and gas industry, the NAICS code assigned claimant is not one of those listed in Exhibit 17 or 19 of the Settlement Agreement, and BP made no showing that the claimant's primary business was related to oil and gas.

**Appeal 2015-1748**. "The mere fact that [a claimant] might sell a junction box or control panel to a company that has oil and gas operations does not automatically constitute it a member of the Oil and Gas Industry."

**Appeal 2014-762**. Although "[t]here is no question that some of the Claimant's customers are in the Oil & Gas industry," the panel found "no merit to BP's assertion that Claimant's losses are moratoria-related." The panel analogized the claim of this Houma, LA machine shop to other retailers who sell to offshore oil and gas companies, stating: "For example, a food distributor who supplies groceries to offshore oil and gas companies is not in the oil and gas industry. A uniform company who supplies uniforms to offshore oil and gas companies is not in the oil and gas industry."

**Appeal 2015-421**. Panel rejected BP's contention that claimant's work is moratoria-related, where the claimant has an offshore business (in addition to an onshore business), which "sells everything from advanced fire and gas detection to fire suppression systems." In affirming the award to claimant, the panel reasoned, "[t]he proof presented is more akin to some of [claimant's] sales are to corporations with NAICS codes that are excluded. This type of proof is one step shy of what is needed.");

**Appeal 2015-1040**. Claimant is a fire safety and equipment company with customers in the mining, food services, construction and chemical industries in addition to oil and gas customers. Claimant's NAICS code is not listed in Exhibit 17. Some, but not all, of claimant's customers are themselves members of the oil and gas industry. There is nothing in the Settlement Agreement that would impute the oil and gas industry exclusion to claimants who sell products or provide services to excluded entities. Further, even though claimant had made statements to a federal agency that losses suffered by employees resulted from the moratoria, claimant's NAICS code is not listed on Exhibit 19; so a moratoria evaluation was unnecessary.

**Appeal 2015-1729**. Claimant is a contractor who performs welding services. From 2008-2010, claimant derived an average of 90% of its revenues performing welding services for oil and gas business. The panel concluded claimant's primary business based on its NAICS code is not oil and gas. The focus is on the claimant's business, not its customer base or revenue source.

**Appeal 2015-1667**. Panel rejected BP's allegations of potential moratoria losses, where the claimant's NAICS code was not listed in Exhibit 19 and claimant did not answer Question 10 on the Claim Form, regarding "significant" services to the offshore oil and gas industry. In affirming the award to the claimant, the panel stated: "Claimant does not operate in the Gulf of Mexico. It performs services only on inland waterways…Section 38.93 requires a moratoria review only for losses related to 'offshore oil industry activity.'"

**Appeal 2015-291**. Panel found that "the Moratoria restrictions in the Settlement Agreement do not apply to this Claimant," based on the facts that (1) claimant's NAICS code (for hydraulic cylinder manufacturing) is not listed in Exhibit 19, Section I or II, and (2) claimant attested in its Claim Form that "it did not provide significant services, goods and/or supplies to businesses in the Gulf of Mexico in 2009."

**Appeal 2015-525**. Panel rejected BP's contention that a pipe wholesale supplier is subject to moratoria review based on its website, which includes buzz words such as "Petrochemical Industry" and "Marine and Barge Industry." In support of its ruling, the panel noted that claimant's NAICS code is not listed among the industry types enumerated in Exhibit 19, Section I or Section II. Furthermore, "there is no evidence in the record that would suggest that the Claimant provided significant services, goods and/or supplies to any business in the offshore, oil and gas industry in 2009."

**Appeal 2015-538**. Claimant is contracted by oil and gas companies to negotiate the purchase of oil and gas leases. Since claimant's business was primary onshore, there is no moratoria loss.

**Appeal 2016-646**. Claimant is a distribution center for a producer of gas and fluid system components for various industries. The record shows no significant revenues were received from the oil and gas industry during 2009.

**Appeal 2015-1029**. Claimant is a fabricator of piping, heat, exchanges, and pressure vessels. Claimant's code is not excluded or marked by x on Exhibit 19. No moratoria analysis is necessary.

**Appeal 2015-1122**. Claimant is in business of "Sales and Services – Steel Fabrication". Claimant's NAICS code is not listed in Exhibit 17. Although claimant may fabricate produces for potential use in the oil and gas industry, claimant's primary business is not excluded.

**Appeal 2015-1150**. Claimant conducts training in various industries, including the oil and gas industry. The claim form in the GCCF program represents its business as "training oil field workers" and several of its customers engage in the oil and gas industry. Program vendors fully investigated claimant's activities and revenue vis-à-vis potential offshore involvement and the award is not impacted by moratoria losses.

**Appeal 2015-1335**. Claimant is a Rayne, Louisiana lessor/seller of blast-resistant buildings to the "offshore sector." Claimant mainly sold to land-based operations. No moratoria analysis is necessary.

**Appeal 2015-1420**. Claimant's clients were severely impacted by the oil spill and moratorium; work forces were reduced. Claimant, however, had no direct connection to the oil and gas industry. There is simply an insufficient nexus to the oil and gas industry to trigger a non-mandatory analysis. To hold otherwise would require such an analysis for other businesses with no connection to the oil and gas industry. Nothing in the Settlement Agreement would require this degree of moratoria analysis. BP's argument for expansion of the moratoria loss is rejected.

**Appeal 2015-1453**. Claimant is a sand and limestone business in Amelia, Louisiana. Claimant admits that some of its 2009 revenue is derived from provision of services, goods and/or supplies to businesses in the oil and gas industry. BP argues that such revenues should be removed from the compensation schedule. Claimant's industry is not marked in Exhibit 19 for automatic moratoria review. The Settlement Agreement does not define the terms "caused by" or "resulting from" moratoria loss. However, Section 38.93 is clear that moratoria losses requiring exclusions are those resulting from the federal moratorium on drilling that occurred in May 2010. In other words, only those incurred in 2010 are excluded.

**Appeal 2015-1474**. Claimant manufacturers safety harnesses and fire protection products; some items are for potential use in the oil and gas industry. Claimant's NAICS code is not listed on Exhibit 19 pertaining to moratoria losses. Claimant did not provide significant services, goods or supplies to any business in the offshore, oil and gas industry in 2009.

**2016-1236**. Claimant is a steel fabrication company and manufacturer's pipe racks, structures and buildings at four oil refinery facilities. The claimant is not the onsite contractor for the refinery, and therefore, not primarily engaged in the oil and gas industry. A review of customer

lists evidences the company services a broad of industries and is not primarily engaged in the oil and gas industry.

*See also*, **Appeal 2016-1336**; **Appeal 2016-135**.

All of these decisions confirm that the proper focus is on the claimant's business, ***not*** its customers or revenues. Nevertheless, Boh Bros. is on moratoria hold because its revenue from three *de minimis* tasks was purportedly "derived from customers that appear to be engaged in moratoria-related projects associated with offshore oil and gas drilling in the Gulf of Mexico."[11] This focus on Boh Bros.' customers (as opposed to Boh Bros.' business and the actual nature of the *de minimis* tasks) is inconsistent with all relevant appeal decisions. Moreover, it is inconsistent with the due process protections afforded to class members under F.R.C.P. 23, which guarantee that similarly situated claimants be treated equally under the Settlement Agreement.[12]

## V.    CONCLUSION

Boh Bros. is in a uniquely unfair predicament with respect to the Court's March 17, 2017 Order. Boh Bros. is **not** classified as a "support service to the oil and gas industry" under the Settlement Agreement; Boh Bros. has no moratoria losses, and the moratoria review team has concluded that the only indicia of *potential* moratoria loss comprises less than two-one hundredths of a percent of Boh Bros.' total revenue for the benchmark years. The Settlement Program could easily back out the revenue associated with the *potential* moratoria loss; it is *de minimis* and has no conceivable effect on causation and/or compensation. For the high level PwC forensic accountants who devised policy 495 (and its related methodologies) and analyzed Boh Bros.' claim for the past five years, this would be a mundane task in comparison to the analysis

---

[11] See Affidavit of Robert S. Boh, Exhibit "A," ¶ 27.

[12] As previously noted, Section 4.4.7 of the Settlement Agreement also guarantees that "the criteria, documentation, proof, and Compensation Amount provisions of each of the Claims categories shall apply equally to all Claimants."

already undertaken. However, the Settlement Program has advised Boh Bros. that the Settlement Program will not finalize Boh Bros.' claim until "BP and the PSC" agree.

These actions have landed Boh Bros. in a conundrum never envisioned by the Settlement Agreement. Unable to appeal its improper moratoria designation and unable to pursue its undisputed, *non*-moratoria losses under the Settlement Agreement, Boh Bros. is powerless to enforce its rights under the Settlement Agreement. Boh Bros. filed its claim in good faith to protect its rights, and continues to advocate the Settlement Agreement. To date, Boh Bros. has expended considerable time, money, and resources pursuing its rights under the Settlement Agreement, while assuming all of the risks, costs, and uncertainties of an ever changing process. Yet still, Boh Bros. is no more certain of *how, when* or *if* its claim will be processed.

Boh Bros. recognizes the value of the Settlement. More importantly, Boh Bros. has tried, at its expense, to navigate the Kafkaesque legal landscape of the Settlement Agreement. Boh Bros. also recognizes that it is not feasible for the Court to act as an arbitrator of each individual claim. The consideration and evaluation of individual claims is rightfully the province of the Claims Administrator, the Court-appointed Vendors and the Appeal Panel.[13] However, the Claims Administrator has taken the position that it will not proceed with Boh Bros.' claim unless BP approves. This position allows BP to effectively usurp the authority of the Claims Administrator, his Vendors and the Appeal Panel, and thwarts fair and consistent administration of the Settlement Program.

Section 36, "Applicable Law" of the Settlement Agreement provides that the Agreement be interpreted in accordance with general maritime law. Maritime law is firmly grounded in principles of equity. Under maritime law, a court may adapt rules to the equities of a particular

---

[13] *See* Rules Governing Discretionary Court Review of Appeal Determinations, Rule 4.

situation.[14] The processing of this BEL claim has gone astray in a way not envisioned by the parties and contrary to principles of equity and fairness and to the Appeal Panel Decisions.  Boh Bros. seeks the Court's intervention to assure a fair resolution in harmony with rules of justice, expressed rules of procedure, the Settlement Agreement and appeal decisions.

For the reasons set forth herein, Boh Bros. requests this Court to confirm Boh Bros.' settlement rights as a BEL claimant, and clarify, alter, or amend the March 17, 2017 Order, so as to allow Boh Bros. to proceed with its claim under the Settlement Agreement. Boh Bros. has advised the parties that it is willing to engage in good faith settlement discussions within the parameters of the Settlement Agreement to resolve its BEL claim. In this regard, Boh Bros. is willing to participate in private mediation and advises that John Perry, Esq. of Perry Dampf Dispute Solutions (who is familiar with the Settlement Program) is available to assist with mediation.

Respectfully Submitted,

**KINGSMILL RIESS, L.L.C.**

By: *s/ Marguerite K. Kingsmill*
   Marguerite K. Kingsmill (#7347)
   201 St. Charles Avenue, Suite 3300
   New Orleans, Louisiana 70170-3300
   Telephone: (504) 581-3300
   Facsimile:  (504)581-3310

   ***Attorney for Boh Bros. Construction Co., L.L.C.***

---

[14] As Justice John R. Brown wrote, "The Chancellor is no longer fixed to the woolsack.  He may stride the quarter-deck of maritime jurisprudence and, in the role of admiralty judge, dispense, as would his landlocked brother, that which equity and good conscience impels. ***Compania Anonima Venezolana De Navigacion v. A. J. Perez Export Company*** 303 F.2d 692, 699 (5th Cir., 1962); ***Smith v. Seaport Marine, Inc.,*** 981 F. Supp. 2d 1188 (S.D. Ala. 2013).

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that the above and foregoing Memorandum has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and/or by electronically serving all liaison counsel by e-mail, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of April, 2017.

*s/ Marguerite K. Kingsmill*