EXHIBIT A

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>Civil Action No. 10-MD-2179-CJB-SS |||||
|---|---|---|---|---|
| SWORN STATEMENT REGARDING GENERAL MARITIME LAW CLAIMS (B1 CLAIMS) |||||
| Last Name | First Name || Middle Name/Maiden | Suffix |
| Business Name<br>GRUPO TURISTICO TAHAULIPAS S.A. DE C.V. |||Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff)||
| MDL 2179 Member Case Number<br>11-00318<br>11-01055 |||Attorney Name and Firm<br>ENRIQUE G. SERNA<br>SERNA & ASSOCIATES PLLC||

Did you own or otherwise hold a proprietary interest* in property that was physically damaged by oil from the *Deepwater Horizon* or Macondo well or by the spill response?

☒ Yes  ☐ No  If yes: 4,130.8 ACRES.

Identify the nature and location of the property: BEACH FRONT, LAGOON, WETLANDS ADJACENT TO GULF ON MEXICO. SEE ATTACHED DECLARATION.

Identify the nature of the alleged damage: CLEAN UP DAMAGE. ENVIRONMENTAL IMPACT DAMAGE. LONG TERM VIABILITY DAMAGE TO 4,130.8 ACRES.

Identify the date(s) of the alleged damage:
NOV/ DEC 2010 TO PRESENT.

\* As a general rule, you held a proprietary interest in property if you owned it or had actual possession or control of the property.

Did you work as a commercial fisherman in or near the Gulf of Mexico on or after April 20, 2010?

☐ Yes  ☐ No  If yes:

Identify the dates on which you worked as a commercial fisherman: _____

Identify the employer(s) (if any) for which you worked as a commercial fisherman: _____

Identify the location(s) in which you worked as a commercial fisherman: _____

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: APRIL 5, 2017

Location (City and State): SOTO LA MARINA, TAMAULIPAS, MEXICO

_____
Signature of Plaintiff (Plaintiff's Attorney *Cannot* Sign on Plaintiff's Behalf)

GABRIEL MALDONADO PUMAREJO
Print Name

The service of this sworn statement and supporting information pursuant to this Order must be on both Counsel for BP and the PSC on or before April 5, 2017. Service can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steven J. Herman |
| Kirkland & Ellis LLP | Herman, Herman, Katz & Cotlar, LLP |
| 300 North LaSalle St, | 820 O'Keefe Avenue |
| Suite 2400 | New Orleans, LA 70113 |
| Chicago IL 60654 | |

Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon Plaintiffs' Steering Committee and Counsel for BP via File & ServeXpress ("F&S").

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010. | § § § § | MDL No. 2179 SECTION "J" |
| This Document Relates to: XXXX | § § § § | JUDGE BARBIER MAGISTRATE SHUSHAN |

## DECLARATION OF GABRIEL MALDONADO PUMAREJO

I, Gabriel Maldonado Pumarejo, declare, pursuant to 28 U.S.C. 1746, that the following is true and correct:

1) The matters and statements contained in this declaration are based on my personal knowledge. My name is Gabriel Maldonado Pumarejo and I am the duly appointed legal representative of Grupo Turístico Tamaulipas, S.A. de C.V. (GTT), a company duly organized under the laws of Mexico, as evidenced in public deed number 103, dated February 29th, 2008, issued and witnessed before Mr. Francisco Javier Luengas Castro, Notary Public number 22 holding office in the City of Tampico, Tamaulipas, such company being duly registered in the Public Registry of Property and Commerce of the State of Tamaulipas, under mercantile folio no. 10350 * 6, dated March 4th, 2008. GTT's shares are all privately owned by individuals and other investors, and there is no ownership of GTT's shares by any governmental entity or body.

2) I have been involved in the real estate business in the Country of Mexico and particularly in the State of Tamaulipas ("Tamaulipas") since 1992. I have been recognized and granted many awards throughout my career as a real estate and tourism developer, having designed, built and pioneered shopping malls, gated communities, golf clubs and vacation resorts throughout the State.

3) In 1997 I pioneered the creation of the first ever beach resort in the Gulf of Mexico: the Hotel Club Maeva Miramar, in Tamaulipas. To this date, I still chair the Board of Directors of such Hotel.

4) I was heavily involved in the negotiations with the Mexican federal government and the State of Tamaulipas, as well as the Municipality of Soto La Marina, that brought about the initiative to develop the first ever large scale tourism and beach resort project on the Gulf of Mexico. This project involved all three levels of the Mexican government (Federal, State, Municipal) and GTT. The project was to be located in Tamaulipas on the coast of the Gulf of Mexico.

5) In 2005, FONATUR carried out a feasibility study entitled: "Strategic Program for the Development of Urban Tourism Sites in the Regions Showing Potential for Tourism in



the State of Tamaulipas," and FONATUR concluded that it was important and feasible to initiate a project in the La Pesca region of Tamaulipas. The La Pesca region is located on the coastline of Tamaulipas adjoining and facing the Gulf of Mexico.

6) Additionally, the Government of the State of Tamaulipas carried out its own study and concluded that the La Pesca region offered significant advantages for tourism activities and development.

7) After such date, the Government of the State of Tamaulipas made various expenditures of Federal and State funds to construct highways and improve existing routes in order to provide an upgraded means of reaching the La Pesca region.

8) Considering that GTT is the largest and most experienced developer in the State, it was invited to enter into agreements with both the Federal and State Governments intended to privately develop certain parts of the project, as well as to cooperate with all three levels of Government.

9) A brief description of the La Pesca Project is provided below:

   i. La Pesca was to be developed in an effort to create a world-class tourist destination on the Gulf of Mexico Riviera of the State of Tamaulipas. GTT, the Mexican Government and the State of Tamaulipas worked together.
   ii. The project was to be developed over a 14.3 mile stretch of beachfront property owned by GTT and other private entities and natural persons, covering a surface area of 1,528.8 acres. The properties intended for use of the support staff and facilities measured 2,062 acres. The total surface area for the project is 4,130.8 acres.
   iii. La Pesca is located in the State of Tamaulipas, on the coastline of the Gulf of Mexico; Two ports were being developed by the State of Tamaulipas in order to service the La Pesca development, Matamoros and Boca de Catan. The State of Tamaulipas and the Federal Government were also developing highways, dams, power plants and even an international airport.
   iv. GTT also paid for several engineering studies that were conducted as preliminary measures for work GTT was to perform. These studies included:
      - land mechanics study
      - quality evaluation of materials for unpaved roads
      - seawall and breakwater projects on the beach and in the adjacent Gulf waters.
      - Hydrodynamic studies
      - Flood prevention calculations
   v. Total investment made: $ 49,440,660.00 USD

10) GTT engaged in activities to promote and develop the La Pesca Development Project. As part of its project development, GTT purchased several real estate properties located in the region, which properties include beachfront extending across the beach and into the waters of the Gulf of Mexico properties and properties adjoining the Laguna Madre natural protected area. These properties acquired by GTT include:



i. Land that originally had 223-52-00 HECTARES, TWO HUNDRED TWENTY THREE HECTARES, FIFTY TWO ARES, ZERO ZERO CENTIARES, in accordance to public instruments, with the following measures and boundaries: TO THE NORTH, in 200.00 M two hundred meters, with property that is or was Mister Alberto Buentello Gámez's; TO THE SOUTH, in 860.00 M.- eight hundred and sixty meters, with property that is or was Mister Sigifredo García's and partners; TO THE EAST, in 6,510.00 M- six thousand five hundred and ten meters with Federal Maritime Land Zone Gulf of Mexico and, TO THE WEST, in 6,510.00 M- six thousand five hundred and ten meters, with Federal Zone Laguna Madre;

ii. Land with original surface of 227-10-00 Hectares, TWO HUNDRED AND TWENTY SEVEN HECTARES, TEN ARES, ZERO ZERO CENTIARES, in accordance to public instruments, comprised within the following measures and boundaries: TO THE NORTH, in 320.00 M- three hundred and twenty meters- with property that is or was Jose Francisco Buentello Gámez's; TO THE SOUTH, in 200.00 M- two hundred meters, with property that is or was Luis Francisco Buentello Gámez's; TO THE EAST, in 5,350.00 M- five thousand three hundred and fifty meters- with Federal Maritime Land Zone Gulf of Mexico, and TO THE WEST, in 5,350.00 M- five thousand three hundred and fifty meters, with Federal Zone Laguna Madre; and,

iii. Land with original surface of 216-25-00 Hectares, TWO HUNDRED AND SIXTEEN HECTARES, TWENTY FIVE ARES, ZERO ZERO CENTIARES, in accordance to public instruments, comprised within the following measures and boundaries: TO THE NORTH, in 640.00 six hundred and forty meters, with property that is or was Alberto Luis Buentello Varela's; TO THE SOUTH, in 320.00 three hundred and twenty meters, with property that is or was Alberto Buentello Gámez's; TO THE EAST, in 4360.00 four thousand three hundred and sixty meters, with Federal Maritime Land Zone Gulf of Mexico; and, TO THE WEST, in 4360.00 four thousand three hundred and sixty meters, with Federal Zone Laguna Madre.

iv. the property located in the municipality of Soto La Marina, Tamaulipas, with a surface of 481-00-00 (four hundred eighty one hectares), which has no official delimitation of the Federal Zone, with the following measures and boundaries: TO THE NORTH: In 860.00 l.m. (eight hundred and sixty linear meters) with Luis Francisco Buentello. TO THE SOUTH: In 2,900.00 l.m. (two thousand nine hundred linear meters) with Río Soto La Marina. TO THE EAST: In 10,720.00 l.m. (ten thousand seven hundred and twenty linear meters) with the Gulf of Mexico. TO THE WEST: In 10,720.00 l.m. (ten thousand seven hundred and twenty linear meters) with the Laguna Madre.



11) The land referenced in Paragraph 11, above, that GTT purchased had been originally granted to the private owners through concessions or decrees from the Mexican federal government. As the beneficiaries of these concessions and decrees, the original owners owned rights in and to the properties; controlled, managed, and possessed the

properties; cleaned, repaired, and maintained the properties at their own expense; and made such improvements and reparations to the properties as they saw fit at their own expense. The rights of the owners of the property extended across the beach toward and up to the water line of the Gulf of Mexico or the Laguna Madre, as applicable. The concessions and decrees giving the property to the previous owners gave the owners the rights and authority to erect homes, docks, buildings or other structures on the property or otherwise develop the property for their own personal profit or benefit. The concessions and decrees giving the property to the previous owners did not restrict the property owners from selling, leasing, mortgaging, or otherwise conveying the property to GTT or anyone else and they were free to do so under the terms of the concessions and decrees.

12) As part of its development activities, GTT bought many of the waterfront properties from the original owners who had received them through concessions and decrees from the federal government. Attached as Exhibit "A" is a true and correct map of the private beachfront properties and properties adjoining the Laguna Madre that were purchased by GTT from private owners who originally received the property rights through concessions and grants from the Mexican federal government. GTT paid the purchase money to the property owners and none of the purchase money went to either the federal or state governments. GTT owns these parcels of land and holds legal title to same. Additionally, like the original property owners, GTT has the right, authority, and ability to possess, control, manage, and develop the property for its own benefit and profit. GTT is also responsible for maintaining, cleaning up, and restoring these properties, including the beaches at its own cost and expense. GTT also has the right, authority, and ability to sell, mortgage, lease, and otherwise convey the rights to and in the property to any other party. Under the concessions and decrees, any sales proceeds, lease payments, or other funds GTT receives from any conveyance of the properties are GTT's to keep for its own benefit and profit, and GTT is not required to give any part of those funds to the federal or state governments or to anyone else. In fact, as part of its development activities, GTT sold many of these properties to third parties and the sales proceeds GTT received from the sales were retained by GTT and/or its private investors. GTT was not required and will not be required to provide the Republic of Mexico any part of the sales price for these beach properties it has sold.



13) GTT, along with the Government of the State of Tamaulipas, has obtained all of the following permits, agreements, and concessions from the Federal Government, through the SEMARNAT (Ministry of the Environment and Natural Resources):

    i. STATEMENT OF REGIONAL ENVIRONMENTAL IMPACT (MIA-R)
       Code issued by SEMARNAT: 28TM2006TD028
       Date of Issue: 28 August 2006.
       Filed by: the Municipality of Soto La Marina.
       The Project involved the primary Zonification for the urban development and establishment of primary, secondary and tertiary tourism activities in La Pesca; as well as the Plans for the development of a property of 55.024 hectares adjoining, to the south, the Soto La Marina River, to the North the Laguna

Madre, to the east the Gulf of Mexico, and to the West with certain properties owned by the Municipality of Soto La Marina.

ii. DETERMINATION OF ENVIRONMENTAL IMPACT (RIA)

Issued by SEMARNAT: S.G.P.A./DGIRA.DDT.2336.06
Date: 22 November 2006.
Date of Receipt: 6 December 2006.
This document authorized the Works and Activities proposed by the company for Sector 3 of Phases 1, 2, and 3 of the La Pesca Project in 2007 to 2014, such Works were to be carried out on a surface of 640.7 hectares and included the future development and building of hotels, condominiums, villas, residential lots, beach clubs, a golf course, retail spaces, nautical club, several lakes, streets, parks and open spaces. This permit included some restrictions pertaining to the protection of the environment.

iii. PROPOSAL FOR COMPLIANCE

Date of Delivery: August 21, October 5, and November 5 of 2007.
The proposals for the protection of the environment and corresponding agreements were delivered, additionally; the State of Tamaulipas became the official proponent.

iv. PROCEEDING FOR THE ESTABLISHMENT OF A FEDERAL MARITIME LAND ZONE AND LAND RECLAIMED FROM THE SEA FOR THE PURPOSE OF DISINCORPORATION IN FAVOR OF THE COMPANY IN ORDER TO LATER DEVELOP AND/OR SELL SUCH LANDS

The proceedings included the following steps:

1. Change of the Coastal Parameters through Dredging
3. Concession.
4. Disincorporation.



The request for the Works intended to Modify the Coastal Parameters was delivered on March 14, 2008, to the General Direction of the Federal Maritime Land Zone and Costal Environments (ZOFEMATAC).

Such request included an Executive Project for the Delimitation of the Dredging Zone, including the construction of a Lake measuring over 190 hectares, as well as the Executive Project for the Delimitation of the Zone of Lands Reclaimed from the Lagoon (Laguna Madre) for a total surface of 371.79 hectares.

On May 22, 2008 the Approval for the performance of the Works to Modify the Coastal Parameters was received.

On June 2008, GTT, with due approval, initiated the dredging of the beachfronts and several other buildings, which were finished in September, 2008.

Once the buildings and dredging were completed, the process of Delimitation for the New Federal Zone and Lands Gained from the Lagoon was done.

Once such Zone was established, the concession for the use and enjoyment of the land, and later the disincorporation of such land for the La Pesca Project was done.

v. AGREEMENT BETWEEN THE STATE OF TAMAULIPAS AND GTT

During the foregoing proceedings, the Government of the State of Tamaulipas filed the Plan for Territorial Structuring and Urban Development for the Municipality of Soto La Marina.

Such plan was published in the Official Newspaper of the State of Tamaulipas in June, 2005.

Later, in August 2008, an agreement for Collaboration for the Compliance of Environmental Restrictions was entered into between GTT and the State of Tamaulipas, such instrument duly empowered GTT to perform the Works and construction of the aforementioned lake and beachfront interface and to carry out the schedule for environmental restoration of the mangroves located in the zone to be developed. The other environmental restrictions mentioned before were also covered therein.

vi. Project Initiation on behalf of GTT

On May 22, 2008, SEMARNAT and ZOFEMATAC authorized the construction projects and other works related to the La Pesca Project at the site, as well as the dredging project and the building of the offshore walls.

On August 20, 2008, GTT and the State of Tamaulipas entered into an agreement whereby the execution of the aforementioned dredging and building Works were to be performed by GTT on behalf of the State, as authorized by the SEMARNAT on that year.



I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this the 1st$^h$ day of January 2013.

_____
MR. GABRIEL MALDONADO PUMAREJO
LEGAL REPRESENTATIVE OF
GRUPO TURISTICO TAMAULIPAS, S.A. DE C.V.