UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG § <br> "DEEPWATER HORIZON" § <br> IN THE GULF OF MEXICO, § <br> ON APRIL 20, 2010 § <br> § <br> This Document Relates to: § <br> No. 12-970 § <br> § | | MDL NO. 2179 <br><br> SECTION:  J <br><br> JUDGE BARBIER <br><br> MAG. JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF TURNER INDUSTRIES GROUP, L.L.C.'S
MOTION TO CONFIRM ITS SETTLEMENT RIGHTS AS A BEL CLAIMANT**

Pursuant to the Court's authority under Federal Rule of Civil Procedure 23 and the Deepwater Horizon Economic and Property Damages Settlement Agreement, Turner Industries Group L.L.C. ("Turner") submits this Memorandum in Support of its Motion to Confirm its Settlement Rights as a BEL Claimant. Turner's Motion is filed in response to a confidential Settlement Offer it received from the Court appointed Neutrals on March 7, 2017.  This Court has supervisory authority to declare Turner's rights as a BEL Claimant and to Order the Claims Administrator to review Turner's Claim accordingly.

**I.      Background**

In summary, Turner should never have been placed on Moratorium hold in the first place, as it does not service the offshore oil and gas industry. Rather, Turner is a shore-based industrial contractor, servicing primarily the plants along the Mississippi River corridor. Specifically, Turner provides maintenance, turnaround, and industrial and environmental specialty services for refineries,  petro-chemical facilities, and power plants. Turner's industrial specialty services include bolt torqueing, pipe fabrication, hydro blasting, and vacuum truck services within its clients' on-shore facilities, while its environmental specialty services include solidification and

tank cleaning, also within clients' on-shore facilities. In addition to these specialty services, Turner operates heavy hauling, rigging, and specialized transportation, and also offers scaffolding equipment rentals to its clients' on-shore facilities.

In short, Turner is exclusively a provider of labor and services for on-shore petro-chemical facilities.  At no point during the Moratoria period [and no point in its operational history] has Turner provided any maintenance, turnaround, pipe fabrication, environmental, heavy equipment, or other industrial services to any drilling rig located in the Gulf of Mexico.

From the outset, Turner filed as a BEL Settlement Claimant and presented three compensable claims based on three of its facilities as permitted by the Settlement Agreement.[1] None of Turner's BEL Claims seek recovery for damages associated with the Federal Moratoria on offshore drilling in the Gulf of Mexico following the oil spill.  However, Turner was incorrectly placed on Moratorium hold by the Settlement Administrator. While Turner commends the Court appointed Neutrals' achievement of settling the vast majority of the remaining Moratoria hold cases through its offers, the Neutrals' process is not appropriate for Turner because it should never have been placed on a Moratorium hold, as its BEL Claims present no Moratoria losses.

Precedents have been set and established for other claimants similarly situated to Turner. The Claims Administrator has repeatedly approved BEL Claimant status to other entities who perform virtually identical services as Turner.  There is no reason or justification for the Claims Administrator to suddenly and without explanation reverse previous claims processing precedents and deny Turner its rightful status as a BEL Claimant.

---

[1] (*See* Deepwater Horizon Economic and Property Damages Settlement Agreement (the "SETTLEMENT AGREEMENT"), Section 5.3.3, authorizing Claims by Multi-Facility Business, and Exhibit 5 to the Settlement Agreement, furthering defining and setting forth procedure applicable to Multi-Facility Businesses).

Due process rights dictate that all similarly situated Claimants under the Settlement Agreement be treated equally. As such, Turner is entitled to have its BEL Claims reviewed and determined based on each and every other similarly situated Claimant to the Settlement Agreement. Therefore, in accordance with the Court's authority and Turner's rights, Turner requests that the Court (1) confirm its true status and rights as a BEL Claimant presenting zero Moratoria losses, (2) order the release of its three Claims from their respective Moratoria holds, and (3) instruct the Claims Administrator to process Turner's Claims in the ordinary course of business.

II.  **Law and Argument**

   A.  **This Court has Supervisory Authority over the Settlement Agreement to Issue a Declaration of Turner's Rights as a BEL Claimant and Order the Claims Administrator to Process Turner's Claim in the Ordinary Course of Business.**

Federal Rule of Civil Procedure Rule 23(d) vests a district court with the authority and discretion to protect the interests and rights of class members and to ensure its control over the integrity of the settlement approval process.[2] "[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."[3] In the context of this particular case, the Fifth Circuit Court of Appeals has recognized the class action structure as enabling the claims process established by the Settlement "to be administered under Court supervision," providing "the due process protections of Rule 23 to the class member Claimants, and enable[ing] the Court to enforce the

---

[2] FED. R. CIV. P. 23(d); *See also In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014).

[3] *In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981)).

Settlement terms and administrative procedures for the benefit of class members, without necessitating new or individualized litigation."[4]

Here, the Deepwater Horizon Economic and Property Damages Settlement Agreement confers "continuing and exclusive jurisdiction over the Parties and their Counsel for the purpose of enforcing, implementing and interpreting" the Agreement on "the Court," defined as "the United States District Court for the Eastern District of Louisiana, Judge Carl Barbier, presiding."[5] Particularly, Section 18.1 of the Settlement Agreement provides this Court's continuing jurisdiction over the Agreement, stating:

> "[T]he Court shall retain continuing and exclusive jurisdiction over the Parties and their Counsel for the purpose of enforcing, implementing and interpreting this Agreement…. Any disputes or controversies arising out of or related to the interpretation, enforcement or implementation of the Agreement and the Release shall be made by motion to the Court.[6]

### B.   Turner's Claims and Placement on Moratoria Hold

Turner has been awaiting review by the "team dedicated to evaluation of business economic loss claims for potential Moratoria-Losses" since receiving Notices in 2014 for each of its three BEL Claims:

- <u>November 21, 2014</u> - Notice placing BEL Claim 199237– for Turner's Baton Rouge 101 Facility – on hold to review for potential Moratoria losses

- <u>October 7, 2014</u> - Notice placing BEL Claim 199240 – for Turner's Equipment 105 Facility – on hold to review for potential Moratoria losses

---

[4] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 928–29 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014).

[5] *See In re Deepwater Horizon*, 785 F.3d 986, 989–90 (5th Cir. 2015) (citing Section 38.40 of the SETTLEMENT AGREEMENT and Section 6.6 which provides the Court will also maintain the "discretionary right to review any Appeal determination to consider whether the determination was in compliance with the Agreement.").

[6] *See* SETTLEMENT AGREEMENT, pp. 84-85.

- October 7, 2014 - Notice placing BEL Claim 199244 – for Turner's Port Allen IPS-40 Pipe Fabrication Facility – on hold to review for potential Moratoria losses

Turner's BEL Claims have remained on Moratoria holds since these dates, despite efforts to provide the Claims Administrator's Office detailed documentation concerning the work completed by Turner's facilities demonstrating that none of its losses were caused by the Moratorium. Turner has provided supporting documentation, including but not limited to customer lists, specific invoices, and purchase orders to the Claims Administrator's office to evidence the fact that its facilities do not service or support the offshore segment of the oil and gas industry. During the course of these discussions, Turner submitted correspondence on the Deepwater Horizon Economic and Property Damages Settlement Claims portal, assuring that no work out of its Baton Rouge 101 or Equipment 105 facilities presented Moratoria losses.[7] Herein, Turner has submitted three affidavits from upper level management attesting to the fact that its Facilities do not operate in specific areas of its NAICS Code that would warrant placement on Moratorium hold.[8] Regardless of these efforts, Turner's BEL Claims remain in purgatory, waiting processing by the Claims Administrator.

    C.    **The Court Appointed Neutral's Offers and the Court's March 17, 2017 Order**

As the Court is aware, at a status conference in open Court on February 17, 2017, it was confirmed that nearly seven hundred Claims remained on Moratoria Hold, awaiting an

---

[7] *See* "Correspondence_ Claim 199237," *Request for Release of Moratorium Hold, Claim ID 199237*, and "Addendum Claim 199237 Correspondence," filed on the Deepwater Horizon Settlement Claims Online Portal; *See also* "Correspondence 199240," *Request for Release of Moratorium Hold, Claim ID 199240*, filed on the Deepwater Horizon Settlement Claims Online Portal. Within Correspondence 199240, Turner submitted an affidavit from the head of its Equipment Facility Division attesting that Turner's 105 Equipment Facility does not service offshore drilling in the Gulf of Mexico, attached hereto as Exhibit "A."

[8] *See* affidavits of Mike Morain, Warren Landry, and Dwight Braud, attached collectively hereto as Exhibit "B;" *See also* discussion of Turner's NAICS Code *supra,* Section D.

5

agreement between BP and Class Counsel on a method for processing Moratoria Hold Claims.[9] Within the sixty-day window provided by the Court at the status conference for BP and Class Counsel to reach some kind of agreement, the two Court appointed Neutrals reached out to Moratoria hold Claimants, extending settlement offers. No doubt this process was effective, given that to date, unresolved Claims subject to Moratoria hold have been reduced from several thousand to approximately one hundred fifty.

On March 17, 2017, the Court issued an Order to that same effect, and offered Claimants whose Claims remained unresolved an *option* to opt out of the Settlement altogether:

> *"IT IS ORDERED that any Claimant who has received notice from the Settlement Program that his, her, or its claim is subject to a "Moratorium Hold" and that claim and that claim has not been resolved by March 25, 2017, **shall have the option to exclude ('Opt Out') that claim from the Settlement Program and proceed in litigation.**"*

An option to opt out may be appropriate for Claimants presenting hybrid Claims (presenting Moratoria and non-Moratoria loses).  However, as fully set forth herein, Turner has never received any official determination from the Claims Administrator that any of its Claims present Moratoria Losses.  Further, Turner is not even a Support Service to the Oil & Gas Industry under the Settlement Agreement. The Court's March 17, 2017 Order is predicated on the fact that a Claimant is properly on Moratoria hold as per the terms on the Settlement Agreement. This simply is not the case for Turner, which never should have been placed on Moratoria hold.

---

[9] Exhibit 16 of the SETTLEMENT AGREEMENT contemplated that BP and Class Counsel would, relative to the "Support Services to the Oil & Gas Industry," "develop agreed upon guidance that the Claims Administrator shall apply in making compensation determinations that adhere to the moratoria exclusion in the [S]ettlement." Exhibit 16's "Support Services to the Oil & Gas Industry" and the Moratoria exclusion are dictated in part by the "Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses" on Exhibit 19 (*See supra*, Section D).

### D. Turner is not an Oil and Gas Support Industry, but Rather a Shore-Based Industrial Contractor.

Turner does not fall within Settlement Agreement Exhibit 16's definition of a Support Service to the Oil and Gas Industry and is not otherwise excluded under the Settlement Exhibits. Exhibit 16 to the Settlement Agreement creates three different categories in its "Excluded Industries" Chart:

1. "Oil and Gas Industries"- Including NAICS Codes 026694-26703 listed in Exhibit 17's "Oil and Gas Industry Exclusions," which are excluded from the Economic & Property Damages Settlement Class;
2. "Support Service to Oil and Gas Industry"- Including the NAICS Codes 026613-026631 listed in Exhibit 19's Sections I & II of "Industry Types Subject to Review by Claims Administrator for Potential Moratorium Losses;" and
3. "Gaming, Banking, Insurance, Funds, Defense Contractors, and Developers"- Including NAICS Codes 028759-028772 listed in Exhibit 18's "Economic Loss and Property Class Definition Exclusions."

Turner does not fall into any of these three categories. Clearly, Turner's NAICS Code is not listed on Exhibit 17 or 18, and thereby, Turner is not excluded as an Oil and Gas Industry or within the category of Gaming, Banking, Insurance, Funds, Defense Contractors, and Developers. Thereby, Turner could only be properly placed on Moratoria if it was classified as a Support Service to the Oil and Gas Industry.

Pursuant to Section 5.10.3 of the Settlement Agreement, Support Services to the Oil & Gas Industry are only subject to a Review for Potential "Moratoria Losses" where such claimants or their employers are offshore service and support companies that either: "(i) fall within the NAICS Codes marked with an "x" in Exhibit 19, Section I, or (ii) fall within the NAICS Codes marked with an "x" in Exhibit 19, Section II and respond that, in 2009, they provided significant services, goods or supplies to the offshore oil & gas industry in the Gulf of Mexico."[10]

---

[10] *See* SETTLEMENT AGREEMENT, Section 5.10.3; *See also* Class Counsel's *Ex Parte* Motion to Authorize Claims Administrator to Implement the Settlement Agreement with Respect to Oil & Gas Support

7

Turner's NAICS Code, 237990, does not appear on Section II of Exhibit 19, but does correspond with "Other Heavy and Civil Engineering Construction" listed under Section I of Exhibit 19's "Industry Types Subject to Automatic Review by Claims Administrator for Potential Moratoria Losses." Under Section I, only Claimants determined active within the subsets of the Code marked with an "x" were to be "routed by the Claims Administrator to a team dedicated to the evaluation of business economic loss claims for potential moratoria losses." Although Turner has been placed on hold since 2014, the Claims Administrator's office has never determined that Turner falls within in the "x"-marked subsections of NAICS Code 237990 − nor could it because Turner does not operate in the marked industry subsets described below.[11]

The areas marked with an "x" under NAICS Code 237990 are: Canal construction; Channel construction; Construction Management, marine structure; Cribbing (i.e., shore protection), construction; Dam construction; Dike and other flood control structure construction; Dock construction; Drainage canal and ditch construction; Drainage project construction; Dredging (e.g., canal, channel, ditch, waterway); Embankment construction; Floodway canal and ditch construction; Harbor construction; Horizontal drilling (e.g., underground cable, pipeline, sewer installation); Levee construction; Lock and waterway construction; Marine construction; Pier construction; Pile construction; Pile driving (marine); Pipe-jacking contractors; Port facility

---

Services Industry Claims; [R. Doc. 11156], filed 08/27/2013, at p. 1, ¶2, (citing the same relevant provisions under Section 5.10.3 of the Settlement Agreement).

[11] In a similar vein, Section 5.10.3.1.1 of the Settlement Agreement elaborates on the exclusion for Moratoria losses of Businesses and Employers that the Claims Administrator "determines fall within the NAICS codes and descriptions marked with an 'x' in Section I of 'Industry Types Subject to Review by Claims Administrator for Potential Moratoria Losses,' Exhibit 19," stating these Claims "shall be subject to automatic review to determine whether their losses, or any portion thereof, constitute Moratoria Losses" and requires the Claimant "to provide supplemental information in order for the Settlement Program to conduct this review." Turner has complied with the requirement of submitting further information to the Claims Administration team, all of which support that Turner does not seek compensation for Moratoria losses.

construction; Rock removal, underwater; Seawall, wave protection, construction; Spillway, floodwater, construction; Trenching, underwater; Tunnel construction; and Wharf construction.[12]

Turner is an industrial contractor, as detailed above, and none of the work subject to its BEL Claims correspond with any of these exclusive areas marked with an "x" under NAICS Code 237990 of Section I of Exhibit 19. To that point, Turner presents three affidavits from upper level management for its Baton Rouge 101 Facility, its Equipment Rental 105 Facility, and its Pipe Fabrication, Port Allen IPS-40 Facility.[13] **The three affidavits confirm that Turner's Facilities do not operate in any of the areas of its NAICS Code marked with an "x."**[14] Turner completes reconstruction, rehabilitation, and repair work, as responsive generally with NAICS Code 237990; **yet, mere correspondence with the *Code* is not enough to warrant a review for potential Moratoria losses − a Claimant must correspond with the *subsections marked with and "x" within the Code* to be placed on Moratoria hold.**[15] Of all subcategories listed under Exhibit 19, Section I, Turner most closely identifies with only subsections that are *not* marked with an "X:" electricity, generating plant, hydroelectric, construction; or power plant, hydroelectric, construction.[16] **As detailed herein, Appeal Panel decisions have affirmed that the mere existence of an NAICS Code on Exhibit 19, Section I does not call for an automatic Moratoria hold.**[17] Because there is no justification for any determination that Turner does work marked with an "x" under Section I of Exhibit 19, Turner is not subject to review by

---

[12] *See* SETTLEMENT AGREEMENT, Exhibit 19, Section 1, at pp. 1-2.

[13] *See* affidavits of Mike Morain, Warren Landry, and Dwight Braud, attached collectively hereto as Exhibit "B;" *See also* discussion of Turner's NAICS Code *supra,* Section D.

[14] *Id*.

[15] *See* discussion of Appeal Panel Decision No. 2016-1044 , *supra*, Section III.

[16] *See* SETTLEMENT AGREEMENT, Exhibit 19, Section 1, at pp. 1-2.

[17] *See supra*, Section III.

the Claims Administrator for potential Moratoria losses, and should never have been placed on hold.

  **E. Other Appeal Panel Decisions Indicate that Similarly Situated Claimants have been Compensated.**

Other Appeal Panel Decisions confirm that Claimants similarly situated to Turner have recovered on their BEL Claims, with the Appeal Panel approving awards to the Claimants, despite disagreement by BP concerning Moratoria losses. The following Appeal Panel decisions are the most instructive.[18]

  **1. Appeal Panel Decision No. 2016-1044:**

**Claimant Presents Same NAICS Code as Turner; Affidavits and Customer Lists Prove Zero Moratoria Losses-**

One case is standout in its similarities to Turner's Claims. Appeal Panel Decision No. 2016-1044, attached in full hereto as Exhibit "C," presents a Claimant whose NAICS Code is 237990, the exact same "Other Heavy and Civil Engineering Construction" Code assigned to Turner's Claims. The Appeal Panel ultimately upheld the Claimant's compensation proposal in this case, finding BP's argument that the Claim should have been subject to Moratoria review futile. While BP argued that mere existence of an NAICS Code number on Exhibit 19, Section I was sufficient to justify a Moratoria hold, the Appeal Panel disagreed, commenting that **Moratoria review is only necessary if a Claimant's work corresponds with areas *marked with an "x" on Section I of Exhibit 19***:

> "First, BP argues that [redacted Claimant's] NAICS Code "is listed in Exhibit 19 as one to which automatic review for Moratoria losses is required." **That is an overbroad statement**. What Exhibit 19 actually provides is, "Businesses the Claims Administrator determines fall within the following codes and descriptions marked with an 'x,' shall be routed by the Claims

---

[18] Turner hereby incorporates by reference, as if fully stated herein, the other applicable Appeal Panel Decisions cited in the Memorandum in Support of Boh Bros. Construction Company, L.L.C.'s Motion to Confirm its Settlement Rights as a BEL Claimant and Clarify, Alter or Amend the March 17, 2017 Order Accordingly, [R. Doc 22698] filed April 13, 2017.

**Administrator to a team dedicated to the evaluation of business economic loss claims for potential moratoria losses.**" That statement is followed by a listing of 76 "descriptions under NAICS 237990," only 27 of which are marked with an "x." **Thus, [redacted Claimant's] NAICS Code does not, in and of itself, trigger an automatic review for Moratoria losses**." (emphasis added).

Turner cannot remain on indefinite hold and be subject to a lesser review standard for its BEL Claims while other similarly situated Claimants *with the exact same NAICS Code* were rightfully never placed on hold, were allowed a complete review as BEL Claimants, and were fully compensated for their Claims. This same Claimant also proved its case to the Panel with a letter submitted by the company's President, attesting to the fact that although the company's website referenced offshore work, these references were merely advertisements to solicit that type of work, which had not been completed by the company in approximately eighteen years. Similar to this Claimant President's letter, Turner has submitted letters and sworn affidavits from upper-level management to the Claims Administrator affirming that no work out of its particular facilities was for offshore drilling in the Gulf of Mexico.

Drawing yet another tie to Turner's Claim, the Appeal Panel considered the Claimant's submission of customer lists and job details (describing that no customers on at least sixty-three job entries involved any type of offshore activity) as evidence that a Moratorium hold would not have been proper. This Court must afford Turner the very same rights that were granted to the Claimant detailed in Appeal Panel Decision No. 2016-1044 in compliance with Turner's due process rights.

2. **Appeal Panel Decision No. 2015-1029:**

**Affidavit Supports the Fact that Claimant does not Operate in Subsections of its NAICS Code Marked with an "X"-**

Appeal Panel Decision No. 2015-1029 also shares a direct parallel to Turner's NAICS Code issue, as the Claimant's NAICS Code was listed on Exhibit 19, but the Claimant did not do

11

work in an area within the Code marked with an "x." Also like Turner, the Claimant supported their industry type by providing affidavits from its upper-level management:

"BP is correct in stating that Code 332410 is listed in Exhibit 19. However, the Settlement Agreement provides:

'Businesses the Claims Administrator determines fall within the following codes and descriptions marked with an 'X', shall be routed by the Claims Administrator to a team dedicated to the evaluation of business economic loss claims for potential moratoria losses.'

In Exhibit 19 under NAICS Code 332410, there is an 'X' next to 'Marine power boilers manufacturing.' **No other industry type is marked by an 'X.' Accordingly, if Claimant did not manufacture marine boilers, its claim is not subject to automatic moratoria review**.

**The record here reflects an affidavit from [redacted name of General Manager] (Claimant's General Manager since 1983) which attests that Claimant does not and has not manufactured marine power boilers during his tenure. Accordingly, the claim here was not subject to automatic moratoria review under the terms of the Settlement Agreement.** For the foregoing reasons, Claimant's Final Proposal is the correct result."

With the affidavits of Mike Morain, Warren Landry, and Dwight Braud attached hereto, Turner has submitted similar proof, assuring that none of the work completed by its facilities corresponds to areas marked with an "x" under its NAICS Code.[19]

### 3.     Appeal Panel Decision No. 2017-555:

**Letter from Claimant's CPA Convinces Panel that Claim Does Not Present Moratoria Losses-**

When a Claimant's NAICS Code Appears on Exhibit 19, the Appeal Panel has been heavily persuaded by Claimant representatives who attest to the fact that the Claims involve no Moratoria losses, including CPAs. *See* Appeal Panel Decision No. 2017-555:

---

[19] *See* affidavits of Mike Morain, Warren Landry, and Dwight Braud, attached collectively hereto as Exhibit "B;" *See also* "Correspondence 199240," *Request for Release of Moratorium Hold, Claim ID 199240*, uploaded to the Settlement web based portal on December 2, 2016, presenting the affidavit of Mr. Mike Morain, the Vice President of Turner's Equipment Rental Division in 2009 and 2010, now the current Executive Vice President and General Manager for Turner's Equipment Rental Division, attached hereto as Exhibit "A" (assuring that Turner's Equipment 105 Facility completed zero work for offshore drilling in the Gulf of Mexico in 2009 or 2010).

> "Claimant is a business that manufactures and repairs boats and other water vessels. See Calculation Notes at Note 1. BP bases its remand request on a paucity of evidence in the record to determine whether the business incurred Moratoria losses. There is some truth to BP's contention. **However, on February 7, 2017 Claimant's CPA wrote the Settlement Program and provided additional information on the Moratoria issue:**
>
> As the CPA firm engaged by [redacted Claimant] to prepare the initial economic claim, we can also attest to the fact that [redacted Claimant] is not involved in the manufacture or repair of drilling and production platforms. All repairs are done at an inland location, and at no time during the moratorium did [redacted Claimant] have their operations stopped or negatively impacted due to the moratorium placed on oil and gas operations in the Gulf of Mexico. There is no direct correlation between the moratorium and operations at [redacted Claimant] during the period in question.
>
> In pertinent part, [redacted Claimant] states (1) all repairs are done inland; and (2) Claimant does not manufacture or repair drilling and production platforms. Based upon information, the Settlement Program's determination is upheld. Claimant's Final Proposal prevails."

### 4. <u>Appeal Panel Decision No. 2015-291:</u>

**Affidavit Establishes Claimant Does Not Sell Products to the Oil and Gas Industry-**

Just as the Appeal Panel considered statements and affidavits in the cases involving NAICS Codes appearing on Exhibit 19, even when a Claimant's Code has not appeared in that Exhibit, the Appeal Panel has considered sworn statements from Claimants' representative, management and/or owners. In Appeal Panel Decision No. 2015-291, an affidavit from the Claimant's President again rebuts Moratoria losses:

> "Further, on its Claim Form, Claimant attests that it did not 'provide significant services, goods, and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico' in 2009. In addition, Claimant's NAICS Code is not among those listed in Exhibit 19, Section II of the Settlement Agreement, which allows for discretionary moratoria review by the Claims Administrator.
>
> Finally, the Affidavit of the President of Claimant establishes that Claimant is a custom hydraulic cylinder manufacturer that only sells to the manufacturers of larger equipment that the cylinders will be incorporated into. **The Affidavit further establishes that Claimant does not sell any of its products to the offshore oil and gas industry in the Gulf of Mexico.**

13

**This Panel is satisfied that the Moratoria restrictions in the Settlement Agreement do not apply to this Claimant."**

     **5.**    <u>**Appeal Panel Decision No. 2016-192:**</u>

**Affidavit of Claimant's General Manager Establishes that it Provided Products to On-shore Industrial Entities-**

Similar to Appeal Panel Decision No. 2015-291, in Decision No. 2016-192, an Affidavit from the Claimant's General Manger was again considered sufficient to refute the possibility of Moratoria losses, this time for a metal fabricator company that BP contended should be excluded as a business in the Oil and Gas Industry:

> **"BP's suggestion that some of claimant's losses stemmed from the Federal Moratoria is also without basis.** This issue was not raised in the Notice of Appeal so it need not be considered. Notwithstanding this deficiency, claimant effectively addressed this argument. **BP points to the fact that [redacted Claimant] "is located in a major center for Oil and Gas exploration activity" and some of its products are "used in the petrochemical and petroleum industries". These conclusory allegations are not enough to trigger a Moratoria review**. Moreover, **claimant effectively rebutted BP's argument with the affidavit of [redacted name of General Manager], the company's general manager. [Redacted name] makes clear that, for the relevant period, 100% of [redacted Claimant's] products and services were provided to on shore industrial entities.** There is no basis for a Moratoria review in this case."

**F.    If not Afforded Review as a Typical BEL Claimant, Turner's Due Process Rights will be Violated.**

Fairness and equity are serious concerns when certifying a class action for settlement under Federal Rule of Civil Procedure 23, which is fashioned to protect various due process concerns.[20] Under Rule 23(b)(3), "common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy."[21] As this Court has remarked,

---

[20] FED. R. CIV. P. 23.

[21] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 912 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

the "predominance" and "superiority" requirements of the qualification-for-certification list seek to promote "**uniformity of decision as to persons similarly situated**, without sacrificing procedural fairness or bringing about other undesirable results."[22] This Court has also expressly stated that the Settlement Agreement was implemented by the Deepwater Horizon Court Supervised Settlement Program ("Settlement Program") on June 4, 2012 to calculate awards using "public, transparent frameworks that apply standardized formulas derived from generally accepted and common methodologies."[23] This transparency was intended to "**permi[t] class members to understand how their claims will be evaluated under the Settlement**" and "**ensur[e] that similarly situated class members are treated similarly**."[24]

In this sense, treatment of similarly situated Claimants under the Settlement Agreement is highly relevant to preserving Turner's due process rights. As set forth above, it is clear that several Claimants' situations track Turner's experience in the Settlement program up and until compensation, where Turner's Claims have been treated differently in that Turner has not been compensated.

- Other Claimants present the same or comparable NAICS Codes − appearing on Exhibit 19, but not corresponding with an area marked with an "x" under that Code to warrant review for Moratoria losses;

- Other Claimants have submitted affidavits attesting to the work completed by their business, ensuring their services are not in support of offshore drilling in the Gulf of Mexico; and

---

[22] *Id.* (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

[23] *Id.* at 904.

[24] *Id.* (also explaining that the Settlement Program utilizes specialists in a variety of fields to "ensure that awards are calculated accurately, and internal audits further ensure accuracy").

15

- Other Claimants have also submitted detailed customer lists, purchase orders, and documentation, proving their Claims present no Moratoria losses.

Each of the similar Claimants highlighted above, among other similarly situated Claimants, has received compensation under the Settlement Agreement. Turner seeks aid from the Court to maintain the required uniformity of decision as to similarly situated Claimants.

### VII. Conclusion

In consideration of the Court's supervisory authority under both Federal Rule of Civil Procedure 23 and the terms of the Settlement Agreement referenced above, Turner requests that the Court (1) confirm its true status and rights as a BEL Claimant presenting zero Moratoria losses, (2) order the release of its three Claims from their respective Moratoria holds, and (3) instruct the Claims Administrator to process Turner's Claims as Business Economic Losses in the ordinary course of business.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

By: ___/s/ Kerry J. Miller_____
**KERRY J. MILLER (#24562), T.A.**
**ASHLEY E. ARNOLD (#37017)**
201 St. Charles Avenue, Suite 3600
New Orleans, LA  70170
Telephone: (504) 566-5200
Facsimile: (504) 566-8646
Email: kjmiller@bakerdonelson.com
Email: aarnold@bakerdonelson.com

**ATTORNEYS FOR CLAIMANT, TURNER INDUSTRIES GROUP, L.L.C.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of April, 2017, the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and/or by electronically serving all liaison counsel by e-mail, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

                */s/ Kerry J. Miller*
                **KERRY J. MILLER**