UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in Gulf of Mexico, on | * | MDL NO.   2179 |
| April, 20, 2010 | * | SECTION J |
| | * | JUDGE BARBIER |
| This document relates to: | * | MAG. JUDGE WILKINSON |
| No. 2:13-cv-6649 | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**PLAINTIFF STATE OF YUCATAN'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

The State of Yucatan (formally known as the (Free and Sovereign State of Yucatan) hereinafter referred to as ("Yucatan," "State," or "Plaintiff"), through undersigned counsel, files this Response to Defendants' Motion to Dismiss Claims of the Mexican State of Yucatan and states as follows:

**INTRODUCTION**

Plaintiff Yucatan filed its complaint against Defendants BP Exploration & Production, Inc., BP America Production Company, BP, P.L.C., (hereinafter collectively "BP Defendants"), Transocean Offshore Deepwater Drilling, Inc.  Transocean Holdings, LLC, Triton Asset Leasing GmbH, (hereinafter collectively "Transocean") and  Halliburton Energy Services, Inc. (and its product service line Sperry Drilling Services) (hereafter "HESI") alleging that these Defendants are liable for damages suffered by the Plaintiff Yucatan pursuant to the Oil Pollution Act of 1990

("OPA") and general maritime law.[1] Defendants filed their Motion to Dismiss Claims of the Mexican State of Yucatan arguing that previous rulings of this Court and the Fifth Circuit Court of Appeals mandate dismissal of these claims. In particular, Defendants argue that this Court's December 9, 2011 order dismissing OPA claims brought by the Mexican States of Tamaulipas, Quintana Roo and Verzcruz is dispositive of Plaintiff Yucatan's OPA claim. Further, Defendants argue that this Court's order of September 6, 2013 and the Fifth Circuit's opinion in *In re Deepwater Horizon*, 784 F.3d 1019 (5th Cir. 2015) require dismissal of Plaintiff's claims under general maritime law based upon Plaintiff Yucatan's alleged lack of the proprietary interest required by *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927).

However, as discussed below, Plaintiff Yucatan's claims under OPA are not barred. Plaintiff Yucatan can satisfy the requirements placed upon foreign claimants by OPA, in particular 33 U.S.C. § 2720(a)(1)(B), because Mexican law provides a comparable remedy for United States claimants. The other Mexican States did not present this legal argument and there has been no judicial finding in this regard. As argued below, the *existence* of a reciprocal remedy is the actual concern reflected in the requirements of 33 U.S.C. § 2720(a)(1), not the *certification* of the existence of a reciprocal remedy. Having demonstrated the existence of a comparable remedy under Mexican law, Plaintiff Yucatan should be allowed to pursue its OPA claim.

As for Plaintiff's claims under general maritime law, the Complaint alleges a proprietary interest sufficient to meet the requirements of *Robins Dry Dock. See, e.g., Complaint ¶¶ 2, 8-11,*

---

[1] Plaintiff Yucatan's claims for negligence and gross negligence were alleged alternatively under state and general maritime law. *Complaint ¶¶ 31, 105, 116, 131(p), 136.* While Plaintiff disagrees with Defendants' arguments that other rulings by this Court and Fifth Circuit require dismissal of Plaintiff's OPA and general maritime claims, Plaintiff understands that the Fifth Circuit's holding in *In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014) that OPA preempts state law claims is dispositive of Plaintiff's claims under state law.

*14-15, 79, 82-83*.  In addition to alleging that Plaintiff Yucatan has the responsibility for the maintenance, protection and repair of the property damaged by the Defendants, the Complaint alleges that Plaintiff Yucatan owns real property that was or will be damaged as a result of the oil spill.  *See, Complaint ¶¶ 11, 82*.  Neither this Court's order of September 6, 2013 finding the Mexican States of Tamaulipas, Quintana Roo and Verzcruz did not have a proprietary interest, nor Fifth Circuit's opinion affirming said order, can have any res judicata or collateral estoppel effect in this case since this case involves not only a different plaintiff, but also different allegations and different underlying facts and circumstances.  *See*, *Pollard v. Cockrell*, 578 F.2d 1002, 1007-1008 (5th Cir. 1978) (prior judgment had no res judicata effect where there was no identity of plaintiffs in subsequent litigation).  It would be improper for this Court to conclude that Plaintiff Yucatan has no proprietary interest despite the allegations of the Complaint and dismiss Plaintiff Yucatan's claims under general maritime law without affording Plaintiff the same opportunity afforded the other Mexican States to establish the proprietary interest required by *Robins Dry Dock*.

As such, the Court should deny the Defendants' motion to dismiss.

## I.     ALLEGATIONS OF PLAINTIFF YUCATAN'S COMPLAINT

The Complaint filed by Plaintiff Yucatan alleges in pertinent part:

2.     Plaintiff Yucatán has an extensive coastline contiguous to the Gulf of Mexico which extends along the Gulf of Mexico.  Yucatán relies on the natural resources found in the Gulf of Mexico for its long term economic well-being.  Of primary importance to Yucatán and its residents are the tourism and fishing industries.  Yucatán, as a Government of a foreign country, brings its claims against Defendants for actual damages, emergency response and natural resources monitoring to evaluate for likely future losses, injuries, and damages arising out of the catastrophic oil spill in the Gulf of Mexico caused and initiated by the April 20, 2010 explosion and fire aboard the Deepwater Horizon oil rig ("Deepwater Horizon"), the resulting discharge of unprecedented volumes of crude oil into the Gulf of Mexico and the subsequent additional negligent and harmful misconduct during containment and remediation activities**.  Yucatán's affected natural**

3

**resources belong to, are managed by, controlled by, or are appertaining to Yucatán, and its duties to protect these natural resources are concurrent with the United Mexican States ("Mexico"). Yucatán has a duty and responsibility to tend to these natural resources, and to restore and repair them when damaged**.

…

8. **The Spill has caused and continues to cause, devastating environmental and economic damage in ways which are affecting or which are likely to affect thousands of square miles of water in Mexico, Yucatán and Mexico's Exclusive Economic Zone for fishing, commercial development, commercial utilization, swimming and/or boating, along with thousands of square miles of environmentally and economically delicate estuaries, forested shores, barrier islands, and white sand beaches**. Fishermen and marine-related businesses have lost and continue to lose income and sustain damages to their businesses. The tourism industry and hotels, resorts, restaurants, and other tourism-reliant businesses have lost and will likely continue to lose income. Furthermore, real property owners have suffered, or will likely suffer, the loss, damage, and/or diminution of the value of their properties throughout Plaintiff's Gulf of Mexico Coastal Zone. **These losses directly and indirectly affect the economic well-being of Yucatán. Continued monitoring of the situation over a period of several years is necessary to identify what effects the Spill is having on the Yucatán's natural resources on an on-going basis**.

9. **The loss of income and property damage sustained or likely to be sustained by Plaintiff, private individuals, and entities along the Mexican Coast and ports has had, or will have, a severe economic impact on Plaintiff in the form of,** *inter alia,* **loss of key investment and expansion projects and other development projects, future employment, loss of taxing revenue, rents, fees and net profit shares due to the damage, injury, and loss to and of real and personal property**.

10. **Because Yucatán has the duty and responsibility to tend to, maintain and repair its damaged natural resource, the Spill has caused or will cause Plaintiff damage in the form of costs associated with increased public services, resulting in additional administrative costs, costs of additional personnel, out-of–pocket costs incurred for material and equipment; removal, restoration and monitoring costs, including personnel salary costs, overtime travel and per diem expenses; costs for use of government-owned equipment and facilities, and actual expenses for goods and/or services supplied by contractors and/or vendors. Only by expending funds for monitoring the oil spill and its continuing affects can the Yucatán fulfill its duty to maintain and restore its natural resources**.

11. **In addition, Plaintiff, and certain local government entities within the borders of Plaintiff, own real and/or personal property that was or will be damaged, or diminished in value as a result of the Spill**.

…

14. The State of Yucatán is a sovereign state which is part of the United Mexican States. They are also a "foreign state" and/or a political subdivision of a foreign state as defined in 28 U.S.C. § 1603(a). The State Government of Yucatán has its principal place of business at Calle 62, Palacio Municipal, Col Centro, Merida, State of Yucatán, Mexico. **Yucatán, individually and/or concurrently with the Federal Government of Mexico, has a duty and responsibility to protect the natural resources which are affected by this spill.** (*See Constitucion Politica de Los Estados Unidos Mexicanos (Constitution); Articles 27, 29, 39-43; Ley General del Equilibrio Biologico y la Proteccion Al Ambiente; . 7 Sec. VIII, XI, XII, XVIII and XX*). **The natural resources belong to, are managed by, controlled by, or appertain to Yucatán.** Yucatán is a Government of a foreign country; alternatively or concurrently, it is a governmental political subdivision of a foreign country. Yucatán relies on the natural resources found in the Gulf of Mexico, and its natural resources are now damaged and further endangered by the wrongful acts of Defendants. Yucatán's governor, as head of the foreign government of Yucatán, has chosen to act as Trustee for the State of Yucatán for purposes of this action. This trustee shall act on behalf of the foreign government of the Yucatán, in accordance with his mandate in Mexico and in compliance with requirements under the OPA.

15. **There is reciprocity of remedies for Mexican and United States parties in their respective courts.** *(See Reciprocity of Remedies between the United States of America and Mexico. Ley General del Equilibrio Ecologico y la Proteccion al Ambiente, Art. 203; Codigo Federal de Procedimientos Civiles, Articulo 1910; Codigo Civil Federal, Art. 1, Art. 12, Art. 23-24, 33; and United States Case Law.* Yucatán has not been otherwise compensated for removal costs or damages; and its recovery is, or shall be authorized pursuant to 33 U.S.C. § 2707.

…

79. The Spill has impacted and will likely continue to impact the beaches, shores, harbors, estuaries, bayous, bays, marine life and waters of Mexico and Yucatán. **Yucatán has a duty and responsibility to monitor this on-going impact so it can fulfill its responsibility to tend to, maintain, repair, and restore its natural resources**.

…

82. **Plaintiff owns, controls, manages, oversees, uses, and/or leases real property. The Spill and the Spill response will likely cause damage to real property owned, managed, overseen, used, and/or leased by Plaintiff in Mexico and Yucatán resulting in physical damage and diminution of property values**.

> 83. **Because the Yucatán has the duty to tend to, maintain, repair, and restore its natural resources**, the Spill has and will require dramatic increases in expenditures for public services, including additional administrative costs, costs of additional personnel, and out-of–pocket costs incurred for material and equipment.

(emphasis added)

## II. MEXICAN LAW PROVIDES A COMPARABLE REMEDY TO UNITED STATES CLAIMANTS FOR ENVIRONMENTAL DAMAGE.

In order for foreign claimant to recover costs or damages under OPA, the foreign claimant must demonstrate:

> **(A)** the claimant has not been otherwise compensated for the removal costs or damages; and
> **(B)** recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants.

33 U.S.C.A. § 2707(a)(1).

As noted above, Plaintiff alleges in its Complaint that its country provides a comparable remedy to United States claimants. In particular, the Complaint alleges as follows:

> 15. There is reciprocity of remedies for Mexican and United States parties in their respective courts. *(See Reciprocity of Remedies between the United States of America and Mexico. Ley General del Equilibrio Ecologico y la Proteccion al Ambiente, Art. 203; Codigo Federal de Procedimientos Civiles, Articulo 1910; Codigo Civil Federal, Art. 1, Art. 12, Art. 23-24, 33; and United States Case Law.* Yucatan has not been otherwise compensated for removal costs or damages; and its recovery is, or shall be authorized pursuant to 33 U.S.C. § 2707.

Article 203 of Ley General del Equilbrio Ecoligico y la Proteccion al Ambiente, otherwise known as Mexico's General Law of Ecological Balance and Environmental Protection, (hereinafter "GLEBEP") provides:

> Without prejudice to the corresponding criminal or administrative sanctions, **any** person who pollutes or damages the environment or affects natural resources or biodiversity, shall be responsible and obliged to repair the damage caused

pursuant to the applicable civil legislation. The time period to file a complaint regarding environmental responsibility shall be five years counted from the moment in which the corresponding fact, action or omission occurred. (emphasis supplied)

Article 203 does not limit its reach to Mexican citizens but instead provides a remedy "pursuant to applicable civil legislation" against "any person" who pollutes or damages the environment. The "applicable civil legislation" referred to in Article 203 includes the Mexico Federal Civil Code. Article 22 of the Federal Civil Code provides that all natural persons come under the protection of the law. Likewise, Article 25 recognizes the legal capacity of foreign legal entities as determined by the law under which the foreign legal entity is created.

In addition, the Article One of the Mexican Constitution provides in pertinent part:

In the United Mexican States, all individuals shall be entitled to the human rights granted by this Constitution and the international treaties signed by the Mexican State, as well as to the guarantees for the protection of these rights. Such human rights shall not be restricted or suspended, except for the cases and under the conditions established by this Constitution itself.
…

**Any form of discrimination, based on ethnic or national origin**, gender, age, disabilities, social status, medical conditions, religious, opinions, sexual orientation, marital status, or any other form, which violates the human dignity or seeks to annul or diminish the rights and freedoms of the people, **is prohibited**.

Thus, Mexican law prohibits discriminatory treatment of foreign claimants. Therefore, GLEBEP provides a remedy for environmental damage to natural and legal persons regardless of the citizenship of the person causing or suffering said injury. Therefore, GLEBEP provides a remedy to United States claimants which is comparable to that afforded under OPA.

While there has been no certification by the Secretary of State, in consultation with the Attorney General and other appropriate officials that Mexico provides a comparable remedy for United States claimants, a certification is not the underlying intent of OPA. Instead, the underlying intent behind OPA's requirement of a comparable remedy is to insure that the United

States courts do not expend judicial time and expenses on claimants from foreign countries if the courts of those foreign countries are not open to United States citizens for the redress of similar environmental injuries.  Since Mexican law and courts do provide United States claimants with a comparable remedy, the underlying intent of 33 U.S.C.A. § 2707(a)(1) has been satisfied.  As such, Plaintiff Yucatan should be allowed to pursue its OPA in this court.  Accordingly, Defendants' motion to dismiss Plaintiff Yucatan's OPA claim should be denied.

### III. THE DETERMINATION OF WHETHER THE STATE OF YUCATAN HAS SUFFERED INJURY TO ITS PROPRIETY INTEREST IS NOT APPROPRIATE ON A MOTION TO DISMISS.

As noted by Defendants' in their motion to dismiss, this Court previously considered the issue of whether the Mexican States of Tamaulipas, Quintana Roo and Verzcruz had a propriety interest sufficient to meet the requirements under *Robins Dry Dock*.  In doing so, it not only considered the allegations of the complaints filed by those States, but also allowed the parties to engage in discovery including the submission of expert opinions on Mexican law before determining the issue of those Mexican States' proprietary interest.  In addition to considering provisions of the Constitution of the United Mexican States, Mexico's General Law on National Assets, Mexico's Federal Law of the Sea, Mexico's General Law of Wildlife, Mexico's General Law of Ecological Balance and Environmental Protection, this Court and the Fifth Circuit, also considered affidavits and administrative agreements entered into by and between the Mexican federal government and the Mexican States of Tamaulipas, Quintana Roo and Verzcruz. *See, In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 970 F. Supp. 2d 524, 535-539 (E.D. La. 2013); *In re Deepwater Horizon*, 784 F.3d 1019, 1030 (5th Cir. 2015).

Ultimately, this Court and the Fifth Circuit concluded that the Mexican States did not have a proprietary interest under *Robins Dry Dock* and entered judgment in favor of the BP

Defendants, Transocean and HESI. Although both Courts found the Mexican States' affidavits were not persuasive on the issue of those States' proprietary interest and that the administrative agreements did not transfer a proprietary interest to those Mexican States, those rulings are not dispositive of the issue of the State of Yucatan's proprietary interest. The Fifth Circuit applies the following test for determining if the doctrine of res judicata applies to bar a claim:

> "First, **the parties in a later action must be identical to (or at least in privity with) the parties in a prior action**. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits."

*Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 704–05 (5th Cir. 2005) (emphasis added).

Likewise, the Fifth Circuit requires an identity of parties for the doctrine of collateral estoppel to apply. *Vines*, 398 F.3d at 705 (5th Cir. 2005)("[C]ollateral estoppel applies to prevent issues of ultimate fact from being relitigated **between the same parties** in a future lawsuit if those issues have once been determined by a valid and final judgment.")(emphasis added).

Accordingly, although this Court and the Fifth Circuit held that the Mexican States of Tamaulipas, Quintana Roo and Veracruz did not have a sufficient proprietary interest to satisfy the requirements of *Robins Dry Dock*, those holdings do not support dismissal of Plaintiff Yucatan's Complaint. The issue of Plaintiff Yucatan's proprietary interest cannot be resolved on a motion to dismiss, especially where Plaintiff Yucatan's Complaint alleges that it owns real property that was or will be damaged as a result of the Defendants' negligence. *See, e.g.* *Complaint ¶¶ 11, 82*.

Instead, the issue of Plaintiff Yucatan's proprietary interest can only be resolved on a motion for summary judgment. Plaintiff Yucatan must be afforded the opportunity to submit evidence including expert opinion, as well as, administrative agreements or other documentation

which demonstrate that it has a propriety interest that was damaged as a result of the acts and omission of the Defendants.

In conclusion, Plaintiff Yucatan has alleged the requirements for standing under both OPA and general maritime law. Accordingly, the Defendants' Motion to Dismiss Claims of the Mexican State of Yucatan must be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Plaintiff State of Yucatan's Response in Opposition to Defendants' Motion to Dismis has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 26th day of April 2017.

KRUPNICK, CAMPBELL, MALONE,
BUSER, SLAMA, HANCOCK,
LIBERMAN, P.A.

By: /s/   Charles A. Acevedo

Charles A. Acevedo, Esquire
    Florida Bar Number 097771
    cacevedo@krupnicklaw.com
Kelley B. Stewart, Esquire
    Florida Bar Number: 492132
    kstewart@krupnicklaw.com
12 Southeast Seventh Street, Suite 801
Fort Lauderdale, Florida  33301-3434
954-763-8181 telephone
954-763-8292 facsimile

and

Stuart H. Smith, Esquire
    Louisiana Bar Number:  17805
    smith@smithstag.com
Michael G. Stag, Esquire
    Louisiana Bar Number:  23314
    mstag@smithstag.com
SMITH STAG, L.L.C.
One Canal Place, Suite 2850
365 Canal Street
New Orleans, Louisiana  70130
(504) 593-9600 telephone
(504) 593-9601 facsimile

and

William T. Reid, Esquire
    Texas Bar Number:  00788817
    wreid@rctlegal.com
Eric D. Madden, Esquire
    Texas Bar Number:  24013079
    emadden@rctlegal.com
REID COLLINS & TSAI LLP
1301 South Capital of Texas Highway
Building C, Suite 300
Austin, Texas 78746-6550
(512) 647-6100 telephone
(512) 647-6129 facsimile

*Attorneys for Plaintiff*