**CLASS COUNSEL'S *AMICUS* SUBMISSION TO APPEAL PANELISTS
ON THE ISSUE OF CAUSATION**

**[Attestation / Allegedly "Implausible" Claims / Alternative Causation]**

May 22, 2015

Class Counsel respectfully submit the following memorandum in connection with BP's Appeals of Business Economic Loss ("BEL") Claims that have satisfied the objective Causation requirements set forth in the Settlement Agreement, but which BP nevertheless challenges on appeal as allegedly "implausible" or "suspicious".

BP, in taking this position, ignores BP's own express and repeated representations to the Claims Administrator, the District Court, and the U.S. Fifth Circuit Court of Appeals, confirming that it intended and agreed that causation would be determined solely according to the objective criteria provided in Exhibit 4B, without consideration of any potential alternative explanations. The Claims Administrator's Policy, in this regard, was not only formally and expressly agreed to by BP in September, October and December of 2012, but was ultimately reaffirmed by the District Court in November and December of 2013, by the U.S. Fifth Circuit Court of Appeals in March and May of 2014, and, implicitly, by the U.S. Supreme Court in December of 2014.

Most recently, a different panel of the U.S. Fifth Circuit Court of Appeals rejected BP's latest argument that allegedly "implausible claims" should be addressed as they arise.[1]  Rather, the Court expressly affirmed Judge Barbier's Order and Rules relating to Settlement Program Appeals from April and May of 2013, which categorically precluded appeals involving the alternative causation issue.  Rejecting BP's argument that the attestation on the BEL Claim Form

---

[1] In re Deepwater Horizon, No. 13-30843 [Doc. 00513036264] (5th Cir. May 8, 2015), at p.25.

created some new or additional causation requirement that is subject to review, the Court held:

"Considering how *Deepwater Horizon II* and *Deepwater Horizon III* did nothing to nullify or

call into question the Alternative Causation Policy, but actually substantiated the policy, we find

no error of law underlying the district court's decision to preclude cases involving the

Alternative Causation Policy...."[2]

As set forth more fully herein, this issue is closed.

## BP's "Alternative Causation" Argument Has Been Formally Conceded by BP and Consistently Rejected by the Courts.

From the time the Settlement Agreement was filed in April of 2012 through final

approval on December 21, 2012, BP consistently and repeatedly represented and confirmed that

causation for businesses would be determined solely based on the objective criteria set forth in

Exhibit 4B, without any additional subjective inquiry or determination; and, indeed, BP's

Counsel re-acknowledged this in the Fifth Circuit before the original BEL Panel in July of 2013.[3]

As Judge Barbier commented after the original BEL Opinion:

> BP accuses the Claims Administrator of 'rewriting' and 'systematically disregarding' the Settlement Agreement. To the contrary, when it talks about causation, if anyone is attempting to rewrite or disregard the unambiguous terms of the Settlement Agreement, it is counsel for BP. Frankly, it is surprising that the same counsel who represented BP during the settlement negotiations, participated in drafting the final Settlement Agreement, and then strenuously advocated for approval of the settlement before this Court, now come to this Court and the Fifth Circuit and contradict everything they have previously done or said on this issue."[4]

---

[2] In re Deepwater Horizon, No. 13-30843, at pp.25-26.

[3] *See generally* ORDER AND REASONS [Doc 12055] (Dec. 24, 2013) pp.6-43; PLAINTIFFS'-APPELLEES OPPOSITION TO EMERGENCY MOTION FOR INJUNCTION, No.13-30315 [5th Cir. Doc. 00512450441] (Nov. 22, 2013) pp.7-28; PLAINTIFFS' OPPOSITION TO BP'S MOTION FOR RECONSIDERATION [Doc 8963-54] pp.20-23.

[4] ORDER AND REASONS [Doc 11890] (Nov. 22, 2013) pp.10-11.

Judge Barbier's December 2013 Order was expressly affirmed by the Fifth Circuit in *Deepwater Horizon III,*[5] and – when BP joined the objectors in attacking settlement approval – was implicitly affirmed by the Fifth Circuit in *Deepwater Horizon II,*[6] and by the U.S. Supreme Court in denying BP's cert petition.[7]

**The Attestation on the BEL Claim Form Does Not Impose Any Additional and Undefined Subjective Causation Requirement**

The certification on the BEL Claim Form does not actually say anything about "injury traceable to" the *Deepwater Horizon* Incident.

Rather, what the certification actually says is "that the information provided in this Claim Form is true and accurate to the best of my knowledge, and that supporting documents attached to or submitted in connection with this form and the information contained therein are true, accurate, and complete to the best of my knowledge…."[8]

Moreover, to the extent that a BEL Claimant is certifying, under penalty of perjury, that the business' injury is traceable to the *Deepwater Horizon* Incident, the business is certifying that the injury is traceable to the Spill, *as defined by the objective standards and criteria set forth in Exhibit 4B to the Settlement Agreement* – and not some other vague, unidentified, undefined, unspecified, and inherently subjective notion or standard.

Indeed, BP's belated attempts to superimpose some additional vague, unidentified, undefined, unspecified, and inherently subjective notion or standard (which, to this day, BP has never articulated) have been consistently and conclusively rejected by the Courts.

---

[5] In re Deepwater Horizon, 744 F.3d 370 (5th Cir. 2014) ("*Deepwater Horizon III*"), *rehearing denied,* 753 F.3d 509 (5th Cir. 2014), *rehearing en banc denied,* 753 F.3d 516 (5th Cir. 2014).

[6] In re Deepwater Horizon, 739 F.3d 790 (5th Cir. 2014) ("*Deepwater Horizon II*"), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 754 (2014).

[7] 135 S.Ct. 754 (2014).

[8] BEL CLAIM FORM, at p.10.

As Judge Southwick stated in *Deepwater Horizon III*: "It was a contractual concession by BP to limit the issue of factual causation in the processing of claims.… There is nothing fundamentally unreasonable about what BP accepted but now wishes it had not."  744 F.3d at 377.  He continued:

> We also agree that the provision in Exhibit 4B that disclaims the need for evidence of causation is at least generally applicable. We part analytical ways when identifying the role of the claims administrator regarding suspicious or implausible claims. The dissent would require the claims administrator to "ensure that claims are not paid that are not plausibly traceable to the spill, thus placing the onus on the claims administrator to ensure that implausible claims are adequately scrutinized such that those lacking a causal nexus are rejected."
>
> **We do not agree that we should order the claims administrator to perform that gatekeeping function. There is no language in the Settlement Agreement nor in BP's briefing, supplemental submissions, or emergency motions, about a procedure to be followed when an attestation of a nexus seems at odds with the specifics of the claim… BP identifies its desired relief but does not identify a part of the Settlement Agreement that in any way suggests that each submitted claim would be examined as to whether it satisfies a traceability requirement.**
>
> **Relevant to this concern is that BP did not object in this appeal to a decision made in October 2012 that the claims administrator was not to look at potential alternative causes for claimants' losses.** Though we are reluctant to say that all claims must be accepted no matter how clear the absence of the required nexus may be, no one has concerned itself in this appeal with the when, by whom, and how of analyzing such suspicious claims after they are submitted. It seems to us that absent any specific provision in the Settlement Agreement, and no one suggests there is one, such concerns are to be addressed in the usual course of processing individual claims. **The Settlement Agreement contained many compromises. One of them was to provide in only a limited way for connecting the claim to the cause.** *Id*. at 377-378 (emphasis added).

Subsequently, in its May 19, 2014 decision denying BP's petition for rehearing, the Fifth

Circuit again approved of the Policy Statement issued by the Claims Administrator on October

12, 2012 (to which BP had formally and expressly agreed) :

> The Settlement Agreement represents the Parties' negotiated agreement on the criteria that must be satisfied in order for a claimant to establish causation. Once causation is established, the Settlement Agreement further provides specific formulae by which compensation is to be measured. All such matters are negotiated terms that are an integral part of the Settlement Agreement. **The Settlement Agreement does not contemplate that the Claims Administrator will undertake additional analysis of causation issues beyond those criteria that are specifically set out in the Settlement Agreement**. Both Class Counsel and BP have in response to the Claims Administrator's inquiry confirmed that this is in fact a correct statement of their intent and of the terms of the Settlement Agreement. The Claims Administrator will thus compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, **without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement**. **Further, the Claims Administrator will not evaluate potential alternative causes of the claimant's economic injury**, other than the analysis required by Exhibit 8A of whether an Individual Economic Loss claimant was terminated from a Claiming Job for cause. *In re Deepwater Horizon,* 753 F.3d 509, 514 (5th Cir. 2014) (emphasis added).

The Court observed that: "Through Exhibit 4B, the parties agreed that claims would be

governed by objective formulae. **BP argues that an additional duty on the Claims**

**Administrator exists to ensure that every claim contains a direct causal nexus to BP's**

**conduct. That requirement does not arise under the agreed terms of Exhibit 4B, and it does**

**not arise under constitutional or other requirements for a class action.**" *Id*. at 513 (emphasis

added). "The Policy Statement makes clear that **there is no additional analysis of causation**

**issues beyond those criteria in Exhibit 4B.**" *Id*. at 514 (emphasis added). "Exhibit 4B was the

compromise reached by the parties on how an extremely difficult part of the claims process was to be handled.  The Policy Statement simply states that **the compromise still controls even when its accuracy as a substitute for direct evidence of causation as to a particular claim is questionable.**"  *Id.* at 515 (emphasis added).

### BP's Argument Contradicts What BP Just Told Its Shareholders on March 3, 2015

On March 3, 2015, BP issued its 2014 Annual Report.  In discussing the Macondo / *Deepwater Horizon* Litigation, BP admits that:

> Following the ruling by the district court, which was affirmed by the Fifth Circuit, that **the settlement agreement did not contain a causation requirement beyond the revenue and related tests set out in an exhibit to that agreement** …. BP petitioned the U.S. Supreme Court for review of **the Fifth Circuit's decisions relating to compensation of claims for losses with no apparent connection to the Deepwater Horizon spill.**  In December 2014 the U.S. Supreme Court denied BP's petition for review.[9]

It is frankly difficult to reconcile BP's characterization of the Court's rulings to their shareholders with BP's characterization of the Court's rulings to the Settlement Program and its Appeal Panelists.

### BP's Arguments Regarding the Investigation and Denial of "Suspicious" or "Implausible" Claims Are Taken Out of Context from the March 2014 Decision;  Ignore the Language in the Subsequent May 2014 Decision;  and Are Completely Unsupported by Any Evidence in the Record

BP cites certain passages, out of context, from the *Deepwater Horizon III* decision rendered in March of 2014.  However, BP's argument completely ignores the language in the subsequent May 2014 decision, denying BP's Petition for Rehearing.  As quoted above, the Court, in that decision, clearly held: "The Settlement Agreement does not contemplate that the Claims Administrator will undertake additional analysis of causation issues beyond those criteria

---

[9] BP Annual Report (March 3, 2015), p.37 (emphasis supplied) (attached as Exhibit "A").

that are specifically set out in the Settlement Agreement." In re Deepwater Horizon, 753 F.3d at

514.  As Class Counsel noted in a recent e-mail exchange with BP Counsel regarding this issue:

> Yes, if you take things out of context and piece them together in a certain way, it is possible to make an argument that this is what the Fifth Circuit said, in one, (although not the final), decision.
>
> But nowhere has any Court ever held that the attestation "that the claim in fact was due to the Deepwater Horizon disaster" means anything other than "due to the Deepwater Horizon disaster *according to the objective standards to which the Parties agreed would satisfy causation in Exhibit 4B.*"
>
> And, after two years, and voluminous filings and other submissions, BP has never been willing or able to articulate or define what BP contends that additional, undefined, unspecified, and inherently subjective standard is or means. (Which Judge Southwick himself noted in *Deepwater Horizon III,* 744 F.3d at 378.)
>
> And no Court has ever attempted to articulate or define (beyond what's actually stated in the Settlement Agreement Frameworks) what that additional, undefined, unspecified, and inherently subjective standard might be or mean.
>
> Finally, BP's current argument is pieced together from a 2014 Fifth Circuit decision that attempted to resolve post-approval arguments and positions advanced by BP in November of 2013 that were completely inconsistent with virtually everything that BP had said or agreed to from the execution of the Settlement Agreement in April of 2012 through Settlement Approval in December – and was further infected by BP's simultaneous and interrelated newfound attack on the Settlement on purported Rule 23 and Article III grounds, despite BP's previous and express agreement to support and defend the Settlement through finality in Sections 16.1 and 17.1, and as reflected in Section 9.1, of the Settlement Agreement.
>
> In over two years of litigating this and related issues, and with hundreds if not thousands of pages of declarations from experts and attorneys submitted to the Court by BP regarding the negotiation, interpretation and/or application of the Settlement Agreement, I do not believe I have ever seen any attestation, under penalty of perjury – not simply an argument made by an advocate *post hoc,* but a factual certification based on personal knowledge – that BP's current position is, in fact, what the

Parties intended and agreed to when the Settlement was executed on April 16, 2012.[10]

**On May 8, 2015, the U.S. Fifth Circuit Rejected BP's Argument Regarding Allegedly "Implausible Claims", and Expressly Affirmed the Categorical Rejection of Alternative Causation Appeals**

Initially, BP told the Court that it was not challenging the Claims Administrator's Policy or the determination of individual Claims based on evidence or allegations of Alternative Causation. Taking advantage of *dicta* in the original *Deepwater Horizon I* decision, BP changed position, arguing that, while no additional subjective causation requirements or inquiries were to be made under Exhibit 4B, there was allegedly some additional undefined subjective causation requirement imposed by the Class Definition. That argument was rejected in *Deepwater Horizon II* and *Deepwater Horizon III*. So BP changed position again, arguing that, while not required under Exhibit 4B or the Class Definition, there was nevertheless some additional undefined subjective causation requirement imposed by the attestation on the BEL Claim Form. Now, that argument too has been flatly rejected.

On May 8, 2015, the U.S. Fifth Circuit Court of Appeals specifically rejected the very same argument that BP has recently advanced with the Settlement Program Appeal Panelists – namely "that the Final Rules should be modified to reflect the holding in *Deepwater Horizon III* that the Settlement Agreement contains a causal-nexus requirement—that a class member's injury be plausibly traceable to the oil spill—and that 'implausible claims' that do not satisfy that requirement should be addressed as they arise."[11]

The Court expressly affirmed Judge Barbier's Order and Rules relating to Settlement Program Appeals from April and May of 2013, which categorically precluded cases involving the alternative causation issue. Specifically, the Fifth Circuit affirmed that portion of the District Court's May 20, 2013 Order approving Rule 16 with respect to Alternative Causation, "as set forth in the Court's order of April 24, 2013."[12] This order expressly instructed that:

> For any appeals so designated, such appeals are hereby denied based on this Court's prior rulings. The Claims Administrator is instructed to refrain from issuing the Notice of Appeal, which would otherwise trigger the further appeals process, and the Claims Administrator is to refrain from assigning such appeals to an Appeal Panel. The Claims Administrator is instructed to proceed with final processing of such claims and issuing payment in accord with the terms of the applicable Eligibility Notice.[13]

---

[10] *See* E-Mail from Class Counsel to BP Counsel (Feb. 28, 2015) (attached as Exhibit "B").

[11] In re Deepwater Horizon, No. 13-30843 [Doc. 00513036264] (5th Cir. May 8, 2015), at p.25.

[12] RULES GOVERNING DISCRETIONARY COURT REVIEW OF APPEAL DETERMINATIONS (May 20, 2013) [Doc. 10185-1], at p.3.

[13] ORDER (April 24, 2013) [Doc. 9538], at p.2 No.3.

The Court said: "Considering how *Deepwater Horizon II* and *Deepwater Horizon III* did nothing to nullify or call into question the Alternative Causation Policy, but actually substantiated the policy, we find no error of law underlying the district court's decision to preclude cases involving the Alternative Causation Policy...."[14]

For the above and foregoing reasons, BP should continue to be estopped from raising such issues in the Settlement Program, to Appeals Panelists, or otherwise.

---

[14] In re Deepwater Horizon, No. 13-30843, at pp.25-26.

Strategic report

Phase 2 – efforts to stop the flow of oil and the volume of oil spilled
The district court issued its ruling on the second phase of the trial in January 2015. It found that 3.19 million barrels of oil were discharged into the Gulf of Mexico. In addition, the district court found that BP was not grossly negligent in its source control efforts. We have also appealed this Phase 2 ruling.

Penalty phase
The penalty phase of the trial concluded in February 2015. In this phase, the district court will determine the amount of civil penalties owed to the United States under the Clean Water Act. This will be based on the court's rulings or ultimate determinations on appeal as to the presence of negligence, gross negligence or wilful misconduct and the volume of oil spilled, as well as the application of the penalty factors under the Clean Water Act.

BP is not currently aware of the timing of the district court's ruling for the penalty phase.

## Plaintiffs' Steering Committee settlements

BP reached settlements in 2012 with the Plaintiffs' Steering Committee (PSC) to resolve the substantial majority of legitimate individual and business claims and medical claims resulting from the accident and oil spill. The PSC was established to act on behalf of individual and business plaintiffs in MDL 2179. During 2014, amounts paid out under the PSC settlements totalled approximately $600 million.

### Individual and business claims
As part of its monitoring of payments made by the court-supervised programme for the economic and property damages settlement, BP identified and disputed multiple business economic loss claim determinations that appeared to result from an incorrect interpretation of the economic and property damages settlement agreement by the claims administrator. BP has also raised issues about misconduct and inefficiency in the facility administering the settlement.

In December 2013 the district court ruled that, for the purposes of determining business economic loss claims, revenues must be matched with expenses incurred by claimants in conducting their business even when the revenues and expenses were recorded at different times. In May 2014, the district court approved the claims administrator's revised matching policy reflecting this order and the policy is now in effect. The PSC has filed a motion with the district court to alter or amend the policy.

In September 2014 the district court denied BP's motion to order the return of excessive payments made by the Deepwater Horizon Court Supervised Settlement Program under the matching policy in effect before the district court's December 2013 ruling requiring a claimant's revenue to be matched with variable expenses. BP has appealed this decision to the US Court of Appeals for the Fifth Circuit (Fifth Circuit).

Following the ruling by the district court, which was affirmed by the Fifth Circuit, that the settlement agreement did not contain a causation requirement beyond the revenue and related tests set out in an exhibit to that agreement, the district court in May dissolved the injunction that had halted the processing and payment of business economic loss claims and instructed the claims administrator to resume the processing and payment of claims. In August BP petitioned the US Supreme Court for review of the Fifth Circuit's decisions relating to compensation of claims for losses with no apparent connection to the Deepwater Horizon spill. In December 2014 the US Supreme Court denied BP's petition for review.

Business economic loss claims continue to be assessed and paid under the revised matching policy. The deadline for submitting claims is 8 June 2015.

In September 2014 BP sought to remove Patrick Juneau from his roles as claims administrator and settlement trustee for the economic and property damages settlement for reasons including a conflict of interest. This was denied by the district court and BP has appealed this decision.

### Medical claims
The medical benefits class action settlement provides for claims to be paid to qualifying class members from the agreement's effective date. Following the resolution of all appeals relating to this settlement, the agreement's effective date was 12 February 2014. The deadline for submitting claims under the settlement was one year from the effective date.

## Process safety and ethics monitors

Two independent monitors – a process safety monitor and an ethics monitor – were appointed under the terms of the criminal plea agreement BP reached with the US government in 2012 to resolve all federal criminal claims arising out of the Deepwater Horizon incident. Under the terms of the agreement, BP is taking additional actions, enforceable by the court, to further enhance the safety of drilling operations in the Gulf of Mexico.

The process safety monitor is reviewing and providing recommendations concerning BPXP's process safety and risk management procedures for deepwater drilling in the Gulf of Mexico.

The ethics monitor is reviewing and providing recommendations concerning BP's ethics and compliance programme.

The monitors have interviewed BP employees, reviewed policies and procedures and made site visits in preparation for their initial reports, which will be delivered in 2015.

A third-party auditor has also been retained and will review and report to the probation officer, the US government and BP on BPXP's compliance with the plea agreement's implementation plan. See *bpxpcompliancereports.com* for annual updates on BP's compliance with the plea agreement.

## Other legal proceedings

BP is subject to a number of different legal proceedings in connection with the Deepwater Horizon incident in addition to the legal proceedings relating to the PSC settlements and the multi-district litigation proceedings in New Orleans. For more information see Legal proceedings on page 228.

### OPA 90 and other civil claims
BP p.l.c., BPXP and various other BP entities have been among the companies named as defendants in approximately 3,000 civil lawsuits resulting from the accident and oil spill, including the claims by several states and local government entities. The majority of these lawsuits assert claims under OPA 90, as well as various other claims, including for economic loss and real property damage, and claims under maritime law and state law. These lawsuits seek various remedies including economic and compensatory damages, punitive damages, removal costs and natural resource damages. Many of the lawsuits assert claims excluded from the PSC settlements, such as claims for recovery for losses allegedly resulting from the 2010 federal deepwater drilling moratoria and the related permitting process. Many of these lawsuits have been consolidated into MDL 2179.

Alabama, Mississippi, Florida, Louisiana, Texas and various local government entities have submitted or asserted claims to BP under OPA 90 for alleged losses including economic losses and property damage as a result of the Gulf of Mexico oil spill. BP has provided for the current best estimate of the amount required to settle these obligations. BP considers most of these claims to be unsubstantiated and the methodologies used to calculate them to be seriously flawed, not supported by OPA 90, not supported by documentation and to be substantially overstated.

### Securities litigation proceedings
The multi-district litigation proceedings pending in federal court in Houston (MDL 2185), including a purported class action on behalf of purchasers of American Depositary Shares under US federal securities law, are continuing. A jury trial is scheduled to begin in January 2016.

### SEC settlement
In connection with the 2012 settlement with the SEC resolving the SEC's Deepwater Horizon-related civil claims, in August 2014, the final instalment of $175 million was paid under the civil penalty of $525 million.

### US Environmental Protection Agency (EPA) suspension and debarment
In March 2014, BP p.l.c., BPXP, and all other BP entities that the EPA had suspended from receiving new federal contracts or renewing existing ones entered into an administrative agreement with the EPA resolving all issues related to suspension or debarment arising from the Deepwater Horizon incident. The administrative agreement restores the eligibility of BP entities to enter into new contracts or leases with the US government. Under the terms and conditions of the administrative agreement, which applies for five years, BP has agreed to safety and operations, ethics and compliance and corporate governance requirements.

**From:** Steve Herman
**Sent:** Saturday, February 28, 2015 9:46 AM
**To:** 'Cantor, Daniel A.'
**Cc:** Jim Roy; 'AppealsCoordinator'; Jennifer Goodwin; Patrick Juneau; Randall Black; Michael Juneau; J. David Forsyth; Jack Alltmont; Patrick Hron; Thomas Souther; Frank Piantidosi; David Welker; Rick Stanley; Warlick, Sarah E.
**Subject:** BP Oil - BP Submission to the Settlement Program re Alleged "Alternative Causation"

Thanks, Dan.

Yes, if you take things out of context and piece them together in a certain way, it is possible to make an argument that this is what the Fifth Circuit said, in one, (although not the final), decision.

But nowhere has any Court ever held that the attestation "that the claim in fact was due to the Deepwater Horizon disaster" means anything other than "due to the Deepwater Horizon disaster *according to the objective standards to which the Parties agreed would satisfy causation in Exhibit 4B.*"

And, after two years, and voluminous filings and other submissions, BP has never been willing or able to articulate or define what BP contends that additional, undefined, unspecified, and inherently subjective standard is or means. (Which Judge Southwick himself noted in *Deepwater Horizon III,* 744 F.3d at 378.)

And no Court has ever attempted to articulate or define (beyond what's actually stated in the Settlement Agreement Frameworks) what that additional, undefined, unspecified, and inherently subjective standard might be or mean.

Finally, BP's current argument is pieced together from a 2014 Fifth Circuit decision that attempted to resolve post-approval arguments and positions advanced by BP in November of 2013 that were completely inconsistent with virtually everything that BP had said or agreed to from the execution of the Settlement Agreement in April of 2012 through Settlement Approval in December – and was further infected by BP's simultaneous and interrelated newfound attack on the Settlement on purported Rule 23 and Article III grounds, despite BP's previous and express agreement to support and defend the Settlement through finality in Sections 16.1 and 17.1, and as reflected in Section 9.1, of the Settlement Agreement.

In over two years of litigating this and related issues, and with hundreds if not thousands of pages of declarations from experts and attorneys submitted to the Court by BP regarding the negotiation, interpretation and/or application of the

Settlement Agreement, I do not believe I have ever seen any attestation, under penalty of perjury – not simply an argument made by an advocate *post hoc*, but a factual certification based on personal knowledge – that BP's current position is, in fact, what the Parties intended and agreed to when the Settlement was executed on April 16, 2012.

Thanks, best wishes, and have a nice weekend, - Steve

---

**From:** Cantor, Daniel A.
**To:** Steve Herman; Sarah Warlick
**Sent:** Friday, February 27, 2015 9:55 PM
**Subject:** RE: BP Oil - BP Submission to the Settlement Program re Alleged "Alternative Causation"

Steve,

We refer you to the Fifth Circuit's March 3, 2014 decision for an explanation and analysis of the attestation requirement.  The Fifth Circuit expressly held that "[e]ach claimant does attest, though, under penalty of perjury, that the claim in fact was due to the Deepwater Horizon disaster."  *In re Deepwater Horizon*, 744 F.3d 370, 377 (5th Cir. 2014).   The Fifth Circuit further held that "the Settlement Agreement at least requires a formal assertion of the causal nexus."  *Id.*  This requirement flows directly from the Settlement Agreement itself—which limits the class to those with specified losses resulting from the spill and requires sworn claims forms—as well as the clear terms of the claims forms required by the Agreement.  As the Fifth Circuit explained:

> [T]he parties explicitly contracted that traceability between the defendant's conduct and a claimant's injury would be satisfied at the proof stage, that is, in the submission of a claim, by a certification on the document that the claimant was injured by the Deepwater Horizon disaster.  We explain.  The parties agreed to a form that BEL claimants would submit to make a claim.  The introductory section of the form states:  "The Business Economic Loss Claim is for businesses … that assert economic loss *due to the spill*."  (Italics added [by Fifth Circuit]).  The end of the form requires that claimant "certify and declare under penalty of perjury" that all of the information in the claim form is "true and accurate to the best of my knowledge."  The claimant further attests "I understand that false statements or claims made in connection with this Claim Form may result in fines, imprisonment, and/or any other remedy available by law … and that suspicious claims will be forwarded … for possible investigation and prosecution."

*Id.* at 376 (ellipses in original).

The Fifth Circuit similarly held that where an attestation is implausible or suspicious, "such concerns *are to be addressed* in the usual course of processing individual claims."  *Id.* at 378.  "The claims administrator, parties, and district court can resolve real examples of

implausible claims as they resolve other questions that arise in the handling of specific claims."  *Id.*  The Appeal Panel has implemented these holdings:  "The Claims Administrator is not prohibited by the Settlement Agreement from investigating and denying suspicious or implausible claims.  To the contrary, it is part of his duties."  Appeal Panel Decision, Claim No. 10942; *see also*  Appeal Panel Decision, Claim No. 124701 (quoting the Fifth Circuit's March 3, 2014 decision, and explaining that "[w]hat is involved here is not a question of alternative causation, but whether [Claimant's] declaration … was plausible in light [of the facts in the record].");  Appeal Panel Decision, Claim No. 219842 ("This appeal is remanded for the Settlement Program to investigate and consider whether Claimant's claim is 'implausible' and 'suspicious' for the reasons articulated by BP in its Initial and Final Proposals.").

Thanks.

---

**From:** Steve Herman
**To:** Sarah Warlick
**Sent:** Thursday, February 26, 2015 4:46 AM
**Subject:** BP Oil - BP Submission to the Settlement Program re Alleged "Alternative Causation"

- Where in Exhibit 4B, or anywhere in the Settlement Agreement, (or even on the BEL Claim Form), is there a "separate requirement" for the Claimant to specifically attest, under penalty of perjury, that "the claim was, in fact, due to the *Deepwater Horizon* Incident"?

- Where in Exhibit 4B, or anywhere in the Settlement Agreement, or in any Fifth Circuit decision, (or even in BP's own pleadings – *see, e.g., Deepwater Horizon III,* 744 F.3d at 378), is there a concrete standard, definition, or articulation of what it means for a claim to be "in fact due to the *Deepwater Horizon* disaster" – other than as articulated and defined in 4B and/or the other relevant Exhibits to the Settlement Agreement?

- Where, specifically, does the Fifth Circuit hold that the Claims Administrator "must" investigate allegedly "implausible" claims?

- Indeed, when Judge Southwick is discussing the purported "gatekeeper" role of the Claims Administrator in scrutinizing and rejecting "implausible claims" in *Deepwater Horizon III* at 377-378, wasn't he actually describing the position of the Dissent, with which the majority "parted analytical ways"?

- And wasn't any doubt about the issue put to rest by Judge Southwick's further reasons in support of the Denial of Rehearing on May 19th, two months later?

- Is there any person who, on behalf of BP, will formally certify and attest that the Parties, in fact, agreed, on April 18, 2012, to BP's currently proffered interpretation and application of the Settlement Agreement?

Thanks, - Steve

---

**From:** Warlick, Sarah E.
**Sent:** Wednesday, February 25, 2015 9:52 PM
**Subject:** RE: BP Oil - BP Appeals on "Alternative Causation" / Appeal of Claim No. 168243

Attached please find BP's response.  Please ensure a copy is provided to the panelist for this appeal, as well as any other panelist who has received a copy of Class Counsel's amicus filing.

Kind regards,
Sarah

**Sarah E. Warlick**
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Tel.:  202-942-6409
Fax:   202-942-5999
Sarah.Warlick@aporter.com
www.arnoldporter.com

---

**From:** Steve Herman
**Sent:** Friday, February 20, 2015 8:27 PM
**Subject:** BP Oil - BP Appeals on "Alternative Causation" / Appeal of Claim No. 168243

We would appreciate it if you would upload and/or otherwise provide this Class *Amicus* to the Appeal Panelist(s) considering Appeal of Claim No. 168243.

At the same time, we believe that this should be provided to all Appeal Panelists, out of an abundance of caution, to ensure that the record on this issue is clear.

Thanks.

Stephen J. Herman, Esq.
Herman Herman & Katz LLP
Office (direct): (504) 680-0554
E-Mail: sherman@hhklawfirm.com