# EXHIBIT "A"

**Raffield Fisheries, Inc.**

**Claimant ID 100018344**

**Claim ID 103997**

**Claimant's Request for Discretionary Review**

**Undisputed Statement of the Facts**: The Claimant is a six-generational fish company based on the Gulf of Mexico in the Florida Panhandle city of Port St. Joe. The Claimant harvest, lands, process, distributes, ships and wholesales over 80 species of fish, primarily silver-sided fish, caught in the deep waters of the Gulf of Mexico in and near the BP oil spill disaster site. The Claimant's brand "Cap'n Salty" is well known around the United States and the world. The bulk of the Claimant's landings, revenues and profits come from the months of May through September, which are the heart of the fishing seasons in the Gulf of Mexico. The BP oil spill disaster in 2010 robbed the Claimant of these fishing months, and the long-term effects to the deep-water ecosystems threatens the very source of the Raffield families' livelihood. Soon after the oil spill disaster, BP and its contractor (Eagle – SWS) approached the Claimant about leasing their significant premises, facilities and infrastructure so that BP could use it as its easternmost outpost on the Gulf of Mexico to stage and support its VoO Program related operations. The Claimant's fish business had effectively been completely shut down due to the oil spill disaster, so the Claimant signed a lease agreement with BP and support agreement with BP's contractor, Eagle - SWS. From May 11, 2010 to November, 10, 2010, BP and Eagle – SWS took over the Claimant's premises, including the open areas, buildings, dockage, water access and gas/diesel fueling facilities where BP planned, managed, operated, trained, staged, fueled and refueled hundreds of VoO Program workers, participants and charterers.

**First Point**: In calculating the Claimant's revenue in 2010, the Vendors **included** the entire $3,861,971.40 that BP and Eagle – SWS paid to the Claimant for using its premises, facilities and

infrastructure for the operation of its easternmost outpost/headquarters of the VoO Program. The Appeal Panel affirmed. The fatal error committed by the Vendors and Appeal Panel, and point here, is that the Vendors simply **assumed without any factual basis** that 100% of these payments made by BP and/or its contractors were "outside the VoO Program [and] should not be excluded from Variable Profit in the Compensation Period on BEL claims." The Vendors made no attempt to actually determine whether any, some or all of the payments were actually "outside the VoO program" and/or not "vessel-related earnings." Indeed, the only actual evidence submitted, i.e. the Affidavit of the Claimant's Vice President and the invoices related to the payments, undisputedly establish the payments were inside the VoO Program and/or vessel-related earnings. The invoices include payments for such things as "safety boats," "boat captains," "marine fuel man," "gulf county ems ambulance" "j.v.gander (fuel)," "minute man security," "class room for hazmat class," as well as other items clearly inside the VoO Program and/or "vessel-related earnings." Yet, the Vendors and Appeal Panel ignored this documentation and evidence of the payments and simply assigned 100% to the Claimant's 2010 revenue contrary to and in violation of Policy 344 and Exhibit 4C.

**Second Point**: Because of the factually unsupported manipulation of its 2010 revenue, the Claimant's 2010 Variable Profit was artificially inflated by a huge amount thereby severely reducing the Claimant's Compensation Amount to an amount based in fantasy. To make matters worse, the erroneously reduced Compensation Amount is compounded by way of the losing any Risk Transfer Premium (RTP) that should have been calculated on a true Compensation Amount. The RTP is mainly intended to compensate claimants for future losses so the Claimant here is essentially the victim of a double whammy caused by the 2010 revenue manipulation. In other words, the one-time event in 2010 where the Claimant received these VoO Program related

2

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

payments will never occur again to ease any future losses.  But, because of the manipulation of the 2010 revenue, the Claimant's Compensation Amount and related RTP are so artificially low that after subtracting prior spill-related payments, the Claimant's Award is zero.  As such, the Vendors' and Appeal Panel's actions are not only contrary to the undisputed evidence submitted showing the payments in 2010 were in fact for VoO Program and vessel-related earnings and should be excluded from the Claimant's 2010 revenue, but also contrary to Section 4.2.8 of the Amended Settlement Agreement requiring maximization of a Claimant's compensation amount.  At worst, any BP payments for using the Claimant's premises should not be counted as revenue, but should be off-set after the true Compensation Amount and RTP is determined.

**Conclusion**:  Accordingly, this Honorable Court should grant discretionary review and remand this matter back to the Vendors with instructions to make actual factual determinations based on the documentation and evidence, if some, all or any of the monies ($3,861,971.40) paid by BP and/or Eagle – SWS was inside the VoO Program and/or "vessel-related earnings."  Then, upon a proper factual determination and calculation of the Compensation Amount based thereon, the Vendors should issue a new Eligibility Notice.

Dated this 5th day of May, 2017.

>DAVID C. RASH, P.A.
>Attorney for the Claimant
>1655 North Commerce Parkway
>Suite 303
>Weston, Florida 33326
>Telephone:  (954) 515-0072
>Facsimile:   (954) 515-0073
>Primary Email:    david@dcrashlaw.com
>Secondary Email: maileidys@dcrashlaw.com
>
>By:     */s/ David C. Rash*
>          DAVID C. RASH
>          Florida Bar # 977764

3

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073