IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,<br><br>This Document Relates to:<br><br>*No. 2:13-cv-6649* | *<br>*   MDL No. 2179<br>*<br>*   Section: J<br>*<br>*   Judge Barbier<br>*<br>*   Magistrate Judge Wilkinson<br>*<br>* |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE CLAIMS OF THE MEXICAN STATE OF YUCATÁN

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Elizabeth A. Larsen
Kristopher S. Ritter
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Robert C. "Mike" Brock, P.C.
Jeffrey B. Clark
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

*Attorneys for the BP Defendants*

*(Counsel for Additional Defendants Listed on Signature Page)*

**INTRODUCTION**

Defendants BP Exploration & Production Inc., BP America Production Company, BP p.l.c, Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, Triton Asset Leasing GmbH, and Halliburton Energy Services, Inc. (and its product service line Sperry Drilling Services) submit this reply brief to address Yucatán's arguments that its claims under the Oil Pollution Act of 1990 ("OPA") and maritime law should not be dismissed.[1]  *First*, the departure from the plain text of OPA urged by Yucatán is contrary to basic principles of statutory interpretation, and therefore must be rejected.  *Second*, the Fifth Circuit's decision interpreting foreign law in connection with the other Mexican States' claims is binding on this court and may properly be applied here at the motion to dismiss stage.  *See In re Deepwater Horizon*, 784 F.3d 1019, 1030-31 (5th Cir. 2015).

**ARGUMENT**

**I.     Yucatán's OPA Argument Would Require an Impermissible Departure from the Plain Language of the Statute.**

Yucatán acknowledges that the statutory text of OPA requires that foreign claimants must demonstrate, *inter alia*, that "recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." (Yucatán's Opp'n at 6 (Rec. Doc. 22767) (citing 33 U.S.C. § 2707(a)(1)).)  Yucatán likewise concedes that "there has been no certification by the Secretary of State, in consultation with the Attorney General and other appropriate officials that Mexico provides a comparable remedy for United States

---

[1] Plaintiff concedes that its state law claims must be dismissed under the Fifth Circuit's decision concerning the parishes' wildlife penalty claims, *In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014).  (Yucatán's Opp'n at 2 n.1. (Rec. Doc. 22767).)

claimants. . . ."[2]  *Id.* at 7.  Yucatán nonetheless argues that the Court should depart from the statute's plain language because "a certification is not the underlying intent of OPA."  *Id.*

Yucatán's argument violates basic principles of statutory construction, and must therefore be rejected.  As the Supreme Court has explained:

> We begin with the understanding that Congress "says in a statute what it means and means in a statute what it says there," *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).  As we have previously noted . . . , when "the statute's language is plain, 'the sole function of the courts'"—at least where the disposition required by the text is not absurd—"'is to enforce it according to its terms.'"

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000).  Here, the language requiring a certification (or treaty) is plain, and Yucatán does not—and cannot—argue that the requirement of a certification by the Secretary of State is absurd.  To the contrary, there is nothing absurd about Congress requiring that such a determination be made not by the courts but only by a Cabinet Secretary so as to ensure the appropriate and uniform resolution of questions involving important foreign policy implications.  Plaintiff's OPA claims must therefore be dismissed for failing to meet OPA's requirements.[3]

## II. The Fifth Circuit's Previous Ruling on Proprietary Interests under Mexican Law Requires Dismissal of Yucatán's Maritime Law Claims.

Despite the Fifth Circuit's holding that the Mexican Federal government, and not the Mexican States, was the entity that had a proprietary interest in any Mexican natural resources allegedly damaged by the *Deepwater Horizon* oil spill, *see In re Deepwater Horizon*, 784 F.3d 1019 (5th Cir. 2015), plaintiff argues that dismissal of its claims is not appropriate at the motion to dismiss stage.  Specifically, Yucatán argues that neither *res judicata* nor collateral estoppel bar

---

[2]  Yucatán does not argue that recovery is authorized by any treaty or executive agreement.

[3]  Defendants do not, of course, concede that the purported remedies that plaintiff argues are available under Mexican law are, in fact, comparable to the generous and comprehensive compensation scheme available under OPA.

2

its claims because there is no identity of parties between this suit and the suits brought by the other Mexican States.  Plaintiff also argues that in connection with the other Mexican States' claims, this Court and the Fifth Circuit considered affidavits and administrative agreements, and that it should also be entitled to submit such materials, as well as its own expert opinions. (Yucatán's Opp'n at 8-9 (Rec Doc. 22767).)  Yucatán further argues that dismissal is inappropriate because in its complaint, it "alleges that it owns real property that was or will be damaged as a result of the Defendant's negligence." *Id.* at 9.

As a preliminary matter, defendants are not relying on *res judicata* or collateral estoppel, but instead on binding precedent from the Fifth Circuit on a question of law.  "[D]eterminations of foreign law are questions of law. . . ." *See Rosales v. Lynch*, 821 F.3d 625, 629 (5th Cir. 2016); *see also* Fed. R. Civ. P. 44.1 ("The court's determination [of foreign law] must be treated as a ruling on a question of law.").  And, of course, "a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled *en banc* or by the United States Supreme Court." *See*, *e.g.*, *Kerr v. Smith Petroleum Co.*, 909 F. Supp. 421, 426 (E.D. La. 1995) (citing *Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1121, n.8 (5th Cir.1992)).

The Fifth Circuit (like this Court) determined that Article 27 of the Mexican Constitution was "essentially decisive" as to the claims of the other Mexican states, and that other Mexican federal statutes "further establishe[d] federal supremacy with respect to the property at issue." *In re Deepwater Horizon*, 784 F.3d at 1027-1029.  Although the Fifth Circuit considered the affidavits submitted by the other Mexican States it did "[not] find these affidavits persuasive" in large part because "some statements in these affidavits are flatly contradicted by the Mexican Constitution." *Id.* at 1030.  The court concluded:

3

> [T]he Mexican Constitution is sufficiently clear about the distribution of property rights in the country for us to conclude that the Mexican States in no way resemble owners permitted to recover economic damages in our case law. . . . [Mexican] federal law places the bulk of the power here in the hands of the federal government. . . . Plaintiffs' cited affidavits bespeak a role for the states in managing some of the country's property. But they do not provide the Mexican States with the crucial proprietary interest for the purposes of *Robins Dry Dock*.

*Id.* at 1030-31. The Fifth Circuit's conclusions about Article 27 and Mexican statutory law make it clear that its ruling is binding legal precedent as to the respective interests of any Mexican State and the Mexican federal government. There is nothing material that distinguishes Yucatán from the other Mexican States in this regard. Yucatán's submission of any materials, such as affidavits from its ministers or others, could not alter the Fifth Circuit's holding.

Nor do plaintiff's conclusory allegations of ownership change this result. Yucatán specifically identifies the following allegations in its complaint:

> 11. In addition, Plaintiff, and certain local government entities within the borders of Plaintiff, own real and/or personal property that was or will be damaged, or diminished in value as a result of the Spill.
>
> 82. Plaintiff owns, controls, manages, oversees, uses, and/or leases real property. The Spill and the Spill response will likely cause damage to real property owned, managed, overseen, used, and/or leased by Plaintiff in Mexico and Yucatán resulting in physical damage and diminution of property values.

(Yucatán's Opp'n at 4, 5, 9 (Rec. Doc. 22767).) The Fifth Circuit considered similar statements in the affidavits submitted by the other Mexican States claiming that the States "'own[ ], manage [ ], possess[ ] and maintain[ ] [their] beaches, waters, estuaries, rivers, waterways, lagoons and flora and fauna of the Gulf of Mexico." *In re Deepwater Horizon*, 784 F.3d at 1030. As noted, the court did not credit those claims because they "conflict with the language of Article 27." *Id.* There is no reason to give any greater credence to the conclusory allegations from Yucatán that similarly conflict with Article 27.

4

Moreover, specifically as to any coastal real property within the state of Yucatán (the only real property that could even theoretically have been touched by oil—though it is uncontroverted that no oil reached Mexican coasts), this Court has ruled that under Mexican law, all coastal property belongs to the Mexican federal government. The Court held that:

> Mexico's General Law on National Assets ("GLNA") provides that "[a]ssets subject to the public domain regime of the Federal Government shall be exclusively under the jurisdiction of the Federal Powers " and are "inalienable, imprescriptible and unseizable and shall not be subject to any recovery or temporary or permanent possession actions, or any other by third parties." GLNA arts. 9, 13. . . . Public domain regime assets include . . . the maritime beaches [and] the federal maritime-terrestrial zone. . . .
>
> . . . .
>
> Maritime beaches are defined as "the parts of the land which by virtue of the tide are covered and uncovered by the water, from the boundaries of the lowest annual ebb to the boundaries of the highest annual flood.
>
> . . . .
>
> The federal maritime-terrestrial zone (or maritime-land zone, as some have translated it) is defined as "the band of twenty meters wide of firm land, passable and contiguous to beaches or, when applicable, to riverbanks, from their mouth in the sea to one hundred meters upstream."

*See In re Oil Spill*, 970 F. Supp. 2d 524, 530, nn.9-10 (E.D. La. 2013). There is no reason for the Court to depart from its previous legal ruling on this issue.

## **CONCLUSION**

Defendants respectfully request that this Court dismiss the claims of the Mexican State of Yucatán in their entirety.

5

Dated May 19, 2017

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA  70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Elizabeth A. Larsen
Kristopher S. Ritter
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Robert C. "Mike" Brock, P.C.
Jeffrey B. Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

***Attorneys for BP Defendants***

/s/ *Kerry J. Miller*
Kerry J. Miller (#24562)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone:    504-566-8646
Facsimile:    504-585-6946
Email:    kjmiller@bakerdonelson.com

***Attorneys for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH***

*/s/ R. Alan York*
R. Alan York
REED SMITH LLP
State Bar No. 22167500
AYork@ReedSmith.com
811 Main Street
Suite 1700
Houston, TX 77002
Telephone:  713-469-3800
Facsimile:  713-469-3899

Donald E. Godwin
GODWIN BOWMAN & MARTINEZ PC
State Bar No. 08056500
DGodwin@GodwinLaw.com
1201 Elm Street
Suite 1700
Dallas, TX 75270
Telephone:  214-939-4400
Facsimile:  214-760-7332

***Attorneys for Halliburton Energy Services, Inc. (and its Product Service Line, Sperry Drilling Services)***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of May, 2017.

Dated: May 19, 2017                               Respectfully submitted,


                                                  */s/ Don K. Haycraft*
                                                  Don K. Haycraft