UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re:** Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | **MDL 2179** |
| | * | **SECTION: J** |
| | * | **JUDGE BARBIER** |
| **This Document Relates To:** *Pleading Bundle B1* | * | **MAG. JUDGE SHUSHAN** |

| | | |
|---|---|---|
| **Fin & Feather, LLC** *Plaintiff* | * | **CIVIL ACTION No. 16-6118** |
| **VERSUS** | * | **SECTION: J** |
| BP, P.L.C.; Exploration & Production, Inc.; BP America Production Company; Transocean, Ltd.; Transocean Offshore Deepwater Drilling, Inc.; Transocean Deepwater, Inc.; Transocean Holdings, LLC; Triton Asset Leasing, GmbH; Halliburton Energy Services, Inc.; Halliburton Company; and Sperry Drilling Services, a division of Halliburton Energy Services, Inc. *Defendants* | * * * * * * | **JUDGE BARBIER** **MAG. JUDGE SHUSHAN** |

**FIRST AMENDED COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Fin & Feather, LLC, who submits this First Amended Complaint, and who respectfully represents as follows:

**Introduction**

1.

Plaintiff re-avers and re-alleges each and every allegation of fact and law contained in its original Complaint as if specifically re-pled herein in their entirety, and hereby supplements its original Complaint with the following allegations of fact and law. Plaintiff, a charter fishing, hunting, lodging and boat storage business, brings this action to recover damages suffered by

1

Plaintiff, such damages include but are not limited to business economic injuries, damages, and/or losses, as a result of the catastrophic and completely avoidable April 20, 2010 oil spill. The April 20, 2010 oil spill, among other things, created extremely toxic and hazardous conditions which resulted in a massive closure of commercial fishing grounds in Louisiana, Mississippi, Alabama and Florida and resulted in a lack of fishing and business causing Plaintiff to suffer damages. Plaintiff's business is dependent on the commercial fishing and tourism industries in the Gulf of Mexico and Coastal Zone.

## Parties

2.

Made Plaintiff herein is:

(1) **FIN & FEATHER, LLC**, a Louisiana Limited Liability Company authorized to do and doing business in the City of Gretna, Parish of Jefferson, State of Louisiana.

Made Defendants herein are:

(1) **BP EXPLORATION & PRODUCTION, INC.**, a Delaware corporation with its principal place of business in Warrenville, Illinois who is authorized to do and doing business in the State of Louisiana. BP Exploration & Production, Inc. was designated a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution Act of 1990, 33 U.S.C. §2714. This court has personal jurisdiction over BP Exploration & Production, Inc. because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana;

(2) **BP AMERICA PRODUCTION COMPANY**, a Delaware corporation with its principal place of business in Houston, Texas who is authorized to do and doing business in the State of Louisiana. This Court has personal jurisdiction over BP America Production Company because BP America Production Company is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana.

(3) **BP P.L.C.**, a British public limited company with its corporate headquarters in London, England. This court has general jurisdiction over BP P.L.C. pursuant to Louisiana's long arm general jurisdiction provision, in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure BP, P.L.C. is the global parent company of the worldwide business operating under the "BP" logo. BP, P.L.C.

operates its various business divisions, such as the "Exploration and Production" division within BP Exploration and BP America, through vertical business arrangements aligned by product or service groups. BP, P.L.C.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP, P.L.C. and are sufficiently controlled by BP, P.L.C. so as to be BP P.L.C.'s agents in Louisiana and the U.S. more generally. Plaintiff adopts and incorporates by reference all jurisdictional allegations against BP, P.L.C. set forth in Paragraphs 212-218 of the Amended B1 Master Complaint (Doc. No. 1128) filed in MDL 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*.

(Hereafter, BP Exploration & Production, Inc., BP America Production Company, and BP P.L.C. may be referenced herein collectively as "BP")

(4)   **Transocean Ltd**. is a Swiss corporation that maintains U.S. offices in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district.

(5)   **Transocean Offshore Deepwater Drilling Inc.** ("Transocean Offshore") is a Delaware corporation with its principle place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Offshore is affiliated with Transocean Ltd.

(6)   **Transocean Deepwater, Inc.** ("Transocean Deepwater") is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Deepwater is affiliated with Transocean Ltd.

(7)   **Transocean Holdings, LLC** ("Transocean Holdings") is a Delaware corporation with its principal place of business in Houston, Texas, and at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Holdings is affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean Offshore.

(8)   **Triton Asset Leasing GmbH** ("Triton") is a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is affiliated with Transocean Ltd. and is an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

(Hereafter, Transocean Ltd., Transocean Deepwater, Transocean Offshore, Transocean Holdings and Triton may be referenced herein collectively as "Transocean")

(9)   Defendant **Halliburton Energy Services, Inc.** is a foreign corporation organized and existing under the laws of the State of Delaware but that is doing business in the State of Louisiana and within this District, with its principal place of business

        in Houston, Texas, and is registered to do, and is doing, business in the State of Louisiana.

(10)     **Halliburton Company** is a foreign corporation doing business in the State of Louisiana and within this District.

(11)     **Sperry Drilling Services** (formerly Sperry Sun Drilling Services) is a division of Halliburton (formerly Sperry Sun Drilling Services) and was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations.

(Hereafter, Halliburton Energy Services, Inc., Halliburton Company, and Sperry Drilling Services may be referenced herein collectively as "Halliburton")

The Defendant parties listed in numbers (1)-(11) above may be referred to herein collectively as "Defendants".

## **Jurisdiction and Venue**

3.

This Honorable Court has jurisdiction pursuant to the Oil Pollution Act, 33 U.S.C. § 2701, *et seq.* (OPA), and under federal law pursuant to 28 U.S.C. § 1331, as this is a civil action involving the laws or treaties of the United States, including but not limited to general maritime law, general maritime products liability law, and OPA; 28 U.S.C. § 1332, as this is a civil action between citizens of different states where the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs; and 28 U.S.C. § 1333, as this is a civil action of admiralty or maritime jurisdiction.

4.

Venue is proper in this District Court pursuant to 28 U.S.C. § 1391 because the Defendants do business in this District and the events giving rise to Plaintiff's claims occurred in this District. Additionally, venue is proper in this District pursuant to this Honorable Court's

Pretrial Order No. 60, which allows Plaintiff to directly file its complaint arising out of the oil spill in this District.

### Factual Allegations

5.

Plaintiff adopts, incorporates, and re-alleges as if copied herein, *in extenso*, the factual allegations, causes of action, and prayer for relief in the Amended B1 Master Complaint (Rec. Doc. 1128) including any supplemental or amending complaints thereto and its previous joinder thereto.

6.

Plaintiff properly opted out of the Economic and Property Damages Settlement on or about October 30, 2012. On or about January 17, 2013, Plaintiff made presentment of its claims to BP, and allowed at least ninety (90) days for BP to respond to said presentment. Further, on or about April 15, 2013, Plaintiff filed a short form joinder. BP either denied Plaintiff's claim or have failed to adequately consider and respond to Plaintiff's OPA presentment and demand; therefore, Plaintiff is entitled to file this Complaint.

7.

The Deepwater Horizon is and was at all times pertinent hereto owned and/or operated by Defendants Transocean Ltd., Transocean Holdings, LLC, Transocean Offshore Deepwater Drilling, Inc. and/or Transocean Deepwater, Inc. (collectively "Transocean"). The Deepwater Horizon is a semi-submersible offshore mobile drilling unit that was being utilized to perform oil drilling and oil completion operations for the BP Defendants on or about April 20, 2010, in Mississippi Canyon Block 252 on the Outer Continental Shelf.

8.

BP is a designated holder of a lease granted by the Minerals Management Service to perform the oil drilling and oil completion operations, and on April 20, 2010 BP was operating the oil well that is the source of the oil discharge. BP is the specifically designated operator of the lease granted by the Minerals Management Service. BP is strictly liable for all activities and damages surrounding the explosion, sinking and subsequent oil discharge from the site in Mississippi Canyon Block 252 on the Outer Continental Shelf where the Deepwater Horizon was operating.

9.

Halliburton Company and Halliburton Energy Services, Inc. (collectively "Halliburton") were engaged in cementing operations for the Deepwater Horizon at all times pertinent hereto, including at the time of the explosion and subsequent sinking and oil discharge. Upon information and belief, Halliburton performed its cementing operations negligently and improperly, allowing highly combustible gas and other combustible material to escape from the well and subsequently ignite.

10.

Sperry Drilling Services, a division of Halliburton, was response for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations. Upon information and belief, Sperry Drilling Services performed its operations negligently and improperly resulting in the subsequent explosion of the Deepwater Horizon.

11.

On or about April 20, 2010, the "Deepwater Horizon" drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252, and resulting in the worst maritime environmental disaster in United States history.

12.

The Oil Pollution Act, 33 U.S.C. § 2701, *et seq.* (OPA) imposes liability upon a responsible party for a vessel or a facility from which oil is discharged into, or upon, navigable waters or adjoining shorelines for the damages that result from such incident, as well as removal costs.  Defendants are responsible parties as defined by the OPA.  Under the OPA, there is strict liability without regard to negligence.  33 U.S.C. § 2702(a).  Defendants are strictly liable pursuant to § 2702 of the OPA for all the damages to Plaintiff resulting from the oil spill.

13.

BP has admitted responsibility under the OPA and has agreed to waive any statutory limits on liability under the OPA.  Additionally, the United States Coast Guard designated BP as responsible parties under the OPA. BP has been named the responsible party under the OPA and has publicly accepted responsibility pursuant to the OPA. The OPA's liability cap does not apply in this matter as BP has publicly accepted and admitted that the liability cap does not apply. Irrespective of any such admission(s), the liability cap does not apply as BP was grossly negligent in all respects surrounding the operation of the Deepwater Horizon and in causing the explosion, sinking and oil discharge. In addition to damages under the OPA, BP is also responsible for all other damages under maritime and/or state laws.

14.

Plaintiff has suffered compensable damages under the OPA as a result of Defendants' conduct in amounts to be determined by the trier of fact. Under the OPA each of the Defendants are liable for Plaintiff's damages. 33 U.S.C. § 2702.

15.

The blow-out, fire, explosion, sinking and resulting oil discharge have caused and will continue to cause loss of revenue to Plaintiff.

16.

Plaintiff specifically avers and asserts that the Shipowner's Limitation of Liability Act, 46 U.S.C. § 183, et seq. does not apply to the claims asserted in this manner, specifically including but not limited to any claims asserted under the Oil Pollution Act, 33 U.S.C. § 12701 et seq ("OPA") insofar as it abrogates the Shipowner's Limitation of Liability Act. Accordingly, any stay issued by any Court as a result of invocation of the Shipowner's Limitation of Liability Act has no force and effect on this matter.

17.

Plaintiff hereby asserts by adoption and reference a claim in the Complaint and Petition of Triton Asset Leasing GmbH, et al., No. 10-2771; and adopts and incorporates the Master Answer [Rec. Doc. 244] to the Complaint and Petition of Triton Asset Leasing GmbH, et al., in No. 10-2771.

18.

There are many other potential affects from the blow-out, fire, explosion, sinking and resulting oil discharge that have not yet become known, and Plaintiff reserves the right to amend this Complaint once additional information becomes available.

19.

As a result of Defendants' negligence, strict liability, gross negligence, willful and wanton conduct, and violations of applicable safety, construction or operating regulations/statutes, Plaintiff has sustained and will continue to sustain damages and/or losses indefinitely into the future. Said damages and/or losses sustained by Plaintiff and recoverable from the named Defendants include, but are not limited to:

   a. economic, income, property, special, general and compensatory damages;

   b. punitive and/or exemplary damages;

   c. pre-judgment and post-judgment interest at the maximum rate allowable by law;

   d. attorneys' fees, claims preparation expenses, and costs of litigation;

   e. declaratory and injunctive relief; and

   f. such other and further relief and damages available under all applicable state and federal laws, as well as any and all relief that the Court deems just and appropriate.

### **Count One – Negligence, Gross Negligence and Strict Liability**

20.

Plaintiff re-avers and re-alleges each and every allegation previously set forth above as if copied herein *in extenso.*

21.

Upon information and belief, Plaintiff avers that the blow-out, fire, explosion, sinking and resulting oil discharge and damages were caused by the negligence, gross negligence and strict liability fault of the defendants in the following non-exclusive particulars:

   a. Failing to provide seaworthy drilling unit and appliances;

   b. Failing to properly maintain and/or operate the "Deepwater Horizon" and its equipment and appurtenances;

c. Failing to properly train and hire employees and/or agents;

d. Failing to properly inspect the "Deepwater Horizon" to assure that it, its equipment and its personnel were fit for their intended purpose;

e. Failing to timely and properly react to the oil spill and bring it under control;

f. Failing to provide, monitor, and utilize proper and adequate mud control and/or well cap cementing operations;

g. Failing to provide adequate safety equipment;

h. Operating the "Deepwater Horizon" with an inadequate, unlicensed, and/or untrained personnel and/or crew;

i. Violating applicable Coast Guard, MMS, and/or OSHA regulations and various state and local laws, ordinances, and standards;

j Violating the Oil Pollution Act;

k. Violating the Clean Water Act;

l. Failing to react to danger signs, including failure to observe and read gauges that would have indicated excessive pressures;

m. Failing to provide sufficient personnel to perform operations aboard the "Deepwater Horizon";

n. Failing to promulgate, implement, and enforce proper rules and regulations to ensure the safe operations of the "Deepwater Horizon", which would have prevented the disaster;

o. Failing to implement policies and procedures to safely conduct offshore operations aboard the "Deepwater Horizon";

p. Failing to ensure that the "Deepwater Horizon" and its equipment were free from defects and/or in proper working order;

q. Failing to timely warn of the imminent blowout and likely oil spill;

r. Failing to provide appropriate disaster prevention and/or remediation equipment;

s. Defectively designing and/or manufacturing the "Deepwater Horizon" and/or its equipment or appurtenances, including BOPs;

t.  Failing to adequately undertake and implement remediation efforts;

u.  Failing to avoid the blowout and resulting oil spill;

v.  Failing to exercise due care and caution;

w.  Acting in a careless, negligent and reckless manner without due regard for the safety of others or for the potential consequences of an explosion and oil discharge;

x.  Acting in a manner that justifies imposition of punitive damages;

y.  Failing to take appropriate action to avoid or mitigate the accident and resulting damages; and

z.  Such other acts of negligence and omissions as will be shown at the trial of this matter.

22.

The actions of the Defendants, were willful and a violation of applicable standards and statutes, and, as a result, the Defendant's conduct constituted negligence *per se.*

23.

In addition, and in the alternative, the blow-out, fire, explosion, sinking and resulting oil discharge and damages were caused by defective equipment, including the BOP, which were in the care, custody, and control of Defendants and over which the Defendants had custody or *garde.* Defendants knew or should have known of these defects and Defendants are, therefore, strictly liable for them.

24.

The damages to Plaintiff were also caused by or aggravated by the fact that Defendants failed to properly respond to the oil discharge and take necessary actions to mitigate the danger associated with their operations, and failed to have an adequate plan in place to address a blow-

out and/or explosion and fire of the magnitude that occurred and containment of the spill that occurred.

25.

That all of the foregoing acts and/or omissions by Defendants proximately caused and/or contributed to Plaintiff's damages. As a direct and proximate cause of Defendants' acts and/or omissions, Plaintiff has suffered damages associated with the massive closure of fishing grounds which has resulted in a lack of fishing and business.

26.

In addition to the negligent actions described above, and in the alternative thereto, the damages suffered by Plaintiff was caused by the acts and/or omissions of the Defendants, which acts and/or omissions are beyond proof by the Plaintiff herein, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the blowout, fire, explosion, sinking and oil spill resulted from the negligence of the Defendants, and that furthermore, the blowout, fire, explosion, sinking and oil spill would not have occurred had the Defendants exercised the high degree of care imposed on them, and as such, Plaintiff pleads the doctrine of *res ipsa loquitur*.

27.

Plaintiff is entitled to a judgment finding Defendants liable to Plaintiff for damages suffered as a result of Defendants' negligence, gross negligence, and strict liability and awarding Plaintiff adequate compensation in amounts determined by the trier of fact.

## Count Two – Oil Pollution Act

28.

Plaintiff re-avers and re-alleges each and every allegation previously set forth above as if copied herein *in extenso*.

29.

The OPA imposes liability upon a responsible party for a vessel or a facility, such as the "Deepwater Horizon", from which oil is discharged into, or upon, navigable waters or adjoining shorelines for the damages that result from such incident, as well as removal costs.  33 U.S.C. § 2702.  BP has been named and has accepted responsibility under the OPA.  As such, BP is strictly liable to Plaintiff for all damages, including attorney's fees and costs.

30.

Section 2702 (b)(2) of the OPA provides for the type of damages that may be recovered. Plaintiff has suffered the type of damages that may be recovered pursuant to Section 2702 (b)(2), and thereby demands compensation therefor from Defendants, jointly, severally, and *in solido* in amounts to be determined by the trier of fact.

## Punitive Damages Under All Claims

31.

Plaintiff re-avers and re-alleges each and every allegation previously set forth above as if copied herein *in extenso*.

32.

Defendants engaged in conduct so reckless, willful, wanton and in such utter and flagrant

disregard for the safety and health of the public and the environment in their activities leading up to and/or during the blowout, explosions, fire and oil spill, as alleged herein, that an award of punitive damages against them is warranted and necessary.

33.

Defendants' reckless, wanton and/or gross negligent conduct, as described herein, warrants and necessitates the imposition of punitive damages at the highest level, because Defendants' conduct was motivated by financial gain, and injured and endangered human and environmental health and safety, and caused devastating, irreversible and permanent damage to Plaintiff.

34.

Defendants engaged in the following reckless, wanton, malicious and/or grossly negligent conduct:

a. Failed to properly maintain and/or operate the Deepwater Horizon;

b. Operated the Deepwater Horizon in such a manner the safety and integrity of the vessel and the well were disregarded to save time and money;

c. Ignored warnings that the integrity of the well, the cementing job, and the vessel were in jeopardy;

d. Failed to promulgate, implement, and enforce proper rules and regulation to ensure the safe operations of the Deepwater Horizon;

e. Violated MMS regulations for the safe design and operation of the wells and drilling rigs in the Gulf of Mexico;

f. Failed to take appropriate action to avoid or mitigate the accident;

g. Failed to implement policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

h. Failed to ensure that the Deepwater Horizon and its equipment were free from defects, properly maintained and/or in proper working order;

    i.   Failed to provide appropriate disaster prevention equipment; and

    j.   Failed to have an appropriate emergency spill response plan or readily available spill response equipment.

## Jury Trial

35.

Plaintiff requests a trial by jury.

36.

WHEREFORE, Plaintiff prays that the Defendants be duly served and cited to appear and answer this First Amended Complaint and for trial by jury, and after due proceedings, that there be judgment in favor of Plaintiff and against the Defendants, jointly, severally and individually, for the injuries and damages as set forth above, any and all other and further relief and damages available under all applicable state and federal laws, and any general and equitable relief that the Court deems just and appropriate.

Respectfully submitted:

/s/ Joseph M. Bruno
Joseph M. Bruno, (LA Bar No. 3604)
Bruno & Bruno, LLP
855 Baronne Street
New Orleans, Louisiana  70113
Telephone:  (504) 525-1335
Facsimile:   (504) 561-6775
jbruno@brunobrunolaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing First Amended Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this **28th day of June, 2017**.

                                                                    /s/ Joseph M. Bruno