IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 15-30377

United States Court of Appeals
Fifth Circuit

**FILED**
May 22, 2017

Lyle W. Cayce
Clerk

A True Copy
Certified Jun 29, 2017

Lyle W. Cayce

Clerk, U.S. Court of Appeals, Fifth Circuit

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:12-CV-970

In re: DEEPWATER HORIZON

---

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on behalf of themselves and all others similarly situated; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

   Plaintiffs - Appellants

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

   Defendants - Appellees

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

J U D G M E N T

  This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed in part and reversed in part, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
May 22, 2017

Lyle W. Cayce
Clerk

No. 15-30377

In re: DEEPWATER HORIZON

---

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on behalf of themselves and all others similarly situated; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

        Plaintiffs - Appellants

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

        Defendants - Appellees

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

      This appeal addresses the computation of economic losses arising out of the BP oil spill and based on the BP Settlement Agreement. In an attempt to adhere to our decision in *In re Deepwater Horizon* ("*Deepwater Horizon I*"), 732

Case: 15-30377    Document: 00514053857    Page: 2    Date Filed: 06/29/2017
Case 2:10-md-02179-CJB-DPC   Document 23001   Filed 06/30/17   Page 4 of 11

No. 15-30377

F.3d 326 (5th Cir. 2013), the district court has approved a policy adopted by the Claims Administrator known as Policy 495. Policy 495 consists of five methodologies pursuant to which the Claims Administrator is to calculate claimant compensation: one Annual Variable Margin Methodology ("AVMM") and four Industry-Specific Methodologies ("ISMs"). Class Counsel challenges all five. Because the AVMM is consistent with the text of the Settlement Agreement, but the four ISMs are not, we AFFIRM as to the AVMM, REVERSE as to the ISMs, and REMAND for proceedings consistent with this opinion.[1]

## I.

The Settlement Agreement seeks to reimburse claimants for economic losses related to the BP oil spill. Losses that bear a temporal relationship to the spill are said to be related to the spill. Somewhat simplified, and more than somewhat condensed, the claims process works as follows: The Claims Administrator compares a claimant's financial performance prior to and after the spill. If the former is greater than the latter, BP is liable for the difference. Causation is, in all other respects, presumed.

The Settlement Agreement grants each claimant the right to choose his or her Compensation Period, so long as it consists of three or more consecutive months between May and December 2010. The Compensation Period constitutes the post-spill period, which is then subtracted from the same pre-spill period,[2] in order to deduce the damages owed.

We first addressed damages in the context of this litigation in *Deepwater Horizon I*. The question in *Deepwater Horizon I* was whether the Settlement

---

[1] We have jurisdiction to decide this appeal pursuant to the collateral order doctrine. *See Deepwater Horizon I*, 732 F.3d at 332 n.3.

[2] Financial performance in the pre-spill period will, subject to the claimant's choice, be restricted to 2009; 2008 and 2009; or 2007, 2008, and 2009.

Case: 15-30377     Document: 00514053857     Page: 3     Date Filed: 06/29/2017
Case 2:10-md-02179-CJB-DPC   Document 23001   Filed 06/30/17   Page 5 of 11

No. 15-30377

Agreement requires the Claims Administrator to match all unmatched profit and loss statements. Before discussing our holding in *Deepwater Horizon I*, an explanation of the terms "matched" and "unmatched" is in order.

In a matched profit and loss statement, costs follow revenue, which is registered when generated or received. The two appear as part of the same month, and provide a clear picture of net income.

In an unmatched profit and loss statement, costs do not follow revenue. Revenue is registered when generated or received, and costs are registered at least one month earlier when incurred. Unmatched profit and loss statements can, pursuant to the Settlement Agreement, make it appear as if a claimant has suffered damages that he, in fact, did not suffer. Here's how.

Assume that Claimant A is a used car dealer, who chose a Compensation Period of August to October 2010. Assume that during the Compensation Period, Claimant A sold two cars. Assume that both of those cars were sold in September. Assume that the sale generated a combined $50,000 in revenue. And assume that Claimant A paid $40,000 for those two cars in June.

If the costs follow the revenue, *i.e.*, if the claimant's profit and loss statements are matched, the Claims Administrator should conclude that Claimant A generated $10,000 in profits during the Compensation Period. His profit and loss statements, from August to October 2010, should list $50,000 in revenue and $40,000 in costs. The fact that the costs were incurred outside of the Compensation Period in June does not matter, because the costs follow the revenue, which was both generated and received during the Compensation Period in September. Claimant A generated $10,000 in net profits from August to October 2010.

Now assume that Claimant A's financial performance in August to October 2009 mirrored that of August to October 2010. But assume that Claimant A submitted his 2009 profit and loss statements unmatched. If the

Case: 15-30377    Document: 00514053857    Page: 4    Date Filed: 06/29/2017
Case 2:10-md-02179-CJB-DPC  Document 23001  Filed 06/30/17  Page 6 of 11

No. 15-30377

costs do not follow the revenue, the $40,000 that Claimant A incurred in June will not be considered, because June falls outside of the Compensation Period. Claimant A will thus appear to have generated $50,000 in net profits from August to October 2009, and $10,000 in net profits from August to October 2010. And after subtracting the latter from the former, Claimant A will be entitled to 40,000 in damages related to the spill.

In *Deepwater Horizon I*, we sought to determine whether the Settlement Agreement supports this result, or whether the Claims Administrator should be required to match all unmatched profit and loss statements. We noted that

> In interpreting a settlement, surely some weight has to be given to what damages recoverable in civil litigation actually are. If clear words in a settlement require the use of randomly associated numbers for calculating damages, even if there is little likelihood that, after subtracting one of those numbers from the other, the remainder will in fact show anything relevant to damages, then so be it. We do not perceive such clarity here.[3]

Finding the text of the Settlement Agreement ambiguous, we remanded to the district court with instructions to review relevant extrinsic evidence to ensure that the Settlement Agreement was being implemented in a manner consistent with intent of the parties at the time of the Settlement Agreement's ratification.

On remand, the district court held that the parties did not discuss the issue of "matching" prior to signing the Settlement Agreement, but "did discuss and were in agreement that similarly situated claimants must be treated alike." In order to treat similarly situated claimants alike, the district court held that the Settlement Agreement should be interpreted to mandate the

---

[3] 732 F.3d at 339.

Case: 15-30377    Document: 00514053857    Page: 5    Date Filed: 06/29/2017
Case 2:10-md-02179-CJB-DPC   Document 23001   Filed 06/30/17   Page 7 of 11

No. 15-30377

matching of all unmatched profit and loss statements, and ordered the Claims Administrator to craft a policy to that end.

The resultant policy is Policy 495. Policy 495 consists of five methodologies, and effectively divides claimants into two categories: those engaged in construction, education, agriculture, and professional services are subject to ISMs, and those engaged in everything else are subject to an AVMM. Class Counsel objects to all five methodologies. We review the AVMM separately, and the four ISMs together.

## II.

### A.

The AVMM requires the Claims Administrator to match all unmatched profit and loss statements. This means that prior to calculating damages, the Claims Administrator must ensure that costs are registered in the same month as corresponding revenue, regardless of when those costs were incurred. In *Deepwater Horizon I*, we held that the Settlement Agreement is ambiguous as to matching. Where a contractual provision "is ambiguous, such that its construction turns on a consideration of extrinsic evidence, . . . we review the district court's interpretation for clear error."[4]

Class Counsel has not presented evidence sufficient for us to find that the district court's approval of the AVMM constituted clear error, and we now hold that it did not. The Settlement Agreement is a maritime contract,[5] pursuant to which all ambiguities are to be resolved "consistent with the intent of the parties."[6] The parties intended for all "similarly situated claimants [to] be treated alike." Matching unmatched profit and loss statements promotes

---

[4] *See Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 912 (5th Cir. 2013).

[5] *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016); *see also Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992) ("A settlement agreement is a contract.").

[6] *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31 (2004).

5

No. 15-30377

this goal. Error is clear when it leaves us with a "definite and firm conviction that a mistake has been committed."[7] Because we hold no such conviction, the district court's approval of the AVMM is affirmed.

### B.

The ISMs also require matching, but go a significant step farther, requiring the Claims Administrator to move, smooth, or otherwise reallocate revenue for claimants engaged in construction, education, agriculture, and professional services. Claimants in these four industries tend to be paid in lump sums, which are capable of generating damages awards that do not comport with tort principles. Thus, BP argues that the ISMs are necessary in order to ensure that the Claims Administrator can "process claims in accordance with economic reality,"[8] quoting our opinion in *Deepwater Horizon I*.

An example is, once again, helpful. Assume that Claimant A is a farmer, who chose a Compensation Period of August to October 2010. Assume that in 2009, Claimant A sold all of his crops on October 31st, generating $200,000 in net profits. And assume that in 2010, Claimant A sold all of his crops on November 1st, generating $200,000 in net profits again.

Claimant A did not suffer economic losses pursuant to tort principles. His net profits, after all, did not decline from 2009 to 2010.

Claimant A did, however, suffer economic losses pursuant to the Settlement Agreement. The Settlement Agreement precludes the Claims Administrator from considering the 2010 transaction, because it took place in November, outside of the Compensation Period. Thus, BP owes Claimant A

---

[7] *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).
[8] 732 F.3d at 339.

6

Case: 15-30377    Document: 00514053857    Page: 7    Date Filed: 06/29/2017
Case 2:10-md-02179-CJB-DPC   Document 23001   Filed 06/30/17   Page 9 of 11

No. 15-30377

$200,000. $200,000 in net profits in 2009 minus $0 in net profits in 2010 equals $200,000 in damages for Claimant A.

BP argues that the parties did not intend for Claimant A to collect $200,000. And the relevant ISM would preclude this result. The relevant ISM would spread revenue across the crop season, ensuring that damages are awarded to those who have suffered real losses. This may well be a fairer alternative. But it cannot be implemented, because it is inconsistent with the plain text of the Settlement Agreement.[9]

"The interpretation of an unambiguous contract[ual provision] is a question of law, subject to de novo review."[10] "De novo [review warrants] here, as it ordinarily does, a fresh, independent determination of the matter at stake."[11]

The Settlement Agreement grants each claimant the right to choose his or her Compensation Period, consisting of three or more consecutive months between May and December 2010. If the Claims Administrator is permitted to remove revenue from the Compensation Period, and spread it throughout the non-compensation months, the claimant's choice no longer matters. June is the same as December, and November is the same as July.

This is not the agreement that the parties entered into. And we decline to re-write the Settlement Agreement under the guise of contractual interpretation. When we said, in *Deepwater Horizon I*, that the Claims Administrator should "process claims in accordance with economic reality," we

---

[9] *See Luv N' Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016) ("Contractual intent is determined by the words of the contract.").

[10] *Alford*, 716 F.3d at 912.

[11] *Doe v. United States*, 821 F.2d 694, 697—98 (D.C. Cir. 1987) (en banc) (internal quotations omitted); *see also Goodman v. United States*, 518 F.2d 505, 509 (5th Cir. 1975) ("The phrase 'de novo' means 'the court should make an independent determination of the issues.'").

7

—

Case: 15-30377　　Document: 00514053857　　Page: 8　　Date Filed: 06/29/2017
Case 2:10-md-02179-CJB-DPC   Document 23001   Filed 06/30/17   Page 10 of 11

No. 15-30377

assumed that doing so would comport with the text of the Settlement Agreement. That assumption has proven to be wrong in light of the moving, smoothing, and otherwise reallocation of revenue inherent in the ISMs.

The Settlement Agreement grants claimants the right to choose their own Compensation Period. Because the ISMs infringe upon that right, the district court's approval of the ISMs was in error and is reversed.

## III.

The district court's approval of the ISMs was in error because the ISMs require the Claims Administrator to move, smooth, or otherwise reallocate revenue in violation of the Settlement Agreement. However, the ISMs, as stated, also require the Claims Administrator to match all unmatched profit and loss statements.

Having the Claims Administrator match all unmatched profit and loss statements helps ensure that all similarly situated claimants are treated alike, and is consistent with the text of the Settlement Agreement. Thus, we hold that all claimants – including those engaged in construction, agriculture, education, and professional services – shall, on remand, be subject to the AVMM.

## IV.

For the reasons set out above, we AFFIRM as to the AVMM, REVERSE as to the ISMs, and REMAND for further proceedings consistent with this opinion.

## United States Court of Appeals
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

LYLE W. CAYCE  
CLERK

TEL. 504-310-7700  
600 S. MAESTRI PLACE  
NEW ORLEANS, LA 70130

June 29, 2017

Mr. William W. Blevins  
U.S. District Court, Eastern District of Louisiana  
500 Poydras Street  
Room C-151  
New Orleans, LA 70130

    No. 15-30377   In re: Deepwater Horizon  
                        USDC No. 2:10-MD-2179  
                        USDC No. 2:12-CV-970

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                                Sincerely,

                                LYLE W. CAYCE, Clerk

                                By: _____  
                                Connie Brown, Deputy Clerk  
                                504-310-7671

cc:  
    Mr. George Howard Brown  
    Mr. Miguel Angel Estrada  
    Mr. Soren E. Gisleson  
    Mr. Stephen Jay Herman  
    Mr. Samuel Issacharoff  
    Mr. Theodore Olson  
    Mr. James Parkerson Roy  
    Mr. Amir Cameron Tayrani