## BP'S INITIAL PROPOSAL REGARDING CLAIM NO. 162912

The Settlement Program awarded Claimant Mudd & Bruchhaus, L.L.C., a law firm based in Lake Charles, Louisiana, over $2.3 million post-RTP for losses Claimant purported to suffer as a result of the oil spill.  This award rests on an implausible attestation that Claimant's losses were attributable to the oil spill.  In fact, Claimant has generated significant revenue from the oil spill, representing thousands of individuals and businesses asserting claims against BP under the Settlement Agreement.  To date, Claimant has served as legal counsel on over 3,000 claims submitted to the Settlement Program, of which over 650 already have been issued awards totaling approximately $7.5 million post-RTP.  Claimant has settled other claims directly with BP for millions of dollars.  In short, Claimant has profited greatly from the oil spill and it is inconceivable that the spill did anything but *increase* demand for Claimant's legal services.  As such, the award to Claimant should be vacated in its entirety.

Under Fifth Circuit and Appeal Panel decisions, claimants whose attestations are belied by their own financial data or other record evidence cannot recover.  The Fifth Circuit has held that while claimants need not submit evidence of causation to recover under the Settlement Agreement, "[e]ach claimant" must nonetheless "attest . . . under penalty of perjury, that the claim in fact was due to the Deepwater Horizon disaster." *Deepwater Horizon III*, 744 F.3d at 376-77.  As the Fifth Circuit explained, "the parties explicitly contracted that traceability between the defendant's conduct and a claimant's injury would be satisfied at the proof stage, that is, in the submission of a claim, by a certification on the document that the claimant was injured by the Deepwater Horizon disaster." *Id.* at 376.  The claim form thus plays a critical role in satisfying constitutional standing requirements and in vindicating the Settlement Agreement's aim to reimburse legitimate claims while excluding unreasonable and implausible claims.  Here,


EXHIBIT C

consistent with Fifth Circuit precedent, BP challenges Claimant's attestation to a spill-related loss; it does not suggest that Claimant was required to provide evidence of a spill-related loss.

Crucially, the Fifth Circuit has held that the Settlement Program can and must address unfounded attestations, ruling that: (i) "[s]uspicious forms would be subject to investigation," (ii) "[t]he claims administrator, parties, and district court can resolve real examples of implausible claims as they resolve other questions that arise in the handling of specific claims," and (iii) "[t]he attestation, of course, applies to all assertions on the claims form, including the financial figures and other details." *Id.* at 377-78. Likewise, the Appeal Panel has held that "[t]he Claims Administrator is not prohibited by the Settlement Agreement from investigating and denying suspicious or implausible claims. To the contrary, it is part of his duties." Appeal Panel Decision, Claim No. 1094XX (attached as Exhibit 1). Thus, if a claimant attests that the spill caused its loss, but its own statements (or other record evidence) contradict that attestation, the attestation is manifestly suspect and no award is warranted.

This claim presents a real example of an implausible and suspicious sworn allegation of spill-related loss. Claimant is a law firm that "handles personal injury, vehicular accident, environmental, business, oil and gas, and real estate litigation." Claimant Website.[1] It is inconceivable that the oil spill reduced the demand for these legal services. To the contrary, Claimant has seized on the oil spill as a business development opportunity. Claimant has represented multiple clients in the Deepwater Horizon multi-district litigation, accounting for over 3,000 claims submitted, of which 659 have been issued awards totaling approximately $7.5 million (and of those, 629 already have been paid for a total of approximately $5 million). Moreover, these dollar figures do not include substantial claims that Claimant has settled on behalf of its clients directly with BP. *See, e.g.*, News Article (attached hereto as Exhibit 2)

---

[1] *Available at* http://www.lakecharleslawfirm.com/about.

2

(describing Claimant's demand for $12 million on behalf of a claimant for a coastal real property claim, which Claimant and BP settled for millions of dollars). Thus, if anything, Claimant has *profited* from the spill. Put simply, there is no basis to assert that the oil spill had any *adverse* impact on the demand for or costs of the legal services supplied by a law firm like Claimant that is heavily involved in the oil spill litigation. To the extent Claimant believes that it was *adversely* affected by the spill, BP suggests that Claimant should explain the basis for this belief in its briefing on appeal.

* * *

For this reason, BP respectfully requests that the Appeal Panel vacate the award to Claimant and submits an Initial Proposal of $0.


Dated: April 4, 2017