April 14, 2017

<u>**Mudd & Bruchhaus, L.L.C. Final Proposal Regarding Claim # 162912**</u>

Lawyers are often told: "When the facts are in your favor, argue the facts. When the law is in your favor, argue the law." Here, BP has no facts or law in its favor. So instead, BP has taken an approach of attacking the claimant. BP's meritless argument is not consistent with the terms of the Settlement Agreement, was specifically rejected by the 5th Circuit, and quite frankly, is nothing more than a false, desperate attack on the Claimant's credibility. The Claims Administrator's decision must be upheld.

BP's appeal of this matter violates Judge Barbier's Order of April 24, 2013 (See Document 9538, attached hereto as **Exhibit 1**). In the Order, the Court specifically denies all appeals based on the "Alternative Causation Issue." The Order directs the Claims Administrator to refrain from issuing the Notice of Appeal and to proceed with final processing and payment. In this appeal, BP seeks to disguise its "Alternative Causation Issue" as a "calculation error" in an attempt to avoid this Order. However, in its Initial Proposal, BP does not raise any "calculation errors" whatsoever. Instead, BP's sole argument is that Claimant's business loss during the benchmark period as defined by the settlement could not have been caused by the oil spill. Clearly, BP's only argument is that the Claimant's calculated loss was caused by an "alternative causation issue", i.e. something other than the oil spill. Consistent with the Order, the Appeal should be summarily denied, processed, and paid.

BP can point to no portion of the Settlement Agreement to support its arguments. In this particular case, the Claimant submitted all of its documentation during the original application process on March 1, 2013. The Claimant also uploaded all financial data required by the Settlement Agreement and the Claims Administrator, including but not limited to tax returns, income



statements, and profit and loss statements. Claimant's accounting professional filed additional documents performing the appropriate calculations as defined by the Settlement Agreement. Per the Settlement Agreement, the only relevant years to be reviewed are 2007 to 2011.

Additionally and in response to the Claims Administrator's direct requests for additional information, Claimant fully and appropriately responded to several Incompleteness Notices and Follow-up Incompleteness Notices. It is undisputed that Claimant provided all requested data from the Claims Administrator. After review of all of the data, the Claims Administrator concluded that the Claimant had proved its eligibility and that Claimant met the appropriate economic tests detailed in the Settlement Agreement. Accordingly, the Claims Administrator approved the claim. The Eligibility Notice was issued on February 10, 2017.

BP's appeal was filed on March 2, 2017. BP's reason for appeal was detailed as "Calculation Error". Interestingly, BP has abandoned any "calculation error" argument in its Initial Proposal. BP fails to identify any accounting or calculation errors whatsoever. BP has pointed to no evidence whatsoever that the Claims Administrator's calculation is wrong. BP has not and cannot offer any evidence or argument contradicting the accounting data or the calculations performed by the Claims Administrator because the award strictly and accurately complies with the framework of the Settlement Agreement. Simply stated, Claimant's eligibility is clear.

Without any legitimate and relevant arguments, BP resorts to a full attack on the Claimant's credibility. BP resorts to using inflammatory and libelous language suggesting that the claim of Mudd & Bruchhaus, L.L.C. is somehow "unfounded", "implausible", and "suspicious". This unwarranted and false attack is not supported by any relevant evidence, nor any reasonable interpretation of the Settlement Agreement.

What fees Mudd & Bruchhaus, L.L.C. earned after the benchmark accounting period from the claims process or otherwise is completely and totally irrelevant. Yes, Mudd & Bruchhaus, L.L.C. has a successful law practice including three offices in Southwest Louisiana in Cameron, Jennings, and Lake Charles, Louisiana. Yes, Mudd & Bruchhaus, L.L.C. represents hundreds of landowners, individuals, and businesses that filed claims after the benchmark period in the claims process. Yes, Mudd & Bruchhaus, L.L.C.'s clients have had legitimate, compensable wetlands and business economic loss claims that have resulted in payments made after 2013. Yes, Mudd & Bruchhaus has successfully represented these clients in the claims process, in the neutral process, and in direct claims outside the settlement. So what? These facts have no relevance whatsoever as to whether the Claimant meets the applicable criteria for eligibility as defined by the Settlement Agreement for years 2007-2011.

A review of the Settlement Agreement shows that there is no "lawyer or law firm" exclusion. In fact, Claimant submits that the Claims Administrator has approved and BP has paid hundreds of claims submitted by other law firms. The mere fact that Mudd & Bruchhaus, L.L.C. has successfully represented more claimants than other firms after the benchmark period is a red herring. Also, BP did not negotiate for or include any prohibition against law firms that are involved in the oil spill litigation from filing a claim.

BP acknowledges in its Initial Proposal that other than the accounting documentation submitted by Claimant, no other proof is required. Specifically, BP states that "it (BP) does not suggest that Claimant was required to provide evidence of a spill-related loss." For this Appeal Panel, this ends the inquiry. Claimant has provided all accounting data from the benchmark period required by the Settlement Agreement and requested by the Claims Administrator. No other inquiry or evidence is allowed or required.

Despite this concession, BP still needlessly argues that the Claimant's attestation is "inconceivable". BP cites to the *Deepwater Horizon III*, 744 F3rd at 376-77 and then selectively picks language in an attempt to distort the true holding of the Fifth Circuit. This Appeal panel need look no further than Headnote 1 to summarily dismiss BP's argument. Headnote 1 states:

> "Business-economic loss claimants could not be required under settlement agreement with oil company over oil spill to prove their claims to claims administrator with trial-type evidence that their alleged injuries were traceable to oil spill, and thus onus was not on administrator to ensure that implausible claims were adequately scrutinized such that those lacking causal nexus were rejected, since text of agreement and consent decree and its attached exhibit only required formal assertion of causal nexus but otherwise did not require claimant to submit evidence that claim arose as result of spill."

The Fifth Circuit was clear that Claimants like Mudd & Bruchhaus, L.L.C. are required to "meet one of a set of quantitative tests based on their patterns during the pre- and post- Deepwater Horizon disaster periods. *Id.* at 375. The Fifth Circuit confirmed that "the parties explicitly contracted that traceability between the defendant's conduct and a claimant's injury would be satisfied at the proof stage, that is, in the submission of a claim, by a certification on the document that the claimant was injured by the Deepwater Horizon disaster." *Id.* at 376. The Fifth Circuit determined that there is "nothing fundamentally unreasonable about what BP accepted but now wishes it had not." *Id.* at 377.

Here, Mudd & Bruchhaus, L.L.C.'s accounting clearly met the "set of quantitative tests based on their patterns during the pre- and post- Deepwater Horizon disaster periods." The Claims Administrator closely scrutinized the claim as required by the Settlement Agreement by issuing several Incompleteness Notices and requiring the Claimant to supplement the documents with additional data and documentation. The Claims Administrator approved the claim and issued the Eligibility Notice. Thereafter, the Claims Administrator cannot search for "potential alternative

causes for claimants' losses". *Id.* at 378. Fees earned after the benchmark period and after 2013 are irrelevant and do not make the claim "suspicious", inconceivable", or "implausible".

This Appeal Panel should strike from the appeal Exhibits 1 and 2 to BP's Initial Proposal and any reference thereto. Exhibit 1 is Appeal Panel Decision 1094XX. Exhibit 1 is an appeal by a Claimant whose claim was scrutinized by the Claims Administrator and denied by the Claims Administrator after the Claimant was investigated by legal authorities, was operating illegal gambling machines, and who voluntarily gave up its liquor license *all during the benchmark periods*.

Exhibit 2 is basically "fake news" from a conservative, oil company friendly media outlet written in 2016, long after the benchmark period. BP's reference to Exhibit 2 and its reference to a claim settled in 2016 "for millions of dollars" violates the confidentiality provision of the settlement reached relative to that claim. Furthermore, fees earned by Mudd & Bruchhaus, L.L.C. in 2016 have no bearing on the benchmark period.

BP knows that the claim of Mudd & Bruchhaus, L.L.C. was closely scrutinized by the Claims Administrator and found to be totally valid and plausible. For the writer of BP's Initial Proposal to compare the actions, ethics, truthfulness and integrity of Mudd & Bruchhaus' attorneys to those of the Claimant referenced in Appeal Panel Decision 1094XX is nothing more than total, unprofessional desperation.

The Claims Administrator's award must be upheld.