Wayne Ricky Elson Rudder
General Delivery
1800 E Hallandale Beach Blvd,
Hallandale Beach, FL 33009

980 585 9458



U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   JUL 10 2017

WILLIAM W. BLEVINS
CLERK

# UNITED STATES DISTRICT COURT

## IN AND FOR THE NEW ORLEANS DISTRICT, LOUISIANA

| | |
|---|---|
| Antolin Andrew Marks, | Case No.: 10-2975 |
| Plaintiff, | MOTION FOR COURT DETERMINATION OF VALIDITY OF CLAIM |
| vs. | |
| Defendant | |
| | |
| | |
| British Petroleum | |
| Tony Hayward | |
| Bryan Grote        Defendants | |

## MOTION FOR COURT DETERMINATION OF VALIDITY OF CLAIM

1. Notice of Change of Name

   Notice is hereby given that the Plaintiff's name has changed from
   Antolin Andrew Marks to Wayne Ricky Elson Rudder per Court Order
   Attached.

### UNDERLYING FACTS

This matter was first filed in San Francisco District Court as Cause
Number 3:10-cv-02884-CRB.  It was conditionally transferred to this
Court as part of the Courts decision on the BP matters and was made
a part of the Class for economic damages.  Prior to the filing of
the District Court matter the Plaintiff filed two claims with BP

TENDERED FOR FILING

___ Fee_____
___ Process_____
MOTION FOR COURT DETERMINATION OF VALIDITY OF CLAIM - 1   JUL 10 2017
___ CtRmDep_____
___ Doc. No._____

U.S. DISTRICT COURT
Eastern District of Louisiana

1   directly and the two claims numbers are featured on the front face

2   of the complaint filed with the Court.

3   The reason the Complaint was filed with the Court in the first place

4   waws that BP was not taking particular care with the handling of the

5   claims filed with it.  Frustration led the Plaintiff to file the

6   claims with the Court.

7   Upon the transfer of the Complaint the plaintiff contacted t4he

8   Court as to the prosecution of the claims with the Court and was

9   informed by the Court that prosecution would be performed by the

10  assigned counsel.  Plaintiff suffered a series of disabilities, a

11  stroke, a fire at his property, the closure of his business, and a

12  total fire of his dwelling and his offices and could not return to

13  his Louisiana Fishing Lanes part time employment he used for years

14  to augment his income and his immigration business went out with the

15  fires.

16  The claims filed with BP were modest claims seeking merely the loss

17  of income for one year since the immigration business was prospering

18  up until the first fire and the second.

19  Plaintiff also lost contact with his email for three years until

20  recently but did keep in contact with the Court from time to time

21  and with the counsel from time to time.

22  Recently the plaintiff contacted the counsel regarding his claims

23  and was informed that the BP claims were of no substance whatsoever

24  and that new claims had to have been filed with the Counsel in order

25  for damages to be considered and realized.  Thus the Plaintiff's

26  motion which is subject to be a separate class motion only for the

27  reason that there are many people similarly affected in this manner.

28                              **ARGUMENT**

1

2

3   **Under the prevailing law of exhaustion, exhaustion must be had only if a governmental
agency is involved or if the principles underlying the Administrative Procedure Act is
involved. British Petroleum is not a governmental agency and is not buttressed by any
governmental agency.  Exhaustion against BP is not a prerequisite to seeking legal redress.
The following is a missive by email from the Gulf Coast Administrator:** *This is an official
communication from the Claims Administrator for the Deepwater Horizon Economic and
Property Damages Settlement Program ("Settlement Program").*

4

5

6

7

8

9   Good morning.  With respect to the Deepwater Horizon Settlement Program, you submitted a
Registration Form on January 4, 2014 but did not submit any other documentation in support of
your claim or a Claim Form specifying what category of claim you would like to file.  As a
result, we issued you a Notice of Submitted Registration Form but No Claim Form on April 16,
2015.  That Notice included the statement: "If you wish to pursue any claims, you must submit a
signed and completed Claim Form along with any required documents on or before **June 8,
2015,** which is the final claim filing deadline. **If you do not submit any Claim Forms before
the final claim filing deadline, any claims you may have will not be considered timely filed
and therefore will not be reviewed by the Settlement Program."**  You did not submit a Claim
Form and the only document in your DWH claim file remains the Registration Form.
 Accordingly, we are no longer accepting new claim submissions and because you did not submit
a Claim Form by the deadline, there is no longer an opportunity to file a claim.

10

11

12

13

14

15

16

17

18   If you have additional questions about the DWH Settlement Program or need additional
assistance, you may call us at our Claimant Communications Center at 1-800-353-1262 or email
us at Questions@DHECC.com.

19

20              The missive completely dismisses the fact that claims were

21      filed with British Petroleum at the onset of the disaster.  Although

22      the administrator represents that he received a "Registration Form"

23      dated January of 2014, he does not give credit to the fact that two

24      complete claims were filed with BP.  The claim numbers against BP are

25      as follows:  03002457,  6866124244486  and 6866124168801. The

26      exhaustion-of-remedies doctrine requires that procedures established by

27      statute, Common Law, contract, or custom must be initiated and followed

28

MOTION FOR COURT DETERMINATION OF VALIDITY OF CLAIM - 3

in certain cases before an aggrieved party may seek relief from the courts. After all other available remedies have been exhausted, a lawsuit may be filed.

Most commonly, exhaustion of remedies applies where an Administrative Agency has been established by Congress to handle grievances that occur under its purview. For example, if a dispute arises over a provision in a labor contract, the parties may be required to follow specific grievance procedures administered by the administrative agency. After the parties have satisfied each requirement of the grievance process, and the agency has reached its final decision, they may appeal the decision to a higher tribunal.

The rationale behind requiring parties to exhaust their administrative remedies is that the agencies have the specialized personnel, experience, and expertise to sort and decide matters that arise under their jurisdiction. Also, the doctrine of Separation of Powers dictates that an agency created by Congress should be allowed to carry out its duties without undue interference from the judiciary.

The exhaustion-of-remedies doctrine also applies in certain classes of cases where state remedies must be exhausted before a party may pursue a case in federal court. In these situations, exhaustion of remedies is a rule of comity, or courtesy, by which federal courts defer to state courts to make the initial determination as to all claims, federal or state, raised in a case. For example, petitions for Habeas Corpus (release from unlawful imprisonment) by an inmate of a state prison are not heard by a federal court until after all state remedies are exhausted (see Darr v. Burford, 339 U.S. 200, 70 S. Ct. 587, 94 L. Ed. 761 [1950]).

As with most legal doctrines, there are exceptions to the exhaustion-of-remedies requirement. A party bringing a Civil Rights action under 42 U.S.C.A. § 1983 is not required to exhaust state remedies before filing suit in federal court. In Patsy v. Board of Regents, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982), the Supreme Court held that the plaintiff—who claimed she was denied employment by a state university because of her race and her sex—was not required to exhaust her state administrative remedies before filing her suit in federal court, because such a requirement would be inconsistent with congressional intent in passing civil rights legislation.

Similarly, a criminal defense exception has been carved out by the Court. It allows a criminal defendant to raise the defense of improper administrative procedure even in cases where the defendant failed to exhaust all available administrative remedies. For example, in McKart v. United States, 395 U.S. 185, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969), the defendant—who was charged with failure to report for induction into the armed services—was allowed to claim that his draft classification was invalid even though he had failed to pursue administrative remedies.

Finally, courts may allow an exception to the exhaustion-of-remedies doctrine where administrative remedies are inadequate or would cause irreparable harm. In a case involving a claim of Wrongful Discharge from employment, the Supreme Court held that the plaintiff—who may have had to wait up to ten years to be heard by the administrative agency—was not required to exhaust available administrative remedies before commencing a court action (Walker v. Southern Ry., 385 U.S. 196, 87 S. Ct. 365, 17 L. Ed. 2d 294 [1966]).

MOTION FOR COURT DETERMINATION OF VALIDITY OF CLAIM - 5

1     In short, suit is not foreclosed by the failure of any party to

2 not file a claim against BP which is irrelevant here and only relevant to the

3 fact that there are so many persons, up to 121,000 who have been

4 disenfranchised by the Gulf Coast Claims Administrator who have sassereted,

5 wrongly, that those without claims, as written above, are denied their

6 opportunity to seek damages against BP.

7     Even in cases where persons have filed claims with BP directly,

8 as the Plaintiff, those persons are informed, incorrectly, that their claims

9 are foreclosed by the failure to file an additional claim with the new entity

10 established by the Gulf Coast Administrator.

11     A Court cannot invoke an exhaustion requirement where Congress

12 did not mandate one, McCarthy v. Madigan, 503 U.S. 144 and it is not believed

13 that the court has done so here.  Instead, the  reasonable expectation of the

14 Administrator's decisions is that the suit will fail since the denial of

15 benefits of the class action, after the time for opting out, by imposing a

16 second claim requirement, where none was legally required in the first place

17 acts specifically to thwart the legal action and there are so many persons

18 who have been disenfranchised by this factor that the Court needs to appoint

19 separate counsel to view the issue and report to the court on the specific

20 class of persons who filed claims with BP directly and were accorded claim

21 numbers but not given relief through the Administrator's office.  This is

22 what the Plaintiff seeks that the Court does in this case; alternatively, the

23 Court may order the Administrator to locate the claims filed with BP and to

24 honor those claims to the extent it can under the law.

25     In a situation where claims are not required to be filed before

26 legal action, and where both claims were filed and legal action undertaken,

27 the Administrator cannot now foreclose on the claims of so many persons who

28 filed claims with BP in the first instance.  More unreasonable is to further

1   impose a requirement upon those parsons who filed claims with BP to file an

2   additional "Replacement" claim with another agency when no filing of claim is

3   required in the first place.

4         In this case suit was filed after the filing of the claims with

5   BP qand the suit reviewed by the Court and found fit and proper and the suit

6   then included in the class petitions.  Now, to disenfranchise the Plaintiff,

7   the imposition of a requirement that there had been a fourth and fifth claim

8   filed with the BP which is not even a Federal Agency or State Agency. Under

9   Section 704 of the APA exhaustion is required only of an Agency. BP is not an

10  Agency and the Court should allow all claims that have been filed with BP and

11  all suits without claims filed to continue against BP.  Counsel is requested

12  for the presentation of this matter to the court's Attention.

13        As the present Counsel holds a position opposite to the presented

14  issues herein, it is presumed that there is a conflict which will be declared

15  and the Court is requested to appoint counsel for those persons in a separate

16  class which is to be determined as those:

17          1. Those persons who filed claims directly with BP prior to the

18             inception of the second agency.

19          2. Those persons who filed suits against BP but did not file any

20             claims with either BP or with the Gulf Cost Claims

21             Administrator.

22          3. Those persons who have damages against BP but were told that

23             they were "timed out" or ineligible to file claims against BP

24             thus thwarting their legal actions.

25          4. Alr3eady Plaintiff has identified two additional persons who

26             filed claims against BP and heard absolutely nothing from the

27             Administrator because the Administrator did not take the time

28             to contact anyone who filed claims with BP. Gwen P. and

1  William P. of Kenner Louisiana filed claims and did not

2  receive any notices from BP or anyone else in this matter thus

3  disenfranchising them from their damages which, of course, is

4  a miscarriage of justice. A review of all the statutes,

5  including the OPA does not evince an exhaustion requirement in

6  regards a private company.

7  Dated this June20, 2017

8

9  _____

10  Wayne Ricky Elson Rudder

PROOF OF SERVICE

11  I, Wayne Ricky Elson Rudder, a person over the age of eighteen and a

12  plaintiff in this matter do attest to the fact that I have presented the

13  attached motion to the following parties and their counsel by Email, Fax. And

14  Direct mail addressed as follows:

15  jcreevy@hhklawfirm.com <jcreevy@hhklawfirm.com>;
16  Address: 820 O'Keefe Ave, New Orleans, LA 70113
   Fax: (504) 561-6024.

17  Don K. Haycraft (Bar #14361)
18  (dkhaycraft@liskow.com)
   R. Keith Jarrett (Bar #16984)
19  (rkjarrett@liskow.com)
   LISKOW & LEWIS
20  One Shell Square
   701 Poydras Street, Suite 5000
21  New Orleans, Louisiana 70139-5099
   Telephone: (504) 581-7979
22  Facsimile: (504) 556-4108

23  Richard C. Godfrey, P.C.
   (richard.godfrey@kirkland.com)
24  J. Andrew Langan, P.C.
   (andrew.langan@kirkland.com)
25  KIRKLAND & ELLIS LLP
   300 North LaSalle Street
26  Chicago, Illinois 60654

27  Telephone: (312) 862-2000

28  Submitted on the date of

MOTION FOR COURT DETERMINATION OF VALIDITY OF CLAIM - 8

1

Wayne Ricky Elson Rudder

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR COURT DETERMINATION OF VALIDITY OF CLAIM - 9



Wayne Ruder
500 S. Federal Hwy
General Delivery

Hollandale, Florida 33009

U.S. Federal Court
Eastern District Louisiana
500 Poydras St 70113
New Orleans, LA 70123

70113-1016 C002