**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | ) | MDL No. 2179 |
| "Deepwater Horizon" in the | ) | |
| Gulf of Mexico, on April 20, 2010 | ) | SECTION: J |
| | ) | |
| | ) | **Judge Barbier** |
| **This Document Relates to 12-970** | ) | **Mag. Judge Wilkinson** |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO ALTER OR AMEND THE COURT'S FINAL ORDER REGARDING POLICY 495 IN ORDER TO AFFORD CLAIMANTS THE RELIEF REQUIRED BY THE FIFTH CIRCUIT'S POLICY 495 OPINION**

Pursuant to Federal Rule of Civil Procedure 59(e), Motley Rice, LLC, on behalf of Claimant ID 100230771, Claimant ID 100227279, and Claimant ID 100294503 (collectively, "Claimants"), respectfully requests that the Court revise in part its Order [Implementing Fifth Circuit Opinion Re Policy 495] (Rec. Doc. 23003) (the "Final Order"), which adopted and finalized two earlier Interim Orders on the same subject — Rec. Doc. 22872 (the "May 25, 2017 Order") and Rec. Doc. 22935 (the "June 13, 2017 Order"). Claimants have not signed Individual Releases and are entitled to the benefits of the Fifth Circuit's decision in *In re: Deepwater Horizon*, 858 F.3d 298 (5th Cir. 2017), *reh'g denied,* No. 15-30377, 2017 WL 2674235 (5th Cir. June 21, 2017) (the "495 Opinion"). The Final Order, however, erroneously deprives them of the relief secured by the 495 Opinion and the compensation to which they are entitled under the Agreement.[1]

As it currently stands, the Final Order fails to implement the 495 Opinion with respect to Claimants, who did not sign Individual Releases and whose claims were improperly evaluated under Policy 495's "ISMs." Claimants' rights, however, have been vindicated by the 495 Opinion.

---

[1] Unless otherwise defined herein, capitalized terms used herein have the same meaning ascribed to such terms under the Agreement and references to "Rec. Doc." are to the master docket in MDL 2179.

1

The basis for the relief provided under the Final Order is the 495 Opinion itself, not the efforts of any individual BEL Claimant to pursue individual Appeals under Section 6.6 of the Agreement or to inundate the Fifth Circuit with individual judicial appeals. In the context of a Class settlement such as this, "[t]he Court . . . acts as a fiduciary to protect the interests of absentee class members." *Bryant v. Universal Servs., Inc.*, No. CIV. A. 99-2944, 2000 WL 680258, at *2 (E.D. La. May 24, 2000). The Claims Process was not meant to mirror adversarial litigation. Claimants did all that was required to assert their rights by timely filing Claim Forms. Through no fault of their own, the Settlement Program, acting pursuant to and without authority to disregard this Court's previous orders adopting Policy 495, failed to apply the plain language of the Agreement in evaluating these Claims. Class Members such as Claimants had no obligation to inundate this Court and the Fifth Circuit with duplicative requests for the same relief already being pursued on their behalf through the process provided in Section 4.3.4, and consistent with this Court's previous admonition describing such individual appeals as wasteful and unnecessary, declined to consume judicial and administrative resources with Appeals whose outcome was controlled by this Court's earlier Policy 495 ruling and therefore a foregone conclusion. There is no question Claimants have been erroneously deprived of their rights, and there is no reason for the Court not to correct the error BP persuaded it to make in directing that revenue-smoothing under Policy 495 be applied to their Claims. The Court should therefore include Claimants among the Class Members whose Claims it has ordered the CSSP to re-evaluate under the dictates of the 495 Opinion.

## BACKGROUND

This Court is well-versed in the events leading up to the adoption of Policy 495 and the 495 Opinion. Briefly, as relevant here, on March 21, 2014, the Claims Administrator referred a dispute between the Parties over proposed Policy 495 to the Court pursuant to Section 4.3.4 of the

Agreement.  *See* Rec. Doc. 12817-1.  On May 5, 2014, this Court entered an Order approving, and expressly authorizing the Claims Administrator to implement, Policy 495.  Rec. Doc. 12817 (the "May 5, 2014 Order").  Shortly thereafter, the Claims Administrator instituted Final Policy No. 495 and Class Counsel, on behalf of the Class Members, moved this Court to Alter or Amend its May 5, 2014 Order, arguing among other things, that only expenses should be reallocated under a single methodology applicable to all unmatched BEL Claims.  Rec. Doc. 12941-1.  The Court subsequently denied the Motion.  On April 23, 2015, on behalf of the Class Members, Class Counsel promptly appealed this Court's May 5, 2014 Order, Final Policy No. 495, and this Court's Order Denying Class Counsel's Motion to Alter or Amend.  *See* Rec. Doc. 14463.

On May 22, 2017, the Fifth Circuit issued its 495 Opinion.  Its decision accepted Class Counsel's primary argument: that attempting to achieve matching through the reallocation of revenues "is inconsistent with the plain text of the Settlement Agreement."  *In re: Deepwater Horizon*, 858 F.3d at 303.  Under the Agreement, the Claimant has the right to choose his or her compensation period, and "smoothing" or otherwise reallocating revenues from the compensation period negates that choice.  *See id.* at 304.  Accordingly, to the extent Policy 495 requires the Claims Administrator to "move, smooth, or otherwise reallocate revenue," it "cannot be implemented."  *Id.* at 303-304 (explaining that, "This is not the agreement that the parties entered into").  Based on this reasoning, the 495 Opinion struck down Policy 495's "industry-specific methodologies" ("ISMs"), directed that "*all claimants* . . . shall, on remand, be subject to the AVMM," and made clear that "matching" under the AVMM must be as to costs only.  *Id.* (emphasis added).

Seeking to implement the Fifth Circuit's decision, this Court subsequently entered its May 25, 2017 Order, June 13, 2017 Order, and Final Order.  As part of this process, the May 25, 2017

Order recognized that the Fifth Circuit ruled "that the reallocation of revenues was inconsistent with the plain text of the Settlement Agreement . . . ." Rec. Doc. 22872 at 1. This Court also ordered that in BEL claims in which AVMM is applied, "the Claims Administrator shall not reallocate revenues, except for the purpose of correcting errors." *Id.*; *see also* Final Order. The Court's implementation orders failed, however, to apply this directive evenhandedly. Only Claims previously subjected to the ISMs were to be re-reviewed under the AVMM, even though the CSSP also improperly reallocated revenue under AVMM prior to the 495 Opinion. Additionally, among this subset, the Court directed that its May 25, 2017 Order "shall have no effect upon" previously-paid claims or on claims for which no Individual Release has been signed, but the deadlines for Re-review, Reconsideration, CSSP Appeal, Discretionary Review, or Fifth Circuit Appeal have expired or been exhausted. *Id.* at 2.

Claimants each timely filed BEL Claim Forms, and have not signed any Individual Release of their Claims. Claimants' accounting analysis shows that the requirements of Exhibits 4A-4C are satisfied for these Claims if AVMM is applied without revenue-smoothing. Their Claims were wrongly denied, however, because the CSSP used the smoothing or "matching" of revenue under Policy 495's specialized construction and education ISMs to make its determinations. This improper "matching" of not only costs, but also revenue, transformed the Claims from V-Shaped to decline-only or failing causation and resulted in the denial of each of the Claims under the ISMs. An analysis applying AVMM as directed by the Fifth Circuit, however, should show that the Claims meet all BEL Claim requirements and Claimants are entitled to Settlement Payments under the Agreement.

**ARGUMENT**

4

**I.   Claimants, who timely submitted their BEL Claims and have not signed Individual Releases, should not be penalized for not pursuing internal Appeal and discretionary review under Section 6.**

The Agreement does not require, and this Court has discouraged the filing of layers of duplicative appeals reiterating challenges to earlier Court orders, as wasteful and unnecessary. As early as April 2013, this Court cautioned that "[a]ppeals based on legal issues that have already been decided by this Court result in unnecessary delay in the processing of claims and expend time and resources of the Settlement Program." Rec. Doc. 9538 (April 24, 2013 Order).[2] Policy 495 impacted thousands of Claimants. Class Counsel contested Policy 495 before the Settlement Program, this Court, and the Fifth Circuit to secure concrete, BEL program-wide relief. Under the rationale of the Final Order, however, to benefit from Class Counsel's 495 Appeal being pursued on their behalf, each of these thousands of Claimants would have had to have separately initiated their own challenges as many as four times over, by seeking Reconsideration, Appeal Panel review, Discretionary Review by this Court, and ultimately Fifth Circuit review. *See* Rules Governing the Appeals Process at 6 (Rule 8, requiring a "Request for Reconsideration as a Prerequisite for Claimant Appeal"); Section 6 (provisions of the Agreement describing avenues for Reconsideration, Settlement Program Appeals, and requests for Discretionary Review by the Court); *In re: Deepwater Horizon*, 785 F.3d 986, 1000 (5th Cir. 2015) ("*Rule 79 Decision*") (describing the Fifth Circuit's role as reviewing the district court's orders, not the Settlement Program's notices).[3]

---

[2] BP, which has more limited rights of Appeal than do the Class Members, and which agreed to accept some risk by agreeing to immediate payment to Claimants who signed Individual Releases, regardless of later developments, proved unwilling to stop filing such appeals. This Court therefore created a specialized process that minimized the drain on its resources while accommodating BP's desire in this regard. *See* Rec. Doc. 9538.

[3] This Court too, recognized that it is the 495 Opinion, not arguments made in any individual appeal, which requires the reevaluation of BEL Claims on behalf of Class members whom Policy 495

This Court has already acknowledged that the Parties did not intend, and the Court lacks the resources to accommodate such efforts to transform a Claimant-friendly settlement process into adversarial litigation of each Claim in the Court. *See, e.g.*, Rec. Doc. 15643-1 at 2 (Rules Governing Discretionary Court Review of Appeal Determinations (hereinafter "Discretionary Review Rules")) ("[I]t was not anticipated by the parties, nor is it feasible, for the Court to act as the arbitrator of each individual claim."). "The Settlement Agreement provides no right of automatic appeal from the determinations of [the Settlement Program] Appeal Panel," and this Court entertains requests for review only in "exceptional circumstances." *Id.*

Although it limits the requests it will entertain, the Court nonetheless maintains its ability to address Claims through its "inherent jurisdiction over the Settlement as a whole" which, as the 495 Opinion and Final Order evidence, may be exercised, when appropriate, through means other than review under Section 6. In fact, the Agreement expressly provides other avenues to raise disputes over the interpretation of, or seek to enforce rights under, the Agreement. *See, e.g.,* Section 4.3.4; Section 18. Further, nothing in the Agreement prevents the Court from exercising its right to discretionary review of Appeal Panel decisions *sua sponte*. Claimants acted reasonably and respectfully of this Court's resources in relying on Class Counsel's centralized advocacy on their behalf. Nothing in the Agreement or this Courts' Rules required them to instead initiate scattershot, duplicative efforts.

### B. The Court's failure to correct the May 5, 2014 Order's error for Claimants contradicts the Agreement's text and the Parties' intent.

---

deprived of their rights. The Final Order calls for remand and reevaluation of such Claims regardless of whether and to what extent Claimants raise the arguments that ultimately prevailed before the Fifth Circuit in individual appeals under 6.6, so long as there would have remained opportunities available to file requests for further review or appeals. In doing so, it implicitly acknowledged that whether a Claimant raised an individual challenge is, and should be, a moot point at this stage because the Fifth Circuit has conclusively resolved the question on behalf of the Class.

6

The Agreement set forth the *sole* criteria required for Claimants to preserve their rights under the Settlement: submission of a properly signed Claim Form. Section 4.4.5. The Agreement defines a "Claim" as including the supporting documentation required by the relevant framework, but allows Claimants to follow up with such documentation at any point before the termination of the Agreement. *See* Section 6.1.1.1; 38.19. By contrast, nothing in the Agreement makes the Claims Appeal procedures under Section 6 the exclusive means of, or a prerequisite to, correcting errors in implementing or enforcing rights under the Agreement.

The Agreement did not, and was never intended, to create an adversarial system of procedural "gotchas" to deprive Claimants of their substantive rights. Rather, the Settlement Program has an independent duty to assist Claimants in maximizing their compensation, even if the Claimant does not request the most advantageous formulation available. *See* Sections 4.3.7 & 4.3.8. BP itself has acknowledged that the Claims Program has an obligation to assist Class Members in this regard, explaining that the Settlement Program "functions neither as a depersonalized bureaucracy nor as an adversarial system." BP Final Approval Mem. at 19 (Rec. Doc. 7114-1).

The Agreement controls the outcome of Claimants' Claims. Making "preservation" of the rights Claimants have always had under the plain language of the Agreement with respect to their timely-submitted Claims, and making the ability of Claimants to benefit from Class Counsel's 495 Appeal dependent on whether or not a Class Member separately kept their Claim "in process" by filing an individual appeal to the Fifth Circuit would serve no purpose other than to unfairly require some Class Members to have paid a Fifth Circuit filing fee ($505) to obtain the same relief other Class Members will receive without such payment.

### C. Class Members who have not signed an Individual Release have not waived any rights.

The Final Order does not suggest that Class Members who have not signed any Individual Release have waived any rights. And, plainly, they have not. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *Kontrick v. Ryan,* 540 U.S. 443, 458, n. 13, (2004) (internal quotation marks omitted). Many Class Members chose not to defer signing an Individual Release because they were awaiting the outcome of the 495 Appeal, while others whose claims were denied based on the revenue-smoothing held to be contrary to the Agreement likewise relied on Class Counsel's class-wide challenge or simply believed it would be inappropriate to clog the Appeal Panel and Court system with duplicate efforts whose outcome was a foregone conclusion based on this Court's earlier class-wide ruling and delayed the processing of other Appeals. Relying on Class Counsel to obtain reversal of the Orders that adopted Policy 495 and controlled how their Claims would be evaluated, is reasonable and in no way a relinquishment of their rights.

In addition, Class Members had no known recourse other than Class Counsel's efforts on their behalf. The Settlement Program had no authority to disregard the May 5, 2014 Order, and as explained above, this Court refused to reconsider that Order. This Court also previously criticized futile individual requests to revisit Class-wide orders as wasteful drains on administrative and judicial resources. Before May 8, 2015, it was widely believed that there was no right to appeal denials of requests for discretionary review of individual Claims to the Fifth Circuit, and consistent with this understanding, this Court had long declined to docket such decisions in this regard. *See In re Deepwater Horizon*, 785 F.3d 1003 (5th Cir. 2015) ("*Non-Profit Appeals*"); *In re: Deepwater Horizon*, 785 F.3d 986 (5th Cir. 2015) ("*Rule 79 Decision*"). The Fifth Circuit, however, concluded that it had jurisdiction to review orders granting or denying requests for

8

discretionary review under the collateral order doctrine, and ordered that the Discretionary Review Rules be revised accordingly. *See id.*

Even after the May 8, 2015 decisions in the *Non-Profit Appeals* and the *Rule 79 Appeal*, it remained unknown whether the Fifth Circuit would review challenges to denials of discretionary review for the purpose of contesting issues addressed in previous, program-wide orders already on appeal to that Court. The *Non-Profit Appeals* and the *Rule 79 Appeal* invoked the collateral order doctrine as the basis for review. *See id.* "The Court has repeatedly stressed that the conditions for appeal under the collateral order doctrine are 'stringent.'" *See In re Deepwater Horizon*, 793 F.3d 479, 484 (5th Cir. 2015) ("*Data-Access Appeal*") (citing *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 868 (1994)). "The doctrine supplies jurisdiction for a "'small class' of pre-judgment orders that 'finally determine claims of right separable from, and collateral to, rights asserted in the action [and that are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Id.* at 483-84 (quoting *Lauro Lines s.r.l. v. Chasser,* 490 U.S. 495, 498 (1989)). Because the 495 Appeal was filed *before* May 8, 2015, Class Members could reasonably have believed that duplicative appeals seeking review of discretionary-review denials based on that class-wide order would not be considered sufficiently "important" to invoke the collateral order doctrine.

### D. It would be arbitrary and unfair to condition Claimants' ability to benefit from the 495 Appeal on the filing of other, separate appeals.

The 495 Opinion, and this Court's Orders implementing the Fifth Circuit's decision, came about not because of any individual claimants' request for reconsideration, appeal, or discretionary review, but because of Class Counsel's efforts on behalf of the Class as a whole. Additionally and significantly, May 25, 2017 Order and the Final Order recognize that the stage an Individual BEL claim they deem "in process" has reached, and any arguments made by the Individual Claimant in

9

connection with that Claim to date, are irrelevant — regardless, to implement the 495 Opinion, all BEL Claims subjected to revenue-smoothing in violation of the Agreement's express terms must return to square one and be evaluated afresh under the AVMM.

Under this logic, therefore, deadlines for contesting earlier notices by the Settlement Program on a claim-by-claim basis are irrelevant. Nothing, for instance, in the Agreement states that a Claim cannot be re-reviewed after avenues for appeal under Section 6 are exhausted or where such appeals would have been futile based on this Court's class-wide orders concerning interpretive disputes. And, the Agreement expressly authorizes the Settlement Program to implement additional procedures not inconsistent with those expressly set forth by its terms. *See* Sections 4.4.7 & 6.3. To this end, for example, the CSSP has previously developed a Re-review process that applies after an Eligibility Notice or substantive Denial Notice has issued, results in the issuance of a new determination notice, and allows for the Claimant to seek review under Section 6 regardless of whether the deadlines would have expired if applied to the pre-Re-Review determination notice. Specifically, in January 2013, the Claims Administrator ordered a "New Re-Review Process Available to Claimants" who received Eligibility Notices or substantive Denial Notices. *See* Exhibit A at ¶¶ 1 & 5 (CSSP Alert).[4] In doing so, the CSSP has recognized it has the authority to provide a "potential extra review." *Id.* Because this process would take time, Claimants could easily exhaust the time to seek Reconsideration under the Settlement Agreement while awaiting the outcome of the new Re-Review process. This has always been understood, however, to be a non-issue. After the re-review process, the CSSP issues a new Eligibility Notice

---

[4] *Available at*
http://www.deepwaterhorizoneconomicsettlement.com%2Fdocs%2FAlert_New_Re-Review_Process_Available_to_Claimants.pdf&usg=AFQjCNFs3Csa8s2yh7PPPRgqa9pueojjSA

or denial notice, from which the deadlines to seek Reconsideration (and potentially further proceedings within the CSSP or judicial review), then begin to run. For the Court to implement a re-review process for all Claims evaluated under Policy 495, rather than the terms of the Agreement, would be no different.

Even if the Court were to consider the deadlines for CSSP appeals or discretionary review requests relevant, they in no way restrict the relief afforded by the 495 Opinion. First, the Agreement expressly authorizes the Appeals Coordinator to grant extensions of time in connection with the Appeals Process under Section 6.6. *See* Exhibit 25 ¶4. Second, the Agreement also grants the Claims Administrator authority to devise additional procedures not inconsistent with the Settlement Agreement. *See* Sections 4.4.7 & 6.3. The Claims Administrator has long interpreted this authority to include procedures for extensions of or relief from claims-processing deadlines. *See* Exhibit B (Policy 251).[5]

Third, the fact that the Fifth Circuit invoked the collateral order doctrine as the basis of jurisdiction over appeals from denials of discretionary review confirms that Claims determinations by the Settlement Program, and denials of discretionary review, are *not* final judgments, but rather interlocutory in nature. Interlocutory rulings may be reconsidered at any time. *See, e.g.*, *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003); *cf.* Fed. R. Civ. P. 54(b) (providing that interlocutory orders that resolve fewer than all claims are "subject to revision at any time before the entry of [final] judgment").

---

[5] More broadly, where, as here, there is no statutory or jurisdictional requirement for the Court to invoke a deadline as a barrier to relief, the Court should not raise the timing issue *sua sponte*. *Cf. Lebouef v. Island Operating Co., Inc.*, 342 F. App'x 983, 984 (5th Cir. 2009) (holding that a statute of limitations is an affirmative defense that the Court may not raise *sua sponte*).

It is well-established that the failure to appeal an order under the collateral order doctrine is no barrier to subsequent review or reconsideration. This doctrine serves to "*permit* parties, in certain limited circumstances, to appeal orders that are not final"; it "do[es] not *require* parties to file immediate appeals." *Schwarz v. Folloder*, 767 F.2d 125, 129 n.4 (5th Cir. 1985) (emphasis in original) (further explaining that "[m]aking interlocutory appeals mandatory in this manner would turn the policy against piecemeal appeals on its head") (internal quotation marks omitted); *see also, e.g.*, § 3911 Finality —Collateral Orders, 15A Fed. Prac. & Proc. Juris. § 3911 (2d ed.) ("Any rule that requires forfeiture of appellate opportunities for guessing wrong about doctrines of appealability that often are obscure would greatly increase the costs of collateral order doctrine by forcing protective appeals in many situations in which appealability is uncertain and in which all parties might prefer to await review on appeal from the final judgment.").

Fourth, even assuming *arguendo* that CSSP notices or this Court's denials of discretionary review could be considered final orders, it would still be unwarranted and contrary to the Federal Rules of Civil Procedure to categorically preclude any reconsideration of such determinations. Under Rule 60(b), where a judgment "is based on an earlier judgment that has been reversed or vacated," or for other "reason[s] that justif[y] relief, a party may seek reconsideration "within a reasonable time." *See* Fed. R. Civ. P. 60(b) & (c).[6]  Here, the judgment underlying the Claims

---

[6] Additionally, a party may seek reconsideration for other "reason[s] that justif[y] relief," but are not specifically enumerated in Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") "within a reasonable time." *See* Fed. R. Civ. P. 60(b) & (c). Parties may also seek relief under Rule 60(b) based on "mistake, inadvertence, surprise, or excusable neglect" within one year. *Id.* Notably, the Claims Administrator's Policy 251 applies an "excusable neglect" standard similar to Rule 60(b)(1)-(3), but arbitrarily requires that requests for relief be made within 60 days of the deadline at issue. It is wrong to suggest that "excusable neglect" expires, as a categorical rule, in 60 days. Rather, in the context of Class Settlements, where Claimants who, unlike in this case, failed to timely file Claim Forms and sought relief, courts have not set any arbitrary time limit, much less one as short as 60 days, but instead considered the equities and circumstances of each case. *See, e.g., Tate v. Rest. Techs., Inc.*, No. CIV. 09-2076 MJD/JJG, 2011 WL 3609417, at *5–9 (D. Minn.

determinations at issue — this Court's earlier approval of Policy 495, has been reversed and vacated in relevant part, and Claimants promptly pursued this motion promptly following the 495 Opinion and the Final Order, readily satisfying the "reasonable time" standard.

Lastly, Claimants note that BP will in no way be unfairly prejudiced if their Claims are re-reviewed to apply the terms of the Agreement and the AVMM, rather than the Policy 495 method the Fifth Circuit held was contrary to the Agreement and "cannot be implemented." *In re: Deepwater Horizon*, 858 F.3d at 303. The 495 opinion merely returned Claimants, who timely filed Claim Forms years ago, to the position the Fifth Circuit held they should have been in all along. BP's liability therefore is not expanded by a re-review of these existing claims, just as it is not expanded by the other corrective action directed by the Final Order. If anything, BP has benefited from Claimants' reliance on Class Counsel's appeal. Had Claimants filed wasteful and duplicative appeals despite this Court's admonitions not to do so, BP would have incurred the expense of defending and paying the administrative costs of such appeals, on top of correcting the error. The Court also should not ignore that BP benefitted from the delay resulting from the dispute over Policy 495, which has effectively operated to provide an interest-free loan to BP, which benefitted from the time value of money and interest accrued during the lengthy proceedings necessary to correct an error BP urged this Court to make.

## CONCLUSION

For the forgoing reasons, Claimants respectfully request that this Court revise its decision to *sua sponte* deprive them of the relief to which they are entitled under the Agreement and the

---

July 25, 2011) ("Courts have long held that excusable neglect is proper under a wide variety of facts"), *report and recommendation adopted*, No. CIV. 09-2076 MJD/JJG, 2011 WL 3607062 (D. Minn. Aug. 12, 2011); *In re Cendant Corp. Prides Litig.*, 189 F.R.D. 321, 323 (D.N.J. 1999), *aff'd*, 233 F.3d 188 (3d Cir. 2000).

495 Opinion. Claimants ask that the Court order the CSSP to re-evaluate their Claims using the methodology directed by the 495 Opinion.

This 2nd day of August, 2017.

        Respectfully submitted,
        **MOTLEY RICE LLC**

By: /s/ Matthew D. Camm
   Matthew D. Camm, Esq. (LA Bar # 35692)
   Joseph F. Rice, Esq.
   Kevin R. Dean, Esq.
   John A. Baden, IV, Esq.
   Frederick C. Baker, Esq.
   Lisa M. Saltzburg, Esq.
   28 Bridgeside Blvd.
   Mount Pleasant, SC 29464
   Phone: (843)-216-9000
   Fax: (843) 216-9450
   mcamm@motleyrice.com
   jrice@motleyrice.com
   kdean@motleyrice.com
   jbaden@motleyrice.com
   fbaker@motleyrice.com
   lsaltzburg@motleyrice.com

   *ATTORNEYS FOR CLAIMANT IDS*
   100230771, 100227279, and 100294503

## **CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing document will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 2nd day of August, 2017.

                                                   /s/ Matthew D. Camm
                                                   Matthew D. Camm, Esq.