# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG            MDL-2179
"DEEPWATER HORIZON" in the GULF
OF MEXICO, on APRIL 20, 2010

**THIS DOCUMENT RELATES TO:**           SECTION J

ALL ACTIONS               JUDGE BARBIER
                    MAG. JUDGE SHUSHAN

### STATEMENT OF INTEREST AND REQUEST FOR RELIEF
### FILED BY THE STATE OF MISSISSIPPI
### PURSUANT TO § 1715 OF THE CLASS ACTION FAIRNESS ACT OF 2005

Pursuant to 28 U.S.C. § 1715 of the Class Action Fairness Act of 2005 ("CAFA") and their inherent *parens patriae* authority, the Gulf State Attorneys General have a right and a duty to evaluate and address whether the proposed class Settlement, between BP and the Plaintiffs' Steering Committee ("PSC") is fair, adequate and reasonable. In accordance with the responsibility Congress conferred on State Attorneys General to "provide a check against inequitable settlements,"[1] Mississippi Attorney General Jim Hood files this Statement of Interest, objecting to the use of the illegal and illegally-obtained GCCF Releases as an eligibility criteria to exclude 200,000 individuals and entities from the "Economic and Property Damages Settlement Class" definition ("Class Definition") and from the benefits of the proposed "*Deepwater Horizon* Economic and Property Damages Settlement" ("proposed Settlement"), and renews his request to nullify the illegal, illegally-obtained and unconscionable GCCF Releases. The Mississippi Attorney General also seeks relief on behalf of 2,600 claimants, whom the BDO audit identified as having improperly denied claims.

The proposed Settlement has many positive attributes, especially the creation of a Court-supervised, transparent claims process, independently overseen by Special Master Patrick Juneau

---

[1] S. REP. 109-14, S. Rep. No. 14, 109TH Cong., 1st Sess. 2005, 2005 WL 627977 *34 (2005).

as Claims Administrator. However, as noted in the April 13 Statement of Interest filed by Florida Attorney General Pamela Jo Bondi, consideration of whether the proposed Settlement, *in its entirety*, is "fair, adequate and reasonable" is premature. Before the State of Mississippi can accurately assess whether the proposed Settlement is fair, adequate and reasonable, the State respectfully requests that the Court rule on the pending motions and requests that relate to the illegal and illegally-obtained GCCF Releases.

The Class Definition for the "Economic and Property Damages Settlement Class" ("Class Definition") and the exclusions enumerated in the proposed Settlement, improperly propose to incorporate the illegal and illegally-obtained GCCF Releases to exclude almost 200,000 putative class members from the benefits of the settlement and access to the Court-supervised settlement process and Fund.[2] However, the GCCF Releases are unconscionable, contrary to public policy and entered in violation of federal and State law.[3] Consequently, they are unenforceable and void.

---

[2] Section 2.2.6 in the Exclusions in both the Economic and Property Damages Class Definition and the proposed Settlement state that:

> 2.2.6 Any Natural Person or Entity who or that made a claim to the **GCCF**, was paid and executed a **GCCF RELEASE AND COVENANT NOT TO SUE**, *provided,* however, that the execution of a GCCF Release and Covenant Not to Sue shall not prevent a Natural Person or Entity from making a VoO Charter Payment Claim or a Vessel Damage Claim, nor shall a release covering only bodily injury prevent a Natural Person from making Claims under this Agreement.

Docs. 6269-2, p. 9; 6276-1, p. 11.

[3] The GCCF Releases actually are titled: "Release and Covenant Not to Sue." The GCCF Releases purport to do more than abandon or waive a claim or right or agree to refrain from suing on an existing claim. The lengthy "Important Information" section preceding the Release terms states that:

> By signing this document, you are forever waiving and releasing all claims that you may have against BP or any other party….

> By signing the attached Release, you are forever giving up and discharging any rights which you may have for any costs, damages or other relief related to or arising from the [Deepwater Horizon] Incident (excepting claims for Bodily Injury or Securities Claim), even if you are not currently aware of such costs or damages and even if such costs or damages arise in the future (i.e. additional oil impacts) or do not manifest themselves until the future.

Important Information About The Attached Release And Covenant Not To Sue, first and third ¶¶. Nowhere in the Release and Covenant Not To Sue or in the "Important Information" that precedes it are the payments or offers for which the Release purports to be in exchange characterized as a "settlement." Rather, the payments are only called

2

The GCCF Releases violate federal law: (1) by requiring the release of future damages in exchange for a payment from the OPA claims process, in contravention of the 1996 amendments to OPA (*See,* 33 U.S.C.A. §§ 2705(a), 2714(b)(2) and 2715(b)(2)); and (2) because obtained, in many instances, during a period in which BP and its agents intentionally failed to provide a process for presenting, processing and paying interim, short-term damages, in contravention of OPA mandates. (*See, e.g.* 33 U.S.C.A. §§ 2705(a) and 2714(b)(2)).

The GCCF Releases violate State contract law principles because they: (1) purport to release BP (and a 2-page list of other individuals and entities) from liability for all damages, including future damages resulting from gross negligence, that have not yet arisen and are not now known, and punitive damages, in violation of Louisiana statutory law, controlling precedent in this Circuit and public policy;[4] (2) were obtained through exploitation of claimants' economic duress; (3) were obtained in exchange for inadequate consideration; and (4) were obtained without free consent -- claimants did not consent to the release by *choice*, because the *only option* for receiving payment claimants were provided required them to sign this specific release, the terms of which they had no opportunity to negotiate.

Accordingly, the GCCF Releases are void *ab initio* and cannot be given legal affect by agreement of these parties. It would be contrary to the public's interest to permit BP to perpetuate the adverse consequences of its blatant, flagrant and knowing violations of federal and State law. BP must not be permitted to taint the proposed Settlement by incorporation of the

---

"final payments."

[4] Paragraph 3 of the GCCF Release and Covenant not to Sue, states as follows:
> 3. This Release applies to all Claims regardless of the legal or equitable theory (including legal and equitable theories under federal, state, local, and international law, and including without limitation statutory law, regulation, common law, maritime law, strict liability, negligence, *gross negligence, punitive damages,* nuisance, trespass, and all other legal and equitable theories), *whether existing now or arising in the future,* arising out of or in any way relating to the Incident, provided however that this Release does not apply to claims for Bodily Injury or Securities Claim.

(emphasis supplied).

3

unconscionable GCCF Releases into the proposed settlement's class definition and exclusion of claimants who have had such releases illegally extracted from them from the potential benefits of the proposed Settlement. BP was placed on notice by federal and State officials that the GCCF Releases violated federal and State law, *prior to use of the Release*. However, BP and its agents proceeded with impunity to implement the GCCF Releases, without curing the obvious and significant legal defects contained within that instrument.

Timely motions and Requests by the PSC, the Gulf State Attorneys General and the Governor of Louisiana were filed in this Court, as early as January 2011, to end the use of the illegal and illegally-obtained GCCF Releases. Resolution of these long-pending motions and requests to nullify the illegal and illegally-obtained GCCF Releases is imperative now, *before the Court addresses whether the entire proposed settlement is fair, adequate and reasonable*.

Further, the exclusion in Sections 2.2.6 of the Settlement and in the Class Definition must be severed. Nullifying the GCCF Releases and severing the exclusion in Sections 2.2.6 of both the Class Definition and proposed Settlement will significantly impact whether the Gulf State Attorneys General can and will ultimately support or oppose the proposed Settlement as fair, adequate and reasonable. The Mississippi Attorney General respectfully submits that no Settlement or Class Definition that incorporates the illegal, illegally-obtained and unconscionable GCCF Releases, to exclude 200,000 claimants from the settlement benefits, can be deemed fair, adequate or reasonable.

For the foregoing reasons and the reasons set out the attached Memorandum of Law in support of this Statement of Interest, the Court should:

- nullify all of the GCCF Releases to the extent they purport to waive future legal rights, for which no compensation was paid, in violation of Section 2715(b)(2);
- nullify all GCCF Releases, signed between November 23, 2010 and (at least) February 16, 2011, because such Releases were obtained as a result of economic duress and through violation of the OPA-mandated obligation to provide a claims

4

process for the payment of interim, short-term damage claims;

- nullify all GCCF Releases signed in exchange for the arbitrary Quick Pay sum of $5,000 for individuals and $25,000 for businesses, because such releases were likely obtained through payment of inadequate consideration, as this "Quick Pay" sum bears no relation to the true measure of damages resulting from the Deepwater Horizon Incident.

- permit claimants who believe that the Quick Pay sum inadequately compensated them for all damages incurred, the right to present their claims to the Settlement Fund and Special Master Juneau for re-evaluation and payment from the Settlement Fund, if appropriate, and grant them the right to submit future claims to the Fund if additional damages resulting from the Deepwater Horizon Incident are incurred;

- nullify releases signed by oystermen during the period February 16, 2011, through the end of the GCCF process because they were obtained in exchange for inadequate consideration;

- permit oystermen who signed GCCF Releases after February 16, 2011, the right to present their claims to the Settlement Fund and Special Master Juneau for re-evaluation and adjustment according to the formulas contained in the proposed Settlement or permit them to seek interim damages in accordance with OPA;

- permit all claimants, especially the 2,600 claimants with errors identified by the BDO audit, the right and option to present their claims to the Settlement Fund and Special Master Juneau for re-evaluation and adjustment to correct errors in calculation and eligibility determinations by the GCCF;

- permit all claimants who submit claims to the Settlement Fund and Special Master Juneau for re-evaluation and adjustment to detect and correct errors the right and option to choose to receive interim claims for actual damages, especially the 2,600 claimants with errors identified by the BDO audit, rather than accepting a final payment based on any Settlement formula.

- sever the provisions in the Settlement Release that purport to release future damages resulting from gross negligence and punitive damages; and

- sever the exclusions in Sections 2.2.6 of the proposed Class Definition and in the proposed Settlement. (Docs. 6269-2, p. 9; 6276-1, p. 11).

Respectfully submitted this 25th day of April, 2012.

JIM HOOD, ATTORNEY GENERAL
STATE OF MISSISSIPPI

BY: s/ Mary Jo Woods_____
MARY JO WOODS, MS BAR NO. 10468
SPECIAL ASSISTANT ATTORNEY GENERAL

5

Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone No. (601) 359-3680
Facsimile No. (601) 359-2003
Email: mwood@ago.state.ms.us

6

# CERTIFICATE OF SERVICE

I, Mary Jo Woods, Special Assistant Attorney General of the State of Mississippi, do hereby certify that on this date, I filed the foregoing document using the Court's ECF system which will send notification of such filing to all counsel of record in this proceeding.

THIS the 25th day of April, 2012.

s/ Mary Jo Woods_____
MARY JO WOODS, MS BAR NO. 10468
SPECIAL ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone No. (601) 359-3680
Facsimile No. (601) 359-2003
Email: mwood@ago.state.ms.us

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : | MDL-2179  SECTION J |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : | JUDGE BARBIER MAG. JUDGE SHUSHAN |

**STATEMENT OF INTEREST BY THE STATE OF FLORIDA
RELATED TO THE TIMING OF ANY PRELIMINARY APPROVAL DECISION**

**COMES NOW** Pamela Jo Bondi, the Attorney General for the State of Florida ("Florida"),[1] and comments on the Court's consideration of any preliminary approval motion in light of the First Amended Order Creating Transition Process. (Doc. 5995.) Attorney General Bondi offers these comments now due to the lack of information regarding the settlement details as well as the concern that the settlement may be preliminarily approved before this Office and other interested stakeholders have a meaningful opportunity to review and comment on its terms.

Based on this Office's current understanding of the proposed settlement terms, there are at least two major concerns. First, it appears that the settlement will apply only to claims from Florida businesses and residents located in the Panhandle or along the west coast of Florida. Accordingly, thousands of Florida individual and business claims would not be covered by the settlement's terms and may be left without any recourse under the settlement, despite the fact

---

[1] By the filing of this document, Florida does not acknowledge or waive its right to object to federal jurisdiction over any potential action that may be filed as a result of the Deepwater Horizon oil spill. Nor does Florida acknowledge its support for or waive its right to object to the transfer and consolidation of actions brought by any governmental entities into a single action with all litigants having filed claims in connection with this matter.

that BP and even the Gulf Coast Claims Facility ("GCCF") have paid claims from almost every county in Florida.

Second, under paragraph fifteen of the transition order, the Court's preliminary approval of the proposed settlement would apparently result in the immediate discontinuation of the interim claims process, despite the fact that the Oil Pollution Act of 1990 ("OPA") absolutely requires such a process.[2] This could significantly harm those individuals and businesses that have sought and received interim payments but decided not to submit final claims, perhaps due to their concerns over the spill's unknown long-term effects. Requiring such claimants to pursue only final settlements, without regard for whether they can properly assess the value of their final claim, is unfair, contrary to OPA, and even an idea that Mr. Feinberg advocated but later abandoned. Given the many unanswered questions regarding the proposed settlement terms, as well as the unusual and potentially adverse consequences of preliminary approval in this case, Florida respectfully submits that the Court should establish a briefing schedule on the preliminary approval motion to ensure that all concerned parties have an opportunity to review and provide input regarding the proposed settlement terms.

I.  **Introduction**

The Attorney General of Florida is entrusted with protecting the collective legal rights of her citizens and advocating for her State's interests and public policy concerns as a sovereign. *See*, *e.g.*, *State ex rel. Att'y Gen. v. Gleason,* 12 Fla. 90, 112 (Fla. 1869). As Florida's chief legal officer, the undersigned has numerous responsibilities related to the Deepwater Horizon oil spill and its impact on Florida's sovereign interests and the interests of its people, environment, and economy, including monitoring and improving any claims process, for the benefit of all affected Florida citizens and businesses.

---

[2] The Court has recognized that OPA requires an interim claims process. (Doc. 912 at 7, 15.)

2

Most recently, Attorney General Bondi submitted a Statement of Interest (Doc. 5190) opposing the applicability of the December 28, 2011 Order (Doc. 5022) to individuals and businesses that presented their claims to the GCCF but chose not to join the litigation. The Court subsequently ruled that the GCCF payments to individual and business claimants who remained outside of the litigation would not be subject to any holdback obligation. (Doc. 5274.)

General Bondi met with Mr. Feinberg on numerous occasions and offered detailed suggestions for improving the GCCF claims process. However, there has not been any similar opportunity to provide input on the dramatically revised claims process under the proposed settlement. Instead, the proposed settlement terms have been revealed, in broad strokes, only through a PSC memo or newspaper articles. General Bondi plans to continue her advocacy for a fair, responsive, and transparent claims process and looks forward to reviewing the proposed settlement once it is filed with the Court.

**II.     Overview**

After the *Deepwater Horizon* spill, BP, as one of the designated responsible parties, created an OPA claims process for affected individuals and businesses. In the initial months after the spill, BP received and paid OPA claims arising from the oil spill. After criticism of its handling of the claims process, BP agreed to transfer responsibility for reviewing and paying OPA claims to Kenneth Feinberg and the GCCF. Between August 2010 and early 2012, the GCCF paid approximately $6 billion in individual and business claims to Gulf Coast residents, including over $2.5 billion to individuals and businesses throughout the State of Florida.

In early March of 2012, BP and the Plaintiffs' Steering Committee ("PSC") announced that they had reached an agreement-in-principle on the resolution of individual and business claims arising out of the *Deepwater Horizon* spill. To date, many of the terms of the settlement have not been disclosed. On March 8, 2012, the very day of its submission, the Court granted

3

the PSC's Motion to Establish and Govern Transition Process by entering the proposed transition order.[3] (Doc. 5987.)

The Order ends administration of the GCCF claims process and replaces it with the Court Supervised Claims Process ("CSCP"), which applies its own methodology and procedures. In the time between the March 8th Order and the establishment of the CSCP, the claims process is run by a "Transition Coordinator" that allows claimants the choice between GCCF (including an interim payment option) and CSCP methodologies. The PSC is required to file its preliminary approval papers by April 16, 2012. (Doc. 5995.)

The transition order states that "**if the Court provides Preliminary Approval to the proposed Settlement** and the Claims Administrator certifies the Court Supervised Claims Process is ready to open, **then the Court will enter an appropriate Order terminating the Transition Process**." (Doc. 5995 ¶ 7.) (emphasis added) After the end of the transition process, the CSCP and its unspecified methodology for final settlements will apparently be the only option for individual and business claimants seeking compensation for their oil spill losses. Although the Order allows interim claims during the Transition Period, "[w]hen the [CSCP] begins processing claims, there will be no right to request or receive interim payments from the Transition Process or the [CSCP]." (*Id.* ¶ 15.) The transition order thus appears to create a claims process that deprives claimants of a type of relief expressly granted by Congress.

## III. Argument

### 1. The CSCP process appears to improperly disallow interim claims.

OPA was amended in 1996 to expressly require that the "responsible party . . . establish a procedure for the payment or settlement of claims for interim, short-term damages." 33 U.S.C. §

---

[3] The transition order was amended to change one date and make it consistent with the other dates in the document. (Doc. 5995.)

4

2705(a). The interim claim option is a vital part of the OPA claims process because it allows claimants to submit claims (and receive compensation) for only the damages they have suffered to date and not speculate as to future events. Without the interim claim option, claimants can only submit final claims that require a release of all claims, including future and unknown claims.

When BP transferred control of the OPA claims process to the GCCF, one of the issues of contention was the GCCF's policy of not providing an option for interim claims. Interested parties, including the Gulf Coast Attorneys General, reminded the GCCF of the express OPA requirement for interim claims, including through this Office's August 20, 2010 letter to Mr. Feinberg, *available at* http://myfloridalegal.com/webfiles.nsf/WF/KGRG-89JJBR/ $file/LetterToFeinberg9-20-2010.pdf. The GCCF quickly reversed itself and allowed interim claims. According to the limited available information regarding the new CSCP, the PSC has repeated the GCCF's early mistake of not allowing interim claims.

**2. There is insufficient information available to evaluate the settlement terms.**

The settling parties have disclosed alarmingly little about a settlement that would affect such a large group of individual and business claimants. The transition order proposed by the PSC and entered by the Court provides some clues but mostly focuses on how the transition will occur. (Doc. 5995.) However, the PSC has released some limited details about the settlement terms.[5] PSC, Frequently Asked Questions Regarding Deepwater Horizon Economic and Property Damages Settlement, *available at* http://www.weitzlux.com/pdf/BPSettlementEconomicLossFAQ.pdf (last visited April. 11, 2012).

---

[5] The document warns that its terms are subject to modification. However, it is the best publicly available information as of the date of this filing.

5

The PSC document indicates that economic and property damage settlements are open to "[p]eople and businesses who live, work, or own/lease property in the Gulf Coast Area, (the entire states of Louisiana, Mississippi, and Alabama, the four southeastern counties of Texas that lie on the water, and the panhandle and the west coast of Florida), and the adjacent Gulf Waters." *Id.* at 3. This document offers no rationale as to why anyone in the entire states of Louisiana, Mississippi or Alabama can claim economic damages but Floridians and their businesses are limited to specific regions.

The apparent categorical exclusion of large portions of Florida is particularly troublesome as individuals and businesses throughout Florida have received claims payments, both under the BP and GCCF claims processes. Indeed, the GCCF initially wanted to pay claims only for certain geographic regions within the Gulf Coast, but relented after considerable pressure from the Gulf Coast Attorneys General, including through this Office's July 2, 2010 and September 20, 2010 letters to Mr. Feinberg, *available at* http://myfloridalegal.com/webfiles.nsf/WF/JFAO-86YS8N/$file/Feinberg.pdf and http://myfloridalegal.com/webfiles.nsf/WF/KGRG-89JJBR/$file/LetterToFeinberg9-20-2010.pdf. Nor does the document describe what options exists for Floridians located outside of the specific regions who wish to pursue economic claims, despite the fact that any determination on final approval is likely several months away.

The PSC document further discloses that claim settlements will account for geographic location by dividing the class area into four zones and "[b]usinesses and individuals have either causation presumptions or other requirements for causation depending upon geographic location and business/employer types." *Id.* at 7. However, the document offers no description of the geographic zones or the differing causation rules. Until further information and explanation is released about the settlement, it is impossible to assess the potentially large effects that

6

preliminary approval will have on the various interests. At this point, the little information has been disclosed about the settlement and the CSCP appears to provide substantial grounds for fairness objections.

### 3. Preliminary approval of the settlement has abnormally far-reaching implications.

Typically, a grant of preliminary approval to a settlement has little legal effect. "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, Annotated Manual For Complex Litigation, (4th ed. 2009) 501 (Author's Comments to § 21.63). Thus, at the preliminary approval stage, the Court typically determines only whether there is reason to believe that the proposed settlement is "fair, reasonable, and adequate." However, the Court should conduct a far more rigorous analysis of the proposed settlement terms here because preliminary approval directly leads to the apparent elimination of an important and legally required component of an OPA claims process while potentially harming thousands of Floridians by excluding them from viable claims options for no apparent reason.

## IV. Conclusion

The State of Florida's interest is to see that its citizens and businesses are protected and that the recovery from this environmental disaster occurs as soon as possible. The few disclosed details (including the apparent elimination of interim claims and the disparate treatment of Florida individual and business claimants) raise troubling questions about the fairness and rationale behind the settlement and the CSCP policies. Florida respectfully submits that the Court should delay any immediate decision on the preliminary approval motion and instead establish a briefing schedule allowing a meaningful opportunity for review and comment.

**Respectfully submitted**,

**PAMELA JO BONDI**
ATTORNEY GENERAL
STATE OF FLORIDA

BY: /s/ Russell S. Kent

PATRICIA A. CONNERS
Associate Deputy Attorney General
Florida Bar No. 361275
E-mail: trish.conners@myfloridalegal.com
RUSSELL S. KENT
Special Counsel for Litigation
Florida Bar No. 20257
E-mail: russell.kent@myfloridalegal.com

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: 850-414-3300

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Statement of Interest will be filed into the record using the Court's ECF system and will be served on all counsel through Lexis-Nexis File & Serve in accordance with Pretrial Order No. 12 on this 13th day of April 2012.

/s/ Russell S. Kent
Russell S. Kent

8