# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig           MDL 2179

      "Deepwater Horizon" in the

      Gulf of Mexico, on

      April 20, 2010                  SECTION "J"

This Document Relates to:          JUDGE BARBIER

Nos. 12-970, 15-4143, 15-4146 & 15-4654      MAG. WILKINSON

## PLAQUEMINES PARISH SPECIAL COUNSEL'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS PURSUANT TO CONTINGENCY FEE AGREEMENT

NOW INTO COURT, come  Martzell Bickford & Centola, APC, David Landry Esq. and King, Krebs & Jurgens, P.L.L.C. (collectively, "Special Counsel")  who respectfully submit this Memorandum in Support of Special Counsel's Motion for Attorneys' Fees and Costs Pursuant to Contingency Fee Agreement.

## INTRODUCTION

Six years ago, Special Counsel were  engaged to represent the Plaquemines Parish Government  ("PPG" or the "Parish")  through two ordinances (collectively the "Ordinances") duly passed the Plaquemines Parish Council ("PPG Council")  to pursue claims against BP, p.l.c. and other potentially negligent parties arising from the Macondo Oil Spill (the "BP Matter"). The Ordinances passed by the PPG Counsel specifically authorized the then Parish President, William Nungesser, to negotiate and execute a professional services agreement with

Special Counsel for the BP Matter which ultimately resulted in  Special Counsel and PPG executing  that certain Agreement for Professional Services made effective as of April 15, 2011 (the "Contingency Fee Agreement").

After six (6) years of representing the Parish in the BP Matter, Special Counsel were successful in concluding a very advantageous settlement of the BP Matter which was memorialized in that certain settlement and release agreement dated June 8, 2017 (the "Release").[1] Under the terms of the Release, the Parish will receive the total sum of $45,000,000, with $25,000,000 being paid in 2017 and successive annual payments of $5,000,000 over the next four years beginning in 2018.

On August 1, 2017, Special Counsel received the first installment of $15,000,000 from BP into its trust account pursuant to the terms of the Settlement Agreement.  In anticipation of the receipt of this initial $15,000,0000 payment from BP, Special Counsel provided PPG's current Parish Attorney and current President, Amos Cormier, with a disbursement schedule (the "Fee Disbursement Schedule") to be executed by PPG and Special Counsel which reflected the amounts to be disbursed to the Parish and the agreed upon contingency fee owed to Special Counsel.  The Fee Disbursement Schedule also included a statement of costs reflecting the hundreds of thousands of dollars in costs that have been advanced by Special Counsel over the past six (6) years, the vast majority of which were for multiple subject matter experts necessary to make the presentment of the Parish's claim to BP pursuant to this Court's Order.

PPG's President has refused to execute the Fee Disbursement Schedule and has requested, through its Parish Attorney, that the contingency fee amount and costs due Special

---

[1] The Release is designated as "confidential" and will be submitted under seal via subsequent filing.

Counsel be retained in the trust account of Special Counsel, which direction Special Counsel has complied with.  The Parish has been sent and has now acknowledged receipt of its balance of the initial $15,000,000 payment.  However, PPG, though its Parish President, Amos Cormier, and the PPG's Parish Attorney, Peter Barbee, has refused to allow Special Counsel to take the fees and costs owed to them, claiming that the Contingency Fee Agreement duly executed by the then PPG President, William Nungesser, and specifically approved by the Ordinances passed by the Parish Counsel in office at the time is not enforceable because the Parish Attorney claims that certain unspecified "legislative documents" to support the Contingency Fee Agreement have not been provided.

As set forth more fully below, this objection is totally without merit.  Indeed, for PPG to advance such a preposterous and baseless argument after six (6) years of tireless and very successful efforts by Special Counsel in achieving one of the very largest settlements received by any parish or political subdivision is inexplicable. Special Counsel seeks the intervention and inherent powers of this Court to enforce matters related to the Release and to promptly rectify this miscarriage.  The Contingency Fee Agreement and Release are valid and unassailable and this Court should enforce their terms.

It is more than a bit ironic that the contingency fee to be received by Special Counsel amounts to 12.7% of the settlement amount which is considerably lower than the amount received by other firms representing local parishes and other political subdivisions where the contingency fees have ranged from 18% to 25%, with 25% being by far the most common contingency fee amount.  While Special Counsel have no doubt as to the enforceability of the Contingency Fee Agreement, if this Court should conclude otherwise, Special Counsel are entitled a *quantum meruit* award for their services which Special Counsel respectfully submit

should be commensurate with the percentage fee received by firms representing nearby and similarly situated parishes and political subdivisions in the BP Matter.  Based on the contingency fee amount received by these other law firms which, in most, if not all, cases, involved far less extensive work efforts than that required of Special Counsel and a fraction of the expert costs advanced by Special Counsel in support of the Parish's claim, Special Counsel's fee, based on a *quantum meruit*, should be increased substantially from the amount set forth in the Contingency Fee Agreement.  If it is ultimately determined that Special Counsel's fee is to be based on a *quantum meruit* recovery basis, Special Counsel request that their fee be adjusted upward to reflect the fees received by similarly situated firms and at the higher end of the 18% to 25% range stated above.

## I. The Contingency Fee Agreement

In March of 2011, the Parish issued a Public Notice soliciting "Statements of Qualification for Attorney(s) of Firm(s) interested in providing legal services related to the recovery of damages to local government properties, and reimbursement of expenses and lost revenues incurred by local government due to the Deepwater Horizon oil spill and other similar matters for the Parish of Plaquemines, State of Louisiana." *See Public Notice attached hereto as Exhibit A.*

In response to the Public Notice Special Counsel submitted the requested Statements of Qualification which were subsequently reviewed by the Parish Council.  On April 14th, 2011, via Ordinance No. 11-77, the Parish President was authorized by the Parish Counsel to enter into negotiations and execute contracts for professional legal services with Special Counsel Martzell & Bickford and attorney David Landry.  *See Ordinance No. 11-17 attached hereto as Exhibit B.* Subsequently, on August 11, 2011, a second ordinance, No. 11-238, was passed approving the

addition of King, Krebs & Jurgens as Special Counsel in connection with the professional legal services requested.  *See Ordinance No. 11-238 attached hereto as Exhibit C.*

On the date the first ordinance was passed, the former Parish Attorney, Stephen Braud, read the specific terms of the contingency fee arrangement into the record, including the fact that Special Counsel would be paid a contingency fee of 15% on the first $25,000,000 of the Parish's recovery and 10% on any recovery in excess of that amount.  It was also announced that Special Counsel would be responsible for advancing all costs and expenses related to the litigation, meaning that the Parish would have no outlay or expenditure of costs in connection with the BP Matter.[2]   After the record was closed, the Parish Council voted unanimously to engage Special Counsel under these terms. *See Exhibit B.*

Because the initial selection of Special Counsel occurred only six (6) days before the possible prescription of some of the Parish's claims, Ordinance 11-77 included a section recognizing the emergency position that the Parish was in, stating " [T]he Secretary of this Council is hereby authorized and directed to immediately certify and release this Ordinance and that Parish employees and officials are authorized to carry out the purposes of this Ordinance, both without further reading and approval by the Plaquemines Parish Council."  On approving the second of the Ordinances (No. 11-238), the Parish Council specifically stipulated that it "approve[d] the professional services contract jointly with Martzell Bickford, L.L.C., David Landry, Of Counsel to Martzell Bickford, and King, Krebs & Jurgens, L.L.C. for their professional legal services for the representation of the Parish…"  *See Exhibit C.*

On August 24, 2011, pursuant to the authorizations provided under Ordinance 11-77 and 11-238, the Parish, through its former Parish President Billy Nungesser, executed an "Agreement

---

[2] A physical copy of the recording of the announcement will be submitted to the Court via separate filing.

for Professional Legal Services with Special Counsel" (i.e. the Contingency Fee Agreement"). *See Contingency Fee Agreement attached hereto as Exhibit D.* In accordance with the prior stipulation made by the Parish Counsel, attorneys' fees under the Contingency Fee Agreement were set at 15% of the first $25,000,000 in recovery and 10% of any amounts recovered in excess of that amount. (See Exhibit D, pg. 2). The Contingency Fee Agreement further provides that Special Counsel shall advance all costs associated with the litigation but that these costs will be reimbursed out of the Parish's net recovery. *Id.*

Special Counsel subsequently sought confirmation from the Louisiana Attorney General that it did not require separate approval from the Attorney General's Office in order to be retained by the Parish on a contingency fee basis. *See letter to Assistant Attorney General Richard McGimsey, dated September 24, 2012, attached hereto as Exhibit E.* The Attorney General's Office referred Special Counsel to Opinion Number 05-0255 and advised that no separate approval from the Attorney General was required. *Id.*

Subsequently, Special Counsel retained over a dozen experts, and has spent thousands of hours preparing its claims against both the BP Entities and HESI/Transocean. Special Counsel has continued to represent the Parish without compensation or reimbursement of costs up until the present time.

## II.  The Settlement and its Aftermath

On June 8, 2017, after many years of preparing the Parish's complex claim against BP and prolonged negotiations with BP and the court appointed neutrals, PPG settled all of its BP-related claims for $45,000,000.00 pursuant to the Release executed with BP, p.l.c., BP Corporation, North America Inc., BP Exploration and Production, Inc. and their related entities (the "BP Entities").   The Release was executed BP, Amos Cormier, III, as Plaquemines Parish

President, and Scott Bickford, as Special Counsel for PPG.   The Release contains the following

warranty with regard to attorneys' fees and costs on the part of PPG:

> Claimant [PPG]…represents and warrants that Claimant and
> Claimant's counsel [Special Counsel] hereby acknowledge and agree
> that the payment to be paid to Claimant pursuant to Paragraph 2
> includes monies that fully and finally satisfy any and all fees and
> costs (including as to attorneys, accountants, experts, and other
> service providers) in respect to representation of or assistance to
> Claimant by any counsel, accountant, expert, or other service
> provider, whether current or former, including but not limited to any
> fees and costs asserted by lien or privilege, in connection with the
> Claims and the rights of such counsel, accountant, expert, or other
> service provider to them that are being released by this Agreement.
>
> (Release, paragraph 17).

The Release was executed upon the authorization of the Parish Counsel on April 27,

2017 via Ordinance 17-47.  *See Ordinance 17-47 attached hereto as Exhibit E.*  During the

executive session, where the terms of the settlement were discussed, Special Counsel Bickford

and Landry briefed the Parish Counsel on the manner in which the $45,000,000 in funds would

be distributed and provided them with the Fee Disbursement Schedule which detailed the fees

and costs that would be owed to Special Counsel pursuant to the Contingency Fee Agreement.

*See Trust Account Settlement Form, attached hereto as Exhibit F.*   The Parish Council

members were  fully informed of the fees and cost reimbursements due Special Counsel

pursuant to the Contingency Fee Agreement and made no objection.       Newly      appointed

PPG Parish Attorney, Peter Barbee, subsequently requested that Special Counsel supply him the

documentation related to the Contingency Fee Agreement.  On June 13, 2017, Special Counsel

transmitted the requested materials, including the Ordinances authoring the retention of Special

Counsel, the Contingency Fee Agreement and the letters whereby Special Counsel renewed the

terms of its representation in accordance with the terms of the Contingency Fee Agreement.

*See letter to Peter Barbee from Scott Bickford dated June 13, 2017, attached hereto as Exhibit G.*

In accordance with the terms of the Release, the first payment of $15,000,000.00 million was deposited by the BP Entities into the trust account of Martzell, Bickford and Centola, APC on August 1, 2017.  On July 31, 2017 or one day before Special Counsel received the settlement funds, the Parish Attorney instructed Special Counsel to not take its portion of the attorney fees and costs contractually owed to them under the Contingency Fee Contract but instead to hold them in trust which Special Counsel have done.  *See Ltr. from P. Barbee to S. Bickford, dated July 31, 2017, attached as Exhibit "H".*

In his July 31, 2017 letter, the Parish Attorney claimed that PPG had not been provided with sufficient documentation of the Contingency Fee Agreement to authorize the distribution of attorney fees and costs to Special Counsel.  *See Exhibit "H".*  The Parish Attorney also invited the Special Counsel to contact him to discuss the resolution of the fee and cost issue.  *Id.*

In accordance with the instructions from the Parish Attorney, and pursuant to the Louisiana Rules of Professional Conduct, Special Counsel sent  the net proceeds (net of the funds owed Special Counsel) of the first installment of  settlement funds amounting to $8,564,943.38 to PPG on August 1, 2017, and retained the amount of $5,757,000.00 in attorney fees and $685,056.62 in costs in Special Counsel's trust account. *See letter from Scott Bickford to Peter Barbee dated August 1, 2017 attached hereto as Exhibit I.*

In his August 1, 2017 letter, Special Counsel (which had previously provided the information requested in the PPG Parish Attorney Letter via confirmed hand delivery on June 13, 2017)(See Exhibit G), once again included the materials requested,  which contained a true and correct copy of the fully executed Contingency Fee Agreement, a statement setting forth the

proposed distribution of fees and costs pursuant to the Contingency Fee Agreement and the PPG Council Ordinances authorizing PPG to enter into the Contingency Fee Agreement. *Exhibit I.* As requested, Special Counsel, through attorney Henry King, also made several attempts to contact the PPG Parish Attorney to discuss the fee and cost issue. However, Special Counsel did not receive a response from the PPG Parish Attorney.

Accordingly, on August 7, Special Counsel sent a letter to the PPG President Cormier, formally requesting that PPG allow for the release of fees and costs due Special Counsel pursuant to the Contingency Fee Contract. *See Letter from S. Bickford to PPG President, A. Cormier, dated August 7, 2017, attached as Exhibit "J."*

Although neither President Cormier nor the PPG Parish Attorney replied to this letter, nor the several preceding letters dating back to June 2017 forwarding all requested documents and the Ordinances approving the Contingency Fee Agreement, President Cormier and the PPG Parish Attorney did make public statements regarding their intentions at an appearance at the ParishCouncil budget committee meeting on August 7, 2017. There, President Cormier suggested that PPG's budget "will probably go up by at least possibly another five [million dollars]" due to his intention not to pay Special Counsel what they are due under the Contingency Fee Contract. *See Transcript of August 7 budget meeting attached hereto as Exhibit K.*

In response to this meeting, Special Counsel, Scott Bickford, sent yet another request that the Parish release the fees and costs owed pursuant to the Contingency Fee Agreement. *See 8/9/17 email from S. Bickford to P. Barbee, attached as Exhibit L.* This correspondence, too, went unanswered.

To date, PPG has refused to authorize release of those funds and has similarly refused to articulate its objection to Special Counsel's amicable demands for payment in accordance with the Contingency Fee Agreement.

### III. <u>History of the Litigation</u>

The settlement that Special Counsel achieved for PPG with BP was over $35,000,000.00 *greater* than the Neutral's June 24, 2015 settlement recommendation, which was initially presented as PPG's best and last chance to resolve this claim.  After more than two years of additional negotiations with the BP Entities and the Neutrals, and with the expenditure of hundreds of thousands of dollars in order to establish the full extent of PPG's property ownership rights, Special Counsel were successful in negotiating a much more favorable settlement for the Parish than originally offered by BP.

As this Court is aware, PPG sustained more oiling from the Deepwater Horizon explosion and release than any other parish or county in the United States.   PPG itself, as title holder of over 100,000 acres of wetlands, sustained more oiled acreage than any public landowner other than the State of Louisiana.  For this reason, PPG's claim was unique among and vastly more complex than the other local government entities which alleged economic-only damages.

In the six (6) years prior to reaching this settlement, Special Counsel spent thousands of hours developing and pursuing the PPG claim and incurred nearly $700,000 in out-of-pocket expenses in this effort involving a wide array experts. Before actively litigating in this Court, Special Counsel spent months investigating every aspect of PPG's claims, ultimately culminating in a 176 page OPA Presentment of damages including lost tax revenue, damage to fisheries, cost of coastal monitoring, increased cost of coast restoration and flood protection projects, accelerated costal erosion, wetlands damages, cost of marketing to reverse stigma damages, and

increased costs due to medical and mental health services.  Unlike the vast majority of local government entities, Special Counsel reviewed, preserved, and developed its own data, testing, and evidence and conducted numerous wetlands inspections. The scope and breadth of PPG's claims required Special Counsel to retain and coordinate the efforts of well over a dozen experts in fields as diverse as hydrology, coastal oceanography, oil remediation and SCAT, hydromorphology, toxicology, marine ecology, satellite imagery, geophysical information systems, title work, tourism, advertising, accounting, government economics and fisheries economics.

Special Counsel's efforts to negotiate a settlement with BP began years before this summer and included meetings with BP and its representatives in Houston and New Orleans, nearly a year of compiling land holding data requested by BP's local government counsel for settlement purposes (at the cost of hundreds of thousands of dollars), and numerous conferences with the Magistrate Judge Shushan, Pat Juneau, Mike Juneau, Drake Martin, Mike Moore, and BP counsel.

In addition to these extensive settlement negotiations and bearing the considerable cost of experts and  the risks inherent in this very complex litigation, Special Counsel engaged in significant motion practice in the MDL to protect PPG's interests and were tasked by Magistrate Wilkinson with proposing an allocation of HESI/Transocean punitive damage funds between New and Old Class members.  These efforts, which were single handedly undertaken  by Special Counsel, resulted in the allocation of 72.8% of the HESI/Transocean settlements to New Class Members such as PPG.  Although a final distribution model has not been set yet, PPG will likely realize an award of many millions of additional dollars beyond the amounts it is already entitled under the Release as a direct result of the efforts of Special Counsel.

Further protecting PPG's interest, Special Counsel filed one of the only objections to the HESI settlement on the basis that the settlement would discriminate against government entity wetland owners by requiring tax-exempt entities to show proof of ownership through property tax records.  Special Counsel next secured a meeting with Special Master Juneau to discuss the their objections in advance of the Fairness Hearing, and then embarked on a massive, months-long project of abstracting title records and digitally geo-referencing titled property with the Special Master's eligible property zones.  Special Counsel's work product was approved by the Plaquemines Parish Assessor's office and ultimately resulted in the Louisiana Tax Commission's formal acceptance of tens of thousands of PPG-owned acres to the tax rolls.

## LAW AND ARGUMENT

### 1.     The Court has Jurisdiction to Determine the Instant Fee Application

Where the parties to a lawsuit have invoked the jurisdiction of a district court to preside over a settlement agreement or the distribution of funds in the court registry, the Fifth Circuit has held that courts have subject matter jurisdiction to examine the reasonableness of contingent fee contracts. *Karim v. Finch Shipping Co.*, 374 F.3d 302, 306–07 (5th Cir.2004) (holding that subject matter jurisdiction existed to consider reasonableness of contingent fee agreements where the plaintiff had filed a motion for the disbursement of funds in the court's registry); *Hoffert*, 656 F.2d at 164–65 ("That no party questioned the propriety of the ... contingent fee and that the injured plaintiff's guardian ad litem acquiesced in its reasonableness did not shield the fee from the Court's scrutiny as a part of the overall settlement which the court had before it."). Further, past MDL courts have exercised jurisdiction over fee agreements related to the underlying litigation. *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05–

1708, 2008 WL 682174, at *18 (D.Minn. Mar. 7, 2008) ("[T]his Court has the inherent right and responsibility to supervise the members of its bar in both individual and mass tort actions, including the right to review contingency fee contracts for fairness."); *see also In re Zyprexa Prods. Liab. Litig.*, 424 F.Supp.2d 488, 492 (E.D.N.Y.2006) ("A federal court may exercise its supervisory power to ensure that fees are in conformance with codes of ethics and professional responsibility even when a party has not challenged the validity of the fee contract.").

Furthermore, in this case, this Court has already exercised its jurisdiction to regulate attorney fee agreements in determining that contingent fee arrangements for all attorneys representing plaintiffs that settled claims either through the economic and property settlement and/or medical monitoring settlement were to be capped at 25% plus reasonable costs. (Rec. 6684)

In so holding, this Court ruled that:

> "[I]t is not unreasonable to conclude that certain rare circumstances might exist which would warrant a departure, in either direction, upwards or downwards, from the universal fee cap [of 25%], attorneys are permitted to file an objection with the Court. *In re Vioxx,* 650 F.Supp.2d at 564. Attorneys must serve the objection on the involved client, who will be permitted to submit contrary evidence. The Court may choose to appoint a special master to take evidence and make a recommendation to the Court. If the Court determines that a departure is warranted in a particular case, either upward or downward, the Court will determine a reasonable fee based on the unique circumstances presented after deducting the cost associated with this process."
>
> (Rec. 6684 at pg. 4)

Finally, and perhaps most significantly, the terms of the Release agreed to by PPG in settling its claim specifically provide for the retention of jurisdiction by this Court to determine issues thereunder:

> The United States District Court for the Eastern District of Louisiana will retain jurisdiction over this Agreement for the purposes of enforcement of the Agreement and any dispute(s) arising thereunder. Any and all disputes, cases, or controversies concerning this Agreement, including without limitation disputes concerning the interpretation or enforceability of this Agreement, shall be filed in the United States District Court for the Eastern District of Louisiana accompanied by a legal request made on behalf of any complainant party (whether one of the Released Parties or the Claimant or the Claimant's Affiliates) for such dispute to be made part of the multidistrict litigation pending before that Court, titled In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL No. 2179 (E.D. La.) ("MDL 2179"), or in any United States District Court with venue if, but only if, MDL 2179 has been terminated by the time any dispute concerning this Agreement is filed. No action(s) to enforce this Agreement shall be filed in any state court. Claimant and the Released Parties agree not to contest the existence of federal jurisdiction in MDL 2179 or a United States District Court with venue if, but only if, MDL 2179 has been terminated by the time any dispute concerning this Agreement is filed. (Release, pg. 3, ¶ 9).

Based on the foregoing, this Court clearly has jurisdiction to adjudicate Special Counsel's right to its contracted share of settlement funds that have been distributed pursuant to the Release.

## 2.     The Contingency Fee Agreement is Enforceable

Contingency fee contracts have long been commonly accepted in the United States in civil proceedings to enforce claims. *Cappel v. Adams*, 434 F.2d 1278, 1280 (5th Cir. 1970).

Today, contingent fee agreements are not only the near-universal choice of plaintiffs in personal injury and other tort actions, but is commonly used "in collection suits, shareholder derivative suits, antitrust suits for damages, tax cases, will contests, and condemnation proceedings," Richard M. Birnholz, *The Validity and Propriety of Contingent Fee Controls*, 38 UCLA Law Review 949, 952-53 (1990), in contract cases, *see* Herbert M. Kritzer, *The Wages Of Risk: The Returns of Contingency Fee Legal Practice*, 47 DePaul L. Rev. 267, 267 n.1 (1998) ("Civil Litigation Research Project data showed that 62% of individual plaintiffs in contract cases had paid their lawyers on a contingency basis."), in tax cases and patent litigation, *see* ABA Formal Op. 94-389 (December 5, 1994), and in class actions and multi-district litigation. *See, e.g.*, *In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d 640, 647 (E.D. La. 2010).

Contingency fee contracts serve an important role in making legal services available to persons or entities lacking the funds to pursue meritorious claims. *Saucier v. Hayes Dairy Prods., Inc.*, 373 So.2d 102, 105 (La.1978). *See also* 23 Williston on Contracts § 62:4 (4th ed.) ("sound public policy favors the contingent fee as a method for those less financially advantaged to vindicate their rights"). **The higher payment due under a contingency fee reflects the fact that the lawyer will realize no return for his investment of time and office expenses in the cases he loses.** *In re Combustion, Inc.*, 968 F. Supp. 1116, 1132 (W.D. La. 1997). (emphasis added). Mass tort litigation in particular requires heavy up-front expenditures. *Contingent Fees in Mass Tort Litigation*, 42 Tort Trial & Ins. Prac. L.J. 105, 112 (2006). Undercompensating attorneys who handle such litigation would result in too few meritorious suits being brought and less competent representation. *Id.* at 110.

Accordingly, contingency fee contracts are routinely used, and they are enforceable. *See Hall v. St. Paul Fire & Marine Ins., Co.*, 868 So.2d 910 (La. Ct. App. 2004). Furthermore, as

previously noted, this Court has the inherent power to assess the reasonableness of contingent fee contracts in the context of this settlement of a mass tort litigation. *See, e.g*., *In re Vioxx*, 760 F. Supp. 2d at 647.

Finally, as a Home Rule Chartered Parish, PPG has the inherent authority to enter into contingency fee agreements, and does not need to seek the approval of the Louisiana Attorney General or any other governmental body in order to do so.  See Attorney General Opinion 05-0255, attached to Exhibit E.

The contingency fee in this case (15% on the first $25,000,000 payable under the Release and 10% on the additional $20,000,000 due), constitutes and effective contingency fee of 12.7%. As this Court has already held, a 25%  contingency feehas been deemed presumptively "reasonable" in connection with the propriety and personal injury/medical monitoring settlement. (Rec. 6684).  It should also be noted that the percentage fee due under the Contingency Fee Agreement for PPG is  much lower than the fees which have been paid to most other contract counsel representing Louisiana parishes and government entities.   For example, publicly available data indicates that Orleans Parish paid a rate of about 18%, Jefferson Parish paid at a rate of 22%, and the Parishes of St. Tammany, Terrebonne and Tangipahoa all paid a rate of 25%.  Based on the foregoing, there can be no valid argument that PPG's effective rate of 12.7% is unreasonable, particularly in light of the extensive work performed and costs advanced by Special Counsel in this matter.

As of this date, PPG has not expressly claimed that the contingency fee rate being charged is unreasonable and has not disputed any of the costs which have been presented for payment.  Rather, as of the present date, the only defense to payment which has been asserted is that Special Counsel has somehow failed to supply adequate "legislative documents"of its

Contingency Fee Contract.  Based on the documents previously furnished to PPG and the indisputable record presented herein, PPG has no basis whatsoever to deny Special Counsel's request to release the funds it is holding in trust to satisfy its earned contingency fee and accrued costs.

*3.*     **Quantum Meruit, Unjust Enrichment and Detrimental Reliance**

Alternatively, should this Court find the Contingency Fee Agreement executed between PPG and Special Counsel are, for some reason, unenforceable, which Special Counsel strongly deny, Special Counsel are nevertheless entitled to recover reasonable attorneys' fees pursuant to the equitable principles of unjust enrichment, *quantum meruit*, and/or detrimental reliance.

**a. *Quantum Meruit***

"[U]nder the doctrine of quasi contract and *quantum meruit*, a person can, by his action and acceptance of benefits of another's labor, obligate himself to pay reasonable value of the other's labor." *Bar-Tow, Inc. v. Roy's Transport, Inc.*, 616 So. 2d 203, 207 (La. App. 5 Cir. 1993). *Quantum merit* evaluates not only the hours expended by the attorney, but also the results and the benefits obtained. *Delta Land & Investments, LLC v. Hunter Estates, Inc.*, 211 So. 3d 1255 (La. App. 2 Cir. 2017).  The Louisiana Supreme Court has instructed that the measure of a reasonable *quantum meruit* award is determined by an evaluation of the factors set forth in the Rules of Professional Conduct, at Rule 1.5, including: "(1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge." *See City of Alexandria v. Brown*, 740

F.3d 339 (5th Cir. 2014) (citing *Dept. of Transp. and Development v. Williamson*, 597 So. 2d 439 (La. 1992)).

### b. Unjust Enrichment

Louisiana law provides that "no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another." La. C.C. art. 2055. "A person who has been enriched without cause at the expense of another person is bound to compensate that person." La. C.C. art. 2298.

PPG has been enriched without cause at the expense of Special Counsel. Specifically, PPG has been enriched by being awarded the principal sum of $45,000,000, which settlement was obtained through the exceptional efforts of Special Counsel in pursuing PPG's claim against the BP Entities that lasted over six years. During its representation of PPG, Special Counsel has expended nearly $700,000 in out-of-pocket expenses (interest free) for the investigation and development of PPG's claims, employed numerous attorneys and support staff, and expended thousands of hours in labor, in order to obtain a favorable settlement for PPG.

To date, PPG has not made a single payment to Special Counsel for time expended, and has not advanced any money whatsoever for the out-of-pocket costs of this litigation. Accordingly, Special Counsel is entitled to be compensated pursuant to La. C.C. art. 2298.

### c. Detrimental Reliance

"A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonably in so relying." La. C.C. art. 1967. "The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions,

representations, or silence." *Suire v. Lafayette City-Parish Consol. Government*, 907 So. 2d 37 (La. 2005). Detrimental reliance requires that there was: 1) a representation, 2) justifiable reliance, and 3) a change in position to one's detriment as a result of the justifiable reliance. *Id*. Despite the six (6) years that Special Counsel have very ably represented the Parish in the BP Matter and in justifiable reliance on the terms of the Contingency Fee Agreement, it was not until the day before the funds were to be disbursed on August 1, 2017 that the PPG voiced any objection to the fee arrangement it had agreed to many years earlier.

### d. Amounts Owed Under If the Contingency Fee Contract Is Deemed Unenforceable

In the event that, for some reason, the Contingency Fee Agreement is deemed unenforceable, Special Counsel would be entitled to compensations under the theories of unjust enrichment, detrimental Reliance *and/or quantum meruit*.

The efforts undertaken by Special Counsel have resulted in a settlement that was nearly five (5) times greater than originally proposed by the Neutrals.  The award obtained by Special Counsel for PPG is one of the highest received by any local entity, and certainly the highest based on population and size of economy.  Special Counsel were also single handedly responsible for obtaining an allocation of $700,000,000 in funds for New Class property owners, an award that will benefit PPG in the HESI/Transocean settlement with potentially tens of millions of additional dollars.

However, these results required considerable effort and expertise, as well as substantial financial resources.  Because of the complexity of PPG's claim, Special Counsel needed to establish the geophysical relationship of thousands of acres of remote marshland along with title records and data collected through SCAT.  And, because PPG, unlike the vast majority of

government entities, was unable to obtain an early settlement on favorable terms, Special Counsel were required to work years longer than most other attorneys engaged in this litigation. Special Counsel undertook significant litigation risks in this case, by dedicating thousands of hours of legal services without compensation and, as a practical matter, lent PPG $700,000 interest free for several years.

Based on the foregoing, in the event that this Court were to determine the Contingency Fee Agreement is not valid and enforceable, Special Counsel request an award in the range of 18-25% of the Parish's total recovery, which is commensurate with the awards of counsel representing other nearby parishes who expended far less effort and advanced far less costs in securing settlements for their clients.

Respectfully Submitted,


*/s/Henry King*_____
**HENRY A. KING (#7393)**
**MICHAEL L. VINCENZO (#23965)**
**King, Krebs & Jurgens, PLLC**
hking@kingkrebs.com
mvincenzo@kingkrebs.com
201 St. Charles Avenue, 45th Floor
New Orleans, LA  70170
504-582-3800 Telephone
504-582-1233 Fax


*/s/Scott R. Bickford*_____
**MARTZELL, BICKFORD & CENTOLA**
**SCOTT R. BICKFORD, T. A. (#1165)**
**LAWRENCE J. CENTOLA, III (#27402)**
usdcedla@mbfirm.com
338 Lafayette Street
New Orleans, LA 70130
(504) 581-9065 Telephone
(504) 581-7635 Fax

AND

*/s/David Landry*
**DAVID L. LANDRY (#7978)**
**The Law Office of David L. Landry**
**2landry@cox.net**
1214 Parasol Place
Pensacola, Florida  32507
(850) 492-7240

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion for Fees and Costs was served electronically with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of August, 2017. Copies are also being transmitted via email and certified mail to the Plaquemines Parish Attorney and Plaquemines Parish President.

*/s/Henry King*