E-SERVICE

60840800
Jul 11 2017
04:50PM

File & ServeXpress

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: | DISTRICT JUDGE BARBIER |
| | MAG. JUDGE WILKINSON |
| Case No.: Clinton F. Smith, et al., 2:10-md-02179-CJB-SS MEDICAL CLAIMANTS | MAG JUDGE SHUSHAN |

_____

## MEMORANDUM IN SUPPORT OF
## MOTION FOR EQUITABLE INTERPRETATION AND IMPLEMENTATION OF
## THE MEDICAL BENEFITS SETTLEMENT

During the fairness hearing held by this Court in November, 2012, the testimony indicated that the MSA would provide reasonable and fair compensation to those who were suffering from chronic medical conditions resulting from exposure to oil and chemicals during the Deepwater Horizon oil spill. The results we have seen are clearly not what the Court or the parties envisioned at the time of the fairness hearing. One example is the information in the Third Quarter Report which shows that a mere .16% (just under one-tenth of 1%) of claims in the settlement had been paid for chronic conditions.

A written information package and a copy of the "SPC Matrix" was provided to each claimant after the settlement agreement was agreed to by the parties on April 16, 2012. The Administrator was appointed and began advising claimants. No mention was made regarding the "date of diagnosis". Injured parties and their attorneys were advised to seek a doctor for a diagnosis to qualify for compensation. This advice was given to our clients beginning in the fall of 2012 and continued through the Spring of 2014. The Class Administrator also advised the claimants to prepare their sworn declarations in a manner which later proved to deny many of the claimants the right to receive the compensation which was a right granted to them by the

1

settlement agreement.  Claimants were advised that since compensation would only be awarded for one condition, they need only set forth one condition in their declaration.  Other conditions could be listed, but were unnecessary.    Many claimants listed a condition for which they would obtain a diagnosis (after April 12, 2012).  Approximately two years after the claims process began, an event occurred which undermined the entire settlement agreement and denied the majority of class members the benefits promised in the settlement.  The consequences are almost beyond comprehension.

1.  After thousands of claimants prepared and filed their "Claim Form" and Sworn Declaration in good faith, based on instructions provided by and on the advice of the Claims Administrator.  The Claims Administrator item brought to the Court's attention (Spring-Summer of 2014) the issue of the April 16, 2012 deadline for diagnosis.  Claimants were <u>not notified</u> directly until a "Notice of Defect" was received (months or years later).  In the Notice of Defect claimants were asked for the first time to submit medical diagnosis' dated prior to April 16, 2012.  Hundreds of claimants were unable to retrieve the necessary records (which were now 2-4 years old) in time to meet the strict deadline of the MSA.  No Claimants were granted a time extension. Many others retrieved records in time but found that the "Notice of Defect" which they received advising them of the new requirement of a pre-April 16, 2012 diagnosis now deprived them of the right to qualify for the pre-April 16, 2012 diagnosis contained in the medical records which they were able to retrieve.  New medical conditions are not allowed to be added to a declaration once a "Notice of Defect" is received by a claimant.  We respectfully submit to the Court that the claimants be allowed to amend their declaration to include qualifying conditions (with pre-April 16, 2012 diagnosis') which were not included in their "Sworn Declarations" prepared and signed prior

to the summer of 2014, the time the claims administrator changed the policy with regard to

the "date of diagnosis". This interpretation (concerning a diagnosis after April 16, 2012)

was not communicated to many claimants until after time expired to file pre-April 16, 2012

records and/or make appropriate amendments to their declaration.

2.   The Class Administrator has made public it's interpretation of the "SPC MATIRX" with

regards to the fact that each medical claim shall be based on the "totality of the evidence"

...which includes information in a medical diagnosis made after April 16 2012.  However, this

interpretation (concerning a diagnosis after April 16, 2012) was not communicated to the

claimants until after time to file these records had expired for many of our clients.  Had this

information been made available in a timely manner, claimants could have revisited their

physician for additional proof of their chronic condition.  We ask the Court to grant these

claimants who drafted their claim prior to the summer of 2014 the opportunity to visit a

medical professional and submit relevant medical records.

3.   The SPC MATRIX sets forth the requirements for an injured party to receive compensation

for a chronic condition.  Please refer to the following portions of "EXHIBIT B" which is a copy

of pages 4 and 5 of the SPC MATRIX.  The SPC MATRIX states that a claimant must provide

the following "proof" to qualify for a chronic condition:  *Declaration under penalty of*

*perjury (1) asserting the manifestation of one or more conditions (or the symptom(s)*

*thereof) on Table 3, (2) asserting that such condition(s)*or the symptom*(s) thereof occurred*

*within the applicable time frame specified in Table 3, and (3) identifying the route,*

*circumstances, and date(s) or approximate date(s) of alleged exposure;*

*Plus one of the following:*

*(1)  Medical records establishing presentment to a medical professional with the condition(s) or symptom(s) claimed in the declaration, where such condition(s) <u>or</u> symptom(s) are persisting at the time of presentment.*

***Plus:***

*Medical records that (a) establish ongoing care/treatment or chronic nature of the condition(s) <u>or symptom(s)</u> and (b) indicate that exposure was considered by either the claimant or the medical professional to be related to the condition(s) <u>or</u> symptom(s)."*

Please be mindful of the language on Page 4 of the SPC MATRIX which repeatedly says the claimant must have the chronic "condition" or the <u>"symptoms"</u>. Page 4 of the SPC MATRIX makes a point of stating that the claimant may be compensated if certain symptoms are present <u>or</u> if the "condition" is present.  From the clear language on page 4 relating to what proof is necessary for Chronic Rhinosinusitis, the parties (who drafted the SPC MATRIX) most likely did not intend to <u>require</u> all of the "as supported by" language which follows the definition of the chronic "condition" of rhinosinusitis to be in the medical records.  The words "or symptoms" were used repeatedly and appear to be added to cover claimants who did not actually receive a "chronic" diagnosis as well as those who did NOT receive a CT Scan or Endoscopic Exam during their diagnosis.  If the parties intended for all claimants to be required to under-go a CT Scan or Endoscopic Exam to receive compensation, they would have stated so along with the other requirements set forth on Page 4 of the SPC MATRIX.  Instead the proof for <u>Compensation for CHRONIC CONDITONS</u> in the MATRIX places equal emphasis on the "condition" and the "symptoms", stating that the claimant may qualify if either is presented in

4

the medical records.  A CT scan clearly would not be used by a doctor to diagnose "symptoms" such as facial pain, pressure decreased sense of smell, headache or drainage.

The intent of the MSA is properly implemented when the Claims Administrator adheres to the requirements stated on Page 4 of the SPC MATRIX for determining which claimants will receive compensation for Chronic Rhinosinusitis.  Claimants meet the proof required for Chronic Rhinosinusitis if they were diagnosed by a medical professional who made an examination of the symptoms present and was able to draw a conclusion in his or her professional opinion that the exam together with the history of the patient was sufficient to diagnose the patient with Chronic Rhinosinusitis.   (See Exhibit A for examples of the case histories of some of the injured parties who filed a claim with this settlement.)

In addition, the professional opinion of many doctors is that CT scans and Endoscopic Exams are not necessary to accurately diagnosis Chronic Rhinosinusitis.  Please refer to "EXHIBIT C" for a professional opinion of one of these doctors.  We had "chronic" sinus diagnosis made on our clients from approximately 5 other medical professionals who reached their conclusions without a "CT Scan or Endoscopic Exam".

The burden of proof under the SPC MATRIX for claimants who had a first diagnosis for the symptoms of Chronic Rhinosinusitis prior to April 16, 2012 and a later examination after April 16, 2012 is met if the later diagnosis is CHRONIC.  Under the SPC MATRIX this diagnosis can be made by a doctor and based on the required symptoms being present and ongoing for over 12 weeks and the attending doctor's observations of objective evidence of mucosal inflammation (which can be observed by a medical professional without the use of a CT scan or endoscopic exam.)  The conflicts and confusion between Page 4 and Page 13 of the SPC MATRIX and the inaccurate and/or untimely advice given by the Claims Administrator have created an unjust

and unintended negative impact on the claims of many of the injured parties involved in this

settlement.  The proof "required" in the SPC MATRIX for Chronic Rhinosinusitis can be met

without a CT Scan or Endoscopic Exam.  To ignore the plain language on pages 4 and 5 of the

SPC MATRIX relating to proof of compensation for chronic conditions would not only be grossly

unfair, but it would also undermine the intent of the parties to medical settlement agreement.


Respectfully submitted,

Joseph Barton Greer
GREER LAW OFFICE
2939 Airport Blvd., 2-300
Mobile, AL  36609

# **EXHIBIT A**

.

# CASE HISTORY EXAMPLE

_____
_____

᠁ is awarded A2 for Acute Rhinosinusitis. She is eligible for a B1 award for Chronic Rhinosinusitis.

She presented to Dr Miller with initial sinus symptoms on 9/8/10, was diagnosed with sinusitis and given antibiotic and steroid injection and prescribed a Medrol Dose pack.

She returns to DR Miller on 11/18/10 with persistent sinus symptoms, sinus drainage yellow and congestion; she is diagnosed with sinusitis and prescribed additional medications, antibiotics and steroids.

Again she returns to Dr Miller with very painful sinuses with bloody and yellow drainage and is diagnosed with sinusitis and prescribed additional antibiotics and steroids along with antibiotic and steroid injections.

On 8/19/11 she returns to Dr Miller some the same sinus symptoms, physicians exam reveals red, boggy nasal lining, and he gives a repeat sinusitis diagnosis and receives another round of antibiotics and steroids.

The records she submitted within the acceptable time period establish the same symptoms persisting for substantially greater than 12 weeks.

She later sees DR Hamilton on 5/3/13 who assesses nasal discharge, +2 edema, and nasal congestion.  She is diagnosed with Chronic Rhinosinusitis and prescribes Flonase and recommended to continue taking Claritin.

She is a resident of Dauphin Island and experienced long term exposure to petroleum products and their solvents.

᠁had demonstrated with continuous medical visits and taking of prescription medications the continuous and chronic nature of her Rhinosinusitis, as well as the consistency of repetitive diagnoses.

Please award our client with B1 Chronic Rhinosinusitis.

Thank you for this review.

# CASE HISTORY EXAMPLE

_____

_____

is awarded A1 for Acute Rhinosinusitis and Eczematous Reaction.  He is eligible for B1 award Chronic Rhinosinusitis. He has sinus symptoms unrelieved by medical management for greater than one year, consistent with Chronic disease.

He presents to Mostellar clinic on 3/29/11 with sinus congestion and drainage and is prescribed a Zpack antibiotic.  He returns 7/15/11 with continued symptoms, and again 8/24/11 with persistent yellow thick mucopurulent nasal discharge and head congestion.  On 11/7/11 he returns to Mostellar clinic for unresolved sinus congestion and drainage where he is prescribed more antibiotics and Allegra for symptom management.  On 12/28/11 he is still having sinus symptoms congestion, drainage of thick green mucopurulent mucus and was given antibiotics and steroids.  And still receives medical management beyond accepted time frame in 5/22/12 presenting to Mostellar Clinic with sinus drainage, congestion requiring antibiotics and steroids.

Thank you for this review.

# CASE HISTORY EXAMPLE

is awarded A2 for Rhinosinusitis.  She is eligible for a B1 award for Chronic Rhinosinusitis. She presented to Victory Health Service on 2/10/2011 and again on 9/9/2011 with nasal congestion and nasal drainage and is diagnosed with Sinusitis.  She follows up with Dr Hamilton on 4/30/13 with the same symptoms for a stated duration of 37 months, where she is diagnosed with Chronic Rhinosinusitis and given Flonase, Benadryl, and a Z pack for treatment and symptom management.
Thank you for this Review.

# CASE HISTORY EXAMPLE

_____

_____

is awarded A2 for Cough, Headache, Facial Pain, Sinus Pain, Nasal Congestion, Nasal Discharge, Post Nasal Drip, Wheezing, and Headaches.
Mr Finch is eligible for B1 Chronic Rhinosinusitis.
Mr Finch presents initially 8/16/10 with sinus headaches and congestion.
On 2/17/16 Dr Hamilton evaluates him for continued symptoms,sinus headache, congestion, sinus drainage.  A Visual Otoscopic exam revealed swollen hyperemic mucosa with purulent exudate, consistent with Chronic Rhinosinusitis. He is diagnosed with Chronic Rhinosinusitis. His initial symptoms presented during the acceptable time period to provide records. .
Thank you for this review.

# CASE HISTORY EXAMPLE

_____
_____

was determined for an A1 award based on his declaration.  We responded timely to his Defect with a request for medical records from three physicians, Dr Zloty, Dr Spires, and Dr Johnson.  It appears the records were never requested by BP or were not provided by provider as there were no records from Provider in the portal.  There is evidence that he did see these Providers within the accepted time period as evidenced by the billing statements from the providers that are in the portal which were provided earlier by the claimant.

should be eligible for a B1.

Thank you for this review.

Thank you,
Autumn Amonett

# CASE HISTORY EXAMPLE

---

Please review claim.                          is eligible for a B1 award for Chronic Rhinosinusitis.
Mrs Teresa Jackson presents to Dr. Ashurst 10/6/2010 with onset of initial sinus symptoms,
sinus drainage unrelieved with OTC medications.  Prescription medication Amoxicillin
prescribed.
On 3/20/2011, she visits Dr Ashurst again for worsening sinus symptoms over past few
months, sneezing, congestion, facial pain, and runny nose, and he gives Kenalog injection and
recommends OTC Allegra-D.
She returns to see Dr Ashurst 12/12/2011 for continued Sinusitis management and receives
prescription Astapro.
On 9/18/12, she sees DR Ashurst for worsening Sinusitis, and again on 3/10/14 for continued
sinus symptoms, where additional medications are prescribed, Nasonex, Atarax, Kenalog
injection, and Keflex.
She sees Dr Hamilton 2/3/14 and is diagnosed with Chronic Sinusitis with persistent
symptoms of nasal congestion, mucopurulent sinus drainage, and facial pain.
Dr Ashurst orders a sinus X-ray 4/1/2015 for her persistent sinus symptoms.
Dr Ashurst writes a letter stating that                    has been under his care since
symptom onset (during accepted time period for medical records) and continues to see Dr
Hamilton for Chronic Sinusitis.
 Thank you for this review.

# CASE HISTORY EXAMPLE

was awarded A2 Acute Rhinosinusitis.  Please review claim.
is eligible for a B1 award for Chronic Rhinosinusitis.  She presents to Dr Hurson on 9/11/10 with initial sinus symptoms and is diagnosed with Rhinitis.  She later sees another physician Dr Thomas Nolan on 2/26/11 with rhinorrhea, post nasal drip, edematous nasal mucosa (consistent finding in Chronic Rhinosinusitis), and erythematous mucosa, where she is diagnosed with sinusitis requiring medications.

She is seen by Dr Hamilton 2/11/13 with the same symptoms.  His objective findings during physical examination are pain in the right and left frontal sinuses with palpation and viewing of nasal passages with an otoscope reveals a swollen and pale nasal mucosa consistent with Chronic Rhinosinusitis.  She is diagnosed with Chronic Rhinosinusitis.

There was a duration of greater than 5 months between the first two records of examination by physicians within the acceptable time period where symptoms persisted.

Additionally, mucosal changes were observed in her visit to Dr Nolan ( within the accepted time period) consistent with Dr Hamilton's findings.   This suggests symptoms persisted greater than 12 weeks.

Thank you for this review

# CASE HISTORY EXAMPLE

_____

_____

        is eligible for B1 Chronic Rhinosinusitis.  He has MR revealing sinus condition submitted within the accepted submission period.  He has medical records reflecting continuous care for his sinus symptoms, including follow up care and medications.  It s documented that he cannot smell or taste.  He has a CT evaluation showing mucosal thickening, a hallmark of chronic rhinosinusitis.  Thank you for this review.

# CASE HISTORY EXAMPLE

_____

_____

       is awarded A2 for Acute Rhinosinusitis.

     is eligible for B1 award for Chronic Rhinosinusitis.

Client has produced medical records as early as 11/17/2011, within the timely period, from Premier Medical Center; he was diagnosed Chronic Sinusitis with bilateral turbinate hypertrophy.  He required continuous medical follow up with Dr James Harrison. There are many notes in portal reflecting Chronic Rhinosinusitis Diagnosis.  The diagnoses as documented as chronic facial pain, chronic frontal sinusitis, chronic ethmoid sinusitis, chronic Maxillary Sinusitis, hypertrophy of both nasal turbinates, chronic sphenoid sinusitis, and rhinitis and date from 11/17/11 to 12/9/16 `            requires Sinus surgery 11/22/16 to remove scarring in sinuses.  It is worth noting that Dr James Harrison relied on visual examination and knowledge of his history of symptoms to confirm  his diagnosis. He did not feel a CT exam, endoscopic exam, or any other invasive procedure was required to precede surgery.  Visual inspection and knowledge of symptoms was adequate. Although there were earlier CT evaluations documented. During surgery, the physician notes excessive scarring and banding present and tissues removed.  This are all consistent findings with Chronic Rhinosinusitis. Thank you for this review.

# CASE HISTORY EXAMPLE

is awarded A2 for Dizziness, Heaadche, Acute Rhinosinusitis.  SWhe is eligible for B1 status as she submits documentation of symptom origination 10/26/11 at Tri County Uriah Clinic with symptoms associated with Upper Respiratory Infection, as was her diagnosis; She is given prescriptions medications for medical management.   She later sees Dr Hamilton 5/2/13 with severe Chronic Rhinosinusitis, with an otoscopic exam revealing plus 3 edema nasal mucosa, and hyperemic tissue, consistent with Chronic Rhinosinusitis; she was prescribed medications for symptom management.

Thank you for this review.

# CASE HISTORY EXAMPLE

_____
_____

.          is awarded A2 for Acute Cough, Nasal congestion/Nasal Discharge, or Post Nasal Drip and Headache.

         is eligible for B1 Chronic Rhinosinusitis. She presented with initial symptoms on 2/3/11 to Dr Donald Schak with nasal congestion and headache.  She follows up 1 month later with the same physician 3/8/11 for worsening sinus symptoms, nasal discharge, congestion, runny nose, requiring prescription medications to treat and manage symptoms.

 She returns with continued symptoms 9/12/11 and again 12/17/12, both visits showing evidence of continued Symptomatology.  She continues to see this same doctor, Dr Schak, after the medical record submission period and presents again 3/12/13 with persistent rhinorrhea.

She also sees Dr Hamilton who diagnoses her with Chronic Rhinosinusitis based on her history, presentation of symptoms, duration of symptoms, and a visual otoscopic exam revealing swollen and hyperemic nasal mucosa.

These records, including the duration of medical treatment, persistence of chronic sinus symptoms, and visual inspection and exam are all consistent with Chronic Rhinosinusitis. Thank you for this review.

# CASE HISTORY EXAMPLE

has been awarded A2 for Acute Rhinosinusitis.

Based on the submitted documentation, he is eligible for B1 award for Chronic Rhinosinusitis. Documents reflect a visit to Dr Miller on 10/7/10 (MD notes state this is a follow up visit) with continued sinusitis which had "been going on for two weeks". He was prescribed an antibiotic as well as medication for sinus symptom management.  He visits Dr Miller again 8/17/10 with persistent symptoms.

ı sees Dr Hamilton 7/8/13 and complains of constant sinus problems that have been going on for 39 weeks.  Objective findings via visual otoscope exam reveal an abnormal pale and swollen mucosa,consistent with chronic rhinosinusitis.  He is diagnosed with Chronic Rhinosinusitis at this time.  He is prescribed Flonase for symptom management.

A CT evaluation 1/9/14 shows inflammatory changes in the ethmoid air cells bilaterally and changes of the floor of maxillary sinuses.  The impression of the CT is changes of Chronic Rhinosinusitis of the ethmoid and maxillary sinuses.

The sinus symptoms are first documented 10/7/10 and persisted, progressing into a Chronic Disorder, as evidenced by MD Exam and CT evaluation.

Thank you for this review.

# CASE HISTORY EXAMPLE

_____

_____

; has been awarded A2 for headache, nasal congestion, nasal drainage, ect.

She is eligible for a B1 award for Chronic Rhinosinusitis.

She presents on 11/10/10 to Dr Gregory Mims with facial pain, nasal congestion, and postnasal drip for which medications were prescribed, antibiotics and Allegra for sinus symptoms (she was already taking antibiotics for one week ).

A week later, her symptoms are unresolved, despite antibiotics and Allegra, and she returns to Dr Mims with continued runny nose and sneezing.  He continues her prescribed antibiotic and adds an additional antibiotic, and gives her a steroid injection.

She sees Dr Hamilton 7/8/13  with continued and unresolved sinus pressure, sinus drainage, and headache.

Dr Hamilton objective findings during otoscope inspection was abnormal showing a swollen mucosa consistent with chronic rhinosinusitis.   She was prescribed Flonase and Claritin for symptom management.  ＿＿＿＿ is a resident of Dauphin Island and experienced long term exposure to the fumes of petroleum products and petroleum solvents.

Thank you for this review.

# CASE HISTORY EXAMPLE

_____

_____

       is awarded A2 for Acute Rhinosinusitis. She is eligible for B1 award for chronic sinusitis.  She initially presents to Dr Jonathan Miller with acute sinus congestion and sinus pain and is diagnosed with acute sinusitis requiring antibiotic and steroid injections as well as antibiotics to take at home and Lora taking for symptom management.  She returns to Dr Miller 11/21/11 and again 12/6/11 for acute sinusitis with sinus congestion and is given another decade on injection on 12/6/11/

She later presents to Dr Hamilton with chronic nasal discharge and is diagnosed with Chronic Rhinosinusitis and prescribed Augmentin, Flonase, and Allegra.

Prior to her visit to Dr Hamilton, she had 6 months of continuous rhinosinusitis symptoms, significantly longer than required 12 weeks to establish chronic nature.  Thank you for this review.

# EXHIBIT B

## II. Compensation for CHRONIC CONDITIONS

| | Proof | Lump Sum | Enhancer | ACTUAL HOSPITAL EXPENSES |
|---|---|---|---|---|
| B1 | Declaration under penalty of perjury (1) asserting the manifestation of one or more conditions (or the symptom(s) thereof) on Table 3, (2) asserting that such condition(s) (or the symptom(s) thereof) occurred within the applicable timeframe specified in Table 3, and (3) identifying the route, circumstances, and date(s) or approximate date(s) of alleged exposure;<br><br>*Plus one of the following:*<br><br>(1) Medical records establishing presentment to a medical professional with the condition(s) or symptom(s) claimed in the declaration, where such condition(s) or symptom(s) are persisting at the time of presentment. The CLAIMS ADMINISTRATOR shall determine, based on the totality of the evidence in the medical records, whether that evidence more likely than not supports the assertions made in the declaration; or<br><br>(2)(a) For claimants with information contained in the Medical Encounters database: Claims will be evaluated to determine qualification on Level B1 as set forth on Table 2. "Underlying data, documentation, and records," as used on Table 2, shall include: (i) supporting data, documentation, and records from the Medical Encounters database; (ii) supporting data, documentation, and records from other sources of information in the possession of BP that contain individual medical information regarding persons performing RESPONSE ACTIVITIES; and (iii) any other data, documentation or records (either in the possession of BP or provided by the claimant) reflecting such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S transport to a medical facility during or immediately after the performance of RESPONSE ACTIVITIES. Where the underlying data, documentation, and records are to be reviewed pursuant to Table 2, the CLAIMS ADMINISTRATOR shall determine, based on the totality of the evidence in such data, documentation, and records, whether that evidence more likely than not supports the assertions made in the declaration; or | CLEAN-UP WORKER -- $60,700.00<br><br>ZONE A RESIDENT and ZONE B RESIDENT -- $36,950.00 | Overnight hospitalization<br>Day 1 -- $10,000.00<br>Days 2 - 6 -- $8,000.00/day<br>Day 7 onwards $10,000.00/day<br><br>Hospitalization must occur within one week of the first presentment of the condition(s) or symptom(s) to a medical professional and hospitalization is documented to be for treatment of the condition(s) or symptom(s) listed in Table 3. | Yes |

*Section continues on next page*

| | | |
|---|---|---|
| (2)(b) For claimants without information contained in the Medical Encounters database but with information contained on another source of information in the possession of BP containing individual medical information regarding persons performing RESPONSE ACTIVITIES and/or who are identified in any other data, documentation, or records (either in the possession of BP or provided by the claimant) reflecting that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S transport to a medical facility immediately after the performance of RESPONSE ACTIVITIES:  The CLAIMS ADMINISTRATOR shall review and determine, based on the totality of the evidence in such data, documentation, and records, whether that evidence more likely than not supports the assertions made in the declaration.<br><br>*Plus:*<br><br>Medical records that (a) establish ongoing care/treatment or chronic nature of the condition(s) or symptom(s) and (b) indicate that exposure was considered by either the claimant or the medical professional to be related to the condition(s) or symptom(s). | | |

# EXHIBIT C

**<u>Dr John Hamilton</u>**
**<u>Infirmary Occupational Health</u>**
**<u>305 North Water Street</u>**
**<u>Mobile, AL 36602</u>**
**<u>251-433-3781</u>**

 The diagnosis of chronic rhinosinusitis (CRS) is based upon the presence of suggestive symptoms, in combination with objective evidence of mucosal inflammation.

Suggestive signs and symptoms — The diagnosis of CRS is based upon the presence of at least TWO of the four cardinal signs/symptoms:

- Anterior and/or posterior nasal mucopurulent drainage

- Nasal obstruction/nasal blockage/congestion

- Facial pain, pressure, and/or fullness

- Reduction or loss of sense of smell

Some guidelines specify that patients must have drainage or nasal obstruction as one of the two . The cardinal signs/symptoms should be present for 12 weeks or longer despite attempts at medical management.

Although symptoms must be present to consider the diagnosis, there is a poor correlation between the symptoms of CRS and objective findings upon imaging or endoscopy of the paranasal sinuses . Thus, objective measures of mucosal inflammation are also required for the diagnosis.

Objective evidence of inflammation — In addition, establishing the diagnosis

requires objective evidence of sinus mucosal disease on sinus computerized tomography (CT) imaging or direct examination, because symptoms alone are not sufficiently specific.

Objective evidence of mucosal inflammation requires demonstration of one or more of the following findings, using nasal examination and/or CT imaging :

●Purulent (not clear) mucus or edema in the middle meatus or ethmoid regions

●Polyps in the nasal cavity or the middle meatus

●Radiographic imaging demonstrating mucosal thickening, or partial or complete opacification of the paranasal sinuses

A doctor can examine the nose with a otoscope in the office and see mucosal evidence of disease , an endoscope  and or CT is not required .

Most medical professionals diagnose chronic sinusitis  by history and physical exam in the office and only rarely  refer patients for CT scans and endoscopic evaluations . These tests are only required for patients that do not respond to standard care  as the CT scan involves radiation exposure and the endoscopic exam is invasive, and both are costly .

John Hamilton , MD

# CERTIFICATE OF SERVICE

I hereby certify that the above foregoing Motion and Memorandum in support thereof has been served on All Counsel by electronically uploading same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this _____ day of _____, 20___.

_____

J. Barton Greer