**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
| "Deepwater Horizon" in the Gulf of | * | |
| Mexico, on April 20, 2010 | * | **SECTION J** |
| | * | |
| | * | **JUDGE BARBIER** |
| This Document Relates To: | * | **MAGISTRATE JUDGE WILKINSON** |
| | * | |
| ALL CASES | * | |

**BP'S REPLY IN SUPPORT OF MOTION AS TO RELEASED CLAIMS**
**PURSUANT TO PTO NO. 64, SECTION I.B1 ("B1 BUNDLE")**

BP Exploration & Production Inc. and BP America Production Company (collectively, "BP" or the "BP Defendants") hereby submit this reply in support of their Dispositive Motion as to Released Claims pursuant to PTO No. 64 (Rec. Doc. 22297), Section I.B1 ("B1 Bundle") with respect to the Remaining B1 Plaintiffs[1] that have settled and released their claims against BP.[2]

In the Release Motion, BP sought to dismiss with prejudice the claims of 40 Remaining B1 Plaintiffs that BP had identified as having released their claims. Release Mot. at 3.[3]  In response:

- Twenty-four plaintiffs timely filed oppositions, including 20 plaintiffs listed on Exhibit A of the Release Motion and four plaintiffs listed on Exhibit D of the Release Motion.

- One opposition purports to apply on behalf of a "class" of GCCF Release signatories.

- BP also received three submissions that were not filed with the Court.  Out of an abundance of caution, BP will treat those submissions as oppositions.

- Sixteen plaintiffs listed on Exhibit A and nine plaintiffs listed on Exhibit D of the Release Motion did not respond, thereby conceding that dismissal with prejudice is warranted for their claims.  *See* Plaintiffs that Failed to Respond, attached hereto as **Exhibit 1**.

---

[1]   Capitalized terms not defined herein have the meanings set forth in the Memorandum in Support of BP's Dispositive Motion as to Released Claims (Rec. Doc. 22479-1) ("Release Motion") and PTO 64.

[2]   BP reserves its rights with respect to all defenses, responses, claims, or relief not resolved or obtained through its Release Motion.

[3]   Three plaintiffs' cases (L&M MEK, Inc., JWWTEW, LLC, American Diesel Equipment) were since dismissed.

The oppositions to the Release Motion fall into five general categories: (1) those seeking to invalidate plaintiffs' executed GCCF releases; (2) those alleging that plaintiffs opted out of the Economic and Property Damage ("E&PD") Class (and its releases); (3) those arguing that dismissal of plaintiffs' lawsuits is premature because their claims are still pending before the CSSP and might be deemed excluded; (4) those arguing that plaintiffs were class members who received no compensation from the CSSP and therefore should be allowed to litigate their claims; and (5) those alleging the plaintiffs' complaints assert non-B1 claims, which should not be dismissed.

For the reasons discussed below and in BP's Release Motion, BP respectfully requests that the Court grant its Release Motion, as amended herein.

## I.    OPPOSITION CATEGORY 1:  ALLEGED INVALID GCCF RELEASES

Six of the seven plaintiffs identified as having executed GCCF Releases oppose BP's Release Motion,[4] alleging fraudulent inducement, economic duress, and unconscionability.  In addition, Lyons and Farrar, P.A. filed a purported classwide opposition ("Purported Class Opposition"), arguing that some alleged uncertified class of persons who received cash compensation from the GCCF and signed releases nevertheless should have those releases deemed invalid and unenforceable.  Of note, none of the five individuals discussed in the Purported Class Opposition are Remaining B1 Plaintiffs and none of them was identified in the Release Motion.

As explained in more detail below, the GCCF program and its releases provided disclosure, choice, compensation, and an efficient dispute resolution mechanism for claimants.  The GCCF program was subject to significant oversight and scrutiny by the federal government, the Court, and various challengers in MDL 2179.  In turn, the GCCF Releases have withstood several

---

[4]    Crabco and Mr. Peeper's Best, LLC (13-cv-01076), Johnny's Clams (16-cv-05541), and Jelp Barber (16-cv-05533), filed oppositions; and Richard Seward, Sr. (16-cv-04068), Richard Seward, Jr. (16-cv-04072), and Richard Lee Blick (16-cv-04061), served but did not file oppositions (all together, the "GCCF Release Plaintiffs").

challenges and are valid and enforceable—both prima facie and as against the Remaining B1 Plaintiffs who signed them in exchange for final payment. Tellingly, none of the six GCCF Release Plaintiffs have offered to return the money they received from the GCCF in exchange for their releases. Rather, they apparently want to keep the consideration for the releases, *and* have the releases nullified. They cannot have it both ways; they already made their choice to release their claims and receive compensation.

### A.    Background on the GCCF Releases

The GCCF was part of BP's effort, pursuant to The Oil Pollution Act ("OPA") and in cooperation with the federal government, to manage and compensate the claims arising from the 2010 *Deepwater Horizon* incident (the "Spill"). *See* 33 U.S.C. § 2705(a) (1996). Established by BP after June 2010 discussions with the Obama administration, the GCCF was subject to ongoing review and analysis by the United States Department of Justice, the Claims Administrator Kenneth Feinberg, and outside legal consultants. The GCCF began accepting claims on August 23, 2010 and ultimately compensated over 220,000 claimants for Spill-related losses.[5]

Claimants could submit claims to the GCCF for property damage, lost earnings or profits, loss of subsistence use, and other damages. GCCF claimants had several fully disclosed choices for compensation; they could seek emergency advance payments, interim payments, a "Quick Pay" final payment, or a full review final payment. Only the latter two payments required execution of a release. Or, claimants were free to litigate, if they were not satisfied with the GCCF's offer.

A claim for final payment sought to resolve all of the claimant's past and future alleged damages from the Spill. A Quick Payment offered $5,000 to an eligible individual claimant or

---

[5]    BDO Consulting, Independent Evaluation of the Gulf Coast Claims Facility Report of Findings & Observations to the U.S. Department of Justice (2012), available at https://www.justice.gov/iso/opa/resources/66520126611210351178.pdf.

$25,000 to an eligible business claimant without requiring any more claim documentation or review.  Quick Payments provided an easy and expeditious resolution (i.e., payment within 14 days) where a claimant believed that the fixed quick pay amount fully and fairly resolved his or her claims.  A full review final payment offered an individualized claim evaluation and required the claimant to submit a claim form and documents supporting the claimed damages.  As with the Quick Payment, to receive a full review final payment, a claimant had to execute a GCCF Release.

The GCCF also established a voluntary appeal procedure for final payment determinations. Among other things, a claimant could appeal the GCCF's final claim determination if the total monetary award (including any emergency, interim, or final payment) exceeded $250,000, and BP could appeal if the total monetary award exceeded $500,000.  Nevertheless, appeals were binding only on BP; a claimant who disagreed with the appeal decision could reject the GCCF's determination and pursue his or her claim in court or as otherwise permitted under OPA.

**B.    The Court has upheld the GCCF Releases multiple times and rejected attacks that the releases are invalid.**

Early in the MDL 2179 proceedings, certain plaintiffs sought a declaratory judgment that (1) any attempt to release punitive damages without an adjudication as to fairness, adequacy, and reasonableness was ineffective as contrary to law, equity, and public policy; and (2) BP and the GCCF were not obligated under OPA to obtain releases.  Order & Reasons (Rec. Doc. 3830) at 34.  On August 26, 2011, this Court found these claims for declaratory relief "fatally problematic" because, among other things, "nothing prohibits Defendants from settling claims for economic loss."  *Id.*  The Court explained: "While OPA does not specifically address the use of waivers and releases by Responsible Parties, the statute also does not clearly prohibit it. In fact, as the Court has recognized in this Order, one of the goals of OPA was to allow for speedy and efficient recovery by victims of an oil spill."  *Id.* at 34-35.

4

In 2012, certain plaintiffs moved to nullify every GCCF Release and to vacate the preliminary approval order as to the proposed E&PD Class Settlement.  (Rec. Docs. 6902-1, 6831-1, 7473-1.)  Plaintiffs alleged, among other things, that the GCCF's strategy was to "Delay, Deny, Defend"—i.e., to delay payment, starve the claimant, and then offer the claimant a fraction of the damages to which the claimant was entitled.  (Rec. Doc. 7473-1 at 4.)  They alleged that the ultimate objective of this strategy was to obtain a GCCF Release and argued that the Court erred in finding OPA does not prohibit settling and obtaining releases for economic loss claims.  *Id.* at 5, 7.  Plaintiffs raised duress, coercion, and fraud arguments, *id.* at 13, and also argued that the proposed exclusion of GCCF Release signatories from the proposed E&PD Class Settlement violated OPA, *id.* at 6-7.  On October 10, 2012, the Court denied the motions to globally nullify the GCCF Releases and to vacate the preliminary settlement approval.  (Rec. Doc. 7615.)

On December 21, 2012, the Court granted final approval of the E&PD Settlement Agreement.  Order & Reasons (Rec. Doc. 8138).  In its Order & Reasons for that approval, the Court held that objectors who had settled their claims with the GCCF lacked standing to object to the E&PD Settlement Agreement because they were not in the E&PD Class.  *Id.* at 76.  The Court reiterated that it had already denied a motion to nullify the GCCF Releases and explained that, if anything, challenges to a specific GCCF Release would proceed on an individual basis:

> [V]alidity of a particular GCCF release as a factual matter can be pursued only by means of cases brought for resolution to this Court or to another appropriate court with venue and jurisdiction, at which point it would be for BP to decide whether to assert such a GCCF release as an affirmative defense and then for such a plaintiff to attempt to establish that such a release is invalid so as to overcome the defense.

*Id.* at 76-77.

The challenges to the GCCF Releases asserted in response to the Release Motion provide no new basis for the Court to overturn its earlier rulings; the GCCF releases remain valid.

C.      **The individual challenges to the GCCF Releases do not establish that the releases are invalid.**

The GCCF Release Plaintiffs have not met their burden to overcome the presumptive validity of the GCCF Releases they signed in exchange for substantial consideration. *See Lemieux v. CSR Ltd.*, No. CV 16-16508, 2017 WL 1164370, at *6-8 (E.D. La. Mar. 29, 2017) (citing La. cases); *Smith v. Paul Revere Life Ins. Co.*, 998 F. Supp. 1412, 1416 (S.D. Fla. 1997) (citing *Cowen v. Cowen*, 95 So. 2d 584, 586 (Fla. 1957)).  As discussed in the Release Motion and above, the GCCF program had DOJ oversight (including over the release language), and was an appropriate way for BP to meet its OPA responsibilities by offering claimants early, easy, and fully disclosed settlement options. The GCCF Releases informed claimants of their rights—including to consult an attorney of their choice and to pursue their claims through litigation if they disagreed with the GCCF's final payment offer—and of the scope of the releases.  Release Mot. at 5-7.  The GCCF Release Plaintiffs accepted thousands of dollars in payments and signed these final, unambiguous releases.  No GCCF Release Plaintiff proposes to return that consideration and start over as if no contract to release BP had ever formed.  "Contractual negligence, such as failure to read a contract one signed, is not excusable[.]"  *Semco, LLC v. Grand Ltd.*, No. 16-CA-342, 2017 WL 2350946, at *34-35 (La. Ct. App. May 31, 2017) (citing *Peironnet v. Matador Res. Co.*, 144 So. 3d 791, 810 (La. 2013); *see also* La. Civ. Code Ann. art. 1954; *Paul Revere Life Ins. Co.*, 998 F. Supp. at 1412.  Nor does failure to consult an attorney before signing—despite being advised to do so—excuse performance.[6]  The GCCF Release oppositions demonstrate nothing more than buyer's remorse

---

[6]      For example, Tharp admits he decided not to inform his counsel (who at the time was helping him assert losses against BP) that he was signing a release, despite warnings in the release to the contrary.  As discussed in the Release Motion, Tharp's GCCF Release discharged *all* his claims arising from the Spill, including claims in connection with Crabco and Mr. Peeper's.  Release Mot. at 5-6.

from individuals who accepted final compensation from the GCCF and now want to undo that decision years later.

Furthermore, a heightened burden for seamen's releases under maritime law does not apply to the GCCF Release Plaintiffs' claims.  First, the GCCF Release Plaintiffs have not established that they are "seamen."  Further, those plaintiffs sought and received compensation under OPA for their pure economic losses, although such compensation (with certain exceptions) is expressly barred under maritime law.  *See Robins Dry Dock & Repair v. Flint*, 275 U.S. 303, 309 (1927).  Thus, to the extent a heightened standard under maritime law were to apply to seamen's releases, it would not apply to invalidate the release of claims that *do not even exist* under maritime law.  Again, the plaintiffs want to have it both ways—to accept the protections of maritime law and none of the limitations.  But, the principles protecting seamen's releases are inapplicable here.  The Court should reject Plaintiffs' attempt to evade their burden to show that their releases were invalid, and dismiss the complaints of all Remaining B1 Plaintiffs who signed GCCF Releases.

### D.    The Purported Class Opposition is procedurally improper.

As noted above, none of the five individuals discussed in the Purported Class Opposition are Remaining B1 Plaintiffs and none of them was identified in the Release Motion. Moreover, no class of plaintiffs has been or could be certified for the purpose of invalidating the GCCF Releases on a classwide basis because individual issues of fact and law—including allegations of financial duress, fraudulent inducement, or even "seaman" status under maritime law—would be case-by-case and would predominate over any common issues.  Finally, the statements of the Mississippi and Florida Attorney Generals "incorporated by reference" in this opposition were overruled in 2012 when the Court approved the E&PD Settlement.  *See* Order & Reasons (Rec. Doc. 8138) at 76.  In short, the Purported Class Opposition is procedurally improper, is unavailing, and should be overruled.

## II.    OPPOSITION CATEGORY 2:  ALLEGED OPT OUTS

Six plaintiffs filed oppositions to the Release Motion alleging that they opted out of the E&PD Class.  Upon further review of the records provided by Garden City Group, who processed all CSSP opt outs, BP withdraws the Release Motion as to Perry Family Properties, LLC, who BP has confirmed is a valid opt out.[7]

In contrast, BP has no record of a valid opt out by DDK Partners, David K. Edwards, Dach Van Hoang, Tuoi Pham, or Alton Rockford Meadows, and those plaintiffs have failed to demonstrate otherwise.  Indeed, these plaintiffs (except Meadows) have participated in the CSSP and received a determination regarding their claims.  For example, DDK admits in its opposition that it attempted to opt out of the E&PD Class in 2016 (Rec. Doc. 23197), well after the November 1, 2012 opt-out deadline, (Rec. Doc. 7176).  Also, David E. Edwards—not David K. Edwards—is listed on the November 2012 Opt Out Report filed with the Court (Rec. Doc. 8001-39) and attached in part to Edwards's opposition, (Rec. Doc. 23183-2).  Pham and Hoang, through counsel Robert A. McAllister, revoked their opt outs, according to Garden City Group's records.[8]  Finally, Meadows did not appear on the Opt Out Report, but may have a CSSP claim pending.  *See* Ex. 3. Thus, BP asks the Court to grant the Release Motion as to DDK, Edwards, Hoang, and Pham.

## III.    OPPOSITION CATEGORY 3:  PENDING CSSP CLAIMS

Eight plaintiffs argue that their claims are still pending before the CSSP and might be excluded, so dismissal of their complaints against BP would be premature.  According to BP's records, three of those claimants[9] still have CSSP claims pending.  For those cases where the CSSP

---

[7]    *See* revised Exhibits A and D to the Release Motion, attached hereto as **Exhibit 2** and **Exhibit 3**, respectively.

[8]    *See* Pham and Hoang revocations, attached hereto as **Exhibit 4**.

[9]    Adams Homes of Northwest Florida, Inc., Deep South Machine, Inc., and The Victorian Rental Pool.

may yet determine that plaintiffs are excluded from the E&PD Class, BP does not seek dismissal at this time, but reserves its rights to seek dismissal upon conclusive determination that the claimants are E&PD Class members. *See* Ex. 3.  The five claimants who have a determination (other than exclusion) from the CSSP, however, are subject to the E&PD Settlement, its releases, and the Order & Judgment (Rec. Doc. 8139).  Those claimants cannot simultaneously pursue a CSSP claim and a separate lawsuit; their complaints should be dismissed.  *See* Ex. 2.

## IV.    OPPOSITION CATEGORY 4:  NO COMPENSATION FROM CSSP

Four plaintiffs (Patricia Bailey, Cornelius Johnson, Gilbert Johnson, and James March) admit to filing claims with the CSSP, but argue that they "have not been paid for their damages." (Rec. Doc. 23081; *see also* Rec. Docs. 23059, 23058.)  In addition, Steven L. Shivers alleges he had claims for three properties damaged by the Spill; submitted a CSSP claim for his Florida property (Miramar Beach Property), which was denied; and filed his complaint for the other two, Mississippi properties.  (Rec. Doc. 23194 at 1-2.)  In other words, Shivers alleges that some but not all of his claims were compensated through the CSSP, but provides no basis for contending that the Mississippi properties "were not included with the class definition of the CSSP."  *Id.* at 2.

Regardless of the amount awarded through the CSSP (including no award), class members are bound by the E&PD Class releases.  Yet, apparently these CSSP claimants argue that they can keep separate lawsuits pending unless and until they are satisfied with their CSSP award.  Not so. The E&PD Class releases and Order & Judgment forbid this tactic.  Those claimants who disagree with the CSSP result have appeal rights within the CSSP.  Even a $0 CSSP recovery does not exempt an E&PD Class member from class membership.   And, without a valid opt out or exclusion, a class member may not pick and choose which B1 claims it recovers through the CSSP and which it litigates.  *See* Order & Judgment ¶ 9 (Settlement Agreement "shall be the exclusive

remedy for any and all Released Claims by or on behalf of . . . any and all Economic Class Members against any and all Released Parties"); *id.* ¶ 11 (dismissing all "Related Claims").

Because none of the five plaintiffs discussed in this section have demonstrated that some or all of their claims are not subject to the E&PD Settlement, the classwide releases apply to their claims and their complaints should be dismissed.

## V.    OPPOSITION CATEGORY 5:  NON-B1 CLAIMS

Finally, Mark Edward Mead filed an opposition (Rec. Doc. 23164) contending that his pending case was never formally assigned to a pleading bundle and, in any event, "does not involve any B1 claims," only "claims for bodily injuries."  (Rec. Doc. 23164 at 1.)  Mead alleges that the release he admittedly executed for his economic loss claims submitted to the CSSP did not release his pending medical claims. (Rec. Doc. 23164 at 3.) Mead's submissions in the MDL create some confusion regarding which claims he seeks to assert through litigation.  *E.g.*, Mead Sworn Statement re B1 Claims served April 27, 2016 (LNFS 58922999).  Likewise, Raymond Merchant filed an opposition (Rec. Doc. 23271), apparently opposing dismissal because he has not received money or signed a release, particularly for certain claims that were excluded from the E&PD Settlement (e.g., bodily injury, moratoria). Yet, Merchant also seeks compensation for B1 claims.

Neither plaintiff has opted out of the CSSP, and both have received a determination other than exclusion.  While BP does not seek to dismiss their personal injury claims in the Release Motion, to the extent their filed claims assert economic losses or property damage, BP asks that the Court dismiss those claims, as they have been released.  *See* Release Mot. at 7-9.

### CONCLUSION

For the foregoing reasons, BP respectfully requests that the complaints and B1 claims of the 36 Remaining B1 Plaintiffs listed in Exhibit 2 be dismissed with prejudice.

Dated: August 15, 2017

Respectfully submitted,

*/s/ Don K. Haycraft*

**LISKOW & LEWIS**

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar # 16984)
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

**KIRKLAND & ELLIS LLP**

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

Jeffrey B. Clark
(jclark@kirkland.com)
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Christopher W. Keegan
(chris.keegan@kirkland.com)
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

*Attorneys for the BP Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 15th day of August, 2017.

/s/ <i>Don K. Haycraft</i>
Don K. Haycraft
