## PORTO CASTELO, INC.'S REQUEST FOR DISCRETIONARY COURT REVIEW

**This Document Relates To:**
**Claimant ID 100095395/Claim ID 376064**

TO THE HONORABLE JUDGE BARBIER:

COMES NOW, PORTO CASTELO, INC., ("PC"), and files this its Request for Discretionary Court Review, and in support would respectfully show this Honorable Court, the following:

PC's claim presents not only a rare and exceptional circumstance, but rather, a one of a kind situation that supports the extraordinary relief it seeks from this Court. In support, PC asks the Court to consider the following: (1) PC was a shrimp harvester and a U.S. FDA approved processor of shrimp, which processing could have operated independent of its harvesting business; (2) PC was the first and only company operating in the Gulf at the time of oil spill to harvest and independently process its harvest on board. Processing was a separate division of PC and created independent value for which PC seeks to recover by way of its Business Economic Loss claim, ("BEL"). PC provided ample documentation of its harvesting and processing business; (3) BEL claims include claims for the loss of profit from seafood processing; (4) On June 12, 2017, for the first time, BP argued, citing the Settlement Agreement, ("SA"), that activity prior to landing was to be compensated by the Seafood Compensation Program Framework and losses that occurred after landing was compensated under the BEL Framework. It also argued that intra company purchases were not covered by the SA; (5) Such an interpretation of the SA is unsupportable as no one had ever processed seafood on board and, therefore, it is impossible that the SA language contemplated and precluded covering on board processing losses, and, in fact, there is no express or implied prohibition of recovery for the processing losses of a vertically integrated harvesting and on board processing business like PC's, nor does it preclude intra company purchases; (7) Further, the SA does not prescribe or dictate that purchases or processing shrimp must be post landing; (8) There is also no legislative history of the intent of the language in the SA to support the CA's argument and conclusion regarding the same, and the Appeal Panel's, ("AP"), corresponding acceptance of the CA's interpretation

1

which it used to deny PC's claim; (9) The AP's decision of June 14, 2017 is a defacto redrafting of the SA; (10) The AP's decision of June 14, 2017, two days after BP's reply, failed to consider PC's June 27, 2017 submission challenging the Claims Administrator's, ("CA"), unsupported reading and interpretation of the SA; and (11) The SA does not preclude this claim nor could it have ever.  This Court's review and reversal will not have a negative effect on other or prior claims, as the ruling only serves to harm PC, given the unique nature of this claim.  The contrary allows BP to interpret definitions to deny claims in its sole discretion.  The AP erred because it took, at face value, the CA's interpretation that under the SA processing had to be post landing and that purchases could not be made within a vertically integrated business like PC, when there was no such language in the SA or any subsequently issued policies to support such a conclusion, nor could it have been intended, as it was unforeseeable.

PC spent a great deal of money and time to be certified as a on-board processor in addition to a harvester, which PC documented to the AP and showed that its claim is based entirely on the added value to the shrimp because of on board processing, *e.g.*, the sole basis of its claim. [1] Based on its documentation, it is undisputed that PC's processing clearly meets the definition of a Seafood Processor under the SA.

The CA argued, which are argument the AP accepted at face value, that under the SA claims for added value for "on board" processing are not compensable under the BEL framework versus after landing processing.  First, the definition of processing does not include such an preclusion, nor is it implied. Nowhere does the SA or any policy state that the processor cannot also be the fisherman nor how or where the shrimp is to be purchased, *e.g.*, that the purchase cannot be an intra company transaction and accounted for as such.  BP did not know of PC or its business prior to the spill nor the development of the settlement claims criteria, and, therefore, it is inconceivable that the SA sought, desired, planned, foresaw, or intended to exclude this one very specific and special processing operation. To argue the contrary or read such

---

[1] Primary Seafood Processor shall be defined as an entity or Natural Person that receives and prepares Seafood purchased from a Commercial Fisherman, Landing Site, or canning, smoking, salting, drying or freezing, grading by size, packing storing Seafood for shipment. [Source:  2.c., of Attachment A - Seafood Distribution Main Definitions}

2

exclusions into the current definition of seafood or processing defies logic and common sense. Here, PC's claim meets the definition of a processor as footnoted above, and PC received and prepared seafood purchased from a commercial fisherman, albeit itself which accounted for the purchase in its intra company accounting. Nothing in the definition of a processor limits when and how the purchases are to take place, and certainly nothing in the definition precludes the same from occurring on board the fisherman's vessel and being accounted for separately or internally within a company, and nothing expressly nor implied requires the purchase or processing to occur on land or at a landing site or after arriving on land.  To now argue that landing processed shrimp somehow makes some difference versus purchasing and/or processing it post landing and that a claim for such loss is somehow now compensable under another program (for harvesting) whose guidelines expressly excludes it (*e.g.*, harvesting claims exclude processing claims) is disingenuous and baseless.  In other words, BP argues that processing on board prior to landing does not count as a processing claim, but it fails to point to anything that precludes the same, and, therefore, must reinvent the definitions or interpret the same to suit itself after the fact and regarding a business that it did not know about, could not foresee, and, therefore, could not have intended to exclude. Given the uniqueness of this claim, a favorable ruling will create no precedent for other similar claims as none exists. PC's claim, while unique, is within the definition of a compensable BEL claim, and PC respectfully requests that the claim process be suspended pending Court review, that the Court grant PC's Request for Discretionary Court Review, and upon the same, reverse the AP and order the completion of the claim consistent with the Court's order, and for such other and further relief to which PC is entitled.

    Respectfully submitted,

    By: /s/ Gus E. Pappas
        Gus E. Pappas
        1776 Yorktown, Suite 425, Houston, Texas 77056
        (713) 621-2678   Telephone
        gus@dabneypappas.com

COUNSEL FOR PORTO CASTELO, INC.