UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig                MDL 2179
       "Deepwater Horizon" in the
       Gulf of Mexico, on
       April 20, 2010                    SECTION "J"

This Document Relates to:              JUDGE BARBIER
Nos. 2:11-cv-00916 and 2:10-md-2179     MAG. WILKINSON

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE

MAY IT PLEASE THE COURT:

Martzell, Bickford & Centola, APC, David Landry, Esq. and King, Krebs & Jurgens, P.L.L.C. (hereinafter "Intervenors") respectfully submit this Memorandum in Support of their Motion for Leave to Intervene pursuant to Rule 24(a) of the Federal Rules of Civil Procedure.

## INTRODUCTION

After six years of representing Plaquemines Parish Government ("PPG" or "the Parish") in the Deepwater Horizon litigation and related punitive damage settlement program pursuant to a contingency fee contract authorized by the Plaquemines Parish Counsel and Executed by the Plaquemines Parish President, Intervenors were discharged as counsel on August 18, 2017.[1] The Fifth Circuit and its district courts have consistently held that a discharged lawyer who previously represented a litigant in pending litigation clearly possesses an interest in the subject of the underlying action. Further, Intervenors have a lien in the property and proceeds of this litigation

---

[1] See email from Parish Attorney, Peter Barbee, to Intervenors, dated August 18, 2017. Exhibit A.

pursuant to the La. Rev. Stat. § 37:218.  This statute provides that any "settlement, compromise, discontinuance, or other disposition made of the suit or claim" without the consent of the Intervenors is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made."  For these reasons, Intervenor's motion should be granted.

**BACKGROUND**

Intervenors were hired by Plaquemines Parish Government ("PPG" or the "Parish") six years ago to represent its interest in connection with the Deepwater Horizon explosion. *See Exhibit B (contract).*

After six (6) years of representing the Parish in the BP Matter, Special Counsel were successful in negotiating a very advantageous settlement of the BP Matter which was memorialized in a settlement agreement dated June 8, 2017.[2]  Under the terms of the Settlement Agreement, the Parish will receive the total sum of $45,000,000, with $25,000,000 being paid in 2017 ($15,000,000 on August 1, 2017, and $10,000,000 on October 15, 2017).   The Parish will receive successive annual payments of $5,000,000 over the next four years beginning in 2018.

On August 1, 2017, Special Counsel received the first installment of $15,000,000 from BP into its trust account pursuant to the terms of the Settlement Agreement.  In anticipation of the receipt of this initial $15,000,0000 payment from BP, Special Counsel provided PPG's current Parish Attorney and current President, Amos Cormier, with a disbursement schedule (the "Fee Disbursement Schedule") to be executed by PPG and Special Counsel which reflected the amounts to be disbursed to the Parish and the agreed upon contingency fee owed to Special Counsel.  The

---

[2] The Release was designated as "confidential" and was submitted under seal as an exhibit to the Motion for Attorney Fees and Costs.  See Doc. No. 23281

Fee Disbursement Schedule also included an itemized statement of costs reflecting the hundreds of thousands of dollars in costs that have been advanced by Special Counsel over the past six (6) years, the vast majority of which were for multiple subject matter experts necessary to make the presentment of the Parish's claim to BP pursuant to this Court's Order.

PPG's President has refused to execute the Fee Disbursement Schedule and has requested, through its Parish Attorney, that the contingency fee amount and costs due Special Counsel be retained in the trust account of Special Counsel, which direction Special Counsel has complied with. The Parish has been sent and has now acknowledged receipt of its balance of the initial $15,000,000 payment. However, PPG, through its Parish President, Amos Cormier, and the PPG's Parish Attorney, Peter Barbee, has refused to allow Special Counsel to take the fees and costs owed to them, claiming that the Contingency Fee Agreement duly executed by the then PPG President, William Nungesser, and specifically approved by the Ordinances passed by the Parish Counsel in office at the time is not enforceable because the Parish Attorney claims that certain unspecified "legislative documents" to support the Contingency Fee Agreement have not been provided.

On August 15, 2017, after numerous attempts at amicably resolving the matter with the Parish President and Parish Attorney, Intervenors filed a Motion for Attorneys' Fees and Costs. Doc. 23266. This motion is presently pending before this Court but no hearing date has been set pursuant to Pretrial Order No. 15.[3] Intervenors submit that their arguments in favor of fees and costs apply with equal force in favor of granting this Motion to Intervene and Intervenor's ask that those arguments be made part of this motion as if copied here in extenso.

_____

[3] Cf. *The Plaquemines Gazette*, 8/29/2017, Exhibit C ("Last week Barbier granted continuances to both sides 'without date,' meaning the next court date has yet to be determined, which [Parish Attorney] Barbee sees as a win for the Plaquemines Parish Government.... [According to Parish Attorney Barbee] 'A federal judge wouldn't even give them a hearing date. I think it's fair to say the judge is basically calling an ixnay on it.'")

The Parish discharged Intervenors as counsel on August 18, 2017.

## LAW AND ARGUMENT

A party is entitled to an intervention of right if (1) the motion to intervene is timely; (2) the potential intervenor asserts a "direct, substantial legally protectable" interest that is related to the property or transaction that forms the basis of the controversy in the case into which it seeks to intervene; (3) the disposition of that case may impair or impede the potential intervenor's ability to protect its interest; and (4) the existing parties do not adequately represent the potential intervenor's interest. *See In re: Oil Spill by the Oil Rig "Deepwater Horizon,"* 2016 WL 4261762 at*3 (E.D. La. 8/12/2016) (*citing In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247, 250 (5th Cir. 2009). Each of these factors are met here.

### 1. The Intervention is Timely

For an intervention to be timely, it must be reasonable under the circumstances. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) ("The analysis is contextual; absolute measures of timeliness should be ignored."). Although the Fifth Circuit has never pronounced a formula to determine timeliness, it has consistently looked to the length of time an intervenor knew or should have known of his interest in a case. *See Trans Chem. Ltd. v. China Nat'l Machinery Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003); *John Doe No. One v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) ("These factors are a framework and not a formula for determining timeliness.") Here, Plaintiffs only learned that they were discharged as counsel on August 18, 2017, or approximately two weeks ago. The intervention is thus unquestionably timely.

### 2. Intervenors Have a Direct Interest in the Subject of the Case

The Fifth Circuit and its district courts have consistently held that a discharged lawyer who previously represented a litigant in pending litigation on a contingency fee basis "clearly possesses

an interest in the subject of the underlying action. *See In re: Oil Spill by the Oil Rig "Deepwater Horizon,"* 2016 WL 4261762 at*3 (E.D. La. 8/12/2016) (*quoting Skinner v. Weslaco Ind. Sch. Dist.*, 220 F.3d 584 (5th Cir. 2000). *See also Valley Ranch Dev. Co. v. FDIC*, 960 F.2d 550, 556 (5th Cir. 1992); *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir. 1970)) (*citing Keith v. St. George Packing Co.*, 806 F.2d 525, 526 (5th Cir. 1986)); accord *Gilbert v. Johnson*, 601 F.2d 761, 767 (5th Cir. 1979); *Cuevas v. BAC Home Loans Serv'g, LP*, No. 4:10-CV-31, 2013 WL 237817, at *1-2 (S.D. Tex. Jan. 22, 2013); *Walker v. Williamson*, No. 1:14-CV-381-KS-JCG, 2015 WL 10963982, at *1 n.1 (S.D. Miss. Dec. 7, 2015); *Bibles v. City of Irving*, No. 308-CV-1795-M, 2009 WL 2252510, at *4 (N.D. Tex. July 28, 2009).

Moreover, Louisiana has codified that interest in LSA-R.S. 37:218 which provides that an attorney acquires a fee interest in the subject matter of the suit or claim in which he is employed by filing his contract with the clerk of court in the parish of the client's domicile. This statute further provides that "[a]fter such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made." Intervenors filed their contract with the Clerk of Court for Plaquemines Parish in accordance with the statute on September 5, 2017. See Exhibit D.

3. *The disposition of Parish's case against BP and claim with the HESI/Transocean Settlement Program Would Impair or Impede Intervenor's Ability to Protect its Interest.*

The disposition of the Parish's case against BP and its claim with the HESI/Transocean Settlement Program without an invention would impair to the point of eliminating Intervenors'

ability to protect its interest due to a private creditor's inability to use writ procedure to enforce a judgement against a political subdivision like Plaquemines Parish.

It is well settled under Louisiana law that judgment creditors cannot compel political subdivisions to appropriate funds for the payment of a judgment rendered against that subdivision through writ procedure. *Hoag v. State*, 889 So.2d 1019, 1023 (La. 2004). As the Louisiana Supreme Court observed in *Newman Marchive Partnership, Inc. v. City of Shreveport*, "the apparent liberality of abolishing most immunity from suit was offset by the continuation of a severe limitation on a private citizen's ability to enforce a judgment against the state, a state agency, or a local governmental entity." 979 S0. 2d 1262, 1266 (La. 2008) (quotations omitted). Thus, if deprived of intervention procedure, Intervenors could be forced to depend upon the whim of the very same legislative body that arbitrarily decided to withhold its fee and costs to appropriate funds for a judgment in Intervenor's favor.

4. *The existing parties do not adequately represent the potential intervenor's interest.*

The final requirement for intervention as a matter of right is that the applicant's interest must be inadequately represented by the existing parties to the suit. The applicant has the burden of demonstrating inadequate representation, but this burden is "minimal." *See Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir.1994); *see also Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972). The applicant need only show that representation "may be" inadequate. *Id.*

In *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52 (5th Cir.1970), the appellant, a law firm, entered into a contingent fee contract to represent a plaintiff in a personal injury action. After suit was filed and a considerable amount of time had allegedly been spent working on the case, appellant was

discharged and new counsel was employed. Appellant filed a motion to intervene in the district court to protect its interests under the contingent fee contract. The district court denied the motion. This court reversed the judgment of the district court, stating:

> We think it clear that the appellant law firm here claimed an interest in the subject of the action against Dixie Carriers, Inc., and it is so situated that the final disposition of the action may as a practical matter impair or impede its ability to protect that interest. Neither of the existing parties is concerned with protecting the appellant's interest.

*Id.* at 54 (citations omitted). The *Gaines* decision was reaffirmed in *Gilbert v. Johnson,* 601 F.2d 761, 767 (5th Cir.1979), cert. denied, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

Applied here, the Parish has already shown it has no intention of protecting Intervenor's interest in the subject matter of this lawsuit and claim. Further, without this procedure BP and the HESI/Transocean Settlement Program have no incentive to protect Intervenor's interest.

**WHEREFORE,** Intervenors, Martzell, Bickford & Centola, APC, David Landry, Esq. and King, Krebs & Jurgens, P.L.L.C., pray that their Motion for Leave to Intervene is Granted.

Respectfully Submitted,

*/s/Scott R. Bickford*
**SCOTT R. BICKFORD, T. A. (#1165)**
**LAWRENCE J. CENTOLA, III (#27402)**
**SPENCER R. DOODY (#27795)**
**MARTZELL, BICKFORD & CENTOLA**
usdcedla@mbfirm.com
338 Lafayette Street
New Orleans, LA 70130
(504) 581-9065 Telephone
(504) 581-7635 Fax

*/s/Henry King*
**HENRY A. KING (#7393)**
**MICHAEL L. VINCENZO (#23965)**
**King, Krebs & Jurgens, PLLC**
hking@kingkrebs.com
mvincenzo@kingkrebs.com
201 St. Charles Avenue, 45th Floor
New Orleans, LA  70170
504-582-3800 Telephone
504-582-1233 Fax

AND


*/s/David Landry*
**DAVID L. LANDRY (#7978)**
**The Law Office of David L. Landry**
Dlandry4393@gmail.com
1214 Parasol Place
Pensacola, Florida  32507
(850) 492-7240


## CERTIFICATE OF SERVICE


I hereby certify that the above and foregoing Motion for Fees and Costs was served electronically with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of September, 2017. Copies are also being transmitted via certified mail to the following:

Peter A. Barbee, Esq.
Parish Attorney
Plaquemines Parish Government
8056 Hwy 23, Suite 200
Belle Chasse, LA  70037


*/s/Scott R. Bickford*
SCOTT R. BICKFORD