**Scott R. Bickford**

| | |
|---|---|
| **From:** | Peter Barbee <peterbarbee@me.com> |
| **Sent:** | Friday, August 18, 2017 6:59 PM |
| **To:** | hking@kingkrebs.com; Scott R. Bickford; 2landry@cox.net |
| **Cc:** | Andrew C. Wilson; Amos Cormier; John Barthelemy |
| **Subject:** | Termination of Representation for conflict of interest |

Gentlemen:

This will acknowledge receipt of your Motion for Contingency Fee on Thursday, August 17, 2017. As this action clearly places your law firms in an adversarial role contrary to the interest of Plaquemines Parish Government (hereinafter "PPG"), this is to advise that to the extent the court should find that you have lawfully represented, your services are no longer required and that your firms are hereby terminated for cause.  In this regard, we have become aware of other irregularities associated with your representation of PPG which also form the basis for cause of your termination which will be more fully set forth in PPG's response to your Motion. This is to also request that you immediately withdraw as counsel of record for PPG.  Finally, since you have set a submission date which allows for only 3 working days to respond, this is to request your immediate advices as to whether you will agree to a continuance of the submission date.  Please respond within 24 hours with regard to the latter.

Sincerely,
Plaquemines Parish Attorney
Peter Barbee

EXHIBIT A

AGREEMENT FOR PROFESSIONAL                    UNITED STATES OF AMERICA
LEGAL SERVICES

BY:    PLAQUEMINES PARISH GOVERNMENT         STATE OF LOUISIANA

AND:   MARTZELL BICKFORD, L.L.C.,
       DAVID LANDRY,
       & KING, KREBS & JURGENS, L.L.C.       PARISH OF PLAQUEMINES


        THIS AGREEMENT MADE AND ENTERED INTO on the dates set forth hereinafter, but
effective as of the 15th day of April, 2011 ("Effective Date"), by and between PLAQUEMINES
PARISH GOVERNMENT ("**PARISH**"), as governing authority for the Parish of Plaquemines and all
political subdivisions and districts situated therein, represented by William H. "Billy" Nungesser,
its duly authorized President, pursuant to Parish Council Ordinance No.11-77, adopted April 14,
2011, and Ordinance No. 11-238, adopted August 11, 2011; and MARTZELL BICKFORD, a
Louisiana professional limited liability company authorized to do and doing business in the State
of Louisiana with its principal office at 338 Lafayette Street, New Orleans, Louisiana 70130,
represented herein by Scott Bickford, its duly authorized Managing Principal, DAVID LANDRY, Of
Counsel to Martzell Bickford, and KING, KREBS & JURGENS, L.L.C., a Louisiana professional limited
liability company authorized to do and doing business in the State of Louisiana with its principal
office at 201 St. Charles Avenue -45th Floor, New Orleans, Louisiana 70170, represented herein by
Henry King, its duly authorized Managing Partner, all collectively referred to herein as
"ATTORNEY".  For purposes of the instant agreement, Scott R. Bickford of Martzell & Bickford
shall be designated lead counsel/ trial attorney.


## SECTION 1. THE MISSION:

        The **PARISH** hereby contracts with ATTORNEY to assist in providing all necessary
professional legal services to the **PARISH**, in connection with the claims, causes of action of
whatsoever nature against the hereinafter named entities, **BP PLC, BP PRODUCTS NORTH
AMERICA, INC., BP EXPLORATION AND PRODUCTION, INC., BP AMERICA, INC., HALLIBURTON
ENERGY SERVICES, INC., SPERRY DRILLING SERVICES, WEATHERFORD INTERNATIONAL LTD.,
CAMERON INTERNATIONAL CORPORATION D/B/A CAMERON SYSTEMS CORPORATION, M-I,
LLC, ANADARKO PETROLEUM CORPORATION COMPANY, ANADARKO E&P COMPANY, L.P.,
MOEX OFFSHORE 2007 LLC, MOEX U.S.A. CORP. and MITSUI OIL EXPLORATION COMPANY LTD.**
hereinafter sometimes collectively referred to as "DEFENDANTS", arising out of or due to the
Deepwater Horizon/Macondo Well explosion and resulting crude oil and natural gas spill and
release into the waters and onto the lands of the PARISH.  ATTORNEY is also engaged to pursue

PPG/Martzell Bickford/David Landry/                          Init____ ____
King Krebs Jurgens
Attorney Contract(BP Litigation)                                  ____ ____

                                      1                            ____

EXHIBIT B

any claims and causes of action that PARISH has or may have against any of the DEFENDANTS or other person/entity arising under the Natural Resources Damage Assessment procedure.

## SECTION 2. BASIC SERVICES:

ATTORNEY shall provide all basic services required in connection with the pursuit of PARISH's claims and causes of action against the DEFENDANTS including all necessary services described herein or usually implied as prerequisite for performance of the services whether or not specifically mentioned in this Agreement.

## SECTION 3. DOCUMENTS:

All Data collected by ATTORNEY and all documents, reports, appraisals, charts, graphs, notes, drawings, tracings, plans, specifications and files prepared by ATTORNEY pursuant to this Agreement shall be the property of the PARISH except ATTORNEY'S personal, personnel and administrative files.

The PARISH shall furnish without charge to ATTORNEY all information, data and records which the PARISH now has in its files which may be of use to ATTORNEY.

## SECTION 4. SPECIAL SERVICES:

When recommended by ATTORNEY and approved by PARISH, ATTORNEY shall provide special services not included in Section 2.  Special services include litigation against third parties to secure specific performance on environmental clean-up work.  Such additional services shall be paid for by ATTORNEY but will be subject to reimbursement from the net recovery obtained on behalf of PARISH.

## SECTION 5. FEE:

ATTORNEYS' fee for the services provided in connection with the mission shall be

(A)   Fifteen (15%) percent of the first Twenty-Five Million ($25,000,000.00) Dollars U.S. of gross recovery;

(B)  Ten (10%) percent of gross recovery in excess of Twenty-Five Million ($25,000,000.00) Dollars U.S.;

PPG/Martzell Bickford/David Landry/
King Krebs Jurgens
Attorney Contract(BP Litigation)          Page 2 of 10

Init ____ ____
    ____ ____
        ____

(C) ATTORNEY shall advance all costs associated with the matter but shall be reimbursed for all such costs from the net recovery;

(D) The Parish understands that there is a fee division between the entities of ATTORNEY and that fee division is fifty-eight (58%) percent for Martzell & Bickford and David Landry in his capacity as of counsel, and forty-two (42%) percent to King, Krebs, et al. The Parish understands that ATTORNEYS' obligation for costs is to be shared in the same percentages between the entities comprising ATTORNEY.

"Costs" include, but are not limited to, postage, long distance telephone charges, investigation costs, computer research charges, computerized legal research, photocopies, courier charges, mileage, travel, experts, data collection and filing fees.

AUDIT. It is hereby agreed that the PARISH's Internal Auditor and/or the Legislative Auditor of the State of Louisiana shall have the option of auditing all records and accounts of ATTORNEY which relate to this Agreement.

ATTORNEY and any subcontractors/experts paid under this Agreement shall maintain all books and records pertaining to this Agreement for a period of three years after the date of final payment under this Agreement and any subcontracts entered into under this Agreement.

## SECTION 7. TERMINATION OR SUSPENSION:

7.1 The terms of this contract shall be binding upon the parties hereto until the work has been completed and accepted by the PARISH and all payments required to be made to the ATTORNEY have been made; but his contract may be terminated under any or all of the following conditions.

1. By mutual agreement and consent of the parties hereto.
2. By the PARISH as a consequence of the failure of ATTORNEY to comply with the terms, progress, or quality of work in a satisfactory manner, proper allowance being made for circumstances beyond the control of the ATTORNEY.
3. By either party upon failure of the other party to fulfill its obligations as set forth in this contract.
4. In the event of the abandonment of the project by the PARISH.
5. In the event attorney does not maintain valid licenses and permits.

PPG/Martzell Bickford/David Landry/
King Krebs Jurgens
Attorney Contract(BP Litigation)         Page 3 of 10

Init____ ____

7.2  This agreement shall automatically terminate upon satisfactory completion of all services and obligations described herein or two (2) years from the date of its execution, whichever event occurs first, subject to the right of either party to extend this agreement for three two (2)-year terms where the services are still required.

7.3  Upon termination ATTORNEY shall be paid for actual work performed prior to the notice of termination on a pro-rata share of the basic fee based on the phase or percentage of work actually completed to the extent such work has been satisfactorily completed.

7.4  Termination for Convenience.  Notwithstanding anything to the contrary in this agreement, either party may cancel this contract at any time by giving the other party thirty (30) calendar days prior written notice as provided in the notice provisions of this agreement; provided, further, that the terms and conditions of this Agreement shall continue to apply to all Task Orders then in existence, and neither Party shall by reason of such prospective termination of this Agreement be relieved of its respective obligations and liabilities theretofore or thereafter arising from or incident to the services rendered.


## SECTION 8. INSURANCE:

ATTORNEY shall secure and maintain Comprehensive General Liability Coverage and shall have PARISH named as an additional insured on said policy, but only for and to the extent of the indemnity obligations, liabilities, and risks assumed by ATTORNEY in this agreement.  In addition ATTORNEY shall secure and maintain insurance covering the Louisiana Workers' Compensation obligations owed to employees of ATTORNEY as well as non-owned auto, marine, hull and other insurance required by PARISH.  All certificates of insurance shall be furnished to the PARISH and shall provide that insurance shall not be canceled without thirty (30) days prior written notice of cancellation given to the PARISH.  PARISH shall have the right, but not the obligation, to pay an additional premium for the coverage of PARISH as a named insured in an amount as determined by ATTORNEY'S insurers and accepted by PARISH.

A.  ALL POLICIES AND CERTIFICATES OF INSURANCE OF THE CONTRACTORS SHALL CONTAIN THE FOLLOWING CLAUSES:

1.    ATTORNEYS' insurers will have no right of recovery or subrogation against the Parish of Plaquemines or the Plaquemines Parish Government, it being the intention of the parties that the insurance policy so affected shall protect both parties and be the primary coverage for any and all losses covered by the described insurance.

2.  The Plaquemines Parish Government and the Parish of Plaquemines shall be named as additional insureds as regards to automobile and general liability with respect to negligence by ATTORNEY [ISO Forms CG 20 10 (Form B)].

3.  The insurance companies issuing the policy or policies shall have no recourse against the Plaquemines Parish Government or the Parish of Plaquemines for payment of any premiums or for assessments under any form of policy.

4.  Any and all deductible in the described insurance policies shall be assumed by and be at the sole risk of ATTORNEY.

B.  Prior to the execution of this agreement, ATTORNEY shall provide at its own expense, proof of the insurance coverage required by the contract to the Plaquemines Parish Government, the governing authority of the Parish of Plaquemines by insurance companies authorized to do business in the State of Louisiana.  Insurance is to be placed with insurers with an A.M. Best rating of no less than A:VI.  This requirement will be waived for worker's compensation coverage only for those whose worker's compensation coverage is placed with companies who participate in the State of Louisiana Worker's Compensation Assigned Risk Pool or the Louisiana Worker's Compensation Corporation.

1.  Worker's Compensation Insurance:
As required by Louisiana State Statute exception; employer's liability shall be at least $2,000,000.00 per occurrence when work is to be over water and involves maritime exposures, otherwise this limit shall be no less than $500,000.00 per occurrence.

2.  Commercial General Liability Insurance with a Combined Single Limit of at least $2,000,000.00 per Occurrence for bodily injury and property damage. This insurance shall include coverage for bodily injury and property damage, and indicate on the certificate of insurance the following:

a)      Premises - operations;
b)      Broad form contractual liability;
c)      Products and completed operations;
d)      Use of contractors and sub-contractors;
e)      Personal Injury;
f)      Broad form property damage;
g)      Explosion, collapse and underground [XCU] coverage.

NOTE: On the certificate of insurance, under the description of operations, the following wording is required: "The aggregate loss limit applies to each project or a copy of ISO Form CG 25 03 [ed. 11-85 or latest form] shall be submitted."

PPG/Martzell Bickford/David Landry/
King Krebs Jurgens
Attorney Contract(BP Litigation)          Page 5 of 10                    Init____ ____

3. Business Automobile Liability Insurance with a Combined Single Limit of $500,000.00 per Occurrence for bodily injury and property damage, unless otherwise indicated. This insurance shall include for bodily injury and property damage the following coverage:

    a)      Any automobiles;
    b)      Owned automobiles;
    c)      Hired automobiles;
    d)      Non-owned automobiles;
    e)      Uninsured motorist.

4. An umbrella policy or excess may be used to meet minimum requirements.

5. Where applicable, ATTORNEY shall also secure and maintain at its expense pollution and liability insurance in the sum of $10,000,000.00 in the Aggregate, and Hull/P&I insurance of $1,000,000.00 per Occurrence.

6. Each firm shall also secure and maintain at its expense professional liability insurance in the sum of at least Two Million Dollars ($2,000,000.00).

PARISH has the right but not the duty to approve all insurance policies prior to commencing of any work.  If at any time any of the said policies shall be or becomes unsatisfactory to the PARISH as to form or substance; or if a company issuing any such policy shall be or become unsatisfactory to the PARISH, ATTORNEY shall promptly obtain a new policy, submit the same to the PARISH for approval and submit a certificate thereof as provided above.

Upon failure of ATTORNEY to furnish, to deliver and maintain such insurance as above provided, this contract, at the election of the PARISH may be forthwith declared suspended, discontinued or terminated.  Failure of ATTORNEY to take out and/or to maintain insurance shall not relieve ATTORNEY from any liability under the contract, nor shall the insurance requirements be construed to conflict with the obligation of ATTORNEY concerning indemnification.

The Parties agree to immediately notify each other of any accident or incident in which physical injury/death and/or property damage occurs and to complete an accident report for each such occurrence and to provide the other Party with a copy of each such report.  Each Party agrees to notify the other Party after receipt of any claim for which it may seek indemnification.

## SECTION 9. GENERAL:

ATTORNEY shall, at all times during the term of this contract, maintain valid Federal, State and local licenses, permits, etc. required as a condition of the provision of the services set forth herein.

ATTORNEY warrants that he has not employed or retained any company or person, other than a bona-fide employee working solely for ATTORNEY, to solicit or secure this contract, and that they have not paid or agreed to pay any company or person, other than a bona-fide employee working solely for ATTORNEY, any fee, commission, percentage, brokerage fee, gifts, or any other consideration, contingent upon or resulting from the award or making of this contract. For breach or violation of this warranty, the PARISH shall have the right to annul this contract without any liability whatsoever. ATTORNEY agrees to obtain written PARISH approval prior to subcontracting any part of the services specified in this Agreement. ATTORNEY shall include, in any subcontract, all of the pertinent provisions contained in this contract. ATTORNEY shall submit requests for approval, accompanied by copies of proposed subcontracts, to the PARISH.

This agreement shall be binding upon the successors and assigns for the parties hereto. This agreement being for the personal services of ATTORNEY, shall not be assigned or subcontracted in whole or in part by ATTORNEY as to the services to be performed hereunder without the written consent of the PARISH. In the event of an assignment approved by PARISH, ATTORNEY shall remain liable and responsible to PARISH under the indemnity and defense provisions of this Agreement for all acts and omissions of ATTORNEY in providing the services required up to the assignment.

In all cases where ATTORNEY'S employees (defined to include ATTORNEY'S direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act, La.R.S. 13:1021 et seq., PARISH and ATTORNEY agree that all work and operations performed by ATTORNEY and its employees pursuant to this Agreement are an integral part of and are essential to the ability of PARISH to generate PARISH'S goods, products and services for purposes of La.R.S. 23:106(A)(1). Furthermore, PARISH and ATTORNEY agree that PARISH is the principal or statutory employer of ATTORNEY'S employees for the purposes of La.R.S. 23:1061(A)(3). Irrespective of PARISH'S status as the statutory employer or special employer (as defined in La.R.S. 23:1031 (c)) of ATTORNEY'S employees, ATTORNEY shall remain primarily responsible for the payment of Louisiana Worker's Compensation benefits to its employees, and shall not be entitled to see contribution for any such payments from PARISH.

The Parties agree that ATTORNEY shall be an independent contractor with respect to all tasks assigned and services provided or performed hereunder, and neither ATTORNEY nor its

employees shall be considered employees of the PARISH except as provided above in this Agreement.

Any delay in or the failure to perform by a Party, other than the payment of money, shall not constitute a default that exposes such Party to liability for breach if and to the extent the delay or failure to perform is caused by an occurrence beyond the reasonable control of the Party, including, but not limited to, an Act of God or the public enemy; expropriation or confiscation of facilities; compliance with any order or requirement of any governmental authority; act of war, rebellion, or sabotage or damage resulting therefrom; fire, flood, explosion or accident; riots or strikes or other concerted acts of workmen, whether direct or indirect; inability after diligent effort to obtain necessary licenses or permits; or any other cause, whether or not of the same class or kind as those specifically named above, which is not within the control of the Party and which, by the exercise of reasonable diligence, the Party is unable to prevent or remedy.

The professional and technical adequacy and accuracy of designs, drawings, specifications, documents, and other work products furnished under this agreement will be conducted in a manner consistent with that level of care and skill ordinarily exercised by members of the profession.

If there is any dispute concerning this agreement, the laws of the State of Louisiana shall apply, its conflict of laws rules excepted if the interpretation of such would require the application of laws other than those of Louisiana. Proper venue and jurisdiction for all lawsuits, arbitration, mediation, claims, disputes, and other matters in questions between the parties to this agreement or any breach thereof, shall be in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana.

If any provision of this agreement shall be found by a court of competent jurisdiction, arbitration panel or other competent agency authorized to adjudge the provisions hereof, to be illegal, invalid or unenforceable, then the remainder of the provisions of this agreement shall be considered as having been written and executed without such invalid, illegal or unenforceable provision, and to this end, the provisions of this agreement are hereby declared severable.

This agreement represents the entire Agreement between PARISH and ATTORNEY and supersedes all other agreements or representations of any kind, oral or otherwise, not included herein. In cases of conflict or inconsistency between this Agreement, its exhibits (if any), and any applicable task orders, the Agreement shall prevail. This Agreement may be amended only by mutual consent and in writing, signed by both PARISH and ATTORNEY.

## SECTION 10. INDEMNIFICATION:

ATTORNEY agrees to defend, indemnify fully, and hold harmless at ATTORNEY'S sole expense PARISH, its officers, directors, and employees (herein collectively referred to as "PARISH") from and against all losses, claims and causes of action for personal injury, death or property damage brought by any third party and caused by the negligent or willful act or omission of ATTORNEY, its officers, directors, employees, or subcontractors.

PARISH agrees to defend, indemnify fully, and hold harmless at PARISH'S sole expense ATTORNEY, its officers, directors, and employees (herein collectively referred to as "ATTORNEY") from and against all losses, claims and causes of action for personal injury, death or property damage brought by any third party and caused by the negligent or willful act or omission of PARISH, its officers, directors, or employees.

Notwithstanding to the contrary in this Section 10, the parties agree that if negligence, fault and/or liability is apportioned between them by a court of competent jurisdiction, arbitrator, or other judicial, quasi-judicial or administrative agency having authority to render judgment thereon, then and in that event the indemnity, defense and hold harmless obligations shall be apportioned in accord with the percentage of negligence, fault and/or liability of each party assigned.

## 11.  ADDRESS OF NOTICES AND COMMUNICATIONS

William "Billy" Nungesser
Office of the Parish President
Plaquemines Parish Government
8056 Hwy. 23 / Suite 200
Belle Chasse, LA 70037

Scott Bickford
Managing Principal
Martzell & Bickford
338 Lafayette Street
New Orleans, LA 70130

with a copy to:

Parish Attorney
Plaquemines Parish Government
8056 Hwy 23 /Suite 200
Belle Chasse, LA 70037

David Landry
Of Counsel, Martzell & Bickford
338 Lafayette St.
New Orleans, LA  70130

Henry King
Managing Partner
King, Krebs & Jurgens
201 St. Charles Avenue / 45th Floor
New Orleans, LA 70170

Init_____  ____
_____  ____
____

## SECTION 12. LEGAL EXPENSES

In the event legal action is brought by PARISH or ATTORNEY against the other to enforce any of the obligations hereunder or arising out of any dispute concerning the terms and conditions hereby created, the opposing party shall pay the prevailing party its reasonable amounts for attorney's fees, costs and expenses incurred as a result of that action.

## SECTION 13: COUNTERPARTS/FACSIMILIES:

This agreement is executed in four (4) originals, and electronic signatures shall constitute original signatures as provided by law.

IN TESTIMONY WHEREOF, the parties have executed this Agreement on the respective dates set forth below, but effective as of the day, month and year first above written ("Effective Date").

WITNESSES:

[sign] _Michelle Eppley_
[Print] _Michelle L. Eppley_

[sign] _CS Nielsen_
[Print] _Christie Nielsen_

[sign] _Jeremy D. Dwyer_
[print] _Jeremy D. Dwyer_

[sign] _Mario Arteaga_
[print] _MARIO ARTEAGA_

[sign] _Jeremy D. Dwyer_
[Print] _Jeremy D. Dwyer_

[sign] _Mario Arteaga_
[Print] _MARIO ARTEAGA_

PARISH
PLAQUEMINES PARISH GOVERNMENT

By: _____
WILLIAM H. "BILLY" NUNGESSER
Parish President
Date: _8/24/2011_

ATTORNEY:
MARTZELL BICKFORD, L.L.C.

By: _____
SCOTT R. BICKFORD
Managing Principal
Date: _8/24/2011_

ATTORNEY:
KING, KREBS & JURGENS, L.L.C.

By: _Henry King_
HENRY KING
Managing Partner
Date: _8/25/2011_

PPG/Martzell Bickford/David Landry/
King Krebs Jurgens
Attorney Contract(BP Litigation)

Page 10 of 10

Init_____ _____
     _____ _____

<u>ORDINANCE NO. 11-77</u>

The following Ordinance was offered by Council Member Buras who moved its adoption:

> An Ordinance to authorize the Parish President to enter into negotiations and execute contracts with the firms of Martzell & Bickford and David Landry for professional legal services for the development of claims and for filing litigation against the British Petroleum Companies, Transocean, and other companies involved in the April 20, 2010, Macondo Well Blowout and Oil Spill; and otherwise to provide with respect thereto.

WHEREAS, the Plaquemines Parish Government is faced with the loss of tax and related revenue, damage to its marshlands, reduction in property values, and related losses directly connected to the BP Macondo Well blowout and oil spill; and

WHEREAS, these losses to the Parish and the Parish Government should be addressed and compensation paid to the Parish and Parish Government by the BP companies, Transocean and all companies involved in the Macondo Well disaster; and

WHEREAS, the losses and expected compensation require study and quantification with supporting documentation and other evidence in order to pursue such claims against the parties responsible for the damage and the losses to the Parish and the Plaquemines Parish Government; and

WHEREAS, certain deadlines are approaching which may require the filing of claims and litigation against the BP companies, Transocean and all companies involved in the Macondo Well disaster; and

WHEREAS, following receipt of proposals pursuant to the advertisement and promulgation of Requests for Proposals, the Parish President requests authority to negotiate and enter into agreements with the law firms of Martzell & Bickford and David Landry for professional legal services to represent the Parish and the Parish Government and their claims against the BP companies, Transocean, and all other companies involved in the Macondo Well blowout and oil spill; and

WHEREAS, the Council has reviewed the proposals received;

NOW, THEREFORE:

BE IT ORDAINED BY THE PLAQUEMINES PARISH COUNCIL THAT:

<u>SECTION 1</u>

The Parish President is hereby authorized to enter into negotiations and execute contracts for professional legal services with the law firms of Martzell & Bickford and David Landry for the representation of the Parish and the Parish Government and their claims against the BP companies, Transocean, and all other companies involved in the Macondo Well blowout and oil spill.

<u>SECTION 2</u>

The Secretary of this Council is hereby authorized and directed to immediately certify and release this Ordinance and that Parish employees and officials are authorized to carry out the purposes of this Ordinance, both without further reading and approval by the Plaquemines Parish Council.



WHEREUPON, in open session the above Ordinance was read and considered section by section and as a whole.

Council Member Griffin seconded the motion to adopt the Ordinance.

The foregoing Ordinance having been submitted to a vote, the vote resulted as follows:

YEAS: Council Members Percy P.V. Griffin, Keith Hinkley, Kirk M. Lepine, Stuart J. Guey, Anthony L. Buras, Burghart Turner, Jeff Edgecombe, Byron T. Marinovich, and Marla Cooper

NAYS: None

ABSENT: None

PRESENT BUT NOT VOTING: None

And the Ordinance was adopted on this the 14th day of April, 2011.

I hereby certify the above and foregoing to be a true and correct copy of an Ordinance adopted by the Plaquemines Parish Council at a meeting held in the Plaquemines Parish Temporary Courthouse Building, 450 F. Edward Hebert Blvd., Belle Chasse, Louisiana, on Thursday, April 14, 2011.

*Melissa P. LeBlanc*

Secretary

ORDINANCE NO. 11-238

The following Ordinance was offered by Council Member Guey who moved its adoption:

An Ordinance to amend Ordinance No. 11-77, authorizing the Parish President to enter into negotiations and execute contracts with Martzell Bickford, L.L.C., David Landry of Counsel to Martzell Bickford and King, Krebs & Jurgens, L.L.C., for professional legal services for the development of claims and for filing litigations against the British Petroleum Companies, Transocean and other companies/entities/individuals involved in the April 20, 2010, Macondo Well Blowout and Oil Spill; and otherwise to provide with respect thereto.

WHEREAS, the Plaquemines Parish Council adopted Ordinance No. 11-77 on April 14, 2011, authorizing the Parish President to negotiate and execute a contract with Martzell Bickford, L.L.C. and David Landry, Attorney at Law, for professional legal services for the development of claims and for filing litigation against the British Petroleum Companies, Transocean, and other companies/entities/individuals involved in the April 20, 2010, Macondo well blowout and oil spill; and

WHEREAS, the Parish President has recommended the addition of the law firm of King, Krebs & Jurgens, L.L.C. as co-counsel with Martzell Bickford and David Landry due to such firm's high ranking with Martzell Bickford/David Landry in the proposals in response to the Parish's RFP; and

WHEREAS, the Council has reviewed the proposals and concurs with the Parish President's recommendations; and

NOW, THEREFORE:

BE IT ORDAINED BY THE PLAQUEMINES PARISH COUNCIL THAT:

SECTION 1

It hereby approves of the professional services contract jointly with Martzell Bickford, L.L.C., David Landry, Of Counsel to Martzell Bickford, and King, Krebs & Jurgens, L.L.C. for professional legal services for the representation of the Parish and the Parish Government and their claims against the BP companies, Transocean, and all other companies/entities/individuals involved in the Macondo Well blowout and oil spill of April 20, 2010.

SECTION 2

The Secretary of this Council is hereby authorized and directed to immediately certify and release this Ordinance and that Parish employees and officials are authorized to carry out the purposes of this Ordinance, both without further reading and approval by the Plaquemines Parish Council.

WHEREUPON, in open session the above Ordinance was read and considered section by section and as a whole.

Council Member Buras seconded the motion to adopt the Ordinance.

The foregoing Ordinance having been submitted to a vote, the vote resulted as follows:

YEAS: Council Members Percy P.V. Griffin, Keith Hinkley, Stuart J. Guey, Anthony L. Buras, Jeff Edgecombe, Byron T. Marinovich, and Marla Cooper

NAYS: Council Members Kirk M. Lepine, and Burghart Turner

ABSENT: None

PRESENT BUT NOT VOTING: None

And the Ordinance was adopted on this the 11th day of August, 2011.

I hereby certify the above and foregoing to be a true and correct copy of an Ordinance adopted by the Plaquemines Parish Council at a meeting held in the Plaquemines Parish Temporary Courthouse Building, 450 F. Edward Hebert Blvd., Belle Chasse, Louisiana, on Thursday, August 11, 2011.

*Melissa P. LeBlanc*
Secretary

# The Plaquemines GAZETTE

89 YEARS, NO. 5    AUGUST 29, 2017    BELLE CHASSE, LA    50 CENTS

## Mysterious health scare grips north Plaquemines

By Jason Browne
reporter@plaqueminesgazette.com

An unknown substance has provoked an outbreak of serious respiratory problems in more than a dozen Plaquemines residents along the East and Westbank of the river near sites where ships offload. There's no proof that the ships are causing the problems, but the husband of one victim in Dalcour has gathered alarming evidence, which he brought to the parish council Aug. 24.

David Morgan's wife, Jan Morgan, spent two weeks in the intensive care unit several months ago with acute respiratory failure that David believes was the result of breathing in heavy metals and chemicals from nearby ships. Morgan said those substances include known carcinogens like talc, fine metals like pig iron and cleaning agents like muriatic acid that are either the ships' cargo, material used to clean the ships, or a mixture of both. When David, a Plaquemines Sheriff's deputy, found out nearby neighbors were experiencing similar symptoms, he began investigating.

"You've got 14 residents in a straight row within a mile-and-a-half of each other that have all suffered respiratory problems. The youngest is 3 years old," Morgan told the parish council, in its capacity as the Plaquemines Port Harbor & Terminal District board, at its Aug. 24 meeting. "Of the 14 residents, five have been hospitalized. Four were in the ICU over seven days. My wife was in for 15."

Morgan said doctors are baffled and having a hard time treating the symptoms, let alone diagnosing a cause. He's certain more residents are experiencing similar problems, but hasn't had the time or resources to reach out to the entire parish. And that's why he appeared before the council, to A.) request that the Plaquemines Parish Government issue a public health hazard warning, and B.) to ask any affected persons to report their symptoms and doctors' diagnoses to a Louisiana Department of Health database that may be used to identify the common factor in each case.

"Right now the Department of Environmental Quality is involved. The Environmental Protection Agency is involved. And the Hospital Association is requesting that people call their helpline and file a complaint" said Morgan. "That information is then referred to the Louisiana Department of Health, which will get your medical records into a national website."

Representatives from DEQ were in Dalcour Aug. 25 collecting samples.

District 1 council member John Barthelemy and state representative Chris Leop-

HEALTH— PAGE 3

## Technicality stalls $6.4 million to attorneys in BP suit

By Jason Browne
reporter@plaqueminesgazette.com

A strict interpretation of the Plaquemines Parish charter is standing between the lawyers that represented the parish in its suit against BP and $6.4 million. But parish president Amos Cormier III and parish attorney Peter Barbee claim multiple problems with the bill turned in by those lawyers have nothing to do with the charter.

The law firms of Martzell, Bickford & Centola and King, Krebs & Jurgens, both of New Orleans, and David Landry Esq, of Pensacola, Fla., filed suit against the parish Aug. 14 in United States District Court for the Eastern District of Louisiana. The attorneys are asking district judge Carl Barbier, the same judge who presided over the parish's suit against BP following the April 2010 Deepwater Horizon explosion and oil spill that wrecked Plaquemines' coastline, to force Plaquemines to pay the $6.4 million they claim they're due in legal fees.

Cormier and Barbee, who have consistently taken a hard line on following the parish charter to the word, say the contingency fee those attorneys included in their contract—15 percent of the first $25 million and

BP SUIT— PAGE 3

MAILING INFO HERE

## Council declares August 29 as Hurricane Katrina Commemoration Day



The Plaquemines Parish Council declared Aug. 29 Hurricane Katrina Commemoration Day at its Aug. 24 meeting. The council was joined by the Rev. Tyronne Edwards, holding proclamation, of Zion Travelers Baptist Church, which will host 12-year commemoration program Aug. 29 at 6 p.m. at its 12661 Hwy. 15 location in Phoenix. Guest preacher for the event will be Dr. Theodore Turner of Mount Olive Missionary Baptist Church in Boothville. For more information on the program, call 504.473.2996. Photo by Jason Browne

## Kim Turlich-Vaughan named to Louisiana Clerk of Courts Assoc. Board of Directors

Kim Turlich-Vaughan, Plaquemines Parish Clerk of Court, was named to Louisiana Clerk of Courts Association Board of Directors to serve a two-year term.

The Louisiana Clerks of Court Association filed its first Charter in March of 1863. The Board reviews and fulfills the goals of the mission; to support Louisiana Clerks of Court and their employees to improve working environments, to meet legal requirements, and to better serve the public.

The role of the Clerk of Court in each parish is to maintain and preserve the official records of the parish. This includes processing and recording all land records, UCC documents, civil and criminal court proceedings, marriage licenses and other legal documents. In addition, each Clerk oversees all elections, election equipment and election personnel.

Turlich-Vaughan recently completed her first year in office in Plaquemines.



Kim Turlich-Vaughan

## Lifetime experience awaits 2017 Orange Queen

We have to wait until September 3 to find out who will reign as Queen of the 2017 Plaquemines Parish Fair and Orange Festival, but we do know it will be a lucky young lady who walks away with the experience of a lifetime, representing Plaquemines Parish across Louisiana and in Washington, DC.

"One of the greatest highlights as Orange Queen was traveling to Washington D.C. for the Mystic Krewe of Louisianians, said Sissy Stricklin, selected as Queen in 2011. "I attended the 65th Annual Ball celebrating Louisiana,

QUEEN— PAGE 2

## $130k road repair equipment collecting dust

By Jason Browne
reporter@plaqueminesgazette.com

Several valuable pieces of road equipment are sitting in storage because the parish doesn't have anyone to operate them.

Public Right of Way Maintenance [PROWM] superintendent Bradford Brooks appeared before the Plaquemines Parish Council at its Aug. 24 meeting, at the request of parish president Amos Cormier III, to ask for more men to run the equipment. He said the parish bought a crack filler machine and a pothole patching machine years ago for $130,000 that could provide valuable maintenance to prevent expensive road repairs in the future, but he needs six more men to assign to the equipment.

"It's been over two years

since we ran that equipment," Brooks told the council. "I'm one of the last guys left in the department trained on that equipment."

District 3 council member Kirk Lepine asked Brooks if grass cutters could be trained to operate the equipment in the cold months, but Brooks said unusually warm winters have extended the typical grass cutting season, keeping those employees occupied.

Brooks's appeal was part of a larger presentation by Cormier on how he'd prefer to see the money from the BP settlement spent. Brooks kept his request simple and to the point, but was forced to stand at the podium as the conversation devolved into a huge argument between Cormier and the council over manpower. Since taking office in January, Cormier has repeatedly asked council members to hire more parish employees in an effort to provide better service. Council members have balked at spending the BP money on recurring expenses like manpower. District 2 council member Beau Black repeated his request that the parish consolidate departments and cross-train employees already on the payroll.

No action was taken.

In other business:

"Responding to a question from Lepine, Cormier stated that director of Operations Stanley Wallace is drawing overtime pay in lieu of the council reducing Wallace's and director

EQUIPMENT— PAGE 2

## Judge orders dismissal with prejudice in Lott, Buras case

By Jason Browne
reporter@plaqueminesgazette.com

The Plaquemines Parish Government's case against former employees Scott Lott and Emmett "Goo" Buras is still on track to be dismissed, but not as quickly as expected.

On Aug. 21 25th Judicial District Court judge Kevin Conner asked PPG attorney Peter Barbee to refile motion to dismiss the case, originally filed Aug. 11, this time Conner asked Barbee to identify the parties being dismissed. Barbee's original filing only named Lott and Buras when listing the case in the heading.

Additionally, Lott's and Buras's attorney, Joel Loeffelholz requested that the matter be dismissed with

DISMISSAL— PAGE 2

EXHIBIT C

## HEALTH

CONTINUED FROM THE FRONT PAGE

old and state senator Sharon Hewitt, who represent the parish, have been "aggressive" in getting state funds and environmental agencies involved in the matter.

Morgan hopes that compiled information will find its way to respiratory and pulmonary specialists in parts of the country with a high number of steel mills and coal mines, who are accustomed to dealing with inhaled substances.

"It's not going away, and doctors cannot figure out what the problem is," Morgan said the council. "I went to Umbrella Drive and found four people affected. I went to Cedar Drive and found three. On River Oaks Drive I found four people. And that was who I talked to. I didn't talk to everyone."

Morgan contacted the PPHTD and requested ship logs going back a year to find out what has been offloaded in Plaquemines, but only received three months' worth of records. But that was enough for him to identify several harmful chemicals which he believes may mix and be carried by steam from industrial operations like the nearby Chevron refinery.

PPHTD director of port security and vessels Donald Durr told the council that, although the Coast Guard has ultimate jurisdiction over the waterways, the port can order ships to cease and desist if they're found to be offloading or using dangerous materials. He said that was the case in a July incident where a ship was cleaning its hull with muriatic acid, which agitated several employees at Saxon Becnel Farm on Highway 23, leading to the deployment of fire department, EMS and sheriff's office responders. Durr said two individuals were checked out at the scene by EMS and refused treatment.

"In that particular incident there was some leftover cargo in the ship that mixed with the acid," said Durr. "A boat was sent en route with a supervisor. The port ceased and destined that operation."

Raymond Force, supervisor for the Plaquemines Health Department, said his department has fielded complaints from nine citizens, including Morgan, in recent months.

Parish president Amos Cormier III was roundly criticized by council members and citizens later in the meeting when he deferred the task of releasing a public health warning to the port, explaining that the Health Department lacks the manpower to organize a release and stating that the situation falls within the port's jurisdiction.

"This is not a turf war. I'm saying the port should take the lead and I ask that they collaborate with DEQ," said Cormier.

Reverend Tyronne Edwards of Zion Travelers Baptist Church was first up to the podium to chastise Cormier.

"I'm totally disappointed in you today being parish president," said Edwards.

"I look for our president to step up and take responsibility," said Warren Lawrence, a regular at port and council meetings.

Beau Black, District 2 council member and port chair, asked Cormier again if the PPG would take the lead on the release. When Cormier declined, the port board passed a resolution 8-0 for the port to draft and release a public health notice. District 7 council member Audrey Trufant-Salvant abstained from voting, stating that she did not want to be involved in the "shenanigans" of the hack-and-forth criticism between the council and Cormier.

## BP SUIT

CONTINUED FROM THE FRONT PAGE

10 percent of any additional award—is invalid because it wasn't included in multiple ordinances approved by the parish council in April and August 2011 to hire the lawyers. Plaquemines was awarded $48 million in the suit, which equates to $5.75 million in fees, or almost 13 percent of the total payout. An additional $800,000 fronted by the attorneys to pay expert witnesses brings the total to $6.4 million.

Last week Barbier granted continuances to both sides "without date," meaning the next court date has yet to be determined, which Barbee sees as a win for the Plaquemines Parish Government. Barbee also filed a motion to move the case to the 25th Judicial District Court in Plaquemines.

"The fact of the matter is (the lawyers) don't have a valid contract and they know it," said Barbee. "A federal judge wouldn't even give them a hearing date. I think it's fair to say the judge is basically calling an issue on it."

Scott Bickford, of Martzell Bickford & Centola, said his belief that the contract between the attorneys and PPG is legally binding.

"As a lawyer, I'm prohibited from litigating a case in the press," said Bickford. "I will say that I believe our contract to be valid. The effort we expended on behalf of the parish was necessary and proper under the circumstances and done with the knowledge of parish officials."

The attorneys claim in their motion that the ordinances passed by the parish council in 2011 granted power to then-president Billy Nungesser to negotiate the terms of a contract. And they point out that then-parish attorney Steven Braud even read the terms of the contingency fee into the record at the April 2011 council meeting. Barbee cites section 4.01 C of the parish charter, which states: Every act of the Parish Council which is to have the effect of law shall be in the form of an ordinance.

"The law is very clear. The only people who can make an appropriation is the legislative body. The contingency has to be spelled out in the ordinance," said Barbee. "I think they should be paid for their work. I'm not disputing that. But there's something very odd in the way they went around the ordinance."

At the council's Aug. 7 mid-year budget review, when the issue of attorney fees in the BP case was first brought to the council, Cormier estimated the parish's balance from the payout "will go up possibly by another $5 million." Barbee told the council at the budget review he expected the attorneys to switch their tactic to asking the judge to determine fair pay for the amount of work done. In their initial filing, the attorneys ask that if the judge chooses to go that route and award quantum meruit, that he award the attorneys an amount closer to the 25 percent that other parties—including St. Tammany, Terrebonne and Tangipahoa—paid their special counsel in their suits against BP, which would increase the fees to over $11 million.

Completely separate from the issue of language in the parish charter, Cormier and Barbee have also taken aim at the amount of work done by the attorneys, claiming they essentially did not case worth of work while simultaneously representing the PPG, the Plaquemines Parish School Board, the Plaquemines Port Harbor & Terminal District and the Plaquemines Medical Center in the class action against BP. The PPSB received a $10.5 million settlement from BP and paid $2.9 million in attorney's fees (approximately 28 percent), of which $1.6 million went to Martzell, Bickford & Centola and King, Krebs & Jurgens; $860,000 was paid to Robert E. Arceneaux and $335,000 went to Margaret E. Woodward. The PPHTD received approximately $155,000 and paid Martzell, Bickford & Centola roughly 20 percent. The Plaquemines Medical Center received approximately $250,000 and paid just Martzell, Bickford & Centola around 10 percent.

The PPG is also questioning the attorneys' claims of the amount of time spent working on the case. A written statement provided by Cormier scolls as the attorney's claim to have invested 6,000 hours of work in the matter, in addition to questioning how they spent their time and money investigating the case.

"We also find it difficult to believe that they have expended 6,000 hours on the case," said Cormier. "There have been no discovery efforts, no depositions, little motion practice, few pretrial hearings, no trial and no appeal. But there were multiple approximately-$4,000 helicopter rides. In essence, very little has occurred other than the reports retained experts have generated, which should not have amassed nearly $700,000 in costs."

Bickford chose to respond to the PPG's assertions in an email, questioning why the PPG just recently decided to raise these questions.

"Mr. Barbee has had our detailed, itemized costs to review and approve or question since April," said Bickford. "That was why he and the council were given copies. If he has questions concerning those costs he, as an attorney, knows that he was provided the costs like any client for the purposes of review. Instead, for almost five months he has said nothing and has refused to speak to us in our capacity as attorneys for the Parish. He now chooses to question our out-of-pocket costs, carried for six years without interest, in the newspaper."

# Buster the Bus visits OLPH Catholic School




Buster the Bus made a special visit to the PK3-1st grade students at Our Lady of Perpetual Help Catholic school to teach them about bus safety. He went over the rules to keep them safe and followed it up with some fancy tricks. The children listened attentively as he taught them to always take 10 steps away from the bus so that the bus driver can see them. Buster also shared to always stay seated and keep the aisles clear. The kids always enjoy their time with Buster.

PK3




PK4




KINDERGARTEN

FIRST GRADE

# mb&c

Martzell, Bickford & Centola APC
Attorneys at Law

John R. Martzell (1937-2007)
Scott R. Bickford *
Lawrence J. Centola, III

Spencer R. Doody
Neil F. Nazareth
Roshawn H. Donahue
Jason Z. Landry
Christopher H. Carbine

Byron J. Jeanice
Office Administrator

* also licensed in
Texas and Colorado

September 5, 2017

**VIA HAND DELIVERY**
Honorable Kim Turlich-Vaughan
Clerk of Court
Plaquemines Parish Government Annex Building
301 Main Street, Suite 108
Belle Chasse, LA 70037

Re:  HESI/Transocean Punitive Damages & Assigned Claim #C713EA34E7
Parish of Plaquemines v. BP Exploration & Production, Inc., et al.
USDC/EDLA Civil Action No. 2:11-cv-00916

Dear Clerk of Court:

Pursuant to LSA-R.S. 37:218, we ask and instruct that you file and record the attached contract for legal services between Plaquemines Parish Government and Martzell, Bickford & Centola, APC (formerly Martzell & Bickford, APC), David Landry, Esq. and King, Krebs & Jurgens, P.L.L.C., into the record.

Through this filing and recordation, we place all interested persons on notice of our lien ("privilege") in the subject matter of the above-referenced litigation and claim. We further advise them that pursuant to this privilege, any settlement, discontinuance, or disposition of this litigation and claim made without our written consent is null and void.

LSA-R.S. 37:218 provides:

A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made.

EXHIBIT D

Honorable Kim Turlich-Vaughan
September 5, 2017
Page Two

B. The term "fee," as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.

If you have any questions, please let us know.

Respectfully submitted,

MARTZELL, BICKFORD & CENTOLA

/s/Scott R. Bickford
SCOTT R. BICKFORD, T. A. (#1165)
SPENCER R. DOODY (#27795)
usdcedla@mbfirm.com
338 Lafayette Street
New Orleans, LA 70130
(504) 581-9065 Telephone
(504) 581-7635 Fax

/s/David Landry
DAVID L. LANDRY (#7978)
The Law Office of David L. Landry
Dlandry4393@gmail.com
1214 Parasol Place
Pensacola, FL 32507
(850) 492-7240

KING, KREBS & JURGENS, P.L.L.C.

/s/Henry A. King
HENRY A. KING (#7393)
MICHAEL L. VINCENZO (#23965)
hking@kingkrebs.com
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Fax: (504) 582-1233

SRB/jh
Enclosures

Honorable Kim Turlich-Vaughan
September 5, 2017
Page Three

cc:     **VIA E-MAIL**
        Drake Martin drake@liaisoncounsel.com     Mike L. Mike@liaisoncounsel.com
        Stephen Palmer stephen.palmer@bp.com      Eric L. Nitcher eric.nitcher@uk.bp.com
        Craig Coburn craig.coburn@bp.com          Daniel A. Cantor daniel.cantor@apks.com
        Patrick A. Juneau paj@juncaudavid.com      Mike Moore mm@mikemoorelawfirm.com
        Maria Travis maria.travis@bp.com          Michael Juneau mjuneau@dheclaims.com

        Michelle LaCount Michelle.LaCount@gardencitygroup.com

        **VIA E-MAIL & CERTIFIED MAIL DELIVERY - 70151520000294483401**
        Peter Barbee, Esq. pbarbee@ppgov.net

        **VIA CERTIFIED MAIL DELIVERY - 70151520000294483111**
        HESI/Transocean Punitive Damages & Assigned Claims Settlements
        c/o Administrator
        5151 Blazer Parkway Suite A
        Dublin, OH 43017

## Plaquemines Parish Recording Page

**Kim Turlich-Vaughan**
Clerk of Court
PO Box 40
Belle Chasse, LA  70037
(504) 297-5180

**Received From :**
Attn: SCOTT R. BICKFORD
MARTZELL BICKFORD & CENTOLA, APC
338 LAFAYETTE ST
NEW ORLEANS, LA 70130-3244

**First MORTGAGOR**

PLAQUEMINES PARISH GOVERNMENT

**First MORTGAGEE**

MARTZELL BICKFORD LLC

Index Type :    MORTGAGE                          File # : 2017-00003419

Type of Document : CONTRACT

Recording Pages :            20                    Book :   715      Page :   174

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for
Plaquemines Parish, Louisiana

On (Recorded Date) : 09/05/2017

At (Recorded Time) :  9:41:05AM

CLERK OF COURT
KIM TURLICH-VAUGHAN
Parish of Plaquemines
I certify that this is a true copy of the attached
document that was filed for registry and
Recorded 09/05/2017 at  9:41:05
Recorded in Book  715  Page  174
File Number 2017-00003419

Doc ID - 005041940020

Deputy Clerk

Return To :   Attn: SCOTT R. BICKFORD

Do not Detach this Recording Page from Original Document

AGREEMENT FOR PROFESSIONAL                     UNITED STATES OF AMERICA
LEGAL SERVICES

BY:   PLAQUEMINES PARISH GOVERNMENT            STATE OF LOUISIANA

AND:   MARTZELL BICKFORD, L.L.C.,
       DAVID LANDRY,                           PARISH OF PLAQUEMINES
       & KING, KREBS & JURGENS, L.L.C.


THIS AGREEMENT MADE AND ENTERED INTO on the dates set forth hereinafter, but effective as of the 15th day of April, 2011 ("Effective Date"), by and between PLAQUEMINES PARISH GOVERNMENT ("**PARISH**"), as governing authority for the Parish of Plaquemines and all political subdivisions and districts situated therein, represented by William H. "Billy" Nungesser, its duly authorized President, pursuant to Parish Council Ordinance No.11-77, adopted April 14, 2011, and Ordinance No. 11-238, adopted August 11, 2011; and MARTZELL BICKFORD, a Louisiana professional limited liability company authorized to do and doing business in the State of Louisiana with its principal office at 338 Lafayette Street, New Orleans, Louisiana 70130, represented herein by Scott Bickford, its duly authorized Managing Principal, DAVID LANDRY, Of Counsel to Martzell Bickford, and KING, KREBS & JURGENS, L.L.C., a Louisiana professional limited liability company authorized to do and doing business in the State of Louisiana with its principal office at 201 St. Charles Avenue -45th Floor, New Orleans, Louisiana 70170, represented herein by Henry King, its duly authorized Managing Partner, all collectively referred to herein as "ATTORNEY".  For purposes of the instant agreement, Scott R. Bickford of Martzell & Bickford shall be designated lead counsel/ trial attorney.


## SECTION 1. THE MISSION:

The **PARISH** hereby contracts with ATTORNEY to assist in providing all necessary professional legal services to the **PARISH**, in connection with the claims, causes of action of whatsoever nature against the hereinafter named entities, BP PLC, BP PRODUCTS NORTH AMERICA, INC., BP EXPLORATION AND PRODUCTION, INC., BP AMERICA, INC., HALLIBURTON ENERGY SERVICES, INC., SPERRY DRILLING SERVICES, WEATHERFORD INTERNATIONAL LTD., CAMERON INTERNATIONAL CORPORATION D/B/A CAMERON SYSTEMS CORPORATION, M-I, LLC, ANADARKO PETROLEUM CORPORATION COMPANY, ANADARKO E&P COMPANY, L.P., MOEX OFFSHORE 2007 LLC, MOEX U.S.A. CORP. and MITSUI OIL EXPLORATION COMPANY LTD. hereinafter sometimes collectively referred to as "DEFENDANTS", arising out of or due to the Deepwater Horizon/Macondo Well explosion and resulting crude oil and natural gas spill and release into the waters and onto the lands of the PARISH.  ATTORNEY is also engaged to pursue

PPG/Martzell Bickford/David Landry/                        Init_____  _____
King Krebs Jurgens
Attorney Contract(BP Litigation)                                       _____  _____

                                                                       _____  _____

1

any claims and causes of action that PARISH has or may have against any of the DEFENDANTS or other person/entity arising under the Natural Resources Damage Assessment procedure.

## SECTION 2. BASIC SERVICES:

ATTORNEY shall provide all basic services required in connection with the pursuit of PARISH's claims and causes of action against the DEFENDANTS including all necessary services described herein or usually implied as prerequisite for performance of the services whether or not specifically mentioned in this Agreement.

## SECTION 3. DOCUMENTS:

All Data collected by ATTORNEY and all documents, reports, appraisals, charts, graphs, notes, drawings, tracings, plans, specifications and files prepared by ATTORNEY pursuant to this Agreement shall be the property of the PARISH except ATTORNEY'S personal, personnel and administrative files.

The PARISH shall furnish without charge to ATTORNEY all information, data and records which the PARISH now has in its files which may be of use to ATTORNEY.

## SECTION 4. SPECIAL SERVICES:

When recommended by ATTORNEY and approved by PARISH, ATTORNEY shall provide special services not included in Section 2. Special services include litigation against third parties to secure specific performance on environmental clean-up work. Such additional services shall be paid for by ATTORNEY but will be subject to reimbursement from the net recovery obtained on behalf of PARISH.

## SECTION 5. FEE:

ATTORNEYS' fee for the services provided in connection with the mission shall be

(A) Fifteen (15%) percent of the first Twenty-Five Million ($25,000,000.00) Dollars U.S. of gross recovery;

(B) Ten (10%) percent of gross recovery in excess of Twenty-Five Million ($25,000,000.00) Dollars U.S.;

PPG/Martzell Bickford/David Landry/
King Krebs Jurgens
Attorney Contract(BP Litigation)          Page 2 of 10          Init ____ ____

(C) ATTORNEY shall advance all costs associated with the matter but shall be reimbursed for all such costs from the net recovery;

(D) The Parish understands that there is a fee division between the entities of ATTORNEY and that fee division is fifty-eight (58%) percent for Martzell & Bickford and David Landry in his capacity as of counsel, and forty-two (42%) percent to King, Krebs, et al.   The Parish understands that ATTORNEYS' obligation for costs is to be shared in the same percentages between the entities comprising ATTORNEY.

"Costs" include, but are not limited to, postage, long distance telephone charges, investigation costs, computer research charges, computerized legal research, photocopies, courier charges, mileage, travel, experts, data collection and filing fees.

AUDIT.  It is hereby agreed that the PARISH's Internal Auditor and/or the Legislative Auditor of the State of Louisiana shall have the option of auditing all records and accounts of ATTORNEY which relate to this Agreement.

ATTORNEY and any subcontractors/experts paid under this Agreement shall maintain all books and records pertaining to this Agreement for a period of three years after the date of final payment under this Agreement and any subcontracts entered into under this Agreement.

## SECTION 7. TERMINATION OR SUSPENSION:

7.1  The terms of this contract shall be binding upon the parties hereto until the work has been completed and accepted by the PARISH and all payments required to be made to the ATTORNEY have been made; but his contract may be terminated under any or all of the following conditions.

1.   By mutual agreement and consent of the parties hereto.
2.   By the PARISH as a consequence of the failure of ATTORNEY to comply with the terms, progress, or quality of work in a satisfactory manner, proper allowance being made for circumstances beyond the control of the ATTORNEY.
3.   By either party upon failure of the other party to fulfill its obligations as set forth in this contract.
4.   In the event of the abandonment of the project by the PARISH.
5.   In the event attorney does not maintain valid licenses and permits.

**7.2**  This agreement shall automatically terminate upon satisfactory completion of all services and obligations described herein or two (2) years from the date of its execution, whichever event occurs first, subject to the right of either party to extend this agreement for three two (2)-year terms where the services are still required.

**7.3**  Upon termination ATTORNEY shall be paid for actual work performed prior to the notice of termination on a pro-rata share of the basic fee based on the phase or percentage of work actually completed to the extent such work has been satisfactorily completed.

**7.4**  Termination for Convenience.  Notwithstanding anything to the contrary in this agreement, either party may cancel this contract at any time by giving the other party thirty (30) calendar days prior written notice as provided in the notice provisions of this agreement; provided, further, that the terms and conditions of this Agreement shall continue to apply to all Task Orders then in existence, and neither Party shall by reason of such prospective termination of this Agreement be relieved of its respective obligations and liabilities theretofore or thereafter arising from or incident to the services rendered.

<u>**SECTION 8. INSURANCE:**</u>

ATTORNEY shall secure and maintain Comprehensive General Liability Coverage and shall have PARISH named as an additional insured on said policy, but only for and to the extent of the indemnity obligations, liabilities, and risks assumed by ATTORNEY in this agreement.  In addition ATTORNEY shall secure and maintain insurance covering the Louisiana Workers' Compensation obligations owed to employees of ATTORNEY as well as non-owned auto, marine, hull and other insurance required by PARISH.  All certificates of insurance shall be furnished to the PARISH and shall provide that insurance shall not be canceled without thirty (30) days prior written notice of cancellation given to the PARISH.  PARISH shall have the right, but not the obligation, to pay an additional premium for the coverage of PARISH as a named insured in an amount as determined by ATTORNEY'S insurers and accepted by PARISH.

**A.  ALL POLICIES AND CERTIFICATES OF INSURANCE OF THE CONTRACTORS SHALL CONTAIN THE FOLLOWING CLAUSES:**

1.  ATTORNEYS' insurers will have no right of recovery or subrogation against the Parish of Plaquemines or the Plaquemines Parish Government, it being the intention of the parties that the insurance policy so affected shall protect both parties and be the primary coverage for any and all losses covered by the described insurance.

2.  The Plaquemines Parish Government and the Parish of Plaquemines shall be named as additional insureds as regards to automobile and general liability with respect to negligence by ATTORNEY [ISO Forms CG 20 10 (Form B)].

3.  The insurance companies issuing the policy or policies shall have no recourse against the Plaquemines Parish Government or the Parish of Plaquemines for payment of any premiums or for assessments under any form of policy.

4.  Any and all deductible in the described insurance policies shall be assumed by and be at the sole risk of ATTORNEY.

B.  Prior to the execution of this agreement, ATTORNEY shall provide at its own expense, proof of the insurance coverage required by the contract to the Plaquemines Parish Government, the governing authority of the Parish of Plaquemines by insurance companies authorized to do business in the State of Louisiana. Insurance is to be placed with insurers with an A.M. Best rating of no less than A:VI. This requirement will be waived for worker's compensation coverage only for those whose worker's compensation coverage is placed with companies who participate in the State of Louisiana Worker's Compensation Assigned Risk Pool or the Louisiana Worker's Compensation Corporation.

1.  Worker's Compensation Insurance:
As required by Louisiana State Statute exception; employer's liability shall be at least $2,000,000.00 per occurrence when work is to be over water and involves maritime exposures, otherwise this limit shall be no less than $500,000.00 per occurrence.

2.  Commercial General Liability Insurance with a Combined Single Limit of at least $2,000,000.00 per Occurrence for bodily injury and property damage. This insurance shall include coverage for bodily injury and property damage, and indicate on the certificate of insurance the following:

   a)    Premises - operations;
   b)    Broad form contractual liability;
   c)    Products and completed operations;
   d)    Use of contractors and sub-contractors;
   e)    Personal Injury;
   f)    Broad form property damage;
   g)    Explosion, collapse and underground [XCU] coverage.

NOTE: On the certificate of insurance, under the description of operations, the following wording is required: "The aggregate loss limit applies to each project or a copy of ISO Form CG 25 03 [ed. 11-85 or latest form] shall be submitted."

3. Business Automobile Liability Insurance with a Combined Single Limit of $500,000.00 per Occurrence for bodily injury and property damage, unless otherwise indicated. This insurance shall include for bodily injury and property damage the following coverage:

    a)      Any automobiles;
    b)      Owned automobiles;
    c)      Hired automobiles;
    d)      Non-owned automobiles;
    e)      Uninsured motorist.

4. An umbrella policy or excess may be used to meet minimum requirements.

5. Where applicable, ATTORNEY shall also secure and maintain at its expense pollution and liability insurance in the sum of $10,000,000.00 in the Aggregate, and Hull/P&I insurance of $1,000,000.00 per Occurrence.

6. Each firm shall also secure and maintain at its expense professional liability insurance in the sum of at least Two Million Dollars ($2,000,000.00).

PARISH has the right but not the duty to approve all insurance policies prior to commencing of any work. If at any time any of the said policies shall be or becomes unsatisfactory to the PARISH as to form or substance; or if a company issuing any such policy shall be or become unsatisfactory to the PARISH, ATTORNEY shall promptly obtain a new policy, submit the same to the PARISH for approval and submit a certificate thereof as provided above.

Upon failure of ATTORNEY to furnish, to deliver and maintain such insurance as above provided, this contract, at the election of the PARISH may be forthwith declared suspended, discontinued or terminated. Failure of ATTORNEY to take out and/or to maintain insurance shall not relieve ATTORNEY from any liability under the contract, nor shall the insurance requirements be construed to conflict with the obligation of ATTORNEY concerning indemnification.

The Parties agree to immediately notify each other of any accident or incident in which physical injury/death and/or property damage occurs and to complete an accident report for each such occurrence and to provide the other Party with a copy of each such report. Each Party agrees to notify the other Party after receipt of any claim for which it may seek indemnification.

## SECTION 9. GENERAL:

ATTORNEY shall, at all times during the term of this contract, maintain valid Federal, State and local licenses, permits, etc. required as a condition of the provision of the services set forth herein.

ATTORNEY warrants that he has not employed or retained any company or person, other than a bona-fide employee working solely for ATTORNEY, to solicit or secure this contract, and that they have not paid or agreed to pay any company or person, other than a bona-fide employee working solely for ATTORNEY, any fee, commission, percentage, brokerage fee, gifts, or any other consideration, contingent upon or resulting from the award or making of this contract. For breach or violation of this warranty, the PARISH shall have the right to annul this contract without any liability whatsoever. ATTORNEY agrees to obtain written PARISH approval prior to subcontracting any part of the services specified in this Agreement. ATTORNEY shall include, in any subcontract, all of the pertinent provisions contained in this contract. ATTORNEY shall submit requests for approval, accompanied by copies of proposed subcontracts, to the PARISH.

This agreement shall be binding upon the successors and assigns for the parties hereto. This agreement being for the personal services of ATTORNEY, shall not be assigned or subcontracted in whole or in part by ATTORNEY as to the services to be performed hereunder without the written consent of the PARISH. In the event of an assignment approved by PARISH, ATTORNEY shall remain liable and responsible to PARISH under the indemnity and defense provisions of this Agreement for all acts and omissions of ATTORNEY in providing the services required up to the assignment.

In all cases where ATTORNEY'S employees (defined to include ATTORNEY'S direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act, La.R.S. 13:1021 et seq., PARISH and ATTORNEY agree that all work and operations performed by ATTORNEY and its employees pursuant to this Agreement are an integral part of and are essential to the ability of PARISH to generate PARISH'S goods, products and services for purposes of La.R.S. 23:106(A)(1). Furthermore, PARISH and ATTORNEY agree that PARISH is the principal or statutory employer of ATTORNEY'S employees for the purposes of La.R.S. 23:1061(A)(3). Irrespective of PARISH'S status as the statutory employer or special employer (as defined in La.R.S. 23:1031 (c)) of ATTORNEY'S employees, ATTORNEY shall remain primarily responsible for the payment of Louisiana Worker's Compensation benefits to its employees, and shall not be entitled to see contribution for any such payments from PARISH.

The Parties agree that ATTORNEY shall be an independent contractor with respect to all tasks assigned and services provided or performed hereunder, and neither ATTORNEY nor its

PPG/Martzell Bickford/David Landry/
King Krebs Jurgens
Attorney Contract(BP Litigation)         Page 7 of 10

Init _____ _____
_____ _____
_____ _____

employees shall be considered employees of the PARISH except as provided above in this Agreement.

Any delay in or the failure to perform by a Party, other than the payment of money, shall not constitute a default that exposes such Party to liability for breach if and to the extent the delay or failure to perform is caused by an occurrence beyond the reasonable control of the Party, including, but not limited to, an Act of God or the public enemy; expropriation or confiscation of facilities; compliance with any order or requirement of any governmental authority; act of war, rebellion, or sabotage or damage resulting therefrom; fire, flood, explosion or accident; riots or strikes or other concerted acts of workmen, whether direct or indirect; inability after diligent effort to obtain necessary licenses or permits; or any other cause, whether or not of the same class or kind as those specifically named above, which is not within the control of the Party and which, by the exercise of reasonable diligence, the Party is unable to prevent or remedy.

The professional and technical adequacy and accuracy of designs, drawings, specifications, documents, and other work products furnished under this agreement will be conducted in a manner consistent with that level of care and skill ordinarily exercised by members of the profession.

If there is any dispute concerning this agreement, the laws of the State of Louisiana shall apply, its conflict of laws rules excepted if the interpretation of such would require the application of laws other than those of Louisiana. Proper venue and jurisdiction for all lawsuits, arbitration, mediation, claims, disputes, and other matters in questions between the parties to this agreement or any breach thereof, shall be in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana.

If any provision of this agreement shall be found by a court of competent jurisdiction, arbitration panel or other competent agency authorized to adjudge the provisions hereof, to be illegal, invalid or unenforceable, then the remainder of the provisions of this agreement shall be considered as having been written and executed without such invalid, illegal or unenforceable provision, and to this end, the provisions of this agreement are hereby declared severable.

This agreement represents the entire Agreement between PARISH and ATTORNEY and supersedes all other agreements or representations of any kind, oral or otherwise, not included herein. In cases of conflict or inconsistency between this Agreement, its exhibits (if any), and any applicable task orders, the Agreement shall prevail. This Agreement may be amended only by mutual consent and in writing, signed by both PARISH and ATTORNEY.

## SECTION 10. INDEMNIFICATION:

ATTORNEY agrees to defend, indemnify fully, and hold harmless at ATTORNEY'S sole expense PARISH, its officers, directors, and employees (herein collectively referred to as "PARISH") from and against all losses, claims and causes of action for personal injury, death or property damage brought by any third party and caused by the negligent or willful act or omission of ATTORNEY, its officers, directors, employees, or subcontractors.

PARISH agrees to defend, indemnify fully, and hold harmless at PARISH'S sole expense ATTORNEY, its officers, directors, and employees (herein collectively referred to as "ATTORNEY") from and against all losses, claims and causes of action for personal injury, death or property damage brought by any third party and caused by the negligent or willful act or omission of PARISH, its officers, directors, or employees.

Notwithstanding to the contrary in this Section 10, the parties agree that if negligence, fault and/or liability is apportioned between them by a court of competent jurisdiction, arbitrator, or other judicial, quasi-judicial or administrative agency having authority to render judgment thereon, then and in that event the indemnity, defense and hold harmless obligations shall be apportioned in accord with the percentage of negligence, fault and/or liability of each party assigned.

## 11.  ADDRESS OF NOTICES AND COMMUNICATIONS

William "Billy" Nungesser
Office of the Parish President
Plaquemines Parish Government
8056 Hwy. 23 / Suite 200
Belle Chasse, LA 70037

with a copy to:

Parish Attorney
Plaquemines Parish Government
8056 Hwy 23 /Suite 200
Belle Chasse, LA 70037

Scott Bickford
Managing Principal
Martzell & Bickford
338 Lafayette Street
New Orleans, LA 70130

David Landry
Of Counsel, Martzell & Bickford
338 Lafayette St.
New Orleans, LA  70130

Henry King
Managing Partner
King, Krebs & Jurgens
201 St. Charles Avenue / 45th Floor
New Orleans, LA 70170

## SECTION 12. LEGAL EXPENSES

In the event legal action is brought by PARISH or ATTORNEY against the other to enforce any of the obligations hereunder or arising out of any dispute concerning the terms and conditions hereby created, the opposing party shall pay the prevailing party its reasonable amounts for attorney's fees, costs and expenses incurred as a result of that action.

## SECTION 13: COUNTERPARTS/FACSIMILIES:

This agreement is executed in four (4) originals, and electronic signatures shall constitute original signatures as provided by law.

IN TESTIMONY WHEREOF, the parties have executed this Agreement on the respective dates set forth below, but effective as of the day, month and year first above written ("Effective Date").

WITNESSES:

[sign] _Michelle Rez_
[Print] _Michelle L. Eppley_

[sign] _CNielsen_
[Print] _Christie Nielsen_

[sign] _Jm D.D_
[print] _Jeremy D. Dwyer_

[sign] _Mario Arteaga_
[print] _MARIO ARTEACA_

[sign] _Jm D.D_
[Print] _Jeremy D. Dwyer_

[sign] _Mario Arteaga_
[Print] _MARIO ARTEAGA_

PARISH
PLAQUEMINES PARISH GOVERNMENT

By: _____
WILLIAM H. "BILLY" NUNGESSER
Parish President
Date: _8/24/2011_

ATTORNEY:
MARTZELL BICKFORD, L.L.C.

By: _____
SCOTT R. BICKFORD
Managing Principal
Date: _8/24/2011_

ATTORNEY:
KING, KREBS & JURGENS, L.L.C.

By: _Henry King_
HENRY KING
Managing Partner
Date: _8/25/2011_

PPG/Martzell Bickford/David Landry/
King Krebs Jurgens
Attorney Contract(BP Litigation)          Page 10 of 10

Init ____ ____
      ____ ____
      ____ ____

<u>ORDINANCE NO. 11-77</u>

The following Ordinance was offered by Council Member Buras who moved its adoption:

> An Ordinance to authorize the Parish President to enter into negotiations and execute contracts with the firms of Martzell & Bickford and David Landry for professional legal services for the development of claims and for filing litigation against the British Petroleum Companies, Transocean, and other companies involved in the April 20, 2010, Macondo Well Blowout and Oil Spill; and otherwise to provide with respect thereto.

WHEREAS, the Plaquemines Parish Government is faced with the loss of tax and related revenue, damage to its marshlands, reduction in property values, and related losses directly connected to the BP Macondo Well blowout and oil spill; and

WHEREAS, these losses to the Parish and the Parish Government should be addressed and compensation paid to the Parish and Parish Government by the BP companies, Transocean and all companies involved in the Macondo Well disaster; and

WHEREAS, the losses and expected compensation require study and quantification with supporting documentation and other evidence in order to pursue such claims against the parties responsible for the damage and the losses to the Parish and the Plaquemines Parish Government; and

WHEREAS, certain deadlines are approaching which may require the filing of claims and litigation against the BP companies, Transocean and all companies involved in the Macondo Well disaster; and

WHEREAS, following receipt of proposals pursuant to the advertisement and promulgation of Requests for Proposals, the Parish President requests authority to negotiate and enter into agreements with the law firms of Martzell & Bickford and David Landry for professional legal services to represent the Parish and the Parish Government and their claims against the BP companies, Transocean, and all other companies involved in the Macondo Well blowout and oil spill; and

WHEREAS, the Council has reviewed the proposals received;

NOW, THEREFORE:

BE IT ORDAINED BY THE PLAQUEMINES PARISH COUNCIL THAT:

<u>SECTION 1</u>

The Parish President is hereby authorized to enter into negotiations and execute contracts for professional legal services with the law firms of Martzell & Bickford and David Landry for the representation of the Parish and the Parish Government and their claims against the BP companies, Transocean, and all other companies involved in the Macondo Well blowout and oil spill.

<u>SECTION 2</u>

The Secretary of this Council is hereby authorized and directed to immediately certify and release this Ordinance and that Parish employees and officials are authorized to carry out the purposes of this Ordinance, both without further reading and approval by the Plaquemines Parish Council.



WHEREUPON, in open session the above Ordinance was read and considered section by section and as a whole.

Council Member Griffin seconded the motion to adopt the Ordinance.

The foregoing Ordinance having been submitted to a vote, the vote resulted as follows:

      YEAS:  Council Members Percy P.V. Griffin, Keith Hinkley, Kirk M. Lepine, Stuart J. Guey, Anthony L. Buras, Burghart Turner, Jeff Edgecombe, Byron T. Marinovich, and Marla Cooper

      NAYS: None

      ABSENT: None

      PRESENT BUT NOT VOTING: None

And the Ordinance was adopted on this the 14th day of April, 2011.

I hereby certify the above and foregoing to be a true and correct copy of an Ordinance adopted by the Plaquemines Parish Council at a meeting held in the Plaquemines Parish Temporary Courthouse Building, 450 F. Edward Hebert Blvd., Belle Chasse, Louisiana, on Thursday, April 14, 2011.

*Melissa P. LeBlanc*

      Secretary

The following Ordinance was offered by Council Member Guey who moved its adoption:

An Ordinance to amend Ordinance No. 11-77, authorizing the Parish President to enter into negotiations and execute contracts with Martzell Bickford, L.L.C., David Landry of Counsel to Martzell Bickford and King, Krebs & Jurgens, L.L.C., for professional legal services for the development of claims and for filing litigations against the British Petroleum Companies, Transocean and other companies/entities/individuals involved in the April 20, 2010, Macondo Well Blowout and Oil Spill; and otherwise to provide with respect thereto.

WHEREAS, the Plaquemines Parish Council adopted Ordinance No. 11-77 on April 14, 2011, authorizing the Parish President to negotiate and execute a contract with Martzell Bickford, L.L.C. and David Landry, Attorney at Law, for professional legal services for the development of claims and for filing litigation against the British Petroleum Companies, Transocean, and other companies/entities/individuals involved in the April 20, 2010, Macondo well blowout and oil spill; and

WHEREAS, the Parish President has recommended the addition of the law firm of King, Krebs & Jurgens, L.L.C. as co-counsel with Martzell Bickford and David Landry due to such firm's high ranking with Martzell Bickford/David Landry in the proposals in response to the Parish's RFP; and

WHEREAS, the Council has reviewed the proposals and concurs with the Parish President's recommendations; and

NOW, THEREFORE:

BE IT ORDAINED BY THE PLAQUEMINES PARISH COUNCIL THAT:

### SECTION 1

It hereby approves of the professional services contract jointly with Martzell Bickford, L.L.C., David Landry, Of Counsel to Martzell Bickford, and King, Krebs & Jurgens, L.L.C. for professional legal services for the representation of the Parish and the Parish Government and their claims against the BP companies, Transocean, and all other companies/entities/individuals involved in the Macondo Well blowout and oil spill of April 20, 2010.

### SECTION 2

The Secretary of this Council is hereby authorized and directed to immediately certify and release this Ordinance and that Parish employees and officials are authorized to carry out the purposes of this Ordinance, both without further reading and approval by the Plaquemines Parish Council.

WHEREUPON, in open session the above Ordinance was read and considered section by section and as a whole.

Council Member Buras seconded the motion to adopt the Ordinance.

The foregoing Ordinance having been submitted to a vote, the vote resulted as follows:

YEAS: Council Members Percy P.V. Griffin, Keith Hinkley, Stuart J. Guey, Anthony L. Buras, Jeff Edgecombe, Byron T. Marinovich, and Marla Cooper

NAYS: Council Members Kirk M. Lepine, and Burghart Turner

ABSENT: None

PRESENT BUT NOT VOTING: None

And the Ordinance was adopted on this the 11th day of August, 2011.

I hereby certify the above and foregoing to be a true and correct copy of an Ordinance adopted by the Plaquemines Parish Council at a meeting held in the Plaquemines Parish Temporary Courthouse Building, 450 F. Edward Hebert Blvd., Belle Chasse, Louisiana, on Thursday, August 11, 2011.

Melissa P. LeBlanc
Secretary

# MARTZELL & BICKFORD

JOHN R. MARTZELL (1937-2007)
SCOTT R. BICKFORD †
SPENCER R. DOODY
LAWRENCE J. CENTOLA, III
NEIL F. NAZARETH
ROSHAWN H. DONAHUE
JASON Z. LANDRY

ATTORNEYS AT LAW
*A Professional Corporation*
338 LAFAYETTE STREET
NEW ORLEANS, LOUISIANA  70130

WWW.MBFIRM.COM

TELEPHONE: (504) 581-9065
FACSIMILE:  (504) 581-7635

REGINA O. MATTHEWS
*OF COUNSEL*

BYRON J. JEANICE
OFFICE ADMINISTRATOR

———————————
† *also admitted in Texas & Colorado*

———————————
E-MAIL: MB@MBFIRM.COM

July 16, 2013

Honorable Chairman Byron T. Marinovich
Plaquemines Parish Government
P. O. Box 7148
Buras, LA 70041

William Nungesser, Parish President
Plaquemines Parish Government
8056 Hwy 23, Suite 200
Belle Chasse, LA  70037

Leo Palazzo, Parish Attorney
Plaquemines Parish Government Legal Department
8056 Hwy 23, Suite 200
Belle Chasse, LA  70037

Re:   Plaquemines Parish Government Claims Arising from Deepwater Horizon
      **ATTORNEY CLIENT PRIVILEGE DOCUMENT: CONFIDENTIAL**

Dear Gentlemen:

It has been our pleasure serving as counsel for Plaquemines Parish Government.  Over the past two years, our firms have invested thousands of hours and hundreds of thousands of dollars prosecuting the Parish's claims against the parties responsible for the Deepwater Horizon disaster. We are confident that our efforts will lead to a successful resolution for the Parish.

In the interim, pursuant to my conversation with Leo Palazzo this morning, and pursuant to our Agreement for Professional Legal Services ("Agreement") dated 8-24-2011, please be advised that we are exercising our right to extend this Agreement for an additional two (2) year term.

July 16, 2013
Page Two


      If you have any questions, please do not hesitate to contact us.  In the meantime, we will continue to place all our efforts behind an expeditious resolution in favor of the Parish.

                            Yours truly,

                            **MARTZELL AND BICKFORD, APLC**

                            Scott R. Bickford

                            *and*

                            **KING, KREBS AND JURGENS, PLLC**

                            Henry A. King

SRB/jh


G:\Clients\PLAQUEMINES DEEPWATER\Correspondence\Nungesser 2013-07-16.wpd

# MARTZELL & BICKFORD

ATTORNEYS AT LAW
*A Professional Corporation*
338 LAFAYETTE STREET
NEW ORLEANS, LOUISIANA 70130

JOHN R. MARTZELL (1937-2007)
SCOTT R. BICKFORD †
LAWRENCE J. CENTOLA, III

SPENCER R. DOODY
NEIL F. NAZARETH
ROSHAWN H. DONAHUE
JASON Z. LANDRY

BYRON J. JEANICE
OFFICE ADMINISTRATOR

WWW.MBFIRM.COM

TELEPHONE: (504) 581-9065
FACSIMILE:  (504) 581-7635

E-MAIL: MB@MBFIRM.COM

† *also admitted in Texas & Colorado*

August 3, 2015

**Via Email and U.S. Mail**
Honorable Chairman Benny Rousselle
Plaquemines Parish Government
333 F. Edward Hebert, Blvd. Building 100
Belle Chase, LA 70037
*brousselle@ppgov.net*

Honorable Amos Cormier, Parish President
Plaquemines Parish Government
8056 Hwy 23, Suite 200
Belle Chasse, LA  70037
*acormier@ppgov.net*

Joel Loeffelholz, Parish Attorney
Plaquemines Parish Government Legal Department
8056 Hwy 23, Suite 200
Belle Chasse, LA  70037
*jloeff@ppgov.net*

Re:   Plaquemines Parish Government Claims Arising from Deepwater Horizon
      **ATTORNEY CLIENT PRIVILEGE DOCUMENT: CONFIDENTIAL**

Dear Gentlemen:

It has been our pleasure serving as counsel for Plaquemines Parish Government.  Over the past four years, our firms have invested thousands of hours and nearly a Million Dollars prosecuting the Parish's claims against the parties responsible for the Deepwater Horizon disaster.  These include not only BP but potential recoveries against Transocean and Halliburton.  We are confident that our efforts will lead to a successful resolution for the Parish.

In the interim, pursuant to my conversation with Joel Loeffelholz this morning, and pursuant to our Agreement for Professional Legal Services ("Agreement") dated 8-24-2011, please be advised Scott R. Bickford of Martzell & Bickford, APC,  King, Krebs and Jurgens, L.L.C., and David Landry are exercising our right to extend this Agreement for an additional two (2) year term

August 3, 2015
Page Two


      If you have any questions, please do not hesitate to contact us.  In the meantime, we will continue to place all our efforts behind an expeditious resolution in favor of the Parish.

                                  Yours truly,

                                  MARTZELL AND BICKFORD, APLC

                                  Scott R. Bickford

                                  *and*

                                  KING, KREBS AND JURGENS, PLLC

                                  *Henry A. King*

                                  Henry A. King

                                  and

                                  DAVID L. LANDRY, ATTORNEY AT LAW

                                  *David L. Landry*

                                  David L. Landry


SRB/jh

John B. Martzell (1937-2007)
Scott R. Bickford *
Lawrence J. Centola, III

Spencer R. Doody
Neil F. Nazareth
Roshawn H. Donahue
Jason Z. Landry
Christopher H. Carbine

Byron J. Jeanice
Office Administrator

* also licensed in
Texas and Colorado

# mb&c

Martzell, Bickford & Centola APC
S       Attorneys at Law

June 12, 2017

**HAND DELIVERY**
Peter A. Barbee, Parish Attorney
Plaquemines Parish Government Legal Department
8056 Hwy 23, Suite 200
Belle Chasse, LA 70037

Re:   Plaquemines Parish Government Claims Arising from Deepwater Horizon
      **ATTORNEY CLIENT PRIVILEGE DOCUMENT: CONFIDENTIAL**
      Extension of Contract

Dear Peter:

It has been our pleasure serving as counsel for Plaquemines Parish Government. Over the past six years, our firms have invested thousands of hours and nearly a million dollars in out of pocket costs in prosecuting the Parish's claims against the parties responsible for the Deepwater Horizon disaster. These include not only BP but punitive damage claims against Transocean and Halliburton. With the submittal of the release paper work, all of our work has been completed regarding the claims under OPA and the General Maritime Laws and we await impending funding of the settlement with BP.

In the Parish's claim in the class settlement of punitive damages, we successfully argued for the diversion of a majority of the money in the class settlement fund to be awarded to the New Class (of which the Parish is a member) and this position was adopted by the court. We further urged and received an expanded methodology for proof of damages so the Parish will now be permitted to present proof of its damages beyond just SCAT line damages. After extensive work with the Parish Assessor, we have completed the documentation of Parish ownership of affected wetlands and such property is now recorded with the Parish and such recordation has been accepted by the State Tax Commission. Finally, we have assessed the extent of the oiling and completed and submitted a claim for damages. The Parish is now awaiting a determination from the Special Master concerning the amount of funding of that claim and receipt of those funds.

Peter A. Barbee, Parish Attorney
June 12, 2017
Page Two

Per Section 7.2 of our Agreement for Professional Legal Services dated April 15, 2011 ("Agreement"), this letter will confirm that the Parish's appointed counsel [Scott R. Bickford of Martzell & Bickford, APC, King, Krebs and Jurgens, L.L.C., and David Landry] are exercising their right to extend the Agreement for an additional two (2) year term in order that we may complete the services required on the open matter outlined above.

If you have any questions, please do not hesitate to contact us. In the meantime, we will continue to place all our efforts behind an expeditious resolution of this matter on the best possible terms for the Parish.

Yours truly,

MARTZELL, BICKFORD & CENTOLA

Scott R. Bickford

and

KING, KREBS AND JURGENS, PLLC

Henry A. King

Henry A. King

and

DAVID L. LANDRY, ATTORNEY AT LAW

David L. Landry

David L. Landry

SRB/jh

cc:    Honorable Chairman John Barthelemy (via e-mail)