## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * * * * | **MDL NO. 2179** |
| | | **SECTION J** |
| | * | |
| | * | **JUDGE BARBIER** |
| **This Document relates to:** | * | |
| *All Remaining Cases in Pleading Bundle "B3"* | * | **MAGISTRATE JUDGE WILKINSON** |
| | * | |

### BP'S RESPONSE TO MOTIONS FOR RECONSIDERATION
### OF THE COURT'S PTO 63 COMPLIANCE ORDER

BP Exploration & Production Inc. and BP America Production Company (collectively "BP"), pursuant to the Court's August 23, 2017 Order (Rec. Doc. 23321), file this omnibus response to the motions for reconsideration filed by parties in the B3 pleading bundle in response to the *Court's Order As to Compliance with Pretrial Order No. 63* (Rec. Doc. 23047, the "PTO 63 Compliance Order").[1] With respect to certain moving plaintiffs who appear to have failed to comply with PTO 63 due to minor clerical errors and have taken steps to cure their deficiency, BP does not oppose them being deemed compliant with PTO 63 if the Court decides to treat their cure attempts as timely. The other moving plaintiffs, however, had clear notice not only of PTO 63's requirements, but also that noncompliance would result in the dismissal of their claims. Yet they failed to comply with PTO 63. The resulting dismissal of those movants'

---

[1] Although motions for reconsideration were principally filed by plaintiffs whose claims were dismissed by the PTO 63 Compliance Order, some defendants also filed motions seeking dismissal of certain plaintiffs they believe failed to comply with PTO 63. The pending motions for reconsideration of the PTO 63 Compliance Order identified by the Court in its August 23, 2017 briefing order are Rec. Docs. 23087/23212, 23090/23213, 23098, 23109, 23148–23153, 23155, 23156, 23207, 23260, 23267, and 23268. On August 31, 2017, SWS Environmental Services filed a motion to reconsider at Rec. Doc. 23341. In addition, *pro se* plaintiff Power House Church of God Holy Ghost Power also filed a motion for reconsideration. (Rec. Doc. 23371.) In the interest of efficiency and prompt resolution, BP also addresses those motions herein.

claims was an appropriate exercise of the Court's inherent authority and discretion, and their motions provide no basis for reconsideration. Each of those plaintiffs' motions should be denied.

## BACKGROUND

**The Pretrial Order 63 Process.**  As part of its inherent authority to manage this highly complex litigation, the Court issued PTO 63 in February 2017 to require those plaintiffs with timely filed claims for post-explosion Clean-Up, Medical Monitoring, and Post-April 20 Personal Injury Claims ("B3 claims"),[2] and who had not released those claims, to take certain affirmative steps in order to proceed with their claims in this litigation. Prior to PTO 63, many thousands of plaintiffs with B3 claims remained in MDL 2179. Moreover, many thousands of the remaining B3 plaintiffs were members of the *Deepwater Horizon* Medical Benefits Settlement class who had released their claims against BP and (in many instances) been compensated under the class settlement, but took no action to dismiss their claims in MDL 2179.

To resolve these significant case management challenges, on February 22, 2017, the Court in PTO 63 required each plaintiff with preserved B3 claims to provide a signed sworn statement identifying, among other things, (1) whether the plaintiff was a settlement class member; (2) the nature of the B3 claim the plaintiff sought to pursue; and (3) any response activities in which the plaintiff participated. (PTO 63, Rec. Doc. 22295 at 3–4.) The Court also required B3 plaintiffs who had filed only a joinder in the B3 Master Complaint or a complaint joined in by other plaintiffs to file an individual lawsuit. (*Id.* at 4.) By its terms, PTO 63 applied

---

[2] The Court further clarified that the B3 Bundle includes "all claims, of any type, relating to post-explosion clean-up efforts asserted against Defendants not named in the B1 Master Complaint, as well as all claims for personal injury and/or medical monitoring for exposure or other injury occurring after the explosion and fire of April 20, 2010" and "contract claims related to the response efforts," including certain Vessels of Opportunity Program contract claims. (*See* PTO 63, Rec. Doc. 22295 at 1–2 (citing PTO 25, Rec. Doc. 983 at 2; Am. B3 Master Complaint ¶ 356).)

to "all plaintiffs who have timely filed a claim in the B3 pleading bundle and who **have not** released their claim(s) to date." (*Id*. at 3 (emphasis in original).)

No fewer than five times, PTO 63 made clear that timely compliance with PTO 63 was required for any plaintiff seeking to continue with its claims in MDL 2179:

- Only "Plaintiffs *who comply with this Order* are subject to further proceedings in this Court" (*see id*. ¶ 8 (emphasis added));

- "*Plaintiffs who* previously filed an individual lawsuit and *fail to comply* with the above requirement by April 12, 2017, *will have their complaints deemed dismissed with prejudice without further notice*." (*id*. ¶ 6(A)(ii));

- "*Plaintiffs* that did not file individual lawsuits, but instead filed a SFJ and/or were part of a complaint with more than one plaintiff or class action, *who fail to comply* with the above requirements by April 12, 2017, *will have their claims deemed dismissed with prejudice without further notice*." (*id*. ¶ 6(B)(ii) (emphasis added));

- "*For those B3 Plaintiffs deemed to be complaint with this Order*, the Court will discuss procedures for addressing their claims at a hearing to be set by further Order of the Court." (*id.* ¶ 10 (emphasis added)); and

- "Accordingly; the Court . . . ORDERS the designated plaintiffs to act in compliance with this Order *or face dismissal of their claims with prejudice* without further notice." (*Id.* at 7 (emphasis added).)

Nevertheless, the Court granted certain plaintiffs an extension of time to comply with PTO 63, extending the deadline to May 3, 2017, (Rec. Docs. 22625, 22626, 22723, 22724, 22781), but refused to provide any further extensions (*see* Rec. Doc. 22778).

**The PTO 63 Compliance Order.** Following the deadlines for compliance with PTO 63, the Court issued its PTO 63 Compliance Order on July 18, 2017. (Rec. Doc. 23047.) That order identified (1) 960 Remaining B3 Plaintiffs who had complied with PTO 63, thus preserving any post-explosion clean-up, medical monitoring, and post-April 20 personal injury claims or contract claims related to response efforts for future proceedings in MDL 2179; and (2) 173 individuals and entities who failed to comply with PTO 63. (*Id*. at 2.) The Court dismissed with prejudice the non-compliant plaintiffs' cases. (*Id*.) The Court further dismissed with prejudice

3

any other B3 claims, excepting cases filed by class members in the Medical Benefits Class Action Settlement pursuant to the Back End Litigation Option. (*Id.*)

**<u>Noncompliant Plaintiffs' Motions for Reconsideration.</u>**  A number of plaintiffs filed motions for reconsideration in response to the PTO 63 Compliance Order, including:

1. Five plaintiffs (Lisa Baldo (Rec. Doc. 23109), Ricky Robin Jr. (Rec Docs. 23107,[3] 23156), Ricky Robin Sr. (Rec. Docs. 23108,[4] 23155), James Collier (Rec. Doc. 23150), and Sherrie McKinley (on behalf of her minor child Deja Jana Brumfield) (Rec. Docs. 23147, 23260[5])) who were deemed noncompliant with PTO 63 for failing to respond to the class status question on their sworn statements,[6] but have attached to their motions for reconsideration amended sworn statements that appear to cure the original defects by including responses to the class status question;

2. Seven plaintiffs (Brandon Byrd (Rec Doc. 23148), Willie Casey (Rec. Doc. 23149), Paul Raymond Doom (Rec. Doc. 23151), Melissa Wellington (individually and on behalf of her two minor children) (Rec. Doc. 23152), and Holly Williams (Rec. Doc. 23153)) who were deemed noncompliant with PTO 63 for failing to sign their sworn statements, but have attached to their motions for reconsideration amended sworn statements that cure the original defect by including each plaintiffs' signature;[7]

3. One plaintiff (Khaled Abdelfattah (Rec. Doc. 23268)) who was deemed noncompliant with PTO 63 for failing to sign his sworn statement, which was signed with only the word "noot" (Rec. Doc. 23268-2 at 4 (original sworn statement)) and who contends in

---

[3] Ricky Robin Jr.'s motion was incorrectly titled as relating to Ms. Baldo and has been marked deficient on the Court's docket. (Rec. Doc. 23107.) On August 7, 2017, Mr. Robin filed a new motion, nearly identical to the first except for correcting the title. (Rec. Doc. 23156.)

[4] Ricky Robin Sr.'s motion was incorrectly titled as relating to Ms. Baldo and has been marked deficient on the Court's docket. (Rec Doc. 23108.) On August 7, 2017, Mr. Robin filed a new motion, nearly identical to the first except for correcting the title. (Rec. Doc. 23155.)

[5] Ms. McKinley also asserts claims of her own, but she was deemed compliant with PTO 63 and her claims were not dismissed. (*See* PTO 63 Compliance Order, Rec. Doc. 23047-1 at 13.) Ms. McKinley's initial motion was incorrectly captioned as relating to Brandon Keith Byrd and has been marked deficient on the Court's docket. (*See* Rec. Doc. 23147.) On August 14, 2017, Ms. McKinley filed a new motion, nearly identical to the first except for correcting the title. (Rec. Doc. 23260.)

[6] Although Exhibit 2 to the PTO 63 Compliance Order indicates that Ricky Robin Sr. also did not sign his sworn statement, BP's subsequent review of his sworn statement as filed in his individual case indicates that he did in fact timely sign his sworn statement.

[7] Each of the motions is also accompanied by an affidavit from their counsel's case manager stating that these seven plaintiffs' signatures were timely obtained and were missing from their original sworn statements due only to a clerical error. (*See, e.g.*, Rec. Doc. 23148-3.)

4

his motion for reconsideration that "Plaintiff's signature is the word 'noot,' as Plaintiff is commonly known by this name" (Rec. Doc. 23268 at 2);

4. More than 800 cleanup worker plaintiffs represented by the Lindsay & Lindsay, P.A. firm (Rec. Docs. 23087, 23212) who sought and were denied an exemption from PTO 63 and subsequently did not comply with PTO 63;

5. Seventeen plaintiffs represented by Frank J. D'Amico, APLC (Rec Docs. 23090, 23213[8]) who were deemed noncompliant with PTO 63 for failing to file individual complaints and whose motion for reconsideration indicates no attempt to cure that deficiency, while arguing that their counsel found PTO 63 "vague and was uncertain about its meaning" and thus "interpreted PTO 63 to only require the timely filing of individual sworn statements," not the filing of individual complaints (Rec. Doc. 23213-1 at 2, 4);

6. One plaintiff (Power House Church of God Holy Ghost Power ("Power House Church") who was deemed noncompliant with PTO 63 for failure to provide any response to the questions regarding its membership in the settlement classes, and whose unfiled "Motion Requesting Reconsideration" fails to cure or address that deficiency; and

7. Five plaintiffs (Larry Schexnayder, Rachel Williams, Ferrell Schexnayder, Donna Picou, and Darlene Williams (Rec. Doc. 23207) who all joined as plaintiffs in a single wrongful death complaint and were deemed noncompliant with PTO 63 for failure to file an individual lawsuits and who allege in their motion for reconsideration that they qualify as "related parties" permitted to file a single complaint together under PTO 63.

**Defendants' Motions for Reconsideration.**  Three defendants, Emergency Response Group, Inc., SWS Environmental Services, and Knight's Marine & Industrial Services, Inc., filed motions for reconsideration in response to the PTO 63 Compliance Order. (Rec. Docs. 23098, 23341, and 23267.)   ERG's motion argues that plaintiff Sergio Valdivieso is materially noncompliant with PTO 63 because he did not timely file his sworn statement into the docket of his individual case. (*See* Rec. Doc. 23098-1 at 2.)  SWS's motion likewise seeks dismissal of

---

[8] The motion, styled as a "Motion to Alter or Amend Judgment … or in the Alternative for Relief from a Judgment or Order," is on behalf of the following plaintiffs: James Bryant, Henry Jenkins, Steven Burke, Willie Richardson, Nathan S. Southern, Marion G. Barefoot, Baron Buskell, Johnnie Clopton, Tommy Tripp, Richard Wood, John Burrus, Sarah Graham, Max Murray, Kimberly DeAgano (individually and on behalf of Derek J. DeAgano and Ted DeAgano, Jr.), and Keith Keaghey.  (Rec. Doc. 23090 at 1 n.1.)  On August 10, counsel filed another motion "virtually identical" to the initial motion, purportedly to avoid any prematurity issues. (Rec. Doc. 23213 at 1.)

5

Mr. Valdivieso's claims on similar grounds. (*See generally* Rec. Doc. 23341-1.) Knight's Marine's motion asks the Court to dismiss the claims of plaintiff Michael Brandon Vickers because, although Vickers filed a sworn statement into the docket of his individual action against BP, he did not file a sworn statement into the docket of his individual action against Knight's Marine. (*See* Rec. Doc. 23267-1 at 4 & n.3.)

Although Messrs. Valdivieso and Vickers did not timely file their sworn statements into their individual case dockets, BP was timely served with sworn statements by those plaintiffs. As a result, in preparing the compliance list required by the Court, BP treated both plaintiffs as having substantially complied with PTO 60. (*See* Section IV below.)

## ARGUMENT

To prevail on a motion for reconsideration,[9] the movant must clearly establish at least one of three factors: (1) an intervening change in the controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error in law or fact. *Henry v. New Orleans Louisiana Saints, LLC*, No. 15-5971, 2016 WL 3524107, at *2 (E.D. La. June 28, 2016) (Barbier, J.) (citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).

With the exception of thirteen plaintiffs whose reconsideration motions BP does not oppose, plaintiffs make no effort to meet these requirements. They cite to no change in the controlling case law and to no new evidence relevant to the dismissal of their claims for failure to comply with PTO 63. Far from "clearly establish[ing]" that the Court has engaged in manifest

---

[9] Because the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration, a timely motion for "reconsideration" will be treated as Rule 59(e) motion to alter or amend a judgment. *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997); *see also In re Fellows*, 19 F.3d 245, 245–46 (5th Cir. 1994); *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993) (motion for reconsideration filed within time specified by Fed. R. Civ. P. 59(e) is treated as motion to alter or amend).

error, these moving plaintiffs fail to call into question the Court's authority to require them to comply with the requirements of PTO 63 in order to proceed with their claims in MDL 2179.

PTO 63 is an appropriate exercise of the Court's authority and discretion in managing this litigation and enforcing its orders. *See Cranford v. Morgan S., Inc.*, No. 10-60315, 2011 WL 1258515, at *3 (5th Cir. Apr. 5, 2011) ("A district court has the inherent power to manage and control its own docket in order to achieve the orderly and expeditious disposition of cases."). The moving plaintiffs were on notice from the time those orders issued that failure to timely meet the requirements of those orders would result in dismissal of their claims, and yet they failed to comply.

## I.    Pretrial Order 63 Is An Appropriate Exercise Of The Court's Inherent Authority.

PTO 63 and its related compliance orders are an appropriate exercise of the Court's inherent authority and discretion in managing this highly complex litigation, authority that the Fifth Circuit has confirmed in other MDL 2179 proceedings. *See In re State of Louisiana, Petitioner*, No. 11-30178, Order Denying Petition for Writ of Mandamus to the United States District Court for the Eastern District of Louisiana, USDC No. 2:10-MD-2179, issued April 11, 2011, at 2 ("We have long held that a district court has the inherent authority and discretion to consolidate and manage complex litigation, particularly when serving as the transferee court in a multidistrict proceeding."); *see also Cranford*, 2011 WL 1258515, at *3 ("A district court has the inherent power to manage and control its own docket in order to achieve the orderly and expeditious disposition of cases.").

In this case, the orderly and expeditious disposition of the B3 claims before the Court required the efficient elimination of claims that had been released through the class settlement or other means. They also required a solution to the case management problems created by the fact that tens of thousands of plaintiffs in the consolidated proceedings had filed only mass joinder

7

actions or short-form joinders in the (now dismissed) B3 master complaint.  The requirements that PTO 63 placed upon plaintiffs in order to preserve their claims were tailored to achieve these ends and are an appropriate exercise of the Court's discretion. As shown by the nearly 1000 plaintiffs who complied with PTO 63, the Court's Orders and extended timelines were easily understood and provided ample opportunity for timely filings.

The Fifth Circuit has recognized that the Court's authority extends to dismissal of actions as part of the court's "broad discretion to preserve the integrity and purpose of [a] pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (citation and internal quotation marks omitted).  The ability of the Court to enforce compliance with its order through dismissal of noncompliant plaintiffs was essential to the success of PTO 63.  Accordingly, the Court warned plaintiffs no fewer than five times in PTO 63 that noncompliance with its order would result in dismissal with prejudice.

Several movants argue that the Court was required to consider lesser, alternative sanctions before dismissing their claims for noncompliance with PTO 63.  (*See, e.g.*, Rec. Doc. 23155-1 at 3.)  The Fifth Circuit has made clear, however, that the "lesser sanctions" that ordinarily should precede dismissal may be supplied by ***explicit warnings*** that noncompliance with a court order may result in dismissal of a plaintiff's claims. *Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 442 (5th Cir. 2016) ("With respect to lesser sanctions, we have previously made clear that they 'include assessments of fines, costs, or damages against the plaintiff, conditional dismissal, dismissal without prejudice, and explicit warnings.'"); *Thrasher v. City of Amarillo*, 709 F.3d 509, 514 (5th Cir. 2013); *Rogers v. Kroger Co.*, 669 F.2d 317, 321–22 (5th Cir. 1982) ("[E]xplicit warnings are preliminary means or less

severe sanctions that may be used to safeguard a court's undoubted right to control its docket.").[10]

PTO 63 contained such explicit warnings, and movants in this case were on notice from the day that order issued that failure to timely comply with the Court's orders would result in dismissal of their claims. Moreover, such an approach is particularly appropriate in a highly complex proceeding such as MDL 2179 in which the individualized consideration of successive and tiered sanctions now suggested by movants is impracticable. As the Ninth Circuit has recognized, "[t]he logistical complexity involved in multidistrict litigation makes it impossible to issue personalized warnings to each one of thousands of parties and give second (or, in some cases, third, fourth, or fifth) chances based on each party's unique circumstances." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1240 (9th Cir. 2006). Given the extraordinary complexity involved in managing the many tens of thousands of B3 claims in MDL 2179, PTO 63—including its clearly-noticed provisions that the claims of noncompliant plaintiffs would be dismissed—is a necessary and appropriate exercise of the Court's inherent authority and discretion.

## II.     BP Does Not Oppose Thirteen Plaintiffs' Motions To Reconsider.

Based on its review of their motions for reconsideration (including amended sworn statements that cure their initial deficiencies), BP does not oppose the following thirteen plaintiffs' motions to reconsider, provided the Court decides to treat their cure attempts as timely: Lisa Baldo (Rec. Doc. 23109), Ricky Robin Jr. (Rec Docs. 23107, 23156), Ricky

---

[10] Other Circuits agree. The Third and Ninth Circuits, for example, have held that warning a plaintiff that failure to obey a court order will result in dismissal can be a sufficient "consideration of alternatives" prior to dismissing a claim with prejudice. *See Buss v. W. Airlines, Inc.*, 738 F.2d 1053, 1054 (9th Cir. 1984), *cert. denied*, 469 U.S. 1192 (1985); *Estrada v. Speno & Cohen*, 244 F.3d 1050, 1057 (9th Cir. 2001); *Titus v. Mercedes Benz of N. Am.,* 695 F.2d 746, 749 n. 6 (3d Cir. 1982) (listing "warning" as a lesser alternative sanction).

Robin Sr. (Rec. Docs. 23108, 23155), James Collier (Rec. Doc. 23150), and Sherrie McKinley (on behalf of her minor child Deja Jana Brumfield) (Rec. Docs. 23147, 23260), Brandon Byrd (Rec. Doc. 23148), Willie Casey (Rec. Doc. 23149), Paul Raymond Doom (Rec. Doc. 23151), Melissa Wellington (and her two minor children) (Rec. Doc. 23152), Holly Williams (Rec. Doc. 23153), and Khaled Abdelfattah (Rec. Doc. 23268).

Lisa Baldo, Ricky Robin Jr., Ricky Robin Sr., James Collier, and Deja Jana Brumfield were deemed noncompliant with PTO 63 for failing to answer the class status question on their sworn statements. (*See supra* p. 4.) Each of these plaintiffs was materially compliant with PTO 63 in all other respects. Moreover, each of these plaintiffs has now cured their defects by serving revised sworn statements that include a response to the class status question. (*See id.*) In light of these circumstances, BP does not oppose these plaintiffs' motions for reconsideration.

Brandon Byrd, Willie Casey, Paul Raymond Doom, Melissa Wellington (and her two minor children), and Holly Williams were each deemed noncompliant with PTO 63 for failing to sign their sworn statements. (*See supra* p. 4.) These plaintiffs were materially compliant with PTO 63 in all other respects, and each of these plaintiffs has now cured their defects by serving revised sworn statements that contain signatures. (*See id.*) Moreover, it appears that these plaintiffs' sworn statements did not include their signatures due to a clerical error. (*See id.*) In light of these circumstances, BP does not oppose these plaintiffs' motions for reconsideration.

Finally, Khaled Abdelfattah was deemed noncompliant with PTO 63 for failing to sign his sworn statement, which contained only the written word "noot" on the signature line. (*See supra* pp. 4-5.) Mr. Abdelfattah was materially compliant with PTO 63 in all other respects. In his motion for reconsideration, Mr. Abdelfattah alleges that "Plaintiff's signature is the word 'noot,' as Plaintiff is commonly known by this name." (Rec. Doc. 23268-1 at 2.) Mr.

10

Abdelfattah also attached to his motion a redacted copy of his retention agreement with his counsel and his MSA opt-out form to corroborate this claim, both of which are also signed "noot," as well as an affidavit stating that his signature is "noot" and that he personally signed his sworn statement. (Rec. Docs. 23268-2 at 5, 23268-3, 23268-4.) Based on those submissions, BP does not oppose Mr. Abdelfattah's motion for reconsideration.

### III. The Court Properly Dismissed All Other Moving Plaintiffs' Claims With Prejudice For Noncompliance With PTO 63.

#### A. Lindsay & Lindsay, P.A. Plaintiffs

##### 1. The *Abney* and *Abood* Plaintiffs.

More than 800 cleanup workers who were plaintiffs in two actions[11] filed by the Lindsay & Lindsay, P.A. firm now ask the Court to reinstate their claims despite the fact that they (1) took no action to comply with PTO 63 and (2) previously asked for and were expressly denied an exemption from PTO 63. Their motion should be denied in its entirety.

As an initial matter, plaintiffs' motion for reconsideration (Rec. Doc. 23087) appears to be based on the mistaken assumption that the Court never ruled on their two April 12, 2017 motions asking to be excused from compliance with PTO 63. (*See id.* at 1 (stating that plaintiffs' motion for reconsideration is "further in reference to their prior motions filed April 12, 2017 ***which have not been heard*** (Doc. 22644 and Doc. 22646)") (emphasis added).) In fact, the Court denied those motions five days after they were filed and granted plaintiffs a three-week extension in which to comply with PTO 63. (Rec. Doc. 22724.) Not only did plaintiffs take no steps to comply with PTO 63 even by the extended deadline, but their motion for reconsideration does little more than repeat its prior, already-denied motions to be excused from PTO 63. A

---

[11] *Abney, et al. v. Plant Performance Services, LLC, et al.*, No. 13-00582 and *Abood, et al. v. Plant Performance Services, LLC, et al.*, No. 13-02964.

11

motion for reconsideration, however, "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment," nor to "re-litigate prior matters that ... simply have been resolved to the movant's dissatisfaction." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004); *Voisin v. Tetra Techs., Inc.*, No. 08-1302, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). Having failed to meet their burden, plaintiffs' motions should be denied on that basis alone.

Moreover, plaintiffs' argument that their claims are not B3 claims is specious. They claim to be "cleanup workers suffering unwarranted exposure to toxins and personal injury," (Rec. Doc. 23087-1 at 3), and thus are plainly B3 plaintiffs. Their sole argument that their claims are not part of the B3 bundle or subject to PTO 63 is based on a fundamental misunderstanding of this multidistrict litigation: Plaintiffs allege that "[b]ecause the claims asserted are primarily against non-parties to the MDL, the plaintiffs have the understanding that their cases are not necessarily part of the B3 bundle." (*Id.*) But the *Abney* and *Abood* actions—and all defendants therein—were made part of this MDL in their entirety. Moreover, nothing in any of the Court's pretrial orders suggests that any claims are excluded from the B3 bundle if they name a defendant other than BP. Thus, the Court properly denied plaintiffs' April 12, 2017 motions and reiterated the requirement that they comply with PTO 63.[12] Having failed to comply with PTO 63, the *Abney* and *Abood* plaintiffs properly had their claims dismissed with prejudice.

---

[12] Notably, plaintiffs admit that the effect of the Court denying their April 12 motions would be that their claims against BP would be dismissed. (*See* Rec. Doc. 23087 ¶ 4 (stating that plaintiffs' counsel "interpreted the effect of PTO 63 on these cleanup workers to be as follows: … if the [April 12, 2017] motion were denied, then the claims pending against P2S and Fluor would be the only remaining surviving claims ….").  Although plaintiffs fail to note the Court's denial of that motion (and BP does not agree that plaintiffs' claims against the other defendants survive), plaintiffs are correct that the Court's denial of their motion and their subsequent noncompliance with PTO 63 means that their claims against BP are now dismissed.

12

### 2. Steven Burke

Contrary to the Lindsay firm's position that its plaintiffs are exempt from PTO 63, it did attempt to comply with PTO 63 for a select few of its plaintiffs. One such plaintiff, Steven Burke, submitted a sworn written statement, but he filed no individual lawsuit and instead remained only one plaintiff among hundreds in the *Abood* action. Accordingly, the Court properly dismissed his claims with prejudice in the PTO 63 Compliance Order.

Burke's motion for reconsideration (Rec. Doc. 23212) does not address that deficiency at all, let alone attempt to cure it. Instead, his motion repeats nearly verbatim the arguments made by the *Abney* and *Abood* plaintiffs' motion for reconsideration. Like those plaintiffs, Burke was required, but failed, to comply with PTO 63. The Court properly dismissed his B3 claims, and his motion for reconsideration should be denied.

## B.   Frank J. D'Amico, APLC Plaintiffs

The gist of the motion for reconsideration filed by the seventeen plaintiffs represented by Frank J. D'Amico is that their counsel failed to understand that PTO 63 required each B3 plaintiff to file an individual complaint. (*See supra* p. 5.) Plaintiffs complain that PTO 63 was "vague," (*see* Rec Doc. 23213-1 at 4), and that the Plaintiffs' Steering Committee purportedly advised them that filing individual complaints for each plaintiff was unnecessary (*see id.* at 4, 6–7, 10). To the contrary, PTO 63 was quite clear with regard to the individual complaint requirement: "Where B3 plaintiffs did not file an individual lawsuit, but instead filed a SFJ and/or were part of a complaint with more than one plaintiff or a class each, **each such plaintiff** must … file an individual lawsuit (Complaint) (one per plaintiff, without class allegations) …." (PTO 63, Rec. Doc. 22295 ¶ 6(B)(i) (emphasis in original).) Plaintiffs need not have looked any further than the plain language of PTO 63 itself.

13

Plaintiffs' suggestion that the "DeAgano Plaintiffs" (Kimberly DeAgano, individually and on behalf of Derek J. DeAgano and Ted DeAgano, Jr.) are "related parties" exempt from the individual complaint requirement likewise lacks merit. (*See* Rec. Doc. 23213-1 at 9.) Even assuming that the three DeAgano plaintiffs are related parties for purposes of PTO 63, they were not the only plaintiffs to join their action. Instead, they pleaded their claims in the same complaint as Keith Keaghey, who bears no apparent relation to the DeAganos. (*See* Rec. Doc. 23213-5 at 1–2 (describing the DeAganos as residing in Kenner, Louisiana and being exposed while on vacation in Florida, and Mr. Keaghey as a resident of Houma, Louisiana, exposed in oil field production work).) Thus the DeAgano Plaintiffs have not filed an individual complaint and failed to comply with PTO 63.

### C. Power House Church

Power House Church failed to comply with PTO 63 and has already dismissed all of its claims against BP with prejudice. Nonetheless, it asks the Court to (1) correct its case number in Exhibit 2 to the PTO 63 Compliance Order to 16-4322 and (2) deem it compliant with PTO 63. Its motion should be denied.

Power House Church filed at least two actions in MDL 2179 (16-4322 and 16-15258) in connection with the *Deepwater Horizon* spill. In neither case, however, did it comply with PTO 63. Power House Church's claims were properly dismissed by the PTO 63 Compliance Order for failure to adequately complete the PTO 63 sworn statement, specifically for failure to provide any response to the Court's questions regarding class membership. Power House Church's motion makes no attempt to cure, or even to address at all, that deficiency, and thus its argument that its 16-4322 case number should have been included alongside its name on the list of noncompliant PTO 63 plaintiffs is thus beside the point.

14

Moreover, Power House Church has already released and dismissed with prejudice all of its claims against BP. It admits in its motion that "Plaintiff Power House Church of God Holy Ghost Power did voluntarily dismissed some of it claim [sic]," reserving only punitive damages claims against "HESI/Transocean." (Rec. Doc. 23371 ¶ VI.) On July 21, 2016, Power House Church filed a Notice of Voluntary Dismissal(s) with Prejudice (Rec. Doc. 21102), voluntarily dismissing "all actions, claims, causes of action, and short-form joinders" in MDL 2179, except for claims for punitive or exemplary damages against certain Transocean and Halliburton defendants, "pursuant to … the Full and Final Release, Settlement, and Covenant Not to Sue entered into by the parties." (*Id*. at 1.) Thus, not only has Power House Church failed to comply with PTO 63, but it has released and dismissed any possible B3 claims. Its motion should therefore be denied.

### D. *Schexnayder* Plaintiffs

The *Schexnayder* Plaintiffs' motion to reconsider argues that all of the *Schexnayder* Plaintiffs are related parties permitted to file a wrongful death action together. (*See supra* p. 5.) The *Schexnayder* Plaintiffs, however, unlike "husband and wife or co-owners of a business," (*see* PTO 63, Rec. Doc. 22295 at 4 n.1), do not appear to be closely connected such that group pleading is permissible. Each of the plaintiffs resides at a separate address. (*See generally* Ex. 1, *Schexnayder* Compl. (attaching sworn statements stating that Larry Schexnayder resides in Lockport, Louisiana; Rachel Williams resides in Galliano, Louisiana; Ferrell Schexnayder resides in Larose, Louisiana; Donna Picou resides at 445 E. 74th St., Cut Off, Louisiana; and Darlene Williams resides at 16156 Hwy. 325, Cut Off, Louisiana.) Moreover, each plaintiff appears to be pleading individual claims and not merely survivorship claims as heirs to the decedent, Gary Schexnayder. (*See id.* ¶ 132 ("***Plaintiffs and/or*** Decedent suffered bodily injury and resulting pain and suffering, disability and disfigurement, mental anguish, loss of the

15

capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition, loss of relationships, death.") (emphasis added); *id.* ¶ 177 ("Decedent ***and his heirs***, until the time of his death, suffered a disintegration and deterioration of the family unit and relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.") (emphasis added).)  Even if, as Plaintiffs assert, "it is commonplace to file survival action [sic] and wrongful death actions in one complaint," (Rec. Doc. 23207-1 at 3), Plaintiffs are not engaged in that "commonplace" practice; instead, they appear to be alleging individual claims that extend beyond survivorship and wrongful death claims.  These extended family members should not be permitted to utilize group pleading and their motion as pled should be denied.  BP would not oppose as noncompliant with PTO 63, however, an amended complaint brought by the appropriate representative ***solely*** for the decedent's claims and excluding any individual claims by other plaintiffs.

## IV.     BP Does Not Oppose The Moving Defendants' Motions To Reconsider.

Three defendants (Emergency Response Group, Inc., SWS Environmental Services, and Knight's Marine & Industrial Services, Inc.) filed motions for reconsideration in response to the PTO 63 Compliance Order.  (*See supra* p. 5-6.)  All three motions argue that the Court should reconsider including on its PTO 63 compliance list certain plaintiffs who failed to file their sworn statement into the record of their individual suits.  (*See id.*)  Although BP identified the plaintiffs at issue as materially compliant with PTO 63 because they timely served their sworn statements on BP (even if they did not timely file them),[13] it does not oppose these motions to reconsider.

---

[13]   In his response to Emergency Response Group, Inc.'s motion, Sergio Valdivieso states that "an e-mail from FileandServeXpress, dated April 11, 2017, confirm[s] that Plaintiff has in fact filed his Sworn Statement in his

16

## CONCLUSION

The vast majority of plaintiffs who have moved for reconsideration of the Court's PTO 63 Compliance Order have not demonstrated their compliance with the Court's orders nor provided any other basis for the Court to reconsider its July 18, 2017 order. With the exception of the thirteen additional PTO 63-compliant plaintiffs discussed in Section II above, plaintiffs' motions should be denied.

September 8, 2017                              Respectfully submitted,

*/s/ Don Haycraft*

Don Haycraft (Bar #14361)
R. Keith Jarrett (Bar # 16984)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
A. Katrine Jakola, P.C.
(katie.jakola@kirkland.com)
Kristopher S. Ritter
(kristopher.ritter@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

*Attorneys for BP America Production Company and BP Exploration & Production Inc.*

---

individual case . . . ." (Rec. Doc. 23365.)  But that is inaccurate:  As Amended Pretrial Order No, 12 makes clear, transmission of a document via File & ServeXpress is sufficient to *serve* a document in MDL 2179, but does not *file* the document with the Court.  (*See, e.g.*, First Amended Pretrial Order No. 12, Rec. Doc. 18627 ¶ 3 (distinguishing between a document being "filed with the Clerk of Court" and service of a document by uploading it to File & ServeXpress).)

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **BP's Response to Motions for Reconsideration of the Court's PTO 63 Compliance Order** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of September, 2017.

*/s/ Don Haycraft*
Don Haycraft