# Exhibit 1


E-SERVICE
60463264
Apr 12 2017
11:56AM
File & ServeXpress

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re:  Oil Spill by the Oil Rig "Deepwater      *      MDL NO.    2179
Horizon" in Gulf of Mexico, on

April, 20, 2010                                  *      SECTION J

                                                 *      JUDGE BARBIER

This document relates to:                               MAG. JUDGE WILKINSON
All cases in Pleading Bundle B3

                                                 *
**************************************

LARRY SCHEXNAYDER, RACHEL                               CIVIL ACTION No. _____
WILLIAMS, FARRELL SCHEXNAYDER,
DONNA PICOU, DARLENE WILLIAMS,                          SECTION J
each individually and on behalf of
GARY SCHEXNAYDER, deceased                              JUDGE BARBIER

     PLAINTIFFS,                                        MAG. JUDGE WILKINSON

VERSUS

BP AMERICA PRODUCTION COMPANY,
BP EXPLORATION & PRODUCTION INC.,
BP, P.L.C., TRANSOCEAN LTD.,
TRANSOCEAN OFFSHORE DEEPWATER
DRILLING, TRANSOCEAN DEEPWATER,
INC., TRANSOCEAN HOLDINGS, LLC,
TRITON ASSET LEASING GMHB,
HALLIBURTON ENERGY SERVICES, INC.

_____

## COMPLAINT

COMES NOW the Plaintiffs, LARRY SCHEXNAYDER, RACHEL WILLIAMS,

FARRELL SCHEXNAYDER, DONNA PICOU, DARLENE WILLIAMS, each individually

and on behalf of GARY SCHEXNAYDER, deceased, by and through undersigned counsel, and

sue the Defendants, BP EXPLORATION & PRODUCTION, INC., a Delaware corporation, BP

AMERICA PRODUCTION COMPANY, a Delaware corporation, BP, PLC., a Foreign corporation, TRANSOCEAN LTD a Swiss Corporation, TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., a Delaware corporation, TRANSOCEAN DEEPWATER INC., a Delaware corporation, TRANSOCEAN HOLDINGS LLC, a Delaware corporation, TRITON ASSET LEASING GMBH, a Foreign corporation, HALLIBURTON ENERGY SERVICES, INC. a Delaware corporation:

## PARTIES

1.      Plaintiff, LARRY SCHEXNAYDER, is a person of full age and majority who is a resident of Lockport, Lafourche Parish, Louisiana. Plaintiff, LARRY SCHEXNAYDER, falls within the appropriate class of survivors to make claims under Louisiana Civil Code articles 2315.1 and 2315.2.

2.      Plaintiff, RACHEL WILLIAMS, is a person of full age and majority who is a resident of Galliano, Lafourche Parish, Louisiana. Plaintiff, RACHEL WILLIAMS, falls within the appropriate class of survivors to make claims under Louisiana Civil Code articles 2315.1 and 2315.2.

3.      Plaintiff, FARRELL SCHEXNAYDER, is a person of full age and majority who is a resident of Laroset, Lafourche Parish, Louisiana. Plaintiff, FARRELL SCHEXNAYDER, falls within the appropriate class of survivors to make claims under Louisiana Civil Code articles 2315.1 and 2315.2.

4.      Plaintiff, DONNA PICOU, is a person of full age and majority who is a resident of Cutoff, Lafourche Parish, Louisiana. Plaintiff, DONNA PICOU, falls within the appropriate class of survivors to make claims under Louisiana Civil Code articles 2315.1 and 2315.2.

5.      Plaintiff, DARLENE WILLIAMS, is a person of full age and majority who is a resident of Cutoff, Lafourche Parish, Louisiana. Plaintiff, DARLENE WILLIAMS, falls within the appropriate class of survivors to make claims under Louisiana Civil Code articles 2315.1 and 2315.2.

6.      Decedent, GARY SCHEXNAYDER, was a resident of Larose, Lafourche Parish, Louisiana. Decedent, GARY SCHEXNAYDER, suffered injuries as a result of the Deepwater Horizon oil spill and response efforts.

7.      Defendant, BP EXPLORATION & PRODUCTION INC., a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana, whose principal business establishment and registered business office in Louisiana is 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA 70808 and whose agent for service of process is C.T. Corporation, 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA 70808.  BP EXPLORATION & PRODUCTION INC. was a leaseholder and designated operator of the Macondo well from which the oil spill originated upon which this complaint is based and was designated as a responsible party by the U.S. Coast Guard under the Oil Pollution Act of 1990, 33 U.S.C. § 2714.

8.      Defendant, BP AMERICA PRODUCTION COMPANY, a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana, whose principal business establishment and registered business office in Louisiana is 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA 70808 and whose agent for service of process is C.T. Corporation, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808.  BP AMERICA PRODUCTION COMPANY was party to the contract for the drilling of the Macondo well by the Deepwater Horizon vessel with Transocean, Ltd.

9.      Defendant, BP, P.L.C., a foreign corporation at all pertinent times doing business in the State of Louisiana and within this district through control of its wholly-owned subsidiaries BP Exploration & Production, Inc. and BP America Production Company (collectively "BP").

10.      Defendant, TRANSOCEAN LTD., a foreign corporation at all pertinent times doing business in the State of Louisiana and within this district.

11.      Defendant, TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., a Delaware corporation at all pertinent times doing business in the State of Louisiana.

12.      Defendant, TRANSOCEAN DEEPWATER, INC., a Delaware corporation at all pertinent times doing business in the State of Louisiana.

13.      Defendant, TRANSOCEAN HOLDINGS, LLC, a Delaware Corporation at all pertinent times doing business in the State of Louisiana.

14.      Defendant, TRITON ASSET LEASING GMBH, a foreign corporation at all pertinent times doing business in the State of Louisiana (collectively "Transocean" with Transocean Ltd, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., and Transocean Holdings, LLC).

15.      Defendant, HALLIBURTON ENERGY SERVICES, INC., a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana whose principal business establishment in Louisiana is 1450 Poydras St., Suite 2070, New Orleans, LA 70112 and whose registered office in the state of Louisiana is 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA 70808 and whose registered agent in Louisiana is C.T. Corporation, 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA 70808 (hereinafter "Halliburton").

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a)(4), because this matter in controversy exceeds the minimum jurisdictional amount of $75,000.00, exclusive of interest and costs, and this case is between Plaintiff and citizens of a State or of different States.

12.     Jurisdiction is also proper under 28 U.S.C. Section 1331, because the claims asserted by Plaintiffs arise under the laws of the United States of America, including the laws of various states which have been declared, pursuant to 43 U.S.C., Section 1331(f)(1) and 1333(a)(2), to be the law of the United States for that portion of the outer continental shelf from which the oil spill originated.  Federal question jurisdiction under 28 U.S.C. §1331 also exists by virtue of Plaintiff's claims brought herein which arise under the Oil Pollution Act of 1990.

13.     Pleading in the alternative, jurisdiction also exists over this action pursuant to The Admiralty Extension Act, 46 U.S.C., §30101, which extends the admiralty and maritime jurisdiction of the United States to cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

14.     Venue is proper in this District pursuant 28 U.S.C § 1391(b)(1) because one or more the defendants reside in this judicial district. Venue is also proper in this District pursuant 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged in this complaint occurred in this judicial district.

## FACTUAL ALLEGATIONS

15.     These cases arise from the April 20, 2010, loss of control of the Macondo well that was being drilled by the Deepwater Horizon drilling vessel and the related explosions on that vessel which caused it to sink and resulted in the discharge of significant amounts of oil that

spread throughout the Gulf of Mexico over a period of more than three months. They also arise due to subsequent additional negligent acts and failure of reasonable care which occurred in Florida territorial waters.

16.     At all times relevant to this action, the Deepwater Horizon, an ultra-deep water semi-submersible drilling rig, was leased to BP. At the time of its explosion on April 20, 2010, the Deepwater Horizon was being operated by BP for the purposes of drilling an exploratory well at the Macondo prospect on Mississippi Canyon Block 252 on the Outer Continental Shelf, south, west and north of Florida shores and waters.

17.     The Macondo prospect was being explored pursuant to a ten-year lease, OCS-G32306, granted by the Minerals Management Services on June 1, 2008, and owned at the time of the explosion by BP. The lease allowed BP to drill for hydrocarbons and perform oil production-related operations in the Mississippi Canyon Block 252 area which includes the Macondo prospect. BP was designated the lease operator.

### The Blowout

18.     At approximately 10 p.m. on April 20, 2010, following cementing operations aboard the vessel Deepwater Horizon, workers were finishing drilling operations for the Macondo well and displacing the drilling mud in the marine riser at the direction of BP in preparation for completion pursuant to BP's design, when they encountered an uncontrolled influx of highly pressurized hydrocarbons into the wellbore leading to a "blowout" or loss of control of the well.

19.     The combustible gas flowing uncontrolled into the wellbore traveled quickly up to the rig floor where it was ignited leading to a fiery explosion on the Deepwater Horizon.

20. Defendant, BP was unable to regain control of the well and the fiery explosions onboard the Deepwater Horizon caused the vessel to be destroyed and sink to the bottom of the Gulf of Mexico.

21. BP did not follow safe procedures, in order to save money, by electing to utilize a risky well design that provided for fewer barriers against hydrocarbon influx into the wellbore relative to well designs typically used in an unknown and troublesome formation like the Macondo prospect.

22. Due to the depth of the Macondo well, BP was also negligent in the selection of a casing material that was vulnerable to collapse under high pressure. BP's negligence in well design and casing selection allowed for an increase risk of a blowout. BP knew or should have known of those risks but chose risk over increased costs.

23. In addition to the casing-related problems, the float collar installed on the final section of casing likely failed to seal properly, which may have allowed hydrocarbons to leak into the casing, contributing to the April 20, 2010 blowout.

24. A float collar is a component installed near the bottom of the casing string on which cement plugs land during the cementing job.

25. Upon information and belief BP was negligent in operations to install the float collar and/or in neglecting warning signs of a potentially improper installation of the float collar.

26. BP was negligent in preparing the wellbore for cementing operations which led to an increased likelihood that the cement job would fail and a blowout would occur.

27. BP was negligent in electing to utilize an unsafe cement job design that was unlikely to create a secure barrier against hydrocarbon influxes into the Macondo wellbore.

28. BP was negligent in the selection of an improper cement mixture that was susceptible to failure under the high pressures and temperatures typical in the Macondo well.

29.     Negligent cementing operations failed to isolate the well bore from hydrocarbon zones and seal the bottom of the well against an influx of gas.  BP was negligent in failing to identify this bad cement job ignoring numerous warning signs in the process.

30.     Upon information and belief, the defective cement job allowed a pathway for highly pressured gas to enter the Macondo wellbore and travel rapidly from there to the rig floor.

31.     BP was negligent in the monitoring and design of the drilling mud program which failed to prevent hydrocarbons from flowing into the wellbore and up to the Deepwater Horizon.

32.     BP was negligent in the decision and design to displace the drilling mud from the marine riser before allowing time for the cement to fully set.

33.     BP was also negligent in conducting and monitoring the displacement operations, failing to recognize the many signs of trouble.

34.     BP was negligent in failing to utilize a casing hanger lockdown sleeve that would have stopped the hydrocarbons from escaping past the wellhead and reaching the rig floor.

35.     BP was negligent in failing to timely identify that hydrocarbons were entering the wellbore during displacement operations and in failing to initiate well control measures.

36.     After hydrocarbons reached the rig floor, the Blowout Preventers (BOP's) for the Deepwater Horizon, failed to activate as designed to prevent the continued uncontrolled flow of gas from the formation.

37.     The BOP utilized by BP was defective and unreasonably dangerous in their manufacture, design, and/or composition, and/or failed to contain adequate warnings and instructions.

38.     BP failed to ensure that the BOP design used on Deepwater Horizon was sufficient for the drilling conditions and program expected at the Macondo site.

39.     BP was negligent in failing to properly maintain the BOP's for the Deepwater Horizon in accordance with safe practices and federal regulations.

40.     BP failed to ensure that the BOP's possessed the necessary technology to properly function including adequate safeguards and redundant systems to prevent blowouts.

41.     BP failed to ensure that the BOP's and all related systems were properly tested to operational conditions and confirmed to be in good working order.

42.     BP was negligent in failing to properly utilize and maintain emergency systems and equipment on board the Deepwater Horizon or to supervise and/or inspect to assure same.

43.     Defendants' negligent actions and/or omissions caused the blowout of the Macondo well leading to the destruction and sinking of the Deepwater Horizon and subsequent uncontrolled discharge of oil into the Gulf of Mexico.

**<u>Uncontrolled Discharge of Oil into the Gulf and Environmental Implications</u>**

44.     After the sinking of the Deepwater Horizon, the well began to release, leak, and/or discharge oil directly into the Gulf of Mexico due to the failure of the well's cement and/or casing and the concurrent failure of the blow-out preventors.

45. Defendant, BP, recklessly, willfully and/or wantonly failed to ensure that oil would be quickly and fully contained within the immediate vicinity of the Macondo well in the event of a blowout.

46. The well discharged an estimated 50,000 to 100,000 barrels of oil into the Gulf of Mexico on a daily basis for at least 87 days.

47. The United States government has estimated that approximately 5,000,000 barrels (210,000,000 gallons) of oil gushed into the Gulf of Mexico during the months that the well was uncontained with others estimating that the well discharged upwards of 7,000,000 barrels.

48. Defendant, BP, willfully and/or wantonly failed to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled discharge from the Macondo well into the Gulf of Mexico and to prevent injuring Decedent.

49. This massive release of oil contaminated thousands of square miles of waters in the Gulf as the well flowed uncontained for three months resulting in the ban of recreational and commercial fishing by the government in many areas during that time period.

50. The oil discharged into the Gulf of Mexico from the Macondo well contained hydrocarbon molecules, carcinogens and other toxic pollutants including heavy metals which are extremely hazardous to the marine ecosystem in the Gulf of Mexico including into the environment where Decedent work, live and enjoy the recreational activities of swimming, fishing and boating.

51. After the explosions, BP attempted to downplay and conceal the severity of the Oil Spill. Government investigators have found BP's initial leak estimate of 1,000 barrels a per day to be a fraction of its measured leakage amount, which in fact exceeded 50,000 barrels per day. Additionally, an internal BP document from around the time of the spill shows that the company's own analysis had actually estimated that the rate of oil spillage could reach 100,000 barrels, or 4,200,000 gallons, per day.

52. Each day during the course of the Oil Spill, tens of thousands of barrels of crude oil gushed from the wellhead and broken riser, bubbling up to the surface and flattening out inot a widening slick of oil, as well as spreading out in vast subsurface plumes. On the surface, the shifting mass was large enough to be visible from outer spaces, at times covering tens of thousands of square miles, spreading with the wind and currents towards the Gulf States'

coastlines.

53. Beginning on or about April 30, 2010, oil made landfall along the Gulf Coast on white sand beaches, leased and privately owned subsurface areas, and in ecologically sensitive marshes and estuaries.  Underwater, immense plumes of oil and dispersant chemicals swirled through the entire water column, damaging ecosystems throughout the Gulf of Mexico.

54. The oil spewed from the well of twelve weeks until BP finally capped the well on July 15, 2010.  Ultimately, almost five million barrels (210 million gallons) of crude oil spilled in the Gulf of Mexico.

55. The crude oil carried with it significant public health risks.  Crude oil has many highly toxic chemical ingredients that can damage every system in the body.

56. Crude oil contains benzene and other volatile organic compounds ("VOCs") such as ethylbenzene, toluene, xylene and napththalene, polycyclic aromatic hydrocarbons ("PAHs"), diesel fumes and heavy metals such as aluminum, cadmium, nickel, lead and zonc, all of which can harm human health.

57. Chemicals such as benzene, PAHs and many other chemicals in crude oil are toxic and volatile, moving from the oil to the air.  Once airborne, they can blow over the ocean for miles, reaching communities far from the spill.  They may be noticed as petroleum odors.

58. Dermal exposure to certain VOCs in crude oil can cause, *inter alia*, redness, swelling, irritation, rashes and blisters on the skin and mucous membranes.  Inhalation exposure to certain VOCs in crude oil can cause, *inter alia*, coughing, throat irritation, congestion, shortness of breath and wheezing. Inhalation exposure to other OVCs in crude oil can also affect, *inter alia*, the nervous system causing, among other things, nausea, vomiting, dizziness, irritability, confusion, and weakness of extremities.  Ingestion of food or water containing VOCs from crude

oil can cause, *inter alia*, nausea, vomiting and diarrhea.

59. According to the Agency for Toxic Substances and Disease Registry ("ASTDR"), which is part of the U.S. Department of Health and Human Services, benzene is a knwn mutagen and carcinogen.  Benzene in crude oil can cause a variety of health complications, including ventricular fibrillation, congestive gastritis, toxic gastritis, pyloric stenosis, myalgia, kidney damage, skin irritation and burns, swelling and edema, vascular congestion in the brain and lethal central nervous system depression.

60. A 2007 Centers for Disease Control review of benzene toxicity concluded that there is substantial evidence that benzene causes leukemia, aplastic anemia ( precursor of leukemia), chromosomal abnormalities in lymphocyctes and bone marrow cells, damage to the immune system, and abnormal development of blood cells.  Long-term low-level oral and inhalation exposures to benzene have also caused peripheral nervous system abnormalities, distal neuropathy, difficulty sleeping and memory loss.

61. As noted by Dr. Lisa Kaplowitz of the U.S. Department of Health and Human Services in her June 15, 2010 testimony before Congress: "Oil can remain toxic in the environment for years."

62. THE OPA imposes liability upon a "responsible party for a …facility from which oil is discharged …into or upon navigable waters or adjoining shorelines" for the damages that result from such incident as well as removal costs.  33 U.S.C. §2702.

63. The U.S. Coast Guard is responsible for implementing many aspects of the OPA, including designating responsible parties, as well as responding to oil spills and supervising and/or coordinating response actions.

64. After the Oil Spill, the Coast Guard formally and/or informally designated, *inter alia*,

Defendants BP Exploration and Transocean Holdings as "responsible parties" under the OPA.

65. In the wake of the disaster, and pursuant to its duties as a responsible party under the OPA, BP began implementing a program to attempt to prevent the gushing oil from reaching the shores of the Gulf States. This disaster response plan had three primary components: offshore containment; shoreline protection; and subsea response.

66. As part of its offshore containment response program, BP directed the use of vessels to, *inter alia*, recover coming to the surface of the Gulf of Mexico; skim oil from the surface of the water; and conduct *in-situ* burning of oil that reached the surface of the water. BP also employed vessels to tow and deploy booms – floating barriers intended to contain, deflect, or hold back oil floating in the water's surface.

67. In addition, BP's response plan included the use of chemical dispersants that were intended to break down the oil into finely dispersed droplets.

68. Dispersants generally contain a solvent, a surfactant and other additives that break up the surface tension of an oil slick or sheen to make the oil more soluble in water.

69. Among other dispersants, BP applied a highly toxic form of chemical dispersant called Corexit. BP used both Corexit®9500 and Corexit®EC9527A.

70. The Material Safety Data Sheet ("Data Sheet") – a form that sets forth the properties of a particular substance, including its toxicity and health effects – for Corexit®9500 indicates that it contains hazardous substances, that it is harmful to human health, and that dermal exposure, inhalation and ingestion should be avoided. The Data Sheet further states that Corexit® 9500 is an eye and skin irritant and may irritate the respiratory tract if inhaled. If ingested, it may cause chemical pneumonia.

71. The Data Sheet for Corexit ® EC9527A also indicates that it contains hazardous

substances, it is harmful to human health, and that dermal exposure , inhalation and ingestion should be avoided.  The Data Sheet further states that Corexit® EC9527A is an eye and skin irritant and, if inhaled, may irritate the respiratory tract.  If ingested, it may cause liver and kidney effects and/or damage, or irritate the gastrointestinal tract.  Acute exposure may cause adverse central nervous system effects, nausea, vomiting, anesthetic or narcotic effects.

72. In addition, Corexit ® EC9527A contains 2-butoxyethanol, also known as EGBE. Repeated or excessive exposure to EGBE may cause injury to red blood cells, the kidneys, and the liver.  EGBE may be carcinogenic to humans.  It is an eye, nose, and throat irritant.  It can cause nausea, vomiting, diarrhea, and abdominal pain.  Exposure to EGBE can also cause headaches, dizziness, lightheadedness and unconsciousness.  Exposure to EGBE can damage a developing fetus, and chronic exposure may result in damage to male and female reproductive systems in animals.

73. Both of these Corexit® products also contain non-specified organic sulfonic acid salt, which is "moderately toxic," as well as propylene glycol, a chemical with solvent properties. Propylene glycol is an irritant and exposure to high levels of propylene glycol and mists containing this chemical can cause eye, nose, throat and lung irritation.  Some individuals are allergic to propylene glycol and those with eczema may be at higher risk.  Exposure may cause erythema, edema, induration, and other skin problems.

74. Upon information and belief, BP also authorized the application of other chemical dispersants, including PES51™ and OMI-500®, to near-shore and on-shore areas, as well as to contaminated vessels and containment equipment, to disperse the oil and clean vessels and equipment.

75. The Data Sheet for PES51™ indicates that it should be handled with gloves, that it is

14

an irritant, and that dermal exposure and ingestion should be avoided.

76. The Data Sheet for OMI-500® indicates that it is harmful to human health and that dermal exposure, inhalation, and ingestion should be avoided. Among other effects, OMI-500® can be irritating to skin and eyes and may cause irritation of the respiratory tract, typically experienced as nasal discomfort and discharge, possibly with chest pain and coughing. Headache, nausea, vomiting, dizziness, and drowsiness may occur. Exposure may also cause mild to severe irritation experienced as discomfort or pain, excess blinking and tear production, possibly with marked redness and swelling of the conjunctiva.

77. In summary, the dispersants used by BP are known to cause, *inter alia*, headaches; nausea; vomiting; diarrhea; abdominal pains; dizziness; chest pains and tightness; irritation of the skin, eyes, nose, throat and lung; breathing difficulties and respiratory system damage; asthma attacks; hypertension; damage to the liver and kidneys; central nervous system depression; neurotoxic effects; damage to red blood cells; genetic damage and mutations; reproductive and developmental damage; immune system damage; cardiac arrhythmia; cardiovascular damage; and increased severity of chronic obstructive pulmonary disease.

78. Upon information and belief, immediately after the Deepwater Horizon disaster, on or about April 23, 2010, BP began subsea and aerial application of chemical dispersants to the resulting oil slick and sheens on the surface of the Gulf. Chemical dispersants have been sprayed onto the ocean surface from aircraft that fly over spills and dispense the chemicals from cargo holds, sprayed onto the ocean surface from fountain-type jets on the docks of boats, sprayed from smaller vessels onto the surface of the water, injected immediately below the surface of the water from vessels, injected deep below the surface of the ocean, and sprayed by hand.

79. BP coordinated and directed aircraft owned and/or operated by others to fly out over

the Gulf to spot oil slicks and to spray chemical dispersants on the surface of the Gulf.

80. According to the Aerial Dispersants Operations -- Houma Status Report, as of June 26, 2010, BP made use of at least 10 spray aircraft and 8 spotter aircraft. At least four spray planes left from Houma, Louisiana. At least six spray planes left from Stennis International Airport in Mississippi. Upon information and belief, aerial dispersant sorties also would leave from airfields in Florida and were conducted and orchestrated by BP.

81. On or about May 19, 2010, the U.S. Environmental Protection Agency ("EPA") Administrator directed BP to identify and begin using chemical dispersants less toxic than Corexit®.

82. In addition to the oil that was released by BP's Macondo well, BP directed over two million gallons of chemical dispersants to be sprayed, injected or otherwise released into Gulf waters. BP had injected at least 770,000 gallons of chemical dispersants directly into the damaged wellhead and otherwise directed its contractors to apply considerable amounts of chemical dispersants directly into the Gulf of Mexico.

83. On or about May 19, 2010, the U.S. Environmental Protection Agency (EPA) Administrator directed BP within 24 hours of issuance to identify and to change to chemical dispersants that are less toxic than those dispersants that BP had been using, including Corexit®. BP refused to comply and continued using dispersants of its choice.

84. On May 20, 2010, BP objected to this order and notified the EPA that it would continue using Corexit®.

85. BP's use of chemical dispersants then skyrocketed: on May 22, 2010, BP used 45,000 gallons of dispersant and on May 23, 2010, it used 70,000 gallons of dispersant.

86. Upon information and belief, BP stopped using Nalco's Corexit® 9527 on May 23,

2010, when supplies allegedly ran out.  It relied on Corexit® 9500 thereafter.

87. On May 26, 2010, the EPA directed BP to reduce the overall use of Corexit® by 75% and to stop using chemical dispersants on the water's surface except in rare cases where an exemption was sought in writing from and approved by the On Site Coordinator.

88. BP thereafter sought more than 40 exemption requests to use chemical dispersants on the surface of the Gulf of Mexico.  According to the Aerial Dispersants Operations -- Houma Status Report, by June 26, 2010, BP had applied 933,023 gallons of dispersant by aerial application.  As of the same date, BP had ordered application of dispersant by 386 flights, or sorties, and had covered approximately 291 square miles of the Gulf with dispersant.

89. To date, BP and its contractors have used more than 1.8 million gallons of chemical dispersants in the Gulf of Mexico.

90. Defendant BP recklessly, willfully and/or wantonly failed to use ordinary care by electing to use chemical dispersants that are more toxic than others in the response efforts and thereby amplified the toxic effects on and damages of cleanup workers including Decedent named herein.

**Factual Allegations of Decedent Gary Schexnayder**

91. BP hired clean-up and response contractors, to clean up beaches, marshes, wetlands and other onshore areas.   Clean-up workers' primary tasks were to, *inter alia*, lay and haul oil containment boom, install other barriers, collect tar balls, remove polluted sand contaminated with oil and/or dispersants, assist with *in-situ* burning, spray and clean vessels that came into contact with oil, dispersants, and other harmful chemicals resulting from the Oil Spill, decontaminate oiled wildlife, and transport contaminated boom and other clean-up equipment and other Clean-up Workers.   Response workers were also hired as part of the Vessels of

Opportunity Program and other offshore cleanup and response efforts. While offshore response workers worked and often lived aboard vessels engaged in oil-skimming and boom retrieval, containment and deployment activities, oil burning activities, and location of oil slicks.

92. Decedent was assigned to vessels that operated out of ports in Venice, Louisiana in Plaquemines Parish, Louisiana.

93. As part of these efforts, clean-up workers and response workers, including Decedent, came into contact with crude oil, chemical dispersants and oil/chemical mixtures. Even more disturbing, BP's aerial spray planes negligently and/or intentionally sprayed chemical dispersants on the water despite the presence of boats and crew in the vicinity of the spraying.

94. Upon information and belief, Decedent was not outfitted with respirators or equivalent safety devices. He attempted to use respirators while working, but BP prevented him from doing so and threatened him with loss of his clean-up jobs if he did not abide by the instruction.

95. Decedent working as a clean-up and offshore response worker was exposed to oil and dispersants by, *inter alia*, inhalation, ingestion, dermal exposure, and through contact with the eyes from spray mist. Many of the chemicals in crude oil and the dispersants to which Decedent was exposed target the organs in the human body, and this increases the risk and may also increase the severity of harm. The dispersants that were used also can increase the uptake or dose of crude oil chemicals and movement of chemicals into critical organs. Moreover, the odors emanating from the oil and/or the dispersants are foul, and the fumes are harmful.

96. The negative health effects caused by exposure to oil, dispersants, and/or some mixture of the two are varied and can cause a wide range of diseases and conditions. Some of

these diseases, conditions, and symptoms may be evident immediately or within several days, and others can appear months or years later.

97.   Decedent, Gary Schexnayder, worked aboard a vessel that participated in the Vessels of Opportunity program as part of the oil spill disaster response.   Mr. Schexnayder was employed aboard this vessel from on or about June 2010 until on or about September 2010. The vessel to which Mr. Schexnayder was assigned operated out of ports in Venice, Louisiana.

98.   Mr. Schexnayder worked upon a vessel charged with locating oil slicks, and retrieval of oiled boom.  While employed aboard the vessel, Mr. Schexnayder retrieved absorbent boom that was saturated and contaminated with crude oil and dispersants from the Gulf of Mexico. The vessel he was employed upon was deployed initially to a grid located in the Breton Bay and Chandelier Islands area.  The vessel was later deployed to a grid located in the Breton Bay and SouthPass Bay area.    The oiled absorbent boom that Mr. Schnexnayder and other crew members removed from the Gulf of Mexico was piled upon the vessel's deck.  No container system was available for the oiled boom. Mr. Schnexnayder lived aboard the vessel for the duration of his employment.

99.   Based upon information and belief, the BP Defendants failed to provide Mr. Schexnayder with a respirator or other protective equipment and failed to warn him of the toxic, harmful and deleterious health effects of exposure to crude oil and chemical dispersants via inhalation and dermal contact.  Based upon information and belief, the BP defendants failed to provide adequate safety training to Mr. Schexnayder.  Based upon information and belief, air quality control tests were taken by or for the BP defendants aboard the vessel where Mr. Schexnayder was employed.   Mr. Schexnayder requested the results of the air quality testing, but was denied access or information related to said tests.

100. Based upon information and belief, Mr. Schexnayder suffered toxic exposure to crude oil and chemical dispersants via inhalation, dermal contact and by contact with the eyes through dispersant spray mist. Based upon information and belief, Mr. Schexnayder developed short-term and long-term negative health effects due to his occupational exposure as a cleanup worker for the Deepwater Horizon oil spill disaster. Mr. Schexnayder suffered from diarrhea, vomiting, nausea, severe stomach aches and abdominal pain, severe headaches, dizziness, facial rash, trouble breathing, and ear aches.

101. Mr. Schexnayder opted out of the Deepwater Horizon Medical Benefits Settlement. Plaintiffs assert the following claims: (1) negligence under general maritime law; (2) gross negligence under general maritime law; (3) negligence per se under general maritime law, state and federal law; (4) claims under Louisiana nuisance law; (5) Jones Act or in the alternative under the Longshore and Harbor Workers' Compensation Act; (6) negligence, gross negligence and/or failure to warn under Louisiana, Mississippi Law; (7) battery; (8) breach of contract; (9) survival; (10) wrongful death; (11) punitive damages.

## CLAIMS FOR RELIEF

### COUNT I
### Negligence Under General Maritime Law

102. Plaintiffs reallege paragraphs 1 through 101 as if fully set forth herein and further states:

103. The existence and breach of Defendants' legal duties are established under general maritime law.

104. At all times material hereto, Defendants owed duties of ordinary and reasonable care to Decedent in connection with the drilling operations and maintenance of the Deepwater

Horizon, including its appurtenances and equipment. BP additionally owed duties to guard against and/or prevent the risk of an oil spill and to mitigate the harm if an oil spill did occur.

105. Further, Defendants owed a duty to Decedent to exercise due care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures.

106. Defendants had a heightened duty of care to Decedent because of the great danger associated with exposure to oil, dispersants, and/or other hazardous chemicals.

107. At all times relevant to this litigation, Defendants knew or should have known that: (a) crude oil contains chemicals hazardous to human health; (b) chemical dispersants contain chemicals hazardous to human health; (c) Decedent was entitled to adequate and timely warning of the harmful effects of exposure to crude oil and chemical dispersants and the hazardous substances that crude oil and dispersants contain; and (d) Decedent should have been provided proper protective clothing and respirators when engaged in Oil Spill clean-up and response activities; and (d) failure to exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures would result in harm to Decedent.

108. Defendants breached its duty of care to the Decedent in the following non-exclusive respects:

    a)     failing to prevent the explosion on board the Deepwater Horizon;

    b)     failing to cap the Macondo well in a timely manner;

    c)     failing to warn Decedent, public officials, and government agencies of the harmful effects of crude oil, chemical dispersants and any mixture thereof, and the hazardous chemicals they contain;

d) failing to properly train and equip cleanup and response workers to avoid exposure to hazardous substances encountered in connection with relief efforts;

e) failing to conform to the provisions of the National Contingency Plan relating to the use of aerial chemical dispersants in the proximity of vessels and shallow waters;

f) failing to coordinate and conduct aerial spraying sorties in a manner so as to eliminate the risk of vessels and crewmembers being exposed to aerial chemical dispersants; and

g) failing to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures;

h) failing to operate the Deepwater Horizon in a safe manner;

i) operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

j) failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

k) failing to promulgate, implement, and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon, which, if they had been promulgated, implemented, and enforced, would have averted the fire, explosion, sinking, and oil pill;

l) failing to adhere to applicable safety, construction, and/or operating regulations, including, but not limited to, regulations designed to prevent the fire, explosion, and discharge of oil;

m) failing to properly design and/or engineer the well, drilling program, cementing program, mud program and completion program;

n)      failing to take appropriate action to avoid or mitigate the accident;

o)      negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

p)      failing to properly train their employees;

q)      failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

r)      failing to timely warn; Failing to provide respiratory and dormal protective gear to Decedent;

s)      failing to provide all reasonable cooperation and assistance requested by the responsible officials in connection with the clean-up and removal activities;

t)      failing to ensure that adequate plans, equipment, safeguards, resources and technology were readily available to prevent and/or mitigate the effects of the loss of control of a well and unfettered discharge of oil into the Gulf of Mexico;

u)      failing to timely bring the oil release under control, to prevent the spill from migrating throughout the Gulf of Mexico;

v)      failing to provide appropriate accident prevention equipment; Failing to ensure that the casing and float collar were properly designed and installed;

w)      providing BOP's that failed to properly function;

x)      failing to ensure that BOP's would work as intended;

y)      failing to test the BOP's to ensure that they would operate properly;

z)      recklessly altering the BOP's and failing to use them in a safe manner;

aa)      failing to conduct well cementing operations properly;

bb)     failing to employ alternative cementing operations in light of known problems with the actual cementing operations employed;

cc)     failing to have a reasonably adequate well control plan and necessary equipment in case of a loss of the well;

dd)     failing to exercise reasonable care in the design and implementation of both well control efforts and response and recovery efforts;

ee)     failing to insure that adequate plans, equipment, safeguards resources, and technology were available to prevent or mitigate the quantity of hazardous chemicals that would enter into and effect the Gulf of Mexico.

ff)     recklessly using dispersants so as to cause the greatest migration and widest potential for environmental toxic exposures and effects throughout the Gulf.

109.    The blowout and explosions on the Deepwater Horizon, its sinking and the resulting spill were caused by the joint and concurrent negligence of the Defendants.

110.    Defendants' breach of their duties posed an unreasonable risk of harm to Decedent.

111.    Decedent suffered injury, loss, death and damages as a direct and proximate result of Defendants' breach of their aforementioned duties.

## COUNT II
## Gross Negligence Under General Maritime Law

112.    Plaintiffs reallege paragraphs 1 through 101 as if fully set forth herein and further states:

113.    Defendants had a heightened duty of care to Decedent because of the great danger associated with exposure to oil, dispersants, and/or other hazardous chemicals.

114.    Defendants breached their legal duty to Decedent and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the negligent failure to prevent and contain the oil spill.

115.    Defendants knew or should have known that their willful, wanton, and reckless conduct would cause injury to Decedent.

116.    Defendants' willful, wanton, reckless, and/or grossly negligent conduct is the factual and legal cause of Decedent's injuries and damages.

117.    Defendants were aware at all times relevant hereto that their operations and the acts and/or omissions described above created an unreasonable risk of harm to the Decedent and knew that catastrophic environmental destruction and economic loss would occur if the well being serviced by the Deepwater Horizon were to blow out.

118.    Defendants were indifferent to this risk of harm.  Defendants intentionally failed to perform the duties owed to Decedent in reckless disregard of the consequences their actions and/or omissions would have on Decedent.

119.    Moreover, Defendants acted intentionally with knowledge that their acts would probably result in injury or in such a way as to allow an inference of a reckless disregard of the probable consequences of their acts.  Therefore, Defendants are also liable to Decedent for gross negligence and/or willful misconduct.

120.    The oil spill and subsequent response and recovery efforts that have caused damage and continue to cause damage to Decedent was proximately caused by Defendants' negligence, gross negligence and/or willful misconduct.

121.    Further, upon information and belief, the oil spill was proximately caused by the Defendants' violation of applicable federal safety, construction, or operating regulations and/or

by violations of such regulations by an agent or employee of the Defendants and/or a person acting pursuant to a contractual relationship with Defendants.

122.    Defendants had a duty to conform their conduct in such a manner as to assure that a blowout would not occur, that the Deepwater Horizon would not be destroyed and sink, that an uncontrolled oil spill would not result and that adequate well control and response measures would exist in case of emergency pursuant to federal and Louisiana, Mississippi, Alabama and Florida law.

123.    Defendants failed to conform their conduct to the appropriate legal standard, thereby breaching their duty to assure that a blowout would not occur, that the Deepwater Horizon would not be destroyed and sink, that an uncontrolled oil spill would not result and that adequate well control and response measures would exist and be properly implemented in case of emergency pursuant to federal and Louisiana, Mississippi, Alabama and Florida law.

124.    Defendants' substandard conduct in failing to prevent the blowout, the ensuing destruction and sinking of the Deepwater Horizon, and the uncontrolled discharge of oil from the Macondo well into the Gulf of Mexico pursuant to federal and state laws was the cause-in-fact of the injuries, harm, and damages suffered by the Decedent.

125.    Defendants' substandard conduct in failing to prevent and/or contain the blowout that resulted in the sinking of the Deepwater Horizon and the subsequent oil spill from the Macondo well was the legal cause of the Decedent's injuries, harm, and damage.

126.    In addition, and/or in the alternative, the blowout, fire, explosion, destruction of the Deepwater Horizon and ensuing oil spill were caused by defective equipment and would have been prevented by non-defective equipment, including the BOP and float collar, which were in the care, custody, and control of the Defendants and over which the Defendants had

*garde*. Defendants knew or should have known of these defects and Defendants are therefore liable for the defects.

127.    BP has taken responsibility for the oil spill and cleaning up the oil spill, as former BP Chief Executive, Tony Hayward, had issued a statement on the BP website that BP is "… taking full responsibility for the spill and we will clean it up." BP has therefore admitted its liability for the oil spill.

128.    BP's duties are non-delegable.

129.    It was foreseeable that the Defendants' actions and/or omissions, resulting in the blowout of the Macondo well, the sinking and destruction of the Deepwater horizon, and the ensuing uncontrolled oil spill from the Macondo well, would proximately cause the damage, injury, and harm that Decedent suffered, as alleged herein.

130.    The injuries to the Decedent were also caused by or aggravated by the fact that Defendants failed to take reasonably necessary actions to mitigate the dangers associated with their operations.

131.    As a direct and proximate result of the Defendants' negligence and gross negligence, Plaintiffs and Decedent have suffered significant physical, economic and other damages in excess of $75,000.00.

132.    As a direct and proximate result of the negligence of the Defendants, the Plaintiffs and/ or Decedent suffered bodily injury and resulting pain and suffering, disability and disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition, loss of relationships, death. These losses are either permanent or continuing in nature and Plaintiffs will continue to suffer these losses in the

future.  Decedent's physical injuries required medical care in the past and will likely require on going care in the future. The Defendants are liable jointly and severally for Plaintiff's and Decedent's damages resulting from Defendants negligence and gross negligence**.**  As a result of Defendants' gross negligence, Plaintiffs are  also entitled to punitive damages.

## COUNT III
### Negligence Per Se Under General Maritime Law, State and Federal Law

133.    Plaintiffs realleged paragraphs 1 through 103 as if fully set forth herein  and further states:

134.    Defendants' conduct with regard to the manufacture, maintenance and/or operation of oil-drilling vessels such as the Deepwater Horizon, the release of hazardous and toxic chemicals into the environment, and the application of dispersants and other hazardous chemicals is governed by federal laws and permits issued under the authority of these laws. These laws and permits create statutory and regulatory standards that are intended to protect and benefit Decedent, including, but not limited to, those that govern the National Oil and Hazardous Substances Contingency Plan, *see, e.g.* 40 C.F.R.§300.150.   BP failed to adhere to the requirements for response actions established by the National Contingency Plan, 29 C.F.R. §1910.120.  Additionally, BP failed to adhere to regulations set forth in Section 311 of the Clean Water Act, 40 C.F.R. §300 App. E, 30 C.F.R. Part 254 and the Oil Pollution Act, 33 U.S.C. §2717(b) (the "OPA").  One or more of Defendants violated these statutory and/or regulatory standards and therefore breached their responsibilities under these regulatory provisions.

135.    In addition, the federal Bureau of Safety and Environmental Enforcement ("BSEE") found that BP violated the following federal regulations:

a)      BP failed to protect health, safety, property, and the environment by failing to perform all operations in a safe and workmanlike manner, in violation of 30 C.F.R. §250.107(a)(1);

b)      BP did not take measures to prevent unauthorized discharge of pollutants into offshore waters, in violation of 30 C.F.R. §250.300.;

c)      BP failed to take necessary precautions to keep the well under control at all times, in violation of 30 C.F.R. §250.401(a);

d)      BP did not cement the well in a manner that would properly control formation pressures and fluids and prevent the direct or indirect release of fluids from any stratum through the wellbore into offshore waters, in violation of 30 C.F.R. §250.420(a)(1) and (2);

e)      BP failed to conduct an accurate pressure integrity test, in violation of 30 C.F.R. §250.427;

f)      BP failed to maintain the Deepwater Horizon's BOP system in accordance with the American Petroleum Institute's Recommended Procedure 53 §18.10.3, in violation of 30 C.F.R. §250.446(a);

g)      BP failed to obtain approval of the Temporary Abandonment procedures it actually used at the Macondo well, in violation of 30 C.F.R. §250.1721(a);

h)      BP failed to conduct an accurate pressure integrity test at the 13-5/8" liner shoe, in violation of 30 C.F.R. §250.427; and

i)      BP failed to suspend drilling operations at the Macondo well when the safe drilling margin identified in the approval application for the permit to drill was not maintained, in four separate violations of 30 C.F.R. §250.427 (b).

136.     Defendants' violations of these statutory and/or regulatory standards constitute negligence per se under federal law, as well as general maritime law.

137.     Defendants' violations of these statutory and/or regulatory standards constitute negligence *per se* under Louisiana, Texas, Mississippi, Alabama and Florida Law.

138.     Defendants had actual and/or constructive knowledge of the facts and circumstances leading to and causing the incidents described herein, which in turn caused Plaintiff's and Decedent's injuries, and their actions and inactions were grossly negligent, reckless, willful and/or wanton.

139.     As a direct and proximate cause of Defendants' violation of statutory and/or regulatory standards, the Plaintiffs and Decedent have suffered injuries and is entitled to damages.

## COUNT IV
## Claims under Louisiana Nuisance Law

140.     Plaintiffs reallege paragraphs 1 through 101 as if fully set forth herein  and further state:

141.     BP's oil disaster has significantly interfered with Decedent's right to use and enjoy the Gulf of Mexico without oil slicks, chemical dispersants, tar balls, and other associated pollution.

142.     Prior to the *Deepwater Horizon* disaster, Decedent enjoyed the use of the Gulf of Mexico for fishing, boating, and other economic and recreational pursuits, including residing on the Gulf of Mexico.

143.     As a direct and proximate cause of the oil disaster, and during their work to assist in the relief effort, Decedent was exposed to harmful chemicals in the crude oil and in the chemical dispersants at levels, amounts, and under conditions different from the general public.

144.   Moreover, Decedent was subjected to foul and harmful odors emanating from the crude oil soaked booms and/or the chemical dispersants.

145.   Plaintiffs have a substantial likelihood of success based on the allegations, and Plaintiffs' allegations are likely to be proven and are not merely speculative.

## COUNT V
## Jones Act Claims against BP

146.   Plaintiffs reallege paragraphs 1 through 101 as if fully set forth herein  and further states:

147.   Plaintiffs assert a claim pursuant to the Jones Act under 46 U.S.C.  § 688. Plaintiffs assert this claim against the BP defendants.

148.   Decedent was injured while employed on vessels engaged in commerce and navigation on navigable waters, performing service work entailing inspection and maintenance of vessel appurtenances, and their injuries bear a significant relationship to maritime activity, thus invoking general maritime law and the Jones Act under 46 U.S.C. § 688.

149.   During this time, Decedent was a Jones Act seaman because (1) his duties contributed to the function of the vessel and to the accomplishment of its mission, and (2) his connection to the navigational vessels was substantial in duration and nature.  *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995).  Alternatively, Decedent was a maritime worker entitled to compensation under the Longshore and Harbor Workers' Compensation Act (LHWCA) codified at 33 U.S.C. §§ 901-950 (2003).  *Id.* at 356.

150.   A third person who borrows a worker may become the Jones Act employer if the borrowing employer assumed sufficient control over the worker.   Factors indicating control include payment, direction and supervision of the employees, and the power to hire and fire.  See *Volykis v. M-V Isabelle*, 668 F.2d 863 (5th Cir. 1982).  See also *Ruiz v. Shell*

*Oil Co.*, 413 F.2d 310 (5th Cir. 1986). The defendants were the employers as these defendants directed the work performed by Decedent, controlled payment and exercised the power to hire and fire Decedent. An employer may be liable under the Jones Act although he is not the owner or operator of the vessel as to which his employee is a seaman. *Id*. Therefore, Plaintiffs may prosecute this Jones Act claims against the BP defendants, although BP did not own or operate the vessel upon which Decedent was employed.

### COUNT VII
### Negligence, Gross Negligence and/or Failure to Warn Under
### Louisiana, Mississippi and Florida Law

151. Plaintiffs reallege paragraphs 1 through 101 as if fully set forth herein and further states:

152. Plaintiffs asserts that Defendants are jointly and severally liable for damages under Louisiana law against all Defendants for grossly negligent and/or intentional failure to conduct reasonable inspection and to do what they should have done and for grossly negligent and/or intentional failure to warn.

153. Defendants owed and breached duties of reasonable care to ensure the safety of their operations and to guard against and prevent injury to the disaster response workers such as Decedent who were located in the environments where Defendants chemical spraying activities occurred.

154. Defendants owed a duty and failed in their duty to know what products they were spraying or applying onto the waters of the Gulf of Mexico and into the environment where Decedent was located and to know the likely impact that their activities would have upon the environment and the health and welfare of disaster response workers such as Decedent. Defendants applied the chemicals and dispersants without regard to the likely short and long

term impacts upon human health likely to be caused by the quantity and geographic broad scope of their chemical applications onto hydrocarbons.

155.    Defendants owed a duty and breached the duty to spray chemicals onto the waters of the Gulf of Mexico and into Decedent's environment in a way which was consistent with their product labels.

156.    Defendants owed a duty, and breached the duty, to warn of the effects of their spraying activities to Decedent and all those who would be potentially injured or damaged by their activities in a time frame which would have allowed Decedent to attempt to stop or reduce the quantity or location of the spraying activities, or alternatively to devise plans to mitigate or prevent damage to the Decedent's health and environment.

157.    Defendants owed a duty to reject spraying huge quantities of dispersants onto the Gulf and into Decedent's environment in order to protect the environment where Decedent was located and the safety, health and welfare of disaster response workers. Defendants knew or should have known that they would be spraying quantities of chemicals over volumes of water in ways which had never been tested for affect.  Defendants breached that duty of reasonable care.

158.    Defendants owed a duty and failed in its duty of exercising reasonable care in the use of dispersants repetitiously in the same and contiguous areas, and in the type of the dispersants used.

159.    Defendants owed a duty and failed in that duty to mitigate the damages caused by the negligent activities in order to prevent its harm or to reduce the quantity of hazardous chemicals that would enter into and effect the Gulf of Mexico and the health, safety and welfare of Decedent.

160.    Defendants owed a duty and failed in that duty to warn Decedent of the deleterious health effects of crude oil and dispersants.

161.    Defendants owed a duty and failed in that duty to provide Decedent who was providing disaster response services with proper protective equipment, including, but not limited to respirators.

162.    Defendant knew or should have known that burning crude oil would negatively impact the health, safety and welfare of Decedent and did not bother to warn Decedent of the dangers associated with exposure to fumes from burning crude oil.

163.    Defendants owed a duty and failed in that duty to conduct air monitoring and sampling aboard the vessels and in areas where Decedent was employed.

164.    Defendants owed a duty and failed in that duty to provide adequate safety equipment, including respirators, to Decedent.

165.    Defendants owed a duty and failed in that duty to provide adequate safety training and warning to Decedent.

166.    As a direct and proximate result of the negligence of the Defendants, Decedent was physically exposed to the subject chemicals on their bodies and via inhalation.  Decedent was injured as a result of said exposure, suffered bodily injury and resulting pain and suffering, disability and disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition and death.  Defendants are liable jointly and severally for Plaintiff's and Decedent's damages resulting from Defendants' negligence.

## COUNT VIII
### Battery

167.    Plaintiffs reallege paragraphs 1 through 101 as if fully set forth herein and further states

168.    Defendants placed Decedent on vessels of opportunity Programs without adequate training, warning of risks, or safety equipment.

169.    Defendants intentionally sprayed, and/or directed spraying, chemical dispersants in the immediate vicinity of Decedent.

170.    Defendants' spraying of chemical dispersants in the immediate vicinity of Decedent without safety equipment has caused Decedent to be exposed to harmful chemicals and resulted in serious injury and death.

171.    Defendants spraying of chemical dispersants in the immediate vicinity of Decedent without warning caused Decedent to be exposed to harmful chemicals and resulted in serious injury and death.

172.    Plaintiffs are entitled to judgment finding Defendants liable to Plaintiffs and Decedents for damages suffered as a result of subjecting Decedent to unwanted, offensive conduct and enjoining Defendants' tortious conduct toward Decedent.

## COUNT IX
### Breach of Contract

173.    Plaintiffs reallege paragraphs 1 through 101 as if fully set forth herein and further states:

174.    Plaintiffs seek any and all compensation that might be owed by Defendant BP under a VoO or other similar Charter Agreement or other contract, relating to the Decedent's clean-up efforts.

## COUNT X
## Survival Action

175.     Plaintiffs hereby incorporate by reference the allegations of this Complaint contained in each of the preceding paragraphs as if fully stated herein.

176.     As a result of the foregoing acts and omissions, Decedent, prior to his death, was obligated to spend various sums of money to treat his injuries, which debts have been assumed by Plaintiffs. As a direct and proximate cause of the foregoing acts and omissions, Decedent was caused pain and suffering, mental anguish and impairment of the enjoyment of life, until the date of his death; and as a direct and proximate cause of the foregoing acts and omissions, Decedent suffered a loss of earnings and earning capacity.

177.     As a result of the foregoing acts and omissions, Decedent and his heirs, until the time of his death, suffered a disintegration and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.

178.     As a result of the foregoing acts and omissions, and including the observance of the suffering and physical deterioration of Decedent until the date of his death, Plaintiffs have and will continue to suffer permanent and ongoing psychological damage which may require future psychological and medical treatment. Plaintiffs fall within the appropriate class of survivors who may bring this claim under Louisiana Civ. Code article 2315.1.

## COUNT IX
## Wrongful Death

179.     Plaintiffs hereby incorporate by reference the allegations of this Complaint contained in each of the preceding paragraphs as if fully stated herein.

180.     As a result of the foregoing, on April 20, 2013, Decedent, died from complications proximately related to the Defendant's wrongful acts.

181.    Decedent left heirs, next-of-kin and/or distributes surviving who, by reason of the Decedent's death have suffered a pecuniary loss including, but not limited to support, income, services and guidance of the Decedent, and were all permanently damaged thereby.

182.    At all times herein mentioned, the actions of the named Defendants and their agents, servants, and /or employees, were wanton, grossly negligent, reckless and demonstrated a complete disregard and reckless indifference to the safety and welfare of the general public and to the decedent in particular.

183.    As a result of the foregoing acts and omissions the Decedent did require more health care and services and did incur medical, health, incidental and related expenses

## COUNT X111
## Punitive Damages

184. Plaintiffs hereby incorporate by reference the allegations of this Complaint contained in each of the preceding paragraphs as if fully stated herein.

185.    Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the *Deepwater Horizon*.

186.    Defendants engaged in conduct so reckless, willful, wanton and in such utter and flagrant disregard for the safety and health of the public and the environment in their activities leading up to and/or during the blowout, explosions, fire, and Spill, as alleged herein, that an award of punitive damages against them at the highest possible level is warranted and necessary to impose effective and optimal punishment and deterrence. Decedent, society and the environment cannot afford and should never be exposed to the risks of another disaster of the magnitude caused by Defendants' misconduct herein.

187.    Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the Deepwater Horizon by performing a critical well pressure test with untrained and unqualified personnel and by callously ignoring and/or misinterpreting abnormal "red flag" pressure test results.

188.    Defendants' corporate culture caused and allowed it to disregard the lessons it should have learned and applied from previous incidents at its facilities that resulted in extensive damage and loss of live; instead, it continued to place others at risk in the interests of cost-cutting and financial gain.

189.    Defendants callously and with reckless disregard for human life disabled the flammable gas alarm system aboard the Deepwater Horizon and prevented said system from operating properly and preventing or containing the explosions, fire and loss of life.

190.    Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the Deepwater Horizon by using a well design with too few barriers to gas flow.

191.    Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the Deepwater Horizon by failing to use a sufficient number of "centralizers" to prevent channeling during the cement process.

192.    Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the Deepwater Horizon by failing to run a bottoms up circulation of the drilling mud prior to beginning the cement job.

193.     Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their highly dangerous activities on the Deepwater Horizon by using an inappropriate cement mixture for the type of rock formation surrounding the well, and by failing to appropriately test that cement mixture prior to using it in the well.

194.     Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their highly dangerous activities on the Deepwater Horizon by failing to run a cement bond log to evaluate the integrity of the cement job.

195.     Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their highly dangerous activities on the Deepwater Horizon by failing to deploy the casing hanger lockdown sleeve prior to commencing the mud displacement process in the well.

196.     Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their highly dangerous activities on the Deepwater Horizon by using an untested, abnormally large volume of mixed spacer solutions to avoid having to properly dispose of the two separate spacer substances as hazardous wastes.

197.     Defendants focused primarily on profit while disregarding public and environmental health and safety while undertaking their highly dangerous activities on the Deepwater Horizon by ignoring and/or misinterpreting abnormal, "red flag" pressure test results.

198.    Defendants recklessly, willfully and/or wantonly caused or contributed to the catastrophic Spill by their grossly inadequate maintenance, and reckless and improper operation and use of the BOPs appurtenant to the Deepwater Horizon.

199.    Defendants recklessly, willfully and/or wantonly failed to ensure that oil would expeditiously and adequately be contained within the immediate vicinity of the Deepwater Horizon in the event of a blowout.

200.    Defendants recklessly, willfully and/or wantonly caused or contributed to the catastrophic Spill through their collective and respective disregard for proper drilling, casing, mudding, and cementing procedures.

201.    Defendants willfully and/or wantonly failed to ensure that that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects an uncontrolled oil spill into the waters of the Gulf of Mexico.

202.    Defendants recklessly, willfully and/or wantonly failed to utilize reasonably safe dispersant chemicals in its haphazard attempts to respond to the Spill, and thereby exacerbated and worsened the pollution of the Gulf of Mexico.

203.    In addition, after the blowout and before the well was finally sealed, BP was aware of procedures that would immediately block the flow of oil into the Gulf, yet it delayed the implementation of any such procedures, and limited its efforts to plug the well to options that would salvage the well for future use, instead of selecting procedures that would stop the flow of oil as soon as possible regardless of the well's continued functionality. As such, BP increased the magnitude of, and damage caused by, the Spill by willfully and/or wantonly and recklessly choosing its profits over the lives of the workers on the vessel, the safety of the environment, and the health, welfare, and value of the people, businesses, and property of the Gulf states.

204.   Defendants' conduct was oppressive, wanton, malicious, reckless, or grossly negligent each time they:

a)      failed to properly maintain and/or operate the Deepwater Horizon;

b)      operated the Deepwater Horizon in such a manner the safety and integrity of the vessel and the well were disregarded to save time and money;

c)      ignored warnings that the integrity of the well, the cementing job, and the vessel were in jeopardy;

d)      failed to promulgate, implement, and enforce proper rules and regulations to ensure the safe operations of the Deepwater Horizon;

e)      violated MMS regulations for the safe design and operation of oil wells and drilling rigs in the Gulf of Mexico;

f)      failed to take appropriate action to avoid or mitigate the accident;

g)      failed to implement policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

h)      failed to ensure that the Deepwater Horizon and its equipment were free from defects, properly maintained and/or in proper working order;

i)      failed to provide appropriate disaster prevention equipment;

j)      failed to have an appropriate emergency spill response plan or readily available spill response equipment.

205.   Defendants recklessly, willfully and/or wantonly caused or contributed to Decedent's injuries by their tortious design, and reckless and wanton operation and use of chemical dispersants.

206.    Defendants recklessly, willfully and/or wantonly failed to ensure that Decedent would be adequately protected from exposure to harmful chemicals in oil, chemical dispersants, and other harmful chemicals resulting from the Oil Spill.

207.    Defendants willfully and/or wantonly failed to ensure that that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters of the Gulf of Mexico and the corresponding clean up response measures involving the use of chemical dispersants.

208.    Defendants recklessly, willfully and/or wantonly failed to utilize reasonably safe dispersant chemicals in its haphazard attempts to respond to the Oil Spill, and thereby exacerbated and worsened the pollution of the Gulf of Mexico.

209.    Defendants' conduct, as described more fully hereinabove, is at the highest level of reprehensibility, warranting and necessitating the imposition of punitive damages at the highest level, because Defendants' conduct was motivated by financial gain; because it injured and endangered human and environmental health and safety; because it caused devastating damage and loss to the livelihoods, businesses, and properties of Decedent; because it was not isolated or accidental, but part of a culture and ongoing pattern of conduct that consistently and repeatedly ignored risks to others in favor of financial advantage to Defendants; and because it has accordingly caused societal harm, moral outrage and condemnation, and the need to punish Defendants and deter further repetition by Defendants or others.

210.    Accordingly, Plaintiffs are entitled to an award of punitive damages in an amount to be determined at trial.

## DAMAGES

211.    Defendants are jointly, severally and solidarily liable for the past, present and future damages suffered by Plaintiff in the following non-exclusive particulars:

a)      loss of enjoyment of life;

b)      physical disability, pain and suffering;

c)      past and future mental pain and suffering;

d)      past and future loss of income and benefits;

e)      past and future medical expenses;

f)      loss of family relationships, love and affection;

g)      damages caused by Defendant BP's breach of contract;

h)      punitive damages to be set by a jury; and

i)      Any other damages available under state or federal law that may be proven

at trial.

WHEREFORE, Plaintiffs demands judgment against Defendants in an amount which will adequately compensate them for actual damages herein.   In addition, Plaintiffs seek punitive damages against Defendants, the amount of said punitive damages to be set by a jury.  Plaintiffs also seeks pre-judgment and post-judgment interest, costs, attorney's fees, along with any other damages available, and demand trial by jury of all issues triable as of right by jury.

April 11, 2017                     Respectfully submitted,

By: */s/   Merritt E. Cunningham*
Michael G. Stag, Esquire
        Louisiana Bar Number:  23314
        mstag@smithstag.com
Merritt E. Cunningham
        Louisiana Bar Number:  32843
        mcunningham@smithstag.com
 Ashley M. Liuzza, Esquire
        Louisiana Bar Number: 34645
        aliuzza@smithstag.com
 Stephen H. Wussow, Esquire
        Louisiana Bar Number: 35391

swussow@smithstag.com
Matthew D. Rogenes, Esquire
        Louisiana Bar Number: 36652
        mrogenes@smithstag.com
SMITH STAG, L.L.C.
365 Canal Street, Suite 2850
New Orleans, Louisiana  70130
(504) 593-9600 telephone
(504) 593-9601 facsimile

Kelley B. Stewart, Esquire
    Florida Bar Number:  492132
    kstewart@krupnicklaw.com
Michael J. Ryan, Esquire
    Florida Bar Number:  975990
    mryan@krupnicklaw.com
Joseph J. Slama, Esquire
        Florida Bar Number:  476171
        jslama@krupnicklaw.com
Jesse S. Fulton, Esquire
        Florida Bar Number:  112495
        jfulton@krupnicklaw.com
Kevin A. Malone, Esquire
        Florida Bar Number:  224499
        kmalone@krupnicklaw.com
Carlos A. Acevedo, Esquire
        Florida Bar Number:  0097771
        cacevedo@krupnicklaw.com
KRUPNICK CAMPBELL MALONE
BUSER SLAMA HANCOCK LIBERMAN, P.A.12
S.E. 7th Street, Suite 801
Ft. Lauderdale, Florida  33301-3434
(954) 763-8181 telephone
(954) 763-8292 facsimile

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Complaint has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of April 2017.

s/ Merritt E. Cunningham
Merritt E. Cunningham

JS 44 (Rev. 07/16)

Case 2:10-cnd-02179-CJB-DPC Document 23378-1 Filed 09/08/17 Page 47 of 98
Case 2:17-cv-08201 Document 1-3 Filed 04/13/17 Page 1 of 1

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

E-SERVICE
60463264
Apr 12 2017
11:56AM
File & ServeXpress

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Larry Schexnayder et al | BP America Production Company, et al. |

**(b)** County of Residence of First Listed Plaintiff    Lafourche, LA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Smith Stag, LLC
One Canal Place, 365 Canal Street, Suite 2850 New Orleans, LA 70130
Telephone: 504-593-9600

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question   *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☒ 4   Diversity   *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☒ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☒ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Personal Injuries related to BP Oil Spill

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
2,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE Carl Barbier    DOCKET NUMBER MDL 2179

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 04/11/2017 | /s/ Merritt E. Cunningham |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**EXHIBIT A**

obo Gary Schexnayder

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>Civil Action No. 10-MD-2179-CJB-SS<br><br>FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND ALL OTHER B3 CLAIMS | | | |
|---|---|---|---|
| Last Name<br>Schexnayder | First Name<br>Larry | Middle Name/Maiden | Suffix |
| Phone Number<br>985-532-6468 | | E-Mail Address<br>N/A | |
| Current Mailing Address<br>163 Comeaux Drive | | City / State / Zip<br>Lockport, LA 70374 | |
| Employer at Time of Incident<br>N/A | | Date of Birth<br>1944 | |
| Attorney Name and Firm<br>Michael G. Stag, Smith Stag, LLC | | Attorney E-Mail Address<br>mstag@smithstag.com | |
| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address?<br>N/A | | | |
| Any prior name used by Plaintiff from April 2010 to present?<br>N/A | | | |
| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff<br>4303 | | Business Name (for non-medical, non-personal injury claims)<br>N/A | |

E-SERVICE
60463264
Apr 12 2017
11:56AM
File & ServeXpress

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* |
|:---|
| Civil Action No. 10-MD-2179-CJB-SS |
| |
| FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND ALL OTHER B3 CLAIMS |

| Last Name | First Name | Middle Name/Maiden | Suffix |
|:---|:---|:---|:---|
| Schexnayder | Gary | Lane | |

| Phone Number | E-Mail Address |
|:---|:---|
| N/A | N/A |

| Current Mailing Address | City / State / Zip |
|:---|:---|
| N/A | N/A |

| Employer at Time of Incident | Date of Birth |
|:---|:---|
| D & S Marine | 1960 |

| Attorney Name and Firm | Attorney E-Mail Address |
|:---|:---|
| Michael G. Stag, Smith Stag, LLC | mstag@smithstag.com |

| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address? |
|:---|
| 2010-2013:  261 E. 15th Street Larose, LA 70373 |

| Any prior name used by Plaintiff from April 2010 to present? |
|:---|
| N/A |

| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff | Business Name (for non-medical, non-personal injury claims) |
|:---|:---|
| 3201 | N/A |

Please indicate your status:

☑ Properly opted out of the Medical Benefits Settlement*

☐ Not a member of the Medical Benefits Settlement Class

☐ Member of the Medical Benefits Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A.

Did you participate in any of the following Response Activities* in response to the *Deepwater Horizon* incident?

☑ Captain, crew, or other worker employed under the Vessels of Opportunity ("VoO") program who performed Response Activities.

☐ Workers employed to perform the decontamination of vessels involved in Response Activities.

☐ Captains, crew, and other workers on vessels other than VoO who performed Response Activities.

☐ Onshore personnel employed to perform Response Activities.

☐ Persons involved in the recovery, transport, and decontamination of wildlife affected by the *Deepwater Horizon* incident.

* Response Activities is defined as the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

**You are pursuing a claim against at least one B3 Defendant by way of (*select all that apply*):**

☐ A Previously-Filed Individual Action, Eastern District of Louisiana Case No. _____.

☑ A New Individual Action (filed because plaintiff previously had only a short-form joinder* on file), Eastern District of Louisiana Case No. _____.

☐ A New Individual Action (filed because plaintiff previously was part of Complaint with more than one plaintiff or a putative class action).  List both prior Eastern District of Louisiana Case No. _____ and new Individual Action Case No._____

☐ Other:_____

 * A copy of your timely SFJ(s) (and any PPFs) must be included with your service of this Exhibit A.

2

**You are pursuing a claim against at least one B3 Defendant for (*select all that apply*):**

☐ Personal injury or wrongful death arising from circumstances <u>other than</u> alleged exposure to crude oil or dispersants.

If so, describe the alleged injury and identify the location and approximate date of the alleged

injury: _____

_____

☑ Medical monitoring, personal injury, or wrongful death arising from alleged exposure to crude oil or dispersants.

If so, identify the location and approximate date of the alleged exposure: <u>April  to</u>
<u>December 2010; Larose, Louisiana</u>

_____

If so, describe the alleged injury and identify the location and approximate date of the alleged

injury: <u>April 2010 to 2013 (deceased): Larose, LA; Injuries include, but not limited to, headaches, ringing in ears, ear infections,</u>
<u>inhalation and dermal exposure to crude and dispersants.  Full extent of injury is not known at this time.</u>

☑ Vessels of Opportunity Contract Claim.

☐ Non-Vessels-of-Opportunity Contract Claim Related to the Response.

☐ Other.  Please specify: _____.

**GCCF Claim:**

Did you, the plaintiff seeking relief, present this claim to the Gulf Coast Claims Facility ("GCCF")?

Yes _____.    No <u>X</u>_____.

If Yes, please identify:

1.  The claim number(s) (if available).<u>N/A</u>_____.

2.  Did you execute a release of your claims upon receiving payment through the GCCF:

Yes _____.    No <u>X</u>_____.

**You are pursuing a claim against at least one B3 Defendant for (*select all that apply*):**

[ ] Personal injury or wrongful death arising from circumstances <u>other than</u> alleged exposure to crude oil or dispersants.

If so, describe the alleged injury and identify the location and approximate date of the alleged

injury: _____

_____

[✓] Medical monitoring, personal injury, or wrongful death arising from alleged exposure to crude oil or dispersants.

If so, identify the location and approximate date of the alleged exposure: April to

December 2010; Larose, Louisiana

_____

If so, describe the alleged injury and identify the location and approximate date of the alleged

injury: April 2010 to 2013 9deceased): Larose, LA; Injuries include, but not limited to, headaches, ringing in ears, ear infections,

inhalation and dermal exposure to crude and dispersants.  Full extent of injury is not known at this time.

_____

[ ] Vessels of Opportunity Contract Claim.

[ ] Non-Vessels-of-Opportunity Contract Claim Related to the Response.

[ ] Other.  Please specify: _____.

**GCCF Claim:**

Did you, the plaintiff seeking relief, present this claim to the Gulf Coast Claims Facility ("GCCF")?

Yes _____.      No X_____.

If Yes, please identify:

1.  The claim number(s) (if available). N/A_____.

2.  Did you execute a release of your claims upon receiving payment through the GCCF:

Yes _____.      No X_____.

I state under penalty of perjury that the foregoing is true and correct.   Executed on the following date at the following location:

Date: _3 - 22_____, 2017

Location (City and State): _Lockport, LA. 70374_

_Larry B. Schexnayder_
Signature of Plaintiff (**Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf**)


_LArry B SchexNayDer_
Print Name


**This Sworn Statement and any supporting information must be filed with the Court and served on both Counsel for BP and the PSC on or before April 12, 2017.  Service on Counsel for BP and the PSC can be made via United States mail at the following addresses:**

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steven J. Herman |
| Kirkland & Ellis LLP | Herman, Herman, Katz & Cotlar, LLP |
| 300 North LaSalle St, | 820 O'Keefe Avenue |
| Suite 2400 | New Orleans, LA 70113 |
| Chicago IL 60654 | |


**Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon the PSC and Counsel for BP via File & ServeXpress ("F&S").**

4

# IN RE: OIL SPILL by "Deepwater Horizon"

## DIRECT FILING SHORT FORM[1]

**Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982**
**(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)**

| MDL 2179 | SECTION: J | JUDGE CARL BARBIER |
|---|---|---|

### CLAIM IN LIMITATION--JOINDER IN MASTER ANSWER--INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.*, No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.*, in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Schexnayder | Gary | Lane | |

| Phone Number | E-Mail Address |
|---|---|
| (985) 693-8635 | schexnayder.gary@yahoo.com |

| Address | City / State / Zip |
|---|---|
| 261 E. 15th St. | Larose, LA 70373 |

| INDIVIDUAL CLAIM | ☑ | BUSINESS CLAIM | ☐ |
|---|---|---|---|

| Employer Name | Business Name |
|---|---|
| D&S Marine | |
| **Job Title / Description** | **Type of Business** |
| Vessel Captain | |
| **Address** | **Address** |
| 261 E. 15th St. | |
| **City / State / Zip** | **City / State / Zip** |
| Larose, LA 70373 | |
| **Last 4 digits of your Social Security Number** | **Last 4 digits of your Tax ID Number** |
| 3201 | |

| Attorney Name | Firm Name |
|---|---|
| Soren Gisleson | Herman, Herman, Katz & Cotlar, LLP |
| **Address** | **City / State / Zip** |
| 820 O'Keefe Avenue | New Orleans, LA 70113 |
| **Phone Number** | **E-Mail Address** |
| (504) 581-4892 | sgisleson@hhkc.com |

| Claim filed with BP? | YES ☐ | NO ☑ | Claim Filed with GCCF?: | YES ☑ | NO ☐ |
|---|---|---|---|---|---|
| If yes, BP Claim No.: | | | If yes, Claimant Identification No.: 3345009 | | |

**Claim Type (Please check all that apply):**

| | | | |
|---|---|---|---|
| ☐ Damage or destruction to real or personal property | | ☑ | Fear of Future Injury and/or Medical Monitoring |
| ☐ Earnings/Profit Loss | | ☐ | Loss of Subsistence use of Natural Resources |
| ☑ Personal Injury/Death | | ☐ | Removal and/or clean-up costs |
| | | ☑ | Other: Vessel of Opportunity Breach of Contract |

---

[1] This form should be filed with the U.S. District Court for the Eastern District of Louisiana in New Orleans, Louisiana in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Brief Description:**

1.  For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury.  For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred.  For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

    _____

    _____

    _____

    _____

    _____

    _____

    _____

2.  For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

    Claimant sustained personal injuries from exposure to the hydrocarbons, oil, dispersants, and

    other chemicals while assisting in the oil clean up effort for the Vessel of Opportunity Program.

    Claimants injuries include but are not limited to headaches, ringing in ears, and ear infection.

    _____

    _____

    _____

    _____

3.  For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

    Claimant participated in the Vessel of Opportunity Program for BP America Production

    Company, working out of Larose, Louisiana on the M/V Mr. Williams.

    _____

    _____

    _____

    _____

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Please check the box(es) below that you think apply to you and your claims:**
**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

☐ 1.   Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.

☐ 2.   Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.

☐ 3.   Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.

☐ 4.   Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.

☐ 5.   Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.

☐ 6.   Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.

☐ 7   Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.

☐ 8.   Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.

☐ 9.   Bank, financial institution, or retail business that suffered losses as a result of the spill.

☐ 10.  Person who utilizes natural resources for subsistence.

☑ 11.  Other:  Vessel of Opportunity Program

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)**

☑ 1.   Boat captain or crew involved in the Vessels of Opportunity program.

☐ 2.   Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.

☐ 3.   Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.

☐ 4.   Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.

☐ 5.   Resident who lives or works in close proximity to coastal waters.

☑ 6.   Other:  Vessel of Opportunity Program

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

S/Soren E. Gisleson
_____
Claimant or Attorney Signature

Soren Gisleson
_____
Print Name

April 13, 2011
_____
Date

3

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

Return Original Signed Form To:

For Krupnick Campbell Clients:
Odalys Borges
Krupnick Campbell Malone, et. al.
12 SE 7 Street, Suite 801
Ft. Lauderdale, FL 33301

For Smith Stag Clients:
Cate Cummins
Smith Stag, LLC
One Canal Place
365 Canal Street
Suite 2850
New Orleans, LA 70130

# **Medical Benefits Opt-Out Notice**

I wish to exclude myself from the Medical Class.

Date _10-10-2012_

Sign Here _Gary Schexnayder_

Print Name _Gary Schexnayder_

Date of Birth _____ -60

Address _261 East 15th Street_

City/State _Larose    La_

Zip Code _70373_

Phone _985-688-7046_

**\*Please provide copy of your driver's license or other government-issued identification.**



60463264
Apr 12 2017
11:56AM
E-SERVICE
File & ServeXpress

**EXHIBIT A**

obo Gary Schexnayder

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* Civil Action No. 10-MD-2179-CJB-SS |
|---|

FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND ALL OTHER B3 CLAIMS

| Last Name<br>Williams | First Name<br>Rachel | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Phone Number<br>985-772-4061 | | E-Mail Address<br>N/A | |
| Current Mailing Address<br>127 E. 162nd Street | | City / State / Zip<br>Galliano, LA 70354 | |
| Employer at Time of Incident<br>N/A | | Date of Birth<br>1949 | |
| Attorney Name and Firm<br>Michael G. Stag, Smith Stag, LLC | | Attorney E-Mail Address<br>mstag@smithstag.com | |
| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address?<br>N/A | | | |
| Any prior name used by Plaintiff from April 2010 to present?<br>N/A | | | |
| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff<br>2253 | | Business Name (for non-medical, non-personal injury claims)<br>N/A | |

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* |
|---|
| Civil Action No. 10-MD-2179-CJB-SS |

FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND ALL OTHER B3 CLAIMS

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Schexnayder | Gary | Lane | |

| Phone Number | E-Mail Address |
|---|---|
| N/A | N/A |

| Current Mailing Address | City / State / Zip |
|---|---|
| N/A | N/A |

| Employer at Time of Incident | Date of Birth |
|---|---|
| D & S Marine | 1960 |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| Michael G. Stag, Smith Stag, LLC | mstag@smithstag.com |

| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address? |
|---|
| 2010-2013: 261 E. 15th Street Larose, LA 70373 |

| Any prior name used by Plaintiff from April 2010 to present? |
|---|
| N/A |

| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff | Business Name (for non-medical, non-personal injury claims) |
|---|---|
| 3201 | N/A |

Please indicate your status:

☑ Properly opted out of the Medical Benefits Settlement*

☐ Not a member of the Medical Benefits Settlement Class

☐ Member of the Medical Benefits Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A.

Did you participate in any of the following Response Activities* in response to the *Deepwater Horizon* incident?

☑ Captain, crew, or other worker employed under the Vessels of Opportunity ("VoO") program who performed Response Activities.

☐ Workers employed to perform the decontamination of vessels involved in Response Activities.

☐ Captains, crew, and other workers on vessels other than VoO who performed Response Activities.

☐ Onshore personnel employed to perform Response Activities.

☐ Persons involved in the recovery, transport, and decontamination of wildlife affected by the *Deepwater Horizon* incident.

* Response Activities is defined as the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

**You are pursuing a claim against at least one B3 Defendant by way of (*select all that apply*):**

☐ A Previously-Filed Individual Action, Eastern District of Louisiana Case No. _____.

☑ A New Individual Action (filed because plaintiff previously had only a short-form joinder* on file), Eastern District of Louisiana Case No. _____.

☐ A New Individual Action (filed because plaintiff previously was part of Complaint with more than one plaintiff or a putative class action). List both prior Eastern District of Louisiana Case No. _____ and new Individual Action Case No._____

☐ Other:_____

* A copy of your timely SFJ(s) (and any PPFs) must be included with your service of this Exhibit A.

**You are pursuing a claim against at least one B3 Defendant for (*select all that apply*):**

☐ Personal injury or wrongful death arising from circumstances <u>other than</u> alleged exposure to crude oil or dispersants.

    If so, describe the alleged injury and identify the location and approximate date of the alleged

    injury: _____

    _____

☑ Medical monitoring, personal injury, or wrongful death arising from alleged exposure to crude oil or dispersants.

    If so, identify the location and approximate date of the alleged exposure: April to December 2010; Larose, Louisiana

    _____

    If so, describe the alleged injury and identify the location and approximate date of the alleged

    injury: April 2010 to 2013 (deceased): Larose, LA; Injuries include, but not limited to, headaches, ringing in ears, ear infections, inhalation and dermal exposure to crude and dispersants. Full extent of injury is not known at this time.

☑ Vessels of Opportunity Contract Claim.

☐ Non-Vessels-of-Opportunity Contract Claim Related to the Response.

☐ Other. Please specify: _____.

---

**GCCF Claim:**

Did you, the plaintiff seeking relief, present this claim to the Gulf Coast Claims Facility ("GCCF")?

    Yes _____.    No _X_____.

If Yes, please identify:

1. The claim number(s) (if available). _N/A_____.

2. Did you execute a release of your claims upon receiving payment through the GCCF:

    Yes _____.    No _X_____.

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: _3-22-_____, 2017

Location (City and State): _Gailliano, LA_

_Rachel A Williams_
Signature of Plaintiff (*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf*)

_Rachel A. Williams_
Print Name

This Sworn Statement and any supporting information must be filed with the Court and served on both Counsel for BP and the PSC on or before April 12, 2017. Service on Counsel for BP and the PSC can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steven J. Herman |
| Kirkland & Ellis LLP | Herman, Herman, Katz & Cotlar, LLP |
| 300 North LaSalle St, | 820 O'Keefe Avenue |
| Suite 2400 | New Orleans, LA 70113 |
| Chicago IL 60654 | |

Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon the PSC and Counsel for BP via File & ServeXpress ("F&S").

4

## IN RE: OIL SPILL by "Deepwater Horizon"

## DIRECT FILING SHORT FORM[1]

**Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982**
**(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)**

| MDL 2179 | SECTION: J | JUDGE CARL BARBIER |
|---|---|---|

### CLAIM IN LIMITATION--JOINDER IN MASTER ANSWER--INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.*, No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.*, in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Schexnayder | Gary | Lane | |

| Phone Number | E-Mail Address |
|---|---|
| (985) 693-8635 | schexnayder.gary@yahoo.com |

| Address | City / State / Zip |
|---|---|
| 261 E. 15th St. | Larose, LA 70373 |

| INDIVIDUAL CLAIM | ✓ | BUSINESS CLAIM | ☐ |
|---|---|---|---|

| Employer Name | Business Name |
|---|---|
| D&S Marine | |
| Job Title / Description | Type of Business |
| Vessel Captain | |
| Address | Address |
| 261 E. 15th St. | |
| City / State / Zip | City / State / Zip |
| Larose, LA 70373 | |
| Last 4 digits of your Social Security Number | Last 4 digits of your Tax ID Number |
| 3201 | |

| Attorney Name | Firm Name |
|---|---|
| Soren Gisleson | Herman, Herman, Katz & Cotlar, LLP |
| Address | City / State / Zip |
| 820 O'Keefe Avenue | New Orleans, LA 70113 |
| Phone Number | E-Mail Address |
| (504) 581-4892 | sgisleson@hhkc.com |

| Claim filed with BP? | YES ☐ | NO ✓ | Claim Filed with GCCF?: | YES ✓ | NO ☐ |
|---|---|---|---|---|---|
| If yes, BP Claim No.: | | | If yes, Claimant Identification No.: 3345009 | | |

**Claim Type (Please check all that apply):**

| | | | |
|---|---|---|---|
| ☐ | Damage or destruction to real or personal property | ✓ | Fear of Future Injury and/or Medical Monitoring |
| ☐ | Earnings/Profit Loss | ☐ | Loss of Subsistence use of Natural Resources |
| ✓ | Personal Injury/Death | ☐ | Removal and/or clean-up costs |
| | | ✓ | Other: Vessel of Opportunity Breach of Contract |

[1] This form should be filed with the U.S. District Court for the Eastern District of Louisiana in New Orleans, Louisiana in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Brief Description:**

1.  For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury.  For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred.  For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

_____

_____

_____

_____

_____

_____

_____

2.  For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

Claimant sustained personal injuries from exposure to the hydrocarbons, oil, dispersants, and

other chemicals while assisting in the oil clean up effort for the Vessel of Opportunity Program.

Claimants injuries include but are not limited to headaches, ringing in ears, and ear infection.

_____

_____

_____

_____

3.  For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

Claimant participated in the Vessel of Opportunity Program for BP America Production

Company, working out of Larose, Louisiana on the M/V Mr. Williams.

_____

_____

_____

_____

2

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Please check the box(es) below that you think apply to you and your claims:**
**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

☐ 1.   Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.

☐ 2.   Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.

☐ 3.   Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.

☐ 4.   Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.

☐ 5.   Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.

☐ 6.   Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.

☐ 7    Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.

☐ 8.   Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.

☐ 9.   Bank, financial institution, or retail business that suffered losses as a result of the spill.

☐ 10.  Person who utilizes natural resources for subsistence.

☑ 11.  Other: _Vessel of Opportunity Program_

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)**

☑ 1.   Boat captain or crew involved in the Vessels of Opportunity program.

☐ 2.   Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.

☐ 3.   Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.

☐ 4.   Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.

☐ 5.   Resident who lives or works in close proximity to coastal waters.

☑ 6.   Other: _Vessel of Opportunity Program_

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

S/Soren E. Gisleson
_____
Claimant or Attorney Signature

Soren Gisleson
_____
Print Name

April 13, 2011
_____
Date

3

_The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form._

Return Original Signed Form To:

For Krupnick Campbell Clients:
Odalys Borges
Krupnick Campbell Malone, et. al.
12 SE 7 Street, Suite 801
Ft. Lauderdale, FL 33301

For Smith Stag Clients:
Cate Cummins
Smith Stag, LLC
One Canal Place
365 Canal Street
Suite 2850
New Orleans, LA 70130

# **Medical Benefits Opt-Out Notice**

I wish to exclude myself from the Medical Class.

Date _10-10-2012_

Sign Here _Gary Scheznayder_
Print Name _Gary Scheznayder_
Date of Birth _____-60_
Address _261 East 15th Street_
City/State _Larose    La_
Zip Code _70373_

Phone _985-688-7046_

**\*Please provide copy of your driver's license or other government-issued
identification.**



E-SERVICE
60463264
Apr 12 2017
11:56AM
File & ServeXpress

**EXHIBIT A**

obo Gary Schexnayder

---

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
Civil Action No. 10-MD-2179-CJB-SS

FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND ALL OTHER B3 CLAIMS

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Schexnayder | Ferrell | | |

| Phone Number | E-Mail Address |
|---|---|
| 985-696-4395 | N/A |

| Current Mailing Address | City / State / Zip |
|---|---|
| 134 Loupe Street | Larose, LA 70373 |

| Employer at Time of Incident | Date of Birth |
|---|---|
| N/A | 1959 |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| Michael G. Stag, Smith Stag, LLC | mstag@smithstag.com |

| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address? |
|---|
| N/A |

| Any prior name used by Plaintiff from April 2010 to present? |
|---|
| N/A |

| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff | Business Name (for non-medical, non-personal injury claims) |
|---|---|
| 6043 | N/A |

**EXHIBIT A**

| | |
|---|---|
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* Civil Action No. 10-MD-2179-CJB-SS | |

FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND ALL OTHER B3 CLAIMS

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Schexnayder | Gary | Lane | |

| Phone Number | E-Mail Address |
|---|---|
| N/A | N/A |

| Current Mailing Address | City / State / Zip |
|---|---|
| N/A | N/A |

| Employer at Time of Incident | Date of Birth |
|---|---|
| D & S Marine | 1960 |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| Michael G. Stag, Smith Stag, LLC | mstag@smithstag.com |

| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address? |
|---|
| 2010-2013:  261 E. 15th Street Larose, LA 70373 |

| Any prior name used by Plaintiff from April 2010 to present? |
|---|
| N/A |

| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff | Business Name (for non-medical, non-personal injury claims) |
|---|---|
| 3201 | N/A |

Please indicate your status:

☑ Properly opted out of the Medical Benefits Settlement*

☐ Not a member of the Medical Benefits Settlement Class

☐ Member of the Medical Benefits Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A.

Did you participate in any of the following Response Activities* in response to the *Deepwater Horizon* incident?

☑ Captain, crew, or other worker employed under the Vessels of Opportunity ("VoO") program who performed Response Activities.

☐ Workers employed to perform the decontamination of vessels involved in Response Activities.

☐ Captains, crew, and other workers on vessels other than VoO who performed Response Activities.

☐ Onshore personnel employed to perform Response Activities.

☐ Persons involved in the recovery, transport, and decontamination of wildlife affected by the *Deepwater Horizon* incident.

* Response Activities is defined as the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

**You are pursuing a claim against at least one B3 Defendant by way of (*select all that apply*):**

☐ A Previously-Filed Individual Action, Eastern District of Louisiana Case No. _____.

☑ A New Individual Action (filed because plaintiff previously had only a short-form joinder* on file), Eastern District of Louisiana Case No. _____.

☐ A New Individual Action (filed because plaintiff previously was part of Complaint with more than one plaintiff or a putative class action).  List both prior Eastern District of Louisiana Case No. _____ and new Individual Action Case No._____

☐ Other:_____

 * A copy of your timely SFJ(s) (and any PPFs) must be included with your service of this Exhibit A.

**You are pursuing a claim against at least one B3 Defendant for (*select all that apply*):**

☐ Personal injury or wrongful death arising from circumstances <u>other than</u> alleged exposure to crude oil or dispersants.

    If so, describe the alleged injury and identify the location and approximate date of the alleged

    injury: _____

    _____

☑ Medical monitoring, personal injury, or wrongful death arising from alleged exposure to crude oil or dispersants.

    If so, identify the location and approximate date of the alleged exposure: <u>April to</u>

<u>December 2010; Larose, Louisiana</u>

    _____

    If so, describe the alleged injury and identify the location and approximate date of the alleged

    injury: <u>April 2010 to 2013 (deceased): Larose, LA; Injuries include, but not limited to, headaches, ringing in ears, ear infections,</u>

    <u>inhalation and dermal exposure to crude and dispersants.  Full extent of injury is not known at this time.</u>

☑ Vessels of Opportunity Contract Claim.

☐ Non-Vessels-of-Opportunity Contract Claim Related to the Response.

☐ Other.  Please specify: _____.

**GCCF Claim:**

Did you, the plaintiff seeking relief, present this claim to the Gulf Coast Claims Facility ("GCCF")?

    Yes _____.    No <u>X</u>_____.

If Yes, please identify:

1.  The claim number(s) (if available). <u>N/A</u>_____.

2.  Did you execute a release of your claims upon receiving payment through the GCCF:

    Yes _____.    No <u>X</u>_____.

I state under penalty of perjury that the foregoing is true and correct.   Executed on the following date at the following location:

Date: _3- 2 2_____, 2017

Location (City and State): _Larose, Louisiana_

_Farell Schexnayder_

Signature of Plaintiff (**Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf**)

FArrell  ScHEXNAYDeR

Print Name

**This Sworn Statement and any supporting information must be filed with the Court and served on both Counsel for BP and the PSC on or before April 12, 2017.  Service on Counsel for BP and the PSC can be made via United States mail at the following addresses:**

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| **Attn: J. Andrew Langan** | **Attn: Steven J. Herman** |
| **Kirkland & Ellis LLP** | **Herman, Herman, Katz & Cotlar, LLP** |
| **300 North LaSalle St,** | **820 O'Keefe Avenue** |
| **Suite 2400** | **New Orleans, LA 70113** |
| **Chicago IL 60654** | |

**Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon the PSC and Counsel for BP via File & ServeXpress ("F&S").**

4

## IN RE: OIL SPILL by "Deepwater Horizon"

## DIRECT FILING SHORT FORM[1]

**Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982**
**(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)**

| MDL 2179 | SECTION: J | JUDGE CARL BARBIER |
|---|---|---|

### CLAIM IN LIMITATION--JOINDER IN MASTER ANSWER--INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.*, No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.*, in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Schexnayder | Gary | Lane | |

| Phone Number | E-Mail Address |
|---|---|
| (985) 693-8635 | schexnayder.gary@yahoo.com |

| Address | City / State / Zip |
|---|---|
| 261 E. 15th St. | Larose, LA 70373 |

| INDIVIDUAL CLAIM | ✓ | BUSINESS CLAIM | ☐ |
|---|---|---|---|

| Employer Name | Business Name |
|---|---|
| D&S Marine | |
| Job Title / Description | Type of Business |
| Vessel Captain | |
| Address | Address |
| 261 E. 15th St. | |
| City / State / Zip | City / State / Zip |
| Larose, LA 70373 | |
| Last 4 digits of your Social Security Number | Last 4 digits of your Tax ID Number |
| 3201 | |

| Attorney Name | Firm Name |
|---|---|
| Soren Gisleson | Herman, Herman, Katz & Cotlar, LLP |
| Address | City / State / Zip |
| 820 O'Keefe Avenue | New Orleans, LA 70113 |
| Phone Number | E-Mail Address |
| (504) 581-4892 | sgisleson@hhkc.com |

| Claim filed with BP? | YES ☐ | NO ✓ | Claim Filed with GCCF?: | YES ✓ | NO ☐ |
|---|---|---|---|---|---|
| If yes, BP Claim No.: | | | If yes, Claimant Identification No.: 3345009 | | |

**Claim Type (Please check all that apply):**

| | | | |
|---|---|---|---|
| ☐ | Damage or destruction to real or personal property | ✓ | Fear of Future Injury and/or Medical Monitoring |
| ☐ | Earnings/Profit Loss | ☐ | Loss of Subsistence use of Natural Resources |
| ✓ | Personal Injury/Death | ☐ | Removal and/or clean-up costs |
| | | ✓ | Other: Vessel of Opportunity Breach of Contract |

[1] This form should be filed with the U.S. District Court for the Eastern District of Louisiana in New Orleans, Louisiana in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Brief Description:**

1. For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury. For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred. For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

_____

_____

_____

_____

_____

_____

_____

2. For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

Claimant sustained personal injuries from exposure to the hydrocarbons, oil, dispersants, and

other chemicals while assisting in the oil clean up effort for the Vessel of Opportunity Program.

Claimants injuries include but are not limited to headaches, ringing in ears, and ear infection.

_____

_____

_____

_____

3. For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

Claimant participated in the Vessel of Opportunity Program for BP America Production

Company, working out of Larose, Louisiana on the M/V Mr. Williams.

_____

_____

_____

_____

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Please check the box(es) below that you think apply to you and your claims:**
**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

- ☐ 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.

- ☐ 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.

- ☐ 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.

- ☐ 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.

- ☐ 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.

- ☐ 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.

- ☐ 7 Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.

- ☐ 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.

- ☐ 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.

- ☐ 10. Person who utilizes natural resources for subsistence.

- ☑ 11. Other: __Vessel of Opportunity Program__

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)**

- ☑ 1. Boat captain or crew involved in the Vessels of Opportunity program.

- ☐ 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.

- ☐ 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.

- ☐ 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.

- ☐ 5. Resident who lives or works in close proximity to coastal waters.

- ☑ 6. Other: __Vessel of Opportunity Program__

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

S/Soren E. Gisleson
_____
Claimant or Attorney Signature

Soren Gisleson
_____
Print Name

April 13, 2011
_____
Date

3

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

Return Original Signed Form To:

For Krupnick Campbell Clients:
Odalys Borges
Krupnick Campbell Malone, et. al.
12 SE 7 Street, Suite 801
Ft. Lauderdale, FL 33301

For Smith Stag Clients:
Cate Cummins
Smith Stag, LLC
One Canal Place
365 Canal Street
Suite 2850
New Orleans, LA 70130

# Medical Benefits Opt-Out Notice

I wish to exclude myself from the Medical Class.

Date _10-10-2012_

Sign Here _Gary Schexnayder_
Print Name _Gary Schexnayder_
Date of Birth ___-60_
Address _261 East 15th Street_
City/State _Lacose     La_
Zip Code _70373_

Phone _985-688-7046_

**\*Please provide copy of your driver's license or other government-issued identification.**



**EXHIBIT A**

obo Gary Schexnayder

E-SERVICE
60463264
Apr 12 2017
11:56AM
File & ServeXpress

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* Civil Action No. 10-MD-2179-CJB-SS |
|---|

FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND ALL OTHER B3 CLAIMS

| Last Name Picou | First Name Donna | Middle Name/Maiden | Suffix |
|---|---|---|---|

| Phone Number 985-696-1009 | E-Mail Address |
|---|---|

| Current Mailing Address 446 E. 74th Street | City / State / Zip Cut Off, LA 70345 |
|---|---|

| Employer at Time of Incident N/A | Date of Birth 1957 |
|---|---|

| Attorney Name and Firm Michael G. Stag, Smith Stag, LLC | Attorney E-Mail Address mstag@smithstag.com |
|---|---|

| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address? N/A |
|---|

| Any prior name used by Plaintiff from April 2010 to present? N/A |
|---|

| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff 8909 | Business Name (for non-medical, non-personal injury claims) N/A |
|---|---|

**EXHIBIT A**

| | |
|---|---|
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>Civil Action No. 10-MD-2179-CJB-SS<br><br>FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND ALL OTHER B3 CLAIMS | |

| Last Name<br>Schexnayder | First Name<br>Gary | Middle Name/Maiden<br>Lane | Suffix |
|---|---|---|---|

| Phone Number<br>N/A | E-Mail Address<br>N/A |
|---|---|

| Current Mailing Address<br>N/A | City / State / Zip<br>N/A |
|---|---|

| Employer at Time of Incident<br>D & S Marine | Date of Birth<br>1960 |
|---|---|

| Attorney Name and Firm<br>Michael G. Stag, Smith Stag, LLC | Attorney E-Mail Address<br>mstag@smithstag.com |
|---|---|

| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address?<br>2010-2013:  261 E. 15th Street Larose, LA 70373 |
|---|

| Any prior name used by Plaintiff from April 2010 to present?<br>N/A |
|---|

| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff<br>3201 | Business Name (for non-medical, non-personal injury claims)<br>N/A |
|---|---|

Please indicate your status:

☑ Properly opted out of the Medical Benefits Settlement*

☐ Not a member of the Medical Benefits Settlement Class

☐ Member of the Medical Benefits Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A.

Did you participate in any of the following Response Activities* in response to the *Deepwater Horizon* incident?

☑ Captain, crew, or other worker employed under the Vessels of Opportunity ("VoO") program who performed Response Activities.

☐ Workers employed to perform the decontamination of vessels involved in Response Activities.

☐ Captains, crew, and other workers on vessels other than VoO who performed Response Activities.

☐ Onshore personnel employed to perform Response Activities.

☐ Persons involved in the recovery, transport, and decontamination of wildlife affected by the *Deepwater Horizon* incident.

* Response Activities is defined as the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

**You are pursuing a claim against at least one B3 Defendant by way of (*select all that apply*):**

☐ A Previously-Filed Individual Action, Eastern District of Louisiana Case No. _____.

☑ A New Individual Action (filed because plaintiff previously had only a short-form joinder* on file), Eastern District of Louisiana Case No. _____.

☐ A New Individual Action (filed because plaintiff previously was part of Complaint with more than one plaintiff or a putative class action).  List both prior Eastern District of Louisiana Case No. _____ and new Individual Action Case No._____

☐ Other:_____

 * A copy of your timely SFJ(s) (and any PPFs) must be included with your service of this Exhibit A.

**You are pursuing a claim against at least one B3 Defendant for (*select all that apply*):**

[ ] Personal injury or wrongful death arising from circumstances <u>other than</u> alleged exposure to crude oil or dispersants.

    If so, describe the alleged injury and identify the location and approximate date of the alleged

    injury: _____

    _____

[✓] Medical monitoring, personal injury, or wrongful death arising from alleged exposure to crude oil or dispersants.

    If so, identify the location and approximate date of the alleged exposure: April to December 2010; Larose, Louisiana

    _____

    If so, describe the alleged injury and identify the location and approximate date of the alleged

    injury: April 2010 to 2013 (deceased): Larose, LA; Injuries include, but not limited to, headaches, ringing in ears, ear infections, inhalation and dermal exposure to crude and dispersants. Full extent of injury is not known at this time.

[✓] Vessels of Opportunity Contract Claim.

[ ] Non-Vessels-of-Opportunity Contract Claim Related to the Response.

[ ] Other. Please specify: _____.

**GCCF Claim:**

Did you, the plaintiff seeking relief, present this claim to the Gulf Coast Claims Facility ("GCCF")?

    Yes _____.   No X_____.

If Yes, please identify:

1. The claim number(s) (if available). N/A_____.

2. Did you execute a release of your claims upon receiving payment through the GCCF:

    Yes _____.   No X_____.

Case 2:10-md-02179-CJB-DPC  Document 23878-1  Filed 09/08/17  Page 83 of 98
Case 2:17-cv-03207  Document 1-3  Filed 04/12/17  Page 5 of 10
Case 2:10-md-02179-CJB-JCW  Document 22295-1  Filed 02/22/17  Page 4 of 4

I state under penalty of perjury that the foregoing is true and correct.  Executed on the following date at the following location:

Date: 3/28, 2017

Location (City and State): Cut Off

*Donna Picou* (signature)

Signature of Plaintiff (*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf*)

*Donna Picou*

Print Name

**This Sworn Statement and any supporting information must be filed with the Court and served on both Counsel for BP and the PSC on or before April 12, 2017.**  Service on Counsel for BP and the PSC can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
| --- | --- |
| Attn: J. Andrew Langan | Attn: Steven J. Herman |
| Kirkland & Ellis LLP | Herman, Herman, Katz & Cotlar, LLP |
| 300 North LaSalle St, | 820 O'Keefe Avenue |
| Suite 2400 | New Orleans, LA 70113 |
| Chicago IL 60654 | |

Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon the PSC and Counsel for BP via File & ServeXpress ("F&S").

4

## IN RE: OIL SPILL by "Deepwater Horizon"

## DIRECT FILING SHORT FORM[1]

**Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982**
**(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)**

| MDL 2179 | SECTION: J | JUDGE CARL BARBIER |
|---|---|---|

| CLAIM IN LIMITATION--JOINDER IN MASTER ANSWER--INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM |
|---|

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.*, No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.*, in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Schexnayder | Gary | Lane | |

| Phone Number | E-Mail Address |
|---|---|
| (985) 693-8635 | schexnayder.gary@yahoo.com |

| Address | City / State / Zip |
|---|---|
| 261 E. 15th St. | Larose, LA 70373 |

| INDIVIDUAL CLAIM | ✔ | BUSINESS CLAIM | ☐ |
|---|---|---|---|

| Employer Name | Business Name |
|---|---|
| D&S Marine | |
| Job Title / Description | Type of Business |
| Vessel Captain | |
| Address | Address |
| 261 E. 15th St. | |
| City / State / Zip | City / State / Zip |
| Larose, LA 70373 | |
| Last 4 digits of your Social Security Number | Last 4 digits of your Tax ID Number |
| 3201 | |

| Attorney Name | Firm Name |
|---|---|
| Soren Gisleson | Herman, Herman, Katz & Cotlar, LLP |
| Address | City / State / Zip |
| 820 O'Keefe Avenue | New Orleans, LA 70113 |
| Phone Number | E-Mail Address |
| (504) 581-4892 | sgisleson@hhkc.com |

| Claim filed with BP? YES ☐ NO ✔ | Claim Filed with GCCF?: YES ✔ NO ☐ |
|---|---|
| If yes, BP Claim No.: | If yes, Claimant Identification No.: 3345009 |

**Claim Type (Please check all that apply):**

| | | | |
|---|---|---|---|
| ☐ | Damage or destruction to real or personal property | ✔ | Fear of Future Injury and/or Medical Monitoring |
| ☐ | Earnings/Profit Loss | ☐ | Loss of Subsistence use of Natural Resources |
| ✔ | Personal Injury/Death | ☐ | Removal and/or clean-up costs |
| | | ✔ | Other: Vessel of Opportunity Breach of Contract |

---

[1] This form should be filed with the U.S. District Court for the Eastern District of Louisiana in New Orleans, Louisiana in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Brief Description:**

1. For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury. For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred. For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

_____

_____

_____

_____

_____

_____

_____

2. For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

Claimant sustained personal injuries from exposure to the hydrocarbons, oil, dispersants, and

other chemicals while assisting in the oil clean up effort for the Vessel of Opportunity Program.

Claimants injuries include but are not limited to headaches, ringing in ears, and ear infection.

_____

_____

_____

_____

3. For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

Claimant participated in the Vessel of Opportunity Program for BP America Production

Company, working out of Larose, Louisiana on the M/V Mr. Williams.

_____

_____

_____

_____

2

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Please check the box(es) below that you think apply to you and your claims:**
**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

[ ] 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.

[ ] 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.

[ ] 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.

[ ] 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.

[ ] 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.

[ ] 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.

[ ] 7 Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.

[ ] 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.

[ ] 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.

[ ] 10. Person who utilizes natural resources for subsistence.

[x] 11. Other: Vessel of Opportunity Program

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)**

[x] 1. Boat captain or crew involved in the Vessels of Opportunity program.

[ ] 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.

[ ] 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.

[ ] 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.

[ ] 5. Resident who lives or works in close proximity to coastal waters.

[x] 6. Other: Vessel of Opportunity Program

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

S/Soren E. Gisleson
_____
Claimant or Attorney Signature

Soren Gisleson
_____
Print Name

April 13, 2011
_____
Date

3

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

Return Original Signed Form To:

For Krupnick Campbell Clients:
Odalys Borges
Krupnick Campbell Malone, et. al.
12 SE 7 Street, Suite 801
Ft. Lauderdale, FL 33301

For Smith Stag Clients:
Cate Cummins
Smith Stag, LLC
One Canal Place
365 Canal Street
Suite 2850
New Orleans, LA 70130

# Medical Benefits Opt-Out Notice

I wish to exclude myself from the Medical Class.

Date _10-10-2012_

Sign Here _Gary Schexnayder_
Print Name _Gary Schexnayder_
Date of Birth ___ -60
Address _261 East 15th Street_
City/State _Larose    La_
Zip Code _70373_

Phone _985-688-7046_

**\*Please provide copy of your driver's license or other government-issued identification.**



**EXHIBIT A**

obo Gary Schexnayder

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* |
|---|
| Civil Action No. 10-MD-2179-CJB-SS |
| |
| FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND ALL OTHER B3 CLAIMS |

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Williams | Darlene | | |

| Phone Number | E-Mail Address |
|---|---|
| 985 291 1679 | N/A |

| Current Mailing Address | City / State / Zip |
|---|---|
| 16156 Hwy 3235 | Cut Off, LA 70345 |

| Employer at Time of Incident | Date of Birth |
|---|---|
| N/A | 1964 |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| Michael G. Stag, Smith Stag, LLC | mstag@smithstag.com |

| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address? |
|---|
| N/A |

| Any prior name used by Plaintiff from April 2010 to present? |
|---|
| N/A |

| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff | Business Name (for non-medical, non-personal injury claims) |
|---|---|
| 2434 | N/A |

**EXHIBIT A**

| | |
|---|---|
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>Civil Action No. 10-MD-2179-CJB-SS<br><br>FORM FOR DISCLOSURES REGARDING REMAINING CLEAN-UP, MEDICAL MONITORING, AND POST-APRIL 20 PERSONAL INJURY CLAIMS, VESSELS OF OPPORTUNITY CHARTER CLAIMS, AND ALL OTHER B3 CLAIMS | |

| Last Name<br>Schexnayder | First Name<br>Gary | Middle Name/Maiden<br>Lane | Suffix |
|---|---|---|---|

| Phone Number<br>N/A | E-Mail Address<br>N/A |
|---|---|

| Current Mailing Address<br>N/A | City / State / Zip<br>N/A |
|---|---|

| Employer at Time of Incident<br>D & S Marine | Date of Birth<br>1960 |
|---|---|

| Attorney Name and Firm<br>Michael G. Stag, Smith Stag, LLC | Attorney E-Mail Address<br>mstag@smithstag.com |
|---|---|

| All previous addresses where Plaintiff resided from April 2010 to present, including the date ranges Plaintiff resided at each address?<br>2010-2013:  261 E. 15th Street Larose, LA 70373 |
|---|

| Any prior name used by Plaintiff from April 2010 to present?<br>N/A |
|---|

| The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff<br>3201 | Business Name (for non-medical, non-personal injury claims)<br>N/A |
|---|---|

Please indicate your status:

☑ Properly opted out of the Medical Benefits Settlement*

☐ Not a member of the Medical Benefits Settlement Class

☐ Member of the Medical Benefits Settlement Class

☐ Other:_____

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A.

---

Did you participate in any of the following Response Activities* in response to the *Deepwater Horizon* incident?

☑ Captain, crew, or other worker employed under the Vessels of Opportunity ("VoO") program who performed Response Activities.

☐ Workers employed to perform the decontamination of vessels involved in Response Activities.

☐ Captains, crew, and other workers on vessels other than VoO who performed Response Activities.

☐ Onshore personnel employed to perform Response Activities.

☐ Persons involved in the recovery, transport, and decontamination of wildlife affected by the *Deepwater Horizon* incident.

* Response Activities is defined as the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

---

**You are pursuing a claim against at least one B3 Defendant by way of (*select all that apply*):**

☐ A Previously-Filed Individual Action, Eastern District of Louisiana Case No. _____.

☑ A New Individual Action (filed because plaintiff previously had only a short-form joinder* on file), Eastern District of Louisiana Case No. _____.

☐ A New Individual Action (filed because plaintiff previously was part of Complaint with more than one plaintiff or a putative class action).  List both prior Eastern District of Louisiana Case No. _____ and new Individual Action Case No._____

☐ Other:_____

 * A copy of your timely SFJ(s) (and any PPFs) must be included with your service of this Exhibit A.

---

**You are pursuing a claim against at least one B3 Defendant for (*select all that apply*):**

☐ Personal injury or wrongful death arising from circumstances <u>other than</u> alleged exposure to crude oil or dispersants.

    If so, describe the alleged injury and identify the location and approximate date of the alleged

    injury: _____

    _____

☑ Medical monitoring, personal injury, or wrongful death arising from alleged exposure to crude oil or dispersants.

    If so, identify the location and approximate date of the alleged exposure: <u>April to December 2010; Larose, Louisiana</u>

    _____

    If so, describe the alleged injury and identify the location and approximate date of the alleged

    injury: <u>April 2010 to 2013 (deceased): Larose, LA; Injuries include, but not limited to, headaches, ringing in ears, ear infections,</u>

    <u>inhalation and dermal exposure to crude and dispersants. Full extent of injury is not known at this time.</u>

☑ Vessels of Opportunity Contract Claim.

☐ Non-Vessels-of-Opportunity Contract Claim Related to the Response.

☐ Other. Please specify: _____ .

---

**GCCF Claim:**

Did you, the plaintiff seeking relief, present this claim to the Gulf Coast Claims Facility ("GCCF")?

    Yes _____ .   No <u>X</u> .

If Yes, please identify:

1. The claim number(s) (if available). <u>N/A</u> .

2. Did you execute a release of your claims upon receiving payment through the GCCF:

    Yes _____ .   No <u>X</u> .

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: 3-27- , 2017

Location (City and State): Cut Off, La

_Darlae Williams_

Signature of Plaintiff (*Plaintiff's Attorney* <u>*Cannot*</u> *Sign on Plaintiff's Behalf*)

_Darlene L Williams_

Print Name

**This Sworn Statement and any supporting information must be filed with the Court and served on both Counsel for BP and the PSC on or before <u>April 12, 2017</u>. Service on Counsel for BP and the PSC can be made via United States mail at the following addresses:**

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steven J. Herman |
| Kirkland & Ellis LLP | Herman, Herman, Katz & Cotlar, LLP |
| 300 North LaSalle St, | 820 O'Keefe Avenue |
| Suite 2400 | New Orleans, LA 70113 |
| Chicago IL 60654 | |

**Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon the PSC and Counsel for BP via File & ServeXpress ("F&S").**

## IN RE: OIL SPILL by "Deepwater Horizon"

## DIRECT FILING SHORT FORM[1]

### Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982
### (Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)

| MDL 2179 | SECTION: J | JUDGE CARL BARBIER |
|---|---|---|

### CLAIM IN LIMITATION--JOINDER IN MASTER ANSWER--INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.*, No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.*, in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Schexnayder | Gary | Lane | |

| Phone Number | E-Mail Address |
|---|---|
| (985) 693-8635 | schexnayder.gary@yahoo.com |

| Address | City / State / Zip |
|---|---|
| 261 E. 15th St. | Larose, LA 70373 |

| INDIVIDUAL CLAIM | ✓ | BUSINESS CLAIM | ☐ |
|---|---|---|---|

| Employer Name | Business Name |
|---|---|
| D&S Marine | |
| **Job Title / Description** | **Type of Business** |
| Vessel Captain | |
| **Address** | **Address** |
| 261 E. 15th St. | |
| **City / State / Zip** | **City / State / Zip** |
| Larose, LA 70373 | |
| **Last 4 digits of your Social Security Number** | **Last 4 digits of your Tax ID Number** |
| 3201 | |

| Attorney Name | Firm Name |
|---|---|
| Soren Gisleson | Herman, Herman, Katz & Cotlar, LLP |
| **Address** | **City / State / Zip** |
| 820 O'Keefe Avenue | New Orleans, LA  70113 |
| **Phone Number** | **E-Mail Address** |
| (504) 581-4892 | sgisleson@hhkc.com |

| Claim filed with BP? | YES ☐ | NO ✓ | Claim Filed with GCCF?: | YES ✓ | NO ☐ |
|---|---|---|---|---|---|

| If yes, BP Claim No.: | If yes, Claimant Identification No.: 3345009 |
|---|---|

**Claim Type (Please check all that apply):**

| | | | |
|---|---|---|---|
| ☐ | Damage or destruction to real or personal property | ✓ | Fear of Future Injury and/or Medical Monitoring |
| ☐ | Earnings/Profit Loss | ☐ | Loss of Subsistence use of Natural Resources |
| ✓ | Personal Injury/Death | ☐ | Removal and/or clean-up costs |
| | | ✓ | Other: Vessel of Opportunity Breach of Contract |

---

[1] This form should be filed with the U.S. District Court for the Eastern District of Louisiana in New Orleans, Louisiana in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Brief Description:**

1.  For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury.  For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred.  For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

_____

_____

_____

_____

_____

_____

_____

2.  For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

Claimant sustained personal injuries from exposure to the hydrocarbons, oil, dispersants, and

other chemicals while assisting in the oil clean up effort for the Vessel of Opportunity Program.

Claimants injuries include but are not limited to headaches, ringing in ears, and ear infection.

_____

_____

_____

_____

3.  For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

Claimant participated in the Vessel of Opportunity Program for BP America Production

Company, working out of Larose, Louisiana on the M/V Mr. Williams.

_____

_____

_____

_____

2

**Please check the box(es) below that you think apply to you and your claims:**
**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

- [ ] 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.

- [ ] 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.

- [ ] 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.

- [ ] 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.

- [ ] 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.

- [ ] 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.

- [ ] 7 Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.

- [ ] 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.

- [ ] 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.

- [ ] 10. Person who utilizes natural resources for subsistence.

- [x] 11. Other: _Vessel of Opportunity Program_

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)**

- [x] 1. Boat captain or crew involved in the Vessels of Opportunity program.

- [ ] 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.

- [ ] 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.

- [ ] 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.

- [ ] 5. Resident who lives or works in close proximity to coastal waters.

- [x] 6. Other: _Vessel of Opportunity Program_

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

S/Soren E. Gisleson
_____
Claimant or Attorney Signature

Soren Gisleson
_____
Print Name

April 13, 2011
_____
Date

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

Return Original Signed Form To:

For Krupnick Campbell Clients:
Odalys Borges
Krupnick Campbell Malone, et. al.
12 SE 7 Street, Suite 801
Ft. Lauderdale, FL 33301

For Smith Stag Clients:
Cate Cummins
Smith Stag, LLC
One Canal Place
365 Canal Street
Suite 2850
New Orleans, LA 70130

# **Medical Benefits Opt-Out Notice**

I wish to exclude myself from the Medical Class.

Date _10-10-2012_

Sign Here _Gary Schexnayder_
Print Name _Gary Schexnayder_
Date of Birth _____ -60_
Address _261 East 15th Street_
City/State _Larose    La_
Zip Code _70373_

Phone _985-688-7046_

**\*Please provide copy of your driver's license or other government-issued identification.**

