# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | **MDL NO. 2179** |
| | | **SECTION J** |
| This Document relates to: | * * * | **JUDGE BARBIER** |
| *All Remaining Cases in Pleading Bundle "B1"* | * * | **MAGISTRATE JUDGE WILKINSON** |

---

### BP'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR RECONSIDERATION OF THE COURT'S PTO 64 COMPLIANCE ORDER

BP Exploration & Production Inc. and BP America Production Company (collectively "BP"), pursuant to the Court's August 23, 2017 Order (Rec. Doc. 23321), file this omnibus response and opposition to the motions for reconsideration filed by plaintiffs in the B1 pleading bundle in response to the *Court's Order As to the Remaining Cases in the B1 Pleading Bundle Following PTO 60, PTO 64, and the Moratorium Hold Opt-Out Order* (Rec. Doc. 23051, the "PTO 64 Compliance Order").[1]  Movants had clear notice not only of the requirements of PTO 60, PTO 64, and the Moratoria Hold Opt-Out Order, but also that noncompliance would result in the dismissal of their claims.  Nevertheless, movants failed to comply with the Court's orders. The resulting dismissal of movants' claims was an appropriate exercise of the Court's inherent

---

[1]    The pending motions for reconsideration of the PTO 64 Compliance Order identified by the Court in its August 23, 2017 briefing order are Rec. Docs. 23091, 23254, 23263, 23264, 23265, 23278.  BP notes that additional motions seeking reconsideration to the PTO 64 Compliance Order were filed by plaintiffs Kern Marine Services Inc. (Rec. Docs. 23060/23099) and Fileteros de Cucharas Jose Luis Palacios Medina (Rec. Doc. 23085) and by *pro se* plaintiffs Raoul A. Galan (Rec. Doc. 23372), Richard McBride (Rec. Doc. 23370), and Power House Church of God Holy Ghost Power ("Power House Church") (Rec. Doc. 23371).   Finally, one *pro se* individual, Nagan Srinivasan, also served on BP a letter addressed to the Court that asks the Court to amend its PTO 64 Compliance Order with respect to Deepwater Construction Inc., a claimant that has not filed any complaint in these proceedings and has no case number in MDL 2179.  Because that letter (the "Deepwater Construction Inc. Letter Submission") has not been filed, it is attached hereto as **Exhibit 1**.  In the interest of efficiency and prompt resolution, BP addresses each of these additional submissions herein.

authority and discretion, and their motions provide no basis for reconsideration. With the very few exceptions noted below, each of their motions should be denied.

## BACKGROUND

**March 2016 - The PTO 60 Process.**  As part of its inherent authority to manage this highly complex litigation, the Court issued PTO 60 in March 2016 to require those plaintiffs who had timely filed claims for economic losses or property damage ("B1 claims"), and who had not released those claims, to take certain affirmative steps in order to proceed with their claims in this litigation.  (Rec. Doc. 16050.)  Prior to PTO 60, tens of thousands of plaintiffs with B1 claims remained in MDL 2179.  Many thousands of the B1 plaintiffs then on the Court's docket were members of the *Deepwater Horizon* Economic and Property Damages Settlement ("Economic Settlement") class who had released their claims against BP and (in many instances) been compensated through the Court Supervised Settlement Program ("CSSP"), but took no action to dismiss their claims in MDL 2179.  Still other B1 plaintiffs had made no presentment of their claims to BP, as required under the Oil Pollution Act ("OPA"), and thus failed to preserve their claims.

To resolve these significant case management challenges, on March 29, 2016, the Court in PTO 60 required each plaintiff with preserved B1 claims to provide a signed sworn statement certifying, among other things, (1) whether the plaintiff was a settlement class member; (2) whether the plaintiff had otherwise released its claim against BP; and (3) whether the plaintiff had made a pre-suit presentment of its claim as required by OPA.  The Court also required B1 plaintiffs who had filed only a short-form joinder in the B1 Master Complaint or a complaint joined in by other plaintiffs to file an individual lawsuit.  (PTO 60, Rec. Doc. 16050 at 3.)  By its

terms, PTO 60 applied to "all plaintiffs who have timely filed a claim in the B1 pleading bundle and who **have not** released their claim(s) to date."   (*Id.* at 2 (emphasis in original).)

No fewer than five times, the Court made clear in PTO 60 that timely compliance with the Court's Order was required for any plaintiff seeking to continue with its claims in MDL 2179:

- Only "Plaintiffs *who comply with this Order* are subject to further proceedings in this Court" (*see id.* ¶ 8 (emphasis added));

- "*Plaintiffs who* previously filed an individual lawsuit and *fail to comply* with the above requirements by May 2, 2016, *will have their complaints deemed dismissed with prejudice without further notice*." (*id.* ¶ 6(A)(ii) (emphasis added));

- "*Plaintiffs* that did not file individual lawsuits, but instead filed a SFJ and/or were part of a complaint with more than one plaintiff, *who fail to comply* with the above requirements by May 2, 2016, *will have their claims deemed dismissed with prejudice without further notice*." (*id.* ¶ 6(B)(ii) (emphasis added));

- "[T]he PSC and BP shall provide to the Court a list of all Plaintiffs *who did not comply with this Order and whose claims are therefore subject to dismissal*" (*id.* ¶ 10) (emphasis added); and

- "Accordingly, the Court . . . orders the designated plaintiffs to act in compliance with this Order *or face dismissal of their claims with prejudice* without further notice" (*id.* at 6 (emphasis added)).

On June 7, 2016, the Court issued its Show Cause Order as to PTO 60, identifying numerous plaintiffs who complied with PTO 60 and ordering that "[a]ny plaintiff who filed a claim in the B1 pleading bundle but failed to file any response to PTO 60 must **show cause** in writing on or before **June 28, 2016**, why this Court should not dismiss their B1 claim(s) with prejudice for failing to comply with the requirements of PTO 60."  (Rec. Doc. 18724 at ¶ 5.) Following the show cause deadline, on July 14, 2016, the Court issued its PTO 60 Compliance Order, which made clear that no B1 claims would remain subject to further proceedings in MDL 2179 other than those that had been (or would be, through the show cause process) deemed

compliant with PTO 60.  (Rec. Doc. 22003.)  The Court dismissed with prejudice the claims of "[a]ll remaining Plaintiffs in the B1 bundle" other than those deemed compliant with PTO 60 or who had filed timely show cause submissions.  (Rec. Doc. 20996 at ¶ 3.)[2]  "As to all Plaintiffs in the B1 bundle," the Court held, "only those Plaintiffs who have not previously released their claims, have made timely presentment as required by OPA, have previously filed an individual lawsuit, and have otherwise complied with the requirements of PTO 60 have preserved their individual claims.  All other B1 bundle claims are time-barred."  (*Id*. at ¶ 4.)

**February 2017 - PTO 64.**  The Court issued PTO 64, its sixth case management order in MDL 2179, on February 22, 2017.  (Rec. Doc. 22297.)  Among its other provisions, PTO 64 addressed the hundreds of plaintiffs with B1 claims remaining in MDL 2179 following the PTO 60 process.  In order to identify efficiently which of those hundreds of plaintiffs may have plausible claims under general maritime law, the Court required each Remaining B1 Plaintiff[3] who wished to pursue a general maritime law claim to submit a signed sworn written statement by April 5, 2017 stating whether the plaintiff (1) owned or otherwise held a proprietary interest in property that was physically damaged by oil from the *Deepwater Horizon*/Macondo well or by the oil spill response or (2) worked as a commercial fisherman in or near the Gulf of Mexico at the time of the oil spill.  (Rec. Doc. 22297 at 3.)  The Court made clear that any Remaining B1 Plaintiff's failure to comply with this requirement of PTO 64 would result in that plaintiff's general maritime law claims being deemed waived and dismissed with prejudice.  (*Id.* ("If any Remaining B1 Plaintiff who wishes to pursue a general maritime law claim fails to provide the

---

[2]   Those show cause submissions were resolved by the Court's PTO 60 Reconciliation Order in December 2016. (Rec. Doc. 22003.)

[3]   As used in PTO 64, "Remaining B1 Plaintiffs" meant those plaintiffs who had been deemed compliant with PTO 60 and who had not voluntarily dismissed their claims.  (Rec. Doc. 22297.)

required sworn statement by April 5, 2017, that plaintiff's general maritime law claims shall be deemed waived and ***any such general maritime law claims shall be dismissed without further notice and with prejudice***.") (emphasis added).)

**March 2017 - The Moratoria Hold Opt-Out Order**.  On March 17, 2017, the Court issued its Moratoria Hold Opt-Out Order, permitting claimants with unresolved claims in the Economic Settlement under a "Moratoria Hold" to opt out of the Settlement by April 24, 2017. (Rec. Doc. 22390.)  To the extent any moratoria hold opt outs had not previously complied with PTO 60, the Court permitted them until June 23, 2017 to meet the requirements of PTO 60 by filing an individual complaint and sworn written statement.  (*Id*. at 2.)

**July 2017 - The PTO 64 Compliance Order.**  Following the deadlines for compliance with PTO 64 and the Moratoria Hold Opt-Out Order, on July 19, 2017, the Court issued its PTO 64 Compliance Order.  That order identified:

    a. **215** Remaining B1 Plaintiffs who complied with both PTO 60 and 64, thus preserving any OPA and general maritime law claims for future proceedings in MDL 2179;

    b. **419** Remaining B1 Plaintiffs who complied with PTO 60, but not with PTO 64, thus preserving any OPA claims, but no general maritime law claims;

    c. **344** individuals and entities who failed to comply with PTO 60 and whose B1 claims had previously been dismissed with prejudice by the PTO 60 Compliance Order or the PTO 60 Reconciliation Order; and

    d. **17** individuals and entities who attempted but failed to comply with the Moratoria Hold Opt-Out Order, including its requirement that any such opt outs timely comply with PTO 60.  The Court dismissed with prejudice the cases filed by the 17 purported moratoria hold opt outs.  (Rec. Doc. 23051 at 5.)

**Noncompliant Plaintiffs' Motions for Reconsideration.**  A number of plaintiffs (and one CSSP claimant who is not an MDL 2179 plaintiff) filed motions for reconsideration in response to the PTO 64 Compliance Order, including:

a. Thirteen plaintiffs represented by Brent Coon & Associates who, for the first time, ask that the Court deem them compliant with PTO 60 (Rec. Doc. 23278);

b. Three plaintiffs (Ultra Wireline Services, LLC; Mark Rodgers; Romy F. Berel, III) who purported to be moratoria hold opt outs and to have complied with PTO 60 within the additional time allowed by the Moratoria Hold Opt-Out Order for compliance with PTO 60, but who never filed a claim with the CSSP that could be opted out and did not previously comply with PTO 60 (Rec. Docs. 23263, 23264, 23265);

c. One plaintiff (Kern Martin Services Inc.) who opted a claim out of moratoria hold, but failed to submit a PTO 60 sworn written statement until more than one month following the June 23, 2017 deadline (Rec. Docs. 23060, 23099);

d. Three plaintiffs (Russel Dardar, Efram Naquin, and Thoa Dinh Nguyen) who purport to represent a class of "released commercial fisherman [sic]" with B1 claims that they allege were "not subject" to PTO 60 or PTO 64 (Rec. Doc. 23091);

e. More than 200 movants represented by the Buzbee Law Firm, the vast majority of whom made no PTO 64 submission at all, who ask the Court to deem them compliant with PTO 64 and reinstate their general maritime law claims (Rec. Doc. 23254);

f. One Mexican fishing co-operative that argues that it satisfied the plaintiff signature requirement of PTO 64 by having its new authorized representative sign its PTO 64 sworn written statement (Rec. Doc. 23085);

g. Two *pro se* plaintiffs (Richard McBride and Power House Church) who have previously released and filed notices of dismissal with prejudice of all their claims in MDL 2179 (other than punitive and exemplary damages claims against Halliburton and Transocean), but still request to be listed on the Court's PTO 60 and PTO 64 compliance lists (Rec. Docs. 23370, 23371);

h. One *pro se* plaintiff and his two businesses (Raoul A. Galan, Jr., Cypress Lake No. 1, LLC, and Galan Real Estate Company) who seek to proceed as moratoria hold opt out plaintiffs despite having no claim on moratoria hold, submitting no opt out request, and filing no PTO 60 sworn statement (Rec. Doc. 23372); and

i. One *pro se* claimant (Deepwater Construction, Inc.) who seeks to proceed as a moratoria hold opt out plaintiff despite never filing either a complaint or a PTO 60 sworn statement (Ex. 1).

With only a few exceptions (discussed below), these movants each failed to comply with the Court's orders—orders that spelled out the importance of compliance with PTOs 60 and 64 and the consequence of a failure to comply.

6

**ARGUMENT**

Movants have offered no credible reason why the Court should reconsider its ruling that they failed to comply with its orders and should therefore have their claims dismissed.[4]  To prevail on a motion for reconsideration,[5] the movant must clearly establish at least one of three factors:  (1) an intervening change in the controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error in law or fact.  *Henry v. New Orleans Louisiana Saints, LLC*, No. CV 15-5971, 2016 WL 3524107, at *2 (E.D. La. June 28, 2016) (Barbier, J.) (citing *Schiller v. Physicians Res. Grp. Inc*., 342 F.3d 563, 567 (5th Cir. 2003)).

Movants make no effort to meet these requirements.  They cite no change in the controlling case law nor any new evidence relevant to the dismissal of their claims for failure to comply with the Court's orders.  And far from "clearly establish[ing]" that the Court has engaged in manifest error, movants do not and cannot call into question the Court's authority to require them to comply with the requirements of PTO 60 and PTO 64 in order to proceed with their claims in MDL 2179.

PTO 60, PTO 64, and the Moratoria Hold Opt-Out Order are appropriate exercises of the Court's authority and discretion in managing this litigation and enforcing its orders.  *See Cranford v. Morgan S., Inc*., No. 10-60315, 2011 WL 1258515, at *3 (5th Cir. Apr. 5, 2011) ("A district court has the inherent power to manage and control its own docket in order to achieve the orderly and expeditious disposition of cases.").  Movants were on notice from the time those

---

[4]   BP does not oppose the motions for reconsideration filed by a small number of plaintiffs, whose claims are addressed only in Sections II.E and III.B below.

[5]   Because the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration, a timely motion for "reconsideration" will be treated as Rule 59(e) motion to alter or amend a judgment.  *St. Paul Mercury Ins. Co. v. Fair Grounds Corp*., 123 F.3d 336, 339 (5th Cir. 1997); *see also In re Fellows*, 19 F.3d 245, 245-46 (5th Cir. 1994); *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993) (motion for reconsideration filed within time specified by Fed. R. Civ. P. 59(e) is treated as motion to alter or amend).

orders issued that failure to timely meet the requirements of those orders would result in dismissal of their claims, and yet they failed to comply.  Their motions should be denied.

## I.    PTO 60 And PTO 64 Are Appropriate Exercises Of The Court's Inherent Authority.

PTO 60, PTO 64, the Moratoria Hold Opt-Out Order, and their related compliance orders are appropriate exercises of the Court's inherent authority and discretion in managing this highly complex litigation, authority that the Fifth Circuit has confirmed in other MDL 2179 proceedings.  *See In re: State of Louisiana, Petitioner*, No. 11-30178, Order Denying Petition for Writ of Mandamus to the United States District Court for the Eastern District of Louisiana, No. 2:10-MD-2179, issued April 11, 2011, at 2 ("We have long held that a district court has the inherent authority and discretion to consolidate and manage complex litigation, particularly when serving as the transferee court in a multidistrict proceeding."); *see also Cranford*, No. 10-60315, 2011 WL 1258515, at *3 ("A district court has the inherent power to manage and control its own docket in order to achieve the orderly and expeditious disposition of cases.").

In this case, the orderly and expeditious disposition of the B1 claims before the Court required the efficient elimination of claims that had been released through the class settlement or through claims programs or that had failed to meet the OPA presentment prerequisite to maintaining a suit.  They also required a solution to the case management problems created by the fact that tens of thousands of plaintiffs in the consolidated proceedings had filed only mass joinder actions or form joinders in the now-dismissed B1 master complaint.  The requirements that PTO 60 placed upon plaintiffs in order to preserve their claims were tailored to achieve these ends and so are an appropriate exercise of the Court's discretion.  Likewise, PTO 64's requirements of a sworn written statement identifying the factual basis for any Remaining B1 Plaintiff's assertion of maritime law claims was appropriately tailored to advance the case

management of those actions by efficiently identifying which if any of the hundreds of Remaining B1 Plaintiffs believed they had plausible claims under general maritime law.

The Fifth Circuit has recognized that the Court's authority extends to dismissal of actions as part of the court's "broad discretion to preserve the integrity and purpose of [a] pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (citation and internal quotation marks omitted).  The ability of the Court to enforce compliance with its order by dismissing noncompliant claims was essential to the success of PTO 60 and 64.  And there can be no doubt that the Court repeatedly warned plaintiffs that noncompliance would result in dismissal with prejudice.

Several movants argue that the Court was required to consider lesser, alternative sanctions before dismissing their claims for noncompliance with PTO 60.  (*See, e.g.*, Rec. Doc. 22074 at 11-12.)  The Fifth Circuit has made clear, however, that the "lesser sanctions" that ordinarily precede dismissal may be supplied by ***explicit warnings*** that noncompliance with a court order may result in dismissal of a plaintiff's claims.  *Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 442 (5th Cir. 2016) ("With respect to lesser sanctions, we have previously made clear that they 'include assessments of fines, costs, or damages against the plaintiff, conditional dismissal, dismissal without prejudice, and explicit warnings.'"); *Thrasher v. City of Amarillo*, 709 F.3d 509, 514 (5th Cir. 2013); *Rogers v. Kroger Co.*, 669 F.2d 317, 321-22 (5th Cir. 1982) ("[E]xplicit warnings are preliminary means or less severe sanctions that may be used to safeguard a court's undoubted right to control its docket.").[6]

---

[6]   Other Circuits agree.  The Third and Ninth Circuits, for example, have held that warning a plaintiff that failure to obey a court order will result in dismissal can be a sufficient "consideration of alternatives" prior to dismissing a claim with prejudice.  *See Buss v. W. Airlines, Inc.,* 738 F.2d 1053, 1054 (9th Cir. 1984), *cert. denied,* 469 U.S. 1192 (1985); *Estrada v. Speno & Cohen*, 244 F.3d 1050, 1057 (9th Cir. 2001); *Titus v. Mercedes Benz of N. Am.,* 695 F.2d 746, 749 n. 6 (3d Cir. 1982) (listing "warning" as a lesser alternative sanction).

PTO 60 and PTO 64 both contained such explicit warnings, and movants in this case were on notice from the day those orders issued many months ago that failure to timely comply with the Court's orders would result in dismissal of their claims.  Moreover, such an approach is particularly appropriate in the case of a highly complex proceeding such as MDL 2179, in which the individualized consideration of successive and tiered sanctions now suggested by some movants is impracticable.  As the Ninth Circuit has recognized, "[t]he logistical complexity involved in multidistrict litigation makes it impossible to issue personalized warnings to each one of thousands of parties and give second (or, in some cases, third, fourth, or fifth) chances based on each party's unique circumstances."  *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1240 (9th Cir. 2006).  Given the extraordinary complexity involved in managing the many tens of thousands of B1 claims in MDL 2179, PTOs 60 and 64—including their clearly noticed provision that the claims of noncompliant plaintiffs would be dismissed—are necessary and appropriate exercises of the Court's inherent authority and discretion.

**II.     The Court Properly Determined That 222 Movants Failed To Comply With PTO 60 And Thus Have No Remaining B1 Claims.**

In July 2016, the Court's PTO 60 Compliance Order identified the Remaining B1 Plaintiffs who had complied with PTO 60 and, with the exception of certain plaintiffs with pending show cause submissions, dismissed all other B1 claims with prejudice.  Now, more than a year after the Compliance Order and more than seven months after the Court resolved all show cause submissions in its Reconciliation Order, 222 movants ask this Court for the first time to reinstate their B1 claims.  (*See* Rec. Docs. 23091 (204 Claimants), 23263 (1 Claimant), 23264 (1 Claimant), 23265 (1 Claimant), 23060 (1 Claimant), 23372 (3 Claimants), 23370 (1 Claimant), 23371 (1 Claimant), Rec. Doc. 23278 (8 Claimants), Ex. 1 (Deepwater Construction Inc. Letter Submission) (1 Claimant).)

10

Movants have failed to advance any meritorious argument to dispute the Court's rulings that they failed to comply with PTO 60's requirements and must therefore have their claims dismissed—much less that the Court's finding was manifest error. Nor do they suggest any basis to conclude that they should be exempted from the requirement that the claims of B1 plaintiffs noncompliant with PTO 60 should be dismissed. Their motions should be denied.

**A.      The Purported "Released Fishermen" Class Failed To Comply With PTO 60.**

Over the past seventeen months, the Court has issued numerous orders, and resolved a vast number of show cause submissions and motions, to identify and settle the list of Remaining B1 Plaintiffs in MDL 2179. Three plaintiffs represented by Waltzer Wiygul & Garside LLC, who have made no effort to comply with PTO 60 and whose B1 claims were therefore long ago dismissed with prejudice by the PTO 60 Compliance Order, now ask the Court to reverse that case management process and reinstate the claims of 204 commercial fishermen (as part of a putative class of commercial fishermen) (collectively, the "WWG Claimants"). The WWG Claimants' motion is directly contrary to PTO 60, its related orders, and the Court's case management plan in MDL 2179, and it must be denied.

The WWG Claimants are commercial fishermen who signed Gulf Coast Claims Facility ("GCCF") final releases, but contend those releases were invalid and their claims were therefore not released. (Rec. Doc. 23091-1 at 1.) In a remarkable about-face, the WWG Claimants now contend that, although the entire premise of their putative class action was that their *claims are not released*, they nonetheless fit into an exception to PTO 60 for *claims that are released*.

The WWG Claimants' argument is specious. PTO 60 imposed requirements on "all plaintiffs who have timely filed a claim in the B1 pleading bundle and who **have not** released their claim(s) to date[.]" (Rec. Doc. 16050 ¶ 6 (emphasis in original).) The reason for this limitation is obvious: Because the Court sought to organize and streamline the *remaining* B1

11

claims through the PTO 60 process, there was no need for plaintiffs who lacked ongoing claims to participate.  By the plain terms of PTO 60, if the WWG Claimants believed they "ha[d] not released their claim(s) to date" because their GCCF releases were not enforceable, they were required to comply with PTO 60 in order to preserve those claims.

In short, if the WWG Claimants contend that they released their claims, then their PTO 60 compliance is irrelevant because they have already conceded that their claims should be dismissed based on those releases. If instead the WWG Claimants contend that they have not released their claims, then they were required to comply with PTO 60 and have missed the deadline to do so by fifteen months and counting.   Their claims should remain dismissed.

### B.    Eight Purported Moratoria Hold Opt Out Movants Failed To Comply With PTO 60.

#### 1.    Ultra Wireline Services, LLC; Romy F. Berel, III; Mark Rodgers

In the PTO 64 Compliance Order, the Court properly reaffirmed that the claims of Ultra Wireline Services, LLC ("Wireline"), Romy F. Berel, III, and Mark Rodgers have been dismissed with prejudice for noncompliance with PTO 60.  In April 2013, Wireline, Berel, and Rodgers each filed short-form joinders in MDL 2179, alleging "B1" economic loss claims relating to the business operations of Wireline, with Berel and Rodgers also alleging individual economic losses as owners of Wireline.  (Case No. 10-08888, Rec. Docs. 132064, 132072, 132098.)  Although their B1 claims were subject to PTO 60, these plaintiffs did not file any individual complaints nor submit any PTO 60 sworn written statements by the PTO 60 deadline, and thus their claims were dismissed with prejudice by the PTO 60 Compliance Order.

Wireline, Berel, and Rodgers also filed no claims with the CSSP.  Notwithstanding that fact, on June 5, 2017, Wireline, Berel, and Rodgers each filed new complaints before this Court alleging moratoria losses, identifying them as part of the B1 pleading bundle, and attaching PTO

60 sworn written statements and signed opt out forms that purportedly opted their claims out of moratoria hold in the CSSP.  (*See* Complaints in Case Nos. 17-05490, 17-05491, 17-05493.) Because Wireline, Berel, and Rodgers had no claims pending in the Economic Settlement to opt out, however, the Court determined their opt outs to be invalid and thus that their attempts to comply with PTO 60 were untimely and their complaints would be dismissed with prejudice. (Rec. Doc. 23051 at 4; 23051-4 at 1-2.)

These plaintiffs mistakenly argue that PTO 60 does not apply to their claims because "[t]he moratoria claims were specifically excluded from the B1 pleading bundles."  (Rec. Docs. 23263-1 at 6, 23264-1 at 6, 23265-1 at 6.)  Not true.  Although moratoria loss claims were expressly reserved under the Economic Settlement, they were never excluded from the B1 bundle or from PTO 60—as the Moratoria Hold Opt-Out Order itself confirms by granting moratoria hold opt outs until June 23, 2017 to comply with PTO 60.  Because these plaintiffs are not valid moratoria hold opt outs, their deadline for compliance with PTO 60 was in May 2016. Accordingly, their claims were properly dismissed with prejudice long before their belated attempt at compliance in June 2017.[7]

### 2.   Kern Martin Services, Inc.

The Moratoria Hold Opt-Out Order provided that "***any Claimant who elects to Opt Out a claim*** pursuant to this Order and has not previously filed an individual complaint and complied with Pretrial Order No. 60 ***must file*** an individual complaint (one per plaintiff) and ***Sworn Statement that substantially complies with the requirements of Pretrial Order No. 60 by no***

---

[7]   Plaintiffs' argument that their claims were timely filed as a result of class action tolling is both mistaken and beside the point.  Each plaintiff had B1 claims on file before the Court since April 2013; thus it is plaintiffs' noncompliance with PTO 60 rather than untimeliness of their claims that is the basis for their dismissal. Nonetheless, plaintiffs are mistaken that OPA claims relating to the *Deepwater Horizon* incident filed after July 2016 may be timely on the basis of class tolling.  The Court has already ruled that such claims are time-barred. (Rec. Doc. 20996 at ¶ 4.)

*later than June 23, 2017*." (Rec. Doc. 22390 at 2 (emphasis added and internal citations omitted).) Movant Kern Martin Services, Inc. ("Kern Martin") failed to complete[8] and submit a PTO 60 sworn written statement until July 24—one week after the Court had issued its PTO 64 Compliance Order dismissing Kern Martin's claims and nearly five weeks after the compliance deadline. Kern Martin argues that its failure to comply with the Court's orders was an "oversight" by its counsel, sanctions other than dismissal are appropriate, and no prejudice has resulted from its noncompliance. (Rec. Doc. 23060-1 at 2-4.)

Kern Martin has not established any of the three factors for reconsideration. It identifies no intervening change in the controlling law, new evidence not previously available, or manifest error in law or fact as grounds for the Court to revisit its PTO 64 Compliance Order. *See Henry*, 2016 WL 3524107, at *2. Instead, Kern Martin blames its noncompliance with the Moratoria Hold Opt-Out Order on "a miscommunication amongst counsel." (Rec. Doc. 23060-1 at 2.) Kern Martin does not attempt to explain why its failure to comply with PTO 60 was exceptional and meets the requirements for reconsideration. Neither Kern Martin's nor its counsel's failure to follow the Court's clear direction justifies undoing the Court's order. *See In re Pollak*, 223 F. App'x 309, 310 (5th Cir. 2007) (holding no excusable neglect exists where appellant alleged "misinformation" from counsel caused his untimely filing); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) ("[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect'" of a court deadline.). In its December 2016 Reconciliation Order, the Court rejected the same arguments now proffered by Kern Martin, dismissing the B1 claims of several other plaintiffs who likewise

---

[8]   Because Kern Martin's sworn statement is dated July 24, 2017, it appears the sworn statement was not completed (and not merely not served or filed) until long after the compliance deadline. (*See* Rec. Doc. 23099-1 at 3.)

14

failed to submit their PTO 60 sworn statements until five weeks after the deadline. (Rec. Doc. 22003 at 14, 18-19.) In doing so, the Court rejected those plaintiffs' arguments that the failure timely to comply with PTO 60 should be excused because it was not intentional and because permitting the claims to proceed would not unduly prejudice other parties or the Court. (*Id.* at 18-19.) Consistent with the Court's Reconciliation Order, Kern Martin's motion for reconsideration should be denied.

### 3.     Deepwater Construction Inc.

Nagan Srinivasan submitted an unfiled letter brief on behalf of claimant Deepwater Construction, Inc. ("Deepwater Construction"), of which Srinivasan states that he is president, asking the Court to "reinstate" its claim. (Ex. 1 at 1-2.) Deepwater Construction, however, has no claim in MDL 2179 to be reinstated: at no time has Deepwater Construction filed any claim in MDL 2179, let alone met any of the requirements of PTO 60.

Based on information provided by the CSSP, Deepwater Construction validly opted a claim out of moratoria hold and thus it had until June 23, 2017 to comply with PTO 60. To date, Deepwater Construction has filed no individual complaint stating its claims nor submitted any PTO 60 sworn statement.[9] Because it has failed to comply with PTO 60 and the Moratoria Hold Opt-Out Order, and has not even filed any claims in this litigation, its request must be denied.

### 4.     Raoul A. Galan, Jr., Cypress Lake No. 1, LLC, and Galan Real Estate Company

*Pro se* movant Raoul A. Galan, Jr., initiated four cases in this Court on June 23, 2017 on behalf of himself and two businesses, Cypress Lake No. 1, LLC and Galan Real Estate Company

---

[9]     BP also notes that it has been unable to confirm that "Deepwater Construction, Inc." is an existing legal entity from the Texas Secretary of State's business entity records. Srinivasan's submission attaches several documents relating to an apparently separate entity also affiliated with Srinivasan, Deepwater Structures Inc. ("Deepwater Structures"), that *did* successfully comply with PTO 60 and the Moratoria Hold Opt-Out Order. (*E.g.*, Ex. 1 at 6, 9-23.) Based on review of those documents, much of the activity and operations that Srinivasan's submission attributes to Deepwater Construction relates instead to plaintiff Deepwater Structures.

(Case Nos. 17-6131, 17-6133, 17-6134, 17-6135).   At no time, however, did Galan or his businesses submit any opt out request or even have any CSSP claim on moratoria hold that could be opted out; neither did they ever submit any PTO 60 sworn statement.   Their cases were dismissed on July 19 pursuant to this Court's PTO 64 Compliance Order for failure to comply with the Moratoria Hold Opt-Out Order and PTO 60.   (Rec. Doc. 23051-4 at 1-2.)

Galan provides no evidence to dispute this Court's findings that Galan: (1) did not submit an opt out request to the CSSP, as required by the Moratorium Hold Opt Out Order; (2) did not provide evidence that he had submitted his claims to the CSSP; and (3) to the extent his claims were submitted to that program, they were not on moratoria hold at the time of the Moratoria Hold Opt-Out Order.   (Rec. Doc. 23051-4 at 1-2.)   Instead, in his Motion for Leave to Proceed in U.S. District Court, Galan contends that he failed to properly preserve his moratoria claims because he "relied on his case manager" at the CSSP.   (Rec. Doc. 23372 at 1.)   Specifically, Galan alleges that this case manager instructed him in 2013 to file his *Deepwater Horizon*-related claims with the United States Coast Guard instead of pursuing them through litigation. (*Id.*)   Galan provides no explanation for why he subsequently sat on his rights with respect to these claims for four years before filing them against BP this June.   Galan has not established why his years-long neglect should be excused.   Accordingly, Galan's motion should be denied.

### C.   Richard McBride And Power House Church Voluntarily Dismissed Their Claims Against BP, And Those Claims Should Not Be Reinstated.

Despite having long ago dismissed their claims with prejudice, *pro se* plaintiffs Richard McBride and Power House Church each filed motions seeking to remain on the Court's list of Remaining B1 Plaintiffs.   (Rec. Docs. 23370, 23371.)   In their nearly identical motions, they admit that, "Plaintiff [Power House Church] did voluntarily dismissed some of it claim [sic]," reserving only punitive damages claims against "HESI/Transocean."   (Rec. Docs. 23370 ¶ VI,

23371 ¶ VI.)  Indeed, on June 29, 2016, McBride filed a Notice of Voluntary Dismissal(s) with Prejudice (Rec. Doc. 20620), voluntarily dismissing "all actions, claims, causes of action, and short-form joinders," except for claims for punitive or exemplary damages against certain Transocean and Halliburton defendants, "pursuant to . . . the Full and Final Release, Settlement, and Covenant Not to Sue entered into by the parties[.]"  (*Id*. at 1.)  The notice identified claims by The Queen Esther Commercial Fishing, Rico McBride, and Richard McBride, Sr., as well as certain short form joinders, for dismissal.  (*Id.* at 2.)  Likewise, on July 21, 2016, McBride filed a similar Notice of Voluntary Dismissal with respect to Power House Church's claims.  (Rec. Doc. 21102 at 1-2.)  Again, this notice carved out only punitive and exemplary damages claims against certain Transocean and Halliburton defendants.  (*Id.* at 1.)

BP is aware of four actions filed by McBride (16-6635, 16-15258) and Power House Church (16-4322, 16-15253) in connection with the *Deepwater Horizon* spill.  To the extent that those actions assert claims against any of the BP Defendants, those claims have been voluntarily dismissed with prejudice, and there is no basis to reinstate them.  (Rec. Docs. 20620, 21102.)  BP takes no position on these plaintiffs' claims against other defendants, but notes that Case Nos. 16-15258 and 16-15253 were filed long after the PTO 60 compliance deadline and, therefore, are not PTO 60-compliant.

### D.  Eight Movants Represented By Brent Coon & Associates Failed To Comply With PTO 60 And Made No Show Cause Submissions As Required By The Court.

More than thirteen months after the Court issued its PTO 60 Compliance Order, several plaintiffs[10] represented by Brent Coon & Associates now move to be deemed compliant with PTO 60 and subject to further proceedings in MDL 2179.  None of the movants was identified in

---

[10]   As discussed in Section II.E below, five of the Coon movants are uniquely situated and should be deemed compliant with PTO 60.  They are not addressed in this section.

the PTO 60 Compliance Order as compliant with PTO 60 or as having a pending show cause submission, and thus they fell within the Court's order dismissing all other B1 claims with prejudice.

First, the motion is untimely. Movants cite to no authority, whether under the Federal Rules or otherwise, that permits them to challenge—more than one year later—the long-settled judgment of the Court dismissing their claims. Moreover, these movants were given, but neglected, their opportunity in June 2016 to show cause why their claims should not be dismissed for failure to comply with PTO 60. Thus, even if their request for reconsideration were timely at this late date, a motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). The motion should be denied on that basis alone.

Second, none of these eight plaintiffs complied with PTO 60 or made any attempt to show cause why their claims should not therefore be dismissed. Movants Action Restoration, Inc.; SGI Land Company, LLC; Ocean Flex OMTS; and Wentzell Innovations dba Chum Churn each failed to submit a timely PTO 60 sworn statement (and, indeed, each admits that it did not submit a sworn statement until weeks after the PTO 60 deadline, *see* Rec. Doc. 23278-1 at 2-3).[11] Movants Luke Martin, Nelson Mast, Russell Lengacher, and James Glick were each plaintiffs in a single action (16-06303) filed on May 16, 2016. Although all four plaintiffs allege in their motion that their PTO 60 sworn statement was attached to the complaint in that action,

---

[11]   Although Action Restoration Inc. argues that it "is unknown when or if prior counsel filed a fact sheet," that plaintiff's individual case docket (12-1422) confirms that it never filed a sworn statement at any time. Moreover, Action Restoration Inc. admits that its current counsel (Brent Coon & Associates) did not attempt to submit a sworn statement until June 27, 2016—many weeks after the compliance deadline.

no such sworn statements were in fact included as exhibits to the complaint served on BP or otherwise.  (*See* Complaint, Case No. 16-06303, Rec. Doc. 1.)

Having failed timely to comply with PTO 60, each of these eight plaintiffs was subject to the Court's June 7, 2016 order that any plaintiff who filed a claim in the B1 pleading bundle but failed to file any response to PTO 60, or who believed they had complied with PTO 60 but was not listed as compliant in the Court's June 7, 2016 order, "must **show cause** in writing on or before **June 28, 2016**, why this Court should not dismiss their B1 claim(s) with prejudice for failing to comply with the requirements of PTO 60."  (Rec. Doc. 18724 at 2-3.)  These plaintiffs made no show cause submission asking that their claims not be dismissed notwithstanding their significantly late submissions.  Their B1 claims were therefore properly dismissed with prejudice in the Court's July 14, 2016 Compliance Order.  Particularly in view of their repeated inattention to this Court's directives, movants have identified no basis to reconsider that order.

### E.    BP Does Not Oppose Five Additional Plaintiffs Being Deemed Compliant With PTO 60.

Five plaintiffs represented by Brent Coon & Associates[12] present a unique circumstance, and BP does not oppose their request to be deemed compliant with PTO 60.  These plaintiffs timely complied with PTO 60 but were omitted from the July 14, 2016 PTO 60 Compliance Order because BP had understood that they were settling and releasing their claims through the neutrals process.  (*See* Rec. Doc. 22003 at 4 (noting that certain plaintiffs who "had since dismissed their claims against BP and/or had since executed releases of their claims and were in the process of dismissing their claims against BP" were not included on the PTO 60 compliance list).)  Because BP now understands that these five plaintiffs did not, in fact, settle and execute

---

[12]    Tommys Gulf Seafood (16-6610), C-IV Ventures, Inc. (16-6335), Jacob Glick (16-6303), Loren Glick (16-6303), Tien Thi Hoang (16-6175).

releases of their claims, it has no objection to their request that they be deemed compliant with PTO 60. BP, however, reserves its rights to seek dismissal of these plaintiffs' claims on other grounds, including based on releases.

### III.   The Court Properly Determined That 243 Movants Failed To Comply With PTO 60 And/Or PTO 64 And Thus Have No Remaining Maritime Law Claims.

#### A.   243 Buzbee Law Firm Movants Failed To Comply With PTO 60 And/Or PTO 64.

The Buzbee Law Firm submitted one omnibus motion on behalf of 246 claimants who were identified in the Court's July 19 Order as having failed to comply with PTO 60 and/or PTO 64 (the "Buzbee Motion"). (Rec. Doc. 23254.) As discussed in Section III.B below, the Buzbee Motion provides sufficient evidence that three claimants[13] did indeed comply with PTO 64, and BP does not oppose the reinstatement of those claimants' general maritime law claims. The remaining 243 claimants at issue in the Buzbee Motion, however, failed to comply with the requirements of PTO 60 and/or PTO 64, their claims were properly dismissed (just as this Court warned they would be), and the Buzbee Motion's vague assertion of "impossibility" is not a basis for undoing this Court's previous dismissal decisions.

##### 1.   65 Movants Failed To Submit PTO 64 Sworn Statements By The Deadline.

The Buzbee Motion asks the Court to reconsider its dismissal of 65 claimants' general maritime law claims for failure to submit a PTO 64 sworn statement until after the April 5, 2017 deadline, contending that it "was impossible to timely comply." (Rec. Doc. 23254-1 at 3; Exhibit 2 hereto (identifying these 65 plaintiffs)[14]; Rec. Doc. 23051 at Exhibit 2B (identifying

---

[13]   S.C.P.P. Barra de Santa Maria, S.C. de R.L. (Case No. 16-04487), S.C.P.P. Barra de Boca Ciega, S.C. de R.L. (Case No. 16-04392), S.C.P.P. Lagunas Unidas al Sistema, S.C. de R.L. (Case No. 16-04373).

[14]   The Buzbee Motion identified 62 of these plaintiffs in Exhibit D thereto. Three additional plaintiffs who failed to submit PTO 64 statements were included in Exhibit A to the Buzbee Motion, but not Exhibit D: Jose Cano

these 65 plaintiffs, *inter alia*, as claimants "with materially deficient PTO 64 Responses")).  If this feels like dejá vú all over again, it may be because these Claimants ***already*** filed a motion a month after the PTO 64 deadline seeking an extension, arguing that PTO 64's requirements were "Herculean" and compliance was impossible.  (Rec. Doc. 22773-2 at 1.)  This Court ***already*** denied that motion.  (Rec. Doc. 22778.)  Claimants' renewed argument that timely compliance with PTO 64 was purportedly impossible should be rejected again.  The Buzbee Motion asks this Court to undo its reasoned exercise of its inherent power to manage this litigation under Fed. R. Civ. P. 59(e) and 60(b)(6) but has not satisfied the criteria for either.

Under Rule 59(e), a Court need only reconsider its decision where a movant clearly establishes at least one of three factors: (1) an intervening change in the controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error in law or fact. *Henry,* 2016 WL 3524107, at *2 (citing *Schiller*, 342 F.3d at 567).  The Buzbee Motion does not attempt to argue (because it cannot) that any of these three factors are satisfied.  Reconsideration under Rule 59(e) is unwarranted.

Under Rule 60(b)(6), a Court may relieve a party from a final judgment for "any other reason that justifies relief."  No such reason exists here.  Claimants argue that it was impossible for them to comply with PTO 64, but they cite no case in which a Court found a plaintiff's inability to keep in regular contact with its counsel to be a "reason that justifies relief" under Rule 60(b)(6), let alone in a case with the docket management complexities of the *Deepwater Horizon* litigation.  And even if "impossibility" were sufficient grounds to invoke Rule 60(b)(6), Claimants' argument that it was impossible to comply with PTO 64 is unavailing.  It plainly ***was not*** impossible to comply, as some of the Buzbee firm's Mexican fishermen clients ***did*** timely

---

(16-04622; Josefa Ortiz Dominguez (16-04929); Maria de la Luz Pena Crisanto (16-04928).  All of these plaintiffs are identified in Exhibit 2 hereto.

comply with PTO 64.  (*See, e.g.,* Rec. Doc. 23254-1 at 3 ("seven of the claimant [sic] timely filed and submitted signed statements").)  Claimants likewise could have and should have complied with this Court's order.  These Claimants had ample notice that failure to comply with PTO 64 would result in dismissal of their general maritime law claims.  (Rec. Doc. 22297 at 3 (providing that if a plaintiff failed to submit a sworn statement by April 5, the plaintiff's general maritime law claims "***shall be dismissed without further notice and with prejudice***.") (emphasis added).)  And despite Claimants' description of PTO 64 compliance as "Herculean," it was anything but.  Under PTO 64, claimants had six weeks—42 days—to fill out and sign a one-page form.  (Rec. Doc. 22297 (providing claimants six weeks to complete and serve the PTO 64 sworn statements).)  If these Claimants cannot fill out a one-page form within six weeks, then they also will not be able to fulfill the more onerous obligations of prosecuting a claim, such as attending depositions and replying to document requests.  (*See, e.g.,* Fed. R. Civ. P. 33 (parties must respond to interrogatories within 30 days).)

### 2. Two Buzbee Claimants Failed To Sign Their Sworn Statements.

Two of the claimants at issue in the Buzbee Motion failed to sign their PTO 64 Sworn statements, as required under PTO 64: S.C.C.P.P. Mano de Leon, S.C. de R.L. (Case No. 16-04366) and Pescadores del Golfo de Mexico, S.C. de R.L.  (*See* Rec. Doc. 22297.)  The Buzbee Motion does not contend that either of these claimants actually submitted sworn statements with valid signatures.[15]  And the Buzbee Motion fails to provide any valid basis for reconsidering the dismissal of these claimants' general maritime law claims; as discussed above, this was a valid use of this Court's discretion, and the purported "impossibility" of complying with the pre-trial

---

[15]   The Buzbee Motion contends that S.C.C.P.P. Mano de Leon, S.C. de R.L.'s general maritime claims should not have been dismissed because its Sworn Statement was timely submitted on April 5, 2017.  (Rec. Doc. 23254-1 at 9-10.)  But this Court dismissed S.C.C.P.P. Mano de Leon, S.C. de R.L.'s general maritime claims because its sworn statement lacked a valid signature, not because it was submitted late.  (Rec. Doc. 23051-2 at 10.)

order is not a basis for reversing the dismissal.  Accordingly, the dismissal of these claimants' general maritime law claims should stand.[16]

### 3.    173 Movants Submitted No PTO 64 Sworn Statements At All.

The Buzbee Motion also asks this Court to reconsider its dismissal of 173 Claimants' general maritime claims for failure to submit any PTO 64 sworn statement.  (*See* Rec. Doc. 23254-2 (Exhibit A to Buzbee Motion, identifying 246 Buzbee Claimants); Exhibit 3 hereto (identifying the subset of 173 Buzbee Claimants who failed to submit a PTO 64 sworn statement); Rec. Doc. 23051 at Exhibit 2A (identifying these 173 Buzbee Claimants, *inter alia*, as claimants "who submitted no response to PTO 64").)  The Buzbee Motion does not contend that any of these 173 Buzbee Claimants did, in fact, submit PTO 64 sworn statements at all, let alone by the April 5, 2017 deadline.  Nor does it explain why—even assuming it was impossible for these 173 claimants to submit a one-page form by April 5—they still have not submitted PTO 64 sworn statements more than five months after the original deadline.

### 4.    Three Buzbee Movants Did Not Even Comply With PTO 60.

The Buzbee Motion further seeks reconsideration of the dismissal of three claimants who failed to comply with PTO 60:  Daniel Cepeda (16-06330, 13-02791), Fernando Canul Mijangos (16-06330, 13-02791), S.C.P.P. 20 De Abril Del Poblado Ignacio Zaragoza, S.C. de R.L. de C.V. ("20 de Abril") (16-07285)  (Rec. Doc. 22003 at 19 (dismissing 20 de Abril's claims and all the claims asserted in Case No. 16-06330 for failure to comply with PTO 60); Rec. Doc. 23254-2 (Exhibit A to Buzbee Motion, identifying these three claimants, *inter alia*, as subjects of the Buzbee Motion).)  Compliance with PTO 60 was required by ***May 2016***, and claimants who believed they were compliant with PTO 60 were required to show cause why their claims should

---

[16]   The Buzbee Motion *did* provide evidence that certain claimants' sworn statement signatures were valid; those claimants are discussed in Section III.B below.

not be dismissed by *June 2016*.   (Rec. Doc. 18724 at ¶ 5.)  The Buzbee Motion, filed in August 2017, and providing no valid basis for reconsideration, is plainly too late.  This Court has already made that clear to these same claimants.  (Rec. Doc. 22003 at 19.)  These claimants' claims should remain dismissed for failure to comply with the Court's order.

### B.      BP Does Not Oppose Four Additional Plaintiffs Being Deemed Compliant With PTO 64.

Although the vast majority of movants have failed to make any meritorious arguments in favor of reconsideration, BP does not oppose four B1 plaintiffs' motions to be added to the Court's PTO 64 compliance list.  The PTO 64 Compliance Order deemed a number of Mexican fishing co-operatives noncompliant with PTO 64 on the grounds that their PTO 64 sworn statements lacked the required plaintiff signature.  In some instances, those Mexican fishing co-operatives' sworn written statements included handwritten signatures by persons other than the individuals who had signed those plaintiffs' PTO 60 sworn statements and had been identified thereon as the individuals authorized to pursue each Mexican fishing co-operative's claim.  (*See, e.g.*, Rec. Doc. 23254-5 (PTO 64 Sworn Statement for *Raul Sanchez,* using the business name S.C.P.P. Barra de Santa Maria, S.C. de R.L., signed by *Agustin Santes Hernandez*).)

Four Mexican fishing co-operatives who were deemed noncompliant with PTO 64 solely due to the apparent lack of an appropriate plaintiff signature moved for reconsideration:  S.C.P.P. Barra de Santa Maria, S.C. de R.L. (Case No. 16-04487), S.C.P.P. Barra de Boca Ciega, S.C. de R.L. (Case No. 16-04392), S.C.P.P. Lagunas Unidas al Sistema, S.C. de R.L. (Case No. 16-04373), and Union de Fileteros de Cucharas Jose Luis Palacios Medina (Case No. 16-04806). (Rec. Docs. 23254, 23085.)  In their motions, each of those plaintiffs provided documentation purporting to show that the signatories to their PTO 64 sworn written statements are the current presidents of the co-operatives or otherwise are the individuals authorized to sign on behalf of

each co-operative.  Based on that documentation, and because their PTO 64 submissions were materially compliant in other respects, BP does not oppose those four plaintiffs being deemed compliant with PTO 64.[17]

## CONCLUSION

The vast majority of plaintiffs who have moved for reconsideration of the Court's PTO 64 Compliance Order have not demonstrated their compliance with the Court's orders nor provided any other basis for the Court to reconsider its July 19, 2017 order.  With the exception of the five additional PTO 60-compliant plaintiffs and four additional PTO 64-compliant plaintiffs discussed in Sections II.E and III.B above, plaintiffs' motions should be denied.

---

[17]  Three other Mexican fishing co-operative plaintiffs similarly moved for reconsideration and attached to their motions documentation purporting to show that the signatories to their PTO 64 sworn statements are the current presidents of the co-operatives:  S.C.P.P. Pescadores de Reventadero, S.C. de R.L. (Case No. 16-04380), S.C.P.P. Pescadores Unidos de Panuco, S.C.L. (Case No. 16-04386), and S.C.P.P. Mayarazago Alto, S.C. de R.L. (Case No. 16-04389).  (Rec. Doc. 23254.)  As discussed in Section III.A.1 above, however, these three plaintiffs made untimely PTO 64 submissions and thus failed to comply with the Court's order regardless of who signed their sworn statements.  Accordingly, their motion for reconsideration should be denied.

September 8, 2017                                    Respectfully submitted,

                                                    */s/ Don Haycraft*
                                                    Don Haycraft (Bar #14361)
                                                    R. Keith Jarrett (Bar # 16984)
                                                    **LISKOW & LEWIS**
                                                    One Shell Square
                                                    701 Poydras Street, Suite 5000
                                                    New Orleans, Louisiana 70139-5099
                                                    Telephone: (504) 581-7979
                                                    Fax No. (504) 556-4108

                                                    J. Andrew Langan, P.C.
                                                    (andrew.langan@kirkland.com)
                                                    Matthew T. Regan, P.C.
                                                    (matthew.regan@kirkland.com)
                                                    Kristopher S. Ritter
                                                    (kristopher.ritter@kirkland.com)
                                                    **KIRKLAND & ELLIS LLP**
                                                    300 North LaSalle
                                                    Chicago, IL 60654
                                                    Telephone:  (312) 862-2000

                                                    Christopher W. Keegan
                                                    (chris.keegan@kirkland.com)
                                                    Ashley Littlefield
                                                    (ashley.littlefield@kirkland.com)
                                                    Anna Terteryan
                                                    (anna.terteryan@kirkland.com)
                                                    **KIRKLAND & ELLIS LLP**
                                                    555 California Street
                                                    San Francisco, CA 94104
                                                    Telephone: (415) 439-1400

                                                    *Attorneys for BP America Production Company*
                                                    *and BP Exploration & Production Inc.*

26

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **BP's Response In Opposition to Plaintiffs' Motions for Reconsideration of the Court's PTO 64 Compliance Order** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of September, 2017.

*/s/ Don Haycraft*
Don Haycraft

27