IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 (10-md-2179) SECTION J |
| This document relates to: Case No. 2:11-cv-916 *Parish of Plaquemines v. BP PLC, et al.* | * * * * * * * | Honorable CARL J. BARBIER Magistrate Judge WILKINSON |

### OPPOSITION TO PLAQUEMINES PARISH'S MOTION TO DISMISS

Martzell, Bickford & Centola, APC; David Landry, Esq.; and King, Krebs & Jurgens, PLLC ("Special Counsel"), through their undersigned counsel, respectfully submit this memorandum in opposition to the "Motion for Dismissal of Motion for Fees and Costs or in the Alternative, Removal to Forum Conventionally Agreed to by the Parties and for Stay on Hearing of Motion for Fees and Costs Pursuant to Contingency Fee Agreement" (the "Motion to Dismiss") filed by Plaquemines Parish (the "Parish"). Doc. No. 23280.

### INTRODUCTION

Over six years ago, Special Counsel were retained to represent the Parish in its claims against BP and other parties arising out of the *Deepwater Horizon* oil spill. Special Counsel entered into an Agreement for Professional Legal Services (the "Representation Agreement") with the Parish providing that Special Counsel would receive a percentage of any recovery as a contingency fee.[1] After thousands of hours of work and more than $600,000 advanced in costs, Special Counsel reached an agreement with BP (the "Settlement Agreement") to settle the Parish's claims for $45

---

[1] The Representation Agreement in full is filed into the record as Doc. No. 23266-4, pages 5 through 14.

million.[2] However, after the settlement with BP had been consummated and the first installment payment of $15 million received by Special Counsel, the Parish took the new and surprising position that its contingency-fee agreement with Special Counsel is unenforceable.[3] The Parish objected to Special Counsel receiving any portion of their fees or reimbursement for advanced costs as specified in the Representation Agreement, prompting Special Counsel to file a Motion for Fees and Costs Pursuant to Contingency Fee Agreement (the "Motion for Fees"). *See* Doc. No. 23266.[4]

Meanwhile, at the same time the Parish insists that the Representation Agreement with Special Counsel is illegal and unenforceable, it seeks to rely on a provision of that very Representation Agreement to dismiss Special Counsel's Motion for Fees. In its Motion to Dismiss, the Parish cites a provision in the Representation Agreement stating that "[p]roper venue and jurisdiction for all lawsuits, arbitration, mediation, claims, disputes, and other matters in questions [sic] between the parties to this agreement or any breach thereof, shall be in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana." *See* Doc. No. 23266-4 at 12. Even aside from the inconsistency of simultaneously disavowing and invoking the same contract, the Parish's argument fails for multiple reasons.

---

[2] The Settlement Agreement is filed into the record at Doc. No. 23266-5 (under seal).

[3] *See, e.g.*, Doc. No. 23468 at 2 (stating that "the legality and enforceability of the contract" is "at issue").

[4] Special Counsel have also moved to intervene for the purpose of collecting their fees and costs. *See* Doc. No. 23344.

**LAW AND ARGUMENT**

I. **The forum-selection clause in the Representation Agreement is superseded by the recent Settlement Agreement, which grants this Court exclusive jurisdiction to resolve the dispute over attorney's fees arising out of the settled litigation.**

First, the forum-selection clause in the Representation Agreement was superseded by the later and more specific provision in the Settlement Agreement granting this Court continuing exclusive jurisdiction over all issues pertaining to the Settlement Agreement:

> The United States District Court for the Eastern District of Louisiana will retain jurisdiction over this Agreement for the purposes of enforcement of the Agreement and any dispute(s) arising thereunder. Any and all disputes, cases, or controversies concerning this Agreement, including without limitation disputes concerning the interpretation or enforceability of this Agreement, shall be filed in the United States District Court for the Eastern District of Louisiana . . . .

Doc. No. 23266-5 at ¶ 9. Thus, to the extent that Special Counsel's claim for attorney's fees and costs constitutes a dispute, case, or controversy that concerns the Settlement Agreement, it must be heard in this Court notwithstanding any previous forum-selection agreement to the contrary.

And Special Counsel's Motion for Fees does indeed concern the Settlement Agreement. As part of the Settlement Agreement, the Parish (referred to as "Claimant") agreed to use the settlement proceeds to "fully and finally" pay all fees and costs owed to Special Counsel:

> Claimant . . . represents and warrants that Claimant and Claimant's counsel hereby acknowledge and agree that the payment to be paid to Claimant . . . includes monies that fully and finally satisfy any and all fees and costs (including as to attorneys . . .) in respect to representation of or assistance to Claimant by any counsel, . . . current or former, including but not limited to any fees and costs asserted by lien or privilege, in connection with the Claims and the rights of such counsel . . . to them that are being released by this Agreement.

Doc. No. 23266-5 at ¶ 17. The Parish's refusal to pay Special Counsel's fees and costs is a breach of the Settlement Agreement, and this Court is the only court with proper jurisdiction to adjudicate Special Counsel's motion that seeks to enforce the Parish's obligations under the Settlement Agreement.

3

**II.     Alternatively, the forum-selection clause is not controlling here because a private agreement between the parties cannot override this Court's vital interest in resolving attorney–client disputes arising out of litigation before the Court and determining proper ownership of the funds that have been deposited into the Court's registry.**

Even aside from the exclusive-jurisdiction provision of the Settlement Agreement, the forum-selection clause in the Representation Agreement cannot be used to divest this Court of its well-established and proper role in supervising the practice of law in its own proceedings, determining the reasonableness of attorney's fees, and resolving attorney–client disputes:

> For years, indeed since the early years of the republic, federal courts have resolved fee disputes between lawyers and their clients when those disputes arise out of the underlying case, whether by conditioning the withdrawal of a lawyer on the fair payment of the lawyer's fees or by conditioning the final distribution of settlement proceeds or judgments on the fair payment of the lawyer's fees.

*Exact Software North America, Inc. v. DeMoisey*, 718 F.3d 535, 542 (6th Cir. 2013); *see also Stein v. KPMG, LLP*, 486 F.3d 753, 760 (2nd Cir. 2007) ("The most common exercise of ancillary jurisdiction is, probably, to resolve fee disputes between a party and its attorney arising in litigation in which the attorney represented the party."); *Curry v. Del Priore*, 941 F.2d 730, 731–32 (9th Cir. 1991) (affirming "[t]he district court's inherent authority to regulate members of its own bar").

Thus, even if the Representation Agreement is a matter of state law and the parties have generally agreed to litigate contractual disputes in state court, this Court has its own "vital interest" in ensuring the reasonableness of attorney's fees in litigation before the Court:

> Attorneys' fee arrangements in diversity cases, and in most federal question cases as well, are matters primarily of state contract law. Nevertheless the federal forum has a vital interest in those arrangements because they bear directly upon the ability of the court to dispose of cases before it in a fair manner.

*Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212, 217 (3rd Cir. 1987). Moreover, the Court's interest is not limited to ensuring fairness to clients—it also extends to ensuring fair and reasonable compensation for lawyers who have rendered valuable services in the case at hand before being terminated by a client. *See, e.g.*, *In re Michaelson*, 511 F.2d 882, 888 (9th Cir. 1975)

4

("The courts have the right to inquire into fee arrangements both to protect the client from excessive fees and to assist an attorney in collection of his fee."). *Nat'l Equip. Rental, Ltd. v. Mercury Typesetting Co.*, 323 F.2d 784, 786 n.1 (2nd Cir. 1963) ("The termination of relations between a party in litigation in a federal court and his attorney is a matter relating to the protection of the court's own officers and is not subject to the doctrine of *Erie Railroad Co. v. Tompkins*."); *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2nd Cir. 1988) ("[A] court has a responsibility to protect its own officers in such matters as fee disputes.").

That interest is heightened all the more in large MDL proceedings such as this one. *See, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 494 (E.D.N.Y. 2006) (the Court's role in overseeing fee awards is "enhanced where, as here, the Judicial Panel on Multidistrict Litigation has assembled all related federal cases 'for coordinated or consolidated pretrial proceedings . . . [to] *promote the just and efficient conduct of such actions*.'") (quotation omitted). Indeed, this Court has already exercised its supervisory powers over legal fees in this MDL, entering an order presumptively capping attorney's fees at 25% of the recovery for claimants who settle their claims through the Economic and Property Damages Settlement or the Medical Benefits Settlement. *See* Doc. No. 6684.

Additionally, even beyond its general interest in ensuring the reasonableness of attorney's fees, the Court has a specific interest in determining the allocation of the more than $15 million of disputed funds that have been deposited into its registry. After the Parish disavowed its obligation to pay Special Counsel their agreed-upon fees and challenged Special Counsel's right to such funds, both Special Counsel and BP sought leave to deposit disputed funds in the Court's registry pending resolution of the fee dispute. *See* Doc. Nos. 23444 & 23458. Both motions were granted. *See* Doc. Nos. 23450 & 23482. "[A] court, . . . which has once lawfully assumed custody of

5

property, may adjudicate any claims against it," and when two courts have equal jurisdictional claims, the "doctrine normally applicable" is that "the court first taking over the res, draws to itself power to determine all claims upon it." *Palmer v. Warren*, 108 F. 2d 164, 166–67 (2nd Cir. 1939). As this Court explained in granting BP's motion: "Entitlement to the subject funds is in dispute between competing claimants. Resolution of the dispute has been submitted to the court. The registry of the court is precisely where these funds should be, pending that resolution." Doc. No. 23482.

Finally, this Court is in by far the superior position to determine the reasonable fees to which Special Counsel are entitled. Assuming the Parish's position regarding the unenforceability of the Representation Agreement is accepted, there will be no fee contract governing Special Counsel's representation of the Parish, and the Court instead will have to make a *quantum meruit* determination of the reasonable fees to which Special Counsel are entitled. *See, e.g.*, *City of Alexandria v. Brown*, 740 F.3d 339, 358 (5th Cir. 2014) ("The Louisiana Supreme Court has indicated that a court should consider the following factors derived from Rule [of Professional Conduct] 1.5(a) when determining a *quantum meruit* award: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.").

In an ancillary attorney–client fee dispute following litigation of a matter in federal court, the Second Circuit found that "the lower court's familiarity with the subject matter of the suit" "weighed in favor of exercising jurisdiction over the fee dispute": "Indeed, familiarity with the amount and quality of work performed by Latham & Watkins would enormously facilitate rapid

disposition of a fee dispute, while a great deal of the record would have to be considered anew and relitigated in a state court unfamiliar with the proceedings." *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2nd Cir. 1988). Similarly, the Sixth Circuit has explained:

> Resolution of related fee disputes is often required to provide a full and fair resolution of the litigation. Unlike a state court judge hearing a separate contract action, a federal judge who has presided over a case is already familiar with the relevant facts and legal issues. Considerations of judicial economy are at stake. Thus, we hold that although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action.

*Kalyawongsa v. Moffett*, 105 F.3d 283, 287–88 (6th Cir. 1997). And the Third Circuit has likewise explained:

> When a court undertakes to resolve claims arising from a relationship between a party to an action and the party's attorney in that action and involving the attorney's conduct of that litigation, the parties to the ancillary proceeding are already before the court as a litigant and officer of the court; the relevant facts are generally more accessible to that court than to another; and the ability of the court to conduct and dispose of the underlying litigation may turn on, or at least be greatly facilitated by, resolution of the issues raised in the ancillary proceeding.

*Stein*, 486 F.3d at 760. This Court's broad familiarity with the *Deepwater Horizon* litigation as a whole, as well as this particular case, provides a vantage point for assessing the value of Special Counsel's services that could not even be approached by another court.

In seeking to dismiss Special Counsel's Motion for Fees on *forum non conveniens* grounds, the Parish relies upon *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568, 582 (2013), which holds that when there is a valid forum-selection agreement between the parties, "the parties' private interests" weigh in favor of the preselected forum. However, the Supreme Court recognized that a district court considering a transfer or dismissal on *forum non conveniens* grounds must still consider public-interest factors. *See id.* Although the Court suggested that "forum-selection clauses should control except in unusual

7

cases," *id.*, an attorney's claim for fees arising out of a case that has been litigated in a federal district court is indeed unusual—it is more properly viewed as an ancillary matter to the underlying action rather than an independent contractual suit that might have been filed elsewhere. And as discussed at length above, the public-interest factors in favor of having such disputes heard by the same court that adjudicated the underlying case are overwhelming. Accordingly, Special Counsel submit that, notwithstanding the forum-selection clause in the Representation Agreement, the Parish cannot show that this Court is an improper forum for the resolution of Special Counsel's claim for reasonable fees and costs.

## CONCLUSION

For the reasons explained above, Special Counsel respectfully request that the Parish's Motion to Dismiss be denied.

Respectfully submitted,

*/s/ Matthew J. Paul*
Richard C. Stanley, 8487
Matthew J. Paul, 37004
STANLEY, REUTER, ROSS, THORNTON
 & ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, LA 70112
(504) 523-1580  Telephone
(504) 524-0069  Facsimile
rcs@stanleyreuter.com
mjp@stanleyreuter.com

*Counsel for Martzell, Bickford & Centola, APC; King, Krebs & Jurgens, PLLC; and David Landry, Esq.*

Scott R. Bickford, 1165
Lawrence J. Centola, III, 27402
MARTZELL, BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, LA 70130
(504) 581-9065  Telephone
(504) 581-7635  Facsimile
usdcedla@mbfirm.com

*Counsel for Martzell, Bickford & Centola, APC*

Henry A. King, 7393
Michael L. Vincenzo, 23965
KING, KREBS & JURGENS, PLLC
201 St. Charles Avenue, 45th Floor
New Orleans, LA 70170
(504) 582-3800  Telephone
hking@kingkrebs.com
mvincenzo@kingkrebs.com

*Counsel for King, Krebs & Jurgens, PLLC*

David L. Landry, 7978
THE LAW OFFICE OF DAVID L. LANDRY
1214 Parasol Place
Pensacola, FL 32507
(850) 492-7240  Telephone
2landry@cox.net

*Counsel for David Landry, Esq.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of October, 2017.

*/s/ Matthew J. Paul*