**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISINANA**

| | | |
|---|---|---|
| In re: Oil spill by the Oil Rig "Deepwater | * | MDL NO. 2179 |
| Horizon" in the Gulf of Mexico, on April 20, | * | |
| 2010 | * | SECTION:  J |
| | * | |
| | * | JUDGE BARBIER |
| This document relates to: | * | |
| No. 11-cv-00916 | * | MAGISTRATE JUDGE WILKINSON |
| *Parish of Plaquemines v. BP PLC, et al* | * | |

---

<u>**MEMORANDUM ON BEHALF OF PLAQUEMINES PARISH GOVERNMENT IN**</u>
<u>**OPPOSITION TO MOTION TO INTERVENE [R.Doc. 23344]**</u>

**MAY IT PLEASE THE COURT:**

Plaquemines Parish Government ('PPG") opposes the Motion for Leave to Intervene [R.

Doc. 23344] on three bases: (1) the choice of forum clause in the subject contingency fee contract

bars the filing of the claims which are the subject of the Intervention anywhere outside of the 25th

JDC in Plaquemines Parish; (2) there is no valid, enforceable written contingency fee agreement

which would support an Intervention, nor is the doctrine of *quantum meruit* applicable since the

would-be Intervenors had knowledge of the Ordinance requirements for a valid contingency fee;

and, (3) the would-be Intervenors lack standing to pursue an Intervention in these proceedings. For

these as well as the additional and supporting reasons and authorities set forth below, the Motion

for Leave to Intervene should be denied.

1

## FACTS

## Home Rule Charter

Article VI**.** §5 of the Louisiana Constitution of 1974 provides for the establishment of political subdivisions within Louisiana to be governed by a "Home Rule Charter":

> (E) Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.

At the same time, Art. VI. §4 of the Constitution allows for parishes with existing Home Rule Charters such as Plaquemines Parish, to retain this authority.  Therefore, in accordance with this Section of the Louisiana Constitution, PPG is the duly authorized governing body of the Parish of Plaquemines, State of Louisiana, pursuant to the Plaquemines Parish Home Rule Charter of Local Self-Government established in 1961.

The Charter of the Parish of Plaquemines ("the Charter")[1] governs the duties, roles, powers, and qualifications of the Parish President and the Plaquemines Parish Council.  For instance, as to the Parish President, the Charter provides, in pertinent part as follows:

> Section 3.01: Powers of the President
>
> The Parish President shall be the Chief Executive officer of the Parish and shall have power, subject to this Charter and the Constitution of the State, to supervise and direct all activities and functions of Parish Government and provide administrative and logistical support to all other political subdivisions and districts

---

[1] Exhibit No. 1.

therein as provided in this Charter and may delegate such authority to the offices and agencies of the Parish as hereinafter provided.[2]

The Charter also details the duties of the President. It states, in pertinent part:

> Section 3.10: Duties of the President
>
> The Parish President shall have the following duties:
> A. Carry out policies adopted by the Parish Council;
> B. Exercise general oversight of the activities of boards, agencies, and special districts;
> C. Exercise supervision over all other executive and administrative work of the Parish and provide for the coordination of administrative activities;
> D. Assure the provisions of the Charter, the Ordinances of the Parish and all laws are enforced;
> ...
> H. Submit annually to the Council for its consideration and approval an operating budget and a capital improvement budget.[3]

The powers outlined above do not specifically grant the Parish President the power to enter into contracts regarding Parish owned lands without the approval of the Parish Council.

Article Four of the Charter delineates the powers of the Parish Council, and reads in pertinent part, as follows:

> Section 4.01: **Legislative Powers**
>
> A. **All legislative powers of the Parish of Plaquemines shall be vested in the Parish Council and exercised by it,** subject to any applicable provisions of this Charter, and shall include, but not be limited to, the power to:
>
> (1) Represent, as governing authority, the Parish of Plaquemines and all political subdivisions and districts therein, in any and all

---

[2]   *Id.*
[3]   *Id.*

matters and actions, all rights of action and warranties, and all rights, title, and interest in and to all lands and property owned by them, and to all resources and revenues derived therefrom.

(25)  Provide for the employment of any employee and personnel which, in its judgment, may be necessary and proper to perform the work and carry out the duties and functions of Parish government and the conduct and operation of the other political subdivisions and districts situated within the Parish.

(26)  Have the exclusive authority to provide for the compensation and the terms and conditions of employment under which all of its employees shall be employed and work for the Parish of Plaquemines and all other political subdivisions and districts therein.[4]

*** 

Further, §4.01(C) provides as follows:

C.  Every act of the Parish Council which is to have the effect of law shall be in the form of an Ordinance and, after a brief title indicating the subject matter of the Ordinance, shall begin with the words: BE IT ORDAINED by the Plaquemines parish council".[5]

Therefore, under the Charter, the legislative powers are reserved solely for the Plaquemines Parish Council ("the Council") and include any actions concerning interests in Parish owned lands. Further, the Charter also reserves to the Council the power of employing people to work for the Parish and the "exclusive authority" of determining the compensation of the employees.  Finally, §4.01(C) per every act of the Parish Council must be in the form of an Ordinance to have effect.

The Charter also describes how debts may be incurred. It states, in pertinent part:

Section 7.06: Administration of Operating and Capital Budgets

---

[4]     *Id.*
[5]     *Id.*

A. No payment shall be made or obligation incurred against any allotment or appropriation except: (a) **in accordance with the approved operating and capital budgets and appropriations** duly made and (b) unless the President first certifies that **there is a sufficient unencumbered balance in such allotment or appropriation** and that sufficient funds therefrom are or will be available to cover the claim or meet the obligation when it becomes due and payable. However, this provision shall not limit the authority of the Council to borrow funds in anticipation of revenue as provided in the general laws of the State. **Any authorization of payment or incurring of obligation in violation of the provisions of this Charter shall be void and any payment so made illegal**; such action shall be cause for removal of any official, officer or employee who knowingly authorized or made such payment or incurred such obligation or who caused such payment to be authorized or made or obligation to be incurred. Such person shall also be personally liable for reimbursement, with interest, to the Parish Government of any amount so paid.

B. Nothing in this Charter shall be construed so as to prevent the making or authorizing of payments or making of contracts for capital improvements to be financed wholly or partly by the issuance [sic] of bonds or to prevent the making of any contract or lease providing for payments beyond the end of the fiscal year, provided that such action is authorized by Ordinance, **except that contracts for services not covered by the public bid law (R.S. 38:2181, et seq., as amended) shall not be for a period in excess of two (2) years.** (emphasis added)[6]

This language of the Charter clearly indicates that all obligations must be included in the "operating and capital budget," as otherwise the obligation is "*illegal*." The language also clearly indicates that a contract for services for PPG may not last more than two (2) years.

Finally, Section 5.01 of the Charter provides:

> No special counsel shall be employed by either the Parish President or the Parish Council until a budget appropriation has been made for that purpose.

---

[6]     *Id.*

Consequently, absent a specific budget appropriation by the Council, special counsel may not be employed by either the Parish President or the Parish Council.

## Special Counsel

The putative Intervenors include two law firms and an individual attorney who refer to themselves as "Special Counsel" to PPG: Martzell, Bickford & Centola, APC ("MB&C"), King, Krebs & Jurgens, PLLC ("KK&J"); and David L. Landry, Attorney at Law ("Mr. Landry") collectively, "Special Counsel"). Mr. Landry appears to be a solo practitioner based in Pensacola, Florida, who sometimes acts as "referral counsel" to somehow refer cases arising in Plaquemines Parish involving Plaquemines Parish governmental entities to Louisiana attorneys. [7]

As far back as 2001, MB&C (through its predecessor, Martzell & Bickford, APC) and Mr. Landry have represented PPG in various matters. For example, on July 12, 2001, MB&C and Mr. Landry were appointed per PPG Resolution No. 01-214 to represent PPG in litigation related to a mineral lease dispute.[8] As that Resolution clearly indicates, the funding for that litigation was based upon a contingency fee. This express language made it clear to all parties involved as well as the general public that the Council was exercising its legislative powers to authorize the funding of litigation on a contingency fee basis, and comports with the requirements of the Charter. This Resolution also serves to show that MB&C, Mr. Landry and the Council are all fully aware that any funding via contingency fee must be expressly set out in a formal action approved by the Council under the Charter.

---

[7]     *See*, Disbursement Sheets (Exhibit No. 2).
[8]     Resolution 01-214 (Exhibit No. 3).

**The BP Claims**

The Parish of Plaquemines sustained severe damage and economic losses as a result of the oil spill related to the Deepwater Horizon/BP Macondo Well Blowout on April 20, 2010. As a result, on April 14, 2011, the Council passed Ordinance No. 11-77, authorizing the Plaquemines Parish President to "enter into negotiations and execute contracts for professional legal services with Martzell & Bickford and David Landry for professional legal services for the development of claims and for filing litigation" against the BP companies, Transocean, and all other companies involved in the Macondo Well blowout and spill."[9]

Ordinance No. 11-77 contained no language whatsoever specifying the form of compensation for MB&C and Mr. Landry, either for an hourly rate of compensation, or a percentage of recovery proceeds on a contingency fee basis. That same day the Council also passed Ordinance No. 11-84, which authorized the Plaquemines Port Chairman or vice chairman of the Port to "enter into negotiations and execute contracts for professional legal services with the law firms of Martzell & Bickford and David Landry" for representation for the said oil spill.[10] As with Ordinance No. 11-77, Ordinance No. 11-84 contained no language providing for the form or amount of compensation to be paid.  It remains unclear why this language was consciously left out and for whose benefit, but regardless, the Council's legislative authority was circumvented, as the contingency fee contract would eventually issue without an Ordinance from the counsel.

---

[9]        Ordinance No. 11-77 (Exhibit No. 4).
[10]       Ordinance No. 11-84 (Exhibit No. 5).

A few months later, on August 11, 2011, the Council passed another Ordinance, this time approving the addition of KK&J as additional counsel.[11] Once again, the Ordinance No. 11-238 fails to set forth the contingency fee terms and conditions.

Subsequently, on May 24, 2011, an exchange of email communication related to the proposed Agreement for legal services took place between Stephen Braud, then the Parish Attorney, and Mr. Landry. It should be noted that Mr. Braud was at that time, and remains, a partner with the Plaquemines Parish District Attorney, Charles Ballay in the law firm of Ballay, Braud & Colon, PLC. In that email exchange, Mr. Landry and Mr. Braud clearly establish that both Mr. Braud and Mr. Landry were keenly aware that Ordinance No. 11-77 of April 14, 2011 did not contain the requisite provision for payment either by form (hourly or contingency) or the amount of payment. The relevant email from David Landry to Steve Braud to David L. Landry states, in part: "The Ordinance has no parameters or caps, except the contingency fee of 15% on first $25M and 10% thereafter. Even that is not in the actual Ordinance but was stated by Mr. Buras at the meeting." [12] The latter is a reference to comments made by Council member, Anthony Buras, who was responding to the questions on the fee from a "Mr. Henry," an individual who regularly attends Council meetings.  But the actual contingency fee arrangement was never included in these or any other Ordinances as required by law.

The BP Spill claim which would evolve in the original PPG matter was premised primarily upon economic loss calculated using upon lost taxes including lost sales taxes as well as the loss

---

[11]     Ordinance No. 11-238 (Exhibit No. 8).
[12]     Exhibit No. 7.

of other recurring revenue sources. As each of the various Plaquemines Parish governmental entities normally received different percentages of the revenues, in essence the same evidence could be used to present a claim on behalf of each entity. Yet, the Special Counsel arranged to receive a new contingency fee each time the same data was presented in a new claim by another Parish entity. For example, after executing these two Agreements with President Nungesser for PPG and the Port, the Special Counsel entered into other contracts for legal services related to the BP Spill with other Parish entities, including one with Hospital Service District No. 1 of the Parish of Plaquemines, d/b/a Plaquemines Medical Center ("PMC").  In that situation, however, PMC's own attorney, not the Parish Attorney, was overseeing the contract and the enabling Resolution clearly set out a contingency fee arrangement. [13]

The significance of this is that when Mr. Braud, as Parish Attorney, was overseeing the contracts for legal services, the contingency fee terms and conditions with Special Counsel did not appear in the relevant Ordinance. This is despite Mr. Braud's apparent knowledge of this requirement as evidenced by the email exchange referenced above with Mr. Landry. In an odd coincidence, in December, 2016, shortly after the new Parish President, Amos Cormier III, was elected, President Cormier received an unsolicited letter dated December 27, 2016, from Plaquemines Parish DA Charles Ballay, Mr. Braud's law partner.[14] In the letter, Mr. Ballay attempted to confirm a topic of conversation with President Cormier that had never been previously discussed, i.e., contingency fee contracts.  The DA indicated he had done "some

---

[13]     PMC Resolution dated November 29, 2012 (Exhibit No. 9).
[14]     Exhibit No. 10.

research and checking around" . . . and reached the opinion that PPG can do so."[15]  It remains unclear why the DA was concerned with the Parish's contingency fee contracts at that late date.

**The Agreement**

On August 24, 2011, after passage of Ordinance No. 11-77 and Ordinance No. 11-84, Parish President William H. "Billy" Nungesser executed a contingency fee contract entitled, "Agreement for Professional Legal Services" (the "Agreement") with MB&C and Mr. Landry, as well as the new law firm, KK&J.[16] The Agreement provided that counsel would be compensated on a contingency basis in the amount of "Fifteen Percent (15%) of the first Twenty-Five Million Dollars ($25,000,000.00) of gross recovery, and Ten Percent (10%) of gross recovery in excess of Twenty-Five Million Dollars U.S. ($25,000,000.00). (Section 5, page 2 of the Agreement). The Agreement also provided for payment of costs. Significantly, the terms of compensation to defendants set forth in the "Agreement" were not authorized by Ordinance No. 11-77, which contained absolutely no language authorizing a form or amount of compensation to be paid. The Agreement was therefore "*illegal*" since under the Charter, the local government could not contract outside of the very specific authority of an enabling Ordinance properly passed by that body.

Over the following six years, the Special Counsel would exercise their "right to renew their agreement" unilaterally every two years,[17] despite the Charter's prohibition in Section 7.06(B) against contracts lasting more than two years. There is no evidence in PPG's possession that PPG ever agreed to these "extensions." In fact, on June 30, 2016, the acting President of Plaquemines

---

[15]    *Id.*
[16]    Exhibit No. 6.
[17]    Correspondence of MB&C, 2013, 2015 & 2017 (Exhibits 11,12 &13).

Parish terminated Special Counsel by written notice,[18] but Special Counsel correspondence in reply indicates that this was "void and without legal effect."[19]  PPG then responded on July 19, 2016, setting forth all of the provisions of the charter which were violated in the execution of the Agreement.[20]

### Disbursement of Settlement Funds

In April of 2017, President Cormier met with the "Neutrals" associated with the BP Spill claims process and settled the case with an agreement for payment of the settlement amount in several installment payments. Although the relevant Ordinances passed by the Council indicated that all funds from PPG's BP settlements would be distributed *directly* to PPG, Special Counsel unilaterally arranged to have BP's counsel send the funds to Special Counsel's trust account instead. Special Counsel then unilaterally announced that they would advance their fee such that they would exact their entire fee (*i.e.*, the maximum amount due under the Agreement) from the first BP installment, leaving the client, PPG, to bear the risk of BP's non-payment of the remaining future installments. Since that time, apparently as retribution or leverage for PPG's challenge to the validity of the Agreement, Special Counsel has taken the position that they may be entitled to even more fees under a *quantum meruit* theory [R. Doc. 23493, p. 2].  Under this theory, Special Counsel has effectively blocked PPG's access to BP's next installment payment of what should have been PPG's funds under Special Counsel's own theories.

---

[18]     Exhibit 14.
[19]     Exhibit 15.
[20]     Correspondence from PPG Legal Dept., dated July 19, 2016 (Exhibit No. 16).

At this time, President Cormier and current Plaquemines Parish Attorney, Peter Barbee, both acting on behalf of PPG, are duty bound not to acquiesce in accepting what is in essence an *"illegal"* obligation, and are instead for the time being determined to find out why the Agreement and other similar agreements were executed under such circumstances. For the purposes of the instant Motion, PPG submits that this is a Plaquemines Parish matter which should be resolved in Plaquemines Parish.

As will be shown below with specific authorities, the only forum where the subject claims could be raised under the Agreement approved by Special Counsel is the 25th JDC in Plaquemines Parish. Further under applicable Louisiana Law, even if venue were proper in the Eastern District, Special Council have no claim since their Agreement is "illegal," and, they cannot make a claim under the doctrine of *quantum meruit* since they know their authorizing Ordinance had to expressly set out any contingency fee agreements.   Finally, additional authorities suggest that Special Counsel has no standing to intervene and bring a claim in these BP proceedings.

## **APPLICABLE LAW**

### I.   **Venue**

The Agreement drafted by Special Counsel contains a mandatory forum selection clause which reads in relevant part as follows:

> Proper venue and jurisdiction for all lawsuits, arbitration, claims, disputes, and other matters in questions [sic] between the parties to this agreement or any breach thereof, shall be in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana.[21]

---

[21]   Exhibit No. 6; also, [R. Doc. 23266-4, Section 9. General, p. 8 of 10.].

Long ago, the historical disapproval of forum selection clauses gave way to the U.S. Supreme Court's rule established in the 1970's in *M/S Bremen v. Zapata Off–Shore Co.*.[22] The controlling rule is that such clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable under the circumstances." The Fifth Circuit follows this rule as well.[23] Likewise, this Court enforces these clauses particularly when a specific court in a specific Parish is designated as here.[24]

Accordingly, before the Intervention is even considered, the Plaintiffs' claims and Motion should be dismissed without prejudice and Special Counsel should be required to refile in Plaquemines Parish. Simply put, this is a Plaquemines Parish dispute which should remain there.

## II.     <u>Intervention</u>

FRCP Rule 24 which governs intervention in federal proceedings states that intervention represents " 'an accommodation between two potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit

---

[22]     407 U.S. 1, 10, 92 S.Ct. 1907, 1913 (1972).

[23]     *See, Ginter ex rel. Ballard v. Belcher, Prendergrast & Laporte,* 536 F.3d 439, 441 (5th Cir. 2008) ("In cases such as this one, where a litigant in federal court attempts to have a case dismissed based on a contractual provision requiring suit to be filed in state court, the forum-selection clause should be upheld unless the party opposing its enforcement can show that the clause is unreasonable."); *Lighthouse MGA, LLC v. First Premium Insurance Grp., Inc.,* Nos. 11-30293, 11-30500, 2011 WL 5331623, at *2 (5th Cir. Nov. 7, 2011) (recognizing the propriety of court's decisions holding that forum selection clause purporting to give state courts exclusive jurisdiction constitute "an enforceable waiver of a party's right to have disputes connected to the contract heard in a federal forum.").

[24]     *Gray Casualty & Surety Co. v. DRS Veteran Enterprises, LLC,* No. 16-13441, 2016 WL 6157608, at *3 (E.D. La. Oct. 24, 2016) (holding that forum selection clause stating that venue for all suits arising from the contract shall be in Jefferson Parish constituted an effective waiver of defendant's removal rights, because there is no federal courthouse located in Jefferson Parish); *City of New Orleans v. Nat'l Serv. Cleaning Corp.,* No. CIV.A. 96-1601, 1996 WL 419750, at *3 (E.D. La. July 24, 1996), as amended (Oct. 4, 1996).

from becoming fruitlessly complex or unending.'"[25] Because Rule 24 attempts to address a wide

variety of situations, "the facts and procedural posture of each case are important, and it is often

true that 'general rules and past decisions cannot provide uniformly dependable guides.'"[26]  With

regard to past decisions, for their sole authority to intervene in this matter, Special Counsel rely

exclusively upon an older Fifth Circuit case, *Gaines v. Dixie Carriers, Inc.*,[27] which has been

heavily criticized. In that matter, the Court held that a law firm could intervene in a former client's

action to protect its interest in its contingency fee.  The *Gaines* court, however, did not describe

the interest that was implicated, and more recent Fifth Circuit decisions have questioned the

holding. For example, in *Gilbert v. Johnson*,[28] Judge Alvin Rubin observed in a concurring opinion

that:

> Were the matter open for consideration, I would deny lawyers
> employed on a contingent fee the right to intervene in order to
> safeguard their fees, at least when they can protect their interest in
> some other way. A lawyer is entitled to protection, but he can
> usually safeguard the fee he has earned by some means other than
> intervention. In such cases "the disposition of the action (will not)
> as a practical matter impair or impede his ability to protect that
> interest." Rule 24(a)(2), F.R.C.P…..In Louisiana, (to whose law I
> advert because our prior decision in *Gaines v. Dixie Carriers, Inc.,*
> 5 Cir. 1970, 434 F.2d 52, involved a Louisiana lawyer-client
> agreement), the attorney's interest can be protected by filing the
> contract of employment with the clerk of court; thereafter any
> settlement or other disposition of the suit or claim by either the
> lawyer or the client without the written consent of the other is void.
> LSA-R.S. 37:218. If there is an absolute right to intervene, the

---

[25]   *United States v. Texas Eastern Transmission Corp.,* 923 F.2d 410, 412 (5th Cir.1991) *(quoting Smuck v. Hobson,* 408 F.2d 175, 179 *(D.C.Cir.1969) (en banc)).*

[26]   *Texas Eastern,* 923 F.2d at 412 *(quoting Smuck,* 408 F.2d at 179); *Faller v. Chevron Corp.,* No. CIV A H-08-0477, 2008 WL 4831386, at *1–2 (S.D. Tex. Nov. 4, 2008).

[27]   434 F.2d 52, 53–54 (5th Cir.1970).

[28]   601 F.2d 761, 767–68 (5th Cir. 1979).

> former lawyer may attempt to assert new issues or indeed to interfere with the management of the lawsuit by his successor as if he were a co-owner of the claim when he has only a contingent fee and should only be entitled to protection with respect to payment of the amount due him. See C. Wright & A. Miller, Federal Practice & Procedure: Civil s 1920 (1972); 3B Moore's Federal Practice P 24.16 (2d ed. 1978). In the present case, Mr. Lowe seeks only to collect his fee if Dr. Gilbert is successful. That right deserves protection but it can be protected by assertion of a lien. Therefore, I would prefer to hold that he is not entitled to intervene…. I hope the rule they will be reconsidered someday lest the practice of intervention permitted to lawyers formerly employed by a litigant unnecessarily adds to the length and complexity of trials.

Subsequently, the Fifth Circuit's opinion in *Gaines* was again called into question by another Fifth Circuit panel in *Keith v. St. George Packing Co., Inc.,*[29] where the Court noted that "Gaines may not represent the most persuasive use of Fed. R. Civ. P. 24". Other Circuits have also questioned the ruling.[30]  In fact, the general trend in federal courts around the country is to deny interventions of right based upon contingency fee theories.  Most of the courts that have addressed the issue presented here, specifically whether the interest of discharged counsel in their attorneys' fees is related to the underlying cause of action, have consistently held that such an interest is not a basis for intervention.[31]  It should also be noted that none of these Fifth Circuit cases, *Gaines*, *Gilbert*,

---

[29]     *Keith v. St. George Packing Co., Inc.,* 806 F.2d 525, 526 (5th Cir.1986).

[30]     *See, e.g., Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 178 (2d Cir.2001) (questioning the right of an attorney's right to intervention to recover fees on policy grounds.)

[31]     *See, e.g., Butler, Fitzgerald & Potter v. Sequa Corp*., 250 F. 3d 171, 177-78 (2d Cir. 2001) *(citing Crown Fin., Corp. v. Winthrop Lawrence Corp.*, 531 F.2d 76, 77 (2d Cir. 1976)); *Newman v. Mut. Life Ins. Co. of New York,* 206 F.R.D. 410, 411 (D. Md. 2002) *(citing* policy concerns raised in *Crown Fin. Corp.* and finding that discharged attorney's interest in litigation does not warrant intervention*); In re Nucoa Margarine Litigation*, 2012 WL 12854896, *20 (C.D. Cal. 2012) (denying motion to intervene by former counsel and citing problematic policy concerns of permitting discharged attorneys to intervene in the disposition of their former client's cases); *Chevron Corp. v. Donzinger,* 2011 WL 2150450, *2 (S.D.N.Y. 2011)(holding that discharged attorney's interest in outcome of litigation, based solely on contingent fee agreement, does not satisfy the interest requirement of Rule 24(a)); *Gov't of Virgin*

and *Keith*, involved a mandatory forum selection clause which blocks he filing of an Intervention as here.

Regardless of the controversy surrounding the precedential authority of *Gaines*, Special Counsel must still meet the proof requirements of FRCP Rule 24 which addresses both interventions as of right and permissive intervention. As to the former, which is the sole basis for Special Counsel's proposed Intervention [R. Doc. 23344-1, p. 4], Rule 24(a) provides:

> On timely motion, the court must permit anyone to intervene who (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[32]

The courts have interpreted Rule 24(a) (2), which governs Special Counsel's claim here,  to require that a putative Intervenor establish all four of the requisite elements of proof: (1) the intervention application be timely; (2) the applicant has an interest relating to the property that is the subject of the action; (3) the applicant is so situated that the disposition may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest is inadequately represented by the existing parties.[33]  Here, Special Counsel has not and cannot establish requisites (2)-(4).

---

*Islands v. Lansdale*, 2010 WL 2991053, *3 (Dist. Ct of Virgin Islands 2010) (discharged attorney's interest in litigation purely economic and does not satisfy Rule 24(a)).

[32]     Fed R. Civ. P. 24(a).

[33]     *See Sierra Club v. City of San Antonio,* 115 F.3d 311, 314 (5th Cir.1997) *(citing Sierra Club v. Glickman,* 82 F.3d 106, 108 (5th Cir.1996)).

**Interest in the Action**

First, Special Counsel does not possess an interest in the action justifying intervention. To show an entitlement to intervene, the would-be intervenor must establish, among other things, "an interest relating to the property or transaction which is the subject of the action ...."[34]  To determine whether a potential intervenor has a legally protectable interest in the proceedings, the Fifth Circuit looks to substantive law,[35] and, the rights and obligations under a contingency-fee agreement are governed by state law,[36] here, the law of Louisiana where the Agreement was executed.

Special Counsel advances no theory that establishes a legal interest in the settlement proceeds since their Contingency Fee Agreement is legally invalid under applicable Parish or Louisiana law. More specifically, Louisiana law is clear that absent a valid, written contingency fee contract, an attorney has no right to intervene.[37] At best, any fees of attorneys so situated may recover would be limited to the doctrine of *quantum meruit*.[38]

In this matter, although the Plaquemines Parish Council certainly has the power and authority to enter into a contingency fee agreement with private counsel, the subject "Agreement" is invalid, null and void because of the "Agreement" fails to comply with the aforementioned sections of Charter as well as the requirements of R.S. 42:263(A), which *mandates:*

---

[34]      *Ford v. City of Huntsville,* 242 F.3d 235, 239 (5th Cir. 2001) internal quotations omitted).

[35]      *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos*, 831 F.2d 59, 62 (5th Cir. 1987)*; New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 464 (5th Cir. 1984).

[36]      *United States v. $303,718.73 Seized,* 62 F. App'x 556 (5th Cir. 2003)*, (citing, Ford v. City of Huntsville,* 242 F.3d 235, 239 (5th Cir.2001)).

[37]      *Robert L. Manard III PLC v. Falcon Law Firm PLC,* 2012-0147 (La. App. 4 Cir. 11/16/12), 119 So. 3d 1, 3, on reh'g (Apr. 10, 2013), (citing, *deReyna v. Pennzoil Exploration,* 200497 (La.App. 3 Cir. 8/4/04), 880 So.2d 124, *writ denied,* 2004–2261 La.11/19/04), 888 So.2d 197).

[38]      *In re Calm C's, Inc.,* 179 Fed. Appx. 911, 913 (5th Cir. 2006).

> No parish governing authority, levee board except as provided in Subsection B hereof, parish school board, city school board, or other local or state board shall retain or employ any special attorney or counsel to represent it in any special matter or pay any compensation for any legal services whatever unless a real necessity exists, ***made to appear by a resolution thereof stating fully the reason for the action and the compensation to be paid.*** The resolution then shall be subject to the approval of the attorney general and, if approved by him, shall be spread upon the minutes of the body and published in the official journal of the parish.  (Emphasis supplied).

The Plaquemines Parish Council is "governing authority" for the Parish of Plaquemines.

The granting of a contingency contract is a matter exclusive to the legislative body, in this case, the Plaquemines Parish Council. As the Supreme Court stated in, *Meredith v. leyoub:*[39]

> It is within the power of the Legislature to authorize contingency fee contracts and it has not done so in this case. Until the Legislature enacts a statute authorizing the Attorney General to enter into contingency fee contracts, the Contract is invalid and may not be implemented or enforced. [40]

Also of significance is the question of whether the Agreement could be unilaterally renewed beyond two years without an Ordinance or Resolution as to do so was and is contrary to the Charter's prohibition of any contracts lasting more than two years. Certainly, PPG did not accept this.

---

[39]     96-1110 (La. 9/9/97), 700 So.2d 478.
[40]     *Meredith v. Ieyoub,* 96-1110 (La. 9/9/97), 700 So. 2d 478, 484. *See also, Whitney v. Parish of Vernon,* 126 La. 12, 52 So. 176 (1910)*; Burk v. Livingston Parish Police Jury,* 207 La. 533, 21 So. 2d 719 (1945), as cited in *Dobson v. Parish of East Baton Rouge*, (La. App. 1 Cir. 6/28/74), 298 So. 2d 110)**.**

Finally, another fatal flaw in the "Agreement" at issue is that the "Agreement" violates Section 5.01 of the Charter, which provides:

> No special counsel shall be employed by either the Parish President or the Parish Council until a budget appropriation has been made for that purpose.

Here, no budget appropriation was made by the Plaquemines Parish Council as required by Section 5.01 of the *Charter* for the "Agreement" thus rendering the "Agreement" null and void." Therefore, under Sec. 7.06(A) of the Charter, the Agreement is "illegal" since, "Any authorization of payment or incurring of obligation in violation of the provisions of this Charter shall be void and any payment so made is ***illegal***." (emphasis added)

All of these issues came together in yet another Plaquemines Parish contingency fee matter, *Quilio & Assocs. v. Plaquemines Par. Gov't.*[41] There, a consultant was hired by the Plaquemines Parish President on a contingency fee basis, without a formal resolution or Ordinance from the Council. Citing nearly all of the provisions of the Charter set forth above, the Court concluded that the Parish President did not have authority to enter into a contingency fee contract absent specific authority from the Council.[42] Likewise, in the instant matter, the Parish President had no authority to enter into a contingency fee agreement with Special Counsel absent the Council's specific approval of a contingency fee by Ordinance.

---

[41] 2005-0803 (La. App. 4 Cir. 5/10/06), 931 So. 2d 1129, 1134, *writ denied sub nom. Quilio & Assocs., Inc. v. Plaquemines Par. Gov't,* 2006-1442 (La. 9/29/06), 937 So. 2d 850.
[42] *Quilio,* 2005-0803, 931 So. 2d at 1135.

Another noteworthy aspect of *Quilio*, is that the Court rejected out of hand the consultant's alternative claims based upon "apparent authority" and *quantum meruit*."   Since the Special Counsel has recently asserted an alternative claim under a *quantum meruit* theory, PPG submits Special Counsel have no right to intervene on this basis as well. In *Quilio*, the Court found that because the claimant knew he needed a resolution or Ordinance from the Council for a valid contract, the doctrine of *quantum meruit* did not apply. This is because claims based upon unjust enrichment or *quantum meruit* cannot arise as a result of the fault or negligence of the claimant.[43]

Accordingly, Special Counsel have no valid, enforceable, written, contingency fee contract upon which to base their claim of right. Simply put, the Agreement was and is "***illegal***." The fact situation and the applicable jurisprudence directly on point also bars their claims based upon *quantum meruit* theories. All told, Special Counsel have failed to establish the second requisite element of their burden of proof under FRCP Rule 24 to establish a legally recognizable interest.

### Protecting the Interests/Adequate Representation of Special Counsel

Even if Special Counsel were able to establish an adequate interest in the subject of the litigation, that interest is adequately protected by current counsel for PPG. As each of the above-cited decisions have held, the party requesting intervention must also make a showing that its interests are not adequately protected. The law firms have not shown that PPG's current counsel have any interest in any outcome other than the most favorable recovery for PPG, from which Special Counsel would exact their share, to the extent they have a legally recognizable claim.

---

[43]      *Quilio,* 2005-0803, 931 So. 2d at 1137.

Moreover, there are already sufficient funds set aside in the Registry of the Court to cover any such fees owed.  Special Counsel's claim should therefore be litigated in the 25th JDC where the witnesses and evidence are located, just as their forum selection clause requires.

## III.   No Standing

Before proceeding to both the procedural and substantive merits of the dispute, the Court must first determine if Plaintiffs even have standing to bring the extant claim. A court is without subject matter jurisdiction to hear a particular case unless there exists an Article III case or controversy.[44]

> There are three constitutionally mandated elements to meet the standing requirement: [f]irst, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) imminent, not 'conjectural' or 'hypothetical,' ... [s]econd, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court ... [t]hird, it must be 'likely,' as opposed to merely 'speculative,' that the injury' will be 'redressed by a favorable decision.'[45]

In other words, "[s]tanding for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and repressibility."[46]  "To allege a justiciable cause of action, a plaintiff must plead facts that are sufficient to confer standing and demonstrate that the claim is ripe for determination."[47] The plaintiff "must allege a distinct and palpable injury to himself, even

---

[44]      *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir. 2005).
[45]      *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotations and citations omitted).
[46]      *Dermer v. Miami–Dade County,* 599 F.3d 1217, 1220 (11th Cir.2010).
[47]      *Id.*

if it is an injury shared by a large class of other possible litigants."[48] Plaintiffs must have a "personal stake in the outcome" of the case,[49] and "must allege some threatened or actual injury resulting from the putatively illegal action."[50] "Abstract injury is not enough[;] [t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural" or hypothetical."[51]  "If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury."[52]

This entire inquiry relative to the instant Motion can begin and end with the first element— whether there exists an injury in fact. To establish an injury in fact, a plaintiff must demonstrate that it has some "legally protected interest" that has been harmed.[53] "That interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right."[54] As a general matter, "[a]n attorney whose only interest in a case derives from her contingency fee arrangement with the plaintiff or from a statutory-fee provision does not herself have standing as a separate party to the suit."[55] Therefore, Special Counsel have no standing.

---

[48]        *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975*).*

[49]        *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962),

[50]        *Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).

[51]        *E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979, 984 (11th Cir.1990) *(quoting O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

[52]        *Miccosukee Tribe of Indians of Florida v. Florida State Athletic Comm'n,* 226 F.3d 1226, 1230 (11th Cir.2000).

[53]        *Bochese,* 405 F.3d at 980.

[54]        *Primera Iglesia Baustista Hispana of Boca Raton, Inc. v. Broward County,* 450 F.3d 1295, 1304 (11th Cir.2006) (quoting *Vermont Agency of Nat'l Res. v. United States ex rel. Stevens,* 529 U.S. 765, 772, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000)).

[55]        *Austin & Laurato, P.A. v. United States,* No. 8:12-CV-1648-T-17, 2012 WL 5907066, at *2–3 (M.D. Fla. Nov. 26, 2012), <u>on reconsideration in part,</u> No. 8:12-CV-1648-T-17, 2013 WL 623897 (M.D. Fla. Feb. 20, 2013), and *aff'd,* 539 F. App'x 957 (11th Cir. 2013); *Hand v. Bibeault, 400 Fed. App'x* 526, 528 (11th Cir.2010); see generally, *Smith v. South Side Loan Co*., 567 F.2d 306, 307 (11th Cir.1978).

## **CONCLUSION**

Any dispute regarding payment of fees is a matter for separate litigation in the 25th JDC for Plaquemines Parish pursuant to the mandatory forum selection clause to which both Special Counsel and PPG agreed long ago. The fee issue is limited to those two parties directly involved in such a dispute, PPG and Special Counsel, and has no place in the instant BP litigation. More importantly, Special Counsel have not and cannot satisfy the requirements for intervention under FRCP Rule 24, as they have no claim under the law and therefore, no legal interest to justify intervention. Therefore, their request for leave to intervene should be denied outright.

Respectfully submitted:

_____/s/ Andrew C. Wilson_____
Andrew C. Wilson (#01162)
Simon Peragine Smith & Redfearn LLP
1100 Poydras Street, 30th Floor
New Orleans, Louisiana 70163-3000
Telephone: (504) 569-2030
Facsimile:  (504) 569-2999

PETER A. BARBEE (#18778)
WILLIAM S. CULVER, JR. (#4650)
8056 Highway 23 Ste. 200
Belle Chasse LA 70053
504/297-5575 Telephone
504/297-5697 Telefax
*Counselors   for   Plaquemines   Parish*
*Government*

## <u>CERTIFICATE OF SERVICE</u>

It is certified that the above and foregoing Memorandum on behalf of Plaquemines Parish Government in Opposition to Motion to Intervene [R. Doc. 23344] was served electronically with the Clerk of Court of the U.S. District Court, Eastern District of Louisiana, through the CM/ECF system of said Clerk, and through said system will be served by the Clerk on opposing counsel of record.

_____/s/ Andrew C. Wilson_____