UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUSIANIANA

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig**  "Deepwater Horizon" in the Gulf  Of Mexico, on April 20, 2010 | * | MDL 2179 |
| | * | SECTION: J |
| | * | JUDGE BARBIER |
| **This Document Relates To:**  *Pleading Bundle B1* | * | MAG. JUDGE WILKINSON |

| | | |
|---|---|---|
| **JELP BARBER,** | | CIVIL ACTION  No. 2:16-cv-05533 |
| (Plaintiff) | | |
| | * | SECTION J |
| **VERSUS** | | |
| | * | JUDGE BARBIER |
| **BP EXPLORATION & PRODUCTION, INC.,  BP AMERICA PRODUCTION COMPANY,  and BP P.L.C.** | * | MAG. JUDGE WILKINSON |
| (Defendants) | | |

**PLAINTIFF'S REPLY IN OPPOSITION TO BP'S REPLY IN SUPPORT OF BP'S MOTION AS TO RELEASED CLAIMS PURSUANT TO PTO NO. 64, SECTION 1, B1**

Pursuant to Federal Rules of Civil Procedure 27 and PTO 64, Plaintiff, Jelp Barber, respectfully requests that BP's Motion as to Released Claims Pursuant to PTO No. 64, Section 1, B1 requesting the Court dismiss Plaintiff's claim be denied.

As a release claimant, Plaintiff Jelp Barber was not covered under PTO 60[1], and was excluded from the E & PD Settlement Agreement. In an abundance of caution, Plaintiff filed a timely PTO 60 Complaint after making presentment and filed a sworn statement to maintain his claim pursuant to PTO 69189. Plaintiff has done everything the court has required him to do to maintain his claim against Defendants. As Defendants point out, release claimants were not members of the Settlement Agreement. They as well as the Attorney Generals for the Gulf States

---

[1] *see* Footnote 1 of Pre-Trial Order 60 (Rec. Doc. 16050)

1

lacked standing to file objections to the Settlement Agreement. Contrary to the Defendants contention, the Gulf state's Attorney Generals Statements of Interests were not overruled; the Court correctly pointed out that the states were also not parties and lacked standing to object to the Settlement Agreement.[2] The arguments advanced by the Attorney Generals are valid arguments and have not been rejected by the Court as are the arguments advanced by release claimants who objected to the Settlement Agreement. Furthermore, after PTO 60 was entered, a timely class action claim was filed on behalf of everyone who was in the BPCP who did not comply with PTO 60 within the 5th Circuit of Appeals. The status of that Appeal is still pending.

Defendant relies on this Court's previous Order and Reasons as to Defendants various Motion to Dismiss the B1 Master Complaint [Rec. Doc 3830] for the proposition that the GCCF Releases are valid and have been held valid. The Court has not expressly found that the executed GCCF releases are universally valid, but only found that there is nothing in the Oil Pollution Act of 1990 ("OPA") 33 U.S.C. §2701, et seq., that specifically prohibits their use. In the same order, the Court acknowledged that prior to the enactment of OPA, commercial fisherman had general maritime law claims under *Robins Dry Dock Repair Co. v. Flint,* 275 U.S. 303 (1927) in addition to claims under the OPA. The Court has not ruled on the validity of the releases because release claimants were not members of the settlement agreement and therefore lacked standing to file objections. Defendants' contention that *Robins Dry Dock* bars any compensation for economic losses fails to account for their favored status under admiralty law.

> One relevant exception to the *Robins Dry Dock* rule has been applied by a number of courts in the case of commercial fishermen. A number of these courts have recognized that claims of commercial fishermen are *sui generis* because of their special, favored status and unique relationship to the seas and fisheries, treating these fishermen as akin to seamen under the general maritime law.

---

[2] Order & Reasons" (Rec. Doc. 8138) at 77-78

*La. Crawfish Producers Ass'n - W. v. Amerada Hess Corp.,* 2015
U.S. Dist. LEXIS 177483, at 17 (W.D. La. Nov. 23, 2015)

Plaintiff's claim does exist under maritime law and could be maintained as a claim for the economic losses suffered under general maritime law. *See Exxon Shipping Co. v. Baker,* 554 U.S. 471 (2008) (commercial fisherman could recover compensatory and punitive damages for economic losses to individuals dependent on the Prince William Sound after the Exxon Valdez Oil Spill.) The OPA allows recovery for "[d[amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, or natural resources, which shall be recoverable by any claimant." 33 U.S.C. §2702(b)(2)(E). BP's Reply to Plaintiffs' Responses fails to acknowledge that the releases and covenants not to sue were being executed at a time when the long term effects of the oil spill were not yet known.

The Court has also suggested that there could be individual challenges to the validity of the GCCF releases[3], which is being done now through the Responses to BP's Motion to Dismiss due to the releases. Plaintiff would like to reincorporate by reference the arguments set forth in the various Motions to globally nullify the GCCF Release, found in the Record at Rec. Docs. 6902-1, 6831-1, and 7473-1, which were denied by the Court on October 10, 2012. Although insufficient for global denial, these arguments are germane to individual claims.

The Plaintiff, Jelp Barber, is challenging the validity of his release through his filing of the PTO 60 Complaint and filing a response to BP's Motion to Dismiss. Jelp Barber was among the release claimants who were told by the GCCF that they would not get any money unless they executed the Quick Claim Final Payment form and attached release while also being explicitly told that they did not need an attorney to represent them or review the forms. The GCCF, as representatives of BP, were not only directly communicating with the potential litigants of a

---

[3] "Order & Reasons" (Rec. Doc. 8138) at 76-77

putative class action, but also advising them that they did not need attorneys while threatening to withhold any subsequent payments under the OPA. The purpose of the interim and emergency payments under the OPA is to help parties affected by oil spills, like the BP Oil Spill, survive, not to settle lawsuits for pennies on the dollar.

    The OPA's legislative history is rife with general statements indicative of congressional intent to ensure that all oil spill victims are fully and adequately compensated. (statement of Rep. Tauzin, "ensure that all victims are fully compensated"); 135 CONG. REC. H7959 (daily ed. Nov. 2, 1989); (statement of Rep. Dyson, "assurances that damages arising from spill will be completely compensated")135 CONG. REC. H7959; (statement of Rep. Carter, "ensure that those people or businesses that are damaged by theses spills are fairly and adequately compensated")136 CONG. REC. H336 (daily ed. Feb. 7, 1990); (statement of Sen. Mitchell, "ensure the fullest possible compensation of oil spill victims")136 CONG. REC. S7752 (daily ed. June 12, 1990). The emphasis was on full and fair compensation, not speed of getting claims released.

    BP's suggestion that the release claimants should offer to return funds received when they executed the GCCF releases fails to address the problems associated with the GCCF. The GCCF, as the claims processing center for BP, the responsible party, should not have been asking claimants to sign these releases and covenants not to sue. According to the March 7, 2012 Status Report[4], during the claim's process, the GCCF denied approximately 61.46 % of the claimants who filed claims between August 23, 2010 and March 7, 2012. During the phase II claims processing, the GCCF promised claimants a determination within 90 days of submission of claims but claimants faced denials or other burdensome requests which invariably led to more requests for documents, along with other delays; or claimants were offered immediate payment

---

[4] "Gulf Coast Claims Facility Overall Program Statistics" (Status Report, March 7, 2012) (Rec. Doc. 6831-1)

on a "Quick Claim" Final Payment within 14 days of submission for either $5,000 for individuals or $25,000 for businesses. For those who are struggling to make ends meet who couldn't work in the Gulf, there was no option but to take the quick payments in order to receive something rather than continue to wait and receive no additional interim or emergency payments as the GCCF delayed payments under the OPA.

Under the OPA, the responsible party is required to make emergency and interim payments to those affected by an oil spill. The release claimants including Jelp Barber were not getting timely interim relief payments from the GCCF and instead were told that they needed to do a quick claim final payment in order to get any compensation at a time when their business was in shambles and their livelihood ruined. Plaintiff is asking that the executed GCCF release and covenant not to sue be found unenforceable as a bar to Plaintiff's claims against BP, et al.

## CONCLUSION

For the foregoing reasons, Plaintiff Jelp Barber respectfully request that BP's Motion to Dismiss be denied.

Dated: August 23, 2017

**RESPECTFULLY SUBMITTED**,

/s/ Douglas S. Lyons
Douglas S. Lyons
Florida Bar No. 128277
Matthew Leon
Florida Bar No. 119264
Lyons and Farrar, P.A.
1637 Metropolitan Blvd., Suite A-2
Tallahassee, FL  32308
(850) 222-8811 - telephone
(850) 222-5583 - facsimile
doug.lyons@lyonsandfarrar.com

**Counsel for Plaintiff**

**[Space Intentionally Left Blank]**

5

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply in Support of Plaintiffs' Response to BP's Motion as to Released Claims Pursuant to PTO No. 64 has been served on all counsel by electronically uploading the same to File & Serve Xpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179, on this 23nd day of August, 2017.

/s/ Douglas S. Lyons
Douglas S. Lyons