IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 (10-md-2179)<br>SECTION J |
| This document relates to:<br>Case No. 2:11-cv-916<br>*Parish of Plaquemines v. BP PLC, et al.* | * * * * * * | Honorable CARL J. BARBIER<br><br>Magistrate Judge WILKINSON |

### REPLY TO PLAQUEMINES PARISH'S OPPOSITION TO MOTION TO INTERVENE

Martzell, Bickford & Centola, APC; David Landry, Esq.; and King, Krebs & Jurgens, PLLC ("Special Counsel"), through their undersigned counsel, respectfully submit this reply to the Memorandum in Opposition to Motion to Intervene (the "Opposition") filed by Plaquemines Parish (the "Parish"), Doc. No. 23502, and in further support of Special Counsel's Motion for Leave to Intervene (the "Motion"). Doc. No. 23344.

The Parish contends that Special Counsel's Motion should be denied for three reasons: (1) because the Representation Agreement between the Parish and Special Counsel contains a forum-selection clause calling for disputes to be heard in the 25th Judicial District Court; (2) because Special Counsel are not entitled to any fee, either as a contingency percentage or based on *quantum meruit*; and (3) because Special Counsel lack standing. *See* Doc. No. 23502 at 1. All three arguments are clearly meritless.

**I.     For multiple reasons, the forum-selection clause in the Representation Agreement provides no ground to dismiss Special Counsel's claim for attorney's fees.**

First, the Parish cannot enforce a forum-selection clause in the Representation Agreement against Special Counsel while it argues in the very same brief that the Representation Agreement is "illegal." Opposition at 10, 12. At a minimum, a forum-selection clause could not be enforceable

unless it is part of a valid contract, which is denied by the Parish. Further, as discussed at length in Special Counsel's Opposition to Plaquemines Parish's Motion to Dismiss, the forum-selection clause is unenforceable here even if it is part of valid contract: because the forum-selection clause was superseded by a contrary provision in the Settlement Agreement granting this Court exclusive jurisdiction over this fee dispute, and because public-interest factors dictate that federal district courts should adjudicate fee disputes arising from litigation before them. *See* Doc. No. 23502.

II. **Special Counsel's claim for payment of attorney's fees from the funds in the Court's registry is clearly adequate to support intervention, notwithstanding the Parish's arguments on the merits of the claim.**

Second, it is beyond reasonable dispute that Special Counsel's claim for payment of reasonable attorney's fees from the funds recovered as a result of their efforts in this litigation is adequate to support intervention. The Parish argues that Special Counsel do not "possess an interest in the action justifying intervention" because they have "advance[d] no theory that establishes a legal interest in the settlement proceeds." Opposition at 17. Specifically, the Parish argues that the "Contingency Fee Agreement is legally invalid under applicable Parish or Louisiana law," and that Special Counsel are not entitled to any *quantum meruit* fee. *See id.* at 17, 20. Aside from being grievously wrong, this argument "put[s] the cart before the horse": "[E]xcept for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2nd Cir. 2001). As this Court has explained, Rule 24 "requires only that the applicant *claim an interest* in order to satisfy Rule 24(a)." *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179, 2016 WL 4261762 (E.D. La. Aug. 12, 2016) (quotation omitted). "[T]he general rules on testing a pleading are applicable here. The pleading is construed liberally in favor of the pleader

and the court will accept as true the well pleaded allegations in the pleading." *Id.* (quotation omitted).

"The Fifth Circuit has held that a discharged attorney who previously represented the plaintiff in a pending civil action clearly possesses an interest in the subject of the underlying action." *Deepwater Horizon*, 2016 WL 4261762, at *3 (quotation omitted).[1] There is no dispute here that Special Counsel represented the Parish in their claims against BP that resulted in a $45 million recovery, pursuant to a Representation Agreement that was signed by the Plaquemines Parish President. Although the Parish now wishes to contend that the Representation Agreement is "illegal" and that Special Counsel are entitled to no compensation at all for their work, these are arguments on the merits that may be presented once Special Counsel have intervened and become proper parties. *See, e.g., id.* at *4 ("[I]t is apparent that a contract under which [the intervenor law firm] claims an interest does in fact exist. It would be inequitable for [the law firm] not to be able to intervene and at least prove its claim to the funds.").

### III. Special Counsel's interest in receiving payment for their work is a "personal stake" that confers Article III standing.

Third, there is no basis whatsoever to deny Special Counsel's Motion for lack of standing. As an initial matter, Fifth Circuit precedent does not strictly require that an intervenor have independent standing. *See, e.g., Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015)

---

[1] The Parish acknowledges that there is clear Fifth Circuit authority, going back to *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52 (5th Cir. 1970), holding that "a law firm could intervene in a former client's action to protect its interest in its contingency fee." Opposition at 14–16. Although the Parish suggests that the holding of *Gaines* has been "heavily criticized" and "called into question," that holding indisputably remains good law in the Fifth Circuit. Curiously, the Parish quotes *Keith v. St. George Packing Co.*, 806 F.2d 525, 526 (5th Cir. 1986), for the statement that "*Gaines* may not represent the persuasive use of Fed. R. Civ. P. 24," but omits the rest of the sentence: "***it binds us as the law of this Circuit until modified en banc***." (Emphasis added). Thus, contrary to the Parish's suggestion, there is no "controversy surrounding the precedential authority of *Gaines*," Opposition at 16—only its own misleading obfuscations.

3

("[A]lthough an asserted interest must be 'legally protectable,' it need not be legally *enforceable*. In other words, an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim."). Nevertheless, Special Counsel clearly have standing to seek payment of the fees owed to them as a result of their legal work on behalf of the Parish.

As the Parish recognizes, a plaintiff "must allege a distinct and palpable injury to himself" and a "personal stake in the outcome of the controversy" to satisfy the standing requirements of Article III. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Baker v. Carr*, 369 U.S. 186, 204 (1962). The Parish suggests that Special Counsel lack the sort of "legally protected interest" that would establish an injury in fact. Opposition at 22. The Parish cites authority holding that a lawyer has no standing to assert **his client's** cause of action, notwithstanding that the lawyer stands to receive a contingency-fee percentage of any recovery by the client. *See, e.g.*, *Smith v. South Side Loan Co.*, 567 F.2d 306, 307 (5th Cir. 1978); *Hand v. Bibeault*, 400 F. App'x 526, 528–29 (11th Cir. 2010); *Austin & Laurato, P.A. v. United States*, No. 12-cv-1648, 2012 WL 5907066, at *3–4 (M.D. Fl. Nov. 26, 2012).

However, Special Counsel are not intervening here to assert the Parish's claim against BP; that claim has already been settled.[2] Rather, Special Counsel are intervening to assert **their own** claim to a share of the recovered funds, which have already been collected and deposited into the Court's registry. As discussed above, "[t]he Fifth Circuit has held that a discharged attorney who previously represented the plaintiff in a pending civil action clearly possesses an interest in the subject of the underlying action." *Deepwater Horizon*, 2016 WL 4261762, at *3 (quotation

---

[2] Subject to Special Counsel's rights under La. Rev. Stat. § 37:218.

4

omitted). That interest certainly provides Special Counsel with a "personal stake" sufficient to confer standing.

**IV.     Special Counsel are entitled to the contingency fee set forth in the Representation Agreement, or, in the alternative, a reasonable fee based on *quantum meruit*.**

As explained above, the decision on whether to allow Special Counsel to intervene does not require the Court to consider the merits of their claims. However, because the Parish has presented its erroneous arguments at length, Special Counsel feel compelled to respond briefly. Essentially, the Parish argues that the Representation Agreement is "illegal" because the ordinances retaining Special Counsel "fail[ed] to set forth the contingency fee terms and conditions." Opposition at 8, 10. The Parish contends that "the Council's legislative authority was circumvented," *id.* at 7, and includes various vague insinuations of deception or wrongdoing. *See, e.g.*, *id.* ("It remains unclear why this language was consciously left out and for whose benefit . . . ."); *id.* at 6 (concerning Mr. Landry); *id.* at 9–10 (concerning Mr. Braud and Mr. Ballay). However, the Parish's hyperbolic rhetoric and sinister implications cannot overcome the simple and devastating fact that the Parish Council expressly considered and approved the fee arrangement with Special Counsel.

The initial ordinance authorizing the retention of the Martzell Bickford firm and David Landry as counsel was passed at the April 14, 2011 meeting of the Parish Council. *See* Doc. No. 23266-4 at 15–16 (Ordinance No. 11-77). Before the Parish Council voted on the ordinance, Council Member Anthony Buras explained on the record that "there is no hourly fee," and that the representation was "being all done on a contingency basis."[3] The Parish Attorney, who was present

---

[3] A DVD containing a video recording of a portion of the April 14, 2011 Parish Council meeting has been submitted to the Court in connection with Special Counsel's Motion for Attorney's Fees and Costs. *See* Doc. No. 23266-3 (Notice of Manual Attachment).

at the meeting with a copy of the draft Representation Agreement, recited the fee arrangement on the record: "the contingency fee will be 15% of the first $25 million of gross recovery, and 10% of the balance of gross recovery in excess of $25 million." The Parish Council then voted unanimously to approve the ordinance, which authorized the Parish President to enter into a legal-services contract with Special Counsel.

Due to the Parish President's desire to retain King, Krebs & Jurgens, LLC, as additional counsel, the Parish Council revisited the same legal-services contract and passed an amending ordinance on August 11, 2011. This time, however, the Parish Council did not merely authorize the Parish President to enter into a legal-services contract—***it specifically approved the amended contract***. The amended ordinance states: "[The Parish Council] hereby approves of the professional services contract jointly with Martzell Bickford, L.L.C., David Landry, Of Counsel to Martzell Bickford, and King, Krebs & Jurgens, L.L.C. for professional legal services . . . ." Doc. No. 23266-4 at 17.

It is therefore patently absurd to suggest that "the Council's legislative authority was circumvented" merely because the ordinances did not state that Special Counsel were to be paid on a contingency basis. *See* Opposition at 7–8. The Parish Council was fully aware, beyond any possible doubt or misunderstanding, of the fee arrangement at the time it passed the ordinances appointing Special Counsel. Thus, notwithstanding the Parish's discourse on the relative powers of the executive and legislative branches, *see* Opposition at 2–6, 17–19, there are no legitimate separation-of-powers issues at play here—only a manufactured hyper-technicality that the Parish seeks to exploit to renege on its promise.[4] Moreover, it is a technicality that does not even exist in

---

[4] The Parish relies on *Meredith v. Ieyoub*, 700 So. 2d 478 (La. 1997), in which the Louisiana Supreme Court, citing the separation-of-powers doctrine, held that the Attorney General has no authority to hire private attorneys to represent the State on a contingency basis without legislative

law: Although the Parish suggests that it was "required by law" for "the actual contingency fee arrangement" to be included in the ordinances appointing Special Counsel, Opposition at 8, it has identified no law that would actually require this.

Not content to merely disavow its contractual obligations, the Parish further argues that Special Counsel are entitled to **no compensation whatsoever** for six years of work done for the benefit of the Parish, from which the Parish has benefitted handsomely. The Parish argues that Special Counsel "cannot make a claim under the doctrine of *quantum meruit* since they know their authorizing Ordinance had to expressly set out any contingency fee agreements." Opposition at 12; *see id.* at 20 ("[C]laims based upon unjust enrichment or *quantum meruit* cannot arise as a result of the fault or negligence of the claimant.").

Lawrence Centola was present at the April 14, 2011 Parish Council meeting on behalf of the Martzell Bickford law firm and Mr. Landry, and he watched and listened as the Parish Council adopted a resolution appointing them as counsel after being specifically informed of the fee arrangement. Beyond that, Special Counsel met in executive session and privately with the Parish President, Parish Attorney, and Parish Council on multiple occasions as the Representation Agreement was being negotiated. Further, the Parish Charter provides that "the Parish President may employ special counsel pursuant to the provisions of this Charter," and commands that "***[i]n all cases, the Parish shall compensate said special counsel for their services.***" Doc. No. 23502-1 at 17.

The Parish would have this Court believe that it was "negligence" or "fault" for Special Counsel to assume that the Parish would act in good faith and stand by an agreement that was

---

authorization. In addition to being inapplicable to parish governments, *Meredith* is not controlling here because the Parish Council did in fact expressly authorize the Parish President to enter into the contingency-fee contracts with Special Counsel.

7

drafted by the Parish Attorney, expressly approved by the Parish Council, and executed by the Parish President.[5] This is a far cry from *Quilio & Associates v. Plaquemines Parish Government*, 931 So. 2d 1129, 1137–38 (La. App. 4th Cir. 2006), in which an auditor entered into an consulting agreement with the Parish President despite knowing that the Parish Council had not approved the contract and "was unanimously opposed" to doing so. Assuming that the Representation Agreement is found to be unenforceable, Special Counsel are nonetheless entitled to a reasonable fee, as determined by this Court on a *quantum meruit* basis.

## CONCLUSION

For the reasons explained above and in Special Counsel's Motion for Leave to Intervene, Special Counsel respectfully request that the Court grant leave to intervene.

---

[5] If the ordinances were so obviously defective, as the Parish suggests, surely the Parish Council members also would have been aware of such defects at the time the ordinances were passed, which would suggest that Special Counsel were fraudulently induced to perform legal services for the Parish based upon known defective ordinances that would fail to provide for their compensation.

Respectfully submitted,

*/s/ Matthew J. Paul*
Richard C. Stanley, 8487
Matthew J. Paul, 37004
STANLEY, REUTER, ROSS, THORNTON
  & ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, LA 70112
(504) 523-1580  Telephone
(504) 524-0069  Facsimile
rcs@stanleyreuter.com
mjp@stanleyreuter.com

*Counsel for Martzell, Bickford & Centola, APC; King, Krebs & Jurgens, PLLC; and David Landry, Esq.*

Scott R. Bickford, 1165
Lawrence J. Centola, III, 27402
MARTZELL, BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, LA 70130
(504) 581-9065  Telephone
(504) 581-7635  Facsimile
usdcedla@mbfirm.com

*Counsel for Martzell, Bickford & Centola, APC*

Henry A. King, 7393
Michael L. Vincenzo, 23965
KING, KREBS & JURGENS, PLLC
201 St. Charles Avenue, 45th Floor
New Orleans, LA 70170
(504) 582-3800  Telephone
hking@kingkrebs.com
mvincenzo@kingkrebs.com

*Counsel for King, Krebs & Jurgens, PLLC*

David L. Landry, 7978
THE LAW OFFICE OF DAVID L. LANDRY
1214 Parasol Place
Pensacola, FL 32507
(850) 492-7240  Telephone
2landry@cox.net

*Counsel for David Landry, Esq.*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of October, 2017.

                                                               */s/ Matthew J. Paul*