UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL BY THE OIL RIG     MDL NO. 2179
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO ON APRIL 20, 2010     SECTION "J"

THIS DOCUMENTS RELATES     JUDGE BARBIER
TO NO. 11-916     MAG. JUDGE WILKINSON

## ORDER AND REASONS ON MOTION

Martzell, Bickford & Centola, APC; David Landry, Esq.; and King, Krebs &
Jurgens, P.L.L.C. (collectively "Intervenors" or "Special Counsel"), received leave to file
a complaint in intervention against their former client, plaintiff Plaquemines Parish
Government (the "Parish").  Record Doc. Nos. 23576, 23577.  Intervenors allege that the
Parish breached its contingency fee contract with them (the "Fee Agreement") by failing
to pay any attorney's fees or costs in connection with their representation of the Parish
in its claims against BP, p.l.c. ("BP") arising from the Deepwater Horizon oil spill.

Intervenors filed "Plaquemines Parish Special Counsel's Motion for Fees and
Costs Pursuant to Contingency Fee Agreement," Record Doc. No. 23266, in which they
seek to recover from plaintiff's recent settlement with BP the attorney's fees and costs
that plaintiff allegedly owes them under the Fee Agreement.  Because no submission date
has been set regarding Intervenors' motion for fees and costs, no opposition
memorandum is due or has been filed.  See Record Doc. No. 23446 (providing that the
court would set a briefing schedule for Intervenors' motion for attorney's fees and costs

and their anticipated filing of a motion for summary judgment, if necessary, after determining the then-pending motion to intervene and the Parish's motion for dismissal).

In response to Intervenors' motion, the Parish filed a Motion for Dismissal of Motion for Fees and Costs or in the Alternative, Removal to Forum Conventionally Agreed to by the Parties and for Stay on Hearing of Motion for Fees and Costs Pursuant to Contingency Fee Agreement. Record Doc. No. 23280. The Parish argues that Intervenors' motion for fees and costs should be dismissed because the Fee Agreement contains a forum selection clause that requires any dispute arising from the contract to be adjudicated in the 25th Judicial District Court in Plaquemines Parish. As discussed below, plaintiff's motion for dismissal disingenuously tries to avoid, but necessarily implicates, the arguments it made in opposition to other motions that the Fee Agreement is invalid, which directly conflict with its argument that the court should enforce the forum selection clause and dismiss Intervenors' motion for attorney's fees and costs.

Intervenors filed a timely memorandum in opposition to the Parish's motion. Record Doc. No. 23501. The Parish received leave to file a reply memorandum, Record Doc. Nos. 23568, 23572, 23573, and a supplemental reply memorandum to correct an error in its original reply. Record Doc. Nos. 23571, 23583, 23584. Intervenors' Motion for Fees and Costs and the Parish's Motion for Dismissal are pending before me pursuant to the consent of the parties under 28 U.S.C. § 636(c). Record Doc. No. 23495.

For the following reasons, IT IS ORDERED that the Parish's motion for dismissal is GRANTED. IT IS FURTHER ORDERED that Intervenors' motion for fees and costs is DISMISSED WITHOUT PREJUDICE so that Intervenors may seek relief in the 25th Judicial District Court in Plaquemines Parish pursuant to the valid forum selection clause in their contract with the Parish.

I.      FACTUAL BACKGROUND AND ARGUMENTS OF THE PARTIES

Intervenors allege in their complaint in intervention, their motion for fees and costs and their opposition to plaintiff's motion to dismiss that they entered into a Fee Agreement with the Parish effective April 15, 2011. Agreement for Professional Legal Services, Exh. D to Special Counsel's Motion for Fees and Costs, Record Doc. No. 23266-4 at pp. 5-17. The Fee Agreement states that the Parish executed it pursuant to two ordinances adopted by the Parish Council on April 14 and August 11, 2011. Id. at p. 5, preamble. The ordinances are attached to the contract. Id. at pp. 15-17. The two ordinances authorized the Parish President to negotiate and execute a professional legal services contract with, initially, David Landry and the firm of Martzell and Bickford, and then with the addition of King, Krebs & Jurgens, for the development of claims and filing of litigation against BP and other entities involved in the oil well blowout and spill.

Although the ordinances do not state the contract's payment method, a video recording of the Parish Council meeting on April 14, 2011 establishes, and plaintiff does not dispute, that a member of the Parish government read aloud at the meeting from the

proposed contract the contingency fee percentages to be paid from any gross recovery and the provision that the attorneys would advance all costs, to be reimbursed by the Parish from the net recovery. Notice of Manual Attachment, Record Doc. No. 23266-3; video recording, filed as Record Doc. No. 23259. The Council voted to authorize execution of the contract on that date and approved the addition of the King, Krebs firm on August 11, 2011. The Parish President and Intervenors signed the Fee Agreement on August 24, 2011, effective on April 15, 2011. Record Doc. No. 23266-4 at pp. 5, 14.

The Fee Agreement, which was drafted by the Parish Attorney, provides for contingent attorney's fees of 15 percent of the first $25,000,000 of gross recovery from BP and related entities and 10 percent of gross recovery in excess of $25,000,000. Intervenors agreed to advance all litigation costs, which the Parish would reimburse from its net recovery. Id. at pp. 6-7, § 5. The Fee Agreement "shall automatically terminate upon satisfactory completion . . . or two (2) years from the date of its execution, . . . subject to the right of either party to extend this agreement for three two (2)-year terms where the services are still required." Id. at p. 8, ¶ 7.2.

Intervenors exercised their option to extend the contract for two-year terms by letters to the Parish President, Parish Attorney and Chairman of the Parish Council on July 16, 2013 and August 13, 2015, Record Doc. No. 23344-2 at pp. 34-37, and to the Parish Attorney on June 12, 2017. Id. at pp. 38-39. There is no evidence that the Parish ever objected to those extensions, until after the Interim Parish President attempted on

June 30, 2016 to terminate the Fee Agreement with King, Krebs only. Plaintiff's Exh. 14 to its opposition to Intervenors' motion to intervene, Record Doc. No. 23502-14. When King, Krebs denied that the contract could be terminated without Parish Council approval, Plaintiff's Exh. 15, Record Doc. No. 23502-15, the Parish Attorney responded by arguing, apparently for the first time in the five-year history of the Fee Agreement, that it was void because section 7.06(B) of the Parish's Home Rule Charter required that such contracts not exceed two years. Plaintiff's Exh. 16, Record Doc. No. 23502-16. The Parish discharged all three Intervenors, allegedly for cause, on August 18, 2017, after they filed their motion for attorney's fees and costs in this court. Intervenors' Exh. A to Motion for Leave to Intervene, Record Doc. No. 23344-2 at p. 1.

Intervenors assert that they represented the Parish in this litigation for six years and obtained a $45,000,000 settlement with BP in June 2017, payable to the Parish over five years, with the first $15,000,000 installment due on August 1, 2017.[1] In anticipation of that payment, Intervenors provided the Parish with a "Fee Disbursement Schedule" detailing their claimed contingent fee of $5,750,000 and litigation expenses of $685,056.62. Special Counsel's Exh. F, Record Doc. No. 23266-4 at p. 24. The Parish refused to pay any fees or costs and discharged Intervenors after the Settlement

---

[1] The Full and Final Release, Settlement, and Covenant Not to Sue (the "Settlement Agreement"), Record Doc. No. 23266-5, was ordered filed under seal pursuant to its confidentiality provisions. Record Doc. No. 23316. However, various provisions of the Settlement Agreement, including the settlement and installment amounts, have been quoted in public filings by Intervenors, the Parish and BP without objection from the other parties.

Agreement was signed. The disputed portions of the first two installments paid by BP have been deposited into this court's registry, Record Doc. Nos. 23450, 23482, pending resolution of Intervenors' motion for attorney's fees and costs and plaintiff's motion for dismissal of the motion for fees and costs. Intervenors ask the court to enforce the Fee Agreement by awarding them contingent attorney's fees and litigation costs pursuant to the contract or, if the contract is invalid, a quantum meruit award of their fees and costs.

The Parish moved for dismissal with prejudice of Intervenors' motion for fees and costs or "removal" of the motion to the 25th Judicial District Court in Plaquemines Parish, based on the choice of forum clause in the Fee Agreement. Section 9 of the Fee Agreement provides in relevant part:

> If there is any dispute concerning this agreement, the laws of the State of Louisiana shall apply, its conflict of laws rules excepted if the interpretation of such would require the application of laws other than those of Louisiana. Proper venue and jurisdiction for all lawsuits, arbitration, claims, disputes, and other matters in questions [sic] between the parties to this agreement or any breach thereof, shall be in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana.

Record Doc. No. 23266-4 at p. 12, § 9 (emphasis added). Plaintiff argues that this provision is mandatory and enforceable, precludes Intervenors from pursuing their claims in this court and requires that Intervenors' motion for fees and costs be dismissed under the doctrine of forum non conveniens.

Because the Parish asks the court to enforce the forum selection clause, plaintiff avoids arguing in its motion that the Fee Agreement as a whole is invalid. However, the

Parish argued briefly in its opposition to BP's motion for leave to deposit settlement funds in the court's registry that "the legality and enforceability" of the Fee Agreement are at issue. Record Doc. No. 23468 at p. 2. In that separate memorandum, the Parish "questioned . . . whether the Contingency Fee Agreement was even valid, due to the flawed Ordinances," and stated that "the Plaquemines Parish Council never approved of a contingency fee contract at all." Id. at pp. 3, 4. Further, in its opposition to the motion to intervene, the Parish argued at length and with numerous supporting exhibits that the Fee Agreement is invalid and that Intervenors have no contractual or other rights to recover any attorney's fees or costs. Record Doc. No. 23502.

Intervenors respond to plaintiff's motion to dismiss that the Fee Agreement is valid, but that the forum selection clause was superseded by two paragraphs of the Settlement Agreement, which was signed by BP, the Parish President for the "Claimant" Parish and Scott Bickford, "Claimant's Counsel." Intervenors first cite paragraph 17 of the Settlement Agreement, which they say contains an agreement between the Parish and its Special Counsel regarding the fees and costs that plaintiff owes to counsel:

> Claimant further represents and warrants that Claimant and Claimant's counsel hereby acknowledge and agree that the payment to be paid to Claimant [by BP] . . . includes monies that fully and finally satisfy any and all fees and costs (including as to attorneys, accountants, experts and other service providers) in respect to representation of or assistance to Claimant by any counsel, accountant, expert or other service provider, whether current or former, including but not limited to any fees and costs asserted by lien or privilege, in connection with the Claims and the rights of such counsel, accountant, expert or other service provider to them that are being released by this Agreement.

7

Record Doc. No. 23266-5 at p. 5, ¶ 17 (emphasis added).  Intervenors contend that this paragraph modifies their Fee Agreement with the Parish and makes the Fee Agreement subject to the venue and jurisdiction clause in paragraph 9 of the Settlement Agreement.  Paragraph 9 provides that this court retains jurisdiction to enforce the Settlement Agreement; that any "disputes concerning the interpretation or enforceability of this Agreement, shall be filed" in this court; and that "[n]o action(s) to enforce this Agreement shall be filed in any state court."  Id. at p. 3, ¶ 9.

In its reply memorandum, the Parish argues that this court need not determine whether the Fee Agreement is valid before enforcing the forum selection clause.  The Parish does not explain why or cite any law to support its contention that the court should enforce the forum selection clause in its favor, while it inconsistently argues in other filings in this matter that the Fee Agreement is entirely invalid and cannot be enforced to award Intervenors any attorney's fees or costs.  The Parish further responds that Intervenors have no rights to enforce any aspect of the Settlement Agreement between plaintiff and BP because Intervenors were not parties to that agreement.  Thus, the Parish contends, the Settlement Agreement does not modify or supersede the forum selection clause in the Fee Agreement.  The Parish also states, incorrectly, that the Settlement Agreement does not mention attorney's fees.  As quoted above, paragraph 17 of the Settlement Agreement addresses the satisfaction of fees and costs from the settlement

payment, but it does not address how or where any attorney's fee dispute should be decided.

II.    ANALYSIS

A.    The Court Must Determine the Validity of the Fee Agreement

Although the Parish argued in its memoranda in opposition to BP's motion to deposit funds in the court's registry and to Intervenors' motion to intervene that the Fee Agreement was invalid from inception, the Parish in its motion to dismiss asks the court to enforce the forum selection clause without first deciding whether the Fee Agreement is valid. Despite the Parish's indelicate attempt to dance around the validity issue in its motion to dismiss, resolution of the motion necessarily turns on one question: Is the Fee Agreement valid? If the answer is yes, the forum selection clause is enforceable (for reasons discussed below) and the motion to dismiss should be granted. If the answer is no, the entire Fee Agreement is unenforceable and the motion should be denied.

Parties may permissibly argue alternative theories, Fed. R. Civ. P. 8(a)(3), (d)(2), as Intervenors do when they seek an award of attorney's fees and costs either under the Fee Agreement or, if the contract is invalid, under quantum meruit. However, the Parish is not arguing alternatives in the event one of its theories is unsuccessful. Instead, it self-servingly contends both that the forum selection clause should be enforced in favor of its preferred, contractually agreed-upon venue, which necessarily implies a valid Fee

Agreement, <u>and</u> that the Fee Agreement is invalid, so as to defeat Intervenors' claim for fees and costs under any theory of recovery. The Parish cannot have it both ways.

Generally, state law governs contractual validity. <u>Barnett v. DynCorp Int'l, L.L.C.</u>, 831 F.3d 296, 303 (5th Cir. 2016) (citations omitted). The Parish, as the party demanding performance of the forum selection clause in the Fee Agreement, must prove the existence of the obligation. La. Civ. Code art. 1831. A party seeking to enforce a contractual provision bears the burden to show the existence of a valid contract. <u>Alfortish v. GreenSky, LLC</u>, No. 16-15084, 2017 WL 699830, at *3 (E.D. La. Feb. 22, 2017) (citing La. Civ. Code art. 1831; <u>FIA Card Servs., N.A. v. Weaver</u>, 62 So. 3d 709, 719 (La. 2011); <u>Kosmala v. Paul</u>, 569 So. 2d 158, 162 (La. App. 1st Cir. 1990); <u>Ciaccio v. Cazayoux</u>, 519 So. 2d 799, 800 (La. App. 1st Cir. 1987)); <u>Sonnier v. Hesco Bastion USA, LLC</u>, No. 2015-1194, 2016 WL 1545533, at *4 (La. App. 1st Cir. Apr. 15, 2016) (citing <u>FIA Card Servs.</u>, 62 So. 3d at 719; <u>Pennington Constr., Inc. v. R.A. Eagle Corp.</u>, 652 So. 2d 637, 639 (La. App. 1st Cir. 1995)). The forum selection clause in the Fee Agreement is not a free-standing obligation that exists without reference to the rest of the contract. The court can only enforce the forum selection clause if the Fee Agreement itself is valid.

To the extent the Parish argues that no binding Fee Agreement exists, it also has the burden to prove invalidity. "A party who asserts that an obligation is null, or that it

has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction."  La. Civ. Code art. 1831.

B.     The Settlement Agreement Did Not Modify the Fee Agreement

Before deciding whether the Fee Agreement is valid, I address Intervenors' argument that the venue and jurisdiction provision of the Settlement Agreement supersedes the forum selection clause in the (presumptively valid) Fee Agreement.  This contention finds no support in the Settlement Agreement.  There is no evidence, either within the four corners of that agreement or externally, that the Parish and Intervenors intended the Settlement Agreement to modify, or actually modified, the Fee Agreement.

First, the Settlement Agreement is between BP and the Parish.  The Settlement Agreement is signed by the Parish President and "Claimant's Counsel" Bickford in his capacity as the Parish's agent, but no attorneys are named as individual parties to the contract.  Second, the Settlement Agreement does not mention the Fee Agreement. Third, while paragraph 17 of the Settlement Agreement acknowledges an agreement between the Parish and its counsel regarding payment of attorney's fees and costs, that paragraph merely affirms what the Fee Agreement already provided, i.e., that counsel may recover fees and costs only from settlement monies the Parish receives from BP, not from any other source of Parish funds.  Paragraph 17 creates no new or modified obligations between the Parish and Intervenors.

Finally, paragraph 9 of the Settlement Agreement providing that this court retains jurisdiction to enforce the Settlement Agreement is merely a recitation of the holding in Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 378-82 (1994).  The only provision of the Settlement Agreement that this paragraph affects is any dispute over interpretation of the Settlement Agreement itself, not the separate Fee Agreement.  Thus, the venue provision in paragraph 9 of the Settlement Agreement has no effect on the Fee Agreement's forum selection clause.

C.    The Forum Selection Clause Is Mandatory and Enforceable

Federal law determines the enforceability of forum selection clauses.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31-32 (1988); Barnett, 831 F.3d at 301 (citing Weber v. PACT XPP Techs., AG, 811 F.3d 758, 770 (5th Cir. 2016); Haynsworth v. The Corp., 121 F.3d 956, 962 (5th Cir. 1997)).

If the Fee Agreement is valid, its forum selection clause is clear, mandatory and enforceable.  Like the forum selection clause in the recent United States Supreme Court decision of Atlantic Marine Construction Co. v. United States District Court, 134 S. Ct. 568 (2013), the Fee Agreement uses the mandatory "shall" to require that "the proper venue and jurisdiction for all lawsuits . . . between the parties to this agreement or any breach thereof, shall be in the 25th Judicial District Court for the Parish of Plaquemines." Record Doc. No. 23266-4 at p. 12, § 9 (emphasis added); see Atl. Marine Constr. Co., 134 S. Ct. at 575 & 581 n.5 (internal quotations omitted) (forum selection clause in

12

presumptively valid contract, stating "that all disputes between the parties <u>shall be</u> <u>litigated</u> in the . . . United States District Court for the Eastern District of Virginia, Norfolk Division," was mandatory) (emphasis added).  The Fifth Circuit "recognize[s] a distinction between mandatory and permissive forum selection clauses.  Unlike their mandatory counterparts, permissive forum selection clauses allow but do not require litigation in a designated forum. . . .  <u>Atlantic Marine</u> involved a mandatory clause" in a valid contract.  <u>Waste Mgmt. of La., L.L.C. v. Jefferson Par. ex rel. Jefferson Par.</u> <u>Council</u>, 594 F. App'x 820, 821 (5th Cir. 2014) (citations omitted).

> A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another.  For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive.  It is important to distinguish between jurisdiction and venue.  Although it is not necessary for such a clause to use the word 'venue' or 'forum,' it must do more than establish that one forum will have jurisdiction.
>
> In this manner, the Fifth Circuit distinguishes between clauses in which the parties consent to personal jurisdiction in a particular forum, and clauses in which the parties require that the action be filed in a particular forum.  <u>A clause mandates the specified forum only when its language</u> <u>clearly communicates that all litigation will occur only in that forum</u>.

<u>Waste Mgmt. of La., L.L.C. v. Jefferson Par.</u>, 48 F. Supp. 3d 894, 908-09 (E.D. La. 2014) (quoting <u>City of New Orleans v. Mun. Admin. Serv., Inc.</u>, 376 F.3d 501, 504 (5th Cir. 2004)) (citing <u>UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia</u>, 581 F.3d 210, 219 (5th Cir. 2009)) (emphasis added).

The Parish's motion to dismiss based on the Fee Agreement's forum selection clause invokes the doctrine of forum non conveniens, which is "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum." Atl. Marine, 134 S. Ct. at 580. Atlantic Marine involved a motion to transfer venue to another federal court under 28 U.S.C. § 1404(a) "based on a mandatory forum selection clause that designated a different federal forum. The Supreme Court added, however, that the same framework it set forth [regarding a section 1404(a) motion] applies to a forum non conveniens motion seeking dismissal based on a forum selection clause requiring a state or foreign forum." Waste Mgmt., 594 F. App'x at 821 at n.1 (citing Atl. Marine, 134 S. Ct. at 580-82).

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion [or a motion to dismiss based on forum non conveniens] be denied." Atl. Marine, 134 S. Ct. at 581. "Unlike a § 1404(a) motion, a successful motion under forum non conveniens requires dismissal of the case. . . . [W]hen the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause . . . , dismissal would work no injustice on the plaintiff." Id. at 583 n.8 (citation omitted) (emphasis added).

In conducting a forum non conveniens analysis of a valid forum selection clause, the court need not consider any "private-interest factors," such as the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive," all of which were waived in this case by the parties' clear and unambiguous agreement to a mandatory forum. Id. at 581 n.6, 582 (quotation omitted). The "district court may consider arguments about public-interest factors only. . . . Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases," which "will not be common." Id. at 582 (citation omitted).

"Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Id. at 581 n.6 (quotation omitted). In the instant case, Intervenors have not shown that these or any other public interest factors weigh against enforcing the parties' choice of the state court in Plaquemines Parish as a forum. That court is about ten miles from the federal courthouse, clearly has a localized interest in the controversy and is fully capable of resolving the issues of Louisiana law raised by the instant dispute.

D.    <u>The Fee Agreement Is Valid</u>

Having determined that the Settlement Agreement does not modify or supersede the Fee Agreement and that the forum selection clause of the Fee Agreement is mandatory if the agreement itself is valid, the court turns to the determinative question: Is the Fee Agreement valid?  The answer is yes.

The Parish relies on its Home Rule Charter (the "Charter"), which is attached to its opposition to the motion to intervene, to argue that the Fee Agreement is invalid. Plaintiff contends that the two ordinances authorizing its President to negotiate and execute the contract did not comply with the Charter and that the Fee Agreement is invalid from inception.

The Charter gives the Parish Council authority over Parish affairs.  Plaintiff admits that its Council has authority to enter into a contingency fee agreement.  The Parish does <u>not</u> contend (and has provided no evidence) that the Council was not fully aware of the terms of the Fee Agreement when it passed the two ordinances or that the Parish President lacked actual authority to enter into a contingency fee agreement to hire Intervenors.  The Parish argues that the ordinances were improper because they do not state that the Fee Agreement is a contingent fee contract.  However, the Charter provisions and other law cited by the Parish do <u>not</u> require that the ordinances contain such language and do <u>not</u> otherwise render the Fee Agreement invalid.

The Charter grants the Parish President authority to carry out policies adopted by the Parish Council via ordinance. The Council has the authority to employ special counsel. Plaquemines Parish Charter, Record Doc. No. 23502-1 at p. 8, § 3.10 (A); p. 17, § 5.02(B), (C). "In all cases, the Parish shall compensate said special counsel for their services." Id. § 5.02(B). The Council, at public hearings and with knowledge of the contingent fee terms, unanimously passed an ordinance on April 14, 2011 that authorized the Parish President to negotiate and execute the Fee Agreement with Landry and Martzell & Bickford. The Council passed a second ordinance at a public hearing on August 11, 2011, that specifically "approves of the professional services contract" already negotiated, amends the contract to include the King, Krebs law firm, and authorizes the Parish President to sign it. Both ordinances direct Parish employees to carry out the purposes of the ordinances without any further reading or approval by the Council. Record Doc. No. 23266-4 at pp. 15-17.

Plaintiff argues that Sections 7.06(A) and 5.02(D) of the Charter invalidate the ordinances. Section 7.06(A) concerns administration of the Parish's capital and operating budgets and mandates that "[n]o payment shall be made against any allotment or appropriation except" in accordance with the Parish's approved capital and operating budgets. Record Doc. No. 23502-1 at p. 22, § 7.06(A). Section 5.02(D) states that "no special counsel shall be employed until a budget appropriation has been made for that purpose." Id. at p. 17, 5.02(D). These provisions do not invalidate the ordinances or Fee

Agreement. No money was contemplated to be taken from the Parish's "allotments or appropriations" in its budgets to pay for Special Counsel's fees. As the Fee Agreement clearly provides and as the Parish acknowledged in paragraph 17 of the Settlement Agreement, attorney's fees will be paid solely from the settlement amount received from BP. That amount cannot become part of the Parish's budget until after the Settlement Agreement is signed and funded. Only then will the contingent fee be due to Intervenors. Plaintiff's tortured argument that a budget appropriation must have been made in 2011, when no funds were yet available for that purpose, in order to employ Special Counsel on a contingent basis would negate its admission that the Council has the authority to enter into a contingent fee contract.

Section 7.06(B), which provides that "contracts for services not covered by the public bid law . . . shall not be for a period in excess of two (2) years," also does not invalidate the Fee Agreement. The Fee Agreement provides for a term of two years and grants either party the right to extend the contract for up to three two-year terms when the professional services are still required. Record Doc. No. 23266-4 at p. 8, §§ 7.2, 7.4. In 2013 and 2015, Intervenors exercised their option to extend the Fee Agreement for additional two-year terms by letter to the Parish, without any objection by the Parish. They continued to represent the Parish in its claims against BP until August 2017. Record Doc. No. 23344-2 at pp. 34-37. After the Parish President signed the Settlement Agreement, but before BP signed it, Intervenors on June 12, 2017 invoked a third two-

year extension of the Fee Agreement, so they could continue to represent the Parish with respect to the Settlement Agreement and the Parish's remaining claims in the pending punitive damages class settlement.  Id. at pp. 38-39.  The Parish refused to pay any of Intervenors' requested fees or costs and discharged them in August 2017.  Record Doc. No. 23344-2 at p. 1.

Even if the two-year extension clause in section 7.2 of the Fee Agreement is invalid because it supposedly contravenes section 7.06(B) of the Charter, it does not invalidate the entire contract.  Section 9 of the Fee Agreement provides that, if a court of competent jurisdiction finds any particular contractual provision "illegal, invalid or unenforceable, then the remainder of the provisions of this agreement shall be considered as having been written and executed without such invalid, illegal or unenforceable provision, and to this end, the provisions of this agreement are hereby declared severable."  Record Doc. No. 23266-4 at p. 12, § 9.  Louisiana law permits enforcement of a contract that contains both an invalid clause and a severability clause.  See La. Civ. Code art. 2034 ("Nullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision.").

"[W]hether a[n] agreement is severable is controlled generally by the intent of the parties as expressed by the contract terms and/or language.  Thus, the existence of a severability provision in a contract, while not always regarded as conclusive, will

19

generally be given considerable weight." Hudson v. City of Bossier City, 930 So. 2d 881, 894 (La. 2006) (quotation and citation omitted). The Louisiana Supreme Court held in Hudson that casinos' contracts with a City government that operated under a Home Rule Charter were not invalidated when one of the contractual provisions conflicted with a Louisiana statute. Although the particular provision in Hudson was void as against public policy, the agreements contained a severability clause like the one in the Fee Agreement, which reflected the parties' intent to be bound by the contract despite the invalid provision. Id. The Louisiana Supreme Court upheld the validity of and enforced the contracts without the void provision. Id. at 895; see also SWAT 24 Shreveport Bossier, Inc. v. Bond, 808 So. 2d 294, 309 (La. 2001), superseded by statute on other grounds as stated in Lemoine v. Baton Rouge Physical Therapy, L.L.P., 135 So. 3d 771, 774 (La. App. 1st Cir. 2013) (A provision of a non-competition agreement that was broader than allowed by Louisiana law was unenforceable, but, "[i]n light of [the] severability clause which reflects the parties' intent . . . , [the court] will sever the null clause from the Agreement," which was otherwise valid.). Therefore, even if the clause of the Fee Agreement that permits two-year extensions is invalid, that provision can be severed. At a minimum, the initial two-year term complies with section 7.06(B) of the Charter and the contract is valid.

Two cases cited by the Parish in opposition to the validity of the Fee Agreement are not on point. The Louisiana Supreme Court's decision in Meredith v. Ieyoub, 700

So. 2d 478 (La. 1997), is inapplicable because it concerned the separation of powers between the Louisiana legislature and the Louisiana Attorney General, a member of the executive branch, not the powers of a parish government under a Home Rule Charter. The court held that the legislature had sole constitutional authority to control the state's fiscal affairs and that the legislature had not statutorily delegated its financial authority to the Attorney General to enter into a contingency fee contract with private attorneys to pursue claims under a particular statute. Id. at 481-82. In the instant case, the Parish Council has authority to enter into a contingency fee contract and knew the terms of the Fee Agreement, which its Parish Attorney had drafted, when it authorized the Parish President to execute the Fee Agreement.

Quilio & Assocs. v. Plaquemines Par. Gov't, 931 So. 2d 1129 (La. App. 4th Cir. 2006), is also distinguishable. In that case, the Plaquemines Parish Council declined to renew an annual contract with the plaintiff consultant. The evidence established that the Parish President never conferred with the Parish Attorney regarding a new, contingent fee contract with the consultant, never submitted the contract to the Council and hired the consultant without the Council's approval or knowledge. The consultant was aware of all of these facts. The court held that the Parish President lacked actual and apparent authority to enter into the new contract on the Parish's behalf and that the Parish never ratified the contract, which rendered the contract a nullity. Id. at 1134-37. The court also held that the consultant could not recover any fees under an unjust enrichment theory

because of his own fault for entering into a contingent fee contract when he knew the facts stated above.  Id. at 1137-38.  The contract in Quilio was not invalid because it was a contingency fee contract, but because the Parish President entered into it without the Council's knowledge or approval, when he and the consultant knew that the Council did not want to hire the consultant.  In the instant case, the Council knew of the Fee Agreement's terms and expressly authorized the Parish President to execute it.

Finally, the Parish seeks an award of its attorney's fees and costs associated with bringing the motion to dismiss.  Record Doc. No. 23280-2 at p. 4.  Plaintiff cites no law to support its request.  Section 12 of the Fee Agreement does not require an award as there is not yet a "prevailing party" with respect to a "legal action" brought to enforce the obligations of the Fee Agreement.  Record Doc. No. 23266-4 at p. 14, § 12.

## CONCLUSION

For the foregoing reasons, I find that the Parish and Intervenors entered into a valid Fee Agreement and that the forum selection clause in the agreement is mandatory, valid and enforceable.  Words have meaning, and this contract's words and meaning are entirely clear.  Accordingly, IT IS ORDERED that plaintiff's motion to dismiss, Record Doc. No. 23280, is GRANTED IN PART and that Intervenors' Motion for Fees and Costs Pursuant to Contingency Fee Agreement, Record Doc. No. 23266, is DISMISSED WITHOUT PREJUDICE, so that the dispute may be determined in the 25th Judicial District Court in Plaquemines Parish.  The motion is DENIED in all other respects.

IT IS FURTHER ORDERED that the funds in the registry of the court, Record Doc. Nos. 23450, 23482, shall remain there until the parties file an appropriate motion to transfer the funds to the registry of the 25th Judicial District Court in Plaquemines Parish or otherwise account for the disposition of the funds.

New Orleans, Louisiana, this _____7th_____ day of November, 2017.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
**HON. CARL J. BARBIER**