## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUSIANIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010 | * * * | MDL 2179 SECTION: J JUDGE BARBIER |
| This Document Relates To: *Pleading Bundle B1* | * | MAG. JUDGE SHUSHAN |
| JOHNNY'S CLAMS INC. (Plaintiff) | * | CIVIL ACTION No. 16-05541 |
| VERSUS | * | SECTION J |
| BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION COMPANY, and BP P.L.C. (Defendants) | * * | JUDGE BARBIER MAG. JUDGE WILKINSON |

### JOHNNY'S CLAMS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF ORDER AS TO BP'S DISPOSITIVE MOTION AS TO RELEASED CLAIMS

**JOHNNY'S CLAMS, INC,** (herein after **"Johnny's Clams"**[1]) by and through its undersigned attorneys has filed a motion to seek relief from, and moved the Court to reconsider, the Court's Order as to BP's Dispositive Motion as to Released Claims (Rec. Doc. 23560) issued by the Court on October 20, 2017, to the extent that it dismisses with prejudice the claim asserted by  Johnny's Clams, requests that the Court review Johnny's Clams' Response to Order to Show Cause (Rec. Doc. 20566), and determine that said Plaintiff's release and covenant not to sue be held unenforceable.

---

[1] The complaint in this matter was filed under the name of Johnny's Clams Inc. but the orders and exhibits variously refer to the claim by both Johnny's Clams and/or Johnny Sheridan.

1. Johnny's Clams was a Plaintiff in a consolidated complaint filed in this Court entitled Jensen Beach Marketing, Inc. v. BP, Civil Action No. 2:13-cv-1439.

2. On March 29, 2016 the Court entered Pretrial Order No. 60 ("PTO 60") (Rec. Doc. 16050), requiring each Plaintiff to file an individual complaint along with a Sworn Statement. In a Footnote to PTO 60, the Court stated that it would address the status of the claimants who previously executed releases and covenants not to sue, hereinafter the "release claims". Johnny's Clams was a release claimant which executed a release and covenant not to sue on July 24, 2011.

3. On May 12, 2016 undersigned counsel filed in the record a complaint in Case 2:16-cv-16-0554, along with required attachments, all of which were served as required by PTO 60.

4. This Court issued PTO 64, which required the Release Claimants to file a sworn statement, testifying that the claimants have a maritime claim. As a maritime worker and a release claimant, Johnny's Clams timely filed a sworn statement.

## **MEMORANDUM**

In response to the Defendant's Motion as to Released Claimants, the Defendants raised the executed release and covenant not to sue as an Affirmative Defense to the Plaintiff's complaint. Plaintiff as the non-moving party its Response contending that the Court should not dismiss the Plaintiff's complaint for multiple reasons; including coercion, fraud in the inducement, enhanced scrutiny of enforcing releases signed by seamen, and violation of the Court's order restraining the GCCF from advising potential class members against obtaining legal representation.

In response to the Court's request for a "Dispositive Motion as to the Release Claims", the Defendants' Motion seeks dismissal of the claims, not judgment, which the Court treats as a Motion for Summary Judgment. In considering a summary judgment, the Court should construe the evidence and inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. In the Court's Order (Rec Doc. 23560), the Court stated that as a matter of law, there was no duress since there was an alternative, the ability to sue or apply to the BP Liability Trust; or as a matter of law claim fraud due to the existence of a written contract. There is no evidence before the Court that the BP Liability Trust was a viable alternative. In fact there is no evidence as to what, if any, claims were paid or dispersed by the BP Liability Trust. With respect to ability to sue, it has been 7 years and 7 months, and no suit has been tried. A stay was initiated as to all suits and not lifted until PTO 60 and then immediately stayed again. This is not a realistic viable alternative to the OPA interim payments provisions that were more honored in the breach than in the observance and was most particularly breached with respect to the Plaintiff. The facts asserted by the Plaintiff show that the Plaintiff's owners were under severe economic duress when they were told to sign the release and covenant not to sue. The GCCF, as an agent of BP, the responsible party, was required to make emergency and interim payments to those affected, like Plaintiff, by the Deepwater Horizon oil spill and did not, starving out claimants until they signed the releases.

I.      Federal Rule of Civil Procedure 56

The Court treated the Defendants' Dispositive Motion as to Released Claimants as both a Motion to Dismiss and a Motion for Summary Judgment. In the Court's Order (Rec. Doc. 23560) the Court states that there are no genuine issues of material fact, as if the Court is treating the Defendant's Motion as a Motion for Summary Judgment. If this was a Motion for Summary

Judgment, Plaintiffs as the nonmoving party should have been given an opportunity to present evidence to support their claims, particularly since there are genuine issues of materials of fact involved. There has not been an evidentiary hearing as to the facts alleged by Plaintiff's owners in their dealings with the GCCF and its procurement of their signatures on the release.

If, as the Court suggests, BP's Dispositive Motion as to Release Claimants was a Motion for Summary Judgment, then the Plaintiffs, as the non-moving party, would have an opportunity to make an evidentiary showing of facts that support their claim. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Plaintiff never had an opportunity to make an evidentiary showing to support its claims, particularly the claims that support its assertion that the covenants not to sue and releases should not be enforced. Plaintiff has alleged in its response to Defendants' Motion as to Released Claimants that there was fraud in the inducement of the contract as well as economic duress. The Court should have allowed Plaintiffs to present evidence to support these defenses to the enforcement of the releases which, as contracts, are to be enforced under Florida law.

II.     Economic Duress

The OPA provides for interim payments which claimants can apply for once every 90 days, and for a while, the GCCF provided those interim payments pursuant to OPA. There came a time when either the GCCF universally or certain adjustors for the GCCF did not provide the interim payments or delayed, delayed, delayed those interim payments until starved and destitute, claimants had no economic choice but to take the Quick Payments offered by the

GCCF. The alternative the Court overlooks or does not give adequate consideration to is the emphasis of OPA on interim payments until the full nature and extent of the damage caused by the oil spill has been assessed, and the full nature and extent of the Plaintiff's damages therefore can be ascertained. This is the bedrock of the OPA. This was the clearly expressed Congressional intent behind the OPA.

Plaintiffs are not suing BP for fraud, but are stating in their Response to BP's Motion that the releases should be found invalid, for many reasons, including fraud and economic duress. "Under Florida law, economic duress permits an aggrieved party to rescind an agreement that was entered into under severe financial anxiety or pressure." *Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1317 (S.D. Fla. 2016) Plaintiff, as the nonmoving party, should have been offered an opportunity to present evidence to support its claim of economic duress and fraud.

In order to show that there was economic duress, "[t]he aggrieved party must show: (1) wrongful acts or threats, (2) financial distress caused by the wrongful acts or threats, and (3) absence of a *reasonable* alternative course of action." *Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 503 (S.D. Fla. 2000) (Emphasis supplied) Plaintiff has demonstrated that the Oil Spill, caused by BP, had placed an untenable financial burden on the husband and wife owners of Plaintiff, hardworking citizens, who were deprived of their livelihood and ability to work, a hardship due to nothing they had done wrong. They had not brought this on themselves. They were purely victims. The law provides a remedy for them. A law passed by Congress because of past victims who too, like Plaintiffs, were not at fault, but where a responsible party was manifestly and clearly at fault. The wrongdoer should bear the burden of that loss not the innocent party.

To compound these problems, the GCCF had not been making timely interim payments pursuant to the OPA and these payments were not enough to cover Plaintiff's expenses. The Plaintiff's owners were not left with a reasonable alternative but to accept the quick payment and sign the release. The Court's suggestion that the Plaintiffs could have filed suit rather than accept sign the release in order to get a quick pay claim was not a reasonable alternative for Plaintiff.

The GCCF, as the only source of desperately needed income for those affected by the oil spill wielded a lot of influence over the livelihood of Plaintiff's owners and neighbors. "Undue influence must amount to over-persuasion, duress, force, coercion, or artful or fraudulent contrivances to such a degree that there is a destruction of free agency and willpower." *Jordan v Noll,* 423 So.2d 368, 370 (Fla. 1st DCA 1983). When the Plaintiffs owners went to the GCCF representatives they were desperate for the help that was promised to affected businesses under the OPA due to the oil spill. When the Plaintiffs went to file their claims for additional interim payments under the OPA through the GCCF, they were advised that they would no longer be receiving those payments, only final payment, even though the full extent of the damage caused by the spill was yet undetermined. Plaintiff's owners went to the GCCF with their financial information to demonstrate their extensive losses associated with the oil spill, only to be told that there would only be a set amount of monies available as a Final payment and no other option.

III.     Fraud in the inducement

The court emphasizes its agreement with BP's position that the releases are enforced under Florida contract law. It is axiomatic that under Florida contract law, contracts that are procured by fraud in the inducement are subject to rescission on that basis. The Plaintiffs are not alleging the tort of fraud, but rather are stating that they were fraudulently induced into signing the releases and covenants not to sue due to false statements from the GCCF. The Court points to

the case of *Leader Glob. Sols* for the position that "any reliance by the Thiel Plaintiffs on BP's or the GCCF's alleged statements was, as a matter of law, not justifiable." Unlike the Counter-Plaintiff in *Leader Glob. Sols*, the release claimants are not suing for fraud, the tort, but rather to have the Court find that the release is unenforceable due to fraud in the inducing it. It is like putting a gun to someone's head to have them sign something that says they so do freely and voluntarily and then using it to prove they did so voluntarily. Such contracts are not enforceable for a reason.

The Order lays out the necessary elements of fraud in the inducement in Florida[2]. All of the elements are present in the Plaintiff's case. In Florida, "the elements of a fraud claim are (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induce another's reliance; and (4) consequent injury by the other party acting in reliance upon the representation." *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003) Defendants and their agents made statements of material facts to Plaintiff's owners that Defendant's agents knew were false, Plaintiff relied upon these statements and was damaged by that reliance.

Contrary to the Court's assertion, Florida doesn't require justifiable reliance for fraud, the Florida Supreme Court has found that the Plaintiff's only need to show that they relied on the statements in order to prove fraud. "Justifiable reliance is not a necessary element of fraudulent misrepresentation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)

IV.     BP's Failure to Follow the OPA

The Court suggests that the finding that the releases are valid because the claimants had an alternative to singing the Quick Payment claims, the ability to bring suit. Yet the Court soon thereafter states that the purpose and Congressional desire of the OPA was to encourage

---

[2] See Page 10 of Order and Reasons (Rec. Doc. 23560)

settlements and avoid litigation.[3] If the GCCF had followed that Congressional intent of OPA, litigation should not have been a necessity for claimants, like Plaintiff, who could demonstrate how they had been damaged by the oil spill. When Plaintiff presented its documented and projected losses to the GCCF, it was told that there was not going to be any compensation for these claims from BP.

The *Exxon Valdez* Oil Spill which occurred in the sparsely populated Prince William Sound took nearly 20 years to be resolved, while the *Deepwater Horizon* Oil Spill occurred in the Gulf of Mexico, which has highly urbanized coastal cities, heavy traffic, and is extensively fished. From the outset, it was clear that this disaster, which affected more individuals, property and businesses, would not be resolved quickly. The claimants who were struggling due to the adverse effects of the oil spill could not wait twenty years to get compensated for their damages from the spill. Plaintiffs were in near financial ruin at the time they executed the releases in 2011 and would not have survived without compensation after the GCCF stopped issued payments under the OPA.

In its Order (Rec. Doc. 23560) the Court paints with a wide brush the policies and procedures used by the GCCF during the claims process, describing the claims process and how payments were made to claimants.[4] In their Response and Reply, Plaintiffs stated that in the experiences of the Plaintiff, these policies and procedures did not happen as described. Johnny's Clams was repeatedly told that he does not need a lawyer, despite the Court's Order directing the GCCF to stop advising claimants that they did not need lawyers. When the owners went to the GCCF in order to get a determination of the Full Review Final Payment, they were told that the supporting documents they brought with them were useless since no one was getting paid for

---

[3] See Page 16 of Order and Reasons (Rec. Doc. 23560)
[4] See Pages 3-5 of Order and Reasons (Rec. Doc. 23560)

their future loses. This was false and known to be false by the GCCF agents when they made

these statements.

      **WHEREFORE**, Johnny's Clams requests that the Court reconsider the dismissal of

Johnny's Clams' claim and order that Johnny's Clams may proceed with its suit.

Dated: November 19, 2017

                  Respectfully Submitted

                  /s/ Douglas S. Lyons
                  DOUGLAS S. LYONS
                  Fla. Bar No.: 128277
                  Lyons & Farrar, P.A.
                  1637 Metropolitan Blvd., Ste. A-2
                  Tallahassee, Florida 32308
                  (850) 222-8811 - telephone
                  (850) 222-5583 - facsimile
                  dougl@lyonsandfarrar.com

                  P. Tim Howard
                  Howard & Associates, Attorneys at Law, P.A.
                  8511 Bull Headley Road, Suite 405
                  Tallahassee, Florida 32312
                  (850) 298-4455 - telephone
                  (850) 216-2537 - facsimile
                  Florida Bar No. 655325
                  tim@howardjustice.com

                  Samuel T. Adams
                  154 Roy Lane
                  Post Office Box 8420
                  Panama City, Florida 32409
                  (850) 785-3469 – telephone
                  (850) 640-1562 - facsimile
                  Florida Bar No. 160184
                  tom@samueltadams.com

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing  Memorandum In Support of Motion for

Reconsideration has been served on all counsel by electronically uploading the same to File &

ServeXpress in accordance with Pretrial Order No. 12, as amended, and  that the foregoing was

electronically filed with the Clerk of Court of the United States District Court for the Eastern

District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing

in accordance with the procedures established in MDL No. 2179; this 19th day of November, 2017.

/s/ Douglas S. Lyons
Douglas S. Lyons