**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION "J" |
| | DISTRICT JUDGE BARBIER |
| Case No.:  2:10-md-02179-CJB-JCW | MAG. JUDGE WILKINSON |

<u>MOTION TO CONSOLIDATE "B1 BELO" ACTIONS</u>

MAY IT PLEASE THE COURT:

Pursuant to Fed R. Civ. P. 42(a), come undersigned counsel, retained to advocate on behalf of thousands of Medical Benefits Settlement Class Members ("Claimants"), specifically including plaintiffs Fabio Concepcion LMPC0041002, Mickey Thibodaux LMPC0041003, Melvin Banegas LMPC0041001, and Gilberto Avila LMPC0041000 - who hereby move to consolidate certain backend litigation option actions ("B1 BELO" Actions[1]) for pretrial discovery and motion practice, and request a hearing before the Honorable Carl Barbier. Undersigned counsel conferred with Plaintiffs' Class Counsel about this motion and received consent to file this Motion to Consolidate "B1 BELO" Actions.  Undersigned counsel also conferred with counsel for BP who objects to the requested relief herein. For the reasons more fully set forth below and in the Memorandum in Support, consolidation is appropriate because the "B1 BELO" actions arise out of the same disaster and are subject to the same medical benefits settlement agreement, and thus present substantial common questions of law and fact.

---

[1] "B1 BELO Actions" – BELO actions brought by claimants with listed chronic conditions diagnosed after April 16, 2012, but before February 12, 2015, who were removed from the SPC process and thrown into the BELO process for recovery as explained below.)

1

Consolidation will promote the just and efficient resolution of the litigation as well as preserve the parties' and court's resources by avoiding costly duplicative discovery and proceedings.

## BACKGROUND

1. On April 20, 2010, the Deepwater Horizon exploded and sunk into the Gulf of Mexico. As a result, 77 actions and more than 200 tag-along actions were initially filed in multiple districts. Multiple motions were filed to centralize proceedings.

2. On August 10, 2010, the Judicial Panel on Multidistrict Litigation (JMPL) ruled that (i) centralization was warranted, (ii) personal injury actions arising out the incident would be included in the centralized proceedings, and (iii) that this Court was the most appropriate transferee district.[2] The JPML issued a transfer order consolidating and centralizing hundreds of cases filed into Multidistrict Litigation No. 2179 in the U.S. District Court for the Eastern District of Louisiana. The cases that were consolidated and centralized into the MDL included economic and property claims, state law claims, maritime and admiralty claims, medical class action claims, as well as personal injury and wrongful death actions.[3]

3. On April 16, 2012, the PSC filed a new class action complaint entitled *Plaisance, et al. v. BP Exploration & Production Inc.*, *et al.* for those who sustained injuries arising from the Deepwater Horizon BP Oil Spill.[4]

4. On April 18, 2012, the Medical Benefits Class Action Settlement Agreement ("MSA") was executed and subsequently filed with this Court on May 1, 2012, as amended.[5] The MSA

---

[2] *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 731 F. Supp. 2d 1352 (U.S. Jud. Pan. Mult. Lit. 2010)
[3] *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179 Transfer Order at 4 (E.D. La. Aug. 10, 2010).
[4] *Medical Class Action Complaint*, No. 12-CV- 968, Rec. Doc 1 (April 16, 2012).
[5] Deepwater Horizon *Medical Benefits Class Action Settlement Agreement, as Amended on May 1, 2012* ("*MSA*"), MDL No. 2179, Rec. Doc. 6427-1 (May 3, 2012).

included a Matrix,[6] which delineated the requirements to qualify for compensation for Specified Physical Conditions ("SPC"). Through the MSA, clean-up workers and zone residents ("Claimants") could receive compensation for up to 5 different categories of SPCs, ranging from $900 to $60,700 depending on their status, level of proof, and whether their condition was considered acute or chronic in nature.  The MSA also provides a provision for Later Manifested Physical Conditions ("LMPC") so conditions that manifested after April 16, 2012 could be pursued, but must be done through a Back-End Litigation Option ("BELO").[7]

5. On May 13, 2014, two years after the initial approval of the Settlement and three months after the Effective Date (February 12, 2014) had passed, the Claims Administrator filed a Policy Statement on the Classification of Chronic Physical Conditions First Diagnosed after April 16, 2012 with this Court.[8] The Claims Administrator, for the first time, determined that in accordance with the MSA, a Claimant could not be compensated for a SPC if that claimant was diagnosed after April 16, 2012 regardless of the date of manifestation.

6. On July 23, 2014, this Court affirmed the Claim's Administrator's Policy Statement, ruling that the plain language of the MSA clearly defined any condition diagnosed after April 16, 2012 as a LMPC.[9]

7. On November 26, 2014, on a Motion for Reconsideration, this Court reluctantly ruled that even though it was not what the Court envisioned, under the MSA, a Claimant could not be compensated for a SPC (chronic condition) if he or she was diagnosed after April 16, 2012,

---

[6] *Specified Physical Conditions Matrix*, MDL No. 2179, Rec. Doc 6427-10 (May 3, 2012).
[7] *MSA*, § VIII.
[8] *Memorandum,* MDL No. 2179, Rec. Doc. 12862 (May 13, 2014).
[9] Order Regarding Medical Benefits Settlement – Policy Statement on Classification of Chronic Physical Conditions First Diagnosed After April 16, 2012, MDL No. 2179, Rec. Doc.13179 (July 23, 2014).

even if the condition manifested prior to the confection of the MSA.[10]   Any claim for a chronic SPC diagnosed after April 16, 2012, would be deemed a LMPC, compensation for which must be pursued through a BELO action even if the condition manifested prior to April 16, 2012 ("B1 BELO actions").

8. During the September 24, 2014 hearing on that Motion for Reconsideration, this Court acknowledged that "it is rather strange…that the Court would approve…a class settlement that really doesn't settle thousands of claims and requires them to file another lawsuit"[11] Despite the Court's belief that the vast majority of exposure cases existing at the time of the confection of the MSA would be settled,[12] it astutely recognized in the hearing that it appeared the MSA language at issue would nonetheless "result in something …[neither] party intended", namely "thousands of claimants…that would seem like they would be covered, they would be entitled to some type of claim under the Matrix…, but are removed from the Matrix, and they are thrown into the Back-End Litigation."[13]

9. Claimants who filed SPC claims for a listed chronic condition that manifested before confection of the MSA, but which were not diagnosed before April 16, 2012 were subsequently denied and now must file a Notice of Intent to Sue and bring "B1 BELO" actions in order to pursue compensation for their chronic conditions.[14]

10. Any Medical Benefits Settlement Class Member seeking compensation from BP for a LMPC which manifested prior to the MSA, but which was later diagnosed between April 16, 2012

---

[10] Order Regarding Motion for Reconsideration of the Court's Order of July 23, 2014 Regarding Chronic Specified Physical Conditions, MDL No. 2179, Rec. Doc. 13733 (November 26, 2014).

[11] Hearing on Motion for Reconsideration, MDL No. 2179, Rec. Doc. 13450, p. 41:5-8 (September 24, 2014)

[12] Order Regarding Motion for Reconsideration of the Court's Order of July 23, 2014 Regarding Crhonic Specified Physical Conditions, MDL No. 2179, Rec. Doc. 13733 (November 26, 2014), p.4.

[13] Hearing on Motion for Reconsideration, MDL No. 2179, Rec. Doc. 13450, p. 41:13-42:15 (September 24, 2014)

[14] See e.g, claimants seeking consolidation Fabio Concepcion LMPC0041002, Mickey Thibodaux LMPC0041003, Melvin Banegas LMPC0041001, and Gilberto Avila LPC0041000.

and February 12, 2015 must submit a Notice of Intent to Sue ("NOIS") to the Claims

Administrator by February 12, 2018.[15]

11. BP defendants named in a NOIS are provided with that NOIS within 10 days of receipt by

the Claims Administrator.[16]   The BP defendants then have 30 days to notify the Claims

Administrator if they want to mediate the claim.[17] The Claims Administrator must then

notify the Claimant of the BP defendants' decision to mediate within ten (10) days of receipt

of notification of decision.[18]

12.  All BELO lawsuits must then be filed in this Court within six (6) months of either: (a) notice

by the claims administrator of election by BP defendants not to mediate that claim or (b)

written confirmation by the Claims Administrator that mediation did not resolve the claims.[19]

13. By November 4, 2018, in addition to the pending BELO suits, undersigned Counsel projects

thousands of "B1 BELO" suits to be filed for chronic conditions that would have qualified as

an SPC if not for being diagnosed after April 16, 2012, just as this Court predicted in the

hearing on the Motion for Reconsideration.

## **ARGUMENT**

    **A.  Consolidation is Allowed by the MSA and the Federal Rules of Civil
Procedure under which the Court is Encouraged to Consolidate Actions
Involving Common Questions of Fact or Law to Avoid Inefficiency.**

14. Federal Rule of Civil Procedure 42(a) provides that "if actions before the court involve a

common question of law or fact, the court may: join for hearing or trial any or all matters at

issue in the actions; consolidate the actions; or issue any other orders to avoid unnecessary

cost or delay."  Consolidation is not precluded if actions also have disparate questions of law

---

[15] *MSA*, § VIII.A
[16] *MSA*, § VIII.C.1
[17] *MSA*, § VIII.C.1
[18] *MSA*, § VIII.C.2
[19] *MSA*, § VIII.G.1.b & c.

or fact as the rule only requires the actions to have a sufficiently common question of law or fact. *See, e.g., Batazzi v. Petroleum Helicopters, Inc.*, 664 F.2d 49, 50 (5th Cir. La. 1981).

15. Rule 42(a) may be used to consolidate "B1 BELO" actions under the MSA which states that "nothing in th[e] MEDICAL SETTLEMENT AGREEMENT is intended to preclude consolidation or joinder of matters at issue or actions consistent with the Federal Rules of Civil Procedure."[20]

16. The purpose of Rule 42(a) "is to give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties." Wright & A. Miller, Federal Practice and Procedure, § 2381 (1971). The standard "is an expansive one, allowing consolidation of the broad range of cases brought in federal court." 8 Moore's Federal Practice § 42.10[1][a], at 42-9 (3d ed. 1998).

17. "A district court has broad discretion to decide whether consolidation is desirable." *Pearson v. U.S. Dep't of Homeland Security*, No. 3:08-1885, 2009 WL 1474837, at *2 (N.D. Tex. May 8, 2009); *see also In Re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) (describing Rule 42(a) as "broad grant of authority" that "has been applied liberally").

18. Although the power of the district court to consolidate actions with common questions of law or fact is discretionary, *St. Bernard General Hosp., Inc. v. Hospital Service Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. La. 1983), courts are encouraged to consolidate such actions where it will avoid inefficiency or confusion, *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. Fl. 1973). "[D]istrict [court] judges have been urged to make good use of Rule 42(a)… in order to expedite the trial and eliminate unnecessary repetition and confusion."

---

[20] *MSA*, § VIII.G.1.d

*Gentry* at 581 (quoting *Dupont*, 366 F.2d at 195)(internal quotations omitted); *accord Miller v. U.S. Postal Service,* 729 F.2d 1033, 1036 (5th Cir. Tex. 1984)("Rule 42(a) should be used to expedite trial and eliminate unnecessary repetition and confusion.").

### B.  The Court Should Consolidate the "B1 BELO" Actions which Share a Significant Community of Common Questions of Fact and Law.

19. All "B1 BELO" actions arise out of the same disaster and were transferred to this Court by the JPML for centralized proceedings because the actions overlap factually even though they will require some individualized discovery.[21]  All "B1 BELO" involve the same categories of chronic conditions caused by exposure to the same substances released by defendants.

20. Liability need not be proven under the MSA, but common issues of fact that will be litigated in "B1 BELO" actions include (i) "[t]he amount and location of oil, other hydrocarbons, and other substances released from the [Macondo 252] WELL and/or the Deepwater horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof"[22] and (ii) general causation.[23]  Common experts and fact witnesses will be heavily utilized in all "B1-BELO" litigation.

21. The "B1-BELO" actions also share common issues of law including motion practice related to pretrial discovery of common fact issues[24], the admissibility of evidence including expert testimony, and certain common defenses.  All "B1-BELO" actions are also subject to the restrictions of the MSA and "any disputes or controversies arising out of or related to the

---

[21] *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 731 F. Supp. 2d 1352 (U.S. Jud. Pan. Mult. Lit. 2010). Continued consolidation is especially appropriate in MDL's, where the JPML has already found sufficient similarities to warrant pretrial consideration.  Even though liability is not an issue for "B1 BELO" actions pursuant to the MSA, common fact issues remain that justify continued centralized pretrial proceedings.

[22] *MSA*, § VIII.G.3.a.ii

[23] *MSA*, § VIII.G.3.a.iv; "B1 BELO" actions will share the same limited universe of injuries listed in the MSA for chronic conditions and so general causation will be common.

[24] *MSA*, § VIII.G.6  "Pretrial discovery may be had only to non-privileged matters reasonably calculated to lead to the discovery of admissible evidence relevant to any issue that may be litigated at trial."

interpretation, implementation, administration, and enforcement of [the MSA] shall be made by motion to [this Court]."[25]

### C. Consolidation of the "B1-BELO" Actions Will Avoid Inefficiency, Reduce the Burden on Court Dockets, Eliminate Redundant Discovery, Prevent Inconsistent Adjudications, and Facilitate the Settlement of Claims.

22. The "B1 BELO" actions share the necessary community of common issues of fact and law to allow consolidation under the broad discretion granted this Court by Rule 42(a). Consolidating the "B1 BELO" actions will promote judicial efficiency and eliminate unnecessary repetition, cost, and delay.

23. Consolidation will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.  In contrast transferring thousands of "B1 BELO" cases from this MDL out across the district courts of the Gulf Coast for pretrial discovery would unnecessarily burden court dockets and prejudice plaintiffs.

24. Consolidation will avoid unnecessary trials by affording the parties a better understanding of the value proposition of these cases for settlement.  As other courts have noted in the consolidated trial setting, "[t]he more cases that are tried together in this MDL…, the sooner the parties will come to understand the true nature of these cases, their values, their weaknesses and strengths in their cases and the cost of trying them." *Eghnayem v. Boston Scientific Corp. (In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig., MDL 2326)* 2:13-cv-07965, Dkt. No. 10 (S.D. W. Va. Apr. 11, 2014) (PTO #91 attached as Exhibit "A").

---

[25] *MSA*, § XXVII.

25. Consolidation allows for the streamlined utilization of court appointed neutrals such as John Perry, Magistrate Wilkinson, and Magistrate Shushan who this Court and Representative Counsel have recognized as instrumental in achieving the MSA.[26]

26. Parties are not prejudiced by consolidation for pretrial proceedings and any minor prejudice that may arise from consolidation for trial purposes through a bellwether process down the line can be minimized through jury instructions.   Separate discovery and pretrial proceedings for this quantity of complex actions sharing such expansive common fact and law issues would prejudice the plaintiffs by making any individual action a negative value proposition. Claimants elected to participate in the MSA in the first place to avoid costly and protracted litigation for claims that generally do not involve extraordinary compensatory damages.[27]

27. Requiring plaintiffs' counsel to participate in pretrial discovery and proceedings in multiple courts across the Gulf South, hire experts, and litigate every aspect of all actions individually would result in "litigation fatigue" to the defendants' sole benefit.   Conversely, allowing consolidation would allow all counsel to participate more efficiently.

28. This Court, representative counsel, and court appointed neutrals have successfully invested untold time, effort, and resources establishing and navigating the complex factual and procedural history of these claims in pursuit of settlement.   This Court is thus in an ideal position to retain these cases and evaluate the similarities of these cases and the efficiencies to be gained from continued consolidated pretrial proceedings as well as whether consolidation for trial through a bellwether process may be warranted at a later stage.   There is no other court which could oversee the swift resolution of these cases.

---

[26] Fairness hearing 268:4-14
[27] Under the MSA, a claimant with a SPC is eligible for at most $60,700 in compensation for a chronic condition. See MSA Exhibit 8, SPC Matrix.

## CONCLUSION

29. Given the plain language and purposes of Rule 42, this Court should grant Plaintiffs' Motion for Consolidation. By allowing the proofs on common questions of fact in one action to stand as the proofs in others, and by allowing one decision on common questions of law to be decisive in all actions, duplication of effort is avoided, the time of courts, counsel, parties and witnesses is conserved, and costs are substantially reduced.

## RELIEF REQUESTED

1.     Consolidation of all "B1 BELO" actions for discovery purposes and pretrial proceedings.

2.     The appointment of Michael Stag and Tim Falcon as representative counsel for the "B1 BELO" actions.

3.     Reserve consideration of whether to consolidate all "B1 BELO" actions for trial through a bellwether process until after the conclusion of discovery.

4.     Any other relief in equity or at law this Court deems just and proper.

WHEREFORE Plaintiffs respectfully request that this Court grant the relief requested in this Motion.

Filed this 19th day of December, 2017

Respectfully Submitted,

SMITH STAG, LLC

*/s/ Michael G. Stag*
Michael Stag, Bar No. 23314
Ashley M. Liuzza, Bar No. 34645
**SMITH STAG, LLC**
365 Canal St. Suite 2850
New Orleans, LA  70130
Telephone: (504) 593-9600
Facsimile: (504) 593-9601
mstag@smithstag.com
aliuzza@smithstag.com

Timothy J. Falcon, Bar No. 16909
Jeremiah A. Sprague, Bar No. 24885
Jarrett S. Falcon, Bar No. 34539
**FALCON LAW FIRM**
5044 Lapalco Boulevard
Marrero, LA 70072
Telephone: (504) 341-1234
Facsimile: (504) 341-8115
tim@falconlaw.com
jerry@falconlaw.com
jarrett@falconlaw.com

Craig T. Downs, FL Bar No. 801089
Vanessa E. Diaz, FL Bar No. 120087
Jose E. Aguirre, FL Bar No. 92675
**THE DOWNS LAW GROUP, P.A.**
3250 Mary Street. Suite 307
Coconut Grove, FL 33133
Telephone: (305) 444-8226
Facsimile: (305) 444-6773
Email: cdowns@downslawgroup.com
vdiaz@downslawgroup.com
jaguirre@downslawgroup.com

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATION OF CONFERRAL WITH PLAINTIFFS' CLASS COUNSEL AND COUNSEL FOR DEFENDANT BP

Prior to filing the instant Motion, undersigned counsel conferred with Plaintiffs' Class Counsel about this motion and received consent to file this Motion to Consolidate "B1 BELO" Actions. Prior to filing the instant Motion, Undersigned counsel also conferred with counsel for BP who objects to the requested relief herein.

*/s/ Michael G. Stag*
Michael G. Stag

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of the electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of December, 2017.

*/s/ Michael G. Stag*
Michael G. Stag
