IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 <br><br> SECTION "J" <br><br> DISTRICT JUDGE BARBIER <br><br> MAG. JUDGE WILKINSON |
| Case No.: 2:10-md-02179-CJB-JCW | |

## MEMORANDUM IN SUPPORT OF MOTION
## TO CONSOLIDATE "B1 BELO" ACTIONS

### INTRODUCTION

Pursuant to Fed R. Civ. P. 42(a), through undersigned counsel, come thousands of Medical Benefits Settlement Class Members ("Claimants") including plaintiffs Fabio Concepcion LMPC0041002, Mickey Thibodaux LMPC0041003, Melvin Banegas LMPC0041001, and Gilberto Avila LPC0041000- who hereby submit this Memorandum in Support of their Motion to Consolidate certain backend litigation option actions for pretrial discovery and motion practice, and request a hearing before the Honorable Carl Barbier.

### BACKGROUND

Plaintiffs hereby incorporate the background information set forth in Plaintiffs' Motion to Consolidate "B1 BELO" Actions.

**ARGUMENT**

**A. Consolidation is Allowed by the MSA and the Federal Rules of Civil Procedure under which the Court is Encouraged to Consolidate Actions Involving Common Questions of Fact or Law to Avoid Inefficiency**

Federal Rule of Civil Procedure 42(a) provides that, "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." "Consolidating actions is proper when two or more district court cases involve common questions of law and fact and the district judge finds that consolidation would avoid unnecessary costs or delay."[8] *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761-61 (5th Cir. 1989); Fed. R. Civ. Pro. 42(a). "A trial court has broad discretion in determining whether to consolidate a case pending before it." *Id.* at 762 (internal citations omitted). *see also In Re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) (describing Rule 42(a) as "broad grant of authority" that "has been applied liberally"). "[T]he purpose of consolidation is to avoid unnecessary cost and delay." *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1531 (5th Cir. 1993); *see also Mayfield v. Am. Auto. Ins. Co.*, Nos. 502CV256, 502CV137, 2003 WL 21250935, at *1-2 (N.D. Tex. May 27, 2003) ("promot[ing] judicial efficiency and economy"). It is also common for courts to consolidate cases for purposes of discovery only. […] For good case management reasons, courts frequently hold over the decision on whether to consolidate cases for trial until the close of discovery. *See, e.g.*, *Davis v. Heritage Crystal Clean, LLC,* No. 10-CV-59, 2011 WL 1483167, at *2 (E.D. Tenn. Apr. 19, 2011). This approach allows the parties and the court to determine the degree to which the evidence will overlap before deciding about whether to consolidate the cases for trial or other purposes.

Although the power of the district court to consolidate actions with common questions of law or fact is discretionary, *St. Bernard General Hosp., Inc. v. Hospital Service Ass'n of New*

2

*Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. La. 1983), courts are encouraged to consolidate such actions where it will avoid inefficiency or confusion, *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. Fl. 1973). The Court of Appeals has urged "district judges . . . to make good use of Rule 42(a) . . .in order to expedite the trial and eliminate unnecessary repetition and confusion." *In re Air Crash Disaster*, 549 F. 2d at 1013; *Gentry* at 581 (quoting *Dupont*, 366 F.2d at 195)(internal quotations omitted); *accord Miller v. U.S. Postal Service,* 729 F.2d 1033, 1036 (5th Cir. Tex. 1984)("Rule 42(a) should be used to expedite trial and eliminate unnecessary repetition and confusion.").

>A court may consider several factors in deciding whether consolidation is appropriate:
>
>(1) [W]hether the actions are pending before the same court,
>
>(2) whether common parties are involved in the cases,
>
>(3) whether there are common questions of law and/or fact,
>
>(4) whether there is risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, and
>
>(5) whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately.

*Harris v. Bexar County*, 2009 WL 4059092 *1 (W.D. Tex. Nov. 23, 2009) (quoting *Zolezzi v. Celadon Trucking Servs. Inc.*, 2009 WL 736057 *1 (S.D. Tex. Mar. 16, 2009)); *Newby v. Enron Corp.* (*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*), 2007 U.S. Dist. LEXIS 8812, at *1 (S.D. Tex., Mar. 12, 2007). Essentially, the decision whether or not to grant a motion to consolidate in a particular case is predicated on a process of balancing the interests of convenience against the possibilities of prejudice.

In the present case these factors strongly favor continued consolidation of the "B1 BELO actions" for discovery purposes and pretrial proceedings. First, the actions are currently or will

be pending before this court having been transferred here by the JPML upon finding that centralization was warranted, personal injury actions arising out the incident would be included in the centralized proceedings, and that this Court was the most appropriate transferee district.[1] Second, common defendants are involved in all of the actions.  Third, there is a substantial community of common questions of law and fact that predominate. Fourth, there is no risk of prejudice with consolidation and the risk of inconsistent adjudications is significant if the cases are not consolidated.  Finally, consolidation will promote judicial efficiency and eliminate unnecessary repetition, cost, and delay.

1. **<u>Consolidation of the "B1 BELO" Actions under Rule 42(a) is Warranted by the Significant Common Questions of Fact and Law at Issue.</u>**

There is a substantial community of common questions of law and fact at issue in all of the "B1 BELO" actions.  Consolidation is a common technique for managing mass tort actions as evidenced by the inclusion of the personal injury claims in this MDL. The JPML in initially centralizing the proceedings found that not only do the personal injury actions overlap with each other, but that they "overlap factually with the [economic] actions in this docket."[2] The JPML noted that while there are disparate issues in the personal injury actions "that will require some amount of individualized discovery", that consolidation nonetheless made sense based on the legal and factual overlap.[3]

---

[1] *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 731 F. Supp. 2d 1352 (U.S. Jud. Pan. Mult. Lit. 2010).
[2] *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 731 F. Supp. 2d 1352, 1354 (U.S. Jud. Pan. Mult. Lit. 2010).
[3] *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 731 F. Supp. 2d 1352, 1354-55 (U.S. Jud. Pan. Mult. Lit. 2010).

a. FACTUAL OVERLAP

Consolidation of the "B1 BELO" actions in this Court continues to make sense. The "B1 BELO" actions arise out of the same disaster. All "B1 BELO" actions result from exposure to the same substances released by or under the direction of common defendants. All "B1 BELO" claimants are required to prove "[t]he amount and location of oil, other hydrocarbons, and other substances released from the [Macondo 252] WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof"[4]. Common fact and expert witnesses relying on common data and documents will be heavily utilized in developing the facts regarding the amount and timing of releases for the "B1 BELO" actions.

The most efficient process for developing the scope of defendants' releases in terms of amount, geography, and time would be to construct a centralized database detailing, estimating, and mapping all of the releases as was done to some extent in other parts of this litigation. Individual claimants could then be placed into the database to show their respective "level and duration of…exposure to oil, other hydrocarbons, and other substances released…and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof" as required by the MSA.[5] The overlap in defendants' releases and plaintiffs' exposure is a significant enough issue of common fact alone to warrant continued consolidation for discovery purposes.

In addition to the common facts with respect to the releases and exposures, claimants suffer from the same group of overlapping injuries due to these exposures: these chronic

---

[4] *MSA*, § VIII.G.3.a.ii.
[5] *MSA*, § VIII.G.3.a.iii.

conditions appear on the Specified Physical Conditions Matrix[6] ("Matrix") and include chronic conjunctivitis, chronic rhinosinusitis, reactive airways dysfunction syndrome, chronic contact dermatitis, and chronic eczematous reaction. Many of the "B1 BELO" claimants suffer from multiple overlapping chronic conditions and will have to prove general causation for those conditions.[7] For example, Plaintiff Avila suffers from chronic conjunctivitis the same as Concepion and Banegas who also suffer from chronic sinusitis. Plaintiff Avila also suffers from chronic dermatitis the same as Thibodaux. Due to the overlapping nature of the Matrix chronic conditions, it makes sense to consolidate the "B1 BELO" actions for discovery and pretrial purposes in order to develop exposure related facts and general causation. Dividing the "B1 BELO" actions into subgroups may become necessary at some future point should trial consolidation be appropriate.

      b. LEGAL OVERLAP

In addition to the substantial factual overlap detailed above, all "B1 BELO" actions are subject to the terms of the Medical Settlement Agreement ("MSA") and the prior rulings of this Court. Liability need not be proven under the MSA, but as detailed above a substantial community of common facts will be litigated in the "B1 BELO" actions including (i) "[t]he amount and location of oil, other hydrocarbons, and other substances released from the [Macondo 252] WELL and/or the Deepwater horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof"[8] and (ii) general causation.[9] The development of these facts will require common issues

---

[6] *Specified Physical Conditions Matrix*, MDL No. 2179, Rec. Doc 6427-10.
[7] *MSA*, § VIII.G.3.a.iv.
[8] *MSA*, § VIII.G.3.a.ii.
[9] *MSA*, § VIII.G.3.a.iv; "B1 BELO" actions will share the same limited universe of injuries listed in the MSA for chronic conditions and so general causation will be common.

of law to be decided including motion practice related to pretrial discovery,[10] the admissibility of evidence including expert testimony, and certain common defenses.

Furthermore "any disputes or controversies arising out of or related to the interpretation, implementation, administration, and enforcement of [the MSA] shall be made by motion to [this Court]."[11]  For example, BP may argue that consolidation is not appropriate here because the MSA states that "A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may not bring a BACK-END LITIGATION OPTION LAWSUIT pursuant to Rule 23 of the Federal Rules of Civil Procedure or any other class, mass, or aggregate procedures."[12]  However, "nothing in [the MSA] is intended to preclude consolidation or joinder of matters at issue or actions consistent with the Federal Rules of Civil Procedure."[13]

### 2. There is No Risk of Prejudice with Consolidation, While the Risk of Inconsistent Adjudication is Significant if Not Consolidated.

Consolidating the common questions of fact and law offers the significant benefits of eliminating the risk of inconsistent decisions.  As detailed above, if these actions are not consolidated there is a high degree of risk of inconsistent adjudications with respect to common legal and factual issues including evidentiary rulings. Requiring plaintiffs' counsel to participate in pretrial discovery and proceedings in multiple courts across the Gulf South, hire experts, and litigate every aspect of all actions individually would result in "litigation fatigue" to the defendants' sole benefit.  Separate discovery and pretrial proceedings for this quantity of complex actions sharing such expansive common fact and law issues would prejudice the plaintiffs by making any individual action a negative value proposition and subjecting them to

---

[10] *MSA*, § VIII.G.6  "Pretrial discovery may be had only to non-privileged matters reasonably calculated to lead to the discovery of admissible evidence relevant to any issue that may be litigated at trial."
[11] *MSA,* § XXVII.
[12] *MSA*, § VIII.G.1.d
[13] *Id*.

7

inconsistent adjudications.  Claimants elected to participate in the MSA in the first place to avoid costly and protracted litigation for claims that generally do not involve extraordinary compensatory damages.[14]

While there is much to be gained by consolidating the "B1 BELO" actions, comparatively little counsels against it.  Defendants are no more prejudiced by consolidation of the "B1 BELO" actions now as when they were originally filed and transferred to this Court.  All "B1 BELO" actions must already be filed with this Court[15] within the terms of the MSA.[16]  Taking into account that this Court will be determining pretrial issues related to whether BELO suits were properly filed under the MSA, continued consolidation of the "B1 BELO" actions under Rule 42 for pretrial purposes is even more sensible.  The limited legal and factual distinction with regards to specific causation and damages does not undercut the strong community of common issues of fact and law favoring consolidation of the "B1 BELO" actions.  The JPML previously noted that this Court "has broad discretion to employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks—to address any differences among the cases and efficiently manage the various aspects of this litigation.[17]

### 3. Consolidation for Discovery Purposes Will Promote Judicial Efficiency

Consolidation will prevent thousands of "B1 BELO" suits clogging up judicial dockets across the Gulf South.  Consolidation will promote the just and efficient resolution of the litigation as well as preserve the parties' and court's resources in avoiding costly duplicative discovery and proceedings.  Absent consolidation, "B1 BELO" claimants will have to

---

[14] Under the MSA, a claimant with a SPC is eligible for at most $60,700 in compensation for a chronic condition. See MSA Exhibit 8, SPC Matrix.
[15] *MSA*, § VIII.G.1.c.
[16] *MSA*, § VIII.G.1.d.
[17] *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 731 F. Supp. 2d 1352 (U.S. Jud. Pan. Mult. Lit. 2010) citing *In re Lehman Brothers Holdings, Inc., Securities & Employee Retirement Income Security Act (ERISA) Litigation*, 598 F.Supp.2d 1362, 1364 (J.P.M.L.2009).

individually develop and defendants will have to defend the common fact issues detailed above at great cost. Continued consolidation will eliminate the need for considerable duplicative discovery. The Deepwater Horizon Litigation would never have progressed as quickly and efficiently if not for consolidation of the actions by the JPML. Continued consolidation is the most likely path to resolve the upcoming flood of "B1 BELO" actions in an efficient manner and avoid the protracted and costly litigation that both claimants and defendants sought to avoid in entering the MSA.

      a.   REDUNDANT DISCOVERY IS AVOIDED

Consolidation will avoid inefficiency in the discovery and pretrial process for thousands of cases. Redundant discovery requests, document production, protective orders, fact and expert witness depositions, expert reports, *Daubert* motions, motions *in limine*, and other pretrial motions will be eliminated. Consolidation of the "B1 BELO" actions eliminates the risk of litigation fatigue on cases where compensatory damages are not extraordinary for claimants who entered into a settlement to avoid a lengthy and expensive litigation process. All parties will benefit from a coordinated discovery schedule and case management order.

      b.   REPRESENTATIVE COUNSEL

Plaintiffs seek the appointment of the undersigned Michael Stag and Tim Falcon as representative counsel. Mr. Stag and Mr. Falcon have effectively worked with defense counsel and court appointed neutrals in the resolution of cases outside of the MSA. They were retained to advocate on behalf a group of thousands of "B1 BELO" claimants and have the support of the PSC. Representative Counsel will be able to address all issues before one court instead of multiple attorneys in multiple courts. Appointing representative counsel for the "B1 BELO" groups will enable a quicker discovery and pretrial process. All parties will benefit from

representative counsel operating under a coordinated briefing schedule with resolution of overlapping issues by single court decision. Representative counsel will also allow for more meaningful and effective settlement discussions.

### c. AVOIDING UNNECESSARY TRIALS

Consolidation will help avoid unnecessary trials by affording the parties a better understanding of the value proposition of these cases for settlement. As other courts have noted in the consolidated trial setting, "[t]he more cases that are tried together in this MDL…, the sooner the parties will come to understand the true nature of these cases, their values, their weaknesses and strengths in their cases and the cost of trying them." *Eghnayem v. Boston Scientific Corp. (In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig., MDL 2326*) 2:13-cv-07965, Dkt. No. 10 (S.D. W. Va. Apr. 11, 2014) ( PTO #91 attached as Exhibit "A"). Consolidation provides more results and data points without burdening the Court or the parties with the substantial costs of pursuing and developing multiple separate trials.

### d. THE COURT'S FAMILIARITY WITH THIS LITIGATION IS INVALUABLE

This Court, representative counsel, and the court appointed neutrals have successfully invested untold time, effort, and resources establishing and navigating the complex factual and procedural history of these claims in pursuit of settlement. This Court is in an ideal position to retain these cases, evaluate the similarities and the efficiencies to be gained from continued consolidated pretrial proceedings, and to decide whether consolidation for trial through a bellwether process may be warranted at a later stage.

There is no other court which could oversee the swift resolution of these cases as successfully. Continued consolidation likewise allows for further utilization of the court appointed neutrals who have been so instrumental in managing the litigation and herding it

towards a conclusion. With that in mind, Plaintiffs suggest this Court should task Magistrate Wilkinson or appoint Magistrate Shushan as Special Master to oversee and mediate settlement negotiations during the discovery process in light of the effectiveness of the neutrals with respect to the MSA.

This Court's vast knowledge of the factual and procedural aspects of this case best position it to move the litigation and determine after discovery whether the factual overlap amongst the "B1 BELO" actions is sufficient to warrant consolidation for trial purposes with management via a bellwether process.

### B.  This Court Predicted the "B1 BELO" Problem and Can Now Address It.

This Court predicted the upcoming flood of "B1 BELO" actions and can now address that problem before it grows into an *Exxon Valdez*-like litigation disaster.  Everyone is in agreement that we "want no Exxon Valdez litigation here."[18] This Court hoped to avoid a situation where "thousands of claimants have died before collecting any money."[19]  That concern was evident at the hearing on the Motion for Reconsideration, when the Court acknowledged that "it is rather strange…that the Court would approve…a class settlement that really doesn't settle thousands of claims and requires them to file another lawsuit"[20]  Despite the Court's belief that the vast majority of exposure cases existing at the time of the confection of the MSA would be settled[21], it astutely recognized at the Reconsideration hearing that the MSA language at issue would nonetheless "result in something …[neither] party intended", namely "thousands of claimants…that would seem like they would be covered, they would be entitled to some type of

---

[18] *Transcript of Final Fairness Hearing*, MDL No. 2179, Rec. Doc. 7892 at 51:10-12 (November 8, 2012).
[19] *Transcript of Final Fairness Hearing*, MDL No. 2179, Rec. Doc. 7892 at 269:23-24 (November 8, 2012).
[20] Hearing on Motion for Reconsideration, MDL No. 2179, Rec. Doc. 13450, p. 41:5-8 (September 24, 2014).
[21] Order Regarding Motion for Reconsideration of the Court's Order of July 23, 2014 Regarding Chronic Specified Physical Conditions, MDL No. 2179, Rec. Doc. 13733 (November 26, 2014), p.4.

claim under the Matrix…, but are removed from the Matrix, and they are thrown into the Back-End Litigation."[22]

BP's Counsel found it important to address the Court's concerns assuring that "there should not be thousands of class members who have filed SPC claims, but must now file through the BELO process because of the Court's Order [on Later Manifested Physical Condition]."[23] BP's counsel argued that thousands of legitimate claims being forced into the BELO process "[i]t's just not plausible." BP's counsel was adamant that any "legitimate claim" would have a doctor diagnose the chronic conditions prior to April 16, 2012 and would possess all of the necessary documentation to make a claim for a chronic condition SPC under the MSA.[24]

Despite these arguments from BP's counsel, this Court's concerns are being validated as Claimants with chronic conditions have not been compensated and now seven years after the disaster must institute thousands of BELO actions in hopes of recovery after lengthy individual litigation. Defense counsel statements have been shown wanting. *The Deepwater Horizon Oil Spill Coast Guard Cohort Study*[25] completed in 2017 determined that 8,696 first responder personnel and 44,823 non-responders from the Coast Guard were exposed between April 20, 2010 and December 17, 2010.[26] The medical data used in the study dated back to October 2007 and continued over a two-year period to show positive associations from exposure and other conditions.[27] The results of the study confirm most, if not all, prior conclusions in finding positive associations among individuals exposed to the oil spill, including associations between

---

[22] Hearing on Motion for Reconsideration, MDL No. 2179, Rec. Doc. 13450, p. 41:13-42:15 (September 24, 2014).
[23] Hearing on Motion for Reconsideration, MDL No. 2179, Rec. Doc. 13450, p. 42:24-43:1 (September 24, 2014).
[24] 44:13-18.
[25] Rusiecki, J., Alexander, M., & Schwartz, E. G. (2017). The Deepwater Horizon Oil Spill Coast Guard Cohort Study. Occupational and Environmental Medicine. doi:10.1136/oemed-2017-104343; *See* Exhibit B.
[26] *Id*.
[27] The medical data used for this study dated back to October of 2007, from care sought within the Military Health system. *Id*. at 2.

exposure for coughing, shortness of breath, wheezing, headaches, lightheadedness/dizziness, skin rash/itching, diarrhea, stomach pain, and nausea/vomiting.[28]

Another recent study[29] from the Epidemiology Branch, National Institute of Environmental Health Sciences (NIEHS), National Institutes of Health (NIH), Department of Health and Human Services (DHHS) and others examined between 27,659 and 29,468 exposed participants concluding that there was an association between exposure to dispersants, specifically Corexit EC9527A and Corexit EC9500A and adverse health effects at the time of exposure as well as persisting symptoms one to three years after exposure. These adverse health effects included respiratory, ocular and dermal conditions similar to those found in the Matrix.

Despite numerous independent studies showing chronic conditions result from exposure, as of May 8, 2017, the Claims Administrator had approved and compensated only thirty-four (34) B1 claims for chronic conditions totaling $2,095,000 in payments and equaling only 0.16% of the compensated claims.[30] The positive associations in the independent studies combined with the statistics from the Claims Administrator paint a much different picture than the one presented by BP's counsel at the hearing on the Motion for Reconsideration. This data shows that the Court correctly predicted that thousands of legitimate claimants who thought they would be compensated for an SPC would be thrown into the back-end litigation.

As the Court noted in its Order, "despite the Court's belief that the vast majority of exposure cases existing at the time of confection of the MSA would be settled, that may not be

---

[28] *Id.* at 9.
[29] Craig J. Mcgowan et al., *Respiratory, Dermal, and Eye Irritation Symptoms Associated with Corexit™ EC9527A/EC9500A following the Deepwater Horizon Oil Spill: Findings from the GULF STUDY*, 125 Environmental Health Perspectives (2017); *See* Exhibit C.
[30] Status Report from the Deepwater Horizon Medical Benefits Settlement Claims Administrator, MDL No. 2179, Rec. Doc. 22784, Table 7, p. 18 & Table 3, p. 10.

true according to the plain wording of Section II.VV. of the MSA."[31] Plaintiffs' Counsel anticipates that thousands of BELOs will be filed by claimants with legitimate chronic conditions. These "B1 BELO" claimants entered and the Court approved the Medical Settlement Agreement envisioning a quick, efficient, and easy claims process that would compensate the vast majority of exposure claimants then existing for both their acute and chronic conditions avoiding protracted litigation and delayed recovery. Considering the common questions of law and fact as well as taking into account the concerns of the Court at the fairness and reconsideration hearings, continued consolidation provides the best path to efficiently resolve the "B1 BELO" actions and avoid the *Exxon Valdez* pitfalls.

## CONCLUSION

Consolidation is widely used to assist trial courts in effectively managing their dockets, especially in the MDL and mass tort context. The courts of appeals encourage consolidation to avoid inefficiency in overlapping actions which contain common questions of law and fact. As Wright & Miller explain: "[I]t is for the district court to weigh the saving of time and effort that consolidation under Rule 42(a) would produce against any inconvenience, delay, or expense that it would cause for the litigants and the trial judge." 9A Wright & Miller, *supra* § 2383.

With respect to the "B1 BELO" actions, every relevant consideration—judicial efficiency, avoiding inconsistent adjudications, convenience, expense, and delay—strongly favors consolidation. Consolidation has been necessary in managing this litigation thus far and continued consolidation of the "B1 BELO" actions will be an effective tool going forward. While some separate evidence will need to be developed, the common questions of fact and law predominate far outweighing any differences. By allowing the proofs on common questions of

---

[31] Order Regarding Motion for Reconsideration of the Court's Order of July 23, 2014 Regarding Chronic Specified Physical Conditions, MDL No. 2179, Rec. Doc. 13733 (November 26, 2014).

fact in one action to stand as the proofs in others, and by allowing one decision on common questions of law to be decisive in all actions, duplication of effort is avoided, the time of courts, counsel, parties and witnesses is conserved, and costs are substantially reduced. Given the plain language and purposes of Rule 42, this Court should grant Plaintiffs' Motion for Consolidation.

Filed this 19th day of December, 2017

Respectfully Submitted,

**SMITH STAG, LLC**

*/s/ Michael G. Stag*
Michael Stag, Bar No. 23314
Ashley M. Liuzza, Bar No. 34645
SMITH STAG, LLC
365 Canal St. Suite 2850
New Orleans, LA 70130
Telephone: (504) 593-9600
Facsimile: (504) 593-9601
mstag@smithstag.com
aliuzza@smithstag.com


Timothy J. Falcon, Bar No. 16909
Jeremiah A. Sprague, Bar No. 24885
Jarrett S. Falcon, Bar No. 34539
FALCON LAW FIRM
5044 Lapalco Boulevard
Marrero, LA 70072
Telephone: (504) 341-1234
Facsimile: (504) 341-8115
tim@falconlaw.com
jerry@falconlaw.com
jarrett@falconlaw.com

Craig T. Downs, FL Bar No. 801089
Vanessa E. Diaz, FL Bar No. 120087
Jose E. Aguirre, FL Bar No. 92675
THE DOWNS LAW GROUP, P.A.
3250 Mary Street. Suite 307
Coconut Grove, FL 33133
Telephone: (305) 444-8226
Facsimile: (305) 444-6773

15

Email: cdowns@downslawgroup.com
vdiaz@downslawgroup.com
jaguirre@downslawgroup.com

*ATTORNEYS FOR PLAINTIFFS*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of the electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of December, 2017.

*/s/ Michael G. Stag*
Michael G. Stag