MINUTE ENTRY
WILKINSON, M. J.
JANUARY 4, 2018


IN RE: OIL SPILL BY THE OIL RIG     MDL NO. 2179
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO ON APRIL 20, 2010     SECTION "J"

THIS DOCUMENT RELATES TO:     JUDGE BARBIER
     MAG. JUDGE WILKINSON

Civil Action Nos. 12-970, 15-4143,
15-4146 and 15-4654


## CLAIMS APPEAL DETERMINATION AND REASONS
### [Halliburton and Transocean Settlement]

This Appeal Determination addresses the denial of 80 claims for payment from

the Halliburton/Transocean Settlement fund.   Specifically, the appeals address the

claims of the following claimants:

Emanual McDonald, No. 605*******; L.V. Evans, No. 744*******; Lillian
Alexander, No. B24*******; Keith C. Kelley, No. 52C*******; Kim Slaughter, No.
2DD*******; Marie James, No. 2B7*******; Jhoquan Hibbler, No. 4C5*******;
Demarco Jones, No. F58*******; Timothy Alexander, No. 79f*******; Teresa Travis,
No. F7F*******; Kendall C. Annan, No. 810*******; Brian Phillip Annan, No.
BC1*******; Duc Nguyen, No. 197*******; Calvin Dumas, No. B1B*******; Donna
Kennedy, No. 24A*******; Kerry Kiehl, No. 2CC*******; Norwood D. Cain, Sr., No.
D8F*******; Deloyd E. Williamson, No. 0C3*******; Donald Zirlott, No.
BEC*******; James Johns, No. 648*******; Cleve Boatwright, No. 4D4*******;
Randolph S. Darna, Jr., No. 579*******; David E. Simms, Sr., No. F4C*******; Doran
Hoffman, No. 868*******; Edward J. Barnhill, No. 937*******; Richard S. Harbison,
No. 44A*******; James O. Stewart, No. 4B7*******; Thomas Smith, No.
06D*******; Bobby Shane Esfeller, No. 95C*******; Michael Krause, No.
E58*******; Marion L. Strange, No. E8B*******; Jerry Walker, No. 874*******;

<div style="border:1px solid black; display:inline-block; padding:4px;"><strong>MJSTAR:  7:45</strong></div>

Martin Young, No. DF8*******; Dennis Zirlott, No. 6EF*******; William C. Stewart, No. C0F*******; Derek Wainwright, No. 225*******; Clarence Waters III, No. A78*******; Scott Black, No. 9FF*******; Roy L. Kibbe, No. FD2*******; Julius Barbour, No. 62A*******; Edward Barnhill, No. D79*******; Jerel Conley, No. EB2*******; Donald Stork, No. B2D*******; Helton Nelson, No. 143*******; Simon Zirlott, No. 954*******; Frank Conley, No. 224*******; Charles Cowart, No. 2B0*******; Arthur Coleman, No. B40*******; Jason Parker, No. C9D*******; William Ladnier, Sr., No. 9C9*******; Travis Wilkerson, No. 811*******; Richard Lolly, No. 640*******; Troy Cornelius, Sr., No. 583*******; Rory Johnson, No. 9D6*******; William A. Ladnier, Jr., No. 76A*******; David Krause, No. 124*******; Karen Barnhill, No. D26*******; Cecil Wainwright, Jr., No. 78B*******; Richard Turner, No. A89*******; Anthony Moralis, No. F43*******; Richard Harbison, No. 751*******; Destin P. O'Brien, No. 7C2*******; Franklin McCall, No. AEA*******; James M. Dooley, No. 8E6*******; Ernest Fisher Price, No. 780*******; Randolph S. Darna, III, No. AAE*******; Tommy Obrien, No. 598*******; Benjamin Hamilton, No. D84*******; Michael Shane Dooley, No. AB0*******; Daryl R. Johnson, No. E7A*******; Lloyd Nielson, No. BD1*******; Charles Wallace, Jr., No. 0FA*******; Ernest Harris, No. 00A*******; Justin Sawyer, No. 413*******; James Parker, III/James W. Parker, No. A38*******; Allan B. Dopirak, No. D50*******; Ricky Gomes, No. 735*******; Robert Chad Paul, No. 4D9*******; Charles Porter, No. F49*******; and Jesse Stringo, Jr., No. BB5*******.

As to each claim, the Claims Administrator has provided me with the Appeal Determination Notice, Court Review Request, Claim Form and Settlement Program Appeal Determination letter.  In addition, two documents have been submitted that amount to the briefs of counsel for 60 individual menhaden fishermen whose claims were neither recognized nor released in the BP settlements, Record Doc. No. 6430-1 at ¶ 3.4, and were denied in this batch of claims determinations.  These documents are styled "Grounds for Objection to the Decision of the Claims Administrator" and "Reasons for Permitting Appeal to the District Court."

Having reviewed these materials, the determination of the Claims Administrator is AFFIRMED, essentially for the reasons provided by the Claims Administrator.

The New Class portion of the Halliburton/Transocean settlements is a maritime law punitive damages settlement. The Distribution Model and court order approving it, Record Doc. Nos. 18797, 22252, require that a claimant establish a compensatory damages component of his or her claim as a prerequisite to payment. Consistently with the court-approved Distribution Model, the Claims Administrator denied payment of the above-referenced claims principally because the claimants failed to establish a compensatory damages component in that they have no settlement through neutrals of such a claim, no compensatory damages claim paid through the separate Deepwater Horizon Economic & Property Damages Settlement program ("DHEPDS"), and no pending individual lawsuit seeking compensatory damages or sworn statement establishing their identities and preserving their claims as "B1 Plaintiffs," as required by this court's Pretrial Order No. 60. Record Doc. No. 16050. Judge Barbier has previously ordered that claims of individual "B1 Plaintiffs" who failed to comply with Pretrial Order No. 60 are dismissed with prejudice as time-barred. Record Doc. No. 20996 at p. 5.

During the settlement approval process concerning the Halliburton/Transocean Settlement Agreements and the related Distribution Model, when objections were asserted to the requirements of compliance with Pretrial Order No. 60 and/or payment through neutrals settlement or the DHEPDS, the court stated:

> Seventy-four objectors who failed to comply with PTO 60 now object to the impact this failure will have on their New Class distribution. Rec. Doc. 21723. The Court makes no decision on the propriety of the Claims Administrator's interpretation. **This objection is most properly considered in an appeal to this Court after determinations are concluded**. . . . Seven objectors did not recover in the DHEPDS and now seek assurance that they will recover in the New Class Settlement. . . . Assuming these objectors are New Class Members, if they take issue with their award under the Claims Administrator's Distribution Model, their proper remedy is an appeal to this Court.

Record Doc. No. 22252 at p. 44 (emphasis added). Thus, I find it appropriate to address these reasons for denial of these claims in some detail at this time.

The Claims Administrator's denial of these claims must be affirmed because the denials are consistent with the Settlement Agreements; the Neutral Allocation of the settlement funds, Record Doc. No. 15652; the court's orders approving the Settlement Agreements and its Distribution Model; and the law supporting them. No basis requiring a different result is apparent or has been provided by the appellants.

As to the Distribution Model's requirement that a successful claimant to payment from the Halliburton/Transocean settlements fund must demonstrate a discernible basis for his or her recovery of compensatory damages, this prerequisite is consistent with the general maritime law precept that a claimant may obtain punitive damages only if that claimant has underlying compensatory damages. As one Louisiana admiralty court has explained:

> While the [Exxon Shipping Co. v.] Baker [U.S. Supreme] Court [decision] did not expressly consider whether [plaintiffs] could recover compensatory damages for their economic losses, that conclusion is implicit in the Court's ruling. The [plaintiffs] were not prevented from seeking compensatory damages, despite their lack of physical damage to a proprietary interest. To the contrary, the amount of the award of punitive damages was ultimately based on a ratio utilizing that compensatory damage award. <u>It is axiomatic that punitive damages may only be recovered in cases where compensatory damages are allowed in the underlying claim</u>. Therefore, the [Supreme] Court's recognition of the [plaintiffs'] right to receive punitive damages, necessarily carried with it the right of those fishermen to be awarded compensatory damages as well.

<u>La. Crawfish Producers Ass'n-W. v. Amerada Hess Corp.</u>, No. 6:10-0348, 2015 WL 10571063, at *7 (W.D. La. Nov. 23, 2015) (citing <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471 (2008)) (emphasis added).

In assessing what amount of punitive damages might be appropriate under maritime law, the Supreme Court in <u>Baker</u> endorsed a process of

> <u>pegging punitive to compensatory damages</u> using a ratio or maximum multiple. See, <u>e.g.</u>, 2 ALI Enterprise Responsibility for Personal Injury: Reporters' Study 258 (1991) . . . ("[T]he compensatory award in a successful case should be the starting point in calculating the punitive award"); ABA, Report of Special Comm. on Punitive Damages, Section of Litigation, Punitive Damages: A Constructive Examination 64-66 (1986) (recommending a presumptive punitive-to-compensatory damages ratio). . . . And of course the potential relevance of the ratio between compensatory and punitive damages is indisputable, being a central feature in our due process analysis.

<u>Baker</u>, 554 U.S. at 506-07 (additional citations omitted) (emphasis added). The Supreme Court has taken a similar approach in its decisions evaluating punitive damages awards

under the due process standard.  See BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 580-81 (1996) (a non-maritime case) ("The principle that exemplary damages must bear a 'reasonable relationship' to compensatory damages has a long pedigree. . . .  Our decisions . . . endorsed the proposition that a comparison between the compensatory award and the punitive award is significant."); id. at 581 (quotation, citation and emphasis omitted) ("[T]he proper inquiry is whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred.").

Even those potential claimants who, relying upon Baker and Gore, objected to court approval of the settlements based on this component of the Distribution Model conceded in their objections that "a correct statement of the law is that a party may recover punitive damages from a defendant if the party has recovered compensatory damages from the same defendant."  Record Doc. No. 21723 at p. 7.  The essential point for present purposes is that some basis for a claimant's recovery of compensatory damages is established.  In this instance, of course, one indicator of compensatory damages recovery is the DHEPDS payments paid by BP, not Halliburton or Transocean. It is clear, however, that the DHEPDS payments made by BP also reflect any compensatory damages that might have been obtained from Halliburton or Transocean, since the BP settlement payments were also "made in full, complete, and total

satisfaction of all of [plaintiffs'] compensatory damage claims against . . . Transocean .
. . and . . . Halliburton."  Record Doc. No. 6430-1 at ¶ 4.4.10.3.

The Distribution Model is liberal in its provision that anyone who was paid
through the DHEPDS program, regardless whether that claimant also filed an individual
lawsuit, has established the compensatory damages component sufficiently to receive
payment under the Halliburton/Transocean settlements Distribution Model.  However,
this provision offers no recovery avenue for the 60 menhaden fishermen in this group of
appellants because their claims were neither recognized nor released under the BP
settlements.  Record Doc. No. 6430-1 at ¶ 3.4.  For them, it was reasonably necessary to
establish the compensatory damages component of their claims as a prerequisite to their
recovery of punitive damages settlement payments in some other way, such as by
settlement through neutrals or by asserting their claims in a lawsuit, as required by
Pretrial Order No. 60.

It is axiomatic that any person or entity with a claim for damages must timely
assert the claim and that unasserted or untimely claims result in no recovery.  See Fed.
R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); Fed.
R. Civ. P. Supp. Adm. R. F(5) ("Claims shall be filed and served on or before the date
specified in the notice . . . [and] shall specify the facts on which the claimant relies in
support of the claim . . . .").  For more than five years after the Deepwater Horizon

disaster, members of the broad putative class of claimants to damages arising from the disaster might reasonably have relied upon their presumed inclusion in the class and/or sub-classes of claimants alleged in the B1 Bundle Master Complaint, as amended, Record Doc. No. 1128 in MDL 10-2179, ¶¶ 544-45, and its predecessors, together with this court's short form joinder procedure and individually filed lawsuits, as adequate to assert their claims.  The B1 Bundle Master Complaint asserted a wide variety of claims, including for both compensatory and punitive damages, on behalf of "[a]ll individuals and entities residing or owning property in the United States who claim economic losses, or damages to their occupations, businesses, and/or property as a result of the April 20, 2010 explosions and fire aboard, and sinking of, the Deepwater Horizon, and the resulting Spill," id. ¶ 544, against principally the BP, Transocean and Halliburton defendants.  The B1 Bundle Master Complaint expressly included menhaden fisheries and commercial fishers in its recitation of alleged damages caused by the Deepwater Horizon disaster.  Record Doc. No. 1128, ¶¶ 28(a), 106, 108, 115.

On March 29, 2016, however, Judge Barbier entered Pretrial Order No. 60, which dismissed the B1 Master Complaint in its entirety and required persons who wished to continue to assert the claims included in it to make certain filings as individuals, rather than merely as unidentified members of a putative class.  The order provided an initial compliance deadline of May 2, 2016, which was subsequently extended to May 16, 2016,

for anyone who requested an extension.  See, e.g., Record Doc. Nos. 16424, 16482, 16755, 17044, 17922.[1]

   As noted above, the Distribution Model is liberal in its application of the axiom that a claim must be asserted to be compensable, in that the model assumes claim assertion for anyone who filed a claim and was paid through the DHEPDS program.  This mechanism provided a readily identifiable basis and means of concluding that those claimants satisfied the compensatory damages prerequisite for payment of a punitive damages settlement amount, for the purposes discussed above.  For those who did not or could not file such claims, however, some other means was necessary by which they could be identified and the compensatory damages component required to trigger their entitlement to a punitive damages payment could be established.  Pretrial Order No. 60 was that vehicle.

The court had undoubted authority and need to issue Pretrial Order No. 60, requiring all parties seeking recovery to identify themselves and assert their claims, in the interest of resolving and bringing to an end the complex, broad-ranging litigation that was the Deepwater Horizon April 20, 2010 Oil Spill Multi-District Litigation.

> Although not without limits, the court's express and inherent powers enable the judge to exercise extensive supervision and control of litigation. The Federal Rules of Civil Procedure, particularly Rules 16, 26, 37, 42, and

---

[1] Judge Barbier denied a request to extend this deadline to June 30, 2016 for all pro se plaintiffs.  Record Doc. No. 18132.

83, contain numerous grants of authority that supplement the court's inherent power to manage litigation.  Federal Rule of Civil Procedure [16(c)(2)(L)] specifically addresses complex litigation, authorizing the judge to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems."

In planning and implementing case management, the court should keep in mind the goal of bringing about a just resolution as speedily, inexpensively, and fairly as possible.   Judges should tailor case-management procedures to the needs of the particular litigation and to the resources available from the parties and the judicial system.

Manual for Complex Litigation Fourth, § 10.1 at p. 8 (Federal Judicial Center 2004)

(citing Chambers v. NASCO, Inc., 501 U.S. 32, 42-51 (1991); Pedroza v. Cintas Corp.,

No. 6-01-3247-CV-S-RED, 2003 WL 828237, at *1 (W.D. Mo. Jan. 9, 2003), aff'd, 397

F.3d 1063 (8th Cir. 2005)).  The legitimate need for trial courts to engage in active

management, including the use of "special procedures" to bring the "Big Case" to "final

adjudication" without undue protraction, was the basis for the development of both Rule

16 and the Manual for Complex Litigation.  Charles Alan Wright et al., 6A Federal

Practice & Procedure §§ 1525, 1530 (3d ed.; Westlaw database updated April 2017); id.

§ 1525, cases cited at nn. 28-32 (including Cech v. Moore-McCormack Lines, Inc., 294

F.2d 584, 584 (2d Cir. 1961) (Rule 16 gives district court authority to set deadline in

pretrial order by which plaintiff must appear to execute settlement papers or face

dismissal of his claims)); id. § 1530 at nn. 1-5.

Pretrial Order No. 60 was such a Rule 16 special procedure. At the time of the order's entry, the Deepwater Horizon litigation had already lasted more than five years. In the interests of supervising, controlling and resolving the litigation, it was necessary to determine what particular claims remained to be resolved after such protracted litigation, which included trials, appeals and various settlements that had addressed most of the identifiable claims. It was entirely reasonable and justifiable in furtherance of the interests embodied in Fed. R. Civ. P. 1 and 16 for the court to require those claimants who sought recovery to step forward and identify themselves so that proceedings concerning those claims could proceed and the litigation could be resolved.

The manner in which the court issued, administered and enforced Pretrial Order No. 60 demonstrates the seriousness of the order and the reasonableness of the Claims Administrator's adherence to its requirements in the Distribution Model. In two separate orders issued in 2016, Judge Barbier enforced Pretrial Order No. 60 by dismissing with prejudice as time-barred the claims of B1 Plaintiffs who had failed to comply with it. Record Doc. Nos. 20996 at p. 5, 22003.

The court's order dismissing as time-barred the claims of plaintiffs who had failed to comply with Pretrial Order No. 60, Record Doc. No. 20996 at p. 5, was consistent with the maritime law doctrine of laches. Because Congress has enacted only a few statutes of limitations applicable to a limited number of types of admiralty claims, courts employ

the long-established doctrine of laches to terminate stale claims that claimants have

unduly delayed in asserting.

> Laches is 'an inexcusable delay that results in prejudice to the
> defendant.' . . . In evaluating a defense of laches, the Court must weigh the
> equities as they appear from the facts of each case. . . . In maritime or
> admiralty actions, the Fifth Circuit uses a three-part test to analyze the
> validity of a laches defense: 1) whether there was a delay in asserting a
> right or claim; 2) whether or not the delay was excusable; and 3) whether
> the delay resulted in undue prejudice to the party against whom the claim
> is asserted.

Pac. Dawn, LLC v. New Orleans Marine Serv., Inc., No. 10-2852, 2012 WL 686034, at

*2 (E.D. La. Mar. 2, 2012) (quoting Bd. of Supervisors v. Smack Apparel Co., 550 F.3d

465, 489-90 (5th Cir. 2008)) (citing W. Wind Africa Line, Ltd. v. Corpus Christi Marine

Servs. Co., 834 F.2d 1232, 1234 (5th Cir. 1988); Mecom v. Levingston Shipbldg. Co.,

622 F.2d 1209 (5th Cir. 1980); Esso Int'l, Inc. v. S.S. Captain John, 443 F.2d 1144, 1150

(5th Cir. 1971)).

Pretrial Order No. 60 itself and Judge Barbier's subsequent orders enforcing it

indicate that the court weighed these three factors in favor of dismissing claims deemed

untimely because of failure to comply with the order. As to delay in asserting a right or

claim, each order stressed that the subject oil spill had occurred more than five years

before Pretrial Order No. 60 was issued, Record Doc. Nos. 16050 at p. 2, 20996 at p. 2,

22003 at p. 2; and the importance of "timely" claims filing, Record Doc. Nos. 16050 at

p. 2, 20996 at p. 2, 22003 at pp. 2, 4; all indicating that further delay beyond the deadline

- 12 -

set by the court was unacceptable.  Except for a very few claimants who were found to have fallen into a "notice gap," Record Doc. No. 22003 at p. 13, Judge Barbier has consistently found in enforcing Pretrial Order No. 60 that further delay by claimants who had failed to comply with its requirements was <u>not</u> excusable for any of the various reasons they advanced.  Record Doc. Nos. 20996 and 22003.  The court twice noted that "[t]housands of Plaintiffs" had successfully complied with the simple requirements of Pretrial Order No. 60 without requiring excuses and had seized the "opportunity to proceed with their B1 claims through compliance with" the order.  Record Doc. Nos. 20996 at pp. 2-3, 22003 at p. 3.  The inherent purpose of Pretrial Order No. 60, in its references to "effective administration of this multidistrict litigation" and "streamlining the remaining claims . . . to facilitate the administration of this MDL and the prosecution of the actions herein," Record Doc. No. 16050 at pp. 1-2, included avoiding the inevitable prejudice to defendants that would result from uncertain damages exposure and having to defend unknown individual claims that might be asserted long after the oil spill and after the generous deadline and mechanisms for asserting claims established by the court expired.

Counsel for the menhaden fishermen who have filed 60 of these appeals assert a cavalcade of additional arguments for setting aside the Claims Administrator's

determinations.  All of these arguments have either been previously addressed by the court or require little substantive discussion.  These principal arguments include:

(a) Pretrial Order No. 60 applied only to those who had filed short-form joinders to the B1 Bundle Master Complaint or were plaintiffs in multi-plaintiff lawsuits, neither of which applied to them, and New Class members were not required to do anything. Judge Barbier's orders enforcing Pretrial Order No. 60 have already rejected these arguments.  All of these claimants were clearly B1 Plaintiffs included in the broad definitions of plaintiffs contained in the B1 Bundle Master Complaint.

(b) Their status as members of – although <u>not</u> as specifically named plaintiffs in – various putative class actions was sufficient to assert and preserve their compensatory damages claims, without the need to comply with Pretrial Order No. 60.  Judge Barbier has specifically rejected this argument, finding that unnamed members of putative class actions were "part of a complaint with more than one plaintiff" and therefore responsible for complying with the requirements of Pretrial Order No. 60.  Record Doc. No. 22003 at p. 21.

(c)  They received inadequate notice either of the requirements of Pretrial Order No. 60 or that failure to comply would result in denial of their claims to a share of the Halliburton/Transocean settlements.  As outlined in Judge Barbier's orders, the notice provided was extensive, posted through a wide variety of means, and "deemed sufficient

to satisfy notice requirements for all Claimants with 'B1' claims."  Record Doc. Nos. 16050 at pp. 5-6, 20996 at p. 3.  None of these appellants appear to have fallen into the kind of "notice gap" that Judge Barbier has previously found might excuse some from the Pretrial Order No. 60 requirements.  Record Doc. No. 22003 at p. 13.

(d) Denial of their claims violates their due process rights.  Due process rights may be either substantive or procedural.  Substantive due process rights have been described in broad and subjective terms, including "fundamental fairness."  Perry v. New Hampshire, 565 U.S. 228, 249 (2012) (Thomas, J., concurring); Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); Griswold v. Connecticut, 381 U.S. 479, 513 (1965); Rochin v. California, 342 U.S. 165, 169 (1952); Holt v. Alexander, 493 F. App'x 608, 610 (5th Cir. 2012).  I know of no precedent or standard by which time-bar limitations on the assertion of stale claims of the type imposed by statutes of limitations, the laches doctrine or the requirements of Pretrial Order No. 60 have been deemed fundamentally unfair.  The fundamental requirements of procedural due process are notice that is reasonably calculated to apprise parties of an action that might deprive them of rights, such as the right to assert a claim, and a meaningful opportunity to be heard.  Nelson v. Colorado, 137 S. Ct. 1249, 1265 (2017); Hamdi v. Rumsfeld, 542 U.S. 507, 533 (2004); Burciaga v. Deutsche Bank Nat'l Tr. Co., 871 F.3d 380, 390 (5th Cir. 2017).  As noted above, the notice mechanisms employed for Pretrial Order No. 60 were varied and

- 15 -

numerous; thousands of persons whose rights were affected complied. The opportunity to be heard, both by making the filings required by Pretrial Order No. 60 and in the subsequent proceedings that resulted in Judge Barbier's reconciliation and compliance orders concerning the order, Record Doc. Nos. 20996 and 22003, were extensive and meaningful. No due process violations occurred.

(e) Denial of their claims was an "arbitrary and capricious" violation of their equal protection rights. Pretrial Order No. 60 did not discriminate based on race, religion, national origin, gender or any other conceivable suspect class. Thus, governmental action like Pretrial Order No. 60 need only be rationally related to legitimate purposes. Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston, 660 F.3d 235, 239 (5th Cir. 2011); Dudley v. Angel, 209 F.3d 460, 463 (5th Cir. 2000); Johnson v. Rodriguez, 110 F.3d 299, 306 (5th Cir. 1997). The legitimate case management purposes of Pretrial Order No. 60 are summarized above, and the order's rational relationship to those purposes is clear.

For all of the foregoing reasons, the Claims Administrator's determination of these claims was consistent with the Settlement Agreements, the Neutral Allocation of the settlement funds, the court's orders approving the Settlement Agreements and its Distribution Model, and the court's subsequent orders and the law supporting them.

- 16 -

They are therefore **AFFIRMED**.  The Claims Administrator is directed to provide notice

of this Appeal Determination to the claimants referenced above and their counsel, if any.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
**HON. CARL J. BARBIER**
**and**
**HESI/TRANSOCEAN SETTLEMENT**
**CLAIMS ADMINISTRATOR**