## EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
No. 10-MD-2179

**PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)**

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| BOGGS | CHARLES | ARCHIBALD | |

| Business Name | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) |
|---|---|
| | 0554 |

| MDL 2179 Member Case Number | Attorney Name and Firm |
|---|---|
| 2:16-cv-13476; ALSO COURT NNUMBER 11988; CLAIMANT NO. 2740(ATTACHED); See 2:16-cv-03752 | Thomas E. Loehn<br>Boggs, Loehn & Rodrigue |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

1

## ATTACHMENT TO EXHIBIT "A"

NEUTRALS, PLEASE NOTE

Pretrial Order 60 requirements to file a complaint were met:

1. The next attached document entitled" Charles A. Boggs v. BP Exploration and Production, Inc., Court Number 11988, Claimant 27410, Section: "J", Honorable Carl J. Barbier, Magistrate Judge Shushan. OBJECTION TO FAIRNESS OF PROPOSED REAL PROPERTY CLAIM SETTLEMENT AND PROPOSED PROPERTY DAMAGES SETTLEMENT, was filed very early in this case, before PTO 60.

2. The Court's "Order to Show Cause Re: Compliance with PTO 60" on Exhibit 1A, Page 8, last entry, shows "Charles Archibald Boggs" as complaint. (See Court Document 1872-1, filed 6-7-16).

3. All other forms and filings for compensatory and punitive property damage, including PED 1 and supplemental/amended PED 1 were filed.

4. EXHIBT 2 of the above "Order to Show Cause..." lists all persons and all deficiencies for those persons who FAILED to fully comply with PTO 60. Charles Archibald Boggs IS NOT LISTED as being deficient.

5. EXHIBIE 3 of the above "Order to Show Cause..." does not show Charles Archibald Boggs as a plaintiff in the Mass Joinder Complaint.

6. Therefore, BP's counsel found that, in good faith, Charles Archibald Boggs had complied with PTO 60; and, the Court so Ordered in the Order to Show Cause filed June 7, 2016. Thus, Charles Archibald Boggs was told by BP counsel and the Court that he met PTO 60 and was not ordered to show cause as to any deficiency.

7. Defendants had ample notice of the claim of Charles Archibald Boggs, as evidenced in the immediately following attachment, under the Federal Rules and pursuant to the long held federal principal of NOTICE PLEADING. Defendants well knew of the trespass damage caused by the oil, fumes, and oil film on the home of Charles Archibald Boggs as evidenced by partial payment for these damages (GCCF paid Charles Archibald Boggs $5,500.00 to power wash the oil film from his home and to paint the porch, as fully discussed hereinafter.)

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2012 | * * * * * * * | MDL No. 2179<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |
| CHARLES A. BOGGS<br><br>Plaintiff,<br><br>v.<br><br>BP EXPLORATION & PRODUCTION INC., ET AL.<br><br>Defendant | * * * * * * * * * * * | COURT NUMBER: 11988<br><br>CLAIMANT NUMBER: 27410<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

## OBJECTION TO FAIRNESS OF PROPOSED COASTAL REAL PROPERTY CLAIM SETTLEMENT AND PROPOSED PROPERTY DAMAGES SETTLEMENT

Charles A. Boggs, plaintiff, is a potential class member. He filed suit *"in propia persona"* under the MDL on March 14, 2011 (by hand written complaint on the Court's form), seeking damages for personal injury, damage to his real property and damage to his home. Mr. Boggs, a mostly retired Louisiana and Mississippi attorney and Thomas E. Loehn, are simultaneously with this Objection, filing a Motion to Enroll.

1

The gist of this objection is that, while plaintiff would like to join in the settlement, it so unfair to him that all of these claims are excluded. Of course, others similarly situated, are also denied participation.

Plaintiff is also simultaneously filing an Objection to Fairness of Proposed Personal Injury Settlement.

## HISTORY OF CLAIMANT AND HIS PROPERTY

Plaintiff's retirement as an active medical malpractice attorney was caused by acute myelocytic leukemia (AML), first occurring in 1997 and recurring in 2003.

Chemotherapy to destroy diseased and, unfortunately, non-diseased blood cells was the treatment of choice in 1997 and 2003.

After the chemo in 2003, the treatment of last resort was rendered, a bone marrow transplant from an unknown donor.

The treatment was a success and plaintiff recovered. However, his health was greatly diminished, primarily due to a weakened immune system, zapping his mental and physical vigor for frequent jury trails, medical discovery, etc.

Thus, in 2004 plaintiff retreated from the practice, sold his New Orleans home and returned to his ancestor's home-place---Boggsdale in Long Beach, Ms. on the Gulf of Mexico.

The history of the Boggs family land began in 1875, when Confederate War veteran, poet and author, Robert Boggs and his wife Eliza, settled in this pure Gulf Coast wilderness. Since then Boggsdale has been home to eight generations of plaintiff's family, including the birthplace of his father, the late Federal Administrative Law Judge Archie Boggs and his uncle, the late Congressman Hale Boggs.

In 2005, Katrina destroyed plaintiff's Gulf front home.

In 2007, plaintiff rebuilt his home on the same site.

### "A RIVER RUNS THROUGH IT"

Well, not exactly. It is a bayou passing directly to the Gulf under US Highway 90 in huge pipes, the level of which rises and falls with the tides. This tidal bayou runs along his property line about 30 feet North of his home, and then the bayou transects the remainder of his 1.9 acre property. To the South of his home is the Gulf and to the North is the Boggsdale bayou. Claimant is literally surrounded by the ebb and flow of the Gulf of Mexico. A good description of place and people can be found by entering Boggsdale on Goggle.

### UNFAIRNESS OF COASTAL REAL PROPERTY CLAIM

Plaintiff is barred from participating in the Costal Real Property Claim because his home borders the North side of U.S. Hwy 90. Conversely there are no homes bordering the South side of U.S. Hwy 90 in Hancock or Harrison County, and few, if any, in Jackson County. The whole of the Mississippi coast, the Coastal Real Property Claim Zone, Harrison County (Detached Portion 2), Page 10 out of 69 found on the Official Court Web Site is the basis of plaintiff's objection. The blue line delineates the Eligible Zone. With regard to homeowners along US Hwy 90, the blue line is all vacant beach, with few exceptions in Biloxi—casinos—(no homes) - only.

3

The choosing of the beach for compensation unfairly denies compensation to plaintiff and those like situated for the following two reasons:

1. **Plaintiff has Property Rights to the Area South of U.S. Hwy 90**

The blue line on the relevant map designates beach only. But plaintiff has property right to the water's edge, by chain of title.

Plaintiff's predecessor in title, his father, Administrative Law Judge Archie Boggs owned 55 feet of the entire blue line, from the water's edge North to U.S. Hwy 90. Judge Boggs' father and mother deeded him the property plaintiff now owns including:

> "Also that strip of land beginning at a point of the West Margin at the Gulf of Mexico of that certain property owned by Mrs. Lala Marquez Ehlinger and then running in a northerly direction along the Western line of the said property of Mrs. Lala Marquez Ehlinger to the North side of U.S. Highway Number 90; thence running in a Westerly direction parallel to said U.S. Highway Number 90 for a distance of fifty-five feet (55'), thence in a Southerly direction along a line parallel to the Eastern boundary until said line intersects the Gulf of Mexico."

*See Property Deed which is attached hereto and marked as "Exhibit 1".*

Judge Boggs acquired his neighbor's property, now owned by plaintiff. Judge Boggs acquired an additional 70.1 feet of the blue line. Deeded to the current Mr. Boggs' predecessor in title is:

> "AND ALSO: By quit claim deed, the Grantors herein convey to the Grantees all right, title and interest they might have in and to the property situated directly South of the above described property to the water's edge of the Gulf of Mexico or Mississippi Sound. It being the intention herein to convey to the Grantees the same property conveyed by Fred W. Bennechke, et ux to Edward Fiedler, et ux, recorded in Deed Book 365, page 302 of the Deed Records of Harrison County, Mississippi".

*See Property Deed Vehicle which is attached hereto and marked as "Exhibit 2".*

4

Thus, the current Mr. Boggs owns or has actionable title to rights for 125.1 feet of the blue line, from U.S. Hwy 90 to the water's edge, directly South of his home.

In fairness, because of the chain of title to plaintiff, plaintiff asks the Court to change the blue line (Eligible Zone) to include claimants who own homes on the Northside of US Hwy. 90, with actionable title to rights to the water's edge.

### 2. Boggsdale Bayou Polluted with Oil

A series of photos, *which are attached hereto and marked as "Exhibit 3"*, show Mr. Boggs home's proximity to the Gulf and to the Boggsdale bayou. The photos also show extensive oil floating on the bayou as well as the conexity of the bayou to the Gulf, via a two sided culvert crossing the beach to the Gulf. (Huge pipes pass under U.S. Hwy 90 to allow tidal flow). This oil came and went via the bayou over many months. It inundated the plants in the bayou. The elevation of the bayou is only two (2) feet above sea level at plaintiff's home. When the winds are really high and push the bayou out of its banks, oil comes onto the land. It smells horrible. The proximity of plaintiff's house, both to the bayou and the Gulf, is the cause of his illness described above.

Only the seagulls and pelicans have a Coastal Real Property Claim under the proposed settlement. The reason is that, despite the deeds discussed above, the Proposed Settlement shows the blue line (beach) as Public Property. The quantum amount is calculated based upon the amount of the property owners real estate tax assessment. Of course, no such taxes are paid on Public Property...hence the claims for Coastal Real Property are for the birds, literally and figuratively.

5

Rather, it is urged that the Court amend the Eligible Zone for coastal real property claims to include properties immediately bordering U.S. Hwy 90 that have a defined tidal flow, via culvert or piping, under Hwy 90 to the Gulf.

## UNFAIRNESS OF PROPERTY DAMAGE SETTLEMENT

The GCCF paid $5,500 to wash and repaint the HORIZONAL surfaces of plaintiff's home, such as the stairs, porches, railings, etc. The reason the GCCF agreed to pay the painting was that the surfaces of plaintiff's home were covered with an oily film, heavier on the horizontal surfaces than on the vertical surfaces. Nevertheless, Mr. James Cooper, painter, found oil on the entire building. As Mr. James Cooper's estimate says, "So thick was this oil that it repelled water in a number of places".(See attached estimate of painter, James Cooper, and copies of plaintiff's check paying Mr. Cooper, *which is attached hereto and marked as "Exhibit 4".*).

When presented with an estimate to complete the job by painting the vertical surfaces, the GCCF refused. The estimate to complete the job is for $13,300, submitted to the GCCF with references recommending the work of the painter.

Arbitrary and unfair, says the plaintiff—to pay only part of the damages to his home.

Plaintiff asks the court to amend the proposed order to compel the new administrator recognize and pay claims for property damage which were only partially paid by the GCCF. In this case of absolute liability, under maritime law as extended to shore victims, the future administrators should not be permitted in the proposed settlement to deny a claim already acknowledged and partially paid by the GCCF. Otherwise, a potential claimant will certainly be

"gun shy", having felt mistreated by the previous administrator. Thus, fewer litigants will be accepting the proposed settlement.

## CONCLUSION

Plaintiff and his family have had a few setbacks in the last decade. However, claimant's practice in the Courts of this state for over 35 years impressed upon him the truth of the statement: "the Courts usually get it right."

Plaintiff's respectfully requested amendments to this proposed settlement are miniscule compared to the gigantic scope of the litigation.

Plaintiff sincerely asks the Court to intervene and correct the unfairness of the proposed settlement as outlined above.

Respectfully Submitted,

BOGGS, LOEHN & RODRIGUE


/s/ Charles A. Boggs
CHARLES A. BOGGS (LA #3176) (MS #101734)
630 West Beach Boulevard
Long Beach, Mississippi 39560
Telephone: (228) 863-6795


/s/ Thomas E. Loehn
THOMAS E. LOEHN (#8663)
2324 Severn Avenue, Suite 100
Metairie, Louisiana  70001
Telephone: (504) 828-1202
Facsimile: (504) 828-1208

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was this day filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

New Orleans, Louisiana, this 19th day of June, 2012.

/s/ Thomas E. Loehn
THOMAS E. LOEHN

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Oil entered my land, the bayou crossing my land to the Gulf of Mexico and coated my home at 630 West Beach Boulevard, Long Beach, Mississippi.

The damages to my property and home happened on a daily basis, beginning a few days after the explosion, fire and dispersal of oil and chemicals into the water of the Gulf and the air blowing in from the explosion site - - the predominate wind direction is South and Southwest for the months following the explosion. The oil slicks appeared in the bayou a few yards from my home as shown in the photographs attached to PED 1, band the amended/supplemental PED 1, both of which have been timely filed.

I met with the GCCF attorney, 2 GCCF claims adjusters in Gulfport to discuss the damage to my home. It was decided at that meeting that an oil film, in fact, existed on my home and the GCCF, in admission of this fact, paid $5,500.00 to have my home pressure washed and the stairs and porch painted. (See GCCF Check Number 00442703, Claim Number 01131251, Dated august 29, 2011 in the amount of $5,500.00.) This amount I was paid to the painter, Mr. James Cooper, and I have the canceled checks to Mr. Cooper. However, OIL COVERED MY ENTIRE HOME, not just the stairs and porch. THE ESTIMATE TO COMPLETE THE JOB BY REPAINTING MY HOME WAS $13,300.00 IN 2011. THIS ESTIMATE WAS SUBMITTED TO THE GCCF AND IS CONTAINED IN THE PED 1 PREVIOUSLY FILED. NOW, THE COST TO REPAIN THE HOUSE (excluding the stairs and porch) $17,000.00.

> **Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.
>
> The PED 1 and supplemental/amended PED 1 contain all of this evidence. It is as follows:
>
> 1. Check showing payment by GCFF as authorized by GCCF counsel at a meeting in her office in Gulfport, MS. and attended by two GCCF adjusters in the amount of $5,500.00 (check number, claim number and date appear in answer to Question 1.)
>
> 2. Cancelled checks to James Cooper, the painter.
>
> 3. Statement of James Cooper, the painter, who power washed the house and painted the stairs and porch, confirming that oil covered house and that "so thick was this oil that it repelled water in a number of places." (See PED 1 for the statement).
>
> 4. Extensive photos of oil in my bayou crossing my property and connecting with the Gulf of Mexico, extensive photos of oil on the beach in front of my home, extensive photos showing very close proximity of my home to bayou and beach.
>
> 5. Extensive medical records and doctors reports stating that because I had undergone chemo therapy and a bone marrow transplant for leukemia, my white blood count was abnormally low, predisposing me to the severe illness I suffered as a result of the oil fumes/film coming onto my property and home. Also, photos of the many medicines I took for many months after the explosion and resultant oil and chemical dispersal.
>
> 6. Testimony of James Cooper, the painter/contractor, 2011 bid of $13,000.00 to paint the remainder of the my home, current estimates of $17,000.00 to $20,000.00 to complete the paint repairs, check showing GCCF partial payment of $5,500.00, testimony of GCCF adjusters and GCCF attorney regarding meeting in her office and GCCF payment (without a release), four doctors who treated me following my exposure to oil film/fumes and chemicals.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

Causation has been admitted by defendants, GCCF/BP/HALLIBURTON/ETC., by virtue of the GCCF investigation of my home, land and bayou, after which GCCF's female attorney (unfortunately I cannot recall her name), summoned me to a meeting with the GCCF adjusters and told me the GCCF would pay $5,500.0 FOR REMOVAL OF THE OIL FROM MY HOME BY POWER WASHING AND PAINTING THE STAIRS AND PORCH. In fact, the GCCF did pay $5,500.00 (see previous discussion for details). This was paid to painter James Cooper (I have the canceled checks).

Besides the above described admission of causation, the oil coated my home, entered my land, entered my bayou, and entered my body causing severe illness. See PED 1 and supplemental/amended PED 1 and the exhibits attached thereto.

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions? (Yes or No)
>
> Yes.

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: *January 17*, 2018

Location (City and State): *Long Beach, MS,*

*[signature: Charles Archibald Boggs]*
Signature of Plaintiff*

**Plaintiff's Attorney <u>Cannot</u> Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

*CHARLES ARCHIBALD BOGGS*
Print Name

_____
Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.**

5