UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010 | | MDL No. 2179 CASE NO. 2:10-md-02179 |
| | | JUDGE BARBIER |
| Related to: | 12-968 BELO in MDL No. 2179 | MAG. JUDGE WILKINSON |
| | *Bradberry,* 2:17-cv-04686 *Bradford,* 2:17-cv-12065 *Colton,* 2:17-cv-12017 *Castro,* 2:17-cv-12018 | [Request for Oral Argument Filed Concurrently Herewith] |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO AMEND OR MODIFY BELO CASES INITIAL PROCEEDINGS CASE MANAGEMENT ORDER

### I.    PRELIMINARY STATEMENT

Plaintiff BOBBY LYNN BRADBERRY, JR. (BRADBERRY) brings this motion pursuant to Section IV (1) (D) of this Court's Back-End Litigation Order (BELO) Cases Initial Proceedings Case Management Order (CMO), which authorizes a motion "to amend or modify this case management order, either as it applies to (i) BELO cases as a whole and/or (ii) the particular BELO case in which it is filed." (Rec. doc. 14099). This motion is also brought pursuant to the Deepwater Horizon Medical Benefits Class Settlement Agreement (MSA) in MDL 2179 §XXVII (Exhibit E) under which this Court retains "continuing and exclusive jurisdiction" to interpret, implement, administer and enforce the MSA.  (*See also*, this Court's approval Order thereon, Rec. doc. 8218, paras.10, 21-22).

BOBBY LYNN BRADBERRY, JR. is joined in this motion by Plaintiffs JAMES WILBORN BRADFORD, IV (E.D.LA. Case No. 2:17-cv-12065, WALTER DARIO CASTRO (E.D.LA. Case No. 2:17-cv-12018) and JASON COLTON (E.D.LA. Case No. 2:17-cv-12017),

(Plaintiffs) each of whom has separately filed an individual BELO complaint in this Court. (Exhibit A)

Plaintiffs have filed BELO lawsuits seeking compensatory damages and related court costs for chronic injuries they suffered as a result of their exposure to toxins, including but not limited to Corexit,  benzene and oil while performing clean-up work in the multi-state area polluted by the Deepwater Horizon Oil Spill (Oil Spill).  Like thousands of other Class Members, Plaintiffs suffered the precise compensable medical problems that foreseeably arise from exposure to BP's toxic cocktail including chronic dermal, ocular, respiratory and other conditions which manifested within 24-72 hours of exposure as described in the Master Settlement Agreement Matrix, (Exhibit B). The chronic injuries for which Plaintiffs sue herein include the precise injuries which were intended to be compensated as Specified Physical Conditions under the terms of the Master Settlement Agreement as set out in the Settlement Matrix[1].

On January 30, 2015 Hon. Joseph C. Wilkinson, Jr. entered a BELO Cases Initial Proceedings Case Management Order (CMO) to govern proceedings brought pursuant to the Back End Litigation Option provisions of the Medical Benefits Class Action Settlement Agreement. (Exhibit D). The purpose of this motion is to seek modification and/or amendment of the January 30, 2015 CMO pertaining to issues that are not directly addressed in the CMO.

Plaintiffs are seeking guidance from this Honorable Court on four issues that were never contemplated by the parties as part of the Master Settlement Agreement and need modification, amendment and/or clarification by this Honorable Court on how to properly proceed in an effort

---

[1] In September 2017, an article, *Respiratory, Dermal, and Eye Irritation Symptoms Associated with Corexit™ EC9527A/EC9500A following the Deepwater Horizon Oil Spill: Findings from the Gulf Study,* which was co-authored by Dr. Dale Sandler, Senior Investigator, National Institute of Environmental Health Sciences, concluded that, "[p]otential exposure to Corexit™ EC9527A or EC 9500A was associated with a range of health symptoms at the time of the OSRC, as well as the time of study enrollment, 1-3 years after the spill." (Exhibit C)

2

Case 2:10-md-02179-CJB-DPC   Document 23880-1   Filed 02/02/18   Page 3 of 26

to achieve a fair resolution for the Claimants in the prosecution of B1 chronic injury BELO cases. (Exhibit E).

1. **B1 BELO Plaintiffs Have Never Left the Jurisdiction of This Honorable Court And Should Not Be Required To Pay Filing Fees.**

Plaintiffs are Class Members and beneficiaries of the Medical Benefits Class Action Settlement Agreement that was entered by the parties and approved by this Honorable Court. (MSA); Rec. doc. No. 8218 (Approval Order). As such, Plaintiffs have continuously been parties before this Honorable Court since their initial qualification as Class Members.

Plaintiffs now seek to prosecute their B1 chronic injury in accordance with the MSA in MDL 2179 which provides that BELO cases shall be filed in the Eastern District of Louisiana under the *continuing jurisdiction* of this Honorable Court. Inasmuch as B1 BELO Plaintiffs have never left the sole jurisdiction of this Court, they should not be required to pay a filing fee to prosecute their B1 BELO claim. Additionally, fundamental issues of fairness dictate that it would be inherently unfair to require approximately 12,000 B1 Plaintiffs to pay $4,800,000.00 in filing fees to prosecute their B1 chronic injury claims.

2. **Plaintiffs Seek Acknowledgment That The Court's Order Of July 23, 2014 Effectively Created Two Categories Of BELO Claims.**

The Court's July 23, 2014 Order (Rec. doc. 13719) (Exhibit F) effectively created two distinct categories of BELO claims:

a) CANCER BELO plaintiffs for whom the BELO provision for Later-Manifested Physical Conditions (LMPC) was originally intended due to the latency period for cancer, a disease which would not have manifested within 24-72 hours after

3

exposure as required for recovery under the Matrix. The burden of proof for cancer BELO cases was negotiated by the parties and is set out in the CMO.

b) B1 BELO plaintiffs, who are non-cancer plaintiffs with chronic Specified Physical Conditions (SPC) that manifested within 24-72 hours of exposure as required under the Matrix (Exhibit B) but who were denied recovery under the Matrix because they were diagnosed after April 16, 2012. The burden of proof for B1 chronic injuries was negotiated by the parties and set out in the MSA Matrix.

Plaintiffs and Class Members now seek the Court's clarification and acknowledgment that two categories of BELO claims (Cancer BELO and B1 BELO) exist and are subject to different burden of proof standards in the prosecution of the respective claims, as requested below.

**3.     Cancer BELO And B1 BELO Claims Require Different Burdens Of Proof As Established In The MSA Settlement Matrix.**

The BELO CMO, which incorporates MSA §VIII.G.3. ("Issues to be Litigated"), provides that BELO plaintiffs are required to prove "the level and duration" of exposure, which is a toxic tort causation standard, specifically designed for cancer cases. (Exhibit D) Such proof requires a high level of expert testimony and proof and is prohibitively expensive as a standard for a simple chronic injury case such as the B1 BELO claims. This standard toxic tort cancer burden of proof should be applied solely to cancer BELO cases as intended and negotiated by the parties.

The burden of proof for B1 chronic dermal, respiratory and ocular and other injuries that manifested within 24-72 hours of exposure was negotiated between the parties. Also, the Court describes in detail the proof for recovery under the Matrix, which is the "framework for determining compensation eligibility and amounts," including the three categories of B1 Chronic

claims (ocular, respirator and dermal) (Rec. doc. 8217, pp. 9-11) set out in the MSA Matrix as follows:

## II.     Compensation for CHRONIC CONDITIONS

**Proof**

Declaration under penalty of perjury (1) asserting the manifestation of one or more conditions are the symptoms thereof on Table 3, asserting that such conditions (or the symptoms thereof) occurred within the applicable timeframe specified in table 3, and (3) identifying the route, circumstances, and dates or approximate dates of alleged exposure;

Plus one of the following:

(1) Medical records establishing presentment to a medical professional with the condition or symptoms claimed in the declaration where such condition(s) or symptom(s) are persisting at the time of presentment, or

(2) Medical records that (a) establish ongoing care/treatment are chronic nature of the condition(s) or symptom(s) and (b) indicate that the exposure was considered either by the claimant or the medical professional to be related to the condition(s) or symptom(s).

MSA Settlement Matrix. (Exhibit B)

This is the only burden of proof for recovery for chronic conditions that was negotiated between BP and the PSC and it is a very important term of the Master Settlement Agreement upon which claimants relied in abrogating their rights to sue BP for punitive damages.

On January 11, 2013 the Court issued its Order Granting Final Approval of the Medical Benefits Settlement and Confirming Certification of the MBS Class, which included the Drafters' representations as expressed during the Final Fairness Hearing. (Exhibit O). Notably, in its Order, the Court describes in detail the proof for recovery under the Matrix, which is the "framework for determining compensation eligibility and amounts," including the three categories of B1 Chronic claims (ocular, respirator and dermal). (Rec. doc. 8217, pp. 9-11) (Exhibit O).

It is respectfully submitted that by enforcing this negotiated burden of proof for chronic conditions for the thousands of cases that will be filed herein, the Court will greatly serve judicial efficiency in the non-jury trials of thousands of these chronic condition BELO cases.

It would be manifestly unfair to replace this negotiated burden of proof for chronic conditions and replace it with the onerous burden of proof for cancer cases as set out in the CMO. Plaintiffs request that this burden of proof negotiated by the parties for recovery for chronic conditions be respected by this Honorable Court and that B1 BELO Plaintiffs may recover for their chronic conditions by meeting the agreed burden of proof above as set out in the MSA Matrix, above. (Exhibit B)

### 4.       B1 BELOS And Cancer BELOS May Be Prosecuted As Separate Claims.

It was clearly the intent of the parties that the MSA was to provide the basis for recovery of both B1 chronic conditions and later manifested cancer injuries. The parties respectfully request that the Court clarify that the filing of a B1 BELO claim does not preclude the subsequent filing of a separate Cancer BELO claim by the same claimant.

The above four issues on which Plaintiffs seek to modify, amend and/or clarify the BELO CMO not only have implications for the individual BELO cases of Plaintiffs herein, but also for the additional approximately 12,000 individual BELO cases of all members of the Medical Benefits Settlement Class (Class Members) whose compensable B1 physical conditions manifested between April 20, 2010 and April 16, 2012, but who were precluded from recovery under the Matrix because they were diagnosed after April 16, 2012.

### III. PROCEDURAL HISTORY

The relevant events to this Motion are set forth below.

- April 16, 2012: The PSC filed a class action complaint entitled *Plaisance, et al. v. BP Exploration & Production Inc., et al.*, on behalf of thousands of individuals, including clean-up workers, asserting personal injury claims from exposure to oil and/or dispersants encountered during response activities to the April 20, 2010 *Deepwater Horizon* incident.

- April 18, 2012: The MSA was executed and subsequently filed with this Court on May 3, 2012, as amended. (Exhibit E) The SPC Matrix (Exhibit B) details the proof required to recover for each SPC which is divided into Acute SPCs (A1-4) and Chronic SPCs (B1).

- April 25, 2012: The Court heard the parties' Joint Motion Preliminary Approval of the Proposed Medical Benefits Class Action Settlement (MBS) and Approval of Class Notice and Related Matters. (Rec. doc. 6267).

- May 2, 2012: The Court issued its Preliminary Approval Order of the MSA (Rec. doc. 6419).

- November 8, 2012: Final Fairness Hearing (Exhibit G)

- January 11, 2013: The Court issued its Order and Judgment Granting Final Approval of the Medical Benefits Class Action Settlement. (Exhibit O)

- September 6, 2013:    Garretson Resolution Group (GRG), the Court Appointed Administrator of the MSA, coordinated with the Nations Law Firm to create agreed upon exemplars for presentation of the required medical information to support recovery for B1 chronic conditions as a Specified Physical Condition under the Settlement Matrix. Specifically, GRG approved, as an exemplar, B1 claimant Joseph Bolton's Independent Medical Examination (IME) wherein Mr. Bolton was diagnosed with four chronic conditions, all of which were diagnosed after April 16, 2012. GRG indicated that this exemplar would support a B1 recovery of $60,700 under the B1 Matrix, even though the

diagnosis was made on September 4, 2013. (Exhibit H) Based on this exemplar, the Nations Law Firm obtained close to 4,000 additional independent medical examinations of patients chronically injured with manifestations within 24-72 hours but diagnosed after April 16, 2012. At no time did GRG advise Nations Law Firm that their exemplar Plaintiff could not recover for his B1 SPC claim because he was diagnosed after April 16, 2012. In fact, the opposite was true. GRG advised Nations Law Firm that their exemplar Plaintiff would qualify for a B1 $60,700 recovery. This legal position on which Nations Law Firm relied to conduct thousands of additional independent medical examinations was subsequently abrogated by GRG in response to a major policy switch by BP that effectively rewrote the MSA. (Exhibit I)

- March 28, 2014 - April 2014:  A dispute arose between the parties after BP switched its interpretation of the MSA to exclude from the settlement virtually all B1 chronic claims (which were to be paid the highest amount under the Matrix) by claiming, for the first time, that chronic SPCs which manifested within 24 -72 hours of injury but were diagnosed after April 16, 2012 are actually LMPCs for which the claimant must file a BELO lawsuit to recover. This was precisely contrary to what the B1 chronic claimants had been told and promised when they agreed to waive their rights to opt out of the settlement. This was also the opposite of what BP and the PSC had advised this Honorable Court at the Final Fairness Hearing on the MSA. BP, having gotten approval of the MSA on the basis that B1 chronic claimants would be compensated $60,700 in accordance with the Matrix, was now introducing the "switch" portion of their bait and switch scheme which they were using to deprive thousands of B1 Plaintiffs of hundreds of millions of dollars of their promised

8

recovery. The parties submitted Memoranda on this issue to Magistrate Sally Shushan (Rec. doc. 12862).

- <u>May 13, 2014:</u> GRG, who had worked with Plaintiffs' counsel to approve exemplars for recovery of $60,700 for chronic B1 injuries incurred after April 16, 2012, **and who had never provided notice to claimants or their counsel a diagnosis deadline for chronic B1 conditions,** submitted its own memorandum to Magistrate Shushan, agreeing with BP's post Fairness Hearing "switched" interpretation of the MSA to preclude the recovery which Plaintiffs had been misled to believe that they would receive as part of the SPC process. (Rec. doc. 12862). This was completely inconsistent with GRG's prior approval of an exemplar for the standard of proof for recovery for B1 chronic conditions which GRG had approved for the Nations Law Firm. There was no explanation for the complete change in position of the Administrator as they approved the unilateral rewriting of the MSA by BP.

- <u>July 23, 2014:</u> The Court issued an Order on Classification of Chronic Physical Conditions First Diagnosed After April 16, 2012. (Exhibit F) The Court also accepted BP's "switched" interpretation that effectively unilaterally rewrote the MSA. The MSA, as currently interpreted by the Court, was never submitted to a Fairness Hearing. Instead, the interpretation of the MSA that received high praise at the Fairness Hearing has vanished, only to be replaced by a unilaterally constructed interpretation by BP that reflects neither the intent of the parties nor the promises that were made to the Plaintiffs. The result that was imposed on the Plaintiffs by BP's successful bait and switch essentially eliminated the $60,700 promised recovery for chronic conditions, which was the centerpiece of the MSA and without which it would have never been accepted by Plaintiffs. Significantly, no new information developed between the Fairness Hearing in November 2012 and the filing of

9

BP's "switched" interpretation in March 2014 that would support BP's new interpretation to effectively rewrite the MSA. This raises the issue of why neither BP nor the PSC nor the "fairness experts" failed to mention this extremely important outcome determinative element of the settlement to the Court at the Fairness Hearing. Was an interpretation of the MSA that eliminated hundreds of millions of dollars of recovery from the claimants on their B1 SPC chronic condition claims not worthy of mention at the Fairness Hearing? It is respectfully submitted that the issue was not raised because BP knew that this Honorable Court would not approve as "fair" a settlement that eliminated hundreds of millions of dollars in SPC recoveries and left Plaintiffs with the burden of filing thousands of federal lawsuits to recover for the injuries, which they incurred while cleaning up BP's toxic mess that destroyed the beauty and much of the livelihood of the Gulf Coast states.

- August 20, 2014:  The PSC filed a Motion for Reconsideration of the Court's July 23, 2014 Order Regarding Chronic SPCs, which was heard by the Court on September 24, 2014. (Exhibit N).

- September 24, 2014: At the hearing on the Motion for Reconsideration, the Court expressed concern with BP's new interpretation of this provision (that any condition not diagnosed by April 16, 2012 was an LMPC), because **it was not what the parties represented to the Court at the Preliminary and Final Fairness Hearings, it was not what the parties intended, and was certainly not what was envisioned or understood at either of these hearings by the Honorable Judge Carl J. Barbier:**

  > … [I]t's rather obvious to me **that the current interpretation of this agreement,** of the provisions we're talking about, **was never discussed with the Court.** It was never made clear in terms of the public hearings we had.
  >
  > The discussion was always about describing this Later-Manifested Physical Condition as being just what it sounds like. It was even described, and they

used the examples. **The most common would be somebody developing cancer years later from some toxic substance**, which, you know, there is always a latency period in some of these chemicals for years, as I appreciate it. So those were the kinds of cases that everybody was focused on, including the Court. It seemed like that was what the parties were focused on. . .

**It is rather strange . . . that the Court would approve a settlement, a class settlement that really doesn't settle thousands of claims and requires them to file another lawsuit. I mean, it doesn't sound like much of a settlement. Frankly, I've never heard of a settlement which requires you to file another lawsuit.** (Emphasis added, Tr., at pp. 40-41).

That's what's causing me problems, I guess, in thinking about this. It seems like **it's going to result in something I don't believe either party intended**. . . (Tr., at pp. 40-41; see also, Order, Rec. doc. 13733, at pp. 3-4 (acknowledging this concern) (Exhibit N) (Emphasis Added).

- <u>November 26, 2014</u>:  The Court issued an Order Denying the Motion for Reconsideration on Classification of Chronic Physical Conditions (Rec. doc.13733).

- <u>December 20, 2017</u>: This Court's concern that this "doesn't sound like much of a settlement" was recently confirmed in GRG's September 30, 2017 Status Report indicating that out of 37,320 claims, only 39 SPC B1 chronic injury claims were approved for the promised $60,700 recovery. (Exhibit J). This report represents completion of 99% of the total claims to be processed by GRG. According to the GRG Report:  "The five (5) most common material Defects identified during the Medical Record Review process, include 'that the date of diagnosis occurred on or after April 16, 2012'." (Exhibit J).  Notably, GRG stated in a footnote:

    This Defect results from the Court's July 23, 2014 Order (Rec. doc. 12862) holding that all conditions first diagnosed after April 16, 2012 must be classified as Later-Manifested Physical Conditions. (Exhibit J, p. 12, fn. 5.)

This confirms that the bait and switch by BP successfully resulted in unilaterally rewriting the MSA in such a way that, as Judge Barbier stated, did not represent the intent of the parties and was neither revealed nor approved at the Fairness Hearing. (Exhibit N).

"To safeguard the interests of absent class members, district courts must determine whether proposed class-action settlements are fair, adequate and reasonable." *Union Asset Mgmt. Holding A. G. v. Dell*, 669 F3d 632, 639 (5thCir. 2012). The terms of the class-action settlement under which these BELO cases are being prosecuted was never considered for fairness, adequacy and reasonableness by this Honorable Court since as Judge Barbier stated: "… [I]t's rather obvious to me **that the current interpretation of this agreement,** of the provisions we're talking about, **was never discussed with the Court.** It was never made clear in terms of the public hearings we had." Judge Barbier also acknowledged that he did not believe that this settlement was in keeping with the intent of the parties. The Court is right on both counts. Additionally, the class action experts who gave Declarations at the Fairness Hearing did so on the assumption that B1 chronic injuries would be compensated with the promised $60,700 settlement. (Exhibits K, L, M: Declarations of experts) At the time of the Final Hearing, BP had not yet unilaterally rewritten the MSA to deny hundreds of millions of dollars in recovery to B1 claimants

B1 injuries were the driving force and major selling point of the settlement to the injured workers, which motivated the clean-up workers to forego their excellent punitive damages claim for the egregious conduct of BP in exchange for a quick and efficient payment of $60,700 that would not require the clean-up workers to hire a lawyer. 39 B1 approvals out of 37,230 total claims is not what the Class Members were promised to induce them to accept the settlement and certainly does not reflect the intent of the parties. The total payout to the 37,230 claimants of $66,257,022.00 represents an average compensation of $1,779.67 per claimant. Among the

22,586 claimants who were approved for payment, the average payout was $2,933.54. (Exhibit J) The $66,257,022.00 total payout to claimants is hundreds of millions of dollars less than the clean-up workers were led to believe that they would receive in this settlement, when they waived their punitive damages claim against BP and agreed to accept a fast and efficient recovery of $60,700. These numbers render the $60,700 set forth in the Matrix, which was mailed to every claimant by GRG, a cruel joke on these chronically injured claimants. This result is absurd by any measure and if allowed to stand without the relief sought herein will result in the most unfair settlement in class action history.

Plaintiffs are not seeking to relitigate the propriety of the July 23, 2014 ruling by this Honorable Court. Plaintiffs are asking the Court, in light of the July 23, 2014 ruling that weighed so heavily in BP's favor by eliminating hundreds of millions of dollars from the settlement, to level the playing field by granting the relief sought by approximately 12,000 clean-up workers, who have not abandoned their hopes on achieving justice in this litigation. That relief would include prosecuting their claims without paying millions of dollars in filing fees; meeting the negotiated burdens of proof of causation for chronic conditions as negotiated by the parties and set out in the Matrix (Exhibit B) and; recognizing that the prosecution of a B1 BELO does not preclude the later filing of a cancer BELO and other latent diseases and disorders by the same party; and for such other relief which this Honorable Court may deem as fair and reasonable.

## IV. FACTUAL BACKGROUND

This Court's concern that the MSA is "no settlement at all" is well founded. During the Preliminary Fairness Hearing, both BP's counsel, Richard Godfrey and PSC counsel, Robin Greenwald, consistently and unambiguously represented to this Court that a BELO claim was

13

solely for LMPC claimants, who were individuals that had cancer that doesn't manifest until five

to ten years after exposure:

> GREENWALD: So the third benefit is what we call the Back-End Litigation
> Option for later-manifested illness. I mentioned before that unfortunately
> sometimes people feel healthy today, they had an acute symptom, it's gone,
> **but sadly five, ten years from now they get sick.** If that happens . . . they
> have not given up their right to sue BP for that later-manifested illness. (Rec.
> doc. 6395, Tr., p. 74).

> GODFREY: "I think Ms. Greenwald said it very, very well. . . [The MSA]
> preserves the rights of class members to seek compensation for later-
> manifested physical injuries. **Injuries that have not manifested
> themselves today,** that perhaps show up, we hope not, but show up five
> years from now or ten years from now.  (Tr., pp. 89 – 90). (Emphasis
> Added).

Again at the November 8, 2012 Final Fairness hearing, BP and the PSC represented to this

Court that BELO was for cancer-type cases that first manifested many years later and could not

have been known at the time of the settlement, so they would not be included in the Matrix:

> GREENWALD:  "Sixth, and finally, all class members can sue BP on
> what's call a BELO, a back-end litigation option, if they were to
> unfortunately experience a later manifested physical condition.  No one
> gives up the right down the road to seek compensation for that." (Tr., pp.
> 190 – 191).

> \* \* \*

> JUDGE BARBIER:  So, as I understand it, that the class, as we defined it,
> we're dealing with past exposures; and, if someone later -- if the exposure -
> - if the symptoms, **I guess, the injury, later manifests itself, and it's
> unknown now or could not be known now, then they have this back-
> end litigation option?**

> CABRASER:  That's right. . . (Tr., pp. 206).

> \* \* \*

GODFREY:   "[The settlement] provides generous benefits. We have uncapped compensation. As Judge Shushan has noted, meaningful settlement benefits for both acute and chronic conditions. ...
When you combine that with the Periodic Medical Consultation Program, the people who are potential victims have the opportunity to learn whether or not there is going to be some condition that they are not aware of that they want to attribute. Can't say that that's something -- I certainly do not hope that takes place. It's unusual, but it was a benefit that was provided for....Then the back-end litigation opt-out, about which we've spoken." (Tr., pp. 215 – 216).

GREENWALD:   **The back-end litigation option is designed for people who get sick 5, 10, 15, 20 years from now.** . . So to the extent -- Mr. McKee put up a slide . . . that the latency period was between 10 and 40 years. **Well, that can't be in the matrix because nobody is settling that now.** That's the whole point. If you have kidney cancer down the road or whatever other latent injury or later-manifested condition you have, that is what BELO is about." (Tr., at pp. 255 – 256).

On January 11, 2013, the Court issued its Order Granting Final Approval of the Medical Benefits Settlement and Confirming Certification of the MBS Class, which included the Drafters' representations as expressed during the Final Fairness Hearing. (Exhibit O). Notably, in its Order, the Court describes in detail the proof for recovery under the Matrix, which is the "framework for determining compensation eligibility and amounts," including the three categories of B1 Chronic claims (ocular, respirator and dermal). (Rec. doc. 8217, pp. 9-11). **Nowhere is a diagnosis deadline of April 16, 2012 mentioned.** Under the Court's final approval Order, B1 claimants were only required to attest in a Declaration that their symptoms manifested within 24-72 hours of exposure in order to recover under the Matrix. The Court deemed this fair.

More than 16 months after the Final Fairness Hearing on the MSA, BP pulled the classic "bait and switch" by adding language to the Matrix that B1 chronic conditions must be diagnosed before April 16, 2012 in order to recover under the Matrix. This unapproved verbiage and unilateral rewriting of the MSA left the Class Members in an untenable position of having given

up their right to recover punitive damages and having an additional burden of meeting a very high cancer burden of proof to recovery on a simple personal injury claim. (Rec. doc. 13179).

This unilateral rewriting by BP of the agreed terms of the MSA breached the basic norms of fairness and notice to these plaintiffs in failing to reflect the intent of the parties. **As Judge Barbier stated: "that's what's causing me problems, I guess, in thinking about this. It seems like it's going to result in something I don't believe either party intended."** Tr., pp. 40-41. (Exhibit G)

In the case at bar, permitting BP to expand the MSA terms to essentially rewrite the agreement, which had been universally sold to and relied upon by the BP clean-up workers by all concerned would run contrary to the basic norms of fairness and notice.

This occurred because the Defendants claimed, contrary to all prior representations to this Honorable Court, that all B1 Chronic SPCs (not just cancer and other diseases unknown at the time of the settlement) that were diagnosed after April 16, 2012 are actually LMPCs. As such, a Class Member must file a BELO lawsuit to recover for a chronic injury. At the time, neither the Court nor the parties (BP and the PSC) considered the proof requirement for this newly created category of non-cancer B1 BELOs once a lawsuit is filed. (Rec. doc. 12862).

BP's new interpretation of this provision (that any condition not diagnosed by April 16, 2012 was an LMPC) was a source of consternation to this Court, because it was not what the BP and the PSC presented to the Court at the Fairness Hearing.

The Court's July 23, 2014 Order agreeing with BP's "switched" interpretation of the BELO option, thereby created a new category of B1 BELO claims separate and distinct from the cancer BELO claims for which the BELO provisions were originally intended. The distinction between

the two separate categories of BELO claims is important due to the different standards of proof for each.

There is also no guidance as to whether filing a B1 BELO precludes the filing of a separate Cancer BELO, which would contradict the clear intent expressed by the parties at the Preliminary and Final Fairness Hearings quoted above.

## V. ARGUMENT

**A.    B1 BELO Plaintiffs Have Never Left the Jurisdiction of This Honorable Court And Should Not Be Required To Pay Filing Fees.**

Plaintiffs and other Class Members were lead to believe that they were giving up their very substantial and important right to sue BP for punitive damages in exchange for a swift and efficient resolution of their B1 claims under the Matrix for $60,700.  Instead, under the new interpretation of the MSA they have given up this legal right in exchange for the duty to file thousands of separate lawsuits in federal court and pursue expensive trials to seek even a scintilla of justice.   Class members with chronic conditions were also told that this was a very simple administrative procedure to collect $60,700 under the SPC Matrix and it was not necessary to hire a lawyer to prosecute their claim. Now they find that they have to hire a trial lawyer and very expensive expert witnesses and pay the costs of a federal trial just to get their claims heard.  The Class Members were in a much stronger financial and economic position without the MSA.  Many would have opted out of the class had BP made it clear that Class Members would not be entitled to compensation for chronic B1 conditions under the Matrix if they were not diagnosed before April 16, 2012, which was two days before the MSA was executed and filed with the Court.  More claimants would have opted out had they been told they would have to prosecute a federal lawsuit for recovery of chronic B1 claims.  It should be noted that, given all of the lengthy legal arguments on the lack of such a provision amongst counsel in this Court, if legal counsel disagree on the legal

17

technicality of whether such a precondition exists under the MSA (based on the definition of LMPC) then how was the typical clean-up worker expected to understand there was such a date restriction in order to recover. Additionally, the date for obtaining a written diagnosis, April 16, 2012 expired 2 days before the signing of the Master settlement agreement on April 18, 2012, rendering timely performance by clean-up workers virtually impossible. Under BP's new interpretation of LMPC, the overwhelming majority of clean-up workers were barred from recovery of a B1 chronic SPC claim ab initio, which accounts for the meager recovery of only 39 B1 recoveries in 37,523 claims.

Plaintiffs remain as Class Members and are prosecuting their cases under the terms of the MSA. As such, they are acting under the continuing jurisdiction of this Honorable Court. They have never left this Court and should not have to pay a filing fee to prosecute their case in a court that they have never left. Additionally, the claimants have suffered extreme financial burdens as a result of BP's successful bait and switch scheme and requiring 12,000 claimants to pay $4,800,000 in filing fees tilts the playing field even more unfairly in BP's favor. Claimants respectfully request that this Honorable Court advise the Clerk of the Court that it is not necessary to pay a filing fee to prosecute a B1 BELO case.

**B.    Plaintiffs Seek Acknowledgment That The Court's Order Of July 23, 2014 Effectively Created Two Categories Of BELO Claims.**

Presently, neither the MSA nor the BELO CMO make any distinction between Cancer BELOs and B1 BELOs. A separate category of B1 BELOs was created by the Court's July 23, 2014 Order that all chronic B1 SPCs first diagnosed after April 16, 2012 are treated as LMPCs. (Rec. doc. 13719). Thus, there are now two separate categories of BELO plaintiffs:

a)      Cancer BELO plaintiffs for whom the BELO lawsuit for LMPC was originally intended due to the latency period for cancer, and other diseases and disorders which would not have manifested within 24-72 hours after exposure as required for recovery under the Matrix; and

b)      B1 BELO plaintiffs, who are non-Cancer plaintiffs with chronic SPCs that manifested within 24-72 hours of exposure as required under the Matrix, but who were denied recovery under the Matrix because they were diagnosed after April 16, 2012.

Plaintiffs were at all times prior to the Final Fairness Hearing led by all parties to believe that meeting the standard of proof set forth in the Matrix would lead to compensation as B1 Level Specified Physical Conditions pursuant to the settlement terms set forth in the settlement Matrix. This was verified to the Plaintiffs by the evidence presented to the Court by all parties at the Fairness Hearing and by this Court's January 11, 2013 Order granting final approval of the MSA. (Exhibit G) (Exhibit O).   At no time leading up to or during the Fairness Hearing did BP advise either the Court or the injured Plaintiffs that in order to recover under this "settlement" for the chronic injuries specified in the settlement Matrix, Plaintiffs would have to file separate individual federal lawsuits, pay a new filing fee to remain in Court and meet a cancer burden of proof to recover for a designated non-cancerous chronic Matrix injury that manifested within 24-72 hours of exposure. It is respectfully submitted that if BP had timely raised the issue, the Court would never have approved such an inherently unfair settlement.

Pursuant to this Court's subsequent Order on July 23, 2014 (over 18 months after the Final Fairness Hearing on the MSA and this Court's Order granting final approval thereon), the settlement claims of nearly all potential B1 claimants under the Matrix were effectively wiped out; and instead, these B1 claimants are required to file individual BELO lawsuits in order to recover - simply because they were diagnosed after April 16, 2012. (Rec. doc. 13179).   As agreed at the

Fairness Hearing, the BELO provisions of the MSA were intended for cancer or other diseases which would not manifest until years after exposure (hence the term "Later-Manifested Physical Condition").

Plaintiffs herein experienced symptoms within 24-72 hours of exposure and the listed injuries that were required for B1 recoveries were known immediately. The B1 injuries herein were not later manifesting. At no time during the Fairness Hearing on November 8, 2012 did anyone advise the Plaintiffs that unless they already had a diagnosis (and testing for respiratory conditions) by a qualified medical professional of a B1 chronic injury in writing prior to April 16, 2012 they would have to file an individual federal lawsuit to recover under this "settlement." As Judge Barbier recognized, **"I mean, it doesn't sound like much of a settlement. Frankly, I've never heard of a settlement which requires you to file another lawsuit."** (Emphasis added, Tr., pp. 40-41).

Judge Barbier was correct in that it wasn't much of a settlement. In fact it was no settlement at all. This was egregiously unfair because the MSA, which established the terms of the "settlement" was not signed and filed with the Court until April 18, 2012, two days after the diagnosis deadline. Thousands of Plaintiffs were barred from their "settlement" ab initio because they were not advised of the diagnosis deadline until two days after it expired, which accounts for only 39 B1 recoveries out 37,320 claims. In sum, the settlement is no settlement at all for B1 Class Members who were not diagnosed before April 16, 2012. In terms of fairness, this case is unrivaled as the most unfair "settlement" in class action litigation history since BP got fairness approval on one settlement as bait for Class members to give up rights to punitive damages and then successfully switched to the current "settlement" without examination of the absurdities of this "settlement" in a new fairness hearing.

Because B1 and Cancer BELOs have different standards of proof discussed *infra* at IV.C.

there needs to be recognition of, and standards set for, these two very different types of BELO

cases.

**C.    Cancer BELO and B1 BELO Claims Require Different Burdens Of Proof as Established in the MSA Settlement Matrix.**

Pursuant to the MSA, the only issues, elements and proofs that may be litigated at trial in

this BELO lawsuit are the following:

> (i) the fact of diagnosis; (ii) the amount and location of oil, and other substances released from the MC252 Well and/or the *Deepwater Horizon*, and/or dispersants and/or decontaminants used in connection with the Response Activities, and the timing thereof; (iii) **the level and duration** of Plaintiff's exposure to oil, other hydrocarbons and substances released from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the Response Activities, and the timing thereof; (iv) legal causation; (v) any alternative causes for Plaintiff's Later-Manifested Physical Condition; and (vi) the amount, if any, of compensatory damages to which Plaintiff is entitled. (MSA, § VIII(G)(3)(a), emphasis added).

The BELO CMO incorporates this language from the MSA, suggesting that all BELO

plaintiffs, including B1 BELO plaintiffs with claims such as chronic rhinosinusitis, are required to

prove "the level and duration" of exposure. (Exhibit D) This element ("level and duration" or

"dose") is a toxic tort burden of proof.  It was intended for true cancer-related BELO claims under

the MSA and serves no purpose or meaning for the B1 BELO category of claims created by this

Court.

As phrased, the BELO CMO, may mistakenly require Class Members to establish a B1

BELO claiming chronic dermal, ocular or respiratory conditions under a toxic tort causation

standard, rather than the standard set forth in the MSA Matrix specifically to establish proof

requirements to recover for a chronic injury. Requiring toxic tort causation for simple chronic injuries would be an unconscionable burden to visit on these seriously injured Plaintiffs.

Therefore, Plaintiffs request the Court to modify, amend and/or clarify that B1 BELOs do not have to establish a higher toxic tort burden of proof under the MSA as incorporated in the BELO CMO but are required to prove the burden of proof as set out in the Matrix under **Proof** for **Compensation for Chronic Conditions.** (Exhibit B)

**D.     The Filing of a B1 BELO Claim Does Not Preclude the Subsequent Filing of a Cancer BELO Claim.**

Class Members also need clarification from the Court that since there are now two separate and distinct types of BELO claims, B1 BELOs and Cancer BELOs, these are two separate and distinct causes of action, each of which provides a separate basis for recovery for qualified Claimants. Therefore, Plaintiffs respectfully request that the Court clarify that prosecution and recovery for a B1 chronic BELO does not preclude separate prosecution for a Cancer BELO by the same claimant in subsequent litigation.

As both BP and the PSC acknowledged at the preliminary and final approval hearings, cancer has a long latency period.  Therefore, some of the approximately 12,000 B1 BELO plaintiffs filing individual lawsuits in this Court may also be diagnosed with cancer at a later date as a result of their exposure during the Oil Spill.  They should not, merely by virtue of filing a B1 BELO lawsuit and/or recovering for chronic skin, ocular or respiratory conditions, be precluded from subsequently seeking damages should they later be diagnosed with cancer.  As of this date, the Court has not provided any guidance on this issue.

## VI.   CONCLUSION

These Plaintiffs now seek an Amendment or Modification of the BELO CMO. This Court is in a position to clarify these issues, while reinstating some level of fairness and a level playing field for these litigants, and enabling these B1 BELO cases to proceed in the most judicially efficient and economic manner in the pursuit of justice.

The court's ruling on the issue of later manifested physical condition has resulted in an absurd result which may now be demonstrated to the court: 39 B1 $60,700 recoveries out of 37,230 claims, representing a loss of hundreds of millions of dollars to the claimants. (Exhibit J: GRG Status Report, pp. 7- 9). This is not the anticipated result that brought praise of the settlement from the "Fairness experts" at the Fairness hearing. This Motion offers the Court the opportunity to level the playing field for the parties by permitting the claimants to file their cases without spending millions of dollars in filing fees; by permitting the trial of the chronic injury cases based on the reasonable burden of proof that was negotiated by the parties and approved by the Court and by acknowledging that the prosecution of a B1 BELO case does not preclude later prosecution of a Cancer BELO case by the same claimant. This is significant since BELO recovery was clearly intended to provide a remedy for cancer, which is now beginning to manifest in Plaintiffs, seven years post exposure.

For the foregoing reasons, Plaintiffs BOBBY LYNN BRADBERRY, JAMES WILBORN BRADFORD, IV (E.D. La. Case No. 2:17-cv-12065, WALTER DARIO CASTRO (E.D. La. Case No. 2:17-cv-12018) and JASON COLTON (E.D. La. Case No. 2:17-cv-12017) respectfully request entry of the following by this Honorable Court:

1. That inasmuch as the Plaintiffs in this litigation are class members in the currently pending MDL No. 2179, which is in the continuing jurisdiction of this Honorable Court, it is not necessary for Plaintiffs to pay a filing fee in order to initiate their BELO claims in this Court.

2. The BELO cases are comprised of two distinct categories: (1) B1 BELOs and (2) Cancer BELOs.

3. The causation burden of proof for Cancer BELO cases is correctly set out in the CMO. The causation burden for chronic conditions is correctly set out in the Master Settlement Agreement Matrix under Proof for Compensation for Chronic Conditions. Other non-cancer injuries or conditions other than dermal, ocular, or respiratory may be proven under personal injury standards for burden of proof.

4. The filing of a B1 BELO claim does not preclude the subsequent filing of a Cancer BELO claim.

Respectfully submitted,


_Howard L. Nations_
Howard L. Nations
Texas State Bar Number 14823000
The Nations Law Firm
3131 Briarpark Dr., Suite 208
Houston, Texas  77042
(713) 807-8400 (Phone)
(713) 807-8423 (Fax)
COUNSEL FOR PLAINTIFFS BOBBY LYNN
BRADBERRY, JR. and WALTER DARIO CASTRO


_Frank J. D'Amico, Jr._
Frank J. D'Amico, Jr.
Louisiana State Bar Number
The Law Offices of Frank J. D'Amico, Jr.
4608 Rye St
Metairie, Louisiana 70006
(504) 267-9926 (Phone)
(504) 525-9522 (Fax)
COUNSEL FOR PLAINTIFF, JAMES WILBORN
BRADFORD IV




R. James Amaro
Texas State Bar Number
Amaro Law Firm
2500 E TC Jester Blvd., Suite 525
Houston, Texas  77008
(713) 864-1941 (Phone)
(713) 864-1942 (Fax)
COUNSEL FOR PLAINTIFF, JASON COLTON

## CERTIFICATION OF CONFERENCE

Pursuant to Section IV (2) of the BELO CMO, undersigned Counsel states that we have confer in good faith with Defendant's counsel, Kevin Hodges, Williams & Connolly, LLP.  No agreement was reached regarding Plaintiffs' request under this Motion.

Howard L. Nations

## CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that I have on this 2nd day of February, 2018, I filed electronically the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

Howard L. Nations