# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * | **MDL NO. 2179**<br><br>**SECTION: J**<br><br><br>**HONORABLE CARL J. BARBIER**<br><br>**MAGISTRATE JUDGE SHUSHAN** |

| | | |
|---|---|---|
| Plaisance, *et al.*, individually and on behalf of the Medical Benefits Settlement Class,<br><br>    Plaintiffs,<br><br>v.<br><br>BP Exploration & Production Inc., *et al.*,<br><br>    Defendants. | * * * * * * * * * * * | **NO. 12-CV-968**<br><br>**SECTION: J**<br><br><br>**HONORABLE CARL J. BARBIER**<br><br>**MAGISTRATE JUDGE SHUSHAN** |

## NOTICE OF FILING OF THE MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT AS AMENDED ON MAY 1, 2012, AND <u>AS PRELIMINARILY APPROVED BY THE COURT ON MAY 2, 2012</u>

**PLEASE TAKE NOTICE** that the Medical Benefits Class Representatives and BP Exploration & Production Inc. and BP America Production Company hereby file into the record the Medical Benefits Class Action Settlement Agreement as amended on May 1, 2012, and as preliminarily approved by the Court on May 2, 2012.

May 3, 2012                                        Respectfully submitted,


*/s/ Stephen J. Herman*                            */s/ James Parkerson Roy*
Stephen J. Herman, La. Bar No. 23129              James Parkerson Roy, La. Bar No. 11511
HERMAN HERMAN KATZ & COTLAR                        DOMENGEAUX WRIGHT ROY &
LLP                                                EDWARDS LLC
820 O'Keefe Avenue                                 556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113                       Lafayette, Louisiana 70501
Telephone: (504) 581-4892                          Telephone: (337) 233-3033
Fax No. (504) 569-6024                             Fax No. (337) 233-2796
E-Mail: sherman@hhkc.com                           E-Mail: jimr@wrightroy.com

*Medical Benefits Class Counsel and Lead*          *Medical Benefits Class Counsel and Lead*
*Class Counsel*                                    *Class Counsel*


## MEDICAL BENEFITS CLASS COUNSEL

Joseph F. Rice                                     Conrad S.P. "Duke" Williams
MOTLEY RICE LLC                                    WILLIAMS LAW GROUP
28 Bridgeside Blvd.                                435 Corporate Drive, Suite 101
Mount Pleasant, SC 29464                           Maison Grand Caillou
Office: (843) 216-9159                             Houma, LA 70360
Telefax: (843) 216-9290                            Office: (985) 876-7595
E-Mail: jrice@motleyrice.com                       Telefax: (985) 876-7594
                                                   E-Mail: duke@williamslawgroup.org


Brian H. Barr                                      Robin L. Greenwald
LEVIN, PAPANTONIO, THOMAS,                         WEITZ & LUXENBERG, PC
MITCHELL, ECHSNER & PROCTOR, PA                    700 Broadway
316 South Baylen St., Suite 600                    New York, NY 10003
Pensacola, FL 32502-5996                           Office: (212) 558-5802
Office: (850) 435-7045                             Telefax: (212) 344-5461
Telefax: (850) 436-6187                            E-Mail: rgreenwald@weitzlux.com
E-Mail: bbarr@levinlaw.com


2

Jeffrey A. Breit
BREIT DRESCHER IMPREVENTO &
WALKER, P.C.
999 Waterside Drive, Suite 1000
Norfolk, VA 23510
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX 77079
Telephone: (281) 366-2000
Telefax: (312) 862-2200

Ellen K. Reisman
ARNOLD & PORTER LLP
777 South Figueroa Street
Los Angeles, CA 90017-5844

James P. Joseph
Ethan P. Greene
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004-1206

***Of Counsel***

*/s/ Richard C. Godfrey, P.C.* .
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
Elizabeth A. Larsen
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654

*/s/ Don K. Haycraft* .
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-5985
Telefax: (202) 662-6291

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.***
***AND BP AMERICA PRODUCTION COMPANY***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 3rd day of May, 2012.

/s/ Don K. Haycraft

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | * | SECTION: J |
| | * | |
| | * | |
| | * | HONORABLE CARL J. BARBIER |
| | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |
| | * | |
| | * | |

| | | |
|---|---|---|
| Plaisance, *et al.*, individually and on behalf of the putative Medical Benefits Settlement Class, | * * * | No. 12-CV-968 |
| | * | SECTION: J |
| **Plaintiffs,** | * | |
| | * | HONORABLE CARL J. BARBIER |
| v. | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |
| BP Exploration & Production Inc., *et al.*, | * * | |
| | * | |
| **Defendants.** | * | |
| | * | |
| | * | |

*DEEPWATER HORIZON* MEDICAL BENEFITS CLASS ACTION
SETTLEMENT AGREEMENT, as Amended on May 1, 2012

# TABLE OF CONTENTS

**Page**

PREAMBLE ..................................................................................................................1

RECITALS ...................................................................................................................1

I.      CLASS DEFINITION.............................................................................6

II.      DEFINITIONS ........................................................................................8

III.      AUTHORIZED REPRESENTATIVES, COUNSEL, AND GUARDIAN AD LITEM ....................................................................................................30

IV.      SETTLEMENT BENEFITS FOR MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS..............................................................................32

V.      CLAIMS SUBMISSION, CURE, AND REVIEW PROCESS ...................................34

VI.      COMPENSATION FOR SPECIFIED PHYSICAL CONDITIONS............................41

VII.      PERIODIC MEDICAL CONSULTATION PROGRAM ............................................45

VIII.      BACK-END LITIGATION OPTION FOR LATER-MANIFESTED PHYSICAL CONDITIONS............................................................................57

IX.      GULF REGION HEALTH OUTREACH PROGRAM...............................................71

X.      PRELIMINARY APPROVAL BY THE COURT AND CLASS CERTIFICATION .......................................................................................87

XI.      NOTICE, OPT OUT, AND OBJECTIONS..................................................................90

XII.      STAY OR ADJOURNMENT OF ALL PROCEEDINGS ...........................................97

XIII.      COMMUNICATIONS TO THE PUBLIC ...................................................................98

XIV.      TERMINATION......................................................................................................99

XV.      PRESERVATION OF CONFIDENTIAL DOCUMENTS ........................................102

XVI.      RELEASE ...........................................................................................................103

XVII.      OTHER PROTECTIONS ........................................................................................112

XVIII.      FINAL ORDER AND JUDGMENT AND DISMISSAL WITH PREJUDICE.........118

XIX.      CLASS COUNSEL FEES AND COSTS ..................................................................121

# TABLE OF CONTENTS

## *(Continued)*

XX.    ENFORCEABILITY OF MEDICAL BENEFITS CLASS ACTION SETTLEMENT AND DISMISSAL OF CLAIMS ....................................................122

XXI.    CLAIMS ADMINISTRATION ..................................................................125

XXII.    BP PAYMENT OBLIGATIONS.................................................................155

XXIII.    INDEMNIFICATION................................................................................168

XXIV.    DENIAL OF WRONGDOING...................................................................170

XXV.    REPRESENTATIONS AND WARRANTIES..........................................172

XXVI.    COOPERATION .......................................................................................174

XXVII.    CONTINUING JURISDICTION ..............................................................176

XXVIII.    ROLE OF MEDICAL BENEFITS CLASS COUNSEL ...........................177

XXIX.    RESOLUTION OF LIENS AND SUBROGATION INTERESTS............178

XXX.    MISCELLANEOUS PROVISIONS ..........................................................188

# MEDICAL BENEFITS CLASS ACTION
# SETTLEMENT AGREEMENT

## (subject to COURT approval)

## PREAMBLE

This MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT, dated as of April 18, 2012, and as amended from time to time ("MEDICAL SETTLEMENT AGREEMENT"), is made and entered into by and among defendants BP Exploration & Production Inc. and BP America Production Company (collectively "BP"), by and through their attorneys, and the MEDICAL BENEFITS CLASS REPRESENTATIVES, individually and on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS, by and through the MEDICAL BENEFITS CLASS COUNSEL. This MEDICAL SETTLEMENT AGREEMENT is intended by the PARTIES fully, finally, and forever to resolve, discharge, and settle all RELEASED CLAIMS against the RELEASED PARTIES, as set forth below, subject to review and approval by the COURT.[1]

## RECITALS

A. BP Exploration & Production Inc. and BP America Production Company are corporations organized under the laws of the State of Delaware and are engaged in the business of oil and gas exploration, production, and/or development.

B. The MEDICAL BENEFITS CLASS REPRESENTATIVES are the named plaintiffs in the MEDICAL CLASS ACTION COMPLAINT in the action entitled *Plaisance, et al. v. BP Exploration & Production Inc., et al.*, filed on April 16, 2012, in the COURT.

---

[1] Terms that appear in capital letters are defined terms, and such definitions apply throughout this MEDICAL SETTLEMENT AGREEMENT.

C.     The MEDICAL BENEFITS CLASS REPRESENTATIVES allege in the
MEDICAL CLASS ACTION COMPLAINT claims for compensatory and punitive damages and
declaratory relief, brought under federal and maritime law for negligence, negligence *per se*,
gross negligence, willful misconduct, and strict liability for personal injury and/or bodily injury,
later-manifested injury, progression of existing injury, damage, disease, mental or physical pain
or suffering, emotional or mental harm or anguish.   The MEDICAL BENEFITS CLASS
REPRESENTATIVES believe that they would prevail if their claims were litigated to a
conclusion.

D.     BP denies the MEDICAL BENEFITS CLASS REPRESENTATIVES' allegations
and has raised various legal, affirmative, and other defenses.   BP denies any liability to the
MEDICAL BENEFITS CLASS REPRESENTATIVES, the MEDICAL BENEFITS
SETTLEMENT CLASS, and any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER
for any claims, causes of action, costs, expenses, attorneys' fees, or damages of any kind, and
believes that it would prevail if such claims were litigated to a conclusion.

E.     The PARTIES have engaged in, and continue to engage in, substantial discovery
and fact gathering to evaluate the merits of the MEDICAL BENEFITS CLASS
REPRESENTATIVES' claims and BP'S defenses.   At the time of the execution of this
MEDICAL SETTLEMENT AGREEMENT, such discovery and fact gathering was and is
ongoing and not yet completed.   Nevertheless, the PARTIES have investigated the facts and
analyzed the legal issues surrounding the MEDICAL BENEFITS CLASS
REPRESENTATIVES' claims and BP'S defenses.

F.     After careful consideration, the MEDICAL BENEFITS CLASS
REPRESENTATIVES and MEDICAL BENEFITS CLASS COUNSEL have concluded that it is

2

in the best interests of the MEDICAL BENEFITS CLASS REPRESENTATIVES and the MEDICAL BENEFITS SETTLEMENT CLASS to compromise and settle all RELEASED CLAIMS asserted by the MEDICAL BENEFITS SETTLEMENT CLASS against the RELEASED PARTIES in consideration of the terms and benefits of this MEDICAL SETTLEMENT AGREEMENT.  After arms' length negotiations with BP'S COUNSEL, the MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS CLASS COUNSEL have considered, among other things:  (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the litigation and amount of discovery completed; (3) the potential for the MEDICAL BENEFITS CLASS REPRESENTATIVES and the MEDICAL BENEFITS SETTLEMENT CLASS or BP to prevail on the merits; and (4) the range of possible recovery, and have determined this MEDICAL SETTLEMENT AGREEMENT is fair, reasonable, adequate, and in the best interests of the MEDICAL BENEFITS CLASS REPRESENTATIVES and the MEDICAL BENEFITS SETTLEMENT CLASS.

G.      BP has concluded, in light of the costs, risks, burden, and delay of litigation, that this MEDICAL BENEFITS CLASS ACTION SETTLEMENT in this complex putative class action litigation is appropriate.  In this regard, BP and BP'S COUNSEL agree that this settlement is a fair, reasonable, and adequate resolution of the RELEASED CLAIMS.  BP reached this conclusion after considering the factual and legal issues relating to the *DEEPWATER HORIZON* INCIDENT, the substantial benefits of this MEDICAL BENEFITS CLASS ACTION SETTLEMENT, the expense that would be necessary to defend claims by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS through trial and any appeals that might be taken, the benefits of disposing of protracted and complex litigation, and the desire of BP to

conduct its business unhampered by the distraction of continued litigation over RELEASED CLAIMS.

H.     The PARTIES desire to settle, compromise, and resolve fully all claims falling within the definition of RELEASED CLAIMS that were brought or could have been brought by the MEDICAL BENEFITS CLASS REPRESENTATIVES or any member of the MEDICAL BENEFITS SETTLEMENT CLASS in the COURT, in any other federal court, in any state court, or in any other tribunal or forum.

I.     The PARTIES desire and intend to seek COURT review and approval of the settlement set forth in this MEDICAL SETTLEMENT AGREEMENT, and, upon COURT approval, the PARTIES intend to seek a FINAL ORDER AND JUDGMENT from the COURT dismissing with prejudice the MEDICAL CLASS ACTION COMPLAINT as to all RELEASED PARTIES, ordering the dismissal of all RELEASED CLAIMS of the MEDICAL BENEFITS CLASS REPRESENTATIVES, the MEDICAL BENEFITS SETTLEMENT CLASS, and the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and ordering the dismissal with prejudice of RELATED CLAIMS.

NOW THEREFORE, it is agreed that the foregoing recitals are hereby expressly incorporated into this MEDICAL SETTLEMENT AGREEMENT and made a part hereof and further, that in consideration of the agreements, promises, and mutual covenants set forth in this MEDICAL SETTLEMENT AGREEMENT, including the RELEASE in Section XVI, the entry by the COURT of a FINAL ORDER AND JUDGMENT dismissing the MEDICAL CLASS ACTION COMPLAINT with prejudice and approving the terms and conditions of the settlement as set forth in this MEDICAL SETTLEMENT AGREEMENT, and for such other good and

valuable consideration, the receipt and sufficiency of which are hereby acknowledged, this action shall be settled and compromised under the following terms and conditions:

# I.     CLASS DEFINITION

A.     MEDICAL BENEFITS SETTLEMENT CLASS shall mean all NATURAL PERSONS who resided in the United States as of April 16, 2012, and who:

1)     Worked as CLEAN-UP WORKERS at any time between April 20, 2010, and April 16, 2012; or

2)     Resided in ZONE A for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("ZONE A RESIDENT"), and developed one or more SPECIFIED PHYSICAL CONDITIONS between April 20, 2010, and September 30, 2010; or

3)     Resided in ZONE B for some time on each of at least sixty days between April 20, 2010, and December 31, 2010 ("ZONE B RESIDENT").

B.     Excluded from the MEDICAL BENEFITS SETTLEMENT CLASS are the following:

1)     Any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who timely and properly elects to be excluded from the MEDICAL BENEFITS SETTLEMENT CLASS ("OPT OUTS");

2)     Any person employed by BP ENTITIES at any time between April 20, 2010, and April 16, 2012;

3)     The COURT, including any sitting judges on the United States District Court for the Eastern District of Louisiana and their law clerks serving on or after April 20, 2010, through April 16, 2012;

4)     Any person who was on the *Deepwater Horizon* on April 20, 2010;

5)     Any person who has previously asserted and released his or her claims against BP relating to any illnesses or injuries allegedly suffered as a result of exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *Deepwater*

6

*Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, including those persons who have provided final releases to the GCCF in exchange for payment from the GCCF for such illnesses or injuries; and

6) Any person who is a ZONE A RESIDENT or a ZONE B RESIDENT, but not a CLEAN-UP WORKER, and who worked in one or more of the following capacities for a cumulative duration of at least five years prior to April 20, 2010:

a) Cleaning or reconditioning of the tanks or holds of barges, tankers or lighters, tanker trucks, tanker rail cars, or any other tank (stationary or mobile) used to hold hydrocarbons or petrochemicals;

b) Storage, handling, or cleaning of naturally occurring radioactive materials ("NORMs"), including radionuclides;

c) Storage, transportation, distribution, or dispensing of gasoline, diesel, jet fuel, kerosene, motor fuels, or other hydrocarbon-based fuels at any bulk storage facility (not including gas stations or gas station convenience stores), bulk plant, or bulk terminal facility that stores hydrocarbons or petrochemicals;

d) Loading or unloading bulk crude oil or petroleum hydrocarbons onto or from trucks, ships, barges, or other vessels; or

e) Tar distillation.

## II.   **DEFINITIONS**

For purposes of this MEDICAL SETTLEMENT AGREEMENT, the following terms (designated by capitalization throughout this MEDICAL SETTLEMENT AGREEMENT) shall have the meanings set forth below:

A.      ACTUAL HOSPITAL EXPENSES shall mean those expenses incurred by or on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for treatment while hospitalized for an ACUTE CONDITION or CHRONIC CONDITION where the hospitalization occurred within the timeframe set forth on the SPECIFIED PHYSICAL CONDITIONS MATRIX; provided, however, that where the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was diagnosed with or treated for a condition other than an ACUTE CONDITION or CHRONIC CONDITION, the costs incurred in connection with such diagnosis or treatment are not ACTUAL HOSPITAL EXPENSES.  In no case shall ACTUAL HOSPITAL EXPENSES exceed the actual amount paid for the medical item, service, and/or prescription drug by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, any insurer, GOVERNMENT PAYER, or OTHER PAYER/PROVIDER as satisfaction in full for the claim, whether under a negotiated payment rate or otherwise.

B.      ACUTE CONDITION shall mean those SPECIFIED PHYSICAL CONDITIONS compensable on levels A1, A2, A3, and A4 of the SPECIFIED PHYSICAL CONDITIONS MATRIX.

C.      ADMINISTRATIVE BUDGET shall mean the administrative expense budget to be developed by the CLAIMS ADMINISTRATOR.

D.      ADMINISTRATIVE EXPENSES shall mean the SETTLEMENT COSTS described in Section XXII.D.3.

E.      ADMINISTRATIVE FUND shall mean the fund described in Section XXII.D.3.

8

F.      AFFILIATE shall mean with respect to any person or entity, any other person or entity that directly, or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such person or entity.

G.      AUTHORIZED REPRESENTATIVE shall mean, as to a NATURAL PERSON who is (1) a minor, (2) lacking capacity or incompetent, or (3) an estate of a deceased human being, that NATURAL PERSON'S guardian, conservator, tutor, executor, personal representative, administrator, or other representative authorized under or by operation of applicable law to protect the rights and interests of that NATURAL PERSON.

H.      BACK-END LITIGATION OPTION shall mean the right of certain MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS to bring a lawsuit against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION, subject to the terms and conditions of Section VIII.

I.      BACK-END LITIGATION OPTION DEFENDANT shall mean a BP defendant (i) that  a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER has named in a NOTICE OF INTENT TO SUE,  (ii) that either does not exercise its option to mediate or exercises its option to mediate and the mediation does not resolve the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim, and (iii) that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER names as a defendant in a BACK-END LITIGATION OPTION LAWSUIT.

J.      BACK-END LITIGATION OPTION LAWSUIT shall mean that lawsuit brought by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION, in accordance with the provisions of Section VIII.

9

K.      BP shall mean BP Exploration & Production Inc. and BP America Production Company and their respective successors or assigns.

L.      BP ENTITIES shall mean BP Exploration & Production Inc., BP America Production Company, BP America Inc., BP Company North America Inc., BP Corporation North America Inc., BP Corporation North America Inc. Savings Plan Investment Oversight Committee, BP Energy Company, BP Exploration (Alaska) Inc., BP Global Special Products (America) Inc., BP Holdings North America Limited, BP p.l.c., BP Products North America Inc., and each of their respective direct or indirect parents, subsidiaries and subsidiary undertakings (as those terms are defined in the U.K. Companies Act 2006), AFFILIATES, divisions, and business units.

M.      BP'S COUNSEL shall mean Kirkland & Ellis LLP, Arnold & Porter LLP, and Liskow & Lewis.

N.      CHECK CASHING ARRANGEMENT shall mean the agreement between the LEAD PAYING AGENT and the GULF REGION BANK that provides that checks drawn on the GENERAL MEDICAL CLAIMS FUND will be eligible to be cashed or deposited in branches of the GULF REGION BANK, as described in Section XXII.N.

O.      CHRONIC   CONDITION   shall   mean   those   SPECIFIED   PHYSICAL CONDITIONS compensable on level B1 of the SPECIFIED PHYSICAL CONDITIONS MATRIX.

P.      CLAIMS ADMINISTRATOR shall mean that person or entity selected by the MEDICAL BENEFITS CLASS COUNSEL and BP and approved by the COURT who shall implement and administer this MEDICAL BENEFITS CLASS ACTION SETTLEMENT according to its terms and procedures for the benefit of the MEDICAL BENEFITS

10

SETTLEMENT CLASS, including: the collection, identification, and tabulation of any OPT OUTS; the transmission to BP'S COUNSEL and the MEDICAL BENEFITS CLASS COUNSEL of the identity and number of OPT OUTS; processing all claims for compensation for SPECIFIED PHYSICAL CONDITIONS and paying all qualifying claims; processing all claims for participation in the PERIODIC MEDICAL CONSULTATION PROGRAM and administering that program; performing administrative tasks relating to the BACK-END LITIGATION OPTION and related mediations; administering the GULF REGION HEALTH OUTREACH PROGRAM; making periodic reports to the COURT, BP'S COUNSEL, and MEDICAL BENEFITS CLASS COUNSEL; assisting in implementation of the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE PLAN; and administering the process for the identification and satisfaction of liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type by GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAMS, and OTHER PAYERS/PROVIDERS and reporting to CMS and state agencies.

Q.    CLEAN-UP WORKERS shall mean all NATURAL PERSONS who performed RESPONSE ACTIVITIES, including:

1)    Captains, crew, and other workers employed under the Vessels of Opportunity ("VoO") program who performed RESPONSE ACTIVITIES;

2)    Workers employed to perform the decontamination of vessels involved in RESPONSE ACTIVITIES;

3)    Captains, crew, and other workers on vessels other than VoO who performed RESPONSE ACTIVITIES;

4)    Onshore personnel employed to perform RESPONSE ACTIVITIES; and

5) Persons involved in the recovery, transport, and decontamination of wildlife affected by the *DEEPWATER HORIZON* INCIDENT.

R. CMS shall mean the Centers for Medicare & Medicaid Services, the agency within the United States Department of Health and Human Services responsible for administration of the MEDICARE PROGRAM and the MEDICAID PROGRAM.

S. COMMUNITY HEALTH WORKERS TRAINING PROJECT shall mean the project described in Section IX.C.2.c and Exhibit 15.

T. COMPENSATORY DAMAGES, as used in Section XVII, shall mean any and all forms of damages, known or unknown, arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, regardless of what such damages are designated, called, or labeled, for: (1) personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and any progression and/or exacerbation of personal injury or bodily injury, or wrongful death and/or survival actions as a result thereof; (2) loss of support, services, consortium, companionship, society or affection, or damage to familial relations arising out of any personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life) to another person, and any progression and/or exacerbation of personal injury or bodily injury to another person, or wrongful death and/or survival actions as a result thereof; (3) increased risk, possibility, or fear of suffering in the future from any disease, injury, illness, emotional or mental harm, condition, or death; and (4) medical screening and medical monitoring for undeveloped, unmanifested, and/or undiagnosed conditions. COMPENSATORY DAMAGES do not include and may not be interpreted to have any overlap with punitive, exemplary, multiple, or non-compensatory

damages. The PARTIES further acknowledge and agree that the term COMPENSATORY DAMAGES as defined and used herein does not limit the total relevant amounts to be used for the calculation of punitive or other non-compensatory damages in any current or future litigation pursued by the MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS.

U. COURT shall mean the United States District Court for the Eastern District of Louisiana, Judge Carl Barbier, presiding in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179.

V. DAMAGES shall mean all forms of damages defined as broadly as possible without exception, including losses, costs, expenses, taxes, requests, royalties, rents, fees, profits, profit shares, earning capacity, loss of subsistence, damages to real or personal property, diminution in property value, punitive damages, exemplary damages, multiple damages, non-compensatory damages, COMPENSATORY DAMAGES, economic damages, injuries, liens, remedies, debts, claims, causes of action, or liabilities arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, regardless of what such damages are designated, called, or labeled, for: (1) personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and any progression and/or exacerbation of personal injury or bodily injury, or wrongful death and/or survival actions as a result thereof; (2) loss of support, services, consortium, companionship, society or affection, or damage to familial relations arising out of any personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life) to another person, and any progression and/or exacerbation of personal injury or bodily injury to another

13

person, or wrongful death and/or survival actions as a result thereof; (3) increased risk, possibility, or fear of suffering in the future from any disease, injury, illness, emotional or mental harm, condition, or death; and (4) medical screening and medical monitoring for undeveloped, unmanifested, and/or undiagnosed conditions.

W.      DATA DISCLOSURE FORM shall mean that document, substantially in the form of Exhibit 1, that a NATURAL PERSON shall use to request information from the CLAIMS ADMINISTRATOR in accordance with Section XXI.B.3.b.

X.      *DEEPWATER HORIZON* INCIDENT shall mean the events, actions, inactions, and omissions leading up to and including (i) the blowout of the MC252 WELL, (ii) the explosions and fire on board the *Deepwater Horizon* on or about April 20, 2010, (iii) the sinking of the *Deepwater Horizon* on or about April 22, 2010, (iv) the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, (v) the efforts to contain the MC252 WELL, and (vi) RESPONSE ACTIVITIES.

Y.      DEFECT shall mean any failure of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to provide required information or documentation to the CLAIMS ADMINISTRATOR in accordance with Sections VI, VII, or VIII.

Z.      DWH TRUST shall mean the irrevocable common law trust established under Delaware law pursuant to the trust agreement titled "Deepwater Horizon Oil Spill Trust" dated August 6, 2010, and entered into among BP Exploration & Production Inc.; John S. Martin, Jr. and Kent D. Syverud, as individual trustees; and Citigroup Trust-Delaware, N.A., as corporate trustee.

AA.    DWH TRUST AGREEMENT shall mean the agreement dated August 6, 2010, establishing the DWH TRUST.

BB.     EFFECTIVE DATE shall mean (1) if no appeal is perfected or sought, the day following the expiration of the deadline for appealing the entry by the COURT of the FINAL ORDER AND JUDGMENT, (2) the day following the date all appellate courts with jurisdiction affirm the FINAL ORDER AND JUDGMENT or all such appeals are dismissed or denied, or (3) such date as MEDICAL BENEFITS CLASS COUNSEL and BP otherwise agree in writing.

CC.     ENVIRONMENTAL HEALTH CAPACITY AND LITERACY PROJECT shall mean the project described in Section IX.C.2.d and Exhibit 16.

DD.     FAIRNESS HEARING shall be the hearing scheduled by the COURT to consider the fairness, reasonableness, and adequacy of this MEDICAL SETTLEMENT AGREEMENT under Rule 23(e)(2) of the Federal Rules of Civil Procedure and to determine whether a FINAL ORDER AND JUDGMENT should be entered.

EE.     FINAL ORDER AND JUDGMENT shall mean that order entered by the COURT, described in Section XVIII.

FF.     FUNDS shall, collectively, mean the MEDICAL SETTLEMENT TRUST ACCOUNT, the GENERAL MEDICAL CLAIMS FUND, the GULF REGION HEALTH OUTREACH PROJECTS FUND, and the ADMINISTRATIVE FUND.

GG.     GCCF shall mean the Gulf Coast Claims Facility.

HH.     GENERAL MEDICAL CLAIMS FUND shall mean the fund described in Section XXII.D.2.

II.     GOVERNMENTAL PAYER shall mean any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including but not limited to the MEDICARE PROGRAM, the MEDICAID PROGRAM, TRICARE, the Department of Veterans

Affairs, and the Department of Indian Health Services; provided, however, that the term GOVERNMENTAL PAYER shall not include MEDICARE PART C OR PART D PROGRAMS or OTHER PAYERS/PROVIDERS.

JJ.     GRANT AGREEMENT shall mean an agreement substantially in the form of Exhibit 2, to be executed by each grantee for a GULF REGION HEALTH OUTREACH PROJECT.

KK.     GUARDIAN AD LITEM shall mean that person nominated by the agreement of BP and MEDICAL BENEFITS CLASS COUNSEL and approved by the COURT to perform the duties set forth in Section III.C.

LL.     GULF REGION BANK shall mean one or more federally insured depository institutions with branch locations throughout the Gulf Region.

MM.   GULF REGION HEALTH OUTREACH PROGRAM shall mean the program described in Section IX.

NN.     GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE shall mean the body described in Section IX.G.

OO.     GULF REGION HEALTH OUTREACH PROJECTS shall mean the COMMUNITY HEALTH WORKERS TRAINING PROJECT, the ENVIRONMENTAL HEALTH CAPACITY AND LITERACY PROJECT, the MENTAL AND BEHAVIORAL HEALTH CAPACITY PROJECT, and the PRIMARY CARE CAPACITY PROJECT.

PP.     GULF REGION HEALTH OUTREACH PROJECTS FUND shall mean the fund described in Section XXII.D.1.

QQ.     GULF REGION HEALTH OUTREACH PROJECTS LIBRARY shall mean the library described in Section IX.H.

16

RR.     HALLIBURTON shall mean Halliburton Energy Services, Inc. and all and any of its AFFILIATES, other than any person or entity that is also an AFFILIATE of any of the RELEASED PARTIES as of April 16, 2012.

SS.     HALLIBURTON PARTIES shall mean HALLIBURTON (including all persons, entities, subsidiaries, divisions and business units comprised thereby); each of HALLIBURTON'S respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and the past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns, AFFILIATES; any natural, legal or juridical person or entity acting on behalf of or having liability in respect of HALLIBURTON, in their respective capacities as such; and the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective AFFILIATES including their officers, directors, shareholders, employees, and agents.

TT.     HIPAA shall mean the administrative simplification provisions of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) and the implementing regulations issued thereunder, 45 C.F.R. Parts 160, 162, and 164, and shall incorporate by reference the provisions of the Health Information Technology for Economic and Clinical Health Act (Title XIII of Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5 (2009)) pertaining to PROTECTED HEALTH INFORMATION.

UU.     INTERIM CLASS COUNSEL shall mean James P. Roy and Stephen J. Herman.

VV.     LATER-MANIFESTED PHYSICAL CONDITION shall mean a physical condition that is first diagnosed in a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER

17

after April 16, 2012, and which is claimed to have resulted from such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or exposure to dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, where such exposure occurred on or prior to September 30, 2010, for ZONE A RESIDENTS; on or prior to December 31, 2010, for ZONE B RESIDENTS; and on or prior to April 16, 2012, for CLEAN-UP WORKERS.

WW.   LEAD PAYING AGENT shall mean the entity as described in Section XXII.L and N.

XX.   LIBRARY MATERIALS shall mean the materials for the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY described in Section IX.H.

YY.   MC252 WELL shall mean the exploratory well named "Macondo" that was being drilled by the Transocean *Marianas* and *Deepwater Horizon* rigs in Mississippi Canyon, Block 252 on the outer continental shelf in the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

ZZ.   MEDIATION INFORMATION FORM shall mean that document, substantially in the form of Exhibit 3, to be submitted to the CLAIMS ADMINISTRATOR by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER claiming a LATER-MANIFESTED PHYSICAL CONDITION where a BP defendant has requested that a mediation take place.

AAA. MEDICAID PROGRAM shall mean the federal program administered by the states under which certain medical items, services, and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396–1, *et seq*.

BBB.  MEDICAL BENEFITS CLASS ACTION SETTLEMENT shall mean that settlement contemplated under this MEDICAL SETTLEMENT AGREEMENT.

CCC.  MEDICAL BENEFITS CLASS COUNSEL shall mean INTERIM CLASS COUNSEL and, upon appointment, such other counsel as the COURT may appoint to represent the MEDICAL BENEFITS SETTLEMENT CLASS.  Upon appointment, INTERIM CLASS COUNSEL shall serve as Lead Class Counsel.

DDD.  MEDICAL BENEFITS CLASS REPRESENTATIVES shall mean Kip Plaisance, Jason Perkins, Camille Warren, Christian Pizani, Max Plaisance, Benjamin Judah Barbee, Cornelius Divinity, Janice Brown, Carlton Caster, George Baker, and Duffy Hall, or such other or different persons as may be designated by the COURT as the representatives of the MEDICAL BENEFITS SETTLEMENT CLASS.

EEE.  MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall mean each NATURAL PERSON who is a member of the MEDICAL BENEFITS SETTLEMENT CLASS.

FFF.   MEDICAL BENEFITS SETTLEMENT CLASS NOTICE shall mean that notice described in Section XI.

GGG.  MEDICAL BENEFITS SETTLEMENT CLASS NOTICE AGENT shall mean that person or entity who shall implement the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE PLAN and who shall be responsible for the publication and giving of notice to the MEDICAL BENEFITS SETTLEMENT CLASS.

HHH.  MEDICAL BENEFITS SETTLEMENT CLASS NOTICE PLAN shall mean that which sets forth the methods, timetable, and responsibilities for providing notice of this MEDICAL BENEFITS CLASS ACTION SETTLEMENT to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS.

19

III.     MEDICAL CLASS ACTION COMPLAINT shall mean the complaint captioned "*Plaisance, et al. v. BP Exploration & Production Inc., et al.*" filed in the COURT on April 16, 2012.

JJJ.     MEDICAL SETTLEMENT TRUST shall mean the trust described in Section XXII.C and D to be established for the purpose of paying SETTLEMENT COSTS.

KKK.   MEDICAL SETTLEMENT TRUST ACCOUNT shall mean that account created under the MEDICAL SETTLEMENT TRUST AGREEMENT and held by the trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST into which BP shall make payments pursuant to Section XXII of this MEDICAL SETTLEMENT AGREEMENT.

LLL.   MEDICAL SETTLEMENT TRUST AGREEMENT shall mean the agreement that will establish the MEDICAL SETTLEMENT TRUST and entered into among BP, the MEDICAL BENEFITS CLASS COUNSEL, the CLAIMS ADMINISTRATOR, and  the trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST AGREEMENT.

MMM. MEDICARE PART C OR PART D PROGRAM shall mean the program (or programs) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with CMS.

NNN.   MEDICARE PROGRAM shall mean the Medicare Parts A and B federal program administered by CMS under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq*.

OOO. MENTAL AND BEHAVIORAL HEALTH CAPACITY PROJECT shall mean the project described in Section IX.C.2.b. and Exhibit 14.

PPP.   MONTHLY ESTIMATE shall mean the monthly process described in Section XXII.G by which the CLAIMS ADMINISTRATOR will provide BP with an amount that BP shall contribute to the GENERAL MEDICAL CLAIMS FUND.

QQQ.   MSP shall mean the Medicare Secondary Payer Act, set forth at 42 U.S.C. § 1395y(b), as amended from time to time.

RRR.   MSP LAWS shall mean the MSP and implementing regulations, including but not limited to 42 C.F.R. Part 411 Subparts B - H, 42 C.F.R. § 422.108 (Medicare Part C regulations), and 42 C.F.R. § 423.462 (Medicare Part D regulations), and other applicable written CMS guidance.

SSS.   NATURAL PERSON shall mean a human being and, in the case of a human being who died on or after April 20, 2010, shall include such human being's estate.  For purposes of this MEDICAL SETTLEMENT AGREEMENT, a NATURAL PERSON who is (1) a minor, (2) lacking capacity or incompetent, or (3) an estate of a deceased human being shall be deemed to act through his, her, or its AUTHORIZED REPRESENTATIVE.

TTT.   NOTICE OF DEFECT shall mean that document that the CLAIMS ADMINISTRATOR shall send to any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER whose PROOF OF CLAIM FORM or NOTICE OF INTENT TO SUE contains a DEFECT.

UUU.   NOTICE OF INTENT TO SUE shall mean that document, substantially in the form of Exhibit 4, to be submitted to the CLAIMS ADMINISTRATOR by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeking to bring a BACK-END LITIGATION OPTION LAWSUIT.

VVV.    OPT OUT shall mean the process by which any NATURAL PERSON included in the MEDICAL BENEFITS SETTLEMENT CLASS exercises his or her right to exclude himself or herself from the MEDICAL BENEFITS SETTLEMENT CLASS in accordance with Fed. R. Civ. P. 23(c)(2).

WWW. OPT OUTS shall mean those NATURAL PERSONS included in the MEDICAL BENEFITS SETTLEMENT CLASS definition who have timely and properly exercised their rights to OPT OUT and therefore are not MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS.

XXX.    OTHER PARTY shall mean every person, entity, or party other than the RELEASED PARTIES.

YYY.    OTHER PAYER/PROVIDER shall mean any healthcare provider, employer, workers' compensation carrier (including a state workers' compensation fund), group health plan, non-group health plan, insurer, Federal Employees Health Benefit plan (such as Blue Cross Federal or Blue 365), or other entity (other than a GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER), that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

ZZZ.    OTHER RELEASED PARTIES shall mean those persons, entities, divisions, and business units listed on Exhibit 6.  Notwithstanding anything herein to the contrary, in no event shall any of the following be deemed to be a RELEASED PARTY:  TRANSOCEAN or HALLIBURTON.    The MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT

CLASS MEMBERS specifically reserve its and their rights for punitive and exemplary damages against TRANSOCEAN and HALLIBURTON subject to Section XVII.

AAAA. PARTIES shall mean the MEDICAL BENEFITS CLASS REPRESENTATIVES, individually and on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS, and BP.

BBBB. PAYING AGENT AGREEMENT shall mean the agreement described in Section XXII.N.

CCCC. PERIODIC MEDICAL CONSULTATION PROGRAM shall mean that program described in Section VII and Exhibit 12.

DDDD. PHYSICIAN'S CERTIFICATION FORM shall mean that document attached as Appendix C to the NOTICE OF INTENT TO SUE, and described in Section XXI.I.7.

EEEE. PLAINTIFFS' STEERING COMMITTEE or PSC shall mean those counsel appointed to the PLAINTIFFS' STEERING COMMITTEE by the COURT, in its Pretrial Order No. 46, dated October 5, 2011 (Doc. 4226) in MDL 2179.

FFFF. PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER shall mean an order entered by the COURT.

GGGG. PRIMARY CARE CAPACITY PROJECT shall mean the project described in Section IX.C.2.a and Exhibit 13.

HHHH. PROOF OF CLAIM FORM shall mean that document, substantially in the form of Exhibit 5, to be submitted under penalty of perjury to the CLAIMS ADMINISTRATOR by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER applying for compensation for a SPECIFIED PHYSICAL CONDITION and/or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM.

23

IIII.  PROTECTED HEALTH INFORMATION shall mean individually identifiable health information, as defined in 45 C.F.R. § 160.103.

JJJJ.  RELATED CLAIMS shall mean all claims brought by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS against RELEASED PARTIES pending in the COURT, in any other federal court, in any state court, or in any other tribunal or forum that are covered by the RELEASE set forth in Section XVI.

KKKK. RELEASE shall mean those terms of this MEDICAL SETTLEMENT AGREEMENT set forth in Section XVI.

LLLL.  RELEASED CLAIMS shall mean those claims described in Section XVI.

MMMM.  RELEASED PARTIES for purposes of the RELEASED CLAIMS shall mean (i) the BP ENTITIES (including all persons, entities, subsidiaries, divisions, and business units comprised thereby), together with (ii) the DWH TRUST, (iii) the persons, entities, divisions, and business units listed on Exhibit 6 ("OTHER RELEASED PARTIES"); (iv) each of the BP ENTITIES and the OTHER RELEASED PARTIES' respective past, present, and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and their past, present, and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, and assigns; and (v) any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the BP ENTITIES or the OTHER RELEASED PARTIES, in their respective capacities as such; and, as to (i)-(v) above, each of their respective AFFILIATES, including their AFFILIATES' officers, directors, shareholders, employees, and agents.  RELEASED PARTIES shall also include any vessels owned or chartered by any RELEASED PARTY (except for the *Deepwater Horizon* itself).

Notwithstanding anything herein to the contrary, in no event shall any of the following be deemed to be a RELEASED PARTY: TRANSOCEAN or HALLIBURTON. The MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS specifically reserve its and their rights for punitive and exemplary damages against TRANSOCEAN and HALLIBURTON subject to Section XVII.

NNNN. REQUEST FOR REVIEW FORM shall mean that document, substantially in the form of Exhibit 7, that a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall use to request a one-time review of a denial of his or her claim in accordance with Section V.M.

OOOO. RESPONSE ACTIVITIES shall mean the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

PPPP. SETTLEMENT BENEFITS shall mean those benefits that qualifying MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS may receive under the terms of the MEDICAL SETTLEMENT AGREEMENT, including compensation for SPECIFIED PHYSICAL CONDITIONS as set forth in the SPECIFIED PHYSICAL CONDITIONS MATRIX, medical consultation visits under the PERIODIC MEDICAL CONSULTATION PROGRAM, the right to seek compensation for a LATER-MANIFESTED PHYSICAL CONDITION from BP under the BACK-END LITIGATION OPTION, and benefits provided under the GULF REGION HEALTH OUTREACH PROGRAM.

QQQQ. SETTLEMENT COSTS shall mean (i) all compensation for SPECIFIED PHYSICAL CONDITIONS as provided in Section VI and Exhibit 8; (ii) all costs associated with the PERIODIC MEDICAL CONSULTATION PROGRAM as provided in Section VII; (iii) all costs associated with the GULF REGION HEALTH OUTREACH PROGRAM as provided in Section IX; (iv) all applicable federal, state, or local taxes on monies held in the MEDICAL SETTLEMENT TRUST in accordance with the terms of this MEDICAL SETTLEMENT AGREEMENT; (v) all reasonable compensation to and all reasonable out-of-pocket costs and expenses incurred by the CLAIMS ADMINISTRATOR (including the CLAIMS ADMINISTRATOR'S staff and contractors) in performing its duties in accordance with Sections V and XXI, the GUARDIAN AD LITEM in performing his or her duties in accordance with Section III.C, and the mediators used in connection with claims for LATER-MANIFESTED PHYSICAL CONDITIONS in performing their duties in accordance with Section VIII.E; (vi) all reasonable costs and expenses associated with the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE and implementation of the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE PLAN, including any supplements thereto ordered by the COURT, and all reasonable compensation to and all reasonable out-of-pocket costs and expenses incurred by the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE AGENT (including the NOTICE AGENT'S staff and contractors) in performing its duties in accordance with Section XI; (vii) all reasonable costs and compensation associated with the operations and administration of the MEDICAL SETTLEMENT TRUST; and (viii) all other costs and compensation reasonably associated with the implementation and administration of this MEDICAL SETTLEMENT AGREEMENT. BP shall have the right to challenge before the COURT the reasonableness of any compensation, costs, and/or expenses sought by the NOTICE AGENT, the CLAIMS ADMINISTRATOR, the

trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST, the GUARDIAN AD LITEM, or the mediators.

RRRR.   SPECIFIED PHYSICAL CONDITION shall mean one or more of the ACUTE CONDITIONS or CHRONIC CONDITIONS identified in Exhibit 8 that arose out of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and that first manifested or was exacerbated within the timeframes set forth in Exhibit 8.   Notwithstanding any of the foregoing, a SPECIFIED PHYSICAL CONDITION shall not include any conditions or symptoms claimed by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER which conditions or symptoms resulted from the August 23, 2010, ammonia leak reported at Millard Refrigerated Services in Theodore, Alabama.

SSSS.    SPECIFIED PHYSICAL CONDITIONS MATRIX shall mean that document attached as Exhibit 8.

TTTT.   TRANSOCEAN shall mean Transocean Ltd., Transocean, Inc., Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH and all and any of their AFFILIATES, other than any person or entity that is also an AFFILIATE of any of the RELEASED PARTIES as of April 16, 2012.

UUUU.  TRANSOCEAN PARTIES shall mean TRANSOCEAN (including all persons, entities, subsidiaries, divisions and business units comprised thereby); each of TRANSOCEAN'S respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and their past, present and future

spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns, AFFILIATES; any natural, legal or juridical person or entity acting on behalf of or having liability in respect of TRANSOCEAN, in their respective capacities as such; and the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective AFFILIATES including their officers, directors, shareholders, employees, and agents.

VVVV.  TRICARE shall mean the federal program managed and administered by the United States Department of Defense through the TRICARE Management Activity under which certain medical items, services, and/or prescription drugs are furnished to eligible members of the military services, military retirees, and military dependants under 10 U.S.C. § 1071, *et seq*.

WWWW.  UNKNOWN CLAIMS shall mean all past, present, and future claims arising out of facts, including new facts or facts found hereafter to be other than or different from the facts now believed to be true, relating in any way to any matter covered by the RELEASE in Section XVI that MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS do not in whole or in part know or suspect to exist in their favor and which, if known by them, might have affected their decision to settle; provided, however, that UNKNOWN CLAIMS shall not include claims for LATER-MANIFESTED PHYSICAL CONDITIONS in accordance with Section VIII.

XXXX.  ZONE A shall mean the geographic areas described in Exhibit 9, and depicted in the map contained in Exhibit 10.  In the event of a conflict between the written description and the map, the written description shall govern.

YYYY.  ZONE A RESIDENT shall have the meaning ascribed to such term in the MEDICAL BENEFITS SETTLEMENT CLASS definition in Section I.A.

ZZZZ.   ZONE B shall mean the geographic areas described in Exhibit 9, and depicted in the map contained in Exhibit 11.  In the event of a conflict between the written description and the map, the written description shall govern.

AAAAA.  ZONE B RESIDENT shall have the meaning ascribed to such term in the MEDICAL BENEFITS SETTLEMENT CLASS definition in Section I.A.

In this MEDICAL SETTLEMENT AGREEMENT, unless the context requires otherwise, (a) words expressed in the masculine shall include the feminine and neuter gender and vice versa; (b) the word "will" shall be construed to have the same meaning and effect as the word "shall"; (c) the word "or" shall not be exclusive; (d) the word "extent" in the phrase "to the extent" shall mean the degree to which a subject or other thing extends, and such phrase shall not simply mean "if"; (e) references to "day" or "days" in the lower case are to calendar days, but if the last day is a Saturday, Sunday, or legal holiday (as defined in Fed. R. Civ. P. 6(a)(6)), the period shall continue to run until the end of the next day that is not a Saturday, Sunday, or legal holiday; (f) references to "the date hereof" are to the date of this MEDICAL SETTLEMENT AGREEMENT; (g) references to this MEDICAL SETTLEMENT AGREEMENT shall include all exhibits, schedules, and annexes hereto; (h)  references to any law shall include all rules and regulations promulgated thereunder; (i) the terms "include", "includes", and "including" shall be deemed to be followed by "without limitation", whether or not they are in fact followed by such words or words of similar import; and (j) references to dollars or "$" are to United States dollars.

## III.   AUTHORIZED REPRESENTATIVES, COUNSEL, AND GUARDIAN AD LITEM

A.   Where a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is (1) a minor, (2) lacking capacity or incompetent, or (3) deceased, his or her AUTHORIZED REPRESENTATIVE may act on his or her behalf, and in so doing shall be bound by all the same terms and conditions of this MEDICAL SETTLEMENT AGREEMENT that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER would be if he or she were acting on his or her own behalf.   An AUTHORIZED REPRESENTATIVE may take all actions permitted or required under the terms of this MEDICAL SETTLEMENT AGREEMENT on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

B.   Individual counsel acting on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may submit all claim forms, proof, correspondence, or other documents to the CLAIMS ADMINISTRATOR on behalf of that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER; provided, however, that counsel for an individually-represented MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may not sign, on behalf of that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, (i) an OPT OUT request, (ii) a revocation of an OPT OUT, (iii) a PROOF OF CLAIM FORM, (iv) a NOTICE OF INTENT TO SUE, or (v) a MEDIATION INFORMATION FORM.   Where a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER indicates on a PROOF OF CLAIM FORM or NOTICE OF INTENT TO SUE that he or she is individually represented by counsel, the CLAIMS ADMINISTRATOR shall communicate only with his or her individual counsel and not directly with the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER; provided, however, that nothing shall preclude the CLAIMS ADMINISTRATOR from communicating directly with a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to schedule a PERIODIC MEDICAL CONSULTATION PROGRAM visit pursuant to Section VII.D.   Communications by the CLAIMS

ADMINISTRATOR with counsel individually representing a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall be deemed to be a communication directly with such individually represented MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

    C.    <u>GUARDIAN AD LITEM</u>

    1)    MEDICAL BENEFITS CLASS COUNSEL and BP shall jointly nominate an individual for appointment as GUARDIAN AD LITEM and shall jointly move the COURT for an order appointing such individual as GUARDIAN AD LITEM.

    2)    The GUARDIAN AD LITEM shall make an independent investigation, on behalf of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who are minors, lack capacity, or are incompetent into the terms and provisions of this MEDICAL SETTLEMENT AGREEMENT and, based upon that independent investigation and prior to the FAIRNESS HEARING, report to BP and MEDICAL BENEFITS CLASS COUNSEL, and make a recommendation to the COURT as to the fairness of this MEDICAL SETTLEMENT AGREEMENT with respect to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who are minors, lack capacity, or are incompetent.

    3)    The reasonable fees and costs of the GUARDIAN AD LITEM shall be SETTLEMENT COSTS.

## IV.   SETTLEMENT BENEFITS FOR MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS

The MEDICAL BENEFITS CLASS REPRESENTATIVES, by and through the MEDICAL BENEFITS CLASS COUNSEL, and BP agree that, in consideration for the RELEASE described in Section XVI and the dismissal with prejudice of RELEASED CLAIMS, and subject to the terms of this MEDICAL SETTLEMENT AGREEMENT, BP will:

A.     Provide compensation to those MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who have or have had one or more of the SPECIFIED PHYSICAL CONDITIONS and who have been determined by the CLAIMS ADMINISTRATOR to qualify for compensation pursuant to the proof requirements and other criteria set forth in Section XXI.C-F and Exhibit 8;

B.     Provide the following MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS with the option to participate in a PERIODIC MEDICAL CONSULTATION PROGRAM as described in Section VII and Exhibit 12:

1)     CLEAN-UP WORKERS;

2)     ZONE A RESIDENTS who (i) first manifested one or more SPECIFIED PHYSICAL CONDITIONS between April 20, 2010, and September 30, 2010, (ii) have made a claim therefor pursuant to this MEDICAL SETTLEMENT AGREEMENT in accordance with Section V, and (iii) have been determined by the CLAIMS ADMINISTRATOR to qualify for compensation in accordance with Section VI; and

3)     ZONE B RESIDENTS;

C.     Provide for BACK-END LITIGATION OPTION procedures, in accordance with Section VIII, for those MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who claim a LATER-MANIFESTED PHYSICAL CONDITION;

D.      Establish and fund the GULF REGION HEALTH OUTREACH PROGRAM in accordance with Section IX and XXII;

E.      Pay all SETTLEMENT COSTS.

## V.     CLAIMS SUBMISSION, CURE, AND REVIEW PROCESS

A.     All PROOF OF CLAIM FORMS seeking compensation for a SPECIFIED PHYSICAL CONDITION or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM must be submitted to the CLAIMS ADMINISTRATOR no later than one year from the EFFECTIVE DATE.

B.     The CLAIMS ADMINISTRATOR shall evaluate and process all PROOF OF CLAIM FORMS from MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS seeking compensation for a SPECIFIED PHYSICAL CONDITION or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM pursuant to Section XXI.C-F of this MEDICAL SETTLEMENT AGREEMENT.   Upon entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, the CLAIMS ADMINISTRATOR shall process all PROOF OF CLAIM FORMS that it receives; provided, however, that the CLAIMS ADMINISTRATOR shall not pay or reject any claims or send any NOTICES OF DEFECT or notices of qualification to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS until after the EFFECTIVE DATE.

C.     Within 30 days of the date on which the CLAIMS ADMINISTRATOR receives a PROOF OF CLAIM FORM from a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, the CLAIMS ADMINISTRATOR shall assign a unique identifying number to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim and shall inform the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER of that unique identifying number.  If a PROOF OF CLAIM FORM is received by the CLAIMS ADMINISTRATOR prior to the EFFECTIVE DATE, the CLAIMS ADMINISTRATOR shall further notify the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER submitting such PROOF OF CLAIM FORM that he or she

will not receive any further communications from the CLAIMS ADMINISTRATOR, any payment of compensation, or any medical consultation visits until after the EFFECTIVE DATE.

D.      The CLAIMS ADMINISTRATOR shall review each PROOF OF CLAIM FORM, including all documentation and authorizations submitted therewith, to determine the sufficiency and completeness of the information contained therein.      The CLAIMS ADMINISTRATOR shall reject a claim submitted by or on behalf of any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, subject to the cure provisions of Section V.E, if (i) the related PROOF OF CLAIM FORM has not been properly completed, including all required documentation and authorizations by or on behalf of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, or (ii) the CLAIMS ADMINISTRATOR has not received all proof required by this MEDICAL SETTLEMENT AGREEMENT.

E.      For PROOF OF CLAIM FORMS that it rejects, the CLAIMS ADMINISTRATOR shall send to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER a "NOTICE OF DEFECT," which shall contain a brief explanation of the DEFECT giving rise to rejection of the PROOF OF CLAIM FORM and a copy of any proof that has a DEFECT and shall, where necessary, request additional information and/or documentation.  The NOTICE OF DEFECT shall be sent no later than 30 days from the date of receipt of the PROOF OF CLAIM FORM by the CLAIMS ADMINISTRATOR or 30 days from the EFFECTIVE DATE, whichever is later.  The NOTICE OF DEFECT shall contain a recommendation for how the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER can cure the DEFECT, and the deadline for the submission of DEFECT cure materials.   The MEDICAL BENEFITS SETTLEMENT CLASS MEMBER will have the opportunity to cure all DEFECTS, resubmit such PROOF OF CLAIM FORM, and provide any requested additional information or

documentation, except that a DEFECT in a declaration submitted in support of a claim for compensation for a SPECIFIED PHYSICAL CONDITION (other than the failure to sign such declaration) or the failure timely to submit a PROOF OF CLAIM FORM in accordance with the terms of this MEDICAL SETTLEMENT AGREEMENT cannot be cured.  The submission containing such curative documentation must be submitted to the CLAIMS ADMINISTRATOR no more than 120 days following the date the NOTICE OF DEFECT was sent to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.  Any PROOF OF CLAIM FORM that continues to suffer from a DEFECT identified on the NOTICE OF DEFECT following the submission of curative documentation for such DEFECT shall be denied by the CLAIMS ADMINISTRATOR and cannot be resubmitted.

F.   Each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER bears the burden of proving to the CLAIMS ADMINISTRATOR, by a preponderance of the evidence, all of the elements of proof necessary to qualify for compensation for a SPECIFIED PHYSICAL CONDITION and/or to qualify to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM.

G.   Each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeking compensation for a SPECIFIED PHYSICAL CONDITION and/or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM shall authorize, where applicable, the CLAIMS ADMINISTRATOR, consistent with HIPAA and other applicable privacy laws, to verify employment information, facts and details of any medical treatment provided, and/or the amount of any ACTUAL HOSPITAL EXPENSES for which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeks reimbursement and/or the existence and amounts, if any, of any liens, claims, or rights of subrogation indemnity, reimbursement, conditional or other

payments, or interests of any type. Each such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall execute a HIPAA-compliant authorization (in the form of Appendix B to the PROOF OF CLAIM FORM), as well as, where applicable, any other HIPAA-compliant authorizations required by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S medical treatment providers or those who have paid for such treatment (including any insurance carrier or provider).

H.      The CLAIMS ADMINISTRATOR will undertake or cause to be undertaken such further investigation and verification, including investigation and verification into the nature and sufficiency of the documentation, deemed warranted by the CLAIMS ADMINISTRATOR with regard to any claim for compensation for a SPECIFIED PHYSICAL CONDITION and/or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM by or on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

I.      For purposes of determining timeliness of any submission by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to the CLAIMS ADMINISTRATOR, such submission shall be deemed timely if it is postmarked or has an electronic date stamp on or before the date by which it is required to be submitted under this MEDICAL SETTLEMENT AGREEMENT.

J.      Based upon its review of the PROOF OF CLAIM FORM, including the documentation submitted therewith, and the results of any investigations by the CLAIMS ADMINISTRATOR of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim, the CLAIMS ADMINISTRATOR shall determine whether a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER qualifies for compensation for a SPECIFIED PHYSICAL CONDITION (including the type and amount of compensation on the SPECIFIED PHYSICAL

CONDITIONS MATRIX) and/or qualifies to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM.   The CLAIMS ADMINISTRATOR shall make such determination(s) and shall send the related notice of such determination to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER no later than 30 days from the later of (i) the date when a completed PROOF OF CLAIM FORM that is free from all DEFECTS is received by the CLAIMS ADMINISTRATOR, (ii) the date when all DEFECTS with a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S PROOF OF CLAIM FORM have been determined by the CLAIMS ADMINISTRATOR to be satisfactorily cured, (iii) the date on which the additional information or documentation identified in the NOTICE OF DEFECT, if applicable, has been satisfactorily provided to the CLAIMS ADMINISTRATOR (if such additional information or documentation has been timely submitted), (iv) the date on which the MEDICAL BENEFITS CLASS MEMBER no longer has the right to cure such DEFECTS or provide additional information or documentation, in accordance with Section V.E, or (v) the EFFECTIVE DATE; provided, however, that to the extent the volume of claims warrants, these deadlines may be extended by agreement between counsel for BP and the MEDICAL BENEFITS CLASS COUNSEL, subject to approval by the COURT.

K.     All information submitted by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS to the CLAIMS ADMINISTRATOR shall be recorded in a computerized database. This database, throughout the duration of its use, shall be kept in a form that can be accessed and read by the CLAIMS ADMINISTRATOR, which may in the future involve, as evolving technology warrants, placing the information in a more modern database.  All information in such database shall be confidential, consistent with Sections VI.E, VII.E, and VIII.D.

L.     The CLAIMS ADMINISTRATOR'S determination as to whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER (i) has qualified for compensation for a SPECIFIED PHYSICAL CONDITION under this MEDICAL SETTLEMENT AGREEMENT and the amount of compensation for which he or she qualifies and/or (ii) has qualified to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM shall be final and not appealable, unless a one-time review is requested in accordance with Section V.M.

M.     If the CLAIMS ADMINISTRATOR denies a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim for compensation for a SPECIFIED PHYSICAL CONDITION or for participation in the PERIODIC MEDICAL CONSULTATION PROGRAM, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may request a one-time review by a designated employee of the CLAIMS ADMINISTRATOR whose qualifications shall be agreed upon by MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL and shall not be otherwise engaged in the evaluation or determination of any claims under this MEDICAL BENEFITS CLASS ACTION SETTLEMENT.  The MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall make such request in writing to the CLAIMS ADMINISTRATOR within 14 days of receipt of a NOTICE OF DENIAL, using a REQUEST FOR REVIEW FORM in substantially the form of Exhibit 7.  The one-time review shall be completed within 14 days of the receipt of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S written request, and the reviewer's determination shall be final and not appealable.  The reviewer may only overturn the denial of a claim for compensation for a SPECIFIED PHYSICAL CONDITION or for participation in the PERIODIC MEDICAL CONSULTATION PROGRAM where he or she finds that such denial was based on a clearly erroneous factual determination by the CLAIMS ADMINISTRATOR.

N.     The CLAIMS ADMINISTRATOR'S determination that a NATURAL PERSON is or is not a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may be challenged by such NATURAL PERSON.  Any such challenge must be filed by such NATURAL PERSON with the COURT within 60 days after the notice of the CLAIMS ADMINISTRATOR'S determination is sent to that NATURAL PERSON.

O.     Each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall promptly notify the CLAIMS ADMINISTRATOR of any changes or updates to the information the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER has provided in the PROOF OF CLAIM FORM and/or NOTICE OF INTENT TO SUE.

## VI.   COMPENSATION FOR SPECIFIED PHYSICAL CONDITIONS

A.   All MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS seeking compensation for a SPECIFIED PHYSICAL CONDITION must do so through the submission of a PROOF OF CLAIM FORM containing all required proof in accordance with the requirements of the SPECIFIED PHYSICAL CONDITIONS MATRIX.

B.   MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who are determined by the CLAIMS ADMINISTRATOR to qualify for compensation for a SPECIFIED PHYSICAL CONDITION shall be compensated in accordance with the terms of the SPECIFIED PHYSICAL CONDITIONS MATRIX.   Compensation shall include the lump sum for which the CLAIMS ADMINISTRATOR has determined that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER qualifies, along with any enhancer for overnight hospitalization and/or any ACTUAL HOSPITAL EXPENSES for which the CLAIMS ADMINISTRATOR has determined that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER qualifies.

C.   The CLAIMS ADMINISTRATOR shall promptly pay any compensation to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who qualify under the terms of the SPECIFIED PHYSICAL CONDITIONS MATRIX after the CLAIMS ADMINISTRATOR sends a notice of qualification; provided, however, any such payment shall be subject to the process for determining and resolving liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type set forth in Section XXIX, the process for auditing claims set forth in Section XXI.G, and the restriction that no payments shall be made prior to the EFFECTIVE DATE.

D.   Medical Records

1)   In support of a claim for compensation for a SPECIFIED PHYSICAL CONDITION, a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeking

compensation on level A2 or B1 of the SPECIFIED PHYSICAL CONDITIONS MATRIX must either (a) provide medical records as specified in the SPECIFIED PHYSICAL CONDITIONS MATRIX or (b) direct the CLAIMS ADMINISTRATOR to obtain medical records relating to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER. The CLAIMS ADMINISTRATOR may retain a third-party medical record retrieval company to obtain such medical records. If the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER chooses to direct the CLAIMS ADMINISTRATOR to obtain his or her specified medical records, the CLAIMS ADMINISTRATOR shall have 30 days after it receives all such specified medical records to make a determination of that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim.

2) If a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who directs the CLAIMS ADMINISTRATOR to obtain his or her medical records is found to qualify for compensation for a SPECIFIED PHYSICAL CONDITION, the actual cost charged by the healthcare provider and/or a third party medical record retrieval company used by the CLAIMS ADMINISTRATOR to obtain that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S medical records may be deducted by the CLAIMS ADMINISTRATOR from the amount of compensation to be paid to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER; provided, however, that if the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is not represented by counsel and provides evidence of financial hardship to the satisfaction of the CLAIMS ADMINISTRATOR, the CLAIMS ADMINISTRATOR may waive the deduction of these costs and pay the full amount of compensation for the SPECIFIED PHYSICAL CONDITION otherwise owing to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

3)      With respect to claims where medical records are provided by or on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, or obtained by the CLAIMS ADMINISTRATOR pursuant to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S direction, the CLAIMS ADMINISTRATOR shall determine, based on the totality of the evidence in the medical records, whether that evidence more likely than not supports the assertions made in that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S declaration.  With respect to claims where the medical information relating to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is derived from the data, documentation, and/or records from the Medical Encounters database or other sources of information containing information about medical claims, including records reflecting a CLEAN-UP WORKER'S transport to a medical facility during or immediately after the performance of RESPONSE ACTIVITIES, the CLAIMS ADMINISTRATOR shall determine whether the evidence more likely than not supports the assertions made in that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S declaration, consistent with and pursuant to the SPECIFIED PHYSICAL CONDITIONS MATRIX; provided, however, that statements in such data, documentation, and/or records (i) that the condition(s) or symptom(s) complained of were or were not caused by exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES or (ii) that the condition(s) or symptom(s) complained of were or were not occupationally related, shall not be dispositive.

E.   Confidentiality of Information Relating to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS

1)   All information relating to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that is disclosed to or obtained by the CLAIMS ADMINISTRATOR, healthcare providers, or any other authorized entity in connection with a claim for compensation for a SPECIFIED PHYSICAL CONDITION is confidential and shall be treated as PROTECTED HEALTH INFORMATION subject to HIPAA and other applicable privacy laws.

2)   All information relating to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that is disclosed to or obtained by the CLAIMS ADMINISTRATOR, healthcare providers, or any other authorized entity in connection with a claim for compensation for a SPECIFIED PHYSICAL CONDITION may be used only by (i) the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER upon request or (ii) the CLAIMS ADMINISTRATOR, healthcare providers, or any other authorized entity to the extent necessary for the administration of this MEDICAL SETTLEMENT AGREEMENT according to its terms, including the determination of qualification for and amount of compensation for SPECIFIED PHYSICAL CONDITIONS, the determination of the fact and amounts of any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type, and any audits to be performed pursuant to Section XXI.G.

## VII.   PERIODIC MEDICAL CONSULTATION PROGRAM

A.   Qualification

1)   A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who has been determined by the CLAIMS ADMINISTRATOR to qualify for compensation for a SPECIFIED PHYSICAL CONDITION shall also qualify to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM without any further action.

2)   A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who is a ZONE A RESIDENT and neither a ZONE B RESIDENT nor a CLEAN-UP WORKER and has been determined by the CLAIMS ADMINISTRATOR not to qualify for compensation for a SPECIFIED PHYSICAL CONDITION shall not qualify to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM.

3)   A determination by the CLAIMS ADMINISTRATOR that a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who is a CLEAN-UP WORKER or ZONE B RESIDENT does not qualify for compensation for a SPECIFIED PHYSICAL CONDITION shall not preclude the CLAIMS ADMINISTRATOR from determining that such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER qualifies to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM if such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER satisfies the proof requirements set forth in Section XXI.D and E.

4)   A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who is either a CLEAN-UP WORKER or a ZONE B RESIDENT and who has not applied for compensation for a SPECIFIED PHYSICAL CONDITION may submit a PROOF OF CLAIM FORM and proof of status as CLEAN-UP WORKER or proof of residency in ZONE B to apply for participation in the PERIODIC MEDICAL CONSULTATION PROGRAM.

45

B.     Scope of Program

1)     MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS determined by the CLAIMS ADMINISTRATOR to qualify to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM shall be provided the opportunity to obtain the medical consultation visits as set forth in Exhibit 12.

2)     The medical consultation visits and services provided herein shall be done under the supervision of a licensed medical doctor.  The PARTIES agree that such visits and services are intended to establish a physician/patient relationship.

3)     The PERIODIC MEDICAL CONSULTATION PROGRAM shall begin on the EFFECTIVE DATE, and last for 21 years from the EFFECTIVE DATE.  MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS qualifying to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM shall be entitled to an initial medical consultation visit and a subsequent medical consultation visit once every three years thereafter during the term of the PERIODIC MEDICAL CONSULTATION PROGRAM.

C.     Retention of Medical Services Providers

1)     The CLAIMS ADMINISTRATOR shall establish a network of medical services providers to provide medical consultation visits to qualifying MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS.  The CLAIMS ADMINISTRATOR'S selection of medical services providers to provide medical consultation visits under the PERIODIC MEDICAL CONSULTATION PROGRAM, including any replacement medical services providers, shall be subject to the written agreement of MEDICAL BENEFITS CLASS COUNSEL and BP.

2)     The CLAIMS ADMINISTRATOR will evaluate and select potential medical services providers based on the following: (i) geographic proximity to MEDICAL

BENEFITS SETTLEMENT CLASS MEMBERS; (ii) education, training, licensing, credentialing, insurance coverage pursuant to applicable law, and language capability; (iii) capability to deliver medical consultation visits and services under the PERIODIC MEDICAL CONSULTATION PROGRAM; (iv) ability to provide medical consultation visits and services under the PERIODIC MEDICAL CONSULTATION PROGRAM in a timely manner; and (v) rate structure and payment terms for providing medical consultation visits under the PERIODIC MEDICAL CONSULTATION PROGRAM.  In performing this evaluation and selection, the CLAIMS ADMINISTRATOR shall give priority to Federally Qualified Health Centers ("FQHCs") and FQHC "look-alikes" under Section 330 of the Public Health Service Act, 42 U.S.C. § 254b, and to hospitals and medical centers.

3)     A medical services provider seeking to provide medical consultation visits under the PERIODIC MEDICAL CONSULTATION PROGRAM must provide the following information to the CLAIMS ADMINISTRATOR: (i) state professional license number; (ii) National Provider Identifier; (iii) evidence of proper licensing and insurance coverage under applicable state laws; (iv) experience, including number of years as a healthcare provider; (v) primary and additional service locations; (vi) mailing and billing addresses; (vii) tax identification information; (viii) ability to provide services, medical examinations, and/or tests set forth on Exhibit 12, including the mechanism for referrals for such services, medical examinations, and/or tests; (ix) capacity for new patients; (x) appointment accessibility; (xi) languages spoken; and (xii) such other information as the CLAIMS ADMINISTRATOR may reasonably request.

4)     The CLAIMS ADMINISTRATOR shall enter into a written contract with each medical services provider selected to provide medical consultation visits under the

PERIODIC MEDICAL CONSULTATION PROGRAM.  The contract shall include, among other things, a description of the services, medical examinations, and/or tests that may be provided to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS under the PERIODIC MEDICAL CONSULTATION PROGRAM; rates, billing, and payment terms; terms relating to licensing, credentials, and other qualifications; the amount and type of insurance to be maintained by that medical services provider; procedures for scheduling and cancellation of medical consultation visits; and document retention policies and procedures.  Such contract shall further provide (i) that each medical services provider shall release and hold harmless BP, MEDICAL BENEFITS CLASS COUNSEL, MEDICAL BENEFITS CLASS REPRESENTATIVES, and the CLAIMS ADMINISTRATOR from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, arising from or related to the services provided by that medical services provider as part of the PERIODIC MEDICAL CONSULTATION PROGRAM; (ii) that each medical services provider shall not seek payment from the CLAIMS ADMINISTRATOR, BP, or MEDICAL BENEFITS CLASS COUNSEL for any medical service(s), examination(s), and/or test(s) or any medical treatment or care that are not set forth in Exhibit 12; (iii) that each medical services provider may seek payment from a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or, where applicable, his or her insurer for any medical service(s), examination(s), and/or test(s) or any medical treatment or care that are not set forth in Exhibit 12 only where the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, or, where applicable, his or her insurer, has agreed in writing to authorize and pay for such medical service(s), examination(s), and/or test(s) or any medical treatment or care; and (iv) that each medical services provider shall

retain medical records for MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS in accordance with Section VII.F.

     5)    The CLAIMS ADMINISTRATOR shall review credentialing and performance of medical services providers on an annual basis and shall establish and administer a system to audit billing procedures and procedures for providing medical consultation visits. The CLAIMS ADMINISTRATOR may conduct random onsite visits at such medical services providers to confirm their compliance with the contract described in Section VII.C.4 above.  The CLAIMS ADMINISTRATOR may terminate any medical services provider that is not in compliance with the terms of its contract.

    D.    <u>Scheduling and Providing Medical Consultation Visits</u>

     1)    The CLAIMS ADMINISTRATOR shall be responsible for coordinating and scheduling all medical consultation visits by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS and shall establish a call center and web portals to be used by qualifying MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS to schedule medical consultation visits.

     2)    Upon making the determination that a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER qualifies to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM or within 30 days of the EFFECTIVE DATE, whichever is later, the CLAIMS ADMINISTRATOR shall inform that qualifying MEDICAL BENEFITS SETTLEMENT CLASS MEMBER in writing of the following: (i) the services, medical examinations, and/or tests set forth on Exhibit 12 available under the PERIODIC MEDICAL CONSULTATION PROGRAM; (ii) the call center number and web portal site information for the PERIODIC MEDICAL CONSULTATION PROGRAM; (iii) procedures for scheduling and

cancelling medical consultation visits; and (iv) information for communicating with the CLAIMS ADMINISTRATOR.

       3)     Qualifying MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS may request the CLAIMS ADMINISTRATOR to schedule medical consultation visits using the call center or web portal site established by the CLAIMS ADMINISTRATOR.  A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may not obtain a medical consultation visit at a medical services provider under the PERIODIC MEDICAL CONSULTATION PROGRAM unless that medical consultation visit has been scheduled through the CLAIMS ADMINISTRATOR.

       4)     The CLAIMS ADMINISTRATOR shall not schedule a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for a medical consultation visit under the PERIODIC MEDICAL CONSULTATION PROGRAM more frequently than one such visit every three years.  For each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeking to schedule a medical consultation visit, the CLAIMS ADMINISTRATOR will verify that he or she remains eligible for such visit.  If the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is not then eligible, the CLAIMS ADMINISTRATOR will so notify the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.  In no event shall any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER obtain more than 8 medical consultation visits under the PERIODIC MEDICAL CONSULTATION PROGRAM.

       5)     Upon receipt from a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER of a request to schedule a medical consultation visit, the CLAIMS ADMINISTRATOR shall identify a medical services provider located within a radius of 25 miles from the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S primary residence

that can provide a medical consultation visit within 30 days of that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S request, and shall provide this information to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER. If the CLAIMS ADMINISTRATOR is unable to schedule a medical consultation visit within a radius of 25 miles from the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S primary residence or within 30 days of his or her request, the CLAIMS ADMINISTRATOR shall schedule such visit at the nearest available medical services provider that can accommodate a medical consultation visit within 30 days of the request. Such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall be eligible to request and receive by phone, email, or other writing an allowance based on the Internal Revenue Service prevailing rate for business purposes for each mile above 25 driving miles that he or she must travel from his or her primary residence to that medical services provider and from that medical services provider to his or her primary residence, using the shortest, most direct route as determined by the CLAIMS ADMINISTRATOR.

6)     The CLAIMS ADMINISTRATOR shall communicate with qualifying MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS to confirm and remind them of scheduled appointments, including a written appointment reminder 7 days prior to the medical consultation visit and an automated telephone call 24 hours prior to that visit. The appointment reminder shall include a confirmation number that must be presented by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to the medical services provider.

7)     A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or medical services provider may request that an appointment for a medical consultation visit be rescheduled, but any such request must be made at least 24 hours prior to the scheduled visit. If

a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER cancels or seeks to reschedule an appointment for a medical consultation visit less than 24 hours prior to such visit, he or she shall be responsible for payment of any cancellation penalty, fee, or charge imposed by the medical services provider.  In its discretion, the CLAIMS ADMINISTRATOR may evaluate the reason provided by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for such cancellation and pay the cancellation penalty, fee, or charge imposed by the medical services provider.

8)     A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who cancels or seeks to reschedule an appointment for a medical consultation visit under the PERIODIC MEDICAL CONSULTATION PROGRAM shall be solely responsible for contacting the CLAIMS ADMINISTRATOR to reschedule any such visit.  If a medical services provider cancels or seeks to reschedule an appointment for a medical consultation visit under the PERIODIC MEDICAL CONSULTATION PROGRAM, the CLAIMS ADMINISTRATOR shall be responsible for contacting the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to reschedule  any such visit.

9)     The CLAIMS ADMINISTRATOR shall instruct all medical services providers that, in the event a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER attempts to schedule a medical consultation visit directly with a medical services provider, the provider shall instruct the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to contact the CLAIMS ADMINISTRATOR to schedule any such medical consultation visit.

10)     The CLAIMS ADMINISTRATOR shall not make any payment to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who requests the mileage reimbursement set forth in Section VII.D.5 of the MEDICAL SETTLEMENT AGREEMENT

unless that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER actually travels to and obtains a medical consultation visit at a medical services provider located outside of a radius of 25 miles from the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S primary residence in accordance with Section VII.D.5 above.  The CLAIM ADMINISTRATOR shall verify that any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who makes a request for the mileage reimbursement set forth in Section VII.D.5 of the MEDICAL SETTLEMENT AGREEMENT qualifies to receive such reimbursement.

11)    The CLAIMS ADMINISTRATOR shall send an explanation of benefits statement to each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for each medical consultation visit that he or she completes.  The explanation of benefits statement shall describe those services, medical examinations, and/or tests set forth on Exhibit 12 that were performed during the visit.

12)    If any medical service, examination, and/or test and/or any medical treatment or care that is not set forth in Exhibit 12 is performed during or after a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S periodic medical consultation visit, that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or, where applicable, his or her insurer, shall have financial responsibility for such medical service(s), examination(s), and/or test(s) and/or such medical treatment or care only if he or she or, where applicable, his or her insurer, has agreed in writing to authorize and pay for such medical service(s), examination(s), and/or test(s) and/or such medical treatment or care.  If the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or, where applicable, his or her insurer, has not agreed in writing to authorize and pay for such medical service(s), examination(s) and/or test(s) and/or such medical treatment or care, the medical services provider may not charge the MEDICAL

BENEFITS SETTLEMENT CLASS MEMBER or, where applicable, his or her insurer, the CLAIMS ADMINISTRATOR, BP, or MEDICAL BENEFITS CLASS COUNSEL for them. Neither BP, MEDICAL BENEFITS CLASS COUNSEL, nor the CLAIMS ADMINISTRATOR shall have any financial responsibility for any medical service(s), examination(s), and/or test(s), and/or any medical treatment or care performed during or after a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S periodic medical consultation visit that is not set forth in Exhibit 12; provided, however, that nothing in this Section VII.D.12 shall preclude a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER from seeking recovery of the costs of such medical service(s), examination(s), and/or test(s), and/or such medical treatment or care in a BACK-END LITIGATION OPTION LAWSUIT, brought pursuant to the terms of Section VIII.

13) Beginning one year after the EFFECTIVE DATE, and every year thereafter for the ensuing 21 years, the CLAIMS ADMINISTRATOR shall send qualifying MEDICAL BENEFITS CLASS MEMBERS a statement (1) describing the medical consultation visits made by the MEDICAL BENEFITS CLASS MEMBER to date and the number of such remaining visits available to him or her under the PERIODIC MEDICAL CONSULTATION PROGRAM, (2) advising the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER when he or she is next eligible for a medical consultation visit, and (3) requesting that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER update any contact information that has changed in the preceding year.

E.    Confidentiality of Information Relating to MEDICAL BENEFITS SETTLEMENT CLASS MEMBER

1) All information relating to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that is disclosed to or obtained by the CLAIMS ADMINISTRATOR,

healthcare providers, or any other authorized entity as part of the PERIODIC MEDICAL CONSULTATION PROGRAM is confidential and shall be treated as PROTECTED HEALTH INFORMATION subject to HIPAA and other applicable privacy laws.

2) All information relating to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that is disclosed to or obtained by the CLAIMS ADMINISTRATOR, healthcare providers, or any other authorized entity as part of the PERIODIC MEDICAL CONSULTATION PROGRAM may be used only by (i) the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER upon request, (ii) designated healthcare providers providing medical services, examinations and tests as part of the PERIODIC MEDICAL CONSULTATION PROGRAM, or (iii) by the CLAIMS ADMINISTRATOR, healthcare providers, or any other authorized entity to the extent necessary for the administration of this MEDICAL SETTLEMENT AGREEMENT according to its terms, including the provision and administration of medical consultation visits as part of the PERIODIC MEDICAL CONSULTATION PROGRAM, and the determination of the fact and amounts of any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type.

F. Medical services providers who provide medical consultation visits as part of the PERIODIC MEDICAL CONSULTATION PROGRAM shall be required to retain all medical records, including x-ray films, from MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS' medical consultation visits in compliance with applicable state and federal laws; provided, however, that each medical services provider shall be required to retain all medical records in the format(s) prescribed by applicable state and federal laws and, notwithstanding any shorter time period permitted under applicable laws, shall be required to retain such medical

records for not less than ten years after the conclusion of the PERIODIC MEDICAL

CONSULTATION PROGRAM.

      G.     Following the EFFECTIVE DATE, BP and MEDICAL BENEFITS CLASS

COUNSEL agree to discuss in good faith as necessary the need for any modifications to the

PERIODIC MEDICAL CONSULTATION PROGRAM in light of generally accepted advances

in medical science and to take appropriate steps in light of those discussions.

## VIII.   BACK-END LITIGATION OPTION FOR LATER-MANIFESTED PHYSICAL CONDITIONS

A.    A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeking compensation from BP for a LATER-MANIFESTED PHYSICAL CONDITION must submit a NOTICE OF INTENT TO SUE, substantially in the form attached hereto as Exhibit 4, and all additional required materials referenced therein, to the CLAIMS ADMINISTRATOR.  THE NOTICE OF INTENT TO SUE and materials submitted therewith must be submitted to the CLAIMS ADMINISTRATOR within 4 years after either the first diagnosis of that LATER-MANIFESTED PHYSICAL CONDITION or the EFFECTIVE DATE, whichever is later.  A NOTICE OF INTENT TO SUE must identify the BP defendants from whom the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeks compensation.  Such BP defendants may only be BP Exploration & Production Inc., BP America Production Company, and/or their respective successors or assigns.  In the NOTICE OF INTENT TO SUE, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall affirm that he or she will abide by all the terms and restrictions of this MEDICAL BENEFITS CLASS ACTION SETTLEMENT.

B.    Election of Remedy

1)    A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who is diagnosed with a LATER-MANIFESTED PHYSICAL CONDITION may either (i) seek compensation for that LATER-MANIFESTED PHYSICAL CONDITION pursuant to workers' compensation law or the Longshore and Harbor Workers' Compensation Act, as applicable, or (ii) seek compensation from BP for that LATER-MANIFESTED PHYSICAL CONDITION pursuant to the BACK-END LITIGATION OPTION.  Such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may not seek compensation from any RELEASED PARTY in any other manner.

57

2)	A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who has filed a claim for benefits under workers' compensation law or the Longshore and Harbor Workers' Compensation Act for a particular LATER-MANIFESTED PHYSICAL CONDITION may not seek compensation for that LATER-MANIFESTED PHYSICAL CONDITION through this BACK-END LITIGATION OPTION.

3)	A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who has filed a NOTICE OF INTENT TO SUE for a particular LATER-MANIFESTED PHYSICAL CONDITION may not file a claim for benefits under workers' compensation law or the Longshore and Harbor Workers' Compensation Act for that LATER-MANIFESTED PHYSICAL CONDITION.

C.	Any BP defendant named in a NOTICE OF INTENT TO SUE shall have the option, subject to the provisions of this Section, to mediate any claim for which a NOTICE OF INTENT TO SUE is submitted to the CLAIMS ADMINISTRATOR.

1)	Within 10 days of the receipt by the CLAIMS ADMINISTRATOR of a compliant NOTICE OF INTENT TO SUE, or the EFFECTIVE DATE, whichever is later, the CLAIMS ADMINISTRATOR shall transmit such NOTICE OF INTENT TO SUE to all BP defendants named in that NOTICE OF INTENT TO SUE.  Within 30 days of receipt of such NOTICE OF INTENT TO SUE, each BP defendant shall notify the CLAIMS ADMINISTRATOR whether it chooses to mediate the claim.  Failure by a BP defendant to notify the CLAIMS ADMINISTRATOR whether it chooses to mediate the claim shall be deemed to be a decision by that BP defendant not to mediate.

2)	Within 10 days of receipt of a BP defendant's notification of its decision to mediate, the CLAIMS ADMINISTRATOR will notify the MEDICAL BENEFITS

SETTLEMENT CLASS MEMBER that a BP defendant named in the NOTICE OF INTENT TO SUE has exercised the mediation option.  If any BP defendant named in the NOTICE OF INTENT TO SUE exercises its option to mediate, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall not have the right to file a BACK-END LITIGATION OPTION LAWSUIT until the conclusion of the mediation process.  If no BP defendant named in the NOTICE OF INTENT TO SUE exercises its option to mediate the claim, the CLAIMS ADMINISTRATOR will so notify the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.  If no BP defendant named in the NOTICE OF INTENT TO SUE exercises its option to mediate, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall have the right to file a BACK-END LITIGATION OPTION LAWSUIT, but only in accordance with the provisions of Section VIII.G.

        3)     If any BP defendant named in the NOTICE OF INTENT TO SUE exercises its option to mediate, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall, within 60 days of such notification by the CLAIMS ADMINISTRATOR, submit a MEDIATION INFORMATION FORM, substantially in the form of Exhibit 3, along with any authorizations required to be submitted therewith to the CLAIMS ADMINISTRATOR.  The CLAIMS ADMINISTRATOR shall forward each completed MEDIATION INFORMATION FORM, along with any authorizations, to the mediating BP defendant(s) within 10 days of receipt.  If a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER fails to submit a fully completed MEDIATION INFORMATION FORM and authorization required to be submitted therewith within 60 days of notification that a BP defendant has exercised its option to mediate, the CLAIMS ADMINISTRATOR shall send a NOTICE OF DEFECT which shall contain a brief explanation of the DEFECT.  The MEDICAL BENEFITS SETTLEMENT CLASS

MEMBER shall have 30 days to cure the DEFECT and submit a fully completed MEDIATION INFORMATION FORM and any authorizations required to be submitted therewith to the CLAIMS ADMINISTRATOR.  If the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER fails timely to cure the DEFECT in his or her MEDIATION INFORMATION FORM, he or she shall be deemed to have failed to file a timely NOTICE OF INTENT TO SUE, and his or her claim for the LATER-MANIFESTED PHYSICAL CONDITION shall be released in accordance with Section XVI.B.1.

      D.    <u>Confidentiality of Information Relating to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS</u>

      1)    All information relating to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that is disclosed to or obtained by the CLAIMS ADMINISTRATOR, BP defendants, healthcare providers, or any other authorized entity in connection with the exercise of a BACK-END LITIGATION OPTION is confidential and shall be treated as PROTECTED INFORMATION subject to HIPAA and other applicable privacy laws.

      2)    All information relating to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that is disclosed to or obtained by the CLAIMS ADMINISTRATOR, BP defendants, healthcare providers, or any other authorized entity in connection with the exercise of a BACK-END LITIGATION OPTION may be used only by:  (i) the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER upon request; (ii) BP defendants in a BACK-END LITIGATION OPTION mediation or a BACK-END LITIGATION OPTION LAWSUIT; or (iii) the CLAIMS ADMINISTRATOR, healthcare providers, a mediator in that BACK-END LITIGATION OPTION LAWSUIT, or any other authorized entity to the extent necessary for the administration of this MEDICAL SETTLEMENT AGREEMENT according to its terms,

including the exercise of this BACK-END LITIGATION OPTION by MEDICAL BENEFITS
SETTLEMENT CLASS MEMBERS claiming LATER-MANIFESTED PHYSICAL
CONDITIONS, and the determination of the fact and amounts of any liens, claims, or rights of
subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type.

E.  Mediators

1)  Within 10 days of the receipt of the MEDIATION INFORMATION
FORM by the CLAIMS ADMINISTRATOR, the CLAIMS ADMINISTRATOR shall assign a
mediator to mediate that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim.

2)  Within 10 days of assignment, the mediator shall contact the MEDICAL
BENEFITS SETTLEMENT CLASS MEMBER and the mediating BP defendant(s), and set a
date for the mediation, which shall commence within 6 months of the appointment of the
mediator.  This period of time for commencement of the mediation may be extended by
agreement of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, the mediating BP
defendant(s), and the mediator.

3)  The mediation shall be between the mediating BP defendant(s) and the
MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.  The mediating BP defendant(s)
and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS may be represented by counsel
at the mediation.

4)  The mediating BP defendant(s) and the MEDICAL BENEFITS
SETTLEMENT CLASS MEMBER may submit information and documentation for the
mediator's confidential review, including medical records, damages information, expert reports,
scientific literature, the NOTICE OF INTENT TO SUE that was completed by or on behalf of
the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and the MEDIATION

INFORMATION FORM that was completed by or on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

5)      The mediation shall take place at a location agreed upon by the mediator, the mediating BP defendant(s), and the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.  In the event that a location cannot be agreed upon, the mediation shall take place in New Orleans, Louisiana.  The mediator may incur reasonable charges necessary to provide an adequate facility for the mediation.  Such charges shall be SETTLEMENT COSTS.

6)      The mediation shall last no more than 2 days, unless extended by agreement of the mediator, the mediating BP defendant(s), and the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.  Within 10 days of the conclusion of the mediation, the mediator shall submit a written notice to the CLAIMS ADMINISTRATOR, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and the mediating BP defendant(s), certifying that the mediation has been concluded and indicating whether or not an agreement in principle has been reached.  If an agreement in principle has been reached, the mediating BP defendant(s) and the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall have 30 days, or longer by mutual agreement, to finalize their settlement agreement.  If the mediating BP defendant(s) and the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER are unsuccessful in reaching a final settlement agreement within the specified period, they shall notify the mediator, who shall, within 10 days of such notification, submit a written notice to the CLAIMS ADMINISTRATOR, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and the mediating BP defendant(s), certifying that the mediation has been concluded and was unsuccessful.

7)      Upon receipt of a bill from the mediator and fulfillment of the mediator's duties set forth in this Section VIII.E, the CLAIMS ADMINISTRATOR will reimburse the mediator for the reasonable fees and expenses incurred by the mediator to prepare for and participate in the mediation, provided that the CLAIMS ADMINISTRATOR shall not reimburse the mediator for fees in excess of $350 per hour and a $500 case fee (as adjusted yearly for inflation by the CLAIMS ADMINISTRATOR).    Such fees and expenses shall be SETTLEMENT COSTS.   In no circumstances shall the BP defendant or the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER participating in the mediation be responsible for any mediation fees in excess of the mediation fees set forth herein.

F.      If any BP defendant named in a NOTICE OF INTENT TO SUE exercises an option to mediate and the mediation does not resolve the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim as to all BP defendants named in the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S NOTICE OF INTENT TO SUE, that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall have the right to file a BACK-END LITIGATION OPTION LAWSUIT against any BP defendant named in his or her NOTICE OF INTENT TO SUE as to whom the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim is not resolved ("BACK-END LITIGATION OPTION DEFENDANT") consistent with the terms of Section VIII.G.

G.      BACK-END LITIGATION OPTION LAWSUIT Claims and Defenses

1)      In General

a)      A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may file a BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION

63

OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION in accordance
with the terms of this Section VIII.G.

       b)     Any BACK-END LITIGATION OPTION LAWSUIT against a
BACK-END LITIGATION OPTION DEFENDANT must be filed within 6 months of either:
(a) notice by the CLAIMS ADMINISTRATOR to the MEDICAL BENEFITS SETTLEMENT
CLASS MEMBER of the election of all BP defendants named in the NOTICE OF INTENT TO
SUE not to mediate, or (b) written confirmation by the CLAIMS ADMINISTRATOR to the
MEDICAL BENEFITS SETTLEMENT CLASS MEMBER and to all BP defendants named in
the NOTICE OF INTENT TO SUE that the mediation did not resolve the MEDICAL
BENEFITS SETTLEMENT CLASS MEMBER'S claim as to all BP defendants named in the
NOTICE OF INTENT TO SUE.

       c)     A BACK-END LITIGATION OPTION LAWSUIT against a
BACK-END LITIGATION OPTION DEFENDANT shall be filed only in the COURT;
provided, however, that nothing in this MEDICAL SETTLEMENT AGREEMENT is intended
to preclude a subsequent transfer of venue of such lawsuit to a different United States District
Court consistent with the Federal Rules of Civil Procedure.

       d)     A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER
may not bring a BACK-END LITIGATION OPTION LAWSUIT against a BACK-END
LITIGATION OPTION DEFENDANT pursuant to Rule 23 of the Federal Rules of Civil
Procedure or any other class, mass, or aggregate action procedures; provided, however, nothing
in this MEDICAL SETTLEMENT AGREEMENT is intended to preclude consolidation or
joinder of matters at issue or actions consistent with the Federal Rules of Civil Procedure.
Further, nothing herein should be interpreted to preclude naming or joining any OTHER PARTY

as a defendant in a BACK-END LITIGATION OPTION LAWSUIT or joining a BP defendant
to a lawsuit against any OTHER PARTY subject to the provisions of this Section VIII.G.

        2)     <u>Claims and Defenses</u>

        a)     A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER
may assert a claim against a BACK-END LITIGATION OPTION DEFENDANT in a BACK-
END LITIGATION OPTION LAWSUIT only for that LATER-MANIFESTED PHYSICAL
CONDITION for which he or she timely submitted a NOTICE OF INTENT TO SUE.

        b)     A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER
may assert a claim against a BACK-END LITIGATION OPTION DEFENDANT in a BACK-
END LITIGATION OPTION LAWSUIT for a LATER-MANIFESTED PHYSICAL
CONDITION only for compensatory damages.

        c)     A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER
may not assert any claims against any BACK-END LITIGATION OPTION DEFENDANT in a
BACK-END LITIGATION OPTION LAWSUIT for damages or remedies of whatever kind or
character, known or unknown, that are recognized by law, or that may be created or recognized
in the future by statute, regulation, judicial decision, or in any other manner, for punitive
damages, exemplary damages, multiple damages, and other non-compensatory damages or
penalties of any kind.

        d)     A BACK-END LITIGATION OPTION DEFENDANT may not
assert in a BACK-END LITIGATION OPTION LAWSUIT any defense based on prescription,
any statute of limitations or repose, the doctrine of laches, or any other defense predicated on the
failure timely to pursue the claim, any defense based on splitting a cause of action, or any
defense based on exclusivity of remedies under workers' compensation law or the Longshore

and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950; provided, however, that nothing in this section is intended to allow a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to bring both a workers' compensation or Longshore and Harbor Workers' Compensation Act claim and seek relief under this BACK-END LITIGATION OPTION for a LATER-MANIFESTED PHYSICAL CONDITION.

        3)    <u>Issues to be Litigated</u>

        a)    For purposes of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION, unless otherwise stipulated and agreed to in writing between a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER and a BACK-END LITIGATION OPTION DEFENDANT, the following issues, elements, and proofs of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION may be litigated at trial:

        (i)    The fact of diagnosis (*i.e.,* whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was correctly diagnosed with the alleged LATER-MANIFESTED PHYSICAL CONDITION);

        (ii)    The amount and location of oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;

(iii)     The level and duration of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;

(iv)     Whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION was legally caused by his or her exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES;

(v)     Whether there exist any alternative causes for the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION, including, but not limited to, exposure to other substances or sources of contaminants and/or toxins; and

(vi)     The amount, if any, of compensatory damages to which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is entitled.

b)     For purposes of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION, unless otherwise stipulated and agreed to in writing between a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER and a BACK-END LITIGATION OPTION DEFENDANT, the following issues, elements, and proofs of a MEDICAL BENEFITS

SETTLEMENT CLASS MEMBER'S BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION need not be proven and may not be litigated at trial:

(i)     The fact and/or existence of this MEDICAL SETTLEMENT AGREEMENT or any other class or individual settlement in connection with the *DEEPWATER HORIZON* INCIDENT, in order to prove liability for, invalidity of, or amount of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim;

(ii)    The alleged fault of BP for the *DEEPWATER HORIZON* INCIDENT; and

(iii)   Exposure of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES.

4)      With respect to the issues, elements, and proofs that need not be proven and may not be litigated in a trial of a BACK-END LITIGATION OPTION LAWSUIT, neither the BP defendants nor the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER bringing the BACK-END LITIGATION OPTION LAWSUIT shall make the failure to prove or litigate such issues, elements, or proofs the basis for dismissal or judgment.  In addition, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER bringing the BACK-END LITIGATION OPTION LAWSUIT and the BP defendants shall, following the filing of the BACK-END LITIGATION OPTION LAWSUIT, enter into appropriate stipulations to effectuate the provisions of Section VIII.G.

5) With respect to a claim for a LATER-MANIFESTED PHYSICAL CONDITION by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER against a BACK-END LITIGATION OPTION DEFENDANT in a BACK-END LITIGATION OPTION LAWSUIT, pretrial discovery may be had only as to non-privileged matters reasonably calculated to lead to the discovery of admissible evidence relevant to any issue that may be litigated at trial.

6) Pre-judgment interest shall be available beginning on the date on which either (a) all BP defendants named in the NOTICE OF INTENT TO SUE elect not to mediate the claim by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for a LATER-MANIFESTED PHYSICAL CONDITION, or (b) the mediator certifies that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claims against any mediating BP defendants named in the NOTICE OF INTENT  TO SUE were not resolved by the conclusion of the mediation, pursuant to Section VIII.E.6.

7) If a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER initiates a BACK-END LITIGATION OPTION LAWSUIT against any BACK-END LITIGATION OPTION DEFENDANT based upon a claim for a LATER-MANIFESTED PHYSICAL CONDITION, such BACK-END LITIGATION OPTION DEFENDANT shall have the right to challenge before the COURT whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER timely and properly filed a NOTICE OF INTENT TO SUE and/or timely and properly filed his or her BACK-END LITIGATION OPTION LAWSUIT.

8) If a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who claims a LATER-MANIFESTED PHYSICAL CONDITION is determined by the COURT to have failed to comply with the procedures set forth in this Section VIII, and such determination

69

is final and not subject to further appeal, he or she shall be barred from bringing a BACK-END LITIGATION OPTION LAWSUIT and all of his or her claims related to that LATER-MANIFESTED PHYSICAL CONDITION shall be deemed released and discharged with prejudice as against all RELEASED PARTIES.

## IX.   GULF REGION HEALTH OUTREACH PROGRAM

A.    The GULF REGION HEALTH OUTREACH PROGRAM shall be established under this MEDICAL SETTLEMENT AGREEMENT to expand capacity for and access to high quality, sustainable, community-based healthcare services, including primary care, behavioral and mental health care, and environmental medicine, in the Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle.  The GULF REGION HEALTH OUTREACH PROGRAM shall consist of four integrated GULF REGION HEALTH OUTREACH PROJECTS and shall establish a GULF REGION HEALTH OUTREACH PROGRAM LIBRARY.

B.    Funding and implementation of the GULF REGION HEALTH OUTREACH PROGRAM shall begin upon the COURT'S entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER; provided, however, that if this MEDICAL SETTLEMENT AGREEMENT is terminated in accordance with Section XIV, BP shall have no obligation to continue with the funding of the GULF REGION HEALTH OUTREACH PROGRAM.

C.    The Program

1)    Upon entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, the CLAIMS ADMINISTRATOR shall enter into a GRANT AGREEMENT substantially in the form of Exhibit 2 with the grantee(s) for each GULF REGION HEALTH OUTREACH PROJECT and shall disburse funds to each such project in accordance with the terms of this Section IX.E and the grant proposals attached as Exhibits 13, 14, 15 and 16.

2)    The GULF REGION HEALTH OUTREACH PROJECTS shall be the following:

a)      A grant of $50 million to expand and improve access to health care in underserved Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle (the "PRIMARY CARE CAPACITY PROJECT") as detailed in Exhibit 13.

b)      A grant of $36 million to address behavioral and mental health needs, expertise, capacity, and literacy in the Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle (the "MENTAL AND BEHAVIORAL HEALTH CAPACITY PROJECT") as detailed in Exhibit 14.

c)      A grant of $4 million to train community health workers on peer listening, community resiliency, and other related issues in Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle (the "COMMUNITY HEALTH WORKERS TRAINING PROJECT") as detailed in Exhibit 15.

d)      A grant of $15 million to expand and improve environmental health expertise, capacity, and literacy in the Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle (the "ENVIRONMENTAL HEALTH CAPACITY AND LITERACY PROJECT") as detailed in Exhibit 16.

D.      Grantees

1)      The grantees for the PRIMARY CARE CAPACITY PROJECT shall be the Louisiana Public Health Institute ("LPHI") and the Alliance Institute, with LPHI acting as fiscal sponsor for such project and with Eric Baumgartner as the Project Leader.

2)      The grantees for the MENTAL AND BEHAVIORAL HEALTH CAPACITY PROJECT shall be Louisiana State University Health Sciences Center with Dr. Howard Osofsky and Dr. Joy Osofsky as the Project Leaders, University of Southern Mississippi with Dr. Timothy Rehner as the Project Leader, University of South Alabama with

Dr. Jennifer Langhinrichsen-Rohling as the Project Leader, and University of West Florida with Dr. Glenn Rohrer as the Project Leader.

3)    The grantee for the COMMUNITY HEALTH WORKERS TRAINING PROJECT shall be University of South Alabama with Dr. J. Steven Picou as the Project Leader.

4)    The grantee for the ENVIRONMENTAL HEALTH CAPACITY AND LITERACY PROJECT shall be Tulane University School of Public Health and Tropical Medicine with Dr. Maureen Y. Litchveld as the Project Leader.

5)    Each GULF REGION HEALTH OUTREACH PROJECT shall be implemented in compliance with the terms of its GRANT AGREEMENT.  No funds distributed to a GULF REGION HEALTH OUTREACH PROJECT shall be used for any purpose other than the purposes set forth in such project's GRANT AGREEMENT.  The grantees of a GULF REGION HEALTH OUTREACH PROJECT shall maintain clear, accurate, and complete records with respect to funds received under the GULF REGION HEALTH OUTREACH PROGRAM.  The grantee(s) of a GULF REGION HEALTH OUTREACH PROJECT shall be responsible for complying with all applicable laws and regulations, including income and employment tax obligations, medical licensure requirements, and HIPAA.

6)    The grantee(s) of a GULF REGION HEALTH OUTREACH PROJECT shall make quarterly written reports regarding implementation of their respective grants, and shall also provide such written reports to the CLAIMS ADMINISTRATOR at least 10 days in advance of the scheduled quarterly meetings of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE, pursuant to Section IX.G.3.  The CLAIMS ADMINISTRATOR shall provide such reports to the GULF REGION HEALTH OUTREACH

PROGRAM COORDINATING COMMITTEE, MEDICAL BENEFITS CLASS COUNSEL, and BP.

7)     The grantee(s) of a GULF REGION HEALTH OUTREACH PROJECT shall provide such additional information regarding the implementation of their respective grants as may be reasonably requested by the CLAIMS ADMINISTRATOR or as may be required by law or requested by the COURT.

8)     The grantee(s) of a GULF REGION HEALTH OUTREACH PROJECT shall, prior to receiving any disbursement of funds, execute a GRANT AGREEMENT, in substantially the same form as attached as Exhibit 2, which shall include, to the extent allowed by law, a hold harmless agreement in favor of MEDICAL BENEFITS CLASS COUNSEL, MEDICAL BENEFITS CLASS REPRESENTATIVES, BP, and its counsel, employees, and agents, and the CLAIMS ADMINISTRATOR, and protecting MEDICAL BENEFITS CLASS COUNSEL, MEDICAL BENEFITS CLASS REPRESENTATIVES, BP, and its counsel, employees, and agents, and the CLAIMS ADMINISTRATOR from any liability for activities of a grantee in connection with a GULF REGION HEALTH OUTREACH PROJECT.

E.     Funding Amounts and Disbursements of Funds

1)     Provided that the grantee of a GULF REGION HEALTH OUTREACH PROJECT has executed a GRANT AGREEMENT, the CLAIMS ADMINISTRATOR shall disburse funds to that GULF REGION HEALTH OUTREACH PROJECT in six distributions, in the amounts set forth in Section IX.E.3, payable on the schedule set forth below:

a)     Distribution One shall be distributed to each GULF REGION HEALTH OUTREACH PROJECT within 30 days of the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER.

b)      Distribution Two shall be distributed within 90 days of Distribution One.

c)      Distribution Three shall be distributed 1 year after Distribution One.

d)      Distribution Four shall be distributed 2 years after Distribution One.

e)      Distribution Five shall be distributed 3 years after Distribution One.

f)      Distribution Six shall be distributed 4 years after Distribution One.

2)      At least 10 days prior to the scheduled date of each of these distributions, BP shall transfer into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into the GULF REGION HEALTH OUTREACH PROJECTS FUND sufficient funds to allow the CLAIMS ADMINISTRATOR to make each such distribution.

3)      The CLAIMS ADMINISTRATOR shall make the distributions to the GULF HEALTH OUTREACH PROJECTS from the GULF REGION HEALTH OUTREACH PROJECTS FUND in the following amounts:

a)      The PRIMARY CARE CAPACITY PROJECT shall be funded in the amount of $50 million as follows:

(i)      Distribution One:  $2,250,000;

(ii)     Distribution Two:  $7,848,806;

(iii)    Distribution Three:  $16,222,413;

(iv)    Distribution Four:  $14,072,680;

75

     (v)    Distribution Five:  $5,486,348; and

     (vi)    Distribution Six:  $4,119,753.

    b)    The  MENTAL  AND  BEHAVIORAL  HEALTH  CAPACITY PROJECT shall be funded in the amount of $36 million as follows:

     (i)    Distribution One:  $1,389,008;

     (ii)    Distribution Two:  $4,667,024;

     (iii)    Distribution Three:  $13,221,164;

     (iv)    Distribution Four:  $7,432,198;

     (v)    Distribution Five:  $5,574,149; and

     (vi)    Distribution Six:  $3,716,457.

    c)    The  COMMUNITY  HEALTH  WORKERS  TRAINING PROJECT shall be funded in the amount of $4 million as follows:

     (i)    Distribution One:  $388,571;

     (ii)    Distribution Two:  $1,165,713;

     (iii)    Distribution Three:  $750,000;

     (iv)    Distribution Four:  $650,000;

     (v)    Distribution Five:  $550,000; and

     (vi)    Distribution Six:  $495,716.

    d)    The  ENVIRONMENTAL  HEALTH  CAPACITY  AND LITERACY PROJECT shall be funded in the amount of $15 million as follows:

     (i)    Distribution One:  $755,847;

     (ii)    Distribution Two:  $2,267,539;

     (iii)    Distribution Three:  $2,998,139;

        (iv)      Distribution Four: $3,002,636;

        (v)      Distribution Five: $2,997,509; and

        (vi)      Distribution Six: $2,978,330.

F.      The administrative duties of the CLAIMS ADMINISTRATOR and the trustee and/or the directed trustee of the MEDICAL SETTLEMENT FUND with respect to the GULF REGION HEALTH OUTREACH PROGRAM shall include:

1)      Upon the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST shall undertake all necessary steps to establish the GULF REGION HEALTH OUTREACH PROJECTS FUND.

2)      The CLAIMS ADMINISTRATOR and/or the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST shall establish procedures and controls to manage and account for: (a) the disbursement of funds from the GULF REGION HEALTH OUTREACH PROJECTS FUND to the GULF REGION HEALTH OUTREACH PROJECTS; (b) the disbursement of funds from the ADMINISTRATIVE FUND for the reasonable and necessary costs of establishing, implementing, and managing the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY; and (c) the payment from the ADMINISTRATIVE FUND of all other costs associated with the GULF REGION HEALTH OUTREACH PROGRAM.

3)      The CLAIMS ADMINISTRATOR shall annually conduct a financial audit of each of the GULF REGION HEALTH OUTREACH PROJECTS and report the results of such financial audits to MEDICAL BENEFITS CLASS COUNSEL and BP. In the event that a financial audit reveals any material financial irregularity in a GULF REGION HEALTH

OUTREACH PROJECT, the CLAIMS ADMINISTRATOR shall cease any further disbursements to such project and shall notify and seek direction from MEDICAL BENEFITS CLASS COUNSEL, BP, and the COURT.

       G.     The GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE

       1)     The GULF REGION HEALTH OUTREACH PROJECTS shall, to the greatest extent possible, function in a cooperative and integrated manner and have reasonable flexibility to adjust their respective implementations to respond to changed needs and circumstances. To accomplish this goal, a GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE shall be created upon the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER.

       2)     The GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE shall be comprised of a maximum of 13 persons. Representatives from each of the GULF REGION HEALTH OUTREACH PROJECTS shall be members of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE, as follows: (i) the PRIMARY CARE CAPACITY PROJECT and the MENTAL AND BEHAVIORAL HEALTH CAPACITY PROJECT shall each have no more than 3 members and (ii) the ENVIRONMENTAL CAPACITY AND LITERACY PROJECT and the COMMUNITY HEALTH WORKERS TRAINING PROJECT shall each have no more than 2 members. Membership of a representative of a GULF REGION HEALTH OUTREACH PROJECT shall be contingent on his or her continuing to provide services as part of a GULF REGION HEALTH OUTREACH PROJECT. Up to 3 members who are not affiliated with a GULF REGION HEALTH OUTREACH PROJECT, including a chairperson of the GULF

REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE, shall be selected by MEDICAL BENEFITS CLASS COUNSEL and BP.  In the event a member of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE is unable to continue to serve, MEDICAL BENEFITS CLASS COUNSEL and BP shall jointly select a replacement member.

      3)    The   GULF   REGION   HEALTH   OUTREACH   PROGRAM COORDINATING COMMITTEE shall meet quarterly, at least twice-per-year in person at an agreed upon location in the Gulf region, to (a) receive written reports on the implementation of each of the GULF REGION HEALTH OUTREACH PROJECTS, (b) evaluate the implementation of each of the GULF REGION HEALTH OUTREACH PROJECTS, (c) confirm that the required benchmarks set forth in each of the respective GULF REGION HEALTH OUTREACH PROJECTS' GRANT AGREEMENTS are being satisfactorily met, (d) identify activities to enhance cooperation among, and integration of the activities covered by, the GULF REGION HEALTH OUTREACH PROJECTS, and (e) by a vote of at least 10 out of 13 members, identify activities and make recommendations, as set forth in Section IX.G.4 below regarding adjustments needed to enhance the implementation of any GULF REGION HEALTH OUTREACH PROJECT, including a recommendation to delay the distribution of funds for a particular project because benchmarks set forth in a GULF REGION HEALTH OUTREACH PROJECT'S GRANT AGREEMENT are not being satisfactorily met.

      4)    Recommendations by the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE on how to enhance cooperation among, and integration of the activities covered by, the GULF REGION HEALTH OUTREACH PROJECTS and, to the extent warranted, adjustments to enhance the implementation of the respective GULF

REGION HEALTH OUTREACH PROJECTS (*e.g.*, accelerate the funding schedule of a GULF REGION HEALTH OUTREACH PROJECT, delay the funding schedule of a GULF REGION HEALTH OUTREACH PROJECT, or reallocate the funding within a GULF REGION HEALTH OUTREACH PROJECT), shall be made in writing to the CLAIMS ADMINISTRATOR, MEDICAL BENEFITS CLASS COUNSEL, and BP. MEDICAL BENEFITS CLASS COUNSEL and BP shall promptly evaluate such recommendations, and, if MEDICAL BENEFITS CLASS COUNSEL and BP jointly agree such recommendations should be adopted, they shall jointly seek approval of the COURT to implement such recommendations. If MEDICAL BENEFITS CLASS COUNSEL and BP do not jointly agree such recommendations should be adopted, funding of the GULF REGION HEALTH OUTREACH PROJECT shall continue pursuant to the original funding schedule.

5)     Notwithstanding anything in the foregoing, neither MEDICAL BENEFITS CLASS COUNSEL, BP, the CLAIMS ADMINISTRATOR, nor the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE shall have any authority to change the goals of the GULF REGION HEALTH OUTREACH PROGRAM, or to reallocate funding among the GULF REGION HEALTH OUTREACH PROJECTS, unless such change in goals or reallocation of funding is approved by the COURT on joint motion of MEDICAL BENEFITS CLASS COUNSEL and BP.

6)     MEDICAL BENEFITS CLASS COUNSEL and BP representatives may attend the quarterly meetings of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE as observers and at their own expense.

7)     The CLAIMS ADMINISTRATOR shall make arrangements for and pay, out of the ADMINISTRATIVE FUND, the reasonable and necessary expenses for the quarterly

meetings of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE.

8)   The CLAIMS ADMINISTRATOR shall pay, out of the ADMINISTRATIVE FUND, each member of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE reasonable and necessary travel and lodging expenses for each quarterly meeting that he or she attends.  The CLAIMS ADMINISTRATOR shall also pay, out of the ADMINISTRATIVE FUND, each member of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE who is not a representative of a GULF REGION HEALTH OUTREACH PROJECT a $1,000 honorarium for each quarterly meeting that he or she attends.

9)   The CLAIMS ADMINISTRATOR shall pay, out of the ADMINISTRATIVE FUND, the Chair of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE a reasonable fee, which shall be approved by MEDICAL BENEFITS CLASS COUNSEL AND BP, for his or her services on such committee.

H.   GULF REGION HEALTH OUTREACH PROGRAM LIBRARY

1)   Beginning no later than 3 months following the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, the CLAIMS ADMINISTRATOR shall undertake to create, maintain, and update annually a publicly accessible, text-searchable, indexed, online electronic GULF REGION HEALTH OUTREACH PROGRAM LIBRARY comprised of LIBRARY MATERIALS.

2)   LIBRARY MATERIALS shall include:

a)   Documents and electronically stored information describing and/or identifying the composition of oil, other hydrocarbons, and other substances released from the

81

MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

b)      Documents and electronically stored information describing and/or identifying the quantity of oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

c)      Documents and electronically stored information describing and/or identifying the fate and transport (including the timing and quantity thereof) of oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

d)      Documents and electronically stored information describing and/or identifying the nature, content, and scope of the RESPONSE ACTIVITIES;

e)      Documents and electronically stored information describing and/or identifying any health risks or effects from exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or any of the dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

f)      Documents and electronically stored information describing and/or identifying natural attenuation or decomposition of oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or the dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

g)      Documents and electronically stored information describing and/or identifying the nature, content, and scope of in situ burning performed during the RESPONSE ACTIVITIES, including any health risks and effects associated with in situ burning of any oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and any of the dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

h)      Documents and electronically stored information describing and/or identifying any monitoring, sampling or testing for oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or dispersants and/or decontaminants used in the RESPONSE ACTIVITIES, including any results thereof;

i)      Materials describing and/or identifying occupational safety, worker protection, and preventative measures for CLEAN-UP WORKERS; and

j)      Documents and electronically-stored information describing and/or identifying any health studies of persons exposed to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or dispersants and/or decontaminants used in the RESPONSE ACTIVITIES.

3)      The definition of LIBRARY MATERIALS shall not include any documents and electronically-stored information that contain or would reveal information protected by (a) HIPAA or other applicable privacy laws, and/or (b) the attorney-client privilege, work product doctrine, or common interest privilege.   To the extent any LIBRARY MATERIALS contain such information, all such information shall be redacted by the entity supplying such LIBRARY MATERIALS.   LIBRARY MATERIALS also excludes (i) any

documents and electronically-stored information that are in the possession, custody, or control of BP solely by virtue of such documents and electronically-stored information having been produced to BP in the MDL 2179 litigation, and (ii) emails (but not attachments to such emails that fall within the definition of LIBRARY MATERIALS) that are in the possession, custody, or control of BP or any of its employees.

4)      Costs associated with the creation, maintenance, and updating of the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY shall be SETTLEMENT COSTS.

5)      The GULF REGION HEALTH OUTREACH PROGRAM LIBRARY shall remain in existence for the 21 years following the EFFECTIVE DATE.

6)      As soon as practicable following the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER (but no later than 6 months after such order) and every year thereafter for the 21 years following the EFFECTIVE DATE, BP shall provide to the CLAIMS ADMINISTRATOR for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY all LIBRARY MATERIALS in BP'S possession, custody, or control that have not previously been provided to the CLAIMS ADMINISTRATOR.  Where identical copies of LIBRARY MATERIALS are in the possession, custody, or control of BP, it shall provide only one copy of such materials.

7)      Beginning no later than 3 months following the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER and every year thereafter for the 21 years following the EFFECTIVE DATE, the CLAIMS ADMINISTRATOR shall request by any applicable freedom of information law that the federal government, the state governments of Alabama, Florida, Louisiana, and Mississippi, the governments of the Gulf coast

counties of Alabama, Florida, and Mississippi, and the governments of the Gulf parish counties of Louisiana, provide to the CLAIMS ADMINISTRATOR for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY any LIBRARY MATERIALS which have not previously been provided to the CLAIMS ADMINISTRATOR. The CLAIMS ADMINISTRATOR shall be authorized to reimburse such entities providing LIBRARY MATERIALS the actual, reasonable costs of providing such materials, which shall be SETTLEMENT COSTS.

8)   Beginning no later than 3 months following the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER and every year thereafter during the operation of the GULF REGION HEALTH OUTREACH PROJECTS, the CLAIMS ADMINISTRATOR shall request and obtain copies of any reports or studies created through the activities of the GULF REGION HEALTH OUTREACH PROJECTS for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY that refer or relate to any health risks or effects of (a) oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, (b) the dispersants and/or decontaminants used in the RESPONSE ACTIVITIES, and (c) the RESPONSE ACTIVITIES, but excluding any materials that would reveal information protected by HIPAA or other applicable privacy laws, or that have previously been provided to the CLAIMS ADMINISTRATOR.

9)   Beginning no later than 3 months following the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, MEDICAL BENEFITS CLASS COUNSEL shall have the right to submit LIBRARY MATERIALS for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY.

10)    The act of providing LIBRARY MATERIALS by BP or MEDICAL BENEFITS CLASS COUNSEL to the CLAIMS ADMINISTRATOR for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY shall not constitute an admission by BP of the authenticity of such materials, of the truth of the matters asserted in such materials, or of the relevancy of such materials in any legal or other proceeding.

11)    The fact of access by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuing a BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION to LIBRARY MATERIALS produced by BP to the CLAIMS ADMINISTRATOR for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY shall not constitute, and shall not be contended to constitute, satisfaction by BP of its obligation to produce materials or disclose information in response to discovery requests in litigation, except to the extent BP'S discovery responses comply with Federal Rules of Civil Procedure Rule 33(d), Rule 34(b)(2)(E), or any other applicable Federal Rule of Civil Procedure governing discovery.

## X.   PRELIMINARY APPROVAL BY THE COURT AND CLASS CERTIFICATION

A.      Promptly after the execution of this MEDICAL SETTLEMENT AGREEMENT,
the PARTIES shall file with the COURT this MEDICAL SETTLEMENT AGREEMENT, as
well as a Joint Motion for Preliminary Approval of the Medical Benefits Class Action
Settlement, Approval of Class Notice, and Related Matters.  Simultaneously, the MEDICAL
BENEFITS CLASS REPRESENTATIVES shall file with the COURT a Motion for Certification
of a Rule 23(b)(3) Class for Purposes of Settlement.

B.      The PARTIES agree to take all actions and steps reasonably necessary to obtain a
PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER from the COURT.

C.      Promptly following the filing of the Joint Motion for Preliminary Approval of the
Medical Benefits Class Action Settlement, Approval of Class Notice, and Related Matters, BP
and MEDICAL BENEFITS CLASS COUNSEL shall file with the COURT a motion seeking the
creation of a MEDICAL SETTLEMENT TRUST and appointment of the trustee and the directed
trustee of such MEDICAL SETTLEMENT TRUST.

D.      The PARTIES agree that any certification of the MEDICAL BENEFITS
SETTLEMENT CLASS shall be for settlement purposes only.  The PARTIES do not waive or
concede any position or arguments they have for or against class certification of any class for any
other purpose in any action or proceeding.  Any class certification order entered in connection
with this MEDICAL SETTLEMENT AGREEMENT shall not constitute an admission by BP, or
finding or evidence, that the MEDICAL BENEFITS CLASS REPRESENTATIVES' claims, or
the claims of any other MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, or the
claims of the MEDICAL BENEFITS SETTLEMENT CLASS are appropriate for litigation class
treatment.  To the extent the COURT enters the proposed form of PRELIMINARY APPROVAL
AND CLASS CERTIFICATION ORDER, the FINAL ORDER AND JUDGMENT will provide

for vacation of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER in the event that this MEDICAL SETTLEMENT AGREEMENT does not become effective.  In the event that the COURT certifies the proposed MEDICAL BENEFITS SETTLEMENT CLASS in connection with this MEDICAL SETTLEMENT AGREEMENT, BP will not oppose a motion brought by INTERIM CLASS COUNSEL, MEDICAL BENEFITS CLASS COUNSEL, or the PSC seeking to certify a litigation class against TRANSOCEAN or HALLIBURTON, but limited solely to the recovery of punitive damages.

E.     Upon entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, the statutes of limitation applicable to any and all claims or causes of action that have been or could be asserted by or on behalf of any MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS are hereby tolled and stayed.  The limitations period shall not begin to run again for any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER unless and until (a) they OPT OUT of the MEDICAL BENEFITS SETTLEMENT CLASS or (b) this MEDICAL SETTLEMENT AGREEMENT is terminated pursuant to Section XIV.  In the event the MEDICAL SETTLEMENT AGREEMENT is terminated pursuant to Section XIV, the limitations period for each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER as to whom the limitations period had not expired as of the date of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER shall extend for the longer of 90 days from the last required issuance of notice of termination or the period otherwise remaining before expiration. Notwithstanding the temporary tolling agreement herein, the PARTIES recognize that any time already elapsed for any MEDICAL BENEFITS CLASS REPRESENTATIVES or MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS on any applicable statutes of limitations shall not be reset, and no expired claims shall be revived, by virtue of this temporary tolling

agreement. MEDICAL BENEFITS CLASS REPRESENTATIVES and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS do not admit, by entering into this MEDICAL SETTLEMENT AGREEMENT, that they have waived any applicable tolling protections available as a matter of law or equity. Nothing in this MEDICAL SETTLEMENT AGREEMENT shall constitute an admission in any manner that the statute of limitations has been tolled for anyone outside the MEDICAL BENEFITS SETTLEMENT CLASS, nor does it constitute a waiver of legal positions regarding tolling.

## XI.    NOTICE, OPT OUT, AND OBJECTIONS

A.    As part of their Joint Motion for Preliminary Approval of Medical Benefits Class Action Settlement, Approval of Class Notice, and Related Matters, the PARTIES shall submit to the COURT an agreed upon MEDICAL BENEFITS SETTLEMENT CLASS NOTICE PLAN.

B.    The MEDICAL BENEFITS CLASS NOTICE PLAN, to be implemented at BP'S expense as a SETTLEMENT COST, shall be designed to meet the requirements of Fed. R. Civ. P. 23 (c)(2)(B), and shall include:

1)    A multi-media notice effort covering the entire United States with a focus on the Gulf Coast areas.  The media notice effort will include publication in over 1,100 local newspapers and nationwide publication in leading national consumer magazines, trade, business and specialty publications, local television, radio and newspapers in the Gulf Coast Areas, appropriate foreign language and African-American publications and online banner advertising.

2)    Individual mailed notification to those MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who can practicably be identified from COURT filings and records; GCCF records; databases, data files, data collections, and other documentary evidence in the possession, custody, or control of BP; names and addresses of known residents who resided in ZONE B; and other sources, pursuant to the COURT-approved MEDICAL BENEFITS CLASS NOTICE PLAN.  Additionally, the MEDICAL BENEFITS CLASS NOTICE shall be mailed to identifiable potential MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS in the MEDICAL BENEFITS SETTLEMENT CLASS, plaintiffs in MDL No. 2179, including NATURAL PERSONS who filed short form joinders in MDL No. 2179.  To the extent BP or MEDICAL BENEFITS CLASS COUNSEL is aware that any of these MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS are represented by counsel other

than MEDICAL BENEFITS CLASS COUNSEL, the MEDICAL BENEFITS CLASS NOTICE

shall also be mailed to their attorney.

3)     Prior to mailing, all addresses will be checked against the National Change

of Address database managed by the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE

AGENT.  If a record is returned as invalid, the MEDICAL BENEFITS SETTLEMENT CLASS

NOTICE AGENT will update the address through third-party address search services and re-mail

as appropriate.

4)     A  website  where  potential  MEDICAL  BENEFITS  SETTLEMENT

CLASS MEMBERS can obtain additional information and documents, including the MEDICAL

BENEFITS CLASS NOTICE, MEDICAL SETTLEMENT AGREEMENT, PROOF OF CLAIM

FORM,  relevant orders of the COURT, and any other information the PARTIES may agree to

provide or that the COURT may require.

5)     A  toll-free  telephone  system  through  which  potential  MEDICAL

BENEFITS  SETTLEMENT  CLASS  MEMBERS  can  obtain  additional  information,  and  the

MEDICAL BENEFITS CLASS NOTICE and PROOF OF CLAIM FORM.

In addition to the foregoing, a COURT-approved notice will be given if the MEDICAL

BENEFITS  CLASS  ACTION  SETTLEMENT  terminates,  and  a  COURT-approved  reminder

notice will be given in advance of the deadline for filing a PROOF OF CLAIM FORM  at BP's

expense as a SETTLEMENT COST.

C.     The  CLAIMS  ADMINISTRATOR  shall  develop  and  manage  an  automated

telephone system that uses a toll-free number or numbers to provide information in English,

Spanish, and Vietnamese about the MEDICAL BENEFITS CLASS ACTION SETTLEMENT

beginning  upon  the  date  of  the  entry  of  the  PRELIMINARY  APPROVAL  AND  CLASS

CERTIFICATION ORDER.  Through this system, MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS may request and obtain copies of the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE, the MEDICAL SETTLEMENT AGREEMENT, the PROOF OF CLAIM FORM, and other forms, and speak with live operators for further information.  The same documents and forms shall also be available for review and downloading from a website developed and managed by the CLAIMS ADMINISTRATOR that provides information about the MEDICAL BENEFITS CLASS ACTION SETTLEMENT, beginning upon the date of the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER or such other date specified therein.

D.     The CLAIMS ADMINISTRATOR shall maintain a list of the names and addresses of each person to whom the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE was transmitted in accordance with any order entered by the COURT pursuant to Section X above.  These names and addresses shall be kept strictly confidential and shall be used only for purposes of administering this MEDICAL BENEFITS CLASS ACTION SETTLEMENT, except as otherwise ordered by the COURT.

E.     The MEDICAL BENEFITS SETTLEMENT CLASS NOTICE shall provide instructions regarding the procedures that must be followed to OPT OUT of the MEDICAL BENEFITS SETTLEMENT CLASS pursuant to Fed. R. Civ. P. 23(c)(2)(B)(v).  The PARTIES agree that, to OPT OUT validly from the MEDICAL BENEFITS SETTLEMENT CLASS, a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER must submit a written request to OPT OUT stating "I wish to exclude myself from the Medical Benefits Settlement Class" (or substantially similar clear and unambiguous language) to the CLAIMS ADMINISTRATOR on or before such date as is ordered by the COURT.  That written request shall also contain the

MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S printed name, address, phone number, and date of birth and enclose a copy of his or her driver's license or other government-issued identification.  A written request to OPT OUT may not be signed using any form of electronic signature, but must be signed by hand by the NATURAL PERSON seeking to exclude himself or herself from the MEDICAL BENEFITS SETTLEMENT CLASS or, where applicable, his or her AUTHORIZED REPRESENTATIVE.   Attorneys for MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS may submit a written request to OPT OUT on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, but such request must be signed by hand by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or, where applicable, his or her AUTHORIZED REPRESENTATIVE.  The CLAIMS ADMINISTRATOR shall provide copies of all requests to OPT OUT to MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL within 7 days of receipt of each such form or request.

F.      All NATURAL PERSONS in the MEDICAL BENEFITS SETTLEMENT CLASS who do not timely and properly OPT OUT from the MEDICAL BENEFITS SETTLEMENT CLASS shall in all respects be bound by all terms of this MEDICAL SETTLEMENT AGREEMENT and the FINAL ORDER AND JUDGMENT upon the EFFECTIVE DATE, shall be entitled to all procedural opportunities and protections described in this MEDICAL SETTLEMENT AGREEMENT and provided by the COURT, and to all compensation and benefits for which they qualify under its terms, and shall be barred permanently and forever from commencing, instituting, maintaining, or prosecuting any action asserting any RELEASED CLAIMS against any RELEASED PARTIES in any court of law or equity, arbitration tribunal, or administrative or other forum.

G.      Prior to the entry of the FINAL ORDER AND JUDGMENT, any NATURAL PERSON may revoke his or her OPT OUT from the MEDICAL BENEFITS SETTLEMENT CLASS and thereby receive the benefits of this MEDICAL BENEFITS CLASS ACTION SETTLEMENT by submitting a written request to the CLAIMS ADMINISTRATOR to revoke an OPT OUT stating "I wish to revoke my request to be excluded from the Medical Benefits Settlement Class" (or substantially similar clear and unambiguous language), and also containing the NATURAL PERSON'S printed name, address, phone number, and date of birth.  The written request to revoke an OPT OUT must be signed by the NATURAL PERSON or, where applicable, his or her AUTHORIZED REPRESENTATIVE, seeking to revoke his or her OPT OUT.  After the entry of the FINAL ORDER AND JUDGMENT, a NATURAL PERSON may revoke his or her OPT OUT from the MEDICAL BENEFITS SETTLEMENT CLASS and thereby receive the benefit of this MEDICAL BENEFITS CLASS ACTION SETTLEMENT, by submitting a written request to the CLAIMS ADMINISTRATOR to revoke an OPT OUT stating "I wish to revoke my request to be excluded from the Medical Benefits Settlement Class" (or substantially similar clear and unambiguous language), and also containing the NATURAL PERSON'S printed name, address, phone number, and date of birth.  The written request to revoke an OPT OUT must be signed by the NATURAL PERSON or, where applicable, his or her AUTHORIZED REPRESENTATIVE, seeking to revoke his or her OPT OUT.  After entry of the FINAL ORDER AND JUDGMENT, BP must give its written consent to the NATURAL PERSON'S request to revoke his or her OPT OUT, which consent shall not be unreasonably withheld.

H.      A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may present written objections, if any, explaining why he or she believes the MEDICAL BENEFITS CLASS

ACTION SETTLEMENT should not be approved by the COURT as fair, reasonable, and adequate. No later than such date as is ordered by the COURT, a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who wishes to object to any aspect of the MEDICAL BENEFITS CLASS ACTION SETTLEMENT must (1) serve on the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL, by United States mail, and (2) file with the COURT, a written statement of the objection(s). The written statement of objection(s) must include (a) written evidence establishing that the individual is a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER; (b) a detailed statement of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S objection(s), as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER wishes to bring to the COURT'S attention, and any evidence the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER wishes to introduce in support of his or her objection(s); (c) the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S address and telephone number; and (d) any other supporting papers, materials, or briefs the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER wishes the COURT to consider when reviewing the objection.

I.     A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may object on his or her own behalf or through an attorney hired at that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S own expense. Attorneys asserting objections on behalf of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS must (1) file a notice of appearance with the COURT by the date set forth in the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, or as the COURT otherwise may direct; (2) file a sworn declaration attesting to the representation of each MEDICAL BENEFITS SETTLEMENT CLASS

MEMBER on whose behalf the objection is being filed or a copy of the contract (to be filed *in camera*) between that attorney and each such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER; (3) serve a copy of the notice of appearance and statements on the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL, by United States mail by the date set forth in the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, or as the COURT otherwise may direct; and (4) comply with the procedures described in Section XI.H above.

J.     A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or, if represented, his or her counsel, seeking to make an appearance at the FAIRNESS HEARING must serve on the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL, by United States mail, and file with the COURT, by the date set forth in the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, or as the COURT otherwise may direct, a written notice of his or her intention to appear at the FAIRNESS HEARING.

K.     Any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who fails to comply with the provisions of Sections XI.H and I shall waive and forfeit any and all rights he or she may have to object to the MEDICAL BENEFITS CLASS ACTION SETTLEMENT.

L.     Submission of a PROOF OF CLAIM FORM shall not waive a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S right to object to the MEDICAL BENEFITS CLASS ACTION SETTLEMENT.

## XII.  STAY OR ADJOURNMENT OF ALL PROCEEDINGS

BP'S position is that a stay or adjournment of any trial proceeding (including the previously set Phase I Trial of Liability, Exoneration, and Fault Allocation) that would or might determine BP'S liability to the MEDICAL BENEFITS SETTLEMENT CLASS is a material term and condition precedent to this MEDICAL BENEFITS CLASS ACTION SETTLEMENT from the date of the PARTIES' execution of this MEDICAL SETTLEMENT AGREEMENT through the COURT'S determination of the fairness of this MEDICAL BENEFITS CLASS ACTION SETTLEMENT.   The MEDICAL BENEFITS CLASS REPRESENTATIVES and MEDICAL BENEFITS CLASS COUNSEL shall not oppose BP'S position.

## XIII.   COMMUNICATIONS TO THE PUBLIC

The PARTIES, BP'S COUNSEL, and the MEDICAL BENEFITS CLASS COUNSEL may jointly or separately issue press releases announcing and describing this MEDICAL SETTLEMENT AGREEMENT upon filing.   The form, content, and timing of such press releases relating to this MEDICAL SETTLEMENT AGREEMENT shall be subject to mutual agreement of MEDICAL BENEFITS CLASS COUNSEL and BP, which shall not be unreasonably withheld, and in addition, BP shall, in its sole discretion, be entitled to include such information as required by law or regulation.   MEDICAL BENEFITS CLASS COUNSEL (or their designee) and BP will consult regarding press releases.   Communications by or on behalf of the PARTIES and their respective counsel regarding this MEDICAL SETTLEMENT AGREEMENT with the public and media shall be made in good faith, shall be consistent with the PARTIES' agreement to take all actions reasonably necessary for preliminary and final approval of this MEDICAL BENEFITS CLASS ACTION SETTLEMENT, and the information contained in such communications shall be consistent with the content of the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE approved by the COURT.   Nothing herein is intended or shall be interpreted to inhibit or interfere with MEDICAL BENEFITS CLASS COUNSEL'S ability to communicate with the COURT, MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, potential MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, or their counsel.

## XIV.   **TERMINATION**

A.     This MEDICAL SETTLEMENT AGREEMENT shall, unless otherwise agreed in writing by the MEDICAL BENEFITS CLASS COUNSEL and BP, terminate and become null and void, and shall have no further effect with respect to any party, if:  (1) the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, and/or the FINAL ORDER AND JUDGMENT, is not entered by the COURT or is reversed on appeal by the court of last resort; (2) the EFFECTIVE DATE does not occur for any reason; or (3) entry of the FINAL ORDER AND JUDGMENT is vacated or reversed on appeal by the court of last resort.

B.     This MEDICAL SETTLEMENT AGREEMENT shall, at the written election of BP, terminate and become null and void, and shall have no further effect, in the event that (1) a majority of the MEDICAL BENEFITS CLASS REPRESENTATIVES do not give their consent to this MEDICAL BENEFITS CLASS ACTION SETTLEMENT at the FAIRNESS HEARING; or (2) if the COURT has ordered a material modification of any of the terms of this MEDICAL SETTLEMENT AGREEMENT.   Such written election to terminate this MEDICAL SETTLEMENT AGREEMENT must be made within 30 days of each happening of the events described in (1) or (2) of this paragraph.

C.     This MEDICAL SETTLEMENT AGREEMENT shall, at the written election of MEDICAL BENEFITS CLASS COUNSEL, terminate and become null and void, and shall have no further effect, in the event that the COURT has ordered a material modification of any of the terms of this MEDICAL SETTLEMENT AGREEMENT.  Such written election to terminate the MEDICAL SETTLEMENT AGREEMENT must be made within 30 days of the event described in this paragraph.

D.     If any material provision of this MEDICAL SETTLEMENT AGREEMENT, including but not limited to the RELEASE in Section XVI, shall for any reason be held in whole

or in part to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this MEDICAL SETTLEMENT AGREEMENT if BP and MEDICAL BENEFITS CLASS COUNSEL elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this MEDICAL SETTLEMENT AGREEMENT.  If no such election by BP and MEDICAL BENEFITS CLASS COUNSEL is made, then this MEDICAL SETTLEMENT AGREEMENT shall become null and void consistent with the terms described in Section XIV.A above.

E.       If any non-material provisions contained in this MEDICAL SETTLEMENT AGREEMENT are for any reason held to be invalid, illegal, or unenforceable in any respect, that holding shall not affect any other provision of this MEDICAL SETTLEMENT AGREEMENT.

F.       In the event this MEDICAL SETTLEMENT AGREEMENT is terminated or becomes null and void in accordance with Sections XIV.A-D above, this MEDICAL SETTLEMENT AGREEMENT shall not be offered into evidence or used in this or in any other action in the COURT, in any other federal court, any state court, or any other tribunal or forum for any purpose, including, but not limited to, the existence, certification, or maintenance of any purported class.  In addition, in such event, this MEDICAL SETTLEMENT AGREEMENT and all negotiations, proceedings, documents prepared and statements made in connection with this MEDICAL SETTLEMENT AGREEMENT shall be without prejudice to all PARTIES and shall not be admissible into evidence and shall not be deemed or construed to be an admission or concession by any of the PARTIES of any fact, matter, or proposition of law and shall not be used in any manner for any purpose, and all PARTIES shall stand in the same position as if this MEDICAL SETTLEMENT AGREEMENT had not been negotiated, made, or filed with the COURT.

G.      If this MEDICAL SETTLEMENT AGREEMENT for any reason terminates and/or becomes null and void, the PARTIES shall jointly move the COURT to vacate the PRELIMINARY APPROVAL AND CERTIFICATION ORDER and any other orders certifying a MEDICAL BENEFITS SETTLEMENT CLASS or enjoining any MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS.

H.      If this MEDICAL SETTLEMENT AGREEMENT for any reason terminates and/or becomes null and void after notice has been given, BP shall provide COURT-approved notice of termination to the MEDICAL BENEFITS SETTLEMENT CLASS on the same scale and in the same manner as the original MEDICAL BENEFITS SETTLEMENT CLASS NOTICE.

I.      If this MEDICAL SETTLEMENT AGREEMENT terminates for any of the reasons in this Section, any unspent and uncommitted monies in the FUNDS shall revert to BP.

## XV.    PRESERVATION OF CONFIDENTIAL DOCUMENTS

In the event any confidential documentation is provided by or on behalf of the PARTIES in the course of the settlement process, the PARTIES and their counsel agree that all such documentation shall be preserved until after performance of all terms of this MEDICAL SETTLEMENT AGREEMENT is completed, and the use of such documentation shall be governed by the following pretrial orders entered in MDL 2179:  Pretrial Order No. 13, Order Protecting Confidentiality; Pretrial Order No. 29, Regarding Documents Produced by BP in the Texas City Litigation; Pretrial Order No. 38, Order Relating to Confidentiality of Settlement Communications; and Pretrial Order No. 47, Order Regarding Designation of Documents as "Confidential" or "Highly Confidential."  The PARTIES shall continue to treat documents in conformity with the requirements of the confidentiality requirements of the foregoing pretrial orders.

## XVI.  **RELEASE**

A.      In consideration of the benefits described and the agreement and covenants contained in this MEDICAL SETTLEMENT AGREEMENT, the MEDICAL BENEFITS SETTLEMENT CLASS, the MEDICAL BENEFITS CLASS REPRESENTATIVES, and all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS promise, covenant, and agree that, upon the EFFECTIVE DATE and by operation of the FINAL ORDER AND JUDGMENT, the MEDICAL BENEFITS SETTLEMENT CLASS, the MEDICAL BENEFITS CLASS REPRESENTATIVES, and the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, including their predecessors, successors, assigns, representatives, attorneys, agents, trustees, insurers, heirs, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on behalf of any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, shall release and forever discharge the RELEASED PARTIES from any liability for all claims of any nature whatsoever in law or in equity, past and present, and whether known or unknown, suspected or claimed, relating to or arising under any federal, state, local, or international statute, regulation, or law (including admiralty claims, claims under maritime law, codal law, adjudication, quasi-adjudication, tort claims, contract claims, actions, causes of action, declaratory judgment actions, cross-claims, counterclaims, third-party claims, demands, and claims for damages, compensatory damages, liquidated damages, punitive damages, exemplary damages, multiple damages, and other non-compensatory damages or penalties of any kind, fines, equitable relief, injunctive relief, conditional or other payments or interest of any type, debts, liens, costs, expenses and/or attorneys fees, interest, or liabilities) that have been or could have been brought in connection with:

    1) Personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and any progression and/or exacerbation of personal injury or bodily injury, that first manifested by April 16, 2012, where such injury, progression, and/or exacerbation in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, or wrongful death and/or survival actions as a result of such injury, progression, and/or exacerbation; and/or

    2) Loss of support, services, consortium, companionship, society, or affection, or damage to familial relations arising out of any personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life) to another person, and any progression and/or exacerbation of personal injury or bodily injury to another person, that first manifested by April 16, 2012, where such injury, progression, and/or exacerbation in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, or wrongful death and/or survival actions as a result of such personal or bodily injury; and/or

    3) Increased risk, possibility, or fear of suffering in the future from any disease, injury, illness, emotional or mental harm, condition, or death, in whole or in part arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT unless arising out of and pertaining to a LATER-MANIFESTED PHYSICAL CONDITION; and/or

    4) Medical screening and medical monitoring for undeveloped, unmanifested, and/or undiagnosed conditions that may in whole or in part arise out of, result from, or relate to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT regardless of

whether a MEDICAL BENEFITS SETTLEMENT CLASS REPRESENTATIVE or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER timely makes any claim for benefits under this MEDICAL SETTLEMENT AGREEMENT.

B.      In further consideration of the benefits described and the agreements and covenants contained in this MEDICAL SETTLEMENT AGREEMENT, upon the EFFECTIVE DATE and by operation of the FINAL ORDER AND JUDGMENT, any and all claims of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER relating to, arising from, or as a result of a LATER-MANIFESTED PHYSICAL CONDITION are released and forever discharged as to the RELEASED PARTIES with respect to that particular MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S particular LATER-MANIFESTED PHYSICAL CONDITION if, but only if, one or both of the following conditions occur as to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER:

1)      That MEDICAL BENEFITS SETTLEMENT CLASS MEMBER fails properly to submit a NOTICE OF INTENT TO SUE for that particular LATER-MANIFESTED PHYSICAL CONDITION within 4 years of the first diagnosis of that LATER-MANIFESTED PHYSICAL CONDITION or of the EFFECTIVE DATE, whichever is later; or

2)      That MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who is eligible to file a BACK-END LITIGATION OPTION LAWSUIT fails timely and properly to file such lawsuit for that particular LATER-MANIFESTED PHYSICAL CONDITION, as provided in Section VIII.G.1.b.

C.      In further consideration of the benefits described and the agreements and covenants contained in this MEDICAL SETTLEMENT AGREEMENT, upon the EFFECTIVE DATE and by operation of the FINAL ORDER AND JUDGMENT, any and all claims for

damages or remedies of whatever kind or character, known or unknown, that are now recognized by law or that may be created in the future by statute, regulation, judicial decision, or in any other manner, for punitive damages, exemplary damages, multiple damages, and other non-compensatory damages or penalties of any kind, that relate to, arise from, or are a result of any LATER-MANIFESTED PHYSICAL CONDITION are released and forever discharged by the MEDICAL BENEFITS CLASS REPRESENTATIVES, all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and the MEDICAL BENEFITS SETTLEMENT CLASS as to the RELEASED PARTIES.

D.     In further consideration of the benefits described and the agreements and covenants contained in this MEDICAL SETTLEMENT AGREEMENT, upon the EFFECTIVE DATE and by operation of the FINAL ORDER AND JUDGMENT, the MEDICAL BENEFITS CLASS REPRESENTATIVES, all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and the MEDICAL BENEFITS SETTLEMENT CLASS shall release and forever discharge, hold harmless, and covenant not to sue the RELEASED PARTIES from any and all claims, including UNKNOWN CLAIMS, arising from, relating to, or resulting from the reporting, transmittal of information, or communications between or among BP, the CLAIMS ADMINISTRATOR, any GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, and/or any OTHER PAYER/PROVIDER regarding any claim for benefits under this MEDICAL SETTLEMENT AGREEMENT, including any consequences in the event that this MEDICAL SETTLEMENT AGREEMENT impacts, limits, or precludes any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S right to benefits under Social Security or from any GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM, or OTHER PAYER/PROVIDER.

E.      In further consideration of the benefits described and the agreements and covenants contained in this MEDICAL SETTLEMENT AGREEMENT, upon the EFFECTIVE DATE and by operation of the FINAL ORDER AND JUDGMENT, the MEDICAL BENEFITS CLASS REPRESENTATIVES, all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and the MEDICAL BENEFITS SETTLEMENT CLASS shall release and forever discharge, hold harmless, and covenant not to sue the RELEASED PARTIES from any and all claims, including UNKNOWN CLAIMS pursuant to the MSP LAWS, or other similar causes of action, arising from, relating to, or resulting from the failure or alleged failure of any of the RELEASED PARTIES to provide for a primary payment or appropriate reimbursement to a GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM, and/or OTHER PAYER/PROVIDER in connection with claims for medical items, services, and/or prescription drugs provided in connection with compensation or benefits claimed or received by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to this MEDICAL SETTLEMENT AGREEMENT.

F.      In further consideration of the benefits described and the agreements and covenants contained in this MEDICAL SETTLEMENT AGREEMENT, upon the EFFECTIVE DATE and by operation of the FINAL ORDER AND JUDGMENT, the MEDICAL BENEFITS CLASS REPRESENTATIVES, all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and the MEDICAL BENEFITS SETTLEMENT CLASS shall release and forever discharge, hold harmless, and covenant not to sue the RELEASED PARTIES, MEDICAL BENEFITS CLASS COUNSEL, MEDICAL BENEFITS CLASS REPRESENTATIVES, and the CLAIMS ADMINISTRATOR, and their respective officers, directors, and employees from any and all claims, including UNKNOWN CLAIMS, arising from, relating to, or resulting from

107

their participation, if any, in the PERIODIC MEDICAL CONSULTATION PROGRAM, including, but not limited to, claims for negligence, medical malpractice, wrongful or delayed diagnosis, personal injury, bodily injury (including disease, trauma, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), or death arising from, relating to, or resulting from such participation.

G. The claims described in Sections XVI.A-F above are collectively referred to as RELEASED CLAIMS. Notwithstanding the above, RELEASED CLAIMS do not include (1) any claims arising from the alleged exposure of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, *in utero*, to dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES; (2) any claims for non-exposure-based physical or bodily trauma injury that arose from, was due to, resulted from or was related to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, or wrongful death and/or survival actions as a result of such non-exposure-based physical or bodily trauma injury (except that any heat-related injury shall be a RELEASED CLAIM); (3) any of the claims for economic and property damages asserted by or on behalf of the members of the Economic and Property Damages Class, as defined and described in the Economic and Property Damages Settlement Agreement and the Class Action Complaint styled *Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production, Inc., et al.*, filed in the Eastern District of Louisiana on April 16, 2012; or (4) any other claims for economic loss or property damage due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, excluding DAMAGES other than those (i) arising out of and pertaining to a LATER-MANIFESTED PHYSICAL CONDITION or (ii) arising out of a non-exposure-based physical or bodily trauma injury that arose from, was due to, resulted from or was related to, directly or indirectly, the *DEEPWATER*

*HORIZON* INCIDENT, or wrongful death and/or survival actions as a result of such physical or bodily trauma injury (except that any heat-related injury shall be a RELEASED CLAIM).  In addition, the MEDICAL BENEFITS SETTLEMENT CLASS', MEDICAL BENEFITS CLASS REPRESENTATIVES', and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS' claims for punitive or exemplary damages against HALLIBURTON and TRANSOCEAN are reserved.

H.      With respect to any claim of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for (1) a personal injury or bodily injury due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT or wrongful death and/or survival as a result of such personal injury or bodily injury that is not a RELEASED CLAIM, (2) economic loss due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT that is not a RELEASED CLAIM, or (3) property damage due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT that is not a RELEASED CLAIM, BP waives any defense based upon the argument it otherwise might make or raise that such claim is or was improperly split from a RELEASED CLAIM.

I.      From and after the EFFECTIVE DATE, for the consideration provided for herein and by operation of the FINAL ORDER AND JUDGMENT, the MEDICAL BENEFITS CLASS REPRESENTATIVES, all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and the MEDICAL BENEFITS SETTLEMENT CLASS covenant, promise, and agree that they shall not, at any time, institute, cause to be instituted, assist in instituting, or permit to be instituted on his, her, or its behalf, or on behalf of any other individual or entity, any proceeding (1) alleging or asserting any of his or her respective RELEASED CLAIMS against the RELEASED

PARTIES in any federal court, any state court, or arbitration, regulatory agency, or any other tribunal or forum, or (2) challenging the validity of the RELEASE.

J.      The MEDICAL BENEFITS CLASS REPRESENTATIVES, MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and the MEDICAL BENEFITS SETTLEMENT CLASS may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the actions or matters covered by the RELEASE.   MEDICAL BENEFITS CLASS REPRESENTATIVES and the MEDICAL BENEFITS CLASS COUNSEL, on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS and the MEDICAL BENEFITS SETTLEMENT CLASS, explicitly took UNKNOWN CLAIMS into account in entering into the MEDICAL SETTLEMENT AGREEMENT.   Upon the EFFECTIVE DATE and subject to and without prejudice to the provisions of Section VIII, each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall, without any further action by or on behalf of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, waive and release any and all rights that he or she may have under any law, statute, regulation, administrative adjudication, decision, judgments, or common law principle that would otherwise limit his or her RELEASED CLAIMS to those claims or matters actually known or suspected to exist at the time of execution of this MEDICAL SETTLEMENT AGREEMENT.   California law is not applicable to this MEDICAL SETTLEMENT AGREEMENT, but purely for illustrative purposes, the RELEASED CLAIMS include, but are not limited to, the provisions of Section 1542 of the California Civil Code, which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the

time of executing the release, which if known by him or her must

have materially affected his or her settlement with the debtor.

K.    Except as provided in Section XXIX.L, this RELEASE is not intended to prevent BP from exercising its rights of contribution, subrogation, or indemnity under any law.  BP is hereby subrogated to any and all such rights that MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, or any of them, may have had or have arising from the *DEEPWATER HORIZON* INCIDENT and which are RELEASED CLAIMS under this MEDICAL SETTLEMENT AGREEMENT.

L.    Nothing in this RELEASE shall preclude any action to enforce the terms of this MEDICAL SETTLEMENT AGREEMENT, provided that such action shall be brought in the COURT.

M.    The RELEASED CLAIMS of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS as against BP are assigned to BP for the purpose of legally extinguishing any further liability of BP to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS for any RELEASED CLAIMS.

N.    The PARTIES represent and warrant that no promise or inducement has been offered or made for the RELEASE contained in this Section except as set forth in this MEDICAL SETTLEMENT AGREEMENT and that the RELEASE is executed without reliance on any statements or any representations not contained in this MEDICAL SETTLEMENT AGREEMENT.

# XVII. OTHER PROTECTIONS

A.    Satisfaction of COMPENSATORY DAMAGES    The MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS agree and acknowledge that the SETTLEMENT BENEFITS, in addition to constituting consideration from the RELEASED PARTIES, also constitute full, complete, and total satisfaction of all of their COMPENSATORY DAMAGES against the TRANSOCEAN PARTIES and the HALLIBURTON PARTIES.

B.    Protections for RELEASED PARTIES    The MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS promise, agree, acknowledge, represent, warrant, and covenant as follows:

1)    No Assignment of the MEDICAL BENEFITS SETTLEMENT CLASS', MEDICAL BENEFITS CLASS REPRESENTATIVES', or MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS' Claims    Neither the MEDICAL BENEFITS SETTLEMENT CLASS nor any MEDICAL BENEFITS CLASS REPRESENTATIVE or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall assign, or shall attempt to assign, to any person or entity other than BP any rights or claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT. Any such assignment, or attempt to assign, to any person or entity other than BP any rights or claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT shall be void, invalid, and of no force and effect.

2)    No Recovery of Additional COMPENSATORY DAMAGES    Neither the MEDICAL BENEFITS SETTLEMENT CLASS nor any MEDICAL BENEFITS CLASS REPRESENTATIVE or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall accept

or attempt to recover, through insurance, reinsurance, indemnification, contribution, subrogation, litigation, settlement, or otherwise, any COMPENSATORY DAMAGES from the TRANSOCEAN PARTIES or the HALLIBURTON PARTIES. Nothing in this Section XVII shall impair or impact rights to pursue TRANSOCEAN and HALLIBURTON for exemplary and punitive damages reserved by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS in Section XVI.G of the MEDICAL SETTLEMENT AGREEMENT and claimed as either individuals or members of the MEDICAL BENEFITS SETTLEMENT CLASS.

        3)     <u>Non-Execution and Non-Collection for COMPENSATORY DAMAGES</u> In the event that the MEDICAL BENEFITS SETTLEMENT CLASS or any of the MEDICAL BENEFITS CLASS REPRESENTATIVES or MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS is or becomes the beneficiary of any judgment, decision, award, or settlement arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, such MEDICAL BENEFITS CLASS REPRESENTATIVES and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS shall not accept, execute on, attempt to collect, or otherwise seek recovery of any COMPENSATORY DAMAGES from the TRANSOCEAN PARTIES or from the HALLIBURTON PARTIES. Nothing in this Section XVII shall impair or impact rights to pursue TRANSOCEAN and HALLIBURTON for exemplary and punitive damages reserved by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS in Section XVI.G of the MEDICAL SETTLEMENT AGREEMENT and claimed as either individuals or members of the MEDICAL BENEFITS SETTLEMENT CLASS.

        4)     <u>Conditional Collection of DAMAGES</u> In the event that the MEDICAL BENEFITS SETTLEMENT CLASS or any of the MEDICAL BENEFITS CLASS

REPRESENTATIVES and/or MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS is or becomes the beneficiary of any judgment, decision, award, or settlement arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, the MEDICAL BENEFITS SETTLEMENT CLASS and/or such MEDICAL BENEFITS CLASS REPRESENTATIVES and/or MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS shall not accept, execute on, attempt to collect, or otherwise seek recovery of any DAMAGES, to the extent that any OTHER PARTY is seeking or may seek to recover such DAMAGES from any RELEASED PARTY, whether through indemnity, contribution, subrogation, assignment, or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise, directly or indirectly.  The MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and/or MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS may, however, accept, execute on, attempt to collect, or otherwise seek recovery of DAMAGES if and when a court or tribunal of competent jurisdiction has finally determined that OTHER PARTIES cannot recover such DAMAGES, whether through indemnity, contribution, subrogation, assignment or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise, directly or indirectly, from any RELEASED PARTY.  For purposes of this Section XVII, "finally determined" shall mean the conclusion of any applicable appeals or other rights to seek review by certiorari or otherwise, or the lapse of any and all such rights, or the lapse of any and all applicable limitations or repose periods.

        5)    <u>Conditions on Future Settlements</u>    The MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and/or MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS may settle or compromise any

rights, demands, or claims with the TRANSOCEAN PARTIES, the HALLIBURTON PARTIES, and/or any OTHER PARTIES arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT if but only if the TRANSOCEAN PARTIES, the HALLIBURTON PARTIES, and/or such OTHER PARTY, as the case may be, agrees as part of that settlement or compromise to a full and final release of, dismissal of, and covenant not to sue for any and all rights to recover, directly or indirectly, from the RELEASED PARTIES (whether through indemnity, contribution, subrogation, assignment or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise) for any DAMAGES or other relief or consideration provided under or relating to such settlement or compromise (whether the settlement is of a class, of individual claims, or otherwise) and further represents and warrants that it has not assigned and will not assign any rights to recover for such DAMAGES or other relief or consideration (whether through indemnity, contribution, subrogation, or otherwise).  As part of this commitment and without limitation, the MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS shall not settle or compromise with the TRANSOCEAN PARTIES, the HALLIBURTON PARTIES, and/or any OTHER PARTIES on terms that might allow any insurers, reinsurers, or indemnitors thereof to claim against any RELEASED PARTIES for indemnification, subrogation, contribution, assignment or under any other theory of recovery.  The MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS agree that, before any such settlement or compromise is executed, BP shall have the right to approve language in any such

settlement or compromise memorializing the representation and warranty set forth in this Section XVII, which approval shall not be unreasonably withheld.

6)      Indemnity to RELEASED PARTIES   Notwithstanding any provision in the MEDICAL SETTLEMENT AGREEMENT to the contrary, except as provided for in Section XXIX.L, if any OTHER PARTY recovers or seeks to recover from any RELEASED PARTY (under any theory of recovery, including indemnity, contribution, or subrogation) any DAMAGES either (a) paid to a particular MEDICAL BENEFITS CLASS REPRESENTATIVE or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for which a release was given to BP ENTITIES through the MEDICAL BENEFITS CLASS ACTION SETTLEMENT or (b) by, through, under, or on account of such MEDICAL BENEFITS CLASS REPRESENTATIVE or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for which a release was given to BP ENTITIES through the MEDICAL BENEFITS CLASS ACTION SETTLEMENT; then that MEDICAL BENEFITS CLASS REPRESENTATIVE or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall indemnify (but not defend) the RELEASED PARTIES, but only to the extent of the value of SETTLEMENT BENEFITS received by that particular MEDICAL BENEFITS CLASS REPRESENTATIVE or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER (by way of example, if a particular MEDICAL BENEFITS CLASS REPRESENTATIVE or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER has received SETTLEMENT BENEFITS with a value of $100.00, his or her indemnity obligation would be capped at this amount).  This indemnity obligation owed by a MEDICAL BENEFITS CLASS REPRESENTATIVE or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who has given a release to BP includes any and all claims made or other actions taken

by that MEDICAL BENEFITS CLASS REPRESENTATIVE or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER in breach of Sections XVII.B.1 - B.5.

       **7)**   <u>Notice Regarding Indemnity</u>   MEDICAL BENEFITS CLASS REPRESENTATIVES and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS expressly acknowledge that, to the fullest extent allowed by law, the defense and indemnity obligations contained in Section XVII.B.6 apply to claims against RELEASED PARTIES predicated on negligence, gross negligence, willful misconduct, strict liability, intentional torts, liability based on contractual indemnity, and any and all other theories of liability, and any and all awards of attorneys' fees or other costs or expenses.  MEDICAL BENEFITS CLASS REPRESENTATIVES and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS acknowledge that this indemnity is for conduct occurring before the date of this MEDICAL SETTLEMENT AGREEMENT and therefore is not affected by public policies or other law prohibiting agreements to indemnify in advance of certain conduct.  **MEDICAL BENEFITS CLASS REPRESENTATIVES and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS ACKNOWLEDGE THAT THIS SECTION XVII.B.7 COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS SECTION  XVII.B.7 IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

       8)   <u>No Set-off</u>  Should the MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS succeed in recovering monies from TRANSOCEAN or HALLIBURTON, BP agrees that it would not be entitled to set-off such recovery against its obligation to provide SETTLEMENT BENEFITS.

## XVIII.  FINAL ORDER AND JUDGMENT AND DISMISSAL WITH PREJUDICE

A.     The PARTIES shall jointly seek a FINAL ORDER AND JUDGMENT, from the COURT that:

1)     approves the MEDICAL BENEFITS CLASS ACTION SETTLEMENT in its entirety pursuant to Fed. R. Civ. P. 23(e) as fair, reasonable, and adequate;

2)     finds that this MEDICAL SETTLEMENT AGREEMENT, with respect to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who are minors, lack capacity, or are incompetent, is fair;

3)     confirms the certification of the MEDICAL BENEFITS SETTLEMENT CLASS, for settlement purposes only;

4)     confirms the appointment of the MEDICAL BENEFITS CLASS REPRESENTATIVES;

5)     confirms the appointment of the MEDICAL BENEFITS CLASS COUNSEL;

6)     finds that the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE has satisfied the requirements set forth in Fed. R. Civ. P. 23(c)(2)(B);

7)     permanently bars and enjoins each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER from commencing, asserting, and/or prosecuting any and all RELEASED CLAIMS against any RELEASED PARTY;

8)     dismisses with prejudice the MEDICAL CLASS ACTION COMPLAINT, without further costs, including claims for interest, penalties, costs and attorneys' fees;

9)     orders the dismissal with prejudice of all RELATED CLAIMS pending in the COURT, and without further costs, including claims for interest, penalties, costs, and attorneys' fees, thereby effectuating the RELEASE;

10)      orders all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS with RELATED CLAIMS pending in any federal or state court, forum, or tribunal other than the COURT to dismiss with prejudice such RELATED CLAIMS, and without further costs, including claims for interest, penalties, costs, and attorneys' fees, thereby effectuating the RELEASE;

11)      confirms the appointment of The Garretson Firm Resolution Group, Inc. d/b/a Garretson Resolution Group ("GRG") as the CLAIMS ADMINISTRATOR and confirms the appointment of the trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST;

12)      confirms that it retains continuing jurisdiction over the "qualified settlement fund," as defined in Section 468B(d)(2) of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Section 1.468B-1, created under the MEDICAL SETTLEMENT AGREEMENT;

13)      expressly incorporates the terms of this MEDICAL SETTLEMENT AGREEMENT and provides that the COURT retains continuing and exclusive jurisdiction over the PARTIES, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS and this MEDICAL SETTLEMENT AGREEMENT, to interpret, implement, administer and enforce the MEDICAL SETTLEMENT AGREEMENT in accordance with its terms;

14)      finds that to the extent this MEDICAL BENEFITS CLASS ACTION SETTLEMENT results in the splitting of the claim of any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, that such result has been agreed to by the PARTIES, and that any remaining claim of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER not

settled and released by this MEDICAL BENEFITS CLASS ACTION SETTLEMENT is expressly reserved; and

               15)    orders all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS to comply with the Other Protections provisions of Section XVII.

## XIX. CLASS COUNSEL FEES AND COSTS

As a material term and condition precedent to this MEDICAL SETTLEMENT

AGREEMENT, BP and the PSC must reach agreement regarding the amount of attorneys' fees

and costs for the common benefits to the putative MEDICAL BENEFITS SETTLEMENT

CLASS, which will be subject to final determination and approval by the COURT.  In no event

will BP be obligated to pay more in fees and costs in connection with this putative MEDICAL

BENEFITS SETTLEMENT CLASS than the amount to be agreed to with the PSC.  BP and the

PSC have not had any fees discussion to date, and will not have such a discussion until the

COURT has first authorized such discussions.  Details regarding this provision shall be

negotiated and attached as Exhibit 19.

## XX.  ENFORCEABILITY OF MEDICAL BENEFITS CLASS ACTION SETTLEMENT AND DISMISSAL OF CLAIMS

A.      The PARTIES agree that this MEDICAL BENEFITS CLASS ACTION SETTLEMENT is not final and enforceable until the EFFECTIVE DATE; provided, however, that (i) funding and implementation of GULF REGION HEALTH OUTREACH PROGRAM shall begin upon entry by the COURT of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, pursuant to Section IX.B and (ii) MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS may file PROOF OF CLAIM FORMS upon entry by the COURT of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER and the CLAIMS ADMINISTRATOR shall process those PROOF OF CLAIM FORMS in accordance with the provisions of Section XXI.C.

B.      In consideration of the benefits provided under this MEDICAL SETTLEMENT AGREEMENT, upon the EFFECTIVE DATE, all RELEASED CLAIMS by or on behalf of any and all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS against any and all RELEASED PARTIES shall be dismissed with prejudice, and the MEDICAL BENEFITS CLASS REPRESENTATIVES and all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS shall be deemed to have agreed to the dismissal with prejudice of the RELATED CLAIMS as to the RELEASED PARTIES, including any related appeals.

C.      From and after the EFFECTIVE DATE, for the consideration provided for herein and by operation of the FINAL ORDER AND JUDGMENT, this MEDICAL SETTLEMENT AGREEMENT shall be the exclusive remedy for any and all RELEASED CLAIMS by or on behalf of any and all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS against any and all RELEASED PARTIES, and, subject to Section VIII, no MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall recover, directly or indirectly, any sums from any

RELEASED PARTIES for RELEASED CLAIMS other than those received for the RELEASED CLAIMS under the terms of this MEDICAL SETTLEMENT AGREEMENT.

D.      From and after the EFFECTIVE DATE and subject to Section VIII, the PARTIES agree that each and every MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and all other persons and entities claiming by, through, or on behalf of, a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any judicial, arbitral, or regulatory action against the RELEASED PARTIES with respect to any and all  RELEASED CLAIMS.

E.      From and after the EFFECTIVE DATE, if any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER commences, files, initiates, or institutes any new action or other proceeding for any RELEASED CLAIMS against any RELEASED PARTIES in any federal or state court, arbitration tribunal, or administrative or other forum, such action or other proceeding shall be dismissed with prejudice and at such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S cost; provided, however, before any costs may be assessed, counsel for such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or, if not represented, such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, shall be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice.  Furthermore, if BP or any OTHER RELEASED PARTY brings any legal action before the COURT to enforce its rights under this MEDICAL SETTLEMENT AGREEMENT against a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER and prevails in such action, that RELEASED PARTY shall be entitled to recover any and all related costs and

expenses (including attorneys' fees) from any MEDICAL BENEFITS SETTLEMENT CLASS

MEMBER found to be in violation or breach of his or her obligations under this Section XX.

# XXI.   CLAIMS ADMINISTRATION

A.   Claims Administrator

1)   The CLAIMS ADMINISTRATOR shall be appointed by the COURT. The CLAIMS ADMINISTRATOR shall faithfully implement and administer the MEDICAL SETTLEMENT AGREEMENT according to its terms and procedures.

2)   The PARTIES' Joint Motion for Preliminary Approval of the Medical Benefits Class Action Settlement, Approval of Class Notice, and Related Matters shall request that the COURT appoint GRG as CLAIMS ADMINISTRATOR.

3)   The CLAIMS ADMINISTRATOR may be removed by joint motion made by BP'S COUNSEL and MEDICAL BENEFITS CLASS COUNSEL, and granted by the COURT.

4)   If the CLAIMS ADMINISTRATOR resigns, is removed, or is otherwise unable to continue employment in this position, the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL shall jointly select a new proposed CLAIMS ADMINISTRATOR, and move the COURT to approve the new proposed CLAIMS ADMINISTRATOR.  The MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL and the COURT will follow this process until such time as a new CLAIMS ADMINISTRATOR is approved by the COURT and appointed.

5)   The COURT shall have ongoing and exclusive jurisdiction over the CLAIMS ADMINISTRATOR and shall retain such jurisdiction through and after the EFFECTIVE DATE.  The COURT may, at its sole discretion, request reports or information from the CLAIMS ADMINISTRATOR.  The CLAIMS ADMINISTRATOR shall be responsible for reporting and providing information to the COURT at such frequency and in such a manner as the COURT directs.

6)      Subject to certain indemnities that BP will provide to the CLAIMS ADMINISTRATOR in connection with its contract to undertake claims administration as set forth in this MEDICAL SETTLEMENT AGREEMENT, neither the PARTIES (including their AFFILIATES, and their and their AFFILIATES' respective heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, trustees, servants, past, present or future officers, directors, agents, employees and/or independent contractors, and/or any other successors, assigns, or legal representatives thereof), nor BP'S COUNSEL, INTERIM CLASS COUNSEL, MEDICAL BENEFITS CLASS COUNSEL, nor the PSC (including their respective heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, trustees, servants, past, present or future officers, directors, agents, employees and/or independent contractors, and/or any other successors, assigns, or legal representatives thereof), shall be liable for any act, or failure to act, of the CLAIMS ADMINISTRATOR.

7)      BP will be responsible for paying any and all of the reasonable compensation and out-of-pocket costs and expenses of the CLAIMS ADMINISTRATOR related to its performance of its duties described in this MEDICAL SETTLEMENT AGREEMENT. Such compensation, costs, and expenses shall be SETTLEMENT COSTS and shall be paid out of the ADMINISTRATIVE FUND.

8)      Upon appointment by the COURT, the CLAIMS ADMINISTRATOR shall faithfully implement and administer this MEDICAL SETTLEMENT AGREEMENT according to its terms, including without limitation:

a)      Creation and operation of a website, a web portal, and a call center to communicate with MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS and facilitate the filing of claims;

b)      Creation and operation of a claims processing system to process all claims made by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS;

c)      Identifying and creating a mechanism for implementation of the PERIODIC MEDICAL CONSULTATION PROGRAM;

d)      Implementing a mechanism for the identification and resolution of liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type;

e)      Coordination and management of the GULF REGION HEALTH OUTREACH PROGRAM;

f)      Identifying mediators for and managing mediations of LATER-MANIFESTED PHYSICAL CONDITION claims;

g)      Reviewing and evaluating submitted claims so that, upon the EFFECTIVE DATE, (1) MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS can promptly be notified of the status of their claims, (2) MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS with qualifying claims for SPECIFIED PHYSICAL CONDITIONS can be promptly paid, and (3) MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS with qualifying claims for participation in the PERIODIC MEDICAL CONSULTATION PROGRAM can promptly begin receiving that benefit; and

h)     Such other tasks reasonably necessary to accomplish the goals contemplated by this MEDICAL BENEFITS SETTLEMENT AGREEMENT.

9)     The CLAIMS ADMINISTRATOR shall have the right to retain counsel and other professionals in order to facilitate its ability to carry out its duties under this MEDICAL SETTLEMENT AGREEMENT, and the reasonable costs and expenses of such counsel and other professionals shall be SETTLEMENT COSTS.

10)     In connection with a claim of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who is a minor, lacks capacity, is incompetent, or is deceased, the CLAIMS ADMINISTRATOR shall abide by all substantive laws of the domicile of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER concerning distribution of settlement benefits. Where short form procedures exist concerning the distribution of such settlement benefits that do not require domiciliary court approval or supervision, the CLAIMS ADMINISTRATOR is authorized to adopt those procedures as part of the claims administration process applicable to such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

11)     All disbursements by the CLAIMS ADMINISTRATOR and/or the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST prior to the EFFECTIVE DATE (other than the disbursements made pursuant to Section IX.B) will be subject to review and approval by the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL.

B.     Databases and Other Information to be Maintained by the Claims Administrator

1)     On or about the date on which the PARTIES file their Joint Motion for Preliminary Approval of the Medical Benefits Class Action Settlement, approval of the Class Notice and Related Matters, the PARTIES shall also seek an order from the COURT that directs BP to provide the CLAIMS ADMINISTRATOR with those databases, data files, data

collections, or other documentary evidence in its possession, custody, or control that will allow the CLAIMS ADMINISTRATOR to determine the status of a NATURAL PERSON claiming to be a CLEAN-UP WORKER and/or a claim made by a CLEAN-UP WORKER for compensation for a SPECIFIED PHYSICAL CONDITION.  The following databases, data files, or other documentary evidence shall be included in such order:

   a)  The "Medical Encounters" database, which is in Excel format and contains information concerning CLEAN-UP WORKERS who visited medic stations funded by BP and made available to CLEAN-UP WORKERS;

   b)  The underlying documentation and records from which the "Medical Encounters" database was created, which files exist in both pdf format and paper copies;

   c)  The database identifying "Badged Workers," which is derived from the "Incident Action Plan" database, is in Excel format, and contains information concerning those individuals who received a badge that allowed them access to areas where RESPONSE ACTIVITIES were taking place;

   d)  The "Training" database, which is in Excel format and contains information concerning individuals who received training provided by BP and or/its contractors that was required in order to allow those individuals to be hired as CLEAN-UP WORKERS;

   e)  Those portions of the "Traction" database, which is in Excel format, that contain information about injuries and illnesses reported by CLEAN-UP WORKERS during the performance of RESPONSE ACTIVITIES;

f)  The underlying documentation and records from which those portions of the "Traction" database were created, which documentation and records exist in both pdf format and paper copies;

g)  The "Injury and Illness" database, which is in Excel format and contains information about injuries and illnesses reported by CLEAN-UP WORKERS during RESPONSE ACTIVITIES;

h)  The underlying documentation and records from which those portions of the "Injury and Illness" database were created, which documentation and records exist in pdf format and paper copies;

i)  Documentation and records, including invoices, containing the identity of organizations that participated in the recovery, transport, and decontamination of wildlife during RESPONSE ACTIVITIES;

j)  Documentation and records identifying contractors retained by BP to perform RESPONSE ACTIVITIES and individuals who performed RESPONSE ACTIVITIES, including Industrial Hygiene Monitoring spreadsheets and Time History Reports for those who were being monitored;

k)  Documentation and records, including invoices, from ambulance companies; and

l)  "Persons on Board" lists for vessels that were engaged in RESPONSE ACTIVITIES.

2)  Within 10 days of the entry of the order described in Section XXI.B.1, BP shall provide the CLAIMS ADMINISTRATOR with the databases, data files, and other documentary evidence identified in Section XXI.B.1.  To the extent that BP identifies any

additional databases, data files, data collections, or other documentary evidence in its possession, custody, or control that will allow the CLAIMS ADMINISTRATOR to determine the status of a NATURAL PERSON claiming to be a CLEAN-UP WORKER, and/or a claim made by a CLEAN-UP WORKER for compensation for a SPECIFIED PHYSICAL CONDITION, BP shall notify MEDICAL BENEFITS CLASS COUNSEL and shall promptly provide such databases, data files, data collections, or other documentary evidence to the CLAIMS ADMINISTRATOR.

3)      THE CLAIMS ADMINISTRATOR may use such databases, data files, and other documentary evidence only for the purpose of evaluating, processing, and auditing claims by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS for compensation for SPECIFIED PHYSICAL CONDITIONS or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM.  The CLAIMS ADMINISTRATOR shall maintain all such databases, data files, and other documentary evidence in strict confidence and shall not disclose any information in the database, data files, and other documentary evidence to any person or entity; provided, however, that:

a)      The CLAIMS ADMINISTRATOR may disclose such information to a person or entity if ordered to do so by the COURT; and

b)      The CLAIMS ADMINISTRATOR may disclose to a NATURAL PERSON information from the databases, data files, or other documentary evidence described in Section XXI.B.1-2 relating to that NATURAL PERSON upon receipt of a completed and signed DATA DISCLOSURE FORM substantially in the form of Exhibit 1 from that NATURAL PERSON.  Such disclosure shall be made within 10 days of receipt by the CLAIMS ADMINISTRATOR of such request, shall be made at no cost to the NATURAL PERSON, and shall be made irrespective of when that NATURAL PERSON makes such request.

C.    PROOF OF CLAIMS FORMS

1)    All MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS applying for compensation for a SPECIFIED PHYSICAL CONDITION and/or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM must submit a PROOF OF CLAIM FORM and all required documentation, including proof of status as a CLEAN-UP WORKER or proof of residency in ZONE A or ZONE B during the relevant time periods and, where applicable, proof of a SPECIFIED PHYSICAL CONDITION, in accordance with the requirements set forth in this MEDICAL SETTLEMENT AGREEMENT.

2)    A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER must submit the PROOF OF CLAIM FORM and any required documentation to the CLAIMS ADMINISTRATOR via United States mail.

3)    All PROOF OF CLAIM FORMS must be submitted to the CLAIMS ADMINISTRATOR no later than 1 year after the EFFECTIVE DATE.  Any PROOF OF CLAIM FORM that is submitted more than 1 year after the EFFECTIVE DATE shall be denied by the CLAIMS ADMINISTRATOR as not timely, and the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim for benefits shall be denied.

4)    The CLAIMS ADMINISTRATOR will review every PROOF OF CLAIM FORM and all documentation and authorizations submitted therewith to confirm that:

a)    the PROOF OF CLAIM FORM has been timely submitted;

b)    the "Personal & Background Information" section of the PROOF OF CLAIM FORM has been completed in its entirety;

132

c)        the PROOF OF CLAIM FORM has been signed by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, or where applicable his or her AUTHORIZED REPRESENTATIVE, under penalty of perjury;

d)        where the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is a CLEAN-UP WORKER, the PROOF OF CLAIM FORM identifies his or her employer(s), duration and approximate dates of employment, and documentary proof of that employment by each employer; provided, however, that inclusion of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER on one or more of the BP databases, data files, data collections, and other documentary evidence identified in Section XXI.D.1.a shall also establish that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S status as a CLEAN-UP WORKER;

e)        where a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is a ZONE A RESIDENT or a ZONE B RESIDENT, the PROOF OF CLAIM FORM identifies the location(s) of his or her residence and time frame(s) of residency, and includes proof of residency in each such residence;

f)        for those MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS seeking compensation for a SPECIFIED PHYSICAL CONDITION, the PROOF OF CLAIM FORM identifies each SPECIFIED PHYSICAL CONDITION that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER claims to have developed; the date on or about that he or she developed such SPECIFIED PHYSICAL CONDITION; information regarding his or her exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, if applicable; the name

and contact information of any medical professional who diagnosed or treated the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER with such SPECIFIED PHYSICAL CONDITION, and a description of any medical treatment received for each SPECIFIED PHYSICAL CONDITION;

g)      the PROOF OF CLAIM FORM identifies whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is represented by a lawyer, and if so, the name, law firm, address, e-mail address, and telephone number of that lawyer;

h)      the PROOF OF CLAIM FORM includes an executed authorization compliant with the HIPAA;

i)      the PROOF OF CLAIM FORM includes a signed authorization for release of employment information, where the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER bases a claim on his or her status as a CLEAN-UP WORKER;

j)      the PROOF OF CLAIM FORM includes a written representation by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, made under penalty of perjury, whether a subrogation lien or claim has been asserted with respect to such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S right to receive benefits under the MEDICAL BENEFITS SETTLEMENT, and, if so, the name(s), address(es), telephone number(s), and e-mail address(es) of all subrogees; and

k)      where an AUTHORIZED REPRESENTATIVE is applying on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for compensation for a SPECIFIED PHYSICAL CONDITION or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM, the PROOF OF CLAIM FORM identifies the name, address, telephone number, and e-mail address of the AUTHORIZED REPRESENTATIVE, identifies the

authority giving the AUTHORIZED REPRESENTATIVE the right to act on behalf of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and includes documentation sufficient to verify that he or she is legally authorized to submit a claim on behalf of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

5)      Any PROOF OF CLAIM FORM submitted without sufficient proof of status as a CLEAN-UP WORKER or residency in ZONE A or ZONE B shall be rejected by the CLAIMS ADMINISTRATOR, subject to the provisions of Section V.E.

6)      Each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who submits a PROOF OF CLAIM FORM shall, in such form, (i) identify all known GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAMS, and OTHER PAYERS/PROVIDERS from whom such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is or was entitled to benefits for medical items, services, and/or prescription drugs on or after April 20, 2010, for injuries claimed to arise out of the *DEEPWATER HORIZON* INCIDENT and who he or she believes or suspects may hold or assert any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type in connection with compensation or benefits claimed or received by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to this MEDICAL SETTLEMENT AGREEMENT; (ii)  provide to the CLAIMS ADMINISTRATOR any correspondence that he or she has received in which GOVERNMENTAL PAYERS, MEDICARE PART C OR D PROGRAM sponsors, and/or OTHER PAYER/PROVIDERS assert liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type for medical items, services, and/or prescription drugs on or after April 20, 2010, for injuries claimed to arise out of the *DEEPWATER HORIZON* INCIDENT; (iii) authorize the CLAIMS ADMINISTRATOR to

transmit information necessary to comply with reporting obligations to GOVERNMENTAL PAYERS; (iv) agree that as a condition of his or her participation in this MEDICAL BENEFITS CLASS ACTION SETTLEMENT, the CLAIMS ADMINISTRATOR may satisfy any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type of a GOVERNMENTAL PAYER for payment or reimbursement associated with any medical items, services, and/or prescription drugs furnished to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER; and (v) subject to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S right to object to the fact and/or amount, agree that the CLAIMS ADMINISTRATOR may negotiate and satisfy any disclosed or identified liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type of any MEDICARE PART C OR PART D PROGRAM SPONSOR or OTHER PAYER/PROVIDER for payment or reimbursement associated with any medical items, services, and/or prescription drugs furnished to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER out of any compensation to be awarded to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

7) The CLAIMS ADMINISTRATOR shall adopt appropriate internal claims processing procedures which (i) allow payment of claims through either a check or an electronic funds transfer and (ii) allow payments of claims directly to counsel for those MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who are represented by individual counsel and provide appropriate documentation confirming such representation and authorizing payment to such individual counsel.

D. Establishment of Status as a CLEAN-UP WORKER

Case 2:10-md-02179-CJB-SS   Document 6427-1   Filed 05/03/12   Page 146 of 201

1)       Status of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER as a CLEAN-UP WORKER shall be established by:

a)       inclusion of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER on one or more of the following BP databases, data files, data collections, or other documentary evidence that have been provided to the CLAIMS ADMINISTRATOR pursuant to Section XXI.B.1:

(i)       the "Medical Encounters" database, which contains information concerning CLEAN-UP WORKERS who visited medic stations funded by BP and made available to CLEAN-UP WORKERS;

(ii)       the "Badged Worker" database, which contains information concerning those individuals who received a badge that allowed them access to areas where RESPONSE ACTIVITIES were taking place;

(iii)       those portions of the "Traction" database that contain information about injuries and illnesses reported by CLEAN-UP WORKERS during the performance of RESPONSE ACTIVITIES;

(iv)       the "Injury and Illness" database, which contains information about injuries and illnesses reported by CLEAN-UP WORKERS during RESPONSE ACTIVITIES;

(v)       documentation or records, including invoices, that identify individuals who performed RESPONSE ACTIVITIES, including the underlying documentation and records from the "Medical Encounters," "Training," and "Injury and Illness" databases, Industrial Hygiene Monitoring spreadsheets, Time History Reports, and Persons on Board lists; or

(vi) personal information contained in documentation and records containing the identity of organizations that participated in the recovery, transport, and decontamination of wildlife during RESPONSE ACTIVITIES.

b) Documentation during the appropriate time period, of work for or a contract with any entity or person engaged in RESPONSE ACTIVITIES that is identified in those databases, data files, or other documentary evidence provided to the CLAIMS ADMINISTRATOR by BP pursuant to Section XXI.B.1 (*e.g.*, W-2 forms, 1099 forms, pay stubs, copy of worker identification badges, contracts, tax returns, declaration under penalty of perjury by such person or entity); or

c) any other documentation submitted by or on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER determined by the CLAIMS ADMINISTRATOR to establish more likely than not that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S status as a CLEAN-UP WORKER.

2) Inclusion of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER on the "Training" database, which contains information concerning individuals who received training provided by BP that was required in order to allow those individuals to be hired as CLEAN-UP WORKERS, provided to the CLAIMS ADMINISTRATOR pursuant to Section XXI.B.1 of this MEDICAL SETTLEMENT AGREEMENT, cannot alone establish status as a CLEAN-UP WORKER, but may be used to corroborate other documentation.

3) A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER cannot establish his or her status as a CLEAN-UP WORKER by his or her own uncorroborated declaration; provided, however, that a declaration signed under penalty of perjury by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or third party, including an

employer or a co-worker, may be used to explain or corroborate other documentation. Further, as provided in Section XXI.D.1.b above, a declaration from an entity or person described in Section XXI.B.1 may be used to establish status as a CLEAN-UP WORKER.

E.       Establishment of Status as a ZONE A RESIDENT or ZONE B RESIDENT

1)       Status as a ZONE A RESIDENT or ZONE B RESIDENT shall be established by documentation of the fact and time-frame of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S residency at any time during the period between April 20, 2010, and September 30, 2010, for a ZONE A RESIDENT or between April 20, 2010, and December 31, 2010, for a ZONE B RESIDENT (*e.g.*, copies of a lease or title to property, utility or phone bills, a driver's license or other government-issued ID, or similar documentation found to be acceptable by the CLAIMS ADMINISTRATOR).

2)       The fact of residency must be demonstrated by documentation. However, if no documentary proof of the time-frame of residency is available, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may provide a declaration signed under penalty of perjury to demonstrate the time-frame of residence only.

3)       A minor or incompetent or incapacitated person claiming to be a ZONE A RESIDENT or a ZONE B RESIDENT may also establish the fact, location and duration of his or her residency through (1) school records, custody orders, medical records, and/or similar evidence; or (2) for a minor or incompetent or incapacitated person claiming to be a ZONE A RESIDENT or a ZONE B RESIDENT who lacks documentation, a declaration by an AUTHORIZED REPRESENTATIVE signed under penalty of perjury confirming such minor or incompetent or incapacitated person's residency in ZONE A between April 20, 2010, and

September 30, 2010, for a ZONE A RESIDENT or in ZONE B between April 20, 2010, and December 31, 2010, for a ZONE B RESIDENT.

        4)      Except as provided in Section XXI.E.3, a declaration made by or on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is not acceptable proof of ZONE A or ZONE B residency.

      F.      Proof of ACTUAL HOSPITAL EXPENSES

        1)      A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeking reimbursement of ACTUAL HOSPITAL EXPENSES incurred in connection with a SPECIFIED PHYSICAL CONDITION must provide documentation of such ACTUAL HOSPITAL EXPENSES, including hospital or physician records, bills, statements, receipts, proof of payment, or other similar documentation found to be acceptable by the CLAIMS ADMINISTRATOR, documenting the fact, cost, and payment of the hospitalization, and that the hospitalization was related to the claimed SPECIFIED PHYSICAL CONDITION. The CLAIMS ADMINISTRATOR shall not compensate for any ACTUAL HOSPITAL EXPENSES that are not substantiated through documentation. The CLAIMS ADMINISTRATOR shall review the documentation of ACTUAL HOSPITAL EXPENSES to determine whether:

        a)      it is an acceptable form of documentary proof;

        b)      the submitted billed expenses related to the SPECIFIED PHYSICAL CONDITION;

        c)      the submitted expenses occurred within the reimbursable time frame as set forth in the SPECIFIED PHYSICAL CONDITIONS MATRIX; and

        d)      the submitted expenses were paid by or on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

G.      Audit of Claims for Compensation for SPECIFIED PHYSICAL CONDITION

1)      On a monthly basis, the CLAIMS ADMINISTRATOR shall audit five percent of the total PROOF OF CLAIM FORMS that the CLAIMS ADMINISTRATOR has found to qualify for compensation for a SPECIFIED PHYSICAL CONDITION during the preceding month. The CLAIMS ADMINISTRATOR shall select the PROOF OF CLAIM FORMS for auditing on a random basis; provided, however, that the CLAIMS ADMINISTRATOR may also consider whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is submitting a PROOF OF CLAIM FORM under A1, A2, A3, A4, or B1 for purposes of ensuring audits of all types of claims

2)      Upon selection for audit of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim seeking compensation under levels A1, A3, or A4, on the SPECIFIED PHYSICAL CONDITIONS MATRIX, the CLAIMS ADMINISTRATOR shall notify MEDICAL BENEFITS CLASS COUNSEL, the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and BP'S COUNSEL of the selection of the claim for audit and shall require that, within 30 days, the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER submit to the CLAIMS ADMINISTRATOR, to the extent not already provided, the following documents and information:

a)      The audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S employment records for April 20, 2010, to April 16, 2012, but only if the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is claiming compensation for a SPECIFIED PHYSICAL CONDITION based on his or her status as a CLEAN-UP WORKER;

b)      Fully completed and executed authorizations that will allow the CLAIMS ADMINISTRATOR to obtain copies of the audited MEDICAL BENEFITS

SETTLEMENT CLASS MEMBER'S employment records for April 20, 2010, to April 16, 2012, but only if the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is claiming compensation for a SPECIFIED PHYSICAL CONDITION based on his or her status as a CLEAN-UP WORKER; and

        c)      Such other relevant documents or information within the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S possession, custody, or control as may reasonably be requested by the CLAIMS ADMINISTRATOR under the circumstances.

        d)      The CLAIMS ADMINISTRATOR shall pay reasonable copying costs to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER providing the documents and information specified in Sections XXI.G.3.a and XXI.G.3.c above.

        3)      Upon selection for audit of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim seeking compensation under levels A2 or B1 on the SPECIFIED PHYSICAL CONDITIONS MATRIX, the CLAIMS ADMINISTRATOR shall notify MEDICAL BENEFITS CLASS COUNSEL, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER and BP'S COUNSEL of the selection of the claim for audit and shall require that within 30 days, the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER submit to the CLAIMS ADMINISTRATOR, to the extent not already provided, the following documents and information:

        a)      All of the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S medical records in his or her possession, custody, or control that relate to the condition and/or symptom(s) claimed by MEDICAL BENEFITS SETTLEMENT CLASS MEMBER;

b)      A list of all health care providers seen by the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER since April 20, 2010;

c)      A HIPAA-compliant release substantially in the form of Appendix B to Exhibit 5, to obtain the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S medical records from health care providers since April 20, 2010;

d)      The audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S employment records for April 20, 2010, to April 16, 2012, but only if the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is claiming compensation for a SPECIFIED PHYSICAL CONDITION based on his or her status as a CLEAN-UP WORKER;

e)      Fully completed and executed authorizations that will allow the CLAIMS ADMINISTRATOR to obtain copies of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S employment records for April 20, 2010, to April 16, 2012, but only if the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is claiming compensation for a SPECIFIED PHYSICAL CONDITION based on his or her status as a CLEAN-UP WORKER; and

f)      Such other relevant documents or information within the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S possession, custody, or control as may reasonably be requested by the CLAIMS ADMINISTRATOR under the circumstances.

g)      The CLAIMS ADMINISTRATOR shall pay reasonable copying costs to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER providing the documents and information specified in Sections XXI.G.3.a and XXI.G.3.c.

4)      In addition to those audits to be performed pursuant to Section XXI.G.1 above, the CLAIMS ADMINISTRATOR may select for audit additional qualifying claims by

MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS for compensation for SPECIFIED PHYSICAL CONDITIONS where the CLAIMS ADMINISTRATOR, based upon its experience with the claims administration process, determines that the PROOF OF CLAIM FORM and/or documents submitted in support of the PROOF OF CLAIM FORM may contain intentional misrepresentation, omission, or concealment of material facts relating to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim for compensation for a SPECIFIED PHYSICAL CONDITION. In particular, the CLAIMS ADMINISTRATOR may select for audits additional qualifying claims that involve use of a form declaration or involve medical examinations that were conducted at locations other than standard treatment or diagnosis settings (*e.g.* hotel rooms).

5) A claim by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for compensation for a SPECIFIED PHYSICAL CONDITION shall not be paid while it is the subject of an audit.

6) If a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER unreasonably fails or refuses to provide the CLAIMS ADMINISTRATOR with any materials, documents, or information sought by the CLAIMS ADMINISTRATOR for an audit within the time frame for submitting additional materials, documents, or information and, under appropriate circumstances, after being afforded an additional period of time to do so, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim shall be denied.

7) With respect to all audits of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS' claims for compensation for a SPECIFIED PHYSICAL CONDITION, the CLAIMS ADMINISTRATOR shall do the following:

a)       Review each such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S declaration, supporting documentation, medical records (if applicable), employment records, and all other documents or information that the CLAIMS ADMINISTRATOR has obtained relating to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim; and

b)       Determine whether a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S PROOF OF CLAIM FORM submitted to the CLAIMS ADMINISTRATOR intentionally misrepresents, omits, and/or conceals material facts that affect the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S qualification for compensation for a SPECIFIED PHYSICAL CONDITION.

8)       If, upon completion of an audit, the CLAIMS ADMINISTRATOR makes a determination that there has not been an intentional misrepresentation, omission, or concealment of a material fact made in connection with the claim submitted by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, then the claim shall be paid.

9)       If, upon completion of an audit, the CLAIMS ADMINISTRATOR makes a determination that there has been intentional misrepresentation, omission, or concealment of a material fact made in connection with the claim submitted by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that affects the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S qualification for compensation for a SPECIFIED PHYSICAL CONDITION, the CLAIMS ADMINISTRATOR shall notify the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER of such findings.   Such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may respond to such notice within 15 days with any evidence indicating why no intentional misrepresentation, omission, and/or concealment of a

material fact has been made. If, after its receipt and consideration of all such evidence, the CLAIMS ADMINISTRATOR determines that an intentional misrepresentation, omission, and/or concealment of a material fact has been made, or upon expiration of the 15 day response period and the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER does not respond to the CLAIMS ADMINISTRATOR'S notice described above, the CLAIMS ADMINISTRATOR shall do the following:

a) Deny that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim and make no payment on such claim;

b) Notify MEDICAL BENEFITS CLASS COUNSEL, the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and BP'S COUNSEL of the results of the audit and the denial of the claim; and

c) Report the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to the responsible government authorities pursuant to Section XXI.H below.

10) The CLAIMS ADMINISTRATOR shall complete all audits described herein within 30 days of receipt of the documents and information set forth in Section XXI.G.3.a and Section XXI.G.3.c above.

H.    Fraudulent or Intentional Misstatements of Fact

All statements made in the PROOF OF CLAIM FORM, NOTICE OF INTENT TO SUE, and MEDIATION INFORMATION FORM are sworn statements submitted to the CLAIMS ADMINISTRATOR under penalty of perjury. All statements and documentary proof submitted in support of a PROOF OF CLAIM FORM, NOTICE OF INTENT TO SUE, and MEDIATION INFORMATION FORM are subject to verification, investigation, and review by the CLAIMS ADMINISTRATOR. If the CLAIMS ADMINISTRATOR at any time has reason to believe that

a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER has made an intentional misrepresentation, omission, or concealment of a material fact in the PROOF OF CLAIM FORM, NOTICE OF INTENT TO SUE, or MEDIATION INFORMATION FORM, or has provided fraudulent proof in support of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claims, the CLAIMS ADMINISTRATOR shall discontinue processing the claim and report the alleged intentional misrepresentation, omission, or concealment of material fact and/or alleged fraudulent proof to the COURT, the United States Attorney's Office, the MEDICAL BENEFITS CLASS COUNSEL, and BP'S COUNSEL.

I.   NOTICE OF INTENT TO SUE

The CLAIMS ADMINISTRATOR shall review each completed NOTICE OF INTENT TO SUE and the materials submitted therewith to confirm that:

1)   the NOTICE OF INTENT TO SUE and related materials have been timely submitted;

2)   the NOTICE OF INTENT TO SUE has been signed by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or, where applicable, the AUTHORIZED REPRESENTATIVE, under penalty of perjury;

3)   the "Personal & Background Information" section of the NOTICE OF INTENT TO SUE has been completed in its entirety;

4)   the NOTICE OF INTENT TO SUE identifies the LATER-MANIFESTED PHYSICAL CONDITION with which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was diagnosed;

5)　　the NOTICE OF INTENT TO SUE identifies the date on which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was diagnosed with the LATER-MANIFESTED PHYSICAL CONDITION;

6)　　the NOTICE OF INTENT TO SUE identifies the medical professional who diagnosed the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER with the LATER-MANIFESTED PHYSICAL CONDITION;

7)　　the NOTICE OF INTENT TO SUE includes a PHYSICIAN'S CERTIFICATION FORM, substantially in the form of Appendix C to Exhibit 4, from a medical professional providing the diagnosis and date of diagnosis of the LATER-MANIFESTED PHYSICAL CONDITION claimed by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, or includes medical records containing the diagnosis and date of first diagnosis of the LATER-MANIFESTED PHYSICAL CONDITION claimed by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER;

8)　　the NOTICE OF INTENT TO SUE contains a certification that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER has not filed and will not file a claim for benefits under workers' compensation law or the Longshore and Harbor Workers' Compensation Act for that LATER-MANIFESTED PHYSICAL CONDITION.

9)　　the NOTICE OF INTENT TO SUE identifies whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is represented by a lawyer, and if so, the name, law firm, address, e-mail address, and telephone number of that lawyer;

10)　　where an AUTHORIZED REPRESENTATIVE is applying on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for compensation for such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S LATER-MANIFESTED

PHYSICAL CONDITION, the NOTICE OF INTENT TO SUE includes documentation confirming that such AUTHORIZED REPRESENTATIVE is legally authorized to file a lawsuit on behalf of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER; and

11) the NOTICE OF INTENT TO SUE (1) identifies all known GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAMS, and OTHER PAYERS/PROVIDERS from whom such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is or was entitled to benefits for medical items, services, and/or prescription drugs on or after April 16, 2012, for injuries claimed to arise out of the *DEEPWATER HORIZON* INCIDENT and who he or she believes or suspects may hold or assert any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type in connection with compensation or benefits claimed or received by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to this MEDICAL SETTLEMENT AGREEMENT; and (2) authorizes the CLAIMS ADMINISTRATOR to transmit information necessary to comply with reporting obligations to GOVERNMENTAL PAYERS.

J.     Selection of Mediators

Within 30 days of the EFFECTIVE DATE, the CLAIMS ADMINISTRATOR shall nominate no fewer than 3 individuals to serve as mediators and transmit the names of such individuals to the MEDICAL BENEFITS CLASS COUNSEL AND BP. The MEDICAL BENEFITS CLASS COUNSEL and BP must approve the individuals nominated by the CLAIMS ADMINISTRATOR to serve as mediators. Upon approval by the MEDICAL BENEFITS CLASS COUNSEL and BP, the mediator(s) will be retained. During the tenure of his or her retention, a mediator shall not enter the employ or contract (other than for the purposes of providing mediation services) with the MEDICAL BENEFITS CLASS COUNSEL, BP, or

BP'S COUNSEL. A mediator may not mediate a claim involving a party he has previously represented. Any mediator may be removed upon the joint request of the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL. Replacements for any mediator who is removed or can no longer serve shall be identified by the CLAIMS ADMINISTRATOR, subject to approval of the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL.

K.  Reporting

The CLAIMS ADMINISTRATOR shall make reports as follows:

1)  Weekly Reporting Obligations

a)  Between entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER and the FAIRNESS HEARING, the CLAIMS ADMINISTRATOR shall provide BP and MEDICAL BENEFITS CLASS COUNSEL with a weekly report of:

(i)  The number and identity of OPT OUTS;

(ii)  The number and identity of persons revoking an OPT OUT; and

(iii)  The weekly number and total number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who have filed a PROOF OF CLAIM FORM and the type(s) of benefits being sought in the PROOF OF CLAIM FORM.

2)  Monthly Reporting Obligations

a)  Beginning on the date of the FAIRNESS HEARING and for 3 calendar years thereafter, the CLAIMS ADMINISTRATOR shall provide BP and MEDICAL BENEFITS CLASS COUNSEL with a monthly report of, where applicable:

(i)     The monthly number and total number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who have filed a PROOF OF CLAIM FORM and the type(s) of benefit being sought in the PROOF OF CLAIM FORM;

(ii)     The monthly number and total number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who have received compensation for SPECIFIED PHYSICAL CONDITIONS and the monthly amount and total amount paid;

(iii)     The monthly number and the total number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who have sought, but have been found by the CLAIMS ADMINISTRATOR not to qualify for, compensation for a SPECIFIED PHYSICAL CONDITION;

(iv)     Activity in the PERIODIC MEDICAL CONSULTATION PROGRAM, including the number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS qualifying to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM, the monthly number and total number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS receiving physician visits, and the monthly amount and the total amount paid to each provider and to all providers within the PERIODIC MEDICAL CONSULTATION PROGRAM;

(v)     The monthly number and identity of, as well as the total number of, MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS filing a NOTICE OF INTENT TO SUE;

(vi)     The monthly number of mediations, and the total number of mediations, involving MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS

claiming LATER-MANIFESTED PHYSICAL CONDITIONS and the outcomes of such mediations;

(vii)    The total number and identity of all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS then eligible to bring a BACK-END LITIGATION OPTION LAWSUIT;

(viii)   A summary accounting of the administrative expenses incurred by the CLAIMS ADMINISTRATOR in the preceding month; and

(ix)    The total amounts disbursed to each grantee participating in the GULF REGION HEALTH OUTREACH PROGRAM.

3)    Annual Reporting Obligations

a)    Beginning on the first January after the EFFECTIVE DATE, the CLAIMS ADMINISTRATOR shall provide annual reports to the COURT, BP, and the MEDICAL BENEFITS CLASS COUNSEL of:

(i)    The amounts spent by the CLAIMS ADMINISTRATOR and/or the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST on each of the following in the preceding year: compensation for SPECIFIED PHYSICAL CONDITIONS; the PERIODIC MEDICAL CONSULTATION PROGRAM; activities related to the BACK-END LITIGATION OPTION process; the GULF REGION HEALTH OUTREACH PROGRAM; administrative expenses; payments to CMS, OTHER GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAM sponsors, and OTHER PAYERS/PROVIDERS; and all other SETTLEMENT COSTS;

(ii)     The number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, broken down by SPECIFIED PHYSICAL CONDITIONS MATRIX category (*i.e.* A1, A2, A3, A4, B1) who, in the preceding  year, received compensation for a SPECIFIED PHYSICAL CONDITION and the number of persons who sought but were found by the CLAIMS ADMINISTRATOR not to qualify for compensation for a SPECIFIED PHYSICAL CONDITION;

(iii)     The number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who, in the preceding year, qualified for participation in the PERIODIC MEDICAL CONSULTATION PROGRAM, the number and identity of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who participated in the PERIODIC MEDICAL CONSULTATION PROGRAM, and the number of persons who sought to qualify for, but were found by the CLAIMS ADMINISTRATOR not to qualify for, the PERIODIC MEDICAL CONSULTATION PROGRAM;

(iv)     The number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who filed a NOTICE OF INTENT TO SUE in the preceding year;

(v)     The number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS whose claims for LATER-MANIFESTED PHYSICAL CONDITIONS were mediated in the preceding year and the outcomes of such mediations;

(vi)     The number and identity, in a format acceptable to the COURT, of all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS then eligible to bring a BACK-END LITIGATION OPTION LAWSUIT;

(vii)    Status reports from each of the grantees participating in the GULF REGION HEALTH OUTREACH PROGRAM for the duration of such projects;

(viii)    A status report regarding the implementation and operations of the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY; and

(ix)    A status report from the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST.

b)    Such reports to the COURT shall be done in a form and manner deemed acceptable to the COURT.

L.    <u>Financial Audit</u>

Beginning on the first January after the EFFECTIVE DATE, and each year thereafter, the CLAIMS ADMINISTRATOR shall cause an audit to be performed by a Certified Public Accountant upon the financial records of the CLAIMS ADMINISTRATOR and the MEDICAL SETTLEMENT TRUST, which shall reflect amounts received from BP in the prior year and payments made in the prior year.  Complete copies of such audits shall be provided to the COURT, MEDICAL BENEFITS CLASS COUNSEL, and BP.

## XXII.  **BP PAYMENT OBLIGATIONS**

A.      BP, jointly and severally, shall be responsible for payment of all SETTLEMENT

COSTS.  BP may satisfy all of its payment obligations under this MEDICAL SETTLEMENT

AGREEMENT by directly paying or causing the DWH TRUST to make payments into the

FUNDS as set forth herein.

1)      BP Corporation North America, Inc., an Indiana corporation, shall not be a

PARTY to this MEDICAL SETTLEMENT AGREEMENT but shall serve as guarantor of BP'S

payment obligations under this MEDICAL SETTLEMENT AGREEMENT as set forth in the

Guarantee attached hereto as Exhibit 17.

2)      BP p.l.c. shall not be a PARTY to this MEDICAL SETTLEMENT

AGREEMENT but shall serve as a back-up guarantor to BP Corporation North America for a

period of 5 years after the EFFECTIVE DATE as set forth in the Guarantee attached hereto as

Exhibit 18.

B.      BP has established the DWH TRUST pursuant to the DWH TRUST

AGREEMENT for the purpose of providing funds to be used to satisfy claims, as more

particularly described in the DWH TRUST AGREEMENT, arising from or related to the

*DEEPWATER HORIZON* INCIDENT.  BP may satisfy each of its payment obligations under

this MEDICAL SETTLEMENT AGREEMENT, including this Section XXII, by arranging for

the DWH TRUST to make such payment on BP'S behalf.  It is contemplated by BP that such

payments generally will be made by the DWH TRUST.  Nothing contained in this Section XXII

in any way limits or impairs the duties and obligations of BP under this MEDICAL

SETTLEMENT AGREEMENT or the guarantees of payment obligations under this MEDICAL

SETTLEMENT AGREEMENT provided by BP Corporation North America, Inc. and BP p.l.c.

set forth in Exhibits 17 and 18, respectively.

C.     BP and MEDICAL BENEFITS CLASS COUNSEL will file a proposed MEDICAL SETTLEMENT TRUST AGREEMENT with the COURT.  Upon approval of the proposed MEDICAL SETTLEMENT TRUST AGREEMENT by the COURT, BP, MEDICAL BENEFITS CLASS COUNSEL, the trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST, and the CLAIMS ADMINISTRATOR will execute the MEDICAL SETTLEMENT TRUST AGREEMENT approved by the COURT, thereby creating the MEDICAL SETTLEMENT TRUST.  The MEDICAL SETTLEMENT TRUST shall be structured and operated in a manner so that it qualifies as a "qualified settlement fund" under section 468B(d)(2) of the Internal Revenue Code and Treasury Regulation §1.468B-1.

D.     The MEDICAL SETTLEMENT TRUST shall be comprised of the FUNDS.  The trustee and/or the directed trustee shall establish the MEDICAL SETTLEMENT TRUST ACCOUNT, into which BP shall make payments as required by this MEDICAL SETTLEMENT AGREEMENT.  The trustee and/or the directed trustee shall also establish three separate funds, into which the trustee and/or the directed trustee shall transfer funds at the direction of the CLAIMS ADMINISTRATOR and pursuant to the terms of this MEDICAL SETTLEMENT AGREEMENT and on which the CLAIMS ADMINISTRATOR shall have signatory authority.  These FUNDS shall constitute a single qualified settlement fund:

1)     GULF REGION HEALTH OUTREACH PROJECTS FUND, which shall be used solely to make payments for the GULF REGION HEALTH OUTREACH PROJECTS pursuant to Section IX.E;

2)     GENERAL MEDICAL CLAIMS FUND, which shall be used solely to make payments for (a) all compensation for SPECIFIED PHYSICAL CONDITIONS as

provided in Section VI and Exhibit 8, and (b) all costs associated with the PERIODIC MEDICAL CONSULTATION PROGRAM as provided in Section VII;

3)    ADMINISTRATIVE FUND, which shall be used to pay all SETTLEMENT COSTS other than the payments described in Sections XXII.D.1 and XXII.D.2, which shall constitute ADMINISTRATIVE EXPENSES; and

4)    The MEDICAL SETTLEMENT TRUST ACCOUNT, which shall be used solely to transfer funds into the FUNDS described above in Section XXII.D.1-3.

E.    The MEDICAL SETTLEMENT TRUST and the FUNDS shall be managed by the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST as provided in the MEDICAL SETTLEMENT TRUST AGREEMENT and shall be subject to the continuing jurisdiction and supervision of the COURT.  Each of the FUNDS shall be maintained in separate bank accounts at one or more federally insured depository institutions approved by BP and MEDICAL BENEFITS CLASS COUNSEL.  MEDICAL BENEFITS CLASS COUNSEL and BP shall nominate Matthew L. Garretson as the trustee and J.P. Morgan Trust Company of Delaware as the directed trustee of the MEDICAL SETTLEMENT TRUST and Matthew L. Garretson as the administrator of the qualified settlement fund for purposes of Treasury Regulation §1.468B-2(k)(3), subject to the approval of the COURT.  The trustee and/or the direct trustee may be removed by joint motion made by BP'S COUNSEL and MEDICAL BENEFITS CLASS COUNSEL, and granted by the COURT.  If the trustee and/or directed trustee resigns, is removed, or is otherwise unable to continue employment in that position, the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL shall jointly select a new proposed trustee and/or directed trustee, as the case may be, and move the COURT to approve the new proposed trustee and/or directed trustee, as the case may be.   The MEDICAL

BENEFITS CLASS COUNSEL and BP'S COUNSEL and the COURT will follow this process until such time as a new trustee and/or directed trustee, as the case may be, is approved by the COURT and appointed. The COURT shall have ongoing jurisdiction over the trustee and the directed trustee and shall retain such jurisdiction through and after the EFFECTIVE DATE. The trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST shall have the authority to make payments from the MEDICAL SETTLEMENT TRUST ACCOUNT into the other FUNDS and to make disbursements from the FUNDS at the direction of the CLAIMS ADMINISTRATOR and consistent with the terms of this MEDICAL SETTLEMENT AGREEMENT and the MEDICAL SETTLEMENT TRUST AGREEMENT. The trustee of the MEDICAL SETTLEMENT TRUST shall be responsible for making any necessary tax filings and payments of taxes, estimated taxes, and associated interest and penalties, if any, by the MEDICAL SETTLEMENT TRUST and responding to any questions from, or audits regarding such taxes by, the Internal Revenue Service or any state or local tax authority. The trustee of the MEDICAL SETTLEMENT TRUST also shall be responsible for complying with all tax information reporting and withholding requirements with respect to payments made by the MEDICAL SETTLEMENT TRUST, as well as paying any associated interest and penalties. Any such taxes, interest, and penalty payments shall be SETTLEMENT COSTS and shall be paid by the trustee of the MEDICAL SETTLEMENT TRUST from the ADMINISTRATIVE FUND.

F.     BP shall pay or cause to be paid a total of $105 million into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into the GULF REGION HEALTH OUTREACH PROJECTS FUND according to the schedule set forth in Section IX.E.

G.      Within 10 days after the EFFECTIVE DATE, BP shall pay or cause to be paid

into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the

directed trustee into the GENERAL MEDICAL CLAIMS FUND an initial amount equal to $10

million.  For the three years following the EFFECTIVE DATE, if the GENERAL MEDICAL

CLAIMS FUND falls to a balance of less than $5 million, the CLAIMS ADMINISTRATOR

shall provide a written notice to BP specifying the balance in the GENERAL MEDICAL

CLAIMS FUND, and BP will promptly pay or cause to be paid an additional amount into the

MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed

trustee into the GENERAL MEDICAL CLAIMS FUND sufficient to restore such balance to at

least $10 million or enter into another appropriate arrangement with the CLAIMS

ADMINISTRATOR to assure that sufficient funds are maintained in the GENERAL MEDICAL

CLAIMS FUND to satisfy projected payments; provided, however, that no such arrangement

shall be entered into without the written agreement of MEDICAL BENEFITS CLASS

COUNSEL.  Thereafter, commencing three years after the EFFECTIVE DATE, the CLAIMS

ADMINISTRATOR shall provide in writing to BP and MEDICAL BENEFITS CLASS

COUNSEL a good faith, reasonable estimate of the amount of payments the CLAIMS

ADMINISTRATOR anticipates will be made from the GENERAL MEDICAL CLAIMS FUND

during the next succeeding calendar month (each a MONTHLY ESTIMATE).  Each such

MONTHLY ESTIMATE will be provided to BP and MEDICAL BENEFITS CLASS

COUNSEL at least 10 business days prior to the commencement of the calendar month covered

by such estimate.  Within seven business days after receipt of such MONTHLY ESTIMATE, BP

shall pay or cause to be paid into the MEDICAL SETTLEMENT TRUST ACCOUNT for

transfer by the trustee and/or the directed trustee into the GENERAL MEDICAL CLAIMS

FUND, the amount specified in the MONTHLY ESTIMATE.  Within ten business days after the end of each calendar month, the CLAIMS ADMINISTRATOR shall provide BP and MEDICAL BENEFITS CLASS COUNSEL with a reconciliation (in such detail as BP and/or MEDICAL BENEFITS CLASS COUNSEL may reasonably request) comparing the actual amount paid during such calendar month by the GENERAL MEDICAL CLAIMS FUND with the amount reflected in the MONTHLY ESTIMATE for such month.  To the extent the amount reflected in such MONTHLY ESTIMATE exceeds the amount actually paid in such month by the GENERAL MEDICAL CLAIMS FUND, such excess shall be credited against BP'S subsequent payment obligations to the GENERAL MEDICAL CLAIMS FUND.  If at any time the CLAIMS ADMINISTRATOR reasonably believes that the balance in the GENERAL MEDICAL CLAIMS FUND is not sufficient to pay the projected sums to be paid out of the GENERAL MEDICAL CLAIMS FUND during that calendar month, the CLAIMS ADMINISTRATOR shall provide a written notice to BP and MEDICAL BENEFITS CLASS COUNSEL specifying the additional amounts needed to satisfy such projected sums.  BP will promptly pay or cause to be paid such additional amount into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into the GENERAL MEDICAL CLAIMS FUND or enter into another appropriate arrangement with the CLAIMS ADMINISTRATOR to assure that sufficient funds will exist in the GENERAL MEDICAL CLAIMS FUND to satisfy projected sums to be paid out of the GENERAL MEDICAL CLAIMS FUND during that calendar month; provided, however, that no such arrangement shall be entered into without the written agreement of MEDICAL BENEFITS CLASS COUNSEL.  The CLAIMS ADMINISTRATOR will provide BP and MEDICAL BENEFITS CLASS COUNSEL with periodic reports relating to payments from the GENERAL MEDICAL CLAIMS FUND and

projections of payments that are in process, in each case in such detail as BP and/or MEDICAL BENEFITS CLASS COUNSEL may reasonably request, but in no such case shall such reports include the names of any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER indicating that he or she received compensation for a SPECIFIED PHYSICAL CONDITION or participated in the PERIODIC MEDICAL CONSULTATION PROGRAM.

H.     BP shall pay or cause to be paid into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into the ADMINISTRATIVE FUND (i) $15 million no later than 15 days after the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER is entered and (ii) additional amounts as may be required on a monthly basis thereafter during the existence of this MEDICAL SETTLEMENT AGREEMENT in accordance with the ADMINISTRATIVE BUDGET to be developed by the CLAIMS ADMINISTRATOR, subject to the approval of both BP and MEDICAL BENEFITS CLASS COUNSEL, which shall not be unreasonably withheld.     The CLAIMS ADMINISTRATOR shall provide reports consistent with Section XXI.K.     Nothing in Section XXI.K shall preclude BP or MEDICAL BENEFITS CLASS COUNSEL from requesting such additional information concerning the ADMINISTRATIVE FUND or the MEDICAL SETTLEMENT TRUST ACCOUNT as is reasonably necessary.     BP and the CLAIMS ADMINISTRATOR shall adjust the monthly payment amounts accordingly to ensure that sufficient funds are on deposit in the ADMINISTRATIVE FUND to cover the ADMINISTRATIVE EXPENSES on a timely basis.

I.     BP may contest any request for payment from the CLAIMS ADMINISTRATOR by filing a motion with the COURT within 10 days of receipt of such request; provided, however, that BP may not contest any payments made or to be made by the CLAIMS

ADMINISTRATOR to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS for compensation for a SPECIFIED PHYSICAL CONDITION.  Such motion must state with specificity the reasons for BP'S challenge of the CLAIMS ADMINISTRATOR'S request for payment.  BP shall request an expedited hearing of any such motion.

J.      BP shall have the right (but not the obligation) to prepay, or cause to be prepaid, any of its payment obligations to the FUNDS under the MEDICAL SETTLEMENT AGREEMENT.  In connection with any such prepayment, BP shall designate in writing the payment obligation that is being prepaid and how such prepayment should affect BP'S remaining payment obligations (*i.e.*, whether the amount prepaid should be credited against the next payment obligation or to one or more subsequent payment obligations or a combination thereof).

K.      BP shall have a reversionary interest in (i) any amounts that remain in the GENERAL MEDICAL CLAIMS FUND 1 year after at the close of the PERIODIC MEDICAL CONSULTATION PROGRAM, (ii) any amounts that remain in the GULF REGION HEALTH OUTREACH PROJECTS FUND at the earlier of the time all distributions have been made pursuant to Section IX.E or the time this MEDICAL SETTLEMENT AGREEMENT terminates under Section XIV, and/or (iii) any amounts that remain in the MEDICAL SETTLEMENT TRUST ACCOUNT or the ADMINISTRATIVE FUND 1 year following the conclusion of the MEDICAL SETTLEMENT AGREEMENT, as determined by the COURT.

L.      Amounts deposited in each of the FUNDS shall be invested conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk, and only in the following types of investments:

1)      United States government money market funds having a AAA/Aaa rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's or Fitch); or

2)      Short-dated United States treasury bills and/or interest bearing deposits at federally insured depository institutions that are at all times rated A+/A1 or higher by Standard & Poor's and Moody's provided such depository institution rated A+/A1 or higher at all times holds a stable or positive outlook.

3)      The total amount of cash invested in any single United States government money market fund by the FUNDS in the aggregate shall not exceed $50 million and the total amount invested in deposits at federally insured depository institutions by the FUNDS in the aggregate shall not exceed $25 million per depository institution.

M.      Any earnings attributable to the MEDICAL SETTLEMENT TRUST ACCOUNT, the GENERAL MEDICAL CLAIMS FUND, and/or the GULF REGION HEALTH OUTREACH PROJECTS FUND shall be transferred to the ADMINISTRATIVE FUND, and any earnings on the ADMINISTRATIVE FUND shall be retained in the ADMINISTRATIVE FUND.  Such earnings may be used to pay SETTLEMENT COSTS out of the ADMINISTRATIVE FUND.

N.      The GENERAL MEDICAL CLAIMS FUND shall have an escrow account, with the LEAD PAYING AGENT as the escrow agent.  Notwithstanding the investment criteria set forth in Section XXII.L above, in order to provide liquidity, the LEAD PAYING AGENT shall be permitted to deposit in a federally insured depository account with the GULF REGION BANK such amount as may be specified in the LEAD PAYMENT AGENT AGREEMENT.

O.     The CLAIMS ADMINISTRATOR and the trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST shall enter into a PAYING AGENT AGREEMENT, in form and substance reasonably satisfactory to BP and MEDICAL BENEFITS CLASS COUNSEL, and approved by the COURT, pursuant to which a federally insured depository institution, approved by BP and MEDICAL BENEFITS CLASS COUNSEL, will serve as escrow agent and LEAD PAYING AGENT for the GENERAL MEDICAL CLAIMS FUND. The LEAD PAYING AGENT shall enter into the CHECK CASHING ARRANGEMENT with the GULF REGION BANK that provides that checks drawn on the GENERAL MEDICAL CLAIMS FUND will be eligible to be cashed or deposited in branches of the GULF REGION BANK in a manner that will expedite the recipients' access to such funds.  Additionally, the LEAD PAYING AGENT may enter into an arrangement with a check-cashing facility agreed to by BP and MEDICAL BENEFITS CLASS COUNSEL and approved by the COURT. Consistent with the foregoing, the PAYING AGENT AGREEMENT and the CHECK CASHING ARRANGEMENT collectively shall provide for the following:

1)     The CLAIMS ADMINISTRATOR and/or the trustee shall be provided with checks that reflect the name of the GULF REGION BANK, the GULF REGION BANK'S Louisiana, Mississippi, Alabama, or Florida address, and are drawn on the GENERAL MEDICAL CLAIMS FUND maintained by the LEAD PAYING AGENT.

2)     The CLAIMS ADMINISTRATOR and/or the trustee may use such checks to pay SETTLEMENT COSTS payable out of the GENERAL MEDICAL CLAIMS FUND.  The CLAIMS ADMINISTRATOR shall provide to the LEAD PAYING AGENT (or its designee) a nightly, system-generated notification of all check issuances, through an electronic file.  This

notification report shall be used by the LEAD PAYING AGENT in connection with its operation of the encashment program described below.

        3)      The GULF REGION BANK will accept such checks for cashing without the requirement that the holder open or maintain an account at the GULF REGION BANK. The COURT-approved check-cashing facility will accept such checks for cashing.

        4)      The LEAD PAYING AGENT and the GULF REGION BANK (and, if applicable, the COURT-approved check-cashing facility) will maintain an encashment program, to be approved by BP and MEDICAL BENEFITS CLASS COUNSEL, which approval shall not be unreasonably withheld, designed to prevent fraud or other improper payments of checks drawn on the GENERAL MEDICAL CLAIMS FUND.

        5)      The PAYING AGENT AGREEMENT will also provide standard indemnification by the MEDICAL SETTLEMENT TRUST and BP of the LEAD PAYING AGENT (in its capacity as such and as escrow agent for the GENERAL MEDICAL CLAIMS FUND), with such indemnification excluding negligence and willful misconduct by the LEAD PAYING AGENT. The PAYING AGENT AGREEMENT shall be governed by New York law.

      P.      In the event the trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST and the CLAIMS ADMINISTRATOR are unable to enter into any of the arrangements specified in Section XXII.O or any of such arrangements thereafter terminate, BP and MEDICAL BENEFITS CLASS COUNSEL shall cooperate to develop and implement an alternative program, which must be approved by the COURT.

      Q.      In the event that the COURT does not approve the MEDICAL SETTLEMENT TRUST AGREEMENT, BP shall pay or cause to be paid all SETTLEMENT COSTS into an account established by the CLAIMS ADMINISTRATOR that is structured and operated in a

manner so that it qualifies as a "qualified settlement fund" under Section 468B(d)(2) of the Internal Revenue Code and Treasury Regulation §1.468B-1.  All other provisions of this Section XXII shall otherwise apply.

R.      Notwithstanding any provision of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029, or any subsequent legislation mandating or subsidizing health insurance coverage, BP shall pay or cause to be paid in full all SETTLEMENT COSTS, including all SETTLEMENT COSTS associated with the PERIODIC MEDICAL CONSULTATION PROGRAM and GULF COAST REGION HEALTH OUTREACH PROGRAM, and shall not bill any GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, or OTHER PAYER/PROVIDER for any such costs.

S.      Unless the COURT directs otherwise, a separate fund (intended to qualify as a "qualified settlement fund," under § 468B(d)(2) of the Internal Revenue Code and Treasury Regulation § 1.468B.1) will be established out of which common benefit attorneys' fees and costs to the MEDICAL BENEFITS CLASS COUNSEL and/or other common benefit attorneys who have submitted time and costs in compliance with Pretrial Order 9 will be paid pursuant to order of the COURT.  This separate qualified settlement fund will be established pursuant to order of the COURT, and will operate under COURT supervision and control.  This separate qualified settlement fund shall be separate from the qualified settlement fund described in Section XXII.C and any of the FUNDS described in Section XXII.D, and will not be administered by the CLAIMS ADMINISTRATOR.  This Section shall be determined in conjunction with the negotiation of attorneys' fees to be conducted and shall be set forth in Exhibit 19 and as approved by the COURT.  BP's discharge from liability regarding payment of

these attorneys' fees and costs into the fund described in this Section XXII.S shall be set forth in Exhibit 19 and as approved by the COURT.  The COURT shall determine the form and manner of administering of this fund, in which BP will also have no reversionary interest.

T.     Wherever in this MEDICAL SETTLEMENT AGREEMENT the CLAIMS ADMINISTRATOR is authorized or directed, as the context may reflect, to pay, disburse, reimburse, hold, waive, or satisfy any monetary obligation provided for or recognized under any of the terms of this MEDICAL SETTLEMENT AGREEMENT, the CLAIMS ADMINISTRATOR may comply with such authorization or direction by directing the trustee and/or the directed trustee to, as appropriate, pay, disburse, reimburse, hold, waive, or satisfy any such monetary obligation.

## XXIII.  **INDEMNIFICATION**

A.    Each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, on his or her own behalf, and on behalf of his or her estate, predecessors, successors, assigns, representatives, heirs, beneficiaries, executors, and administrators, in return for the benefits and consideration provided in this MEDICAL SETTLEMENT AGREEMENT, shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including the costs of defense and attorneys' fees of, the RELEASED PARTIES against any and all claims, including UNKNOWN CLAIMS, asserted and recovered by OTHER PARTIES arising from, relating to, or resulting from:

1)    Any undisclosed lien, claim, or right of subrogation, indemnity, reimbursement, conditional, or other payment or interest of any type asserted by any attorney, the Social Security Administration, the Internal Revenue Service, any GOVERNMENTAL PAYER, any MEDICARE PART C OR PART D PROGRAM sponsor, any OTHER PAYER/PROVIDER or any other person or entity arising from, relating to, or resulting from compensation or benefits received by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to this MEDICAL BENEFITS SETTLEMENT, provided that the amount of indemnification in this Section XXIII shall not exceed the total amount of compensation awarded for that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim; and/or

2)    The failure of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER timely and accurately to report or provide information that is necessary (i) for compliance with the MSP LAWS, or (ii) for the CLAIMS ADMINISTRATOR to identify and/or satisfy all GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAM sponsors, or OTHER PAYERS/PROVIDERS who may hold or assert a reimbursement right.

B.      Notwithstanding anything herein to the contrary, this MEDICAL SETTLEMENT AGREEMENT is not intended to and does not release any, GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, or OTHER PAYER/PROVIDER from its or their obligation to provide any health insurance coverage, major medical insurance coverage, or disability insurance coverage to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, or from any claims, demands, rights, or causes of action of any kind that a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER has or hereafter may have with respect to such individuals or entities.

## XXIV.  **DENIAL OF WRONGDOING**

A.     This MEDICAL SETTLEMENT AGREEMENT constitutes the resolution of
disputed claims and is for settlement purposes only.  BP expressly denies that it has violated any
duty, or breached any agreement or obligation to the MEDICAL BENEFITS CLASS
REPRESENTATIVES, the MEDICAL BENEFITS SETTLEMENT CLASS, or to any
MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and also denies that it has engaged
in any wrongdoing with respect to the MEDICAL BENEFITS CLASS REPRESENTATIVES,
the MEDICAL BENEFITS SETTLEMENT CLASS, or any MEDICAL BENEFITS
SETTLEMENT CLASS MEMBER.  Neither this MEDICAL SETTLEMENT AGREEMENT
nor any actions undertaken by BP in the negotiation, execution, or satisfaction of this MEDICAL
SETTLEMENT AGREEMENT shall constitute, or be construed as, an admission of any liability
or wrongdoing, or recognition of the validity of any claim made by the MEDICAL BENEFITS
CLASS REPRESENTATIVES, the MEDICAL BENEFITS SETTLEMENT CLASS, or any
MEDICAL BENEFITS SETTLEMENT CLASS MEMBER in this or any other action or
proceeding.

B.     This MEDICAL SETTLEMENT AGREEMENT, any statements or negotiations
made in connection with this MEDICAL SETTLEMENT AGREEMENT, and any actions
undertaken in this MEDICAL SETTLEMENT AGREEMENT, shall not be offered or be
admissible in evidence or used in any other fashion by the MEDICAL BENEFITS CLASS
REPRESENTATIVES, the MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL
BENEFITS CLASS COUNSEL, any MEDICAL BENEFITS SETTLEMENT CLASS
MEMBER, BP, or any of the RELEASED PARTIES in any lawsuit, action, hearing, or
proceeding for any purpose, except to enforce the terms of this MEDICAL SETTLEMENT
AGREEMENT by or against the MEDICAL BENEFITS CLASS REPRESENTATIVES, the

MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS COUNSEL, any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, BP, or any of the RELEASED PARTIES.

## XXV. REPRESENTATIONS AND WARRANTIES

A.     The MEDICAL BENEFITS CLASS COUNSEL represent and warrant as of the date hereof that they have authority to enter into this MEDICAL SETTLEMENT AGREEMENT on behalf of the MEDICAL BENEFITS CLASS REPRESENTATIVES.

B.     BP hereby represents and warrants as of the date hereof that (i) it has all requisite corporate power and authority to execute, deliver, and perform this MEDICAL SETTLEMENT AGREEMENT, (ii) the execution, delivery, and performance by such DEFENDANT of this MEDICAL SETTLEMENT AGREEMENT has been duly authorized by all necessary corporate action, (iii) this MEDICAL SETTLEMENT AGREEMENT has been duly and validly executed and delivered by BP, and (iv) this MEDICAL SETTLEMENT AGREEMENT constitutes its legal, valid, and binding obligation.

C.     The PARTIES and their counsel represent and warrant that they (i) have each performed an independent investigation of the allegations of fact and law made in connection with the *DEEPWATER HORIZON* INCIDENT; and (ii) may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of this MEDICAL SETTLEMENT AGREEMENT.  Nevertheless, the PARTIES intend to resolve their disputes pursuant to the terms of this MEDICAL SETTLEMENT AGREEMENT and thus, in furtherance of their intentions, this MEDICAL SETTLEMENT AGREEMENT shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this MEDICAL SETTLEMENT AGREEMENT shall not be subject to rescission or modification by reason of any change or difference in facts or law.

D.     MEDICAL BENEFITS CLASS REPRESENTATIVES acknowledge, agree, and specifically warrant and represent that they have discussed with MEDICAL BENEFITS CLASS COUNSEL (or their designees) the portions of this MEDICAL SETTLEMENT AGREEMENT

172

relevant to them, and the RELEASE contained in Section XVI, and received legal advice with respect to the advisability of entering into this MEDICAL SETTLEMENT AGREEMENT and the RELEASE, and the legal effect of this MEDICAL SETTLEMENT AGREEMENT and the RELEASE.

# XXVI.   **COOPERATION**

A.      The PARTIES shall cooperate, assist, and undertake all reasonable actions to accomplish the steps contemplated by this MEDICAL SETTLEMENT AGREEMENT and to implement the MEDICAL BENEFITS CLASS ACTION SETTLEMENT on the terms and conditions provided herein.

B.      Upon entry of a PRELIMINARY APPROVAL AND CERTIFICATION ORDER, the PARTIES shall proceed with all necessary steps to implement the MEDICAL BENEFITS CLASS ACTION SETTLEMENT on the terms and conditions of this MEDICAL SETTLEMENT AGREEMENT.

C.      The PARTIES agree to take all actions necessary to obtain final approval of the MEDICAL BENEFITS CLASS ACTION SETTLEMENT and entry of a FINAL ORDER AND JUDGMENT, including the terms and provisions described in this MEDICAL SETTLEMENT AGREEMENT, and, upon final approval and entry of such order, an order dismissing the MEDICAL CLASS ACTION COMPLAINT with prejudice as to the MEDICAL BENEFITS CLASS REPRESENTATIVES, the MEDICAL BENEFITS SETTLEMENT CLASS, and each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

D.      From and after the EFFECTIVE DATE, the PARTIES agree to cooperate fully and take all actions necessary to obtain the dismissal with prejudice of all claims in any lawsuits that have been or may be filed by or on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for RELEASED CLAIMS against RELEASED PARTIES.

E.      The PARTIES and their counsel agree to support the final approval and implementation of this MEDICAL SETTLEMENT AGREEMENT and defend it against objections, appeal, or collateral attack.   Neither the PARTIES nor their counsel, directly or indirectly, will encourage any person to object to the MEDICAL BENEFITS CLASS ACTION

SETTLEMENT.  Except as provided in Section VIII, nothing in this MEDICAL SETTLEMENT

AGREEMENT shall impair BP'S right to take any action to defend itself in any trial where BP is

a party.

# XXVII.    CONTINUING JURISDICTION

Pursuant to the FINAL ORDER AND JUDGMENT, the COURT shall retain continuing and exclusive jurisdiction over (i) the PARTIES and their counsel and all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS with respect to the terms of the MEDICAL SETTLEMENT AGREEMENT and (ii) the subject matter of *Plaisance, et al. v. BP Exploration & Production Inc., et al.*, with respect to the interpretation, implementation, administration, and enforcement of this MEDICAL SETTLEMENT AGREEMENT, including all issues related to the scope, application, and operation of the RELEASE in Section XVI, the distribution of benefits to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and any dispute arising as to the action or election of any PARTY under Section XIV.  Any disputes or controversies arising out of or related to the interpretation, implementation, administration, and enforcement of this MEDICAL SETTLEMENT AGREEMENT shall be made by motion to the COURT.  In addition, the PARTIES, including each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, are hereby deemed to have submitted to the exclusive jurisdiction of this COURT for any suit, action, proceeding, or dispute arising out of or relating to this MEDICAL SETTLEMENT AGREEMENT.  The terms of the MEDICAL SETTLEMENT AGREEMENT shall be incorporated into the FINAL ORDER AND JUDGMENT of the COURT, which shall allow that FINAL ORDER AND JUDGMENT to serve as an enforceable injunction by the COURT for purposes of the COURT'S continuing jurisdiction related to the MEDICAL SETTLEMENT AGREEMENT.

**XXVIII.      ROLE OF MEDICAL BENEFITS CLASS COUNSEL**

MEDICAL BENEFITS CLASS COUNSEL acknowledge that, under applicable law, their duty is to the entire MEDICAL BENEFITS SETTLEMENT CLASS, to act in the best interest of the MEDICAL BENEFITS SETTLEMENT CLASS as a whole, with respect to promoting, supporting, and effectuating, as fair, adequate, and reasonable, the approval, implementation, and administration of the settlement embodied in the MEDICAL SETTLEMENT AGREEMENT, and that their professional responsibilities as attorneys are to be viewed in this light, under the ongoing supervision and jurisdiction of the COURT that appoints them to represent the interests of the MEDICAL BENEFITS SETTLEMENT CLASS.

# XXIX.    RESOLUTION OF LIENS AND SUBROGATION INTERESTS

A.    The CLAIMS ADMINISTRATOR shall perform lien identification and resolution functions in connection with any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type held or asserted by GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAM sponsors, OTHER PAYER/PROVIDERS, and other persons or entities in connection with compensation or benefits claimed or received by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to this MEDICAL SETTLEMENT AGREEMENT.  Among other things, the CLAIMS ADMINISTRATOR shall:

1)    Undertake to obtain an agreement in writing with CMS prior to the EFFECTIVE DATE that:

a)    Establishes repayment amounts or lien cap amounts per SPECIFIED PHYSICAL CONDITION and/or an aggregated repayment amount or lien cap amount for all or certain SPECIFIED PHYSICAL CONDITIONS, for MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who are or were beneficiaries of the MEDICARE PROGRAM, or, alternatively, otherwise sets forth a conditional payment resolution process. Such amounts or process(es) shall be acknowledged by CMS to be payment in full and full and final satisfaction of all of the MEDICARE PROGRAM'S interests with respect to recovery of any conditional payments and payments with regard to medical items, services, and/or prescription drugs furnished to any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER in connection with RELEASED CLAIMS.  With regard to the lien cap amount, if applicable, CMS must recognize in writing its agreement that the final repayment amount, once determined by the CLAIMS ADMINISTRATOR and CMS, shall under no circumstance exceed the lien cap amount;

178

b) establishes reporting processes recognized by CMS as satisfying the reporting obligations, if any, of all RELEASED PARTIES and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS under the MSP LAWS; and

c) confirms that nothing in this MEDICAL BENEFITS SETTLEMENT creates ongoing responsibility by any RELEASED PARTY, MEDICAL BENEFITS CLASS COUNSEL, or the CLAIMS ADMINISTRATOR for providing medical items, services, and/or prescription drugs to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS or other persons under the MSP LAWS;

2) Fulfill all reporting obligations to CMS that are agreed upon with CMS;

3) Identify any amount owed to any GOVERNMENT PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, and/or any OTHER PAYER/PROVIDER by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for medical items, services, and/or prescription drugs paid on behalf of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER prior to any payment of compensation to such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to this MEDICAL SETTLEMENT AGREEMENT;

4) Negotiate a resolution of such amounts owed on terms as favorable as possible to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER prior to any payment of compensation to such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to this MEDICAL SETTLEMENT AGREEMENT; and

5) Satisfy such amounts owed to such GOVERNMENT PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, and/or any OTHER PAYER/PROVIDER for medical items, services, and/or prescription drugs paid on behalf of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER out of any compensation to be

awarded to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to this MEDICAL SETTLEMENT AGREEMENT.

B. If the CLAIMS ADMINISTRATOR fails to obtain the agreement in writing with CMS pursuant to Section XXIX.A.1 to BP'S satisfaction, BP shall have the option to terminate this MEDICAL SETTLEMENT AGREEMENT. Upon exercise by BP of such option, this MEDICAL SETTLEMENT AGREEMENT shall become null and void, and shall have no further effect with respect to any party, and BP shall notify the MEDICAL BENEFITS SETTLEMENT CLASS on the same scale and in the same manner as the original MEDICAL BENEFITS SETTLEMENT CLASS NOTICE.

C. The PARTIES further understand and agree that the CLAIMS ADMINISTRATOR'S performance of functions described in this Section is not intended to modify the legal and financial rights and obligations of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, including the duty to pay and/or arrange for reimbursement of each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S past, current, or future bills or costs, if any, for medical items, services, and/and prescription drugs, and to satisfy and discharge any and all statutory recovery obligations, any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type for payment or reimbursement associated with any medical items, services, and/or prescription drugs furnished to that MEDICAL BENEFITS CLASS MEMBER, that are or may be asserted by GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAM sponsors, or OTHER PAYERS/PROVIDERS. Notwithstanding the foregoing, a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall for purposes of this MEDICAL BENEFITS SETTLEMENT be deemed to have discharged his or her responsibility with respect to a lien,

claim, or right of subrogation, indemnity, reimbursement, conditional or other payment, or interest of any type for payment or reimbursement associated with any medical items, services, and/or prescription drugs furnished to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that has been or may be held or asserted by a GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, or OTHER PAYERS/PROVIDER where written satisfaction and discharge of such lien, claim, or right of subrogation, indemnity, reimbursement, conditional or other payment, or interest of any type has been obtained by the CLAIMS ADMINISTRATOR.

D.     Nothing in this Section is intended to alter BP'S obligation to provide compensation for SPECIFIED PHYSICAL CONDITIONS, to provide PERIODIC MEDICAL CONSULTATION PROGRAM visits to qualifying MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, or to prohibit any qualifying MEDICAL SETTLEMENT CLASS MEMBER from seeking to recover or recovering medical costs in connection with a BACK END LITIGATION OPTION LAWSUIT.

E.     In order to receive benefits or compensation under this MEDICAL SETTLEMENT AGREEMENT, each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who has been found by the CLAIMS ADMINISTRATOR to qualify for benefits or compensation for a RELEASED CLAIM pursuant to this MEDICAL BENEFITS SETTLEMENT shall authorize the CLAIMS ADMINISTRATOR to satisfy any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type of any GOVERNMENTAL PAYER for payment or reimbursement associated with any medical items, services, and/or prescription drugs furnished to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER out of any compensation to be awarded to a MEDICAL

181

BENEFITS SETTLEMENT CLASS MEMBER pursuant to the terms of this MEDICAL SETTLEMENT AGREEMENT, and, subject to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S right to object to the fact and/or amount, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall authorize the CLAIMS ADMINISTRATOR to negotiate and satisfy any disclosed or identified liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type of any MEDICARE PART C OR PART D PROGRAM sponsor or OTHER PAYER/PROVIDER for payment or reimbursement associated with any medical items, services, and/or prescription drugs furnished to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER out of any compensation to be awarded to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

F.      The CLAIMS ADMINISTRATOR shall first identify, and then satisfy, any and all liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type for payment or reimbursement by a GOVERNMENTAL PAYER and/or its contractors for medical items, services, and/or prescription drugs paid on behalf of any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for GOVERNMENTAL PAYER benefits out of any compensation to be awarded to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to the terms of this MEDICAL SETTLEMENT AGREEMENT, before the CLAIMS ADMINISTRATOR is authorized to make any payment to such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

G.      The CLAIMS ADMINISTRATOR shall identify, and subject to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S right to object to the fact and/or amount, then negotiate and satisfy, any and all liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type for payment or

reimbursement for medical items, services, and/or prescription drugs paid on behalf of any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER by a MEDICARE PART C OR PART D PROGRAM sponsor and/or OTHER PAYER/PROVIDER out of any compensation to be awarded to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to the terms of this MEDICAL SETTLEMENT AGREEMENT, before the CLAIMS ADMINISTRATOR is authorized to make any payment to such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

H.    Notwithstanding any other provision of this MEDICAL SETTLEMENT AGREEMENT relating to timely payment, the CLAIMS ADMINISTRATOR shall not disburse any compensation to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who is or was entitled to benefits under a GOVERNMENTAL PAYER program, MEDICARE PART C OR PART D PROGRAM or OTHER PAYER/PROVIDER plan prior to the CLAIMS ADMINISTRATOR'S determination of the final amount needed to satisfy the reimbursement obligation that any GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, and/or OTHER PAYER/PROVIDER states is due and owing (as reflected in a final demand letter or other formal written communication).

I.    Upon determining such amounts, (1) the CLAIMS ADMINISTRATOR may disburse any compensation owed to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER exceeding that amount determined pursuant to Section XXIX.H above; (2) upon the CLAIMS ADMINISTRATOR obtaining a written negotiated lien cap or receipt of a written satisfaction and discharge of a lien, claim, or right of subrogation, indemnity, reimbursement, conditional or other payment, or interest of any type of any GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, and/or OTHER PAYER/PROVIDER,

the CLAIMS ADMINISTRATOR may disburse any compensation owed to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, but only to the extent such amount does not exceed the maximum amounts needed to satisfy any remaining reimbursement obligations that any GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, and/or OTHER PAYER/PROVIDER states is due and owing (as reflected in a final demand letter or other formal written communication); and (3) upon the CLAIMS ADMINISTRATOR'S receipt of a written satisfaction and discharge of all liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type of any GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, and/or OTHER PAYER/PROVIDER, the CLAIMS ADMINISTRATOR shall disburse any amounts still due and owing to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

J.      MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who are or were entitled to benefits under MEDICARE PART C OR PART D PROGRAMS or OTHER PAYERS/PROVIDERS may be required by statute or otherwise, when making a claim for and/or receiving compensation pursuant to this MEDICAL SETTLEMENT AGREEMENT, and/or filing a BACK-END LITIGATION OPTION LAWSUIT, to notify the relevant MEDICARE PART C OR PART D PROGRAM sponsor or OTHER PAYER/PROVIDER, of the existence of, and that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S participation in, this MEDICAL SETTLEMENT AGREEMENT.  It is the sole responsibility of each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to determine whether he or she has such a notice obligation, and timely to perform any such notice reporting.

K.      Each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER applying for compensation for a SPECIFIED PHYSICAL CONDITION and/or participation in the

PERIODIC MEDICAL CONSULTATION PROGRAM pursuant to this MEDICAL SETTLEMENT AGREEMENT shall cooperate with the CLAIMS ADMINISTRATOR and shall comply with the procedures and requirements set forth in this MEDICAL SETTLEMENT AGREEMENT, including by providing the requested information and authorizations to the CLAIMS ADMINISTRATOR in the timeframe specified for so doing, as a prerequisite to any payment of compensation or other provision of benefits to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.  Each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall authorize the CLAIMS ADMINISTRATOR to transmit all information received from any GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, or OTHER PAYER/PROVIDER pursuant to such authorizations (i) to BP solely for purposes of verifying compliance with the MSP LAWS or other similar reporting obligations and for verifying satisfaction and full discharge of liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type pursuant to the terms of this MEDICAL SETTLEMENT AGREEMENT; or (ii) as otherwise directed by a court of competent jurisdiction.  Prior to transmitting any such information received from any GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, and/or OTHER PAYER/PROVIDER, BP shall affirm and acknowledge that it shall not use such information for any purpose other than provided in this paragraph.

L. If a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER discloses in his or her PROOF OF CLAIM FORM (and where applicable NOTICE OF INTENT TO SUE) all liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type associated with any medical items, services, and/or prescription drugs furnished to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that are held or

asserted by GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAM sponsors, or OTHER PAYERS/PROVIDERS and that are known to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and cooperates with the CLAIMS ADMINISTRATOR as required in paragraph K of this Section, and despite the foregoing, the CLAIMS ADMINISTRATOR disburses compensation to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER without first obtaining, consistent with the terms of this Section, written satisfaction and discharge of the liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payment, or interest of any type disclosed by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or identifiable from the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S PROOF OF CLAIM FORM and related documentation, the CLAIMS ADMINISTRATOR shall indemnify the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, BP, and/or MEDICAL BENEFITS CLASS COUNSEL in the event that a claim is asserted against the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, BP, and/or MEDICAL BENEFITS CLASS COUNSEL to recover on any disclosed or identifiable lien, claim, or right of subrogation, indemnity, reimbursement, conditional or other payment, or interest of any type that is unsatisfied, undischarged or otherwise improperly paid.

M.     Any reporting performed by the CLAIMS ADMINISTRATOR for the purpose of resolving reimbursement obligations, if any, related to compensation provided to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS pursuant to this MEDICAL SETTLEMENT AGREEMENT does not constitute an admission by RELEASED PARTIES of liability or evidence of liability for any claims arising out of, relating to, or resulting from the *DEEPWATER HORIZON* INCIDENT.

N.      If any employer, attorney, insurer and/or any other entity claims any rights such as liens, assignments, rights of subrogation, encumbrances, garnishments, security interests, or any other legally perfected right, other than those addressed in Sections XXIX.A and F-H above, with respect to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S compensation, the CLAIMS ADMINISTRATOR shall hold such compensation in an escrow account, pending a determination by the CLAIMS ADMINISTRATOR of the rights to such compensation.

O.      Notwithstanding anything in the foregoing, BP shall not assert any claim against or recover from any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER amounts for medical items, services, and/or prescription drugs provided in the medic stations funded by BP and made available to CLEAN-UP WORKERS or otherwise provided by BP in the RESPONSE ACTIVITIES; provided, however, that any such amounts are not recoverable by any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER as an ACTUAL HOSPITAL EXPENSE.

## XXX. MISCELLANEOUS PROVISIONS

A.      This MEDICAL SETTLEMENT AGREEMENT and its exhibits, attachments, and appendices shall constitute the entire agreement and understanding among the PARTIES and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this MEDICAL SETTLEMENT AGREEMENT.

B.      The PARTIES acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of this MEDICAL SETTLEMENT AGREEMENT has been made or relied on except as expressly set forth in this MEDICAL SETTLEMENT AGREEMENT.

C.      This MEDICAL SETTLEMENT AGREEMENT shall not be subject to any change, modification, amendment, or addition without the express written consent of MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL, on behalf of all PARTIES to this MEDICAL SETTLEMENT AGREEMENT.

D.      With the exception of Exhibits 8, 9, and 12, any inconsistency between this MEDICAL SETTLEMENT AGREEMENT and any attachments, exhibits, or appendices hereto shall be resolved in favor of this MEDICAL SETTLEMENT AGREEMENT.  Any inconsistency between the headings used in this MEDICAL SETTLEMENT AGREEMENT, and the text of the Sections and paragraphs of this MEDICAL SETTLEMENT AGREEMENT, shall be resolved in favor of the text.

E.      The PARTIES agree and acknowledge that no consideration, amount, or sum paid, credited, offered, or extended, or to be paid, credited, offered, or extended, by BP in the performance of this MEDICAL SETTLEMENT AGREEMENT constitutes a penalty, fine, or any other form of assessment for any alleged claim or offense.

F.     The PARTIES specifically understand that there may be further pleadings, discovery responses, documents, testimony, or other matters or materials owed by the PARTIES to each other, pursuant to existing pleading requirements, discovery requests, pretrial rules, procedures, orders, decisions, or otherwise.  As of the date of this MEDICAL SETTLEMENT AGREEMENT, each PARTY expressly waives any right to receive, inspect, or hear such pleadings, discovery, testimony, or other matters or materials during the pendency of the settlement proceedings contemplated by this MEDICAL SETTLEMENT AGREEMENT and subject to further order of the COURT.

G.     The PARTIES have negotiated all of the terms and conditions of this MEDICAL SETTLEMENT AGREEMENT at arms' length.    Neither the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS nor BP, nor any one of them, nor any of their counsel shall be considered to be the sole drafter of this MEDICAL SETTLEMENT AGREEMENT or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this MEDICAL SETTLEMENT AGREEMENT.  This MEDICAL SETTLEMENT AGREEMENT shall be deemed to have been mutually prepared by the PARTIES and shall not be construed against any of them by reason of authorship.

H.     This MEDICAL SETTLEMENT AGREEMENT shall be binding upon and shall inure to the benefit of the PARTIES hereto and their representatives, heirs, successors, and assigns.  Nothing expressed or implied in this MEDICAL SETTLEMENT AGREEMENT is intended to or shall be construed to confer upon or give any person or entity other than MEDICAL BENEFITS CLASS REPRESENTATIVES, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, or where applicable, their AUTHORIZED

189

REPRESENTATIVES, MEDICAL BENEFITS CLASS COUNSEL, the BP ENTITIES, and BP'S COUNSEL any right or remedy under or by reason of this MEDICAL SETTLEMENT AGREEMENT.  No provision in this MEDICAL SETTLEMENT AGREEMENT is intended to create any third-party beneficiary to this MEDICAL SETTLEMENT AGREEMENT.

I.      MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL may agree, subject to approval of the COURT where required, to reasonable extensions of time to carry out the provisions of this MEDICAL SETTLEMENT AGREEMENT.

J.      This MEDICAL SETTLEMENT AGREEMENT may be executed in counterparts, and a facsimile signature shall be deemed an original signature for purposes of this MEDICAL SETTLEMENT AGREEMENT.

K.      Before filing any motion or petition in the COURT raising a dispute arising out of or related to this MEDICAL SETTLEMENT AGREEMENT, MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL shall consult with each other and certify to the COURT that they have consulted.

L.      All notices required by this MEDICAL SETTLEMENT AGREEMENT shall be sent by overnight delivery and electronic mail.  Written notice to the MEDICAL BENEFITS CLASS REPRESENTATIVES or MEDICAL BENEFITS CLASS COUNSEL must be given to: James Parkerson Roy, Attn: Deepwater Horizon Medical Settlement, Domengeaux Wright Roy & Edwards, 556 Jefferson St., Suite 500, P.O. Box 3668, Lafayette, LA 70501 and Stephen J. Herman, Attn:  Deepwater Horizon Medical Settlement, Herman Herman Katz & Cotlar LLP, 820 O'Keefe Avenue, New Orleans, LA 70113.  Written notice to BP must be given to:  Richard C. Godfrey, P.C., Attn:  Deepwater Horizon Medical Settlement, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL  60654.

M.      The waiver by any PARTY of any breach of this MEDICAL SETTLEMENT AGREEMENT by another PARTY shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this MEDICAL SETTLEMENT AGREEMENT.

N.      No opinion regarding the tax consequences of this MEDICAL SETTLEMENT AGREEMENT to any individual MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is being given or will be given by BP, BP'S COUNSEL, MEDICAL BENEFITS CLASS REPRESENTATIVES, INTERIM CLASS COUNSEL, or MEDICAL BENEFITS CLASS COUNSEL, nor is any representation or warranty in this regard made by virtue of this MEDICAL SETTLEMENT AGREEMENT.  MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS must consult their own tax advisors regarding the tax consequences of the MEDICAL SETTLEMENT AGREEMENT, including any payments provided hereunder and any tax reporting obligations they may have with respect thereto.  Each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S tax obligations, and the determination thereof, are his or her sole responsibility, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.  BP and MEDICAL BENEFITS CLASS COUNSEL shall have no liability or responsibility whatsoever for any such tax consequences resulting from payments under this MEDICAL SETTLEMENT AGREEMENT.  To the extent required by law, the CLAIMS ADMINISTRATOR will report payments made under the MEDICAL SETTLEMENT AGREEMENT to the appropriate authorities.

O.      The use of environmental data (e.g., data from the Deepwater Horizon Unified Command Shoreline Cleanup Assessment Teams, and the Natural Resource Damage

Assessment) as part of this MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT shall not constitute an admission or judicial determination related to the admissibility or interpretation of such data for any other purpose, and, further, the use of such data shall have no effect on, and shall be without prejudice to, the use, admissibility, and interpretation of such data for any other purpose, including any claims for natural resource damages.  The fact that the CLAIMS ADMINISTRATOR or the COURT accepts or relies upon such environmental data for any evidence relating to any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S CLAIM shall not constitute a finding or determination that can be used for any other purpose, including but not limited to, any proceedings related to claims for natural resource damages; further the PARTIES agree that the use, submission, interpretation, or acceptance (including non-objection) of such evidence shall not constitute an admission or determination that such evidence is relevant or admissible for any purpose other than as provided in this MEDICAL SETTLEMENT AGREEMENT.

P.      Notwithstanding the law applicable to the underlying claims, which the PARTIES dispute, this MEDICAL SETTLEMENT AGREEMENT and the RELEASE hereunder shall be interpreted in accordance with General Maritime Law.

Signature Page for the Medical Benefits Class Action
Settlement Agreement Executed on April 18, 2012

Executed this 18th day of April, 2012.

BP EXPLORATION & PRODUCTION INC.

By: _____

Name:  James J. Neath
Title:  Associate General Counsel

By: _____

Name:  Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
Counsel for BP Exploration & Production Inc.

BP AMERICAN PRODUCTION COMPANY

By: _____

Name:  James J. Neath
Title:  Associate General Counsel

By: _____

Name:  Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
Counsel for BP America Production Company

INTERIM CLASS COUNSEL

By: _____

Name:  James Parkerson Roy

By: _____

Name:  Stephen J. Herman

190

Signature Pages for the First Amendment to the
Medical Benefits Class Action Settlement Agreement
Executed on May 1, 2012

BP EXPLORATION & PRODUCTION INC.

By: _____
Name: James J. Neath
Title: Associate General Counsel

By: _____

Name: Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
Counsel for BP Exploration & Production Inc.

BP AMERICA PRODUCTION COMPANY

By: _____
Name: James J. Neath
Title: Associate General Counsel

By: _____

Name: Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
Counsel for BP America Production Company

BP EXPLORATION & PRODUCTION INC.

By: _____
Name:  James J. Neath
Title:  Associate General Counsel

By: _____
Name:  Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
Counsel for BP Exploration & Production Inc.

BP AMERICA PRODUCTION COMPANY

By: _____
Name:  James J. Neath
Title:  Associate General Counsel

By: _____
Name:  Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
Counsel for BP America Production Company

PLAINTIFFS' INTERIM CLASS COUNSEL

By: _____

Name:  James Parkerson Roy          5-1-12

By: _____

Name:  Stephen J. Herman