# EXHIBIT G

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
 2

 3     ***************************************************************

 4     IN RE:  OIL SPILL BY THE
       OIL RIG DEEPWATER HORIZON
 5     IN THE GULF OF MEXICO ON
       APRIL 20, 2010
 6
                              CIVIL ACTION NO. 10-MD-2179 "J"
 7                            NEW ORLEANS, LOUISIANA
                              THURSDAY, NOVEMBER 8, 2012, 8:30 A.M.
 8
       THIS DOCUMENT RELATES TO:
 9
       CIVIL ACTION #12-968,
10     PLAISANCE, ET AL V. BP
       EXPLORATION & PRODUCTION,
11     INC., ET AL

12     CIVIL ACTION #12-970,
       BON SECOUR FISHERIES,
13     INC., ET AL V. BP
       EXPLORATION & PRODUCTION,
14     INC., ET AL

15     ***************************************************************

16          TRANSCRIPT OF FINAL FAIRNESS HEARING PROCEEDINGS
17          HEARD BEFORE THE HONORABLE CARL J. BARBIER
                    UNITED STATES DISTRICT JUDGE
18

19     APPEARANCES:

20
       FOR THE PLAINTIFFS'
21     LIAISON COUNSEL:        DOMENGEAUX WRIGHT ROY & EDWARDS
                               BY:  JAMES P. ROY, ESQUIRE
22                             556 JEFFERSON STREET
                               LAFAYETTE, LA  70502
23

24                             HERMAN HERMAN & KATZ
                               BY:  STEPHEN J. HERMAN, ESQUIRE
25                             820 O'KEEFE AVENUE
                               NEW ORLEANS, LA  70113
```

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 3 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/15/12 Page 2 of 326

2

1  APPEARANCES CONTINUED:

2

3  FOR THE PLAINTIFFS:   LIEFF CABRASER HEIMANN & BERNSTEIN
                         BY:  ELIZABETH J. CABRASER, ESQUIRE
4                        275 BATTERY STREET, 29TH FLOOR
                         SAN FRANCISCO, CA  94111
5

6
                         WEITZ & LUXENBERG
7                        BY:  ROBIN L. GREENWALD, ESQUIRE
                         700 BROADWAY
8                        NEW YORK CITY, NY  10003

9

10
   FOR BP AMERICA INC.,
11 BP AMERICA PRODUCTION
   COMPANY, BP COMPANY
12 NORTH AMERICA INC.,
   BP CORPORATION NORTH
13 AMERICA INC.,
   BP EXPLORATION &
14 PRODUCTION INC.,
   BP HOLDINGS NORTH
15 AMERICA LIMITED,
   BP PRODUCTS NORTH
16 AMERICA INC.:         LISKOW & LEWIS
                         BY:  DON K. HAYCRAFT, ESQUIRE
17                       ONE SHELL SQUARE
                         701 POYDRAS STREET
18                       SUITE 5000
                         NEW ORLEANS, LA 70139
19

20                       KIRKLAND & ELLIS
                         BY:  RICHARD C. GODFREY, ESQUIRE
21                            J. ANDREW LANGAN, ESQUIRE
                         300 N. LASALLE
22                       CHICAGO, IL 60654

23
                         KIRKLAND & ELLIS
24                       BY:  ROBERT R. GASAWAY, ESQUIRE
                         655 FIFTEENTH STREET, N.W.
25                       WASHINGTON, DC  20005

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 4 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/15/12 Page 3 of 328

3

```
 1  APPEARANCES CONTINUED:

 2

 3  SETTLEMENT OBJECTORS'
    REPRESENTATIVE
 4  COUNSEL:              STUART SMITH, ESQUIRE
                          MARTHA CURTIS, ESQUIRE
 5                        RONNIE PENTON, ESQUIRE
                          JOEL WALTZER, ESQUIRE
 6                        JOSEPH DARRELL PALMER, ESQUIRE
                          ROBERT MCKEE, ESQUIRE
 7                        JASON MELANCON, ESQUIRE
                          WILLIAM ROBERTS, ESQUIRE
 8

 9

10  COURT-APPOINTED CLAIMS
    ADMINISTRATOR:        PATRICK A. JUNEAU
11                        MICHAEL JUNEAU

12

13

14  OFFICIAL COURT REPORTER:  CATHY PEPPER, CRR, RMR, CCR
                              CERTIFIED REALTIME REPORTER
15                            REGISTERED MERIT REPORTER
                              500 POYDRAS STREET, ROOM HB406
16                            NEW ORLEANS, LA  70130
                              (504) 589-7779
17                            Cathy_Pepper@laed.uscourts.gov

18  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
19  PRODUCED BY COMPUTER

20

21

22

23

24

25
```

02:15PM (line 10)
02:15PM (line 11)

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 5 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/15/12 Page 4 of 328

4

1                          **I N D E X**

2

                                                   <u>PAGE</u>

3

4  THE COURT..........................................
                                                        7

5  #12-970, *BON SECOUR VERSUS BP*, WHICH IS THE ECONOMIC

6  AND PROPERTY DAMAGE PROPOSED SETTLEMENT..............  7

7  CIVIL ACTION #12-968, *PLAISANCE VERSUS BP*, AND THAT

8  BEING THE MEDICAL BENEFITS CLASS SETTLEMENT..........  7

9  PRELIMINARY COMMENTS.................................  9

10  LEGAL STANDARD......................................  15

11  ARGUMENT FROM COUNSEL...............................  18

12  MR. ROY.............................................  20

13  MR. HERMAN..........................................  31

14  MR. GODFREY.........................................  49

15  MR. ROBERTS.........................................  76

16  CLAIMS ADMINISTRATOR JUNEAU.........................  80

17  MR. MICHAEL JUNEAU..................................  87

18  MR. PATRICK JUNEAU..................................  93

19  OBJECTORS........................................... 101

20  MR. SMITH........................................... 101

21  DIFFERENT BUSINESSES IN DESTIN AND IN THE KEYS AND

22  ALONG THE FLORIDA COAST............................. 101

23  COASTAL AND WETLANDS PROPERTY ZONES................. 119

24  MS. CURTIS.......................................... 119

25  MR. PENTON.......................................... 130

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 6 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/15/12 Page 6 of 328

5

 1    MR. WALTZER.......................................... 133

 2    FAIRNESS AND ADEQUACY OF THE SEAFOOD COMPENSATION

 3    PROGRAM.............................................. 133

 4    MR. PALMER........................................... 149

 5    MR. PALMER........................................... 149

 6    JAMES KIRBY, MIKE AND PATRICIA STURDIVANT, AND

 7    SUSAN FORSYTH, ALL PROPERTY OWNERS IN WESTERN

 8    FLORIDA.............................................. 149

 9    MR. ROY.............................................. 156

10    MR. HERMAN........................................... 160

11    MR. GODFREY.......................................... 168

12    THE COURT............................................ 178

13    LUNCHEON RECESS...................................... 179

14    PROPOSED MEDICAL SETTLEMENT.  THIS IS CIVIL ACTION

15    #12-968, *PLAISANCE, ET AL. VERSUS BP, ET AL*.......... 180

16    MS. GREENWALD........................................ 180

17    FAIRNESS ISSUES...................................... 180

18    MS. CABRASER......................................... 196

19    MOVE FOR CONFIRMATION OF THE SETTLEMENT CLASS

20    CERTIFICATION OF THE MEDICAL CLASS................... 197

21    MR. GODFREY.......................................... 208

22    OBJECTORS............................................ 222

23    MR. PALMER........................................... 223

24    ON BEHALF OF JAMES KIRBY, IV, MIKE AND

25    PATRICIA STURDIVANT, AND SUSAN FORSYTH............... 223

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 7 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/15/12 Page 6 of 328

6

 1   MR. MCKEE'S OBJECTION RELATES TO SPECIFIED PHYSICAL

 2   CONDITIONS MATRIX, WHICH YOU BELIEVE PROVIDES

 3   INADEQUATE COMPENSATION............................. 229

 4   MR. MCKEE........................................... 229

 5   MR. MELANCON........................................ 239

 6   HISPANIC CLEANUP WORKERS............................ 242

 7   MS. GREENWALD....................................... 251

 8   MS. CABRASER........................................ 261

 9   MR. GODFREY......................................... 263

10   THE COURT........................................... 266

11

12

13                      E X H I B I T S

14

15   DESCRIPTION                                        PAGE

16

17   EXHIBIT CLAIMS ADMINISTRATOR 1...................... 100

18

19

20

21

22

23

24

25

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 8 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/15/12 Page 7 of 326

7

Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/15/12 Page 7 of 326

|          |    |                                                                        |
|----------|----|------------------------------------------------------------------------|
|          | 1  | **P-R-O-C-E-E-D-I-N-G-S**                                              |
|          | 2  | THURSDAY, NOVEMBER 8, 2012                                             |
|          | 3  | M O R N I N G   S E S S I O N                                          |
|          | 4  | (COURT CALLED TO ORDER)                                                |
|          | 5  |                                                                        |
| 08:30AM  | 6  |                                                                        |
| 08:30AM  | 7  | THE DEPUTY CLERK:  All rise.                                           |
| 08:30AM  | 8  | THE COURT:  All right.  Good morning, everyone.  Please               |
| 08:30AM  | 9  | be seated.                                                             |
| 08:30AM  | 10 | Stephanie, you may call the case, please.                             |
| 08:30AM  | 11 | THE DEPUTY CLERK:  MDL 10-2179, *In re:  Oil Spill by*                |
| 08:31AM  | 12 | *the Oil Rig Deepwater Horizon in the Gulf of Mexico on*              |
| 08:31AM  | 13 | *April 20, 2010*, Civil Action #12-968; *Plaisance, et al. versus*    |
| 08:31AM  | 14 | *BP Exploration and Production Incorporated, et al.*,                 |
| 08:31AM  | 15 | Civil Action #12-970; *Bon Secour Fisheries Incorporated, et al.*     |
| 08:31AM  | 16 | *versus BP Exploration and Production Incorporated, et al.*           |
| 08:31AM  | 17 | THE COURT:  All right.  We're here, obviously, to                     |
| 08:31AM  | 18 | consider the two proposed class settlements:  One in #12-970,         |
| 08:31AM  | 19 | *Bon Secour versus BP*, which is the economic and property damage     |
| 08:31AM  | 20 | proposed settlement; the second being Civil Action #12-968,           |
| 08:31AM  | 21 | *Plaisance versus BP*, and that being the medical benefits class      |
| 08:31AM  | 22 | settlement.                                                            |
| 08:32AM  | 23 | What I plan to do this morning is to take --                          |
| 08:32AM  | 24 | obviously, I think we need to take these separately.  There are       |
| 08:32AM  | 25 | two separate class settlement proposals.  I plan to take the          |

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 9 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/15/12 Page 8 of 328

8

08:32AM 1    economic settlement first.

08:32AM 2              After some review of the number of speakers and

08:32AM 3    the time that's been allotted, it seems to me that we can

08:32AM 4    safely say that the economic settlement motion and fairness

08:32AM 5    hearing will probably take the morning.

08:32AM 6              So I'll just announce now, if there is anyone who

08:32AM 7    is here only with respect to the medical settlement, if you

08:32AM 8    would like to leave and come back later, you're welcome to do

08:32AM 9    that.  If you want to stay, you're welcome to do that; but, I

08:32AM 10   can assure you, we will not begin the medical settlement

08:33AM 11   discussion until probably right after lunch.  So I would say

08:33AM 12   it's safe to come back at 1 o'clock.

08:33AM 13             I do plan to take a brief recess midmorning, and

08:33AM 14   then we'll take a lunch recess.

08:33AM 15             So what I'm hoping to do is complete the economic

08:33AM 16   settlement discussion in the morning, then recess for lunch at

08:33AM 17   whatever time that is, and then come back and finish up with

08:33AM 18   the medical settlement.

08:33AM 19             I'm going to remind everyone, if you haven't

08:33AM 20   already done so, please check your cell phones and turn those

08:33AM 21   off.  If you need to talk, please step out into the hallway to

08:33AM 22   do so.

08:33AM 23             We also do have two overflow courtrooms.  If

08:33AM 24   people cannot get in here, there is Judge Berrigan's courtroom,

08:33AM 25   which is right down the hall on this same floor; and, then

Case 2:10-md-02179-CJB-DPC Document 23380-8 Filed 02/02/18 Page 10 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/14/12 Page 9 of 328

9

08:33AM 1   there is my courtroom, which is on the second floor, is another

08:33AM 2   overflow room.

08:33AM 3          All right.  Let me make a few preliminary

08:34AM 4   comments before we begin.  Of course, as everyone knows, these

08:34AM 5   settlements relate to and arise out of the casualty involving

08:34AM 6   the *Deepwater Horizon* which occurred on April 20, 2010,

08:34AM 7   approximately 50 miles offshore in the Gulf of Mexico, off the

08:34AM 8   coast of Louisiana, resulting in personal injury, death to

08:34AM 9   several crew members, a number of personal injuries for people

08:34AM 10  who were working on the rig that evening, and then the

08:34AM 11  capsizing of the rig, which led to the oil spill which went on

08:34AM 12  for, I think, approximately 87 days, when the well was capped.

08:35AM 13         As a result of that casualty and the consequences

08:35AM 14  thereof, there were numerous lawsuits filed, some individual

08:35AM 15  claims, some styled as putative class actions.

08:35AM 16         In addition, there was a limitation of liability

08:35AM 17  action filed by the vessel owner, Transocean.  That limitation

08:35AM 18  action was transferred directly to this Court for convenience

08:35AM 19  of the parties and witnesses and evidence; so, therefore, that

08:35AM 20  matter is pending directly in this Court.

08:35AM 21         In addition, obviously, in August of 2010, the

08:35AM 22  Judicial Panel on Multidistrict Litigation created MDL 2179,

08:35AM 23  which essentially includes all claims arising out of the

08:35AM 24  *Deepwater Horizon* casualty, with the exception of certain

08:36AM 25  shareholder, ERISA and those types of claims which are part of

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 11 of 329
Case 2:10-md-02179-CJB-JCW Document 3892-8 Filed 11/04/11 Page 10 of 328

10

08:36AM 1    a separate MDL pending before Judge Ellison in Houston.

08:36AM 2              After the MDL was created, it was assigned to

08:36AM 3    this Court on August 10, 2010, and the Court began to

08:36AM 4    proactively manage and set in place a Case Management Order.

08:36AM 5              This is not a case, which sometimes happens,

08:36AM 6    where the parties to a settlement come to a court which is

08:37AM 7    unfamiliar with the case and present a package deal, so to

08:37AM 8    speak, a settlement proposal, and ask the Court to sign off on

08:37AM 9    it without any prior litigation or formal discovery.

08:37AM 10             In this case, as everyone is aware, there have

08:37AM 11   been massive amounts of discovery and litigation, there have

08:37AM 12   been numerous legal issues that the Court has had to rule on,

08:37AM 13   including jurisdictional, choice of law issues and so forth.

08:37AM 14             The parties have also conducted in excess of

08:37AM 15   300 depositions with respect to only Phase One.  In addition,

08:37AM 16   they have produced millions of documents, pages of documents,

08:37AM 17   together with numerous expert reports and so forth.

08:37AM 18             In addition, and in relation to these

08:37AM 19   settlements, the parties have had the benefit of the

08:38AM 20   information and data, claims data collected and filed over a

08:38AM 21   period of time with the previously existing Gulf Coast Claims

08:38AM 22   Facility.  All of that information, of course, has been

08:38AM 23   available to the parties and to the Court.

08:38AM 24             The commencement of the Phase One trial was

08:38AM 25   originally scheduled for February 27, 2012.  Literally, on the

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 02/02/18 Page 12 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 11 of 328

11

08:38AM 1    eve of that trial, on February 26th, the Court was advised by

08:38AM 2    Judge Shushan, actually, who was then helping to mediate

08:38AM 3    settlement discussions, that the parties had made tremendous

08:38AM 4    progress, and they were very close to reaching an agreement in

08:38AM 5    principle on what eventually became these two settlements.

08:39AM 6            So, at the request of the parties and

08:39AM 7    Judge Shushan, I continued that trial for one week to give them

08:39AM 8    an additional few days to finalize those agreements in

08:39AM 9    principle, which they did on March 2, 2012.

08:39AM 10           Judge Shushan advised the Court at that time that

08:39AM 11   the parties had reached an agreement in principle on the

08:39AM 12   proposed settlements.

08:39AM 13           Again, at the request of the parties and

08:39AM 14   Judge Shushan, I adjourned Phase One of the trial until we

08:39AM 15   could see exactly what the effect or impact of these proposed

08:39AM 16   settlements would be on the parties to the trial and the trial

08:39AM 17   plan.

08:39AM 18           On March 8, 2012, the Court issued an order

08:39AM 19   creating the so-called *transition process*, which facilitated

08:39AM 20   the seamless transition from the GCCF to the court-supervised

08:40AM 21   settlement program, and ultimately appointed Mr. Juneau,

08:40AM 22   Pat Juneau, to be the claims administrator.

08:40AM 23           On April 16th, the PSC filed the two present

08:40AM 24   class action complaints, #12-968 and #12-970, to serve as

08:40AM 25   vehicles for the proposed settlements.  The settlements

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 13 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 13 of 328

12

08:40AM 1   themselves, the proposed settlements, were filed with the Court

08:40AM 2   on April 18, 2012.

08:40AM 3          The Court conducted a hearing on preliminary

08:40AM 4   approval of the settlements on April 25, 2012, following which

08:40AM 5   on May 2, 2012, the Court issued its Preliminary Approval

08:40AM 6   Order, preliminarily certifying the settlement classes and

08:40AM 7   preliminarily approving these two settlements.

08:40AM 8          Those preliminary approval orders did a number of

08:41AM 9   things.  First of all, they set this fairness hearing today,

08:41AM 10   November 8, 2012, final fairness hearing.

08:41AM 11          They also set in place procedures for notice to

08:41AM 12   the class members for the filing of objections and for

08:41AM 13   protocols for someone to able to opt out of the settlements, if

08:41AM 14   they chose to do so.

08:41AM 15          On June 6, 2012, Mr. Juneau's court-supervised

08:41AM 16   settlement program actually commenced operation.  Of course,

08:41AM 17   I've asked him to be here today and give a report on what's

08:41AM 18   occurred since he began operation.

08:41AM 19          The Preliminary Approval Order also set deadlines

08:42AM 20   for not only the filing of objections, but the filing of briefs

08:42AM 21   and any additional documentation, exhibits, affidavits,

08:42AM 22   supporting evidence, either in support of or in opposition to

08:42AM 23   these two settlements.

08:42AM 24          The deadline for objections was originally set

08:42AM 25   for August 31, 2012, but was extended, again, at the request of

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 14 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/14/12 Page 13 of 328

13

08:42AM 1   the parties, due to Hurricane Isaac, and extended to

08:42AM 2   September 7, 2012.

08:42AM 3        The deadline for opting out of the settlements

08:42AM 4   was originally set for October 1, 2012, but, again, was

08:42AM 5   extended at the request of the parties to November 1, just one

08:42AM 6   week ago, in order to allow additional time for persons to

08:42AM 7   consider whether it was in their best interest to stay in or

08:42AM 8   opt out, and also to get more data from the settlement program

08:43AM 9   and how it was operating.

08:43AM 10        So here we are today.  The economic settlement

08:43AM 11   class, to be a class member of the economic settlement two

08:43AM 12   criteria must be satisfied.

08:43AM 13        First, there is a geographic criteria.  You must

08:43AM 14   reside or be employed in Louisiana, Mississippi, Alabama,

08:43AM 15   certain coastal counties in eastern Texas and certain coastal

08:43AM 16   counties in western Florida and the specified adjacent Gulf

08:43AM 17   waters, and the claims must meet the description of one or more

08:43AM 18   of the six categories of damage:  An economic loss of

08:43AM 19   individuals or businesses; property damage, including coastal

08:43AM 20   real property damage and wetlands real property damage; Vessels

08:43AM 21   of Opportunity charter payments; vessel physical damage claims;

08:44AM 22   Seafood Compensation Program; and, lastly, the subsistence use

08:44AM 23   claims.

08:44AM 24        By stipulation in the settlement agreement

08:44AM 25   reached between the Plaintiffs' Steering Committee and BP,

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 15 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 14 of 328

14

08:44AM 1    certain entities or persons are expressly excluded from the

08:44AM 2    settlement, including -- I'm not necessarily going to name them

08:44AM 3    all, but financial institutions; financial trusts; casinos;

08:44AM 4    gambling establishments; oil and gas industries; defense

08:44AM 5    subcontractors; dealers of BP fuel, certain claims;

08:44AM 6    governmental organizations.

08:44AM 7            Of course, the Court, its employees, BP

08:44AM 8    employees, and other defendants in the MDL are also excluded

08:44AM 9    from the settlement.

08:44AM 10           I think this is important because I think there

08:44AM 11   is a lot of misunderstanding out there, I know by the public,

08:45AM 12   and perhaps even by some lawyers, that a person who is excluded

08:45AM 13   from the settlement is simply excluded from the settlement.

08:45AM 14   Your rights are not affected one way or another.

08:45AM 15           If you're excluded, you don't get any benefit.

08:45AM 16   You can't benefit from the settlement, but you don't lose any

08:45AM 17   rights by virtue of being excluded from the settlements.

08:45AM 18           So, for example, a person who previously executed

08:45AM 19   a GCCF release is excluded, expressly excluded.  Whether those

08:45AM 20   persons can contest those releases in later litigation,

08:45AM 21   separate litigation, is another matter that's not before the

08:45AM 22   Court here today.

08:45AM 23           Any person who elects to opt out of the

08:45AM 24   settlements is excluded from the settlements.  If you opt out,

08:45AM 25   you're excluded.

08:45AM 1         If you opt out or if you are excluded, you

08:46AM 2  legally have no standing to object to the settlements because,

08:46AM 3  again, the settlements do not affect your rights in any way,

08:46AM 4  one way or the other.

08:46AM 5         Let me briefly review the legal standard that I

08:46AM 6  have to consider here today.  Class certification issues are

08:46AM 7  governed by Rule 23 of the Federal Rules of Civil Procedure.

08:46AM 8         Rule 23(a) requires, first of all, that the class

08:46AM 9  is so numerous that joinder of all members is impracticable.

08:46AM 10         Secondly, that there are questions of law or fact

08:46AM 11  common to the class.

08:46AM 12         Third, that the claims or defenses of the

08:46AM 13  representative parties are typical of the claims or defenses of

08:46AM 14  the class.

08:46AM 15         Fourth, that the representative parties will

08:46AM 16  fairly and adequately protect the interests of the class.

08:46AM 17         In addition to Rule 23(a) requirements,

08:47AM 18  23(b) requires that a class action may be maintained if

08:47AM 19  Rule 23(a) is satisfied and if the Court finds that questions

08:47AM 20  of law or fact common to class members predominate over any

08:47AM 21  questions affecting only individual members, and that a class

08:47AM 22  action is superior to other available methods for fairly and

08:47AM 23  efficiently adjudicating the controversy.

08:47AM 24         Some of the matters that are pertinent to these

08:47AM 25  findings include:  A, the class members' interests in

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 17 of 329
Case 2:10-md-02179-CJB-JCW Document 3892-8 Filed 11/15/12 Page 16 of 328

16

08:47AM 1    individually controlling the prosecution or defense of separate

08:47AM 2    actions; B, the extent and nature of any litigation concerning

08:47AM 3    the controversy already begun by or against class members; C,

08:47AM 4    the desirability or undesirability of concentrating the

08:47AM 5    litigation of claims in a particular forum; and, D, the likely

08:47AM 6    difficulties in managing a class action.

08:47AM 7         Actually, since this class, if it's certified by

08:48AM 8    the Court, would be certified for settlement purposes, that

08:48AM 9    last factor, how the Court would manage the class action, is

08:48AM 10   not really pertinent or at issue since there would be no trial

08:48AM 11   of the class members' claims.

08:48AM 12        So, together, subsections (a) and (b) of Rule 23

08:48AM 13   ensure that a proposed class has sufficient unity so that

08:48AM 14   absent class members can be fairly bound by decisions of the

08:48AM 15   class representatives.

08:48AM 16        With respect to the issue of whether there are

08:48AM 17   questions of law or fact common to the class, of course, there

08:48AM 18   have been a number of recent cases involving that very issue.

08:48AM 19   The last one from the U.S. Supreme Court, being the

08:48AM 20   *Walmart versus Dukes* case from 2011, which said that

08:49AM 21   commonality requires that the plaintiffs' claim must depend on

08:49AM 22   a common contention; that common contention, moreover, must be

08:49AM 23   of such a nature that it is capable of class-wide resolution,

08:49AM 24   which means the determination of its truth or falsity will

08:49AM 25   resolve an issue that is central to the validity of each one of

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 18 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 17 of 329

17

08:49AM 1   the claims in one stroke.

08:49AM 2          So the focus in the class settlement context

08:49AM 3   should be on the conduct or misconduct of the defendant and the

08:49AM 4   injuries suffered as a consequence.

08:49AM 5          Rule 23 also contains what the courts have

08:49AM 6   described is an *implied requirement* that the class be

08:49AM 7   adequately defined and clearly ascertainable.  So the class

08:50AM 8   needs to be defined and ascertainable by means of a clearly

08:50AM 9   objective standard or criteria.

08:50AM 10         Finally, with respect to the legal standards the

08:50AM 11   Court is to apply, there is guidance from the Fifth Circuit,

08:50AM 12   again, in the case of *Reed versus General Motors*, 703 F.2nd at

08:50AM 13   170, 172, where the Court explained that under Rule 23(e), a

08:50AM 14   court may approve a class settlement only after a hearing and

08:50AM 15   on finding that it is fair, reasonable, and adequate.  That is

08:50AM 16   the standard, whether the proposed settlement is fair,

08:50AM 17   reasonable and adequate.

08:51AM 18         It is not my job to attempt to rewrite the

08:51AM 19   settlement for the parties or renegotiate it here today.  My

08:51AM 20   job is just to decide on the basis of what's been presented to

08:51AM 21   the Court whether it's fair, reasonable and adequate for the

08:51AM 22   class members.

08:51AM 23         The Fifth Circuit has identified six relevant

08:51AM 24   factors to this inquiry:  One, the existence of fraud or

08:51AM 25   collusion behind the settlement; two, the complexity, expense

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 19 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 18 of 328

18

08:51AM 1   and likely duration of the litigation; third, the stage of

08:51AM 2   proceedings and the amount of discovery completed; fourth, the

08:51AM 3   probability of plaintiffs' success on the merits; fifth, the

08:51AM 4   range of possible recovery; and, sixth, the opinions of class

08:51AM 5   counsel, class representatives and absent class members.

08:51AM 6         So, with that being said, we'll take argument

08:52AM 7   from counsel.  Again, I will point out that I have noted that

08:52AM 8   with respect to objections and opt-outs -- again, Mr. Juneau

08:52AM 9   will give us some additional information; I'm sure counsel will

08:52AM 10   comment on this -- but, in the Court's perusal of a number of

08:52AM 11   the objections and opt-outs, my first observation is that a

08:52AM 12   number of the objections and opt-outs were filed by persons who

08:52AM 13   are not members of the class to begin with.

08:52AM 14         There are some objections filed by nonsettling

08:52AM 15   parties, who do not have standing to object because their legal

08:52AM 16   rights are not affected.

08:52AM 17         There are some nonsettling parties -- I'll state

08:52AM 18   this just so everyone will be clear.  In particular, I'm making

08:52AM 19   reference now to the United States and the State of Alabama,

08:52AM 20   who filed briefs disputing some of the factual allegations made

08:53AM 21   by BP in support of the settlements -- there have been some

08:53AM 22   attorneys and some media who have characterized these filings

08:53AM 23   as objections to these settlements; however, these parties

08:53AM 24   explicitly stated they do not object to the settlements.

08:53AM 25         Alabama states:  "The State of Alabama is not a

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 20 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 19 of 328

19

08:53AM 1    party to the proposed economic and property damages settlement

08:53AM 2    or the medical benefits settlement.  We, therefore, do not

08:53AM 3    comment upon the fairness or object to their final approval."

08:53AM 4          Likewise, the United States states:  "The

08:53AM 5    United States wishes to state clearly that it does not take a

08:53AM 6    position as to merits of the ultimate relief sought by BP,

08:53AM 7    approval of the settlement."

08:53AM 8          So I think there has been a lot of

08:53AM 9    misunderstanding and misrepresentation and misreporting about

08:53AM 10   that, and I wanted to clarify that for the record.

08:53AM 11         Okay.  We're here on BP's motion to approve the

08:54AM 12   settlement, so who plans to go first?

08:54AM 13         MR. ROY:  I do, Your Honor.

08:54AM 14         THE COURT:  Mr. Roy.

08:54AM 15         MR. ROY:  Jim Roy, co-lead class counsel.  Good

08:54AM 16   morning, Your Honor.

08:54AM 17         THE COURT:  Let me say one more thing, too.  I'm sorry,

08:54AM 18   I forgot to say this.

08:54AM 19         I want to remind everyone again -- and I'm saying

08:54AM 20   this mostly for the benefit of not only everyone who is here,

08:54AM 21   but the people who are not here but may be listening or may get

08:54AM 22   reports of this hearing -- I want to remind everyone that the

08:54AM 23   Court has already had the benefit of voluminous, voluminous

08:54AM 24   legal briefs, memoranda, affidavits, declarations of various

08:54AM 25   experts, and other evidence which has been submitted by the

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 21 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 20 of 328

20

08:55AM 1    parties and which has been reviewed and considered by the Court

08:55AM 2    and will be considered by Court, of course.

08:55AM 3         The Court has also had the opportunity to read

08:55AM 4    and consider all of the written objections that have been filed

08:55AM 5    and, again, any briefs, memoranda, affidavits, or evidence that

08:55AM 6    have been submitted in connection with the objections.

08:55AM 7         In order to proceed efficiently here today, the

08:55AM 8    Court decided that it would have to and it would limit not only

08:55AM 9    the number of speakers but the time that people could speak

08:55AM 10   beyond the written objections or filings that have been made.

08:55AM 11        But I want to assure everyone that the mere fact

08:55AM 12   that you may not be able to speak here in court on your

08:55AM 13   individual objection does not mean that the Court has not or

08:56AM 14   will not consider your objection that's been previously filed

08:56AM 15   with the Court.

08:56AM 16        In addition, of course, the Court will obviously

08:56AM 17   consider anything that's said here today.

08:56AM 18        Okay, Mr. Roy.

08:56AM 19        MR. ROY:  Thank you, Your Honor.  Good morning.  Good

08:56AM 20   morning, Judge Shushan.

08:56AM 21        Let me begin by saying I'm going to give an

08:56AM 22   overview from plaintiff class counsel perspective.  Mr. Herman

08:56AM 23   will follow, anticipating some of the objections and some of

08:56AM 24   the more detailed observations that perhaps the Court is

08:56AM 25   looking for.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 22 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 22 of 328

21

08:56AM 1          This settlement should amicably resolve

08:56AM 2    considerably well in excess of a hundred thousand economic

08:56AM 3    claims arising out of what is clearly the world's largest oil

08:56AM 4    spill disaster.

08:56AM 5          The settlement before you today, Judge, creates a

08:56AM 6    court-supervised settlement program to process and pay claims.

08:57AM 7    It gives those businesses and individuals who suffered economic

08:57AM 8    damages a way to quickly get a fair and objectively determined

08:57AM 9    settlement and to avoid litigating for potentially 20 or more

08:57AM 10   years, like what happened in the *Exxon Valdez* oil spill

08:57AM 11   litigation.

08:57AM 12         This settlement provides the class with an

08:57AM 13   opportunity to try to put this behind them and get on with

08:57AM 14   their lives.

08:57AM 15         The settlement is different from and, we believe,

08:57AM 16   better than the old GCCF in a number of ways that are

08:57AM 17   important, we believe, to point out.

08:57AM 18         This settlement program's causation and

08:57AM 19   compensation formulas are uniform, are transparently

08:57AM 20   observable, and are objective as compared to the GCCF

08:58AM 21   adjusters' often subjective and often unevenly applied GCCF

08:58AM 22   claims evaluation criteria, assuming any criteria at all.

08:58AM 23         This settlement program is subject to your direct

08:58AM 24   supervision and review.  If there is a problem, whether it is

08:58AM 25   an appeal from a determination by Mr. Juneau's operation, it

08:58AM 1    ultimately, ultimately goes through the appeal panelist and

08:58AM 2    then comes to you on a discretionary review in the exact same

08:58AM 3    fashion a United States Magistrate's report and recommendation

08:58AM 4    would come to you.

08:58AM 5         So you and the court system of the United States

08:58AM 6    of America are in direct supervision of every aspect of this.

08:58AM 7         Additionally, if there are disputes, if you will,

08:58AM 8    in the mechanisms of the implementation of this settlement that

08:59AM 9    BP and class counsel cannot resolve amicably, Mr. Juneau is

08:59AM 10   empowered, as the administrator, to go directly to the Court

08:59AM 11   and for the Court to settle these issues of policy; another

08:59AM 12   clear, very good example of judicial supervision and

08:59AM 13   accountability that the GCCF lacked.

08:59AM 14        The settlement program mandates a

08:59AM 15   claimant-friendly process.  This is not a bunch of insurance

08:59AM 16   adjusters trying to save money for BP.  This program, if you

08:59AM 17   approve it for finality, this program is bound, and BP agreed

08:59AM 18   to this, to be claimant friendly; not just sent a letter in the

08:59AM 19   mail saying, you screwed up, you didn't give us X, Y or Z, but

09:00AM 20   to affirmatively seek the information and give multiple chances

09:00AM 21   to claimants to come forward with what needs to be brought

09:00AM 22   forward to document a claim.

09:00AM 23        Not only that, but the settlement program is

09:00AM 24   mandated to maximize claimant recovery.  Once again, not like

09:00AM 25   an insurance adjuster operation.  It is mandated to give as

09:00AM  1    much money in the most advantageous application of the

09:00AM  2    settlement program's formula as is possible.

09:00AM  3                As the court-appointed administrator, that's

09:00AM  4    Mr. Juneau's task, to make sure that his vendors do exactly

09:00AM  5    that.

09:00AM  6                This settlement program ensures that people and

09:00AM  7    businesses can present and file their claims through at least

09:00AM  8    April of 2014, at least.  That's a full year past the

09:01AM  9    three-year statute of limitation under OPA and General Maritime

09:01AM 10    Law, and it's a full six months past when the GCCF itself was

09:01AM 11    scheduled to close down.

09:01AM 12                This settlement program compensates types of

09:01AM 13    damages that the GCCF did not and that are not even recognized

09:01AM 14    by OPA.  This settlement program, in most instances, class

09:01AM 15    counsel believes, pays more than comparable claims were paid on

09:01AM 16    average before the GCCF.

09:01AM 17                Finally, unlike other Rule 23(b)(3) classes, this

09:01AM 18    settlement program pays money now, before final approval

09:01AM 19    through the Court of Appeal.  In fact, as Mr. Juneau will

09:01AM 20    hopefully report today, by the end of this week his operation

09:01AM 21    will have already authorized or made favorable determinations

09:02AM 22    for approximately one billion dollars in settlements.

09:02AM 23                This is absolutely unheard of, as this Court

09:02AM 24    wells knows, for that amount of money, much less any money, to

09:02AM 25    be paid out prior to approval; but, that's the deal that was

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 25 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 24 of 328

24

09:02AM 1    negotiated.

09:02AM 2            We believe, in fact, that this settlement is so

09:02AM 3    good, Your Honor, that it's worth pointing out that one of the

09:02AM 4    parties without standing, Halliburton, actually said in their

09:02AM 5    brief that BP's paying too much money in this settlement.

09:02AM 6            Many of the objectors, the primary basis of their

09:02AM 7    objection is not to try to blow up the settlement, Your Honor;

09:02AM 8    the primary basis of many, many of these objections is they

09:03AM 9    want to be in the settlement, and they are not.

09:03AM 10           Now, how did this settlement program come to

09:03AM 11   pass?  Because, certainly, as part of that, the PSC that you

09:03AM 12   appointed had an obligation to assess the hazards of litigation

09:03AM 13   and to assess, generally speaking, the values of the case, the

09:03AM 14   causation issues of the case, and the relative roles of the

09:03AM 15   players; typical in some respects, and yet a highly untypical

09:03AM 16   exercise in case analysis.

09:03AM 17           So how did it start?  Well, it started, as a

09:03AM 18   practical matter, two years ago in this very courtroom when you

09:03AM 19   convened your PSC together that you had just appointed and

09:04AM 20   mandated to them what you expected of them.

09:04AM 21           Effectively, many of these Plaintiffs' Steering

09:04AM 22   Committee members gave up their law practices in the

09:04AM 23   traditional sense of the word, moved to New Orleans, and lived,

09:04AM 24   breathed and worked this case for the last two years virtually

09:04AM 25   full time.

09:04AM 1       PSC discovery teams took over 300 depositions in

09:04AM 2 New Orleans, London and elsewhere. As you point out, millions

09:04AM 3 of pages of documents were produced and reviewed; terabytes,

09:04AM 4 tens of terabytes of information, in fact.

09:04AM 5       Science and environmental work groups collected,

09:04AM 6 reviewed and developed evidence and information about damages,

09:04AM 7 hired experts, got expert reports done.

09:04AM 8       The Phase One trial team prepared the Phase One

09:04AM 9 trial to go last February, and is now ready to start that case

09:04AM 10 again this February, while the Phase Two team worked on

09:05AM 11 Phase Two discovery and trial prep for that trial, which is

09:05AM 12 anticipated to begin next summer.

09:05AM 13       All of this while the negotiating team, for over

09:05AM 14 six months, led by Joe Rice and Calvin Fayard, worked virtually

09:05AM 15 daily all across this continent and England to negotiate this

09:05AM 16 settlement with BP's counsel and principles, a very hard fought

09:05AM 17 negotiation. Nothing was easy. It was a settlement that was

09:05AM 18 built from the ground up, one module at a time.

09:05AM 19       All along the way, both the PSC and BP consulted

09:05AM 20 several of the nation's leading experts in ethics and in class

09:06AM 21 action complex litigation practice and procedure.

09:06AM 22       Every step of the way, both the PSC and BP wanted

09:06AM 23 to get it right; so right that during the last month or so of

09:06AM 24 negotiation, two of these experts, one ethics and one

09:06AM 25 nationally renown practice and procedure expert in class

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 27 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 26 of 328

26

09:06AM 1    action, actually were there on virtually a daily basis during

09:06AM 2    the negotiations and, when not there daily, were available

09:06AM 3    daily for consultation by telephone.

09:06AM 4                So, going back two years, October of 2010, when

09:06AM 5    we first met in this courtroom, effectively hundreds of lawyers

09:06AM 6    working through the PSC, working for the common benefit of the

09:07AM 7    classes, effectively started a law firm here in New Orleans

09:07AM 8    that's sole goal from the ground up was to either try or settle

09:07AM 9    this case or, on an individualized, piecemeal basis, do both.

09:07AM 10               We're here today seeking final approval of the

09:07AM 11   results of those labors of the last two years, and especially

09:07AM 12   the last year.

09:07AM 13               Now, class members who did not opt out are given

09:07AM 14   a way here to relatively quickly monetize their claims through

09:07AM 15   settlement, avoiding the risk, cost and long years of

09:07AM 16   litigation.

09:07AM 17               We could wait, we could wait for ten years or

09:07AM 18   more, or try these cases for the next 30 years and try to argue

09:08AM 19   about and ultimately quantify all of the damages that actually

09:08AM 20   occurred, having the benefit of looking back ten years or

09:08AM 21   20 years, but that's not the way the legal system works.  You

09:08AM 22   don't have cases that just hang around like that unless there

09:08AM 23   is no alternative.

09:08AM 24               In this case, because of the hundreds of

09:08AM 25   thousands of hours of effort put in on both sides of this case,

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 28 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 27 of 328

27

09:08AM 1   this case was evaluated very quickly, relatively speaking, and

09:08AM 2   the settlement before you, we believe, measures the risks and

09:08AM 3   the hazards of litigation.

09:08AM 4           Potential future damages, even potential punitive

09:09AM 5   damages, where applicable, are effectively compensated in this

09:09AM 6   program through risk transfer premiums, RTP's, which are a

09:09AM 7   multiple of the base amount of the award under the objective

09:09AM 8   formulas.

09:09AM 9           Additionally, Your Honor, nothing, nothing in

09:09AM 10  this settlement impairs the government, under applicable laws,

09:09AM 11  from compelling future cleanup or remediation by BP.  There

09:09AM 12  have been reports to the contrary, and that's simply not true.

09:09AM 13          There is no cap on the amount BP will have to pay

09:09AM 14  under this settlement.  While BP has apparently publicly

09:09AM 15  reported that it views the value of the economic settlement at

09:09AM 16  around $7.8 billion, the truth of the matter, Your Honor, is

09:09AM 17  that if it ends up paying 20, 25, 30 billion, BP has agreed to

09:10AM 18  do that.

09:10AM 19          There is no cap, except for the seafood program.

09:10AM 20  Let's talk about that.  Mr. Herman and Mr. Godfrey will talk in

09:10AM 21  more detail about the seafood program in a little bit.

09:10AM 22          The seafood program, we believe, should be viewed

09:10AM 23  as a guaranteed $2.3 billion payout to participating class

09:10AM 24  members in the seafood program.

09:10AM 25          Suffice it to say, those funds will be paid to

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 29 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 28 of 328

28

09:10AM 1    participating class members no matter what.  In fact, if people

09:10AM 2    opt out, at least up to a certain percentage, there are fewer

09:10AM 3    people then that are going to still collect the $2.3 billion,

09:10AM 4    every penny of it; and, under a very aggressive, very quick

09:11AM 5    time frame will that money be put out by Mr. Juneau's

09:11AM 6    operation.

09:11AM 7              Now, anyone who didn't want to participate in the

09:11AM 8    seafood program because they didn't think it was fair, they

09:11AM 9    thought the RTP should have been more, or this or that or the

09:11AM 10   other thing, had an option, Your Honor.  Their option was to

09:11AM 11   have opted out by November 1st of this year, which was their

09:11AM 12   right under this settlement.

09:11AM 13             This seafood fund is not like the limited fund in

09:11AM 14   *Artiz*, because in *Artiz* it was truly limited with no right to

09:11AM 15   opt out.

09:11AM 16             That's a huge difference because if a shrimper or

09:11AM 17   an oysterman or whoever it may be does not believe he's getting

09:12AM 18   a fairly shake in this seafood fund or that it's somehow just

09:12AM 19   fundamentally wrong, then he and his lawyer can do it the old

09:12AM 20   fashioned way, Your Honor, hire experts, wait in line, get a

09:12AM 21   trial date, have the burden of proof and try their case and

09:12AM 22   hope to do better, which they may or may not do against what

09:12AM 23   will undoubtedly be a very aggressive, well-funded, well-driven

09:12AM 24   defense to each of these cases by BP.

09:12AM 25             This settlement program is an alternative to gain

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 30 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 29 of 328

29

09:12AM 1    closure now.

09:12AM 2            Now, the seafood program frameworks generally

09:12AM 3    provide RTP's of five on the low end and nine on the high end.

09:12AM 4    I didn't develop those.  Calvin, Joe, Steve, they didn't

09:13AM 5    develop these.  Mr. Godfrey, Mr. Langan, they didn't develop

09:13AM 6    these.

09:13AM 7            Your court-appointed neutral, John Perry,

09:13AM 8    appointed by Court Order, met with us, met with us

09:13AM 9    individually, met with us as a group, reached out to the

09:13AM 10   seafood industry, brought in diverse groups of oystermen,

09:13AM 11   shrimpers, fisherman and so forth, until they were satisfied,

09:13AM 12   your court-appointed neutral, that is, was satisfied that he

09:13AM 13   had received as much information as could reasonably be

09:13AM 14   assimilated from as many diverse sources as possible, and he

09:13AM 15   wrote the seafood program, and he issued it.  We, class counsel

09:13AM 16   and BP, agreed to make it an exhibit to this settlement.

09:14AM 17           So that's where it came from, and that's how it

09:14AM 18   got to you.  It is not an arbitrary document.  It is a very

09:14AM 19   well considered and reasoned document.

09:14AM 20           Is it perfect?  You know, I doubt it.  Is this

09:14AM 21   settlement perfect?  I doubt it.  But I submit to you,

09:14AM 22   Your Honor, the standard by which you should judge and must

09:14AM 23   judge is not perfection; it's the legal standards that you

09:14AM 24   enunciated some of a few moments ago.

09:14AM 25           Now, finally, the settlement provides benefits to

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 31 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 30 of 328

30

09:14AM 1   the entire class that could not have been achieved on a

09:14AM 2   piecemeal basis; either by individual litigation, group

09:14AM 3   litigation or settlements, could not have been done.

09:14AM 4        For example, the $57 million tourism and seafood

09:15AM 5   promotional fund, I read in the paper, and I suspect Mr. Juneau

09:15AM 6   will report to the Court today, that, I think, $30 million have

09:15AM 7   actually been authorized by his program out of this $57 million

09:15AM 8   tourism and seafood fund to promote tourism and seafood along

09:15AM 9   the Gulf of Mexico, along the coast of Louisiana, Mississippi,

09:15AM 10  Alabama, and Florida.

09:15AM 11        Something like that, number one, we don't believe

09:15AM 12  is mandated by OPA, we sure don't believe it's mandated by

09:15AM 13  General Maritime Law, and don't see how such would have been

09:15AM 14  the result of trying a case and getting an order from the Court

09:15AM 15  to set up such a fund.

09:15AM 16        That fund will benefit the Gulf Coast state

09:16AM 17  governments, it will benefit the Gulf Coast local governments,

09:16AM 18  and it will benefit the Gulf Coast individuals and businesses;

09:16AM 19  greater activity, more sales taxes paid, more revenue, and so

09:16AM 20  forth and so on.

09:16AM 21        Your Honor, I believe that this settlement is

09:16AM 22  unique among all settlements.  It's not just large; and, while

09:16AM 23  superficially it appears complex, at its core it's an operation

09:16AM 24  that is fair and comprehensive, and urge your approval.

09:16AM 25        Mr. Herman.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 32 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 31 of 328

31

09:16AM 1          THE COURT:  All right.  Thank you.

09:16AM 2              Mr. Herman.

09:16AM 3      MR. HERMAN:  Good morning, Your Honor.  Steve Herman

09:17AM 4  for the class.

09:17AM 5          I'm going to address some of the specific

09:17AM 6  questions that have been raised about the settlement, but first

09:17AM 7  would like to make a few general observations.

09:17AM 8          Regarding the Rule 23 issues, we have submitted

09:17AM 9  comprehensive declarations and reports from some of the leading

09:17AM 10 experts in the country, Professor Klonoff, Professor Coffee,

09:17AM 11 Professor Issacharoff, Professor Miller.  They address these

09:17AM 12 class issues a lot better than I can, but I would just like to

09:17AM 13 make, briefly, two points.

09:17AM 14         Your Honor mentioned the *Walmart* standard for

09:17AM 15 commonality.  The question of whether BP is a responsible party

09:17AM 16 under OPA has an answer that is the same for every single class

09:17AM 17 member.  The answer is that it's true, they are the responsible

09:17AM 18 party, and that's true for every single class member.

09:17AM 19         The question of whether BP waived -- they don't

09:17AM 20 like the word *waived*, but whatever word you want to use --

09:17AM 21 conceded the cap under OPA, that question has an answer that is

09:18AM 22 true, it's the same and it's true for each and every member of

09:18AM 23 the class.

09:18AM 24         There are numerous other common factual issues,

09:18AM 25 common legal issues and common bodies of evidence that we've

09:18AM 1   noted in our papers; but, commonality under the *Walmart*

09:18AM 2   standard and under the Fifth Circuit *Perry* decision, is

09:18AM 3   established on those two points alone.

09:18AM 4           Because both of those points are central and

09:18AM 5   critical to every class member's claim, they predominate,

09:18AM 6   especially when you add the other common factors, but those two

09:18AM 7   common factors alone predominate over any individual issues.

09:18AM 8           The second point I would like to make briefly is

09:18AM 9   that this class does not have any of the features that have

09:18AM 10  caused courts to reject (b)(3) classes in the past.  There are

09:18AM 11  no individual choice of law issues; there is are comparative

09:18AM 12  fault issues; there are no statute of limitation issues; there

09:18AM 13  are no Seventh Amendment re-examination clause issues; there

09:18AM 14  are no future claimants or future claims; there are no learned

09:19AM 15  intermediary type defenses or individual reliance issues or

09:19AM 16  multiple source exposure issues.

09:19AM 17          Some people might ask, are these claims too

09:19AM 18  disparate.  The critical thing for Rule 23 purposes is that

09:19AM 19  they are not disparate in any of the material ways that would

09:19AM 20  prevent them from being certified as a class.

09:19AM 21          I'm going to address some of the specific issues

09:19AM 22  that have been raised; but, if I could, just looking at these

09:19AM 23  objections as a whole, it seems to me that there is two

09:19AM 24  overarching fallacies.

09:19AM 25          The first fallacy is there seems to be an

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 34 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 33 of 328

33

09:19AM 1    implication that there is only one way to do it.  Mr. Roy

09:19AM 2    alluded to this.

09:19AM 3                First of all, that would be impossible to

09:19AM 4    determine.  Every class member, every lawyer, probably every

09:19AM 5    judge, would have a different perspective about the best way or

09:19AM 6    the fairest way or the right way or the perfect way to do it.

09:20AM 7    Therefore, that's not the standard.

09:20AM 8                Just because someone could come here and point to

09:20AM 9    a different way that it could have been done or that they argue

09:20AM 10   should have been done doesn't mean that the way it was done is

09:20AM 11   unreasonable.

09:20AM 12               There are probably numerous different ways that

09:20AM 13   this settlement could have been constructed, and they all would

09:20AM 14   have been fair, reasonable and adequate.

09:20AM 15               If the settlement looked the way the objectors

09:20AM 16   say it's supposed to look, people would be here complaining

09:20AM 17   that it should have looked like something else.

09:20AM 18               A perfect example of that is the drawing of the

09:20AM 19   zones.  There are complaints that the zones are not fair

09:20AM 20   because they treat people differently.

09:20AM 21               Well, what if the class settlement treated

09:20AM 22   everyone exactly the same?  They would be saying that's not

09:20AM 23   fair.  I'm a hotel on the coast, and you're going to treat me

09:20AM 24   the same as a construction company in Monroe?

09:20AM 25               You have to draw lines, and we've done, I think,

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 02/04/18 Page 35 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 34 of 328

34

09:21AM 1    a good job at doing it.

09:21AM 2            The second fallacy is that there seems to be this

09:21AM 3    implication that you shouldn't have to make a decision without

09:21AM 4    absolute certainty.  Cases are settled with imperfect knowledge

09:21AM 5    every day.  In fact, that's why they're settled.

09:21AM 6            There's uncertainty about the future.  There's

09:21AM 7    uncertainty about the state of the law.  There are facts in

09:21AM 8    evidence that are in dispute that could be interpreted by

09:21AM 9    courts and juries in different ways.

09:21AM 10           We have taken all of that into consideration, and

09:21AM 11   we have given people an opportunity to settle.  May be a tough

09:21AM 12   decision for some, but lawyers and litigants have to make tough

09:21AM 13   decisions about whether to settle cases every day.

09:21AM 14           In this settlement, the future risk has been

09:21AM 15   taken into account through the RTP's.  For example, coastal and

09:21AM 16   wetlands frameworks has an RTP of 2.5, which means they're not

09:21AM 17   just being compensated for just what happened in 2010, but for

09:21AM 18   an additional two and a half years.

09:22AM 19           So when something like Isaac occurs, which some

09:22AM 20   of the objectors have pointed to, the risk of some additional

09:22AM 21   potential damage is already factored into the settlement.

09:22AM 22           I know that BP made statements about a robust

09:22AM 23   recovery, and, with respect to tourism in 2011 and '12, they

09:22AM 24   have some evidence to support that, but the settlement is not

09:22AM 25   predicated on the assumption of no lingering risk or no future

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 36 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 35 of 328

35

risk or no future effects.  The risks are already factored in.

If you don't think the RTP's are high enough because you think the risk is significantly greater, you're free to opt out and wait a few more years and see what happens, see how many more Isaacs there are, if any, and try your case, as Mr. Roy suggested.

Now, with respect to some of the specific issues, there have been questions raised about how these economic zones were drawn.  They were the subject of months and months of negotiations, of people sitting in rooms and going back and forth on maps and looking at the specific businesses; in fact, driving around across the coast to see where these boundaries were.

Generally, the zones are predicated on proximity to the water, proximity to the oil, how tourism based is the areas's economy, or, by contrast, is it industrial or rural or financial or something that may have been arguably less linked to the oil spill.

For example, there were some questions raised about the area around Pascagoula, Mississippi.  BP pointed out during the negotiations, and this was hard fought, that a lot of the economy around Pascagoula is not tourism based.  It's industrial.  It's the Ingalls shipbuilding plant and the Morton chemical plant.  They argued that that really shouldn't be presumed to have been caused or affected by the spill.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 37 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 36 of 328

36

09:23AM  1          Somebody can always point to an anomaly.

09:23AM  2     Somebody can always say, well, what about this business that's

09:24AM  3     a few blocks away from that business.  But what is significant

09:24AM  4     is that for every line that was drawn, we had the incentive, at

09:24AM  5     every single line, to draw it further and further out, and BP

09:24AM  6     had the incentive to push it back.

09:24AM  7          There were no trade-offs in the negotiations.

09:24AM  8     There are no conflicts of interest between these plaintiffs.

09:24AM  9     What one gets doesn't affect what the other gets.

09:24AM 10          Again, if you hadn't drawn these lines, and

09:24AM 11     everybody were treated the same, people would be here objecting

09:24AM 12     saying, that's not fair, that doesn't make sense.  All in all,

09:24AM 13     this was a better way to do it.

09:24AM 14          There have been a number of questions that were

09:24AM 15     raised about how were the other lines drawn with the coastal

09:24AM 16     frameworks and the wetlands frameworks.  I can answer any of

09:24AM 17     the Court's questions, or try to, but I think BP can probably

09:24AM 18     better address that issue than I can.

09:24AM 19          There were some questions -- and, unfortunately,

09:24AM 20     we had a bad example in the initial notice that went out, and

09:24AM 21     this was corrected -- about how the coastal formula works.

09:25AM 22          First of all, I think it's important to note, and

09:25AM 23     Mr. Roy touched on this, I think it's important to note that

09:25AM 24     specifically in Exhibit 11 A, Section 4, and 12 A, Section 4,

09:25AM 25     the settlement agreement makes it clear that it's not going to

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 38 of 329
Case 2:10-md-02179-CJB-JCW Document 3892-8 Filed 11/15/12 Page 37 of 328

37

09:25AM 1    alter or reduce BP's obligations for cleanup, removal, spill

09:25AM 2    response, and there is a whole litany of things that it doesn't

09:25AM 3    reduce their obligation under applicable federal, state, or

09:25AM 4    local laws, regulations, orders or agreements.

09:25AM 5           BP remains subject to the jurisdiction of the

09:25AM 6    Department of Interior to respond to reports of future oiling

09:25AM 7    and to clean up as directed by the government.

09:25AM 8           In addition, BP remains liable under OPA to the

09:25AM 9    US and the states for their cleanup costs and their restoration

09:25AM 10   costs and remains responsible to the United States and to the

09:26AM 11   NRDA trustees for remediation under the NRDA assessment

09:26AM 12   process.  None of that is affected by this settlement.

09:26AM 13          But with respect to the coastal formula itself,

09:26AM 14   the ideal is to compensate people essentially for loss of use

09:26AM 15   and enjoyment of their property.  That's something that's kind

09:26AM 16   of hard to quantify, so the thought occurred to somebody at

09:26AM 17   some point, well, you shouldn't have to pay property taxes on a

09:26AM 18   condo on the beach that you can't enjoy for a summer or for a

09:26AM 19   half a season.

09:26AM 20          So that was where the idea came about to kind of

09:26AM 21   compensate people according to their taxes, their property

09:26AM 22   taxes.  The problem is, is that every county across the Gulf

09:26AM 23   had a different tax rate.  So it's not based on what your

09:26AM 24   actual properties are; it looks to the assessed value of the

09:26AM 25   property, because that was an objective and independent way to

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 39 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 33 of 328

38

09:26AM 1    come up with a valuation, and then we take a factor of

09:26AM 2    1.18 percent, which I think was the highest.  They looked at

09:26AM 3    everything across the Gulf, and that was the highest rate, and

09:27AM 4    that rate is applied.

09:27AM 5          So what you're looking at is the assessed value

09:27AM 6    of the property, which is independent and objective, and then

09:27AM 7    from that it derives a formula to try to compensate people

09:27AM 8    according to a quote, unquote property tax value, but really

09:27AM 9    isn't their property taxes that they pay.  So that's how that

09:27AM 10   compensation formula works.

09:27AM 11         It's unfortunate there was a little bit of

09:27AM 12   confusion about that, but hopefully that's all been cleared up.

09:27AM 13         There were some questions about why do you have a

09:27AM 14   30-day claims bar date for the seafood claims.

09:27AM 15         Well, first of all, this was a decision that

09:27AM 16   Mr. Perry made; but, to the extent I'll try to speak for him, I

09:27AM 17   think the reasoning was that we are expected to have a

09:27AM 18   significant reserve left over in this seafood fund, and it

09:27AM 19   can't be distributed until you know what all the claims are and

09:27AM 20   how they are quantified.

09:27AM 21         We would like to get the money in the hands of

09:27AM 22   the commercial fishermen as fast as possible, and so we're

09:28AM 23   trying to facilitate that.

09:28AM 24         In addition, as Mr. Mosher points out in his

09:28AM 25   declaration -- that was something that was submitted by

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 40 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 39 of 328

39

09:28AM 1   Mr. Kreller and Mr. Nolting in support of the seafood

09:28AM 2   program -- as he attests to, these guys know that they have

09:28AM 3   claims, they know about the settlement, and they have already

09:28AM 4   made the decision whether to participate or to opt out.  So

09:28AM 5   they're already either in or out, and so why delay.

09:28AM 6           The other thing is, as a practical matter, under

09:28AM 7   some of the settlement frameworks, you have to look at what

09:28AM 8   happened in 2011 or 2012 before the claim can be finalized and

09:28AM 9   fully evaluated.

09:28AM 10          The seafood program, by contrast, really works

09:28AM 11  off of benchmarks that are 2007 to 2009.  So there is no

09:28AM 12  reason, you don't have to sit around and wait for people to

09:28AM 13  finalize their 2011 or 2010 -- 2012 tax returns.  There is no

09:28AM 14  reason to make people wait because you can already quantify all

09:28AM 15  of the damages that they are entitled to.

09:28AM 16          I think that was the reasoning that went into

09:29AM 17  Mr. Perry's decision to try to make a very quick claims bar

09:29AM 18  date.  We've submitted in our papers, I think, 20 examples of

09:29AM 19  other cases in which class actions have been approved with

09:29AM 20  claims bar dates that are within the statute of limitations.

09:29AM 21          There are a number of objections on the VoO

09:29AM 22  offset, why is there a VoO offset.  I'm in somewhat of an

09:29AM 23  awkward position to respond to that because I've been arguing

09:29AM 24  from day one that there shouldn't be a VoO offset.  In fact, I

09:29AM 25  was on the phone with my partner, Jim Klick, with Mr. Greene

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 41 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 40 of 328

40

09:29AM 1   from BP, and that conversation is what generated the famous, or

09:29AM 2   infamous, Chenault letter.

09:29AM 3                    Personally, I agree with everything that's said

09:29AM 4   in the objections; but, when we got into negotiations, BP

09:29AM 5   refused to stand by the letter, and they refused to settle the

09:29AM 6   VoO claims without there being some offset.

09:30AM 7                    So we had to look at it.  We had to step back,

09:30AM 8   put our personal feelings aside, be responsible lawyers and

09:30AM 9   say, what is the litigation risk here?  Is there really a

09:30AM 10  contract, or was there a miscommunication, as BP contended, and

09:30AM 11  maybe, arguably, there was no meeting of the minds?  I think

09:30AM 12  there was a contract, but there is a question about that.

09:30AM 13                   Even assuming there is a contract, who was it

09:30AM 14  with?  Is it just for the benefit of Herman, Herman & Katz

09:30AM 15  clients, or does it extend to anybody else?

09:30AM 16                   When you get beyond our clients, arguably you're

09:30AM 17  into estoppel or detrimental reliance principles.  That raises

09:30AM 18  a question, well, did you actually see the letter; did you know

09:30AM 19  about the letter; did you read the letter; when did you find

09:30AM 20  out about it.  There's all those questions.

09:30AM 21                   Some people rely on oral representations, may be

09:30AM 22  a credibility issue about what exactly was said, may be an

09:30AM 23  issue about whether the person that was speaking had actual

09:30AM 24  authority from BP to make those representations, because they

09:30AM 25  did a lot of this work through subs and independent

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 42 of 329
Case 2:10-md-02179-CJB-JCW Document 23892 Filed 1/15/42 Page 41 of 328

41

09:31AM 1   contractors, and so there could be an argument that maybe they

09:31AM 2   weren't even authorized to make those commitments.

09:31AM 3           Then, one thing that would concern me as a trial

09:31AM 4   lawyer, if I had to bring this case to trial, did you actually

09:31AM 5   rely on it?  What you're telling me, Mr. So and So, is that you

09:31AM 6   wouldn't have done the VoO program if you didn't get these

09:31AM 7   assurances in the first place?  You would have just sat around

09:31AM 8   and done nothing for three months?  So that concerned me a

09:31AM 9   little bit as a litigation risk.

09:31AM 10          Then, BP always had the legal argument that you

09:31AM 11  have to mitigate your damages, pretty black letter rule; and,

09:31AM 12  under OPA, you're really only compensated for your loss.  So if

09:31AM 13  these people didn't suffer loss, they arguably had no claim.

09:31AM 14          So, while I personally disagreed that you should

09:31AM 15  have an offset for all of the reasons that are stated in the

09:31AM 16  objections, taking into account this litigation risk, if the

09:31AM 17  claims weren't settled, I thought that setoff of only

09:31AM 18  one-third, and my colleagues agreed, was fair, especially since

09:32AM 19  it was going to be applied after the RTP.

09:32AM 20          The alternative, of course, is that you wouldn't

09:32AM 21  have a VoO settlement at all.  These class members are getting,

09:32AM 22  depending on the previous payments, either an additional

09:32AM 23  13 days of compensation up to an additional 26 days of

09:32AM 24  compensation.

09:32AM 25          So, all in all, I think it's a favorable deal.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 43 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 42 of 328

42

09:32AM 1    If somebody wasn't satisfied with it, they were free to opt

09:32AM 2    out; but, that's the reasoning behind it.

09:32AM 3         THE COURT:  Mr. Herman, let me just point out, there is

09:32AM 4    one other objection, I think, on that, along that line, with

09:32AM 5    respect to the VoO offset, and that is that it only applies to

09:32AM 6    certain VoO participants and not others, if you want to comment

09:32AM 7    on that.

09:32AM 8         MR. HERMAN:  Sure, Your Honor.

09:32AM 9         THE COURT:  I think it applies to charter boat

09:32AM 10   operators, but not to fishermen who use their vessels.

09:32AM 11        MR. HERMAN:  Yes, Your Honor.

09:32AM 12             The way that came about was when Mr. Perry went

09:33AM 13   to determine how the Seafood Compensation Program would work,

09:33AM 14   and he developed the frameworks based on what he thought was

09:33AM 15   fair, reasonable and adequate, he decided that a VoO offset

09:33AM 16   should not be applied within the seafood program.

09:33AM 17             So when he came out with his framework, which was

09:33AM 18   independent, it was really his decision to kind of exempt the

09:33AM 19   seafood program participants from the VoO offset, which had,

09:33AM 20   frankly, already been kind of agreed upon.  So it's just kind

09:33AM 21   of a weird anomaly.

09:33AM 22             What I always go back to is, still, ultimately,

09:33AM 23   at the end of the day, if you're, for example, a charter boat

09:33AM 24   fisherman, the question is, is the deal fair for you?  Is it

09:33AM 25   fair, reasonable and adequate?

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 44 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 43 of 328

43

09:33AM 1          I believe, overall, it is.  If somebody doesn't

09:34AM 2     think that it is, they are free to opt out.  The fact that a

09:34AM 3     shrimper or a crabber or somebody else might be getting more

09:34AM 4     money -- or maybe they get less, I don't know how the formula

09:34AM 5     was applied -- at the end of the day, that really didn't seem

09:34AM 6     to me to be a valid objection.  That's just kind of the way it

09:34AM 7     works out.

09:34AM 8          I think BP makes some other arguments about how

09:34AM 9     it's a little bit different because, you know, if you're a

09:34AM 10    charter boat captain, your whole business is chartering your

09:34AM 11    boat out.  So the fact that you were chartering it to BP or

09:34AM 12    Lawson or DRC, as opposed to chartering it to the guys that

09:34AM 13    come over from Birmingham to go redfish fishing, six of one,

09:34AM 14    half dozen of the other.

09:34AM 15         Whereas, the commercial fishermen are in a little

09:34AM 16    bit of a different position because their business is something

09:34AM 17    else.  It's not solely based on the use of their vessel; it's

09:35AM 18    based on what they can pull out of their catch from these

09:35AM 19    waters that were effectively closed.  So it's not really a

09:35AM 20    one-to-one correspondence.  That's how it came about.

09:35AM 21         I understand, I guess, why people are aggrieved

09:35AM 22    about it; but, I think, overall, the settlement is fair,

09:35AM 23    reasonable and adequate to both the charter boat fishermen and

09:35AM 24    to the people in the Seafood Compensation Program.

09:35AM 25         There was a question or there have been questions

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 45 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 44 of 329

44

09:35AM 1   raised about seafood processors.  Some were suggestive that

09:35AM 2   seafood processors should be in the Seafood Compensation

09:35AM 3   Program, or at least get similar RTP's because they have what

09:35AM 4   they say to be the same risks.

09:35AM 5          I don't think that there were really ever any

09:35AM 6   discussions of including processors in the seafood program,

09:35AM 7   particularly because the business economic loss frameworks had

09:35AM 8   already been negotiated, largely, before the seafood fund even

09:35AM 9   came into existence.

09:36AM 10         But to address the more substantive argument

09:36AM 11  about the RTP's being less, first, I'm not sure that the risk

09:36AM 12  to a processor is really the same, frankly; but, in any event,

09:36AM 13  the primary difference is, under Your Honor's B1 Order, the

09:36AM 14  commercial fishermen have putative damage claims under the

09:36AM 15  commercial fishing exception in *Robins Dry Dock*, whereas,

09:36AM 16  seafood processors that are running businesses that are on the

09:36AM 17  shore generally aren't going to have putative damage claims.

09:36AM 18         So it makes sense, generally, to have RTP's

09:36AM 19  higher for the commercial fishermen because they have putative

09:36AM 20  damage claims, even if the risks were the same.

09:36AM 21         Now, having said that, I think the processors are

09:36AM 22  treated pretty favorably under the agreement.  They have the

09:36AM 23  highest RTP's outside of the seafood programs, higher than

09:36AM 24  tourism generally, and causation is presumed throughout the

09:36AM 25  entire geographic zone of the class.  Whether you're A, B, C or

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 46 of 329
Case 2:10-md-02179-CJB-JCW Document 3892-8 Filed 11/15/11 Page 45 of 329

45

09:36AM 1    D, if you're primary seafood, you're a processor of Gulf

09:37AM 2    seafood, causation is presumed, and you don't have to satisfy

09:37AM 3    any other causation requirements.

09:37AM 4            So the processors are treated, I believe, pretty

09:37AM 5    favorably under the settlement.

09:37AM 6            There were some questions about proof for workers

09:37AM 7    without earnings documentation.  You know, with respect to

09:37AM 8    people like busboys or waitresses or housekeepers, the

09:37AM 9    settlement provides for several different ways for them to

09:37AM 10   establish their losses.  They could use their tax returns, if

09:37AM 11   they have them.  If they don't have tax returns, they can use

09:37AM 12   other pay period or earnings documentation.

09:37AM 13           Then, there is a third alternative, what if you

09:37AM 14   have pay period or earnings documentation or tax returns for

09:37AM 15   2010, but you don't have it from the benchmark periods; and,

09:37AM 16   there is a way to satisfy those requirements.

09:37AM 17           Then, finally, if you don't have any of that, you

09:37AM 18   could get a sworn written statement from your employer, where

09:37AM 19   the employer, restaurant owner or manager or whoever, attests,

09:38AM 20   yes, this person was a busboy for these periods, etcetera.

09:38AM 21           Then, if you to go the seafood program, for

09:38AM 22   deckhands, it's even more liberal than that.  Mr. Perry allowed

09:38AM 23   that, in addition to your employer, you could also get sworn

09:38AM 24   written statements from a non-family sponsor, such as a

09:38AM 25   minister, or you could have an attorney sponsor, where an

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 47 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 46 of 328

46

09:38AM 1    attorney says, I've done due diligence, and I vouch for this

09:38AM 2    person and believe that he or she was actually employed as a

09:38AM 3    deckhand.  That's sufficient under the seafood program for some

09:38AM 4    of the crew members.

09:38AM 5         One thing that I just wanted to touch on, and

09:38AM 6    then I'm happy to answer any questions from the Court or sit

09:38AM 7    down and let Mr. Godfrey make his presentation, but when we

09:38AM 8    submitted our original submission in August, we had something

09:39AM 9    that we called *en globo Exhibit A*.  It was basically, this is,

09:39AM 10   at a 10,000-foot level, the seafood program and why we think

09:39AM 11   it's fair, adequate, sufficient, etcetera.

09:39AM 12        At that time, there were only preliminary

09:39AM 13   estimates from NOAA for the 2011 landing catch data.  Well,

09:39AM 14   between that time and the time that our reply brief was filed,

09:39AM 15   NOAH finalized their 2011 landing catch data, and so we could

09:39AM 16   update or replace or revise, or whatever word you want to use,

09:39AM 17   our previous submission.

09:39AM 18        So we submitted, as Document 7727-1, an updated

09:39AM 19   chart.  I know Your Honor is going to hear a lot of details

09:39AM 20   about the seafood program later in the morning, but one thing

09:39AM 21   that I think is very interesting to note is when you look at

09:40AM 22   the shrimp landing data, and you compare the actual change from

09:40AM 23   2007 to 2009 versus or compared to or contrasted with 2010 to

09:40AM 24   2011, the actual shrimp landings volumes, according to the NOAA

09:40AM 25   data, are only down 13 percent, which is good news, and

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 48 of 329
Case 2:10-md-02179-CJB-JCW Document 23892-8 Filed 11/15/12 Page 47 of 328

47

09:40AM 1    hopefully that will continue and maybe even lessen.

09:40AM 2            Under the Seafood Compensation Program formula

09:40AM 3    that Mr. Perry devised, you're getting paid for a 35 percent

09:40AM 4    loss as opposed to a 13 percent loss.

09:40AM 5            If you to go the oyster data, the official NOAA

09:40AM 6    oyster data is that oyster volumes are down 24 percent; yet,

09:40AM 7    under the settlement, you get paid as if there were a

09:40AM 8    40 percent loss.  This is being multiplied for RTP's that are

09:41AM 9    six, seven, eight, nine years.

09:41AM 10           Then, if you go to blue crabs, I think the RTP's

09:41AM 11   on blue crabs are five and six, and you're getting paid for six

09:41AM 12   and seven years.  There is a 14 percent loss, according to the

09:41AM 13   NOAA data, and yet you're being compensated, over seven or

09:41AM 14   eight years -- excuse me, six or seven years for a 35 percent

09:41AM 15   loss.

09:41AM 16           Then, finally, for finfish -- and this is good

09:41AM 17   news, and hopefully it will continue -- finfish, according to

09:41AM 18   the NOAA data, are down less than one percent, half of one

09:41AM 19   percent, comparing 2007 to '09 to 2010 to '11, and fin

09:41AM 20   fishermen were compensated under Mr. Perry's formula for a loss

09:41AM 21   of 25 percent over, I think it's, five to six years -- five to

09:41AM 22   six RTP, which would be six to seven years.

09:41AM 23           So I just wanted to point this out to the Court,

09:41AM 24   A, because it supplements our previous filing and, B, because I

09:42AM 25   think it's an appropriate lens through which to look at the

09:42AM 1    Seafood Compensation Program.

09:42AM 2            THE COURT:  I want to make sure I understand and

09:42AM 3    everyone else understands how that works and the RTP's work.

09:42AM 4            If, for example, you use the example that oyster

09:42AM 5    volumes are down 24 percent, but, under the settlement, they

09:42AM 6    are paid as if there was a 40 percent loss, so they would take

09:42AM 7    40 percent of what would be their annual revenue and then

09:42AM 8    multiply that by --

09:42AM 9            I think the oystermen get, for example, the

09:42AM 10   highest RTP's.  Is it nine or something like that?

09:42AM 11           MR. HERMAN:  Yes.

09:42AM 12           THE COURT:  I may not have it exactly --

09:42AM 13           MR. HERMAN:  Around.

09:42AM 14           THE COURT:  Something around that order.

09:42AM 15           MR. HERMAN:  It's a little more for vessel owners than

09:42AM 16   for harvesters.

09:42AM 17           THE COURT:  It's not just multiplying that number by

09:43AM 18   nine.  It's multiplying that number by nine, then adding that

09:43AM 19   result back to the original number, correct?

09:43AM 20           MR. HERMAN:  Right.

09:43AM 21           THE COURT:  So it's effectively like a multiplier of

09:43AM 22   ten --

09:43AM 23           MR. HERMAN:  Correct.

09:43AM 24           THE COURT:  -- in that example; am I right about that?

09:43AM 25           MR. HERMAN:  Right.  So if you have an RTP of 2.5,

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 50 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 49 of 328

49

09:43AM 1    it's, in effect, a multiplier of 3.5.

09:43AM 2         THE COURT:  3.5, right.

09:43AM 3         MR. HERMAN:  Now, just to be clear, the oyster formula

09:43AM 4    is a little bit more complicated than that.  I'm sure

09:43AM 5    Mr. Waltzer is going to go into great detail.

09:43AM 6         THE COURT:  Yes.  Well, I just picked out a number.  I

09:43AM 7    could be talking about any of them.  I was more focusing on the

09:43AM 8    base number multiplied by a multiplier, and then that result is

09:43AM 9    added back to the original.

09:43AM 10        MR. HERMAN:  Exactly.  You would figure out benchmark

09:43AM 11   earnings, take a loss factor from that, and then you're

09:43AM 12   multiplying it by RTP plus one.

09:43AM 13        THE COURT:  Right.  Very well.  Thank you.

09:43AM 14        MR. HERMAN:  Any questions, sir?

09:43AM 15        THE COURT:  No.

09:43AM 16        MR. HERMAN:  Thank you, Your Honor.

09:43AM 17        THE COURT:  Thank you.

09:43AM 18          Mr. Godfrey.

09:44AM 19        MR. GODFREY:  Good morning, Your Honor.  I'm

09:44AM 20   Rick Godfrey for BP.

09:44AM 21          Good morning, Judge Shushan.  It's always a

09:44AM 22   pleasure to see you again.  I've missed our daily meetings and

09:44AM 23   calls throughout the course of the summer.

09:44AM 24          Last spring, BP and the PSC announced yet another

09:44AM 25   step that BP was taking to make good on its commitment to the

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 51 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 50 of 328

50

09:44AM 1    citizens and communities of the Gulf Coast states.

09:44AM 2    Specifically, BP agreed, after months of intense, indeed brutal

09:44AM 3    negotiations around the clock, nine months and one day, over

09:44AM 4    145 face-to-face meetings, we agreed to enter into two

09:44AM 5    comprehensive and historic settlement agreements designed to

09:44AM 6    fairly and generously compensate the legitimate claims of those

09:44AM 7    who were injured as a result of the oil spill in this tragic

09:45AM 8    casualty.

09:45AM 9            Unlike any other settlement of significance in

09:45AM 10   the history of the American legal system, immediately after

09:45AM 11   this Court's Preliminary Approval Order of May the 2nd, 2012,

09:45AM 12   BP began implementing the economic loss and property damages

09:45AM 13   settlement enabling the payment of claims made by victims of

09:45AM 14   the spill.

09:45AM 15           As Mr. Roy observed, this week we will reach a

09:45AM 16   milestone.  Even before this Court has had the opportunity to

09:45AM 17   determine whether or not on a final basis the settlement is

09:45AM 18   fair, reasonable and adequate, Mr. Juneau, by the end of this

09:45AM 19   week or early next, will have approved the payment of over one

09:45AM 20   billion dollars in claims made to his facility under the terms

09:45AM 21   of this settlement.

09:45AM 22           There is no precedence for this in our nation's

09:46AM 23   jurisprudence.  This is a good thing.  It is a good thing not

09:46AM 24   only for the claimants and for the communities of the

09:46AM 25   Gulf Coast states, but it is good for our system of justice,

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 52 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 52 of 329

51

09:46AM  1    for BP is committed to this principle.

09:46AM  2           As the economic loss and property damages

09:46AM  3    settlement makes clear, BP has no intention in this case of

09:46AM  4    allowing justice to be delayed, much less denied, to those

09:46AM  5    having legitimate claims as a result of this tragic event.

09:46AM  6           This settlement is also uniquely consistent with

09:46AM  7    and furthers the goals of the Congressional adoption of the OPA

09:46AM  8    statute after the *Exxon Valdez* accident, which is to resolve

09:46AM  9    the claims of oil spill victims quickly.

09:46AM 10           Your Honor has commented on more than one

09:46AM 11    occasion that you want no *Exxon Valdez* litigation here.  We

09:46AM 12    agree with that.  We're trying our best to achieve the goals

09:46AM 13    that Congress set forth and the goal that this Court asked us

09:47AM 14    to achieve.

09:47AM 15           Now, before the Court today is an extensive

09:47AM 16    detailed evidentiary record against which the fairness,

09:47AM 17    adequacy and reasonableness of the economic loss settlement is

09:47AM 18    to be measured.

09:47AM 19           One part of this evidentiary record was developed

09:47AM 20    by the various trial teams:  Depositions, documents,

09:47AM 21    interrogatories, requests to admit, physical evidence, over

09:47AM 22    80 expert reports.

09:47AM 23           The other part of this evidentiary record was

09:47AM 24    developed by the settlement teams in support of the settlement:

09:47AM 25    Expert analyses and opinions, declarations, fact witness

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 53 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 52 of 328

52

09:47AM 1  opinions, declarations, the involvement of a magistrate judge,

09:47AM 2  the involvement of the nation's legal experts, all before the

09:47AM 3  Court, an extraordinary comprehensive record.

09:47AM 4       But in this settlement agreement, in reaching it,

09:48AM 5  we did one thing also that was unusual, that is, the PSC and

09:48AM 6  BP.  We not only had the oversight and wise guidance of

09:48AM 7  Magistrate Judge Shushan; we not only had the court-appointed

09:48AM 8  neutral, Mr. Perry; we also went out and retained the nation's

09:48AM 9  leading legal experts, Professors Coffee, Miller, Klonoff and

09:48AM 10 Issacharoff.

09:48AM 11      They have provided the Court with their own

09:48AM 12 declarations on both the structure, the propriety, the analysis

09:48AM 13 under class action law, and the fairness, reasonable and

09:48AM 14 adequacy of this settlement.  Those declarations are well worth

09:48AM 15 considering because these are our nation's leading experts in

09:48AM 16 this field.

09:48AM 17      Now, Professor Coffee, from Columbia University

09:48AM 18 in New York, is considered by many to be the first among equals

09:48AM 19 in this area of the law.

09:49AM 20      I would like to take a brief moment to do

09:49AM 21 something I ordinarily would not do, but I think it is

09:49AM 22 important for the Court to focus upon the following point and

09:49AM 23 for the broader public audience to be aware of this, as well,

09:49AM 24 to take a brief moment and focus upon what he says in his

09:49AM 25 original declaration in paragraph 13, because it is important

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 54 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 53 of 329

53

09:49AM 1    and it gets to the guts of the issue why we're here today.

09:49AM 2         Professor Coffee wrote as follows:  "This

09:49AM 3    settlement represents exactly the type of outcome that OPA was

09:49AM 4    intended to produce.  As others have said, OPA was meant to

09:49AM 5    provide an effective system for prompt oil spill removal and

09:49AM 6    fair compensation for those damaged by such spills.  That is

09:49AM 7    also the goal of this settlement agreement.

09:49AM 8         "Because the settlement agreement is uncapped and

09:49AM 9    therefore does not reduce the potential liability of the BP

09:49AM 10   parties, it stands apart from the vast majority of class action

09:49AM 11   settlements."

09:49AM 12        Professor Coffee then goes on to state:  "The key

09:50AM 13   goals of OPA, i.e., prompt resolution and fair compensation,

09:50AM 14   are consistent with the superiority standard of Rule 23(b)(3),

09:50AM 15   and both favor an expeditious resolution that fosters the

09:50AM 16   economic and social recovery of the Gulf Coast region.  In

09:50AM 17   contrast, if claimants had to proceed individually and not by

09:50AM 18   means of this class action, the process would be long and

09:50AM 19   possibly interminable, and the courts would be flooded with

09:50AM 20   repetitive litigation to no one's advantage, all in conflict

09:50AM 21   with both the OPA's goals and Rule 23(b)(3)'s focus on

09:50AM 22   superiority."  We could not agree more.

09:50AM 23        But Professor Coffee -- unusual for a law

09:50AM 24   professor because he writes his own declarations -- he

09:50AM 25   concluded by saying the following at page 62 of his original

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 55 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 54 of 328

54

09:50AM  1    declaration:  "Because a class action is the vastly superior

09:51AM  2    method by which to resolve the impact of this mass disaster on

09:51AM  3    the Gulf Coast region, it would be a social tragedy if class

09:51AM  4    certification were denied."

09:51AM  5              That is the measure.  It is a comparative

09:51AM  6    measure.

09:51AM  7              So when the objectors appear before the Court,

09:51AM  8    you know what we're offering.  You know the benefits that are

09:51AM  9    going to the victims and communities of this region.  They are

09:51AM 10    offering what, in the words of the nation's leading class

09:51AM 11    action expert, is a social tragedy of interminable litigation.

09:51AM 12    It is not a very pretty picture, to say the least.

09:51AM 13              Given the facts here, as well as the settled law,

09:51AM 14    BP and its counsel, joined by the PSC, could not agree with

09:51AM 15    Professor Coffee any more than we have.  The settlement is

09:51AM 16    placing large sums of money today and tomorrow and next week

09:51AM 17    into the hands and the communities of the Gulf, the victims of

09:51AM 18    this tragic event.  We believe that it's fair, just and

09:52AM 19    reasonable, and that this process should not be interrupted or

09:52AM 20    stopped based upon the objections of the few for the purpose of

09:52AM 21    injuring the many who need to be compensated now.

09:52AM 22              Accordingly, we believe that the record before

09:52AM 23    the Court justifies its final approval, and it does so for four

09:52AM 24    simple reasons.

09:52AM 25              Slide two, please, Matt.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/04/18 Page 56 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 55 of 328

55

09:52AM 1        The data supports the approval -- I'm going to

09:52AM 2    talk a little bit about data because I'm kind of a data guy; I

09:52AM 3    like to look at the data -- the law supports the approval, the

09:52AM 4    evidentiary record supports the approval, and the deficiencies

09:52AM 5    in quality of the objections and opt-outs support approval.

09:52AM 6        Start with the data.  The number of total claims,

09:52AM 7    62,020 total claimants thus far have made claims; 10,500 from

09:52AM 8    Alabama, 24,986 from Florida, 14,946 from Louisiana, 7,502 from

09:53AM 9    Mississippi, and 2,105 from Texas.

09:53AM 10        But here is a troubling fact.  We'll have more

09:53AM 11    refined data for the Court in a formal submission in about a

09:53AM 12    week or so.  As Your Honor may recall, under the Preliminary

09:53AM 13    Approval Order, we are obligated to have a final opt-out list,

09:53AM 14    objection list.  Because of all of the material that came in

09:53AM 15    late last week and over the weekend, we are going to seek an

09:53AM 16    extension of about a 10-day period of time to put that

09:53AM 17    together.  But, preliminarily, we are being told by the vendors

09:53AM 18    that there are 5,839 claimants who are going to Mr. Juneau, who

09:53AM 19    is doing a wonderful job, represented by objecting law firms.

09:53AM 20        How does a lawyer object to his clients making

09:53AM 21    claims, seeking to prevent them from making claims?  That is

09:53AM 22    something that this Court will have to consider in weighing

09:53AM 23    both the credibility and the propriety of the objecting

09:54AM 24    counsel.

09:54AM 25        Point two, the settlement program has already

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 57 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 56 of 329

56

09:54AM 1   issued over $1.3 billion in payment determinations, over

09:54AM 2   $400 million in the transition process, $952 million as of

09:54AM 3   Wednesday of this week.  Ninety-five percent of the claimants

09:54AM 4   who have been issued determinations have accepted them.

09:54AM 5          When I went to school, if you got a 93 percent in

09:54AM 6   any class, you were doing pretty well.

09:54AM 7          $405 million has already been paid.

09:54AM 8          The remaining claimants who are eligible will

09:54AM 9   continue in the process.

09:54AM 10         Point three, some of the payments are being made

09:54AM 11  now.  The *Amoco Cadiz* litigation lasted from 1978 to late 1993.

09:54AM 12  The claimants eventually got less than a penny on the dollar.

09:54AM 13  There were six appeals.  There were two trials.  The damages

09:55AM 14  trial, claimant after claimant came in, it was 13 months, eight

09:55AM 15  days, six hours.

09:55AM 16         *Exxon Valdez* has lasted nearly 20 years.  There

09:55AM 17  have been multiple appeals.  They have gotten a fraction of

09:55AM 18  what they claimed.  That's the alternative being offered to the

09:55AM 19  Court.

09:55AM 20         We hired one of the nation's leading claims

09:55AM 21  administrators, Meade Monger, asked him to look at it.

09:55AM 22         Point four, many people, particularly in this

09:55AM 23  area of the country, hold the Vioxx settlements as a model.

09:55AM 24  Mr. Juneau's facility will pay over 30,000 claims before the

09:55AM 25  Vioxx settlement ever made a single payment.  It's a stunning

09:55AM  1    statistic.

09:55AM  2            Mr. Monger compared class settlements that went

09:55AM  3    into effect after final court approval, after the appeals were

09:55AM  4    approved, and said this settlement is doing better than those,

09:55AM  5    certainly no worse than those.

09:56AM  6            Point five, the non-seafood portion of the

09:56AM  7    settlement is uncapped.

09:56AM  8            So we talked about the 2.3 billion guaranteed;

09:56AM  9    but, people forget, BP has already paid through the GCCF, the

09:56AM 10    Gulf Coast Claims Facility, $730 million to the seafood

09:56AM 11    industry, people on the water.

09:56AM 12            All in, BP, when you combine this settlement with

09:56AM 13    what it paid through the GCCF, will have paid over $3 billion.

09:56AM 14            Now, how does that compare to the facts on the

09:56AM 15    ground?

09:56AM 16            Point seven, the seafood compensation program's

09:56AM 17    $2.3 billion guaranteed payments is five times the annual

09:56AM 18    average industry revenue.  Now, that's not loss.  That's not

09:56AM 19    lost profit.  That's not lost revenue.  That's five times the

09:56AM 20    industry revenue.  It's 19.2 times the lost industry revenue.

09:56AM 21            The first one is total revenue.  The second one

09:57AM 22    is lost industry revenue.  When you combine it with the

09:57AM 23    $733 million Gulf Coast Claims Facility payments, it's

09:57AM 24    25.3 times lost industry revenue.

09:57AM 25            It was a generous program, and it was designed to

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 59 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 59 of 329

58

09:57AM 1   account for future risks.

09:57AM 2          On Slide 8, we put a chart based upon Mr. Smith's

09:57AM 3   declaration, lost industry revenue versus the total amount of

09:57AM 4   compensation.

09:57AM 5          You can see, lost industry revenue is not the

09:57AM 6   valid claim.  That would overstate it because you only get your

09:57AM 7   profits, your lost profits.  But assume the lost industry

09:57AM 8   revenue equalled lost profits --

09:57AM 9          THE COURT:  So in all of these numbers, when you say

09:57AM 10  revenue you're talking about gross revenue --

09:57AM 11         MR. GODFREY:  Yes.

09:57AM 12         THE COURT:  -- not net revenues or net profits.

09:58AM 13         MR. GODFREY:  That's correct.

09:58AM 14         If you assume a 35 or 40 percent profit, then

09:58AM 15  that's $40 or $30 million, many multiples of time we're paying

09:58AM 16  them over whatever their losses are.

09:58AM 17         We broke out shrimp.  Again, lost industry

09:58AM 18  revenue.  Now, lost profits we think are a fraction of that.

09:58AM 19  20 percent maybe, 30 percent maybe.  But just assume lost

09:58AM 20  industry revenue.  We're paying the shrimpers roughly 15 times

09:58AM 21  more than the claimed lost industry revenue.

09:58AM 22         As Mr. Herman pointed out, that was based upon

09:58AM 23  the assumption of losses which now appear not to be taking

09:58AM 24  place.

09:58AM 25         What do oysters look like?  Very similar to

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 60 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 59 of 329

59

09:58AM 1    shrimp.

09:58AM 2              Now, there are objections, as Your Honor knows,

09:58AM 3    that go like this:  Well, oysters are getting more, or crab is

09:58AM 4    getting less.  That's not how you measure it.

09:58AM 5              Mr. Perry, the neutral, and his associate,

09:58AM 6    Mr. Balhoff, they did a bottoms-up approach.  You look at each

09:59AM 7    one individually.  Was it fair, reasonable and adequate?  15 to

09:59AM 8    30 times more than the claimed loss strikes me as more than

09:59AM 9    fair, more than reasonable, more than generous.  That oysters

09:59AM 10   get more or less than that is an irrelevant consideration.

09:59AM 11             But here is the most stunning point.  We have

09:59AM 12   these experts.  Mr. Smith did a calculation.  He said, let's

09:59AM 13   assume there is a 34 percent chance that the Gulf seafood

09:59AM 14   industry fails, no more seafood, you don't get any more, you

09:59AM 15   can't fish, you're done.  BP is paying, in the present value,

09:59AM 16   34 percent of all future anticipated revenues for the Gulf

09:59AM 17   seafood industry.  To suggest that this is not generous or not

09:59AM 18   fair or not reasonable, particularly with one notion that the

09:59AM 19   Gulf is going to fail as a fishery source, is pure speculation.

09:59AM 20             We also have experts about fishery:  Mr. Tunnell,

10:00AM 21   who has talked about fishery populations are within the

10:00AM 22   prespill landing and population averages.

10:00AM 23             Then there's this argument about the herring

10:00AM 24   class.  There actually is a man who is the world's leading

10:00AM 25   expert on herring, and his name is Mr. Pearson.  He's been

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 61 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 60 of 328

60

Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 60 of 328

10:00AM 1    studying herring for 40 years.  He studied in Alaska.

10:00AM 2              He goes back and looks and says the assertion

10:00AM 3    that the *Exxon Valdez* has something to do with the herring

10:00AM 4    class, simply not true.  They may have thought that initially,

10:00AM 5    but, as time went on, it had to do with nutritional components,

10:00AM 6    nothing to do with *Exxon Valdez*.

10:00AM 7              Not just that BP thinks the seafood program is

10:00AM 8    reasonable and fair, we had other parties come in.  The

10:00AM 9    *Thanh Hai* plaintiffs came in.  They filed supporting papers for

10:00AM 10   the seafood program.  They said it's fair and adequate, and

10:00AM 11   they explained why.

10:00AM 12             Your Honor has that brief.  I think Your Honor

10:00AM 13   has allotted some time to them to speak today if they choose to

10:01AM 14   speak.

10:01AM 15             Halliburton's expert, we don't agree with much of

10:01AM 16   what he said -- I'm not sure we agree with anything, but he's

10:01AM 17   got one thing right -- it is extremely generous, it's

10:01AM 18   accounting for future risk, and it exceeds these claimants'

10:01AM 19   true aggregate economic losses.

10:01AM 20             It was a negotiation in terms of the global

10:01AM 21   number, and it was Mr. Perry who made the decisions in the end.

10:01AM 22             What does did PSC think?  It's more than

10:01AM 23   sufficient to adequately compensate past and future commercial

10:01AM 24   fishing losses.

10:01AM 25             Mr. Rice, as he filed his declaration, that the

10:01AM  1    $2.3 billion will provide much greater compensation to the

10:01AM  2    claimants than they would be able to establish using the

10:01AM  3    Federal Rules of Evidence, the Court's rulings and the

10:01AM  4    application of OPA and maritime law.

10:01AM  5            Because Mr. Rice is the lead negotiator sitting

10:01AM  6    across from table from me, he understands.  We both understand.

10:01AM  7    This is a matter, not just in negotiation, but it's a trial

10:01AM  8    lawyer's assessment of what's going to happen in the courtroom.

10:01AM  9            You can think that you're going to recover a lot

10:01AM 10    of money based on law that does not exist that the Court has

10:02AM 11    already overruled you on, but that's far different than what

10:02AM 12    would happen pursuant to the terms of the settlement.

10:02AM 13            So what about the size of the objectors.  I've

10:02AM 14    been reading press accounts, and I've been watching and waiting

10:02AM 15    to see the data as it comes in.

10:02AM 16            You know, people seem to think that if you have

10:02AM 17    10 or 20,000 people claiming to object or opt out, that that's

10:02AM 18    meaningful.  Well, it's not meaningful under the law because

10:02AM 19    it's a relative matter to class size.

10:02AM 20            So the class size is the citizens and communities

10:02AM 21    here that fall within the class definition.  We estimate it,

10:02AM 22    you know, could be a couple million, but it doesn't really

10:02AM 23    matter.  We think that the total objectors and opt-outs, no

10:02AM 24    matter how you measure them, are less than one percent.

10:02AM 25            But let's assume we're wrong.  Let's just take it

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/04/18 Page 63 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 62 of 328

62

10:02AM 1    as the short form joinders, the people who have made claims,

10:02AM 2    119,000 claims.  Well, the maximum potentially valid opt-outs

10:03AM 3    are 11 percent.

10:03AM 4              What does the law say?  *Reed*, the Fifth Circuit,

10:03AM 5    approved with objectors of over 30 percent of the class.  The

10:03AM 6    Sixth Circuit, in the *GM* case, the *Huguley* case, 15 percent

10:03AM 7    objectors is okay.  The *Grant v. Bethlehem Steel* case in the

10:03AM 8    Second Circuit, 36 percent objectors is okay.  These numbers

10:03AM 9    are minuscule.

10:03AM 10             THE COURT:  You're talking about objectors or opt-outs?

10:03AM 11             MR. GODFREY:  Both.  But I also have an announcement to

10:03AM 12   make, which I will do formally now.

10:03AM 13             As the Court knows, under Section 21.3.6 of the

10:03AM 14   settlement agreement, BP negotiated with Mr. Rice the option of

10:03AM 15   terminating the agreement if we reached numbers in a sealed

10:03AM 16   envelope.  We didn't reach the numbers.  Indeed, the numbers of

10:03AM 17   objectors and opt-outs were less than we anticipated.

10:03AM 18             BP had the obligation to exercise that option to

10:03AM 19   terminate three days ago.  It chose not to do so.  The option

10:04AM 20   has expired.  BP is not exercising the option.  The settlement

10:04AM 21   is working as we anticipated and as we negotiated with Mr. Rice

10:04AM 22   and Mr. Fayard.

10:04AM 23             Now, we look at the objectors.  We call them mass

10:04AM 24   objectors because most of the objectors come from three or four

10:04AM 25   law firms.  We're going to comment on that in a minute because

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 64 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 63 of 328

63

10:04AM 1    the Court actually has orders that actual governing what

10:04AM 2    lawyers are supposed to do and to determine whether or not

10:04AM 3    someone is a valid objector and has a valid opt-out.

10:04AM 4          The valid objectors, the ones that complied with

10:04AM 5    the Court Order -- this is paragraph 38 and 39 of the Court's

10:04AM 6    Order of May 2nd, how you actually have a valid objector --

10:04AM 7    623.  That's the current number.

10:04AM 8          Now, we're going to have refined numbers next

10:04AM 9    week, Your Honor, because Garden City is still going through

10:04AM 10   these things; but, as of last night, that was the current

10:04AM 11   number.  It's minuscule.

10:05AM 12         What we say about -- why we say they are valid is

10:05AM 13   the Court's Order in paragraph 38 defines -- in paragraph 39

10:05AM 14   defines what people have to do.  If you're going to object, you

10:05AM 15   have to have your name, your address, you have to say why

10:05AM 16   you're in the class, you have to show your standing.

10:05AM 17         You just don't file something that says, I

10:05AM 18   object.  Your lawyer just doesn't file something that says, I

10:05AM 19   object.  You have to have a basis for it.

10:05AM 20         So, point one, the data confirm the unique

10:05AM 21   benefits of this settlement agreement:  Claims paid prior to

10:05AM 22   approval, final approval; uncapped; full compensatory damages;

10:05AM 23   RTP is calculated as a multiple of compensatory damages;

10:05AM 24   guaranteed $2.3 billion seafood fund.

10:05AM 25         In addition, you've got the GCCF payments.  You

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 65 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 64 of 328

64

10:05AM  1    have assigned claims.  You have the value of certain insurance

10:05AM  2    up to $232.8 million.

10:05AM  3              You have the Gulf Coast promotional fund.

10:06AM  4    Mr. Juneau will comment, but he did an excellent job this week.

10:06AM  5    He made initial awards, I think it was $43 million, that are

10:06AM  6    going out to various organizations in this and the other

10:06AM  7    states.

10:06AM  8              Claimants denied by the GCCF will be able to make

10:06AM  9    claims here.  They are not out of the box, if they have

10:06AM 10    legitimate claims.

10:06AM 11              BP has agreed to pay common counsel or class

10:06AM 12    counsel benefit fees on top of the settlement corpus.  We've

10:06AM 13    agreed to pay all administration expenses.  Last, but not

10:06AM 14    least, we guarantee it by the ultimate parents.  The law

10:06AM 15    supports approval.

10:06AM 16              Six *Reed* factors.

10:06AM 17              *Reed* Factor Number 1, was the settlement fairly

10:06AM 18    negotiated at arm's length?  Well, we had a magistrate judge

10:06AM 19    who was intimately involved.

10:06AM 20              I will say again, we could not have done this

10:06AM 21    without Judge Shushan, but I had no idea that one judge could

10:06AM 22    spend so much time with so many lawyers getting us to get our

10:06AM 23    job done.  She did a magnificent job at all hours of the night.

10:07AM 24              We had a court-appointed neutral.  This

10:07AM 25    settlement exceeds the *Reed* factor.  The law requires the

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/04/18 Page 66 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 65 of 328

65

10:07AM 1    absence of fraud or collusion, not structural guarantees that

10:07AM 2    prevent it from happening, and not a judge who is involved

10:07AM 3    intimately daily.

10:07AM 4         Factor Number 2, absent settlement, this complex,

10:07AM 5    extensive and lengthy litigation will take years or decades to

10:07AM 6    resolve.  *Cadiz* and *Valdez*, 15 or 20 years.  Is that the model

10:07AM 7    that the objectors want us to follow?

10:07AM 8         Mr. Picou:  "Protracted *Exxon Valdez* litigation

10:07AM 9    produced an independent secondary disaster for the Alaska

10:07AM 10   populus affected by the spill."

10:07AM 11        Litigation is not child's play.  It's a rough and

10:07AM 12   tumble business.  People say, oh, I'm going to go to court, I'm

10:07AM 13   going to try my case.  Really?

10:07AM 14        It is not easy to take the stand.  It is not easy

10:07AM 15   to prove your case.  It is not easy to defend cases.  But

10:07AM 16   that's the crucible that apparently some people would prefer

10:08AM 17   rather than compensating the victims of this tragedy now.

10:08AM 18        This settlement exceeds this *Reed* factor because

10:08AM 19   benefits are being provided now without delay.

10:08AM 20        Do we really need to spend much time on *Reed*

10:08AM 21   Factor Number 3?  This is not a prepackaged settlement.  We

10:08AM 22   know more about the facts of this case than probably any other

10:08AM 23   case that has been settled.  We had government investigations,

10:08AM 24   we had depositions, we exceeded the *Reed* factor.

10:08AM 25        THE COURT:  Comment briefly, if you would, there have

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 67 of 329
Case 2:10-md-02179-CJB-JCW Document 3892-8 Filed 11/14/11 Page 66 of 329

66

10:08AM 1    been some comments by objectors or questions raised by

10:08AM 2    objectors as to the fact that, well, most of the discovery has

10:08AM 3    been on liability and not on damages.

10:08AM 4          What information did the parties have in putting

10:08AM 5    the settlement together with respect to the damages?

10:08AM 6         MR. GODFREY:  The parties had retained experts

10:09AM 7    throughout the course advising them on damages.  We also had

10:09AM 8    the public information from the government.

10:09AM 9          So, remember, this case is unusual in that

10:09AM 10   because it was such a high-profile matter, the government had

10:09AM 11   its own investigations, had its own reporting.

10:09AM 12         So we had state data on fish landings, for

10:09AM 13   example; on tourism, for example.  We have federal data on

10:09AM 14   that.  We have private expert data.  The parties had access to

10:09AM 15   that throughout.

10:09AM 16         Of course, any claimant knows their own data, but

10:09AM 17   we also had GCCF data that was published.

10:09AM 18         There was a period of time when there was a

10:09AM 19   particular expert, I think he was Mr. Tomlinson's expert, named

10:09AM 20   Wally.  Every time I would sit down with Mr. Rice, I would say,

10:09AM 21   that can't be the way it works, and they'd bring Wally in.

10:09AM 22   He's an accountant.  He'd say, I've gone through and prepared

10:09AM 23   800 claims for the GCCF.  Let me tell you how it works for the

10:09AM 24   claimants in Alabama, how it works for the claimants in

10:09AM 25   Louisiana, how it works for the claimants in Florida.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 68 of 329
Case 2:10-md-02179-CJB-JCW Document 3882-8 Filed 11/15/12 Page 6 of 328

67

10:09AM 1          I got tired of seeing Wally because every time he

10:09AM 2   came in, Wally would come in with stacks of documents, with

10:09AM 3   financials from all these claimants that the PSC jointly

10:10AM 4   represented.

10:10AM 5          So we not only had experts, we had people on both

10:10AM 6   sides, but particularly on the PSC, that had gone through

10:10AM 7   thousands of claims files and could say, no, Mr. Godfrey, we

10:10AM 8   are not going to do what Ms. Bloom wants to do because that's

10:10AM 9   not the way it works for the beachfront communities who have

10:10AM 10  this type of business.  Let me show you 50 files of the

10:10AM 11  following people, and this is how it works.

10:10AM 12         It was frustrating from my perspective,

10:10AM 13  Your Honor, but they did a very good job.  They had more than

10:10AM 14  Wally, but he's the person that they trotted out because they

10:10AM 15  know that Wally would come, and he was the classic accountant

10:10AM 16  type with all the stacks.

10:10AM 17         So the fact of the matter is there was abundant

10:10AM 18  evidence, but nothing any objector has said we haven't seen

10:10AM 19  before.  Mr. Rice, Mr. Fayard came in each time.  You want to

10:10AM 20  talk about wetlands, here are the facts about wetlands.  You

10:10AM 21  want to talk about this particular piece of wetlands.

10:10AM 22         We sent experts out.  We had experts do drive-bys

10:10AM 23  on wetlands.  What I mean drive-bys, they went out, they'd walk

10:10AM 24  it.  They'd get permission.  They'd check it out.  They'd say,

10:10AM 25  okay, this is Louisiana wetlands, it was impacted by oil,

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 69 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/14/12 Page 69 of 328

68

10:10AM 1    etcetera.

10:10AM 2    But, remember, the *Reed* factor doesn't even

10:11AM 3    require you to have done discovery in order to settle, but

10:11AM 4    we're way beyond that.

10:11AM 5    Factor Number 4, plaintiffs' success on the

10:11AM 6    merits is uncertain; the settlement offer is substantial money

10:11AM 7    now.  No settlement in history has done what we've done here,

10:11AM 8    Your Honor.

10:11AM 9    Factor Number 5, the settlement is at the upper

10:11AM 10   end of the range of possible recovery, unquestionably within a

10:11AM 11   reasonable range.

10:11AM 12   Our experts on both sides say that if this went

10:11AM 13   to trial, it would be very uncertain results for many, many

10:11AM 14   members in this class.

10:11AM 15   We have presumed causation in Zone A.  We've

10:11AM 16   presumed causation.  It's irrebuttable.  You know as well as I

10:11AM 17   do, Your Honor, how many people come in and think they have got

10:11AM 18   a claim damage for economic loss; but, when the facts come out,

10:11AM 19   they had a bad year because they lost their key manager, they

10:11AM 20   had a bad year because the street was being repaired in front

10:11AM 21   of them, whatever reason.

10:11AM 22   We're presuming causation for whole sections of

10:11AM 23   the settlement class depending on where you reside and the

10:12AM 24   nature of your business.  Our experts say, the joint experts,

10:12AM 25   it exceeds the *Reed* factor.

10:12AM  1          Then, the opinions of class counsel, class

10:12AM  2    representatives.  We not only have their opinions, we have

10:12AM  3    expert opinions, and those are all laid out before the Court.

10:12AM  4          So in terms of the law, on each factor under

10:12AM  5    *Reed* -- and, you know, class settlement can be approved without

10:12AM  6    ticking the box on all six *Reed* factors -- but for each factor

10:12AM  7    under *Reed*, the evidence before the Court satisfies each of the

10:12AM  8    *Reed* factors.  Indeed, it exceeds them.

10:12AM  9          So now we get to the experts.

10:12AM 10          What's important about the experts?  Well, we

10:12AM 11    have the nation's leading experts.

10:12AM 12          Professor Miller, from NYU:  "The single most

10:12AM 13    impressive class action settlement I've observed in nearly

10:12AM 14    30 years as a scholar, practitioner and teacher in the field."

10:12AM 15          Professor Issacharoff:  "An extraordinary

10:12AM 16    achievement that realizes the great objectives behind

10:12AM 17    court-supervised class settlements."

10:12AM 18          They are right.

10:12AM 19          We had seafood experts.  Professor Tunnell, a

10:13AM 20    marine biologist who was at Texas A&M, now in Corpus Christi;

10:13AM 21    Professor Smith from Duke University; Mr. Pearson, 40 years

10:13AM 22    experience, he studied the effects of oil on herring.

10:13AM 23          We have property and environmental experts:

10:13AM 24    Harold Leggett, Ph.D., biologist and former Secretary of the

10:13AM 25    Louisiana Department of Environmental Quality; Elliott Taylor

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 71 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 70 of 329

70

10:13AM 1   and Tre' Wharton, these are wetlands guys; Mr. Dent, a real

10:13AM 2   estate expert; and, Alan Jeffrey, an expert in geochemistry and

10:13AM 3   oceanography.

10:13AM 4           Now, in terms of the wetlands issue, why is

10:13AM 5   Louisiana different than wetlands in other states?  Well,

10:13AM 6   that's based on the expert work.  That was a negotiated issue,

10:13AM 7   but it's based on the experts.

10:13AM 8           The experts were pretty clear about there are

10:13AM 9   just some fundamental differences that go to the heart of why

10:13AM 10  you treat them somewhat differently.  There are ecological

10:14AM 11  differences.  There are geomorphological differences between

10:14AM 12  wetlands in Louisiana, they open on bays, there aren't the

10:14AM 13  protection of certain islands, etcetera.

10:14AM 14          Coastal zone wetlands outside of Louisiana area

10:14AM 15  really more like beach areas.  There are scant differences in

10:14AM 16  terms of whether the oil was the heaviest or not heaviest.

10:14AM 17  Wetlands in coastal Louisiana had more oil than anyplace else.

10:14AM 18          These were rationally-based distinctions drawn in

10:14AM 19  light of the expert analysis.  But just because you're a

10:14AM 20  wetland outside of Louisiana doesn't mean you're not

10:14AM 21  compensated; you're just compensated differently to account for

10:14AM 22  the fact and expert-based differences that we marshaled in

10:14AM 23  terms of the negotiations at the time.  Those are before

10:14AM 24  Your Honor in the reports of Mr. Wharton and Mr. Taylor.

10:14AM 25          We have a subsistence expert, Laura Kelley from

Tulane University.

We have a hospitality expert, Mr. Landry, 43 years in the business, long-time person in the Gulf, serves on the Board of the University of New Orleans School of Hotel, Restaurant and Tourism Administration.

We have economists:  Dr. Richardson, LSU, Professor of Economics; Dr. Fishkind, from the University of Florida.

Holly Sharp, Professor of Tax at Tulane University, long-time resident here, very knowledgeable about the local economics and businesses.

James Henley, the Mississippi-based CPA, attorney and pastor, and the U.S. Chapter 13 Bankruptcy Trustee.

Now, as Your Honor knows, a Chapter 13 Bankruptcy Trustee sees a lot of small businesses, a lot of small individuals.  I mean, they know the economics, and they know what is precisely at issue.

I daresay, Your Honor -- we have Mr. Monger, who I've commented on; John Perry, who I've commented on; and, then Mr. Lamonica, General Counsel to LSU, the Guardian Ad Litem -- I don't know of any finer set of experts that the Court could have had someone present to us.

Finally, the deficiencies and quality of the opt-outs and objections.

So there are opt-out issues.  1,754 purported

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 73 of 329
Case 2:10-md-02179-CJB-JCW Document 13892-8 Filed 12/15/14 Page 73 of 328

72

objectors have opted out.  We'll give you the final numbers in about a week or so.  But, Your Honor foreshadowed this is a problem, you can't object and then opt out.

More than 200 opt-outs have revoked their opt-out decision.  We've got people wanting to come back in, and they are entitled to come back in for a certain period of time.  Some opt-outs are by nonclass members.

Now, there are very few valid opt-outs.  40 percent by the opt-outs are represented by just four law firms, 20 percent alone by a lawyer named Mr. Coon.

This is the data as of last night.  We've asked to verify it over the course of the next week; but, directionally, this is the data that is going to remain basically the same.

Let's talk a little bit about Mr. Coon.  Total attempted opt-outs, 10,765; but, his clients didn't sign those forms, notwithstanding your Court Order, which is a binding order.  He signed them, robo signature.

Now, 2,588 were signed by potential class members; but, they've signed releases.  Some have.

Then, 365 settlement program claimants.

So what's poor Mr. Juneau supposed to do?  He's got these claimants before him represented by Mr. Coon, and now they are trying to opt out?  I don't know how that works.  I've never seen that before.

10:17AM  1          Many objections are invalid.  Most objectors did

10:17AM  2     not comply with the Court's Preliminary Approval Order.  Many

10:18AM  3     want to join in the settlement, maybe lack standing.  Many are

10:18AM  4     not in the class.  Many have opted out.  Then some objectors

10:18AM  5     argue that the settlement is too generous, which is not a valid

10:18AM  6     objection, to say the least.

10:18AM  7          Now, the vast majority of purported objectors are

10:18AM  8     mass objectors, 97 percent by just four law firms.  Again,

10:18AM  9     Mr. Coon's.  Let me just talk about Mr. Coon, since he has so

10:18AM 10     many.

10:18AM 11          The Court's Orders, Preliminary Approval Order,

10:18AM 12     Paragraph 38 and 39 said two things:  If you want to opt out,

10:18AM 13     the client has to sign; otherwise, it's invalid.  Every case in

10:18AM 14     the last five or ten years that's faced that issue has said

10:18AM 15     that's right, the most recent case being the Sixth Circuit that

10:18AM 16     said attorneys' signatures don't count.

10:18AM 17          So the people he opted out by signing his name

10:18AM 18     automatically, that's not a valid opt-out, doesn't count.

10:18AM 19          The problem with the objectors is the Court's

10:18AM 20     Order also specified what you have to do to object, and he

10:18AM 21     didn't do that either.  So those objections don't count either.

10:19AM 22     They are not valid objections.

10:19AM 23          We will file next week some of the correspondence

10:19AM 24     we've had with Mr. Coon, Mr. Herman and others of us over the

10:19AM 25     last several days, because we don't know what he really intends

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 75 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 75 of 328

74

10:19AM 1    here.  He's reserving all of his rights to opt in, opt out;

10:19AM 2    but, he doesn't have those rights.

10:19AM 3             The Court set the rights he has under the Court's

10:19AM 4    Order.  His only obligation and his only right was to comply

10:19AM 5    with the Court's Order on behalf of his clients.

10:19AM 6             At 6:15 last night, for example, we learned that

10:19AM 7    Garden City had just received a delivery, what appeared to be

10:19AM 8    82 opt-out revocations by Mr. Coon.  He didn't validly opt them

10:19AM 9    out to begin with; but, apparently, now they're opting back in.

10:19AM 10            When you strip it all away and ask which ones of

10:19AM 11   the clients he represents validly objected, it's a very small

10:19AM 12   number, and which ones validly opted out, it's an even smaller

10:19AM 13   number.  But he didn't have the option of ignoring the Court

10:19AM 14   Order, nor did his clients.

10:20AM 15            None of the objectors satisfied their burden of

10:20AM 16   proving the validity of their objections or that they can

10:20AM 17   overcome the massive record evidence of fairness.

10:20AM 18            So here is the bottom line, Your Honor.  If the

10:20AM 19   objectors prevail and this settlement is not approved, then the

10:20AM 20   class will be injured.  For the class members who have already

10:20AM 21   made claims and are still in the cue, where are they going to

10:20AM 22   go?  Who is going to pay them, the objectors' counsel?

10:20AM 23            What day will they get compensated, how much and

10:20AM 24   when?  They have certainty now of a generous nature or

10:20AM 25   uncertainty at some point in time in the future.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 76 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 75 of 329

75

10:20AM  1       How many appeals will they have to go through?

10:20AM  2 Because we will put them through their proof.  If they want to

10:20AM  3 go to court and reject the settlement, they will be put through

10:20AM  4 their proof.  They are entitled to opt out.  I respect that

10:20AM  5 decision if it's a valid opt-out, but we will put them to their

10:20AM  6 proof because we know that many of them cannot prove anywhere

10:21AM  7 close to what they think they can.

10:21AM  8       Crediting the objectors here is not a cost or

10:21AM  9 risk-free exercise.  The objectors, if successful, will succeed

10:21AM 10 in only one thing, injuring the many people in the Gulf who

10:21AM 11 have already been injured once.  Just as Mr. Picou said, they

10:21AM 12 will injure them yet again.

10:21AM 13       Your Honor, based upon the record before the

10:21AM 14 Court, we would respectfully ask that the Court issue a final

10:21AM 15 approval order for the settlement so that Mr. Juneau can

10:21AM 16 continue with his excellent work.

10:21AM 17       We thank Your Honor for your time this morning.

10:21AM 18    THE COURT:  All right.  Thank you.

10:21AM 19       I would like to allow now Mr. Kreller -- well, it

10:21AM 20 was Mr. Kreller, but I think he's asked for Mr. Roberts to

10:21AM 21 speak.  Where is Mr. Roberts?

10:21AM 22    MR. ROBERTS:  Your Honor.

10:21AM 23    THE COURT:  You and Mr. Kreller, as I appreciate it,

10:21AM 24 represent what you've described as direct action seafood

10:22AM 25 plaintiffs.

10:22AM 1     MR. ROBERTS:  That's correct, Your Honor.

10:22AM 2     THE COURT:  You filed a brief in support of the Seafood

10:22AM 3  Compensation Program.  Obviously, we have your written brief,

10:22AM 4  but you have five minutes, okay?

10:22AM 5     MR. ROBERTS:  Thank you, Your Honor.  We appreciate the

10:22AM 6  opportunity to speak in court today.

10:22AM 7          My firm, Faegre Baker Daniels, along with

10:22AM 8  Mr. Kreller here in Louisiana, and Langston & Lott in

10:22AM 9  Mississippi, represent over 1500 commercial fishers and related

10:22AM 10  businesses who are direct action plaintiffs in two cases before

10:22AM 11  this Court, as well as class members.

10:22AM 12          We have a significant number of clients,

10:22AM 13  Your Honor, in each of the fisheries involved in this

10:22AM 14  settlement, shrimp, oyster, crab and finfish.

10:22AM 15          In the shrimp industry in particular, we have a

10:22AM 16  large client base.  In fact, we estimate that our clients

10:22AM 17  account for as much as a third of all the shrimp caught in the

10:23AM 18  Gulf Coast area, so we are obviously keenly interested parties

10:23AM 19  in this case.

10:23AM 20          I want to take the few minutes I have here today

10:23AM 21  to address the Seafood Compensation Program specifically and

10:23AM 22  why we believe that that program, while not perfect and not

10:23AM 23  satisfactory for every single class member, is a fair,

10:23AM 24  reasonable and adequate settlement for the class as a whole,

10:23AM 25  and, accordingly, we do support its approval.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/04/18 Page 78 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 77 of 328

77

10:23AM 1      We make two specific points in our briefing that

10:23AM 2  I simply want to highlight for the Court and to make sure that

10:23AM 3  the record is clear on the evidence that was available to

10:23AM 4  Mr. Perry and Mr. Balhoff and the negotiators of this Seafood

10:23AM 5  Compensation Program.

10:23AM 6      First, Your Honor, is the substantial body of

10:23AM 7  expert opinion and evidence that does support the compensation

10:23AM 8  methodologies used in this seafood program.

10:23AM 9      The second point I'll touch on briefly at the end

10:24AM 10 relates to the difference between this program and what was

10:24AM 11 available at the Gulf Coast Claims Facility.

10:24AM 12     On the first point, Your Honor, the methodologies

10:24AM 13 used under the Seafood Compensation Program we can confirm are,

10:24AM 14 in fact, supported by and consistent with the detailed

10:24AM 15 scientific evidence and analysis provided by experts retained

10:24AM 16 by the plaintiffs and not just BP-hired experts.

10:24AM 17     As detailed in our written submissions, early on

10:24AM 18 in this matter we assembled a team of highly qualified experts

10:24AM 19 to assess the damages to the commercial fishing industry and

10:24AM 20 commercial fishers in particular.

10:24AM 21     That team conducted extensive research, analyzed

10:24AM 22 volumes of data and developed detailed damages methodologies

10:24AM 23 for all four of the Gulf Coast fisheries:  Shrimp, oyster, crab

10:24AM 24 and finfish.  They summarized their conclusions in multiple

10:24AM 25 reports.  All of these reports, Your Honor, were made available

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 79 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 78 of 328

78

10:25AM 1    to the architects of this settlement, Mr. Rice and others on

10:25AM 2    the PSC, BP's team of lawyers and experts, and the

10:25AM 3    court-appointed neutrals, Mr. Perry and his partner,

10:25AM 4    Mr. Balhoff.

10:25AM 5          In addition, our experts engaged in direct

10:25AM 6    discussions with that group of people, including supplying

10:25AM 7    additional data and reality checks to various proposals and

10:25AM 8    models that were floated during the course of the settlement of

10:25AM 9    this program.

10:25AM 10         We have submitted to the Court declarations for

10:25AM 11   three of these experts in support of this settlement.  The

10:25AM 12   first is Mr. Jeff June, our lead expert and one of the foremost

10:25AM 13   authorities in the world on assessing impacts of major oil

10:25AM 14   spills.  Mr. June has been involved in virtually every major

10:25AM 15   oil spill in the world in this same capacity.

10:25AM 16         Mr. Robert Mosher, a certified public accountant

10:25AM 17   whose practice centers on Gulf Coast commercial fishers and has

10:25AM 18   been doing that since 1981.

10:25AM 19         Finally, Mr. Corky Perret, a former long-time

10:26AM 20   government official in both Louisiana and Mississippi, who has

10:26AM 21   intimate knowledge of the Gulf Coast fisheries.

10:26AM 22         All of these experts reached the same basic

10:26AM 23   conclusion, and that is that the settlement methodologies,

10:26AM 24   while not without flaws and not generous, do meet within the

10:26AM 25   bounds of fairness and constitute a fair and reasonable

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 80 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 79 of 329

79

10:26AM 1    compensation plan for the large majority of the class.

10:26AM 2              Indeed, Your Honor, the Seafood Compensation

10:26AM 3    Program does incorporate their work in a couple of important

10:26AM 4    ways.  In particular, the multipliers, or the risk transfer

10:26AM 5    premiums, are highly consistent with Mr. June's views.

10:26AM 6              Secondly, the shrimp compensation methodology in

10:26AM 7    this program is consistent, in large part, with Mr. Mosher's

10:26AM 8    analysis.

10:26AM 9              In summary, Your Honor, this expert evidence

10:26AM 10   provides additional and complete support for approval of this

10:26AM 11   settlement.

10:26AM 12             On the second point, Your Honor, we can affirm

10:26AM 13   from firsthand experience that this program provides

10:27AM 14   compensation to commercial fishers that is substantially better

10:27AM 15   and more than was available under the Gulf Coast Claims fund.

10:27AM 16             Our group focused on attempting to work with

10:27AM 17   Mr. Feinberg and the Gulf Coast Claims Fund early on to get him

10:27AM 18   to develop compensation plans for commercial fishers which were

10:27AM 19   adequate.

10:27AM 20             We provided all of the evidence we provided to

10:27AM 21   this team of negotiators to Mr. Feinberg and his group.  We did

10:27AM 22   have some success in getting the GCCF to increase their

10:27AM 23   compensation levels for commercial fishers; however, GCCF never

10:27AM 24   reached an adequate level.

10:27AM 25             This settlement does provide significantly more

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 81 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 80 of 328

80

10:27AM 1    compensation to the commercial fishing industry, and does so in

10:27AM 2    a much more predictable and transparent way.

10:27AM 3          Your Honor, this fact shows through in the bottom

10:27AM 4    line.  Very few of our clients accepted offers from the GCCF.

10:28AM 5    In contrast, a large majority of our clients have decided to

10:28AM 6    participate in this settlement and will be doing so, and we are

10:28AM 7    pursuing their claims in the program vigorously at this time.

10:28AM 8          For these reasons, Your Honor, we support

10:28AM 9    approval.

10:28AM 10         THE COURT:  Thank you very much, Mr. Roberts.

10:28AM 11         All right.  We're going to now hear from

10:28AM 12   Claims Administrator Juneau, following which we will take about

10:28AM 13   a 15-minute recess, and then we'll come back and hear from the

10:28AM 14   objectors.

10:28AM 15         Mr. Juneau.

10:28AM 16         MR. PATRICK JUNEAU:  Good late morning, Your Honor and

10:28AM 17   Judge Shushan.

10:28AM 18         THE COURT:  Good morning.

10:28AM 19         MR. PATRICK JUNEAU:  It's a pleasure to appear before

10:28AM 20   you today.  At your request, Your Honor, I'm going to make this

10:28AM 21   report that you'd requested I make to the Court as I saw the

10:28AM 22   current status of the charge that you had given to us.

10:28AM 23         Just a little bit by history.  On May 2 of 2012,

10:29AM 24   this Court granted preliminary approval of the proposed

10:29AM 25   settlement and appointed myself as administrator.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 82 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 81 of 328

81

10:29AM  1    In addition, in that Order, there were entities,

10:29AM  2  vendors, if you will, who the Court appointed through the

10:29AM  3  transition process and the continuing process to administer

10:29AM  4  this process.  I have those people here in the courtroom today,

10:29AM  5  the representatives of those appointed entities.

10:29AM  6    After that, Your Honor, you entered an order.  In

10:29AM  7  that order, it was very specific that the program that we were

10:29AM  8  to initiate, that is, to implement the settlement that's been

10:29AM  9  extensively talked about here today, we were to commence

10:29AM 10  operations, and I think it's critical that we get that date in

10:29AM 11  mind, is June 4 of this year.

10:29AM 12    We had two tasks that you assigned to myself and

10:30AM 13  the very competent people that I'm associated with in this

10:30AM 14  matter, Your Honor, to do two things.

10:30AM 15    First of all, it's kind of been the unknown

10:30AM 16  factor in this process, it was the transition from the

10:30AM 17  Gulf Coast Claim Facility, the transition of that material to

10:30AM 18  us.

10:30AM 19    We got records that would go from here to Naples,

10:30AM 20  Florida in the transition.  We have complete access to their

10:30AM 21  data, and we were charged with the responsibility of completing

10:30AM 22  the processing and payment of the claims that were in the midst

10:30AM 23  of being processed and closed at that time.

10:30AM 24    We did that.  I'm going to report to you in a

10:30AM 25  minute the dollar amount that we have processed out through

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 83 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 83 of 329

82

10:30AM 1  that program, a very significant sum of money.

10:30AM 2         Contemporaneously with that activity, that

10:31AM 3  charge, Your Honor, we began the second phase of our committed

10:31AM 4  assignment.  That was to implement this extensive comprehensive

10:31AM 5  program that's been outlined here today, which has been

10:31AM 6  published, been on the web site, been public now for months and

10:31AM 7  months.  It's a very transparent document.

10:31AM 8         So what we did was we knew it involved numerous

10:31AM 9  claims, we knew it involved a lot of subcategories of each

10:31AM 10  claim because -- I think Mr. Roy detailed the multiplicity of

10:31AM 11  the claims that are affected by this program -- the first

10:31AM 12  charge was we knew that it was going to be the collection of

10:31AM 13  literally millions, millions of pages of documents.

10:31AM 14         There is two ways to run the train.  We could go

10:31AM 15  on a slow track, or we could go on a fast track.  The fast

10:31AM 16  track is to develop the technology and so forth insofar as

10:32AM 17  electronically to gather, store and disseminate to the various

10:32AM 18  sources through analysis, that we could do that.

10:32AM 19         We instituted that process.  For example, in

10:32AM 20  Hammond, Louisiana, there is a huge intake center that's

10:32AM 21  operated by Garden City.  As you are well aware and

10:32AM 22  Judge Shushan is aware, because of your supervisory

10:32AM 23  jurisdiction in this matter, I invited each of you to come, and

10:32AM 24  you did come, and you personally toured the complete facility

10:32AM 25  and went step by step through what the process was.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 84 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 83 of 328

83

10:32AM 1    It's a huge, as you are no doubt aware, huge

10:32AM 2    commitment of time and resources to do that.

10:32AM 3    So electronically, we did that and, commensurate

10:32AM 4    with that activity going on, developed the computer models to

10:32AM 5    do the implementation of these various programs that we have.

10:32AM 6    Again, the concept was -- and still is -- was to

10:33AM 7    get things so we get some standardization in what we are doing.

10:33AM 8    So if we have ten people who have ten identical claims, they

10:33AM 9    should get the identical amount of money.  That was the

10:33AM 10   concept.

10:33AM 11   So great activity was expended in detailing those

10:33AM 12   computer models and getting that done.  We've done that.

10:33AM 13   We then created simultaneously the web site

10:33AM 14   that's been accessible to everybody and to the public.  We

10:33AM 15   created the claim forms, instruction booklets, created

10:33AM 16   electronic systems on the filing online, in person, or by mail.

10:33AM 17   It's kind of all-service, 7-Eleven approach.  It's very

10:33AM 18   accessible to people who file claims, and we've gotten them

10:33AM 19   from all sources.

10:33AM 20   All of these models and the testing, then, we

10:34AM 21   developed internally.  The court-appointed system developed

10:34AM 22   that.

10:34AM 23   We then made that accessible to the plaintiffs.

10:34AM 24   We made that accessible to BP.  Both of them did their

10:34AM 25   independent checking.  The object, again, was, it was our

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 85 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 84 of 328

84

10:34AM 1    program, but if someone saw a bug in the program we have that's

10:34AM 2    inconsistent with what was outlined in the settlement

10:34AM 3    agreement, we wanted to know about it.  We have been through

10:34AM 4    that.  We've completed that test.

10:34AM 5         So what happened?  Started taking documents and

10:34AM 6    material in voluminous nature in June.  June 4th was kickoff

10:34AM 7    day.

10:34AM 8         I can report to you today that we issued the

10:34AM 9    first determination in July of that same year, of this year.

10:34AM 10   So June and July, we issued determination letters.

10:34AM 11        So where are we?  To date, we have been able to

10:34AM 12   process in excess of a billion dollars in notices.

10:35AM 13        Let me go through that.  The payments made

10:35AM 14   through the transition process, that was the charge one that I

10:35AM 15   mention to you a minute ago, we processed through our system

10:35AM 16   $405,040,339 -- Cajun language, it's getting big and

10:35AM 17   substantial.  We completed that Phase One.

10:35AM 18        So where are we today on the second phase that

10:35AM 19   you charged us with that has to do with the implementation of

10:35AM 20   this settlement program that's been articulated by the

10:35AM 21   presenters here earlier today?

10:35AM 22        As of 11/6, we're at $952 million-plus.  That's

10:35AM 23   what they were talking about, the bumping of the million

10:35AM 24   dollars.  I guess there's a challenge in everything.  We kind

10:35AM 25   of had an internal challenge went off.  We were trying to make

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 86 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 85 of 328

85

10:36AM 1   the billion when we appeared here today.  Didn't quite make it,
10:36AM 2   but we came darn close.
10:36AM 3           So the net result is $1.3-plus billion have been
10:36AM 4   processed by this activity since the inception of this program,
10:36AM 5   which started on June 4th.
10:36AM 6           Now, let me move for a moment to the next slide.
10:36AM 7   What about the claims that we have gotten, where are we
10:36AM 8   today -- I say today -- as of the 6th?  79,008.
10:36AM 9           Now, you'll notice the climb has been consistent.
10:36AM 10  It's been a steady climbing claim.  That was predictable, we
10:36AM 11  expected that, and that's what is occurring.
10:36AM 12          What do we anticipate?  I guess, if you
10:36AM 13  extrapolate all these statistics, we anticipate a continued
10:37AM 14  regular climb in these numbers.  I think Mr. Roy mentioned a
10:37AM 15  number of a hundred thousand.  I think that's accurate, and I
10:37AM 16  think we'll exceed that, Your Honor.  That's a projection
10:37AM 17  because I'm not the one filing the claim, but we see a steady
10:37AM 18  climb of those claims every day, and it's occurring as we
10:37AM 19  speak.
10:37AM 20          Now, let me move to the next chart.  We have been
10:37AM 21  able to process and issue notices of 36,484 claims.
10:37AM 22          Now, let me define that for you for a moment,
10:37AM 23  Your Honor.  These are claims that we have been through of that
10:37AM 24  number, fairly significant.
10:37AM 25          They come in three categories.  One, they are

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 87 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 86 of 329

86

10:37AM 1    denials.  They are people who are not even in the class.  They

10:38AM 2    are those for other reasons, release and so forth.  We have

10:38AM 3    incomplete and payable.  So they come in three different

10:38AM 4    categories.

10:38AM 5            Let's go to the next chart then, Mike.

10:38AM 6            The next slide, this is dollars payable.  We sent

10:38AM 7    out determination letters.  This is, I think, a fairly

10:38AM 8    significant chart.  It's something that we had anticipated.  I

10:38AM 9    think, if you'll track the reports we've made publicly to the

10:38AM 10   Court, I anticipated it was like putting gas in an engine, and

10:38AM 11   it starts to rev up, and it starts moving, and then you get on

10:38AM 12   the interstate highway and you start moving.  That's what

10:38AM 13   happens in these processes.  That's what we predicted.

10:38AM 14           As you can see the start here, then you see the

10:38AM 15   rapid increase starts about at this point.  The rapid increase,

10:39AM 16   it wasn't just a steady increase and it leveled off, it

10:39AM 17   continued, and I anticipate that continuing.

10:39AM 18           As I indicated earlier, as of the time we did

10:39AM 19   this chart, it was at $952-plus million that we've sent

10:39AM 20   determination letters out thus far.

10:39AM 21           Now, I know the Court was interested, Your Honor,

10:39AM 22   you were interested in a little bit more information about

10:39AM 23   denials and incompleteness, so that we would have a full record

10:39AM 24   here; because there has been some focus on that, why do you

10:39AM 25   have so many incomplete claims, why do we have so much denial.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 88 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 87 of 329

87

10:39AM 1          Mike Juneau has spent a good bit of time on that,

10:39AM 2     and I'm going to ask him to address that part.  He's going to

10:39AM 3     isolate that part out, and I think it will give you and the

10:39AM 4     audience a fairly accurate description of what we see with

10:40AM 5     regard to that part of the program.

10:40AM 6          Mike.

10:40AM 7          THE COURT:  Before he does that, one quick question.

10:40AM 8          What is the acceptance rate that you're seeing on

10:40AM 9     the determination letters?  Where you send out and you offer

10:40AM 10    people an award under this program, what is the acceptance rate

10:40AM 11    back, that you're getting back from the claimants?

10:40AM 12         MR. PATRICK JUNEAU:  Ninety-five percent.  I'll give

10:40AM 13    you a little detail about that later, but we've accurately

10:40AM 14    tracked that.

10:40AM 15         That number goes, Your Honor, from when we send

10:40AM 16    it out and come back, so it's directly related to what goes out

10:40AM 17    and what comes back in.

10:40AM 18         THE COURT:  So you send out a letter.  They have some

10:40AM 19    period of time to decide whether to accept it.

10:40AM 20         MR. PATRICK JUNEAU:  Yes.  We only track it when it

10:40AM 21    comes back in, because there is a time delay in there to get

10:40AM 22    the letter back and the appeal periods and so forth.

10:40AM 23         THE COURT:  Right.  Okay.

10:40AM 24         MR. PATRICK JUNEAU:  Mike.

10:40AM 25         MR. MICHAEL JUNEAU:  Good morning, Judge.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/22/18 Page 89 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 88 of 328

88

10:40AM 1             Just to give some notion of the denial and

10:41AM 2  incompleteness issues, we selected, just by way of example, the

10:41AM 3  individual economic claims and the business claims.

10:41AM 4           THE COURT:  Identify yourself for the record.

10:41AM 5           MR. MICHAEL JUNEAU:  I'm sorry, Your Honor.

10:41AM 6  Michael Juneau.

10:41AM 7           THE COURT:  Young Mr. Juneau.

10:41AM 8           MR. MICHAEL JUNEAU:  Still old, but younger.

10:41AM 9              Let's take the individual economic claims as the

10:41AM 10  first example.  Again, what we're trying to do is just give

10:41AM 11  some sense of denials, some sense of what claims are

10:41AM 12  incomplete.

10:41AM 13              Let's take denials.  We'll look on the right side

10:41AM 14  of this chart here.  This represents the claims that have been

10:41AM 15  denied.  The largest portion, 82 percent were denied because

10:41AM 16  these were claims that had received money from the GCCF and had

10:41AM 17  signed a release.  So they, by definition, are not in this

10:41AM 18  class.  So that's by far the vast majority of claims that have

10:41AM 19  been denied under this program fall within that category.

10:41AM 20              You then can go down to other categories.  The

10:42AM 21  red category are claimants that are in the gaming industry.

10:42AM 22  That classification of business is specifically excluded.

10:42AM 23              The next one is the oil and gas employers.

10:42AM 24  Again, those fell within categories that are excluded.

10:42AM 25              So that gives you some notion of denials.  That's

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 90 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 89 of 328

89

10:42AM 1    the right side of the page.

10:42AM 2              On the left side of the page gives you some

10:42AM 3    picture of those claims that we're processing thus far.

10:42AM 4    Mr. Juneau, the elder, will talk a little bit more about our

10:42AM 5    efforts to make these complete; but, in terms of as they stand

10:42AM 6    now, why are they incomplete?

10:42AM 7              In sum, basically, an individual claimant, in

10:42AM 8    short, has to present a claim form, tax returns, and pay

10:42AM 9    earnings for a 90-day period.  That's what the settlement

10:42AM 10   agreement provides.  It's Exhibit 4 A, actually, in the

10:42AM 11   settlement agreement.  That's the big picture.

10:42AM 12             So what is incomplete?  The blue section that you

10:42AM 13   see would be 34 percent of them have not presented any earnings

10:43AM 14   information or any tax returns or maybe not any of both, either

10:43AM 15   no earnings records, no tax records or none of either one.

10:43AM 16        THE COURT:  In other words, if somebody makes a claim,

10:43AM 17   they are required, they do have to not only make a claim but

10:43AM 18   they have to submit some type of documentation to show they

10:43AM 19   lost, their lost income or whatever they're claiming?

10:43AM 20        MR. MICHAEL JUNEAU:  Correct, Your Honor.  We followed

10:43AM 21   Exhibit 4 A, and those are pretty clearly outlined in the

10:43AM 22   settlement agreement.

10:43AM 23        THE COURT:  You're seeing a number of people that I

10:43AM 24   understand you to say are in some cases not filing any

10:43AM 25   documentation?

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 91 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 90 of 328

90

10:43AM 1      MR. MICHAEL JUNEAU:  Thirty-four percent are providing

10:43AM 2  either no tax records, no earnings records, or neither of both,

10:43AM 3  and they need to require both.  So those are put into that

10:43AM 4  first category.

10:43AM 5          The second category you see is 17 percent.  For

10:43AM 6  those, the earnings records are supposed to be for a 90-day

10:43AM 7  period, a continuous 90-day period.  But, what the settlement

10:44AM 8  program does allow is, if you have gaps if there and are not

10:44AM 9  able to provide for some period of earnings, you're missing

10:44AM 10 that paycheck or whatever, or you don't have a continuous

10:44AM 11 90-day period, there is a form, it's called *an SWS-9 form*, that

10:44AM 12 the person could attest to the fact that, I don't have these

10:44AM 13 records for this gap period, I've searched, I've made diligent

10:44AM 14 efforts, I can't find them.

10:44AM 15         That enables us to skip over that period and

10:44AM 16 still process the claim and go to a different period.  So they

10:44AM 17 are not necessarily 90-day periods.

10:44AM 18         So this next big category, the 17 percent, are

10:44AM 19 those that have gaps; they don't have 90 days of earnings

10:44AM 20 records, and yet they haven't given us the signed attestation

10:44AM 21 that says that they've searched for that.  That just gives you

10:44AM 22 a flavor of the kinds of records that make things incomplete.

10:44AM 23     THE COURT:  Am I correct that there is some sort of

10:44AM 24 proactive outreach?  Do you just send them the letter and say,

10:45AM 25 you're incomplete; or, do you deny it or whatever; or, is there

10:45AM 1   some follow-up by the program?

10:45AM 2       MR. MICHAEL JUNEAU:  Absolutely.  That's what we view

10:45AM 3   with our program is one of our duties, and that's one of our

10:45AM 4   responsibilities.

10:45AM 5           We have teams dedicated to reaching out to people

10:45AM 6   to try to help them solve these incompleteness -- that is part

10:45AM 7   of what we do.  So we have specific groups that call, reach out

10:45AM 8   to the law firms that we deal with.  That is certainly the

10:45AM 9   intent, and that's the practice that we've implemented, both

10:45AM 10  with the individual claims and with respect to the business

10:45AM 11  claims as well.

10:45AM 12          I can talk about that, and Mr. Juneau can as

10:45AM 13  well, but clearly that is part of what the deal is, not simply

10:45AM 14  a notice.  That is not how this is designed and not supposed to

10:45AM 15  be how it's implemented.

10:45AM 16          If I can go to the business claims with the same

10:45AM 17  type of issue.  Again, we're just trying to give some sense of

10:46AM 18  denials and incompleteness.

10:46AM 19          Look on the right side is the denials.  Again,

10:46AM 20  the big blue section, which for business claims is 59 percent,

10:46AM 21  those are businesses that were paid under the GCCF and signed a

10:46AM 22  release; therefore, they are just not eligible.  Either they

10:46AM 23  filed a claim with us, or we've issued a denial because they're

10:46AM 24  not eligible.

10:46AM 25          The next category is in red, 25 percent.  Those

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/04/18 Page 93 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 92 of 328

92

10:46AM 1    are businesses that filed a claim but failed the causation

10:46AM 2    test.  In Zone A, if you're along the coast, Zone A, you don't

10:46AM 3    have to prove causation; but, if you're outside of that, if

10:46AM 4    you're a drugstore in Shreveport, for example, you still are

10:46AM 5    entitled to make a claim, but the settlement agreement has

10:46AM 6    requirements.  Your financial statement is supposed to show a

10:46AM 7    drop and then an increase.  It's a causation test.

10:46AM 8              So this red category are those that are outside

10:46AM 9    Zone A but don't meet that causation test.  So that's the next

10:46AM 10   biggest reason for denials.

10:46AM 11        THE COURT:  Just, if you would, I'm not trying to rush

10:46AM 12   you, but we need to try to move this along.  Give me just the

10:47AM 13   major points on the incompleteness.

10:47AM 14        MR. MICHAEL JUNEAU:  For businesses, primarily the blue

10:47AM 15   area is 40 percent are the missing portions of profit and loss

10:47AM 16   statements or tax returns.

10:47AM 17             Again, businesses are required to produce a claim

10:47AM 18   form, tax returns and monthly profit and loss statements.  If a

10:47AM 19   business does not keep monthly profit and loss statements,

10:47AM 20   Judge, they can present alternate source documents, their bank

10:47AM 21   statements, whatever alternate source documents, and our

10:47AM 22   program will help them create those kind of monthly expenses.

10:47AM 23             The settlement agreement provides some

10:47AM 24   requirements for monthly expenses, and we'll help them do that.

10:47AM 25   If they don't have monthly profit and loss statements, our

10:47AM 1    program with do it.

10:47AM 2                They have two ways to do that.  They can go out

10:47AM 3    and hire an accountant to create those things, and the program

10:47AM 4    reimburses those accounting expenses; or, we, ourselves, the

10:47AM 5    accountants working within our program, will help them do that.

10:47AM 6                So that's the major reasons.

10:47AM 7                The next one is some sales and use records.

10:48AM 8    Those are required for retail --

10:48AM 9         THE COURT:  Essentially, they're just not submitting

10:48AM 10   the required documentation or even an alternative, and you have

10:48AM 11   to follow up with them?

10:48AM 12        MR. MICHAEL JUNEAU:  That is the largest percentage;

10:48AM 13   actually, the blue and the red.  Seventy percent of the

10:48AM 14   business claims are the financial records that are not

10:48AM 15   complete.

10:48AM 16        THE COURT:  All right.  Very well.  Thank you.

10:48AM 17        MR. PATRICK JUNEAU:  Now, Your Honor, you had inquired

10:48AM 18   earlier.  Some of this has been addressed, and I'm not going to

10:48AM 19   be duplicitous here, but you talked about the opt-outs.  I

10:48AM 20   wanted to give you a short report on that.

10:48AM 21                We have received -- and, as you know, this stuff

10:48AM 22   is being received as we speak -- approximately -- I'm going to

10:48AM 23   give you a round number -- approximately 25,000 opt-outs.

10:49AM 24                Our initial review, just initial review of that,

10:49AM 25   clearly indicates that at least 50 percent of those, at least

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 95 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 94 of 328

94

10:49AM 1    50 percent of those do not comply with the Court order insofar

10:49AM 2    as a signature and a declaration.  That's first.  So the 25 is

10:49AM 3    automatically a reduced in half number.

10:49AM 4            We're doing a lot more analysis, I think

10:49AM 5    Mr. Godfrey referred to that earlier, to get accurate numbers

10:49AM 6    in that regard, because then we've got releases to consider in

10:49AM 7    there, we've got whether they're even in the class to consider

10:49AM 8    in that regard.

10:49AM 9            But then you asked me to report, Your Honor, and

10:49AM 10   I'll just you give our analysis, you asked me to look at the

10:49AM 11   largest group of those opt-outs and just make some independent

10:49AM 12   analysis about that, and that's what we did.

10:49AM 13           If you look at that, this is the group that we

10:50AM 14   reviewed.  The largest opt-out was by Mr. Coon, and the opt-out

10:50AM 15   submissions were then 10,765.

10:50AM 16           We took out the ones that were not properly

10:50AM 17   signed pursuant to the Court Order.  That's that 7,928.  There

10:50AM 18   were a subset there that 28 weren't signed.  Then we took out

10:50AM 19   the releases that we knew -- under the Gulf Coast Claims

10:50AM 20   Facility, we had releases that were signed with a program they

10:50AM 21   had filed in this program, and there were duplicate numbers, so

10:50AM 22   we automatically knew that we were down to 2,588, the largest

10:50AM 23   subset of what that could be.

10:50AM 24           It really doesn't show on there, but the circle

10:50AM 25   on the left, just an analysis of what those claims were in the

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 96 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 95 of 328

95

10:50AM 1    various categories that I outlined above.  If you go to the

10:51AM 2    right, on the side over here, it shows you that --

10:51AM 3           THE COURT:  You need better colors next time,

10:51AM 4    Mr. Juneau, bolder colors on your chart.

10:51AM 5           MR. PATRICK JUNEAU:  Yes, sir.  I think everybody in

10:51AM 6    the vendor world knows that I'm electronically challenged.  I'm

10:51AM 7    testing that today.

10:51AM 8           THE COURT:  I offered to give Mr. Juneau a laser

10:51AM 9    pointer, but he said he would use his ballpoint pen.

10:51AM 10           MR. PATRICK JUNEAU:  No, I told you I had an arthritic

10:51AM 11    finger, is what I told you, Judge.

10:51AM 12             This chart just simply shows, Your Honor, and

10:51AM 13    this is significant, that the people of that group who have

10:51AM 14    filed in the *Deepwater* program are only 378 people.

10:51AM 15             So after I got that, I got curious about that.  I

10:51AM 16    went and looked at the records Mr. Coon's office has filed.

10:52AM 17    The only thing we have with our office is 1,378 claims.

10:52AM 18             We've sent out 178 eligibility notice for

10:52AM 19    payments on those claims.  That totals $17-plus million.

10:52AM 20    Mr. Coon has responded -- his office, rather, has responded to

10:52AM 21    those.  They've accepted -- 64 of those were accepted.  We're

10:52AM 22    waiting for the acceptance from the balance to pay.  He's asked

10:52AM 23    for reconsideration on four of the ones that, you know, we sent

10:52AM 24    out.

10:52AM 25             So, if you do the extrapolation number in terms

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 97 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 96 of 328

96

10:52AM 1   of a percentage, that's a 95 percent acceptance rate on the

10:52AM 2   claims he had.

10:52AM 3        THE COURT:  Let me just ask you this to focus it.  I

10:52AM 4   think what I'm seeing here is that, of all the purported

10:52AM 5   opt-outs that could possibly be valid, it's in the neighborhood

10:53AM 6   of 2588 of those opt-outs; and, of those 2588, only 378 of

10:53AM 7   those persons or claimants have even filed claims with your

10:53AM 8   program, right?

10:53AM 9        MR. PATRICK JUNEAU:  That's correct, Your Honor.

10:53AM 10       THE COURT:  So the others haven't even attempted to

10:53AM 11  file claims or be paid or anything?

10:53AM 12       MR. PATRICK JUNEAU:  We don't have them.

10:53AM 13       THE COURT:  Right.  Because one of the complaints is

10:53AM 14  that you haven't responded to those claimants quickly enough.

10:53AM 15       MR. PATRICK JUNEAU:  Yes, sir.

10:53AM 16       THE COURT:  But you can't respond if they don't file a

10:53AM 17  claim, I suppose, right?

10:53AM 18       MR. PATRICK JUNEAU:  That's a true statement, Your

10:53AM 19  Honor.

10:53AM 20       THE COURT:  Do you have any idea who those other

10:53AM 21  2,200 people are?

10:53AM 22       MR. PATRICK JUNEAU:  No, sir.  The only thing we know,

10:53AM 23  as Mr. Godfrey articulated that earlier, according to the

10:53AM 24  process, we have a name, we have an address, and just some

10:53AM 25  basic information.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 98 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 97 of 328

97

10:53AM 1      THE COURT:  I've seen it.  There was a spreadsheet that

10:54AM 2  was submitted along with an en masse opt-out, a spreadsheet of

10:54AM 3  just names and addresses, but you have no information on those

10:54AM 4  people, whether they are even in the class or not?

10:54AM 5      MR. PATRICK JUNEAU:  No, sir.  That's what I'm saying.

10:54AM 6  I'm not telling you those are valid, have anything to do with

10:54AM 7  this class at all.  They could be totally out of this class.  I

10:54AM 8  don't know yet.

10:54AM 9      THE COURT:  You have no way of knowing?

10:54AM 10      MR. PATRICK JUNEAU:  No.

10:54AM 11      One last comment, so that the record will be

10:54AM 12  straight, Your Honor.  Someone had articulated here earlier

10:54AM 13  that when this was sent to us, this group with the spreadsheet

10:54AM 14  and so forth, that I have it in my file, there was a

10:54AM 15  reservation put in the letter to us, we are sending you these

10:54AM 16  documents, but we are reserving all other rights we may have,

10:54AM 17  and so forth.

10:54AM 18      The point about that is, there is a legal

10:54AM 19  question of whether what we have of any of that subset of

10:54AM 20  people are even valid opt-outs.  That's an issue.

10:54AM 21      THE COURT:  I've seen that letter.  It says, we're

10:55AM 22  opting out those people, but they reserve all their rights

10:55AM 23  under the settlement, right?

10:55AM 24      MR. PATRICK JUNEAU:  That's correct, in essence.

10:55AM 25      THE COURT:  I can't get my brain around that one yet,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 01/02/18 Page 99 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 99 of 328

98

10:55AM 1   what that means, but anyway.

10:55AM 2       MR. PATRICK JUNEAU:  Your Honor, in the last part was a

10:55AM 3   question you had already asked, but just so that it will be

10:55AM 4   abundantly clear, for those claims where we issued payable

10:55AM 5   notices, we have experienced a 95 percent acceptance rate,

10:55AM 6   which means that those who have received notice award,

10:55AM 7   95 percent of the responses we got specifically there have been

10:55AM 8   favorable, accepting the calculated amount.  That happens to be

10:55AM 9   a fact.  I know that's a fact.

10:55AM 10      THE COURT:  Mr. Juneau, I have two simple questions for

10:55AM 11  you.  I'm not going to ask you how old are you.  I'm going to

10:55AM 12  ask you, how long have you been doing this type of work in

10:55AM 13  terms of claims administration and mass torts and class actions

10:55AM 14  and that sort of thing?

10:56AM 15      MR. PATRICK JUNEAU:  Well, if you had asked the first

10:56AM 16  question, I would have taken the Fifth Amendment.

10:56AM 17          But the answer to your second question, Your

10:56AM 18  Honor, I've been doing this for about 27 years.  I was

10:56AM 19  initially the special master in Combustion, Inc., which was the

10:56AM 20  big environmental case.  I'd say 27 years of being a special

10:56AM 21  master in mass class actions and complex matters.

10:56AM 22      THE COURT:  You've been involved even longer than that

10:56AM 23  as a lawyer, obviously --

10:56AM 24      MR. PATRICK JUNEAU:  Yes, sir.  Forty-plus years.

10:56AM 25      THE COURT:  -- both in mass torts, class actions,

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 100 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/11/12 Page 99 of 328

99

10:56AM 1  complex litigations, right?

10:56AM 2      MR. PATRICK JUNEAU:  Yes, sir.

10:56AM 3      THE COURT:  Have you ever before, either as a lawyer or

10:56AM 4  as a claims administrator, seen a program where, in advance of

10:56AM 5  even court approval, whether or not the court has approved this

10:56AM 6  settlement, there is a claims administration office set up, and

10:56AM 7  claims are being paid?

10:57AM 8      MR. PATRICK JUNEAU:  No, sir.  I can tell you, not one

10:57AM 9  case, and I think I've been maybe a special master 40 or

10:57AM 10  45 times, from California, to the East Coast, to Minnesota, I

10:57AM 11  have never, ever been in a case and never heard of a case --

10:57AM 12  there may be one, but not to my knowledge -- that ever

10:57AM 13  authorized the processing and payment of claims before a

10:57AM 14  fairness hearing.  This is the first.  This is the first case

10:57AM 15  I've ever been involved in.

10:57AM 16      Which means you're a year ahead of the learning

10:57AM 17  curve and a year ahead of the timeline in getting the money

10:57AM 18  out.  That's number one.

10:57AM 19      The second part of your question was, in terms of

10:57AM 20  when allocations go out and the acceptance rate, I have never

10:57AM 21  had, in all of the cases I've been involved in, nor any of the

10:57AM 22  ones that I have knowledge of, have approached that acceptance

10:57AM 23  rate.

10:58AM 24      THE COURT:  How would you compare this settlement

10:58AM 25  program, from your perspective being involved in this one and

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 101 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 100 of 328

100

10:58AM 1   being involved in other ones, in terms of the speed, I guess,

10:58AM 2   with which it has started, got up and running, and the speed

10:58AM 3   with which it's paying claims?

10:58AM 4        MR. PATRICK JUNEAU:  Well, in the railroad world, I

10:58AM 5   would say this is the Panama Limited of processes.  I've never

10:58AM 6   been involved in a project that has gotten up this quick, had

10:58AM 7   the involvement with the volume we had to deal with, and to

10:58AM 8   either have started it earlier or gotten it paid this quickly.

10:58AM 9   It's been a remarkable experience for me.

10:58AM 10       THE COURT:  Thank you very much.

10:58AM 11       MR. PATRICK JUNEAU:  Thank you very much, Your Honor.

10:59AM 12           Your Honor, if I could, just for purposes of the

10:59AM 13  record, I would like to submit to the Court, this is just a

10:59AM 14  summary of my oral report that I've made, so that we'll have

10:59AM 15  this for the record.

10:59AM 16       THE COURT:  We'll attach that as Claims Administrator 1

10:59AM 17  to the hearing and introduce it.

10:59AM 18       (WHEREUPON, at this point in the proceedings,

10:59AM 19  Exhibit Claims Administrator 1 was admitted.)

10:59AM 20       THE COURT:  We're going to take a recess now of about

10:59AM 21  15 minutes.  It's about 11 o'clock.  We'll back come back at

10:59AM 22  11:15 and hear from the objectors.

10:59AM 23       THE DEPUTY CLERK:  All rise.

10:59AM 24       (WHEREUPON, at 10:59 a.m., the Court took a recess.)

11:16AM 25       THE DEPUTY CLERK:  All rise.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 102 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 101 of 328

101

11:16AM 1      THE COURT:  Everybody please be seated.  We're back in

11:16AM 2  session.  We'll move on to the objectors who have been allotted

11:16AM 3  time.

11:16AM 4      The first one is Mr. Stuart Smith to discuss

11:17AM 5  objection regarding the economic loss zone issues.

11:17AM 6      Let me make sure I understand.  Before you get

11:17AM 7  into your presentation, Mr. Smith --

11:17AM 8      MR. SMITH:  Yes, sir.

11:17AM 9      THE COURT:  -- describe to me or tell me, who are your

11:17AM 10  clients in this?  We're talking now about the economic

11:17AM 11  settlement.  Who are your clients?  Who do you represent?

11:17AM 12      MR. SMITH:  We represent a lot of different businesses

11:17AM 13  in Destin and in the Keys and along the Florida coast,

11:17AM 14  Your Honor, primarily.

11:17AM 15      THE COURT:  These are people that have not opted out,

11:17AM 16  right?

11:17AM 17      MR. SMITH:  These are people that have not opted out,

11:17AM 18  yes, sir.

11:17AM 19      THE COURT:  These are people who, as I understand it,

11:18AM 20  the issue is that they are not included in a certain zone or

11:18AM 21  certain zones; they are not included in -- give me the nub of

11:18AM 22  it first.

11:18AM 23      MR. SMITH:  Yes, sir.  There is an intraclass conflict

11:18AM 24  between the people in Zones A and B and Zones C and D.  We

11:18AM 25  represent clients in Zones C and D that are not being treated

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 103 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 102 of 328

102

11:18AM 1    fairly because of certain provisions of the settlement

11:18AM 2    agreement, which I'm prepared to describe for you today.

11:18AM 3            THE COURT:  All right.  Go ahead.  So your clients are

11:18AM 4    in Zones C and D.

11:18AM 5            MR. SMITH:  C and D.  And A and B, but we're here to

11:18AM 6    talk about C and D, for the most part, as far as the economic

11:18AM 7    loss zones.

11:18AM 8            We have, obviously, other issues with the coastal

11:18AM 9    property and the other settlements.  I haven't been designated

11:18AM 10   to talk about that.

11:18AM 11           May it please the Court, I'm Stuart Smith.

11:18AM 12           We would like to say that although we very much

11:18AM 13   believe that there should be a settlement in this matter, we

11:18AM 14   are here to discuss what is wrong with the current program and

11:18AM 15   what must be done to improve upon it.

11:19AM 16           We appreciate the Court and designated counsel in

11:19AM 17   the management of the sprawling and unprecedented environmental

11:19AM 18   litigation.  We're here to address the fact that the economic

11:19AM 19   loss zones are gerrymandered.

11:19AM 20           The economic loss zones themselves and the expert

11:19AM 21   opinions filed in support of the economic loss zones are flawed

11:19AM 22   and would not survive a *Daubert* analysis.

11:19AM 23           Also, with respect to the expert reports, they

11:19AM 24   are, in fact, hearsay and not admissible.

11:19AM 25           The settlement zones are inherently unfair and

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 104 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 103 of 328

103

11:19AM 1    treat similarly situated victims very differently based upon

11:19AM 2    arbitrary lines of geography and other factors.

11:19AM 3              Two victims with businesses less than a quarter

11:19AM 4    of a mile apart will find themselves treated disproportionately

11:19AM 5    under this settlement depending upon which side of a county

11:19AM 6    line or state highway they are on or other arbitrary basis.

11:19AM 7         THE COURT:  Are you suggesting that there could never

11:20AM 8    be any kind of geographic zones or lines drawn?

11:20AM 9         MR. SMITH:  No, sir.  No, we're not.  What we're saying

11:20AM 10   is, is that the fundamental premise that BP has made --

11:20AM 11        THE COURT:  That's pretty common in many settlements

11:20AM 12   that you have to draw lines somewhere, and often the geographic

11:20AM 13   line is a common way to accomplish that.

11:20AM 14        MR. SMITH:  Yes, sir.  We agree.

11:20AM 15             The fundamental flaw in the proposal put forward

11:20AM 16   to this Court is that the experts and the parties have told the

11:20AM 17   Court that the zones are based on proximity to the coast.  They

11:20AM 18   are not.

11:20AM 19        THE COURT:  One factor, I believe.

11:20AM 20        MR. SMITH:  Well, if you look at their expert reports,

11:20AM 21   it's the main factor; but, they are not based on proximity to

11:20AM 22   the coast.  They are gerrymandered in a wildly S pattern.

11:20AM 23             We're recommending to the Court inclusion, when I

11:20AM 24   present it, that the economic loss zones truly reflect

11:20AM 25   geography and distance from the coast.  Don't say that it does,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 105 of 329
Case 2:10-md-02179-CJB-JCW Document 3892-8 Filed 11/15/11 Page 104 of 328

104

11:20AM 1    and it really doesn't.  I'll explain why.

11:21AM 2         THE COURT:  So you just want to say anybody within X

11:21AM 3    miles from the coast, a straight line along the coast,

11:21AM 4    regardless of any other factors?

11:21AM 5         MR. SMITH:  Well, I think with respect -- yes, sir.

11:21AM 6         THE COURT:  I'm just trying to understand --

11:21AM 7         MR. SMITH:  Yes, sir.

11:21AM 8         THE COURT:  -- what you're arguing.

11:21AM 9         MR. SMITH:  That is a consideration, and/or a better

11:21AM 10   study of exactly what the economic mix is.  I'll show you some

11:21AM 11   maps that I think will make my point for me.

11:21AM 12        The primary reason we believe that the zones are

11:21AM 13   gerrymandered with respect -- and that there is a class

11:21AM 14   conflict between Zones A and B and C and D is that there are no

11:21AM 15   class representatives in this matter from Zones C or D.

11:21AM 16        Every class representative that's been designated

11:21AM 17   in the matter are in Zone A, who don't have to prove causation.

11:21AM 18   So why would they care if the folks across the street, across

11:21AM 19   Highway 98, have to prove causation or not?  They are getting

11:22AM 20   the best deal possible, Zone A.

11:22AM 21        But yet there is nobody in this case -- and this

11:22AM 22   is a fundamental flaw, and this is why these zones are

11:22AM 23   gerrymandered, because there are no class representatives from

11:22AM 24   Zones C or D in this matter.

11:22AM 25        Now, that creates intraclass conflict between

Case 2:10-md-02179-CJB-DPC Document 23682-8 Filed 02/02/18 Page 106 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 105 of 328

105

11:22AM 1    Zones A and B and Zones C and D.

11:22AM 2         Economic loss zones in the tourism versus

11:22AM 3    nontourism categories are arbitrary, capricious and

11:22AM 4    unreasonable.  It is literally true fact that two identical

11:22AM 5    businesses directly across from street from each other or who

11:22AM 6    directly compete with each other on the beach can receive

11:22AM 7    dramatically different offers under this settlement because of

11:22AM 8    these arbitrary zone lines.

11:22AM 9         This is a perfect example.  These are two welding

11:22AM 10   and fabrication companies that work on boat launches, boat

11:22AM 11   trailers, iron railings and condominiums.  They are

11:23AM 12   competitors, direct competitors for business on the beach.

11:23AM 13        One happens to be located in Zone A in Destin,

11:23AM 14   which is that yellow zone there.  That's Gibson Welding, Sheet

11:23AM 15   Metal and Vent.

11:23AM 16        One happens to be located on the wrong side of

11:23AM 17   Highway 98 in Fort Walton, which for some reason was designated

11:23AM 18   as Zone C, Graham's Welding and Fabrication.

11:23AM 19        Graham's Welding had twice the losses of Gibson,

11:23AM 20   91,000 in calculated losses versus 48,000 in calculated losses;

11:23AM 21   but, when you apply the RTP, Graham's, who had twice the

11:23AM 22   losses, gets less money than Gibson simply because he's in

11:23AM 23   Fort Walton, here in Zone C, and Gibson is in Zone A in Destin.

11:23AM 24        THE COURT:  I'm trying to understand your logic here,

11:23AM 25   because if you admit that you have to draw a line somewhere, if

11:23AM 1   you drew the line where you wanted to draw it, then there could

11:23AM 2   be a business across that highway or that street who could make

11:24AM 3   the same argument, right?

11:24AM 4        MR. SMITH:  Yes, sir.

11:24AM 5        THE COURT:  Where would you draw the line then?  I

11:24AM 6   don't understand the logic of what you're arguing.

11:24AM 7          I understand what you perceive to be some type of

11:24AM 8   inequity, but I don't understand your proposed solution to it.

11:24AM 9        MR. SMITH:  I'll explain.  This is the fundamental

11:24AM 10  problem.  I'm not saying that there is -- necessarily my

11:24AM 11  solution is correct, but BP's expert, Mr. Landry, said the

11:24AM 12  zones are structured to reflect the fact that as distance

11:24AM 13  increases from the coast, the likelihood of damage to tourism

11:24AM 14  business is reduced.

11:24AM 15        Zone A consists of areas where the primary

11:24AM 16  economic activity revolves around the Gulf Coast tourism.

11:24AM 17  Zone C caters to permanent residents.

11:24AM 18        With all due respect, Judge, you know this area.

11:24AM 19  Everybody that lives in south Louisiana knows this area.  The

11:24AM 20  people in Fort Walton are in tourism-related businesses.

11:24AM 21  Despite the fact that what the expert says, the maps, the facts

11:24AM 22  on the ground don't reflect reality, is what we're trying to

11:25AM 23  explain.

11:25AM 24        If you look at this expert's lack of reality and

11:25AM 25  unfairness, you look at Destin, Florida, where two-thirds of

11:25AM 1   the town is designated as Zone C.  Two-thirds of Destin,

11:25AM 2   Florida, is not designated in Zone A as tourism related.

11:25AM 3          Now, Judge, that's impossible.  Their expert in

11:25AM 4   their papers that they filed said that Zone C is for people who

11:25AM 5   primarily deal or give services to local residents.

11:25AM 6          This is downtown Destin, Florida, Highway 98.

11:25AM 7   They took out the airport.  They took out the Indian Bayou Golf

11:25AM 8   Club.  All of these golf courses here are Zone C; but, if

11:25AM 9   you've got a golf course across Highway 98, you get a lot more

11:25AM 10  money, 2.5 RTP.

11:25AM 11         Nontourism businesses, if you're a nontourism

11:25AM 12  business located in Zone C in Destin, Florida, such as

11:26AM 13  weddings, landscaping companies, maintenance companies,

11:26AM 14  different companies that basically provide services for the

11:26AM 15  tourism-related areas, if you were across the street, if your

11:26AM 16  landscaping company was across Highway 98, you would get an RTP

11:26AM 17  of 1.5.  If you're on the other side of Highway 98, you would

11:26AM 18  get an RTP of .25.  It doesn't make any sense.  It's not fair.

11:26AM 19         Another problem with the settlement is this slide

11:26AM 20  shows that an entity located in Destin that now falls into the

11:26AM 21  nontourism classification would receive the same RTP as an

11:26AM 22  entity located in Huntsville, Alabama.

11:26AM 23         For example, if you are in -- Huntsville, Alabama

11:26AM 24  is Zone D.  If you're a nontourism classification in

11:26AM 25  Huntsville, Alabama, then you will get the same RTP as a

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 109 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 109 of 329

108

11:27AM 1    nontourism classification in Destin, such as a Destin beach

11:27AM 2    wedding, condo maintenance and landscaping company.

11:27AM 3            So, basically, if you're a wedding company or a

11:27AM 4    landscaping company in Huntsville, your RTP is exactly the same

11:27AM 5    as if you are --

11:27AM 6            THE COURT:  Do you represent the business in

11:27AM 7    Huntsville, Alabama?

11:27AM 8            MR. SMITH:  I'm just explaining problems.

11:27AM 9            THE COURT:  I'm just asking.

11:27AM 10           MR. SMITH:  I don't have a client in Huntsville,

11:27AM 11   Alabama.

11:27AM 12           THE COURT:  You represent someone, though, down in

11:27AM 13   Destin?

11:27AM 14           MR. SMITH:  Yes, I do.

11:27AM 15           THE COURT:  So isn't the issue whether your clients in

11:27AM 16   that zone in that type of business, whether the settlement is

11:27AM 17   fair, reasonable and adequate as to them, not what somebody

11:27AM 18   else might get?

11:27AM 19           We can always find somebody else that you say,

11:27AM 20   well, I think they are getting too much.  If you're getting an

11:27AM 21   adequate settlement, it doesn't seem like a legitimate

11:27AM 22   complaint to me that somebody else, you believe, is getting

11:28AM 23   more.

11:28AM 24           MR. SMITH:  Normally, you're right, but I think the

11:28AM 25   overwhelming evidence in this case shows systemic problems with

11:28AM 1    the settlement that can be fixed, but they show systemic

11:28AM 2    problems.

11:28AM 3            I will explain why more; but, for example, this

11:28AM 4    map is also showing, if you are -- the tourism/nontourism

11:28AM 5    classification is a problem because if you're a tourism

11:28AM 6    classification in Huntsville, for example, and you own a

11:28AM 7    Christmas store or a taxi cab or an art gallery 300 miles from

11:28AM 8    the coast, you get an RTP of 1.25; but, if you're a Destin

11:28AM 9    beach wedding company, condo maintenance and landscaping

11:28AM 10   company on the Destin peninsula, on the peninsula itself, you

11:28AM 11   only get an RTP of .25.  It's just showing that there's

11:28AM 12   problems with the manner in which they're classifying tourism

11:29AM 13   versus nontourism in Zones C and D.

11:29AM 14           Now, if you look at Slide 7, it shows that the

11:29AM 15   zones are not based on the proximity to the coast and excludes

11:29AM 16   areas that had substantial damage.

11:29AM 17       THE COURT:  Where is the conflict that you talked about

11:29AM 18   earlier?  I don't understand the class conflict.

11:29AM 19           You might argue that somebody is getting paid

11:29AM 20   more or less; but, since the settlement is uncapped, how does

11:29AM 21   what one person or one zone gets affect or diminish what

11:29AM 22   somebody else gets?  I don't understand that because it doesn't

11:29AM 23   seem to me there is any conflict between classes because there

11:29AM 24   is no cap on this settlement.

11:29AM 25       MR. SMITH:  There is a conflict between the classes

11:29AM 1    because the class representatives in the matter, in the

11:29AM 2    economic loss zone category, have a conflict.  They are in

11:29AM 3    Zone A, and they're being put before the Court to represent

11:29AM 4    people in Zones C and D.

11:29AM 5         THE COURT:  But class counsel clearly had a motivation

11:30AM 6    to maximize recovery by people in all classes and categories,

11:30AM 7    it seems to me.  I mean, why wouldn't they.

11:30AM 8              This is not a zero sum game in this settlement.

11:30AM 9    Sometimes there is.  If is there a cap settlement, if there is

11:30AM 10   $100 available, and if I put somebody else in, that means I get

11:30AM 11   less -- somebody else recovers more, I get less -- that's the

11:30AM 12   kind of case where you do get into potential conflicts.

11:30AM 13             But, here, I don't understand how there could be

11:30AM 14   conflicts when the intent was, obviously, to maximize.  Why

11:30AM 15   would they have a motivation to not pay somebody else as much

11:30AM 16   as they could possibly recover?

11:30AM 17        MR. SMITH:  Judge, I'm not going to get into

11:30AM 18   motivations.  I don't know where their personal client base is.

11:30AM 19   These lawyers are not --

11:30AM 20        THE COURT:  Well, you insinuated a lot of motivation,

11:30AM 21   or ill motivation.  I would like to know what the evidence is

11:31AM 22   of that.

11:31AM 23        MR. SMITH:  I never insinuated ill motivation.

11:31AM 24        THE COURT:  Well, you and other objectors have

11:31AM 25   insinuated or flat out argued that there was some sort of

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 112 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 111 of 328

111

11:31AM 1   collusion or something in this case; and, frankly, that strikes

11:31AM 2   me as preposterous, particularly considering the history of

11:31AM 3   this case, the extensive litigation, the lawyers involved,

11:31AM 4   Judge Shushan's involvement.  I mean, if that's what you're

11:31AM 5   suggesting, it's incredible.

11:31AM 6          MR. SMITH:  I didn't come here to argue collusion,

11:31AM 7   Your Honor.  That wasn't my task.  You gave me specific

11:31AM 8   instructions.  There have been allegations made in the

11:31AM 9   record --

11:31AM 10         THE COURT:  Well, I would like to hear what you are

11:31AM 11  suggesting.  You've made the comment that if somebody is on one

11:31AM 12  side of the highway, it sounds like you're saying they threw

11:31AM 13  the other people under the bus or something.

11:31AM 14         MR. SMITH:  That's what happened in Destin, for sure.

11:31AM 15  You've been there.  You know.

11:31AM 16         THE COURT:  I know where Destin is, but, you know, I

11:32AM 17  still don't understand your class conflict argument.  Where is

11:32AM 18  the conflict?

11:32AM 19         MR. SMITH:  The conflict is, is that people in Zones C

11:32AM 20  and D, many of them will never qualify to get a penny in this

11:32AM 21  case, but yet their claims are forever barred.

11:32AM 22             I have a slide on that.  I'll move forward into

11:32AM 23  that slide.

11:32AM 24         THE COURT:  Well, if that's the case, they could have

11:32AM 25  opted out.  You could opt out.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 113 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 112 of 328

112

11:32AM 1       MR. SMITH:  Well, they could have opted out if they had

11:32AM 2  known about it.  But if you look at the --

11:32AM 3       THE COURT:  What do you mean, if they had known about

11:32AM 4  it?

11:32AM 5       MR. SMITH:  Well, Judge, if you look --

11:32AM 6       THE COURT:  This settlement has been pending for

11:32AM 7  months.

11:32AM 8         I mean, you have opted out some clients, correct?

11:32AM 9       MR. SMITH:  We have.  Yes, we have, sir.

11:32AM 10      THE COURT:  Well, if you believe, if you genuinely

11:32AM 11  believe that somebody that is a member of the class, but, for

11:32AM 12  some reason, would not be entitled to any recovery, zero

11:32AM 13  payment, it seems to me that recourse is to opt out.

11:32AM 14      MR. SMITH:  Judge, if you look at the problems that

11:32AM 15  Mr. Juneau brought forward and counsel for BP, BP is very happy

11:32AM 16  today -- he got up and said it -- because out of the million

11:33AM 17  two to two million claims that are out there in these zones

11:33AM 18  that they arbitrarily drew, only 60,000 have filed claims,

11:33AM 19  which means that there is a notice problem or people don't

11:33AM 20  understand.

11:33AM 21       But I can tell you this, that if you're a failed

11:33AM 22  nontourism business or nonseafood business in Zone D, if you

11:33AM 23  went under as a result of this, you get nothing.

11:33AM 24      THE COURT:  Well, then you opt out.

11:33AM 25      MR. SMITH:  Yeah.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 114 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 113 of 328

113

11:33AM 1        THE COURT:  Pretty simple.

11:33AM 2        MR. SMITH:  I understand.

11:33AM 3            But, in other words, I think the Manual for

11:33AM 4   Complex Litigation specifically says there is a problem if you

11:33AM 5   have a settlement that deprives people of their rights and give

11:33AM 6   them no money.  There's no consideration.

11:33AM 7            So for at least these two classes of people, they

11:33AM 8   get no money, no matter what.  No matter what they can prove,

11:33AM 9   no matter how much they --

11:33AM 10       THE COURT:  Why did you not advise them to opt out?

11:33AM 11       MR. SMITH:  Our clients were advised to opt out, yes;

11:33AM 12  but we're saying -- you appointed me --

11:33AM 13       THE COURT:  You told me they didn't opt out.  Did they

11:34AM 14  opt out, or did they not opt out?

11:34AM 15       MR. SMITH:  Some opted out, and some did not opt out.

11:34AM 16           But you appointed me to come here and tell you

11:34AM 17  what the problems are with the economic loss zones on behalf of

11:34AM 18  all objectors.

11:34AM 19       THE COURT:  Go ahead.  Finish your presentation.

11:34AM 20       MR. SMITH:  Basically, this shows you that the zone in

11:34AM 21  Alabama, the zones go 300 miles, greater than 300 miles into

11:34AM 22  the state.

11:34AM 23           You asked me to address exclusion, why people

11:34AM 24  were excluded from the settlement, and problems -- although we

11:34AM 25  didn't necessarily make that argument ourselves, I'm prepared

11:34AM 1  to do it.

11:34AM 2         If you look at the zone on the west coast of

11:34AM 3  Florida, it's only 45 miles deep, and it excludes Orlando,

11:34AM 4  Florida, which sustained significant damages and were receiving

11:34AM 5  money from the GCCF.

11:34AM 6         So it's not an all-inclusive settlement.  I think

11:34AM 7  you know that; but, you asked me to address it, and I have.

11:34AM 8         There is absolutely no reason, other than

11:34AM 9  political, that the entire states of Alabama, Mississippi and

11:34AM 10 Louisiana, the entire states were included, and Florida was

11:35AM 11 basically cut in half.

11:35AM 12        Zone improvement, another big problem with the

11:35AM 13 settlement.  If you are an individual worker in Zone C or D, if

11:35AM 14 your residence is in Zone C or D, you're treated differently

11:35AM 15 than businesses in Zone C or D.  How is that?

11:35AM 16        Workers can petition to have their zoning

11:35AM 17 classification improved.  They can produce evidence that their

11:35AM 18 job is on the beach and that, therefore, they get a higher RTP.

11:35AM 19        Businesses are not provided an opportunity to

11:35AM 20 prove that their revenue streams are from tourism-related

11:35AM 21 businesses and/or a more favorable zone.  We believe that

11:35AM 22 that's an equal protection issue with respect to these

11:35AM 23 entities.

11:35AM 24        One of the solutions we're going to suggest at

11:35AM 25 the end of the day is that businesses, just like workers,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 116 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 15 of 328

115

11:35AM 1    should be able to come forward, if they are in Zone C or D, and

11:35AM 2    prove that their businesses are tourism related on the beach.

11:36AM 3            THE COURT:  Mr. Smith --

11:36AM 4            MR. SMITH:  Yes.

11:36AM 5            THE COURT:  -- you understand, I'm sure, you've been

11:36AM 6    around long enough to know that I have no authority to revise

11:36AM 7    this settlement that's been presented.  I can approve it, or I

11:36AM 8    can disapprove it.

11:36AM 9            MR. SMITH:  Yes, sir.

11:36AM 10           THE COURT:  This is what the parties have reached.

11:36AM 11   This is the agreement they have reached among experienced

11:36AM 12   counsel with a lot of expert advice and a lot of evidence over

11:36AM 13   months and months -- actually, over a year of hard-fought

11:36AM 14   negotiations overseen by Magistrate Shushan.

11:36AM 15           It sounds to me like your gripe is that maybe you

11:36AM 16   weren't in the room, and you maybe would have done things

11:36AM 17   differently, maybe I would have done things differently, but

11:36AM 18   that's not the issue here.

11:36AM 19           So the issue is, do I approve this settlement as

11:37AM 20   fair, reasonable and adequate?  Maybe it's not perfect.  I

11:37AM 21   don't think there is such a thing as a perfect settlement.

11:37AM 22   There is an old saying, don't let perfect be the enemy of the

11:37AM 23   good.

11:37AM 24           MR. SMITH:  You're right, Your Honor.

11:37AM 25           THE COURT:  Is it your desire to have this settlement

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 147 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 14 of 328

116

11:37AM 1    not approved, and you want to go forward with the litigation?

11:37AM 2    You have a right to do that.  Your clients could opt out.

11:37AM 3         I wonder if that's really in your clients' best

11:37AM 4    interests and if you really want to do that?  Is that what

11:37AM 5    you're asking the Court to do?

11:37AM 6         MR. SMITH:  No, sir.

11:37AM 7         Under the Manual for Complex Litigation, the

11:37AM 8    Court can reserve judgment on the final fairness of this

11:37AM 9    settlement, while giving the parties an opportunity to correct

11:37AM 10   minor errors or problems within it.

11:37AM 11        THE COURT:  It sounds like you're saying we need to

11:37AM 12   start over from square one and spend another year and a half

11:38AM 13   negotiating --

11:38AM 14        MR. SMITH:  No, sir.

11:38AM 15        THE COURT:  -- with you in the room, it sounds like.

11:38AM 16        MR. SMITH:  Well, I'll explain to you what we suggest,

11:38AM 17   right now, if you don't mind.

11:38AM 18        THE COURT:  Go ahead.  You've got about another two

11:38AM 19   minutes.

11:38AM 20        MR. SMITH:  I know.

11:38AM 21        Zone A should be redrawn to be more uniform

11:38AM 22   distance from the coast.  In other words, you shouldn't have a

11:38AM 23   Zone A that's ten miles in over here, and then cut it off at

11:38AM 24   Highway 98 in Destin, when the business is on the other side.

11:38AM 25        THE COURT:  I understand that argument.  Go ahead.

11:38AM 1     MR. SMITH:  Zone C and D, class representatives need to

11:38AM 2  be added as representative plaintiffs.  They don't have any.

11:38AM 3  In our opinion, based upon the case law, starting with *Amchem*,

11:38AM 4  that's a fatal problem to this whole deal.

11:38AM 5     THE COURT:  Have you read the declarations and opinions

11:38AM 6  of eminent class action law professors that say that is not a

11:38AM 7  problem in this case?

11:38AM 8     MR. SMITH:  I don't think they addressed this issue,

11:38AM 9  that I saw.

11:38AM 10        The other thing is, is that we have objected to

11:39AM 11  the admissibility of those declarations.

11:39AM 12     THE COURT:  Which I've overruled.

11:39AM 13     MR. SMITH:  Yes, sir.

11:39AM 14        But we believe that, to be fair, that the people

11:39AM 15  in C and D need to have a representative plaintiff in the mix

11:39AM 16  here --

11:39AM 17     THE COURT:  Right.

11:39AM 18     MR. SMITH:  -- to protect their interests, similarly

11:39AM 19  situated.

11:39AM 20        Zone improvement for tourist-related businesses

11:39AM 21  seeking more favorable zones.  In other words, look, we need to

11:39AM 22  give everybody a fair shot.

11:39AM 23        We understand the lines are a little arbitrary

11:39AM 24  over here or there, but, if you are really a tourism, if you

11:39AM 25  are a landscaper in Zone C and you spend your entire time

11:39AM 1   cutting grass in Sandestin, which is Zone A, then you should be

11:39AM 2   able to come to Mr. Juneau and say, hey, my entire business is

11:39AM 3   cutting grass in Sandestin, I'm in Zone C, but, you know, my

11:39AM 4   business is in Zone A, that's not allowed under this settlement

11:39AM 5   agreement.

11:39AM 6          A balanced RTP for nontourism businesses. I will

11:39AM 7   go back. This is the RTP comparison here, Judge. Under

11:40AM 8   tourism, Zone A is 2.5. There's a half a point difference

11:40AM 9   between Zone B, which is two; no difference between Zone C,

11:40AM 10  which is two; and, then Zone D goes to 1.25.

11:40AM 11         If you to go the right, simply because a business

11:40AM 12  is classified under the national classification standards,

11:40AM 13  nothing having to do with local information, they go from

11:40AM 14  1.5 to 1.25, and then a whole entire one is taken off for some

11:40AM 15  unknown reason.

11:40AM 16         The other thing is, is that there have been

11:40AM 17  statements made that the settlements provide more benefits to

11:40AM 18  all of the people that are in them than the GCCF. In fact, if

11:40AM 19  you'll note, the GCCF had a one RTP.

11:40AM 20         So for nontourism businesses in Zones C and D,

11:40AM 21  they are not getting the same deal as they would have gotten

11:40AM 22  from the GCCF.

11:40AM 23         So, finally, we would -- that's where we set a

11:41AM 24  balanced RTP for nontourism businesses. We think that should

11:41AM 25  be adjusted. We also ask that the businesses be allowed to

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 120 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 13 of 328

119

11:41AM 1    challenge nontourism designations.

11:41AM 2              In summary, Judge, we are in favor of the

11:41AM 3    settlement.  There is no doubt about it.  We want to see a

11:41AM 4    settlement go forward.  It's in the best interests of

11:41AM 5    everybody; but, it has to be fair, and it has to be equitable

11:41AM 6    and reasonable.

11:41AM 7         THE COURT:  Thank you very much, Mr. Smith.

11:41AM 8         MR. SMITH:  Thank you.

11:41AM 9         THE COURT:  I had allotted time to Jim Garner on behalf

11:41AM 10   of Coastal and Wetlands Property Zones.  We had a request from

11:41AM 11   him to allow Martha Curtis, and then she asked if she could

11:41AM 12   cede five minutes of her time to Ronnie Penton to divide up

11:41AM 13   Coastal and Wetland Property Zones.

11:41AM 14        MS. CURTIS:  Thank you, Your Honor.

11:42AM 15             As you said, my name is Martha Curtis, and I'm

11:42AM 16   here to voice the objections of those adversely affected by the

11:42AM 17   coastal property zones.

11:42AM 18             Matt, if you'd start, please.

11:42AM 19             These objections are the reasonableness of the

11:42AM 20   zones and the exclusion of certain class members from payment

11:42AM 21   for their loss of use and loss of enjoyment of their property

11:42AM 22   under the class action framework, while similarly situated

11:42AM 23   class members are paid.

11:42AM 24             Next slide, please.

11:42AM 25             The class action settlement is not fair,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 121 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 126 of 328

120

11:42AM 1    reasonable and adequate as to this aspect, which this Court, as

11:42AM 2    you said earlier, Your Honor, must address under *Ayers*, *Reed*,

11:42AM 3    and the *Reed* sixth factor of opinions of absent class members,

11:42AM 4    that was both cited by the Court and the Court's Federal Rule

11:42AM 5    of Civil Procedure 23(e)(2).

11:42AM 6             The sixth factor of *Reed* of the opinions of

11:42AM 7    absent class members have been voiced through dozens of

11:42AM 8    objections as to the reasonableness of the coastal real

11:42AM 9    property zones and exclusions from the same.

11:42AM 10            On behalf of these objectors, who are victims, as

11:42AM 11   Mr. Godfrey talked earlier, they are excluded from the coastal

11:43AM 12   real property zones as currently drawn, and I would ask this

11:43AM 13   Court to conditionally approve the settlement subject to

11:43AM 14   revising the zones as proposed to include them.

11:43AM 15       THE COURT:  Wait a minute.  Let me make sure I

11:43AM 16   understand.  You represent people who are excluded from these

11:43AM 17   zones?

11:43AM 18       MS. CURTIS:  No.  Your Honor, under the coastal real

11:43AM 19   property, it is supposed to address your loss of use and your

11:43AM 20   loss of enjoyment.  If you recall, Mr. Herman was talking about

11:43AM 21   that earlier.

11:43AM 22            At the preliminary hearing -- it says it's

11:43AM 23   supposed to address the impairment of use of enjoyment of

11:43AM 24   people in beachfront.  It is supposed to address the loss of

11:43AM 25   enjoyment and use of enjoyment of beachfront property.

11:43AM 1            And it is a small -- it is actually a small

11:43AM 2  number.  It's a percentage of the tax that you pay.

11:43AM 3          THE COURT:  I'm just asking whether the people you are

11:43AM 4  representing are in or out of the zones?

11:43AM 5          MS. CURTIS:  On the coastal real property zone, my

11:43AM 6  client is out of the zone.

11:43AM 7             You have asked me to speak on behalf of

11:44AM 8  exclusion.  I have been addressed by all the other objectors --

11:44AM 9          THE COURT:  I was under the impression that Mr. Garner

11:44AM 10  represented people who were in the zone who were complaining

11:44AM 11  somehow about the zone.

11:44AM 12             Are they class members, these people?

11:44AM 13          MS. CURTIS:  This is the question, Your Honor, because

11:44AM 14  the class talks about individuals who live and own property in

11:44AM 15  Mississippi, Florida and Alabama.  So they live and own

11:44AM 16  property in Alabama; but, the way the coastal real property

11:44AM 17  zone is drawn, they are not in the coastal real property zone.

11:44AM 18             If you go to the next one.

11:44AM 19          THE COURT:  I'm just trying to understand whether they

11:44AM 20  are in the class or not in the class.

11:44AM 21          MS. CURTIS:  Your Honor, that's actually --

11:44AM 22          THE COURT:  If they are not in the class, again, they

11:44AM 23  have no standing to object.  Their rights are whatever they

11:44AM 24  are.  They are not affected by this settlement.

11:44AM 25          MS. CURTIS:  Your Honor, one of the people you've asked

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 123 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 122 of 328

122

11:44AM 1     me to speak on behalf of, an unrepresented claimant, Ms. Debbie

11:44AM 2     Wilhite, she has both a coastal real property issue, because

11:44AM 3     she's not in the zone, and she has a business economic loss

11:44AM 4     issue.  So she is in the class, definitely in the class, but

11:45AM 5     she's not compensated for coastal real property.

11:45AM 6                   For example, Objection 88, he's in Gulf Shores,

11:45AM 7     Alabama.

11:45AM 8                   The next slide, please, Matt.

11:45AM 9                   If you see the blue, all of the blue, Your Honor,

11:45AM 10    that is in the zone.  There is blue to the left, there is blue

11:45AM 11    to the right.  That arrow is pointing to the property at issue.

11:45AM 12                  Next slide, Matt, please.

11:45AM 13                  This appraisal for that property, which was

11:45AM 14    performed in December 2009, before the spill -- this isn't any

11:45AM 15    post-litigation appraisal report -- this appraisal done before

11:45AM 16    the spill said that that particular property is considered

11:45AM 17    Gulf-front.

11:45AM 18                  Next slide, Matt, please.

11:45AM 19                  That is a view of the property.  That is a view

11:45AM 20    from the second floor balcony.  That is Gulf-front property,

11:45AM 21    Your Honor.

11:45AM 22            THE COURT:  Whose property is this?

11:45AM 23            MS. CURTIS:  This is Mr. Adrian Kornman, my client's

11:45AM 24    property.

11:45AM 25            THE COURT:  I'm sorry?

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 124 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 123 of 328

123

11:45AM 1    MS. CURTIS:  Mr. Kornman lives in New Orleans.  That's

11:45AM 2 his second home.

11:45AM 3    THE COURT:  I thought you were talking about

11:45AM 4 Ms. Wilhite.  You mentioned Ms. Wilhite.

11:46AM 5    MS. CURTIS:  Yes, Ms. Wilhite, we'll get to her.

11:46AM 6     This is Mr. Kornman.  That's the railing around

11:46AM 7 his pool.  That's the view from the second floor balcony, a

11:46AM 8 total unobstructed view of the beach.

11:46AM 9     He lost his use of enjoyment.  He lost his use of

11:46AM 10 the property, which this settlement was supposed to --

11:46AM 11    THE COURT:  That's in Mississippi?

11:46AM 12    MS. CURTIS:  This is in Gulf Shores, Alabama, Your

11:46AM 13 Honor.

11:46AM 14    THE COURT:  Gulf Shores, Alabama.  Is this a property

11:46AM 15 that had oil on the beach?

11:46AM 16    MS. CURTIS:  The beach was oiled, but he doesn't get

11:46AM 17 anything because in this particular --

11:46AM 18     If you go back a slide, Matt, please.

11:46AM 19     The beach across is owned by the Department --

11:46AM 20 Bureau of Land Management.  There is no private property

11:46AM 21 between --

11:46AM 22     As you could go back to the --

11:46AM 23     There is nothing between --

11:46AM 24    THE COURT:  So he doesn't own the beach.

11:46AM 25    MS. CURTIS:  He doesn't own the -- he owns the

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 125 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 124 of 328

124

11:46AM  1     property --

11:46AM  2          THE COURT:  So what we're looking at is not his

11:46AM  3     property.

11:46AM  4          MS. CURTIS:  Well, the railing is his property.

11:46AM  5          THE COURT:  That's the view from his property.

11:46AM  6          MS. CURTIS:  That's the view from his balcony, so I

11:46AM  7     could explain to you what his beachfront property is.

11:46AM  8          THE COURT:  Okay.  Go ahead.

11:46AM  9          MS. CURTIS:  Thank you, Your Honor.

11:46AM 10              Next slide, Matt.

11:46AM 11          So his claims are not materially different, and

11:47AM 12     the class action procedure is used when -- you know, this --

11:47AM 13     again, class property real settlement is one of the smallest

11:47AM 14     compensations of this.  One of the reasons you do class action

11:47AM 15     is because people cannot spend the time and the money to do

11:47AM 16     their own individual cases, *Allison v. CITGO*.

11:47AM 17              Next thing.

11:47AM 18          Mr. Herman, in his presentation, and Mr. Godfrey,

11:47AM 19     in his presentation, says, we're going to be rough and tumble;

11:47AM 20     if you sue us, you're going to do this, and you're going to

11:47AM 21     have to litigate, and you're going to do that.

11:47AM 22          These people cannot do this for the little amount

11:47AM 23     of money that they would get on this coastal real property.  To

11:47AM 24     opt out is not an option for them.

11:47AM 25          This is Ms. Wilhite that I was telling you about,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 126 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 125 of 328

125

11:47AM 1     Your Honor, that called me.  She's an unrepresented objector.

11:47AM 2     She also lives in Gulf Shores.

11:47AM 3                 Next slide, please.

11:47AM 4                 That's the arrow where her property is.  You can

11:47AM 5     see the dark on the slide is water.  She has water to the left

11:47AM 6     of her, water to the right of her, water in front of her

11:47AM 7     property, water behind her property, but she is not blue.  You

11:48AM 8     have to be blue.

11:48AM 9                 Next slide, please.

11:48AM 10                She has canal in front and behind her home.  The

11:48AM 11    canal flows into the lagoon, which flows into the Gulf.  Her

11:48AM 12    close neighbors' claims are covered, but she's excluded.

11:48AM 13                Next slide.

11:48AM 14                I was approached by Mr. Thomas Leohn, as Your

11:48AM 15    Honor might know, an attorney in New Orleans.  He's Objection

11:48AM 16    Number 201.  He has property, a second home in Diamondhead.

11:48AM 17    The zone line in Diamondhead stops at the marsh line.  There is

11:48AM 18    no logical reason for an artificial water boundary.

11:48AM 19                Next slide.

11:48AM 20                That's Mr. Leohn's property.  You can see where

11:48AM 21    it is.  All the orange is covered; but, where that arrow is,

11:48AM 22    that's Mr. Leohn's property in Diamondhead.  It's on the water,

11:48AM 23    but he and the other Diamondhead -- because there are about

11:48AM 24    75 landowners around him -- get nothing under the settlement.

11:48AM 25                Opt out is not an option because what they are

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 127 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 126 of 328

126

11:48AM 1   getting is a percentage of your tax for your loss of enjoyment

11:48AM 2   and loss of impairment, and it's too little to fight

11:48AM 3   Mr. Godfrey and everyone else from multibillion dollar BP over.

11:49AM 4   They should be covered by this class action settlement.  That's

11:49AM 5   the purpose of a class action settlement.

11:49AM 6         THE COURT:  Let me ask you this, but for this

11:49AM 7   settlement, would they have a viable claim?  Putting aside

11:49AM 8   the --

11:49AM 9         MS. CURTIS:  They would have --

11:49AM 10         THE COURT:  Putting aside the value of the claim, do

11:49AM 11   they have a legally viable claim?

11:49AM 12         MS. CURTIS:  Yes, they have a legally valid claim for

11:49AM 13   their loss of -- as Mr. Herman said earlier, they had to pay

11:49AM 14   taxes.  These are all second homes that these people --

11:49AM 15         THE COURT:  It sounds like a stigma case we dealt with

11:49AM 16   recently.

11:49AM 17         MS. CURTIS:  No, Your Honor.  I'm well aware of your

11:49AM 18   ruling denying motions for summary -- you know, granting

11:49AM 19   motions for summary judgment on stigma.  This is -- a lot of

11:49AM 20   people own Gulf-front properties and both rent them out to

11:49AM 21   other people and then use them themselves.

11:49AM 22         So people would get money for your loss of

11:49AM 23   rentals, and the class action settlement acknowledges that you

11:49AM 24   have been impaired in your property use.

11:49AM 25         Mr. Kornman was impaired in his property use from

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 128 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 127 of 328

127

11:49AM 1   sitting on the balcony and looking at the beach without oil on

11:49AM 2   it.

11:50AM 3         THE COURT:  We dismissed the so-called *recreational*

11:50AM 4   *claims*.  I'm not a commercial fisherman, but I go fishing maybe

11:50AM 5   twice a year.  If I wasn't excluded from the claims, I guess I

11:50AM 6   could have that claim.  Or if I had a place somewhere where I

11:50AM 7   could look -- I like to just sit and look out at the water, I

11:50AM 8   like to go swimming in the Gulf of Mexico, whatever, those

11:50AM 9   types of claims have been found not to be legally viable.  How

11:50AM 10  do these claims differ from that type of claim?

11:50AM 11        MS. CURTIS:  He's not out in the water fishing, which,

11:50AM 12  under *Robins Dry Dock* or whatever, trying to have some

11:50AM 13  ownership of the water.  He has ownership in a right to

11:50AM 14  equal --

11:50AM 15        THE COURT:  We're not talking about *Robins Dry Dock*.

11:50AM 16  *Robins Dry Dock* doesn't even apply.  I'm talking about people

11:50AM 17  who just say they lost the opportunity to recreate, enjoy the

11:50AM 18  view, walk on the beach, look out at the water, look at the

11:51AM 19  seagulls.

11:51AM 20             I'm not discounting that people enjoy that kind

11:51AM 21  of thing, and maybe they lost it; but, as a legal matter, those

11:51AM 22  types of claims are not recoverable, at least in my opinion.

11:51AM 23  I've already held that.

11:51AM 24        MS. CURTIS:  I think, as Mr. Herman said earlier, I

11:51AM 25  think it is legally recognizable that they pay taxes, upkeep

Case 2:19-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 129 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 128 of 328

128

11:51AM 1    and everything for this property to be able to do that, and

11:51AM 2    that their property right of peaceful possession was infringed.

11:51AM 3            Again, Your Honor, this goes back to whether it's

11:51AM 4    adequate, fair and reasonable.  Why should the person to the

11:51AM 5    left of Mr. Kornman get it, the person to the right of

11:51AM 6    Mr. Kornman get it, but he not get it?  That is not adequate,

11:51AM 7    fair and reasonable that Your Honor has to have under *Ayers* and

11:51AM 8    *Reed* and Rule 23(e)(2).  That's not fair, adequate and

11:51AM 9    reasonable to have a person to the left and person to right,

11:51AM 10   but you in the middle; just because the Bureau of Land

11:52AM 11   Management owns your beach, you can't own it.

11:52AM 12           THE COURT:  I understand the argument.  Do you have

11:52AM 13   another argument, Ms. Curtis?

11:52AM 14           MS. CURTIS:  Could you keep going, Matt.

11:52AM 15           This is Grand Isle.

11:52AM 16           Go to the next slide, Matt.

11:52AM 17           This is Grand Isle.  I've been also approached by

11:52AM 18   property owners in Grand Isle, Your Honor.  The blue of

11:52AM 19   Grand Isle is in the coastal; the rest of Grand Isle is not.

11:52AM 20   We submit that all of Grand Isle -- if you talk about people

11:52AM 21   who were totally adversely affected by the oil spill, that's

11:52AM 22   ground zero.  We submit that all of Grand Isle should be in

11:52AM 23   coastal.

11:52AM 24           Actually, and Mr. Penton will speak to this, we

11:52AM 25   submit that all of Grand Isle should probably be wetlands

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 130 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 129 of 328

129

11:52AM 1   because the rest of Louisiana is wetlands, and Elmer's Island

11:52AM 2   is wetlands, the other island.

11:52AM 3          THE COURT:  If you're going to let Mr. Penton speak

11:52AM 4   about that, don't speak about that.

11:52AM 5          MS. CURTIS:  I'm just telling people, Your Honor, who

11:52AM 6   contacted me directly after your order, and I feel obligated to

11:52AM 7   talk to them.

11:52AM 8                 If you'd go, Matt, to the next slide.

11:52AM 9                 So this is our solution.  We believe the

11:53AM 10  settlement should include privately-owned properties with

11:53AM 11  unobstructed access to beach or Gulf, privately-owned

11:53AM 12  properties which are located next to bodies of water that flow

11:53AM 13  into or from the Gulf.

11:53AM 14                 Then, as I said, the Grand Isle, I'll let

11:53AM 15  Mr. Penton talk about that further.

11:53AM 16                 Next slide, Matt, please.

11:53AM 17                 You have authority, Your Honor, to impose

11:53AM 18  conditions on approving class action settlement.  We are in

11:53AM 19  favor of this settlement.  We have many clients in this

11:53AM 20  settlement.  We are in favor.  It doesn't just work for these

11:53AM 21  particular people.

11:53AM 22                 You can put these small conditions that we've

11:53AM 23  proposed on it.  The Manual for Complex Litigation,

11:53AM 24  Section 21.61, gives you authority.  Two Southern District of

11:53AM 25  New York cases, *Auction House Antitrust Litigation*, *Initial*

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 131 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 130 of 328

130

11:53AM 1   *Public Offering Securities Litigation*, they say -- they both

11:53AM 2   conditioned approval.  They conditioned approval of class

11:53AM 3   action settlements on parties adopting specific changes

11:53AM 4   identified by the District Court.

11:53AM 5           We ask that you approve it subject to these few

11:53AM 6   specific changes.

11:54AM 7           Your Honor, earlier I gave Ben some of the

11:54AM 8   pictures bound, and the court reporter, and I ask that those be

11:54AM 9   entered into evidence.

11:54AM 10          Thank you, Your Honor.

11:54AM 11      THE COURT:  Now that you've used up your whole

11:54AM 12  10 minutes, you have no time to cede to Mr. Penton; but, I'll

11:54AM 13  give him two minutes, nonetheless.

11:54AM 14          Come on, Mr. Penton.

11:54AM 15      MR. PENTON:  May it please the Court.  Your Honor,

11:54AM 16  Ronnie Penton.

11:54AM 17          If I really have two minutes, I would tell the

11:54AM 18  Court that the State of Louisiana rightfully has a really fair

11:54AM 19  wetland compensation framework.  Unfortunately, the other Gulf

11:54AM 20  States of Mississippi, Alabama and Florida do not.  The

11:54AM 21  unfortunate result of that --

11:54AM 22      THE COURT:  Isn't that based on the differences, at

11:54AM 23  least from what I've read, the differences in the types of

11:54AM 24  wetlands?

11:54AM 25          I've been out in the Gulf and in marshes and the

11:55AM  1    bays enough.  Louisiana is just different.

11:55AM  2         MR. PENTON:  I understand.

11:55AM  3         THE COURT:  I'm not trying to discount the damage to

11:55AM  4    other states at all; but, for the most part, you go to Florida,

11:55AM  5    you go to Mississippi, you go to Alabama, it's mostly beaches.

11:55AM  6    That's why people go over there, for the white sand beaches and

11:55AM  7    the beautiful water.

11:55AM  8              We don't have that here in Louisiana.  We don't

11:55AM  9    have those beautiful beaches and beautiful water.  We've got

11:55AM 10    the brown water from the Mississippi River and marshes and

11:55AM 11    estuaries and all that stuff.

11:55AM 12              It just seems like, generally speaking, it's very

11:55AM 13    different.

11:55AM 14              So the question is, is there a rational basis,

11:55AM 15    not, again, whether I would have drawn the lines differently or

11:55AM 16    not, but whether there is a rational basis for how the parties

11:55AM 17    drew these lines.

11:55AM 18         MR. PENTON:  Judge, there is no doubt that the expert,

11:55AM 19    I think, primarily Mr. Elliott Taylor, in his supplemental

11:55AM 20    declaration, clearly said there was a difference between the

11:56AM 21    marshes and the wetlands in the other the Gulf States than

11:56AM 22    Louisiana.

11:56AM 23              I would say that the states of Mississippi,

11:56AM 24    Alabama and Florida probably would beg to differ with that.

11:56AM 25    They all have coastal wetlands that are very valuable

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 133 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 132 of 328

132

11:56AM 1    ecologically and economically.

11:56AM 2             The fact is this.  Macondo oil attacked the

11:56AM 3    marshland of these other Gulf states.  The attack of

11:56AM 4    hydrocarbon on the delicate, sensitive marshlands, no matter

11:56AM 5    what state it's located in, should have the same rights, should

11:56AM 6    have parity of remedy.

11:56AM 7             We're not asking to reinvent the wheel.  We're

11:56AM 8    asking to consider applying the same framework to those states.

11:56AM 9             Now, what's interesting about it, they say that

11:56AM 10   Louisiana had more oil.  Well, why is more or less oil more or

11:56AM 11   less damage?

11:56AM 12            I mean, all class members don't have the same

11:56AM 13   damage, obviously.  So it's our plea, Judge, that if you are a

11:57AM 14   delineated, designated, regulated marshland, wetland, and you

11:57AM 15   were attacked by Macondo oil, you have a right to be included

11:57AM 16   in this settlement.

11:57AM 17            I resound what others have said.  You don't have

11:57AM 18   the resources, one landowner, to take on the litigation.  It is

11:57AM 19   not beneficial.  It is a burden to have to opt out.

11:57AM 20            Mr. Roy said it clearly, and I appreciate it.  He

11:57AM 21   said, most of these objectors do not want to blow up the

11:57AM 22   settlement.  They want to be included.

11:57AM 23            That goes for the wetland owners in those states,

11:57AM 24   Judge.

11:57AM 25            THE COURT:  Thank you, Mr. Penton.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 134 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 133 of 328

133

11:57AM 1          All right.  Mr. Waltzer.

11:57AM 2          MR. WALTZER:  Good afternoon, Your Honor.  My name is

11:58AM 3     Joel Waltzer -- that's Joe, with an L -- Waltzer,

11:58AM 4     Wiygul & Garside.

11:58AM 5          This Court has asked me to present argument

11:58AM 6     concerning the fairness and adequacy of the Seafood

11:58AM 7     Compensation Program, a claims program that is designed to

11:58AM 8     compensate fishing revenue losses, as well as damage to oyster

11:58AM 9     leaseholder beds and diminution in the value of fishing quotas.

11:58AM 10         I stand before you principally because I

11:58AM 11    represent a great many fisherman in an advocacy group named

11:58AM 12    GO FISH, who is comprised of leading industry groups from

11:58AM 13    across the fisheries, to meet the challenges posed by this oil

11:58AM 14    spill.

11:58AM 15         Over 1800 commercial fisherman have coalesced to

11:59AM 16    share their experiences, culminating in the filing of

11:59AM 17    objections.  These objections were joined by others, including

11:59AM 18    charter boat captains of whom commercial fishermen themselves

11:59AM 19    almost universally regard as one of their own.

11:59AM 20         The fishing communities collectively demand

11:59AM 21    reparation for all of the spill victims, with none excluded,

11:59AM 22    none diminished and none defined away.  We implore the Court to

11:59AM 23    consider the lessons to be learned from the disaster:  That

11:59AM 24    where the consequences of failure are greatest, we prepare and

11:59AM 25    care the most.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 135 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 134 of 328

134

11:59AM 1                BP owes us this additional protection, lest to

11:59AM 2  dishonor the sacrifice of those it already failed.

11:59AM 3                The measures of fairness and accuracy of a

11:59AM 4  settlement in the case can only be viewed in this unique

11:59AM 5  context:  One, the severity of our nation's largest ecological

11:59AM 6  disaster and its impact on commercial fishermen; two, by the

11:59AM 7  disastrous consequences to commercial fishermen if we rely on

12:00PM 8  BP's assurances, and BP's experts understate and speculate

12:00PM 9  wrongly as to how the fishing will recover; and, three, by the

12:00PM 10  values enshrined in the Oil Pollution Act in the aftermath of

12:00PM 11  our last major spill, the *Exxon Valdez*.

12:00PM 12                The central problem with the Seafood Compensation

12:00PM 13  Program began in the negotiation and is now self-evident.  What

12:00PM 14  we're looking to do, to be clear --

12:00PM 15          THE COURT:  You were part of those negotiations,

12:00PM 16  correct?  Discussions?

12:00PM 17          MR. WALTZER:  Yes, I was asked to --

12:00PM 18          THE COURT:  As I recall, you were given opportunity,

12:00PM 19  you had input into the discussions -- in particular, I'm

12:00PM 20  focusing on once we appointed Mr. Perry and Mr. Balhoff as

12:00PM 21  court-appointed neutrals -- to make these allocations; is that

12:00PM 22  accurate?

12:00PM 23          MR. WALTZER:  Your Honor, I have been working for two

12:01PM 24  years to try and get the best result I can for the commercial

12:01PM 25  fishing industry.  That includes giving as much information as

12:01PM 1    I could to Mr. Rice on what I was asked to do, which was to

12:01PM 2    develop models on shrimp.

12:01PM 3            THE COURT:  Wait.  Was the answer to my question yes?

12:01PM 4            MR. WALTZER:  Yes, I met with Mr. Balhoff and

12:01PM 5    Mr. Perry.

12:01PM 6            THE COURT:  That's all I had asked.  Go ahead.

12:01PM 7            MR. WALTZER:  The commercial fishing industry wants a

12:01PM 8    safe end to this process.  What we mean by that is we want to

12:01PM 9    make sure that there is adequate compensation that everyone

12:01PM 10   returns to shore safely; we're not going to leave any vessels

12:01PM 11   out there; we're not going to leave any subcategories of

12:01PM 12   fishermen out there; that they all be adequately and fairly

12:01PM 13   protected.  That is where the problem begins.

12:01PM 14           As we stand here today, there are two classes of

12:01PM 15   Seafood Compensation Program victims that still need this

12:02PM 16   Court's attention and additional help.

12:02PM 17           First, there are those who were most heavily

12:02PM 18   impacted, who live in areas that were most heavily impacted,

12:02PM 19   and have demonstrable reductions in cash; and, second, there

12:02PM 20   are many small scale harvesters and deckhands of all stripes,

12:02PM 21   crabbers and fin fishermen for whom the program is not working

12:02PM 22   currently and is providing very little income replacement.

12:02PM 23           The fundamental issue --

12:02PM 24           Can you go to the next slide, please.

12:02PM 25           The fundamental issue is that the $2.3 billion

12:02PM 1    bucket is not for commercial fishing claims.  It includes other

12:02PM 2    types of claims, including property claims and diminution to

12:02PM 3    the value of a form of a financial instrument called *an IFQ*

12:02PM 4    *quota*, right.

12:03PM 5         You know, those diminish and those create

12:03PM 6    competition for the capped fund, for the capped bucket, the

12:03PM 7    funds in the bucket, the $2.3 billion.  So, necessarily, that

12:03PM 8    which comes out of one pocket will go into another pocket by

12:03PM 9    definition.

12:03PM 10   THE COURT:  Well, except that that's not how this

12:03PM 11   program was put together.  It was put together from the bottom

12:03PM 12   up.

12:03PM 13        Mr. Perry -- again, this wasn't put together by

12:03PM 14   the Court, by the PSC or by BP, and it wasn't a negotiated or

12:03PM 15   mediated settlement of any kind.

12:03PM 16        They took this money and allocated it, Mr. Perry

12:03PM 17   and Mr. Balhoff did.  From their declarations, they looked at

12:03PM 18   each group individually, the fin fishermen, the oyster

12:03PM 19   fishermen, the shrimpers, the oyster leaseholders and so forth,

12:04PM 20   and figured out how much was needed to adequately, fairly

12:04PM 21   compensate each of those groups without reference to what

12:04PM 22   somebody else was getting.

12:04PM 23        I think the problem here, as I see it, the issue

12:04PM 24   that you raised is not so much what your people are getting but

12:04PM 25   what somebody else is getting.  You think the oyster

Case 2:10-md-02179-CJB-DPC Document 23682-8 Filed 02/02/18 Page 138 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 137 of 328

137

12:04PM  1    leaseholders are getting too much, apparently.

12:04PM  2             MR. WALTZER:  No.  I --

12:04PM  3             THE COURT:  Well, that's what your brief says.

12:04PM  4             MR. WALTZER:  I'm making --

12:04PM  5             THE COURT:  Wait a minute.  Wait a minute.  Let me

12:04PM  6    finish.

12:04PM  7             MR. WALTZER:  I'm sorry.

12:04PM  8             THE COURT:  So you're looking at what they are getting

12:04PM  9    instead of focusing on what your clients are getting and

12:04PM 10    whether that's fair, reasonable and adequate.  That's my take

12:04PM 11    on it.

12:04PM 12             I've looked at what Mr. Balhoff and Mr. Perry

12:04PM 13    have done and what they've said, and that's how they did it.

12:04PM 14             If they had separated out the oyster

12:04PM 15    leaseholders, for example, there wouldn't be $2.3 billion in

12:05PM 16    there for fishermen.  That would just be a separate fund.  So

12:05PM 17    you would be right back in the same place.

12:05PM 18             It's not like they are getting a dollar more and

12:05PM 19    you're getting a dollar less.  That's not how it worked at all.

12:05PM 20             So I really don't understand your objection.  In

12:05PM 21    fact, I mean, of all people, you publicly made statements

12:05PM 22    complimenting this settlement soon after it was made, and

12:05PM 23    pointed out that the amount of money in this is -- today, it's

12:05PM 24    at five times -- you said six times the value of the entire

12:05PM 25    catch of the entire seafood industry in Alabama, Mississippi,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 139 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/05/12 Page 138 of 328

138

12:05PM 1    Louisiana and west Florida.

12:05PM 2            So I'm having a little trouble understanding your

12:05PM 3    objection because, again, the focus should be, the question

12:05PM 4    before the Court is not what oyster leaseholders are getting,

12:05PM 5    because that's not who you represent; it's whether your clients

12:05PM 6    are being treated fairly, adequately and sufficiently under

12:06PM 7    this settlement.

12:06PM 8            It's already been explained how the settlement

12:06PM 9    works.  Different industries have different multiples or

12:06PM 10   multipliers, RTP's, added and all of that.  Again, that's all

12:06PM 11   based on gross revenues, not even on net profits, which is what

12:06PM 12   your clients would be entitled to if they litigated.  You're

12:06PM 13   aware of that, I'm sure.

12:06PM 14           So I'm just having a little trouble understanding

12:06PM 15   where you're coming from with these objections, Mr. Waltzer,

12:06PM 16   but I'll let you continue.

12:06PM 17       MR. WALTZER:  Your Honor, the first thing, where we're

12:06PM 18   coming from is, is that when we follow the math, what they have

12:06PM 19   represented to the Court is that this is five times the annual

12:06PM 20   revenue of the entire commercial fishing industry.

12:06PM 21       THE COURT:  You said six times.

12:06PM 22       MR. WALTZER:  But that was during -- in a -- I need to

12:06PM 23   address this.  This was during a time in which -- before we

12:06PM 24   understood what the final deal was going to be, and that it was

12:07PM 25   going to pay so much money to other claim types.  We thought

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 140 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 139 of 328

139

12:07PM 1    that it was going to be paying --

12:07PM 2         THE COURT:  Don't talk about what other people are

12:07PM 3    getting.  Talk about what your clients are getting and why it's

12:07PM 4    not fair, reasonable and equitable.  That's what I would like

12:07PM 5    you to focus on.

12:07PM 6         MR. WALTZER:  But that's the point is that this is a

12:07PM 7    cap.

12:07PM 8         THE COURT:  Well, it's more of a guarantee.

12:07PM 9         MR. WALTZER:  I disagree with that, Your Honor.

12:07PM 10        THE COURT:  You disagree that it's a guaranteed

12:07PM 11   $2.3 billion?

12:07PM 12        MR. WALTZER:  It's a cap on 2.3 that is guaranteed to

12:07PM 13   be spent, but it is still, nonetheless, a cap.  There is still,

12:07PM 14   nonetheless, competition for the dollars.

12:07PM 15        There is going to be a second distribution that

12:07PM 16   there are differences in the eligibility requirements and there

12:07PM 17   are differences in the compensation formulas that are

12:07PM 18   significant between the different players.

12:07PM 19        THE COURT:  Well, that second distribution has not been

12:07PM 20   made yet, for obvious reasons.  It can't be made until there is

12:08PM 21   a first distribution.

12:08PM 22        MR. WALTZER:  But there is --

12:08PM 23        THE COURT:  Wait a minute.  Wait a minute.

12:08PM 24        The way it's going to work is they are going to

12:08PM 25   distribute $1.9 billion.  That's what's set aside for the first

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 141 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 140 of 328

140

12:08PM 1    distribution.

12:08PM 2            The implication now, the sense is now that some

12:08PM 3    of this is going to be left over.  They are not even going to

12:08PM 4    have to distribute $1.9 billion, so there will be more than

12:08PM 5    $400 million left over, and there will be a new analysis made

12:08PM 6    at that time.

12:08PM 7            It's not going to work as apparently you think

12:08PM 8    it's going to work, where it's just automatically a pro rata

12:08PM 9    redistribution.

12:08PM 10           Secondly, you also put in your opposition, as I

12:08PM 11   recall, that you thought that your clients, as opposed to the

12:08PM 12   oyster leaseholders, again, comparing apples to oranges, that

12:08PM 13   your clients were being treated unfairly because a lot of them

12:08PM 14   had already been paid part of this $700 million that was paid

12:08PM 15   through GCCF; and, that if that's deducted, if there is some

12:08PM 16   sort of pro rata distribution the second time, they would be

12:09PM 17   unfairly treated.

12:09PM 18           I hope you realize now that's not accurate,

12:09PM 19   right?

12:09PM 20           MR. WALTZER:  I disagree with that.

12:09PM 21           THE COURT:  Well --

12:09PM 22           MR. WALTZER:  I disagree with the contention that I

12:09PM 23   don't -- I mean, we know exactly that there is going to be a

12:09PM 24   second --

12:09PM 25           THE COURT:  It's not accurate that the monies your

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 142 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 141 of 328

141

12:09PM 1    client received from the GCCF will not be a factor in any

12:09PM 2    second distribution.

12:09PM 3         MR. WALTZER:  Well, I understand that.  I never said

12:09PM 4    that it would be, in fact.

12:09PM 5         THE COURT:  Well, that's not what you said in your

12:09PM 6    opposition, though.

12:09PM 7         MR. WALTZER:  I ask to see that because I've never,

12:09PM 8    ever thought that that's true.

12:09PM 9         THE COURT:  Well, I can tell you, I've read all of the

12:09PM 10   oppositions and objections, and you definitely made that

12:09PM 11   argument, and others have made that argument.  It's flat wrong.

12:09PM 12        MR. WALTZER:  I know it's flat wrong.

12:09PM 13        THE COURT:  Go ahead.

12:09PM 14        MR. WALTZER:  But this is the problem.  When you are

12:09PM 15   told that $1.9 billion will be distributed in the first round,

12:09PM 16   and, therefore, the relative allocations are going to be

12:09PM 17   correct, when you are told that over a billion dollars is going

12:09PM 18   to be paid to the shrimp industry, it's done from a gross.

12:09PM 19            The problem is, when you take that first round,

12:10PM 20   and even with the benefit of going out of the gross amount over

12:10PM 21   the net amount, you end up with a dramatical redistribution of

12:10PM 22   that fund away from the commercial fishermen; and, contrary to

12:10PM 23   what you've been told by the proponents of this deal, that will

12:10PM 24   reward 75 years of the annual revenue generated by leaseholders

12:10PM 25   versus anywhere from a half a year to less than three years for

12:10PM 1    other types of commercial fishermen.

12:10PM 2         THE COURT:  Well, again, leaseholders are not fishermen

12:10PM 3    necessarily.  They could be fishermen, but they don't have to

12:10PM 4    be.

12:10PM 5         The fundamental problem with your objection that

12:10PM 6    I see, Mr. Waltzer, is that you're comparing apples to oranges.

12:10PM 7    You're too focused on what somebody else is getting who are not

12:10PM 8    comparable to your clients; and, if they had not been in the

12:10PM 9    mix, you wouldn't be distributing $2.3 billion or $1.9 billion.

12:11PM 10        This thing worked from the bottom up.  That's how

12:11PM 11   they came up with the $2.3 billion.  So it makes no sense for

12:11PM 12   you to say, well, they're getting too much, and I'm not getting

12:11PM 13   enough.  You're trying to allocate it from the top down.

12:11PM 14   That's not how it happened.

12:11PM 15        MR. WALTZER:  That's not at all -- I'm sorry.

12:11PM 16   Respectfully, that is exactly not what I'm doing.

12:11PM 17        What we're doing is we're looking at the

12:11PM 18   different types of commercial fishermen that ply the waters,

12:11PM 19   and we're looking at the type of recovery that they're going to

12:11PM 20   make.

12:11PM 21        We know, based on their income and based on the

12:11PM 22   formulas, that, you know, deckhands are going to be getting one

12:11PM 23   year of income if they can prove eligibility under the

12:11PM 24   dramatically different eligibility criteria.  They're going to

12:11PM 25   get one year of income replacement, gross.

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 02/02/18 Page 144 of 329
Case 2:10-md-02179-CJB-JCW Document 3892-8 Filed 04/15/11 Page 143 of 328

143

12:11PM  1          From that, they are supposed to protect

12:11PM  2   themselves.  We're now three years in, and they are supposed to

12:11PM  3   protect themselves from future harm, when, in fact, they've

12:12PM  4   already used up all of their funding in past actual losses.

12:12PM  5          The same is said for crabbers, crab captains, and

12:12PM  6   crab combination captain/owners.  These are folks who have been

12:12PM  7   severely hurt and whose production of crabs in Louisiana is

12:12PM  8   over 40 percent down.

12:12PM  9          Since the spill, crabbers are only 72 percent of

12:12PM 10   what it used to be in the four-year average prior to the spill.

12:12PM 11   They have lost over half of their income since the spill.  Yet,

12:12PM 12   nonetheless, when you're looking at the income replacement for

12:12PM 13   crabbers, you're going to find that it's about two years,

12:12PM 14   meaning that since we're already three years in and they've

12:12PM 15   used a year and a half, they have a half a year left.

12:12PM 16          Those are of actual damages.  One of the

12:12PM 17   reasons --

12:12PM 18          THE COURT:  So what's your solution?

12:12PM 19          MR. WALTZER:  My solution is for, one, to knock out the

12:13PM 20   double deduction.  Number two is --

12:13PM 21          THE COURT:  What do you mean, the double deduction?

12:13PM 22          MR. WALTZER:  Okay.  You have been told -- and you

12:13PM 23   asked earlier, you asked for a specific question, you said, if

12:13PM 24   there is lost revenue, right, you're going to take the lost

12:13PM 25   revenue, and then you're going to take this loss ratio, and

Case 2:10-md-02179-CJB-DPC Document 23682-8 Filed 10/22/18 Page 145 of 329
Case 2:10-md-02179-CJB-DPC Document 7892-8 Filed 11/15/12 Page 144 of 328

144

12:13PM 1     you're going to multiply it by the RTP; and, you were told yes.

12:13PM 2            It makes it sound like the RTP is eight; but, in

12:13PM 3     fact, it's not eight.  Because what they are doing is they are

12:13PM 4     saying, you lost fish, right, that's revenue; but, you still --

12:13PM 5     and then they deduct for costs.  These are the costs you're

12:13PM 6     actually going to save if you don't go out there.

12:13PM 7        THE COURT:  That would occur in any litigation, right?

12:13PM 8        MR. WALTZER:  It would if you're talking about lost

12:13PM 9     profit, but they are measuring a different thing.  They are

12:13PM 10     applying two -- two exclusions and not one.  They should have

12:13PM 11     blended them together.  It knocks down the RTP.

12:14PM 12        THE COURT:  What the Court is tasked with in deciding

12:14PM 13     if this is fair, reasonable, equitable and so forth, is to

12:14PM 14     compare this with what are the reasonable range of recoveries

12:14PM 15     that these folks could look to recover in litigation if they

12:14PM 16     went to court.

12:14PM 17           It strikes me, from what I've seen, that they are

12:14PM 18     basing this on revenue streams that would not be what you would

12:14PM 19     base a loss on if you went to court.  You would be talking

12:14PM 20     about not your gross revenues; you would be talking about your

12:14PM 21     bottom net profits if you went to court.

12:14PM 22        MR. WALTZER:  Right.  But when you lose revenues --

12:14PM 23        THE COURT:  You have no guarantee of any kind of

12:14PM 24     multiplier if you went to court.  You might or might not be

12:14PM 25     able to prove some future loss.  It wouldn't be relevant what

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 146 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 145 of 328

145

12:14PM 1    somebody else was getting if you were to litigate it for your

12:15PM 2    client.

12:15PM 3            Go ahead.

12:15PM 4        MR. WALTZER:  The point is you have a system that when

12:15PM 5    you take BP's evidence and you put in what will actually be

12:15PM 6    paid --

12:15PM 7        THE COURT:  I have to stop.  This is not BP.  You keep

12:15PM 8    referring to BP's evidence.  This is evidence from both the

12:15PM 9    parties.

12:15PM 10        MR. WALTZER:  This is the evidence of Dr. Smith that

12:15PM 11    was relied upon.

12:15PM 12        THE COURT:  This is evidence from a lot of different

12:15PM 13    sources, some of which came from BP, but some of which came

12:15PM 14    from the plaintiffs, some of it came from you, your experts,

12:15PM 15    some of it came from Mr. Nolting and Mr. Roberts's office.

12:15PM 16    There was a lot of input in here.

12:15PM 17            So I'm trying to get to the bottom line.  Your

12:15PM 18    complaint is that your clients should have been allocated more

12:15PM 19    of the $2.3 or the $1.9 billion --

12:15PM 20        MR. WALTZER:  No.

12:15PM 21        THE COURT:  -- which means somebody else would have

12:15PM 22    gotten less, right?

12:15PM 23        MR. WALTZER:  No.  That is exactly not what we want.

12:15PM 24        THE COURT:  Well, what is your solution?

12:16PM 25        MR. WALTZER:  The solution is -- we have two issues.

Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 146 of 328

12:16PM  1    We have -- let me answer that directly.

12:16PM  2              The solution is that we do want an end, and, for

12:16PM  3    many people, this end works, meaning the Seafood Compensation

12:16PM  4    Program provides specific people with enough money in specific

12:16PM  5    categories that it's going to protect them adequately, not only

12:16PM  6    for their past losses, but for their future losses.

12:16PM  7         THE COURT:  So what's your solution?

12:16PM  8         MR. WALTZER:  Our solution is to participate and to

12:16PM  9    create a transparent process for the second distribution.

12:16PM 10    Because we know that it's not going to be $400 million; that

12:16PM 11    those fishermen are only going to be paid between $300 and

12:16PM 12    $600 million in the first distribution, not $1.2 billion,

12:16PM 13    because you have to back out the money they've already

12:16PM 14    received.

12:16PM 15              So there is going to be over a billion dollars in

12:16PM 16    the second distribution, and we are looking to have a fair

12:16PM 17    process where people are going to have a meaningful

12:17PM 18    opportunity.

12:17PM 19              We applaud the Court for this, and we've taken

12:17PM 20    notice.  I think you misunderstand where GO FISH is coming from

12:17PM 21    and, certainly, where the other objectors are coming from.  We

12:17PM 22    want to participate, but we want to make sure that there is

12:17PM 23    sufficient and adequate representation for each of these

12:17PM 24    different components -- it doesn't have to be broken down into

12:17PM 25    a matrix, 50 large, right -- for each of the different

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 148 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 147 of 328

147

12:17PM 1    components where we can openly -- or where the advocates can

12:17PM 2    openly discuss the viability of each other's stuff.

12:17PM 3         We don't want to take any money out of the

12:17PM 4    pockets of anyone else.  We have not asked to be put into a

12:17PM 5    capped pool.  We have not asked to be in a position where we

12:17PM 6    have to make arguments one way or the other about you're

12:17PM 7    getting more than you deserve, and I'm getting less than I

12:17PM 8    deserve.

12:17PM 9         It's been thrust upon us, and we're asking the

12:17PM 10   Court to -- and we're asking the party, BP directly, to end the

12:17PM 11   divisive tactic of placing one set of victims against another.

12:18PM 12   It creates a very large problem on an ethical level and in

12:18PM 13   terms of an intraclass conflict; and, it creates problems with

12:18PM 14   our class representatives; and, it creates -- it's just not the

12:18PM 15   right way to go.

12:18PM 16        So if they have intended to pay the oyster

12:18PM 17   leaseholders what we know they have intended to pay the oyster

12:18PM 18   leaseholders, when you do the correct math, nearly a billion

12:18PM 19   dollars or over a billion dollars, then we expect them to pay

12:18PM 20   the billion dollars; but, we intend that we, ourselves, are

12:18PM 21   paid, the commercial fishermen are paid fairly.

12:18PM 22        We don't need to hit the home run, but we need to

12:18PM 23   get on base.  We need to be paid fairly, enough to compensate

12:18PM 24   us adequately for the past losses and the future losses.

12:18PM 25        Can you please go.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 149 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 149 of 328

148

12:18PM  1           THE COURT:  You've got about one minute left,

12:18PM  2     Mr. Waltzer.

12:18PM  3           MR. WALTZER:  Thank you, Your Honor.

12:18PM  4           This is a chart that shows Louisiana seafood

12:18PM  5     harvest.  We've heard a lot about the NOAA data, but this

12:19PM  6     points up that where the impact was the worst, these folks are

12:19PM  7     hurting.

12:19PM  8           This chart shows that the blue band is the normal

12:19PM  9     seasonal fluctuations.  You can see where it drops off; that's

12:19PM 10     the oil spill.  Even now, we are less than -- we are well below

12:19PM 11     any kind of normal seasonal fluctuation for all seafood, for

12:19PM 12     blue crabs, for oysters and for shrimp, by volume, across the

12:19PM 13     entire state of Louisiana.

12:19PM 14           So when you're told that these RTP's are

12:19PM 15     generous, and you're told that the loss ratios are generous, it

12:19PM 16     was based on a Gulf-wide average, which means, if you're in a

12:19PM 17     place that is less affected, less affected than average, yes,

12:19PM 18     indeed, it may be generous; but, if you were coming from a

12:19PM 19     place of most loss, where you're far below average, it is far

12:19PM 20     from fair.

12:19PM 21           We believe that that has not been taken into

12:19PM 22     account in the Seafood Compensation Program, and it's a

12:20PM 23     deficiency that needs to be corrected on a class basis, as is

12:20PM 24     the deficiency for deckhands and for crabbers.  They are just

12:20PM 25     getting too disparately low a recovery relative to all others,

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 150 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 149 of 328

149

12:20PM 1   and it doesn't justify the rights that they are giving up, is

12:20PM 2   the bottom line.

12:20PM 3          THE COURT:  All right.  Thank you, Mr. Waltzer.

12:20PM 4             There is a Mr. Palmer.

12:20PM 5             You have five minutes, Mr. Palmer.

12:20PM 6          MR. PALMER:  I won't take that long, Your Honor.

12:20PM 7          THE COURT:  Okay.

12:20PM 8          MR. PALMER:  Good afternoon.  My name is

12:20PM 9   Darrell Palmer.  I represent James Kirby, Mike and Patricia

12:21PM 10  Sturdivant, and Susan Forsyth, all property owners in western

12:21PM 11  Florida.

12:21PM 12             I'm not here to banter about the fairness of the

12:21PM 13  settlement.  Unfortunately, today, Your Honors, I am here to

12:21PM 14  give you the bad news that by law you cannot approve this

12:21PM 15  settlement.  That is because there really is no cy pres

12:21PM 16  component to this settlement.  What there is, is a veiled PR

12:21PM 17  effort --

12:21PM 18         THE COURT:  Wasn't that the basis of your objection?

12:21PM 19  You believe this is a cy pres award.

12:21PM 20         MR. PALMER:  Well, that's what it's supposed to be.

12:21PM 21         THE COURT:  That's what you said.  I don't know what

12:21PM 22  you mean, that's what it's supposed to be.  You said you

12:21PM 23  thought this promotion -- you're talking about the Seafood and

12:21PM 24  Tourism Promotional Fund, correct?

12:21PM 25         MR. PALMER:  Yes, sir, I am.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 151 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 150 of 328

150

12:21PM 1          THE COURT:  You called that *a cy pres fund*, *cy pres*

12:21PM 2    meaning next best use.

12:22PM 3          MR. PALMER:  Correct.

12:22PM 4          THE COURT:  It's common or sometimes occurs when there

12:22PM 5    is a settlement in a class action or a global settlement with a

12:22PM 6    fixed amount of dollars, and less claims than are expected are

12:22PM 7    made, and there is money, quote, left over; if there is no

12:22PM 8    reversionary provision where it goes back to the defendant,

12:22PM 9    then the Court has to decide what do we do with the money

12:22PM 10   that's left over.  It could be allocated on a pro rata basis to

12:22PM 11   all of the claimants; but, often, they would get pennies or a

12:22PM 12   dollar or two, and it's not worth the cost of distributing it

12:22PM 13   that way.

12:22PM 14          So the parties often provide for what happens

12:22PM 15   with that leftover money, the so-called *cy pres award*; but,

12:22PM 16   there is no cy pres or leftover money in this settlement, so I

12:22PM 17   don't understand how this is a cy pres.

12:23PM 18          You said in your written filing it was a cy pres

12:23PM 19   award, but just now you said it's not a cy pres award.

12:23PM 20          MR. PALMER:  Well, it doesn't fall under the -- well,

12:23PM 21   it's what Professor Redish at Northwestern University calls *an*

12:23PM 22   *ex ante cy pres*, where money is distributed for charitable

12:23PM 23   reasons, even before the claim --

12:23PM 24          THE COURT:  But not every cy pres award is illegal or

12:23PM 25   improper, right?

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 152 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 151 of 328

151

12:23PM 1        MR. PALMER:  Absolutely not.

12:23PM 2        THE COURT:  So, even if it was a cy pres award, as long

12:23PM 3    as it's put to a use that benefits, generally benefits the

12:23PM 4    class members or the purpose of the lawsuit or litigation,

12:23PM 5    certainly it's entirely proper if the parties agree to this.

12:23PM 6    The Court can't just do it on its own without the parties

12:23PM 7    agreeing to it.

12:23PM 8        MR. PALMER:  Well, the Court's fiduciary responsibility

12:23PM 9    is not dependent on the parties agreeing to it, with all due

12:23PM 10   respect, Your Honor.  Unfortunately --

12:23PM 11       THE COURT:  Well, no, I differ with you there.  The

12:24PM 12   Fifth Circuit says I can't distribute it like I want to

12:24PM 13   distribute it unless the parties have put a provision in their

12:24PM 14   settlement agreement as to how it should be distributed, and

12:24PM 15   then I have to decide beyond that whether that's a proper and

12:24PM 16   appropriate use.

12:24PM 17       MR. PALMER:  That's correct.

12:24PM 18       THE COURT:  That's the law.

12:24PM 19       MR. PALMER:  That's right.

12:24PM 20       THE COURT:  So what's your gripe here today?

12:24PM 21       MR. PALMER:  Well, my gripe here today is that the

12:24PM 22   Court -- the parties today are proposing that the Court approve

12:24PM 23   a distribution that benefits only part of the class.

12:24PM 24       THE COURT:  Who is it that you represent that's

12:24PM 25   complaining about this?

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 153 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 152 of 328

152

12:24PM  1          MR. PALMER:  I represent property owners in western

12:24PM  2   Florida.  But you invited me, actually --

12:24PM  3          THE COURT:  Well, I invited you because someone pointed

12:24PM  4   out that you had filed this cy pres objection, and I assumed

12:24PM  5   you must represent someone other than yourself who objects to

12:25PM  6   this.  Do you?

12:25PM  7          MR. PALMER:  I named my clients that I represent,

12:25PM  8   James Kirby, Mike and Patricia Sturdivant and Susan Forsyth,

12:25PM  9   all property owners in western Florida.

12:25PM 10          THE COURT:  Are they members of this class?

12:25PM 11          MR. PALMER:  Yes, they are.

12:25PM 12          THE COURT:  They object to this $57 million being spent

12:25PM 13   to promote tourism and seafood?

12:25PM 14          MR. PALMER:  Yes, they do.

12:25PM 15          THE COURT:  Go ahead.

12:25PM 16          MR. PALMER:  The reason they object, Your Honor --

12:25PM 17          THE COURT:  How does that affect them?  $57 million is

12:25PM 18   not spent on this, you know, it would just be kept by BP; it

12:25PM 19   wouldn't go to anyone else.  You understand that?

12:25PM 20          MR. PALMER:  I do.  I think that's an honorable and

12:25PM 21   commendable expenditure; but, it should have nothing to do with

12:25PM 22   this class action because it doesn't -- the responsibility of

12:25PM 23   the Court is to make sure that the benefits and the -- well,

12:25PM 24   let me start over.

12:25PM 25          Once this settlement is approved, Your Honor --

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 154 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 153 of 328

153

12:25PM 1   and that hasn't been happening yet, so, indeed, what

12:26PM 2   everybody's said today is BP is paying this, BP is funding

12:26PM 3   this, we're accepting the claims and on and on, that's true,

12:26PM 4   it's BP's money still; but, once you approve this settlement,

12:26PM 5   Your Honor, that money, the ownership of that money transfers

12:26PM 6   to the class, including my clients.

12:26PM 7               So what you propose is that we take $57 million

12:26PM 8   that's owned by the class, about a hundred thousand claimants,

12:26PM 9   if I understand -- that's what somebody said earlier -- and we

12:26PM 10  are going to disproportionately use it to benefit only tourism

12:26PM 11  and seafood-related class members; it will not benefit

12:26PM 12  necessarily the nontourism and nonseafood-related tourism

12:26PM 13  industry.

12:26PM 14          THE COURT:  What kind of property do your clients own?

12:26PM 15          MR. PALMER:  Residential.

12:26PM 16          THE COURT:  Residential property.

12:26PM 17          MR. PALMER:  Yes, sir.

12:26PM 18          THE COURT:  How are they members of the class?  What

12:26PM 19  are their damages or claims?

12:27PM 20          MR. PALMER:  Their damage claims relate to use of

12:27PM 21  enjoyment, I believe.

12:27PM 22          THE COURT:  Are those the claims that I dismissed

12:27PM 23  already?

12:27PM 24          MR. PALMER:  You certainly didn't dismiss my clients'

12:27PM 25  claims, Your Honor.  I wouldn't be here.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 155 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 154 of 328

154

12:27PM 1          THE COURT:  Well, maybe not individually.  I'm just

12:27PM 2    trying to figure out are those part of the stigma claims,

12:27PM 3    recreational use; I like to look at the water or enjoy walking

12:27PM 4    along the beach, that sort of thing?

12:27PM 5          MR. PALMER:  No, Your Honor.  We submitted our proof of

12:27PM 6    class membership along with the objection.

12:27PM 7          THE COURT:  Have you filed claims with the claims

12:27PM 8    administrator?

12:27PM 9          MR. PALMER:  I believe my co-counsel has filed claims.

12:27PM 10         THE COURT:  You've filed claims on behalf of these same

12:27PM 11   clients who now are objecting to the settlement?

12:27PM 12         MR. PALMER:  Right.

12:27PM 13         THE COURT:  You said the settlement can't be

12:27PM 14   approved --

12:27PM 15         MR. PALMER:  That's right.

12:27PM 16         THE COURT:  -- what you are started off telling me.

12:27PM 17         MR. PALMER:  That's right.

12:27PM 18         THE COURT:  So which is it; they want me to approve the

12:27PM 19   settlement, or do they not want me to approve the settlement?

12:28PM 20         MR. PALMER:  It's not that they don't want it; it's the

12:28PM 21   fact that you can't, as long as you are distributing money that

12:28PM 22   belongs to the class to people who aren't in the class,

12:28PM 23   Your Honor.

12:28PM 24             The money has to be distributed first to the

12:28PM 25   class members; and, then, if there is some remainder, that

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 156 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 155 of 328

155

12:28PM  1    would be appropriate for a cy pres, or a distribution for the

12:28PM  2    next best use.

12:28PM  3             THE COURT:  Well, there will be no remainder in this.

12:28PM  4             MR. PALMER:  That's right.  There won't be.  That's why

12:28PM  5    this $57 million giveaway should have nothing to do with this

12:28PM  6    lawsuit.

12:28PM  7             Frankly, you know, there are some other problems

12:28PM  8    with the way the money is being given away.  I mean, it

12:28PM  9    supposedly is being managed by a panel.  I made multiple phone

12:28PM 10    calls -- well, I learned this morning that apparently

12:28PM 11    $30 million has already been designated --

12:28PM 12             THE COURT:  Actually, I think it's more like

12:28PM 13    $44 million has already been distributed.

12:28PM 14             MR. PALMER:  Well, it's certainly very difficult for

12:28PM 15    class members to find out how the Court is going to approve the

12:28PM 16    expenditure of their money, the $44 million.

12:28PM 17             THE COURT:  It's not quite your clients' money.

12:29PM 18             MR. PALMER:  Well, it certainly belongs to the class,

12:29PM 19    Your Honor.

12:29PM 20             THE COURT:  Go ahead.  You have another 30 seconds,

12:29PM 21    Mr. Palmer.  Anything else you want to say?

12:29PM 22             MR. PALMER:  Well, I would also like to point out that

12:29PM 23    the attorneys' fees should not be awarded based on this

12:29PM 24    charitable distribution.

12:29PM 25             THE COURT:  There is no attorneys' fee issue before the

Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/04/12 Page 156 of 328

12:29PM 1   Court at this time.  There has been no application for

12:29PM 2   attorneys' fees.

12:29PM 3           If and when an application for attorneys' fees is

12:29PM 4   made, applications and supporting documentation will be filed,

12:29PM 5   the Court will have hearings, and people will have a chance to

12:29PM 6   weigh in on that.  The Court would have to approve any

12:29PM 7   attorneys' fees that are awarded.

12:29PM 8           MR. PALMER:  I guess, finally, Your Honor, if I could,

12:29PM 9   I think it would be appropriate for the web site to reflect who

12:29PM 10  the panel members are, what organizations have applied for

12:29PM 11  these awards --

12:29PM 12          THE COURT:  I think that's all public information.

12:29PM 13  Mr. Juneau can help with you that.  Okay.

12:29PM 14          MR. PALMER:  Thank you very much.

12:29PM 15          THE COURT:  Thank you.

12:30PM 16          All right.  We have about another 30 minutes or

12:30PM 17  so to go.  I'm going to allow the class counsel and BP's

12:30PM 18  counsel about 15 minutes each.

12:30PM 19          Mr. Roy.

12:30PM 20          MR. ROY:  Thank you, Your Honor.  Jim Roy, again.

12:30PM 21          I want to make three points.  First, I'm going to

12:30PM 22  address Mr. Waltzer's comments on seafood.  Very briefly,

12:30PM 23  Mr. Herman will follow up with additional.

12:30PM 24          The issue, as I perceive it, more than anything,

12:30PM 25  is Mr. Waltzer has severe angst over the potential distribution

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 158 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 157 of 328

157

12:30PM  1    mechanism of the reserve fund, that last $400 million.

12:30PM  2              Well, as has been pointed out to this Court in

12:30PM  3    the papers filed, before there is a distribution of any reserve

12:30PM  4    in the seafood fund, the court-appointed neutral will solicit

12:30PM  5    information from the seafood program participants, including

12:31PM  6    his clients, that made claims.

12:31PM  7              Whatever the neutral decides and recommends, he's

12:31PM  8    got to bring to you, Your Honor, and you have to vet it and

12:31PM  9    approve it.

12:31PM 10              So, at least from class counsel standpoint, we're

12:31PM 11    comfortable that your court-appointed neutral will do his best,

12:31PM 12    again, to seek all available information and to receive

12:31PM 13    opinions on how that $400 million, or whatever it is, in the

12:31PM 14    second go-around of the seafood fund should be distributed.  It

12:31PM 15    will have to come to you, and you're an additional safeguard.

12:31PM 16              If class counsel thinks there is a problem, or BP

12:31PM 17    thinks there is a problem, there is not a timid bone on either

12:31PM 18    side.  We'll tell you, and I'm sure Mr. Waltzer will, too.

12:31PM 19              So I think that, frankly, that objection is not a

12:32PM 20    real objection.  It's a concern about process, and the process

12:32PM 21    is in place.

12:32PM 22              The reference, by the way, from what I was just

12:32PM 23    referring to, is the second Perry declaration at page three and

12:32PM 24    the second Balhoff declaration at page three, both of which are

12:32PM 25    in the record.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 159 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 159 of 328

158

12:32PM 1          Second point, as Your Honor well knows, any

12:32PM 2    settlement requires agreement.  It's the A word.  It's the

12:32PM 3    magic word.

12:32PM 4          You know, there is not a timid bone in Joe Rice's

12:32PM 5    body.  I'm willing to bet you right now that Joe Rice asked for

12:32PM 6    considerably more than a 2.5 RTP.  He might have even asked for

12:32PM 7    more than a five.  In fact, it wouldn't have surprised me at

12:32PM 8    all if he didn't ask for all of Louisiana, all of Mississippi,

12:32PM 9    and all of Alabama to be zoned A or B.  I don't know.

12:33PM 10          But, you know what, that man, and that man, and

12:33PM 11    another man right behind me representing BP, said, no, we won't

12:33PM 12    agree to it.  So what we brought the Court as a joint document

12:33PM 13    is the product of what BP would agree to.

12:33PM 14          So the fact that it's not as high in some places

12:33PM 15    as some people wish, I wish it was higher, and I promise you

12:33PM 16    Mr. Rice and his negotiating team wishes it was higher in some

12:33PM 17    places; but, the reality is agreement was required.

12:33PM 18          Judge Shushan acted as the mediator on much of

12:33PM 19    this and knows very well that these things were hotly contested

12:33PM 20    until almost the bitter end, until finally there was agreement.

12:33PM 21          So would it be nice to have bigger Zone A's,

12:34PM 22    bigger Zone B's, bigger Zone C's, higher RTP's across the

12:34PM 23    board, sure it would have, but it takes two to tango.

12:34PM 24          Third point, when our negotiators went to

12:34PM 25    negotiate with BP, one of the carved-in-stone mandates from the

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 01/02/18 Page 160 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 159 of 328

159

12:34PM 1  PSC to them was that causation and compensation calculations in

12:34PM 2  any settlement had to be objectively ascertainable.

12:34PM 3  We did not want a hundred-plus-thousand claimants

12:34PM 4  being subjected to what many people perceived were subjective

12:35PM 5  claim reviews, like at the GCCF, or some kind of star chamber

12:35PM 6  subjective evaluation that they just didn't -- that wasn't

12:35PM 7  transparent.

12:35PM 8  So transparency was critical. To have it

12:35PM 9  transparent, you had to have your compensation and your

12:35PM 10  causation calculation formulas objectively ascertainable.

12:35PM 11  They are. That's what this settlement does. If

12:35PM 12  you've got the data, you plug it in. It will tell you whether

12:35PM 13  or not on the BEL models or whatnot whether or not you've got

12:35PM 14  compensation -- whether you've got causation and then whether

12:35PM 15  or not you've got compensation.

12:35PM 16  To accomplish that, the settlement formulas have

12:35PM 17  to benchmark against objective data in certain instances, thus,

12:36PM 18  the reference, for example, to public appraisal, property tax

12:36PM 19  appraisal. It's an objective benchmarkable data. There is

12:36PM 20  nothing subjective about it.

12:36PM 21  The SCAT database, the SCAT maps, the geographic

12:36PM 22  lines, the alternative to this would have been to have

12:36PM 23  continued down a subjective, individualized determination of

12:36PM 24  these claims.

12:36PM 25  But the unique thing here is that every claim

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 161 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 160 of 328

160

12:36PM 1    coming into this program can be objectively determined using

12:36PM 2    the formulas.

12:36PM 3         Thank you, Your Honor.

12:36PM 4         THE COURT:  All right.  Thank you.

12:36PM 5         MR. HERMAN:  Steve Herman for the class.  Very briefly,

12:36PM 6    Your Honor, just to correct a few things.

12:36PM 7         I may have misspoken.  I didn't intend to say, if

12:37PM 8    I did, that loss of use of enjoyment was a legally recognizable

12:37PM 9    claim or that the loss of property taxes was a legally

12:37PM 10   recognizable claim.  It was a basis of negotiation.

12:37PM 11        I suspect, maybe Mr. Godfrey will confirm, I

12:37PM 12   suspect that the reason why BP was willing to negotiate on that

12:37PM 13   basis for the properties it was willing to negotiate on is

12:37PM 14   because they were touched by oil and, therefore, had standing

12:37PM 15   under *Robins Dry Dock*, as opposed to the other properties that

12:37PM 16   were not touched by oil and arguably had no claim at all.

12:37PM 17        There was a slide put up that talked about how

12:37PM 18   the GCCF multiplier was better than the RTP's in two cases.  I

12:37PM 19   thought that we said in our brief virtually all.  I didn't

12:37PM 20   think that we claimed all.  But it begs the question, and this

12:38PM 21   was addressed in our reply brief on pages 20 to 23, how many

12:38PM 22   nontourism, nonseafood claims in Zone C and Zone D that hadn't

12:38PM 23   been paid by the GCCF over the 18 months that it was open would

12:38PM 24   the GCCF have paid?

12:38PM 25        I mean, if you make the hypothetical assumption

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 162 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 161 of 328

161

12:38PM  1    that in April of 2012, all of a sudden Mr. Feinberg was going

12:38PM  2    to wake up and say, this claim that I've been ignoring for

12:38PM  3    18 months, because it's in Monroe, Louisiana, and doesn't

12:38PM  4    involve tourism or seafood, you know, my methodology says I'm

12:38PM  5    supposed to pay him two X, so that's what I'm going to do

12:38PM  6    today, even though I haven't done it for the last two years.

12:38PM  7              So maybe that is what the methodology would

12:38PM  8    dictate, but there was no enforcement mechanism, as there is

12:38PM  9    here, to make sure that the rules were actually followed.

12:38PM 10              I think that those claims about people that

12:38PM 11    hypothetically would have done better under the GCCF

12:39PM 12    methodology are just that, they are hypotheticals.

12:39PM 13              Very quick thing about the deckhands.  As we

12:39PM 14    mentioned before, there is more flexible proof for deckhands

12:39PM 15    under the Seafood Compensation Program because they can

12:39PM 16    establish earnings with a sponsor's affidavit, a nonfamily

12:39PM 17    member like a minister or even attorney who vouches for a

12:39PM 18    deckhand.

12:39PM 19              As to the lower RTP's for a deckhand, it was

12:39PM 20    Mr. Balhoff's and Mr. Perry's -- I hope I'm not -- this is

12:39PM 21    hearsay, I guess, but I'm representing to the Court that I

12:39PM 22    discussed this with at least Mr. Balhoff, and they had a strong

12:39PM 23    feeling that if you were a vessel owner, you had -- your life

12:39PM 24    was tied up with this vessel.  So if your business went under,

12:39PM 25    and there were no catch in the Gulf, you were on a long-term

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 163 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 162 of 328

162

12:39PM 1    hook for that.  You had a mortgage on your boat, etcetera.

12:39PM 2         Similarly, a little bit to a lesser extent --

12:40PM 3    this is why the captain's RTP is a little bit less -- if you're

12:40PM 4    a captain and you've been a commercial fisherman all your life,

12:40PM 5    that's what you know.  It's very hard for you to do something

12:40PM 6    else.  So if something goes bad in the fisheries, you have a

12:40PM 7    long-term risk.

12:40PM 8         Mr. Perry and Mr. Balhoff's opinion, as it was

12:40PM 9    communicated to me, at least, is that they saw deckhands as

12:40PM 10   fundamentally different because deckhands could, within two

12:40PM 11   years or three years, go get a job in some other market.  They

12:40PM 12   weren't necessary tied to the vessel or tied to the commercial

12:40PM 13   fishing industry.  I believe that's why the deckhands have

12:40PM 14   lower RTP's.

12:40PM 15        Off the top of my head, I still think they get a

12:40PM 16   2 RTP, which is an expected multiplier of three.  So they are

12:40PM 17   getting paid for three years.  If that's not sufficient for a

12:40PM 18   deckhand, he or she had the right to opt out of the class.

12:40PM 19        If you could bring up that -- okay, this is --

12:40PM 20   for the record, what we're looking at is Document 7855-2.  It's

12:41PM 21   page seven of nine.  This is Mr. Waltzer's -- he was saying, as

12:41PM 22   applied, the effective RTP is a little bit different than what

12:41PM 23   is represented in the document itself.  He was saying that

12:41PM 24   crabbers weren't getting treated fairly.

12:41PM 25        If you look at the loss, as I mentioned before,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 164 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/04/12 Page 163 of 328

163

12:41PM 1    there is a 35 percent loss.  This is Mr. Waltzer's document.

12:41PM 2    Even though, under the official NOAA data, up to this point

12:41PM 3    there is only a 14 percent loss, you're getting paid

12:41PM 4    35 percent.

12:41PM 5            Now, you may be in a basin that is

12:41PM 6    disproportionately adversely affected; but, even in that type

12:41PM 7    of basin, you're still getting more than two times what the

12:41PM 8    average NOAA loss is.

12:41PM 9            But the point that I really wanted to make is,

12:41PM 10   when you're talking about whether it's fair, reasonable and

12:41PM 11   adequate to the crabbers, what Mr. Waltzer says the effective

12:42PM 12   RTP is, he says, well, it's not really six, it's only 5.15,

12:42PM 13   which means that crabbers are getting paid six years for a

12:42PM 14   35 percent loss across the board.  This is only the first round

12:42PM 15   payment.  This doesn't even include any potential second round

12:42PM 16   payment.

12:42PM 17           So, if I'm a crabber, I'm going to look at this,

12:42PM 18   and I'm going to say, do I think this is a fair, reasonable and

12:42PM 19   adequate deal, or don't I, irrespective of what the second

12:42PM 20   round payment might be, irrespective of what the oyster

12:42PM 21   leaseholders are getting, irrespective of the IFQ owners.

12:42PM 22           I would argue that's the right way to look at it.

12:42PM 23   If somebody didn't think it was fair, reasonable or adequate,

12:42PM 24   they had the right to opt out.

12:42PM 25           Does the Court have any questions?

12:42PM 1    THE COURT:  The only question I have, I would like you

12:42PM 2 to comment on Mr. Smith's argument about how the lines were

12:42PM 3 drawn, whether there is conflict between the zones.

12:43PM 4    MR. HERMAN:  I thought you might ask me about that.  I

12:43PM 5 think I have a little card on that.

12:43PM 6    I think the important thing, and Your Honor

12:43PM 7 seized on it, is that there is no conflict here.

12:43PM 8    Going into the negotiations, there is no conflict

12:43PM 9 or antagonism between the interests of the people in Zone A and

12:43PM 10 the interests of the people in Zone D.

12:43PM 11    Similarly, coming out of the agreement, what the

12:43PM 12 person in Zone A gets doesn't affect what the person in Zone D

12:43PM 13 gets or doesn't get.  So there is no conflict there.

12:43PM 14    As I think Your Honor pointed out, you had class

12:43PM 15 counsel who represented all types of claimants in all of the

12:43PM 16 zones; and, as Mr. Roy pointed out, we were trying to get the

12:43PM 17 absolute top dollar in an uncapped fund, in an evergreen fund.

12:43PM 18 It was our incentive to get absolute top dollar for everyone.

12:43PM 19    We had our negotiations with BP.  I think I said

12:43PM 20 proximity to the water was one of the factors.  The other

12:44PM 21 factors generally were proximity to where the oil was in the

12:44PM 22 water, whether the area was tourism based, or whether the

12:44PM 23 economy of the area seemed to be based on something else, like

12:44PM 24 industrial --

12:44PM 25    THE COURT:  Excuse me one minute.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 166 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 165 of 328

165

12:44PM 1      Mr. Waltzer, are you standing to leave, or are

12:44PM 2 you staying, or what are you doing?  You need to sit down if

12:44PM 3 you're staying in.  If you're staying in, sir, you need to be

12:44PM 4 seated, okay.

12:44PM 5      Go ahead, Mr. Herman.

12:44PM 6      MR. HERMAN:  Thank you, Your Honor.

12:44PM 7      So, ultimately, what came out of the settlement

12:44PM 8 and what those maps look like is exactly what Mr. Roy said.

12:44PM 9 It's what BP ultimately would agree to do.  We would have been

12:44PM 10 happy to put everything in Zone A.

12:44PM 11      But, from a legal matter, I think Your Honor

12:44PM 12 seized the point, there is a no intraclass conflict in an

12:44PM 13 uncapped fund.  What the Zone A person gets doesn't affect what

12:44PM 14 the Zone D person gets.  There was no conflict going in.

12:44PM 15 There's no conflict coming out.

12:44PM 16      The counsel that were negotiating the deal had

12:45PM 17 every interest and incentive in representing people of all

12:45PM 18 zones and all areas and trying to get top dollar for all of

12:45PM 19 them, and there were no trade-offs.

12:45PM 20      THE COURT:  All right, thank you.

12:45PM 21      Mr. Godfrey.

12:45PM 22      MR. HERMAN:  Can I address one more issue, Your Honor,

12:45PM 23 please?

12:45PM 24      THE COURT:  Sure.  Quickly.

12:45PM 25      MR. HERMAN:  I'll do it quickly, but it is somewhat of

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 167 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 166 of 328

166

12:45PM 1   an important issue to us.

12:45PM 2              The issue is adequacy of representation, which

12:45PM 3   has been called into question by some, as Your Honor noted.

12:45PM 4              As Mr. Roy mentioned, we have class counsel, a

12:45PM 5   group of attorneys here who moved to New Orleans, gave up their

12:45PM 6   entire practice and worked on nothing but this case for two

12:45PM 7   years, preparing for trial, working on the science, preparing

12:45PM 8   for Phase Two, and negotiating the settlement.

12:45PM 9              We are still here.  We're preparing for the trial

12:45PM 10  that starts in February.  We're preparing for doing test cases.

12:46PM 11  We are working with class members and their attorneys and their

12:46PM 12  CPA's every day, seven days a week, acting as a liaison to the

12:46PM 13  program, answering questions, helping with claims, helping with

12:46PM 14  appeals.

12:46PM 15             At every step in the negotiation, we did

12:46PM 16  everything that we could do to try to make sure that we were

12:46PM 17  doing it right.  We consulted with the leading experts,

12:46PM 18  Professor Baker, Professor Issacharoff, Mr. Uddo.

12:46PM 19             Then, later, we also consulted with Dean Sherman,

12:46PM 20  Dean Ciolino and, of course, Professor Coffee.

12:46PM 21             Never, never in eight months of negotiation,

12:46PM 22  never did we propose a trade-off or allow BP to put us in the

12:46PM 23  position of having to make a trade-off.

12:46PM 24             When we agreed to the seafood program, we asked

12:46PM 25  the Court to appoint a neutral to provide the structural

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 168 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 16 of 328

167

12:46PM 1  assurances that the Supreme Court said in *Amchem* and other

12:46PM 2  relevant cases were appropriate.

12:46PM 3          Now, at the end of the day, was that good enough?

12:47PM 4  We leave that to Your Honor to make that decision.

12:47PM 5          But I would like to say, for myself and for class

12:47PM 6  counsel, that I'm proud of this settlement.  It's easy to get

12:47PM 7  lost in the frustrations and the problems and the complaints

12:47PM 8  and the anomalies and the delays; but, when you step back and

12:47PM 9  you look at the settlement, and the opportunity that it

12:47PM 10 provides to thousands of people, I think it's something to be

12:47PM 11 proud of.

12:47PM 12         Some of the other lawyers who have made

12:47PM 13 objections or made statements or quotes to the press, I would

12:47PM 14 submit respectfully that it's easy for them because at the end

12:47PM 15 of day they don't have the responsibility.

12:47PM 16         We're responsible, we're accountable to

12:47PM 17 Your Honor, and we're accountable to the class.  The truth is,

12:47PM 18 no matter what anybody says, we always put the interest of the

12:47PM 19 class first.

12:47PM 20         Could this settlement have been done differently?

12:47PM 21 Sure.  But could it have been done better?  You know, I'm

12:47PM 22 biased.  I'm admittedly biased.  I'm not sure that it could

12:48PM 23 have been done better.

12:48PM 24         Thank you, Your Honor, for your trust and for

12:48PM 25 your time.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 169 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 169 of 328

168

12:48PM 1      THE COURT:  All right.  Thank you, Mr. Herman.

12:48PM 2          All right, Mr. Godfrey.

12:48PM 3      MR. GODFREY:  Thank you, Your Honor.

12:48PM 4          I'll start with Mr. Smith and the economic zone

12:48PM 5  issue.

12:48PM 6          First, Mr. Smith is like Mr. Palmer, he has

12:48PM 7  clients who've objected, but, according to our data and

12:48PM 8  information from Mr. Juneau's office, he has clients who have

12:48PM 9  made claims.  Indeed, three of his clients have been paid and

12:48PM 10 have signed releases under the settlement facility.  I do not

12:48PM 11 know how that conflict is resolvable.

12:48PM 12         He is trying to kill for some group of clients

12:49PM 13 the very settlement that others of his clients are

12:49PM 14 participating in.  I leave Your Honor to determine the validity

12:49PM 15 of such an approach.

12:49PM 16         Second, the economic loss zones were hotly

12:49PM 17 negotiated.  They were based upon expert analyses.

12:49PM 18         I heard a lot about Destin.  I did not know where

12:49PM 19 Destin was prior to last year, I confess.

12:49PM 20     THE COURT:  Beautiful beaches there.

12:49PM 21     MR. GODFREY:  I know that now.  How do I know that?

12:49PM 22 Because one of the two leading negotiators has a summer house

12:49PM 23 there.  So the notion that we didn't hear about Destin 24/7 for

12:49PM 24 nine months and one day, that's a nonstarter.

12:49PM 25         Mr. Fayard still has the house there.  He still

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 170 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 169 of 328

169

12:49PM 1    goes with his wife, Frances.  I've never been invited, I

12:49PM 2    probably never will be, but I know about Destin.

12:49PM 3                    Third --

12:49PM 4                    Slide 35, please, Matthew.

12:49PM 5                    -- how were the zones developed?  They were

12:49PM 6    designed to reflect that as distance from the Gulf beaches

12:49PM 7    increases, the possibility of economic damage due to the spill

12:50PM 8    decreases.

12:50PM 9                    It's not only common sense; it's economic

12:50PM 10   reality.  That's just the reality.  The further north you go,

12:50PM 11   the further away from the beaches, the less impact.

12:50PM 12                   They were a product of arm's length negotiations

12:50PM 13   informed by local experts.  I didn't personally do the

12:50PM 14   drive-arounds.  We had people on our team, people on their

12:50PM 15   team, and experts who did the drive-arounds.  I think Mr. Rice

12:50PM 16   went a couple of times because he kept arguing about this

12:50PM 17   particular locality and that particular locality.

12:50PM 18                   Third, the experts have looked at it.  They

12:50PM 19   agree.  These are experts with deep experience and from the

12:50PM 20   region.

12:50PM 21                   Finally, they're the zones most likely to have

12:50PM 22   been injured.

12:50PM 23                   But Mr. Smith says he really doesn't want to kill

12:50PM 24   the settlement; he wants to improvement the class settlement.

12:50PM 25   What he really wants to do is to renegotiate the settlement.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 171 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 170 of 328

170

12:50PM 1          Any lawyer not in the room always thinks they

12:50PM 2     have a better idea about renegotiating the settlement.  The

12:50PM 3     question is not whether or not you should renegotiate it.  The

12:51PM 4     question is, looking at each person in each zone, is it fair or

12:51PM 5     is it not fair to that person.  These were rational,

12:51PM 6     fact-based, expert-based distinctions.

12:51PM 7          Fourth, I agree with Mr. Herman, the class

12:51PM 8     counsel here were more than adequate, they were more than

12:51PM 9     careful, they were more than prudent.  Both sides, given the

12:51PM 10    high profile nature of this case, were -- put themselves in a

12:51PM 11    position, either one of us, of doing something that someone

12:51PM 12    could criticize on any type of basis.  That's why we retained

12:51PM 13    experts.

12:51PM 14         Two final points.  The notion that a welding

12:51PM 15    company should be treated as a tourist business escapes me.

12:51PM 16    That was the first example Mr. Smith used.  Welding companies

12:51PM 17    have a different economic clientele, so to speak.

12:51PM 18         Finally, separate representation is not

12:51PM 19    necessary, as the Court well knows, and the various circuit

12:51PM 20    courts have held, for every type of group within a class.

12:51PM 21    There's a concept called *balkanization*.  What Mr. Smith is

12:52PM 22    arguing for is balkanization, which means you can't ever

12:52PM 23    achieve fairness and adequacy because you'll create inherent

12:52PM 24    conflicts and get too balkanized a class.

12:52PM 25         You appointed a PSC which had representatives

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 172 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 171 of 328

171

12:52PM 1    from every state, every region.  They have co-counsel.  There

12:52PM 2    are hundreds of them.  The notion that they showed up and sold

12:52PM 3    out one interest for another, how would that work, since they

12:52PM 4    represented all the various interests, which all had the same

12:52PM 5    interests, which was getting as much money as possible to make

12:52PM 6    it fair, reasonable and adequate.

12:52PM 7          As to Ms. Curtis, she says we're in favor of the

12:52PM 8    settlement.  She's here to object.  I'm not sure I understand

12:52PM 9    that.

12:52PM 10         First problem, not a valid objection.  She's

12:52PM 11   arguing about people who were excluded from the class for good

12:52PM 12   reasons.

12:52PM 13         Second, loss of use of enjoyment is not a valid

12:52PM 14   legal claim.  But the fact is, and Mr. Herman had it right, for

12:52PM 15   those people on the beach, where oil hit their beach, we

12:52PM 16   created zones to compensate them.

12:53PM 17         So when she talks about Mr. Kornman, yeah, the

12:53PM 18   problem is that beach that you saw the picture of, he doesn't

12:53PM 19   own it.  People of the United States own it.  He has a claim

12:53PM 20   that the law does not recognize; but, if he has a problem, he

12:53PM 21   could have opted out.

12:53PM 22         As to Grand Isle and Mr. Penton's claim --

12:53PM 23   actually, he's not in the class; he's excluded on that part,

12:53PM 24   but he may be included if he's got an economic loss claim for

12:53PM 25   other reasons.  I don't know his particular situation.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 173 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 172 of 328

172

12:53PM 1          As to Mr. Penton's point about the wetlands of

12:53PM 2   the other states should be treated the same, I've already

12:53PM 3   commented in my opening remarks about what the experts,

12:53PM 4   Mr. Tre' Wharton, the other person, Dr. Taylor, they disagree.

12:53PM 5   There were fact-based reasons for that.

12:53PM 6          Then we get to Mr. Waltzer.  I'm not sure he has

12:53PM 7   standing, actually.  He's here for GO FISH, which is an

12:54PM 8   organization that the Court has already ruled has no standing.

12:54PM 9          He filed last night a notice that said two of his

12:54PM 10  people would have objected if he'd had notice of the Court's

12:54PM 11  rule on lack of standing.  But I'm going to address his

12:54PM 12  arguments anyway.

12:54PM 13         He starts by saying it works for various people;

12:54PM 14  it just doesn't work across the board.  Again, he's trying to

12:54PM 15  renegotiate.  That is not the standard.  The question is, from

12:54PM 16  a bottom's up approach, was it fair, reasonable and adequate,

12:54PM 17  and we submit that the evidence shows that it is.

12:54PM 18         Go to slide eight, please.

12:54PM 19         That's the global.  Okay.  That is the global

12:54PM 20  slide that shows lost industry revenues versus the total

12:54PM 21  compensation.

12:54PM 22         So on a global basis, I don't think anyone can

12:54PM 23  contest.  I think Your Honor hit the nail on the head when you

12:54PM 24  said, you know, you seem to think it was six times revenue,

12:54PM 25  seems fair, reasonable and adequate.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 174 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 173 of 328

173

12:54PM  1          Next slide, please.

12:54PM  2          That's for shrimp.

12:54PM  3          Now, he put these charts up where he's trying to

12:54PM  4    recalculate what Mr. Perry and Mr. Balhoff's assumptions were

12:55PM  5    based upon the data that they had, data that they took into

12:55PM  6    account when they met with him and others.

12:55PM  7          Of course, those charts aren't in evidence.

12:55PM  8    Those charts are demonstratives, but they're not demonstratives

12:55PM  9    based upon evidence in the record.  They have multiple

12:55PM 10    assumptions in them that are not based upon any evidence in the

12:55PM 11    record, and that's kind of a fundamental problem.

12:55PM 12          You can consider them as demonstratives of the

12:55PM 13    argument by a lawyer without evidence to back them up.  That's

12:55PM 14    all that they are.

12:55PM 15          Next slide, please.

12:55PM 16          Oysters.  What his real problem is, he wants

12:55PM 17    shrimp to get more and oysters to get less, but that is not the

12:55PM 18    legal standard for fairness, reasonableness and adequacy.

12:55PM 19          The legal standard is, is it fair, reasonable and

12:55PM 20    adequate to the shrimpers; is it fair, reasonable and adequate

12:55PM 21    to the oysterers.  He does not address that.

12:55PM 22          You know, I grew up in the upper midwest.  There

12:55PM 23    used to be this saying that the grass is always greener on the

12:55PM 24    guy's next door.  That is not a legal standard.  That's a

12:55PM 25    standard that says, I have clients that want more at the

12:55PM 1    expense of someone else.  It's not a valid standard.

12:56PM 2            Finally, on blue crabs, I don't know what he's

12:56PM 3    talking about.  There is no evidence in the record to support

12:56PM 4    that chart he put up.  I do know that the Tunnell declaration

12:56PM 5    that we submitted, this is Document Number 7114-22,

12:56PM 6    paragraph 55, addresses blue crab harvests, that they are in

12:56PM 7    line with prespill --

12:56PM 8            THE COURT:  I have one question about that chart you

12:56PM 9    had up, the last one, the oyster compensation.  Is that the

12:56PM 10   oyster leaseholders or the oyster fishermen or both?

12:56PM 11           MR. GODFREY:  That's combined, Your Honor.

12:56PM 12           THE COURT:  It's combined.

12:56PM 13           As I appreciate it, one of Mr. Waltzer's

12:56PM 14   objections suggested that the oyster leaseholders, at least,

12:56PM 15   were being -- I guess he's arguing they're being

12:56PM 16   overcompensated or comparing what his fishermen were getting

12:56PM 17   compared to leaseholders.

12:56PM 18           Tell us how the leaseholders -- that's a

12:57PM 19   different type of claim, as I appreciate it, from the

12:57PM 20   fishermen.

12:57PM 21           MR. GODFREY:  Yes, Your Honor.  The fishermen are

12:57PM 22   claims about a catch, what can I catch.

12:57PM 23           The oyster leaseholders have a different problem.

12:57PM 24   They have the seabed that's been -- you know, the argument is

12:57PM 25   it's damaged.

12:57PM 1      Mr. Rice had me sit through a six-hour

12:57PM 2  presentation by two of their experts one day at some hotel

12:57PM 3  here, which was having a national vampire and werewolves

12:57PM 4  convention. I was a little bit nonplussed over that event. I

12:57PM 5  think it was staged by Mr. Rice, perhaps, but it was effective.

12:57PM 6  I found myself telling Mr. Niece (spelled phonetically), we

12:57PM 7  need to get more money.

12:57PM 8      But the reality is, there is this reculching,

12:57PM 9  which is expensive, by the acre that needs to take place.

12:57PM 10 That's why there is a difference. It's not simply -- before

12:57PM 11 you can harvest the oysters, they have got to have something to

12:57PM 12 grow on. The thing they are growing on has been damaged on the

12:57PM 13 seabed. That's what has to be addressed.

12:57PM 14     THE COURT: That part of their compensation is not to

12:57PM 15 compensate them simply for harvesting oysters, but for the

12:58PM 16 damage to their property, in essence, of the leaseholders.

12:58PM 17     MR. GODFREY: Correct.

12:58PM 18     So the equivalent would be, what if -- for

12:58PM 19 example, we have vessel damage in the VoO program, we have

12:58PM 20 property damage. Well, what if the fisherman's boat, you know,

12:58PM 21 was unusable or substantially damaged because of the oil or

12:58PM 22 something. That's a different -- you know, we'd look at that

12:58PM 23 differently.

12:58PM 24     But here, because it's on the seabed, and it's

12:58PM 25 tied into the harvesting of the oysters and the growing, so

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 177 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 176 of 328

176

12:58PM 1   they are compensated.  It's a different calculation.

12:58PM 2                 Mr. Perry and Mr. Balhoff looked at the evidence,

12:58PM 3   considered the evidence, and came to the conclusion that they

12:58PM 4   did.

12:58PM 5                 Finally, on cy pres, a few simple points.

12:58PM 6                 Again, Mr. Palmer has clients that apparently do

12:58PM 7   not want the settlement approved, that are making claims under

12:58PM 8   the settlement.  I do not know how that is consistent with the

12:58PM 9   obligations of counsel.  It seems to me that it's a fundamental

12:58PM 10  problem, but I'll leave that to the Court.

12:58PM 11                There are three simple points.  Number one, it's

12:58PM 12  not a cy pres fund.  Your Honor pointed that out.

12:59PM 13                Secondly, the law has recognized for years this

12:59PM 14  kind of beneficial fund, if it's tied to the class -- in all

12:59PM 15  seriousness, we have a fund designed to stimulate tourism and

12:59PM 16  the economy, the local economy, to address the stigma that

12:59PM 17  people are concerned about from the oil spill.  It benefits

12:59PM 18  every member of the class, including Mr. Palmer's, who are

12:59PM 19  residents, because it benefits the businesses around them and

12:59PM 20  everyone else.

12:59PM 21                You know, Mr. Rice made a very powerful argument

12:59PM 22  about this, why this was a class benefit.  He had data from a

12:59PM 23  group at Oxford that said for every dollar that you spend on

12:59PM 24  tourism advertising, you generate seven dollars in local

12:59PM 25  economic returns.  I don't know that I agreed with that, but

Case 2:10-md-02179-CJB-DPC Document 23682-8 Filed 10/02/18 Page 178 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 177 of 328

177

12:59PM   1    that was the genesis of it.

12:59PM   2            But the *Asian Oil* case was the first case, years

12:59PM   3    ago, that approved this.  It's not a cy pres fund.  He's just

12:59PM   4    wrong.

12:59PM   5            So if we could go, Matthew, because I'd like to

12:59PM   6    conclude with Slide 51, please.

01:00PM   7            I think we lose sight sometimes in these --

01:00PM   8            Slide 51.

01:00PM   9            -- we lose sight sometimes of the issue at hand.

01:00PM  10    This is a comparative exercise.  Is it fair, reasonable and

01:00PM  11    adequate to the class as a whole?

01:00PM  12            But what are the objectors asking this Court to

01:00PM  13    do?  For this Court to disapprove of this settlement, the

01:00PM  14    objectors are asking the Court to take each of the following

01:00PM  15    steps:  To reject to *Reed* factors and how they're applied to

01:00PM  16    the evidence before the Court; to reject the views of

01:00PM  17    experienced class counsel attorneys supporting the settlement;

01:00PM  18    to reject the opinions uncontested in nearly every instance of

01:00PM  19    numerous scientific and technical experts.

01:00PM  20            By the way, as to Mr. Smith's objection about

01:00PM  21    *Daubert*, that objection should have been raised last August,

01:00PM  22    but he's wrong under the law.  We've already identified that

01:00PM  23    for the Court when we made our initial filings.

01:00PM  24            Number four, to reject compensating the class

01:00PM  25    now, and instead compel each member of the class to engage in

01:00PM  1    years of protracted individual litigation, they need the Court

01:01PM  2    to reject Rules 23(b)(3), (c)(2)(B), (c)(3)(B) and (E), and

01:01PM  3    instead create an opt-in settlement scheme contrary to law.

01:01PM  4           They say they want certainty.  Well, as

01:01PM  5    Mr. Herman pointed out, certainty in this case is 30 years from

01:01PM  6    now.  We wouldn't be able to have a trial if that were the

01:01PM  7    legal standard.

01:01PM  8           They want, number six, this Court to reject our

01:01PM  9    prior precedent and case law approving far less generous class

01:01PM 10    settlements.

01:01PM 11           They want to do so, number seven, for the worst

01:01PM 12    reason of all; they want to elevate the claims of a very few to

01:01PM 13    the injury of the many in this class, the social tragedy that

01:01PM 14    Professor Coffee spoke about in his declaration.

01:01PM 15           Nothing in the facts, nothing in the law and

01:01PM 16    nothing in the equities of this case justify listening to these

01:01PM 17    objectors.

01:01PM 18           Respectfully, on behalf of BP, we would ask the

01:01PM 19    Court to enter final approval of this settlement.

01:01PM 20           Thank you very much, Your Honor.

01:01PM 21        THE COURT:  All right.  Thank you.  I'll take that

01:01PM 22    motion under advisement.

01:01PM 23           We're going to now recess for lunch.  It's

01:01PM 24    approximately one o'clock.  We'll come back at 2:15 for the

01:02PM 25    medical settlement.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 180 of 329
Case 2:10-md-02179-CJB-JCW Document 7892 Filed 11/15/12 Page 179 of 328

179

01:02PM  1            THE DEPUTY CLERK:  All rise.

01:02PM  2            (WHEREUPON, at 1:02 p.m., the Court was in luncheon

      3    recess.)

      4                              *    *    *

      5

      6

      7

      8

      9

     10

     11

     12

     13

     14

     15

     16

     17

     18

     19

     20

     21

     22

     23

     24

     25

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 02/02/18 Page 181 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 180 of 328

180

P-R-O-C-E-E-D-I-N-G-S

THURSDAY, NOVEMBER 8, 2012

A F T E R N O O N   S E S S I O N

(COURT CALLED TO ORDER)

02:19PM 7    THE DEPUTY CLERK:  All rise.

02:20PM 8    THE COURT:  All right.  Please be seated, everyone.

02:20PM 9    We will now take up the proposed medical

02:20PM 10   settlement.  This is Civil Action #12-968, *Plaisance, et al.*

02:20PM 11   *versus BP, et al.*  First presentation is by class counsel.

02:20PM 12   MS. GREENWALD:  Yes, Your Honor.  Good afternoon,

02:20PM 13   Your Honor.  Robin Greenwald for the Plaintiff Steering

02:20PM 14   Committee's class counsel.

02:20PM 15   I'm going to be dividing the argument this

02:21PM 16   morning with Elizabeth Cabraser.  I'm going to be addressing

02:21PM 17   the fairness issues, and Ms. Cabraser's going to be addressing,

02:21PM 18   following me, the class issues.  I'm going to try to keep to

02:21PM 19   12 minutes at the most.

02:21PM 20   Your Honor, when I had the pleasure of standing

02:21PM 21   before you in April of this year in the preliminary approval

02:21PM 22   hearing, I told you that the plaintiffs negotiated the medical

02:21PM 23   settlement with the principal goal of providing the greatest

02:21PM 24   amount of good for the greatest number of people in the Gulf

02:21PM 25   who were impacted by the oil spill.

Case 2:19-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 182 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 181 of 328

181

02:21PM 1    I just want to start again by reminding the Court

02:21PM 2    that this was the underpinning of each and every aspect of the

02:21PM 3    medical settlement that drove every single aspect of this

02:21PM 4    settlement.

02:21PM 5    So this is settlement focuses on the health

02:21PM 6    impacts of short-term exposure to oil and chemical dispersants

02:21PM 7    in the context of an oil spill such as we had in the Gulf of

02:21PM 8    Mexico in 2010.

02:21PM 9    So the exposures are generally for a short period

02:22PM 10   of time, up to several months to maybe as much as a year

02:22PM 11   intermittent exposure; and, exposure by both cleanup workers,

02:22PM 12   who went out and might have picked up dirty boom, they may have

02:22PM 13   been picking up tar balls on the beach, or residents who lived

02:22PM 14   typically within a half a mile from the coast, except for

02:22PM 15   wetlands, people who lived in the marsh areas, it goes out a

02:22PM 16   mile.  So this was the goal of protecting and giving benefits

02:22PM 17   to this group of people.  Again, as I say, that drove all of

02:22PM 18   the aspects of our settlement.

02:22PM 19   So the types of exposures and the types of

02:22PM 20   conditions and symptoms that people experience under these

02:22PM 21   circumstances are the very type that we have in our settlement

02:22PM 22   agreement.  There are things like congestion, headaches,

02:22PM 23   rashes, nausea.

02:22PM 24   But, as Your Honor knows, and everybody in this

02:22PM 25   courtroom knows, those are conditions that are also experienced

02:22PM 1    by people not in the context of an oil spill.  As a result,

02:22PM 2    many people who are impacted by the oil spill, many people who

02:22PM 3    maybe had these experiences and these exposures would have a

02:23PM 4    difficult time proving their cases in court because headaches,

02:23PM 5    nausea, and rashes can obviously be caused by other factors.

02:23PM 6         It's one of the reasons why, as Your Honor knows,

02:23PM 7    we have a very short time frame from when exposure happens to

02:23PM 8    when you have to manifest the condition, so that you can make

02:23PM 9    sure that these conditions are actually the result of exposure

02:23PM 10   to oil.

02:23PM 11        So this class is potentially as much as

02:23PM 12   200,000 people, about half of them cleanup workers and the

02:23PM 13   other half residents who might have suffered one other more of

02:23PM 14   the symptoms or conditions as a result of their exposure to the

02:23PM 15   oil.

02:23PM 16        As Your Honor had said -- one of the other sort

02:23PM 17   of backdrops I want to mention before we go on is the

02:23PM 18   Gulf Coast Claims Facility, which was the subject of discussion

02:23PM 19   this morning, was not an option for this class of class

02:23PM 20   members -- this class of people.  About less than a dozen

02:24PM 21   post-explosion personal injury claims were paid by the GCCF.

02:24PM 22   So that was never an option for this class of people, and it

02:24PM 23   wouldn't have been under any circumstances.

02:24PM 24        THE COURT:  Just to clarify, this class, this proposed

02:24PM 25   class does not in any way affect or include the personal injury

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 184 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 183 of 328

183

02:24PM 1    claims for people who were on the rig on the day of the

02:24PM 2    accident, correct?

02:24PM 3         MS. GREENWALD:  That is correct.  This is an entire

02:24PM 4    class of post-explosion, oil-related exposures.

02:24PM 5              So, as Your Honor has said several times, you do

02:24PM 6    not want to have this class of people and the people who were

02:24PM 7    injured by the oil spill in this case, another *Exxon Valdez*,

02:24PM 8    where 20 years from now, they are still in protracted

02:24PM 9    litigation and potentially may never recover.

02:24PM 10             As Dean Klonoff mentions in his declaration, he

02:24PM 11   recognizes that same risk and potential in this case.  He says,

02:24PM 12   quote:  It is critical to note that even after two decades of

02:25PM 13   litigation, few claimants with medical claims were compensated.

02:25PM 14   Absent a settlement, the thousands of classmembers here could

02:25PM 15   face a similar prospect, protracted litigation with no

02:25PM 16   certainty that there would ever be any compensation for

02:25PM 17   physical injury claims.

02:25PM 18             So with this backdrop, both Professor Klonoff and

02:25PM 19   Professor Coffee determined that this settlement was one of the

02:25PM 20   fairest settlements they had seen.  As Dean Klonoff states:  It

02:25PM 21   is one of the fairest and most impressive settlements I have

02:25PM 22   seen in more than 20 years of practicing, teaching and writing

02:25PM 23   in the field of class actions.

02:25PM 24             And Professor Coffee believes that, quote:  There

02:25PM 25   is no system of litigation that could produce similar results.

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 02/02/18 Page 185 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 184 of 328

184

02:25PM 1         And he further stated that, quote:  Rejection of

02:25PM 2  the settlement would injure many more -- many who rely on this

02:25PM 3  settlement.

02:25PM 4         So why is this medical settlement fair,

02:26PM 5  reasonable and adequate for the class members it intends to

02:26PM 6  protect?  I tried to put it into six categories for the Court,

02:26PM 7  and I tried to tie them somewhat into the objections that

02:26PM 8  Your Honor wants to hear about today.

02:26PM 9         One is, like the economic settlement, this is an

02:26PM 10  uncapped settlement.  All eligible claims made are paid.

02:26PM 11  Simple as that.  If you're eligible, you get paid.  If all

02:26PM 12  200,000 people who are potential class members bring in claims,

02:26PM 13  they all get paid.

02:26PM 14         The specified physical conditions are those --

02:26PM 15  this is number two.  The specified physical conditions are

02:26PM 16  those that are most often experienced by people who are exposed

02:26PM 17  to oil and/or chemical dispersants under similar circumstances.

02:26PM 18         Our expert, Dr. Michael Harbut, who also was our

02:26PM 19  consultant during the entire course of our settlement

02:26PM 20  negotiations for the medical settlement, stated in his

02:26PM 21  declaration that the conditions on matrix reflect the state of

02:27PM 22  science and conform to the world's medical literature regarding

02:27PM 23  health effects.

02:27PM 24         He would know.  He has spent his career treating

02:27PM 25  people who have been exposed to petroleum-based products.  He

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 186 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 185 of 328

185

02:27PM 1    has also consulted with Gulf Coast physicians who were treating

02:27PM 2    people who were actually exposed in this case, and they would

02:27PM 3    call him because he's a well-recognized expert in this field.

02:27PM 4            He's in Michigan, and they would call him and

02:27PM 5    they would consult with him about some of the patients they

02:27PM 6    were seeing.  So he understands the type of injuries that

02:27PM 7    result from this type of exposure.

02:27PM 8            Your Honor, even based on the objections that I

02:27PM 9    think are before you, I think the record is clear that you

02:27PM 10   could make a factual finding that the conditions -- that the

02:27PM 11   acute conditions and symptoms that are in this matrix are

02:27PM 12   what's supported by the medical literature.

02:27PM 13           I don't believe there is a single objection in

02:27PM 14   this record that contradicts Dr. Harbut's view of the

02:28PM 15   conditions that are covered under acute conditions from this

02:28PM 16   type of exposure.

02:28PM 17           So number three, the Specified Physical Condition

02:28PM 18   Matrix Compensation Program.  Is it fair, reasonable and

02:28PM 19   adequate?

02:28PM 20           I submit that it is, at a minimum, fair,

02:28PM 21   reasonable and adequate; and, as Halliburton would argue, they

02:28PM 22   think it's too generous.

02:28PM 23           In this case, acute conditions such as the

02:28PM 24   headaches, nausea, for people who did not seek medical

02:28PM 25   attention, are paid between 900 and $1,300, depending on your

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 187 of 329
Case 2:10-md-02179-CJB-DCW Document 3892-8 Filed 04/04/12 Page 186 of 328

186

02:28PM 1   status.

02:28PM 2          As Your Honor mentioned, I believe actually at

02:28PM 3   the preliminary approval hearing, we talked about the

02:28PM 4   *Howard versus Union Carbide* case, where the Louisiana Supreme

02:28PM 5   Court took awards from -- after a bench trial for almost

02:28PM 6   identical symptoms, actually.  The awards in that case by the

02:28PM 7   judge were between $750 and $3,500, and the Louisiana Supreme

02:28PM 8   Court said those payments were too high.  For the same type of

02:29PM 9   conditions that you see here, the Court reduced the values of

02:29PM 10  those judgments to between a hundred and $500.  So the

02:29PM 11  compensation in this case is very fair and reasonable.

02:29PM 12         In addition, the settlement --

02:29PM 13         THE COURT:  The types of claims you're talking about

02:29PM 14  again, just to be clear, are people who experienced these types

02:29PM 15  of symptoms, these specified symptoms, headaches, nausea and so

02:29PM 16  forth, within, I think it's, 48 to 72 hours?

02:29PM 17         MS. GREENWALD:  24 to 72.

02:29PM 18         THE COURT:  24 to 72 hours.

02:29PM 19         But the level of payments you just mentioned are

02:29PM 20  without any medical records, or someone didn't even go to the

02:29PM 21  doctor, right?

02:29PM 22         MS. GREENWALD:  Correct.  The *Howard* case is that --

02:29PM 23         THE COURT:  How does it work?  They file an affidavit

02:29PM 24  or something?

02:29PM 25         MS. GREENWALD:  Correct.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 188 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 187 of 328

187

02:29PM 1          THE COURT:  They have to show that they were working --

02:29PM 2    either resided in or worked as a response worker at the time,

02:29PM 3    and then, after that, an affidavit or something saying, I

02:30PM 4    experienced these symptoms in that time frame?  How does that

02:30PM 5    work?

02:30PM 6          MS. GREENWALD:  Precisely.  If you are a cleanup

02:30PM 7    worker, for example, you would say, I was a cleanup worker in

02:30PM 8    and around June of 2010.  In and around that time, I was out

02:30PM 9    picking up oily boom.  Say, it's a rash situation.  That night

02:30PM 10   or the next day, I developed a rash on my hand.  And that would

02:30PM 11   be what you would need to do as a cleanup worker.

02:30PM 12          For a resident, there is an additional

02:30PM 13   requirement for the acute condition of some type of

02:30PM 14   corroboration.  So it could be a spouse or a parent saying,

02:30PM 15   yes, my child or my spouse said he had a headache.  Or it could

02:30PM 16   be a prescription that you get -- or I shouldn't say

02:30PM 17   prescription.  You go to the drugstore, and you pick up a salve

02:30PM 18   for your rash.  That would be corroborating evidence to show

02:30PM 19   that you had this condition and symptom from your exposure to

02:30PM 20   oil.

02:30PM 21          You merely have to say that that's what you

02:30PM 22   were -- there's a time frame between your exposure and when you

02:31PM 23   had your headache or your rash or whatever symptom you had.

02:31PM 24          THE COURT:  Okay.

02:31PM 25          MS. GREENWALD:  In addition, this matrix, as Your Honor

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 189 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 188 of 328

188

02:31PM 1    well knows, the compensation is based on your level of proof.

02:31PM 2    So, as people have greater proof, the compensation levels go

02:31PM 3    up.

02:31PM 4            So if you had an acute condition, but it was

02:31PM 5    sufficient that you needed to seek medical care, the

02:31PM 6    compensation goes up dramatically.

02:31PM 7            If you are a person who had the acute condition

02:31PM 8    and it continues today, so you still have this condition that's

02:31PM 9    turned into what we call a chronic condition, then your

02:31PM 10   payments go up exponentially more.

02:31PM 11           So this entire SPC compensation structure is

02:31PM 12   designed to tie into the type of proof that a person has, and

02:31PM 13   frequently that proof is tied to the severity of the condition.

02:31PM 14      THE COURT:  What are the causation requirements for

02:31PM 15   people in this class?

02:31PM 16      MS. GREENWALD:  They would have to have medical proof,

02:32PM 17   so they would have to have gone to a doctor.

02:32PM 18           So, for the acute medical, for the A2, you would

02:32PM 19   have had to have gone to a doctor and said, you know, I had

02:32PM 20   this rash, and I worked on an oil spill.  There would be a

02:32PM 21   medical record that says, my patient said that they worked on

02:32PM 22   the oil spill, and they presented with a rash.

02:32PM 23           Then, they also have to have a declaration.  So

02:32PM 24   for chronic, it would be a doctor that's still treating that

02:32PM 25   person to say that that condition exists beyond the date of

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 190 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 189 of 328

189

02:32PM 1   filing the complaint, which is April 16th.

02:32PM 2          THE COURT:  Go ahead.

02:32PM 3          MS. GREENWALD:  Number four, all class members share

02:32PM 4   equally in the 21-year Periodic Medical Consultation Program.

02:32PM 5           Again, Dr. Harbut describes this program as one

02:32PM 6   of the best programs he's ever seen in his career.

02:32PM 7           Number five, all class members reap the benefit

02:32PM 8   of the Gulf Region Health Outreach Program.  I'll talk about

02:32PM 9   that a little bit at the end when I deal very briefly with

02:33PM 10   cy pres; but, the Gulf Region Health Outreach Program is really

02:33PM 11   intertwined with the Periodic Medical Consultation Program and

02:33PM 12   the benefits thereunder.

02:33PM 13          One of the aspects of the Periodic Medical

02:33PM 14   Consultation Program is we recognize that people frequently --

02:33PM 15   they have -- every three years, they can go for a full

02:33PM 16   consultation program for 21 years.

02:33PM 17          Frequently, people drop out of those programs for

02:33PM 18   several reasons, one of which is it's a burden to drive 50, 60,

02:33PM 19   70 miles to get to a doctor to have your program.  So we

02:33PM 20   designed this to try to make sure that there were facilities

02:33PM 21   within no more than 25 miles for most class members who would

02:33PM 22   fall under this program.

02:33PM 23          So we recognize that in this part of the Gulf

02:33PM 24   which was most impacted by the oil spill, there is a dearth of

02:33PM 25   medical facilities in some areas.  So the Gulf Region Health

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 191 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 190 of 328

190

02:33PM 1    Outreach Program, one of its principal goals is to improve the

02:34PM 2    capacity -- to increase, I should say, the capacity of

02:34PM 3    healthcare systems throughout the areas that were most impacted

02:34PM 4    by the oil spill that's tied, identically, to the zones of the

02:34PM 5    medical class.  So the Gulf Region Health Outreach Program is

02:34PM 6    really extraordinarily tied to the benefits of the settlement.

02:34PM 7              It also has a library, which actually I'm pleased

02:34PM 8    to say went live this week.  It already has over 100,000

02:34PM 9    documents.  The library is electronic.  Anyone in the Gulf, or

02:34PM 10   anyone in the world, for that matter, could access the library.

02:34PM 11             The 100,000 documents are searchable by word, by

02:34PM 12   topic, by defendant.  You can search it all sorts of different

02:34PM 13   ways.  It has a ton of information on medical issues,

02:34PM 14   ecosystem, the sampling and analysis that BP did during the

02:34PM 15   course of the oil spill.  It has virtually all of the documents

02:34PM 16   that would otherwise be extraordinarily difficult for the

02:34PM 17   public at large to obtain in the course of trying to understand

02:34PM 18   what's happened to its environment.

02:35PM 19             Again, this library ties to the Periodic Medical

02:35PM 20   Consultation Program that's live for 21 years, and it will be

02:35PM 21   periodically updated by BP.

02:35PM 22             Sixth, and finally, all class members can sue BP

02:35PM 23   on what's call a BLO, a back-end litigation option, if they

02:35PM 24   were to unfortunately experience a later manifested physical

02:35PM 25   condition.  No one gives up the right down the road to seek

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 192 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 192 of 328

191

02:35PM 1    compensation for that.

02:35PM 2              So some of the benefits of this class -- unlike

02:35PM 3    the economic class, we don't have payments going out yet;

02:35PM 4    however, there are benefits that have already started to flow

02:35PM 5    from this settlement.

02:35PM 6              $20 billion has already been distributed to the

02:35PM 7    Gulf Region Health Outreach Program project.  As I mentioned,

02:35PM 8    the library is up and running.  The claims administrator has

02:35PM 9    been processing data disclosure forms for months.  So people

02:35PM 10   who aren't sure whether they are in the medical encounters

02:36PM 11   database, or they are not sure whether they were badged cleanup

02:36PM 12   workers, they've been able to get that information from the

02:36PM 13   claims administrator, who has been providing that information

02:36PM 14   regularly as people seek it.

02:36PM 15             Last, but not least, while the claims

02:36PM 16   administrator isn't sending its results of claims that are

02:36PM 17   submitted, it is processing those claims so that once the

02:36PM 18   effective date of the medical settlement -- should Your Honor

02:36PM 19   approve the settlement, once the effective date occurs, there

02:36PM 20   will be -- virtually, ready to go.  The checks will be able to

02:36PM 21   go out in the mail, essentially.

02:36PM 22             So while there aren't payments made, all the

02:36PM 23   parts are moving, so that if and when that happens, payments

02:36PM 24   can go out to people.  So there is a lot happening.

02:36PM 25             THE COURT:  The effective date is when?

Case 2:10-md-02179-CJB-DPC Document 23682-8 Filed 02/02/18 Page 193 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 192 of 328

192

02:36PM 1          MS. GREENWALD:  It's --

02:36PM 2          THE COURT:  Once there is final approval --

02:36PM 3          MS. GREENWALD:  And all appeals.

02:36PM 4          THE COURT:  -- and all appeals or no appeals.

02:36PM 5          MS. GREENWALD:  Correct.

02:36PM 6               Just a couple of other indicia of the

02:36PM 7     settlement's fairness.  One is the small number --

02:36PM 8          THE COURT:  Except for the first part of the program.

02:37PM 9          MS. GREENWALD:  The Gulf Region Health Outreach

02:37PM 10    Program.

02:37PM 11         THE COURT:  That's already being started, right?

02:37PM 12         MS. GREENWALD:  Correct.

02:37PM 13              Part of that is because it is almost the

02:37PM 14    foundation of so much of the settlement, because if we don't

02:37PM 15    get those facilities up and running, then people may not have

02:37PM 16    access to the kind of healthcare that they need.  So it

02:37PM 17    actually works very well to have that part going forward.

02:37PM 18              One of the other things I was going to mention,

02:37PM 19    but I'll mention it now, is one part of the Gulf Region Health

02:37PM 20    Outreach Program is actual mental and behavioral health

02:37PM 21    services that right now are being provided to people in the

02:37PM 22    Gulf through that program.

02:37PM 23              So that's a benefit that is available now to

02:37PM 24    people, even though -- even though, again, the compensation

02:37PM 25    payments and the actual medical compensation program is not yet

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 194 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 193 of 328

193

02:37PM 1  up and running.  But it will be much more ready to be so

02:37PM 2  when -- because of the fact that the Gulf Region Health

02:37PM 3  Outreach Program is up and running.

02:37PM 4        So a couple of other indicia of the settlement's

02:38PM 5  fairness is very similar to what we discussed in economic

02:38PM 6  settlements, so I won't spend too much time on this.

02:38PM 7        It's the small number of objections.  Of, again,

02:38PM 8  the potential 200,000 class members that could be in this

02:38PM 9  class, there were only 20 objections filed representing

02:38PM 10  approximately 150 objectors.

02:38PM 11        Even among those, many of them, based on their

02:38PM 12  submission, are not really class members.  They are saying, I

02:38PM 13  wanted to be included in the class, and I'm not; so, they are

02:38PM 14  not even classmembers.

02:38PM 15        Some of them, since they filed the objections,

02:38PM 16  have opted out, so -- but, even assuming that all of them

02:38PM 17  stayed in, it represents a very, very small number.

02:38PM 18     THE COURT:  In terms of the people who object because

02:38PM 19  they are not included, they're not included because they live

02:38PM 20  outside the geographic zone, or they are not a response worker,

02:38PM 21  or what; some combination?

02:38PM 22     MS. GREENWALD:  I'm trying to think if there is any

02:39PM 23  that are not because they live outside the zone.  Because all

02:39PM 24  cleanup workers are in.  That's not an issue.  There is no

02:39PM 25  exclusion of cleanup workers.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 195 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 194 of 328

194

02:39PM 1        So I think that every objector believes that the

02:39PM 2   class should have been wider.  There may be -- right, I believe

02:39PM 3   that's it.  I'm trying to remember if one of the objectors also

02:39PM 4   wanted a -- covered, but I think it was mostly that they live

02:39PM 5   outside of the zone.

02:39PM 6        In this district, said in *Turner versus Murphy*,

02:39PM 7   that the small number of objectors is an indication of the

02:39PM 8   settlement's fairness, reasonableness and adequacy.  Surely, we

02:39PM 9   have that here.  The objections are approximately .01 percent

02:39PM 10  of the potential number of class members in this settlement.

02:39PM 11       Further, as Dean Klonoff also notes in his

02:39PM 12  declaration, he says that the objections, when examined

02:39PM 13  together, quote, reinforce the overall fairness of the

02:39PM 14  settlement in many ways.

02:39PM 15       The second point on this is the few opt-outs that

02:40PM 16  we have.  As of yesterday, there were 1,728 opt-outs filed.  Of

02:40PM 17  those, approximately a thousand were filed by just one law

02:40PM 18  firm.  Very few opt-outs are *pro se* filings, only 280.

02:40PM 19       At least a few hundred of these opt-outs, you can

02:40PM 20  tell just from the opt-out forms that they are not actually

02:40PM 21  class members.  They are not cleanup workers, nor were they

02:40PM 22  within the zone.

02:40PM 23       So, again, the small number of opt-outs, again,

02:40PM 24  is an indication of the settlement's fairness, reasonableness

02:40PM 25  and adequacy.

I also wanted to mention another aspect of the
fairness of the settlement, which I think is really telling
about the settlement, is that so far there have been about
4,300 claim forms filed.  Of those, 92 percent are filed by
*pro se* applicants.

So one of the great things about the settlement
is, A, the word has gone out, people are filing claims, and we
have a straightforward process.  People understand how to do
it, and they are filing their claim forms, and they are going
to get their money.  It is, in my opinion, one of the strongest
aspects of how fair the settlement really is.

I just want to close before Ms. Cabraser gets up
by talking just briefly about cy pres, because I know it's one
of the issues that's going to come up by the objectors, and I
just want to preemptively mention a couple of things.

There is no cy pres in this settlement,
Your Honor.  As Your Honor noted with the economic settlement,
this is an uncapped settlement fund.  To the extent that there
are payments that have been made and will be paid in the future
to the Gulf Region Health Outreach Program, it in no way, shape
or form affects any payments to class members for either the
Periodic Medical Compensation Program or the Specified Physical
Condition Matrix payments.  There is just no trade-off
whatsoever.

As I've already mentioned, the Gulf Region Health

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 197 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 198 of 328

196

02:41PM  1   Outreach Program is an incredibly important benefit for class

02:42PM  2   members.  It really is intertwined with the entire settlement

02:42PM  3   and the benefits provided thereunder.

02:42PM  4          In addition, the Gulf Region Health Outreach

02:42PM  5   Program, as I mentioned, provides much-needed healthcare in the

02:42PM  6   zones that are impacted by this settlement.

02:42PM  7          The last thing I want to mention on this is that

02:42PM  8   to the extent that cy pres is questioned on the basis of the

02:42PM  9   fact that one doesn't know who the beneficiaries are, which is

02:42PM 10   certainly one of the suggestions in the objection, our

02:42PM 11   settlement agreement in Exhibits 13 through 16 lay out in

02:42PM 12   painstaking detail each of the grantees, which institution, who

02:42PM 13   at the institution is actually running the program, when -- how

02:42PM 14   much they are being paid in total, when the payments are being

02:42PM 15   made, and how much each payment is over the course of the five

02:42PM 16   years.  So the transparency of this Gulf Region Health Outreach

02:43PM 17   Program couldn't be greater.

02:43PM 18          So, in closing, we all have worked very hard to

02:43PM 19   hope that the benefits of this medical class will allow people

02:43PM 20   who otherwise typically are not compensated for these type of

02:43PM 21   exposures to be compensated and reap the other benefits of the

02:43PM 22   settlement.

02:43PM 23          Thank you.

02:43PM 24       THE COURT:  Thank you very much.

02:43PM 25       MS. CABRASER:  Good afternoon, Your Honor, and

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 198 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/05/12 Page 197 of 328

197

02:43PM 1    Magistrate Judge Shushan.  Elizabeth Cabraser for class counsel

02:43PM 2    on behalf of the medical settlement class.

02:43PM 3            We're very proud this afternoon to come before

02:43PM 4    the Court to move for confirmation of the settlement class

02:43PM 5    certification of the medical class.

02:43PM 6            As we and the experts in their reports and

02:43PM 7    declarations have discussed in detail, this proposed class

02:44PM 8    meets the requirements of Rule 23(a)(1) through (4) and

02:44PM 9    23(b)(3) in the context of settlement class certification.

02:44PM 10           Common issues are present and predominant.  This

02:44PM 11   is certainly the superior available method to fairly and

02:44PM 12   efficiently resolve and compensate the members of this very

02:44PM 13   precisely and objectively defined and ascertainable class.

02:44PM 14           We worked studiously and tenaciously throughout

02:44PM 15   the settlement negotiation process to make sure that this class

02:44PM 16   could be certified and would stand because we knew that the

02:44PM 17   best and, indeed, the only way to deliver benefits like this to

02:44PM 18   victims of the spill would be through a Rule 23 class

02:44PM 19   mechanism.  So we asked the experts on class certification

02:45PM 20   essentially to cross-examine this class.

02:45PM 21           You'll note in the reports of Dean Klonoff and

02:45PM 22   Professor Coffee and others that they take a skeptical tone, as

02:45PM 23   well they should and as they must.

02:45PM 24           These experts have, in the course of their

02:45PM 25   professional careers, publicly criticized, critiqued and

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 199 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 199 of 326

198

02:45PM 1    sometimes objected to mass tort class actions, both through

02:45PM 2    litigation and settlement.  They know what the vulnerabilities

02:45PM 3    of such classes can be.

02:45PM 4         So these skeptics, these critics, cross-examined

02:45PM 5    this class to see whether it was the type of class that can be

02:45PM 6    certified and can be affirmed, or whether it was vulnerable

02:45PM 7    primarily under the watershed case of *Amchem*.

02:45PM 8         *Amchem* provides guidance and basically sets up a

02:45PM 9    tale of two classes, classes which fail and classes which

02:46PM 10   succeed.  The Fifth Circuit has taken the *Amchem* decision and

02:46PM 11   applied it to cases more like this one, cases involving toxic

02:46PM 12   exposures, oil spills.  So we have a jurisprudence that we

02:46PM 13   could examine and be guided by, the experts could examine and

02:46PM 14   be guided by to tell us whether or not this class meets the

02:46PM 15   test of Rule 23 in the mass tort settlement context.

02:46PM 16        So, as you know from the reports and from our

02:46PM 17   briefs, our experts looked at the *Amchem* requirements.  They

02:46PM 18   looked at the *Castano* decision from the Fifth Circuit.

02:46PM 19   Although it's hardly like this case at all, it nonetheless is

02:46PM 20   an influential decision.  They looked at the more analogous

02:46PM 21   decisions from the Fifth Circuit, the *Mullen versus*

02:46PM 22   *Treasure Chest* case, *Madison versus Chalmette, Turner versus*

02:46PM 23   *Murphy Oil*, the *Steering Committee versus Exxon* case, cases

02:46PM 24   that have both certified and affirmed and denied classes.

02:47PM 25        This case meets the *Amchem* test for mass accident

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 200 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 199 of 328

199

02:47PM 1    cases arising from a common cause or disaster that satisfied

02:47PM 2    the predominance requirement because this case does not involve

02:47PM 3    long-term exposure over many years in many places to many

02:47PM 4    products manufactured by many defendants, giving rise to many

02:47PM 5    different diseases with long periods of manifestation across

02:47PM 6    the nation.  It does not involve what the Supreme Court called

02:47PM 7    *an amorphous and unselfconscious class*.

02:47PM 8            THE COURT:  Let me ask you this, Ms. Cabraser.  How

02:47PM 9    does this proposed class differ from and make it more

02:47PM 10   certifiable, if that's a correct term, make it certifiable, as

02:47PM 11   opposed to, for example, the class in the *Plaintiffs' Steering*

02:48PM 12   *Committee versus Exxon* that the Fifth Circuit refused to

02:48PM 13   certify?

02:48PM 14           MS. CABRASER:  Your Honor, as our experts --

02:48PM 15           THE COURT:  That was a single event, as I recall,

02:48PM 16   escape of some toxic fumes or something, and people were

02:48PM 17   alleging a variety of different types of ailments as a result

02:48PM 18   thereof.

02:48PM 19           So tell me how this class is cabined, I guess, to

02:48PM 20   make it certifiable, as opposed to the class in that case.

02:48PM 21           MS. CABRASER:  Certainly, Your Honor.

02:48PM 22           I think we are very fortunate that we have the

02:48PM 23   Fifth Circuit's own take on the *Steering Committee* case, which

02:48PM 24   was also a Fifth Circuit decision; but, in the more recent

02:48PM 25   decision of *Madison versus Chalmette*, the Fifth Circuit

02:48PM  1    undertook a survey of many of the cases I just mentioned.

02:48PM  2         The Fifth Circuit looked at *Steering Committee*,

02:48PM  3    the Fifth Circuit looked at *Watson versus Shell* and *Early,* a

02:48PM  4    Fifth Circuit decision affirming class certification, and

02:49PM  5    *Turner versus Murphy Oil*.

02:49PM  6         The difference is the analysis that the District

02:49PM  7    Court did not do in *Steering Committee*.  It's what wasn't done

02:49PM  8    by the District Court in *Steering Committee* which has been done

02:49PM  9    here.

02:49PM 10         Now, remember, *Steering Committee* was litigation

02:49PM 11    purposes class.  It wasn't a settlement class.  We're not

02:49PM 12    asking for a litigation purposes class here.  That's not our

02:49PM 13    motion.

02:49PM 14         I would expect BP to jump up and object if I

02:49PM 15    started to argue that we could meet those requirements.  But,

02:49PM 16    nonetheless, the reason that the *Turner versus Murphy Oil*

02:49PM 17    class, which was also certified for litigation purposes, was

02:49PM 18    certified, and why the Fifth Circuit endorsed that, while

02:49PM 19    disapproving of certification in *Steering Committee*, was the

02:49PM 20    fact that one court did a true predominance analysis in terms

02:49PM 21    of how the case could be tried and what the common issues were,

02:49PM 22    and one court did not.

02:50PM 23         The court that did not, in the view of the

02:50PM 24    Fifth Circuit, was the *Steering Committee* court.  It didn't

02:50PM 25    look at how to administer the trial of the case.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 202 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 201 of 328

201

02:50PM 1          The *Turner versus Murphy Oil* court did look at

02:50PM 2     that and, indeed, had a multiphase -- I believe it was a

02:50PM 3     three-phase trial plan.

02:50PM 4          The *Watson versus Shell* case had a four-phase

02:50PM 5     trial plan.

02:50PM 6          Coincidentally -- or not so coincidentally --

02:50PM 7     this Court has a multiphase trial plan.  We know what the

02:50PM 8     predominating issues in this litigation are, we know in what

02:50PM 9     order they would be tried, we know how they would be managed

02:50PM 10    for trial.

02:50PM 11         That enables us with confidence to submit to the

02:50PM 12    Court that, unlike *Steering Committee*, there is a record that

02:50PM 13    enables this Court to determine that common issues predominate,

02:50PM 14    what those common issues are, and, in the absence of

02:50PM 15    settlement, how they would be managed for trial.

02:50PM 16         Although, *Amchem* says, you don't have to go

02:51PM 17    there, indeed, the *Madison case*, the *Chalmette case* said, you

02:51PM 18    know, we're not saying this class can't be certified, we're

02:51PM 19    remanding it.

02:51PM 20         We think the Court could decide to certify the

02:51PM 21    class for liability based on predominance of common liability

02:51PM 22    issues.  It's just that the Court did not do that.

02:51PM 23         So, by contrast here, we have in our briefs and

02:51PM 24    our experts have also identified the predominating common

02:51PM 25    issues that relate to reliability.

02:51PM 1         Moreover, we have more tightly defined our class

02:51PM 2 than the *Steering Committee* court did.  We have very, very

02:51PM 3 carefully defined our class to limit it in time and space, to

02:51PM 4 not only provide a precise objective and ascertainable class

02:51PM 5 definition so everybody knows whether they are in that class or

02:51PM 6 not when they get the notice, which, by the way, they all got

02:51PM 7 by direct mail.

02:51PM 8         There has not been a single objection to the

02:51PM 9 notice program for either settlement in this case, Your Honor.

02:52PM 10         So people who were in a specific place during a

02:52PM 11 specific time period and doing specific work, cleanup work, for

02:52PM 12 example, are in the class.  So we have a more precise, more

02:52PM 13 constrained class than was proposed in *Steering Committee*.

02:52PM 14         We have fewer claims.  We don't have the panoply

02:52PM 15 of emotional distress claims, psychiatric claims, all of the

02:52PM 16 claims that were presented as class claims in *Steering*

02:52PM 17 *Committee*, which, I think, in the view of the Fifth Circuit,

02:52PM 18 started to cause the individualized damages proof issues to

02:52PM 19 start to overwhelm the common exposure issues.

02:52PM 20         So we have only those manifest medical conditions

02:52PM 21 that arise acutely, within 24 to 72 hours, so we now have

02:52PM 22 causation as a common question, rather than as an individual

02:52PM 23 question, which it was in *Steering Committee*.  I think that

02:52PM 24 helps tip the balance, Your Honor.

02:52PM 25         Here, the way the class is defined, not only are

02:53PM 1     questions of liability common and would be sufficient to

02:53PM 2     predominate; but, the damages causation questions are common

02:53PM 3     because the experts from both sides, as they so rarely do, have

02:53PM 4     converged here, and they say, we agree.

02:53PM 5              When symptoms like this show up within hours of

02:53PM 6     the exposure to these substances, it's not only common sense --

02:53PM 7              THE COURT:  Excuse me one second, Ms. Cabraser.  I need

02:53PM 8     to have a brief conversation.

02:53PM 9              All right.  Is there someone in the courtroom who is

02:53PM 10    attempting to or is live streaming the audio of this hearing

02:53PM 11    outside the courtroom?  I understand there is someone in the

02:54PM 12    rear of the courtroom.

02:54PM 13              Ma'am, I'm going to have to ask you to leave the

02:54PM 14    courtroom right now.  Leave the courtroom right now, please, or

02:54PM 15    I'll have you escorted out.

02:54PM 16              The persons who are with you, I understand you

02:54PM 17    have two or three people with you, all three of you or four or

02:54PM 18    whatever need to leave right now.  You've violated the rules of

02:54PM 19    the Court.

02:54PM 20         I'm told by the Marshal she's not by herself.  They

02:54PM 21    came in together and sat together, and they all need to leave

02:55PM 22    right now.  These people are broadcasting, it's on a web site,

02:55PM 23    and they need to be -- in fact, remove them from the

02:55PM 24    courthouse, please, okay?

02:55PM 25              COURT SECURITY OFFICER:  Okay.

Case 2:10-md-02179-CJB-DCW Document 23882-8 Filed 02/02/18 Page 205 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 204 of 328

204

02:55PM 1      THE COURT:  Ma'am, you can't hide back there.  You need

02:55PM 2  to leave, too.  It's your web site.

02:55PM 3      UNIDENTIFIED SPEAKER:  I do not have a web site.  I

02:55PM 4  haven't done anything wrong.  I'm not going to leave this

02:55PM 5  courtroom.

02:55PM 6      THE COURT:  You need to leave, ma'am.  We're going to

02:56PM 7  have you escorted out right now.

02:56PM 8      UNIDENTIFIED SPEAKER:  I haven't done anything wrong.

02:56PM 9      THE COURT:  Just escort her out of the building right

02:56PM 10  now, please.

02:56PM 11      UNIDENTIFIED SPEAKER:  I don't have a web site.  No,

02:56PM 12  sir, I do not have a web site.  I don't have a web site.  I

02:56PM 13  haven't done anything wrong.

02:56PM 14      THE MARSHAL:  I understand.

02:56PM 15      UNIDENTIFIED SPEAKER:  Crap.

02:56PM 16      THE COURT:  Escort her from the building, please.

02:56PM 17      UNIDENTIFIED SPEAKER:  I haven't done anything wrong.

02:56PM 18  I didn't do anything wrong.

02:56PM 19      THE COURT:  All right.  I apologize to everyone.

02:56PM 20          Okay.  Ms. Cabraser.

02:56PM 21      MS. CABRASER:  I think, Your Honor, I would like to

02:56PM 22  close, unless you have any other questions, at least for this

02:56PM 23  opening, in the interest of time, by stating simply that we

02:56PM 24  viewed *Amchem* and the Fifth Circuit cases following *Amchem* as

02:56PM 25  our beacon in this case, and both with respect to the type of

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 206 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/05/12 Page 205 of 328

205

02:56PM  1      class this is, the way it is narrowly and tightly defined, the

02:57PM  2      fact that it compensates manifest symptoms, the fact that it

02:57PM  3      allows causation to be a common issue, brings us in the center

02:57PM  4      of that sphere of cases that *Amchem* supports in terms of

02:57PM  5      settlement class certification; and, that we also structured

02:57PM  6      the settlement agreement to assure adequacy.

02:57PM  7           The structural assurances of adequacy in this

02:57PM  8      case are built into the settlement.  We had no factions of the

02:57PM  9      class competing for a limited --

02:57PM 10           THE COURT:  So basically it's the type of work they

02:57PM 11      were doing, the geographic location, the specified nature of

02:57PM 12      their symptoms, and I'll call it the immediacy of their

02:57PM 13      symptoms?

02:57PM 14           MS. CABRASER:  Correct, Your Honor.

02:57PM 15           THE COURT:  Those are the factors that tightly define

02:57PM 16      the class, in your view?

02:57PM 17           MS. CABRASER:  Correct, Your Honor, and the fact that

02:58PM 18      the defendant is a single defendant, not multiple defendants.

02:58PM 19           So this is a -- *local* seems an underwhelming word

02:58PM 20      to use for it, but it's a local rather than a dispersed mass

02:58PM 21      tort, and it's localized in time as well as place.

02:58PM 22           That enabled us to give good notice to the class

02:58PM 23      members, and enables them to make informed choices about

02:58PM 24      whether to claim or opt out, and assures that they can take

02:58PM 25      advantage of the benefits of the settlement.

Case 2:19-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 207 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 206 of 328

206

02:58PM 1      This is not a capped fund, as Ms. Greenwald

02:58PM 2 pointed out.  We don't have factions of the class competing for

02:58PM 3 it, and we don't have a divide between present claimants and

02:58PM 4 future claimants.  There is no release under the settlement for

02:58PM 5 future exposures.  This is all about compensation and other

02:58PM 6 benefits falling from past exposure.

02:58PM 7      We have an option for people that develop further

02:58PM 8 symptoms from that past exposure, and that is the back-end

02:58PM 9 litigation opt-out, which protects them, enables them to make

02:58PM 10 choices later on to pursue claims under relaxed standards of

02:59PM 11 causation, and with defenses such as statutes of limitation and

02:59PM 12 liability waived.

02:59PM 13     THE COURT:  So, as I understand it, that the class, as

02:59PM 14 we defined it, we're dealing with past exposures; and, if

02:59PM 15 someone later -- if the exposure -- if the symptoms, I guess,

02:59PM 16 the injury, later manifests itself, and it's unknown now or

02:59PM 17 could not be known now, then they have this back-end litigation

02:59PM 18 option?

02:59PM 19     MS. CABRASER:  That's right.  They can pursue a

02:59PM 20 Workers' Compensation claim or a tort claim under maritime law,

02:59PM 21 and their recovery would be limited only by what they could

02:59PM 22 prove in terms of the compensatory damages.

02:59PM 23     There is no preset limit or cap on the recovery.

02:59PM 24 The punitive damages would be eliminated.

02:59PM 25     THE COURT:  What would they have to prove in terms of

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 208 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 207 of 328

207

02:59PM 1  liability or causation or things like that?

02:59PM 2      MS. CABRASER:  The type of causation that would have to

03:00PM 3  be proved would be like the specific medical causation to

03:00PM 4  actually tie their later manifested condition back to something

03:00PM 5  that could occur, could arise from exposure to the

03:00PM 6  petrochemicals at issue; but, they don't have to prove that BP

03:00PM 7  is responsible for those chemicals, and they don't have to

03:00PM 8  contend with a statute of limitation defense.  So their case

03:00PM 9  becomes less expensive to try, if that's what they need to do.

03:00PM 10      THE COURT:  So they don't have to prove liability of

03:00PM 11  BP.

03:00PM 12      MS. CABRASER:  No, they don't have to hire those

03:00PM 13  experts, walk that road or muster that evidence.

03:00PM 14      THE COURT:  For people who have a concern that they may

03:00PM 15  be exposed in the future should some Macondo oil appear at some

03:00PM 16  location and have symptoms from that, they are carved out, and

03:00PM 17  whatever rights they have, they still have?

03:00PM 18      MS. CABRASER:  That's right.  They can make claims now.

03:00PM 19  They will not be releasing any claims they might have in the

03:00PM 20  future due to any future exposure by BP or anybody else.  So

03:01PM 21  that is a major distinction.

03:01PM 22      Also, I might add that people do not need to

03:01PM 23  choose between being in the medical and economic classes.  Some

03:01PM 24  people are in both classes and may wish to make claims in both

03:01PM 25  classes.  Giving a release in one class does not release the

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 209 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 209 of 328

208

03:01PM 1    claims in the other, so people are not forced to make the

03:01PM 2    choice between those two classes.

03:01PM 3            THE COURT:  Thank you very much.

03:01PM 4            MS. CABRASER:  Thank you.

03:01PM 5            THE COURT: All right.  Mr. Godfrey.

03:01PM 6            MR. GODFREY:  Thank you, Your Honor.

03:01PM 7            As the Court knows, just as with the economic

03:01PM 8    class, there is an extensive evidentiary record before the

03:01PM 9    Court with medical experts, legal experts, and other fact

03:01PM 10   witnesses who have filed declarations and evidence in support

03:02PM 11   of the fairness, reasonableness and adequacy of the medical

03:02PM 12   benefits settlement.

03:02PM 13           We think the Court should strip all of the

03:02PM 14   filings away, boil it down to three basic buckets, where the

03:02PM 15   class would be approved for the following three reasons.

03:02PM 16           Matt, slide two, please.

03:02PM 17           The class supports it -- this is in data

03:02PM 18   points -- the law and the evidence support it, the *Reed* factors

03:02PM 19   as matched to the evidence; and, the small number and content

03:02PM 20   of the objections support the settlement.

03:02PM 21           There are almost no objectors.  I thought about

03:02PM 22   the best way to portray this, but that little red person and a

03:02PM 23   half, that represents the person who is objecting; and,

03:02PM 24   everyone else, those are the people who want it.

03:02PM 25           The objector, of course, if they really are

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 210 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 209 of 328

209

03:02PM  1    serious, the 150 of them, they could always opt out; but, in

03:02PM  2    terms of a voting majority, any Presidential candidate would

03:03PM  3    love to get an election result like that.

03:03PM  4        THE COURT:  Is there any type of en masse filing,

03:03PM  5    again, like we had in the economic?

03:03PM  6        MR. GODFREY:  I'm getting to that, Your Honor, yes.

03:03PM  7            There is a parity of my approach between the two

03:03PM  8    settlements.  You'll figure that out in about the third slide

03:03PM  9    now.

03:03PM 10            So here, we have the fact that most objectors are

03:03PM 11    part of a mass objection.  So we have 150.  We think that 54 of

03:03PM 12    them have no standing.

03:03PM 13            Now, one aside, there is a different

03:03PM 14    administrator.  This is the Garretson Resolution Group.  Why is

03:03PM 15    that?  Because as good as Mr. Juneau is, the Garretson group

03:03PM 16    focuses solely on classes that deal with personal injuries.

03:03PM 17            There are these federal regulations under

03:03PM 18    Medicare that are -- I would describe them as Byzantine and

03:04PM 19    complex, and that's a simplified way of saying how challenging

03:04PM 20    they are.

03:04PM 21            So Mr. Garretson and his group, who I have not

03:04PM 22    dealt with before, but I think Ms. Greenwald had, they are

03:04PM 23    truly expert in that.  We felt that we needed a separate

03:04PM 24    administrator, if for no other reason than to try to get along

03:04PM 25    well with the federal government and Medicare.

03:04PM  1        But they report to us we have 150 objectors.

03:04PM  2   There appear to be 96 objectors with standing, and, of those,

03:04PM  3   there are -- 75 percent are represented by the Sterbcow law

03:04PM  4   group, which I understand is not the same Paul Sterbcow on the

03:04PM  5   PSC.

03:04PM  6        MR. STERBCOW:  That's correct, Your Honor.

03:04PM  7        MR. GODFREY:  But I do understand it's his first

03:04PM  8   cousin, so I'm not sure how that family works.

03:04PM  9        THE COURT:  When I saw that, I thought he had left his

03:04PM 10   law firm or something.  Or had a sideline business, you know.

03:04PM 11        MR. GODFREY:  I did call Mr. Roy about that.  I had

03:04PM 12   some questions.

03:04PM 13        So we have less than 1 percent of the class

03:04PM 14   members have opted out.  Seventy percent of the opt-outs --

03:05PM 15   there are 1728 opt-outs as of the other day.  They are still,

03:05PM 16   as you know, counting.  As we're required to, Your Honor, we'll

03:05PM 17   file a declaration, an affidavit laying all of the opt-outs and

03:05PM 18   objectors out -- but 70 percent of them are by two firms,

03:05PM 19   Nexen Pruet and Smith Stag.

03:05PM 20        Now, compared to those small numbers -- remember,

03:05PM 21   this settlement doesn't kick in, in terms of paying anyone,

03:05PM 22   until after the approval.  I'll comment on the reasons why for

03:05PM 23   that in a second, because I think Your Honor is a bit curious

03:05PM 24   about that -- notwithstanding that, more than 4300 individuals

03:05PM 25   have already filed claims.  They want in.  They know they have

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 212 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 211 of 328

211

03:05PM 1    to wait, but they want in.

03:05PM 2              In terms of the lack of parity between the

03:05PM 3    immediacy of it, there were some practical reasons.  Just a

03:05PM 4    couple, just so the Court is aware.

03:05PM 5              There are these Medicare regulations that apply

03:05PM 6    to settlements like this, and you have to negotiate with

03:05PM 7    Medicare, and it takes time.  We knew that we couldn't start

03:05PM 8    immediately implementing the settlement in terms of paying

03:05PM 9    money to people because we would have problems with Medicare.

03:06PM 10   So that's the first issue.

03:06PM 11             While they are reaching closure, and they always

03:06PM 12   reach closure on these things, it takes anywhere from 6 months

03:06PM 13   to 9 months to 12 months.  So that's just a practical problem.

03:06PM 14             The second reason is that if the Court were not

03:06PM 15   to approve it, we have the 21-year medical consultation

03:06PM 16   program.  It wouldn't make any sense to have a medical

03:06PM 17   consultation program but not a class.  So there were some

03:06PM 18   practical reasons going to the nature of this settlement which

03:06PM 19   meant you could only start part of it before approval, the

03:06PM 20   Gulf Coast outreach program, but the rest of it is dependent

03:06PM 21   upon both this Court's approval and, if it's appealed, the

03:06PM 22   Fifth Circuit's approval because, otherwise, it wouldn't work

03:06PM 23   in practice.

03:06PM 24             In any event, in terms of what people want, very

03:06PM 25   few people opted out, very few people objected.  Most of the

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 213 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 213 of 328

212

03:06PM 1    objections are by two law firms.  They're dwarfed two to one,

03:06PM 2    almost three to one, by the people who want in, even though

03:06PM 3    those people know that they can't get paid in the near future.

03:06PM 4         So that's kind of the data background for this,

03:06PM 5    which is pretty straightforward and pretty simple.

03:07PM 6         It's a little simpler this time because, unlike

03:07PM 7    with the economic loss where people are purporting to opt out

03:07PM 8    en masse and then opt back in, in part, en masse, and then

03:07PM 9    preserve their rights that they don't have en masse, this one

03:07PM 10   at least they opted out or they objected, but they tried to at

03:07PM 11   least -- they didn't quite comply with the Court's rules in

03:07PM 12   terms of some of the objections, but that's for the Court to

03:07PM 13   see when we file the declaration; but, at least directionally

03:07PM 14   speaking, they tried to follow what the Court suggested its

03:07PM 15   orders might require them to do.

03:07PM 16        So then we get to the law and evidence support

03:07PM 17   settlement approval.  I'm going to cover now the *Reed* factors:

03:07PM 18   The exposure and scientific data, the medical benefits are

03:07PM 19   generous, the medical and legal experts, and the claims

03:07PM 20   administration.

03:07PM 21        Now, on the *Reed* factors, we start with no fraud

03:07PM 22   or collusion.

03:07PM 23        Again, we exceeded the *Reed* factors here.  We

03:07PM 24   were with Magistrate Judge Shushan, and she actually brokered

03:07PM 25   the deal in her chambers on the matrix.  It was, I think, a

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 214 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 213 of 328

213

03:08PM 1    Friday afternoon.  It had been a long week.  She actually did

03:08PM 2    shuttle diplomacy back and forth between Mr. Bloomer and myself

03:08PM 3    and Ms. Greenwald and Mr. Langan, and she brokered the matrix.

03:08PM 4         We weren't done yet, but at least we had a

03:08PM 5    breakthrough one Friday afternoon.  At least the weekend looked

03:08PM 6    pretty good here in New Orleans.

03:08PM 7         Complexity, expense and likely duration of the

03:08PM 8    litigation.  These cases take years.  Can you image trying a

03:08PM 9    couple thousand of these cases?  I mean, it would just take up

03:08PM 10   court years.

03:08PM 11        One thing we haven't commented on today, because

03:08PM 12   some of the objectors missed this point, there are not other

03:08PM 13   risks to the litigants in the case.  When you have thousands of

03:08PM 14   cases being tried, because that's the alternative being

03:08PM 15   offered, there is a cost imposed upon the court system and the

03:08PM 16   other citizens of this state and this nation because the court

03:08PM 17   is clogged with thousands and thousands of claims that

03:08PM 18   otherwise would be settled and are settleable.

03:08PM 19        Stage of the proceedings.  We had significant

03:08PM 20   expert involvement in this.  The federal government has

03:09PM 21   published reports.  There has been involvement from day one by

03:09PM 22   experts on each side.  This was not done out of the box without

03:09PM 23   information or knowledge.

03:09PM 24        The probability of plaintiffs' success.  In our

03:09PM 25   briefs, we outline a number of cases.  Ms. Greenwald talked

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 215 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 214 of 328

214

03:09PM 1    about one of them, the *Howard versus Union Carbide* case.  We

03:09PM 2    had the *Arabie versus Citgo* case.  We had the *Doerr versus*

03:09PM 3    *Mobil Oil* case.  Professor Coffee outlines cases.  Even

03:09PM 4    successful plaintiffs don't do better than what's on the matrix

03:09PM 5    and generally do far worse than the amounts of compensation

03:09PM 6    that are guaranteed to them on the matrix.

03:09PM 7          The range of possible recovery, this is well in

03:09PM 8    the upper end of the range based upon case law and based upon

03:09PM 9    the difficulty of proof.

03:09PM 10         Then, the opinions of class counsel and the

03:09PM 11   class.  The class's opinion, they voted with their feet; the

03:09PM 12   opinions of class counsel, they made very clear.

03:09PM 13         What about the evidence?  When you have a tragedy

03:10PM 14   like this and an aftermath where you have a spill and that,

03:10PM 15   there is a lot of wild claims.  I'm not here to say that BP and

03:10PM 16   the evidence BP marshalling, you have to decide today.  What

03:10PM 17   I'm here to say is we believe that there is very solid evidence

03:10PM 18   the claims and the assertions of injury are vastly inflated and

03:10PM 19   not substantiated.  The plaintiffs disagree.  That's how we

03:10PM 20   reached a settlement.

03:10PM 21         I do want to point out to the Court, though, that

03:10PM 22   there is sufficient evidence to make this a horse race, or more

03:10PM 23   than a horse race, from our perspective.  That's not for you to

03:10PM 24   decide, as Your Honor has indicated in a recent order.

03:10PM 25         You're not having a trial on the merits; but, it

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 216 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 215 of 328

215

03:10PM 1    does inform and create a prism through which we look to

03:10PM 2    evaluate the fairness of the settlement.

03:10PM 3              So when someone says, I can come in here and I'm

03:10PM 4    going to ring the bell with punitive damages.  Really?  I think

03:10PM 5    I'm going to have a few things to say about that.  I think the

03:10PM 6    Court would have a few things to say about that.  I think the

03:10PM 7    Court of Appeals, in light of precedence in this state, will

03:10PM 8    have a few things to say about that.

03:10PM 9              The point of it is there is extensive monitoring

03:11PM 10   and there is substantial evidence from various sources,

03:11PM 11   including the government, that the exposures were low and were

03:11PM 12   not causal, or were low enough that there is a disputed

03:11PM 13   question of fact, and that's why we reached a compromise.

03:11PM 14             Little potential for dermal exposures to the

03:11PM 15   components of crude oil and dispersants in concentrations and

03:11PM 16   for durations sufficient to cause potential health concerns.

03:11PM 17   That's from Dr. Cox.

03:11PM 18             There's abundant evidence.  Plaintiffs obviously

03:11PM 19   disagree.  That's why we reached a settlement.

03:11PM 20             Provides generous benefits.  We have uncapped

03:11PM 21   compensation.  As Judge Shushan has noted, meaningful

03:11PM 22   settlement benefits for both acute and chronic conditions.

03:11PM 23             We have a Periodic Medical Consultation Program

03:11PM 24   providing medical examinations and tests every three years for

03:11PM 25   21 years.  That was a hotly negotiated item.  When you combine

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 217 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 216 of 328

216

03:11PM 1    that with the Periodic Medical Consultation Program, the people

03:11PM 2    who are potential victims have the opportunity to learn whether

03:11PM 3    or not there is going to be some condition that they are not

03:12PM 4    aware of that they want to attribute.

03:12PM 5          Can't say that that's something -- I certainly do

03:12PM 6    not hope that takes place. It's unusual, but it was a benefit

03:12PM 7    that was provided for.

03:12PM 8          105 million, Gulf Region Health Outreach Program.

03:12PM 9    Direct benefit to these class members.

03:12PM 10          Then the back-end litigation opt-out, about which

03:12PM 11    we've spoken.

03:12PM 12          Now, we were able to start implementing some of

03:12PM 13    the settlement, the part that was not tied to Medicare, the

03:12PM 14    part that was not tied to corrective problems in terms of

03:12PM 15    implementation.

03:12PM 16          We've already disbursed $20 million to outreach

03:12PM 17    program projects providing services. The online library has

03:12PM 18    been launched, and the claims administrator is providing

03:12PM 19    records and data from class members for use in making the

03:12PM 20    claims, so the class members don't have to wait. Those are

03:12PM 21    benefits.

03:12PM 22          Also, with respect to the outreach program, that

03:12PM 23    helps build the infrastructure, so that when and if the class

03:12PM 24    is implemented and people want to take advantage of the

03:12PM 25    periodic medical consultation, they will have the opportunity

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 218 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/05/12 Page 217 of 328

217

03:12PM 1    and ability to do so.  Infrastructure is being built for that

03:13PM 2    as we stand and speak today.

03:13PM 3            The medical experts.  Dr. Jessica Herzstein --

03:13PM 4    THE COURT:  One question.  Go back to the slide for a

03:13PM 5    second.  Those projects, assuming settlement is approved, the

03:13PM 6    outreach program, the library and so forth, are those available

03:13PM 7    to anyone in the class, regardless of what or whether they are

03:13PM 8    entitled to any monetary compensation?  Are there people in the

03:13PM 9    class that could fit that category or not?

03:13PM 10   MR. GODFREY:  Yes.  Yes.  If they are in the class,

03:13PM 11   yes.

03:13PM 12           I mean, you're going to get a Periodic Medical

03:13PM 13   Consultation Program whether you made a claim under the matrix

03:13PM 14   or not.

03:13PM 15           Now, if you discover in that, that you have what

03:13PM 16   you consider to be a later-manifesting condition, then you have

03:13PM 17   the BLO that you have to decide and exercise your rights under.

03:13PM 18   But, yes, you have access to it, yes.

03:14PM 19           In certain areas, by the way, Your Honor, which I

03:14PM 20   was not aware of prior to this case, the importance of this is

03:14PM 21   in certain areas, this creates the first opportunity for the

03:14PM 22   people who might be victims or who believe they are victims to

03:14PM 23   have the access to these medical care services.  It's, in many

03:14PM 24   cases, a first-time opportunity or a unique opportunity for

03:14PM 25   them, which is certainly something that we support and that BP

Case 2:10-md-02179-CJB-DPC Document 23682-8 Filed 02/02/18 Page 219 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 218 of 326

218

03:14PM  1    agreed willingly to do for the benefit of the class.

03:14PM  2            Dr. Jessica Herzstein:  The Periodic Medical

03:14PM  3    Consultation Program is a significant and tangible benefit,

03:14PM  4    especially to those class members who might not otherwise have

03:14PM  5    access to or be able to afford primary medical services.

03:14PM  6            You know, we have a medical care issue in this

03:14PM  7    country, and many of these people, or at least some of these

03:14PM  8    people, may not have had access.  To the extent they are in the

03:14PM  9    class and we define the class, they now have access and will be

03:14PM 10    given access.  That's an important benefit.

03:14PM 11            Dr. Bernard Goldstein:  The program will have a

03:15PM 12    rapid positive impact on the physical, mental and behavioral

03:15PM 13    health of Gulf Coast community members, and these benefits will

03:15PM 14    be realized not just for the five years but long thereafter.

03:15PM 15            The proposed settlement is consistent with the

03:15PM 16    best science available, Dr. Michael Harbut.

03:15PM 17            Then the legal experts.  Ms. Cabraser, as she

03:15PM 18    always does, is one of the best proponents I've ever met in

03:15PM 19    terms of class action lawyers.  She's usually arguing to

03:15PM 20    certify classes, I'm usually arguing against them, but she's

03:15PM 21    spot on in terms of her answers for Your Honor.

03:15PM 22            But in some ways, we were careful about this from

03:15PM 23    the start intentionally.  We knew that there would be questions

03:15PM 24    in light of precedent.  We decided not to rely upon ourselves,

03:15PM 25    people who practice in this area of the law, but we said, let's

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 220 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/04/12 Page 213 of 328

219

03:15PM 1    go hire the experts and get their advice.  If we can structure

03:15PM 2    it, terrific, and hopefully we can.

03:15PM 3            You know, Dean Klonoff said:  This is one of the

03:16PM 4    fairest and most impressive settlements I have seen in more

03:16PM 5    than 20 years of practicing and teaching and writing in the

03:16PM 6    field of class actions; then echoed by Professor Coffee and

03:16PM 7    Professor Miller.

03:16PM 8            Professor Coffee and Professor Miller, there are

03:16PM 9    a lot of classes that they don't like, that they oppose, and

03:16PM 10   they're cited very often, both of them.  Less so with

03:16PM 11   Professor Klonoff, but Miller and Coffee, there's a lot of

03:16PM 12   class actions that they've opposed, and courts have cited their

03:16PM 13   work.

03:16PM 14           They looked at this.  They gave us hard advice.

03:16PM 15   We structured it accordingly.  They looked at it later.  They

03:16PM 16   kept checking and double-checking and kicking the tires, and I

03:16PM 17   believe that we'll more than pass muster.

03:16PM 18           So we have a claims administration process, the

03:16PM 19   Garretson Resolution Group.  They are on track.  They've

03:16PM 20   already got 4300 proof of claim forms.  They are in the process

03:16PM 21   of contracting with medical professionals to provide

03:16PM 22   consultation visits.  So they are already out there arranging

03:16PM 23   with the professionals.

03:16PM 24           Disbursed 20 million to outreach projects.  They

03:17PM 25   have launched the publicly available online library.  There is

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 221 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 226 of 328

220

03:17PM 1   the Internet citation for those who want to see it.

03:17PM 2         They are working with Medicare.  They will have

03:17PM 3   Medicare done, I think, within a few months.

03:17PM 4         Dealing with the federal government, Medicare and

03:17PM 5   getting -- Garretson has done this many times.  They always

03:17PM 6   work it out, but it takes a while.  I had no idea that Medicare

03:17PM 7   regulations were so complicated, but they are a specialist in

03:17PM 8   that.

03:17PM 9      THE COURT:  I can tell you, not necessarily in the

03:17PM 10   class action context, but, just generally, it's a recurring

03:17PM 11   common problem we deal with here in trying to settle cases

03:17PM 12   because it's always a very difficult, long, tedious issue that

03:17PM 13   lawyers and courts have to deal with.

03:17PM 14      MR. GODFREY:  I must confess, I've learned that the

03:17PM 15   hard way in this case because I went to a few meetings where

03:17PM 16   they tried to explain it to me.  I said, do we have experts?

03:17PM 17   Someone said yes.  I said, fine, let the experts deal with it.

03:18PM 18   I'm going to get out of the way.

03:18PM 19         Finally, the small number and content of the

03:18PM 20   objections support settlement approval.

03:18PM 21         There are no objections whatsoever to the

03:18PM 22   Periodic Medical Consultation Program; and, only one possible

03:18PM 23   objection -- we are not sure, we can't figure out what the

03:18PM 24   objection is -- to the Gulf Region Health Outreach Program.

03:18PM 25         The few objections that have been filed, though,

03:18PM 1   are somewhat contradictory and without basis.  Some complain

03:18PM 2   it's almost too generous.  Okay, we paid more than we wanted

03:18PM 3   to, but that's not an objection that's valid to set aside a

03:18PM 4   settlement.

03:18PM 5           Others say that they are paying a premium for

03:18PM 6   class members' claim.  It's not a valid objection.

03:18PM 7           Others object that the compensation amounts are

03:18PM 8   inadequate.  That's not the view of class counsel.  When you

03:18PM 9   look at the case law, that's certainly not supported in the

03:18PM 10  case law that these are inadequate benefits.

03:18PM 11          Others object that they're not in the class, but

03:18PM 12  they want to be in class.  Well, that's not a valid objection

03:18PM 13  either.

03:18PM 14          Then others provide either no evidence or

03:18PM 15  unreliable, unscientific evidence and, frankly, hearsay or

03:19PM 16  speculation.

03:19PM 17          Some complain that opting out of the settlement

03:19PM 18  is not a viable option because they have negative value claims.

03:19PM 19  That's not a value objection.  That says I have a little or no

03:19PM 20  value claim, and so why should I opt out; I can't get any money

03:19PM 21  if I opt out.  Not a valid objection.

03:19PM 22          Some say the proof standards are too high.  Well,

03:19PM 23  they're a whole lot lower in the class settlement than they are

03:19PM 24  in a court of law.

03:19PM 25          Your Honor was right.  Liability, for example,

03:19PM 1 with specific causation, you know, general causation, this is a

03:19PM 2 good deal from that standpoint.

03:19PM 3         Some complain that the settlement does not

03:19PM 4 provide for interim claims under OPA, even through OPA doesn't

03:19PM 5 apply to personal injury claims. So that is an objection, but

03:19PM 6 it's not a valid objection under the law.

03:19PM 7         Bottom line, none of the objections, cumulatively

03:19PM 8 or singularly, come anywhere close to satisfying the burden of

03:19PM 9 establishing that the settlement is unreasonable, unfair and

03:19PM 10 inadequate.

03:19PM 11         Unless Your Honor has any questions, I have a

03:19PM 12 short rebuttal time after we hear from the objectors' counsel.

03:20PM 13 But, once again, I appreciate the time.

03:20PM 14         Your Honor, I neglected to do one thing this

03:20PM 15 morning because I did not use all my slides, but I would like

03:20PM 16 to tender my demonstratives as a court exhibit that I used this

03:20PM 17 morning. They're just the slides I used, so there is a few

03:20PM 18 pages that will be missing because I did not use all the

03:20PM 19 slides. If I could tender that to Mr. Allums now, I would

03:20PM 20 appreciate it.

03:20PM 21         THE COURT: That's fine.

03:20PM 22         MR. GODFREY: Thank you very much.

03:20PM 23         THE COURT: All right. Now we'll hear from the

03:20PM 24 objectors.

03:20PM 25         Is there an objection by Mr. Palmer, who has been

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 224 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 223 of 328

223

03:20PM  1   allotted five minutes?

03:20PM  2          MR. PALMER:  Thank you very much, Your Honor.

03:20PM  3   Darrell Palmer on behalf of James Kirby, IV, Mike and Patricia

03:20PM  4   Sturdivant, and Susan Forsyth.

03:20PM  5          THE COURT:  Who are those folks that you claim to

03:20PM  6   represent?

03:20PM  7          MR. PALMER:  Who are they?

03:20PM  8          THE COURT:  Who are they?

03:20PM  9          MR. PALMER:  They are residents of west Florida.

03:20PM 10          THE COURT:  Are they in the class?

03:21PM 11          MR. PALMER:  Yes, sir.

03:21PM 12          THE COURT:  Are you the same Mr. Palmer who appeared as

03:21PM 13   an objector in the District Court of the District of Minnesota

03:21PM 14   in the --

03:21PM 15          MR. PALMER:  *Plumb-PEX* case.

03:21PM 16          THE COURT:  -- plumbing fittings product liability

03:21PM 17   litigation.  Are you the same person is my question?

03:21PM 18          MR. PALMER:  I never appeared in the district court.  I

03:21PM 19   appeared in the appellate court.

03:21PM 20          THE COURT:  Well, you apparently filed objections in

03:21PM 21   that case.

03:21PM 22          MR. PALMER:  I did.  Yes, I did.  I filed objections in

03:22PM 23   many, many cases, Your Honor.  I'll be completely up front.

03:22PM 24   Including --

03:22PM 25          THE COURT:  Apparently you've been considered as a

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 225 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/05/12 Page 224 of 328

224

03:22PM 1    so-called *serial objector*, right?

03:22PM 2         MR. PALMER:  Well, I think that's particularly

03:22PM 3    pertinent when you look at --

03:22PM 4         THE COURT:  Just answer my question, please.  Have you

03:22PM 5    been called *a serial objector*?

03:22PM 6         MR. PALMER:  I have.

03:22PM 7         THE COURT:  Did the district court find that your

03:22PM 8    objections were evidence of bad faith and vexatious conduct?

03:22PM 9         MR. PALMER:  I think that's regrettable that that

03:22PM 10   happened; yes, it is.

03:22PM 11        THE COURT:  It says, "The Palmer objectors appear to be

03:22PM 12   represented by an attorney who has not entered an appearance in

03:22PM 13   this case, who is believed to be a serial objector to other

03:22PM 14   class actions," and they cite some evidence of that and refer

03:22PM 15   to you, Darrell Palmer.

03:22PM 16        MR. PALMER:  That's right, Your Honor.  I'd be happy to

03:22PM 17   submit a brief outlining all of the judges that have expressed

03:22PM 18   appreciation for the things I brought to the attention of the

03:22PM 19   court, including the judge in the *Enron* case where we made

03:23PM 20   substantial improvements to the tune of several hundred million

03:23PM 21   dollars and increased the claims period.  The list is quite

03:23PM 22   long.

03:23PM 23        THE COURT:  Stop one second.  I'm sorry to interrupt

03:23PM 24   you.

03:23PM 25             I'm told by the U. S. Marshal that there is

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 226 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 225 of 328

225

03:23PM 1    someone in this courtroom that is still live streaming from the

03:23PM 2    courtroom.  Whoever it is needs to get up and leave right now.

03:23PM 3    If not, we're just going to terminate this hearing and resume

03:23PM 4    another day.  Do we know who it is?

03:23PM 5            THE MARSHAL:  I have an idea.

03:23PM 6            THE COURT:  That is against the rules of this Court.

03:23PM 7    You're violating the rules of the Court in the courtroom, and

03:23PM 8    you have to leave right now.  You cannot live stream a

03:23PM 9    proceeding from federal court outside the courtroom.

03:24PM 10           THE MARSHAL:  It's someone in the back row, Judge.

03:24PM 11           THE COURT:  Would you all stand there and observe these

03:24PM 12   people, because if any of them appear to be trying to live

03:24PM 13   stream this in any way, we're just going to remove them from

03:24PM 14   the courtroom.  Okay.

03:24PM 15               I'm sorry to have to do this, but people have to

03:24PM 16   follow the rules here; and, if you're here to observe, you're

03:24PM 17   welcome, but you can't play by your own rules.

03:24PM 18               Mr. Palmer, I'm sorry to interrupt you.  You have

03:24PM 19   another cy pres objection?

03:24PM 20           MR. PALMER:  I do.  I have an objection to the medical

03:24PM 21   component, where money apparently has already been distributed

03:24PM 22   for the public use along the coastal region.

03:24PM 23               The problem is, Your Honor -- and if I may, I

03:24PM 24   would just like to read a short quote by Chief Judge

03:24PM 25   Edith Jones from the *Klier* case.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 227 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 226 of 328

226

03:24PM 1        THE COURT:  I'm very familiar with that case, but go

03:24PM 2   ahead and read your quote, if you want.

03:24PM 3        MR. PALMER:  Thank you.

03:24PM 4        "The use of cy pres simultaneously violates the

03:25PM 5   constitutional dictates of separation of powers by employing a

03:25PM 6   Federal Rule of Civil Procedure to alter the compensatory

03:25PM 7   enforcement mechanism dictated by the applicable substantive

03:25PM 8   law being enforced in class action proceedings.  It has somehow

03:25PM 9   become common practice among many Courts, scholars and members

03:25PM 10  of the public to view the modern class action as a

03:25PM 11  free-standing device designed to do justice and police

03:25PM 12  corporate evil-doers.  As nothing more than a Federal Rule of

03:25PM 13  Civil Procedure, however, the class action device may do no

03:25PM 14  more than enforce existing substantive law as promulgated

03:25PM 15  either by Congress or in a diversity suit by applicable state

03:25PM 16  statutory or common law.  Yet, in no instance of which we are

03:25PM 17  aware does the applicable substantive law sought to be enforced

03:25PM 18  in a Federal Class Action direct the violator to pay damages to

03:25PM 19  an uninjured charity."

03:25PM 20       In this case, Your Honor, it is a purely legal

03:25PM 21  objection.  It is not a criticism of all of the great benefits

03:26PM 22  that this medical settlement provides.  But the fact is that we

03:26PM 23  are now calling millions of dollars part of the settlement,

03:26PM 24  which makes it the property of the class, and we are

03:26PM 25  distributing that --

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 228 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 227 of 328

227

03:26PM 1    THE COURT:  Well, it wouldn't exist, it wouldn't go to

03:26PM 2   your client or any of the class members, because they are going

03:26PM 3   to be fully compensated for whatever their claim is.

03:26PM 4           Do you have authority from your clients to be

03:26PM 5   standing here?  Did they make claims in this class?

03:26PM 6       MR. PALMER:  Yes, they did.

03:26PM 7       THE COURT:  So you represent persons who have made

03:26PM 8   claims for medical benefits under this class settlement, while,

03:26PM 9   at the same time, you're here saying that they sent you here to

03:26PM 10  try to blow up this settlement?

03:26PM 11      MR. PALMER:  It is not blowing up the settlement.

03:26PM 12      THE COURT:  Well, if you object, that's what you would

03:26PM 13  be doing.

03:26PM 14      MR. PALMER:  Absolutely not.  That's the whole purpose

03:26PM 15  of --

03:26PM 16      THE COURT:  How are they affected by this if this is

03:27PM 17  approved?

03:27PM 18      MR. PALMER:  Your Honor, Rule 23 provides for

03:27PM 19  objections.  It doesn't mean that we are evil people or trying

03:27PM 20  to --

03:27PM 21      THE COURT:  No one said you're an evil person.  I just

03:27PM 22  said you have what's called a *conflict*, it seems to me, here.

03:27PM 23          On one hand, you represent -- I have serious

03:27PM 24  doubts that your clients even know you're here making this

03:27PM 25  objection, frankly, Mr. Palmer.  Did your clients expressly

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 229 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 228 of 328

228

03:27PM  1    authorize you to come here and oppose this settlement?

03:27PM  2            MR. PALMER:  Absolutely.

03:27PM  3            THE COURT:  Name the clients that authorized you to

03:27PM  4    come here and oppose this settlement.

03:27PM  5            MR. PALMER:  All of them, Your Honor.  James Kirby, the

03:27PM  6    Sturdivants and Ms. Forsyth.

03:27PM  7            THE COURT:  You are an attorney of record in this

03:27PM  8    court?

03:27PM  9            MR. PALMER:  I am.  I used to be -- at one point, I was

03:27PM 10    co-counsel with Ms. Cabraser in a case in San Diego where we

03:27PM 11    recovered over $150 million in a scripts case.  So --

03:28PM 12            THE COURT:  That's all well and good, but it has

03:28PM 13    nothing to do with what we're talking about.

03:28PM 14            So go ahead.  You have another couple minutes.

03:28PM 15    Go ahead.

03:28PM 16            MR. PALMER:  Thank you, Your Honor.

03:28PM 17            The point is simply that we are taking class

03:28PM 18    funds and distributing it to nonclass members.  That's the

03:28PM 19    point of the objection.

03:28PM 20            We're not trying to blow up the objection [sic].

03:28PM 21    We're trying to make sure that the objection passes legal

03:28PM 22    muster and is not vulnerable to reversal, where in -- just like

03:28PM 23    in the *Dennis v. Kellogg* case, the entire --

03:28PM 24            THE COURT:  What would be your solution?  What are you

03:28PM 25    asking me to do?

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 230 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 229 of 328

229

03:28PM 1       MR. PALMER:  That is not my job as an objector.

03:28PM 2       THE COURT:  Well, what do you think is going to happen

03:28PM 3  to that money if I uphold your objection?  What would you

03:28PM 4  suggest?

03:28PM 5       MR. PALMER:  Oh, I think BP will continue with the

03:28PM 6  program.  They are just trying to slip that money in on this

03:28PM 7  settlement for PR purposes.  That's what I think, personally.

03:28PM 8       But do I think they would withdraw the money?

03:28PM 9  Absolutely not.  They've already spent the money.  That's one

03:28PM 10  thing the record is clear on, Your Honor.  They've spent the

03:29PM 11  20 million dollars.  It's not part of this settlement.

03:29PM 12       THE COURT:  I don't understand your objection, then.  I

03:29PM 13  hear it, I don't understand it; but, I heard you.

03:29PM 14       MR. PALMER:  Unless you have any other questions, I

03:29PM 15  don't think I have anything to add.

03:29PM 16       THE COURT:  I do not.  Thank you very much.

03:29PM 17       MR. PALMER:  Thank you very much, Your Honor.

03:29PM 18       THE COURT:  Mr. McKee, your objection relates to

03:29PM 19  Specified Physical Conditions Matrix, which you believe

03:29PM 20  provides inadequate compensation; is that correct?

03:29PM 21       MR. MCKEE:  Correct, Your Honor.  Good afternoon.

03:29PM 22  Robert J. McKee on behalf of objectors, and as well on

03:29PM 23  potential clients who I have not yet taken because of issues

03:29PM 24  that are being raised in this objection.

03:29PM 25       Good afternoon, Magistrate.

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 231 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 230 of 328

230

03:29PM 1          THE COURT:  The clients you represent are objectors.

03:30PM 2   Are they class members?

03:30PM 3          MR. MCKEE:  I believe so, yes.  I say that, and I'll

03:30PM 4   explain why.

03:30PM 5              The terms of the settlement make one question

03:30PM 6   whether you are, because it's not only whether you're a

03:30PM 7   resident of A and B or a cleanup worker, but you have to have

03:30PM 8   had your symptoms within 72 hours of a purported exposure,

03:30PM 9   which one is not made clear, and nor do you know whether you're

03:30PM 10  acute or chronic, because you may have been getting exposed and

03:30PM 11  sick every day, and are you able to make a claim as a member of

03:30PM 12  the class for each day under the acute manifestation?

03:30PM 13             So there is issues with the description that make

03:30PM 14  it questionable who is in or out of this class, such as when

03:30PM 15  we're seeing data about 200,000 potential claimants.

03:30PM 16             There has not been a shred of evidence that

03:30PM 17  suggests that any of them fit the matrix.  There has not been

03:30PM 18  one showing that a group of people more than a few hundred or

03:31PM 19  thousands actually fit the time frames that would fit into the

03:31PM 20  class.

03:31PM 21             So, yes, I believe all of mine do.  I have not

03:31PM 22  opted out all of them.  Some have opted out, but there is a

03:31PM 23  protracted opt-out deal.

03:31PM 24         THE COURT:  Did you file claims on behalf of any of

03:31PM 25  your clients?

Case 2:19-md-02879-CJB-DPC Document 23880-8 Filed 02/02/18 Page 232 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 231 of 328

231

03:31PM 1       MR. MCKEE:  Claims and lawsuits, Your Honor, yes, sir,

03:31PM 2  venued in Key West and transferred here.

03:31PM 3       THE COURT:  Claims with the settlement program?  That's

03:31PM 4  what I'm asking you.

03:31PM 5       MR. MCKEE:  Yes, sir.

03:31PM 6       THE COURT:  So, again, you're in a position where this

03:31PM 7  settlement that you believe should not be approved, you have

03:31PM 8  claims that you filed for some clients in the settlement, you

03:31PM 9  have other people that have opted out, you have other people

03:31PM 10  that have objected.

03:31PM 11       MR. MCKEE:  Yes, on the basis of attorney-client

03:31PM 12  discussions, some want us to object, some do not believe there

03:31PM 13  is a conflict, others are waiving that conflict.

03:31PM 14       But, certainly, we have taken care in-house of

03:31PM 15  those --

03:31PM 16       THE COURT:  I'm trying to get a feel.  I don't know if

03:32PM 17  you have a legal conflict or not; but, you're standing here

03:32PM 18  asking me not to approve this settlement, while you have other

03:32PM 19  clients you represent who want it to be approved and are making

03:32PM 20  claims.  They can't get paid unless this settlement is approved

03:32PM 21  in this settlement.  You understand that, right?

03:32PM 22       MR. MCKEE:  I do, Your Honor.  But, if I may, there is

03:32PM 23  an aspect to this proceeding, as someone who does not typically

03:32PM 24  do class actions in a 20-year practice of nothing but exposure

03:32PM 25  cases, there's an aspect that we're hopeful, we're here with

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 233 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 232 of 328

232

03:32PM  1    hope that for these sick folks -- and there are some very

03:32PM  2    grievously ill people -- that these sick folks who have not

03:32PM  3    received a dollar since they got sick, not an interim payment,

03:32PM  4    nothing, no help, and they still won't, even if this is

03:32PM  5    approved, until the appellate process is done, won't get a

03:32PM  6    dollar for their illnesses, for the impact on their lives --

03:32PM  7    I'm here because I'm hopeful that the Court might provisionally

03:32PM  8    approve this, if certain changes are made, or it would have to

03:33PM  9    destroy this particular part of the settlement, the medical

03:33PM 10    benefits settlement, if it can't be done by the parties.

03:33PM 11            If the Court would allow me to show why the

03:33PM 12    compensation framework does not work when applied to reality

03:33PM 13    here.

03:33PM 14            THE COURT:  Go ahead.

03:33PM 15            MR. MCKEE:  Thank you, Your Honor.

03:33PM 16            The social tragedy here is that all of these

03:33PM 17    people -- and there are thousands of them -- have not received

03:33PM 18    anything.  They are hopeful that this system of law would get

03:33PM 19    them there.  Many of them are illiterate.  Many of them have no

03:33PM 20    job anymore, couldn't read this if they wanted to as a *pro se*

03:33PM 21    claimant.  It was hard enough for me to read that book.

03:33PM 22            But the reality is --

03:33PM 23            Put on my first slide.

03:33PM 24            -- what is covered here is essentially eye health

03:33PM 25    effects, nasal and respiratory health effects and skin health

Case 2:10-md-02179-CJB-DPC Document 23680-8 Filed 02/02/18 Page 234 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 233 of 328

233

03:33PM  1    effects.  That's what this covers.

03:33PM  2             An issue of proof that has never been brought

03:34PM  3    about through the *Reed* factors is what do the claimants

03:34PM  4    actually have as their own illness, what differential diagnoses

03:34PM  5    existed for each of these, what proofs from medical

03:34PM  6    practitioners that they have gone to show that they were

03:34PM  7    exposed and harmed, but it manifested more than 72 hours later?

03:34PM  8    Because none of those are in this class, or, if they are -- if

03:34PM  9    they are not, they should be, if we can make that happen for

03:34PM 10    them.

03:34PM 11             Because what we also know is over time -- there

03:34PM 12    is peer-reviewed literature, we cited it through Dr. Sawyer --

03:34PM 13    there are medical doctors with high competency to do the

03:34PM 14    testing and have done the testing that could show over time,

03:34PM 15    with these kind of exposures, biologically plausible and

03:34PM 16    possibly passing Bradford Hill criteria for causality,

03:34PM 17    chromosome damage that may lead to cancers, liver and kidney

03:35PM 18    damage, immune system damage with repeated re-exposures on a

03:35PM 19    daily basis when they become more sensitive to solvents, which

03:35PM 20    makes them ill repeatedly.

03:35PM 21             None of this is in this settlement at all.  So

03:35PM 22    they are excluded by virtue of the lack of those medical things

03:35PM 23    that are biologically plausible.

03:35PM 24             So when we start talking about compensation, we

03:35PM 25    have to say, long term, is the latency period even within the

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 235 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 234 of 328

234

03:35PM 1  21 years?  Many of these are not.  They are outside.

03:35PM 2          Visits once every three years for really sick

03:35PM 3  folks that don't have insurance doesn't cut it.  This

03:35PM 4  settlement does nothing for day-to-day treatment for people who

03:35PM 5  really are sick from this spill.  Doesn't pay them for any of

03:35PM 6  that.  It gives them a lump sum if they fit within a 24 to

03:35PM 7  72-hour period of manifestation.

03:35PM 8          So what we have to do --

03:35PM 9      THE COURT:  I'm going to suggest that the answer -- and

03:36PM 10  I'll let them speak for themselves -- would be that if they

03:36PM 11  tried to expand it much beyond where they've narrowly cabined

03:36PM 12  this settlement in terms of time frames, exposures and

03:36PM 13  medically-recognized conditions, they would probably have a

03:36PM 14  serious issue of whether any class could be certified.

03:36PM 15          You want as broad as possible a class, and I can

03:36PM 16  understand that, and I'm sure they would like it, too, but they

03:36PM 17  have to be realistic on what's doable.

03:36PM 18          It seems to me the answer, if you represent

03:36PM 19  clients who genuinely believe that they have some much more

03:36PM 20  significant, long-term injury from this exposure and are able

03:36PM 21  to prove it, then the remedy is to opt out and pursue your own

03:36PM 22  litigation.  A settlement doesn't have to include everybody

03:37PM 23  that it could possibly include.

03:37PM 24      MR. MCKEE:  I agree, Your Honor; but, if you look at --

03:37PM 25  for example, let's take a few very recent essentially class

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 236 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 235 of 328

235

03:37PM 1    results.

03:37PM 2         The World Trade Center, done by act of the

03:37PM 3    United States government.  What's the first thing they do?

03:37PM 4    They create a framework of grading injuries.  That means they

03:37PM 5    actually have to look at things that happened to those people.

03:37PM 6         THE COURT:  To compare a program prepared by

03:37PM 7    United States Congress to a litigated class action, I mean,

03:37PM 8    that's not even close to being the same.  Congress can do

03:37PM 9    anything they want.  They can say everybody gets paid for

03:37PM 10   anything and everything, set whatever rules they want.  That's

03:37PM 11   not how we have to judge things here.

03:37PM 12        MR. MCKEE:  *Vioxx*, right here, there is a grade system.

03:37PM 13        THE COURT:  *Vioxx* is not a class settlement.  In fact,

03:37PM 14   Judge Fallon denied class certification in *Vioxx*, and then

03:37PM 15   there was a global settlement to which people had to opt in,

03:37PM 16   and people ultimately made a decision to opt in or not.

03:38PM 17        MR. MCKEE:  Let me return to the *Reed* factors, the one

03:38PM 18   where the Court has to determine what likelihood is of

03:38PM 19   prevailing at trial.

03:38PM 20        They haven't looked at any of the evidence of

03:38PM 21   individual claimants.  That hasn't happened.  My clients have

03:38PM 22   very good supporting medical records.  We submitted to the GCCF

03:38PM 23   all those claims.

03:38PM 24        In New York, with Michael Rosen from Feinberg

03:38PM 25   Rosen, he said my client, Mr. Czerkies (spelled phonetically),

would qualify; but, he has to hold the payment up because something is happening in federal court.

Obviously, it was this.  He wouldn't tell us what it was.  He still hadn't.  But what we have is when we look at the reality of this settlement --

THE COURT:  Did you settle any of your claims --

MR. MCKEE:  381 of them, Your Honor.  Only 61 so far from this system.

THE COURT:  You had a year and a half to settle.  Why weren't you able to settle more?

MR. MCKEE:  We actually submitted all of our claims with presentment on every claim.  We were working day to day with that system.  We had many already approved, which got stopped by this provision.

We want a settlement.  Our clients need a settlement.  We support a settlement.  The hard work of everyone in this courtroom that did this and Your Honor and Magistrate Shushan, these are stellar lawyers on all sides, and we support what's going on.

What we're trying to do is make sure the Court, in looking at fairness, reasonableness and adequacy, takes a tight look especially at this.  There are thousands of really sick folks out there.  If you take the rhetoric of this evidence, all of these exposures are below the PEL levels set by the government on individual chemicals, but they are sick;

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 238 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 237 of 328

237

03:39PM 1    so, clearly, it was high enough to cause injury.

03:39PM 2          The question is should they all be included in

03:39PM 3    this if they can be, and there are ways they can.

03:40PM 4          If a grading system is implemented, that requires

03:40PM 5    medical causation, doctors, tests.  Confounding factors, did

03:40PM 6    they have asthma before, were they smokers?  You can get a

03:40PM 7    grading system.

03:40PM 8          Then you create a range of compensation.  Then

03:40PM 9    someone who is grievously injured, not in a window of time

03:40PM 10   that's so short for folks that had no idea they would have to

03:40PM 11   be saving evidence or telling somebody about it, folks who

03:40PM 12   dedicated months to try and prevent this oil from getting to

03:40PM 13   shore, and this fellow on the right, who didn't tell anybody he

03:40PM 14   was feeling badly, got quite ill, he gets nothing, and the man

03:40PM 15   who passed out and went to the doctors, he gets something.

03:40PM 16         More drastic, let's look at the -- this very

03:40PM 17   matrix.  Victim one, age 68, 10 years away from mortality table

03:41PM 18   death, had no preexisting asthma, his symptoms are infrequent,

03:41PM 19   controlled by medications, no lost work, no disability, no

03:41PM 20   impact on life function.  Meets all the conditions precedent of

03:41PM 21   timing.  He gets $36,950.

03:41PM 22         Victim two, age 28, no preexisting asthma, his

03:41PM 23   symptoms for his asthma are severe.  He feels like he is

03:41PM 24   drowning every day.  He is suffocating.  Any exposure to

03:41PM 25   particulates sends him into a fit close to death.  He turns

Case 2:19-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 239 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 238 of 328

238

03:41PM 1    blue.  He is anoxic.  The anoxic conditions may, in fact,

03:41PM 2    impact his brain neurologically and his heart function.  He's

03:41PM 3    sick as he can be.  His wife wants to leave him.  He can't play

03:41PM 4    with his kids and he can't work, and he's getting $36,950, or

03:42PM 5    he can opt out.

03:42PM 6           I thought the goal of a settlement was full and

03:42PM 7    final resolution, not whether, after you're really sick and it

03:42PM 8    doesn't work for you, you agree to indemnify BP in their

03:42PM 9    release from other demands of other defendants who are not in

03:42PM 10   the settlement.  You have to indemnify them.  And as a maritime

03:42PM 11   claimant, if you are a cleanup worker on a vessel, award of

03:42PM 12   this court under maritime law, you get that when your life is

03:42PM 13   destroyed.  That cannot be right.

03:42PM 14       THE COURT:  I understand your argument.  Do you have

03:42PM 15   any other points to make?  We need to move on.

03:42PM 16       MR. MCKEE:  Yes, Your Honor, if I may.

03:42PM 17          I would ask the Court to consider that in the

03:42PM 18   *Reed* factors here, there has not been a consideration under the

03:42PM 19   fairness aspects of probability of a plaintiff's success on the

03:42PM 20   merits.

03:42PM 21          There is a high likelihood of proving liability

03:42PM 22   in this case.  There is a high likelihood of proving exposure.

03:43PM 23   There are many differential diagnoses.  If that evidence was

03:43PM 24   ever presented in this formulation of this class action, they

03:43PM 25   would have seen many strong differential diagnoses.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 240 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 239 of 328

239

03:43PM 1       Further, the range of possible recoveries in

03:43PM 2  light of the confounding factors is such that if it was looked

03:43PM 3  at, you see that the range of value is far greater and would be

03:43PM 4  more inclusive of so many people that are desperate for help

03:43PM 5  from this Court.  They want to be in this settlement and would

03:43PM 6  ask the Court to consider either provisionally allowing it to

03:43PM 7  stand, so that the parties can work on these few issues to make

03:43PM 8  it more inclusive, at greater value to really ill folks, and

03:43PM 9  give it the chance to be inclusive, because they are still not

03:43PM 10 getting paid, even if this is approved, for years to come.

03:43PM 11      They need this Court's help.  I ask on their

03:44PM 12 behalf, and it has been my honor to speak on those absent

03:44PM 13 members that really need this Court.

03:44PM 14      Thank you, Your Honor.

03:44PM 15      THE COURT:  Thank you.

03:44PM 16      All right.  Next person allocated time was

03:44PM 17 Marx Sterbcow, not to be confused with Paul Sterbcow, but I

03:44PM 18 understand he has asked to cede his time to Jason Melancon.

03:44PM 19      MR. MELANCON:  Yes, Your Honor.

03:44PM 20      THE COURT:  People that called on your behalf don't

03:44PM 21 know to pronounce your name.  Where were they from?

03:44PM 22      MR. MELANCON:  Baton Rouge.

03:44PM 23      THE COURT:  They don't know how to pronounce

03:44PM 24 MEL-LAWN-SAUN in Baton Rouge?

03:44PM 25      MR. MELANCON:  Wait.  No.  I thought you were asking

03:44PM 1   where my family was from.

03:44PM 2          THE COURT:  No, the person -- right, Ben?

03:44PM 3          THE CLERK:  Miami.

03:44PM 4          THE COURT:  Miami.  Someone from Miami called to ask if

03:44PM 5   you could speak in lieu of Mr. Sterbcow.  When they pronounced

03:44PM 6   your name, Ben said, you mean MEL-LAWN-SAUN, and they corrected

03:44PM 7   Ben, no, it's not MEL-LAWN-SAUN, it's MEL-A-CON, or something

03:45PM 8   like that.

03:45PM 9          MR. MELANCON:  I actually did learn that yesterday,

03:45PM 10  Your Honor, absolutely.  But thank you for allowing us --

03:45PM 11         THE COURT:  You can pronounce it any way you would

03:45PM 12  like, but I just wanted to make sure.

03:45PM 13         MR. MELANCON:  A federal judge in Atlanta did a very

03:45PM 14  good job in front of a jury.

03:45PM 15         THE COURT:  We had a chief probation officer here until

03:45PM 16  recently who was Jo Benoit, B-E-N-O-I-T, which would be BEN-WA,

03:45PM 17  but she insisted her name was BEN-NOIT.  So we had to call her

03:45PM 18  Jo BEN-NOIT.

03:45PM 19             Anyway, go ahead.

03:45PM 20         MR. MELANCON:  Well, I know it's Judge BAR-BE-YEA, and

03:45PM 21  not BAR-BER, so hopefully that gets me some points.

03:45PM 22             But, Your Honor, thank you, again, for allowing

03:45PM 23  the objectors to speak.

03:45PM 24             When I look at the slides and I see apparently

03:45PM 25  we're one-and-a-half people trying to make sure something is

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 242 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 241 of 328

241

03:45PM 1    fair for 200,000 potential claimants, I take pride in the fact

03:45PM 2    that I'm standing before you to object.

03:45PM 3            I would like to tell you how I became involved in

03:46PM 4    this.  I do class action work, and I definitely appreciate the

03:46PM 5    job that the attorneys have done.  You can clearly tell it was

03:46PM 6    a Herculean effort.

03:46PM 7            With that being said, I do think that a fresh set

03:46PM 8    of eyes at times can shed new light on perceived problems.  I

03:46PM 9    will tell you how we perceived the problems and how they came

03:46PM 10   to at least my attention.

03:46PM 11           There are a large group of Hispanic individuals

03:46PM 12   who do not speak English whatsoever that were actually bussed

03:46PM 13   in from Florida and various locations within the United States

03:46PM 14   to come and clean these shorelines.  They came here under the

03:46PM 15   hope of making good money, but also the promise that the room

03:46PM 16   and board would be paid.

03:46PM 17           They were asked to change their residency because

03:46PM 18   they needed -- BP needed to make sure that local people were

03:46PM 19   being hired.  When they changed their residency, at times, they

03:46PM 20   lost that room and board.

03:46PM 21           But, nonetheless, they went out on hot days, and

03:47PM 22   they helped clean our shorelines.  I think that we should all

03:47PM 23   be eternally grateful for that.

03:47PM 24           I do also believe that at this time, we should

03:47PM 25   also make sure that we protect their rights adequately.  I

03:47PM 1  realize that *reasonableness* and *fairness* are sliding terms, but

03:47PM 2  I think that, really, the heart of my argument depends on

03:47PM 3  whether or not this settlement is adequate for those

03:47PM 4  individuals, as my understanding of the law is, the question

03:47PM 5  is, is the relief afforded sufficient enough to kill their due

03:47PM 6  process rights that would otherwise exist.

03:47PM 7           I would like to come from that angle.  I would

03:47PM 8  like to make four brief points, Your Honor.

03:47PM 9      THE COURT:  Tell me more about these clients.  You said

03:47PM 10 they are Hispanic.  They were cleanup workers.

03:47PM 11     MR. MELANCON:  Yes, Your Honor.  Even BP has put up a

03:47PM 12 slide and indicated that of all the individuals who are

03:47PM 13 objecting today, we do have standing.  So, yay, team.

03:47PM 14     THE COURT:  My question is, tell me the nature of their

03:47PM 15 claims; and, if they are in the settlement -- I'm trying to

03:48PM 16 exactly understand the issue you are raising.

03:48PM 17     MR. MELANCON:  They came to my office.  Many of them

03:48PM 18 complain of ongoing complaints.

03:48PM 19           So, as lawyers, we're trying to figure out do

03:48PM 20 they fit in A1, do they fit in A2, what proof can they provide

03:48PM 21 to us, what proof could we get?

03:48PM 22           It seemed the practical problems are how these

03:48PM 23 people who do fit within the parameter of cleanup workers, how

03:48PM 24 do we get them the compensation that has been allocated.

03:48PM 25           I'm not before you today to argue that 1300 is

03:48PM 1    not fair or the 36,000.  I think that was for the other

03:48PM 2    objector.  But my concern procedurally with the claims

03:48PM 3    process --

03:48PM 4           THE COURT:  Is being able to prove your claim.

03:48PM 5           MR. MELANCON:  Absolutely, and let me tell you why.

03:48PM 6               So, here are the four things I would like to

03:48PM 7    briefly point out.

03:48PM 8               Number one, this is the first large-scale human

03:48PM 9    testing of COREXIT.  I don't think anyone knows all the

03:48PM 10   possible diagnoses that may result from this pursuant to

03:49PM 11   latency period that was previously addressed.  However, the way

03:49PM 12   the class is so broadly written, it is going to encompass any

03:49PM 13   conceivable health issue that may have arisen from exposure to

03:49PM 14   this oil; however, you only get compensated if you can identify

03:49PM 15   one of those identified problems.

03:49PM 16               So, therefore, there is a loophole in this,

03:49PM 17   potentially, whereby you may have a condition that's not

03:49PM 18   listed; nonetheless, it results from the exposure, so you got

03:49PM 19   no compensation.  You're in the class --

03:49PM 20          THE COURT:  Give me an example of what kind of

03:49PM 21   condition you're talking about.

03:49PM 22          MR. MELANCON:  Well, Your Honor, as the slide

03:49PM 23   previously showed, our discussions with toxicologists talked

03:49PM 24   about possible liver damage or the kidney damage that could

03:49PM 25   result immediately from it; however, that may not be diagnosed.

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 01/31/18 Page 245 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 244 of 328

244

03:49PM 1          So there are things that were not listed.  But

03:49PM 2   that is how I would like to actually shift to my second point.

03:49PM 3          Your Honor, you asked me a great question.

03:50PM 4   That's what I wrote down:  As to those injuries covered or

03:50PM 5   those diagnoses not covered in the matrix, counsel is not an

03:50PM 6   expert in the field of toxicology.  I don't know.  But that's

03:50PM 7   the problem.  The people who have the knowledge and have the

03:50PM 8   expertise to figure out what these diagnoses are, we can't get

03:50PM 9   them to them.

03:50PM 10         We are beginning to see hundreds of Hispanic

03:50PM 11  individuals come in with consistent complaints over and over.

03:50PM 12  Despite the fact that BP has given $20 million to the health

03:50PM 13  outreach program, guess how much money has been allocated to

03:50PM 14  give them an initial diagnosis?  None.  There isn't a single

03:50PM 15  penny allocated to where my clients can see someone right now

03:50PM 16  and figure out whether or not they have a chronic problem that

03:50PM 17  is associated from their exposure.

03:50PM 18         So I love the fact that it is an open-ended,

03:50PM 19  uncapped settlement, theoretically.  Practically speaking, if

03:50PM 20  can't go to the doctor, and you can't afford to see a doctor,

03:51PM 21  or you can't afford to see a toxicologist, then you're

03:51PM 22  necessarily going to be shuffled into the $1300 classification.

03:51PM 23         So there is a practical cap, despite the fact

03:51PM 24  that there is no theoretical cap.  It is not within my power --

03:51PM 25  there are actually three law firms representing these

03:51PM 1    individuals.  Not one, but all three of our law firms could not

03:51PM 2    possibly pay the doctors to have all of these claims -- or all

03:51PM 3    of these tests run to figure out if they have chronic problems.

03:51PM 4            But here is the problem with that.  Why is that

03:51PM 5    not adequate?  Because BP -- or the settlement recognizes,

03:51PM 6    well, if you have a latent problem that shows up later, well,

03:51PM 7    then you can pursue your Workers' Compensation rights, you can

03:51PM 8    sue us, or you have LHWCA rights.

03:51PM 9            Well, if these individuals have those rights --

03:51PM 10   which even our group of lawyers can't even figure out with the

03:51PM 11   preemption of state law what Workers' Comp would apply to the

03:51PM 12   onshore plaintiffs -- but assuming for the fact that they did,

03:52PM 13   if they have these Workers' Compensation rights, and they have

03:52PM 14   a right to go to the doctor of their choice, then why doesn't

03:52PM 15   this settlement, if it's adequate -- if you're going to say,

03:52PM 16   I'm going to interrupt your Workers' Comp due process rights,

03:52PM 17   but I'm not even going to give you the ability to go to the

03:52PM 18   doctor to find out if you have a chronic problem, I don't think

03:52PM 19   that that's adequate.  That is our major problem with the

03:52PM 20   settlement, the way it's created.

03:52PM 21        THE COURT:  Is there anything in here to prevent your

03:52PM 22   clients from pursuing a Workers' Comp claim now if they believe

03:52PM 23   they were injured from this?

03:52PM 24        MR. MELANCON:  Judge, despite the fact that we have

03:52PM 25   nine lawyers who have been reading this, we can't tell whether

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 247 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 246 of 328

246

03:52PM 1    or not, if you were brought into this class as a class worker,

03:52PM 2    whether it negates your Workers' Comp rights.  I don't know.

03:52PM 3    We can't figure it out.

03:52PM 4            So you're asking me a legal question, and we

03:52PM 5    can't figure out the answer to that.  We don't know.

03:53PM 6            Maybe that is the question that you need to ask

03:53PM 7    BP's counsel or plaintiff steering counsel.

03:53PM 8        THE COURT:  Certainly, you could choose or someone

03:53PM 9    could choose to opt out and pursue that type of claim or

03:53PM 10   whatever other type of claim they have.

03:53PM 11       MR. MELANCON:  I agree.  I've heard that consistently

03:53PM 12   throughout today.  But I don't think the question of whether or

03:53PM 13   not someone has an opt-out right answers the question of

03:53PM 14   whether or not the settlement -- that all these 200,000 people

03:53PM 15   that were up there, it's fair to them, when they did not opt

03:53PM 16   out.

03:53PM 17           At the end of the day, it still has to be fair,

03:53PM 18   adequate and reasonable for the people who did not.  That's our

03:53PM 19   goal.

03:53PM 20           So here's the problem.  Let's say that we have

03:53PM 21   some percentage of our clients who we cannot get them to the

03:53PM 22   doctor, because apparently Florida lawyers cannot even pay for

03:53PM 23   healthcare treatment up front, like lawyers in Louisiana can.

03:53PM 24   Well, the difference between $1,300 and $60,700 is tremendous.

03:54PM 25       THE COURT:  So is that your main objection, that you

03:54PM 1    want the settlement to include the right to go to a doctor and

03:54PM 2    get some sort of initial evaluation?

03:54PM 3            MR. MELANCON:  Absolutely.  I mean, I never thought of

03:54PM 4    it from the standpoint of a cy pres argument; but, the fact

03:54PM 5    that $20 million has been spent to these community outreach

03:54PM 6    programs for mental and behavioral health services, I don't

03:54PM 7    even know what that is.  I don't know what a behavioral health

03:54PM 8    service is.

03:54PM 9            THE COURT:  I think you could Google it and find out.

03:54PM 10           MR. MELANCON:  Stop smoking or eating fried food,

03:54PM 11   maybe, to help your health.  But I'm sure that our clients who

03:54PM 12   don't speak English would love to have a $20 million fund set

03:54PM 13   up so they could see somebody so they know whether they fit in

03:54PM 14   A1, A2, A3 and so on.  I'm sure they would love that.

03:54PM 15           As far as a latent disease is concerned, I think

03:54PM 16   you hit the nail on the head because you said, all the claims

03:54PM 17   that fit into matrix are -- strike that.  The only claims that

03:55PM 18   are not going to -- or that will fit in the latency period are

03:55PM 19   whether you knew now or could not be known now.

03:55PM 20           In other words, if you had a respiratory problem

03:55PM 21   right now --

03:55PM 22           THE COURT:  They have the same meanings, I think.

03:55PM 23           MR. MELANCON:  Right.  If you had a respiratory problem

03:55PM 24   right now that you think could be related, you're not going to

03:55PM 25   be able to qualify on the later-manifested physical condition.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 249 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 249 of 328

248

03:55PM 1    So you're going to have to figure -- you're either going to get

03:55PM 2    $1,300 by filling out an affidavit or the declaration --

03:55PM 3    because if you can't go to the doctor, or your lawyers by law

03:55PM 4    are precluded from paying for you to go the doctor in Florida,

03:55PM 5    then you should be entitled to 60,700, but you're only going to

03:55PM 6    get 1300.

03:55PM 7            But here is also, from a pure legal question that

03:55PM 8    I looked at, you dismissed in your order all plaintiffs who did

03:55PM 9    not allege an injury because you have to allege an injury under

03:55PM 10   maritime law, because you said that cause of action did not

03:55PM 11   accrue.

03:55PM 12           When you look at the settlement, this

03:56PM 13   later-manifested physical condition, you give up your right to

03:56PM 14   punitive damages.  I have never seen a settlement where a cause

03:56PM 15   of action has not even accrued, yet that settlement is going to

03:56PM 16   usurp your legal rights --

03:56PM 17       THE COURT:  I don't know how many settlements you've

03:56PM 18   done, but that's very common.  A release can be much broader

03:56PM 19   than the claim being litigated.  There is nothing uncommon

03:56PM 20   there.  You give up any rights you may have.

03:56PM 21           Getting back to the real issue here, I'm trying

03:56PM 22   to understand, it seems like what my notes say is your

03:56PM 23   objection was that you have clients who claim to be suffering

03:56PM 24   from certain medical conditions that are not included in the

03:56PM 25   Specified Physical Conditions Matrix, right?  That's your main

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 250 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 245 of 328

249

03:56PM  1    objection?

03:56PM  2         MR. MELANCON:  That is not.

03:56PM  3         THE COURT:  Well, that's what my notes say.  That's why

03:56PM  4    Mr. Sterbcow -- that's the exact topic he was invited to speak

03:57PM  5    on.  So you're here to speak on something else?

03:57PM  6         MR. MELANCON:  No, Your Honor.  We were actually

03:57PM  7    surprised when we got the order because what you asked us to

03:57PM  8    speak on wasn't exactly the primary topic of our objection, so

03:57PM  9    we weren't really sure --

03:57PM 10         THE COURT:  It would have been nice if somebody would

03:57PM 11    have told us that.

03:57PM 12         MR. MELANCON:  We just assumed that there were

03:57PM 13    attorneys that were appointed -- here's what we thought.  You

03:57PM 14    found six areas that you considered important that you wanted

03:57PM 15    attorneys to speak on.

03:57PM 16         THE COURT:  Attorneys who voiced those objections on

03:57PM 17    behalf of their certain clients, that was the idea.  But you're

03:57PM 18    not complaining that your clients are suffering from conditions

03:57PM 19    that aren't in the matrix; that's not your issue.

03:57PM 20         MR. MELANCON:  No, we believe that our clients are

03:57PM 21    suffering from conditions in the matrix; but, we believe that

03:57PM 22    the way matrix was created, whether intentionally or

03:57PM 23    unintentionally by design, you're going to shift a huge

03:57PM 24    majority of the individuals who don't have medical records or

03:57PM 25    who did not complain to BP at the time.

03:57PM  1          Because we've already submitted affidavits into

03:57PM  2     the record indicating that these Hispanic workers were governed

03:58PM  3     by Hispanic supervisors, and they were hired by these

03:58PM  4     third-party contractors, they were bussed in, and they were

03:58PM  5     basically told, look, if you don't like the working conditions,

03:58PM  6     you can leave.

03:58PM  7          I know we should not generalize groups of people,

03:58PM  8     but, you know, we know that Spanish working people are very

03:58PM  9     hard working, that they work under conditions that a lot of us

03:58PM 10     would not want to work under, and they do not complain.

03:58PM 11          It is very painful when we have to listen to

03:58PM 12     these individuals talk about how this has impacted their life,

03:58PM 13     and we're looking at them going, I think the best I can do is

03:58PM 14     get you $1,300, unless the Court changes it.

03:58PM 15          That's very hard for lawyers to look at people

03:58PM 16     and tell them that, when they -- when they also believe that

03:58PM 17     they cannot -- that they don't breathe the same way that they

03:58PM 18     used to, or some of our clients have come in and still have

03:58PM 19     lesions on their skin, and they're like, I don't know what it's

03:58PM 20     from.

03:58PM 21          There are tests.  There is methacholine tests.

03:59PM 22     There are patch tests.  BP even said today and in their

03:59PM 23     writing, "High poverty and lack of private insurance coverage,

03:59PM 24     especially among unemployed individuals and the working poor,

03:59PM 25     make it difficult to attract and sustain high-quality

Case 2:19-md-02879-CDB-DRC Document 23880-8 Filed 02/02/18 Page 252 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 251 of 328

251

03:59PM 1    healthcare in the area."  But that's the point.

03:59PM 2         THE COURT:  I get your objection.  Thank you very much,

03:59PM 3    Mr. Melancon.

03:59PM 4         MR. MELANCON:  Thank you, Judge.

03:59PM 5         THE COURT:  All right, any response by class counsel

03:59PM 6    first?

03:59PM 7         MS. GREENWALD:  Thank you, Your Honor.  Thank you,

03:59PM 8    Judge Shushan.

03:59PM 9         I think I might go backwards, Judge, maybe

03:59PM 10   because I remember what I just heard first.  So I'm going to --

03:59PM 11   I'm trying to put these in bundles; and, I'm going to struggle

03:59PM 12   a little bit because I'm not sure I fully understood all of the

03:59PM 13   arguments.

03:59PM 14        Let's talk about the objections in the Spanish

03:59PM 15   workers that -- I'm going to try to say his name -- Melancon --

03:59PM 16        THE COURT:  Melancon.

04:00PM 17        MS. GREENWALD:  I learned another word that I was

04:00PM 18   supposed to use in my argument.  I may still fit it in before

04:00PM 19   the day is out.

04:00PM 20        Let's first talk about the last issue of whether

04:00PM 21   his clients went to the medic station.

04:00PM 22        So, as Your Honor -- I know Judge Shushan saw in

04:00PM 23   a response to a motion that they made, in fact, some of their

04:00PM 24   clients did go to the medic stations, so they did have,

04:00PM 25   obviously, some capacity to read or know about the fact that

04:00PM 1    there were these medical providers at the work stations.

04:00PM 2            Now, if I understand their client base correctly,

04:00PM 3    I believe they are all cleanup workers, all of them, I believe.

04:00PM 4        THE COURT:  It sounded like it.

04:00PM 5        MS. GREENWALD:  So, I mean, they are all class members,

04:00PM 6    every single one of them.  So every single one of them would be

04:00PM 7    entitled to this Periodic Medical Consultation Program.

04:00PM 8            So as Mr. Godfrey said before, to the extent they

04:00PM 9    stay in the settlement, and they participate, and they have a

04:01PM 10   later-manifested condition, one of the benefits of this

04:01PM 11   Periodic Medical Consultation Program is they will actually get

04:01PM 12   some of the care that they have been unable to get in the

04:01PM 13   circumstances in which they live.

04:01PM 14           But for the Gulf Region Health Outreach Program,

04:01PM 15   they may not have access to that because there are parts of

04:01PM 16   this area that have no healthcare within a reasonable driving

04:01PM 17   distance.

04:01PM 18           So to say they didn't know or had no knowledge of

04:01PM 19   or felt that they couldn't go to the medic station is just not

04:01PM 20   fully borne out by the facts of this particular case.

04:01PM 21       THE COURT:  How does someone qualify to go to this

04:01PM 22   periodic screening program?  How do you qualify to get in that

04:01PM 23   program?

04:01PM 24       MS. GREENWALD:  You are a class member, so it happens

04:01PM 25   automatically.  So what will happen is once the settlement is

04:01PM 1    up and running, the Garretson Resolution Group will contact

04:01PM 2    every class member, and they will set up -- they will find out

04:01PM 3    where they live.  They will find the closest facility that is

04:01PM 4    prepared and up and running to do these tests and do these

04:01PM 5    consultation programs.  They will make the appointment for

04:02PM 6    them.  They will tell them when to go, where to go.

04:02PM 7          Then, they will send yearly reminders.  So after

04:02PM 8    year one, they'll say, your next one is in two years, and the

04:02PM 9    next one, and then --

04:02PM 10    THE COURT:  How soon after the effective date will

04:02PM 11    someone qualify for the initial --

04:02PM 12    MS. GREENWALD:  It could happen right away.  As soon as

04:02PM 13    they are found to be -- as soon as they put in their Proof of

04:02PM 14    Claim form -- and, again, if they are cleanup workers, they are

04:02PM 15    automatic class members, so when their Proof of Claim form is

04:02PM 16    in and they get their eligibility, they can start going to

04:02PM 17    their consultation program.

04:02PM 18          Now, it does -- it does, though -- I mean, I want

04:02PM 19    to be candid here.  They would not, at the point of submitting

04:02PM 20    their claim form, have yet had an opportunity to go to a doctor

04:02PM 21    to find out whether the condition they had at the time they

04:02PM 22    were exposed to the oil is a chronic condition for purposes of

04:02PM 23    submitting a claim.  I think I said that very confusingly.  It

04:02PM 24    didn't need to be that confusing.

04:02PM 25          But one of the issues that I find extremely

04:03PM 1   difficult to comprehend is -- I don't know who said it, but it

04:03PM 2   might have been Mr. McKee -- but there is no way to know

04:03PM 3   whether you had one of the conditions after exposure.  The only

04:03PM 4   person who could know is the claimant.  There is no other

04:03PM 5   person who could know.

04:03PM 6         So if you're out there, and you are a resident,

04:03PM 7   and you're walking your dog at night and you smell oil and you

04:03PM 8   get a headache, nobody could know that but the claimant.  There

04:03PM 9   isn't anybody who else could know.

04:03PM 10         To the extent it's a cleanup worker -- and I

04:03PM 11   believe Mr. McKee was talking about in the context of a cleanup

04:03PM 12   worker saying, well, he wouldn't know necessarily, he or she

04:03PM 13   wouldn't know, and even if he or she did know, they may not

04:03PM 14   have told a family member -- the corroborating evidence is not

04:03PM 15   necessary for a cleanup worker.  It is only necessary for a

04:03PM 16   resident.

04:03PM 17         So a cleanup worker who is out there picking up

04:03PM 18   oily boom, they had a headache, or they had a nosebleed, or

04:03PM 19   they had nausea from doing the work, they should know.

04:03PM 20         If they don't know, there isn't anybody else in

04:04PM 21   the world who could know.  Nobody could tell them they had

04:04PM 22   headaches.  So I don't fully understand that objection, quite

04:04PM 23   frankly.

04:04PM 24         So the other issue was the fact there is no

04:04PM 25   punitive damages for the back-end litigation option.  A couple

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 256 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 255 of 328

255

04:04PM 1    of things -- actually, Ms. Cabraser told me that in the

04:04PM 2    *Fen-phen* litigation, there was a similar back-end opt-out in

04:04PM 3    the Third Circuit.  There was no punitive damages in that

04:04PM 4    back-end opt-out litigation provision, and the Third Circuit

04:04PM 5    affirmed that twice.

04:04PM 6            The other --

04:04PM 7        THE COURT:  As I appreciate it, there is some trade-off

04:04PM 8    there.  You can't claim punitive damages in the back-end

04:04PM 9    litigation option, but you don't have to prove liability and

04:04PM 10   general causation or whatever.

04:04PM 11       MS. GREENWALD:  That's what I wanted to mention.  The

04:04PM 12   back-end litigation option is designed for people who get sick

04:04PM 13   5, 10, 15, 20 years from now.

04:04PM 14           So imagine the difficulties of going to court 10,

04:05PM 15   15, 20 years from now, and having to prove BP's liability for

04:05PM 16   the oil spill, for where the oil went, to fingerprint it to say

04:05PM 17   it was even BP's oil.  It would be a Herculean task to do that.

04:05PM 18           I'm not going to say that it would still be an

04:05PM 19   easy case to do it, because these cases are never easy when

04:05PM 20   you're trying to show a later-manifested condition to tie back

04:05PM 21   to the past; but, the BLO provisions would make that litigation

04:05PM 22   so more streamlined for a plaintiff, and the burden of proof

04:05PM 23   and the expense of that litigation would be greatly reduced.

04:05PM 24           So the trade-off of punitive damages there, to

04:05PM 25   me, really inures to the benefit of the claimant.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 257 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 256 of 328

256

04:05PM 1    So to the extent -- Mr. McKee put up a slide, and

04:05PM 2  he was saying that the condition isn't covered under the

04:05PM 3  matrix; but, he had in that slide -- and I don't know which one

04:05PM 4  it was -- he had in that slide that the latency period was

04:06PM 5  between 10 and 40 years.  Well, that can't be in the matrix

04:06PM 6  because nobody is settling that now.  That's the whole point.

04:06PM 7    If you have kidney cancer down the road or

04:06PM 8  whatever other latent injury or later-manifested condition you

04:06PM 9  have, that is what BLO is about.

04:06PM 10    The matrix and the conditions covered in the

04:06PM 11  matrix are extraordinarily straightforward, simple conditions

04:06PM 12  that anybody would understand.  Everybody understands

04:06PM 13  congestion, headaches, nausea, diarrhea.  Everybody understands

04:06PM 14  that.  These are not complex conditions.

04:06PM 15    So to say that people -- it's actually somewhat

04:06PM 16  insulting to say people wouldn't know that.  Of course, people

04:06PM 17  would know whether they had those very simple conditions.

04:06PM 18    I understand that someone may not know that they

04:06PM 19  have kidney cancer.  I understand that.  But, for purposes of

04:06PM 20  compensation under the matrix, it is very difficult to imagine

04:06PM 21  there is anybody who was exposed to this oil who wouldn't

04:06PM 22  understand the very basic conditions and symptoms and whether

04:07PM 23  they experience them or not.

04:07PM 24    So, again, I think that the objections were very

04:07PM 25  much confusing the acute condition, chronic condition, and a

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 258 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 237 of 328

257

Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 237 of 328

04:07PM  1    later-manifested condition.

04:07PM  2             The other thing I want to mention is I think

04:07PM  3    there has been a lot of overlap between what it means to have

04:07PM  4    an acute and a chronic condition and that whole 24 to 72-hour

04:07PM  5    time frame.

04:07PM  6             So you have to manifest one of those conditions

04:07PM  7    within that 24 to 72-hour period.  But, if you still have a

04:07PM  8    condition today, you don't -- that condition today doesn't have

04:07PM  9    to be -- doesn't -- it's unrelated to the initial

04:07PM 10    manifestation.

04:07PM 11             So, for example, my first condition might have

04:07PM 12    been I had -- I might have had -- my first symptom from the oil

04:07PM 13    could be I had a very bad headache, but now I have asthma.

04:07PM 14             So under the matrix, I get paid for my highest,

04:08PM 15    best illness or condition.  So I wouldn't get compensated for

04:08PM 16    my acute A1 if I didn't go to a doctor.  I would be compensated

04:08PM 17    under B1, which is the chronic condition, because I would --

04:08PM 18    why would I give up $60,000 for a $1,300 payment, if I'm a

04:08PM 19    cleanup worker?  So you look to the condition that would pay

04:08PM 20    the greatest amount of money.

04:08PM 21             So there has been a lot of conflating of the

04:08PM 22    various different aspects of the Specified Physical Condition

04:08PM 23    Matrix.  So I wanted to just make sure that the Court

04:08PM 24    understands that, to the extent that the objection is that

04:08PM 25    there is no fund set up for people now to go to a doctor and

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 259 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 259 of 328

258

04:08PM 1    get their diagnoses, that's correct.  That is correct.  You

04:08PM 2    can't -- there is no place that they can go before they file

04:08PM 3    their claim form to find out what they have.

04:08PM 4              However, I submit, what would they do in a court

04:09PM 5    of law?  How could you try that case?  What would you put on as

04:09PM 6    evidence before the jury as to how your client has asthma and

04:09PM 7    it's caused from the oil spill if you don't have any medical

04:09PM 8    records whatsoever or any expert whatsoever to tie your

04:09PM 9    client's condition to the exposure to oil?

04:09PM 10             So, again, we can't cover everything.  To circle

04:09PM 11   back to where I started this afternoon is we designed this

04:09PM 12   settlement to provide benefits for the greatest number of

04:09PM 13   people, so the greatest amount of good for the greatest number

04:09PM 14   of people.

04:09PM 15             While I am sure -- and this is -- as Mr. Godfrey

04:09PM 16   said, we don't always agree with BP on this, I believe, and I

04:09PM 17   believe probably our expert would say, that there are going to

04:09PM 18   be some people who had exposure that's greater than this matrix

04:09PM 19   covers, there are your eggshell plaintiffs, there are certain

04:10PM 20   people who just have a greater sensitivity, but that's not what

04:10PM 21   this settlement was designed for.

04:10PM 22             This settlement was really designed for what most

04:10PM 23   people would experience being exposed to these chemicals and

04:10PM 24   under those circumstances; and, frankly, that's all we can get

04:10PM 25   certified in a case like this.

04:10PM 1        As soon as you start going out to, well, it's

04:10PM 2   potentially in the realm -- I think the word that one of the

04:10PM 3   lawyers used was -- and I think it's relevant to repeat it, he

04:10PM 4   said it's "biologically plausible" that something could happen.

04:10PM 5   Mr. McKee said that.  That's not what the settlement's for.

04:10PM 6   It's not for the biologically plausible outcome.

04:10PM 7        That's not the health outcome we intended to

04:10PM 8   cover in the settlement.  It's not possible to do that.  We

04:10PM 9   intended to cover the biologically likely, the most common

04:10PM 10  responses that human beings have when they are exposed to oil

04:10PM 11  under these circumstances.  That's what the settlement is all

04:10PM 12  about, and that's what that matrix is designed to cover.

04:10PM 13       Let me see what else I wanted to -- again, for

04:11PM 14  the client of Mr. McKee, I believe he said, who was so

04:11PM 15  extraordinarily sick, there is an opt-out provision in this

04:11PM 16  settlement.  The people who are, again, those eggshell

04:11PM 17  plaintiffs who I believe probably are out there, who do have

04:11PM 18  the unusual reaction to the oil, they need to opt out of this

04:11PM 19  settlement.

04:11PM 20       Presumably, if they are really that sick, they

04:11PM 21  probably have been to an emergency room.  They probably do have

04:11PM 22  some medical records to show their illnesses.

04:11PM 23       There was another argument made that there was a

04:11PM 24  person who worked on a boat -- in fact, there was a slide, and

04:11PM 25  there was a gentleman to the right, and he was wearing a yellow

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 261 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 260 of 328

260

04:11PM 1    cleanup suit.  It actually said on the bottom that he was doing

04:11PM 2    cleanup work.  Mr. McKee said that that person gets nothing.

04:11PM 3            That's not right because he -- and the reason he

04:12PM 4    said that person doesn't get anything is that he didn't tell

04:12PM 5    anyone about his symptoms.  But, again, cleanup workers do not

04:12PM 6    need corroboration.

04:12PM 7            So that cleanup worker that he put up there who

04:12PM 8    he said, I believe, had a headache or whatever he had from his

04:12PM 9    exposure to the oil, and he had it within the right time frame,

04:12PM 10   all he has to do, even if he didn't go to the doctor, even if

04:12PM 11   he didn't go to the medic station, all he has to do is submit a

04:12PM 12   declaration saying, I worked on a boat in and around this time;

04:12PM 13   within 5 hours, 10 hours, 20 hours of working on that boat, I

04:12PM 14   got a headache.  He signs that declaration, and he, under our

04:12PM 15   matrix, would be eligible for compensation and, again, the

04:12PM 16   Periodic Medical Consultation Program and all the other

04:12PM 17   benefits of the settlement.

04:12PM 18           Your Honor, if you have some other specific

04:12PM 19   questions, I have so many other notes, but I would be up here

04:12PM 20   for way too long at this time of day.  There were a lot of

04:12PM 21   other issues people raised, but I don't know whether you had

04:13PM 22   specific questions that you would like me to address.

04:13PM 23           THE COURT:  Not at this time.  Thank you very much,

04:13PM 24   Ms. Greenwald.

04:13PM 25           MS. GREENWALD:  Thank you very much, Your Honor.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 262 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 261 of 328

261

04:13PM 1            THE COURT:  Ms. Cabraser, did you have anything you

04:13PM 2     needed to add, Ms. Cabraser, at this time?

04:13PM 3            MS. CABRASER:  I'll let Mr. Godfrey go.

04:13PM 4            MR. GODFREY:  Please, go ahead.

04:13PM 5            MS. CABRASER:  Just two things, Your Honor.

04:13PM 6                 What Ms. Greenwald said about the number of

04:13PM 7     *pro se* plaintiffs reminded me of this.  *Amchem* said something

04:13PM 8     very important with respect to mass tort class actions, the

04:13PM 9     sort of mass tort class actions that case endorses and the sort

04:13PM 10    of mass tort class actions that courts, including the

04:13PM 11    Fifth Circuit Court, certify when there are oil spills or train

04:13PM 12    derailments or other toxic exposures that give rise to

04:13PM 13    short-term acute symptoms, and that is this:  It's the

04:13PM 14    recognition that those claims are meritorious, but they have

04:13PM 15    small monetary value.  They are important to the people who

04:13PM 16    suffer them, but they are not large enough monetarily to enable

04:14PM 17    them to be brought individually.

04:14PM 18                 So *Amchem* says this:  The policy at the very core

04:14PM 19    of the class action mechanism is to overcome the problem that

04:14PM 20    small recoveries do not provide the incentive for any

04:14PM 21    individual to bring a solo action prosecuting his or her

04:14PM 22    rights.  A class action solves this problem by aggregating the

04:14PM 23    relatively paltry potential claims into something that is worth

04:14PM 24    someone's, usually an attorney's, labor.

04:14PM 25                 That aggregation isn't just to make those claims

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 263 of 329
Case 2:10-md-02179-CJB-DPC Document 7892-8 Filed 11/05/12 Page 262 of 328

262

worth enough money for somebody to care.  That solution means
in the class action settlement context, a class action
settlement under Rule 23 can properly do more than simply
distribute sums of money, however large or small the members of
the class.

        Since the very inception of class action
settlement approval jurisprudence in this Circuit, this Circuit
has recognized that class action settlements can be creative,
they can do more, they can do different things than a trial
verdict by a jury or even a bench trial judgment by a judge
could do in a litigated case.

        One of the things that class action settlements
can do, do do, and should do, whether they go under the name of
cy pres or programs or equitable or injunctive relief, is to
utilize resources to benefit classmembers in ways that simply
handing them a check could not do.

        That is why the medical benefits programs, one of
which runs for 21 years in this case, are so important, are so
valuable, and are the most cost effective possible use of money
going to the class benefit.

        We respect courts that put cy pres provisions
under a search light.  That's where those provisions should be
if they are diverting resources from the class or if they are
otherwise violating precepts of Rule 23.  But where cy pres or
injunctive or equitable relief or medical programs or benefit

04:16PM 1    programs enhance the value of the settlement to the class and

04:16PM 2    do creative things that no judgment could do, then they are

04:16PM 3    positive factors in the fairness, adequacy and reasonableness

04:16PM 4    of settlements and are additional reasons to approve the class

04:16PM 5    action settlements.

04:16PM 6              Thank you.

04:16PM 7         THE COURT:  Thank you very much.

04:16PM 8              Mr. Godfrey.

04:16PM 9         MR. GODFREY:  Thank you very much, Your Honor.  I'll be

04:16PM 10   brief.

04:16PM 11             Four simple points.  First, I do not understand

04:16PM 12   how a lawyer can stand up and say, I have advised clients to

04:16PM 13   make claims under a settlement, while at the same time telling

04:16PM 14   this Court it has no power, it would be a violation of due

04:16PM 15   process, and it would be injurious to other of my clients to

04:16PM 16   approve this settlement.

04:17PM 17             Maybe the rules are different elsewhere, but I do

04:17PM 18   not understand how objecting counsel can take those

04:17PM 19   diametrically opposed conflicting positions under the law.

04:17PM 20             Two, when you strip away all of the arguments

04:17PM 21   that have been made and are being made, it is simply an attempt

04:17PM 22   to renegotiate this term here, that term there, some term

04:17PM 23   elsewhere.

04:17PM 24             That's not the role of the fairness hearing.  The

04:17PM 25   role of the fairness hearing is taking the settlement as a

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 265 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 264 of 326

264

04:17PM 1    whole, is it fair, reasonable and adequate as to the class.

04:17PM 2    That standard, there has been no attempt by the objecting

04:17PM 3    counsel even to meet.

04:17PM 4         Third, we saw from Mr. McKee, as I said before,

04:17PM 5    the hyperbole and assertions of these terrible diseases that he

04:17PM 6    attributes or some people attribute or want to attribute to the

04:17PM 7    oil spill or to the use of dispersant.  He cited to Mr. Sawyer,

04:18PM 8    the same Mr. Sawyer who in the *Hendrickson* case *versus*

04:18PM 9    *ConocoPhillips* in the Eastern District of Washington, 2009, the

04:18PM 10   Court said the following:  At each step of this analysis,

04:18PM 11   Sawyer bases his analysis upon speculation and/or erroneous

04:18PM 12   data; and, without adequate explanation, these steps render his

04:18PM 13   methodology unreliable and misleading, and his opinions are

04:18PM 14   therefore inadmissible.

04:18PM 15        The same Mr. Sawyer had the same problem with the

04:18PM 16   *Adams versus Cooper Industries* case in the Eastern District of

04:18PM 17   Kentucky on June 21, 2007, and the same Mr. Sawyer who had the

04:18PM 18   same problem in the *Hill v. Compers* case in Northern District

04:18PM 19   of Mississippi, December 11 of 2009.

04:18PM 20        The *expert*, so-called, has had problems with his

04:18PM 21   expertise, at least as adjudicated by federal courts in the

04:18PM 22   past.

04:18PM 23        But if he's correct, point four, they should opt

04:18PM 24   out.  If they have such hugely terrible injuries that they

04:19PM 25   think they can prove in a court of law, meeting *Daubert*,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 266 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 265 of 328

265

04:19PM 1    meeting causation on a general basis, meeting causation on a

04:19PM 2    specific basis, meeting all the proof requirements, then opt

04:19PM 3    out, and your case will be tried at some distant point in the

04:19PM 4    future.

04:19PM 5           We know what the results of those trials are over

04:19PM 6    time.  Most plaintiffs would prefer, with the light of

04:19PM 7    hindsight, to have taken the settlement, the bird in the hand,

04:19PM 8    rather than the prayer that someone offered them based upon

04:19PM 9    speculation.

04:19PM 10          In summation, Your Honor, to approve this

04:19PM 11   settlement, as before, the Court is being asked -- to reject

04:19PM 12   the settlement, the Court is being asked to do each of the

04:19PM 13   following things:  Reject the views of the class.  Pretty

04:19PM 14   uniform.  Reject the views of the class representatives and

04:19PM 15   class counsel.

04:19PM 16          You know, I started taking down this, but I ran

04:19PM 17   out of paper, actually, because I try to keep notes of the

04:20PM 18   topic on one page.  I've never been before in a fairness

04:20PM 19   hearing where I've had almost every objecting counsel

04:20PM 20   congratulate one or both sides for all the fine work we've done

04:20PM 21   but just want to make one little tweak.  That's just the guise

04:20PM 22   for renegotiation.

04:20PM 23          They have lost sight of the standard:  Is it

04:20PM 24   fair, reasonable and adequate as a whole.  Not because they

04:20PM 25   have an itch that they want me to scratch or they want the PSC

04:20PM 1   to scratch.  That's not the standard.

04:20PM 2         The Court is being asked to reject the opinions

04:20PM 3   of medical and legal experts who support the settlement.  The

04:20PM 4   Court is being asked to reject compensation and benefits for

04:20PM 5   class members in favor of lengthy, interminable litigation

04:20PM 6   going on for years into the future.  The Court is being asked

04:20PM 7   to reject the relief and finality for the entire class based

04:20PM 8   upon the complaints of a truly tiny minority.

04:20PM 9         I'm not certain, having sat here and listened to

04:20PM 10  them and having read with great care, I'm not certain I even

04:20PM 11  understand what those complaints are, other than I know they

04:20PM 12  want to renegotiate it for reasons that I do not think are

04:21PM 13  valid under the law.

04:21PM 14        Your Honor, on behalf of my client BP, it's been

04:21PM 15  a pleasure, as always, to appear before the Court.  I will

04:21PM 16  tender the slides as an exhibit afterwards.

04:21PM 17        Again, I did not use all my slides, so I will

04:21PM 18  give the Court a copy and file only the slides which I used.

04:21PM 19  But we ask the Court to give its final approval to the medical

04:21PM 20  benefits class settlement.

04:21PM 21        Thank you, Your Honor.  Judge Shushan, thank you

04:21PM 22  for your extraordinary efforts in this matter.

04:21PM 23     THE COURT:  All right.  Thank you, Counsel.

04:21PM 24        I'm going to take this under advisement and issue

04:21PM 25  a ruling in due course.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 268 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 26 of 328

267

04:21PM 1          I will say this much about each of these

04:21PM 2     settlements, however.  There have been a number of persons who

04:21PM 3     have -- and we discussed a number of these today -- filed

04:21PM 4     various objections, comments, some cases relating to opt-outs

04:22PM 5     or attempts to opt-out.

04:22PM 6          As has been pointed out, it's kind of perplexing

04:22PM 7     because, in many instances, the people who have objected have

04:22PM 8     objected because they are not included in the class.  There are

04:22PM 9     a couple of objectors who object because the settlement is

04:22PM 10    purportedly too generous to the class.  There are other people

04:22PM 11    who objected, even though they, for other reasons, had no

04:22PM 12    standing to object, because their rights are not affected by

04:22PM 13    the settlements.

04:22PM 14         I have lived with this case, as Judge Shushan

04:22PM 15    has, for quite some time now; and, although I did not

04:23PM 16    personally participate and could not participate in the

04:23PM 17    extensive settlement discussions and negotiations that went on

04:23PM 18    that led to the filing of these two class settlements, I'm very

04:23PM 19    familiar with the methodology that was used, the way in which

04:23PM 20    these settlements were put together, and that they involved

04:23PM 21    extended, very contentious negotiations over a long period of

04:23PM 22    time.

04:23PM 23         In fact, I had encouraged settlement discussions

04:23PM 24    early on in this case, as counsel will recall, and inquired

04:23PM 25    about the possibility of appointing a mediator of some sort to

Case 2:19-md-02879-CJB-DPC Document 23880-8 Filed 02/02/18 Page 269 of 329
Case 2:10-md-02179-CJB-DPC Document 3892-8 Filed 11/15/11 Page 269 of 328

268

04:24PM 1    oversee the settlement discussions early on, and was advised by

04:24PM 2    counsel that they would prefer to negotiate among themselves at

04:24PM 3    that point.

04:24PM 4            So I allowed them to do that; but, after some

04:24PM 5    number of months, it was my sense that the negotiations -- I

04:24PM 6    wouldn't say hit a roadblock necessarily, but weren't making

04:24PM 7    the progress that I had hoped for, so I called the parties in

04:24PM 8    and told them that I wanted them to start meeting with

04:24PM 9    Judge Shushan.  I was going to assign her or task her with the

04:24PM 10   overseeing and mediating of these settlements, and she did.

04:24PM 11           As has been pointed out, she did an unbelievable

04:24PM 12   job in overseeing these negotiations, even to the point where I

04:24PM 13   think on some occasion she had to bring her 95-year-old mother,

04:25PM 14   Sylvia, with her to the negotiations.

04:25PM 15           I know Ms. Sylvia Shushan couldn't figure out

04:25PM 16   what took you guys so long to get it done.  She told me that a

04:25PM 17   couple of times.

04:25PM 18       MR. GODFREY:  Your Honor, if I might, Mr. Rice and I

04:25PM 19   made more progress in the 15 minutes after we met with

04:25PM 20   Ms. Sylvia Shushan than in the prior five months.

04:25PM 21       THE COURT:  So maybe it's Ms. Sylvia Shushan that gets

04:25PM 22   the credit, and not Sally Shushan.

04:25PM 23           Seriously, to me, I'm really troubled that there

04:25PM 24   has been even a hint or insinuation that in this case, of all

04:25PM 25   cases, that the negotiation settlements involve any kind of

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 270 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 269 of 328

269

04:25PM 1    collusion or improper conduct by the parties who are

04:25PM 2    negotiating these settlements, which is factor number one, of

04:26PM 3    course, under the *Reed* factors as set forth by the

04:26PM 4    Fifth Circuit.

04:26PM 5         There is also no doubt that the complexity,

04:26PM 6    expense and likely duration of this litigation -- I mean, the

04:26PM 7    proof is before us in just what has been done to date, what the

04:26PM 8    parties are facing.  For those parties who do not settle, the

04:26PM 9    complexity, expense, and likely duration of this litigation is

04:26PM 10   beyond anything most or all of us have ever seen or had to deal

04:26PM 11   with.

04:26PM 12        It's been mentioned before about the *Exxon Valdez*

04:26PM 13   oil spill, which was nothing on the order of this spill,

04:26PM 14   took -- it occurred in 1989.  As recently as 2009, 20 years

04:26PM 15   later, that case was again before the United States

04:27PM 16   Supreme Court on a legal issue of punitive damages.

04:27PM 17        I, frankly, thought in 2009 when I read the *Exxon*

04:27PM 18   case from the Fifth Circuit that that was the end of it.  But

04:27PM 19   I've been told more recently, oh, no, there is still litigation

04:27PM 20   going on, some parts of it, up in Alaska.

04:27PM 21        So now we're 23 years later, and there is

04:27PM 22   litigation still going on over that oil spill.

04:27PM 23        I know that I've also read anecdotally that

04:27PM 24   thousands of claimants have died before collecting any money;

04:27PM 25   and, of course, there have been just a myriad of trials and

04:27PM  1    appeals and remands and more appeals.

04:27PM  2            As I've said before, I do not plan to be here in

04:27PM  3    20 or 23 years handling this case; but, if there are no

04:27PM  4    settlements, someone will be here.  Some judge will be here or

04:28PM  5    elsewhere handling these cases, and that's something that has

04:28PM  6    to be taken into account.  That's the second *Reed* factor.

04:28PM  7            The third *Reed* factor is the stage of the

04:28PM  8    proceedings and the amount of discovery that has been

04:28PM  9    completed.  Again, it's been mentioned and the Court is very

04:28PM 10    familiar, this is not a packaged settlement where two parties

04:28PM 11    just walked into the courthouse unannounced and dropped a

04:28PM 12    prepackaged settlement on a judge's desk and asked the judge to

04:28PM 13    sign off on it, which has occurred, unfortunately, in some

04:28PM 14    places over the past years, but this is in no way anything

04:28PM 15    similar to that.

04:28PM 16            There has been massive litigation, massive number

04:28PM 17    of depositions.  Whenever we're talking about depositions, in

04:28PM 18    this case, we're not talking about one or two-hour depositions.

04:28PM 19    Most of them were two-day depositions taken in the

04:28PM 20    United States; and, the lawyers last summer I recall spent a

04:29PM 21    whole month in the UK taking depositions.  In fact, technology

04:29PM 22    is wonderful nowadays.  I was able to sit at my desk in my

04:29PM 23    chambers on the second floor and watch in realtime the

04:29PM 24    depositions being taken.

04:29PM 25            I'll let you all know, I didn't watch very much

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 272 of 329
Case 2:10-md-02179-CJB-DCW Document 7892-8 Filed 11/15/12 Page 271 of 328

271

04:29PM 1    of it, but I was able to do it.  I was able to watch those

04:29PM 2    depositions as they were being taken, and I did watch bits and

04:29PM 3    pieces of some of the depositions.

04:29PM 4            I sent Judge Shushan over there to oversee those

04:29PM 5    depositions.  I couldn't see her on the screen, on the video,

04:29PM 6    so I wasn't sure that she was actually attending the

04:29PM 7    depositions.  I thought she was probably in a pub somewhere,

04:29PM 8    because you know she likes her beer, you know.

04:29PM 9            So I e-mailed you or texted you, one of the two,

04:29PM 10   and I said, "Okay, are you in a pub, or are you really at the

04:30PM 11   deposition?"  She said, "I'm at the deposition."  I said, "I

04:30PM 12   want you to prove it."  I said, "I'm watching the screen.  I

04:30PM 13   want you to walk behind the witness and let me see you there."

04:30PM 14   She says, "I can't do that, but I'll" -- I said, "Okay, cough

04:30PM 15   three times," and she did.

04:30PM 16           I'm convinced that she was actually there

04:30PM 17   attending the depositions, for at least part of the time, at

04:30PM 18   least at that time.

04:30PM 19           So there has been a massive amount of not only

04:30PM 20   formal discovery, but there is just so much information

04:30PM 21   available about this case, both with respect to liability, with

04:30PM 22   respect to damages.

04:30PM 23           Some of this has been talked about, not only

04:30PM 24   which occurred in this Court, but there have been numerous

04:30PM 25   government investigations, there have been Congressional --

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 273 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 272 of 328

272

04:30PM 1   government agencies, Congressional investigations.  There is

04:30PM 2   just a massive amount of information available to the parties

04:30PM 3   to allow them to negotiate what they have done.

04:31PM 4        The probability of plaintiffs' success on the

04:31PM 5   merits, I mean, there is obviously some big differences of

04:31PM 6   opinion on that, which is often what leads to settlement of

04:31PM 7   cases.  If everybody had to agree on what the probability of

04:31PM 8   success was or what the damages, what the potential ranges of

04:31PM 9   recovery were, no case would ever be settled, I guess.  So

04:31PM 10  those are clearly at issue in this case.

04:31PM 11       Obviously, the Court has to take into

04:31PM 12  consideration the opinions of class counsel, class

04:31PM 13  representatives and any absent class members, any objectors, of

04:31PM 14  course, too, which the objectors do serve a valid purpose in

04:31PM 15  invoicing their views and opinions as to the settlement.

04:31PM 16       Although, again, in this case, there are some

04:32PM 17  objectors that -- and I'm not painting this with a broad brush,

04:32PM 18  but there are no objections that were voiced that I think were

04:32PM 19  not, frankly, made in good faith and bordered on being

04:32PM 20  frivolous, at least.

04:32PM 21       So I'm going to take another look at everything.

04:32PM 22  I'm not going to issue a ruling today; but, I've already given

04:32PM 23  these proposed settlements preliminary approval.  I'm going to

04:32PM 24  go back and relook at all of the objections that have been

04:32PM 25  filed and what has been said here today and take those into

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 274 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 273 of 328

273

04:32PM 1    account and further consideration.

04:32PM 2              I am greatly concerned about the conduct of some

04:32PM 3    counsel who have either encouraged their clients or purportedly

04:33PM 4    encouraged their clients to engage in what I call en masse

04:33PM 5    or mass opt-outs in this case.

04:33PM 6              I think I said this last time we were in court

04:33PM 7    together, that I think a lawyer owes a fiduciary duty and an

04:33PM 8    ethical duty to each client to analyze that client's case or

04:33PM 9    claim and evidence, and let the client actually make the

04:33PM 10   informed decision as to whether he or she should stay in or opt

04:33PM 11   out of the class.

04:33PM 12             To just send generic form letters to hundreds of

04:33PM 13   thousands of clients and say, we don't like the settlement, opt

04:33PM 14   out, without any further analysis, is not serving your client

04:34PM 15   well, at the least.

04:34PM 16             I'll point these things out again.  Some of these

04:34PM 17   have been referred to, but it seems pretty obvious that if

04:34PM 18   those who do opt out, which everyone has a right to do,

04:34PM 19   obviously, but you have to consider when you opt out of the

04:34PM 20   settlement, assuming they are finally approved, what you are

04:34PM 21   opting into?  What are you giving up?

04:34PM 22             It's obvious you're giving up a payment now or in

04:34PM 23   the near future, as opposed to, as I said, potentially years

04:34PM 24   and years of litigation, delays, appeals and uncertain

04:34PM 25   outcomes.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 275 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/05/12 Page 274 of 328

274

In many cases, opt-outs are giving up the benefit of a presumption of causation or perhaps a relaxed standard of causation for many of the claimants.  They are giving up those RTP, or risk transfer premium, multipliers which are then added to base lost compensation.

Some people may be able to prove future losses, some people may not be able to, but they are giving up these guaranteed multipliers to the extent they are applied under the terms of the settlement.

Those who settle within the settlement versus those who opt out, those who stay in will not be charged any common benefit attorney's fees or expenses because, under the terms of this settlement, unlike many others, again, BP has agreed to pay whatever common benefit fees are awarded over and above the settlement funds going to the class members.

Again, just so everybody understands this, there were some people who objected to the attorney's fee provisions in this settlement.

First of all, that issue is not before the Court now because there has been no application for an award of attorney's fees.  As I said, if and when that application is filed, which would have to follow approval of the settlement, then there would be due process involved, hearings, an opportunity for people to weigh in on that and voice their opinions.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 276 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 23 of 326

275

04:36PM 1    The press has noted this figure of $600 million.

04:36PM 2    There has been some figures mentioned in the press that are --

04:36PM 3    first of all, the 7.8 billion that everybody has mentioned, as

04:36PM 4    I appreciate it, only BP's -- and I assume they have some basis

04:36PM 5    for it, I'm not suggesting otherwise -- but BP's estimate of

04:36PM 6    what the economic settlement could ultimately cost them.

04:36PM 7    But as has been pointed out by many others, many

04:37PM 8    speakers, this is not a capped settlement except to the extent

04:37PM 9    it's a cap/guarantee with respect to the seafood program.

04:37PM 10    So those who stay in the settlement are not

04:37PM 11    charged any common benefit fees or expenses.  That's all paid

04:37PM 12    by BP on top.

04:37PM 13    There was some criticism by some objectors, we

04:37PM 14    haven't talked about it here today, but in the written

04:37PM 15    objections, again, sort of inferring some sort of improper

04:37PM 16    collusion by the PSC and BP.  I can guarantee you that did not

04:37PM 17    occur.

04:37PM 18    With respect to the attorney's fee issue, I can

04:37PM 19    guarantee you that that did not occur in this case.  I know the

04:37PM 20    way this was put together.  Judge Shushan oversaw it, as I

04:37PM 21    said.

04:37PM 22    The parties submitted to the Court a signed

04:37PM 23    settlement agreement term sheet, settlement agreements, each of

04:38PM 24    the two settlements.  They then asked permission of

04:38PM 25    Judge Shushan and myself whether they were allowed to then

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 277 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 276 of 328

276

04:38PM 1  negotiate some agreement on attorney's fees, and only then did

04:38PM 2  that occur.

04:38PM 3       So there is no way that the attorney's fees in

04:38PM 4  any way affected the underlying settlement negotiations.  In

04:38PM 5  fact, it's a great credit of counsel in this settlement, I

04:38PM 6  think, as to how this is structured.

04:38PM 7       There is also, as has been mentioned, an

04:38PM 8  extension of the statute of limitations for most claimants.

04:38PM 9  The OPA and general maritime limitations period for most claims

04:38PM 10 would expire next April; April 20, 2013.  Under the terms of

04:38PM 11 the economic class settlement, that is extended at least until

04:39PM 12 people can file claims as late as April 20, 2014, another year.

04:39PM 13      There have been some complaints about the

04:39PM 14 documentation requirement to file a claim or support a claim.

04:39PM 15 In my view, being very familiar with not only how cases are

04:39PM 16 litigated, but the settlement requirements in various cases in

04:39PM 17 different contexts, the documentation requirements appear to me

04:39PM 18 to be very reasonable and probably much less onerous than would

04:39PM 19 be required for someone to litigate a claim in court in a

04:39PM 20 contested trial.

04:39PM 21      So, again, these are the factors that people need

04:40PM 22 to think about when deciding to opt out or, those who opt out,

04:40PM 23 what they would be giving up.

04:40PM 24      You know, two things.  First of all, you can't be

04:40PM 25 paid unless you file a claim.  As has been pointed out earlier,

04:40PM 1    some people complained that they haven't been paid quickly

04:40PM 2    enough, but they haven't even filed a claim.  That's

04:40PM 3    number one.  You can't be paid unless you ask to be paid.

04:40PM 4         Secondly, you're not going to be paid in this

04:40PM 5    type of economic loss settlement unless you can present some

04:40PM 6    type of documentation or evidence that supports your claim or

04:40PM 7    your loss.  There are various ways you can do that under the

04:40PM 8    settlement, it seems to me, whether it be a business or an

04:40PM 9    individual claimant.

04:40PM 10        I want to finally say a little bit about the

04:40PM 11   lawyers in the case.  At the very beginning, I told the

04:41PM 12   lawyers, I put this in writing, my very first order, that I

04:41PM 13   expected everyone -- I knew this was going to be a contentious

04:41PM 14   piece of litigation, that there would be a lot of bases on

04:41PM 15   which people could not only disagree but disagree vehemently,

04:41PM 16   but that I expected counsel to behave themselves and conduct

04:41PM 17   themselves with the greatest degree of ethics and

04:41PM 18   professionalism.

04:41PM 19        Obviously, I'm not with you all 24/7; but, from

04:41PM 20   my perspective, that has been done.  I commend all of counsel

04:41PM 21   that have been involved in litigating this case, doing the

04:41PM 22   discovery, preparing for trial, and, of course, negotiating and

04:42PM 23   bringing this to this point of these settlements being

04:42PM 24   presented to the Court, for how they've conducted themselves,

04:42PM 25   not only with great professionalism, but obviously with great,

04:42PM 1    great skill.

04:42PM 2             I also want to thank our claims administrator,

04:42PM 3    Mr. Juneau.  Mr. Juneau, you've hung in here with us all

04:42PM 4    afternoon, I see, even though you're not the claims

04:42PM 5    administrator for the medical settlement, I want people to

04:42PM 6    understand, but you are for the economic class.

04:42PM 7             Mr. Juneau's name was jointly proposed to me by

04:42PM 8    counsel.  Originally, the idea was that the parties would

04:42PM 9    submit a short list of names that they could agree on, and then

04:42PM 10   I would name somebody or select somebody from that list.  To my

04:43PM 11   great surprise and satisfaction, instead, the parties came to

04:43PM 12   me and jointly submitted Mr. Juneau's name.

04:43PM 13            Of course, I've known Mr. Juneau for many years.

04:43PM 14   I know of his background, his great experience, both as a

04:43PM 15   lawyer, as a mediator, as a claims administrator.  He has been

04:43PM 16   tasked with an enormous job, as he only partly described what

04:43PM 17   he has been doing for the last several months.

04:43PM 18            I think it's been pretty remarkable to me what

04:43PM 19   you have done and how you have brought this program along to

04:43PM 20   where it is now.  Again, I know there have been, again, some

04:43PM 21   complaints about things are moving too slowly.  That's a

04:44PM 22   complaint that's hard to justify or hard to understand from

04:44PM 23   what was just said here today about how quickly claims are

04:44PM 24   moving along and how the program is working and looks like will

04:44PM 25   continue to work.

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 280 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/14/12 Page 279 of 328

279

04:44PM 1          So, in any event, for all those reasons, I'm

04:44PM 2     going to issue my final ruling.  I'm going to look at the

04:44PM 3     objections again and consider whether I believe any of them

04:44PM 4     have sufficient merit to warrant anything short of approving

04:44PM 5     these two settlements.

04:44PM 6          I think, again, it's been said, but I'll repeat,

04:44PM 7     that we shouldn't lose sight of the forest for the trees here.

04:44PM 8     There probably is no perfect settlement, certainly not in the

04:45PM 9     context of an event such as a massive catastrophe like this.

04:45PM 10    So someone can always look at and say, well, you should have

04:45PM 11    done this, you should have done this, you could have done it

04:45PM 12    differently; but, that's not really the test before the Court.

04:45PM 13    The test is pretty straightforward, and it's whether the

04:45PM 14    settlement is fair, reasonable and adequate to the class

04:45PM 15    members as a whole.  I'm going to look at that and make my

04:45PM 16    decision and release y'all a ruling in short order.

04:45PM 17         Court is adjourned.

04:45PM 18         THE DEPUTY CLERK:  All rise.

19         (WHEREUPON, at 4:45 p.m., the proceedings were

20    concluded.)

21                    *   *   *

22

23

24

25

Case 2:10-md-02179-CJB-DPC Document 23880-8 Filed 02/02/18 Page 281 of 329
Case 2:10-md-02179-CJB-JCW Document 7892-8 Filed 11/15/12 Page 280 of 328

280

1                        REPORTER'S CERTIFICATE

2

3        I, Cathy Pepper, Certified Realtime Reporter, Registered

4   Merit Reporter, Certified Court Reporter of the State of

5   Louisiana, Official Court Reporter for the United States

6   District Court, Eastern District of Louisiana, do hereby

7   certify that the foregoing is a true and correct transcript to

8   the best of my ability and understanding from the record of the

9   proceedings in the above-entitled and numbered matter.

10

11

12                              *s/Cathy Pepper*
                          _____

13                          Cathy Pepper, CRR, RMR, CCR
                            Certified Realtime Reporter
14                          Registered Merit Reporter
                            Official Court Reporter
15                          United States District Court
                            Cathy_Pepper@laed.uscourts.gov
16

17

18

19

20

21

22

23

24

25

Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 04/02/18 Page 282 of 329
Case 2:10-md-02179-CJB-DPC Document 4892-8 Filed 11/15/11 Page 283 of 326

1

**#**

**#12-968** [7] - 1:9, 4:7, 5:15, 7:13, 7:20, 11:24, 180:10
**#12-970** [5] - 1:12, 4:5, 7:15, 7:18, 11:24

**$**

**$1,300** [5] - 185:25, 246:24, 248:2, 250:14, 257:18
**$100** [1] - 110:10
**$1300** [1] - 244:22
**$150** [1] - 228:11
**$20** [5] - 191:6, 216:16, 244:12, 247:5, 247:12
**$3,500** [1] - 186:7
**$30** [3] - 30:6, 58:15, 155:11
**$300** [1] - 146:11
**$36,950** [2] - 237:21, 238:4
**$40** [1] - 58:15
**$400** [5] - 56:2, 140:5, 146:10, 157:1, 157:13
**$405** [1] - 56:7
**$405,040,339** [1] - 84:16
**$43** [1] - 64:5
**$44** [2] - 155:13, 155:16
**$500** [1] - 186:10
**$57** [6] - 30:4, 30:7, 152:12, 152:17, 153:7, 155:5
**$60,000** [1] - 257:18
**$60,700** [1] - 246:24
**$600** [2] - 146:12, 275:1
**$700** [1] - 140:14
**$730** [1] - 57:10
**$733** [1] - 57:23
**$750** [1] - 186:7
**$952** [2] - 56:2, 84:22

**'**

**'09** [1] - 47:19
**'11** [1] - 47:19
**'12** [1] - 34:23

**0**

**01** [1] - 194:9

**1**

**1** [7] - 8:12, 13:4, 13:5, 64:17, 100:16, 100:19, 210:13
**1,378** [1] - 95:17
**1,728** [1] - 194:16
**1,754** [1] - 71:25
**1........................** [1] - 6:17
**1.18** [1] - 38:2
**1.2** [1] - 146:12
**1.25** [3] - 109:8, 118:10, 118:14
**1.3** [1] - 56:1
**1.3-plus** [1] - 85:3
**1.5** [2] - 107:17, 118:14
**1.9** [5] - 139:25, 140:4, 141:15, 142:9, 145:19
**10** [8] - 10:3, 61:17, 130:12, 237:17, 255:13, 255:14, 256:5, 260:13
**10,000-foot** [1] - 46:10
**10,500** [1] - 55:7
**10,765** [2] - 72:16, 94:15
**10-2179** [1] - 7:11
**10-day** [1] - 55:16
**10-MD-2179** [1] - 1:6
**100** [1] - 6:17
**100,000** [2] - 190:8, 190:11
**10003** [1] - 2:8
**101** [3] - 4:19, 4:20, 4:22
**105** [1] - 216:8
**10:59** [1] - 100:24
**11** [4] - 36:24, 62:3, 100:21, 264:19
**11/6** [1] - 84:22
**119** [2] - 4:23, 4:24
**119,000** [1] - 62:2
**11:15** [1] - 100:22
**12** [3] - 36:24, 180:19, 211:13
**13** [8] - 41:23, 46:25, 47:4, 52:25, 56:14, 71:13, 71:14, 196:11
**130** [1] - 4:25
**1300** [2] - 242:25, 248:6

**133** [2] - 5:1, 5:3
**14** [2] - 47:12, 163:3
**14,946** [1] - 55:8
**145** [1] - 50:4
**149** [3] - 5:4, 5:5, 5:8
**15** [10] - 4:10, 58:20, 59:7, 62:6, 65:6, 100:21, 156:18, 255:13, 255:15, 268:19
**15-minute** [1] - 80:13
**150** [4] - 193:10, 209:1, 209:11, 210:1
**1500** [1] - 76:9
**156** [1] - 5:9
**16** [1] - 196:11
**160** [1] - 5:10
**168** [1] - 5:11
**16th** [2] - 11:23, 189:1
**17** [2] - 90:5, 90:18
**17-plus** [1] - 95:19
**170** [1] - 17:13
**172** [1] - 17:13
**178** [2] - 5:12, 95:18
**179** [1] - 5:13
**18** [4] - 4:11, 12:2, 160:23, 161:3
**180** [3] - 5:15, 5:16, 5:17
**1800** [1] - 133:15
**19.2** [1] - 57:20
**196** [1] - 5:18
**197** [1] - 5:20
**1978** [1] - 56:11
**1981** [1] - 78:18
**1989** [1] - 269:14
**1993** [1] - 56:11
**1:02** [1] - 179:2
**1st** [1] - 28:11

**2**

**2** [5] - 11:9, 12:5, 65:4, 80:23, 162:16
**2,105** [1] - 55:9
**2,200** [1] - 96:21
**2,588** [2] - 72:19, 94:22
**2.3** [14] - 27:23, 28:3, 57:8, 57:17, 61:1, 63:24, 135:25, 136:7, 137:15, 139:11, 139:12, 142:9, 142:11, 145:19
**2.5** [5] - 34:16, 48:25, 107:10, 118:8, 158:6
**20** [26] - 1:5, 4:12,

7:13, 9:6, 21:9, 26:21, 27:17, 39:18, 56:16, 58:19, 65:6, 72:10, 160:21, 183:8, 183:22, 193:9, 219:5, 219:24, 229:11, 255:13, 255:15, 260:13, 269:14, 270:3, 276:10, 276:12
**20,000** [1] - 61:17
**20-year** [1] - 231:24
**200** [1] - 72:4
**200,000** [6] - 182:12, 184:12, 193:8, 230:15, 241:1, 246:14
**20005** [1] - 2:25
**2007** [4] - 39:11, 46:23, 47:19, 264:17
**2009** [7] - 39:11, 46:23, 122:14, 264:9, 264:19, 269:14, 269:17
**201** [1] - 125:16
**2010** [13] - 1:5, 7:13, 9:6, 9:21, 10:3, 26:4, 34:17, 39:13, 45:15, 46:23, 47:19, 181:8, 187:8
**2011** [7] - 16:20, 34:23, 39:8, 39:13, 46:13, 46:15, 46:24
**2012** [19] - 1:7, 7:2, 10:25, 11:9, 11:18, 12:2, 12:4, 12:5, 12:10, 12:15, 12:25, 13:2, 13:4, 39:8, 39:13, 50:11, 80:23, 161:1, 180:2
**2013** [1] - 276:10
**2014** [2] - 23:8, 276:12
**208** [1] - 5:21
**21** [6] - 189:16, 190:20, 215:25, 234:1, 262:18, 264:17
**21-year** [1] - 189:4, 211:15
**21.3.6** [1] - 62:13
**21.61** [1] - 129:24
**2179** [1] - 9:22
**222** [1] - 5:22
**223** [2] - 5:23, 5:25
**229** [2] - 6:3, 6:4
**23** [13] - 15:7, 16:12, 17:5, 31:8, 32:18, 160:21, 197:18, 198:15, 227:18,

262:3, 262:24, 269:21, 270:3
**23(a** [3] - 15:8, 15:17, 15:19
**23(a)(1** [1] - 197:8
**23(b** [1] - 15:18
**23(b)(3** [4] - 23:17, 53:14, 178:2, 197:9
**23(b)(3)'s** [1] - 53:21
**23(e** [1] - 17:13
**23(e)(2)** [2] - 120:5, 128:8
**232.8** [1] - 64:2
**239** [1] - 6:5
**24** [8] - 47:6, 48:5, 186:17, 186:18, 202:21, 234:6, 257:4, 257:7
**24,986** [1] - 55:8
**24/7** [2] - 168:23, 277:19
**242** [1] - 6:6
**25** [8] - 12:4, 27:17, 47:21, 91:25, 94:2, 107:18, 109:11, 189:21
**25,000** [1] - 93:23
**25.3** [1] - 57:24
**251** [1] - 6:7
**2588** [2] - 96:6
**26** [1] - 41:23
**261** [1] - 6:8
**263** [1] - 6:9
**266** [1] - 6:10
**26th** [1] - 11:1
**27** [3] - 10:25, 98:18, 98:20
**275** [1] - 2:4
**28** [2] - 94:18, 237:22
**280** [1] - 194:18
**29TH** [1] - 2:4
**2:15** [1] - 178:24
**2nd** [1] - 50:11, 63:6

**3**

**3** [2] - 57:13, 65:21
**3.5** [2] - 49:1, 49:2
**30** [9] - 26:18, 27:17, 58:19, 59:8, 62:5, 69:14, 155:20, 156:16, 178:5
**30,000** [1] - 56:24
**30-day** [1] - 38:14
**300** [6] - 2:21, 10:15, 25:1, 109:7, 113:21
**31** [2] - 4:13, 12:25
**34** [3] - 59:13, 59:16, 89:13

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 04/09/18 Page 283 of 329
Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 11/15/17 Page 282 of 328

2

**35** [7] - 47:3, 47:14, 58:14, 163:1, 163:4, 163:14, 169:4
**36** [1] - 62:8
**36,000** [1] - 243:1
**36,484** [1] - 85:21
**365** [1] - 72:21
**378** [2] - 95:14, 96:6
**38** [3] - 63:5, 63:13, 73:12
**381** [1] - 236:7
**39** [3] - 63:5, 63:13, 73:12

## 4

**4** [7] - 36:24, 68:5, 81:11, 89:10, 89:21, 197:8
**4,300** [1] - 195:4
**40** [11] - 47:8, 48:6, 48:7, 58:14, 60:1, 69:21, 72:9, 92:15, 99:9, 143:8, 256:5
**43** [1] - 71:3
**4300** [2] - 210:24, 219:20
**45** [2] - 99:10, 114:3
**48** [1] - 186:16
**48,000** [1] - 105:20
**49** [1] - 4:14
**4:45** [1] - 279:19
**4th** [2] - 84:6, 85:5

## 5

**5** [3] - 68:9, 255:13, 260:13
**5,839** [1] - 55:18
**5.15** [1] - 163:12
**50** [6] - 9:7, 67:10, 93:25, 94:1, 146:25, 189:18
**500** [1] - 3:15
**5000** [1] - 2:18
**504** [1] - 3:16
**51** [2] - 177:6, 177:8
**54** [1] - 209:11
**55** [1] - 174:6
**556** [1] - 1:22
**589-7779** [1] - 3:16
**59** [1] - 91:20

## 6

**6** [2] - 12:15, 211:12
**60** [1] - 189:18
**60,000** [1] - 112:18

**60,700** [1] - 248:5
**60654** [1] - 2:22
**61** [1] - 236:7
**62** [1] - 53:25
**62,020** [1] - 55:7
**623** [1] - 63:7
**64** [1] - 95:21
**655** [1] - 2:24
**68** [1] - 237:17
**6:15** [1] - 74:6
**6th** [1] - 85:8

## 7

**7** [5] - 4:4, 4:6, 4:8, 13:2, 109:14
**7,502** [1] - 55:8
**7,928** [1] - 94:17
**7-Eleven** [1] - 83:17
**7.8** [2] - 27:16, 275:3
**70** [2] - 189:19, 210:18
**700** [1] - 2:7
**701** [1] - 2:17
**70113** [1] - 1:25
**70130** [1] - 3:16
**70139** [1] - 2:18
**703** [1] - 17:12
**70502** [1] - 1:22
**7114-22** [1] - 174:5
**72** [7] - 143:9, 186:16, 186:17, 186:18, 202:21, 230:8, 233:7
**72-hour** [2] - 234:7, 257:4, 257:7
**75** [3] - 125:24, 141:24, 210:3
**76** [1] - 4:15
**7727-1** [1] - 46:18
**7855-2** [1] - 162:20
**79,008** [1] - 85:8

## 8

**8** [6] - 1:7, 7:2, 11:18, 12:10, 58:2, 180:2
**80** [2] - 4:16, 51:22
**800** [1] - 66:23
**82** [2] - 74:8, 88:15
**820** [1] - 1:25
**87** [2] - 4:17, 9:12
**88** [1] - 122:6
**8:30** [1] - 1:7

## 9

**9** [2] - 4:9, 211:13
**90** [1] - 90:19

**90-day** [5] - 89:9, 90:6, 90:7, 90:11, 90:17
**900** [1] - 185:25
**91,000** [1] - 105:20
**92** [1] - 195:4
**93** [2] - 4:18, 56:5
**94111** [1] - 2:4
**95** [3] - 96:1, 98:5, 98:7
**95-year-old** [1] - 268:13
**952-plus** [1] - 86:19
**96** [1] - 210:2
**97** [1] - 73:8
**98** [7] - 104:19, 105:17, 107:6, 107:9, 107:16, 107:17, 116:24

## A

**A&M** [1] - 69:20
**A's** [1] - 158:21
**A.M** [1] - 1:7
**a.m** [1] - 100:24
**A1** [2] - 242:20, 247:14, 257:16
**A2** [3] - 188:18, 242:20, 247:14
**A3** [1] - 247:14
**ability** [3] - 217:1, 245:17, 280:8
**able** [26] - 12:13, 20:12, 61:2, 64:8, 84:11, 85:21, 90:9, 115:1, 118:2, 128:1, 144:25, 178:6, 191:12, 191:20, 216:12, 218:5, 230:11, 234:20, 236:10, 243:4, 247:25, 270:22, 271:1, 274:6, 274:7
**above-entitled** [1] - 280:9
**absence** [2] - 65:1, 201:14
**absent** [8] - 16:14, 18:5, 65:4, 120:3, 120:7, 183:14, 239:12, 272:13
**absolute** [3] - 34:4, 164:17, 164:18
**absolutely** [10] - 23:23, 91:2, 114:8, 151:1, 227:14, 228:2, 229:9, 240:10, 243:5, 247:3
**abundant** [2] - 67:17,

215:18
**abundantly** [1] - 98:4
**accept** [1] - 87:19
**acceptance** [7] - 87:8, 87:10, 95:22, 96:1, 98:5, 99:20, 99:22
**accepted** [4] - 56:4, 80:4, 95:21
**accepting** [2] - 98:8, 153:3
**access** [12] - 66:14, 81:20, 129:11, 190:10, 192:16, 217:18, 217:23, 218:5, 218:8, 218:9, 218:10, 252:15
**accessible** [4] - 83:14, 83:18, 83:23, 83:24
**accident** [3] - 51:8, 183:2, 198:25
**accomplish** [2] - 103:13, 159:16
**according** [7] - 37:21, 38:8, 46:24, 47:12, 47:17, 96:23, 168:7
**accordingly** [3] - 54:22, 76:25, 219:15
**account** [9] - 34:15, 41:16, 58:1, 70:21, 76:17, 148:22, 173:6, 270:6, 273:1
**accountability** [1] - 22:13
**accountable** [2] - 167:16, 167:17
**accountant** [4] - 66:22, 67:15, 78:16, 93:3
**accountants** [1] - 93:5
**accounting** [2] - 60:18, 93:4
**accounts** [1] - 61:14
**accrue** [1] - 248:11
**accrued** [1] - 248:15
**accuracy** [1] - 134:3
**accurate** [6] - 85:15, 87:4, 94:5, 134:22, 140:18, 140:25
**accurately** [1] - 87:13
**achieve** [3] - 51:12, 51:14, 170:23
**achieved** [1] - 30:1
**achievement** [1] - 69:16
**acknowledges** [1] - 126:23
**acre** [1] - 175:9
**act** [1] - 235:2
**Act** [1] - 134:10
**acted** [1] - 158:18

**acting** [1] - 166:12
**Action** [5] - 7:13, 7:15, 7:20, 180:10, 226:18
**action** [48] - 9:17, 9:18, 11:24, 15:18, 15:22, 16:6, 16:9, 25:21, 26:1, 52:13, 53:10, 53:18, 54:1, 54:11, 69:13, 75:24, 76:10, 117:6, 119:22, 119:25, 124:12, 124:14, 126:4, 126:5, 126:23, 129:18, 130:3, 150:5, 152:22, 218:19, 220:10, 226:8, 226:10, 226:13, 235:7, 238:24, 241:4, 248:10, 248:15, 261:19, 261:21, 261:22, 262:2, 262:6, 262:8, 262:12, 263:5
**ACTION** [5] - 1:6, 1:9, 1:12, 4:7, 5:14
**actions** [15] - 9:15, 16:2, 39:19, 98:13, 98:21, 98:25, 183:23, 198:1, 219:6, 219:12, 224:14, 231:24, 261:8, 261:9, 261:10
**activity** [6] - 30:19, 82:2, 83:4, 83:11, 85:4, 106:16
**actual** [9] - 37:24, 40:23, 46:22, 46:24, 63:1, 143:4, 143:16, 192:20, 192:25
**acute** [14] - 185:11, 185:15, 185:23, 187:13, 188:4, 188:7, 188:18, 215:22, 230:10, 230:12, 256:25, 257:4, 257:16, 261:13
**acutely** [1] - 202:21
**Ad** [1] - 71:20
**Adams** [1] - 264:16
**add** [4] - 32:6, 207:22, 229:15, 261:2
**added** [4] - 49:9, 117:2, 138:10, 274:4
**adding** [1] - 48:18
**addition** [15] - 9:16, 9:21, 10:15, 10:18, 15:17, 20:16, 37:8, 38:24, 45:23, 63:25,

Case 2:19-md-02179-CJB-DPC Document 23892-8 Filed 04/02/18 Page 284 of 329
Case 2:10-md-02179-CJB-DCW Document 13892-8 Filed 11/54/11 Page 283 of 326

3

78:5, 81:1, 186:12, 187:25, 196:4

**additional** [16] - 11:8, 12:21, 13:6, 18:9, 34:18, 34:20, 41:22, 41:23, 78:7, 79:10, 134:1, 135:16, 156:23, 157:15, 187:12, 263:4

**additionally** [2] - 22:7, 27:9

**address** [23] - 31:5, 31:11, 32:21, 36:18, 44:10, 63:15, 76:21, 87:2, 96:24, 102:18, 113:23, 114:7, 120:2, 120:19, 120:23, 120:24, 138:23, 156:22, 165:22, 172:11, 173:21, 176:16, 260:22

**addressed** [6] - 93:18, 117:8, 121:8, 160:21, 175:13, 243:11

**addresses** [2] - 97:3, 174:6

**addressing** [2] - 180:16, 180:17

**adequacy** [13] - 51:17, 52:14, 133:6, 166:2, 170:23, 173:18, 194:8, 194:25, 205:6, 205:7, 208:11, 236:21, 263:3

**ADEQUACY** [1] - 5:2

**adequate** [46] - 17:15, 17:17, 17:21, 33:14, 42:15, 42:25, 43:23, 46:11, 50:18, 59:7, 60:10, 76:24, 79:19, 79:24, 108:17, 108:21, 115:20, 120:1, 128:4, 128:6, 128:8, 135:9, 137:10, 146:23, 163:11, 163:19, 163:23, 170:8, 171:6, 172:16, 172:25, 173:20, 177:11, 184:5, 185:19, 185:21, 242:3, 245:5, 245:15, 245:19, 246:18, 264:1, 264:12, 265:24, 279:14

**adequately** [9] -

15:16, 17:7, 60:23, 135:12, 136:20, 138:6, 146:5, 147:24, 241:25

**adjacent** [1] - 13:16

**adjourned** [2] - 11:14, 279:17

**adjudicated** [1] - 264:21

**adjudicating** [1] - 15:23

**adjusted** [1] - 118:25

**adjuster** [1] - 22:25

**adjusters** [1] - 22:16

**adjusters'** [1] - 21:21

**administer** [2] - 81:3, 200:25

**Administration** [1] - 71:5

**administration** [5] - 64:13, 98:13, 99:6, 212:20, 219:18

**Administrator** [3] - 80:12, 100:16, 100:19

**ADMINISTRATOR** [3] - 3:10, 4:16, 6:17

**administrator** [15] - 11:22, 22:10, 23:3, 80:25, 99:4, 154:8, 191:8, 191:13, 191:16, 209:14, 209:24, 216:18, 278:2, 278:5, 278:15

**administrators** [1] - 56:21

**admissibility** [1] - 117:11

**admissible** [1] - 102:24

**admit** [2] - 51:21, 105:25

**admitted** [1] - 100:19

**admittedly** [1] - 167:22

**adopting** [1] - 130:3

**adoption** [1] - 51:7

**Adrian** [1] - 122:23

**advance** [1] - 99:4

**advantage** [3] - 53:20, 205:25, 216:24

**advantageous** [1] - 23:1

**adversely** [3] - 119:16, 128:21, 163:6

**advertising** [1] - 176:24

**advice** [3] - 115:12, 219:1, 219:14

**advise** [1] - 113:10

**advised** [5] - 11:1, 11:10, 113:11, 263:12, 268:1

**advisement** [2] - 178:22, 266:24

**advising** [1] - 66:7

**advocacy** [1] - 133:11

**advocates** [1] - 147:1

**affect** [7] - 15:3, 36:9, 109:21, 152:17, 164:12, 165:13, 182:25

**affected** [15] - 14:14, 18:16, 35:25, 37:12, 65:10, 82:11, 119:16, 121:24, 128:21, 148:17, 163:6, 227:16, 267:12, 276:4

**affecting** [1] - 15:21

**affects** [1] - 195:21

**affidavit** [6] - 161:16, 186:23, 187:3, 210:17, 248:2

**affidavits** [4] - 12:21, 19:24, 20:5, 250:1

**affirm** [1] - 79:12

**affirmatively** [1] - 22:20

**affirmed** [3] - 198:6, 198:24, 255:5

**affirming** [1] - 200:4

**afford** [3] - 218:5, 244:20, 244:21

**afforded** [1] - 242:5

**aftermath** [2] - 134:10, 214:14

**afternoon** [11] - 133:2, 149:8, 180:12, 196:25, 197:3, 213:1, 213:5, 229:21, 229:25, 258:11, 278:4

**afterwards** [1] - 266:16

**age** [2] - 237:17, 237:22

**agencies** [1] - 272:1

**aggregate** [1] - 60:19

**aggregating** [1] - 261:22

**aggregation** [1] - 261:25

**aggressive** [2] - 28:4, 28:23

**aggrieved** [1] - 43:21

**ago** [6] - 13:6, 24:18, 29:24, 62:19, 84:15, 177:3

**agree** [20] - 40:3,

51:12, 53:22, 54:14, 60:15, 60:16, 103:14, 151:5, 158:12, 158:13, 165:9, 169:19, 170:7, 203:4, 234:24, 238:8, 246:11, 258:16, 272:7, 278:9

**agreed** [13] - 22:17, 27:17, 29:16, 41:18, 42:20, 50:2, 50:4, 64:11, 64:13, 166:24, 176:25, 218:1, 274:14

**agreeing** [2] - 151:7, 151:9

**agreement** [30] - 11:4, 11:11, 13:24, 36:25, 44:22, 52:4, 53:7, 53:8, 62:14, 62:15, 63:21, 84:3, 89:10, 89:11, 89:22, 92:5, 92:23, 102:2, 115:11, 118:5, 151:14, 158:2, 158:17, 158:20, 164:11, 181:22, 196:11, 205:6, 275:23, 276:1

**agreements** [4] - 11:8, 37:4, 50:5, 275:23

**ahead** [20] - 99:16, 99:17, 102:3, 113:19, 116:18, 116:25, 124:8, 135:6, 141:13, 145:3, 152:15, 155:20, 165:5, 189:2, 226:2, 228:14, 228:15, 232:14, 240:19, 261:4

**ailments** [1] - 199:17

**airport** [1] - 107:7

**al** [6] - 7:13, 7:14, 7:15, 7:16, 180:10, 180:11

**AL** [5] - 1:10, 1:11, 1:13, 1:14, 5:15

**AL.........** [1] - 5:15

**Alabama** [24] - 13:14, 18:19, 18:25, 30:10, 55:8, 66:24, 107:22, 107:23, 107:25, 108:7, 108:11, 113:21, 114:9, 121:15, 121:16, 122:7, 123:12, 123:14, 130:20,

131:5, 131:24, 137:25, 158:9

**Alan** [1] - 70:2

**Alaska** [3] - 60:1, 65:9, 269:20

**ALL** [1] - 5:7

**all-inclusive** [1] - 114:6

**all-service** [1] - 83:17

**allegations** [2] - 18:20, 111:8

**allege** [2] - 248:9

**alleging** [1] - 199:17

**Allison** [1] - 124:16

**allocate** [1] - 142:13

**allocated** [7] - 136:16, 145:18, 150:10, 239:16, 242:24, 244:13, 244:15

**allocations** [3] - 99:20, 134:21, 141:16

**allotted** [4] - 8:3, 60:13, 101:2, 119:9, 223:1

**allow** [9] - 13:6, 75:19, 90:8, 119:11, 156:17, 166:22, 196:19, 232:11, 272:3

**allowed** [5] - 45:22, 118:4, 118:25, 268:4, 275:25

**allowing** [4] - 51:4, 239:6, 240:10, 240:22

**allows** [1] - 205:3

**alluded** [1] - 33:2

**Allums** [1] - 222:19

**almost** [8] - 133:19, 158:20, 186:5, 192:13, 208:21, 212:2, 221:2, 265:19

**alone** [3] - 32:3, 32:7, 72:10

**ALONG** [1] - 4:22

**alter** [2] - 37:1, 226:6

**alternate** [2] - 92:20, 92:21

**alternative** [8] - 26:23, 28:25, 41:20, 45:13, 56:18, 93:10, 159:22, 213:14

**Amchem** [13] - 117:3, 167:1, 198:7, 198:8, 198:10, 198:17, 198:25, 201:16, 204:24, 205:4, 261:7, 261:18

**Amendment** [2] -

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 01/02/18 Page 285 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 284 of 328

4

32:13, 98:16
**America** [1] - 22:6
**AMERICA** [6] - 2:10,
2:11, 2:12, 2:13,
2:15, 2:16
**American** [1] - 50:10
**amicably** [2] - 21:1,
22:9
**Amoco** [1] - 56:11
**amorphous** [1] -
199:7
**amount** [19] - 18:2,
23:24, 27:7, 27:13,
58:3, 81:25, 83:9,
98:8, 124:22,
137:23, 141:20,
141:21, 150:6,
180:24, 257:20,
258:13, 270:8,
271:19, 272:2
**amounts** [3] - 10:11,
214:5, 221:7
**analogous** [1] -
198:20
**analyses** [2] - 51:25,
168:17
**analysis** [18] - 24:16,
52:12, 70:19, 77:15,
79:8, 82:18, 94:4,
94:10, 94:12, 94:25,
102:22, 140:5,
190:14, 200:6,
200:20, 264:10,
264:11, 273:14
**analyze** [1] - 273:8
**analyzed** [1] - 77:21
**AND** [10] - 4:6, 4:7,
4:21, 4:23, 5:2, 5:6,
5:24, 5:25
**ANDREW** [1] - 2:21
**anecdotally** [1] -
269:23
**angle** [1] - 242:7
**angst** [1] - 156:25
**announce** [1] - 8:6
**announced** [1] - 49:24
**announcement** [1] -
62:11
**annual** [4] - 48:7,
57:17, 138:19,
141:24
**anomalies** [1] - 167:8
**anomaly** [2] - 36:1,
42:21
**anoxic** [2] - 238:1
**answer** [12] - 31:16,
31:17, 31:21, 36:16,
46:6, 98:17, 135:3,
146:1, 224:4, 234:9,
234:18, 246:5

answering [1] -
166:13
**answers** [2] - 218:21,
246:13
**antagonism** [1] -
164:9
**ante** [1] - 150:22
**anticipate** [3] - 85:12,
85:13, 86:17
**anticipated** [6] -
25:12, 59:16, 62:17,
62:21, 86:8, 86:10
**anticipating** [1] -
20:23
**Antitrust** [1] - 129:25
**anyplace** [1] - 70:17
**anyway** [3] - 98:1,
172:12, 240:19
**apart** [2] - 53:10,
103:4
**apologize** [1] - 204:19
**Appeal** [1] - 23:19
**appeal** [3] - 21:25,
22:1, 87:22
**appealed** [1] - 211:21
**appeals** [11] - 56:13,
56:17, 57:3, 75:1,
166:14, 192:3,
192:4, 270:1, 273:24
**Appeals** [1] - 215:7
**appear** [9] - 54:7,
58:23, 80:19,
207:15, 210:2,
224:11, 225:12,
266:15, 276:17
**appearance** [1] -
224:12
**APPEARANCES** [3] -
1:19, 2:1, 3:1
**appeared** [5] - 74:7,
85:1, 223:12,
223:18, 223:19
**appellate** [2] - 223:19,
232:5
**applaud** [1] - 146:19
**apples** [2] - 140:12,
142:6
**applicable** [6] - 27:5,
27:10, 37:3, 226:7,
226:15, 226:17
**applicants** [1] - 195:5
**application** [6] - 23:1,
61:4, 156:1, 156:3,
274:20, 274:21
**applications** [1] -
156:4
**applied** [11] - 21:21,
38:4, 41:19, 42:16,
43:5, 156:10,
162:22, 177:15,

198:11, 232:12,
274:8
**applies** [2] - 42:5, 42:9
**apply** [6] - 17:11,
105:21, 127:16,
211:5, 222:5, 245:11
**applying** [2] - 132:8,
144:10
**appoint** [1] - 166:25
**APPOINTED** [1] - 3:10
**appointed** [22] -
11:21, 23:3, 24:12,
24:19, 29:7, 29:8,
29:12, 52:7, 64:24,
78:3, 80:25, 81:2,
81:5, 83:21, 113:12,
113:16, 134:20,
134:21, 157:4,
157:11, 170:25,
249:13
**appointing** [1] -
267:25
**appointment** [1] -
253:5
**appraisal** [5] - 122:13,
122:15, 159:18,
159:19
**appreciate** [11] -
75:23, 76:5, 102:16,
132:20, 174:13,
174:19, 222:13,
222:20, 241:4,
255:7, 275:4
**appreciation** [1] -
224:18
**approach** [5] - 59:6,
83:17, 168:15,
172:16, 209:7
**approached** [3] -
99:22, 125:14,
128:17
**appropriate** [5] -
47:25, 151:16,
155:1, 156:9, 167:2
**approval** [39] - 12:4,
12:8, 19:3, 19:7,
23:18, 23:25, 26:10,
30:24, 54:23, 55:1,
55:3, 55:4, 55:5,
57:3, 63:22, 64:15,
75:15, 76:25, 79:10,
80:9, 80:24, 99:5,
130:2, 178:19,
180:21, 186:3,
192:2, 210:22,
211:19, 211:21,
211:22, 212:17,
220:20, 262:7,
266:19, 272:23,
274:22

**Approval** [6] - 12:5,
12:19, 50:11, 55:13,
73:2, 73:11
**approve** [22] - 17:14,
19:11, 22:17, 115:7,
115:19, 120:13,
130:5, 149:14,
151:22, 153:4,
154:18, 154:19,
155:15, 156:6,
157:9, 191:19,
211:15, 231:18,
232:8, 263:4,
263:16, 265:10
**approved** [22] - 39:19,
50:19, 57:4, 62:5,
69:5, 74:19, 99:5,
116:1, 152:25,
154:14, 176:7,
177:3, 208:15,
217:5, 227:17,
231:7, 231:19,
231:20, 232:5,
236:13, 239:10,
273:20
**approving** [4] - 12:7,
129:18, 178:9, 279:4
**APRIL** [1] - 1:5
**April** [12] - 7:13, 9:6,
11:23, 12:2, 12:4,
23:8, 161:1, 180:21,
189:1, 276:10,
276:12
**Arabic** [1] - 214:2
**arbitrarily** [1] - 112:18
**arbitrary** [6] - 29:18,
103:2, 103:6, 105:3,
105:8, 117:23
**architects** [1] - 78:1
**area** [13] - 35:20,
52:19, 56:23, 70:14,
76:18, 92:15,
106:18, 106:19,
164:22, 164:23,
218:25, 251:1,
252:16
**areas** [12] - 70:15,
106:15, 107:15,
109:16, 135:18,
165:18, 181:15,
189:25, 190:3,
217:19, 217:21,
249:14
**areas's** [1] - 35:16
**arguably** [5] - 35:17,
40:11, 40:16, 41:13,
160:16
**argue** [4] - 26:18,
33:9, 73:5, 109:19,
111:6, 163:22,

185:21, 200:15,
242:25
**argued** [2] - 35:24,
110:25
**arguing** [9] - 39:23,
104:8, 106:6,
169:16, 170:22,
171:11, 174:15,
218:19, 218:20
**ARGUMENT** [1] - 4:11
**argument** [24] - 18:6,
41:1, 41:10, 44:10,
59:23, 106:3,
111:17, 113:25,
116:25, 128:12,
128:13, 133:5,
141:11, 164:2,
173:13, 174:24,
176:21, 180:15,
238:14, 242:2,
247:4, 251:18,
259:23
**arguments** [5] - 43:8,
147:6, 172:12,
251:13, 263:20
**arise** [3] - 9:5, 202:21,
207:5
**arisen** [1] - 243:13
**arising** [3] - 9:23,
21:3, 199:1
**arm's** [2] - 64:18,
169:12
**arounds** [2] - 169:14,
169:15
**arranging** [1] - 219:22
**arrow** [3] - 122:11,
125:4, 125:21
**art** [1] - 109:7
**arthritic** [1] - 95:10
**articulated** [3] - 84:20,
96:23, 97:12
**artificial** [1] - 125:18
**Artiz** [2] - 28:14
**ascertainable** [6] -
17:7, 17:8, 159:2,
159:10, 197:13,
202:4
**Asian** [1] - 177:2
**aside** [6] - 40:8, 126:7,
126:10, 139:25,
209:13, 221:3
**aspect** [7] - 22:6,
120:1, 181:2, 181:3,
195:1, 231:23,
231:25
**aspects** [5] - 181:18,
189:13, 195:11,
238:19, 257:22
**assembled** [1] - 77:18
**assertion** [1] - 60:2

Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 04/02/18 Page 286 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 285 of 328

5

**assertions** [2] - 214:18, 264:5
**assess** [3] - 24:12, 24:13, 77:19
**assessed** [2] - 37:24, 38:5
**assessing** [1] - 78:13
**assessment** [2] - 37:11, 61:8
**assign** [1] - 268:9
**assigned** [3] - 10:2, 64:1, 81:12
**assignment** [1] - 82:4
**assimilated** [1] - 29:14
**associate** [1] - 59:5
**associated** [2] - 81:13, 244:17
**assume** [6] - 58:7, 58:14, 58:19, 59:13, 61:25, 275:4
**assumed** [2] - 152:4, 249:12
**assuming** [6] - 21:22, 40:13, 193:16, 217:5, 245:12, 273:20
**assumption** [3] - 34:25, 58:23, 160:25
**assumptions** [2] - 173:4, 173:10
**assurances** [4] - 41:7, 134:8, 167:1, 205:7
**assure** [3] - 8:10, 20:11, 205:6
**assures** [1] - 205:24
**asthma** [6] - 237:6, 237:18, 237:22, 237:23, 257:13, 258:6
**Atlanta** [1] - 240:13
**attach** [1] - 100:16
**attack** [1] - 132:3
**attacked** [2] - 132:2, 132:15
**attempt** [3] - 17:18, 263:21, 264:2
**attempted** [2] - 72:16, 96:10
**attempting** [2] - 79:16, 203:10
**attempts** [1] - 267:5
**attending** [2] - 271:6, 271:17
**attention** [4] - 135:16, 185:25, 224:18, 241:10
**attest** [1] - 90:12
**attestation** [1] - 90:20
**attests** [2] - 39:2,

45:19
**attorney** [8] - 45:25, 46:1, 71:12, 125:15, 161:17, 224:12, 228:7, 231:11
**attorney's** [7] - 261:24, 274:12, 274:17, 274:21, 275:18, 276:1, 276:3
**attorney-client** [1] - 231:11
**attorneys** [8] - 18:22, 166:5, 166:11, 177:17, 241:5, 249:13, 249:15, 249:16
**attorneys'** [6] - 73:16, 155:23, 155:25, 156:2, 156:3, 156:7
**attract** [1] - 250:25
**attribute** [3] - 216:4, 264:6
**attributes** [1] - 264:6
**Auction** [1] - 129:25
**audience** [2] - 52:23, 87:4
**audio** [1] - 203:10
**August** [5] - 9:21, 10:3, 12:25, 46:8, 177:21
**authorities** [1] - 78:13
**authority** [5] - 40:24, 115:6, 129:17, 129:24, 227:4
**authorize** [1] - 228:1
**authorized** [5] - 23:21, 30:7, 41:2, 99:13, 228:3
**automatic** [1] - 253:15
**automatically** [5] - 73:18, 94:3, 94:22, 140:8, 252:25
**available** [10] - 10:23, 15:22, 26:2, 77:3, 77:11, 77:25, 79:15, 110:10, 157:12, 192:23, 197:11, 217:6, 218:16, 219:25, 271:21, 272:2
**AVENUE** [1] - 1:25
**average** [7] - 23:16, 57:18, 143:10, 148:16, 148:17, 148:19, 163:8
**averages** [1] - 59:22
**avoid** [1] - 21:9
**avoiding** [1] - 26:15
**award** [11] - 27:7, 87:10, 98:6, 149:19,

150:15, 150:19, 150:24, 151:2, 238:11, 274:20
**awarded** [3] - 155:23, 156:7, 274:14
**awards** [4] - 64:5, 156:11, 186:5, 186:6
**aware** [11] - 10:10, 52:23, 82:21, 82:22, 83:1, 126:17, 138:13, 211:4, 216:4, 217:20, 226:17
**awkward** [1] - 39:23
**Ayers** [2] - 120:2, 128:7

**B**

**B's** [1] - 158:22
**b)(3** [1] - 32:10
**B1** [2] - 44:13, 257:17
**back-end** [9] - 190:23, 206:8, 206:17, 216:10, 254:25, 255:2, 255:4, 255:8, 255:12
**backdrop** [1] - 183:18
**backdrops** [1] - 182:17
**background** [2] - 212:4, 278:14
**backwards** [1] - 251:9
**bad** [7] - 36:20, 68:19, 68:20, 149:14, 162:6, 224:8, 257:13
**badged** [1] - 191:11
**badly** [1] - 237:14
**Baker** [2] - 76:7, 166:18
**balance** [2] - 95:22, 202:24
**balanced** [2] - 118:6, 118:24
**balcony** [4] - 122:20, 123:7, 124:6, 127:1
**balhoff** [2] - 78:4, 134:20
**Balhoff** [8] - 59:6, 77:4, 135:4, 136:17, 137:12, 157:24, 161:22, 176:2
**Balhoff's** [2] - 161:20, 173:4
**balhoff's** [1] - 162:8
**balkanization** [2] - 170:21, 170:22
**balkanized** [1] - 170:24

**ballpoint** [1] - 95:9
**balls** [1] - 181:13
**band** [1] - 148:8
**bank** [1] - 92:20
**Bankruptcy** [2] - 71:13, 71:14
**banter** [1] - 149:12
**BAR** [2] - 240:20, 240:21
**bar** [3] - 38:14, 39:17, 39:20
**BAR-BE-YEA** [1] - 240:20
**BAR-BER** [1] - 240:21
**BARBIER** [1] - 1:17
**barred** [1] - 111:21
**base** [8] - 27:7, 49:8, 76:16, 110:18, 144:19, 147:23, 252:2, 274:5
**based** [45] - 35:15, 35:22, 37:23, 42:14, 43:17, 43:18, 54:20, 58:2, 58:22, 61:10, 70:6, 70:7, 70:18, 70:22, 71:12, 75:13, 103:1, 103:17, 103:21, 109:15, 117:3, 130:22, 138:11, 142:21, 148:16, 155:23, 164:22, 164:23, 168:17, 170:6, 172:5, 173:5, 173:9, 173:10, 184:25, 185:8, 188:1, 193:11, 201:21, 214:8, 265:8, 266:7
**bases** [2] - 264:11, 277:14
**basic** [4] - 78:22, 96:25, 208:14, 256:22
**basin** [2] - 163:5, 163:7
**basing** [1] - 144:18
**basis** [25] - 17:20, 24:6, 24:8, 26:1, 26:9, 30:2, 50:17, 63:19, 103:6, 131:14, 131:16, 148:23, 149:18, 150:10, 160:10, 160:13, 170:12, 172:22, 196:8, 221:1, 231:11, 233:19, 265:1, 265:2, 275:4
**Baton** [2] - 239:22, 239:24

**BATTERY** [1] - 2:4
**Bayou** [1] - 107:7
**bays** [2] - 70:12, 131:1
**BE** [1] - 240:20
**beach** [22] - 37:18, 70:15, 105:6, 105:12, 108:1, 109:9, 114:18, 115:2, 123:8, 123:15, 123:16, 123:19, 123:24, 127:1, 127:18, 129:11, 129:11, 154:4, 171:15, 171:18, 181:13
**beaches** [6] - 131:5, 131:6, 131:9, 168:20, 169:6, 169:11
**beachfront** [4] - 67:9, 120:24, 120:25, 124:7
**beacon** [1] - 204:25
**beautiful** [2] - 131:7, 131:9, 168:20
**became** [2] - 11:5, 241:3
**become** [2] - 226:9, 233:19
**becomes** [1] - 207:9
**beds** [1] - 133:9
**beer** [1] - 271:8
**BEFORE** [1] - 1:17
**beg** [1] - 131:24
**began** [5] - 10:3, 12:18, 50:12, 82:3, 134:13
**begin** [6] - 8:10, 9:4, 18:13, 20:21, 25:12, 74:9
**beginning** [2] - 244:10, 277:11
**begins** [1] - 135:13
**begs** [1] - 160:20
**begun** [1] - 16:3
**behalf** [16] - 74:5, 113:17, 119:9, 120:10, 121:7, 122:1, 154:10, 178:18, 197:2, 223:3, 229:22, 230:24, 239:12, 239:20, 249:17, 266:14
**BEHALF** [1] - 5:24
**behave** [1] - 277:16
**behavioral** [4] - 192:20, 218:12, 247:6, 247:7
**behind** [8] - 17:25,

21:13, 42:2, 69:16, 125:7, 125:10, 158:11, 271:13
**BEING** [1] - 4:8
**beings** [1] - 259:10
**BEL** [1] - 159:13
**BELIEVE** [1] - 6:2
**believes** [3] - 23:15, 183:24, 194:1
**bell** [1] - 215:4
**belongs** [2] - 154:22, 155:18
**below** [3] - 148:10, 148:19, 236:24
**Ben** [4] - 130:7, 240:2, 240:6, 240:7
**BEN** [3] - 240:16, 240:17, 240:18
**BEN-NOIT** [2] - 240:17, 240:18
**BEN-WA** [1] - 240:16
**bench** [2] - 186:5, 262:10
**benchmark** [3] - 45:15, 49:10, 159:17
**benchmarkable** [1] - 159:19
**benchmarks** [1] - 39:11
**beneficial** [2] - 132:19, 176:14
**beneficiaries** [1] - 196:9
**benefit** [32] - 10:19, 14:15, 14:16, 19:20, 19:23, 26:6, 26:20, 30:16, 30:17, 30:18, 40:14, 64:12, 141:20, 153:10, 153:11, 176:22, 189:7, 192:23, 196:1, 216:6, 216:9, 218:1, 218:3, 218:10, 255:25, 262:15, 262:20, 262:25, 274:1, 274:12, 274:14, 275:11
**benefits** [40] - 7:21, 19:2, 29:25, 54:8, 63:21, 65:19, 118:17, 151:3, 151:23, 152:23, 176:17, 176:19, 181:16, 189:12, 190:6, 191:2, 191:4, 196:3, 196:19, 196:21, 197:17, 205:25, 206:6, 208:12, 212:18,

215:20, 215:22, 216:21, 218:13, 221:10, 226:21, 227:8, 232:10, 252:10, 258:12, 260:17, 262:17, 266:4, 266:20
**BENEFITS** [1] - 4:8
**Benoit** [1] - 240:16
**BENOIT** [1] - 240:16
**BER** [1] - 240:21
**Bernard** [1] - 218:11
**BERNSTEIN** [1] - 2:3
**Berrigan's** [1] - 8:24
**best** [18] - 13:7, 33:5, 51:12, 104:20, 116:3, 119:4, 134:24, 150:2, 155:2, 157:11, 189:6, 197:17, 208:22, 218:16, 218:18, 250:13, 257:15, 280:8
**bet** [1] - 158:5
**Bethlehem** [1] - 62:7
**better** [15] - 21:16, 28:22, 31:12, 36:13, 36:18, 57:4, 79:14, 95:3, 104:9, 160:18, 161:11, 167:21, 167:23, 170:2, 214:4
**between** [32] - 13:25, 36:8, 46:14, 70:11, 77:10, 101:24, 104:14, 104:25, 109:23, 109:25, 118:9, 123:21, 123:23, 131:20, 139:18, 146:11, 164:3, 164:9, 185:25, 186:7, 186:10, 187:22, 206:3, 207:23, 208:2, 209:7, 211:2, 213:2, 246:24, 256:5, 257:3
**beyond** [7] - 20:10, 40:16, 68:4, 151:15, 188:25, 234:11, 269:10
**biased** [2] - 167:22
**big** [7] - 84:16, 89:11, 90:18, 91:20, 98:20, 114:12, 272:5
**bigger** [2] - 158:21, 158:22
**biggest** [1] - 92:10
**billion** [34] - 23:22, 27:16, 27:17, 27:23, 28:3, 50:20, 56:1,

57:8, 57:13, 57:17, 61:1, 63:24, 84:12, 85:1, 85:3, 135:25, 136:7, 137:15, 139:11, 139:25, 140:4, 141:15, 141:17, 142:9, 142:11, 145:19, 146:12, 146:15, 147:18, 147:19, 147:20, 191:6, 275:3
**binding** [1] - 72:17
**biologically** [5] - 233:15, 233:23, 259:4, 259:6, 259:9
**biologist** [2] - 69:20, 69:24
**bird** [1] - 265:7
**Birmingham** [1] - 43:13
**bit** [20] - 27:21, 38:11, 41:9, 43:9, 43:16, 49:4, 55:2, 72:15, 80:23, 86:22, 87:1, 89:4, 162:2, 162:3, 162:22, 175:4, 189:9, 210:23, 251:12, 277:10
**bits** [1] - 271:2
**bitter** [1] - 158:20
**black** [1] - 41:11
**blended** [1] - 144:11
**BLO** [4] - 190:23, 217:17, 255:21, 256:9
**blocks** [1] - 36:3
**bloom** [1] - 67:8
**Bloomer** [1] - 213:2
**blow** [4] - 24:7, 132:21, 227:10, 228:20
**blowing** [1] - 227:11
**blue** [18] - 47:10, 47:11, 89:12, 91:20, 92:14, 93:13, 122:9, 122:10, 125:7, 125:8, 128:18, 148:8, 148:12, 174:2, 174:6, 238:1
**board** [5] - 158:23, 163:14, 172:14, 241:16, 241:20
**Board** [1] - 71:4
**boat** [13] - 42:9, 42:23, 43:10, 43:11, 43:23, 105:10, 133:18, 162:1, 175:20, 259:24, 260:12, 260:13
**bodies** [2] - 31:25,

129:12
**body** [2] - 77:6, 158:5
**boil** [1] - 208:14
**bolder** [1] - 95:4
**BON** [2] - 1:12, 4:5
**Bon** [2] - 7:15, 7:19
**bone** [2] - 157:17, 158:4
**book** [1] - 232:21
**booklets** [1] - 83:15
**boom** [3] - 181:12, 187:9, 254:18
**bordered** [1] - 272:19
**borne** [1] - 252:20
**bottom** [9] - 74:18, 80:3, 136:11, 142:10, 144:21, 145:17, 149:2, 222:7, 260:1
**bottom's** [1] - 172:16
**bottoms** [1] - 59:6
**bottoms-up** [1] - 59:6
**bound** [3] - 16:14, 22:17, 130:8
**boundaries** [1] - 35:12
**boundary** [1] - 125:18
**bounds** [1] - 78:25
**box** [3] - 64:9, 69:6, 213:22
**BP** [112] - 1:10, 1:13, 2:10, 2:11, 2:11, 2:12, 2:13, 2:14, 2:15, 4:5, 4:7, 5:15, 7:14, 7:16, 7:19, 7:21, 13:25, 14:5, 14:7, 18:21, 19:6, 22:9, 22:16, 22:17, 25:19, 25:22, 27:11, 27:13, 27:14, 27:17, 28:24, 29:16, 31:15, 31:19, 34:22, 35:20, 36:5, 36:17, 37:5, 37:8, 40:1, 40:4, 40:10, 40:24, 41:10, 43:8, 43:11, 49:20, 49:24, 49:25, 50:2, 50:12, 51:1, 51:3, 52:6, 53:9, 54:14, 57:9, 57:12, 59:15, 60:7, 62:14, 62:18, 62:20, 64:11, 77:16, 83:24, 103:10, 112:15, 126:3, 134:1, 136:14, 145:7, 145:13, 147:10, 152:18, 153:2, 157:16, 158:11, 158:13, 158:25, 160:12, 164:19, 165:9,

166:22, 178:18, 180:11, 190:14, 190:21, 190:22, 200:14, 207:6, 207:11, 207:20, 214:15, 214:16, 217:25, 229:5, 238:8, 241:18, 242:11, 244:12, 245:5, 249:25, 250:22, 258:16, 266:14, 274:13, 275:12, 275:16
**BP's** [17] - 19:11, 24:5, 25:16, 37:1, 78:2, 106:11, 134:8, 145:5, 145:8, 153:4, 156:17, 246:7, 255:15, 255:17, 275:4, 275:5
**BP-hired** [1] - 77:16
**Bradford** [1] - 233:16
**brain** [2] - 97:25, 238:2
**breakthrough** [1] - 213:5
**breathe** [1] - 250:17
**breathed** [1] - 24:24
**brief** [15] - 8:13, 24:5, 46:14, 52:20, 52:24, 60:12, 76:2, 76:3, 137:3, 160:19, 160:21, 203:8, 224:17, 242:8, 263:10
**briefing** [1] - 77:1
**briefly** [10] - 15:5, 31:13, 32:8, 65:25, 77:9, 156:22, 160:5, 189:9, 195:13, 243:7
**briefs** [7] - 12:20, 18:20, 19:24, 20:5, 198:17, 201:23, 213:25
**bring** [7] - 41:4, 66:21, 157:8, 162:19, 184:12, 261:21, 268:13
**bringing** [1] - 277:23
**brings** [1] - 205:3
**broad** [2] - 234:15, 272:17
**broadcasting** [1] - 203:22
**broader** [2] - 52:23, 248:18
**broadly** [1] - 243:12
**BROADWAY** [1] - 2:7
**broke** [1] - 58:17
**broken** [1] - 146:24

Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 04/02/18 Page 288 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 287 of 328

7

brokered [2] - 212:24, 213:3
brought [9] - 22:21, 29:10, 112:15, 158:12, 224:18, 233:2, 246:1, 261:17, 278:19
brown [1] - 131:10
brush [1] - 272:17
brutal [1] - 50:2
bucket [3] - 136:1, 136:6, 136:7
buckets [1] - 208:14
bug [1] - 84:1
build [1] - 216:23
building [2] - 204:9, 204:16
built [3] - 25:18, 205:8, 217:1
bumping [1] - 84:23
bunch [1] - 22:15
bundles [1] - 251:11
burden [6] - 28:21, 74:15, 132:19, 189:18, 222:8, 255:22
Bureau [2] - 123:20, 128:10
bus [1] - 111:13
busboy [1] - 45:20
busboys [1] - 45:8
business [33] - 36:2, 36:3, 43:10, 43:16, 44:7, 65:12, 67:10, 68:24, 71:3, 88:3, 88:22, 91:10, 91:16, 91:20, 92:19, 93:14, 105:12, 106:2, 106:14, 107:12, 108:6, 108:16, 112:22, 116:24, 118:2, 118:4, 118:11, 122:3, 161:24, 170:15, 210:10, 277:8
BUSINESSES [1] - 4:21
businesses [29] - 13:19, 21:7, 23:7, 30:18, 35:11, 44:16, 71:11, 71:15, 76:10, 91:21, 92:1, 92:14, 92:17, 101:12, 103:3, 105:5, 106:20, 107:11, 114:15, 114:19, 114:21, 114:25, 115:2, 117:20, 118:6, 118:20, 118:24, 118:25,

176:19
bussed [2] - 241:12, 250:4
BY [10] - 1:4, 1:21, 1:24, 2:3, 2:7, 2:16, 2:20, 2:24, 3:18, 3:19
bys [2] - 67:22, 67:23
Byzantine [1] - 209:18

**C**

C's [1] - 158:22
c)(2)(B [1] - 178:2
c)(3)(B [1] - 178:2
CA [1] - 2:4
cab [1] - 109:7
cabined [2] - 199:19, 234:11
Cabraser [11] - 180:16, 195:12, 197:1, 199:8, 203:7, 204:20, 218:17, 228:10, 255:1, 261:1, 261:2
CABRASER [15] - 2:3, 2:3, 196:25, 199:14, 199:21, 204:21, 205:14, 205:17, 206:19, 207:2, 207:12, 207:18, 208:4, 261:3, 261:5
Cabraser's [1] - 180:17
CABRASER............... ......................... [2] - 5:18, 6:8
Cadiz [2] - 56:11, 65:6
Cajun [1] - 84:16
calculated [4] - 63:23, 98:8, 105:20
calculation [3] - 59:12, 159:10, 176:1
calculations [1] - 159:1
California [1] - 99:10
CALLED [2] - 7:4, 180:4
Calvin [2] - 25:14, 29:4
canal [2] - 125:10, 125:11
cancer [2] - 256:7, 256:19
cancers [1] - 233:17
candid [1] - 253:19
candidate [1] - 209:2
cannot [2] - 8:24, 22:9, 75:6, 124:15,

124:22, 149:14, 225:8, 238:13, 246:21, 246:22, 250:17
cap [11] - 27:13, 27:19, 31:21, 109:24, 110:9, 139:7, 139:12, 139:13, 206:23, 244:23, 244:24
cap/guarantee [1] - 275:9
capable [1] - 16:23
capacity [4] - 78:15, 190:2, 251:25
capped [6] - 9:12, 136:6, 147:5, 206:1, 275:8
capricious [1] - 105:3
capsizing [1] - 9:11
captain [2] - 43:10, 162:4
captain's [1] - 162:3
captain/owners [1] - 143:6
captains [2] - 133:18, 143:5
Carbide [2] - 186:4, 214:1
card [1] - 164:5
care [4] - 104:18, 133:25, 188:5, 217:23, 218:6, 231:14, 252:12, 262:1, 266:10
career [2] - 184:24, 189:6
careers [1] - 197:25
careful [2] - 170:9, 218:22
carefully [1] - 202:3
CARL [1] - 1:17
carved [2] - 158:25, 207:16
carved-in-stone [1] - 158:25
case [126] - 7:10, 10:5, 10:7, 10:10, 16:20, 17:12, 24:13, 24:14, 24:16, 24:24, 25:9, 26:9, 26:24, 26:25, 27:1, 28:21, 30:14, 35:5, 41:4, 51:3, 62:6, 62:7, 65:13, 65:15, 65:22, 65:23, 66:9, 73:13, 73:15, 76:19, 98:20, 99:9, 99:11, 99:14, 104:21, 108:25, 110:12, 111:1,

111:3, 111:21, 111:24, 117:3, 117:7, 126:15, 134:4, 166:6, 170:10, 177:2, 178:5, 178:9, 178:16, 183:7, 183:11, 185:2, 185:23, 186:4, 186:6, 186:11, 186:22, 198:7, 198:19, 198:22, 198:23, 198:25, 199:2, 199:20, 199:23, 200:21, 200:25, 201:4, 201:17, 202:9, 204:25, 205:8, 207:8, 213:13, 214:1, 214:2, 214:3, 214:8, 217:20, 220:15, 221:9, 221:10, 223:15, 223:21, 224:13, 224:19, 225:25, 226:1, 226:20, 228:10, 228:11, 228:23, 238:22, 252:20, 255:19, 258:5, 258:25, 261:9, 262:11, 262:18, 264:8, 264:16, 264:18, 265:3, 267:14, 267:24, 268:24, 269:15, 269:18, 270:3, 270:18, 271:21, 272:9, 272:10, 272:16, 273:5, 273:8, 275:19, 277:11, 277:21
Case [1] - 10:4
cases [41] - 16:18, 26:18, 26:22, 28:24, 34:4, 34:13, 39:19, 65:15, 76:10, 89:24, 99:21, 124:16, 129:25, 160:18, 166:10, 167:2, 182:4, 198:11, 198:23, 199:1, 200:1, 204:24, 205:4, 213:8, 213:9, 213:14, 213:25, 214:3, 217:24, 220:11, 223:23, 231:25, 255:19, 267:4, 268:25, 270:5, 272:7, 274:1, 276:15, 276:16

cash [1] - 135:19
casinos [1] - 14:3
Castano [1] - 198:18
casualty [4] - 9:5, 9:13, 9:24, 50:8
catastrophe [1] - 279:9
catch [7] - 43:18, 46:13, 46:15, 137:25, 161:25, 174:22
categories [10] - 13:18, 85:25, 86:4, 88:20, 88:24, 95:1, 105:3, 110:6, 146:5, 184:6
category [9] - 88:19, 88:21, 90:4, 90:5, 90:18, 91:25, 92:8, 110:2, 217:9
caters [1] - 106:17
CATHY [1] - 3:14
Cathy [2] - 280:3, 280:13
Cathy_Pepper@laed .uscourts.gov [1] - 280:15
cathy_Pepper@laed. uscourts.gov [1] - 3:17
caught [1] - 76:17
causal [1] - 215:12
causality [1] - 233:16
causation [33] - 21:18, 24:14, 44:24, 45:2, 45:3, 68:15, 68:16, 68:22, 92:1, 92:3, 92:7, 92:9, 104:17, 104:19, 159:1, 159:10, 159:14, 188:14, 202:22, 203:2, 205:3, 206:11, 207:1, 207:2, 207:3, 222:1, 237:5, 255:10, 265:1, 274:2, 274:3
caused [4] - 32:10, 35:25, 182:5, 184:2
CCR [2] - 3:14, 280:13
cede [3] - 119:12, 130:12, 239:18
cell [1] - 8:20
Center [1] - 235:2
center [2] - 82:20, 205:3
centers [1] - 78:17
central [3] - 16:25, 32:4, 134:12
certain [23] - 9:24, 13:15, 14:1, 14:5,

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 04/02/18 Page 289 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 288 of 326

8

28:2, 42:6, 64:1,
70:13, 72:6, 101:20,
101:21, 102:1,
119:20, 159:17,
217:19, 217:21,
232:8, 248:24,
249:17, 258:19,
266:9, 266:10
**certainly** [17] - 24:11,
57:5, 91:8, 146:21,
151:5, 153:24,
155:14, 155:18,
196:10, 197:11,
199:21, 216:5,
217:25, 221:9,
231:14, 246:8, 279:8
**certainty** [5] - 34:4,
74:24, 178:4, 178:5,
183:16
**certifiable** [3] -
199:10, 199:20
**CERTIFICATE** [1] -
280:1
**certification** [9] - 15:6,
54:4, 197:5, 197:9,
197:19, 200:4,
200:19, 205:5,
235:14
**CERTIFICATION** [1] -
5:20
**certified** [12] - 16:7,
16:8, 32:20, 78:16,
197:16, 198:6,
198:24, 200:17,
200:18, 201:18,
234:14, 258:25
**Certified** [3] - 280:3,
280:4, 280:13
**CERTIFIED** [1] - 3:14
**certify** [5] - 199:13,
201:20, 218:20,
261:11, 280:7
**certifying** [1] - 12:6
**challenge** [3] - 84:24,
84:25, 119:1
**challenged** [1] - 95:6
**challenges** [1] -
133:13
**challenging** [1] -
209:19
**Chalmette** [3] -
198:22, 199:25,
201:17
**chamber** [1] - 159:5
**chambers** [2] -
212:25, 270:23
**chance** [3] - 59:13,
156:5, 239:9
**chances** [1] - 22:20
**change** [2] - 46:22,

241:17
**changed** [1] - 241:19
**changes** [4] - 130:3,
130:6, 232:8, 250:14
**Chapter** [2] - 71:13,
71:14
**characterized** [1] -
18:22
**charge** [4] - 80:22,
82:3, 82:12, 84:14
**charged** [4] - 81:21,
84:19, 274:11,
275:11
**charitable** [2] -
150:22, 155:24
**charity** [1] - 226:19
**chart** [13] - 46:19,
58:2, 85:20, 86:5,
86:8, 86:19, 88:14,
95:4, 95:12, 148:4,
148:8, 174:4, 174:8
**charter** [6] - 13:21,
42:9, 42:23, 43:10,
43:23, 133:18
**chartering** [3] - 43:10,
43:11, 43:12
**charts** [3] - 173:3,
173:7, 173:8
**check** [3] - 8:20,
67:24, 262:16
**checking** [3] - 83:25,
219:16
**checks** [2] - 78:7,
191:20
**chemical** [3] - 35:24,
181:6, 184:17
**chemicals** [3] - 207:7,
236:25, 258:23
**Chenault** [1] - 40:2
**Chest** [1] - 198:22
**CHICAGO** [1] - 2:22
**chief** [1] - 240:15
**Chief** [1] - 225:24
**child** [1] - 187:15
**child's** [1] - 65:11
**choice** [4] - 10:13,
32:11, 208:2, 245:14
**choices** [2] - 205:23,
206:10
**choose** [4] - 60:13,
207:23, 246:8, 246:9
**chose** [2] - 12:14,
62:19
**Christi** [1] - 69:20
**Christmas** [1] - 109:7
**chromosome** [1] -
233:17
**chronic** [11] - 188:9,
188:24, 215:22,
230:10, 244:16,

245:3, 245:18,
253:22, 256:25,
257:4, 257:17
**Ciolino** [1] - 166:20
**circle** [2] - 94:24,
258:10
**Circuit** [28] - 17:11,
17:23, 32:2, 62:4,
62:6, 62:8, 73:15,
151:12, 198:10,
198:18, 198:21,
199:12, 199:24,
199:25, 200:2,
200:3, 200:4,
200:18, 200:24,
202:17, 204:24,
255:3, 255:4,
261:11, 262:7,
269:4, 269:18
**circuit** [1] - 170:19
**Circuit's** [2] - 199:23,
211:22
**circumstances** [6] -
181:21, 182:23,
184:17, 252:13,
258:24, 259:11
**citation** [1] - 220:1
**cite** [1] - 224:14
**cited** [5] - 120:4,
219:10, 219:12,
233:12, 264:7
**CITGO** [1] - 124:16
**Citgo** [1] - 214:2
**citizens** [3] - 50:1,
61:20, 213:16
**CITY** [1] - 2:8
**City** [3] - 63:9, 74:7,
82:21
**CIVIL** [5] - 1:6, 1:9,
1:12, 4:7, 5:14
**Civil** [8] - 7:13, 7:15,
7:20, 15:7, 120:5,
180:10, 226:6,
226:13
**Claim** [3] - 81:17,
253:14, 253:15
**claim** [69] - 16:21,
22:22, 32:5, 39:8,
41:13, 58:6, 68:18,
82:10, 83:15, 85:10,
85:17, 89:8, 89:16,
89:17, 90:16, 91:23,
92:1, 92:5, 92:17,
96:17, 126:7,
126:10, 126:11,
126:12, 127:6,
127:10, 138:25,
150:23, 159:5,
159:25, 160:9,
160:10, 160:16,

161:2, 171:14,
171:19, 171:22,
171:24, 174:19,
195:4, 195:9,
205:24, 206:20,
217:13, 219:20,
221:6, 221:20,
223:5, 227:3,
230:11, 236:12,
243:4, 245:22,
246:9, 246:10,
248:19, 248:23,
253:20, 253:23,
255:8, 258:3, 273:9,
276:14, 276:19,
276:25, 277:2, 277:6
**claimant** [14] - 22:15,
22:18, 22:24, 56:14,
66:16, 89:7, 122:1,
232:21, 238:11,
254:4, 254:8,
255:25, 277:9
**claimant-friendly** [1] -
22:15
**claimants** [35] - 22:21,
32:14, 50:24, 53:17,
55:7, 55:18, 56:3,
56:8, 56:12, 61:2,
64:8, 66:24, 66:25,
67:3, 72:21, 72:23,
87:11, 88:21, 96:7,
96:14, 150:11,
153:8, 159:3,
164:15, 183:13,
206:3, 206:4,
230:15, 233:3,
235:21, 241:1,
269:24, 274:3, 276:8
**claimants'** [1] - 60:18
**claimed** [4] - 56:18,
58:21, 59:8, 160:20
**claiming** [2] - 61:17,
89:19
**claims** [184] - 9:15,
9:23, 9:25, 10:20,
11:22, 13:17, 13:21,
13:23, 14:5, 15:12,
15:13, 16:5, 16:11,
17:1, 21:3, 21:6,
21:22, 23:7, 23:15,
26:14, 32:14, 32:17,
38:14, 38:19, 39:3,
39:17, 39:20, 40:6,
41:17, 44:14, 44:17,
44:20, 50:6, 50:13,
50:20, 51:5, 51:9,
55:6, 55:7, 55:21,
56:20, 56:24, 62:1,
62:2, 63:21, 64:1,
64:9, 64:10, 66:23,

67:7, 74:21, 80:7,
81:22, 82:9, 82:11,
83:8, 83:18, 85:7,
85:18, 85:21, 85:23,
86:25, 88:3, 88:9,
88:11, 88:14, 88:16,
88:18, 89:3, 91:10,
91:11, 91:16, 91:20,
93:14, 94:25, 95:17,
95:19, 96:2, 96:7,
96:11, 98:4, 98:13,
99:4, 99:6, 99:7,
99:13, 100:3,
111:21, 112:17,
112:18, 124:11,
125:12, 127:4,
127:5, 127:9,
127:10, 127:22,
133:7, 136:1, 136:2,
150:6, 153:3,
153:19, 153:20,
153:22, 153:25,
154:2, 154:7, 154:9,
154:10, 157:6,
159:24, 160:22,
161:10, 166:13,
168:9, 174:22,
176:7, 178:12,
182:21, 183:1,
183:13, 183:17,
184:10, 184:12,
186:13, 191:8,
191:13, 191:15,
191:16, 191:17,
195:7, 202:14,
202:15, 202:16,
206:10, 207:18,
207:19, 207:24,
208:1, 210:25,
212:19, 213:17,
214:15, 214:18,
216:18, 216:20,
219:18, 221:18,
222:4, 222:5,
224:21, 227:5,
227:8, 230:24,
231:1, 231:3, 231:8,
231:20, 235:23,
236:6, 236:11,
242:15, 243:2,
245:2, 247:16,
247:17, 261:14,
261:23, 261:25,
263:13, 276:9,
276:12, 278:2,
278:4, 278:15,
278:23
**CLAIMS** [3] - 3:10,
4:16, 6:17
**Claims** [11] - 10:21,
57:10, 57:23, 77:11,

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 04/02/18 Page 290 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 289 of 328

9

79:15, 79:17, 80:12,
94:19, 100:16,
100:19, 182:18
**clarify** [2] - 19:10,
182:24
**class** [347] - 7:18,
7:21, 7:25, 9:15,
11:24, 12:12, 13:11,
15:6, 15:8, 15:11,
15:14, 15:16, 15:18,
15:20, 15:21, 15:25,
16:3, 16:6, 16:7,
16:9, 16:11, 16:13,
16:14, 16:15, 16:17,
16:23, 17:2, 17:6,
17:7, 17:14, 17:22,
18:4, 18:5, 18:13,
19:15, 20:22, 21:12,
22:9, 23:14, 25:20,
25:25, 26:13, 27:23,
28:1, 29:15, 30:1,
31:4, 31:12, 31:16,
31:18, 31:23, 32:5,
32:9, 32:20, 33:4,
33:21, 39:19, 41:21,
44:25, 52:13, 53:10,
53:18, 54:1, 54:3,
54:10, 56:6, 57:2,
59:24, 60:4, 61:19,
61:20, 61:21, 62:5,
63:16, 64:11, 68:14,
68:23, 69:1, 69:5,
69:13, 69:17, 72:19,
73:4, 74:20, 76:11,
76:23, 76:24, 79:1,
86:1, 88:18, 94:7,
97:4, 97:7, 98:13,
98:21, 98:25,
104:13, 104:15,
104:16, 104:23,
109:18, 110:1,
110:5, 111:17,
112:11, 117:1,
117:6, 119:20,
119:22, 119:23,
119:25, 120:3,
120:7, 121:12,
121:14, 121:20,
121:22, 122:4,
124:12, 124:13,
124:14, 126:4,
126:5, 126:23,
129:18, 130:2,
132:12, 147:14,
148:23, 150:5,
151:4, 151:23,
152:10, 152:22,
153:6, 153:8,
153:11, 153:18,
154:6, 154:22,
154:25, 155:15,

155:18, 156:17,
157:10, 157:16,
160:5, 162:18,
164:14, 166:4,
166:11, 167:5,
167:17, 167:19,
169:24, 170:7,
170:20, 170:24,
171:11, 171:23,
176:14, 176:18,
176:22, 177:11,
177:17, 177:24,
177:25, 178:9,
178:13, 180:11,
180:14, 180:18,
182:11, 182:19,
182:20, 182:22,
182:24, 182:25,
183:4, 183:6,
183:23, 184:5,
184:12, 188:15,
189:3, 189:7,
189:21, 190:5,
190:22, 191:2,
191:3, 193:8, 193:9,
193:12, 193:13,
194:2, 194:10,
194:21, 195:21,
196:1, 196:19,
197:1, 197:2, 197:4,
197:5, 197:7, 197:9,
197:13, 197:15,
197:18, 197:19,
197:20, 198:1,
198:5, 198:14,
199:7, 199:9,
199:11, 199:19,
199:20, 200:4,
200:11, 200:12,
200:17, 201:18,
201:21, 202:1,
202:3, 202:4, 202:5,
202:12, 202:13,
202:16, 202:25,
205:1, 205:5, 205:9,
205:16, 205:22,
206:2, 206:13,
207:25, 208:8,
208:15, 208:17,
210:13, 211:17,
214:10, 214:11,
214:12, 216:9,
216:19, 216:20,
216:23, 217:7,
217:9, 217:10,
218:1, 218:4, 218:9,
218:19, 219:6,
219:12, 220:10,
221:6, 221:8,
221:11, 221:12,
221:23, 223:10,

224:14, 226:8,
226:10, 226:13,
226:24, 227:2,
227:5, 227:8,
228:17, 230:2,
230:12, 230:14,
230:20, 231:24,
233:8, 234:14,
234:15, 234:25,
235:7, 235:13,
235:14, 238:24,
241:4, 243:12,
243:19, 246:1,
251:5, 252:5,
252:24, 253:2,
253:15, 261:8,
261:9, 261:10,
261:19, 261:22,
262:2, 262:5, 262:6,
262:8, 262:12,
262:20, 262:23,
263:1, 263:4, 264:1,
265:13, 265:14,
265:15, 266:5,
266:7, 266:20,
267:8, 267:10,
267:18, 272:12,
272:13, 273:11,
274:15, 276:11,
278:6, 279:14
**Class** [1] - 226:18
**CLASS** [2] - 4:8, 5:19
**class's** [1] - 214:11
**class-wide** [1] - 16:23
**CLASS.................** [1]
- 5:20
**classes** [21] - 12:6,
23:17, 26:7, 32:10,
109:23, 109:25,
110:6, 113:7,
135:14, 198:3,
198:9, 198:24,
207:23, 207:24,
207:25, 208:2,
209:16, 218:20,
219:9
**classic** [1] - 67:15
**classification** [9] -
88:22, 107:21,
107:24, 108:1,
109:5, 109:6,
114:17, 118:12,
244:22
**classified** [1] - 118:12
**classifying** [1] -
109:12
**classmembers** [3] -
183:14, 193:14,
262:15
**clause** [1] - 32:13

**clean** [3] - 37:7,
241:14, 241:22
**cleanup** [28] - 27:11,
37:1, 37:9, 181:11,
182:12, 187:6,
187:7, 187:11,
191:11, 193:24,
193:25, 194:21,
202:11, 230:7,
238:11, 242:10,
242:23, 252:3,
253:14, 254:10,
254:11, 254:15,
254:17, 257:19,
260:1, 260:2, 260:5,
260:7
**CLEANUP** [1] - 6:6
**clear** [14] - 18:18,
22:12, 36:25, 49:3,
51:3, 70:8, 77:3,
98:4, 134:14, 185:9,
186:14, 214:12,
229:10, 230:9
**cleared** [1] - 38:12
**clearly** [13] - 17:7,
17:8, 19:5, 21:3,
89:21, 91:13, 93:25,
110:5, 131:20,
132:20, 237:1,
241:5, 272:10
**CLERK** [8] - 7:7, 7:11,
100:23, 100:25,
179:1, 180:7, 240:3,
279:18
**client** [17] - 73:13,
76:16, 108:10,
110:18, 121:6,
141:1, 145:2, 227:2,
231:11, 235:25,
252:2, 258:6,
259:14, 266:14,
273:8, 273:9, 273:14
**client's** [3] - 122:23,
258:9, 273:8
**clientele** [1] - 170:17
**clients** [69] - 40:15,
40:16, 55:20, 72:16,
74:5, 74:11, 74:14,
76:12, 76:16, 80:4,
80:5, 101:10,
101:11, 101:25,
102:3, 108:15,
112:8, 113:11,
116:2, 129:19,
137:9, 138:5,
138:12, 139:3,
140:11, 140:13,
142:8, 145:18,
152:7, 153:6,
153:14, 154:11,

157:6, 168:7, 168:8,
168:9, 168:12,
168:13, 173:25,
176:6, 227:4,
227:24, 227:25,
228:3, 229:23,
230:1, 230:25,
231:8, 231:19,
234:19, 235:21,
236:15, 242:9,
244:15, 245:22,
246:21, 247:11,
248:23, 249:17,
249:18, 249:20,
250:18, 251:21,
251:24, 263:12,
263:15, 273:3,
273:4, 273:13
**clients'** [3] - 116:3,
153:24, 155:17
**climb** [3] - 85:9, 85:14,
85:18
**climbing** [1] - 85:10
**clock** [1] - 50:3
**clogged** [1] - 213:17
**close** [10] - 11:4,
23:11, 75:7, 85:2,
125:12, 195:12,
204:22, 222:8,
235:8, 237:25
**closed** [2] - 43:19,
81:23
**closest** [1] - 253:3
**closing** [1] - 196:18
**closure** [3] - 29:1,
211:11, 211:12
**Club** [1] - 107:8
**co** [4] - 19:15, 154:9,
171:1, 228:10
**co-counsel** [3] -
154:9, 171:1, 228:10
**co-lead** [1] - 19:15
**coalesced** [1] - 133:15
**Coast** [26] - 10:21,
30:16, 30:17, 30:18,
50:1, 50:25, 53:16,
54:3, 57:10, 57:23,
64:3, 76:18, 77:11,
77:23, 78:17, 78:21,
79:15, 79:17, 81:17,
94:19, 99:10,
106:16, 182:18,
185:1, 211:20,
218:13
**coast** [17] - 9:8, 30:9,
33:23, 35:12, 92:2,
101:13, 103:17,
103:22, 103:25,
104:3, 106:13,
109:8, 109:15,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 291 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/11 Page 230 of 328

10

114:2, 116:22, 181:14

**COAST**...................... ....... [1] - 4:22

**coastal** [24] - 13:15, 13:19, 34:15, 36:15, 36:21, 37:13, 70:14, 70:17, 102:8, 119:17, 120:8, 120:11, 120:18, 121:5, 121:16, 121:17, 122:2, 122:5, 124:23, 128:19, 128:23, 131:25, 225:22

**COASTAL** [1] - 4:23

**Coastal** [2] - 119:10, 119:13

**Coffee** [16] - 31:10, 52:9, 52:17, 53:2, 53:12, 53:23, 54:15, 166:20, 178:14, 183:19, 183:24, 197:22, 214:3, 219:6, 219:8, 219:11

**coincidentally** [2] - 201:6

**colleagues** [1] - 41:18

**collect** [1] - 28:3

**collected** [2] - 10:20, 25:5

**collecting** [1] - 269:24

**collection** [1] - 82:12

**collectively** [1] - 133:20

**collusion** [7] - 17:25, 65:1, 111:1, 111:6, 212:22, 269:1, 275:16

**colors** [2] - 95:3, 95:4

**Columbia** [1] - 52:17

**combination** [2] - 143:6, 193:21

**combine** [3] - 57:12, 57:22, 215:25

**combined** [2] - 174:11, 174:12

**Combustion** [1] - 98:19

**comfortable** [1] - 157:11

**coming** [8] - 138:15, 138:18, 146:20, 146:21, 148:18, 160:1, 164:11, 165:15

**commence** [1] - 81:9

**commenced** [1] - 12:16

**commencement** [1] -

10:24

**commend** [1] - 277:20

**commendable** [1] - 152:21

**commensurate** [1] - 83:3

**comment** [10] - 18:10, 19:3, 42:6, 62:25, 64:4, 65:25, 97:11, 111:11, 164:2, 210:22

**commented** [5] - 51:10, 71:19, 172:3, 213:11

**comments** [4] - 9:4, 66:1, 156:22, 267:4

**COMMENTS**.............. ................... [1] - 4:9

**commercial** [29] - 38:22, 43:15, 44:14, 44:15, 44:19, 60:23, 76:9, 77:19, 77:20, 78:17, 79:14, 79:18, 79:23, 80:1, 127:4, 133:15, 133:18, 134:6, 134:7, 134:24, 135:7, 136:1, 138:20, 141:22, 142:1, 142:18, 147:21, 162:4, 162:12

**commitment** [2] - 49:25, 83:2

**commitments** [1] - 41:2

**committed** [2] - 51:1, 82:3

**Committee** [16] - 13:25, 24:22, 198:23, 199:12, 199:23, 200:2, 200:7, 200:8, 200:10, 200:19, 200:24, 201:12, 202:2, 202:13, 202:17, 202:23

**Committee's** [1] - 180:14

**common** [37] - 15:11, 15:20, 16:17, 16:22, 26:6, 31:24, 31:25, 32:6, 32:7, 64:11, 103:11, 103:13, 150:4, 169:9, 197:10, 199:1, 200:21, 201:13, 201:14, 201:21, 201:24, 202:19, 202:22, 203:1, 203:2, 203:6, 205:3,

220:11, 226:9, 226:16, 248:18, 259:9, 274:12, 274:14, 275:11

**commonality** [3] - 16:21, 31:15, 32:1

**communicated** [1] - 162:9

**communities** [7] - 50:1, 50:24, 54:9, 54:17, 61:20, 67:9, 133:20

**community** [2] - 218:13, 247:5

**Comp** [4] - 245:11, 245:16, 245:22, 246:2

**companies** [5] - 105:10, 107:13, 107:14, 170:16

**COMPANY** [2] - 2:11

**company** [8] - 33:24, 107:16, 108:2, 108:3, 108:4, 109:9, 109:10, 170:15

**comparable** [2] - 23:15, 142:8

**comparative** [3] - 32:11, 54:5, 177:10

**compare** [5] - 46:22, 57:14, 99:24, 144:14, 235:6

**compared** [5] - 21:20, 46:23, 57:2, 174:17, 210:20

**comparing** [4] - 47:19, 140:12, 142:6, 174:16

**comparison** [1] - 118:7

**compel** [1] - 177:25

**compelling** [1] - 27:11

**compensate** [11] - 37:14, 37:21, 38:7, 50:6, 60:23, 133:8, 136:21, 147:23, 171:16, 175:15, 197:12

**compensated** [18] - 27:5, 34:17, 41:12, 47:13, 47:20, 54:21, 70:21, 74:23, 122:5, 176:1, 183:13, 196:20, 196:21, 227:3, 243:14, 257:15, 257:16

**compensates** [2] - 23:12, 205:2

**compensating** [2] - 65:17, 177:24

**COMPENSATION** [1] - 5:2

**compensation** [50] - 21:19, 38:10, 41:23, 41:24, 53:6, 53:13, 57:16, 58:4, 61:1, 77:7, 79:1, 79:6, 79:14, 79:18, 79:23, 80:1, 130:19, 135:9, 139:17, 159:1, 159:9, 159:14, 159:15, 172:21, 174:9, 175:14, 183:16, 186:11, 188:1, 188:2, 188:6, 188:11, 191:1, 192:24, 192:25, 206:5, 214:5, 215:21, 217:8, 221:7, 229:20, 232:12, 233:24, 237:8, 242:24, 243:19, 256:20, 260:15, 266:4, 274:5

**Compensation** [22] - 13:22, 42:13, 43:24, 44:2, 47:2, 48:1, 76:3, 76:21, 77:5, 77:13, 79:2, 133:7, 134:12, 135:15, 146:3, 148:22, 161:15, 185:18, 195:22, 206:20, 245:7, 245:13

**COMPENSATION**...... ...................... [1] - 6:3

**compensations** [1] - 124:14

**compensatory** [4] - 63:22, 63:23, 206:22, 226:6

**Compers** [1] - 264:18

**compete** [1] - 105:6

**competency** [1] - 233:13

**competent** [1] - 81:13

**competing** [2] - 205:9, 206:2

**competition** [2] - 136:6, 139:14

**competitors** [2] - 105:12

**complain** [6] - 221:1, 221:17, 222:3, 242:18, 249:25, 250:10

**complained** [1] - 277:1

**complaining** [4] -

33:16, 121:10, 151:25, 249:18

**complaint** [4] - 108:22, 145:18, 189:1, 278:22

**complaints** [10] - 11:24, 33:19, 96:13, 167:7, 242:18, 244:11, 266:8, 266:11, 276:13, 278:21

**complete** [6] - 8:15, 79:10, 81:20, 82:24, 89:5, 93:15

**completed** [4] - 18:2, 84:4, 84:17, 270:9

**completely** [1] - 223:23

**completing** [1] - 81:21

**complex** [7] - 25:21, 30:23, 65:4, 98:21, 99:1, 209:19, 256:14

**Complex** [3] - 113:4, 116:7, 129:23

**complexity** [4] - 17:25, 213:7, 269:5, 269:9

**complicated** [2] - 49:4, 220:7

**complied** [1] - 63:4

**complimenting** [1] - 137:22

**comply** [4] - 73:2, 74:4, 94:1, 212:11

**component** [2] - 149:16, 225:21

**components** [4] - 60:5, 146:24, 147:1, 215:15

**comprehend** [1] - 254:1

**comprehensive** [5] - 30:24, 31:9, 50:5, 52:3, 82:4

**comprised** [1] - 133:12

**compromise** [1] - 215:13

**computer** [2] - 83:4, 83:12

**COMPUTER** [1] - 3:19

**CON** [1] - 240:7

**conceded** [1] - 31:21

**conceivable** [1] - 243:13

**concentrating** [1] - 16:4

**concentrations** [1] - 215:15

**concept** [3] - 83:6,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 292 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 11/05/11 Page 292 of 328

11

83:10, 170:21
**concern** [4] - 41:3, 157:20, 207:14, 243:2
**concerned** [4] - 41:8, 176:17, 247:15, 273:2
**concerning** [2] - 16:2, 133:6
**concerns** [1] - 215:16
**conclude** [1] - 177:6
**concluded** [2] - 53:25, 279:20
**conclusion** [2] - 78:23, 176:3
**conclusions** [1] - 77:24
**condition** [34] - 182:8, 187:13, 187:19, 188:4, 188:7, 188:8, 188:9, 188:13, 188:25, 190:25, 207:4, 216:3, 217:16, 243:17, 243:21, 247:25, 248:13, 252:10, 253:21, 253:22, 255:20, 256:2, 256:8, 256:25, 257:1, 257:4, 257:8, 257:11, 257:15, 257:17, 257:19, 258:9
**Condition** [3] - 185:17, 195:23, 257:22
**conditionally** [1] - 120:13
**conditioned** [2] - 130:2
**Conditions** [2] - 229:19, 248:25
**conditions** [32] - 129:18, 129:22, 181:20, 181:25, 182:9, 182:14, 184:14, 184:15, 184:21, 185:10, 185:11, 185:15, 185:23, 186:9, 202:20, 215:22, 234:13, 237:20, 238:1, 248:24, 249:18, 249:21, 250:5, 250:9, 254:3, 256:10, 256:11, 256:14, 256:17, 256:22, 257:6
**CONDITIONS** [1] - 6:2
**condo** [3] - 37:18,

108:2, 109:9
**condominiums** [1] - 105:11
**conduct** [5] - 17:3, 224:8, 269:1, 273:2, 277:16
**conducted** [4] - 10:14, 12:3, 77:21, 277:24
**confess** [2] - 168:19, 220:14
**confidence** [1] - 201:11
**confirm** [3] - 63:20, 77:13, 160:11
**confirmation** [1] - 197:4
**CONFIRMATION** [1] - 5:19
**conflating** [1] - 257:21
**conflict** [25] - 53:20, 101:23, 104:14, 104:25, 109:17, 109:18, 109:23, 109:25, 110:2, 111:17, 111:18, 111:19, 147:13, 164:3, 164:7, 164:8, 164:13, 165:12, 165:14, 165:15, 168:11, 227:22, 231:13, 231:17
**conflicting** [1] - 263:19
**conflicts** [4] - 36:8, 110:12, 110:14, 170:24
**conform** [1] - 184:22
**confounding** [2] - 237:5, 239:2
**confused** [1] - 239:17
**confusing** [2] - 253:24, 256:25
**confusingly** [1] - 253:23
**confusion** [1] - 38:12
**congestion** [2] - 181:22, 256:13
**congratulate** [1] - 265:20
**Congress** [4] - 51:13, 226:15, 235:7, 235:8
**Congressional** [3] - 51:7, 271:25, 272:1
**connection** [1] - 20:6
**ConocoPhillips** [1] - 264:9
**consequence** [1] - 17:4
**consequences** [3] - 9:13, 133:24, 134:7

**consider** [17] - 7:18, 13:7, 15:6, 20:4, 20:14, 20:17, 55:22, 94:6, 94:7, 132:8, 133:23, 173:12, 217:16, 238:17, 239:6, 273:19, 279:3
**considerably** [2] - 21:2, 158:6
**consideration** [7] - 34:10, 59:10, 104:9, 113:6, 238:18, 272:12, 273:1
**considered** [8] - 20:1, 20:2, 29:19, 52:18, 122:16, 176:3, 223:25, 249:14
**considering** [2] - 52:15, 111:2
**consistent** [9] - 51:6, 53:14, 77:14, 79:5, 79:7, 85:9, 176:8, 218:15, 244:11
**consistently** [1] - 246:11
**consists** [1] - 106:15
**constitute** [1] - 78:25
**constitutional** [1] - 226:5
**constrained** [1] - 202:13
**constructed** [1] - 33:13
**construction** [1] - 33:24
**consult** [1] - 185:5
**consultant** [1] - 184:19
**Consultation** [12] - 189:4, 189:11, 189:14, 190:20, 215:23, 216:1, 217:13, 218:3, 220:22, 252:7, 252:11, 260:16
**consultation** [8] - 26:3, 189:16, 211:15, 211:17, 216:25, 219:22, 253:5, 253:17
**consulted** [4] - 25:19, 166:17, 166:19, 185:1
**contact** [1] - 253:1
**contacted** [1] - 129:6
**contains** [1] - 17:5
**contemporaneously** [1] - 82:2
**contend** [1] - 207:8
**contended** [1] - 40:10

**content** [2] - 208:19, 220:19
**contention** [3] - 16:22, 140:22
**contentious** [2] - 267:21, 277:13
**contest** [2] - 14:20, 172:23
**contested** [2] - 158:19, 276:20
**context** [10] - 17:2, 134:5, 181:7, 182:1, 197:9, 198:15, 220:10, 254:11, 262:2, 279:9
**contexts** [1] - 276:17
**continent** [1] - 25:15
**continue** [7] - 47:1, 47:17, 56:9, 75:16, 138:16, 229:5, 278:25
**continued** [4] - 11:7, 85:13, 86:17, 159:23
**CONTINUED** [2] - 2:1, 3:1
**continues** [1] - 188:8
**continuing** [2] - 81:3, 86:17
**continuous** [2] - 90:7, 90:10
**contract** [3] - 40:10, 40:12, 40:13
**contracting** [1] - 219:21
**contractors** [2] - 41:1, 250:4
**contradictory** [1] - 221:1
**contradicts** [1] - 185:14
**contrary** [3] - 27:12, 141:22, 178:3
**contrast** [5] - 35:16, 39:10, 53:17, 80:5, 201:23
**contrasted** [1] - 46:23
**controlled** [1] - 237:19
**controlling** [1] - 16:1
**controversy** [2] - 15:23, 16:3
**convened** [1] - 24:19
**convenience** [1] - 9:18
**convention** [1] - 175:4
**converged** [1] - 203:4
**conversation** [2] - 40:1, 203:8
**convinced** [1] - 271:16
**Coon** [8] - 72:10,

72:15, 72:23, 73:9, 73:24, 74:8, 94:14, 95:20
**Coon's** [2] - 73:9, 95:16
**Cooper** [1] - 264:16
**copy** [1] - 266:18
**core** [2] - 30:23, 261:18
**COREXIT** [1] - 243:9
**corky** [1] - 78:19
**corporate** [1] - 226:12
**CORPORATION** [1] - 2:12
**Corpus** [1] - 69:20
**corpus** [1] - 64:12
**correct** [35] - 48:19, 48:23, 58:13, 76:1, 89:20, 90:23, 96:9, 97:24, 106:11, 112:8, 116:9, 134:16, 141:17, 147:18, 149:24, 150:3, 151:17, 160:6, 175:17, 183:2, 183:3, 186:22, 186:25, 192:5, 192:12, 199:10, 205:14, 205:17, 210:6, 229:20, 229:21, 258:1, 264:23, 280:7
**corrected** [3] - 36:21, 148:23, 240:6
**corrective** [1] - 216:14
**correctly** [1] - 252:2
**correspondence** [2] - 43:20, 73:23
**corroborating** [1] - 187:18, 254:14
**corroboration** [2] - 187:14, 260:6
**cost** [6] - 26:15, 75:8, 150:12, 213:15, 262:19, 275:6
**costs** [4] - 37:9, 37:10, 144:5
**cough** [1] - 271:14
**Counsel** [2] - 71:20, 266:23
**COUNSEL** [2] - 1:21, 3:4
**counsel** [56] - 18:5, 18:7, 18:9, 19:15, 20:22, 22:9, 23:15, 25:16, 29:15, 54:14, 55:24, 64:11, 64:12, 69:1, 74:22, 102:16, 110:5, 112:15, 115:12, 154:9,

Case 2:19-md-02879-CJB-DPC Document 23892-8 Filed 04/02/18 Page 293 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 292 of 328

12

156:17, 156:18,
157:10, 157:16,
164:15, 165:16,
166:4, 167:6, 170:8,
171:1, 176:9,
177:17, 180:11,
180:14, 197:1,
214:10, 214:12,
221:8, 222:12,
228:10, 244:5,
246:7, 251:5,
263:18, 264:3,
265:15, 265:19,
267:24, 268:2,
272:12, 273:3,
276:5, 277:16,
277:20, 278:8
**COUNSEL**................
.............. [1] - 4:11
**count** [3] - 73:16,
73:18, 73:21
**counties** [2] - 13:15,
13:16
**counting** [1] - 210:16
**country** [3] - 31:10,
56:23, 218:7
**county** [2] - 37:22,
103:5
**couple** [12] - 61:22,
79:3, 169:16, 192:6,
193:4, 195:15,
211:4, 213:9,
228:14, 254:25,
267:9, 268:17
**course** [29] - 9:4,
10:22, 12:16, 14:7,
16:17, 20:2, 20:16,
41:20, 49:23, 66:7,
66:16, 72:12, 78:8,
107:9, 166:20,
173:7, 184:19,
190:15, 190:17,
196:15, 197:24,
208:25, 256:16,
266:25, 269:3,
269:25, 272:14,
277:22, 278:13
**courses** [1] - 107:8
**Court** [186] - 9:18,
9:20, 10:3, 10:8,
10:12, 10:23, 11:1,
11:10, 11:18, 12:1,
12:3, 12:5, 14:7,
14:22, 15:19, 16:8,
16:9, 16:19, 17:11,
17:13, 17:21, 19:23,
20:1, 20:2, 20:3,
20:8, 20:13, 20:15,
20:16, 20:24, 22:10,
22:11, 23:19, 23:23,

29:8, 30:6, 30:14,
46:6, 47:23, 50:16,
51:13, 51:15, 52:3,
52:11, 52:22, 54:7,
54:23, 55:11, 55:22,
56:19, 61:10, 62:13,
63:1, 63:5, 69:3,
69:7, 71:21, 72:17,
74:3, 74:13, 75:14,
76:11, 77:2, 78:10,
80:21, 80:24, 81:2,
86:10, 86:21, 94:1,
94:17, 100:13,
100:24, 102:11,
102:16, 103:16,
103:17, 103:23,
110:3, 116:5, 116:8,
120:1, 120:4,
120:13, 130:4,
130:15, 130:18,
133:5, 133:22,
136:14, 138:4,
138:19, 144:12,
146:19, 147:10,
150:9, 151:6,
151:22, 152:23,
155:15, 156:1,
156:5, 156:6, 157:2,
158:12, 161:21,
163:25, 166:25,
167:1, 170:19,
172:8, 176:10,
177:12, 177:13,
177:14, 177:16,
177:23, 178:1,
178:8, 178:19,
179:2, 181:1, 184:6,
186:5, 186:8, 186:9,
197:4, 199:6, 200:7,
200:8, 201:7,
201:12, 201:13,
201:20, 201:22,
203:19, 208:7,
208:9, 208:13,
211:4, 211:14,
212:12, 212:14,
214:21, 215:6,
215:7, 223:13,
225:6, 225:7, 232:7,
232:11, 235:18,
236:20, 238:17,
239:5, 239:6,
239:13, 250:14,
257:23, 261:11,
263:14, 264:10,
265:11, 265:12,
266:2, 266:4, 266:6,
266:15, 266:18,
266:19, 269:16,
270:9, 271:24,
272:11, 274:19,

275:22, 277:24,
279:12, 280:4,
280:5, 280:6,
280:14, 280:15
**COURT** [318] - 1:1,
3:10, 3:14, 7:4, 7:8,
7:17, 19:14, 19:17,
31:1, 42:3, 42:9,
48:2, 48:12, 48:14,
48:17, 48:21, 48:24,
49:2, 49:6, 49:13,
49:15, 49:17, 58:9,
58:12, 62:10, 65:25,
75:18, 75:23, 76:2,
80:10, 80:18, 87:7,
87:18, 87:23, 88:4,
88:7, 89:16, 89:23,
90:23, 92:11, 93:9,
93:16, 95:3, 95:8,
96:3, 96:10, 96:13,
96:16, 96:20, 97:1,
97:9, 97:21, 97:25,
98:10, 98:22, 98:25,
99:3, 99:24, 100:10,
100:16, 100:20,
101:1, 101:9,
101:15, 101:19,
102:3, 103:7,
103:11, 103:19,
104:2, 104:6, 104:8,
105:24, 106:5,
108:6, 108:9,
108:12, 108:15,
109:17, 110:5,
110:20, 110:24,
111:10, 111:16,
111:24, 112:3,
112:6, 112:10,
112:24, 113:1,
113:10, 113:13,
113:19, 115:3,
115:5, 115:10,
115:25, 116:11,
116:15, 116:18,
116:25, 117:5,
117:12, 117:17,
119:7, 119:9,
120:15, 121:3,
121:9, 121:19,
121:22, 122:22,
122:25, 123:3,
123:11, 123:14,
123:24, 124:2,
124:5, 124:8, 126:6,
126:10, 126:15,
127:3, 127:15,
128:12, 129:3,
130:11, 130:22,
131:3, 132:25,
134:15, 134:18,
135:3, 135:6,

136:10, 137:3,
137:5, 137:8,
138:21, 139:2,
139:8, 139:10,
139:19, 139:23,
140:21, 140:25,
141:5, 141:9,
141:13, 142:2,
143:18, 143:21,
144:7, 144:12,
144:23, 145:7,
145:12, 145:21,
145:24, 146:7,
148:1, 149:3, 149:7,
149:18, 149:21,
150:1, 150:4,
150:24, 151:2,
151:11, 151:18,
151:20, 151:24,
152:3, 152:10,
152:12, 152:15,
152:17, 153:14,
153:16, 153:18,
153:22, 154:1,
154:7, 154:10,
154:13, 154:16,
154:18, 155:3,
155:12, 155:17,
155:20, 155:25,
156:12, 156:15,
160:4, 164:1,
164:25, 165:20,
165:24, 168:1,
168:20, 174:8,
174:12, 175:14,
178:21, 180:4,
180:8, 182:24,
186:13, 186:18,
186:23, 187:1,
187:24, 188:14,
189:2, 191:25,
192:2, 192:4, 192:8,
192:11, 193:18,
196:24, 199:8,
199:15, 203:7,
203:25, 204:1,
204:6, 204:9,
204:16, 204:19,
205:10, 205:15,
206:13, 206:25,
207:10, 207:14,
208:3, 208:5, 209:4,
210:9, 217:4, 220:9,
222:21, 222:23,
223:5, 223:8,
223:10, 223:12,
223:16, 223:20,
223:25, 224:4,
224:7, 224:11,
224:23, 225:6,
225:11, 226:1,

227:1, 227:7,
227:12, 227:16,
227:21, 228:3,
228:7, 228:12,
228:24, 229:2,
229:12, 229:16,
229:18, 230:1,
230:24, 231:3,
231:6, 231:16,
232:14, 234:9,
235:6, 235:13,
236:6, 236:9,
238:14, 239:15,
239:20, 239:23,
240:2, 240:4,
240:11, 240:15,
242:9, 242:14,
243:4, 243:20,
245:21, 246:8,
246:25, 247:9,
247:22, 248:17,
249:3, 249:10,
249:16, 251:2,
251:5, 251:16,
252:4, 252:21,
253:10, 255:7,
260:23, 261:1,
263:7, 266:23,
268:21
**court** [55] - 10:6,
11:20, 12:15, 17:14,
20:12, 21:6, 22:5,
23:3, 29:7, 29:12,
52:7, 57:3, 64:24,
65:12, 69:17, 75:3,
76:6, 78:3, 83:21,
99:5, 130:8, 134:21,
144:16, 144:19,
144:21, 144:24,
157:4, 157:11,
182:4, 200:20,
200:22, 200:23,
200:24, 201:1,
202:2, 213:10,
213:15, 213:16,
221:24, 222:16,
223:18, 223:19,
224:7, 224:19,
225:9, 228:8, 236:2,
238:12, 255:14,
258:4, 264:25,
273:6, 276:19,
279:17
**Court's** [18] - 18:10,
36:17, 50:11, 61:3,
63:5, 63:13, 73:2,
73:11, 73:19, 74:3,
74:5, 120:4, 135:16,
151:8, 172:10,
211:21, 212:11,
239:11

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 01/05/18 Page 294 of 329
Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 11/14/17 Page 293 of 328

13

**court-appointed** [10] -
23:3, 29:7, 29:12,
52:7, 64:24, 78:3,
83:21, 134:21,
157:4, 157:11
**COURT-APPOINTED**
[1] - 3:10
**court-supervised** [4] -
11:20, 12:15, 21:6,
69:17
**COURT**......................
....................... [3] -
4:4, 5:12, 6:10
**courthouse** [2] -
203:24, 270:11
**courtroom** [19] - 8:24,
9:1, 24:18, 26:5,
61:8, 81:4, 181:25,
203:9, 203:11,
203:12, 203:14,
204:5, 225:1, 225:2,
225:7, 225:9,
225:14, 236:17
**courtrooms** [1] - 8:23
**Courts** [1] - 226:9
**courts** [10] - 17:5,
32:10, 34:9, 53:19,
170:20, 219:12,
220:13, 261:10,
262:21, 264:21
**cousin** [1] - 210:8
**cover** [5] - 212:17,
258:10, 259:8,
259:9, 259:12
**coverage** [1] - 250:23
**covered** [10] - 125:12,
125:21, 126:4,
185:15, 194:4,
232:24, 244:4,
244:5, 256:2, 256:10
**covers** [2] - 233:1,
258:19
**Cox** [1] - 215:17
**CPA** [1] - 71:12
**CPA's** [1] - 166:12
**crab** [6] - 59:3, 76:14,
77:23, 143:5, 143:6,
174:6
**crabber** [2] - 43:3,
163:17
**crabbers** [8] - 135:21,
143:5, 143:9,
143:13, 148:24,
162:24, 163:11,
163:13
**crabs** [5] - 47:10,
47:11, 143:7,
148:12, 174:2
**crap** [1] - 204:15
**create** [9] - 92:22,

93:3, 136:5, 146:9,
170:23, 178:3,
215:1, 235:4, 237:8
**created** [8] - 9:22,
10:2, 83:13, 83:15,
171:16, 245:20,
249:22
**creates** [6] - 21:5,
104:25, 147:12,
147:13, 147:14,
217:21
**creating** [1] - 11:19
**creative** [2] - 262:8,
263:2
**credibility** [2] - 40:22,
55:23
**credit** [2] - 268:22,
276:5
**crediting** [1] - 75:8
**crew** [2] - 9:9, 46:4
**criteria** [7] - 13:12,
13:13, 17:9, 21:22,
142:24, 233:16
**critical** [5] - 32:5,
32:18, 81:10, 159:8,
183:12
**criticism** [2] - 226:21,
275:13
**criticize** [1] - 170:12
**criticized** [1] - 197:25
**critics** [1] - 198:4
**critiqued** [1] - 197:25
**cross** [2] - 197:20,
198:4
**cross-examine** [1] -
197:20
**cross-examined** [1] -
198:4
**CRR** [2] - 3:14, 280:13
**crucible** [1] - 65:16
**crude** [1] - 215:15
**cue** [1] - 74:21
**culminating** [1] -
133:16
**cumulatively** [1] -
222:7
**curious** [2] - 95:15,
210:23
**current** [4] - 63:7,
63:10, 80:22, 102:14
**Curtis** [4] - 119:11,
119:15, 128:13,
171:7
**CURTIS** [23] - 3:4,
119:14, 120:18,
121:5, 121:13,
121:21, 121:25,
122:23, 123:1,
123:5, 123:12,
123:16, 123:25,

124:4, 124:6, 124:9,
126:9, 126:12,
126:17, 127:11,
127:24, 128:14,
129:5
**CURTIS**.....................
........................ [1] -
4:24
**curve** [1] - 99:17
**cut** [3] - 114:11,
116:23, 234:3
**cutting** [2] - 118:1,
118:3
**cy** [27] - 149:15,
149:19, 150:1,
150:15, 150:16,
150:17, 150:18,
150:19, 150:22,
150:24, 151:2,
152:4, 155:1, 176:5,
176:12, 177:3,
189:10, 195:13,
195:16, 196:8,
225:19, 226:4,
247:4, 262:14,
262:21, 262:24
**Czerkies** [1] - 235:25

# D

**daily** [7] - 25:15, 26:1,
26:2, 26:3, 49:22,
65:3, 233:19
**DAMAGE** [1] - 4:6
**damage** [27] - 7:19,
13:18, 13:19, 13:20,
13:21, 34:21, 44:14,
44:17, 44:20, 68:18,
106:13, 109:16,
131:3, 132:11,
132:13, 133:8,
153:20, 169:7,
175:16, 175:19,
175:20, 233:17,
233:18, 243:24
**damaged** [4] - 53:6,
174:25, 175:12,
175:21
**damages** [36] - 19:1,
21:8, 23:13, 25:6,
26:19, 27:4, 27:5,
39:15, 41:11, 50:12,
51:2, 56:13, 63:22,
63:23, 66:3, 66:5,
66:7, 77:19, 77:22,
114:4, 143:16,
153:19, 202:18,
203:2, 206:22,
206:24, 215:4,
226:18, 248:14,

254:25, 255:3,
255:8, 255:24,
269:16, 271:22,
272:8
**Daniels** [1] - 76:7
**daresay** [1] - 71:18
**dark** [1] - 125:5
**darn** [1] - 85:2
**DARRELL** [1] - 3:6
**Darrell** [3] - 149:9,
223:3, 224:15
**data** [45] - 10:20, 13:8,
46:13, 46:15, 46:22,
46:25, 47:5, 47:6,
47:13, 47:18, 55:1,
55:2, 55:3, 55:6,
55:11, 61:15, 63:20,
66:12, 66:13, 66:14,
66:16, 66:17, 72:11,
72:13, 77:22, 78:7,
81:21, 148:5,
159:12, 159:17,
159:19, 163:2,
168:7, 173:5,
176:22, 191:9,
208:17, 212:4,
212:18, 216:19,
230:15, 264:12
**database** [2] - 159:21,
191:11
**date** [11] - 28:21,
38:14, 39:18, 81:10,
84:11, 188:25,
191:18, 191:19,
191:25, 253:10,
269:7
**dates** [1] - 39:20
**Daubert** [3] - 102:22,
177:21, 264:25
**day-to-day** [1] - 234:4
**days** [9] - 9:12, 11:8,
41:23, 56:15, 62:19,
73:25, 90:19,
166:12, 241:21
**DC** [1] - 2:25
**deadline** [2] - 12:24,
13:3
**deadlines** [1] - 12:19
**deal** [24] - 10:7, 23:25,
41:25, 42:24, 91:8,
91:13, 100:7,
104:20, 107:5,
117:4, 118:21,
138:24, 141:23,
163:19, 165:16,
189:9, 209:16,
212:25, 220:11,
220:13, 220:17,
222:2, 230:23,
269:10

**dealers** [1] - 14:5
**dealing** [2] - 206:14,
220:4
**dealt** [2] - 126:15,
209:22
**Dean** [2] - 166:19,
166:20, 183:10,
183:20, 194:11,
197:21, 219:3
**dearth** [1] - 189:24
**death** [3] - 9:8,
237:18, 237:25
**Debbie** [1] - 122:1
**decades** [2] - 65:5,
183:12
**December** [2] -
122:14, 264:19
**decide** [8] - 17:20,
87:19, 150:9,
151:15, 201:20,
214:16, 214:24,
217:17
**decided** [4] - 20:8,
42:15, 80:5, 218:24
**decides** [1] - 157:7
**deciding** [2] - 144:12,
276:22
**decision** [19] - 32:2,
34:3, 34:12, 38:15,
39:4, 39:17, 42:18,
72:5, 75:5, 167:4,
198:10, 198:18,
198:20, 199:24,
199:25, 200:4,
235:16, 273:10,
279:16
**decisions** [4] - 16:14,
34:13, 60:21, 198:7
**deckhand** [4] - 46:3,
161:18, 161:19,
162:18
**deckhands** [9] -
45:22, 135:20,
142:22, 148:24,
161:13, 161:14,
162:9, 162:10,
162:13
**declaration** [20] -
38:25, 52:25, 54:1,
58:3, 60:25, 94:2,
131:20, 157:23,
157:24, 174:4,
178:14, 183:10,
184:21, 188:23,
194:12, 210:17,
212:13, 248:2,
260:12, 260:14
**declarations** [13] -
19:24, 31:9, 51:25,
52:1, 52:12, 52:14,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 04/04/18 Page 295 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 234 of 326

14

53:24, 78:10, 117:5, 117:11, 136:17, 197:7, 208:10
**decreases** [1] - 169:8
**dedicated** [2] - 91:5, 237:12
**deduct** [1] - 144:5
**deducted** [1] - 140:15
**deduction** [2] - 143:20, 143:21
**deep** [2] - 114:3, 169:19
**DEEPWATER** [1] - 1:4
**Deepwater** [4] - 7:12, 9:6, 9:24, 95:14
**defend** [1] - 65:15
**defendant** [5] - 17:3, 150:8, 190:12, 205:18
**defendants** [4] - 14:8, 199:4, 205:18, 238:9
**defense** [4] - 14:4, 16:1, 28:24, 207:8
**defenses** [4] - 15:12, 15:13, 32:15, 206:11
**deficiencies** [2] - 55:4, 71:23
**deficiency** [2] - 148:23, 148:24
**define** [3] - 85:22, 205:15, 218:9
**defined** [9] - 17:7, 17:8, 133:22, 197:13, 202:1, 202:3, 202:25, 205:1, 206:14
**defines** [2] - 63:13, 63:14
**definitely** [3] - 122:4, 141:10, 241:4
**definition** [4] - 61:21, 88:17, 136:9, 202:5
**degree** [1] - 277:17
**delay** [3] - 39:5, 65:19, 87:21
**delayed** [1] - 51:4
**delays** [2] - 167:8, 273:24
**delicate** [1] - 132:4
**delineated** [1] - 132:14
**deliver** [1] - 197:17
**delivery** [1] - 74:7
**demand** [1] - 133:20
**demands** [1] - 238:9
**demonstrable** [1] - 135:19
**demonstratives** [4] - 173:8, 173:12, 222:16

**denial** [3] - 86:25, 88:1, 91:23
**denials** [8] - 86:1, 86:23, 88:11, 88:13, 88:25, 91:18, 91:19, 92:10
**denied** [8] - 51:4, 54:4, 64:8, 88:15, 88:19, 198:24, 235:14
**Dennis** [1] - 228:23
**Dent** [1] - 70:1
**deny** [1] - 90:25
**denying** [1] - 126:18
**Department** [3] - 37:6, 69:25, 123:19
**dependent** [2] - 151:9, 211:20
**deposition** [2] - 271:11
**depositions** [15] - 10:15, 25:1, 51:20, 65:24, 270:17, 270:18, 270:19, 270:21, 270:24, 271:2, 271:3, 271:5, 271:7, 271:17
**deprives** [1] - 113:5
**DEPUTY** [7] - 7:7, 7:11, 100:23, 100:25, 179:1, 180:7, 279:18
**derailments** [1] - 261:12
**derives** [1] - 38:7
**dermal** [1] - 215:14
**describe** [3] - 101:9, 102:2, 209:18
**described** [3] - 17:6, 75:24, 278:16
**describes** [1] - 189:5
**DESCRIPTION** [1] - 6:15
**description** [3] - 13:17, 87:4, 230:13
**deserve** [2] - 147:7, 147:8
**design** [1] - 249:23
**designated** [8] - 102:9, 102:16, 104:16, 105:17, 107:1, 107:2, 132:14, 155:11
**designations** [1] - 119:1
**designed** [14] - 50:5, 57:25, 91:14, 133:7, 169:6, 176:15, 188:12, 189:20, 226:11, 255:12,

258:11, 258:21, 258:22, 259:12
**desirability** [1] - 16:4
**desire** [1] - 115:25
**desk** [2] - 270:12, 270:22
**desperate** [1] - 239:4
**despite** [4] - 106:21, 244:12, 244:23, 245:24
**Destin** [20] - 101:13, 105:13, 105:23, 106:25, 107:1, 107:6, 107:12, 107:20, 108:1, 108:13, 109:8, 109:10, 111:14, 111:16, 116:24, 168:18, 168:19, 168:23, 169:2
**DESTIN** [1] - 4:21
**destroy** [1] - 232:9
**destroyed** [1] - 238:13
**detail** [5] - 27:21, 49:5, 87:13, 196:12, 197:7
**detailed** [6] - 20:24, 51:16, 77:14, 77:17, 77:22, 82:10
**detailing** [1] - 83:11
**details** [1] - 46:19
**determination** [8] - 16:24, 21:25, 84:9, 84:10, 86:7, 86:20, 87:9, 159:23
**determinations** [3] - 23:21, 56:1, 56:4
**determine** [7] - 33:4, 42:13, 50:17, 63:2, 168:14, 201:13, 235:18
**determined** [3] - 21:8, 160:1, 183:19
**detrimental** [1] - 40:17
**develop** [7] - 29:4, 29:5, 79:18, 82:16, 135:2, 206:7
**developed** [10] - 25:6, 42:14, 51:19, 51:24, 77:22, 83:4, 83:21, 169:5, 187:10
**device** [2] - 226:11, 226:13
**devised** [1] - 47:3
**diagnosed** [1] - 243:25
**diagnoses** [7] - 233:4, 238:23, 238:25, 243:10, 244:5, 244:8, 258:1
**diagnosis** [1] - 244:14

**diametrically** [1] - 263:19
**Diamondhead** [4] - 125:16, 125:17, 125:22, 125:23
**diarrhea** [1] - 256:13
**dictate** [1] - 161:8
**dictated** [1] - 226:7
**dictates** [1] - 226:5
**died** [1] - 269:24
**Diego** [1] - 228:10
**differ** [4] - 127:10, 131:24, 151:11, 199:9
**difference** [9] - 28:16, 44:13, 77:10, 118:8, 118:9, 131:20, 175:10, 200:6, 246:24
**differences** [10] - 70:9, 70:11, 70:15, 70:22, 130:22, 130:23, 139:16, 139:17, 272:5
**different** [43] - 21:15, 33:5, 33:9, 33:12, 34:9, 37:23, 43:9, 43:16, 45:9, 61:11, 70:5, 86:3, 90:16, 101:12, 105:7, 107:14, 124:11, 131:1, 131:13, 138:9, 139:18, 142:18, 142:24, 144:9, 145:12, 146:24, 146:25, 162:10, 162:22, 170:17, 174:19, 174:23, 175:22, 176:1, 190:12, 199:5, 199:17, 209:13, 257:22, 262:9, 263:17, 276:17
**DIFFERENT** [1] - 4:21
**differential** [3] - 233:4, 238:23, 238:25
**differently** [11] - 33:20, 70:10, 70:21, 103:1, 114:14, 115:17, 131:15, 167:20, 175:23, 279:12
**difficult** [7] - 155:14, 182:4, 190:16, 220:12, 250:25, 254:1, 256:20
**difficulties** [2] - 16:6, 255:14
**difficulty** [1] - 214:9

**diligence** [1] - 46:1
**diligent** [1] - 90:13
**diminish** [2] - 109:21, 136:5
**diminished** [1] - 133:22
**diminution** [2] - 133:9, 136:2
**diplomacy** [1] - 213:2
**direct** [9] - 21:23, 22:6, 75:24, 76:10, 78:5, 105:12, 202:7, 216:9, 226:18
**directed** [1] - 37:7
**directionally** [2] - 72:13, 212:13
**directly** [9] - 9:18, 9:20, 22:10, 87:16, 105:5, 105:6, 129:6, 146:1, 147:10
**dirty** [1] - 181:12
**disability** [1] - 237:19
**disagree** [2] - 139:9, 139:10, 140:20, 140:22, 172:4, 214:19, 215:19, 277:15
**disagreed** [1] - 41:14
**disapprove** [2] - 115:8, 177:13
**disapproving** [1] - 200:19
**disaster** [6] - 21:4, 54:2, 65:9, 133:23, 134:6, 199:1
**disastrous** [1] - 134:7
**disbursed** [2] - 216:16, 219:24
**disclosure** [1] - 191:9
**discount** [1] - 131:3
**discounting** [1] - 127:20
**discover** [1] - 217:15
**discovery** [10] - 10:9, 10:11, 18:2, 25:1, 25:11, 66:2, 68:3, 270:8, 271:20, 277:22
**discretionary** [1] - 22:2
**discuss** [3] - 101:4, 102:14, 147:2
**discussed** [4] - 161:22, 193:5, 197:7, 267:3
**discussion** [3] - 8:11, 8:16, 182:18
**discussions** [10] - 11:3, 44:6, 78:6, 134:16, 134:19,

Case 2:10-md-02179-CJB-DPC Document 23682-8 Filed 04/02/18 Page 296 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 299 of 326

15

231:12, 243:23,
267:17, 267:23,
268:1
**disease** [1] - 247:15
**diseases** [2] - 199:5,
264:5
**dishonor** [1] - 134:2
**dismiss** [1] - 153:24
**dismissed** [3] - 127:3,
153:22, 248:8
**disparate** [2] - 32:18,
32:19
**disparately** [1] -
148:25
**dispersant** [1] - 264:7
**dispersants** [3] -
181:6, 184:17,
215:15
**dispersed** [1] - 205:20
**disproportionately** [3]
- 103:4, 153:10,
163:6
**dispute** [1] - 34:8
**disputed** [1] - 215:12
**disputes** [1] - 22:7
**disputing** [1] - 18:20
**disseminate** [1] -
82:17
**distance** [5] - 103:25,
106:12, 116:22,
169:6, 252:17
**distant** [1] - 265:3
**distinction** [1] -
207:21
**distinctions** [2] -
70:18, 170:6
**distress** [1] - 202:15
**distribute** [5] - 139:25,
140:4, 151:12,
151:13, 262:4
**distributed** [9] -
38:19, 141:15,
150:22, 151:14,
154:24, 155:13,
157:14, 191:6,
225:21
**distributing** [5] -
142:9, 150:12,
154:21, 226:25,
228:18
**distribution** [14] -
139:15, 139:19,
139:21, 140:1,
140:16, 141:2,
146:9, 146:12,
146:16, 151:23,
155:1, 155:24,
156:25, 157:3
**district** [3] - 194:6,
223:18, 224:7

**DISTRICT** [3] - 1:1,
1:1, 1:17
**District** [12] - 129:24,
130:4, 200:6, 200:8,
223:13, 264:9,
264:16, 264:18,
280:6, 280:15
**diverse** [2] - 29:10,
29:14
**diversity** [1] - 226:15
**diverting** [1] - 262:23
**divide** [2] - 119:12,
206:3
**dividing** [1] - 180:15
**divisive** [1] - 147:11
**doable** [1] - 234:17
**Dock** [5] - 44:15,
127:12, 127:15,
127:16, 160:15
**doctor** [17] - 186:21,
188:17, 188:19,
188:24, 189:19,
244:20, 245:14,
245:18, 246:22,
247:1, 248:3, 248:4,
253:20, 257:16,
257:25, 260:10
**doctors** [4] - 233:13,
237:5, 237:15, 245:2
**document** [7] - 22:22,
29:18, 29:19, 82:7,
158:12, 162:23,
163:1
**Document** [3] - 46:18,
162:20, 174:5
**DOCUMENT** [1] - 1:8
**documentation** [11] -
12:21, 45:7, 45:12,
45:14, 89:18, 89:25,
93:10, 156:4,
276:14, 276:17,
277:6
**documents** [13] -
10:16, 25:3, 51:20,
67:2, 82:13, 84:5,
92:20, 92:21, 97:16,
190:9, 190:11,
190:15
**Doer** [1] - 214:2
**doers** [1] - 226:12
**dog** [1] - 254:7
**dollar** [12] - 56:12,
81:25, 126:3,
137:18, 137:19,
150:12, 164:17,
164:18, 165:18,
176:23, 232:3, 232:6
**dollars** [16] - 23:22,
50:20, 84:12, 84:24,
86:6, 139:14,

141:17, 146:15,
147:19, 147:20,
150:6, 176:24,
224:21, 226:23,
229:11
**DOMENGEAUX** [1] -
1:21
**DON** [2] - 2:16
**done** [54] - 8:20, 25:7,
30:3, 33:9, 33:10,
33:25, 41:6, 41:8,
46:1, 59:15, 64:20,
64:23, 68:3, 68:7,
83:12, 102:15,
115:16, 115:17,
122:15, 137:13,
141:18, 161:6,
161:11, 167:20,
167:21, 167:23,
200:7, 200:8, 204:4,
204:8, 204:13,
204:17, 213:4,
213:22, 220:3,
220:5, 232:5,
232:10, 233:14,
235:2, 241:5,
248:18, 265:20,
268:16, 269:7,
272:3, 277:20,
278:19, 279:11
**door** [1] - 173:24
**double** [3] - 143:20,
143:21, 219:16
**double-checking** [1] -
219:16
**doubt** [6] - 29:20,
29:21, 83:1, 119:3,
131:18, 269:5
**doubts** [1] - 227:24
**down** [22] - 8:25,
23:11, 46:7, 46:25,
47:6, 47:18, 48:5,
66:20, 88:20, 94:22,
108:12, 142:13,
143:8, 144:11,
146:24, 159:23,
165:2, 190:25,
208:14, 244:4,
256:7, 265:16
**downtown** [1] - 107:6
**dozen** [2] - 43:14,
182:20
**dozens** [1] - 120:7
**Dr** [12] - 71:6, 71:7,
145:10, 172:4,
184:18, 185:14,
189:5, 215:17,
217:3, 218:2,
218:16, 233:12
**dr** [1] - 218:11

**dramatical** [1] -
141:21
**dramatically** [3] -
105:7, 142:24, 188:6
**drastic** [1] - 237:16
**draw** [6] - 33:25, 36:5,
103:12, 105:25,
106:1, 106:5
**drawing** [1] - 33:18
**drawn** [10] - 35:9,
36:4, 36:10, 36:15,
70:18, 103:8,
120:12, 121:17,
131:15, 164:3
**DRC** [1] - 43:12
**drew** [3] - 106:1,
112:18, 131:17
**drive** [5] - 67:22,
67:23, 169:14,
169:15, 189:18
**drive-arounds** [2] -
169:14, 169:15
**drive-bys** [2] - 67:22,
67:23
**driven** [1] - 28:23
**driving** [2] - 35:12,
252:16
**drop** [2] - 92:7, 189:17
**dropped** [1] - 270:11
**drops** [1] - 148:9
**drove** [2] - 181:3,
181:17
**drowning** [1] - 237:24
**drugstore** [2] - 92:4,
187:17
**Dry** [5] - 44:15,
127:12, 127:15,
127:16, 160:15
**due** [11] - 13:1, 46:1,
106:18, 151:9,
169:7, 207:20,
242:5, 245:16,
263:14, 266:25,
274:23
**Duke** [1] - 69:21
**Dukes** [1] - 16:20
**duplicate** [1] - 94:21
**duplicitous** [1] - 93:19
**duration** [4] - 18:1,
213:7, 269:6, 269:9
**durations** [1] - 215:16
**during** [9] - 25:23,
26:1, 35:21, 78:8,
138:22, 138:23,
184:19, 190:14,
202:10
**duties** [1] - 91:3
**duty** [2] - 273:7, 273:8
**dwarfed** [1] - 212:1

## E

**e-mailed** [1] - 271:9
**early** [5] - 50:19,
77:17, 79:17,
267:24, 268:1
**Early** [1] - 200:3
**earnings** [12] - 45:7,
45:12, 45:14, 49:11,
89:9, 89:13, 89:15,
90:2, 90:6, 90:9,
90:19, 161:16
**East** [1] - 99:10
**EASTERN** [1] - 1:1
**Eastern** [3] - 264:9,
264:16, 280:6
**eastern** [1] - 13:15
**easy** [8] - 25:17,
65:14, 65:15, 167:6,
167:14, 255:19
**eating** [1] - 247:10
**echoed** [1] - 219:6
**ecological** [2] - 70:10,
134:5
**ecologically** [1] -
132:1
**ECONOMIC** [1] - 4:5
**economic** [53] - 7:19,
8:1, 8:4, 8:15, 13:10,
13:11, 13:18, 19:1,
21:2, 21:7, 27:15,
35:8, 44:7, 50:12,
51:2, 51:17, 53:16,
60:19, 68:18, 88:3,
88:9, 101:5, 101:10,
102:6, 102:18,
102:20, 102:21,
103:24, 104:10,
105:2, 106:16,
110:2, 113:17,
122:3, 168:4,
168:16, 169:7,
169:9, 170:17,
171:24, 176:25,
184:9, 191:3, 193:5,
195:17, 207:23,
208:7, 209:5, 212:7,
275:6, 276:11,
277:5, 278:6
**economically** [1] -
132:1
**Economics** [1] - 71:7
**economics** [2] -
71:11, 71:16
**economists** [1] - 71:6
**economy** [5] - 35:16,
35:22, 164:23,
176:16
**ecosystem** [1] -

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 297 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 298 of 328

16

190:14
**Edith** [1] - 225:25
**EDWARDS** [1] - 1:21
**effect** [3] - 11:15, 49:1, 57:3
**effective** [9] - 53:5, 162:22, 163:11, 175:5, 191:18, 191:19, 191:25, 253:10, 262:19
**effectively** [6] - 24:21, 26:5, 26:7, 27:5, 43:19, 48:21
**effects** [6] - 35:1, 69:22, 184:23, 232:25, 233:1
**efficiently** [3] - 15:23, 20:7, 197:12
**effort** [3] - 26:25, 149:17, 241:6
**efforts** [3] - 89:5, 90:14, 266:22
**eggshell** [2] - 258:19, 259:16
**eight** [7] - 47:9, 47:14, 56:14, 144:2, 144:3, 166:21, 172:18
**either** [24] - 12:22, 26:8, 30:2, 39:5, 41:22, 73:21, 89:14, 89:15, 90:2, 91:22, 99:3, 100:8, 157:17, 170:11, 187:2, 195:21, 202:9, 221:13, 221:14, 226:15, 239:6, 248:1, 273:3
**elder** [1] - 89:4
**election** [1] - 209:3
**electronic** [2] - 83:16, 190:9
**electronically** [3] - 82:17, 83:3, 95:6
**elects** [1] - 14:23
**elevate** [1] - 178:12
**eligibility** [5] - 95:18, 139:16, 142:23, 142:24, 253:16
**eligible** [6] - 56:8, 91:22, 91:24, 184:10, 184:11, 260:15
**eliminated** [1] - 206:24
**ELIZABETH** [1] - 2:3
**Elizabeth** [2] - 180:16, 197:1
**Elliott** [2] - 69:25, 131:19
**ELLIS** [2] - 2:20, 2:23

**Ellison** [1] - 10:1
**Elmer's** [1] - 129:1
**elsewhere** [4] - 25:2, 263:17, 263:23, 270:5
**emergency** [1] - 259:21
**eminent** [1] - 117:6
**emotional** [1] - 202:15
**employed** [2] - 13:14, 46:2
**employees** [2] - 14:7, 14:8
**employer** [3] - 45:18, 45:19, 45:23
**employers** [1] - 88:23
**employing** [1] - 226:5
**empowered** [1] - 22:10
**en** [7] - 46:9, 97:2, 209:4, 212:8, 212:9, 273:4
**enable** [1] - 261:16
**enabled** [1] - 205:22
**enables** [5] - 90:15, 201:11, 201:13, 205:23, 206:9
**enabling** [1] - 50:13
**encompass** [1] - 243:12
**encounters** [1] - 191:10
**encouraged** [3] - 267:23, 273:3, 273:4
**end** [31] - 23:20, 29:3, 42:23, 43:5, 50:18, 60:21, 68:10, 77:9, 114:25, 135:8, 141:21, 146:2, 146:3, 147:10, 158:20, 167:3, 167:14, 189:9, 190:23, 206:8, 206:17, 214:8, 216:10, 246:17, 254:25, 255:2, 255:4, 255:8, 255:12, 269:18
**ended** [1] - 244:18
**endorsed** [1] - 200:18
**endorses** [1] - 261:9
**ends** [1] - 27:17
**enemy** [1] - 115:22
**enforce** [1] - 226:14
**enforced** [2] - 226:8, 226:17
**enforcement** [2] - 161:8, 226:7
**engage** [2] - 177:25, 273:4

**engaged** [1] - 78:5
**engine** [1] - 86:10
**England** [1] - 25:15
**English** [2] - 241:12, 247:12
**enhance** [1] - 263:1
**enjoy** [4] - 37:18, 127:17, 127:20, 154:3
**enjoyment** [11] - 37:15, 119:21, 120:20, 120:23, 120:25, 123:9, 126:1, 153:21, 160:8, 171:13
**enormous** [1] - 278:16
**Enron** [1] - 224:19
**enshrined** [1] - 134:10
**ensure** [1] - 16:13
**ensures** [1] - 23:6
**enter** [2] - 50:4, 178:19
**entered** [3] - 81:6, 130:9, 224:12
**entire** [18] - 30:1, 44:25, 114:9, 114:10, 117:25, 118:2, 118:14, 137:24, 137:25, 138:20, 148:13, 166:6, 183:3, 184:19, 188:11, 196:2, 228:23, 266:7
**entirely** [1] - 151:5
**entities** [4] - 14:1, 81:1, 81:5, 114:23
**entitled** [10] - 39:15, 72:6, 75:4, 92:5, 112:12, 138:12, 217:8, 248:5, 252:7, 280:9
**entity** [2] - 107:20, 107:22
**enunciated** [1] - 29:24
**envelope** [1] - 62:16
**environment** [1] - 190:18
**environmental** [4] - 25:5, 69:23, 98:20, 102:17
**Environmental** [1] - 69:25
**equal** [2] - 114:22, 127:14
**equalled** [1] - 58:8
**equally** [1] - 189:4
**equals** [1] - 52:18
**equitable** [5] - 119:5, 139:4, 144:13, 262:14, 262:25

**equities** [1] - 178:16
**equivalent** [1] - 175:18
**ERISA** [1] - 9:25
**erroneous** [1] - 264:11
**errors** [1] - 116:10
**escape** [1] - 199:16
**escapes** [1] - 170:15
**escort** [2] - 204:9, 204:16
**escorted** [1] - 203:15, 204:7
**especially** [6] - 26:11, 32:6, 41:18, 218:4, 236:22, 250:24
**ESQUIRE** [16] - 1:21, 1:24, 2:3, 2:7, 2:16, 2:20, 2:21, 2:24, 3:4, 3:4, 3:5, 3:5, 3:6, 3:6, 3:7, 3:7
**essence** [2] - 97:24, 175:16
**essentially** [9] - 9:23, 37:14, 93:9, 191:21, 197:20, 232:24, 234:25
**establish** [3] - 45:10, 61:2, 161:16
**established** [1] - 32:3
**establishing** [1] - 222:9
**establishments** [1] - 14:4
**estate** [1] - 70:2
**estimate** [3] - 61:21, 76:16, 275:5
**estimates** [1] - 46:13
**estoppel** [1] - 40:17
**estuaries** [1] - 131:11
**ET** [6] - 1:10, 1:11, 1:13, 1:14, 5:15
**et** [6] - 7:13, 7:14, 7:15, 7:16, 180:10, 180:11
**etcetera** [1] - 45:20, 46:11, 68:1, 70:13, 162:1
**eternally** [1] - 241:23
**ethical** [2] - 147:12, 273:8
**ethics** [3] - 25:20, 25:24, 277:17
**evaluate** [1] - 215:2
**evaluated** [2] - 27:1, 39:9
**evaluation** [3] - 21:22, 159:6, 247:2
**eve** [1] - 11:1
**evening** [1] - 9:10
**event** [8] - 44:12, 51:5,

54:18, 175:4, 199:15, 211:24, 279:1, 279:9
**eventually** [2] - 11:5, 56:12
**evergreen** [1] - 164:17
**Evidence** [1] - 61:3
**evidence** [61] - 9:19, 12:22, 19:25, 20:5, 25:6, 31:25, 34:8, 34:24, 51:21, 67:18, 69:7, 74:17, 77:3, 77:7, 77:15, 79:9, 79:20, 108:25, 110:21, 114:17, 115:12, 130:9, 145:5, 145:8, 145:10, 145:12, 172:17, 173:7, 173:9, 173:10, 173:13, 174:3, 176:2, 176:3, 177:16, 187:18, 207:13, 208:10, 208:18, 208:19, 212:16, 214:13, 214:16, 214:17, 214:22, 215:10, 215:18, 221:14, 221:15, 224:8, 224:14, 230:16, 235:20, 236:24, 237:11, 238:23, 254:14, 258:6, 273:9, 277:6
**evident** [1] - 134:13
**evidentiary** [5] - 51:16, 51:19, 51:23, 55:4, 208:8
**evil** [3] - 226:12, 227:19, 227:21
**evil-doers** [1] - 226:12
**ex** [1] - 150:22
**exact** [2] - 22:2, 249:4
**exactly** [15] - 11:15, 23:4, 33:22, 40:22, 48:12, 49:10, 53:3, 104:10, 108:4, 140:23, 142:16, 145:23, 165:8, 242:16, 249:8
**examination** [1] - 32:13
**examinations** [1] - 215:24
**examine** [3] - 197:20, 198:13
**examined** [2] - 194:12, 198:4
**example** [35] - 14:18,

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 02/02/18 Page 298 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 23 of 28

17

22:12, 30:4, 33:18,
34:15, 35:19, 36:20,
42:23, 48:4, 48:9,
48:24, 66:13, 74:6,
82:19, 88:2, 88:10,
92:4, 105:9, 107:23,
109:3, 109:6, 122:6,
137:15, 159:18,
170:16, 175:19,
187:7, 199:11,
202:12, 221:25,
234:25, 243:20,
257:11
**examples** [1] - 39:18
**exceed** [1] - 85:16
**exceeded** [2] - 65:24,
212:23
**exceeds** [5] - 60:18,
64:25, 65:18, 68:25,
69:8
**excellent** [2] - 64:4,
75:16
**except** [5] - 27:19,
136:10, 181:14,
192:8, 275:8
**exception** [2] - 9:24,
44:15
**excess** [3] - 10:14,
21:2, 84:12
**excluded** [22] - 14:1,
14:8, 14:12, 14:13,
14:15, 14:17, 14:19,
14:24, 14:25, 15:1,
88:22, 88:24,
113:24, 120:11,
120:16, 125:12,
127:5, 133:21,
171:11, 171:23,
233:22
**excludes** [2] - 109:15,
114:3
**exclusion** [4] -
113:23, 119:20,
121:8, 193:25
**exclusions** [2] -
120:9, 144:10
**excuse** [3] - 47:14,
164:25, 203:7
**executed** [1] - 14:18
**exempt** [1] - 42:18
**exercise** [5] - 24:16,
62:18, 75:9, 177:10,
217:17
**exercising** [1] - 62:20
**exhibit** [3] - 29:16,
222:16, 266:16
**EXHIBIT** [1] - 6:17
**Exhibit** [5] - 36:24,
46:9, 89:10, 89:21,
100:19

**Exhibits** [1] - 196:11
**exhibits** [1] - 12:21
**exist** [3] - 61:10,
227:1, 242:6
**existed** [1] - 233:5
**existence** [2] - 17:24,
44:9
**existing** [2] - 10:21,
226:14
**exists** [1] - 188:25
**expand** [1] - 234:11
**expect** [2] - 147:19,
200:14
**expected** [7] - 24:20,
38:17, 85:11, 150:6,
162:16, 277:13,
277:16
**expeditious** [1] -
53:15
**expended** [1] - 83:11
**expenditure** [2] -
152:21, 155:16
**expense** [6] - 17:25,
174:1, 213:7,
255:23, 269:6, 269:9
**expenses** [6] - 64:13,
92:22, 92:24, 93:4,
274:12, 275:11
**expensive** [2] - 175:9,
207:9
**experience** [9] -
69:22, 79:13, 100:9,
169:19, 181:20,
190:24, 256:23,
258:23, 278:14
**experienced** [7] -
98:5, 115:11,
177:17, 181:25,
184:16, 186:14,
187:4
**experiences** [2] -
133:16, 182:3
**expert** [40] - 10:17,
25:7, 25:25, 51:22,
51:25, 54:11, 59:25,
60:15, 66:14, 66:19,
69:3, 70:2, 70:6,
70:19, 70:22, 70:25,
71:2, 77:7, 78:12,
79:9, 102:20,
102:23, 103:20,
106:11, 106:21,
107:3, 115:12,
131:18, 168:17,
170:6, 184:18,
185:3, 209:23,
213:20, 244:6,
258:8, 258:17,
264:20
**expert's** [1] - 106:24

**expert-based** [2] -
70:22, 170:6
**expertise** [2] - 244:8,
264:21
**experts** [64] - 19:25,
25:7, 25:20, 25:24,
28:20, 31:10, 52:2,
52:9, 52:15, 59:12,
59:20, 66:6, 67:5,
67:22, 68:12, 68:24,
69:9, 69:10, 69:19,
69:19, 69:23, 70:7,
70:8, 71:21, 77:15,
77:16, 77:18, 78:2,
78:5, 78:11, 78:22,
103:16, 134:8,
145:14, 166:17,
169:13, 169:15,
169:18, 169:19,
170:13, 172:3,
175:2, 177:19,
197:6, 197:19,
197:24, 198:13,
198:17, 199:14,
201:24, 203:3,
207:13, 208:9,
212:19, 213:22,
217:3, 218:17,
219:1, 220:16,
220:17, 266:3
**expire** [1] - 276:10
**expired** [1] - 62:20
**explain** [8] - 104:1,
106:9, 106:23,
109:3, 116:16,
124:7, 220:16, 230:4
**explained** [3] - 17:13,
60:11, 138:8
**explaining** [1] - 108:8
**explanation** [1] -
264:12
**explicitly** [1] - 18:24
**EXPLORATION** [3] -
1:10, 1:13, 2:13
**Exploration** [2] - 7:14,
7:16
**explosion** [2] -
182:21, 183:4
**exponentially** [1] -
188:10
**exposed** [10] - 184:16,
184:25, 185:2,
207:15, 230:10,
233:7, 253:22,
256:21, 258:23,
259:10
**exposure** [32] - 32:16,
181:6, 181:11,
182:7, 182:9,
182:14, 185:7,

185:16, 187:19,
187:22, 199:3,
202:19, 203:6,
206:6, 206:8,
206:15, 207:5,
207:20, 212:18,
230:8, 231:24,
234:20, 237:24,
238:22, 243:13,
243:18, 244:17,
254:3, 258:9,
258:18, 260:9
**exposures** [15] -
181:9, 181:19,
182:3, 183:4,
196:21, 198:12,
206:5, 206:14,
215:11, 215:14,
233:15, 233:18,
234:12, 236:24,
261:12
**expressed** [1] -
224:17
**expressly** [3] - 14:1,
14:19, 227:25
**extend** [1] - 40:15
**extended** [5] - 12:25,
13:1, 13:5, 267:21,
276:11
**extension** [2] - 55:16,
276:8
**extensive** [8] - 51:15,
65:5, 77:21, 82:4,
111:3, 208:8, 215:9,
267:17
**extensively** [1] - 81:9
**extent** [12] - 16:2,
38:16, 162:2,
195:18, 196:8,
218:8, 252:8,
254:10, 256:1,
257:24, 274:8, 275:8
**extraordinarily** [4] -
190:6, 190:16,
256:11, 259:15
**extraordinary** [3] -
52:3, 69:15, 266:22
**extrapolate** [1] - 85:13
**extrapolation** [1] -
95:25
**extremely** [2] - 60:17,
253:25
**Exxon** [13] - 21:10,
51:8, 51:11, 56:16,
60:3, 60:6, 65:8,
134:11, 183:7,
198:23, 199:12,
269:12, 269:17
**eye** [1] - 232:24
**eyes** [1] - 241:8

**F**

**F.2nd** [1] - 17:12
**Fabrication** [1] -
105:18
**fabrication** [1] -
105:10
**face** [3] - 50:4, 183:15
**face-to-face** [1] - 50:4
**faced** [1] - 73:14
**facilitate** [1] - 38:23
**facilitated** [1] - 11:19
**facilities** [3] - 189:20,
189:25, 192:15
**Facility** [7] - 10:22,
57:10, 57:23, 77:11,
81:17, 94:20, 182:18
**facility** [5] - 50:20,
56:24, 82:24,
168:10, 253:3
**facing** [1] - 269:8
**fact** [68] - 15:10,
15:20, 16:17, 20:11,
23:19, 24:2, 25:4,
28:1, 34:5, 35:11,
39:24, 43:2, 43:11,
51:25, 55:10, 66:2,
67:17, 70:22, 76:16,
77:14, 80:3, 90:12,
98:9, 102:18,
102:24, 105:4,
106:12, 106:21,
118:18, 132:2,
137:21, 141:4,
143:3, 144:3,
154:21, 158:7,
158:14, 170:6,
171:14, 172:5,
193:2, 196:9,
200:20, 203:23,
205:2, 205:17,
208:9, 209:10,
215:13, 226:22,
235:13, 238:1,
241:1, 244:12,
244:18, 244:23,
245:12, 245:24,
247:4, 251:23,
251:25, 254:24,
259:24, 267:23,
270:21, 276:5
**fact-based** [2] - 170:6,
172:5
**factions** [2] - 205:8,
206:2
**Factor** [2] - 64:17,
65:21
**factor** [22] - 16:9, 38:1,
49:11, 64:25, 65:4,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 299 of 329
Case 2:10-md-02179-CJB-DCW Document 13892-8 Filed 12/15/14 Page 299 of 328

18

65:18, 65:24, 68:2,
68:5, 68:9, 68:25,
69:4, 69:6, 81:16,
103:19, 103:21,
120:3, 120:6, 141:1,
269:2, 270:6, 270:7
**factored** [2] - 34:21,
35:1
**factors** [25] - 17:24,
32:6, 32:7, 64:16,
69:6, 69:8, 103:2,
104:4, 164:20,
164:21, 177:15,
182:5, 205:15,
208:18, 212:17,
212:21, 212:23,
233:3, 235:17,
237:5, 238:18,
239:2, 263:3, 269:3,
276:21
**facts** [9] - 34:7, 54:13,
57:14, 65:22, 67:20,
68:18, 106:21,
178:15, 252:20
**factual** [3] - 18:20,
31:24, 185:10
**Faegre** [1] - 76:7
**fail** [2] - 59:19, 198:9
**failed** [3] - 92:1,
112:21, 134:2
**fails** [1] - 59:14
**failure** [1] - 133:24
**fair** [66] - 17:15, 17:16,
17:21, 21:8, 28:8,
30:24, 33:14, 33:19,
33:23, 36:12, 41:18,
42:15, 42:24, 42:25,
43:22, 46:11, 50:18,
53:6, 53:13, 54:18,
59:7, 59:9, 59:18,
60:8, 60:10, 76:23,
78:25, 107:18,
108:17, 115:20,
117:14, 117:22,
119:5, 119:25,
128:4, 128:7, 128:8,
130:18, 137:10,
139:4, 144:13,
146:16, 148:20,
163:10, 163:18,
163:23, 170:4,
170:5, 171:6,
172:16, 172:25,
173:19, 173:20,
177:10, 184:4,
185:18, 185:20,
186:11, 195:11,
241:1, 243:1,
246:15, 246:17,
264:1, 265:24,

279:14
**fairest** [4] - 33:6,
183:20, 183:21,
219:4
**fairly** [17] - 15:16,
15:22, 16:14, 28:18,
50:6, 64:17, 85:24,
86:7, 87:4, 102:1,
135:12, 136:20,
138:6, 147:21,
147:23, 162:24,
197:11
**fairness** [31] - 8:4,
12:9, 12:10, 19:3,
51:16, 52:13, 74:17,
78:25, 99:14, 116:8,
133:6, 134:3,
149:12, 170:23,
173:18, 180:17,
192:7, 193:5, 194:8,
194:13, 194:24,
195:2, 208:11,
215:2, 236:21,
238:19, 242:1,
263:3, 263:24,
263:25, 265:18
**FAIRNESS** [3] - 1:16,
5:2, 5:17
**faith** [2] - 224:8,
272:19
**fall** [4] - 61:21, 88:19,
150:20, 189:22
**fallacies** [1] - 32:24
**fallacy** [2] - 32:25,
34:2
**falling** [1] - 206:6
**Fallon** [1] - 235:14
**falls** [1] - 107:20
**falsity** [1] - 16:24
**familiar** [4] - 226:1,
267:19, 270:10,
276:15
**family** [4] - 45:24,
210:8, 240:1, 254:14
**famous** [1] - 40:1
**far** [14] - 55:7, 61:11,
86:20, 88:18, 89:3,
102:6, 148:19,
178:9, 195:3, 214:5,
236:7, 239:3, 247:15
**fashion** [1] - 22:3
**fashioned** [1] - 28:20
**fast** [3] - 38:22, 82:15
**fatal** [1] - 117:4
**fault** [1] - 32:12
**favor** [6] - 53:15,
119:2, 129:19,
129:20, 171:7, 266:5
**favorable** [5] - 23:21,
41:25, 98:8, 114:21,

117:21
**favorably** [2] - 44:22,
45:5
**Fayard** [4] - 25:14,
62:22, 67:19, 168:25
**features** [1] - 32:9
**February** [5] - 10:25,
11:1, 25:9, 25:10,
166:10
**Federal** [6] - 15:7,
61:3, 120:4, 226:6,
226:12, 226:18
**federal** [10] - 37:3,
66:13, 209:17,
209:25, 213:20,
220:4, 225:9, 236:2,
240:13, 264:21
**fee** [3] - 155:25,
274:17, 275:18
**feelings** [1] - 40:8
**fees** [11] - 64:12,
155:23, 156:2,
156:3, 156:7,
274:12, 274:14,
274:21, 275:11,
276:1, 276:3
**feet** [1] - 214:11
**Feinberg** [4] - 79:17,
79:21, 161:1, 235:24
**fell** [1] - 88:24
**fellow** [1] - 237:13
**felt** [2] - 209:23,
252:19
**Fen** [1] - 255:2
**Fen-phen** [1] - 255:2
**few** [30] - 9:3, 11:8,
29:24, 31:7, 35:4,
36:3, 54:20, 72:8,
76:20, 80:4, 130:5,
160:6, 176:5,
178:12, 183:13,
194:15, 194:18,
194:19, 211:25,
215:5, 215:6, 215:8,
220:3, 220:15,
220:25, 222:17,
230:18, 234:25,
239:7
**fewer** [2] - 28:2,
202:14
**fiduciary** [2] - 151:8,
273:7
**field** [6] - 52:16, 69:14,
183:23, 185:3,
219:6, 244:6
**FIFTEENTH** [1] - 2:24
**fifth** [1] - 18:3
**Fifth** [24] - 17:11,
17:23, 32:2, 62:4,
98:16, 151:12,

198:10, 198:18,
198:21, 199:12,
199:23, 199:24,
199:25, 200:2,
200:3, 200:4,
200:18, 200:24,
202:17, 204:24,
211:22, 261:11,
269:4, 269:18
**fight** [1] - 126:2
**figure** [14] - 49:10,
154:2, 209:8,
220:23, 242:19,
244:8, 244:16,
245:3, 245:10,
246:3, 246:5, 248:1,
268:15, 275:1
**figured** [1] - 136:20
**figures** [1] - 275:2
**file** [17] - 23:7, 63:17,
63:18, 73:23, 83:18,
96:11, 96:16, 97:14,
186:23, 210:17,
212:13, 230:24,
258:2, 266:18,
276:12, 276:14,
276:25
**filed** [46] - 9:14, 9:17,
10:20, 11:23, 12:1,
18:12, 18:14, 18:20,
20:4, 20:14, 46:14,
60:9, 60:25, 76:2,
91:23, 92:1, 94:21,
95:14, 95:16, 96:7,
102:21, 107:4,
112:18, 152:4,
154:7, 154:9,
154:10, 156:4,
157:3, 172:9, 193:9,
193:15, 194:16,
194:17, 195:4,
208:10, 210:25,
220:25, 223:20,
223:22, 231:8,
267:3, 272:25,
274:22, 277:2
**files** [2] - 67:7, 67:10
**filing** [14] - 12:12,
12:20, 47:24, 83:16,
85:17, 89:24,
133:16, 150:18,
189:1, 195:7, 195:9,
209:4, 267:18
**filings** [5] - 18:22,
20:10, 177:23,
194:18, 208:14
**filling** [1] - 248:2
**fin** [3] - 47:19, 135:21,
136:18
**final** [19] - 12:10, 19:3,

23:18, 26:10, 50:17,
54:23, 55:13, 57:3,
63:22, 72:1, 75:14,
116:8, 138:24,
170:14, 178:19,
192:2, 238:7,
266:19, 279:2
**FINAL** [1] - 1:16
**finality** [2] - 22:17,
266:7
**finalize** [2] - 11:8,
39:13
**finalized** [2] - 39:8,
46:15
**finally** [18] - 17:10,
23:17, 29:25, 45:17,
47:16, 71:23, 78:19,
118:23, 156:8,
158:20, 169:21,
170:18, 174:2,
176:5, 190:22,
220:19, 273:20,
277:10
**financial** [6] - 14:3,
35:17, 92:6, 93:14,
136:3
**financials** [1] - 67:3
**findings** [1] - 15:25
**fine** [3] - 220:17,
222:21, 265:20
**finer** [1] - 71:21
**finfish** [4] - 47:16,
47:17, 76:14, 77:24
**finger** [1] - 95:11
**fingerprint** [1] -
255:16
**finish** [3] - 8:17,
113:19, 137:6
**firm** [4] - 26:7, 76:7,
194:18, 210:10
**firms** [9] - 55:19,
62:25, 72:10, 73:8,
91:8, 210:18, 212:1,
244:25, 245:1
**first** [64] - 8:1, 12:9,
13:13, 15:8, 18:11,
19:12, 26:5, 31:6,
32:25, 33:3, 36:22,
38:15, 41:7, 44:11,
52:18, 57:21, 77:6,
77:12, 78:12, 81:15,
82:11, 84:9, 88:10,
90:4, 94:2, 98:15,
99:14, 101:4,
101:22, 135:17,
138:17, 139:21,
139:25, 141:15,
141:19, 146:12,
154:24, 156:21,
163:14, 167:19,

Case 2:19-md-02179-CJB-DPC Document 23682-8 Filed 04/02/18 Page 300 of 329
Case 2:10-md-02179-CJB-DCW Document 13892-8 Filed 11/14/11 Page 299 of 328

19

168:6, 170:16,
171:10, 177:2,
180:11, 192:8,
210:7, 211:10,
217:21, 217:24,
232:23, 235:3,
243:8, 251:6,
251:10, 251:20,
257:11, 257:12,
263:11, 274:19,
275:3, 276:24,
277:12
**first-time** [1] - 217:24
**firsthand** [1] - 79:13
**fish** [3] - 59:15, 66:12,
144:4
**FISH** [3] - 133:12,
146:20, 172:7
**fisheries** [5] - 76:13,
77:23, 78:21,
133:13, 162:6
**FISHERIES** [1] - 1:12
**Fisheries** [1] - 7:15
**fisherman** [6] - 29:11,
42:24, 127:4,
133:11, 133:15,
162:4
**fisherman's** [1] -
175:20
**fishermen** [26] -
38:22, 42:10, 43:15,
43:23, 44:14, 44:19,
47:20, 133:18,
134:6, 134:7,
135:12, 135:21,
136:18, 136:19,
137:16, 141:22,
142:1, 142:2, 142:3,
142:18, 146:11,
147:21, 174:10,
174:16, 174:20,
174:21
**fishers** [6] - 76:9,
77:20, 78:17, 79:14,
79:18, 79:23
**fishery** [3] - 59:19,
59:20, 59:21
**fishing** [16] - 43:13,
44:15, 60:24, 77:19,
80:1, 127:4, 127:11,
133:8, 133:9,
133:20, 134:9,
134:25, 135:7,
136:1, 138:20,
162:13
**Fishkind** [1] - 71:7
**fit** [13] - 217:9, 230:17,
230:19, 234:6,
237:25, 242:20,
242:23, 247:13,

247:17, 247:18,
251:18
**fittings** [1] - 223:16
**five** [21] - 29:3, 47:11,
47:21, 56:3, 57:6,
57:17, 57:19, 73:14,
76:4, 87:12, 119:12,
137:24, 138:19,
149:5, 158:7, 189:7,
196:15, 218:14,
223:1, 268:20
**fixed** [2] - 109:1, 150:6
**flat** [3] - 110:25,
141:11, 141:12
**flavor** [1] - 90:22
**flaw** [2] - 103:15,
104:22
**flawed** [1] - 102:21
**flaws** [1] - 78:24
**flexible** [1] - 161:14
**flitted** [1] - 78:8
**flooded** [1] - 53:19
**floor** [5] - 8:25, 9:1,
122:20, 123:7,
270:23
**FLOOR** [1] - 2:4
**Florida** [26] - 13:16,
30:10, 55:8, 66:25,
71:8, 81:20, 101:13,
106:25, 107:2,
107:6, 107:12,
114:3, 114:4,
114:10, 121:15,
130:20, 131:4,
131:24, 138:1,
149:11, 152:2,
152:9, 223:9,
241:13, 246:22,
248:4
**FLORIDA** [1] - 4:22
**FLORIDA..................
...........................** [1] -
5:8
**flow** [2] - 129:12,
191:4
**flows** [2] - 125:11
**fluctuation** [1] -
148:11
**fluctuations** [1] -
148:9
**focus** [8] - 17:2,
52:22, 52:24, 53:21,
86:24, 96:3, 138:3,
139:5
**focused** [2] - 79:16,
142:7
**focuses** [2] - 181:5,
209:16
**focusing** [3] - 49:7,
134:20, 137:9

**folks** [12] - 104:18,
143:6, 144:15,
148:6, 223:5, 232:1,
232:2, 234:3,
236:23, 237:10,
237:11, 239:8
**follow** [9] - 20:23,
65:7, 91:1, 93:11,
138:18, 156:23,
212:14, 225:16,
274:22
**follow-up** [1] - 91:1
**followed** [2] - 89:20,
161:9
**following** [11] - 12:4,
52:22, 53:25, 67:11,
80:12, 177:14,
180:18, 204:24,
208:15, 264:10,
265:13
**follows** [1] - 53:2
**food** [1] - 247:10
**FOR** [4] - 1:20, 2:3,
2:10, 5:19
**forced** [1] - 208:1
**foregoing** [1] - 280:7
**foremost** [1] - 78:12
**foreshadowed** [1] -
72:2
**forest** [1] - 279:7
**forever** [1] - 111:21
**forget** [1] - 57:9
**forgot** [1] - 19:18
**form** [12] - 62:1, 89:8,
90:11, 92:18, 136:3,
195:21, 253:14,
253:15, 253:20,
258:3, 273:12
**formal** [3] - 10:9,
55:11, 271:20
**formally** [1] - 62:12
**former** [2] - 69:24,
78:19
**forms** [7] - 72:17,
83:15, 191:9,
194:20, 195:4,
195:9, 219:20
**formula** [9] - 23:2,
36:21, 37:13, 38:7,
38:10, 43:4, 47:2,
47:20, 49:3
**formulas** [7] - 21:19,
27:8, 139:17,
142:22, 159:10,
159:16, 160:2
**formulation** [1] -
238:24
**FORSYTH** [1] - 5:7
**Forsyth** [4] - 149:10,
152:8, 223:4, 228:6

**FORSYTH..............** [1]
- 5:25
**Fort** [3] - 105:17,
105:23, 106:20
**forth** [17] - 10:13,
10:17, 29:11, 30:20,
35:11, 51:13, 82:16,
86:2, 87:22, 97:14,
97:17, 136:19,
144:13, 186:16,
213:2, 217:6, 269:3
**fortunate** [1] - 199:22
**forty** [1] - 98:24
**forty-plus** [1] - 98:24
**forum** [1] - 16:5
**forward** [9] - 22:21,
22:22, 103:15,
111:22, 112:15,
115:1, 116:1, 119:4,
192:17
**fosters** [1] - 53:15
**fought** [3] - 25:16,
35:21, 115:13
**foundation** [1] -
192:14
**four** [17] - 54:23,
56:22, 62:24, 72:9,
73:8, 77:23, 90:1,
95:23, 143:10,
177:24, 189:3,
201:4, 203:17,
242:8, 243:6,
263:11, 264:23
**four-phase** [1] - 201:4
**four-year** [1] - 143:10
**fourth** [3] - 15:15,
18:2, 170:7
**fraction** [2] - 56:17,
58:18
**frame** [6] - 28:5,
182:7, 187:4,
187:22, 257:5, 260:9
**frames** [2] - 230:19,
234:12
**framework** [6] - 42:17,
119:22, 130:19,
132:8, 232:12, 235:4
**frameworks** [7] - 29:2,
34:16, 36:16, 39:7,
42:14, 44:7
**Frances** [1] - 169:1
**FRANCISCO** [1] - 2:4
**frankly** [11] - 42:20,
44:12, 111:1, 155:7,
157:19, 221:15,
227:25, 254:23,
258:24, 269:17,
272:19
**fraud** [1] - 17:24, 65:1,
212:21

**free** [5] - 35:4, 42:1,
43:2, 75:9, 226:11
**free-standing** [1] -
226:11
**frequently** [3] -
188:13, 189:14,
189:17
**fresh** [1] - 241:7
**Friday** [2] - 213:1,
213:5
**fried** [1] - 247:10
**friendly** [2] - 22:15,
22:18
**frivolous** [1] - 272:20
**FROM** [1] - 4:11
**front** [9] - 68:20,
122:17, 122:20,
125:6, 125:10,
126:20, 223:23,
240:14, 246:23
**frustrating** [1] - 67:12
**frustrations** [1] -
167:7
**fuel** [1] - 14:5
**full** [7] - 23:8, 23:10,
24:25, 63:22, 86:23,
189:15, 238:6
**fully** [5] - 39:9, 227:3,
251:12, 252:20,
254:22
**fumes** [1] - 199:16
**function** [2] - 237:20,
238:2
**fund** [30] - 28:13,
28:18, 30:5, 30:8,
30:15, 30:16, 38:18,
44:8, 63:24, 64:3,
79:15, 136:6,
137:16, 141:22,
150:1, 157:1, 157:4,
157:14, 164:17,
165:13, 176:12,
176:14, 176:15,
177:3, 195:18,
206:1, 247:12,
257:25
**Fund** [2] - 79:17,
149:24
**fundamental** [10] -
70:9, 103:10,
103:15, 104:22,
106:9, 135:23,
135:25, 142:5,
173:11, 176:9
**fundamentally** [2] -
28:19, 162:10
**funded** [1] - 28:23
**funding** [2] - 143:4,
153:2
**funds** [4] - 27:25,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 301 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 300 of 328

20

136:7, 228:18, 274:15

**furthers** [1] - 51:7

**future** [29] - 27:4, 27:11, 32:14, 34:6, 34:14, 34:25, 35:1, 37:6, 58:1, 59:16, 60:18, 60:23, 74:25, 143:3, 144:25, 146:6, 147:24, 195:19, 206:4, 206:5, 207:15, 207:20, 212:3, 265:4, 266:6, 273:23, 274:6

---

**G**

**gain** [1] - 28:25
**gallery** [1] - 109:7
**gambling** [1] - 14:4
**game** [1] - 110:8
**gaming** [1] - 88:21
**gap** [1] - 90:13
**gaps** [2] - 90:8, 90:19
**Garden** [3] - 63:9, 74:7, 82:21
**Garner** [2] - 119:9, 121:9
**Garretson** [6] - 209:14, 209:15, 209:21, 219:19, 220:5, 253:1
**Garside** [1] - 133:4
**gas** [3] - 14:4, 86:10, 88:23
**GASAWAY** [1] - 2:24
**gather** [1] - 82:17
**GCCF** [33] - 11:20, 14:19, 21:16, 21:20, 21:21, 22:13, 23:10, 23:13, 23:16, 57:9, 57:13, 63:25, 64:8, 66:17, 66:23, 79:22, 79:23, 80:4, 88:16, 91:21, 114:5, 118:18, 118:19, 118:22, 140:15, 141:1, 159:5, 160:18, 160:23, 160:24, 161:11, 182:21, 235:22
**General** [4] - 17:12, 23:9, 30:13, 71:20
**general** [5] - 31:7, 222:1, 255:10, 265:1, 276:9
**generalize** [1] - 250:7
**generally** [12] - 24:13,

29:2, 35:14, 44:17, 44:18, 44:24, 131:12, 151:3, 164:21, 181:9, 214:5, 220:10
**generate** [1] - 176:24
**generated** [2] - 40:1, 141:24
**generic** [1] - 273:12
**generous** [16] - 57:25, 59:9, 59:17, 60:17, 73:5, 74:24, 78:24, 148:15, 148:18, 178:9, 185:22, 212:19, 215:20, 221:2, 267:10
**generously** [1] - 50:6
**genesis** [1] - 177:1
**gentleman** [1] - 259:25
**genuinely** [2] - 112:10, 234:19
**geochemistry** [1] - 70:2
**geographic** [7] - 13:13, 44:25, 103:8, 103:12, 159:21, 193:20, 205:11
**geography** [2] - 103:2, 103:25
**geomorphological** [1] - 70:11
**gerrymandered** [4] - 102:19, 103:22, 104:13, 104:23
**Gibson** [4] - 105:14, 105:19, 105:22, 105:23
**giveaway** [1] - 155:5
**given** [11] - 26:13, 34:11, 54:13, 80:22, 90:20, 134:18, 155:8, 170:9, 218:10, 244:12, 272:22
**global** [6] - 60:20, 150:5, 172:19, 172:22, 235:15
**globo** [1] - 46:9
**GM** [1] - 62:6
**GO** [3] - 133:12, 146:20, 172:7
**go-around** [1] - 157:14
**goal** [7] - 26:8, 51:13, 53:7, 180:23, 181:16, 238:6, 246:19
**goals** [5] - 51:7, 51:12, 53:13, 53:21, 190:1

**GODFREY** [21] - 2:20, 49:19, 58:11, 58:13, 62:11, 66:6, 168:3, 168:21, 174:11, 174:21, 175:17, 208:6, 209:6, 210:7, 210:11, 217:10, 220:14, 222:22, 261:4, 263:9, 268:18
**Godfrey** [19] - 27:20, 29:5, 46:7, 49:18, 49:20, 67:7, 94:5, 96:23, 120:11, 124:18, 126:3, 160:11, 165:21, 168:2, 208:5, 252:8, 258:15, 261:3, 263:8
**GODFREY**................. ..........................[4] - 4:14, 5:11, 5:21, 6:9
**Goldstein** [1] - 218:11
**Golf** [1] - 107:7
**golf** [2] - 107:8, 107:9
**Google** [1] - 247:9
**governed** [2] - 15:7, 250:2
**governing** [1] - 63:1
**government** [14] - 27:10, 37:7, 65:23, 66:8, 66:10, 78:20, 209:25, 213:20, 215:11, 220:4, 235:3, 236:25, 271:25, 272:1
**governmental** [1] - 14:6
**governments** [2] - 30:17
**grade** [1] - 235:12
**grading** [3] - 235:4, 237:4, 237:7
**Graham's** [3] - 105:18, 105:19, 105:21
**Grand** [10] - 128:15, 128:17, 128:18, 128:19, 128:20, 128:22, 128:25, 129:14, 171:22
**Grant** [1] - 62:7
**granted** [1] - 80:24
**grantees** [1] - 196:12
**granting** [1] - 126:18
**grass** [3] - 118:1, 118:3, 173:23
**grateful** [1] - 241:23
**great** [14] - 49:5, 69:16, 83:11, 133:11, 195:6, 226:21, 244:3, 266:10, 276:5,

277:25, 278:1, 278:11, 278:14
**greater** [10] - 30:19, 35:3, 61:1, 113:21, 188:2, 196:17, 239:3, 239:8, 258:18, 258:20
**greatest** [8] - 133:24, 180:23, 180:24, 257:20, 258:12, 258:13, 277:17
**greatly** [2] - 255:23, 273:2
**Greene** [1] - 39:25
**greener** [1] - 173:23
**Greenwald** [7] - 180:13, 206:1, 209:22, 213:3, 213:25, 260:24, 261:6
**GREENWALD** [23] - 2:7, 180:12, 183:3, 186:17, 186:22, 186:25, 187:6, 187:25, 188:16, 189:3, 192:1, 192:3, 192:5, 192:9, 192:12, 193:22, 251:7, 251:17, 252:5, 252:24, 253:12, 255:11, 260:25
**GREENWALD**........... ..........................[2] - 5:16, 6:7
**grew** [1] - 173:22
**grievously** [2] - 232:2, 237:9
**gripe** [1] - 115:15, 151:20, 151:21
**gross** [6] - 58:10, 138:11, 141:18, 141:20, 142:25, 144:20
**ground** [5] - 25:18, 26:8, 57:15, 106:22, 128:22
**group** [22] - 29:9, 30:2, 78:6, 79:16, 79:21, 94:11, 94:13, 95:13, 97:13, 133:11, 136:18, 166:5, 168:12, 170:20, 176:23, 181:17, 209:15, 209:21, 210:4, 230:18, 241:11, 245:10
**Group** [3] - 209:14, 219:19, 253:1

**groups** [6] - 25:5, 29:10, 91:7, 133:12, 136:21, 250:7
**grow** [1] - 175:12
**growing** [2] - 175:12, 175:25
**guarantee** [5] - 64:14, 139:8, 144:23, 275:16, 275:19
**guaranteed** [8] - 27:23, 57:8, 57:17, 63:24, 139:10, 139:12, 214:6, 274:8
**guarantees** [1] - 65:1
**Guardian** [1] - 71:20
**guess** [12] - 43:21, 84:24, 85:12, 100:1, 127:5, 156:8, 161:21, 174:15, 199:19, 206:15, 244:13, 272:9
**guidance** [3] - 17:11, 52:6, 198:8
**guided** [2] - 198:13, 198:14
**guise** [1] - 265:21
**GULF** [1] - 1:5
**Gulf** [76] - 7:12, 9:7, 10:21, 13:16, 30:9, 30:16, 30:17, 30:18, 37:22, 38:3, 45:1, 50:1, 50:25, 53:16, 54:3, 54:17, 57:10, 57:23, 59:13, 59:16, 59:19, 64:3, 71:3, 75:10, 76:18, 77:11, 77:23, 78:17, 78:21, 79:15, 79:17, 81:17, 94:19, 106:16, 122:6, 122:17, 122:20, 123:12, 123:14, 125:2, 125:11, 126:20, 127:8, 129:11, 129:13, 130:19, 130:25, 131:21, 132:3, 148:16, 161:25, 169:6, 180:24, 181:7, 182:18, 185:1, 189:8, 189:10, 189:23, 189:25, 190:5, 190:9, 191:7, 192:9, 192:19, 192:22, 193:2, 195:20, 195:25, 196:4, 196:16, 211:20, 216:8, 218:13, 220:24, 252:14

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 04/02/18 Page 302 of 329
Case 2:10-md-02179-CJB-DCW Document 23892-8 Filed 11/15/11 Page 301 of 328

21

**Gulf-front** [3] - 122:17, 122:20, 126:20
**Gulf-wide** [1] - 148:16
**guts** [1] - 53:1
**guy** [1] - 55:2
**guys** [4] - 39:2, 43:12, 70:1, 268:16

## H

**Hai** [1] - 60:9
**half** [18] - 34:18, 37:19, 43:14, 47:18, 94:3, 114:11, 116:12, 118:8, 141:25, 143:11, 143:15, 181:14, 182:12, 182:13, 208:23, 236:9, 240:25
**hall** [1] - 8:25
**Halliburton** [2] - 24:4, 185:21
**Halliburton's** [1] - 60:15
**hallway** [1] - 8:21
**Hammond** [1] - 82:20
**hand** [4] - 177:9, 187:10, 227:23, 265:7
**handing** [1] - 262:16
**handling** [2] - 270:3, 270:5
**hands** [2] - 38:21, 54:17
**hang** [1] - 26:22
**happy** [4] - 46:6, 112:15, 165:10, 224:16
**Harbut** [3] - 184:18, 189:5, 218:16
**Harbut's** [1] - 185:14
**hard** [14] - 25:16, 35:21, 37:16, 115:13, 162:5, 196:18, 219:14, 220:15, 232:21, 236:16, 250:9, 250:15, 278:22
**hard-fought** [1] - 115:13
**hardly** [1] - 198:19
**harm** [1] - 143:3
**harmed** [1] - 233:7
**Harold** [1] - 69:24
**harvest** [2] - 148:5, 175:11
**harvesters** [2] - 48:16,

135:20
**harvesting** [2] - 175:15, 175:25
**harvests** [1] - 174:6
**HAYCRAFT** [1] - 2:16
**hazards** [2] - 24:12, 27:3
**HB406** [1] - 3:15
**head** [3] - 162:15, 172:23, 247:16
**headache** [7] - 187:15, 187:23, 254:8, 254:18, 257:13, 260:8, 260:14
**headaches** [6] - 181:22, 182:4, 185:24, 186:15, 254:22, 256:13
**Health** [15] - 189:8, 189:10, 189:25, 190:5, 191:7, 192:9, 192:19, 193:2, 195:20, 195:25, 196:4, 196:16, 216:8, 220:24, 252:14
**health** [14] - 181:5, 184:23, 192:20, 215:16, 218:13, 232:24, 232:25, 243:13, 244:12, 247:6, 247:7, 247:11, 259:7
**healthcare** [6] - 190:3, 192:16, 196:5, 246:23, 251:1, 252:16
**hear** [10] - 46:19, 80:11, 80:13, 100:22, 111:10, 168:23, 184:8, 222:12, 222:23, 229:13
**heard** [6] - 99:11, 148:5, 168:18, 229:13, 246:11, 251:10
**HEARD** [1] - 1:17
**hearing** [16] - 8:5, 12:3, 12:9, 12:10, 17:14, 19:22, 99:14, 100:17, 120:22, 180:22, 186:3, 203:10, 225:3, 263:24, 263:25, 265:19
**HEARING** [1] - 1:16
**hearings** [2] - 156:5, 274:23

**hearsay** [3] - 102:24, 161:21, 221:15
**heart** [3] - 70:9, 238:2, 242:2
**heaviest** [2] - 70:16
**heavily** [2] - 135:17, 135:18
**HEIMANN** [1] - 2:3
**held** [2] - 127:23, 170:20
**help** [10] - 91:6, 92:22, 92:24, 93:5, 135:16, 156:13, 232:4, 239:4, 239:11, 247:11
**helped** [1] - 241:22
**helping** [3] - 11:2, 166:13
**helps** [2] - 202:24, 216:23
**Hendrickson** [1] - 264:8
**Henley** [1] - 71:12
**Herculean** [2] - 241:6, 255:17
**hereby** [1] - 280:6
**Herman** [21] - 20:22, 27:20, 30:25, 31:2, 31:3, 40:14, 42:3, 58:22, 73:24, 120:20, 124:18, 126:13, 127:24, 156:23, 160:5, 165:5, 168:1, 170:7, 171:14, 178:5
**HERMAN** [21] - 1:24, 1:24, 31:3, 42:8, 42:11, 48:11, 48:13, 48:15, 48:20, 48:23, 48:25, 49:3, 49:10, 49:14, 49:16, 160:5, 164:4, 165:6, 165:22, 165:25
**HERMAN...................** ......................... [2] - 4:13, 5:10
**herring** [5] - 59:23, 59:25, 60:1, 60:3, 69:22
**herself** [1] - 203:20
**Herzstein** [2] - 217:3, 218:2
**hide** [1] - 204:1
**high** [12] - 29:3, 35:2, 66:10, 158:14, 170:10, 186:8, 221:22, 233:13, 237:1, 238:21, 238:22, 250:25
**High** [1] - 250:23

**high-profile** [1] - 66:10
**high-quality** [1] - 250:25
**higher** [6] - 44:19, 44:23, 114:18, 158:15, 158:16, 158:22
**highest** [5] - 38:2, 38:3, 44:23, 48:10, 257:14
**highlight** [1] - 77:2
**highly** [3] - 24:15, 77:18, 79:5
**Highway** [7] - 104:19, 105:17, 107:6, 107:9, 107:16, 107:17, 116:24
**highway** [4] - 86:12, 103:6, 106:2, 111:12
**Hill** [2] - 233:16, 264:18
**hindsight** [1] - 265:7
**hint** [1] - 268:24
**hire** [4] - 28:20, 93:3, 207:12, 219:1
**hired** [5] - 25:7, 56:20, 77:16, 241:19, 250:3
**HISPANIC** [1] - 6:6
**Hispanic** [5] - 241:11, 242:10, 244:10, 250:2, 250:3
**historic** [1] - 50:5
**history** [4] - 50:10, 68:7, 80:23, 111:2
**hit** [5] - 147:22, 171:15, 172:23, 247:16, 268:6
**hold** [2] - 56:23, 236:1
**HOLDINGS** [1] - 2:14
**Holly** [1] - 71:9
**home** [4] - 123:2, 125:10, 125:16, 147:22
**homes** [1] - 126:14
**Honor** [197] - 19:13, 19:16, 20:19, 24:3, 24:7, 27:9, 27:16, 28:10, 28:20, 29:22, 30:21, 31:3, 31:14, 42:8, 42:11, 46:19, 49:16, 49:19, 51:10, 55:12, 59:2, 60:12, 63:9, 67:13, 68:8, 68:17, 70:24, 71:14, 71:18, 72:2, 74:18, 75:13, 75:17, 75:22, 76:1, 76:5, 76:13, 77:6, 77:12, 77:25, 79:2, 79:9, 79:12,

80:3, 80:8, 80:16, 80:20, 81:6, 81:14, 82:3, 85:16, 85:23, 86:21, 87:15, 88:5, 89:20, 93:17, 94:9, 95:12, 96:9, 96:19, 97:12, 98:2, 98:18, 100:11, 100:12, 101:14, 111:7, 115:24, 119:14, 120:2, 120:18, 121:13, 121:21, 121:25, 122:9, 122:21, 123:13, 124:9, 125:1, 125:15, 126:17, 128:3, 128:7, 128:18, 129:5, 129:17, 130:7, 130:10, 130:15, 133:2, 134:23, 138:17, 139:9, 148:3, 149:6, 151:10, 152:16, 152:25, 153:5, 153:25, 154:5, 154:23, 155:19, 156:8, 156:20, 157:8, 158:1, 160:3, 160:6, 164:6, 164:14, 165:6, 165:11, 165:22, 166:3, 167:4, 167:17, 167:24, 168:3, 168:14, 172:23, 174:11, 174:21, 176:12, 178:20, 180:12, 180:13, 180:20, 181:24, 182:6, 182:16, 183:5, 184:8, 185:8, 186:2, 187:25, 191:18, 195:17, 196:25, 199:14, 199:21, 202:9, 202:24, 204:21, 205:14, 205:17, 208:6, 209:6, 210:6, 210:16, 210:23, 214:24, 217:19, 218:21, 221:25, 222:11, 222:14, 223:2, 223:23, 224:16, 225:23, 226:20, 227:18, 228:5, 228:16, 229:10, 229:17, 229:21, 231:1, 231:22, 232:15, 234:24, 236:7,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 303 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 302 of 328

22

236:17, 238:16, 239:14, 239:19, 240:10, 240:22, 242:8, 242:11, 243:22, 244:3, 249:6, 251:7, 251:22, 260:18, 260:25, 261:5, 263:9, 265:10, 266:14, 266:21, 268:18

**honor** [1] - 239:12

**Honor's** [1] - 44:13

**honorable** [1] - 152:20

**HONORABLE** [1] - 1:17

**Honors** [1] - 149:13

**hook** [1] - 162:1

**hope** [7] - 28:22, 140:18, 161:20, 196:19, 216:6, 232:1, 241:15

**hoped** [1] - 268:7

**hopeful** [3] - 231:25, 232:7, 232:18

**hopefully** [6] - 23:20, 38:12, 47:1, 47:17, 219:2, 240:21

**hoping** [1] - 8:15

**HORIZON** [1] - 1:4

**Horizon** [3] - 7:12, 9:6, 9:24

**horse** [2] - 214:22, 214:23

**hospitality** [1] - 71:2

**hot** [1] - 241:21

**Hotel** [1] - 71:4

**hotel** [2] - 33:23, 175:2

**hotly** [3] - 158:19, 168:16, 215:25

**hour** [2] - 175:1, 270:18

**hours** [12] - 26:25, 56:15, 64:23, 186:16, 186:18, 202:21, 203:5, 230:8, 233:7, 260:13

**house** [3] - 168:22, 168:25, 231:14

**House** [1] - 129:25

**housekeepers** [1] - 45:8

**Houston** [1] - 10:1

**Howard** [3] - 186:4, 186:22, 214:1

**huge** [5] - 28:16, 82:20, 83:1, 249:23

**hugely** [1] - 264:24

**Huguley** [1] - 62:6

**human** [2] - 243:8, 259:10

**hundred** [8] - 21:2, 85:15, 153:8, 159:3, 186:10, 194:19, 224:20, 230:18

**hundred-plus-thousand** [1] - 159:3

**hundreds** [5] - 26:5, 26:24, 171:2, 244:10, 273:12

**hung** [1] - 278:3

**Huntsville** [7] - 107:22, 107:23, 107:25, 108:4, 108:7, 108:10, 109:6

**Hurricane** [1] - 13:1

**hurt** [1] - 143:7

**hurting** [1] - 148:7

**hydrocarbon** [1] - 132:4

**hyperbole** [1] - 264:5

**hypothetical** [1] - 160:25

**hypothetically** [1] - 161:11

**hypotheticals** [1] - 161:12

---

**I**

**i.e** [1] - 53:13

**idea** [9] - 37:20, 64:21, 96:20, 170:2, 220:6, 225:5, 237:10, 249:17, 278:8

**ideal** [1] - 37:14

**identical** [4] - 83:8, 83:9, 105:4, 186:6

**identically** [1] - 190:4

**identified** [5] - 17:23, 130:4, 177:22, 201:24, 243:15

**identify** [2] - 88:4, 243:14

**IFQ** [2] - 136:3, 163:21

**ignoring** [2] - 74:13, 161:2

**IL** [1] - 2:22

**ill** [6] - 110:21, 110:23, 232:2, 233:20, 237:14, 239:8

**illegal** [1] - 150:24

**illiterate** [1] - 232:19

**illness** [2] - 233:4, 257:15

**illnesses** [2] - 232:6, 259:22

**image** [1] - 213:8

**imagine** [2] - 255:14, 256:20

**immediacy** [2] - 205:12, 211:3

**immediately** [3] - 50:10, 211:8, 243:25

**immune** [1] - 233:18

**impact** [9] - 11:15, 54:2, 134:6, 148:6, 169:11, 218:12, 232:6, 237:20, 238:2

**impacted** [9] - 67:25, 135:18, 180:25, 182:2, 189:24, 190:3, 196:6, 250:12

**impacts** [2] - 78:13, 181:6

**impaired** [2] - 126:24, 126:25

**impairment** [2] - 120:23, 126:2

**impairs** [1] - 27:10

**imperfect** [1] - 34:4

**implement** [2] - 81:8, 82:4

**implementation** [4] - 22:8, 83:5, 84:19, 216:15

**implemented** [4] - 91:9, 91:15, 216:24, 237:4

**implementing** [3] - 50:12, 211:8, 216:12

**implication** [3] - 33:1, 34:3, 140:2

**implied** [1] - 17:6

**implore** [1] - 133:22

**importance** [1] - 217:20

**important** [16] - 14:10, 21:17, 36:22, 36:23, 52:22, 52:25, 69:10, 79:3, 164:6, 166:1, 196:1, 218:10, 249:14, 261:8, 261:15, 262:18

**impose** [1] - 129:17

**imposed** [1] - 213:15

**impossible** [2] - 33:3, 107:3

**impracticable** [1] - 15:9

**impression** [1] - 121:9

**impressive** [3] - 69:13, 183:21, 219:4

**improper** [3] - 150:25, 269:1, 275:15

**improve** [2] - 102:15, 190:1

**improved** [1] - 114:17

**improvement** [3] - 114:12, 117:20, 169:24

**improvements** [1] - 224:20

**IN** [5] - 1:4, 1:5, 4:21, 5:7

**in-house** [1] - 231:14

**inadequate** [4] - 221:8, 221:10, 222:10, 229:20

**INADEQUATE** [1] - 6:3

**inadmissible** [1] - 264:14

**Inc** [1] - 98:19

**INC** [8] - 1:11, 1:13, 1:14, 2:10, 2:12, 2:13, 2:14, 2:16

**incentive** [5] - 36:4, 36:6, 164:18, 165:17, 261:20

**inception** [2] - 85:4, 262:6

**include** [8] - 15:25, 120:14, 129:10, 163:15, 182:25, 234:22, 234:23, 247:1

**included** [12] - 101:20, 101:21, 114:10, 132:15, 132:22, 171:24, 193:13, 193:19, 237:2, 248:24, 267:8

**includes** [3] - 9:23, 134:25, 136:1

**including** [14] - 10:13, 13:19, 14:2, 44:6, 78:6, 133:17, 136:2, 153:6, 157:5, 176:18, 215:11, 223:24, 224:19, 261:10

**inclusion** [1] - 103:23

**inclusive** [4] - 114:6, 239:4, 239:8, 239:9

**income** [7] - 89:19, 135:22, 142:21, 142:23, 142:25, 143:11, 143:12

**incomplete** [7] - 86:3, 86:25, 88:12, 89:6, 89:12, 90:22, 90:25

**incompleteness** [5] - 86:23, 88:2, 91:6, 91:18, 92:13

**inconsistent** [1] - 84:2

**incorporate** [1] - 79:3

**Incorporated** [3] -

7:14, 7:15, 7:16

**increase** [6] - 79:22, 86:15, 86:16, 92:7, 190:2

**increased** [1] - 224:21

**increases** [2] - 106:13, 169:7

**incredible** [1] - 111:5

**incredibly** [1] - 196:1

**indeed** [10] - 50:2, 62:16, 69:8, 79:2, 148:18, 153:1, 168:9, 197:17, 201:2, 201:17

**indemnify** [2] - 238:8, 238:10

**independent** [7] - 37:25, 38:6, 40:25, 42:18, 65:9, 83:25, 94:11

**Indian** [1] - 107:7

**indicated** [3] - 86:18, 214:24, 242:12

**indicates** [1] - 93:25

**indicating** [1] - 250:2

**indication** [2] - 194:7, 194:24

**indicia** [2] - 192:6, 193:4

**individual** [19] - 9:14, 15:21, 20:13, 30:2, 32:7, 32:11, 32:15, 88:3, 88:9, 89:7, 91:10, 114:13, 124:16, 178:1, 202:22, 235:21, 236:25, 261:21, 277:9

**individualized** [3] - 26:9, 159:23, 202:18

**individually** [7] - 16:1, 29:9, 53:17, 59:7, 136:18, 154:1, 261:17

**individuals** [15] - 13:19, 21:7, 30:18, 71:16, 121:14, 210:24, 241:11, 242:4, 242:12, 244:11, 245:1, 245:9, 249:24, 250:12, 250:24

**industrial** [3] - 35:16, 35:23, 164:24

**Industries** [1] - 264:16

**industries** [2] - 14:4, 138:9

**industry** [28] - 29:10, 57:11, 57:18, 57:20, 57:22, 57:24, 58:3,

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 01/02/18 Page 304 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 305 of 328

23

58:5, 58:7, 58:17, 58:20, 58:21, 59:14, 59:17, 76:15, 77:19, 80:1, 88:21, 133:12, 134:25, 135:7, 137:25, 138:20, 141:18, 153:13, 162:13, 172:20

**inequity** [1] - 106:8
**infamous** [1] - 40:2
**inferring** [1] - 275:15
**inflated** [1] - 214:18
**influential** [1] - 198:20
**inform** [1] - 215:1
**information** [25] - 10:20, 10:22, 18:9, 22:20, 25:4, 25:6, 29:13, 66:4, 66:8, 86:22, 89:14, 96:25, 97:3, 118:13, 134:25, 156:12, 157:5, 157:12, 168:8, 190:13, 191:12, 191:13, 213:23, 271:20, 272:2
**informed** [3] - 169:13, 205:23, 273:10
**infrastructure** [2] - 216:23, 217:1
**infrequent** [1] - 237:18
**infringed** [1] - 128:2
**Ingalls** [1] - 35:23
**inherent** [1] - 170:23
**inherently** [1] - 102:25
**Initial** [1] - 129:25
**initial** [9] - 36:20, 64:5, 93:24, 177:23, 244:14, 247:2, 253:11, 257:9
**initiate** [1] - 81:8
**injunctive** [2] - 262:14, 262:25
**injure** [2] - 75:12, 184:2
**injured** [7] - 50:7, 74:20, 75:11, 169:22, 183:7, 237:9, 245:23
**injuries** [7] - 9:9, 17:4, 185:6, 209:16, 235:4, 244:4, 264:24
**injuring** [2] - 54:21, 75:10
**injurious** [1] - 263:15
**injury** [13] - 9:8, 178:13, 182:21, 182:25, 183:17, 206:16, 214:18,

222:5, 234:20, 237:1, 248:9, 256:8
**input** [2] - 134:19, 145:16
**inquired** [2] - 93:17, 267:24
**inquiry** [1] - 17:24
**insinuated** [3] - 110:20, 110:23, 110:25
**insinuation** [1] - 268:24
**insisted** [1] - 240:17
**insofar** [2] - 82:16, 94:1
**instance** [2] - 177:18, 226:16
**instances** [3] - 23:14, 159:17, 267:7
**instead** [4] - 137:9, 177:25, 178:3, 278:11
**instituted** [1] - 82:19
**institution** [2] - 196:12, 196:13
**institutions** [1] - 14:3
**instruction** [1] - 83:15
**instructions** [1] - 111:8
**instrument** [1] - 136:3
**insulting** [1] - 256:16
**insurance** [5] - 22:15, 22:25, 64:1, 234:3, 250:23
**intake** [1] - 82:20
**intend** [2] - 147:20, 160:7
**intended** [5] - 53:4, 147:16, 147:17, 259:7, 259:9
**intends** [2] - 73:25, 184:5
**intense** [1] - 50:2
**intent** [2] - 91:9, 110:14
**intention** [1] - 51:3
**intentionally** [2] - 218:23, 249:22
**interest** [6] - 13:7, 36:8, 165:17, 167:18, 171:3, 204:23
**interested** [3] - 76:18, 86:21, 86:22
**interesting** [2] - 46:21, 132:9
**interests** [9] - 15:16, 15:25, 116:4, 117:18, 119:4, 164:9, 164:10,

171:4, 171:5
**interim** [2] - 222:4, 232:3
**Interior** [1] - 37:6
**intermediary** [1] - 32:15
**interminable** [3] - 53:19, 54:11, 266:5
**intermittent** [1] - 181:11
**internal** [1] - 84:25
**internally** [1] - 83:21
**Internet** [1] - 220:1
**interpreted** [1] - 34:8
**interrogatories** [1] - 51:21
**interrupt** [3] - 224:23, 225:18, 245:16
**interrupted** [1] - 54:19
**interstate** [1] - 86:12
**intertwined** [2] - 189:11, 196:2
**intimate** [1] - 78:21
**intimately** [2] - 64:19, 65:3
**intraclass** [4] - 101:23, 104:25, 147:13, 165:12
**introduce** [1] - 100:17
**inures** [1] - 255:25
**invalid** [2] - 73:1, 73:13
**investigations** [4] - 65:23, 66:11, 271:25, 272:1
**invited** [5] - 82:23, 152:2, 152:3, 169:1, 249:4
**invoicing** [1] - 272:15
**involve** [4] - 161:4, 199:2, 199:6, 268:25
**involved** [17] - 64:19, 65:2, 76:13, 78:14, 82:8, 82:9, 98:22, 99:15, 99:21, 99:25, 100:1, 100:6, 111:3, 241:3, 267:20, 274:23, 277:21
**involvement** [6] - 52:1, 52:2, 100:7, 111:4, 213:20, 213:21
**involving** [4] - 9:5, 16:18, 198:11
**iron** [1] - 105:11
**irrebuttable** [1] - 68:16
**irrelevant** [1] - 59:10
**irrespective** [3] - 163:19, 163:20,

163:21
**IS** [2] - 4:5, 5:14
**Isaac** [2] - 13:1, 34:19
**Isaacs** [1] - 35:5
**Island** [1] - 129:1
**island** [1] - 129:2
**islands** [1] - 70:13
**Isle** [10] - 128:15, 128:17, 128:18, 128:19, 128:20, 128:22, 128:25, 129:14, 171:22
**isolate** [1] - 87:3
**Issacharoff** [4] - 31:11, 52:10, 69:15, 166:18
**issue** [56] - 16:10, 16:16, 16:18, 16:25, 36:18, 40:22, 40:23, 53:1, 70:4, 70:6, 71:17, 73:14, 75:14, 85:21, 91:17, 97:20, 101:20, 108:15, 114:22, 115:18, 115:19, 117:8, 122:2, 122:4, 122:11, 135:23, 135:25, 136:23, 155:25, 156:24, 165:22, 166:1, 166:2, 168:5, 177:9, 193:24, 205:3, 207:6, 211:10, 218:6, 220:12, 233:2, 234:14, 242:16, 243:13, 248:21, 249:19, 251:20, 254:24, 266:24, 269:16, 272:10, 272:22, 274:19, 275:18, 279:2
**issued** [9] - 11:18, 12:5, 29:15, 56:1, 56:4, 84:8, 84:10, 91:23, 98:4
**issues** [41] - 10:12, 10:13, 15:6, 22:11, 24:14, 31:8, 31:12, 31:24, 31:25, 32:7, 32:11, 32:12, 32:13, 32:15, 32:16, 32:21, 35:7, 71:25, 88:2, 101:5, 102:8, 145:25, 180:17, 180:18, 190:13, 195:14, 197:10, 200:21, 201:8, 201:13, 201:14, 201:22, 201:25,

202:18, 202:19, 229:23, 230:13, 239:7, 253:25, 260:21
**ISSUES**.................... ............... [1] - 5:17
**itch** [1] - 265:21
**item** [1] - 215:25
**itself** [5] - 23:10, 37:13, 109:10, 162:23, 206:16
**IV** [2] - 5:24, 223:3

**J**

**JAMES** [3] - 1:21, 5:6, 5:24
**James** [5] - 71:12, 149:9, 152:8, 223:3, 228:5
**JASON** [1] - 3:7
**Jason** [1] - 239:18
**Jeff** [1] - 78:12
**JEFFERSON** [1] - 1:22
**Jeffrey** [1] - 70:2
**Jessica** [2] - 217:3, 218:2
**Jim** [4] - 19:15, 39:25, 119:9, 156:20
**Jo** [2] - 240:16, 240:18
**job** [16] - 17:18, 17:20, 34:1, 55:19, 64:4, 64:23, 67:13, 114:18, 162:11, 229:1, 232:20, 240:14, 241:5, 268:12, 278:16
**Joe** [5] - 25:14, 29:4, 133:3, 158:4, 158:5
**JOEL** [1] - 3:5
**Joel** [1] - 133:3
**John** [2] - 29:7, 71:19
**join** [1] - 73:3
**joinder** [1] - 15:9
**joinders** [1] - 62:1
**joined** [2] - 54:14, 133:17
**joint** [2] - 68:24, 158:12
**jointly** [3] - 67:3, 278:7, 278:12
**Jones** [1] - 225:25
**JOSEPH** [1] - 3:6
**judge** [17] - 29:22, 29:23, 33:5, 52:1, 64:18, 64:21, 65:2, 112:14, 131:18, 186:7, 224:19,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 04/02/18 Page 305 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 304 of 328

24

235:11, 240:13,
245:24, 262:10,
270:4, 270:12
**Judge** [43] - 8:24,
10:1, 11:2, 11:7,
11:10, 11:14, 20:20,
21:5, 49:21, 52:7,
64:21, 80:17, 82:22,
87:25, 92:20, 95:11,
106:18, 107:3,
110:17, 111:4,
112:5, 118:7, 119:2,
132:13, 132:24,
158:18, 197:1,
212:24, 215:21,
225:10, 225:24,
235:14, 240:20,
251:4, 251:8, 251:9,
251:22, 266:21,
267:14, 268:9,
271:4, 275:20,
275:25
**JUDGE** [1] - 1:17
**judge's** [1] - 270:12
**judges** [1] - 224:17
**judgment** [4] - 116:8,
126:19, 262:10,
263:2
**judgments** [1] -
186:10
**judicial** [1] - 22:12
**Judicial** [1] - 9:22
**July** [2] - 84:9, 84:10
**jump** [1] - 200:14
**June** [10] - 12:15,
78:12, 78:14, 81:11,
84:6, 84:10, 85:5,
187:8, 264:17
**June's** [1] - 79:5
**JUNEAU** [33] - 3:10,
3:11, 80:16, 80:19,
87:12, 87:20, 87:24,
87:25, 88:5, 88:8,
89:20, 90:1, 91:2,
92:14, 93:12, 93:17,
95:5, 95:10, 96:9,
96:12, 96:15, 96:18,
96:22, 97:5, 97:10,
97:24, 98:2, 98:15,
98:24, 99:2, 99:8,
100:4, 100:11
**Juneau** [28] - 11:21,
11:22, 18:8, 22:9,
23:19, 30:5, 50:18,
55:18, 64:4, 72:22,
75:15, 80:12, 80:15,
87:1, 88:6, 88:7,
89:4, 91:12, 95:4,
95:8, 98:10, 112:15,
118:2, 156:13,

209:15, 278:3,
278:13
**Juneau's** [8] - 12:15,
21:25, 23:4, 28:5,
56:24, 168:8, 278:7,
278:12
**JUNEAU..................
.....** [1] - 4:16
**JUNEAU..................
..............** [2] - 4:17,
4:18
**juries** [1] - 34:9
**jurisdiction** [2] - 37:5,
82:23
**jurisdictional** [1] -
10:13
**jurisprudence** [3] -
50:23, 198:12, 262:7
**jury** [3] - 240:14,
258:6, 262:10
**justice** [3] - 50:25,
51:4, 226:11
**justifies** [1] - 54:23
**justify** [3] - 149:1,
178:16, 278:22

## K

**KATZ** [1] - 1:24
**Katz** [1] - 40:14
**keenly** [1] - 76:18
**keep** [5] - 92:19,
128:14, 145:7,
180:18, 265:17
**Kelley** [1] - 70:25
**Kellogg** [1] - 228:23
**Kentucky** [1] - 264:17
**kept** [3] - 152:18,
169:16, 219:16
**key** [2] - 53:12, 68:19
**Key** [1] - 231:2
**KEYS** [1] - 4:21
**Keys** [1] - 101:13
**kick** [1] - 210:21
**kicking** [1] - 219:16
**kickoff** [1] - 84:6
**kidney** [4] - 233:17,
243:24, 256:7,
256:19
**kids** [1] - 238:4
**kill** [3] - 168:12,
169:23, 242:5
**kind** [27] - 37:15,
37:20, 42:18, 42:20,
43:6, 55:2, 81:15,
83:17, 84:24, 92:22,
103:8, 110:12,
127:20, 136:15,
144:23, 148:11,

153:14, 159:5,
173:11, 176:14,
192:16, 212:4,
233:15, 243:20,
267:6, 268:25
**kinds** [1] - 90:22
**Kirby** [4] - 149:9,
152:8, 223:3, 228:5
**KIRBY** [2] - 5:6, 5:24
**KIRKLAND** [2] - 2:20,
2:23
**Klick** [1] - 39:25
**Klier** [1] - 225:25
**Klonoff** [9] - 31:10,
52:9, 183:10,
183:18, 183:20,
194:11, 197:21,
219:3, 219:11
**knock** [1] - 143:19
**knocks** [1] - 144:11
**knowing** [1] - 99:7
**knowledge** [7] - 34:4,
78:21, 99:12, 99:22,
213:23, 244:7,
252:18
**knowledgeable** [1] -
71:10
**known** [5] - 112:2,
112:3, 206:17,
247:19, 278:13
**knows** [18] - 9:4,
23:24, 59:2, 62:13,
66:16, 71:14, 95:6,
106:19, 158:1,
158:19, 170:19,
181:24, 181:25,
182:6, 188:1, 202:5,
208:7, 243:9
**Kornman** [7] - 122:23,
123:1, 123:6,
126:25, 128:5,
128:6, 171:17
**Kreller** [5] - 39:1,
75:19, 75:20, 75:23,
76:8

## L

**LA** [4] - 1:22, 1:25,
2:18, 3:16
**labor** [1] - 261:24
**labors** [1] - 26:11
**lack** [6] - 73:3, 106:24,
172:11, 211:2,
233:22, 250:23
**lacked** [1] - 22:13
**LAFAYETTE** [1] - 1:22
**lagoon** [1] - 125:11
**laid** [1] - 69:3

**Lamonica** [1] - 71:20
**Land** [2] - 123:20,
128:10
**landing** [4] - 46:13,
46:15, 46:22, 59:22
**landings** [2] - 46:24,
66:12
**landowner** [1] -
132:18
**landowners** [1] -
125:24
**Landry** [2] - 71:2,
106:11
**landscaper** [1] -
117:25
**landscaping** [5] -
107:13, 107:16,
108:2, 108:4, 109:9
**Langan** [2] - 29:5,
213:3
**LANGAN** [1] - 2:21
**Langston** [1] - 76:8
**language** [1] - 84:16
**large** [13] - 30:22,
54:16, 76:16, 79:1,
79:7, 80:5, 146:25,
147:12, 190:17,
241:11, 243:8,
261:16, 262:4
**large-scale** [1] - 243:8
**largely** [1] - 44:8
**largest** [7] - 21:3,
88:15, 93:12, 94:11,
94:14, 94:22, 134:5
**LASALLE** [1] - 2:21
**laser** [1] - 95:8
**last** [30] - 16:9, 16:19,
24:24, 25:9, 25:23,
26:11, 26:12, 49:24,
55:15, 63:10, 64:13,
72:11, 73:14, 73:25,
74:6, 97:11, 98:2,
134:11, 157:1,
161:6, 168:19,
172:9, 174:9,
177:21, 191:15,
196:7, 251:20,
270:20, 273:6,
278:17
**lasted** [2] - 56:11,
56:16
**lastly** [1] - 13:22
**late** [4] - 55:15, 56:11,
80:16, 276:12
**latency** [4] - 233:25,
243:11, 247:18,
256:4
**latent** [1] - 245:6,
247:15, 256:8
**later-manifested** [6] -

247:25, 248:13,
252:10, 255:20,
256:8, 257:1
**later-manifesting** [1] -
217:16
**launched** [2] - 216:18,
219:25
**launches** [1] - 105:10
**Laura** [1] - 70:25
**law** [64] - 10:13, 15:10,
15:20, 16:17, 24:22,
26:7, 32:11, 34:7,
52:13, 52:19, 53:23,
54:13, 55:3, 55:19,
61:4, 61:10, 61:18,
62:4, 62:25, 64:14,
64:25, 69:4, 72:9,
73:8, 91:8, 117:3,
117:6, 149:14,
151:18, 171:20,
176:13, 177:22,
178:3, 178:9,
178:15, 194:17,
206:20, 208:18,
210:3, 210:10,
212:1, 212:16,
214:8, 218:25,
221:9, 221:10,
221:24, 222:6,
226:8, 226:14,
226:16, 226:17,
232:18, 238:12,
242:4, 244:25,
245:1, 245:11,
248:3, 248:10,
258:5, 263:19,
264:25, 266:13
**Law** [2] - 23:10, 30:13
**LAWN** [1] - 239:24,
240:6, 240:7
**laws** [2] - 27:10, 37:4
**Lawson** [1] - 43:12
**lawsuit** [2] - 151:4,
155:6
**lawsuits** [2] - 9:14,
231:1
**lawyer** [13] - 28:19,
33:4, 41:4, 55:20,
63:18, 72:10, 98:23,
99:3, 170:1, 173:13,
263:12, 273:7,
278:15
**lawyer's** [1] - 61:8
**lawyers** [24] - 14:12,
26:5, 34:12, 40:8,
63:2, 64:22, 78:2,
110:19, 111:3,
167:12, 218:19,
220:13, 236:18,
242:19, 245:10,

245:25, 246:22,
246:23, 248:3,
250:15, 259:3,
270:20, 277:11,
277:12
**lay** [1] - 196:11
**laying** [1] - 210:17
**lead** [4] - 19:15, 61:5,
78:12, 233:17
**leading** [11] - 25:20,
31:9, 52:9, 52:15,
54:10, 56:20, 59:24,
69:11, 133:12,
166:17, 168:22
**leads** [1] - 272:6
**learn** [2] - 216:2,
240:9
**learned** [6] - 32:14,
74:6, 133:23,
155:10, 220:14,
251:17
**learning** [1] - 99:16
**leaseholder** [1] -
133:9
**leaseholders** [16] -
136:19, 137:1,
137:15, 138:4,
140:12, 141:24,
142:2, 147:17,
147:18, 163:21,
174:10, 174:14,
174:17, 174:18,
174:23, 175:16
**least** [32] - 23:7, 23:8,
28:2, 44:3, 54:12,
64:14, 73:6, 93:25,
113:7, 127:22,
130:23, 157:10,
161:22, 162:9,
174:14, 191:15,
194:19, 204:22,
212:10, 212:11,
212:13, 213:4,
213:5, 218:7,
241:10, 264:21,
271:17, 271:18,
272:20, 273:15,
276:11
**leave** [18] - 8:8,
135:10, 135:11,
165:1, 167:4,
168:14, 176:10,
203:13, 203:14,
203:18, 203:21,
204:2, 204:4, 204:6,
225:2, 225:8, 238:3,
250:6
**led** [3] - 9:11, 25:14,
267:18
**left** [14] - 38:18, 89:2,

94:25, 122:10,
125:5, 128:5, 128:9,
140:3, 140:5,
143:15, 148:1,
150:7, 150:10, 210:9
**leftover** [2] - 150:15,
150:16
**legal** [31] - 10:12,
15:5, 17:10, 18:15,
19:24, 26:21, 29:23,
31:25, 41:10, 50:10,
52:2, 52:9, 97:18,
127:21, 165:11,
171:14, 173:18,
173:19, 173:24,
178:7, 208:9,
212:19, 218:17,
226:20, 228:21,
231:17, 246:4,
248:7, 248:16,
266:3, 269:16
**LEGAL** [1] - 4:10
**legally** [7] - 15:2,
126:11, 126:12,
127:9, 127:25,
160:8, 160:9
**Leggett** [1] - 69:24
**legitimate** [4] - 50:6,
51:5, 64:10, 108:21
**length** [2] - 64:18,
169:12
**lengthy** [2] - 65:5,
266:5
**lens** [1] - 47:25
**Leohn** [1] - 125:14
**Leohn's** [2] - 125:20,
125:22
**lesions** [1] - 250:19
**less** [35] - 23:24,
35:17, 43:4, 44:11,
47:18, 51:4, 56:12,
59:4, 59:10, 61:24,
62:17, 103:3,
105:22, 109:20,
110:11, 132:10,
132:11, 137:19,
141:25, 145:22,
147:7, 148:10,
148:17, 150:6,
162:3, 169:11,
173:17, 178:9,
182:20, 207:9,
210:13, 219:10,
276:18
**lessen** [1] - 47:1
**lesser** [1] - 162:2
**lessons** [1] - 133:23
**lest** [1] - 134:1
**letter** [12] - 22:18,
40:2, 40:5, 40:18,

40:19, 41:11, 87:18,
87:22, 90:24, 97:15,
97:21
**letters** [5] - 84:10,
86:7, 86:20, 87:9,
273:12
**level** [5] - 46:10,
79:24, 147:12,
186:19, 188:1
**leveled** [1] - 86:16
**levels** [3] - 79:23,
188:2, 236:24
**LEWIS** [1] - 2:16
**LHWCA** [1] - 245:8
**liability** [15] - 9:16,
53:9, 66:3, 201:21,
203:1, 206:12,
207:1, 207:10,
221:25, 223:16,
238:21, 255:9,
255:15, 271:21
**liable** [1] - 37:8
**LIAISON** [1] - 1:21
**liaison** [1] - 166:12
**liberal** [1] - 45:22
**library** [8] - 190:7,
190:9, 190:10,
190:19, 191:8,
216:17, 217:6,
219:25
**LIEFF** [1] - 2:3
**lieu** [1] - 240:5
**life** [5] - 161:23, 162:4,
237:20, 238:12,
250:12
**light** [7] - 70:19,
215:7, 218:24,
239:2, 241:8,
262:22, 265:6
**likelihood** [4] -
106:13, 235:18,
238:21, 238:22
**likely** [7] - 16:5, 18:1,
169:21, 213:7,
259:9, 269:6, 269:9
**likewise** [1] - 19:4
**limit** [3] - 20:8, 202:3,
206:23
**limitation** [6] - 9:16,
9:17, 23:9, 32:12,
206:11, 207:8
**limitations** [3] - 39:20,
276:8, 276:9
**limited** [4] - 28:13,
28:14, 205:9, 206:21
**Limited** [1] - 100:5
**LIMITED** [1] - 2:15
**line** [18] - 28:20, 36:4,
36:5, 42:4, 74:18,
80:4, 103:6, 103:13,

104:3, 105:25,
106:1, 106:5,
125:17, 145:17,
149:2, 174:7, 222:7
**lines** [12] - 33:25,
36:10, 36:15, 103:2,
103:8, 103:12,
105:8, 117:23,
131:15, 131:17,
159:22, 164:2
**lingering** [1] - 34:25
**linked** [1] - 35:17
**LISKOW** [1] - 2:16
**list** [5] - 55:13, 55:14,
224:21, 278:9,
278:10
**listed** [2] - 243:18,
244:1
**listen** [1] - 250:11
**listened** [1] - 266:9
**listening** [2] - 19:21,
178:16
**litany** [1] - 37:2
**Litem** [1] - 71:20
**literally** [3] - 10:25,
82:13, 105:4
**literature** [3] - 184:22,
185:12, 233:12
**litigants** [2] - 34:12,
213:13
**litigate** [3] - 124:21,
145:1, 276:19
**litigated** [5] - 138:12,
235:7, 248:19,
262:11, 276:16
**litigating** [2] - 21:9,
277:21
**litigation** [64] - 10:9,
10:11, 14:20, 14:21,
16:2, 16:5, 18:1,
21:11, 24:12, 25:21,
26:16, 27:3, 30:2,
30:3, 40:9, 41:9,
41:16, 51:11, 53:20,
54:11, 56:11, 65:5,
65:8, 65:11, 102:18,
111:3, 116:1,
122:15, 132:18,
144:7, 144:15,
151:4, 178:1, 183:9,
183:13, 183:15,
183:25, 190:23,
198:2, 200:10,
200:12, 200:17,
201:8, 206:9,
206:17, 213:8,
216:10, 223:17,
234:22, 254:25,
255:2, 255:4, 255:9,
255:12, 255:21,

255:23, 266:5,
269:6, 269:9,
269:19, 269:22,
270:16, 273:24,
277:14
**Litigation** [6] - 9:22,
113:4, 116:7,
129:23, 129:25,
130:1
**litigations** [1] - 99:1
**live** [14] - 121:14,
121:15, 135:18,
190:8, 190:20,
193:19, 193:23,
194:4, 203:10,
225:1, 225:8,
225:12, 252:13,
253:3
**lived** [4] - 24:23,
181:13, 181:15,
267:14
**liver** [2] - 233:17,
243:24
**lives** [5] - 21:14,
106:19, 123:1,
125:2, 232:6
**local** [11] - 30:17,
37:4, 71:11, 107:5,
118:13, 169:13,
176:16, 176:24,
205:19, 205:20,
241:18
**locality** [2] - 169:17
**localized** [1] - 205:21
**located** [7] - 105:13,
105:16, 107:12,
107:20, 107:22,
129:12, 132:5
**location** [2] - 205:11,
207:16
**locations** [1] - 241:13
**logic** [2] - 105:24,
106:6
**logical** [1] - 125:18
**London** [1] - 25:2
**long-term** [4] -
161:25, 162:7,
199:3, 234:20
**long-time** [3] - 71:3,
71:10, 78:19
**look** [54] - 33:16, 39:7,
40:7, 46:21, 47:25,
55:3, 56:21, 58:25,
59:6, 62:23, 88:13,
91:19, 94:10, 94:13,
103:20, 106:24,
106:25, 109:14,
112:2, 112:5,
112:14, 114:2,
117:21, 127:7,

Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 04/02/18 Page 307 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 306 of 328

26

127:18, 144:15, 154:3, 162:25, 163:17, 163:22, 165:8, 167:9, 175:22, 200:25, 201:1, 215:1, 221:9, 224:3, 234:24, 235:5, 236:4, 236:22, 237:16, 240:24, 248:12, 250:5, 250:15, 257:19, 272:21, 279:2, 279:10, 279:15

**looked** [19] - 33:15, 33:17, 38:2, 95:16, 136:17, 137:12, 169:18, 176:2, 198:17, 198:18, 198:20, 200:2, 200:3, 213:5, 219:14, 219:15, 235:20, 239:2, 248:8

**looking** [17] - 20:25, 26:20, 32:22, 35:11, 38:5, 124:2, 127:1, 134:14, 137:8, 142:17, 142:19, 143:12, 146:16, 162:20, 170:4, 236:21, 250:13

**looks** [3] - 37:24, 60:2, 278:24

**loophole** [1] - 243:16

**lose** [5] - 14:16, 144:22, 177:7, 177:9, 279:7

**loss** [60] - 13:18, 37:14, 41:12, 41:13, 44:7, 47:4, 47:8, 47:12, 47:15, 47:20, 48:6, 49:11, 50:12, 51:2, 51:17, 57:18, 59:8, 68:18, 92:15, 92:18, 92:19, 92:25, 101:5, 102:7, 102:19, 102:20, 102:21, 103:24, 105:2, 110:2, 113:17, 119:21, 120:19, 120:20, 120:24, 122:3, 126:1, 126:2, 126:13, 126:22, 143:25, 144:19, 144:25, 148:15, 148:19, 160:8, 160:9, 162:25, 163:1, 163:3, 163:8, 163:14, 168:16,

171:13, 171:24, 212:7, 277:5, 277:7
**losses** [16] - 45:10, 58:16, 58:23, 60:19, 60:24, 105:19, 105:20, 105:22, 133:8, 143:4, 146:6, 147:24, 274:6
**lost** [32] - 57:19, 57:20, 57:22, 57:24, 58:3, 58:5, 58:7, 58:8, 58:17, 58:18, 58:19, 58:21, 68:19, 89:19, 123:9, 127:17, 127:21, 143:11, 143:24, 144:4, 144:8, 167:7, 172:20, 237:19, 241:20, 265:23, 274:5
**Lott** [1] - 76:8
**Louisiana** [34] - 9:8, 13:14, 30:9, 55:8, 66:25, 67:25, 69:25, 70:5, 70:12, 70:14, 70:17, 70:20, 76:8, 78:20, 82:20, 106:19, 114:10, 129:1, 130:18, 131:1, 131:8, 131:22, 132:10, 138:1, 143:7, 148:4, 148:13, 158:8, 161:3, 186:4, 186:7, 246:23, 280:5, 280:6
**LOUISIANA** [2] - 1:1, 1:7
**love** [4] - 209:3, 244:18, 247:12, 247:14
**low** [4] - 29:3, 148:25, 215:11, 215:12
**lower** [2] - 161:19, 162:14, 221:23
**LSU** [2] - 71:6, 71:20
**lump** [1] - 234:6
**lunch** [4] - 8:11, 8:14, 8:16, 178:23
**luncheon** [1] - 179:2
**LUNCHEON** [1] - 5:13
**LUXENBERG** [1] - 2:6

# M

**ma'am** [3] - 203:13, 204:1, 204:6
**Macondo** [3] - 132:2, 132:15, 207:15
**Madison** [3] - 198:22,

199:25, 201:17
**magic** [1] - 158:3
**magistrate** [2] - 52:1, 64:18
**Magistrate** [6] - 52:7, 115:14, 197:1, 212:24, 229:25, 236:18
**Magistrate's** [1] - 22:3
**magnificent** [1] - 64:23
**mail** [4] - 22:19, 83:16, 191:21, 202:7
**mailed** [1] - 271:9
**main** [3] - 103:21, 246:25, 248:25
**maintained** [1] - 15:18
**maintenance** [3] - 107:13, 108:2, 109:9
**major** [7] - 78:13, 78:14, 92:13, 93:6, 134:11, 207:21, 245:19
**majority** [7] - 53:10, 73:7, 79:1, 80:5, 88:18, 209:2, 249:24
**man** [5] - 59:24, 158:10, 158:11, 237:14
**manage** [2] - 10:4, 16:9
**managed** [3] - 155:9, 201:9, 201:15
**management** [1] - 102:17
**Management** [3] - 10:4, 123:20, 128:11
**manager** [2] - 45:19, 68:19
**managing** [1] - 16:6
**mandated** [5] - 22:24, 22:25, 24:20, 30:12
**mandates** [2] - 22:14, 158:25
**manifest** [4] - 182:8, 202:20, 205:2, 257:6
**manifestation** [4] - 199:5, 230:12, 234:7, 257:10
**manifested** [9] - 190:24, 207:4, 233:7, 247:25, 248:13, 250:10, 255:20, 256:8, 257:1
**manifesting** [1] - 217:16
**manifests** [1] - 206:16
**manner** [1] - 109:12
**Manual** [3] - 113:3, 116:7, 129:23

**manufactured** [1] - 199:4
**map** [1] - 109:4
**maps** [5] - 35:11, 104:11, 106:21, 159:21, 165:8
**March** [2] - 11:9, 11:18
**marine** [1] - 69:20
**maritime** [6] - 61:4, 206:20, 238:10, 238:12, 248:10, 276:9
**Maritime** [2] - 23:9, 30:13
**market** [1] - 162:11
**marsh** [2] - 125:17, 181:15
**Marshal** [2] - 203:20, 224:25
**MARSHAL** [3] - 204:14, 225:5, 225:10
**marshaled** [1] - 70:22
**marshalling** [1] - 214:16
**marshes** [3] - 130:25, 131:10, 131:21
**marshland** [2] - 132:3, 132:14
**marshlands** [1] - 132:4
**Martha** [2] - 119:11, 119:15
**MARTHA** [1] - 3:4
**Marx** [1] - 239:17
**mass** [15] - 54:2, 62:23, 73:8, 98:13, 98:21, 98:25, 198:1, 198:15, 198:25, 205:20, 209:11, 261:8, 261:9, 261:10, 273:5
**masse** [6] - 97:2, 209:4, 212:8, 212:9, 273:4
**massive** [7] - 10:11, 74:17, 270:16, 271:19, 272:2, 279:9
**master** [3] - 98:19, 98:21, 99:9
**matched** [1] - 208:19
**material** [4] - 32:19, 55:14, 81:17, 84:6
**materially** [1] - 124:11
**math** [2] - 138:18, 147:18
**matrix** [25] - 146:25, 184:21, 185:11, 187:25, 212:25, 213:3, 214:4, 214:6,

217:13, 230:17, 237:17, 244:5, 247:17, 249:19, 249:21, 249:22, 256:3, 256:5, 256:10, 256:11, 256:20, 257:14, 258:18, 259:12, 260:15
**MATRIX** [1] - 6:2
**Matrix** [5] - 185:18, 195:23, 229:19, 248:25, 257:23
**matt** [1] - 119:18
**Matt** [11] - 54:25, 122:8, 122:12, 122:18, 123:18, 124:10, 128:14, 128:16, 129:8, 129:16, 208:16
**matter** [30] - 9:20, 14:21, 24:18, 27:16, 28:1, 39:6, 61:7, 61:19, 61:23, 61:24, 66:10, 67:17, 77:18, 81:14, 82:23, 102:13, 104:15, 104:17, 104:24, 110:1, 113:8, 113:9, 127:21, 132:4, 165:11, 167:18, 190:10, 266:22, 280:9
**matters** [2] - 15:24, 98:21
**Matthew** [2] - 169:4, 177:5
**maximize** [3] - 22:24, 110:6, 110:14
**maximum** [1] - 62:12
**McKee** [9] - 229:18, 229:22, 254:2, 254:11, 256:1, 259:5, 259:14, 260:2, 264:4
**MCKEE** [14] - 3:6, 229:21, 230:3, 231:1, 231:5, 231:11, 231:22, 232:15, 234:24, 235:12, 235:17, 236:7, 236:11, 238:16
**MCKEE'S** [1] - 6:1
**MCKEE...................
.....................** [1] - 6:4
**MDL** [5] - 7:11, 9:22, 10:1, 10:2, 14:8
**Meade** [1] - 56:21

Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 04/02/18 Page 308 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 307 of 328

27

**mean** [27] - 20:13, 33:10, 67:23, 70:20, 71:16, 110:7, 111:4, 112:3, 112:8, 132:12, 135:8, 137:21, 140:23, 143:21, 149:22, 155:8, 160:25, 213:9, 217:12, 227:19, 235:7, 240:6, 247:3, 252:5, 253:18, 269:6, 272:5
**meaning** [3] - 143:14, 146:3, 150:2
**meaningful** [4] - 61:18, 146:17, 215:21
**meanings** [1] - 247:22
**means** [16] - 16:24, 17:8, 34:16, 53:18, 98:1, 98:6, 99:16, 110:10, 112:19, 145:21, 148:16, 163:13, 170:22, 235:4, 257:3, 262:1
**meant** [2] - 53:4, 211:19
**measure** [4] - 54:5, 54:6, 59:4, 61:24
**measured** [1] - 51:18
**measures** [2] - 27:2, 134:3
**measuring** [1] - 144:9
**MECHANICAL** [1] - 3:18
**mechanism** [5] - 157:1, 161:8, 197:19, 226:7, 261:19
**mechanisms** [1] - 22:8
**media** [1] - 18:22
**mediate** [1] - 11:2
**mediated** [1] - 136:15
**mediating** [1] - 268:10
**mediator** [3] - 158:18, 267:25, 278:15
**medic** [4] - 251:21, 251:24, 252:19, 260:11
**medical** [64] - 7:21, 8:7, 8:10, 8:18, 19:2, 178:25, 180:9, 180:22, 181:3, 183:13, 184:4, 184:20, 184:22, 185:12, 185:24, 186:20, 188:5, 188:16, 188:18, 188:21, 189:25,

190:5, 190:13, 191:10, 191:18, 192:25, 196:19, 197:2, 197:5, 202:20, 207:3, 207:23, 208:9, 208:11, 211:15, 211:16, 212:18, 212:19, 215:24, 216:25, 217:3, 217:23, 218:5, 218:6, 219:21, 225:20, 226:22, 227:8, 232:9, 233:5, 233:13, 233:22, 235:22, 237:5, 248:24, 249:24, 252:1, 258:7, 259:22, 262:17, 262:25, 266:3, 266:19, 278:5
**Medical** [13] - 189:4, 189:11, 189:13, 190:19, 195:22, 215:23, 216:1, 217:12, 218:2, 220:22, 252:7, 252:11, 260:16
**MEDICAL** [3] - 4:8, 5:14, 5:20
**medically** [1] - 234:13
**medically-recognized** [1] - 234:13
**Medicare** [10] - 209:18, 209:25, 211:5, 211:7, 211:9, 216:13, 220:2, 220:3, 220:4, 220:6
**medications** [1] - 237:19
**meet** [6] - 13:17, 78:24, 92:9, 133:13, 200:15, 264:3
**meeting** [6] - 40:11, 264:25, 265:1, 265:2, 268:8
**meetings** [3] - 49:22, 50:4, 220:15
**meets** [4] - 197:8, 198:14, 198:25, 237:20
**MEL** [4] - 239:24, 240:6, 240:7
**MEL-A-CON** [1] - 240:7
**MEL-LAWN-SAUN** [3] - 239:24, 240:6, 240:7
**MELANCON** [21] - 3:7,

239:19, 239:22, 239:25, 240:9, 240:13, 240:20, 242:11, 242:17, 243:5, 243:22, 245:24, 246:11, 247:3, 247:10, 247:23, 249:2, 249:6, 249:12, 249:20, 251:4
**Melancon** [4] - 239:18, 251:3, 251:15, 251:16
**MELANCON.............. ...........................** [1] - 6:5
**member** [14] - 13:11, 31:17, 31:18, 31:22, 33:4, 76:23, 112:11, 161:17, 176:18, 177:25, 230:11, 252:24, 253:2, 254:14
**member's** [1] - 32:5
**members** [68] - 9:9, 12:12, 15:9, 15:20, 15:21, 16:3, 16:14, 17:22, 18:5, 18:13, 24:22, 26:13, 27:24, 28:1, 41:21, 46:4, 68:14, 72:7, 72:20, 74:20, 76:11, 119:20, 119:23, 120:3, 120:7, 121:12, 132:12, 151:4, 152:10, 153:11, 153:18, 154:25, 155:15, 156:10, 166:11, 182:20, 184:5, 184:12, 189:3, 189:7, 189:21, 190:22, 193:8, 193:12, 194:10, 194:21, 195:21, 196:2, 197:12, 205:23, 210:14, 216:9, 216:19, 216:20, 218:4, 218:13, 226:9, 227:2, 228:18, 230:2, 239:13, 252:5, 253:15, 262:4, 266:5, 272:13, 274:15, 279:15
**members'** [3] - 15:25, 16:11, 221:6
**membership** [1] - 154:6

**memoranda** [2] - 19:24, 20:5
**mental** [3] - 192:20, 218:12, 247:6
**mention** [9] - 84:15, 182:17, 192:18, 192:19, 195:1, 195:15, 196:7, 255:11, 257:2
**mentioned** [17] - 31:14, 85:14, 123:4, 161:14, 162:25, 166:4, 186:2, 186:19, 191:7, 195:25, 196:5, 200:1, 269:12, 270:9, 275:2, 275:3, 276:7
**mentions** [1] - 183:10
**mere** [1] - 20:11
**merely** [1] - 187:21
**Merit** [2] - 280:4, 280:14
**MERIT** [1] - 3:15
**merit** [1] - 279:4
**meritorious** [1] - 261:14
**merits** [6] - 18:3, 19:6, 68:6, 214:25, 238:20, 272:5
**met** [8] - 26:5, 29:8, 29:9, 135:4, 173:6, 218:18, 268:19
**Metal** [1] - 105:15
**methacholine** [1] - 250:21
**method** [2] - 54:2, 197:11
**methodologies** [4] - 77:8, 77:12, 77:22, 78:23
**methodology** [6] - 79:6, 161:4, 161:7, 161:12, 264:13, 267:19
**methods** [1] - 15:22
**MEXICO** [1] - 1:5
**Mexico** [5] - 7:12, 9:7, 30:9, 127:8, 181:8
**Miami** [3] - 240:3, 240:4
**MICHAEL** [10] - 3:11, 4:17, 87:25, 88:5, 88:8, 89:20, 90:1, 91:2, 92:14, 93:12
**Michael** [4] - 88:6, 184:18, 218:16, 235:24
**Michigan** [1] - 184:4
**middle** [1] - 128:10

**midmorning** [1] - 8:13
**midst** [1] - 81:22
**midwest** [1] - 173:22
**might** [23] - 32:17, 43:3, 108:18, 109:19, 125:15, 144:24, 158:6, 163:20, 164:4, 181:12, 182:13, 207:19, 207:22, 212:15, 217:22, 218:4, 232:7, 251:9, 254:2, 257:11, 257:12, 268:18
**MIKE** [2] - 5:6, 5:24
**Mike** [7] - 86:5, 87:1, 87:6, 87:24, 149:9, 152:8, 223:3
**mile** [3] - 103:4, 181:14, 181:16
**miles** [9] - 9:7, 104:3, 109:7, 113:21, 114:3, 116:23, 189:19, 189:21
**milestone** [1] - 50:16
**Miller** [6] - 31:11, 52:9, 69:12, 219:7, 219:8, 219:11
**million** [41] - 30:4, 30:6, 30:7, 56:2, 56:7, 57:10, 57:23, 58:15, 61:22, 64:2, 64:5, 84:22, 84:23, 86:19, 95:19, 112:16, 112:17, 140:5, 140:14, 146:10, 146:12, 152:12, 152:17, 153:7, 155:5, 155:11, 155:13, 155:16, 157:1, 157:13, 216:8, 216:16, 219:24, 224:20, 228:11, 229:11, 244:12, 247:5, 247:12, 275:1
**million-plus** [1] - 84:22
**millions** [5] - 10:16, 25:2, 82:13, 226:23
**mind** [2] - 81:11, 116:17
**minds** [1] - 40:11
**mine** [1] - 230:21
**minimum** [1] - 185:20
**minister** [2] - 45:25, 161:17
**Minnesota** [2] - 99:10, 223:13
**minor** [1] - 116:10

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 309 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 309 of 328

28

minority [1] - 266:8
minuscule [2] - 62:9, 63:11
minute [10] - 62:25, 81:25, 84:15, 120:15, 137:5, 139:23, 148:1, 164:25
minutes [15] - 76:4, 76:20, 100:21, 116:19, 119:12, 130:12, 130:13, 130:17, 149:5, 156:16, 156:18, 180:19, 223:1, 228:14, 268:19
miscommunication [1] - 40:10
misconduct [1] - 17:3
misleading [1] - 264:13
misreporting [1] - 19:9
misrepresentation [1] - 19:9
missed [2] - 49:22, 213:12
missing [3] - 90:9, 92:15, 222:18
Mississippi [17] - 13:14, 30:9, 35:20, 55:9, 71:12, 76:9, 78:20, 114:9, 121:15, 123:11, 130:20, 131:5, 131:10, 131:23, 137:25, 158:8, 264:19
Mississippi-based [1] - 71:12
misspoken [1] - 160:7
misunderstand [1] - 146:20
misunderstanding [2] - 14:11, 19:9
mitigate [1] - 41:11
mix [3] - 104:10, 117:15, 142:9
Mobil [1] - 214:3
model [2] - 56:23, 65:6
models [6] - 78:8, 83:4, 83:12, 83:20, 135:2, 159:13
modern [1] - 226:10
module [1] - 25:18
moment [4] - 52:20, 52:24, 85:6, 85:22
moments [1] - 29:24
monetarily [1] -

261:16
monetary [2] - 217:8, 261:15
monetize [1] - 26:14
money [60] - 22:16, 23:1, 23:18, 23:24, 24:5, 28:5, 38:21, 43:4, 54:16, 61:10, 68:6, 82:1, 83:9, 88:16, 99:17, 105:22, 107:10, 113:6, 113:8, 114:5, 124:15, 124:23, 126:22, 136:16, 137:23, 138:25, 146:4, 146:13, 147:3, 150:7, 150:9, 150:15, 150:16, 150:22, 153:4, 153:5, 154:21, 154:24, 155:8, 155:16, 155:17, 175:7, 175:7, 195:10, 211:9, 221:20, 225:21, 229:3, 229:6, 229:8, 229:9, 241:15, 244:13, 257:20, 262:1, 262:4, 262:19, 269:24
Monger [3] - 56:21, 57:2, 71:18
monies [1] - 140:25
monitoring [1] - 215:9
Monroe [3] - 33:24, 161:3
month [2] - 25:23, 270:21
monthly [5] - 92:18, 92:19, 92:22, 92:24, 92:25
months [27] - 23:10, 25:14, 35:9, 41:8, 50:2, 50:3, 56:14, 82:6, 82:7, 112:7, 115:13, 160:23, 161:3, 166:21, 168:24, 181:10, 191:9, 211:12, 211:13, 220:3, 237:12, 268:5, 268:20, 278:17
moreover [2] - 16:22, 202:1
morning [20] - 7:8, 7:23, 8:5, 8:16, 19:16, 20:19, 20:20, 31:3, 46:20, 49:19, 49:21, 75:17, 80:16, 80:18, 87:25,

155:10, 180:16, 182:19, 222:15, 222:17
mortality [1] - 237:17
mortgage [1] - 162:1
Morton [1] - 35:23
Mosher [2] - 38:24, 78:16
Mosher's [1] - 79:7
most [33] - 23:1, 23:14, 59:11, 62:24, 66:2, 69:12, 73:1, 73:15, 102:6, 131:4, 132:21, 133:25, 135:17, 135:18, 148:19, 169:21, 180:19, 183:21, 184:16, 189:21, 189:24, 190:3, 209:10, 211:25, 219:4, 258:22, 259:9, 262:19, 265:6, 269:10, 270:19, 276:8, 276:9
mostly [3] - 19:20, 131:5, 194:4
mother [1] - 268:13
motion [5] - 8:4, 9:11, 178:22, 200:13, 251:23
motions [2] - 126:18, 126:19
motivation [5] - 110:5, 110:15, 110:20, 110:21, 110:23
motivations [1] - 110:18
Motors [1] - 17:12
MOVE [1] - 5:19
move [7] - 85:6, 85:20, 92:12, 101:2, 111:22, 197:4, 238:15
moved [2] - 24:23, 166:5
moving [5] - 86:11, 86:12, 191:23, 278:21, 278:24
MR [267] - 4:12, 4:13, 4:14, 4:15, 4:17, 4:18, 4:20, 4:25, 5:1, 5:4, 5:5, 5:9, 5:10, 5:11, 5:21, 5:23, 6:1, 6:4, 6:5, 6:9, 19:13, 19:15, 20:19, 31:3, 42:8, 42:11, 48:11, 48:13, 48:15, 48:20, 48:23, 48:25, 49:3, 49:10, 49:14, 49:16, 49:19, 58:11, 58:13,

62:11, 66:6, 75:22, 76:1, 76:5, 80:16, 80:19, 87:12, 87:20, 87:24, 87:25, 88:5, 88:8, 89:20, 90:1, 91:2, 92:14, 93:12, 93:17, 95:5, 95:10, 96:9, 96:12, 96:15, 96:18, 96:22, 97:5, 97:10, 97:24, 98:2, 98:15, 98:24, 99:2, 99:8, 100:4, 100:11, 101:8, 101:12, 101:17, 101:23, 102:5, 103:9, 103:14, 103:20, 104:5, 104:7, 104:9, 106:4, 106:9, 108:8, 108:10, 108:14, 108:24, 109:25, 110:17, 110:23, 111:6, 111:14, 111:19, 112:1, 112:5, 112:9, 112:14, 112:25, 113:2, 113:11, 113:15, 113:20, 115:4, 115:9, 115:24, 116:6, 116:14, 116:16, 116:20, 117:1, 117:8, 117:13, 117:18, 119:8, 130:15, 131:2, 131:18, 133:2, 134:17, 134:23, 135:4, 135:7, 137:2, 137:4, 137:7, 138:17, 138:22, 139:6, 139:9, 139:12, 139:22, 140:20, 140:22, 141:3, 141:7, 141:12, 141:14, 142:15, 143:19, 143:22, 144:8, 144:22, 145:4, 145:10, 145:20, 145:23, 145:25, 146:8, 148:3, 149:6, 149:8, 149:20, 149:25, 150:3, 150:20, 151:1, 151:8, 151:17, 151:19, 151:21, 152:1, 152:7, 152:11, 152:14, 152:16, 152:20, 153:15, 153:17, 153:20, 153:24, 154:5, 154:9,

154:12, 154:15, 154:17, 154:20, 154:4, 155:14, 155:18, 155:22, 156:8, 156:14, 156:20, 160:5, 164:4, 165:6, 165:22, 165:25, 168:3, 168:21, 174:11, 174:21, 175:17, 208:6, 209:6, 210:6, 210:7, 210:11, 217:10, 220:14, 222:22, 223:2, 223:7, 223:9, 223:11, 223:15, 223:18, 223:22, 224:2, 224:6, 224:9, 224:16, 225:20, 226:3, 227:6, 227:11, 227:14, 227:18, 228:2, 228:5, 228:9, 228:16, 229:1, 229:5, 229:14, 229:17, 229:21, 230:3, 231:1, 231:5, 231:11, 231:22, 232:15, 234:24, 235:12, 235:17, 236:7, 236:11, 238:16, 239:19, 239:22, 239:25, 240:9, 240:13, 240:20, 242:11, 242:17, 243:5, 243:22, 245:24, 246:11, 247:3, 247:10, 247:23, 249:2, 249:6, 249:12, 249:20, 251:4, 261:4, 263:9, 268:18
MS [62] - 4:24, 5:16, 5:18, 6:7, 6:8, 119:14, 120:18, 121:5, 121:13, 121:21, 121:25, 122:23, 123:1, 123:5, 123:12, 123:16, 123:25, 124:4, 124:6, 124:9, 126:9, 126:12, 126:17, 127:11, 127:24, 128:14, 129:5, 180:12, 183:3, 186:17, 186:22, 186:25, 187:6, 187:25, 188:16, 189:3, 192:1, 192:3, 192:5,

192:9, 192:12, 193:22, 196:25, 199:14, 199:21, 204:21, 205:14, 205:17, 206:19, 207:2, 207:12, 207:18, 208:4, 251:7, 251:17, 252:5, 252:24, 253:12, 255:11, 260:25, 261:3, 261:5
**much-needed** [1] - 196:5
**Mullen** [1] - 198:21
**multibillion** [1] - 126:3
**Multidistrict** [1] - 9:22
**multiphase** [2] - 201:2, 201:7
**multiple** [9] - 22:20, 27:7, 32:16, 56:17, 63:23, 77:24, 155:9, 173:9, 205:18
**multiples** [2] - 58:15, 138:9
**multiplicity** [1] - 82:10
**multiplied** [2] - 47:8, 49:8
**multiplier** [6] - 48:21, 49:1, 49:8, 144:24, 160:18, 162:16
**multipliers** [4] - 79:4, 138:10, 274:4, 274:8
**multiply** [2] - 48:8, 144:1
**multiplying** [3] - 48:17, 48:18, 49:12
**Murphy** [5] - 194:6, 198:23, 200:5, 200:16, 201:1
**must** [11] - 13:12, 13:13, 13:17, 16:21, 16:22, 29:22, 102:15, 120:2, 152:5, 197:23, 220:14
**muster** [3] - 207:13, 219:17, 228:22
**myriad** [1] - 269:25

**N**

**N.W** [1] - 2:24
**nail** [2] - 172:23, 247:16
**name** [17] - 14:2, 59:25, 63:15, 73:17, 96:24, 119:15, 133:2, 149:8, 228:3, 239:21, 240:6,

240:17, 251:15, 262:13, 278:7, 278:10, 278:12
**named** [4] - 66:19, 72:10, 133:11, 152:7
**names** [2] - 97:3, 278:9
**Naples** [1] - 81:19
**narrowly** [2] - 205:1, 234:11
**nasal** [1] - 232:25
**nation** [2] - 199:6, 213:16
**nation's** [9] - 25:20, 50:22, 52:2, 52:8, 52:15, 54:10, 56:20, 69:11, 134:5
**national** [2] - 118:12, 175:3
**nationally** [1] - 25:25
**nature** [9] - 16:2, 16:23, 68:24, 74:24, 84:6, 170:10, 205:11, 211:18, 242:14
**nausea** [6] - 181:23, 182:5, 185:24, 186:15, 254:19, 256:13
**near** [2] - 212:3, 273:23
**nearly** [4] - 56:16, 69:13, 147:18, 177:18
**necessarily** [11] - 14:2, 90:17, 106:10, 113:25, 136:7, 142:3, 153:12, 220:9, 244:22, 254:12, 268:6
**necessary** [4] - 162:12, 170:19, 254:15
**need** [39] - 7:24, 8:21, 54:21, 65:20, 90:3, 92:12, 95:3, 116:11, 117:1, 117:15, 117:21, 135:15, 138:22, 147:22, 147:23, 165:2, 165:3, 175:7, 178:1, 187:11, 192:16, 203:7, 203:18, 203:21, 203:23, 204:1, 204:6, 207:9, 207:22, 236:15, 238:15, 239:11, 239:13, 246:6, 253:24, 259:18, 260:6, 276:21

**needed** [7] - 136:20, 188:5, 196:5, 209:23, 241:18, 261:2
**needs** [5] - 17:8, 22:21, 148:23, 175:9, 225:2
**negates** [1] - 246:2
**negative** [1] - 221:18
**neglected** [1] - 222:14
**negotiate** [8] - 25:15, 158:25, 160:12, 160:13, 211:6, 268:2, 272:3, 276:1
**negotiated** [10] - 24:1, 44:8, 62:14, 62:21, 64:18, 70:6, 136:14, 168:17, 180:22, 215:25
**negotiating** [7] - 25:13, 116:13, 158:16, 165:16, 166:8, 269:2, 277:22
**negotiation** [10] - 25:17, 25:24, 60:20, 61:7, 134:13, 160:10, 166:15, 166:21, 197:15, 268:25
**negotiations** [19] - 26:2, 35:10, 35:21, 36:7, 40:4, 50:3, 70:23, 115:14, 134:15, 164:8, 164:19, 169:12, 184:20, 267:17, 267:21, 268:5, 268:12, 268:14, 276:4
**negotiator** [1] - 61:5
**negotiators** [4] - 77:4, 79:21, 158:24, 168:22
**neighborhood** [1] - 96:5
**neighbors'** [1] - 125:12
**net** [6] - 58:12, 85:3, 138:11, 141:21, 144:21
**neurologically** [1] - 238:2
**neutral** [1] - 29:7, 29:12, 52:8, 59:5, 64:24, 157:4, 157:7, 157:11, 166:25
**neutrals** [2] - 78:3, 134:21
**never** [24] - 72:25, 79:23, 99:11, 99:20,

100:5, 103:7, 110:23, 111:20, 141:3, 141:7, 166:21, 166:22, 169:1, 169:2, 182:22, 183:9, 223:18, 233:2, 247:3, 248:14, 255:19, 265:18
**NEW** [5] - 1:7, 1:25, 2:8, 2:18, 3:16
**new** [2] - 140:5, 241:8
**New** [11] - 24:23, 25:2, 26:7, 52:18, 71:4, 123:1, 125:15, 129:25, 166:5, 213:6, 235:24
**news** [3] - 46:25, 47:17, 149:14
**Nexen** [1] - 210:19
**Next** [2] - 119:24, 173:15
**next** [41] - 25:12, 26:18, 50:19, 54:16, 63:8, 72:12, 73:23, 85:6, 85:20, 86:5, 86:6, 88:23, 90:18, 91:25, 92:9, 93:7, 95:3, 121:18, 122:8, 122:12, 122:18, 124:10, 124:17, 125:3, 125:9, 125:13, 125:19, 128:16, 129:8, 129:12, 129:16, 135:24, 150:2, 155:2, 173:1, 173:24, 187:10, 239:16, 253:8, 253:9, 276:10
**nice** [2] - 158:21, 249:10
**Niece** [1] - 175:6
**night** [7] - 63:10, 64:23, 72:11, 74:6, 172:9, 187:9, 254:7
**nine** [9] - 29:3, 47:9, 48:10, 48:18, 50:3, 162:21, 168:24, 245:25
**ninety** [2] - 56:3, 87:12
**ninety-five** [2] - 56:3, 87:12
**NO** [1] - 1:6
**NOAA** [8] - 46:13, 46:24, 47:5, 47:13, 47:18, 148:5, 163:2, 163:8
**NOAH** [1] - 46:15
**nobody** [4] - 104:21,

254:8, 254:21, 256:6
**NOIT** [2] - 240:17, 240:18
**Nolting** [2] - 39:1, 145:15
**non** [2] - 45:24, 57:6
**non-family** [1] - 45:24
**non-seafood** [1] - 57:6
**nonclass** [2] - 72:7, 228:18
**none** [10] - 37:12, 74:15, 89:15, 133:21, 133:22, 222:7, 233:8, 233:21, 244:14
**nonetheless** [8] - 130:13, 139:13, 139:14, 143:12, 198:19, 200:16, 241:21, 243:18
**nonfamily** [1] - 161:16
**nonplussed** [1] - 175:4
**nonseafood** [3] - 112:22, 153:12, 160:22
**nonseafood-related** [1] - 153:12
**nonsettling** [2] - 18:14, 18:17
**nonstarter** [1] - 168:24
**nontourism** [14] - 105:3, 107:11, 107:21, 107:24, 108:1, 109:13, 112:22, 118:6, 118:20, 118:24, 119:1, 153:12, 160:22
**normal** [2] - 148:8, 148:11
**normally** [1] - 108:24
**north** [1] - 169:10
**NORTH** [4] - 2:12, 2:12, 2:14, 2:15
**Northern** [1] - 264:18
**Northwestern** [1] - 150:21
**nosebleed** [1] - 254:18
**note** [6] - 36:22, 36:23, 46:21, 118:19, 183:12, 197:21
**noted** [6] - 18:7, 32:1, 166:3, 195:17, 215:21, 275:1
**notes** [5] - 194:11,

248:22, 249:3, 260:19, 265:17

**nothing** [26] - 25:17, 27:9, 41:8, 60:6, 67:18, 112:23, 118:13, 123:23, 125:24, 152:21, 155:5, 159:20, 166:6, 178:15, 178:16, 226:12, 228:13, 231:24, 232:4, 234:4, 237:14, 248:19, 260:2, 269:13

**notice** [13] - 12:11, 36:20, 85:9, 91:14, 95:18, 98:6, 112:19, 146:20, 172:9, 172:10, 202:6, 202:9, 205:22

**notices** [3] - 84:12, 85:21, 98:5

**notion** [6] - 59:18, 88:1, 88:25, 168:23, 170:14, 171:2

**notwithstanding** [2] - 72:17, 210:24

**NOVEMBER** [3] - 1:7, 7:2, 180:2

**November** [3] - 12:10, 13:5, 28:11

**nowadays** [1] - 270:22

**NRDA** [2] - 37:11

**nub** [1] - 101:21

**Number** [12] - 64:17, 65:4, 65:21, 68:5, 68:9, 125:16, 174:5, 176:11, 177:24, 189:3, 189:7, 243:8

**number** [56] - 8:2, 9:9, 12:8, 16:18, 18:10, 18:12, 20:9, 21:16, 30:11, 36:14, 39:21, 48:17, 48:18, 48:19, 49:6, 49:8, 55:6, 60:21, 63:7, 63:11, 74:12, 74:13, 76:12, 85:15, 85:24, 87:15, 89:23, 93:23, 94:3, 95:25, 99:18, 121:2, 143:20, 178:8, 178:11, 180:24, 184:15, 185:17, 192:7, 193:7, 193:17, 194:7, 194:10, 194:23, 208:19, 213:25, 220:19, 258:12, 258:13, 261:6, 267:2, 267:3, 268:5,

269:2, 270:16, 277:3

**numbered** [1] - 280:9

**numbers** [11] - 58:9, 62:8, 62:15, 62:16, 63:8, 72:1, 85:14, 94:5, 94:21, 210:20

**numerous** [9] - 9:14, 10:12, 10:17, 15:9, 31:24, 33:12, 82:8, 177:19, 271:24

**nutritional** [1] - 60:5

**NY** [1] - 2:8

**NYU** [1] - 69:12


## O

**o'clock** [3] - 8:12, 100:21, 178:24

**O'KEEFE** [1] - 1:25

**object** [25] - 15:2, 18:15, 18:24, 19:3, 55:20, 61:17, 63:14, 63:18, 63:19, 72:3, 73:20, 83:25, 121:23, 152:12, 152:16, 171:8, 193:18, 200:14, 221:7, 221:11, 227:12, 231:12, 241:2, 267:9, 267:12

**objected** [12] - 74:11, 117:10, 168:7, 172:10, 198:1, 211:25, 212:10, 231:10, 267:7, 267:8, 267:11, 274:17

**objecting** [9] - 36:11, 55:19, 55:23, 154:11, 208:23, 242:13, 263:18, 264:2, 265:19

**Objection** [2] - 122:6, 125:15

**objection** [51] - 20:13, 20:14, 24:7, 42:4, 43:6, 55:14, 73:6, 101:5, 137:20, 138:3, 142:5, 149:18, 152:4, 154:6, 157:19, 157:20, 171:10, 177:20, 177:21, 185:13, 196:10, 202:8, 209:11, 220:23, 220:24, 221:3, 221:6, 221:12, 221:19, 221:21, 222:5, 222:6, 222:25,

225:19, 225:20, 226:21, 227:25, 228:19, 228:20, 228:21, 229:3, 229:12, 229:18, 229:24, 246:25, 248:23, 249:1, 249:8, 251:2, 254:22, 257:24

**OBJECTION** [1] - 6:1

**objections** [60] - 12:12, 12:20, 12:24, 18:8, 18:11, 18:12, 18:14, 18:23, 20:4, 20:6, 20:10, 20:23, 24:8, 32:23, 39:21, 40:4, 41:16, 54:20, 55:5, 59:2, 71:24, 73:1, 73:21, 73:22, 74:16, 119:16, 119:19, 120:8, 133:17, 138:15, 141:10, 167:13, 174:14, 184:7, 185:8, 193:7, 193:9, 193:15, 194:9, 194:12, 208:20, 212:1, 212:12, 220:20, 220:21, 220:25, 222:7, 223:20, 223:22, 224:8, 227:19, 249:16, 251:14, 256:24, 267:4, 272:18, 272:24, 275:15, 279:3

**objective** [8] - 17:9, 21:20, 27:7, 37:25, 38:6, 159:17, 159:19, 202:4

**objectively** [5] - 21:8, 159:2, 159:10, 160:1, 197:13

**objectives** [1] - 69:16

**objector** [2] - 63:3, 63:6, 67:18, 125:1, 194:1, 208:25, 223:13, 224:1, 224:5, 224:13, 229:1, 243:2

**objectors** [60] - 24:6, 33:15, 34:20, 54:7, 61:13, 61:23, 62:5, 62:7, 62:8, 62:10, 62:17, 62:23, 62:24, 63:4, 65:7, 66:1, 66:2, 72:1, 73:1, 73:4, 73:7, 73:8, 73:19, 74:15, 74:19, 75:8, 75:9, 80:14,

100:22, 101:2, 110:24, 113:18, 120:10, 121:8, 132:21, 146:21, 177:12, 177:14, 178:17, 193:10, 194:3, 194:7, 195:14, 208:21, 209:10, 210:1, 210:2, 210:18, 213:12, 222:24, 224:11, 229:22, 230:1, 240:23, 267:9, 272:13, 272:14, 272:17, 275:13

**objectors'** [2] - 74:22, 222:12

**OBJECTORS'** [1] - 3:3

**OBJECTORS............
..............................** [2] - 4:19, 5:22

**objects** [1] - 152:5

**obligated** [2] - 55:13, 129:6

**obligation** [4] - 24:12, 37:3, 62:18, 74:4

**obligations** [2] - 37:1, 176:9

**observable** [1] - 21:20

**observation** [1] - 18:11

**observations** [2] - 20:24, 31:7

**observe** [2] - 225:11, 225:16

**observed** [2] - 50:15, 69:13

**obtain** [1] - 190:17

**obvious** [3] - 139:20, 273:17, 273:22

**obviously** [19] - 7:17, 7:24, 9:21, 20:16, 76:3, 76:18, 98:23, 102:8, 110:14, 132:13, 182:5, 215:18, 236:3, 251:25, 272:5, 272:11, 273:19, 277:19, 277:25

**occasion** [2] - 51:11, 268:13

**occur** [5] - 144:7, 207:5, 275:17, 275:19, 276:2

**occurred** [7] - 9:6, 12:18, 26:20, 37:16, 269:14, 270:13, 271:24

**occurring** [2] - 85:11,

85:18

**occurs** [3] - 34:19, 150:4, 191:19

**oceanography** [1] - 70:3

**October** [2] - 13:4, 26:4

**OF** [7] - 1:1, 1:5, 1:16, 5:2, 5:19, 5:20, 5:24

**offer** [2] - 68:6, 87:9

**offered** [4] - 56:18, 95:8, 213:15, 265:8

**offering** [2] - 54:8, 54:10

**Offering** [1] - 130:1

**offers** [2] - 80:4, 105:7

**office** [7] - 95:16, 95:17, 95:20, 99:6, 145:15, 168:8, 242:17

**officer** [1] - 240:15

**OFFICER** [1] - 203:25

**official** [3] - 47:5, 78:20, 163:2

**Official** [2] - 280:5, 280:14

**OFFICIAL** [1] - 3:14

**offs** [2] - 36:7, 165:19

**offset** [8] - 39:22, 39:24, 40:6, 41:15, 42:5, 42:15, 42:19

**offshore** [1] - 9:7

**often** [8] - 21:21, 103:12, 150:11, 150:14, 184:16, 219:10, 272:6

**OIL** [2] - 1:4, 1:4

**oil** [69] - 7:11, 9:11, 14:4, 21:3, 21:10, 35:15, 35:18, 50:7, 51:9, 53:5, 67:25, 69:22, 70:16, 70:17, 78:13, 78:15, 88:23, 123:15, 127:1, 128:21, 132:2, 132:10, 132:15, 133:13, 148:10, 160:14, 160:16, 164:21, 171:15, 175:21, 176:17, 180:25, 181:6, 181:7, 182:1, 182:2, 182:10, 182:15, 183:4, 183:7, 184:17, 187:20, 188:20, 188:22, 189:24, 190:4, 190:15, 198:12, 207:15, 215:15, 237:12, 243:14,

Case 2:10-md-02179-CJB-DPC Document 23682-8 Filed 11/04/18 Page 312 of 329
Case 2:10-md-02179-CJB-DPC Document 3892-8 Filed 11/04/11 Page 31 of 28

31

253:22, 254:7,
255:16, 255:17,
256:21, 257:12,
258:7, 258:9,
259:10, 259:18,
260:9, 261:11,
264:7, 269:13,
269:22
**Oil** [8] - 7:12, 134:10,
177:2, 198:23,
200:5, 200:16,
201:1, 214:3
**oil-related** [1] - 183:4
**oiled** [1] - 123:16
**oiling** [1] - 37:6
**oily** [2] - 187:9, 254:18
**old** [5] - 21:16, 28:19,
88:8, 98:11, 115:22
**ON** [2] - 1:5, 5:24
**once** [11] - 22:24,
75:11, 134:20,
152:25, 153:4,
191:17, 191:19,
192:2, 222:13,
234:2, 252:25
**One** [6] - 10:15, 10:24,
11:14, 25:8, 84:17
**one** [177] - 7:18, 11:7,
13:5, 13:17, 14:14,
15:4, 16:19, 16:25,
17:1, 17:24, 19:17,
23:22, 24:3, 25:18,
25:24, 30:11, 33:1,
36:9, 39:24, 41:3,
41:18, 42:4, 43:13,
43:20, 46:5, 46:20,
47:18, 49:12, 50:3,
50:19, 51:10, 51:19,
52:5, 56:20, 57:21,
59:7, 59:18, 60:17,
61:24, 63:20, 64:21,
75:10, 78:12, 84:14,
85:17, 85:25, 87:7,
88:23, 89:15, 91:3,
93:7, 96:13, 97:11,
97:25, 99:8, 99:12,
99:18, 99:25, 101:4,
103:19, 105:13,
105:16, 109:21,
111:11, 114:24,
116:12, 118:14,
118:19, 121:18,
121:25, 124:13,
124:14, 132:18,
133:19, 134:5,
136:8, 142:22,
142:25, 143:16,
143:19, 144:10,
147:6, 147:11,
148:1, 158:25,

164:20, 164:25,
165:22, 168:22,
168:24, 170:11,
171:3, 174:8, 174:9,
174:13, 175:2,
176:11, 178:24,
182:6, 182:13,
182:16, 183:19,
183:21, 184:9,
189:5, 189:13,
189:18, 190:1,
190:25, 192:7,
192:18, 192:19,
194:3, 194:17,
195:6, 195:10,
195:13, 196:9,
196:10, 198:11,
200:20, 200:22,
203:7, 207:25,
209:13, 212:1,
212:2, 212:9, 213:5,
213:11, 213:21,
214:1, 217:4,
218:18, 219:3,
220:22, 222:14,
224:23, 227:21,
227:23, 228:9,
229:9, 230:5, 230:9,
230:18, 235:17,
237:17, 240:25,
243:8, 243:15,
245:1, 252:6,
252:10, 253:8,
253:9, 253:25,
254:3, 256:3, 257:6,
259:2, 262:12,
262:17, 265:18,
265:20, 265:21,
269:2, 270:18,
271:9, 277:3
**ONE** [1] - 2:17
**one's** [1] - 53:20
**one-and-a-half** [1] -
240:25
**one-third** [1] - 41:18
**one-to-one** [1] - 43:20
**onerous** [1] - 276:18
**ones** [1] - 63:4, 74:10,
74:12, 94:16, 95:23,
99:22, 100:1
**ongoing** [1] - 242:18
**online** [3] - 83:16,
216:17, 219:25
**onshore** [1] - 245:12
**OPA** [15] - 23:9, 23:14,
30:12, 31:16, 31:21,
37:8, 41:12, 51:7,
53:3, 53:4, 53:13,
61:4, 222:4, 276:9
**OPA's** [1] - 53:21

**open** [3] - 70:12,
160:23, 244:18
**open-ended** [1] -
244:18
**opening** [2] - 172:3,
204:23
**openly** [2] - 147:1,
147:2
**operated** [1] - 82:21
**operating** [1] - 13:9
**operation** [7] - 12:16,
12:18, 21:25, 22:25,
23:20, 28:6, 30:23
**operations** [1] - 81:10
**operators** [1] - 42:10
**opinion** [7] - 77:7,
117:3, 127:22,
162:8, 195:10,
214:11, 272:6
**opinions** [19] - 18:4,
51:25, 52:1, 69:1,
69:2, 69:3, 102:21,
117:5, 120:3, 120:6,
157:13, 177:18,
214:10, 214:12,
264:13, 266:2,
272:12, 272:15,
274:25
**Opportunity** [1] -
13:21
**opportunity** [18] -
20:3, 21:13, 34:11,
50:16, 76:6, 114:19,
116:9, 127:17,
134:18, 146:18,
167:9, 216:2,
216:25, 217:21,
217:24, 253:20,
274:24
**oppose** [3] - 219:9,
228:1, 228:4
**opposed** [9] - 43:12,
47:4, 140:11,
160:15, 199:11,
199:20, 219:12,
263:19, 273:23
**opposition** [3] - 12:22,
140:10, 141:6
**oppositions** [1] -
141:10
**opt** [108] - 12:13, 13:8,
14:23, 14:24, 15:1,
18:8, 18:11, 18:12,
26:13, 28:2, 28:15,
35:4, 39:4, 42:1,
43:2, 55:5, 55:13,
61:17, 61:23, 62:2,
62:10, 62:17, 63:3,
71:24, 71:25, 72:3,
72:4, 72:7, 72:8,

72:9, 72:16, 72:24,
73:12, 73:18, 74:1,
74:8, 75:4, 75:5,
93:19, 93:23, 94:11,
94:14, 96:5, 96:6,
97:2, 97:20, 111:25,
112:13, 112:24,
113:10, 113:11,
113:13, 113:14,
113:15, 116:2,
124:24, 125:25,
132:19, 162:18,
163:24, 178:3,
194:15, 194:16,
194:18, 194:19,
194:20, 194:23,
205:24, 206:9,
209:1, 210:14,
210:15, 210:17,
212:7, 212:8,
216:10, 221:20,
221:21, 230:23,
234:21, 235:15,
235:16, 238:5,
246:9, 246:13,
246:15, 255:2,
255:4, 259:15,
259:18, 264:23,
265:2, 267:4, 267:5,
273:5, 273:10,
273:13, 273:18,
273:19, 274:1,
274:11, 276:22
**opt-in** [1] - 178:3
**opt-out** [19] - 55:13,
63:3, 71:25, 72:4,
73:18, 74:8, 75:5,
94:14, 97:2, 194:20,
206:9, 216:10,
230:23, 246:13,
255:2, 255:4,
259:15, 267:5
**opt-outs** [31] - 18:8,
18:11, 18:12, 55:5,
61:23, 62:2, 62:10,
62:17, 71:24, 72:4,
72:7, 72:8, 72:9,
72:16, 93:19, 93:23,
94:11, 96:5, 96:6,
97:20, 194:15,
194:16, 194:18,
194:19, 194:23,
210:14, 210:15,
210:17, 267:4,
273:5, 274:1
**opted** [19] - 28:11,
72:1, 73:4, 73:17,
74:12, 101:15,
101:17, 111:25,
112:1, 112:8,
113:15, 171:21,

193:16, 210:14,
211:25, 212:10,
230:22, 231:9
**opting** [5] - 13:3, 74:9,
97:22, 221:17,
273:21
**option** [18] - 28:10,
62:14, 62:18, 62:19,
62:20, 74:13,
124:24, 125:25,
182:19, 182:22,
190:23, 206:7,
206:18, 221:18,
254:25, 255:9,
255:12
**oral** [2] - 40:21,
100:14
**orange** [1] - 125:21
**oranges** [2] - 140:12,
142:6
**order** [19] - 11:18,
13:6, 20:7, 30:14,
48:14, 68:3, 72:18,
75:15, 81:6, 81:7,
94:1, 129:6, 201:9,
214:24, 248:8,
249:7, 269:13,
277:12, 279:16
**ORDER** [2] - 7:4,
180:4
**Order** [19] - 10:4, 12:6,
12:19, 29:8, 44:13,
50:11, 55:13, 63:5,
63:6, 63:13, 72:17,
73:2, 73:11, 73:20,
74:4, 74:5, 74:14,
81:1, 94:17
**Orders** [1] - 73:11
**orders** [4] - 12:8, 37:4,
63:1, 212:15
**ordinarily** [1] - 52:21
**organization** [1] -
172:8
**organizations** [3] -
14:6, 64:6, 156:10
**original** [4] - 46:8,
48:19, 49:9, 52:25,
53:25
**originally** [4] - 10:25,
12:24, 13:4, 278:8
**Orlando** [1] - 114:3
**Orleans** [8] - 24:23,
25:2, 26:7, 71:4,
123:1, 125:15,
166:5, 213:6
**ORLEANS** [4] - 1:7,
1:25, 2:18, 3:16
**otherwise** [9] - 73:13,
190:16, 196:20,
211:22, 213:18,

Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 04/02/18 Page 313 of 329
Case 2:10-md-02179-CJB-DCW Document 3892-8 Filed 01/04/11 Page 32 of 528

32

218:4, 242:6,
262:24, 275:5
**ourselves** [4] - 93:4,
113:25, 147:20,
218:24
**outcome** [3] - 53:3,
259:6, 259:7
**outcomes** [1] - 273:25
**outline** [1] - 213:25
**outlined** [4] - 82:5,
84:2, 89:21, 95:1
**outlines** [1] - 214:3
**outlining** [1] - 224:17
**Outreach** [15] - 189:8,
189:10, 190:1,
190:5, 191:7, 192:9,
192:20, 193:3,
195:20, 196:1,
196:4, 196:16,
216:8, 220:24,
252:14
**outreach** [8] - 90:24,
211:20, 216:16,
216:22, 217:6,
219:24, 244:13,
247:5
**outs** [31] - 18:8, 18:11,
18:12, 55:5, 61:23,
62:2, 62:10, 62:17,
71:24, 72:4, 72:7,
72:8, 72:9, 72:16,
93:19, 93:23, 94:11,
96:5, 96:6, 97:20,
194:15, 194:16,
194:18, 194:19,
194:23, 210:14,
210:15, 210:17,
267:4, 273:5, 274:1
**outside** [11] - 44:23,
70:14, 70:20, 92:3,
92:8, 193:20,
193:23, 194:5,
203:11, 225:9, 234:1
**overall** [3] - 43:1,
43:22, 194:13
**overarching** [1] -
32:24
**overcome** [2] - 74:17,
261:19
**overcompensated** [1]
- 174:16
**overflow** [2] - 8:23,
9:2
**overlap** [1] - 257:3
**overruled** [2] - 61:11,
117:12
**oversaw** [1] - 275:20
**oversee** [2] - 268:1,
271:4
**overseeing** [2] -

268:10, 268:12
**overseen** [1] - 115:14
**oversight** [1] - 52:6
**overstate** [1] - 58:6
**overview** [1] - 20:22
**overwhelm** [1] -
202:19
**overwhelming** [1] -
108:25
**owes** [1] - 134:1,
273:7
**own** [22] - 52:11,
53:24, 66:11, 66:16,
109:6, 121:14,
121:15, 123:24,
123:25, 124:16,
126:20, 128:11,
133:19, 151:6,
153:14, 171:19,
199:23, 225:17,
233:4, 234:21
**owned** [4] - 123:19,
129:10, 129:11,
153:8
**owner** [3] - 9:17,
45:19, 161:23
**owners** [7] - 48:15,
128:18, 132:23,
149:10, 152:1,
152:9, 163:21
**OWNERS** [1] - 5:7
**ownership** [3] -
127:13, 153:5
**owns** [2] - 123:25,
128:11
**Oxford** [1] - 176:23
**oyster** [22] - 47:5,
47:6, 48:4, 49:3,
76:14, 77:23, 133:8,
136:18, 136:19,
136:25, 137:14,
138:4, 140:12,
147:16, 147:17,
163:20, 174:9,
174:10, 174:14,
174:23
**oysterers** [1] - 173:21
**oysterman** [1] - 28:17
**oystermen** [2] - 29:10,
48:9
**oysters** [9] - 58:25,
59:3, 59:9, 148:12,
173:16, 173:17,
175:11, 175:15,
175:25

**P**

**p.m** [2] - 179:2, 279:19

**package** [1] - 10:7
**packaged** [1] - 270:10
**page** [7] - 53:25, 89:1,
89:2, 157:23,
157:24, 162:21,
265:18
**PAGE** [2] - 4:2, 6:15
**pages** [5] - 10:16,
25:3, 82:13, 160:21,
222:18
**paid** [53] - 23:15,
23:25, 27:25, 30:19,
47:3, 47:7, 47:11,
48:6, 56:7, 57:9,
57:13, 63:21, 91:21,
96:11, 99:7, 100:8,
109:19, 119:23,
140:14, 141:18,
145:6, 146:11,
147:21, 147:23,
160:23, 160:24,
162:17, 163:3,
163:13, 168:9,
182:21, 184:10,
184:11, 184:13,
185:25, 195:19,
196:14, 212:3,
221:2, 231:20,
235:9, 239:10,
241:16, 257:14,
275:11, 276:25,
277:1, 277:3, 277:4
**painful** [1] - 250:11
**painstaking** [1] -
196:12
**painting** [1] - 272:17
**PALMER** [59] - 3:6,
149:6, 149:8,
149:20, 149:25,
150:3, 150:20,
151:1, 151:8,
151:17, 151:19,
151:21, 152:1,
152:7, 152:11,
152:14, 152:16,
152:20, 153:15,
153:17, 153:20,
153:24, 154:5,
154:9, 154:12,
154:15, 154:17,
154:20, 155:4,
155:14, 155:18,
155:22, 156:8,
156:14, 223:2,
223:7, 223:9,
223:11, 223:15,
223:18, 223:22,
224:2, 224:6, 224:9,
224:16, 225:20,
226:3, 227:6,

227:11, 227:14,
227:18, 228:2,
228:5, 228:9,
228:16, 229:1,
229:5, 229:14,
229:17
**palmer** [1] - 149:4
**Palmer** [12] - 149:5,
149:9, 155:21,
168:6, 176:6,
222:25, 223:3,
223:12, 224:11,
224:15, 225:18,
227:25
**Palmer's** [1] - 176:18
**PALMER**..................
..................... [3] -
5:4, 5:5, 5:23
**paltry** [1] - 261:23
**Panama** [1] - 100:5
**panel** [2] - 155:9,
156:10
**Panel** [1] - 9:22
**panelist** [1] - 22:1
**panoply** [1] - 202:14
**paper** [2] - 30:5,
265:17
**papers** [5] - 32:1,
39:18, 60:9, 107:4,
157:3
**paragraph** [5] - 52:25,
63:5, 63:13, 174:6
**Paragraph** [1] - 73:12
**parameter** [1] - 242:23
**parent** [1] - 187:14
**parents** [1] - 64:14
**parity** [1] - 132:6,
209:7, 211:2
**part** [34] - 9:25, 24:11,
51:19, 51:23, 79:7,
87:2, 87:3, 87:5,
91:6, 91:13, 98:2,
99:19, 102:6, 131:4,
134:15, 140:14,
151:23, 154:2,
171:23, 175:14,
189:23, 192:8,
192:13, 192:17,
192:19, 209:11,
211:19, 212:8,
216:13, 216:14,
226:23, 229:11,
232:9, 271:17
**participants** [3] - 42:6,
42:19, 157:5
**participate** [8] - 28:7,
39:4, 80:6, 146:8,
146:22, 252:9,
267:16
**participating** [3] -

27:23, 28:1, 168:14
**particular** [16] - 16:5,
18:18, 66:19, 67:21,
76:15, 77:20, 79:4,
122:16, 123:17,
129:21, 134:19,
169:17, 171:25,
232:9, 252:20
**particularly** [6] - 44:7,
56:22, 59:18, 67:6,
111:2, 224:2
**particulates** [1] -
237:25
**parties** [49] - 9:19,
10:6, 10:14, 10:19,
10:23, 11:3, 11:6,
11:11, 11:13, 11:16,
13:1, 13:5, 15:3,
15:15, 17:19, 18:15,
18:17, 18:23, 20:1,
24:4, 53:10, 60:8,
66:4, 66:6, 66:14,
76:18, 103:16,
115:10, 116:9,
130:3, 131:16,
145:9, 150:14,
151:5, 151:6, 151:9,
151:13, 151:22,
232:10, 239:7,
268:7, 269:1, 269:8,
270:10, 272:2,
275:22, 278:8,
278:11
**partly** [1] - 278:16
**partner** [2] - 39:25,
78:3
**parts** [3] - 191:23,
252:15, 269:20
**party** [5] - 19:1, 31:15,
31:18, 147:10, 250:4
**Pascagoula** [2] -
35:20, 35:22
**pass** [2] - 24:11,
219:17
**passed** [1] - 237:15
**passes** [1] - 228:21
**passing** [1] - 233:16
**past** [13] - 23:8, 23:10,
32:10, 60:23, 143:4,
146:6, 147:24,
206:6, 206:8,
206:14, 255:21,
264:22, 270:14
**pastor** [1] - 71:13
**Pat** [1] - 11:22
**patch** [1] - 250:22
**patient** [1] - 188:21
**patients** [1] - 185:5
**PATRICIA** [2] - 5:6,
5:25

**Patricia** [3] - 149:9,
152:8, 223:3
**PATRICK** [25] - 3:10,
4:18, 80:16, 80:19,
87:12, 87:20, 87:24,
93:17, 95:5, 95:10,
96:9, 96:12, 96:15,
96:18, 96:22, 97:5,
97:10, 97:24, 98:2,
98:15, 98:24, 99:2,
99:8, 100:4, 100:11
**pattern** [1] - 103:22
**Paul** [2] - 210:4,
239:17
**pay** [27] - 21:6, 27:13,
37:17, 38:9, 45:12,
45:14, 56:24, 64:11,
64:13, 74:22, 89:8,
95:22, 110:15,
121:2, 126:13,
127:25, 138:25,
147:16, 147:17,
147:19, 161:5,
226:18, 234:5,
245:2, 246:22,
257:19, 274:14
**payable** [3] - 86:3,
86:6, 98:4
**paycheck** [1] - 90:10
**paying** [12] - 24:5,
27:17, 58:15, 58:20,
59:15, 100:3, 139:1,
153:2, 210:21,
211:8, 221:5, 248:4
**payment** [16] - 50:13,
50:19, 56:1, 56:25,
81:22, 99:13,
112:13, 119:20,
163:15, 163:16,
163:20, 196:15,
232:3, 236:1,
257:18, 273:22
**payments** [19] - 13:21,
41:22, 56:10, 57:17,
57:23, 63:25, 84:13,
95:19, 186:8,
186:19, 188:10,
191:3, 191:22,
191:23, 192:25,
195:19, 195:21,
195:23, 196:14
**payout** [1] - 27:23
**pays** [2] - 23:15, 23:18
**peaceful** [1] - 128:2
**Pearson** [2] - 59:25,
69:21
**peer** [1] - 233:12
**peer-reviewed** [1] -
233:12
**PEL** [1] - 236:24

**pen** [1] - 95:9
**pending** [3] - 9:20,
10:1, 112:6
**peninsula** [2] - 109:10
**pennies** [1] - 150:11
**penny** [4] - 28:4,
56:12, 111:20,
244:15
**PENTON** [4] - 3:5,
130:15, 131:2,
131:18
**Penton** [8] - 119:12,
128:24, 129:3,
129:15, 130:12,
130:14, 130:16,
132:25
**Penton's** [2] - 171:22,
172:1
**PENTON...................
.......................** [1] -
4:25
**people** [215] - 8:24,
9:9, 19:21, 20:9,
23:6, 28:1, 28:3,
32:17, 33:16, 33:20,
34:11, 35:10, 36:11,
37:14, 37:21, 38:7,
39:12, 39:14, 40:21,
41:13, 43:21, 43:24,
45:8, 56:22, 57:9,
57:11, 61:16, 61:17,
62:1, 63:14, 65:12,
65:16, 67:5, 67:11,
68:17, 72:5, 73:17,
75:10, 78:6, 81:4,
81:13, 83:8, 83:18,
86:1, 87:10, 89:23,
91:5, 95:13, 95:14,
96:21, 97:4, 97:20,
97:22, 101:15,
101:17, 101:19,
101:24, 106:20,
107:4, 110:4, 110:6,
111:13, 111:19,
112:19, 113:5,
113:7, 113:23,
117:14, 118:18,
120:16, 120:24,
121:3, 121:10,
121:12, 121:25,
124:15, 124:22,
126:14, 126:20,
126:21, 126:22,
127:16, 127:20,
128:20, 129:5,
129:21, 131:6,
136:24, 137:21,
139:2, 146:3, 146:4,
146:17, 154:22,
156:5, 158:15,

159:4, 161:10,
164:9, 164:10,
165:17, 167:10,
169:14, 171:11,
171:15, 171:19,
172:10, 172:13,
176:17, 180:24,
181:15, 181:17,
181:20, 182:1,
182:2, 182:12,
182:20, 182:22,
183:1, 183:6,
184:12, 184:16,
184:25, 185:2,
185:24, 186:14,
188:2, 188:15,
189:14, 189:17,
191:9, 191:14,
191:24, 192:15,
192:21, 192:24,
193:18, 195:7,
195:8, 196:19,
199:16, 202:10,
203:17, 203:22,
206:7, 207:14,
207:22, 207:24,
208:1, 208:24,
211:9, 211:24,
211:25, 212:2,
212:3, 212:7, 216:1,
216:24, 217:8,
217:22, 218:7,
218:8, 218:25,
225:12, 225:15,
227:19, 230:18,
231:9, 232:2,
232:17, 234:4,
235:5, 235:15,
235:16, 239:4,
239:20, 240:25,
241:18, 242:23,
244:7, 246:14,
246:18, 250:7,
250:8, 250:15,
255:12, 256:15,
256:16, 257:25,
258:13, 258:14,
258:18, 258:20,
258:23, 259:16,
260:21, 261:15,
264:6, 267:7,
267:10, 274:6,
274:7, 274:17,
274:24, 276:12,
276:21, 277:1,
277:15, 278:5
**Pepper** [3] - 280:3,
280:12, 280:13
**PEPPER** [1] - 3:14
**perceive** [2] - 106:7,
156:24

**perceived** [3] - 159:4,
241:8, 241:9
**percent** [56] - 38:2,
46:25, 47:3, 47:4,
47:6, 47:8, 47:12,
47:14, 47:18, 47:19,
47:21, 48:5, 48:6,
48:7, 56:3, 56:5,
58:14, 58:19, 59:13,
59:16, 61:24, 62:3,
62:5, 62:6, 62:8,
72:9, 72:10, 73:8,
87:12, 88:15, 89:13,
90:1, 90:5, 90:18,
91:20, 91:25, 92:15,
93:13, 93:25, 94:1,
96:1, 98:5, 98:7,
143:8, 143:9, 163:1,
163:3, 163:4,
163:14, 194:9,
195:4, 210:3,
210:13, 210:14,
210:18
**percentage** [6] - 28:2,
93:12, 96:1, 121:2,
126:1, 246:21
**perfect** [10] - 29:20,
29:21, 33:6, 33:18,
76:22, 105:9,
115:20, 115:21,
115:22, 279:8
**perfection** [1] - 29:23
**performed** [1] -
122:14
**perhaps** [4] - 14:12,
20:24, 175:5, 274:2
**period** [26] - 10:21,
45:12, 45:14, 55:16,
66:18, 72:6, 87:19,
89:9, 90:7, 90:9,
90:11, 90:13, 90:15,
90:16, 181:9,
202:11, 224:21,
233:25, 234:7,
243:11, 247:18,
256:4, 257:7,
267:21, 276:9
**Periodic** [13] - 189:4,
189:11, 189:13,
190:19, 195:22,
215:23, 216:1,
217:12, 218:2,
220:22, 252:7,
252:11, 260:16
**periodic** [2] - 216:25,
252:22
**periodically** [1] -
190:21
**periods** [5] - 45:15,
45:20, 87:22, 90:17,

199:5
**permanent** [1] -
106:17
**permission** [2] -
67:24, 275:24
**perplexing** [1] - 267:6
**Perret** [1] - 78:19
**Perry** [21] - 29:7, 32:2,
38:16, 42:12, 45:22,
47:3, 52:8, 59:5,
60:21, 71:19, 77:4,
78:3, 134:20, 135:5,
136:13, 136:16,
137:12, 157:23,
162:8, 173:4, 176:2
**Perry's** [3] - 39:17,
47:20, 161:20
**person** [36] - 14:12,
14:18, 14:23, 40:23,
45:20, 46:2, 67:14,
71:3, 83:16, 90:12,
109:21, 128:4,
128:5, 128:9,
164:12, 165:13,
165:14, 170:4,
170:5, 172:4, 188:7,
188:12, 188:25,
208:22, 208:23,
223:17, 227:21,
239:16, 240:2,
254:4, 254:5,
259:24, 260:2, 260:4
**personal** [6] - 9:8, 9:9,
40:8, 110:18,
182:21, 182:25,
209:16, 222:5
**personally** [6] - 40:3,
41:14, 82:24,
169:13, 229:7,
267:16
**persons** [8] - 13:6,
14:1, 14:20, 18:12,
96:7, 203:16, 227:7,
267:2
**perspective** [6] -
20:22, 33:5, 67:12,
99:25, 214:23,
277:20
**pertinent** [3] - 15:24,
16:10, 224:3
**perusal** [1] - 18:10
**petition** [1] - 114:16
**petrochemicals** [1] -
207:6
**petroleum** [1] - 184:25
**petroleum-based** [1] -
184:25
**PEX** [1] - 223:15
**Ph.D** [1] - 69:24
**phase** [4] - 82:3,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 315 of 329
Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 01/04/11 Page 314 of 328

34

84:18, 201:3, 201:4
**Phase** [9] - 10:15, 10:24, 11:14, 25:8, 25:10, 25:11, 84:17, 166:8
**phen** [1] - 255:2
**phone** [2] - 39:25, 155:9
**phones** [1] - 8:20
**phonetically** [2] - 175:6, 235:25
**physical** [9] - 13:21, 51:21, 183:17, 184:14, 184:15, 190:24, 218:12, 247:25, 248:13
**PHYSICAL** [1] - 6:1
**Physical** [5] - 185:17, 195:22, 229:19, 248:25, 257:22
**physicians** [1] - 185:1
**pick** [1] - 187:17
**picked** [2] - 49:6, 181:12
**picking** [3] - 181:13, 187:9, 254:17
**Picou** [2] - 65:8, 75:11
**picture** [4] - 54:12, 89:3, 89:11, 171:18
**pictures** [1] - 130:8
**piece** [2] - 67:21, 277:14
**piecemeal** [2] - 26:9, 30:2
**pieces** [1] - 271:3
**place** [14] - 10:4, 12:11, 41:7, 58:24, 127:6, 137:17, 148:17, 148:19, 157:21, 175:9, 202:10, 205:21, 216:6, 258:2
**places** [4] - 158:14, 158:17, 199:3, 270:14
**placing** [2] - 54:16, 147:11
**plaintiff** [4] - 20:22, 117:15, 246:7, 255:22
**Plaintiff** [1] - 180:13
**plaintiff's** [1] - 238:19
**plaintiffs** [18] - 36:8, 60:9, 75:25, 76:10, 77:16, 83:23, 117:2, 145:14, 180:22, 214:4, 214:19, 215:18, 245:12, 248:8, 258:19, 259:17, 261:7, 265:6

**PLAINTIFFS** [1] - 2:3
**plaintiffs'** [5] - 16:21, 18:3, 68:5, 213:24, 272:4
**Plaintiffs'** [3] - 13:25, 24:21, 199:11
**PLAINTIFFS'** [1] - 1:20
**Plaisance** [3] - 7:13, 7:21, 180:10
**PLAISANCE** [3] - 1:10, 4:7, 5:15
**plan** [9] - 7:23, 7:25, 8:13, 11:17, 79:1, 201:3, 201:5, 201:7, 270:2
**plans** [2] - 19:12, 79:18
**plant** [2] - 35:23, 35:24
**plausible** [4] - 233:15, 233:23, 259:4, 259:6
**play** [3] - 65:11, 225:17, 238:3
**players** [2] - 24:15, 139:18
**plea** [1] - 132:13
**pleased** [1] - 190:7
**pleasure** [4] - 49:22, 80:19, 180:20, 266:15
**plug** [1] - 159:12
**Plumb** [1] - 223:15
**Plumb-PEX** [1] - 223:15
**plumbing** [1] - 223:16
**plus** [4] - 49:12, 84:22, 98:24, 159:3
**ply** [1] - 142:18
**pocket** [2] - 136:8
**pockets** [1] - 147:4
**Point** [2] - 56:10, 57:16
**point** [51] - 18:7, 21:17, 25:2, 32:8, 33:8, 36:1, 37:17, 42:3, 47:23, 52:22, 55:25, 56:22, 57:6, 59:11, 63:20, 74:25, 77:9, 77:12, 79:12, 86:15, 97:18, 100:18, 104:11, 118:8, 139:6, 145:4, 155:22, 158:1, 158:24, 163:2, 163:9, 165:12, 172:1, 194:15, 213:12, 214:21, 215:9, 228:9, 228:17, 228:19,

243:7, 244:2, 251:1, 253:19, 256:6, 264:23, 265:3, 268:3, 268:12, 273:16, 277:23
**pointed** [15] - 34:20, 35:20, 58:22, 137:23, 152:3, 157:2, 164:14, 164:16, 176:12, 178:5, 206:2, 267:6, 268:11, 275:7, 276:25
**pointer** [1] - 95:9
**pointing** [2] - 24:3, 122:11
**points** [16] - 31:13, 32:3, 32:4, 38:24, 77:1, 92:13, 148:6, 156:21, 170:14, 176:5, 176:11, 208:18, 238:15, 240:21, 242:8, 263:11
**police** [1] - 226:11
**policy** [2] - 22:11, 261:18
**political** [1] - 114:9
**Pollution** [1] - 134:10
**pool** [2] - 123:7, 147:5
**poor** [2] - 72:22, 250:24
**population** [1] - 59:22
**populations** [1] - 59:21
**populus** [1] - 65:10
**portion** [2] - 57:6, 88:15
**portions** [1] - 92:15
**portray** [1] - 208:22
**posed** [1] - 133:13
**position** [7] - 19:6, 39:23, 43:16, 147:5, 166:23, 170:11, 231:6
**positions** [1] - 263:19
**positive** [2] - 218:12, 263:3
**possession** [1] - 128:2
**possibility** [2] - 169:7, 267:25
**possible** [15] - 18:4, 23:2, 29:14, 38:22, 68:10, 104:20, 171:5, 214:7, 220:22, 234:15, 239:1, 243:10, 243:24, 259:8, 262:19

**possibly** [6] - 53:19, 96:5, 110:16, 233:16, 234:23, 245:2
**post** [3] - 122:15, 182:21, 183:4
**post-explosion** [2] - 182:21, 183:4
**post-litigation** [1] - 122:15
**potential** [20] - 27:4, 34:21, 53:9, 72:19, 110:12, 156:25, 163:15, 183:11, 184:12, 193:8, 194:10, 215:14, 215:16, 216:2, 229:23, 230:15, 241:1, 261:23, 272:8
**potentially** [7] - 21:9, 62:2, 182:11, 183:9, 243:17, 259:2, 273:23
**poverty** [1] - 250:23
**power** [2] - 244:24, 263:14
**powerful** [1] - 176:21
**powers** [1] - 226:5
**POYDRAS** [2] - 2:17, 3:15
**PR** [2] - 149:16, 229:7
**practical** [7] - 24:18, 39:6, 211:3, 211:13, 211:18, 242:22, 244:23
**practically** [1] - 244:19
**practice** [9] - 25:21, 25:25, 78:17, 91:9, 166:6, 211:23, 218:25, 226:9, 231:24
**practices** [1] - 24:22
**practicing** [2] - 183:22, 219:5
**practitioner** [1] - 69:14
**practitioners** [1] - 233:6
**prayer** [1] - 265:8
**precedence** [2] - 50:22, 215:7
**precedent** [3] - 178:9, 218:24, 237:20
**precepts** [1] - 262:24
**precise** [2] - 202:4, 202:12
**precisely** [3] - 71:17, 187:6, 197:13
**precluded** [1] - 248:4

**predicated** [2] - 34:25, 35:14
**predictable** [2] - 80:2, 85:10
**predicted** [1] - 86:13
**predominance** [3] - 199:2, 200:20, 201:21
**predominant** [1] - 197:10
**predominate** [5] - 15:20, 32:5, 32:7, 201:13, 203:2
**predominating** [2] - 201:8, 201:24
**preemption** [1] - 245:11
**preemptively** [1] - 195:15
**preexisting** [2] - 237:18, 237:22
**prefer** [3] - 65:16, 265:6, 268:2
**preliminarily** [3] - 12:6, 12:7, 55:17
**preliminary** [9] - 9:3, 12:3, 12:8, 46:12, 80:24, 120:22, 180:21, 186:3, 272:23
**PRELIMINARY** [1] - 4:9
**Preliminary** [6] - 12:5, 12:19, 50:11, 55:12, 73:2, 73:11
**premise** [1] - 103:10
**premium** [2] - 221:5, 274:4
**premiums** [2] - 27:6, 79:5
**prep** [1] - 25:11
**prepackaged** [2] - 65:21, 270:12
**prepare** [1] - 133:24
**prepared** [6] - 25:8, 66:22, 102:2, 113:25, 235:6, 253:4
**preparing** [3] - 166:7, 166:9, 166:10, 277:22
**preposterous** [1] - 111:2
**pres** [27] - 149:15, 149:19, 150:1, 150:15, 150:16, 150:17, 150:18, 150:19, 150:22, 150:24, 151:2, 152:4, 155:1, 176:5, 176:12, 177:3,

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 01/02/18 Page 316 of 329
Case 2:10-md-02179-CJB-DCW Document 23892-8 Filed 11/05/11 Page 35 of 528

35

189:10, 195:13,
195:16, 196:8,
225:19, 226:4,
247:4, 262:14,
262:21, 262:24
**prescription** [2] -
187:16, 187:17
**present** [12] - 10:7,
11:23, 23:7, 59:15,
71:22, 89:8, 92:20,
103:24, 133:5,
197:10, 206:3, 277:5
**presentation** [7] -
46:7, 101:7, 113:19,
124:18, 124:19,
175:2, 180:11
**presented** [7] - 17:20,
89:13, 115:7,
188:22, 202:16,
238:24, 277:24
**presenters** [1] - 84:21
**presentment** [1] -
236:12
**preserve** [1] - 212:9
**preset** [1] - 206:23
**Presidential** [1] -
209:2
**prespill** [2] - 59:22,
174:7
**press** [4] - 61:14,
167:13, 275:1, 275:2
**presumably** [1] -
259:20
**presumed** [5] - 35:25,
44:24, 45:2, 68:15,
68:16
**presuming** [1] - 68:22
**presumption** [1] -
274:2
**pretty** [16] - 41:11,
44:22, 45:4, 54:12,
56:6, 70:8, 89:21,
103:11, 113:1,
212:5, 213:6,
265:13, 273:17,
278:18, 279:13
**prevail** [1] - 74:19
**prevailing** [1] - 235:19
**prevent** [5] - 32:20,
55:21, 65:2, 237:12,
245:21
**previous** [3] - 41:22,
46:17, 47:24
**previously** [5] - 10:21,
14:18, 20:14,
243:11, 243:23
**pride** [1] - 241:1
**primarily** [5] - 92:14,
101:14, 107:5,
131:19, 198:7

**primary** [8] - 24:6,
24:8, 44:13, 45:1,
104:12, 106:15,
218:5, 249:8
**principal** [2] - 180:23,
190:1
**principally** [1] -
133:10
**principle** [4] - 11:5,
11:9, 11:11, 51:1
**principles** [2] - 25:16,
40:17
**prism** [1] - 215:1
**private** [2] - 66:14,
123:20, 250:23
**privately** [2] - 129:10,
129:11
**privately-owned** [2] -
129:10, 129:11
**pro** [7] - 140:8,
140:16, 150:10,
194:18, 195:5,
232:20, 261:7
**proactive** [1] - 90:24
**proactively** [1] - 10:4
**probability** [5] - 18:3,
213:24, 238:19,
272:4, 272:7
**probation** [1] - 240:15
**problem** [44] - 21:24,
37:22, 72:3, 73:19,
106:10, 107:19,
109:5, 112:19,
113:4, 114:12,
117:4, 117:7,
134:12, 135:13,
136:23, 141:14,
141:19, 142:5,
147:12, 157:16,
157:17, 171:10,
171:18, 171:20,
173:11, 173:16,
174:23, 176:10,
211:13, 220:11,
225:23, 244:7,
244:16, 245:4,
245:6, 245:18,
245:19, 246:20,
247:20, 247:23,
261:19, 261:22,
264:15, 264:18
**problems** [19] - 108:8,
108:25, 109:2,
109:12, 112:14,
113:17, 113:24,
116:10, 147:13,
155:7, 167:7, 211:9,
216:14, 241:8,
241:9, 242:22,
243:15, 245:3,

264:20
**procedurally** [1] -
243:2
**procedure** [3] - 25:21,
25:25, 124:12
**Procedure** [4] - 15:7,
120:5, 226:6, 226:13
**procedures** [1] - 12:11
**proceed** [2] - 20:7,
53:17
**proceeding** [2] -
225:9, 231:23
**proceedings** [7] -
18:2, 100:18,
213:19, 226:8,
270:8, 279:19, 280:9
**PROCEEDINGS** [4] -
1:16, 3:18, 7:1,
180:1
**process** [34] - 11:19,
21:6, 22:15, 37:12,
53:18, 54:19, 56:2,
56:9, 81:3, 81:4,
81:16, 82:19, 82:25,
84:12, 84:14, 85:21,
90:16, 96:24, 135:8,
146:9, 146:17,
157:20, 195:8,
197:15, 219:18,
219:20, 232:5,
242:6, 243:3,
245:16, 263:15,
274:23
**processed** [4] - 81:23,
81:25, 84:15, 85:4
**processes** [2] - 86:13,
100:5
**processing** [5] -
81:22, 89:3, 99:13,
191:9, 191:17
**processor** [2] - 44:12,
45:1
**processors** [6] - 44:1,
44:2, 44:6, 44:16,
44:21, 45:4
**produce** [4] - 53:4,
92:17, 114:17,
183:25
**PRODUCED** [1] - 3:19
**produced** [3] - 10:16,
25:3, 65:9
**product** [3] - 158:13,
169:12, 223:16
**Production** [2] - 7:14,
7:16
**production** [1] - 143:7
**PRODUCTION** [4] -
1:10, 1:13, 2:11,
2:14
**PRODUCTS** [1] - 2:15

**products** [2] - 184:25,
199:4
**professional** [1] -
197:25
**professionalism** [2] -
277:18, 277:25
**professionals** [2] -
219:21, 219:23
**Professor** [28] - 31:10,
31:11, 52:17, 53:2,
53:23, 54:15, 69:12,
69:15, 69:21, 71:7,
71:9, 150:21,
166:18, 166:20,
178:14, 183:18,
183:19, 183:24,
197:22, 214:3,
219:6, 219:7, 219:8,
219:11
**professor** [3] - 53:12,
53:24, 69:19
**Professors** [1] - 52:9
**professors** [1] - 117:6
**profile** [2] - 66:10,
170:10
**profit** [7] - 57:19,
58:14, 92:15, 92:18,
92:19, 92:25, 144:9
**profits** [7] - 58:7, 58:8,
58:12, 58:18,
138:11, 144:21
**program** [105] - 11:21,
12:16, 13:8, 21:6,
21:23, 22:14, 22:16,
22:17, 22:23, 23:6,
23:12, 23:14, 23:18,
24:10, 27:6, 27:19,
27:21, 27:22, 27:24,
28:8, 28:25, 29:2,
29:15, 30:7, 39:2,
39:10, 41:6, 42:16,
42:19, 44:6, 45:21,
46:3, 46:10, 46:20,
55:25, 57:25, 60:7,
60:10, 72:21, 76:22,
77:8, 77:10, 78:9,
79:7, 79:13, 80:7,
81:7, 82:1, 82:5,
82:11, 84:1, 84:20,
85:4, 87:5, 87:10,
88:19, 90:8, 91:1,
91:3, 92:22, 93:1,
93:3, 93:5, 94:20,
94:21, 95:14, 96:8,
99:4, 99:25, 102:14,
133:7, 135:21,
136:11, 157:5,
160:1, 166:13,
166:24, 175:19,
189:5, 189:16,

189:19, 189:22,
192:8, 192:22,
192:25, 196:13,
202:9, 211:16,
211:17, 211:20,
216:17, 216:22,
217:6, 218:11,
229:6, 231:3, 235:6,
244:13, 252:22,
252:23, 253:17,
275:9, 278:19,
278:24
**Program** [46] - 13:22,
42:13, 43:24, 44:3,
47:2, 48:1, 76:3,
76:21, 77:5, 77:13,
79:3, 133:7, 134:13,
135:15, 146:4,
148:22, 161:15,
185:18, 189:4,
189:8, 189:10,
189:11, 189:14,
190:1, 190:5,
190:20, 191:7,
192:10, 192:20,
193:3, 195:20,
195:22, 196:1,
196:5, 196:17,
215:23, 216:1,
216:8, 217:13,
218:3, 220:22,
220:24, 252:7,
252:11, 252:14,
260:16
**program's** [3] - 21:18,
23:2, 57:16
**PROGRAM...............**
**............................** [1]
- 5:3
**programs** [10] - 44:23,
83:5, 189:6, 189:17,
247:6, 253:5,
262:14, 262:17,
262:25, 263:1
**progress** [3] - 11:4,
268:7, 268:19
**project** [2] - 100:6,
191:7
**projection** [1] - 85:16
**projects** [3] - 216:17,
217:5, 219:24
**promise** [2] - 158:15,
241:15
**promote** [2] - 30:8,
152:13
**promotion** [1] -
149:23
**promotional** [2] -
30:5, 64:3
**Promotional** [1] -

Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 04/02/18 Page 317 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 316 of 328

36

149:24
**prompt** [2] - 53:5, 53:13
**promulgated** [1] - 226:14
**pronounce** [3] - 239:21, 239:23, 240:11
**pronounced** [1] - 240:5
**Proof** [2] - 253:13, 253:15
**proof** [22] - 28:21, 45:6, 75:2, 75:4, 75:6, 154:5, 161:14, 188:1, 188:2, 188:12, 188:13, 188:16, 202:18, 214:9, 219:20, 221:22, 233:2, 242:20, 242:21, 255:22, 265:2, 269:7
**proofs** [1] - 233:5
**proper** [2] - 151:5, 151:15
**properly** [2] - 94:16, 262:3
**properties** [6] - 37:24, 126:20, 129:10, 129:12, 160:13, 160:15
**PROPERTY** [3] - 4:6, 4:23, 5:7
**property** [68] - 7:19, 13:19, 13:20, 19:1, 37:15, 37:17, 37:21, 37:25, 38:6, 38:8, 38:9, 50:12, 51:2, 69:23, 102:9, 119:17, 119:21, 120:9, 120:12, 120:19, 120:25, 121:5, 121:14, 121:16, 121:17, 122:2, 122:5, 122:11, 122:13, 122:16, 122:19, 122:20, 122:22, 122:24, 123:10, 123:14, 123:20, 124:1, 124:3, 124:4, 124:5, 124:7, 124:13, 124:23, 125:4, 125:7, 125:16, 125:20, 125:22, 126:24, 126:25, 128:1, 128:2, 128:18, 136:2, 149:10, 152:1, 152:9,

153:14, 153:16, 159:18, 160:9, 175:16, 175:20, 226:24
**Property** [2] - 119:10, 119:13
**proponents** [2] - 141:23, 218:18
**proposal** [2] - 10:8, 103:15
**proposals** [2] - 7:25, 78:7
**propose** [2] - 153:7, 166:22
**PROPOSED** [2] - 4:6, 5:14
**proposed** [21] - 7:18, 7:20, 11:12, 11:15, 11:25, 12:1, 16:13, 17:16, 19:1, 80:24, 106:8, 120:14, 129:23, 180:9, 182:24, 197:7, 199:9, 202:13, 218:15, 272:23, 278:7
**proposing** [1] - 151:22
**propriety** [2] - 52:12, 55:23
**prosecuting** [1] - 261:21
**prosecution** [1] - 16:1
**prospect** [1] - 183:15
**protect** [7] - 15:16, 117:18, 143:1, 143:3, 146:5, 184:6, 241:25
**protected** [1] - 135:13
**protecting** [1] - 181:16
**protection** [3] - 70:13, 114:22, 134:1
**protects** [1] - 206:9
**protocols** [1] - 12:13
**protracted** [5] - 65:8, 178:1, 183:8, 183:15, 230:23
**proud** [3] - 167:6, 167:11, 197:3
**prove** [21] - 65:15, 75:6, 92:3, 104:17, 104:19, 113:8, 114:20, 115:2, 142:23, 144:25, 206:22, 206:25, 207:6, 207:10, 234:21, 243:4, 255:9, 255:15, 264:25, 271:12,

274:6
**proved** [1] - 207:3
**provide** [16] - 29:3, 53:5, 61:1, 79:25, 90:9, 107:14, 118:17, 150:14, 166:25, 202:4, 219:21, 221:14, 222:4, 242:20, 258:12, 261:20
**provided** [9] - 52:11, 65:19, 77:15, 79:20, 114:19, 192:21, 196:3, 216:7
**providers** [1] - 252:1
**PROVIDES** [1] - 6:2
**provides** [15] - 21:12, 29:25, 45:9, 79:10, 79:13, 89:10, 92:23, 146:4, 167:10, 196:5, 198:8, 215:20, 226:22, 227:18, 229:20
**providing** [7] - 90:1, 135:22, 180:23, 191:13, 215:24, 216:17, 216:18
**proving** [4] - 74:16, 182:4, 238:21, 238:22
**provision** [5] - 150:8, 151:13, 236:14, 255:4, 259:15
**provisionally** [2] - 232:7, 239:6
**provisions** [5] - 102:1, 255:21, 262:21, 262:22, 274:17
**proximity** [7] - 35:14, 35:15, 103:17, 103:21, 109:15, 164:20, 164:21
**prudent** [1] - 170:9
**Pruet** [1] - 210:19
**PSC** [20] - 11:23, 24:11, 24:19, 25:1, 25:19, 25:22, 26:6, 49:24, 52:5, 54:14, 60:22, 67:3, 67:6, 78:2, 136:14, 159:1, 170:25, 210:5, 265:25, 275:16
**psychiatric** [1] - 202:15
**pub** [2] - 271:7, 271:10
**Public** [1] - 130:1
**public** [11] - 14:11, 52:23, 66:8, 78:16, 82:6, 83:14, 156:12,

159:18, 190:17, 225:22, 226:10
**publicly** [5] - 27:14, 86:9, 137:21, 197:25, 219:25
**published** [3] - 66:17, 82:6, 213:21
**pull** [1] - 43:18
**punitive** [9] - 27:4, 206:24, 215:4, 248:14, 254:25, 255:3, 255:8, 255:24, 269:16
**pure** [2] - 59:19, 248:7
**purely** [1] - 226:20
**purported** [4] - 71:25, 73:7, 96:4, 230:8
**purportedly** [2] - 267:10, 273:3
**purporting** [1] - 212:7
**purpose** [5] - 54:20, 126:5, 151:4, 227:14, 272:14
**purposes** [9] - 16:8, 32:18, 100:12, 200:11, 200:12, 200:17, 229:7, 253:22, 256:19
**pursuant** [3] - 61:12, 94:17, 243:10
**pursue** [5] - 206:10, 206:19, 234:21, 245:7, 246:9
**pursuing** [2] - 80:7, 245:22
**push** [1] - 36:6
**put** [42] - 21:13, 26:25, 28:5, 40:8, 55:16, 58:2, 75:2, 75:3, 75:5, 90:3, 97:15, 103:15, 110:3, 110:10, 129:22, 136:11, 136:13, 140:10, 145:5, 147:4, 151:3, 151:13, 160:17, 165:10, 166:22, 167:18, 170:10, 173:3, 174:4, 184:6, 232:23, 242:11, 251:11, 253:13, 256:1, 258:5, 260:7, 262:21, 267:20, 275:20, 277:12
**putative** [4] - 9:15, 44:14, 44:17, 44:19
**putting** [4] - 66:4, 86:10, 126:7, 126:10

| Q |
| --- |

**qualified** [1] - 77:18
**qualify** [6] - 111:20, 236:1, 247:25, 252:21, 252:22, 253:11
**quality** [3] - 55:5, 71:23, 250:25
**Quality** [1] - 69:25
**quantified** [1] - 38:20
**quantify** [3] - 26:19, 37:16, 39:14
**quarter** [1] - 103:3
**questionable** [1] - 230:14
**questioned** [1] - 196:8
**questions** [29] - 15:10, 15:19, 15:21, 16:17, 31:6, 35:8, 35:19, 36:14, 36:17, 36:19, 38:13, 40:20, 43:25, 45:6, 46:6, 49:14, 66:1, 98:10, 163:25, 166:13, 203:1, 203:2, 204:22, 210:12, 218:23, 222:11, 229:14, 260:19, 260:22
**quick** [5] - 28:4, 39:17, 87:7, 100:6, 161:13
**quickly** [10] - 21:8, 26:14, 27:1, 51:9, 96:14, 100:8, 165:24, 165:25, 277:1, 278:23
**quite** [5] - 85:1, 155:17, 212:11, 224:21, 237:14, 254:22, 267:15
**quota** [1] - 136:4
**quotas** [1] - 133:9
**quote** [8] - 38:8, 150:7, 183:12, 183:24, 184:1, 194:13, 225:24, 226:2
**quotes** [1] - 167:13

| R |
| --- |

**race** [2] - 214:22, 214:23
**railing** [2] - 123:6, 124:4
**railings** [1] - 105:11
**railroad** [1] - 100:4
**raised** [11] - 31:6, 32:22, 35:8, 35:19,

36:15, 44:1, 66:1, 136:24, 177:21, 229:24, 260:21
**raises** [1] - 40:17
**raising** [1] - 242:16
**ran** [1] - 265:16
**range** [9] - 18:4, 68:10, 68:11, 144:14, 214:7, 214:8, 237:8, 239:1, 239:3
**ranges** [1] - 272:8
**rapid** [3] - 86:15, 218:12
**rarely** [1] - 203:3
**rash** [6] - 187:9, 187:10, 187:18, 187:23, 188:20, 188:22
**rashes** [2] - 181:23, 182:5
**rata** [3] - 140:8, 140:16, 150:10
**rate** [9] - 37:23, 38:3, 38:4, 87:8, 87:10, 96:1, 98:5, 99:20, 99:23
**rather** [5] - 65:17, 95:20, 202:22, 205:20, 265:8
**ratio** [1] - 143:25
**rational** [3] - 131:14, 131:16, 170:5
**rationally** [1] - 70:18
**rationally-based** [1] - 70:18
**ratios** [1] - 148:15
**re** [3] - 7:11, 32:13, 233:18
**RE** [1] - 1:4
**re-examination** [1] - 32:13
**re-exposures** [1] - 233:18
**reach** [4] - 50:15, 62:16, 91:7, 211:12
**reached** [11] - 11:11, 13:25, 29:9, 62:15, 78:22, 79:24, 115:10, 115:11, 214:20, 215:13, 215:19
**reaching** [4] - 11:4, 52:4, 91:5, 211:11
**reaction** [1] - 259:18
**read** [14] - 20:3, 30:5, 40:19, 117:5, 130:23, 141:9, 225:24, 226:2, 232:20, 232:21,

251:25, 266:10, 269:17, 269:23
**reading** [2] - 61:14, 245:25
**ready** [3] - 25:9, 191:20, 193:1
**real** [16] - 13:20, 70:1, 120:8, 120:12, 120:18, 121:5, 121:16, 121:17, 122:2, 122:5, 124:13, 124:23, 157:20, 173:16, 248:21
**realistic** [1] - 234:17
**reality** [10] - 78:7, 106:22, 106:24, 158:17, 169:10, 175:8, 232:12, 232:22, 236:5
**realize** [2] - 140:18, 242:1
**realized** [1] - 218:14
**realizes** [1] - 69:16
**really** [51] - 16:10, 35:24, 38:8, 39:10, 40:9, 41:12, 42:18, 43:5, 43:19, 44:5, 44:12, 61:22, 65:13, 65:20, 70:15, 73:25, 94:24, 104:1, 116:3, 116:4, 117:24, 130:17, 130:18, 137:20, 149:15, 163:9, 163:12, 169:23, 169:25, 189:10, 190:6, 193:12, 195:2, 195:11, 196:2, 208:25, 215:4, 234:2, 234:5, 236:22, 238:7, 239:8, 239:13, 242:2, 249:9, 255:25, 258:22, 259:20, 268:23, 271:10, 279:12
**realm** [1] - 259:2
**REALTIME** [1] - 3:14
**Realtime** [2] - 280:3, 280:13
**realtime** [1] - 270:23
**reap** [2] - 189:7, 196:21
**rear** [1] - 203:12
**reason** [7] - 39:12, 39:14, 68:21, 92:10, 104:12, 105:17, 112:12, 114:8, 118:15, 125:18,

152:16, 160:12, 178:12, 200:16, 209:24, 211:14, 260:3
**reasonable** [47] - 17:15, 17:17, 17:21, 33:14, 42:15, 42:25, 43:23, 50:18, 52:13, 54:19, 59:7, 59:9, 59:18, 60:8, 68:11, 76:24, 78:25, 108:17, 115:20, 119:6, 120:1, 128:4, 128:7, 128:9, 137:10, 139:4, 144:13, 144:14, 163:10, 163:18, 163:23, 171:6, 172:16, 172:25, 173:19, 173:20, 177:10, 184:5, 185:18, 185:21, 186:11, 246:18, 252:16, 264:1, 265:24, 276:18, 279:14
**reasonableness** [10] - 51:17, 119:19, 120:8, 173:18, 194:8, 194:24, 208:11, 236:21, 242:1, 263:3
**reasonably** [1] - 29:13
**reasoned** [1] - 29:19
**reasoning** [3] - 38:17, 39:16, 42:2
**reasons** [22] - 41:15, 54:24, 80:8, 86:2, 93:6, 124:14, 139:20, 143:17, 150:23, 171:12, 171:25, 172:5, 182:6, 189:18, 208:15, 210:22, 211:3, 211:18, 263:4, 266:12, 267:11, 279:1
**rebuttal** [1] - 222:12
**recalculate** [1] - 173:4
**receive** [3] - 105:6, 107:21, 157:12
**received** [10] - 29:13, 74:7, 88:16, 93:21, 93:22, 98:6, 141:1, 146:14, 232:3, 232:17
**receiving** [1] - 114:4
**recent** [5] - 16:18, 73:15, 199:24, 214:24, 234:25

**recently** [4] - 126:16, 240:16, 269:14, 269:19
**recess** [8] - 8:13, 8:14, 8:16, 80:13, 100:20, 100:24, 178:23, 179:3
**RECESS.....................
................** [1] - 5:13
**recognition** [1] - 261:14
**recognizable** [3] - 127:25, 160:8, 160:10
**recognize** [3] - 171:20, 189:14, 189:23
**recognized** [5] - 23:13, 176:13, 185:3, 234:13, 262:8
**recognizes** [2] - 183:11, 245:5
**recommendation** [1] - 22:3
**recommending** [1] - 103:23
**recommends** [1] - 157:7
**reconsideration** [1] - 95:23
**record** [30] - 19:10, 51:16, 51:19, 51:23, 52:3, 54:22, 55:4, 74:17, 75:13, 77:3, 86:23, 88:4, 97:11, 100:13, 100:15, 111:9, 157:25, 162:20, 173:9, 173:11, 174:3, 185:9, 185:14, 188:21, 201:12, 208:8, 228:7, 229:10, 250:2, 280:8
**RECORDED** [1] - 3:18
**records** [18] - 81:19, 89:15, 90:2, 90:6, 90:13, 90:20, 90:22, 93:7, 93:14, 95:16, 186:20, 216:19, 235:22, 249:24, 258:8, 259:22
**recourse** [1] - 112:13
**recover** [5] - 61:9, 110:16, 134:9, 144:15, 183:9
**recoverable** [1] - 127:22
**recovered** [1] - 228:11
**recoveries** [3] - 144:14, 239:1,

261:20
**recovers** [1] - 110:11
**recovery** [13] - 18:4, 22:24, 34:23, 53:16, 68:10, 110:6, 112:12, 142:19, 148:25, 206:21, 206:23, 214:7, 272:9
**recreate** [1] - 127:17
**recreational** [2] - 127:3, 154:3
**reculching** [1] - 175:8
**recurring** [1] - 220:10
**red** [5] - 88:21, 91:25, 92:8, 93:13, 208:22
**redfish** [1] - 43:13
**Redish** [1] - 150:21
**redistribution** [2] - 140:9, 141:21
**redrawn** [1] - 116:21
**reduce** [3] - 37:1, 37:3, 53:9
**reduced** [4] - 94:3, 106:14, 186:9, 255:23
**reductions** [1] - 135:19
**Reed** [29] - 17:12, 62:4, 64:16, 64:17, 64:25, 65:18, 65:20, 65:24, 68:2, 68:25, 69:5, 69:6, 69:7, 69:8, 120:2, 120:3, 120:6, 128:8, 177:15, 208:18, 212:17, 212:21, 212:23, 233:3, 235:17, 238:18, 269:3, 270:6, 270:7
**refer** [1] - 224:14
**reference** [4] - 18:19, 136:21, 157:22, 159:18
**referred** [2] - 94:5, 273:17
**referring** [2] - 145:8, 157:23
**refined** [2] - 55:11, 63:8
**reflect** [6] - 103:24, 106:12, 106:22, 156:9, 169:6, 184:21
**refused** [1] - 40:5, 199:12
**regard** [4] - 87:5, 94:6, 94:8, 133:19
**regarding** [3] - 31:8, 101:5, 184:22
**regardless** [2] - 104:4, 217:7

Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 01/02/18 Page 319 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 316 of 326

38

**Region** [15] - 189:8, 189:10, 189:25, 190:5, 191:7, 192:9, 192:19, 193:2, 195:20, 195:25, 196:4, 196:16, 216:8, 220:24, 252:14
**region** [6] - 53:16, 54:3, 54:9, 169:20, 171:1, 225:22
**REGISTERED** [1] - 3:15
**registered** [1] - 280:14
**Registered** [1] - 280:3
**regrettable** [1] - 224:9
**regular** [1] - 85:14
**regularly** [1] - 191:14
**regulated** [1] - 132:14
**regulations** [4] - 37:4, 209:17, 211:5, 220:7
**reimburses** [1] - 93:4
**reinforce** [1] - 194:13
**reinvent** [1] - 132:7
**reject** [14] - 32:10, 75:3, 177:15, 177:16, 177:18, 177:24, 178:2, 178:8, 265:11, 265:13, 265:14, 266:2, 266:4, 266:7
**rejection** [1] - 184:1
**relate** [3] - 9:5, 153:20, 201:25
**related** [12] - 76:9, 87:16, 106:20, 107:2, 107:15, 114:20, 115:2, 117:20, 153:11, 153:12, 183:4, 247:24
**RELATES** [2] - 1:8, 6:1
**relates** [2] - 77:10, 229:18
**relating** [1] - 267:4
**relation** [1] - 10:18
**relative** [4] - 24:14, 61:19, 141:16, 148:25
**relatively** [3] - 26:14, 27:1, 261:23
**relaxed** [2] - 206:10, 274:2
**release** [10] - 14:19, 86:2, 88:17, 91:22, 206:4, 207:25, 238:9, 248:18, 279:16
**releases** [6] - 14:20,

72:20, 94:6, 94:19, 94:20, 168:10
**releasing** [1] - 207:19
**relevant** [4] - 17:23, 144:25, 167:2, 259:3
**reliability** [1] - 201:25
**reliance** [2] - 32:15, 40:17
**relied** [1] - 145:11
**relief** [5] - 19:6, 242:5, 262:14, 262:25, 266:7
**relook** [1] - 272:24
**rely** [5] - 40:21, 41:5, 134:7, 184:2, 218:24
**remain** [1] - 72:13
**remainder** [2] - 154:25, 155:3
**remaining** [1] - 56:8
**remains** [3] - 37:5, 37:8, 37:10
**remanding** [1] - 201:19
**remands** [1] - 270:1
**remarkable** [2] - 100:9, 278:18
**remarks** [1] - 172:3
**remediation** [2] - 27:11, 37:11
**remedy** [2] - 132:6, 234:21
**remember** [6] - 66:9, 68:2, 194:3, 200:10, 210:20, 251:10
**remind** [3] - 8:19, 19:19, 19:22
**reminded** [1] - 261:7
**reminders** [1] - 253:7
**reminding** [1] - 181:1
**removal** [2] - 37:1, 53:5
**remove** [2] - 203:23, 225:13
**render** [1] - 264:12
**renegotiate** [6] - 17:19, 169:25, 170:3, 172:15, 263:22, 266:12
**renegotiating** [1] - 170:2
**renegotiation** [1] - 265:22
**renown** [1] - 25:25
**rent** [1] - 126:20
**rentals** [1] - 126:23
**repaired** [1] - 68:20
**reparation** [1] - 133:21
**repeat** [2] - 259:3, 279:6
**repeated** [1] - 233:18

**repeatedly** [1] - 233:20
**repetitive** [1] - 53:20
**replace** [1] - 46:16
**replacement** [3] - 135:22, 142:25, 143:12
**reply** [2] - 46:14, 160:21
**report** [12] - 12:17, 22:3, 23:20, 30:6, 80:21, 81:24, 84:8, 93:20, 94:9, 100:14, 122:15, 210:1
**reported** [1] - 27:15
**Reporter** [7] - 280:3, 280:4, 280:5, 280:13, 280:14, 280:14
**reporter** [1] - 130:8
**REPORTER** [3] - 3:14, 3:14, 3:15
**REPORTER'S** [1] - 280:1
**reporting** [1] - 66:11
**reports** [17] - 10:17, 19:22, 25:7, 27:12, 31:9, 37:6, 51:22, 70:24, 77:25, 86:9, 102:23, 103:20, 197:6, 197:21, 198:16, 213:21
**represent** [22] - 75:24, 76:9, 101:11, 101:12, 101:25, 108:6, 108:12, 110:3, 120:16, 133:11, 138:5, 149:9, 151:24, 152:1, 152:5, 152:7, 223:6, 227:7, 227:23, 230:1, 231:19, 234:18
**representation** [3] - 146:23, 166:2, 170:18
**representations** [2] - 40:21, 40:24
**representative** [5] - 15:13, 15:15, 104:16, 117:2, 117:15
**REPRESENTATIVE** [1] - 3:3
**representatives** [12] - 16:15, 18:5, 69:2, 81:5, 104:15, 104:23, 110:1, 117:1, 147:14, 170:25, 265:14,

272:13
**represented** [11] - 55:19, 67:4, 72:9, 72:23, 121:10, 138:19, 162:23, 164:15, 171:4, 210:3, 224:12
**representing** [6] - 121:4, 158:11, 161:21, 165:17, 193:9, 244:25
**represents** [5] - 53:3, 74:11, 88:14, 193:17, 208:23
**request** [6] - 11:6, 11:13, 12:25, 13:5, 80:20, 119:10
**requested** [1] - 80:21
**requests** [1] - 51:21
**require** [3] - 68:3, 90:3, 212:15
**required** [7] - 89:17, 92:17, 93:8, 93:10, 158:17, 210:16, 276:19
**requirement** [4] - 17:6, 187:13, 199:2, 276:14
**requirements** [13] - 15:17, 45:3, 45:16, 92:6, 92:24, 139:16, 188:14, 197:8, 198:17, 200:15, 265:2, 276:16, 276:17
**requires** [6] - 15:8, 15:18, 16:21, 64:25, 158:2, 237:4
**research** [1] - 77:21
**reservation** [1] - 97:15
**reserve** [5] - 38:18, 97:22, 116:8, 157:1, 157:3
**reserving** [2] - 74:1, 97:16
**reside** [2] - 13:14, 68:23
**resided** [1] - 187:2
**residence** [1] - 114:14
**residency** [2] - 241:17, 241:19
**resident** [5] - 71:10, 187:12, 230:7, 254:6, 254:16
**residential** [2] - 153:15, 153:16
**residents** [6] - 106:17, 107:5, 176:19, 181:13, 182:13, 223:9

**Resolution** [3] - 209:14, 219:19, 253:1
**resolution** [4] - 16:23, 53:13, 53:15, 238:7
**resolvable** [1] - 168:11
**resolve** [7] - 16:25, 21:1, 22:9, 51:8, 54:2, 65:6, 197:12
**resound** [1] - 132:17
**resources** [4] - 83:2, 132:18, 262:15, 262:23
**respect** [27] - 8:7, 10:15, 16:16, 17:10, 18:8, 34:23, 35:7, 37:13, 42:5, 45:7, 66:5, 75:4, 91:10, 102:23, 104:5, 104:13, 106:18, 114:22, 151:10, 204:25, 216:22, 261:8, 262:21, 271:21, 271:22, 275:9, 275:18
**respectfully** [4] - 75:14, 142:16, 167:14, 178:18
**respects** [1] - 24:15
**respiratory** [3] - 232:25, 247:20, 247:23
**respond** [3] - 37:6, 39:23, 96:16
**responded** [3] - 95:20, 96:14
**response** [3] - 37:2, 187:2, 193:20, 251:5, 251:23
**responses** [2] - 98:7, 259:10
**responsibilities** [1] - 91:4
**responsibility** [4] - 81:21, 151:8, 152:22, 167:15
**responsible** [6] - 31:15, 31:17, 37:10, 40:8, 167:16, 207:7
**rest** [3] - 128:19, 129:1, 211:20
**Restaurant** [1] - 71:5
**restaurant** [1] - 45:19
**restoration** [1] - 37:9
**result** [18] - 9:13, 30:14, 48:19, 49:8, 50:7, 51:5, 85:3, 112:23, 130:21, 134:24, 182:1,

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 01/02/18 Page 320 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 313 of 528

39

182:9, 182:14, 185:7, 199:17, 209:3, 243:10, 243:25
**resulting** [1] - 9:8
**results** [7] - 26:11, 68:13, 183:25, 191:16, 235:1, 243:18, 265:5
**resume** [1] - 225:3
**retail** [1] - 93:8
**retained** [4] - 52:8, 66:6, 77:15, 170:12
**return** [1] - 235:17
**returns** [10] - 39:13, 45:10, 45:11, 45:14, 89:8, 89:14, 92:16, 92:18, 135:10, 176:25
**rev** [1] - 86:11
**revenue** [26] - 30:19, 48:7, 57:18, 57:19, 57:20, 57:21, 57:22, 57:24, 58:3, 58:5, 58:8, 58:10, 58:18, 58:20, 58:21, 114:20, 133:8, 138:20, 141:24, 143:24, 143:25, 144:4, 144:18, 172:24
**revenues** [6] - 58:12, 59:16, 138:11, 144:20, 144:22, 172:20
**reversal** [1] - 228:22
**reversionary** [1] - 150:8
**review** [6] - 8:2, 15:5, 21:24, 22:2, 93:24
**reviewed** [5] - 20:1, 25:3, 25:6, 94:14, 233:12
**reviews** [1] - 159:5
**revise** [2] - 46:16, 115:6
**revising** [1] - 120:14
**revocations** [1] - 74:8
**revoked** [1] - 72:4
**revolves** [1] - 106:16
**reward** [1] - 141:24
**rewrite** [1] - 17:18
**rhetoric** [1] - 236:23
**Rice** [4] - 25:14, 158:5, 175:5, 268:18
**rice** [12] - 60:25, 61:5, 62:14, 62:21, 66:20, 67:19, 78:1, 135:1, 158:16, 169:15, 175:1, 176:21

**Rice's** [1] - 158:4
**RICHARD** [1] - 2:20
**Richardson** [1] - 71:6
**Rick** [1] - 49:20
**Rig** [1] - 7:12
**rig** [3] - 9:10, 9:11, 183:1
**RIG** [1] - 1:4
**rightfully** [1] - 130:18
**rights** [28] - 14:14, 14:17, 15:3, 18:16, 74:1, 74:2, 74:3, 97:16, 97:22, 113:5, 121:23, 132:5, 149:1, 207:17, 212:9, 217:17, 241:25, 242:6, 245:7, 245:8, 245:9, 245:13, 245:16, 246:2, 248:16, 248:20, 261:22, 267:12
**ring** [1] - 215:4
**rise** [8] - 7:7, 100:23, 100:25, 179:1, 180:7, 199:4, 261:12, 279:18
**risk** [17] - 26:15, 27:6, 34:14, 34:20, 34:25, 35:1, 35:3, 40:9, 41:9, 41:16, 44:11, 60:18, 75:9, 79:4, 162:7, 183:11, 274:4
**risk-free** [1] - 75:9
**risks** [6] - 27:2, 35:1, 44:4, 44:20, 58:1, 213:13
**River** [1] - 131:10
**RMR** [2] - 3:14, 280:13
**road** [3] - 190:25, 207:13, 256:7
**roadblock** [1] - 268:6
**Robert** [2] - 78:16, 229:22
**ROBERT** [2] - 2:24, 3:6
**Roberts** [3] - 75:20, 75:21, 80:10
**ROBERTS** [4] - 3:7, 75:22, 76:1, 76:5
**Roberts's** [1] - 145:15
**ROBERTS..................
........................** [1] - 4:15
**ROBIN** [1] - 2:7
**Robin** [1] - 180:13
**Robins** [5] - 44:15, 127:12, 127:15, 127:16, 160:15
**robo** [1] - 72:18

**robust** [1] - 34:22
**role** [2] - 263:24, 263:25
**roles** [1] - 24:14
**Ronnie** [2] - 119:12, 130:16
**RONNIE** [1] - 3:5
**room** [7] - 9:2, 115:16, 116:15, 170:1, 241:15, 241:20, 259:21
**ROOM** [1] - 3:15
**rooms** [1] - 35:10
**Rosen** [2] - 235:24, 235:25
**Rouge** [2] - 239:22, 239:24
**rough** [2] - 65:11, 124:19
**roughly** [1] - 58:20
**round** [6] - 93:23, 141:15, 141:19, 163:14, 163:15, 163:20
**row** [1] - 225:10
**ROY** [6] - 1:21, 1:21, 19:13, 19:15, 20:19, 156:20
**Roy** [16] - 19:14, 19:15, 20:18, 33:1, 35:6, 36:23, 50:15, 82:10, 85:14, 132:20, 156:19, 156:20, 164:16, 165:8, 166:4, 210:11
**ROY..........................
................** [2] - 4:12, 5:9
**RTP** [30] - 28:9, 34:16, 41:19, 47:22, 48:25, 49:12, 63:23, 105:21, 107:10, 107:16, 107:18, 107:21, 107:25, 108:4, 109:8, 109:11, 114:18, 118:6, 118:7, 118:19, 118:24, 144:1, 144:2, 144:11, 158:6, 162:3, 162:16, 162:22, 163:12, 274:1
**RTP's** [18] - 27:6, 29:3, 34:15, 35:2, 44:3, 44:11, 44:18, 44:23, 47:8, 47:10, 48:3, 48:10, 138:10, 148:14, 158:22, 160:18, 161:19,

162:14
**rule** [3] - 10:12, 41:11, 172:11
**Rule** [22] - 15:7, 15:8, 15:17, 15:19, 16:12, 17:5, 17:13, 23:17, 31:8, 32:18, 53:14, 53:21, 120:4, 128:8, 197:8, 197:18, 198:15, 226:6, 226:12, 227:18, 262:3, 262:24
**ruled** [1] - 172:8
**Rules** [5] - 15:7, 61:3, 178:2
**rules** [9] - 161:9, 203:18, 212:11, 225:6, 225:7, 225:16, 225:17, 235:10, 263:17
**ruling** [5] - 126:18, 266:25, 272:22, 279:2, 279:16
**rulings** [1] - 61:3
**run** [3] - 82:14, 147:22, 245:3
**running** [9] - 44:16, 100:2, 191:8, 192:15, 193:1, 193:3, 196:13, 253:1, 253:4
**runs** [1] - 262:18
**rural** [1] - 35:16
**rush** [1] - 92:11

# S

**s/Cathy** [1] - 280:12
**sacrifice** [1] - 134:2
**safe** [2] - 8:12, 135:8
**safeguard** [1] - 157:15
**safely** [2] - 8:4, 135:10
**sales** [2] - 30:19, 93:7
**Sally** [1] - 268:22
**salve** [1] - 187:17
**sampling** [1] - 190:14
**San** [1] - 228:10
**SAN** [1] - 2:4
**sand** [1] - 131:6
**Sandestin** [2] - 118:1, 118:3
**sat** [3] - 41:7, 203:21, 266:9
**satisfaction** [1] - 278:11
**satisfactory** [1] - 76:23
**satisfied** [7] - 13:12, 15:19, 29:11, 29:12,

42:1, 74:15, 199:1
**satisfies** [1] - 69:7
**satisfy** [2] - 45:2, 45:16
**satisfying** [1] - 222:8
**SAUN** [3] - 239:24, 240:6, 240:7
**save** [2] - 22:16, 144:6
**saving** [1] - 237:11
**saw** [8] - 80:21, 84:1, 117:9, 162:9, 171:18, 210:9, 251:22, 264:4
**sawyer** [1] - 264:7
**Sawyer** [5] - 233:12, 264:8, 264:11, 264:15, 264:17
**scale** [2] - 135:20, 243:8
**scant** [1] - 70:15
**SCAT** [2] - 159:21
**scheduled** [2] - 10:25, 23:11
**scheme** [1] - 178:3
**scholar** [1] - 69:14
**scholars** [1] - 226:9
**School** [1] - 71:4
**school** [1] - 56:5
**science** [4] - 25:5, 166:7, 184:22, 218:16
**scientific** [3] - 77:15, 177:19, 212:18
**scratch** [2] - 265:25, 266:1
**screen** [2] - 271:5, 271:12
**screening** [1] - 252:22
**screwed** [1] - 22:19
**scripts** [1] - 228:11
**se** [4] - 194:18, 195:5, 232:20, 261:7
**seabed** [3] - 174:24, 175:13, 175:24
**SEAFOOD** [1] - 5:2
**seafood** [55] - 27:19, 27:21, 27:22, 27:24, 28:8, 28:13, 28:18, 29:2, 29:10, 29:15, 30:4, 30:8, 38:14, 38:18, 39:1, 39:10, 42:16, 42:19, 44:1, 44:2, 44:6, 44:8, 44:16, 44:23, 45:1, 45:2, 45:21, 46:3, 46:10, 46:20, 57:6, 57:10, 57:16, 59:13, 59:14, 59:17, 60:7, 60:10, 63:24, 69:19, 75:24, 77:8, 137:25,

148:4, 148:11,
152:13, 153:11,
156:22, 157:4,
157:5, 157:14,
161:4, 166:24, 275:9
**Seafood** [18] - 13:22,
42:13, 43:24, 44:2,
47:2, 48:1, 76:2,
76:21, 77:4, 77:13,
79:2, 133:6, 134:12,
135:15, 146:3,
148:22, 149:23,
161:15
**seafood-related** -
153:11
**seagulls** [1] - 127:19
**sealed** [1] - 62:15
**seamless** [1] - 11:20
**search** [2] - 190:12,
262:22
**searchable** [1] -
190:11
**searched** [2] - 90:13,
90:21
**season** [1] - 37:19
**seasonal** [2] - 148:9,
148:11
**seated** [4] - 7:9, 101:1,
165:4, 180:8
**Second** [1] - 62:8
**second** [42] - 7:20,
9:1, 32:8, 34:2,
57:21, 77:9, 79:12,
82:3, 84:18, 90:5,
98:17, 99:19,
122:20, 123:2,
123:7, 125:16,
126:14, 135:19,
139:15, 139:19,
140:16, 140:24,
141:2, 146:9,
146:16, 157:14,
157:23, 157:24,
158:1, 163:15,
163:19, 168:16,
171:13, 194:15,
203:7, 210:23,
211:14, 217:5,
224:23, 244:2,
270:6, 270:23
**secondary** [1] - 65:9
**secondly** [5] - 15:10,
79:6, 140:10,
176:13, 277:4
**seconds** [1] - 155:20
**SECOUR** [2] - 1:12,
4:5
**Secour** [2] - 7:15, 7:19
**Secretary** [1] - 69:24
**Section** [4] - 36:24,

62:13, 129:24
**section** [2] - 89:12,
91:20
**sections** [1] - 68:22
**Securities** [1] - 130:1
**SECURITY** [1] -
203:25
**see** [38] - 11:15, 30:13,
35:4, 35:5, 35:12,
40:18, 49:22, 58:5,
61:15, 85:17, 86:14,
87:4, 89:13, 90:5,
119:3, 122:9, 125:5,
125:20, 136:23,
141:7, 142:6, 148:9,
186:9, 198:5,
212:13, 220:1,
239:3, 240:24,
244:10, 244:15,
244:20, 244:21,
247:13, 259:13,
271:5, 271:13, 278:4
**seeing** [6] - 67:1, 87:8,
89:23, 96:4, 185:6,
230:15
**seek** [7] - 22:20,
55:15, 157:12,
185:24, 188:5,
190:25, 191:14
**seeking** [3] - 26:10,
55:21, 117:21
**seem** [5] - 43:5, 61:16,
108:21, 109:23,
172:24
**sees** [1] - 71:15
**seized** [2] - 164:7,
165:12
**select** [1] - 278:10
**selected** [1] - 88:2
**self** [1] - 134:13
**self-evident** [1] -
134:13
**send** [6] - 87:9, 87:15,
87:18, 90:24, 253:7,
273:12
**sending** [2] - 97:15,
191:16
**sends** [1] - 237:25
**sense** [13] - 24:23,
36:12, 44:18, 88:11,
91:17, 107:18,
140:2, 142:11,
169:9, 203:6,
211:16, 268:5
**sensitive** [2] - 132:4,
233:19
**sensitivity** [1] - 258:20
**sent** [9] - 22:18, 67:22,
86:6, 86:19, 95:18,
95:23, 97:13, 227:9,

271:4
**separate** [7] - 7:25,
10:1, 14:21, 16:1,
137:16, 170:18,
209:23
**separated** [1] - 137:14
**separately** [1] - 7:24
**separation** [1] - 226:5
**September** [1] - 13:2
**serial** [3] - 224:1,
224:5, 224:13
**serious** [3] - 209:1,
227:23, 234:14
**seriously** [1] - 268:23
**seriousness** [1] -
176:15
**serve** [2] - 11:24,
272:14
**serves** [1] - 71:3
**service** [2] - 83:17,
247:8
**services** [7] - 107:5,
107:14, 192:21,
216:17, 217:23,
218:5, 247:6
**serving** [1] - 273:14
**session** [1] - 101:2
**set** [22] - 10:4, 12:9,
12:11, 12:19, 12:24,
13:4, 30:15, 51:13,
71:21, 74:3, 99:6,
118:23, 139:25,
147:11, 221:3,
235:10, 236:24,
241:7, 247:12,
253:2, 257:25, 269:3
**setoff** [1] - 41:17
**sets** [1] - 198:8
**settle** [12] - 22:11,
26:8, 34:11, 34:13,
40:5, 68:3, 220:11,
236:6, 236:9,
236:10, 269:8,
274:10
**settleable** [1] - 213:18
**settled** [7] - 34:4,
34:5, 41:17, 54:13,
65:23, 213:18, 272:9
**settlement** [397] -
7:20, 7:22, 7:25, 8:1,
8:4, 8:7, 8:10, 8:16,
8:18, 10:6, 10:8,
11:3, 11:21, 12:6,
12:16, 13:8, 13:10,
13:11, 13:24, 14:2,
14:9, 14:13, 14:16,
16:8, 17:2, 17:14,
17:16, 17:19, 17:25,
19:1, 19:2, 19:7,
19:12, 21:1, 21:5,

21:6, 21:9, 21:12,
21:15, 21:18, 21:23,
22:8, 22:14, 22:23,
23:2, 23:6, 23:12,
23:14, 23:18, 24:2,
24:5, 24:7, 24:9,
24:10, 25:16, 25:17,
26:15, 27:2, 27:10,
27:14, 27:15, 28:12,
28:25, 29:16, 29:21,
29:25, 30:21, 31:6,
33:13, 33:15, 33:21,
34:14, 34:21, 34:24,
36:25, 37:12, 39:3,
39:7, 41:21, 43:22,
45:5, 45:9, 47:7,
48:5, 50:5, 50:9,
50:13, 50:17, 50:21,
51:3, 51:6, 51:17,
51:24, 52:4, 52:14,
53:3, 53:7, 53:8,
54:15, 55:25, 56:25,
57:4, 57:7, 57:12,
61:12, 62:14, 62:20,
63:21, 64:12, 64:17,
64:25, 65:4, 65:18,
65:21, 66:5, 68:6,
68:7, 68:9, 68:23,
69:5, 69:13, 72:21,
73:3, 73:5, 74:19,
75:3, 75:15, 76:14,
76:24, 78:1, 78:8,
78:11, 78:23, 79:11,
79:25, 80:6, 80:25,
81:8, 84:2, 84:20,
89:9, 89:11, 89:22,
90:7, 92:5, 92:23,
97:23, 99:6, 99:24,
101:11, 102:1,
102:13, 102:25,
103:5, 105:7,
107:19, 108:16,
108:21, 109:1,
109:20, 109:24,
110:8, 110:9, 112:6,
113:5, 113:24,
114:6, 114:13,
115:7, 115:19,
115:21, 115:25,
116:9, 118:4, 119:3,
119:4, 119:25,
120:13, 121:24,
123:10, 124:13,
125:24, 126:4,
126:5, 126:7,
126:23, 129:10,
129:18, 129:19,
129:20, 132:16,
132:22, 134:4,
136:15, 137:22,
138:7, 138:8,

149:13, 149:15,
149:16, 150:5,
150:16, 151:14,
152:25, 153:4,
154:11, 154:13,
154:19, 158:2,
159:2, 159:11,
159:16, 165:7,
166:8, 167:6, 167:9,
167:20, 168:10,
168:13, 169:24,
169:25, 170:2,
171:8, 176:7, 176:8,
177:13, 177:17,
178:3, 178:19,
178:25, 180:10,
180:23, 181:3,
181:4, 181:5,
181:18, 181:21,
183:14, 183:19,
184:2, 184:3, 184:4,
184:9, 184:10,
184:19, 184:20,
186:12, 190:6,
191:5, 191:18,
191:19, 192:14,
194:10, 194:14,
195:2, 195:3, 195:6,
195:11, 195:16,
195:17, 195:18,
196:2, 196:6,
196:11, 196:22,
197:2, 197:4, 197:9,
197:15, 198:2,
198:15, 200:11,
201:15, 202:9,
205:5, 205:6, 205:8,
205:25, 206:4,
208:12, 208:20,
210:21, 211:8,
211:18, 212:17,
214:20, 215:2,
215:19, 215:22,
216:13, 217:5,
218:15, 220:20,
221:4, 221:17,
221:23, 222:3,
222:9, 226:22,
226:23, 227:8,
227:10, 227:11,
228:1, 228:4, 229:7,
229:11, 230:5,
231:3, 231:7, 231:8,
231:18, 231:20,
231:21, 232:9,
232:10, 233:21,
234:4, 234:12,
234:22, 235:13,
235:15, 236:5,
236:15, 236:16,
238:6, 238:10,

Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 11/02/18 Page 322 of 329
Case 2:10-md-02179-CJB-DPC Document 3892-8 Filed 11/04/11 Page 321 of 328

41

239:5, 242:3,
242:15, 244:19,
245:5, 245:15,
245:20, 246:14,
247:1, 248:12,
248:14, 248:15,
252:9, 252:25,
258:12, 258:21,
258:22, 259:8,
259:11, 259:16,
259:19, 260:17,
262:2, 262:3, 262:7,
263:1, 263:13,
263:16, 263:25,
265:7, 265:11,
265:12, 266:3,
266:20, 267:9,
267:17, 267:23,
268:1, 270:10,
270:12, 272:6,
272:15, 273:13,
273:20, 274:9,
274:10, 274:13,
274:15, 274:18,
274:22, 275:6,
275:8, 275:10,
275:23, 276:4,
276:5, 276:11,
276:16, 277:5,
277:8, 278:5, 279:8,
279:14
**SETTLEMENT** [3] -
3:3, 5:14, 5:19
**settlement's** [5] -
192:7, 193:4, 194:8,
194:24, 259:5
**SETTLEMENT.........**
[1] - 4:8
**SETTLEMENT..........**
.. [1] - 4:6
**settlements** [57] -
7:18, 9:5, 10:19,
11:5, 11:12, 11:16,
11:25, 12:1, 12:4,
12:7, 12:13, 12:23,
13:3, 14:17, 14:24,
15:2, 15:3, 18:21,
18:23, 18:24, 23:22,
30:3, 30:22, 53:11,
56:23, 57:2, 69:17,
102:9, 103:11,
118:17, 130:3,
178:10, 183:20,
183:21, 193:6,
209:8, 211:6, 219:4,
248:17, 262:8,
262:12, 263:4,
263:5, 267:2,
267:13, 267:18,
267:20, 268:10,

268:25, 269:2,
270:4, 272:23,
275:24, 277:23,
279:5
**settling** [1] - 256:6
**seven** [10] - 47:9,
47:12, 47:13, 47:14,
47:22, 57:16,
162:21, 166:12,
176:24, 178:11
**Seventh** [1] - 32:13
**seventy** [2] - 93:13,
210:14
**several** [9] - 9:9,
25:20, 45:9, 73:25,
181:10, 183:5,
189:18, 224:20,
278:17
**severe** [2] - 156:25,
237:23
**severely** [1] - 143:7
**severity** [2] - 134:5,
188:13
**shake** [1] - 28:18
**shape** [1] - 195:20
**share** [2] - 133:16,
189:3
**shareholder** [1] - 9:25
**Sharp** [1] - 71:9
**shed** [1] - 241:8
**Sheet** [1] - 105:14
**sheet** [1] - 275:23
**Shell** [2] - 200:3,
201:4
**SHELL** [1] - 2:17
**Sherman** [1] - 166:19
**shift** [2] - 244:2,
249:23
**shipbuilding** [1] -
35:23
**shore** [3] - 44:17,
135:10, 237:13
**shorelines** [2] -
241:14, 241:22
**Shores** [4] - 122:6,
123:12, 123:14,
125:2
**short** [13] - 62:1, 89:8,
93:20, 181:6, 181:9,
182:7, 222:12,
225:24, 237:10,
261:13, 278:9,
279:4, 279:16
**short-term** [2] - 181:6,
261:13
**shot** [1] - 117:22
**show** [15] - 63:16,
67:10, 89:18, 92:6,
94:24, 104:10,
109:1, 187:1,

187:18, 203:5,
232:11, 233:6,
233:14, 255:20,
259:22
**showed** [2] - 171:2,
243:23
**showing** [3] - 109:4,
109:11, 230:18
**shows** [12] - 80:3,
95:2, 95:12, 107:20,
108:25, 109:14,
113:20, 148:4,
148:8, 172:17,
172:20, 245:6
**shred** [1] - 230:16
**Shreveport** [1] - 92:4
**shrimp** [14] - 46:22,
46:24, 58:17, 59:1,
76:14, 76:15, 76:17,
77:23, 79:6, 135:2,
141:18, 148:12,
173:2, 173:17
**shrimper** [2] - 28:16,
43:3
**shrimpers** [4] - 29:11,
58:20, 136:19,
173:20
**shuffled** [1] - 244:22
**Shushan** [28] - 11:2,
11:7, 11:10, 11:14,
20:20, 49:21, 52:7,
64:21, 80:17, 82:22,
115:14, 158:18,
197:1, 212:24,
215:21, 236:18,
251:8, 251:22,
266:21, 267:14,
268:9, 268:15,
268:20, 268:21,
268:22, 271:4,
275:20, 275:25
**Shushan's** [1] - 111:4
**shuttle** [1] - 213:2
**sic]** [1] - 228:20
**sick** [13] - 230:11,
232:1, 232:2, 232:3,
234:2, 234:5,
236:23, 236:25,
238:3, 238:7,
255:12, 259:15,
259:20
**side** [12] - 88:13, 89:1,
89:2, 91:19, 95:2,
103:5, 105:16,
107:17, 111:12,
116:24, 157:18,
213:22
**sideline** [1] - 210:10
**sides** [7] - 26:25, 67:6,
68:12, 170:9, 203:3,

236:18, 265:20
**sight** [4] - 177:7,
177:9, 265:23, 279:7
**sign** [4] - 10:8, 72:16,
73:13, 270:13
**signature** [2] - 72:18,
94:2
**signatures** [1] - 73:16
**signed** [11] - 72:18,
72:19, 72:20, 88:17,
90:20, 91:21, 94:17,
94:18, 94:20,
168:10, 275:22
**significance** [1] - 50:9
**significant** [12] - 36:3,
38:18, 76:12, 82:1,
85:24, 86:8, 95:13,
114:4, 139:18,
213:19, 218:3,
234:20
**significantly** [2] -
35:3, 79:25
**signing** [1] - 73:17
**signs** [1] - 260:14
**similar** [8] - 44:3,
58:25, 183:15,
183:25, 184:17,
193:5, 255:2, 270:15
**similarly** [5] - 103:1,
117:18, 119:22,
162:2, 164:11
**simple** [10] - 54:24,
98:10, 113:1, 176:5,
176:11, 184:11,
212:5, 256:11,
256:17, 263:11
**simpler** [1] - 212:6
**simplified** [1] - 209:19
**simply** [15] - 14:13,
27:12, 60:4, 77:2,
91:13, 95:12,
105:22, 118:11,
175:10, 175:15,
204:23, 228:17,
262:3, 262:15,
263:21
**simultaneously** [2] -
83:13, 226:4
**single** [14] - 31:16,
31:18, 36:5, 56:25,
69:12, 76:23, 181:3,
185:13, 199:15,
202:8, 205:18,
244:14, 252:6
**singularly** [1] - 222:8
**sit** [7] - 39:12, 46:6,
66:20, 127:7, 165:2,
175:1, 270:22
**site** [9] - 82:6, 83:13,
156:9, 203:22,

204:2, 204:3,
204:11, 204:12
**sitting** [3] - 35:10,
61:5, 127:1
**situated** [3] - 103:1,
117:19, 119:22
**situation** [2] - 171:25,
187:9
**six** [25] - 13:18, 17:23,
23:10, 25:14, 43:13,
47:9, 47:11, 47:14,
47:21, 47:22, 56:13,
56:15, 64:16, 69:6,
137:24, 138:21,
163:12, 163:13,
172:24, 175:1,
178:8, 184:6, 249:14
**six-hour** [2] - 175:1
**sixth** [4] - 18:4, 120:3,
120:6, 190:22
**Sixth** [2] - 62:6, 73:15
**size** [3] - 61:13, 61:19,
61:20
**skeptical** [1] - 197:22
**skeptics** [1] - 198:4
**skill** [1] - 278:1
**skin** [2] - 232:25,
250:19
**skip** [1] - 90:15
**slide** [38] - 54:25,
85:6, 86:6, 107:19,
111:22, 111:23,
119:24, 122:8,
122:12, 122:18,
123:18, 124:10,
125:3, 125:5, 125:9,
125:13, 125:19,
126:18, 129:8,
129:16, 135:24,
160:17, 169:4,
172:18, 172:20,
173:1, 173:15,
177:8, 208:16,
209:8, 217:4,
232:23, 242:12,
243:22, 256:1,
256:3, 256:4, 259:24
**Slide** [3] - 58:2,
109:14, 177:6
**slides** [7] - 222:15,
222:17, 222:19,
240:24, 266:16,
266:17, 266:18
**sliding** [1] - 242:1
**slip** [1] - 229:6
**slow** [1] - 82:15
**slowly** [1] - 278:21
**small** [18] - 71:15,
74:11, 121:1,
129:22, 135:20,

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 04/02/18 Page 323 of 329
Case 2:10-md-02179-CJB-DCW Document 23892-8 Filed 11/54/11 Page 322 of 328

42

192:7, 193:7, 193:17, 194:7, 194:23, 208:19, 210:20, 220:19, 261:15, 261:20, 262:4
**smaller** [1] - 74:12
**smallest** [1] - 124:13
**smell** [1] - 254:7
**SMITH** [45] - 3:4, 101:8, 101:12, 101:17, 101:23, 102:5, 103:9, 103:14, 103:20, 104:5, 104:7, 104:9, 106:4, 106:9, 108:8, 108:10, 108:14, 108:24, 109:25, 110:17, 110:23, 111:6, 111:14, 111:19, 112:1, 112:5, 112:9, 112:14, 112:25, 113:2, 113:11, 113:15, 113:20, 115:4, 115:9, 115:24, 116:6, 116:14, 116:16, 116:20, 117:1, 117:8, 117:13, 117:18, 119:8
**Smith** [14] - 59:12, 69:21, 101:4, 101:7, 102:11, 115:3, 119:7, 145:10, 168:4, 168:6, 169:23, 170:16, 170:21, 210:19
**Smith's** [3] - 58:2, 164:2, 177:20
**SMITH**.......................
...................... [1] - 4:20
**smokers** [1] - 237:6
**smoking** [1] - 247:10
**so-called** [5] - 11:19, 127:3, 150:15, 224:1, 264:20
**social** [5] - 53:16, 54:3, 54:11, 178:13, 232:16
**sold** [1] - 171:2
**sole** [1] - 26:8
**solely** [2] - 43:17, 209:16
**solicit** [1] - 157:4
**solid** [1] - 214:17
**solo** [1] - 261:21
**solution** [12] - 106:8, 106:11, 129:9,

143:18, 143:19, 145:24, 145:25, 146:2, 146:7, 146:8, 228:24, 262:1
**solutions** [1] - 114:24
**solve** [1] - 91:6
**solvents** [1] - 233:19
**solves** [1] - 261:22
**someone** [32] - 12:13, 33:8, 63:3, 71:22, 84:1, 97:12, 108:12, 152:3, 152:5, 170:11, 174:1, 186:20, 203:9, 203:11, 206:15, 215:3, 220:17, 225:1, 225:10, 231:23, 237:9, 240:4, 244:15, 246:8, 246:13, 252:21, 253:11, 256:18, 265:8, 270:4, 276:19, 279:10
**sometimes** [6] - 10:5, 110:9, 150:4, 177:7, 177:9, 198:1
**somewhat** [6] - 39:22, 70:10, 165:25, 184:7, 221:1, 256:15
**somewhere** [4] - 103:12, 105:25, 127:6, 271:7
**soon** [5] - 137:22, 253:10, 253:12, 253:13, 259:1
**sorry** [8] - 19:17, 88:5, 122:25, 137:7, 142:15, 224:23, 225:15, 225:18
**sort** [12] - 90:23, 98:14, 110:25, 140:16, 154:4, 182:16, 247:2, 261:9, 267:25, 275:15
**sorts** [1] - 190:12
**sought** [2] - 19:6, 226:17
**sound** [1] - 144:2
**sounded** [1] - 252:4
**sounds** [5] - 111:12, 115:15, 116:11, 116:15, 126:15
**source** [4] - 32:16, 59:19, 92:20, 92:21
**sources** [5] - 29:14, 82:18, 83:19, 145:13, 215:10
**south** [1] - 106:19

**Southern** [1] - 129:24
**space** [1] - 202:3
**Spanish** [2] - 250:8, 251:14
**SPC** [1] - 188:11
**SPEAKER** [5] - 204:3, 204:8, 204:11, 204:15, 204:17
**speakers** [3] - 8:2, 20:9, 275:8
**speaking** [6] - 24:13, 27:1, 40:23, 131:12, 212:14, 244:19
**special** [3] - 98:19, 98:20, 99:9
**specialist** [1] - 220:7
**specific** [21] - 31:5, 32:21, 35:7, 35:11, 77:1, 81:7, 91:7, 111:7, 130:3, 130:6, 143:23, 146:4, 202:10, 202:11, 207:3, 222:1, 260:18, 260:22, 265:2
**specifically** [6] - 36:24, 50:2, 76:21, 88:22, 98:7, 113:4
**specified** [6] - 13:16, 73:20, 184:14, 184:15, 186:15, 205:11
**Specified** [5] - 185:17, 195:22, 229:19, 248:25, 257:22
**SPECIFIED** [1] - 6:1
**speculate** [1] - 134:8
**speculation** [4] - 59:19, 221:16, 264:11, 265:9
**speed** [2] - 100:1, 100:2
**spelled** [2] - 175:6, 235:25
**spend** [7] - 64:22, 65:20, 116:12, 117:25, 124:15, 176:23, 193:6
**spent** [9] - 87:1, 139:13, 152:12, 152:18, 184:24, 229:9, 229:10, 247:5, 270:20
**sphere** [1] - 205:4
**SPILL** [1] - 1:4
**Spill** [1] - 7:11
**spill** [43] - 9:11, 21:4, 21:10, 35:18, 35:25, 37:1, 50:7, 50:14, 51:9, 53:5, 65:10,

78:15, 122:14, 122:16, 128:21, 133:14, 133:21, 134:11, 143:9, 143:10, 143:11, 148:10, 169:7, 176:17, 180:25, 181:7, 182:1, 182:2, 183:7, 188:20, 188:22, 189:24, 190:4, 190:15, 197:18, 214:14, 234:5, 255:16, 258:7, 264:7, 269:13, 269:22
**spills** [4] - 53:6, 78:14, 198:12, 261:11
**spoken** [1] - 216:11
**sponsor** [2] - 45:24, 45:25
**sponsor's** [1] - 161:16
**spot** [1] - 218:21
**spouse** [2] - 187:14, 187:15
**sprawling** [1] - 102:17
**spreadsheet** [3] - 97:1, 97:2, 97:13
**spring** [1] - 49:24
**square** [1] - 116:12
**SQUARE** [1] - 2:17
**stacks** [2] - 67:2, 67:16
**Stag** [1] - 210:19
**stage** [3] - 18:1, 213:19, 270:7
**staged** [1] - 175:5
**stand** [10] - 40:5, 65:14, 89:5, 133:10, 135:14, 197:16, 217:2, 225:11, 239:7, 263:12
**standard** [19] - 15:5, 17:9, 17:16, 29:22, 31:14, 32:2, 33:7, 53:14, 172:15, 173:18, 173:19, 173:24, 173:25, 174:1, 178:7, 264:2, 265:23, 266:1, 274:2
**STANDARD**...............
....................... [1] - 4:10
**standardization** [1] - 83:7
**standards** [5] - 17:10, 29:23, 118:12, 206:10, 221:22
**standing** [20] - 15:2, 18:15, 24:4, 63:16, 73:3, 121:23,

160:14, 165:1, 172:7, 172:8, 172:11, 180:20, 209:12, 210:2, 226:11, 227:5, 231:17, 241:2, 242:13, 267:12
**standpoint** [3] - 157:10, 222:2, 247:4
**stands** [1] - 53:10
**star** [1] - 159:5
**start** [20] - 24:17, 25:9, 55:6, 86:12, 86:14, 116:12, 119:18, 152:24, 168:4, 181:1, 202:19, 211:7, 211:19, 212:21, 216:12, 218:23, 233:24, 253:16, 259:1, 268:8
**started** [13] - 24:17, 26:7, 84:5, 85:5, 100:2, 100:8, 154:16, 191:4, 192:11, 200:15, 202:18, 258:11, 265:16
**starting** [1] - 117:3
**starts** [5] - 86:11, 86:15, 166:10, 172:13
**state** [17] - 18:17, 19:5, 30:16, 34:7, 37:3, 53:12, 66:12, 103:6, 113:22, 132:5, 148:13, 171:1, 184:21, 213:16, 215:7, 226:15, 245:11
**State** [4] - 18:19, 18:25, 130:18, 280:4
**statement** [3] - 45:18, 92:6, 96:18
**statements** [10] - 34:22, 45:24, 92:16, 92:18, 92:19, 92:21, 92:25, 118:17, 137:21, 167:13
**STATES** [2] - 1:1, 1:17
**States** [16] - 18:19, 19:4, 19:5, 22:3, 22:5, 37:10, 130:20, 131:21, 171:19, 235:3, 235:7, 241:13, 269:15, 270:20, 280:5, 280:15
**states** [16] - 18:25, 19:4, 37:9, 50:1, 50:25, 64:7, 70:5,

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 04/04/18 Page 324 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 323 of 328

43

114:9, 114:10, 131:4, 131:23, 132:3, 132:8, 132:23, 172:2, 183:20

**stating** [1] - 204:23
**station** [3] - 251:21, 252:19, 260:11
**stations** [2] - 251:24, 252:1
**statistic** [1] - 57:1
**statistics** [1] - 85:13
**status** [2] - 80:22, 186:1
**statute** [6] - 23:9, 32:12, 39:20, 51:8, 207:8, 276:8
**statutes** [1] - 206:11
**statutory** [1] - 226:16
**stay** [6] - 8:9, 13:7, 252:9, 273:10, 274:11, 275:10
**stayed** [1] - 193:17
**staying** [3] - 165:2, 165:3
**steady** [3] - 85:10, 85:17, 86:16
**Steel** [1] - 62:7
**Steering** [17] - 13:25, 24:21, 180:13, 198:23, 199:11, 199:23, 200:2, 200:7, 200:8, 200:10, 200:19, 200:24, 201:12, 202:2, 202:13, 202:16, 202:23
**steering** [1] - 246:7
**stellar** [1] - 236:14
**STENOGRAPHY** [1] - 3:18
**step** [9] - 8:21, 25:22, 40:7, 49:25, 82:25, 166:15, 167:8, 264:10
**Stephanie** [1] - 7:10
**STEPHEN** [1] - 1:24
**steps** [2] - 177:15, 264:12
**Sterbcow** [6] - 210:3, 210:4, 239:17, 240:5, 249:4
**STERBCOW** [1] - 210:6
**Steve** [3] - 29:4, 31:3, 160:5
**stigma** [4] - 126:15, 126:19, 154:2, 176:16
**still** [35] - 28:3, 42:22,

63:9, 74:21, 83:6, 88:8, 90:16, 92:4, 111:17, 135:15, 139:13, 144:4, 153:4, 162:15, 163:7, 166:9, 168:25, 183:8, 188:8, 188:24, 207:17, 210:15, 225:1, 232:4, 236:4, 239:9, 246:17, 250:18, 251:18, 255:18, 257:7, 269:19, 269:22
**stimulate** [1] - 176:15
**stipulation** [1] - 13:24
**stone** [1] - 158:25
**stop** [3] - 145:7, 224:23, 247:10
**stopped** [2] - 54:20, 236:14
**stops** [1] - 125:17
**store** [2] - 82:17, 109:7
**straight** [2] - 97:12, 104:3
**straightforward** [4] - 195:8, 212:5, 256:11, 279:13
**stream** [2] - 225:8, 225:13
**streaming** [2] - 203:10, 225:1
**streamlined** [1] - 255:22
**streams** [2] - 114:20, 144:18
**street** [5] - 68:20, 104:18, 105:5, 106:2, 107:15
**STREET** [5] - 1:22, 2:4, 2:17, 2:24, 3:15
**strike** [1] - 247:17
**strikes** [3] - 59:8, 111:1, 144:17
**strip** [3] - 74:10, 208:13, 263:20
**stripes** [1] - 135:20
**stroke** [1] - 17:1
**strong** [2] - 161:22, 238:25
**strongest** [1] - 195:10
**structural** [3] - 65:1, 166:25, 205:7
**structure** [3] - 52:12, 188:11, 219:1
**structured** [4] - 106:12, 205:5, 219:15, 276:6
**struggle** [1] - 251:11

**Stuart** [2] - 101:4, 102:11
**STUART** [1] - 3:4
**studied** [2] - 60:1, 69:22
**studiously** [1] - 197:14
**study** [1] - 104:10
**studying** [1] - 60:1
**stuff** [3] - 93:21, 131:11, 147:2
**stunning** [2] - 56:25, 59:11
**Sturdivant** [3] - 149:10, 152:8, 223:4
**STURDIVANT** [2] - 5:6, 5:25
**Sturdivants** [1] - 228:6
**styled** [1] - 9:15
**subcategories** [2] - 82:9, 135:11
**subcontractors** [1] - 14:5
**subject** [6] - 21:23, 35:9, 37:5, 120:13, 130:5, 182:18
**subjected** [1] - 159:4
**subjective** [5] - 21:21, 159:4, 159:6, 159:20, 159:23
**submission** [4] - 46:8, 46:17, 55:11, 193:12
**submissions** [2] - 77:17, 94:15
**submit** [14] - 29:21, 89:18, 100:13, 128:20, 128:22, 128:25, 167:14, 172:17, 185:20, 201:11, 224:17, 258:4, 260:11, 278:9
**submitted** [17] - 19:25, 20:6, 31:8, 38:25, 39:18, 46:8, 46:18, 78:10, 97:2, 154:5, 174:5, 191:17, 235:22, 236:11, 250:1, 275:22, 278:12
**submitting** [3] - 93:9, 253:19, 253:23
**subs** [1] - 40:25
**subsections** [1] - 16:12
**subset** [3] - 94:18, 94:23, 97:19
**subsistence** [2] - 13:22, 70:25
**substances** [1] -

203:6
**substantial** [6] - 68:6, 77:6, 84:17, 109:16, 215:10, 224:20
**substantially** [2] - 79:14, 175:21
**substantiated** [1] - 214:19
**substantive** [4] - 44:10, 226:7, 226:14, 226:17
**succeed** [2] - 75:9, 198:10
**success** [7] - 18:3, 68:5, 79:22, 213:24, 238:19, 272:4, 272:8
**successful** [2] - 75:9, 214:4
**sudden** [1] - 161:1
**sue** [3] - 124:20, 190:22, 245:8
**suffer** [2] - 41:13, 261:16
**suffered** [3] - 17:4, 21:7, 182:13
**suffering** [3] - 248:23, 249:18, 249:21
**suffice** [1] - 27:25
**sufficient** [12] - 16:13, 46:3, 46:11, 60:23, 146:23, 162:17, 188:5, 203:1, 214:22, 215:16, 242:5, 279:4
**sufficiently** [1] - 138:6
**suffocating** [1] - 237:24
**suggest** [5] - 59:17, 114:24, 116:16, 229:4, 234:9
**suggested** [3] - 35:6, 174:14, 212:14
**suggesting** [4] - 103:7, 111:5, 111:11, 275:5
**suggestions** [1] - 196:10
**suggestive** [1] - 44:1
**suggests** [2] - 230:17
**suit** [2] - 226:15, 260:1
**SUITE** [1] - 2:18
**sum** [4] - 82:1, 89:7, 110:8, 234:6
**summarized** [1] - 77:24
**summary** [5] - 79:9, 100:14, 119:2, 126:18, 126:19
**summation** [1] - 265:10

**summer** [5] - 25:12, 37:18, 49:23, 168:22, 270:20
**sums** [2] - 54:16, 262:4
**superficially** [1] - 30:23
**superior** [3] - 15:22, 54:1, 197:11
**superiority** [2] - 53:14, 53:22
**supervised** [4] - 11:20, 12:15, 21:6, 69:17
**supervision** [3] - 21:24, 22:6, 22:12
**supervisors** [1] - 250:3
**supervisory** [1] - 82:22
**supplemental** [1] - 131:19
**supplements** [1] - 47:24
**supplying** [1] - 78:6
**support** [24] - 12:22, 18:21, 34:24, 39:1, 51:24, 55:5, 76:2, 76:25, 77:7, 78:11, 79:10, 80:8, 102:21, 174:3, 208:10, 208:18, 208:20, 212:16, 217:25, 220:20, 236:16, 236:19, 266:3, 276:14
**supported** [3] - 77:14, 185:12, 221:9
**supporting** [5] - 12:22, 60:9, 156:4, 177:17, 235:22
**supports** [7] - 55:1, 55:3, 55:4, 64:15, 205:4, 208:17, 277:6
**suppose** [1] - 96:17
**supposed** [16] - 33:16, 63:2, 72:22, 90:6, 91:14, 92:6, 120:19, 120:23, 120:24, 123:10, 143:1, 143:2, 149:20, 149:22, 161:5, 251:18
**supposedly** [1] - 155:9
**Supreme** [6] - 16:19, 167:1, 186:4, 186:7, 199:6, 269:16
**surely** [1] - 194:8
**surprise** [1] - 278:11

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 02/02/18 Page 325 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 324 of 328

44

**surprised** [2] - 158:7, 249:7
**survey** [1] - 200:1
**survive** [1] - 102:22
**SUSAN** [2] - 5:7, 5:25
**Susan** [3] - 149:10, 152:8, 223:4
**suspect** [3] - 30:5, 160:11, 160:12
**sustain** [1] - 250:25
**sustained** [1] - 114:4
**swimming** [1] - 127:8
**sworn** [2] - 45:18, 45:23
**SWS-9** [1] - 90:11
**Sylvia** [4] - 268:14, 268:15, 268:20, 268:21
**symptom** [3] - 187:19, 187:23, 257:12
**symptoms** [20] - 181:20, 182:14, 185:11, 186:6, 186:15, 187:4, 203:5, 205:2, 205:12, 205:13, 206:8, 206:15, 207:16, 230:8, 237:18, 237:23, 256:22, 260:5, 261:13
**system** [17] - 22:5, 26:21, 50:10, 50:25, 53:5, 83:21, 84:15, 145:4, 183:25, 213:15, 232:18, 233:18, 235:12, 236:8, 236:13, 237:4, 237:7
**systemic** [2] - 108:25, 109:1
**systems** [2] - 83:16, 190:3

---

**T**

---

**table** [2] - 61:6, 237:17
**tactic** [1] - 147:11
**tale** [1] - 198:9
**talks** [2] - 121:14, 171:17
**tangible** [1] - 218:3
**tango** [1] - 158:23
**tar** [1] - 181:13
**task** [4] - 23:4, 111:7, 255:17, 268:9
**tasked** [2] - 144:12, 278:16
**tasks** [1] - 81:12

**tax** [15] - 37:23, 38:8, 39:13, 45:10, 45:11, 45:14, 89:8, 89:14, 89:15, 90:2, 92:16, 92:18, 121:2, 126:1, 159:18
**Tax** [1] - 71:9
**taxes** [8] - 30:19, 37:17, 37:21, 37:22, 38:9, 126:14, 127:25, 160:9
**taxi** [1] - 109:7
**Taylor** [4] - 69:25, 70:24, 131:19, 172:4
**teacher** [1] - 69:14
**teaching** [2] - 183:22, 219:5
**team** [11] - 25:8, 25:10, 25:13, 77:18, 77:21, 78:2, 79:21, 158:16, 169:14, 169:15, 242:13
**teams** [4] - 25:1, 51:20, 51:24, 91:5
**technical** [1] - 177:19
**technology** [2] - 82:16, 270:21
**tedious** [1] - 220:12
**telephone** [1] - 26:3
**ten** [7] - 26:17, 26:20, 48:22, 73:14, 83:8, 116:23
**tenaciously** [1] - 197:14
**tender** [3] - 222:16, 222:19, 266:16
**tens** [1] - 25:4
**terabytes** [2] - 25:3, 25:4
**term** [12] - 161:25, 162:7, 181:6, 199:3, 199:10, 233:25, 234:20, 261:13, 263:22, 275:23
**terminate** [2] - 62:19, 225:3
**terminating** [1] - 62:15
**terms** [33] - 50:20, 60:20, 61:12, 69:4, 70:4, 70:16, 70:23, 89:5, 95:25, 98:13, 99:19, 100:1, 147:13, 193:18, 200:20, 205:4, 206:22, 206:25, 209:2, 210:21, 211:2, 211:8, 211:24, 212:12, 216:14, 218:19,

218:21, 230:5, 234:12, 242:1, 274:9, 274:13, 276:10
**terrible** [2] - 264:5, 264:24
**terrific** [1] - 219:2
**test** [9] - 84:4, 92:2, 92:7, 92:9, 166:10, 198:15, 198:25, 279:12, 279:13
**testing** [5] - 83:20, 95:7, 233:14, 243:9
**tests** [7] - 215:24, 237:5, 245:3, 250:21, 250:22, 253:4
**Texas** [3] - 13:15, 55:9, 69:20
**texted** [1] - 271:9
**Thanh** [1] - 7:19
**THAT** [1] - 4:7
**THE** [338] - 1:4, 1:5, 1:17, 1:20, 2:3, 4:4, 4:5, 4:8, 4:21, 4:22, 5:2, 5:12, 5:19, 5:20, 6:10, 7:7, 7:8, 7:11, 7:17, 19:14, 19:17, 31:1, 42:3, 42:9, 48:2, 48:12, 48:14, 48:17, 48:21, 48:24, 49:2, 49:6, 49:13, 49:15, 49:17, 58:9, 58:12, 62:10, 65:25, 75:18, 75:23, 76:2, 80:10, 80:18, 87:7, 87:18, 87:23, 88:4, 88:7, 89:16, 89:23, 90:23, 92:11, 93:9, 93:16, 95:3, 95:8, 96:3, 96:10, 96:13, 96:16, 96:20, 97:1, 97:9, 97:21, 97:25, 98:10, 98:22, 98:25, 99:3, 99:24, 100:10, 100:16, 100:20, 100:23, 100:25, 101:1, 101:9, 101:15, 101:19, 102:3, 103:7, 103:11, 103:19, 104:2, 104:6, 104:8, 105:24, 106:5, 108:6, 108:9, 108:12, 108:15, 109:17, 110:5, 110:20, 110:24, 111:10, 111:16, 111:24, 112:3, 112:6, 112:10,

112:24, 113:1, 113:10, 113:13, 113:19, 115:3, 115:5, 115:10, 115:25, 116:11, 116:15, 116:18, 116:25, 117:5, 117:12, 117:17, 119:7, 119:9, 120:15, 121:3, 121:9, 121:19, 121:22, 122:22, 122:25, 123:3, 123:11, 123:14, 123:24, 124:2, 124:5, 124:8, 126:6, 126:10, 126:15, 127:3, 127:15, 128:12, 129:3, 130:11, 130:22, 131:3, 132:25, 134:15, 134:18, 135:3, 135:6, 136:10, 137:3, 137:5, 137:8, 138:21, 139:2, 139:8, 139:10, 139:19, 139:23, 140:21, 140:25, 141:5, 141:9, 141:13, 142:2, 143:18, 143:21, 144:7, 144:12, 144:23, 145:7, 145:12, 145:21, 145:24, 146:7, 148:1, 149:3, 149:7, 149:18, 149:21, 150:1, 150:4, 150:24, 151:2, 151:11, 151:18, 151:20, 151:24, 152:3, 152:10, 152:12, 152:15, 152:17, 153:14, 153:16, 153:18, 153:22, 154:1, 154:7, 154:10, 154:13, 154:16, 154:18, 155:3, 155:12, 155:17, 155:20, 155:25, 156:12, 156:15, 160:4, 164:1, 164:25, 165:20, 165:24, 168:1, 168:20, 174:8, 174:12, 175:14, 178:21, 179:1, 180:7, 180:8, 182:24, 186:13,

186:18, 186:23, 187:1, 187:24, 188:14, 189:2, 191:25, 192:2, 192:4, 192:8, 192:11, 193:18, 196:24, 199:8, 199:15, 203:7, 204:1, 204:6, 204:9, 204:14, 204:16, 204:19, 205:10, 205:15, 206:13, 206:25, 207:10, 207:14, 208:3, 208:5, 209:4, 210:9, 217:4, 220:9, 222:21, 222:23, 223:5, 223:8, 223:10, 223:12, 223:16, 223:20, 223:25, 224:4, 224:7, 224:11, 224:23, 225:5, 225:6, 225:10, 225:11, 226:1, 227:1, 227:7, 227:12, 227:16, 227:21, 228:3, 228:7, 228:12, 228:24, 229:2, 229:12, 229:16, 229:18, 230:1, 230:24, 231:3, 231:6, 231:16, 232:14, 234:9, 235:6, 235:13, 236:6, 236:9, 238:14, 239:15, 239:20, 239:23, 240:2, 240:3, 240:4, 240:11, 240:15, 242:9, 242:14, 243:4, 243:20, 245:21, 246:8, 246:25, 247:9, 247:22, 248:17, 249:3, 249:10, 249:16, 251:2, 251:5, 251:16, 252:4, 252:21, 253:10, 255:7, 260:23, 261:1, 263:7, 266:23, 268:21, 279:18
**themselves** [13] - 12:1, 102:20, 103:4, 126:21, 133:18, 143:2, 143:3, 170:10, 234:10, 268:2, 277:16, 277:17, 277:24

Case 2:10-md-02179-CJB-DPC Document 23692-8 Filed 04/02/18 Page 326 of 329
Case 2:10-md-02179-CJB-DPC Document 3892-8 Filed 11/15/11 Page 323 of 326

45

**theoretical** [1] - 244:24
**theoretically** [1] - 244:19
**thereafter** [1] - 218:14
**therefore** [10] - 9:19, 19:2, 33:7, 53:9, 91:22, 114:18, 141:16, 160:14, 243:16, 264:14
**thereof** [2] - 9:14, 199:18
**thereunder** [2] - 189:12, 196:3
**they've** [14] - 72:20, 90:21, 95:21, 137:13, 143:3, 143:14, 146:13, 191:12, 219:12, 219:19, 229:9, 229:10, 234:11, 277:24
**thinks** [4] - 60:7, 157:16, 157:17, 170:1
**third** [12] - 15:12, 18:1, 41:18, 45:13, 76:17, 158:24, 169:3, 169:18, 209:8, 250:4, 264:4, 270:7
**Third** [2] - 255:3, 255:4
**third-party** [1] - 250:4
**thirds** [2] - 106:25, 107:1
**thirty** [1] - 90:1
**thirty-four** [1] - 90:1
**THIS** [2] - 1:8, 5:14
**Thomas** [1] - 125:14
**thousand** [6] - 21:2, 85:15, 153:8, 159:3, 194:17, 213:9
**thousands** [12] - 26:25, 67:7, 167:10, 183:14, 213:13, 213:17, 230:19, 232:17, 236:22, 269:24, 273:13
**three** [33] - 23:9, 41:8, 56:10, 62:19, 62:24, 78:11, 85:25, 86:3, 134:9, 141:25, 143:2, 143:14, 156:21, 157:23, 157:24, 162:11, 162:16, 162:17, 168:9, 176:11, 185:17, 189:15, 201:3, 203:17, 208:14, 208:15,

212:2, 215:24, 234:2, 244:25, 245:1, 271:15
**three-phase** [1] - 201:3
**three-year** [1] - 23:9
**threw** [1] - 111:12
**throughout** [7] - 44:24, 49:23, 66:7, 66:15, 190:3, 197:14, 246:12
**thrust** [1] - 147:9
**THURSDAY** [3] - 1:7, 7:2, 180:2
**ticking** [1] - 69:6
**tie** [5] - 184:7, 188:12, 207:4, 255:20, 258:8
**tied** [10] - 161:24, 162:12, 175:25, 176:14, 188:13, 190:4, 190:6, 216:13, 216:14
**ties** [1] - 190:19
**tight** [1] - 236:22
**tightly** [3] - 202:1, 205:1, 205:15
**timeline** [1] - 99:17
**timid** [2] - 157:17, 158:4
**timing** [1] - 237:21
**tiny** [1] - 266:8
**tip** [1] - 202:24
**tired** [1] - 67:1
**tires** [1] - 219:16
**TO** [4] - 1:8, 6:1, 7:4, 180:4
**today** [55] - 12:9, 12:17, 13:10, 14:22, 15:6, 17:19, 20:7, 20:17, 21:5, 23:20, 26:10, 30:6, 51:15, 53:1, 54:16, 60:13, 76:6, 76:20, 80:20, 81:4, 81:9, 82:5, 84:8, 84:18, 84:21, 85:1, 85:8, 95:7, 102:2, 112:16, 135:14, 137:23, 149:13, 151:20, 151:21, 151:22, 153:2, 161:6, 184:8, 188:8, 213:11, 214:16, 217:2, 242:13, 242:25, 246:12, 250:22, 257:8, 267:3, 272:22, 272:25, 275:14, 278:23
**together** [15] - 10:17, 16:12, 24:19, 55:17,

66:5, 136:11, 136:13, 144:11, 194:13, 203:21, 267:20, 273:7, 275:20
**Tomlinson's** [1] - 66:19
**tomorrow** [1] - 54:16
**ton** [1] - 190:13
**tone** [1] - 197:22
**took** [11] - 25:1, 94:16, 94:18, 100:24, 107:7, 136:16, 173:5, 186:5, 268:16, 269:14
**top** [7] - 64:12, 142:13, 162:15, 164:17, 164:18, 165:18, 275:12
**topic** [4] - 190:12, 249:4, 249:8, 265:18
**tort** [7] - 198:1, 198:15, 205:21, 206:20, 261:8, 261:9, 261:10
**torts** [2] - 98:13, 98:25
**total** [9] - 55:6, 55:7, 57:21, 58:3, 61:23, 72:15, 123:8, 172:20, 196:14
**totally** [2] - 97:7, 128:21
**totals** [1] - 95:19
**touch** [2] - 46:5, 77:9
**touched** [3] - 36:23, 160:14, 160:16
**tough** [2] - 34:11, 34:12
**toured** [1] - 82:24
**tourism** [27] - 30:4, 30:8, 34:23, 35:15, 35:22, 44:24, 66:13, 105:2, 106:13, 106:16, 106:20, 107:2, 107:15, 109:5, 109:12, 114:20, 115:2, 117:24, 118:8, 152:13, 153:10, 153:12, 161:4, 164:22, 176:15, 176:24
**Tourism** [2] - 71:5, 149:24
**tourism-related** [3] - 106:20, 107:15, 114:20
**tourism/nontourism** [1] - 109:4
**tourist** [2] - 117:20,

170:15
**tourist-related** [1] - 117:20
**town** [1] - 107:1
**toxic** [3] - 198:11, 199:16, 261:12
**toxicologist** [1] - 244:21
**toxicologists** [1] - 243:23
**toxicology** [1] - 244:6
**track** [6] - 82:15, 82:16, 86:9, 87:20, 219:19
**tracked** [1] - 87:14
**trade** [7] - 36:7, 165:19, 166:22, 166:23, 195:23, 255:7, 255:24
**Trade** [1] - 235:2
**trade-off** [5] - 166:22, 166:23, 195:23, 255:7, 255:24
**trade-offs** [2] - 36:7, 165:19
**traditional** [1] - 24:23
**tragedy** [6] - 54:3, 54:11, 65:17, 178:13, 214:13, 232:16
**tragic** [3] - 50:7, 51:5, 54:18
**trailers** [1] - 105:11
**train** [2] - 82:14, 261:11
**TRANSCRIPT** [2] - 1:16, 3:18
**transcript** [1] - 280:7
**transfer** [3] - 27:6, 79:4, 274:4
**transferred** [2] - 9:18, 231:2
**transfers** [1] - 153:5
**transition** [8] - 11:19, 11:20, 56:2, 81:3, 81:16, 81:17, 81:20, 84:14
**Transocean** [1] - 9:17
**transparency** [2] - 159:8, 196:16
**transparent** [5] - 80:2, 82:7, 146:9, 159:7, 159:9
**transparently** [1] - 21:19
**Tre'** [1] - 70:1
**tre'** [1] - 172:4
**Treasure** [1] - 198:22
**treat** [4] - 33:20, 33:23, 70:10, 103:1

**treated** [13] - 33:21, 36:11, 44:22, 45:4, 101:25, 103:4, 114:14, 138:6, 140:13, 140:17, 162:24, 170:15, 172:2
**treating** [3] - 184:24, 185:1, 188:24
**treatment** [2] - 234:4, 246:23
**trees** [1] - 279:7
**tremendous** [2] - 11:3, 246:24
**trial** [34] - 10:24, 11:1, 11:7, 11:14, 11:16, 16:10, 25:8, 25:9, 25:11, 28:21, 41:3, 41:4, 51:20, 56:14, 61:7, 68:13, 166:7, 166:9, 178:6, 186:5, 200:25, 201:3, 201:5, 201:7, 201:10, 201:15, 214:25, 235:19, 262:9, 262:10, 276:20, 277:22
**trials** [3] - 56:13, 265:5, 269:25
**tried** [10] - 184:6, 184:7, 200:21, 201:9, 212:10, 212:14, 213:14, 220:16, 234:11, 265:3
**trotted** [1] - 67:14
**trouble** [2] - 138:2, 138:14
**troubled** [1] - 268:23
**troubling** [1] - 55:10
**true** [13] - 27:12, 31:17, 31:18, 31:22, 60:4, 60:19, 96:18, 105:4, 141:8, 153:3, 200:20, 280:7
**truly** [4] - 28:14, 103:24, 209:23, 266:8
**trust** [1] - 167:24
**Trustee** [2] - 71:13, 71:15
**trustees** [1] - 37:11
**trusts** [1] - 14:3
**truth** [3] - 16:24, 27:16, 167:17
**try** [25] - 21:13, 24:7, 26:8, 26:18, 28:21, 35:5, 36:17, 38:7, 38:16, 39:17, 65:13, 91:6, 92:12, 134:24,

166:16, 180:18, 189:20, 207:9, 209:24, 227:10, 237:12, 251:15, 258:5, 265:17

**trying** [41] - 22:16, 30:14, 38:23, 51:12, 72:24, 84:25, 88:10, 91:17, 92:11, 104:6, 105:24, 106:22, 121:19, 127:12, 131:3, 142:13, 145:17, 154:2, 164:16, 165:18, 168:12, 172:14, 173:3, 190:17, 193:22, 194:3, 213:8, 220:11, 225:12, 227:19, 228:20, 228:21, 229:6, 231:16, 236:20, 240:25, 242:15, 242:19, 248:21, 251:11, 255:20

**Tulane** [2] - 71:1, 71:9
**tumble** [1] - 65:12, 124:19
**tune** [1] - 224:20
**Tunnell** [3] - 59:20, 69:19, 174:4
**turn** [1] - 8:20
**turned** [1] - 188:9
**Turner** [5] - 194:6, 198:22, 200:5, 200:16, 201:1
**turns** [1] - 237:25
**tweak** [1] - 265:21
**twice** [4] - 105:19, 105:21, 127:5, 255:5
**two** [87] - 7:18, 7:25, 8:23, 11:5, 11:23, 12:7, 12:23, 13:11, 17:25, 24:18, 24:24, 25:24, 26:4, 26:11, 31:13, 32:3, 32:6, 32:23, 34:18, 50:4, 54:25, 55:25, 56:13, 73:12, 76:10, 77:1, 81:12, 81:14, 82:14, 93:2, 98:10, 103:3, 105:4, 105:9, 106:25, 107:1, 112:17, 113:7, 116:18, 118:9, 118:10, 129:24, 130:13, 130:17, 134:6, 134:23, 135:14, 143:13, 143:20, 144:10,

145:25, 150:12, 158:23, 160:18, 161:5, 161:6, 162:10, 163:7, 166:6, 168:22, 170:14, 172:9, 175:2, 183:12, 184:15, 198:9, 203:17, 208:2, 208:16, 209:7, 210:18, 212:1, 237:22, 253:8, 261:5, 263:20, 267:18, 270:10, 270:18, 270:19, 271:9, 275:24, 276:24, 279:5
**Two** [3] - 25:10, 25:11, 166:8
**two-day** [1] - 270:19
**two-hour** [1] - 270:18
**two-thirds** [2] - 106:25, 107:1
**type** [32] - 32:15, 53:3, 67:10, 67:16, 89:18, 91:17, 98:12, 106:7, 108:16, 127:10, 142:19, 163:6, 170:12, 170:20, 174:19, 181:21, 185:6, 185:7, 185:16, 186:8, 187:13, 188:12, 196:20, 198:5, 204:25, 205:10, 207:2, 209:4, 246:9, 246:10, 277:5, 277:6
**types** [15] - 9:25, 23:12, 127:9, 127:22, 130:23, 136:2, 138:25, 142:1, 142:18, 164:15, 181:19, 186:13, 186:14, 199:17
**typical** [2] - 15:13, 24:15
**typically** [3] - 181:14, 196:20, 231:23

**U**

**U.S** [2] - 16:19, 71:13
**Uddo** [1] - 166:18
**UK** [1] - 270:21
**ultimate** [2] - 19:6, 64:14
**ultimately** [9] - 11:21, 22:1, 26:19, 42:22, 165:7, 165:9,

235:16, 275:6
**unable** [1] - 252:12
**unannounced** [1] - 270:11
**unbelievable** [1] - 268:11
**uncapped** [10] - 53:8, 57:7, 63:22, 109:20, 164:17, 165:13, 184:10, 195:18, 215:20, 244:19
**uncertain** [3] - 68:6, 68:13, 273:24
**uncertainty** [1] - 34:6, 34:7, 74:25
**uncommon** [1] - 248:19
**uncontested** [1] - 177:18
**under** [108] - 17:13, 23:9, 27:7, 27:10, 27:14, 28:4, 28:12, 31:16, 31:21, 32:1, 32:2, 37:3, 37:8, 37:11, 39:6, 41:12, 44:13, 44:14, 44:22, 45:5, 46:3, 47:2, 47:7, 47:20, 48:5, 50:20, 52:13, 55:12, 61:18, 62:13, 69:4, 69:7, 74:3, 77:13, 79:15, 87:10, 88:19, 91:21, 94:19, 97:23, 103:5, 105:7, 111:13, 112:23, 116:7, 118:4, 118:7, 118:12, 119:22, 120:2, 120:18, 121:9, 125:24, 127:12, 128:7, 138:6, 142:23, 150:20, 160:15, 161:11, 161:15, 161:24, 163:2, 168:10, 176:7, 177:22, 178:22, 181:20, 182:23, 184:17, 185:15, 189:22, 198:7, 206:4, 206:10, 206:20, 209:17, 217:13, 217:17, 222:4, 222:6, 227:8, 230:12, 238:12, 238:18, 241:14, 248:9, 250:9, 250:10, 256:2, 256:20, 257:14, 257:17, 258:24, 259:11, 260:14,

262:3, 262:13, 262:22, 263:13, 263:19, 266:13, 266:24, 269:3, 274:8, 274:12, 276:10, 277:7
**underlying** [1] - 276:4
**underpinning** [1] - 181:2
**understate** [1] - 134:8
**understood** [2] - 138:24, 251:12
**undertook** [1] - 200:1
**underwhelming** [1] - 205:19
**undesirability** [1] - 16:4
**undoubtedly** [1] - 28:23
**unemployed** [1] - 250:24
**unevenly** [1] - 21:21
**unfair** [2] - 102:25, 222:9
**unfairly** [2] - 140:13, 140:17
**unfairness** [1] - 106:25
**unfamiliar** [1] - 10:7
**unfortunate** [2] - 38:11, 130:21
**unfortunately** [6] - 36:19, 130:19, 149:13, 151:10, 190:24, 270:13
**unheard** [1] - 23:23
**UNIDENTIFIED** [5] - 204:3, 204:8, 204:11, 204:15, 204:17
**uniform** [3] - 21:19, 116:21, 265:14
**uninjured** [1] - 226:19
**unintentionally** [1] - 249:23
**Union** [2] - 186:4, 214:1
**unique** [5] - 30:22, 63:20, 134:4, 159:25, 217:24
**uniquely** [1] - 51:6
**United** [14] - 18:19, 19:4, 19:5, 22:3, 22:5, 37:10, 171:19, 235:3, 235:7, 241:13, 269:15, 270:20, 280:5, 280:15
**UNITED** [2] - 1:1, 1:17
**unity** [1] - 16:13

**universally** [1] - 133:19
**University** [7] - 52:17, 69:21, 71:1, 71:4, 71:7, 71:10, 150:21
**unknown** [3] - 81:15, 118:15, 206:16
**unless** [10] - 26:22, 151:13, 204:22, 222:11, 229:14, 231:20, 250:14, 276:25, 277:3, 277:5
**unlike** [6] - 23:17, 50:9, 191:2, 201:12, 212:6, 274:13
**unobstructed** [2] - 123:8, 129:11
**unprecedented** [1] - 102:17
**unquestionably** [1] - 68:10
**unquote** [1] - 38:8
**unreasonable** [3] - 33:11, 105:4, 222:9
**unrelated** [1] - 257:9
**unreliable** [2] - 221:15, 264:13
**unrepresented** [2] - 122:1, 125:1
**unscientific** [1] - 221:15
**unselfconscious** [1] - 199:7
**untypical** [1] - 24:15
**unusable** [1] - 175:21
**unusual** [5] - 52:5, 53:23, 66:9, 216:6, 259:18
**up** [96] - 8:17, 22:19, 24:7, 24:22, 25:18, 26:8, 27:17, 28:2, 30:15, 37:7, 38:1, 38:12, 41:23, 59:6, 64:2, 86:11, 91:1, 93:11, 99:6, 100:2, 100:6, 112:16, 119:12, 130:11, 132:21, 136:12, 141:21, 142:10, 142:11, 143:4, 148:6, 149:1, 156:23, 160:17, 161:2, 161:24, 162:19, 163:2, 166:5, 171:2, 172:16, 173:3, 173:13, 173:22, 174:4, 174:9, 180:9, 181:10, 181:12, 181:13, 187:9,

Case 2:10-md-02179-CJB-DPC Document 23892-8 Filed 04/02/18 Page 328 of 329
Case 2:10-md-02179-CJB-DPC Document 13892-8 Filed 12/15/14 Page 327 of 328

47

187:17, 188:3, 188:6, 188:10, 190:25, 191:8, 192:15, 193:1, 193:3, 195:12, 195:14, 198:8, 200:14, 203:5, 213:9, 223:23, 225:2, 227:10, 227:11, 228:20, 236:1, 242:11, 245:6, 246:15, 246:23, 247:13, 248:13, 248:20, 253:1, 253:2, 253:4, 254:17, 256:1, 257:18, 257:25, 260:7, 260:19, 263:12, 269:20, 273:21, 273:22, 274:1, 274:3, 274:7, 276:23
**update** [1] - 46:16
**updated** [2] - 46:18, 190:21
**uphold** [1] - 229:3
**upkeep** [1] - 127:25
**upper** [3] - 68:9, 173:22, 214:8
**urge** [1] - 30:24
**US** [1] - 37:9
**usurp** [1] - 248:16
**utilize** [1] - 262:15

**V**

**Valdez** [11] - 21:10, 51:8, 51:11, 56:16, 60:3, 60:6, 65:6, 65:8, 134:11, 183:7, 269:12
**valid** [27] - 43:6, 58:6, 62:2, 63:3, 63:4, 63:6, 63:12, 72:8, 73:5, 73:18, 73:22, 75:5, 96:5, 97:6, 97:20, 126:12, 171:10, 171:13, 174:1, 221:3, 221:6, 221:12, 221:21, 222:6, 266:13, 272:14
**validity** [3] - 16:25, 74:16, 168:14
**validly** [3] - 74:8, 74:11, 74:12
**valuable** [2] - 131:25, 262:19
**valuation** [1] - 38:1
**value** [17] - 27:15,

37:24, 38:5, 38:8, 59:15, 64:1, 126:10, 133:9, 136:3, 137:24, 221:18, 221:19, 221:20, 239:3, 239:8, 261:15, 263:1
**values** [3] - 24:13, 134:10, 186:9
**vampire** [1] - 175:3
**variety** [1] - 199:17
**various** [16] - 19:24, 51:20, 64:6, 78:7, 82:17, 83:5, 95:1, 170:19, 171:4, 172:13, 215:10, 241:13, 257:22, 267:4, 276:16, 277:7
**vast** [3] - 53:10, 73:7, 88:18
**vastly** [2] - 54:1, 214:18
**vehemently** [1] - 277:15
**vehicles** [1] - 11:25
**veiled** [1] - 149:16
**vendor** [1] - 95:6
**vendors** [3] - 23:4, 55:17, 81:2
**Vent** [1] - 105:15
**venued** [1] - 231:2
**verdict** [1] - 262:10
**verify** [1] - 72:12
**versus** [33] - 7:13, 7:16, 7:19, 7:21, 16:20, 17:12, 46:23, 58:3, 105:2, 105:20, 109:13, 141:25, 172:20, 180:11, 186:4, 194:6, 198:21, 198:22, 198:23, 199:12, 199:25, 200:3, 200:5, 200:16, 201:1, 201:4, 214:1, 214:2, 264:8, 264:16, 274:10
**VERSUS** [3] - 4:5, 4:7, 5:15
**vessel** [9] - 9:17, 13:21, 43:17, 48:15, 161:23, 161:24, 162:12, 175:19, 238:11
**vessels** [2] - 42:10, 135:10
**Vessels** [1] - 13:20
**vet** [1] - 157:8
**vexatious** [1] - 224:8
**viability** [1] - 147:2

**viable** [4] - 126:7, 126:11, 127:9, 221:18
**victim** [2] - 237:17, 237:22
**victims** [15] - 50:13, 51:9, 54:9, 54:17, 65:17, 103:1, 103:3, 120:10, 133:21, 135:15, 147:11, 197:18, 216:2, 217:22
**video** [1] - 271:5
**view** [15] - 91:2, 122:19, 123:7, 123:8, 124:5, 124:6, 127:18, 185:14, 200:23, 202:17, 205:16, 221:8, 226:10, 276:15
**viewed** [3] - 27:22, 134:4, 204:24
**views** [6] - 27:15, 79:5, 177:16, 265:13, 265:14, 272:15
**vigorously** [1] - 80:7
**violated** [1] - 203:18
**violates** [1] - 226:4
**violating** [2] - 225:7, 262:24
**violation** [1] - 263:14
**violator** [1] - 226:18
**Vioxx** [5] - 56:23, 56:25, 235:12, 235:13, 235:14
**virtually** [7] - 24:24, 25:14, 26:1, 78:14, 160:19, 190:15, 191:20
**virtue** [2] - 14:17, 233:22
**visits** [2] - 219:22, 234:2
**voice** [2] - 119:16, 274:24
**voiced** [3] - 120:7, 249:16, 272:18
**volume** [2] - 100:7, 148:12
**volumes** [4] - 46:24, 47:6, 48:5, 77:22
**voluminous** [3] - 19:23, 84:6
**VoO** [11] - 39:21, 39:22, 39:24, 40:6, 41:6, 41:21, 42:5, 42:6, 42:15, 42:19, 175:19
**voted** [1] - 214:11

**voting** [1] - 209:2
**vouch** [1] - 46:1
**vouches** [1] - 161:17
**vulnerabilities** [1] - 198:2
**vulnerable** [2] - 198:6, 228:22

**W**

**WA** [1] - 240:16
**wait** [15] - 26:17, 28:20, 35:4, 39:12, 39:14, 120:15, 135:3, 137:5, 139:23, 211:1, 216:20, 239:25
**waiting** [2] - 61:14, 95:22
**waitresses** [1] - 45:8
**waived** [3] - 31:19, 31:20, 206:12
**waiving** [1] - 231:13
**wake** [1] - 161:2
**walk** [4] - 67:23, 127:18, 207:13, 271:13
**walked** [1] - 270:11
**walking** [2] - 154:3, 254:7
**Wally** [6] - 66:20, 66:21, 67:1, 67:2, 67:14, 67:15
**Walmart** [3] - 16:20, 31:14, 32:1
**Walton** [3] - 105:17, 105:23, 106:20
**Waltzer** [19] - 49:5, 133:1, 133:3, 138:15, 142:6, 148:2, 149:3, 156:25, 157:18, 163:11, 165:1, 172:6
**WALTZER** [3] - 3:5, 133:2, 134:17, 134:23, 135:4, 135:7, 137:2, 137:4, 137:7, 138:17, 138:22, 139:6, 139:9, 139:12, 139:22, 140:20, 140:22, 141:3, 141:7, 141:12, 141:14, 142:15, 143:19, 143:22, 144:8, 144:22, 145:4, 145:10, 145:20, 145:23, 145:25, 146:8, 148:3

**Waltzer's** [4] - 156:22, 162:21, 163:1, 174:13
**WALTZER.................
........................** [1] - 5:1
**wants** [7] - 67:8, 135:7, 169:24, 169:25, 173:16, 184:8, 238:3
**warrant** [1] - 279:4
**Washington** [1] - 264:9
**WASHINGTON** [1] - 2:25
**watch** [4] - 270:23, 270:25, 271:1, 271:2
**watching** [2] - 61:14, 271:12
**water** [20] - 35:15, 57:11, 125:5, 125:6, 125:7, 125:18, 125:22, 127:7, 127:11, 127:13, 127:18, 129:12, 131:7, 131:9, 131:10, 154:3, 164:20, 164:22
**waters** [3] - 13:17, 43:19, 142:18
**watershed** [1] - 198:7
**Watson** [2] - 200:3, 201:4
**ways** [14] - 21:16, 32:19, 33:12, 34:9, 45:9, 79:4, 82:14, 93:2, 190:13, 194:14, 218:22, 237:3, 262:15, 277:7
**wearing** [1] - 259:25
**web** [9] - 82:6, 83:13, 156:9, 203:22, 204:2, 204:3, 204:11, 204:12
**wedding** [3] - 108:2, 108:3, 109:9
**weddings** [1] - 107:13
**Wednesday** [1] - 56:3
**week** [17] - 11:7, 13:6, 23:20, 50:15, 50:19, 54:16, 55:12, 55:15, 56:3, 63:9, 64:4, 72:2, 72:12, 73:23, 166:12, 190:8, 213:1
**weekend** [2] - 55:15, 213:5
**weigh** [2] - 156:6, 274:24
**weighing** [1] - 55:22
**weird** [1] - 42:21

Case 2:10-md-02179-CJB-DPC Document 23882-8 Filed 02/02/18 Page 329 of 329
Case 2:10-md-02179-CJB-DCW Document 13892-8 Filed 12/15/14 Page 328 of 328

48

WEITZ [1] - 2:6
welcome [3] - 8:8, 8:9, 225:17
Welding [3] - 105:14, 105:18, 105:19
welding [3] - 105:9, 170:14, 170:16
well-driven [1] - 28:23
well-funded [1] - 28:23
well-recognized [1] - 185:3
wells [1] - 23:24
werewolves [1] - 175:3
west [3] - 114:2, 138:1, 223:9
West [1] - 231:2
WESTERN [1] - 5:7
western [4] - 13:16, 149:10, 152:1, 152:9
wetland [4] - 70:20, 130:19, 132:14, 132:23
Wetland [1] - 119:13
WETLANDS [1] - 4:23
wetlands [22] - 13:20, 34:16, 36:16, 67:20, 67:21, 67:23, 67:25, 70:1, 70:4, 70:5, 70:12, 70:14, 70:17, 128:25, 129:1, 129:2, 130:24, 131:21, 131:25, 172:1, 181:15
Wetlands [1] - 119:10
Wharton [3] - 70:1, 70:24, 172:4
whatnot [1] - 159:13
whatsoever [5] - 195:24, 220:21, 241:12, 258:8
wheel [1] - 132:7
whereas [2] - 43:15, 44:15
whereby [1] - 243:17
WHEREUPON [4] - 100:18, 100:24, 179:2, 279:19
WHICH [2] - 4:5, 6:2
white [1] - 131:6
who've [1] - 168:7
whole [17] - 32:23, 37:2, 43:10, 68:22, 76:24, 117:4, 118:14, 130:11, 177:11, 221:23, 227:14, 256:6, 257:4, 264:1, 265:24, 270:21,

279:15
wide [2] - 16:23, 148:16
wider [1] - 194:2
wife [2] - 169:1, 238:3
wild [1] - 214:15
wildly [1] - 103:22
Wilhite [5] - 122:2, 123:4, 123:5, 124:25
WILLIAM [1] - 3:7
willing [3] - 158:5, 160:12, 160:13
willingly [1] - 218:1
window [1] - 237:9
wise [1] - 52:6
wish [3] - 158:15, 207:24
wishes [2] - 19:5, 158:16
withdraw [1] - 229:8
witness [2] - 51:25, 271:13
witnesses [2] - 9:19, 208:10
Wiygul [1] - 133:4
wonder [1] - 116:3
wonderful [2] - 55:19, 270:22
word [11] - 24:23, 31:20, 46:16, 158:2, 158:3, 190:11, 195:7, 205:19, 251:17, 259:2
words [6] - 54:10, 89:16, 113:3, 116:22, 117:21, 247:20
worker [15] - 114:13, 187:2, 187:7, 187:11, 193:20, 230:7, 238:11, 246:1, 254:10, 254:12, 254:15, 254:17, 257:19, 260:7
workers [16] - 45:6, 114:16, 114:25, 181:11, 182:12, 191:12, 193:24, 193:25, 194:21, 242:10, 242:23, 250:2, 251:15, 252:3, 253:14, 260:5
Workers' [7] - 206:20, 245:7, 245:11, 245:13, 245:16, 245:22, 246:2
WORKERS.................
.............. [1] - 6:6
works [18] - 26:21,

36:21, 38:10, 39:10, 43:7, 48:3, 66:21, 66:23, 66:24, 66:25, 67:9, 67:11, 72:24, 138:9, 146:3, 172:13, 192:17, 210:8
world [6] - 78:13, 78:15, 95:6, 100:4, 190:10, 254:21
World [1] - 235:2
world's [3] - 21:3, 59:24, 184:22
worse [2] - 57:5, 214:5
worst [2] - 148:6, 178:11
worth [5] - 24:3, 52:14, 150:12, 261:23, 262:1
WRIGHT [1] - 1:21
writes [1] - 53:24
writing [4] - 183:22, 219:5, 250:23, 277:12
written [9] - 20:4, 20:10, 45:18, 45:24, 76:3, 77:17, 150:18, 243:12, 275:14
wrongly [1] - 134:9
wrote [3] - 29:15, 53:2, 244:4

## Y

y'all [1] - 279:16
YEA [1] - 240:20
year [26] - 23:8, 23:9, 26:12, 28:11, 68:19, 68:20, 81:11, 84:9, 99:16, 99:17, 115:13, 116:12, 127:5, 141:25, 142:23, 142:25, 143:10, 143:15, 168:19, 180:21, 181:10, 236:9, 253:8, 276:12
yearly [1] - 253:7
years [75] - 21:10, 24:18, 24:24, 26:4, 26:11, 26:15, 26:17, 26:18, 26:20, 26:21, 34:18, 35:4, 47:9, 47:12, 47:14, 47:21, 47:22, 56:16, 60:1, 65:5, 65:6, 69:14, 69:21, 71:3, 73:14, 98:18, 98:20, 98:24, 134:24, 141:24,

141:25, 143:2, 143:13, 143:14, 161:6, 162:11, 162:17, 163:13, 166:7, 176:13, 177:2, 178:1, 178:5, 183:8, 183:22, 189:15, 189:16, 190:20, 196:16, 199:3, 213:8, 213:10, 215:24, 215:25, 218:14, 219:5, 234:1, 234:2, 237:17, 239:10, 253:8, 255:13, 255:15, 256:5, 262:18, 266:6, 269:14, 269:21, 270:3, 270:14, 273:23, 273:24, 278:13
yellow [2] - 105:14, 259:25
yesterday [2] - 194:16, 240:9
York [3] - 52:18, 129:25, 235:24
YORK [1] - 2:8
YOU [1] - 6:2
young [1] - 88:7
younger [1] - 88:8
yourself [2] - 88:4, 152:5

## Z

zero [3] - 110:8, 112:12, 128:22
Zone [43] - 68:15, 92:2, 92:9, 104:17, 104:20, 105:13, 105:18, 105:23, 107:1, 107:2, 107:4, 107:8, 107:12, 107:24, 110:3, 112:22, 114:13, 114:14, 114:15, 115:1, 116:23, 117:25, 118:1, 118:3, 118:4, 118:8, 118:9, 118:10, 158:21, 158:22, 160:22, 164:9, 164:10, 164:12, 165:10, 165:13, 165:14
zone [33] - 44:25, 70:14, 101:5, 101:20, 105:8, 105:14, 106:15,

106:17, 108:16, 109:21, 110:2, 113:20, 114:2, 114:12, 114:21, 116:21, 117:1, 117:20, 121:5, 121:6, 121:10, 121:11, 121:17, 122:3, 122:10, 125:17, 168:4, 170:4, 193:20, 193:23, 194:5, 194:22
zoned [1] - 158:9
Zones [15] - 101:24, 101:25, 102:4, 104:14, 104:15, 104:24, 105:1, 109:13, 110:4, 111:19, 118:20, 119:10, 119:13
zones [38] - 33:19, 35:8, 35:14, 101:21, 102:7, 102:19, 102:20, 102:21, 102:25, 103:8, 103:17, 103:24, 104:12, 104:22, 105:2, 106:12, 109:15, 112:17, 113:17, 113:21, 117:21, 119:17, 119:20, 120:9, 120:12, 120:14, 120:17, 121:4, 164:3, 164:16, 165:18, 168:16, 169:5, 169:21, 171:16, 190:4, 196:6
ZONES................ [1] - 4:23
zoning [1] - 114:16