# EXHIBIT I

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BOBBY LYNN BRADBERRY, JR.,<br>Plaintiff,<br><br>v.<br><br>BP EXPLORATION & PRODUCTION,<br>INC. & BP AMERICA PRODUCTION<br>COMPANY,<br>Defendants.<br><br>Related to:   12-968 BELO<br><br>in MDL No. 2179 | CIVIL ACTION<br><br>CASE NO. 2:17-cv-04686<br><br>JUDGE BARBIER<br>MAG. JUDGE WILKINSON<br><br>[REQUEST FOR ORAL ARGUMENT<br>FILED CONCURRENTLY HEREWITH] |

## DECLARATION OF HOWARD L. NATIONS

I, Howard Nations, declare as follows:

1. I am over 18 years of age and make this declaration based on personal knowledge and if sworn as a witness, I could and would testify competently to the facts contained herein. I am the owner of Howard L. Nations, P. C., counsel of record for approximately 8,500 plaintiffs in the above-captioned action.

2. Attached hereto as Exhibit A is the latest Status Report of the Claims Administrator, Garretson Resolution Group ("GRG") filed December 20, 2017. (Record Doc 23782). GRG's evaluation includes completion of 99% of the SPC claims under the Matrix. It is submitted that this GRG Status Report (Record Doc. 23782) clearly demonstrates the inequity, unfairness and absurdity of BP's re-interpretation of the Matrix to exclude all B1 Matrix claims diagnosed after April 16, 2012:

- A mere **39** total B1's have been approved by GRG. (Record Doc. 23782, pp. 9, 16).
- This low number of B1 recoveries, 39 out of 37,523 claimants results from the fact that the claimants were closed out from getting timely diagnostic evaluations ab

initio because the deadline of April 16, 2012 expired two days before the MSA was signed by the parties and submitted to the Court on April 18, 2012. The claimants were not aware that the medical diagnosis was needed until two days after the deadline, which is inherently unfair to the claimants.

- One of the top five "most common material defects identified during the Medical Record Review process" was failure to meet the SPC Matrix criteria because "The date of first diagnosis for the claimed SPECIFIED PHYSICAL CONDITION occurred on or after April 16, 2012." (Record Doc. 23782, p.12).

- In a footnote, GRG concedes that "This defect results from the Court's July 23, 2014 Order (Rec. doc. 12862) holding that all conditions first diagnosed after April 16, 2012 must be classified as Later-Manifested Physical Conditions." (Record Doc. 23782, p. 12, fn. 5).

3. Because BP's successful bait and switch scheme has led to "unreasonable, inequitable or absurd results," Plaintiffs request that the Court grant the relief sought in the accompanying Motion to level the playing field for the claimants who have been treated unfairly.

4. The B1 claimants (chronic conditions) are the claimants with the most serious injuries who were, under the Matrix, entitled up to $60,700 each in compensation, upon submission of medical records from a doctor confirming a chronic condition covered under the Matrix.

5. Nowhere does the Matrix contain a deadline for diagnosis in order to recover for a B1 claim (or any other SPC).

6. The Court-approved Notice Packets sent out to potential class members did not include, suggest, mention or discuss a diagnosis deadline for any of the SPCs under the Matrix, let alone by April 16, 2012, which is two days before the MSA was executed on April 18, 2012. Such a pre-condition to recovery for B1 SPCs appears nowhere in the Matrix or the MSA. Nor

does it appear in any of the news or media publications to potential class members. Nor does it appear anywhere on the website GRG created to provide notice to potential claimants of what they needed to do in order to submit a Proof of Claim Form for Recovery.[1] It should be noted, that given all of the lengthy legal arguments on the lack of such a provision amongst counsel in this Court, if legal counsel disagree on the legal technicality of whether such a pre-condition exists under the MSA (based on the definition of LMPC), then how was the typical clean-up worker, expected to understand there was such a date restriction in order to recover? The answer is quite simple – they wouldn't. BP knew that.

7. In fact, BP counted on it and used this as an opportunity to extinguish hundreds of millions of dollars of claims before they could even be submitted. BP admitted in Court at both the Preliminary Approval and Fairness Hearings that LMPC claims were to cover latent cancer case which had not yet manifested.

8. GRG also knew that the typical claimant would not be able to ascertain from the face of the Matrix that there was any diagnosis deadline. Yet when claimants contacted GRG for information on completing the POCFs, GRG told claimants that they "did not need an attorney" as these forms were "straight forward and easy to fill out." In fact, GRG told this to several of my firm's clients who called in for information on the POCF process and informed GRG that they were represented by my firm. We therefore confronted GRG about this misleading and untruthful statement. When GRG initially denied it, we played back a recording of GRG making this very statement to one of our clients who called GRG for information on filing a POCF.

9. Beginning in 2013, my firm sent 4,101 clients to qualified physicians across the South for Independent Medical Examinations which involved a battery of testing, all in order to comply with the stricter standards of medical proof for a B1 chronic condition. Of these initial

---

[1] The Court's settlement notice to Class Members does not mention a diagnosis deadline of April 16, 2012 in order to recover for chronic B1 claims:
https://deepwaterhorizonmedicalsettlement.com/Portals/23/DWHDocuments/Medical%20Detailed%20Notice%20(Update%20August%2028,%202012).pdf

4,101 clients who were tested, 3,814 received a diagnosis by a qualified physician as having a chronic condition; while the remaining 287 clients either had an acute condition (A1 – A4) or no qualifying SPC condition at all. This is a rate of 93%.

10. Among those, 671 had four separate, qualifying chronic conditions; 1,023 had three separate, qualifying chronic conditions; 1,130 had two separate, qualifying conditions; and 990 had only one qualifying chronic condition.

11. After learning of this Court's ruling on the motion for reconsideration, we stopped sending clients for IME's due to the cost, as well as the fact that all future chronic B1s diagnosed after April 16, 2012 would now be designated as LMPCs under BP's reinterpretation of the Matrix and would be required to file a separate BELO lawsuit to recover.

12. However, we have carefully reviewed the medical records on more than 5,000 claimants represented by our firm, which indicates they are still suffering from conditions and are therefore likely chronic within the meaning of the Matrix.

13. If the Court grants this motion, we will proceed with IMEs for these remaining 5,000 plus claimants.

14. We estimate, that we currently have a total of 8,464 clients with one or more chronic conditions that should have been paid $60,700 each under the Matrix but for BP's belated, post-Final Approval re-interpretation of the Matrix. This is based on the reports from our clients of chronic conditions, as well as the 93% rate of chronic conditions established by IME of the initial 4,101 claimants tested (3,814) and extrapolating that rate to the remaining 5,000 claimants. That amounts to 4,650 additional chronic claimants (plus the 3,814 claimants with confirmed IME diagnosis of chronic conditions), for a total of 8,464 chronic B1 claimants represented by our firm.

15. The due process rights of all of my 8,464 chronic B1 claimants have been violated as there was no notice provided by GRG or BP that a pre-condition to recover for their B1 injury under the MSA was a diagnosis prior to April 16, 2012. Only a minimal number of our clients with B1 chronic claims were diagnosed prior to April 16, 2012 (because of course, neither GRG

nor BP told us about this alleged pre-condition to recovery; and BP certainly didn't make it known at any hearings as plaintiffs' counsel would not have agreed to such a ludicrous limitation). That means that the few B1 chronic claimants that were lucky enough to have received a medical diagnosis before BP's re-writing of the Matrix 1 1/2 years after the Fairness Hearing will be treated differently than the approximately 12,000 B1 clients (represented by this firm, Frank D'Amico, Allen Lindsay, Shantrell Nicks and James Amaro) who were not diagnosed until after April 16, 2012 (because we were not made aware of this limitation by BP or GRG at any time prior to April 16, 2012 when the MSA was signed with the attached Matrix). Therefore, my firm's 8,464 B1 clients (along with co-counsel's thousands of B1 clients) are being treated differently under the MSA than the B1 clients who only differ (not in the severity of their symptoms or the manifestation within 24-72 hours after exposure as required under the Matrix), but in the simple fact that they happened to get diagnosed prior to the date the MSA was executed. Therefore, our 8,464 B1 clients (along with co-counsel's B1 claimants) have not only been denied Due Process but Equal Protection of the Law due to BP's "bait and switch" tactic, thereby misleading the claimants, counsel and this Court. BP has effectively decimated the vast majority of B1 claims.

16. Had my firm known of such a pre-condition to recovery at all under the Matrix (and assuming that Class Counsel would have agreed to such an impossible limitation), I would have made sure that somehow, all of my clients got IMEs and a medical diagnosis prior to that date in order to comply. But the simple reality is that no claimant or counsel knew, or could have known, of such a deadline to recovery since the alleged deadline is prior to the very date the MSA was even executed (April 18, 2016), prior to the Preliminary Hearing (April 25, 2012), prior to the Notice Packets sent out containing the Matrix and POCF (May 18, 2012 - June 28, 2012), prior to the Final Fairness Hearing (November 8, 2012) and prior to the Court's Final Approval of the MSA with attached Matrix (January 11, 2013).

17. What is equally troubling, is the conduct of GRG in misleading claimants, counsel and this Court on this issue. On September 16, 2013, as my firm began to receive a large number

of injured claimants, my office had a teleconference meeting with GRG in order to make sure that my firm followed the letter of the law with respect to the proper submission of each claim to GRG under the SPC Matrix. Four representatives of my office attended this conference: myself, Greg Rueb, Jim Griggs and Becky Abercrombie. Present on the call from GRG were Rick Beavers, Charity, Jerry and several of GRG's Medical Review Team. I had submitted an exemplar Proof of Claim Form (POCF) for our client, Joseph Bolton, who was one of our first clients diagnosed with a chronic SPC by IME. We sent an exemplar claim form completed for Mr. Bolton directly to GRG for their review and approval to make sure that this was in fact the correct way to submit the POCF to recover for a B1 Chronic Claim under the Matrix. On the teleconference with GRG's personnel referenced above, I specifically asked if Mr. Bolton's POCF was sufficient and correctly completed for him to recover for a B1 chronic condition to which GRG's staff responded "yes." I next informed GRG's office that I wanted to make absolutely certain that I was completing these forms correctly before submitting 4,000 additional POCFs we were currently processing. So I next specifically asked GRG's staff on this call if we submitted each POCF going forward in the same manner as we had Mr. Bolton's form, will there be any problem with it being paid as a B1 claim? Charity of GRG's office clearly responded, "that would be sufficient." None of the many representatives of GRG's office present on this call disagreed with Charity's response. So at no time, did any of GRG's staff present on the conference call inform us that this form would not be sufficient for a B1 SPC recovery under the Matrix because it was untimely due to an alleged date restriction requiring medical diagnosis on April 16, 2012. Obviously, had there really been such a limitation, GRG's numerous staff on this call would have told us that Mr. Bolton would not be entitled to recover (nor would anyone) as he was diagnosed with a Chronic B1 condition after April 16, 2012.

        18.      Accordingly, either GRG knew of the limitation and mislead my firm and clients; or alternatively, GRG knew there was no such limitation and went along with BP's belated re-writing of the Matrix and MSA in order to deny virtually all Chronic B1 claims presented to GRG. Either way, GRG has breached its fiduciary duty to act in the best interest of the class and

misleading all claimants, their counsel and this Court in their effort to preclude thousands of the most severely injured claimants from recovering at the highest compensation under the Matrix.

I declare under penalty of perjury under the laws of the United States that the foregoing paragraphs are true and correct.

Executed this 2nd day of February, 2018 in Houston, Texas.

Howard L. Nations