# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to:<br><br>No. 12-cv-968 | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**MOTION FOR RECONSIDERATION
OF THE COURT'S ORDER OF JULY 23, 2014
REGARDING CHRONIC SPECIFIED PHYSICAL CONDITIONS**

NOW INTO COURT come Class Counsel, on behalf of the Medical Benefits Settlement Class, and respectfully move to alter or amend the Court's Order of July 23, 2014 [Doc. 13179] upholding the Claims Administrator's May 13, 2014 interpretation of the Medical Settlement Agreement ("MSA") with respect to claims for Chronic Specified Physical Conditions ("Chronic SPCs") [Doc. 12862], pursuant to Federal Rule of Civil Procedure 59(e). The bases for Class Counsel's Motion are contained within the Memorandum in Support, which is fully incorporated by reference herein.

This 20th day of August, 2014.

Respectfully submitted,

/s/ Stephen J. Herman
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892

/s/ James Parkerson Roy
**James Parkerson Roy**, La. Bar No.11511
**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033

Fax No. (504) 569-6024  
E-Mail: sherman@hhklawfirm.com  
*Co- Lead Class Counsel*

Fax No. (337) 233-2796  
E-Mail: jimr@wrightroy.com  
*Co-Lead Class Counsel*

## CLASS COUNSEL
## FOR THE MEDICAL BENEFITS CLASS

Brian H. Barr  
LEVIN, PAPANTONIO, THOMAS,  
MITCHELL, RAFFERTY & PROCTOR, PA  
316 South Baylen St., Suite 600  
Pensacola, FL 32502-5996  
Office: (850) 435-7045  
Telefax: (850) 436-6187  
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit  
BREIT DRESCHER & IMPREVENTO  
Towne Pavilion Center II  
600 22nd Street, Suite 402  
Virginia Beach, Virginia 23451  
Office: (757) 670-3888  
Telefax: (757) 670-3895  
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser  
LIEFF, CABRASER, HEIMANN &  
BERNSTEIN, LLP  
275 Battery Street, 29th Floor  
San Francisco, CA 94111-3339  
Office: (415) 956-1000  
Telefax: (415) 956-1008  
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.  
COSSICH, SUMICH, PARSIOLA & TAYLOR  
8397 Highway 23, Suite 100  
Belle Chasse, LA 70037  
Office: (504) 394-9000  
Telefax: (504) 394-9110  
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham  
CUNNINGHAM BOUNDS, LLC  
1601 Dauphin Street, P. O. Box 66705  
Mobile, AL 36660  
Office: (251) 471-6191  
Telefax: (251) 479-1031  
E-Mail: rtc@cunninghambounds.com

Robin L. Greenwald  
WEITZ & LUXENBERG, PC  
700 Broadway  
New York, NY 10003  
Office: (212) 558-5802  
Telefax: (212) 344-5461  
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones  
BEASLEY, ALLEN, CROW, METHVIN, PORTIS  
& MILES, P. C.  
218 Commerce St., P.O. Box 4160  
Montgomery, AL 36104  
Office: (334) 269-2343  
Telefax: (334) 954-7555  
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy  
LUNDY, LUNDY, SOILEAU & SOUTH, LLP  
501 Broad Street  
Lake Charles, LA 70601  
Office: (337) 439-0707  
Telefax: (337) 439-1029  
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier  
deGRAVELLES, PALMINTIER,  
HOLTHAUS & FRUGE'  
618 Main Street  
Baton Rouge, LA 70801-1910  
Office: (225) 344-3735  
Telefax: (225) 344-0522  
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow  
LEWIS, KULLMAN, STERBCOW &  
ABRAMSON  
601 Poydras Street, Suite 2615  
New Orleans, LA 70130  
Office: (504) 588-1500  
Telefax: (504) 588-1514  
E-Mail: sterbcow@lksalaw.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

## CERTIFICATE OF SERVICE

We hereby certify that the above and foregoing Motion will be served on all counsel by *via* Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179 this 20th day of August, 2014.

/s/ Stephen J. Herman and James Parkerson Roy

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to:<br><br>No. 12-cv-968 | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR RECONSIDERATION
## OF THE COURT'S ORDER OF JULY 23, 2014
## REGARDING CHRONIC SPECIFIED PHYSICAL CONDITIONS

Class Counsel, on behalf of the Medical Benefits Settlement Class, respectfully submit the following memorandum in support of its Motion to Reconsider the Court's Order of July 23, 2014 [Doc. 13179]:

MAY IT PLEASE THE COURT:

The Claims Administrator's May 13, 2014 interpretation of the Medical Benefits Class Action Settlement Agreement ("MSA") effectively means that almost no class member will recover under Level B1 of the Specified Physical Conditions Matrix. Level B1 was intended to compensate class members with a Chronic Specified Physical Condition ("SPC") that first manifested within 24-to-72 hours of exposure, and continue to suffer from that condition to the present. Under the Claims Administrator's interpretation, however, all those who have lived with their compensable exposure injuries since the time of the Spill are now left with no recourse other than to file a back-end litigation suit in this Court. This is not what the Parties intended or what the MSA requires. The Court should reconsider its ruling, and reject the Claims Administrator's interpretation.

"Motions for reconsideration serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Texas Instruments, Inc. v. Hyundai Elecs. Indus., Co., Ltd.*, 50 F. Supp. 2d 619, 621 (E.D. Tex. 1999) (internal quotations omitted). Class Counsel respectfully submit this Motion to correct a manifest error in the legal and/or factual interpretation of the Medial Settlement Agreement. Specifically, the Claims Administrator's interpretation does not reflect the meaning of the MSA or the intent of the parties. The phrase "Later-Manifested Physical Condition," as it is used in the MSA, does not mean "any condition diagnosed after April 16, 2014."[1] Rather, it refers to conditions that did not exist (and had not yet manifested) on April 16, 2014, but that might arise at some point in the future. Conditions that had manifested within 24-to-72 hours, and have persisted since that time, are chronic conditions compensable under the B1 table in the SPC Matrix.

The entire point of providing a remedy for latent conditions that were unknowable at the time of settlement was to address *Amchem's* concern with the interests of potential future claimants. By providing a mechanism to address future injuries that were unknown as of April 16, 2012, the Medical Benefits Settlement Class avoids any potential intra-class conflict that might have otherwise arisen between currently injured class members and those whose injuries might manifest at some point in the future.[2]

---

[1] Class Counsel respectfully incorporate the Memorandum filed with the Court on July 4, 2014 [Doc. 13106], as well as the Memorandum to Judge Shushan dated May 13, 2014 [Doc. 12862-1].

[2] The Parties' motive in this respect was clear to those experts who testified in support of the settlement. As Professor Coffee observed, the settling parties negotiated to "fit within the guidelines laid down by . . . Amchem." [Decl. of John C. Coffee, Jr., Rec. Doc. 7113-2 ¶3.] Professor Coffee further explained that the Class complied with *Amchem* because it did not allow for "future claimants," and instead permitted those with later manifesting conditions to retain their rights to sue. [*Id.* ¶ 52.] Dean Klonoff echoed this sentiment, explaining that "the settlement avoids any inherent conflict between current and future claimants of the sort that prompted the Supreme Court to disapprove of the sprawling asbestos classes attempted in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Co.*, 527 U.S. 815 (1999)." [Decl. of Robert Klonoff, Rec. Doc. 7111-4 ¶ 33.]

2

To illustrate the unintended consequences of the Claims Administrator's approach, one need look no further than Max Plaisance, one of the Court-approved Class Representatives for the Medical Benefits Class. As stated in the class action complaint filed on April 16, 2012, Mr. Plaisance was a Clean-Up Worker who "began to feel ill almost immediately upon commencing work, experiencing symptoms of nausea, vomiting, and severe respiratory difficulties." [Dkt. No. 12-968, Rec. Doc. 1 ¶5.e.] As a result of his exposure, Mr. Plaisance developed asthma and "has been under the care of a doctor for his respiratory condition . . . . He still suffers from asthma to this day." [*Id.*] Mr. Plaisance was interviewed by Counsel for BP during settlement negotiations. It was understood by all parties that he would be eligible to qualify as a B1 claimant; indeed, Mr. Plaisance was appointed, in part, to represent chronic claimants like himself who had suffered continuously since their exposure to the oil.

Prior to the filing of the MSA, however, there is no way that Mr. Plaisance could have known that his doctor would have had to formally "diagnose" him with a settlement-term chronic condition, or that he would have needed the objective tests required by the agreement to confirm his chronic condition, prior to the date of the settlement. The MSA, in this regard, sets forth specific tests a claimant must obtain in order to document his or her chronic condition.[3] But the fact that such specific tests (and/or "diagnoses") would be required – as well as the specific nature and requirements of the tests – could not have been known by class members or their counsel prior to April 16, 2012, when the MSA was filed with the Court. As a result, very few class members would have received these specific tests prior to April 16, 2012, and, consequently, almost no class members will have received a "diagnosis" of a B1 chronic

---

[3] These objective tests are identified in Table 3 of Exhibit 8. To receive compensation for reactive airways dysfunction syndrome, for example, a class member must (1) obtain a positive methacholine challenge test or equivalent test, (2) exhibit the absence of pre-existing respiratory disease or asthma, and (3) obtain a finding excluding other causes or symptoms. [Rec. Doc. 6427.]

3

condition prior to that date. Under the Claims Administrator's interpretation, which requires a formal "diagnosis" prior to April 16, 2012, an individual like Mr. Plaisance, who did not anticipate the required objective tests before those tests were agreed upon and publicly disclosed, is unable to seek compensation at the B1 Level even though he has suffered continuously since his exposure.[4]

This was not the intent of the agreement. Rather, the MSA was intended to compensate class members at the B1 Level who had manifested a condition within 24-to-72 hours and had suffered continuously since exposure. Indeed, this was precisely the way in which Class Counsel described Level B1 compensation during the fairness hearing: "If you are a person who had the acute condition and it continues today, so you still have this condition that's turned into what we call a *chronic condition*, then your payments go up exponentially more." [Dkt. No. 10-2179, Rec. Doc. 7892 at 188 (emphasis added).] Class Counsel's description then led to the following exchange:

> THE COURT: What are the causation requirements for people in this class?
>
> MS. GREENWALD: They would have to have medical proof, so they would have to have gone to a doctor. . . . So for chronic [compensation levels], it would be a doctor that's still treating that

---

[4] To read the MSA to require class members and their physicians to anticipate Table 3's specific diseases and tests, and to obtain the required tests (and/or "diagnoses") prior to April 16, 2012, is even more unrealistic in light of the evidence jointly proffered to the Court regarding class members' access to healthcare in the Gulf. Bernard Goldstein, for example, supplied the Court with an uncontested declaration that detailed the "multi-factorial" health problems rampant throughout the Gulf. Dr. Goldstein testified, *inter alia*, that there is a "significant shortage of clinicians in the Gulf at both the primary care and specialty levels, particularly in rural areas, and an insufficient number of clinicians who participate in federally funded health programs. High poverty and lack of private insurance coverage, especially among unemployed individuals and the working poor, make it difficult to attract and sustain high-quality health care in the area." The need to improve access to health care was a prime reason the parties negotiated the $105 million Gulf Regional Health Outreach Program as part of the settlement. And it goes without saying that a disproportionate number of clean-up workers were unemployed or seasonal workers who could not perform their usual summer jobs due to the oil spill and, thus, were without health insurance. These individuals had inadequate access to health care, and very few would have received the specific tests required by the SPC Matrix. Class Counsel, who represent many of those class members who cope with inadequate access to healthcare services, never would have agreed to a settlement provision that required a diagnosis with specific tests prior to April 16, 2012, in order to receive compensation at Level B1.

4

> person to say that that condition exists beyond the date of filing the complaint, which is April 16th.

[*Id.* at 188-89.] At the fairness hearing, in other words, Class Counsel described a Chronic Specified Physical Condition as one "*diagnosed*" by a doctor after April 16, 2012, but that had existed (or manifested) prior to April 16, 2012. Counsel for BP did not seek to correct the record, or otherwise articulate a different understanding.

In fact, counsel for BP clearly shared Class Counsel's understanding. At the preliminary approval hearing, BP's counsel explained that Later-Manifested Physical Conditions "have not manifested themselves today," and are those conditions that "perhaps show up, we hope not, but show up five years from now or ten years from now." [Dkt. No. 10-2179, Rec. Doc. 6395 at 90.] In other words, on April 25, 2012, BP understood Later-Manifested Physical Conditions to be those conditions that did not exist (and were unknowable) at the time of settlement, not those that had manifested within 24-to-72 hours of exposure and had persisted since the date of manifestation. This is also precisely how counsel for BP described Later-Manifested Physical Conditions in its proposed findings of fact and conclusions of law, stating that Later-Manifested Physical Conditions are those "claimed to have *manifested* after April 16, 2012."[5] The Claims Administrator's interpretation, which characterizes any post-April 2012 diagnosis to be a Later-Manifested Physical Condition (regardless of the date the condition manifested) is at direct odds with the representations of BP's counsel and Class Counsel at the time of certification.

Under the Claims Administrator's interpretation, most B1 claimants will be left with no option other than a back-end litigation suit to obtain financial compensation for their injuries. As originally intended, however, the Back-End Litigation Option ("BELO") was meant for latent

---

[5] BP's position changed after settlement approval and expiration of the opt-out period. In its July 14, 2014 memoranda, BP argued that Later-Manifested Physical Conditions are both "later manifested conditions and earlier manifested conditions that are first diagnosed after April 16, 2012." [Rec. Doc. 13135 at 7.]

5

diseases, like cancers, that would likely take years to manifest, (not for conditions present at the time a claim for an SPC was filed). That the BELO was meant to work in this manner is abundantly clear from the presentations at the fairness hearing. One objector, for example, complained that the BELO procedure foreclosed punitive damages; Class Counsel explained that it was fair to trade the right to punitive damages in order to preserve claims that would not arise for "5, 10, 15, 20 years from now." [*Id.* at 255 ("The back-end litigation option is designed for people who get sick 5, 10, 15, 20 years from now."). Dean Robert Klonoff, whose testimony was uncontradicted, described the BELO as a mechanism to allow suits "if certain physical conditions manifest in the future." [Decl. of Robert Klonoff, Rec. Doc. 7111-4 ¶67.] And BP's class certification expert, Professor Geoffrey Miller, testified that the "Back-End Litigation Option preserves claims for physical conditions which become manifest at some later date." [Decl. of Geoffrey Miller, Rec. Doc. 7112-8 ¶55.]

Indeed, no participant during certification expressed the belief that the MSA's BELO provision was meant for those who manifested a SPC within 24-to-72 hours of exposure, but was not "diagnosed" until the settlement or later. Even the Court's questioning echoed the understanding that the BELO was intended for latent diseases that would be unlikely to manifest for years, not those that had existed continuously since exposure:

> THE COURT: So, as I understand it, that the class, as we defined it, we're dealing with past exposure; and, if someone later—if the exposure—if the symptoms, I guess, the injury, later manifests itself, and it's *unknown now or could not be known now*, then they have this back-end litigation option?
>
> MS. CABRASER: That's right.

[*Id.* at 206 (emphasis added).] The BELO, in short, was intended to cover the types of long-dormant afflictions pleaded in the class complaint but omitted from the SPC Matrix.

6

The BELO, because it was intended to address *latent* disease, was not intended to be the sole method of compensation for those with chronic conditions formally "diagnosed" after April 16, 2012. Unfortunately, however, this is the sad result. Class members suffering chronically since their exposure now cannot file claims for compensation with the Claims Administrator for a chronic condition; instead, such class members must immediately notify BP of the intent to exercise the BELO provision. Presuming that BP is unwilling to mediate these claims,[6] class members will then be forced to file BELO lawsuits in the Eastern District of Louisiana. Indeed, Class Counsel has been informed by counsel for class claimants that thousands of BELO claims will be filed within the coming months.

Further, and to compound the error associated with the Claims Administrator's interpretation, BP may later argue in defense of future Back-End Litigation actions that class members with Specified Physical Conditions cannot pursue BELO actions under the Medical Settlement Release. Class Counsel do not believe that, under the Claims Administrator's interpretation, (or the terms of the release), Class Members with Specified Physical Conditions are prevented from pursuing a BELO action as provided in the Settlement, regardless of when they first manifest, as long as such Later-Manifested Physical Conditions (as currently defined) are first formally "diagnosed" after April 16, 2012 – (and Class Counsel have been informed by the Claims Administrator that the Claims Administrator shares this interpretation). Nevertheless, and particularly where the Class Member avails himself or herself of the relatively nominal acute (or "A1") compensation payments to which he or she is clearly entitled, a Class Member with a Specific Physical Condition that first manifested within 24-to-72 hours of exposure could, after being formally "diagnosed" with a chronic condition post-April 2012, and filing a BELO, find

---

[6] Class Counsel has been informed that a small number of class members have already notified BP of their intent to exercise a BELO option, and that BP has refused to mediate each of these claims.

7

himself or herself facing a motion to dismiss in which BP claims that such action has allegedly been "released".[7]

In any event, the entire point of the settlement was to efficiently compensate large numbers of existing exposure injuries and to bring them to a close. Now, the Court will be forced to adjudicate thousands of claims that were intended to be settled.

It was BP Counsel who cautioned explicitly against this result (before approval): "These cases take years. Can you imagine trying a couple thousand of these cases? I mean, it would just take up court years." [Dkt. No. 10-2179, Rec. Doc. 7892 at 213.][8] This is a far cry from the negotiated outcome that was initially praised for achieving a result that would avoid the pitfalls encountered by those exposed to oil in the wake of the *Exxon Valdez*.

---

[7] On May 22, 2014, BP Counsel sent a Memorandum to Judge Shushan in which BP represented that "BP has not taken, and does not take, [the] position" that "a Class Member's opportunity to pursue recovery for a claimed Later-Manifested Physical Condition ('LMPC') could be barred because it 'manifested within the first 24-72 hours' of exposure." However: **(i)** this arguably only involved a qualifying definitional issue, and not a question regarding the potential application of the release; and **(ii)** BP Counsel technically only represented that BP had not and was currently not taking such a position; not that BP would never take that position in the future. Class Counsel understand that the Claims Administrator is asking BP to confirm the Claims Administrator's understanding, interpretation, position, and belief that a Medical Benefits Settlement Class Member can make a claim and receive payment for a Specified Physical Condition, (as defined and allowed under the Claims Administrator's current interpretation), while also preserving any and all rights to file and pursue a BELO action with respect to any and all "Later Manifested Physical Conditions" that exist and are first diagnosed after April 16, 2012.

[8] This outcome will also spike the administration costs associated with this settlement – as well as all Parties' future litigation expenses. Under the MSA, any claimant who elects to utilize the BELO option must first attempt to mediate. To do so, the claimant must file an intent to sue with the Claims Administrator, who is then charged with transmitting relevant information to BP, and then transmitting information from BP back to the claimant. If BP exercises its option to mediate, the claimant must complete a 23-page mediation information form, which is transmitted to the Claims Administrator, who maintains the information, checks the form for completeness, and notifies the claimant of any defects. The Claims Administrator then selects and hires a mediator and generally facilitates the mediation process. If unsuccessful, then the action must be formally litigated. Apparently, BP would rather spend millions of dollars in transactional costs than simply pay the B1 Level claimants what it agreed to at the time of the Settlement Agreement.

## Conclusion

For the reasons set forth above, (as well as for the reasons set forth in the previous Memorandum of May 13, 2014 [Doc. 12862-1] and Memorandum of July 4, 2014 [Doc. 13106]), Class Counsel respectfully request that the Court reconsider its Order of July 23, 2014, and issue a ruling directing the Claims Administrator to recognize and pay all claims by eligible Medical Benefits Class Members that qualify for compensation as a Chronic Specified Physical Condition under Exhibit 8, irrespective of when the Chronic SPC was first "diagnosed".

This 20th day of August, 2014.

Respectfully submitted,

/s/  Stephen J. Herman
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhklawfirm.com
*Co-Lead Class Counsel*

/s/ James Parkerson Roy
**James Parkerson Roy**, La. Bar No.11511
**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Co-Lead Class Counsel*

**CLASS COUNSEL
FOR THE MEDICAL BENEFITS SETTLEMENT**

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones

9

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101

Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.
Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

## CERTIFICATE OF SERVICE

We hereby certify that the above and foregoing Memorandum will be served on all counsel by *via* Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179 this 20th day of August, 2014.

/s/ Stephen J. Herman and James Parkerson Roy