UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 |
| | | SECTION: J |
| | * | JUDGE BARBIER |
| This Document Relates to: *No. 13-6649* | * * | MAG. JUDGE WILKINSON |

## ORDER & REASONS
[As to Defendants' Motion to Dismiss Claims by the Mexican State of Yucatán]

Before the Court is Defendants' Motion to Dismiss the Claims of the Mexican State of Yucatán (Rec. Doc. 22589), the State of Yucatán's opposition (Rec. Doc. 22767), and Defendants' reply (Rec. Doc. 22864). After considering the parties' arguments, the record, and the applicable law, the Court grants the motion for the reasons set forth below.

### Background

This case arises from the 2010 oil spill from the Macondo Well, which was drilled by the DEEPWATER HORIZON on the Outer Continental Shelf approximately 50 miles off the Louisiana coast. In September 2013, the Mexican State of Yucatán ("Yucatán") filed a lawsuit in the Southern District of Florida against certain BP entities, Transocean entities, and Halliburton entities (collectively, "Defendants") for damages that allegedly resulted from the oil spill. Yucatán's lawsuit was transferred to this Court and consolidated with MDL 2179, where it was automatically stayed.

Yucatán pleads claims under Florida law, the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701, et seq., and general maritime law. These claims are similar to those asserted by three other Mexican States—Tamaulipas, Quintana Roo, and Veracruz—which were previously dismissed by this Court. *See In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82

(E.D. La. 2011); *In Re Oil Spill by the Oil Rig Deepwater Horizon*¸ 970 F. Supp. 2d 524 (E.D. La. 2013). The Court of Appeals later affirmed that dismissal. *In Re Deepwater Horizon*, 784 F.3d 1019 (5th Cir. 2015). In light of those developments, this Court granted Defendants leave to file the instant motion to dismiss. (Pretrial Order No. 64 at 5-6, Rec. Doc. 22297).

## State Law Claims

Yucatán concedes that *In Re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014), is dispositive of its claims under Florida law. (Yucatán Opp'n at 2). In that case, eleven Louisiana Parishes asserted claims under a Louisiana statute for injuries to wildlife that resulted from the DEEPWATER HORIZON/Macondo Well oil spill, which, as noted above, originated over the Outer Continental Shelf. *Id.* at 161. The Fifth Circuit held that the Louisiana statute was preempted by federal law in that circumstance. *Id.* at 171, 174. For similar reasons, Yucatán's claims under Florida law are also preempted and must be dismissed.

## OPA Claims

In order to bring a claim under OPA, a foreign claimant like Yucatán must demonstrate, in addition to other requirements, that its recovery is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). Yucatán does not assert that a treaty or executive agreement exists which authorizes it to recover under OPA. *See also In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (examining four treaties and finding none authorize Mexican States to recover under OPA). Yucatán also admits that "there has been no certification by the Secretary of State, in consultation with the Attorney General and other appropriate officials

that Mexico provides a comparable remedy for United States claimants . . . ." (Yucatán Opp'n at 7).

Nevertheless, Yucatán contends that it may recover under OPA because Mexican law—specifically, Mexico's General Law of Ecological Balance and Environmental Protection ("GLEBEP")—provides a remedy to United States claimants that is comparable to OPA. Yucatán argues that the intent of § 2707(a)(1)(B) is not certification but instead to ensure that American courts do not expend time and expenses on claimants from foreign countries if the courts of those foreign countries do not provide American claimants with remedies similar to OPA. Yucatán concludes, then, that GLEBEP satisfies § 2707(a)(1)(B) notwithstanding the lack of certification.

The Court is not persuaded. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quotations and citations omitted). OPA's language is plain: Absent a treaty or executive agreement authorizing Yucatán's recovery, OPA requires that "the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." If Congress intended courts, as opposed to the Secretary of State, to determine whether or not a foreign law is comparable to OPA, it could have omitted the certification language and simply required that foreign law provide a comparable remedy. However, because OPA plainly requires certification (and Yucatán does not argue that this requirement is absurd, nor does it appear to be), the Court is not free to ignore it.

3

Because Yucatán has not satisfied either of the requirements in § 2707(a)(1)(B), its OPA claims must be dismissed. The Court need not and does not address whether GLEBEP provides a remedy to United States claimants that is comparable to OPA.

**General Maritime Law Claims**

As mentioned above, this Court previously dismissed cases by three other Mexican States, which had asserted claims similar to Yucatán's. The Fifth Circuit affirmed, holding that those Mexican States did not hold a "proprietary interest" in any property allegedly damaged by oil, as required by *Robins Dry Dock & Repair Co. v. Flint* and its progeny in order to bring a negligence claim under general maritime law. *In Re Deepwater Horizon*, 784 F.3d at 1032. The Court of Appeals stated:

> Ultimately, the question in this case is not whether the Mexican States have *some* authority to use or exploit *some* of the land and other resources at issue here. They likely do. The question is whether their property interests rise to the requisite level. They do not. . . . [T]he Mexican Constitution is sufficiently clear about the distribution of property rights in the country for us to conclude that the Mexican States in no way resemble owners permitted to recover economic damages in our case law. . . . Seen through the prism of the perhaps less onerous demise charter analogy, the Mexican States' interests still do not stack up. . . . It could not be said that the states have taken over the property at issue 'lock, stock and barrel.' Rather, [Mexican] federal law places the bulk of the power here in the hands of the [Mexican] federal government. . . . The state constitutions, the above-listed laws, and Plaintiffs' cited affidavits bespeak a role for the states in managing some of the country's property. But they do not provide the Mexican States with the crucial proprietary interest for purposes of *Robins Dry Dock*.

*Id.* at 1030-31 (emphasis in original; citation omitted). Yucatán provides no valid reason why it is entitled to a different result. Accordingly, its claims under general maritime law must be dismissed.

**Conclusion**

For the foregoing reasons,

IT IS ORDERED that Defendants' Motion to Dismiss (Rec. Doc. 22589) is GRANTED and the claims of the Mexican State of Yucatán are DISMISSED with prejudice.

New Orleans, Louisiana, this 6th day of March, 2018.

Carl J. Barbier
United States District Judge

**Note to Clerk: File in 10-md-2179 and 13-6649.**