# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon in the Gulf of Mexico," on April 20, 2010 | : : : | MDL No. 2179 |
| | : | Section J |
| | : | |
| This document relates to: Nos. 12-970, 18-00435,[*] 17-16366, 17-16241, 17-17789, 17-16248, 17-16266, 17-16245, and 17-17790 | : : : : : : | District Judge Barbier  Magistrate Judge Wilkinson |

## BP DEFENDANTS' OPPOSITION TO THE MOTIONS FOR SUPERSEDEAS BONDS

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Kristopher S. Ritter
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654

Jeffrey Bossert Clark
Aaron L. Nielson
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

Don K. Haycraft (Bar #14361)
Devin Reid (Bar #32645)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139

*Attorneys for BP Defendants*

[*] No. 18-00435 was not explicitly made part of this Opposition ordered by the Court on February 26, 2018.  Nevertheless, the Claimant in No. 18-00435 filed a motion on March 6, 2018 identical in all material respects to the six motions filed on behalf of Cunningham Bounds clients.  For efficiency's sake, the BP Defendants respond to the motion in No. 18-00435 here as well.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 3

ARGUMENT .................................................................................................................. 7

I.    All But One Of The Movants Seek A New Order Directing BP To Make Immediate
      Payment Because No Such Order Presently Exists—And Without Such An Order,
      Supersedeas Bonds Are Unavailable. ................................................................... 7

II.   The Settlement Contains A Specific Set Of Guarantee Provisions Making Bonds
      Unnecessary And Inappropriate........................................................................ 10

III.  Bonds Are Not Needed Where There Is No Risk of Nonpayment. ................................. 13

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

*2Die4Kourt v. Hillair Capital Mgmt., LLC*,
No. SACV 16-01304, 2016 WL 4487895 (C.D. Cal. Aug. 23, 2016) ....................................2

*American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 87 S. Ct. 1 (1966) (Harlan, J., in chambers) ....................................8

*Amerispec, Inc. v. Metro Inspection Servs., Inc.*,
No. 3:01-CV-0946-DCIV.A. 3:01-CV-0946-D WL 770999 (N.D. Tex. July 3, 2001) ....................................13

*Bennigan's Franchising Company, L.P. v. Sweet Onion, Inc.*,
No. 08-CV-2132-F, 2009 WL 10678344 (N.D. Tex. Apr. 1, 2009) .......................... 12-13

*Claimant ID 100218776 v. BP Ex. & Prod., Inc.*,
--- Fed. App'x ---, 2017 WL 4708256 (5th Cir. 2017) ....................................12

*In re Deepwater Horizon*,
785 F.3d 986 (5th Cir. 2015) ....................................4

*In re Deepwater Horizon*,
732 F.3d 326 (5th Cir. 2013) .............................. 1, 4, 6, 9-10

*Dominick v. Barrere*,
Civ. Action No. 12-497-JJB-RLB, 2015 WL 7756140 (M.D. La. Dec. 1, 2015) ....................................13

*Enserch Corp. v. Shand Morahan & Co., Inc.*,
918 F.2d 462 (5th Cir. 1990) ....................................14

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
636 F.2d 755 (D.C. Cir. 1980) ....................................13

*Halliburton Energy Servs., Inc. v. NL Indus.*,
No. H-05-4160, 2008 WL 2787247 (S.D. Tex. 2008) ....................................1, 8

*Kaepa, Inc. v. Achilles Corp.*,
76 F.3d 624 (5th Cir. 1996) ....................................13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ....................................4

*In re Oil Spill by Oil Rig Deepwater Horizon*,
   910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd In re Deepwater Horizon*, 739 F.3d
   790 (5th Cir.), *cert. denied*, 135 S. Ct. 754 (2014) ...................................................................3

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
   786 F.2d 794 (7th Cir. 1986) .....................................................................................13

*Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*,
   600 F.2d 1189 (5th Cir. 1979) ............................................................................ 13-14

*Strouse v. J. Kinson Cook, Inc.*,
   634 F.2d 883 (5th Cir. Unit B. 1981).........................................................................12

*Westchester Fire Ins. Co. v. Wallerich*,
   563 F.3d 707 (8th Cir. 2009) .....................................................................................12

*White Farm Equip. Co. v. Kupcho*,
   792 F.2d 526 (5th Cir. 1986) .....................................................................................11

**Statutes**

28 U.S.C. § 1291 ................................................................................................................5, 9

28 U.S.C. § 1961 ...............................................................................................................2, 12

**Rules**

Fed. R. App. P. 37(a) ..........................................................................................................1, 8

Fed. R. Civ. P. 8 ....................................................................................................................11

Fed. R. Civ. P. 38 ..................................................................................................................11

Fed. R. Civ. P. 62 ..............................................................................................................2, 11

Fed. R. Civ. P. 62(c) ...............................................................................................................8

Fed. R. Civ. P. 62(d) .....................................................................................................1, 8, 13

Fed. R. Civ. P. 69(a)(1)........................................................................................................1, 8

E.D. La. Rule 62.2 .............................................................................................................8, 12

**Other Authorities**

11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE &
   PROCEDURE § 2905 (3d ed.)..........................................................................1, 2, 8

## INTRODUCTION

Eight motions seek to require BP to post a bonds on a case-by-case basis in order to appeal denials of discretionary review to the Fifth Circuit. All are meritless. The six motions filed by the Cunningham Bounds, LLC law firm and the one filed by the Beasley Allen law firm are all essentially carbon copies of each other with almost no analysis. And the motion filed by Donald Foret, to the extent that it says more than the other motions, misunderstands the law. This Court should deny all eight motions for at least three independent reasons.

***First***, with the exception of Donald Foret's motion, all of the motions seek as primary relief "the entry of an order requiring immediate payment" to the claimants and only "in the alternative" ask for an order requiring BP to post a supersedeas bond. This underscores that no such judgments have already been issued by the Court in the orders BP has appealed. Instead, the orders all simply deny discretionary review. But the ***denial of discretionary review is not the equivalent of a monetary judgment***, so a supersedeas bond has no role here. *See* Fed. R. Civ. P. 62(d); Fed. R. Civ. P. 69(a)(1); Fed. R. App. P. 37(a); *Halliburton Energy Servs., Inc. v. NL Indus.*, No. H-05-4160, 2008 WL 2787247, *4 (S.D. Tex. 2008); 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2905 (3d ed.). In other words, because there is not yet a monetary judgment or even an injunction, BP does not need a stay, thus making a supersedeas bond unnecessary and inappropriate. At the same time, moreover, BP does not pay claimants directly; the Court Supervised Settlement Program ("CSSP") does. This further confirms that BP does not need a stay, and so does not need to post bonds. Likewise, in response to concerns that BP might be forced to pay awards that it could never get back even if the awards were later reversed on appeal, the Fifth Circuit has established a path to interlocutory appellate review that does not require posting bonds. *See In re Deepwater Horizon*, 732 F.3d 326, 332 n.3 (5th Cir. 2013). The motions here run headlong into that path too.

*Second*, the requirement to post a bond can be waived prospectively **by contract**—and that was done here.  *See, e.g.*, *2Die4Kourt v. Hillair Capital Mgmt., LLC*, No. SACV 16-01304, 2016 WL 4487895, at *11 (C.D. Cal. Aug. 23, 2016).  The Settlement negotiated by BP and Class Counsel sets out a process to govern claims and appeals.  Nothing in that process requires BP to post a bond.  This was done deliberately.  In fact, if ordinary bond requirements applied, there would be no need for Exhibits 24A and 24B.  As the Court knows, Class Counsel required comprehensive assurances of payment in the Settlement itself.  Requiring BP to post bonds would thus defeat the parties' agreement and needlessly impose costs on BP. Simply put, because this is not ordinary litigation, the ordinary Rules of Civil Procedure do not apply.  The motions, however, are premised on the false notion that Rule 62 applies.  Relatedly, were Donald Foret correct (and he is not) that if the denials of discretionary review were the equivalent of a monetary judgment, then 28 U.S.C. § 1961 would require BP to pay post-judgment interest and also bond an extra 20% markup of any such monetary judgment to cover such interest and the like under Local Rule 62.2.  But this provides an additional reason that the Settlement cannot be read to require BP to post individual supersedeas bonds in order to appeal from denials of discretionary review of CSSP decisions.  After all, BP has never agreed to pay interest.  The bonding motions are thus also an illegitimate attempt by claimants to sweeten the pot.

*Third*, even if BP were subject to a bond requirement, it is hornbook law that this Court **has discretion to waive supersedeas bonds**.  *See, e.g.*, WRIGHT & MILLER, Section 2905 ("Many courts have ruled that they have the power to waive the bond requirement entirely.").  Here, there is no question that BP has sufficient funds to pay all awards once judicial review has come to an end; indeed, via the Settlement Trust alone, BP has already paid $11.2 billion to tens of thousands of claimants.  When the Court approved the Settlement, it reviewed Exhibits 24A and

24B, which provide explicit guarantees of BP's ability and commitment to pay.  And BP has attached a declaration from Michael T. Robertson, who confirms that BP has met its obligations to date and that there is no reason to believe that BP will not continue to be able to do so.

In short, there are many reasons that nearly six years after the Settlement was signed, these Movants are the first to argue that BP must post bonds to appeal Settlement questions. Class Counsel has never made nor supported such an argument.  To the contrary, when BP has filed other CSSP-related appeals, even those in which Class Counsel is on the other side, no one has suggested that bonds are required.  This is true, moreover, for other settlement awards that BP has appealed to the Fifth Circuit—even awards worth tens of millions of dollars.  In other words, sophisticated litigants have long concluded that BP is free to appeal without first posting a bond.  This consistent pattern, broken only by these motions, is no accident.

## BACKGROUND

As the Court knows well, following the *Deepwater Horizon* oil spill, BP and Class Counsel entered into a massive Settlement to govern claims for economic losses and property damages.  This Court approved the Settlement, and the Fifth Circuit affirmed.  *See In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd In re Deepwater Horizon*, 739 F.3d 790 (5th Cir.).  Members of the Settlement Class could opt-out and pursue ordinary civil litigation; those who elected to remain, however, agreed to be bound by the procedural rules and substantive requirements in the Settlement.  In exchange, they received a streamlined process for resolution of claims, reduced evidentiary burdens, BP's agreement to not raise certain defenses, and the prospect of being made "more than whole."  *Deepwater Horizon*, 910 F. Supp. 2d at 947.  The Settlement was the result of intense negotiation, and both this Court and the Fifth Circuit concluded the resulting compromise was fair.

3

Several Settlement provisions are relevant here.  First, the Settlement sets out a specific process for resolving claims.  Claims are initially processed by the Claims Administrator, followed by review by the Appeal Panel.  The appeal process is methodically detailed in the Settlement, including who can appeal, under what circumstances an appeal is authorized, and the procedures used to resolve the appeal.  In fact, Exhibit 25 is entirely dedicated to creating and explaining these procedures.  None of the Settlement's procedures incorporate or even reference the Federal Rules of Civil Procedure.  The Settlement's procedures are *sui generis*.

After the parties have exhausted the Settlement Program's process, it is possible to seek judicial review in federal court.  Section 6.6 of the Settlement provides: "The Court maintains the discretionary right to review any Appeal determination to consider whether the determination was in compliance with the Agreement."  This authority is reinforced by Section 18.1, which states that this Court retains jurisdiction "for the purpose of enforcing, implementing and interpreting this Agreement" and that "[a]ny disputes or controversies arising out of or related to the interpretation, enforcement or implementation of the Agreement and the Release shall be made by motion to the Court."  A federal court, upon approving a settlement, can retain discretionary authority to oversee the implementation of that settlement.  *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994).  After this Court issues a decision, including a discretionary denial of review, BP or the claimant can seek further review in the Fifth Circuit.  *See In re Deepwater Horizon*, 785 F.3d 986, 997 (5th Cir. 2015) (holding that "the parties have preserved their right to appeal from the district court to this court"); *cf. Deepwater Horizon*, 732 F.3d at 332 n.3 (reasoning that "the Court" includes the Fifth Circuit because "the parties clearly intended a broader interpretation of the term—one that retained their right to appeal to this court—as shown by BP's appeal and Class Counsel's failure to object").

4

The path to judicial review under the Settlement also departs from that set out in the Federal Rules of Civil Procedure.  In ordinary civil litigation, for instance, a plaintiff files a complaint, after which the defendant either files a motion or an answer.  Eventually, if there are factual disputes, the litigation may proceed to discovery and potentially result in a trial.  And needless to say, in ordinary litigation, a district court does not generally have authority to decline to consider a claim that falls within its subject-matter jurisdiction.  The Settlement, by contrast, employs different procedures.  A request for discretionary review—with its own court-created page-limit and formatting requirements—does not begin with a complaint, BP does not file motions to dismiss, discovery is limited, and there are no trials.  In short, because claim disputes under the Settlement are not resolved through ordinary litigation, the rules of ordinary litigation are eclipsed by special rules tailored to the unique nature of the Settlement itself.

The exceptional character of the Settlement process extends to the Fifth Circuit.  In ordinary litigation, once a district court has resolved a plaintiff's claims, the losing party may appeal as of right under "final decision" appellate jurisdiction.  *See* 28 U.S.C. § 1291.  Not so when it comes to the Settlement.  Because the Settlement is a class-wide agreement, the Fifth Circuit has clearly held that jurisdiction over an appeal regarding an individual claim does not arise under 28 U.S.C. § 1291.  Instead, the Fifth Circuit has held that the basis of appellate jurisdiction for Settlement appeals is the collateral order doctrine.  This is so because there will not be a final judgment until the entire Settlement—i.e., all of its claims—are closed.  Here, no one suggests that there has been a final decision with regard to these Movants.  And the Fifth Circuit has effectively concluded that while an appeal is pending before it, the Claims Administrator is not required to pay any awards; indeed, the fact that any grant of collateral order-doctrine review will forestall payment is the premise of the Fifth Circuit's holding that

5

interlocutory appeals of CSSP-related claims award decisions are permissible. *See, e.g.*, *Deepwater Horizon*, 732 F.3d at 332 n.3. This is why the CSSP has not paid on these eight claims and most of the Movants seek immediate payment.

Finally, the Settlement includes provisions relating to payment. Not only does it set out exclusive formulas for calculating awards that incorporate both the nature of the claimant's business and its geographical location, but more relevant here, it also addresses the logistics of payment. For instance, Section 5.11 is entitled "General Provisions Applicable To Payment Of All Compensation Amounts." Under the Settlement, BP does not pay individual claimants. Rather, per Section 5.12 ("Funding of Payments"), BP's duty is to periodically fund a "Settlement Trust" managed by the Claims Administrator. Specifically, after making various initial payments into the Settlement Trust during the early period of the Settlement, it is now BP's duty under Section 5.12.1.3 to "pay or cause to be paid additional amounts to the Settlement Trust, from time to time upon receipt of [a] notice [from the Claims Administrator], sufficient to restore the balance of the General Claims fund to at least $200 million."

The Settlement also includes ample provisions to ensure that BP can meet its payment obligations, even if BP Exploration and Production Inc. ("BPXP") and BP America Production Company ("BPAPC")—the BP Settlement signatories, and the entities with the initial obligation to ensure that the Settlement Trust has adequate resources to pay all awards upon completion of the appellate process—were somehow to default. In particular, Section 37.1 states:

> BPCNA [i.e., BP Corporation North America Inc.] shall not be a Party to this Agreement, but shall serve as Guarantor of the BP Parties' payment obligations under this Agreement as set forth in the Guarantee attached hereto as Exhibit 24A. BP p.l.c. shall not be a Party to this Agreement, but shall serve as a Back-Up Guarantor as set forth in the Guarantee attached hereto as Exhibit 24B.[1]

---

[1] *See also* Settlement, § 38.79 ("Guarantor shall mean BPCNA."); *id.* § 38.78 ("Guarantee shall mean the guarantees attached as Exhibit 24A, 24B.").

Exhibits 24A and 24B, in turn, describe BPCNA's and BP p.l.c's obligations.  Per Exhibit 24A, BPCNA "absolutely, irrecoverably, and unconditionally guarantees the Economic and Property Damages Settlement Class."  Hence, if the BP signatories do not fund the Settlement Trust, BPCNA will.  Further, "[t]his Guarantee shall not be amended without the written consent of the First Guarantor and the Beneficiaries," thus giving claimants even more confidence.  And per Exhibit 24B, BP p.l.c. "absolutely, irrecoverably, and unconditionally guarantees" payment should BPCNA be unable to meet its duties. The parties also specified that only the Claims Administrator or Lead Class Counsel can enforce the guarantees; individual class members cannot.  *See* Ex. 24A, § 9(a); Ex. 24B, § 11(a).  To date, all awards where the appellate process has wrapped up have been paid without incident.

Here, BP disagrees with the CSSP's substantive decisions concerning these Movants, for reasons BP has explained elsewhere.  This Court, however, denied discretionary review and BP, as is its right under the Settlement, then filed notices of appeal.  Movants thereafter filed the motions at issue.  The Court ordered BP to file this Opposition.

## ARGUMENT

**I.     ALL BUT ONE OF THE MOVANTS SEEK A NEW ORDER SEEKING IMMEDIATE PAYMENT BECAUSE NO SUCH ORDER PRESENTLY EXISTS—AND WITHOUT SUCH AN ORDER, BONDS ARE UNNECESSARY.**

The first reason why the motions should be denied is elementary: There is nothing yet to stay.  By denying discretionary review, this Court does not itself rule, one way or another, on the validity of the arguments advanced by any CSSP claimant to support its request to recover; hence, the entry of an order denying discretionary review is not an executable monetary judgment.  And without an executable monetary judgment, there is no need for a stay.  The gap between this Court's orders denying discretionary review and monetary judgments explains why seven of the eight motions here lead off by asking "for the entry of an order requiring immediate

7

payment" and only in the alternative seek an order requiring BP to post a supersedeas bond. Only Donald Foret asks for the entry of a supersedeas bond full stop. Yet he too makes no effort to explain how a denial of discretionary review is a substantive order requiring a stay. Movants, in other words, effectively concede that no order directing monetary payment exists.

This point is critical because it is only in situations where such an executable monetary judgment exists that the appealing party is required to seek and obtain a bond in order to enjoy a stay pending appeal. *See, e.g., American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 87 S. Ct. 1 (1966) (Harlan, J., in chambers) ("[A] party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed. R. Civ. P. 62(d) …"); *Halliburton*, 2008 WL 2787247 at *4 (similar); WRIGHT & MILLER, Section 2905 (similar).[2]  Obviously, denials of discretionary review are not injunctions, so Fed. R. Civ. P. 62(c) does not control.  And because executable monetary judgments are not at issue, Fed. R. Civ. P. 62(d) is also inapt.  Hence, ***BP has not requested and does not need a stay***, which is all a bond can achieve.  Nothing in the Federal Rules of Civil Procedure or the Settlement applies bonding requirements to the decisions of a settlement claims program or make CSSP decisions immediately operative without an executable judgment entered by a District Court.  Movants' arguments are thus unavailing.

Moreover, the Fifth Circuit has effectively held that the Settlement Program ***cannot*** pay awards until the full appellate process has come to an end—indeed, the Fifth Circuit premised its recognition of collateral-order jurisdiction on that very point:

> We have jurisdiction over BP's appeal of the district court's March 5 order under the collateral order doctrine.  The order conclusively determined the interpretation

---

[2] *See also* Fed. R. Civ. P. 69(a)(1) (the only form of judgments that can be "enforced by writ of execution" are "money judgment[s]"); Fed. R. App. P. 37(a) (interest begins to be payable when "a money judgment" is entered); Local Rule 62.2 (directing that bonds include an extra 20% to account for, inter alia, interest payments).

dispute, which is completely separate from the merits of BP's liability for the oil spill, and it will be effectively unreviewable on appeal from final judgment because, at that point, ***the improper awards will have been distributed*** to potentially thousands of claimants and BP will have no practical way of recovering these funds should it prevail.

*Deepwater Horizon*, 732 F.3d at 332 n.3 (emphasis added).

The obvious meaning of that holding is that the Claims Program cannot issue awards while an appeal under the collateral-order doctrine is pending.  Otherwise, there would be no difference between collateral-order jurisdiction and ordinary final-judgment jurisdiction under 28 U.S.C. § 1291.  The Fifth Circuit's conclusion, moreover, flows naturally from the text, structure, and purpose of the Settlement; the parties did not recreate ordinary litigation procedures but instead, properly, created a more streamlined and cost-effective process to account for the particular challenges of an MDL of this magnitude.  Thus, the Fifth Circuit recognized that, to provide a realistic avenue to appeal, the Settlement is designed so that the Settlement Program will not pay awards while the appellate process remains ongoing.  Because the Settlement Program does not pay awards until the appellate process is over, once more there is nothing yet to stay.  Tautologically, a stay is only necessary if the status quo will change absent a stay.  Here, the Claims Administrator will not cut Movants a check until the Fifth Circuit has had its say.  Hence, BP does not need interim relief while that appellate process unfolds and a supersedeas bond therefore is both unnecessary and inappropriate.

This conclusion flows naturally from the payment structure created by the Settlement. Movants, acting as if there was no Settlement, assume that absent a stay, payment will automatically come from BP, as it would in ordinary litigation.  But that is not so.  Under the Settlement, BP makes block money transfers to the Settlement Trust, and the Claims Administrator, on behalf of the Settlement Program, then makes the individual payments.  In other words, there is an extra step that is wholly unlike what occurs outside of the realm of this

unique Settlement.   This extra step—managed by the Claims Administrator, not BP—fatally undermines the motions.   It is Movants, therefore, not BP, who need a change in the status quo; if they want payment, they need the Claims Administrator to act.   This is precisely why seven of the eight motions ask for a new order directing immediate payment on their underlying claims. BP, by contrast, is not obligated to do anything while claims are still being judicially reviewed. Once the process has concluded, if the Fifth Circuit sides with Movants, the Settlement Program will pay on the claims.   But not before.   *See Deepwater Horizon*, 732 F.3d at 332 n.3.

## II.   THE SETTLEMENT CONTAINS A SPECIFIC SET OF GUARANTEE PROVISIONS MAKING BONDS UNNECESSARY AND INAPPROPRIATE.

In any event, the motions fail because the Settlement does not require BP to post a bond to appeal.   Instead, the settling parties created a system that is different from ordinary litigation. The Court should respect the streamlined process created by the Settlement.

As this Court has consistently recognized, once a class settlement has been signed and approved, the rules of ordinary litigation change.   As explained above, here, the Settlement, a voluntary agreement, creates its own procedures—procedures that this Court and the Fifth Circuit have explicitly blessed as fair.   These procedures also have been implicitly blessed in the scores of cases in which this Court has applied them and the Fifth Circuit has affirmed.   The principle is simple: Settlements are contracts, and contracts allow the parties to design the system that best meets the needs of all involved.   Here, in order to streamline resolution of claims, BP and Class Counsel, after spirited negotiations, designed a system tailored to addressing the complexities inherent in MDL 2179 in the wake of the *Deepwater Horizon* accident.

***Nothing in the Settlement requires BP to post a bond to appeal***.   In fact, although the Settlement creates specific procedures for virtually all aspects of the Settlement's appellate process, it says not a word about bonds.   Rather, the parties created three levels of protection to

ensure that all claimants with lawful claims will be compensated in full.  Like all of the other provisions in the Settlement, those relating to financial security are designed to be exclusive.

Under the Settlement, when someone is unhappy with one of the CSSP's claimant-specific decisions, relief must be sought through this Court's discretionary review process.  A party cannot file a complaint under Rule 8 of the Federal Rules of Civil Procedure, nor can it demand a trial pursuant to Rule 38 if the party disagrees with the Claims Administrator's factual conclusions and would prefer a different fact-finding process.  Otherwise, one of the benefits of the Settlement—prompt resolution of claims—would be lost.  The same principle applies to Rule 62 and bonds.  Class Counsel did not negotiate for a *seriatim* bond requirement; instead, they negotiated for two levels of blanket guarantees layered on top of the baseline obligations of the BP parties that signed the Settlement.  This was for a reason.  Requiring bonds introduces needless complexity and costs with no offsetting benefits to anyone.  Because BP is not a small-scale litigant for whom financial solvency is a pressing concern, and because this is not a typical litigation where the default rules of civil procedure make sense, the parties agreed upon a different form of protection that provides financial security that is greater than—or at least equal to—that provided by a bond.  Indeed, the Settlement's financial protections are the equivalent of securing ***two blanket bonds***, one by BPCNA and a fallback one by BP p.l.c.

Movants' argument—tellingly, not joined by Class Counsel—would ***destroy*** this important benefit of the Settlement.  BP did not agree to an appellate process in which claim-by-claim bonds are required.  Should such a requirement be imposed retroactively, it would unfairly raise BP's costs, contrary to what was agreed upon.  It also would strike a blow against the principle that settlements are voluntary agreements that can be used for carefully calibrated justice.  *See, e.g.*, *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986) ("Federal

courts have the inherent power to enforce settlement agreements entered into by the parties litigant in a pending case [and] to determine compliance with procedural prerequisites ….").   It makes no sense to think that the parties agreed upon a specific appellate process, complete with detailed provisions ensuring financial security, but yet also, without saying so, intended for individual appellate bonds to also be required.  That is no way to read an agreement.[3]

Finally, were Mr. Foret correct (and he is not) that if discretionary review denials equate to monetary judgments, then 28 U.S.C. § 1961 would require BP to pay post-judgment interest and also bond an extra 20% markup of any such judgment to cover interest and the like under Local Rule 62.2.  But BP never agreed to pay post-CSSP decision or post-discretionary-review-denial decision interest; nothing in the Settlement even suggests such a thing.  Quite the contrary, CSSP claimants released any claims they might have had to interest.  *See* Settlement, § 15.1.9 (releasing "claims for *interest*, penalties, costs and attorneys' fees") (emphasis added); Order and Judgment Granting Final Approval of Economic and Property Damages Settl[e]ment and Confirming Certification of the Economic and Property Damages Settlement Class, Rec. Doc. 8139, at ¶ 11 (Dec. 21, 2012) ("interest" claims dismissed with prejudice).[4]  By these motions, Movants thus also seek to backdoor their way into illegitimate extra benefits.

Here, the process set out in the Settlement cannot be brushed aside.  Where parties agree upfront that no bond will be required, courts do not treat such agreements lightly.  For instance, in *Bennigan's Franchising Company, L.P. v. Sweet Onion, Inc.*, No. 08-CV-2132-F, 2009 WL 10678344 (N.D. Tex. Apr. 1, 2009), the Court explained that because the parties "agreed in their

---

[3] *See, e.g., Westchester Fire Ins. Co. v. Wallerich*, 563 F.3d 707, 712-13 (8th Cir. 2009) (courts should "apply[] a commonsense construction"); *Strouse v. J. Kinson Cook, Inc.*, 634 F.2d 883, 885 (5th Cir. Unit B 1981) ("Any command alleged to exist therein must be found 'within its four corners.'"); *cf. Claimant ID 100218776 v. BP Ex. & Prod., Inc.*, --- Fed. App'x ---, 2017 WL 4708256 (5th Cir. 2017).

[4] *See also id.* §§ 10.2, 15.1.8, 15.1.10, 15.1.11, and Exhibit 26, Section 1(oo) (similar)

franchise agreements that Bennigan's would be entitled to receive injunctive relief without posting a bond or other security," that agreement would be respected. *Id.* at \*3 (citing *Amerispec, Inc. v. Metro Inspection Servs., Inc.*, No. 3:01-CV-0946-DCIV.A. 3:01-CV-0946-D, at \*7 (N.D. Tex. July 3, 2001)). The same principle should apply here with even greater force because the Settlement was negotiated by sophisticated parties and, importantly, was approved by this Court and the Fifth Circuit. Movants here hardly even discuss the Settlement, much less do they explain how their novel position comports with the text, structure, and purpose of the Settlement. The Court therefore should deny their motions on this ground as well.

## III.    BONDS ARE NOT NEEDED WHERE THERE IS NO RISK OF NONPAYMENT.

Finally, even if there was a money judgment here, and even if the Settlement did not create its own exclusive financial protections, these motions should also be denied because this Court has ***discretion*** whether to order bonds. Here, using that discretion, this Court has ample cause to forego bonds. Simply put, the Settlement includes its own guarantees of payment, and requiring bonds in addition to those guarantees would impose costs on BP with no benefit to anyone. And even beyond the guarantees set out in the Settlement, the Robertson declaration attached to this Opposition as Exhibit A confirms that the Settlement Trust has been properly funded by BP and that BP has good financial standing to continue doing so.

Under Federal Rule of Civil Procedure 62(d), a party seeking a stay of judgment pending appeal may be required to post a bond. Yet "district courts ha[ve] some discretion to allow a stay without posting a bond." *Dominick v. Barrere*, Civ. Action No. 12-497-JJB-RLB, 2015 WL 7756140, at \*2 (M.D. La. Dec. 1, 2015)[5]; *see also, e.g.*, *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d

---

[5] *Dominick* cites and relies on *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979); *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 797 (7th Cir. 1986); and *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 757–58 (D.C. Cir. 1980).

624, 628 (5th Cir. 1996). In fact, one of the Movants cites *Enserch Corp. v. Shand Morahan & Co., Inc.*, 918 F.2d 462 (5th Cir. 1990), as its main authority but ignores the rest of what the court had to say.  In particular, the Fifth Circuit has "recognized an exception to this general rule for situations in which the losing party '[1] objectively demonstrates a present financial ability to facilely respond to a money judgment and [2] presents to the court a financially secure plan for maintaining the same degree of solvency during the period of the appeal.'"  *Id.* at 463-64 (quoting *Poplar Grove Planting.*, 600 F.2d at 1191).  Here, both conditions are satisfied.

   ***First***, there is no question that BP has "objectively demonstrate[d] a present financial ability to facilely respond to a money judgment."  This issue was a focus of intense negotiations, resulting in the multi-layered protections set out in Section 37 and Exhibits 24A and 24B.  BPXP and BPAPC pledge to fund the Settlement Trust—the first level of negotiated financial protection for claimants. Should the "Primary Obligors" prove unable to do so (which has not happened to date, and which there is little reason to fear will happen), the Settlement offers another guarantor: BPCNA.  This is the second level of protection.  BPCNA has its own resources.  And Class Counsel, following investigation of BPCNA's suitability and sophisticated negotiations about what the guarantee should say, agreed that this entity would be a suitable guarantor.  And if, for some reason, BPCNA also cannot meet its financial obligations, which there is also little reason to fear will happen, BP p.l.c. is the third level of protection.

   These layers of protection were designed to guarantee claimants that all valid claims will be paid.  Needless to say, most appeal situations do not arise in contexts for which two independent, non-parties have explicitly agreed by contract to guarantee that the appellee will be paid, should the appellant's appeal prove unsuccessful.  And thus far, these layers of protection have more than done the job.  To date, the "Primary Obligors" have provided the funds necessary

to keep the Settlement Trust in operation; there has been no need to resort to either the "Guarantor" or the "Back-Up" Guarantor.   By any measure then, BP has "objectively demonstrate[d] a present financial ability to facilely respond to a money judgment."  Indeed, BP has paid more than ***$11 billion*** through the CSSP.  *See* Robertson Decl. at ¶ 5.

BP has also easily satisfied the second part of the Fifth Circuit's test: BP has "present[ed] to the court a financially secure plan for maintaining the same degree of solvency during the period of the appeal."  As noted, the "Primary Obligors" have provided all the necessary funds without incident.  And should that change (and there is no reason to think it will), there are two additional, stopgap layers of protection.  That surely constitutes "a financially secure plan" for ensuring that money will still be available to pay Movants' awards should the Fifth Circuit reject BP's arguments in these eight appeals.  The Robertson declaration confirms that there is no realistic fear that Movants will not be paid should they prevail on appeal.  *Id.* ¶ 6.  Thus, under the law of the Fifth Circuit, this Court need not require a bond here.

## CONCLUSION

For the foregoing reasons, the motions should be denied.

Dated:  March 9, 2018

Respectfully submitted,

/s/  Don K. Haycraft

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Kristopher S. Ritter
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654

Jeffrey Bossert Clark
Aaron L. Nielson
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

Don K. Haycraft (Bar #14361)
Devin Reid (Bar #32645)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139

***Attorneys for BP Defendants***

15

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 9th day of March, 2018.

/s/ Don K. Haycraft