UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | |
| Applies to: | * | JUDGE BARBIER |
| 12-968, 12-970 | * | |
| | * | MAGISTRATE SHUSHAN |

## ORDER
[Setting caps on individual attorneys' fees]

On May 2, 2012, the Court granted preliminary approval to the Economic and Property Damages Settlement and the Medical Benefits Settlement (collectively, "the Settlements"). (Preliminary Approval Orders, Rec. Docs. 6418 & 6419). On June 4, 2012, the Court Supervised Settlement Program, the facility implementing the Settlements, commenced operation. (Claims Administrator's Status Report p.2, Rec. Doc. 6619). In light of these events, it is an appropriate time to address the issue of individual attorneys' fees.[1] For reasons expressed below, the Court orders that contingent fee arrangements for all attorneys representing claimants/plaintiffs that settle claims through either or both of the Settlements will be capped at 25% plus reasonable costs. The Court also orders that an individual attorney who believes a departure from this cap is warranted will be permitted to submit evidence to the Court for consideration.

In reaching these conclusions, the Court agrees with, relies upon, and incorporates by reference the reasons set forth by Judge Fallon in *In re Vioxx Products Liability Litigation*, 650 F. Supp. 2d 549

---

[1] The Settlements are somewhat unique from typical class action settlements in that claims will be paid pursuant to terms of the proposed settlement before the Court grants final approval, provided the claimant executes a release. Thus, it is appropriate to consider the issue of individual attorneys' fees now, rather than waiting until the final fairness hearing.

(E.D. La. 2009). The Court will not repeat all of the points made by Judge Fallon, which built upon an earlier order,[2] but it will mention some that are of particular relevance.

*In re Vioxx* is a multidistrict litigation ("MDL"); the settlement before Judge Fallon was not a class action settlement. However, Judge Fallon found—as had other courts—that MDLs are analogous to class actions, referring to them as "quasi-class actions." *In re Vioxx*, 650 F. Supp. 2d at 553-54, 558-59 (citing *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, 2008 WL 682174, at *18 (D. Minn. Mar. 7, 2008); *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 491 (E.D.N.Y. 2006)). Thus, in concluding that he had authority to regulate individual attorneys' fees, Judge Fallon relied in part on the fact that Rule 23 expressly authorizes courts overseeing class actions to examine fee arrangements. Like *In re Vioxx*, this Court is also overseeing an MDL. However, unlike *In re Vioxx*, the instant Settlements are structured and preliminarily certified as class action settlements. (*See* Preliminary Approval Orders, Rec. Docs. 6418 & 6419). Thus, because Rule 23 directly applies to the Settlements, there is no need to analogize MDLs to class actions. In this respect, there is an even stronger argument for the Court's authority to cap attorneys' fees than existed in *In re Vioxx*.

Judge Fallon also noted that "a conflict of interest necessarily exists between the claimants and their attorneys who both seek to maximize their own percentage of an award," which made court supervision necessary. *Id.* at 560. Furthermore, the consolidation of pretrial and discovery proceedings create "tremendous economies of scale for the lawyers who would otherwise be responsible for preparing thousands of individual cases for trial." *Id.* at 562. Thus, because the attorneys reaped a great benefit from the MDL structure, Judge Fallon concluded that "the justice

---

[2] *See In re Vioxx*, 574 F. Supp. 2d 606 (E.D. La. 2008).

mandate of the MDL statute [28 U.S.C. § 1407] requires that the claimants receive a similar benefit, in the form of reasonable attorneys' fees." *Id.* at 563. It was also noted that "the magnitude of these MDL proceedings and the resulting publicity creates a concern that disproportionate results and inconsistent standards would damage the public's faith in the judicial process." *Id.* at 560. The Court emphatically agrees with these statements and finds them particularly relevant here.

Judge Fallon also relied on the fact that the Vioxx settlement agreement implicitly authorized the court to review fee arrangements for reasonableness. *Id.* at 561-62. Similarly, here the Settlements give the Court "continuing and exclusive jurisdiction over the Parties and their Counsel for the purpose of enforcing, implementing and interpreting this Agreement, including . . . jurisdiction over all Economic Class Members, and over the administration and enforcement of the Agreement and the distribution of its benefits to Economic Class Members . . . ." (Economic and Property Damages Settlement (as amended) ¶ 18.1, Rec. Doc. 6430-1; *see also* Medical Benefits Settlement (as amended) ¶ XXVII, Rec. Doc. 6427-1).

Judge Fallon concluded that 32% was a reasonable contingent fee. The Court agrees with the reasons expressed by Judge Fallon for reaching this number. *See id.* at 562-64. Nevertheless, the Court deviates from 32% because, unlike the circumstances in *In re Vioxx*, no portion of the individual attorneys' contingent fee will be "held back" to create a common benefit fund. (*See* Order of May 3, 2012, Rec. Doc. 6428.). Instead, all common benefit fees and costs will be paid by the BP Defendants. Thus, the 25% cap imposed here is nearly equivalent to the cap in *In re Vioxx* after the deduction for common benefit work. *See In re Vioxx*, 760 F. Supp. 2d 640, 658 (E.D. La. 2010).

Obviously, 25% is only a <u>ceiling</u> for contingent fees. Attorneys and their clients are free to agree to amounts lower than 25%. Attorneys have an ethical responsibility to charge only reasonable

fees. *See* Model Rules of Prof'l Conduct R. 1.5(a). In many cases, a reasonable fee may be less than 25%, particularly for a relatively simple claim by an individual. This Order is not intended to allow or encourage attorneys to charge more than a reasonable fee under any circumstance.

Finally, because "it is not unreasonable to conclude that certain rare circumstances might exist which would warrant a departure, in either direction, upwards or downwards, from the universal fee cap," attorneys are permitted to file an objection with the Court. *In re Vioxx*, 650 F. Supp. 2d at 564. Attorneys must serve the objection on the involved client, who will be permitted to submit contrary evidence. The Court may choose to appoint a special master to take evidence and make a recommendation to the Court. If the Court determines that a departure is warranted in a particular case, either upward or downward, the Court will determine a reasonable fee based on the unique circumstances presented after deducting the cost associated with this process. *See id.* at 564-65.

Accordingly,

IT IS ORDERED that contingent fee arrangements for all attorneys representing claimants/plaintiffs that settle claims through either or both of the Settlements will be capped at 25% plus reasonable costs. The Claims Administrator is directed to require a certification by the attorney that his or her fees comply with this Order. The Claims Administrator shall not make any disbursements until the attorney provides this certification.

IT IS FURTHER ORDERED that an individual attorney who believes a departure from the 25% cap is warranted will be permitted to object and submit evidence to the Court for consideration.

New Orleans, Louisiana, this 15th day of June, 2012.

_____
United States District Judge

4