CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 17-11080                                                        "E-16"

THE FINISH LINE

vs.

JAYESH PATEL, ET AL

FILED_____          _____

                                                  DEPUTY CLERK

### AMENDED MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND ENFORCE SUBPOENAS

Intervening parties of interest Ryan LLC, Kevin Prins and Jon Sweet, (collectively "intervening parties" or "intervenors"), move pursuant to LSA-C.C.P. Art. 1091, by and through counsel, Koeppel Clark Turner, and respectfully request that this Court permit intervention, allow intervenors to unite with defendants, and grant Pumilia & Adamee, LLP's ("Pumilia") and Jayesh Patel's ("Patel") Motion to Compel Jessica Ibert ("Ibert") and Lewis, Kullman, Sterbcow & Abramson, LLC ("Lewis Kullman") to fully comply with two subpoenas served upon them by requiring Lewis Kullman to produce responsive documents and for Ibert to appear for a deposition. Pumilia and Patel do not seek privileged information. Also of import, Finish Line has no objection to Ibert's deposition, the entity that holds the confidentiality privilege thereby mooting any concerns regarding same.

I.     FACTUAL BACKGROUND

This litigation relates to an Indiana proceeding Finish Line, Inc. ("Finish Line") is also prosecuting, which involves related parties and the same underlying nexus of facts. The instant legal malpractice claim is pending in the Superior Court of State of California, County of Los Angeles, captioned *The Finish Line, Inc. v. Jayesh Patel et al*, Case No. BC633988, against Pumilia and Patela arising out of the processing of Finish Line's, "Economic and Property Damage Claims" sustained from the Deepwater Horizon oil rig explosion ("Deepwater Horizon Incident"). Finish Line sued Pumilia and Patel, for purported failure to file the proper claim


EXHIBIT
16

forms during the Deepwater Horizon claims process.   Lewis and Kullman were successor counsel to Pumilia and Patel, during which they took over the handling of Finish Line's Deepwater Horizon Incident claims that is at the heart of this malpractice action.  Pumilia and Patel assert that Lewis and Kullman had multiple opportunities to refile or reinstate Finish Line's claims for consideration but failed to do so, an issue having significant implications as to liability.  Given the pertinent firsthand knowledge of Lewis and Kullman as to these issues, Ibert has relevant, non-privileged personal knowledge regarding the time frames, deadline, claims at issue, and requisite public filings involved, which are needed to fully develop the claims and defenses in the case at bar.

In addition to the California proceeding, Finish Line also filed a Complaint in the State of Indiana, County of Marion, captioned Case No. 49D01-1606-PL-21894 against Ryan Law LLP, and the intervening parties.  This case centers around Ryan LLC and Ryan Law's actions in pursuing opportunities in recovering claims for clients who had suffered business economic loss resulting from the Deepwater Horizon Incident.   See Mot. To Amend Third Compl. attached hereto as Exhibit A). The pursuit of these opportunities (and the division of labor once a client was secured) was governed by an Engagement Letter dated September 14, 2014 between Ryan LLC and Ryan Law.  In order to facilitate the process, Ryan Law entered into an agreement with Patel (Subcontractor Agreement), upon being recommended by Prins, a Ryan, LLC employee.[1] Pursuant to that business arrangement, Patel would perform certain services in return for a standard hourly rate.  In August 2014, Finish Line entered into a formal retainer contract with Ryan Law.  In late 2014, pursuant to the Engagement Letter, and Ryan LLC's corresponding duties thereunder, Prins did an independent analysis determining that approximately 11-13 Finish Line stores met the financial criteria and were eligible to participate in the Deepwater Horizon claims process.  Following his analysis, Prins provided the financial information to Patel at an in person meeting.   In both the California and Indiana proceedings, Finish Line's essential argument is that the deadline to file new claims with Deepwater Horizon Claims Center expired

---

[1] Intervenors reiterate that only Ryan Law and Patel were parties to the Subcontractor Agreement.  Ryan, LLC was not a party to this agreement as was inadvertently stated in the originally filed Memorandum in Support of Motion to Intervene and Enforce Subpoenas.

on June 8, 2015 and that the Defendants "failed to timely file claim forms prior to the June 8, 2015 deadline."

The intervening parties have been involved in extensive discovery with Finish Line in the Indiana case, including interrogatories, document production, and depositions.  On October 24, 2017, Finish Line moved to amend their Complaint to include additional counts relating to fraud, negligence, conspiracy and other malfeasance.  *See Exhibit A.*  To date, discovery is not complete as the Judge has ordered discovery reopened to allow the deposition of Ibert.  The information the intervening parties are seeking from Ibert is very likely the same for the California and Indiana proceedings and, as such, the intervening parties propose they be allowed to intervene and join Defendants Pumilia's and Patel's motion to compel the deposition of Jessica Ibert given the shared interest in her personal knowledge and the most expeditious manner.

## II.   LAW AND ARGUMENT

### A. Intervention is Proper

In Louisiana, intervention is allowed pursuant to LSA-C.C.P. Art. 1091, which states in pertinent part "A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more parties thereto by: (1) joining with plaintiff in demanding the same or similar relief against defendant; (2) uniting with defendant in resisting plaintiff's demand; or (3) opposing both plaintiff and defendant.   A two-fold requirement exists for a third person to intervene. "The intervenor must have a *justiciable interest* in, and a *connexity* to, the principal action." *Leger v. Kent,* 2001-2241, 2001-2380, p. 3 (La.App. 4 Cir. 4/24/02), 817 So. 2d 305, 307-08.

A "justiciable right" as used in interpreting Article 1091, means the right of a party to seek redress or a remedy against either plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it.  If that right does exist, then, in order to intervene it must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights. This connexity requirement is essential. *Amoco Production Co. v. Columbia Gas Transmission Corp.,* 455 So.2d 1260, 1264 (La.App. 4th Cir. 1984). Connexity requires the intervenor show that the

3

outcome of the suit in which he or she seeks to intervene will have a *direct impact* on the intervenor's rights. *Leger*, 817 So.2d at 308. "A court has broad discretion in deciding whether to allow an intervention after the answer to the principal demand has been filed." *Charia v. Allstate Ins. Co.*, 635 So.2d 370, 372 (La.App. 4th Cir.1994),

Here, all the requirements for intervention pursuant to LSA-C.C.P. Art. 1091 are met. The intervening parties wish to unite with the defendants, enforce the motion to compel, and secure the deposition of Ibert. Further, the intervening parties have a justiciable right in the outcome of Pumilia and Patela's motion to compel, because the exact same relief is being sought in the concurrent Indiana litigation. Both the intervening parties and the Defendants in the instant case need the deposition of Ibert to defend and develop the claims and defenses being leveraged against them by First Line, respectively. By also suing the intervening parties in Indiana, Finish Line has put the very same parties, contracts, Deepwater Horizon Incident claims process, underlying facts and governing deadlines at issue.

Furthermore, any deposition ordered here may have a direct impact on the Indiana case due to any testimony made in reference to the intervening parties and highly relevant evidence that may come to light involving the same facts and disputes in Indiana, thereby satisfying the connexity requirement that a direct impact on the intervenors' rights be at stake in the case at bar.

Indeed, given that Finish Line was recently allowed to amend their complaint for a fourth time in the Indiana case to include new counts of fraud, conspiracy, aiding and abetting, etc., the personal knowledge of Jessica Ibert has become even more relevant because more is at stake increasing the need to fully develop the claims and defenses of the intervening parties as defendants in that action.

**B.   The Subpoenas Should be Enforced**

The intervening parties need the deposition of Ibert to complete discovery and fully prepare in anticipation of trial. In the interest of all parties involved, submitting Ibert to one deposition, in which all interested parties are present to develop testimony and cross-examine, seems the most efficient, judicious, and amicable way to resolve the same concurrent discovery disputes. As a result, the intervenors adopt the arguments set forth in Defendants' pending Motion and Memorandum in Support of Motion to Compel for why the deposition of Ibert is necessary to

4

fully investigate and resolve the California and Indiana proceedings being prosecuted by First Line against Defendants and the intervening parties. The intervenors seek the same relief as Defendants, and as such, move to unite with Defendants pursuant to LSA-C.C.P. Art. 1091(2).

## III.   CONCLUSION

The intervening parties have a justiciable right affected by Pumilia and Patel's motion to compel, which directly impacts their rights and affects the discovery in the Indiana proceeding satisfying the requirements set forth in LSA-C.C.P. Art. 1091.  As a result, the intervening parties should be allowed to intervene and Defendants' motion to compel should be granted requiring Ibert to submit to a deposition, which intervenors shall participate in.

Respectfully Submitted:

**KOEPPEL CLARK TURNER**

*Rebecca E Duggan*

**PETER S. KOEPPEL (#14865)**
psk@koeppelllc.com
**W. SCARTH CLARK (#22993)**
sclark@koeppelllc.com
**DONESIA D. TURNER (#23338)**
dturner@koeppelllc.com
**REBECCA E. DUGGAN (#33106)**
rduggan@koeppelllc.com
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone:  (504) 598-1000
Facsimile:  (504) 524-1024

*Counsel for Intervenors*
*Ryan LLC, Kevin Prins and Jon Sweet*

## CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that I have on the _____10th_____ day of April, 2018, served the

foregoing pleading on all counsel of record herein, by placing a copy of same in the United

States Mail, properly addressed and first class postage prepaid and/or via hand delivery and/or

via facsimile transmission and/or via electronic transmission.


Steven C. Glickman, Esq.
scg@glickmanlaw.com
GLICKMAN & GLICKMAN
9460 Wilshire Blvd., Ste 330
Beverly Hills, CA  90212-2732

Andrew W. Hull, Esq.
awhull@hooverhullturner.com
Susanne Johnson, Esq.
sjohnson@hooverhullturner.com
Hoover Hull Turner, LLP
111 Monument Circle, Ste. 4400
P.O. Box 44989
Indianapolis, IN 46244-0989
Counsel for Plaintiffs

Andrew J. Baer
abaer@deutschkerrigan.com
Nancy G. Marshall
nmarshall@deutschkerrigan.com
DEUTSCH KERRIGAN, LLP
755 Magazine Street
New Orleans, Louisiana 70130
Counsel for defendants, Jayesh Patel and
Pumilia & Adamee, LLP

Jessica Ibert, Esq.
jibert@lksalaw.com
Lewis, Kullman, Sterbcow & Abramson, LLC
601 Poydras Street, Ste. 2615
New Orleans, Louisiana  70130

Paul Sterbcow, Esq.
psterbcow@lksalaw.com
Lewis, Kullman, Sterbcow & Abramson, LLC
601 Poydras Street, Ste. 2615
New Orleans, Louisiana  70130


_____
REBECCA E. DUGGAN

Filed: 10/24/2017 5:30 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

## INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION COUNTY SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-1606-PL-21894 |

| | |
|---|---|
| THE FINISH LINE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| RYAN LAW LLP; RYAN LLC, | ) |
| KEVIN PRINS, and JON SWEET | ) |
| | ) |
| Defendants. | ) |

### RYAN LLC'S OPPOSITION TO MOTION
### FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Defendants Ryan LLC, Jon Sweet, and Kevin Prins (collectively "Ryan LLC"), by counsel, respectfully submit that this Court should deny Plaintiff Finish Line, Inc.'s recently filed Motion For Leave to File Third Amended Complaint ("Motion to Amend"). Permitting Finish Line to amend its Complaint yet again would be futile because the evidence adduced to this point in discovery establishes that this dispute is not ripe. Without a ripe case or controversy for this Court to adjudicate, this Court lacks subject matter jurisdiction, and the Motion to Amend should be denied.

### I.   INTRODUCTION

Finish Line has amended its initial Complaint twice, and now is seeking leave to amend it yet again. This time around, Finish Line seeks to add at least five additional causes of action, a prayer for treble damages and attorneys' fees, and even punitive damages. Finish Line claims these new causes of action are necessitated by information it has learned in recent discovery, including extensive document production and 30(b)(6) depositions of Ryan Law and Ryan LLC.



EXHIBIT

A

The problem for Finish Line is that the extensive discovery the parties have engaged in to date has failed to establish a critical jurisdictional fact – namely, that Finish Line has an actual ripe case or controversy that this Court can adjudicate.  Boiled down to its essence, this case involves whether Finish Line has lost the right recover business economic loss claims from the BP Deepwater Horizon Oil Spill Settlement Program as a result of alleged professional malpractice, negligence and breaches of duty by Defendants.  Yet Finish Line has neither produced in discovery, specifically alleged, nor attached to any of its (now) four complaints, a single piece of evidence showing that the Deepwater Horizon claims at issue have actually been *barred* by the Claims Administrator.  In fact, the evidence indicates the exact opposite, that Finish Line could have resubmitted these claims but simply chose not to do so.

Given the complete lack of an ascertainable injury resulting from Defendants' conduct vis-à-vis the underlying Deepwater proceeding, *this* lawsuit is premature.  Indeed, regardless of which set of claims is before this Court – those alleged in Finish Line's existing Complaint[1] or proposed in Finish Line's much-expanded Third Amended Complaint – Finish Line's claim are not ripe and this Court lacks subject matter jurisdiction.[2]  For this reason, Finish Line's proposed amendments to its current Complaint would be entirely futile, warranting denial of its Motion to Amend.

---

[1] Finish Line's existing Complaint is the Second Amended Complaint for Damages filed effective September 19, 2016 (hereinafter, "Complaint").

[2] Given that litigants have the continuing duty to evaluate subject matter jurisdiction, and courts must raise the issue *sua sponte* if the litigants do not (*see Albright v. Pyle*, 637 N.E.2d 1360, 1363 (Ind. Ct. App. 1994)), Ryan LLC may need to further file a motion to dismiss the existing Complaint for lack of subject matter jurisdiction if Finish Line cannot demonstrate that its claims are ripe.  To date, Finish Line has not been able to do so.

2

## II.   STATEMENT OF FACTS

<u>Background Facts</u>

This lawsuit centers around the April 20, 2010 explosion that occurred on British Petroleum's ("BP") Deepwater Horizon oil rig in the Gulf of Mexico.  (Complaint, ¶6) (the "Deepwater Spill").  The resulting oil spill  caused "catastrophic economic harm to businesses and individuals throughout the region."  (Complaint, ¶6).  In August 2010, the United States Panel on Multidistrict Litigation consolidated those cases relating to the Deepwater Spill, assigning them to the Eastern District of Louisiana.  Ultimately, on or about April 18, 2012, the "Deepwater Horizon Economic and Property Damages Settlement Agreement" was executed, and the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program") was implemented to process claims arising under the Settlement Agreement.

In late 2013, Ryan LLC and Ryan Law began to pursue opportunities to seek to recover claims for clients who had suffered business economic losses resulting from the Deepwater Spill. (Deposition of Kevin Prins,[3] p. 35, ll. 14 – 18).  The pursuit of these opportunities (and the division of labor once a client was secured) was governed by an Engagement Letter dated September 14, 2014 between Ryan LLC and Ryan Law.[4]  (Prins. Dep., p. 35, l. 19 – p. 37, l. 2; Exhibit B).  In general terms, Ryan LLC's obligations under the Engagement Letter included identification of potential claimants, retrieval of supporting documents from them, review of financial statements, calculation of their business losses as a result of the Deepwater Spill, preparation of financial analyses, and preparation of claims.  (Exhibit B, p. 2).  For its part, Ryan Law's duties were to determine that potential claimants met the liability requirements to file Deepwater claims, present claims to the Claims Administrator of the Settlement Program, and to

---

[3] Portions of the Deposition of Kevin Prins, hereinafter "Prins Dep.", are attached hereto as <u>Exhibit A</u>.

[4] A true, accurate and complete copy of the Engagement Letter is attached hereto as <u>Exhibit B</u>.

monitor those pending claims.  (Exhibit B, p. 1).  For all of these opportunities, a contract would be entered into between Ryan Law and the client in question. (Prins Dep., p. 36, ll. 8 – 12).

When Ryan Law and Ryan LLC first considered their business arrangement, Ryan Law "was going to team up with another law firm" that would act as a "filing attorney" with regard to the Deepwater claims. (Prins Dep., p. 39, l. 10 – p. 40, l. 6).  The first law firm Ryan Law had in mind "had significant conflicts of interest with Ryan Law [and] Ryan LLC clients" and thus it was "not going to be a viable solution[.]"  (Prins Dep., p. 39, ll. 16 – 25).  Prins, a Ryan LLC employee, referred a California attorney, Jayesh Patel ("Patel"), whom he had known for many years and with whom he had a previous and good working relationship. (Prins Dep., p. 41, l. 7 – p. 42, l. 9).  Ryan Law and Patel then separately came to an agreement ("Subcontractor Agreement")[5] pursuant to which Patel would "perform certain services as prescribed by [Ryan Law] and agreed to by [Patel] from time to time" in return for a fee at Patel's "standard hourly rates[.]"  (Exhibit C, p. 1; Ex. F to Third Amended Complaint).

### Defendants' Work On Behalf of Finish Line

Finish Line, like thousands of other businesses in the Gulf region, asserts that some of its stores have suffered economic harm as a result of the Deepwater Spill.  (Complaint, ¶6).  In 2012, Finish Line identified thirteen of its retail stores as having payable claims under the Settlement Program.  (Finish Line's Answers to First Set of Interrogatories, attached hereto as Exhibit D, Ans. No. 5).  Accordingly, in July 2012, Finish Line itself prepared and filed thirteen Business Economic Loss claim forms (often known as "purple forms") with the Deepwater

---

[5] A true, accurate and complete copy of the Subcontractor Agreement is attached hereto as Exhibit C.

Horizon Claims Administrator, each seeking recovery for one of the thirteen stores.[6] (Exhibit D, Ans. No. 5). On April 9, 2013, the thirteen initial claims were each issued Incompleteness Denial Notices,[7] and were eventually "closed" or "denied" when the May 9, 2013 deadline for reconsideration lapsed. (Exhibit F; Prins Dep., p. 90, l. 20 – p. 92, l. 2; p. 96, ll. 4 – 12).

In early 2014, certain representatives of Ryan LLC (specifically Sweet and Walt Sigerich), informed Prins that one of their clients, Finish Line, might be a potential candidate for Deepwater claims services. (Prins Dep., p. 53, ll. 16 – 20; Complaint, ¶7). Prins was told that Finish Line had already filed its own claims and that those claims were "stuck." Finish Line did not disclose that those claims had already been closed. (Prins Dep., p. 53, l. 24 – p. 54, l. 13). Finish Line's in-house attorney, Andy Rankin, held an initial call with Prins, Sweet and Sigerich. (Prins. Dep., p. 55, l. 25 – p. 56, l. 11). According to Finish Line, the Ryan LLC representatives told them that "Ryan" had expertise in the Deepwater Spill claims process, and offered to investigate and pursue possible viable claims on Finish Line's behalf. (Complaint, ¶7). The Ryan LLC representatives allegedly informed Finish Line it had viable claims for more stores than the thirteen Finish Line had previously identified and for which filed claims had already been filed. (Complaint, ¶8).

Shortly thereafter, Finish Line determined it did want to go forward. (Prins Dep., p. 55, ll. 14 – 19). Accordingly, on July 29, 2014, Finish Line was presented with a form contract for a contingency fee agreement with Ryan Law (the "Retainer Contract"[8]), pursuant to which Ryan Law was "to render legal services on behalf of [Finish Line] against any person, firm or

---

[6] Attached hereto as Exhibit E is one of the thirteen Business Economic Loss claim forms Finish Line filed with the Settlement Program in July 2012. The other twelve forms are substantially similar and, for brevity's sake, Ryan LLC does not attach them.

[7] A true, accurate and complete copy of an Incompleteness Denial Notices for one of Finish Line's claims is attached hereto as Exhibit F.

[8] A true, accurate and complete copy of the Retainer Contract is attached hereto as Exhibit G.

corporation liable in damages for property damages, loss of income, general economic damages, expense recovery and/or for any other claim(s) of any kind whatsoever sustained by [Finish Line] arising out of the BP/Deepwater Horizon Oil Spill[.]" (Exhibit G; Complaint, ¶9; Ex. A to Complaint; Prins. Dep., p. 56, ll. 16 – 24). Prins and Sweet acted as the conduit in this process, taking the contract directly to Ryan Law, and passing the Retainer Contract "back and forth" between Ryan Law and Finish Line as Finish Line proposed several edits. (Prins. Dep., p. 56, l. 16 – p. 57, l. 10). Ultimately, Finish Line and Ryan Law executed the Retainer Contract effective August 15, 2014. (Exhibit G, p. 2).

In late 2014, pursuant to Ryan LLC's duties under the Engagement Letter, Prins asked for financial data on all of Finish Line's stores located in the area covered by the Settlement Agreement. (Prins Dep., p. 115, l. 25 – p. 116, l. 3). Finish Line provided the requested information for 38 of its stores. (Prins Dep., p. 116, ll. 4 – 9). Prins then conducted an analysis and determined that, of the original thirteen stores for which Finish Line had submitted claims, only a few of them (perhaps 6 – 8) met the financial criteria required. (Prins Dep., p. 116, ll. 6 – 23). However, Prins did determine that five *additional* stores were eligible to participate. (Prins Dep., p. 116, l. 24 – p. 117, l. 8); Third Amended Complaint, ¶52). After reviewing Finish Line's tax returns, profit and loss statements and other pertinent financial information for all of the eligible stores, Prins presented his initial view of Finish Line's business losses pursuant to the Settlement Agreement, and prepared the necessary financial analysis. (Prins Dep., p. 74, l. 16 – p. 76, l. 17).

Prins then met with Patel in person and provided the financial information he had prepared. (Prins. Dep., p. 117, l. 9 – p. 118, l. 17). Prins informed Patel that "this was a case where Finish Line had, in fact, filed previous claims[.]" (Prins Dep., p. 117, ll. 9 – 18). Prins

6

instructed Patel "that if any additional forms needed to be filled out, [Patel should] let [Prins] know so that [Prins] could go back to Finish Line and get the required signatures." (Prins Dep., p. 117, ll. 18 – 21). Patel stated that he "understood and would get things on file and would proceed." (Prins Dep., p. 120, ll. 2 – 4).

Patel thereafter informed Ryan LLC that he had uploaded the financial documents and claim calculations Prins had prepared to the Settlement Program's web portal. (Prins Dep., p. 120, ll. 5 – 18). However, when making the filing, Patel apparently did not prepare or include Business Economic Loss claim forms for the five additional stores. (Exhibit D, Ans. No. 5). In or around May 2015, Finish Line asked Ryan LLC for a status report on its Deepwater claims. (Prins Dep., p. 81, l. 21 – p. 82, l. – 20). Prins had spoken to Patel in advance of this call, and Patel indicated that the claims had been submitted but had no additional updates. (Prins Dep., p. 81, l. 9 – p. 83, l. 3).

In July 2015, Patel circulated a memo[9] to Finish Line in which he communicated that, despite the fact that the Settlement Program's web portal had been showing Finish Line's claims as "submitted", the Settlement Program's Claims Liaison told him "for the first time about a week and-a-half ago, that [Finish Line's claims were] 'closed' and had been 'denied' on or about May 21, 2013. . . . before [Defendants'] involvement." [Exhibit H, p. 1; Prins. Dep., p. 96, ll. 9]. Patel further concluded in this memo that "the time to resubmit The Finish Line claims expired even before we were engaged." [Exhibit H, p. 2]. A few days after receiving Patel's memo, Finish Line without explanation issued a letter[10] terminating the Retainer Contract with Ryan Law and the engagement with Patel. (Exhibit I). Finish Line then hired new counsel.

---

[9] A true, accurate and complete copy of Patel's memo dated July 28, 2015 is attached hereto as Exhibit H.

[10] A true, accurate and complete copy of Finish Line's termination letter is attached hereto as Exhibit I.

7

<u>The Allegations of Finish Line's Current Complaint</u>

Finish Line filed its initial Complaint in this matter on June 17, 2016, then proceeded to amend that Complaint once as a matter of right and again after seeking this Court's leave. Despite Finish Line's frequent massaging of its causes of action, the crux of this case remains essentially the same. Simply put, Finish Line alleges the deadline to file new claims with the Deepwater Horizon Claims Center expired on June 8, 2015 and that the Defendants "failed to timely file claim forms prior to the June 8, 2015 deadline." (Complaint, ¶¶16 - 17). As a result, Finish Line claims it has been barred from submitting "claims . . . to recover economic loss" sustained due to the Deepwater Spill. (Complaint, ¶19). Each of Finish Line's substantive causes of action hinges on this allegation that Finish Line was "barred" from submitting its Deepwater claims.

Following Ryan LLC's partial motion to dismiss under Trial Rule 12(B)(6), the Court determined that certain of Finish Line's individual causes of action against Prins and Sweet failed to state a valid claim   At present, the causes of action that remain are: (1) professional malpractice against Ryan Law and Prins; (2) negligence against all defendants; (3) breach of the Retainer Contract against Ryan Law; and (4) breach of contract as a third party beneficiary against Ryan LLC.

<u>Finish Line's Third Amended Complaint</u>

Finish Line's Motion for Leave to Amend points generally to "[n]ew facts and circumstances that support additional legal claims and theories against Defendants" as the impetus for its Third Amended Complaint. (Motion to Amend, ¶9). Finish Line claims these "new facts" were discovered during the recent Trial Rule 30(B)(6) depositions of Ryan Law and Ryan LLC in August and September 2017. (Motion to Amend, ¶9). Specifically, Finish Line

8

alleges it has learned that Ryan Law was "(a) completely incompetent to provide any of the promised legal services; (b) never intended . . . to perform any of the legal services; and (c) ultimately performed literally no legal services at all on behalf of Finish Line." (Motion for Leave, ¶10). Finish Line further alleges that Ryan Law entered into undisclosed contractual arrangements with Ryan LLC (via the Engagement Letter) and Patel (via the Subcontractor Agreement), without Finish Line's permission, and that Ryan LLC failed to monitor, direct or supervise their work. (Motion to Amend, ¶12). Moreover, Finish Line claims these contractual arrangements violated certain rules of professional conduct, including attorney competence, diligence, client communication, conflicts of interest, and fee-splitting, and (according to Finish Line) "renders Ryan Law's engagement with Finish Line and the undisclosed tri-partite contractual relationship among Ryan Law, Ryan LLC and [Patel] fraudulent and deceitful." (Motion to Amend, ¶18).

Based on these purported "new facts," Finish Line's Third Amended Complaint adds several additional causes of action to those that are already in play:

- <u>Count IV</u> – Fraud/deceit and attorney deceit against all Defendants[11];

- <u>Count V</u> – Constructive fraud against all Defendants;

- <u>Count VI</u> – Breach of fiduciary duty against Ryan Law;

- <u>Count VII</u> – Aiding and abetting breach of fiduciary duty against Ryan LLC, Prins and Sweet;

- <u>Count VIII</u> – Civil conspiracy against all Defendants; and

- <u>Count IX</u> – Damages for criminal deception and fraud against all defendants;

---

[11] Oddly, Finish Line states that its attorney deceit claim "is asserted against only Ryan Law and Prins[,]" even though Prins is not an attorney. (Third Amended Complaint, ¶102).

9

(*See* Third Amended Complaint, pp. 13 – 27). In addition to the compensatory damages it had been seeking, Finish Line now seeks treble damages, punitive damages and attorneys' fees and costs pursuant to Indiana Code § 34-24-3-1. (Third Amended Complaint, p. 27). At least some of these claims are not recognized or supported by Indiana law, but those issues are saved for another day.

<u>Additional Pertinent Facts Adduced During Discovery</u>

For nearly a year now, the parties have engaged in extensive discovery in this matter, including interrogatories, document production and depositions. Given that each of Finish Line's causes of action turns on its claim that it has been injured by virtue of its Deepwater claims being lost, of particular interest to Ryan LLC are any documents, notices, rulings or communications in which the Deepwater Settlement Program has affirmatively and conclusively held that Finish Line's claims for the five additional stores purportedly still at issue are actually barred. To that end, on October 4, 2016, Ryan LLC propounded its First Request for Production of Documents to Finish Line, in which Ryan LLC specifically asked for "*[a]ll* documents constituting, evidencing, describing, referring to, relating to or reflecting *any* Finish Line Deepwater Horizon Claims submitted to the Claims Center . . . " (*See* Ryan LLC's First Request for Production of Documents attached hereto as <u>Exhibit J</u>, Request Nos. 1, 5). Ryan LLC also specifically requested "[a]ll communications between or among Finish Line and . . . the Claims Center relating to any Finish Line Deepwater Horizon Claims submitted to the Claims Center." (*See* <u>Exhibit J</u>, Nos. 3, 7).

In response to Ryan LLC's document requests, Finish Line produced a document bates-numbered FL00015200 – FL00015217, entitled DWH Global Notes Details (As of 10/10/16)

10

("Global Notes").[12]   The Global Notes is a log setting forth a series of communications between Finish Line's authorized attorneys and the Deepwater Horizon Claims Administrator.   On September 16, 2015, the Claims Administrator wrote the following:

> Robert, Per our phone conversation on yesterday, thank you for taking the time to speak with me in regards to The Finish Line, Inc. (100049935).   In order to continue the accounting review, please provide the following information:
>
> 1.      As previously stated on 5/9/2013, the claimant stated that the intention is to file for 13 locations.   Therefore, please identify and provide full monthly profit and loss statements (2007 – 2011) for the following locations:
>
> *      *      *
>
> 2.      The claimant provided additional profit and loss statements for the following locations:
> > a. University Mall
> > b. Tallahassee Mall
> > c. Madison Square Mall (Store 0565)
> > d. Metrocenter Mall (Store 0593)
>
> What is the purpose of these locations?  Is it the intentions [sic] to file for these additional location's?   If so, please provide the following: . . . purple form for each location . . . [and] monthly profit and loss statements (2007 – 2011)[.]

(Global Notes, Entry No. 15).   That same day, the Claims Administrator clarified this communication with another email: "Robert, Just to clarify.   If the intentions are to file for Madison square mall location, I would need the profit and loss statements.   However, for the other three locations mentioned in #2, I already have the P&L's.   All four locations would need purple forms as well."  (Global Notes, Entry No. 14).

On September 28, 2015, Finish Line's (new) counsel wrote the following:

> We received a post reconsideration denial notice for this claim on Friday and I'm not sure why.  This claim is very large, publicly traded multi-

_____

[12] A true, accurate and complete copy of the Global Notes as produced by Finish Line in discovery is attached hereto as Exhibit K.

11

facility claim that was improperly denied by the claims center back in 2013. The claim was just put back in the system on 9/16 and since then we have been communicating with you all about what information was needed by the CA once the claim was reopened and have been working on obtaining everything required. We also sent communication to both of you regarding all of the facilities included in this claim that were not properly entered into the portal by Claimant's previous attorney. To date, I have not heard a response from either of you all but the claim was issued an incompleteness denial notice without warning. Considering the CA's major screw up with this claim in 2013, I would appreciate that you all respond promptly to this email and provide warning when a denial notice is going to be issued, particularly when we have been actively communicating with the CA about obtaining documentation and additional information needed.

(Global Notes, Entry No. 16). In response, the Claims Administrator stated: "I am following up with the appropriate party for Relation back consideration. I will follow up with you as soon as I have a determination regarding whether or not additional claims can be filed after the 6/8/15 final filing deadline." (Global Notes, Entry No. 17).

On September 28, 2015, Finish Line's attorneys emailed the Claims Administrator:

We need to schedule a call as soon as possible to discuss the issue regarding over 70 facilities that are included in the claim but that were not properly entered into the portal by Claimant's original attorneys. This will affect what P&L's are submitted to the CA as requested by Darryl in his 9/16 email.

(Global Notes, Entry No. 18). The Claims Administrator responded as follows: "Does the claimant intend to file consolidated? Or separately for the additional claims? If they want to file consolidated, please change Q6 to Yes and add the claiming Facilities in Q7 of the Claim Form. The claimant will not be able to file additional claims if filing separately." (Global Notes, Entry No. 21). Finish Line's attorneys sought clarification that same day: "Jason, I just want to make sure that I understand you. Finish Line can either file on a consolidated basis for all 74 Gulf Coast Region facilities or can file on a facility basis ONLY for the 13 locations originally

12

included in the claim form?" (Global Notes, Entry No. 19). The Claims Administrator

responded, "[y]our understanding is correct." (Global Notes, Entry No. 22).

On November 12, 2015, the Claims Administrator sent the following email with a subject

line entitled "Relation Back Outreach 3":

> Good Morning, The Finish Line, Inc. . . . indicated on its Claim Form that
> it is a Multi-Facility Business requesting Consolidated treatment for all
> Facilities in the Gulf Coast Areas; however, our review of the claim
> suggests that not all of the claimant's addresses in the Gulf Coast Areas
> are included on the Claim Form. The DWH Program requires that
> Question 7 on the Claim Form include the physical address of each
> Claiming Facility of the business. For Multi-Facility Businesses electing
> consolidated treatment, the claimant must provide the physical addresses
> of all the business's Facilities located in the Gulf Coast Areas. The DWH
> Database Application then creates a Claim ID to correspond to each
> Claiming Facility, which allows the Program to properly track these
> Facilities and to ensure that all facilities included in the Consolidated
> claim are located in the Gulf Coast Area. . . [.]
>
> We have opened up the Business Economic Loss Claim Form for you to
> provide the physical address(es) of additional Facilities of your business
> located in the Gulf Coast Areas. Please add the address(es) requested on
> or before close of business on Friday, December 11, 2015. While you will
> have additional opportunity to add the address(es) in the future,
> submission on or before December 11, 2015 will allow for the more
> expedient processing of these claims.

(Global Notes, Entry No. 26). Several weeks later, on December 4, 2015, the Claims

Administrator made the following entry in the Global Notes: "Claims Analyst spoke with Jessica

Ibert [Finish Line's outside counsel] on December 4, 2015 at 10:04 AM. The following issues

were covered: (1) The Claimant intended to file for the 13 separate locations[.]" (Global Notes,

Entry No. 31). That same day, the Claims Administrator confirmed this conversation in an

email: "Thank you for taking the time to speak with me this afternoon and confirm the

Claimant's filing intentions for the 13 facilities . . . Enjoy your weekend and I look forward to

working with you to complete a review of these claims." (Global Notes, Entry No. 32). The

13

remaining correspondence set forth in the Global Notes involves Finish Line's efforts to submit information only for thirteen stores, *not the 5 additional stores currently at issue in this lawsuit*.

In addition to the Global Notes, Finish Line has also produced a number of official rulings and decisions handed down by the Deepwater Claims Facility. Notably, however, Finish Line has produced no official decision addressing whether its claims for the five additional stores have been barred from submission. Likewise, the claim notices and rulings related to the original thirteen stores clearly show that the thirteen claims are the only ones to have been submitted. Finish Line has not produced any purple forms showing a filing for the five additional stores. And to date, other than the Global Notes document, Finish Line has produced no other communications between any of its attorneys and the Claims Administrator, despite being requested to do so.

## III.   STANDARD FOR LEAVE TO AMEND

Finish Line has filed its Motion for Leave to Amend pursuant to Indiana Rule of Trial Procedure 15. Trial Rule 15(a) allows a party to "amend its pleading only by leave of court" and further states that "leave shall be freely given when justice so requires." The right to amend is, however, not absolute. The trial court must evaluate relevant factors in determining whether justice requires leave to be granted. *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 142 (Ind. Ct. App. 1997). "Those factors include undue delay, bad faith, or dilatory motive on the part of the movant and undue prejudice to the opposing party." *Id.*

The trial court has broad discretion in determining whether a motion for leave to amend should be granted and the appellate court will reverse only upon a showing of abuse of that discretion. *MAPCO Coal, Inc. v. Godwin*, 786 N.E.2d 769, 777 (Ind. Ct. App. 2003). Such discretion is a "privilege allowed a judge within the confines of justice to decide and act in

14

accordance with what is fair and equitable." *B&D Corp. v. Anderson Clayton & Co.*, 180 Ind. App. 115, 387 N.E.2d 476, 482 (1979) *quoting Urbanational Developers, Inc. v. Shamrock Eng'g, Inc.*, 175 Ind. App. 416, 420, 372 N.E.2d 742, 746 (1978). "An abuse of discretion is an erroneous conclusion and judgment, clearly against the logic and effect of the facts and circumstances before the court..." *Freedom Express, Inc. v. Merchandise Warehouse Co., Inc.*, 647 N.E.2d 648, 653 (Ind. Ct. App. 1995) (finding that the trial court did not abuse discretion by not allowing defendant to file an omitted counterclaim). A trial court does not abuse its discretion when it denies a motion to amend a pleading "where such an amendment would be futile." *Kelly v. Vigo Cnty. Sch. Corp.*, 806 N.E.2d 824, 830 (Ind. Ct. App. 2004) (finding no abuse of discretion in denial of a motion to amend because the claims included in the proposed amendment fell outside the statute of limitations and did not relate back to the original complaint). "'Futility' implies that the amendment is useless." *Mullen v. Cogdell*, 643 N.E.2d 390, 399 (Ind. Ct. App. 1994).

## IV.    ARGUMENT

In this case, permitting Finish Line leave to amend its Complaint for a third time would be futile because *none* of its causes of action in this lawsuit are ripe. There can be no dispute that each and every one of Finish Line's causes of action in this litigation – whether existing before its Motion to Amend or newly set forth in its proposed Third Amended Complaint – turns on whether Finish Line has been conclusively barred from submitting Deepwater claims for the five stores at issue. However, the facts Finish Line has produced in discovery to this point indicate that Finish Line still has recourse with the Deepwater Claims Facility, but has merely *chosen* not to exhaust those potential remedies with the Settlement Program. Having not suffered an actual injury (a prerequisite for any legal cause of action), none of Finish Line's

15

claims have accrued and this lawsuit is not ripe.   Accordingly, Finish Line's proposed amendments would be entirely futile and its Motion to Amend must be denied.

"Ripeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record." *Indiana Dep't of Envtl. Management v. Chem. Waste Management, Inc.*, 643 N.E.2d 331, 336 (Ind. 1994).   Ripeness involves the timing of judicial review and the principle that judicial machinery should be conserved for problems that are real and present or imminent, not squandered on problems that are abstract or hypothetical or remote. *Carroll Cty. Rural Elec. Membership Corp. v. Indiana Dep't. of State Revenue*, 733 N.E.2d 44, 48 (Ind. T.C. 2000). Although the Indiana Constitution lacks the familiar "cases and controversies" language of Article III, § 2 of the United States Constitution, the Indiana Supreme Court has determined that the separation of powers language in Article III, § 1 of the Indiana Constitution "fulfills an analogous function in our own judicial activity, or lack thereof." *Chem. Waste Management*, 643 N.E.2d at 336-37.

Whether a claim is ripe for review concerns the Court's subject matter jurisdiction. *Carroll*, 733 N.E.2d at 47.   In determining whether an action should be dismissed for lack of subject-matter jurisdiction, the trial court may weigh evidence and resolve factual disputes, including pleadings, affidavits, and other evidence submitted. *Cooper v. Cty. Bd. of Review of Grant Cty.*, 150 Ind. App. 232, 237, 276 N.E.2d 533, 536 (1971); *see also Riehman v. Cornerstone Seeds, Inc.*, 671 N.E.2d 489, 491 (Ind. Ct. App. 1996) ("[T]rial court has considerable latitude in devising procedures to bring to light the facts pertinent to jurisdiction, and it is well established that in doing so it may consider not only the complaint and motion but any affidavits or other evidence submitted.").

The failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction and the lack of subject matter jurisdiction cannot be waived by the parties. *Indiana Dep't. of Envtl. Mgmt. v. NJK Farms, Inc.,* 921 N.E.2d 834, 842 (Ind. Ct. App. 2010) (citation omitted). When a party has not exhausted all administrative remedies, a Trial Rule 12(B)(1) motion for lack of subject matter jurisdiction is appropriate. *Austin Lakes Joint Venture v. Avon Utilities, Inc.,* 648 N.E.2d 641, 645 (Ind. 1995). The question of subject matter jurisdiction may be raised at any time, and courts are required to consider the issue *sua sponte* if it is not properly raised by the party challenging jurisdiction. *Alvarado v. Nagy,* 819 N.E.2d 520, 523 (Ind. Ct. App. 2004); *Watkins v. State,* 869 N.E.2d 497, 499 (Ind. Ct. App. 2007).

Here, although it is not entirely clear what administrative status Finish Line's five remaining Deepwater Claims are in, one thing *is* clear -- Finish Line's claims have not been officially and permanently barred. To be sure, Finish Line has not produced any official decision rendered by the Deepwater Settlement Program to this effect, despite being specifically requested to produce all such items in discovery. Nor has it produced any Business Economic Loss claim forms (purple forms) corresponding to any of the five additional stores, meaning Finish Line has apparently never actually attempted to *file* a claim for these locations after it terminated Ryan Law and Patel and retained new counsel.

That Finish Line has not pursued claims for the five additional stores would make sense if the Deepwater Claims Administrator had issued a ruling holding that such claims were time-barred. But that does not appear to be the case based on the communications set forth in the Global Notes. To the contrary, the Global Notes document paints a picture of the Deepwater Claims Facility doing everything it could to work with Finish Line, yet it was Finish Line for some reason that chose to only submit data for the thirteen locations already on file. For

17

example, on September 16, 2015, the Claims Administrator initially asked Finish Line why it had submitted information on four of the five additional stores: "What is the purpose of these locations? Is it the intentions [sic] to file for these additional location's?" The Claims Administrator specifically stated, "please provide . . . purple form[s] for each location[.] (Global Notes, Entry No. 15). Later that same day, the Claims Administrator reiterated: "All four [additional] locations would need purple forms as well." (Global Notes, Entry No. 14).

Yet, rather than submitting claim forms for the five (or even four) additional stores at that point, Finish Line apparently chose to do nothing. When it was then issued an Incompleteness Denial Notice on September 25, 2015, Finish Line's attorney merely complained, "We . . . sent communication to both of you regarding all of the facilities included in this claim that were not properly entered into the portal by Claimant's previous attorney [Ryan Law and Patel]. To date, I have not heard a response from either of you all but the claim was issued an incompleteness denial notice without warning." (Global Notes, Entry No. 16). In response, the Claims Administrator stated: "I am following up with the appropriate party for Relation back consideration. I will follow up with you as soon as I have a determination regarding whether or not additional claims can be filed after the 6/8/15 filing deadline." (Global Notes, Entry No. 17).

Initially, it appears the Deepwater Claims Facility told Finish Line it "will not be able to file additional claims if filing separately", and instead could only file on a consolidated basis for all 74 Gulf Coast Region facilities. (Global Notes, Entry No. 21). However, several weeks later, the Deepwater Claims Administrator specifically indicated that the claim form was now "open" for Finish Line to submit "additional Facilities", as follows:

> We have opened up the Business Economic Loss Claim Form for you to provide the physical address(es) of additional Facilities of your business located in the Gulf Coast Areas. Please add the address(es) requested on or before close of business on Friday, December 11, 2015. While you will

18

have additional opportunity to add the address(es) in the future, submission on or before December 11, 2015 will allow for the more expedient processing of these claims.

(Global Notes, Entry No. 26). But despite the Claims Administrator clearly changing its tune and apparently permitting Finish Line to submit "additional Facilities", it seems from the next communication that Finish Line voluntarily chose *not* to submit the claims for the additional stores. (See Global Notes, Entry No. 32) ("Thank you for . . . confirm[ing] the Claimant's filing intentions for the 13 facilities[.]" (Emphasis added). No explanation is given in the Global Notes for this decision not to submit claims for the additional stores. Likewise, no notice has been produced showing that the Deepwater Claims Administrator has ever rendered a decision to the contrary. Indeed, all facts adduced to date indicate that, for whatever reason (perhaps the desire to recover via this lawsuit rather than through the Settlement Program), Finish Line has apparently made a strategic decision not to submit its claims.

In the complete absence of an official decision or even a claim form regarding the five additional stores, the documents and communications Finish Line has produced to date in discovery point to one of the following conclusions:

1.   The Claims Administrator has permitted Finish Line to submit claims for the five additional stores (i.e. determined that that they "relate back"), but Finish Line has simply chosen not to submit them.

2.   The Claims Administrator has permitted Finish Line to submit claims for the five additional stores. Finish Line has done so and the claims remain pending; however, Finish Line has not produced any documents in discovery related to those claims.

3.   The Claims Administrator has denied Finish Line's efforts to submit claims for the five stores and Finish Line is appealing that ruling within the Settlement Program, but has not produced any documents in discovery related to that appeal.

19

4.    The Claims Administrator has denied Finish Line's efforts to submit claims for the five stores, and Finish Line has chosen not to appeal that decision.

Assuming that Finish Line is not withholding documents in discovery[13], then the only conclusion that can be drawn is that Finish Line has made a strategic choice *not to pursue its claims* for the five stores at issue with the Deepwater Claims Facility or submit an appeal, and *has instead chosen to seek recovery from Defendants via a lawsuit.*

The problem for Finish Line is that its apparent choice not to submit claims for the five additional stores conclusively establishes that none of its causes of action have accrued and are, therefore, not ripe. "A cause of action accrues when all elements of the claim are present." *Pope v. Zanetis*, 2002 WL 425050, *3 (S.D. Ind. Feb. 22, 2002) (applying Indiana law).  For example, with regard to the legal malpractice action at the heart of Finish Line's claims, "a plaintiff-client must show (1) employment of an attorney (duty); (2) failure by the attorney to exercise ordinary skill and knowledge (breach); (3) proximate cause (causation); and (4) loss to the plaintiff." *Douglas v. Monroe*, 743 N.E.2d 1181, 1184 (Ind. Ct. App. 2001).  "[T]he accrual of a cause of action . . . depends upon the uniting of at least two elements injury and damages . . . [.]" *Shideler v. Dwyer*, 386 N.E.2d 1211, 1215 (Ind. Ct. App. 1979), *superseded*, 275 Ind. 270, 417 N.E.2d 281 (1981).  "A cause of action for legal malpractice . . . does not accrue until the aggrieved

---

[13] Ryan LLC can only assume that no denial notices or claim forms regarding the five additional stores exist.  Ryan LLC has twice asked Finish Line for such items in discovery, the first instance being over one year ago when it asked for all Deepwater claims and all communications Finish Line has had with the Deepwater Claims Administrator. (*See* Request Nos. 1, 3, 5, 7).  None were produced.  Ryan LLC has now submitted a second request for production of documents, this time targeting the five additional stores (although there can be no dispute that claims related to the five additional stores were squarely within Ryan LLC's first document requests).  Finish Line's responses are due – after Ryan LLC granted an extension – on October 25, 2017, one day after the deadline for filing this response.  Even more telling, Finish Line has now filed *four* complaints, and none of them have discussed or included a claim form or a denial notice pertaining to the five additional stores that are at the heart of Finish Line's claims.

party has suffered both an injury to his property and damages. *Pope*, 2002 WL 425050, at *5 (Quoting *Shideler v. Dwyer*, (1979) Ind. App., 386 N.E.2d 1211).

Here, Finish Line's entire case amounts to this: Finish Line had Deepwater claims for five additional stores and as a result of Defendants' actions, it lost these claims. *See Pope*, 2002 WL 425050, *3. In such cases, where the accrual of a plaintiff's tort claim is based upon a professional's negligence in handling an underlying, litigated case, "it is reasonably clear that there must be an adverse result in court [in the underlying case] before the claim arises."[14] *Id.* at *7 (applying Indiana law). The "adverse result" that Finish Line claims has occurred as a result of Defendants' acts or omissions – namely the loss of the value of its claims for the five additional stores – has not come to pass, at least according to the discovery produced to date. (*See* Third Amended Complaint, ¶¶1, 101). Instead, those claims would appear to be very much alive based on the communication set forth in the Global Notes, yet apparently Finish Line has strategically chosen not to carry them through to a conclusion.[15] Viewed in this light, Finish Line has not "identified any ascertainable *injury* that [it has] suffered from [Defendants'] alleged malpractice until the [Deepwater Settlement Program] issue[s] its . . . decree" denying Finish Line's claims." *Pope*, 2002 WL 425050 at *6 (holding plaintiff's legal malpractice claim did not

---

[14] As the *Pope* opinion clarifies, Indiana's adoption of the discovery rule for malpractice-type tort cases "did not eliminate the independent need for ascertainable injury before a malpractice claim accrues." *Pope*, 2002 WL 425050 at *7. To the contrary, the Indiana Supreme Court has observed that "the cause of action of a tort claim accrues . . . when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an *injury* had been sustained as a result of the tortious act of another." *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) (emphasis added).

[15] There is certainly precedent for a Deepwater business economic loss claimant convincing the Claims Administrator to allow that claimant to augment a claim with additional facilities/information after the June 8, 2015 deadline, provided the claimant filed at least one purple form for one of its claims prior to the deadline (*i.e.* relation back). Indeed, Prins testified to one such client in his deposition. (Prins Dep. P. 109, l. 17 – p. 111, l. 19) ("Mr. Patel [acting on behalf of the client] was able to show them that, in fact, all of the financial information was, in fact, there; that the locations were, in fact, listed, and that the claims staff then reversed their decision and assigned new individual claim numbers and the claims proceeded.").

accrue until divorce decree was entered by court in underlying dissolution action) (emphasis added).

With no ascertainable injury resulting from Defendants' conduct, Finish Line's claims have not accrued as a matter of law, and there is no ripe cause of action for malpractice or any of the other claims Finish Line asserts. *See Schulte v Burch*, 151 Ill. App. 3d 332, 502 N.E.2d 856 (1986) (cause of action against attorney was premature as client still had viable cause of action on surety bond for materials furnished to subcontractor); *Evans v Detweiler*, 466 So. 2d 800 (La. Ct. App. 1985); *Birnholz v Blake*, 399 So. 2d 375 (Fla. Dist. Ct. App 1981) (holding since some of client's claims against defendant in underlying case were still viable and pending in second litigation, client may never suffer any damage caused by attorney's negligence). It follows that, with no ripe cause of action for this Court to adjudicate, permitting Finish Line to add the causes of action proposed in its Third Amended Complaint would be entirely futile. This Court would be well within its discretion to deny Finish Line's Motion to Amend, and should do so. *See Kelly*, 806 N.E.2d at 830.

## V.   CONCLUSION

Finish Line's causes of action – both those set forth in its existing Complaint and newly raised in its proposed Third Amended Complaint – are not ripe. As the evidence shows, Finish Line could have simply submitted its claims for the five additional stores to the Claims Administrator, who indicated such claims were still "open." Finish Line's strategic choice not to submit those claims confirms it has suffered no actual injury as a result of Defendants' conduct. With no ascertainable injury, Finish Line's causes of action have not accrued (indeed, may never accrue), and amending its Complaint a third time would be futile.

22

Respectfully submitted,

/s/ Scott S. Morrisson
Scott S. Morrisson
Matthew C. Branic
KRIEG DeVAULT LLP
12800 North Meridian Street, Suite 300
Carmel, Indiana 46032
Telephone:  317-566-1110
Facsimile:  317-636-1507
smorrisson@kdlegal.com
mbranic@kdlegal.com

*Attorneys for Defendants Ryan LLC, Kevin Prins, and Jon Sweet*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with the Court's Indiana E-Filing System on October 24, 2017. Notice of this filing was also provided to the following counsel of record via the E-Filing System:

Andrew W. Hull
Susanne A. Johnson
Michael A. Dorelli
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989

Kori Flake
Leslie B. Pollie
Travis W. Montgomery
KOPKA PINKUS DOLIN, PC
550 Congressional Blvd., Suite 310
Carmel , IN 46032

/s/ Scott S. Morrisson

KD_9095704_1.docx

23