Claimant Name:  BioMarine Technologies, Inc.
                      Gulf Marine Institute of Technology

Claimant EIN:  75-2309471
                  31-1475321

# Affidavit of
# John D. Ericcson

Claimant Name: BioMarine Technologies, Inc. & Gulf Marine Institute of Technolgy        Claimant EIN: 75-2309471 & 31-1475321

## AFFIDAVIT OF JOHN D. ERICSSON

**STATE OF FLORIDA**

**COUNTY OF SANTA ROSA**

BEFORE ME, the undersigned authority, personally came and appeared and after whom being first duly sworn, states:

1. My name is John D. Ericsson;

2. I am President and authorized agent of BioMarine Technologies, Inc. ("BioMarine");

3. BioMarine was formed in the State of Delaware and remains an active corporation in the State of Florida;

4. I have the authority to file a claim on behalf of BioMarine in connection with damages sustained due to the April 20, 2010, Deepwater Horizon disaster;

5. I filed the present claim on behalf of BioMarine as President and authorized agent.

6. Begun in 1989, BioMarine set out to create an oceanic fish farm, utilizing the Gulf's natural marine salt water environment to produce organic (i.e., free from contaminants, growth hormones and antibiotics) fish and other aquatic animals for human consumption through the use of offshore fish hatcheries and large, open-ocean sea cages.

7. Knowing its endeavor would be complex and expensive, BioMarine has raised approximately $7,000,000 in private capital to fund startup activities like developing the requisite aquaculture technology, identifying viable Gulf fish stock candidates, securing requisite operational sites and permits, and, otherwise, developing a fully-integrated commercial seafood business involving the production, processing, distribution, marketing and sale of various seafood.

1

Claimant Name: BioMarine Technologies, Inc. & Gulf Marine Institute of Technolgy        Claimant EIN: 75-2309471 & 31-1475321

8. In 2008, BioMarine secured one of the first offshore sea farming permits *in the history of the United States* from the United States Army Corps of Engineers (Permit #SAM-2002-2232-MBM) and Environmental Protection Agency (NPDES permit #AL0067237), both of which were for five (5) years and encompassed twenty-seven (27) acres in federal Gulf waters approximately nine (9) miles south of Perdido Pass, Alabama.

9. Because fully permitted sea farming acreage is so rare, the value of BioMarine's fully permitted sea farming acreage should be based on the current fair market value of fully permitted sea farming acreage worldwide.

10. Upon information and belief, the minimum current fair market value of fully permitted, commercial sea farming acreage worldwide is $1,000,000.00 per acre.

11. Because BioMarine owns one of the only federal, fully permitted, offshore sea farming project sites ever approved by any regulatory agency in the federal waters of the United States, the fair market value of BioMarine's twenty-seven (27) sea farming acres should be valued above the current minimum worldwide fair market value.

12. In addition, BioMarine has previously acquired over $1,000,000 worth of various sea cages and other sea farming and marine hatchery equipment.

13. In its efforts to develop a viable open-water offshore sea farming operation, BioMarine's inventor, with assistance from the Massachusetts Institute of Technology (MIT), also engineered, designed and patented a platform-based SeaTrek Ocean Farming System (US Patents 5,438,958 & 362,508) and the Sea Star Oyster Relay System (US Patent 5,628,280) which was developed to commercially grow, purify

2

Claimant Name: BioMarine Technologies, Inc. & Gulf Marine Institute of Technolgy        Claimant EIN: 75-2309471 & 31-1475321

and cleanse oysters, and prevent sickness and death via vibrio infections and other harmful bacteria.

14. Unfortunately, BioMarine's momentum and progress toward launching its sea farming operations in the Gulf of Mexico crashed to a halt following the Deepwater Horizon disaster.

15. One reason for BioMarine's current standstill is that the five-year federal permits BioMarine has secured will expire in March 2013, and, without the infusion of additional funds, BioMarine will be unable to further pursue its sea farming project, and, therefore, lose these valuable permits and site, which has taken over 10 years of development effort and extensive investment capital to acquire.

16. In addition, sea farming project insurers have not reestablished interest in insuring BioMarine's sea farming project, at prior BP disaster insurance rates.   Therefore, BioMarine is currently waiting for clearance of BP environmental pollution concerns in this region of the Gulf of Mexico in order to obtain acceptable market priced animal husbandry, crop, and equipment insurance quotes, which is required before initiating the project.

17. Another reason for BioMarine's failure to progress has been the continued water quality concerns by BioMarine's investors, insurers, principals, the scientific community, and the general public relating to seafood safety from our Gulf waters since the BP Oil Spill.  Most recently, after a mild category 1 Hurricane Isaac hit on August 29, 2012, these same water quality concerns flared up again since oil contamination is confirmed to be present from the BP Oil Spill and has reappeared in areas of the Gulf thought to be restored or rehabilitated.

3

18. BioMarine has therefore suffered, and continues to suffer, business economic losses, as a result of the Deepwater Horizon disaster.

John D. Ericsson
President
BioMarine Technologies, Inc.

SWORN TO AND SUBSCRIBED before me

this 27 day of Sept , 2012

NOTARY

Notary Public State of Florida
Susan R Klastus
My Commission DD912847
Expires 10/14/2013

4