# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,<br><br>                Plaintiffs,<br><br>*This Document Relates To:*<br>**The Andry Law Group, et al. v. CNA Financial, et al.,**<br>**Civil Action No. 2:14-cv-600** | **MDL 2179**<br>**SECTION: "J" (1)**<br>**JUDGE BARBIER**<br>**MAGISTRATE JUDGE WILKINSON** |

### DEFENDANTS CNA FINANCIAL CORPORATION'S AND CONTINENTAL CASUALTY COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

*Of Counsel:*
**RICHARD A. SIMPSON**
D.C. Bar No. 411893
(admitted *pro hac vice*)
**BENJAMIN C. EGGERT (T.A.)**
D.C. Bar No. 474218
(admitted *pro hac vice*)
**WILEY REIN LLP**
1776 K Street NW
Washington, DC 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email:
rsimpson@wileyrein.com
beggert@wileyrein.com

**DAVID S. DALY** (#20774)
**FILOT LLC**
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504) 599-8329
Facsimile: (504) 599-8100
Email: ddaly@frilot.com

*Counsel for Defendants CNA Financial Corporation and Continental Casualty Company*

# **TABLE OF CONTENTS**

                                                                                          **Page**

I.      INTRODUCTION ............................................................................................................1

II.     BACKGROUND ..............................................................................................................2

          A.       The Freeh Corruption Investigation.......................................................................2

          B.       The Freeh Report ...................................................................................................2

          C.       The Show Cause Order ..........................................................................................3

          D.       The Clawback Motions ..........................................................................................3

          E.       The Court's Sanctions Order & the Fifth Circuit's Affirmance .............................4

          F.       The Policy ..............................................................................................................5

III.    ARGUMENT ....................................................................................................................5

          A.       An insurer has no duty to defend where there is no possibility of coverage ..............................................................................................................5

          B.       The Freeh Corruption Investigation did not seek covered "damages." ...................6

          C.       The Freeh Corruption Investigation was not a "Claim" under the Policy ............................................................................................................10

          D.       CNA Financial is entitled to judgment as a matter of law ....................................13

IV.    CONCLUSION ...............................................................................................................14

# **TABLE OF AUTHORITIES**

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Brewster v. Hunter*,
  38 So. 3d 912 (La. Ct. App. 2010) ........................................................................................5

*Chalk v. Trans Power Manufacturing, Inc.*,
  451 N.W.2d 770 (Wis. Ct. App. 1989) ...........................................................................11, 12

*Continenal Casualty Co. v. Brady*,
  907 P.2d 807 (Idaho 1995) ....................................................................................................9

*Continental Casualty Co. v. Donald T. Bertucci, Ltd.*,
  926 N.E.2d 833 (Ill. Ct. App. 2010) .....................................................................................9

*Continental Casualty Co. v. Jewell, Moser, Fletcher & Holleman*,
  No. 04cv2309, 2005 WL 1925964 (E.D. Ark. Aug. 11, 2005)............................................12

*Doeren Mayhew & Co., P.C. v. CPA Mutual Insurance Co. of America Risk
  Retention Group*,
  No. 05-71782, 2007 WL 118939 (E.D. Mich. Jan. 10, 2007) ........................................10, 11

*Elliott v. Continental Casualty Co.*,
  949 So. 2d 1247 (La. 2007) .................................................................................................13

*Felice v. St. Paul Fire & Marine Insurance Co.*,
  711 P.2d 1066 (Wash. Ct. App. 1985)...................................................................................9

*Friend v. Attorneys Liab. Protection Society*,
  131 F.3d 134, 1997 WL 746761 (4th Cir. 1997) ..................................................................9

*Home Insurance Co. v. Law Offices of Jonathan DeYoung, P.C.*,
  32 F. Supp. 2d 219 (E.D. Pa. 1998) .....................................................................................12

*Magnon v. Collin*,
  739 So. 2d 191 (La. 1999) .....................................................................................................6

*Martco Ltd. Partnership v. Wellons, Inc.*,
  588 F.3d 864 (5th Cir. 2009) .................................................................................................6

*Pias v. Continental Casualty Insurance Co.*,
  No. 2:13-CV-00182-PM-KK, 2013 WL 4012709 (W.D. La. Aug. 6, 2013) ................. *passim*

*Republic Western Insurance Co. v. Spierer, Woodward, Willens, Denis &
  Furstman*,
  68 F.3d 347 (9th Cir. 1995) ...................................................................................................9

*Sanborn v. Oceanic Contractors, Inc.*,
  430 So. 2d 232 (La. Ct. App. 1983) 448 So. 2d 91 (La. 1984)................................................13

*Simpson & Creasy, P.C. v. Continental Casualty Co.*,
  770 F. Supp. 2d 1351 (S.D. Ga. 2011)....................................................................................12

*Specialty Food Systems, Inc. v. Reliance Insurance Co.*,
  45 F. Supp. 2d 541 (E.D. La. 1999) 200 F.3d 816 (5th Cir. 1999)..........................................10

*Steptore v. Masco Construction Co.*,
  643 So. 2d 1213 (La. 1994) .......................................................................................................6

*Tana v. Professional Prototype I Insurance Co.*,
  55 Cal. Rptr. 2d 160 (Cal. Ct. App. 1996)................................................................................9

*Thomas v. Livingston Parish Sheriff's Office*,
  923 So. 2d 662 (La. Ct. App. 2005).........................................................................................13

*Trice v. Employers Reinsurance Corp.*,
  124 F.3d 205, 1997 WL 449736 (7th Cir. 1997) .....................................................................12

*Williams v. Synergy Care, Inc.*,
  CIV.A.No. 07-0137, 2008 WL 2945918 (W.D. La. July 29, 2008) ........................................10

*Willis v. Tunica Hardwood Co.*,
  347 So. 2d 1300 (La. Ct. App. 1977).......................................................................................13

I.  **INTRODUCTION**

Plaintiffs have moved for partial summary judgment, seeking a declaration that Defendant Continental Casualty Company ("Continental") has a duty to defend a corruption investigation (the "Freeh Corruption Investigation") arising out of Plaintiffs' allegedly improper representation of claimants in the *Deepwater Horizon* settlement program (the "DH Settlement Program"). As explained further in Continental's cross-motion (D.E. 13080), Plaintiffs' motion for summary judgment should be denied because the investigation sought no covered "damages" and did not constitute a "claim" as defined by Continental's lawyers professional liability policy.

**First**, the policy expressly carves out from the definition of "damages" all the potential relief sought in the Freeh Corruption Investigation, including "legal fees," "sanctions," and injunctive relief. And the Court has now actually awarded all that type of uncovered relief against Andry. Louisiana law addresses this precise issue and confirms that the plain language of the policy must be enforced to preclude coverage, as discussed in Judge Minaldi's decision in *Pias v. Continental Casualty Insurance Co.*, No. 2:13-CV-00182-PM-KK, 2013 WL 4012709, at *6 (W.D. La. Aug. 6, 2013). In *Pias*, the court held that a dispute about the recovery of fees and sanctions "cannot constitute covered damages under the policy" and thus "Continental did not owe a duty to defend or indemnify."

**Second**, the Freeh Corruption Investigation is not a "claim" under the policy. Plaintiffs cannot transform investigatory requests for documents and testimony into a claim under the plain language of the policy and applicable caselaw. Accordingly, Plaintiffs' motion for summary judgment against Continental should be denied.

In addition, as explained in Continental's motion for summary judgment, Plaintiffs have improperly named CNA Financial Corporation ("CNA Financial") as a Defendant. Plaintiffs' summary judgment brief contains no argument about CNA Financial. CNA Financial is not a

party to the insurance policy, never sold insurance of any kind to Plaintiffs, nor has it ever adjusted any insurance claim or made any coverage decision.  In short, CNA Financial owes no contractual or common law duties or obligations of any kind to Plaintiffs and should be dismissed as a Defendant.

## II.     BACKGROUND

### A.     The Freeh Corruption Investigation

Plaintiffs represented individuals and businesses harmed by the BP *Deepwater Horizon* explosion and oil spill and presented claims for compensation under the *Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended, which established the Court-supervised DH Settlement Program.  Defendants' Statement of Material Facts ("DSOMF") (D.E. 13080-2) ¶ 1.  In July 2013, the Court appointed Freeh as Special Master to investigate the DH Settlement Program "to ensure the integrity of the program for the benefit of the parties and the public."  DSOMF ¶ 2.

### B.     The Freeh Report

The Special Master issued a report detailing the findings of his investigation on September 6, 2013 (the "Freeh Report").  DSOMF ¶ 3.  The Freeh Report concluded that Jonathan Andry ("Andry") and his law partner Glen Lerner had used their relationship with Lionel "Tiger" Sutton and his position as a lawyer on the settlement claims administrator's staff for the benefit of their clients at AndryLerner LLC ("AndryLerner") and The Andry Law Group, and that Andry had used Sutton to facilitate a $7.9 million direct claim by The Andry Law Firm.  DSOMF ¶ 13.  The Freeh Report also found that Andry and Lerner had paid Sutton over $40,000 in fees for referring claimants to AndryLerner and The Andry Law Group.  DSOMF ¶ 14.

Based on these findings, the Freeh Report recommended that the U.S. Department of Justice consider whether Andry had violated federal criminal statutes regarding fraud, money

laundering, conspiracy, or perjury.  DSOMF ¶ 15.  The Freeh Report also recommended that the State Bar of Louisiana determine whether Andry's conduct violated any disciplinary rules, including those relating to the division of fees.  DSOMF ¶ 16.  The Freeh Report further recommended that the Court consider applying the doctrine of "unclean hands" to ban Andry and any law firms affiliated with him from representing any clients in the DH Settlement Program or from collecting any fees for such representations, and to disallow The Andry Law Firm's $7.9 million claim.  DSOMF ¶ 17.

      **C.**      <u>**The Show Cause Order**</u>

The Court subsequently issued an order requiring Andry and "any associated law firms," among others, to show cause why the Court should not adopt the findings and recommendations of the Freeh Report (the "Show Cause Order").  DSOMF ¶ 18.  Specifically, the Court identified Freeh's recommendations:

> (a)    Disallowing The Andry Law Firm's $7.9 million claim under the Unclean Hands Doctrine;
>
> (b)    Disqualifying Attorney[] Jon Andry [among others], as well as any associated law firms, from representing [DH Settlement Program] claimants <u>**(or collecting fees from such claimants**</u>) under the Unclean Hands Doctrine.

DSOMF ¶ 19 (emphasis added).  In other words, the Freeh Report "recommended sanctions against the Show Cause Parties."  *Id*.  The Show Cause Order also granted authority to Freeh as Special Master to "initiate legal action to 'clawback' the payment of any fraudulent claims." DSOMF ¶ 20.

      **D.**      <u>**The Clawback Motions**</u>

Pursuant to the Show Cause Order, Freeh filed several motions seeking the return of payments made to clients of Andry and others by the DH Settlement Program and for the fees associated with such claims (the "Clawback Motions").  *See* Casey C. Thonn Clawback Motion

(D.E. 12107) (seeking return of $357,002.35); Jarrod A. Burrle Clawback Motion (D.E. 13010-1) (seeking return of $50,015.87); Tony Riley Clawback Motion (14070-1) (seeking return of $221,681.22).  The Clawback Motions alleged that Andry and others had helped their clients submit false claims and had failed to detect that their clients were submitting false documents to the DH Settlement Program.  *See, e.g.*, Thonn Clawback Motion at 8.  Critical to the Plaintiffs' motion, the Clawback Motions sought restitution as unjust enrichment of any payment the attorneys had received based on the clients' fraudulent claims.  *See, e.g., id.* at 8-9.

The Court granted each of the Clawback Motions and entered judgments ordering Andry and others to return all fees they had received for those claims.  *See* Thonn Judgment (D.E. 13150); Burrle Judgment (D.E.14798); Riley Judgment (D.E. 15449).  In ruling on the Clawback Motions, the Court made clear that Andry and others were not entitled to keep the legal fees they had been paid for their work on the fraudulent claims.  *See, e.g.,* Thonn Clawback Order (D.E. 12794) at 22 ("The instant clawback motion only seeks to recover that which was incorrectly and unjustifiably paid to … AndryLerner.").  In sum, the Clawback Motions concerned the forfeiture and restitution of legal fees to the DH Settlement Program.

### E. The Court's Sanctions Order & the Fifth Circuit's Affirmance

On November 7, 2014, the Court held an evidentiary hearing on the Show Cause Order.  Following the hearing, the Court entered an Order Concerning the Special Master's Report of September 6, 2013; Imposing Certain Sanctions (the "Sanctions Order") (D.E. 14221).  In the Sanctions Order, the Court found that Andry had "violated the canons of ethics in several respects," including by aiding and facilitating the payment of an improper referral fee to Sutton, and by making false statements during the Freeh Corruption Investigation.  Sanctions Order at 3.  Based on its findings, "the Court impose[d] . . . sanctions" against Andry and Andry Lerner disqualifying them from participating in the DH Settlement Program and ordering them to

disgorge any legal fees collected for fraudulent claims. *Id*. at 5-6. The Court also directed Freeh to report this matter to the appropriate disciplinary authorities. *Id*. at 6. AndryLerner appealed the Sanctions Order, and the Fifth Circuit affirmed this Court's ruling. *See* Judgment (D.E. 21332).

### F. The Policy

Continental issued Lawyers Professional Liability Policy No. 425308379 to The Andry Law Group for the policy period of January 1, 2013 to January 1, 2014 (the "Policy"). DSOMF ¶ 29. The Andry Law Group is the "Named Insured," and Jonathan Andry, as a lawyer of The Andry Law Group, is an Insured under the Policy. DSOMF ¶ 31. Subject to all the Policy's applicable terms, conditions, and exclusions, the Policy's Insuring Agreement provides that:

> The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable . . . .

DSOMF ¶ 32.

### III. ARGUMENT

Continental has no duty to defend or indemnify Plaintiffs because the Freeh Corruption Investigation did not present the possibility of coverage under the Policy for each of two independently sufficient reasons: (1) the Freeh Corruption Investigation did not seek – or recover – covered "damages"; and (2) the Freeh Corruption Investigation did not constitute a "claim."

### A. An insurer has no duty to defend where there is no possibility of coverage.

"[T]he insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, and the insurer is obligated to defend the insured, unless the petition unambiguously excludes coverage." *Brewster v. Hunter*, 38 So. 3d 912, 918 (La. Ct.

-5-

App. 2010). An insurer must look to the four corners of the petition or demand against the insured and the four corners of the policy to determine whether it has a duty to defend. *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009); *Steptore v. Masco Constr. Co.*, 643 So. 2d 1213 (La. 1994). "Importantly, however, an insurer's duty to defend is not triggered where 'the pleadings . . . do not reveal a possibility of liability [because] there is not a claim that would be covered by [the] policy.'" *Pias v. Cont'l Cas. Ins. Co.*, No. 2:13-CV-00182-PM-KK, 2013 WL 4012709, at *6 (W.D. La. Aug. 6, 2013) (quoting *Elliott v. Cont'l Cas. Co.*, 949 So. 2d 1247, 1252 (La. 2007)).

    **B.**  **<u>The Freeh Corruption Investigation did not seek covered "damages."</u>**

The Freeh Corruption Investigation sought no relief from Plaintiffs that fell within the Policy's definition of "damages." Clear and unambiguous policy terms, such as the definition of "damages" here, must be given their full effect. *Magnon v. Collins*, 739 So. 2d 191, 197 (La. 1999); *see Pias*, 2013 WL 4012709, at *8 (no duty to defend or indemnify where no possibility of covered damages under identical definition of damages).

"Damages," as defined by the Policy, explicitly does not include:

  A.  legal fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

  B.  civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. §1961, et seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;

\*\*\*

  E.  injunctive or declaratory relief . . . .

Policy, § III.  In other words, the Policy does not cover (1) legal fees paid or incurred or charged by any Insured; (2) sanctions, penalties, or forfeitures; or (3) injunctive relief.

All the relief contemplated by the Freeh Corruption Investigation fell squarely within these categories of relief that do not qualify as "damages."  The Show Cause Order sought three primary forms of relief: (1) disqualifying Andry and his associated law firms from representing DH Settlement Program claimants or collecting fees from such claimants; (2) disallowing The Andry Law Firm's $7.9 million direct claim; and (3) allowing the Special Master to "clawback" the fees for any fraudulent claims.  None of these could ever be covered "damages."

*First*, an order precluding Plaintiffs from representing claimants before the DH Settlement Program or collecting fees from such claimants constitutes a penalty, sanction, or forfeiture, and also constitutes injunctive relief, all of which are not included within the Policy's definition of "damages" under subparagraph B.  From the start, both the Court and Andry's law firms described the recommendations of the Freeh Report as proposed "sanctions."  *See* February 28, 2014 Order (D.E. 12436) at 8 ("The [Freeh] Report recommended *sanctions* against the Show Cause Parties." (emphasis added)); AndryLerner Objections at 2 ("The proposed *sanctions* are punitive in nature and are not related to any harm allegedly caused by the Andry Lerner law firm to any party." (emphasis added)).  And the Court's Sanctions Order expressly imposed "sanctions" on Andry in prohibiting him from participating in the DH Settlement Program.  Sanctions Order at 5.  That prohibition also constitutes injunctive relief, which is excluded from the definition of "damages" under subparagraph E.

*Second*, an order disallowing the direct claim by The Andry Law Firm, which is also not an insured under the Policy, would also constitute a penalty, sanction, or forfeiture, again none of which are covered "damages."  The Andry Law Firm itself described the proposed action under

the Show Cause Order as a "$7 million sanction," arguing that it was not "proportionate to any blameworthiness of [its] conduct." DSOMF ¶ 23.[1]

*Third*, an order requiring the "disgorgement" of fees paid to Plaintiffs for their representation of DH Settlement Program claimants seeks restitution of "legal fees, costs and expenses paid or incurred or charged by any Insured." Such relief is not within the definition of "damages" under subparagraph A. In the Sanctions Order, the Court ordered precisely this type of relief, requiring that "[a]ny legal fees collected in connection with claims that are deemed to be fraudulent shall be disgorged or reimbursed to the CSSP." Sanctions Order at 5.

Because the Freeh Corruption Investigation could not possibly have led to an award of covered damages – and the Court need look no further than its Sanctions Order for confirmation of that point – Continental has no duty to defend Plaintiffs in the Freeh Corruption Investigation.

Another Louisiana federal district court has previously applied the same analysis under virtually identical facts and policy language. *See Pias*, 2013 WL 4012709, at *8. In *Pias*, the court held that there were no covered damages, under an identical definition in a policy also issued by Continental, where the underlying claimant sought the return of fees she had paid her attorney and sanctions from the court for the attorney's conduct in representing her. *Id.* at *8. The *Pias* court held that the return of legal fees was expressly carved out from the definition of "damages," and any other relief sought by the claimant was for "injuries that are a consequence of the return of fees sought," and thus also not covered. *Id.* (internal quotation marks and citation omitted). Accordingly, the court held that, "because the costs incurred by Pias in the fee

---

[1] In the Sanctions Order, the Court allowed the Andry Law Firm's direct claim, and thus there are no damages – covered or uncovered – even associated with that claim. *See* Sanctions Order at 5.

dispute matter are clearly not covered 'damages' … under the Policy, Continental did not owe a duty to defend or indemnify Pias in the Lopez fee dispute matter." *Id.*

Courts nationwide have reached the same result as in *Pias*. *See Cont'l Cas. Co. v. Donald T. Bertucci, Ltd.*, 926 N.E.2d 833, 839 (Ill. App. Ct. 2010) (policy did not cover suit by client against insured for taking excessive fee in breach of fee agreement where damages provision excluded "'legal fees, [costs and expenses paid or incurred or] charged by the Insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing'"); *Tana v. Prof'ls Prototype I Ins. Co.*, 55 Cal. Rptr. 2d 160, 163 (Cal. Ct. App. 1996) (policy did not cover suit by client against insured attorney for retaining excessive amount of attorney's fees where damages provision excluded "legal fees, costs, and expenses"); *Cont'l Cas. Co. v. Brady*, 907 P.2d 807, 811 (Idaho 1995) (policy did not cover suit by client against insured for taking unreasonably high fee in breach of fee agreement where damages provision excluded "any fine, penalty, or claim for return of fees").[2]

Here, because none of the relief sought or recovered in the Freeh Corruption Investigation constitutes covered "damages" under the Policy, Continental has no duty to defend or indemnify Plaintiffs.

---

[2] Moreover, courts have widely held that the term "damages" does not include monies wrongfully obtained. Even in the absence of the express limitation on the scope of "damages" contained in the Policy, it would be clear that "the ordinary meaning" of "damages" "would not include a court-ordered refund of . . . attorneys' fees. Such a refund, after all, sounds not in damages, but in restitution." *Friend v. Attorneys Liab. Prot. Soc'y*, 131 F.3d 134, 1997 WL 746761, at *2 (4th Cir. 1997); *see also Felice v. St. Paul Fire & Marine Ins. Co.*, 711 P.2d 1066, 1069 (Wash. Ct. App. 1985) (no coverage for claim seeking to compel attorney "to return funds he allegedly had wrongfully taken as compensation for his services"); *Republic W. Ins. Co. v. Spierer, Woodward, Willens, Denis & Furstman*, 68 F.3d 347, 352 (9th Cir. 1995) (holding that attorney's return of an unearned retainer does not constitute "damages" because "[r]estitutionary payments . . . are not 'damages'").

C. **The Freeh Corruption Investigation was not a "claim" under the Policy.**

Coverage also is unavailable for the Freeh Corruption Investigation for the additional independently sufficient reason that it was not a "claim" under the Policy. "[I]n a claims made policy, the definition of 'claim,' as set forth in the liability policy, is enforced." *Williams v. Synergy Care, Inc.*, CIV.A.No. 07-0137, 2008 WL 2945918 (W.D. La. July 29, 2008); *see also Pias*, 2013 WL 4012709 at *4-6; *Specialty Food Sys., Inc. v. Reliance Ins. Co.*, 45 F. Supp. 2d 541, 544 (E.D. La. 1999), *aff'd*, 200 F.3d 816 (5th Cir. 1999).

The Policy defines a "claim," in relevant part, as "a demand . . . received by the **Insured** for money or services." Policy, § III. Plaintiffs contend that the Freeh Corruption Investigation was somehow a "demand for … services." Plaintiffs are incorrect because responding to an investigation and show cause order about alleged fraud and corruption is not a "demand" that Andry or his firm perform services under a policy that only insures "services … performed by an Insured for others as a lawyer." *See id.*, § I.A and § III (definition of "legal services"). And the relief recommended by the Freeh Report and the Show Cause Order (which this Court ultimately ordered in the Sanctions Order)— disqualification of Plaintiffs from representing *Deepwater Horizon* claimants or collecting fees from *Deepwater Horizon* claimants—is not a demand for money or services but rather a prohibition *against* Plaintiffs performing services or receiving money. Under identical policy language, the *Pias* court held that a dispute over legal fees does not involve a "claim" for "legal services." *Pias*, 2013 WL 4012709, at *5.

Nor does an investigation or request for a response from the insured constitute a "claim" under circumstances similar to those here. In *Doeren Mayhew & Co., P.C. v. CPA Mutual Insurance Co. of America Risk Retention Group*, No. 05-71782, 2007 WL 118939 (E.D. Mich. Jan. 10, 2007), a court rejected an insured's contention that an investigation constitutes a "claim" where it calls for the insured to act for its own benefit, rather than performing "services" for

-10-

others.  In that case, the Securities and Exchange Commission (the "SEC") filed an action against the insured accounting firm regarding its work for a client that had published fraudulent financial statements.  *Id.* at *1.  The insured firm asserted that the SEC proceeding was a "claim" under its professional liability policy in part because the insured's settlement with the SEC outlining policies and procedures for the firm to implement constituted "a written demand for services."  *Id.* at *6.  The court disagreed, relying on dictionary definitions of the term "services" as "employment duties or work for another."  *Id*.  The court concluded that "[t]he commonality in the definitions of the word 'service' is that a service is done directly for the benefit of others."  *Id*.  The undertakings in the SEC settlement agreement, however, were acts "for the direct benefit of [the insured]."  *Id.*

Likewise, in *Chalk v. Trans Power Manufacturing, Inc.*, 451 N.W.2d 770, 771 (Wis. Ct. App. 1989), a court held that a request that an attorney provide information on a legal matter the attorney had handled is not a "demand for services."  The insured attorney drafted legal documents in a fraudulent windmill scheme that led to two governmental inquiries.  *Id*.  Governmental entities asked the attorney to provide information and documents relating to the scheme.  The court held that the demands did not constitute a "demand for services" because they did not "seek[] []or suggest[] the need for remedial action relating to allegations of errors and omissions covered by [the subject] policy."  *Id.* at 775.  The court rejected the claimants' argument that a claim is made "whenever an attorney is requested, by anyone, to provide any information in connection with a legal matter on which the attorney has worked."  *Id*.  Instead, the "'demand for money or services' that will constitute a claim under the [subject] policy must

-11-

in some manner relate to remedying the 'wrong' – the alleged malpractice – either to correct it or compensate for it." *Id.*[3]

The Freeh Corruption Investigation was not a "demand for services" under Plaintiffs' legal malpractice Policy. It was an investigation of Plaintiffs' role in the submission of fraudulent claims to the DH Settlement Program. Plaintiffs' obligation to respond to investigation requests does not implicate coverage under the Policy. And nothing in the cases cited by Plaintiffs dictates a different result or remotely reaches the level of judicial estoppel. In *Continental Casualty Co. v. Jewell, Moser, Fletcher & Holleman*, No. 04cv2309, 2005 WL 1925964, *2 (E.D. Ark. Aug. 11, 2005), Continental secured a ruling on the unremarkable proposition that a legal malpractice complaint filed by a former client against an insured attorney was a claim under the attorney's legal malpractice policy. Likewise, in *Simpson & Creasy, P.C. v. Continental Casualty Co.*, 770 F. Supp. 2d 1351, 1356-57 (S.D. Ga. 2011), a court deemed a claim a letter from a former client firing her attorney and demanding a copy of her file so that she could determine whether the attorney had erred in his representation of her. The requests made on Plaintiffs in this case – to appear for an interview and produce documents – are not comparable to the demands for "services" made on the insured attorneys by their dissatisfied former clients in *Jewell* and *Simpson & Creasy*. Plaintiffs' effort to paint Continental's current position as inconsistent with its prior positions is ineffective.

---

[3] *See also, e.g., Trice v. Emp'rs Reinsurance Corp.*, 124 F.3d 205, 1997 WL 449736, at *3 (7th Cir. 1997) ("[A]n actual claim is distinguished from an 'event' which could give rise to an actual claim in the future. Requests for information – even if they allude specifically to the possibility of a lawsuit – do not constitute a demand for money or services within the meaning of a claims-made policy.") (internal citations and quotations omitted) (alteration in original); *Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*, 32 F. Supp. 2d 219, 228-29 (E.D. Pa. 1998) (a communication does not constitute a "demand for money or services" where it did not demand that the insured law firm "take the requisite affirmative action in correcting the alleged wrong or legal malpractice committed by [one of its attorneys]").

In sum, because the Freeh Corruption Investigation is not a "claim" under the Policy, Continental has no duty to defend or indemnify Plaintiffs.  *See Elliott v. Cont'l Casualty Co.*, 949 So. 2d 1247, 1255 (La. 2007) ("Because we do not find that a 'claim' exists, there is no duty to defend.").

### D.     CNA Financial is entitled to judgment as a matter of law.

Finally, in any event, the Court should deny Plaintiffs' motion as to CNA Financial and dismiss CNA Financial as a defendant because Plaintiffs fail to raise any argument against it. Nor could they reasonably assert any argument.  CNA Financial did not issue the Policy to The Andry Law Group and owes no duty or legal obligation whatsoever to Plaintiffs.  The only insurer identified on the Policy is Continental.  *See* Policy, Declarations ("Insurance is provided by Continental Casualty Company.").  CNA Financial is not a party to the insurance contract, and so Plaintiffs are not in privity of contract with CNA Financial and cannot maintain a breach of contract or declaratory judgment claim against CNA Financial.  *See, e.g.*, *Thomas v. Livingston Parish Sheriff's Office*, 923 So. 2d 662, 668 (La. Ct. App. 2005) (no cause of action is stated under a breach of contract theory when the parties are not in privity); *Sanborn v. Oceanic Contractors, Inc.*, 430 So. 2d 232, 233 (La. Ct. App. 1983), *aff'd in pertinent part, rev'd on other grounds*, 448 So. 2d 91 (La. 1984) ("Absent privity of contract, a cause of action cannot be asserted based on breach of contract . . . ."); *Willis v. Tunica Hardwood Co.*, 347 So. 2d 1300, 1302 (La. Ct. App. 1977) (one who is not a party to a contract cannot be held liable for the breach thereof).

Moreover, CNA Financial is not an insurer in Louisiana or anywhere in the world.  *See* David B. Lehman Decl., ¶¶ 6-8.  CNA Financial is a publicly-traded Delaware-incorporated holding company with its principal place of business in Chicago, Illinois.  *See id.*, ¶ 2.  CNA Financial owns the registered service mark "CNA."  *See id.*, ¶ 4.  Defendant Continental uses the

CNA service mark in its insurance underwriting and claims activities.  *See id.*  However, although CNA Financial indirectly owns Continental and other subsidiary insurers, CNA Financial is not itself a licensed insurer.  *See id.,* ¶¶ 3, 5-6.  CNA Financial has never issued any insurance policies, including the Policy at issue here.  *See id.,* ¶ 7.  It has never charged or received any insurance premiums in connection with the sale of insurance policies, including the Policy at issue here.  *See id.,* ¶ 8.  CNA Financial has never hired claims adjusters or otherwise adjusted, settled, investigated, or paid any insurance claims, including the Freeh Corruption Investigation.  *See id.,* ¶¶ 9-11.  CNA Financial has had no direct or indirect contact with Plaintiffs concerning their claims or any of the facts underlying the Petition.  *See id.,* ¶ 17.

In sum, there is no legal basis for Plaintiffs to file suit against CNA Financial, and any claim for breach of contract or for declaratory judgment against CNA Financial fails as a matter of law.

## IV.    CONCLUSION

For the reasons discussed above and in Continental's motion for summary judgment, the Court should deny Plaintiffs' motion and enter summary judgment in favor of Defendants. Continental has no duty to defend or indemnify Plaintiffs because the Freeh Corruption Investigation did not seek covered "damages," and it was not a "claim" under the Policy.  And no matter how the Court rules on those issues, CNA Financial is entitled to summary judgment because it is an improperly named party.

Dated: June 19, 2018

*Of Counsel:*
**RICHARD A. SIMPSON**
D.C. Bar No. 411893
(admitted *pro hac vice*)
**BENJAMIN C. EGGERT (T.A.)**
D.C. Bar No. 474218
(admitted *pro hac vice*)
**WILEY REIN LLP**
1776 K Street NW
Washington, DC  20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email:
rsimpson@wileyrein.com
beggert@wileyrein.com

Respectfully submitted,

By: **/s/ David S. Daly**
**DAVID S. DALY** (#20774)
**FILOT LLC**
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504) 599-8329
Facsimile: (504) 599-8100
Email: ddaly@frilot.com

*Counsel for Defendants CNA Financial Corporation and Continental Casualty Company*

**CERTIFICATE OF SERVICE**

      I certify that on June 19, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                            /s/ Richard A. Simpson
                                            Richard A. Simpson