**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,<br><br>                              **Plaintiffs,**<br><br>*This Document Relates To:*<br>**The Andry Law Group, et al. v. CNA Financial, et al.,**<br>**Civil Action No. 2:14-cv-600** | **MDL 2179**<br>**SECTION: "J" (1)**<br>**JUDGE BARBIER**<br>**MAGISTRATE JUDGE WILKINSON** |

<u>**DEFENDANT CONTINENTAL CASUALTY COMPANY'S RESPONSE TO
PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1,

Defendant Continental Casualty Company[1] ("Continental") submits this response to the

Statement of Material Facts Not In Dispute (the "Statement") submitted by Plaintiffs Jonathan

Andry and The Andry Law Group, LLC (together, "Plaintiffs") in support of their Motion for

Partial Summary Judgment (the "Motion").  Continental sets forth each statement of fact that

Plaintiffs contend is material and undisputed, along with Continental's response thereto:

1.      On January 18, 2013, The Andry Law Group, LLC, and Jonathan B. Andry
entered into an agreement with Continental to provide professional liability insurance for
Jonathan B. Andry, The Andry Law Group, LLC, and its associates.

**Defendants' Response:**  Continental agrees that it issued to The Andry Law Group, LLC
a lawyers professional liability policy for the policy period of January 1, 2013 to January 1, 2014

---

[1] As set forth in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment, CNA Financial Corporation ("CNA Financial") is not a proper party to this dispute because it is not a party to the insurance policy at issue, never sold insurance of any kind to Plaintiffs, nor has it ever adjusted any insurance claim or made any coverage decision regarding Plaintiffs.  For these same reasons, CNA Financial has no knowledge or information about any of the statements in Plaintiff's Statement of Undisputed Material Facts, and on that basis submits no response.  To the extent a response is required, CNA Financial adopts the responses to Plaintiffs' Statement set forth herein by Continental.

(the "Policy").  Continental did not enter into an agreement with Andry, but Continental agrees that the Policy affords potential insurance coverage to Andry, who is an insured under the Policy. Continental further responds that the Policy is a document that speaks for itself.  *See* Policy (Dkt. No. 18-3).

2.      In exchange for valuable consideration, Continental issued Lawyers Professional Liability Policy No. 425308379 to the Andry Law Group, LLC for the policy period of January 1, 2013 to January 1, 2014 ("the Policy").

**Defendants' Response:**  Continental agrees that it issued Lawyers Professional Liability Policy No. 425308379 to The Andry Law Group, LLC for the policy period of January 1, 2013 to January 1, 2014 (the "Policy").

3.      The Policy has a $3 million per claim and aggregate limit of liability, with a $10,000 per claim deductible, inclusive of claims expenses.

**Defendants' Response:**  Continental agrees that, subject to all its terms, conditions and exclusions, the Policy has a $3 million per claim and aggregate limit of liability and is subject to a $10,000 per claim deductible, inclusive of claims expenses.  *See* Policy (Dkt. No. 18-3), Declarations, Items 3 & 4.

4.      Pursuant to its policy, Continental obligated itself to provide Plaintiffs with a defense for all claims or "demands for service" arising out of an act or omission in the rendering of or failure to render legal services lodged against Plaintiffs.

**Defendants' Response:**  Continental agrees that, subject to all its terms, conditions and exclusions, the Policy provides certain "Coverage" and "Defense" as set forth in the Policy's Insuring Agreement.  Continental further states that the Policy is a document that speaks for itself and disputes that Paragraph 4 of Plaintiffs' Statement fully and accurately sets forth Continental's obligations under the Policy.  *See generally* Policy (Dkt. No. 18-3).

5.      The Policy's Insuring Agreement included the following covenant:

> "The Company shall have the right and duty to defend in the Insured's name and on the Insured's behalf a claim covered by this Policy even if any of the allegations of the claim are groundless, false or fraudulent."

**Defendants' Response:**  Continental agrees that Paragraph 5 of Plaintiffs' Statement accurately quotes Section I.B. of the Policy.  *See* Policy (Dkt. No. 18-3), Section I.B.

6.      Continental defined the term claim in it's [sic] Policy as follows:

> "**Claim** means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render **legal services**."

**Defendants' Response:**  Continental agrees that Paragraph 6 of Plaintiffs' Statement accurately quotes from Section III of the Policy.  *See* Policy (Dkt. No. 18-3), Section 1II.

7.      Jonathan Andry and the Andry Law Group, LLC ("ALG") are named insureds under the Policy.

**Defendants' Response:**  Continental agrees that The Andry Law Group, LLC, is the named insured under the Policy.  *See* Policy (Ex. 18-3), Declarations, Item 1.  Continental disputes that Jonathan Andry is a "named insured," *see id.*, but agrees that Jonathan Andry is an "insured" under the Policy, *see id.*, Section III (explaining that "insured" includes any lawyer who is a partner, member or employee of the "named insured," *i.e.*, The Andry Law Group, LLC, during the policy period).

8.      During the Policy period, Plaintiffs engaged in the representation of individuals and businesses harmed by the BP Deepwater Horizon explosion and oil spill that occurred on or about April 20, 2010.  *In re: Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179.

**Defendants' Response:**  Undisputed, although Continental notes that Plaintiffs have not cited to any competent evidence to support the facts set forth in Paragraph 8 of their Statement.

9.      Plaintiffs [sic] representation of Oil Spill clients required the presentation of claims for compensation pursuant to the Deepwater Horizon Economic and Property Settlement Agreement As Amended on May 2, 2012 (the "Settlement Agreement").

**Defendants' Response:**  Undisputed, although Continental notes that Plaintiffs have not cited to any competent evidence to support the facts set forth in Paragraph 9 of their Statement.

10.      The Settlement Agreement established the Deepwater Horizon Court-Supervised Settlement Program (the "CSSP"), administered by the Claims Administrator Patrick Juneau, who directed the settlement process through the Claims Administrator's Office (the "CAO").

**Defendants' Response:**  Undisputed, although Continental notes that Plaintiffs have not cited to any competent evidence to support the facts set forth in Paragraph 10 of their Statement.

11.      U.S. District Judge Carl Barbier retained jurisdiction of the entire Deepwater Horizon Economic and Property Settlement process, with the Claims Administrator's Office regularly reporting to the Court.

**Defendants' Response:**  Undisputed, although Continental notes that Plaintiffs have not cited to any competent evidence to support the facts set forth in Paragraph 11 of their Statement.

12.      One of the Claims Administrator's ("CA") paramount functions was to interpret portions of the Settlement Agreement for the parties.

**Defendants' Response:**  Undisputed, although Continental notes that Plaintiffs have not cited to any competent evidence to support the facts set forth in Paragraph 12 of their Statement.

13.     From the outset, the primary defendant BP Exploration & Production, Inc. ("BP") objected to many of the CA's interpretations of the Settlement Agreement, and sought intervention from Judge Barbier instructing a different interpretation of the payment provisions of the Settlement Agreement.

**Defendants' Response:**  Continental lacks information or knowledge sufficient to agree with or dispute the facts asserted in Paragraph 13 of Plaintiffs' Statement.  Continental also disagrees that the facts set forth in Paragraph 13 of the Statement are material to this coverage dispute.  Continental further notes that Plaintiffs have not cited to any competent evidence to support the facts set forth in Paragraph 13 of their Statement.

14.     Judge Barbier's denial of BP's requests resulted in numerous appeals to the U.S. Court of Appeal for the Fifth Circuit, and BP's appeal efforts continue as of the date of filing this motion.

**Defendants' Response:**  Continental lacks information or knowledge sufficient to agree with or dispute the facts asserted in Paragraph 14 of Plaintiffs' Statement.  Continental also disagrees that the facts set forth in Paragraph 14 of the Statement are material to this coverage dispute.  Continental further notes that Plaintiffs have not cited to any competent evidence to support the facts set forth in Paragraph 14 of their Statement.

15.     BP established a "hotline" to allow the reporting of suspected transgressions in the administration of the settlement.

**Defendants' Response:**  Continental lacks information or knowledge sufficient to agree with or dispute the facts asserted in Paragraph 15 of Plaintiffs' Statement.  Continental also disagrees that the facts set forth in Paragraph 15 of the Statement are material to this coverage dispute.  Continental further notes that Plaintiffs have not cited to any competent evidence to assert the facts set forth in Paragraph 15 of their Statement.

16.     On or about May 28, 2013, BP claimed it received a tip from a "confidential informant" that Lionel Sutton was receiving improper attorney referral fee payments for BP claims while he was also employed with the Claims Administrator's Office.

**Defendants' Response:**  Continental lacks information or knowledge sufficient to agree with or dispute the facts asserted in Paragraph 16 of Plaintiffs' Statement.  Continental also disagrees that the facts set forth in Paragraph 16 of the Statement are material to this coverage dispute.  Continental further notes that Plaintiffs have not cited to any competent evidence to support the facts set forth in Paragraph 16 of their Statement.

17.     Upon learning of this report and in furtherance of its internal compliance program, the CAO instigated an investigation of Mr. Sutton and his wife Christine Reitano and reported the findings to Judge Barbier in a closed door meeting on or about June 20, 2013.

**Defendants' Response:**  Continental lacks information or knowledge sufficient to agree with or dispute the facts asserted in Paragraph 17 of Plaintiffs' Statement.  Continental also disagrees that the facts set forth in Paragraph 17 of the Statement are material to this coverage

dispute.  Continental further notes that Plaintiffs have not cited to any competent evidence to support the facts set forth in Paragraph 17 of their Statement.

18.     Judge Barbier determined, in great part due to BP's urging, that an independent investigation would be undertaken.

**Defendants' Response:**  Continental agrees only that, on or about July 2, 2013, Judge Barbier ordered an investigation.  Continental lacks information or knowledge sufficient to agree with or dispute the remaining facts asserted in Paragraph 18 of Plaintiffs' Statement.  Continental further notes that Plaintiffs have not cited to any competent evidence to support the remaining facts asserted in Paragraph 18 of their Statement.

19.     On July 2, 2013, Judge Barbier appointed former FBI Director Louis J. Freeh as Special Master, pursuant to Federal Rule of Civil Procedure 53, to conduct an expansive investigation into the allegations concerning the two CAO lawyers and to make recommendations to the Court based upon his findings.

**Defendants' Response:**  Undisputed.

20.     On July 17, 2013, the Court ordered Mr. Andry to appear just two days later for hearing on July 19, 2013, to explain the rendering of legal services for claimants before the Deepwater Horizon Court-Supervised Settlement Program.

**Defendants' Response:**  Continental agrees that the Court issued an order on July 17, 2013, setting a hearing on BP's Motion for an Emergency Preliminary Injunction to Suspend Payments from the Court Supervised Settlement Program Pending Special Master Freeh's Investigation and report.  *See* Order of July 17, 2013 (Dkt. No. 18-5).  Continental disputes the remaining facts asserted in Paragraph 20 of Plaintiffs' Statement.  Continental further notes that Plaintiffs have not cited to any competent evidence to support the remaining facts asserted in Paragraph 20 of their Statement.

21.     In compliance with the July 17, 2013 Order, Mr. Andry appeared for hearing on July 19, 2013 through counsel.

**Defendants' Response:**  Continental agrees only that Mr. Andry appeared for the hearing on July 19, 2013, through counsel.  *See* Transcript of July 19, 2013, Hearing (Dkt. No. 18-6).

22.     After that hearing, and with no finding of fault against Mr. Andry or any other parties, the Court allowed the Special Master's investigation to continue.

**Defendants' Response:**  Continental agrees only that the Special Master continued his investigation following the July 19, 2013 hearing.  *See generally* Freeh Report (Dkt. No. 18-7).

23.     The Special Master thereafter launched a compulsory inquest requiring that Plaintiffs perform various services, such as personally appearing for a sworn interview and producing thousands of pages of documents.

**Defendants' Response:**  Continental agrees that, as part of his investigation, the Special Master interviewed Andry and subpoenaed documents from Plaintiffs.  *See generally* Freeh Report (Dkt. No. 18-7).

24.     Plaintiffs were obligated to comply with the Court's demands for services pursuant to numerous codes of professional conduct; including the ABA Model Rules of Professional Conduct related to Candor Toward the Tribunal, the ABA Model Code of Professional Responsibility related to the Disclosure of Information to Authorities, the Rules of Professional Conduct of the Louisiana State Bar Association, and Local Rule 83.2.3 of the Local Civil Rules of the United States District Court for the Eastern District of Louisiana.

**Defendants' Response:**  Paragraph 24 of Plaintiffs' Statement sets forth conclusions of law to which no responses are required.

25.     The Special Master conducted a 66-day investigation with which Plaintiffs fully cooperated.

**Defendants' Response:**  Continental agrees that the Special Master conducted a 66-day investigation.  *See generally* Freeh Report (Dkt. No. 18-7).   Continental lacks information or knowledge sufficient to agree with or dispute the remaining facts asserted in Paragraph 25 of Plaintiffs' Statement.  Continental also disagrees that the remaining facts set forth in Paragraph 25 of the Statement are material to this coverage dispute.  Continental further notes that Plaintiffs have not provided any competent evidence to support the remaining facts asserted in Paragraph 25 of their Statement.

26.     The retention and assistance of outside counsel was a necessary component to assure adequate compliance with these demands for service.

**Defendants' Response:**  Paragraph 26 of Plaintiffs' Statement sets forth a conclusion of law to which no response is required.

27.     Mr. Andry appeared for his sworn interview represented by counsel on July 30, 2013.

**Defendants' Response:**  Undisputed.

28.     The Special Master presented Mr. Andry with a subpoena duces tecum that required him to compile and produce thousands of pages of emails and other documents.

**Defendants' Response:**  Continental agrees that the Special Master served Mr. Andry with a subpoena duces tecum.  Continental lacks information or knowledge sufficient to agree with or dispute the remaining facts asserted in Paragraph 28 of Plaintiffs' Statement.  Continental further notes that Plaintiffs have not cited to any competent evidence to support the remaining facts asserted in Paragraph 28 of their Statement.

29.     The Special Master demanded that services be performed by employees of Mr. Andry's legal practice, including the requirement that various staff members appear to give their own sworn statements.

**Defendants' Response:**  Continental lacks information or knowledge sufficient to agree with or dispute the facts asserted in Paragraph 29 of Plaintiffs' Statement.  Continental also disputes the legal conclusion that requiring an employee to provide evidence in connection with an investigation of corruption constitutes providing "services."  Continental further notes that Plaintiffs have not cited to any competent evidence to support the facts asserted in Paragraph 29 of their Statement.

30.     Plaintiffs complied with each Court and/or Special Master demand in a timely fashion, and Mr. Andry personally paid for the retention of outside counsel to meet these demands for service.

**Defendants' Response:**  Continental agrees only that Mr. Andry retained counsel in connection with the Special Master's investigation.  Continental lacks information or knowledge sufficient to agree with or dispute the remaining facts asserted in Paragraph 30 of Plaintiffs' Statement.  Continental also disagrees that the remaining facts set forth in Paragraph 30 of the Statement are material to this coverage dispute.  Continental further notes that Plaintiffs have not cited to any competent evidence to support the remaining facts asserted in Paragraph 30 of their Statement.

31.     On September 6, 2013, the Special Master issued a report containing numerous allegations and recommendations, including recommendations focused on Plaintiffs' rendering of legal services for clients before the Deepwater Horizon Court-Supervised Settlement Program.

**Defendants' Response:**  Continental agrees that the Special Master issued his report on September 6, 2013, and that the report is material to this coverage dispute.  Continental further states that the Special Master's report is a document that speaks for itself and disputes that Paragraph 31 of Plaintiffs' Statement fully and accurately sets forth the contents of that report, including by omitting reference to the Special Master's finding that Plaintiffs had engaged in serious misconduct.  *See* Freeh Report (Dkt. No. 18-6).

32.     On September 6, 2013, the Court ordered Plaintiffs to respond to the proposed recommendations of the Special Master.

**Defendants' Response:**  Undisputed.

33.     The Court's Order required Plaintiffs to perform additional services (over and above responding to the Special Master's Report) to maintain compliance with the Court's authority.

**Defendants' Response:**  Denied to the extent Plaintiffs assert that they were required to perform "services" within the meaning of the Policy.  Continental further states that Paragraph 33 of Plaintiffs' Statement sets forth conclusions of law to which no responses are required.

40.     On November 21, 2013, Mr. Andry responded to the defendants' October 22, 2013, letter, and furnished the requested information (including the Special Master's Report and the Court's Order).

**Defendants' Response:**  Continental agrees that Mr. Andry sent a letter to Continental dated November 21, 2013, and also provided Continental with copies of the Freeh Report and the Show Cause Order on or about November 21, 2013.

41.     In the November 21, 2013 letter, Mr. Andry explained why the Court's demand for services triggered coverage under the Policy, all in fulfillment of conditions precedent of the Policy.

**Defendants' Response:**  Continental agrees that Mr. Andry sent a letter to Continental dated November 21, 2013., and that the letter is material to this coverage dispute.  Continental further states that the November 21, 2013 letter is a document that speaks for itself and denies that Paragraph 41 of Plaintiffs' Statement fully and accurately characterizes the letter.  *See* Letter of November 21, 2013 (Dkt. No. 18-10).

42.     By letter dated January 7, 2014, Continental categorically denied it owed coverage under the Policy because there had "been no claim made against an Insured."

**Defendants' Response:**  Continental agrees that Continental sent a letter to Mr. Andry dated January 7, 2014, and that the letter is material to this coverage dispute.  Continental further states that the letter of January 7, 2014 is a document that speaks for itself and denies that Paragraph 42 of Plaintiffs' Statement fully and accurately characterizes its terms.  *See* Letter of January 7, 2014 (Dkt. No. 18-11).

43.     Continental has not defined the term "service" in its Policy.

**Defendants' Response:**  Continental agrees that the Policy does not specifically define the term "service," (*see* Policy (Dkt. No. 18-3)), and notes that, under Louisiana law, undefined terms are given their generally prevailing meaning.

44.     Black's Law Dictionary defines the term "service," as it relates to contracts, as a "[d]uty or labor to be rendered by one person to another, the former being bound to submit his will to the direction and control of the latter. The act of serving the labor performed or the duties required." "Performance of labor for benefit of another, or at another's command...." *Black's Law Dictionary* 1368 (6th Ed. 1990).

**Defendants' Response:**  Continental agrees that Paragraph 44 of Plaintiffs' Statement accurately quotes from the sixth edition Black's Law Dictionary, but Continental notes that the dictionary speaks for itself and, further, the discussion of a term purportedly defined by a dictionary is legal argument that is not appropriate for a statement of purported undisputed facts.

45.     Continental has not defined the term "liable" in its Policy.

**Defendants' Response:**  Continental agrees that the Policy does not specifically define the term "liable," (*see* Policy (Dkt. No. 18-3)), and notes that, under Louisiana law, undefined terms are given their generally prevailing meaning.

46.     In Louisiana, "'liability' is defined as 'the quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil

remedy or criminal punishment.'" *Hoffman v. Travelers Indem. Co. of America*, --- So.3d ----, 2014 WL 1800079 *3 (La.,2014).

**Defendants' Response:**  Continental agrees that Paragraph 46 of Plaintiffs' Statement accurately quotes Page *3 of the decision in *Hoffman v. Travelers Indem. Co. of America*, but Continental notes that the *Hoffman* decision speaks for itself and, further, the discussion of a term purportedly defined by a decision is legal argument that is not appropriate for a statement of purported undisputed facts.

Dated: June 19, 2018

*Of Counsel:*
**RICHARD A. SIMPSON**
D.C. Bar No. 411893
(admitted *pro hac vice*)
**BENJAMIN C. EGGERT (T.A.)**
D.C. Bar No. 474218
(admitted *pro hac vice*)
**WILEY REIN LLP**
1776 K Street NW
Washington, DC  20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email:
rsimpson@wileyrein.com
beggert@wileyrein.com

Respectfully submitted,

By: **/s/ David S. Daly**
**DAVID S. DALY** (#20774)
**FILOT LLC**
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504) 599-8329
Facsimile: (504) 599-8100
Email: ddaly@frilot.com

*Counsel for Defendants CNA Financial Corporation and Continental Casualty Company*