# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,**<br><br>　　　　　　　　**Plaintiffs,**<br><br>*This Document Relates To:*<br>**The Andry Law Group, et al. v. CNA Financial, et al.,**<br>**Civil Action No. 2:14-cv-600** | **MDL 2179**<br>**SECTION: "J" (1)**<br>**JUDGE BARBIER**<br>**MAGISTRATE JUDGE WILKINSON** |

### DEFENDANTS CNA FINANCIAL CORPORATION'S AND CONTINENTAL CASUALTY COMPANY'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

*Of Counsel:*
**RICHARD A. SIMPSON**
D.C. Bar No. 411893
(admitted *pro hac vice*)
**BENJAMIN C. EGGERT (T.A.)**
D.C. Bar No. 474218
(admitted *pro hac vice*)
**WILEY REIN LLP**
1776 K Street NW
Washington, DC  20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email:
rsimpson@wileyrein.com
beggert@wileyrein.com

**DAVID S. DALY** (#20774)
**FRILOT LLC**
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504) 599-8329
Facsimile: (504) 599-8100
Email: ddaly@frilot.com

*Counsel for Defendants CNA Financial Corporation and Continental Casualty Company*

I.     **INTRODUCTION**

As set forth in Defendants' opening brief in support of their motion for summary judgment (D.E. 13080), there is no defense or indemnity coverage under the Policy for the Freeh Corruption Investigation because that matter did not seek any relief from Plaintiffs that falls within the Policy's definition of "damages."[1]  In particular, as against Plaintiffs, the Freeh Corruption Investigation sought (1) injunctive relief in the form of an order precluding Plaintiffs from representing claimants before the DH Settlement Program as a form of "sanctions"; and (2) the return (or "claw[ing] back") of legal fees paid to Plaintiffs in connection with their representation of DH Settlement Program claimants as "restitution."  Each of these forms of relief is expressly excluded from the Policy's definition of "damages," such that the Freeh Corruption Investigation did not present the possibility of indemnity coverage.  In such scenarios, Louisiana law is clear that an insurer has no duty to defend.  *E.g.*, *Pias v. Cont'l Cas. Ins. Co.*, No. 2:13-CV-00182-PM-KK, 2013 WL 4012709, at *8 (W.D. La. Aug. 6, 2013) (where relief sought by former client against insured attorney "cannot constitute covered damages under the policy . . . Continental did not owe a duty to defend or indemnify").

Nothing in Plaintiffs' opposition brief (D.E. 24625) changes the result compelled by the plain language of the Policy and Louisiana law.  Plaintiffs argue that the case law Continental relies on is inapt because this case does not involve a "run-of-the-mill" fee dispute between an attorney and a client.  However, the fundamental proposition of Louisiana law that is relevant here – *i.e.*, that there is no duty to defend when the underlying matter seeks exclusively relief that

---

[1] Defendants use the same defined terms in this reply brief as they did in the opening memorandum of points and authorities in support of Defendants' motion for summary judgment. *See* D.E. 13080.

is not potentially covered by the subject insurance policy – applies regardless of whether the underlying matter involves an "ordinary" fee dispute or, like here, a corruption investigation initiated by the Court. Plaintiffs do not, and cannot, present any reasonable argument why any of the relief sought by the Freeh Corruption Investigation constitutes "damages," as that term is unambiguously defined by the Policy.

Finally, as explained in Defendants' motion for summary judgment and their opposition to Plaintiffs' motion for partial summary judgment (D.E. 24624), CNA Financial is not a party to the Policy and therefore owes no contractual or common law duties or obligations of any kind to Plaintiffs. Plaintiffs' argument that additional discovery is needed on this issue is meritless, as it is undisputed that there is no contractual privity between CNA Financial, on the one hand, and Plaintiffs, on the other. Moreover, the record is undisputed that CNA Financial is not an insurer and had no involvement in either the issuance of the Policy or the handling of Plaintiffs' request for coverage for the Freeh Corruption Investigation. CNA Financial is entitled to judgment as a matter of law.

**II.     ARGUMENT**

    **A.     The Freeh Corruption Investigation is not a "demand . . . for services."**

Plaintiffs first argue that that Defendants have not, and cannot, contest that the Freeh Corruption Investigation constitutes a "demand . . . for services" and therefore is a "claim" under the Policy. Although Continental did not affirmatively move for summary judgment on this issue, it incorporates by reference its arguments in Defendants' opposition to Plaintiffs' motion for partial summary judgment (D.E. 24624) explaining why (1) the Freeh Corruption Investigation did not demand that Plaintiffs perform any "services"; and (2) judicial estoppel does not apply here, including because Continental's interpretation of the phrase "demand . . . for

services" in this case is entirely consistent with the position it took in the cases cited by Plaintiffs.

> **B.   An insurer owes no duty to defend where a claim does not present the possibility of coverage, as recognized by Judge Minaldi in *Pias.***

It is black-letter law in Louisiana that a duty to defend arises only when the underlying pleading discloses a "possibility of liability under the policy." *Elliott v. Cont'l Cas. Co.*, 949 So. 2d 1247, 1252 (La. 2007). By contrast, there is no duty to defend where "the pleadings . . . do not reveal a possibility of liability under this policy," because there is "not a claim that would be covered by this policy." *Id.*; *see also Pias*, 2013 WL 4012709, at *6 ("[A]n insurer's duty to defend is not triggered where the pleadings . . . do not reveal a possibility of liability [because] there is not a claim that would be covered by [the] policy." (internal quotation marks and citation omitted)).

Plaintiffs do not seriously dispute this proposition. Plaintiffs instead ask the Court to ignore *Pias* because that case involved different facts; however, those different facts have no bearing on the legal rationale of *Pias*. In *Pias*, the insured attorney represented a client in a workers' compensation matter that settled. *Id.* at *2. When the attorney presented the client with a larger-than-expected accounting for its fees, the client retained new counsel, who filed a motion seeking (1) the return of all settlement funds held by the insured as fees; and (2) the imposition of sanctions against the attorney. *Id.* The insured sought coverage under his professional liability policy, which afforded coverage only for "damages," defined as "judgments, awards and settlements" but (as here) not including (1) "legal fees, costs and expenses paid or incurred or charged by [the insured], no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence

-3-

of any of the foregoing" or (2) "civil or criminal fines, sanctions, penalties or forfeitures." *Id.* at *1.

The *Pias* court issued two holdings. *First*, the court agreed with Continental that the fee dispute did not constitute a "claim" under the applicable policy because it did not arise from an "act or omission in the performance of legal services." *Id.* at *5. *Second*, the court concluded that the relief sought by the claimant in the fee dispute (*i.e.*, the return of legal fees and sanctions) did not constitute "damages" under the policy. *Id.* at *7. For both of these reasons, the court held that Continental had no defense or indemnity obligations in connection with the fee dispute. *Id.*

Contrary to Plaintiffs' contention, *Pias* does not apply only to "run-of-the-mill" fee disputes between an attorney and his former client. To the contrary, Judge Minaldi's second holding in *Pias* confirms the well-established legal principle that when an underlying matter exclusively seeks relief that is not covered by the subject policy's definition of "damages," there is no possibility of coverage and therefore no defense obligations are triggered. Because none of the relief sought in the Freeh Corruption Investigation against Plaintiffs constituted "damages," that matter did not present the possibility of coverage under the Policy, such that Continental had no defense obligations.

The district court's opinion in *Edwards v. Continental Casualty Co.*, No. 15–00168, 2015 WL 5009015 (W.D. La. Aug. 19, 2015) does not change this analysis, including because that decision was reversed in its entirety on appeal. In *Edwards*, the insured attorney represented a commercial driver in negotiating a settlement with the driver's employer relating to a job-related injury. *Id.* at *1. A year after the settlement, the employer sought to vacate the settlement based on allegations of fraudulent inducement by the driver. *Id.* The employer joined the insured

attorney as a defendant, asserting claims for restitution and unjust enrichment based on the attorney's receipt of fees from the fraudulently induced settlement. *Id.* Continental denied coverage under the attorney's professional liability policy based on two separate and independently sufficient grounds: (1) the employer's lawsuit, as to the attorney, did not arise "by reason of an act or omission in performance of legal services," as required to trigger the subject policy's insuring agreement; and (2) the restitution sought in the underlying action did not constitute "damages," as defined by the applicable policy. *Id.*

Although the district court in *Edwards* rejected both of Continental's arguments (in part by distinguishing *Pias* on its facts), *see id.* at *3-4, the Fifth Circuit reversed on appeal, concluding that the employer's claim against the insured attorney did *not* arise out of "an act or omission in the [performance] of legal services." 841 F.3d 360, 364 (5th Cir. 2016). Based on that conclusion (which was sufficient, standing alone, to determine that the subject policy did not afford defense or indemnity coverage), the Fifth Circuit did not reach the separate issue of whether the matter sought covered "damages." *See id. Edwards* therefore does not stand for the blanket proposition that *Pias* applies only in cases involving fee disputes between an attorney and a former client.

Plaintiffs' last-ditch effort to avoid summary judgment is to argue that this case is controlled by *Continental Casualty Co. v. Law Offices of Melvin James Kaplan*, 801 N.E.2d 992 (Ill. App. Ct. 2003). However, *Kaplan* (like *Pias*) actually supports Continental's entitlement to judgment as a matter of law, as it confirms that not one but "*two* requirements must be met in order to trigger coverage under" this Policy (which is substantively identical to the policy at issue in *Kaplan*). *First*, "the claim made against [the insured] in the underlying action must have arisen by reason of an act or omission in performance of legal services." *Id.* at 996. *Second*,

"the recovery sought in the underlying action must fall within the Policy's definition of damages." *Id.* Thus, *Kaplan* confirms that, even if (as Plaintiffs contend), the Freeh Corruption Investigation *does* constitute a "demand . . . for services" that arises "by reason of an act or omission in the performance of legal services" (which it does not), Continental's defense obligation is triggered *only* if the relief sought by the Freeh Corruption Investigation falls within the Policy's definition of "damages."

Plaintiffs' repeated refrain that the Freeh Corruption Investigation is not a "run-of-the-mill" fee dispute does not change the reality that each form of relief sought by that matter is expressly excluded from the Policy's clear and unambiguous definition of "damages." Indeed, Plaintiffs concede as much by never squarely addressing how the Policy's definition of "damages" could possibly be interpreted as encompassing either (1) an order prospectively precluding Plaintiffs from representing claimants before the DH Settlement Program as a "sanction" for their misconduct; or (2) an order directing Plaintiffs to return legal fees earned in connection with their past representation of clients who presented fraudulent claims to the DH Settlement Program as a form of restitution. *See generally* Plaintiffs' Opp'n (D.E. 24625). Nor do Plaintiffs argue that the Freeh Corruption Investigation contemplated any other relief as to them. *See id.* Continental therefore is entitled to judgment as a matter of law because the Freeh Corruption Investigation did not present any possibility of covered "damages."

   **C.** **<u>CNA Financial is entitled to judgment as a matter of law.</u>**

Plaintiffs implicitly concede that CNA Financial did not issue the Policy and therefore is not in contractual privity with Plaintiffs. *See id.* at 8. Nonetheless, Plaintiffs assert that CNA Financial could still be held liable for improper claims handling because (1) the Policy states that claims should be reported to "CNA Specialty Claims" and (2) the correspondence issued by Continental denying coverage for the Freeh Corruption Investigation was issued on letterhead

bearing the "CNA" service mark. *Id.* Plaintiffs thus contend that additional discovery is needed before the Court can determine whether CNA Financial is a proper party to this dispute. *Id.*[2]

Plaintiffs are wrong. The only counts asserted in Plaintiffs' complaint are for (1) breach of contract; and (2) declaratory judgment, seeking a determination as to whether the Policy affords coverage for the Freeh Corruption Investigation. As explained in Defendants' opening brief (D.E. 13080), it is axiomatic that a defendant who is not in contractual privity with the plaintiff cannot be held liable for breach of contract. Likewise, Plaintiffs' requested declaratory relief would only be binding on Continental, the entity that actually issued the Policy (a fact that Plaintiffs have not disputed). Thus, even if Plaintiffs were correct that CNA Financial was somehow involved in the claims handling for this matter (which they are not),[3] Plaintiffs have not asserted any sort of cause of action based on purportedly improper claims handling practices. CNA Financial is entitled to judgment as a matter of law.

---

[2] Despite their request for additional discovery, Plaintiffs did not file an affidavit or declaration as required by Fed. R. Civ. P. 56(d) to explain why it cannot present facts essential to justify its opposition to Defendants' motion for summary judgment.

[3] As set forth in the Declaration of David B. Lehman submitted in support of Defendants' opposition to Plaintiffs' motion for partial summary judgment, CNA Financial is not an insurer in Louisiana or anywhere in the world. D.E. 24624-2, David B. Lehman Decl., ¶¶ 6-8. CNA Financial owns the registered service mark "CNA," and Continental, an indirect CNA Financial subsidiary, uses the "CNA" service mark in its insurance underwriting and claims activities. *Id.* ¶ 4. However, CNA Financial is not itself a licensed insurer; has never issued any insurance policies, including the Policy at issue here; has never charged or received any insurance premiums in connection with the sale of insurance policies, including the Policy at issue here; has never hired claims adjusters or otherwise adjusted, settled, investigated, or paid any insurance claims, including the Freeh Corruption Investigation; and has had no direct or indirect contact with Plaintiffs concerning their claims or any of the facts underlying the Petition. *Id.* ¶¶ 6-12, 14-17.

### III.    CONCLUSION

For the reasons discussed in Defendants' motion for summary judgment (D.E. 13080), their opposition to Plaintiffs' motion for partial summary judgment (D.E. 24624), and above, Continental has no duty to defend or indemnify Plaintiffs because the Freeh Corruption Investigation did not seek covered "damages" and was not a "claim" under the Policy.  And, no matter how the Court rules on those issues, CNA Financial is entitled to summary judgment because it is an improperly named party.


Dated: June 29, 2018                                            Respectfully submitted,

*Of Counsel:*                                                          By: **/s/ David S. Daly**
**RICHARD A. SIMPSON**                                **DAVID S. DALY** (#20774)
D.C. Bar No. 411893                                           **FRILOT LLC**
(admitted *pro hac vice*)                                     1100 Poydras Street
**BENJAMIN C. EGGERT (T.A.)**                   Suite 3700
D.C. Bar No. 474218                                           New Orleans, LA 70163
(admitted *pro hac vice*)                                     Telephone: (504) 599-8329
**WILEY REIN LLP**                                        Facsimile: (504) 599-8100
1776 K Street NW                                               Email: ddaly@frilot.com
Washington, DC  20006
Telephone: (202) 719-7000                              *Counsel for Defendants CNA Financial*
Facsimile: (202) 719-7049                                *Corporation and Continental Casualty*
Email:                                                                    *Company*
rsimpson@wileyrein.com
beggert@wileyrein.com

## **CERTIFICATE OF SERVICE**

      I certify that on June 29, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                              /s/ Richard A. Simpson
                                              Richard A. Simpson