UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION J |
| This document relates to: | JUDGE BARBIER |
| *Park National Corporation, et al. v. BP Exploration & Production, Inc., et al.* Case No. 2:13-cv-02862 | MAGISTRATE JUDGE WILKINSON |

___

**MEMORANDUM IN SUPPORT OF
PLAINTIF'S MOTION TO ALTER OR AMEND JUDGMENT**

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Plaintiff Park National Corporation moves this Honorable Court to reconsider its July 10, 2018 order dismissing Plaintiff's case with prejudice for failure to comply with Pretrial Order 65 ("PTO 65"). The failure to comply with PTO 65 was due to the inadvertence and excusable neglect of the undersigned counsel. The Plaintiff desires to have its case move forward, be adjudicated on its merits, and respectfully submits that reconsideration of the Court's July 10, 2018 order is necessary to prevent a manifest injustice.

**BACKGROUND**

On January 11, 2018 the Court issued PTO 65. The order required all remaining B1 bundle cases in the litigation to file verified statements regarding causation and damages by April 11, 2018. On May 25, 2018 the Court issued an order to show cause for remaining B1 Plaintiffs who failed to comply with PTO 65. Plaintiff, through the undersigned counsel, did not respond to the Court's PTO 65 or May 25, 2018 Order to Show Cause.

Undersigned counsel for the Plaintiff states the following:

On the evening of July 12, 2018 I was forwarded the email notification of the Court's dismissal in case 2:13-cv-02695. I quickly realized a similar order had been issued, though not entered yet, in this Plaintiff's case. Knowing that it was counsel's and Plaintiff's intention to comply with all Court Orders and continue with litigation I became terribly distraught, realizing that I had inadvertently overlooked the application of PTO 65 to this Plaintiff's claims and the subsequent Order to Show Cause. I immediately recognized the grave prejudice this had caused my client despite my efforts to diligently pursue its claims.

Throughout this litigation, I have personally been involved in the resolution of ninety-six litigation cases brought by claimants who either opted out or were excluded from the Deepwater Horizon Economic and Property Damages Settlement Class. Of the ninety-eight total opt out or excluded claims my firm represented, seventeen involved claims made by banks (including this Plaintiff). The docket will reflect that the litigation claims in which I was personally involved and responsible for were handled competently and with respect to this Court's Pretrial and Case Management Orders.

For all purposes, I was the lead lawyer on the Plaintiff's case. I spearheaded the efforts to develop a causation model applicable to banking claimants, consulted with and retained experts (including former bank auditors) to assist in quantifying the banking claimants losses, and drafted the Presentment and Complaint filed in this case. Furthermore, I have previously met with the Neutrals in an effort to resolve the Plaintiff's claims. The discussions, which involved the merits of all seventeen banking claimants I represent, took place over many hours. These efforts were productive and led to the resolution of fifteen of the seventeen bank claims.

While this Plaintiff was unable to resolve its claims during the initial Neutrals settlement process, substantial progress toward a resolution was made. During the meeting I explained to

the Neutrals how the sum certain amount stated in the Presentment was derived. This included a description of the methodology utilized to quantify the Plaintiff's damages, dates of when the damages were sustained, specific evidence relied upon in formulating the damages, as well as a description of the causal link between the Macondo Well incident and the Plaintiff's injuries under the Oil Pollution Act. While the names of the Plaintiff's consulting experts were not disclosed, it was apparent to all, given the complex nature of the calculations and detailed analysis under the pertinent Financial Accounting Standards Board guidelines and standards, that experts had been retained and were assisting the Plaintiff in the workup of its litigation claims.

I routinely monitor the individual case docket in anticipation of remand and take my responsibilities to my clients, to this Court, and my duties as an officer of the Court seriously. Upon learning of the dismissal, I checked my files as well as our email server and confirmed that I received both the Court's PTO 65 and Order to Show Cause via email through the general docket, though through inadvertence I did not recognize the B1 application to this Plaintiff's claims. This oversight was completely unintentional and completely uncharacteristic as is evident from my prior dealings with the Court, its appointed Neutrals, and BP.

All associated counsel in this case were relying upon my oversight for compliance with the Court Orders. My client was likewise unaware of the pending requirements for PTO 65 and believed its claims were properly proceeding forward with the Court. For these reasons, and those discussed more fully in this motion, it is my sincere hope that this Court find that counsel's oversight was the result of inadvertence or excusable neglect, and that the finality reached by the Court in the dismissal with prejudice of the Plaintiff's claims is outweighed by the interests of justice.

    *See* Exhibit 1 – Affidavit of Wesley Bowden.

## ARGUMENT

*Timeliness*

As a threshold matter, Plaintiff's Motion to Alter or Amend Judgment is timely filed as the Court's dismissal with prejudice was ordered on July 10, 2018 and entered on July 12, 2018. The Fifth Circuit treats a motion for reconsideration challenging a prior judgment as either a motion to alter or amend under FRCP Rule 59(e), if filed within twenty-eight days of judgment, or a motion for relief from judgment under FRCP Rule 60(b), if filed more than twenty-eight days from judgment but not more than one year after entry of judgment. *Gibson v. Gusman*, 2012 WL 3482275, at *1 (E.D. La. Aug. 15, 2012)(citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990)). Plaintiff's motion is therefore governed by FRCP Rule 59(e) as it was filed within twenty-eight days of the Court's dismissal.

## FRCP Rule 59(e)

The Plaintiff's burden for obtaining relief under FRCP Rule 59(e) "is not as stringent as under [FRCP] Rule 60(b)," and for the reasons discussed herein the Plaintiff has demonstrated a valid basis to justify this Court's reconsideration of its prior rulings. *Robin v. United States*, 2006 WL 2547984, at *1 (E.D. La. Aug. 30, 2006). Further, district courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment" and must "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Id.* (citing *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995)).

A motion to reconsider brought under FRCP Rule 59(e) can be granted if one of the following three factors is met: 1) an intervening change in controlling law, 2) the availability of new evidence not previously available, or 3) the need to correct a clear error of law or fact *or to*

*prevent a manifest injustice. Arrieta v. Local 745 of Int'l Bhd. of Teamsters*, 445 Fed. Appx. 760, 762 (5th Cir. 2011)(emphasis added); *See also Tauzier v. Dodge*, 1998 WL 458184, at *3 (E.D. La. Aug 4, 1998). It is the third factor under which Plaintiff seeks relief.

*PTO 65*

The Plaintiff submits that no interested parties' rights have been substantively impinged upon by its non-compliance with PTO 65. In essence, the Court issued through PTO 65 a limited discovery request to help effectuate a resolution of outstanding B1 cases through its appointed Neutrals.

In PTO 65, the Court stated that it would "again authorize the Neutrals to attempt to resolve the B1 claims that remain in litigation" and further indicated that PTO 65 was "designed to facilitate the Neutrals' process." PTO 65 at 1.

In order to facilitate this process, the Court ordered that remaining B1 Plaintiffs answer the following four questions:

1. Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

2. Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

3. Describe specifically how the Deepwater Horizon/ Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

4. Do you have at this time an expert who will opine as to any of your response to the above questions?

PTO 65 at 5.

While the Court certainly maintains an interest in managing its docket, it is important to note the information sought by PTO 65 was previously disclosed and discussed with both BP and

the Neutrals.  *See* Ex. 1 – Affidavit of Wesley Bowden.  The Plaintiff also attaches to this memorandum an executed and compliant PTO 65 Sworn Written Statement.  Exhibit 2 – Plaintiff's PTO 65 Verified Statement.  As is readily apparent, the information sought by Questions 1 through 3 of PTO 65 is fully detailed in Plaintiff's Presentment Packet to BP mailed on January 17, 2013.  Exhibit 3 – Plaintiff's Presentment, Bates range PNC000001 – 9; PNC000037-81.  In its Presentment, Plaintiff included a detailed discussion of the Plaintiff's business profile and banking activities.  *Id.* at PNC000003-4.  Further, the Plaintiff provided a detailed analysis entitled "OPA Sum Certain Damages and Methodology" wherein plaintiff defined each component of compensatory damages being claimed, explained the methodology used in calculating the damages, and stated a specific damages amount.  *Id.* at PNC000006-9.  The Plaintiff further provided more than one thousand six hundred pages of supporting documents which included tax returns, balance sheets, financial statements, loan ledgers, property valuations and write-downs, itemized specific loan loss reserves, records regarding collateral, and Other Real Estate Owned by the Plaintiff.  *Id.* at PNC000010-1721.  The supporting documentation provided to BP through Presentment, and discussed with the Neutrals previously, contain the information Plaintiff utilized in calculating its damages and assessing whether causation exists under the Oil Pollution Act and exceeds the scope of information sought though PTO 65.  Moreover, Plaintiff further invited BP to engage in pre-trial discovery and offered to make available upon request all original loan files.  *Id.* at PNC000001.

Only the answer to Question 4, whether the Plaintiff has an expert who will opine as to Questions 1 – 3 of PTO 65, was absent from the Plaintiff's Presentment.  The Plaintiff does have experts retained.  *See* Exhibit 2 – Plaintiff's PTO 65 Verified Statement.  These experts assisted

in the preparation of Plaintiff's Presentment and are prepared to opine on the responses to Questions 1 – 3 of the Plaintiff's PTO 65 Verified Statement.

*Manifest Injustice*

There is no general definition of manifest injustice which this Court is compelled to follow. Instead, "courts evaluate whether there has been a manifest injustice on a case-by-case basis." *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, 2017 WL 3582385, at *5 (E.D. La. Aug. 18, 2017)(citing *Alvarado v. Texas Rangers*, 2005 WL 1420846, at *3 (W.D. Tex. June 14, 2005)). It cannot be argued that BP lacks the information sought by the Court in PTO 65. Counsel also met with the Neutrals for several hours in an attempt to resolve Plaintiff's claim. *See* Exhibit 1 – Affidavit of Wesley Bowden. During this meeting, the Neutrals explained the methodology used to arrive at their recommended settlement amount and Counsel availed himself of the opportunity to thoroughly explain the basis of the Plaintiff's claims, the evidence it relied upon, the formulation of its own causation model, and how its experts quantified the total damages the Plaintiff suffered as a result of the Deepwater Horizon / Macondo Well incident. Given this background of disclosure, Plaintiff submits that a manifest injustice occurs where, as here, a defendant receives a windfall benefit it did not request while the claimant suffers the ultimate penalty of a dismissal with prejudice for what is tantamount to a discovery violation particularly when the merits of the plaintiff's claims have not been addressed.

*Available Remedies*

As this Court properly noted in *Barbarin v. Goodwill Industries Sela, Inc.*, "[t]he dismissal of an action with prejudice is a drastic remedy and should be applied only in extreme

7

circumstances." *Barbarin v. Goodwill Industries Sela, Inc.*, 2007 WL 1655746, at *1-2 (E.D. La. June 6, 2007)(citing *Bon Air Hotel v. Time*, 376 F.2d 118, 121 (5th Cir. 1967)). This Court further noted, "because of the severity of the sanction, dismissal with prejudice for failure to comply with a discovery order typically is appropriate only when the refusal to comply results from willfulness or bad faith accompanied by a clear record of delay or contumacious conduct, is attributable to the client rather than the attorney, and substantially prejudices the opposing party, and when a lesser sanction is an insufficient deterrent." *Id.* (citing *Coane v. Ferrar Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990)).

Non-compliance with PTO 65 in this case was due to the inadvertent mistake of counsel and is not attributable to the Plaintiff individually. Further, the record is devoid of any willfulness or bad faith and there is no record of delay or otherwise "contumacious" conduct. Indeed, the record reflects adherence to all other pretrial orders issued by the Court, and the Plaintiff has quickly responded to all prior Neutral requests. Neither BP nor the Neutrals have been prejudiced by Plaintiff's non-compliance, as both were previously provided with the information sought by PTO 65.

As the non-compliance with PTO 65 was not willful and is accompanied by a clear record of otherwise adhering to the Court's orders and requests made by the Neutrals, Plaintiff respectfully submits that dismissal of its case without prejudice is too drastic of a remedy. If the Court determines that a sanction is appropriate, it should be made against the attorney and not the Plaintiff individually who is blameless.

### **FRCP Rule 60(b)(1)**

FRCP Rule 60(b)(1) permits courts to reopen judgments for reasons of "mistake, inadvertence, surprise, or excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 393 (1993). As would be applicable in the case at hand, "[i]f a party is to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable." *Id.* Thus, if the present motion were made outside of the twenty-eight day period applicable to FRCP Rule 59(e) the relief sought would be pursuant to FRCP Rule 60(b)(1). Although this motion is governed by FRCP Rule 59(e), the more restrictive analysis under FRCP Rule 60(b) is illustrative and also favors granting Plaintiff's request for relief.

The Plaintiff's non-compliance with PTO 65 is due to the inadvertence and excusable neglect of counsel. The Fifth Circuit has adopted the formulation of excusable neglect as set forth by the Supreme Court in *Pioneer Investment Services v. Burnswick Assocs. Ltd. P'Ship. Mesa v. Unocal Corp.*, 2003 WL 943639, at *3 (E.D. La. Mar. 5, 2003). In *Pioneer*, the Supreme Court provided:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstance surrounding the party's omission. These include… the danger of prejudice, the reason for delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Investment* at 395. *See also In re Deepwater Horizon*, 641 Fed. Appx 405, 409 fn. 5 (5th Cir. 2016)(noting the factors the 5th Circuit applies are: 1) danger of prejudice to the opposing party, 2) the length of delay and its potential impact on judicial proceedings, 3) the reason for the delay, including whether it was within the reasonable control of the movant, and 4) whether the movant acted in good faith).

9

*Pioneer Investment Factors*

1. *Danger of prejudice*

There is no danger of prejudice to the opposing party. The information sought through PTO 65 has already been disclosed to BP through the Plaintiff's detailed complaint and Presentment as discussed above. The documentation, which the Plaintiff has already disclosed to BP and is still valid, exceeds the scope of information sought though PTO 65 and no potential prejudice can be alleged by BP for Plaintiff's non-compliance with the Court's order.

Similarly, the Neutrals were provided with financial statements, tax returns, and supporting documentation during the previous Neutral settlement process. Counsel explained in person to the Neutrals the specific damages claimed in Plaintiff's lawsuit, the nature of the damages, the amount of damages and the calculations used to arrive at its damage figure. Further, Counsel identified the information it relied upon to prove the damages and how the Deepwater Horizon / Macondo Well incident was causally related to the damages sought.

This factor weighs in favor of granting Plaintiff's request for relief.

2. *Length of delay*

The length of delay in this case resulting from Plaintiff's non-compliance with PTO 65 amounts to approximately three months and one week, counting from the date responses to PTO 65 were due to the date of this motion. This delay does not severely disadvantage either BP or the Neutrals as the information sought in PTO 65 was already known to all concerned parties for reasons discussed above. Further, all proceedings in B1 bundle cases are otherwise stayed pursuant to PTO 1 and PTO 25.

This factor weighs in favor of granting Plaintiff's request for relief.

3. *Reason for the delay*

The Plaintiff's justification for not responding to PTO 65 is that of inadvertence and excusable neglect as fully described in the background section of this memorandum and the accompanying affidavit of Wesley Bowden.  *See* Exhibit 1 – Affidavit of Wesley Bowden.

This factor weighs in favor of granting Plaintiff's request for relief.

   *4. Good Faith*

There is no indication in the record that the Plaintiff has not acted in good faith.  This factor also weighs in favor of granting Plaintiff's request for relief.

*Fifth Factor*

Other jurisdictions have recognized a fifth factor to be taken into account when assessing whether a motion pursuant to FRCP Rule 60(b) should be granted under the *Pioneer* analysis: "whether clients should be penalized for their counsel's mistake or neglect."  *See In re Beltrami Enterprises Inc.*, 178 B.R. 389, 393 (Bankr. M.D. Pa. 1994).  Here, the interests of justice weigh against penalizing the Plaintiff for its counsel's inadvertence and excusable neglect.

*Balancing Factors*

The factors recognized in *Pioneer* should not be given equal weight in the determination of excusable neglect.  Even when the reason for delay weights against the claimant but the danger of prejudice, length of delay, and good-faith factors are in favor or the claimant, the court may find excusable neglect if the facts and circumstances of the case so require.  *In re Laclede Cab. Co.*, 186 B.R. 688, 690 (Bankr. E.D. Mo. 1995).

In the instant case, all factors heavily weigh in favor of granting relief. Even if the Court were to find that the reason for delay did not weigh in favor of the Plaintiff, this Court would still be within its discretion to grant the requested relief. *See Id.*

*Court Discretion*

This District has previously noted that the district courts enjoy considerable discretion in determining whether a moving party has established excusable neglect under the formulation espoused in *Pioneer*. *Id.* at *2 (citing *See Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981)); *United States v. O'Keefe*, 169 F.3d 281, 286 (5th Cir. 1999)("It is well recognized that a motion for relief from a civil judgment under Rule 60(b) is addressed to the discretion of the court."). In addressing FRCP Rule 60(b)(1) motions, this Court, along with others in the district, has properly noted that the discretion exercised, "ordinarily should incline toward granting rather than denying relief, *especially if no intervening rights have attached in reliance upon the judgment and no actual injustice will ensue*." *Schwab v. Medfirst Health Plans of Louisiana*, 2000 WL 364984, at *2 (E.D. La. Apr. 7, 2000)(emphasis added); *See also Mesa* at *3. The general policy favoring relief under FRCP Rule 60(b) is particularly applicable in cases, such as this, where the merits of the Plaintiff's claims have never been considered. *Mesa* at *2(citing 11 Wright & Miller, *Federal Practice and Procedure* § 2857 (2d. ed. 1987).

## **CONCLUSION**

Wherefore, the Plaintiff respectfully requests that this Honorable Court alter or amend its judgment to reinstate Plaintiff's case so that it may proceed to be adjudicated on its merits.

>/s/ *Wesley A. Bowden*
>Wesley A. Bowden, Esq.
>Florida Bar Number:  64217
>Levin, Papantonio, Thomas, Mitchell,
>Rafferty & Proctor, P.A.
>316 S. Baylen, Suite 600
>Pensacola, FL 32502
>wbowden@levinlaw.com
>(850) 435-7186 office
>(850) 436-6185 fax

**Certificate of Service**

I HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in the MDL 2179, on this 18th day of July 2018.

/s/ *Wesley A. Bowden*
Wesley A. Bowden, Esq.
Florida Bar Number:  64217
Levin, Papantonio, Thomas, Mitchell,
Rafferty & Proctor, P.A.
316 S. Baylen, Suite 600
Pensacola, FL 32502
wbowden@levinlaw.com
(850) 435-7186 office
(850) 436-6185 fax