# EXHIBIT A

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* <br> No. 10-MD-2179 <br><br> PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) ||||
|---|---|---|---|
| Last Name <br> Sublett | First Name <br> James | Middle Name/Maiden <br> R. | Suffix |
| Business Name || Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) <br> xxx-xx-5268 ||
| MDL 2179 Member Case Number <br> 2:17-cv-06044 || Attorney Name and Firm <br> Krupnick Campbell Malone, et.al. <br> Jesse S. Fulton, Esq. ||

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

1

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Please see attached Exhibit.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached Exhibit.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

Please see attached Exhibit.

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions? (Yes or No)
>
> No

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: __July 25__, 2018

Location (City and State): __Key West, FL__

_____
Signature of Plaintiff*

*__Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.__

__James Randolph Sublett__
Print Name

_____
Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.**

# Exhibit 1
James Randall Sublett
Response to PTO 65 Question One

**Nature of the Damage:**

- Lost Wages/Income/Earning Capacity

**Date of Damage:**

- April 20, 2010 to August 2012.

**Amount of Damage:**

- $737,006.00

**Calculations used to arrive at that amount:**

- Lost Income August 18, 2010 to December 31, 2010
    - 28 days @ $375/day = $10,500
    - 84 days @ $475/day = $39,900
    - Total = $50,400
- Lost Health Insurance Benefits 2010
    - 4.5 months @ $421/month = $1895.00
- Total 2010 Lost Income/Benefits
    - $52,295.00
- Lost Income December 31, 2010 to September 1, 2011
    - 180 days @ $475/day = $47,598.00
- Unrealized Health Insurance Benefits
    - 9 months @ $421/month = $3,789.00
- Lost Income from September 1, 2011 thru December 31, 2016
    - Approx. 5 years @ $119,700/yr = $598,500
- Potential lost 401K matching funds @5% gross income (August 2010-December 31, 2016)
    - $34,824 (Total Gross Income= $696,498)
- Total Loss (Damage) = **$737,006.00**

## Exhibit 2
James Randall Sublett
Response to PTO 65 Question Two

The following response was prepared with the help of my attorneys.

The Claimant will be relying on personal Tax Returns, pay stubs, and additional financial documentation that establishes the losses incurred. Furthermore, the Plaintiff will provide witnesses to substantiate claims if needed.

# Exhibit 3
James Randall Sublett
Response to PTO 65 Question Three

In 2007 while working as a captain for the Yankee Freedom II based in Key West, Florida I made the decision to increase the capacity of my United States Coast Guard Merchant Mariner License from 100 Tons Near Coastal to a 500 Tons Oceans license. I made this decision specifically in pursuit of the higher paying jobs associated with the offshore oil and gas exploration/production industry. There are many jobs in this industry that require only the 100 Ton Near Coastal License I already possessed however the higher paying positions associated with working outside of the United States generally required the higher tonnage document. There was also a glut of personnel with 100 Ton licenses then and continues to be so today. It was the non-United States positions that I was mostly interested in however most companies associated with transportation in the oil and gas industry require that domestic service be performed before being deployed to a foreign location. I was fully aware and willing to fulfill this caveat.

Thus, I started attending the many costly and time consuming courses required for the upgraded license. This endeavor cost me personally over $35,000 in tuitions, boarding, and transportation. Additional costs were realized in loss of wages during the many days and weeks of time off from work to attend classes and examinations.

I ultimately received my 500 Ton Upon Oceans License in 2009 and began actively seeking a job in the oil and gas exploration and production industry. At that time there was a relative boom in the industry and the competition for jobs was strong but in early 2010 I finally received and offer to get my foot in the door from Falgout Offshore based in Cut Off, Louisiana. The offer was made to me by Falgout Offshore and I accepted in March of 2010. I gave my notice to my employer at the time, Yankee Roamer, operator of the Yankee Freedom II and began preparing to go to work in the Gulf of Mexico and beyond.

I was to report to work for Falgout in early July of 2010, the lapse between job offer/acceptance and actual start date was due to the vessel I was to be assigned to was being refitted in the shipyard and my presence would not be necessary until that work was completed. I continued working for Yankee Roamer in the interim.

I was fully aware, as was the entire world, of the explosion and subsequent oil spill of the Macondo well on April 22, 2010 and I was concerned about my newly accepted position with Falgout Offshore. Throughout the time between my acceptance of the job and the actual start work date, Falgout Offshore assured me that my job was still in place. This was based on the continuing statements from British Petroleum that the oil spill would be stopped very quickly and the damage would be minimal. As the days and weeks passed without a solution to the oil spilling from the well the situation became grave despite continued informational releases from British Petroleum as to the long term effects being relatively benign.

I reported to my new job with Falgout Offshore on July 6, 2010 and enjoined the M/V Minnie Falgout three days later. Falgout Offshore had contracts that kept the vessel working outside of cleanup support for the Macondo spill. Mr. Troy Cheramie, operations manager for Falgout Offshore, refused to get

involved with the massive re-tasking of oil field vessels to the mitigation efforts. He did so for business reasons. In early August, after completing my 28 day hitch, I returned to Florida to attend a required GMDSS class which lasted 15 days. I was in frequent contact with Mr. Cheramie and was assured of my continued employment. On August 16, 2010 Mr. Cheramie notified me that he was forced to lay up most of the vessels in his charge due to lack of work for the vessels. This was a direct result of the Macondo well spill and the pursuant shut down of the oil and gas industry in the Gulf of Mexico. Hundred of captains were laid off creating a glut of personnel worldwide and I was unable to find employment elsewhere.