**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | **MDL NO. 2179** |
| **"Deepwater Horizon" in the Gulf of** | * | |
| **Mexico, on April 20, 2010** | * | **SECTION J** |
| | * | |
| | * | **JUDGE BARBIER** |
| **This Document Relates To:** | * | |
| *No. 10-03261, Shivers, et al. v. BP p.l.c.,* | * | **MAGISTRATE JUDGE WILKINSON** |
| *et al.* | * | |
| *No. 12-1713, Andry, et al. v. BP Products* | * | |
| *North America, Inc., et al.* | * | |
| | * | |
| | * | |
| | * | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants BP Exploration & Production Inc., BP America Inc., and BP Products North America, Inc. (collectively "BP"), Triton Asset Leasing GMBH, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater Inc., and Transocean Ltd. (collectively "Transocean"), and Halliburton Energy Services, Inc. ("Halliburton") (collectively the "Defendants") submit this memorandum in support of their motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6).[1]

**I.   BACKGROUND**

These two cases assert claims against BP, Transocean, and Halliburton under a by-stander/"zone of danger" theory. Two groups of plaintiffs, who are not affiliated or associated

---

[1] BP p.l.c. does not respond to the complaint in either case No. 10-03261 or No. 12-1713 because it has not been served. Likewise, in 10-cv-03261, Triton Asset Leasing GMBH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Ltd. have not been properly served. In 12-cv-01713, only Transocean Deepwater, Inc., Transocean Holdings, LLC, and Transocean Offshore Deepwater Drilling Inc. have been served. Finally, Triton Asset Leasing GMBH and Transocean Ltd. have not been served and do not make an appearance in 12-cv-01713.

with the *Deepwater Horizon*, the defendants, or the activities on the evening of April 20, 2010, attempt to state a claim that they suffered damages merely because they were in the proximity of the *Deepwater Horizon* on the evening of April 20, 2010: (1) the *Andry* plaintiffs, case No. 12-1713, state that they had moved their vessel away from the *Deepwater Horizon* prior to the blowout, explosion, and fire, removing themselves from the area; (2) The *Shivers* plaintiffs, case No. 10-03261, seek damages for arriving in the proximity of the *Deepwater Horizon* after witnessing the explosion through binoculars and hearing a mayday radio call, and choosing then to travel on their vessel towards the rig after the blowout and explosion.

Neither complaint states a viable claim for their emotional and mental damages. These complaints should be dismissed for failure to state a claim.

## II.  LEGAL STANDARD

"To avoid dismissal for failure to state a claim, the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Carlucci v. Chapa*, 884 F.3d 534, 537–38 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action' are not enough, nor are facts that are 'merely consistent with' a defendant's liability." *Singh v. RadioShack Corp.*, 882 F.3d 137, 144 (5th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555 and *Iqbal*, 556 U.S. at 678).

## III.  BACKGROUND

The *Andry* complaint is brought on behalf of three plaintiffs, Albert Andry III, Ryan Chaisson and Dustin King—all of whom were fishing underneath the *Deepwater Horizon* rig on

the night of April 20, 2010. *Andry* Compl. ¶ 45. The *Andry* plaintiffs allege damages under "General Federal Maritime Law of the United States" and attempt to plead a claim for "maritime negligence." *Id.* ¶¶17; 56-72. The *Andry* plaintiffs allege that they were fishing under the "lip of the platform" when "water began raining down" around them. *Id.* ¶ 45. The complaint then alleges that non-plaintiff Mr. Bourg—who was on the fishing boat with the three plaintiffs but did not join their lawsuit—yelled at Mr. Andry to drive the boat away. *Id.* ¶ 47. Mr. Andry accelerated his power boat and was 50 yards away when they heard a "boom." *Id*. ¶ 48. After the explosions, plaintiffs allege that they watched and observed from afar as the rig was evacuated and people jumped off the rig. *Id.* ¶ 52. As a result of being near the *Deepwater Horizon* on April 20, 2010, the *Andry* plaintiffs seek recovery for "mental anguish and emotional injuries." *Id.* ¶ 57. The *Andry* plaintiffs assert they can recover emotional damages because they were in the "zone of danger" at the time of the explosion. *Id.* ¶ 57. While they do allege that their "eyes started burning", the *Andry* plaintiffs do not plead any physical injury or harm or that they were in immediate danger as they observed the rig the night of the explosion from their vessel. *Id.* ¶ 46.

The *Shivers* complaint is also brought on behalf of three individual fishermen who were fishing on the Gulf of Mexico on April 20, 2010. The *Shivers* plaintiffs allege that they were fishing at a rig in the region, (the "255 rig") and, using binoculars, saw a "distant light." *Shivers* Compl. ¶ 7. Plaintiffs allege that they then heard the mayday call over the radio and headed towards the "distant light" to provide assistance. *Id.* ¶ 8-10. The *Shivers* plaintiffs detail their efforts to assist in the emergency response, including coordinating and discussing relief efforts with the Coast Guard and the *Damon Bankston*, the first boat at the scene on the night of the explosion. The *Shivers* plaintiffs allege that they were frightened, but continued to try and help. *Id.* ¶ 24. The three plaintiffs all allege mental and emotional suffering, including stress,

depression, discomfort and anguish. *Id.* ¶¶ 29-31. The *Shivers* plaintiffs assert three causes of action against the Defendants—negligence, "wantonness, recklessness, willful disregard and gross negligence" and intentional infliction of emotional distress.

## IV.   ARGUMENT

Both the *Andry* and *Shivers* plaintiffs seek damages for mental and emotional distress without any accompanying allegation of physical injury or damage to property. The *Andry* plaintiffs specifically allege their claim arises under "General Federal Maritime Law," while the *Shivers* plaintiffs are silent as to the law they seek to apply. As this Court held in its B1 Order in 2011, tort claims related to the *Deepwater Horizon* incident arise under maritime law:

> The location test, which is satisfied when the tort occurs on navigable water, is readily satisfied here. The B1 Master Complaint alleges that the blowout, explosions, fire, and subsequent discharge of oil, occurred on or from the DEEPWATER HORIZON and its appurtenances, which was operating on waters overlying the Outer Continental Shelf; i.e., navigable waters. The connection test is also met. First, there is no question that the explosion and resulting spill caused a disruption of maritime commerce, which exceeds the "potentially disruptive" threshold established in *Grubart.* Second, the operations of the DEEPWATER HORIZON bore a substantial relationship to traditional maritime activity. *See Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538-39 (5th Cir.1986) ("oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce"). Further, injuries incurred on land (or in the seabed) are cognizable in admiralty under the Admiralty Extension Act, 46 U.S.C. § 30101.

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 808 F. Supp. 2d 943, 951 (E.D. La. 2011). This Court further clarified the scope of the maritime jurisdiction when it held both stigma claims and BP Dealer claims for plaintiffs alleging economic losses for BP dealers onshore were subject to maritime law. *See In re Oil Spill by the Oil Rig 'Deepwater Horizon' in the Gulf of Mexico*, 902 F. Supp. 2d 808, 821-22 (E.D. La. 2012), *aff'd* --- F. App'x ---, 2018 WL 3244469 (5th Cir. July 3, 2018) (per curiam) ("*Tobatex*"). Indeed, the Fifth Circuit held as follows:

4

> ***The district court assessed Plaintiffs' complaint in light of Grubart and concluded that the claims asserted therein sound in admiralty. We agree.*** Plaintiffs' claims satisfy the ***location test*** because their alleged injuries were proximately caused by the *Deepwater Horizon*. *See Grubart*, 513 U.S. at 536, 115 S.Ct. 1043; *Margin v. Sea-Land Servs., Inc.*, 812 F.2d 973, 975–76 (5th Cir. 1987). As for the ***connection test***, the district court did not err in concluding that the type of incident involved here—"an explosion aboard a vessel and the subsequent discharge of oil"—is potentially disruptive of maritime commerce, and that the general character of the activity giving rise to the incident—"oil and gas drilling from a vessel on navigable waters"—has a substantial relationship to traditional maritime activity. Plaintiffs contend that their claims are based entirely on actions that Defendants took on land and that have "no connection" with traditional maritime activity, but ***their complaint is bereft of well-pleaded factual allegations*** supporting that assertion.

2018 WL 3244469, at *2 (emphasis added).

The tort claims here, for alleged injuries arising from fishing boats nearly 50 miles at sea and near the *Deepwater Horizon*, thus clearly pass both the "locus" and "connection" tests and fall within the scope of maritime jurisdiction as already established by this Court's and the Fifth Circuit's rulings. Nor do "well-pleaded factual allegations" in either of the two complaints at issue here plausibly assert that maritime law does not apply, just as in *Tobatex*.

As the *Andry* plaintiffs allege, there should not be any dispute that federal maritime law applies to these alleged tort claims.[2] However, as set forth below the Court does not need to reach the issue of which law applies because these bystander plaintiffs have failed to state a claim and their cases should be dismissed under any source of law that might be asserted to apply.

### A.  Federal Maritime Law Does Not Allow For Recovery Of Plaintiffs' Mental Anguish or Emotional Damages.

The Fifth Circuit has addressed similar claims for mental anguish or emotional damages on several occasions and, in each case, has refused to recognize a "zone of danger" tort theory that

---

[2] The Movants do not assert that the Oil Pollution Act of 1990 displaces maritime law here because OPA does not provide remedies for personal injury claims.

5

would allow plaintiffs here to recover. Recently in *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208 (5th Cir. 2013), the Fifth Circuit reviewed claims by a plaintiff that did not allege any physical injury and asserted only mental and emotional damages. The Fifth Circuit stated that plaintiff could "only recover under maritime law if [plaintiff] can show that (a) the zone of danger theory applies to allow recovery for purely emotional injuries in non-Jones Act cases, and (b) he satisfied the requirements of that theory." *Id.* at 224. The Fifth Circuit held plaintiff's claim failed under both prongs. First, the Fifth Circuit held that "this circuit and others have 'yet to recognize recovery under the zone of danger rule' for general maritime claims." *Id.* (citing *Genie-Lyn Ltd. v. Del. Marine Operators, Inc.,* No. 50, 2006 WL 42169 at *24, n. 36 (W.D. La. Jan. 3, 2006); *see also Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546, 548 (5th Cir. 1992) ("the en banc court recently noted, however, this circuit has yet to recognize recovery under the zone of danger rule." (citing *Plaisance v. Texaco Inc.*, 966 F.2d 166, 169 (5th Cir. 1992) (en banc)).

Second, when discussing potential claims under a "zone of danger" theory, the Fifth Circuit has repeatedly rejected claims unless there is an "immediate risk of physical harm." The "immediate risk of physical harm" standard is strictly construed and is not met by the allegations of the *Andry* or *Shivers* plaintiffs. Three cases are illustrative. In the *Barker* case there was no "immediate risk of physical harm" where plaintiff was standing on the rig floor, ***two feet away*** from his friend and co-worker who slipped and fell to his death. 713 F.3d at 224. Barker had his back to the rig floor, heard a noise and turned to see his friend falling to his death. The Fifth Circuit held that because plaintiff "does not allege any facts which would place him in immediate risk of physical harm, the zone of danger theory is inapplicable." *Id.* at 225 (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 548 (1994)).

6

Likewise in *Ainsworth v. Penrod Drilling Corp.*, the Fifth Circuit affirmed the dismissal of a complaint at summary judgment for a crew member on a jack-up rig who alleged mental anguish damages under a "zone of danger" theory. 972 F.2d 546, 547-48 (5th Cir. 1992). In that case, the crew member witnessed a helicopter crash onto the jack-up rig upon which he stood. *Id.* at 547. The plaintiff was ***one-hundred feet away*** from the helicopter crashing into his rig and watched from the control room. *Id.* at 548. The Fifth Circuit held that because Plaintiff did not allege and prove that the helicopter crash "threatened him with physical harm nor caused him to fear it would harm him," that he was barred from recovering. Finally, in *Plaisance v. Texaco, Inc.*, 966 F.2d 166 (5th Cir. 1992) the Fifth Circuit affirmed the dismissal of a tugboat captain's emotional damages claims from witnessing a fire on the barge his vessel was assisting. The barge struck an underwater gas pipeline, causing an explosion and fire. *Id.* at 167. The crew of the barge transferred to the tugboat and the tugboat then towed the barge away from the explosion site. The fire did not damage the tugboat and the captain of the tugboat was never in immediate physical danger. *Id.* On that record, the district court dismissed Plaisance's suit and the Fifth Circuit affirmed the dismissal, stating that "under any known theory of recovery-even the most liberal-the Plaisances … have not presented a prima facie case to recover any damages from the incident." *Id.* at 168-69.

The *Shivers* and *Andry* plaintiffs have failed to assert a claim under the "zone of danger" theory under federal maritime law. Since there is no recognized "zone of danger," tort theory under federal maritime law, these claims should be dismissed on that prong alone. Additionally, like the plaintiffs in *Barker*, *Ainsworth* and *Plaisance*, the *Andry* and *Shivers* plaintiffs do not have well-pleaded allegations that they were in "immediate physical harm." Their allegations are even more remote than the failed claims in *Barker* and *Ainsworth* (being on the rig floor or control

7

room) and *Plaisance* (being attached to the vessel on fire). Instead, the *Andry* plaintiffs were at least 50 yards away. While the *Andry* plaintiffs allege that they were distressed and distraught, that is not sufficient to show "immediate physical harm." *Andry* Compl. ¶¶57, 59. The *Shivers* plaintiffs do not even attempt to plead "immediate physical harm," nor could they, as they were miles away when the explosion occurred and voluntarily travelled to the site after hearing the mayday calls. *Shivers* Compl. ¶¶8-10.

This Court should not expand federal maritime law to cover these claims and the Defendants request that all of the *Andry* and *Shivers* claims be dismissed.

### B.   If Applicable, Plaintiffs Also Fail to State a Claim Under Louisiana Law.

To the extent that the *Shivers* plaintiffs ever attempt to argue that Louisiana law applies (or the *Andry* plaintiffs do, despite having pled their claim as general federal maritime law), the claims fail under Louisiana law as well.[3] While under certain circumstances Louisiana permits tort claims without physical or property damage, plaintiffs cannot plead facts under any of those exceptions. In *Dumas v. Angus Chem. Co.*, 728 So. 2d 441, 446 (La. Ct. App. 1999) the Louisiana Court of Appeals dismissed plaintiff's emotional distress claims arising from a chemical plant explosion and summarized Louisiana law as follows:

> Louisiana courts have recognized a few instances when emotional distress damages may be awarded in the absence of physical injury to the victim.
>
> First, in some situations mental distress caused by damage to one's property may be compensable in damages. Second, a victim may recover mental anguish damages when the conduct is directed at him and the circumstances show an especial likelihood of genuine and serious mental distress. *Moresi v. State*, 567 So.2d 1081 (La. 1990). Third, under narrow circumstances, emotional distress damages may be

---

[3] As discussed *supra*, the Defendants agree with the *Andry* plaintiffs and this Court's prior rulings that tort claims related to the *Deepwater Horizon* incident fall under general maritime law. The Defendants do not believe that Louisiana law applies under any theory that could be asserted by the *Shivers* plaintiffs. However, for purposes of this motion to dismiss, the Court need not resolve any choice of law issue because the plaintiffs do not make any well-pleaded argument as to why state law should apply, and, even if they had, their claims fail under Louisiana law.

> awarded to a person who suffers mental anguish as the result of another's physical injury. [the so-called "bystander" cases] … Fourth, emotional distress damages have been awarded to one who is a participant in an accident. *Clomon v. Monroe City School Bd.*, 572 So.2d 571 (La. 1990).
>
> Louisiana courts have also recognized a cause of action for intentional infliction of emotional distress. *White v. Monsanto*, 585 So.2d 1205 (La. 1991). In these cases the defendant's conduct must be outrageous and he must have intended to cause emotional distress.

A recent federal district court summarized the limited exceptions using a slightly different formulation, stating that a plaintiff may recover emotional distress damages without physical injury in four limited circumstances: (1) where recovery for intentional infliction of emotional distress is sought based on a separate tort involving physical consequences, such as assault, battery, trespass, or invasion of the right of privacy; (2) where certain forms of intentional infliction of emotional distress are involved; (3) when plaintiff is a direct participant in the accident and defendant owes a direct, specific duty to the plaintiff; and (4) where the bystander either views the accident or injury causing event or comes upon the accident before a substantial change. *Molden v. Georgia Gulf Corp.,* 465 F. Supp. 2d 606, 614-15 (M.D. La. 2006).

The *Andry* and *Shivers* plaintiffs do not and cannot allege well-plead facts sufficient to fit into any of the limited exceptions.

> 1. Plaintiffs do not and cannot plead claims for emotional damages under the first limited exception.

There are no allegations of any physical injury or separate tort such as assault, battery, or trespass aimed or directed at either of the plaintiffs. Likewise, there are no allegations of damage or injury to any of the plaintiffs' property. As such, the plaintiffs do not attempt to plead a claim for emotional damages on this basis, nor could they. *See Dumas v. Angus Chem. Co.*, 728 So. 2d 441, 442 (La. Ct. App. 1999).

9

> 2. Plaintiffs cannot plead claims for emotional damages for intentional infliction of emotional distress under the second limited exception.

There are not well-pleaded allegations of "intentional infliction of emotional distress" or conduct "directed" at either the *Andry* or *Shivers* plaintiffs. To plead a *prima facie* case there must be specific, well-pleaded allegations of that (1) the conduct of the defendant was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from the conduct. *Id.* at 615 (citing *White v. Monsanto,* 585 So 2d 1205, 1209-10 (La. 1991) ("the conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like.")

Plaintiffs fail to adequately plead that the Defendants intended to inflict severe emotional distress or knew that severe emotional distress to *Shivers* or *Andry* plaintiffs would be substantially certain to result from the incident. The *Dumas* case is particularly informative. In that decision, the Louisiana Court of Appeals overturned the grant of summary judgment for plaintiffs and held that plaintiffs failed to set forth a *prima facie* case that defendants intended to cause severe emotional distress as a result of a chemical plant fire and explosion. *Id.* at 446. The court noted that there was no evidence or allegations of an actual intent to destroy the plant, injure workers, or cause severe emotional distress to the plaintiffs. Proof of the disaster, fire and explosion at the plant was not sufficient to state a claim under the second limited exception for emotional damages.

> 3. Plaintiffs do not and cannot assert a claim as a bystander to the incident because they are barred by Louisiana Civil Code.

Under Louisiana law, plaintiffs cannot assert a claim as "bystanders" who suffered from witnessing injuries to others. To recover as a bystander, Louisiana law requires a close family relationship. *See* LSA-C.C. Art. 2315.6. The Court in *Dumas* rejected "bystander" claims for plaintiffs who witnessed the victims of a chemical plant explosion. Likewise, in the series of cases

10

related to the 1982 Pan-Am crash in Kenner, Louisiana discussed *infra*, no bystander claims were permitted.  There are no allegations of a close family relationship and thus neither *Andry* nor the *Shivers* plaintiffs have pled facts sufficient to make a claim under this exception.

    4. Plaintiffs are not "participants" in the *Deepwater Horizon* incident and cannot state a claim to satisfy the fourth limited exception.

Under the remaining limited exception prong, plaintiffs have to plead that they were a "participant" in the *Deepwater Horizon* incident.  Courts have narrowly construed the "participant" exception and effectively require the plaintiff to be a direct victim of the incident, accident, or event.  The limited scope of the "participant" claim is highlighted through three categories of case law from Louisiana:  chemical plant explosions, plane crashes and vehicle accidents or incidents (including railroad and boats).

In the first category of chemical plant explosions, courts routinely reject claims for emotional damages in chemical plant explosions.  In *Molden v. Georgia Gulf Corp.*, 465 F. Supp. 2d 606 (M.D. La. 2006), the court addressed the mental anguish damages claims from plaintiffs who claimed to have been exposed to chemicals following a chemical plant fire.  In that case, the Georgia Gulf Corporation chemical plant had a fire on May 11, 2001, with dark smoke visible for miles and a shelter in place order for nearby residents.  For purposes of summary judgment, the court held that there was no physical injury from exposure to the smoke and then dismissed the emotional distress claims because plaintiffs could not meet any of the four exceptions and were not "participants" in the explosion.  *See also Dumas*, 728 So. 2d 441 at 447-48 (holding that without allegations of direct involvement, plaintiffs could not claim to be "participants" and no emotional damages were warranted).

Likewise, courts rejected a series of claims from people impacted directly by the 1982 Pan Am crash in Kenner, Louisiana.  In *Tudela v. Pan Am. World Airways, Inc.*, 764 F.2d 1082 (5th

11

Cir. 1985) the Fifth Circuit, sitting in an *Erie* posture, held that Louisiana law does not permit a plaintiff to recover emotional damages when there is no physical injury or property damage and plaintiff was not in any physical danger, which is akin to the "participant" exception. *Id.* at 1082. In *Tudela* the Fifth Circuit dismissed the claims of a homeowner who was three blocks away from the Pan Am crash site in Kenner. At the time of the crash, Tudela was in his car and a few blocks from his house. He ran down the street to his house and found that it was safe and then assisted in the rescue efforts. *Id.* at 1082-83. The Fifth Circuit rejected Tudela's arguments that he was exposed to the "total environment of the crash," noting that the total environment consisted of injury to others and the efforts to alleviate those injuries and that Tudela was not in any direct danger. His claims for mental anguish were dismissed.

The second Pan Am crash case, *LeConte v. Pan Am. World Airlines, Inc.*, 736 F.2d 1019 (5th Cir. 1984), dealt with claims from off-duty police officers who responded to the crash. As alleged, LeConte was an off-duty police officer who rushed to the crash scene. He spent twenty-seven hours at the scene, including searching for survivors and tending to those who had died. *Id.* at 1020. Plaintiff Engman was four blocks from the plane crash site, saw an "eruption of smoke and flames" and called the crash in. He then spent several hours photographing the scene and the victims. *Id.* In affirming the trial court's dismissal of their claims, the Fifth Circuit noted that "the plaintiffs here are purely bystanders, and they were outside any zone of danger created by defendants' alleged negligence. Louisiana law clearly prohibits bystander recovery for mental anguish suffered as a result of another's injury or death." *Id.* at 1021. Neither the trial court nor the Fifth Circuit recognized these individuals as "participants" in the Pan Am crash, since while nearby, they came to the crash site, but were not in immediate physical danger.

Likewise, in the category of vehicle accidents, the courts narrowly construe what a "participant" in the event is and strictly limit recovery of emotional distress. For example, in a train and vehicle crash, the plaintiffs in *Courteaux* were in a truck sitting at a train crossing when a Union Pacific train collided with a co-worker's truck, killing three passengers in that vehicle. Plaintiffs alleged that he could recover emotional damages as a "participant" in the accident. *See Courteaux v. Union Pacific R.R. Co. et al.*, Civil Action No. 15-530-500 (EWD), 2016 WL 1056579 (M.D. La. March 16, 2016). The court held that plaintiffs were not "participants" because they never alleged they needed to move away from the train. Without being in "immediate danger", the Court rejected plaintiffs' claim, holding that "witnesses [to] a fatal accident, even in close proximity, does not render one a direct participant in the accident." *Id.* at *4. In dismissing the claims, the Court explained that, to hold otherwise, would mean that "the passengers of any vehicles within one or two cars of any collision, or close enough to a traffic accident to feel any impact, could bring a claim for mental anguish or negligent infliction of emotional distress. This would lead to an absurd result." *Id.* at *4. The court dismissed plaintiffs' claims with prejudice for failure to state a claim.

Conversely, the cases where recovery is allowed confirm the strict limits of when purely emotional damages are recoverable under the "participant" exception. In *Clomon v. Monroe City School Bd.*, 572 So. 2d 571 (La. 1991) the Louisiana Supreme Court permitted a motorist to recover emotional damages when she struck and killed a student exiting from a school bus. The Supreme Court noted that the school bus driver had a specific, statutory duty to other drivers and the students to make sure students safely exited the bus and failed to exercise that specific statutory duty. As such, plaintiff could recover emotional damages for the accident where she struck and killed the child. In *Deville v. Budd Constr. Co.*, 617 So. 2d 570 (La. Ct. App. 1995), a plaintiff was permitted

13

to recover emotional damages because he was in the car involved in the accident, was a direct victim and suffered physical injuries, including a trip to the hospital. Therefore, plaintiff could recover for emotional damages from witnessing his friend's death at the scene of the accident. In *Morris v. Maryland Cas. Co.*, 657 So. 2d 198 (La. Ct. App. 1995) the court reversed the trial court's dismissal, stating that the train conductor could recover damages because he was a direct participant in the train accident. In *Pourciau v. Allstate Ins. Co.*, 712 So. 2d 250 (La. Ct. App. 1998) the court found that a minor child who ducked and rolled out of the way of a car accident where her friend was killed by the car could state a claim. In that case, the child was an actual participant in the accident because she was in immediate danger of being harmed. Likewise in *Carroll v. State Farm Ins. Co.*, 427 So. 2d 24 (La. Ct. App. 1983), plaintiff was sitting on a dock when a ski boat crashed into the dock, the boat became airborne and flew 30 feet in the air. Plaintiff had to duck to avoid being hit by the boat's propeller. As such, she was in immediate danger and was permitted to plead damages for mental anguish without physical harm. In *Guillory v. Arceneaux*, 580 So. 2d 990 (La. Ct. App. 1991) the court permitted mental anguish claims arising out of a three-vehicle accident. Plaintiff Guillory came upon an accident scene and struck the victim of an earlier accident before being able to stop. *Id.* at 990-91. The court held that plaintiff had stated a claim because she was a direct participant in the accident.

As set forth above, the Louisiana "participant" exception is narrowly construed and, as is the case with regard to federal maritime law, requires immediate physical danger or actual participation in the incident itself. The *Andry* and *Shivers* plaintiffs do not allege well-pleaded facts sufficient to state a claim as a "participant." The *Shivers* plaintiffs have not and indeed cannot plead that they are participants in the *Deepwater Horizon* incidents because they were miles away at the time of the explosion. As the Fifth Circuit held in the Pan Am cases being exposed to the

14

"total environment" of the incident is insufficient to state a claim.  In particular, under *LeConte*, the *Shivers* plaintiffs' efforts to assist and help in the recovery are insufficient to state a claim as well.  Likewise, the *Andry* plaintiffs cannot plead facts to show that they were "participants," in the incident.  The distinction between the *Morris* case (train conductor could recover as a direct participant in the accident) and *Courteaux* (friend in a car at the railroad crossing, but not in the accident itself could not recover) is telling for the *Andry* plaintiffs' claims.  The *Andry* plaintiffs do not (and cannot) allege that they were involved in the *Deepwater Horizon* explosion and incident, only that they were nearby and observed the accident from a distance.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully submit that both the *Andry* and *Shivers* plaintiffs have failed to state a claim upon which relief can be granted, and therefore these actions should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

<div style="display: flex;">

<div>

**Respectfully submitted,**

/s/ R. Alan York
R. Alan York (Bar # 22167500)
AYork@ReedSmith.com
REED SMITH LLP
811 Main Street
Suite 1700
Houston, Texas 77002
Telephone:  713-469-3800
Facsimile:  713-469-3899

*Attorneys for Halliburton Energy Services, Inc.*


**Respectfully submitted,**

/s/ Kerry J. Miller
Kerry J. Miller (Bar #24562)
BAKER DONELSON
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone:  504-566-8646
Facsimile:  504-585-6946

*Attorneys for Triton Asset Leasing GMBH, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater Inc., and Transocean Ltd.*

</div>

<div>

**Respectfully submitted,**

/s/ Devin C. Reid
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Devin C. Reid (Bar #32645)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Facsimile: (504) 556-4120

-and-

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Kristopher S. Ritter
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200

-and-

Christopher W. Keegan
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Fax: (415) 439-1500

*Attorneys for BP Exploration & Production Inc., BP America Inc., BP Products North America Inc., BP America Production Co.*

</div>

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice in accordance with the procedures established in MDL 2179, on this 10th day of August, 2018.

>	*/s/ Devin C. Reid*
>	Devin C. Reid