**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | ) | |
| OIL SPILL BY THE OIL RIG | ) | |
| "DEEPWATER HORIZON" IN THE | ) | MDL Docket No. 2179 |
| GULF OF MEXICO ON APRIL 20, 2010 | ) | |
| | ) | |
| THIS DOCUMENT RELATES: | ) | |
| | ) | |
| Bradley Shivers, et al v. BP, PLC, et al | ) | |
| Case No. 2:10-cv-03261 | ) | |

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Bradley Shiver, Scott Russell, and Mark Mead file this response and memorandum in opposition to Defendants' Motion to Dismiss (Rec. Doc. 24736).

**I.      BACKGROUND**

On Tuesday, April 20, Bradley Shivers, Scott Russell, and Mark Mead set out for a 36-hour fishing trip. Compl. ¶ 1, 4. At around 9:45 p.m. that evening, Mr. Shivers observed a distant light. *Id.* ¶ 7. Mr. Shivers viewed the light through his binoculars and saw that it appeared to be an oil rig that was on fire. *Id.* Mr. Shivers turned on the vessel's VHF whereupon he and Plaintiffs Mead and Russell heard a woman's voice over channel 16 of the vessel's VHF calling for help and stating that they were abandoning the rig. *Id.* ¶ 8. Shortly thereafter, the plaintiffs heard and felt a concussion from an explosion. *Id.* ¶ 9. The Plaintiffs immediately responded to the mayday call. *Id.* ¶ 9.

Only one other boat was on scene when the Plaintiffs arrived. *Id.* ¶ 13. Plaintiffs found a chaotic scene, they saw survivors' bodies lying onboard and several people were still in the

water. *Id*. ¶ 14. People were screaming and crying out for help. *Id*. ¶ 15. Plaintiff Russell particularly remembered encountering a badly burned survivor pleading for help. *Id*.

Plaintiffs searched around the burning rig in the debris filled water for 10-15 missing persons. *Id*. ¶ 16 - 17. Everyone was in shock. *Id*. ¶ 20. Plaintiffs continued searching for hours by making laps around the burning Deepwater Horizon. *Id*. ¶ 21 - 23. Throughout the night, Plaintiffs repeatedly felt and heard deep rumbling sounds coming from below the surface of the water. *Id*. ¶ 24.  The deep rumbling sounds appeared to the Plaintiffs as being caused by other explosions. *Id*. Despite being frightened, Plaintiffs continued to circle the burning oil rig in hopes that they could save others. *Id*.

Eventually, after hours passed, the Plaintiffs concluded that the missing men would likely never be found. *Id*. ¶ 25. By around 3:00 on the morning of April 21, there were approximately 40 boats on the scene and the Coast Guard choppers flying overhead. *Id*. ¶ 26. Plaintiffs concluded that they could be of no further help and returned home. *Id*. ¶ 27 – 28.

Upon returning home on April 21, Plaintiff Mark Mead collapsed. *Id*. ¶ 29. Plaintiff Mark Mead experienced days of painful anxiety attacks and recurring images of what he had seen and heard. *Id*. Mr. Mead continued to experience stress and depression following the incident. *Id*.

Upon returning home on April 21, Plaintiff Scott Russell broke down in tears when he saw his wife. *Id*. ¶ 30. Mr. Russell suffers from severe emotional distress, discomfort, and anguish. *Id*.

Upon returning home on April 21, Plaintiff Bradley Shivers also broke down in tears when he saw his wife. *Id*. ¶ 31. Mr. Shivers suffers from severe emotional distress, discomfort, and anguish. *Id*. ¶

On July 20, 2010, Plaintiffs Bradley Shivers, Mark Mead, and Scott Russell filed their Complaint for their personal injuries suffered as first responders to the Deepwater Horizon explosion and fire. Plaintiffs alleged three causes of action against Defendants: 1) negligence; 2) wantonness, recklessness, willful disregard, and gross negligence; 3) intentional or reckless infliction of emotional distress.

On August 10, 2018, Defendants filed their Motion to Dismiss for Failure to State a Claim.

## II.  LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). A court should deny a Rule 12(b)(6) motion to dismiss as long as a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Generally, "[m]otions to dismiss are viewed with disfavor and are rarely granted." *Id.*

## III.  ARGUMENT

Initially, Plaintiffs agree with the Defendants that general maritime law is applicable for the claims asserted in their Complaint. However, Plaintiffs disagree with the Defendants' blanket assertions that federal maritime law precludes Plaintiffs' from recovering mental anguish or emotional distress damages in this action and that Plaintiffs did not alleged physical injury or

damage to property. Defendants summarily assert that Plaintiffs have failed to state a claim and their cases should be dismissed under any source of law that might be asserted to apply.

> **A.  At the motion to dismiss stage, Plaintiffs' Complaint contains sufficient facts, which must be accepted as true, properly stating multiple claims to relief that are plausible on its face**

> **1.  Courts in the Fifth Circuit Have Recognized "Zone of Danger" Theory.**

Plaintiffs may recover for emotional distress under general maritime law, even if the Court determines that Plaintiffs' injuries are purely emotional in nature, traditionally when a plaintiff can satisfy the "physical injury or impact rule." *See Gough v. Nat. Gas Pipeline Co. of Am.*, 996 F.2d 763, 765 (5th Cir. 1993)(citing *Plaisance v. Texaco, Inc.*, 966 F.2d 166, 168-69 (5th Cir. 1992)). However, as stated in *Anselmi v. Penrod Drilling Corp.*, 813 F. Supp. 436, 442 (E.D. La. 1993), "[u]nder the right circumstances, one may recover for purely emotional harm under a zone of danger theory if the facts place the plaintiff within the definable zone." The plaintiff must have been objectively within "a zone of danger," he or she feared at the time of the incident that his or her life or person was in danger, and his or her emotional injuries must be a reasonably foreseeable result of the defendant's negligence. *Id.*

While some courts in the Fifth Circuit have applied the "zone of danger" test to emotional distress claims, *see Anselmi v. Penrod Drilling Corp.*, 813 F. Supp. 436, 443 (E.D. La. 1993), the Fifth Circuit has "declined to **adopt or preclude** the zone of danger theory." *Gough v. Nat. Gas Pipeline Co. of Am.*, 996 F.2d 763, 766 (5th Circ. 1993)(internal citations omitted)(emphasis added). Defendants begin their argument by misleadingly asserting that the Fifth Circuit has **refused** to recognize a "zone of danger" tort theory that would allow Plaintiffs to recover by citing *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 224 (5th Cir. 2013). However, the *Barker* Court carefully explained that the Fifth Circuit has "left open 'the question

whether a [bystander] may recover for purely emotional injuries under a zone of danger theory' at maritime law." *Id*. at 224 (citing *Plaisance v. Texaco, Inc*., 966 F.2d 166, 168-69 (5th Cir. 1992).

Whether the Fifth Circuit has had to address this applicability of the zone of danger tort theory and whether they have specifically refused to recognize this tort theory are two different things entirely. In *Barker*, the Court held that "[w]e need not decide today whether the zone of danger theory applies to non-Jones act maritime claims, because even if it were to apply, Barker could not satisfy the requirements of that theory as a matter of law" because "Barker was not in 'immediate risk of physical harm.'" *Id*.

Unlike *Barker*, Plaintiffs Mead, Shivers and Russell navigated their fishing boat in a circle around the exploding rig. The ocean underneath them was bubbling with small explosions, they had to navigate steel obstacles and other debris which damaged their boat, they gladly provided survivors their water, food, medical supplies and other personal items, and despite being afraid that another major explosion could occur at any time, they continued to search for bodies and survivors. This was not an instant explosion and then, all of a sudden, the danger ended. The Deepwater Horizon oil rig explosion and its immediate danger lasted for hours.

In *Gough*, 996 F.2d at 766, the Fifth Circuit awarded damages to the captain of a fishing vessel for his emotional injuries after the vessel collided with an exposed natural gas pipeline, causing a fire on the vessel.  In doing so, the court applied the physical injury or physical impact rule. *Id*. The court reasoned that the captain jumped overboard in the Gulf of Mexico to avoid the flames and that the heat from the fire was unbearable even on the water. *Id*. The court also considered evidence that the captain suffered from minor burns, even though no medical records confirmed this injury. *Id*. Finding that the captain satisfied the physical injury or physical impact

rule, the Fifth Circuit declined to analyze the captain's emotional distress claim under the zone of danger theory. *Id*. at 767.

In reviewing the precedent of the Fifth Circuit, the United States District Court for the Eastern District of Louisiana applied the zone of danger test to a crane operator's claim for emotional distress damages after the rig upon which he was working caught fire. *Anselmi*, 813 F. Supp. at 442 (analyzing *Hagerty v. L & L Marine Serves, Inc*., 788 F.2d 315 (5th Cir. 1986); *Gaston v. Flowers Transp.*, 866 F.2d 816 (5th Cir. 1989); *Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546 (5th Cir. 1992); *Plaisance v. Texaco, Inc.*, 966 F.2d 166 (5th Cir. 1992)). The court denied the defendant's motion for summary judgment, holding that whether the crane operator was within the zone of danger and whether his emotional injuries were reasonably foreseeable were questions of fact for the jury to decide. *Id.* at 442–43. The court reasoned that the crane operator "felt the impact of the explosion and was within fifty to seventy-five feet of flames." *Id.* at 442. Regarding the foreseeability of the crane operator's emotional injuries, the court held that "[o]ne fairly reliable measure of foreseeability is the effect the explosion had on other crewmembers." *Id.* at 442–43. Considering the testimony of another crewmember's emotional injuries after suffering through the same incident, the court held that summary judgment in regard to the crane operator's claim for emotional distress damages was inappropriate. *Id.* at 443; *see also Gibbs v. Petroleum Helicopters, Inc.*, 629 So. 2d 437, 444 (La. Ct. App. 1993) (finding trial court misinterpreted Fifth Circuit law when it granted defendant's motion for summary judgment on plaintiff's emotional damages claim and declined to apply the zone of danger test).

At the motion to dismiss stage and considering that the Eastern District of Louisiana has specifically applied the "zone of danger" theory in other cases, Plaintiffs' Complaint contains sufficient facts, which must be accepted as true, stating multiple claims to relief that are plausible

on its face. Moreover, the questions as to whether the plaintiffs were within the zone of danger and "[w]hether the plaintiff's frightened reaction to the incident is a reasonably foreseeable consequence of the defendant's negligence" are questions of fact for the jury and "cannot be dealt with summarily." *Anselmi v. Penrod Drilling Corp.*, 813 F. Supp. 436, 442-43 (E.D. La. 1993).

> **2. Plaintiffs' Complaint properly demonstrates that Plaintiffs were in the zone of danger, that Plaintiffs feared for their life, and that Plaintiffs' emotional injuries were reasonably foreseeable as first responders to the Deepwater Horizon.**

Defendants cite three factually distinguishable cases to support their position that Plaintiffs have not properly alleged that they experienced an "immediate risk of physical harm" yet they ignore the specific allegations set forth in Plaintiffs' Complaint. First, Defendants cite *Barker* where the plaintiff was simply standing near his co-worker who fell to his death. 713 F.3d at 224. The Court in that case correctly determined that because **plaintiff did not allege any facts** demonstrating that he was in immediate risk of physical harm, the zone of danger theory would not apply. *Id*. at 225 (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 548 (1994)). On the other hand, Plaintiffs in the present case have alleged that they were actively involved in the search and rescue attempts of missing persons while the facts demonstrate that they were at risk of further explosions, fire, or running their boat into the debris filled waters surrounding the Deepwater Horizon. Compl. ¶¶ 7 - 24.

Second, Defendants cite *Ainsworth* where the plaintiff witnessed a helicopter crash from the control room, which occurred approximately 100 feet away from the control room and was separated from the helicopter by bow leg of the rig. 972 F.2d at 548. Defendants' memorandum failed to note that the plaintiff specifically testified in his deposition that **he knew the helicopter would not crash into the control room** and that he admitted **he did not fear for his life as a**

**result of the crash**. *Id*. The Court in that case correctly determined at the summary judgement stage, because of plaintiffs' own deposition testimony, the helicopter crash neither threatened him with physical harm nor caused him to fear that it would harm him thus negating his zone of danger argument. *Id*.  In the present case, Plaintiffs specifically alleged that they were frightened and that there were deep rumbling sounds coming from below the water. Compl. ¶ 24. Moreover, Plaintiffs were not protected by a control room or bow leg as the plaintiff was in *Ainsworth*. The Plaintiffs were exposed to the dangers of further explosions and fire from the Deepwater Horizon and also by the dangers of the waters surrounding it for hours. Their experience was not a momentary encounter.

Third, Defendants cite *Plaisance* where the plaintiff was a tugboat captain that witnessed a fire on another barge that his vessel was assisting. 966 F.2d 166 (5th Cir. 1992). The Court determined at summary judgment that the tugboat captain was never in danger and no one was injured by the fire on the other barge. *Id*. at 167. Again, the Court correctly determined that the plaintiffs in that case "have not presented a prima facie case to recover any damages from the incident" under any theory of recovery. *Id*. at 168-169. Specifically, the Court concluded that the experienced tugboat captain's injury "was not a reasonably foreseeable consequence of the alleged negligence." *Id*. at 168.  Again, Plaintiffs in the present case were actively involved in the search and rescue process for the missing persons in the waters around the Deepwater Horizon. Furthermore, due to the unprecedented consequences of Defendants negligence, it is more than reasonable that Plaintiffs would experience severe emotional distress.

Plaintiffs in the present case allege that they were close enough that they heard and felt a concussion from an explosion. Compl. ¶ 9. These facts are similar to the facts of *Anselmi* where the plaintiff *"*felt the impact of the explosion." 813 F. Supp. at 442. Conversely, none of the

plaintiffs in *Barker*, *Ainsworth*, or *Plaisance* alleged that they physically felt the incident which formed the basis of their complaints. Here, the Plaintiffs also alleged that they searched around the burning Deepwater Horizon for hours (while an uncontrolled flow of oil rushed to the surface), at night, in the debris filled water for missing persons in an effort to try to save lives. *Id.* ¶¶ 16 – 17. On the other hand, the plaintiffs in *Barker*, *Ainsworth*, and *Plaisance* experienced situations where they were never truly in danger.

The uncontrolled well event and uncontrolled blowout, multiple explosions and ongoing fires that occurred aboard and around the Deepwater Horizon are unprecedented and made for a chaotic, dangerous, and unpredictable situation. The fire that engulfed the platform of the Deepwater Horizon burned for approximately 36 hours until it sank on April 22. Plaintiffs were in immediate danger throughout the several hours they assisted in the search for survivors. Plaintiffs feared for their lives as they were unsure when and if another explosion would occur.

Defendants summarily assert that the Plaintiffs do not attempt to plead "immediate physical harm" as if there is authority requiring plaintiffs to use those exact magic words in order to properly plead their case instead of pleading the facts that demonstrate the immediate physical harm. The reality is that Plaintiffs case differs dramatically from each of the aforementioned cases. Whether all of the facts alleged by the Plaintiffs in the present case puts them within "the zone of danger" is a question of fact for the jury. Moreover, to what degree the Plaintiffs were frightened and whether their emotional injuries a reasonably foreseeable consequence of the Defendants' negligence are also questions of fact for the jury.

### 3. Alternatively, Plaintiffs have plead sufficient facts demonstrating physical impact under the "physical impact or injury rule."

Plaintiffs arguably meet the standards of the "physical impact or injury rule." Before participating in the search and rescue efforts, Plaintiffs "heard and felt a concussion" from the

initial explosion at the Deepwater Horizon. Compl. ¶ 9. Again, these facts are comparable to the facts in *Anselmi* where the plaintiff "felt the impact of the explosion." 813 F. Supp. at 442. As such, Plaintiffs have plead sufficient facts to withstand Defendants' Motion to Dismiss.

### 4. Finally, Plaintiffs have properly plead claims for relief under general maritime law or Louisiana Law.

On September 4, 2014 this Honorable Court found that BP was grossly negligent in causing the Deepwater Horizon explosion, and that its activities at the Macondo well amounted to willful misconduct. Order, First Phase Trial, 9/14/2014, Doc. 13355; *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 21 F.Supp.3d 657, 2014 A.M.C. 2113 (E.D. La. 2014). The finding of gross negligence and willful misconduct against BP is significant with respect to Plaintiffs' claims.

The Eastern District of Louisiana, has held that a plaintiff may recover for negligent **and** intentional infliction of emotional distress for purely emotional injuries. *See Frazier v. Callais & Sons, Inc.,* WL 717666 (E.D. La. Sept. 13, 1999); *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396 (1994). Louisiana law also recognizes the tort of intentional infliction of emotional distress without physical injury. *Morris v. Maryland Cas. Co.*, 657 So. 2d 198 (La. Ct. App. 3d Cir. 1995). The  elements in a claim for intentional infliction of emotional distress are: (1) that defendant's conduct was so extreme in degree and so outrageous in character that it went beyond all bounds of decency and was utterly intolerable in civilized community; (2) that such conduct caused severe emotional distress; and (3) that defendant intended, by performing the acts complained of, to inflict severe emotional distress on plaintiff, or that defendant knew that such severe emotional distress would be certain or substantially certain to result from the conduct. *See Deus v. Allstate Insurance Co*., 15 F.3d 506, 514 (5th Cir. 1994); *see also Restatement (Second)*

*of Torts* § 46 (1965) ("one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress ...").

The Defendants' brief is almost exclusively related to the negligence claim. Defendants only summarily assert that Plaintiffs cannot plead claims for intentional infliction of emotional distress. This lack of analysis by the Defendants, coupled with the September 4, 2014 holding by this Honorable Court, demonstrate that the Motion to Dismiss must be denied in its entirety.

## IV.    CONCLUSION

Plaintiffs respectfully requests that this Court enter an Order denying Defendants' Motion to Dismiss. In the present case, Plaintiffs suffered severe emotional damages at the hands of Defendants gross negligence and willful conduct. Furthermore, Plaintiffs have sufficiently plead enough facts to establish and support their claims. The fact intensive nature of determining whether the Plaintiffs were within the zone of danger and whether their fear and emotional distress were a reasonably foreseeable consequence of a defendant's negligence makes this an inappropriate issue to be dealt with summarily. Accordingly, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

Dated: September 4, 2018

/s/ William R. Sutton_____
Rhon E. Jones (ASB-7747-E52R)
William R. Sutton, Esq. (ASB-3903-L74S)
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
(800) 898-2034
(334) 954-7555
Rhon.Jones@BeasleyAllen.com
William.Sutton@BeasleyAllen.com

11

/s/ Adam M. Milam

ADAM M. MILAM, Esq. (MILAA2597)
MILAM & MILAM, LLC
2206 Main Street
Daphne, AL 36526
(251) 928-0191
(251) 928-0193 fax
amilam@milam-law.com
**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing *Ex Parte Motion For Extension of Time Within Which to File Responsive Pleadings* has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 4th day of September, 2018.

/s/ William R. Sutton

OF COUNSEL