UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL 2179** |
| | **SECTION: J** |
| **This Document Relates to:** | **JUDGE BARBIER** |
| *No. 12-1713, Andry, et al, v. BP Products North America, Inc., et al.* | **MAGISTRATE WILKINSON** |

## PLAINTIFFS' FIRST SUPPLEMENTAL AND AMENDED COMPLAINT

Plaintiffs, Albert Andry, III, Ryan Chaisson and Dustin King, by and through undersigned counsel, file this *First Supplemental and Amended Complaint,* as follows:

### PARTIES

1. Plaintiff, Albert Andry, III, is a citizen of full age and majority of the State of Louisiana. Mr. Andry is domiciled in Jefferson Parish.

2. Plaintiff, Dustin King, is a citizen of full age and majority of the State of Louisiana. Mr. King is domiciled in St. Tammany Parish.

3. Plaintiff, Ryan Chaisson, is a citizen of full age and majority of the State of Louisiana. Mr. Chaisson is domiciled in St. Tammany Parish.

4. Defendant, BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois and is registered to do, and is doing, business in the State of Louisiana.

5. Defendant BP Products North America Inc. ("BP North America") is a Maryland entity with its principal place of business in Warrenville, Illinois and is registered to do, and is doing, business in the State of Louisiana.

6. Defendant BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas and is registered to do, and is doing, business in the State of Louisiana.

7. Defendant BP p.l.c. is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. BP at all pertinent times was doing business in the State of Louisiana and within this district through control of its wholly-owned subsidiaries BP Exploration and BP America. BP Exploration and BP America are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally.

8. Hereafter, BP Exploration, BP North America, BP America and BP p.l.c. are collectively referred to in this Complaint as "BP."

9. Transocean Ltd. is a Swiss corporation that maintains U.S. offices in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district.

10. Transocean Offshore Deepwater Drilling Inc. ("Transocean Offshore") is a Delaware corporation with its principle place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Offshore is affiliated with Transocean Ltd.

11. Transocean Deepwater, Inc. ("Transocean Deepwater") is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Deepwater is affiliated with Transocean Ltd.

12. Transocean Holdings, LLC ("Transocean Holdings") is a Delaware corporation with its principal place of business in Houston, Texas, and at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Holdings is affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean Offshore.

13. Triton Asset Leasing GmbH ("Triton") is a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is affiliated with Transocean Ltd.

14. Hereafter, Transocean Ltd., Transocean Deepwater, Transocean Offshore, Transocean Holdings and Triton are collectively referred to in this Complain as "Transocean."

15. Defendant Cameron International Corporation d/b/a Cameron Systems Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas, and is registered to do, and is doing, business in the State of Louisiana.

16. Defendant Halliburton Energy Services, Inc. is a Delaware corporation with its principal place of business in Houston, Texas, and is registered to do, and is doing, business in the State of Louisiana.

## JURISDICTION

17. Plaintiffs' claims against Defendants arise under General Federal Maritime Law of the United States. Specifically Plaintiffs bring a claim against Defendants for maritime negligence.

18. All civil cases of General Federal Maritime Law are under the original jurisdiction of United States District Courts pursuant to 28 U.S.C. § 1333.

19. In addition, this Court also has personal jurisdiction over foreign entity BP p.l.c. under agency and alter ego principles, because BP p.l.c.'s agents, BP America and BP Exploration, do business in Louisiana. BP America and BP Exploration are both wholly-owned

subsidiaries of BP p.l.c. In BP p.l.c.'s Annual Report for 2009, in which it presents a consolidated financial statement that includes BP America and BP Exploration, BP p.l.c. states that it "controls" both BP America and BP Exploration, among other subsidiaries, meaning that it has "the power to govern the financial and operating policies of the [subsidiary] so as to obtain benefit from its activities …." Moreover, BP p.l.c. undertook the duty for pay and/or gratuitously to clean up the Oil Spill and as a result is liable for its acts and omissions in the attempt to clean-up the Oil Spill.

20. Samplings of BP p.l.c.'s contacts with the U.S. are as follows: (a) BP p.l.c.'s American Depository Shares are listed on the New York Stock Exchange, and BP p.l.c. is the largest non-U.S. company listed on the NYSE; (b) roughly 40% of BP's shares are owned by U.S. individuals and institutions; (c) BP p.l.c. files annual reports with the U. S. Securities and Exchange Commission; (d) approximately 60% of BP p.l.c.'s fixed assets are located in the U.S. or the European Union; and (e) BP p.l.c. reports having 2,100 U.S.-based employees in non-Exploration & Production, non-Refining and Marketing BP entities.

## FACTUAL ALLEGATIONS

21. This case arises from the April 20, 2010, explosion of the Deepwater Horizon rig and Macando well.

22. The underlying events occurred upon navigable waters.

23. BP Exploration was a lease holder and the designated operator in the lease granted by the former Mineral Management Service ("MMS") allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252 area on the Outer Continental Shelf, approximately 50 miles southeast of Venice, Louisiana.

24. The Deepwater Horizon was a floating semi-submersible drilling rig owned by Transocean. It was built in 2001, utilized dynamic positioning technology, and was designed to move from location to location as necessary.

25. Transocean Holdings is party to the contract with BP regarding the lease of the Deepwater Horizon rig for drilling operations in the Gulf of Mexico.

26. BP leased the drilling rig from Transocean for $500,000 per day. The total lease contract was worth more than $544 million.

27. At the time of its explosion on April 20, 2010, the Deepwater Horizon rig was being operated by BP for the purposes of drilling an exploratory well at the Macondo prospect on the Mississippi Canyon Block 252.

28. BP America was the party to the Drilling Contract with Transocean Ltd. for the drilling of the Macondo well by the Deepwater Horizon rig.

29. Transocean provided the personnel to operate the Deepwater Horizon rig.

30. Transocean also provided operational support for drilling-related activities on board the Deepwater Horizon rig, as well as onshore supervision and support for those drilling activities at all times relevant to the Oil Spill.

31. On April 20, 2010, combustible gas flowed uncontrolled into the wellbore traveling up to the rig floor where it was ignited leading to a fiery explosion on the Deepwater Horizon rig.

32. Defendants were unable to regain control of the well, and the fiery explosion onboard the Deepwater Horizon rig caused the vessel to be destroyed and sink to the bottom of the gulf.

33. The Deepwater Horizon tragedy was caused by, among other things, a failure of the rig's well's control system.

34. Cameron supplied much of the rig's inadequate, defective blow out prevention ("BOP") equipment. The BOP equipment designed, manufactured and marketed by Cameron was defective. The BOP equipment is unreasonably dangerous in its manufacture, design and/or composition, failed to comply with an express warranty, and failed to contain adequate warnings and instructions.

35. Transocean was negligent in failing to properly maintain the BOP equipment for the Deepwater Horizon rig in accordance with safe practices and federal regulations.

36. Cameron, BP and Transocean failed to ensure that the BOP equipment possessed the necessary technology to properly function including adequate safeguards and redundant systems to prevent blowouts.

37. Halliburton was in charge of cementing the well, but failed to safely do its job. Halliburton's failures contributed to the explosion.

38. On April 28, 2010, the U.S. Coast Guard named BP Exploration as a "Responsible Party" under the Oil Pollution Act ("OPA") for the Oil Spill resulting from the explosion aboard the Deepwater Horizon rig and the subsequent uncontrolled blowout of the MC252.

39. BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operation.

40. Defendants' negligent actions and omissions caused the blowout of the Macondo well leading to the explosion, destruction and sinking of the Deepwater Horizon rig and subsequent uncontrolled discharge of oil into the Gulf of Mexico.

41. Fishing under oil rigs is a favorite pastime of sportsmen throughout the Gulf of Mexico. At night the huge lights on the rigs attract clouds of baitfish to the surface, and those fish, in turn, lure major predators, such as tuna.

42. Defendants are well aware that fisherman regularly chose locations near or around their rigs, specifically the Deepwater Horizon rig, to fish for tuna.

43. On April 20, 2010, Albert Andry and his friends - Ryan Chaisson, Dustin King, and Westley Bourg - left Venice around 3 p.m. in Andry's 26-foot catamaran, the Endorfin, and spent the afternoon fishing for blackfin tuna near BP's Amberjack Rig 109 near the South Pass of the Mississippi River.

44. Plaintiffs that evening decided they would try their luck beneath the Deepwater Horizon rig.

45. They were fishing for bait under the lip of the platform when an unknown liquid substance began raining down from the rig's network of pipes -- so much that Mr. Andry thought the crew was dumping the bilges to keep the Deepwatwer Horizon rig from sinking.

46. Upon contact with the unknown liquid substance, Plaintiffs' eyes started burning and there was a sudden loud noise which Plaintiffs describe as "a hissing noise" loud enough to make it difficult to communicate.

47. Mr. Bourg had worked on rigs in the past and recognized what was happening. He just started screaming loudly in a panic, "Go, go, go! It's time to leave! Go, go!"

48. Mr. Andry accelerated his boat away from the rig as quickly as possible. When Plaintiffs got about 50 yards away they heard a boom, looked back and the lights went off on the rig. Then the whole rig exploded. Plaintiffs describe the explosion as "an out-of-this-world explosion."

49. Plaintiffs' estimate that within less than a minute an initial explosion "like a cannon sound" occurred, followed within seconds by another explosion.

50. Plaintiffs were in the zone of danger and were placed in immediate risk of physical harm.

51. Plaintiffs watched as the rig continued exploding and flames were shooting out of the rig. The water was on fire.

52. Plaintiffs watched people jump off the rig. It was eighty feet to the water. A person falling from that height would take about 2.25 seconds to hit the water and experience about 20 Gs -- roughly the same force as a car hitting a brick wall at 55 mph.

53. A supply boat was parked under the rig. Some people who jumped made it to that boat.

54. Plaintiffs communicated their desire to assist those who jumped in the water by radio. Plaintiffs were told not to approach. They watched helpless as some individuals who jumped off the rig drifted away and never made it to the supply boat.

55. Plaintiffs knew that by the time the Coast Guard arrived there was no one left alive on the rig.

## MARITIME TORT OF NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

56. Plaintiffs have brought this suit within the three years of the incident as required pursuant to 46 U.S.C.A. §30106.

57. As a result of said occurrences, Plaintiffs have suffered mental and emotional injuries consisting of post-traumatic stress disorder, fear, mental anguish, pain and suffering, loss of life's pleasures and inconvenience due to their being in the "zone of danger" at the time of the explosion and their physical exposure to the hazardous chemical fumes and debris in the air sounding them at the time of the explosion.

58. Plaintiffs' symptoms include, but are not limited to, intrusive thoughts of the Deepwater Horizon rig explosion, recurrent nightmares, psychological distress and physiological reactivity to olfactory, auditory and visual cues related to the explosion, avoidance symptoms, detachment in social interactions, difficulty falling asleep, waking in a sweat, withdrawal from relationships, frequent disruption in concentration, hyper-vigilance and exaggerated startle response. The symptoms have persisted for over two years and continue today.

59. Plaintiffs are emotionally disabled due to their traumatic experience.

60. Plaintiffs have incurred and will continue to incur the cost and expense of medical treatment as a result of their mental and emotional injuries.

61. The injuries sustained by the Plaintiffs were caused by the negligence, negligence *per se* and gross negligence of the Defendants and/or their agents, servants and/or employees.

62. Defendants, at all pertinent times, were under exclusive control of the Deepwater Horizon rig and Macondo well.

63. Defendants engaged in conduct that falls below the applicable standard or norm resulting in the explosion of the Deepwater Horizon rig and the Macondo well creating a risk of harm to Plaintiffs and all others on or near the Deepwater Horizon rig at the time of the explosion.

64. Defendants owed duties of care to Plaintiffs to, *inter alia*, navigate, man, possess, manage, maintain and operate the Deepwater Horizon rig with reasonable and ordinary care to protect others against unreasonable risks.

65. Defendants breached their duties to Plaintiffs by, *inter alia*, failing to properly manage, control, maintain and operate the Deepwater Horizon rig and its safety equipment.

66. Defendants also breached their duties to Plaintiffs by making and/or acquiescing to a series of reckless decisions concerning, *inter alia*, well design, the use of centralizers, mudding operations, cementing, integrity testing, deployment of the casing hanger lockdown sleeve, spacer material, simultaneous and distracting operations, and diversion of the flowing mud to the mud-gas separator.

67. Defendants also breached their duties to Plaintiffs by operating the Deepwater Horizon rig in such a manner that a fire and explosions occurred.

68. The injuries and damages suffered by Plaintiffs were caused by the acts and/or omissions of Defendants.  The blowout, explosion, fire and resulting spill would not have occurred had the Defendants satisfied the duty of care.

69. The explosion and resulting injuries of Plaintiffs was not due to any negligence on part of the Plaintiffs.

70. It was foreseeable that Defendants actions and/or omissions resulting in the explosion of the Deepwater Horizon rig and Macondo well would proximately cause damage, injury and harm Plaintiffs.

71. Defendants knew or should have known that the acts and omissions described herein could result in damage to Plaintiffs.

72. Defendants knew of the dangers associated with the deep water drilling and failed to take appropriate measures to prevent damage to their employees, Plaintiffs and the Gulf of Mexico's marine and coastal environments and estuarine areas.

## PUNITIVE DAMAGES

73. Defendants' actions and omissions were not only careless, but grossly negligent and reckless, with conscious disregard for the safety of others and the Gulf of Mexico's marine and coastal environments and estuarine areas.

74. Plaintiffs further seek punitive damages from Defendants. As set out above, Defendants were reckless and acted with conscious disregard of the welfare and safety of persons near or aboard the Deepwater Horizon rig. Defendants either knew or consciously disregarded the high probability of serious injury or death as a result of their reckless and gross negligent actions that caused the explosion on April 20, 2010.

Plaintiffs are entitled to fair and just compensatory damages and punitive damages from Defendants.

WHEREFORE, Plaintiffs prays:

    a.    That all Defendants be duly served with a citation and copy of this Complaint and be required to answer same, all in accordance with the law;

    b.    That after due proceedings are had that there be judgment herein in favor of Plaintiffs and against the Defendants for all damages which are reasonable, together with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings; and

    c.    All such other and further relief, at law and in equity, to which the Plaintiffs may be just entitled.

**Respectfully submitted**:

*/s/ Joseph M. Bruno*
Joseph M. Bruno (LA Bar No. 3604)
Markita Hawkins (LA Bar No. 35812)
BRUNO & BRUNO, LLP

855 Baronne Street
New Orleans, Louisiana  70113
Telephone:  (504) 525-1335
Facsimile:   (504) 561-6775
jbruno@brunobrunolaw.com
*Attorneys for Plaintiffs Andry, Chaisson, King*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 4th day of September, 2018.

*/s/ Joseph M. Bruno*