# EXHIBIT A

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* <br> No. 10-MD-2179 ||||
|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) ||||
| Last Name <br><br> Vargas | First Name <br><br> Marco | Middle Name/Maiden | Suffix |
| Business Name | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) <br><br> N/A |||
| MDL 2179 Member Case Number <br><br> 2:16-cv-04585 | Attorney Name and Firm <br><br> THE BUZBEE LAW FIRM |||

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than
**April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

EXHIBIT E

7307

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the Deepwater Horizon Oil Spill that occurred on April 20, 2010. Please see attached response to Question 1, which is incorporated herein. These responses are subject to amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions? (Yes or No) ¿Tiene en este momento un experto que pueda opinar sobre cualquiera de sus respuestas a las preguntas anteriores? (Si o no)
>
> Yes

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date/Fecha: _____ ABRIL, 13 _____, 2018

Location (City and State) Ubicacion (Ciudad and Estado): TAMIAHUA, VERACRUZ

_[signature]_
Signature of Plaintiff* Firma del demandante*

*El abogado del demandante **no puede** firmar en nombre del demandante. Para las empresas, el CEO, el CFO, el Presidente, el Propietario u otro funcionario corporativo de alto rango deben firmar.*

**\*Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.**

Marco Vargas
Print Name/ Imprimir nombre

_____
Title/Position (if signed on behalf of a business or other entity) Título / Cargo (si está firmado en nombre de una empresa u otra entidad)

**The verified statement, must be filed into the record of the plaintiff's individual lawsuit (as opposed to the master docket for MDL 2179) no later than April 11, 2018.**

5

7307

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1. Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico. The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected. The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following: Claimant operates 29 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat, including a reduction for fuel, supplies and cost of goods sold. The calculation was calculated based on the average loss per boat. Claimant seeks damages in the amount of $**476,615**, plus interest, and other damages the Court finds should be awarded.

2. The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3. The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico. This area was not limited to four counties in Texas, Louisiana

and parts of Florida. The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism. Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business. The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters. Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage. Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied. Today, Claimant

asserts the application of other treaties. On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a. Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.
b. Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").
c. Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.
d. Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and

an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4. The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.

\*\* These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.