UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 |
| | | SECTION: J(2) |
| This Document Relates To: | * | |
| | | JUDGE BARBIER |
| *No. 12-970* | * | |
| | | MAG. JUDGE WILKINSON |
| | * | |

## ORDER
### [Regarding Communications from Thoai Nguyen]

The Court recently has received multiple communications and documents from Thoai Nguyen. Ms. Nguyen is not an attorney, nor a party to a case before the Court, nor a claimant in one of the class settlement programs overseen by this Court. Ms. Nguyen has assisted around 30 Vietnamese-American claimants with preparing and filing claims in the Deepwater Horizon Economic and Property Damages Settlement, which is administered by the Court Supervised Settlement Program ("CSSP").

Ms. Nguyen's communications have come in two waves. The first began on July 20, 2018, when Ms. Nguyen sent a 22-page, single-spaced fax to chambers. (Exhibit 1 to this Order.[1]) The July 20th fax was followed by additional faxes on July 30 and August 2. (Exhibits 2 and 3, respectively.) During this time, Ms. Nguyen also delivered a large stack of documents to chambers as well as a flash

---

[1] The Court has attempted to redact claimant-identifying information in the Exhibits to this Order.

drive said to contain even more documents.[2] The second wave of communications began on September 7, 2018, when Ms. Nguyen included chambers staff and the Chief Judge of this Court on an email to the CSSP, Class Counsel, and other parties. That email led to a series of response and reply emails between the CSSP's Appeals Coordinator and Ms. Nguyen that have continued through September 29, 2018. (Exhibit 4 to this Order.)

**The First Wave of Communications and Documents**

As mentioned, Ms. Nguyen sent a 22-page, single-spaced fax to chambers on July 20, 2018. That fax actually contains two letters, one to the undersigned and one to the CSSP's Claims Administrator. Ms. Nguyen asserts that the CSSP, the CSSP's vendors, attorneys outside the CSSP, other third parties, and perhaps also Court employees have engaged in a "systematic, wide-spread, and well-coordinated . . . conspiracy" to commit fraud, discrimination, and other illegal acts. (Ex. 1 at 9.) Ms. Nguyen claims that this conspiracy has affected 28 claimants she assisted, and she speculates that it likely affected many other claimants as well. Ms. Nguyen's allegations are broad and sometimes vague, making it somewhat difficult to understand what specific wrongs she claims to have occurred. However, page 13 of her fax contains what appears to be the best summary of her allegations:

> [I]t appears that early on in the process the Vendors, Attorneys and Third Parties conspired and filed fraudulent claims "on behalf" of Claimants, often relying on stolen personal and business Claimant information and fabricated retainer agreements. They then received and cashed in payments based on these claims. This, along with the resulting prior offset calculations, caused problems with the filings of subsequent claims, which in turn triggered investigations—into fraud committed by the Vendors, Attorneys and Third

---

[2] The Court has not placed these documents in the record.

> Parties and not the Claimants—further resulting in the flagging, suspension and eventual closures of claims. As the Reconsideration, Third Party Claim and Appeal processes unfolded, it became increasingly apparent that these were not random and isolated incidents, but rather the results of well worked out schemes designed to defraud the Claimants. The schemes have been actively perpetrated by the Vendors in conspiracy with the Attorneys and Third Parties.

(Ex. 1 at 13.)

Ms. Nguyen identifies around 80 individuals or entities that she believes participated in the alleged fraud. She requests that the Court open an investigation into her allegations or appoint a special master to do so. She also requests that the Court remove Class Counsel and certain persons within the CSSP from their positions.

Ms. Nguyen's second fax of July 30 is much shorter. (Ex. 2.) In it Ms. Nguyen states that she has filed or will soon be filing complaints with the FBI, the Department of Justice, the Louisiana Department of Justice, the IRS, and the Federal Trade Commission. She adds that she recently had a meeting with the FBI. On August 2, the Court instructed chambers staff to call Ms. Nguyen and inform her that the Court would not open an investigation into her claims or appoint a special master and that she should bring her allegations and any evidence to an investigative body such as the FBI, Secret Service, or local district attorney. Ms. Nguyen sent a fax to chambers that same day expressing her frustration at the Court's decision. (Ex. 3.)

As mentioned above, this first wave of communications also included a large number of documents (printed and on a flash drive) that purportedly support Ms.

Nguyen's allegations. The Court has reviewed some of these documents, but it is not apparent how these documents prove the conspiracy alleged by Ms. Nguyen.

**The Second Wave of Communications**

In contrast to the July 20th fax, Ms. Nguyen's second wave of communications (which came in the form of emails beginning on September 7, 2018) presents specific factual allegations regarding a single claimant and, consequently, is much easier to understand. It appears that in 2013 a law firm, Brent Coon & Associates ("BCA"), filed 22 claims with the CSSP on behalf of a claimant, whom the Court will refer to as "Claimant 100123626." According to Ms. Nguyen, Claimant 100123626 never retained any attorney to represent him in any matters pertaining to the oil spill and he had no knowledge these claims existed until September 4, 2018. Ms. Nguyen asserts, "Evidently, BCA stole [Claimant 100123626's] personal and business information and established legal representation based upon which BCA filed these claims." (Ex. 4 at 9.) Ms. Nguyen's initial email, which is directed to the CSSP's Claims Administrator, asks a number of questions, such as: Why was BCA permitted to file these claims? What information was submitted in connection with these claims? Why was Claimant 100123626 never notified by the CSSP regarding these claims? The email also includes the paperwork necessary to remove BCA as counsel and make Ms. Nguyen an "Authorized Recipient" of claims information pertaining to Claimant 100123626. Later emails from Ms. Nguyen accuse the CSSP, CSSP's vendors, and BCA of being involved in a "criminal conspiracy" to defraud Claimant 100123626. (*See, e.g.*, Ex. 4 at 4.)

The CSSP responded by removing BCA as Claimant 100123626's attorney and giving the claimant access to the online claim files (thus permitting the claimant to see what information had been filed in connection with these claims). With respect to Ms. Nguyen's question about why BCA was permitted to file 22 claims on behalf of Claimant 100123626, the CSSP's Appeals Coordinator explained that the Registration Form submitted to the CSSP in 2013, which appeared to be electronically signed by Claimant 100123626, authorized BCA to file claims on behalf of the Claimant. As to Ms. Nguyen's question about why Claimant 100123626 was not notified about claims filed on his behalf, the Appeals Coordinator responded that when a claimant is represented by an attorney, the CSSP communicates directly with the attorney, not the client. The Appeals Coordinator then stated, "To the extent the Claimant is contending that this Registration Form was electronically executed by BCA rather than by the Claimant without his consent or authority to do so, that is an issue that the Claimant should raise with BCA." (Ex. 4 at 2.) He added that Ms. Nguyen's allegations of "criminal conspiracy" regarding the CSSP and its vendors "are inappropriate and baseless, and these claims have been fully and finally resolved for over five years." (Ex. 4 at 3.)[3]

---

[3] The Appeals Coordinator explained that each of the 22 claims filed with the CSSP were denied in 2013 because Claimant 100123626 executed a release after receiving a payment from the Gulf Coast Claims Facility (the claims facility that preceded the CSSP). Consequently, no money was paid by the CSSP to anyone on these claims.

**The Court Denies Ms. Nguyen's Requests**

As mentioned above, Ms. Nguyen asks the Court to open an investigation into her allegations and/or appoint a special master to do so. The Court denies these and any other requests by Ms. Nguyen for the reasons stated below.

First, as mentioned above, Ms. Nguyen is not an attorney, nor a party to a case before this Court, nor a claimant in the CSSP. Consequently, Ms. Nguyen lacks standing or the representative capacity to request this relief.

Second, courts typically do not perform the role of an investigator, nor does the Court have the resources to investigate Ms. Nguyen's wide-ranging accusations. Thus, to the extent Ms. Nguyen or the claimants she purports to represent believe anyone associated, directly or indirectly, with the CSSP has committed fraud, identity theft, or some other illegal conduct, any allegations and evidence supporting same should be directed to the appropriate investigative entity, such as the FBI, Secret Service, U.S. Attorney, local district attorney, or other law enforcement agency. If Ms. Nguyen or the claimants wish to make a complaint against a specific attorney admitted to practice before this Court and have evidence of misconduct, that claimant may file a formal complaint with the Clerk of Court pursuant to the E.D. La. Rules for Lawyer Disciplinary Enforcement.[4] The person may also file a complaint with the Louisiana Attorney Disciplinary Board or, for attorneys licensed to practice in other states, the analogous body in that state.[5]

---

[4] Available on the Court's public website at http://www.laed.uscourts.gov/attorney-information/rules-and-orders/disciplinary-rules.
[5] On a related note, the Court agrees with the CSSP Appeals Coordinator's guidance, "To the extent the Claimant is contending that this Registration Form was electronically executed by BCA

Ms. Nguyen points out that in March of 2013 this Court issued an order that required BCA to show cause why its lien for attorney fees against a CSSP claimant should not be denied (Rec. Doc. 8996) and that the Court subsequently held a hearing where it determined that the claimant did not hire an attorney and dismissed BCA's attorney fee lien against the claimant (Rec. Doc. 9201). That instance, however, concerned a narrow request (to deny an attorney fee lien) that turned on a very narrow issue (whether one claimant had entered into a contract with a particular attorney). Furthermore, the Court was presented with a finite amount of evidence that clearly showed that the signature on the contract did not belong to the claimant. By contrast, here Ms. Nguyen asks the Court to investigate a much broader matter—what she perceives to be a criminal conspiracy to commit fraud by some 80 individuals and entities that allegedly affects at least 28 claimants and perhaps many more. Furthermore, Ms. Nguyen attempts to support her allegations with a stack of documents (plus many more on a flash drive), the significance of which is not readily apparent.

Ms. Nguyen also points out that this Court appointed a special master in 2013 to perform an independent investigation into certain matters within the CSSP. (*See* Rec. Docs. 10564, 11287, 11288.) But such an appointment is not the norm.[6] Moreover, the circumstances and evidence supporting that appointment were far

---

rather than by the Claimant without his consent or authority to do so, that is an issue that the Claimant should raise with BCA." (Ex. 4 at 2.)

[6] Indeed, the appointment order noted, "The duties of this appointment will **not** involve **traditional** special master roles involving mediation, discovery, fact finding, or substantive law." (Rec. Doc. 10564 at 2 (emphasis added).)

more compelling than what is presented here.[7] It should also be mentioned that a special master does not work for free; someone must pay the special master's fees. The Court finds the circumstances do not warrant imposing such costs on anyone.

The Court adds that while it was reviewing Ms. Nguyen's communications, it requested some basic information from the CSSP regarding the status of the claims filed by the 28 claimants referenced in Ms. Nguyen's July 20th fax, such as which claims were determined eligible for payments, how much was paid on eligible claims, and which claims were denied. The CSSP reports that nearly all of the 28 claimants filed more than one claim. While some claims were denied payment, each of the 28 claimants received payment on at least one claim, whether it was from the CSSP or one of the previous claims processing facilities (the GCCF or the BP Claims Program). In aggregate, these 28 claimants were paid around $11 million by the CSSP, GCCF, and the BP Claims Program, the vast majority of which came from the CSSP. The claimant receiving the lowest amount was paid $6,000; the highest amount received by a claimant was $1.3 million. The average amount paid to a claimant was around $393,000.

It is of course possible that a claimant could receive a settlement payment and still be the victim of fraud, identity theft, discrimination, etc. Accordingly, the Court does not propose that the above figures disprove any of Ms. Nguyen's

---

[7] *See, e.g.*, Rec. Doc. 10564 at 2 ("Certain recent events have arisen that led to the resignation of a staff attorney at the CSSP. An internal investigation by the CSSP is underway. However, the Court has concluded that in order to ensure the integrity of the program for the benefit of the parties and the public, an independent, external investigation of this matter should be performed.").

allegations. At the same time, however, the above figures do not exactly shout fraud.

The Court repeats the guidance offered above: To the extent Ms. Nguyen or the claimants she purports to represent believe anyone associated, directly or indirectly, with the CSSP has committed fraud, identity theft, or some other illegal conduct, any allegations and evidence supporting same should be directed to the appropriate investigative entity, such as the FBI, Secret Service, U.S. Attorney, local district attorney, or other law enforcement agency. If Ms. Nguyen or the claimants wish to make a complaint against a specific attorney admitted to practice before this Court and have evidence of misconduct, that claimant may file a formal complaint with the Clerk of Court pursuant to the E.D. La. Rules for Lawyer Disciplinary Enforcement.[8] The person may also file a complaint with the Louisiana Attorney Disciplinary Board or, for attorneys licensed to practice in other states, the analogous body in that state.

To conclude,

To the extent Ms. Nguyen's communications should be considered a motion or request for relief, IT IS ORDERED that Ms. Nguyen's motion/request is DENIED.

New Orleans, Louisiana, this 2nd day of October, 2018.

_____
United States District Judge

---

[8] Available on the Court's public website at http://www.laed.uscourts.gov/attorney-information/rules-and-orders/disciplinary-rules.

Note to Clerk: Mail a copy of this Order to

Thoai Nguyen
3032 Mt. Blanc Dr.
Marrero, LA 70072