EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
Civil Action No. 10-MD-2179-CJB-SS

**PTO 66 PARTICULARIZED STATEMENT OF CLAIM
FOR REMAINING B3 PLAINTIFFS**

PLAINTIFF'S FULL NAME: Allen Walker

Please answer every question to the best of your knowledge.

You are signing and submitting this Particularized Statement of Claim under penalty of perjury and therefore must provide information that is true and accurate.

If you **cannot** recall all of the details requested, please provide as much information as you can.

For each question where the space provided does not allow for a complete answer, please attach as many additional sheets of paper as necessary to fully answer the question.

**NOTE**: Please provide information regarding the person **who claims injury or damages**. The terms "you" and "your" refer only to that person, not to the individual who may be completing this form in a representative capacity. If the person who claims injury or damages is deceased, the personal representative should respond as of the time immediately prior to his or her death unless a different time period is specified.

**A. YOUR BACKGROUND INFORMATION**

1. Current address:
   Address Line 1: 1811 East Lakeshore Dr
   Address Line 2:
   City: Carriere    State: MS    Zip: 39426
2. Telephone number: (504) 710-2950
3. Maiden or other names used or by which you have been known, and the dates during which you were known by such names: N/A
4. Date and Place of Birth: REDACTED; Port Arthur, TX
5. Male  X    Female _____

6. Each address (other than your current address) at which you have lived during the last ten (10) years, and list the dates of residence for each one:

| Address | Dates of Residence |
|---|---|
| See Attachment A | |
| | |
| | |

7. Employment Information:

   A. Current and past employer(s) over the last 10 years, 2008-2018 (if unemployed, last employer):

| Employer | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| See Attachment B | | | |
| | | | |
| | | | |
| | | | |

8. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes __X__ No_____ If *"Yes,"* when were you out of work and why? Following the oil spill in 2015, Plaintiff was out of work due to the economic downtown in the oil industry.

B. **THE PLAINTIFF AND THE *DEEPWATER HORIZON* OIL SPILL**

9. Did BP, a government entity, or another company or entity hire you to perform cleanup work in response to the oil spill?

    Yes **X**     No ____

*If you responded "Yes" to Question No. 9, please proceed to Question No. 10.*

*If you responded "No" to Question No. 9, please skip to Question No. 14.*

   1. **Cleanup Workers**

(The term "cleanup worker" shall have the same meaning as that defined in the Medical Benefits Settlement Agreement. (Rec. Doc. 6427-1 at 11-12, 25).)

10. Was your cleanup work performed onshore (on land) or offshore (on the water)?

    Onshore ____     Offshore ____     Both **X**

11. Were you hired as part of the Vessels of Opportunity ("VoO") Program?

    Yes **X**     No ____

12. Did you handle hazardous materials as part of your cleanup work?

    Yes **X**     No ____

13. Please set forth the following information about your cleanup work:

    A. Your employer(s): **British Petroleum**

    B. Your supervisor(s) at the employer(s) identified in Question No. 13(A):
    **Plaintiff cannot recall exact names of supervisors.**

    C. A description of the work performed for employer(s) identified in Question No. 13(A): **As boat captain, Plaintiff transported sick and contaminated clean up workers to the infirmary, transported Coast Guard to areas saturated with oil.**

    D. The date(s), time(s), and location(s) you performed the work described in Question No. 13(C): **Plaintiff performed work approximately 8 days in June 2010 in the Gulf of Mexico.**

    E.    The names of any vessel(s) on which or facility(ies) where you performed the work described in Question No. 13(C): **X-Factor**

    F.    Any person(s) or entity(ies) other than your employer who oversaw, supervised, or managed your work described in Question No. 13(C): **None**

**2. Residents/Tourists**

14. Do you allege that you were exposed to oil or chemical dispersants while a *resident* of a Gulf Coast State (*i.e.*, Alabama, Florida, Louisiana, Mississippi, or Texas)?

    Yes **X**    No _____

15. Do you allege that you were exposed to oil or chemical dispersants while a *tourist* in a Gulf Coast State (*i.e.*, Alabama, Florida, Louisiana, Mississippi, or Texas)?

    Yes _____    No **X**

16. List all address(es) at which you resided in 2010: **1811 E Lakeshore Dr, Carriere, MS 39426; 2008 Metairie Ct, Metairie, LA 70005; 127 E Sunnybrook Rd, Carriere, MS 39426**

**C. INFORMATION ABOUT YOUR B3 CLAIM**

17. Are you claiming that you suffered damages from (*Check all that apply*):

    **X** Bodily injury from exposure to oil and/or dispersants

    _____ Bodily injury other than from exposure to oil and/or dispersants

    _____ A breach of contract

*If you checked "Bodily injury from exposure to oil and/or dispersants," answer the questions in Parts D & F below.*

*If you checked "Bodily injury other than from exposure to oil and/or dispersants," answer the questions in Part E & F below.*

*If you checked "A breach of contract," answer the questions in Part G below.*

**D.   EXPOSURE CLAIMS**

18. Were you exposed to oil, dispersants, or both?

    Oil_____          Dispersants_____          Both __X__

19. How were you exposed? (*Check all that apply*)

    A.   Inhalation              Yes __X__     No_____

    B.   Dermal (skin) contact   Yes __X__     No_____

    C.   Ingestion               Yes __X__     No_____

    D.   Other (please describe): __N/A_____

20. What was the date(s) of your exposure?

    Day: __Every Day__   Month: __Approximately May 2010-- Jan 2011__   Year: __2010-2011__

21. How many time(s) were you exposed to oil or dispersants (for each time, please note whether the exposure was to oil, dispersants, or both)?

    Plaintiff was exposed to both oil and dispersants from approximately May 2010 to January 2011 most days of each month.

22. What was the geographic location(s) of your exposure (for each location, please note on what date this exposure occurred and whether the exposure was to oil, dispersants, or both)?

    Plaintiff was exposed to both oil and dispersants in the Marshlands of Louisiana and in the Gulf of Mexico from approximately May 2010 to January 2011

23. For each time that you were exposed to oil or dispersants or both, for how long were you exposed to this substance or chemical?

    Plaintiff was exposed to oil and dispersants for approximately 5 to 16 hours a day.

24. Describe in as much detail as possible the circumstance(s) in which your exposure to the oil spill and/or chemical dispersant occurred: While performing cleanup duties, Plaintiff was exposed to oil in the Gulf. Plaintiff was exposed to dispersants that were released by planes into the Gulf. He was forced to sit in and handle contaminated water each day. As a diver, he came in direct contact with both oil and dispersants.

25. *For cleanup workers only*: Did you report your exposure to oil and/or dispersants to your direct supervisor?

    Yes_____   No  X

26. *If you answered "Yes" to Question No. 25,* Provide the name of the supervisor to whom you reported your exposure and the date you first reported the exposure:
    N/A

**E.  NON-EXPOSURE PERSONAL INJURY CLAIMS**

27. For your non-exposure personal injury, please state:

    A. The nature of your injury: N/A

    B. The date(s) of your injury: N/A

    C. The location(s) of your injury: N/A

    D. The work that you were performing when you sustained your injury: N/A

    E. Identify any individual(s) who witnessed your injury: N/A

28. Describe in as much detail as possible the circumstance(s) of your injury: N/A

**F. INFORMATION ABOUT YOUR INJURY OR ILLNESS**

29. Describe in as much detail as possible the bodily injury (or medical condition) that you claim resulted from the spill or your cleanup work in response to the oil spill: _____

   Plaintiff suffered & continues to suffer from nausea, neurological damage, shortness of breath, respiratory problems including bronchitis, pneumonia, burning of lungs, bruising, severe skin problems, elevated levels of toxic chemicals in blood, signs of decaying nails, vision loss, kidney problems, blood in urine & stool.

30. Please explain how your injury (or medical condition) resulted from the spill or your cleanup work in response to the oil spill:

   Plaintiff did not present any medical conditions described in F29 prior to his exposure to oil & dispersants. Lab results evidence elevated levels of Volatile Organic Compounds in his blood, including high levels of benzene and certain aromatic hydrocarbons associated with British Petroleum crude oil. See also response to F39.

31. On what date did you first report or seek treatment for your injury or illness: December 2010

32. On what date was your injury first diagnosed: Dec. 28, 2010

33. Identify the doctor(s) (or other healthcare providers) who first diagnosed your injury (or condition):

| Name | Address |
|---|---|
| Dr. Michael Robichaux, Sr. | 1023 Wood St., #A, Houma, LA 70360 |
|  |  |

34. Identify doctor(s) (or other healthcare providers) who have treated your injury (or condition):

| Name | Address |
|---|---|
| See Attachment C | |
| | |
| | |
| | |

35. Have you ever suffered this type of injury or condition before (i.e., before the date given in your answer to Question No. 32)? Yes _____ No __X__. If "*Yes*,"

    A. When? N/A

    B. Who diagnosed the injury (or condition) at that time? N/A

    C. Who treated the injury (or condition) at that time? N/A

36. Do you claim that your exposure to the oil spill and/or chemical dispersant worsened an injury (or condition) that you already had or had in part?

    Yes _____ No __X__. If "*Yes*,"

    A. What date did you first experience such injury or condition? N/A
    B. What injury (or condition) was made worse? N/A

37. Please list your family and/or primary care physician(s) for the past ten (10) years:

| Name | Address |
|---|---|
| Gina Rivero, NP | 146 Highland Pkwy, Ste C, Picayune, MS 39466 |
| Nanci Parish, NP | 1702 Hwy 11, Ste A, N Picayune, MS 39466 |
| | |
| | |
| | |

38. Do you have in your possession, custody, or control, any medical records, bills, and any other documents, from physicians, healthcare providers, hospitals, pharmacies, insurance companies, or others who have provided treatment to you relating to the diagnosis or treatment of any injuries or illnesses arising from the *Deepwater Horizon* oil spill or response efforts, or that you otherwise identified in this Form?

    Yes __X__   No _____

39. Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount:_____

    See Attachment D
    _____
    _____

40. Have you received workers compensation or other compensation or reimbursement for the injury alleged or associated expenses?

    Yes_____   No __X__

    If "Yes":

    A.   From whom did you receive this compensation or reimbursement? N/A
    _____

  B.  When did you receive this compensation or reimbursement? __N/A__

  C.  What was the amount of the compensation or reimbursement? __N/A__

**G.**  **CONTRACT CLAIMS**

  *(For plaintiffs claiming breach of contract.)*

41. Is your claim based on a breach of contract?

  Yes_____  No_____

42. Was the contract that you claim was breached made as part of the VoO Program?

  Yes_____  No_____

43. Identify the contract that you allege was breached including any associated contract number (e.g., MVCA number and the parties to the contract):
__N/A__

44. Describe how the contract was breached:
__N/A__

45. *If you were part of the VoO Program*: Describe whether or not you were placed on-hire and, if applicable, the date(s) you were on-hire:
__N/A__

46. *If you allege that you were placed on-hire:* Provide the date(s) you were placed off-hire:
__N/A__

47. Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount:
__N/A__

48. Describe specifically how the breach of contract you allege in response to Question No. 44 caused the damages you allege in response to Question No. 47.

N/A

Case 2:10-md-02179-CJB-DPC   Document 24963-1   Filed 10/05/18   Page 11 of 20

Attachment A

| Address | Dates of Residence |
|---|---|
| 1811 E Lakeshore Dr<br>Carriere, MS 39426 | March 2011 - Present |
| 127 E Sunnybrook Rd<br>Carriere, MS 39426 | September 2010 – March 2011 |
| 2008 Metairie Ct<br>Metairie, LA 70005 | June 2010 – September 2010 |
| 1811 E Lakeshore Dr<br>Carriere, MS 39426 | December 2006 – June 2010 |

Attachment B

| Employer | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Cajun Encounter | 941 Decatur St, #101, New Orleans, LA 70116 | 2016 - 2018 | Swamp Tour Boat Captain |
| Unemployed | 1811 E Lakeshore Dr Carriere, MS 39426 | 2015 | N/A |
| Gulf Resource Management, Inc | 4811 Industrial Dr New Iberia, LA 70560 | Approximately November, 2014 | Boat Captain |
| Sea-Tran Offshore Services | 107 HWY 90 West New Iberia, LA 70560 | Approximately September – December 2013 | Boat Captain |
| International Offshore Services, LLC | 11864 LA-308, Larose, LA 70373 | Approximately May – October 2012 | Boat Captain |
| Allen Walker (Sole Proprietor) DBA Extreme Charters | 1811 E Lakeshore Dr Carriere, MS 39426 | 2008 - 2012 | Sole Proprietor |
| Captain Al's Seafood Grill, LLC | 3 Liberty Rd Picayune, MS 39466 | 2009 | Owner |
| Allen Walker (Sole Proprietor) DBA Construction | 1811 E Lakeshore Dr Carriere, MS 39426 | August – December 2008 | Sole Proprietor |
| Allen Walker (Sole Proprietor) DBA Tuna Kahuna Rodeo | 1811 E Lakeshore Dr Carriere, MS 39426 | January – March 2008 | Sole Proprietor |

Attachment C

| Name | Address |
|---|---|
| Dr. Michael Robichaux, Sr. | 1023 Wood Ste, A<br>Houma, LA 70360 |
| Dr. Kashmir Rai | 2901 N Causeway Blvd<br>Metairie, LA 70002 |
| Nanci Parish, NP | 1702 Hwy 11 N<br>Picayune, MS 39466 |
| Gina Rivero, NP | 146 Highland Pkwy Ste C<br>Picayune, MS 39466 |
| Dimitri Dermatology | 300 Gateway Dr<br>Slidell, LA 70461 |
| Dr. Morteza Shamsnia | 2905 Kingman Street<br>Metairie, LA 70006 |
| Clinical Pathology Laboratories | P.O. Box 141669<br>Austin, TX 78714 |
| Metametrix Clinical Laboratory | 3425 Corporate Way<br>Duluth, GA 30096 |

Allen Walker

Attachment D

Plaintiff was exposed to oil and dispersants while employed as a clean up worker and diver in Louisiana and the Gulf of Mexico, and a resident of Louisiana and Mississippi during the period of the BP oil release and resulting Corexit dispersant contamination in 2010.

Crude oil contains benzene and other volatile organic compounds (VOCs) such as ethylbenzene, toluene, xylene and naphthalene, polycyclic aromatic hydrocarbons (PAHs), diesel fumes and heavy metals such as aluminum, cadmium, nickel, lead and zinc. Dermal exposure to certain VOCs in crude oil is known to cause swelling, redness, irritation and rash and blisters on the skin and mucous membranes. Exposure by inhalation to some VOCs is known to cause ocular soreness, redness, watering and itching, cause respiratory problems such as coughing, throat irritation, shortness of breath and wheezing, and cause nervous system problems such as nausea, vomiting, dizziness, irritability, confusion, and weakness of extremities. Benzene is a known mutagen and carcinogen, and according to the CDC can cause ventricular fibrillation, congestive gastritis, toxic gastritis, pyloric stenosis, myalgia, kidney damage, vascular congestion in the brain, lethal nervous system depression and leukemia.

Corexit® 9500 contains petroleum distillates, propylene glycol, and organic sulfonic acid salt. Corexit® EC9527A contains 2-butoxyethanol (EGBE), organic sulfonic acid salt and propylene glycol. These dispersants are known to cause headaches, nausea, vomiting, diarrhea, abdominal pains, dizziness, chest pains and tightness, irritation of the eyes, nose, throat, and lung, decreased lung function, breathing difficulties, respiratory system damage, rapid breathing, asthma attacks, allergic reactions, skin irritation, damage, and sensitization, hypertension, damage to liver and kidneys, central nervous system depression, neurotoxic effects, damage to red blood cells, genetic damage and mutations, reproductive and developmental damage, immune system damage, cardiac arrhythmia, cardiovascular damage and increased severity of chronic obstructive pulmonary disease.

Mr. Walker participated in BP clean-up duties at the age of 41 in the summer of 2010 as a boat crew member. His main responsibilities included transporting the Coast Guard to areas saturated in oil and evacuating people with issues such as heat exposure, etc. Due to defendants' breach of contract for Plaintiff to perform turtle rescue operations, Plaintiff then began diving in oil –contaminated waters and filming the oil release, selling his footage to CNN and other media groups. The Coast Guard and BP were aware of his activities and did not express any concern to him. However, after three to four months of diving, he began defecating blood and was forced to stop diving. Also as a result of defendants' breach of contract, Plaintiff attempted to launch a new business selling oil boom.

During this time, he did not use any personal protective gear when handling oil or oil-contaminated objects. He was directly exposed to BP petroleum and Corexit dispersant with it adhered on his hands and face, in his eyes, and inhalation of oil mist. He also fully immersed himself in and ingested contaminated water. He used soap and water to remove oil from his body with 18+ hours elapsing before thorough bathing. Plaintiff's neoprene dive suit internally flooded with sea water during use as designed, and his equipment was never successfully cleaned. Laboratory tests performed on his diving equipment evidence oil residue which matched crude oil that leaked from the Macondo Well. His regular clothes were cleaned as normal causing contamination to be brought into the household environment.

Allen Walker

Since the release, Plaintiff has suffered from lower respiratory symptoms including bronchitis as well as wheezing with shortness of breath. He has used a nasal inhaler and over a dozen medications. He has had skin rashes including severe dermatitis, fingernails and toenails decaying, bruising on the body, blood in his urine and stools, nausea, neurological damage, vision loss, and kidney function loss. These symptoms have continued to the present time. Plaintiff has tested at extremely high levels for benzene and other volatile chemicals on three separate occasions. In response, Mr. Walker has endured numerous IV treatments for metal chelation. Plaintiff has been told by physicians that he seems to have a serious form of eczema and psoriasis. He has also had lumps under his skin. Plaintiff fears that there may be long term, serious health consequences resulting from exposure to these toxic chemicals. Additionally, Mr. Walker's wife, Roxanne, has also suffered due to his injuries.

Plaintiff's toxic exposure has caused him to incur medical expenses and he will continue to incur medical expenses for his ongoing treatment. Plaintiff estimates approximately $17,367.76 per year in medical expenses based upon the three years following the spill. Given a life expectancy of 76 years, his lifetime medical expenses are reasonably estimated to be $1,081,154.24 (based on 3.15% inflation rate).

| Years Starting 2011 | Medical Expense |
|---|---|
| 1 | $17,367.76 |
| 2 | $17,914.84 |
| 3 | $18,479.16 |
| 4 | $19,061.25 |
| 5 | $19,661.68 |
| 6 | $20,281.02 |
| 7 | $20,919.87 |
| 8 | $21,578.85 |
| 9 | $22,258.58 |
| 10 | $22,959.73 |
| 11 | $23,682.96 |
| 12 | $24,428.97 |
| 13 | $25,198.49 |
| 14 | $25,992.24 |
| 15 | $26,811.00 |
| 16 | $27,655.54 |
| 17 | $28,526.69 |
| 18 | $29,425.28 |
| 19 | $30,352.18 |
| 20 | $31,308.27 |
| 21 | $32,294.48 |
| 22 | $33,311.76 |
| 23 | $34,361.08 |
| 24 | $35,443.45 |
| 25 | $36,559.92 |
| 26 | $37,711.56 |
| 27 | $38,899.47 |

| | |
|---|---|
| 28 | $40,124.81 |
| 29 | $41,388.74 |
| 30 | $42,692.48 |
| 31 | $44,037.30 |
| 32 | $45,424.47 |
| 33 | $46,855.34 |
| 34 | $48,331.29 |
| 35 | $49,853.72 |
| Totals | **$1,081,154.24** |

General damages resulting from Plaintiff's injuries include the extreme loss of enjoyment of life, inconvenience, loss of consortium, and past and future mental and physical pain and suffering. His life, and that of his family, will never be the same again, and he fears he may develop cancer from exposure to the toxic chemicals. Based on the quantum study below, Plaintiff estimates his general damages to be valued at approximately $10,450,000.00.

**Personal Injury**
*Estate of Hall v. Atlantic Richfield Co.*, Babcock & Wilcox, 1998 WL 35010870 (M.D.Pa). JVR No. 442282. Twelve plaintiffs suffered multiple injuries including several types of cancers and death when they were exposed to radioactive waves that escaped from a facility that was owned and operated by the defendants. The plaintiffs contended that defendants negligently operated the facility by allowing the emission of radiation into the nearby town, failed to ensure that all radioactive emissions were controlled to decrease the threat of potential exposure to residents, and that their negligence resulted in the plaintiffs' injuries. The defendants denied liability, disputed the plaintiffs' injuries and contended that the plaintiffs failed to provide strict proof thereof. Plaintiffs awarded $36,500,000.

*Lewis v. Diamond Offshore Drilling Inc.,* 12 So. 3d 363, 2007-00477 (La. App. 4 Cir. 4/8/09). Plaintiff, a rig mechanic, was working for several years on the drilling rig *The Ocean Spartan* in Lake Maracaibo, Venezuela. While aboard the vessel he developed various illnesses attributable to the polluted and toxic working conditions. Jury found for plaintiff and awarded him $7,000,000.

**Loss of Consortium**
*Darvis v. Gencorp Polymer Prods.*, No. 89-cv-0387, 1991 WL 718502 (Ohio Com.Pl. Feb. 28, 1991). Plaintiff was employed as a dockworker for a trucking company. While unloading a truck, plaintiff observed a punctured drum of a chemical known as Gen Glaze Ec-550, which was manufactured by defendant and emits high levels of styrene. After reading the label, plaintiff believed that, at most, the chemical could cause irritant or flu-like symptoms. Plaintiff proceeded to clean up the spill. Thereafter, plaintiff became very dizzy and nauseous and suffered coughing spasms. Because of his coughing spasms, he suffers from esophageal reflux and was ultimately diagnosed as suffering solvent-induced encephalopathy. Plaintiff alleged that defendant was negligent in shipping a hazardous chemical without providing adequate warnings of the serious and long-term health effects associated with exposure to the chemical. Defendant contended that the label

provided adequate warnings. Plaintiff awarded $957,000 and spouse awarded $100,000 for loss of consortium.

**Increased Risk of Cancer**
*Lester v. Exxon Mobil Corp.,* 120 So. 3d 767 (La. Ct. App. 2013)
Plaintiffs were exposed to naturally occurring radioactive material (NORM) while cleaning an oil company's pipe and tubing. Only five Plaintiffs were awarded damages for medical monitoring because each of these Plaintiffs suffered from fecal hemoccult, an elevated creatinine kinase, and/or opacity in the left lung, which all directly relate to NORM exposure. These five Plaintiffs were awarded approximately $34,000 - $46,000. The court awarded six Plaintiffs $50,000.00 each and two Plaintiffs $40,000.00 each in damages for the fear of contracting cancer. The court also awarded five Plaintiffs $150,000 - $350,000 in damages for the increased risk of cancer, while three Plaintiffs were denied these damages. Lastly, Plaintiffs were awarded $60,000 - $669,000 in punitive damages. Total damages ranged from $100,000 to $1,115,000.

Based on the foregoing, the total damages associated with Plaintiff's claim in this matter are as follows:

| | |
|---|---|
| $10,000,000.00 | General Damages/ Personal Injury |
| $     350,000.00 | General Damages/ Increased Risk of Cancer |
| $     100,000.00 | Loss of Consortium |
| $  1,081,154.24 | Medical Expenses |
| **$11,531,154.24** | **TOTAL DAMAGES** |

## ATTESTATION

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that any damages described in response to Questions Nos. 39 or 47 were caused by any injury or breach of contract alleged in response to Questions Nos. 29 and 44.

I acknowledge that I have an obligation to supplement the above responses if I learn that they are in any material respect incomplete or incorrect.

Executed on the following date at the following location:

Date: _July 9_, 2018

Location (City and State): _Carriere MS_

_Allen Walker_
Signature of Plaintiff*

*Plaintiff's Attorney **Cannot** Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_Allen Walker_
Print Name

_____
Title/Position (*if signed on behalf of a business or other entity*)

**By no later than Monday, July 9, 2018,** this Particularized Statement of Claim must be served on Counsel for BP and the MDL 2179 Plaintiffs' Steering Committee by mailing it to the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan<br>Kirkland & Ellis LLP<br>300 North LaSalle St., Suite 2400<br>Chicago, IL 60654 | c/o: Steve Herman<br>820 O'Keefe Ave.<br>New Orleans, LA 70113 |

## ATTESTATION

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that any damages described in response to Questions Nos. 39 or 47 were caused by any injury or breach of contract alleged in response to Questions Nos. 29 and 44.

I acknowledge that I have an obligation to supplement the above responses if I learn that they are in any material respect incomplete or incorrect.

Executed on the following date at the following location:

Date: July 9, 2018

Location (City and State): Carriere, MS

_Roxanne Walker_
Signature of Plaintiff*

*Plaintiff's Attorney **Cannot** Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

Roxanne Walker
Print Name

_____
Title/Position (*if signed on behalf of a business or other entity*)

By no later than **Monday, July 9, 2018**, this Particularized Statement of Claim must be served on Counsel for BP and the MDL 2179 Plaintiffs' Steering Committee by mailing it to the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn:  J. Andrew Langan | c/o: Steve Herman |
| Kirkland & Ellis LLP | 820 O'Keefe Ave. |
| 300 North LaSalle St., Suite 2400 | New Orleans, LA 70113 |
| Chicago, IL 60654 | |