UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL 2179 |
| | * | SECTION: J |
| | * | JUDGE BARBIER |
| This Document Relates to: *Pleading Bundle B1* | * | MAG. JUDGE SHUSHAN |

---

| | | |
|---|---|---|
| GLYN EVANS | * | CIVIL ACTION |
| | * | SECTION |
| VERSUS | * | JUDGE |
| BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION COMPANY, BP, PLC, TRANSOCEAN, TLD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., TRANSOCEAN HOLDING, L.L.C., TRITON ASSESSET LEASING GMBH, HALLIBURTON ENERGY SERVICES, INC., CAMERON INTERNATIONAL CORPORATION F/K/A COOPER-CAMERON CORPORATION, WEATHERFORD U.S.L.P., ANADARKO PETROLEUM CORPORATION CO., ANADARKO E&P COMPANY LP, MOEX OFFSHORE 2007 LLC, MOEX USA CORPORATION AND MITSUI OIL EXPLORATION CO., LTD. | | SECTION: MAG. |

---

## COMPLAINT FOR DAMAGES

NOW INTO COURT, undersigned counsel comes plaintiff, GLYN EVANS, a person of

the full age of majority and a domiciliary of the Parish of Orleans, State of Louisiana;, who

respectfully represent:

1

I.

This is an action brought on behalf of plaintiff who was engaged in offshore clean-up of the BP oil spill and who had to have his leg amputated when a blister on his foot became infected when BP oil contaminated the sore on his foot.

II.

Defendants in this action are as follows:

A.    BP EXPLORATION AND PRODUCTION, INC. ("BP Exploration"), Defendant, Cross-Defendant in Limitation and/or Third-Party Defendant in Limitation, is a Delaware Corporation with its principal place of business in Warrenville, Illinois.  BP Exploration was a lease holder and the designated operator in the lease granted by the former Minerals, Management Services (MMS) allowing it to perform oil exploration, drilling and production-related operations in Mississippi Canyon Block 252, location known as "Macondo" where the spill originated.  BP Exploration was designated as a "Responsible Party" by the U. S. Coast Guard under the Oil Pollution Act of 1990, 33 U.S.C. § 2714. This court has personal jurisdiction over BP Exploration because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

B.    BP AMERICA PRODUCTION COMPANY ("BP America"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in Houston, Texas.  BP America was the party to the drilling contract with Transocean Ltd. for the drilling of the Macondo well by the Deepwater Horizon vessel.  This Court has personal jurisdiction over BP America,

2

because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

C.    BP, p.l.c, Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. BP p.l.c. is one of the world's largest energy companies with over 80,000 employees and $239 billion in revenues in 2009. BP p.l.c. operates its various business divisions, such as the "Exploration and Production" Division in which BP Exploration and BP America fall, through vertical business arrangements aligned by product or service groups. BP p.l.c.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c's agents in Louisiana and the U.S. more generally.

1.    BP p.l.c. states that it is the leading producer of oil and natural gas in the United States and the largest investor in U.S. energy development. A sampling of BP p.l.c.'s contacts with the U.S. are as follows: (a) BP p.l.c.'s American Depository Shares are listed on the New York Stock Exchange and BP p.l.c. is the largest non-U.S. company listed on the NYSE; (b) roughly 40% of BP's shares are owned by U.S. individuals and institutions; ( c) BP p.l.c. files annual reports with the U.S. Securities and Exchange Commission; (d) approximately 60% of BP p.l.c.'s fixed assets are located in the U.S and has based employees in non-Exploration & Production, non-Refining & marketing BP entities

3

2.  This Court has general jurisdiction over BP p.l.c. pursuant to Louisiana's longarm general jurisdiction provision (13 Louisiana Statute § 3201(B), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. BP p.l.c. does business in Louisiana, has had continuous and systematic contacts with Louisiana (and the U.S. more generally).

3.  Alternatively, if BP p.l.c. contests that it is subject to jurisdiction under Louisiana's long-arm jurisdiction statute, then this Court may exercise personal jurisdiction over BP p.l.c. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, the federal long-arm jurisdiction provision, because claims in this action arise under federal law and the exercise of jurisdiction over BP p.l.c. is consistent with the United States Constitution and laws."

4.  This Court also has specific jurisdiction over BP p.l.c. pursuant to Louisiana's long-arm specific jurisdiction provision (13 Louisiana Statute § 3201(B), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. Plaintiffs' causes of action arise out of wrongful conduct committed by BP p.l.c., directly or indirectly by its agents, that caused injury or damage in Louisiana by an offense or quasi offense committed through an act or omission outside of Louisiana, and BP, p.l.c. regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. These acts or omissions took place both before the blowout resulting in the oil spill and in the negligent conduct of BP, p.l.c. after the blowout in attempting to contain the catastrophic damage

4

caused by the oil spill.

5.   In addition, this Court also has personal jurisdiction over BP p.l.c. under agency principles, because BP p.l.c.'s agents, BP America and BP Exploration, do business in Louisiana.  BP America and BP Exploration are both wholly-owned subsidiaries of BP p.l.c.  In BP p.l.c.'s Annual Report for 2009, in which it presents a consolidated financial statement that includes BP America and BP Exploration, BP p.l.c. states that it "controls" both BP America and BP Exploration, among other subsidiaries, meaning that it has "the power to govern the financial and operating policies of the [subsidiary] so as to obtain benefit from its activities . . . ." 194.  BP p.l.c.'s direct, joint and/or assumed responsibility and/or liability for safety and well control, both before and/or after the explosions and blowout on April 20, 2010.  This is further evidenced by the announcement of the Macondo Project on the BP website hosted and copyrighted by BP p.l.c., the publication of information concerning the casualty and spill on the BP website hosted and copyrighted by BP, the express and/or implied acceptance of responsibility for the safety of BP operations in North America and the Gulf of Mexico in statements by officers of BP p.l.c., the presence (upon information and belief) of a BP p.l.c. officer or employee on the Deepwater Horizon for the celebration that occurred shortly before the explosions and fire, the direct participation of BP p.l.c. officers and employees in the governmental post-casualty investigations, the direct participation of BP p.l.c. officers and employees in the post-casualty well-control efforts, and the direct participation of BP p.l.c. in

the establishment and/or funding of the Escrow Fund and/or Gulf Coast Claims Facility.

BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as "BP." As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and relating and overseeing the contractors working on the various aspects of the well and the drilling operations.

D.      TRANSOCEAN, LTD. ("Transocean Ltd.") is a Swiss corporation that maintains substantial U.S. offices in Houston, Texas, and at all pertinent times was doing business in the State of Louisiana and within this district. According to its Complaint and Petition for Exoneration from or Limitation of Liability, Transocean Ltd .was an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

E.      TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. ("Transocean Offshore") is a Delaware corporation with its principal place of business in Houston, Texas, and, at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Offshore is affiliated with Transocean Ltd. And was an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

F.      TRANSOCEAN DEEPWATER, INC. ("Transocean Deepwater"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Deepwater is affiliated with Transocean Ltd. and was an owner, managing owner, owner

6

pro hac vice, and/or operator of the Deepwater Horizon.

G.    TRANSOCEAN HOLDING, L.L.C. ("Transocean Holdings"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in Houston, Texas, and at all pertinent times was doing business in the State of Louisiana and within this district. Transocean Holdings is affiliated with Transocean Ltd. And is a wholly-owned subsidiary of Transocean Offshore. Transocean Holdings is an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon and participated in the Deepwater Horizon's offshore oil drilling operations at the Macondo prospect, where the Spill originated. More specifically, Transocean Holdings is party to the contract with BP regarding the lease of the Deepwater Horizon for drilling operations in the Gulf of Mexico. On April 28, 2010, the U.S. Coast Guard named Transocean Holdings as a "Responsible Party" under the Oil Pollution Act for the surface oil spill resulting from the blowout by the Deepwater Horizon.

H.    TRITON ASSET LEASING GMBH ("Triton"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is affiliated with Transocean Ltd. and is an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon.

Transocean Ltd., Transocean Deepwater, Transocean Offshore, Transocean Holdings, and Triton are hereinafter referred to collectively as "Transocean." At the Macondo site, Transocean provided the Deepwater Horizon vessel and personnel to operate it. At all times relevant to the

Spill, Transocean, subject to BP's inspection and approval, was responsible for maintaining well control equipment, such as the blowout preventer and its control systems. Transocean also provided operational support for drilling-related activities on board the Deepwater Horizon, as well as onshore supervision and support for those drilling activities at all times relevant to the Spill.

I.    HALLIBURTON ENERGY SERVICES, INC. ("Halliburton"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations. Halliburton was responsible for the provision of technical advice about the design, modeling, placement, and testing of the cement that was used in the Macondo well. At and before the time of the blowout, Halliburton was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons like gas and oil. Halliburton division Sperry Drilling Services (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations. Throughout this Complaint "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

8

BP, Transocean and Halliburton are collectively referred to herein as the "Drilling Defendants," as they were all involved in the drilling, cementing, and other temporary well abandonment activities of the Deepwater Horizon, and thus their actions caused and/or contributed to the Spill.

J.    CAMERON INTERNATIONAL CORPORATION f/k/a COOPER-CAMERON CORPORATION ("Cameron"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in Houston, Texas. Cameron is registered to do and does business in the State of Louisiana. Cameron manufactured, designed, supplied, and/or installed the Deepwater Horizon's sub-sea emergency well-closure device known as a blowout-preventer ("BOP"), which is, and was at all material times, an appurtenance of the vessel and a part of the vessel's equipment. The Cameron-made BOP that was installed at the Macondo wellhead failed to operate as intended at the time of the blowout on April 20, 2010, was improperly designed, was inappropriate for the intended environment or use, and/or possessed product defects. Cameron manufactured defective blowout preventors; and failed to properly test the blowout preventor to ensure that it could withstand an explosion.

K.    WEATHERFORD U.S.L.P. ("Weatherford"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Louisiana limited partnership that maintains its principal place of business in Houston, Texas, and at all pertinent times hereto was registered to do, and was doing business in Louisiana and within this district. Weatherford designed and manufactured, marketed, sold, and/or distributed the casing

components such as the float collar, shoe, and centralizers appurtenant to the vessel, and provided the personnel and equipment for running the casing and casing components into the wellbore.

L.    ANADARKO PETROLEUM CORPORATION CO. ("Anadarko"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in the Woodlands, Texas. Anadarko is registered to do and does business in the State of Louisiana. Andarko is an oil and gas exploration and production company.

M.    ANADARKO E&P COMPANY LP ("Andrko E&P"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware limited partnership with its principal place of business in the Woodlands, Texas. Anadarko E&P is registered to do and does business in the State of Louisiana. Anadarko E&P is an oil and gas exploration and production company.

N.    MOEX OFFSHORE 2007 LLC ("MOEX Offshore"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is a Delaware corporation with its principal place of business in Houston, Texas. MOEX Offshore does business in the State of Louisiana and/or in state and/or federal waters off the coast of Louisiana. MOEX Offshore is a wholly-owned subsidiary of MOEX USA Corporation.

O.    MOEX USA CORPORATION ("MOEX USA"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is incorporated in Delaware and has its principal place of business in Houston, Texas. MOEX USA is the parent company of MOEX Offshore. According to Texas Secretary of State records, the stated business

10

purposes of MOEX USA include the direct or indirect engagement in the business of "exploration, development and production of hydrocarbons and any business related to the exploration, development and production of hydrocarbons," and the acquisition of "Hydrocarbon Interests by purchase, lease, farm-in, license, exchange or other means or methods . . . ."

P.      MITSUI OIL EXPLORATION CO., LTD. ("MOECO"), Defendant, Cross-Defendant in Limitation, and/or Third-Party Defendant in Limitation, is incorporated in Japan and has its principal place of business in Tokyo, Japan. As of June 30, 2010, MOECO identified itself as having the following U.S. subsidiaries or affiliates: MitEnergy Upstream LLC, MOEX USA Corporation, MOEX Offshore 2007 LLC, MOEX Gulf of Mexico Corporation, MOEX Oil & Gas Texas LLC, and Mitsui E&P USA LLC. Each of these subsidiaries of MOECO share the same Houston, Texas address. MOECO states on its website as follows: "MOEX USA Corporation, a wholly owned subsidiary of MOECO, has a 10% interest in ultra-deepwater Mississippi Canyon 252, located in the U.S. Gulf of Mexico, through its 100% owned subsidiary, MOEX Offshore 2007 LLC." In a press release dated July 24, 2007, MOECO announced that it had entered into an "Acquisition and Participation Agreement with BP Exploration and Production, Inc. .... on the 29th of June 2007 to participate in an ultra-deep gas exploration project in the Gulf of Mexico ... which is being actively pursued by BP." According to the release, "MOECO decided to participate in the project based upon its evaluation of the prospect which BP's [Gulf of Mexico] technical team has conducted extensive study and research [sic]." The release also indicates that "Japan Oil, Gas and Metals National Corporation . . . has agreed to

provide equity capital finance for MOECO's share of the drilling costs payable under the Acquisition and Participation Agreement. An exploratory well is scheduled to be drilled from September 2007 by BP as the operator and as a result of the participation and such well interests in the project will be BP (75%), MOECO (15%) AND OTHER (10%)." The release concludes with MOECO indicating that its participation in the project "provides an excellent opportunity to further expand its business in the U.S."

See www.MOECO.co.jp/english/topics/070724.html.

Defendant MOEX Offshore, MOEX USA, and MOECO are referred to collectively herein as "MOEX."

While BP was the sole lease operator of the Deepwater Horizon, Anadako, Anadarko E&P, and MOEX were considered non-operational leaseholders. On October 1, 2009, BP Exploration, as operator, and MOEX Offshore, as non-operator, entered into the Macondo Prospect Offshore Deepwater Operating Agreement. On December 17, 2009, BP Exploration, MOEX Offshore, Andarko E&P, and Andarko executed a "Joinder" of the Operating Agreement. Subsequently, the parties to the Operating Agreement held the following ownership percentages in the Macondo Prospect: BP Exploration, 65%, MOEX Offshore, 10%; Anadarko E&P, 22.5%; and, Anadarko, 2.5%. According to the MMS's website, effective April 1, 2010, record title interest in the Macondo prospect was held as follows: BP Exploration, 65%; MOEX Offshore, 10%; and, Anadarko, 25%. As joint holders of a leasehold interest in an oil or gas lease on land beneath navigable waters, Defendants Anadarko, Anadarko E&P, and MOEX are jointly, severally, and in solidarily liable with their codefendants BP pursuant to the Oil Pollution Act. Anadarko, Anadarko E&P, and MOEX also had access to Halliburton/Sperry Sun INSITE

realtime data that was transmitted from the Deepwater Horizon on April 20, 2010, and therefore knew or should have know of the red flags indicating a leak in the well in sufficient time to avert the disaster.

BP and Transocean acted with gross negligence, willful misconduct and reckless disregard for human life by, among other things, using an untested, abnormally large volume of mixed spacer solutions to avoid having to properly dispose of two separate spacer substances as hazardous wastes.

Plaintiff shows that the accident and resulting injuries and damages sued upon were the direct and proximate result of the gross, willful, and wanton negligence and fault of the Transocean defendants, and unseaworthy conditions caused, created or allowed to exist by virtue of these defendants' gross, willful and wanton conduct. Said negligence, fault, conduct and conditions are listed more particularly but not exclusively, as follows:

A. Negligent failure to properly perform the operation ongoing at the time of the accident in question;

B. Negligent failure to take all appropriate precautions to avoid an accident and explosion of the kind which occurred;

C. Negligent failure to have all proper equipment and gear necessary to perform the job being performed at the time of the accident and explosion in a safe manner;

D. Negligent failure to keep the equipment on board the vessel in proper condition and repair;

E. Negligent failure to properly inspect the rig and all of its equipment and gear;

F. Negligent failure to have a sufficient number of properly trained and qualified

personnel to perform the job being performed at the time of the accident and explosion in a safe manner;

G.  Negligent failure to properly train and/or instruct and/or warn Gordon Lewis Jones and those similarly situated;

H.  Negligent violation of government and industry rules, regulations and standards;

I.  Proceeding with the operation ongoing prior to the accident in the face of negative pressure and other testing which showed that well integrity had not been established and that there was an extreme risk of a blowout, explosion and fire;

J.  Placement of heavy drilling mud with seawater at the time when there was no well integrity, underbalancing the well and allowing hydrocarbons under pressure to flow up to the production casing and past the blow out preventer;

K.  Ignoring data showing an influx of pressured hydrocarbons and an increase in drill pipe pressure which were unmistakable signs of an impending blowout or blowout in progress;

L.  Failing to take steps to prevent the impending blowout or blowout in progress in the face of test data which called for immediate protective measures to control the well;

M.  Closing the blow out preventer and diverter, routing the fluids exiting the riser to the vessel's mud gas separator system rather than to the overboard diverter line;

N.  Following the diversion of hydrocarbons to the mud gas separator, venting the hydrocarbons directly onto the rig through a 12 inch gooseneck vent and other flowlines which allowed the hydrocarbons onto the rig floor to be exposed to

14

ignition sources;

O.  Failing to properly inspect, maintain and repair a blowout preventer, which

blowout preventer was in disrepair and was unseaworthy and which failed to seal

the well;

P.  Having a fire and gas system which allowed for the dispersion of hydrocarbons

and, ultimately, their ignition and which rendered the vessel unseaworthy;

Q.  Having a crew which was not properly trained and overly worked which rendered

the vessel unseaworthy;

R.  Violation of statutes and/or regulations and/or rules designed to promote and

foster safety which constitutes negligence *per se*;

S.  Other items of unseaworthiness which may be shown from discovery or trial;

T.  Other acts of gross, willful, reckless, and wanton conduct which may be shown

through discovery or at trial;

U.  Generally, the failure of these defendants to act with required degree of care

commensurate with the existing situation; and

V.  Actions which entitle plaintiffs to collect punitive damages.

### III.

Plaintiff seeks all damages caused by the rig explosion and water pollution, including but

not limited to pain and suffering, the loss of his leg, mental anguish, past and future loss of

enjoyment of life, medical expenses, lost wages, loss of opportunity, and other recoverable

compensatory damages.

IV.

Plaintiff seeks not only those damages but also seek exemplary and punitive damages, including attorneys fees, litigation expenses, expert costs, court costs, expert witness fees and scientific and medical testing fees.

V.

Plaintiff seeks prejudgment interests from the date of the casualty and all damages sustained herein.

VI.

Plaintiff avers that he is entitled to punitive damages due to the wantant and reckless disregard of the owners and operators of the vessel which caused and/or contributed to this accident.

VII.

Complainant prays that he be awarded an amount that is reasonable under the circumstances and for all general and equitable relief including punitive damages.

VIIa.

Plaintiff has presented claims to defendants and have not received any offer on his claims. More than ninety (90) days have passed since his presentations.

VIII.

Plaintiff itemize his damages as follows:

Past and future medicals;

Past and future loss of wages and earning capacity;

Pain and suffering;

16

Permanent disability;

Emotional stress and strain.

IX.

Plaintiff demands trial by jury in accordance with the Federal Rules of Civil Procedure.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that a copy of this complaint be served upon each defendant herein; that they be duly cited to appear and answer same and that, after all legal delays and due proceedings had there be judgment herein in favor of plaintiff and against defendants as for all relief as prayed for jointly, severally and in solido from each defendant.

Respectfully submitted:

*S/Darleen M. Jacobs*
DARLEEN M. JACOBS, ESQ. (#7208)
823 St. Louis Street
New Orleans, LA 70112
(504) 522-0155
Attorneys for Plaintiff

JS 44 (Rev. 12/12)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)*

| (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Glyn Evans | BP, et al |

| (b) County of Residence of First Listed Plaintiff    Orleans | County of Residence of First Listed Defendant    Orleans |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| (c) Attorney's    *(Firm Name, Address, and Telephone Number)* | Attorneys    *(If Known)* |
|---|---|
| Darleen M. Jacobs | |
| 823 St. Louis St. | |
| New Orleans, LA 70112 | |
| (504) 522-0155 | |

### I. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in one Box for Plaintiff and One Box for Defendant)*
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### V. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(8)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district *(specify)*

☐ 6 Multidistrict Litigation

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*

Brief description of cause:

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE      DOCKET NUMBER

DATE    04/21/16

SIGNATURE OF ATTORNEY OF RECORD

---

FOR OFFICE USE ONLY

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

Glyn Evans

)
)
)
)
*Plaintiff* )
)
v. )     Civil Action No.
BP, et al )
)
)
)
)
*Defendant* )

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

    BP, through its attorney of record J. Andrew Langan, Kirkland & Ellis, L.L.P.
    300 North LaSalle St., Suite 2400
    Chicago, IL  60654

    A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

    Darleen M. Jacobs

    823 St. Louis St.
    New Orleans, LA 70112

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*
    William Blevins

Date: _____ 4/20/2016 _____

                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

Date: ___4/20/2016___

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
Civil Action No. 10-MD-2179-CJB-SS

**SWORN STATEMENT** FOR DISCLOSURES REGARDING REMAINING
NON-GOVERNMENTAL ECONOMIC LOSS AND PROPERTY DAMAGE CLAIMS  (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Evans | Glyn | | |

| Phone Number | E-Mail Address |
|---|---|
| 504-303-1693 | |

| Current Mailing Address | City / State / Zip |
|---|---|
| 1925 Louisa | New Orleans, La 70117 |

| Attorney Name and Firm | Attorney E-Mail Address |
|---|---|
| Darleen Jacobs<br>Jacobs, Sarrat, Lovelace & Harris | dollyno@aol.com |

Any prior Mailing Address used by Plaintiff from April 2010 to present?

N/A

Any prior name used by Plaintiff from April 2010 to present?

N/A

The last 4 digits of the Plaintiff's social security number (if individual) or full Tax ID number in the case of a business plaintiff:

2986

Please indicate your status:

Properly opted out of the Economic and Property Damages Settlement*

Not a member of the Economic and Property Damages Settlement Class

Member of the Economic and Property Damages Settlement Class

x Other:___ Opt out of Medcial Settlement Class

*If you opted out, a copy of your valid opt-out form must be included with your service of this Exhibit A

You are pursuing a claim against at least one B1 Defendant by way of (*select all that apply*):

Joinder in the Amended B1 Master Complaint (Rec. Doc. 1128)*

___ Individual Action, (including a new action filed because plaintiff previously only had short form joinder on file), Eastern District of Louisiana Case No. _____.

x Individual Action filed because plaintiff previously was part of mass-joinder Complaint; list both prior Eastern District of Louisiana Case No. _10-1245_____ and new Individual Action Case No._____

Other:_____

* A copy of your timely Short Form Joinder(s) (and any Plaintiff Profile Form(s)) must be included with your service of this Exhibit A.

**Presentment:**

Did you, the plaintiff seeking relief, present this claim at least 90 days prior to filing a lawsuit or joining the B1 Complaint?

Yes _____x_____.      No _____.

If Yes, please identify:

1. The program to which presentment was made by the plaintiff: Deepwater Horizon Medical Settlement_____.

2. The date of presentment (MM/DD/YYYY): __01_ / _10_ / _2013_.

3. The claim number(s) (if available)._____.

4. Did you execute a release of your claims upon receiving payment through any claims program:

Yes _____.      No _____x_____.

*If you need more space to detail your response, please attach additional pages if necessary. Make sure to indicate the question you are continuing to answer.*

_____

_____

_____

I state under penalty of perjury that the foregoing is true and correct. Executed on the following date at the following location:

Date: April 22 , 2016

Location (City and State): New Orleans, La

_____ Glyn Evans _____
Signature of Plaintiff (*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf*)

Glyn Evans

Print Name

The service of this sworn statement and supporting information pursuant to this Order must be on both Counsel for BP and the PSC on or before May 2, 2016. Service can be made via United States mail at the following addresses:

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | Attn: Steve Herman or Jim Roy |
| Kirkland & Ellis LLP | The Exchange Centre, Suite 2000 |
| 300 North LaSalle St, | 935 Gravier Street |
| Suite 2400 | New Orleans, LA 70112 |
| Chicago IL 60654 | |

Claimants represented by counsel may additionally or alternatively serve the sworn statements and any supporting information upon Plaintiffs' Steering Committee and Counsel for BP via File & ServeXpress ("F&S").