# JOHNSON, RAHMAN & THOMAS

**Employees of Louisiana Workers' Compensation Corporation**

2237 S. Acadian Thruway | P.O. Box 98001
Baton Rouge, Louisiana 70898-8001
Telephone: (225) 231-0875
Facsimile: (225) 231-0986
Fax Server: (225) 929-5613

July 3, 2018

*Via UPS Next Day Air*

Counsel for BP
**Attn:  Mr. J. Andrew Langan**
Kirkland & Ellis LLP
300 N. LaSalle St., Suite 2400
Chicago, IL  60654

*Via UPS Next Day Air*

MDL 2179 Plaintiffs' Steering Committee
**Attn:  Mr. Steven J. Herman**
Herman, Herman & Katz, LLC
820 O'Keefe Ave.
New Orleans, LA  70113

In Re:  Oil Spill by the Oil Rig "Deepwater Horizon": in the Gulf of Mexico,
On April 20, 2010
MDL No.        :        10-2179; Section J

Louisiana Workers' Compensation Corporation v. BP, PLC, et al
Civil Action No.:        17-cv-03199

Workers' Compensation Claim of Tina Givens
LWCC Claim No.:  163968

Dear Counsel:

In compliance with Pretrial Order No. 66, with respect to the workers' compensation claim of Tina Givens, enclosed please find the following documents:

1.    Individual Particularized Statement of Claim;
2.    8(i) Settlement, Judgment and related documents;
3.    First Report of Injury;
4.    BP accident report;
5.    Wage records;
6.    Recent medical records; and

Writer's Direct Line:  (225) 231-0755 | Writer's Email: djohnson@lwcc.com

Mr. J. Andrew Langan
Mr. Steven Herman
July 3, 2018
Page 2

      7.      Claim payment report.

In total LWCC has paid $46,113.07 to and on behalf of Ms. Givens as a result of his injuries suffered during the clean-up efforts following the Deepwater Horizon explosion. Louisiana Workers' Compensation Corporation is seeking recovery of all payments made to and on behalf of Ms. Givens.

I hope this is satisfactory for your needs, however, in the event you have any questions or require any additional information, please do not hesitate to call.

With kind regards, I am

            Very truly yours,

            David K. Johnson

DKJ/fhj
Enclosures
cc:    Linda Dantin

## EXHIBIT A

**In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010**
**Civil Action No. 10-MD-2179-CJB-SS**

### PTO 66 PARTICULARIZED STATEMENT OF CLAIM
### FOR REMAINING B3 PLAINTIFFS

**PLAINTIFF'S FULL NAME:** Louisiana Workers' Compensation Corporation

Please answer every question to the best of your knowledge.

You are signing and submitting this Particularized Statement of Claim under penalty of perjury and therefore must provide information that is true and accurate.

If you **cannot** recall all of the details requested, please provide as much information as you can.

For each question where the space provided does not allow for a complete answer, please attach as many additional sheets of paper as necessary to fully answer the question.

**NOTE:** Please provide information regarding the person **who claims injury or damages**. The terms "you" and "your" refer only to that person, not to the individual who may be completing this form in a representative capacity. If the person who claims injury or damages is deceased, the personal representative should respond as of the time immediately prior to his or her death unless a different time period is specified.

## A.    YOUR BACKGROUND INFORMATION

1.    Current address:

Address Line 1:    2237 S. Acadian Thruway

Address Line 2:

City:    Baton Rouge          State:  LA          Zip:  70808

2.    Telephone number:   (225) 924-7788

3.    Maiden or other names used or by which you have been known, and the dates during which you were known by such names:      N/A

4.    Date and Place of Birth:          N/A

5.    Male_____    Female_____

6.  Each address (other than your current address) at which you have lived during the last ten (10) years, and list the dates of residence for each one:

| Address | Dates of Residence |
|---------|--------------------|
| N/A | |
| | |
| | |

7.  Employment Information:

    A.  Current and past employer(s) over the last 10 years, 2008-2018 (if unemployed, last employer):

| Employer | Address | Dates of Employment | Occupation/Job Duties |
|----------|---------|---------------------|------------------------|
| N/A | | | |
| | | | |
| | | | |
| | | | |

8.  Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes _____ No_____ If "Yes," when were you out of work and why? _____N/A_____

_____

**B.      THE PLAINTIFF AND THE *DEEPWATER HORIZON* OIL SPILL**

9.      Did BP, a government entity, or another company or entity hire you to perform cleanup work in response to the oil spill?

Yes X      No_____ ( Indirectly, see attached correspondence )

*If you responded "Yes" to Question No. 9, please proceed to Question No. 10.*

*If you responded "No" to Question No. 9, please skip to Question No. 14.*

**1.      Cleanup Workers**

(The term "cleanup worker" shall have the same meaning as that defined in the Medical Benefits Settlement Agreement. (Rec. Doc. 6427-1 at 11-12, 25).)

10.     Was your cleanup work performed onshore (on land) or offshore (on the water)?

Onshore_____      Offshore_____      Both   X

11.     Were you hired as part of the Vessels of Opportunity ("VoO") Program?

Yes_____      No   X

12.     Did you handle hazardous materials as part of your cleanup work?

Yes_____      No_____

13.     Please set forth the following information about your cleanup work:

A.      Your employer(s): Team Labor Force, LLC

B.      Your supervisor(s) at the employer(s) identified in Question No. 13(A):
Vok Robinson

C.      A description of the work performed for employer(s) identified in Question No. 13(A): Beach Technician

D.      The date(s), time(s), and location(s) you performed the work described in Question No. 13(C): See attached wage records

E.   The names of any vessel(s) on which or facility(ies) where you performed the work described in Question No. 13(C): _Ms. Rebecca_

_____

F.   Any person(s) or entity(ies) other than your employer who oversaw, supervised, or managed your work described in Question No. 13(C): _Unknown_

_____

**2.    Residents/Tourists**

14.   Do you allege that you were exposed to oil or chemical dispersants while a *resident* of a Gulf Coast State (*i.e.*, Alabama, Florida, Louisiana, Mississippi, or Texas)?

      Yes_____    No_____

15.   Do you allege that you were exposed to oil or chemical dispersants while a *tourist* in a Gulf Coast State (*i.e.*, Alabama, Florida, Louisiana, Mississippi, or Texas)?

      Yes_____    No_____

16.   List all address(es) at which you resided in 2010: _____

_____

**C.   INFORMATION ABOUT YOUR B3 CLAIM**

17.   Are you claiming that you suffered damages from (*Check all that apply*):

      _____Bodily injury from exposure to oil and/or dispersants

      __X__Bodily injury other than from exposure to oil and/or dispersants

      _____A breach of contract

*If you checked "Bodily injury from exposure to oil and/or dispersants," answer the questions in Parts D & F below.*

*If you checked "Bodily injury other than from exposure to oil and/or dispersants," answer the questions in Part E & F below.*

*If you checked "A breach of contract," answer the questions in Part G below.*

**D.   EXPOSURE CLAIMS**

18.   Were you exposed to oil, dispersants, or both?

Oil_____          Dispersants_____          Both_____

19.   How were you exposed? (*Check all that apply*)

A.   Inhalation                Yes_____    No_____

B.   Dermal (skin) contact     Yes_____    No_____

C.   Ingestion                 Yes_____    No_____

D.   Other (please describe):   _____

20.   What was the date(s) of your exposure?

Day: _____     Month: _____     Year: _____

21.   How many time(s) were you exposed to oil or dispersants (for each time, please note whether the exposure was to oil, dispersants, or both)?

_____

_____

_____

22.   What was the geographic location(s) of your exposure (for each location, please note on what date this exposure occurred and whether the exposure was to oil, dispersants, or both)?

_____

_____

_____

23.   For each time that you were exposed to oil or dispersants or both, for how long were you exposed to this substance or chemical?

_____

_____

_____

24. Describe in as much detail as possible the circumstance(s) in which your exposure to the oil spill and/or chemical dispersant occurred: _____

_____

_____

_____

25. *For cleanup workers only*: Did you report your exposure to oil and/or dispersants to your direct supervisor?

Yes_____ No_____

26. *If you answered "Yes" to Question No. 25,* Provide the name of the supervisor to whom you reported your exposure and the date you first reported the exposure:

_____

_____

_____

## E. NON-EXPOSURE PERSONAL INJURY CLAIMS

27. For your non-exposure personal injury, please state:

A. The nature of your injury: *See attached medical records*

B. The date(s) of your injury: *3/24/2011*

C. The location(s) of your injury: _____

D. The work that you were performing when you sustained your injury: _____
*cargo check on Ms. Rebecca*

_____

E. Identify any individual(s) who witnessed your injury: _____
*see accident report.*

28. Describe in as much detail as possible the circumstance(s) of your injury: _____
*see accident report*

_____

_____

F. **INFORMATION ABOUT YOUR INJURY OR ILLNESS**

29. Describe in as much detail as possible the bodily injury (or medical condition) that you claim resulted from the spill or your cleanup work in response to the oil spill: _____

_See attached medical records_

30. Please explain how your injury (or medical condition) resulted from the spill or your cleanup work in response to the oil spill:

_See attached medical records + accident report_

31. On what date did you first report or seek treatment for your injury or illness:

_3/24/11_

32. On what date was your injury first diagnosed: _3/24/11_

33. Identify the doctor(s) (or other healthcare providers) who first diagnosed your injury (or condition):

| Name | Address |
|------|---------|
| | _See attached medical records + Claim payment report_ |

34. Identify doctor(s) (or other healthcare providers) who have treated your injury (or condition):

| Name | Address |
|------|---------|
|  | *See attached medical records + claim payment report* |
|  |  |
|  |  |

35. Have you ever suffered this type of injury or condition before (i.e., before the date given in your answer to Question No. 32)? Yes _____ No _____. If "*Yes*," *Unknown*

   A. When? _____

   B. Who diagnosed the injury (or condition) at that time? _____

   _____

   _____

   C. Who treated the injury (or condition) at that time? _____

36. Do you claim that your exposure to the oil spill and/or chemical dispersant worsened an injury (or condition) that you already had or had in part?

   Yes _____ No _____. If "*Yes*,"

   A. What date did you first experience such injury or condition? _____

   B. What injury (or condition) was made worse? _____

   _____

37.  Please list your family and/or primary care physician(s) for the past ten (10) years:

| Name | Address |
|------|---------|
|  | Unknown |
|  |  |
|  |  |
|  |  |
|  |  |

38.  Do you have in your possession, custody, or control, any medical records, bills, and any other documents, from physicians, healthcare providers, hospitals, pharmacies, insurance companies, or others who have provided treatment to you relating to the diagnosis or treatment of any injuries or illnesses arising from the *Deepwater Horizon* oil spill or response efforts, or that you otherwise identified in this Form?

Yes ___X___  No _____

39.  Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount:_____

_____recovery of medical expenses and weekly benefits per attached claim payment report_____

40.  Have you received workers compensation or other compensation or reimbursement for the injury alleged or associated expenses?

Yes ___X___ No_____

If "Yes":

A.  From whom did you receive this compensation or reimbursement?_____

_____LWCC_____

B.    When did you receive this compensation or reimbursement?_____

_____ *See attached claim payment report*

C.    What was the amount of the compensation or reimbursement?_____

_____ *See attached claim payment report*

## G.    CONTRACT CLAIMS

*(For plaintiffs claiming breach of contract.)*

41.    Is your claim based on a breach of contract?

Yes_____    No_____

42.    Was the contract that you claim was breached made as part of the VoO Program?

Yes_____    No_____

43.    Identify the contract that you allege was breached including any associated contract number (e.g., MVCA number and the parties to the contract):

_____

_____

44.    Describe how the contract was breached:_____

_____

_____

45.    *If you were part of the VoO Program*: Describe whether or not you were placed on-hire and, if applicable, the date(s) you were on-hire:

_____

_____

46.    *If you allege that you were placed on-hire:* Provide the date(s) you were placed off-hire:

_____

47.    Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount:_____

_____

48.     Describe specifically how the breach of contract you allege in response to Question No. 44 caused the damages you allege in response to Question No. 47.

_____

_____

_____

## ATTESTATION

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that any damages described in response to Questions Nos. 39 or 47 were caused by any injury or breach of contract alleged in response to Questions Nos. 29 and 44.

I acknowledge that I have an obligation to supplement the above responses if I learn that they are in any material respect incomplete or incorrect.

Executed on the following date at the following location:

Date: _____July 5_____, 2018

Location (City and State): _____Baton Rouge, La_____

_____

Signature of Plaintiff*

***Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.***

_____Michael Stolfus_____

Print Name

_____SVP / General Counsel_____

Title/Position (*if signed on behalf of a business or other entity*)

**By no later than Monday, July 9, 2018, this Particularized Statement of Claim must be served on Counsel for BP and the MDL 2179 Plaintiffs' Steering Committee by mailing it to the following addresses:**

| Counsel for BP | MDL 2179 Plaintiffs' Steering Committee |
|---|---|
| Attn: J. Andrew Langan | c/o: Steve Herman |
| Kirkland & Ellis LLP | 820 O'Keefe Ave. |
| 300 North LaSalle St., Suite 2400 | New Orleans, LA 70113 |
| Chicago, IL 60654 | |

08/21/2014 03:11 PM

| Notice Of Final Payment Or Suspension Of Compensation Payments | U.S. Department of Labor |
|---|---|
| | Office of Workers' Compensation Programs |

**INSTRUCTIONS:** This notice must be filed with the District Director within 16 days after compensation has been stopped or suspended. Use of this form is mandatory. Failure to timely file this form shall result in assessment of a penalty of $110.00. (33 U.S.C. 914(g)). This form is to be used to report disability or death compensation payments, as well as other statutory payments. The information will be used to verify the sufficiency of compensation paid under the Act.

OMB No. 1240-0041

1. OWCP No. 07-192447

2. Carrier's No. 163968

3. Name and address of Employee or other beneficiary (Type or Print) Place within brackets

TINA A. GIVENS
P.O. BOX 756
LULING, LA 70070

a. Address of the OWCP District Office where this form is filed

U.S. DEPT OF LABOR-OWCP

COPY

**CARRIER** - Original (Copy 1) should be sent to the District Director. Copies 2, 3, 4 and 5 should be sent to the parties listed at the bottom of the form. Check the boxes at the bottom of the page to indicate parties copied.

4. Name of employer

TEAM LABOR FORCE LLC

5. Address of employer

2802 FLINTROCK TRACE, #B104
LAKEWAY, TX 78738 1743

| 6. Date of Injury | 7. Date employee first lost pay because of injury | 7a. Date of first payment of compensation | 8. Date physician found employee able to return to work |
|---|---|---|---|
| 03/24/11 | 05/14/11 | 01/09/12 | |

9. Date employee returned to work

10. Was compensation paid at the maximum rate?   ☐ Yes  ☒ No

Average weekly wage $ 795.00   multiplied by 2/3 = Compensation rate $ 530.00

| 11. State reason or reasons for termination or suspension of payments | 12. Date last payment made |
|---|---|
| 8(I) APPROVED 8/20/13 | 06/05/12 |
| | 13. Date of this notice |
| | 08/18/14 |

14.   ENTER ALL PAYMENTS MADE ON ACCOUNT OF DISABILITY

| TYPE OF DISABILITY a | FROM (Mo.,day, yr.) b | THROUGH (Mo.,day, yr.) c | AMOUNT PAID PER WEEK d | NUMBER OF WEEKS PAID e | TOTAL f |
|---|---|---|---|---|---|
| Temporary total | See attached page(s) | | | | |
| Temporary total | | | | | |
| Temporary partial | | | | | |
| Permanent partial (Non-schedule) | | | | | |
| Permanent total | | | | | |
| Permanent partial (Schedule loss, facial or other disfigurement) | Percent | Part of body | | | |

Attach continuation sheet to show additional periods, rates and amounts paid and enter total here. -------- 29,225.72

TOTAL PAID---> 29,225.72

15.   ENTER ALL PAYMENTS MADE ON ACCOUNT OF DEATH

| a. Dependent name and date of birth | b. AMOUNT | c. OTHER PAYMENTS | d. AMOUNT |
|---|---|---|---|
| | | Funeral Expenses | .00 |
| | | Sec. 44(c)(1) payment to the Special Fund | .00 |
| (Attach continuation sheet) | | TOTAL (cols. b + d) ----> | 0.00 |

16.   ENTER OTHER PAYMENTS

| | |
|---|---|
| a. Attorney fees 2000.00 | d. Sec. 8(I) Settlement 8,000.00 |
| b. Compensation for late payment per Sec. 14(e) or (f). .00 | e. Commutation .00 |
| c. Interest .00 | TOTAL (cols. a, b, c, d, e) ----> 10,000.00 |

17. Name of insurance carrier or self-insured employer and claim administrator

LOUISIANA WORKERS; COMPENSATION CORPORATION
JAMIE LEBLANC          BECKY HARRIS

a. Address and phone number of person whose name is shown in Box 19.
2237 S. ACADIAN THRUWAY SUITE 102
BATON ROUGE, LA  70808          225-231-0793

18. Signature of person authorized to sign for employer or carrier

Becky Harris

19. Name and Title of person whose signature appears in Box 18
BECKY HARRIS
CLAIMS REPRESENTATIVE

**EMPLOYEE PLEASE READ CAREFULLY**

Any claim for compensation, to be valid, must be filed IN WRITING with the District Director, OWCP, WITHIN ONE YEAR after the date of injury or date of last payment of compensation. If you have serious disfigurement of the face, head, or neck or other normally exposed areas which may handicap you in securing or maintaining employment, or any impairment of the body or other disability from the injury for which you have not received compensation, you should inform the District Director. (Address in 3a above)

**Public Burden Statement**

The following statement is made in accordance with the Privacy Act of 1974 (5 USC 522a) and the Paperwork Reduction Act of 1995, as amended. The authority for requesting the following information is 20 CFR 702.235. According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information is 1240-0041. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the U.S. Department of Labor, Division of Longshore and Harbor Workers' Compensation, Room C4315, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND COMPLETED FORMS TO THIS OFFICE**

☒ 1 - District Director   ☒ 2 - Employer   ☐ 3 - Insurance Carrier
☒ 4 - Employee   ☒ 5 - Employee's Representative

Form LS-208     Rev. November 2011

All previous versions are now obsolete.

**Employee Name: TINA A. GIVENS   Carrier's No.: 163968**

| 14. TYPE OF DISABILITY a | FROM (Mo.,day, yr.) b | THROUGH (Mo.,day, yr.) c | AMOUNT PAID PER WEEK d | NUMBER OF WEEKS PAID e | TOTAL f |
|---|---|---|---|---|---|
| Temporary Total | 05/14/2011 | 01/06/2012 | 444.50 | 34 | 15,113.00 |
| Temporary Total | 05/14/2011 | 01/13/2012 | | | 2,916.79 |
| Temporary Total | 01/07/2012 | 01/13/2012 | 444.50 | 1 | 444.50 |
| Temporary Total | 01/14/2012 | 06/03/2012 | 530.00 | 20 2/7 | 10,751.43 |
| Total Paid | | | | | 29,225.72 |

**UNITED STATES DEPARTMENT OF LABOR**
**EMPLOYMENT STANDARDS ADMINISTRATION**
**OFFICE OF WORKERS' COMPENSATION PROGRAMS**
**SEVENTH COMPENSATION DISTRICT**

9732-G11

AUG 2 2 2013

In the matter of the claim
for compensation under the
**Longshore and Harbor Workers'**
**Compensation Act**

**TINA GIVENS,**

    **Employee**

**TEAM LABOR FORCE, LLC**
     **Employer**

   **And**

**LOUISIANA WORKERS'**
**COMPENSATION CORPORATION,**
    **Insurance Carrier**

**SETTLEMENT AGREEMENT**
**AND COMPENSATION ORDER**

**SECTION 8(i)**

**OWCP NO.: 07-192447**

**DATE OF ACCIDENT: 03/24/2011**

---

  The parties hereto, Tina Givens, **Employee**, Team Labor Force, LLC, **Employer**, and Louisiana Workers' Compensation Corporation, **Insurance Carrier**, have reached an agreement for the settlement of this claim for compensation and medical treatment, pursuant to Section 8(i) of the Longshore and Harbor Workers' Compensation Act, and as a basis for the settlement agree and stipulate as follows:

  1. On or about March 24, 2011, the **Employee**, was in the employ of the **Employer** as a laborer being transported aboard a vessel, *M/V MS. REBECCA*, when she fell into an open hatch on the floor of the vessel. On that date, the **Employee** alleges that she struck both shoulders, her back, neck and head when she fell into the open hatch.

  2. The liability of the **Employer** for the payment of Longshore and Harbor Workers' Compensation benefits was insured by Louisiana Workers' Compensation Corporation.

  3. The **Employer** did receive timely notice of the injury. **Employer and Insurance Carrier** dispute that this claim arises under the jurisdiction of the Longshore & Harbor Workers' Compensation Act due to the fact that Employee was injured while being transported over water from one jobsite on land to another jobsite on land and her presence over water was transient and fortuitous. Further, Employee filed a Disputed Claim for Compensation, bearing docket number 11-04492, with the Louisiana Workforce Commission alleging that jurisdiction was proper under

the Louisiana Workers' Compensation Act.  An Order of Dismissal was signed by the presiding Workers' Compensation Judge finding that **Employee's** accident of March 24, 2011 was covered under the Louisiana Workers' Compensation Act.

4.    As a result of the occurrence in question, the **Employer** and **Carrier** have furnished medical benefits in accordance the Louisiana Workers' Compensation Act in the amount of Eight Thousand Five Hundred Twelve and 35/100 ($8,512.35) Dollars and vocational rehabilitation benefits in the amount of Three Hundred Seventy-Five and 00/100 ($375.00) Dollars.  Medical benefits paid on this claim are as follows:

| | |
|---|---|
| 2011 | $ 1513.64 |
| 2012 | 6893.71 |
| 2013 | 105.00 |
| | 8512.35 |

5.    Following the accident of March 24, 2011, **Employee** sought medical treatment at All Industrial Medical Services where she complained of left ankle and knee pain.  She was diagnosed with a left ankle strain and left knee contusion and released.  **Employee** returned to work for **Employer** until she was laid off in May 2011.  Thereafter, **Employee** followed up with Dr. E. Ward Sudderth, M.D. on June 15, 2011 where she related to him the occurrence of a work accident that occurred on January 11, 2011 and this instant work accident that occurred on March 24, 2011.  Dr. Sudderth opined that **Employee** suffered blunt trauma to her head, left knee and cervical spine on January 11, 2011 and further suffered blunt trauma to her lumbosacral, left knee and left ankle on March 24, 2011.  He diagnosed Employee with cervical and lumbosacral strains and left knee and ankle sprain/derangement.   Dr. Sudderth opined  that the **Employee** was restricted from work as of this date.  **Employee** followed up with Dr. Sudderth on July 7, 2011 complaining of headaches and pain in her cervical and lumbosacral spine and pain in her left knee and ankle.  He recommended heat and ice for pain, kept her off work and recommended she see a chiropractor at Louisiana Rehabilitation and Spine Institute.   **Employee** treated with Louisiana Rehabilitation and Spine Institute from July 6, 2011 through April 2012 for complaints related to her work injuries of January 11, 2011 and March 24, 2012.  On October 13, 2011, **Employee** returned to Dr. Sudderth complaining of the same complaints and he provided prescriptions for Lorcet and Flexeril and recommended continued visits to Louisiana Rehab.  On November 11, 2011, **Employee** returned to Dr. Sudderth with the same complaints and he prescribed Lorcet and Robaxin and recommended continued visits with Louisiana Rehab and MRI's of the left knee and ankle.  On November 11, 2011, Employee underwent a Second Medical Opinion regarding care provided by Louisiana Rehab.  Craig J. Ledet, D.C., opined that the cervical and lumbar sprains/strains were resolved, the left knee contusion was healed, and she did not require any further chiropractic treatment.  He further recommended that the **Employee** see a neurologist regarding her headaches as related to the January 11, 2011 accident.  On November 17, 2011, **Employee** underwent MRI's of her left knee and ankle which revealed bursitis in the knee and tenosynovitis of the posterior tibial tendon.  **Employee** followed up with Dr. Sudderth on November 23, 2011 with the same complaints.  Dr. Sudderth prescribed the same medications and waited on results of MRI.  On December 1, 2011, **Employee** returned to Louisiana Rehab with the same complaints and the MRI's were reviewed.  Michael Branmeirer, D.C. referred **Employee** to  an orthopedist regarding her injuries.  On December 21, 2011,

2

Employee returned to Dr. Sudderth with the same complaints and he recommended MRI's of her neck and back.

On January 10, 2012, **Employee** began treatment with Dr. Kenneth Adatto, M.D. (orthopedist) complaining of lumbar pain that she attributed to the work accident of March 24, 2011. She also complained of left ankle and left knee pain. Dr. Adatto reviewed the MRI's dated November 17, 2011 of the left ankle and left knee. Dr. Adatto recommended an MRI of the lumbar spine due to a diagnosis of lumbar sprain/strain. On February 4, 2012, **Employee** was evaluated by Dr. Morteza Shamsnia, M.D. (neurologist) complaining of headaches. Dr. Shamsnia diagnosed the **Employee** with low back pain and neck pain and recommended cervical and lumbar MRI and nerve studies. On March 14, 2012, cervical and lumbar MRI's were performed. The lumbar MRI showed a disc bulge at L4-5 with no nerve root impingement. The cervical MRI was unremarkable. On May 31, 2012, **Employee** returned to Dr. Adatto who opined that she was capable of returning to work and was released to follow up as needed. On July 2, 2012, Dr. Shamsnia indicated that he released the **Employee** to return to work. The claimant last treated with Dr. Sudderth on March 7, 2013 at which time she complained of headaches, low back pain, and left knee. Dr. Sudderth prescribed Vicodin ES for pain as needed and Ibuprofen for muscle aches. She was released to return as needed.

The above referenced medical records are attached as Exhibit "A".

6.    **Employee's** average weekly wage at the time of her accident was Seven Hundred Ninety-Five and 00/100 ($795.00) Dollars per week with a corresponding weekly compensation rate of Five Hundred Thirty and 00/100 ($530.00) Dollars.

7.    Employee received temporary total disability indemnity benefits at a weekly rate of Five Hundred Thirty and 00/100 ($530.00) Dollars from May 14, 2011 through June 3, 2012. Total indemnity benefits paid to Employee from May 14, 2011 through June 3, 2012 were Twenty-Nine Thousand Two Hundred Twenty-Five and 72/100 ($29,225.72) Dollars.

Dr. Adatto opined that **Employee** reached maximum medical improvement as of May 31, 2012 and released Employee to return to work at full duty.

8.    In addition to the claim for Longshore benefits filed by the **Employee**, she also filed suit in United States District Court, Eastern District of Louisiana against ES&H Inc. and Team Labor Force LLC alleging claims for negligence arising out of the alleged March 24, 2011 accident. That matter is captioned Tina Givens v. ES&H Inc. and Team Labor Force, LLC, Civil Action No. 12-00690. **Employee** and tort defendant have agreed to settle the federal tort lawsuit for a total of Thirty-Five Thousand And N0/100 ($35,000.00) Dollars. Further, **Employer/Carrier** have agreed to contribute Ten Thousand and NO/100 ($10,000) Dollars towards a global settlement. In return for the payment of the agreed sum by the tort suit parties and the **Employer/Carrier**, a total of Forty-Five Thousand and NO/100 ($45,000.00) will be paid to the **Employee**, Employee has agreed to settle this instant claim for Longshore benefits and her tort suit.

In addition, **Employer and Carrier** waive their entire lien on the funds being paid to the **Employee** by the third party defendants. **Employer and Carrier's** lien is comprised of Twenty-Nine Thousand Two Hundred Twenty-Five and 72/100 ($29,225.72) Dollars in indemnity benefits, Eight Thousand Four Hundred Seven and 25/100 ($8,407.25) Dollars in medical

benefits and vocational rehabilitation benefits in the amount of Three Hundred Seventy-Five and 00/100 ($375.00) Dollars. The total lien that is being waived by **Employer and Carrier** is Thirty-Eight Thousand Seven and 97/100 ($38,007.97) Dollars.

The payment of the lump sum amount pursuant to the agreement between **Employee, Employer and Carrier,** and the parties to the federal tort suit will fully, finally and completely discharge any and all obligations of the **Employer and Carrier** for any benefits under the LHWCA as of the time of payment for the alleged work related accident of March 24, 2011. The payment of the lump sum amount pursuant to this agreement will fully, finally and completely discharge any and all obligations of the **Employer and Carrier** for any benefits under the LHWCA as of the time of payment for the alleged work related accident of March 24, 2011.

9.     Approval and payment of this agreed settlement shall discharge the liability of the **Employer and Insurance Carrier** for the payment of any past, present or future compensation and/or medical benefits as a result of the injury of March 24, 2011. Further, there are no known collateral sources for the payment of medical bills at this time.

In consideration of the payments set forth in Section 8(i), **Employee** hereby completely releases and forever discharges the **Employer and Insurer** from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of service, expenses and compensation of any nature whatsoever, which the **Employee** now has, or which may hereafter accrue or otherwise be acquired, on account of or may in any way grow out of this claim for workers' compensation.

10.     Accordingly, **Employer, Carrier and Employee** show that upon payment of the settlement funds as outlined herein, **Employee** has received all, or most, of the benefits to which she would have otherwise been entitled to receive with respect to her complaints that have accrued in the past or may accrue in the future in regards to his March 24, 2011 accident.

11.     **Employee**, Tina Givens, is a 32 year old woman (Date of Birth: ████1981  SSN: xxx-xx-9287) who was allegedly injured as a result of an accident on March 24, 2011.

12.     **Employee** attests and warrants that this settlement has not been procured by duress. **Employee** attests and warrants that she has read and understands the terms and conditions of this settlement and its legal consequences and further **Employee** agrees to be bound by the terms of this agreement.

13.     **Employee** asserts that she has not received Medicare benefits, nor payment of medical expenses from any collateral source, for any medical treatment for any work injuries as a result of the March 24, 2011 accident in question; that she understands that if she does apply for Medicare benefits for medical treatment for the work related injury, these bills may be denied by Medicare. In the event that medical treatment has been submitted to Medicare and payment made and as a result Medicare has a lien for conditional payments made by them, **Employee** agrees to reimburse Medicare and satisfy its lien. **Employee** further agrees to defend, indemnify and hold the Insurer/Employer harmless from any claim made by Medicare for any conditional payments made by Medicare for the work related injury of **Employee**. **Employee** asserts that the

purpose of the compromise settlement is not to shift responsibility for payment of medical expenses resulting from the alleged work injury to Medicare.  **Employee** understands that Team Labor Force, LLC and Louisiana Workers' Compensation Corporation have relied upon this information in consideration of the settlement of **Employee's** claim.

14.     The **Employee** is represented by V. Jacob Garbin, Esq.  Undersigned **Employee** attests and warrants that this settlement has not been procured by duress.  **Employee** attests and warrants that she has read and understands the terms and conditions of this settlement and its legal consequences, which have been fully and completely explained to her by her counsel, V. Jacob Garbin, Esq.   Nonetheless, **Employee** agrees to be bound by the terms of this agreement.

15.     **Employee** agrees to pay attorney's fees  pursuant to 33 U.S.C. 928(c) in the amount of TWO THOUSAND and 00/100 DOLLARS ($2000.00)  in accordance with the fee petition filed by her counsel, V. Jacob Garbin.  **Employee** will receive a net payment of EIGHT THOUSAND and 00/100 DOLLARS ($8000.00) from the **Employer** and **Insurance Carrier**. No additional attorney fees will be sought by **Employee** or her counsel from the **Employer** and **Insurance Carrier** under Section 28 of the Longshore Act.

16.     The **Employee** further attests that the delivery of funds from the tort defendants will be made via her attorney however her physical address, for delivery of the funds from the **Employer/Carrier**, is:

Tina Givens

Post Office Box 756

Luling, LA  70070

Telephone: 504 ~~580-267I~~  994 – 7020

VJG

## APPLICATION FOR APPROVAL OF SETTLEMENT

The undersigned parties have read and agree with the above stipulation of facts and request that the District Director approve the proposed settlement under Section 8(i) of the Act.

Date: 8-8-13

**TINA GIVENS**
Employee

Date: 8/8/2013

**V. JACOB GARBIN, ESQ.**
Employee's Representative

Date: 7/9/13

**MATTHEW R. RICHARDS, ESQ.**
Employer/Insurer's Representative

6



**UNITED STATES DEPARTMENT OF LABOR**
Office of Workers' Compensation Programs
Longshore & Harbor Workers Compensation
Post Office Box 30728
New Orleans, LA 70190
(504)589-2671   Fax (504)589-3969

**OWCP No.: 07-192447**

**Claimant: TINA GIVENS**

Based on evaluation of the medical report(s) attached to this 8(i) settlement application and the facts of this case, the District Director hereby waives the requirement for the parties to submit an estimate of the cost of future medical which includes the inflation factor, and finds the amount of the settlement apportioned to future medical benefits to be adequate.

**David A. Duhon**
**District Director**
**7th Compensation District**

August 20, 2013
Date

The undersigned District Director, pursuant to the provisions of Section 8(i) of the Longshore and Harbor Workers' Compensation Act, have considered the foregoing stipulations and agreed settlement makes the following:

## FINDINGS OF FACT:

1.      The agreed settlement is adequate and not procured by duress;

2.      Settlement under the terms set forth in the settlement application of the parties is hereby approved, and the parties are directed to carry out the requirements of the settlement;

3.      The liability of the **Employer** and **Insurance Carrier** for all payments of compensation under the Act as a result of the occurrence in question will be discharged under the agreed upon terms;

4.      The liability of the **Employer** and insurance **Carrier** for payment of medical benefits will be discharged upon approval of this settlement.

## _ORDER_

The liability of the **Employer and Insurance Carrier** for all payments of compensation and future medical benefits under the Longshore and Harbor Workers' Compensation Act as a result of the **Employee's** alleged injury on March 24, 2011, is discharged pursuant to the terms set forth hereinabove.

**GIVEN UNDER MY HAND** at New Orleans, Louisiana the _30th_ day of _August_, 2013.

**DAVID DUHON**
**DISTRICT DIRECTOR**

7

## PROOF OF SERVICE

I HEREBY CERTIFY that on the *30*th day of *August*, 2012, the foregoing Compensation Order was filed in the office of the District Director, Seventh Compensation District, and that a copy thereof was mailed on said date by certified mail to the parties at the last known address of each as follows:

Tina Givens, Post Office Box 756, Luling, LA 70070;
**Employee**

Team Labor Force, LLC, 1202 Tiger Drive, Thibodaux, Louisiana 70301;
**Employer**

Louisiana Workers' Compensation Corporation, 2237 S. Acadian Thruway, Suite 102, Baton Rouge, Louisiana 70808;
**Insurance Carrier**

Mr. V. Jacob Garbin, Attorney at Law, 2018 Prytania St., New Orleans, Louisiana 70130
**Attorney for Employee**

Mr. Matthew R. Richards, Johnson, Rahman & Thomas, Post Office Box 98001, Baton Rouge, Louisiana 70898-8001;
**Attorney for Employer and Insurance Carrier**

**DAVID DUHON**
**DISTRICT DIRECTOR**

8

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TINA A. GIVENS** | **CIVIL ACTION NO.** |
| **VERSUS** | **JUDGE** |
| **E S& H, INC.**<br>**and TEAM LABOR FORCE, LLC** | **MAGISTRATE JUDGE** |

*******************************************************************************

## COMPLAINT UNDER ADMIRALTY AND GENERAL MARITIME LAW

**NOW INTO COURT,** through the undersigned counsel, comes plaintiff, Tina Angel Givens (sometimes hereafter "Tina Givens"), a resident and domiciliary of the full age of majority of the Parish of St. Charles, State of Louisiana, who respectfully represents the following:

1.

This case is cognizable under maritime jurisdiction pursuant to the general maritime laws of the United States of America. Alternatively, this is an admiralty claim falling within the purview of rule 9 (h) of the Federal Rules of Civil Procedure. Venue is proper as all of the actions described herein occurred within the Eastern District of Louisiana, and Defendants' principal places of business are located within the Eastern District of Louisiana.

2.

Made defendants herein are:

a.    ES & H, Inc., a Louisiana corporation authorized to do and doing business in the State of Louisiana with their principal place of business in Louisiana located at 1730 Coteau Road, Houma, Louisiana 70364; and

b.    Team Labor Force, LLC, a Louisiana limited liability company authorized to do and doing business in the State of Louisiana with their principal place of business in Louisiana located at 1730 Coteau Road, Houma, Louisiana 70364.

**3.**

Defendants, ES & H, Inc. and/or Team Labor Force, LLC, are severally, jointly and solidarily indebted unto plaintiff, Tina Givens, for all damages as are just and reasonable in the premises, for the following:

**4.**

At all times pertinent hereto and specifically on or about March 24, 2011, plaintiff, Tina Givens, was permanently employed by and actually working within the course and scope of her employment for her employer, Team Labor Force, LLC, as an oil clean-up worker.

**5.**

At all times pertinent hereto, Plaintiff was not a worker within the intendment of the Jones Act, 46 U.S.C. §30104.

**6.**

On or about March 24, 2011, and at all times pertinent hereto, Plaintiff, Tina Givens, was a worker covered by the state workers' compensation laws of Louisiana, Louisiana Revised Statutes 23:1021, et seq.

**7.**

On or about March 24, 2011, ES & H, Inc. was the operator, bare boat charterer and/or owner of the vessel, Ms. Rebecca.

**8.**

On or about March 24, 2011, Tina Givens was instructed by the supervisor of her employer, Team Labor Force, LLC, to board the vessel, Ms. Rebecca, located on the navigable waters of the

United States, near Grand Isle, Louisiana. Plaintiff loaded onto the Ms. Rebecca to be transported for clean up work on a beach located on an island near Grand Isle, Louisiana.  While Plaintiff was standing at the aft of the vessel near the closed engine room hatch, a worker in the employ of Defendant, ES & H, Inc., standing behind Tina Givens opened the engine room hatch without providing warning to the Plaintiff. Plaintiff turned to enter the cabin of the vessel and fell into the open hatch of the engine room aboard the Ms. Rebecca.

9.

As a result of the above described accident, the Plaintiff, Tina Givens, suffered severe and debilitating injuries to her body, including injury to her left leg, arms, neck and back through no fault of her own.

10.

ES & H, Inc. and/or Team Labor Force, LLC are vicariously liable for the negligence, actions and inactions of their employees, servants, representatives, agents, and/or workers through the theory of respondeat superior.

11.

The aforementioned accident and personal injuries of Tina Givens was proximately and directly caused by the negligence of defendants, ES & H, Inc. and/or Team Labor Force, LLC , their agents, servants and/or employees or anyone else for whom they may be responsible, in the following non-exclusive particulars:

a.      Failing to properly train their employees;

b.      Failing to provide proper supervision;

c.      Failing to warn Plaintiff of the impending accident;

d.      Negligently operating their vessel;

e.      Failing to properly secure equipment;

f.      Failing to keep a proper lookout;

g.      Failing to discover a hazardous condition;

h.      Failure to provide a safe work environment;

i.      Allowing an unsafe condition to exist on board the vessel; and,

j.      Any other acts of negligence to be proven at or before the trial of this matter.

12.

As a direct and proximate result of the aforementioned negligent acts of the defendants, ES & H, Inc. and/or Team Labor Force, LLC, their agents, servants and/or employees or anyone else for whom they may be responsible, your complainant has sustained severe and permanent disabling injuries which combined to cause the following pecuniary and non-pecuniary losses, as follows:

a.      Physical and mental pain and suffering, past, present and future;

b.      Mental anguish, emotional distress, psychological trauma, past, present, and future;

c.      Loss of wages and benefits and impairment of earning capacity, past, present and future;

d.      Medical and pharmaceutical expenses, past, present and future;

e.      Loss of enjoyment of life, past, present, and future;

f.      Loss of insurability;

h.      Vocational rehabilitation expenses; and,

i.      Permanent physical and mental disability and impairment of bodily function, past,

present and future.

## 13.

The Defendants, ES & H, Inc. and/or Team Labor Force, LLC, pursuant to the general maritime laws of the United States of America, have an absolute and non-delegable duty to provide the Plaintiff with a safe and seaworthy vessel, and to provide same with a reasonably safe place to work.

## 14.

The vessel, Ms. Rebecca, which is owned and/or operated by defendants, was unseaworthy by reason of the aforementioned acts alleged, and the injuries suffered and sustained by Plaintiff were caused, directly and proximately as a result of the unseaworthiness of said vessel.

## 15.

As a result of the unseaworthiness of said vessel, and the injuries caused thereby, Plaintiff suffered damages and injuries for which the Defendants are liable unto her as are reasonable in the premises.

## 16.

As a result of the aforementioned acts of negligence and unseaworthiness, the Plaintiff was rendered, and remains, unfit for duty.

## 17.

Plaintiff requests that the issues of this case be decided by jury.

**WHEREFORE,** Plaintiff, Tina Angel Givens, prays that the defendants, ES & H, Inc. and/or Team Labor Force, LLC , be served with a copy of this complaint and summoned to appear and answer

same within the delays provided by law and that after the expiration of all legal delays and due

proceedings had, that there be a judgment rendered herein in her favor, and against the Defendants,

for such damages as are reasonable in the premises, together with legal interest thereon from the date

of injury until paid and for all costs of these proceedings.

**FURTHER**, plaintiff prays that this matter be tried by jury; and,

**FURTHER**, the plaintiff prays for all general and specific relief for which she petitioned and for

*all other just* and equitable relief as may be reasonable in the premises.

Respectfully submitted,

V. Jacob Garbin (T.A.), La Bar No. 27808
William S. Vincent, Jr. La. Bar No.13094
W. Jared Vincent, La. Bar No. 27695
2018 Prytania Street
New Orleans, Louisiana 70130
Telephone: (504) 522-3220
Facsimile: (504) 568-1408
E-mail: jacob@wsvjr.com; wsvincent@wsvjr.com;
jared@wsvjr.com

**PLEASE ISSUE SUMMONS:**

E S & H, Inc.
Through their agent
Lawrence X. Boucvalt, III
1730 Coteau Road
Houma, LA 70364

**Team Labor Force, LLC**
Through their agent
Eddie N. Pullaro
1054 West Tunnel Boulevard
Houma, LA 70360

**ES & H, Inc.**
Through their agent
Eddie N. Pullaro
1054 West Tunnel Boulevard
Houma, LA 70360

# Employer's First Report of Injury Or Occupational Illness
(See Instructions on reverse - Leave Items 1 and 2 blank)

## U.S. Department of Labor
Employment Standards Administration
Office of Worker's Compensations Programs

OMB No. 1215-0031

| 1. OWCP No. | 2. Carrier's No. | 3. Date and Time of Accident | | | |
|---|---|---|---|---|---|
| | 163968-T1 | Mo. 03 | Day 24 | Yr. 11 | Hour |

**4. Name of Injured/Deceased Employee (Type or print - first, M.I., last)**
TINA A GIVENS    504-589-2671    Telephone

**5. Employee's Address (No., street, city, state, Zip code)**
POST OFFICE BOX 756
LULING, LA 70070

**6. Injury is Reported Under the following Act (Mark one)**

A [X] Longshore and Harbor Workers' Compensation Act

B [ ] Defense Base Act

C [ ] Nonappropriated Fund Instrumentalities Act

D [ ] Outer Continental Shelf Lands Act

**7. Indicate Where Injury Occurred (Longshore Act only) (Mark one)**

A [X] Aboard Vessel or Over Navigable Waters

B [ ] Pier/Wharf

C [ ] Dry Dock

D [ ] Marine Terminal

E [ ] Building Way

F [ ] Marine Railway

G [ ] Other Adjoining Area

**8. Sex** [ ] M [X] F

**9. Date of Birth** 81

**10. Social Security No. (Required by Law)** - - 9 2 8 7

**11. Did Injury Cause Death?** [X] No [ ] Yes - If yes, skip to 16

**12. Did Injury Cause Loss of Time Beyond Day or Shift of Accident** [X] Yes [ ] No

**13. Date and Hour Employee First Lost Time Because of Injury** Mo. 03 Day 25 Yr. 11 Hour

**14. Did employee Stop Work Immediately?** [X] Yes [ ] No

**15. Date and Hour Employee Returned to Work**

**16. Was Employee Doing Usual Work When Injured/Killed? (If no, explain in Item 26)** [X] Yes [ ] No

**17. Did Injury/Death Occur on Employer's Premises** [ ] Yes [X] No

**18. Dept. in Which Employee Normally Works(ed)** LONGSHOREMAN/CHECKER

**19. Occupation** LABORERS, EXCEPT CONSTRUCTION

**20. Date and Hour Pay Stopped** 03/25/11

**21. Which Days Usually Worked Per Week? (Mark (X) days)**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| X | X | X | X | X | X | X |

**22. Date Employer or Foreman First Knew of accident**

**23. Wages or Earnings (Include overtime, allowances, etc.)**

| | |
|---|---|
| a. Hourly | $ |
| b. Daily | $ |
| c. Weekly | $ |
| d. Yearly | $ |

**24. Exact Place Where Accident Occurred (See Instructions on reverse). This item should specify area if accident was in maritime employment and occurred in area adjoining navigable waters.**
GRAND ISLE

**25. How was Knowledge of Accident or Occupational Illness Gained**

**26. Describe in full how the accident occurred** (Relate the events which resulted in the injury or occupational disease. Tell what the injured was doing at the time of the accident. Tell what happened and how it happened. Name any objects or substances involved and tell how they were involved. Give full details on all factors which led or contributed to the accident.

THE EMPLOYEE WAS LOADING ONTO A VESSEL FOR TRANSPORT TO ANOTHER LOCATION. THE CLAIMANT FELL INTO THE ENGINE ROOM OF THE VESSEL CAUSING INJURIES TO BOTH ARMS AND SHOULDERS, LEFT LEG, BACK AND NECK.

**27. Nature of Injury** (Name part of body affected - fractured left leg, bruised right thumb, etc.) If there was amputation of a member of the body, describe.
BRUISES/CONTUSIONS MULT BODY PARTS

**28. Has Medical Attention Been Authorized** [ ] Yes [ ] No

**29. Enter Date of Authorization**

**30. Was First Treating Physician Chosen by Employee?** [ ] Yes [ ] No

**31. Has Insurance Carrier Been Notified?** [ ] Yes [ ] No

Name: _____ Address - Enter Name, Street, City, State, State, ZIP Code

**32. Physician**
ALL INDUSTRIAL MEDICAL SERVICES
855 BELANGER ST STE 207
HOUMA, LA 70360

**33. Hospital**

**34. Insurance Carrier**
LOUISIANA WORKERS' COMPENSATION CORPORATION
2237 S. ACADIAN THRUWAY
SUITE 102
BATON ROUGE, LA 70808

**35. Employer**
TEAM LABOR FORCE LLC
P O BOX 9217
HOUMA, LA 70361

**36. Nature of Employer's Business**
LIMITED LIABILITY COMPANY (LLC)

**37. Signature of Person Authorized to Sign for Employer**

**38. Offical Title of Person Signing This Report**

**39. Date of This Report** 06/29/11

**U. S. Department Of Labor**
Office of Workers' Compensation Programs
Division of Longshore and Harbor Workers' Compensation
. P. O. Box 30728
New Orleans, LA 70190-0728

June 22, 2011

```
          File Number:     07-192447
      Injured Employee:     Tina Givens
        Date of Injury:     03/24/2011
              Employer:     Team Labor Force, LLC
```

Louisiana Workers' Comp. Corp.
P.O. Box 98041-9041
Baton Rouge, LA 70898

Please submit the reports or information requested below:

☒ Initial, supplemental and/or final narrative medical report(s).
    **Since the Date of Injury.**

☒ Appropriate document(s) to substantiate payment of compensation
(LS-206, LS-208 and/or LS-210).

☐ Employee's current mailing address.

☐ Verification of current compensation rate.

☐ LS-202, Employer's First Report of Accident or Occupational
Disease.

☒ Please submit medical reports and all other information as
requested above.

Sincerely,

*Diane Vairin*

Diane Vairin
Contact Representative
504-589-2671

·Include your address, ZIP code, and file number on all
correspondence.

Form LS-216

U.S. DEPARTMENT OF LABOR
Office of Workers' Compensation Programs
Division of Longshore and Harbor Workers' Compensation
P.O. Box 30728
New Orleans, LA 70190-0728

June 22, 2011

Case No. 07-192447
Date Of Injury: 03/24/2011

Louisiana Workers' Comp. Corp.
P.O. Box 98041-9041
Baton Rouge, LA 70898

**NOTICE TO EMPLOYER AND INSURANCE CARRIER THAT CLAIM HAS BEEN FILED**

Enclosed is a copy of a claim for compensation filed by Tina Givens (Claimant) under the Longshore & Harbor Workers' Compensation Act.

You should proceed to pay compensation promptly when due as provided by Section 14 of the Longshore and Harbor Workers' Compensation Act, and to furnish medical treatment in accordance with Sections 7(a) and (b) thereof, unless liability to pay compensation is controverted. If any installment of compensation is not paid within 14 days after it becomes due, an additional amount of ten percent of the amount due must be paid.

Section 14(d) provides that if the employer controverts the right to compensation, the employer shall file with the District Director, on or before the 14th day after having knowledge of the alleged injury or death, a notice stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted.

If the right to compensation is not denied, you should proceed to pay compensation immediately as required by the Act.

Sincerely,

Diane Vairin
Diane Vairin
Contact Representative
504-589-2671

cc: Tina Givens
    P.O. Box 756
    Luling, LA 70070

    V. Jacob Garbin, Esq.
    2018 Prytania St.
    New Orleans, LA 70130

Form LS-215a

**U. S. Department Of Labor**
Office of Workers' Compensation Programs
Division of Longshore and Harbor Workers' Compensation
P.O. Box 30728
New Orleans, LA 70190-0728

June 22, 2011

V. Jacob Garbin, Esq.
2018 Prytania St.
New Orleans, LA 70130

                        File Number: 07-192447
                    Injured Employee: Tina Givens
                      Date of Injury: 03/24/2011
                            Employer: Team Labor Force, LLC

To Whom It May Concern:

This letter will acknowledge the claim and power of attorney
submitted on behalf of the employee.  A copy is being sent to the
insurance carrier.

By copy of this letter to the insurance carrier, it is requested
that they forward all previous and future medical reports, LS-
forms and all other correspondence relative to this case directly
to you.  All correspondence should be copied to this office for
inclusion in our file.

Sincerely,

Diane Vairin
Diane Vairin
Contact Representative
504-589-2671


cc:  Louisiana Workers' Comp. Corp.
     P.O. Box 98041-9041
     Baton Rouge, LA 70898


     Tina Givens
     P.O. Box 756
     Luling, LA 70070


**Include your address, ZIP code, and file number on all
correspondence.**

Form LS-215a

06/23/2011 03:44 PM

**Employee's Claim for Compensation**

**U.S. Department of Labor**
Office of Workers' Compensation Programs



| See Instructions On Reverse | OMB No.1240-0014 |
|---|---|

**3. Name of person making claim (Type or print)**

| First | MI. | Last |
|---|---|---|
| Tina | A | Givens |

**1. OWCP No.** 07-192447

**2. Carrier's No.**

**5. Claimant's address (number, street, city, state, ZIP code)**
line1: P.O. Box 756
line2:
Luling  LA  70070
UNITED STATES

**4. Date of Injury** 03/24/2011

**6. Marital Status** ☐ Married ☑ Single

**7. Sex** ☐ Male ☑ Female

**8. Date of Birth** ___/1981

**9. Social Security Number (Required by law)** ___-9287

**10. Did injury cause loss of time beyond day or shift of accident?** ☑ Yes ☐ No

**11. On date of injury give** a. Hour began work ☐ AM ☐ PM  b. Hour of accident ☐ AM ☐ PM  c. Did you stop work immediately? ☑ yes ☐ No

**12. Date and hour pay stopped?** (mm/dd/yyyy) (hh:mm am/pm)

**13. Date and hour you returned to work** (mm/dd/yyyy) (hh:mm am/pm)

**14. Occupation (Job title; longshore worker, welder, etc.)** longshoreman/checker

**15. Injured while doing regular work?** ☑ Yes ☐ No (if "No," explain in Item 24)

**16. Wages or earnings when injured (include overtime allowances, etc.)** a. Weekly $650.00  b. Total earnings during year immediately before injury.

**17. Has 3rd party or other claim been made because of this injury?** ☐ Yes ☑ No

**18. Number of years you worked for this employer** 1

**19. Number of days usually worked per week** 5

**20. Name of supervisor at time of accident?**

**21. Earliest date supervisor or employer knew of accident** (mm/dd/yyyy) 03/24/2011

**22. Were you employed elsewhere during the week injured?** ☑ No ☐ Yes (If "Yes," state where and when on reverse.)

**23. Exact place where accident occurred (Street address, city, town, name of vessel, pier, terminal, etc.)** Grand Isle, Louisiana

**24. Describe in full how the accident occurred (Relate the events which resulted in the injury or occupational disease. Tell what the injured was doing at the time of the accident. Tell what happened and how it happened. Name any objects or substances involved and tell how they were involved. Give full details on all factors which led or contributed to the accident. If more space is needed, continue on reverse.)**

Claimant was working as a cargo checker and was loading onto a vessel for transport to another location when she fell into the engine room of the vessel.

**25. Nature of injury (name part of body affected - fractured left leg, bruised right thumb, etc. If there was a loss or loss of use of a part of the body, describe.)**

Claimant injured both shoulders, right and left arm, left leg, back and neck. She also aggravated injuries previously received to her head.

**26. Have you received medical attention for this injury?** (if "Yes," give name and address of doctor, clinic, hospital, etc.) ☑ Yes ☐ No

Claimant was only provided with emergency medical care at All Industrial Medical Services, 855 Belanger St., Suite 207, Houma, LA 70360.

**27. Were you treated by a physician of your choice?** ☐ Yes ☑ No

**28. Was such treatment provided by employer?** ☑ Yes ☐ No

**29. Are you still disabled on account of this injury?** ☑ yes ☐ No

**30. Have you worked during the period of disability?** ☑ Yes ☐ No

**31. Have you received any wages since becoming disabled?** ☑ Yes ☐ No (if "Yes," give dates on reverse)

**32. Has injury resulted in permanent disability, amputation or serious disfigurement?** ☑ Yes (Describe on reverse.) ☐ No

**33. Name of employer (individual or firm name)** Team Labor Force, LLC.

**34. Nature of employer's business** oil clean up operations

**35. Address of employer (Number, street, city, state, ZIP code) (See also attached LA Sec. of State service information).** 2802 Flintrock Trace, #B104, Lakeway, TX 78734.

**36. If accident occurred outside the U.S., state whether you are a U.S. Citizen** ☑ Yes ☐ No

**37. I hereby make claim for compensation benefits, monetary and medical, under the** Longshore and Harbor workers Compensation Act **Act**
Signature of claimant or person acting in his/her behalf

**38. Date of this claim** (mm/dd/yyyy) 06/20/2011

Section 31(a)(1) of the Longshore Act. 33 U.S.C. 931(a)(1) provides, as follows: Any claimant or representative of a claimant who knowingly and willfully makes a false statement or representation for the purpose of obtaining a benefit or payment under this Act shall be guilty of a felony, and on conviction thereof shall be punished by a fine not to exceed $10,000, by imprisonment not to exceed five years, or by both.

Form LS-203
Rev. Sept. 1998

06/23/2011 03:44 PM

## Instructions

• Use this form to file a claim under any one of the following laws:

Longshore and Harbor Workers' Compensation Act
Defense Base Act
Outer Continental Shelf Lands Act
Nonappropriated Fund Instrumentalities Act

- Applicant may leave items 1. and 2. blank.

Except as noted below, a claim may be filed within one year after the injury or death (33 U.S.C. 913(a)). If compensation has been paid without an award, a claim may be filed within one year after the last payment. The time for filing a claim does not begin to run until the employee or beneficiary knows, or should have known by the exercise of reasonable diligence, of the relationship between the employment and the injury. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The information will be used to determine an injured worker's entitlement to compensation and medical benefits.

In case of hearing loss, a claim may be filed within one year after receipt by an employee of an audiogram, with the accompanying report thereon, indicating that the employee has suffered a loss of hearing.

In cases involving occupational disease which does not immediately result in death or disability, a claim may be filed within two years after the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the relationship between the employment, the disease, and the death or disability.

To file a claim for compensation benefits, complete and sign two copies of this form and send or give both copies to the Office of Workers' Compensation Programs District Director in the city serving the district where the injury occurred. District Offices of OWCP are located in the following cities.

| | | | |
|---|---|---|---|
| Baltimore | Honolulu | New Orleans | Philadelphia |
| Boston | Houston | New York | San Francisco |
| Chicago | Jacksonville | Norfolk | Seattle |
| | Long Beach | | Washington, D.C. |

Use the space below to continue answers. Please number each answer to correspond to the number of the item being continued.

16. Claimant is owed Section 7 and Section 8 benefits.
26. Claimant suffered injuries which require further medical treatment. She chooses as her physician: Dr. E. Ward Sudderth, 4700 Wichers Drive, Suite 105; Marrero, LA 70072.

### PRIVACY ACT NOTICE

In accordance with the Privacy Act of 1974, as amended (5 U.S.C. 552a) you are hereby notified that (1) the Longshore and Harbor Workers' Compensation Act, as amended and extended (33 U.S.C. 901 et seq.) (LHWCA) is administered by the Office of Workers' Compensation Programs of the U.S. Department of Labor, which receives and maintains personal information on claimants and their immediate families. (2) Information which the Office has will be used to determine eligibility for and the amount of benefits payable under the LHWCA. (3) Information may be given to the employer which employed the claimant at the time of injury, or to the insurance carrier or other entity which secured the employer's compensation liability. (4) Information may be given to physicians and other medical service providers for use in providing treatment or medical/vocational rehabilitation, making evaluations and/or for other purposes relating to the medical management of the claim. (5) Information may be given to the Department of Labor's Office of Administrative Law Judges (OALJ), or other person, board or organization, which is authorized or required to render decisions with respect to the claim or other matter arising in connection with the claim. (6) Information may be given to Federal, state and local agencies for law enforcement purposes, to obtain information relevant to a decision under the LHWCA, to determine whether benefits are being or have been paid properly, and, where appropriate, to pursue salary/administrative offset and debt collection actions required or permitted by law. (7) Disclosure of the claimant's Social Security Number (SSN) or tax identifying number (TIN) on this form is mandatory. The SSN and/or TIN and other information maintained by the Office may be used for identification, and for other purposes authorized by law. (8) Failure to disclose all requested information may delay the processing of the claim, the payment of benefits, or may result in an unfavorable decision or reduced level of benefits.

Note: The notice applies to all forms requesting information that you might receive from the Office in connection with the processing and/or adjudication of the claim you filed under the LHWCA and related statutes.

### Public Burden Statement

We estimate that it will take an average of 15 minutes to complete this collection of information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the U.S. Department of Labor, Division of Longshore and Harbor Workers' Compensation, 200 Constitution Avenue, NW, Washington, DC 20210. DO NOT SEND THE COMPLETED FORM TO THIS OFFICE

06/23/2011 03:44 PM

**POWER OF ATTORNEY AND AGREEMENT**

New Orleans, Louisiana

June 9, 2011

I, the undersigned hereby employ William S. Vincent, Jr., V. Jacob Garbin, and W. Jared Vincent, Attorneys at Law, and authorize any and all of them to review my file on record at the United States Department of Labor and to obtain copies of all documents therein. This file was compiled as a result of the injuries to my left arm, right arm, both shoulders, left leg, back, and neck which occurred on or about March 24, 2011, while I was employed by Team Labor Force, LLC.

This is to further authorize the above counsel to handle all claims arising out of this accident on my behalf.

ACCEPTED:

DATE: 6/9/11

DATE: 6/9/11

_____
TINA ANGEL GIVENS

_____
WILLIAM S. VINCENT, JR.
V. JACOB GARBIN
W. JARED VINCENT

X:\CLIENTS\9732\AUTH\POA injury on 3-24-11 vjg.wpd\

Notice of Controversion of Right
to Compensation

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Longshore and Harbor Workers' Compensation

This report is required to obtain or retain benefits and is authorized by law and regulation (33 USC 914(d), (e); 20 CFR 702.251). | OMB No. 1215-0023
Failure to report when controverting right to compensation can result in liability for 10 percent additional compensation.

| | |
|---|---|
| **Instructions:** This form may be used by the employer/carrier to controvert the right to compensation. 33 USC 914(a) requires the employer to pay compensation promptly and without an award unless the right to such compensation is controverted by the filing of this form. Failure either to pay each installment of compensation, or controvert the right to such compensation, within fourteen days after it becomes due may result in liability for additional compensation equal to ten percent of each installment not paid when due (33 USC 914(d), (e). If the right to compensation is controverted, this form should be submitted in triplicate to the District Director, and the reasons for such controversion should be fully stated in item 12. | 1. OWCP File No.<br><br>07-192447<br><br>2. Employer File No.<br><br><br><br>3. Carrier File No.<br><br>163968 |

| | |
|---|---|
| 4. Claimant's Name and Address<br><br>TINA A GIVENS<br>POST OFFICE BOX 756<br>LULING, LA  70070  UNITED STATES | 5. Claim File or Injury Reported Under (check one)<br><br>[X] LHWCA   [ ] OCS<br><br>[ ] DCWCA   [ ] NFIA<br><br>[ ] DBA |

| | |
|---|---|
| 6. Employee's Name and Address If different from Claimant's<br><br>SAME | 7. Employer's Name, Address and Phone Number<br><br>TEAM LABOR FORCE LLC<br>P O BOX 9217<br>HOUMA, LA  70361<br>UNITED STATES |

| | |
|---|---|
| 8. Carrier's Name, Address and Phone Number<br><br>LOUISIANA WORKERS' COMPENSATION CORPORATION<br>2237 S. ACADIAN THRUWAY<br>BATON ROUGE, LA  70808<br>800-267-2410  UNITED STATES | 9. Nature of Injury or Occupational Disease<br><br>BRUISES/CONTUSIONS  MULT BODY PARTS |

| | |
|---|---|
| 10. Date of Injury (Month, Day, Year)<br><br>MARCH 24, 2011 | 11. Date of Employer's First Knowledge of Injury (Month, Day, Year) |

12. Right to compensation is controverted for the following reason(s)

The employer and carrier controvert the nature and extent of disability

| | |
|---|---|
| 13. Authorized Signature | 14. Print Name and Phone Number<br><br>DONNA MC GILVRAY  800-267-2410 |
| 15. Title<br><br>CLAIMS DEPARTMENT | 16. Date of this Notice (Month, Day, Year)<br><br>JUNE 30, 2011 |

17. (OWCP USE) A copy of this form was mailed to the claimant and/or representative

on _____  Initials _____

**Public Burden Statement**
The following statement is made in accordance with the Privacy Act of 1974 (5 USC 522a) and the Paperwork Reduction Act of 1995, as amended. The authority for requesting the following information is 20 CFR 702.251. Use of this form is optional, however furnishing the information is required in order to obtain and/or retain benefits. According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 1215-0023. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Longshore and Harbor Worker's Compensation, Room C4315, 200 Constitution Avenue, N.W., Washington, D.C. 20210.
**DO NOT SEND COMPLETED FORMS TO THIS OFFICE.**

Form LS-207
Rev. December 2008

6/24/11 at 15:15:52.57

Page: 2

# TEAM LABOR FORCE, LLC
## Tickets Recorded By
### For the Period From Jan 1, 2011 to Dec 31, 2011

Filter Criteria includes: 1) Employee IDs from GIVENS T # to GIVENS T #. Report order is by Recorded by ID.

Recorded by ID
Recorded by Name

| Ticket Date | Job ID | AR-Use | Billing Rate | Invoice Numb | Unit Durati | Total Unit D | Billing Amo | Total Billing |
|---|---|---|---|---|---|---|---|---|
| 2/21/11 | 05-037-10-05 | Yes | 20.00 | 3-7362 | 10.00 | | 200.00 | |
| 2/22/11 | 05-037-10-05 | Yes | 20.00 | 3-7362 | 10.00 | | 200.00 | |
| 2/23/11 | 05-037-10-05 | Yes | 20.00 | 3-7362 | 10.00 | | 200.00 | |
| 2/24/11 | 05-037-10-05 | Yes | 20.00 | 3-7362 | 10.00 | | 200.00 | |
| 2/25/11 | 05-037-10-05 | Yes | 20.00 | 3-7362 | 10.00 | | 200.00 | |
| 2/26/11 | 05-037-10-05 | Yes | 20.00 | 3-7362 | 10.00 | | 200.00 | |
| 2/27/11 | 05-037-10-05 | Yes | 20.00 | 3-7362 | 10.00 | | 200.00 | |
| 2/28/11 | 05-037-10-05 | Yes | 20.00 | 3-7362 | 10.00 | | 200.00 | |
| 3/1/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 10.00 | | 200.00 | |
| 3/2/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 10.00 | | 200.00 | |
| 3/3/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 10.00 | | 200.00 | |
| 3/4/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 10.00 | | 200.00 | |
| 3/5/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 10.00 | | 200.00 | |
| 3/6/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 10.00 | | 200.00 | |
| 3/7/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 10.00 | | 200.00 | |
| 3/8/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 10.00 | | 200.00 | |
| 3/9/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 8.00 | | 160.00 | |
| 3/11/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 10.00 | | 200.00 | |
| 3/12/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 8.00 | | 160.00 | |
| 3/12/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 2.00 | | 40.00 | |
| 3/13/11 | 02-106-11-05 | Yes | 20.00 | 3-7378 | 10.00 | | 200.00 | |
| 3/14/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/15/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/16/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/17/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/18/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/19/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/20/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/22/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/23/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/24/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/25/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/26/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/27/11 | 02-106-11-05 | Yes | 20.00 | 3-7418 | 10.00 | | 200.00 | |
| 3/28/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 10.00 | | 200.00 | |
| 3/29/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 10.00 | | 200.00 | |
| 3/30/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 10.00 | | 200.00 | |
| 3/31/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 10.00 | | 200.00 | |
| 4/2/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 10.00 | | 200.00 | |
| 4/3/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 10.00 | | 200.00 | |
| 4/4/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 10.00 | | 200.00 | |
| 4/5/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 8.00 | | 160.00 | |
| 4/6/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 10.00 | | 200.00 | |
| 4/7/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 10.00 | | 200.00 | |
| 4/10/11 | 05-037-10-05 | Yes | 20.00 | 3-7488 | 10.00 | | 200.00 | |
| 4/10/11 | 05-037-10-05 | Yes | 20.00 | 3-7488 | 10.00 | | 200.00 | |

6/24/11 at 15:15:52.59

Page: 3

# TEAM LABOR FORCE, LLC
## Tickets Recorded By
### For the Period From Jan 1, 2011 to Dec 31, 2011

Filter Criteria includes: 1) Employee IDs from GIVENS T # to GIVENS T #. Report order is by Recorded by ID.

**Recorded by ID**
**Recorded by Name**

| Ticket Date | Job ID | AR-Use | Billing Rate | Invoice Numb | Unit Durati | Total Unit D | Billing Amo | Total Billing |
|---|---|---|---|---|---|---|---|---|
| 4/10/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 2.00 | | 40.00 | |
| 4/10/11 | 02-106-11-05 | Yes | 20.00 | 3-7456 | 8.00 | | 160.00 | |
| 4/11/11 | 02-106-11-05 | Yes | 20.00 | 3-7500 | 10.00 | | 200.00 | |
| 4/12/11 | 05-037-10-05 | Yes | 20.00 | 3-7528 | 10.00 | | 200.00 | |
| 4/13/11 | 02-106-11-05 | Yes | 20.00 | 3-7500 | 10.00 | | 200.00 | |
| 4/13/11 | 05-037-10-05 | Yes | 20.00 | 3-7528 | 10.00 | | 200.00 | |
| 4/14/11 | 05-037-10-05 | Yes | 20.00 | 3-7528 | 10.00 | | 200.00 | |
| 4/15/11 | 05-037-10-05 | Yes | 20.00 | 3-7528 | 10.00 | | 200.00 | |
| 4/16/11 | 05-037-10-05 | Yes | 20.00 | 3-7528 | 10.00 | | 200.00 | |
| 4/17/11 | 05-037-10-05 | Yes | 20.00 | 3-7528 | 10.00 | | 200.00 | |
| 4/19/11 | 05-037-10-05 | Yes | 20.00 | 3-7528 | 10.00 | | 200.00 | |
| 4/20/11 | 05-037-10-05 | Yes | 20.00 | 3-7528 | 10.00 | | 200.00 | |
| 4/21/11 | 05-037-10-05 | Yes | 20.00 | 3-7528 | 9.00 | | 180.00 | |
| 4/25/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | 10.00 | | 200.00 | |
| 4/26/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | 10.00 | | 200.00 | |
| 4/27/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | 10.00 | | 200.00 | |
| 4/28/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | 8.00 | | 160.00 | |
| 4/29/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | 10.00 | | 200.00 | |
| 4/29/11 | 05-073-10-05 | Yes | 20.00 | 3-7566 | 2.00 | | 40.00 | |
| 4/29/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | | | | |
| 4/30/11 | 05-073-10-05 | Yes | 20.00 | 3-7566 | 8.00 | | 160.00 | |
| 4/30/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | | | | |
| 5/1/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | 10.00 | | 200.00 | |
| 5/2/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | 10.00 | | 200.00 | |
| 5/3/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | 10.00 | | 200.00 | |
| 5/4/11 | 05-037-10-05 | Yes | 20.00 | 3-7562 | 8.00 | | 160.00 | |
| 5/10/11 | 05-037-10-05 | Yes | 20.00 | 3-7592 | 8.00 | | 160.00 | |
| 5/11/11 | 05-037-10-05 | Yes | 20.00 | 3-7592 | 10.00 | | 200.00 | |
| | | | | | 10.00 | | 200.00 | |
| | | | | | | **1,107.00** | | **22,140.00** |
| | | | | | | **1,107.00** | | **22,140.00** |

| ✹ bp | **Preliminary HSSE Incident Report**<br>**"Short Form"** | |
|---|---|---|

Place an "x" in the appropriate box or boxes that best classify the incident.

| **Safety/Health** | **Transportation** | **Loss/Damage** | **Other** | ID# 227- |
|---|---|---|---|---|
| ■ Occupational Injury | ☐ Air | ☐ Equipment/Property Damage | ☐ Security | 546294 GT |
| ☐ Occupational Illness | ☐ Maritime | ☐ Fire/Explosion | ☐ Other | |
| ☐ Near Miss | ☐ Road | ☐ Near Miss | ☐ Near Miss | |
| | ☐ Near Miss | | | |

**Section 1: Worker Information (when applies)**

| Name (Last, First, Middle)<br>Givens, Tina<br>Worker contact phone #<br>985.210.8013 | Date of Birth<br>(Month/Day/Year)<br>●●/●●/81 | Sex<br>☐ Male<br>■ Female | Race/Ethnicity<br>☐ White  ■ Black  ☐ Asian<br>☐ Hispanic  ☐ Other |
|---|---|---|---|
| ☐ BP Employee   ■ Contractor   ☐ Other<br>☐ Federal/State/Local   ☐ Volunteer | | Last four digits of SS#<br>9287 | Job Title:<br>Beach Technician |

| Supervisors Name: Vok Robinson<br>Supervisors Phone #: 985.381.6453 | Employer Name:  Team Labor Force (TLF) | Employer Address: 1202 Tiger Drive,<br>Thibodaux, LA  70301<br>Employers phone #: 985.449.1112 |
|---|---|---|

**Section 2: General Incident Details**

| Date / Time Incident Occurred:<br><br>03 / 24 / 11 @ 07:20 AM | Date / Time Incident Reported:<br><br>03 / 24 / 11 @ 07:20 AM |
|---|---|

| Incident Reported To:<br><br>Terry Oncale | Command Site:<br>☐ Houston   ☐ Houma         ■ New Orleans<br>☐ Mobile   ☐ St. Petersburg<br>☐ Key West   ☐ Pensacola         ☐ Other |
|---|---|

| Staging Site:<br>Grand Isle | Location where work was taking place (Name of Vessel, Beach,<br>etc.)   Nautical Point – Ms. Rebecca |
|---|---|

| Activity being performed: Onshore<br>■ Beach cleanup      ☐ Other<br>☐ Wildlife cleanup | Activity being performed: Offshore<br>☐ Oil skimming         ☐ Dispersant application<br>☐ In-situ burning       ☐ Wellhead containment/repair<br>☐ Boom deployment    ☐ Other |
|---|---|

Describe the circumstances that led to the incident:  Employee was walking to the back of Ms. Rebecca, she turned to say hello to someone, and stepped off into the bilge sump at the back of the boat.  The deckhand had just opened it to check the pumps.  Employee stated her right leg went into the sump and twisted her left ankle.

Has the condition causing the incident been corrected or made safe?  _____Yes  _____No.  If "yes" how?

Were there any witnesses to the incident?  __X__ Yes _____No.  If "yes" please list their name and company.

Chai Chapman (Deckhand – 985.381.9239)

What was the learned from this incident? (How could it be prevented in the future)

**Section 3: Injury Details (if this incident caused an injury or illness, complete this section)**

Describe the injury and body part affected (e.g., 1 inch scratch to right forearm) affected

Twisted left ankle, 2" scratch on left wrist

Specific activity being performed when injury occurred (e.g. unloading boom from truck, walking on gangway, bending over picking up debris, etc)
Walking on transport boat

## bp

### Preliminary HSSE Incident Report
### "Short Form"

Describe the treatment received: (e.g . antiseptic and band aid applied)
Ice on ankle, bandage on wrist, transported by ES&H to get ankle x-rayed

**Section 4: Illness Details (if this incident caused an illness or symptoms, complete this section)**   Not Applicable

Describe the workers' symptoms or illness (e.g. nausea and vomiting, heat rash, etc.)

Specific work activity being performed at the time of illness/symptoms prior to illness/symptoms

Describe the treatment received (e.g. rest and stop work for the day, hospitalization, etc.)

**Section 6: Exposure (if this incident resulted in a illness, complete this section)**   Not Applicable

If an exposure:
How long did the task or event last? _____ minutes/hours.    How often do they do this task or event? _____ minutes/hours
Is the task or event routine or non-routine.                      Yes _____ NO _____
If OCS facility/MODU, was MMS District Office notified.  Yes _____ NO _____

Route of exposure (check all that apply): ☐ Dermal   ☐ Ingestion   ☐ Inhalation

Type of chemical   ☐ Chemical dispersant    ☐ Oil/dispersant polluted water   ☐ Smoke from oil burning
                   ☐ Cleaning agents         ☐ Other chemical
Was sampling of air, water, etc. conducted? If so, please describe:

**Section 6: Material Release (if this incident resulted in a material release, complete this section)**   Not Applicable

Type of material released: _____

Volume of material released. _____         Volume of material recovered: _____

Released to: _____ skid pan _____ containment area _____ sea _____ air _____ other _____

Was the material cleaned up? _____ Yes _____ No. If "Yes", how?

**Section 7: Disposition**

☐ Treated in the field and released
☐ Treated at field medical station and released        ☐ Transported to urgent care clinic
                                                        ■ Transferred to emergency department/emergency room

If off site treatment is required, where did they get sent _____
If off site treatment or follow up on treatment received is assigned to:
Name. _____ Company _____ Contact # _____ Email _____
Name. _____ Company _____ Contact # _____ Email _____
Name. _____ Company _____ Contact # _____ Email _____

| | | | |
|---|---|---|---|
| Person providing information: | Tina Givens | | Date: 3/24/11 |
| | (Print)   (Signature) | | |
| Person reviewing incident: | Scott Hoppel | | Date: 3/24/11 |
| | (Print)   (Signature) | | |
| Responsible Supervisor: | Seth Washington | | Date: |
| | (Print)   (Signature) | | |

Note to Reviewer: Set a positive tone for the obtaining of information and conduct questioning from learning approach. Do not overwhelm the person providing you the information.
 • *Email completed form to: MC252_HOUMA_SAFETY@bp.com*

**bp**

**Preliminary HSSE Incident Report**
"Short Form"

ID# 227-
546-2146

...ace an "x" in the appropriate box or boxes that best classify the incident.

| Safety/Health | Transportation | Loss/Damage | Other |
|---|---|---|---|
| ☐ Occupational Injury | ☐ Air | ☐ Equipment/Property Damage | ☐ Security |
| ☐ Occupational Illness | ☐ Maritime | ☐ Fire/Explosion | ☐ Other |
| ☐ Near Miss | ☐ Road | ☐ Near Miss | ☐ Near Miss |
| | ☐ Near Miss | | |

**Section 1: Worker Information (when applies)**

Name (Last, First, Middle): Gibbs, Tim

Date of Birth (Month/Day/Year): /51

Sex: ☐ Male  ☒ Female

Race/Ethnicity: ☐ White  ☒ Black  ☐ Asian  ☐ Hispanic  ☐ Other

Worker contact phone #: 985-210-8013

☐ BP Employee  ☒ Contractor  ☐ Other

☐ Federal/State/Local  ☐ Volunteer

Last four digits of SS#: 9287

Job Title: Beach Tech

Supervisors Name: Vick Robinson

Employer Name: TLF

Employer Address:

Supervisors Phone #: 985-351-6953

Employers phone #:

**Section 2: General Incident Details**

Date / Time Incident Occurred: 3/24/11   720

Date / Time Incident Reported: 3/24/11   720

Incident Reported To: Tony Oreali

Command Site: ☐ Houston  ☐ Mobile  ☐ Key West  ☐ Houma  ☐ St. Petersburg  ☐ Pensacola  ☒ New Orleans  ☐ Other

Staging Site: Grand Isle

Location where work was taking place (Name of Vessel, Beach, etc.): MV - Ms Rebecca

Activity being performed: Onshore
☒ Beach cleanup   ☐ Other-Decon Oil Boom
☐ Wildlife cleanup

Activity being performed: Offshore
☐ Oil skimming   ☐ Dispersant application
☐ In-situ burning   ☐ Wellhead containment/repair
☐ Boom deployment   ☐ Other

Describe the circumstances that led to the incident: Turned while trying to enter boat door of Ms vessel, hatch was open, right leg went down twisted left ankle

Has the condition causing the incident been corrected or made safe? _____ Yes _____ No. If "yes" how?

Were there any witnesses to the incident? _____ Yes _____ No. If "yes" please list their name and company.
Chris Chapman (985-351-9257) Farrell

What was the learned from this incident? (How could it be prevented in the future?)

**Section 3: Injury Details (If this incident caused an injury or illness, complete this section)**

Describe the injury and body part affected (e.g., 1 inch scratch to right forearm) affected: left ankle twisted, 2" scrape left wrist

Specific activity being performed when injury occurred (e.g. unloading boom from truck, walking on gangway, bending over picking up debris, etc): loading transport boat

Describe the treatment received: (e.g., antiseptic and band aid applied) ice, band aid, transport to clinic

Page 1 of 2

## bp — Preliminary HSSE Incident Report "Short Form"

Place an "x" in the appropriate box or boxes that best classify the incident.

**Safety/Health**
- ☐ Occupational Injury
- ☐ Occupational Illness
- ☐ Near Miss

**Transportation**
- ☐ Air
- ☐ Maritime
- ☐ Road
- ☐ Near Miss

**Loss/Damage**
- ☐ Equipment/Property Damage
- ☐ Fire/Explosion
- ☐ Near Miss

**Other**
- ☐ Security
- ☐ Other
- ☐ Near Miss

ID# 227-

### Section 1: Worker Information (when applies)

Name (Last, First, Middle)

Worker contact phone #

Date of Birth (Month/Day/Year)

Sex: ☐ Male ☐ Female

Race/Ethnicity: ☐ White ☐ Black ☐ Asian ☐ Hispanic ☐ Other

☐ BP Employee ■ Contractor ☐ Other ☐ Federal/State/Local ☐ Volunteer

Last four digits of SS#

Job Title:

Supervisors Name:

Supervisors Phone #:

Employer Name:

Employer Address:

Employers phone #:

### Section 2: General Incident Details

Date / Time Incident Occurred:

Date / Time Incident Reported:

Incident Reported To: _Chris Al Chapman_
_Chris Chapman  3-24-11_

Command Site: ☐ Houston ☐ Mobile ☐ Key West ☐ Houma ☐ St. Petersburg ☐ Pensacola ■ New Orleans ☐ Other

Staging Site:

Location where work was taking place (Name of Vessel, Beach, etc.)

**Activity being performed: Onshore**
- ☐ Beach cleanup
- ☐ Wildlife cleanup
- ☐ Other-Decon Oil Boom

**Activity being performed: Offshore**
- ☐ Oil skimming
- ☐ In-situ burning
- ☐ Boom deployment
- ☐ Dispersant application
- ☐ Wellhead containment/repair
- ☐ Other

Describe the circumstances that led to the incident: _I opened the back hatch to turn on pumps as she walked on to the boat. She was right behind my stepping to somelse on the dock. I turned around for a split second and I heard her fall when I turned around she was laid down on deck._

Has the condition causing the incident been corrected or made safe? ___Yes ___No. If "yes" how?
_Farrell Island 5/6/16 6:14 crew with 15 gal of Peru when Farrell Farrell state_

Were there any witnesses to the incident? ___Yes ___No. If "yes" please list their name and company.
_Rot when he heard scene called Shuttleworth scene "hug was white re back_

What was the learned from this incident? (How could it be prevented in the future) _of. Boat will tell he in Eldger late_

### Section 3: Injury Details (If this incident caused an injury or illness, complete this section)

Describe the injury and body part affected (e.g., 1 inch scratch to right forearm) affected:

Specific activity being performed when injury occurred (e.g. unloading boom from truck, walking on gangway, bending over picking up debris, etc)

Describe the treatment received: (e.g., antiseptic and band aid applied)

# *All Industrial Medical Services*

## PATIENT TRACKING RECORD

Attending Physician: *Brandon Rhodes FNP-C*

Company Name: *Team Labor Force*          Phone: *709-2011*

Company Contact: *Rudy August*

Patient Name: *Tina Burns*          SS# ███-██-*9287*

DOB: ███-81          Phone# *785-1615*

Date of Injury: *3-24-11*

Injury occurred on: [ ] Land, [✓] Water

Diagnosis: *Left Ankle Strain    Left Knee Contusion*

### Work Status / Restrictions:

[ ] Sedentary work, Max. lifting 10 lbs; limited standing or walking.

[ ] Light work, Max. lifting 20 lbs, carry objects less than 10 lbs for short periods

[ ] Medium work, Max lifting 50 lbs., carry objects less than 25 lbs. for short Periods.

[ ] Heavy Work, Max. lifting 100lbs. , carry objects up to 50 lbs.

[ ] Full Duty Release, No limitations on _____ (Date)

[ ] Patient is totally incapacitated at this time.

[✓] Other: *No Excessive climbing*

Post accident Drug Screen performed: *3-24-11*

Post accident Alcohol Screen performed: *3-24-11*

Treatment Recommendations: *Rest   ICE, Compression, Elevation*
*Motrin for Pain    Call with any problem*
*Crutches for relief.*

Next Appointment: _____          Provider Signature: ✎

Referred to: _____          Date: *3·24·11*



All Industrial Medical Services

# DISCHARGE INSTRUCTIONS

Date _3/24-11_

Name _Tina Bivens_

You were seen today at ALL INDUSTRIAL MEDICAL SERVICES by _Brandon Rhodes TWPC_

Your Nurse or Tech was _Mindy Lyons_

Your diagnosis is _Left Ankle Strain   Left Knee contusion_

## There are your instructions:

1. If you have any new difficulties or worsen in any way, contact your company representative who is handling your case, immediatly.

2. You have been advised to take the following medications

_Motrin OTC_

3. You are to follow up on _____ with _____

4. Follow the instructions below if indicated.

_Rest_
_ICE X 48 hours   Then moist Heat_
_Compression_
_Elevation_
_Call with any problems.  Crutches ankle wrap for relief_

**Employer's First Report of Injury Or Occupational Illness**

(See Instructions on reverse - Leave Items 1 and 2 blank)

**U.S. Department of Labor**

Employment Standards Administration
Office of Worker's Compensations Programs

OMB No. 1215-0031

| 1. OWCP No. | 2. Carrier's No. 163968-T1 | 3. Date and Time of Accident Mo. 03  Day 24  Yr. 11  Hour |
|---|---|---|

**4. Name of Injured/Deceased Employee (Type or print - first, M.I., last)**

TINA A  GIVENS

Telephone  504-589-2671

**5. Employee's Address (No., street, city, state, Zip code)**

POST OFFICE BOX 756
LULING, LA  70070

**6. Injury is Reported Under the following Act (Mark one)**

A [X] Longshore and Harbor Workers' Compensation Act

B [ ] Defense Base Act

C [ ] Nonappropriated Fund Instrumentalities Act

D [ ] Outer Continental Shelf Lands Act

**7. Indicate Where Injury Occurred (Longshore Act only) (Mark one)**

A [X] Aboard Vessel or Over Navigable Waters

B [ ] Pier/Wharf

C [ ] Dry Dock

D [ ] Marine Terminal

E [ ] Building Way

F [ ] Marine Railway

G [ ] Other Adjoining Area

**8. Sex** [ ] M  [X] F

**9. Date of Birth** ___/___/81

**10. Social Security No. (Required by Law)** ___-__-9 2 8 7

**11. Did Injury Cause Death?** [X] No  [ ] Yes - If yes, skip to 16

**12. Did Injury Cause Loss of Time Beyond Day or Shift of Accident** [X] Yes  [ ] No

**13. Date and Hour Employee First Lost Time Because of Injury** Mo. 03  Day 25  Yr. 11  Hour

**14. Did employee Stop Work Immediately?** [X] Yes  [ ] No

**15. Date and Hour Employee Returned to Work** 03/24/11

**16. Was Employee Doing Usual Work When Injured/Killed? (If no, explain in Item 26)** [X] Yes  [ ] No

**17. Did Injury/Death Occur on Employer's Premises** [ ] Yes  [X] No

**18. Dept. in Which Employee Normally Works(ed)** LONGSHOREMAN/CHECKER

**19. Occupation** LABORERS, EXCEPT CONSTRUCTION

**20. Date and Hour Pay Stopped** 03/25/11

**21. Which Days Usually Worked Per Week?** (Mark (X) days)

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| X | X | X | X | X | X | X |

**22. Date Employer or Foreman First Knew of accident**

**23. Wages or Earnings (Include overtime, allowances, etc.)**

| a. Hourly | $ |
| b. Daily | $ |
| c. Weekly | $ |
| d. Yearly | $ |

**24. Exact Place Where Accident Occurred (See Instructions on reverse.) This item must specify area if accident was in maritime employment and occurred in area adjoining navigable waters.**

GRAND ISLE

**25. How was Knowledge of Accident or Occupational Illness Gained**

**26. Describe in full how the accident occurred** (Relate the events which resulted in the injury or occupational disease. Tell what the injured was doing at the time of the accident. Tell what happened and hou it happened. Name any objects or substances involved and tell how they were involved. Give full details on all factors which led or contributed to the accident.

THE EMPLOYEE WAS LOADING ON A VESSEL FOR TRANSPORT TO ANOTHER LOCATION.  THE CLAIMANT FELL INTO THE ENGINE ROOM OF THE VESSEL CAUSING INJURIES TO BOTH ARMS AND SHOULDERS, LEFT LEG, BACK AND NECK.

**27. Nature of Injury** (Name part of body affected - fractured left leg, bruised right thumb, etc.) If there was amputation of a member of the body, describe.

SPRAINS STRAINS TEARS L ANKLE(S)   SPRAINS STRAINS TEARS L KNEE(S)

**28. Has Medical Attention Been Authorized** [ ] Yes  [ ] No

**29. Enter Date of Authorization**

**30. Was First Treating Physician Chosen by Employee?** [ ] Yes  [ ] No

**31. Has Insurance Carrier Been Notified?** [ ] Yes  [ ] No

| | Name | Address - Enter Name, Street, City, State, State, ZIP Code |
|---|---|---|
| **32. Physician** | ALL INDUSTRIAL MEDICAL SERVICES | 855 BELANGER ST STE 207  HOUMA, LA 70360 |
| **33. Hospital** | | |
| **34. Insurance Carrier** | LOUISIANA WORKERS' COMPENSATION CORPORATION | 2237 S. ACADIAN THRUWAY SUITE 102  BATON ROUGE, LA  70808 |
| **35. Employer** | TEAM LABOR FORCE LLC | 2802 FLINTROCK TRACE, #B104  LAKEWAY, TX  78738 1743 |

**36. Nature of Employer's Business** LIMITED LIABILITY COMPANY (LLC)

**37. Signature of Person Authorized to Sign for Employer**

**38. Offical Title of Person Signing This Report**

**39. Date of This Report** 10/13/11

# E. WARD SUDDERTH, MD.
## MEDICAL CLINIC
## 4700 WICHERS DRIVE, SUITE 105
## MARRERO, LA 70072
## TEL # (504)-421-9654

March 7, 2013

| | |
|---|---|
| Patient Name: | GIVENS, TINA. |
| Date of Birth: | ██████/81 |
| Age: | 31 |
| Sex: | Female |
| Date of Injury: | 01/11/11 and 03/24/11 |
| Social Security: | xxx-xx-9260 |
| Employer: | Team Labor Force |
| WC Carrier: | LWCC |
| Carrier Claim#: | 1640007 and 163968 |

### FOLLOWUP VISIT

**HISTORY OF PRESENT ILLNESS:** The patient has not been seen in this office 04/18/2012. The patient states that she has never received an MRI of the head or neck area. She states that she has been seen and followed by Dr. Joseph (the patient's primary care doctor located in Luling, Louisiana). The patient states that she has seen Dr. Adatto since the summer of 2012. her low back pain she states continues since accident with pain that runs into the left lower extremity. The left knee pain with weightbearing and walking is presents and she feels a "popping" in the left knee. She has very little neck pain. She gets occasional right temporal headaches. She has painful left thumb with difficulty extending the distal digit.

**PAST MEDICAL HISTORY:** She is a nonsmoker. Last menstrual period in January of 2013. Last pelvic exam was in 2012. She is a para 3-0-3.

**ALLERGIES:** Benadryl causes her to have hives.

**PAST SURGICAL HISTORY:** She has had bilateral tubal ligation.

**PHYSICAL EXAMINATION:** Vital signs: She is afebrile, pulse rate of 89 per minute, blood pressure is 148/85, height 4 feet 5 inches and weight 264 pounds. General: Well-developed, well-nourished, obese black female in no acute distress. Heart: Normal sinus rhythm. Lungs: Clear bilaterally. Extremities: Her left knee pain to palpation is 1+/5 with decreased range of motion. She has stress pain in the left knee with extension flexion at 120 degrees and normal range of motion with the right knee. She has an inability to extend the distal phalanx of the left thumb. Back: Her lumbosacral pain to palpation is 1+/5 with decreased range of motion. The patient has stress pain with thoracolumbar spine with flexion at 80 degrees, extension 30 degrees and lateral flexion at 30 degrees bilaterally.

**IMPRESSION:**
1.     Status post blunt trauma to the head, left knee and cervical back on 01/11/11.

Re: GIVENS, TINA
D.O.S.: 03/07/13
Page 2 of 2

2.     Status post blunt trauma to lumbosacral area and left knee on 03/24/11.
3.     Resolved cervical sprain.
4.     Resolving lumbosacral and left knee sprain.
5.     She has tendonitis of the left thumb etiology undetermined.

All are secondary to an on-the-job accident of 01/11/11 and 03/24/11.

## RECOMMENDATIONS AND TREATMENT PLAN:

1.     It was recommended that she use heat and/or ice locally for pain.

2.     She was given a prescription for Vicodin ES for pain and she was given a prescription for Ibuprofen for muscle aches.

3.     She was told to continue to see Dr. Joseph.

4.     She was told that she may return to this office on as needed basis for future evaluation.

Ward Sudderth, MD

WS/lh

# Physical Capabilities for <u>Tina Givens</u>

DOB _____  Claim # _____  <u>**Estimated date of MMI**</u> _____

✓ The patient has no activity restrictions and may continue with FULL DUTY.

____ The patient has personal limitations but NO RESTRICTIONS RELATED TO THIS INJURY.

RELATED TO THIS INJURY, the patient has limited capabilities as checked below.

Can lift up to __20__ pounds      Can push/pull up to __10__ pounds

Can drive: Yes / No    Can operate heavy equipment or dangerous machinery: Yes  No

____ BACK INJURY:

Can sit without changing positions every 30 to 60 minutes: Yes / No

Can stand/walk __1__ hours per 8 hour day

Can bend or stoop: Yes / No      Can sustain postures: Yes  No

Can reach overhead: Yes  No      Can lifting above chest height Yes  No

____ UPPER EXTREMITY INJURY:

Can do data entry or repetitive motions tasks __1__ hours per 8 hour day.

Can use hand tools: Yes  No      Can sustain a grip: Yes  No

✓ LOWER EXTREMITY INJURY

Can climb stairs: Yes  No      Can climb ladders: Yes  No

Can crouch or kneel: Yes  No      Can walk: Yes  No - Needs crutches / cane

____ SYSTEMIC INJURY (Includes burns, multiple trauma, and CRPS)

Can work 4 / 6 / 8 hours per day for __5__ days per week.

Can tolerate vibration: Yes  No      Can tolerate heat/ cold: Yes  No

Can tolerate dust/fumes: Yes  No      Can evacuate dangerous environments safely: Yes  No

If the patient has other limited capabilities related to objective findings and the nature of the injury,
please describe them: 1) Obesity, 2) HTN 3) Sleep apnea

These restrictions are valid for two weeks or until _____

Physician __M. Shamsu.__ Signature __M. Uhy__ Date __7/2/2012__

## Physical Capabilities for <u>Tina Givens</u>

DOB ▬▬▬ 1981   Claim # _16 3 968_   Estimated date of MMI: _5 | 3 | 12_

X  The patient has no activity restrictions and may continue with FULL DUTY.

____  The patient has personal limitations but NO RESTRICTIONS RELATED TO THIS INJURY.

RELATED TO THIS INJURY, the patient has limited capabilities as checked below.

Can lift up to _10-20_ pounds          Can push/pull up to _10-20_ pounds

Can drive (Yes) No     Can operate heavy equipment or dangerous machinery (Yes) No

____  BACK INJURY:

Can sit without changing positions every 30 to 60 minutes (Yes) No

Can stand/walk _____ hours per 8 hour day

Can bend or stoop (Yes) No          Can sustain postures (Yes) No

Can reach overhead (Yes) No          Can lifting above chest height (Yes) No

____  UPPER EXTREMITY:

Can do data entry or repetitive motions tasks _8_ hours per 8 hour day.

Can use hand tools (Yes) No          Can sustain a grip (Yes) No

____  LOWER EXTREMITY INJURY

Can climb stairs: Yes  No          Can climb ladders: Yes  No

Can crouch or kneel: Yes  No          Can walk (Yes) No - Needs crutches / cane

____  SYSTEMIC INJURY  (Includes burns, multiple trauma, and CRPS)

Can work 4 / 6 / (8) hours per day for _5-7_ days per week.

Can tolerate vibration: (Yes) No          Can tolerate heat/ cold: (Yes) No

Can tolerate dust/fumes: (Yes) No          Can evacuate dangerous environments safely (Yes) No

If the patient has other limited capabilities related to objective findings and the nature of the injury,
please describe them: _____ _____ _____ _____ _____ _____ _____

These restrictions are valid for two weeks or until _____ _____ _____ _____ _____

Physician _Kenneth Adatto_ Signature _Ken M. Adatto, h_ Date _6/4/12_



# ORLEANS ORTHOPAEDIC ASSOCIATES

Orleans
Orthopaedic
Associates

3715 PRYTANIA ST., STE 501
NEW ORLEANS, LA 70115
Phone: (504) 895-2055
Fax: (504) 896-7587
Email: orleansortho.com

**TINA GIVENS**                    **SSN: \*\*\*-\*\*-9287**          **DOB:** ▮▮▮▮1981 (31 years)

**Date of Encounter:**   05/31/2012 04:50 PM

## History of Present Illness          KENNETH N ADATTO MD 05/31/2012 05:40 PM

The patient is a 31 year old female who presents with lumbar pain. Symptoms include lumbar pain, lumbar stiffness and muscle spasm. Symptoms are located in the entire back and left posterior lumbar. The pain radiates to the left lower extremity and left thigh. The patient describes the pain as dull, aching and burning. The symptoms occur frequently. The patient describes symptoms as moderate in severity and unchanged. Symptoms are exacerbated by bending, lifting and stooping. Associated symptoms include lower extremity paresthesias. By report there is good compliance with treatment. Note for "Lumbar pain": Her pain in her back and neck are out or proportion to her findings. She was crying. She needs to return to the MD that was giving her medications. She should be able to start with light work and hopefully progress to regular work

Additional complaints:

Pain is described as the following:
The pain has been occurring in an intermittent pattern. The course has been gradually improving. The pain is mild. The pain is characterized as a burning. The pain is described as being located in the anterior ankle (Left). The pain is aggravated by changes in direction. Relieving factors include rest, modification of activity and medications.

Knee pain is described as the following:
The knee pain has been occurring in an intermittent pattern. The knee pain is moderate. The knee pain is characterized as a dull aching. The knee pain is described as being located in the anterior knee (Left) and medial knee. The knee pain is aggravated by stairs and prolonged standing. The knee pain is relieved by modification of activity and medications.

Neck pain is described as the following:
No changes in management were made at the last visit. Symptoms include neck pain, neck stiffness and muscle spasm. Symptoms are located in the entire neck. The pain radiates to the left arm and right arm. The patient describes the pain as sharp, dull, aching, burning, stinging and throbbing. The symptoms occur frequently. The patient describes symptoms as worsening. Symptoms are exacerbated by neck movement. By report there is good compliance with treatment.
-

## History          KENNETH N ADATTO MD 05/31/2012 04:55 PM

**Allergy**
    BENADRYL: Skin irritation
**Other Medical History**
    TENDINITIS, ACHILLES (726.71)
    TENDINITIS, PATELLAR (726.64)
    SPRAIN/STRAIN, LUMBAR REGION (847.2)
**Social**
    The patient is not working due to pain and loss of function.
    The patient is unemployed.
    The patient has some college or specialized training
    The patient denies illegal drug use.
    The patient denies history of treatment for substance abuse.
    The patient has never smoked
    The patient drinks alcohol socially.

**Family**

The patient's father is alive

SIBLINGS: 3

CHILDREN STILL IN HOME: 3

The patient has a previous history of injury to the affected area(s) 1-14-11: She was in a van accident at work. She did not have her seatbelt on. She was getting adjusted in the van. She was thrown out of her seat and hit her head on the windshield. She cracked the windshield and landed on the dashboard. Her left knee was stuck in a cup holder. She was seen by her PCP. X-rays were ordered but not performed. Her PCP gave her Toradol injection. She went back to her job housing and was sent to company physician who performed x-rays. She was evaluated for her cervical spine and left knee.

The patient's mother is alive

The patient lives alone

Marital Status: Single

The patient has a family history for diabetes.

The patient has a family history for strokes, hypercholestremia

**Past Surgical**

Tubal Ligation

Cholecystectomy

Appendectomy

right ankle surgery

**Diagnostic Studies**

left knee MRI: Date: 11/17/2011, Results: bursitis of MCL complex and prepatellar tendon, tendinitis of patella tendon.

MRI left ankle: Date: 11/17/2011, Results: tenosynovitis of posterior tibial tendon, injury without discontinuity of ventral aspect of the lateral collateral ligamentous complex. hemorrhage and edema in the medial and lateral aspects of the ankle. peritendinitis of achilles tendon.

MRI, Lumbar Spine: Date: 3/14/2012 I reviewed the films and report and agree with the radiologist's interpretation.

MRI, Cervical Spine: Date: 3/14/2012 I reviewed the films and report and agree with the radiologist's interpretation.

## Review of Systems

KENNETH N ADATTO MD 05/31/2012 04:55 PM

**General:** Present- Chills, Fatigue, Fever and Night Sweats.

**Skin:** Present- Rash.

**HEENT:** Present- Blurred Vision and Double Vision.

**Cardiovascular:** Present- High Cholesterol and Hypertension.

**Female Genitourinary: Note:** bladder infection, STD

**Musculoskeletal:** Present- Back Pain.

**Neurological:** Present- Dizziness and Headaches.

**Psychiatric:** Present- Change in Sleep Pattern and Depression.

**All other systems negative**

## Physical Exam

KENNETH N ADATTO MD, 05/31/2012 05:37 PM

**General**

**Mental Status** - Alert. **General Appearance** - Cooperative. **Orientation** - Oriented X3. **Build &**
**Nutrition** - Obese. **Posture** - Normal posture, **Gait** - Normal.

**Musculoskeletal**

**Spine/Ribs/Pelvis**

**Cervical Spine:**

**Inspection and Palpation: Tenderness** - 1+. **Swelling** - none. Tissue tension/texture is - spasm.

Sensation is - normal. Examination reveals - normal reflexes and specific trigger point tenderness.

Assessment of pain reveals the following findings:: **Scale - 10 /10.**

**Lumbosacral Spine:**

**Inspection and Palpation: Tenderness** - 1+. **Swelling** - none. Surrounding tissue tension/texture is - spasm (only with stress). Sensation is - normal. Examination reveals - normal reflexes and specific trigger point tenderness.

Assessment of pain reveals the following findings: **Scale - 10 /10.**

**Lower Extremity**

**Knee/Patella:** Examination of the left knee reveals - normal deep tendon reflexes and normal coordination, normal strength and tone and normal sensation.

**Inspection and Palpation:**

**Tenderness: Left** - moderate, over the MCL and over the medial joint line.

**Swelling** - none, (L). Examination reveals - Note: mild limitation of motion

**Ankle/Foot:**

**Ankle:** Examination of the left ankle reveals - normal strength and tone, no laxity, no instability and normal

Monday, June 4, 2012

sensation and coordination.
**Inspection and Palpation: Tenderness** - 1+. **Swelling** - localized, (L). Examination reveals - Note: limited range of motion due to pain

## Assessment & Plan (KENNETH N ADATTO MD; 05/31/201205:38 PM)
### SPRAIN/STRAIN, LUMBAR REGION (847.2)
Current Plans:
- Follow Up as needed
- WORK STATUS:  Light work (Based on DOT/DOL)
- The patient is currently receiving all medication from another doctor but was counseled on the proper use and importance of coordinating care and treatment when seeing multiple physicians, whether it is the PCP, pain management doctor or other provider.  I further advised that we should be informed if there is any change in the medication, dosage or directions

### SPRAIN/STRAIN, NECK (847.0)
Current Plans:
- X-RAY EXAM OF NECK SPINE (72052) (Seven typical cervical vertebrae. Normal cervical lordotic curve. Intervertebral disc spaces and vertebral body height, well maintained. No fracture or dislocation noted. Trabecular pattern well maintained and bones are well mineralized)

### TENDINITIS, PATELLAR (726.64)
Current Plans:

### TENDINITIS, ACHILLES (726.71)
Current Plans:

*Kenneth N. Adatto, M.D.*

KENNETH N ADATTO MD

TINA GIVENS                                        ***-**-9287                        DOB: ████/1981 (31 years)

# E. WARD SUDDERTH, MD.
## MEDICAL CLINIC
## 4700 WICHERS DRIVE, SUITE 105
## MARRERO, LA 70072
## TEL # (504)-421-9654

April 04, 2012

| | |
|---|---|
| Patient Name: | GIVENS, TINA. |
| Date of Birth: | ⬛⬛81 |
| Age: | 31 |
| Sex: | Female |
| Date of Injury: | 01/11/11 and 03/24/11 |
| Social Security: | xxx-xx-9260 |
| Employer: | Team Labor Force |
| WC Carrier: | LWCC |
| Carrier Claim#: | 1640007 and 163968 |

## FOLLOWUP VISIT

**HISTORY OF PRESENT ILLNESS:** The patient states that she is presently on a CPAP for sleep disorder. She states that she had an MRI, the report is pending recently. She states that she ash been rescheduled for an EMG and rescheduled to see Dr. Adatto. She states that she has bilateral knee pain which continues with a "popping" sound in the left knee and left painful knee with range of motion. She states that she has some pain with flexion and extension of her left ankle. Her cervical pain is a burning type and is referred toward her left upper extremity. The lumbosacral pain continues and is frequently sharp. She has occasional paresthesias and numbness in the left upper extremity. Frequent temporal headaches are present.

**PAST MEDICAL HISTORY:** She is a nonsmoker. Last menstrual period began on 04/03/12. Her last pelvic exam was in 2011. She is a para 3-0-3.

**ALLERGIES:** She is allergic to Benadryl (causes hives).

**PAST SURGICAL HISTORY:** She has had a bilateral tubal ligation.

**PHYSICAL EXAMINATION:** Vital signs: She is afebrile with a pulse rate of 90 per minute, blood pressure is 131/77, height 5 feet 5 inches and weight is 263 pounds. General: She is a well-developed, well-nourished obese black female in no acute distress. Heart: Normal sinus rhythm. Lungs: Clear bilaterally. Extremities: Her left knee pain to palpation is 2+/5 with a decreased range of motion. The patient has stress pain in the left knee at 90 degrees with extension-flexion and a normal range of motion with the right knee. Her left ankle pain to palpation is 2+/5 with a decreased range of motion. Back: She has cervical pain to palpation 2+/5 with a decreased range of motion. She has stress pain in her cervical spine with flexion at 40 degrees, extension at 40 degrees, lateral flexion at 35 degrees bilaterally, and lateral rotation at 60 degrees bilaterally. She has lumbosacral pain to palpation 2+/5 with a decreased range of motion. She has mild spasm palpated in the lumbosacral area. She has stress pain in her



*Advanced Neurodiagnostic Center*

**PATIENT:** Givens, Tina

**DOB:** ⬛/1981                                      **DATE:** 03/14/2012

**REFERRED BY:** Morteza Shamsnia, M.D.

### HIGH FIELD, 1.0 TESLA, MR EXAMINATION OF THE LUMBAR SPINE PERFORMED WITHOUT THE ADMINISTRATION OF INTRAVENOUS CONTRAST MEDIA.

**INDICATION:**

**MR FINDINGS:  Bone Marrow:** The bone marrow is of homogenous signal intensity on the pulse sequences submitted.  I see no unequivocal evidence of ominous pathologic marrow filling or marrow replacing process.

**Osseous Structures:** There is straightening of the lumbar lordosis.  The lumbar vertebrae are in acceptable anatomic alignment.  I see no evidence of bony central canal, lateral recess, or critical neural foraminal stenosis.

**Intradural Structures:** The conus medullaris demonstrates unremarkable intrinsic morphologic appearance and signal intensity on the pulse sequences submitted without the administration of intravenous contrast media.  I see no evidence of ominous pathologic intramedullary or extramedullary - intradural defect.  The tip of the conus medullaris is at the L1-L2 level.

**Extradural Structures:**

**T11-T12 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images.  The disc space height is appropriate.  The posterior margins of the intervertebral disc parallel that of the adjacent vertebral end plates.  Disc material accompanies small anterior traction spurs.

**T12-L1 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images.  The disc space height is appropriate.  The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**L1-L2 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images.  The disc space height is appropriate.  The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**L2-L3 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images.  The disc space height is appropriate.  The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.



*Advanced Neurodiagnostic Center*

Re: Tina Givens
MRI of the Lumbar Spine
Page Two

**L3-L4 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images. The disc space height is appropriate. The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**L4-L5 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images. The disc space height is appropriate. There is bulging of the intervertebral disc toward the left posterolateral margin as shown on series 3 image #3, #4, and #5.

**L5-S1 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images. The disc space height is appropriate. The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

The posterior longitudinal ligament of the lumbar spine appears to be intact.

**Paraspinous Structures:** Paraspinous mass lesions are not appreciated.

**Prior Examinations:** Prior examinations of the lumbar spine are not available for comparison or correlation purposes.

**RADIOGRAPHIC SUMMARY:**

1.      Bulging of the L4-L5 intervertebral disc eccentrically prominent toward the left side.

2.      Straightening of the lumbar lordosis consistent with a pattern of muscle spasm.

*L W Glorioso, III, M.D.*

Lawrence W. Glorioso III, M.D.

Dictated but not read

LWG/km



*Advanced Neurodiagnostic Center*

**PATIENT:** Givens, Tina

**DOB:** ▓▓▓/1981                    **DATE:** 03/14/2012

**REFERRED BY:** Morteza Shamsnia, M.D.

### HIGH FIELD, 1.0 TESLA, MR EXAMINATION OF THE CERVICAL SPINE PERFORMED WITHOUT THE ADMINISTRATION OF INTRAVENOUS CONTRAST MEDIA.

<u>INDICATION:</u>

**MR FINDINGS: Bone Marrow:** The bone marrow is of homogenous signal intensity on the pulse sequences submitted. I see no unequivocal evidence of ominous pathologic marrow filling or marrow replacing process.

**Osseous Structures:** There is loss of the cervical lordosis. The cervical vertebrae are in acceptable anatomic alignment with the patient in the supine posture. I see no evidence of bony central canal or neural foraminal stenosis.

**Intradural Structures:** The cerebellar tonsils are in unremarkable anatomic alignment position. The cervical spinal cord demonstrates unremarkable intrinsic morphologic appearance and signal intensity on the pulse sequences submitted without the administration of intravenous contrast media. I see no unequivocal evidence of ominous pathologic intramedullary or extramedullary-intradural defect.

**Extradural Structures:** The predental space shows no evidence of pathologic widening. The trans-alar ligaments show no evidence of pathologic thickening.

**C2-C3 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images. The disc space height is appropriate. The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**C3-C4 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images. The disc space height is appropriate. The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**C4-C5 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images. The disc space height is appropriate. The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**C5-C6 Intervertebral Disc:** Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images. The disc space height is appropriate. The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

 *Advanced Neurodiagnostic Center*

Re:  Tina Givens
MRI of the Cervical Spine
Page Two

**C6-C7 Intervertebral Disc:**  Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images.  The disc space height is appropriate.  The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**C7-T1 Intervertebral Disc:**  Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images.  The disc space height is appropriate.  The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**T1-T2 Intervertebral Disc:**  Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images.  The disc space height is appropriate.  The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**T2-T3 Intervertebral Disc:**  Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images.  The disc space height is appropriate.  The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**T3-T4 Intervertebral Disc:**  Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images.  The disc space height is appropriate.  The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

**T4-T5 Intervertebral Disc:**  Unremarkable hydration of mature intervertebral disc is noted on sagittal T2 weighted images.  The disc space height is appropriate.  The peripheral margins of the intervertebral disc parallel that of the adjacent vertebral end plates.

The posterior longitudinal ligament of the cervical spine appears to be intact.

**Paraspinous Structures:**  Paraspinous mass lesions are not appreciated.

**Prior Examinations:**  Prior examinations of the cervical spine are not made available for comparison or correlation purposes.

 *Advanced Neurodiagnostic Center*

Re: Tina Givens
MRI of the Cervical Spine
Page Three

## RADIOGRAPHIC SUMMARY:

1.  Loss of the cervical lordosis consistent with a pattern of muscle spasm.

_____
Lawrence W. Glorioso III, M.D.

Dictated but not read

LWG/km

# E. WARD SUDDERTH, MD.
## MEDICAL CLINIC
## 4700 WICHERS DRIVE, SUITE 105
## MARRERO, LA 70072
## TEL # (504)-421-9654

February 22, 2012

| | |
|---|---|
| Patient Name: | GIVENS, TINA. |
| Date of Birth: | ███/81 |
| Age: | 31 |
| Sex: | Female |
| Date of Injury: | 01/11/11 and 03/24/11 |
| Social Security: | xxx-xx-9260 |
| Employer: | Team Labor Force |
| WC Carrier: | LWCC |
| Carrier Claim#: | 1640007 and 163968 |

### FOLLOWUP VISIT

**HISTORY OF PRESENT ILLNESS:** The patient states that she has seen a neurologist, Dr. Shamsnia who is sending the patient for sleep apnea test this week. She is also seeing an orthopedist, Dr. Addato, The patient states that the left knee pain is still present and has increased her stress on her right knee from favoring her left knee. She states that she decreased the range of motion at the right ankle/foot which is very painful. Her cervical and lumbosacral pain continues. She also has paresthesias and numbness on occasion in bilateral upper extremities. Her headaches are on the right side temple and they continue.

**PAST MEDICAL HISTORY:** She is a nonsmoker. Last menstrual period is present for two months at the present time. Last pelvic exam was 2011. She is a para 3-0-3.

**ALLERGIES:** She states that Benadryl causes hives.

**PAST SURIGICAL HISTORY:** She has had a bilateral tubal ligation.

**PHYSICAL EXAMINATION:** Vital signs: She is afebrile with a pulse rate of 79 per minute, blood pressure is 134/88, height 5 feet 5 inches and weight is 263 pounds. General: Well-developed, well-nourished obese black female in no acute distress. Heart: Normal sinus rhythm. Lungs: Clear bilaterally. Extremities: The patient's left knee pain to palpation is 2+/5 with a decreased range of motion. The patient has stress pain with extension-flexion of the left knee at 100 degrees and normal range of motion with the right knee. The patient's left ankle pain to palpation is 2+/5 with a decreased range of motion. Back: She has cervical pain to palpation which is 2+/5 with a decreased range of motion. She has stress pain in her cervical spine with flexion at 40 degrees, extension at 40 degrees, lateral flexion at 35 degrees bilaterally, and lateral rotation at 60 degrees bilaterally. She has lumbosacral pain to palpation 3+/5 with a decreased range of motion. She has mild spasm in the lumbosacral area palpated. She has stress pain in

Re: GIVENS, TINA.
D.O.S.: 02/22/12
Page 2 of 2

her thoracolumbar spine with flexion at 35 degrees, extension 20 degrees, and lateral flexion at 20 degrees bilaterally.

**IMPRESSION:**
1.   Status post blunt trauma to the head, left knee, and cervical spine secondary to an on-the-job accident on 1/11/11.
2.   Status post blunt trauma to the lumbosacral spine and to the left ankle secondary to an on-the-job accident on 3/24/11.
3.   Cervical sprain
4.   Lumbosacral sprain.
5.   Left knee sprain
6.   Left knee derangement
7.   Left ankle sprain
8.   Left ankle derangement.
9.   Lumbosacral radiculopathy.
10.  Headaches.

All are secondary to an on the job accident of 1/11/11 and 3/24/11.

**RECOMMENDATIONS AND TREATMENT PLAN:**
1.   It is recommended that she use heat and/or ice locally for pain.

2.   To Louisiana Rehab for physical medicine.

3.   She should not return to work at the present time.

4.   She was given a prescription for Lorcet for pain and Flexeril for muscle relaxation.

5.   She was told to continue with the doctors for neurology and orthopedics.

6.   She was asked to return in two weeks for followup visit at this office.


Ward Sudderth, MD


WS/lh

# Advanced NEURODIAGNOSTIC CENTER

**NEUROLOGY**
Morteza Shamsnia, M.D.
FAAN, FAANEM, FAASM

**NEUROLOGY and
INTERVENTIONAL
PAIN MANAGEMENT**
Troy Beaucoudray, M.D.

**NEUROPSYCHIATRY**
Angela Traylor, M.D.

**NEUROLOGY**
Maike Blaya, M.D.

**DIAGNOSTIC
RADIOLOGY**
Lawrence Glorioso, M.D.

**NEUROLOGY**
Erika Broussard, APRN,
FNP-C

## SERVICES

**NEURODIAGNOSTICS**

EMG, NCV, EEG,
Evoked Potentials
(BAER, SEP, VEP)
Epilepsy Monitoring
Carotid Doppler/TCD

**NEUROIMAGING**

MRI

DIAGNOSTIC
RADIOLOGY

**MEDICAL and
INTERVENTIONAL
PAIN MANAGEMENT**

Epidural / Transforaminal
Facet / Radiofrequency
Vertebroplasty / Discogram
Spinal Cord Stimulators

## NEUROLOGICAL CONSULTATION

02/04/2012

RE: GIVENS, Tina

**HISTORY:**

The patient is a 31-year-old female referred to our clinic for neurological consultation. The patient is status post work accident on January 2010. The patient states while she was trying to get a van, driver pulled off the van and she was thrown against the windshield and had trauma to the right side of her body including head. The patient also injured her left knee. She had a bump in her head and the day after the accident, the patient was seen by a health care provider and few days later she was seen by her primary care physician. Later on, she had to go to Kenner Ochsner Hospital and they did x-rays and discharged the patient. The patient returned to the light duty and used the heating pad and resting for the recovery.

Her second accident occurred on March 2010, while she was working on a boat around the Grand Isle working on the oil spill they had. The patient states that she fell down in the boat and sustained injuries. Her knee pain that she had previously was increased in severity. She also has developed increased neck pain and low back pain after the second accident.

Her present complaints are headaches. These headaches are localized in the frontal area. They have variable frequency and intensity. She also complains of ringing in the ears. She also has been complaining of numbness and tingling in her limbs, more in the left side than the right side. She has been suffering from neck pain and low back pain and radiating pain to the left buttock.

**PAST MEDICAL HISTORY:**

Remarkable for hypertension.

**PAST SURGICAL HISTORY:**

The patient has history of tubal ligation, appendectomy, history of bladder surgery, and history of right ankle surgery.

2905 Kingman Street, Metairie, LA  70006   504-885-3737   fax: 504-885-5507
www.adneuro.com

RE:  GIVENS, Tina                                              Page – 2

## REVIEW OF SYSTEMS:

Headache, pain in the back, and pain in the left side.  She rates them 8/10 in severity scale.  She also has headaches, insomnia, anxiety, depression, suffering from neck pain and back pain, and muscle weakness.  She feels tired.  She has weakness.  She has poor circulations.  ENT:  Review of the system is positive for blurred vision, double vision, earaches, nosebleed, and ringing in the ears.  The review of the systems for respiratory, GU, endocrine, and GI is negative.

Head trauma questionnaire shows that she had head injury with concussion with loss of consciousness.  She has symptoms of concussion including blurred vision, dizziness, drowsiness, fatigue, headaches, confusion, ringing in the ears, seeing stars, and sleep disturbances.

Sleep questionnaire shows ESS score of 24.  She snores.  She has been observed to have apnea.  She has high blood pressure.  She is overweight.  She wakes up tired.  She has difficulty concentrating and feels sleepy during the day.

## ALLERGIES:

None.

## CURRENT MEDICATION:

Flexeril, hydrocodone, Tylenol, and ibuprofen.

## FAMILY HISTORY:

Remarkable for diabetes and hypertension.

## SOCIAL HISTORY:

The patient is disabled.  She denies any history of drug or alcohol abuse.

## PHYSICAL EXAMINATION:

The patient was in no acute distress during examination.  She was well-developed and well-nourished and appearing to be her stated age.  There was no abnormal venous distention.  Carotid and other peripheral pulses were normal.  The patient's cardiovascular examination shows blood pressure of 142/93 and pulse of 80.  Her BMI index is 42.3.  She weighs 260 pounds.  ENT examination shows crowded oropharynx.

## NEUROLOGICAL EXAMINATION:

Mental Status:  The patient is awake, alert and attentive.  Speech is spontaneous and fluent.  There is normal speech production, which is voluntary, and without stuttering or halting quality.  The patient's mood is pleasant and the affect is appropriate.  The patient is capable of comprehending simple commands as well as two and three step commands.  Emotional responses appear normal.

RE: GIVENS, Tina                                    Page - 3

Cranial nerve examination: The pupils are equal, round and reactive to light and accommodation. Extraocular movements had full range of motility in horizontal and vertical directions. Speech appeared normal. The face was symmetrical. The patient's sensation was intact. There was no nystagmus. Sternocleidomastoid and trapezius muscles were normal.

Motor examination: The patient had normal muscle tone and mass in all extremities with 5/5 strength in proximal and distal muscles bilaterally. There was no drift. There was no evidence of atrophy or fasciculation noted. There were no tremors. The patient is capable of manipulating objects normally in both upper extremities. There is no bradykinesia.

Examination of all four extremities including paraspinals shows spasm in the cervical and lumbosacral spine. The patient has loss of lordosis in the lower back. Her range of motion in the left knee is limited because of the pain.

Gait: Normal base. The patient was able to ambulate without a cane or walker. The patient has a negative Romberg sign. There were no gait limitations. Tandem gait was normal.

Sensory examination: The patient has normal touch and pinprick sensations in the upper and lower extremities.

Reflexes: +1 symmetrical reflexes in the upper and lower extremities bilaterally. Plantar responses were flexor. There are no pathological reflexes.

**IMPRESSION:**

1. Low back pain.
2. Neck pain.
3. Pain and paresthesia in the limbs.
4. Hypertension.
5. Sleep apnea.

**PLAN AND RECOMMENDATION:**

The patient is involved in two work accidents in January 2010 and March 2010. In the first accident, she had injury to her head and left side of her body. She had some neck pain. The second accident she has exacerbation of her left knee pain from previous accident and also has developed low back pain and pain radiating to her legs as well as increased and exacerbation of the neck symptoms. Clearly, she also has sleep apnea that needs to be addressed. She is obese. Plan is to do her workup related to this accident including MRI of the cervical spine and MRI of the lumbosacral spine. The patient also will have EMG/NCV/DEP of the upper and lower extremities for evaluation of radiculopathies and possible neuropathy. She also will have a sleep study done for apnea as soon as possible. She probably has severe apnea that needs to be treated soon, as she is taking medications that will exacerbate her apnea and affects her blood pressure. These were explained and discussed in details. She understands the importance of these steps and we will see if she will continue the present medication. Hopefully, we will get her on the CPAP machine as soon as possible, so she can continue taking her muscle relaxants and pain medications without any effect on her blood pressure and bleeding. Followup appointment was provided to the patient.

**RE:  GIVENS, Tina**                                        **Page - 4**

Thank you for referring this patient to our clinic.  If I can be of further assistance, please do not hesitate to contact us.

Sincerely yours,

Morteza Shamsnia, M.D., FAAN, FAASM, FAANEM
Professor of Neurology

MS/mbc/ats

Electronically signed by **Morteza Shamsnia, M.D.,** 2/7/12 11:34 AM



# *Advanced Neurodiagnostic Center*

## DIAGNOSTIC PROCEDURE ORDER FORM

Patient Name: _Tina Given_

You are scheduled for the following tests:

### Procedure

☑ EMG / NCV  UE          Date scheduled: _____

☑ EMG / NCV  LE          Date scheduled: _____

☑ Dermatomal NCV  UE     Date scheduled: _____

☑ Dermatomal NCV  LE     Date scheduled: _____

☐ Other: _____

☐ Other: _____

### Diagnosis   (Circle all that apply)

Cervical Radiculopathy   Lumbar Radiculopathy   CTS   Polyneuropathy   Other: _____

**For the above procedures please do not use lotions, creams or body oils on your arms or legs on the day of the test.  Please make sure your hands and feet are clean.**

☐ EEG                    Date scheduled: _____

☐ Transcranial Doppler    Date scheduled: _____

☐ Carotid Ultrasound      Date scheduled: _____

☐ Other: _____

### Diagnosis   (Circle all that apply)     Seizure     Headache     TBI     Stroke     Paresthesia     Weakness

**If you are scheduled for an EEG, Transcranial Doppler or Dermatomal NCV (above) please wash your hair the morning of the test.  Do not use hair products or accessories which includes removal of hair extensions and weaves.**

Physician Signature: _____          Date: 2/4/12

2905 Kingman Street, Metairie, LA  70006   504-885-3737   fax: 504-885-5507
2220 Worley Drive, Alexandria, LA  71301   318-442-8900   fax: 318-442-8920
www.adneuro.com

# LOUISIANA REHABILITATION AND SPINE INSTITUTE
## LLC 4700 WICHERS DRIVE, SUITE 100
### MARRERO, LA 70072
### TEL # (504)-328-5878
### FAX #: (504)-341-3685

January 11, 2012

Patient Name:  GIVENS, TINA
Date of Injury:  01/11/11
Date of Birth:  ████/81
Employer:   Team Labor Force, LLC

## CLINICAL EVALUATION

**CHIEF COMPLAINT:** Ms. Givens comes to our office today still complaining of headaches, right sided shoulder pain, upper back pain, neck pain, low back pain, and left ankle pain. Ms. Givens has been coming to treatment at our facility since July and has noticed both constant and steady improvement with her function and pain level. At this point we will continue her with her active and passive therapy at our facility as recommended by her second medical opinion doctor. Also she is to followup with her primary doctor, Ward Sudderth, M.D. Also we are waiting for the patient to have MRI performed to her neck and her back and also EMG/NCV to both her upper and lower extremities.

**PHYSICAL EXAMINATION:** Vital signs: The patient's blood pressure is 144/85. The patient's pulse rate is 80 beats per minute. Her range of motion of her cervical spine is decreased with pain in all planes of movement. Soto-Hall test is positive at the cervical spine area. Apley's scratch test is positive bilaterally, especially on the right hand side. Shoulder depression test is positive on the right. Palpation of the cervical paraspinal muscles reveals muscle spasms in the cervical and paraspinal musculature and also the sternocleidomastoid muscles is positive more on the right and trapezius muscle more on the right. Kemp's test is positive in the thoracic spine mostly on the right hand side. Lumbar spine range of motion is decreased with pain in all planes of movement, forward flexion is worse. Palpation of the lumbar spine muscles reveal spasms in the lumbar paraspinal muscles and also quadratus lumborum musculature. Heel-toe walk test is negative. Farfan's torsion test is positive. Straight leg raise is positive bilaterally at 80 degrees. Reflexes are graded +2 in both the upper and lower extremities. Motor is slightly weak in the right upper extremity and left lower extremity. There is sensory deficit with pinprick on the left lower extremity compared to the right.

## DIAGNOSES:
1.  Headache.
2.  Rule out lumbar herniated nucleus pulposus.
3.  Rule out cervical herniated nucleus pulposus.
4.  Cervical radiculitis.
5.  Lumbar radiculitis.
6.  Cervical sprain and strain.
7.  Lumbar sprain and strain.
8.  Headaches.

Re: GIVENS, TINA
D.O.S.: 01/11/12
Page 2 of 3

9.      Muscle spasms.
10.     Rule out any ankle pain.
11.     Lower extremity knee pain.

**RECOMMENDATIONS AND TREATMENT PLAN:**

1.      It is my opinion that the patient did suffer work-related injuries in an accident on January and also in March 2011. The described mechanism of injuries directly correlates to the symptoms the patient is suffering at this point.

2.      Recommend the patient to continue follow up with the primary doctor, Ward Sudderth, M.D..

3.      Recommend the patient to continue with physical medicine treatment consisting of some or all of the following treatment to the affected areas:

        97012   Massage
        97032   Electrical Muscle Stimulation (EMS)
        98941   Chiropractic Manipulative Therapy
        97140   Manual Therapy
        97110   Therapeutic Procedures:  up to 4 Units.
        •   General Stretching of Upper and Lower Extremities
        •   Thera-Band Exercises
        •   Treadmill
        •   Wobble board
        •   Exercise bike
        •   Stair exercises

        Goals/Rationale:
        ✓   Decrease pain.
        ✓   Decrease radicular pain.
        ✓   Increase balance and coordination.
        ✓   Increase ROM.
        ✓   Increase stability.
        ✓   Increase strength levels.
        ✓   Increase mobility.
        ✓   Increase flexibility.
        ✓   Increase blood circulation to help promote the healing process.
        ✓   Promote functional restoration and return to work.

4.      Recommended the patient to continue with her take home stretching exercise program as prescribed on her first visit.

5.      Recommend the patient to continue with the use of her electrical muscle stimulation device at home as prescribed on her first visit.

Re: GIVENS, TINA
D.O.S.: 01/11/12
Page 3 of 3

6.     Recommend the patient to continue to use the biofreeze as necessary to help her reduce the pain and discomfort to be used up to four time daily as needed for pain.

7.     In light of the present data, the patient's disability date began back on January 11, 2011.

8.     In light of present data the patient's disability should be total temporary disability as client needs her all testing to be reviewed and she is evaluated by a specialist.

9.     Recommend MRI to be performed of the cervical lumbar spine region for the accident of January 11, 2011.

10.    Recommend the patient followup with a neurosurgeon for evaluating her spine complaints.

If you have any questions regarding this patient, please feel free to contact me at your earliest convenience.

Respectfully,

Michael Brantmeier, D.C.

MB/lh



OHGP0007218

# E. WARD SUDDERTH, MD.
## MEDICAL CLINIC
### 4700 WICHERS DRIVE, SUITE 105
### MARRERO, LA 70072
### TEL # (504)-421-9654

January 11, 2012

| | |
|---|---|
| Patient Name: | GIVENS, TINA |
| Date of Birth: | ▉▉/81 |
| Age: | 30 |
| Sex: | Female |
| Date of Injury: | 01/11/11 and 03/24/11 |
| Social Security: | xxx-xx-9260 |
| Employer: | Team Labor Force |
| WC Carrier: | LWCC |
| Carrier Claim#: | 1640007 and 163968 |

## FOLLOWUP VISIT

**HISTORY OF PRESENT ILLNESS:** The lumbosacral spine there is a sharp stabbing pain which continues with radiation down the left buttock to the left of the left gluteal crease and which is present most of the time. The patient reports minimal improvement with pain medications and phys8cal therapy. She has left knee pain that continues and is present some of the time and is worse with activity which is unchanged from her last visit. She describes her left knee pain as a dull aching pain with numbness which occurs some of the time. There is some improvement with pain medications. There is cervical pain that continues with radiation into the thoracic spine which is present most of the time. She has paresthesia and numbness to the right upper extremity which goes to the level of the elbow and is present some of the time. She reports "locking" of the right ring and middle fingers when grasping objects or making a fist. This locking sensation occurs some of the time. Her headaches continue unchanged and are present some of the time and she experiences some relief with analgesics.

**PAST MEDICAL HISTORY:** She is a nonsmoker.

**ALLERGIES:** Benadryl which causes her hives and a questionable to allergy to Icy Hot.

**PAST SURGICAL HISTORY:** Tubal ligation.

**PHYSICAL EXAMINATION:** She is afebrile with a pulse of 88, blood pressure 144/84, height 5 feet 5 inches, and weight is 264 pounds. General: Well-developed, well-nourished African American female in no acute distress. Lungs: Clear bilaterally. CVS: Regular rate and rhythm. S1, S2. Musculoskeletal: Cervical spine, there is pain and decreased range of motion with stress pain 3+/5. The lumbosacral spine there is decreased range of motion with stress pain a 4+/5. There is pain on palpation of the cervical spine and the lumbosacral spine. The thoracic spine there is palpable muscle spasm and pain on palpation.

Re: GIVENS, TINA.
D.O.S.: 01/11/12
Page 2 of 2

**IMPRESSION:**
1.   Status post blunt trauma to the head, left knee, and cervical spine secondary to an accident on 1/11/2011.
2.   Status post blunt trauma to the lumbosacral spine and the left ankle secondary to an accident on 3/24/11.
3.   Cervical sprain.

**RECOMMENDATIONS AND TREATMENT PLAN:**
1.   She is to apply heat and/or ice locally p.r.n. pain.

2.   She is to continue physical therapy with Louisiana Rehab.

3.   She should continue taking Lorcet p.r.n. pain and Robaxin p.r.n. muscle relaxation.

4.   She is to remain off of work at this time.

5.   She should return to the clinic in 2 weeks.

Sherry Aucoin, FNP

WS/lh



# *ORLEANS ORTHOPAEDIC ASSOCIATES*

**Orleans Orthopaedic Associates**

3715 PRYTANIA ST., STE 501
NEW ORLEANS, LA 70115
Phone: (504) 895-2055
Fax: (504) 896-7587
Email: orleansortho.com

**TINA GIVENS**          **SSN:** \*\*\*-\*\*-9287          **DOB:** ████1981 (31 years)

**Date of Encounter:**  01/10/2012 10:59 AM

## History of Present Illness          Pa-C ELLEN F EDMONDSON PA-C 01/10/2012 11:29 AM

The patient is a 30 year old female who presents with lumbar pain. This condition occurred in association with a work injury. DATE OF ACCIDENT/INJURY: 3-24-11. The injury resulted from a fall (She fell into the engine room hatch. She was holding herself up by her arms. Her left knee was bent under her body and her left ankle was twisted.). Symptoms include lumbar pain. Symptoms are located in the left posterior lumbar. The pain radiates to the left lower extremity and left thigh. The patient describes the pain as burning. Onset was immediately after the injury. The symptoms occur frequently. The patient describes symptoms as moderate in severity (moderate to severe) and worsening. Symptoms are exacerbated by bending, lifting and stooping. Associated symptoms include lower extremity paresthesias. The patient is currently unable to work. The patient was previously evaluated in urgent care (she was initially evaluated by a medic onsite. She was taken to an urgent care and x-rays were performed.). Past evaluation has included physical therapy evaluation and chiropractic evaluation. Past treatment has included nonsteroidal anti-inflammatory drugs, muscle relaxants, opioid analgesics and physical therapy.

Additional complaints:

 Ankle  is described as the following :
The onset of the pain has been sudden and has been occurring in a persistent pattern. The course has been gradually improving (swelling better but tenderness has not decreased). The pain is mild to moderate. The pain is characterized as a sharp with weight-bearing (pivoting). The pain is described as being located in the anterior ankle. The pain is aggravated by changes in direction. Previous diagnostic tests have included plain radiographs and MRI. Previous physical therapy has included stretching exercises and strengthening exercises.

 Knee  is described as the following :
The onset of the knee pain has been sudden and has been occurring in a persistent pattern. The knee pain is mild to moderate. The knee pain is characterized as a dull aching (occasional burning). The knee pain is described as being located in the anterior knee and medial knee. The knee pain is aggravated by stairs and prolonged standing. Previous diagnostic tests include plain radiographs and MRI. Previous physical therapy includes stretching exercises and strengthening exercises.

## History          Pa-C ELLEN F EDMONDSON PA-C 01/10/2012 11:30 AM

**Allergy**
    BENADRYL: Skin irritation
**Social**
    The patient is unemployed.
    The patient has some college or specialized training
    The patient drinks alcohol socially.
    The patient denies illegal drug use.
    The patient denies history of treatment for substance abuse.
    The patient has never smoked
    The patient is not working due to pain and loss of function.
**Medications**
    clonidine Active.
    flexeril Active.
    ibuprofen Active.
    hydrocodone Active.
    tylenol Active.

**Family**
    Marital Status: Single
    The patient has a family history for diabetes.
    The patient has a family history for strokes. hypercholestremia
    The patient has a previous history of injury to the affected area(s) 1-14-11: She was in a van accident at work. She did not have her seatbelt on. She was getting adjusted in the van. She was thrown out of her seat and hit her head on the windshield. She cracked the windshield and landed on the dashboard. Her left knee was stuck in a cup holder. She was seen by her PCP. X-rays were ordered but not performed. Her PCP gave her Toradol injection. She went back to her job housing and was sent to company physician who performed x-rays. She was evaluated for her cervical spine and left knee.
    The patient's mother is alive
    The patient's father is alive
    SIBLINGS: 3
    CHILDREN STILL IN HOME: 3
    The patient lives alone
**Past Surgical**
    Tubal Ligation
    Cholecystectomy
    Appendectomy
    right ankle surgery
**Diagnostic Studies**
    left knee MRI: Date: 11/17/2011, Results:  bursitis of MCL complex and prepatellar tendon. tendinitis of patella tendon
    MRI left ankle: Date: 11/17/2011, Results:  tenosynovitis of posterior tibial tendon. injury without discontinuity of ventral aspect of the lateral collateral ligamentous complex. hemorrhage and edema in the medial and lateral aspects of the ankle. peritendinitis of achilles tendon.

History Note: family history of thyroid disease

## Review of Systems
        Pa-C ELLEN F EDMONDSON PA-C 01/10/2012 11:29 AM

    **General:** Present- Chills, Fatigue, Fever and Night Sweats.
    **Skin:** Present- Rash.
    **HEENT:** Present- Blurred Vision and Double Vision.
    **Cardiovascular:** Present- High Cholesterol and Hypertension.
    **Female Genitourinary: Note:** bladder infection, STD
    **Musculoskeletal:** Present- Back Pain.
    **Neurological:** Present- Dizziness and Headaches.
    **Psychiatric:** Present- Change in Sleep Pattern and Depression.
    **All other systems negative**

## Vital Signs

| | | | | | |
|---|---|---|---|---|---|
| **Date:** | 01/10/2012 11:09 AM | **Height:** | 65 in | **Note:** | - |
| **Temperature:** | | **Weight:** | 260 lb | | |
| **Pulse:** | 81 | **Waist:** | | | |
| **Respirations:** | | **BMI:** | 43.27 kg/m² | | |
| **Peak Flow:** | | **BSA:** | 2.33 m² | | |
| **Blood Pressure:** | 135/90 | | | | |
| **Reading Type:** | Electronic | | | | |

# Physical Exam
Pa-C ELLEN F EDMONDSON PA-C, 01/10/2012 11:45 AM

**General**
**Mental Status** - Alert. **Orientation** - Oriented X4. **Build & Nutrition** - Obese. **Posture** - Normal posture.
**Gait** - Normal.

**Musculoskeletal**
**Spine/Ribs/Pelvis**
**Lumbosacral Spine:** Examination of the lumbosacral spine reveals - no tenderness to palpation, no pain, no swelling, edema or erythema of surrounding tissue, normal strength and tone, no laxity or crepitus, normal sensation and normal coordination and reflexes.
**Inspection and Palpation:** Surrounding tissue tension/texture is - spasm (only with stress).
**ROJM: Lumbar Spine Flexion** - 30 °.
**Lower Extremity**
**Knee/Patella:** Examination of the left knee reveals - normal deep tendon reflexes and normal coordination, normal strength and tone and normal sensation.
**Inspection and Palpation:**
**Tenderness: Left** - moderate, over the MCL and over the medial joint line. Examination reveals - Note: mild limitation of motion
**Ankle/Foot:**
**Ankle:** Examination of the left ankle reveals - normal strength and tone, no laxity, no instability and normal sensation and coordination.
**Inspection and Palpation: Tenderness** - mild. **Swelling** - localized, (L). Examination reveals - Note: limited range of motion due to pain

**Assessment & Plan** *(KENNETH N ADATTO MD; 01/28/201207:41 PM)*
**SPRAIN/STRAIN, LUMBAR REGION (847.2)**
<u>Current Plans:</u>
- X-RAY EXAM OF LOWER SPINE (72110) (Five typical lumbar vertebrae. Normal lumbar lordotic curve. Intervertebral disc spaces and vertebral body height well maintained. No evidence of fracture or dislocation. Trabecular pattern well maintained and bones well mineralized. No c)

**TENDINITIS, PATELLAR (726.64)**
<u>Current Plans:</u>
- X-RAY EXAM KNEE 4 OR MORE (73564) (Left knee: Normal density and bones well mineralized. No evidence of fracture or dislocation. No degenerative arthritis noted. No soft tissue calcification or loose bodies noted. No evidence of osteochondritis dissecans)

**TENDINITIS, ACHILLES (726.71)**
<u>Current Plans:</u>
- X-RAY EXAM OF ANKLE (73610) (Left ankle: AP, lateral and mortise views of the ankle show normal bone. No fractures or dislocations. No degenerative arthritis. Trabecular pattern well maintained. Ankle mortise is not widened. No calcification seen in soft tissues or l)
- The patient was sent for evaluation purposes only. No return appointment was scheduled. If treatment is desired, please contact our office and have the patient's status changed to evaluate and treat and schedule a date for a return office evaluation.

*I recommend that the patient have a MRI of lumbar spine. Also, I recommend that she continue therapy for the left knee and ankle. If light work is available, patient can perform light duty. She may also benefit from steroid injections.*

Kenneth N. Adatto, M.D.

*KENNETH N ADATTO MD*

| TINA GIVENS | ***-**-9287 | DOB: ████1981 (31 years) |

# E. WARD SUDDERTH, MD.
## MEDICAL CLINIC
### 4700 WICHERS DRIVE, SUITE 105
### MARRERO, LA 70072
### TEL # (504)-421-9654

December 21, 2011

| | |
|---|---|
| Patient Name: | GIVENS, TINA. |
| Date of Birth: | ⬛/81 |
| Age: | 30 |
| Sex: | Female. |
| Date of Injury: | 01/11/11 and 03/24/11 |
| Social Security: | xxx-xx-9260 |
| Employer: | Team Labor Force |
| WC Carrier: | LWCC |
| Carrier Claim#: | 1640007 and 163968 |

## FOLLOWUP VISIT

**HISTORY OF PRESENT ILLNESS:** The patient is here with cervical pain which continues but has mild improvement in pain at this time. She states that there are days when pain is worse and it radiates down to the thoracic area. The lumbosacral pain continues with radiation down the bilateral lower extremities which is worse on the left. She complains of tingling to the right upper extremity during episodes of cervical and thoracic pain, which has occurred some of the time over the past 3-4 weeks. She is having left knee pain, which continues unchanged from the last visit. She rates her pain an 8/10 today and states she has mild improvement of pain with analgesics. Her left ankle pain continues and is worse with activity and climbing stairs. Her pain is slightly improved when she ices her foot and elevates the foot. She also reports some pain relief with analgesics. She has increased her Robaxin on her own without the advice of medical care to 3 tablets t.i.d. and states that she runs out of this medication because she has taken it more than prescribed. States this is the only way her pain is relieved.

**PAST MEDICAL HISTORY:** She is a nonsmoker.

**ALLERGIES:** Allergic to Benadryl which gives her hives and questionable to allergy to Icy Hot.

**PAST SURGICAL HISTORY:** Tubal ligation.

**PHYSICAL EXAMINATION:** She is afebrile with a pulse of 88, blood pressure 132/68, height 5 feet 5 inches, and weight is 262 pounds. General: Well-developed, well-nourished African American female in no acute distress. Lungs: Clear bilaterally. CVS: S1, S2. Regular rate and rhythm. Musculoskeletal: Cervical spine, there is pain on palpation and muscle spasms on palpation. She has pain and decreased range of motion with flexion at 40 degrees, extension at 40 degrees, lateral flexion at 35 degrees on the right and the left, rotation to the right at 70 degrees and on the left at 60 degrees. Lumbosacral spine there is pain on palpation with decreased range of motion with flexion at 45 degrees, extension at 20 degrees, and lateral flexion

Re: GIVENS, TINA.
D.O.S.: 12/21/11
Page 2 of 2

at 20 degrees on the right and the left.  There is bilateral knee pain with extension – flexion on the right at 150 degrees and the left at 130 degrees.  There is no edema.  There is crepitus present bilaterally.  Her left ankle, there is 2+ edema and pain on palpation, and pain with passive range of motion.

**IMPRESSION:**
1.    Status post blunt trauma to the head, left knee, and cervical spine secondary to an accident on 1/11/11.
2.    She is status post blunt trauma to the lumbosacral spine and the left ankle secondary to an accident on 3/24/11.
3.    Cervical sprain.
4.    Lumbosacral sprain.
5.    Lumbosacral radiculopathy.
6.    Cervical radiculopathy.
7.    Headaches.
8.    Left knee and left ankle derangement and sprain.

**RECOMMENDATIONS AND TREATMENT PLAN:**
1.    MRI of the neck and back.

2.    She is to apply heat and/or ice locally p.r.n. pain.

3.    She should continue physical therapy with Louisiana Rehab.

4.    She should remain off of work at this time.

5.    Her prescription was changed to Flexeril since the patient was taking more than the prescribed dose of Robaxin with minimal pain relief.

6.    If she is no better in 3-4 weeks then she will be referred to pain management.

7.    She was given a prescription for Lorcet and for Flexeril.

8.    She should return to the clinic in two weeks for evaluation.


Sherry Aucoin, FNP

WS/lh

# LOUISIANA REHABILITATION AND SPINE INSTITUTE
## LLC 4700 WICHERS DRIVE, SUITE 100
## MARRERO, LA 70072
## TEL # (504)-328-5878
## FAX #: (504)-341-3685

December 1, 2011

Patient Name:      GIVENS, TINA
Date of Injury:      03/24/11
Date of Birth:       ███/81
Employer:            Team Labor Force, LLC

## CLINICAL EVALUATION

**CHIEF COMPLAINT:** Ms. Givens comes to our office today still complaining of left knee and left ankle pain. Ms. Givens has been coming to treatment at our facility since July 2011, and she has been gaining some constant and steady improvement. We recommended MRI on her left knee and left ankle back in September and on November 17, 2011, she had a MRI performed to her left knee and left ankle. Radiographic findings to her left knee were (1) pattern of bursitis of the medial and lateral ligament, complex; (2) tendinitis/tenderness of the patellar tendon; (3) pattern of pre-patellar tendon and pre-patellar tendon bursitis. His ankle findings were (1) tenosynovitis of the posterior tibial tendon; (2) injury without continuity of his ventral aspect of the lateral collateral ligamentous complex; (3) pattern of hemorrhage and edema in the medial and lateral aspects of the ankle; (4) peritendinitis associated with the distal Achilles tendon. At this point, with these positive MRI findings, I would like her to follow up with an orthopedic surgeon to see if any further procedures could be done such as cortisone injections or whatever is appropriate at this time. Also, I would like Ms. Givens to continue followup with her primary doctor, Ward Sudderth, M.D.

**PHYSICAL EXAMINATION:** Vital signs: The patient's blood pressure is 134/82. The patient's pulse rate is 105 beats per minute. Her left knee pain to palpation is +3/+5 with decreased range of motion. This patient has pain in her left knee at 115 degrees of extension and range of motion in the right lower extremity is within normal limits. Left ankle showed pain to palpation +2/+5 with decreased range of motion. There is also swelling around the left knee and left ankle. There is also muscle spasm in the left calf, left hamstring muscle. In the peroneal muscle group there is swelling, pain and spasms.

## DIAGNOSES:
1.    Knee bursitis and tendinitis.
2.    Ankle tenosynovitis.
3.    Edema in the ankle.
4.    Peritendinitis of the Achilles tendon.
5.    Left knee pain.
6.    Left ankle pain.
7.    Muscle spasms.

Re: GIVENS, TINA
D:O.S.: 12/01/11
Page 2 of 3

**RECOMMENDATIONS AND TREATMENT PLAN:**

1. It is my opinion that the patient did suffer injuries in accident on March 24, 2011, and the described mechanism of injuries directly correlates to the symptoms the patient is suffering at this point.

2. Recommend the patient to follow up with the primary doctor, Ward Sudderth, M.D., for evaluation and treatment.

3. Recommend the patient to undergo physical medicine treatment to her left lower extremity consisting of active and passive care at three times a week consisting of some or all of the following treatments:

   97012  Massage
   97032  Electrical Muscle Stimulation (EMS)
   98941  Chiropractic Manipulative Therapy
   97140  Manual Therapy
   97110  Therapeutic Procedures:  up to 4 Units.
   - General Stretching of Lower Extremities
   - Thera-Band Exercises
   - Treadmill
   - Wobble board
   - Exercise bike
   - Stair exercises

   Goals/Rationale:
   - ✓ Decrease pain.
   - ✓ Decrease radicular pain.
   - ✓ Increase balance and coordination.
   - ✓ Increase ROM.
   - ✓ Increase stability.
   - ✓ Increase strength levels
   - ✓ Increase mobility.
   - ✓ Increase flexibility.
   - ✓ Increase blood circulation to help promote the healing process.
   - ✓ Promote functional restoration and return to work.

4. Recommended the patient to continue with her take home exercises prescribed on her first visit.

5. Recommend the patient to continue with the use of her take-home electrical muscle stimulation device as prescribed on her first visit.

6. Recommend the patient to continue biofreeze as needed on her left lower extremity to help her with her pain as needed.

Re:  GIVENS, TINA
D.O.S.:  12/01/11
Page 3 of 3

7.     Recommend the patient to follow up with an orthopedic surgeon to go over the results of the MRI test and she will have further recommendations for further care or procedures.

8.     The patient should continue with her total temporary disability status until she is further evaluated by a specialist.

If you have any questions regarding this patient, please feel free to contact me at your earliest convenience.

Respectfully,


Michael Brantmeier, D.C.


MB/lh

PATIENT: Givens, Tina                          MAGNOLIA DIAGNOSTICS, INC.
DOB: ████-1981                                 2700 CADIZ STREET
MR#: 11-16317                                  NEW ORLEANS, LA 70115
DATE OF ACQUISITION: 11-17-2011                (504) 891-1975
PHYSICIAN: Dr. Brantmier                       (504) 891-1901 (FAX)


**HIGH FIELD, 1.5 TESLA, MR EXAMINATION OF THE LEFT KNEE PERFORMED
WITHOUT THE ADMINISTRATION OF INTRAVENOUS CONTRAST MEDIA.**

**INDICATION:**

**MR FINDINGS:** There is thinning of the articular cartilage of the os patella.
Cartilaginous excoriations of the lateral patellar facet are indicated on axial image #14.
The bone marrow is of homogenous signal intensity without definite foci of
osteochondral defect, avascular changes, or frank marrow edema. Significant knee
effusion is not demonstrated. The anterior and posterior cruciate ligaments are intact
without intrasubstance hemorrhage, cystic degeneration, or discontinuity associated
therewith. Neither the medial nor lateral menisci demonstrate rents which communicate
with the free articular surface. Meniscocapsular separations are not appreciated. The
medial and lateral collateral ligamentous complexes are intact. There is marked
increased signal intensity with increased STIR weighting superficial to the medial
collateral ligamentous complex as shown on series 6 image #17 and #18. The distal
extensor tendon and patellar tendon are intact. Heterogeneous signal intensity changes
are noted at the origin and insertion of the patellar tendon as shown on series 4 image
#12. The patellar retinacula are grossly intact. I see no evidence of aneurysmal
dilatation of the popliteal artery or popliteal cyst formation or soft tissue mass lesion.
There is increased signal intensity with increased STIR weighting superficial and ventral
to the patellar tendon as shown on series 4 image #12.

**RADIOGRAPHIC SUMMARY:**

1. Pattern of bursitis of the medial collateral ligamentous complex.
2. Tendinitis/tendinosis of the patellar tendon.
3. Pattern of prepatellar tendon and prepatellar tendon bursitis.


*[signature]*

Lawrence W. Glorioso III, M.D.

LWG/km

Dictated but Not Read

PATIENT: Givens, Tina   **MAGNOLIA DIAGNOSTICS, INC.**
DOB: ████-1981    2700 CADIZ STREET.
MR#: 11-46317     NEW ORLEANS, LA 70115
DATE OF ACQUISITION: 11-17-2011 (504) 891-1975
PHYSICIAN: Dr. Brantmier   (504) 891-1901 (FAX)

## HIGH FIELD, 1.5 TESLA, MR EXAMINATION OF THE LEFT ANKLE PERFORMED WITHOUT THE ADMINISTRATION OF INTRAVENOUS CONTRAST MEDIA.

### INDICATION:

**MR FINDINGS:** The bone marrow is of homogenous signal intensity without definite foci of osteochondral defect, avascular changes, or frank marrow edema. The distal Achilles tendon is intact. There is increased signal intensity with increased STIR weighting superficial and deep thereto best shown on series 3 image #15. The origin of the plantaris aponeurosis is unremarkable in appearance. I see no evidence of pathologic mortise or subtalar effusion. The anterior and posterior talofibular ligaments are intact. The anterior tibial tendon, peroneus longus, peroneus brevis, posterior tibial tendon, flexor digitorum longus, and flexor hallucis longus tendons are intact. There is increased signal intensity with increased STIR weighting surrounding the posterior tibial tendon best shown on series 401 image #18 at the level of the mortise joint. There is an element of edema and hemorrhage in the medial and lateral aspect of the ankle best shown on axial image #19 and coronal image #21, #22, and #23. The medial collateral ligament is intact. There are heterogeneous signal intensity changes within the ventral portion of the lateral collateral ligamentous complex. Soft tissue mass lesions are not demonstrated.

### RADIOGRAPHIC SUMMARY:

1. Tenosynovitis of the posterior tibial tendon.
2. Injury without discontinuity of the ventral aspect of the lateral collateral ligamentous complex.
3. Pattern of hemorrhage and edema in the medial and lateral aspects of the ankle.
4. Peritendinitis associated with the distal Achilles tendon.

_L. W. Glorioso, M.D._

_____
Lawrence W. Glorioso III, M.D.

LWG/km

Dictated but Not Read



**LOUISIANA REHABILITATION AND
SPINE INSTITUTE L.L.C.**

**Dr. Michael Brantmeier**
*Chiropractic Physician*

Office: 504-328-5878
Cell: 985-226-0979
Toll Free: 877-263-HURT
(4878)

4700 Wichers Drive, Suite 100          3939 Veterans Blvd., Suite 214
Marrero, LA 70072                              Metairie, LA 70006

NAME _Tina Givens_ AGE _____

ADDRESS _____ DATE _12-1-11_

**R̞ₓ**

Evaluate And Treat

Dr. Kenneth Adolfo

X _____ D.C.

DATE:  06/27/2018
TIME:  03:45 pm

LOUISIANA WORKERS' COMPENSATION CORPORATION

Claim Payments Report
For Payment Dates 10/01/1992 Through 06/27/2018
For Claim Number 163968
Claimant Givens, Tina

REPORT:  CL150R
PAGE     1
OF       3

Medical Payments

| Pymnt Dt | Vendor | Vendor Name | Amount Paid | From Dt | Thru Dt | Check No |
|---|---|---|---|---|---|---|
| 09/09/11 | 40571-1 | ALL INDUSTRIAL MEDICAL SERVICES | $377.50 | 03/24/11 | 03/24/11 | 4073816 |
| 10/14/11 | 34214-4 | LEDET, CRAIG | $400.00 | 10/25/11 | 10/25/11 | 4083337 |
| 11/16/11 | 34214-4 | LEDET, CRAIG | $400.00 | 10/25/11 | 10/25/11 | 4092667 |
| 12/16/11 | 9004-0 | TRAVEL & AMBULANCE SERVICE | $135.62 | 07/27/11 | 09/07/11 | 4100059 |
| 12/16/11 | 9004-0 | TRAVEL & AMBULANCE SERVICE | $135.62 | 07/06/11 | 07/22/11 | 4100059 |
| 12/19/11 | 16539-0 | CPR MEDICAL, INC. | $64.90 | 11/30/11 | 11/30/11 | 4100122 |
| 01/10/12 | 11698-0 | MAGNOLIA DIAGNOSTICS INC | $1,869.00 | 11/17/11 | 11/17/11 | 4105094 |
| 01/10/12 | 41430-1 | BRANTMEIER, MICHAEL | $30.00 | 12/05/11 | 12/05/11 | 4105092 |
| 01/10/12 | 41430-1 | BRANTMEIER, MICHAEL | $30.00 | 12/01/11 | 12/01/11 | 4105092 |
| 01/10/12 | 41430-1 | BRANTMEIER, MICHAEL | $209.00 | 12/07/11 | 12/07/11 | 4105092 |
| 01/10/12 | 41430-1 | BRANTMEIER, MICHAEL | $209.00 | 12/08/11 | 12/08/11 | 4105092 |
| 01/10/12 | 41430-1 | BRANTMEIER, MICHAEL | $209.00 | 12/12/11 | 12/12/11 | 4105092 |
| 01/10/12 | 41430-1 | BRANTMEIER, MICHAEL | $209.00 | 12/14/11 | 12/14/11 | 4105092 |
| 01/10/12 | 41430-1 | BRANTMEIER, MICHAEL | $209.00 | 12/15/11 | 12/15/11 | 4105092 |
| 01/10/12 | 41430-1 | BRANTMEIER, MICHAEL | $110.00 | 12/01/11 | 12/01/11 | 4105092 |
| 01/11/12 | 41429-0 | SUDDERTH, EARLE WARD | $110.00 | 12/07/11 | 12/07/11 | 4106067 |
| 01/16/12 | 41429-0 | SUDDERTH, EARLE WARD | $107.00 | 12/21/11 | 12/21/11 | 4106633 |
| 01/17/12 | 19518-0 | PHARMACY ASSOCIATES, INC. | $14.00 | 01/12/12 | 01/12/12 | 4106859 |
| 01/19/12 | 41430-1 | BRANTMEIER, MICHAEL | $130.00 | 12/30/11 | 12/30/11 | 4107893 |
| 01/25/12 | 16539-0 | CPR MEDICAL, INC. | $64.90 | 12/30/11 | 12/31/11 | 4109687 |
| 01/27/12 | 42113-1 | WOLINSKY, JOEL S. | $91.00 | 12/07/11 | 12/07/11 | 4110051 |
| 02/02/12 | 19518-0 | PHARMACY ASSOCIATES, INC. | $14.77 | 01/26/12 | 01/26/12 | 4111826 |
| 02/09/12 | 34974-1 | ADATTO, KENNETH N. | $348.00 | 01/10/12 | 01/10/12 | 4113574 |
| 02/16/12 | 41430-1 | BRANTMEIER, MICHAEL | $102.00 | 01/11/12 | 01/11/12 | 4115258 |
| 02/17/12 | 19518-0 | PHARMACY ASSOCIATES, INC. | $14.77 | 02/09/12 | 02/09/12 | 4115539 |
| 02/17/12 | 41429-0 | SUDDERTH, EARLE WARD | $109.00 | 01/25/12 | 01/25/12 | 4115469 |

* denotes a canceled transaction, and is not included in the total calculations

DATE:   06/27/2018

TIME:   03:45 pm

REPORT:  CL150R

PAGE 2 OF 3

LOUISIANA WORKERS' COMPENSATION CORPORATION

Claim Payments Report

For Payment Dates 10/01/1992 Through 06/27/2018

For Claim Number 163968

Claimant Givens, Tina

Medical Payments

| Pymnt Dt | Vendor | Vendor Name | Amount Paid | From Dt | Thru Dt | Check No |
|----------|--------|-------------|-------------|---------|---------|----------|
| 02/23/12 | 20441-1 | SHAMSNIA, MORTEZA | $229.00 | 02/04/12 | 02/04/12 | 4117122 |
| 03/06/12 | 19518-0 | PHARMACY ASSOCIATES, INC. | $13.35 | 02/22/12 | 02/22/12 | 4119427 |
| 03/15/12 | 41430-1 | BRANTMEIER, MICHAEL | $103.00 | 02/24/12 | 02/24/12 | 4122346 |
| 03/15/12 | 41429-0 | SUDDERTH, EARLE WARD | $110.00 | 02/22/12 | 02/22/12 | 4122306 |
| 03/20/12 | 19518-0 | PHARMACY ASSOCIATES, INC. | $14.31 | 03/08/12 | 03/08/12 | 4123043 |
| 04/04/12 | 41429-0 | SUDDERTH, EARLE WARD | $105.00 | 03/07/12 | 03/07/12 | 4127408 |
| 04/19/12 | 19518-0 | PHARMACY ASSOCIATES, INC. | $13.61 | 04/05/12 | 04/05/12 | 4131008 |
| 04/24/12 | 41429-0 | SUDDERTH, EARLE WARD | $106.00 | 04/04/12 | 04/04/12 | 4131406 |
| 04/27/12 | 20441-0 | ADVANCED NEURODIAGNOSTIC CENTER | $1,390.00 | 03/14/12 | 03/14/12 | 4132933 |
| 05/01/12 | 41430-1 | BRANTMEIER, MICHAEL | $103.00 | 04/12/12 | 04/12/12 | 4133171 |
| 05/14/12 | 42113-1 | WOLINSKY, JOEL S. | $182.00 | 02/03/12 | 03/14/12 | 4136523 |
| 05/21/12 | 41429-0 | SUDDERTH, EARLE WARD | $110.00 | 04/18/12 | 04/18/12 | 4138296 |
| 06/26/12 | 34974-1 | ADATTO, KENNETH N. | $225.00 | 05/31/12 | 05/31/12 | 4147123 |
| 07/20/12 | 16359-0 | CAPIELANO & ASSOCIATES INC | $375.00 | 07/10/12 | 07/10/12 | 4153650 |
| 03/28/13 | 41429-0 | SUDDERTH, EARLE WARD | $105.00 | 03/07/13 | 03/07/13 | 4212623 |
| 08/23/13 | 9011-0 | LUMP SUM SETTLEMENT | $8,000.00 | 08/23/13 | 08/23/13 | 4243345 |
| 08/23/13 | 26575-2 | VINCENT JR, WILLIAM S. | $2,000.00 | 08/23/13 | 08/23/13 | 4243339 |

TOTAL:  $18,887.35

* denotes a canceled transaction, and is not included in the total calculations

DATE:  06/27/2018                                                                          REPORT:  CL150R
TIME:  03:45 pm                                                                            PAGE        3
                                                                                           OF          3
                        LOUISIANA WORKERS' COMPENSATION CORPORATION

                                    Claim Payments Report
                        For Payment Dates 10/01/1992 Through 06/27/2018
                                    For Claim Number 163968
                                    Claimant Givens, Tina

Indemnity Payments

| Payment Date | Comp Code | From Date | Thru Date | Type Comp | Days Pd | Gross | Adjust | Net | Check No |
|---|---|---|---|---|---|---|---|---|---|
| 01/09/2012 | TT | 05/14/2011 | 01/06/2012 | ONE TIME ONLY | 238 | $15,113.00 | $0.00 | $15,113.00 | 4104932 |
| 01/10/2012 | TT | 01/07/2012 | 01/13/2012 | REGULAR | 7 | $444.50 | $0.00 | $444.50 | 4105371 |
| 01/12/2012 | TT | 05/14/2011 | 01/13/2012 | ADJUSTMENT | 245 | $2,916.79 | $0.00 | $2,916.79 | 4106381 |
| 01/17/2012 | TT | 01/14/2012 | 01/20/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4107097 |
| 01/24/2012 | TT | 01/21/2012 | 01/27/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4108897 |
| 01/31/2012 | TT | 01/28/2012 | 02/03/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4110753 |
| 02/07/2012 | TT | 02/04/2012 | 02/10/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4112638 |
| 02/14/2012 | TT | 02/11/2012 | 02/17/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4114455 |
| 02/21/2012 | TT | 02/18/2012 | 02/24/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4116225 |
| 02/28/2012 | TT | 02/25/2012 | 03/02/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4118013 |
| 03/06/2012 | TT | 03/03/2012 | 03/09/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4119683 |
| 03/13/2012 | TT | 03/10/2012 | 03/16/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4121367 |
| 03/20/2012 | TT | 03/17/2012 | 03/23/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4123280 |
| 03/27/2012 | TT | 03/24/2012 | 03/30/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4124899 |
| 04/03/2012 | TT | 03/31/2012 | 04/06/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4126665 |
| 04/10/2012 | TT | 04/07/2012 | 04/13/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4128316 |
| 04/17/2012 | TT | 04/14/2012 | 04/20/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4130039 |
| 04/24/2012 | TT | 04/21/2012 | 04/27/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4131733 |
| 05/01/2012 | TT | 04/28/2012 | 05/04/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4133515 |
| 05/08/2012 | TT | 05/05/2012 | 05/11/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4135238 |
| 05/15/2012 | TT | 05/12/2012 | 05/18/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4137009 |
| 05/22/2012 | TT | 05/19/2012 | 05/25/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4138786 |
| 05/29/2012 | TT | 05/26/2012 | 06/01/2012 | REGULAR | 7 | $530.00 | $0.00 | $530.00 | 4140296 |
| 06/05/2012 | TT | 06/02/2012 | 06/03/2012 | REGULAR | 2 | $151.43 | $0.00 | $151.43 | 4142184 |

                TOTALS (excluding canceled transactions denoted by *):      $29,225.72    $0.00    $29,225.72


* denotes a canceled transaction, and is not included in the total calculations