**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* No. 10-MD-2179 | | | |
|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) | | | |
| Last Name | First Name | Middle Name/Maiden | Suffix |
| Barrios Ramon | Angelica Maria | | |
| Business Name S.C.P.P Avicola la palma Real SC de R.L. | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) BARA760427E21 | |
| MDL 2179 Member Case Number 8404 | | Attorney Name and Firm The Buzbee Law firm / Anthony G. Buzbee | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

1

EXHIBIT

**A**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico.  The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: _Il de septiembre_, 2018

Location (City and State): _Mexico_

_____
Signature of Plaintiff*

*Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.

_____
Print Name

_Presidente._
_____
Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's _individual lawsuit_ (as opposed to the master docket for MDL 2179) no later than _April 11, 2018_.**

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates _4_ boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $65,740.00, plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism. Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business. The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters. Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage. Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied. Today, Claimant asserts the application of other treaties. On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.   Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.   Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.   Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.   Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.     The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.

** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

## EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
No. 10-MD-2179

PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Velezque McAn | Adekaida | | |
| **Business Name** La Virtud de Pocon S.C DE RL DE CV. | | **Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff)** VEMAB70116EG3 | |
| **MDL 2179 Member Case Number** 8400 | | **Attorney Name and Firm** The Brebe Law Firm / Anthony G. Brebe | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1

EXHIBIT

**AA**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico. The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks. Please see

response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions? (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: __11 de septembre__, 2018

Location (City and State): __Mexico__

_____
Signature of Plaintiff*

***Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.***

_____
Print Name

__Presidente._____
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  3  boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $49,305.00  , plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.  Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.   Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.   Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.   Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.   Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 No. 10-MD-2179 |||||
|---|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) |||||
| Last Name | First Name | Middle Name/Maiden || Suffix |
| Gonalez Perez | Norma ||||
| Business Name ||| Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) ||
| S.C.P.P. Playa Salinas Sc de RL ||| GOPN670526F19 ||
| MDL 2179 Member Case Number ||| Attorney Name and Firm ||
| 8539 ||| The Buzbee Law Firm/Anthony G. Buzbee ||

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

1

EXHIBIT

**B**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks. Please see

response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions? (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: _11 de Sophiembre_____, 2018

Location (City and State): _Mexico_____

_norma Gonzalez Perez_____
Signature of Plaintiff*

*Plaintiff's Attorney __Cannot__ Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_norma Gonzalez Perez_____
Print Name

_Presidente_____
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's __individual lawsuit__ (as opposed to the master docket for MDL 2179) no later than __April 11, 2018__.

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil
    Spill upon revenues on the Gulf of Mexico.  The United States of America and
    Mexico share over 30 types of migratory species – including shrimp and the
    damage in the entire Gulf of Mexico was affected.    The calculation below
    determines damages in the amount listed below that includes compensation for
    loss of gross profits. The calculation is based on the following:  Claimant operates
    <u>22</u>  boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The
    calculation was calculated based on the average loss per boat.  Claimant seeks
    damages in the amount of <u>$361,570.00</u>, plus interest, and other damages the Court
    finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts
    for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the
    decline of revenues that has been well documented amount the tourism and
    seafood industry. The far reaching effects were devastating and widely effected
    all hotels, restaurants, and reduced economic growth in the areas surrounding the
    Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana
    and parts of Florida.  The entire Gulf Coast region, and other areas, suffered
    economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.  On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.   Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.   Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.   Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.   Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.   The side agreement between Canada, the United States and Mexico was effective January 1, 1994.   See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* |||
|:---|:---|:---|
| No. 10-MD-2179 |||
| **PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)** |||

| Last Name | First Name | Middle Name/Maiden | Suffix |
|:---|:---|:---|:---|
| Enriquez Arau | Alberto | | |

| Business Name | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) |
|:---|:---|
| SC PP. Laguna laflota S. C. de R.L. | PPL890621909 |

| MDL 2179 Member Case Number | Attorney Name and Firm |
|:---|:---|
| 8505 | The Buzbee Law Firm / Anthony G. Buzbee |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT
**BB**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)
>
> _____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: ___11 de Septiembre___ , 2018

Location (City and State): ___Mexico___

_____·¹A E A_____
Signature of Plaintiff*

***Plaintiff's Attorney <u>Cannot</u> Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.***

_____A·EA_____
Print Name

_____Presidente._____
Title/Position (if signed on behalf of a business or other entity)


**The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018.</u>**

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil
    Spill upon revenues on the Gulf of Mexico.  The United States of America and
    Mexico share over 30 types of migratory species – including shrimp and the
    damage in the entire Gulf of Mexico was affected.    The calculation below
    determines damages in the amount listed below that includes compensation for
    loss of gross profits. The calculation is based on the following:  Claimant operates
    12 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The
    calculation was calculated based on the average loss per boat.  Claimant seeks
    damages in the amount of $197,220.00, plus interest, and other damages the Court
    finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts
    for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the
    decline of revenues that has been well documented amount the tourism and
    seafood industry. The far reaching effects were devastating and widely effected
    all hotels, restaurants, and reduced economic growth in the areas surrounding the
    Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana
    and parts of Florida.  The entire Gulf Coast region, and other areas, suffered
    economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.   The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.   Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.   Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.   Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a. Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b. Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c. Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d. Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.    The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


\*\* These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
No. 10-MD-2179

PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Cruz Delgado | Carmen | | |

| Business Name | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) |
|---|---|
| SCPP Boca del estero S.C de RL. | CUOC590519523 |

| MDL 2179 Member Case Number | Attorney Name and Firm |
|---|---|
| 8461 | The Buzbee Law Firm / Anthony G. Buzbee |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1

EXHIBIT

C

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on

includes but not limited to financial statements, witness

statements, and news articles.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: _11 de Septiembre_, 2018

Location (City and State): _Mexico_

_____ Carmen Cruz delgado _____
Signature of Plaintiff*

*Plaintiff's Attorney **Cannot** Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.

_____ Carmen Cruz delgado _____
Print Name

_____ Presidente _____
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil
    Spill upon revenues on the Gulf of Mexico.  The United States of America and
    Mexico share over 30 types of migratory species – including shrimp and the
    damage in the entire Gulf of Mexico was affected.   The calculation below
    determines damages in the amount listed below that includes compensation for
    loss of gross profits. The calculation is based on the following:  Claimant operates
    9  boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The
    calculation was calculated based on the average loss per boat.  Claimant seeks
    damages in the amount of $337.267022, plus interest, and other damages the Court
    finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts
    for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the
    decline of revenues that has been well documented amount the tourism and
    seafood industry. The far reaching effects were devastating and widely effected
    all hotels, restaurants, and reduced economic growth in the areas surrounding the
    Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana
    and parts of Florida.  The entire Gulf Coast region, and other areas, suffered
    economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.   Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.  Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.  Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.  Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.  Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

## EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
No. 10-MD-2179

**PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)**

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Havara Rojas | Delfino | | |

| Business Name | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) |
|---|---|
| S.C.P.P. de Bienes y/o Servicio la Nueva FE S.C DE R.L. | PPB040117GM1 |

| MDL 2179 Member Case Number | Attorney Name and Firm |
|---|---|
| 8507 | The Buzbee Law Firm/Anthony G. Buzbee |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

1



EXHIBIT
CC

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks.  Please see

response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date:  _11 de Septiembre_, 2018

Location (City and State):  _Mexico_

_DFR_ _____
Signature of Plaintiff*

***Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.***

_DFR_ _____
Print Name

_Presidente._ _____
Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's _individual lawsuit_ (as opposed to the master docket for MDL 2179) no later than _April 11, 2018_.**

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil
    Spill upon revenues on the Gulf of Mexico.  The United States of America and
    Mexico share over 30 types of migratory species – including shrimp and the
    damage in the entire Gulf of Mexico was affected.   The calculation below
    determines damages in the amount listed below that includes compensation for
    loss of gross profits. The calculation is based on the following:  Claimant operates
    _12_ boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The
    calculation was calculated based on the average loss per boat.  Claimant seeks
    damages in the amount of $197,220.00, plus interest, and other damages the Court
    finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts
    for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the
    decline of revenues that has been well documented amount the tourism and
    seafood industry. The far reaching effects were devastating and widely effected
    all hotels, restaurants, and reduced economic growth in the areas surrounding the
    Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana
    and parts of Florida.  The entire Gulf Coast region, and other areas, suffered
    economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.   Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33  U.S.C.  §  2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.  Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.  Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.  Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.  Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.    The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| | | | |
|---|---|---|---|
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>No. 10-MD-2179 | | | |
| **PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)** | | | |
| Last Name<br><br>Vargg Ventura | First Name<br><br>Crila | Middle Name/Maiden | Suffix |
| Business Name<br>S.C.P.P A tlizintla SC<br>de Rl. | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff)<br><br>VAUC620209NW4 | |
| MDL 2179 Member Case Number<br><br>8374 | | Attorney Name and Firm<br><br>The Barbee Law Firm / Anthony G. Barbee | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1

EXHIBIT

**D**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein. These responses are subject to

amendment and/or supplementation as discovery proceeds.

2

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks. Please see

response attached which is incorporated herein.

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)
>
> _____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date:  __11 de Septiembre__, 2018

Location (City and State):  ___Mexico___

_____ Carla Vázquez Ventura _____
Signature of Plaintiff*

*Plaintiff's Attorney <u>Cannot</u> Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_____ Carla Vázquez Ventura _____
Print Name

_____ Presidenta. _____
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil
    Spill upon revenues on the Gulf of Mexico.  The United States of America and
    Mexico share over 30 types of migratory species – including shrimp and the
    damage in the entire Gulf of Mexico was affected.   The calculation below
    determines damages in the amount listed below that includes compensation for
    loss of gross profits. The calculation is based on the following:  Claimant operates
     2 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The
    calculation was calculated based on the average loss per boat.  Claimant seeks
    damages in the amount of $32,870.00, plus interest, and other damages the Court
    finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts
    for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the
    decline of revenues that has been well documented amount the tourism and
    seafood industry. The far reaching effects were devastating and widely effected
    all hotels, restaurants, and reduced economic growth in the areas surrounding the
    Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana
    and parts of Florida.  The entire Gulf Coast region, and other areas, suffered
    economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism. Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business. The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters. Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage. Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied. Today, Claimant asserts the application of other treaties. On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

    a.      Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

    b.      Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

    c.      Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

    d.      Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

    3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

    (a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.    The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
No. 10-MD-2179

PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Osorio Daants | Sergio | | |
| **Business Name** Nueva operanza de Rodriguez S.C de R.S. | | **Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff)** OODS540322E59 | |
| **MDL 2179 Member Case Number** 8346 | | **Attorney Name and Firm** The Barber Law Firm / Anthony G. Barber | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1

EXHIBIT

**E**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on

includes but not limited to financial statements, witness

statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: _Il de septiembre_ , 2018

Location (City and State): _____Mexico_____

_____
Signature of Plaintiff*

***Plaintiff's Attorney <u>Cannot</u> Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.***

_____
Print Name

_____
Title/Position (if signed on behalf of a business or other entity) _Presidente._

**The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.**

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.    Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.    The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates 1   boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.   The calculation was calculated based on the average loss per boat.   Claimant seeks damages in the amount of $16,435.00,  plus interest, and other damages the Court finds should be awarded.

2.    The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.    The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.  Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.  Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.  Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.  Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.  Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* No. 10-MD-2179 |||||
|---|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) |||||
| Last Name | First Name | Middle Name/Maiden | | Suffix |
| Ramirez Chuxco | Efrain | | | |
| Business Name SCPP Almejeros de alvarado | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) PPA990718147 | | |
| MDL 2179 Member Case Number 8485 | | Attorney Name and Firm The Beebe Law Firm / Anthony G. Beebe | | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018.**

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

1

EXHIBIT
**F**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

2

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks. Please see

response attached which is incorporated herein.

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)
>
> _____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: ___11 de septiembre___, 2018

Location (City and State): ___Mexico___

_____ E. R. chi

Signature of Plaintiff*

***Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.***

_____ E. R. chi

Print Name

_____ Presidente

Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's individual lawsuit (as opposed to the master docket for MDL 2179) no later than April 11, 2018.**

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  9   boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $147,915.00, plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.   Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.   Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.   Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.   Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.   Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>No. 10-MD-2179 |||||
|---|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) |||||
| Last Name<br><br>DelaCruz Dolores | First Name<br><br>Anselmo | Middle Name/Maiden || Suffix |
| Business Name<br><br>S.C.P.P Teconacte S.C de RL | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff)<br><br>CODA540429315 |||
| MDL 2179 Member Case Number<br><br>8443 | | Attorney Name and Firm<br><br>The Buzbee Law Firm / Anthony G. Buzbee |||

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1

EXHIBIT

**G**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on

includes but not limited to financial statements, witness

statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks. Please see

response attached which is incorporated herein.

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)
>
> _____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: __11 de Septiembre__ , 2018

Location (City and State): ____Mexico____

_____
Signature of Plaintiff*

***Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.***

_____
Print Name

_____
Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's _individual lawsuit_ (as opposed to the master docket for MDL 2179) no later than _April 11, 2018_.**

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  6 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $98,610.00  , plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.   Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a. Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b. Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c. Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d. Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.

** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* No. 10-MD-2179 |||||
|---|---|---|---|---|
| **PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)** |||||
| Last Name ⏎ Clara Sandoval | First Name ⏎ Manuel | Middle Name/Maiden || Suffix |
| Business Name ⏎ S.C.P.P. Los Cavaos de Bajio S.C de R.L. || Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) ⏎ CASM680527N3 |||
| MDL 2179 Member Case Number ⏎ 8425 || Attorney Name and Firm ⏎ The Buzbee Law Firm/Anthony G. Buzbee |||

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

1



**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

2

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks. Please see

response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: ___11 de Septiembre___, 2018

Location (City and State): ___Mexico___

_____
Signature of Plaintiff*

*Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.

_____
Print Name

___Presidente___
_____
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's _individual lawsuit_ (as opposed to the master docket for MDL 2179) no later than _April 11, 2018_.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.   Damages arise because of the impact of the Deepwater Horizon/Macondo Oil
     Spill upon revenues on the Gulf of Mexico.  The United States of America and
     Mexico share over 30 types of migratory species – including shrimp and the
     damage in the entire Gulf of Mexico was affected.   The calculation below
     determines damages in the amount listed below that includes compensation for
     loss of gross profits. The calculation is based on the following:  Claimant operates
     _5_ boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.   The
     calculation was calculated based on the average loss per boat.   Claimant seeks
     damages in the amount of $82,175.00  , plus interest, and other damages the Court
     finds should be awarded.

2.   The evidence to be relied upon to prove damages includes Claimants' contracts
     for boats, witness statements, and news articles.

3.   The Deepwater Horizon Macondo well and oil spill incident led directly to the
     decline of revenues that has been well documented amount the tourism and
     seafood industry. The far reaching effects were devastating and widely effected
     all hotels, restaurants, and reduced economic growth in the areas surrounding the
     Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana
     and parts of Florida.  The entire Gulf Coast region, and other areas, suffered
     economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.   Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.  Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.
b.  Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").
c.  Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.
d.  Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.    The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.

** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

Case 2:10-md-02179-CJB-JCW   Document 23825-1   Filed 01/11/18   Page 1 of 5

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>No. 10-MD-2179 | | | |
|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) | | | |
| Last Name | First Name | Middle Name/Maiden | Suffix |
| Herrera Rojas<br>Business Name | Maria del Rosario | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) | |
| Harrera Rojas Maria del Rosario<br>MDL 2179 Member Case Number | | HERRSS1226 26.<br>Attorney Name and Firm | |
| 8394 | | The Barbee Law Firm / Anthony G. Barbee | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1

EXHIBIT

I

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on

includes but not limited to financial statements, witness

statements, and news articles.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks. Please see

response attached which is incorporated herein.

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)
>
> _____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date:   11 de Septiembre , 2018

Location (City and State):   Mexico

_____
Signature of Plaintiff*

*Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_____
Print Name

_____
Title/Position (if signed on behalf of a business or other entity)

Provisionaria.

The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico. The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected. The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following: Claimant operates _3_ boats in the Gulf of Mexico and suffered a loss of $16,435 per boat. The calculation was calculated based on the average loss per boat. Claimant seeks damages in the amount of $49,305.00 , plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico. This area was not limited to four counties in Texas, Louisiana and parts of Florida. The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism. Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business. The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters. Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage. Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied. Today, Claimant asserts the application of other treaties. On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

    a.      Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

    b.      Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

    c.      Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

    d.      Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

   3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

   (a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.    The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 No. 10-MD-2179 |
| --- |

**PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)**

| Last Name | First Name | Middle Name/Maiden | Suffix |
| --- | --- | --- | --- |
| Palacios Enriqua | Areli | | |

| Business Name | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) |
| --- | --- |
| Mujeres experimentando S.C de R.L. | PAEA860427E34 |

| MDL 2179 Member Case Number | Attorney Name and Firm |
| --- | --- |
| 8509 | The Buzbee Law Firm/Anthony G. Buzbee. |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

1

EXHIBIT
**J**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on
includes but not limited to financial statements, witness
statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: ____11 de Septiembre____ 2018

Location (City and State): ____Mexico____

____Arcli∙ P.E.____
Signature of Plaintiff*

***Plaintiff's Attorney <u>Cannot</u> Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.***

____Arcli∙ P.E.____
Print Name

____Presidente.____
Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.**

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.    Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.    The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  12 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $19,7220.00, plus interest, and other damages the Court finds should be awarded.

2.    The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.    The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.  Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

    a.      Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

    b.      Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

    c.      Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

    d.      Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

    3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

    (a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>No. 10-MD-2179 | | | |
|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) | | | |
| Last Name<br><br>Hermida Perez | First Name<br><br>Amado | Middle Name/Maiden | Suffix |
| Business Name<br>Paso Nacional S.C de R.L | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff)<br><br>HE PA 710327702 | |
| MDL 2179 Member Case Number<br><br>8536 | | Attorney Name and Firm<br><br>The Buzbee Law Firm/Anthony G. Buzbee. | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation. Responses must be as specific and accurate as practicable and shall be given under penalty of perjury. It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading. **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.** Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question. Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

**K**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

2

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions? (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: ___11 de Septiembre 2018___

Location (City and State): ___Mexico___

___· Amado. H. P___

Signature of Plaintiff*

*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

___· Amado. H. P___

Print Name

___Presidente.___

Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's individual lawsuit (as opposed to the master docket for MDL 2179) no later than April 11, 2018.**

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  20 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $328,700.00, plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.   Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.   Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.   Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.   Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.     The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 No. 10-MD-2179 |
|---|

**PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)**

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Martinez Amanda | Arturo | | |
| **Business Name** S. La Jaivita S.C. de R.L | | **Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff)** MaSCi 9403039N4 | |
| **MDL 2179 Member Case Number** 8532 | | **Attorney Name and Firm** The Buzbee Law Firm/Anthony G. Buzbee | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT
**L**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.   These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: __11 de septiembre__, 2018

Location (City and State): ___Mexico___

_____
Signature of Plaintiff*

*Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_____
Print Name

_____
Presidente.
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's _individual lawsuit_ (as opposed to the master docket for MDL 2179) no later than _April 11, 2018_.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.   Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates 18 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $295,830.00, plus interest, and other damages the Court finds should be awarded.

2.   The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.   The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism. Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business. The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters. Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage. Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied. Today, Claimant asserts the application of other treaties. On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a. Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b. Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c. Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d. Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.     The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

## EXHIBIT A

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>No. 10-MD-2179 | | | |
|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) | | | |
| Last Name | First Name | Middle Name/Maiden | Suffix |
| Fernandez Zamudio | Daniel | | |
| Business Name<br>S. C. P. P Cuidad y Puerto de Alvarado S. C DE R.L. | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff)<br>FEZD6702065WG. | |
| MDL 2179 Member Case Number<br>8506 | | Attorney Name and Firm<br>The Buzbee Law Firm / Anthony G. Buzbee | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

**M**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

2

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions? (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date:  ___11 de Septiembre___ 2018

Location (City and State):  ___Mexico___

___Donald's___
Signature of Plaintiff*

***Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf. For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.***

___Donald's___
Print Name

___Presidente.___
Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's _individual lawsuit_ (as opposed to the master docket for MDL 2179) no later than _April 11, 2018_.**

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.    Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.    The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  12  boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $197,220.00, plus interest, and other damages the Court finds should be awarded.

2.    The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.    The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.   Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.   Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.   Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.   Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.   Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

Case 2:10-md-02179-CJB-JCW   Document 23825-1   Filed 01/11/18   Page 1 of 5

EXHIBIT A

| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 No. 10-MD-2179 | | | |
|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) | | | |
| Last Name | First Name | Middle Name/Maiden | Suffix |
| Cruz Garcia | Cruz Virginia | | |
| Business Name S.C.P.P Coral Dorado S.C de R.L | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) CUGC570563 C41 | |
| MDL 2179 Member Case Number 8434 | | Attorney Name and Firm The Buzbee Law Firme /Anthony G. Buzbee | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

**N**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein. These responses are subject to

amendment and/or supplementation as discovery proceeds.

2

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

Question 4: Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: 11 de Septiembre, 2018

Location (City and State): Mexico

Signature of Plaintiff*

*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.

Print Name

Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's individual lawsuit (as opposed to the master docket for MDL 2179) no later than April 11, 2018.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico. The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected. The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following: Claimant operates  5 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat. The calculation was calculated based on the average loss per boat. Claimant seeks damages in the amount of $82,175.00  , plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico. This area was not limited to four counties in Texas, Louisiana and parts of Florida. The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.   The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.   Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.   Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.   Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a. Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b. Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c. Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d. Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

Case 2:10-md-02179-CJB-JCW   Document 23825-1   Filed 01/11/18   Page 1 of 5

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* |||||
|---|---|---|---|---|
| No. 10-MD-2179 |||||
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) |||||
| Last Name | First Name | Middle Name/Maiden || Suffix |
| Chuz Mora | Maria minriu |||  |
| Business Name || Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) |||
| S.C.P.P. Grupo Pesquero Salinas S.C.de.R. | CAMM790613N65 ||||
| MDL 2179 Member Case Number || Attorney Name and Firm |||
| 8381 || The Buzbee Law Firm/ Anthony G. Buzbee. |||

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

**O**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: _Il de Septembre_, 2018

Location (City and State): _Mexico_

_____
Signature of Plaintiff*

*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_____
Print Name

_Presidente._
_____
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's underlined individual lawsuit (as opposed to the master docket for MDL 2179) no later than underlined April 11, 2018.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates _3_ boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $49,305.00_ , plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism. Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business. The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters. Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage. Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied. Today, Claimant asserts the application of other treaties. On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

     a.     Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

     b.     Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

     c.     Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

     d.     Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

Case 2:10-md-02179-CJB-JCW   Document 23825-1   Filed 01/11/18   Page 1 of 5

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*<br>No. 10-MD-2179 ||||
|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) ||||
| Last Name<br><br>Carmona Martinez | First Name<br><br>Silvia | Middle Name/Maiden | Suffix |
| Business Name<br><br>S.C.P.P Lamiar Costeña<br>SC de RL. | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff)<br><br>CAMS721203952 ||
| MDL 2179 Member Case Number<br><br>8458 | | Attorney Name and Firm<br><br>The Barbor Law Firm / Anthony G. Barbar ||

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

**P**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks. Please see

response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: ___11 de Septiembre___, 2018

Location (City and State): ___Mexico_____

___Silvia Carmona Mtz_____
Signature of Plaintiff*

*Plaintiff's Attorney <u>Cannot</u> Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

___Silvia Carmona Mtz_____
Print Name

___Presidente_____
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.   Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  7 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $115,045.00, plus interest, and other damages the Court finds should be awarded.

2.   The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.   The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.    Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.    Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.    Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.    Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.     The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.

** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

## EXHIBIT A

| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 No. 10-MD-2179 |
|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) |

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Cruz Aguilera | Ignacio | | |
| Business Name SCPP. Laguna de Locosta S.C de RL. | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) CAA1731201VC7 | |
| MDL 2179 Member Case Number 8459 | | Attorney Name and Firm The Busbee Law Firm / Anthony G. Busbee | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

**Q**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on

includes but not limited to financial statements, witness

statements, and news articles.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico.  The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks.  Please see response attached which is incorporated herein.

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)
>
> _____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: __ 11 Septiembre ___, 2018

Location (City and State): __ Mexico _____

_____ _Iralio chu_ _____
Signature of Plaintiff*

*Plaintiff's Attorney <u>Cannot</u> Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_____ _Iralio chu_ _____
Print Name

_____ _Presidente_ _____
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018.</u>

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.    Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.    The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  7 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $115,045.00, plus interest, and other damages the Court finds should be awarded.

2.    The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.    The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism. Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business. The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters. Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage. Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied. Today, Claimant asserts the application of other treaties. On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.   Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.   Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.   Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.   Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


\*\* These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

## EXHIBIT A

| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 No. 10-MD-2179 |
|---|

PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Garcha Castro | Pedro Jose | | |

| Business Name | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) |
|---|---|
| S.C.P.P Acuicola Turistica y Forestal y ganadera la esperanza S.C. de R.L de C.V. | PATO90217R11 |

| MDL 2179 Member Case Number | Attorney Name and Firm |
|---|---|
| 8397 | The Barber Law Firm / Anthony G. Barber |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1

EXHIBIT

**S**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico.  The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks.  Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: __ll de septiembre__, 2018

Location (City and State): __Mexico__

_____
                    . P J S C
Signature of Plaintiff*

*Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_____
            P J S C
Print Name

_____
        Presidente
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's _individual lawsuit_ (as opposed to the master docket for MDL 2179) no later than _April 11, 2018_.

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.    The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  3  boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $49,305.00  , plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.  Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.     Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.     Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.     Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.     Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.    The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| | | | |
|---|---|---|---|
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* No. 10-MD-2179 | | | |
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) | | | |
| Last Name Chagal Garcia | First Name Rocio | Middle Name/Maiden | Suffix |
| Business Name S.C.P.P Acurola y Pesqua La companita S.C DE RL. | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) CA GR 671228 N43 | |
| MDL 2179 Member Case Number 8380 | | Attorney Name and Firm The Buzbee Law Firm/Anthony G. Buzbee | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

**T**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

> **Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)
>
> _____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: __11 Septiembre__ , 2018

Location (City and State): ___Mexico___

Rocío chagál Carcía
Signature of Plaintiff*

*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

Rocío chagál Carcía
Print Name

Presidentc.
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's __individual lawsuit__ (as opposed to the master docket for MDL 2179) no later than __April 11, 2018__.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  3 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $49,305.00  , plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.  Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B).  This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.  On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a. Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b. Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c. Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d. Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.     The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.

** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
No. 10-MD-2179

PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Galo Pedron | Jose Luis | | |
| Business Name SCPP. Cangrejeros del manglar SC DE RL. | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) PPCO1072411U6 | |
| MDL 2179 Member Case Number 8492 | | Attorney Name and Firm The Bebee Law Firm / Anthony G. Bebee | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

U

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico.  The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: __11 de septiembre__, 2018

Location (City and State): ___Mexico___

_____
Signature of Plaintiff*

***Plaintiff's Attorney <u>Cannot</u> Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.***

_____
Print Name

___Presidente___
_____
Title/Position (if signed on behalf of a business or other entity)

**The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.**

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.   Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  10  boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $164,350.00, plus interest, and other damages the Court finds should be awarded.

2.   The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.   The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.  Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.  Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.  Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.  Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 No. 10-MD-2179 |||||
|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) |||||
| Last Name | First Name | Middle Name/Maiden | Suffix |
| Silva Cruz | Felipe de Jesús | | |
| Business Name S.C.P.P. Libres de las Escolleras S.C de R.L. || Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) DOLE740213GN9 ||
| MDL 2179 Member Case Number 8533 || Attorney Name and Firm The Buzbee Law Firm/Anthony G. Buzbee ||

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on

includes but not limited to financial statements, witness

statements, and news articles.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: Il de Septiembre , 2018

Location (City and State): Mexico

_____

Signature of Plaintiff*

*Plaintiff's Attorney _Cannot_ Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.

_____

Print Name

Presidente

_____

Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's _individual lawsuit_ (as opposed to the master docket for MDL 2179) no later than April 11, 2018.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil
    Spill upon revenues on the Gulf of Mexico.  The United States of America and
    Mexico share over 30 types of migratory species – including shrimp and the
    damage in the entire Gulf of Mexico was affected.    The calculation below
    determines damages in the amount listed below that includes compensation for
    loss of gross profits. The calculation is based on the following:  Claimant operates
    2  boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.   The
    calculation was calculated based on the average loss per boat.   Claimant seeks
    damages in the amount of $32,870.00  , plus interest, and other damages the Court
    finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts
    for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the
    decline of revenues that has been well documented amount the tourism and
    seafood industry. The far reaching effects were devastating and widely effected
    all hotels, restaurants, and reduced economic growth in the areas surrounding the
    Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana
    and parts of Florida.  The entire Gulf Coast region, and other areas, suffered
    economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.  Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a.  Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b.  Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c.  Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d.  Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.    The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.

** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

## EXHIBIT A

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
No. 10-MD-2179

### PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Delfin Roman | Severo | | |

| Business Name | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) |
|---|---|
| Laguna y Puerto de alvarado S.C. DE R.L | DER564091SC16 |

| MDL 2179 Member Case Number | Attorney Name and Firm |
|---|---|
| 8472 | The Buzbee Law Firm / Anthony G. Buzbee |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

**W**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks.  Please see

response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date:  __11 de septiembre__, 2018

Location (City and State):  __Mexico__

_____
Signature of Plaintiff*

*_Plaintiff's Attorney __Cannot__ Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign._

_____
Print Name

__Presidente._____
Title/Position (if signed on behalf of a business or other entity)

The verified **statement, must be filed into the record of the plaintiff's __individual lawsuit__** (as opposed to the master docket for MDL 2179) no later than __April 11, 2018__.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  8  boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $131,480.00, plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.   The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.   Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.   Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.   Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

     a.     Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

     b.     Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

     c.     Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

     d.     Treaty on Maritime Boundaries between the United States of America and the  United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico.  The side agreement between Canada, the United States and Mexico was effective January 1, 1994.  See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.     The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 No. 10-MD-2179 |
|---|

PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS)

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| Cruz Martinez | Arianne | | |

| Business Name | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) |
|---|---|
| S.C.P y a Mujeres del Cabezo de la palangara sadel | COMA84 6718 CES. |

| MDL 2179 Member Case Number | Attorney Name and Firm |
|---|---|
| 8465 | The Budoe Law Firm / Anthony G. Budoe |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

**X**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks.  Please see

response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: __11 de Septiembre__, 2018

Location (City and State): ___Mexico_____

_____

Signature of Plaintiff*

*Plaintiff's Attorney **_Cannot_** Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_____

Print Name

___Presidente._____

Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's **_individual lawsuit_** (as opposed to the master docket for MDL 2179) no later than **_April 11, 2018._**

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico. The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected. The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following: Claimant operates _7_ boats in the Gulf of Mexico and suffered a loss of $16,435 per boat. The calculation was calculated based on the average loss per boat. Claimant seeks damages in the amount of $115,045.00, plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico. This area was not limited to four counties in Texas, Louisiana and parts of Florida. The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.   Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.   The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.   Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.   Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.   Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a. Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b. Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c. Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d. Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

3

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.

** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

EXHIBIT A

| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 No. 10-MD-2179 | | | |
|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) | | | |
| Last Name | First Name | Middle Name/Maiden | Suffix |
| Garcia Ramon | Ariel | | |
| Business Name S.C.P.P El Jurel S.C de RL | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) GARA650530PE9 | |
| MDL 2179 Member Case Number 8462 | | Attorney Name and Firm The Buzbee Law Firm/Anthony G. Buzbee | |

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1



EXHIBIT

Y

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

2

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far reaching effects from the Florida Keys to Mexico. The impact of the news in the Gulf of Mexico caused a reduction of revenues based on the perception that the waters were contaminated and posed serious health risks. Please see response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: __11 de Septiembre__, 2018

Location (City and State): ___Mexico___

_Ariel Garcia R._____
Signature of Plaintiff*

*Plaintiff's Attorney <u>Cannot</u> Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_Ariel Garcia R._____
Print Name

___Presidente._____
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's <u>individual lawsuit</u> (as opposed to the master docket for MDL 2179) no later than <u>April 11, 2018</u>.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.    Damages arise because of the impact of the Deepwater Horizon/Macondo Oil
      Spill upon revenues on the Gulf of Mexico.  The United States of America and
      Mexico share over 30 types of migratory species – including shrimp and the
      damage in the entire Gulf of Mexico was affected.    The calculation below
      determines damages in the amount listed below that includes compensation for
      loss of gross profits. The calculation is based on the following:  Claimant operates
       7 boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.   The
      calculation was calculated based on the average loss per boat.  Claimant seeks
      damages in the amount of $115,045.00, plus interest, and other damages the Court
      finds should be awarded.

2.    The evidence to be relied upon to prove damages includes Claimants' contracts
      for boats, witness statements, and news articles.

3.    The Deepwater Horizon Macondo well and oil spill incident led directly to the
      decline of revenues that has been well documented amount the tourism and
      seafood industry. The far reaching effects were devastating and widely effected
      all hotels, restaurants, and reduced economic growth in the areas surrounding the
      Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana
      and parts of Florida.  The entire Gulf Coast region, and other areas, suffered
      economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.  Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

    a.      Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

    b.      Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

    c.      Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

    d.      Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.      The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.

**EXHIBIT A**

| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* No. 10-MD-2179 |||||
|---|---|---|---|---|
| PTO 65 VERIFIED STATEMENT REGARDING CAUSATION AND DAMAGES (B1 CLAIMS) |||||
| Last Name | First Name | Middle Name/Maiden || Suffix |
| Vkilerio Garcia Teofilo |  |  ||  |
| Business Name Sociedad Cooperativa Pesquera Laguna Pinolapa SC DER IV | | Last 4 digits of Plaintiff's social security number (if individual) or full Tax ID number (if business plaintiff) VANTY20101 LWZ |||
| MDL 2179 Member Case Number 8480 | | Attorney Name and Firm The Bebee law firm/Anthony G. Bebee. |||

All "Remaining B1 Plaintiffs" (as defined in PTO 65) must answer the questions below regarding damages and causation.  Responses must be as specific and accurate as practicable and shall be given under penalty of perjury.  It is a violation of PTO 65 to submit an answer that is, for example, generic, vague, evasive, or misleading.  **The plaintiff (not the plaintiff's attorney) must sign and date the verification and attestation at the end of this form.**  Responses shall be filed in the record for the plaintiff's **individual lawsuit** (not the master docket for MDL 2179) by no later than **April 11, 2018**.

You may attach additional pages to this form if you need extra room to answer a question.  Make sure to indicate the question you are continuing to answer.

1

EXHIBIT

**Z**

**Question 1:** Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

Plaintiff seeks damages for losses caused by the

Deepwater Horizon Oil Spill that occurred on April 20, 2010.

Please see attached response to Question 1, which is

incorporated herein.  These responses are subject to

amendment and/or supplementation as discovery proceeds.

**Question 2:** Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

Please see attached response. The evidence relied up on includes but not limited to financial statements, witness statements, and news articles.

3

**Question 3:** Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

The Deepwater Horizon/Macondo Well incident had far

reaching effects from the Florida Keys to Mexico.  The

impact of the news in the Gulf of Mexico caused a reduction

of revenues based on the perception that the waters were

contaminated and posed serious health risks.  Please see

response attached which is incorporated herein.

**Question 4:** Do you have at this time an expert who will opine as to any of your responses to the above questions?  (Yes or No)

_____

By signing below, I declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the answers provided to the above four questions are true and correct, and I specifically declare and attest under penalty of perjury pursuant to 28 U.S.C. § 1746 that the damages described in response to Question no. 1 were caused by the Deepwater Horizon/Macondo Well incident and oil spill.

Executed on the following date at the following location:

Date: ___11 de Septembre___, 2018

Location (City and State): ___Mexico___



_____
Signature of Plaintiff*

*Plaintiff's Attorney Cannot Sign on Plaintiff's Behalf.  For businesses, the CEO, CFO, President, Owner, or similar senior corporate officer must sign.*

_____
Print Name

___Presidente,___
_____
Title/Position (if signed on behalf of a business or other entity)

The verified statement, must be filed into the record of the plaintiff's individual lawsuit (as opposed to the master docket for MDL 2179) no later than April 11, 2018.

5

# THE BUZBEE LAW FIRM

www.txattorneys.com

Claimant Responses to PTO 65 questions are as follows:

1.  Damages arise because of the impact of the Deepwater Horizon/Macondo Oil Spill upon revenues on the Gulf of Mexico.  The United States of America and Mexico share over 30 types of migratory species – including shrimp and the damage in the entire Gulf of Mexico was affected.   The calculation below determines damages in the amount listed below that includes compensation for loss of gross profits. The calculation is based on the following:  Claimant operates  8  boats in the Gulf of Mexico and suffered a loss of $16,435 per boat.  The calculation was calculated based on the average loss per boat.  Claimant seeks damages in the amount of $131,480.00, plus interest, and other damages the Court finds should be awarded.

2.  The evidence to be relied upon to prove damages includes Claimants' contracts for boats, witness statements, and news articles.

3.  The Deepwater Horizon Macondo well and oil spill incident led directly to the decline of revenues that has been well documented amount the tourism and seafood industry. The far reaching effects were devastating and widely effected all hotels, restaurants, and reduced economic growth in the areas surrounding the Gulf of Mexico.  This area was not limited to four counties in Texas, Louisiana and parts of Florida.  The entire Gulf Coast region, and other areas, suffered economic damages as a consequence of the Oil Spill.

The Claimant's business is related to the fishing industry and in the business of tourism.  Claimant is situated in areas directly affected by Macondo Oil that washed up on beaches and destroyed the Claimant's business.  The Claimant had a direct causal connection to the Oil Spill and the commercial fishermen seek recovery under general maritime law and the Oil Pollution Act of 1990.

Claimant recognizes that the Court has held that the Mexican states do not have a maritime cause of action because they do not have a proprietary interest in the waters.  Under *Louisian ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985), specifically provides a remedy for commercial fisherman to recovery for losses without physical or property damage.  Further, under the Oil Pollution Act of 1990, recovery is authorized for this Claimant if it is "[1] authorized by a treaty or executive agreement between the United States and the claimant's country, or [2] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). This Court has twice denied recovery to the Mexican States. First, in *In Re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011) (which examined four treaties and finding none authorize Mexican States to recover under OPA). Second, on March 6, 2018, when the Court noted that the Mexican State of Yucatan did not assert that a treaty applied.  Today, Claimant asserts the application of other treaties.   On December 9, 2011, this Court considered the application of following treaties and found them inapplicable:

a. Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899.

b. Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 ("Cartagena Convention").

c. Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969.

d. Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).

The Court has not considered the applicability of North American Agreement on Environmental Cooperation which expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations and has not had the opportunity to present its support for its causes of action. The North American Agreement on Environmental Cooperation, Sept. 14, 1993, 32 I.L.M. 1480, reprinted in The Nafta Supplemental Agreements (United States Government Printing Office ed., 1993) ("NAAEC") is applicable to the case at hand and extends OPA 1990 claims to the citizens of Mexico. The side agreement between Canada, the United States and Mexico was effective January 1, 1994. See Article 6 of the Agreement, Private Access to Remedies. That provision requires:

3. Private access to remedies shall include rights, in accordance with the Party's law, such as:

(a) to sue another person under that Party's jurisdiction for damages.

See NAAEC, Article 6, paragraph 3. The citizens, including restaurant owners, commercial fishermen, and developers have a claim distinct from the Mexican States and an applicable treaty grants the right to pursue damages in this jurisdiction. Claimants

request a briefing schedule in order to fully develop the applicable treaties and causes of action asserted by the foreign claimants.

4.   The Claimant also relies upon the expert opinions and analysis of Claims Strategies Group, LLC.


** These responses are prepared pursuant to PTO 65, and may be amended and supplemented in accordance with the Court's trial scheduling order.  The case has been stayed upon filing and there has been no formal discovery.