CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 14-00673                                    DIVISION "C"


HOWELL CONSTRUCTION, INC.

versus

ANDRY LERNER, L.L.C., ANDRY LAW GROUP, L.L.C., JONATHAN B.
ANDRY AND CHRISTINA E. MANCUSO


Proceedings taken in the above-captioned and

-numbered matter, heard in open court before the HONORABLE

SIDNEY H. CATES, IV, Judge presiding, on Friday,

December 15, 2017.

Reported by:

LAURIE F. HENDRICKSON, RMR, CRR, CCR


APPEARANCES:

JEAN-PAUL LAYRISSON, ESQ.
ROBERT H. MATTHEWS, ESQ.
PAULINE M. WARRINER, ESQ.
    Attorneys for the Plaintiff

LEWIS O. UNGLESBY, ESQ.
    Attorney for Andry Lerner, L.L.C., Andry Law
    Group, L.L.C., and Jonathan B. Andry

DAVID S. DALY, ESQ.
    Attorney for Continental Casualty Company

EXHIBIT

1

```
1    THE COURT:
2         Number 7 is next, Howell Construction, Inc.
3         v. Andry Lerner Et Al.
4    MR. UNGLESBY:
5         Good morning, Your Honor.  Lewis Unglesby
6         and David Daly for the Andry interests.
7    THE COURT:
8         Good to see you, gentlemen.
9    MR. LAYRISSON:
10        Your Honor, Jean-Paul Layrisson and Penny
11        Warriner and Robert Matthews on behalf of the
12        plaintiff, Howell Construction.
13   THE COURT:
14        I've not seen most of y'all in a long time.
15        Good to see you.
16        This is a motion for summary judgment filed
17        by defendants; correct?
18   MR. UNGLESBY:
19        Good morning, Judge.
20   THE COURT:
21        Good morning.
22   MR. UNGLESBY:
23        Everything that can be done in this case
24        has been done.  There are no more discovery that
25        anyone's doing.  There are no more experts, no
26        more witnesses.  And the attachments to the
27        motions are as they are.
28        I think that we briefed it pretty good, and
29        I think that Mr. Andry's claim against him is
30        deficient and that the summary judgment should
31        be granted.  I'm really here in the event that
32        the Court has any clarifications, questions, or
```

2

1   recommendations that it wants me to clarify.

2       The simple fact is that the case never

3   prescribed.  The simple fact is that Mr. Andry's

4   judgment --  We don't have retroactive

5   malpractice.  His judgment at the time he made a

6   judgment was based on good, logical evidence and

7   facts and the actions of his client, Mr. Howell.

8       It's not Mr. Andry's fault, what Mr. Howell

9   chose not to do or to do.  He never mitigated

10  his damages.  He never chose to present his

11  case, although he had over 10 months left after

12  Mr. Andry had discharged him and educated him on

13  what to do -- and actually was in the course of

14  filing.  Instead of filing his case, he sued

15  Mr. Andry.

16      The other thing is Mr. Howell has not

17  presented and apparently -- and will never, now

18  that we're where we are, present any proof of a

19  potential for success.  There's been no

20  testimony.

21      And you have to take all the expert

22  testimony that they presented as true.  You

23  know, you don't make a credibility decision

24  today, and I'm not asking you to.  Taking it as

25  true, there's no testimony from anyone that's

26  qualified to testify, or even knows -- even

27  tries to say what they know that they're

28  allegedly an expert in, as to what the claims

29  office would have done.

30      To prove his case, Howell has to have

31  someone from Mr. Juneau's office that says,

32  "With these facts, you know, with Mr. Howell's

```
1        facts, we would have found it to be, you know,
2        legitimate."  Okay?  In the absence of that, it
3        is just speculative as to what right, if any,
4        did he lose.
5             Andry's not required to be perfect; he's
6        required to be diligent.  And we suggest the
7        evidence certainly shows that he and Ms. Mancuso
8        discharged that duty.
9   THE COURT:
10            I don't have any additional questions.
11            Counsel?
12  MR. LAYRISSON:
13            Your Honor, Jean-Paul Layrisson on behalf
14       of the plaintiff.  I have great respect for
15       Mr. Unglesby.  We've been friends for 20 years,
16       and he's a great lawyer.  But even a great
17       lawyer can't fix a bad legal position, and
18       that's what he has here, Your Honor.
19            Mr. Howell went to the Andry Firm in -- to
20       handle his BP claim.  Mr. Andry didn't
21       personally handle the claim.  He had two
22       associates handle it for him, and they're no
23       longer with him.
24            But a long story short, after having the
25       case from June until September, in October, his
26       team finally started working on it, and they got
27       Mr. Howell to sign what is called an "opt-out."
28       And that is where you opt out of the $20 billion
29       settlement and you decide to have a private
30       lawsuit under OPA.
31  THE COURT:
32            I know what it is.
```

```
1     MR. LAYRISSON:
2              Okay.  All right.  Their summary judgment
3         theory is that this OPA deadline was further in
4         the future than every lawyer in New Orleans
5         thought, and therefore he wasn't damaged.
6              It should have been a partial motion for
7         summary judgment, 'cause the first act of
8         negligence, we contend, was opting him out to
9         begin with.  He should have stayed in the
10        settlement.
11             If he stayed in the settlement, our experts
12        are gonna testify -- and they did in their
13        depositions -- that this was a three-and-a-half-
14        million-dollar claim as a start-up business, and
15        after Policy 495, it was a $2 million claim; and
16        this client should have definitely filed a claim
17        in that settlement.
18             Unfortunately, Mr. Andry's associates that
19        opted Mr. Howell out, they did it without
20        running that start-up analysis, so they
21        didn't --  As Mr. Ciolino testified, Mr. Howell
22        didn't have informed consent.  He didn't know
23        what his claim was worth under the program,
24        under the start-up model, versus the opt-out.
25             Their second act of negligence, Your Honor,
26        is they never ran what his damages would be
27        under the OPA claim.  They never said,
28        "Mr. Howell, if you pursue an opt-out claim, we
29        think this is what you'll win."
30             So when they got Mr. Howell to sign that
31        opt-out form, Your Honor, they hadn't run the
32        start-up analysis, and they never ran an
```

```
 1     opt-out.  But yet they told him he should opt
 2     out, and he did.
 3          After Mr. Howell opted out, on January 29,
 4     they sent a certified letter -- and it's their
 5     Exhibit 8, their termination letter -- that
 6     says:  We're sorry.  We think you made too much
 7     money.  We're not gonna represent you anymore.
 8          And it's Exhibit --  I hate to bother you
 9     with documents after that last hearing, but it's
10     their document, Exhibit 8.  It says:  "Since we
11     are no longer representing you or Howell
12     Construction in these matters, we will not do
13     anything further in connection with these claims
14     under the Economic and Property Damages
15     Settlement."
16          I don't know why that's in this letter,
17     because they had already opted him out, so he's
18     not part of the settlement.  And then it goes on
19     to advise him that, you know, he needs to file
20     suit within three years of OPA.  Your Honor, our
21     contention is this letter was sent after
22     presentment of January 20th had already run.
23          The second thing is, Your Honor,
24     Exhibit A-5, which is a letter Mr. Andry's
25     office sent him in October when they wanted him
26     to sign the opt-out, says:  "If you do not
27     timely and officially 'present' your claim to
28     OPA and begin a lawsuit within that given time
29     period, or by April 20, 2013, you will not ever
30     be able to bring a lawsuit . . . ."
31          So by his own admission -- it's
32     Exhibit A-5 -- April 20, 2013, was the OPA
```

1    deadline they told Mr. Howell.  If you back it

2    up 90 days, it's January 20, 2013.  In their

3    motion, they contend the OPA deadline is

4    sometime in the future.  By their own admission,

5    the OPA deadline was April 20, 2013.

6         It is confusing if you don't do BP claims.

7    But the bottom line is every lawyer in New

8    Orleans, and even the Andry Lerner Firm, thought

9    the presentment deadline was January 20.

10         They fire this client on January 29, after

11    presentment, and said:  Oh, by the way, don't

12    miss presentment.

13         That's malpractice, Your Honor.  At least,

14    it's a factual issue that you need to hear.  You

15    need to hear from the witnesses.  You need to

16    hear from Professor Ciolino.  You need to hear

17    from their experts.  It's not something you can

18    dismiss on summary judgment.

19         So, again, to restate it, our first claim

20    for malpractice is they should have left this

21    guy in the program.  If he's in the program, he

22    would have qualified for a two-and-a-half-

23    million-dollar payoff from BP for his loss.

24    They opted him out.  They did it before running

25    a start-up analysis, which is what he was.  They

26    did it without telling him what his damages were

27    for an opt-out claim.

28         The second act of malpractice was not

29    presenting his claim.  It takes about a day to

30    present.  It's easy to present a claim under

31    OPA:  You file your opt-out.  You do a one-page

32    presentment.  You wait 90 days.  You file the

```
 1          suit.  But by not, by --  It's a fatal flaw if
 2          you don't present the claim.
 3               Mr. Howell --  One last thing, Your Honor:
 4          this mitigation argument.  Mr. Howell came to us
 5          later that year and asked us if we --  He said
 6          that the Andry Firm, you know, said he didn't
 7          have a claim and -- we run it.  And we did.
 8               And when we attempted to file it, we were
 9          blocked because the Andry -- the BP people said
10          the Andry Firm are his lawyer of record.  We
11          finally got permission to be the lawyer of
12          record.  And then there was a freeze in place
13          'cause all the Andry claims are frozen.  And
14          then ultimately we were told:  You can't file a
15          claim because the Andry Firm opted him out last
16          year.
17               At that point in time, there were two
18          things we could do.  We could file a presentment
19          a year late and maybe get sanctioned, or we
20          could ask BP to let him back in the program.  We
21          spent a year trying to get BP -- the claims
22          administrator and BP to let him back in the
23          program, which can only be done with BP's
24          consent.  And ultimately, that was denied.
25               But Mr. Howell did attempt to mitigate his
26          damages, Your Honor, and that's again another
27          fact issue that we will prove to you when this
28          case goes to trial on the merits.  That's all I
29          have, unless you have questions.
30     THE COURT:
31               I don't have any questions.
32               Any rebuttal?
```

```
 1      MR. UNGLESBY:

 2           Only if you need something, Judge.  I think

 3      the calendar supports what we've said.  The only

 4      other thing is Howell himself takes the

 5      position -- and that's how he avoids the

 6      prescription problem of the OPA rule -- that: I

 7      knew on the day of the BP explosion there was

 8      going -- that I was gonna have a loss.

 9           Now, the facts are -- and we all know

10      this -- the BP explosion itself didn't give

11      anybody like Howell any rights whatsoever, only

12      those poor people that had the misfortune to be

13      on that platform.

14           The ultimate spill and the consequences of

15      the spill is what the lawsuit was all about.

16      That's what the entire --  It was never about

17      the individuals affected; it was always about

18      all of those affected as a consequence of the

19      spill.  The spill is going on throughout the

20      summer of that year.  Howell isn't losing

21      anything until June of the following year, when

22      his contract is canceled.

23           Now, he has from then to three years, under

24      OPA, to take action.  He chooses not to.  In the

25      interim, Mr. Andry does --  They do disagree

26      with each other, and he fires him, with good

27      advice to him of what he needs to do and plenty

28      of time.  You know, this is not a "Tomorrow your

29      case is over.  You better do something" kind of

30      situation.  He is given a very long period of

31      time to do whatever he needs to do, and he

32      chooses not to do it, independent of.
```

```
 1                    The simple fact, Judge, that --  While
 2           their experts can speculate, that's all they're
 3           doing.  Howell can't prove --  Howell made $10
 4           million and something the year after the BP
 5           claim, you know, after the BP explosion, the
 6           best he ever did in his life.  He's gotten very
 7           wealthy since BP, but not because of it and not
 8           as a result of it.  But that's just the facts.
 9           He doesn't have --  He was never a new, start-up
10           business.
11                    To say Mr. Andry is --  Remember, we're
12           going back to not, "Did Howell make a good
13           choice?" or "Did Mr. Layrisson make a good
14           choice?" but "Did Andry, as a lawyer, make such
15           a poor choice, make such poor advice -- give
16           such poor advice or neglect that it rises to the
17           level of actionable malpractice?"
18                    That standard is what we're here on, not
19           arguing to the special master about whether
20           Howell should or shouldn't be considered a
21           start-up or should or shouldn't get extra money
22           if we --
23   THE COURT:
24                    I'm not going to do surrebuttal.
25   MR. UNGLESBY:
26                    Andry's what's at issue.
27   MR. LAYRISSON:
28                    Please, Your Honor.
29   THE COURT:
30                    I'm going to take this under advisement,
31           gentlemen.  I'm still working on it, but I'll
32           have my decision out in probably five days.
```

```
1      MR. LAYRISSON:
2            Thank you, Your Honor.
3      MR. UNGLESBY:
4            Thank you, Your Honor.
5      MR. LAYRISSON:
6            Appreciate it.
7            (The record is concluded.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
```

REPORTER'S CERTIFICATE

This certificate is valid only for a transcript accompanied by my original signature and embossed seal on this page.

I, LAURIE FRICKEY HENDRICKSON, Official Court Reporter in and for the State of Louisiana, employed as an official court reporter by the Civil District Court for the Parish of Orleans, as the officer before whom this testimony was taken, do hereby certify that the testimony as set forth in the foregoing 11 pages was reported by me in the stenotype reporting method, was prepared and transcribed by me, and is a true and correct transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the Louisiana Board of Examiners of Certified Shorthand Reporters or by the Supreme Court of Louisiana; and that I am not related to counsel or to the parties herein, nor am I otherwise interested in the outcome of this matter.

Signed this _27th_ day of March, 2018.


LAURIE F. HENDRICKSON
Registered Merit Reporter
Certified Realtime Reporter
Certified Court Reporter #88007