

| | | |
|---|---|---|
| HOWELL CONSTRUCTION, INC. | * | NO. 2018-CA-0317 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| ANDRY LERNER, L.L.C., ANDRY LAW GROUP, L.L.C., JOHNATHAN B. ANDRY AND CHRISTINA E. MANCUSO | * | FOURTH CIRCUIT |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2014-00673, DIVISION "L-6"
Honorable Kern A. Reese, Judge
* * * * * *

**Judge Edwin A. Lombard**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Daniel L. Dysart, Judge Paula A. Brown)

*DYSART, J., CONCURS IN THE RESULT*

Robert H. Matthews
Pauline M. Warriner
MATTHEWS & WARRINER, L.L.C.
230 Olivier Street
New Orleans, LA 70114
-AND-
Jean-Paul Layrisson
Timothy D. Scandurro
Krista M. Eleew
SCANDURRO & LAYRISSON, L.L.C.
607 St. Charles Avenue
New Orleans, LA 70130


COUNSEL FOR PLAINTIFF/APPELLANT


Lewis O. Unglesby
Jordan L. Bollinger
UNGLESBY LAW FIRM
246 Napoleon Street
Baton Rouge, LA 70802

-AND-

David S. Daly
FRILOT, LLC
1100 Poydras Street
Suite 3700
New Orleans, LA 70163

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

# OCTOBER 24, 2018

This appeal is from a summary judgment rendered in favor of the defendants, dismissing the plaintiff's legal malpractice claims. After review of the record in light of the applicable law and arguments of the parties, we affirm the district court judgment.

***Relevant Facts and Procedural History***

On April 20, 2010, the Deepwater Horizon (a semi-submersible offshore oil drilling rig) exploded in the Gulf of Mexico.[1] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, On April 20, 2010*, 910 F. Supp. 2nd 891, 900 (E.D. La. 2012). A massive discharge of oil into the Gulf continued for nearly three months, resulting in thousands of lawsuits filed for damages resulting from the oil spill. A federal class action settlement was reached in April 2012 wherein businesses that suffered economic damages as a result of the oil spill could file for Business Economic Loss ("BEL") damages under the Settlement Agreement. Thus, pertinent to this lawsuit, a "B1" damage claim could be filed if the plaintiff: (1) owned, operated, or leased a facility in the Gulf Coast area between April 20, 2010;

---

[1] In litigation arising out of this incident, it is described variously as the Deepwater Horizon oil spill, the BP oil spill, the Macondo (rig) oil spill.

1

and (2) sold products in those areas directly to consumers or end users. Additionally, a service business with one or more full-time employees who were physically present performing services in the Gulf Coast area between April 20, 2010, and April 16, 2012, could file a damage claim. Clearly, inherent in qualifying for economic loss damages is an implicit requirement that a business owner show an economic loss.

To participate in the settlement program, a claimant was required to submit claim forms with required documentation for evaluation and processing by the Court Supervised Settlement Program. Throughout the existence of the program, the claims administrator issued policies and orders pertinent to various changes, including changes to deadlines relevant to filing claims, opting out of the settlement, and revocation of prior opt-outs to the Settlement Agreement. Notably, failure to timely and properly opt-out of the settlement agreements foreclosed a party from bringing a separate claim under the Oil Pollution Act ("OPA").

In July 2012, the plaintiff, Howell Construction, Inc., an Arkansas company registered as a business in Louisiana, entered into a contingency agreement for legal representation to pursue a claim for economic damages from the oil spill with the defendants, Andry Lerner, L.L.C., Andry Law Group, L.L.C, and Jonathan B. Andry.[2] On November 1, 2012, after consulting with the defendants, the plaintiff signed documents to opt-out of the BP settlement. On or about January 29, 2013, the defendants sent a certified letter terminating their professional relationship with the plaintiff.

---

[2] By joint motion and order signed on July 25, 2016, all claims and causes of action against Christine Mancuso (initially named as a defendant) were dismissed.

2

On January 17, 2014,[3] the plaintiff filed this lawsuit against the defendants, alleging breach of contract and, by amended petition filed on November 5, 2014, asserting a legal malpractice claim.[4] On August 11, 2017, the defendants filed a motion for summary judgment. The plaintiff filed its opposition to summary judgment on November 30, 2017. The defendants filed a reply brief on December 8, 2017. After a hearing on the motion, the district court rendered judgment in favor of the defendants on February 6, 2017, finding that the plaintiff would be (1) unable to prove as a matter of law that the defendants were negligent in the handling of its BP oil spill claim and (2) unable to prove that it suffered any loss caused by the defendants' alleged negligence.

This devolutive appeal was timely filed.

***Standard of Review***

A motion for summary judgment is reviewed *de novo* on appeal, using the same criteria as the district court, to determine the existence of a genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. La. Code Civ. Proc. art. 966; *Louisiana Safety Association of Timbermen Self–Insurers Fund v. Louisiana Ins. Guaranty Association*, 09-23 (La. 6/26/09), 17 So.3d 350, 353.

---

[3] The previous day (on January 16, 2014), a legal malpractice lawsuit was also filed in federal court by the plaintiff against the defendants, alleging that "Andry Lerner prevented Howell from filing a lawsuit against BP by failing to inform Howell of the need to make presentment and file a lawsuit until it sent its termination letter on January 29, 2013." *In Re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 14-0121, p. 2 (E.D. La., 8/28/18), 2018 WL 4095544. Finding that the plaintiff filed to state a claim for relief that is plausible on its face, the federal district court granted the defendants' motion to dismiss and dismissed with prejudice the plaintiff's claims on August 28, 2018.

[4] The plaintiff also added the defendants' professional liability insurer, Continental Casualty Company ("CAN"), as a defendant.

3

***Applicable Law***

*Summary Judgment*

Summary judgment, designed to secure just, speedy, and inexpensive determinations of legal actions, is favored in Louisiana "and shall be construed to accomplish these ends." La. Code Civ. Proc. art. 966(A)(2). A motion for summary judgment shall be granted when "the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. Code Civ. Proc. art. 966(A)(3).

A moving party who does not bear the burden of proof at trial is not required to negate all essential elements of the adverse party's claim but need only point out an absence of factual support for one or more elements essential to the adverse party's claim. La. Code Civ. Proc. art. 966(D)(1). Accordingly, once the mover has pointed out the absence of factual support, the burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* Vague allegations are insufficient to oppose a motion for summary judgment. *MB Indus., LLC v. CNA Ins. Co.*, 2011-0303 (La. 10/25/11), 74 So. 3d 1173, 1186. Whether a particular fact in dispute is "material" for summary judgment purposes is viewed in light of the substantive law applicable to the case. *Richard v. Hall*, 03-1488, p. 5 (La.4/23/04), 874 So.2d 131, 137 (citations omitted).

*Legal Malpractice*

To establish a valid legal malpractice claim, a plaintiff must show evidence sufficient to convince a reasonable trier of fact of (1) the existence of an attorney-client relationship; (2) negligent representation by the

4

attorney; and (3) loss caused by that negligence. An attorney's license to practice and a contract for employment both indicate possession of certain minimal skills, knowledge, and abilities but, although an attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent local practicing attorneys, an attorney is "not required to exercise perfect judgment in every instance." *Crescent City Prop. Redevelopment Ass'n, LLC v. Hardy*, 2011-1292, p. 7 (La. App. 4 Cir. 4/18/12), 89 So. 3d 1270, 1274-75, *writ denied*, 2012-1429 (La. 10/8/12), 98 So. 3d 859 (citation omitted).

*Prescription*

In Louisiana, prescription begins to run on the day the injury or damage is sustained. *Cole v. Celotex Corp.* 620 So. 2d 1154, 1156 (La. 1993). In other words, damage is sustained for prescription purposes only when it has manifested itself with sufficient certainty to support accrual of a cause of action. *Id.*

*Definition of Start-Up Business under Settlement Agreement*

A "Start-Up Business" for purposes of the Settlement Agreement "is a business entity, not a line of business," *i.e.*, "a *claimant* with less than eighteen months of operating history at the time of the [BP oil] spill. *Holmes Motors, Inc. v. BP Exploration & Prod., Inc.* 829 F.3d 313, 316 (5th Cir. 2016) (emphasis in original; citing Settlement Agreement §38.15); *See Deepwater Horizon*, 910 F. Supp. 2d at 903-10 (describing the Settlement Agreement at length).

***Discussion***

In its legal malpractice lawsuit against the defendants, the plaintiff asserts two claims: (1) the plaintiff's decision to opt-out of the settlement was based on the defendants' negligent advice to do so; and (2) the deadline

5

for a presentment under the OPA expired nine days before the defendants sent the letter terminating their attorney/client relationship and, therefore, the failure to make a presentment under the OPA on behalf of the plaintiff was legal malpractice.

The existence of the attorney/client relationship between the parties is undisputed. The defendants acknowledge that they advised the plaintiff that its claim might not qualify under the Settlement Agreement and, in addition, that its claim would be difficult under the OPA because of the precipitous rise in its income between 2009 and 2011. The defendants also acknowledge that the termination letter was sent to the plaintiff in late January 2013. The defendants assert, however, that they are entitled to summary judgment as a matter of law because the plaintiff cannot show that the defendants' advice to opt-out of the BP settlement was negligent or that the plaintiff's potential OPA claim was not viable after the termination of the attorney/client relationship.

In support of their motion for summary judgment, the defendants submit the following documents:

> (1) Defendants' Exhibit A: An affidavit by Jonathan Andry, stating that his law firm (Andry Lerner, LLC, and Andry Law Group, LLC) maintained a file during their representation of the plaintiff, including the following copied documents:
> (a) Defendants' Exhibit A-1: case file notes including inter-office correspondence and notes documenting conversations with plaintiff between October 11, 2012, and December 12, 2012, pertaining to documents not yet received from the plaintiff, explaining to plaintiff that **the settlement claim was problematic because rather than losing money in 2010 (the year the oil spill occurred) he made substantially more money than previous years (2008: $50K; 2009: $170K; 2010: $4 million; 2011: $16 million)** and whether he satisfied the causation requirement under the settlement was based on the interpretation of "customer location," *i.e.*, where the work was done or where the contractor/subcontractor was located. (Emphasis added).
> (b) Defendants' Exhibit A-2: list of various documents in file including attorney/client contract, **tax forms**, and business records. (Emphasis added).

6

(c) Defendants' Exhibit A-3: correspondence between defendants and Coastal Claims Group about evaluation of the plaintiff's claim on the causation issue.

(d) Defendants' Exhibit A-4: letter dated July 24, 2012, to plaintiff requesting various documents necessary to evaluate plaintiff's potential claim.

(e) Defendants' Exhibit A-5: letter dated October 11, 2012, defining "Opt-out" and advising of upcoming deadlines in the Multi-District litigation.

(f) Defendants' Exhibit A-6: Official request to opt-out of settlement signed by Jerry Howell (plaintiff's Vice President) on October 24, 2012.

(g) Defendants' Exhibit A-7: Official request to opt-out signed by Jerry Howell on October 31, 2012.

(h) Defendants' Exhibit A-8: copy of certified letter dated January 29, 2013, by the defendants terminating their representation of the plaintiff for damages suffered as a result of the oil spill "due to the significant increase in revenue by the plaintiff in 2010."

(2) Defendants' Exhibit B: Excerpts of April 12, 2016, deposition testimony of Jerry Lee Howell, Jr., conceding that he signed two opt-out letters. He also stated that he "assumed" he had damages from the oil spill because that he "lost" the Idlewild contract in 2011 "due to not having sold enough material due to the BP Oil spill slowing us down.

(3) Defendants' Exhibit C: Excerpts of April 28, 2016, deposition testimony of Dane S. Ciolino stating that (a) the only BP settlement case he worked on was for his own law practice; (b) he did not know whether the law allowed a three year period for filing BP oil spill claims; (c) "I don't pretend to be an expert on BP claims;" (d) the standard of care was not breached if the prescriptive date for filing a claim fell after the termination of the attorney/client relationship; (e) the plaintiff's business moved to Louisiana from Arkansas in 2010 (the year of the oil spill) and income rose from $170,000 in 2009 to $4,000,000 in 2010 and $16,000,000 in 2011; and (f) he did not know the "claims office" interpretation of a Start-Up Business which was "one of these complicated formulas that dealt with losses" in different zones and did not "pretend to be an expert in the calculation of losses either in the general business model or under the start-up model."

(4) Defendants' Exhibit D: Excerpts of September 13, 2016, deposition testimony of D. Keith Chun agreeing that evaluating a complicated "start-up company" oil spill claim required full information from the claimant.

(5) Defendants' Exhibit E: affidavit of Zachary Wool stating that based on his review of the documents produced in the defendants' case file, it was his opinion that the defendants did not breach any standard of care and that the plaintiff's OPA

7

claim did not prescribe during the period the plaintiff was represented by the defendants. In addition to the case file documents Exhibits E1-E8 (identical to Exhibits A1-A8, *supra*), Exhibit E-9 is a copy of a certified Default Letter sent to the plaintiff at its Arkansas business address from White Oak Realty, L.L.C. and Citrus Realty, L.L.C., dated June 22, 2011, notifying the plaintiff that it was in default under the Sale Agreement for failing to produce and pay for the required cubic yards of material during the specific time periods set forth in the Sale Agreement and that the plaintiff had thirty days to pay $3,817,774.17 to cure the default.

In opposition to the defendants' motion for summary judgment, the plaintiff asserts that summary judgment should be denied because there is a genuine issue of material fact as to when the plaintiff's "opt-out" claim became time-barred during the attorney/client relationship. Specifically, the plaintiff asserts that because the defendants' legal malpractice expert, Zachary Wool, did not review Jerry Howell's deposition testimony, he erroneously concluded that the applicable statute of limitations for the plaintiff's oil spill claim began to run on only when the Idlewild contract was terminated, June 21, 2011.

In support of its assertion that there is a genuine issue as to whether the plaintiff's claim for business losses prescribed prior to termination of the attorney/client relationship, the plaintiff submits:

> (1) Plaintiff's Exhibit A: excerpts of Jerry Howell's deposition testimony wherein Mr. Howell states that he knew "immediately" on the day of the oil spill (April 20, 2010) that he had a damage claim and, therefore, the prescriptive period for his claim (and related presentment deadline) began to toll on April 20, 2010. Specifically, Mr. Howell states that the day the oil spill occurred he knew that the employees of the U.S. Army Corps of Engineers responsible for certifying "borrow" pits would be "pulled to the BP Oil Spill," which would in turn delay certification of the borrow pits underlying his Idlewild contract which would cause him to lose the contract.[5] He explained that the owners of the Idlewild property were White Oak

---

[5] Mr. Howell explained in his deposition that the owners of the Idlewild property were White Oak Realty, L.L.C. and Citrus Realty, L.L.C. Accordingly, his business economic loss theory is apparently based on the presumption that the plaintiff is eligible for payment of losses incurred as a result of losing the "Idlewild" contract because the plaintiff's deficiency in fulfilling the contract was caused by the Corps of Engineer ("the Corps") delay which, in turn, was caused by the oil spill.

8

Realty, L.L.C. and Citrus Realty, L.L.C. Mr. Howell conceded, however, that there was no evidence that the Corps delayed certification of the borrow pits. Mr. Howell also alleges that, as a result of losing the Idlewild contract, he lost other unnamed contracts.

(2) Plaintiff's Exhibit B: excerpt of deposition testimony of Zachary Wool wherein he was asked whether he agreed that "[a]ssuming the date that Howell Construction was held to reasonably have discovered its claim was April 20, 2010, the date of the oil spill, . . . the presentment date would have been 90 days before April 20, 2013, or before January 20. In response, Mr. Wool stated:

> That is a huge if. But, yes, generally speaking, the statute of limitations is three years from when you know or should have known that you had a loss attributable to the spill. And there's a 90-day presentment requirement that starts running beyond that three-year deadline. So you'd come back in three months when you would have to make presentment."

(3) Plaintiff's Exhibit C: excerpts of the deposition testimony by D. Keith Chunn wherein he stated that he is not an attorney but it is his opinion that Mr. Wolf's conclusion that the presentment deadline was based on a date "further out" than the date of the oil spill because he (Mr. Chunn) had worked with several law firms "getting their cases ready for filing and "there was a big rush to make the presentment based on that [January 30, 2013] deadline date . . nobody was sitting there saying 'Well, we probably could argue that we could go out further.'" Mr. Chunn reiterated that he did not "prepare claims," but "had a lot of discussions with people on this" and when "the date came in January, I don't remember the specific date, it was probably the 29th or so, every firm was in a rush to file by that deadline."

(4) Plaintiff's Exhibit D: deposition testimony of Dane S. Ciolino wherein he stated that he believed the applicable standard of care required the defendants to gather all the relevant documents, "run damages calculations under the settlement agreement both under the general business model and as a start-up." Mr. Ciolino asserted that it was his opinion based on the documents he had seen that the defendants were on notice that a start-up claim was possible. He opined that the standard of care required the law firm to run those damages calculations with the assistance of its consulting accountants and then to share those calculations with Mr. Howell and discuss his claims, damages, the strengths and weaknesses of his claims under the settlement and as an opt-out, and then to obtain his consent timely to a course of action. Mr. Ciolino asserted that he had not "seen any documents suggesting that when [Mr. Howell] signed" either opt-out notice "that he had been given the information that he needed to make an informed decision to opt-out." Mr. Ciolino conceded, however, that his "opinion is totally dependent upon pieces of paper" and that he did not "have any idea what Kaily Leboeuf or Leslie Tate or Christine Mancuso or anyone else may have said [to Mr. Howell]."

(5) Plaintiff's Exhibit E: the deposition testimony of Richard S. Lacour wherein he stated that the plaintiff met causation for a start-up

9

business to be compensated through the Settlement Agreement under the Deepwater Horizon rules because the plaintiff "worked on the levees" in an area designated as "Zone B" and "compensation just follows." Mr. Lacour defined causation as "where your gross revenues in . . . a three month period in 2010 . . . compared to those same three months [in 2011 shows] a 8 ½ percent increase."

In its response to the plaintiff's opposition, the defendants assert they are entitled to summary judgment because the plaintiff is unable to sustain its burden of proof with regard to material elements of the malpractice claim. Specifically, with regard to whether the defendants' actions fell below the applicable standard of care related to an action for economic/business loss, the defendants point out that under the OPA, 33 U.S.C. § 2717(f)(1)(A), an action must be brought within three-years after "the date on which the loss and the connection of the loss with the discharge in question are reasonably discoverable with the exercise of due care." Therefore, the defendants argue that, even if Mr. Howell subjectively "knew" there was potential future economic loss related to the oil spill, no "reasonably discoverable" loss occurred until the plaintiff received notice by letter dated June 21, 2011, from White Oak Realty, L.L.C., and Citrus Realty terminating the contract with the plaintiff related to its Idlewild property and thereby triggering the three-year prescriptive period.

*Analysis*

After *de novo* review of the defendants' motion for summary judgment, the plaintiff's opposition, and the defendants' reply, including supporting exhibits, we find that defendant is entitled to summary judgment as a matter of law. The defendants pointed out the absence of factual support for elements essential to the plaintiff's legal malpractice claim and the plaintiff failed to meet its burden to produce factual support sufficient to establish the existence of a genuine issue of material fact.

The gist of the plaintiff's legal malpractice claim appears to be that it would have been compensated for an economic loss suffered as a result of the oil spill but for the defendants' negligence in evaluating, advising, and timely filing claims on its behalf. As factual support for this claim, the plaintiff proffered the deposition testimony of Mr. Howell, Mr. Wool, Mr. Ciolino, Mr. Chunn, and Mr. Lacour. The proffered deposition testimony offers only vague allegations of fault, however, and fails to establish any genuine issue of material fact that the defendants are not entitled to summary judgment as a matter of law.

Mr. Howell claimed that he "immediately" knew the oil spill would result in an economic loss for his business because the Corps of Engineers would shift its focus to the oil spill, thereby delaying certification of the borrow pits. He conceded, however, that there is no evidence that the Corps delayed certifying the borrow pit. Moreover, even accepting *arguendo* that the termination of the "Idlewild" contract was based on delayed certification of a borrow pit by the Corps, there is no evidence to connect that delay to the oil spill.

Mr. Wool agreed that, *if* it were held that damages were "reasonably discoverable" on the day of the oil spill, the three year prescriptive period would be triggered, thus creating a January 2013 presentment date deadline. However, it has not been held that the plaintiff's damages were "reasonably discoverable" on the day of the oil spill and the plaintiff submits no evidence to support a finding that the termination of the Idlewild contract was "reasonably discoverable" on April 20, 2010. Notably, no claim was filed and dismissed as having prescribed.

Mr. Chunn's anecdotal testimony that other law firms rushed to file claims by January 30, 2013, does not establish that date as the deadline for

11

filing the plaintiff's presentment. Notably, there is no jurisprudence or other evidence to establish that January 30, 2013, was the filing deadline for all presentments under the Settlement Agreement.

Mr. Ciolino opined that based on the documents he had seen, the defendants were on notice that the plaintiff could file as a "Start-Up Business" and that the defendants' failure to advise or timely file a presentment for such a claim constituted legal malpractice. Mr. Ciolino conceded, however, that (1) he did not know what advice was offered prior to Mr. Howell's decision to opt-out of the Settlement Agreement; (2) he was not an expert on BP claims; and (3) he did not know the definition of a Start-Up Business under the Settlement Agreement. Moreover, Mr. Ciolino appeared unaware that "a Start-Up Business" under the terms Settlement Agreement is an entity "with less than eighteen months of operating history at the time of the [BP oil] spill," *Holmes Motors, Inc.,* 829 F. 3d at 316 (citing Settlement Agreement §38.15), and, in any event, Mr. Ciolino offered no explanation as to how a business with tax returns indicating that it had been operating for at least two years prior to the oil spill qualified as a "Start-Up Business." Similarly, Mr. Ciolino failed to explain how the termination of the Idlewild contract in June 2011 was "reasonably discoverable" on April 20, 2010, and, thus, triggered a prescriptive period.

Mr. Lacour opined that the plaintiff was entitled to compensation under the Settlement Agreement as a Start-Up Business because "causation" was established by the fact that the plaintiff "worked on the levees" and, therefore, "compensation just follows." Again, Mr. Lacour offered no explanation as to how the plaintiff qualified as a "Start-Up Business" under the Settlement Agreement when according to its tax returns, the plaintiff had at least two years of operating history at the time of the oil spill. Moreover,

12

contrary to Mr. Lacour's rationale, compensation was not automatic based solely upon an entity working in a location affected by the oil spill but also required a showing of some economic loss after the oil spill. In this case, the plaintiff's income substantially the year of the oil spill and even more the following year.

To reiterate, a "Start-Up Business" for purposes of the Settlement Agreement is "a *claimant* with less than eighteen months of operating history at the time of the [BP oil] spill." *Holmes Motors, Inc.*, 829 F. 3d at 316. According to the tax forms and business records the plaintiff submitted to the defendants for purposes of evaluating its potential claims under the Settlement Agreement, the plaintiff reported income for the two years prior to the oil spill (2008: $50K; 2009:$170K), the year of the oil spill (2010:$4 million), and the year the Idlewild contract was terminated (2011: $16 million). Therefore, based on the plaintiff's two years of reported income prior to the oil spill (and the absence of any evidence to the contrary), the plaintiff could not establish that it was a "Start-up Business" for purposes of the Settlement Agreement. In addition, the plaintiff's tax returns indicate a substantial increase, rather than an economic loss, following the oil spill.

Finally, as the federal district court recently observed in its order dismissing the plaintiff's federal legal malpractice case against the defendants, Section 7.3.1 of the Settlement Agreement contained a provision wherein the three year limitations period was extended by 183 days (from May 2, 2012, when the federal court granted preliminary approval of the Economic Settlement, until November 1, 2012, when the plaintiff opted out of the Settlement Agreement) so that, even accepting *arguendo* that the OPA limitation period commenced on the day of the oil rig explosion, the plaintiff's OPA claim did not expire until at least October 20, 2013, giving

13

the plaintiff until July 22, 2013, to make a presentment. *See* "Order & Reasons" issued granting defendants' motion to dismiss and dismissing the plaintiff's claims with prejudice, *In Re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010* related to No. 14-0121, *Howell Construction, Inc. v. Andry Lerner, L.L.C. et al,* 14-0121, pp. 3-4 (E.D. La. 8/28/18), 2018 WL 4095544.

## *Conclusion*

After *de novo* review, we find that the defendants are entitled to summary judgment as a matter of law. The plaintiff failed to produce the requisite factual support for its legal malpractice claim against the defendants. Accordingly, the judgment of the district court is affirmed.

**AFFIRMED.**

| | | |
|---|---|---|
| HOWELL CONSTRUCTION, INC. | * | NO. 2018-CA-0317 |
| | * | COURT OF APPEAL |
| VERSUS | | |
| | * | FOURTH CIRCUIT |
| ANDRY LERNER, L.L.C., ANDRY LAW GROUP, L.L.C., JOHNATHAN B. ANDRY AND CHRISTINA E. MANCUSO | * | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

DYSART, J., CONCURS IN THE RESULT.