# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This Document Relates To:<br><br>No. 15-4143, 15-4146 & 15-4654 | * * * * * * | HONORABLE CARL J. BARBIER<br><br>CHIEF MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

## DECLARATION OF MICHELLE M. LA COUNT REGARDING HESI AND TRANSOCEAN ASSIGNED CLAIMS SETTLEMENT ALLOCATIONS AND DISTRIBUTION

I, MICHELLE M. LA COUNT, declare as follows:

1. I am a Senior Project Manager at Epiq Class Action and Claims Solutions, Inc.[2] (formerly an Assistant Director of Operations at Garden City Group, LLC ["GCG"]). GCG was engaged by the Court appointed Old Class Claims Administrator to assist him in implementing the Proposed HESI and Transocean Punitive Damages and Assigned Claims Class Action Settlements. Pursuant to the Court's April 12, 2016 Preliminary Approval Order as to the Proposed HESI and Transocean Punitive Damages and Assigned Claims Class Action Settlements (the "Preliminary Approval Order"), GCG was authorized to act as the Class Notice

---

[2] GCG was acquired by Epiq as of June 15, 2018 and is now continuing operations as part of Epiq.

Administrator in connection with the Settlements filed in MDL-2179.[1] The following statements are based on my personal knowledge and information provided by other experienced GCG employees working under my supervision, and, if called on to do so, I could and would testify competently thereto.

## MAILING OF THE NOTICE

2. As set forth in the Declaration of Stephen J. Cirami (the "Cirami Declaration"), 442,464 Notices were mailed by First-Class US Mail and 75,355 Email Notices were transmitted to potential Old and New Class members on June 15, 2016, after establishing a mailing list that included potential class members eligible to participate in the Assigned Claims Settlements by HESI and Transocean payable to eligible Old Class members and the Punitive Damages Settlements payable to eligible New Class members.

3. As of October 9, 2018, a total of 482,640 Notices were mailed to potential New and Old Class members.

## TELEPHONE HOTLINE

4. As more fully described in the Cirami Declaration, GCG (and now as part of Epiq) established and continues to maintain a toll-free telephone number (1-877-940-7792) and Interactive Voice Response ("IVR") system to accommodate potential Old and New Class members who have questions about the Settlements.

---

[1] All terms with initial capitalization not otherwise defined herein have the meanings ascribed to them in the HESI Punitive Damages and Assigned Claims Settlement Agreement as amended on September 2, 2015, as well as the Transocean Punitive Damages and Assigned Claims Settlement Agreement dated May 29, 2015 (the "Settlements").

2

As of October 9, 2018, GCG has received 33,068 calls to the toll-free helpline including 16,571 calls with a call center operator.

## WEBSITE

5. GCG established and is maintaining a website (www.GulfSpillPunitiveDamagesSettlement.com) dedicated to the Settlements to assist potential Old and New Class members.

6. The Old Class Claims Administrator has provided GCG with updates to post to the public website along with administrative forms, frequently asked questions, Court Status Reports, and Court Orders, including the Order Capping Individual Attorneys' Fees in the HESI and Transocean Punitive Damages and Assigned Claims Settlement Agreements [Rec. Doc. 24470].

7. GCG also established a dedicated email address, Questions@GulfSpillPunitiveDamagesSettlement.com, to assist with questions.

## PROCEDURES FOLLOWED IN COMPILING THE CLAIMS DATA FROM EXISTING CLAIM DETERMINATIONS AND ADJUSTMENTS MADE

8. <u>Initial Data Compilation</u>.  Pursuant to the direction of the Old Class Claims Administrator, GCG copied the payment data from the Deepwater Horizon Economic and Property Damages Settlement ("DHEPDS") Court Supervised Settlement Program ("CSSP") to the HESI/Transocean Distribution Database (the "Database").  The data was further adjusted as detailed below.

9. <u>Court-Appointed Neutrals' Settlements</u>.  Court-appointed Neutrals' settlement values were appended to the existing CSSP records for claims identified as withdrawn and settled with the Court-appointed Neutrals prior to final determinations being made on their claim(s) by the CSSP.  For individuals/entities that had claims settled with the Court-appointed Neutrals after the CSSP had made a final determination and for which all due process rights had already expired, the Court-appointed Neutrals' settlement value was not appended.  The process of discerning the eligible and ineligible Court-appointed Neutral settlements was performed in accordance with the Court's Order and Reasons at Footnote 6 [Rec. Doc 22252].  Exhibit A contains a list of the CSSP Claimant IDs and, as available, Claim IDs that were not appended with Court-appointed Neutrals' settlement values because the claims were no longer under the purview of the CSSP at the time of the settlement.

10. In addition, parties that settled with the Court-appointed Neutrals regarding Opt-Out and excluded party claims or reserved claim types pursuant to the terms of the DHEPDS Agreement are not eligible as these individuals and entities were not DHEPDS Class Members and their payments did not come from the CSSP or relate to a CSSP-filed claim.

11. <u>Reserve Claim Cutoff and Valuation</u>.  The Old Class Claims Administrator identified 887 claims at the time of allocation that did not have final

outcomes with the CSSP, the U.S. District Court for the Eastern District of Louisiana, or the U.S. Court of Appeals for the Fifth Circuit (collectively, the "Reserve Claims"). A list of the Reserve Claims identified by Claimant ID Number and Claim Number is appended as Exhibit B. To determine the appropriate value for the Reserve Claims, the Old Class Claims Administrator considered the following:

(a) If the CSSP completed valuing the Reserve Claim, but the claimant or BP still had available due process rights, the yet-to-be-final determined value was utilized, subject to the $150,000 maximum award for any Old Class claimant;

(b) If the DHEPDS claim was pending in one of the various available appellate processes, the proposal value submitted by the claimant on appeal was utilized, subject to the $150,000 maximum award for any Old Class claimant;

(c) If a determined value or a claimant proposal value was not available because the claim was denied in processing and/or because inadequate information existed because the Reserve Claim was still under review, the Old Class Claims Administrator determined the average payable value for the underlying claim type and applied that value to ensure an adequate reserve is available.

(d) Based on this process, the Old Class Claims Administrator determined that a reasonable, maximum valuation for these claims was $22,500,000.00, and to ensure no issues related to an undervaluation of either the Reserve Claims or any other items identified after the first installment of payments in the Old Class distribution, the Old Class Claims Administrator retained an additional 10% for a total Reserve Fund of $24,750,000.00.

12. <u>Handling of Clawbacks and Refunds to the CSSP</u>.  To the extent a claimant was subject to a clawback pursuant to an Order of the Court, that claimant's award(s) will not be deemed a payment by the CSSP and will not be eligible for inclusion in the calculation of Old Class awards.   To the extent a claimant refunded a CSSP payment or portion of a payment voluntarily, such amount will not be considered part of his/her/its distribution for purposes of calculating an Old Class award, but it will not affect eligibility with regard to any other DHEPDS payments retained by the claimant.

13. <u>Refunded Appeals Filing Fees and 6% Payment Amounts</u>. In instances where an appeal filing fee or a 6% Payment was returned by the CSSP to an individual or entity, this was not included in the DHEPDS award paid by the CSSP, if any, and will not be considered in the calculation of Old Class awards.  A total of 3,091 6% Payments were paid through the CSSP.

14. <u>Prevailing CSSP Appeal Increases/Decreases</u>.  Prevailing party increases and decreases included in the Post-Appeal Eligibility Notice will be considered in the calculation of Old Class awards.

15. <u>Parties Excluded After Initial CSSP Payment</u>.  For parties paid, but later excluded on a subsequent claim, or connected to a valid Opt-Out request, these claimants were not DHEPDS Class Members and thus cannot participate in this extension of the DHEPDS Agreement.  A list of affected claimants is appended as Exhibit C.

16. <u>Parties That Opted Out of the HESI/Transocean Settlements</u>.  Two parties opted out of the HESI/Transocean Settlements that would otherwise have been entitled to payments made under the Old Class Distribution Model.  Given their Opt-Out status, they are no longer eligible to participate.  The prior DHEPDS Claimant IDs for these two parties are noted in Exhibit D.

17. <u>Payments Compromised to be Paid Over Time</u>.  For claimants who have compromised with BP to accept payments of their claim over time, the full value of their claims to be paid by the CSSP, regardless of the distribution total issued to date, will be used for the valuation of Old Class awards.

18. <u>True-Up Payments</u>.  To the extent a true-up payment was issued to a DHEPDS Claimant, that amount will be counted toward his/her/its total CSSP payments and will be utilized to establish the eligible Old Class distribution award value.

19. <u>Eligible Old Class Members with an Associated Third-Party Claim Record</u>. The third-party claimants of record shall be paid without further follow up if the third-party claim relates to the filing or processing of the original DHEPDS claim. For other third-party claims that could be satisfied at this point, such as tax liens, child support liens, judgments, etc., the third-party claimant and the Old Class Member, or his/her/its attorney if individually represented, will be contacted for confirmation of the current third-party claim value during the pendency of the Motion for Approval of Distribution of the Assigned Claims Portion of the Halliburton Energy Services, Inc. and Transocean Ltd. Settlement Agreements and any appeal period following entry of an order approving distribution. For third-party claims that were previously paid in full based on the prior filing by the third-party claimant, the Old Class Member or his/her/its attorney will be paid directly, as appropriate.

20. <u>Eligible Old Class Members with Claims Previously Identified as Related to a Bankruptcy Proceeding</u>. The appropriate US Trustees have been contacted and, during the pendency of the Motion for Approval of Distribution of the Assigned Claims Portion of the Halliburton Energy Services, Inc. and Transocean Ltd. Settlement Agreements and any appeal period following entry of an order approving distribution, updates will be made to the claimant bankruptcy records based on responses by the US Trustees. In the event the award is disclaimed

by the Trustee, such amount shall be paid directly to the Old Class claimant or his/her attorney, as applicable.

**QUALITY ASSURANCE, FRAUD PREVENTION AND REGULATORY COMPLIANCE**

21.   <u>Fraud Prevention Measures</u>.  GCG, prior to distribution, will have reviewed the Database against its "watch list" of known potential fraudulent filers that GCG has developed throughout its over thirty years of experience as a claims administrator.  GCG works closely with the FBI to update that watch list with the latest information available.

22.   <u>OFAC Review</u>. In accordance with the regulations of the Office of Foreign Asset Control regulations and guidelines, known as OFAC, GCG will perform searches on payments to identify potential payees whose names may appear on the federal government's restricted persons list or who reside in countries to which payments are prohibited.  GCG regularly monitors changes to OFAC regulations and guidelines in connection with its distributions.

## DISPOSITION OF CLAIMS

23.   <u>Eligible Claims/Claimants</u>.  A total of 201,777[3] eligible claims for 154,674 unique claimants were identified pursuant to the compilation procedures described in Sections 8-18.

---

[3] As a result of generally including Neutrals'-settled claims as eligible for participation in the Old Class distribution, the total claim count described in this Declaration naturally exceeds the reported DHEPDS count of eligible claims because withdrawn DHEPDS claims were not counted as eligible in the DHEPDS statistics.

24. <u>Ineligible Claims/Claimants</u>. There are 2,214 claims that fell into one of the exception categories in Sections 9 and 11-16. This does not include the 887 Reserve Claims that remain pending at this time. Additionally, there were 205,601[4] claims that never qualified for a payment from the CSSP and were therefore also deemed ineligible as there was no basis upon which to calculate a *pro rata* distribution.

### ESTABLISHMENT OF THE NET SETTLEMENT FUND AND ESTIMATED INITIAL DISTIRBUTION *PRO RATA*

25. <u>Fees and disbursements</u>. The Court has previously approved payments for administrative fees and expenses totaling $7,182,501.97 to date. Of that, $6,623,799.36 has been allocated to the New Class and $558,702.61 to the Old Class, $495,637.26 of which related to notice fees and expenses and $63,065.35 of which related to claims administration. It is anticipated that the administrative fees and expenses to complete the Old Class distribution will be $1,773,400, assuming:

(a) Only one primary distribution will occur;

(b) Payments will be made for Reserve Claims as they are finalized in conjunction with monthly check reissue runs;

(c) The administrative fees and expenses reserve takes into account estimated federal taxes on interest earned and tax preparation through 2020; and

---

[4] Duplicate or otherwise inactive claimant records from the CSSP were not transferred to the Database and therefore are not included in this total.

(d) Escheatment is conducted in two rounds within one calendar year at the close of the Assigned Claims Settlements Program.

Should it be determined that adequate funds are remaining from the Reserve Fund after all eligible claims have received distribution, the Court will be petitioned for an additional distribution order at that time, which will include estimated administrative fees and expenses necessary to conduct the additional distribution. During the pendency of the distribution phase, the Old Class Claims Administrator has advised he will continue to submit invoices for Court approval on a quarterly basis as fees and expenses are accrued.

26. <u>Reserve Fund</u>. Based on these assumptions, the Old Class Claims Administrator determined that a reasonable valuation for the Reserve Fund is $24,750,000.00 after taking into account the Reserve Claims and a limited additional reserve for any items that are identified post-distribution as requiring an adjustment to an award value.

27. <u>Settlement Funds Allocated to the Old Class</u>. The Allocation Neutral allocated allocated the Old Class $337,666,750.00 of the comingled HESI and Transocean Settlement Agreements proceeds (the "Old Class Settlements' Proceeds") [Rec. Doc. 15653], which totaled $1,239,750,000.00 prior to earning interest, less any taxes due and administrative costs and fees.

11

28. <u>Inclusion of the Residuary Funds from the Insurance Proceeds Recovery Fund in the HESI-Transocean Assigned Claims Comingled Distribution.</u> As the Court has granted Co-Lead Counsel's motion [Rec. Doc. 24881] to include the remaining balance of the Insurance Proceeds Recovery Fund established by Section 5.14 of the DHEPDS Agreement [Rec. Doc 6276-1] in the amount of $32,702,270.24, plus any accrued interest, for distribution along with the Old Class Net Settlement Fund [Rec. Doc. 24887], this will be added to the Old Class Settlements' Proceeds for a total of $370,369,020.24 in aggregate proceeds from all sources (the "Old Class Aggregated Funds") prior to the addition of interest earned and payment of administrative costs and expenses and hold back of the Reserve Fund.

29. <u>Estimated Comingled Net Settlement Fund</u>. After the addition of interest earned and estimated to be earned on the Old Class Aggregated Funds and the residuary balance of the Insurance Proceeds Recovery Fund, as well as deduction of: (1) Old Class invoices approved by the Court in the amount of $558,702.61 that have previously been paid, (2) the estimated future administrative costs and expenses in the amount of $1,753,400.00[5], (3) tax preparation costs and taxes paid by the HESI and Transocean Settlements' Funds to date, (4) payment of estimated

---

[5] It is notable that through careful planning and execution of the most efficient and simplified process possible, the Old Class Claims Administrator will complete the notification phase, claims data transfer, claims data analysis, adjustments pursuant to the Old Class Distribution Model, and the distribution to the Old Class at a cost of just over one-third of the interest earned on the Old Class Proceeds, thus making 100% of the Old Class Proceeds plus nearly two-thirds of the interest earned available for distribution to the Old Class.

future tax preparation costs in the amount of $20,000.00 [6], and (5) the $24,750,000.00 Reserve Fund, the Net Settlement Fund value is $349,900,217.46 for the Old Class. This amount will be subject to adjustment once actual interest earned is added to the Old Class Aggregated Funds. Then, the full share of the Old Class allocated funds from the HESI and Transocean escrow accounts will be transferred to the HESI-Transocean Assigned Claims Comingled Distribution account pursuant to the Order entered by the Court authorizing this action [Rec. Doc. 24887].

30. <u>Estimated *Pro Rata*</u>. A minimum payment value of $100 was approved by the Court in the Old Class Distribution Model as part of the Court's Order and Reasons [Rec. Doc. 22252]. Therefore, all Old Class Members who received a payment awarded by the CSSP in any amount will receive a minimum Old Class payment of $100.00. Additionally, pursuant to the Old Class Distribution Model, payments will be limited to a maximum of $150,000.00. These determinations are subject to the adjustments described in the processing procedures highlighted in Sections 8-19. A total of 35,481 eligible claimants are anticipated to receive the minimum payment of $100.00[7], and 138 are expected to receive the maximum

---

[6] It was confirmed with the tax preparer that no additional tax payments will be required given the expense offset for future costs related to the upcoming distribution.

[7] When estimating the *pro rata*, DHEPDS claimants with an aggregate payment for all paid claims of $4,776.93 or less are anticipated to receive the minimum payout of $100. This will adjust slightly once actual interest for October and November 2018 are included.

13

payment of $150,000.00[8], with all other eligible claimants receiving a *pro rata* share of the remaining funds based on the claimant's prior aggregate CSSP award payments. Based on the estimated Comingled Net Settlement Fund value of $349,900,217.46, the estimated *pro rata* is 2.2233425%.

## DISTRIBUTION TAX REPORTING

31.  IRS Forms W-9 Required.  Attorneys receiving a payment in any claim category with aggregate payments exceeding $600 and Old Class members receiving a distribution of $600 or more in the aggregate across any of the reportable claim categories listed below must receive an IRS Form 1099-MISC:

(a) Individual Economic Loss;

(b) Individual Periodic Vendor/Festival Vendor;

(c) Business Economic Loss;

(d) Start-Up Business Economic Loss;

(e) Failed Business Economic Loss;

(f) Seafood Compensation (all categories except Oyster Leaseholders);

(g) Subsistence; and

(h) VoO Charter Payments.

In order to facilitate accurate tax reporting, an IRS Form W-9 that matches the name and social security number or name and employer identification number issued by

---

[8] When estimating the *pro rata*, DHEPDS claimants with an aggregate payment for all paid claims of $6,731,771.35 or more are anticipated to recieve the maximum payout of $150,000.  This will adjust slightly once actual interest for October and November 2018 are included.

the IRS must be on file with the Old Class Claims Administrator prior to payment being issued, or the claimant's award may be subject to backup withholding.

32. <u>IRS Backup Withholding</u>.  For individuals and entities that have previously been identified by the IRS as having provided inaccurate information to the CSSP and to whom an IRS "B" Notice was issued by the CSSP pursuant to the request of the IRS, backup withholding of 24% may be paid to the IRS on the claimant's behalf.  In his sole discretion, the Old Class Claims Administrator may opt to withhold the 24% backup for eligible claimants for whom the IRS has confirmed the information provided to the CSSP is inaccurate and who have not responded to the HESI/Transocean Settlements Program notices requesting an updated W-9; alternately, the Old Class Claims Administrator may opt to hold the payments and allow the claimant to respond within 30 days of the occurrence of the initial distribution.

33. <u>Issuance of Forms 1099-MISC</u>.  IRS Forms 1099-MISC will be issued as per the IRS deadline of January 31 of the year following the distribution.  Each law firm that receives payment(s) on behalf of its client(s) and each claimant that has received at least $600 in the aggregate among reportable claim categories noted above will receive an IRS Form 1099-MISC.

**PROPOSED DISTRIBUTION ORDER**

34. The Settlement Administrator respectfully requests the Old Class Claims Administrator petition the Court for an Order approving the following to allow GCG and other vendors to take the actions specified, under the direction and supervision of the Old Class Claims Administrator:

(a) Creation of a new, commingled Qualified Settlement Fund in the name of "HESI-Transocean Assigned Claims Combined Settlements Fund" with a distinct employer identification number;

(b) Establishing a distribution account with Huntington Bank such that funds will be secured by United States Government-backed Treasury instruments in the name of the HESI-Transocean Assigned Claims Combined Settlements Fund for the purpose of conducting the Old Class distribution;

(c) Funding the HESI-Transocean Assigned Claims Combined Settlements Fund with 27.2366808% of the proceeds from the HESI and Transocean Settlement Funds currently held in escrow by UBS (the "Escrow Agent"), plus a proportional share of the interest earned as of September 30, 2018, to create the comingled fund for distribution by transferring these funds from the Escrow Agent to Huntington Bank via wire transfer on or after October 1, 2018, at such time as the Court's Order approving the Motion for Approval of

Distribution of the Assigned Claims Portion of the Halliburton Energy Services, Inc. and Transocean Ltd. Settlement Agreements is final;

(d) Establishing the administrative expense and cost reserve of $1,753,400.00 to be held back from the initial distribution;

(e) Establishing the tax return preparation reserve of $20,000.00 to be held back from the initial distribution;

(f) Establishing the Reserve Fund holdback of $24,750,000;

(g) Making any final updates to the estimated *pro rata* included in Section 30 based on the final value of funds available or changes to eligible claims pursuant to the methodology stated herein without further approval of the Court as long as the adjustment to the *pro rata* is 0.5% or less;[9]

(h) Approving the Old Class Claims Administrator's claim determinations made pursuant to the methodology established based upon the Court's Order and Reasons (Rec. Doc. 22252), which included approval of the Old Class Distribution Model as discussed in Sections 8-20 above;

(i) Issuing payments via wire or check in the same manner as previously paid by the CSSP to eligible Old Class members, with the exception of claims included on the Reserve Claims list, upon an Order of the Court approving distribution being final; however, reserving unto the Old Class Claims

---

[9] An adjustment up to 0.5% will have a net effect of $750 or less, even at the maximum payment of $150,000.

Administrator the authority to hold back payments for (1) individuals/entities with missing, incomplete, or inaccurate IRS Forms W-9 or, in the Old Class Old Class Claims Administrator's discretion, to withhold 24% of the payment for forwarding to the IRS as backup withholding, (2) unresolved liens/third party claims, or (3) unresolved issues surrounding the rights of a trustee in bankruptcy to the award or part of the award;

(j) Reissuing checks on a monthly basis along with first time payments for eligible Reserve Claims that have been resolved in the month prior; initial payments will be made consistent with the methodology stated herein and the *pro rata* applied to all distributions in the initial Old Class distribution;

(k) Issuing IRS Forms 1099-MISC to attorneys and paid Old Class Members with reportable distributions and filing the same information with the IRS annually until distribution is complete;

(l) Retaining the Court's jurisdiction over the HESI-Transocean Assigned Claims Combined Settlements Fund and the Reserve Fund; should the Old Class Claims Administrator determine a residual distribution is necessary, the Old Class Claims Administrator shall file a motion with the Court for approval; and

(m) Requiring the Old Class Claims Administrator to close the HESI-Transocean Assigned Claims Combined Settlements Fund account one calendar year

after issuance of the final eligible Reserve Claim check, further ordering accelerated escheatment of any residual funds to the states by the Old Class Claims Administrator at that time, unless a residual distribution order is pending with or entered by the Court prior to closure of the account.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Franklin, Wisconsin, on October 30, 2018.

_____
Michelle M. La Count