# Exhibit 30

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


- - - - - - - - - - - - - - x
IN RE:                      :
                            :
NAUSSERA N. ZADEH           :  Case No. 8:10-bk-04517-CPM
                            :
        Debtor              :  Chapter 13
- - - - - - - - - - - - - - x
NAUSSERA N. ZADEH           :  Adv. No. 8:12-ap-00771-CPM
        Plaintiff           :
v.                          :
KENNETH R. FEINBERG, et al  :
        Defendants          :
- - - - - - - - - - - - - - x


                            U.S. Courthouse
                            801 North Florida Avenue
                            Tampa, Florida 33602
                            Held December 5, 2012


TRANSCRIPT OF HEARING

[Re: 8:10-bk-04517]
1-Debtor's Motion for Objection to Claims #8 of
Pinellas County Tax Collector and Claims #12, #13 and
#14 of Investment 2234 (Doc. #105); Responses Doc.
#136, #137); 2-Objection to Claim #11 of Brian
and Debra Bolves, filed by Debtor Naussera N. Zadeh
(Doc. #120; Response Doc. #131)
*[FULL NATURE OF PROCEEDINGS CONTINUED ON NEXT PAGE]*


BEFORE THE HONORABLE CATHERINE PEEK McEWEN
UNITED STATES BANKRUPTCY JUDGE


PROCEEDINGS DIGITALLY RECORDED BY COURT PERSONNEL
TRANSCRIPT PRODUCED BY COURT-APPROVED TRANSCRIPTION SERVICE

---

**JOHNSON TRANSCRIPTION SERVICE**
7702 Lake Cypress Drive
Odessa, Florida 33556
(813) 920-1466

Case 2:16-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 3 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 2 of 81

2

*[FULL NATURE OF PROCEEDINGS CONTINUED FROM PREVIOUS PAGE]*

[Re: 8:12-ap-00771]
Request to Reissue Summons in an Adversary
Proceeding Issued on Defendants by Error of the
Clerk of Court, filed by Plaintiff Naussera N.
Zadeh; Modified on 10/10/2012 (Doc. #3)

Case 2:16-md-02179-CJB-DPC   Document 25227-312   Filed 12/17/18   Page 4 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 3 of 81

3

APPEARANCES:

| | |
|---|---|
| For the Debtor | TIMOTHY B. PERENICH, Esquire<br>The Perenich Law Firm<br>25749 U.S. Highway 19 North<br>Suite 200<br>Clearwater, Florida 33763<br>727-669-2828<br>timothy@perenichlaw.com |
| For Jon Waage<br>Chapter 13 Trustee | KELLY M. BALLARD, Esquire<br>SARAH K. OLSEN, Esquire<br>Jon Waage Chapter 13<br>Trustee's Office<br>P.O. Box 25001<br>Bradenton, Florida 34206-5001<br>941-747-4644<br>kelly.ballard@tampa13.com<br>sarah.olsen@tampa13.com |
| For the Pinellas County<br>Tax Collector | WILLIAM C. FALKNER, Esquire<br>SARAH RICHARDSON, Esquire<br>County Attorney's Office<br>315 Court Street #6<br>Clearwater, Florida 33756<br>727-464-3354<br>srichardson@co.pinellas.fl.us<br>bfalkner@co.pinellas.fl.us |
| For Pinellas County<br>Property Appraiser | CHRISTINA LEBLANC, Esquire<br>Pinellas County Property<br>Appraiser's Office<br>P.O. Box 1957<br>Clearwater, Florida 33757-1957<br>727-464-3207 |
| For Brian & Debra Bolves | MARSHA G. RYDBERG, Esquire<br>The Ryderg Law Firm P.A.<br>701 S. Howard Avenue<br>Suite 106-334<br>Tampa, Florida 33606-2473<br>813-221-2800<br>mrydberg@rydberglaw.com |

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 5 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 4 of 81

4

```
APPEARANCES:
(continued)

For Gulf Coast Claim          ERIC S. ADAMS, Esquire
Facility (GCCF) and           Shutts & Bowen, LLP
Kenneth Feinberg,             3201 W. Boy Scout Blvd.
its administrator             Suite 300
                              Tampa, Florida 33607
                              813-227-8122
                              eadams@shutts.com

Also Present                  NAUSSERA N. ZADEH
                              428 Pasaje Avenue
                              Tarpon Springs, Florida 34689
                              727-505-2734
```

Case 2:16-md-02179-CJB-DPC   Document 25227-31   Filed 12/17/18   Page 6 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 5 of 81

5

```
 1                    P R O C E E D I N G S

 2           (Proceedings commenced at 4:10 p.m.)

 3           COURTROOM CLERK:  Naussera Zadeh, Case No.

 4    10-4517, Adversary 12-771.

 5           THE COURT:  All right.

 6           MR. PERENICH:  Good afternoon, Your Honor.

 7    Tim Perenich for the Debtor, who is here present.

 8           THE COURT:  All right.

 9           MR. ZADEH:  Good afternoon, Your Honor.

10           THE COURT:  Good afternoon.  I was just thinking

11    about you yesterday, when I opened the paper and I saw the

12    article about converting the greenbelted land to this new

13    development that they're doing, or whatever it was, that

14    they said that the county would receive tax money now,

15    instead of the small amount of greenbelt.

16           So I thought:  Oh, I wonder what happened to that

17    case.  And then here you are.  Okay, I'll take appearances

18    from the other side.

19           MR. FALKNER:  Bill Falkner, Pinellas County Tax

20    Collector, Your Honor.

21           THE COURT:  All right, thank you.

22           MS. LEBLANC:  Christina LeBlanc, for Pinellas

23    County Property Appraiser.

24           THE COURT:  Thank you.

25           MS. RICHARDSON:  Sarah Richardson for the Pinellas
```

Case 2:16-md-02179-CJB-DPC Document 25227-312 Filed 12/17/18 Page 7 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 6 of 81

6

1    County Tax Collector.

2              THE COURT:  Thank you.

3              MS. RYDBERG:  Are you just wanting appearances on

4    an adversary or appearances in the case?

5              THE COURT:  Everything.

6              MS. RYDBERG:  Marsha Rydberg on behalf of Debra

7    and Brian Bolves.

8              THE COURT:  All right, thank you.

9              COURTROOM CLERK:  What's the last name?

10             THE COURT:  B-o-l-v-e-s.  V, as in Victor.  And?

11             MR. ADAMS:  Good afternoon, Your Honor.  Eric

12   Adams, with Shutts & Bowen, on behalf of the GCCF, which

13   is the Gulf Coast Claims Facility, and Kenneth Feinberg,

14   its administrator.  Service hasn't been perfected, so I'm

15   making a special appearance on their behalf.

16             THE COURT:  Okay.

17             MR. ADAMS:  Thank you, Your Honor.

18             THE COURT:  Thank you.

19             MS. BALLARD:  Kelly Ballard on behalf of the

20   Chapter 13 Trustee.

21             THE COURT:  Thank you.  Well, where do we

22   start?

23             MR. PERENICH:  Your Honor, perhaps as a

24   preliminary matter, I should bring to the Court's

25   attention that yesterday, I did file a Motion to Withdraw.

Case 2:16-md-02179-CJB-DPC Document 25237-12 Filed 12/17/18 Page 8 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 7 of 81

7

1   I don't know if the Court wants to hear that up front or

2   at the conclusion or at another date, but I thought it might

3   be relevant.  I thought it might be worth disclosing that,

4   in case it --

5          THE COURT:  Well, you know, our local rules give

6   the client the benefit of a ten-day window, or 14-day, or

7   whatever it is.  Seven days.

8          MR. PERENICH:  Okay.  I did provide him a copy,

9   and he has it, so --  and even if the Court were inclined to

10  allow me to withdraw, Mr. Zadeh did ask that I ask the Court

11  for a continuance so that he could retain other counsel in

12  this case.

13         THE COURT:  Who filed the Objections to the

14  Claims?

15         MR. PERENICH:  The Objections to Claims that

16  were filed back in 2011 were filed by Mr. Zadeh.  He filed

17  various objections and motions since September of this year,

18  some -- I think it was some 14 docket entries, and I'll

19  count them.  I enumerated them in my motion.

20         THE COURT:  I see that.  I'm just trying -- the

21  ones that were noticed today.  Okay, this was -- this was

22  filed by Mr. Zadeh.

23         MR. PERENICH:  (Counting docket entries.)  Excuse

24  me, eleven.  It looks like eleven docket entries.

25         THE COURT:  Uh-huh.  Well, what are we going to do

Case 2:16-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 9 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 8 of 81

8

1   here today?  Do I -- tell me more about -- tell me some more

2   about the mediation.

3          MR. PERENICH:  We had mediation, I think it was

4   back in May.

5          THE COURT:  And who was the mediator?

6          MR. PERENICH:  Jay Verona.

7          THE COURT:  And that was -- there was an agreement

8   struck?

9          MR. PERENICH:  We believed we had an agreement.

10  Everybody signed off of it.  Most of the counsel here today

11  were present there.  So I think they can certainly speak to

12  that, that we all thought we had an agreement.  I thought we

13  had an agreement.  And then, the next thing I know, various

14  other papers are filed in the case.

15         THE COURT:  Okay.  The agreement is initialed by

16  everybody?  And Mr. Zadeh included?

17         MR. PERENICH:  He signed it, yes.

18         THE COURT:  Okay.  Well, why don't we just --

19  Mr. Zadeh, the reason we send you to mediation is to strike

20  a deal.  You struck a deal.  You don't like the deal, you

21  still struck a deal.

22         MR. ZADEH:  Your Honor, at the time that they gave

23  me the deal, if you'll read through the whole thing, I was

24  not informed of the legal effects of literally giving away

25  every single rights that I had on the property, including

Case 2:10-ad-82179-CJB-PPC Document 25227-31 Filed 12/17/18 Page 10 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 9 of 81

9

1    the exemptions.

2            And there was the issue of several cases --

3    including, as you heard last time, criminal proceedings to

4    be voided, and it was signed off by the counsels.  And we

5    understand at the last hearing, they had no authority under

6    their jurisdiction, to agree.

7            And I have retained two legal counsels, as

8    you asked me to, and to look through these whole entire

9    proceedings.  There was no criminal proceeding whatsoever.

10   There was a civil matter, and the civil matter was

11   violations of the automatic stay.

12           And last time that we were in here, it was

13   mentioned that the counsels in here, they had nothing to

14   do with that department, nor the State of Florida.

15           And they signed an agreement for me to go

16   forward to void those orders, to receive my tax benefits of

17   the agricultural exemptions and violations of the automatic

18   stay, and filed preferable -- people were saying that they

19   had nothing to do with that department and they were not

20   authorized to do so.

21           So that order, according to the constitution,

22   is void.  First, I was not told of the legal ramifications

23   of what I was signing.  I never read it.  They had me to

24   sign it.

25           THE COURT:  You can't -- what do you mean you

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/06/16 Page 11 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 10 of 81

10

1   never read it?  You're presumed to have read it.

2          MR. ZADEH:  I did not presume to read it because

3   I was not present at the mediation.  I was sitting in a

4   different room.  I had no idea what all the legal effects

5   of this whole thing was, and --

6          THE COURT:  Did you ask your client -- I mean,

7   your lawyer?

8          MR. ZADEH:  I was told this is the best that

9   they can do for me and nothing else, and the best -- it was

10  including for me to void all the criminal proceedings.  And

11  we find out there were no criminal proceedings.  There was

12  no criminal proceedings under statute, which is the

13  jurisdiction of --

14         THE COURT:  There were administrative proceedings.

15         MR. ZADEH:  They were not criminal.  They were

16  civil.

17         THE COURT:  I thought that you were charged

18  with some sort of contempt or something, for every day you

19  brought a cow on your property.

20         MR. ZADEH:  If they were -- well, we have -- the

21  Property Appraiser has all the legal documentation and all

22  the legal statutes and applications for classification of

23  exemption of the land.  And there was the legal documents

24  that property had never been rezoned from agricultural to

25  non-agricultural according to the statutes, and I was

Case 2:10-md-02179-CJB-DPC Document 25827-31 Filed 12/06/16 Page 11 of 81
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 11 of 82

11

1    entitled to the agriculture exemption.

2            But, however, they have contacted the Pinellas

3    County, which according to them is completely a different

4    department because the State of Florida --

5            THE COURT:  No.  You're not -- don't tell me the

6    background.

7            MR. ZADEH:  Right.

8            THE COURT:  Didn't you -- didn't you tell me

9    before that you were going to be in peril of something if

10   you didn't -- if you put the cows back on the land?

11           MR. ZADEH:  I was told if I would disobey

12   the order, then I would be in contempt of court.  But

13   according to what I just find out, according to the legal

14   representation that I have, there is no such an order

15   pending because there was no statute authority under that,

16   at the time, that I must abate farming because I was legally

17   standing a legal -- operating a legal farm --

18           THE COURT:  So you're saying there is no order.

19           MR. ZADEH:  They just said abate farming.  And

20   abate farming, there was nothing that's attached, and

21   adjudication was these holds.

22           THE COURT:  Okay.

23           MR. ZADEH:  And now they are permitting me --

24           THE COURT:  Okay.

25           MR. ZADEH:  -- they're saying I can have any other

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 13 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 12 of 81

12

1    agricultural activity in the property except --

2              THE COURT:  You --

3              MR. ZADEH:  There is no such statute in the

4    Florida statutes saying that you can have any agricultural

5    activity except --

6              THE COURT:  All right.  I'll tell you what I'm

7    going to do.

8              MR. ZADEH:  Yes.

9              THE COURT:  I'm going to -- I think I should

10   abstain from these objections and let you litigate them in

11   State Court.

12             MR. ZADEH:  Your Honor, because of the violation

13   of the automatic stay is committed, I've retained legal

14   counsel to look --

15             THE COURT:  Well, that's different.  That's a

16   Motion for Sanctions.  I'm talking about these Objections to

17   Claims.  I really think that they should be litigated in

18   State Court.

19             MR. ZADEH:  Well, Your Honor, we request if I

20   would have my current legal representation, which are the

21   state specialists --

22             THE COURT:  Who is this?

23             MR. ZADEH:  I do have Mr. Larry Crow.  He's a land

24   trust lease attorney.  He's already filed several papers

25   against Pinellas County.  They're being served or in process

Case 2:10-md-02179-CJB-DPC Document 25827-31 Filed 12/06/16 Page 13 of 81
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 14 of 82

13

 1   of being served --

 2          THE COURT:  Okay.

 3          MR. ZADEH:  -- at your recommendation.  And I do

 4   have a criminal attorney, which is a partner with Larry

 5   Crow, to look into the whole case, and to look at it with

 6   absolutely no criminal proceeding.  I've never been charged.

 7   There was no such law --

 8          THE COURT:  Well, then you should be happy about

 9   that.

10          MR. ZADEH:  Yes, Your Honor, but also at the same

11   time, that deprives my constitutional rights.  I've been

12   deprived of my agricultural exemption of lands.  Now, this

13   is a state case.  It's not only -- one person in the entire

14   state cannot be denied A.G., and every other members of the

15   class be given the same status.

16          THE COURT:  Well, you can litigate that.  Now,

17   how do we -- maybe I should ask your attorney, Mr. Perenich.

18   What is the purpose of the 13?  What was the original goal?

19   Is there a reason to keep the 13 here, is what I'm getting

20   at?

21          MR. PERENICH:  Presently, I don't think that there

22   is.  This is the second case.  The first case was filed at

23   the end of 2007 on the brink of foreclosure.  That case

24   dismissed, I think it was some time in late 2009, and was

25   re -- we refiled on February 26, 2010.

Case 2:10-md-02179-CJB-DPC Document 25827-31 Filed 12/17/19 Page 15 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 14 of 81

14

1        I've pulled the Trustee's docket.  I just showed

2   it to Ms. Ballard.  All of the claims have been paid but for

3   the continuing adequate protection payment to Mr. Bolves,

4   the holder of the first mortgage.

5        So if that paper is to be relied upon -- and it

6   looks like it's -- the numbers seem to work, then he's

7   current.  He's current on the first mortgage.  And all of

8   the claims that have been allowed in this case have been

9   paid.

10       So the thing that's keeping this case open are the

11  recent motions, and he also filed an Adversary Proceeding,

12  and counsel's here to talk about having entered a special

13  appearance about that case against the Claims Administrator.

14       THE COURT:  Right.  I thought that I -- and when

15  we were here last, didn't I deny that motion?

16       MR. PERENICH:  I don't believe the Court heard

17  that motion --

18       COURTROOM CLERK:  You did.

19       MR. PERENICH:  That particular --

20       THE COURT:  I did.

21       MR. PERENICH:  There was a motion, but I think

22  that counsel's here about the adversary proceeding that was

23  filed.

24       THE COURT:  Oh, okay.  Let me look and see what

25  we've got here.  Let me find the confirmation order and the

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 16 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 15 of 81

15

 1    order allowing claims, et cetera.

 2          COURTROOM CLERK:  The order confirming plan is 51.

 3    53 is an order allowing and disallowing.

 4          MS. BALLARD:  Ironically, what you'll note, Your

 5    Honor, is that originally I think the order allowing and

 6    disallowing indicated -- Kelly Ballard for the record.

 7    Indicated that some of these unsecured claims were going

 8    to receive distribution:  3, 4, 6, 7, 9, and 10.

 9          And after the order allowing and disallowing was

10    entered, then Mr. Perenich actually objected to those

11    claims.

12          MR. PERENICH:  Mr. Zadeh filed the objections.

13          MS. BALLARD:  I apologize.

14          MR. PERENICH:  Okay.

15          MS. BALLARD:  An objection was filed by someone.

16          MR. PERENICH:  Various objections.  And the time

17    period ran on those and I submitted the proposed orders and

18    they were granted and sustained.

19          MS. BALLARD:  Yeah.  But, I mean, I'm a little

20    concerned about that because they were done -- now I'm

21    seeing -- after the order allowing and disallowing.

22          THE COURT:  What does the code or the rules

23    say about the deadline for objecting to claims?

24          MS. BALLARD:  Well, the -- I think the order

25    establishing duties actually indicates that the objection

Case 2:10-md-02179-CJB-DPC Document 25237-31 Filed 12/17/18 Page 17 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 16 of 81

16

1    needs to be filed within 30 days of the claims bar date, if

2    I recall what the order establishing duties says correctly.

3              MR. ZADEH:  And, Your Honor, you had extended

4    the time because I filed other motions.  And one particular

5    motion, I had them to separate and file them separately.

6    That was the extension that you allowed me to have.

7              THE COURT:  You mean you filed one before

8    confirmation that was an omnibus objection, all together,

9    and then --

10             MR. ZADEH:  I had filed objections during the time

11   period which you allowed me after the confirmation, and I

12   filed them in one particular motion, and you asked me to

13   undo and unbundle them.

14             THE COURT:  Wait.  Did you file them before

15   confirmation?

16             MR. ZADEH:  No.

17             THE COURT:  File the objections?

18             MR. ZADEH:  No.

19             THE COURT:  Well, now I've got two final orders,

20   neither of which was appealed, and it was improper for me to

21   do that.  The deadline was set in my original order.  The

22   deadline was whatever the order says.

23             MS. BALLARD:  Sorry, Your Honor.  I just realized

24   that as we were sitting here.  I just realized that, you

25   know, that order came after -- the disallowance came after

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 18 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 17 of 81

17

 1    the order allowing.

 2              THE COURT:  Okay, why -- okay.  What was the basis

 3    of the objections?  You didn't use the charge cards?

 4    Capital One?

 5              MR. ZADEH:  Those were not the individuals who

 6    actually had, or proved that they had received, or they had

 7    purchased those claims.  They were not their claims.  That

 8    was the reason of the objections.

 9              THE COURT:  Let's see here.  (Reviewing

10    documents.)  Well, Mr. Perenich, you did file some of these.

11    You objected to Roundup.

12              MR. PERENICH:  I did, as I recall.  I'll have to

13    look at the docket.  That might have been the only one, and

14    I think that was --

15              THE COURT:  And that was late.  But it was pre-

16    confirmation.  I think.

17              MR. PERENICH:  I apologize.  It --

18              THE COURT:  It was pre-confirmation.

19              MR. PERENICH:  It goes back a ways.

20              THE COURT:  Well, the objections were filed and

21    I've entered orders, so --

22              MR. ZADEH:  With respect, Your Honor, I believe

23    every single objection was made based on production of the

24    *prima facie* evidence.  We requested for production of *prima*

25    *facie* evidence.  It was not produced, and I'll --

Case 2:10-md-02179-CJB-DPC Document 25827-31 Filed 12/17/19 Page 19 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 18 of 81

18

1          THE COURT:  Well, you asked for something -- did

2     they make a demand on you?  Because you --

3          MR. ZADEH:  No.

4          THE COURT:  Well, it looks like you were asking

5     them for proof under the Fair Debt Collection Practices

6     Act --

7          MR. ZADEH:  Correct.

8          THE COURT:  -- which isn't triggered until a debt

9     collector demands payment.

10          MR. ZADEH:  Well, they were payments demanded --

11     they were requested due to bankruptcy.

12          THE COURT:  Due to the bankruptcy.  They can't

13     request due to the bankruptcy.

14          MR. ZADEH:  Well, I do have some paperworks that

15     shows the amount of payment due in bankruptcy, if I want to

16     continue our other issue here.

17          THE COURT:  You mean apart from the proof of

18     claim?

19          MR. ZADEH:  Yes.

20          THE COURT:  Then that would be a stay violation.

21          MR. ZADEH:  If they have violated during the

22     bankruptcy, they requested for payments and sent me letters

23     after, that would be a bankruptcy issue.

24          THE COURT:  This had -- you can't say that

25     the failure to respond to a rogue letter is a ground for

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 20 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 19 of 81

19

 1    objecting to a claim.  And this was not done on negative

 2    notice.

 3             MR. ZADEH:  And those claims, Your Honor, they

 4    were not their claims.

 5             THE COURT:  What we did is we sent out notice --

 6    well, on Claim 10, IC Systems, what do you mean it's not

 7    their claim?

 8             MR. ZADEH:  Those Systems, that they are filing,

 9    they have -- they were manager's claims.  They did not have

10    -- it is not an individual or the parties to the claims

11    processing.

12             THE COURT:  They can do that.  IC Systems on

13    behalf of Endodontic Associates.

14             MR. ZADEH:  We have requested for proof.  We have

15    requested that the proof that this --

16             THE COURT:  Okay.

17             MR. ZADEH:  -- that they are actually owed.

18             THE COURT:  Well, the notice went out from the

19    court.  It gave them 30 days to file something, and they

20    chose not to.  Ms. Ballard?

21             MR. ZADEH:  Yes, Your Honor.

22             THE COURT:  Okay.  So there are only a few claims

23    left, right?

24             MS. BALLARD:  That's the thing, Your Honor.  With

25    the disallowance of those claims--

Case 2:16-md-02179-CJB-DPC Document 25227-31 Filed 12/06/16 Page 20 of 81
Case 8:12-ap-00771-CPM Doc 32 Filed 12/17/18 Page 21 of 82

20

1          THE COURT:  And you --

2          MS. BALLARD:  -- as Mr. Perenich indicated, it

3    appears that, except with respect to the ongoing payment on

4    Ms. Rydberg's clients' claim, that all the other claims have

5    been paid, because the arrearage on Ms. Rydberg's clients'

6    claim appears to have been paid.  And the Tax Collector's

7    claim that was provided for in the order confirming plan --

8          THE COURT:  Has been paid.

9          MS. BALLARD:  Have been paid.  There may be other

10   claims that have not been paid to the Tax Collector, but the

11   one that was in the order confirming plan, has been paid.

12         THE COURT:  Okay.  So how can you object to the

13   Tax Collector's Claim 8 when the Tax Collector has been

14   paid?

15         MR. ZADEH:  Your Honor, at the time that the

16   Trustee had gone forward and paid those taxes, and that

17   by the time that I received that notice from the Court, we

18   have discovered in that process that the proceedings on

19   the State Court or the County Court for abate farming was

20   unconstitutional, and that order, as it stands, is a void

21   order.  And because of the void order, I cannot submit

22   myself to the excess in taxation for the issue -- which it

23   was issued by a court back in 2009 and '10.

24         THE COURT:  Okay.  Well, you can make demand in

25   State Court for a refund.  That's what you can do.  I'm

```
1    going to overrule the objection without prejudice to you to

2    pursue a refund in State Court or administratively, however

3    it is that it's supposed to be done.

4              MR. ZADEH:  May I ask you a question, Your Honor?

5              THE COURT:  And you may also sue for damages if

6    you have a cause of action.

7              MR. ZADEH:  But concerning the Bankruptcy Court,

8    Your Honor, if they are violating the automatic stay in the

9    Civil Court, that becomes a bankruptcy issue.

10             THE COURT:  Correct.  So your Motion for Sanctions

11   is different.

12             MR. ZADEH:  Yes, Your Honor.

13             THE COURT:  That's different.  Is there one

14   pending, Ms. Garcia?

15             MR. ZADEH:  No, we have not filed --

16             COURTROOM CLERK:  I don't think so.

17             MR. ZADEH:  -- any proceeding yet because of

18   the --

19             THE COURT:  Okay.

20             MR. ZADEH:  -- result of the investigation by the

21   legal counsels.

22             THE COURT:  Okay.  When -- you know, as long as

23   your case is open, you can file a Motion for Sanctions if

24   there are grounds to do that.

25             MR. ZADEH:  Thank you, Your Honor.
```

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 23 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 22 of 81

22

1    THE COURT:  It looks like you are also asking

2    me to vacate a Circuit Court order with respect to the

3    Bolveses.  And I guess we -- what we did is we construed

4    that to be an objection to Claim No. 11.  You may have --

5    MS. RYDBERG:  Your Honor, there is an objection

6    to Claim No. 11 that was filed *pro se* by the Debtor.

7    THE COURT:  But what I'm looking at is it's titled

8    something different.

9    MS. RYDBERG:  Yes.

10    THE COURT:  It's titled -- it's titled Motion to

11    Vacate the Order of the Circuit Court, Void Order, and Final

12    Judgment, Void Order, Notice of Affidavit.

13    MS. RYDBERG:  Yes, Your Honor, but there's --

14    THE COURT:  It's not titled as an Objection to

15    Claim.

16    MS. RYDBERG:  I think there might be one.  There

17    is --

18    THE COURT:  We treated it like that.

19    MS. RYDBERG:  There is something that was filed.

20    I think it is Docket 120.

21    THE COURT:  That's it.  That's what I'm reading

22    from.

23    MS. RYDBERG:  The Motion was Objection to Claim

24    Number.  What I'm looking at is Motion of Objection to the

25    Claim No. 11.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 24 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 23 of 81

23

1          THE COURT:  My 120 says Motion to Vacate the Order

2    of the Circuit Court, Void Order, and Final Judgment, Void

3    Order, Notice of Affidavit.

4          MS. RYDBERG:  Okay.

5          MS. BALLARD:  It's Document No. 121 here.

6          MS. RYDBERG:  Well, maybe it's 121 on hers.

7    I might have mis -- try 121, Judge.

8          MS. BALLARD:  Well, Your Honor, on the docket

9    I have -- and the numbers are out of order -- 121 is

10   the Motion to Vacate, and 120 is the Objection to Claim

11   No. 11.

12         THE COURT:  Okay.  This is what's happened.

13   Ms. Garcia, when you call up 121 and 120, they both say

14   the same thing.  They both have the same headline.  They

15   both say the same thing.  Print me out both of those,

16   please, with the banner on it, so I can show people what

17   I'm looking at.

18          I think I'm going to overrule your objection on

19   the Bolves, without prejudice, for you to seek relief in the

20   State Court, and at such time as you get that relief, you

21   can come back and --

22         MS. RYDBERG:  May I be heard on the Bolves?

23         THE COURT:  Well, I've just overruled his

24   objection.

25         MS. RYDBERG:  Okay.  But we already have a

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 25 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 24 of 81

24

1   judgment in the State Court, is the only thing I was going

2   to say.

3           THE COURT:  I know that, but he says he wants me

4   to declare it void.

5           MS. RYDBERG:  Oh.

6           THE COURT:  I can't.

7           MS. RYDBERG:  I got it.  I understand now.

8           THE COURT:  You may go to State Court and if --

9           MR. ZADEH:  Yes, Your Honor.

10          THE COURT:  See, right -- the reason why she's

11  made a point of saying it's a final judgment, I have to

12  respect final judgments of the State Court under the Full

13  Faith and Credit Act and under the Rooker-Feldman doctrine.

14          In fact, I don't even have the power -- I have no

15  judicial power to second guess what they did over there --

16          MR. ZADEH:  Yes, ma'am.

17          THE COURT:  -- wherever it was.  I have no

18  judicial power.  You may go there and you can go to those

19  judges --

20          MS. ZADEH:  Yes, Your Honor.

21          THE COURT:  -- and say that you want some relief.

22          MR. ZADEH:  Your Honor, based on that

23  recommendation, I have already done that.

24          THE COURT:  Okay.

25          MR. ZADEH:  I have a counsel, he's already working

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 26 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 25 of 81

25

1   on it, he already filed -- and he had me to go file that *pro*

2   *se*, but he's going to take over to appear in the State Court

3   for the same purpose.  And they are being served, those

4   paperworks.

5              THE COURT:  Okay.  And the reason you didn't

6   appeal that at the time is what?

7              MR. ZADEH:  We had no knowledge of it at the time.

8              THE COURT:  I see, okay.

9              MR. ZADEH:  I personally wasn't involved in any of

10  these proceedings.  I have counsels working on it, and I've

11  never been informed of what my rights were or what they were

12  doing.  It just -- like, it was a bankruptcy issue and --

13             THE COURT:  Well, did they -- did your counsel

14  know about these things?

15             MR. ZADEH:  It was an --

16             THE COURT:  Never mind.  Don't say anything.

17             MR. ZADEH:  Thank you, Your Honor.

18             THE COURT:  Let's see.  All right.  Show these to

19  Mrs. Rydberg, because I don't know what she's referring to,

20  but I know what I'm reading.  Here you go, Ms. Garcia.

21  120 --

22             COURTROOM CLERK:  The docket entry is --

23             THE COURT:  120 and 121 are the same.

24             COURTROOM CLERK:  And it looks like it might have

25  been corrected, because it was filed by Mr. Zadeh.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 27 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 26 of 81

26

```
 1              MS. RYDBERG:  Let me show you what I have in my
 2    file.  And it's also, I think, what some of the other people
 3    are seeing on their docket.  And it would require some kind
 4    of order to clean up the record, although you're welcome to
 5    come back, but it is a claim objection.  I don't have any
 6    other --
 7              THE COURT:  What's the number on the top, though?
 8              COURTROOM CLERK:  Motion on Objections to the
 9    Claims.  I think that's the one that we heard back in --
10              MS. RYDBERG:  It doesn't have a number on this
11    file, Judge, unless it --
12              COURTROOM CLERK:  Let's see.  I remember seeing
13    that.
14              MS. RYDBERG:  December 26th, 2012.
15              THE COURT:  No, '11.
16              MS. RYDBERG:  Well, this says 2012.
17              THE COURT:  December 26th?
18              MS. RYDBERG:  September 26th.
19              THE COURT:  Oh.
20              MS. RYDBERG:  I misspoke.
21              THE COURT:  Okay.
22              MS. RYDBERG:  September the 26th.
23              THE COURT:  Maybe I misheard.
24              COURTROOM CLERK:  I don't know.  There's
25    nothing --
```

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 28 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 27 of 81

27

```
 1                THE COURT:  Yeah, there's --

 2                MS. RYDBERG:  And it's pro se.

 3                THE COURT:  I don't know where you got that.

 4                COURTROOM CLERK:  There's nothing on the docket.

 5                MS. RYDBERG:  Do you have that document?

 6                (Counsel conferring between themselves.)

 7                MS. RYDBERG:  Okay, I've got one that I was --

 8     thank you.  On this docket -- may I approach?

 9                THE COURT:  Yes.

10                MS. RYDBERG:  It's right here (indicating).

11                THE COURT:  Which number is that?

12                COURTROOM CLERK:  That's 120.

13                MS. RYDBERG:  120.  So, I mean --

14                COURTROOM CLERK:  That's what I just --

15                THE COURT:  And so we just --

16                COURTROOM CLERK:  I mean, you can come around here

17     and look.

18                MS. RYDBERG:  And the title says Objection to

19     Claims, Claim No. 11.

20                THE COURT:  No, no.  That's what the docket says.

21                MS. RYDBERG:  Right.

22                THE COURT:  Okay.  The document that is parked at

23     that number does not say that.

24                COURTROOM CLERK:  Right.

25                MS. RYDBERG:  And I think, because I have the
```

Case 2:10-md-02179-CJB-DPC Document 25827-31 Filed 12/17/18 Page 29 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 28 of 81

28

 1   document that says this, and so somebody in the clerk's --

 2          THE COURT:  Where is the original?  Well, we may

 3   not have gotten the original.

 4          MS. RYDBERG:  Well, that's possible.

 5          MR. ZADEH:  Yes.  It was as Your Honor announced.

 6   It was given to the Clerk of the Court, or sent back after

 7   they received it.  It could have been only --

 8          THE COURT:  It's not on our docket --

 9          MS. RYDBERG:  I wasn't in the case at that time.

10   It may have gone to my client.  See, I got things from my

11   client because I wasn't served initially.

12          THE COURT:  Ms. Garcia, we need to get the case

13   manager up here, because --

14          COURTROOM CLERK:  She's already gone.

15          THE COURT:  Well, then I don't know what to tell

16   you.  I only know what's on the docket, and --

17          COURTROOM CLERK:  And these were paper --

18          THE COURT:  They come in paper and they have to be

19   scanned in.

20          MS. RYDBERG:  Earlier on, Victor Veschio was

21   working with the Bolveses and -- so it shows service to

22   him but it also shows service to counsel.  It doesn't say

23   if he's --

24          MR. PERENICH:  Well, I don't know for sure that

25   I got it.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 30 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 29 of 81

29

1          MS. RYDBERG:  Service on Jon Waage.

2          MR. PERENICH:  I would submit that if there's a

3    discrepancy between Mrs. Rydberg's document and what's filed

4    in the court, that maybe something was served different from

5    what was filed.

6          THE COURT:  No.  Mr. Zadeh says that the original

7    was sent here.  What's curious is that Docket 120 and Docket

8    121 are the exact same paper.  So maybe he did send in one.

9          Somebody in our office, Bernadette Lewis, coded

10   the docket to say it was an Objection to Claim No. 11.

11   So maybe she scanned it in and docketed it.  When she

12   uploaded to the docket, she picked the wrong thing.

13         MR. ZADEH:  That's possible, Your Honor.

14         THE COURT:  So somewhere, maybe in her computer,

15   she's got the scanned image of what Mrs. Rydberg is looking

16   at.  You meant to file -- will you show Mr. Zadeh that?

17         MR. ZADEH:  Yes, Your Honor.

18         THE COURT:  Is that what you meant to be the

19   objection --

20         MR. ZADEH:  I have filed that, Your Honor, with

21   the other document.

22         THE COURT:  Is that what you meant to be your

23   objection to the Bolves claim?

24         MR. ZADEH:  Yes, Your Honor.

25         THE COURT:  All right.  Let's do this.  I don't

Case 2:10-md-02179-CJB-DPC Document 25237-31 Filed 12/17/18 Page 31 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 30 of 81

30

1    know if we can find the original submission.  Would you mind

2    taking that out of your folder?

3              MS. RYDBERG:  I'm happy to.

4              THE COURT:  I want you to sign it in pen --

5              COURTROOM CLERK:  And actually there's been an

6    order denying the 121 document, which is --

7              MS. RYDBERG:  Right.

8              COURTROOM CLERK:  -- the motion to --

9              MS. RYDBERG:  The one that you said you don't have

10   jurisdiction of --

11             THE COURT:  Right.

12             COURTROOM CLERK:  For a judgment, right.

13             THE COURT:  Is there an order denying 120?

14             COURTROOM CLERK:  No.

15             MS. RYDBERG:  Yeah, we had a hearing and you, you

16   know, cited Rooker-Feldman and you said that you couldn't do

17   what is 120 -- or 121.  Now, I'm confused.  Do you want me

18   to give this to you or --

19             THE COURT:  I want Mr. Zadeh to sign it with --

20             COURTROOM CLERK:  121 was denied.  That's the

21   order that's not been entered.

22             THE COURT:  Both of those?  121 and 120?

23             COURTROOM CLERK:  120, Ms. Rydberg submitted the

24   order on.

25             MS. RYDBERG:  No.  Today we had a -- I thought a

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 32 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 31 of 81

31

 1  Notice of Hearing for -- now I'm confused -- for this claim

 2  objection.

 3           MR. ZADEH:  Yes, Your Honor.

 4           THE COURT:  Right.

 5           COURTROOM CLERK:  We do.

 6           THE COURT:  We do.

 7           MS. RYDBERG:  So --

 8           THE COURT:  So, Ms. Garcia, is there an order that

 9  relates to 120?

10           COURTROOM CLERK:  No.

11           THE COURT:  No.  Okay.  So we're hearing 120,

12  except we were hearing the wrong 120.  Mr. Zadeh, will you

13  give that to Ms. Rydberg, and Ms. Rydberg, you bring this

14  up.

15           MR. PERENICH:  Your Honor, there may be -- there

16  may have been a docket entry relating to --

17           MS. RYDBERG:  Wait.  No, I'm sorry.

18           MR. PERENICH:  There may be a docket entry

19  relating to the last preliminary hearing that we had, where

20  there were two identical documents.  And my memory isn't

21  perfect, but I recall maybe 109 and 120 or 121, that were

22  identical.  And so insofar as maybe the --

23           THE COURT:  That was 109 and 102.

24           MR. PERENICH:  Okay.  I'm sorry.  I just thought

25  I'd mention that.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 33 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 32 of 81

32

1          THE COURT:  Okay.  This is what happened, I think.

2     Ms. Lewis is very careful.  She did code the docket the way

3     that the paper that Ms. Rydberg just handed me reads.  So

4     she wouldn't have been able to do that unless she was

5     looking at a paper that said that.

6          She probably picked the wrong image from the

7     computer's folder where the scanned image is.  I am going to

8     substitute this document that you have signed.  In fact, I'm

9     going to put -- I'm going to put "Original Signature Made in

10    Open Court," and I'm going to put an arrow and today's date.

11    And today's date is what?  The 5th?

12         COURTROOM CLERK:  Yes.

13         THE COURT:  And my initials.  I'm going to show

14    that this is filed in open court 12/5/12 at 4:40 p.m., and

15    I'm going to put "*nunc pro tunc*" -- do you know Latin?

16         MR. ZADEH:  Not me, Your Honor.

17         THE COURT:  *Nunc pro tunc* means now as of then, to

18    9/26/12.  I'm going to put "Clerk to Substitute for Docket

19    120 and Make Corrected Entry."  So all this is on the face

20    of this paper so we'll all know what happened, and my

21    initials are on there.

22         Now, this objection is somewhat like No. 121

23    because it also complains about the voidness of the Circuit

24    Court order.  The paper I'm handing -- I'm holding in my

25    hand also fails for the same reason that I have said 121

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 34 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 33 of 81

33

1    fails.  And that is, there's a judgment out there.  I have

2    to respect it; I have to obey it; I have no power to

3    reconsider it or put myself in an appellate capacity.

4          I'm going to overrule this objection without

5    prejudice for you to pursue your remedies in State Court

6    for any claim that you have that you can ask to have

7    relief from the judgment.

8          Let me read this.  I want to read a couple of

9    paragraphs in here.  (Reviewing document.)  Okay.

10         The bottom half of this really says that you

11   weren't aware of deadlines and so forth.  But that's not

12   relevant -- I'm not ruling on -- I'm not overruling your

13   objection on that basis.  I'm overruling it on the basis

14   that -- the sanctity of the final judgment until you get

15   it overturned.

16         MR. ZADEH:  Right.  Then in that case, Your Honor,

17   I should come back to this Court and have that corrected?

18         THE COURT:  Yeah, you come -- you go to the State

19   Court, bring me an order where you've gotten relief from

20   that judgment.

21         MR. ZADEH:  Yes, Your Honor.

22         THE COURT:  Then you can attack this.  But in the

23   meantime, things are happening.

24         MR. ZADEH:  Yes, Your Honor.

25         THE COURT:  Ms. Garcia, let's get this scanned in,

Case 2:10-md-02179-CJB-DPC Document 25927-31 Filed 12/17/18 Page 35 of 82
Case 8:12-ap-00771-CPM    Doc 32    Filed 12/06/16    Page 34 of 81

34

1    and you can explain to Ms. Lewis what happened.

2              So I think we're done.  Now, what about the

3    adversary proceeding?  You came to observe, because we don't

4    have anything set.

5              MR. ADAMS:  I came because there was a motion to

6    reissue pursuant to Rule 7004, Your Honor, a stale summons

7    directed to my clients in the adversary proceeding.  And

8    I think that's the *pro se* adversary Plaintiff's motion

9    that was set for hearing today.  The only observation I

10   had was --

11             THE COURT:  I don't have that.  Do you have that,

12   Ms. Garcia?

13             COURTROOM CLERK:  Well, it's on page 46, their

14   Request to Reissue Summons.

15             THE COURT:  Oh, I'm on the wrong page.  I was in

16   the case page.

17             COURTROOM CLERK:  I think they got separated.

18             THE COURT:  Okay.  They got switched.  I see.

19   Okay.  Let me go to that docket.  Is it in CHAP, Ms. Garcia?

20             COURTROOM CLERK:  It should be.  It's 12-771.

21             THE COURT:  I see.  It's back behind Overton and

22   Posada.

23             COURTROOM CLERK:  Yeah, they're just out of order.

24             THE COURT:  Everything's out of order.

25             COURTROOM CLERK:  Well, just the two -- just the

Case 2:10-md-02179-CJB-DPC Document 25827-31 Filed 12/17/18 Page 36 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 35 of 81

35

1   adversary and general case got split up.

2           THE COURT:  Okay.  All right.  I remember now why

3   we set this for hearing.  Number one, we didn't make any

4   error.  All we do is serve exactly what you say in your

5   paper, in your complaint.  We did it the way you wanted us

6   to do it.  Now, if that's wrong, that's your issue, not our

7   issue.

8           In order to be able to issue a summons, you've got

9   to have the proper service of process information.  You have

10  to have the agent for service of process correctly stated.

11          MR. ZADEH:  Your Honor, the process was made by

12  certified mail.  Overnight, they received it.  And according

13  to the way it was set -- according to the federal statute,

14  you have three days -- additional days to serve them by

15  mail, and that was served to be received in three days.

16  So it was served between 14 and 17 days.

17          THE COURT:  But it was served on the wrong person.

18          MR. ZADEH:  It was not served on the wrong person.

19  It was the right person.

20          THE COURT:  Okay.

21          MR. ZADEH:  The person is right, and the address

22  is all right.  They have requested us to reissue the summons

23  as an alias summons because of 14 days rules -- within the

24  14-days rules.  If I understand that, there's additional

25  three days in the federal courts to allow for the delivery

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 37 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 36 of 81

36

```
 1   of the mail.

 2              THE COURT:  No, not for --

 3              MR. ZADEH:  No.

 4              THE COURT:  Not for orders and things like that.

 5   Not in the initial process.

 6              MR. ZADEH:  Right.  But they have requested us

 7   to reissue the summons and requested immediately for the

 8   summons to be reissued.

 9              THE COURT:  Okay.

10              MR. ZADEH:  Of alias summons.

11              THE COURT:  Tell me who you think is the agent for

12   service of process and how we should fill out these summons?

13              MR. ZADEH:  The -- well, the --

14              THE COURT:  Who is the Defendant?  Is the

15   Defendant Gulf Coast Claim Facility?  Is it Kenneth R.

16   Feinberg?

17              MR. ZADEH:  It's the Gulf Coast Claim Facility,

18   Your Honor.

19              THE COURT:  Okay.  So that's a legal entity?

20              MR. ZADEH:  Yes, Your Honor.

21              THE COURT:  Okay.  And then who is the agent for

22   service of process of Gulf Coast Claim Facility, in your

23   view?

24              MR. ZADEH:  That would be the Kenneth Feinberg.

25   He was the administrator.
```

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 38 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 37 of 81

37

1          THE COURT:  Was or is?

2          MR. ZADEH:  Well, was or is -- he is still --

3    because the case is open, he's still the representative of

4    that Facility.

5          THE COURT:  Okay.  Okay.  Now, let me hear -- let

6    me hear from Mr. Adams.

7          MR. ADAMS:  Your Honor, in looking at Rule 7004,

8    I do think that if the Court is so inclined, in its

9    discretion, it may issue an alias summons.

10          I do think there's a couple of interesting

11    observations that I made when I received this information

12    and looked at the docket and looked at the schedules.

13          One of the interesting things is, is there's a

14    covey of contingent assets that were listed in this Chapter

15    13 bankruptcy.  And this was not one of those contingent

16    assets listed on any schedule.

17          And so I -- when we get into this, if this

18    adversary proceeding is actually filed, there may be an

19    interesting issue to look at, as to whether or not there's

20    a judicial estoppel issue for failure to disclose.

21          THE COURT:  When was the (indiscernible) bill?

22          MR. ADAMS:  This bill was in April of 2010.  His

23    schedules were filed on February 24th, 2010, but there were

24    no amended disclosures or amended schedules scheduled after

25    that.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 39 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 38 of 81

38

```
 1                THE COURT:  Okay.  You're going to have a problem.

 2                MR. ADAMS:  And so -- and then I didn't know

 3     about --

 4                THE COURT:  Mr. Perenich, did you know about this?

 5                MR. PERENICH:  I did, Your Honor, and I've had

 6     discussions with Mr. Zadeh about that.  Well --

 7                THE COURT:  How come you didn't put it on the

 8     schedules?

 9                MR. PERENICH:  I did -- I've had appointments at

10     my office for him to come and sign papers, and it never was

11     accomplished.

12                MR. ZADEH:  This is for --

13                THE COURT:  And you've had an amended Schedule B

14     ready to be filed?

15                MR. PERENICH:  Yes.

16                MR. ADAMS:  And we aren't there yet, Your Honor,

17     but I wanted to have a full faith and disclosure telling you

18     kind of what I saw in the tea leaves with respect to the

19     disclosures.

20                The other component that's out there is:  There's

21     a unique MDL issue here.  There have only been three suits

22     filed in Florida against the Gulf Coast Claims Facility.

23     And every last one of them -- because it's really an

24     administrative entity.

25                Every last one of them has been moved over to
```

Case 2:10-md-02179-CJB-DPC Document 25237-31 Filed 12/17/18 Page 40 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 39 of 81

39

1   sunny New Orleans as part of the MDL.  And they were all

2   filed by an Attorney Donovan, who practices in Brandon.

3   And so all of those have been moved over to the MDL.

4            So either we're going to be dealing with a

5   judicial estoppel issue or we're going to be dealing with

6   -- once this is filed -- asking this Court to release

7   jurisdiction to the MDL, one or the other, or perhaps both.

8            MR. PERENICH:  For the record, Your Honor, I

9   should also say that I haven't been aware of this claim

10  for very long.  I think it first came to my attention after

11  the mediation or maybe right before.

12           THE COURT:  All right.  Well --

13           MR. ADAMS:  Well, although I would submit to

14  the Court that if you look at his -- if you look at his

15  pleadings that he's filed in the adversary proceeding, some

16  of those motions, the *pro se* Plaintiff himself has indicated

17  that he's known of this since 2011.

18           And so all of those are issues that are merits

19  down the road from a procedural issue, but I didn't want

20  you to think I was laying in wait or trying to take

21  advantage of a *pro se* person, and I'm laying my cards out.

22           THE COURT:  Okay.  You have a problem, Mr. Zadeh.

23  The Eleventh Circuit has a case right on point in a Chapter

24  13.  And the facts were so much better than this, and that

25  lady lost.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 41 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 40 of 81

40

1      She paid her creditors 100 percent, and she didn't

2  disclose an employment discrimination claim against the

3  Tyson Chicken people that she worked for.  She didn't update

4  her schedules.

5          MR. ZADEH:  Well, Your Honor --

6          THE COURT:  And then later on she sued Tyson

7  Chicken.  And they said, "She didn't update her schedules,"

8  and the Eleventh Circuit struck her claim.

9          MR. ZADEH:  Well, Your Honor, these claims, they

10  were approved by the Facility during 2011.

11          THE COURT:  Okay, but we are --

12          MR. ZADEH:  And 2012, there had not been any

13  issue --

14          THE COURT:  Sir, we're in --

15          MR. ZADEH:  -- up to that point --

16          THE COURT:  Okay.

17          MR. ZADEH:  -- because they said they would not

18  qualify.  They had requested for filing the paper because

19  we requested it.

20          THE COURT:  You have to put it on your schedule,

21  if you believe you have an asset.  And you do because you

22  filed suit.

23          MR. ZADEH:  Right.

24          THE COURT:  You have to update your schedules.

25          MR. ZADEH:  But I --

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 42 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 41 of 81

41

```
 1              THE COURT:  Go read the case.

 2              MR. ZADEH:  Right.

 3              THE COURT:  Go read the Tyson Chicken case and see

 4    if you should direct your energies towards this suit.

 5              MR. ZADEH:  Right.

 6              THE COURT:  You need to read that case.  And if

 7    you read the case and it scares you, then you should get a

 8    lawyer if you want to pursue this.  And you probably should

 9    pursue it in the MDL and not here.

10              There are some limits that I have on whether I

11    can issue a final judgment.  I'm sure that Mr. Adams has

12    complete confidence in me, but my bet is that his client

13    is not going to consent to my issuing a final judgment.

14    They're going to want --

15              MR. ADAMS:  No disrespect intended, but I think

16    you read the tea leaves pretty accurately, Your Honor.

17              THE COURT:  Yeah.  He's going to say -- he's going

18    to say this is a non-core issue, which it is.  The Supreme

19    Court has held that in the Stern case.  Anna Nicole Smith

20    made it to the Supreme Court twice.

21              The second time, her case was something like this,

22    and the Supreme Court said, "The bankruptcy judge does not

23    have the judicial power to enter a final judgment."  So --

24    unless people consent.

25              Institutions like this one, I wouldn't expect
```

1   them to consent.  They would rather have you be over with

2   the MDL.  So you have a lot of balls in the air, a lot of

3   issues, and you should prioritize on where you should spend

4   your time.  But you should Google for the Tyson Chicken

5   case, Tyson Foods, Eleventh Circuit, and you'll see how the

6   Eleventh Circuit dealt with that lady.

7          The Eleventh Circuit is binding on me.  Even if I

8   disagreed with their ruling, I'd still have to apply it.

9          MR. ZADEH:  Yes, Your Honor.

10          THE COURT:  So do you want to --

11          MR. ZADEH:  So I do have --

12          THE COURT:  Do you want to go forward with this

13   or do you -- what do you want to do?

14          MR. ZADEH:  Well, I do have an option to transfer

15   this issue to a different court in a Louisiana case?

16          THE COURT:  Yes.  Once you get service.  Why don't

17   you just accept service, and then move to transfer?

18          MR. ADAMS:  I'm not authorized to by my client.

19   And I'm not trying to be a stickler, but I'll approach my

20   client at the Court's request and indicate that the Court

21   encouraged me to do so.

22          THE COURT:  Yeah.  I mean, let's get it -- cut to

23   the chase so that, you know, your client doesn't have to

24   spend money sending you down on all the little skirmishes.

25   Let's get -- cut to the chase.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 44 of 82
Case 8:12-ap-00771-CPM    Doc 32    Filed 12/06/16    Page 43 of 81

43

 1          MR. ADAMS:  And I would if I had authority from my

 2    client, because I discussed it when I thought that this

 3    issue or the request from the Court might come up.

 4          THE COURT:  Okay.

 5          MR. ADAMS:  And I don't have authority to do it,

 6    but I will discuss it with them and follow up.

 7          THE COURT:  Okay.  I'll grant your motion.  I'll

 8    reissue this summons.  I'm not sure how I'm supposed to

 9    reissue it because I don't know what the right way is.

10          Do you think that I should say Gulf Coast Claim

11    Facility, care of Kenneth Feinberg, Administrator?

12          MR. ZADEH:  Yes, Your Honor.

13          THE COURT:  Do you believe that that complies

14    with Rule 7004?

15          MR. ZADEH:  Yes, Your Honor.

16          THE COURT:  Do you --

17          MR. ADAMS:  And our objection that we raised

18    was on timing.  We didn't raise an objection as to the

19    appropriateness --

20          THE COURT:  Okay.

21          MR. ADAMS:  -- to how it was directed or not.

22          THE COURT:  We'll go ahead and we'll extend --

23          MR. ZADEH:  If you may --

24          THE COURT:  Yes.  We will extend and we'll issue

25    an alias summons.

Case 2:10-md-02179-CJB-DPC Document 25827-31 Filed 12/17/18 Page 45 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 44 of 81

44

1        MR. ZADEH:  If you may, Your Honor, the reason

2   that I did not receive those to serve because of your

3   convention, and we did not receive those, and there was a

4   time limit on there.  By the time that I received it, and I

5   mailed it in right away.  And so the reason, limitations on

6   my behalf was that I did not --

7        THE COURT:  I understand.

8        MR. ZADEH:  -- receive them on time.

9        THE COURT:  I understand.  And we were -- we were

10  essentially closed down during that week.

11       MR. ZADEH:  Yes, Your Honor.

12       MR. ADAMS:  It was a city under siege.  There's no

13  doubt about that.

14       THE COURT:  Yes, it was.  Okay, so I'll grant that

15  motion.  Ms. Garcia, let's get a jiffy order up on that one.

16  Now, is there anything else I can --

17       MS. LEBLANC:  Your Honor, we just wanted to get

18  clarification.  You were clearly speaking about the

19  Objection to Claim No. 8, which was by the Tax Collector.

20       THE COURT:  Right.

21       MS. LEBLANC:  And you overruled that very clearly,

22  but there were also objections to Claim 12, 13 and 14,

23  which were claims by holders of tax certificates or other

24  outstanding taxes, and --

25       THE COURT:  Oh, I'm sorry.  Those are combined in

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 46 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 45 of 81

45

1   the same document; right?

2          MS. LEBLANC:  In 105, yes, it appears they may be

3   combined in there.  And then they were separated in --

4          THE COURT:  Mr. Zadeh --

5          MS. LEBLANC:  -- in 77 and 78.

6          THE COURT:  -- don't combine things --

7          MR. ZADEH:  I'm sorry, Your Honor.

8          THE COURT:  -- and don't file double things.

9          MR. ZADEH:  Your Honor, I wish I would take some

10  classes and become like my colleagues in here, but I am not.

11         THE COURT:  I know.

12         MR. ZADEH:  But I'm a lay person and,

13  unfortunately, I'm a preacher, I do things a different way.

14  And I would have expected that if my colleagues would have

15  had this matter settled down in a different manner, rather

16  than just to ask to come before this Court, continually ask

17  for relief, and one thing --

18         THE COURT:  Okay, let me --

19         MR. ZADEH:  -- that I understand was --

20         THE COURT:  Let me look at the 12, 13 and 14.

21  Late, time-barred, and violations of the automatic stay.

22  Okay, late.  Were they late?

23         MS. LEBLANC:  Well, Your Honor, again, none of us

24  actually represent those claimants.  I was just -- I'm here

25  on behalf of the Property Appraiser because the underlying

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 47 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 46 of 81

46

1    challenge to their claim was really a challenge to the

2    assessment, and that's something for the Property Appraiser

3    to defend.

4            However, I believe they did file their claim after

5    the claims bar date, however it was included in the order

6    allowing and disallowing claims as something to be paid out

7    of the plan -- a secured claim to be paid out of the plan.

8            THE COURT:  Oh.

9            MS. LEBLANC:  And there was no appeal.

10           THE COURT:  Okay.  Well, secured claims, it

11   doesn't matter if they're late or not, because they survive.

12           MS. LEBLANC:  Right.

13           MR. ZADEH:  I believe, is this correct, they were

14   objected by our counsel in open court, and there was no

15   hearings that were set to -- concerning those issues.

16   That's what I was told.  It was a contested matter --

17           THE COURT:  Secured claims travel through,

18   regardless if they file a proof of claim.

19           MR. ZADEH:  Right, but those claims that you're

20   speaking about also are violations of the automatic stay.

21   They've accrued because of violation of the automatic stay.

22           THE COURT:  Okay.  What is it that's a violation?

23           MR. ZADEH:  It was -- this is a bankruptcy case.

24   It was certificates issued, sold, and resold while it was

25   in bankruptcy.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 48 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 47 of 81

47

```
 1              THE COURT:  Okay.  Certificates were sold --

 2              MR. ZADEH:  They were created, sold and resold

 3   during the bankruptcy, doing violations of the automatic

 4   stay.

 5              THE COURT:  Okay.  Then who's going to argue this

 6   portion?

 7              MR. ZADEH:  With due respect, Your Honor --

 8              THE COURT:  Can the Tax Collector issue tax

 9   certificates during the pendency of a bankruptcy case?

10              MR. ZADEH:  Yes, Your Honor.

11              MS. RICHARDSON:  Judge, I will have to go back.

12   I didn't realize this issue was going to be teed up.  I can

13   tell you that at least one of these -- and I cannot remember

14   which year -- was sold during the time frame that -- between

15   the '07 case and the 2010 case.

16              THE COURT:  Okay.  So we're not talking about that

17   one.

18              MS. RICHARDSON:  Although they originally teed up,

19   when they filed the objection -- or I'm sorry, when they

20   filed the adversarial, they accused the Tax Collector of

21   violating the stay on that.

22              There was a second one that was sold prior to the

23   filing.  Two of the three were in between.  There was no

24   pending bankruptcy at the time.

25              THE COURT:  Okay.  What about the third one?
```

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 49 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 48 of 81

48

1          MS. RICHARDSON:  The third one was filed -- I'm

2     sorry, was sold during the pendency of the 2010 case, so

3     maybe two or three months after the case was filed, nine

4     months before the Tax Collector was ever given notice.  And

5     I believe Mr. Perenich acknowledged that to the Court.

6          THE COURT:  Oh.  So no notice.

7          MS. RICHARDSON:  So there was no notice.  We

8     have had a discussion about whether we should recall the

9     certificate.  That certificate is accruing interest at

10    something well under 18 percent.

11         THE COURT:  Oh.  I remember now.  Okay.  I said,

12    "Do you really want to complain about this?"

13         MR. ZADEH:  But let me -- but let me just come to

14    the point, Your Honor.  The Property Appraiser has filed

15    every single document, as they said, on the records to this

16    court, is on file.

17         The Tax Collector has received notice but they're

18    not producing that notice.  They are claiming that they have

19    no notice on file.  But a question mark is that there's

20    *prima facie* evidence it's been submitted and delivered.

21         THE COURT:  Wait.  *Prima* --

22         MR. ZADEH:  I personally --

23         THE COURT:  Wait a minute.  The *prima facie*

24    evidence is:  Is it on the schedules?

25         MR. ZADEH:  Yes.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 50 of 82
Case 8:12-ap-00771-CPM    Doc 32    Filed 12/06/16    Page 49 of 81

49

 1          MS. RICHARDSON:  Judge, I don't believe the Tax

 2  Collector is on the matrix.  And the first indication that

 3  we had of --

 4          THE COURT:  Where's the matrix?  Let's find it.

 5  Let's go and --

 6          MS. RICHARDSON:  The then-existing matrix,

 7  which has no doubt been amended since -- which is a problem.

 8  I mean, I don't know that you can --

 9          THE COURT:  Well, I'm looking at --

10          MS. LEBLANC:  It won't be here.

11          THE COURT:  No, it should be with the -- where are

12  the schedules?

13          MR. PERENICH:  I think we're talking about the

14  prior case, Your Honor, is that --

15          MS. LEBLANC:  No.

16          MS. RICHARDSON:  I'm sorry, the '07 or the 2010?

17          MR. PERENICH:  I thought that the Tax Collector

18  was not listed in the 2007 case.

19          THE COURT:  Is it the 2 --

20          MR. PERENICH:  I believe that's what Mr. Zadeh

21  is talking about.

22          THE COURT:  Okay.  Three years of tax

23  certificates.  What year is the one that was -- that you

24  contend, Mr. Zadeh, was sold while there was a pending case?

25  What year?

Case 2:10-md-02179-CJB-DPC Document 25827-31 Filed 12/06/16 Page 51 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 50 of 81

50

1    MR. ZADEH:  Your Honor, I believe it was all

2    those, which is in possession of Investments 123 or

3    something, and --

4    THE COURT:  Can I ask a question?  Why is it that

5    credit card companies can sell their claims but the Tax

6    Collector can't?  I'm just asking.

7    MR. ZADEH:  This is violations of the automatic

8    stay, Your Honor.

9    THE COURT:  Well, the Bankruptcy Code allows for

10   transfers of claims, so why is it a violation of the

11   automatic stay?

12   MR. ZADEH:  It was the lien they created during

13   the bankruptcy, sold in bankruptcy, while they had a notice

14   of the bankruptcy.

15   THE COURT:  Yeah, but credit card companies do

16   that all the time.

17   MR. ZADEH:  I'm not aware of such a rule for

18   credit cards because I don't have such an issue right now.

19   THE COURT:  It's just that the Bankruptcy Code,

20   the rules even say, "Here's how you do it."  It gives

21   approval for it.

22   MR. PERENICH:  I think Mr. Zadeh --

23   THE COURT:  But I still need to -- I still need

24   to know which case are we talking about and which tax

25   certificates?

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/06/16 Page 51 of 81
Case 8:12-ap-00771-CPM Doc 32 Filed 12/17/18 Page 52 of 82

51

 1            MS. RICHARDSON:  Judge, the 2006 taxes went

 2    delinquent April 2007, and the certificate was sold to MTAG

 3    in June 2007.

 4            THE COURT:  Okay.  So you're talking about your

 5    first case.

 6            MR. ZADEH:  Yes, ma'am.

 7            THE COURT:  Well, why is that a violation of the

 8    stay in this case?

 9            MR. ZADEH:  It was a continuation of the stay.

10    When the Tax Collector and Property Appraiser, when they

11    received the notice, they claimed they never had the notice,

12    but they did have the notice.

13            THE COURT:  But we -- wait a minute.  You're

14    talking about something that happened in a prior case.

15    Why is that --

16            MR. ZADEH:  This is prepetition --

17            THE COURT:  Okay, I'm not --

18            MR. ZADEH:  -- for 2010.

19            THE COURT:  I'm not understanding.

20            MS. RICHARDSON:  Well, and that case -- or that

21    certificate was sold June '07.  That case was filed December

22    '07.  That is not a violation of the stay.

23            THE COURT:  Okay.

24            MS. RICHARDSON:  Okay.  Then the 2007 taxes went

25    delinquent April 2008.  A certificate was sold June 2008.

Case 2:10-md-02179-CJB-DPC Document 25237-31 Filed 12/17/18 Page 53 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 52 of 81

52

 1  A warning letter was sent March 2009 notifying the Debtor

 2  that -- which we did not know was a Debtor at the time --

 3  notifying that MTAG wanted to start a tax deed sale on

 4  the earlier certificate.

 5          And it was at that point there was communication

 6  from Mr. Perenich's office to my client, and that's the

 7  first time they understood that earlier case was pending.

 8          THE COURT:  And that's because the December 2007

 9  did not list the taxes as a claim.

10          MS. RICHARDSON:  Yes, and that's -- I had

11  forgotten that, and I'm looking at a different document

12  that I had left in my file.

13          THE COURT:  Okay.  And so, Mr. Zadeh, are you

14  saying that the sale in June 2008 violated the stay?

15          MR. ZADEH:  The sales violated the automatic stay

16  knowing that there was a bankruptcy case and they have

17  received notice.  Now, whatever they did with the notice,

18  I'm not aware of what they did with the notice.  But

19  accordingly, this has become an ongoing issue and --

20          THE COURT:  Does anybody here have any law that

21  says that the transfer of a claim violates the automatic

22  stay?

23          MR. ZADEH:  This does not constitute the transfer

24  of the claim.  This is concerning of the issuing and selling

25  and reselling certificates during a pending bankruptcy.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 54 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 53 of 81

53

1          THE COURT:  Right, but the claim is the tax claim,

2     and they're just giving someone the right to buy that at a

3     reduced interest and charge a reduced interest rate.

4          MR. ZADEH:  Right, but if they're doing it during

5     a bankruptcy, the authority to create a lien and sell that

6     to --

7          THE COURT:  Okay, do you -- what evidence do you

8     have that the Tax Collector had notice of the bankruptcy?

9          MR. ZADEH:  Then the Tax Collector has to produce

10    that evidence because the court has sent --

11         THE COURT:  No, no, no, no, no.

12         MR. ZADEH:  Your Honor, the court --

13         THE COURT:  No, no, no, no, no.  You've got it

14    backwards.

15         MR. ZADEH:  Yes.

16         THE COURT:  You have the burden of proof.

17         MR. ZADEH:  Yes.  The court -- the Clerk of the

18    Court has sent a notice that has not been returned to the

19    court.  I've already asked the Clerk of the Court to produce

20    that evidence.  It has not been returned.

21         THE COURT:  What mail did our court send to that

22    office?

23         MR. ZADEH:  The notice from this court.

24         MS. RICHARDSON:  Judge, my client has no notice.

25         THE COURT:  What notice?  The Notice of

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 55 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 54 of 81

54

 1  Commencement?

 2          MR. ZADEH:  Yes.

 3          THE COURT:  Okay.  The Notice of Commencement.

 4  Of the December 2007 bankruptcy.

 5          MR. ZADEH:  And also the 2010 bankruptcy.

 6          THE COURT:  No, no.

 7          MR. ZADEH:  Yes, yes.

 8          THE COURT:  Let's keep --

 9          MR. ZADEH:  Yes, Your Honor.  Yes.

10          THE COURT:  I have to isolate these things.

11          MR. ZADEH:  Yes.

12          THE COURT:  Okay.  Mr. Perenich just said that the

13  Tax Collector wasn't listed in your schedules.  So how is it

14  that my office could have sent a notice?

15          MR. ZADEH:  It was listed at the same exact

16  address.  It says Tax Collector.  The name of the Tax

17  Collector was switched; it was Jim Smith.  But the office

18  had received that notice.  The Tax Collector had received

19  the notice.

20          THE COURT:  Okay.  Let me look at the schedules.

21  Ms. Garcia, pull up the 2007, please.

22          COURTROOM CLERK:  I need a case number.

23          MS. LEBLANC:  I think I might be able to provide

24  the documentation.  I think he may be trying to say that

25  he served the Property Appraiser, which is not the Tax

Case 2:10-md-02179-CJB-DPC   Document 25227-31   Filed 12/17/18   Page 56 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 55 of 81

55

```
 1   Collector.
 2           THE COURT:  That's not what he's saying.  He's
 3   saying he --
 4           MS. LEBLANC:  Well, he said Jim Smith.
 5           MR. PERENICH:  That is true.
 6           MS. LEBLANC:  And Jim Smith was the Property
 7   Appraiser probably back at that time, and the Property
 8   Appraiser changed.  So if he's saying it was sent to Jim
 9   Smith, Property Appraiser, and -- that may have been the
10   case.  I wouldn't know because the Property Appraiser
11   doesn't make any claims.
12           THE COURT:  I'm just going to look at the
13   schedules, okay?  If they're not on there, then you can't,
14   you know --
15           MR. ZADEH:  Yes, Your Honor, sure.  Absolutely,
16   yes.
17           COURTROOM CLERK:  The '07 case, you said?
18           THE COURT:  Yes, please.
19           COURTROOM CLERK:  Matrix, is that the creditor
20   matrix?  (Locating documents.)  Okay.  Can you see over me?
21           THE COURT:  Just can you print it out?
22           COURTROOM CLERK:  Uh-huh (affirmatively).
23           THE COURT:  And what is that thing that you're
24   printing out?
25           COURTROOM CLERK:  It's the creditors' matrix.
```

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 57 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 56 of 81

56

 1  The creditor mailing matrix.

 2          THE COURT:  (Reviewing document.)  Well, the

 3  Property Appraiser is not here.

 4          COURTROOM CLERK:  It doesn't look like it.

 5          THE COURT:  Those that are listed:  Roundup,

 6  Capital One, Jefferson Capital, Recovery Management Systems

 7  Corporation, Jon Waage, the Bolveses, the Bankruptcy Court,

 8  Department of Revenue, Office of U.S. Attorney, Roundup

 9  again, Naussera Zadeh, GE Money Bank, the Bolveses again,

10  Internal Revenue Service, Portfolio Recovery Associates,

11  Verizon Florida, Timothy Perenich, Capital One, Portfolio

12  Recovery Associates again, Internal Revenue Service again,

13  Jefferson Capital Systems again.

14          You don't have the -- you don't have the Tax

15  Collector on this list.  I don't know how our clerk could

16  give you proof that we mailed a notice when we didn't have

17  the address.

18          MR. ZADEH:  Your Honor, it was provided with the

19  address.  It was on the schedules.

20          THE COURT:  Ms. Garcia, please print --

21          COURTROOM CLERK:  I'm looking -- I'm checking the

22  schedules now.

23          THE COURT:  Do you have a copy?  Show me the copy

24  that you're seeing it on because she just called it up and I

25  read you every address that's on there.

Case 2:10-md-02179-CJB-DPC Document 25827-31 Filed 12/17/18 Page 58 of 82
Case 8:12-ap-00771-CPM Doc 82 Filed 12/06/16 Page 57 of 81

57

```
 1              MR. ZADEH:  Well, I did not -- I'll have to
 2    look for it, Your Honor, but do notice that Jon Waage's
 3    office they have listed, the Tax Collector's Office under
 4    notices for payments, and they have received that.  They had
 5    the notice of it.
 6              THE COURT:  In which case?
 7              MR. ZADEH:  In the 2007.
 8              THE COURT:  Was that after they learned about
 9    the case?
10              MR. ZADEH:  No.  Prior to.
11              THE COURT:  Okay.  Who's -- Ms. Olsen, do you have
12    -- how do you add a creditor to the list just randomly?
13              MS. OLSEN:  Your Honor, it's not the Trustee's job
14    to add creditors to the list.  That would be the Debtor's
15    job.  We don't add creditors to a mailing matrix.
16              THE COURT:  Okay.  Somebody added it, but it
17    wasn't from the beginning.
18              MR. ZADEH:  It was in there from the very
19    beginning, Your Honor.
20              THE COURT:  You know, this is a -- to have this
21    hearing and for you all not to be prepared with showing me
22    the things that you want me to see that shows no violation,
23    or violation, we're spending a lot of time.
24              MR. ZADEH:  Right.  Your Honor, you asked for a
25    pre-hearing, so I was not prepared to submit all the
```

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 59 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 58 of 81

58

 1    evidence.

 2            THE COURT:  But the preliminary hearing is to

 3    cut through issues.  If there's not an issue --

 4            MR. ZADEH:  Yes, Your Honor.  I ask for

 5    forgiveness.

 6            THE COURT:  So you're -- you don't have to ask

 7    my forgiveness.  You ask God for forgiveness.

 8            MR. ZADEH:  We already have, Your Honor.

 9            COURTROOM CLERK:  Judge?

10            THE COURT:  What?

11            COURTROOM CLERK:  They're listed on the schedule.

12            THE COURT:  Pardon me?

13            COURTROOM CLERK:  They're listed on the schedule.

14            THE COURT:  They're listed on the schedules.

15            COURTROOM CLERK:  Yup.

16            THE COURT:  So let's go to the Notice of

17    Commencement.

18            MS. RYDBERG:  Your Honor, may I be excused?

19            THE COURT:  Sure.

20            MS. RYDBERG:  Would you like an order from me on

21    that Bolves matter?

22            THE COURT:  Yes.

23            MS. RYDBERG:  That's all I wanted to know.

24            THE COURT:  But make sure it's without prejudice

25    for him to seek relief from the judgment in a court of

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 60 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 59 of 81

59

1    competent jurisdiction.

2              MS. RYDBERG:  That will be fine, Your Honor.

3              THE COURT:  All right.  Thank you.

4              MS. RYDBERG:  I was kind of -- I didn't want to

5    interrupt this, but it's kind of going on.  Thank you.

6              THE COURT:  Can you go to the Notice of Pendency?

7              COURTROOM CLERK:  Actually I -- there are a lot

8    of creditors on the schedules that are not on the matrix.

9              THE COURT:  How can that be, Mr. Perenich?

10             COURTROOM CLERK:  The attorney's office submits

11   that.

12             THE COURT:  Did you file that case?

13             MR. PERENICH:  Mr. Zadeh filed it on December 14,

14   2007, and then I entered an appearance subsequent to that.

15   It was filed on the brink of his foreclosure sale.

16             MR. ZADEH:  Well, Your Honor, I did not file

17   any creditors.  It was extended for me to go and file

18   afterwards, which was filed --

19             COURTROOM CLERK:  He needs to speak up.

20             THE COURT:  That's the schedules.  You still have

21   to have the matrix right.  We have to serve the Notice of

22   Commencement to people.

23             COURTROOM CLERK:  And the problem it was -- the

24   Notice of Commencement was sent out before the schedules

25   were actually filed because there was the motion to extend

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 61 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 60 of 81

60

 1  the deadline.

 2          THE COURT:  Okay.  Can you please print out the

 3  Notice of Commencement so you can show Mr. Zadeh that the

 4  Notice of Commencement was not served on --

 5          COURTROOM CLERK:  I'm just printing everything

 6  for you.

 7          THE COURT:  Okay.  So what happened was the

 8  original matrix didn't include them.  We had only had the

 9  original matrix when we sent out the Notice of Commencement.

10  After the fact, you served -- I mean, you filed the

11  schedules.  After the notice had already gone out.

12          MR. ZADEH:  At the time that I filed for that

13  particular day that I filed, on a Friday, it was only for

14  the purpose of submitting the copy, that it was filed.  And

15  I had not submitted any paperwork whatsoever on the day that

16  I filed for bankruptcy *pro se*, myself.

17          So I did not file any matrixes or any schedules

18  whatsoever.

19          THE COURT:  I don't know where we got this.

20  Ms. Garcia, do you know where we got the matrix?  Did we

21  create the matrix?

22          COURTROOM CLERK:  I don't know.

23          MR. ZADEH:  This is from the registry of the

24  court, Your Honor.

25          COURTROOM CLERK:  But, you know, I don't know if

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 62 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 61 of 81

61

 1    we can find out with a case this old or not.

 2              THE COURT:  Okay.

 3              COURTROOM CLERK:  And they don't -- we're not

 4    required to keep them anymore.

 5              THE COURT:  Okay.  Can you print -- what docket

 6    number did you get the matrix from?

 7              COURTROOM CLERK:  The matrix?  I just -- from

 8    the top.

 9              THE COURT:  No.  Go to -- so go to the Notice of

10    Commencement and let's see --

11              COURTROOM CLERK:  That's the one I just did.

12              THE COURT:  Okay.

13              COURTROOM CLERK:  And this is -- (reviewing

14    documents).

15              THE COURT:  Where is the rest of this document?

16              COURTROOM CLERK:  No, that's this one (presenting

17    document).

18              THE COURT:  Oh.  Okay.  The Notice of Commencement

19    was filed on December the 18th.  The Bankruptcy Noticing

20    Center served the Notice of Commencement on December the

21    20th, and the Tax Collector is not on here, Mr. Zadeh.

22              So what paper do you have that shows that the Tax

23    Collector got notice?

24              MR. ZADEH:  Your Honor, I do have the -- if I

25    have it in possession, I'm not so sure.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 63 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 62 of 81

62

1          THE COURT:  You have to stand behind the

2   microphone.

3          MR. ZADEH:  Okay.  The schedules that were

4   submitted does list the creditors -- all the creditors,

5   including Pinellas County Tax Collector.

6          THE COURT:  That may be, but where is it shown

7   that they received notice?

8          MR. ZADEH:  This is --

9          THE COURT:  You have to -- what you have to show

10  -- they say that they didn't get notice.  You have to now

11  show me that they got notice.

12         MR. ZADEH:  I need to go back to the Clerk of

13  the Court and have them to issue a certified copy of the

14  notices, Your Honor.

15         THE COURT:  Okay.  The notice, the -- I'm going

16  to give you copies of the notice that tells creditors to

17  file a proof of claim.

18         MR. ZADEH:  Right.

19         THE COURT:  Is there a mail-out to the new

20  creditors that were added, Ms. Garcia?

21         COURTROOM CLERK:  Let's see.  (Reviewing

22  documents.)

23         THE COURT:  It would be after the schedules

24  were filed.

25         COURTROOM CLERK:  Right.  It doesn't look like it.

Case 2:10-md-02179-CJB-DPC Document 25237-31 Filed 12/17/18 Page 64 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 63 of 81

63

1          THE COURT:  Okay.  This is what I'm going to do

2     with the -- who were the claimants on 12, 13 and 14?  Give

3     those to Mr. Zadeh.

4          COURTROOM CLERK:  Everything?

5          THE COURT:  Everything.

6          MS. OLSEN:  Judge, it's one claimant, Investments

7     2234, LLC.

8          THE COURT:  Okay.

9          MS. OLSEN:  They had -- between bankruptcies, they

10    had started a tax deed sale, and we were progressing.  And

11    as part of that process, under state law, they're required

12    to redeem all other outstanding taxes and pay any delinquent

13    taxes.  So they have kind of a super-certificate as the tax

14    deed applicant.  And, of course, that process --

15         THE COURT:  Okay, but those have all been paid.

16         MS. OLSEN:  -- stopped.

17         THE COURT:  They've all been paid now; right?

18         MS. OLSEN:  The Investments 2234 has not

19    been paid.

20         THE COURT:  So, Ms. Olsen, I thought that

21    everything had been paid.

22         MS. OLSEN:  The Tax Collector's 2010 taxes were

23    paid after this Court entered the order on 8/26/2011.  They

24    were paid four days later.

25         But that same order allowing and disallowing and

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 65 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 64 of 81

64

1   approving distribution approved Investment 2234's claims,

2   but said there would be no distribution under the plan.

3            MS. BALLARD:  Correct.

4            THE COURT:  Okay.  So I've already dealt with

5   them.  Someone has a secured claim as a result of these

6   things, whether it's the Tax Collector or it's these

7   certificate holders.

8            Certificate holders accrue the interest at a lower

9   rate.  What do you want?  Do you want the higher rate or the

10  lower rate?

11           MR. ZADEH:  Okay, this is an issue that has to be

12  resolved because if that meant to be paid within the plan,

13  it is not being paid within the plan.

14           THE COURT:  It's not being paid because the plan

15  doesn't provide for it.

16           MR. ZADEH:  Right.  I don't know how that became

17  to be, but there's an issue I have two more years left in

18  the plan to complete my complete plan.  And I have some

19  issues in respect to the State Courts, which it has to be

20  resolved in the State Court.

21           And that also is part of the claim of the

22  investments that they have under void orders, which is a

23  State Court issue.

24           I have to retain legal counsel to guide me through

25  that, what I can do properly.  If I have to cure it based on

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 66 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 65 of 81

65

 1   that, and I have to cure it within the next two years, then

 2   I'll have to do that.

 3           I cannot do it without any idea of modifying --

 4   how to modify my plan, if that's the case would be.

 5           THE COURT:  Okay.  Let me give a couple -- toss

 6   out a couple suggestions.  You probably want to have the

 7   lower rate of interest ticking along if you're going to cure

 8   it; right?

 9           MR. ZADEH:  If that's what you suggest, Your

10   Honor, that would be perfect.

11           THE COURT:  Well, pay 18 percent or pay 12

12   percent, which would you prefer?

13           MR. ZADEH:  12.

14           THE COURT:  Okay.  There's the practical side of

15   it.  Now, the question is:  What happens if he does get

16   relief regarding how this property was assessed?

17           MS. RICHARDSON:  Judge, it's too late.  It's too

18   late under state law.  It's jurisdictional.  It's a non-

19   claim statute.

20           THE COURT:  Okay.  Well, let's assume that -- you

21   know, humor me here.  Let's assume that it wasn't too late

22   and he was able to get it assessed as agricultural land.

23           MS. RICHARDSON:  Uh-huh.

24           THE COURT:  And, yet, the certificates have been

25   sold, assuming a different classification.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 67 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 66 of 81

66

1          MR. ZADEH:  Yes, Your Honor.

2          THE COURT:  How is that unwound if he were to

3   prevail?

4          MS. RICHARDSON:  We would, as a practical matter,

5   probably recall those certificates, put them in the name of

6   the county, re-fund Investment 2234 out of the coffers of

7   all the taxing authorities, and then we would have a revised

8   -- actually the Property Appraiser would send us a

9   correction --

10          THE COURT:  Okay.

11          MS. RICHARDSON:  -- and re-issue the certificates.

12          THE COURT:  There's a way to do it.

13          MS. RICHARDSON:  There is a way to do it, except

14   it's jurisdictionally barred.

15          THE COURT:  He may find that out.  I don't

16   know.  But for right now, I'm thinking that I shouldn't --

17   right now, I've allowed the claims but I've restricted

18   distribution on them.  So nobody's paying anything on them.

19          MR. ZADEH:  Right.

20          THE COURT:  And, yet, I've not lifted the stay

21   either.

22          MR. ZADEH:  Correct.

23          THE COURT:  Because they're content to accrue the

24   interest because that's a good investment for them.

25          MS. RICHARDSON:  Yes.  And, Your Honor, one nuance

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 68 of 82
Case 8:12-ap-00771-CPM    Doc 32   Filed 12/06/16   Page 67 of 81

67

1  of this.  All these certificates were originally sold at

2  lower rates except the 2008, which was held in the name of

3  the county once we learned that there was a pending

4  bankruptcy, and it was sold at 18 percent.

5       Once Investment 2234 redeemed those certificates

6  and started a tax deed process, by statute, Investments 2234

7  earned 18 percent until the conclusion of the tax deed sale.

8       THE COURT:  Which hasn't occurred.

9       MS. RICHARDSON:  Which has not occurred.  So it is

10  now ticking along at 18 percent, although there was a period

11  of time where they -- these certificates enjoyed a lower

12  rate.

13       If we had to recall and unwind, we would have

14  to take it back to 18 percent from the original date of

15  delinquency.

16       THE COURT:  So there's --

17       MS. RICHARDSON:  So there is still a benefit.

18       THE COURT:  There's some savings.

19       MS. RICHARDSON:  Yes.

20       THE COURT:  Okay.  Okay, then I'm going to go

21  ahead --

22       MR. ZADEH:  With respect, Your Honor, I believe

23  the savings are tremendous because if you would look at the

24  order that you issued in the first and second bankruptcy,

25  you had given me the option to going back after the county

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 69 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 68 of 81

68

 1  to recoup those losses.  And that was an important issue

 2  when we came before this Court.  You had given us the

 3  permission, at the time, to bring these adversary

 4  proceedings.

 5       And the recent adversary proceeding is that,

 6  good or bad, the Property Appraiser has taken a position of

 7  discriminating against one individual person in the entire

 8  State of Florida by not granting the proper exemptions which

 9  is permitted under the constitution.

10       THE COURT:  Yeah, but you can bring that case in

11  court.  You can bring it in State Court, you can bring it in

12  District Court.  You can bring that kind of a case.

13       MR. ZADEH:  Well, yes, true, but it remains one

14  issue.  That is, those certificates, some has been sold or

15  paid under void State Court order.  Now, I am in bankruptcy.

16  It will take me time --

17       THE COURT:  There's not a --

18       MR. ZADEH:  Right.

19       THE COURT:  Wait a minute.  There's not a void

20  State Court order until a State Court says it's void.

21       MR. ZADEH:  Right.  But there's also one issue.

22  If the State Court -- while I was in bankruptcy, that

23  pursued a civil action against me to abate for me, as you

24  mentioned, it becomes a violation of the automatic stay.

25  That gives me the right to come back to this Court to pursue

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 70 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 69 of 81

69

1    the violations of the automatic stay.

2         THE COURT:  Yes.

3         MR. ZADEH:  So if you're talking about the

4    benefits that I'm going to pursue on that, at the very end

5    of this, you're going to have a lot of proceedings, a lot of

6    paperwork going through.

7         I'm going to come, even -- if they would just

8    say -- negotiate among themselves, if they can be honest and

9    say the property is just -- you know what, you were right,

10   you were entitled, they misread it, they mistook, it was an

11   error, or nothing whatsoever.

12        If they really want to help that individual and

13   this case to go forward, then definitely as a Christian,

14   and definitely if God forgives all of us, then we have to

15   say, in this issue, we're not going through all these

16   proceedings.  And I'd love to be not to go through that,

17   but --

18        THE COURT:  Well, I sent you to mediation once

19   and --

20        MR. ZADEH:  The mediation, it does state very very

21   clearly that I would have no rights whatever to file any

22   proceeding after, forever barred.  And I requested that the

23   criminal proceedings -- which Your Honor said today, it was

24   not criminal -- to be voided.  And that is part of the

25   agreement, not if our paperwork says that it is not voided.

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 71 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 70 of 81

70

1    THE COURT: Okay. If you all feel like that it is

2    in your best interest to go and try again at mediation, then

3    you may do that. But I would have to get unanimity here.

4    Everyone would have to be on the same -- you know, singing

5    the same song. I sent once -- you didn't read it. How are

6    we to know that you won't read it again?

7        MR. ZADEH: Well, may I also say something? Part

8    of the mediation, the Investment 1234, whatever, they have

9    never been sitting on the same table, they have never been

10   -- filed any paperworks. They have never filed anything

11   whatsoever. We don't even know who these people are except

12   the Property Appraiser and Tax Collector.

13       THE COURT: No, they filed claims because you

14   objected to them.

15       MR. ZADEH: Well, as part of mediation, they had

16   to be there to sit down and mediate if that was the case.

17   They did not show up in mediation. I don't know who I'm

18   dealing with.

19       THE COURT: No. They didn't have to show up. She

20   just said what would happen. They would have to redeem

21   them. They'd have to get them back. The tax certificate

22   holders are really sort of in a bulletproof position.

23       MR. ZADEH: Right. If they are in a bulletproof

24   position, some of those occurring in the Florida Department

25   of Revenue, if some certificates are issued improperly, they

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 72 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 71 of 81

71

1    can be redeemed.  And also they -- according to this Florida

2    statute, based on all of the issues, these --

3              THE COURT:  Okay.  You need to deal with that

4    outside of this court, okay?

5              MR. ZADEH:  Right.

6              THE COURT:  I'm just trying to look at whether

7    there's stay violations or not.  I don't think that I'm

8    going to revisit my ruling.  I allowed those claims and

9    I restricted distribution.

10             If you change your plan, you'll file a motion to

11   modify and we'll hear that, but I'm going to overrule the

12   objections to the Claims 12, 13 and 14.  And I am going to

13   -- because you've combined the two, I'm going to strike the

14   request for sanctions and give you the opportunity to file

15   a motion against each entity, a separate motion --

16             MR. ZADEH:  Yes, Your Honor.

17             THE COURT:  -- outlining when the violation

18   occurred, and how it occurred --

19             MR. ZADEH:  Yes, Your Honor.

20             THE COURT:  -- and so that we can see that.

21   Because if you say, for example, that they can't sell the

22   tax certificate, you know --

23             MR. ZADEH:  Right, but --

24             THE COURT:  We'll have to look at the law.  But

25   if the law says that that's a violation, I need to know

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 73 of 82
Case 8:12-ap-00771-CPM    Doc 32    Filed 12/06/16    Page 72 of 81

72

 1    when they knew, and you would need to attach those papers.

 2             MR. ZADEH:  Yes, Your Honor.  And with due

 3    respect, Your Honor, Mr. Perenich has withdrawn from my

 4    case.  I have no new counsel.  I've searched for new

 5    counsel.

 6             I've not been able, because of these holidays and

 7    so on, to secure a new counsel, and I will need to have the

 8    fundings.  And I have some fundings, which I have to keep up

 9    with my payment plans and also to secure a counsel.

10             That will be time consuming because I have to

11    find someone who is able to have experience in adversary

12    proceedings, not only in State Court but also in the Federal

13    Courts.

14             So that is going to be a little time consuming for

15    me to find an individual who's able to handle all of that in

16    one load.

17             THE COURT:  Well, I mean, you may -- you may

18    decide, after you do some research, to forget about the

19    Gulf Coast claims.  I'm not telling you you have to.

20             MR. ZADEH:  Right.

21             THE COURT:  But you only have so many -- you only

22    have so much money, you only have so much time, and so you

23    should concentrate on what you think is a priority.

24             MR. ZADEH:  Yes, ma'am.

25             THE COURT:  I don't know that -- I mean, you could

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 74 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 73 of 81

73

1    have a federal suit.  It is quite possible you could have a

2    federal suit.  In fact, it may be that you bring a State

3    Court suit and one of the Defendants would bring it over to

4    District Court.

5              MR. ZADEH:  Right.

6              THE COURT:  And, believe me, you're not going to

7    get a hearing like that -- like this in District Court.

8              MR. ZADEH:  Sure, I absolutely understand that.

9              THE COURT:  You don't even get a hearing.  You

10   file a memorandum and then the judge rules on the papers.

11             MR. ZADEH:  Right.

12             THE COURT:  So if you have -- if you're out of

13   time in the State Court system, if what she says is right,

14   then the Court will tell you that, and then all this will

15   become academic.

16             So maybe you should pursue the things that are --

17   that would create a domino effect.  Pursue those first maybe

18   and not pursue everything at once, because if that thing

19   makes everything else fail, then you've just spent too much

20   time on that.

21             MR. ZADEH:  Right, but the same deal, there are

22   time limitations that I have to pursue my claim.  And one of

23   the issues is there's no time limitations of voiding the

24   orders.  There's no time limitations, no matter what, but

25   I'm able to pursue deals right after because there's nothing

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 75 of 82
Case 8:12-ap-00771-CPM  Doc 32  Filed 12/06/16  Page 74 of 81

74

```
 1    set in time --
 2            THE COURT:  Okay.  Well, you go ahead and you
 3    pursue them.  Ms. Garcia, you print me out some orders here,
 4    so I can deal with the claims objections, and with the
 5    summons issue.  And you can bring your motions concerning
 6    automatic stay violations as separate motions, one per
 7    each entity.
 8            MR. ZADEH:  Yes, Your Honor.
 9            THE COURT:  And outline what you think that they
10    did while a case was pending.  Now, I don't know that you
11    can complain in your 2010 case about a 2007 case violation.
12    I don't know one way or the other.  You should do some
13    research on that.
14            MR. ZADEH:  Well, the issue is that they have
15    bundled those claims in one claim.  They have filed it,
16    so it says only one claim.  I don't even know what the
17    amounts of the claims are because I have not seen the
18    certificates.
19            THE COURT:  Well, they filed claims.  That's what
20    13, 14 and 15 -- 12, 13 and 14 are.  You need them updated,
21    is what you're saying.
22            MR. ZADEH:  Probably, that's what they need to do.
23            THE COURT:  Okay.  But that may not be a stay
24    violation.  You're just going to have to pinpoint each act
25    that you think is a violation, so we can have a hearing
```

Case 2:10-md-02179-CJB-DPC Document 25827-31 Filed 12/17/18 Page 76 of 82
Case 8:12-ap-00771-CPM   Doc 32   Filed 12/06/16   Page 75 of 81

75

```
 1   where it won't last this long.
 2            Okay, I think that's it.  So you're out.  You're
 3   going to give me your proposed order.
 4            MR. PERENICH:  Very good.  Thank you, Your Honor.
 5   Your Honor, I would like to also make an ore tenus motion to
 6   withdraw.  It occurs to me that I haven't filed one in the
 7   adversary case, that was initially filed against --
 8            MS. BALLARD:  You dismissed that case.
 9            MR. PERENICH:  Was it dismissed?
10            MS. BALLARD:  Yes.
11            MR. ZADEH:  Your Honor, that case was not
12   dismissed because I objected to that.
13            MS. BALLARD:  Well, he may have objected, but
14   pursuant to the settlement, the mediation settlement, Mr.
15   Perenich did follow our agreed terms.  And when he -- after
16   he withdrew the objection, the case was dismissed.
17            MR. PERENICH:  I'm not a hundred percent sure
18   about the bows and ribbons that --
19            MR. ZADEH:  No.
20            MS. BALLARD:  Maybe it wasn't done correctly.
21   I don't know.
22            THE COURT:  Why don't you just file a motion.
23            MR. PERENICH:  Very good.
24            THE COURT:  Don't do an ore tenus motion.
25            COURTROOM CLERK:  In which case, Judge?  The 2007?
```

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 77 of 82
Case 8:12-ap-00171-CPM   Doc 32   Filed 12/06/16   Page 76 of 81

76

1            THE COURT:  Which one?

2            MS. BALLARD:  No.  This is the adversary.  It was

3    8:12-ap-00167.

4            THE COURT:  12-167.

5            MR. ZADEH:  It was never brought before your

6    attention, Your Honor, and that's why you --

7            MS. BALLARD:  There was a --

8            MR. ZADEH:  -- did not make your ruling on that.

9            MS. BALLARD:  -- a joint stip of dismissal of

10   complaint that was docketed --

11           THE COURT:  It was a joint stipulation.

12           MR. PERENICH:  Was there -- I'm sorry.  Was there

13   an order entered?

14           MS. BALLARD:  It was for you to submit, so I don't

15   know if it was done correctly or not.

16           MR. ZADEH:  It was never submitted.

17           THE COURT:  Do you know about when that was filed?

18           MS. BALLARD:  Yes, Your Honor.  It was filed

19   around 7/5/12.

20           THE COURT:  Is that when the --

21           MS. BALLARD: July 5th, 2012.

22           THE COURT:  No.  When was the adversary proceeding

23   filed?

24           MS. BALLARD: Oh, I'm sorry.  It was filed on

25   February 25th, 2012, right about the same time as the two

Case 2:10-md-02179-CJB-DPC Document 25237-31 Filed 12/17/18 Page 78 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 77 of 81

77

1    objections to claim.

2            THE COURT:  Let me see if I can find that.

3            COURTROOM CLERK:  It was a joint stipulation.

4    An order is not required.

5            THE COURT:  It's dismissed by stipulation.

6            MR. PERENICH:  Very good.

7            THE COURT:  So you don't need one for that.

8            MR. PERENICH:  I'll submit an order, then, on the

9    motion I filed yesterday.

10           THE COURT:  Yeah.  I think Mr. Zadeh doesn't want

11   you in the case anyway; right?

12           MR. ZADEH:  It's not that.  He says he doesn't

13   want -- Mr. Perenich has chosen not to.

14           THE COURT:  Well, is it both?

15           MR. PERENICH:  Well, Your Honor, it seems to be

16   both.  I mean, I laid it out somewhat in my motion.

17           THE COURT:  Yeah, it seems like you don't want to

18   take his advice and he feels like he can't advocate for you

19   on things that he doesn't believe are proper.

20           MR. ZADEH:  Your Honor, there are some issues that

21   is behind, at the moment, for us to discuss.  We have some

22   disagreements on some issues.  We have never resolved those

23   issues and --

24           THE COURT:  Okay.  You have to -- you have the

25   right to -- whatever the notice period is.  It's either 14

Case 2:10-md-02179-CJB-DPC  Document 25827-31  Filed 12/17/18  Page 79 of 82
Case 8:12-ap-00771-CPM  Doc 32  Filed 12/06/16  Page 78 of 81

78

1  or 7 days.  So we will act on it when it's appropriate to

2  act on it, but you have this notice period.  If you want to

3  object, get with him and see if you can get on the same

4  page.

5          MR. PERENICH:  I guess he may -- even if he does

6  object, Your Honor, how does an attorney represent on all of

7  his advice and counsel and strategy and -- it puts me in a

8  very awkward position.  I think that's somewhat --

9          THE COURT:  Yeah.

10          MR. PERENICH:  -- demonstrated by the hearing

11  today.

12          THE COURT:  I don't know that you all can get on

13  the same page, Mr. Zadeh.  He can't, as an officer of the

14  court, take positions he doesn't believe are warranted by

15  the law.  That's for one thing, so --

16          MR. ZADEH:  Well, Your Honor, we filed those

17  adversary proceedings based on the fact that we did have --

18  we were on the law on the same page.

19          MR. PERENICH:  There was information that I didn't

20  have when that case was filed.  I mean, I don't want to tip

21  my hand about everything that he and I have talked about.

22  Number one, it's privileged but, number two, it's at his own

23  detriment that the more I speak, the worse position I put

24  him in.

25          THE COURT:  No, I'm going to grant the motion

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 80 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 79 of 81

79

1  then.  Go ahead.  You'll find -- you can find somebody else.

2            MR. ZADEH:  Thank you, Your Honor.

3            THE COURT:  All right.

4            MS. RICHARDSON:  Judge, do I understand that the

5  Court's going to do the order on the objections to 8, 12, 13

6  and 14, or did you --

7            THE COURT:  Yes.

8            MS. RICHARDSON:  -- want one from us?

9            THE COURT:  No.  We'll do them.

10           MS. RICHARDSON:  Thank you.

11           THE COURT:  I want to put in there that it's --

12 I'm striking the stay relief requests without prejudice for

13 him to file separate motions against each entity.

14           MS. RICHARDSON:  Okay.  Thank you, Judge.

15           THE COURT:  Okay.  Thank you.

16           MR. ADAMS:  Thank you, Your Honor.

17           MS. LEBLANC:  Thank you.

18           MR. PERENICH:  Thank you, Your Honor.

19           MR. ZADEH:  Thank you, Your Honor.

20           (Proceedings concluded at 5:32 p.m.)

21

22

23

24

25

Case 2:10-md-02179-CJB-DPC Document 25227-31 Filed 12/17/18 Page 81 of 82
Case 8:12-ap-00771-CPM Doc 32 Filed 12/06/16 Page 80 of 81

80

CERTIFICATE


     I certify that the foregoing constitutes the
official verbatim transcript, prepared to the best degree
possible on an expedited basis from the FTR and/or backup
recording of the court's digital audio proceedings, as
recorded and provided by the court.




_Cheryl Culver_
_____          November 30, 2016
Cheryl Culver, Court Reporter            _____
For Johnson Transcription Service        Date
Approved Court Transcribers