**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re:  Oil Spill by the Oil Rig,                                   2:10-md-02179-CJB-JCW
"Deepwater Horizon" in the Gulf                            MDL No. 2179
of Mexico on April 20, 2010                                   Section J
                                                                              Judge Barbier

_____ /

**NON-PARTY DAVID DOUGHERTY, CPA, P.A.'S *EMERGENCY* MOTION TO**
**INTERVENE AND FOR LIMITED RELIEF FROM CONFIDENTIALITY ORDER**

Pursuant to Rule 24(b), Federal Rules of Civil Procedure, and Local Rule 7.6, non-

party David Dougherty, CPA, P.A. ("Dougherty") seeks limited relief from the Court's

August 19, 2016 Confidentiality Order (Doc. 21518, filed under seal) so that the law firm,

Farrell & Patel, P.A. ("F&P"), which represented hundreds of BP oil spill claimants in this

case, can comply with its discovery obligations in litigation between Dougherty and F&P

pending in Miami, Florida.[1]    This relief is sought on an emergency basis because the Miami

Case is set for trial in February 2019, and it will take time for F&P to produce the materials,

for Dougherty and its experts to review them, and for remaining witnesses to be deposed (or

re-deposed) before trial.

Basically, F&P has produced a number of materials covered by the Confidentiality

Order that help their case, but F&P has refused to produce other materials that would allow

Dougherty to test the veracity of F&P's defenses.  F&P is using confidential information

from this case as both a sword and a shield.  Accordingly, the Circuit Judge in the Miami

Case suggested in an Order on Dougherty's motion to compel discovery that this motion be

---

[1] *David Dougherty, CPA, P.A. v. Farrell & Patel, P.A.*, Circuit Court, Eleventh Judicial
Circuit, Miami-Dade County, Florida, Case No. 2016-017925-CA-44), the "Miami Case".

filed.  Dougherty, therefore, respectfully requests that the Confidentiality Order be lifted in part, so that F&P can produce the materials and provide the testimony that they have withheld.

<strong><u>MEMORANDUM OF LAW</u></strong>

I.      **<u>Relevant Facts</u>**

The Miami Case concerns unpaid accounting fees for Dougherty's work on hundreds of F&P's clients' BP oil spill claims.  Dougherty's Second Amended Complaint (the "Complaint") (without its exhibits) is attached hereto as **Exhibit 1**, and F&P's Amended Answer and Affirmative Defenses is attached as **Exhibit 2**.  It is undisputed that Dougherty did substantial accounting work for F&P concerning the Gulf Coast Claims Facility ("GCCF"), the Deepwater Horizon settlement program ("DWH"), and the presentment of claims under the Oil Pollution Act (the "Presentment").

F&P discontinued using Dougherty's services after the Presentment, forcing Dougherty to wait until those claims eventually settled, with an understanding that the accounting fees would be paid out of the proceeds.  Approximately 1,500 such claims that Dougherty worked on in prior phases settled with the Neutrals.  This earned F&P over $18 million in legal fees.  Nevertheless, without consulting Dougherty or its clients, F&P omitted Dougherty's accounting fees from the closing statements, and F&P has refused to pay *anything* for Dougherty's thousands of hours of work that made F&P's recovery possible.

One of F&P's defenses is that Dougherty's prior accounting work played no role in settling those 1,500 claims with the Neutrals (i.e. that Dougherty's substantial work in GCCF, DWH, and the Presentment did not "confer a benefit" to F&P).  To refute that

2

defense, Dougherty seeks to prove that the accounting work from the prior phases was available to the Neutrals, and in fact the Presentment demand numbers were included on the initial list of claims from the Neutrals' liaison counsel to F&P.  Dougherty also seeks to prove that F&P used Dougherty's prior accounting work in negotiations with the Neutrals.

Despite the broad confidentiality agreement in the Miami Case (**Exhibit 3**) to prevent public disclosure, F&P has refused to produce the lists and spreadsheets exchanged with the Neutrals, citing confidentiality concerns.  Importantly, F&P has already produced the materials specifically covered by this Court's Confidentiality Order, including eligibility notices, recommended awards, and closing statements that state the settlement amount for each case.  And F&P has provided documents and testimony about issues concerning the Neutrals program that fit its narrative, such as describing the extensive work supposedly done by F&P's in-house accountant.  F&P, however, selectively retreats behind the Confidentiality Order when the information requested does not fit F&P's narrative.  All the while, F&P expresses that they would 'love to provide' the requested information, *if only* they could obtain some relief from this Court's Confidentiality Order.

F&P's corporate representative, Wes Farrell, testified, in response to questions about the Neutrals' claim-tracking spreadsheet, that he would be "happy to testify" about these relevant matters if not for this Court's Confidentiality Order:[2]

> A:     I don't want to violate a federal judge's confidentiality [order].  I
>         want to be helpful, I promise you.  That's not the point here.  I'm
>         not concerned about this, but – I didn't mean it like that.  I just
>         don't want to violate [a] confidentiality [order].

---

[2] **Exhibit 4** hereto contains these excerpts from Wes Farrell's deposition on November 13, 2018 at 25:5-9, 25:21 to 26:8, and 33:4-11.

Q:     Do you understand that we have a confidentiality order in this case that allows you to reveal confidential information to be used for the purpose of this case?

A:     Yeah, but they're conflicting at this point.  The confidentiality [order] I'm under with that court says I have to get permission from the judge, so…

Q:     So you are refusing to testify about information that went back and forth between your firm and the neutrals?

A:     I'm happy to testify about anything that I'm allowed to testify about.  I just don't want to violate a court order.

* * *

Q:     So your firm's communications with the neutrals about the BP claims the Dougherty firm worked on, and your internal communications during the neutrals process about those claims, are you saying those documents aren't relevant and that's why they haven't been produced?

A:     I'm under a confidentiality [order] with a federal judge on everything related to that.

Mr. Farrell went on to discuss a number of issues related to the Neutrals settlement program, selectively invoking the Confidentiality Order.  For example, he testified that none of Dougherty's work product was used in the Neutrals phase, but F&P refuses to produce the materials that would test the veracity of that testimony, unless relief from the Confidentiality Order is granted.

F&P's former in-house accountant, Andrew Schneider, testified similarly to Mr. Farrell.  Schneider's position is that none of Dougherty's work was used to prepare F&P's demands in the Neutrals phase, and that Dougherty's work had to be redone because it was poor.  But Mr. Schneider would not fully explain how F&P's numbers were derived, how his methodologies differed, or even what spreadsheet column headers meant, unless this Court

grants relief from its Confidentiality Order:[3]

> Q:  Are you going to tell me what any of these column headings mean?
>
> A:  I'm going to tell you that they're all still governed by the court order, and I can't.
>
> Q:  All right.  So can you tell me anything about how you calculated these numbers?
>
> A:  No.
>
> Q:  Can you tell me anything about the data you used to calculate those numbers?
>
> A:  Yes, I can.
>
> Q:  What can you tell me?
>
> A:  I can tell you it all comes from the client's own tax returns.  That's what I can tell you where it's all from.
>
> Q:  All right.  So you and the Dougherty firm, you had the same source financial documents you were working from?
>
> A:  I would hope so.
>
> Q:  Right.  And you can't tell me anything about what these numbers mean, working from the same source financial documents that the Dougherty firm did?
>
> A:  No, I can't tell you anything as it relates to settlement negotiations, unless the [federal] court order is lifted.  I'd be more than happy to, the second it's lifted.

Granting Dougherty's motion to compel, the court in the Miami Case ordered F&P to produce its internal records, internal communications, and work product concerning the Neutrals phase of the BP litigation (a copy of that Order is attached as **Exhibit 6**).  The court

---

[3] **Exhibit 5** hereto contains these excerpts from Andrew Schneider's November 19, 2018 deposition at 163:22 to 164:20.

suggested that additional productions would be ordered, if relief from this Court's

Confidentiality Order were obtained.  Such productions would, again, be under the additional

protections of the confidentiality agreement in the Miami case.

In ensuing discussions between the parties, despite F&P's feigned desire to be

forthcoming, they could not be persuaded to join in this motion or file their own motion for

limited relief from the Confidentiality Order.

**II.**     **Argument**

The District of Connecticut granted an analogous motion "to intervene…under Rule

24(b) of the Federal Rules of Civil Procedure for the limited purpose of seeking modification

of [a confidentiality order] entered in [that] litigation" for purposes of obtaining materials for

discovery and trial in another case.  *In re Ethylene Propylene Diene Monomer (EDPM)*

*Antitrust Litigation*, 255 F.R.D. 308, 313 (D. Conn. 2009).  In that decision, the court

surveyed federal law across the country and provided the applicable standards:

> [A] court will consider first whether a party has met the
> threshold criteria for permissive intervention and then engage
> in a balancing test of the parties' interests to determine whether,
> in its discretion, the motion to intervene should be granted.
> Only if the court determines that a party should be permitted to
> intervene, is the issue of modification of a protective order
> examined.
>
> * * *
>
> "[P]ermissive intervention is the proper method for a nonparty
> to seek a modification of a protective order." *AT&T Corp. v.*
> *Sprint Corp.*, 407 F.3d 560, 562 (2d Cir.2005) (citing
> *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 293–94 (2d
> Cir.1979)); *see also EEOC v. Nat'l Children's Ctr., Inc.*, 146
> F.3d 1042, 1045 (D.C.Cir.1998) (noting that "despite the lack
> of a clear fit with the literal terms of Rule 24(b), **every circuit**
> **court that has considered the question has come to the**
> **conclusion that nonparties may permissively intervene for**

**the purpose of challenging confidentiality orders**") (citing cases)

* * *

Rule 24(b)(3) directs that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." The trial court's discretion in considering motions for permissive intervention is considered "very broad"…

* * *

**Courts have interpreted these requirements with even greater flexibility when the third-party seeks to intervene only for the purpose of gaining access to discovery materials**.

* * *

Where a party seeks intervention to modify a protective order and not to participate on the merits, courts have permitted intervention even where the parties to the underlying litigation have settled their dispute.

* * *

It is within the power of this court to modify the protective order in the case, therefore there is no need for [the intervenor] to prove it has an independent basis of jurisdiction in the suit.

* * *

A trial court should deny modification only where it would tangibly prejudice substantial rights of the party opposing modification. **The desire to make litigation more burdensome to pursue in the collateral jurisdiction is not legitimate prejudice**. Any legitimate interest the defendants have in keeping the materials filed under the protective order out of public hands can be accommodated by placing the intervening party under the same use and disclosure restrictions contained in the original order.

(some internal citations and quotation marks omitted; emphasis added).

Some of the same key factors that led the District Court to grant limited relief from the confidentiality order in *EDPM Antitrust Litigation* are present here. Principally, the materials are needed for the legitimate discovery and trial purposes described above, in light

of defenses F&P has raised in the Miami Case bearing on their work product and negotiations in the Neutrals phase of the BP litigation. *Id.* at 317 (explaining that most federal courts "have a presumption in favor of access in cases where an intervening party involved in bona fide collateral litigation seeks access to protected discovery materials"; citing a leading case, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 789-90 (3d Cir. 1994)).

Indeed, the Confidentiality Order expressly contemplates it being lifted upon request and under appropriate circumstances, thus putting all applicable parties on notice that this may occur. *See id.* at 320 ("Where [as here] a protective order contains express language that limits the time period for enforcement, anticipates the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified").

Moreover, the intent of the Confidentiality Order will be respected, because the parties are operating under a similarly broad confidentiality agreement in the Miami Case (Exhibit 3). *See id.* at 324-25 (noting that the intervenor was "not seeking modification in order to make the discovery materials public," and was not a competitor of any party involved). The court in the Miami Case has allowed confidential materials to be filed under seal, and Dougherty will continue to do so as needed to protect such materials from public disclosure.

Perhaps the best reason to grant the requested relief is that it will prevent F&P from using confidential information from this case as both a sword and a shield, which comports with federal judicial policy. *See e.g., Garcia v. Padilla*, 2016 WL 881143, at *5 (M.D. Fla. Mar. 8, 2016) (applying the sword and shield doctrine and holding "that it would be

8

fundamentally unfair to allow" a party to assert a defense and then withhold related documents based on confidentiality); *Bradfield v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d 1253, 1257 (M.D. Fla. 2014) (compelling the production of draft settlement and mediation agreements, stating that "[i]t is well-established that under the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged."); *In re Brewer*, 500 B.R. 130, 138 (Bankr. M.D. Fla. 2013) ("The Court will not permit Defendant to use the confidentiality of the settlement discussions as both a sword and a shield.").

Because F&P is claiming, for purposes of the Miami Case, that none of Dougherty's work product was used or played any role in the Neutrals settlement process, Dougherty should be able to fully investigate those assertions, without F&P selectively invoking the Confidentiality Order to stymie the discovery process.  F&P has opened this door and should not be permitted to tactically and selectively utilize the Court's Confidentiality Order.  *See In re Dealer Management Systems Antitrust Litigation*, 2018 WL 6413199 *2-3 (N.D. Ill. Dec. 6, 2018) (holding the movant was entitled to fully investigate statements made by the opposing party in related litigation bearing on pending defenses, and that the existing confidentiality order was sufficient to prevent confidential information from being publicly disclosed: "Dominion cannot, at this stage, avoid the discovery by disclaiming or minimizing its prior testimony…or trying to explain it away").  Moreover, F&P has already produced documents from the Neutrals setting forth the amounts of each of its clients' settlements with the Neutrals, so withholding other communications will not serve the purpose of the Confidentiality Order.  To permit F&P to game the system in this manner will only inhibit a

just resolution of Dougherty's claims.

### III.   Conclusion

For the reasons stated above, Dougherty requests the entry of an order permitting Dougherty to intervene for the limited purpose of addressing the Confidentiality Order (Doc. 21518), and granting relief from that Order sufficient to allow F&P to fully comply with its discovery obligations in the Miami Case.  Dougherty requests all other relief the Court deems to be just and proper under the circumstances.

**Dated**: January 9, 2019                          **MORGAN & MORGAN, P.A.**

*/s/ Rene Rocha*
**Rene Rocha**
LA Bar No.: 34411
**Jonathan Huffman**
*(pro hac vice motion to follow)*
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) 327-3044
Facsimile: (954) 327-3022
Email: RRocha@forthepeople.com
Email: JHuffman@forthepeople.com

*Attorneys for David Dougherty CPA, P.A.*