# EXHIBIT 1

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

DAVID DOUGHERTY, CPA, P.A.,

    Plaintiff,

v.

FARRELL and PATEL, P.A.,

    Defendant.

_____/

Case Number 2016-017925-CA-01

## SECOND AMENDED COMPLAINT

Plaintiff, DAVID DOUGHERTY, CPA, P.A. ("Dougherty" or "Plaintiff"), sues Defendant, FARRELL and PATEL, P.A. ("F&P" or "Defendant"), and alleges:[1]

### I.  INTRODUCTION

Plaintiff, an accounting firm, is owed millions of dollars of fees for work performed for Defendant, a law firm, to present its clients' claims in the BP Deep Water Horizons oil spill litigation. The parties entered into an agreement for Plaintiff to prepare Defendant's clients' claims and to receive a fee for each claim it prepared. Plaintiff spent a tremendous amount of time successfully developing and implementing complex accounting processes for assessing and preparing Defendant's clients' claims. Over the course of nearly three years, Defendant paid Plaintiff for its work on many claims according to the terms of the parties' agreement. Since at least June of 2013, however, Defendant has wrongfully refused to pay Plaintiff's fees on hundreds of claims that Plaintiff prepared *and* that have already resolved. Defendant's rapacious scheme to steal Defendant's hard-earned, contractually-owed compensation has forced Plaintiff to bring this lawsuit.

---

[1] The Court's August 28, 2017 Agreed Order provided Plaintiff with 20 days to file his Second Amended Complaint; however, on September 18, 2017, Defendant agreed to provide a 10-day extension in light of issues caused by Hurricane Irma.

## II.     JURISDICTION, VENUE & PARTIES

1. This is an action for damages that exceeds Fifteen Thousand Dollars ($15,000.00), exclusive of interest, attorneys' fees, and legal costs.

2. At all times relevant, Plaintiff, David Dougherty, CPA, P.A., was a professional association organized under the laws of the State of Florida.

3. At all times relevant, Plaintiff operated a Certified Public Accounting firm with its principal place of business located in Volusia County, Florida.

4. At all times relevant, Defendant, Farrell and Patel, P.A., was a for-profit corporation organized under the laws of the State of Florida. Its principals, Wesley Farrell and Ricky Patel, were admitted to the Florida Bar in 2009 and 2011, respectively.

5. At all times relevant, Defendant operated a law firm with its principal place of business located in Miami-Dade County, Florida.

6. Venue is proper in Miami Dade County, Florida, because Defendant is located here and Plaintiff's causes of action for nonpayment and other misconduct accrued here.

## III.    FACTUAL ALLEGATIONS

7. In the aftermath of the BP oil spill in the Gulf of Mexico, processes were set up to handle claims for business losses caused by the spill.

8. The processes for addressing the lost business claims were either established by or required by the Federal Government and went through three phases.

9. In each phase, a facility was created by which the administrators of the facilities assessed claims for lost business revenues, among other claims, and decided which claims would be approved and how much each claimant would receive.

10. The first phase was known as the Gulf Coast Claims Facility ("GCCF").

11. The second phase was known as the Deep Water Horizon Economic & Property Damage Claims Center ("DWH").

12. The third phase was referred to by Defendant as the "Settlement Presentation Phase."

13. Under each of these phases, a claimant, generally through an attorney, was required to provide the administrators of GCCF and DWH with specific accounting information.

14. Although only being members of the Florida Bar for a matter of months, Defendant was able retain hundreds of clients with business loss claims due to the BP oil spill.

15. To fulfill its responsibilities to present its clients' claims to the administrators of GCCF and DWH, Defendant retained the services of Plaintiff. Plaintiff's principal, David Dougherty, is a CPA with many years of experience providing accounting services.

16. On October 1, 2010, Plaintiff signed a confidentiality agreement regarding his employment by the law firm of Wesley J. Farrell, P.A – a precursor to Defendant. [A copy of the Confidentiality Agreement is attached hereto as **Exhibit A.**]

17. On October 1, 2010, Plaintiff provided Defendant with an agreement summarizing Plaintiff's retention, containing some of the operative terms during the GCCF phase. [A copy of the retention agreement is attached hereto as **Exhibit B.**]

18. Pursuant to the retention agreement, the parties agreed that Plaintiff would provide certified public accounting services to Defendant for the purposes of completing settlement claims of clients in the BP oil spill settlement facilities and phases. [The memorandum attached as **Exhibit C** contains additional operative terms of the business relationship that evolved as it moved through the claims phases.]

19. Fulfilling its responsibilities required Plaintiff to help develop, implement, and

continually revise a sophisticated accounting formula and detailed system for assembling up to four years of monthly accounting records to determine Defendant's clients' lost business damages.

20. Defendant could not submit any claim to any settlement facility without the use of Plaintiff's formula for assessing the alleged lost business.

21. To complete the necessary analyses and assessments for Defendant's mass of clients, the parties worked together to create a system that, as each individual claim arose, electronically provided Plaintiff with a request for services and the information required for the accounting services.

22. Defendant agreed to pay Plaintiff a fee for services it rendered on each claim, with that fee varying depending on the specifics of each claim. Defendant specifically agreed to pay Plaintiff for these services and Defendant directly benefitted from the services in the form of lucrative contingent fees.

23. Plaintiff was also (initially) granted electronic access to Defendant's clients' files in the various BP Gulf Oil Spill settlement facilities and phases, which allowed Plaintiff to confirm the approval of claims and the amounts paid out on each claim.

A. **Phase I – GCCF.**

24. In August of 2010, BP opened a claims fund to compensate potential claims concerning damages and economic losses incurred from the April 20, 2010, oil spill.

25. The BP fund was managed by the GCCF headed by Washington attorney Ken Feinberg, who was the Claims Administrator.

26. During the initial GCCF claim process, there was no mechanism for reimbursement of accounting fees by GCCF. Thus, GCCF did not require CPA's time sheets or

billing amounts. The total claim amount, therefore, would be transferred directly to Defendant's Trust Account.

27. The claim settlement agreement from GCCF, however, would contain the amount of all legal fees, accounting fees, and consulting fees, which would be paid directly from the total claim amount and deposited into Defendant's Trust Account.

28. During the GFFC claims process period, Defendant retained Plaintiff to prepare all claims, reconcile the Defendant's Trust Account, and prepare the client settlement billing statements.

29. Once a settlement of a claim was approved, Defendant would notify Plaintiff and request that Plaintiff prepare an invoice for the claim. The invoice would identify the total amount of the claim and the amount of funds to be received by the client, as well as Defendant's contingent fees and Plaintiff's accounting fees. The parties implemented this process for hundreds of claims under the GCCF process.

30. On June 4, 2012, the GCCF claims process was closed.

**B.   Phase II – DWH.**

31. On June 4, 2012, DWH began processing the BP spill claims.

32. The claims that remained unresolved from the GCCF process were reformatted and reprocessed through the DWH process.

33. During the DWH settlement phase, there was a change in the administration process, with DWH issuing specific procedures for the preparation, review, and payment of claims. For example, DWH required that the claims be contained within a very restricted geographic zone, usually within one mile from the Gulf beach, or the claim would be rejected. The only recourse for Defendant's clients' claims that were rejected was to "opt-out" and move

to the "Settlement Presentation Phase" as a class action.

34. In addition to the change in the accepted claims during the DWH process, DWH also required all claims to contain the CPA's time sheets and billing fees. DWH would then issue a separate check for the claim amount and a separate check for the CPA services, depending on if a $50,000 threshold were met.

35. CPA fees that were unpaid or only partially paid by DWH would be paid from the DWH settlement payment, which would come directly into and out of the F&P Trust Account. [The memorandum attached as **Exhibit D** discusses the changes in payment and memorializes the modification of certain terms of the parties' agreement going forward].

36. Under the DWH process, the parties continued essentially the same process they had used for hundreds of GCCF's claims, with Plaintiff submitting invoices directly to Defendant.

37. Plaintiff processed over 1,000 GCCF claims and approximately 200 DWH claims in the above manner for Defendant.

38. The DWH claims process set a final claim filing deadline of June 8, 2015.

**C.  Phase III – Settlement Presentation.**

39. After the closing of the DWH process, the only recourse for claims that remained unresolved or rejected or that opted-out was to present the claim through a class action process Defendant referred to as the "Settlement Presentation Phase."

40. In January of 2013, in order to the streamline the accounting invoicing process for claims that would be submitted through the Settlement Presentation Phase and to meet certain deadlines, the parties agreed that Defendant would pay Plaintiff a flat fee for Plaintiff's accounting services of: (a) $5,000 for the more complex documented claims or (b) $500 for

claims that contained little-to-no documentation. [The $5000 flat fee agreement is reflected in the emails attached as **Exhibit E**]. These fees were to be paid upon the resolution of a claim.

41. Plaintiff prepared over a thousand claims for Defendant's clients that were submitted through the Settlement Presentation Phase.

42. All of Defendant's clients' claims in the Settlement Presentation Phase have now resolved, but Defendant has failed to pay Plaintiff its fees, which are due and owing.

**D.   Payment of Plaintiff's Fees Owed.**

43. For nearly three years, Defendant paid Plaintiff's fees on over 1,200 claims.

44. Beginning June 1, 2013, however, Defendant cut off Plaintiff's access to its clients' files, removing Plaintiff's ability to confirm approval and payment of claims.

45. From June of 2013 until December of 2015, Defendant paid Plaintiff for approximately one claim per month; however, additional fees are owed for other claims that paid out from June 1, 2013 through December 2015.

46. Since December of 2015, Defendant has completely failed to pay any fees owed to Plaintiff on resolved claims.

47. Defendant has misappropriated Plaintiff's fees for accounting services provided on over 1,400 claims that have already been resolved through the Settlement Presentation Phase.

48. Plaintiff rendered full performance of its obligations under the parties' agreement with respect to all unpaid claims.

49. All conditions precedent to this action have been satisfied or waived.

50. That is, Defendant performed accounting work for more than 1,400 of Defendant's clients, those clients' claims have now been resolved, and instead of paying Plaintiff for the work it has already performed, Defendant has chosen to keep this money for itself – in

addition to the many millions of dollars of contingent attorneys' fees it has already recovered.

51. Plaintiff has been forced to file this lawsuit to recover its contractually-owed compensation and has, therefore, retained the undersigned law firm and is obligated to pay its reasonable attorneys' fees.

## COUNT I – BREACH OF CONTRACT

52. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 51 above.

53. Defendant entered into an agreement with Plaintiff.

54. Plaintiff agreed to provide Defendant with the necessary accounting services for Defendant to complete settlement claims for its clients in the BP Oil Spill settlement facilities.

55. Defendant agreed to pay Plaintiff a fee for services on each claim.

56. Plaintiff provided all necessary accounting services to Defendant for Defendant to complete its clients' claims in the BP Oil Spill settlement facilities and for Defendant to earn lucrative attorneys' fees. Plaintiff thereby fulfilled its obligations under the contract.

57. Defendant breached the parties' agreement by failing to pay Plaintiff its fees on over 1,400 claims.

58. Defendant's breach of the agreement proximately caused Plaintiff to incur damages.

WHEREFORE, Plaintiff, David Dougherty, CPA, P.A., demands judgment against Defendant, Farrell and Patel, P.A., for damages, interest, costs, and such other relief as this Court deems just and proper.

## COUNT II – BREACH OF IMPLIED-IN-FACT CONTRACT

59. Plaintiff repeats and incorporates by reference the allegations contained in

paragraphs 1 through 51 above.

60. This is an action by Plaintiff against Defendant for breach of implied-in-fact contract, and is pled in the alternative to Count I.

61. Defendant retained Plaintiff to help develop an accounting formula and detailed assembly of up to four years of each joint client's monthly accounting records for use in assessing claims to be filed by Defendant's clients in the BP Oil Spill settlement facilities.

62. Defendant also retained Plaintiff to use the accounting formula and detailed assembly of up to four years of each joint client's monthly accounting records created by Plaintiff to assess and provide evidence of Defendant's clients' claims for lost revenue to be made in the BP Oil Spill settlement facilities.

63. The parties, working together, developed a system by which Defendant provided Plaintiff with the necessary information on each client claim to perform the necessary assessment of any claim for lost revenue, with Defendant to review all work and handle the submission of all claim documentation.

64. Over the course of the BP Oil Spill settlement facilities' process, Plaintiff provided Defendant with the necessary accounting services and assessments of lost revenue claims to complete Defendant's clients' claims for lost revenues.

65. Defendant assented to the creation of a contract with Plaintiff through the following actions, among others:

    a.    Defendant's request for services by Plaintiff on an ongoing basis;

    b.    Defendant's provision of the details and information necessary for Plaintiff to complete the accounting assessment of each of Defendant's clients' claims;

    c.    Defendant's acceptance of and use of Plaintiff's accounting assessments in the claims submitted by Defendant on behalf of its clients to the BP Oil

    Spill settlement facilities, without disputing the terms set forth in the parties' correspondence and established in the parties' course of dealing; and

   d. Defendant's payment of fees to Plaintiff for services completed.

66. Plaintiff assented to the creation of a contract with Defendant through the following actions:

   a. Plaintiff's agreement to perform accounting assessments of claims provided to it by Defendant;

   b. Plaintiff's completion of those accounting assessments; and

   c. Plaintiff's acceptance of payment for services rendered to Defendant.

67. Based upon the conduct and actions of the parties as detailed above, a contract can be implied-in-fact between Plaintiff and Defendant.

68. Pursuant to this implied-in-fact contract, Plaintiff agreed to provide Defendant with the necessary accounting services for Defendant to complete settlement claims for its clients in the BP Oil Spill settlement facilities, by which Defendant greatly benefited in the form of lucrative contingent fees.

69. Pursuant to this agreement, Defendant agreed to pay Plaintiff a fee for services on each claim predicated upon the facts of each claim, extent of each claim, and extent of services required by each claim.

70. More specifically, pursuant to this agreement, Defendant agreed it would be a party to the agreement for accounting services and would be obligated to pay for those services.

71. Plaintiff provided all necessary accounting services to Defendant for Defendant to complete its clients' claims in the BP Oil Spill settlement facilities, greatly benefitting Defendant.

72. Plaintiff thereby fulfilled its obligations and fully performed under the contract.

73. Defendant breached the agreement by failing to pay Plaintiff the fees to which it was entitled under the agreement on over 1,400 claims.

74. Defendant's breach of the agreement proximately caused Plaintiff to incur damages.

WHEREFORE, Plaintiff, David Dougherty, CPA, P.A., demands judgment against Defendant, Farrell and Patel, P.A., for damages, interest, costs, and such other relief as this Court deems just and proper.

## COUNT III – PROMISSORY ESTOPPEL

75. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-51 and 65 above.

76. This is an action by Plaintiff against Defendant for promissory estoppel, and is pled in the alternative to Count I.

77. Defendant made promises to Plaintiff, expressly and through the following actions, that Plaintiff would receive a fee for accounting services and assessments made on claims for lost business revenues to be made in the BP Oil Spill settlement facilities by Defendant on behalf of its clients:

    a. By working with Plaintiff to help create the system used by the parties to provide Plaintiff with the necessary information to analyze and assess the lost business revenue claims of Defendant's clients;

    b. By requesting that Plaintiff complete accounting assessments and analyses of Defendant's clients' claims;

    c. By providing the necessary information to Plaintiff through this bespoke communication system to complete the accounting assessments requested;

    d. By using the assessments made by Plaintiff when submitting claims on behalf of Defendant's clients; and

    e. By paying Plaintiff fees for these services on claims.

78. Plaintiff detrimentally and justifiably relied upon Defendant's promise by creating the accounting formula and detailed assembly of up to four years of joint clients' accounting records used in assessing Defendant's clients' claims, analyzing Defendant's clients' claims and providing its assessment of Defendant's clients' claims to Defendant, all of which took countless hours to accomplish.

79. Defendant reasonably should have expected that its promise would induce Plaintiff's reliance in the form of the actions taken by Plaintiff, and such reliance was in fact induced.

80. Defendant failed to pay Plaintiff the fees due on over 1,400 claims. Indeed, Defendant failed to pay Plaintiff *anything* on many hundreds of claims Plaintiff worked on and facilitated in reliance on Defendant's promises.

81. As a result, Plaintiff has incurred damages in the form of fees for its services that are owed by Defendant on the unpaid claims.

82. The non-payment of fees owed to Plaintiff by Defendant is an injustice that can only be avoided through enforcement of Defendant's promises.

WHEREFORE, Plaintiff, David Dougherty, CPA, P.A., demands judgment against Defendant, Farrell and Patel, P.A., for damages, interest, costs, and such other relief as this Court deems just and proper.

## COUNT IV – UNJUST ENRICHMENT

83. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1-51, 65, and 77-80 above.

84. This is an action by Plaintiff against Defendant for unjust enrichment, and is pled in the alternative to Count I.

85. Plaintiff conferred upon Defendant a benefit by completing the accounting services and assessments that Defendant needed and used in completing and submitting to the BP Oil Spill settlement facilities claims for its clients' lost business revenue.

86. Defendant could not have completed these claims, submitted them to the settlement facility, or earned significant legal fees, without the services provided by Plaintiff.

87. Defendant is aware of the services performed by Plaintiff and the benefit conferred by Plaintiff upon Defendant.

88. Defendant has accepted and retained the benefit of the services rendered to it by Plaintiff.

89. The circumstances are such that it would be inequitable for the Defendant to retain the benefit of these services without paying fair value of for these services.

90. As a result, Defendant has been unjustly enriched as Defendant received payment of its fees and its client's claims as a result of the services provided by Plaintiff, without paying monies due to Plaintiff.

91. The ongoing relationship between Plaintiff and Defendant and the amounts previously paid by Defendant to Plaintiff for services rendered on individual claims in each facility establishes the fair value for these services.

WHEREFORE, Plaintiff, David Dougherty, CPA, P.A., demands judgment against Defendant, Farrell and Patel, P.A., for damages, interest, costs, and such other relief as this Court deems just and proper.

## COUNT V – FRAUD

92. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 51 above.

93. This is an action by Plaintiff against Defendant for fraud.

94. The Settlement Presentation Phase concerned hundreds of claims that were difficult and time-consuming to assess, prepare, and process, as they, by definition, did not meet the criteria for payment under the GCCF and DWH payment facilities.

95. In order to entice Plaintiff to continue working on these problematic claims, on Wednesday, January 2, 2013, at 11:44 a.m. by email, and again that same day at 2:46 p.m. by email from Defendant's authorized agent, Terry Gray, to Plaintiff (copying one of Defendant's principals, Wesley Farrell), Defendant told Plaintiff's principal, David Dougherty, that Plaintiff would be paid a flat fee of $5,000 for each of the Settlement Presentation Phase claims. [Ex. E.]

96. In those communications, Defendant instructed Plaintiff to enter "$5,000 down the board" for each of the claims on the claims spreadsheet Plaintiff was instructed to prepare. Defendant said, "Column X, 'Accounting Fees,' per our discussion is supposed to be $5k down for EACH spreadsheet" and "the Accounting Fees row should be $5,000 down the board for every spreadsheet." The "discussion" referenced in that communication was verbal between Defendant's representative and agent, Terry Gray, and Plaintiff, and had taken place shortly before the e-mail communication was sent, at Defendant's direction.

97. At the time Defendant represented that it would pay Plaintiff $5,000 per claim, Defendant knew it would not perform that agreement and had no intention of performing that agreement, such that the representation was a knowingly false statement of material fact.

98. Defendant intended for its misrepresentation to induce Plaintiff to act on it, and this occurred, causing injury to Plaintiff in the form of many hours and internal costs such as additional payroll expenses incurred processing hundreds of difficult claims at Defendant's request.

99. This was a scheme to defraud Plaintiff out of hard-earned accounting fees that represent only a fraction of the money Defendant collected on the hundreds of claims that Plaintiff facilitated.

100. In a further act of fraud and to perpetuate the initial fraud, Defendant falsely represented to Plaintiff in Defendant's recaps and payments from June 2013 until December 2015 that only one claim per month on average was successfully resolved during that period.

101. In a further act of fraud and to perpetuate the initial fraud, Defendant falsely represented to Plaintiff in connection with Defendant's nonpayment that after December 2015 *none* of the hundreds of remaining claims on which Plaintiff did accounting work were accepted and paid out.

102. In a further effort to perpetuate the fraud and prevent recourse, Defendant, by letters dated September 20, 2016, addressed to Plaintiff, falsely represented that claims had been rejected but that the claimants had authorized small amounts to be paid to Plaintiff, and that such amounts would be paid if Plaintiff agreed to waive its right to collect the fees Plaintiff was actually owed. Plaintiff, or course, rejected this duplicitous proposal.

103. Plaintiff has been significantly damaged by Defendant's fraudulent conduct. The damages were incurred when Defendant received payments on claims through and after December 2015 without paying Plaintiff the $5,000 fee Defendant misrepresented would be paid.

WHEREFORE, Plaintiff, David Dougherty, CPA, P.A., demands judgment against Defendant, Farrell and Patel, P.A., for damages, interest, costs, and such other relief as this Court deems just and proper.

## COUNT VI – NEGLIGENT MISREPRESENTATION

104. Plaintiff repeats and incorporates by reference the allegations contained in

15

paragraphs 1-51 and 94-96 above.

105. This is an action by Plaintiff against Defendant for negligent misrepresentation.

106. The statement (twice made) by Defendant's representative in the email chain attached as Exhibit E, that Plaintiff would be paid a flat fee of $5,000 for each of the ensuing BP oil spill claims, was a misrepresentation of a material fact that Defendant (including its principal, Wesley Farrell, who was copied) knew was false, ought to have known was false, or made in reckless disregard of its potential falsity under the circumstances.

107. Defendant intended that Plaintiff would rely on the information and instructions provided in the email chain and the referenced discussions to continue providing accounting services for a difficult set of hundreds of claims.

108. Plaintiff justifiably relied, to his detriment, on the instructions from Defendant, including the misrepresentation therein about Defendant's willingness, ability, and intent to pay a flat fee of $5,000 to Plaintiff for each ensuing claim that Plaintiff facilitated.

109. Plaintiff has been significantly damaged by Defendant's misconduct. The damages were incurred when Defendant received payments on claims through and after December 2015 without paying Plaintiff the $5,000 fee Defendant misrepresented would be paid.

WHEREFORE, Plaintiff, David Dougherty, CPA, P.A., demands judgment against Defendant, Farrell and Patel, P.A., for damages, interest, costs, and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

## Certificate of Service

I hereby certify that on September 28, 2017, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court by using the ECF system which will send a notice of the electronic filing to the individuals listed on the attached Service List.

**MORGAN & MORGAN, P.A.**
**Business Trial Group**

*/s/ Jonathan R. Huffman*
**Christian Savio**
Florida Bar No. 0084649
**Jonathan R. Huffman**
Florida Bar No. 56047
**Arletys Rodriguez**
Florida Bar No. 0112714
600 N. Pine Island Road, Suite 400
Plantation, FL 33324
Telephone: (954)-327-3043
Facsimile: (954) 327-3020
CSavio@forthepeople.com
JHuffman@forthepeople.com
ARodriguez@forthepeople.com

*Attorneys for Plaintiff*

## Service List

Herman J. Russomanno  
Florida Bar Number 20246  
hrussomanno@russomanno.com  
Herman J. Russomanno III  
Florida Bar Number 21249  
Herman2@russomanno.com  
RUSSOMANNO & BORRELLO, P.A.  
150 West Flagler Street  
Miami, FL 33130  
Telephone:   305 373 2101  
Fax:              305 373 2103  

*Co-Counsel for Defendant,*  
*FARRELL & PATEL, P.A.*