## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | ) | **MDL 2179** |
| "Deepwater Horizon" in the Gulf | ) | |
| Of Mexico, on April 20, 2010 | ) | **SECTION: J** |
| | ) | |
| This Document Relates  To 2:18-cv-11111 | ) | **JUDGE BARBIER** |
| | ) | **MAG. WILKINSON** |
| | ) | |

## MMR'S OPPOSITION AND RESPONSE TO THE CLAIMS ADMINISTRATOR'S MOTION TO DISMISS, OR ALTERNATIVELY, MOTION TO STAY

Comes now Plaintiff MMR Group, Inc. d/b/a MMR Constructors, Inc. ("MMR") and files its opposition and response to Defendant Patrick A. Juneau's motion to dismiss filed pursuant to Rule 12(b)(6), or alternatively, motion to stay the declaratory judgment action pending resolution of an appeal.  Fed. R. Civ. P. 12(b)(6).  MMR has satisfied the "plausibility" standard by making specific allegations supporting relief against the Claims Administrator under the Declaratory Judgment Act, therefore, insufficient legal basis exists for the Court to dismiss Count V in the Complaint.  Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In addition, the Claims Administrator has not shown a "clear case of hardship or inequity" to support staying the declaratory judgment action or other causes of action.  Landis v. North America Co., 299 U.S. 248, 255 (1936).  It has been almost 9 years since the April 20, 2010 oil spill.  The Court should not stay the declaratory judgment action or any other causes of action in the Complaint.

## BACKGROUND

Pursuant to the Court's October 3, 2018 Order, MMR timely filed a complaint against Defendants BP Exploration & Production, Inc., BP America Production Company, BP p.l.c., Halliburton Energy Services, Inc., Sperry Drilling Services, a division of Halliburton Energy

Services, Inc., Transocean Holdings, LLC, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Transocean Ltd., Triton Asset Leasing GmbH, and Patrick A. Juneau.[1]  Rec. Doc. 1-1 in 2:18-cv-11111.  The present motion to dismiss and opposition thereto only relate to Count V in the Complaint in which MMR asserted a declaratory judgment action against the Claims Administrator and BP.[2]  The Claims Administrator was not named as a party defendant in Counts I-IV.  MMR brings its declaratory judgment action pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201 (the "Declaratory Judgment Act"), and Section 18.1 of the Settlement Agreement.

A present, concrete controversy exists between MMR and the Claims Administrator as to whether four separate business economic loss ("BEL") claims submitted by MMR should have been placed in the Moratoria Hold by the Claims Administrator.   The controversy will continue to exist notwithstanding the result of MMR's appeal of the Court's October 3rd Order because MMR's appeal relates to procedural errors in the way its BEL claims were processed, such as the lack of transparency, the failure to apply the terms of the Settlement Agreement correctly, MMR's inability to have an Appeal Panel review the Claims Administrator's decisions, and MMR's inability to have the Court review decisions from an Appeal Panel.   The United States Court of Appeals for the Fifth Circuit will not have an opportunity to review the substance or merits of the Claims Administrator's decisions because a complete evidentiary record simply has not been developed.   There is no testimony from any fact or expert witness in the record on appeal for the Fifth Circuit to review as to the controversy of whether or not the Claims Administrator made an error by placing MMR's BEL claims in the Moratoria Hold.   Indeed, the

---

[1] MMR refers to Defendants BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c. collectively as "BP".  MMR refers to Defendant Patrick A. Juneau as the Claims Administrator.
[2] Arguably, the Claims Administrator is a necessary party defendant with respect to Count V. Fed. R. Civ. P. 19. BP and the remaining Defendants have not answered or otherwise responded to the Complaint.

controversy between the parties will continue to exist regardless of the outcome of MMR's appeal to the Fifth Circuit.  It would not serve the interests of judicial economy for the Court to delay these proceedings.

**STANDARD OF REVIEW**

When faced with a motion to dismiss filed by the defendant pursuant to Rule 12(b)(6), the district court should construe the "facts in the light most favorable to the [plaintiff], 'as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted.'"  Leal v. McHugh, 731 F.3d 405, 410 (5th Cir. 2013) (citation omitted).  "Dismissal is appropriate only if the complaint fails to plead 'enough facts to state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Yet, the complaint must allege enough facts to move the claim 'across the line from conceivable to plausible.'"  Id.  "Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

The Declaratory Judgement Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . . any court of the United States . . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "A federal district court must determine: (1) whether the declaratory judgment action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."  Sherwin-Williams Co. v. Holmes Cnty., 343 F.3d 383, 387 (5th Cir. 2003).

As to the first step, whether or not an "actual controversy" exists, the Supreme Court of the United States has summarized that the dispute must be "definite and concrete, touching the

legal relations of the parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, **as distinguished from** an opinion advising what the law would be upon a hypothetical state of facts." Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (emphasis added) (citations omitted).   The Fifth Circuit's jurisprudence speaks of the justiciability of a controversy in terms of "ripeness." Total Gas & Power North America, Inc. v. Fed. Energy Regulatory Comm'n, 859 F.3d 325, 333 (5th Cir. 2017).   "The ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." Id.

Under the third step, the district court's decision whether to dismiss a declaratory judgment action is constrained by seven factors: "(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendants; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exists; (5) whether the federal court is a convenient forum for purposes of judicial economy; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending."   Holmes Cnty., 343 F.3d at 388 (quoting St. Paul Ins. Co. v. Trejo, 39 F.3d 585 (5th Cir. 1994) (the "Trejo" factors)).

## ALLEGATIONS IN DECLARATORY JUDGMENT ACTION

For the Court's convenience, MMR has re-stated the allegations in Count V of its Complaint below[3]:

## COUNT V
## (DECLARATORY JUDGMENT ACTION)
## (Against the Claims Administrator and BP)

254.    Plaintiff repeats, realleges and makes a part hereof each and every allegation contained in the preceding sections of this action and incorporates same by reference as though fully set forth herein.

255.    Defendant Patrick Juneau (herein, the "Claims Administrator") was appointed by the Court to serve as the Claims Administrator pursuant to Section 4.3 in the Settlement Agreement.

256.    On August 15, 2013, the Plaintiff timely submitted a Business Economic Loss ("BEL") claim to the Deepwater Horizon Court Supervised Settlement Program ("CSSP") implemented in connection with the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Settlement Agreement"), as amended on May 2, 2012. (Rec. Doc. 6430-1 in 2:10-md-2179).

257.    The Plaintiff is a member of the Deepwater Horizon Economic and Property Damages Settlement Class (the "Class") as defined in Section 1 of the Settlement Agreement. The Court adopted the definition of the Class when it approved of the Settlement Agreement on December 21, 2012.  In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, On April 20, 2010, 910 F.Supp.2d 891 (E.D. La. 2012), aff'd In re Deepwater Horizon, 739 F.3d 790 (5th Cir. 2014).

---

[3] MMR does not re-attach the exhibits to its Complaint.  Also, the numbering of footnotes in the Complaint do not mirror what is seen in this pleading due to software formatting issues.

258. The Plaintiff did not sustain "MORATORIA LOSSES" as that phrase is used and defined in Sections 3.3 and 38.93 in the Settlement Agreement, respectively. Section 3.3 states that "Claims of Natural Persons and Entities for **MORATORIA LOSSES**" are not recognized under the Settlement Agreement. Section 38.93 defines Moratoria Loss as meaning "any loss whatsoever caused by or resulting from federal regulatory action or inaction directed at offshore oil industry activity -- including shallow water and deepwater activity -- that occurred after May 28, 2010, including the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspections or permitting practices."

259. On May 27, 2010, the Secretary of the Interior ("Secretary") issued a report titled "Increased Safety Measures for Energy Development on the Outer Continental Shelf." The following day the Secretary issued a memorandum (the "May Directive") to the director of MMS suspending deepwater drilling in the Gulf of Mexico and suspending deepwater drilling permit applications.[4] MMS then notified the affected lessees, owners, and operators. On July 12, 2010, the Secretary rescinded the May Directive and implement a new directive that was similar in scope to the May Directive but with more explanation.[5] In the July Directive, the Secretary instructed BOEM to suspend "the drilling of wells using subsea blowout preventers (BOPs) or surface BOPs on a floating facility . . . [and to] cease the approval of pending and future applications for permits to drill wells using subsea BOPs or surface BOPs on a floating facility."

260. As to ongoing drilling operations, the May Directive and the July Directive were

---

[4] May Directive (attached hereto as Ex. 1).
[5] July Directive (attached hereto as Ex. 2).

both limited to 33 offshore drilling rigs that had permits at the time.[6]  The Plaintiff did not conduct business with these 33 offshore drilling rigs in 2009 or 2010, which were drilling in water depths ranging from 1,030 feet to 9,627 feet.  The Plaintiff's revenue was not impacted by the May Directive or July Directive suspending the drilling activities being conducted by these 33 offshore drilling rigs in 2010.

261.    The Secretary lifted the July Directive on October 12, 2010.  _In re: Oil Spill be the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010_, 168 F.Supp.3d 908 (E.D. La. 2016) (discussing the history of the May Directive and July Directive).

262.    BP and the Claims Administrator have the burden of proof to demonstrate that the Plaintiff sustained moratoria losses.  The Plaintiff does not have to prove a negative.

263.    The Claims Administrator has a duty to follow the terms of the Settlement Agreement.  Section 4.3.1. states that the "Claims Administrator shall be selected and appointed by the Court, and shall be responsible to the Court, serve as directed by the Court, and faithfully implement and administer the Settlement, according to its terms and procedures, for the benefit of the Economic Class, consistent with this Agreement, and/or as agreed to by the Parties and/or as approved by the Court."  If the Claims Administrator fails to follow the Settlement Agreement, the Court has authority to direct the Claims Administrator to comply with its terms.

264.    Based upon information and belief, the Claims Administrator retained the services of a Moratoria Team pursuant to Section 16 in the Settlement Agreement to investigate potential moratoria losses.

265.    The Claims Administrator has a duty to direct the Moratoria Team if the Moratoria Team mischaracterizes claimants as incurring moratoria losses.  Section 4.3.2

---

[6] _Doc. 7-2 in case 2:10-cv-1663 (attached hereto as Ex. 3)._

*provides that the "Claims Administrator shall head the Settlement Program, oversee and supervise the **CLAIMS ADMINISTRATION VENDORS** (including any subcontractors) and staff in the processing and payment of Claims, report and provide information to the Court, BP, and/or **LEAD CLASS COUNSEL** (or their designee) as may be requested on an ongoing basis and/or as the Court directs, and participate on the Claims Administration Panel.  The Court shall retain ongoing and exclusive jurisdiction over the Settlement Program until the consideration and determination of all Claims is complete and the Settlement Program is terminated by the Court."*

266.   *The Plaintiff's NAICS code on its 2010 federal tax return was 238210.  The Plaintiff's NAICS code does not appear in either Section I or Section II of Exhibit 19 in the Settlement Agreement.  Therefore, the Plaintiff's BEL claim was not subject to automatic or possible review for Moratoria Losses by the Claims Administrator under the plain language in Sections 5.10.3.1.1 and 5.10.3.1.2 in the Settlement Agreement.  The Claims Administrator erred by arbitrarily placing the Plaintiff's BEL claim in the Moratoria Hold.*

267.   *Even if the Claims Administrator had authority to reassign a different NAICS code to the Plaintiff so that the Plaintiff's BEL claim fell within Section I or Section II of Exhibit 19, which the Plaintiff disputes, a particular NAICS number clearly does not determine if the Plaintiff or any other claimant incurred any moratoria losses.  Rather, only a fact intensive and objective analysis could determine whether or not the Plaintiff actually incurred damages as a direct result of the federal government's action or inaction following the Oil Spill.*

268.   *The parties to the Settlement Agreement did not intend for claimants to be perpetually stuck in the Moratoria Hold if the claimant did not have strong, meaningful business relationship with the offshore drilling industry.  Section 5.10.3.1.2 provides that businesses with*

a NAICS code identified in Section II of Exhibit 19 are subject to the following questions:  "[i]n 2009, did your business provide significant services, goods, and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico?"  Section 5.10.3.1.2 further provides:  "[i]f the Claimant responds negatively, its Claim shall proceed under the Economic Damage Claim Process."  Reading Sections 5.10.3.1.1 and 5.10.3.1.2 together, the intent of the Settlement Agreement was to allow BEL claimants with insignificant business connections to the offshore drilling industry to proceed under the BEL framework.  Equally clear is the fact that the Claims Administrator considered and represented that insignificant business meant up to 33.00% of the claimant's 2009 net revenue.

269.    Question No. 10 on the BEL Claim Form states:

Businesses/employers that fall within the NAICS codes and descriptions marked with an "x" in Exhibit 19, Section II must answer the following question:

**In 2009, did your business provide significant services, goods, and/or supplies to businesses in the offshore Oil & Gas Industry in the Gulf of Mexico?**  The Claims Administrator considers that an entity provided "significant" services, goods, and/or supplies to businesses in the offshore oil and gas industry in the Gulf of Mexico in 2009 if 33.00% or more of its 2009 net revenue was derived from such activities.

270.    Approved Policy 304 (regarding "Moratoria Losses:  Implementing Section II of Exhibit 19") mirrors the definition of "significant" provided in Question 10 of the BEL Claim Form, and provides, in pertinent part:

Pursuant to Section II of Exhibit 19, Business Economic Loss claimants with a NAICS Code and business activities marked with an "X" in Section II of Exhibit 19 must answer the following question: "In 2009, did your business provide significant services, goods, and/or supplies to businesses in the offshore oil & gas industry in the Gulf of Mexico? . . .  To capture this information, the Claims Administrator asks Business Economic Loss claimants this question in each Claim Form.  If the business or employer responds negatively, the claim proceeds under normal processing, without analysis for potential moratoria losses.  The Claims Administrator will advise claimants that the Claims Administrator considers that **__an entity provided "significant" services__**, goods, and/or supplies to businesses in

*the offshore oil and gas industry in the Gulf of Mexico in 2009 **if 33.00% or more of its 2009 net revenue was derived from such activities**. Subject to the analysis of claims to prevent fraud, **the Claims Administrator will observe the claimant's Claim Form answer to this question and will not independently determine whether the entity provided "significant" services, goods, and/or supplies to businesses in the offshore oil and gas industry in the Gulf of Mexico in 2009.***

271.     *The Plaintiff answered question No. 10 on the BEL Claim Form in the negative. Accordingly, even if the Claims Administrator reassigned a NAICS code to match a NAICS code in Exhibit 19, the Claims Administrator did not have authority to arbitrarily keep the Plaintiff in a Moratoria Hold.*

272.     *On October 7, 2014, the Plaintiff received a "Preliminary Notice Regarding Moratoria Losses Review" as to its 4 BEL claims.[7] The notices made clear that "[t]his is not a denial of your claim, but instead is a Preliminary Notice to update you on the status of your claim." Most importantly, the notice stated as follows:*

> *After we have completed reviewing your claim, __we will send you a Notice explaining the outcome of that review. You will have the opportunity then to accept the outcome set forth in that Notice or, if applicable, request Re-Review or Reconsideration of all decisions made on your claim.__*

273.     *The Plaintiff relied on the statements made in the Preliminary Notice, reasonably believing that any written decisions made by the Claims Administrator would allow the Plaintiff to appeal to an Appeal Panel as described in the Settlement Agreement.*

274.     *The Plaintiff complied with all requests made by the CSSP related to the Moratoria Team's investigation, producing all available records requested and answering all questions presented. The Plaintiff made a good faith effort to demonstrate why it did not belong in the Moratoria Hold.*

275.     *The Plaintiff has been denied due process rights under the Settlement*

---

*[7] Preliminary Notices (attached hereto as Ex. 4.)*

*Agreement. Section 6 in the Settlement Agreement governs the Claims Appeal Process. Section 6.1 states that claimants "will have up to three opportunities, depending on their circumstances, to have their Claims reconsidered and reviewed to assure accuracy, transparency, independence, and adherence by the Settlement Program to the terms of the Agreement." The Plaintiff never had an opportunity to have the Claims Administrator's decision reconsidered or reviewed. The Plaintiff never received a written notice from the Settlement Program explaining why its claim was placed in the Moratoria Hold or what information was needed to remove the claim from the Moratoria Hold. Instead, the Claims Administrator allowed the BEL claim to remain in limbo for years without sufficiently communicating how the federal government's directives allegedly impacted the Plaintiff's revenue.*

*276.    Section 6.1.2.2 governs appeals to the panels. Section 6.1.2.3 states that a "Claimant may Appeal within 30 days of the issuance of final written notice from the Settlement Program of a determination of final compensation award." The Plaintiff never received a Denial Notice giving it the opportunity to exercise its rights under § 6.1.2.3. Because it never received a Denial Notice, the Plaintiff did not have a procedural mechanism to appeal to an Appeal Panel.*

*277.    The Claims Administrator failed to comply with the terms and spirit of the Settlement Agreement.*

*278.    The Court entered an order on October 3, 2018 and excluded the Plaintiff from the Settlement Agreement prior to the Claims Administrator issuing any written notice to the Plaintiff explaining why the Plaintiff was not considered part of the Class. (Rec. Doc. 24945 in 2:10-md-2179).*

*Declaratory Judgment*

279.     The Plaintiff brings this claim for a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, and Section 18.1 of the Settlement Agreement.

280.     The Plaintiff is a member of the Class as defined in Section 1 of the Settlement Agreement.  However, the Claims Administrator apparently found that the Plaintiff is not a member of the Class or its claim is not recognized because the Plaintiff purportedly incurred moratoria losses as used and defined in Sections 3.3 and 38.93 in the Settlement Agreement, respectively.

281.     A justiciable controversy exists between the Plaintiff, the Claims Administrator, and BP over the interpretation of whether or not the Plaintiff is a member of the Class and whether the Plaintiff's claim should be processed under the business economic loss framework. The Plaintiff contends that the Claims Administrator misapplied and contradicted the Settlement Agreement when he apparently concluded that the Plaintiff is not a member of the Class or found that the Plaintiff's claim is not recognized under the Settlement Agreement.  A declaratory judgment action is the proper procedural vehicle to resolve this type of dispute. Waldman v. Riedinger, 423 F.3d 145 (2nd Cir. 2005) (holding that the district court erred by excluding a claimant as a member of a class action).

282.     The Court should exercise its discretion to decide the justiciable controversy described herein based on the factors discussed in The Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 388 (5th Cir. 2003) (analyzing the 7 factors identified in St. Paul Ins. Co. v. Trejo, 39 F.3d 585 (5th Cir. 1994)).  None of the Trejo factors favor dismissing this declaratory judgment action.

283.     The Court retained exclusive jurisdiction over the parties for the "purpose of enforcing, implementing, and interpreting" the Settlement Agreement.   The Plaintiff, therefore, cannot bring its complaint for declaratory judgment in state court or another jurisdiction.   At this point, this declaratory judgment action is an appropriate remedy for the Plaintiff.

284.     The Plaintiff never had the opportunity to argue the merits of its position to an Appeal Panel after receiving a Denial Notice from the Claims Administrator.   Cf. Homes Motors, Inc. v. BP Exploration & Production, Inc., 829 F.3d 313 (5th Cir. 2016).   Accordingly, the Court's decision to review the merits of this justiciable controversy must be decided based on the factors stated in Holmes County, as opposed to the factors outlined in Claimant ID 100190818 v. BP Exploration & Production, Inc., 718 Fed. Appx. 220, 222 (5th Cir. 2018) (stating abuse-of-discretion factors).

285.     The Plaintiff respectfully requests the following relief:

a.     That the Court accept jurisdiction of this declaratory judgment action;

b.     That the Court ORDER, ADJUDGE and DECREE that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

c.     That upon a final hearing on the merits of this cause of action, this Honorable Court declare the rights, status, and legal relations of the Plaintiff and the Defendants under the Settlement Agreement;

d.     That upon a final hearing on the merits of this cause of action, this Honorable Court ORDER, ADJUDGE and DECREE that the Plaintiff is a member of the Class as defined in Section 1 of the Settlement Agreement;

e.     That upon a final hearing on the merits of this cause of action, this Honorable

Court ORDER, ADJUDGE, and DECREE that the Plaintiff did not sustain Moratoria Losses;

     f.     That upon a final hearing on the merits of this cause of action, this Honorable Court ORDER, ADJUGE and DECREE that the Claims Administrator shall process the Plaintiff's claim under the business economic loss framework in the Settlement Agreement and enter an appropriate award; and

     g.     Any other relief this Honorable Court finds equitable and just.

Rec. Doc. 1-1 in 2:18-cv-11111.

## ANALYSIS

### I.     The Court Should Deny The Claims Administrator's Motion to Dismiss.

In his motion to dismiss, the Claims Administrator only argues that an "actual controversy" does not exist between the Claims Administrator and MMR.[8]   The Claims Administrator argues that "MMR may have disagreed with the Claims Administrator's earlier decision to subject its claims to Moratoria Hold review in the first instance, but that is no longer relevant."   Rec. Doc. 25244-1, at p. 5, in 2:10-md-2179.   In other words, the Claims Administrator takes the position that a **past controversy** between the parties vanished when the Court entered its October 3rd Order.[9]   But this is not correct – the controversy became "ripe" when the Court entered its October 3rd Order – and a present, well-defined dispute continues to exist.   When the Court entered its October 3rd Order, the Court was not reviewing the specific

---

[8] Not surprisingly, the Claims Administrator does not identify or argue that any of the <u>Trejo</u> factors support granting its motion to dismiss.  None of the <u>Trejo</u> factors favor dismissing the declaratory judgment action.  <u>Ironshore Specialty Ins. Co.  v. Tractor Supply Co.</u>, 624 Fed. Appx. 159, 169 (5th Cir. 2015) ("we hold that the district court abused its discretion in applying the *Trejo* factors and dismissing the action."); <u>Sherwin-Williams Co. v. Holmes Cnty.</u>, 343 F.3d 383 (5th Cir. 2003) (reversing the district court's order dismissing declaratory judgment action).

[9] If MMR would have filed its declaratory judgment action prior to the Court's October 3rd Order, the Claims Administrator likely would have taken the position that the controversy was not "ripe" because the Claims Administrator had the discretion to remove the claims from the Moratoria Hold and enter awards in favor of MMR. <u>Total Gas & Power America, Inc.v . Fed. Energy Regulatory Comm'n</u>, 859 F.3d 325 (5th Cir. 2017).

allegations made by MMR in its declaratory judgment action describing how the Claims Administrator failed to comply with the terms of the Settlement Agreement. If MMR's allegations are proven to be true, the October 3rd Order should not apply to MMR's BEL claims submitted in the CSSP. The Claims Administrator should process MMR's BEL claims and enter awards in favor of MMR if the allegations in the declaratory judgment action are proven to be true.

Clearly, the Court should not grant the Claims Administrator's Rule 12(b)(6) motion to dismiss under the "plausibility" standard adopted by the Supreme Court of the United States in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross and Blue Shield of Georgia, Inc., 892 F.3d 719, 726 (5th Cir. 2018). If MMR's allegations are true, which the Court should accept as true at this stage, MMR is entitled to the relief described in its declaratory judgment action. It is clearly plausible that the Claims Administrator made an error when he determined that MMR incurred moratoria losses. For the Court to dismiss the declaratory judgment action, the Court would have to find that it is inconceivable that the Claims Administrator could have made such a mistake.

In Innova Hospital, supra, a hospital filed a lawsuit against insurance companies and third-party administrators alleging violations of ERISA and breach of contract for failure to properly reimburse the hospital for covered claims at the applicable rates. The insurers filed a Rule 12(b)(6) motion to dismiss arguing that the complaint did not specifically identify the health-insurance plan documents that the insurers allegedly breached. The district court agreed with the insurers and granted the motion to dismiss. On appeal, the Fifth Circuit reversed the

district court's order after finding the allegations sufficient under the plausibility standard.   The court discussed the fact that the insurers had the health-insurance plan documents and objected to producing them to the hospital.   The court emphasized that "[o]ur holding underscores the principle that when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint."   Id. at 730.

While the Claims Administrator does not make the same type of argument made by the defendants in Innova Hospital, and MMR strongly denies that its allegations are deficient, MMR relies on the recent Fifth Circuit precedent to demonstrate a similar challenge met by MMR. MMR has alleged in its Complaint that it does not know what facts the Claims Administrator apparently relied upon to reach the conclusion that each BEL claim filed in the CSSP belonged in the Moratoria Hold.   MMR does not even know the identity of the Moratoria Team members retained by the Claims Administrator to help the Claims Administrator arrive at his conclusions, or the scope and depth of the Moratoria Team's investigations.   MMR has alleged that a settlement program that was supposed to guarantee a transparent, objective review of claims, re-review of claims, reconsideration of claims, and appellate rights to an Appeal Panel, deviated from that process and left MMR in limbo for years without any answers.   There is a definite and concrete controversy between MMR and the Claims Administrator in this case.

A case from the United States Court of Appeals for the Second Circuit squarely fits the fact pattern in front of the Court.   In Waldman v. Riedinger, 423 F.3d 145 (2nd Cir. 2005), a claims administrator was appointed by the district court to oversee a class action settlement program.   The settlement agreement related to the artificially inflated market value of a company's stock which violated federal securities laws.   The district court adopted the definition

of the class members as described in the settlement agreement.  The class members were "all persons and entities that purchased shares of common stock of Olsten Corporation ("Olsten") from February 5, 1996 through July 22, 1997."  Id. at 147.  The settlement agreement, however, did not distinguish between Olsten's two classes of stock:  Common Stock and Class B Common Stock.  Id.  Also, the settlement agreement excluded "affiliates" of certain categories of stockholders.  Id. The claimant owned Class B Common Stock and was the nephew of the company's founder.  A dispute arose whether the claimant was a member of the class and whether he was excluded as an affiliate given his relationship to the founder of the company.  The claims administrator found that the claimant was not a member of the class.  Naturally, the claimant sought relief from the district court arguing that he was a member of the class.  After losing before the district court, the claimant successfully appealed his case to the Second Circuit.  Ultimately, the Second Circuit held that the claimant was a member of the class and was not excluded as an affiliate of the company's founder.

Like Waldman, MMR is requesting the Court to review the Claims Administrator's decision that MMR is not a member of the Class because it allegedly incurred moratoria losses.  MMR submitted four separate BEL claims which the Claims Administrator improperly placed in the Moratoria Hold.  The Court should review the merits of the Claims Administrator's decision for each BEL claim.   Indeed, the Settlement Agreement contemplates Class Members seeking the precise relief as sought by MMR in its declaratory judgment action.  Section 18.1 in the Settlement Agreement states as follows:

> Pursuant to the Final Order and Judgment, the Court shall retain continuing and exclusive jurisdiction over the Parties and their Counsel for the purpose of enforcing, implementing and interpreting this Agreement, including all issues relating to the scope, application and/or operation of the Release in Section 10 above, including jurisdiction over all Economic Class Members, and over the

> administration and enforcement of the Agreement and the distribution
> of its benefits to Economic Class Members, and any dispute arising as
> to the action or election of any Party under Section 21 below regarding
> the enforceability or illegality of any provisions of this Agreement.
> Any disputes or controversies arising out of or related to the
> interpretation, enforcement or implementation of the Agreement and
> the Release shall be made by motion to the Court.  In addition, the
> Parties, including each member of the Economic Class as defined in
> the Final Order and Judgment, and their Counsel are hereby deemed to
> have submitted irrevocably to the exclusive jurisdiction of this Court
> for any suit, action, proceeding or dispute arising out of or relating to
> this Agreement.  The terms of the Agreement shall be incorporated
> into the Final Order and Judgment of the Court dismissing with
> prejudice all Released Claims by the Economic Class, Plaintiffs, and
> Economic Class Members against all Released Parties, which shall
> allow that Final Order and Judgment to serve as an enforceable
> injunction by the Court for purposes of the Court's continuing
> jurisdiction related to the Agreement.

Rec. Doc. 6430 in 2:10-md-2179.  MMR is turning to the Court to enforce its rights under the

Settlement Agreement as anticipated by the Court when the Court approved of the Settlement

Agreement.   For all of the reasons stated above, the Court should deny the Claims

Administrator's motion to dismiss.

## II.    The Court Should Deny the Claims Administrator's Motion to Stay The Declaratory Judgment Action.

As alternative relief to his motion to dismiss, the Claims Administrator requests the Court

to stay the declaratory judgment action pending the resolution of MMR's appeal of the Court's

October 3rd Order.  However, the Claims Administrator overlooks the fact that the Fifth Circuit

will not have the opportunity to review the merits of the Claims Administrator's decision to

place MMR's claims in the Moratoria Hold because of the lack of a relevant and complete

evidentiary record before the Court when the Court issued its October 3rd Order.  The record on

appeal to the Fifth Circuit will not include the factual basis for the Claims Administrator's

decision to not process MMR's BEL claims and enter awards in favor of MMR.  Absent from the

record on appeal is important testimony, such as testimony from the unknown Moratoria Team members who assisted the Claims Administrator in arriving at his decision to place the BEL claims in the Moratoria Hold.  Only the declaratory judgment action can reach the merits of the Claims Administrator's decision after an evidentiary record is developed through the ordinary course of discovery.  Staying the declaratory judgment action does not make sense because the appeal will not resolve the controversy between the parties – whether MMR is a member of the Class and not excluded by virtue of allegedly incurring moratoria losses.

The Claims Administrator only cited two cases for authority in support of his argument that the Court should stay the declaratory judgment action.  See Datatreasury Corp. v. Wells Fargo & Co., 490 F.Supp.2d 749 (E.D. Tx. 2006) and Greco v. National Football League, 116 F.Supp.3d 744 (N.D. Tex. 2015).  These cases are not analogous to the facts before the Court. The Claims Administrator cited Greco for the broad proposition that "a court is within its discretion to grant a stay when a related case with substantially similar issues is pending before a court of appeal." Id. at *761.  Greco involved a very unique situation in which the legal issues on appeal would directly impact how the district court conducted bellwether trials in a class action case.  The district court stated, "[s]hould the Fifth Circuit reverse any of this Court's significant rulings in Ibe, it would potentially necessitate a retrial of any bellwether trials conducted during the pendency of the Ibe appeal." Id. at *761.

In this case, however, the Court should not share the same concerns as expressed in Greco because any ruling by the Fifth Circuit will not reach the substantive issue of whether or not MMR is a member of the Class and its claims are not otherwise excluded by virtue of allegedly incurring moratoria losses.  The Court should follow the reasoning of  Caruso v. Allstate Ins. Co., Civ. No. 06-2613, 2007 WL 625830, at *3 (E.D. La. Feb. 26, 2007) where the

district court declined to stay proceedings when the appeal to the Fifth Circuit would not resolve the issues pending before the district court.  See also Miller Weisbrod, LLC v. Klein Frank, PC, Civ. No. 3:13-cv-2695, 2014 WL 2738231 (N.D. Tx. June 17, 2014) (rejecting the argument that a related appeal justified staying declaratory judgment action because the issues on appeal were different than the issue before the district court).  The district court in Miller Weisbrod also properly considered the Trejo factors when ruling on the motion to stay the proceedings, finding that the Trejo factors did not support staying the declaratory judgment action.

A district court's inherent authority to stay proceedings arises from Landis v. North America Co., 299 U.S. 248 (1936) (cited by the district courts in Datatreasury and Greco). There, the United States Supreme Court acknowledged that while the district court has authority to stay proceedings, the facts must be extraordinary to support such relief.  The Court opined that: "True, the suppliant for a stay must make out a **clear case of hardship or inequity** in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only is **rare circumstances** will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Id. at 255 (emphasis added).  In this case, the Claims Administrator has wholly failed to present a "clear case of hardship or inequity" to support his argument that the Court should stay the declaratory judgment action.   On the other hand, if the Court were to grant the Claims Administrator's motion to stay, the prejudice suffered by MMR would be real and substantial.  The April 20, 2010 oil spill happened almost 9 years ago.  MMR submitted its BEL claims to the CSSP around 5 ½ years ago.  For years MMR's claims remained pending before the Claims Administrator waiting to be processed according to the Settlement Agreement.  If the Claims Administrator erred by placing the BEL claims in the Moratoria Hold, which he did, the

Court's October 3rd Order should not apply to the claims and the Claims Administrator should enter awards consistent with the Settlement Agreement. Any further delays cannot be justified in these circumstances. Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 545 (5th Cir. 1983) (relying on Landis to find that the district court abused his discretion by granting a stay of the proceedings); Archon v. Taylor & Tyler Inc., Civ. No. 18-6854, 2018 WL 5084875, at *2 (E.D. La. Oct. 18, 2018) (relying on Landis and finding that the "Defendants have not made a clear case of hardship in moving forward in light of the likelihood of prejudice to plaintiff, and judicial economy will not be promoted."); SP Plus Corp. v. IPT, LLC, Civ. No. 16-2474, 2017 WL 1423882, at *2 (E.D. La. March 23, 2017) ("In assessing the relative merits of a stay of proceedings, a court must also remember its 'paramount' obligation to timely hear the cases on its docket.").

MMR's appeal of the October 3rd Order should not be used to delay the declaratory judgment action. See generally U.S. v. Transocean Deepwater Drilling, Inc., 537 Fed. Appx. 358 (5th Cir. 2013). In Transocean, the district court ordered Transocean to comply with a subpoena served by the Chemical Safety and Hazard Investigation Board related to the April 20, 2010 oil spill. Transocean requested the Fifth Circuit to stay the case pending the resolution of its appeal of the order compelling it to respond to the subpoena. The Fifth Circuit found that the prospect of the appeal mooting the case did not support staying the case, calling the argument "absolutely meritless." Id. at 364.

Finally, MMR is entitled to simultaneously prosecute Count V (Declaratory Judgment Action), along with Count I (Oil Pollution Act), Count II (Negligence), Count III (Negligence *Per Se*), and Count IV (Gross Negligence and Willful Misconduct). Fed. R. Civ. P. 8(d) (the plaintiff may assert alternative and inconsistent forms of relief in its complaint); Leal v.

McHugh, 731 F.3d 2013, 414 (5th Cir. 2013) (citing Rule 8(d) and rejecting the argument that the plaintiffs could not simultaneously pursue alternative or inconsistent theories).   MMR's claims for damages against the Defendants stated in Counts I-IV should not be delayed due to the declaratory judgment action against the Claims Administrator and BP in Count V.   MMR urges the Court to deny the motion to stay the declaratory judgment action and any other causes of action based on the law and facts stated herein.

## CONCLUSION

MMR satisfied the "plausibility" standard when it filed its declaratory judgment action against the Claims Administrator and BP.   Therefore, the Court should deny the Claims Administrator's motion to dismiss Count V.   Fed. R. Civ. P. 12(b)(6).   In addition, there is insufficient legal authority to support the Claims Administrator's motion to stay the declaratory judgment action or other causes of action.   Accordingly, the Court should deny the Claims Administrator's motion to stay.

Respectfully submitted,

/s/ WILLIAM G. CHASON
RICHARD M. GAAL
State Bar No. ASB-3999-A58R
rgaal@mcdowellknight.com
WILLIAM G. CHASON
State Bar No. ASB-5462-151C
wchason@mcdowellknight.com
MORGAN S. HOFFERBER
State Bar No. ASB-1334-542X
mhofferber@mcdowellknight.com

OF COUNSEL:

McDOWELL KNIGHT ROEDDER & SLEDGE, L.L.C.
11 N. Water Street; Suite 13290
Mobile, Alabama  36602
Tel. (251) 432-5300
Fax (251) 432-5303

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this pleading has been served on All Counsel by electronically uploading same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this the 28th day of January, 2019.

*/s/ WILLIAM G. CHASON*