IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010<br><br>APPLIES TO:<br><br>All Civil Actions of the Plaintiffs Represented by Nexsen Pruet, LLC and Douglas M. Schmidt APLC | Civil Action No. 2:10-MD-02179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br><br>MAG. JUDGE WILKINSON |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE MOTION OF DEFENDANT BP EXPLORATION & PRODUCTION INC., BP AMERICA PRODUCTION COMPANY, AND BP AMERICA INC. ("BP") FOR ENTRY OF AN ORDER RELATING TO THE DISPOSAL OF CERTAIN SAMPLES**

Nexsen Pruet, LLC and Douglas M. Schmidt, APLC, represent approximately 780 of the medical opt-out Plaintiffs in the "B3 bundle" of the BP Oil Spill Class Action MDL 2179 (collectively "Plaintiffs"). BP's Motion seeks Court approval to destroy physical evidence retained by BP pursuant to Pretrial Orders Numbers 1, 39, and the First Amended 39 (collectively referred to as the "Evidentiary PTOs"). For the reasons set forth below, the Court should deny BP's Motion.

Unless otherwise stated, for the purpose of this memorandum, the terms "Sample," "Extract," "Preserve," "Sample Retention Date," and "MDL Party" are defined by this Court's First Amended Pretrial Order No. 39 Relating to Testing of Samples (Doc. No. 10231). Likewise, BP's Motion to destroy this evidence is simply referred to as "the motion," unless otherwise specified.

1

**I.      BP HAS NOT PROVIDED PLAINTIFFS WITH INFORMATION NECESSARY FOR PLAINTIFFS TO DETERMINE WHETHER ANY SAMPLES ARE FIT FOR DISPOSAL.**

Under Paragraph 14 of PTO 1, all parties are required to preserve evidence that may be relevant to this action. Additionally, Paragraph 14 of PTO 1 provides, "Before any devices, tangible things, documents, and other records which are reasonably calculated to lead to admissible evidence are destroyed, altered, or erased, counsel shall confer to resolve questions as to whether the information should be preserved. If counsel are unable to agree, any party may apply to this Court for clarification or relief from this Order upon reasonable notice." PTO 1, ¶ 14. Amended PTO 39 provides specific rules for the testing and destruction of samples and extracts collected by any MDL party. BP's motion, which asks the Court to sanction its destruction of over 235,000 individual, physical samples that may or may not have been tested, does not comply with those requirements.

To date, BP has not fully complied with the Evidentiary PTOs or the evidentiary discovery standards for handling and disclosing information about the samples at issue. BP asserts that "The samples proposed for disposal in Exhibit A consist primarily of samples that have been analyzed and for which data is already available." Yet, when counsel for Plaintiffs requested the results of such analysis, counsel for BP refused to provide such information. BP has failed to act appropriately with regard to the named evidence in a number of ways, including, but not limited to the following:

- Differentiating between which samples in their Exhibit to the Amended Motion have been analyzed and which have not;

- Providing information regarding which samples or analyses they plan to use as a defense to any of the Plaintiffs' claims;

- Providing the stated purpose for which samples were collected, as specified under ¶ 4 and ¶ 16(a)(4) of Am. PTO 39, in order to determine the proper Sample Retention Date;

- Providing their calculations regarding Sample Retention Dates for each piece of evidence;

- Providing information detailing what testing/analytical methods have been employed on which samples;

- Providing information detailing whether the samples are full samples, extracts, or some other remainder from destructive testing methods;

- Providing access to the samples or the testing results;

- Providing full information detailing the exact preservation methods used for each sample, to ensure compliance with ¶ 13 of Am. PTO 39;

- Providing information detailing the extraction locations for over 102,000 of the 235,458 samples proposed for destruction;

- Disclosing whether this is the totality of physical evidence BP has collected and maintained, or whether BP has more physical evidence it is currently storing (that may also be degrading); and

- If BP is, in fact, storing more evidence, whether it plans to use any of the other evidence in attempting to refute Plaintiffs' claims.

BP's Motion was the first notice to Plaintiffs that any of this evidence existed, let alone was stashed in a warehouse, supposedly degrading, while Plaintiffs' have been prohibited from engaging in discovery. What justifies the destruction of evidence before Plaintiffs have been afforded the opportunity for discovery? As stated, there is no information accompanying the

request that gives the results of the testing, any log books, chain of custody, or any other such information.  Many of the samples listed do not even have a location noted, which was necessary under Pretrial Order 39 and its amendment.  All that is before the Court are the unsupported statements of BP that it " . . . has undertaken extensive and costly efforts to preserve these samples in a manner that minimizes any chemical, physical and biological degradation of these samples.  The bulk of material has been stored in glass containers, and robust standard operating procedures have been employed to minimize any loss and degradation."  There is no explanation of the "costly efforts."  There are no specifics about the "robust standard operating procedures."

BP's initial motion contained 1,484 pages of evidentiary samples listed, while their amended Exhibit contains 5,743 pages of evidence, which do not appear to be the exact same as those listed in the first Exhibit.  Altogether, there are over 235,000 individual samples of relevant physical evidence that BP is seeking to destroy, any number of which may never have been tested.  Even with BP's amended motion, which included location information about only some of some of the samples, there is not enough information for the undersigned counsel or their experts to make an informed decision about the necessity of retaining the evidence for their own testing.  And, although other information regarding the samples is referenced, Plaintiffs have no access to that information.

Plaintiffs cannot properly refute BP's claim regarding the viability of other testing methods for the supposedly degraded evidence without information on exactly what each sample contained, the results of testing already done, and the exact methodologies that have already been performed on each sample.  BP has been unwilling to provide this necessary information.  Also, BP should be required to disclose whether the results from any tested samples will be relied upon to oppose Plaintiffs' claims.  Certainly, the cryptic information provided by BP is insufficient to

allow BP to destroy evidence deemed important enough to retain under cover in the first place. For this reason alone, BP's motion must be denied.

In essence, before Plaintiffs have had any opportunity for true discovery in their lawsuits, BP is attempting to destroy unique evidence that is not only relevant, but also may prove integral to Plaintiffs' cases. At this point, BP has, according to their own motion, allowed the spoliation of all of the evidence at issue due to its alleged degradation. Now, BP asks the Court to sanction the full destruction of the evidence or force Plaintiffs to store it at their own cost. This request is a complete dereliction of BP's discovery duties during active litigation.

II.  **THE COURT SHOULD NOT ALLOW BP TO DESTROY RELEVANT PHYSICAL EVIDENCE WITHOUT FULL DISCLOSURE ABOUT THE SAMPLES AND ALLOWING PLAINTIFFS THE OPPORTUNITY TO INSPECT OR ANALYZE THE SAMPLES.**

The stated purpose of Paragraph 14 of PTO 1 was to ensure the preservation of evidence for the benefit of all parties in all cases, including the Plaintiffs. The testing and preservation requirements of the Evidentiary PTO's are clearly aimed at giving all parties access to detailed information about samples, and the ability to analyze and test samples. Plaintiffs have had no opportunity to discover any information about the samples, much less analyze them. Thus, BP must not be allowed to destroy the over two-hundred-thirty thousand pieces of evidence over the objections of Plaintiffs.

All the opt out cases have been under a stay order pursuant to PTO No. 25, Doc. No. 983 filed January 12, 2011. The deadline to opt out for claimants of the class action passed on October 1, 2012. Prior to the stay, only the Plaintiffs Steering Committee was allowed to engage in discovery. Now, before any discovery has taken place in the opt out cases, BP is seeking Court approval to destroy evidence that was procured and retained as "relevant" evidence under paragraph 14 of PTO 1.

Plaintiffs do not know whether any of the evidence listed has been tested, what the methodology of the testing was, what the outcome of such testing was, and in many cases, who collected and tested the listed evidence. Additionally, if testing has been performed by BP, BP has not indicated whether it will rely on the results of such testing to attempt to defeat Plaintiffs' claims. BP cannot destroy evidence before providing such information, and giving the Plaintiffs the opportunity to inspect and/or test for themselves. Granting BP's motion would amount to court-sanctioned spoliation to the detriment of all remaining Plaintiffs.

Furthermore, BP admits in its memorandum to the Court that much of the evidence they seek to destroy has not been tested, and now claims that the time period within which to reliably test it has passed. See BP's Memorandum in Support of the Motion of Defendant BP Exploration & Production Inc., BP America Production Company, and BP America Inc. ("BP") For Entry of an Order Relating to the Disposal of Certain Samples, at 2 ("Additional samples proposed for disposal that have not yet been analyzed consist of . . . ."). There is no delineation or indication on BP's exhaustive exhibit listing the evidence to inform the parties which samples have been tested or are no longer viable for testing. BP must not be allowed to destroy evidence in the absence of such information and without Plaintiffs having the opportunity to inspect and analyze the samples.

**III.   THE LISTED SAMPLES AND EXTRACTS CAN BE ANALYZED TO PROVIDE RELEVANT, RELIABLE DATA.**

BP, through counsel, has made representations to the Court in its motion about the viability and reliability of any possible future testing of the samples that can be neither confirmed nor refuted without more detailed information concerning each listed sample of evidence. The non-descript, generalized information provided is wholly insufficient for

6

Plaintiffs or their experts to determine whether the evidence should be preserved, let alone whether Plaintiffs wish to conduct their own testing on such materials.

The basis for BP's request to dispose of the evidence at issue is the broad statement by BP, through its counsel, that "[d]ue to the amount of time that has passed since the samples were initially collected, the degradation of these samples has rendered them virtually unusable." BP offered no expert affidavit to support this sweeping assertion that only raises further unanswered questions: At what point did the samples become untestable and/or unusable? What has BP done to preserve the samples? Why were Plaintiffs not informed of the existence of these samples before they degraded to such an extent?

Plaintiffs submit herewith, and incorporate herein, as Exhibit "A" an affidavit from potential expert witness, Dr. Marco Kaltofen, PhD, PE, C. NSE, that refutes BP's assertion that the evidence is no longer useful or reliable. Some number of the 235,000 samples could contain crude or weathered oil, which has existed on earth for millions of years; plenty of meaningful, reliable data can be extracted from such samples despite the fact that they have been sitting in glass containers in a warehouse in Colorado for eight years, as opposed to within the earth's crust.

The only scientific basis on which Defendants rely to support their assertion that their samples should be disposed of is the US Environmental Protection Agency's Methods for Chemical Analysis of Water and Wastes. EPA-600/4-79-020 (US EPA 1983). This document provides test procedures that are approved for monitoring water supplies under safe water, waste management, and ambient water monitoring federal legislation. The document itself notes that its methods are not exclusive for testing such items, even under the strict standards of the federal regulations they are designed to satisfy: "Although other test procedures may be used, as

provided in the Federal Register issue . . . , the methods described in this manual will be used by the [EPA] in determining compliance with applicable water and effluent standards established by the Agency." Id. at xiv.  Additionally, even though Pretrial Order 39 also lists this EPA document as a standard by which testing methods can be performed, it also allows for "other analytical methods contained in regulations or guidance published by a federal agency, or any other widely accepted standard operating procedure." (Am. PTO 39, ¶ 9.)  Scientific advances are always being made, and newer, more efficient testing methods on nearly any kind of physical evidence are being promulgated regularly.  These cases have been stayed for many years.  It is not only possible, but probable, that there exist newer, better, or simply different testing methods for the samples listed that could generate useful data.  The affidavit of Dr. Kaltofen supports this assertion.  See, Exhibit "A" attached hereto.

Thus, even if BP is correct in its assertion that the samples cannot reliably be tested under the EPA's promulgated rules, that fact alone would not discharge the usefulness of the samples. BP has submitted no scientific testimony from any possible or proposed experts to back up the assertions in motion and supporting memorandum.  Because the samples may still be of scientific evidentiary use, BP must be ordered to preserve them, just as any other relevant evidence. Plaintiffs should not be deprived of the opportunity to review and analyze all the evidence. The fact that their cases have been stayed for years should not result in further prejudice to Plaintiffs' claims.

**IV.    BP'S OFFER TO ALLOW PLAINTIFFS TO STORE THE SAMPLES AT THEIR OWN EXPENSE IGNORES BP'S LEGAL OBLIGATIONS.**

By suggesting to the Court that Plaintiffs can obtain samples of the material at their own cost, BP is attempting to unfairly shift the burden of the cost of evidence preservation to the Plaintiffs, whose cases, essentially, have not begun.  Plaintiffs have not been able to issue

8

subpoenas or discovery requests to Defendants or any other entities since the inception of their cases due to the Stay of Proceedings this honorable Court imposed in January of 2011, which suspended all forms of discovery for the opt-out plaintiffs.  BP is attempting to have the Court sanction its spoliation of highly sensitive, unique evidence to which Plaintiffs have not had access to perform their own testing or even to examine the already-existing analytical results. Requiring Plaintiffs to shoulder the burden for the cost of preserving sample evidence that Defendants, presumably, procured and analyzed would be an inequitable shift of the duties and burdens of the parties during litigation.  Plaintiffs already have the duty to maintain their own evidence, which they have maintained for the past eight years.  BP must maintain its evidence until, at the very earliest, the Stay of Proceedings has lifted and Plaintiffs have had a reasonable opportunity to discover all details relating to the samples and, if necessary, to analyze and test them.

## CONCLUSION

For the first time BP is bringing to the Court's attention that a massive number of samples it has been required to maintain are now "unusable".  To allow the destruction of the samples would greatly exacerbate this problem and deprive Plaintiffs of due process.  BP has failed to provide sufficient information about each listed sample for Plaintiffs to determine whether the samples will be important evidence to the lawsuits.  The destruction of this substantial body of evidence, could adversely impact Plaintiffs' ability to prove their levels of toxic exposure.  Plaintiffs should be allowed discovery related to the samples to determine whether disposal is appropriate.  After such discovery, the Court would have a more complete record to decide whether the samples can be discarded.  The failure of  If it is established that BP failed to properly preserve and document the samples, such failure should result in a negative

inference against BP. See, PTO 1, paragraph 14. Therefore, BP must not be allowed to further skirt their evidentiary responsibilities in the discovery process by destroying evidence before true litigation begins for Plaintiffs.

It is not a viable solution to shift the burden of preserving this evidence to Plaintiffs. BP must meet its preservation obligations until all cases are resolved. BP was found grossly negligent in causing the oil spill. Requiring the victims of that negligence to fund the preservation of BP's evidence would be a tremendous miscarriage of justice.

Accordingly, Plaintiffs respectfully request that the Court deny BP's Motion for Entry of Order Relating to the Disposal of Certain Materials.

Respectfully Submitted,

　/s/ Paul A. Dominick
Paul A. Dominick    Fed ID No. 577
NEXSEN PRUET, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC  29402
PHONE:  843.577.9440
FACSIMILE:  843.720.1777
PDominick@nexsenpruet.com

and

Douglas M. Schmidt    Fed ID No. 11789
Douglas M. Schmidt, APLC
335 City Park Avenue
New Orleans, LA 70119
PHONE:  504-482-5711
FACSIMILE:  504-482-5755
Dglsschmdt@yahoo.com

Attorneys for Plaintiffs

Dated: January 29, 2019

CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of January, 2019.

        /s/ Paul A. Dominick
        Paul A. Dominick