**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010** | **Civil Action No. 2:10-MD-02179** |
| | **SECTION: J** |
| **APPLIES TO:** | |
| **All Civil Actions of the Plaintiffs Represented by The Downs Law Group and all similarly situated Plaintiffs** | **JUDGE CARL BARBIER** |
| | **MAG. JUDGE WILKINSON** |

**OPPOSITION OF THE DOWNS LAW GROUP PLAINTIFFS TO THE MOTION OF DEFENDANTS BP EXPLORATION & PRODUCTION INC., BP AMERICA PRODUCTION COMPANY, AND BP AMERICA INC. ("BP") FOR ENTRY OF AN ORDER RELATING TO THE DISPOSAL OF CERTAIN SAMPLES**

**MAY IT PLEASE THE COURT:**

### I. NATURE OF THE RELIEF SOUGHT BY DEFENDANTS

The BP defendants have filed a motion to dispose of certain samples that were collected to assist the Natural Resource Damage Assessment conducted by Federal and State natural resource Trustees to assess natural resource damages resulting from the *Deepwater Horizon* oil spill. (DKT 25266)

While defendants contend that "[a]detailed overview of samples proposed for disposal, including the item source and collection date, is set forth in Exhibit A," in fact, the first entry, which is undoubtedly representative but certainly not a "detailed overview," states:

BA0S6Z 1 Quart Plastic Bag AF - Animal Feed 12/2/2013

BP further describes the material to be destroyed as being in the category (whatever that means) of "physical samples taken from source and various locations in the Gulf region, and to preserve reports and analysis, for example, related to these samples.

> The samples proposed for disposal in Exhibit A consist primarily of samples that have been analyzed and for which data is already available. Additional samples proposed for disposal that have not yet been analyzed consist of (1) water samples that are approximately four to eight and half years old; (2) tissue and sediment samples that are approximately four to eight and half years old; and (3) waste samples. BP has undertaken extensive and costly efforts to preserve these samples in a manner that minimizes any chemical, physical and biological degradation of these samples. The bulk of material has been stored in glass containers, and robust standard operating procedures have been employed to minimize any loss and degradation.

BP continues

> Despite these efforts, it is impossible to fully preserve these samples in the condition they were in at the time of collection. The best storage methods merely slow down the chemical, physical and biological changes that inevitably continue after the sample is collected. All of the samples proposed for disposal in this motion have exceeded the maximum time in which samples can be held before analysis, and still yield results that are considered reliable and valid under US EPA sampling protocols. *See, e.g.*, Methods of Chemical Analysis of Water and Wastes, Sample Preservation, EPA-600/4-79-020 (US EPA 1983). Due to the amount of time that has passed since the samples were initially collected, the degradation of these samples has rendered them virtually unusable."

Despite BP's contention that the degradation of these samples has rendered them unusable, attached please find declarations detailing not only that the opposite is true but also that using EPA sampling protocols is not appropriate in these cases. (See attached Exhibit A - declarations from Dr. Ira Leifer and Dr. Patricia Williams).

## II. SUMMARY OF THE ARGUMENT

1.      Inasmuch as BP has only now revealed that the samples have been kept so long, that testing, according to BP, cannot yield results that are considered reliable and valid, does this mean that the preservation order of this Court has effectively been violated?

2.      Is this motion premature in the absence of the data and analysis conducted by BP as this has not permitted the BELO plaintiffs to be informed of how many of these samples are relevant to the claims of the thousands of plaintiffs who have or will file suit. Furthermore, this information, is essential to plaintiffs' experts and will undoubtedly delay the time within which expert reports can be provided in these hundreds of cases for months. BP has no one to blame but itself for thus hiding these 140,000 critical balls.

3.      Destruction of evidence prior to the conclusion of the BELO cases and any other kind of litigation is unprecedented, unwise, and risks injustice.

## III. THE OSTENSIBLE HISTORY OF THE PREPARATION
## AND PRESENTATION OF THE SAMPLES

Based on the 1,484 pages listing single-spaced descriptions (95 on the first page -- presumably totaling around 140,980) of samples[1] provided by BP to the BELO plaintiffs in connection with its motion, it is obvious that BP made a serious effort (the extent of which cannot be known because of the opacity of said descriptions) to obtain and preserve thousands of samples for litigation purposes. These samples were taken at undisclosed locations but presumably in clean-

---

[1] Dkt. 25226-2.

up areas and thereby are essential to the BELO plaintiffs and their experts if they are going to prove causation and overcome the affirmative defenses plead by BP in every case.[2]

While obviously, the scope of this duty depends on reasonableness, here the defendants have made that choice by preserving the over 140,000 samples. The Court will recall that it granted the defendants' motion to reduce the size of the samples from large containers to smaller sample containers based on BP's original request. Although the Downs Law Group plaintiffs were understandably concerned with destruction of any samples obtained and in the sole control of the defendants, undoubtedly at great cost, the Court granted that motion.

### IV. DISPOSAL OF BP'S SAMPLES MAY OR WILL HAVE DAMAGING AND PERHAPS IRREVERSIBLE COMPLICATIONS FOR PLAINTIFFS AND THE COURT IN PENDING AND UPCOMING LITIGATION.

"Litigants have a duty to preserve evidence that may be relevant to pending or anticipated litigation…the key issue that courts consider in determining whether or not a duty to preserve exists centers on whether the party had notice of the relevance of the evidence in question" (§ 3.01 DUTY TO PRESERVE, Elect. Disc. L. & Pract. 5622236). Recognizing this important principle, this Court entered very specific preservations orders in PTO1-¶ 14 and Amended Pretrial Order No. 39.

Under normal circumstances, litigants have a duty to preserve evidence during the **pendency** of the litigation. This is true in the exceptional case at hand for many reasons: 1) this is the worst environmental disaster in history and the only oil spill of this magnitude; 2) litigation

---

[2] For example, please see DKT No. 4 in 2:18-cv-12541

regarding this disaster is stayed in various cases (the situation for all the opt out plaintiffs); 3) litigation has just commenced in others (the situation for all the thousands of BELO plaintiffs).

"The key questions that a litigant must address in dealing with the duty to preserve are, [a] what is the scope of the duty; [b] [what] needs to preserved, and [c] when does the duty to preserve trigger?" (*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004).

The obvious nature of the duty to preserve was reflected by the wise and comprehensive provisions of the applicable pretrial orders. Accordingly, the last key question [c] when does the duty to preserve trigger, has been long resolved.

The first of the above key questions [a], relates to what is the scope of the duty? Courts have held that "while a litigant is under no duty to keep or retain every[thing] in its possession…it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." (*Scott v. IBM Corp.*, 196 F.R.D. 233, 249 (D.N.J. 2000). In responses to the discovery that has already been propounded and to which responses are due or soon will be due, there is no doubt that that defendants, if they answer in good faith, will **have** to refer to the very samples which they propose to destroy. (See attached Exhibit B- Plaintiff's First Set of Interrogatories). Some of the plaintiffs represented by the Downs Law Group have received initial disclosures the majority, if not all, of which have been largely redacted and deemed confidential by defendants and/or are undecipherable. To the extent that these disclosures are not confidential as far as plaintiffs' counsel can tell, no samples are referenced, nor can plaintiffs' counsel tell whether any samples referenced are the same or different as the ones that BP is

attempting to dispose in this motion.[3] In addition, plaintiffs' interrogatories request information and presumably BP will either reference one or more of the samples, or the samples will lead to discoverable evidence, *e.g.*, human health effects when exposed to Defendants' crude oil, dispersants, or both. Consequently, BP has a duty to preserve the entirety of these samples as they presently know that these samples will be dispositive in litigation.

With regards to the second key question, [b] what needs to be preserved -- in this particular case, other than the samples taken by the opt-out Plaintiffs experts, there been no understanding as to the samples Defendants are attempting to dispose. This was the first notice the Downs Law Group BELO plaintiffs had that the samples' existence tied into the initial discovery answers that were recently provided. As a matter of fact, the pending discovery was propounded not knowing or understanding that this critical resource was available to plaintiffs and their experts. The lack of clarity in the alphanumeric identification system is also of no help. As there has been and is no way to figure out what testing has been done on these samples, no expert conclusions can have been reached. It is doubtful that any expert reports can be yet be given that have any relevance to each or any individual BELO Plaintiff without an understanding of what BP has, its data and analysis, and what it proposes to destroy.

## V. THE PROPOSED SOLUTION

It is way too early in the BELO litigation to dispose of poorly described but obviously unique evidence selected and collected by BP at a cost of thousands or millions of dollars. The

---

[3] If in fact any samples do happen to be referenced, however to date, plaintiffs' counsel has found no such references. See attached Exhibit C which represents one of 49 folders of initial disclosures provided in a select plaintiff's case.

normal practices in the undersigned's experience in the courts of the United States is for the Clerk of Court to send out a notice, long after the conclusion of the case, asking whether anyone wants exhibits, which were sufficiently important to have been entered into evidence. Here no one other that BP, who is only now offering to tell, knows relevant information as to the potential importance of the samples. Destruction of evidence is final. Once the samples are gone, based on an order of this Court, substantive prejudice would be an irretrievable result – resulting in the lack of evidence, that would otherwise have been available had samples taken at the location of the harm to each plaintiff been preserved.

While other courts have requested litigants preserve *all* information, the BELO Plaintiffs merely request the preservation of the samples that remain; which can then be tested by Plaintiffs' experts, a discovery right that plaintiffs should not be deprived of but also which has actually been offered by BP. The court in *Rimkus v. Cammarata*, stated that "what is acceptable in a case depends on what is reasonable, and that in turn depends on whether what was done – or not done – was *proportional* to the case." (emphasis added) (*Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 613 (S.D. Tex.2010)). As the case at hand is the first of its kind, likely to be one of, if not already, the largest litigation in the country aside from the World Trade Center lawsuits, the request to preserve the few remaining samples that remain, fits squarely within the proportionality requirement of the *Cammarata* case.

The request made, given the preliminary procedural posture of the BELO cases, is both unprecedented and unwise and goes against everything the courts and litigants have learned about premature destruction of evidence whether intentionally or inadvertently.

BP cites no law. The opposition this day filed on behalf of other plaintiffs cites no law. The research performed by undersigned counsel (including enlisting the assistance of a Westlaw research specialist), uncovered no case in which this extraordinary relief has been requested, much less granted during the pendency of litigation.

## CONCLUSION

Permitting destruction of more than 100,000 samples during the initiation phase of the BELO lawsuits does not seem right. Rather it seems risky and even wrong. Perhaps, the offer made by BP of access to the samples will make this better, but this is something that will take months and will undoubtedly delay any meaningful trial.

At a minimum there should be an evidentiary hearing with witnesses to explain the nature of the samples, the cost of preservation, the reasons why each sample was taken, the meaning of the alphanumeric in the left hand column, and for the establishment of a record.

In the mean time, consideration of the motion should be deferred until the Court feels itself fully informed. Discovery, including as to the nature of the samples, is ongoing. Let's wait and not let the samples, like lemmings on the edge of the cliff, be irretrievably lost and grievous harm done.

Respectfully Submitted,

**THE DOWNS LAW GROUP, P.A.**

_____/s/ Craig T. Downs

**CRAIG T. DOWNS**, **FL BAR # 801089**
**NATHAN L. NELSON, FL BAR #1002523**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Telephone: (305) 444-8226

Facsimile: (305)-444-6773

Email: cdowns@downslawgroup.com

nnelson@downslawgroup.com

KOERNER LAW FIRM

/s/ Louis R. Koerner, Jr.

Louis R. Koerner, Jr.

Louisiana Bar 7817

1204 Jackson Avenue

New Orleans, Louisiana 70130

New Orleans: 504-581-9569

Houma: 985-580-0350
Telecopier: 504-324-1798

(Cellular) 504-405-1411

e-mail: koerner@koerner-law.com

URL: http:/www.koerner-law.com

*Attorneys for the Downs Law Group Plaintiffs*

**CERTIFICATE**

I hereby certify that a copy of the foregoing pleading has been served upon all interested

counsel by ECF filing on January 31, 2019.

/s/Louis R. Koerner, Jr.
Louis R. Koerner, Jr.