UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | SECTION: J |
| Of Mexico on April 20, 2010 | * | JUDGE BARBIER |
| Applies to *Sergio A. Alvarado* | * | MAG. JUDGEWILKERSON |
| CASE No. 13-cv-01778 | * | |

## MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL AND/OR MOTION FOR RELIEF FROM JUDGMENT OR ORDER

May it please the Court:

Claimant Sergio A. Alvarado files this Memorandum in Support of Motion for Reconsideration of Dismissal and/or Motion for Relief from Judgment or Order from the Order rendered against Mr. Sergio A. Alvarado in the above referenced MDL No. 2179 with respect represents the following to wit:

## INTRODUCTION

Plaintiff Sergio A. Alvarado has a personal injury claim because of the oil spill caused by the explosion of the oil rig "Deepwater Horizon" in the Gulf of Mexico on or about April 20, 2010. From June 2010 to October 2010, Mr. Alvarado worked ten (10) to twelve (12) hours per day, five (5) to (7) days a week in cleanup operations and was exposed to dangerous toxins including but not limited to oil and dispersants. Claimant's job responsibilities as a deckhand employed on a vessel collecting oil included the handling of booms and oil mops.

Mr. Alvarado suffered symptoms including but not limited to cough, nasal congestion, chest pain, runny nose, aching chest, and chest congestion. Mr. Alvarado has been diagnosed with

**(1) contact/exposure to potentially hazardous substance, exposure to solvents, petroleum products and dispersants**

**(2) chronic rhinitis, and**

**(3) unspecified chronic bronchitis**

Currently, Mr. Alvarado is forced to wear a heart monitor because he is suffering from pre-stroke symptoms. Thus, he has a serious case which should be allowed to proceed.

**ORDER OF DISMISSAL**

On or about January 31, 2019, this Honorable Court issued an Order (PTO 66 Compliance Order) in the above referenced and entitled matter. On page 19 of said Order as it pertains to Mr. Alvarado stated the following:

> With the exception of those cases marked "DO NOT CLOSE" none of the cases identified below have any claims remaining. Consequently, the Clerk of Court is instructed to CLOSE each of the cases listed below EXCEPT those marked "DO NOT CLOSE."

**Mr. Alvarado's case assigned with Case No. 13- cv-01778 was ordered by this Honorable Court to be closed by the Clerk of Court.**

The reasoning of this Court regarding its decision in the Alvarado case is highlighted on page(s) 11 and 12 of the Court Order. The Court concluded that Mr. Alvarado currently is a class member who can no longer file a claim within the class action litigation and, since he did not properly opt-out of the class action litigation, his claims described above are barred.

**HISTORY OF MR. ALVARADO'S CLAIM**

On or about April 13, 2011, Mr. Alvarado signed a " Direct Filing Short Form" which indicated that he wanted to file a claim in the "IN RE: OIL SPILL by "Deepwater Horizon"

Mr. Alvarado is married, and his wife does not speak any English. Mr. Alvarado and his wife were completely unfamiliar with the judicial process and any procedures pertaining to class action litigation. It was his wife who received the mail and because of the language barrier (speaking only Spanish), she did not recognize the importance of the correspondence related to the Court's opt-out procedures and inadvertently and mistakenly threw the mail in the garbage.

Unbeknownst to Mr. Alvarado, his wife threw away a copy of the opt-out Order issued by this Honorable Court on or about May 2, 2012. She also threw away a letter that was sent to the client base on June 20, 2012, regarding the Court's opt-out procedure. She also threw away correspondence sent on or about October 1, 2012, that informed claimants of the original opt-out deadline. **MR. ALVARADO DID NOT INTENTIONALLY MISS THE OPT-OUT DEADLINE BECAUSE HE DID NOT KNOW OF THE DEADLINE. He missed the deadline because his wife failed to recognize the importance of the mail received and unwisely threw the correspondence in the trash.**

On or about April 19, 2013 undersigned counsel filed a Complaint for Damages on behalf of Mr. Alvarado in the United States District Court for the Eastern District of Louisiana. **His Complaint was timely filed pursuant to the Uniform Statute of Limitations for Maritime Torts 46 U.S.C.A. § 30106 formerly at 46 U.S.C.A § 763a. The Uniform Statute of Limitations for Maritime Torts provides a general three year statute of limitations barring claims arising from injury or death occurring on navigable waters during a traditional maritime activity three years after the cause of action accrues. By its terms, the Uniform Statute applies to all suits of personal injury and death "arising out of a tort." It is settled law that a tort becomes a maritime tort when it occurs anywhere on navigable waters. See** *Jerome B. Grubert, Inc. v. Great Lakes Dredge*

*& Dock Co. 513 U.S. 527 (1995)* and bears a substantial relationship to traditional maritime activity. Id.

Furthermore, maritime torts invoke federal admiralty jurisdiction, and with admiralty jurisdiction comes the application of substantive admiralty law. State and federal courts have consistently held that the Uniform Statute, as an integral part of the substantive admiralty law, must be applied to all maritime tort claims regardless of the forum in which those claims are brought. ***Butler v. American Trawler Co.*, 887 F.2d 20, 21 (1st Cir. 1989), *Davis v. Newpark Shipbuilding & Repair, Inc.*, 659 F. Supp. 155, 156-57 (E.D. Tex. 1987), *Anderson v. Varco Int'l, Inc.*, 905 S.W.2d 26, 29 (Tex. Ct. App. 1995), *Anderson v. Diamond M-Odeco, Inc.*, 912 S.W.2d 371, 372-73 (Tex. Ct. App. 1995).** The Uniform Statute of Limitations for Maritime Torts **cannot be** avoided simply by choosing one forum over another because the statute governs maritime tort claims regardless of the forum in which they are asserted. The Uniform Statute not only establishes the applicable limitation period but it also completely displaces and supplants any state law tolling provisions that might otherwise extend the limitation period.

It is clear the Uniform Statute of Limitations for Maritime Torts applies to Mr. Alvarado because he was employed as a deckhand on a vessel operating on navigable waters and his employment bears a substantial relationship to traditional maritime activity. Summons was issued and the Defendants listed below were served with Mr. Alvarado's Complaint.

1. Anadarko Petroleum Corp.
2. Anadarko E&P Company
3. BP Exploration& Production, Inc.
4. BP American Production Company
5. Transocean Deepwater, Inc.
6. M-I, LLC
7. Cameron International Corp.
8. Halliburton Energy Services, Inc.
9. Sperry Drilling Services
10. Transocean Ltd.
11. Transocean Offshore Deepwater Drilling, Inc.
12. Transocean Holdings LLC
13. Triton Asset Leasing GmbH
14. MOEX Offshore 2007 LLC
15. MOEX USA Corporation
16. Mitsui Oil Exploration Co. Ltd.
17. BP p.l.c.

As directed by this Honorable Court, Mr. Alvarado on July 25, 2013, filed " Plaintiffs' First Amended and Supplemental Complaint for Damages" in the above entitled and referenced case (Case No. 2: 10-md- 02179-CJB-SS) Summons were issued and the Defendants listed above were served with Mr. Alvarado's First Amended and Supplemental Complaint for Damages.

Thus, the above-referenced Defendants have known about Mr. Alvarado's case and his desire to opt- out of the Deepwater Horizon litigation since 2013 because of the Complaint and the First Amended and Supplemental Complaint for Damages that he filed and the Summons that were issued and served on the Defendants.

Mr. Alvarado also complied with court orders issued by this Honorable Court. He filed an " Exhibit A- Form for Disclosures Regarding Clean-up, Medical monitoring, and Post- April 20 Personal injury claims, and all other B3 claims" on or about February 22, 2017, to comply with Court Order PTO 63 which was due on May 3, 2017. Mr. Alvarado also submitted a "PTO 66 Particularized Statement of Claim for Remaining B3 Plaintiffs" on April 9, 2017, to comply with Court Order PTO 66 which was due on August 8, 2018.

**RULE 60(b)(c) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Mr. Alvarado respectfully submits that he is entitled to relief from this Honorable Court's Order(PTO 66 Compliance Order) because of the provisions of Rule 60(b)(1) of the Federal Rules of Civil Procedure which states the following:

(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1) mistake, inadvertence, surprise, or excusable neglect;**

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated, or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

(c) TIMING AND EFFECT OF THE MOTION.

(1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2) *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation

In ***Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd., 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court*** described excusable neglect as an "elastic concept" that encompassed "situations in which the failure to comply with a filing deadline is attributable to

negligence." **Id. at 394, 113 S. Ct. 1489.** A determination of whether neglect is "excusable" is "at bottom an equitable one, taking account of all relevant circumstances." *Id.* at 395, 113 S. Ct. 1489.

The Supreme Court announced four factors to be considered to determine whether "excusable neglect" exists to grant relief from an Order or Judgment. They are:

> **(1) the danger of prejudice to the opposing party;**
>
> **(2) the length of delay and its potential impact on the proceedings;**
>
> **(3) the reason for the delay and whether the delay was within the reasonable control of the moving party; and**
>
> **(4) whether the late party acted in good faith.** *Id.* at 395, 113 S. Ct. 1489:

See: ***Webster v. Pacesetter Inc. 270 F.Supp.2d 9(D.D.C. 2003); Jennings v. Rivers 394 F.3d 850(C.A.10,2005)***

The Court in ***Jennings supra*** further stated

> Rule 60(b)(1) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment .... for the following reasons: mistake, inadvertence, surprise, or excusable neglect..." It "is an extraordinary procedure" which "'seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts.'" Cessna Fin. Corp., 715 F.2d at 1444 (quoting Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401 (5th Cir.1981) (additional internal quotation marks omitted)). The rule "should be liberally construed when substantial justice will thus be served." Id. Jennings v. Rivers, 394 F.3d 850 (10th Cir., 2005)

In ***Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401 (5th Cir.1981)*** the Fifth Circuit Court of Appeal further stated:

> In this light, it is often said that the rule should be liberally construed in order to do substantial justice. (Internal citations omitted)What is meant by this general statement is that, although the desideratum of finality is an important goal, the justice-

> function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause.(Internal citations omitted} The desirability of order and predictability in the judicial process calls for the exercise of caution in such matters. See **But there can be little doubt that Rule 60(b) vests in the district courts power "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."**

A court may consider whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay) *Hancock v. City of Okla. City, 857 F.2d 1394, 1396 (10th Cir.1988).*

## THE LAW REGARDING THE FILING OF LATE OPT-OUTS

The Tenth Circuit Court of Appeal in the case *In re Four Seasons Securities Laws Litigation 493 F. 2d 1288 (10 Cir. 1974)* considered whether the Bank of America effectively opted out of a class action case. The Bank had sent a letter to the Trustee for Four Seasons in which it expressed concern as to whether " it could participate in the class and also retained its cause of action which was already filed in the California state court."

The Tenth Circuit Court of Appeal recognized that a finding of excusable neglect under Rule 6(b)(2) requires both a demonstration of good faith by the parties seeking the enlargement and it must appear that there was a reasonable basis for not complying within the specified period. Furthermore, the Court found that the facts supported a finding of good faith on the part of the Bank. It noted that there was no indication that the tardiness was part of a strategy designed to gain any tactical advantage. The Bank, it concluded was merely seeking to clarify its legal position. The Court also concluded that **there was no prejudice suffered by the Defendants or other parties from the enlargement of time**. Allowing the Bank to opt out did not deplete the sum reserved for outside claims. Inasmuch as there was no showing of bad faith or prejudice to the appellant, the trial court's ruling enlarging the time under Rule 6(b)(2) was not erroneous.

The Court also cited 7A Wright Miler & Kane, Federal Practice and Procedure 1787 (1972) p.156 states in pertinent part the following:

> Rule 23 (c)(2) does not specify how the absentee is to request exclusion. It certainly would be an undue burden on class members to require them to retain counsel and prepare a formal legal document; on the other hand, allowing too much informality might pose problems of authenticity and ambiguity. **Nonetheless, considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence should suffice.**

In affirming the trial court's ruling, the Tenth Circuit Court of Appeal concluded the following:

> A reasonable indication of a desire to opt out ought to be sufficient. Here the Bank's inquiries and expressions of its wish were adequate. As the authors of the treatise cited above indicate, flexibility is desirable in determining what constitutes an expression of a class member's desire to exclude himself and any written evidence of it ought to be sufficient.

The Court in ***Plummer v. Chemical Bank 668 F.2d 654, 657 (2nd Cir. 1982)*** in footnote 2, pg. 662 favorably citing the Four Seasons case and stated:

> **Any reasonable indication of a desire to opt out should suffice**. In re Four Seasons Securities Laws Litigation, 493 F.2d 1288, 1291 (10th Cir. 1974); 7A Wright & Miller, Federal Practice and Procedure § 1787 (1972).

In the case ***In re Linerboard Antitrust litigation 223 F.R.D. 357 (E.D. Pa. 2004)*** the Court stated that "a 60(b) motion to set aside a judgment is to be construed liberally to do substantial justice" citing ***Fackelman v. Bell 564 F.2d 734,735 (5th Cir. 1977)*** In addition, the ***Linerboard court*** also agreed with ***Plummer, supra*** and the court in ***Four Season Securities***, supra "that a "reasonable indication" of intent to opt out is sufficient" or "**any reasonable indication of a desire to opt out should suffice.**"

The Court In re Linerboard Antitrust Litigation supra cited ***McCabbrey v. Boise House and Land Corp. 71 F.R.D. 62 (N.D. Cal. 1976)*** which held that various parties had effectively opted out of a class action litigation by filing their own lawsuits even though they had not filed a formal, written exclusion request stating:

> The serious due process implications of holding an absent class member bound by a class adjudication demand that we look beyond formalistic procedures to evaluate whether a class member has reasonably expressed a desire to be excluded from a class suit. "No reasonable person could view their conduct as expressing a desire to participate in this proposed settlement."

**It is important to note that a lawsuit in *McCubbrey* supra was filed after the deadline to file an opt-out had passed and the Court extended the deadline to opt-out.**

The Court in the *Linerboard Antitrust litigation* supra gave relief to those clients that had filed Motions pursuant to Rule 60 (b) and allowed them to opt out of the class action litigation.

In the case, **In Re Processed Egg Products Antitrust Litigation 130 F. Supp 3d 945 (ED Pa 2015)** the Court on page 952 provided a survey of the law regarding late opt-outs.

> Where a party fails to file an opt-out form, "[t]he law requires a 'reasonable indication' of a party's intent to opt-out for an

opt-out to be proper. In determining whether a party has given a reasonable indication of its intent to opt out, courts use considerable flexibility." In re Linerboard Antitrust Litig., 223 F.R.D. 357, 366 (E.D.Pa.2004) ; see also Plummer v. Chem. Bank, 668 F.2d 654, 657 n. 2 (2d Cir.1982) ("Any reasonable indication of a desire to get out should suffice."); In re Four Seasons Sec. Laws Litig., 493 F.2d 1288 (10th Cir.1974) ; McCubbrey, 71 F.R.D. at 70–71 ("[N]o reasonable person could view their conduct as expressing a desire to participate in the proposed settlement.").

The Court further stated **Processed Egg Products Antitrust Litigation 130 F. Supp 3d 945 (ED Pa 2015) also stated that a party "must perform some action that is unambiguously inconsistent with an intention to participate in the settlement."** Finding that the delay in the filing of the opt-out was due to "excusable neglect" the Court extended the deadline to opt- out.

## ARGUMENT

Mr. Alvarado respectfully submits that it is equitable that he be granted relief from this Honorable Court's Order  (PTO 66 Compliance Order) that closed out his case in the above referenced and entitled matter. Mr. Alvarado is clearly a class member involved in cleanup operations because of his employment as a deckhand handling booms and oil mops on a vessel collecting oil caused by the explosion of the Deepwater Horizon oil rig. As described above and in the Affidavit executed by Mr. Alvarado, he suffered compensable injuries as a result of his employment.

The four factors cited in *Pioneer Inv. Servs Co. supra* to establish "excusable neglect" required of Rule 60 of the Federal Rules of Civil Procedure are met in this case. There is no "danger of prejudice to the opposing party". The Defendants are fully aware of Mr. Alvarado's claim since he initially filed a  "Direct Filing Short Form"  on  April 13, 2011.  More importantly, Mr. Alvarado filed an independent suit base on maritime law that was timely filed pursuant to the Uniform Statute of Limitations for Maritime Torts. Mr. Alvarado claims are maritime because he was employed as a deckhand on a vessel operating on navigable waters and his employment bears a substantial relationship to traditional maritime activity. His case would have proceeded even if class action litigation had not been instituted. Properly served, the Defendants listed above would have had to defend his action because it was timely filed and has substantial merit.

Defendants are also not prejudiced because they knew of Mr. Alvarado's intention to opt out of the class action litigation because he filed his initial Complaint for Damages on April 19, 2013, and they were subsequently served Summons issued by the Clerk of Court. On July 25, 2013, Mr. Alvarado filed an Amended Complaint in the above referenced MDL which also demonstrated his intention to opt-out of the class action litigation.

Allowing Mr. Alvarado's case to proceed will not affect "the length of delay and its potential impact on the proceedings." It is important to note that Mr. Alvarado's individual Case

No. 13-cv-01778 has been stayed per Court Order. Despite the Stay, Mr. Alvarado's case has not remained dormant. The Defendants are fully aware of the particulars of Mr. Alvarado's claim and his personal, medical and employment history and background because he has filed an " Exhibit A- Form for Disclosures Regarding Clean-up, Medical monitoring, and Post- April 20 Personal injury claims, and all other B3 claims" on or about February 22, 2017, and also a "PTO 66 Particularized Statement of Claim for Remaining B3 Plaintiffs" on April 9, 2017.

Mr. Alvarado in his Affidavit that explains that it was his wife who does not speak English who received the mail and not knowing its importance, inadvertently and mistakenly threw the mail in the trash. Neither Mr. Alvarado and his wife have any experience in judicial and class action matters. Mr. Alvarado did not purposely miss the deadline in order to gain some advantage or to improve his legal position in some undefined way. Mr. Alvarado respectfully submits that the discarding of mail into the trash constitutes a "single unintentional incident and is not "a pattern of deliberate dilatoriness and delay."

Lastly, Mr. Alvarado respectfully submits that he has acted in "good faith." He believed that he had opted out of this class litigation when he filed his Complaint for Damages. He did not discover that there was an issue regarding his opt-out status until now because his individual case has been stayed per Court Order. He has complied with other Court Orders as evidenced by his filing of "Exhibit A" and the "PTO 66 Particularized Statement of Claim" described above. Mr. Alvarado reiterates that he did not miss the deadline in order to gain an advantage or improve his legal position. It was simply "excusable neglect" by someone unsophisticated in the law or class action procedures.

Mr. Alvarado respectfully submits that the filing of the Complaint for Damages and the Amended Complaint clearly demonstrates his intention not to participate in the class action settlement. The filing of the said lawsuit which is written evidence is " an effective expression" of Mr. Alvarado's "desire to exclude himself" from the class action litigation. The Complaint filed on his behalf is a "reasonable indication" of Mr. Alvarado's intent to opt-out of "Deepwater Horizon" class action litigation. **After all, the Complaint filed on his behalf within three years (3) and therefore was timely pursuant to the Uniform Statute of Limitations for Maritime Torts and would have proceeded independently of any class action litigation.**

It seems unfair that almost six years later after Mr. Alvarado timely filed his Complaint he is "outside looking in." It is too late for him to join the class and now this Honorable Court has determined that he is disallowed from pursuing his timely filed maritime case. This is the situation that Rule 60 was enacted to prevent. Rule 60 vests the District Court with the power to vacate judgments whenever such action would accomplish substantial justice. Mr. Alvarado respectfully requests for the reasons cited above that this Honorable Court vacates its Order and reinstate his case so that he can have his day in court and pursue his claims.

Respectfully submitted,

_____
Douglas M. Schmidt # 11789
335 City Park Ave.
New Orleans, LA 70119
(504) 482-5711
Fax: (504) 482-5755