IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>Applies to:<br><br>Civil Action No. 2:17-cv-03415, James Collier v. BP Exploration & Production, Inc. et al | Civil Action No. 2:10-MD-02179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br><br>MAG. JUDGE WILKINSON |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO RECONSIDER**

On January 31, 2019, this Honorable Court issued its Compliance Order with Pretrial Order ("PTO") No. 66, which required all plaintiffs with claims previously contained in Pleading Bundle B3 to fill out an in-depth questionnaire dictated by Defendants ("BP") regarding the Plaintiffs' claims. Nexsen Pruet, LLC and its co-counsel, Douglas M. Schmidt, APLC, represent more than 700 plaintiffs who timely filed complaints pursuant to PTO No. 63. The vast majority of these plaintiffs previously opted out of the class settlement in 2012 and in the spring of 2013, after receiving proper notice of their being a class member in the proposed Medical Settlement Agreement.

Plaintiff brings this Motion to Reconsider the dismissal of his individual claim on the basis that he is not a member of the Medical Benefits Settlement Class, as defined in the Order and Reasons Granting Final Approval of the Medical Benefits Class Action Settlement, filed January 11, 2013, Rec. Doc. 8217, and the Notice of Filing of the Medical Benefits Class Action Settlement Agreement As Amended on May 1, 2012, and As Preliminarily Approved by the Court on May 2, 2012, filed May 3, 2012, Rec. Doc. 6427 ("MSA"). As defined by the MSA, Plaintiff neither lived

in "Zone A" or "Zone B," nor was he a "Clean-Up Worker," nor was he engaged in "Response Activities." Furthermore, the issue of whether Plaintiff was a member of the Medical Benefits Settlement Class was an issue raised in Plaintiff's Motion to Reconsider and Amend Complaint, filed August 7, 2017, Rec. Doc. 23150, and was decided by this Court's Order As to the Motions for Reconsideration, Etc., of the PTO 63 Compliance Order (Rec. Doc. 23047), filed December 6, 2017 (Rec. Doc. 23735) (hereinafter "PTO 63 Amended Compliance Order"), which granted Plaintiff's Motion to Reconsider without exception or elaboration and without opposition by BP.

## FACTS

Before the *Deepwater Horizon* oil spill occurred, plans had been made by BP to construct a 12-mile underwater pipeline from the Deepwater Horizon drilling rig to the nearby submersible Nakika platform in Mississippi Canyon Block 474, somewhat close to the spill site in Block 252. (See Affidavit of Plaintiff James Collier, February 28, 2019, attached hereto as ("Exhibit A") ("Affidavit"). Upon information and belief, the original plan was to divert some oil from the Deepwater Horizon to the Nakika platform via newly constructed piping between the two underwater wells. Oceaneering International, Inc. was hired to assist in this endeavor. Once the oil spill occurred, Oceaneering International also obtained a separate contract that involved sending one ship to monitor the Macondo Prospect well and the attempts to cap the live well. During this time, Plaintiff James Collier was employed by Oceaneering International and was dispatched to the Nakika platform for the purpose of operating a crane for the safety of the divers who were tasked with the first oil production project, installing pipes between the *Deepwater Horizon* rig and the BP Nakika. (See Exhibit A, ¶¶ 7-8.) Mr. Collier was considered part of an oil production team, which just so happened to turn into more of an emergency project in an attempt to divert the spilling oil to the Nakika. (See Exhibit A, ¶ 7.) He was not a part of the

cleanup activities. His involvement was with the pre-planned construction of the underwater pipeline between the drilling rig and the production platform.

During Mr. Collier's time aboard the Ocean Intervention vessel, from late June to early August of 2010, he operated a crane basket for the safety of the divers involved in the pipeline construction. (See Exhibit A, ¶¶ 7-8.) Because they were so close to the oil spill, there was imminent danger for the divers, which required that Mr. Collier remain outside in his "basket" in case he needed to quickly sweep the divers away from any dangers. After leaving this position in August of 2010, Plaintiff returned to his home in Kewanee, Missouri. He began experiencing oil-exposure-related symptoms very shortly thereafter, but did not initially attribute them to his time in the Gulf until he caught up with some former co-workers who worked the same job and were suffering the same symptoms, some years after the incident. (See Exhibit A, ¶¶ 10-12.) Mr. Collier never received notice of the class action lawsuit at hand, and he was never given notice that he could be considered a member of the class. (See Exhibit A, ¶ 11.)

In 2014, Mr. Collier contacted an attorney to represent him against BP for his medical injuries. (See Exhibit A, ¶ 12.) It was his understanding that he was not considered part of any "clean up" efforts, as is required under the MSA, because he was part of the production crew in his work with Oceaneering International. (See Exhibit A, ¶ 12.) Additionally, Plaintiff never received notice of the pending settlement or the notice allowing him to opt out of the settlement. Unfortunately, against Plaintiff's wishes, Plaintiff's former attorney field a claim on his behalf under the MSA. The Claims Administrator approved a minimal payment in the amount of $1,300.00. Plaintiff declined to accept the payment. (See Exhibit A, ¶¶ 13-14.) The money awarded from the settlement has still not been disbursed, to Plaintiff's knowledge. (See Exhibit A, ¶ 14.)

Because of this disagreement with his former counsel, Plaintiff retained undersigned counsel to pursue his rights as a Plaintiff with B3 type claims not falling under the class definition of the MSA. (See Exhibit A, ¶ 12.) Pursuant to PTO No. 63, Plaintiff filed an individual complaint and sworn statement, which BP initially identified as non-compliant with PTO No. 63 due to a clerical error in the sworn statement. Subsequently, Plaintiff's claim was dismissed with prejudice pursuant to this Court's Order dated July 18, 2017, Rec. Doc. 23047. Plaintiff moved this Court to reconsider its Order dismissing Plaintiff's claim with prejudice and to allow Plaintiff to amend his complaint to correct this clerical error and bring the pleading in compliance with PTO No. 63. Plaintiff's status as not being a member of the class as defined in the MSA was set forth on Page 2 of Plaintiff's Motion to Reconsider this Court's PTO 63 Compliance Order, a copy of which is attached hereto as "Exhibit B."

BP did not oppose or offer any response to Plaintiff's previous Motion to Reconsider the Court's PTO 63 compliance Order. Had Plaintiff been a member of the class covered by the MSA, he could not have been compliant with PTO 63. See PTO 63 at ¶ 8. The Court allowed the amendment and Plaintiff was deemed compliant on page two of the Court's PTO 63 Amended Compliance Order.

Furthermore, Plaintiff has complied fully with all of this Court's orders requiring any information from the B3 class of plaintiffs. He was fully compliant with Pretrial Order 63, and he submitted a compliant response to PTO 66, only being dismissed due to his alleged settlement class membership.

**ARGUMENT**

Plaintiff requests that this Court reconsider its Order and issue an Amended Order that deems Mr. Collier a proper B3 Plaintiff who was not a class member as defined by the MSA and re-opens his case. Dismissal of Plaintiff's claims will cause undue harm, grave injustice, and the

4

ultimate prejudice to Plaintiff, and constitutes a severe lack of due process in this case that has remained stagnant for years, to the benefit of the Defendant.

**I.     Plaintiff's case should be re-opened because he is not a member of the class, as defined by the MSA.**

Defendant BP's sole objection to Mr. Collier's PTO 66 submission is that he is a "Garretson Resolution Group confirmed member" of the class action settlement. The MSA, along with this Court's Order approving the MSA, define the class members thus:

> A. MEDICAL BENEFITS SETTLEMENT CLASS shall mean all NATURAL PERSONS who resided in the United States as of April 16, 2012, and
>   1) Worked as CLEAN-UP WORKERS at any time between April 20, 2010, and April 16, 2012; or
>   2) Resided in ZONE A for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("ZONE A RESIDENT"), and developed one or more SPECIFIED PHYSICAL CONDITIONS between April 20, 2010, and September 30, 2010; or
>   3) Resided in ZONE B for some time on each of at least sixty days between April 20, 2010, and December 31, 2010 ("ZONE B RESIDENT").
>
> B. Excluded from the MEDICAL BENEFITS SETTLEMENT CLASS are the following:
>   1) Any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who timely and properly elects to be excluded from the MEDICAL BENEFITS SETTLEMENT CLASS ("OPT OUTS");
>   2) Any person employed by BP ENTITIES at any time between April 20, 2010, and April 16, 2012;
>   3) The COURT, including any sitting judges on the United States District Court for the Eastern District of Louisiana and their law clerks serving on or after April 20, 2010, through April 16, 2012;
>   4) Any person who was on the Deepwater Horizon on April 20, 2010;
>   5) Any person who has previously asserted and released his or her claims against BP relating to any illnesses or injuries allegedly suffered as a result of exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the Deepwater Horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, including those persons who have provided final releases to the GCCF in exchange for payment from the GCCF for such illnesses or injuries; and
>   6) Any person who is a ZONE A RESIDENT or a ZONE B RESIDENT, but not a CLEAN-UP WORKER, and who worked in one or more of the

5

>following capacities for a cumulative duration of at least five years prior to April 20, 2010:
>>a) Cleaning or reconditioning of the tanks or holds of barges, tankers or lighters, tanker trucks, tanker rail cars, or any other tank (stationary or  mobile) used to hold hydrocarbons or petrochemicals;
>>b) Storage, handling, or cleaning of naturally occurring radioactive materials ("NORMs"), including radionuclides;
>>c) Storage, transportation, distribution, or dispensing of gasoline, diesel, jet fuel, kerosene, motor fuels, or other hydrocarbon-based fuels at any bulk storage facility (not including gas stations or gas station convenience stores), bulk plant, or bulk terminal facility that stores hydrocarbons or petrochemicals;
>>d) Loading or unloading bulk crude oil or petroleum hydrocarbons onto or from trucks, ships, barges, or other vessels; or
>>e) Tar distillation.

Mr. Collier resided in Missouri, far away from the defined borders of Zones A and B.  Thus, Mr. Collier's only possible route to being included in the settlement class was through being deemed a Clean-Up Worker.  This term is specifically defined in the MSA, as well:

>Q. CLEAN-UP WORKERS shall mean all NATURAL PERSONS who performed RESPONSE ACTIVITIES, including:
>>1) Captains, crew, and other workers employed under the Vessels of Opportunity ("VoO") program who performed RESPONSE ACTIVITIES;
>>2) Workers employed to perform the decontamination of vessels involved in RESPONSE ACTIVITIES;
>>3) Captains, crew, and other workers on vessels other than VoO who performed RESPONSE ACTIVITIES;
>>4) Onshore personnel employed to perform RESPONSE ACTIVITIES; and
>>5) Persons involved in the recovery, transport, and decontamination of wildlife affected by the DEEPWATER HORIZON INCIDENT.

Plaintiff was not a Vessels of Opportunity worker, he was not involved in the decontamination of vessels or wildlife, was never employed onshore, and most importantly, he never performed any response activities, as defined.  The term "RESPONSE ACTIVITIES" is defined in the MSA as consisting of the following:

>OOOO. RESPONSE ACTIVITIES shall mean the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the

6

> MC252 WELL and/or the Deepwater Horizon and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

Plaintiff's duties in the construction of the underwater pipeline between the *Deepwater Horizon* drilling rig and the BP/Shell Nakika processing platform, which, upon information and belief, was a planned construction project at least a year prior to the oil spill, does not constitute "response activities." Plaintiff's job involved the construction of a pipe that was always going to be constructed, before the oil spill began. His job would have been performed regardless of the oil spill; therefore, his job could not have related to the "release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the Deepwater Horizon and its appurtenances."

It is clear from the plain language of the definitions in the MSA itself that Plaintiff cannot be considered a Clean-Up Worker under the plain language of the MSA. The Garretson Group's determination otherwise was improper and should be overturned. The money paid to Mr. Collier's former attorneys from the settlement funds should be returned to the Garretson Group. And most importantly, Mr. Collier's case should be re-opened and allowed to proceed for adjudication on the merits, as he has waited, to the sole benefit of Defendants, over five years to achieve.

**II.   Should the Court determine Plaintiff is properly a member of the settlement class, Plaintiff should be allowed to opt out now on the basis of confusion and excusable neglect.**

Even if the Plaintiff were deemed a member of the class and even if he had received proper actual or constructive notice of the settlement agreement, he should still be allowed now to opt out of the settlement on the basis of excusable negligence. The Fifth Circuit has adopted the ruling set forth in <u>Pioneer Investment Services. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 388, 113 S. Ct. 1489, 1494, 123 L. Ed. 2d 74 (1993), when determining whether to accept a late filing on the basis of excusable neglect. The court must balance a number of factors when making this

7

determination, including: the prejudice to the opposing party, the length of the delay, and reason for the delay in determining whether the claimant's neglect was excusable and the delay was made in good faith.  Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC, 534 F.3d 469, 472 (5th Cir. 2008).

      The first – and most important – factor that must be considered in deciding to accept a late filing from a plaintiff is the prejudice it causes to the defendant.  Providing Plaintiff the opportunity to properly opt out of the settlement agreement would cause no delay, or prejudice to BP, as this and all similar litigation claims have been subject to a stay ordered by the Court in early 2011.  Plaintiff's pleading was just recently filed in April 2017, and BP has yet to act upon any B3 Pleading Bundle complaints to date.  As such, if relief is granted, BP's burden would be no greater than any other party that must defend a claim presented on its merits through litigation.  Although BP may argue it suffered prejudice in their sending the $1,300.00 payment to Plaintiff's former counsel, that argument is not persuasive.  The money was never received by Plaintiff and can easily be returned by his former counsel to the settlement fund for the benefit of the remaining class members, as payments are still being processed, according to the Garretson Group's last quarterly report to this Court.

      Mr. Collier's failure to opt out of the original settlement class should be excused by the fact that his membership in the class was less than clear.  It is true that, at this point, over six years has passed since this Court's original opt-out deadline of October 31, 2012.  However, Plaintiff did not receive any notice of the law suit and did not discover his rights until two years after the opt-out deadline had passed.  Mr. Collier's desire to pursue an individual claim against Defendants has been clear and obvious since his individual complaint filing and compliance with PTO 63, at the very latest.  Also, Plaintiff's failure to opt-out of the class can be explained by the fact that he

8

never personally believed himself to fall under the plain definition of the class, according to the MSA. (See Exhibit A). These factors excuse the delay in formally opting out of the class and support the re-opening of Plaintiff's case.

Furthermore, the Fifth Circuit has plainly stated that an inadvertent mistake, or excusable neglect, on the part of counsel should not warrant such extreme punishment for a party. "[P]arties should not be punished for their counsel's neglect except in extreme and unusual circumstances. Dismissal of a complaint with prejudice is a drastic remedy." Hassenflu v. Pyke, 491 F.2d 1094, 1095 (5th Cir. 1974) (citing Canada v. Mathews, 449 F.2d 253, 255 (5th Cir. 1971) (holding that dismissal with prejudice should only be upheld after the trial court has resorted to "the wide range of lesser sanctions which it may impose.")). "[J]ustice also demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." United States v. Moradi, 673 F.2d 725, 728 (4th Cir. 1982). Plaintiff does not deserve to have his claim, which has been stayed for years, dismissed with prejudice due to a misunderstanding or possible mistake on the part of his prior counsel.

By retaining new counsel and substantially complying with PTO Nos. 63 and 66, Plaintiff has proven his good faith efforts to be treated as an individual Plaintiff. He has taken all of the necessary legal steps to protect his interests, just the same as the other thousand-plus remaining B3 plaintiffs. The principle of the finality of judgments "must yield to the equities of the case in order that the [Plaintiff] may be afforded [his] day in court." Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 402 (5th Cir. 1981).

## CONCLUSION

In less than two months, nine (9) years will have passed since Gulf Oil Spill disaster. Plaintiff continues to suffer from serious, chronic health conditions – to the point of permanent disability – caused by substantial exposure to toxic chemicals related to the Gulf Oil Spill.

9

Plaintiff has awaited resolution of his claim for these personal injuries, but his claim has consistently been placed in the back of the line for consideration. Plaintiff's claims have been subject to a stay ordered by this Court before he even discovered or became aware of their existence. The deadline to opt out of the settlement occurred two years before Plaintiff even became aware of his rights and causes of action against the Defendant. Since becoming aware, he has done everything in his individual power to pursue his claims, properly outside the boundaries of the MSA. He has complied with all of the Court's orders thus far concerning the B3 bundle of plaintiffs. Most importantly, BP suffers no prejudice whatsoever by allowing Plaintiff's case to proceed. If not allowed to proceed, Plaintiff would be denied compensation for his injuries caused by BP's gross negligence. Under these circumstances, it would be a grave injustice to dismiss Plaintiff's claim with prejudice. Plaintiff deserves to have his long-pending claims decided on the merits.

In light of the above, Plaintiff respectfully moves this Court to reconsider its Order of January 31, 2019, and re-open Plaintiff's case as a proper B3 Plaintiff pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

Respectfully Submitted,

 /s/ Paul A. Dominick
Paul A. Dominick      Fed ID No. 577
NEXSEN PRUET, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC  29402
PHONE:  843.577.9440
FACSIMILE:  843.720.1777
PDominick@nexsenpruet.com

        and

        Douglas M. Schmidt    Fed ID No. 11789
        Douglas M. Schmidt, APLC
        335 City Park Avenue
        New Orleans, LA 70119
        PHONE:  504-482-5711
        FACSIMILE:  504-482-5755
        Dglsschmdt@yahoo.com

        *Counsel for Plaintiff*

Dated:   February 28, 2019

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion for Reconsideration and Amendment has been served on all counsel by electronically uploading the same to File & Serve Xpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179 on February 28, 2019.

/s/ Paul A. Dominick

Paul A. Dominick