# Exhibit A – Affidavit of James Collier

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | Civil Action No. 2:10-MD-02179 |
| | SECTION: J |
| APPLIES TO:<br><br>Civil Action No. 2:17-cv-03415, James Collier v. BP Exploration & Production, Inc. et al | JUDGE CARL BARBIER |
| | MAG. JUDGE WILKINSON |

## AFFIDAVIT OF JAMES COLLIER

I, James Collier, personally appeared before a notary public, and after being sworn, submit the following:

1.  I am the Plaintiff in the above-referenced action before this Court.

2.  I am a citizen and resident of the state of Missouri, county of New Madrid, and have held a Post Office Box as my permanent mailing address in Kewanee, MO, for over 10 years.

3.  At no time was I a "Zone A Resident" or a "Zone B Resident" as defined by the Medical Benefits Class Action Settlement Agreement ("MSA").

4.  At no time was I a "Clean-Up Worker" as defined by the MSA.

1

5.     At no time did I perform "Response Activities" as defined by the MSA, upon my information and belief.

6.     Prior to my chronic illnesses that I believe result from my work in the Gulf of Mexico around the time of the *Deepwater Horizon* oil spill disaster, I was a certified crane operator. From 2007 to 2010, I was employed with Oceaneering International, Inc., in this capacity.

7.     For various days between June of 2010 and August of 2010 ("work period"), I worked as a crane operator aboard the Ocean Intervention I vessel, on what I understood to be the oil production team, for the purpose of constructing the 12-mile underwater pipeline between BP's *Deepwater Horizon* drilling rig and the BP/Shell Nakika platform, the construction of which had been planned prior to the oil spill on April 20, 2010.

8.     Throughout my work period, I was the safety crane operator for the divers installing clamps on the pre-planned pipeline between the *Deepwater Horizon* and the Nakika platforms. This was not considered a response activity to the oil spill.

9.     My employment during my work period required me to be outside, above the very waters where the oil was spilling, for at least 12 hours per day. I was not allowed to eat my lunch or take breaks inside due to the nature of my job.

10.    I have become physically, permanently disabled as a result of the injuries I sustained while working above the poisoned waters of the Gulf of Mexico in the summer of 2010. It was not until several years after my work, as my health continued to decline,

that I realized there were no other probable causes than the substantial amount of harmful chemicals I inhaled so that summer.

11. I never received notice that a class action had been filed regarding the oil spill, or notice that I could be considered a class member for the purposes of the settlement of any claims I personally had against BP, Haliburton, and Transocean. It was my understanding that if I, or any of the other crew members aboard the Ocean Intervention I at the same time were considered members of the class action, that I would have received notice by mail of this fact, since my address remained the same and should have been the address on file with Oceaneering International.

12. In 2014, I began searching for an attorney to bring the claims in my current suit against BP. I hired the Downs Law Group under the premise that I was bringing a claim of my own, separate and apart from any class action. Although I did not qualify as a class ember under the MSA, and without my approval, the Downs Law Group filed a claim for me under the MSA. Because of this action, I fired the Downs Law Group and retained my current attorneys.

13. As a result of the unauthorized claim under the MSA, the claims administrator sent the Downs Law Group $1,300.00 as "compensation" for the claim.

14. I have never received any of the $1,300.00 payment made to Downs Law Group on my behalf, as referenced in this Court's recent order dismissing my case. I did not authorize this payment or accept it. I did not sign any releases of my claims in exchange for the payment to the Downs Law Group. The payment to the Downs Law

3

Group should be returned to the settlement funds, and I should be allowed to pursue my individual action.

15. To allow BP to avoid liability for my serious medical conditions for an unauthorized $1,300.00 payment, that I never received, would be unjust and contrary to the spirit and terms of the MSA.

16. Upon information and belief, there is no prejudice to BP to allow my case to proceed. To require me to possibly seek compensation from the Downs Law Group would be an unnecessary hardship and would severely prejudice my right to be compensated by BP for the injuries proven to result from my exposure to oil and other toxins released as a result of BP's negligence.

17. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

[*Signature on following page*]

SWORN to before me,

This 28 day of February, 2019.

*/s/ Jayme Kolwyck*

Notary Public for Missouri
My commission expires: 12-18-21

James Collier

*/s/ James L. Collier*

