**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | ) | MDL 2179 |
| "Deepwater Horizon" in the Gulf | ) | |
| Of Mexico, on April 20, 2010 | ) | SECTION: J |
| | ) | |
| This Document Relates  To: 2:18-cv-11046 | ) | JUDGE BARBIER |
| | ) | MAG. WILKINSON |
| | ) | |

## AFFIDAVIT OF WILLIAM B. LOTT, JR.

STATE OF ALABAMA:

COUNTY OF MOBILE:

Before me, the undersigned Notary Public in and for said County and State, personally appeared William B. Lott, Jr., who, being by me first duly sworn, did depose on oath and state as follows:

1.    My name is William B. Lott, Jr.  I am over the age of 19 years, and I have personal knowledge of the matters set forth herein.

2.    I am the majority owner and president of Lott Ship Agency, Inc. ("Lott Ship Agency").

3.    Lott Ship Agency was in the business of servicing vessels that were calling into U.S. ports in the Gulf of Mexico ("U.S. Gulf Ports").  As an agent, it provided services to enter and clear numerous types of vessels and barges calling on the U.S. Gulf Ports by, for example, preparing manifests and filing documents with Customs and Border Protection, U.S. Coast Guard, National Vessel Movement Center, and other governmental agencies.  In addition to acting as an

agent in assisting vessels in entering the U.S. Gulf Ports, Lott Ship Agency also assisted the vessels in obtaining necessary supplies and/or repairs.

4.      After the Deepwater Horizon/Macondo well exploded and began discharging oil into the Gulf of Mexico, Lott Ship Agency lost business dealings with numerous types of vessels that had previously been calling into U.S. Gulf Ports.  Vessels discontinued the services of Lott Ship Agency because the vessels were no longer coming in and out of the Gulf of Mexico and the U.S. Gulf Ports due to the extreme amount of oil that was discharged in the Gulf of Mexico.  Some U.S. Gulf Ports were closed altogether for a period of time.  Lott Ship Agency lost many of its customers and much of its business in the wake of the oil spill that, but for the oil spill, it has no reason to believe it would have lost.

5.      On or about August 8, 2012, Lott Ship Agency submitted a Business Economic Loss ("BEL") claim to the Deepwater Horizon Court Supervised Settlement Program ("CSSP").

6.      Lott Ship Agency filed its claim as a *pro se* claimant, with no attorney representing it during its time in the CSSP.

7.      While the claim was analyzed in the CSSP, Lott Ship Agency and/or its accountant responded to requests for information by the claims analysts and provided the requested information.

8.      On or about November 24, 2014, a notice was posted in the CSSP portal that "indicia of potential Moratoria Losses" had been identified in its claim, but stated that Lott Ship Agency would receive a notice of the outcome of the Claims Administrator's review and that it would have the opportunity to request Re-Review or Re-Consideration of the Claims Administrator's decision. (Exhibit 1-A).

9.      On October 18, 2018, I received an email from Lott Ship Agency's accountant attaching the Court's October 3, 2018 Order excluding the claim from the CSSP. (Exhibit 1-B). This is the first time I recall becoming aware of the October 3, 2018 Order. I was confused at this point.

10.      I, on behalf of Lott Ship Agency, intended and endeavored to comply with the October 3, 2018 order. Having proceeded *pro se* in the CSSP up until that point in time, I determined that Lott Ship Agency needed an attorney to take over and handle compliance with the Court's October 3, 2018 Order.

11.      My accountant referred me to an attorney, James Parker. Lott Ship Agency engaged Mr. Parker early in November 2018 to handle its lawsuit against BP and related entities.

12.      My current understanding is that Mr. Parker filed Lott Ship Agency's complaint and pre-trial order 60 sworn statement on November 15, 2018, but did not file the pre-trial order 64 and pre-trial order 65 verified statements by November 30, 2018. I was unaware of these facts until recently.

13.      On February 4, 2019, I learned of a February 1, 2019 Order from the Court dismissing Lott Ship Agency's complaint with prejudice for failure to file the pre-trial order 64 and pre-trial order 65 verified statements by November 30, 2018. Prior to February 4, 2019, I was unaware of the fact that Mr. Parker had missed a required deadline and thought that Mr. Parker had submitted everything necessary for Lott Ship Agency to prosecute its claim against BP.

14.      On or about February 25, 2019, I engaged new counsel, Morgan S. Hofferber of McDowell Knight Roedder & Sledge, L.L.C.

15.      I truly believe that Lott Ship Agency was damaged by the oil spill and suffered from loss of profits and earning capacity.

16.     Lott Ship Agency did not intentionally disregard the Court's October 3, 2018 Order.

17.     I understand that the Court has instituted a schedule for other remaining claims in its pre-trial order 67.   If the Court grants Lott Ship Agency's Motion to Amend/Vacate the February 1, 2019 Order and reinstates its complaint, Lott Ship Agency will abide by the Court's existing schedule and deadlines as set forth in pre-trial order 67.


Further, Affiant sayeth not.

_____
     WILLIAM B. LOTT, JR.




Sworn to and subscribed before me this

1st day of March, 2019.

_____
  NOTARY PUBLIC
My commission expires:  3/9/20



## NOTICE REGARDING POTENTIAL MORATORIA LOSSES
### DATE OF NOTICE: November 21, 2014

### I. CLAIMANT AND CLAIM INFORMATION

| Claimant Name | Last/Name of Business<br>LOTT SHIPPING AGENCY INC | First | | Middle |
|---|---|---|---|---|
| Claimant ID | 100100036 | Claim ID | | 50908 |
| Claim Type | Business Economic Loss | | | |

### II.  PURPOSE OF THIS NOTICE

This Notice is an official communication from the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Program ("Settlement Program") and relates to the claim identified in Section I. This is not a denial of your claim, but instead is a preliminary Notice to update you on the status of your claim.

Section 38.93 of the Economic and Property Damages Settlement Agreement ("Settlement Agreement") excludes all Moratoria Losses from the Settlement Program. During our review of your claim, we identified indicia of potential Moratoria Losses. Your claim may require additional scrutiny to distinguish excluded Moratoria Losses, if any, from compensable non-Moratoria Losses. We do not currently require any additional information or response from you. After we have completed reviewing your claim, we will send you a Notice explaining the outcome of that review. You will have the opportunity then to accept the outcome set forth in that Notice or, if applicable, request Re-Review or Reconsideration of all decisions made on your claim.

### III. MORATORIA LOSSES DEFINITION

Section 38.93 of the Settlement Agreement defines Moratoria Losses as any loss whatsoever caused by or resulting from federal regulatory action or inaction directed at offshore oil industry activity, including shallow water and deepwater activity, that occurred after May 28, 2010, including the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspections, or permitting practices. Claims for Moratoria Losses are expressly reserved claims and are excluded from the Economic and Property Damages Settlement Class.

To implement this exclusion, the Claims Administrator established a dedicated special review team to examine all economic loss claims that include potential Moratoria Losses. This special review distinguishes excluded Moratoria Losses from compensable non-Moratoria Losses and may require supplemental information. At present, BP and Class Counsel have not developed the requisite guidance for the Claims Administrator to use in making compensation determinations that adhere to the Moratoria Losses exclusion in the Settlement Agreement. Once the Claims Administrator receives this guidance, the dedicated special review team will resume working on your claim. At that time, we will contact you if we need any additional information or documents.

### IV. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you have any questions about this Notice or the status of your claim(s) or need help, contact the Claimant Communications Center at 1-800-353-1262 or send an email to **Questions@dhecc.com**. If you are a law firm or claims preparation company, call or email your designated DWH Contact for help or assistance. You also may visit a Claimant Assistance Center and talk with one of our representatives.  For a complete list of Claimant Assistance Centers, go to **www.deepwaterhorizoneconomicsettlement.com.**



attachment as Lottship does not accept liability for any damage sustained as a result of any software viruses. You should be aware that Lottship reserves the right to read incoming and outgoing emails. ===

# Exhibit 1-B

---

**From:** Robert Hienz <rhienz@hienzmacaluso.com>
**Sent:** Thursday, October 18, 2018 3:13 PM
**To:** Bill Lott <blott@lottship.com>
**Subject:** notice

Robert Hienz, CPA
Hienz & Macaluso, L.L.C.
110 Veterans Memorial Boulevard, Suite 170
Metairie, LA 70005
(504) 837-5434
(504) 837-5435 (FAX)
http://www.hienzmacaluso.com/

*PRIVILEGED AND CONFIDENTIAL*
*This communication and any accompanying documents are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon this communication is strictly prohibited. Moreover, any such disclosure shall not compromise or waive the attorney-client, accountant-client, or other privileges as to this communication or otherwise. If you have received this communication in error, please contact me at the above email address.*

*DISCLAIMER*
*Any accounting, business or tax advice contained in this communication, including attachments and enclosures, is not intended as a thorough, in-depth analysis of specific issues, nor a substitute for a formal opinion, nor is it sufficient to avoid tax-related penalties. If desired, Hienz & Macaluso, LLC would be pleased to perform the requisite research and provide you with a detailed written analysis. Such an engagement may be the subject of a separate engagement letter that would define the scope and limits of the desired consultation services.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:  Oil Spill by the Oil Rig            MDL NO. 2179
"Deepwater Horizon" in the Gulf
of Mexico, on  April 20, 2010              SECTION J

                                           JUDGE BARBIER
This Document Relates to:
No. 12-970                                 MAG. JUDGE WILKINSON

---

<u>**ORDER**</u>

**[Regarding Remaining Claims in the Economic and Property Damages
Settlement that Are Subject to Moratoria Hold]**

Claims for Moratoria Losses are "Expressly Reserved Claims" under the

Deepwater Horizon Economic and Property Damages Settlement ("Settlement"),

meaning such claims "are not recognized or released under the [Settlement], and are

reserved to the Economic Class Members." (Settlement § 3 & 3.3, Rec. Doc. 6430-1.)

Exhibit 16 to the Settlement contemplated that BP and Class Counsel would, relative

to the Support Services to the Oil & Gas Industry, "develop agreed upon guidance

that the Claims Administrator shall apply in making compensation determinations

that adhere to the moratoria exclusion in the [S]ettlement." BP and Class Counsel

have not, in the six years since the Settlement was executed, reached agreement on

a set of protocols or guidance, and are at an unresolvable impasse, leaving certain

claims subject to a "Moratoria Hold" by the Claims Administrator.

By the Court's Order dated March 17, 2017 (Rec. Doc. 22390), all of the

remaining Claimants subject to a "Moratoria Hold" were granted the option to

exclude ("Opt Out") that claim from the Settlement Program and proceed in litigation.

Since the issuance of that Order, the Neutrals' process has substantially reduced via settlement the number of remaining Claimants subject to a "Moratoria Hold" who did not previously exercise their Opt Out rights. Given that the Court cannot compel BP and Class Counsel to establish "agreed" protocols or guidance to govern Moratoria Hold claims in the Settlement Program, the Claims Administrator has no ability to process those remaining, unresolved claims that are subject to "Moratoria Hold" in the Settlement Program. For these reasons:

**IT IS ORDERED** that the Claims Administrator for the Settlement Program is instructed to provide a copy of this Order to all Claimants (or their attorneys, if represented) who have a claim pending in the Settlement Program that is on "Moratoria Hold," using whatever method the Claim Administrator ordinarily uses to communicate with that Claimant (or the Claimant's attorney), on or before October 12, 2018.

**IT IS FURTHER ORDERED** that any Claimant (i) who has received a notice from the Settlement Program that his, her, or its claim is subject to a "Moratoria Hold" and (ii) that claim has not been resolved to date (defined as the "Remaining Moratoria Hold Claims") will be **deemed hereby EXCLUDED** from the Settlement and instead may proceed with its claim in litigation before this Court by compliance with the terms of this Order. With respect to any such claim that is excluded from the Settlement pursuant to and in accordance with the terms of this Order, BP agrees that it will not raise, assert, or otherwise argue that the claim is barred by statute of limitations, prescription, or is otherwise untimely, nor shall BP argue that the

Claimant failed to satisfy "presentment" under the Oil Pollution Act, 33 U.S.C. § 2713.

**IT IS FURTHER ORDERED** that, in order to proceed further in litigation, any Claimant with unresolved Remaining Moratoria Hold Claims that had not previously filed an individual complaint and complied with Pretrial Order No. 60, must file an individual complaint (one per plaintiff) and file a Sworn Statement that complies with the requirements of Pretrial Order No. 60 (Rec. Doc. 16050)[1] by no later than <u>November 16, 2018</u>.

**IT IS FURTHER ORDERED** that all Claimants with unresolved Remaining Moratoria Hold Claims that wish to proceed further in litigation must also submit a Sworn Statement Regarding General Maritime Law Claims that complies with Pretrial Order No. 64 (Rec. Doc. 22297) and a Verified Statement Regarding Causation and Damages that complies with Pretrial Order No. 65 (Rec. Doc. 23825)[2] by no later than <u>November 30, 2018</u>.

The PTO 60 Sworn Statement, PTO 64 Sworn Statement Regarding General Maritime Law Claims, and the PTO 65 Verified Statement Regarding Causation and

---

[1] A copy of Pretrial Order No. 60 and the Sworn Statement (Exhibit A to Pretrial Order No. 60) can also be found on the Court's public website for MDL 2179 (http://www.laed.uscourts.gov/OilSpill/OilSpill.htm) under the March 29, 2016 entry on the Current Developments tab.

[2] A copy of Pretrial Order No. 64 and the Sworn Statement Regarding General Maritime Law Claims (Exhibit A to Pretrial Order No. 64) can be found by visiting the Court's public website for MDL 2179 (http://www.laed.uscourts.gov/OilSpill/OilSpill.htm) under the entry for February 22, 2017 on the Current Developments tab. A copy of Pretrial Order No. 65 and the Verified Statement Regarding Causation and Damages (Exhibit A to Pretrial Order No. 65) can also be found on this website under the January 11, 2018 entry.

Damages should be filed in the docket for the plaintiff's individual lawsuit and **not** in the master docket for MDL 2179.

New Orleans, Louisiana, this 3rd day of October, 2018.

_____

CARL J. BARBIER
United States District Judge