**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | \* <br> \* <br> \* <br> \* <br> \* | **MDL NO. 2179** <br><br> **SECTION J** <br><br> **JUDGE BARBIER** |
| **This Document relates to:** <br> *All Remaining Cases in Pleading Bundle "B1"* | \* <br> \* <br> \* | **MAGISTRATE JUDGE WILKINSON** |

**BP'S MEMORANDUM IN SUPPORT OF ITS DISPOSITIVE MOTION
AS TO THE B1 CLAIMS OF MEXICAN PLAINTIFFS**

Pursuant to Pretrial Order No. 67 (Rec. Doc. 25370) ("PTO 67"), BP Exploration & Production Inc. and BP America Production Company (collectively "BP") respectfully request that the Court dismiss the B1 claims of the 115 B1 plaintiffs identified in Exhibit 2 to PTO 67 and Exhibit A attached hereto, who are fishermen, cooperatives of fishermen, and one business residing or doing business in Mexico ("Mexican Plaintiffs"). As a matter of law, these plaintiffs cannot state claims against BP under either the Oil Pollution Act of 1990 ("OPA") or maritime law. BP also requests that the Court dismiss the B1 claims of 40 Mexican fishing cooperatives represented by Weller Green Toups & Terrell, L.L.P. ("Toups")—identified in the attached Exhibit B (the "Toups Cooperatives")—for the additional reason that they are attempting to improperly assert mass claims on behalf of 11,820 unidentified, individual claimants in violation of Pretrial Order No. 60 (Rec. Doc. 16050) ("PTO 60"). The Mexican Plaintiffs' claims should be dismissed on multiple grounds.

*First*, the Mexican Plaintiffs have no cause of action under OPA because they are foreign plaintiffs and (i) there is no treaty or executive agreement between Mexico and the United States authorizing recovery and (ii) the U.S. Secretary of State has not certified that a comparable remedy

exists for United States claimants in Mexico.  *Second*, because Congress has identified which foreign plaintiffs can recover and under what terms, OPA displaces maritime law for foreign plaintiffs.  *Finally*, because the Toups Cooperatives have now revealed that they are attempting to back-door claims on behalf of thousands of individual Mexican fishermen (who failed to comply with PTO 60) through the guise of complaints filed solely in the name of the cooperatives, these 40 Toups Cooperatives' B1 claims should be dismissed for their additional express violation of PTO 60's prohibition of mass joinder and representative actions.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Recovery by Foreign Claimants Under OPA

OPA is a comprehensive framework for addressing oil spills.  Among other things, OPA imposes preconditions on claims brought by a foreign plaintiff.  Specifically, OPA provides:

> (a)   REQUIRED SHOWING BY FOREIGN CLAIMANTS
>
> (1)   IN GENERAL.  In addition to satisfying the other requirements of this Act, to recover removal costs or damages resulting from an incident ***a foreign claimant shall demonstrate that***—
>
> (A)   the claimant has not been otherwise compensated for the removal costs or damages; and
>
> (B)   ***recovery is authorized by a treaty or executive agreement*** between the United States and the claimant's country, ***or*** the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that ***the claimant's country provides a comparable remedy*** for United States claimants.

33 U.S.C. § 2707 (emphases added).

In other words, before a foreign claimant can recover under OPA, the United States must explicitly consent, either by treaty or certification.  As far as BP is aware, no court has ever

concluded that plaintiffs from Mexico can satisfy these requirements, and this Court and the Fifth Circuit have previously rejected such claims in these proceedings.

## II.     Prior Participation in MDL 2179 by Plaintiffs from Mexico

These are not the only plaintiffs from Mexico who have sued BP in connection with the *Deepwater Horizon* incident. For example, soon after the spill occurred, the Mexican States of Tamaulipas, Quintana Roo, and Veracruz (the "Mexican States") argued they could pursue claims under OPA and federal maritime law. They lost on both counts. *See In re Deepwater Horizon*, 835 F. Supp. 2d 175 (E.D. La. 2011), *aff'd*, 784 F.3d 1019 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 536 (2015) (dismissing OPA claims); *In re Deepwater Horizon*, 970 F. Supp. 2d 524 (E.D. La. 2013) (dismissing maritime law claims), *aff'd*, 784 F.3d 1019 (5th Cir. 2015), *cert. denied sub nom. State of Veracruz, Republic of Mexico v. BP, P.L.C.*, 136 S. Ct. 536 (2015). The Mexican States did not appeal their OPA loss, and the Fifth Circuit affirmed this Court's dismissal of their maritime claims pursuant to the *Robins Dry Dock* doctrine. *In re Deepwater Horizon*, 784 F.3d 1019, 1031-32 (5th Cir. 2015) (holding the Mexican States, as opposed to the Mexican federal government, lacked the "crucial proprietary interest" in Mexican waters and shores necessary to pursue a claim).

Other plaintiffs from Mexico have likewise attempted, but failed, to maintain claims against BP in connection with the *Deepwater Horizon* incident. *See, e.g.*, *In re Deepwater Horizon*, 907 F.3d 232, 234 (5th Cir. 2018) (affirming this Court's dismissal of the claims of Mexican plaintiffs in the fishing industry for failure to comply with PTO 60); Mar. 6, 2018 Order & Reasons as to Defendants' Motion to Dismiss Claims by the Mexican State of Yucatán (Rec. Doc. 24119) ("Mar. 6, 2018 Order & Reasons Dismissing Yucatán Claims") (dismissing Yucatán's state law claims as preempted by federal law, OPA claims for failure to satisfy the requirements of OPA § 2707(a)(1), and general maritime claims for failure to identify a proprietary interest in

3

any property allegedly damaged by oil); *In re Deepwater Horizon*, 713 F. App'x 360, 362 (5th Cir. 2018), *reh'g denied* (Apr. 12, 2018), *cert. denied sub nom. Perez v. BP, P.L.C.*, 139 S. Ct. 231 (2018) (affirming this Court's dismissal of the claims of Mexican fishing cooperatives and their members for failure to comply with PTO 60).

### III. Overview of PTO 60 and the Toups Cooperatives' Claims

In PTO 60 and the numerous related orders entered thereafter, this Court has repeatedly held that only *individual* B1 lawsuits may now proceed in MDL 2179 and that mass joinders and class claims are barred and dismissed.

PTO 60, entered on March 29, 2016, ended use of the B1 Master Complaint and ordered "plaintiffs who have timely filed a claim in the B1 pleading bundle and who **have not** released their claim(s) to date" to undertake certain case management steps. PTO 60 (Rec. Doc. 16050), at ¶ 6. Among other things, PTO 60 required that plaintiffs sign and "file an individual lawsuit (Complaint) (one per plaintiff)" by May 2, 2016. *Id.* ¶ 6(B)(i). If a plaintiff already had an individual suit on file, that plaintiff was required to file a sworn statement in its individual case by May 2, 2016. *Id.* ¶ 6(A). Failure to comply would result in dismissal of those plaintiffs' claims "with prejudice without further notice." *Id.* ¶ 6(A)(ii), 6(B)(ii). In response to PTO 60, the 40 Toups Cooperatives filed multi-plaintiff ("Mass Joinder") complaints, each on behalf of numerous fishing cooperatives and their members, in violation of PTO 60. *See* June 7, 2016 Order to Show Cause Re: Compliance with PTO 60 (Rec. Doc. 18724) ("June 7, 2016 Show Cause Order"), Ex. 3; Dec. 16, 2016 Order & Reasons re PTO 60 Reconciliation Order (Rec. Doc. 22003) ("Dec. 16, 2016 Order & Reasons"), at 8-10.

In its June 7, 2016 Show Cause Order, the Court identified plaintiffs who, in violation of PTO 60, had filed Mass Joinder complaints rather than individual lawsuits. (Rec. Doc. 18724), at ¶ 4. This included all 40 of the Toups Cooperatives. *Id.*, Ex. 3. The Court ordered such plaintiffs

4

to show cause by June 28, 2016 why their B1 claims should not be dismissed for failure to comply with PTO 60.  *Id.* ¶ 4.  The Toups Cooperatives argued that, "while they believed BP was misreading their complaints, they 'have now amended all complaints . . . and limited them to only the one cooperativa of fishermen in each lawsuit and they have deleted any reference to a list of other individuals.'"  Dec. 16, 2016 Order & Reasons (Rec. Doc. 22003), at 9 (quoting July 27, 2016 Pls' Reply to BP's Obj. to Show Cause Submissions (Rec. Doc. 21269), at ¶ 2).  In reliance on this representation and the filing of the amended complaints limiting each complaint to a single cooperative, BP did not object to the Toups Cooperatives being deemed compliant with PTO 60.  *See id.* at 9.  BP stated that it "would, however, object to any other purported plaintiffs currently or previously in those . . . actions being deemed compliant with PTO 60."  Sept. 7, 2016 BP's Sur-Reply in Opp'n to Certain Pls' PTO 60 Show Cause Submissions (Rec. Doc. 21653), at 2.  In light of these representations, the Court deemed the Toups Cooperatives PTO 60-compliant.  Dec. 16, 2016 Order & Reasons (Rec. Doc. 22003), at 9-10.

On January 11, 2018, the Court entered Pretrial Order No. 65 (Rec. Doc. 23825) ("PTO 65"), which required B1 plaintiffs to answer four questions regarding the type and scope of the damages and causation they alleged in their respective cases.  PTO 65 (Rec. Doc. 23825), at 2-3.  Responses were required to be filed in a verified statement, signed by the plaintiff asserting the damages.  *Id.* at 3.  In response, the Toups Cooperatives made PTO 65 submissions asserting damages, such as the following:

> I claim the payment of $11,631.00 USD per each one of the 352 fishermen I represent for economic and compensatory damages because of all economic problems that have severely impacted our lives until the present time. . . . The economic losses per each member of the group of fishermen I represent is for $11,631.00 USD.

5

(Case No. 16-5310, Rec. Doc. 8-2), at 1 of 11 (claiming $11,631 in losses per fisherman on behalf of 352 fishermen). Each of the 40 Toups Cooperatives asserted either (a) $11,631, (b) $10,867, (c) $10,226, (d) $9,672, or (e) $5,510 in losses per fisherman. *See, e.g.*, *id.*; (Case No. 16-4706, Rec. Doc. 8-2), at 1 of 11 (claiming $10,867 in losses per fisherman on behalf of 2,137 fishermen); (Case No. 16-4730, Rec. Doc. 9-2), at 1 of 11 (claiming $10,226 in losses per fisherman on behalf of 194 fishermen); (Case No. 16-4783, Rec. Doc. 8-2), at 1 of 12 (claiming $9,672 in losses per fisherman on behalf of 804 fishermen); (Case. No. 16-4762, Rec. Doc. 8-2), at 1 of 11 (claiming $5,510 in losses per fisherman on behalf of 1,449 fishermen); Ex. B, List of Mexican Plaintiffs Asserting Claims in Violation of PTO 60. Each of those submissions went on to describe how its alleged losses per fisherman had been calculated, making clear the plaintiff cooperative was claiming each of its member fishermen's full alleged losses, instead of the cooperative's loss as its own individual entity. Each of the Toups Cooperatives multiplied its alleged losses per fisherman by the number of fishermen in that cooperative, then doubled that number to arrive at its total alleged damages. *See, e.g.*, (Case No. 16-4706, Rec. Doc. 8-1), at 2 of 5.

## ARGUMENT

As a matter of law, the 115 Mexican Plaintiffs have no valid claims against BP. The Mexican Plaintiffs' OPA claims fail because the Mexican Plaintiffs have not satisfied the requirements that Congress imposed on foreign claimants in enacting OPA. Additionally, their federal maritime law claims must be dismissed because OPA displaces the availability of maritime law remedies to foreign claimants. The 40 Toups Cooperatives' B1 claims fail for the additional reason that they are improper mass claims brought on behalf of thousands of individual plaintiffs in violation of PTO 60.

6

**I.       The Mexican Plaintiffs cannot state a claim under OPA.**

The Mexican Plaintiffs cannot state a claim under OPA because "foreign claimants may recover under OPA only in select situations," not applicable here. *In re Deepwater Horizon*, 835 F. Supp. 2d at 181, (Barbier, J.) (quoting 33 U.S.C. § 2707(a)(1)). Specifically, in addition to "satisfying the other requirements" of OPA, a "foreign claimant shall demonstrate" one of two criteria: (1) "recovery is authorized by a treaty or executive agreement between the United States and the claimant's country," or (2) "the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B). The Mexican Plaintiffs cannot satisfy either of these requirements.

**A.       Recovery is not authorized by a treaty or executive agreement between the United States and Mexico.**

Plaintiffs cannot identify any "treaty or executive agreement" between the United States and Mexico authorizing their "recovery" under OPA. *See* 33 U.S.C. § 2707(a)(1)(B). Other Mexican plaintiffs have already tried unsuccessfully to identify any such treaties or executive agreements, and this Court determined that none of them create a basis for Mexican claimant recovery under OPA. Specifically, the Mexican States relied on four treaties:

- Agreement of Cooperation Between the United States of America and the United Mexican States Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, Mex.-U.S., July 24, 1980, 32 U.S.T. 5899 (available on Westlaw, 1981 WL 375827);

- Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085 (available on Westlaw, 1986 WL 193162);

- Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969, Nov. 27, 1992, 1956 U.N.T.S. 225, *available at* http://www.admiraltylawguide.com/conven/protocivilpol1992.html (last visited March 7, 2019); and

7

- Treaty on Maritime Boundaries between the United Mexican States and the United States of America, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978), *available at* http://www2.ecolex.org/server2neu.php/libcat/docs/TRE/Full/Other/TRE-149163.pdf (last visited March 7, 2019).

*See In re Deepwater Horizon*, 835 F. Supp. 2d. at 181-82.  This Court determined that "none of these authorize [the Mexican States'] recovery under OPA." *Id.*[1]  Three of the treaties did not "deal with the recovery of removal costs or damages" from oil spills, and the United States had not ratified the fourth.  *Id.*  Because none of these treaties satisfied § 2707(a)(1)(B), this Court dismissed the Mexican States' OPA claims.  *Id.*

The Mexican States were unable to identify a treaty or executive agreement entitling them to make a claim under OPA because no such treaty or executive agreement exists.  Thus, like the Mexican States, the Mexican Plaintiffs cannot satisfy the "treaty or executive agreement" requirement of § 2707(a)(1)(B).

### B. The Secretary of State has not certified that Mexico provides a comparable remedy to United States claimants.

Nor can the Mexican Plaintiffs establish that "the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants."  33 U.S.C. § 2707(a)(1)(B).  This requirement cannot be satisfied through evidence that the claimant's country provides a comparable remedy for United States claimants in the view of a court in the first instance; the Secretary of State's certification is mandatory.  *See* Mar. 6, 2018 Order & Reasons Dismissing Yucatán Claims (Rec. Doc. 24119).  In other words, the certification commits the question of comparable remedies in Mexico to the Executive Branch.

---

[1] Although these three Mexican State plaintiffs unsuccessfully challenged other aspects of this decision, they notably did not challenge the finding that these treaties did not satisfy OPA's requirements.

And no such certification exists. As this Court recently observed, the Secretary of State has not certified that Mexico provides a remedy for United States claimants that is comparable to the remedies available under OPA. *Id.* at 2. Accordingly, the Mexican Plaintiffs cannot satisfy § 2707(a)(1)(B), and their OPA claims should be dismissed.

## II.     The Mexican Plaintiffs cannot assert maritime law claims.

The Mexican Plaintiffs may not circumvent OPA's comprehensive liability scheme by asserting general maritime law claims. By enacting OPA, Congress wholly displaced federal maritime law with respect to oil spill liability for foreign claimants.[2]

As an initial matter, unlike the presumption against preemption that applies to state law, there is a presumption ***favoring*** displacement of federal common law when a federal statute is enacted. *See, e.g.*, *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 312-17 (1981) ("[W]hen the question is whether federal statutory or federal common law governs, . . . 'we start with the assumption' that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law."); *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 423 (2011) ("Legislative displacement of federal common law does not require the 'same sort of evidence of a clear and manifest [congressional] purpose' demanded for preemption of state law."). That presumption in favor of displacement applies here.

---

[2]  In 2011, this Court ruled that OPA does not displace punitive damages available under maritime law. The relief sought in this motion is consistent with that ruling because, as explained below, (i) in § 2707(a), Congress "directly address[ed]" the issue of whether and to what extent foreign claimants could recover for damages resulting from an oil spill and (ii) allowing foreign claimants to evade OPA's requirements for foreign claimants "would frustrate the OPA liability scheme." *In re Deepwater Horizon*, 808 F. Supp. 2d 943, 958–62 (E.D. La. 2011) (finding no displacement of punitive damages because OPA "does not mention punitive damages" and allowing punitive damages under the circumstances would not "frustrate the OPA liability scheme"). In any event, the Fifth Circuit has since held that OPA ***does*** displace maritime law claims. *United States v. Am. Commercial Lines, L.L.C.*, 759 F.3d 420 (5th Cir. 2014). BP reserves all of its rights to continue litigating its position in appropriate cases that OPA displaces all maritime causes of action seeking recovery for the types of economic damages, cost recovery, and other types of damages offered to claimants under OPA.

Building on the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, "OPA prescribes a supplemental, comprehensive federal plan for handling oil spill responses, allocating responsibility among participants, and prescribing reimbursement for cleanup costs and injuries to third parties." *Am. Commercial Lines*, 759 F.3d at 424 (quoting *In re Deepwater Horizon*, 745 F.3d 157, 168 (5th Cir. 2014) and S.Rep. No. 101–94, at 9 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, 730); *see also Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) ("OPA represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution."). This comprehensive framework displaces federal maritime law because, like any other type of federal common law, maritime law is "subject to the paramount authority of Congress." *New Jersey v. New York*, 283 U.S. 336, 348 (1931); *see also Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 97 (1981) ("The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme[.]"); *Am. Elec. Power*, 564 U.S. at 423-24 ("[I]t is primarily the office of Congress, not the federal courts, to prescribe national policy." ).

Relying on these principles, the Fifth Circuit recently held that "OPA provides the ***exclusive source of law*** for an action involving a responsible party's liability" for matters governed by OPA, thereby displacing maritime law. *Am. Commercial Lines*, 759 F.3d at 424 (emphasis added); *see also In re Settoon Towing, L.L.C.*, 859 F.3d 340, 351 (5th Cir. 2017) ("OPA's 'new scheme includes new remedies, which, in many respects, ***preempt traditional maritime remedies***.'") (emphasis added) (quoting *Tanguis*, 153 F. Supp. 2d at 867).[3]  The Fifth Circuit's

---

[3]  Courts sometimes erroneously use the terminology of "preemption" (or cognate terms) when they are issuing displacement rulings.  Displacement refers to a federal statute superseding federal common law, whereas preemption refers to a federal statute superseding state law of any type—statutory, regulatory, or common law.  *See, e.g.*, *Am. Commercial Lines*, 759 F.3d at 422 n.1.

ruling in *American Commercial Lines* builds on a long history of courts concluding that OPA displaces judge-made maritime claims. *See, e.g.*, *South Port Mar., LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65 (1st Cir. 2000) (Congress intended for OPA "to supplant the existing general admiralty and maritime law"); *Gabarick v. Laurin Mar. (Am) Inc.*, 623 F. Supp. 2d 741, 750 (E.D. La. 2009) ("OPA preempts general maritime law claims that are recoverable under OPA."); *Clausen v. M/V New Carissa,* 171 F. Supp. 2d 1127, 1133-34 & n.4 (D. Or. 2001) ("OPA provides the exclusive federal remedy for property damage claims resulting from oil spills . . . ."); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996) ("OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons."), *aff'd* 122 F.3d 1062 (4th Cir. 1997). *See also In re Deepwater Horizon*, MDL No. 2179, 2012 WL 5960192, at *11 (E.D. La. Nov. 28, 2012) ("Positive federal law also may displace judicially-created federal maritime law, i.e. general maritime law.").

OPA's maritime law "savings clause" further demonstrates that OPA displaces maritime law, "in that [the clause] permits the admiralty and maritime law claims '***except as otherwise provided*** in [the] Act.'" *In re Settoon Towing LLC*, Civil Action No. 07-1263, 2009 WL 4730971, at *3 (E.D. La. Dec. 4, 2009) (emphasis added) (quoting 33 U.S.C. § 2751(e)). "The emphasized language shows that the admiralty claims that are preserved are those that are not addressed in the OPA." *In re Settoon Towing*, 859 F.3d at 351. Section 2751(e) is not a "supremacy clause [that] advanc[es] general maritime law over the express provisions of the OPA." *Id.*; *accord Am. Commercial Lines*, 759 F.3d at 425-26; *see also* 33 U.S.C. § 2702(a) (stating that OPA applies "[n]otwithstanding any other provision or rule of law").

With respect to the Mexican Plaintiffs' maritime law claims, OPA's express provisions displace maritime law. The § 2707(a)(1)(B) "language is plain." Mar. 6, 2018 Order & Reasons

11

Dismissing Yucatán Claims (Rec. Doc. 24119), at 3.  To allow foreign claimants to assert maritime law claims would "frustrate the statutory scheme" by rendering OPA's recovery requirements for foreign claimants entirely meaningless.  *Am. Commercial Lines*, 759 F.3d at 425; *see also Miles v. Apex Mar. Corp.*, 498 U.S. 19, 32 (1990) (holding that "courts are not free to 'supplement' Congress's answer so thoroughly that the Act becomes meaningless") (citing *Mobil Oil*, 436 U.S. at 625); *Nw. Airlines, Inc.*, 451 U.S. at 96 ("Even in admiralty, . . . where the federal judiciary's lawmaking power may well be at its strongest, it is our duty to respect the will of Congress."). Congress would not have enacted a comprehensive scheme for oil spill liability and placed strict conditions on foreign claimants, if foreign claimants could evade those conditions simply by pleading their claims under federal maritime law.  *See, e.g.*, *Gabarick*, 623 F. Supp. 2d at 747 ("OPA explicitly states the damages to which it applies and the remedy to be pursued.  The courts are to recognize this direct answer of Congress rather than seek to subvert it by allowing pursuit of the types of claims covered by OPA under the general maritime law . . . .").

Moreover, recognizing common law claims here would upset Congress's international policymaking.  OPA's limitations for foreign claimants demonstrate a concern for diplomatic comity and reciprocity.  As discussed in Section I above, the United States has not authorized claimants from Mexico to recover under OPA.  This Court should not allow the Mexican Plaintiffs to evade the diplomatic restrictions embodied in OPA by simply bringing suit under maritime law. Such an end-run around U.S. international policy would "frustrate" OPA's complex and carefully balanced framework.  *Am. Commercial Lines*, 759 F.3d at 425.

To summarize, OPA displaces maritime law and provides the exclusive remedy for foreign claimants asserting damages in a United States court for an oil spill that occurred in United States waters.  Accordingly, BP respectfully requests that this Court dismiss all of the Mexican Plaintiffs'

maritime law claims, as mandated by Congress's legislative enactment, the United States' ongoing foreign policy, and Fifth Circuit jurisprudence.

### III. The 40 Toups Cooperatives assert mass claims, in violation of PTO 60.

In addition to the reasons discussed above, the 40 Toups Cooperatives' claims should be dismissed because they expressly violate PTO 60. *See* Ex. B, List of Mexican Plaintiffs Asserting Claims in Violation of PTO 60.[4] As the Toups Cooperatives make clear in their PTO 65 sworn statements, they seek to assert generic, unsworn economic damage claims on behalf of thousands of fishermen under the guise of 40 lawsuits that each only name a single fishing cooperative, in an attempt to evade the Court's prior order.

"The court has broad discretion and inherent authority to manage its docket; that discretion includes the power to dismiss a case for a party's failure to obey the court's orders." *In re Deepwater Horizon*, 713 F. App'x at 362 (affirming dismissal of claims for non-compliance with PTO 60 in this MDL) (citing *Sims v. ANR Freight System, Inc.*, 77 F.3d 846, 849 (5th Cir. 1996); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995)). In addition, "there is a special deference required in the context of an MDL." *In re Deepwater Horizon*, 907 F.3d at 235 (likewise affirming dismissal of claims for non-compliance with PTO 60 in this MDL). Consistent with this authority, in PTO 60, the Court required each plaintiff wishing to preserve its B1 claims to file an individual complaint and sworn statement asserting those claims. PTO 60 (Rec. Doc. 16050), ¶ 6. Repeatedly thereafter, the Court ruled that each remaining B1 plaintiff must pursue its own individual damages by means of its own individual lawsuit. *See, e.g.*, June 7, 2016 Show Cause Order (Rec. Doc. 18724), ¶ 4 (ordering plaintiffs who had filed Mass Joinder complaints in

---

[4] BP does not waive arguments that other cooperatives are in violation of PTO 60 and, to the extent that any other Mexican Plaintiffs assert claims on behalf of multiple individuals or entities, rather than asserting claims only for their own losses, the Court likewise should dismiss those claims for violating PTO 60.

response to PTO 60 to show cause why their B1 claims should not be dismissed); July 14, 2016 Order Re: Compliance with PTO 60 (Rec. Doc. 20996), ¶ 1 (striking any "embedded class allegations" in PTO 60-compliant plaintiffs' complaints and ruling that "only the individual Plaintiff claims are [deemed] compliant with PTO 60 and can continue"); Dec. 16, 2016 Order & Reasons (Rec. Doc. 22003) (deeming the Toups Cooperatives PTO 60-compliant based on their representation that they were pursuing each lawsuit solely on behalf of a single fishing cooperative and had "deleted any reference to a list of other individuals") (quoting July 27, 2016 Reply to BP's Obj. (Rec. Doc. 21269), at ¶ 2). Indeed, this Court dismissed the claims of other Mexican fishing cooperatives and their members (also represented by Toups) for violating PTO 60 by asserting mass claims—in that instance, on behalf of nearly 24,000 class members. Dec. 16, 2016 Order & Reasons (Rec. Doc. 22003), at 22. And, the Fifth Circuit affirmed that ruling. *In re Deepwater Horizon*, 713 F. App'x at 363.

After initially defying PTO 60 by filing Mass Joinder complaints, the Toups Cooperatives changed their tactic—clearly in an effort to evade the Court's order by another method. At the time, the Toups Cooperatives represented that they had amended their complaints to no longer be Mass Joinder complaints, and instead had ***limited each to a single fishing cooperative*** plaintiff, and assured the Court they were not asserting claims on behalf of multiple plaintiffs per lawsuit. *See* Dec. 16, 2016 Order & Reasons (Rec. Doc. 22003), at 8-10. Those assurances have been revealed to be untrue, as their PTO 65 filings demonstrate that, in fact, these "single fishing cooperative" plaintiffs now seek to recover individualized damages for anywhere from 39 to 2,137 fishermen for each cooperative. Each of the Toups Cooperatives has filed a PTO 65 statement impermissibly asserting losses allegedly suffered by each of its member fishermen. *See, e.g.*, (Case No. 16-5310, Rec. Doc. 8-2), at 1 of 11 (claiming $11,631 in losses per fisherman on behalf of 352

14

fishermen); (Case No. 16-4706, Rec. Doc. 8-2), at 1 of 11 (claiming $10,867 in losses per fisherman on behalf of 2,137 fishermen); (Case No. 16-4730, Rec. Doc. 9-2), at 1 of 11 (claiming $10,226 in losses per fisherman on behalf of 194 fishermen); (Case No. 16-4783, Rec. Doc. 8-2), at 1 of 12 (claiming $9,672 in losses per fisherman on behalf of 804 fishermen); (Case. No. 16-4762, Rec. Doc. 8-2), at 1 of 11 (claiming $5,510 in losses per fisherman on behalf of 1,449 fishermen). These plaintiffs should not be allowed to circumvent PTO 60's unequivocal mandate by using fishing cooperatives as "representatives" to bring back-door mass joinder actions. *See* Dec. 16, 2016 Order & Reasons (Rec. Doc. 22003), at 22 (rejecting the argument that each class complaint was "brought by one class representative on behalf of a class") (emphasis omitted) (quoting July 28, 2016 Pls' Reply to BP's Obj. to Show Cause Submissions (Rec. Doc. 21330), at 2).

Because the Toups Cooperatives assert mass claims that violate PTO 60, their B1 claims should be dismissed.

## CONCLUSION

For the foregoing reasons, and as discussed more specifically in Sections I and II above, BP respectfully requests that the Court dismiss with prejudice the B1 claims of the Mexican Plaintiffs identified on Exhibit A. Additionally, for the separate and independent reasons discussed in Section III above, BP respectfully requests that the Court dismiss with prejudice the B1 claims of the 40 Toups Cooperatives identified on Exhibit B.

| | |
|---|---|
| March 7, 2019 | Respectfully submitted, |

        */s/ Don Haycraft*
        Don Haycraft (Bar #14361)
        R. Keith Jarrett (Bar # 16984)
        **LISKOW & LEWIS**
        One Shell Square
        701 Poydras Street, Suite 5000
        New Orleans, Louisiana 70139-5099
        Telephone: (504) 581-7979
        Fax No. (504) 556-4108

        Matthew T. Regan, P.C.
        J. Andrew Langan, P.C.
        Kristopher S. Ritter
        **KIRKLAND & ELLIS LLP**
        300 North LaSalle Street
        Chicago, IL 60654
        Telephone: (312) 862-2000
        Fax: (312) 862-2200

        Christopher W. Keegan
        Ashley Littlefield
        Anna Terteryan
        **KIRKLAND & ELLIS LLP**
        555 California Street
        San Francisco, CA 94104
        Telephone: (415) 439-1400

        *Attorneys for BP America Production Company and BP Exploration & Production Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **BP's Memorandum in Support of Its Dispositive Motion as to the B1 Claims of Mexican Plaintiffs** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of March, 2019.

*/s/ Don Haycraft*
Don Haycraft