UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER |
| **This Document Relates to:** *All Claims In Pleading Bundle B3* | * * | MAG. JUDGE WILKINSON |

**BP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR
ENTRY OF AN ORDER RELATING TO THE DISPOSAL OF CERTAIN MATERIALS**

BP Exploration & Production Inc., BP America Production Company, and BP America Inc. (collectively, "BP"), through their undersigned counsel, submit this reply memorandum in support of BP's Motion For Entry Of An Order Relating To The Disposal Of Certain Materials (the "Motion"). [Rec. Doc. 25226]  In its Motion, BP provided notice of its intent to dispose of certain samples that were collected during the Natural Resource Damages Assessment ("NRDA") and the response to the *Deepwater Horizon* spill.  In particular, BP requested approval to dispose approximately 140,000 physical samples, including samples of water, sediment, animal tissue, vegetation, waste, and animal feed, among other things (collectively, the "Samples").  (*See* Mot., Ex. A)  Disposal of these samples is authorized under this Court's ruling in Pretrial Order ("PTO") 62 and federal common law.  (*See, e.g.*  PTO 62 ¶ 6) [Doc. No. 22046]

Nevertheless, out of an abundance of caution and to maintain transparency, BP filed on the public docket its disposal notice, along with a detailed listing of the Samples at issue.  Despite meeting and conferring with the objecting parties over the last several weeks in a good-faith attempt to resolve this issue, however, BP has been unable to reach an agreement.  BP therefore respectfully requests that this Court grant its Motion and authorize disposal of the Samples.  (*See* Proposed Order, Exhibit 2 hereto)

## BACKGROUND

BP filed its Motion on December 12, 2018. [Rec. Doc. 25226] Four objections were filed in opposition to BP's Motion. [*See, e.g.,* Rec. Docs. 25311, 25357, 25359, 25360] In those Objections, certain plaintiffs argued, among other things, that they did not have sufficient information to assess the Samples and that the Samples may still be viable despite the amount of time that has passed since they were originally collected four to eight years ago. (*Id.*) In light of these assertions, BP requested, and received, additional time from this Court to file this reply, so that BP could undertake to provide the objecting plaintiffs with the information they were requesting and meet-and-confer over the Motion. [Rec. Doc. 25364] While BP was not obligated to provide plaintiffs with additional information about the Samples under PTO 62 or other pretrial orders, BP nevertheless agreed to endeavor to do so in an effort to reach a compromise on the Motion.

Over the last several weeks, the objecting plaintiffs requested a variety of additional information about the Samples. BP has worked diligently to gather and provide the requested information. BP has provided an overwhelming amount of detailed information about the Samples to date, including: (i) preservation details (*e.g.,* the current temperature at which the sample is stored and the preservation material, if any, added to the sample); (ii) additional information regarding the sample type (*e.g.*, the type of fish species in an animal tissue sample); (iii) the study pursuant to which the sample was collected, if applicable; (iv) the location where the sample was collected (*e.g.*, the latitude, longitude, and depth); and (v) information regarding the analyses, if any, performed on the sample (*e.g.,* the type of test performed, the analyte tested, and sampling

results).[1]  The parties held multiple phone conferences to discuss the Samples and the information provided.

While BP conferred, or attempted to confer, with each of the counsel for the objecting plaintiffs to resolve the issues in the Motion, the parties have been unable to reach agreement.  The objecting parties have not agreed to BP's request to dispose of even a few narrow categories of samples—none of which BP believes should be subject to serious dispute.  For example, BP explained to counsel for the Nexsen and Downs objectors that the company is currently preserving 117 containers of commercial bird feed that had been provided to mallard ducks in a controlled laboratory experiment involving avian toxicity studies.  (Mot. Ex. A at 1-2; Declaration of Oliver Pelz ("Pelz Decl." at ¶ 14, Exhibit 1 hereto)  BP has continued to preserve the seed left over from this experiment.  (Pelz Decl. at ¶ 14)  BP provided photos of the animal feed and requested that the objecting plaintiffs not oppose the disposal of these samples.  (*See id.*)  They refused, with counsel for the Nexsen objectors stating that they believe BP needs to present witnesses to address the issue and counsel for the Downs objectors stating that they could not agree to the request at this time.

BP's similar requests to dispose of other narrow categories of samples — including clean laboratory water used as control samples or "blanks", whole preserved worms and other invertebrates, and other fish and animal tissue—were likewise rejected on the same grounds.  (*Id.* at ¶¶ 15-17)  Given the lack of progress in the parties' meet-and-confer discussions, the substantial cost that BP is incurring to preserve the Samples ($13.8 million to date), the lack of relevance of the Samples to any pending or anticipated litigation, and the disposal process outlined in PTO 62, BP now seeks relief from this Court.  (Pelz Decl. at ¶ 18)

---

[1] Notably, BP is not seeking to dispose of any of the *data* associated with the physical samples at issue in its Motion.

## ARGUMENT

PTO 62 authorizes disposal of the Samples. In particular, paragraph 6 of PTO 62 provides:

> Upon the entry of this Order, any requirements for the preservation of "samples" and "reference materials" as defined in any pre-trial order, or other order, in the MDL shall be terminated. For purposes of this Order, "Sample" shall mean any physical sample, including samples of soil, sand, water, air (whether ambient or breathing-zone), sediment, flora, fauna, wastes, extracts of samples for analysis, and the containers and media in which they are held.

(PTO 62 at ¶ 6; *see also id.* at ¶ 3 ("Upon the entry of this Order, any preservation requirements established by Paragraph 14 of Pretrial Order No. 1 and not otherwise addressed by this Order shall be terminated.")).

Significantly, this Court issued PTO 62 to "conform to the requirement that the Court ensure the costs and burdens of discovery and preservation obligations imposed by litigation are proportionate to the benefits of such discovery and preservation obligations." (PTO 62 at 3) This principle is settled. *See, e.g., Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010) (what "is acceptable in a case depends on what is *reasonabl*e, and that in turn depends on whether what was done — or not done — was *proportional* to the case"); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522 (D. Md. 2010) ("[T]he duty to preserve evidence should not be analyzed in absolute terms . . . because the duty 'cannot be defined with precision' . . . the Court [must] determine reasonableness under the circumstances."); *The Sedona Conference Comm. on Proportionality*, 18 Sedona Conf. J. 141, 147 (2017) ("Achieving proportionality in civil discovery is critically important to securing the 'just, speedy, and inexpensive resolution of civil disputes' as mandated by Federal Rule of Civil Procedure 1.").

The Samples that are the subject of BP's Motion consist of approximately 140,000 physical samples stored at a facility in Colorado and include, for example, water, sediment, soil, animal tissue, animal feed, macroinvertebrates, and a variety of other physical samples. (Pelz Decl. at ¶ 13) The

Samples here fall squarely within the definition of "Samples" under PTO 62, and therefore, disposal is authorized.[2]

Plaintiffs had notice of PTO 62 and raised no objection to its entry. On October 13, 2016, the Court filed a proposed PTO 62 and ordered that any objection to its entry be filed by October 19, 2016. [Rec Doc. 21782] Only two objections were filed — one by the Parish of Plaquemines and the other by the City of Treasure Island, Florida, Panther Ridge Estates, Inc., Bird of Paradise, and John DeSilva (collectively, the "PTO 62 Objecting Parties")—none of whom have objected to the instant Motion. [Rec. Docs. 21806, 21807] As a result of these objections, the Court included modifications in the final PTO, which require parties to provide 35 days' notice to the PTO 62 Objecting Parties before disposing of certain samples, to allow them "to review and determine whether to request to receive or otherwise take control of such materials." (PTO 62 ¶ 7) PTO 62 provides that "after this review period, the [PTO 62 Objecting Parties] shall take custody themselves of any samples they wish to preserve, with shipping and storage of such requested to be at the Objectors' expense." (*Id.*) Even though the objecting plaintiffs here did not object to PTO 62, BP is willing to afford them the same rights as the PTO 62 Objecting Parties to take possession of any Samples they wish to preserve within 35 days of entry of an Order on this Motion.

Plaintiffs' assertion that they first learned of the existence of the Samples when BP filed the instant Motion is unfounded. (*See, e.g.,* Nexsen Pruet Obj. at 3, 9; Downs Obj. at 3, 6) Preservation of and protocols relating to these and other samples have been the subject of numerous PTOs—in addition to PTO 62—dating back to 2011. For example, PTO 30 (issued 2/25/11) [Rec. Doc. 1378]

---

[2] PTO 62 does not affect the terms of the Court's Order dated July 20, 2016 [Rec. Doc. 21088], relating to BP's preservation and disposal of reference materials. (*Id.* at ¶ 8.) BP is not seeking to dispose of reference materials in this Motion.

and 35 (issued 4/29/11) [Rec. Doc. 2201] addressed the United States' preservation of samples, and specifically a process by which the United States could dispose of samples. PTO 37 (issued 6/27/11) [Rec. Doc. 3054] addressed protocols for the United States' and Natural Resource Trustees' analytical testing of samples. PTO 39 (issued 7/8/11 and amended on 5/23/13) [Rec. Docs. 3202, 10231]—which plaintiffs cite in their objection [*see* Nexsen Pruet Obj. at 1-3]—also addressed BP's obligations with respect to analytical testing and preservation of samples. And PTO 43 (issued 9/21/11) [Rec. Doc. 4080] clarified the definition of "Sample" and when a preservation obligation triggered.

Information and data regarding the sampling programs and associated analytical data have been publicly available for years. For example, the Work Plans associated with the NRDA have been publicly available on NOAA's website (https://www.gulfspillrestoration.noaa.gov/workplans). And a significant amount of analytical data has been and continues to be publicly available, and in many cases, the subject of published studies. (*See, e.g.*, NOAA's DIVER website *at* https://www.diver.orr.noaa.gov/; BP's Gulf Science Data, provided to the Gulf of Mexico Research Initiative *at* https://data.gulfresearchinitiative.org/about-griidc). The existence of these Samples has been widely-known for several years. Yet the objecting parties did not make any request to obtain or access the Samples before this Motion and even now, apparently refuse to take possession of the Samples.

Finally, the suggestions of certain objecting plaintiffs that BP supposedly "allowed the spoliation" of evidence (Nexsen Pruet Obj. at 5) or "violated" preservation orders of this Court (Downs Obj. at 3) are spurious. BP has fulfilled its preservation obligations and has complied with PTO 39. Plaintiffs have not—because they cannot—offer any evidence to the contrary. BP takes its preservation

obligations seriously—that is precisely why it filed this Motion, detailing its intention to dispose of specific Samples even though PTO 62 imposed no requirement to do so.[3]

## CONCLUSION

For the foregoing reasons, BP respectfully requests that the Court authorize disposal of the Samples identified in Exhibit A to its Motion, or alternatively, order the objecting plaintiffs to take possession of any Samples they wish to preserve within 35 days after entry of an Order on this Motion.

---

[3] The objecting plaintiffs assert that the Court should hold an evidentiary hearing on BP's Motion to assess, among other things, the relevance and viability of the Samples. PTO 62 and federal common preservation law require no such thing, and the Court therefore need not reach these issues. Nevertheless, BP is prepared to present additional evidence and to continue to engage with the objecting parties (including over the course of the proposed 35 day review period) on these issues should the Court deem it appropriate.

March 15, 2019							Respectfully submitted,

*/s/ Don Haycraft*
Don Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  (504) 581-7979
Fax No.  (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
A. Katrine Jakola, P.C.
(katie.jakola@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Christina L. Briesacher
(christina.briesacher@kirkland.com)
Vanessa Barsanti
(vanessa.barsanti@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

*Attorneys for BP America Production Company and BP Exploration & Production Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **BP's Reply Memorandum In Support of Its Motion For Entry Of An Order Relating To The Disposal Of Certain Materials** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 15th day of March 2019.

*/s/ Don Haycraft*
Don Haycraft