UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010, | Case No. MDL NO. 2179 |
| THIS DOCUMENT RELATES TO: | SECTION: J |
| CASE NO. 2:19-CV-01418-CJB-JCW AND ALL CASES IN PLEADING BUNDLE B3 | Hon. Judge Barbier<br>Magistrate Judge Wilkinson |

**BP'S MEMORANDUM OF LAW IN OPPOSITION TO
THE RESPONDERS' MOTION TO LIFT THE MDL STAY**

O'Brien's Response Management, L.L.C. and National Response Corporation ("NRC," and together with O'Brien's, the "Responders") have moved this Court to lift the stay imposed by Pretrial Order No. 25 (Rec. Doc. 983.) as to their declaratory judgment action against BP Exploration & Production Inc. and BP America Production Company (together, "BP"). (Rec. Doc. 25480.) The factual history belies the Responders' manufactured claims of urgency and assertions of prejudice. BP respectfully asks the Court to deny the Responders' motion and to refer the parties to mediation.

**INTRODUCTION**

The Responders each have clear contractual obligations to indemnify BP against personal injury claims by their employees.[1] Accordingly, as BP began to receive Notices of Intent to Sue ("NOISs") for personal injury under the Back-End Litigation Option ("BELO") contemplated by the Medical Benefits Class Action Settlement Agreement (the "MSA"), it tendered those claims to the Responders. BP made the first such tenders as early as March 2018 and has continued to promptly tender BELO claims on a rolling basis as it receives NOISs. It was not until August and

---

[1] NRC's obligations (but not O'Brien's) are limited by a "gross negligence or willful misconduct" standard.

September 2018—five to six months after BP's initial tender of BELO claims—that O'Brien's and NRC first refused to indemnify BP, complaining that these notices were somehow untimely.

Even before BP replied to their letters refusing to indemnify, the Responders reached out to BP in September 2018 to suggest a dialogue. Despite its clear rights to indemnification under the contract, BP agreed to discuss a negotiated path forward, and the ensuing discussions continued through the end of 2018. At no point during this dialogue did the Responders ever request control of any BELO litigation going forward or suggest that there was any urgency. To the contrary, in early 2019, it was the Responders who went radio silent, repeatedly ignoring BP's requests for continued dialogue and putting off further discussions. After continual prodding by BP, the Responders finally committed to come forward with their position on a date certain. When that date arrived, however, the Responders abruptly, and without any notice to BP, filed their lawsuit instead.

The facts demonstrate that there is no urgency here, and that the Responders' claims of prejudice are nonsense, especially given their concession that they have already tendered BP's claims down to their subcontractors. BP respectfully requests that the Court deny the Responders' motion to lift the stay and refer the parties to mediation instead.

## BACKGROUND

Pursuant to the contract between O'Brien's and BP, "Contractor [O'Brien's] shall defend, indemnify, release, and hold Company Group [BP] harmless from and against all claims, liabilities, damages, and expenses" related to "all injuries to, deaths, or illnesses of persons in Contractor Group." (Bridge Agreement 11.02.) NRC's contract with BP is similar, except that NRC must indemnify BP only to the extent that a claim is "caused by the gross negligence or willful misconduct of" NRC or its affiliates. (Agreement for the Provision of Response Resources 9(1).)

2

On May 1, 2012, BP entered into the MSA with a class of personal injury plaintiffs—including cleanup workers, such as employees of the Responders and their subcontractors. The heavily negotiated MSA included a number of provisions that both directly and indirectly benefitted the Responders, as indemnitors of BP. For instance, the MSA secured broad releases for the Responders as to direct personal injury claims against them. (MSA §§ XVI, XX(B-C).) Further, the MSA limited damages for then-manifested injuries via a compensation matrix for claims relating to specific physical conditions. The MSA also funneled plaintiffs who developed "later-manifested physical conditions" after the settlement into the carefully circumscribed BELO process. (MSA § I(A).) As to these BELO claims, the MSA: required BELO plaintiffs to elect one of two remedies (MSA § VIII(B)(1)); limited who may file BELO claims (MSA § VIII(B)(2)); required mediation of BELO claims at BP's option (MSA § VIII(C)); prohibited any class, mass, or aggregate procedures (MSA § VIII(G)(1)(d)); and prevented BELO plaintiffs from seeking punitive damages, exemplary damages, multiple damages, or any other non-compensatory damages or penalties (MSA § VIII(G)(2)(c)).

The MSA was publicly noticed, and proceedings on its approval were conducted in open court, with all interested parties given an opportunity to object or suggest revisions to the agreement. Knowing full well that the MSA impacted claims by its employees that may be subject to indemnification obligations, neither Responder ever voiced any concerns, either in court or to BP, regarding the MSA or any of its terms. Instead, the Responders laid in the weeds while the proposed MSA was under public discussion, only to spring forth more than five years later to claim that the MSA somehow prejudices them.

BP began to receive a stream of BELO NOISs starting in spring 2018 and continues to receive such notices on an ongoing basis. In accordance with their indemnity agreement, BP has

3

timely tendered hundreds of BELO claims to O'Brien's ("Indemnity Demands") starting in March 2018 and continuing through today. The Responders first objected to the Indemnity Demands in August and September 2018, when they sent letters flatly refusing to indemnify BP.[2] At the Responders' request, the parties held a call on September 27, 2018 to discuss a path forward. The Responders indicated their desire to engage in a dialogue toward a negotiated solution, and BP committed to further discussions. Thereafter, the parties exchanged letters laying out their positions regarding the Responders' indemnification obligations on October 12 and November 30, 2018, and January 4, 2019.

Throughout this period, the parties also spoke by phone. BP made clear that although the Responders were responsible for 100% indemnity, BP was willing to negotiate. As part of those negotiations, BP proposed to retain continued control of the litigation, to the benefit of all parties. (Under BP's direction, 27 BELO claims have been dismissed, either on a motion or through voluntary dismissal, and BP has developed substantial expertise and institutional knowledge in handling these claims.) In the course of the parties' discussions, the Responders never objected to or declined BP's proposal to retain control of the BELO cases, nor have they ever asked BP to relinquish that control—to the contrary, the Responders' refusal to accept their obligation to indemnify BP amounts to their disclaimer of any right to manage the BELO cases. BP also made clear that it did not intend to seek indemnity from NRC except to the extent that the willfulness requirement is satisfied—it was simply giving NRC the earliest possible notice of potential claims.

To BP, it seemed that the parties were negotiating in good faith and that there was hope for a mutually agreeable resolution. In the meantime, the Responders apparently tendered the Indemnity Demands further down to their subcontractors. (R. 25480-1 at 5.) The Responders are

---

[2] O'Brien's sent a letter on August 29, 2018 and NRC sent a letter on September 26, 2018.

4

conspicuously silent as to whether these subcontractors have refused to indemnify them. Further, O'Brien's was contractually required to obtain insurance (Bridge Agreement 11.07.) and to include BP as an additional insured (Master Consulting Services Contract 12.02.). The Responders' motion is also silent as to whether their insurers have declined coverage.

After BP's last letter at the beginning of January, the Responders began a strategy of delay: putting off phone calls, seeking additional and duplicative information from BP, and providing noncommittal responses to BP's inquiries for weeks, purportedly while conferring with their client. On February 11, the Responders committed to come forward with their position on a proposed solution by February 15. Instead, without any prior notice to BP, the Responders filed their lawsuit with this Court on that date.

## ARGUMENT

### I.   The Factual History Belies O'Brien's Manufactured Claims of Urgency.

For nearly a decade this Court has managed the complex MDL docket and balanced the myriad claims stemming from the Deepwater Horizon oil spill. The Responders themselves have been a part of this process for years. When BP entered into the MSA in 2012, the Responders were fully aware of the MSA's terms, which allowed for speedy adjudication of a large number of claims while also providing a mechanism for individuals with later-manifested conditions to make claims through the BELO process. Since then, BP and the Responders have reminded each other at various points of their mutual indemnification obligations with respect to claims stemming from the Deepwater Horizon cleanup efforts. Yet during those years, the Responders made no attempt to disclaim their indemnification obligations or complain about the terms of the MSA. Likewise, the Responders never sought to take over the defense of claims brought by employees of their contractor groups. Even after receiving indemnification notices from BP for specific BELO claims, the Responders waited for months to object to them. Then, after requesting a dialogue

with BP, the Responders never indicated any urgency to these issues. To the contrary, they dragged their heels in negotiations, causing further delay.

After these years and months of delay, the Responders have suddenly awoken, filing this action, which seeks to renege on their contractual duties. Now the Responders seek to have their complaint adjudicated quickly and ahead of the other stayed claims.

Given the history of their inaction and silence with respect to the BELO claims, the Responders' arguments for lifting the MDL stay ring hollow. They claim that this contract dispute over indemnification obligations must be resolved immediately, because BP is defending the BELO claims "as it sees fit, despite the Responders' right to control the defense of these claims." (Rec. Doc. 25480-1 at 1.) Despite disclaiming all indemnification obligations, and despite never having requested any input into BP's handling of the BELO claims, the Responders now feign an urgent need to prevent BP from "select[ing] and retain[ing] its preferred counsel, experts, and consultants; determin[ing] which defenses to assert and pursue; and ma[king] a number of strategic decisions with respect to these various cases." (Rec. Doc. 25480-1 at 1-2.) In truth, the Responders do not intend and have never intended to control the defense of the Deepwater Horizon personal injury lawsuits, which BP has ably and efficiently handled thus far.

In any event, few of the BELO claims have advanced very far. The vast majority of them have not yet progressed beyond the NOIS stage, meaning that no complaint has yet been filed. As to those claims for which a complaint has been filed, nearly all of the claims tendered to the Responders were filed in the past few months. Clearly there is little risk that these cases will outpace this indemnification dispute.

**II.   This Case Belongs in Mediation.**

The Local Civil Rules provide that "counsel have a responsibility to minimize the expense of administering justice…[and thus]…they must conduct serious settlement discussions." (Local

6

Civil Rule 16.3 Responsibility for Settlement Discussions.) The Responders have not fulfilled this obligation. BP therefore respectfully proposes and requests that, rather than lift the MDL stay, the Court refer the parties to mediation, where discussions can continue and this dispute may be promptly and efficiently resolved. The Court has successfully employed exactly that approach in other cases within this multidistrict litigation. (*See, e.g.*, Rec. Docs. 23388 (referring *Reitano* matters for mediation) and 23803 (referring *Andry* matters for mediation).) The Responders and BP can pick up where they left off at the beginning of January 2019, before the Responders checked out of the process and, unbeknownst to BP, began drafting their complaint while purporting to negotiate in good faith.

As a general rule, the Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citation omitted). *See, e.g.*, *Matter of Beach*, 731 F. App'x 322, 324 (5th Cir. 2018) (approving of court-ordered mediation in bankruptcy case). Further, per Local Civil Rule 16.3.1, the Court may determine "at any time that the case will benefit from alternative dispute resolution" and as a result may "(a) refer the case to private mediation, if the parties consent…; (b) order nonbinding mini-trial or nonbinding summary jury trial before a judicial officer with the parties' consent; or (c) employ other dispute resolution programs…." (Local Civil Rule 16.3.1 Alternative Dispute Resolution.) This is such a case. With good faith discussions, a compromise is possible.

## CONCLUSION

For these reasons, BP respectfully urges the Court to deny the Responders' motion to lift the MDL stay and instead to refer the parties to enter mediation to efficiently reach resolution.

March 18, 2019                                       Respectfully submitted,

*/s/ Don K Haycraft*
Don K. Haycraft (#14361)
R. Keith Jarrett (#16984)
Devin C. Reid (#32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  (504) 581-7979
Fax No.  (504) 556-4108

David J. Zott
(david.zott@kirkland.com)
Kristopher Ritter
(kristopher.ritter@kirkland.com)
Brenton Rogers
(brenton.rogers@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000

*Attorneys for BP America Production Company and BP Exploration & Production Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **BP's Memorandum of Law in Opposition to The Responders' Motion to Lift the MDL Stay** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of March 2019.

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Don K. Haycraft*
　　　　　　　　　　　　　　　　　　　　　　　Don K. Haycraft