UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | *  *  *  *  *  MDL NO. 2179 |
| | * |
| THIS DOCUMENT RELATES TO: | *  SECTION: J |
| | * |
| CASE NO. 2:19-CV-01418-CJB-JCW AND ALL CASES IN PLEADING BUNDLE B3 | *  JUDGE BARBIER *  *  MAG. JUDGE WILKINSON |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**REPLY IN SUPPORT OF RESPONDERS' MOTION TO LIFT THE MDL STAY**

Pursuant to the Court's March 11, 2019 order (Rec. Doc. 25485), O'Brien's and NRC (together, the "Responders") submit this Reply in support of their Motion to Lift the MDL Stay (the "Motion") as to their Declaratory Judgment Action against BP.[1]

**INTRODUCTION**

In demanding that the Declaratory Judgment Action be referred to mediation, BP's Opposition to the Motion (Rec. Doc. 25500) effectively concedes that the indemnity dispute between the parties needs to proceed. BP wants the case to go forward, just in mediation rather than litigation. The remaining question, therefore, is simply *before whom* this case should proceed, not *if and when* it should proceed. On that point, the Responders do not consent to mediation. Rather, the Responders respectfully submit that, in light of the Court's "continuing and exclusive jurisdiction"[2] over claims arising from, and significant institutional knowledge about, the Medical Benefits Class Action Settlement (the "Medical Settlement"), Your Honor is

---

[1] All defined terms used herein, unless otherwise defined, shall have the same meaning ascribed to them in the Motion.
[2] Rec. Doc. 8218 ¶¶ 21-22.

far better situated than any mediator to quickly and efficiently resolve this claim. Mediation is particularly inappropriate here because the parties fundamentally disagree on the critical threshold legal issue, *i.e.*, whether BP is prohibited from seeking indemnity in the first place.

Substantively, BP's Opposition fails to address, let alone refute, that its indemnity demands cause mounting uncertainty for, and increasing prejudice to, the Responders and other interested parties, including other contractors during the DWH Response. BP cites no case in support of its position that the Responders and other third parties are not prejudiced by the mounting uncertainty during the stay. BP instead relies on a purported timeline of events rife with misdirection and revisionist history. This falls far short of meeting BP's burden to show that it would suffer "a clear case of hardship or inequity" from lifting the stay and facing the Responders' claims. *In re Papst Licensing GmbH Patent Litig.*, No. 99-MD-1298, 2006 WL 1004990, at *2 (E.D. La. Apr. 10, 2006) (Barbier, J.). This Court should grant the Motion in full.

## ARGUMENT

### I.     THIS CASE SHOULD PROCEED IN THIS COURT, NOT IN MEDIATION

Local Civil Rule 16.3.1 permits this Court to refer a dispute to mediation with the parties' consent or if alternative dispute resolution ("ADR") may resolve the underlying litigation. LR 16.3.1(a)-(c). Because the Responders do not consent to mediation, section (c) is the relevant portion of this Rule. Section (c) may be invoked at the Court's discretion if it determines that a compromise solution can be reached. This Court should decline to do so here.

Mediation would be fruitless here because the parties disagree on the threshold question of whether, after the events of the past decade, indemnity is even owed for "B3" personal injury or exposure claims in the first place. The dispute is not one where the parties can reach a middle ground or compromise, such as an appropriate amount of damages or contribution allocation, because the Responders fundamentally disagree with BP that they owe BP anything at all. The

relief requested in the Declaratory Judgment Action is black and white; there is no compromise to be had as far as the blanket and far-reaching indemnity coverage that BP purports to still have and which the Responders have flatly rejected in writing. *See*, *e.g.*, Compl. ¶¶ 148-149, 151-53. While BP points to the parties' discussions concerning BP's indemnity demands before the Responders filed their Complaint, *see* Opp. at 2, 4-5, 7, BP does not and cannot identify any reason to believe that additional discussions would come to a different result.

Courts in this district routinely decline to refer disputes to mediation or other ADR programs where there is not mutual consent and the litigation is unlikely to be resolved. *See*, *e.g.*, *Brady v. St. John Baptist Par. Council*, No. 14-CIV-1613, 2014 WL 4540072, at *1 (E.D. La. Sept. 11, 2014) (Barbier, J.) (denying motion for mediation process where "all parties do not agree that mediation is the proper avenue for dispute resolution in this case"); *Warren Tr. v. United States*, No. 11-CIV-1394, 2012 WL 1825399, at *1 (E.D. La. May 18, 2012) (denying motion to compel mediation under LR 16.3.1(c), as there was "insufficient common ground" to reach a resolution and non-movant made clear such a proceeding would be "fruitless"); *see also*, *e.g.*, *Battie v. Freeman Decorating Co.*, 2002 WL 519803, at *4 (E.D. La. Apr. 2, 2002) (denying motion to compel mediation as premature, noting that "[i]t is not the practice in the Eastern District of Louisiana to assign a case for mediation until discovery has been completed and the parties are about to begin their trial preparations").

The cases BP cites are not to the contrary. *See* Opp. at 7 (citing Rec. Docs. 23388 and 23803). Those were defamation-related cases. They sought damages that could be readily evaluated by a mediator, not declaratory relief such as that requested by the Responders. And none of them involved the complex background and fact pattern presented by the terms, interpretation, and effect of the Medical Settlement that are so well known to this Court.

## II. BP HAS NOT MET ITS BURDEN TO ESTABLISH WHY THE MDL STAY SHOULD BE MAINTAINED IN THIS CASE

Substantively, BP does not even attempt to address any of the Responders' arguments as to why the stay should be lifted. There is no attempt to dispute that the Responders face uncertainty and prejudice resulting from BP's indemnity demands. Nor is there any attempt to dispute that such uncertainty and prejudice is increasing with each passing day as more and more "B3" plaintiffs invoke their BELO rights under the Medical Settlement.

BP instead offers only a self-serving and heavily-disputed factual recounting that is belied by the record in this MDL. Even if it were correct, BP's recounting would be irrelevant to whether the stay should be lifted. And in no event does it carry BP's burden to establish that the stay should persist. *See In re Papst Licensing*, 2006 WL 1004990, at *2. BP instead can make its merits-based arguments once the MDL stay is lifted and the Responders' claims are heard. Nevertheless, the Responders briefly set the record straight.

First, BP suggests that the Responders should have known about BP's intention to seek indemnity for the "B3" claims and thus objected to the Medical Settlement, and their purported failure to do so somehow prevents them from arguing prejudice now. *See* Opposition at 3, 4. This argument is entirely without merit. The Responders had no reason to know that BP planned to tender any "B3" claim to them, and thus no reason to object to the Medical Settlement or the BELO provision therein, because BP *never* notified them of any indemnity claims or even the potential for such claims. *See* Compl. ¶¶ 46-50, 60, 85-89, 92, 102, 107-109. To be clear, BP had not then (1) tendered any "B3" personal injury or exposure claim to O'Brien's or NRC, (2) reserved rights in connection with any such claims, or (3) otherwise notified O'Brien's or NRC of any potential indemnity claims flowing from the "B3" claims. And after the Medical Settlement was posted on the docket, BP never provided any indication of its intention to tender

4

any "B3" claim to O'Brien's or NRC. Moreover, there was nothing on the face of the settlement that alerted O'Brien's or NRC that any of their rights were interfered with or otherwise limited. The Responders—who were not settling parties to or signatories of the Medical Settlement—thus had no reason to file any objection back in 2012. And had they done so, they would have lacked standing and their objections would have been overruled. (Rec. Docs. 8138 at 77 & 8217 at 71).[3]

Second, BP suggests that the Responders "have suddenly awoken" and engaged in a practice of delay. *See* Opposition at 3-6. Not so. It is BP, not the Responders, that waited approximately seven years after the incident aboard the *Deepwater Horizon* and resultant response—and more than four years after the Medical Settlement was approved—to demand indemnity in connection with *any* "B3" exposure-based claim. Compl. ¶ 123. The Responders had no obligation to immediately respond to BP's flood of indemnity demands for claims that BP has been aware of since 2010. They had every right to assess BP's demands in the context of BP's unilateral Medical Settlement before declining them, and did so in a reasonable timeframe.

Finally, BP suggests that tendering its indemnity demands to subcontractors amounts to a concession, and also points to potential insurance coverage. *See* Opposition at 4-5. O'Brien's has provided non-parties with prompt notice of BP's demands in order to preserve its rights and avoid any allegation of delay or waiver. In other words, all O'Brien's has done is what BP should have done nearly a decade ago if it wanted to preserve any purported indemnity right.

The Motion should be granted in its entirety and BP's mediation demand denied.

---

[3] BP suggests that the Responders were afforded benefits by being listed on the release to the Medical Settlement. *See* Opposition at 3. But BP points to no authority—nor could it—that states that receiving an indirect benefit from a settlement somehow bars an indemnitor from contending its rights were prejudiced, or its risk was materially increased, in connection with an indemnitee's conduct and unilateral actions. And BP's suggestion that the Responders received a "direct" benefit via the BELO provision is, quite frankly, absurd. *See* Opposition at 3. The Responders allege in their Complaint that the unilateral decisions made by BP vis-à-vis this provision in the Medical Settlement have unquestionably prejudiced their rights and operate to discharge any contractual indemnity obligation that may have once existed. *See* Compl. ¶¶ 7, 10, 148-149.

Dated: March 21, 2019

Respectfully submitted,

<div style="display:flex">

*/s/ Jeremy T. Grabill*

| | |
|---|---|
| Ivan M. Rodriguez (LA #22574) | Michael J. Lyle (DC #475078, IL #6199227) |
| Gary A. Hemphill (LA #6768) | (trial attorney) |
| Jeremy T. Grabill (LA #34924) | Eric C. Lyttle (DC #482856) |
| PHELPS DUNBAR LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 365 Canal Street, Suite 2000 | 1300 I Street NW, Suite 900 |
| New Orleans, LA 70130-6534 | Washington, DC 20005 |
| Telephone: 504-566-1311 | Telephone: (202) 538-8000 |
| Facsimile: 504-568-9130 | Facsimile: (202) 538-8100 |
| ivan.rodriguez@phelps.com | mikelyle@quinnemanuel.com |
| gary.hemphill@phelps.com | ericlyttle@quinnemanuel.com |
| jeremy.grabill@phelps.com | |

Sylvia E. Simson (NY #4803342)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
sylviasimson@quinnemanuel.com

Attorneys for O'BRIEN'S RESPONSE
MANAGEMENT, L.L.C. and NATIONAL
RESPONSE CORPORATION

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply in Support of Responders' Motion to Lift the MDL Stay has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 21st day of March, 2019.

*/s/ Jeremy T. Grabill*
Jeremy T. Grabill