IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010<br><br>APPLIES TO:<br><br>All Civil Actions of the Plaintiffs Represented by Nexsen Pruet, LLC and Douglas M. Schmidt APLC | Civil Action No. 2:10-MD-02179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br><br>MAG. JUDGE WILKINSON |

**Memorandum in Support of Plaintiffs' Motion to Extend the Review Period of Objectors Set Forth in Pre-Trial Order 62**

Nexsen Pruet, LLC and Douglas M. Schmidt, APLC, represent approximately 780 of the medical opt-out Plaintiffs in the "B3 bundle" of the BP Oil Spill Class Action MDL 2179 (collectively "Plaintiffs"). BP's most recent Motion seeks Court approval to destroy physical evidence retained by BP under the authority of Pretrial Order Number 62 ("PTO 62"). If applicable, PTO 62 allows the Court to extend the review period from 35 days upon motion of the Objectors and for good cause shown. For the reasons set forth below, and to clarify the applicability of PTO 62 to Plaintiffs' cases, the Court should extend the review period for all Samples in BP's custody or control until all of Plaintiffs' cases have been completed.

**ARGUMENT**

**I.   THE SAMPLES ARE STILL VIABLE AND ABLE TO BE RELIABLY TESTED.**

Plaintiffs' proposed expert, Dr. Marco Kaltofen, submitted an affidavit to the Court that accompanied Plaintiffs' Memorandum in Opposition to BP's Disposal Motion. In his affidavit, Dr. Kaltofen stated that there are many testing methods and analyses that can still produce

concrete, reliable data on the Samples, even outside of the US EPA's guidelines, which BP relied on solely in their allegation to the contrary. (See attached Exhibit A.) BP's Reply Memorandum included an affidavit from its in-house environmental toxicologist, Dr. Oliver Pelz. (Rec. Doc. 25499 at Exhibit A.) Dr. Pelz did not offer any testimony in his affidavit to refute Dr. Kaltofen's assertion that useful data can still be obtained from the Samples. Importantly, Dr. Pelz's affidavit did not support BP's claims – the very basis of their motion – that the evidence should be discarded because it cannot be reliably tested. To the extent BP presents testimony contrary to Plaintiffs' proposed expert, which has not been done to date, Plaintiffs must be allowed to challenge such testimony through the discovery process.

## II.     PLAINTIFFS SHOULD BE ALLOWED TO CONDUCT DISCOVERY REGARDING THE SAMPLES.

Plaintiffs have not had any opportunity to determine whether the Samples in BP's possession contain relevant data. Plaintiffs cannot be expected to review 140,000 samples, and potentially thousands more in the future, to determine which ones, if any, are relevant to their claims, without first discovering what BP knows about the Samples. To date, the information provided by BP has been unverified and inadequate for such an important determination. Plaintiffs have not been able to investigate whether the collection, retention, testing methods, and preservation methods were carried out properly. This can only be achieved through discovery directed to the individuals involved in the collection, retention, testing, and preservation of the Samples. Should discovery determine the samples to be valid, Plaintiffs should be able to analyze any of the Samples themselves. Plaintiffs should not be required to rely on BP's data. Plaintiffs should also be allowed access to the results of any testing that has been conducted, the proffered reason for the initial collection of the Samples, the quality assurance project plans for the Samples, and the analytes for which the Samples have been tested. BP must not be allowed

to destroy evidence in the absence of such information and without Plaintiffs having the opportunity to inspect and analyze the Samples. To do so would deprive Plaintiffs, who have been patiently waiting over eight years for their "day in court," of due process and would result in a miscarriage of justice.

### III.    PLAINTIFFS SHOULD NOT BE BURDENED WITH THE COSTS OF PRESERVING BP'S EVIDENCE.

By suggesting to the Court that Plaintiffs can obtain Samples of the material at their own cost, BP is attempting to unfairly shift the burden of the cost of evidence preservation to the Plaintiffs, whose cases, essentially, have not begun. Plaintiffs have not been able to issue subpoenas or discovery requests to BP or any other entities since the inception of their cases due to the Stay of Proceedings this honorable Court imposed in January of 2011 that suspended all forms of discovery for the opt-out plaintiffs. It appears BP is attempting to have the Court sanction its spoliation of highly sensitive, unique evidence without allowing Plaintiffs full and fair discovery. Requiring Plaintiffs to shoulder the burden for the cost of preserving Sample evidence that BP was required to gather and retain would be an inequitable shift of the duties and burdens of the parties during litigation. The costs of preservation about which BP complains pale in comparison to the damages caused by its gross negligence.

Plaintiffs are, by and large, individuals who helped clean up the disaster that resulted from BP's gross negligence. They are largely low-income earners. On one hand, imposing millions more in costs upon these plaintiffs is intrinsically disproportionate to their individual claims. On the other hand, BP is a multi-billion dollar global oil company that has been found by this Court to be grossly negligent. It is not a viable solution to shift the burden of preserving this evidence to Plaintiffs. BP must meet its preservation obligations until all cases are resolved.

## CONCLUSION

Because the samples can still be tested for reliable data, Plaintiffs should be allowed to conduct discovery to determine which samples could yield information relevant to their claims. Plaintiffs should also be allowed to discover whether the preservation of Samples by BP met the requirements of the preservation orders entered by the Court. For BP to claim the Samples are no longer viable, and at the same time offer no evidentiary support for such a claim, calls into question BP's motives for seeking to destroy the Samples. To allow a full and fair inquiry into this potentially critical evidence is certainly "good cause" for the Court to grant the current motion. Accordingly, Plaintiffs respectfully request that the Court issue an Order extending the 35-day review period allotted to objectors in PTO 62 until Plaintiffs' litigation has concluded.

Respectfully Submitted,

/s/ Paul A. Dominick
Paul A. Dominick     Fed ID No. 577
NEXSEN PRUET, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC  29402
PHONE:  843.577.9440
FACSIMILE:  843.720.1777
PDominick@nexsenpruet.com

and

Douglas M. Schmidt   Fed ID No. 11789
Douglas M. Schmidt, APLC
335 City Park Avenue
New Orleans, LA 70119
PHONE:  504-482-5711
FACSIMILE:  504-482-5755
Dglsschmdt@yahoo.com

Attorneys for Plaintiffs

Dated: March 22, 2019