# Exhibit A – Affidavit of Marco Kaltofen

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | Civil Action No. 2:10-MD-02179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br><br>MAG. JUDGE WILKINSON |
| APPLIES TO:<br><br>All Civil Actions of the Plaintiffs Represented by Nexsen Pruet, LLC and Douglas M. Schmidt APLC | |

### AFFIDAVIT OF MARCO KALTOFEN, PhD, PE (Civil, MA) C. NSE

I, Marco Kaltofen, personally appeared before a notary public, and after being sworn, submit the following:

1.      I am a Massachusetts-licensed civil engineer experienced in investigating the environmental fate and transport of petroleum, hazardous and radioactive materials. I received a doctorate in civil engineering in 2015; my research focused on investigation of petroleum and nuclear releases to the environment. I have tracked radioactive and chemical contamination at industrial facilities since before 1984. This includes fieldwork and analysis in the United States, Middle East, Russia, India, Japan, Ukraine, the United Kingdom and the European Union.

2.      I have published articles on the subject, including my dissertation, *Assessing human exposure to contaminants in house dust*, PhD dissertation defended March 12, 2015; published April 9, 2015, WPI and more recently *Radioactively-hot Dust Particles*

*in Japan,* (J. Sci. Total Env. 607-608C (2017) pp. 1065-1072) *Tracking legacy radionuclides in St. Louis, MO via unsupported 210Pb* , J. Environmental Radioactivity, Accepted Dec. 7, 2015. Prior to receiving my PhD, I was invited to lecture and to investigate in institutions ranging from Chelyabinsk School of Law, Chelyabinsk Oblast, Russia, University of Washington, Tufts University, Dartmouth-Thayer School of Engineering, President's session of the American Public Health Association and Massachusetts Institute of Technology, Media Lab.

3.   I currently hold a two-year appointment as an affiliate research engineer at Worcester Polytechnic Institute, advising and over-seeing undergraduate nuclear science and engineering research on environmental radioactivity related to ongoing projects in Fukushima, Japan; Cumbria in the United Kingdom and Chernobyl, Ukraine.

4.   I regularly peer-review scientific articles on environmental radioactivity, and peer-review or judge/evaluate major grant proposals for the MacArthur Foundation. I have also participated, been invited or chaired multiple federal environmental review panels including the Environmental Protection Agency committee on accreditation of environmental laboratories, the DOD advisory panel to the US Army Soldier Systems Command, and nuclear waste treatment evaluation panel at Hanford Nuclear Reservation.

5.   I have been offering expert opinion on matters of contamination and transport of contamination since 1989. I have been retained by the law firm of Nexsen Pruet, LLC, for the purpose of overseeing certain testing of evidentiary samples related to the *Deepwater Horizon* oil spill litigation and providing possible expert testimony regarding such chemical analyses and testing results.

6. This Affidavit is offered in support of approximately 780 Plaintiffs in the underlying litigation and their objection to BP's Motion for Entry of an Order Relating to the Disposal of Certain Materials and its amendment, Document numbers 25226 and 25243, respectively filed December 12, and December 24, 2018.

7. The amended Exhibit to BP's initial motion lists 235,458 individual samples (as the Court has defined the term in Pre-Trial Order No. 39) BP is seeking the Court's permission to destroy, before Plaintiffs have had the opportunity to conduct any testing of their own on the samples. It is my understanding and belief that an unspecified number of these samples have never been tested by BP, or any other entity.

8. I have facilitated the testing of many chemicals and samples of what I assume to be substances similar to those listed in BP's Exhibit. I use the word "assume" in regards to the samples because the information about them provided by BP is too vague to discern what exactly they contain.

9. BP's assertion that the evidentiary samples listed in their motion, samples that have admittedly not been tested at all, have degraded over the past eight or so years to the point of unreliability or uselessness is unfounded.

10. Many of the samples listed appear to contain crude oil – crude oil that is the very subject of the litigation at issue. Crude oil is a fossilized substance that has existed for many millions of years in the earth naturally. The fact that it has been stored in a glass container in a warehouse in Colorado for the past 8 or so years, or less than .0001% of its existence, is not meaningful with respect to how useful or reliable any chemical and analytical data that can be extracted from it is.

11. In my professional opinion, there are many testing methods and analyses that produce concrete, reliable data on chemicals and samples such as those listed in BP's Exhibit that exist outside of the US EPA's guide that BP references.

12. It is possible that the testing methods used to analyze the samples that have been analyzed were insufficient, incomplete or flawed. For instance, the analytical method detection limit may vary significantly between what the EPA deems an acceptable test for oil in the ground versus what is safe for direct, continuous human exposure such as asserted by the Plaintiffs in this case. Analyses of various phases (dissolved gases, volatile compounds, solids) present in crude oil will also produce added data from these existing samples not necessarily found in prior analyses of whole crude oil. Analyses may include additional analytes not previously tested by BP, such as radioisotopes. Such radioisotope testing are not normally impaired by proper long-term storage, and may, in fact, give better results as secular equilibrium is restored after being disturbed by the initial sampling procedure. Similarly, many metallic elements that exert substantial toxicity are typically not altered significantly by the passage of time. Because many reliable methods exist for metals measurements in crude oil, it is nearly certain that additional valid data may be derived from these samples via metals analyses.

13. It is my understanding that some of the samples have been tested or analyzed, but BP has now provided the results or any data related to such tests or analysis. Without the samples, the testing methods, and resulting data, Plaintiffs will be unable to challenge BP's analysis of the samples.

4

14. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.



Marco Kaltofen, PhD, PE (Civil, MA), C. NSE

SWORN to before me,

This 25th day of January, 2019.



Notary Public for Massachusetts
My commission expires:
_____

MATTHEW FARREN
Notary Public
Commonwealth of Massachusetts
My Commission Expires Aug. 10, 2023