IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010<br><br>APPLIES TO:<br><br>All Civil Actions of the Plaintiffs Represented by Nexsen Pruet, LLC and Douglas M. Schmidt APLC | Civil Action No. 2:10-MD-02179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br><br>MAG. JUDGE WILKINSON |

**Plaintiffs' Sur-Reply to BP's Reply Memorandum in Support of Its Motion for Entry of an Order Relating to the Disposal of Certain Materials**

## ARGUMENT

**I.    BP HAS FAILED TO SUPPORT ITS MOTION AND, THUS, IT SHOULD BE DENIED.**

BP's original Motion to dispose of samples sought relief from the preservation requirements of paragraph 14 of PTO 1.  (Rec. 25226.)  Without any support, BP's stated reason for the disposal of the samples was that "Due to the amount of time that has passed since the samples were initially collected, the degradation of these samples has rendered them virtually useless."  (Rec. 25226-1 at page 2.) In opposition to the motion, Plaintiffs provided an affidavit of Dr. Marco Kaltofen, a licensed research engineer with substantial experience in petroleum releases into the environment.  (Rec. 25311 at Exhibit A.)  Dr. Kaltofen challenged the BP statement and opined that useful data <u>could</u> be obtained from the samples.  In its reply, BP submitted the affidavit of Dr. Oliver Pelz, an environmental toxicologist employed by BP.  This is the only support for BP's motion other than statements from its attorneys.  (Rec. 25499 at

1

Exhibit A.)  Importantly, Dr. Pelz did not challenge the affidavit of Plaintiffs' expert, and gave <u>no</u> <u>opinion</u> on the viability of the samples.  Thus, BP has failed to support the very basis of its motion to destroy the samples.

II.     **PTO 62 DOES NOT RELIEVE BP OF ITS PRESERVATION OBLIGATIONS TO PLAINTIFFS.**

As early as February 2011, BP began submitting motions consented to by the U.S. Government to dispose of samples deemed "old or expired". (Rec. 1325.)  Purportedly, the motions related to "ALL-ACTIONS" or "ALL CASES."  This active motions practice to destroy evidence was well underway before Plaintiffs had the right to Opt-Out of the Medical Benefits Settlement on November 1, 2012.  PTO 62 was implemented upon the Consent Decree (Rec. Doc. 16093) and Final Judgment (Rec. Doc. 16095.) resolving all claims between the involved governmental entities and BP.  The governmental entities included in this Order – and the only entities who signed releases of claims and covenants not to sue BP – were the United States and the States of Alabama, Florida, Louisiana, Mississippi, and Texas ("government entities").  The introductory paragraphs as well as Paragraph 1 of PTO 62 unambiguously declare the Order a result of the Consent Decree with the government entities.  Paragraph 1, particularly, states that "the evidentiary preservation obligations of the five Gulf States and BP . . . shall be terminated as to the civil claims **<u>that are the subject of the covenants not to sue set forth in . . . the Consent</u>** **<u>Decree</u>**." PTO 62, ¶ 1 (emphasis added).  Most of the Order pertains to the Gulf States' obligations and permission to discontinue sample preservation.  It is not rational that BP would be allowed to discontinue relevant evidence preservation, and be allowed to actually destroy evidence, when there are numerous outstanding claims, such as the Plaintiffs', that have been restricted from discovery since the inception of their claims.  This may explain why BP's

2

original motion made no reference to PTO 62. PTO 62 was a consent decree in settled litigation. It should be construed to apply only within the context of the governmental entities' claims against BP. BP's obligations to preserve evidence for the remaining opt-out Plaintiffs should remain intact. Any other interpretation of this Order could lead to extreme, unfairly prejudicial outcomes for these plaintiffs, who still carry the burden of proving their exposure to the harmful potentially in the samples BP seeks to destroy.

**III.   REQUIRING PLAINTIFFS, WHOSE CASES HAVE BEEN STAYED WITH THE FULL APPROVAL OF DEFENDANTS, TO UNDERTAKE DEFENDANTS' EVIDENCE PRESERVATION BURDEN IS DISPROPORTIONAL, UNREASONABLE, AND UNJUST.**

In its Reply Memorandum, BP correctly pointed out that preservation obligations are based upon what is reasonable and proportional to the case at hand. (Reply Memorandum at 4; Rec. Doc. 25499.) In the case cited by BP, Rimkus Consulting Group, Inc. v. Cammarata, the court expanded upon the principle that preservation requirements be reasonable and proportional: "For example, the reasonableness of discovery burdens in a $550 million case . . . will be different than the reasonableness of discovery burdens in a suit to enforce noncompetition agreements and related issues . . . ." 688 F. Supp. 2d 598, 613, fn. 9 (S.D. Tex. 2010). BP's continued preservation of samples can hardly be characterized as a burden disproportionate to the billions of dollars of damage caused by BP's gross negligence resulting in the largest and costliest man-made environmental disaster in the known history of the world. (See "The World's Most Expensive Disasters," Aug. 26, 2011 5:27pm, https://www.forbes.com/sites/investopedia/2011/08/26/the-worlds-most-expensive-disasters).

BP contends that it has spent $13.8 million dollars thus far in preserving the evidence at issue. (BP's Reply Memorandum at 3.) Transferring the burden of preservation may be "proportionate" in litigation with the United States of America and the Gulf States, but the same

3

cannot be said for litigation with clean-up workers and Gulf Coast residents.  It is the height of irony that a multi-billion dollar global oil company found to be grossly negligent wants to shift its evidence preservation expense to individual Plaintiffs, who sacrificed their health to clean up BP's environmental disaster, and the vast majority of whom exist at or below the poverty level.  BP's calculated attempts to destroy evidence under the protection of the Court must be stopped to allow Plaintiffs to conduct full discovery concerning the collection, retention, and analysis of the subject samples.  BP should not be allowed to dictate what is, or is not viable, relevant evidence.

## IV.     PLAINTIFFS MUST HAVE ACCESS TO THE SIGNIFICANT, PERTINENT INFORMATION BP IS REQUIRED TO DISCLOSE UNDER PTO 62 AND THE OPPORTUNITY TO CONDUCT DISCOVERY REGARDING THE EVIDENCE BEFORE ITS DESTRUCTION.

Assuming, arguendo, PTO 62 governs Plaintiffs' cases, BP has failed to comply with its terms.  BP must provide objectors with information about the samples that BP has not yet provided to Plaintiffs.  This information is detailed in Plaintiffs' Motion for Leave to File a Sur-Reply.  Additionally, it appears that the evidence BP is seeking to dispose of consists largely of samples that have pertinent information such as the location and date on which the samples were collected, while leaving nearly 100,000 analytes that do not have this integral information.  However, even the receipt of this requisite information will not overcome the prejudice Plaintiffs will suffer if the evidence is destroyed before Plaintiffs are able to conduct discovery regarding it.  To prevent any further prejudice to the Plaintiffs, the Court should allow Plaintiffs to conduct discovery regarding the collection, analysis, and retention of the subject evidence and, <u>after full discovery</u>, to take possession of any evidence it deems necessary.  To do otherwise would be a gross miscarriage of justice that could not be remedied by future court action.

Concurrent with this opposition to BP's motion, Plaintiffs have filed a Motion to Amend PTO 62 as it applies to Plaintiffs' cases. If PTO 62 is to be the guiding principle for preservation of discovery, then justice and due process demand that PTO 62 extend the time for preservation of the samples to the close of discovery in Plaintiffs' cases.

Respectfully Submitted,

/s/ Paul A. Dominick
Paul A. Dominick    Fed ID No. 577
NEXSEN PRUET, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC  29402
PHONE:  843.577.9440
FACSIMILE:  843.720.1777
PDominick@nexsenpruet.com

and

Douglas M. Schmidt   Fed ID No. 11789
Douglas M. Schmidt, APLC
335 City Park Avenue
New Orleans, LA 70119
PHONE:  504-482-5711
FACSIMILE:  504-482-5755
Dglsschmdt@yahoo.com

Attorneys for Plaintiffs

Dated: March 22, 2019