UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL No. 2:10-md-02179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAG. JUDGE WILKINSON |

DOWNS LAW GROUP'S SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO BP'S MOTION TO DISPOSE OF SAMPLES

MAY IT PLEASE THE COURT:

### I. ISSUES RAISED IN BP'S REPLY

1. BP makes the brand new argument that any opposition to the disposal motion is foreclosed by PTO-62, even though PTO-62 is interlocutory and subject to correction at any time prior to the entry of a final judgment under Rule 54(b).

2. Dr. Peltz declares that there is publicly available information that renders maintenance of the evidence unnecessary and unduly burdensome to support BP's contention that the BELO plaintiffs should have an inordinately short period of time (weeks) within which to make a decision to keep specified samples.

### II. PERTINENT PROCEDURAL HISTORY

On December 12, 2018 BP filed a Motion to Dispose. (the "Motion to Dispose"). [Rec. Doc. 25226]. On January 31, 2019, DLG Plaintiffs filed an Opposition to BP's Motion to Dispose Certain Materials ("Motion to Dispose"). [Rec. Doc. 25360]. On March 15, 2019 BP filed a Reply Memorandum in Support of their Motion to Dispose ("Reply"). [Rec. Doc. 25499]. On March 19, 2019, DLG Plaintiffs were granted leave to submit a Sur-reply [Rec. Doc. 25503].

### III. SUMMARY OF THE ARGUMENT

1. PTO-62 represents this Court's best effort to give structure to a massive litigation.

1

Inasmuch as no mere mortal can foresee the future and future contingencies, Rule 54(b) gives district courts the authority to change and amend interlocutory orders when it becomes apparent that such changes and amendments are justified or when, as here, the earlier order would be unfair to a whole class of injured parties who were not at the counsel table at the time of the earlier order.

2.  While there is publicly available information, this has not been made available to the plaintiffs in a usable form. Rather, plaintiffs' experts will need months to analyze such data. A short fuse on destruction is unwise and any destruction will almost certainly have disastrous unforeseen consequences.

### III. REFERENCE TO PRE TRIAL ORDER ("PTO") 62

BP cites PTO 62, specifically to Paragraph 6, as authority for the destruction of the subject samples. However, a close reading of the Order demonstrates that PTO 62 should not apply to the Medical Benefit Settlement Class, rather its application is narrower in scope and states as follows: "[PTO] 62 Regarding the Preservation Requirements in light of the entry of the Consent Decree (Rec. Doc. 16093)". The Consent Decree itself was entered into regarding the Gulf States and their individual lawsuits against the BP parties. Upon reviewing the Consent Decree, it applies to and is binding "upon the United States, each of the Gulf States, and BPXP" and each of their successors and assigns.[1] This Court further mentions that the evidentiary preservation obligations of BP shall be terminated as to the civil claims of the Consent Decree. (See PTO 62 ¶ 1) [Rec. Doc. 22046]. Every reasonable interpretation of PTO 62 would lead one to conclude that it is meant to determine the preservation obligations of BP and the Gulf States in their respective suits, and not to the Medical Benefit Settlement class which is referenced nowhere in said Order. Plaintiffs, who had no role at that time in this matter and thus were unaware of the existence of PTO 62, its

---

[1] See Consent Decree Paragraph 5 [Rec. Doc. 16093].

applicability, or the existence of the subject samples, thus did not object to the same. Plaintiffs' assertion that they had no notice of the existence of the samples remains true despite BP's contentions to the contrary in its Reply.

In the alternative, even if this Court were to somehow read PTO 62 as applicable to BP's evidentiary preservation requirements for the Medical Benefits Settlement Class, before such drastic and irreversible measures (the destruction of the subject samples) are taken, it should be noted that PTO 62 is but an interlocutory order amenable to modification. Rule 54(b) provides, in relevant part, that prior to entry of a final judgment, an interlocutory 'order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties'.

Accordingly, PTO 62 should be read to apply only to the Consent Decree as it applied to the litigation between the Gulf States and BP and not as it applies to the evidential preservation requirements BP has towards the Medical Benefit Settlement Class Members. Alternatively, before the Court grants BP's unwise request to destroy relevant and unique evidence, plaintiffs would request the Court consider amending PTO 62 because the Medical Benefit Settlement Plaintiffs litigation is finally on the on the verge of commencing after nine (9) years of awaiting relief. Justice requires the evidence be preserved until Plaintiffs' experts have the opportunity to review and analyze the samples.

### IV. THE PELZ DECLARATION AND PUBLICLY AVAILABLE DATA

Dr. Pelz' Declaration, containing assertions first raised in BP's Reply, suggests to the Court that the 140,000 samples BP seeks to destroy are irrelevant as "they were collected to assist in decision-making during the response efforts…and/or for taxonomic purposes." (Pelz. Decl. at 14, 15). However, Plaintiffs' expert has begun to review the sample data and determined that of the subset of samples reviewed in the short time provided, all indications are that they are clearly

3

relevant. (See attached Declaration from Dr. Ira Leifer). However more time is necessary in order to cross reference the data provided by BP with the publicly available data, otherwise Plaintiffs believe that the public data is not fully inclusive of the same information as the sample materials BP seeks to destroy.

Plaintiffs' expert also states that since the samples were stored properly, there is an abundance of useful information that can still be extracted from them, such as levels of toxicity and locations which Plaintiffs need to prove causation elements in their individual Back End Litigation Option lawsuits.

With regard to burden, BP only states what it has spent in the past. It may be that preservation costs for a reasonable period of time, such as 12-24 months, will be trivial as compared to the risk to victims, many of whom have chronic conditions, incurable cancer, or who have died of an unjust result.

## CONCLUSION

There has been no showing of actual burden on BP's part to continue to maintain the samples for a reasonable period of time. The balance of hardship is clearly in favor of the BELO plaintiffs, who have waited as much as nine (9) years for their day in court. There are many factual scenarios in which one or more BELO plaintiffs could suffer irreparable but entirely preventable harm if these samples are destroyed. The motion should be denied.

Respectfully Submitted,

**THE DOWNS LAW GROUP, P.A.**

<u>/s/ Craig T. Downs</u>
**CRAIG T. DOWNS**, **FL BAR # 801089**
**MARIANA SUAREZ, FL BAR # 1013565**
**NATHAN L. NELSON, FL BAR #1002523**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Telephone: (305) 444-8226