IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | Civil Action No. 2:10-MD-02179 SECTION: J |
| | JUDGE CARL BARBIER |
| APPLIES TO: | MAG. JUDGE WILKINSON |
| All Civil Actions of the Plaintiffs Represented by The Downs Law Group and all similarly situated Plaintiffs | |

DECLARATION OF IRA LEIFER

Pursuant to 28 U.S. C.§ 1746, I hereby declare as follows:

**Relevancy of Samples**

1. My name is Ira Leifer. I am a well-published scientist and CEO of my own research company, Bubbleology Research International. I am an expert in the field of marine petroleum hydrocarbon processes and fate, and extremely well published with 109 peer reviewed journal articles including several in highly prestigious journals like Nature. I also am expert in remote sensing of oil, having led the NASA airborne remote sensing campaign during the Deepwater Horizon oil spill. This work was peer-review published in 2012 and has been cited 241 times. I also have expertise in emissions of oil from the sea bed, being a key member of the USGS led plume team during the Deepwater Horizon oil spill. I also have expertise in modeling the fate and transport of pollutants and other trace gases from a range of sources within my company for fifteen years now. I have developed and field validated unique measurement approaches, under contract to NASA, to understand the fate of emitted gases in the atmosphere, with six peer-reviewed publications on the topic in the last four years.

2. Based on my knowledge and belief in my capacity as a scientist who has published dozens of papers on marine oil, I can attest to the following facts:

3. A preliminary review of a descriptors of a small subset (17,000) of the 140,000 samples suggests that some are of great interest and potentially of vital relevance to pending BELO litigation.

4. The insufficient time to evaluate the samples in the subset, or review the descriptors of all samples, have made it impossible to evaluate the relevance of many of the samples.

5. Relevant samples include those that can provide information on exposure from either inhalation of volatile petroleum hydrocarbon components or aerosolized petroleum hydrocarbon or from skin contact.

6.  Oil samples from beaches or from boat decks and oil booms and other response equipment, provides composition information with respect to volatile petroleum gases and aerosolized oil that, if overlapping with client location, provide critical information for estimating exposure.

7.  Specifically, samples would provide information composition that relates to toxicity based on the composition, as well as exposure in terms of quantity and size of aerosols.

8.  Thus, determination of relevancy requires cross-referencing sample location with client location.

9.  Equally important is proper sample storage. The preliminary subset review showed that a large number of samples were in fact stored correctly (frozen, <20°C), and thus remain viable for toxicity. A very large number of other samples were stored refrigerated (<4°C) and thus potentially remain viable for toxicity. Additionally, hexane or methane chloride were used as a preservative for a large number of samples, preserving viability.

10. In addition, even if the samples are not viable for toxicity, they can be relevant for quantification, particularly if combined with other information, such as Shoreline Cleanup Assessment Technique ("SCAT") data.

11. Some types of samples may address questions regarding the size distribution of aerosolized oil, and because we cannot rule out that this class of vital samples are amongst those requested for disposal.

12. Critically, classes of samples that are of high interest and potential relevance are not amongst the listed categories of samples "Water, sediment, soil, animal tissues, animal feed, macroinvertebrates, and a variety of other physical samples." And are lumped into "other physical samples."

13. For example, the sample class described as "other physical samples" includes tar balls (e.g., sample on line 721 or samples on lines 16998-17029) and location data, and thus are representative of samples of potentially strong relevance.

14. Interestingly, tar samples on lines 16998-17029 are from 2013, and potentially represent repeat exposure, with important health implications. Assessment requires cross referencing with client location data, a significant effort.

15. Additionally, many samples are listed as "Other Liquid Samples," and thus are unclear as to what they represent. Evaluating the relevancy of these samples requires investigation beyond only reviewing the description.

16. Assessing viability and relevance of the large number of samples represents a significant effort. Moreover, proper assessment requires reviewing associated data and determining if further chemical analysis is warranted. This further assessment represents a significant effort.

17. A new sample class not identified in our initial response but discovered in the review was "Burn Residue" (Sample Line 2708, 2712). This could provide information on a different exposure mechanism for some clients, and illustrates that additional sample classes, not yet identified could be relevant.

**Publicly Accessible, Essentially Equivalent Data and Samples**

18. Regarding the assertion that equivalent samples are available in the Gulf Research Institute (GRI) databases, this is untrue in that the GRI database covers analysis only – it is unclear if samples, many of which were collected for academic research are stored, preserved, and or available for further analysis.

19. In addition, databases are being added to the GRI databases even today. Thus, it is unclear whether the analysis of samples collected for the GRI databases that are functionally equivalent are currently available. For example, a quick search of the GRI databases for tarball samples from 2014, only found one GRI dataset report, which was published very recently (in 2018, doi: 10.7266/N7FX77GK).

20. Cross referencing samples that were requested for disposal with those in this database (and others that may have been missed) requires significant effort to determine relevance. Moreover, the recent publication date suggests additional analysis are unavailable yet.

21. In my prior affidavits to the court, we highlighted several sample classes of significant interest due to their high likelihood of potential relevance. Surprisingly, the declaration by Oliver Pelz, ignores these sample classes, lumping them into "among other samples" and fails to address my expert opinion that these samples are potentially and highly likely of significant relevance.

22. I hereby certify that the facts set forth above are true to the best of my personal knowledge, information, belief and experience, subject to the penalty of perjury, pursuant to 28 U.S.C. 1746

Ira Leifer