# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA
# NEW ORLEANS DIVISION

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG | § | MDL 2179 |
| "DEEPWATER HORIZON" IN THE GULF | § | |
| OF MEXICO ON APRIL 20, 2010 | § | SECTION:  J |
| | § | |
| | § | JUDGE BARBIER |
| | § | MAG. JUDGE SHUSHAN |
| THIS DOCUMENT RELATES TO: | § | |
| | | |
| ABAD GONZALEZ PEREZ | § | 2:16CV04571 |
| AIDE PEREZ VALDEZ | § | 2:16CV04717 |
| ANGEL RAMOS CARRANZA | § | 2:16CV04775 |
| ARMANDO DELGADO RIOS | § | 2:16CV04586 |
| ARTEMIO ARAN BLANCO | § | 2:16CV04345 |
| BAUDELIO CRUZ CORONEL | § | 2:16CV05310 |
| DARIO MORENO SANTIAGO | § | 2:16CV04556 |
| EUSEBIO LANDEROS VEGA | § | 2:16CV05315 |
| EVELIO JIMENEZ PEREZ | § | 2:16CV04783 |
| FERNANDO BLANCO ARAN | § | 2:16CV04499 |
| FLOR IDILIA BLANCO ORTEGA | § | 2:16CV04521 |
| FRANCISCO CHIRINO MOSCOSO | § | 2:16CV04563 |
| FRANCISCO RANGEL HERNANDEZ | § | 2:16CV04724 |
| FRANCISCO SOSA MORENO | § | 2:16CV04797 |
| FREDERICO CRUZ SANTIAGO | § | 2:16CV04594 |
| GERSON BAUTISTA TORRES | § | 2:16CV04512 |
| GUILLERMINA CASTRO JOGUITUD | § | 2:16CV04550 |
| GUILLERMINA HERNANDEZ SALDANA | § | 2:16CV04567 |
| HERMILIO DURAN MARTINEZ | § | 2:16CV04762 |
| HORACIO MORALES CRUZ | § | 2:16CV04802 |
| JOAQUIN DELGADO ORTIZ | § | 2:16CV04584 |
| JOEL FRANCO CRUZ | § | 2:16CV04684 |
| JOSE LUIS PALACIOS MEDINA | § | 2:16CV04806 |
| LUIS ENRIQUE MARTINEZ LORENZO | § | 2:16CV04712 |
| MARIA ESTHER MARTINEZ CASTILLO | § | 2:16CV04873 |
| MIGUEL ZALETA REYES | § | 2:16CV04730 |
| PABLO ERNESTO ZAMORA SANCHEZ | § | 2:16CV04706 |
| RAMIRO VILLALOBOS DELGADO | § | 2:16CV04697 |
| RICARDO HEREDIA REYES | § | 2:16CV04769 |
| RITO ZALETA SALDANA | § | 2:16CV04700 |
| ROBERTO MARCELINO MAYA | § | 2:16CV04866 |
| ROSALINA CRUZ DAVILA | § | 2:16CV04599 |
| RUBEN RAMIREZ CALLARDO | § | 2:16CV04777 |
| RUBEN SOSA GONZALEZ | § | 2:16CV04788 |

| | | |
|---|---|---|
| **SANTOS AGUILAR CASTANEDA** | § | **2:16CV04349** |
| **SARA SANCHEZ GARCIA** | § | **2:16CV04543** |
| **SATURNINO DELGADO GALLARDO** | § | **2:16CV04574** |
| **SEVERO ALDOCER MORALES** | § | **2:16CV04476** |
| **TERESO CRUZ** | § | **2:16CV05710** |
| **VICTOR MANUEL GARCIA HERNANDEZ** | § | **2:16CV04786** |
| **VICTOR REYES GOMEZ** | § | **2:16CV04692** |

**PLAINTIFFS' RESPONSE BRIEF TO BP'S DISPOSITIVE MOTION
AS TO THE CLAIMS OF MEXICAN PLAINTIFFS**

Pursuant to this Court's March 12, 2019 ORDER (Doc. 25492), the forty-one (41) plaintiffs represented by the undersigned law firms, files this, a single, consolidated response brief. In support thereof, would state the following:

**I.     Introduction and Background**

This Court's Pretrial Order No. 67, states "Defendants shall file any dispositive motions as to the Remaining B1 Plaintiffs…" (Doc. 25370, at pg. 5). BP Exploration & Production Inc. and BP America Production Company (collectively sometimes herein after referred to as "Responding BP parties"), were the only two Defendants to file such a motion. (Doc. 25477). Subsequently, a late joinder was filed by Halliburton Energy Services, Inc. ("HESI") (Doc. 25506).

Generally, Responding BP parties' motion—without citation to any Federal Rule of Civil Procedure—argues two points: (1) these plaintiffs are not authorized to make a claim under the Oil Pollution Act ("OPA") because they are foreign plaintiffs; and, (2) OPA displaces Plaintiffs' maritime law claims. *Id.* In addition, BP states that the Toups Plaintiffs attempt to improperly assert mass tort actions in violation of Pretrial Order No. 60 (Doc. 16050) ("PTO 60").  This argument is inaccurate.

**II.     There is Jurisdiction in the United States for Plaintiffs' OPA Claims**

Responding BP parties argue "before a foreign claimant can recover under OPA, the United States must explicitly consent, either by treaty or certification. As far as BP is aware, no court has ever concluded that plaintiffs from Mexico can satisfy these requirements, and this Court and the Fifth Circuit have previously rejected such claims in these proceedings." (Doc. 25477). Their brief then catalogues prior participation of Mexican plaintiffs in the litigation in support of their general contention. However, their arguments do not account for certain historic treaties, recent developments in international law, and fails to demonstrate the plaintiffs are in fact "foreign claimants" under OPA. The previous treaties raised by the Mexican States included the (1) Agreement of Cooperation regarding Pollution of the Marine Environment by Discharge of Hydrocarbons and other Hazardous Substances, U.S. – Mexico, July 24, 1980 (32 U.S.T. 599); (2) Cartagena Convention; (3) Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution; and (4) Treaty on Maritime Boundaries. This Court found that none of the above treaties demonstrate that "recovery is authorized by a treaty or executive agreement between the U.S. and the Claimant's Country (Doc. 4845). Plaintiffs herein though have raised the North American Free Trade Agreement ("NAFTA") in their pleadings, and now the amendment to NAFTA as well as the North American Agreement on Environmental Cooperation clearly show that there are agreements between the U.S. and Mexico (and Canada) to protect environmental claims, and protect each other's citizen's claims.

  **A.     United States-Mexico-Canada Agreement (USMCA) and North American Agreement on Environmental Cooperation**

Several treaties support OPA jurisdiction. This includes, but is not limited to, The United States-Mexico-Canada Agreement ("USMCA") and North American Agreement on Environmental Cooperation ("NAAEC"). The USMCA is the updated NAFTA Agreement. Both the U.S. and

Mexico (and Canada) signed this amended NAFTA agreement on November 30, 2018, and while not implemented, several provisions of this recent treaty show it is now the clear public policy of the U.S. to authorize recovery under OPA by Mexican plaintiffs such as the respondents. 33 U.S.C. § 2707. Specifically,

> **Article 24.6: Procedural Matters**
>
> 1. Each Party shall ensure that an interested person may request that the Party's competent authorities investigate alleged violations of its environmental laws, and that the competent authorities give those requests due consideration, in accordance with its law.
>
> 2. Each Party shall ensure that persons with a recognized interest under its law in a particular matter have appropriate access to administrative, quasi-judicial, or judicial proceedings for the enforcement of the Party's environmental laws, and the right to seek appropriate remedies or sanctions for violations of those laws.
>
> 3. **Each Party shall ensure that administrative, quasi-judicial, or judicial proceedings for the enforcement of the Party's environmental laws are available under its law and that those proceedings are fair, equitable, transparent, and comply with due process of law, including the opportunity for parties to the proceedings to support or defend their respective positions.** The Parties recognize that these proceedings should not be unnecessarily complicated nor entail unreasonable fees or time limits.
>
> …
>
> **Article 24.12: Marine Litter**
>
> 1. The Parties recognize the importance of taking action to prevent and reduce marine litter, including plastic litter and microplastics, in order to preserve human health and marine and coastal ecosystems, prevent the loss of biodiversity, and mitigate marine litter's costs and impacts.
>
> 2. Recognizing the global nature of the challenge of marine litter, each Party shall take measures to prevent and reduce marine litter.
>
> …
>
> **Article 24.25: Environmental Cooperation**

1. The Parties recognize the importance of cooperation as a mechanism to implement this Chapter, to enhance its benefits, and to strengthen the Parties' joint and individual capacities to protect the environment, and to promote sustainable development as they strengthen their trade and investment relations.

2. **The Parties are committed to expanding their cooperative relationship on environmental matters,** recognizing it will help them achieve their shared environmental goals and objectives, including the development and improvement of environmental protection, practices, and technologies.

*USMCA*[1]. (select emphasis added). All OPA requires for foreign plaintiffs to demonstrate is that a "treaty or executive agreement" authorizes recovery. 33 U.S.C. § 2707. Under the recent treaty, both the United States and Mexico have agreed to ensure that "judicial proceedings for the enforcement of the Party's environmental laws are available under its law". *USMCA* Article 24.6 (3). Further, both the United States and Mexico have "committed to expanding their cooperative relationship on environmental matters." *USMCA* Article 24.25(2). Read together, recovery under OPA is authorized, and in fact mandated, by Articles 24.6 and 24.25 of the USMCA.

Further, other treaties allow recovery under OPA—the North American Agreement on Environmental Cooperation expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations. See Article 6 of the Agreement. This Agreement automatically came into effect after

---

[1] The *USMCA* did not exist when the movants were required to refile their suits pursuant to PTO 60. It is unclear from PTO 67 whether the stays in place in these matters is lifted with respect to filing amended complaints, or just lifted with respect to the PTO 67 process. *See,* ORDER (Doc. 25494) ("Aside from the PTO 67 process, however, these cases are stayed. (*See* PTO 67 § VII, Rec. Doc. 25370")).

Accordingly, if Responding BP's Dispositive Motion is denied, Plaintiffs will seek leave to amend their complaints if necessary. However, all 33 U.S.C. § 2707 requires of a foreign claimant is that it "demonstrate…recovery is authorized by a treaty…" Plaintiffs respectfully suggest such a demonstration has been made herein. There is nothing to suggest that foreign claimants must demonstrate authorization in its original Complaint.

entry into force of NAFTA. Some of the primary objectives of the agreement include the following: (1) foster the protection and improvement of the environment in the territories of the Parties for the well-being of present and future generations; (2) enhance compliance with, and enforcement of, environmental laws and regulations; and (3) promote transparency and public participation in the development of environmental laws, regulations and policies; and (4) promote pollution prevention policies and practices. Article 6 purports to give private access the other government's remedies. The Agreement/Treaty states as follows:

> 2. Each Party shall ensure that persons with a legally recognized interest under its law in a particular matter have appropriate access to administrative, quasi-judicial or judicial proceedings for the enforcement of the Party's environmental laws and regulations.
>
> 3. Private access to remedies shall include rights, in accordance with the Party's law, such as:
>
>> a. To sue another person under that Party's jurisdiction for damages;
>>
>> b. To seek sanctions or remedies such as monetary penalties, emergency closures or orders to mitigate the consequences of violations of its environmental laws and regulations;
>>
>> c. To request the competent authorities to take appropriate action to enforce that Party's environmental laws and regulations in order to protect the environment or to avoid environmental harm; or
>>
>> d. To seek injunctions where a person suffers, or may suffer, loss, damage or injury as a result of conduct by another person under that Party's jurisdiction contrary to that Party's environmental laws and regulations or from tortious conduct.

The foregoing notwithstanding, Responding BP parties' brief fails to show the plaintiffs listed on Exhibit 2 of PTO 67 are in fact "foreign claimants" as that term is used in OPA. A "'foreign claimant' means—(1) a person residing in a foreign country; (2) the government of a foreign country; and (3) an agency or political subdivision of a foreign country." 33 U.S.C. § 2707

(c). A ""person' means an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 2701 (27). These plaintiffs are *cooperatives* ("Coops"), they are not "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." *Id.* BP makes no showing otherwise, and the instances of other dismissals for lack of demonstrate a treaty authorizes recovery were in cases of political subdivisions, clearly meeting the definition of "person" and therefore "foreign claimant" under OPA.

As a result of the stay outlined in Footnote one above, no discovery has been made. It is an open factual and legal question whether these Coops plaintiffs must demonstrate authorization by treaty in order to pursue OPA claims.

**B.     BP Also Claims in Pleadings in Mexico that there is No Jurisdiction and/or The Forum is not Appropriate in Mexico**

The United States' and Mexico's agreements to establish judicial proceedings to enforce their environmental laws, such as OPA, as well as their agreement to expand their relationship on environmental matters when read with BP's admission Mexico is the improper venue, further establish recovery under OPA has been authorized by treaty or executive agreement. *See*, 33 U.S.C. § 2707. BP out not to be able to argue lack of jurisdiction in Mexico and lack of a cause of action in the United States in light of the designation as a responsible party.

On July 4, 2018, BP filed a Motion to Dismiss an action filed in Mexico with regard to the Deepwater Horizon incident. BP claims the forum is not appropriate and filed an exception to the Jurisdiction/Forum Non Conveniens in Mexico (See Exhibit "1" – Declaration of Horacio Jorge Antonio Polanco Carrillo – Attachments "A" and "A-1". See also, Exhibit "A-2", which a certified copy of the portion of Exhibit "A" transcribed by other Plaintiff Counsel [Doc 215515-1]). BP alleges that Mexican Courts are not the proper forum for actions that occur outside its territory (in

fact, BP claims the U.S. Courts are the appropriate forum). Further, BP claims that in Mexico, the Court should dismiss the claims filed there. Obviously, if the Mexican courts dismiss actions related to the Deepwater Horizon incident as not being proper in Mexico, and at the same time claim U.S. Courts are the proper forum or that there is no cause of action under OPA, these Plaintiffs will have no forum to pursue a remedy for their damages.

The United States and Mexico agreements referenced above to establish judicial proceedings to enforce their environmental laws, such as OPA, as well as their agreement to expand their relationship on environmental matters when read with BP's admission that Mexico is not a proper forum, further establish that OPA is an appropriate cause of action for Plaintiffs to seek recovery. *See*, 33 U.S.C. § 2707.

**III.     OPA Does Not Displace the Maritime Law Claims of Certain Defendants**

The Responding BP parties argue that the Mexican plaintiffs' maritime law claims are displaced by OPA. However, by operation of law OPA cannot displace the maritime law claims of non-BP parties, as they have not been designated a "responsible party" under 33 U.S.C. § 2702 or other provision of OPA. Specifically, BP Exploration & Production Inc. and BP America Production Company, are the only entities designed a responsible party for the April 20, 2010 oil spill in the Gulf of Mexico by the oil rig "Deepwater Horizon".

Plaintiffs sued many more defendants than the Responding BP parties. *See, e.g.* Complaint of La Sociedad Cooperativa de Produccion Pesquera Riverena Ostioneros de Saladero SCL, 2:16-cv-04345, Doc. 1 (listing the following defendants: BP PLC; BP America, Inc.; BP Products North America, Inc.; BP America Production Company; BP Exploration & Production, Inc.; Transocean Ltd.; Transocean Holding, Inc.; Transocean Deepwater, Inc.; Transocean Offshore Deepwater

Drilling, Inc.; Triton Asset Leasing GMBH; Halliburton Energy Services, Inc.[2]; and, Sperry Drilling Services). All Defendants, other than the Responsive BP parties, have **not** been designated "responsible part[ies]". Accordingly, OPA cannot displace the maritime law claims of the non-BP parties.

This conclusion comports with the prior Orders of this Court: "OPA does not displace general maritime law claims against non-Responsible parties. As to Responsible Parties, OPA does displace general maritime law claims against Responsible Parties…" *See*, Aug. 26, 2011 ORDER, Doc.3830, at pg. 38. While Halliburton Energy Services, Inc. ("HESI"), has joined late in the BP Motion, the claims against them are general maritime claims, not OPA claims. As this Court has already stated, "OPA does not displace general maritime claims against parties who are not "Responsible Parties" under OPA (Doc. 4845, p. 5). Plaintiffs do note that HESI states that per the Court's earlier Orders, Plaintiffs herein cannot seek punitive damages against HESI. Plaintiffs agree with HESI on this point, but do not agree they cannot have general maritime claims.

Other than the issue related to treaties discussed above, Responding BP parties make no argument, and therefore have waived, argument relating to failure to comply with OPA's procedural requirements. Therefore, general maritime law claims against non-Responsible parties, and Responsible parties, are not displaced and survive in total.

### IV.  All Defendants but Three Have Waived Certain Defenses

Only the Responding BP parties that have complied with PTO 67 and HESI's Joinder in PTO 67 orders "Defendants shall file any dispositive motions as to the Remaining B1 Plaintiffs identified in Exhibit 2 attached hereto within **30 days**…" of February 5, 2019. (Doc. 25370). As

---

[2] The undersigned recognizes that Halliburton has joined Responding BP Parties' Motion to Dismiss, but that Motion addresses OPA causes of action, while Halliburton has been sued under principles of general maritime law. Therefore, the claims against Halliburton should proceed.

mentioned above, only two defendants filed dispositive motions, and no Defendants filed answers or other responsive pleadings as required by the rules of civil procedure. *See,* Fed. R. Civ. Pro. 12. Accordingly, all Defendants who have not filed any dispositive motions have waived the defenses set out in Fed. R. Civ. P. 12(b), or otherwise available to them—including but not limited to—lack of standing under the *Robins Dry Dock* standard.

**V.     Toups Cooperativa Claims are similar to the many other Cooperativa Claims filed by Other Law Firms, and they have not violated PTO 60/PTO 65.**

BP argues that the 41 Cooperativas ("Coops") represented by Toups have calculated damages by multiplying a damage number by the number of members of the Coop (Doc. 25477, p. 6). Plaintiffs would show that all Coops (not just Toups Coop Plaintiffs), have a collective right to fish in certain areas of the Mexican waters, as granted by the Republic of Mexico. Each Coop acts as one body to obtain licenses, as well as report the catches of the entire Coop to the Mexican government. The Coops also have the right to sue on behalf of its members (See Exhibit "1" – Declaration of Horacio Jorge Antonio Polanco Carrillo – Attachments "B" and "B-1"). Further the answers have been on file since April, 2018 and BP has never raised this issue for eleven (11) months. Although the various Coops may have used a per fisherman calculation as an average to calculate the damages of the individual Coops, the Coops do have damages and these 41 Plaintiffs have different damages depending on the size of the Coop, but Plaintiffs will amend if the Court believes it is necessary (although Plaintiffs do not believe they have violated PTO 65).

**VI.    Conclusion**

The Responding BP Parties' Dispositive Motion should be denied because the Mexican Plaintiffs have demonstrated they have met the requirements of 33 U.S.C § 2707. Other Defendants have violated PTO 67 by failing to timely respond, or to respond at all. Accordingly, nothing in

these Mexican Plaintiffs' Complaints should be disposed of by BP's recent filings or otherwise.

Finally, Plaintiffs have not violated PTO 60/65.

          Respectfully submitted,

          **WELLER, GREEN, TOUPS & TERRELL, L.L.P.**
          Post Office Box 350
          Beaumont, Texas 77704
          (409) 838-0101
          Fax: (409) 832-8577
          Email: matoups@wgttlaw.com

          BY:   /s/ Mitchell A. Toups_____
                    **MITCHELL A. TOUPS**
                    STATE BAR NO. 20151600

          **ATTORNEYS FOR PLAINTIFFS**