**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUSIANA**

| | | |
|---|---|---|
| **IN RE: OIL SPILL BY THE OIL RIG** | § | **MDL NO 2179:** |
| **DEEPWATER HORIZON, IN THE** | § | |
| **GULF OF MEXICO** | § | |
| **ON APRIL 20, 2010** | § | |
| | § | |
| | § | |
| | § | |
| **This Document Relates to: 16-cv-04354** | § | |
| **16-cv-04561, 16-cv-04570, 16-cv-04391** | § | |
| **16-cv-04593, 16-cv-04591, 16-cv-04609** | § | |
| **16-cv-06305, 16-cv-05294, 16-cv-06311** | § | |
| **16-cv-05289, 16-cv-04999, 16-cv-04576** | § | |
| **16-cv-05313, 16-cv-04506, 16-cv-04548** | § | |
| **16-cv-05235, 16-cv-04415, 16-cv-04528** | § | |
| **16-cv-04573, 16-cv-04583, 16-cv-04597** | § | |
| **16-cv-04376, 16-cv-04366, 16-cv-05376** | § | |
| **16-cv-04691, 16-cv-04362, 16-cv-05585** | § | |
| **16-cv-04392, 16-cv-04379, 16-cv-04487** | § | |
| **16-cv-04385, 16-cv-04388, 16-cv-04688** | § | |
| **16-cv-04682, 16-cv-04413, 16-cv-04373** | § | |
| **16-cv-04382, 16-cv-05473, 16-cv-04393** | § | **SECTION: J** |
| **16-cv-04424, 16-cv-05380, 16-cv-05387** | § | |
| **16-cv-04427, 16-cv-04320, 16-cv-04429** | § | |
| **16-cv-04394, 16-cv-05566, 16-cv-04408** | § | |
| **16-cv-04411, 16-cv-04414, 16-cv-04418** | § | |
| **16-cv-05829, 16-cv-05835, 16-cv-05832** | § | **JUDGE BARBIER** |
| **16-cv-04601** | § | |
| | § | |
| **All Remaining Cases in Pleading B1** | § | **MAG. JUDGEWILKINSON** |

**BUZBEE LAW FIRM PLAINTIFFS' RESPONSE TO BP AND HESI'S DISPOSITIVE**
**MOTION AS TO THE B1 CLAIMS OF MEXICAN PLAINTIFFS**

Plaintiffs, represented by the Buzbee Law Firm, as identified in Exhibit A (collectively

"Buzbee Plaintiffs"), comprised primarily of Mexican fishermen and fishing cooperatives, move

this Court to deny BP's (Rec. 25477) and Defendant Halliburton Energy Services, Inc.'s

("HESI") (Rec.25505) dispositive motion as to the B1 claims of Mexican Plaintiffs for the following reasons pursuant to PreTrial Order 67 (Rec.25370).

## I. PROCEDURAL BACKGROUND

On February 5, 2019, the Court ordered all Defendants "shall file any dispositive motions as to the Remaining B1 Plaintiff identified in Exhibit 2," i.e. the foreign [Mexican] Plaintiffs, "within 30 days of the date of this Order." (Rec.25370).  The Remaining B1 Plaintiffs identified in Exhibit 2 shall file a responsive pleading, if any, within 30 days from the date such a dispositive motion is filed." (Rec.25370). BP Exploration & Production Inc. and BP America Production Company (collectively, "BP") moved to dismiss the claims of 115 B1 Plaintiffs identified in Exhibit 2 to PTO 67, who are fishermen, cooperatives of fishermen, and one business residing or doing business in Mexico ("Mexican Plaintiffs") alleging they have no cause of action under OPA or maritime law, which OPA displaces for foreign claimants. The motion was filed March 7, 2019, as instructed by the Court (Rec.25477).  No other motions were filed by the deadline. No extensions were requested. On March 11, 2019, the Court instructed all responses to be filed by April 1, 2019 (Rec.25484). Then, on March 20, 2019, Defendant Halliburton Energy Services, Inc. ("HESI") filed an *Ex Parte* Motion to Join and Adopt, and copied *in extenso*, the arguments made in BP's Dispositive Motion.  (Rec.25505). On March 21, 2019, This Court granted the *Ex Parte* motion. No other defendants filed a late joinder or moved the Court to adopt BP's Motion, thus any non-filing parties should not be dismissed.

The Mexican Plaintiffs suffered losses by the devastating oil spill in the Gulf of Mexico and have been forbidden from asserting their claims since 2010, as the cases have remained stayed since 2011.  BP incorrectly now asserts that *In Re Deepwater Horizon*, 907 F.3d 232, 234 (5th Cir. 2018) which affirmed this Court's dismissal of the claims by the Mexican Plaintiffs in

the fishing industry for failure to comply with Pretrial Order 60 ("PTO 60") dismissed the Buzbee Plaintiffs' claims on the merits. Such assertion is wholly improper and false. The dismissal was based on technical, and not substantive reasons, as the Mexican Plaintiffs were unable to be reached in time to submit a hand-signed sworn statement and the case was dismissed within the Court's authority to manage its docket. Subsequent to PTO 60, PTO 64 and PTO 67 were entered requiring these same Mexican Plaintiffs to re-assert their claims and re-file lawsuits.

As a result of PTO 60, the Buzbee Plaintiffs filed individual lawsuits[1] and incorporated all claims initially filed in Case No 4:13 cv-01128, which was transferred to the Eastern District of Louisiana in Schedule 73 Tag Along Action on May 3, 2013. (Rec. 1296). Buzbee Plaintiffs filed their original action against, listed in part: BP Exploration & Production, Inc. ("BP Exploration"), Defendant BP America Production Company ("BP America"); Defendant BP p.l.c.; Defendant Halliburton Energy Services, Inc.; Defendant Transocean Offshore Deepwater Drilling, Inc.; Defendant Transocean Holdings, LLC; Defendant Transocean Deepwater, Inc.; Defendant Transocean Ltd., and only three entities BP Exploration, BP America and HESI filed a motion to dismiss.

## II. OBJECTION TO UNTIMELINESS OF HESI'S JOINDER

Plaintiffs formally object to the untimeliness of HESI's joinder, and the applicability to this case as HESI is not a responsible party under OPA.

## III. LEGAL STANDARD TO MOTION TO DISMISS

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To

---

[1] See Exhibit A, identifying the lawsuit filed on an individual basis.

survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In making its determination, the court must accept factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

The Supreme Court has ruled that the Federal Water Pollution Control Act, 33 U.S.C. § 1321, and the Jones Act, 46 U.S.C. § 30104(a), relating to injured seamen, do not displace remedies available under general maritime common law. See Atlantic Sounding, 557 U.S. at 416-17 ("[N]othing in the statutory scheme for maritime recovery restricts the availability of [common law] punitive damages . . . ."); Exxon Shipping, 554 U.S. at 488-89 ("[W]e find it too hard to conclude that a statute expressly geared to protecting 'water,' 'shorelines,' and 'natural resources' was intended to eliminate sub silentio oil companies' common law duties . . . "). At least one court, even taking note of the First Circuit's ruling in South Port Marine in the process, has ruled that the principles of interpretation controlling Exxon Shipping and Atlantic Sounding also extend to the OPA. See *In Re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010,* 808 F.Supp.2d 943,960-62 (E.D.La.2011) (ruling that general maritime claims against non-responsible parties connected to the 2010 Deepwater Horizon oil spill were not displaced by the OPA.)

## IV. ARGUMENTS AND AUTHORITIES

In summary, Buzbee Plaintiffs assert that the BP and HESI motions to dismiss should not be granted for the following reasons:

1.   Buzbee Plaintiffs assert the OPA extends to the Buzbee Plaintiffs by way of the North American Free Trade Agreement (NAFTA) and its side-treaty The North American Agreement on Environmental Cooperation (NAAEC).

4

2.    Court's prior ruling dismissing the Mexican States does not apply because the commercial fishermen identified in Exhibit 2 have a proprietary interest in the water – unlike the Mexican States.

3.    The Buzbee Plaintiffs have general maritime claims against Halliburton Energy Services, Inc., ("HESI") as a non-responsible party.

**A.    FOREIGN CLAIMANTS CAN RECOVER UNDER OIL POLLUTION ACT OF 1990 APPLIES UNDER NAFTA**

The Oil Pollution Act of 1990 ("OPA") specifically provides a claim and recovery by foreign claimants, including a foreign person, government and political division.[2] Generally, a foreign claimant may file a claim under the OPA if they can demonstrate **an agreement** between the countries, as stated in the OPA in full:

> **(A)**    the claimant has not been otherwise compensated for the removal costs or damages; and

> **(B)**    recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants.

See 33 U.S.C. § 2707 (a) (1990). Here, at least North American Agreement on Environmental Cooperation applies to this case and extends jurisdiction to its North American neighbor.[3] Generally, the Buzbee Mexican Plaintiffs can make a claim because the discharge of the oil was from a deep water port as a foreign claimant:

---

[2]  Foreign Claimant is defined as follows:
        (1) a person residing in a foreign country;
        (2) the government of a foreign country; and
        (3) an agency or political subdivision of a foreign country.
See 33 U.S.C.A § 2707 (1990) (c).

[33]  Additionally, The United States-Mexico-Canada Agreement (*USMCA*) did not exist in 2016, and may also be applicable to this case which allows for recovery and cooperation related to environmental matters and as a matter of public policy should apply here. *USMCA* Article 24.6 (3), as Mexican Court have determined that they do not have the proper forum for the torts.

A foreign claimant may make a claim for removal costs and damages resulting from a discharge, or substantial threat of a discharge, of oil in or on the territorial sea, internal waters, or adjacent shoreline of a foreign country, only if the discharge is from:

(1) an Outer Continental Shelf facility or a deepwater port;

(2) a vessel in the navigable waters;

(3) a vessel carrying oil as cargo between 2 places in the United States; or

(4) a tanker that received the oil at the terminal of the pipeline constructed under the Trans-Alaska Pipeline Authorization Act (43 U.S.C. 1651 et seq.), for transportation to a place in the United States, and the discharge or threat occurs prior to delivery of the oil to that place.

*See* 33 U.S.C. § 2707 (1990) (b).

Here - the North American Agreement on Environmental Cooperation ("NAAEC") expressly provides access to remedies to United States and Mexico alike for damages arising from violations from the other party's environmental laws and regulations.  *See* North American Agreement on Environmental Cooperation between the Government of Canada, The Government of the United Mexican States and The Government of The United States of America. *See* Article 6 (1993) (referred to as "NAAEC," and attached as Exhibit B).  This Agreement automatically came into effect after entry into force of NAFTA as a side treaty effective January 1, 1994, and has not been addressed by this Court.

Some of the primary objectives of the agreement include the following: (1) foster the protection and improvement of the environment in the territories of the Parties for the well-being of present and future generations; (2) **enhance compliance with, and enforcement of, environmental laws and regulations**; and (3) promote transparency and public participation in the development of environmental laws, regulations and policies; and (4) promote pollution prevention policies and practices.  *See* Article 47 of NAAEC; See Article 1 of NAAEC

(emphasis added), Exhibit B. In addition to the well stated intention, Article 6 gives private

access the other government's remedies.

**Article 6:        Private Access to Remedies**

1.        Each Party shall ensure that interested persons may request the Party's competent authorities to investigate alleged violations of its environmental laws and regulations and shall give such requests due consideration in accordance with law.

2.        Each Party shall ensure that persons with a legally recognized interest under its law in a particular matter have appropriate access to administrative, quasi-judicial or judicial proceedings for the enforcement of the Party's environmental laws and regulations.

3.        Private access to remedies shall include rights, in accordance with the Party's law, such as:

  (a)        to sue another person under that Party's jurisdiction for damages;

  (b)        to seek sanctions or remedies such as monetary penalties, emergency closures or orders to mitigate the consequences of violations of its environmental laws and regulations;

  (c)        to request the competent authorities to take appropriate action to enforce that Party's environmental laws and regulations in order to protect the environment or to avoid environmental harm; or

  (d)        to seek injunctions where a person suffers, or may suffer, loss, damage or injury as a result of conduct by another person under that Party's jurisdiction contrary to that Party's environmental laws and regulations or from tortious conduct.

*See* Article 6 of NAAEC, p. 6 (emphasis added), Exhibit B.

Further, the countries agreed that each party shall ensure its judicial proceedings are fair,

open and equitable and shall provide:

  (a)        comply with due process of law;

  (b)        are open to the public, except where the administration of justice otherwise requires;

  (c)        entitle the parties to the proceedings to support or defend their respective positions and to present information or evidence; and

     (d)     are not unnecessarily complicated and do not entail unreasonable charges or time limits or unwarranted delays.

*See* Article 6 of NAAEC, Exhibit B.

The North American Free Trade Agreement (NAFTA) also provides access to remedies to injured parties for violations of environmental laws and damages to the environment by one of the parties to the agreement. Specifically, NAFTA's preamble, in part, clearly denotes:

The Government of Canada, the Government of the United Mexican States and the Government of the United States of America, resolved to:

- STRENGTHEN the special bonds of friendship and cooperation among their nations;

- CONTRIBUTE to the harmonious development and expansion of world trade and provide a catalyst to broader international cooperation;

- CREATE an expanded and secure market for the goods and services produced in their territories;

- REDUCE distortions to trade;

- PRESERVE their flexibility to safeguard the public welfare;

- PROMOTE sustainable development;

- STRENGTHEN the development and enforcement of environmental laws and regulations; and

- UNDERTAKE each of the preceding in a manner consistent with environmental protection and conservation

*See* North American Free Trade Agreement Preamble.[4]

Dismissing the Buzbee Plaintiffs' claims would be in direct contradiction to an agreement that was freely entered into by Mexico, The United States, and Canada[5]. As of the writing of this response, the NAFTA agreement is currently in effect. That is, none of the three nations have revoked the agreement and the duties imposed on and agreed to by the NAFTA preamble. Further, NAFTA was in full effect at the time of the devastating oil spill.

Denying the Buzbee Plaintiffs' claims would hinder the strength of the special bonds of friendship and cooperation between the United States and Mexico. The United States depends heavily on imports from Mexico. Such imports include, amongst many, fish and seafood from Mexico. By failing to protect the interests of the affected fishermen and businesses, which was caused by American companies, will continue to harm Mexico's fishing industry and ultimately imports into the United States.

As a consequence of allowing Mexico's fishing industry to remain harmed by the oil pollution, the duty of contributing to the harmonious development and expansion of world trade, a duty imposed by the NAFTA preamble, would not be met. Further, this oil spill, has caused and will continue to cause distortions to trade. Allowing Mexico's fishing areas to remain harmed, in no way will promote nor contribute to harmonious development of trade. The Buzbee Plaintiffs need to be compensated for the damages caused by the oil spill.

The NAFTA parties agreed to create an expanded and secure market for the goods and services produced in their territories. Creating a secure market not only involves allowing Mexican fish imports, but helping protect such source of imports, especially when an American

[4] Exhibit C – North American Free Trade Agreement was obtained from https://www.nafta-sec-alena.org/Home/Texts-of-the-Agreement/North-American-Free-Trade-Agreement?mvid=1&secid=b5b817ee-c48a-4dda-b8d9-c4564e34ac4b
[5] This motion will only address NAFTA as it pertains to Mexico and the United States.

company has caused such damage. By having the Defendants restore such source of imports, will allow the duty imposed by NAFTA to be fulfilled. Ultimately, NAFTA imposed a duty to undertake all the duties set forth in the preamble, in a manner consistent with environmental protection and conservation. The oil spill caused by the Defendants, directly affects the environment and conservation. The United States cannot turn a blind eye to the damage caused by its own companies and claim it remains faithful to NAFTA. As such, the Buzbee Plaintiffs should be allowed to get compensated by the Defendants and thus allow compliance with the duties imposed on by NAFTA's preamble.

### B.   THE BUZBEE PLAINTIFFS' GENERAL MARITIME CLAIMS EXIST AND SHOUL NOT BE IGNORED.

First, the Mexican Fisherman historically have general maritime claim under common law.  This Court's prior dismissal of Mexican States' (namely, Tamaulipas, Quintana Roo, and Veracruz, and herein called "Mexican States") is not applicable to this decision.  This Court previously dismissed those claims due to a finding that the States "did not hold a ***proprietary interest*** in the property allegedly damaged by discharged oil, and thus, their tort claims could not proceed under general maritime law."  *In re Oil Spill,* 970 F. Supp. 2d 524 (E.D. La 2013) (emphasis added).  The trial court reiterated the Fifth Circuit's en banc decision in *Louisiana ex rel. Guste v. M/V Testbank* which reaffirmed the prevailing maritime rule that denies a plaintiff recovery for economic loss if that loss resulted from physical damage to property in which he had no proprietary interest.'" *In re Bertucci Contracting Co., 712 F.3d 245, 246 (5th Cir. 2013)* (quoting *Testbank, 752 F.2d 1019, 1022*). Stated another way, the rule of *Robins Dry Dock* bars "recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit." *Id. at 247* (quotations and citations omitted).  Commercial fisherman have long been held to have a proprietary interest in the water in the United States. "Claims for

economic loss asserted by the commercial oystermen, shrimpers, crabbers and fishermen raise unique considerations requiring separate attention. Traditionally, seamen have been recognized as favored in admiralty and their economic interests require the fullest possible legal protection." *See State of Louisiana ex rel. Guste v. M/V Testbank*, 524 F. Supp. 1170, 1173-74 (E.D.La.1981). This Court previously found the Mexican Constitution barred the States (but was silent as to the underlying Mexican fishermen who have a proprietary interest in the water) and found that the Mexican States claims were barred by the general maritime rule of *Robins Dry Dock. Robins Dry Dock & Repair Co. v. Flin*t, 275 U.S. 303, 48 S.Ct. 134 (1927); *In re Oil Spill,* 970 F. Supp. 2d 524, 529 (E.D. La 2013). "These provisions indicate that the federal government of Mexico, not the Mexican States, owns the water, property, natural resources, etc., at issue" and therefore, the Mexican States had no proprietary interest. 970 F. Supp. 2d 524, 530. It was specifically found by this Court that the Mexican federal government had a proprietary interest. *Id.* at 540. Here, the Mexican commercial fisherman and the analysis was not considered or applied.  Thus, BP's argument is not persuasive.

### C.   GENERAL MARITIME LAW IS NOT SUPERSEDED BY THE OIL POLLUTION ACT OF 1990 WITH RESPECT TO NON-RESPONSIBLE PARTIES AND SUCH DEFENDANTS HAVE WAIVED ANY DEFENSE.

Even if BP and HESI are correct that the OPA supersedes maritime law, any claims against non-responsible parties still exist and have been waived by these defendants.[6]  This also includes the BP entities sued, that are non-responsible parties. The Buzbee Plaintiffs have general maritime claims against HESI and the non-responsible BP entities and Transocean

---

[6] Transocean entities did not file a motion to dismiss, and the deadline has passed and will not be addressed in this response.

entities.[7]   In this Coast Guard's report, Halliburton nor the other BP entities are held as a responsible parties to the oil spill and were not designated as such. As such, they do not benefit from the OPA's protection against claims by foreigners. Therefore, this Court should deny HESI's *Ex Parte* Motion (Rec 25505).

This Court in *In Re Oil Spill By The Oil Rig Deepwater Horizon,* 808 F.Supp.2d 934 (E.D.La. 2011) held that "claims for [purely] economic loss [resulting from an oil spill and subsequent river closure] asserted by the commercial oystermen, shrimpers, crabbers, and fishermen raise unique considerations requiring separate attention…seamen have been recognized as favored in admiralty and their economic interests require the fullest possible legal protection." *Id.* at 958.   As such, this Court should allow the Buzbee Plaintiffs to keep their general maritime claims and deny Halliburton's Motion. This Court should also allow the Buzbee Plaintiffs to assert their claims against the non-responsible BP entities.

To further support the Buzbee Plaintiffs' position, this Court has recognized an exception to the *Robins Dry Dock* rule that applies to the Buzbee Plaintiffs. This Court held that "one relevant exception to the *Robins Dry Dock* rule apples in the case of commercial fishermen." *Id.* at 958, quoting *Louisiana v. M/V Testbank,* 524 F. Supp. 1170, 1173 (E.D.La. 1981*)*. The Buzbee Plaintiffs which are commercial fishermen benefit from the M/V *Testbank* exception. The Buzbee Plaintiffs have suffered damages as a result of the oil spill. As such, the Buzbee Plaintiffs should be allowed to keep their general maritime law claims against Defendant HESI and the non-responsible BP entities.

---

[7] *Coast Guard Report – Report of Investigation into the Circumstances Surrounding the Explosion, Fire, Sinking and Loss of Eleven Crew Members Aboard the MOBIL OFFSHORE DRILLING UNIT DEEPWATER HORIZON.* This report was obtained from:
https://www.dco.uscg.mil/Portals/9/OCSNCOE/OCS%20Investigation%20Reports/Macondo%20-%20DWH%20Reports/DWH%20ROI%20USCG%20Vol%20I%20Redacted%20Final.pdf?ver=2017-10-05-072821-053.

Lastly, this Court held that "…as to the non-Responsible Parties, there is nothing in OPA to indicate that Congress intended such parties to be immune from direct liability to persons who either suffered physical damage to a proprietary interest and/or qualify for the commercial fishermen exception." *In Re Oil Spill By The Oil Rig Deepwater Horizon,* 808 F.Supp.2d 934 at 962. As such, Haliburton, as a non-responsible party cannot escape liability from the Buzbee Plaintiffs' general maritime claims for damages caused by the oil spill. The Buzbee Plaintiffs respectfully request this Court to deny Halliburton's motion and allow claims against HESI and the non-responsible BP entities.

The Buzbee Plaintiffs' general maritime claims are not displaced by the OPA. In support for the Buzbee Plaintiffs' position, this Court found that "…the B1 Master Complaint states a viable cause of action against the non-Responsible Parties under general maritime law on behalf of claimants who either allege physical damage to a proprietary interest and/or qualify for the commercial fishermen exception to *Robins Dry Dock." Id.* at 961. Here, The Buzbee Plaintiffs are unequivocally commercial fishermen who benefit from the exception to *Robins Dry Dock.* As such, the Buzbee Plaintiffs' general maritime claims against Halliburton, a non-responsible party are proper. Further, the Buzbee Plaintiffs' claims against the non-responsible BP entities are valid. As such, this Court should deny Defendants' motion.

This Court provides three reasons as to why OPA does not displace general maritime claims. The first being that "when reading OPA and its legislative history, it does not appear that Congress intended to occupy the entire field governing liability for oil spills, as it included two savings provisions—one that preserved the application of general maritime law…" *Id.* at 961. The second reason is that "OPA does not directly address or speak to the liability of non-Responsible Parties to persons who suffer covered losses…" *Id.* Lastly, this Court held that

"…there's nothing to indicate that allowing a general maritime remedy against the non-Responsible Parties will somehow frustrate Congress' intent when it enacted OPA." *Id.* at 962. As such, this Court should deny Defendants' motion, and allow the Buzbee Plaintiffs to assert their general maritime claims.

In sum, the Buzbee Plaintiffs are all commercial fishermen who benefit from the exception to the *Robins Dry Dock* rule and are able to make general maritime law claims against Defendants. HESI and the non-responsible BP entities cannot benefit from the protection provided by OPA against claims by foreigners, and is not immune against general maritime claims. This Court has previously ruled that allowing general maritime claims against non-responsible parties, such as Halliburton and the BP entities will not frustrate Congress' intent when it enacted OPA.   As such, this Court should deny Defendants' motion based on the precedent this very Court has established.

## V. CONCLUSION

Buzbee Plaintiffs assert that the motions to dismiss should be denied on the grounds that OPA is alive and well, and applies to the Buzbee Plaintiffs pursuant to the North American Agreement on Environmental Cooperation through the North American Free Trade Agreement. Further, Plaintiffs maritime claims exist, and were not superseded by the OPA – at a minimum as to the non-responsible parties, any defenses have been waived and the cases should go forward.

Respectfully submitted,

## THE BUZBEE LAW FIRM

By:     */S/ Caroline E. Adams*
        Anthony G. Buzbee (TA)
        State Bar No. 24001820
        S.D. Tex. I.D. No. 22679

14

Caroline E. Adams
State Bar No. 24011198
S.D. Tex. I.D. No. 27655
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
www.txattorneys.com

**ATTORNEY FOR THE BUZBEE PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send notice of electronic filing in accordance with the procedures established in MDL 2179, on this 1st day of April, 2019.

*/S/ Caroline Adams*
Caroline E. Adams