# NORTH AMERICAN AGREEMENT ON ENVIRONMENTAL COOPERATION

**BETWEEN**

**THE GOVERNMENT OF CANADA,**

**THE GOVERNMENT OF THE UNITED MEXICAN STATES**

**AND**

**THE GOVERNMENT OF THE UNITED STATES OF AMERICA**

**1993**

Secretariat of the Commission for
Environmental Cooperation

EXHIBIT

**B**

# PREAMBLE

The Government of Canada, the Government of the United Mexican States and the Government of the United States of America:

**CONVINCED** of the importance of the conservation, protection and enhancement of the environment in their territories and the essential role of cooperation in these areas in achieving sustainable development for the well-being of present and future generations;

**REAFFIRMING** the sovereign right of States to exploit their own resources pursuant to their own environmental and development policies and their responsibility to ensure that activities within their jurisdiction or control do not cause damage to the environment of other States or of areas beyond the limits of national jurisdiction;

**RECOGNIZING** the interrelationship of their environments;

**ACKNOWLEDGING** the growing economic and social links between them, including the North American Free Trade Agreement (NAFTA);

**RECONFIRMING** the importance of the environmental goals and objectives of the NAFTA, including enhanced levels of environmental protection;

**EMPHASIZING** the importance of public participation in conserving, protecting and enhancing the environment;

**NOTING** the existence of differences in their respective natural endowments, climatic and geographical conditions, and economic, technological and infrastructural capabilities;

**REAFFIRMING** the *Stockholm Declaration on the Human Environment* of 1972 and the *Rio Declaration on Environment and Development* of 1992;

**RECALLING** their tradition of environmental cooperation and expressing their desire to support and build on international environmental agreements and existing policies and laws, in order to promote cooperation between them; and

**CONVINCED** of the benefits to be derived from a framework, including a Commission, to facilitate effective cooperation on the conservation, protection and enhancement of the environment in their territories;

**HAVE AGREED AS FOLLOWS:**

# PART ONE

# OBJECTIVES

**Article 1:**      **Objectives**

The objectives of this Agreement are to:

(a)      foster the protection and improvement of the environment in the territories of the Parties for the well-being of present and future generations;

(b)      promote sustainable development based on cooperation and mutually supportive environmental and economic policies;

(c)      increase cooperation between the Parties to better conserve, protect, and enhance the environment, including wild flora and fauna;

(d)      support the environmental goals and objectives of the NAFTA;

(e)      avoid creating trade distortions or new trade barriers;

(f)      strengthen cooperation on the development and improvement of environmental laws, regulations, procedures, policies and practices;

(g)      enhance compliance with, and enforcement of, environmental laws and regulations;

(h)      promote transparency and public participation in the development of environmental laws, regulations and policies;

(i)      promote economically efficient and effective environmental measures; and

(j)      promote pollution prevention policies and practices.

# PART TWO

# OBLIGATIONS

**Article 2:      General Commitments**

1.      Each Party shall, with respect to its territory:

    (a)      periodically prepare and make publicly available reports on the state of the environment;

    (b)      develop and review environmental emergency preparedness measures;

    (c)      promote education in environmental matters, including environmental law;

    (d)      further scientific research and technology development in respect of environmental matters;

    (e)      assess, as appropriate, environmental impacts; and

    (f)      promote the use of economic instruments for the efficient achievement of environmental goals.

2.      Each Party shall consider implementing in its law any recommendation developed by the Council under Article 10(5)(b).

3.      Each Party shall consider prohibiting the export to the territories of the other Parties of a pesticide or toxic substance whose use is prohibited within the Party's territory.  When a Party adopts a measure prohibiting or severely restricting the use of a pesticide or toxic substance in its territory, it shall notify the other Parties of the measure, either directly or through an appropriate international organization.

**Article 3:      Levels of Protection**

    Recognizing the right of each Party to establish its own levels of domestic environmental protection and environmental development policies and priorities, and to adopt or modify accordingly its environmental laws and regulations, each Party shall ensure that its laws and regulations provide for high levels of environmental protection and shall strive to continue to improve those laws and regulations.

**Article 4:       Publication**

1.       Each Party shall ensure that its laws, regulations, procedures and administrative rulings of general application respecting any matter covered by this Agreement are promptly published or otherwise made available in such a manner as to enable interested persons and Parties to become acquainted with them.

2.       To the extent possible, each Party shall:

     (a)       publish in advance any such measure that it proposes to adopt; and

     (b)       provide interested persons and Parties a reasonable opportunity to comment on such proposed measures.

**Article 5:       Government Enforcement Action**

1.       With the aim of achieving high levels of environmental protection and compliance with its environmental laws and regulations, each Party shall effectively enforce its environmental laws and regulations through appropriate governmental action, subject to Article 37, such as:

     (a)       appointing and training inspectors;

     (b)       monitoring compliance and investigating suspected violations, including through on-site inspections;

     (c)       seeking assurances of voluntary compliance and compliance agreements;

     (d)       publicly releasing non-compliance information;

     (e)       issuing bulletins or other periodic statements on enforcement procedures;

     (f)       promoting environmental audits;

     (g)       requiring record keeping and reporting;

     (h)       providing or encouraging mediation and arbitration services;

     (i)       using licenses, permits or authorizations;

     (j)       initiating, in a timely manner, judicial, quasi-judicial or administrative proceedings to seek appropriate sanctions or remedies for violations of its environmental laws and regulations;

     (k)       providing for search, seizure or detention; or

       (l)      issuing administrative orders, including orders of a preventative, curative or emergency nature.

2.      Each party shall ensure that judicial, quasi-judicial or administrative enforcement proceedings are available under its law to sanction or remedy violations of its environmental laws and regulations.

3.      Sanctions and remedies provided for a violation of a Party's environmental laws and regulations shall, as appropriate:

       (a)      take into consideration the nature and gravity of the violation, any economic benefit derived from the violation by the violator, the economic condition of the violator, and other relevant factors; and

       (b)      include compliance agreements, fines, imprisonment, injunctions, the closure of facilities, and the cost of containing or cleaning up pollution.

**Article 6:**      **Private Access to Remedies**

1.      Each Party shall ensure that interested persons may request the Party's competent authorities to investigate alleged violations of its environmental laws and regulations and shall give such requests due consideration in accordance with law.

2.      Each Party shall ensure that persons with a legally recognized interest under its law in a particular matter have appropriate access to administrative, quasi-judicial or judicial proceedings for the enforcement of the Party's environmental laws and regulations.

3.      Private access to remedies shall include rights, in accordance with the Party's law, such as:

       (a)      to sue another person under that Party's jurisdiction for damages;

       (b)      to seek sanctions or remedies such as monetary penalties, emergency closures or orders to mitigate the consequences of violations of its environmental laws and regulations;

       (c)      to request the competent authorities to take appropriate action to enforce that Party's environmental laws and regulations in order to protect the environment or to avoid environmental harm; or

       (d)      to seek injunctions where a person suffers, or may suffer, loss, damage or injury as a result of conduct by another person under that Party's jurisdiction contrary to that Party's environmental laws and regulations or from tortious conduct.

**Article 7:     Procedural Guarantees**

1.     Each Party shall ensure that its administrative, quasi-judicial and judicial proceedings referred to in Articles 5(2) and 6(2) are fair, open and equitable, and to this end shall provide that such proceedings:

>    (a)     comply with due process of law;

>    (b)     are open to the public, except where the administration of justice otherwise requires;

>    (c)     entitle the parties to the proceedings to support or defend their respective positions and to present information or evidence; and

>    (d)     are not unnecessarily complicated and do not entail unreasonable charges or time limits or unwarranted delays.

2.     Each Party shall provide that final decisions on the merits of the case in such proceedings are:

>    (a)     in writing and preferably state the reasons on which the decisions are based;

>    (b)     made available without undue delay to the parties to the proceedings and, consistent with its law, to the public; and

>    (c)     based on information or evidence in respect of which the parties were offered the opportunity to be heard.

3.     Each Party shall provide, as appropriate, that parties to such proceedings have the right, in accordance with its law, to seek review and, where warranted, correction of final decisions issued in such proceedings.

4.     Each Party shall ensure that tribunals that conduct or review such proceedings are impartial and independent and do not have any substantial interest in the outcome of the matter.

# PART THREE

# COMMISSION FOR ENVIRONMENTAL COOPERATION

**Article 8:     The Commission**

1.     The Parties hereby establish the Commission for Environmental Cooperation.

2.      The Commission shall comprise a Council, a Secretariat and a Joint Public Advisory Committee.

**Section A:      The Council**

**Article 9:      Council Structure and Procedures**

1.      The Council shall comprise cabinet-level or equivalent representatives of the Parties, or their designees.

2.      The Council shall establish its rules and procedures.

3.      The Council shall convene:

        (a)      at least once a year in regular session; and

        (b)      in special session at the request of any Party.

Regular sessions shall be chaired successively by each Party.

4.      The Council shall hold public meetings in the course of all regular sessions.  Other meetings held in the course of regular or special sessions shall be public where the Council so decides.

5.      The Council may:

        (a)      establish, and assign responsibilities to, *ad hoc* or standing committees, working groups or expert groups;

        (b)      seek the advice of non-governmental organizations or persons, including independent experts; and

        (c)      take such other action in the exercise of its functions as the Parties may agree.

6.      All decisions and recommendations of the Council shall be taken by consensus, except as the Council may otherwise decide or as otherwise provided in this Agreement.

7.      All decisions and recommendations of the Council shall be made public, except as the Council may otherwise decide or as otherwise provided in this Agreement.

**Article 10:      Council Functions**

1.      The Council shall be the governing body of the Commission and shall:

    (a)      serve as a forum for the discussion of environmental matters within the scope of this Agreement;

    (b)      oversee the implementation and develop recommendations on the further elaboration of this Agreement and, to this end, the Council shall, within four years after the date of entry into force of this Agreement, review its operation and effectiveness in the light of experience;

    (c)      oversee the Secretariat;

    (d)      address questions and differences that may arise between the Parties regarding the interpretation or application of this Agreement;

    (e)      approve the annual program and budget of the Commission; and

    (f)      promote and facilitate cooperation between the Parties with respect to environmental matters.

2.      The Council may consider, and develop recommendations regarding:

    (a)      comparability of techniques and methodologies for data gathering and analysis, data management and electronic data communications on matters covered by this Agreement;

    (b)      pollution prevention techniques and strategies;

    (c)      approaches and common indicators for reporting on the state of the environment;

    (d)      the use of economic instruments for the pursuit of domestic and internationally agreed environmental objectives;

    (e)      scientific research and technology development in respect of environmental matters;

    (f)      promotion of public awareness regarding the environment;

    (g)      transboundary and border environmental issues, such as the long-range transport of air and marine pollutants;

    (h)      exotic species that may be harmful;

(i)     the conservation and protection of wild flora and fauna and their habitat, and specially protected natural areas;

(j)     the protection of endangered and threatened species;

(k)     environmental emergency preparedness and response activities;

(1)     environmental matters as they relate to economic development;

(m)    the environmental implications of goods throughout their life cycles;

(n)     human resource training and development in the environmental field;

(o)     the exchange of environmental scientists and officials;

(p)     approaches to environmental compliance and enforcement;

(q)     ecologically sensitive national accounts;

(r)     eco-labelling; and

(s)     other matters as it may decide.

3.     The Council shall strengthen cooperation on the development and continuing improvement of environmental laws and regulations, including by:

(a)     promoting the exchange of information on criteria and methodologies used in establishing domestic environmental standards; and

(b)     without reducing levels of environmental protection, establishing a process for developing recommendations on greater compatibility of environmental technical regulations, standards and conformity assessment procedures in a manner consistent with the NAFTA.

4.     The Council shall encourage:

(a)     effective enforcement by each Party of its environmental laws and regulations;

(b)     compliance with those laws and regulations; and

(c)     technical cooperation between the Parties.

5.     The Council shall promote and, as appropriate, develop recommendations regarding:

(a)     public access to information concerning the environment that is held by public authorities of each Party, including information on hazardous materials and

activities in its communities, and opportunity to participate in decision-making processes related to such public access; and

(b)      appropriate limits for specific pollutants, taking into account differences in ecosystems.

6.      The Council shall cooperate with the NAFTA Free Trade Commission to achieve the environmental goals and objectives of the NAFTA by:

(a)      acting as a point of inquiry and receipt for comments from non-governmental organizations and persons concerning those goals and objectives;

(b)      providing assistance in consultations under Article 1114 of the NAFTA where a Party considers that another Party is waiving or derogating from, or offering to waive or otherwise derogate from, an environmental measure as an encouragement to establish, acquire, expand or retain an investment of an investor, with a view to avoiding any such encouragement;

(c)      contributing to the prevention or resolution of environment-related trade disputes by:

(i)      seeking to avoid disputes between the Parties,

(ii)      making recommendations to the Free Trade Commission with respect to the avoidance of such disputes, and

(iii)      identifying experts able to provide information or technical advice to NAFTA committees, working groups and other NAFTA bodies;

(d)      considering on an ongoing basis the environmental effects of the NAFTA; and

(e)      otherwise assisting the Free Trade Commission in environment-related matters.

7.      Recognizing the significant bilateral nature of many transboundary environmental issues, the Council shall, with a view to agreement between the Parties pursuant to this Article within three years on obligations, consider and develop recommendations with respect to:

(a)      assessing the environmental impact of proposed projects subject to decisions by a competent government authority and likely to cause significant adverse transboundary effects, including a full evaluation of comments provided by other Parties and persons of other Parties;

(b)      notification, provision of relevant information and consultation between Parties with respect to such projects; and

(c)      mitigation of the potential adverse effects of such projects.

8.      The Council shall encourage the establishment by each Party of appropriate administrative procedures pursuant to its environmental laws to permit another Party to seek the reduction, elimination or mitigation of transboundary pollution on a reciprocal basis.

9.      The Council shall consider and, as appropriate, develop recommendations on the provision by a Party, on a reciprocal basis, of access to and rights and remedies before its courts and administrative agencies for persons in another Party's territory who have suffered or are likely to suffer damage or injury caused by pollution originating in its territory as if the damage or injury were suffered in its territory.

**Section B:      The Secretariat**

**Article 11:      Secretariat Structure and Procedures**

1.      The Secretariat shall be headed by an Executive Director, who shall be chosen by the Council for a three-year term, which may be renewed by the Council for one additional three-year term.  The position of Executive Director shall rotate consecutively between nationals of each Party.  The Council may remove the Executive Director solely for cause.

2.      The Executive Director shall appoint and supervise the staff of the Secretariat, regulate their powers and duties and fix their remuneration in accordance with general standards to be established by the Council.  The general standards shall provide that:

        (a)      staff shall be appointed and retained, and their conditions of employment shall be determined, strictly on the basis of efficiency, competence and integrity;

        (b)      in appointing staff, the Executive Director shall take into account lists of candidates prepared by the Parties and by the Joint Public Advisory Committee;

        (c)      due regard shall be paid to the importance of recruiting an equitable proportion of the professional staff from among the nationals of each Party; and

        (d)      the Executive Director shall inform the Council of all appointments.

3.      The Council may decide, by a two-thirds vote, to reject any appointment that does not meet the general standards.  Any such decision shall be made and held in confidence.

4.      In the performance of their duties, the Executive Director and the staff shall not seek or receive instructions from any government or any other authority external to the Council.  Each Party shall respect the international character of the responsibilities of the Executive Director and the staff and shall not seek to influence them in the discharge of their responsibilities.

5.      The Secretariat shall provide technical, administrative and operational support to the Council and to committees and groups established by the Council, and such other support as the Council may direct.

6.      The Executive Director shall submit for the approval of the Council the annual program and budget of the Commission, including provision for proposed cooperative activities and for the Secretariat to respond to contingencies.

7.      The Secretariat shall, as appropriate, provide the Parties and the public information on where they may receive technical advice and expertise with respect to environmental matters.

8.      The Secretariat shall safeguard:

      (a)      from disclosure information it receives that could identify a non-governmental organization or person making a submission if the person or organization so requests or the Secretariat otherwise considers it appropriate; and

      (b)      from public disclosure any information it receives from any non-governmental organization or person where the information is designated by that non-governmental organization or person as confidential or proprietary.

**Article 12:      Annual Report of the Commission**

1.      The Secretariat shall prepare an annual report of the Commission in accordance with instructions from the Council.  The Secretariat shall submit a draft of the report for review by the Council.  The final report shall be released publicly.

2.      The report shall cover:

      (a)      activities and expenses of the Commission during the previous year;

      (b)      the approved program and budget of the Commission for the subsequent year;

      (c)      the actions taken by each Party in connection with its obligations under this Agreement, including data on the Party's environmental enforcement activities;

      (d)      relevant views and information submitted by non-governmental organizations and persons, including summary data regarding submissions, and any other relevant information the Council deems appropriate;

      (e)      recommendations made on any matter within the scope of this Agreement; and

      (f)      any other matter that the Council instructs the Secretariat to include.

3.     The report shall periodically address the state of the environment in the territories of the Parties.

## Article 13:     Secretariat Reports

1.     The Secretariat may prepare a report for the Council on any matter within the scope of the annual program.  Should the Secretariat wish to prepare a report on any other environmental matter related to the cooperative functions of this Agreement, it shall notify the Council and may proceed unless, within 30 days of such notification, the Council objects by a two-thirds vote to the preparation of the report.  Such other environmental matters shall not include issues related to whether a Party has failed to enforce its environmental laws and regulations.  Where the Secretariat does not have specific expertise in the matter under review, it shall obtain the assistance of one or more independent experts of recognized experience in the matter to assist in the preparation of the report.

2.     In preparing such a report, the Secretariat may draw upon any relevant technical, scientific or other information, including information:

        (a)     that is publicly available;

        (b)     submitted by interested non-governmental organizations and persons;

        (c)     submitted by the Joint Public Advisory Committee;

        (d)     furnished by a Party;

        (e)     gathered through public consultations, such as conferences, seminars and symposia; or

        (f)     developed by the Secretariat, or by independent experts engaged pursuant to paragraph 1.

3.     The Secretariat shall submit its report to the Council, which shall make it publicly available, normally within 60 days following its submission, unless the Council otherwise decides.

**Article 14:     Submissions on Enforcement Matters**

1.      The Secretariat may consider a submission from any non-governmental organization or person asserting that a Party is failing to effectively enforce its environmental law, if the Secretariat finds that the submission:

      (a)      is in writing in a language designated by that Party in a notification to the Secretariat;

      (b)      clearly identifies the person or organization making the submission;

      (c)      provides sufficient information to allow the Secretariat to review the submission, including any documentary evidence on which the submission may be based;

      (d)      appears to be aimed at promoting enforcement rather than at harassing industry;

      (e)      indicates that the matter has been communicated in writing to the relevant authorities of the Party and indicates the Party's response, if any; and

      (f)      is filed by a person or organization residing or established in the territory of a Party.

2.      Where the Secretariat determines that a submission meets the criteria set out in paragraph 1, the Secretariat shall determine whether the submission merits requesting a response from the Party.  In deciding whether to request a response, the Secretariat shall be guided by whether:

      (a)      the submission alleges harm to the person or organization making the submission;

      (b)      the submission, alone or in combination with other submissions, raises matters whose further study in this process would advance the goals of this Agreement;

      (c)      private remedies available under the Party's law have been pursued; and

      (d)      the submission is drawn exclusively from mass media reports.

Where the Secretariat makes such a request, it shall forward to the Party a copy of the submission and any supporting information provided with the submission.

3.      The Party shall advise the Secretariat within 30 days or, in exceptional circumstances and on notification to the Secretariat, within 60 days of delivery of the request:

      (a)      whether the matter is the subject of a pending judicial or administrative proceeding, in which case the Secretariat shall proceed no further; and

      (b)      of any other information that the Party wishes to submit, such as

      i)        whether the matter was previously the subject of a judicial or administrative proceeding, and

      ii)       whether private remedies in connection with the matter are available to the person or organization making the submission and whether they have been pursued.

## Article 15:     Factual Record

1.     If the Secretariat considers that the submission, in the light of any response provided by the Party, warrants developing a factual record, the Secretariat shall so inform the Council and provide its reasons.

2.     The Secretariat shall prepare a factual record if the Council, by a two-thirds vote, instructs it to do so.

3.     The preparation of a factual record by the Secretariat pursuant to this Article shall be without prejudice to any further steps that may be taken with respect to any submission.

4.     In preparing a factual record, the Secretariat shall consider any information furnished by a Party and may consider any relevant technical, scientific or other information:

      (a)     that is publicly available;

      (b)     submitted by interested non-governmental organizations or persons;

      (c)     submitted by the Joint Public Advisory Committee; or

      (d)     developed by the Secretariat or by independent experts.

5.     The Secretariat shall submit a draft factual record to the Council.  Any Party may provide comments on the accuracy of the draft within 45 days thereafter.

6.     The Secretariat shall incorporate, as appropriate, any such comments in the final factual record and submit it to the Council.

7.     The Council may, by a two-thirds vote, make the final factual record publicly available, normally within 60 days following its submission.

**Section C:      Advisory Committees**

**Article 16:      Joint Public Advisory Committee**

1.      The Joint Public Advisory Committee shall comprise 15 members, unless the Council otherwise decides.  Each Party or, if the Party so decides, its National Advisory Committee convened under Article 17, shall appoint an equal number of members.

2.      The Council shall establish the rules of procedure for the Joint Public Advisory Committee, which shall choose its own chair.

3.      The Joint Public Advisory Committee shall convene at least once a year at the time of the regular session of the Council and at such other times as the Council, or the Committee's chair with the consent of a majority of its members, may decide.

4.      The Joint Public Advisory Committee may provide advice to the Council on any matter within the scope of this Agreement, including on any documents provided to it under paragraph 6, and on the implementation and further elaboration of this Agreement, and may perform such other functions as the Council may direct.

5.      The Joint Public Advisory Committee may provide relevant technical, scientific or other information to the Secretariat, including for purposes of developing a factual record under Article 15.  The Secretariat shall forward to the Council copies of any such information.

6.      The Secretariat shall provide to the Joint Public Advisory Committee at the time they are submitted to the Council copies of the proposed annual program and budget of the Commission, the draft annual report, and any report the Secretariat prepares pursuant to Article 13.

7.      The Council may, by a two-thirds vote, make a factual record available to the Joint Public Advisory Committee.


**Article 17:      National Advisory Committees**

        Each Party may convene a national advisory committee, comprising members of its public, including representatives of non-governmental organizations and persons, to advise it on the implementation and further elaboration of this Agreement.


**Article 18:      Governmental Committees**

        Each Party may convene a governmental committee, which may comprise or include representatives of federal and state or provincial governments, to advise it on the implementation and further elaboration of this Agreement.

**Section D:**     **Official Languages**

**Article 19:**     **Official Languages**

The official languages of the Commission shall be English, French and Spanish.  All annual reports under Article 12, reports submitted to the Council under Article 13, factual records submitted to the Council under Article 15(6) and panel reports under Part Five shall be available in each official language at the time they are made public.  The Council shall establish rules and procedures regarding interpretation and translation.

# PART FOUR

# COOPERATION AND PROVISION OF INFORMATION

**Article 20:**     **Cooperation**

1.     The Parties shall at all times endeavor to agree on the interpretation and application of this Agreement, and shall make every attempt through cooperation and consultations to resolve any matter that might affect its operation.

2.     To the maximum extent possible, each Party shall notify any other Party with an interest in the matter of any proposed or actual environmental measure that the Party considers might materially affect the operation of this Agreement or otherwise substantially affect that other Party's interests under this Agreement.

3.     On request of any other Party, a Party shall promptly provide information and respond to questions pertaining to any such actual or proposed environmental measure, whether or not that other Party has been previously notified of that measure.

4.     Any Party may notify any other Party of, and provide to that Party, any credible information regarding possible violations of its environmental law, specific and sufficient to allow the other Party to inquire into the matter.  The notified Party shall take appropriate steps in accordance with its law to so inquire and to respond to the other Party.

**Article 21:**     **Provision of Information**

1.     On request of the Council or the Secretariat, each Party shall, in accordance with its law, provide such information as the Council or the Secretariat may require, including:

(a)     promptly making available any information in its possession required for the preparation of a report or factual record, including compliance and enforcement data; and

(b)     taking all reasonable steps to make available any other such information requested.

2.      If a Party considers that a request for information from the Secretariat is excessive or otherwise unduly burdensome, it may so notify the Council. The Secretariat shall revise the scope of its request to comply with any limitations established by the Council by a two-thirds vote.

3.      If a Party does not make available information requested by the Secretariat, as may be limited pursuant to paragraph 2, it shall promptly advise the Secretariat of its reasons in writing.

# PART FIVE

# CONSULTATION AND RESOLUTION OF DISPUTES

**Article 22:     Consultations**

1.      Any Party may request in writing consultations with any other Party regarding whether there has been a persistent pattern of failure by that other Party to effectively enforce its environmental law.

2.      The requesting Party shall deliver the request to the other Parties and to the Secretariat.

3.      Unless the Council otherwise provides in its rules and procedures established under Article 9(2), a third Party that considers it has a substantial interest in the matter shall be entitled to participate in the consultations on delivery of written notice to the other Parties and to the Secretariat.

4.      The consulting Parties shall make every attempt to arrive at a mutually satisfactory resolution of the matter through consultations under this Article.

**Article 23:     Initiation of Procedures**

1.      If the consulting Parties fail to resolve the matter pursuant to Article 22 within 60 days of delivery of a request for consultations, or such other period as the consulting Parties may agree, any such Party may request in writing a special session of the Council.

2.      The requesting Party shall state in the request the matter complained of and shall deliver the request to the other Parties and to the Secretariat.

3.      Unless it decides otherwise, the Council shall convene within 20 days of delivery of the request and shall endeavor to resolve the dispute promptly.

4.      The Council may:

(a)      call on such technical advisers or create such working groups or expert groups as it deems necessary,

(b)      have recourse to good offices, conciliation, mediation or such other dispute resolution procedures, or

(c)      make recommendations,

as may assist the consulting Parties to reach a mutually satisfactory resolution of the dispute. Any such recommendations shall be made public if the Council, by a two-thirds vote, so decides.

5.      Where the Council decides that a matter is more properly covered by another agreement or arrangement to which the consulting Parties are party, it shall refer the matter to those Parties for appropriate action in accordance with such other agreement or arrangement.

## Article 24:      Request for an Arbitral Panel

1.      If the matter has not been resolved within 60 days after the Council has convened pursuant to Article 23, the Council shall, on the written request of any consulting Party and by a two-thirds vote, convene an arbitral panel to consider the matter where the alleged persistent pattern of failure by the Party complained against to effectively enforce its environmental law relates to a situation involving workplaces, firms, companies or sectors that produce goods or provide services:

(a)      traded between the territories of the Parties; or

(b)      that compete, in the territory of the Party complained against, with goods or services produced or provided by persons of another Party.

2.      A third Party that considers it has a substantial interest in the matter shall be entitled to join as a complaining Party on delivery of written notice of its intention to participate to the disputing Parties and the Secretariat.  The notice shall be delivered at the earliest possible time, and in any event no later than seven days after the date of the vote of the Council to convene a panel.

3.      Unless otherwise agreed by the disputing Parties, the panel shall be established and perform its functions in a manner consistent with the provisions of this Part.

## Article 25:      Roster

1.      The Council shall establish and maintain a roster of up to 45 individuals who are willing and able to serve as panelists.  The roster members shall be appointed by consensus for terms of three years, and may be reappointed.

2.      Roster members shall:

    (a)      have expertise or experience in environmental law or its enforcement, or in the resolution of disputes arising under international agreements, or other relevant scientific, technical or professional expertise or experience;

    (b)      be chosen strictly on the basis of objectivity, reliability and sound judgment;

    (c)      be independent of, and not be affiliated with or take instructions from, any Party, the Secretariat or the Joint Public Advisory Committee; and

    (d)      comply with a code of conduct to be established by the Council.

**Article 26:      Qualifications of Panelists**

1.      All panelists shall meet the qualifications set out in Article 25(2).

2.      Individuals may not serve as panelists for a dispute in which:

    (a)      they have participated pursuant to Article 23(4); or

    (b)      they have, or a person or organization with which they are affiliated has, an interest, as set out in the code of conduct established under Article 25(2)(d).

**Article 27:      Panel Selection**

1.      Where there are two disputing Parties, the following procedures shall apply:

    (a)      The panel shall comprise five members.

    (b)      The disputing Parties shall endeavor to agree on the chair of the panel within 15 days after the Council votes to convene the panel.  If the disputing Parties are unable to agree on the chair within this period, the disputing Party chosen by lot shall select within five days a chair who is not a citizen of that Party.

    (c)      Within 15 days of selection of the chair, each disputing Party shall select two panelists who are citizens of the other disputing Party.

(d)  If a disputing Party fails to select its panelists within such period, such panelists shall be selected by lot from among the roster members who are citizens of the other disputing Party.

2.  Where there are more than two disputing Parties, the following procedures shall apply:

(a)  The panel shall comprise five members.

(b)  The disputing Parties shall endeavor to agree on the chair of the panel within 15 days after the Council votes to convene the panel.  If the disputing Parties are unable to agree on the chair within this period, the Party or Parties on the side of the dispute chosen by lot shall select within 10 days a chair who is not a citizen of such Party or Parties.

(c)  Within 30 days of selection of the chair, the Party complained against shall select two panelists, one of whom is a citizen of a complaining Party, and the other of whom is a citizen of another complaining Party. The complaining Parties shall select two panelists who are citizens of the Party complained against.

(d)  If any disputing Party fails to select a panelist within such a period, such panelist shall be selected by lot in accordance with the citizenship criteria of subparagraph (c).

3.  Panelists shall normally be selected from the roster.  Any disputing Party may exercise a peremptory challenge against any individual not on the roster who is proposed as a panelist by a disputing Party within 30 days after the individual has been proposed.

4.  If a disputing Party believes that a panelist is in violation of the code of conduct, the disputing Parties shall consult and, if they agree, the panelist shall be removed and a new panelist shall be selected in accordance with this Article.

**Article 28:    Rules of Procedure**

1.  The Council shall establish Model Rules of Procedure.  The procedures shall provide:

(a)  a right to at least one hearing before the panel;

(b)  the opportunity to make initial and rebuttal written submissions; and

(c)  that no panel may disclose which panelists are associated with majority or minority opinions.

2.  Unless the disputing Parties otherwise agree, panels convened under this Part shall be established and conduct their proceedings in accordance with the Model Rules of Procedure.

3.      Unless the disputing Parties otherwise agree within 20 days after the Council votes to convene the panel, the terms of reference shall be:

> "To examine, in light of the relevant provisions of the Agreement, including those contained in Part Five, whether there has been a persistent pattern of failure by the Party complained against to effectively enforce its environmental law, and to make findings, determinations and recommendations in accordance with Article 31(2)."

## Article 29:      Third Party Participation

A party that is not a disputing Party, on delivery of a written notice to the disputing Parties and to the Secretariat, shall be entitled to attend all hearings, to make written and oral submissions to the panel and to receive written submissions of the disputing Parties.

## Article 30:      Role of Experts

On request of a disputing Party, or on its own initiative, the panel may seek information and technical advice from any person or body that it deems appropriate, provided that the disputing Parties so agree and subject to such terms and conditions as such Parties may agree.

## Article 31:      Initial Report

1.      Unless the disputing Parties otherwise agree, the panel shall base its report on the submissions and arguments of the Parties and on any information before it pursuant to Article 30.

2.      Unless the disputing Parties otherwise agree, the panel shall, within 180 days after the last panelist is selected, present to the disputing Parties an initial report containing:

(a)      findings of fact;

(b)      its determination as to whether there has been a persistent pattern of failure by the Party complained against to effectively enforce its environmental law, or any other determination requested in the terms of reference; and

(c)      in the event the panel makes an affirmative determination under subparagraph (b), its recommendations, if any, for the resolution of the dispute, which normally shall be that the Party complained against adopt and implement an action plan sufficient to remedy the pattern of non-enforcement.

3.      Panelists may furnish separate opinions on matters not unanimously agreed.

4.      A disputing party may submit written comments to the panel on its initial report within 30 days of presentation of the report.

5.      In such an event, and after considering such written comments, the panel, on its own initiative or on the request of any disputing Party, may:

(a)      request the views of any participating Party;

(b)      reconsider its report; and

(c)      make any further examination that it considers appropriate.

## Article 32:      Final Report

1.      The panel shall present to the disputing Parties a final report, including any separate opinions on matters not unanimously agreed, within 60 days of presentation of the initial report, unless the disputing Parties otherwise agree.

2.      The disputing Parties shall transmit to the Council the final report of the panel, as well as any written views that a disputing Party desires to be appended, on a confidential basis within 15 days after it is presented to them.

3.      The final report of the panel shall be published five days after it is transmitted to the Council.

## Article 33:      Implementation of Final Report

If, in its final report, a panel determines that there has been a persistent pattern of failure by the Party complained against to effectively enforce its environmental law, the disputing Parties may agree on a mutually satisfactory action plan, which normally shall conform with the determinations and recommendations of the panel.  The disputing Parties shall promptly notify the Secretariat and the Council of any agreed resolution of the dispute.

**Article 34:      Review of Implementation**

1.      If, in its final report, a panel determines that there has been a persistent pattern of failure by the Party complained against to effectively enforce its environmental law, and:

      (a)      the disputing Parties have not agreed on an action plan under Article 33 within 60 days of the date of the final report, or

      (b)      the disputing Parties cannot agree on whether the Party complained against is fully implementing

            (i)      an action plan agreed under Article 33,

            (ii)      an action plan deemed to have been established by a panel under paragraph 2, or

            (iii)      an action plan approved or established by a panel under paragraph 4,

any disputing Party may request that the panel be reconvened.  The requesting Party shall deliver the request in writing to the other Parties and to the Secretariat.  The Council shall reconvene the panel on delivery of the request to the Secretariat.

2.      No Party may make a request under paragraph 1(a) earlier than 60 days, or later than 120 days, after the date of the final report.  If the disputing Parties have not agreed to an action plan and if no request was made under paragraph l(a), the last action plan, if any, submitted by the Party complained against to the complaining Party or Parties within 60 days of the date of the final report, or such other period as the disputing Parties may agree, shall be deemed to have been established by the panel 120 days after the date of the final report.

3.      A request under paragraph 1(b) may be made no earlier than 180 days after an action plan has been:

      (a)      agreed under Article 33;

      (b)      deemed to have been established by a panel under paragraph 2; or

      (c)      approved or established by a panel under paragraph 4;

and only during the term of any such action plan.

4.      Where a panel has been reconvened under paragraph 1(a), it:

      (a)      shall determine whether any action plan proposed by the Party complained against is sufficient to remedy the pattern of non-enforcement and

            (i)      if so, shall approve the plan, or

        (ii)     if not, shall establish such a plan consistent with the law of the Party complained against, and

   (b)     may, where warranted, impose a monetary enforcement assessment in accordance with Annex 34,

within 90 days after the panel has been reconvened or such other period as the disputing Parties may agree.

5.     Where a panel has been reconvened under paragraph 1(b), it shall determine either that:

   (a)     the Party complained against is fully implementing the action plan, in which case the panel may not impose a monetary enforcement assessment, or

   (b)     the Party complained against is not fully implementing the action plan, in which case the panel shall impose a monetary enforcement assessment in accordance with Annex 34,

within 60 days after it has been reconvened or such other period as the disputing Parties may agree.

6.     A panel reconvened under this Article shall provide that the Party complained against shall fully implement any action plan referred to in paragraph 4(a)(ii) or 5(b), and pay any monetary enforcement assessment imposed under paragraph 4(b) or 5(b), and any such provision shall be final.


## Article 35:    Further Proceeding

A complaining Party may, at any time beginning 180 days after a panel determination under Article 34(5)(b), request in writing that a panel be reconvened to determine whether the Party complained against is fully implementing the action plan.  On delivery of the request to the other Parties and the Secretariat, the Council shall reconvene the panel.  The panel shall make the determination within 60 days after it has been reconvened or such other period as the disputing Parties may agree.


## Article 36:    Suspension of Benefits

1.     Subject to Annex 36A, where a Party fails to pay a monetary enforcement assessment within 180 days after it is imposed by a panel:

   (a)     under Article 34(4)(b), or

(b)     under Article 34(5)(b), except where benefits may be suspended under paragraph 2(a),

any complaining Party or Parties may suspend, in accordance with Annex 36B, the application to the Party complained against of NAFTA benefits in an amount no greater than that sufficient to collect the monetary enforcement assessment.

2.      Subject to Annex 36A, where a panel has made a determination under Article 34(5)(b) and the panel:

(a)     has previously imposed a monetary enforcement assessment under Article 34 (4)(b) or established an action plan under Article 34(4)(a)(ii); or

(b)     has subsequently determined under Article 35 that a Party is not fully implementing an action plan;

the complaining Party or Parties may, in accordance with Annex 36B, suspend annually the application to the Party complained against of NAFTA benefits in an amount no greater than the monetary enforcement assessment imposed by the panel under Article 34(5)(b).

3.      Where more than one complaining Party suspends benefits under paragraph 1 or 2, the combined suspension shall be no greater than the amount of the monetary enforcement assessment.

4.      Where a Party has suspended benefits under paragraph 1 or 2, the Council shall, on the delivery of a written request by the Party complained against to the other Parties and the Secretariat, reconvene the panel to determine whether the monetary enforcement assessment has been paid or collected, or whether the Party complained against is fully implementing the action plan, as the case may be. The panel shall submit its report within 45 days after it has been reconvened.  If the panel determines that the assessment has been paid or collected, or that the Party complained against is fully implementing the action plan, the suspension of benefits under paragraph 1 or 2, as the case may be, shall be terminated.

5.      On the written request of the Party complained against, delivered to the other Parties and the Secretariat, the Council shall reconvene the panel to determine whether the suspension of benefits by the complaining Party or Parties pursuant to paragraph 1 or 2 is manifestly excessive. Within 45 days of the request, the panel shall present a report to the disputing Parties containing its determination.

# PART SIX

# GENERAL PROVISIONS

**Article 37:     Enforcement Principle**

Nothing in this Agreement shall be construed to empower a Party's authorities to undertake environmental law enforcement activities in the territory of another Party.

**Article 38:     Private Rights**

No Party may provide for a right of action under its law against any other Party on the ground that another Party has acted in a manner inconsistent with this Agreement.

**Article 39:     Protection of Information**

1.     Nothing in this Agreement shall be construed to require a Party to make available or allow access to information:

   (a)     the disclosure of which would impede its environmental law enforcement; or

   (b)     that is protected from disclosure by its law governing business or proprietary information, personal privacy or the confidentiality of governmental decision making.

2.     If a Party provides confidential or proprietary information to another Party, the Council, the Secretariat or the Joint Public Advisory Committee, the recipient shall treat the information on the same basis as the Party providing the information.

3.     Confidential or proprietary information provided by a Party to a panel under this Agreement shall be treated in accordance with the rules of procedure established under Article 28.

**Article 40:     Relation to Other Environmental Agreements**

Nothing in this Agreement shall be construed to affect the existing rights and obligations of the Parties under other international environmental agreements, including conservation agreements, to which such Parties are party.

**Article 41:     Extent of Obligations**

Annex 41 applies to the Parties specified in that Annex.

**Article 42:     National Security**

Nothing in this Agreement shall be construed:

(a)     to require any Party to make available or provide access to information the disclosure of which it determines to be contrary to its essential security interests; or

(b)     to prevent any Party from taking any actions that it considers necessary for the protection of its essential security interests relating to

    (i)     arms, ammunition and implements of war, or

    (ii)     the implementation of national policies or international agreements respecting the non-proliferation of nuclear weapons or other nuclear explosive devices.

**Article 43:     Funding of the Commission**

Each Party shall contribute an equal share of the annual budget of the Commission, subject to the availability of appropriated funds in accordance with the Party's legal procedures. No Party shall be obligated to pay more than any other Party in respect of an annual budget.

**Article 44:     Privileges and Immunities**

The Executive Director and staff of the Secretariat shall enjoy in the territory of each Party such privileges and immunities as are necessary for the exercise of their functions.

**Article 45:     Definitions**

1.     For purposes of this Agreement:

A Party has not failed to **"effectively enforce its environmental law"** or to comply with Article 5(1) in a particular case where the action or inaction in question by agencies or officials of that Party:

(a)     reflects a reasonable exercise of their discretion in respect of investigatory, prosecutorial, regulatory or compliance matters; or

(b)    results from *bona fide* decisions to allocate resources to enforcement in respect of other environmental matters determined to have higher priorities;

**"non-governmental organization"** means any scientific, professional, business, non-profit, or public interest organization or association which is neither affiliated with, nor under the direction of, a government;

**"persistent pattern"** means a sustained or recurring course of action or inaction beginning after the date of entry into force of this Agreement;

**"province"** means a province of Canada, and includes the Yukon Territory and the Northwest Territories and their successors; and

**"territory"** means for a Party the territory of that Party as set out in Annex 45.

2.    For purposes of Article 14(l) and Part Five:

(a)    **"environmental law"** means any statute or regulation of a Party, or provision thereof, the primary purpose of which is the protection of the environment, or the prevention of a danger to human life or health, through

(i)    the prevention, abatement or control of the release, discharge, or emission of pollutants or environmental contaminants,

(ii)    the control of environmentally hazardous or toxic chemicals, substances, materials and wastes, and the dissemination of information related thereto, or

(iii)    the protection of wild flora or fauna, including endangered species, their habitat, and specially protected natural areas

in the Party's territory, but does not include any statute or regulation, or provision thereof, directly related to worker safety or health.

(b)    For greater certainty, the term **"environmental law"** does not include any statute or regulation, or provision thereof, the primary purpose of which is managing the commercial harvest or exploitation, or subsistence or aboriginal harvesting, of natural resources.

(c)    The primary purpose of a particular statutory or regulatory provision for purposes of subparagraphs (a) and (b) shall be determined by reference to its primary purpose, rather than to the primary purpose of the statute or regulation of which it is part.

3.    For purposes of Article 14(3), **"judicial or administrative proceeding"** means:

(a)     a domestic judicial, quasi-judicial or administrative action pursued by the Party in a timely fashion and in accordance with its law.  Such actions comprise: mediation; arbitration; the process of issuing a license, permit, or authorization; seeking an assurance of voluntary compliance or a compliance agreement; seeking sanctions or remedies in an administrative or judicial forum; and the process of issuing an administrative order; and

(b)     an international dispute resolution proceeding to which the Party is party.

# PART SEVEN

# FINAL PROVISIONS

**Article 46:     Annexes**

The Annexes to this Agreement constitute an integral part of the Agreement.

**Article 47:     Entry into Force**

This Agreement shall enter into force on January 1, 1994, immediately after entry into force of the NAFTA, on an exchange of written notifications certifying the completion of necessary legal procedures.

**Article 48:     Amendments**

1.     The Parties may agree on any modification of or addition to this Agreement.

2.     When so agreed, and approved in accordance with the applicable legal procedures of each Party, a modification or addition shall constitute an integral part of this Agreement.

**Article 49:     Accession**

Any country or group of countries may accede to this Agreement subject to such terms and conditions as may be agreed between such country or countries and the Council and following approval in accordance with the applicable legal procedures of each country.

**Article 50:     Withdrawal**

A Party may withdraw from this Agreement six months after it provides written notice of withdrawal to the other Parties.  If a Party withdraws, the Agreement shall remain in force for the remaining Parties.

**Article 51:    Authentic Texts**

The English, French, and Spanish texts of this Agreement are equally authentic.

**IN WITNESS WHEREOF,** the undersigned, being duly authorized by the respective Governments, have signed this Agreement.

**ANNEX 34**

**MONETARY ENFORCEMENT ASSESSMENTS**

1.      For the first year after the date of entry into force of this Agreement, any monetary enforcement assessment shall be no greater than 20 million dollars (U.S.) or its equivalent in the currency of the Party complained against.  Thereafter, any monetary enforcement assessment shall be no greater than .007 percent of total trade in goods between the Parties during the most recent year for which data are available.

2.      In determining the amount of the assessment, the panel shall take into account:

      (a)      the pervasiveness and duration of the Party's persistent pattern of failure to effectively enforce its environmental law;

      (b)      the level of enforcement that could reasonably be expected of a Party given its resource constraints;

      (c)      the reasons, if any, provided by the Party for not fully implementing an action plan;

      (d)      efforts made by the Party to begin remedying the pattern of non-enforcement after the final report of the panel; and

      (e)      any other relevant factors.

3.      All monetary enforcement assessments shall be paid in the currency of the Party complained against into a fund established in the name of the Commission by the Council and shall be expended at the direction of the Council to improve or enhance the environment or environmental law enforcement in the Party complained against, consistent with its law.

## ANNEX 36A

## CANADIAN DOMESTIC ENFORCEMENT AND COLLECTION

1.      For the purposes of this Annex, **"panel determination"** means:

    (a)      a determination by a panel under Article 34(4)(b) or 5(b) that provides that Canada shall pay a monetary enforcement assessment; and

    (b)      a determination by a panel under Article 34(5)(b) that provides that Canada shall fully implement an action plan where the panel:

        (i)      has previously established an action plan under Article 34(4)(a)(ii) or imposed a monetary enforcement assessment under Article 34(4)(b); or

        (ii)      has subsequently determined under Article 35 that Canada is not fully implementing an action plan.

2.      Canada shall adopt and maintain procedures that provide that:

    (a)      subject to subparagraph (b), the Commission, at the request of a complaining Party, may in its own name file in a court of competent jurisdiction a certified copy of a panel determination;

    (b)      the Commission may file in court a panel determination that is a panel determination described in paragraph 1(a) only if Canada has failed to comply with the determination within 180 days of when the determination was made;

    (c)      when filed, the panel determination, for purposes of enforcement, shall become an order of the court;

    (d)      the Commission may take proceedings for enforcement of a panel determination that is made an order of the court, in that court, against the person against whom the panel determination is addressed in accordance with paragraph 6 of Annex 41;

    (e)      proceedings to enforce a panel determination that has been made an order of the court shall be conducted by way of summary proceedings;

    (f)      in proceedings to enforce a panel determination that is a panel determination described in paragraph 1(b) and that has been made an order of the court, the court shall promptly refer any question of fact or any question of interpretation of the panel determination to the panel that made the panel determination, and the decision of the panel shall be binding on the court;

(g)     a panel determination that has been made an order of the court shall not be subject to domestic review or appeal; and

(h)     an order made by the court in proceedings to enforce a panel determination that has been made an order of the court shall not be subject to review or appeal.

3.      Where Canada is the Party complained against, the procedures adopted and maintained by Canada under this Annex shall apply and the procedures set out in Article 36 shall not apply.

4.      Any change by Canada to the procedures adopted and maintained by Canada under this Annex that have the effect of undermining the provisions of this Annex shall be considered a breach of this Agreement.

**ANNEX 36B**

**SUSPENSION OF BENEFITS**

1.      Where a complaining Party suspends NAFTA tariff benefits in accordance with this Agreement, the Party may increase the rates of duty on originating goods of the Party complained against to levels not to exceed the lesser of:

(a)      the rate that was applicable to those goods immediately prior to the date of entry into force of the NAFTA, and

(b)      the Most-Favored-Nation rate applicable to those goods on the date the Party suspends such benefits,

and such increase may be applied only for such time as is necessary to collect, through such increase, the monetary enforcement assessment.

2.      In considering what tariff or other benefits to suspend pursuant to Article 36(l) or (2):

(a)      a complaining Party shall first seek to suspend benefits in the same sector or sectors as that in respect of which there has been a persistent pattern of failure by the Party complained against to effectively enforce its environmental law; and

(b)      a complaining Party that considers it is not practicable or effective to suspend benefits in the same sector or sectors may suspend benefits in other sectors.

## ANNEX 41

## EXTENT OF OBLIGATIONS

1.      On the date of signature of this Agreement, or of the exchange of written notifications under Article 47, Canada shall set out in a declaration a list of any provinces for which Canada is to be bound in respect of matters within their jurisdiction.  The declaration shall be effective on delivery to the other Parties, and shall carry no implication as to the internal distribution of powers within Canada.  Canada shall notify the other Parties six months in advance of any modification to its declaration.

2.      When considering whether to instruct the Secretariat to prepare a factual record pursuant to Article 15, the Council shall take into account whether the submission was made by a non-governmental organization or enterprise incorporated or otherwise organized under the laws of a province included in the declaration made under paragraph 1.

3.      Canada may not request consultations under Article 22 or a Council meeting under Article 23 or request the establishment of a panel or join as a complaining Party under Article 24 against another Party at the instance, or primarily for the benefit, of any government of a province not included in the declaration made under paragraph 1.

4.      Canada may not request a Council meeting under Article 23, or request the establishment of a panel or join as a complaining Party under Article 24 concerning whether there has been a persistent pattern of failure by another Party to effectively enforce its environmental law, unless Canada states in writing that the matter would be under federal jurisdiction if it were to arise within the territory of Canada, or:

(a)      Canada states in writing that the matter would be under provincial jurisdiction if it were to arise within the territory of Canada; and

(b)      the provinces included in the declaration account for at least 55 percent of Canada's Gross Domestic Product (GDP) for the most recent year in which data are available, and

(c)      where the matter concerns a specific industry or sector, at least 55 percent of total Canadian production in that industry or sector is accounted for by the provinces included in the declaration for the most recent year in which data are available.

5.      No other Party may request a Council meeting under Article 23 or request the establishment of a panel or join as a complaining Party under Article 24 concerning whether there has been a persistent failure to effectively enforce an environmental law of a province unless that province is included in the declaration made under paragraph 1 and the requirements of subparagraphs 4(b) and (c) have been met.

6.      Canada shall, no later than the date on which an arbitral panel is convened pursuant to Article 24 respecting a matter within the scope of paragraph 5 of this Annex, notify in writing the complaining Parties and the Secretariat of whether any monetary enforcement assessment or action plan imposed by a panel under Article 34(4) or 34(5) against Canada shall be addressed to Her Majesty in right of Canada or Her Majesty in right of the province concerned.

7.      Canada shall use its best efforts to make this Agreement applicable to as many of its provinces as possible.

8.      Two years after the date of entry into force of this Agreement, the Council shall review the operation of this Annex and, in particular, shall consider whether the Parties should amend the thresholds established in paragraph 4.

**ANNEX 45**

**COUNTRY-SPECIFIC DEFINITIONS**

For purposes of this Agreement:

**"territory"** means:

    (a)    with respect to Canada, the territory to which its customs laws apply, including any areas beyond the territorial seas of Canada within which, in accordance with international law and its domestic law, Canada may exercise rights with respect to the seabed and subsoil and their natural resources;

    (b)    with respect to Mexico,

        (i)    the states of the Federation and the Federal District,

        (ii)    the islands, including the reefs and keys, in adjacent seas,

        (iii)    the islands of Guadalupe and Revillagigedo situated in the Pacific Ocean,

        (iv)    the continental shelf and the submarine shelf of such islands, keys and reefs,

        (v)    the waters of the territorial seas, in accordance with international law, and its interior maritime waters,

        (vi)    the space located above the national territory, in accordance with international law, and

        (vii)    any areas beyond the territorial seas of Mexico within which, in accordance with international law, including the *United Nations Convention on the Law of the Sea*, and its domestic law, Mexico may exercise rights with respect to the seabed and subsoil and their natural resources; and

    (c)    with respect to the United States,

        (i)    the customs territory of the United States, which includes the 50 states, the District of Columbia and Puerto Rico,

        (ii)    the foreign trade zones located in the United States and Puerto Rico, and

        (iii)    any areas beyond the territorial seas of the United States within which, in accordance with international law and its domestic law, the United States

may exercise rights with respect to the seabed and subsoil and their natural resources.