# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30921

United States Court of Appeals
Fifth Circuit
**FILED**
February 18, 2019
Lyle W. Cayce
Clerk

In Re: Deepwater Horizon
_____

JELP BARBER,

    Plaintiff - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY;  BP CORPORATION NORTH AMERICA, INCORPORATED; BP, P.L.C.; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.,

    Defendants – Appellees

_____

JOHNNY'S CLAMS, INCORPORATED

    Plaintiff – Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY;  BP CORPORATION NORTH AMERICA, INCORPORATED; BP, P.L.C.; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.,

    Defendants – Appellees

No. 17-30921

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-MD-2179

Before JOLLY, JONES, and DENNIS, Circuit Judges.

PER CURIAM:*

Jelp Barber and Johnny's Clams appeal the judgment of the district court dismissing their economic loss suits arising from the *Deepwater Horizon* oil spill. The district court dismissed the plaintiffs' claims after finding they had signed valid releases relinquishing their right to sue in exchange for final payments. We AFFIRM.

I.

The facts and procedural landscape of the litigation following the *Deepwater Horizon* oil spill are familiar to this court. Shortly after the spill, BP established the Gulf Coast Claims Facility (GCCF) to receive and pay claims arising from the spill. Initially, the GCCF paid "Emergency Advance Payments" (EAPs) to claimants for documented losses sustained up to six months after the spill. Claimants were not required to sign a release to receive EAPs. Later, EAPs were replaced by three types of claims: Interim Payment, Full Review Final Payment, and Quick Payment Final. Interim Payments compensated for past losses, could generally be claimed every three months, and did not require claimants to sign a release. Full Review Final Payment and Quick Payment Final were intended to compensate for all losses, past and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Case: 17-30921    Document: 00514913679    Page: 3    Date Filed: 04/12/2019
Case 2:10-md-02179-CJB-DPC   Document 25584-1   Filed 04/12/19   Page 3 of 5

No. 17-30921

future. Therefore, to obtain either type of final payment under the GCCF, the claimant had to sign a prospective release and covenant not to sue, waiving all rights against BP and other parties for claims arising from the oil spill. The GCCF ended in 2012 after BP agreed to a class-wide settlement, which excluded all individuals and entities who signed a release after making a claim with the GCCF.

Jelp Barber and Johnny's Clams both received payments under the GCCF. Jelp Barber received a $40,000 Emergency Advance Payment, a $5,000 Interim Payment, and a $25,000 Full Review Final Payment. Johnny's Clams, Inc., received a $21,700 Interim Payment and a $25,000 Quick Payment Final. To receive their final payments, both plaintiffs signed releases.

Barber and Johnny's Clams, along with more than 1,000 other plaintiffs, filed complaints against BP, Transocean, and Halliburton (collectively, BP) claiming compensable losses as a result of the spill. The district court issued a PTO ordering BP to file dispositive motions regarding the plaintiffs seeking recovery for economic and business losses who had signed releases. BP complied, identifying Barber and Johnny's Clams as two such parties. BP submitted a motion to dismiss, a memorandum in support of the motion, and exhibits showing that the releases had been signed. The district court granted BP's motion, and plaintiffs timely appealed.

II.

Plaintiffs argue that the district court converted BP's motion to dismiss into a motion for summary judgment by considering matters outside the pleadings, and the court's failure to provide the plaintiffs with notice or a reasonable opportunity to present evidence after the conversion was reversible error. A motion to dismiss is converted to a motion for summary judgment when "matters outside of the pleadings are presented to and not excluded by the court." FED. R. CIV. P. 12(d). When such a conversion takes place, the

3

Case: 17-30921     Document: 00514913679     Page: 4     Date Filed: 04/12/2019
Case 2:10-md-02179-CJB-DPC   Document 25584-1   Filed 04/12/19   Page 4 of 5

No. 17-30921

district court must provide the plaintiffs "a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). However, formal notice from the court is not required when the court "accept[s] for consideration on the motion matters outside the pleadings," as the introduction of such materials provides sufficient notice to the plaintiff that the court could treat the motion to dismiss as one for summary judgment. *See, e.g.*, *Isquith v. Middle S. Util.*, 847 F.2d 186, 195 (5th Cir. 1988).

Here, the district court's PTO explicitly invited BP to file dispositive motions based on signed releases, which BP filed, along with the releases attached as exhibits. The releases were matters outside the pleadings. *See* FED. R. CIV. P. 8(c)(1) (listing "release" as an affirmative defense); 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. 2018) (explaining that the existence of an affirmative defense, unless apparent on the face of the complaint, is a matter outside of the pleadings). The court's request to submit the releases and BP's compliance with that request, therefore, put the plaintiffs on notice that the court was considering matters outside the pleadings and could treat the motion as one for summary judgment. This gave the plaintiffs five months to present arguments and evidence to contest the validity of the releases. Because the plaintiffs had a reasonable opportunity to present material opposing the motion, the district court did not err.

## III.

Plaintiffs also argue the district court should have applied the "ward of admiralty" doctrine to their releases—which applies to "seamen" and places the burden on the defendant "to show that [a seaman's release] was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights." *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248 (1942). Alternatively, the plaintiffs argue that the district court erred

4

Case: 17-30921 Document: 00514913679 Page: 5 Date Filed: 04/12/2019
Case 2:10-md-02179-CJB-DPC Document 25584-1 Filed 04/12/19 Page 5 of 5

No. 17-30921

in finding the releases enforceable because they were signed under economic duress.

The district court explained that the "ward of admiralty" doctrine ordinarily applies "to a release of a seaman's claims against his employer and/or the vessel owner for personal injury or some benefit (e.g., wages) under the seaman's employment contract." Even assuming the plaintiffs qualified as seamen, the court reasoned, caselaw did not support applying "the *Garrett* standard to a release of a seaman's pure economic-loss tort claim resulting from an oil spill and asserted against a nonemployer, non-vessel owner, third-party." As for the economic duress argument, the district court found that plaintiffs' claims failed as a matter of law because they could not prove one of the elements of economic duress—that they had no reasonable alternative course of action other than signing the releases. *See Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1318 (S.D. Fla. 2016) (listing the elements of economic duress). "As provided under OPA and as noted in the release itself, there were at least two reasonable alternatives to accepting the Quick Payment Final: file a lawsuit in court or submit a claim to the Oil Spill Liability Trust Fund," which is administered by the Coast Guard's National Pollution Funds Center. We agree with the district court and AFFIRM for essentially the reasons stated by that court.

5