## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179<br><br>SECTION J |
| | * | |
| This Document relates to: | * * | JUDGE BARBIER |
| *All Remaining Cases in Pleading Bundle "B1"* | * * | MAGISTRATE JUDGE WILKINSON |

---

## BP'S REPLY IN SUPPORT OF ITS DISPOSITIVE MOTION
## AS TO THE B1 CLAIMS OF MEXICAN PLAINTIFFS

Pursuant to Pretrial Order No. 67 (Rec. Doc. 25370) ("PTO 67") and Order re Amendment to Briefing Schedule (Rec. Doc. 25492), BP[1] submits this omnibus reply in support of its Dispositive Motion (Rec. Doc. 25477) ("BP's Motion").  In its Motion, BP seeks dismissal of the B1 claims of 115 Mexican Plaintiffs for failure to state claims under the Oil Pollution Act of 1990 ("OPA") and maritime law.  BP further seeks dismissal of the B1 claims of 40 Toups Cooperatives (a subset of the 115) because they attempt to assert mass joinder claims in violation of PTO 60.[2]

Three groups of plaintiffs filed responses to BP's Motion: (1) the "Kuykendall Plaintiffs"—18 fishing industry or tourist cooperatives with principal places of business in Mexico, *see* Kuykendall Opp. (Rec. Doc. 25515) ("Kuykendall Opp.") at 2; (2) the "Toups Plaintiffs"—41 fishing cooperatives with principal places of business in Mexico, *see* Toups Opp. (Rec. Doc. 25523) ("Toups Opp.") at 2; and (3) the "Buzbee Plaintiffs"—56 fishermen, cooperatives, and

---

[1]  Capitalized terms not defined herein have the meanings set forth in BP's Motion.

[2]  One additional plaintiff represented by Toups, despite its name (Restaurante Veracruzano Tamaihua), also alleges it is a cooperative of fishermen.  (Case No. 16-cv-04775; Rec. Doc. 7) at ¶ 1.  This plaintiff asserts claims on behalf of its 56 member fishermen, alleging $10,867 in damages to each member.  (Case No. 16-cv-04775; Rec. Doc. 8-2) at 1.  Its claims should be dismissed for the same reasons as the 40 Toups Cooperatives' claims.

businesses with primary residences or principal places of business in Mexico, *see* Buzbee Opp. (Rec. Doc. 25533) ("Buzbee Opp.") at 1.  These groups of plaintiffs collectively or individually assert various responses to BP's Motion, each of which fails.  For the reasons discussed below and in BP's Motion, BP respectfully requests that the Court reject each of the Mexican Plaintiffs' arguments in opposition to BP's Motion and grant BP's Motion dismissing their claims.

**I.      The Mexican Plaintiffs cannot state a claim under OPA.**

Congress has limited the ability of "foreign claimants" to recover under OPA.  33 U.S.C. § 2707(a); *see* BP's Mem. in Support of BP's Mot. (Rec. Doc. 25477-1) at 2 ("BP's Mem.").  In addition to satisfying OPA's other requirements, a "foreign claimant shall demonstrate" that (1) "recovery is authorized by a treaty or executive agreement between the United States and the claimant's country," or (2) "the Secretary of State . . . has certified that the claimant's country provides a comparable remedy for United States claimants."   33 U.S.C. § 2707(a)(1).  It is undisputed that the Mexican Plaintiffs cannot satisfy the latter requirement, and none of the treaties they cite satisfies the former.  Despite their unsupported assertion to the contrary, the Mexican Plaintiffs are undoubtedly foreign claimants subject to OPA's foreign claimant provisions.

**A.      No treaty authorizes the Mexican Plaintiffs' recovery under OPA.**

None of the treaties cited by the Mexican Plaintiffs authorizes recovery of removal costs and damages resulting from an incident, as OPA requires.  They, at most, provide access to United States courts to enforce ***existing*** rights under United States law, but do not create new rights.

NAAEC.  The Mexican Plaintiffs argue that Articles 6(2) and (3) of the North American Agreement on Environmental Cooperation ("NAAEC") provide recovery under OPA.  On its face, Article 6 only applies to those persons who already have a "legally recognized interest" under United States law.  NAAEC, Can.-Mex.-U.S., Sept. 14, 1993, 32 I.L.M. 1480, at Art. 6(2) (1993). The question before the Court, however, is whether the Mexican Plaintiffs have such an interest.

It is circular (and irrelevant) to rely on Article 6, when Article 6 says nothing about requiring nations to grant legal rights to foreign claimants. To the extent that Article 6(3) grants the Mexican Plaintiffs any rights, those rights are limited to "su[ing] another person under [the United States'] jurisdiction for damages" only "in accordance with [the United States'] law." NAAEC, at Art. 6(3). Nothing in United States law allows Mexican nationals to sue under OPA, and the plaintiffs do not cite any case holding that NAAEC *of its own force* authorizes suit under this country's laws. Nor do the NAAEC "objectives" cited by the Mexican Plaintiffs authorize recoveries for removal costs and damages under OPA. *See, e.g.*, Toups Opp. at 6. NAAEC fails to satisfy OPA.

NAFTA. The Buzbee Plaintiffs cite the *preamble* to the North American Free Trade Agreement ("NAFTA") as evidence that NAFTA provides OPA remedies to Mexican plaintiffs. Buzbee Opp. at 8 (citing resolutions to "STRENGTHEN the development and enforcement of environmental laws and regulations; and UNDERTAKE each of the preceding in a manner consistent with environmental protections and conservation"). This preamble does not create substantive rights, and nothing in its general objectives authorizes recovery for removal costs and damages under OPA. *See In re Deepwater Horizon*, 835 F. Supp. 2d 175, 181-82 (E.D. La. 2011).

USMCA. The United States-Mexico-Canada Agreement ("USMCA") cannot satisfy OPA's foreign claimant recovery requirement because, as the plaintiffs admit,[3] it has not been implemented or ratified.[4] Unratified treaties "are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing'

---

[3]   Kuykendall Opp. at 3; Toups Opp. at 4. The Buzbee Plaintiffs do not argue that the USMCA applies.

[4]   "United States-Mexico-Canada Agreement," Office of the United States Trade Representative, https://ustr.gov/trade-agreements/free-trade-agreements/united-states-mexico-canada-agreement, last accessed on Apr. 8, 2019 ("While the United States, Mexico, and Canada have concluded a new, rebalanced agreement, NAFTA currently remains in effect. The USMCA can come into effect following the completion of TPA procedures, including a Congressional vote on an implementing bill.").

and is ratified on these terms." *Medellin v. Texas*, 552 U.S. 491, 505 (2008) (citation omitted). The USMCA therefore provides no OPA recovery right. *See In re Deepwater Horizon*, 835 F. Supp. 2d at 182 (unratified treaty "unhelpful" to Mexican States' OPA arguments).[5]

**B.    The Mexican Plaintiffs are foreign claimants.**

The Kuykendall and Toups Plaintiffs—cooperatives conducting business in Mexico—argue they are not subject to OPA's foreign claimant provisions because they are not foreign claimants. *See* Kuykendall Opp. at 6-7; Toups Opp. at 6-7. Tellingly, the Buzbee plaintiffs do not dispute that they are foreign claimants. A "foreign claimant" under OPA includes "a person residing in a foreign country." 33 U.S.C. § 2707(c). A "person" is any "individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." *Id.* at § 2701(27). The suggestion that Mexican cooperatives are not encompassed by this expansive definition is meritless, and the Kuykendall and Toups Plaintiffs notably cite no case to support their position. Indeed, under Mexico's General Law of Commercial Corporations, cooperatives (or "sociedades cooperativas") are one of the six types of business corporations, partnerships, and associations. Ley General de Sociedades Mercantiles, D.O., Aug. 4, 1934, as amended December 28, 1933, Art. 1. As cooperatives, the Kuykendall and Toups Plaintiffs fall squarely within OPA's definition of "persons" and, therefore, "foreign claimants."

**C.    Jurisdiction in the United States does not entitle the Mexican Plaintiffs to a cause of action within that jurisdiction.**

The Mexican Plaintiffs' contention that BP cannot argue both lack of jurisdiction in Mexico and no cause of action under United States law misses the mark. Underlying these plaintiffs' argument is the notion that some court, somewhere, must be able to hear their claims. But that is

---

[5]    Even if the USMCA were ratified, the plaintiffs do not explain why it should apply retroactively to save their claims. *See* Kuykendall Opp. at 4-5 n.1; Toups Opp. at 4-5 n.1. Nor does it authorize recovery under OPA.

not the law.  The Fifth Circuit has rejected the notion that all rights have remedies.  *See, e.g.*, *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 429 (5th Cir. 2006).  That rejection applies with even more force where, as here, the United States has not authorized suit by Mexican nationals.  The Mexican Plaintiffs' real complaint, thus, is with the law itself.  Simply put, OPA specifically does not create a cause of action for these plaintiffs, which decision also necessarily displaces any of their maritime law claims.  Plaintiffs' unhappiness with the statutory regime does not give a United States court license to create a cause of action that Congress did not.[6]

## II.    The Mexican Plaintiffs cannot assert maritime claims.

The Mexican Plaintiffs may not circumvent OPA's comprehensive recovery scheme by asserting maritime claims.  Moreover, their maritime claims fail under *Robins Dry Dock*.

### A.    OPA displaces maritime law recoveries by foreign claimants for an oil spill.

The Mexican Plaintiffs cannot assert maritime claims because their ability to recover under maritime law for alleged damages resulting from an OPA-covered "incident" are entirely displaced by OPA's explicit statutory requirements for foreign claimant recoveries.  This displacement applies regardless of which defendants are sued.

OPA "provides the exclusive source of law" for matters governed thereunder and, therefore, displaces maritime law.  *United States v. Am. Commercial Lines, L.L.C.*, 759 F.3d 420, 424 (5th Cir. 2014).  Building on the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, "OPA prescribes a supplemental, comprehensive federal plan for handling oil spill responses, allocating responsibility among participants, and prescribing reimbursement for cleanup costs and injuries to

---

[6]    BP's jurisdictional argument in Mexico was based on lack of harm in Mexico.  Under Mexican law, a plaintiff must submit sufficient evidence to prove its claims at the same time it files a complaint.  Because plaintiffs had not properly supported their complaint with evidence that the *Deepwater Horizon* incident had any effect on Mexican coasts or waters, BP argued there was no basis for jurisdiction by Mexican courts.  Ultimately, a Mexican appellate court ruled jurisdiction could not be decided separately from the merits, and that litigation is ongoing.

third parties." *Id.* at 424 (quotation marks omitted).  OPA's plain language governs—without qualification—the conditions under which foreign claimants may recover for an "incident" within OPA's scope.  *See* 33 U.S.C. § 2707(a) (describing requirements a "foreign claimant" must meet "to recover removal costs or damages resulting from an incident"); *id.* at § 2701(14) (an "incident" includes an occurrence resulting in the discharge of oil).  Accordingly, allowing foreign claimants to bring maritime claims would "frustrate the statutory scheme" by rendering OPA's explicit recovery requirements for foreign claimants entirely meaningless.  *See* BP's Mem. at 9-13.

Plaintiffs offer no argument against OPA displacement of foreign claimants' maritime law claims against an OPA "responsible party."  Instead, they argue that they can nonetheless assert maritime claims against unspecified "non-responsible parties," relying on this Court's 2011 decision.  *See, e.g.*, Toups Opp. at 8-9; *In re Deepwater Horizon*, 808 F. Supp. 2d 943, 961-62 (E.D. La. 2011) (finding no OPA displacement of maritime claims against non-responsible parties where claimants suffered physical damage to a proprietary interest or qualified for the commercial fisherman exception).  That ruling is inapplicable to foreign claimants like the Mexican Plaintiffs because, as discussed above, OPA explicitly governs such claimants' recovery rights—an issue not then before the Court.  Whether or not OPA displaces maritime law more broadly, it certainly displaces whether foreign plaintiffs may bring maritime claims arising from OPA-covered incidents.  After all, OPA *expressly* addresses this very issue.

Further, although the Court need not revisit the larger issue of whether OPA displaces all maritime claims for oil spill damages regardless of the party sued, BP respectfully submits that, under recent Fifth Circuit precedent, OPA does displace such claims.  OPA's liability and recovery scheme explicitly addresses all removal costs and damages resulting from an incident, including by providing for recoveries from: (1) a "responsible party," 33 U.S.C. §§ 2702(a), 2713(a); (2) the

Oil Spill Liability Trust Fund, *id.* at § 2713(b)-(e); and (3) other parties who may bear or share liability through subrogation and contribution rights, *id.* at §§ 2702(d), 2709 ("A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law."). Thus, an action asserting liability for an OPA incident "involves" the liability of a designated responsible party, a party who may later be deemed a responsible party, and other parties with potential liability for resulting losses, regardless of the defendant sued in that particular action. *See Am. Commercial Lines*, 759 F.3d at 424 ("OPA provides the exclusive source of law for an action involving a responsible party's liability for removal costs governed by OPA.") (holding OPA displaced responsible party's maritime claims against third parties). For this reason, "one clear requirement" of OPA is that, "[f]irst, the injured party must present its claim for damages to the designated Responsible Party." *In re Settoon Towing, L.L.C.*, 859 F.3d 340, 345 (5th Cir. 2017) ("Claimants must first directly assert claims against . . . the Responsible Party."); *see also* 33 U.S.C. § 2713(a) ("Except as provided in subsection (b), ***all claims for removal costs or damages*** shall be presented first to the responsible party") (emphasis added); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750 (E.D. La. 2009)("Claimants should pursue claims covered under OPA only against the responsible party"). Because OPA directly addresses (i) the liability of both responsible and non-responsible parties for damages resulting from an incident and (ii) the process for recovering those losses, the statute displaces maritime claims against any party for the same losses.

Moreover, OPA is intended to establish an orderly compensation process and to promote settlement. *See, e.g.*, *Boca Ciega Hotel, Inc. v. Bouchard Trans. Co.*, 51 F.3d 235, 238-39 (11th Cir. 1995) (OPA requires an extra-judicial claims process reflecting "a congressional desire to encourage settlement and avoid litigation"); 33 U.S.C. §§ 2702(a), 2713; 135 Cong. Rec. H7965

(daily ed. Nov. 2, 1989) ("The system of liability and compensation provided for in the bill . . . is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation").  This purpose would be undermined if maritime claims for damages resulting from an incident were displaced against some parties, but not others.  *See* S. Rep. 101-94 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 730 (Congress enacted OPA "to create a single Federal law providing cleanup authority, penalties, and liability for oil pollution."); *Gabarick*, 623 F. Supp. 2d at 747 ("OPA explicitly states the damages to which it applies and the remedy to be pursued"; and "courts are to recognize this direct answer of Congress rather than seek to subvert it by allowing pursuit of the types of claims covered by OPA under the general maritime law").

In short, consistent with the law of this circuit, OPA's explicit requirements for foreign claimants and its comprehensive liability and recovery scheme for oil spill damages, displace the Mexican Plaintiffs' maritime claims here against all defendants.

### B.     The Mexican Plaintiffs have no answer for *Robins Dry Dock*.

Even if OPA somehow does not fully displace the Mexican Plaintiffs' maritime claims, the maritime claims of those plaintiffs that are cooperatives are nevertheless plainly barred by the *Robins Dry Dock* doctrine.   "*Robins Dry Dock* bars recovery for economic damages absent physical injury to a plaintiff's proprietary interest."   *In re Deepwater Horizon*, 784 F.3d 1019, 1025 (5th Cir. 2015).  "[T]he Fifth Circuit clearly defines the term 'proprietary interest' to mean that a party must have control over the property tantamount to full ownership."  *Id.* at 1026 (citation omitted).  This Court has recognized a narrow commercial fisherman exception to the *Robins Dry Dock* rule.  *See In re Deepwater Horizon*, 808 F. Supp. 2d at 943; *see also Golnoy Barge Co. v. M/T Shinoussa*, 841 F. Supp. 783, 785 (S.D. Tex. 1993) ("The commercial fisherman exception to the rule against recovery for purely economic damages without physical injury to a proprietary interest is a narrow one.").  The exception does not apply to seafood enterprises not actually

8

engaged in fishing, seafood restaurants, tackle and bait shops, or recreational fishermen. *See, e.g.*, *Louisiana ex rel. Guste v. M/V Testbank*, 524 F. Supp. 1170, 1174 (E.D. La. 1981), *aff'd*, 728 F.2d 748 (5th Cir. 1984). The exception also excludes commercial fishermen who fish in unaffected waters. *Id; see also In re Exxon Valdez*, No. A89-0095-CV (HRH), 1994 WL 182856, at *8 (D. Alaska Mar. 23, 1994), *aff'd*, 104 F.3d 1196 (9th Cir. 1997) (dismissing commercial fishermen's claims for price diminishment in areas not contaminated or closed after the Exxon Valdez oil spill).

Only 17 of the Mexican Plaintiffs alleged they are individual commercial fishermen. The remaining Mexican Plaintiffs are cooperatives (i.e., business associations) or businesses, not fishermen, and therefore do not qualify for the commercial fisherman exception. Because the cooperatives themselves are "not actually engaged in fishing," they do not meet the narrow exception criteria. *See Testbank*, 524 F. Supp. at 1174. By the cooperatives' own admission, not even all their members ***are*** fishermen: some are "concessions, retail and processing, . . . or other industries closely associated with the fishing industry." (Case No. 16-cv-05982, Rec. Doc. 1) at ¶ 1. And, some cooperatives are not comprised of fishermen at all. *See, e.g.*, (Case No. 16-cv-06294, Rec. Doc. 1) at ¶ 1 ("The Plaintiff is a cooperative of tourist services providers"). Thus, the cooperatives' and businesses' maritime claims are also barred under *Robins Dry Dock*.

### III. Because the Mexican Plaintiffs have no OPA or maritime claims, their claims against all defendants should be dismissed.

Plaintiffs argue that all defendants other than BP have waived certain defenses by not filing dispositive motions in response to PTO 67. First, the Court need not reach this question if it grants BP's Motion in full with respect to the OPA and maritime arguments set forth above. If the Mexican Plaintiffs cannot maintain OPA or maritime claims against BP, those plaintiffs have no surviving claims against ***any*** defendant. Further, PTO 67 lifted the stay as to these dispositive motions only; it did not start the clock on answers or other filings as to any defendant. *See* PTO

67 at 4-5. Because the Mexican Plaintiffs' claims fail as a matter of law, BP's Motion has focused on that legal failing. BP has not waived its other arguments and defenses. *See, e.g.*, Fed. R. Civ. P. 12 advisory committee's note (certain defenses "are expressly preserved against waiver").[7] Should the Court deny BP's Motion, BP will raise any arguments that require discovery or turn on factual questions at the appropriate time. Additionally, this Court has already granted HESI's joinder request, so the Mexican Plaintiffs' objections to that request are moot.

## IV.     The 41 Toups Plaintiffs assert mass claims in violation of PTO 60.

The Toups Plaintiffs do not deny that the damages they assert in their PTO 65 statements are not on behalf of the cooperatives, but rather on behalf of each of their individual members. Instead, they contend that each cooperative has the right to sue on behalf of its members. *See* Toups Opp. at 10. This does not confer a right to assert mass claims in violation of PTO 60. *See* BP's Mem. at 4-6, 13-15. As discussed in BP's Motion, the Toups Plaintiffs have now repeatedly attempted end-runs around PTO 60's limitations and should not be given another opportunity to amend their filings to comply with the Court's orders. *Id.* The 41 Toups Plaintiffs' claims (and the claims of any other cooperatives asserting unsworn damages on behalf of their individual members) should be dismissed because they expressly violate this Court's prior orders.

## CONCLUSION

For the foregoing reasons and the reasons discussed in its Motion, BP respectfully requests that the Court grant BP's Motion.

---

[7] The plaintiffs accuse BP of waiving its OPA presentment arguments. Not so. Presentment is "a mandatory condition precedent to filing suit" and cannot be waived. *In re Deepwater Horizon*, 808 F. Supp. 2d. at 964. And, this Court has already barred the claims of any B1 plaintiff who failed to satisfy OPA presentment. Order re Compliance with PTO 60 (Rec. Doc. 20996) at 5 (Only B1 plaintiffs who "have made timely presentment as required by OPA, have previously filed an individual lawsuit, and have otherwise complied with the requirements of PTO 60 have preserved their individual claims. All other B1 bundle claims are time-barred.").

April 12, 2019       Respectfully submitted,

*/s/ Don Haycraft*

Don Haycraft (Bar #14361)
R. Keith Jarrett (Bar # 16984)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Kristopher S. Ritter
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200

Christopher W. Keegan
Ashley Littlefield
Anna Terteryan
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

*Attorneys for BP America Production Company
and BP Exploration & Production Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **BP's Reply in Support of Its Dispositive Motion as to the B1 Claims of Mexican Plaintiffs** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of April, 2019.

*/s/ Don Haycraft*
Don Haycraft