# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * * | MDL NO. 2179 <br><br> SECTION: J <br><br> HONORABLE CARL J. BARBIER <br><br> MAGISTRATE JUDGE WILKINSON |
| Plaisance, *et al.*, individually and on behalf of the Medical Benefits Settlement Class, <br><br> Plaintiffs, <br> v. <br> BP Exploration & Production Inc., *et al.*, <br><br> Defendants. | * * * * * * * * * * * * * * | NO. 12-CV-968 <br><br> SECTION: J <br><br> HONORABLE CARL J. BARBIER <br><br> MAGISTRATE JUDGE WILKINSON |

## STATUS REPORT FROM THE *DEEPWATER HORIZON* MEDICAL BENEFITS SETTLEMENT CLAIMS ADMINISTRATOR

The Garretson Resolution Group, the Claims Administrator of the *Deepwater Horizon* Medical Benefits Class Action Settlement (the "Settlement"), submits the following quarterly report to apprise the Court of the status of its work in processing claims and implementing the terms of the Medical Settlement Agreement (the "MSA") between January 1, 2019, and March 31, 2019 (the "Reporting Period").[1] We have published 20 reports since Preliminary Approval in

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to their fully capitalized renderings in the MSA.

May 2012, and this marks the sixteenth quarterly report filed since the claims filing deadline of February 12, 2015. This status report provides:

- an executive summary of claims processed during the Reporting Period;
- a summary of claims for Specified Physical Conditions ("SPC") and significant developments concerning these claims;
- an update on the operations and activities of the Class Member Services Center;
- an account of participation in the Periodic Medical Consultation Program ("PMCP");
- a summary of claims for Later-Manifested Physical Conditions ("LMPCs"); and
- a summary of the activities of the grantees of the Gulf Region Health Outreach Program ("GRHOP") and the operations of the Gulf Region Health Outreach Program Library.

## I.   EXECUTIVE SUMMARY

The Claims Administrator has received 37,226 unique claims for compensation for an SPC and/or participation in the PMCP through the end of the Reporting Period. The Claims Administrator has received 6,793 Notices of Intent to Sue ("NOIS") for claims for LMPCs. This status report will provide an overview of the claims processing forecast for all SPC and PMCP claims and NOISs filed, the variables influencing the progression of those claims and NOISs, and the outcome of the claims and NOISs as they progress through the stages of review.

Regarding the claims for compensation for an SPC and/or participation in the PMCP:

- the Claims Administrator has completed its review of 37,223 claims, or ninety-nine percent (99%) of all claims filed, to determine whether they qualify for compensation for an SPC and/or participation in the PMCP.

    o Of the 37,223 claims that the Claims Administrator has fully reviewed, 22,833, or sixty-one percent (61%), were approved for compensation for an SPC, and another 4,773, or thirteen percent (13%), were approved to participate in the PMCP.

    o Overall, the claims filed in this settlement were impacted by high defect rates, with 28,870, or seventy-eight percent (78%), receiving either a Request for Additional Information ("RAI") or Notice of Defect during

2

       the life of the claim. Additionally, 19,741, or fifty-three percent (53%), were impacted by changes or updates the claimants made to their Proof of Claim Forms or supporting documentation, which required the Claims Administrator to re-review the claims.

       o  The Claims Administrator is still reviewing 3, or less than one percent (1%), of the claims filed in this settlement to determine whether it qualifies for SPC compensation or to participate in the PMCP.[2]

- The compensation allocated and paid to SPC-determined claims continues to increase.

    o  During the Reporting Period, the Claims Administrator approved 1 Medical Benefits Settlement Class Member ("Class Member") for $1,300 in SPC compensation. Since the inception of the Settlement, the Claims Administrator has approved 22,833 Class Members for $67.2 million in SPC compensation.

    o  Of the $67.2 million awarded to the 22,833 Class Members with approved SPC claims, $65 million has been paid to 22,588 Class Members. The remaining 245 Class Members had not been paid as of the end of the Reporting Period because they had payment complications that had not yet been resolved. Approximately seven percent (7%) of those Class Members had healthcare liens that were still being resolved because their claims had just reached a final determination in the third or fourth quarter of 2018. In addition, approximately forty-three percent (43%) of the Class Members who had not received payment by the end of the Reporting Period were impacted by pending bankruptcy and/or probate complications. The remaining fifty percent (50%) have other complications precluding payment, including child support obligations, liens asserted by settlement advance lenders or other persons or entities, general payment defects resulting from the Class Members' failure to provide necessary information on their POCFs, selection for random audit, and pending Requests for Review.

- Class Members continue to be approved for enrollment in the PMCP.

    o  During the Reporting Period, the Claims Administrator sent PMCP Notices of Determination to twenty-one (21) Class Members, for a total of 27,434 over the life of the Settlement.

---

[2] The final pending case is anticipated to queue for final determination by the end of the first quarter of 2019..

Regarding the Notices of Intent to Sue for LMPCs:

- the Claims Administrator has completed its review of all 6,793 NOISs received, to determine whether they are timely and complete for submission to BP for its mediation decision.
    - Of the 6,793 NOISs the Claims Administrator has reviewed, 5,118 were approved for submission to BP for a mediation decision, 817 were denied, and 858 were deficient.
    - Similar to the claims for compensation for an SPC, the Claims Administrator has observed a higher than anticipated defect rate for the NOIS forms it received.

This information is discussed in greater detail below.

## II. DETAILED CLAIMS PROGRESSION

### A. Claims for Compensation for an SPC and/or Participation in the PMCP

Through the end of the Reporting Period, the Claims Administrator has received 37,226 unique claims for compensation for an SPC and/or participation in the PMCP. The number of total claims receiving a final determination or clearing lien resolution continued to increase throughout the Reporting Period. Of the 37,226 total claims filed, 37,223, or ninety-nine percent (99%), have been processed to a final determination, and three (3), or less than one percent (1%), requires additional processing.

Of the claims reaching a final determination,

- 22,833, or sixty-one percent (61%), were approved for compensation for an SPC, with 22,833, or one hundred percent (100%), of the 22,833 claims receiving a notice of final determination for compensation for an SPC and 22,588, or ninety-nine percent (99%), of the 22,833 claims being paid;

- 980, or three percent (3%), did not seek the SPC compensation benefit and instead claimed and qualified for the PMCP benefit only;

- 3,793, or ten percent (10%), proved they were Class Members and qualified to receive the PMCP benefit but failed to prove they qualified for SPC compensation; and

4

- 9,617, or twenty-six (26%), were denied because they (a) did not prove they were Class Members, (b) filed a valid opt-out, or (c) did not claim or prove a compensable SPC.

**Figure 1: Composition of All Finalized Claims**



B.   **Notices of Intent to Sue for LMPCs**

Through the end of the Reporting Period, the Claims Administrator has received 6,793 original NOISs.  Of the 6,793 original NOISs filed, 5,118, or seventy-five percent (75%), were found to be compliant and were submitted to BP for a mediation decision:

- 817, or twelve percent (12%), were denied;

- 858, or thirteen percent (13%), were found to be defective and were queued for Notice of Defect processing;

5

**Figure 2: Notice of Intent to Sue Processing**



### III.     CLAIMS FOR SPECIFIED PHYSICAL CONDITIONS

#### A.     Claimed Benefits and Compensation Level

For the total 37,226 Proof of Claim Forms ("POCFs") received, Table 1 provides a breakdown of those that sought compensation for an SPC and participation in the PMCP and those that sought only participation in the PMCP.

| TABLE 1: POCF FILINGS AVAILABLE FOR INITIAL CLAIMS REVIEW | |
|---|---:|
| | Total |
| **Total POCF Filings Available for Initial Claims Review** | **37,226** |
| Claims for Compensation for Both SPCs and Participation in the PMCP | 36,246 |
| Claims for PMCP Only | 980 |

6

The graph below provides a breakdown of the compensation levels claimed for all claims filed:

**Figure 3: Compensation Level Composition of All Claims Filed**



In Table 2 below, we provide statistics of the claimed compensation level in Section VII of the POCF as compared to the awarded compensation level. In over eighty-one percent (81%) of claims where the Class Member has claimed a single compensation level, that same level of compensation has been awarded. For the nineteen percent (19%) not awarded the claimed compensation level, the Claims Administrator has awarded both higher and lower compensation levels based on review of the POCF and supporting documentation provided.

| Table 2: Determined Compensation Level |||||||||||
|---|---|---|---|---|---|---|---|---|---|---|
| Qualified Compensation Level | A1 || A2 || A3 || A4 || B1 || Grand Total |
| Section VII of POCF Claimed Compensation Level | Count | % | Count | % | Count | % | Count | % | Count | % | |
| A1 | 12,158 | 97.71% | 151 | 1.21% | 112 | 0.90% | 21 | 0.17% | 1 | 0.01% | 12,443 |
| A2 | 908 | 41.79% | 1,175 | 54.07% | 77 | 3.54% | 10 | 0.46% | 3 | 0.14% | 2,173 |
| A3 | 456 | 35.54% | 100 | 7.79% | 659 | 51.36% | 67 | 5.22% | 1 | 0.08% | 1,283 |
| A4 | 86 | 41.75% | 15 | 7.28% | 15 | 7.28% | 90 | 43.69% |  | 0.00% | 206 |
| B1 | 595 | 48.26% | 506 | 41.04% | 101 | 8.19% | 9 | 0.73% | 22 | 1.78% | 1,233 |
| Multiple | 2,231 | 66.32% | 811 | 24.11% | 261 | 7.76% | 49 | 1.46% | 12 | 0.36% | 3,364 |
| None | 1,712 | 80.34% | 259 | 12.15% | 126 | 5.91% | 33 | 1.55% | 1 | 0.05% | 2,131 |
| Total | 18,146 | 79.47% | 3,017 | 13.21% | 1,351 | 5.92% | 279 | 1.22% | 40 | 0.18% | 22,833 |

**B.   Claims Sent Dispositive Correspondence for a Specified Physical Condition**

The overall percentage of all claims reaching final determination is ninety-nine percent (99%). During the Reporting Period, we sent SPC Notices of Determination to one (1) Class Member, approving them for $1,300 in compensation. Since the inception of the Settlement, we sent SPC Notices of Determination to 22,833 Class Members, approving them for $67,236,129 in compensation. Over this Reporting Period, the total percentage of finalized Claims moving to an approved determination remained at sixty-one percent (61%).

The Claims Administrator sent nine (9) Notices of Denial during the Reporting Period, for a total of 13,413 Notices of Denial from the inception of the Settlement through the end of the Reporting Period. All of these claims have been denied because the claimant did not qualify as a Class Member, because the claimant opted out of the settlement, and/or because the claimant did not meet the criteria established by the MSA to receive compensation for an SPC.

A summary of the dispositive correspondence sent on claims for compensation for an SPC is set forth in Table 3, below.

| TABLE 3: CLAIMS DISPOSITION AND CORRESPONDENCE | | |
|---|---|---|
| **Notice Type** | **Reporting Period** | **Total** |
| SPC Notices of Determination Sent | 1 | 22,833 |
| Notices of Denial Sent | 9 | 13,413 |

### C. Claims Approved for SPC Compensation

During the Reporting Period, the amount of SPC compensation for which Class Members were approved increased, as reflected in Table 4, below.

| TABLE : APPROVED CLAIMS FOR SPCS[3] | | | | |
|---|---|---|---|---|
| **SPC** | **Reporting Period Number Approved** | **Total Number Approved to Date** | **Reporting Period Amount Approved** | **Total Amount Approved to Date** |
| A1 | 1 | 18,146 | $1,300 | $23,009,800 |
| A2 | 0 | 3,017 | $0 | $23,962,081 |
| A3 | 0 | 1,351 | $0 | $17,089,082 |
| A4 | 0 | 279 | $0 | $800,416 |
| B1 | 0 | 40 | $0 | $2,374,750 |
| | | | | |
| **Total** | 1 | 22,839 | $1,300 | $67,236,129 |

As set forth in the MSA, Class Members can only be paid once certain potential obligations to third parties are identified and resolved. The resolution of these obligations is dependent upon the responsiveness of both governmental agencies and private interests in replying to the Claims Administrator's requests for information and resolution. The obligations fall into two general categories: healthcare-related obligations and other obligations.

---

[3] Please note that the total volumes and total dollars approved are subject to change in each Reporting Period due to later received and processed Requests for Review.

9

The resolution of healthcare obligations involves confirming whether a Class Member received benefits from a governmental payor (such as Medicare, Medicaid, or the Veterans' Administration) or a private healthcare plan for a compensable injury such that the Class Member must now reimburse those entities for the amounts they paid. The processing phases include (1) confirming entitlement with the government agency or private plan, (2) receiving claims from the agency or plan, (3) auditing those claims and disputing any that are unrelated to the Class Member's compensable injury, and (4) final resolution. Pursuant to the terms of the MSA, the Claims Administrator obtained an agreement from CMS establishing capped repayment amounts per SPC for Class Members who are or were beneficiaries of Medicare. The Claims Administrator also negotiated with state Medicaid agencies to cap recovery for Medicaid-entitled Class Members. Most states agreed to waive recovery rights for Class Members receiving compensation for an A1 claim. Additionally, most state Medicaid agencies agreed to a twenty percent (20%) cap on and up to a thirty-five percent (35%) offset for fees and costs typically associated with their recovery, thereby allowing partial funding to the Class Member while full resolution is pending. Processing times for Medicaid-entitled Class Members eligible for payment will vary. Each state has its own processing standards for responding to entitlement requests, producing claims, and finalizing lien amounts.

The resolution of non-healthcare-related obligations involves identifying the various types of obligations and working with the claimant or the claimant's representative to resolve them. The processing phases include (1) identifying the obligation (through review of claim documents, PACER searches, and searches of the Louisiana Child Support Database), (2) sending correspondence seeking documentation that will resolve the complication, (3) reviewing the submitted documentation for sufficiency, and (4) final resolution. The Claims

Administrator tracks responses to its correspondence and sends a follow-up letter to non-responsive parties after thirty (30) to sixty (60) days have passed (with the length of time depending on the complication). We will also send follow-up correspondence when the responses contain insufficient documentation. The resolution time for payment complications varies and remains heavily dependent upon the timeliness and sufficiency of the third parties' responses to our information requests. Once the obligations affecting a given claim are resolved and any liens or reimbursement obligations are paid, the Claims Administrator is able to disburse the balance of the Class Member's compensation.

### IV.   CLAIMS FOR LATER-MANIFESTED PHYSICAL CONDITIONS

During the Reporting Period, Class Members submitted 48 NOISs to pursue claims for LMPCs. Forty-six (46) were original NOISs, and two (2) were supplements to NOISs that had already been submitted. Of the 46, eighteen (18) were compliant and were sent to BP for a mediation decision, twenty-six (26) contained curable Defects and were queued to receive a Notice of Defect, and two (2) were denied.

From the inception of the Settlement through the end of the Reporting Period, Class Members submitted 7,013 NOISs for compensation for a Later-Manifested Physical Condition. Six thousand eight hundred (6,793) were original NOISs, and two hundred twenty (220) were supplements to NOIS that had already been submitted. Of the 6,793, 5,118 were compliant with the MSAs requirements and were sent to BP for a mediation decision, 858 contained Defects that could be corrected by the Class Member, and 817 were denied.

| TABLE 5: NOTICES OF INTENT TO SUE | | |
|---|---|---|
| | **Reporting Period** | **Total** |
| Total Notices of Intent to Sue Filed | 48 | 7,013 |
| Original Notices of Intent to Sue Filed | 46 | 6,793 |
| Subsequent Notices of Intent to Sue Filed | 2 | 220 |
| Notices of Intent to Sue Approved | 18 | 5,118 |
| Notices of Intent to Sue Denied | 2 | 817 |
| Notices of Intent to Sue Deficient[4] | 26 | 858 |
| Notices of Intent to Sue Under Review | 0 | 0 |

Of the 817 claims denied through the end of the Reporting Period, ninety-nine percent (99%) were denied because the Notice of Intent to Sue was not submitted within four (4) years of the Effective Date of the settlement or the first date of diagnosis of the Later-Manifested Physical Condition, whichever is later.

Of the 858 defective claims to date, the three (3) most common material Defects are as follows:

- "The claimed date(s) of first diagnosis listed in Section VI.A.2 of the Notice of Intent to Sue Form is not supported by date(s) of diagnosis in the Medical Record(s) and/or Physician's Certification Form."; and

- "The medical record(s) and/or Physician's Certification Form submitted does not support diagnosis of the condition(s) claimed in Section VI.A.1.

- "You must provide medical records or a completed Physician's Certification Form indicating a date of first diagnosis that is after April 16, 2012."

Of the 5,118 compliant NOISs sent to BP for a mediation decision, BP elected to mediate none of the claims, declined to mediate four thousand eight hundred seventy-nine (4,879) of the claims, and is still considering whether to elect mediation on two hundred thirty-nine (239) of the claims. With respect to the four thousand eight hundred seventy-nine (4,879) claims that BP

---

[4] Class Members who cure Defects within their original Notice of Intent to Sue will then be classified as "Approved" or "Denied" in future reporting, based on the responses received.

declined to mediate, the Class Members holding those claims became eligible to file them as Back-End Litigation Option Lawsuits once BP declined mediation.

| TABLE 6: COMPLIANT NOTICES OF INTENT TO SUE | | |
|---|---|---|
| **Mediation Elections** | **Reporting Period** | **Total** |
| Later-Manifested Physical Condition Claims for Which at Least One BP Defendant Elected Mediation | 0 | 0 |
| Later-Manifested Physical Condition Claims Pending a Decision from One or More BP Defendants Regarding Mediation | 120 | 239 |
| Later-Manifested Physical Condition Claims for Which No BP Defendants Elected Mediation | 309 | 4,879 |
| | | |
| **TOTAL:** | **429** | **5,118** |
| | | |
| **Results of Mediation** | **Reporting Period** | **Total** |
| Later-Manifested Physical Condition Claims Settled by Mediation | 0 | 0 |
| Later-Manifested Physical Condition Claims Settled by Mediation as to One but Not All BP Defendants Listed in the Notice of Intent to Sue | 0 | 0 |
| Later-Manifested Physical Condition Claims Mediated but Not Settled | 0 | 0 |
| | | |
| **TOTAL CLAIMS MEDIATED:** | **0** | **0** |
| | | |
| **Back-End Litigation Option Lawsuit** | **Reporting Period** | **Total** |
| Total Claims That Have Been Eligible to Be Filed as Back-End Litigation Option Lawsuits[5] | N/A | 4,879 |

## V. CLASS MEMBER SERVICES CENTER ACTIVITY

The Claims Administrator operates a Class Member Services Center to communicate with Class Members and their attorneys and to assist them with filing their claims. During the Reporting Period, the Class Member Services Center received 3,206 telephone calls. Since

---

[5] This number is the sum of the "Later-Manifested Physical Condition Claims for Which No BP Defendant Elected Mediation" and the "Later-Manifested Physical Condition Claims Mediated but Not Settled."

13

opening, the Class Member Services Center has received a total of 227,108 telephone calls. The Class Member Services Center handled an average of fifty-one (51) calls per day. The average length of each telephone call was eight minutes and eighteen seconds, with an average wait time of one minute and twenty-three seconds.

| TABLE 7: CLASS MEMBER SERVICES CENTER | | |
|---|---|---|
|  | Reporting Period | Total |
| Calls Received | 3,206 | 227,108 |
| Average Length of Call (min:sec) | 8:18 | 6:39 |
| Average Wait Time (min:sec) | 1:23 | 0:48 |
| Emails Received | 39 | 3,267 |
| Walk-Ins | 0 | 739 |

## VI. PERIODIC MEDICAL CONSULTATION PROGRAM

### A. Class Members Eligibility for and Participation in the PMCP

Since the inception of the Settlement, the total number of Class Members receiving a PMCP Notice of Determination is 27,434. The Claims Administrator received requests for and scheduled 315 physician visits during the Reporting Period, and Class Members attended 310 appointments in the Reporting Period.

| TABLE 8: PERIODIC MEDICAL CONSULTATION PROGRAM | | |
|---|---|---|
|  | Reporting Period | Total |
| PMCP Notices of Determination Sent | 21 | 27,434 |
| Physician Visits Requested and Scheduled | 315 | 4,117 |
| Appointments Attended by Class Members | 310 | 4,033 |
| Annual Update Letters Sent to Class Members | 4,669 | 64,607 |

### B. Provider Network

During the Reporting Period, the Claims Administrator added 20 medical provider organizations, representing 27 service delivery sites, to its network of providers established to provide certain covered services to Class Members who participate in the PMCP; this brings the

total number of medical provider organizations to 243.  These medical provider organizations represent 532 service delivery sites.  Eighty-nine percent (89%) of eligible Class Members who requested a PMCP evaluation resided within twenty-five (25) miles of a network provider at the conclusion of the Reporting Period.  The Claims Administrator continues to expand the medical provider network in its efforts to ensure that no Class Member will have to wait more than thirty (30) days or travel more than twenty-five (25) miles for an appointment.

## VII. GULF REGION HEALTH OUTREACH PROGRAM

### A. Funding and Coordinating Committee Activities

In accordance with Section IX of the MSA, the Gulf Region Health Outreach Program ("GRHOP") was established in May 2012 to expand capacity for and access to high quality, sustainable, community-based healthcare services, including primary care, behavioral and mental health care and environmental medicine, in the Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle. The program consists of five (5) integrated projects: the Primary Care Capacity Project ("PCCP"), Community Involvement ("CI"), the Mental and Behavioral Health Capacity Project ("MBHCP"), the Environmental Health Capacity and Literacy Project ("EHCLP"), and the Community Health Workers Training Project ("CHWTP"). As of the end of the Reporting Period, the Claims Administrator disbursed $104,713,294 to the projects, as detailed in the chart below.

| TABLE 11: GRHOP ||
|---|---|
| **Project** | **Funding to Date** |
| Primary Care Capacity Project | $46,655,925 |
| Community Involvement | $3,213,491 |
| Mental and Behavioral Health Capacity Project ((Louisiana State University Health Sciences Center) | $14,359,145 |
| Mental and Behavioral Health Capacity Project (University of Southern Mississippi) | $8,256,486 |
| Mental and Behavioral Health Capacity Project (University of South Alabama) | $8,256,489 |
| Mental and Behavioral Health Capacity Project (University of West Florida) | $5,025,696 |
| Environmental Health Capacity and Literacy Project | $14,957,416 |
| Community Health Workers Training Project | $3,988,646 |
|  |  |
| **TOTAL:** | **$104,713,294** |

The final disbursement was made in May 2016, which accounted for an eighteen (18) month low-cost extension of the GRHOP, as agreed upon by the Parties and Coordinating Committee members. All projects, except for Community Involvement,[6] participated in this extension period. Estimated administrative costs during the extension period, totaling $286,706, were accounted for by the Claims Administrator, with all projects contributing to these costs. Therefore, the May 2016 disbursement brought the total funding to the GRHOP to $104,713,294.

The GRHOP was governed by a Coordinating Committee that functioned in a cooperative and integrated manner, with quarterly in-person meetings around the Gulf Coast, as well as monthly conference calls. These quarterly meetings offered the grantees the opportunity to share their progress, discuss challenges faced, and collaborate with their partners to work through issues that affect the GRHOP as a whole. The Claims Administrator held the final quarterly meeting on October 19, 2018, in New Orleans, Louisiana.

---

[6] Community Involvement chose not to participate in the eighteen (18) month low-cost extension.

In addition to administering the conferences and quarterly meetings for the GRHOP Coordinating Committee, the Claims Administrator continues to manage the GRHOP website. The website launched on July 3, 2014 and can be publicly accessed at www.grhop.org. The website contains detailed descriptions and notable accomplishments of each project, as well as information regarding the GRHOP Coordinating Committee, news/events, and publications.

### B. GRHOP Project Updates

The GRHOP projects concluded their grants by November 30, 2018.

- The Primary Care Capacity Project, led by the Louisiana Public Health Institute ("LPHI"), concluded its grant on November 30, 2018.

- Alliance Institute, the grantee responsible for Community Involvement, concluded its grant on April 30, 2017.

- The Environmental Health Capacity and Literacy Project ("EHCLP"), with its grantee being Tulane University, concluded its grant on November 30, 2018.

- The Community Health Workers Training Project, directed by the University of South Alabama's Coastal Resource and Resiliency Center ("CRRC"), concluded its grant on December 31, 2017.

- The Mental and Behavioral Health Capacity Project was implemented by a coalition of four (4) academic institutions (Louisiana State University Health Sciences Center ("MBHCP-LA"), the University of Southern Mississippi ("MBHCP-MS"), the University of South Alabama ("MBHCP-AL"), and the University of West Florida ("MBHCP-FL")).
    - MBHCP-LA, MBHCP-MS, and MBHCP-AL concluded their grants on November 30, 2018.
    - MBHCP-FL concluded its grant on September 30, 2017.

### C. GULF REGION HEALTH OUTREACH PROGRAM LIBRARY

In accordance with Section IX.H of the MSA, the Claims Administrator has established a publicly accessible online library, which exists as a repository of information regarding information related to the health effects of the *Deepwater Horizon* incident, including, but not limited to: (a) the composition, quantity, fate, and transport of oil, other hydrocarbons, and other

17

substances released from the MC252 Well and the *Deepwater Horizon* and the dispersants and contaminants used in Response Activities; (b) health risks and health studies relating to exposure to oil, other hydrocarbons, and other substances released from the MC252 Well and the *Deepwater Horizon* and the dispersants and decontaminants used in Response Activities; (c) the nature, content, and scope of *in situ* burning performed during the Response Activities; and (d) occupational safety, worker production, and preventative measures for Clean-up Workers.

The library houses over 197,000 relevant documents, each tagged with a specific search category based on the type of information identified within the MSA. The Claims Administrator will continue to add Library Materials in accordance with the MSA.

Respectfully submitted,

*DEEPWATER HORIZON* MEDICAL BENEFITS
CLAIMS ADMINISTRATOR

By: /s/ Katharine H. Hosty
    Katharine H. Hosty

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of the electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of May, 2019.

Respectfully submitted,

*/s/ Katharine H. Hosty*
Katharine H. Hosty