# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010<br><br>APPLIES TO:<br>All Civil Actions of the all BELO Plaintiffs and all Opt-Out Plaintiffs | Civil Action No. 2:10-MD-02179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br><br>MAG. JUDGE WILKINSON |
|---|---|

**AFFIDAVIT OF CRAIG T. DOWNS, ESQ. IN SUPPORT OF
PLAINTIFFS' EMERGENCY MOTION FOR STAY**

STATE OF FLORIDA              )
COUNTY OF MIAMI-DADE   )

BEFORE ME, the undersigned authority, on this day personally appeared Craig T. Downs, who being first duly sworn, stated the following:

1. I am Craig T. Downs, an attorney licensed to practice law in the state of Florida. I am *sui juris*, of majority age, and capable of making this affidavit. I have personal knowledge of each and every assertion in this affidavit.

2. I make this Affidavit in support of Plaintiffs' Emergency Motion for Stay of this Court's April 16, 2019 Order. (Rec. Doc. 25593).

3. I am the founder of the Downs Law Group, P.A., counsel of record for approximately 800 BELO Plaintiffs with lawsuits pending in this litigation.

4. My firm also represents a small number of Opt-Out Plaintiffs who have filed lawsuits in this litigation.

5. Due to the passage of time and the fact that many shoreline cleanup and tar-ball workers, VOO workers out at sea, response activity workers (such as Coast Guard, firemen, and policemen)

labored for weeks or even months at many different locations across the Gulf Coast, most of my clients do not have a detailed record of the locations where they performed disaster recovery work nine years ago in numerous locations and were exposed to hazardous substances, one of the documented consequences include neurological conditions with associated memory loss.

6. However, BP has possession, custody or control of comprehensive lists of work locations for many, if not all, of the recovery workers associated with the Deepwater Horizon oil spill.

7. In fact, I have received from BP a detailed list of work locations (with corresponding dates) for at least three of my firm's BELO Plaintiffs. My firm was then able to correlate that information with the collection data and collection location data regarding the Subject Samples, which BP filed with the Court on December 24, 2019. As a result, we have been able to definitively establish that this BELO Plaintiff was working at sites where several of the Subject Samples were collected on or about the dates they were collected.

8. If and when my firm and other Plaintiffs' counsel are able to obtain similar work site and date information for individual clients during discovery, I expect that we will be able to establish similar matches for many of our clients, thus providing critical evidence needed to prove general and specific causation.

9. After this Court entered the April 16, 2019 Order, me and attorneys from my firm engaged in negotiations with BP to arrange an all-day comprehensive visit to the storage facility on May 9, 2019 including four experts, a private licensed investigator, and four attorneys from both sides, where BP is storing the Subject Samples. The purpose of the visit was to evaluate the feasibility of taking custody of some or all of the Subject Samples.

10. On Thursday, May 9, 2019, I personally visited the storage facility in Fort Collins, Colorado, along with a licensed private investigator and two experts working with my firm in this

litigation, to gain a better understanding of the volume of the Subject Samples and determine what arrangements would be needed if we were to take custody of some or all of the Subject Samples.

11. Based on that visit, I informed BP's counsel that my firm is willing and ready to take custody of the Subject Samples and store them, at our expense, while we continue to inspect, analyze, and evaluate them (which requires multiple and extensive task sets).

12. However, there are significant logistical challenges, including chain of custody issues and the need to transport and store such a large volume of material under conditions suitable for maintaining their integrity so as to avoid potential degradation. For example, my expert informed me that the Subject samples require three different refrigeration temperatures: (1) - 80 (minus 80) degrees Fahrenheit, (2) standard freezers temperatures, and (3) standard refrigerator temperatures.

13. Accordingly, I am in the process of making arrangements to transport and store the Subject Samples, potentially all 140,000 of them, under those conditions and, therefore, my firm is unable to take custody of the Subject Samples before the current May 21, 2019 deadline imposed by the Court's April 16 Order.

14. I discussed these logistical concerns with BP's counsel, including Kevin Hodges lead counsel for BP, Christina Briesacher of Kirkland and Ellis and Charles Wilmore of Liskow and Lewis, during my on-site visit. BP's counsel represented to me that they would not hold me and my fellow Plaintiffs to the May 21, 2019 destruction deadline imposed by the April 16 Order. Accordingly, we agreed that a plan would be formulated for appropriate preparation, transportation and storage of the Subject Samples on or before May 21, 2019 which we are in the process of concluding.

15. Since the on-site visit, me and other attorneys at my firm have been in frequent communication in furtherance of the transfer of custody of the Subject Samples with counsel for BP.

16. Based on conversations with my experts, a local private investigator and a staff knowledgeable on sample studies and analysis, I have a good-faith belief that I will require approximately 45 days to ensure we take custody of the Subject Samples.

17. On May 14, 2019, I proposed to BP that the parties enter into and file a stipulation whereby BP would agree to forego enforcement of the April 16 Order for 45 days to allow sufficient time for me and my firm to make the necessary arrangements to take custody of the Subject Samples, at our expense.

18. Notwithstanding their earlier representations during the on-site visit, BP's counsel responded that they would not agree to any extension of the May 21, 2019, destruction deadline.

FURTHER AFFIANT SAYETH NAUGHT

_____
Craig T. Downs

The foregoing instrument was sworn to and subscribed before me this 15th day of May, 2019, by Craig T. Downs, who personally appeared before me at the time of notarization, and who is personally known to me or who has produced FL Drivers License as identification.

NOTARY PUBLIC:   Sign _____ (Seal)
                 Print Pamela L. Schneider

PAMELA L. SCHNEIDER
MY COMMISSION # GG 172284
EXPIRES: March 17, 2022
Bonded Thru Notary Public Underwriters