UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § | MDL No. 2179 SECTION J |
| This Documents Relates to: | § § | JUDGE CARL J. BARBIER |
| Civil Action No.'s 2:17-cv-03367 2:15-cv-01047 2:12-cv-02004 on the Docket of the Eastern District of Louisiana | § § § § § § | MAG. JUDGE JOSEPH WILKINSON, JR. |

## PLAINTIFFS' EMERGENCY RULE 60(b) MOTION TO SET ASIDE THE COURT'S JANUARY 31, 2019 ORDER DISMISSING THEIR CLAIMS FOR NONCOMPLIANCE WITH PTO 66

Plaintiffs Brian W. Gortney (Gortney), Sergio Valdivieso (Valdivieso), and Sherri Allen Dorgan a/ka Sherri Dorgan Allen (Dorgan) (collectively Plaintiffs) file this Emergency Rule 60(b) Motion to Set Aside the Court's January 31, 2019 PTO 66 Compliance Order, which dismissed their of cases for noncompliance with PTO 66 (Rec. Doc. 25356) ("Dismissal Order").

Plaintiffs did not willfully disobey the Court's PTO 66. They each have suffered significant personal medical injuries and economic damages due to the BP Oil Spill. They respectfully request the Court to set aside the Dismissal Order in the interest of justice. *See* FED. R. CIV. P. 1 (stating that the rules should be administered "to secure the just, speedy, and inexpensive determination of every action"). Plaintiffs request that, in lieu of the Dismissal Order, the Court issue alternative sanctions of (1) fining these Plaintiffs' lawyers $7,500 and (2) explicitly warning them that any failure to meet further deadlines will result in the dismissal of their cases with prejudice and without any opportunity to cure the defect. *See Thrasher v. City of*

1

*Amarillo*, 709 F.3d 509, 514 (5th Cir. 2013) (noting that lesser sanctions may include "explicit warnings"). If the court grants this Motion, new counsel will represent Plaintiffs; the Lanier Law Firm will handle the prosecution of this case except for the case for Dorgan, who has sued the undersigned lawyers and has retained new counsel.

Plaintiffs make this request mindful that this court has performed "herculean efforts" to manage thousands of plaintiffs' claims. *In re Deepwater Horizon (Graham)*, 922 F.3d 660, 664 (5th Cir. 2019). Given the court's efforts, it certainly is understandable that lawyers' inadvertent failures to comply with court-imposed deadlines would frustrate the court. But such failures do not support penalizing clients by "wielding dismissal-with-prejudice as a sanction" unless there is "'a clear record of delay or contumacious conduct'" by the plaintiff. *Id*. at 665 (quoting *In re Deepwater Horizon (Barrera)*, 907 F.3d 232, 235 (5th Cir. 2018). Additionally, this most severe sanction is warranted only when "lesser sanctions would not serve the best interests of justice." *Id*.

Plaintiffs respectfully request that the court rule by **noon May 31, 2019, because they intend to file their Notice of Appeal that day.** While this deadline doesn't permit Defendants time to adequately respond to this request, upon review of any such response, the court may set aside its order, which would put the parties back where they were before the order was issued, with the exception of giving Plaintiffs time to file a new notice of appeal.

I
**Standards for Dismissing Cases for Non-Compliance with Court Deadlines and for Setting Aside Dismissal Orders under Rule 60**

The Court knows the well-established standards for dismissal of a case, so Plaintiffs will not belabor the point. Dismissal with prejudice is "an extreme sanction." *Graham*, 660 F.3d at 665. The Fifth Circuit, therefore, "has limited the district court's discretion" to impose this

sanction. *Id.* (quoting *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992). It should be used only as "a remedy of last resort" and "in extreme circumstances." *Batson v. Neal Specle Assocs., Inc.*, 765 F.2d 511, 515 (5th Cir. 1985). Thus, it is normally used when a claimant has displayed deliberate indifference by failing to comply with multiple orders of the court. *See, e.g., Tips v. Regents of Texas Tech Univ.*, 66 F.3d 321, 321 (5th Cir. 1995) (per curiam) (summary calendar) (not designated for publication) ("[T]he district court dismissed the suit with prejudice based on the failure of Tips' counsel to comply timely with only one order; the court did not expressly determine that lesser sanctions would be futile; and none of the aggravating factors exists"); *Berry*, 975 F.2d at 1192 ("Generally, where a plaintiff has failed only to comply with a few court orders or rules, we have held that the district court abused its discretion in dismissing the suit with prejudice."); *Thrasher v. City of Amarillo*, 709 F.3d 509, 514 (5th Cir. 2013) (stating that when the Fifth Circuit Court "has affirmed dismissals with prejudice," it has generally found (1) "a clear record of delay" and (2) "at least one of three aggravating factors: '[(a)] delay caused by [the] plaintiff himself and not his attorney; [(b)] actual prejudice to the defendant; or [(c)] delay caused by intentional conduct.'" (quoting *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008)).

This court has followed this procedure by setting deadlines, warning that failure to comply could result in dismissal, and then issuing show-cause orders that give plaintiffs an opportunity to explain and cure a missed deadline. For example, contumacious conduct—"[a] willful disobedience of a court order"—was shown for the Lindsay plaintiffs in *Graham* because this court first gave them a warning that their claims would be dismissed without further notice if they did not comply with a court order and then granted them an extension of time. *Graham*, 922

F.3d at 666 (quoting BLACK'S LAW DICTIONARY at 358 (10th ed. 2014). They had two "chances," and failed to comply both times. *Id.* at 667 n. 1.

The court also knows the well-established standards under Rule 60(b). Rule 60(b) states, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (6) any other reason that justifies relief." FED. R. CIV. P. 60(b)(1), (6). Rule 60(b) "should be liberally construed in order to do substantial justice." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). "What is meant by this general statement is that, although the desirability of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Id.*

The determination of whether a party's neglect in missing a deadline is excusable, "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see also Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 468 (5th Cir. 1998); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 07-1873, 2011 WL 6748489, at *3 (E.D. La. Dec. 21, 2011) (listing seven factors that courts may consider for a Rule 60(b) motion). The phrase "excusable neglect" in Rule 6(b) "is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392. It "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394; *see also Mesa v. Unocal Corp.*, No. 01-3438, 2003 WL 943639, at *2 (E.D. La. Feb. 28, 2003) (Duval, J.) (stating that a number of courts have held that that discretion should ordinarily "incline toward granting relief" under Rule 60

4

"because of a technical error or slight mistake by the party's attorney.") (quoting 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2857 (2d ed.1987)).

Although the Fifth Circuit "rarely reverse[s] a district court's exercise of discretion to deny a Rule 60(b) motion," it will reverse "where denial of relief precludes examination of the full merits of the cause," and "in such instances 'even a slight abuse may justify reversal.'" *Ruiz v. Quarterman*, 504 F.3d 523, 532 (5th Cir. 2007) (quoting *Seven Elves*, 635 F.2d at 402).

## II.
**Each of these three Plaintiffs has shown diligence in the past, and the failure to comply with PTO 66 was through no fault of theirs**

**Gortney**

Gortney has sought to comply with this court's orders. He was a claimant in the Clean-Up, Medical Monitoring, and Post-April 20 Personal Injury Claims and a member of the B3 Pleading Bundle, as described in PTO No. 11 (Rec. Doc. 569), and further clarified in PTO 25 (Doc. 983).

Gortney filed his individual lawsuit on February 6, 2015, in the Circuit Court of Florida; Cause No. 15-000055-CA. BP removed this case to the Northern District of Florida on March 20, 2015, and then it was transferred to the MDL on April 22, 2015, and assigned cause no. 15-cv-01047 (Doc. 16).

Gortney completed and filed his Sworn Statement on April 11, 2017, to comply with PTO 63. The court found him in compliance with that PTO (Doc. 23047, p. 8). On December 6, 2017, the Court issued an order ruling on motions for reconsideration re PTO 63 and 64. The updated "Compliant" list attached to that order shows Gortney as "compliant." On April 6, 2018, the court issued an Updated PTO Compliance List (Doc. 24268) of remaining B3 Plaintiffs who complied with PTO 63, and again identified Gortney as being compliant.

On April 9, 2018, the Court issued PTO 66 (Doc. 24282) setting a ninety-day deadline (July 9, 2018) for a all remaining B3 Plaintiffs to file a Particularized Statement of Claim ("PSOC").

A number of Plaintiffs, including Gortney, failed to file such claims, leading the court on September 20, 2018, (Doc 24875) to issue PTO Show Cause Order re: Compliance with PTO 66 (PTO Show Cause Order), attaching exhibits that identified claimants who had failed to comply with PTO 66 (Plaintiffs were listed in Ex. 2), and requiring each of those claims to show good cause why their claims should not be dismissed by October 11, 2018 (Doc. 24875-2).

On that date, Gortney timely complied with the court's deadline by "filing" his "Response to Court's Order to Show Cause" (Show Cause Response). More precisely, Gortney's counsel, Charles Herd, who had recently left the Lanier Law Firm and had formed his own firm, believed in good faith that he had complied, but his paralegal at the time (who had over 15 years of experience) filed the response only with Lexis Nexis, File & serve Xpress (hereinafter "File & Serve"), not realizing that the response should have been filed with both the court directly *and* by File & Serve. Defendant has never claimed that it did not receive these pleadings on that date.[1] Significantly, Gortney filed his sworn PSOC dated October 11, 2018—the deadline given by the court—to his Show Cause Response.[2]

In his Show Cause Response, Herd also candidly acknowledged that "it is no excuse that Plaintiff's counsel did not see and was not aware of PTO 66" and therefore failed to comply with it. Attached to his Show Cause Response was Herd's affidavit in which he explained that he "did

---

[1] A copy of these pleadings with the stamp showing they were e-served are attached to Gortney's February 13, 2019 "Response and Motion for Reconsideration."

[2] *See* Ex. A to Gortney's Show Cause Response, which is attached as Ex. A to Gortney's Feb. 13, 2019 motion for reconsideration (Doc. 25391).

6

not receive, or at a minimum, did not see" PTO 66 in April 2018; he did not see it until after the PTO 66 Show Cause Order. He likewise explained that his paralegal Belinda Lower in April 2018[3] did not recall seeing PTO 66 until October 2018.

On November 12, 2018, Gortney "filed" his Response to Defendant's Objections to Plaintiff's PTO 66 Submissions.[4] In it, Herd requested that the court not sanction his client but if the court felt sanctions were warranted "sanction or fine" him.

After the Court entered the Dismissal Order, Gortney timely filed his Response and Motion for Reconsideration of the Court's January 31, 2019 Order dismissing Plaintiff's Claims for Noncompliance with PTO 66 (Rec. Doc. 25391) ("Original Motion for Reconsideration"). In that motion, Herd provided copies of the October and November pleadings that were not dual-filed, explained that he had discovered the problem upon receipt of the Dismissal Order, and conceded that "there is no excuse for that mistake" and "it is Plaintiff's counsel's mistake alone."

On May 1, 2019, the Court entered its Order denying Plaintiff's Original Motion for Reconsideration (Rec. Doc. 25604) ("First Reconsideration Order"). The Court observed that Mr. Herd's excuse for not complying with PTO 66 (that he "did not receive, or at a minimum, didn't see" it) was "due to the attorney's own fault." The Court didn't address Gortney's timely October 11 response to the Show Cause Order.

On May 17, 2019, Gortney filed his Motion for Reconsideration of the Court's May 1, 2019 Order denying Plaintiff's Original Motion for Reconsideration, and Second Motion for

---

[3] Mr. Herd was at the Lanier Law Firm in April 2018. Ms. Lower was and is a legal assistant at the Lanier Law firm. She was not the paralegal who misfiled the October and November pleadings referenced herein, which was done by a legal assistant at Mr. Herd's new law firm. Attached as Ex B is an affidavit from Ms. Lower confirming that she was unaware of PTO 66 until around October 2018.

[4] Again, to be more precise, Mr. Herd believed that those two October 2018 pleadings had been filed with the Court Clerk and with other counsel in the case. *See* Herd Affidavit, p 18-19 to First Motion for Reconsideration (Doc. 25391). It was not until February 2019 that Mr. Herd learned that those two pleadings had been filed through the "file and serve" portal *only,* and that such filing did not *also* include filing with the Court Clerk.

7

Reconsideration of the Court's January 31, 2019 Order Dismissing Plaintiff's Claims for Noncompliance with PTO 66 (Rec. Doc. 25626) ("Second Motion for Reconsideration"). The Court denied this motion four days later. (Rec. Doc. 25632) ("Second Reconsideration Order").

Gortney's counsel recognizes that a third motion should not be lightly filed but files this in fulfillment their duties to him client and at his request and to set forth additional factual background and legal authorities under Rule 60(b). *Cf. Graham*, 922 F.3d at 668 ("There is a critical difference between trying but failing, on the one hand, and simply not trying on the other.").

**Valdivieso**

Valdivieso has also sought to comply with this court's orders. Valdivieso was a claimant in the Clean-Up, Medical Monitoring, and Post-April 20 Personal Injury Claims and a member of the B3 Pleading Bundle, all as described in PTO No. 11 (Rec. Doc. 569), and further clarified in PTO 25 (Rec. Doc. 983).

Valdivieso, a Jones Act Seaman, filed his individual lawsuit in Harris County, Texas on March 1, 2012, and his claim was transferred to the MDL on August 3, 2012, and assigned Cause No. 12-02004. He joined the master complaint by filing a short form joinder on May 16, 2016 in Case 2:10-cv-08888 (Doc.136654), . On May 16, 2016, Valdivieso filed his Exhibit A Sworn Statement, to comply with PTO 60 (Doc. 10). Next, Valdivieso completed and filed his Sworn Statement on April 11, 2017, in order to comply with PTO 63 (Doc. 22295). The court found him in compliance with that PTO (Doc. 23047-1). Valdivieso was listed as compliant with PTO 63 in orders dated December 6, 2017, (Doc. 23735-1) and April 6, 2018 (Doc. 24268-1).

Like Gortney, Valdivieso had to comply with the PTO 66 by filing a PSOC by July 9, 2018. But represented by the same counsel as Gortney, his counsel was unaware of the order and

failed to comply. Valdivieso then had a second chance to file a PSOC and to show good cause for his failure to meet the July 9 deadline when this court issued its September 20 PTO Show Cause Order ordering a response by October 11.

Valdivieso on October 11 "filed" his Response to Court's Order to Show Cause" (Show Cause Response), in which his counsel made the same concessions regarding his failure to be aware of PTO 66.[5] But Herd added one new fact; his paralegal signed an affidavit averring that Valdivieso told her that he had completed, signed, and mailed the PSOC but The Herd Law Firm had not been received it because of Hurricane Florence. The PSOC (which had been completed and signed on October 8, 2018) was then received and "filed" on October 19, 2018, in "Plaintiff's Supplemental Response to Court's Order to Show Cause."

On November 1, 2018, Valdivieso also filed a Response to Defendant's Objection re PTO 66. Along with it, he provided a copy of the lawsuit that he filed in Texas state court in 2012, confirming that Defendants have long had knowledge of his claims.

After the Court entered the Dismissal Order, Valdivieso on February 8, 2019, timely filed his Response and Motion for Reconsideration of the Court's January 31, 2019, Order dismissing Plaintiff's Claims for Noncompliance with PTO 66 on February 8, 2019. (Rec. Doc. 25380) ("Response and Motion for Reconsideration"), along with two exhibits showing the history of the pleadings. In that motion, Herd provided copies of the October and November 2018 pleadings that were not dual filed, explained that he had discovered the filing problem upon receipt of the Dismissal Order, and conceded that "there is no excuse for that mistake" and "it is Plaintiff's counsel's mistake alone." He also explained that Valdivieso is a Jones Act Seaman who has not received any maintenance and cure benefits whatsoever. As a seaman, he also is "a

---

[5] The same dual filing problem existed for Valdivieso. Valdivieso's October 2018 pleadings are attached to his Original Motion for Reconsideration (Document 25380).

9

ward of the court", which entitles him to special protections by the court. Herd also attached his same affidavit that was attached to his October 11 Show Cause Response (*see* Doc 25380-1, p. 4).

In the same May 1, 2019 order that denied Gortney's Original Motion for Reconsideration (Rec. Doc. 25604) ("First Reconsideration Order"), the court denied Valdivieso's motion.

On May 17, 2019, Valdivieso filed his Motion for Reconsideration of the Court's May 1, 2019 order denying Plaintiff's Original Motion for Reconsideration, and Second Motion for Reconsideration of the Court's January 31, 2019 Order Dismissing Plaintiff's Claims for Noncompliance with PTO 66 (Rec. Doc. 25627) ("Second Motion for Reconsideration"). The Court denied this motion four days later. (Rec. Doc. 25632) ("Second Reconsideration Order").

**Dorgan**

Dorgan has sought to comply with this court's orders. Dorgan was a claimant in the Clean-Up, Medical Monitoring, and Post-April 20 Personal Injury Claims and a member of the B3 Pleading Bundle, all as described in PTO No. 11 (Rec. Doc. 569), and further clarified in PTO 25 (Rec. Doc. 983).

Dorgan filed her individual lawsuit and joined the master complaint on May 16, 2016 (2:16-cv-06245) which included her Sworn Statement and Plaintiff Profile Form. . (Doc. 1, 1-1 and 1-2). Next, Dorgan filed her PTO 63 Complaint and her Sworn Statement on April 12, 2017, in order to comply with PTO 63 (Doc. 1). The court found her in compliance with that PTO 63(Doc. 23047-1, p. 6). Dorgan was also listed as compliant with PTO 63 in orders dated December 6, 2017 (Doc. 23735-1, p. 6) and April 6, 2018 (Doc. 24268-1, p. 6).

10

Like Gortney and Valdivieso, Dorgan had to comply with the PTO 66, by filing a PSOC by July 9, 2018. But represented by the same counsel as Gortney, her counsel was unaware of the order and failed to comply. Dorgan then had a second chance to file a PSOC and to show good cause for her failure to meet the July 9 deadline when this court issued its September 20 PTO 66 Show Cause Order ordering a response by October 11.

Dorgan, unfortunately, could not comply with that deadline because she had been at the hospital for days and nights on end tending to her husband, who had sustained a stroke and was in intensive care. *See* Ex. A, Affidavit of Charles Herd. Once she was free and able to complete and sign the form (which, sadly, followed her husband's death), she "filed" a Supplemental Response to the Court's Order to Show Cause regarding PTO 66 on October 23, 2018 (Show Cause Response). The Supplemental Response attached her husband's obituary and Dorgan's PSOC. In that response, Allen's counsel, Herd, made the same concessions regarding his failure to be aware of PTO 66.[6] Dorgan's counsel then "filed" on November 1, 2019 Plaintiff's Response to Defendant BP's Objection and Response to Plaintiffs' PTO 66 Show Cause Submissions and also filed an Amended Response to BP's Objection and Response to Plaintiffs PTO 66 Show Cause Submissions.

After the Court entered the Dismissal Order, Allen timely filed her Response and Motion for Reconsideration of the Court's January 31, 2019 Order dismissing Plaintiff's Claims for Noncompliance with PTO 66 (Rec. Doc. 25410) ("Original Motion for Reconsideration"). In that motion, Herd provided copies of the two November 2018 pleadings that were not dual filed, explained that he had discovered the filing problem upon receipt of the Dismissal Order,

---

[6] The same dual filing problem existed for Dorgan. Dorgan's November 2018 pleadings are attached to her Original Motion for Reconsideration (Document 25410). But there was another problem on that date. The pleading states the correct cause number for Dorgan's B3 claims 17-cv-03367, but the pleading was not filed through CM/ECF and was filed with File& Serve in the master MDL Case No. MC MDL-2179. See Exhibit F attached to Charles Herd Affidavit.

11

conceded that "it is no excuse" that he didn't see PTO 66, and referenced his earlier affidavits filed in his responses "filed" on behalf of Gortney and Dorgan.

In the same May 1, 2019 order that it denied Gortney's and Valdivieso's Original Motion for Reconsideration (Rec. Doc. 25604) ("First Reconsideration Order"), the court denied Allen's motion. On May 17, 2019, Allen filed her Motion for Reconsideration of the Court's May 1, 2019, Order denying Plaintiff's Original Motion for Reconsideration, and Second Motion for Reconsideration of the Court's January 31, 2019 Order Dismissing Plaintiff's Claims for Noncompliance with PTO 66 (Rec. Doc. 25627) ("Second Motion for Reconsideration"). The Court denied this motion four days later. (Rec. Doc. 25632) ("Second Reconsideration Order").

## IV
## Evidentiary Support

Attached are the affidavits of Charles Herd and Belinda Lower.

## V.
## Conclusion

Neither these three Plaintiffs nor Herd engaged in contumacious conduct—"[a] willful disobedience of a court order" because they didn't know of PTO 66. Nor did they engage in "obnoxious defiance of a court order." *Graham*, 922 F.3d at 668. While the court has concluded that the failure to comply with PTO 66 is the fault of their lawyer, they should not be, under well-established law, penalized for his conduct.

There is no evidence of any willful delay by any of the three Plaintiffs. Plaintiff Gortney missed a single deadline—the July 9 deadline—through no fault of his. When the court issued its PTO 66 Show Cause Order it gave him until October 11 to explain why his claim should not be dismissed, he timely filed his response and provided sworn answers to the 48 questions in the questionnaire. The delay between his original due date of July 9 and his October 11 statement

12

caused no harm to Defendants as no discovery or other proceedings occurred during that time period. Thus, granting Gortney relief will allow his case to progress at the same rate as other similarly-situated cases and will cause no further delays or any prejudice to Defendants. The Show Cause Order in effect offered non-complying plaintiffs like Gortney an opportunity to explain their non-compliance. And he did so. He should not be penalized due to his attorney's failure to comply with PTO 66.

Plaintiff Valdivieso also missed a single deadline—the same July 9 deadline. He missed the deadline set by PTO 66 Show Cause Order by eight days, but only because there was a hurricane attacking Florida (where he resides) which impeded transportation and mail. Plaintiffs request that his dismissal be set aside for the same reasons as discussed for Gortney.

Admittedly, Dorgan did not comply fully with the show cause order deadline; she didn't "file" her PSOC until October 23. But there were compelling reasons for that delay, because her husband suffered an acute stroke on October 1, was hospitalized, and died on October 16. She signed her PSOC and mailed it after her husband's death. The same day it was received by Herd, he "filed" her Supplemental Response. Given that she would have signed the form and it would have been filed by the October 11 deadline, but for her husband's fatal illness and her presence at his bedside, Dorgan respectfully asks in equity that the court excuse her late filing under these most unusual circumstances, particularly given her previous compliance efforts and her description of her claims in her PSOC. Moreover, while any failure to set aside the dismissal of Dorgan's B3 claim will remove only one case from this court's docket of BP cases, the dismissal doesn't make litigation simpler or more expedient. Instead, it will simply move the forum for her claims elsewhere, as she now sued her undersigned attorneys. See Ex. G to the Affidavit of Charles Herd. In a state court negligence action, she will have to prove not only negligence, but

causation, that is, her "case-within-a-case," so this dispute will not be resolved with the dismissal of her case here. Those issues can be quite complex, when the best predictor of what would have happened here is to allow the case to proceed here.

Plaintiffs respectfully ask the Court to remain cognizant of two simple facts. First, only a single filing deadline was missed.[7] This is not a case of "three chances," like *Barrera*. *See Graham*, 922 F.3d at 667 n. 1 (discussing *Barrera*). Nor is it a case of "two" chances like *Graham*. Once Herd discovered the existence of PTO 66, he acted timely to comply with the Show Cause Order. Second, Plaintiffs' B3 claims have been on file for several years, and all three historically have remained compliant with the court's orders throughout this case. They will comply with future Court-imposed deadlines.

Finally, this case is pending "In Admiralty," and an Admiralty court has considerable authority to exercise equity; indeed, historically Admiralty courts have been courts of equity. Such equity is particularly relevant here, where these three Plaintiffs have "clean hands." Additionally, Valdivieso, as a Jones Act seaman, is entitled to special deference as "a ward" of the Admiralty Court, and his October 11 and 19 pleadings demonstrated good cause. In short, the equities favor these three Plaintiffs.

Earlier this year, this court exercised its broad discretion and granted a motion to vacate the dismissal of Lott Ship Agency (Lott) when Lott inadvertently missed a deadline. *See* Lott's

---

[7] Again, to avoid any misunderstanding, Charles Herd has conceded the dual-filing mistake, that is, that his paralegal at the time mistakenly pleadings in October and November 2018 filed through File and Serve, but failed to file with the Court Clerk. As soon as that misunderstanding was discovered (which was following receipt of the Dismissal Order, Charles Herd filed his First Motion for Reconsideration of the Dismissal Order for each of the three B3 Plaintiffs who are the subject of this motion, and attached to each of them misfiled pleadings. The misfiling caused no prejudice to Defendant, who received copies of the October and November 2018 pleadings.

14

Motion to Vacate and /or Amend (Doc 25429). Given the analogous circumstances present here, Plaintiffs respectfully request that the court do the same for these Plaintiffs.

ACCORDINGLY, Plaintiffs Brian Gortney, Sergio Valdivieso and Sheri Allen Dorgan, a/k/a Sheri Dorgan Allen ask that the Court's Dismissal Order of January 31, 2019, be vacated and rescinded insofar as their B3 claims only, so that they may remain active on the Court's docket, and that ultimately their claims may be heard and considered on the merits, and for such further relief, in Admiralty, at law and in equity to which they may show themselves to be entitled.

Respectfully submitted,

THE LANIER LAW FIRM

By: /s/ W. Mark Lanier
    W. Mark Lanier
    State Bar No.: 11934600
    wml@lanierlawfirm.com
    Kevin Parker
    State Bar No.: 15494020
    Harvey Brown
    State Bar No. 03130500
    10940 W. Sam Houston Pwky North
    Suite 100
    Houston, Texas 77069
    Telephone: 713.659.5200
    Facsimile: 713.659.2204

    ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing PLAINTIFFS' EMERGENCY RULE 60(b) MOTION TO SET ASIDE THE COURT'S JANUARY 31, 2019 ORDER DISMISSING THEIR CLAIMS FOR NONCOMPLIANCE WITH PTO 66, has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 28th day of May, 2019.

*/s/ W. Mark Lanier*
W. Mark Lanier