IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010<br><br>**APPLIES TO:**<br><br>All Civil Actions of the Plaintiffs Represented by Nexsen Pruet, LLC and Douglas M. Schmidt APLC | Civil Action No. 2:10-MD-02179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br><br>MAG. JUDGE WILKINSON |

**<u>Memorandum in Support of Plaintiffs' Rule 54(b) Motion to Reconsider the Court's April 16, 2019 Order Granting BP's Motion for Entry of an Order Relating to the Disposal of Certain Evidence</u>**

Nexsen Pruet, LLC and Douglas M. Schmidt, APLC, represent approximately 780 of the medical opt-out Plaintiffs in the "B3 bundle" of the BP Oil Spill Class Action MDL 2179 (collectively "Plaintiffs" or "Nexsen Plaintiffs"). The Court's April 16, 2019 Order ("The Order") granting BP's Motion for Entry of an Order Relating to the Disposal of Certain Evidence ("The Motion") required Plaintiffs to take possession of any samples they do not want destroyed (the "Samples") within 35 days. Based on newly discovered evidence, the Order should be withdrawn and the Motion denied.

Plaintiffs' counsel is aware of the agreement wherein BP will continue to properly store the Samples for up to forty-five (45) days from May 21, 2019, to complete the transfer of all Samples to the possession of the Downs Law Group, who represents a significant number of BELO plaintiffs. Nexsen Plaintiffs have no objection to this agreement, given that all of the samples can be properly and safely transported to an accessible facility without disrupting the

chain of custody and that Plaintiffs will have reasonable access to the Samples. At this point, the logistics of this substantial transfer have not been hammered out by the parties. Should this agreement fail or otherwise be rejected by the Court, Plaintiffs submit the following arguments that justify the Court's reconsideration of the Order.

  Initially, BP's Motion was based upon unsupported assertions of BP's counsel that: (a) the samples were not valid for testing and (b) BP would be subject to the burdensome expense of storing the useless samples. After oppositions to the Motion were filed, BP failed to submit any evidence contradicting the expert opinion of Dr. Marco Kaltofen that the Samples were still able to be reliably tested. BP instead supported its Motion with an affidavit of a BP employee stating that BP has spent over $13 million dollars storing the samples, with no mention of the reliability of testing on any of the samples. See Declaration of Dr. Oliver Pelz In Support of BP's Motion for Entry of an Order Relating to the Disposal of Certain Materials, Doc. 25499-1 ("Pelz Declaration"; attached hereto as "Exhibit A"). As to the second basis of BP's Motion—the burdensome expenses of storing the Samples—the Pelz Declaration failed to mention three critical facts recently discovered by counsel for Plaintiffs:

  (1) After a visit to BP's storage facility in Fort Collins, Colorado, it was discovered that BP is storing a substantial number of other related samples with the Samples that are the subject of the Motion. The cost of storage will remain virtually the same regardless of the fate of the subject Samples. See Declaration of Michael Klein, attached hereto as Exhibit "C."

  (2) A letter from counsel for BP that resulted from an Order of the U.S. District Judge for the Northern District of Florida notes that the approximately $13 million expended by BP for storing the samples may have largely been the result of upfront, one-time costs, presumably for setting up the storage facility, including refrigeration and freezer components. See May 3, 2019

Letter from Keith Jarrett, Esq., of Liskow & Lewis, ("BP Letter") attached hereto as "Exhibit B." The "ongoing costs" set forth in the letter will remain essentially the same whether the Samples are transferred or destroyed. The Pelz Declaration may be accurate in its broad statements, but Plaintiffs have discovered that it is incomplete and misleading.

(3) Based on the recent inspection of the samples and investigation concerning storage costs and alternatives, there is no cost-effective method for Plaintiffs to identify what samples they need and to take possession of the samples that would not greatly exceed BP's current monthly costs of storage.

Thus, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, Plaintiffs as the Court to reconsider its April 16, 2019 Order and Deny BP's Motion for Entry of an Order Relating to the Disposal of Certain Evidence. In the alternative, the stay of proceedings should be lifted for the purpose of allowing Plaintiffs discovery related to the subject samples prior to disposal of the samples.

## ARGUMENT

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties . . . may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Court's April 16, 2019 Order is an interlocutory order, so a party may make a motion under Rule 54(b) for any order that is not final at any time before entry of a final judgment. Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981) ("As long as a district . . . court has jurisdiction over the case, then (in absence of prohibition by statute or rule), it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.").

Because motions to reconsider orders that are not final judgments should be granted sparingly and not simply used as a method of rehashing old arguments, courts generally view such motions under the same framework as Rule 59(e) motions. Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard: (1) whether the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) whether the movant presents newly discovered or previously unavailable evidence; (3) whether amendment is necessary in order to prevent manifest injustice; or (4) whether the motion is justified by an intervening change in controlling law." Clancy v. Employers Health Ins. Co., 101 F. Supp. 2d 463, 464 (E.D. La. 2000). This Motion is made on the basis of the second and third factors because there is newly discovered/previously unavailable evidence, and revision of the previous order is necessary to prevent manifest injustice. Plaintiffs offer affidavit from expert witness Michael Klein, who, on May 9, 2019, visited the BP storage facility where the Samples are preserved. The affidavit sets forth previously unavailable evidence regarding the storage facility, the continuing costs BP will be subjected to regardless of whether the samples at issue are destroyed, and the practical obstacles of taking possession that render the Court's April 16, 2019 Order manifestly unjust.

I. **PLAINTIFFS SHOULD NOT BE REQUIRED TO EXPEND POTENTIALLY MILLIONS OF DOLLARS TO PRESERVE BP'S EVIDENCE WHEN BP WILL INCUR NO SIGNIFICANT ADDITIONAL EXPENSE IN MAINTAINING THE STATUS QUO.**

The warehouse in which BP has housed the Samples is located in Fort Collins, Colorado. Exhibit B at 2. BP occupies and leases the <u>entire</u> facility for the sole purpose of "sample storage and preservation". <u>Id</u>; <u>see also</u> Exhibit C, ¶ 6. "BP is the <u>only</u> company using the facility, which also stores samples <u>in addition</u> to those that are the subject of BP's disposal motion." (Exhibit B at 2 (emphasis added)). This is information BP should have disclosed to the Court when the

4

motion to dispose of the Samples was first filed. Instead, BP took the position the Samples were no longer valid. When that position was attacked by Plaintiffs' experts, BP abandoned that unsupported argument and resorted to the Pelz Declaration with the cryptic claim of $13 million in storage expenses.[1] Because BP will have to continue paying rent to store the remaining evidence and because the front-loaded costs such as purchasing the proper containers and equipment are already sunk, the reduction in preservation costs to BP will be negligible at best, particularly when compared to what Plaintiffs will have to spend to transfer and preserve the Samples. (Exhibit C, ¶ 11) Expert witness Michael Klein, along with others including BP attorneys, visited the warehouse in which the Samples have been stored along with an indeterminate, but substantial, amount of evidentiary samples that are not the subject of BP's disposal motion. Upon his inspection, Mr. Klein concluded that under the current set-up, taking into account the continued rental fees and any managerial contracts that must continue into the foreseeable future due to the other evidence BP continues to preserve, BP will not, in fact, save any significant sum of money by transferring or disposing of the samples at issue. (Exhibit C, ¶¶ 10-11). This new information completely contradicts the sole basis of BP's initial motion to this Court. Without the extensive monetary burden BP claims to carry in preserving these samples, the balance of equities shifts in favor of BP preserving the materials. As discussed below, the transportation, relocation, and preservation of this unique evidence would place an impossible and undue hardship on the Plaintiffs, without noticeable benefit to BP. As it stands, the Court's April 16, 2019 Order will result in manifest injustice to the Plaintiffs, with little to no benefit to BP, due to the overwhelming costs and logistical constraints Plaintiffs would have to overcome to relocate the evidence.

---

[1] The "ongoing costs" to store and preserve the samples are essentially overhead costs for the Facility that will continue to be incurred because BP leases the entire Facility and continues to store samples there.

II.  **THE BALANCE OF EQUITIES DEMANDS THAT BP CONTINUE STORING THE SAMPLES, TAKING INTO ACCOUNT THE PROHIBITIVE COSTS TO PLAINTIFFS OF TRANSPORTING, STORING, AND PRESERVING THE SAMPLES WITHOUT THE BENEFIT OF THE CURRENT EQUIPMENT OR SPACE, WHEN COMPARED TO THE NEGLIGIBLE FINANCIAL BENEFITS BP WILL REAP BY DESTROYING THEM.**

Plaintiffs must have access to all samples BP is intending to destroy.  Plaintiffs were only recently informed that the Plaintiffs Steering Committee did not conduct the discovery necessary to prove any medical claims on the Samples or any other evidence because the Settlement Agreement was reached before the trial proceeded to that planned phase.  Without the benefit of any medical-specific discovery on these samples, Plaintiffs cannot simply retain what few they believe will be necessary or relevant to the cases.  Plaintiffs have not been able to conduct discovery regarding the samples or the circumstances of their collection and storage, and thus Plaintiffs will lose any option of examining the evidence themselves if they are destroyed.  BP offered no expert testimony to refute the assertion by Dr. Marco Kaltofen that the samples are capable of producing reliable, unique data.  Because these samples are still capable of producing reliable, relevant data and because Plaintiffs have not been able to conduct discovery regarding the collection, storage, and analysis of the samples, all 140,000 samples have the potential to be relevant evidence in this litigation and therefore must be preserved.

According to BP's counsel, BP spent an average of $2.5 million dollars on storage costs in the first few years after the oil spill.  (Exhibit B).  Presumably, these numbers included some, but possibly not all, of the build-out and equipment necessary for storage, because the total storage costs reduced significantly, to under one million dollars per year, once no further samples were being collected after 2015.  (Exhibit B at 3).  It follows that Plaintiffs will have to spend

6

roughly the same, if not more than what BP spent in construction and preservation costs over four years because Plaintiffs must take possession of all samples at once without the benefit of time or the custom-built facilities. By BP's own admission, the construction and storage of these samples has been a substantial burden – for a multi-hundred-billion dollar corporation. For Plaintiffs, undertaking such costs is utterly impossible. The imposition of such a substantial financial burden on the Plaintiffs, particularly when measured against the fact that BP carries no additional burden at all to continue storing the samples, would result in manifest injustice and a blatantly inequitable outcome.

## CONCLUSION

Because the samples can still be tested for reliable data, Plaintiffs must retain access to all evidence BP has asked the Court to destroy. Plaintiffs are unable to do so due to practical circumstances outside their control; however, BP suffers no true financial burden by being required to preserve the evidence because the $13 million dollars BP claimed in its Motion to this Court was almost entirely front-end, sunken costs. Requiring Plaintiffs to comply with the April 16, 2019 Order, as written, works a manifest injustice for Plaintiffs, as it requires them to carry out logistically impossible actions in order to secure what could be the best proof of their measure of exposure to the carcinogens that have caused their lifelong illnesses. Accordingly, Plaintiffs respectfully request that the Court issue an Order reversing its April 16, 2019 Order allowing BP to dispose of the evidence at hand. In the alternative, the Court should lift the stay of proceedings to allow Plaintiffs to conduct the necessary discovery on the evidence before its destruction.

        Respectfully Submitted,

        /s/ Paul A. Dominick
        Paul A. Dominick    Fed ID No. 577
        NEXSEN PRUET, LLC
        205 King Street, Suite 400 (29401)
        P.O. Box 486
        Charleston, SC  29402
        PHONE:  843.577.9440
        FACSIMILE:  843.720.1777
        PDominick@nexsenpruet.com

        and

        Douglas M. Schmidt   Fed ID No. 11789
        Douglas M. Schmidt, APLC
        335 City Park Avenue
        New Orleans, LA 70119
        PHONE: 504-482-5711
        FACSIMILE: 504-482-5755
        Dglsschmdt@yahoo.com

        Attorneys for Plaintiffs

Dated: June 13, 2019

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law has been served on all counsel by electronically uploading the same to File & Serve Xpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179 on June 13, 2019.

                                                /s/ Paul A. Dominick
                                                Paul A. Dominick