**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| | JUDGE BARBIER |
| Applies to: 12-cv-968: BELO and all BELO Cases | MAGISTRATE JUDGE WILKINSON |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER REGARDING PLAINTIFFS' SIGNATURES AND INITIALS ON DOCUMENTS ATTACHED TO BELO CMO NO. 1**

Defendants BP Exploration & Production Inc. and BP America Production Company (collectively, the "BP Parties") submit this Memorandum in Opposition to Plaintiffs' Motion for Reconsideration of Order Regarding Plaintiffs' Signatures and Initials on Documents Attached to BELO CMO No. 1 filed by The Downs Law Group ("Downs").[1]

As a threshold matter, Downs fails to demonstrate that extraordinary circumstances justify reconsideration of the Court's Order reaffirming the wet ink signature requirement set forth in BELO Cases Initial Proceedings Case Management Order No. 1 ("CMO No. 1").[2] Downs fails to meet the stringent requirements for reconsideration under Federal Rule of Civil Procedure 60(b) because it does not identify any changed circumstances supporting its request for reconsideration and instead offers arguments, unsupported by new facts or law, that were or could have been raised prior to the entry of the Court's Order.

Downs' motion should also be denied because the Court's Order regarding wet ink

---

[1]   Rec. Doc. 25705, Mot. for Recons. (June 7, 2019).

[2]   Rec. Doc. 14099, CMO No. 1 (Jan. 30, 2015).

signatures was correctly decided.  The requirement that plaintiffs personally sign Plaintiff Profile Forms ("PPFs") and authorizations for the release of medical, employment and other information is not new and is set forth in CMO No. 1 and the PPF itself.  The wet ink signature requirement serves an important and legitimate docket-management purpose.  It promotes the efficient administration of BELO lawsuits by ensuring that plaintiffs are personally involved in preparing these materials and that the information they provide in their initial disclosures is complete and correct.  The requirement of a wet ink signature to ensure the integrity of *Deepwater Horizon* claims has been used throughout this MDL with approval by the Fifth Circuit.[3]  These important purposes are not served by a process, suggested by Downs, that would allow PPFs to be verified with images of signatures that may have been collected by counsel years ago for other purposes, such as for submissions to the Claims Administrator.[4]  And nothing in the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement, as Amended on May 1, 2012 ("MSA") or the law authorizes, let alone requires, the Court to accept an image affixed by an attorney in lieu of an actual signature by a plaintiff.[5]

Plaintiffs are not prejudiced by the wet ink signature requirement.  It is no burden for plaintiffs who are filling out and reviewing their PPFs to initial or sign those pages.  The processes established in CMO No. 1 and BELO Cases Initial Proceedings Case Management Order No. 2 ("CMO No. 2") provide ample time—*months*—for plaintiffs to provide signed

---

[3]   *See Barrera v. BP, P.L.C. (In re Deepwater Horizon)*, 907 F.3d 232 (5th Cir. 2018) (per curiam).

[4]   The deadline for submission of Proof of Claims Forms to the Claims Administrator was February 12, 2015.  *See* Rec. Doc. 14113, Order (Jan. 30, 2015).  It is therefore likely that many of these signatures were collected for purposes of claims submissions more than four years ago.

[5]   Rec. Doc. 6427-1, MSA (May 3, 2012).

initial disclosures and to cure deficient disclosures.[6]  Indeed, Downs has followed the procedure set forth in CMO Nos. 1 and 2 to cure deficient initial disclosures by providing wet ink signatures for dozens of plaintiffs.

For all of these reasons, Downs' motion for reconsideration should be denied.

## ARGUMENT

### I. No Extraordinary Circumstances Justify Downs' Request For Reconsideration.

Downs moves for relief under Federal Rule of Civil Procedure Rule 60(b).[7]  Rule 60(b) is "'an extraordinary remedy which should be used sparingly.'"[8]  A Rule 60(b) motion is "'not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'"[9]  Rather, Rule 60(b) permits a party to seek relief only "under a limited set of circumstances including fraud, mistake, and newly discovered evidence."[10]  Rule 60(b)(6), the "catch-all" provision under which Downs moves, "is 'mutually exclusive' with the rule's other clauses and extends relief only in 'extraordinary

---

[6]  Rec. Doc. 25486, CMO No. 2 (Mar. 11, 2019).

[7]  Rec. Doc. 25705-1, Mem. in Supp. of Mot. for Recons., 2 (June 7, 2019).  "The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order." *Bros. Petrol., LLC v. Wagners Chef, LLC*, No. 17-6713, 2018 WL 5016212, at *1 (E.D. La. Oct. 16, 2018).  The Fifth Circuit treats a motion for reconsideration filed more than 28 days after the entry of an order as a motion for "relief from judgment" pursuant Federal Rule of Civil Procedure 60(b).  *Id.* (internal quotation marks omitted).  The Court entered its Order on April 16, 2019, *see* Rec. Doc. 25595, and Downs filed its Motion on June 7, 2019.

[8]  *United States v. City of New Orleans*, 947 F. Supp. 2d 601, 615 (E.D. La. 2013) (quoting *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)), *aff'd*, 731 F.3d 434 (5th Cir. 2013).

[9]  *Id.* (quoting *Templet*, 367 F.3d at 478).

[10]  *Gonzalez v. Crosby*, 545 U.S. 524, 528–29 (2005).

3

circumstances.'"[11]

No "extraordinary circumstances" justify Downs' motion. CMO No. 1 and the PPF have been in effect since January 2015 and have been entered on the docket of every BELO lawsuit. Downs has been involved with the BELO docket for this entire time and has never before objected to the CMO No. 1 requirements. Moreover, Downs makes no arguments that were not made or could not have been made when the wet ink signature requirement was discussed at the April 9, 2019 show cause hearing that addressed the lack of a wet ink signature by Downs' client Jose Hernandez.[12] Nor did Downs raise these issues in Hernandez's April 16, 2019 Further Supplemental Response that was submitted for the express purpose of addressing the wet ink signature requirement.[13] Downs already has made—and the Court already has considered— many of the arguments in the instant Motion, including the meritless assertion that the wet ink signature requirement imposes a burden on plaintiffs.[14] No extraordinary circumstances exist to justify reconsideration, and for that reason alone, Downs' motion should be denied.

## II. The Court's Order Is Correct And Should Not Be Reconsidered.

The Court's Order regarding wet ink signatures was correctly decided, and Downs' Motion therefore should be denied.

---

[11] *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 419 (5th Cir. 2018) (quoting *Hess v. Cockrell*, 281 F.3d 212, 215–16 (5th Cir. 2002)).

[12] Downs voluntarily dismissed six other BELO lawsuits prior to the hearing. Rec. Doc. 25576, Minute Entry, 2 (Apr. 9, 2019).

[13] *See* Rec. Doc. 19, Pl.'s Further Supplemental Response, *Hernandez v. BP Expl. & Prod., Inc. and BP Am. Prod. Co.*, Case No. 2:18-cv-09200 (Apr. 16, 2019).

[14] *Compare* Rec. Doc. 25705-1, Mem. in Supp. of Mot. for Recons., 4 (June 7, 2019), *with* Rec. Doc. 19, Pl.'s Further Supplemental Response, 1–2, *Hernandez v. BP Expl. & Prod., Inc. and BP Am. Prod. Co.*, Case No. 2:18-cv-09200 (Apr. 16, 2019).

4

### A. CMO No. 1 Placed Plaintiffs On Notice Of The Wet Ink Signature Requirement.

The fundamental misconception of the Motion for Reconsideration is that the Court imposed a new or unfair requirement of wet ink signatures, and that the BP Parties are attempting to apply the requirement retroactively.[15] In fact, as the Court noted, CMO No. 1 required plaintiffs to sign and initial these disclosure documents.[16] CMO No. 1 was entered by the Court on the MDL docket on January 30, 2015 and is entered on the docket of each individual BELO lawsuit.[17] It requires each plaintiff to provide a completed PPF "signed by plaintiff under penalty of perjury" and "Signed Authorizations for Release . . . ."[18] The first page of the PPF attached to CMO No. 1 instructs the plaintiff that "*[y]ou are signing* and submitting this Plaintiff Profile Form under penalty of perjury . . . ," and the Verification page requires the plaintiff to sign a statement affirming that "I . . . have reviewed the information provided" and that "*I have signed* and supplied the authorizations attached to this Verification."[19] A space for the plaintiff's initials or signature appears on each page of the PPF.

Indeed, the wet ink signature requirement was discussed at length at the April 9, 2019 show cause hearing involving Downs' client Jose Hernandez, whose PPF bore only an image of his signature that had been duplicated in all of the PPF initials blocks. Downs' co-counsel did not contest or claim to be unaware of the requirement of a wet ink signature. To the contrary, he

---

[15] Rec. Doc. 25705-1, Mem. in Supp. of Mot. for Recons., 5 (June 7, 2019).

[16] Rec. Doc. 25595, Order, 1 (Apr. 16, 2019).

[17] *See* CMO No. 1 ¶ VI(2).

[18] CMO No. 1 ¶ II(1).

[19] Rec. Doc. 14099-2, PPF, 1, 25 (Jan. 30, 2015) (emphases added).

expressed his agreement that this was a valid requirement that needed to be satisfied by his client and made the following statements at the hearing:

- "[T]hey're concerned that it's not a proper signature, and I think that is a valid concern."[20]

- "Okay. It may well be that it is the man's signature, but I can't say that, and I can find out."[21]

- "I think they have a legitimate issue, and I think it needs to be fixed."[22]

- "The defendants are entitled to an explanation, and they are entitled to a signature that binds him that can be used to impeach him in his deposition. There is no question about that."[23]

These comments show that plaintiffs' counsel understood that CMO No. 1 required their clients to actually review and personally sign and initial their PPFs. The Court's CMO No. 1 procedure provides plaintiffs with at least 90 days to complete this reasonable task. There is no legitimate basis for Downs now to complain, for the first time, that the requirement is somehow new or unfair or deprives plaintiffs of the ability to have their lawsuits heard.[24]

---

[20] Rec. Doc. 25577, Apr. 9, 2019 Tr. at 7:10–12.

[21] *Id.* at 10:19–20.

[22] *Id.* at 11:2–3.

[23] *Id.* at 11:24–12:2.

[24] Downs brings its motion for reconsideration on behalf of Jose Hernandez and others similarly situated. Rec. Doc. 25705, Mot. for Recons. (June 7, 2019). But Hernandez's initial disclosures are not at issue. The BP Parties agreed to accept supplemental proof of Hernandez's personal involvement in approving his initial disclosure information, Rec. Doc. 16, Response/Reply by the BP Parties, 2, *Hernandez v. BP Expl. & Prod., Inc. and BP Am. Prod. Co.*, Case No. 2:18-cv-09200 (Apr. 12, 2019), and that lawsuit was transferred to the United States District Court for the Southern District of Texas on May 14, 2019, *see id.* Rec. Doc. 21, Order. However, the fact that achieving that resolution required a Court hearing and further production of information for just one BELO plaintiff illustrates why the wet ink signature requirement is appropriate.

B.  **The Wet Ink Signature Requirement Serves An Important Purpose.**

The Court entered CMO No. 1 for the purpose of achieving "judicial economy and efficiency" and "avoiding undue delay" in the adjudication of BELO cases.[25] Toward that goal, CMO No. 1 requires the parties to disclose certain material information at the outset of the lawsuit without awaiting discovery requests.[26] For plaintiffs, the required disclosures include core information about, *inter alia*, the circumstances of the alleged exposure, diagnosis and treatment of the alleged condition, and documentation of alleged damages.[27]

To achieve efficiency, the disclosure information must be complete and accurate. This requires plaintiffs personally to be involved in providing the disclosure information. If plaintiffs are actually completing and reviewing their PPFs, it is a simple matter for them to sign or initial each page, thereby demonstrating their involvement.[28] At the February 27, 2019 hearing concerning 148 motions to compel initial disclosures, the Court recognized "the importance of doing these disclosures and doing them fully."[29] The Court noted that it is not unduly

---

[25] CMO No. 1, at 2.

[26] *Id.* ¶ II.

[27] *Id.* ¶ II(1).

[28] Downs contends that it is unnecessary for plaintiffs to initial each page of the PPF, as other documents—such as verified answers to interrogatories pursuant to Federal Rule of Civil Procedure 33—do not require an initial on each page. Rec. Doc. 25705-1, Mem. in Supp. of Mot. for Recons., 5–6 (June 7, 2019). Here, requiring plaintiffs to initial each page of the PPF serves the important purpose of ensuring that plaintiffs have reviewed all of the information contained therein.

[29] Feb. 27, 2019 Tr. at 5:13–15.

burdensome for plaintiffs personally to participate in the litigation of their lawsuit by completing this requirement.[30]

CMO No. 1 also requires plaintiffs to sign forms authorizing the release of medical, employment, Social Security, and Claims Administration information. These authorization forms are attached as exhibits to the PPF. It is obvious that these forms must bear authentic signatures if they are to be effective and allow third parties to provide relevant records containing plaintiffs' information. Given that plaintiffs must sign the authorization forms, there is no reason why they cannot also sign and initial the PPF pages containing their disclosure information.

The consequence of not obtaining wet ink signatures already has been demonstrated in the BELO docket. There have been numerous instances in which plaintiffs' counsel have submitted PPFs that were patently incomplete and obviously prepared without review by the plaintiffs. Many of these PPFs had only an image or photocopy of a signature or initials that could have been obtained years earlier in connection with submissions to the Claims Administrator.[31] For many of these, it was apparent that the plaintiffs had not even reviewed the disclosures. Important information such as identities of medical providers, witnesses to the alleged underlying events, and details of the alleged condition are not provided and noted as "will supplement." Indeed, in many of these disclosures, basic information that would have been

---

[30]   *See, e.g.*, *id.* at 6:3–4 ("That's a plaintiff problem, and they have to get on the stick. They have to show up."); *id.* at 21:4–9 ("[Plaintiffs] think that they turn their case over to a lawyer and it's all on the lawyer, and it ain't. Sure, a lawyer has a lot of responsibility, but this, the provision of basic information . . . .").

[31]   *See* Rec. Doc. 25577, Apr. 9, 2019 Tr. 12:13–14 (observing that Hernandez's PPF "looks like somebody copied and pasted the same signature over and over again").

8

readily known to plaintiffs, such as their place of birth and spouse's name, are marked as "will supplement."[32]

Plaintiffs' failure to provide complete initial disclosures has led to delays in venue transfers and reallocations of BELO lawsuits. It has necessitated motions practice before this Court and entry of a new CMO No. 2 to create a process for addressing the numerous lawsuits in which CMO No. 1's requirements have not been met. More than 1,300 plaintiffs who provided incomplete disclosures or failed to provide disclosures already have been the subject of motions or appeared on monthly status reports submitted to the Court. More than 360 plaintiffs have been ordered to show cause why their cases should not be dismissed. The deficiencies addressed in those motions, reports, and proceedings could have been easily avoided if plaintiffs had simply reviewed their disclosures and signed and initialed them, as required by CMO No. 1.

### C. The Importance Of Wet Ink Signatures Is Well-Established In This MDL Proceeding.

Plaintiffs' characterization of the wet ink signature as a new or unfair requirement also ignores the history of this MDL proceeding. The Court has used the requirement of wet ink signatures to demonstrate compliance with court orders and to affirm claimants' commitment to proving their claims. It is proper for the Court to use this procedure to manage the extraordinary number of claims in the *Deepwater Horizon* MDL.

For example, Pretrial Order No. 65 required B1 plaintiffs to provide written answers, signed by plaintiff under penalty of perjury, to questions regarding their alleged damages.[33] The Court issued an Order to Show Cause identifying plaintiffs who failed to comply with the

---

[32] *See, e.g.*, Ex. A, Excerpt of PPF, *Fountain v. BP Expl. & Prod., Inc. and BP Am. Prod. Co.*, Case No. 2:18-cv-10509.

[33] Rec. Doc. 23825, Pretrial Order No. 65, at 3 (Jan. 11, 2018).

requirement.[34]  On a motion for reconsideration, the Court upheld the dismissal of one plaintiff's claims in part because, as in these BELO lawsuits, his signature appeared to have been copied and pasted from another filing rather than a new signature.[35]  The Court explained:

> [T]he Court questions whether Wilfred Gallardo, Jr. in fact signed the PTO 65 statement.  Rather, it appears that the signature from an earlier affidavit submitted in late 2012 or early 2013 was copied-and-pasted to the PTO 65 submission.  (*Compare* pages 5 and 10 of Rec. Doc. 24713-6).[36]

Similarly, Pretrial Order No. 60 required B1 plaintiffs to file individual lawsuits accompanied by sworn statements with a wet ink signature.[37]  The Court subsequently dismissed noncompliant claims.[38]  The Fifth Circuit affirmed and expressly permitted dismissal of plaintiffs' claims for failure to provide a wet ink signature.[39]  The Court of Appeals recognized the District Court's authority to manage its MDL docket to maximize efficiency: "The ability for 'judges to enforce orders pertaining to the progress of their cases' is most important in '[MDL] cases, where the very purpose of the centralization

---

[34]  Rec. Doc. 24686, Order (July 10, 2018).

[35]  Rec. Doc. 25198, Order, 6 (Nov. 29, 2018).

[36]  *Id.*

[37]  Rec. Doc. 16050, Pretrial Order No. 60, at 3–4 (Mar. 29, 2016); Rec. Doc. 16050-1, Sworn Statement (Mar. 29, 2016).  Pretrial Order No. 63, which applied to B3 claims, likewise required plaintiffs to file individual lawsuits with sworn statements signed by plaintiffs.  *See* Rec. Doc. 22295, Pretrial Order No. 63, at 3 (Feb. 22, 2017); Rec. Doc. 22295-1, Sworn Statement (Feb. 22, 2017).

[38]  Rec. Doc. 22003, Order (Dec. 16, 2016).

[39]  *Barrera v. BP, P.L.C. (In re Deepwater Horizon)*, 907 F.3d 232 (5th Cir. 2018) (per curiam).

before the transferee judge is the efficient progress of the cases in preparation for trial.'"[40]

### D. Copied-And-Pasted Signatures Provide No Indicia Of Authenticity And Should Not Be Permitted.

Downs argues that plaintiffs should be permitted to sign and initial PPFs and authorizations using "electronic signatures," rather than personally signing and initialing them under penalty of perjury using wet ink, as directed in CMO No. 1.[41]

As an initial matter, the copied-and-pasted images of plaintiffs' signatures or initials at issue here are a far cry from the authenticated, digital signatures that are sometimes used in commercial transactions. "[A]n electronic or digital signature . . . is not a digitized image of a handwritten signature or of a typed signature."[42] True digital signatures use technology that provides an indicia of reliability (and prevents fraudulent or unknowing use of the signature).[43] In contrast, plaintiffs have submitted PPFs and authorizations with images of signatures and/or initials that appear to have been obtained at prior times for other purposes and that may have been added by someone other than plaintiffs themselves. The copied-and-pasted images fail to provide any assurance that plaintiffs participated in providing the information in their disclosures

---

[40]    *Id.* at 235 (alteration in original) (quoting *In re Asbestos Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 248 (3d Cir. 2013)).

[41]    Rec. Doc. 25705-1, Mem. in Supp. of Mot. for Recons., 4 (June 7, 2019).

[42]    5 Saul Litvinoff & Ronald J. Scalise Jr., *Louisiana Civil Law Treatise, Law of Obligations* § 12.30.2 (West 2d ed. 2018).

[43]    *See id.* (explaining that a digital signature uses encryption technology to create a digital fingerprint unique to the document); *see also* Alan S. Gutterman, *Business Transactions Solutions* § 128:30 (West 2019) ("A digital signature is not a digitized form of the sender's handwritten signature. A digital signature is an encrypted message digest the sender creates using a computer program. The signature is attached to the electronic communication and both the message and the digital signature are sent to the intended recipient for verification.").

11

or approved the content.  As discussed above, many of the PPFs that lack wet ink signatures also reflect a lack of involvement by the plaintiff in the disclosure process, for example, by failing to include basic information that would be known to the plaintiff.

Downs cites to the U.S. Federal ESIGN Act and the Uniform Electronic Transactions Act (adopted in Louisiana).[44]  But these statutes concern the use of electronic signatures in commerce.[45]  The ESIGN Act, which governs commercial transactions, expressly states that it "shall not apply to . . . court orders or notices, or official court documents (including briefs, pleadings, and other writings) required to be executed in connection with court proceedings."[46]  In any event, as discussed, the cut-and-pasted signatures that some plaintiffs' counsel have used on their PPFs are not true electronic signatures and bear no indicia of authenticity.  There is no basis to accept these images in lieu of actual wet ink signatures.

Downs also argues that the MSA does not prohibit the use of electronic signatures.[47]  But nowhere does the MSA authorize this practice.  Indeed, it is significant that the MSA explicitly *prohibits* counsel from signing forms, including those relating to the BELO process, on behalf of their clients.  Section III(B) of the MSA states that while counsel may *submit* claim forms, proof, correspondence, and other documents on behalf of a class member, "counsel for an individually-represented MEDICAL BENEFITS SETTLEMENT CLASS MEMBER *may not sign, on behalf*

---

[44] Rec. Doc. 25705-1, Mem. in Supp. of Mot. for Recons., 4 (June 7, 2019).

[45] 15 U.S.C. § 7001(a) (act governs "any transaction in or affecting interstate or foreign commerce"); La. Stat. Ann. § 9:2605(B)(1) (act applies "only to transactions between parties, each of which has agreed to conduct transactions by electronic means").  The Louisiana statute permits electronic signatures on applications for warrants, but only when "security procedures [are] in place [to] insure the authenticity of the digital signature." La. Stat. Ann. § 9:2603.1.

[46] 15 U.S.C. § 7003(b)(1).

[47] Rec. Doc. 25705-1, Mem. in Supp. of Mot. for Recons., 3 (June 7, 2019).

*of that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER*, (i) an OPT OUT request, (ii) a revocation of an OPT OUT, (iii) a PROOF OF CLAIM FORM, (iv) a NOTICE OF INTENT TO SUE, or (v) a MEDIATION INFORMATION FORM."[48] The practice that Downs asks the Court to approve is very similar to the practice that is prohibited by the MSA. Downs asks that it be allowed to sign on behalf of unavailable clients by affixing a stored image of its client's signature and initials to a PPF. There is no assurance that the client is even aware that his signature and initials have been used or that the disclosures have been submitted. Allowing signatures and initials to be copied and pasted by counsel onto plaintiffs' disclosures is inconsistent with this MSA prohibition.

### E. Plaintiffs Are Not Prejudiced By The Wet Ink Signature Requirement.

The wet ink signature requirement serves an important purpose in ensuring that plaintiffs are personally involved in providing disclosure information. There is no prejudice to plaintiffs by this requirement.

CMO No. 1 has been entered on the Court's docket and known to plaintiffs since January 2015.[49] Thus, plaintiffs could have completed their PPF and current authorization forms even before they filed their complaints, such as when plaintiffs' counsel was conducting its investigation to prepare the factual allegations of the complaint. After the complaint is filed, CMO No. 1 provides plaintiff 90 days to complete, sign and initial the PPF and authorization forms.[50] This is more than enough time. But even if it were not, CMO No. 2 effectively creates a "cure" period between when deficient disclosures are reported to the Court and when the Court

---

[48] MSA § III(B).

[49] Rec. Doc. 14099, CMO No. 1 (Jan. 30, 2015).

[50] CMO ¶ II.

13

schedules a show cause hearing on those deficient disclosures. In practice, the period between when a plaintiff first appears on the status report to the Court and when the show cause hearing is scheduled has been more than a month, and plaintiffs have managed to cure numerous deficient disclosures during these time periods.[51] Downs' assertion that plaintiffs are given "only 3 to 4 days to comply" is simply wrong.[52]

If plaintiffs actually participate in providing information and reviewing their PPFs and authorizations, it is no burden at all for them to sign or initial the pages that they are reviewing. Nor should it be an issue for Downs to contact his clients for purposes of satisfying Court-ordered disclosure obligations. Indeed, in the case of Jose Hernandez, Downs' co-counsel was able to contact the client and offer additional evidence from him within one day of the hearing, and Hernandez's case was not dismissed. But this supplementation process is not practical for all of the thousands of BELO cases. The wet ink signature requirement is simple, does not prejudice plaintiffs, and furthers the goals of expedient adjudication of BELO lawsuits.

## CONCLUSION

For the foregoing reasons, Downs' Motion for Reconsideration should be denied.

---

[51] CMO No. 2 directs the BP Parties to file a status report on the first of each month concerning BELO plaintiffs' compliance with disclosure requirements. CMO No. 2, § 2. Category I of the status report consists of a list of BELO lawsuits in which plaintiffs failed to provide disclosures or provided only incomplete disclosures. *Id.* § 2(B)–(C). Upon reviewing the report, the Court may "issue an order requiring <u>full and complete</u> disclosures by a date certain approximately thirty (30) days later." *Id.* § 3. Category II of the status report consists of a list of BELO lawsuits "in which plaintiffs have failed to provide full and complete disclosures after having been ordered to do so." *Id.* § 2(D). Plaintiffs in Category II are required, by separate order, to appear at a show cause hearing to explain why their cases should not be dismissed for failure to prosecute. *Id.* § 4.

[52] Rec. Doc. 25705-1, Mem. in Supp. of Mot. for Recons., 5 (June 7, 2019).

June 17, 2019                                             Respectfully submitted,

    */s/ Don K. Haycraft*
Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

    */s/ Kevin M. Hodges*
Kevin M. Hodges
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 434-5000
Telefax:  (202) 434-5029

    */s/ Catherine Pyune McEldowney*
Catherine Pyune McEldowney
MARON MARVEL BRADLEY ANDERSON & T.
1201 North Market Street, Suite 900
Wilmington, DE 19801
Telephone:  (302) 425-5177
Telefax:  (302) 425-0180

    */s/ Georgia L. Lucier*
Georgia L. Lucier
HUNTON ANDREWS KURTH LLP
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Telefax:  (713) 220-4285

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY***

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of June 2019.

*/s/ Don K. Haycraft*
Don K. Haycraft