UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 SECTION: J JUDGE BARBIER |
| This Document Relates to: *All Claims In Pleading Bundle B3* | * * | MAG. JUDGE WILKINSON |

**BP'S PROPOSALS FOR FUTURE CASE MANAGEMENT OF THE B3 BUNDLE**

Pursuant to the Court's June 26, 2019 Order (Rec. Doc. 25749), BP America Production Inc. and BP Exploration & Production Inc. (together, "BP") respectfully submit the following proposals regarding future case management of the B3 bundle. Based on its experience with similar claims, BP recommends a process that would focus on targeted approaches to four broad groups of the approximately 935 plaintiffs that remain in the B3 bundle. As discussed below, these approaches will allow the parties and the Court to efficiently evaluate those plaintiffs' claims that have not already been released, with key information necessary for further disposition, possible resolution and, if necessary, ultimate trial.

**I.      MDL 2179 DOCKET OVERVIEW**

Next week's status conference follows a history of significant progress in these MDL proceedings. As the Fifth Circuit has remarked, MDL 2179 is a consolidated litigation of "gargantuan size and extraordinary complexity." *In re Deepwater Horizon*, 819 F.3d 190, 197 (5th Cir. 2016). As part of MDL 2179, post-April 20, 2010 personal injury claims and certain other claims were included in Bundle B3. (Rec. Doc. 569)  Approximately 935 B3 plaintiffs currently remain before the Court.

Since 2010, the MDL has involved a massive volume of motion practice, three bench trials, multiple class settlements, government settlements, individual settlements, test cases, and numerous pre-trial orders, all of which have served to advance the pre-trial disposition of remaining claims. Several of the resolutions in the MDL, as well as later MDL case management efforts and pre-trial orders, have applied to the B3 bundle. In particular, Pretrial Order 63 dismissed the B3 Master Complaint and required B3 plaintiffs to file individual complaints detailing their claims. (Rec. Doc. 22295) Pretrial Order 66 identified a substantial number of B3 plaintiffs whose claims were released through the Medical Benefits Settlement Agreement (the "MSA") approved in early 2013, a settlement under which more than 27,000 class members have received benefits to date. (Rec. Doc. 24282; *see also* May 6, 2019 Status Report from the *Deepwater Horizon* Medical Benefits Settlement Claims Administrator, Rec. Doc. 25611) In addition, Pretrial Orders 63 and 66 have provided the Court and the parties with additional basic information about the remaining B3 plaintiffs that now enables the development of appropriate next steps and case management processes tailored to the remaining B3 plaintiff population.

## II.     BP'S PROPOSALS FOR FUTURE CASE MANAGEMENT OF B3 BUNDLE

Based on information about the 935 remaining B3 plaintiffs that BP has obtained through the PTO 66 process, BP has been able to identify four separate groups of B3 plaintiffs. Each group presents similar legal and factual questions about their individual personal injury claims. These four groups include:

1. Approximately **31** plaintiffs who are apparent MSA class members and thus have released their personal injury claims against BP;

2. Approximately **12** plaintiffs who bring only contract, not personal injury claims, against BP;

3. Approximately **281** plaintiffs who assert personal injury claims against BP solely in their capacity as a resident of or tourist to the Gulf region; and

>     4. Approximately **620** plaintiffs who assert personal injury claims against BP in connection with work they performed on the *Deepwater Horizon* spill response.[1]

BP respectfully suggests a future case management process for each of these four plaintiff groups that is tailored to issues common to each group's claims, as described below.[2]

### A. MSA Class Members Who Have Released Their Claims

*First*, BP proposes that the Court implement a protocol to address the claims of remaining B3 plaintiffs who are or appear to be MSA class members. Based on information that plaintiffs provided pursuant to PTO 66, including in their Particularized Statements of Claim ("PSOC"), BP has identified approximately **31** B3 plaintiffs who are or appear to be MSA class members because they are cleanup workers and/or resided within certain geographic zones specified in the MSA. BP has been unable to tie any of these 31 individuals to valid MSA opt outs. Thus, these plaintiffs appear to be class members who have provided a comprehensive release of their personal injury claims against BP.

BP respectfully requests that this Court implement a protocol whereby these plaintiffs must show cause why their claims have not been released under the terms of the MSA. Pursuant to this process, BP would provide information identifying the plaintiffs it believes are MSA class members and the basis for that belief. The identified plaintiffs would then be required to demonstrate that they are not MSA class members whose claims have been released. To the extent

---

[1] BP does not yet have or is in the process of reviewing information provided by 22 B3 plaintiffs who had not complied with PTO 66 at the time of the Court's June 26, 2019 Order. Accordingly, these individuals are not reflected in the numbers for each plaintiff group set forth above. Similarly, the 620 figure for cleanup worker plaintiffs in the fourth group includes 12 plaintiffs whose claims require further analysis to ensure proper categorization.

[2] BP has met and conferred with Nexsen Pruet and the Falcon Law Firm regarding these proposals. BP believes that those counsel do not oppose BP's suggested approach for the first two groups identified above—the remaining MSA class members and the plaintiffs bringing only contract claims. The parties were unable to reach an accord on proposed next steps for the resident or cleanup worker plaintiffs, however.

that these plaintiffs are unable to demonstrate that they are *not* a member of the MSA class, their claims should be dismissed with prejudice as they have already been released.

### B. B3 Plaintiffs Who Assert Only Contract Claims

*Second*, BP proposes that the Court remove from the B3 bundle the **12** B3 plaintiffs who are pursuing only contract claims and allege no medical or personal injury claims.[3] The factual and legal issues presented by these claimants differ materially from other claimants in the B3 bundle who are pursuing medical or personal injury claims, and they should be placed on a separate case management track.

The B3 plaintiffs' contract claims are more akin to the claims pending in the B1 pleading bundle than to the other B3 claims—and in fact four of the 12 plaintiffs at issue (Robert Evans, 16-03966; Jamie Lee Gaspard, 13-04437; Roger Latrigue, 17-03353; Lawson Environmental Services, LLC, 12-00740) already have *the same claims* now pending both in the B3 bundle and in the B1 bundle, where they are subject to the PTO 67 mediation process. In addition, certain of these 12 plaintiffs' claims present release issues similar to those that have been briefed for the B1 plaintiffs pursuant to Pretrial Order 64 (Rec. Doc. 22297). Specifically, based on BP's review to date, it appears that several of the 12 plaintiffs either entered into GCCF releases or were confirmed by the Claims Administrator to be members of the Economic and Property Damages Settlement Class, and thus may have previously released their claims. Accordingly, BP proposes that the Court consider severing these 12 claims from the B3 bundle and reallocating them to the B1 bundle, or proceeding with a process similar to that followed for the B1 claims, with defendants

---

[3] Those plaintiffs are: (1) William Brehm, 17-03412; (2) Coastal Water Cleaners and Environmental Services, LLC, 11-02621; (3) Nicholas W. Collier, 17-03356; (4) Anh Ngoc Dang, 17-02387; (5) Robert Evans, 16-03966; (6) Jamie Lee Gaspard, 13-04437; (7) John L. Howard, 17-03347; (8) Jesco Construction Corporation of Delaware, 11-00911; (9) Roger Latrigue, 17-03353; (10) Lawson Environmental Services, LLC, 12-00740; (11) Richard J. Pinell d/b/a Billy Sue, Inc., 17-03349; and (12) Machelle Steiner, 17-03387.

having the opportunity to raise arguments that certain of these plaintiffs have previously released their claims. BP will be prepared to discuss these claims further at the status conference.

### C. B3 Plaintiffs Alleging Injuries Only As Residents and Tourists

*Third,* BP respectfully proposes that the Court implement a protocol, such as a case management order ("CMO"), for B3 plaintiffs who are bringing personal injury claims against BP solely as residents or tourists (the "Resident Plaintiffs"). Approximately **281**, or one-third, of the 935 remaining B3 plaintiffs assert that they were exposed to harmful levels of oil and/or chemical dispersants that allegedly caused their injuries while they were living or visiting the Gulf region. None of these 281 Resident Plaintiffs claim that they were injured while working as a cleanup worker for BP. This is in contrast to the balance of the B3 plaintiffs—620 of them (the "Cleanup Worker Plaintiffs")—who each allege that they were exposed to harmful levels of oil and/or dispersants while performing a myriad of spill response activities offshore, nearshore, or onshore at various points in time across the five Gulf states.

The Resident Plaintiffs' claims differ markedly from those of the Cleanup Worker Plaintiffs and warrant separate case management procedures. As the parties' experience in the Back End Litigation Option ("BELO") cases demonstrates, cleanup workers' claims turn on a multitude of highly-individualized factors related to the nature, duration, and locations of each individual's work on the spill response—such as each person's specific job duties, job locations (which in many cases changed each day), duration of work (which could be sporadic), the distance from the oil and/or dispersant on any of the days allegedly worked, and whether the worker wore prescribed personal protective equipment ("PPE"), among other things. All of these considerations are needed to assess whether a worker was exposed to harmful levels of oil or dispersant and on what days. In the BELO cases, extensive and costly discovery of both sides has been or will be required to gather this information for each and every plaintiff.

5

In contrast, Resident Plaintiffs' claims do not require this same type of highly-individualized inquiry. This is because Resident Plaintiffs' claimed exposures allegedly occurred onshore, at fixed locations at or near where other B3 plaintiffs (and community members) lived, over a consistent period of time. The Resident Plaintiffs did not perform any response activities for BP or its contractors, have unique experiences or contact with oil or dispersants while working on the response, or have occasion to wear PPE. Unlike the Cleanup Worker Plaintiffs, key questions about whether the Resident Plaintiffs were in fact exposed to oil or dispersants and whether their alleged illnesses could have been caused by any such exposure present common issues that could be resolved efficiently across the entire group of Plaintiffs.

For these reasons, the 281 Resident Plaintiffs' claims can best be advanced through a CMO that provides for a targeted and efficient fact and expert discovery period focused on the threshold issue of general causation. For example, the Resident Plaintiffs would provide their medical records, as well as additional information about their alleged medical conditions, alleged routes of exposure (212 of the 281 Resident Plaintiffs indicated exposure through dermal contact, inhalation, *and* ingestion, without specifying in most cases how exposure through "ingestion" allegedly occurred). This information would allow the parties and the Court to better understand and assess the Resident Plaintiffs' claims.

Fact discovery of BP could also proceed efficiently. Unlike the Cleanup Worker Plaintiffs, where BP may have employment records, time worked records, or other plaintiff-specific information, BP does not have information regarding these Resident Plaintiffs. In addition, extensive monitoring and sampling data relating to these claims has been publicly available for many years and is already accessible to Plaintiffs.

After this additional factual information is exchanged, BP proposes a narrow expert discovery period focused on general causation issues. The Resident Plaintiffs would produce one or more expert reports addressing general causation for the Resident Plaintiffs (as they see fit), followed by one or more expert reports by BP in rebuttal to the opinions in those reports. Expert reports would focus on whether the Resident Plaintiffs were exposed to any oil and/or dispersant from the spill or response, and if so, whether any such levels of exposure, or dose, could have caused the Resident Plaintiffs' conditions. Following the completion of this process, the Court can set time for an appropriate *Daubert* consideration, as well as dispositive motions, as appropriate.

This proposal would advance a substantial portion of the B3 bundle efficiently and with limited burden on the parties and the Court. Equally important, proceeding on the Resident Claims would not interfere with or duplicate work underway by other federal district courts to assess causation issues in the BELO cases, including Judge Morgan in this District or Judge Rodgers in the Northern District of Florida because Resident Plaintiffs make up only a small portion—just 14, or less than .4%—of the more than approximately 3,800 total remaining BELO plaintiffs. In stark contrast, Resident Plaintiffs make up roughly one-third of the B3 bundle. Finally, Resident Plaintiffs' claims, unlike those of Cleanup Workers, are unlikely to involve indemnification issues and potential additional defendants/contractors. BP's proposal for the Resident Plaintiffs would assist in advancing final resolution of these and other remaining B3 claims.

### D.    BP's Proposal for Cleanup Worker Plaintiffs

*Finally*, BP respectfully proposes that the Court implement a separate protocol for the **620** Cleanup Worker B3 Plaintiffs. This protocol would provide a path forward that takes into account the more substantial discovery that will be required of both Plaintiffs and BP in those cases (as has been demonstrated in other Cleanup Worker cases to date). As to timing, BP suggests that this

Court continue to stay the Cleanup Workers' claims until progress is made in the Resident Plaintiff group, which can be done expeditiously.  The parties could then revisit the status of these claims at a hearing set upon completion of the expert period applicable to Resident Plaintiffs.  This would allow the parties to leverage learnings and gain efficiencies from advancement of the Resident Plaintiffs' claims.  This time period would also allow additional progress to be made in the BELO docket, which has overlapping legal and expert issues being heard by other federal courts that could bear upon the B3 Cleanup Worker claims.  At that time, the Court could implement a protocol or CMO similar to the one for Resident Plaintiffs described above focused on causation issues, provided that any such schedule account for the more extensive information exchange required in these cases.  Thus, BP respectfully proposes that the Court set a status hearing to further assess case management of the Cleanup Workers' claims after the Resident Plaintiffs' process is underway.

Respectfully submitted,

*/s/ Don Haycraft*
Don Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
A. Katrine Jakola, P.C.
(katie.jakola@kirkland.com)
Kristopher Ritter
(ritterk@kirkland.com)
Christina L. Briesacher
(christina.briesacher@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Counsel for BP America Production Inc. and BP Exploration & Production Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **BP's Proposals for Future Case Management of the B3 Bundle** has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of July, 2019.

*/s/ Don Haycraft*
Don Haycraft