# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30727

United States Court of Appeals
Fifth Circuit

**FILED**
June 26, 2019

Lyle W. Cayce
Clerk

In re: DEEPWATER HORIZON

-------------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on behalf of themselves and all others similarly situated; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

   Plaintiffs-Appellees,

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

   Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Louisiana

No. 17-30727

Before GRAVES and OLDHAM, Circuit Judges.[*]

ANDREW S. OLDHAM, Circuit Judge:

We've twice before explained how to "match" revenues and expenses under the Deepwater Horizon Class Action Settlement Agreement. The question presented is whether the district court deviated from our mandate. It did.

I.

On April 20, 2010, Deepwater Horizon exploded and began leaking oil into the Gulf of Mexico. Two years later, the district court simultaneously certified a class of plaintiffs and approved a class action Settlement Agreement. We ultimately affirmed the district court's decision. *See In re Deepwater Horizon*, 739 F.3d 790, 796, 821 (5th Cir. 2014).

The "settlement" settled little. To the contrary, it sparked vehement disputes over its terms and the amounts claimants were entitled to recover. The Settlement Agreement establishes a Court Supervised Settlement Program ("CSSP"): A Claims Administrator oversees third-party accountants who process individual claims in the first instance. *See* DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT § 4.3.2. Either party can appeal an initial claim determination to a three-person Claims Administration Panel. *Id.* §§ 4.3.4, 5.11.4, 6.1.2.3, 6.1.2.4. At the back end, the district court has discretion to review any disputes over the settlement's implementation—including claim determinations. *Id.* §§ 4.3.2, 4.3.4, 4.4.7, 6.6. From there, either party can appeal to us. *See In re Deepwater Horizon* (*Matching Decision*), 732 F.3d 326, 332 n.3 (5th Cir. 2013) ("Based on its use throughout the Settlement, the term 'the Court' appears to refer to the district

---

[*] Judge Edith Brown Clement was a member of the panel that heard oral argument. She has since recused and has not participated in this decision. This case is being decided by a quorum. *See* 28 U.S.C. § 46(d).

2

Case: 17-30727    Document: 00515039530    Page: 3    Date Filed: 07/18/2019
Case 2:10-md-02179-CJB-DPC   Document 25892-1   Filed 07/22/19   Page 3 of 9

No. 17-30727

court. . . . However, the parties clearly intended a broader interpretation of the term—one that retained their right to appeal to this court—as shown by BP's appeal and Class Counsel's failure to object."). And while the district court's review is discretionary, *see* SETTLEMENT AGREEMENT § 6.6, ours apparently is not, *see Matching Decision*, 732 F.3d at 332 n.3 (finding jurisdiction under the collateral order doctrine).

Underlying this elaborate apparatus are myriad claims for money. This appeal involves only one—a "Business Economic Loss" ("BEL") claim. BEL claims provide compensation for the difference between a business's *actual* profits during a three-month period after the oil spill and its *expected* profits over that same period. Expected profits are calculated based on actual profits during a "comparable" period before the spill. SETTLEMENT AGREEMENT Ex. 4C at 1–2. The claimant provides the comparators by designating a post-spill Compensation Period—"three or more consecutive months between May and December 2010"—and a pre-spill Benchmark Period—those same months in 2009, averaged over 2008–2009, or averaged over 2007–2009. *Id.* at 2–3. In relevant part, the Claims Administrator then determines the variable profits for both periods and subtracts the Compensation Period profits from the Benchmark Period profits. *Id.* at 3.

The parties' disputes over this seemingly simple formula have generated an entire body of federal common law in this Circuit. At the risk of adding still more pages to the corpus, we briefly recount the bare essentials here.

In the beginning, the Claims Administrator announced "he would typically consider both revenue and expenses in the period in which those revenues and expenses were recorded" no matter how the claimant recorded them; he "would not typically re-allocate such revenues or expenses to different periods." *Matching Decision*, 732 F.3d at 330–31 (quotations omitted). BP objected that this approach would give some claimants inflated awards simply

3

Case: 17-30727    Document: 00515039530    Page: 4    Date Filed: 07/18/2019
Case 2:10-md-02179-CJB-DPC   Document 25892-1   Filed 07/22/19   Page 4 of 9

No. 17-30727

because they recorded associated revenues and expenses at different times. *Id.* at 331. It argued the Settlement Agreement required the Claims Administrator to reallocate or "match" a business's expenses to any associated revenues when calculating profits for the Benchmark Period and the Compensation Period. The district court disagreed. *Ibid.*

In the *Matching Decision*, we reversed in part and vacated in part. Insofar as the Claims Administrator asserted the power to disaggregate revenues and expenses that a claimant had *already matched*, we instructed the district court to "make certain that this is not occurring." *Id.* at 335. With respect to those claimants who did *not* match their expenses to revenues, we suggested the Settlement Agreement might require the Claims Administrator to match those claims as well. *Id.* at 336–38. But we ultimately elected not to decide "whether a matching principle should apply to all claims." *Id.* at 339. Instead, we directed the district court to address that question in the first instance after "develop[ing] a more complete factual record." *Ibid.*

On remand, the district court did just that. After revisiting the Settlement Agreement's language, the court concluded "that the provision for subtracting corresponding variable expenses requires that revenue must be matched with the variable expenses incurred by a claimant in conducting its business, and that does not necessarily coincide with when revenue and variable expenses are recorded." *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. MDL 2179, 2013 WL 10767663, at *3 (E.D. La. Dec. 24, 2013). It then instructed the Claims Administrator to develop a policy implementing that view. *Ibid.*

The result was Policy 495. In it, the Claims Administrator established different methods for correcting unmatched financial statements. Policy 495 at 3–4. First, it created an "Annual Variable Margin Methodology ("AVMM")— the default method for any claims that were insufficiently matched. *Id.* at B1–

Case: 17-30727 Document: 00515039530 Page: 5 Date Filed: 07/18/2019
Case 2:10-md-02179-CJB-DPC Document 25892-1 Filed 07/22/19 Page 5 of 9

No. 17-30727

B6. Second, it created Industry-Specific Methodologies ("ISMs") for claimants working in construction, agriculture, education, and professional services. *Id.* at C1–F13.

On appeal, we upheld the AVMM but rejected the ISMs. *In re Deepwater Horizon* (*Policy 495 Decision*), 858 F.3d 298, 304 (5th Cir. 2017). The AVMM appropriately required the Claims Administrator to "ensure that costs are registered in the same month as corresponding revenue, regardless of when those costs were incurred." *Id.* at 302. The ISMs, however, went too far by requiring "smooth[ing]" profits in addition to "matching" revenues and expenses. *Id.* at 303. Accordingly, we held "that all claimants—including those engaged in construction, agriculture, education, and professional services—shall, on remand, be subject to the AVMM." *Id.* at 304. Our decretal language reiterated the point: "For the reasons set out above, we AFFIRM as to the AVMM, REVERSE as to the ISMs, and REMAND for further proceedings consistent with this opinion." *Ibid.*

On remand, the district court issued orders to implement our decision. In them, it instructed the Claims Administrator to "apply the AVMM to [all Business Economic Loss] claims." But it also said, "the Claims Administrator shall not reallocate revenues, except for the purpose of correcting errors." A later order said "that revenue shall not be reallocated, restated, smoothed, or moved unless done to correct an error." BP appealed, believing these orders deviated from our instructions to apply the AVMM.

II.

We agree with BP. The district court's orders are inconsistent with our mandate in the *Policy 495 Decision*. We first explain the mandate rule. Then we explain the district court's violation of it.

5

Case: 17-30727     Document: 00515039530     Page: 6     Date Filed: 07/18/2019
Case 2:10-md-02179-CJB-DPC   Document 25892-1   Filed 07/22/19   Page 6 of 9

No. 17-30727

A.

The mandate rule is a subspecies of the law-of-the-case doctrine: When a court decides a question, it usually decides it once and for all "subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). This doctrine operates on a horizontal plane—constricting a later panel vis-à-vis an earlier panel of the same court. BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT 442 (2016). It also operates on a vertical plane—constricting a lower court vis-à-vis a higher court. *Ibid.*; *see Himely v. Rose*, 9 U.S. (5 Cranch) 313, 316–17 (1809). The vertical variant is what we call the "mandate rule," and it's the kind at issue here. We review *de novo* a district court's compliance with our mandate. *Ball v. LeBlanc*, 881 F.3d 346, 350–51 (5th Cir. 2018).

The first step is figuring out what our mandate said. After all, "a mandate is controlling [only] as to matters within its compass." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939). This inquiry includes consulting "[t]he opinion delivered by this court at the time of rendering its decree." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895). The parties agree our *Policy 495 Decision* was clear: We told the district court to apply the AVMM, but not the ISMs. 858 F.3d at 304. We did so because the Settlement Agreement permits "matching" a particular claimant's expenses to revenue, *id.* at 303, but not "smoothing" profits across time using industry-wide methodologies, *id.* at 304.

Let's start with "matching." The AVMM is designed to address "[in]sufficient 'matching' of revenue and expenses." Policy 495 at 3. That usually consists of moving *expenses* to match revenue. *See Policy 495 Decision*, 858 F.3d at 302 (matching requires "ensur[ing] that costs are registered in the same month as corresponding revenue, regardless of when those costs were incurred"). But Policy 495 may permit moving *revenue* where necessary to achieve matching:

6

Case: 17-30727     Document: 00515039530     Page: 7     Date Filed: 07/18/2019
Case 2:10-md-02179-CJB-DPC   Document 25892-1   Filed 07/22/19   Page 7 of 9

No. 17-30727

> Contemporaneous P&Ls submitted by the claimant will be restated if [the Claims Administrator identifies] either an error . . . or a mismatch of revenue and variable expenses which can be explained and supported by appropriate documentation. If matching issues remain after such restatements, revenue and/or variable expenses will be allocated [based on the applicable methodology, here AVMM].

Policy 495 at 7 (footnote omitted). And the AVMM itself provides that if the Claims Administrator "identif[ies] an error[] in how the claimant has accounted for revenue or expenses, correcting entries will be made to the P&Ls to *restate revenue and expense to the appropriate month*." *Id.* at B1–B2 (emphasis added). The bottom line is the AVMM requires moving "revenues and/or variable expenses" to ensure they are matched. The appellees now concede this point. *See* Red Br. 9 ("[T]he Program Accountants also retained discretion to move . . . or otherwise re-allocate revenues" under the AVMM.).

"Smoothing" is different. It starts by matching expenses and revenues, as the AVMM does. Then the ISMs "go a significant step farther." *Policy 495 Decision*, 858 F.3d at 303. They require the Claims Administrator to reallocate or "smooth" otherwise-lumpy *profits*, using industry-specific formulas on an industry-wide basis. For example, in the *Policy 495 Decision*, we described a hypothetical farmer who received his entire annual profit on a single day when he took his crops to market. *See ibid.* The agriculture-specific "ISM would spread [that profit] across the crop season" for all farmers. *Ibid.* By doing so, it would prohibit the hypothetical farmer from picking a compensation period with lumpy profits in the benchmark year and little or no profits in the post-spill year. *See, e.g.*, Policy 495 at D1–D6 (Agriculture ISM).

We rejected such smoothing. We recognized it "may well be a fairer alternative," but "it is inconsistent with the plain text of the Settlement Agreement." *Policy 495 Decision*, 858 F.3d at 303. That plain text gives the individual claimant—there the farmer—"the right to choose his or her

7

Case: 17-30727    Document: 00515039530    Page: 8    Date Filed: 07/18/2019
Case 2:10-md-02179-CJB-DPC   Document 25892-1   Filed 07/22/19   Page 8 of 9

No. 17-30727

compensation period." *Id.* at 304. The ISMs undermined that right by treating all farmers alike and then "smoothing" their profits on an industry-wide basis. By contrast, we blessed the AVMM because it respected each individual's choice of compensation period, matched expenses and revenues for that chosen period, and thus ensured each individual claim would be processed "in accordance with economic reality." *Matching Decision*, 732 F.3d at 339; *see Policy 495 Decision*, 858 F.3d at 302–03.

Therefore, neither the *Matching Decision* nor the *Policy 495 Decision* broadly prohibited the movement of revenue. To the contrary, our latter decision affirmed the AVMM, which expressly *requires* moving "revenue and/or variable expenses" where necessary to ensure matching. We simply held once the Claims Administrator is satisfied that revenues and expenses for a particular claimant are properly matched, he cannot take the additional step of "smoothing" the claimant's profits using an industry-wide formula.[†]

B.

The next question is whether the district court deviated from that mandate. *See Stewart v. Salamon*, 97 U.S. 361, 362 (1878). It did.

In its first order, the court instructed the Claims Administrator to "apply the AVMM." But it also said "not [to] reallocate revenues, except for the purpose of correcting errors." A subsequent order said something similar: The Claims Administrator should apply the AVMM, "except that revenue shall not

---

[†] This accords with our holdings in other cases that the Settlement Agreement compensates only those who suffered actual losses. *See, e.g.*, *BP Explor. & Prod., Inc. v. Claimant ID 100281817*, 919 F.3d 284, 288 (5th Cir. 2019); *Matching Decision*, 732 F.3d at 343 ("[T]he district court had no authority to approve the settlement of a class that included members that had not sustained losses at all, or had sustained losses unrelated to the oil spill . . . ."). Matching and the AVMM help ensure only claimants with losses from the spill are allowed to invoke the machinery of the federal courts to get paid. The prohibition on industry-wide smoothing also furthers that goal by ensuring claims are processed based on the economic realities of the individual claimant.

Case: 17-30727 Document: 00515039530 Page: 9 Date Filed: 07/18/2019
Case 2:10-md-02179-CJB-DPC Document 25892-1 Filed 07/22/19 Page 9 of 9

No. 17-30727

be reallocated, restated, smoothed, or moved unless done to correct an error." The district court refused to reconsider the orders after BP challenged them.

Both parties agree these orders are inconsistent with the AVMM. The appellees even distinguish them from the "original" AVMM. Red Br. 23. But the AVMM admits of no sequels or substitutes. There is only one. We affirmed it in the *Policy 495 Decision*. The AVMM affirmed by this Court permits the Claims Administrator to move "revenue and/or variable expenses" not only "to correct an error" but also to correct any "matching issues."

We REVERSE and REMAND for further proceedings consistent with this opinion.