UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re:** | **Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL 2179**<br><br>**SECTION "J"** |
| **This Document Relates To:** | | |
| | *No. 15-4143, 15-4146 & 15-4654* | **District Judge Carl J. Barbier**<br><br>**Chief Magistrate Judge Joseph C. Wilkinson, Jr.** |

**MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF PARTIAL DISTRIBUTION OF THE PUNITIVE DAMAGES PORTION OF THE HALLIBURTON ENERGY SERVICES, INC. AND TRANSOCEAN LTD. SETTLEMENT AGREEMENTS**

Patrick A. Juneau (the "New Class Claims Administrator")[1], Claims Administrator of the Punitive Damages portion of the Halliburton Energy Services, Inc. ("HESI") Punitive Damages and Assigned Claims Settlement Agreement, Amended as of September 2, 2015 [Rec. Doc. 15322], and of the Punitive Damages portion of the Transocean Punitive Damages and Assigned Claims Settlement Agreement [Rec. Doc. 14644] (collectively, the "Settlement Agreements"), hereby submits this memorandum in support of his motion for approval of a partial distribution of the Punitive Damages portions of the HESI and Transocean Settlement Agreements.

**I.    BACKGROUND**

On February 15, 2017, the District Court granted final approval to the Settlement Agreements [Rec. Doc. 22253]. Further, by Order dated February 15, 2017 [Rec. Doc. 22252],

---

[1] The District Court had previously appointed Michael J. Juneau as Claims Administrator of the Punitive Damages portions of the Settlement Agreements [Rec. Doc. 15481]. Following the appointment of Michael J. Juneau as United States District Judge, the Court appointed Patrick A. Juneau as the New Class Claims Administrator [Rec. Doc. 25134].

the District Court approved the New Class Claims Administrator's Distribution Model for allocating the Punitive Damages portions of the Settlement Funds (the "New Class Distribution Model") [Rec. Doc. 18797 and clarified in Rec. Doc. 21778)].

The New Class Distribution Model generally sought to compensate claimants with standing to assert claims for punitive damages under the *Robins Dry Dock* line of cases, which provides that those individuals and entities with standing to assert punitive damages are generally those with a proprietary interest in real or personal property that was physically damaged by oil or substances used in the Spill.[2] Some other courts (but not the United States Court of Appeals for the Fifth Circuit (the "U.S. Fifth Circuit"), to date) have extended this physical damage requirement to include commercial fishermen and those who experienced a loss of subsistence as a result of an oil spill.[3] Consistent with this, the New Class Distribution Model afforded priority to those claim categories that have the most recognizable right to assert viable claims for punitive damages under *Robins Dry Dock*, in the following priority: (a) those who held a proprietary interest in real and personal property that was physically damaged, (b) commercial fishermen, (c) parties that experienced a loss of subsistence, and (d) charterboat operators[4].

On December 10, 2015, the Allocation Neutral allocated the Settlement Funds between the Punitive Damages Class (the "New Class") and the Assigned Claims Class (the "Old Class") pursuant to Section 6 of the Settlement Agreements, allocating 72.8%, or $902,083,250, for Punitive Damages to the New Class (the "New Class Portion"), and 27.2%, or $337,666,750, for Assigned Claims to the Old Class (the "Old Class Portion") [Rec. Doc. 15653].

---

[2] The underlying basis of the New Class Distribution Model is explained in more detail in the Model itself.
[3] Subsistence is defined as fishing or hunting to harvest, catch, barter, consume, or trade in natural resources (including seafood and game) in a traditional or customary manner, to sustain basic personal or family dietary, economic, security, shelter, tool or clothing needs, which specifically excludes those participating in hunting or fishing for recreational or sport purposes.
[4] Charterboat operators and subsistence fishermen do not have clear *Robins Dry Dock* standing under current law, so the New Class Distribution Model afforded a somewhat discounted value to those types of claims.

For the reasons set forth below, the New Class Claims Administrator recommends distributing the New Class Portion in two distributions: (i) 19.5541451% of the New Class Settlements Funds, an estimated $176,704,476.85[5] plus any additional interest from June 1, 2019 – July 31, 2019, less any tax due, not yet posted to the account, to be distributed to (a) Personal Property claims, (b) Charterboat claims for Operators and Crew, (c) Loss of Subsistence claims, and (d) Commercial Fisherman claim types (the "Distribution A Claims"), as soon as practicable after approval by the Court and the running of the applicable appeal period ("Distribution A"), and (2) the remaining 80.4458549%, currently estimated at $726,963,140.63 of the New Class Settlements Funds, to Coastal Real Property, Wetlands Real Property, Oyster Leaseholder, and Real Property Sales Damage (the "Real Property Claims") at a later date anticipated to be in 2019 ("Distribution B") (La Count Decl., ¶26).

Based thereon, for the purpose of making distributions on the Distribution A Claims, the New Class Claims Administrator recommends funding the HESI-Transocean Punitive Damages Comingled Distribution account established by the Settlement Administrator (as defined below) on behalf of the New Class Claims Administrator with 19.5541451% of the proceeds from the HESI and Transocean Settlement Funds, plus a proportional share of the additional interest earned between June 1, 2019 through July 31, 2019, reduced for taxes due, currently held in escrow (La Count Decl., ¶ 36(g).[6]

---

[5] The calculation to reach this figure is explained in further detail in paragraph 26 of the Declaration of Michelle M. La Count, attached hereto as Exhibit 1 and referenced herein as the "La Count Decl."
[6] The transfer amount takes into account first making the true-up transfer due to the Old Class' HESI-Transocean Assigned Claims Combined Settlement Fund in the amount of $1,397,572.53 (LaCount Decl., ¶ 36(c).

## II.     NEW CLASS CLAIMS ADMINISTRATION PROCESS

The New Class Claims Administrator engaged Garden City Group ("GCG" or "Epiq" or the "Settlement Administrator")[7] to assist in the administration of the Settlement Agreements and in the implementation of the New Class Distribution Model.  GCG was also authorized to act as the Class Notice Administrator in connection with the Settlement Agreements. GCG's efforts are summarized in the La Count Decl. at paragraphs 2 - 6.

Considerable time, effort, and expense were incurred by the Deepwater Horizon Economic and Property Damages Settlement ("DHEPDS") Court Supervised Settlement Program ("CSSP") in reviewing and evaluating claims that also fit within the definition of the New Class claims. The terms of the DHEPDS Agreement have previously been reviewed by both the District Court and the U.S. Fifth Circuit and were found to be fair and equitable. Processing of claims within the CSSP has also been accompanied by extensive due process rights, including several iterations of review by the claims processors as well as appeal rights to an independent appeals panel, the District Court, and even the U.S. Fifth Circuit.

Given that a majority of the New Class Members were also DHEPDS Class Members[8], the New Class Distribution Model therefore sought to leverage claim determinations made under the DHEPDS Agreement to take advantage of the extensive efforts and due process already expended under that program to avoid significant duplication of time and expense, savings of which all benefit the New Class.  In this way, New Class Members who had previously submitted claims to and received final determinations from the CSSP were not required to file additional claim or

---

[7] GCG was acquired by Epiq as of June 15, 2018 and is now continuing operations as part of Epiq.
[8] Pursuant to *Baker*, punitive damages should have no more than a 1:1 ratio when compared with compensatory damages, so the New Class Distribution Model assigned a punitive damage value of $0 to claimants that had not previously received compensatory damages.  For this reason, the New Class Distribution Model assigned a $0 value to the claims of those DHEPDS Class Members who did not file those same claims in the DHEPDS Program.

registration forms or submit any additional supporting documentation[9], and no additional claim form review was necessary to determine eligibility or payment amount. Rather, under the New Class Distribution Model, the claim determination and base compensation amount determined by the CSSP formed the basis for determining eligibility and compensation for such claimants.[10]

While no claim intake or claim review was necessary for such claimants, substantial data compilation, transfer, and analysis was required to ensure that the underlying information forming the basis of the distribution for these New Class Members was accurate and complete. First, for the New Class-applicable claim types in the DHEPDS, claim status and base compensation amount information[11] had to be transferred from the CSSP to the HESI/Transocean Distribution Database (the "Database") (La Count Decl., ¶ 7). Such claim statuses transferred to the Database included eligibility, denial, and FWA denial information.

Moreover, certain individuals and entities were not included in the DHEPDS Class, because, for example, they either were excluded or chose to opt out. To the extent such individuals and entities were included in the New Class, the New Class Distribution Model required them to file New Class Claim Forms on or before December 15, 2016. Such potential claimants were also required to demonstrate that they had received compensation for compensatory damages or had

---

[9] As per the New Class Distribution Model, DHEPDS claimants and plaintiffs who eventually settled their claims or lawsuits through the Court-appointed Neutrals process were required to file New Class Claim Forms. While the New Class Distribution Model provided that such parties were required to provide evidence of the existence of the Neutrals settlement to establish the existence of compensatory damages, the mere existence of a Neutrals settlement did not entitle such a party to eligibility in the Settlement Agreements. (La Count Decl., ¶ 11).

[10] By utilizing this efficient and effective approach, the New Class Claims Administrator will complete the notification phase, claims data transfer, claims data analysis, claims review and claim determinations pursuant to the New Class Distribution Model, and distribution to the New Class (based on estimated costs), at a total administrative cost of around $18.25M, which is 39% percent of the interest earned on the fund, allowing the full value of the settlements to be paid directly to eligible Class Members (La Count Decl., FN 11).

[11] For claims with a DHEPDS determination, the DHEPDS Eligibility Notice line 1 base compensation amounts were used as the New Class compensation amount baselines for purposes of allocation and distribution [Rec. Doc. 18797 at 3 – 4].

5

preserved their rights to compensatory damages by complying with Pretrial Order 60.[12] In reviewing such claims, the New Class Distribution Model sought to generally apply the same principles and methods of determining eligibility and base compensation amounts as those contained in the DHEPDS Agreement to reach generally consistent determinations, and the New Class Distribution Model provided for significant notice, due process, and appellate rights whereby claimants could contest these determinations[13] (La Count Decl., ¶ 8).

Lastly, a very small number of potential Class Members opted out of the Settlement Agreements and therefore were not permitted to file New Class Claim Forms or have prior DHEPDS claim determination data assessed for New Class eligibility (La Count Decl., ¶ 13).

### III. NEW CLASS DISTRIBUTION MODEL AND PAYMENTS

#### a. Distribution Model Fund Allocation

As noted above, the New Class Distribution Model approved by the District Court afforded greatest priority to those eligible New Class Members with the most direct and longest recognized standing under *Robins Dry Dock*. The Distribution Model was also designed to account for the fact that DHEPDS claims were evaluated in varying ways depending on the underlying claim category, type, and associated framework under the DHEPDS Agreement. With this in mind, the New Class Distribution Model considered DHEPDS base compensation amounts with enhancements or reductions as appropriate under the circumstances based on each claim category.

---

[12] As explained further in the New Class Claims Administrator's Clarification of New Class Distribution Model Issues [Rec. Doc 21778], for individuals and entities which had received no compensatory damages and did not have a reasonable likelihood to recover compensatory damages because their claims were dismissed for failure to comply with Pretrial Order 60, the New Class Distribution Model assigned $0 (zero dollars) as the most reasonable value of their corresponding punitive damages claims under *Baker*.

[13] The Settlement Agreements and the New Class Distribution Model provided Claimants with the right to appeal to the New Class Claims Administrator and to the District Court as to the amount of any payment to any individual claimant. However, the Settlement Agreements and New Class Distribution Model also provided generally that there shall be no right of appeal to the U.S. Fifth Circuit. Despite this, a small number of related claimants have attempted to appeal their $0 punitive damages claim determinations to the U.S. Fifth Circuit, which appeal is currently pending.

The New Class Distribution Model then allocated the punitive damages settlement funds into sub-pool percentages, which also had the benefits of expediting distribution to the greatest degree and in the most cost-efficient manner possible[14]. Those sub-pool percentages were as follows:

| New Class Claim Category | Prorated Gross Settlement Fund Allocation (Percentage)[15] |
|---|---|
| Real Property | 80.0% |
| Personal Property | 0.6% |
| Commercial Fishermen | 17.8% |
| Charterboat Operators | 0.2% |
| Loss of Subsistence | 1.4% |
| **Total** | **100.00%** |

Generally, the New Class Distribution Model further provided that each claim type's subpool would be divided *pro rata* among the eligible claims within that claim category based on their base compensation amounts, with some exceptions: 1) Loss of Subsistence claimants would receive an equal share, rather than a proportional share, of the subpool for that claim category, and 2) the maximum aggregate pool values were set at $50,000 for claims for Personal Property in Excess of $500 and at $50,000 for claims for Charterboat crew members.

---

[14] This process is described in more detail in the New Class Distribution Model itself [Rec. Doc. 18797 at 21 *et seq*.].
[15] The New Class Claims Administrator reserved the right to reallocate as much as 3% of the total settlement fund among these claim categories to accommodate unforeseen mixes or values in claim submissions [Rec. Doc. 18797 at 26], and additional details on updates to the percentages pursuant to this right are provided in section VIII.

### b. Reconciliation Notices and Subsequent Results

To provide notice and due process to potentially eligible New Class Claimants, the New Class Claims Administrator issued New Class claims reconciliation notices, which provided Claimants and any prior DHEPDS legal representative with a list of all their potential claims along with their statuses, so that Claimants would have the opportunity to raise any issues or concerns[16]. Following evaluation of the responses received by the New Class Claims Administrator, the identified reconciliation issues were resolved[17]. These items are discussed in detail in paragraph 9 of the La Count Decl.

### c. Equitable Adjustments Considering Exceptional or Extraordinary Facts or Circumstances

The New Class Distribution Model provided the New Class Claims Administrator with "the right to adjust the award amount in any specific case for equitable purposes in light of exceptional or extraordinary facts or circumstances relative to that claim." (New Class Distribution Model at p. 27). In assessing the New Class claim population, the New Class Claims Administrator has determined the following adjustments are necessary and plans to implement them pursuant to his equitable authority reserved in the New Class Distribution Model. Additional detail is available in paragraph 14 of the La Count Decl.

1. Some DHEPDS claimants who were in fact Charterboat operators were assigned in the DHEPDS Program a NAICS Code other than that associated with Charterboat operators, so

---

[16] Because these notices were also sent to legal counsel as well as the Claimants themselves, it provided the opportunity to notify Claimants of the Court's Order capping attorneys' fees and to clear up any potential representation issues.

[17] The New Class Claims Administrator confirmed that the issues identified in this process did not affect the values in the Estimated DHEPDS Awards by Category used to establish the Prorated Gross Settlement Fund Allocations or the ultimate Net Settlement Fund Percentage Allocations by claim category.

those Claimants were correctly assigned a Charterboat designation at the time of the transfer of the DHEPDS claim data to the Database.

2. The New Class Distribution Model provided that DHEPDS claimants who were subject to a valid and final FWA denial under the DHEPDS Program (as well as in some other circumstances) would not be eligible for any compensation whatsoever under the Settlement Agreements[18]. However, in assisting with the resolution of outstanding DHEPDS claims, some claims which had received FWA denial notices but remained pending, either with an outstanding deadline for the Claimant to respond or in the appellate processes of the DHEPDS Agreement, were settled through the Court-appointed Neutrals process. In many instances, Claimants effectively abandoned these claims because of the Neutrals settlements. It was not the intention of the New Class Claims Administrator that such Claimants, who merely let their claims lapse without contesting a determination that was otherwise inconsequential at the time because the underlying claim had already been settled, be completely disqualified for all punitive damages compensation under the New Class Distribution Model. Such Claimants do not suffer from the same "unclean hands" that the Distribution Model sought to protect against. So, where a) a Claimant settled its DHEPDS FWA denial claim through the Neutrals process, b) that DHEPDS claim remained pending and active at the time of that Neutrals settlement and withdrawal, and c) the Claimant timely filed a New Class Claim Form, the New Class Claims Administrator will not consider the Claimant to be completely disqualified under the New Class Distribution Model.

3. The position of "Bosun" for Menhaden Commercial Fishermen was not included in the Menhaden chart in Section III.A of the New Class Distribution Model. After appropriate

---

[18] Similarly, the Distribution Model provided that claimants filing New Class Claim Forms that were determined to contain fraud or material misrepresentations would not be eligible to recover.

9

inquiry and analysis, the New Class Claims Administrator determined that a "Bosun" Claimant should be given the same rate as a "Mate" Claimant and that, in the exceptional circumstance that another Claimant had some other title which was not on the chart, the average annual salary of that Claimant would be used to classify the Claimant into a comparable position included on the chart.

### IV.     ESTABLISHMENT OF RESERVES

This Motion seeks approval for distribution of only the following claim categories: a) Personal Property claims including Vessel Physical Damage, Coastal Real Property - Personal Property Damage, Wetlands Real Property - Personal Property Damage, and Personal Property Damage in Excess of $500; b) Charterboat claims for Operator and Charterboat Crew; c) Loss of Subsistence claims; and d) Commercial Fisherman claims including Menhaden, Shrimp, Oyster, Finfish, Blue Crab and Other Seafood, Individual Fishing Quota, and Seafood Crew, (collectively, "Distribution A Claims") (La Count Decl., ¶ 15).

A small number of Distribution A Claims for New Class-relevant claim categories (39) remain pending with the DHEPDS, in the various appeal processes available under the DHEPDS Agreement (the "DHEPDS Reserve Claims").  The estimated maximum potential value of these claims under the New Class Distribution Model will be held for later distribution in the event these DHEPDS claims are found to be eligible (La Count Decl., ¶ 15).  Additionally, there are 461 Distribution A Claims associated with New Class Claim Forms that are pending in the various appellate processes set forth in the Settlement Agreements and the New Class Distribution Model (together with the DHEPDS Reserve Claims, these are referred to as the "New Class Reserve A Claims").  Values will also be assigned to these claims so that funds may be set aside for later distribution if/when these claims are deemed eligible (La Count Decl., ¶ 22 and ¶ 32).

All Real Property Claims determined as eligible by the Claims Administrator are anticipated to be paid in Distribution B anticipated to be later in 2019 (La Count Decl., ¶ 15), and 80.4458549% of the New Class Net Settlement Funds have been allocated to the distribution pool for these claims (La Count Decl. ¶ 26).

Funds will be allocated within each claim category distribution pool for the New Class Reserve A Claims, from which payment will be made if and when these New Class Reserve A Claims are determined to be eligible (La Count Decl., ¶ 32).

## V.    CLAIM DISPOSITIONS

A total of 1,475 New Class Distribution A Claims were reviewed and determined to be eligible by the New Class Claims Administrator according to the Distribution Model. Another 53,266 eligible claims associated with New Class Distribution A claim categories were transferred from the DHEPDS pursuant to paragraph 20 of the La Count Decl. Collectively, these are referred to as the Eligible Claims (La Count Decl., ¶ 20). The Eligible Claim counts as well as their aggregate values by claim category and claim type are provided in paragraph 20 of the La Count Decl.

Further, a total of 1,736 New Class Distribution A Claims were reviewed by the New Class Claims Administrator and denied or determined to have a $0 value pursuant to the New Class Distribution Model. Another 40,692 denied claims associated with New Class claim categories were transferred from the DHEPDS pursuant to paragraph 21 of the La Count Decl. Collectively, these are referred to as the Denied Claims (La Count Decl., ¶ 21). The Denied Claim counts for New Class Claim Forms by claim category and claim type, along with denial reasons, are provided in paragraph 21 of the La Count Decl.

## VI.   NEW CLASS RESERVE A CLAIMS VALUATION

In addition to the small number of DHEPDS claims for New Class eligible claim categories noted above in section IV, there are currently 461 New Class claims pending in the various appellate processes provided in the Settlement Agreements and the New Class Distribution Model. Estimated maximum base compensation amounts for those potentially eligible claims have been allocated within the distribution pools by claim category and claim type. Additional details are provided in paragraphs 22 and 32 of the La Count Decl.

### VII. DISTRIBUTION A NET SETTLEMENT FUND AND RESERVED FUNDS

A total of $11,829.454.02 in administrative fees and expenses have previously been approved by the Court and disbursed; $10,245.052.53 of that total is attributable to administration of the New Class portion of the Settlement Agreements[19]. It is anticipated that the total remaining administrative costs and expenses associated with the New Class distributions, including Distribution A Claims, New Class Reserve A Claims, and Real Property Claims, will be $8,125,000.00, assuming the following[20]:

a. This estimate assumes only a Distribution A and a Distribution B will be required. Any administrative costs and expenses associated with a further distribution, to the extent administratively feasible, necessary, and approved by the Court, have not been included in this estimate.

---

[19] In the motion for approval of the transfer of funds for the Old Class distribution, the value provided to Class Counsel for transfer to the HESI-Transocean Assigned Claims Combined Settlements Fund did not fully account for a proportional allocation of the first five sets of administrative expense invoices approved by the Court, which invoices encompassed costs attributable to both the Old and New Class portions of the Settlement Agreements. As such, it is requested that the Court approve a "true up" transfer of an additional $1,397,572.53 to the HESI-Transocean Assigned Claims Settlements Fund (the Old Class distribution account) to properly allocate the invoice values. All subsequent discussion in this motion and memorandum regarding the Distribution A Net Settlement Fund assumes this accounting adjustment is acceptable to the Court.

[20] During the administration and disbursement of Distributions A and B, the New Class Claims Administrator will continue to submit invoices for reasonable and necessary expenses incurred to the Court for approval on a quarterly basis, with such amounts to be paid from the funds reserved for payment of future administrative costs (La Count Decl., ¶ 23).

b. Payments for eligible New Class Reserve A Claims will be made periodically with check reissues in the normal course.

c. The estimated administrative fees and expenses include estimated federal tax liability on interest earned as well as tax preparation expenses anticipated to be incurred through 2021.

d. Any necessary escheatment will be conducted in two rounds, within one calendar year of the end of the Settlements Program.

Based on the foregoing the New Class Claims Administrator will allocate funds for each New Class Reserve A Claim within the claim type's distribution pool and hold those funds back until such time as the claims in question are deemed eligible, if ever, per section VI above and further described in the La Count Decl. at paragraph 32. This will require reallocation of the funds to be held back after the additional interest from June 1, 2019 - July 31, 2019 has been added to the New Class Distribution A Net Settlement Fund, as will be necessary for all claims (La Count Decl. ¶ 32). Additionally, the Claims Administrator requests setting aside $5,800,000.00 prior to *pro rata* allocation of the funds for any items identified after distribution that may require adjustment, in addition to the estimated administrative expenses associated with both Distributions A and B.

As noted above in section I, the Allocation Neutral allocated $902,083,250.00 of the comingled HESI and Transocean Settlement Agreements proceeds to the New Class [Rec. Doc. 15653]. After the inclusion of interest earned and anticipated to be earned on the New Class Settlements' Portion, and after deduction of a) the previously approved New Class administrative expense invoices, b) the estimated future administrative costs and expenses associated with both Distributions A and B, c) the $1,397,572.53 "true up" transfer to the HESI-Transocean Assigned Claims Settlements Fund noted in footnote 6 above, d) estimated future tax preparation costs of

$30,000.00, e) hold back of $5,800,000.00, and f) 80.4458549% of the New Class allocated funds to be later distributed to the Real Property claims in New Class Distribution B, the New Class Settlement Fund available for initial distribution is $176,704,476.85, which amount will be subject to adjustment once final interest earned, after taxes, is included.

With that said, this motion and memorandum only seek at this time the funding necessary to complete disbursement to the Distribution A Claims, including Distribution A Reserve Claims, as well as the estimated administrative costs and tax-related expenses being allocated at this time, with such funds being transferred from the HESI and Transocean escrow accounts to the HESI-Transocean Punitive Damages Comingled Distribution account, upon entry of Court Order authorizing the same. The remaining funds associated with the Distribution B Claims will remain invested within the escrow account until the disbursement of those funds is approved by the Court, with interest earned in the escrow accounts, less applicable tax liabilities, being available for distribution to the Real Property claims only.

## VIII. ESTIMATED DISTRIBUTION FOR DISTRIBUTION A CLAIMS AND ADJUSTMENTS PURSUANT TO NEW CLASS DISTRIBUTION MODEL

As noted above in footnote 15, the New Class Claims Administrator reserved the right to reallocate as much as 3% of the total settlement fund among the claim categories to accommodate unforeseen mixes or values in claim submissions. In light of the original intent of the New Class Claims Administrator in devising the Distribution Model's distribution pools and in light of the underlying tenets of *Robins Dry Dock* and its progeny, the New Class Claims Administrator has determined the following reasonable adjustments are warranted under the circumstances:

1. The quantity of eligible Loss of Subsistence claims has been lower than originally anticipated, resulting in a far greater than anticipated distribution to such New Class Claimants based on

14

the 1.4% distribution pool assigned to such Claimants in the New Class Distribution Model. As such, the New Class Claims Administrator will cap the payment amount to eligible Loss of Subsistence Claimants at $200.00[21], with the remainder of that fund added to the fund available in Distribution B to Real Property Claimants, who have the clearest and most direct history of standing under *Robins Dry Dock*.

2. Similarly, the quantity of eligible claims for Personal Property in Excess of $500 has been lower than initially anticipated, resulting in a far greater than anticipated distribution to such New Class Claimants based on the $50,000 subpool allocation assigned to such Claimants in the New Class Distribution Model. As such, the New Class Claims Administrator shall reduce the distribution pool for this claim category to $7,500.00 to align the prorated percentage for this claim category with the original expectations of the New Class Claims Administrator. Again, the reduction to this allocation pool will be reallocated to the Real Property Claimants, given their priority under *Robins Dry Dock*.

3. The Commercial Fishermen claim type, given the limited number of new claims received in this category via New Class Claim Forms and the level of preference associated with Real Property, has been reduced by $1,000,000.00, with such amount to be reallocated to Real Property as well.

---

[21] The aggregate effect of this modification to the Loss of Subsistence distribution pool is a reduction of $3,829,339.00 (La Count Decl. FN 14).

## IX. DISTRIBUTION A ESTIMATED *PRO RATAS* BY DISTRIBUTION POOL

Considering the foregoing, and based on an estimated Comingled Net Settlement Funds for Distribution A Claimants, below are the estimated *pro ratas* by claim category and claim type from the La Count Decl. at paragraph 32:

| Claim Category | Claim Type | Estimated *Pro Rata* |
|---|---|---|
| **Personal Property** | Vessel Physical Damage, Coastal Real Property - Personal Property Damage & Wetlands Real Property - Personal Property Damage | 41.9521% |
| | Personal Property >$500 | 3.7924%[22] |
| **Charterboat** | Operator | 10.5462% |
| | Crew | 16.8399% |
| **Commercial Fisherman** | | 98.8856%[23] |
| **Loss of Subsistence** | | N/A – per capita payment of $200 for eligible claimants |

---

[22] For the Personal Property Damage in Excess of $500 claim type, the value of Reserve Claims far exceeds the value of the Eligible Claims at this time. Therefore, the Claims Administrator requests the Court allow him, for this claim type only, to allocate any funds set aside for Reserve Claims to the Eligible Claims should the Reserve Claims' Court reviews uphold the underlying denial determinations, potentially raising the *pro rata* by more than the allowed shift of up to 0.5%.

[23] For the Commercial Fishermen claim category, the Estimated Pro Rata is higher when compared to those of the other claim categories, but the final payment will follow the stated intent of the Distribution Model as the recognized loss value for Commercial Fisherman claims transferred from DHEPDS records utilized only the initial compensation determination on line 1 of the DHEPDS Seafood Program Eligibility Notices after a reduction for any built-in RTP, as applicable. The recognized loss also excluded supplemental and residual payments that such DHEPDS Claimants received from the CSSP. This was done in order to simplify the data extractions and mathematical adjustments required to reduce the likelihood of errors. These simplified compensation amounts were also the values used to establish the New Class claim matrices for new Commercial Fisherman claims to ensure equal treatment under the Distribution Model for both new and DHEPDS transferred claims.

## X. THIRD PARTY CLAIMS AND BANKRUPTCY ISSUES

Third Party Claimants, to the extent they complied with the requirements of Court Approved Procedure 3 [Rec. Doc. 25472], will be paid. Similarly, to the extent an eligible New Class Claimant has filed for bankruptcy and the Trustee has complied with Court Approved Procedure 4 [Rec. Doc. 25472], such payments will be made to the appropriate party (La Count Decl., ¶ 16 and ¶ 17).

## XI. QUALITY ASSURANCE, FRAUD PREVENTION, AND REGULATORY COMPLIANCE

Prior to distribution, all eligible Claimants will be checked against the Settlement Administrator's known "watch list" of fraudulent filers as well as the federal government's list of restricted persons and persons who reside in countries to which payment is prohibited, in accordance with the regulations of the Office of Foreign Asset Control. (La Count Decl., ¶ 18 and ¶ 19).

## XII. TAX REPORTING

New Class Members or their attorneys who receive reportable New Class distribution payments of $600 or more will receive IRS Forms 1099-MISC as applicable under IRS regulations (La Count Decl., ¶ 35). To facilitate this process and accurate tax reporting, eligible New Class Members will be required to submit IRS Forms W-9 if a complete and accurate IRS Form W-9 was not already on file with the Settlements Program (La Count Decl., ¶ 33). Absent a complete and accurate Form W-9, New Class distribution payments may be subject to a backup withholding of 24% which will be paid to the IRS on the Claimant's behalf[24] (La Count Decl., ¶ 33 and ¶ 34).

---

[24] Alternatively, the New Class Claims Administrator, in his discretion, may opt to hold the payment to the eligible Claimant to allow him/her/it time to respond prior to distributing the payment less the 24% withholding amount.

                                      Respectfully submitted,

                                      <u>/s/ Patrick A. Juneau</u>
                                      PATRICK A. JUNEAU
                                      Old Class Claims Administrator