UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 SECTION: J JUDGE BARBIER |
| **This Document Relates to:** *All Claims In Pleading Bundle B3* | * * | MAG. JUDGE WILKINSON |

**BP'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT ON B3 CLAIMS RELEASED
UNDER THE MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT**

In accordance with Rule 56(c) of the Federal Rules of Civil Procedure and Rule 56.1 of this Court, BP America Production Company and BP Exploration & Production Inc. (together, "BP") respectfully submit the following undisputed material facts that support its Motion for Summary Judgment on B3 Claims Released under the Medical Benefits Class Action Settlement Agreement ( the "MSA").

    A.    **The Medical Settlement Agreement**

    1.    In 2012, after months of negotiations, BP reached a class-wide settlement, the MSA, with individuals asserting specified medical and personal injury ("B3") claims. (*See* MSA, Rec. Doc. 6427-1.)

    2.    On January 11, 2013, the Court entered an order granting final approval of the MSA. (1/11/13 Order and Judgment, Rec. Doc. 8218.)

    3.    The MSA resolved the claims of Clean-Up Workers and Residents of defined Gulf Coast beachfront and wetlands areas for specified bodily and/or personal injuries allegedly arising

from exposure to oil and/or dispersants released during the *Deepwater Horizon* oil spill and Response Activities.  (*See* MSA, Rec. Doc. 6427-1.)

4. As the Court found in approving the MSA, "[t]he Medical Settlement provides a range of benefits to Class Members, including: (1) compensation for Specified Physical Conditions; (2) the Periodic Medical Consultation Program; (3) the Gulf Region Health Outreach Program, which will help improve the healthcare system for Class Members in the Gulf Coast communities; and (4) the Back-End Litigation Option, which preserves Class Members' ability to sue BP for compensatory damages for Later-Manifested Physical Conditions.  (MSA § IV.)  In exchange for these benefits, Class Members provide a comprehensive Release of specified physical and bodily injury claims against BP and other entities involved in the *Deepwater Horizon* Incident. (MSA § XVI.)"  (1/11/13 Order, Rec. Doc. 8217, at 8.)

5. Section I.A of the MSA defines the Medical Benefits Settlement Class ("MSA Class") as: "[A]ll Natural Persons who resided in the United States as of April 16, 2012, and who:

   a. Worked as Clean-Up Workers at any time between April 20, 2010, and April 16, 2012; or

   b. Resided in Zone A for some time on each of at least 60 days between April 20, 2010, and September 30, 2010 ('Zone A Resident'), and developed one or more Specified Physical Conditions between April 20, 2010, and September 30, 2010; or

   c. Resided in Zone B for some time on each of at least 60 days between April 20, 2010, and December 31, 2010 ('Zone B Resident')."

(MSA, Section § I.A, Rec. Doc. 6427-1.)

6. The MSA defines "Clean-Up Workers" as "all NATURAL PERSONS who performed RESPONSE ACTIVITIES, including:

   a. Captains, crew, and other workers employed under the Vessels of Opportunity ('VoO') program who performed RESPONSE ACTIVITIES;

  b. Workers employed to perform the decontamination of vessels involved in RESPONSE ACTIVITIES;

  c. Captains, crew, and other workers on vessels other than VoO who performed RESPONSE ACTIVITIES;

  d. Onshore personnel employed to perform RESPONSE ACTIVITIES; and

  e. Persons involved in the recovery, transport, and decontamination of wildlife affected by the *DEEPWATER HORIZON* INCIDENT."

(*Id.*, Section II.Q.)

  7. The MSA defines "RESPONSE ACTIVITIES" as "the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority." (*Id.*, Section II.OOOO.)

  8. The MSA specifies the geographic areas encompassed by "Zone A" and "Zone B" in Section II.XXXX and in Exhibits 9 and 10. (*Id.*, Section II.XXXX, and Exs. 9 (Rec. Doc. 6427-11) and 10 (Rec. Doc. 6427-12).)

  9. Certain individuals are excluded from the MSA Class, including for example, any class member "who timely and properly elects to be excluded from the Medical Class." (MSA, Section I.B, Rec. Doc. 6427-1.)

  10. The Court required any MSA class members who wished to opt out of the settlement class to do so by November 1, 2012. (8/27/12 Order, Rec. Doc. 7176.)

  11. To timely and properly elect to be excluded — or "opt out" — of the MSA Class, a MSA class member was required to "submit a written request to OPT OUT stating 'I wish to exclude myself from the Medical Benefits Settlement Class' (or substantially similar clear and

3

unambiguous language) to the CLAIMS ADMINISTRATOR on or before such date as is ordered by the COURT." (MSA, Section XI.E, Rec. Doc. 6427-1; *see also* 8/27/12 Order, Rec. Doc. 7176.)

12. GRG, the MSA Claims Administrator, maintains information regarding MSA Class opt-outs. (*See id.*, Section XI.)

13. In May 2018, pursuant to the PTO 66 process described below, GRG provided the Court, BP, and the Plaintiffs' Steering Committee (the "PSC") with a list stating whether remaining B3 plaintiffs had submitted timely and valid opt-outs from the MSA. (GRG Report, Ex. 1; *see also* 1/31/19 PTO 66 Compliance Order, Rec. Doc. 25356 at Ex. 1.)

14. In particular, GRG provided a list of remaining B3 plaintiffs whom it could not match to a valid and timely opt-out request. (*Id.*) The twelve remaining B3 plaintiffs at issue in this motion were included among those individuals whom GRG could not match to a valid and timely request to opt out of the MSA. (*Id.*)

15. In exchange for the benefits received under the MSA, Medical Settlement Class Members provided a comprehensive release of their claims against BP and other entities involved in the Incident. (1/11/13 Order, Rec. Doc. 8217 at 8, 17-18, citing MSA § XVI.)

16. Under the MSA, "Class Members agree to release BP and other Released Parties for any liability for all Class Members' claims that were or could have been brought arising from the *Deepwater Horizon* Incident in connection with personal or bodily injury, progression or exacerbation of an injury, loss of support, services, consortium, companionship, society, or affection, increased risk, possibility, or fear of suffering in the future, and medical screening and monitoring." (*Id.* at 18 (citing MSA § XVI.A).)

17. Medical Settlement Class Members released claims for personal and bodily injury:

> Personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and

>   any progression and/or exacerbation of personal injury or bodily injury, that first manifested by April 16, 2012, where such injury, progression, and/or exacerbation in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, or wrongful death and/or survival actions as a result of such injury, progression, and/or exacerbation.

(MSA, Section XVI.A.1, Rec. Doc. 6427-1.)

18. Since the approval of the MSA to date, BP has compensated over 22,000 individuals more than $67 million for their medical and personal injury claims. (*See* 5/6/19 Status Report From The *Deepwater Horizon* Medical Benefits Settlement Claims Administrator, Rec. Doc. 25611, at 2–3.)

**B.   PTO 66**

19. The Court issued Pretrial Order No. 66 on April 9, 2018. (Rec. Doc. 24282.)

20. PTO 66 required the remaining B3 plaintiffs "to provide more particularized information regarding their claims" to allow "the Court and the parties to better understand the nature and scope of the injuries, damages, and causation alleged by the various Remaining B3 Plaintiffs." (*Id.* at 1.)

21. Specifically, PTO 66 required each B3 plaintiff to submit a sworn Particularized Statement of Claim ("PSOC"), which responded to detailed questions about the plaintiff's claims. (*Id.* at 1-2 (requiring plaintiffs to "complete … the attached [PSOC]"); *see also* Sample PSOC, Rec. Doc. 24282-1.)

22. The Court noted that in completing the PSOCs, "[i]t is imperative that plaintiffs provide responses that are as specific and accurate as practicable." (PTO 66, Rec. Doc. 24282, at 2)

23. In completing their PSOCs, each plaintiff was required to provide information regarding, among other things: (i) whether the plaintiff performed cleanup work in response to the *Deepwater Horizon* spill; (ii) the nature of the cleanup work performed, and (iii) the detailed

5

circumstances under which the plaintiff claims to have been exposed to oil and/or chemical dispersants.  (*See, e.g.,* Sample PSOC, Rec. Doc. 24282-1 (Question 9 ("Did BP, a government entity, or another company or entity hire you to perform cleanup work in response to the oil spill?"); Question 10 ("Was your cleanup work performed onshore (on land) or offshore (on the water)?"); Question 21 ("How many time(s) were you exposed to oil or dispersants (for each time, please note whether the exposure was to oil, dispersants, or both)?"); Question 24 ("Describe in as much detail as possible the circumstance(s) in which your exposure to the oil spill and/or chemical dispersants occurred").)

### C. MSA Class Members Who Have Released Their Claims

24. As part of the PTO 66 process, 12 plaintiffs identified themselves as cleanup workers in their PSOCs.  (*See* Memorandum, Ex. A.)

25. Eight of those plaintiffs identified themselves as cleanup workers by responding "Yes" to Question 9 of their PSOCs, which asks "Did BP, a government entity, or another company or entity hire you to perform cleanup work in response to the oil spill?"  (PSOCs of Thomas Bodiford, Joseph Bruton, Craig Michael Burkett, Christopher Alan Green, Ervin Pough, Ricky R. Robin, Jr., Guy Hillyer Wallace, and Clay Whittinghill, Exs. 2-9.)

26. Four plaintiffs responded "No" to Question 9, but their PSOCs otherwise indicate that they were cleanup workers.  (PSOCs of Lillie Coleman, Jordan Dixey, Tiffany Monicque Lee, and Nakia Scott, Exs. 10-13.)

27. Lillie Coleman states that she performed onshore spill response work, including picking up "tar balls and oil-covered debris along the beaches, including but not limited to Gulf Shores and Mobile, AL."  (PSOC of Lillie Coleman, Ex. 10 at Questions 10 and 21.)

28. Jordan Dixey explains in his PSOC that he was a pilot for the U.S. Navy Reserves, and flew over the Gulf as part of his employment.  (PSOC of Jordan Dixey, Ex. 11 at Ex. C.)  Mr.

Dixey also notes the Naval Air Station in Pensacola, FL as a "[l]ocation[] where [he] worked clean up." (*Id*. at Ex. D, at 18.)

29. Tiffany Monicque Lee states that she "was sent to the Gulf in order to train hydrographics crews who were mobilized by the president to perform response activities." (PSOC of Tiffany Monicque Lee, Ex. 12 at Question 30.)

30. Nakia Scott alleges she was exposed "to both oil and dispersants many times throughout 2010, as she worked as a driver for the company hired to transport the Corexit to and from the impact sites throughout the Gulf Coast, from Kiln, MS to Houston, TX." (PSOC of Nakia Scott, Ex. 13 at Ex. C.)

Respectfully submitted,

*/s/ Don Haycraft*
Don Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
A. Katrine Jakola, P.C.
(katie.jakola@kirkland.com)
Kristopher Ritter
(ritterk@kirkland.com)
Christina L. Briesacher
(christina.briesacher@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Counsel for BP America Production Company and BP Exploration & Production Inc.*

7

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing BP'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON B3 CLAIMS RELEASED UNDER THE MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of July, 2019.

*/s/ Don Haycraft*
Don Haycraft