# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| | * | JUDGE BARBIER |
| | * | |
| This Document Relates to: | * | MAG. JUDGE WILKINSON |
| *All Claims In Pleading Bundle B3* | * | |

## BP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON B3 CLAIMS RELEASED UNDER THE MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT

Pursuant to the Court's July 18, 2019 Order (the "July 18 Order") (Rec. Doc. 25858), BP America Production Company and BP Exploration & Production Inc. (together, "BP") respectfully request that summary judgment be entered on claims that B3 plaintiffs, including those listed in Exhibit A hereto, have already settled and released pursuant to the Medical Benefits Class Action Settlement Agreement (the "MSA").[1]

## BACKGROUND

Since April 2010, BP has provided compensation for losses arising from the *Deepwater Horizon* incident through claims programs and multiple class settlements that have included tens of thousands of individuals seeking compensation for medical and personal injury claims.  As part of those resolutions, these claimants released their claims against BP pursuant to a broad class release in the MSA.  Based on Pretrial Order 66 ("PTO 66") submissions received to date, 12

---

[1]     Exhibit A lists the actions filed by 12 remaining B3 plaintiffs who submitted information pursuant to PTO 66 demonstrating that those plaintiffs are MSA class members who have released their claims against BP (and certain other released parties).  The B3 cases remain stayed, and the parties have not yet engaged in discovery.  Other remaining B3 plaintiffs may later be determined by BP, the MSA Settlement Administrator Garretson Resolution Group ("GRG"), or otherwise, to be MSA class members, and BP reserves the right to seek dismissal of or judgment on their claims at a later time.

remaining B3 plaintiffs are among those individuals who have released their claims under the MSA, yet continue to have claims pending in this action.  Because these individuals have already released their claims against BP, summary judgment is appropriate.

### A.    Overview of the MSA

A massive and unprecedented effort mobilized to respond the *Deepwater Horizon* spill. All told, as many as 90,000 cleanup workers responded to the spill.  (*See, e.g.,* 1/11/13 Order, Rec. Doc. 8217 at 2.)  Following the spill, tens of thousands of cleanup workers and Gulf Coast residents brought lawsuits asserting medical and personal injury claims against BP and others, including based on alleged exposure to oil and/or chemical dispersants during the spill and response.  (*See id.* at 4.)

In 2012, after months of negotiations, BP reached a class-wide settlement, the MSA, with individuals asserting specified medical and personal injury ("B3") claims.  Statement of Material Facts ("SOF") ¶1.  On January 11, 2013, the Court entered an order granting final approval of the MSA.  *Id.* ¶2.  The MSA resolved the claims of Clean-Up Workers and Residents of defined Gulf Coast beachfront and wetlands areas for specified bodily and/or personal injuries allegedly arising from exposure to oil and/or dispersants released during the *Deepwater Horizon* oil spill and Response Activities.[2]  *Id.* ¶3.  As this Court found in approving the MSA:

> The Medical Settlement provides a range of benefits to Class Members, including: (1) compensation for Specified Physical Conditions; (2) the Periodic Medical Consultation Program; (3) the Gulf Region Health Outreach Program, which will help improve the healthcare system for Class Members in the Gulf Coast communities; and (4) the Back-End Litigation Option, which preserves Class Members' ability to sue BP for compensatory damages for Later-Manifested Physical Conditions. (MSA § IV.)  In exchange for these benefits, Class Members provide a comprehensive Release of specified physical and bodily injury claims

---

[2]    Capitalized terms have the meanings set forth in the MSA, unless otherwise specified.  A complete copy of the MSA, as amended on May 2, 2012, and approved by the Court on January 11, 2013, is available at Rec. Doc. 6427.

against BP and other entities involved in the *Deepwater Horizon* Incident. (MSA § XVI.)

SOF ¶ 4.  Through the MSA, BP has compensated over 22,000 individuals more than $67 million for their medical and personal injury claims to date.  *Id*. ¶ 18.

### B.    The MSA Class

Section I.A of the MSA defines the Medical Benefits Settlement Class ("MSA Class") as:

"[A]ll Natural Persons who resided in the United States as of April 16, 2012, and who:

1)    Worked as Clean-Up Workers at any time between April 20, 2010, and April 16, 2012;[3] or

2)    Resided in Zone A for some time on each of at least 60 days between April 20, 2010, and September 30, 2010 ('Zone A Resident'), and developed one or more Specified Physical Conditions between April 20, 2010, and September 30, 2010; or

3)    Resided in Zone B for some time on each of at least 60 days between April 20, 2010, and December 31, 2010 ('Zone B Resident')."[4]

*Id*. ¶ 5.

Certain individuals are excluded from the MSA Class, including for example, any class member "who timely and properly elects to be excluded from the Medical Class."  *Id*. ¶¶ 9, 11. The Court required any MSA class members who wished to opt out of the settlement class to do so by November 1, 2012.  *Id*. ¶ 10.

---

[3]    Under the MSA, "Clean-up Workers" includes all individuals who performed "Response Activities," which in turn, is defined as "the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority."  SOF ¶¶ 6-7.  "Clean-up Workers" expressly includes, but is not limited to, (1) "[c]aptains crew, and other workers employed under the Vessels of Opportunity ("VoO") program"; (2) [w]orkers employed to perform the decontamination of vessels"; (3) "[c]aptains, crew, and other workers on vessels other than VoO"; (4) "[o]nshore personnel"; and (5) "[p]ersons involved in the recovery, transport, and decontamination of wildlife."  *Id*. ¶ 6.

[4]    The MSA specifies the geographic areas encompassed by "Zone A" and "Zone B" in Section II.XXXX. and in Exhibits 9 and 10.  SOF ¶¶ 8-9.

GRG, the MSA Claims Administrator, maintains information regarding MSA Class opt-outs.  SOF ¶12.  In May 2018, pursuant to the PTO 66 process described below, GRG provided the Court, BP, and the Plaintiffs' Steering Committee (the "PSC") with a list stating whether remaining B3 plaintiffs had submitted timely and valid opt-outs from the MSA.  *Id.* ¶¶ 13-14.  In particular, GRG provided a list of remaining B3 plaintiffs whom it could not match to a valid and timely opt out request.  *Id.*  The 12 remaining B3 plaintiffs at issue in this motion were included among those individuals whom GRG could not match to a valid and timely request to opt out of the MSA.  *Id.*

### C.    The MSA Release

In exchange for the benefits that the MSA provides to class members, the MSA "provides for a comprehensive Release of specified physical and bodily injury claims against BP and other parties and entities involved in the *Deepwater Horizon* Incident."  *Id.* ¶ 15.  Under the MSA, "Class Members agree to release BP and other Released Parties for any liability for all Class Members' claims that were or could have been brought arising from the Deepwater Horizon Incident in connection with personal or bodily injury, progression or exacerbation of an injury, loss of support, services, consortium, companionship, society, or affection, increased risk, possibility, or fear of suffering in the future, and medical screening and monitoring."  *Id.* ¶ 16.[5]  MSA class members therefore broadly released personal injury claims against BP that arise from the *Deepwater Horizon* incident or response.

---

[5]    In particular, Section XVI.A.1 of the MSA provides that MSA class members release "[p]ersonal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and any progression and/or exacerbation of personal injury or bodily injury, that first manifested by April 16, 2012, where such injury, progression, and/or exacerbation in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, or wrongful death and/or survival actions as a result of such injury, progression, and/or exacerbation."  SOF ¶ 17.  Class members also release claims against BP for Later-Manifested Physical Conditions if they do not follow the procedures for timely asserting such claims established by the MSA.  *Id.* ¶4.

### D.    The PTO 66 Process

On April 9, 2018, this Court issued PTO 66.  *Id.* ¶ 19.  PTO 66 required the remaining B3 plaintiffs "to provide more particularized information regarding their claims" to allow "the Court and the parties to better understand the nature and scope of the injuries, damages, and causation alleged by the various Remaining B3 Plaintiffs." *Id.* ¶ 20.  To that end, PTO 66 required each B3 plaintiff to submit a sworn Particularized Statement of Claim ("PSOC"), which responded to detailed questions about the plaintiff's claims.  *Id.* ¶ 21.  The Court noted that in completing the PSOCs, "[i]t is imperative that plaintiffs provide responses that are as specific and accurate as practicable." *Id.* ¶ 22.

In preparing their PSOC, each plaintiff was required to provide information regarding, among other things: (i) whether the plaintiff performed cleanup work in response to the *Deepwater Horizon* spill; (ii) the nature of the cleanup work performed, and (iii) the detailed circumstances under which the plaintiff claims to have been exposed to oil and/or chemical dispersants.  *See, e.g., id.* ¶ 23 (Question 9 ("Did BP, a government entity, or another company or entity hire you to perform cleanup work in response to the oil spill?"); Question 10 ("Was your cleanup work performed onshore (on land) or offshore (on the water)?"); Question 21 ("How many time(s) were you exposed to oil or dispersants (for each time, please note whether the exposure was to oil, dispersants, or both)?"); Question 24 ("Describe in as much detail as possible the circumstance(s) in which your exposure to the oil spill and/or chemical dispersants occurred").)  In response to PTO 66, several remaining B3 plaintiffs submitted sworn statements identifying themselves as cleanup workers covered by the MSA, giving rise to the present motion.

## ARGUMENT

BP respectfully requests that the Court enter summary judgment for BP on claims that remaining B3 plaintiffs, including the 12 plaintiffs identified in Exhibit A hereto, have released

pursuant to the MSA.  Based on PTO 66 submissions received to date, these 12 B3 plaintiffs are *Deepwater Horizon* cleanup workers who did not opt out of the MSA.  These plaintiffs are MSA class members who have released their claims against BP, and summary judgment for BP is therefore appropriate.[6]

Summary judgment should be entered when "the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  A moving party may satisfy its summary judgment burden by pointing to undisputed evidence in the record.  *See, e.g.*  *Templet v. HydroChem Inc.*, 367 F.3d 473, 480 (5th Cir. 2004); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

While all reasonable inferences are to be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.  *See Little*, 37 F.3d at 1075.  Nor may the nonmoving party rest upon the pleadings, but rather must identify specific facts that establish a genuine issue for trial.  *See Celotex*, 477 U.S. at 324. Disputes as to material facts are found "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.  Summary judgment is appropriate, and indeed commonplace, based on factual admissions made by the non-moving party.  *See* Fed R. Civ. P. 56(c)(1)(A); *see also In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) ("Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit

---

[6]      BP expects that fact discovery will confirm that additional remaining B3 plaintiffs who did not opt out of the MSA worked as cleanup workers during the spill response.  This motion is directed at those individuals who identified themselves as cleanup workers in their PSOCs.  BP reserves its right to bring a subsequent motion for summary judgment with respect to claims of remaining B3 plaintiffs who are later determined to be MSA class members.

testimony or other evidence in the summary judgment record."); *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir. 1992).

Summary judgment in favor of BP is appropriate with respect to claims brought by each of the 12 B3 plaintiffs identified in Exhibit A.  As discussed below, those 12 plaintiffs (1) provided sworn statements demonstrating that they are members of the MSA Class, and (2) elected not to opt out of the MSA.

*First,* the MSA Class includes individuals who "[w]orked as Clean-Up Workers at any time between April 20, 2010, and April 16, 2012."  SOF ¶ 5.  All 12 B3 plaintiffs listed in Exhibit A provided sworn statements in their PSOCs demonstrating that they acted as *Deepwater Horizon* cleanup workers during this time period and therefore are members of the MSA Class.  Ex. A, *see also* SOF ¶ 24.  Eight of the 12 plaintiffs identified themselves as cleanup workers by responding "Yes" to Question 9 of the PSOC, which asks "Did BP, a government entity, or another company or entity hire you to perform cleanup work in response to the oil spill?"  SOF ¶ 25.

While the remaining four plaintiffs — Lillie Coleman, Jordan Dixey, Tiffany Monicque Lee, and Nakia Scott — responded "No" to Question 9, each of them provided other information in their PSOCs demonstrating that they in fact acted as cleanup workers during the response.  SOF ¶ 26.  For example, Ms. Coleman stated that she performed onshore response work after the spill "to clean up tar balls and oil-covered debris along the beaches including, but not limited to Gulf Shores and Mobile, AL."  SOF ¶ 27.  Mr. Dixey explained in his PSOC that he was a pilot and lists the Naval Air Station in Pensacola, FL as a "[l]ocation where [he] worked clean up."  SOF ¶ 28.  Ms. Lee stated in response to Question 30 of her PSOC that she "was sent to the Gulf in order to train hydrographics crews who were mobilized by the president to perform response activities."  SOF ¶ 29.  Finally, Ms. Scott averred that she was exposed "to both oil and dispersants many times

throughout 2010, as she worked as a driver for the company hired to transport the Corexit to and from the impact sites throughout the Gulf Coast, from Kiln, MS to Houston, TX." SOF ¶ 30. All of these plaintiffs are "Clean-Up Workers" who performed "Response Activities" under the MSA, and thus, are members of the MSA Class.

The MSA Claims Administrator has no record that any of the 12 plaintiffs listed in Exhibit A submitted a valid and timely opt out. SOF ¶ 14. Thus, all 12 plaintiffs are MSA class members subject to the broad release in the MSA. As MSA class members, these plaintiffs have released "***all claims of any nature whatsoever*** . . . that have been or could have been brought in connection with" known or unknown "[p]ersonal or bodily injury" allegedly arising from the *Deepwater Horizon* spill and response. (MSA § XVI at 103-04 (emphasis added).) This release covers the plaintiffs' B3 claims, and as this Court has previously recognized, the release "is valid and enforceable." (1/11/13 Order, Rec. Doc. 8218 at ¶17); *see also Am.'s Favorite Chicken Co. v. Suryoutomo*, 889 F. Supp. 916, 918 (E.D. La. 1995), citing *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1310-13 (5th Cir. 1983) ("Unambiguous releases of past, present or future known or unknown claims bar those claims."); *Little v. Seterus*, 2017 WL 606340, at *3 (upholding general release, including of unknown or future injuries, in settlement agreement).

Because the 12 B3 plaintiffs listed in Exhibit A submitted sworn statements in response to PTO 66 averring that they are cleanup workers and because none of these individuals opted out of the MSA, they are MSA class members who have released their claims against BP. Given that there can be no factual dispute that these plaintiffs have released their claims, BP respectfully requests that the Court enter summary judgment for BP.

## **<u>CONCLUSION</u>**

For the reasons set forth above, BP respectfully requests that the Court enter summary judgment for BP on the claims of the B3 plaintiffs identified in Exhibit A hereto, and grant such other relief as is just and proper.

Respectfully submitted,

*<u>/s/ Don Haycraft</u>*
Don Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
A. Katrine Jakola, P.C.
(katie.jakola@kirkland.com)
Kristopher Ritter
(kristopher.ritter@kirkland.com)
Vanessa Barsanti
(vanessa.barsanti@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Counsel for BP America Production Company and BP Exploration & Production Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing BP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON B3 CLAIMS RELEASED UNDER THE MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT  has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of July, 2019.

*/s/ Don Haycraft*

Don Haycraft