# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30233

United States Court of Appeals
Fifth Circuit
**FILED**
July 3, 2018
Lyle W. Cayce
Clerk

In re: Deepwater Horizon

_____

TOBATEX, INCORPORATED, A Georgia Corporation; M.R.M. ENERGY, INCORPORATED, A Georgia statutory close corporation, on their own behalf and on behalf of all others similarly situated,

      Plaintiffs - Appellants

v.

BP PRODUCTS NORTH AMERICA, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP CORPORATION NORTH AMERICA, INCORPORATED; BP EXPLORATION & PRODUCTION, INCORPORATED; TRANSOCEAN, LIMITED; TRANSOCEAN DEEPWATER, INCORPORATED; HALLIBURTON ENERGY SERVICES, INCORPORATED; CAMERON INTERNATIONAL CORPORATION, formerly known as Cooper Cameron Corporation; BP, P.L.C.; BP AMERICA, INCORPORATED; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED,

      Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-MD-2179
USDC No. 2:10-CV-4573

No. 17-30233

Before WIENER, GRAVES, and HO, Circuit Judges.

PER CURIAM:[*]

I.

On April 20, 2010, the offshore drilling rig *Deepwater Horizon* exploded in the Gulf of Mexico, killing and injuring dozens of workers and discharging millions of gallons of oil into the surrounding waters. *In re Deepwater Horizon*, 732 F.3d 326, 329 (5th Cir. 2013). Defendants in this case are various BP entities and other business organizations that were engaged in activities connected to the *Deepwater Horizon* at the time of the explosion and oil spill. Plaintiffs Tobatex, Inc. and M.R.M. Energy, Inc. owned and operated two service stations in the state of Georgia under the BP name and logo when the disaster occurred.

In December 2010, Plaintiffs filed suit in federal district court, seeking "to recover damages suffered . . . as a result of the oil spill that resulted from the explosion and fire aboard, and subsequent sinking of the oil rig *Deepwater Horizon*." In particular, Plaintiffs alleged that Defendants' negligent actions caused them to suffer "economic losses"—including a loss of profits, goodwill, and earning capacity—"due to the injury and destruction of the BP name and logo." Pursuant to multidistrict litigation procedures, Plaintiffs' suit was consolidated for pretrial purposes with a vast number of other *Deepwater Horizon* cases and placed into the "B1" pleading bundle, which encompassed claims for "non-governmental economic loss and property damages."

In July 2012, Defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that general maritime law precluded

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

No. 17-30233

Plaintiffs' claims. Plaintiffs filed a response opposing Defendants' motions and requesting leave to amend their complaint. In October 2012, the district court granted Defendants' motions to dismiss. The court also denied Plaintiffs the opportunity to amend their complaint, stating that "[e]ven if [it] were to grant [Plaintiffs'] request, the result would not change."

In May 2016, Plaintiffs requested the district court to enter a final judgment so they could appeal the dismissal of their claims. The court issued a final judgment dismissing Plaintiffs' claims in February 2017. This appeal followed.

## II.

Plaintiffs challenge the district court's Rule 12(b)(6) dismissal and its denial of their request for leave to file an amended complaint.

## A.

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss. *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356, 357 (5th Cir. 2012) (per curiam). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

It is undisputed that Plaintiffs' claims are not legally viable under general maritime law because "the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit." *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006); *accord Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1024 (5th Cir. 1985) (en banc) ("This circuit has consistently refused to allow recovery for economic loss absent physical damage to a proprietary interest."). The parties agree that general maritime law governs Plaintiffs' claims—provided that the claims sound in admiralty. *Cf. E. River S.S. Corp. v.*

3

Case: 17-30233 Document: 00514571058 Page: 4 Date Filed: 07/25/2018
Case 2:10-md-02179-CJB-DPC Document 25924-1 Filed 07/25/18 Page 4 of 6

No. 17-30233

*Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law. Absent a relevant statute, the general maritime law, as developed by the judiciary, applies." (citation omitted)). The parties also agree that Plaintiffs' claims sound in admiralty if they satisfy the test for admiralty jurisdiction set forth in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). In *Grubart*, the Supreme Court held that to fall within the scope of admiralty jurisdiction, "a tort claim must satisfy conditions both of location and of connection with maritime activity." *Id.* at 534. It explained:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Id.* (citations and internal quotation marks omitted).

The district court assessed Plaintiffs' complaint in light of *Grubart* and concluded that the claims asserted therein sound in admiralty. We agree. Plaintiffs' claims satisfy the location test because their alleged injuries were proximately caused by the *Deepwater Horizon. See Grubart*, 513 U.S. at 536; *Margin v. Sea-Land Servs., Inc.,* 812 F.2d 973, 975–76 (5th Cir. 1987). As for the connection test, the district court did not err in concluding that the type of incident involved here—"an explosion aboard a vessel and the subsequent discharge of oil"—is potentially disruptive of maritime commerce, and that the general character of the activity giving rise to the incident—"oil and gas drilling from a vessel on navigable waters"—has a substantial relationship to traditional maritime activity. Plaintiffs contend that their claims are based

4

Case: 17-30233    Document: 00514571058    Page: 5    Date Filed: 07/25/2018
Case 2:10-md-02179-CJB-DPC   Document 25924-1   Filed 07/25/18   Page 5 of 6

No. 17-30233

entirely on actions that Defendants took on land and that have "no connection" with traditional maritime activity, but their complaint is bereft of well-pleaded factual allegations supporting that assertion.[1]

B.

When, as here, a district court's denial of a request for leave to amend is "based solely on futility," this court "applies a de novo standard of review 'identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6).'" *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010)). A plaintiff seeking leave to amend does not need to submit a proposed amended complaint, but "*some* specificity is required." *Id.*

In support of their request for leave, Plaintiffs indicated that they would amend their complaint to contain allegations along the following lines:

> BP's response to the incident was to make on dry land the corporate decision to minimize the nature of the spill. BP made numerous public press releases estimating the magnitude of the spill which were constantly found to be false and readjusted. The public watching the national news was exposed to live pictures of the continuing spill day after day after day. BP's methods of operation and corporate strategy along with its prior incidents were investigated, disclosed and republicized to the public. For months, the BP Oil Spill as it became known was the lead story throughout the nation. Reports issued that BP was not serious in stopping the spill, instead attempting efforts which would preserve the well for later economic value. Profits were still placed above damage to the environment.
>
> Thus, it was the corporate decisions of BP, aided by the finger pointing of the other defendants, which caused injury to the BP brand and logo on which the BP Dealers relied.

---

[1] We base this determination on Plaintiffs' individual complaint, which they insist puts forth claims that are "entirely different" from those asserted in the master complaint filed on behalf of plaintiffs in the B1 pleading bundle.

5

No. 17-30233

Even if Plaintiffs had amended their complaint in this way, their claims would still have sounded in admiralty. Like their original complaint itself, Plaintiffs' request for leave shows that the *Deepwater Horizon* was a proximate cause of their injuries. Defendants' public misrepresentations might have contributed to the harm suffered by the BP brand—and the 12(b)(6) standard requires us to assume that they did—but the oil rig's explosion and the resultant oil spill remained vital and inextricable components of Plaintiffs' ultimate injuries. Accordingly, the district court did not err when it denied Plaintiffs' request for leave to amend their complaint.

\*　　\*　　\*

The district court's judgment is AFFIRMED.