**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | **MASTER DOCKET** |
| "DEEPWATER HORIZON" in the | * | **NO. 10-MD-2179** |
| GULF OF MEXICO, on | * | |
| APRIL 20, 2010 | * | **SECTION: "J"** |
| | * | |
| | * | **JUDGE BARBIER** |
| | * | |
| | * | **MAG. JUDGE WILKINSON** |
| THIS DOCUMENT RELATES TO: | * | |
| *All Claims in Pleading Bundle B3* | * | |
| | * | |
| | * | |

---

**BP'S PROPOSED CASE MANAGEMENT ORDER FOR THE B3 BUNDLE**

Pursuant to the Court's July 18, 2019 Order (Rec. Doc. 25858), BP Exploration & Production, Inc. and BP America Production Company (together, "BP") respectfully submit the following proposed Case Management Order ("CMO") for cases remaining in the B3 bundle. BP's proposed CMO would advance all of the cases remaining in the B3 docket concurrently, while honoring settled Fifth Circuit precedent holding that specific causation is a "highly individualized" inquiry that renders consolidation inappropriate. *See, e.g., Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006). To that end, BP proposes that this Court implement three general phases for future management of the B3 cases — all of which involve issues common across the B3 docket (for both resident *and* cleanup worker plaintiffs):

(1) An **initial disclosures phase**, providing for (i) the identification and resolution of certain global legal issues (as suggested by the B3 Plaintiffs), and (ii) an exchange of information consistent with the BELO CMOs (Rec. Docs. 14099, 25486 and 25738) and not previously disclosed in connection with Pretrial Order No. 63 (Rec. Doc. 22295) and Pretrial Order No. 66 (Rec. Doc. 24282);

(2)     An **expert discovery phase** focused on general causation issues across B3 cases; and

(3)     A **discovery phase**, in which the B3 Plaintiffs may take certain fact discovery of BP on issues common to remaining B3 cases.

This proposed approach would substantially advance all remaining B3 cases by providing an efficient process for obtaining key information and resolving remaining common issues of interest to the docket as a whole.  This process would also help the parties and the Court to better evaluate the remaining claims and consider further steps for their disposition or resolution.

**Trial Recommendations.**  After completion of the three pretrial phases outlined above, BP proposes that remaining B3 cases would be reallocated for individual proceedings outside of the MDL, or alternatively, that the Court implement a procedure for individual fact discovery and single-plaintiff bellwether trials before this Court.  Consolidation of the B3 cases into "trial flights" is not appropriate.  Each B3 case will turn on consideration of a myriad of individual facts and issues, including each plaintiff's:

(i)      claimed exposure (whether to oil, dispersants, and/or decontaminants);

(ii)     route of exposure (whether inhalation, dermal contact, and/or ingestion);

(iii)    exposure levels, durations, and locations;

(iv)    dose;

(v)     work history;

(vi)    claimed medical conditions and the validity of those diagnoses;

(vii)   specific causation (including prior medical history and alternative causation); and

(viii)  damages (including for emotional distress and other similar injuries).

The Fifth Circuit has consistently recognized that these types of issues are so highly individualized that consolidated trials would be inefficient and unworkable.  *See, e.g., In re Fibreboard Corp.*, 893 F.2d 706, 711-12 (5th Cir. 1990) (rejecting consolidated trial of specific

causation and damages issues in asbestos cases, where "plaintiffs suffer from different diseases, some of which are more likely to have been caused by asbestos than others," the "plaintiffs were exposed to asbestos in various manners and to varying degrees," and the "plaintiffs' lifestyles differed in material respects"); *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 316-17 (5th Cir. 1998) (rejecting consolidated trial phase involving specific causation issues); *Exxon Mobil*, 461 F.3d at 602 (denying class treatment where "each plaintiff's claims will be highly individualized with respect to proximate causation, including individual issues of exposure, susceptibility to illness, and types of physical injuries").

Consistent with this precedent, this and other courts have repeatedly refused requests to consolidate BELO cases, which are similarly situated to the B3 cases, because of the highly individualized issues involved in each case.  In approving the BELO CMO, Judge Wilkinson rejected class counsel's consolidation requests, holding that the issues to be litigated in each BELO case "are so highly particularized as to individual plaintiffs that they substantially predominate over any common issues that might merit extensive consolidated discovery procedures of the type proposed by counsel . . . ." (1/30/15 BELO CMO, Rec. Doc. 14099, at 1.)  Likewise, in 2017, this Court denied a motion to consolidate four BELO cases.  The plaintiffs had argued that their lawsuits presented substantial common questions of law and fact and that consolidation would promote judicial efficiency and economy.  (12/19/17 Mot. to Consolidate, Rec. Doc. 23779, at 7-10.)  This Court denied that request *sua sponte*, noting that "Judge Wilkinson rejected arguments similar to the ones asserted here when he issued the BELO Cases Initial Case Management Order." (12/21/17 Order, Rec. Doc 23785.)

Other BELO courts have reached the same result and refused to consolidate cases for trial. *See, e.g., De La Cruz v. BP Am. Prod. Co., et al.*, Case No. 1:18-cv-00472, Dkt. 39, Mem. Op. and

Order, S.D. Ala. (Mar. 25, 2019) (Moorer, J.) (denying request to consolidate 10 BELO cases for discovery and trial because "BELO lawsuits are focused on litigation of individual rather than common issues") (internal quotations and citations omitted).  Imposing a different result and allowing consolidation of the B3 cases here risks confusion, prejudice, and inconsistency not only within the B3 docket (for those plaintiffs not selected to be one of the 20 people included in the plaintiffs' two proposed "flights"), but with the BELO docket as well.

BP's CMO proposal advances cases across the B3 docket concurrently, while respecting Fifth Circuit precedent regarding the individualized nature of each claim.  The plaintiffs' proposal, on the other hand, ignores Fifth Circuit precedent and focuses on specific causation issues for 20 individual plaintiffs that will not carry over to or inform other cases in the B3 docket.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | **MASTER DOCKET** |
| "DEEPWATER HORIZON" in the | * | **NO. 10-MD-2179** |
| GULF OF MEXICO, on | * | |
| APRIL 20, 2010 | * | **SECTION: "J"** |
| | * | |
| | * | **JUDGE BARBIER** |
| | * | |
| | * | **MAG. JUDGE WILKINSON** |
| THIS DOCUMENT RELATES TO: | * | |
| *All Claims in Pleading Bundle B3* | * | |
| | * | |
| | * | |

---

**[PROPOSED] CASE MANAGEMENT ORDER FOR THE B3 BUNDLE**

On July 17, 2019, this Court held a status conference to consider future case management proposals for the remaining cases in the B3 bundle.  Pursuant to the Court's July 18, 2019 Order (Rec. Doc. 25858), BP Exploration & Production, Inc. and BP America Production Company (together, "BP") and the remaining B3 Plaintiffs (together, the "Parties") met and conferred regarding a joint proposed case management order for the B3 bundle.  The Parties submitted various written proposals to the Court.

Having considered the Parties' proposals, and the Court being duly advised, **IT IS HEREBY ORDERED THAT** the following case management order shall apply to remaining cases in the B3 bundle:

I.     **INITIAL DISCLOSURE REQUIREMENTS**

    A.    **Identification and Resolution of Global Legal Issues**

        1.    By no later than September 30, 2019, the B3 Plaintiffs will provide the Court with their respective positions on the availability of punitive damages for the claims asserted.

2. By no later than September 30, 2019, BP will provide the Court with its position on fault and defenses that BP may assert regarding the claims asserted by the B3 Plaintiffs.

3. The Court may set a briefing schedule for any unresolved issues identified above, contemporaneous with the other ongoing deadlines in this case management order ("CMO").

B. **Initial Information Exchange**

1. Except where specified below, no later than 120 days after the date of this CMO (the "Initial Disclosures Deadline"), each Party in a B3 action must, without awaiting a discovery request, provide the other Parties, the following information and/or materials:

(a) <u>By BP to the B3 Plaintiffs:</u>

a. All information, data and/or tangible materials, if any, about plaintiff in the BP medical encounters database and/or oil spill cleanup worker database;

b. All non-privileged information, data, and/or tangible materials concerning job duty, job assignment and/or time records, if any, in BP's possession, custody or control relating to plaintiff;

c. All contracts and/or agreements between BP and plaintiff or plaintiff's direct employer(s), if any, concerning oil spill response work, including but not limited to requirements, policies and procedures concerning health, safety and welfare of oil spill response workers;

d. The Federal On Scene Coordinator Report for the *Deepwater Horizon* Oil Spill (the "FOSC Report") and the United States Coast Guard's Incident Specific Preparedness Review (the "ISPR");

e. Operational Scientific Advisory Team ("OSAT") Reports and related documents (previously produced at BP-

BELO_00001851–1926, 2366-2402, 2823-2895, 3416–3450, 4225-4355, 5637, 5930-6717);[1]

f.  National Institute of Occupational Safety & Health ("NIOSH") Reports (previously produced at BP-BELO_00002570-2593, 2658-2670, 2916-2952, 3451-3474, 3479-3492, 3503-3792, 3832-3848);

g.  Occupational Safety & Health Administration ("OSHA") Report (previously produced at BP-BELO_00003793-3831);

h.  Material Safety Data Sheets ("MSDS") for Corexit 9500 (previously produced at BP-BELO_00000701-710), Corexit 9527 (previously produced at BP-BELO_00000710-720), and source and weathered crude oil (previously produced at BP-BELO_00018866-18872, 5399, 5403);

i.  Documents regarding the use of chemical dispersants during the *Deepwater Horizon* response, specifically the Dispersant After-Action Report (previously produced at BP-BELO_00001767-1846), Dispersant Application Requests and Approvals (previously produced at BP-BELO_00014540-15106), After Action Report, Deepwater Horizon MC252, Aerial Dispersant Response ("Dispersant After Action Report") (previously produced at BP-BELO_00001767-1846), and Dispersant Application Data Set (previously produced at BP-BELO_00117901-117969);

j.  Cleanup worker training modules (previously produced at BP-BELO_00000016-152, 155-312, 3849-3851, 4356-4377, 4946-5453, 5455-5636);

k.  Personal protective equipment ("PPE" matrix") (previously produced at BP-BELO_00004113-4114) and the Declaration of David R. Dutton (MDL 2179 Rec. Doc. 7112-2) (previously produced at BP-BELO_00006809-6840);

l.  Worker Safety White Paper (previously produced at BP-BELO_00002896-2904);

m.  The Shoreline Cleanup Assessment Technique ("SCAT") database (previously produced at BP-BELO_00117901-117969);

---

[1]  Documents bearing bates numbers with the prefix "BP-BELO" refer to productions made in certain BELO cases.

n.   All other documents previously produced in BELO productions bearing bates numbers BP-BELO_00000001-117969;

o.   With respect to water, air, sediment, and other *Deepwater Horizon* sampling and monitoring results, BP will (i) direct plaintiffs to applicable publicly-available data sources, (ii) produce the database regarding samples (previously produced at BP-BELO_00006928-6929) subject to the Court's April 16, 2019 Disposal Order (the "Disposal Order," Rec. Doc. 25593), and (iii) produce the same information, where available, regarding the samples that BP is continuing to store at its Fort Collins, Colorado facility that are not subject to the Disposal Order; and

p.   Copies of any responsive documents received through use of plaintiff's executed Releases.

(b)   By the B3 Plaintiffs to BP:

a.   B3 Plaintiffs shall provide fact disclosures consistent with the requirements of the BELO Cases Initial Proceedings Case Management Orders (Rec. Doc. 14099 and Rec. Doc. 25486), as follows:

i.   The completed and verified Supplemental Particularized Statement of Claim ("Supplemental PSOC"), attached to this CMO as **Exhibit A**, together with production of all medical records and other documents referenced in paragraph 21 of the Supplemental PSOC; and

ii.   Signed Authorizations for Release of (i) Employment Records Information, (ii) Social Security Records Information, (iii) Social Security Earnings Information, (iv) Records Provided to *Deepwater Horizon* Medical Benefits Claims Administrator (if applicable), and (v) Tax Records (collectively, the "Information Releases"), in a form to be provided by BP.

2.   The Parties shall supplement their disclosures in accordance with Federal Rule of Civil Procedure 26.

4

C.    Within 30 days following the Initial Disclosure Deadline, the Parties shall report to the Court on each side's compliance with the initial disclosure requirements set forth in Section I.B of this CMO, as follows:

    1.    The Parties shall file a status report regarding compliance with this CMO on the docket for MDL No. 10-2179.  No later than five calendar days before filing the status report, counsel must serve a draft of the report by email on counsel for all parties whose cases are listed on the report.  Counsel must then confer in a good faith effort to resolve any errors or discrepancies in the draft report before its submission to the Court.  If disagreements about inclusion of a case cannot be resolved by counsel, the case must be listed in the report.

The report submitted to the Court must contain:

    (a)    A caption that includes the "Applies to Pleading Bundle B3" designation and a "related to" heading that lists the cases addressed in the status report;

    (b)    A list of those cases, by civil action number, the party's name and attorney, in which the parties have provided no disclosures;

    (c)    A list of those cases, by civil action number, party's name and attorney, in which the parties have provided deficient or incomplete disclosures, with a parenthetical listing examples of the reasons that these disclosures are deficient; and

    (d)    A list of those cases, if any, in which the parties have failed to provide full and complete disclosures after having been ordered to do so as provided below.

    2.    A copy of each status report must be served on counsel for the listed party. Service via email shall be sufficient.  Upon receiving each status report, the Court will review it and, if appropriate, issue an order requiring full and complete disclosures by a date certain approximately 30 days later.

3. The Parties will submit another status report to the Court listing those cases in which there is failure to provide full and complete disclosures after having been ordered to do so.

4. Any Party who fails to comply with this CMO as set forth above will be required by a subsequently issued court order to appear in person, with their counsel, on a fixed date before Judge Barbier to show cause why they have failed to comply with the Court's orders.

## II. GENERAL CAUSATION EXPERT DISCOVERY

A. The Parties shall engage in expert discovery focused on issues of general causation. General causation shall include, among other things, consideration of whether certain medical conditions claimed by the B3 plaintiffs could be caused by the *Deepwater Horizon* spill or response given the level, duration, and persistence of exposure alleged by the B3 Plaintiffs.

B. By no later than September 30, 2019, the B3 Plaintiffs will provide a list or lists to BP of all injuries that each B3 Plaintiff assert resulted from exposure to oil and/or dispersants.

C. By no later than October 30, 2019, BP may identify the B3 plaintiffs whose claims and medical conditions that BP intends to challenge on general causation grounds, and the general bases for the challenge, based on information then available ("BP's General Causation Disclosure").

D. No later than December 20, 2019, B3 Plaintiffs shall provide one or more expert reports addressing general causation for the B3 plaintiffs and conditions identified in BP's General Causation Disclosure ("B3 Plaintiffs' Expert Report Deadline").

6

E.      No later than February 27, 2020, BP shall provide one or more expert reports addressing general causation for the B3 plaintiffs and conditions identified in BP's General Causation Disclosure ("BP's Expert Report Deadline").

F.      No later than March 12, 2020, the B3 Plaintiffs may submit any rebuttal expert reports responding to those submitted by BP ("B3 Plaintiffs' Rebuttal Expert Report Deadline").

G.      Within 35 days of the B3 Plaintiffs' Rebuttal Expert Report Deadline, any Party may take the deposition of any other Party's expert.  The Parties shall meet-and-confer regarding the scheduling of the depositions.  Pursuant to Federal Rules of Civil Procedure 26 and 30, for purpose of this general causation proceeding, each expert witness shall be produced for a single deposition of a duration not to exceed seven hours.

H.      No later than April 30, 2020, any Party may submit a motion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and/or a dispositive motion on general causation issues.  The Court may order further briefing and a hearing on the motion(s), if any, as appropriate.

I.      No party waives its rights to assert later any arguments in support of or against general causation with respect to any B3 Plaintiffs or medical conditions which are not subject to a motion in connection with these proceedings.

III.    **GENERAL FACT DISCOVERY FOR REMAINING CASES.**

A.      **Scope of Discovery.**

1.      The B3 Plaintiffs may engage in fact discovery of BP limited to issues common to remaining B3 cases.  The purpose of this process is to ensure the efficient and prompt production of information to plaintiffs by BP on issues

relating to the B3 bundle as a whole, while avoiding unnecessary burden, cost and duplication of effort for the B3 Plaintiffs and BP in this and any subsequent proceedings.  Thus, the scope of permissible discovery will be limited to issues that have bearing on cases across the B3 bundle, rather than on individual case issues.  Discovery of BP relating to plaintiff-specific or case-specific issues or allegations shall not be permitted at this time.

2.   Discovery conducted pursuant to this Section III shall be limited to fact discovery only; no expert discovery shall be permissible.

B.   **Timing of Service**.

1.   B3 Plaintiffs may commence discovery of BP pursuant to this Section III on December 10, 2019.  No discovery shall be conducted in the B3 cases before such date, except as specified in Sections I and II of this CMO.

C.   **Discovery Limits.**  Discovery of BP during this phase is limited as follows:

1.   B3 Plaintiffs represented by the same counsel may serve a combined total of no more than **10 interrogatories**, including all discrete sub-parts, on BP.

2.   B3 Plaintiffs represented by the same counsel may serve a combined total of no more than **5 requests for admission**, including all discrete sub-parts, on BP.

3.   B3 Plaintiffs represented by the same counsel may serve a combined total of no more than **15 requests for the production of documents**, including all discrete sub-parts, on BP.

    4.    B3 Plaintiffs represented by the same counsel may serve a notice for a corporate representative deposition of BP on a total of no more than **10 topics**, including all discrete sub-parts.

D.    **<u>Discovery Responses.</u>**  BP may serve written responses and objections to discovery requests within 45 days of service.  BP shall produce documents responsive to any requests for the production of documents on a rolling basis and shall substantially complete its document productions within 90 days of service of the requests.

E.    **<u>Rule 30(b)(6) Witness Depositions.</u>**  Depositions noticed and conducted under Federal Rule of Civil Procedure 30(b)(6) shall be subject to the following provisions:

    1.    BP shall identify the corporate representative(s) whom it intends designate in response to any Rule 30(b)(6) deposition notices served under Section III.C.4 within 21 days of service of the notice.  If BP requires greater clarification on topics identified in any B3 Plaintiff's deposition notice in order to identify a representative, it will meet-and-confer with the B3 Plaintiffs' counsel before that time.

    2.    Each corporate representative designated by BP shall sit for a single deposition in response to notices served by all B3 Plaintiffs, unless the Parties agree or the Court orders otherwise.

    3.    Pursuant to Federal Rules of Civil Procedure 26 and 30, the deposition of each corporate representative shall not exceed a total of seven hours, unless the Parties agree or the Court orders otherwise.

4.      The Parties shall meet-and-confer to identify an appropriate date for the corporate representative to appear for deposition.  The Parties will use their best efforts to conduct noticed depositions within 60 days of service of the applicable notice(s), unless otherwise agreed by the noticing Party and the producing Party.

5.      In the event that the Parties are unable to agree on the nature or scope of topics appropriate for deposition, the date on which such deposition is to be conducted, duration of the deposition, or other issues, any Party may seek relief from this Court for good cause shown, pursuant to Section IV.G of this CMO.

6.      No B3 Plaintiff may take a subsequent corporate representative deposition of BP on any topic on which BP produced a witness pursuant to this Section III.E in later proceedings, whether in MDL 2179 or following reallocation of their case to another court.

F.     **Discovery Motions.**  In the event that a discovery dispute arises between the Parties, the Parties shall meet-and-confer in good faith, pursuant to Federal Rules of Civil Procedure 26 and 37, in an attempt to resolve the dispute.  If the Parties are unable to resolve the dispute, any Party may bring a motion to compel discovery, for a protective order, or other relief from the Court.  Briefs submitted in support of or in opposition to discovery motions shall not exceed 15 pages without leave of Court.  The Court shall issue an order indicating whether the non-moving Party shall submit a written response to any such motion and the due date for any such submission.  The Court shall set a hearing on the matter as it deems appropriate.

IV.       **MISCELLANEOUS**

    A.      **Confidentiality.**  For the avoidance of doubt, Pretrial Order 13 ("PTO 13," Order Protective Confidentiality, Rec. Doc. 641) governs the confidentiality of documents and other information produced in connection with this CMO.  The Parties shall meet and confer regarding any additional confidentiality or other discovery protocols that may be appropriate.

    B.      **Effect of Discovery.**  The Parties agree that fact and expert discovery taken pursuant to this CMO may be used in MDL 2179 or in proceedings in other courts arising from any reallocation of B3 Plaintiffs' cases, subject to the terms of this CMO and the Federal Rules of Civil Procedure and other applicable rules and orders.

    C.      **No Additional Discovery Permitted**.  No discovery may be conducted in connection with cases in the B3 bundle except as specified in this CMO.  All other discovery in the B3 cases remains stayed at this time.

    D.      **Other Dispositive Motions.**  Nothing in this CMO shall preclude the Parties from filing dispositive motions in addition to those contemplated herein, including based on allegations contained in the pleadings and/or disclosures or other information provided pursuant to PTO 63, PTO 66, or this CMO.

    E.      **Compliance of Future B3 Claimants.**  Any B3 Plaintiff filing claims after the date of this CMO must comply fully with the requirements of PTO 63, PTO 66, this CMO, and all other applicable rules and orders of the Court.

    F.      **B3 Cases Remain Stayed.**  Except as provided herein or otherwise ordered by the Court, cases in the B3 bundle remain stayed at this time.

G.      **<u>Modifications of this CMO for Good Cause Shown</u>**.  Any Party may seek leave

relief from this Court to modify this CMO for good cause shown.

**EXHIBIT A TO CASE MANAGEMENT ORDER FOR THE B3 BUNDLE**

---

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
**Civil Action No. 10-MD-2179-CJB-SS**

**SUPPLEMENTAL PARTICULARIZED STATEMENT OF CLAIM**

---

**PLAINTIFF'S FULL NAME:** _____

**CASE NO.:**_____

**A.     INFORMATION ABOUT THE B3 PLAINTIFF'S MEDICAL CONDITION**

1.     The B3 Plaintiff claims that the following specific medical condition(s) resulted from their exposure to oil and/or chemical dispersants during the *Deepwater Horizon* spill:

i.     _____

ii.     _____

iii.     _____

iv.     _____

2.     For each condition identified in response to Question 1, indicate on what date the B3 Plaintiff first experienced symptoms relating to the condition:

i.     _____

ii.     _____

iii.     _____

iv.     _____

3.     For each condition identified in response to Question 1, identify the date on which the B3 Plaintiff first sought medical treatment for each condition:

i.     _____

ii.     _____

iii.     _____

iv.     _____

4.    For each condition identified in response to Question 1, identify the date on which each condition was first diagnosed and the doctor(s) or other healthcare providers who first diagnosed the condition:

| Medical Condition | Date of First Diagnosis | Diagnosing Doctor / Health Care Provider | Address |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

5.    If the B3 Plaintiff claims that they were exposed to oil and/or chemical dispersants through **ingestion**, please provide the following information:

      i.    What food, beverage or other substance did they ingest that they claim led to the exposure?_____

              _____

      ii.    For each claimed ingestion, list the date or date ranges of the ingestion:  _____

              _____

      iii.    For each claimed ingestion, list the quantity ingested:_____

              _____

6.    If the B3 Plaintiff claims that they were exposed to oil and/or chemical dispersants through **dermal (skin) contact**, please provide the following information:

      i.    What substance(s) came into contact with their skin? _____

      ii.    Please indicate the circumstances in which they came into dermal contact with oil and/or dispersants:_____

              _____

      iii.    For each claimed contact with the above substance(s), please indicate the date(s) and the approximate number of occasions of each contact:_____

              _____

      iv.    For each claimed contact with the above substance(s), please indicate the geographic location where the contact occurred: _____

              _____

7.    Does the medical condition and/or injury persist today?

      Yes _____ No _____

*If "Yes"*:

    i.      Does the B3 Plaintiff still receive treatment?    Yes _____    No _____

    ii.    *If "Yes"*: From whom? _____

## B.    CLEAN UP WORKER CLAIMS

*If the B3 Plaintiff was a cleanup worker in the spill response, please proceed to Question 8.*

*If the B3 Plaintiff did not work as a cleanup worker, please skip to Question 11.*

8.    Was the B3 Plaintiff provided any protective clothing, gear, equipment, etc. during their work on the *Deepwater Horizon* spill?   Yes _____    No _____

    *If "Yes"*:

    i.      Identify the specific clothing, gear, equipment, etc. the B3 Plaintiff was provided:_____

    ii.    When and how often was such clothing, gear, and equipment provided? _____

    iii.   Where or from whom was the B3 Plaintiff provided the clothing, gear, equipment, etc.?_____

9.    Did the B3 Plaintiff wear and/or use protective clothing, gear equipment, etc. during the alleged exposure?    Yes _____    No _____

    *If "Yes":*

    i.      Identify the specific clothing, gear, equipment, etc. worn and/or used:  _____ _____

    ii.    When and how often was such clothing, gear, and equipment provided? _____

    iii.   Where or from whom was the clothing, gear, equipment, etc. obtained?_____ _____

10.   If the B3 Plaintiff did not use the clothing, gear, equipment provided, please explain why:_____

_____

## C.   INSURANCE AND OTHER COMPENSATION INFORMATION

11.   Does the B3 Plaintiff claim or expect to claim that he or she lost earnings or suffered impairment of earning capacity as a result of any physical, mental, or emotion injury?

Yes _____        No _____

*If "Yes":*

i.      What was the B3 Plaintiff's annual income at the time of the injury?  _____

ii.     How long does the B3 Plaintiff claim they were unable to work due to the claimed injury or had impaired capacity (please provide dates)?  _____

iii.    How much does the B3 Plaintiff claim in lost wages?  _____

12.   Has the B3 Plaintiff ever filed a lawsuit or made a claim alleging personal injury, other than the present lawsuit?

Yes _____        No _____

*If "Yes":*

i.      When did they file the lawsuit?  _____

ii.     Who were the parties?  _____

iii.    What was the case/civil action/docket number?  _____

iv.     What claim did they make?  _____

v.      Did the lawsuit or claim seek damages for injuries claimed in this case? _____

vi.     Describe the result of the lawsuit, including the amount of any compensation received. _____

13.   Identify all persons who are aware of or possess information concerning the B3 Plaintiff's medical conditions and/or injury. (Please attach additional sheets as necessary.)

i.      Name: _____

Address: _____

Relationship:  _____

What do they know about the injury or condition? _____

_____

ii.     Name: _____

Address: _____

Relationship:  _____

What do they know about the injury or condition? _____

_____

4

**D.    THE B3 PLAINTIFF'S MEDICAL HISTORY**

14.    Has the B3 Plaintiff ever been exposed to substances or sources or contaminants and/or toxins other than the ones alleged in this lawsuit?

Yes _____ No _____

*If "Yes"*:

i.    Describe in as much detail as possible the circumstances in which the exposure to such substances or sources occurred: _____

ii.    Where did the exposure(s) occur? _____

iii.    When did the exposure(s) occur? _____

iv.    To what contaminant and/or toxins was the B3 Plaintiff exposed? _____

v.    What was the level of exposure to each contaminant and/or toxin, if known? _____

_____

vi.    For how long was the B3 Plaintiff exposed to each contaminant and/or toxin? _____

_____

15.    ***Smoking history.*** Check the answer and fill in the blank applicable to the B3 Plaintiff's history of smoking and/or tobacco use:

i.    _____ Never smoked or chewed.

ii.    _____ Smoked or chewed

(A)    When did the B3 Plaintiff start? _____

(B)    Does the B3 Plaintiff still smoke now?  Yes _____ No _____

(C)    If "No," when did they stop? _____

(D)    What did they use?  (Circle all that apply.)  Cigarettes/cigars/pipe tobacco/chewing tobacco/snuff.

(E)    Amount smoked or chewed: on average ___ per day for ___ years.

16.    ***Alcohol Use:***

i.    Number of drinks per day: _____

ii.    Number of drinks per week: _____

17.    Has the B3 Plaintiff ever experienced, been diagnosed with, or been treated for the following health conditions? *(Check all that apply)*

5

Anemia                                              Yes: _____        No: _____

Bacterial Infection                                 Yes: _____        No: _____

Diabetes                                            Yes: _____        No: _____

Obesity                                             Yes: _____        No: _____

Blood Disorder                                      Yes: _____        No: _____

Skin Disorder(s)(e.g., rashes, blisters)            Yes: _____        No: _____

Stroke                                              Yes: _____        No: _____

Seizures                                            Yes: _____        No: _____

Muscle Disorder                                     Yes: _____        No: _____

Paralysis                                           Yes: _____        No: _____

Severe Headaches or Migraines                       Yes: _____        No: _____

Cancer                                              Yes: _____        No: _____

Allergies                                           Yes: _____        No: _____

Compromised Immune System                           Yes: _____        No: _____

Severe Allergic Reaction                            Yes: _____        No: _____

Cardiovascular Disease
(including high blood pressure)                      Yes: _____        No: _____

Heart Attack                                        Yes: _____        No: _____

Chest Pain                                          Yes: _____        No: _____

Kidney Disease                                      Yes: _____        No: _____

Liver Disease                                       Yes: _____        No: _____

Respiratory Illness(es)                             Yes: _____        No: _____

Ocular (Eye) Condition(s)                           Yes: _____        No: _____

Conditions affecting the ears and hearing
(including tinnitus)                                Yes: _____        No: _____

Conditions affecting the nose and sinuses
(including rhinosinusitus)                          Yes: _____        No: _____

Mental Health Issues                                Yes: _____        No: _____

18.    If you answered "Yes" to any of the above, for each condition:

    i.    When was it diagnosed? (identify condition and month/year)_____

            _____

    ii.   Who diagnosed it? (identify condition and health care provider)_____

iii.    Who treated it? (identify condition and health care provider)_____

_____

## E.   FAMILY INFORMATION

19.   Has any of the B3 Plaintiff's children, parents, siblings, or close relatives (aunts, uncles, or grandparents) suffered from any of the conditions listed in Question 1?

Yes ____   No ____

*If "Yes"*: Please identify each such person below and provide the information requested:

i.    Name: _____

ii.    Relationship to Plaintiff: _____

iii.    Current Age (or Age at Death): _____

iv.    Type of Condition: _____

v.    If Applicable, Cause of Death: _____

## F.   DOCUMENTS

20.   **Authorizations**: Please sign and attach the authorizations for the release of records appended hereto;

21.   **Documents in the B3 Plaintiff's possession**: If the B3 Plaintiff has any of the following materials in their custody or possession, or in the possession custody or control of their lawyers or representatives, please attach a copy to this Supplemental PSOC, but only to the extent that production of such documents in the attorney's possession does <u>not</u> violate the work product doctrine or attorney client privilege.

i.    All medical records, bills, and any other documents from physicians, healthcare providers, hospitals, pharmacies, insurance companies, or others who have provided treatment to the B3 Plaintiff in the past fifteen (15) years or that the B3 Plaintiff otherwise identified in his or her Particularized Statement of Claim ("PSOC"), or other submission made pursuant to PTO 63 or PTO 66, including all medical records that support causation;

ii.    All documents constituting, reporting, summarizing, or referring to any medical test, psychological test, psychiatric test, intelligence test, mental health test, or standardized test of any kind ever taken by or administered to the B3 Plaintiff in the past fifteen (15) years;

iii.    If the B3 Plaintiff does not have medical or other healthcare records from any physician and/or healthcare provider identified in disclosures made pursuant to PTO 63, PTO 66, or this CMO, the Physician Certification Form, attached as **Exhibit 2** to this Supplemental PSOC;

iv.    Copy of the B3 Plaintiff's driver's license or other government-issued identification;

v.    All documents relating to any workers' compensation, Social Security or other disability applications, evaluations, or proceedings in which the B3 Plaintiff has been involved;

vi.    If the B3 Plaintiff claims to have suffered a loss of earnings or earning capacity, federal tax returns for each of the last ten (10) years;

vii.    If the B3 Plaintiff claims any loss from medical expenses, copies of all bills from any physician, hospital, pharmacy or other healthcare provider;

viii.    All documents constituting, concerning, or relating to oil spill clean-up instructions, policies, and/or procedures; warnings regarding exposure; or other materials distributed with or provided to the B3 Plaintiff in connection with his or her alleged exposure to the oil spill;

ix.    Copies of photographs, videotapes, or digital images of (i) the B3 Plaintiff while performing cleanup work in connection with the oil spill, and (ii) any protective gear, clothing, shoes or equipment worn by the B3 Plaintiff during work on the spill (the B3 Plaintiff must maintain the originals of the items requested in this subpart) (applicable if the B3 Plaintiff was a clean-up worker);

x.    Copies of photographs, videotapes, or digital images portraying or documenting injuries the B3 Plaintiff claims to have sustained as alleged in their Complaint, including any "day in the life," therapy, or recovery video (the B3 Plaintiff must maintain the originals of the items requested in this subpart);

xi.    Any written and/or recorded statements obtained from or given by any person having knowledge of facts relevant to the subject of this litigation, including the B3 Plaintiff;

xii.    All documents which mention or refer to any alleged health risks or hazards related to the oil spill and/or exposure thereto in the B3 Plaintiff's possession at or before the time of the injury alleged in the Complaint, PSOC, or other submission;

xiii.    All journals, diaries, notes, letters, emails, social media handles and entries (e.g., Facebook, Instagram, LinkedIn, Twitter, MySpace, YouTube, or other online collaboration tools) or website postings and comments made on postings by the B3 Plaintiff (e.g. on a blog, message board, etc.), or other documents written or received by the B3 Plaintiff that refer to health or well-being, including any injuries or illnesses, or which refer to the oil spill or the risks of exposure to the spill or any spill-related litigation;

xiv.    If the individual bringing suit is not the person who suffered the injury or illness, any release or other documentation that plaintiff contends establishes their legal

authority to assert claims on claimant's behalf, such as testamentary letters, a court order appointing legal guardian, etc. (if applicable);

xv.     Decedent's death certificate and autopsy report (if applicable);

xvi.    IAP Badge Worker number and Petroleum Education Counsel ("PEC") training number (if the B3 Plaintiff was a clean-up worker); and

xvii.   All claims made relating to the oil spill, including but not limited to any GCCF claim or SPC Claim Number and all documents submitted to the Deepwater Horizon Medical Benefits Claims Administrator (Garretson Resolution Group) concerning any claim for compensation (if applicable).

## <u>ATTORNEY CERTIFICATION</u>

By signing below, I declare and attest that I am fully authorized to submit this Supplemental Medical Information Form on behalf of the B3 Plaintiff identified above, and that the answers provided to the above questions are true, correct, and complete.

I acknowledge and agree that the responses and information provided herein are binding on the B3 Plaintiff and shall be treated as the equivalent of interrogatory answers under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and other applicable rules and orders of this Court.

I acknowledge and agree that I have an obligation to supplement the above responses if I learn that they are in any material respect incomplete or incorrect.

Date: _____, 20__

Location (City and State): _____

_____

Signature of B3 Plaintiff's Counsel

Respectfully Submitted,


*/s/ Don Haycraft*
Don Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
A. Katrine Jakola, P.C.
(katie.jakola@kirkland.com)
Kristopher Ritter
(ritterk@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Counsel for BP America Production Company and
BP Exploration & Production, Inc.*