## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * | MDL 2179 |
| This Document Relates To: | * | SECTION: J(2) |
| Nos. 11-02621, 17-03387, 17-03412, 17-03347, 17-03347 | * * | JUDGE BARBIER |
| | * | MAG. JUDGE WILKINSON |

### SUGGESTION OF REMAND
### [As to 5 Cases in the B3 Pleading Bundle that Assert Only Contract Claims]

TO THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION:

In accordance with 28 U.S.C. § 1407(a) and Rule 10(b) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the undersigned transferee judge respectfully suggests that the following cases be remanded to the transferor district for further proceedings and trial.

| Case Name | Operative E.D. La. Case No. | Initial E.D. La. Case No. (if any)[1] | Transferor District and Case No. |
|---|---|---|---|
| Coastal Water Cleaners and Environmental Services, L.L.C. v. BP America Production Company, et al. | 11-02621 | -NA- | S.D. Alabama (No. 11-557) |
| Machelle Steiner v. BP America Production Company, et al. | 17-03387 | 12-00347 | S.D. Alabama (No. 11-593) |

---

[1] As explained below, Pretrial Order No. 63 ("PTO 63") in this MDL required plaintiffs in existing multi-plaintiff lawsuits to file a new, individual lawsuit in this Court. The newly-filed lawsuit then became the "operative" lawsuit for the plaintiff, while the "initial" lawsuit was eventually closed. (*See* Rec. Doc. 24814). This Suggestion of Remand recommends that the "operative" (i.e., post-PTO 63) lawsuit be remanded to the transferor court, but the above table also lists the "initial" (i.e., pre-PTO 63) lawsuit for the sake of completeness.

ATTACHMENT "A"

| William H. Brehm v. BP America Production Company, et al. | 17-03412 | 11-02395 | S.D. Alabama (No. 11-521) |
|---|---|---|---|
| John L. Howard v. BP America Production Company, et al. | 17-03347 | 11-03148 | S.D. Alabama (No. 11-693) |
| Nicholas W. Collier v. BP America Production Company, et al. | 17-03356 | 11-03148 | S.D. Alabama (No. 11-693) |

## I.  Introduction: The DEEPWATER HORIZON/Macondo Well Casualty and Oil Spill, the Response, and the Claims at Issue

On April 20, 2010, a blowout, explosions, and fire occurred on the DEEPWATER HORIZON, a semi-submersible drilling rig, as it was in the process of temporarily abandoning a well, known as Macondo, it had recently drilled in the Gulf of Mexico. The Macondo Well was located fifty miles off the coast of Louisiana, under 5,000 feet of water. Fueled by hydrocarbons from the well, the rig burned continuously until the morning of April 22, when the DEEPWATER HORIZON capsized and sank. As it descended, the pipe that connected it to the well (known as a riser) broke in multiple places near the seafloor. Oil from the reservoir and well then spewed into the Gulf of Mexico via the fractured riser. The Macondo Well was successfully capped on July 15, 2010, halting a nearly three-month discharge that released an estimated 3.19 million barrels of oil into the Gulf.

The oil spill instigated a massive response that included government entities and officials, BP (the majority owner and designated operator of the Macondo Well), BP's contractors and subcontractors, other industry participants, and thousands of private individuals. The response involved, over time, a cumulative total of over 100,000 response workers, 9,700 vessels, 127 aircraft, and 13.5 million feet boom. One

aspect of the response was the "Vessels of Opportunity" ("VoO") Program, wherein local vessels were hired to perform various response activities. Participation in the VoO Program was typically governed by a Master Vessel Charter Agreement.

The five plaintiffs identified in this Suggestion of Remand allege breach of contract claims against BP and other parties relating to their participation in the VoO program. Specifically, the plaintiffs claim they were not fully paid what they are owed under the Master Vessel Charter Agreement.

## II.    Relevant MDL 2179 Proceedings

The Judicial Panel on Multidistrict Litigation created this MDL on August 10, 2010. (Rec. Doc. 1). There have been many developments over the ensuing nine years.[2] Here the Court recounts the MDL procedural history relevant to the five plaintiffs identified in this Suggestion of Remand.

Numerous claims asserting a variety of damages were consolidated in this MDL. Early on, the Court organized claims by type into one of several "pleading bundles." (*See* Pretrial Order No. 11, Rec. Doc. 569; Pretrial Order No. 25, Rec. Doc. 983). The claims at issue fall within the "B3" pleading bundle.[3] On March 30, 2011, the Plaintiffs' Steering Committee ("PSC") filed an Amended Master Complaint for the B3 bundle that alleged, inter alia, breach of contract claims on behalf of VoO plaintiffs against BP and other defendants. (Rec. Doc. 1812). Plaintiffs could join in

---

[2] The MDL master docket, No. 10-md-2179, contains nearly 26,000 document entries to date. Many of the significant orders, etc., in MDL 2179 are posted to the Court's public website, http://www.laed.uscourts.gov/OilSpill/OilSpill.htm.

[3] VoO contract claims are not the only claims that fall within the B3 bundle. For example, claims for personal injury allegedly due to exposure to oil and/or chemical dispersant are also in the B3 bundle.

and adopt the claims of the Amended B3 Master Complaint without paying a filing fee by submitting a 3-page Short Form Joinder. (Rec. Docs. 983, 983-3, 982).

On July 8, 2011, the Court entered a Case Management Order specific to VoO Program contract matters. ("VoO CMO," Rec. Doc. 3207). The VoO CMO established a limited discovery schedule for six "VoO Focus Plaintiffs," and permitted the PSC and BP to file a motion for partial summary judgment on common contract issues relating to the VoO Program.[4] In accordance with the VoO CMO, the PSC and counsel for a VoO Focus Plaintiff, Hoi Nguyen, filed a "Motion for Partial Summary Judgment on the Issue of Liability for Breach of Master Vessel Charter Agreement, Vessel of Opportunity Program." (Rec. Doc. 4035). The motion was briefed and then argued to the Court on November 18, 2011. (Rec. Doc. 4642).

While the motion was under advisement, the PSC and BP agreed to the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Economic Settlement," Rec. Doc. 6430), which rendered the motion and the VoO CMO moot. (*See* Rec. Docs. 14419, 14495). The Court granted preliminary approval of the Economic Settlement on May 2, 2012 (Rec. Doc. 6418), held a fairness hearing on November 8, 2012 (Rec. Doc. 7900), and granted final approval of the Economic Settlement on December 21, 2012 (Rec. Docs. 8138, 8139). The Economic Settlement was upheld on appeal. *See In Re: Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *pet. for reh'g en banc denied*, 756 F.3d 320 (5th Cir.), *cert. denied*, 135 S. Ct. 754 (2014) (mem.).

---

[4] The VoO CMO also contemplated a mediation process for all VoO contract claims, and it instructed Liaison Counsel to meet and confer regarding development of such a process.

The Economic Settlement is a class action settlement under Fed. R. Civ. P. 23. Class members who did not wish to be bound by its terms were required to opt-out of the Economic Settlement by November 1, 2012. (Rec. Doc. 7176). The Economic Settlement recognized several categories of damage, including "VoO Charter Payment," which is defined as "a loss alleged by a VoO Charter Payment Claimant for any payment or compensation related to participation in the VoO program that satisfies the requirements set forth in Section 5.5 [of the Economic Settlement]." (Economic Settlement § 38.162, Rec. Doc. 6430).[5] The Economic Settlement received 8,960 claims for VoO Charter Payment, 7,115 of which were determined eligible for payment. (Rec. Doc. 24717). The Settlement Program paid a total of $283,163,169.00 on these 7,115 claims. (*Id.*).

On February 22, 2017, the Court issued Pretrial Order No. 63 ("PTO 63"), which applied to all remaining claims in the B3 bundle (e.g., plaintiffs who opted out of or were excluded from the Economic Settlement). (Rec. Doc. 22295). PTO 63 required all plaintiffs who had timely filed a claim in the B3 pleading bundle and had not released their claims to submit certain documents. Specifically, B3 plaintiffs who previously filed an individual lawsuit (i.e., a single-plaintiff complaint without class

---

[5] Furthermore, under the VoO Charter Payment framework,

> All working VoO participants (those who were dispatched or placed on-hire under the VoO program) may receive between $41,600 and $88,400 (depending on the size of the vessel), representing 26 days' work under the VoO Master Vessel Charter Agreement. Working VoO participants (who are not participants in the Seafood Compensation Program) that will also receive economic loss compensation, will have economic loss compensation reduced by any "VoO Settlement Payment Offset" and "VoO Earned Income Offset." VoO participants that were never placed on hire to perform actual services may receive between $4,800 and $10,200 (depending on the size of the vessel), with no offset.

(Preliminary Approval Order at 9, Rec. Doc. 6418 (footnotes omitted)).

allegations) were required to complete, file, and serve a sworn statement regarding the status of their claim. B3 plaintiffs who had not filed an individual lawsuit, but instead had filed a Short Form Joinder and/or were part of a complaint with more than one plaintiff, were required to complete, file, and serve an individual lawsuit in this Court and a sworn statement.[6] PTO 63 also dismissed the Amended B3 Master Complaint in its entirety. B3 plaintiffs initially had until April 12, 2017 to comply with PTO 63. Many sought and received an extension up to May 3, 2017. PTO 63 warned that plaintiffs who failed to comply would "face dismissal of their claims with prejudice without further notice." (PTO 63 at 7, Rec. Doc. 22295).

On July 18, 2017, the Court issued the "PTO 63 Compliance Order." (Rec. Doc. 23047). Exhibit 1 to the PTO 63 Compliance Order identified 960 B3 plaintiffs deemed to be compliant with PTO 63 and whose B3 claims were subject to further proceedings in this Court. B3 claims that were not listed on Exhibit 1 were dismissed with prejudice. Some B3 plaintiffs moved for reconsideration of the PTO 63 Compliance Order. On December 6, 2017, the Court issued an order granting some of those motions and denying others. (Rec. Doc. 23735). On April 6, 2018, the Court issued an Updated PTO 63 Compliance List, identifying 981 B3 plaintiffs that had complied with PTO 63. (Rec. Doc. 24268).

---

[6] For plaintiffs whose cases were transferred to this Court by the Judicial Panel on Multidistrict Litigation, filing a new lawsuit in this Court as required by PTO 63 does not constitute consent to having that case tried in this Court, nor does it mean the plaintiff waives his or right to request remand to the transferor court. (*See* PTO 63 ¶ 8, Rec. Doc. 22295 ("[M]ere compliance with this Order will not result in a Plaintiff submitting to this Court's jurisdiction for anything beyond pretrial purposes.").

On April 9, 2018, the Court issued Pretrial Order No. 66 ("PTO 66," Rec. Doc. 24282), which required remaining B3 plaintiffs to complete, sign, and serve a Particularized Statement of Claim ("PSOC," Exhibit A to PTO 66) on counsel for BP and the PSC by July 9, 2018.[7] The PSOC is a 12-page questionnaire that was designed to help the parties and the Court better understand the nature and scope of the injuries, damages, and causation alleged by the remaining B3 plaintiffs. The PSOC solicited general background information about each B3 plaintiff as well as information specific to the plaintiff's claim. Part "G" of the PSOC, entitled "Contract Claims," contained the following questions:

42. Was the contract that you claim was breached made as part of the VoO Program? [Yes or no]

43. Identify the contract that you allege was breached including any associated contract number (e.g., MVCA number and the parties to the contract).

44. Describe how the contract was breached.

45. *If you were part of the VoO Program*: Describe whether or not you were placed on-hire and, if applicable, the date(s) you were on hire.

46. *If you allege that you were placed on-hire*: Provide the date(s) you were placed off-hire.

47. Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

48. Describe specifically how the breach of contract you allege in response to Question No. 44 caused the damages you allege in response to Question No. 47.

---

[7] The B3 plaintiffs were not required to file the PSOC in the Court's record.

(Rec. Doc. 24282-1 (emphasis in original)). Many B3 plaintiffs sought and received an extension up to and including August 8, 2018 to comply with PTO 66. (Rec. Doc. 24671). On September 20, 2018, the Court issued the "PTO 66 Show Cause Order." (Rec. Doc. 24875). The PTO 66 Show Cause Order identified 825 B3 plaintiffs that appeared to be compliant with PTO 66. Those who were not compliant were required to show cause in writing why their claims should not be dismissed with prejudice. On January 31, 2019, the Court issued the "PTO 66 Compliance Order," which deemed some of the show cause respondants compliant with PTO 66, and dismissed with prejudice those who failed to comply. (Rec. Doc. 25356). Exhibit 8 to the PTO 66 Compliance Order listed 911 B3 plaintiffs who had complied with PTO 66. (Rec. Doc. 25356-8). After addressing motions for reconsideration of PTO 66, the Court issued an Updated PTO 66 Compliance List, which identified 913 B3 plaintiffs that had complied with PTO 66. (Rec. Doc. 25748). The Court subsequently deemed another 22 plaintiffs to be compliant with PTO 66, bringing the total number of PTO 66-compliant B3 plaintiffs to 935. (Rec. Docs. 25907, 25929).

On July 17, 2019, the Court held a status conference to address future case management of the remaining cases in the B3 pleading bundle. (Rec. Doc. 25858). The vast majority of the 935 plaintiffs in the B3 bundle assert personal injury claims based on alleged exposure to oil and/or chemical dispersant used during the oil spill response. By comparison, only 12 of the remaining B3 plaintiffs assert contract claims, such as claims for money owed under a VoO contract.[8] At the status

---

[8] In addition to these 12 contract claims, there are 3 that seek contractual indemnification from BP. Those 3 contract claims shall remain stayed and consolidated with the MDL. (Rec. Doc. 25858).

conference, Court announced its intent to sever the 12 contract-only claims from the MDL. The next day the Court issued an order addressing these 12 cases. (Rec. Doc. 25859). The Court noted that 4 of the 12 are currently participating in a mandatory mediation process established under another Pretrial Order in the MDL.[9] Because mediation might resolve those cases, the Court decided not to sever them at that time. As to the other 8 cases, the Court instructed the parties to file a statement declaring whether further proceedings should occur in this district or, if applicable, whether the case should be remanded to a transferor district.[10] After receiving the parties' statements,[11] 3 of the 8 cases will remain in the Eastern District of Louisiana.[12] The other 5 cases were transferred here from the Southern District of Alabama, and the plaintiffs request that their cases be remanded to that district.[13]

## III.   Analysis

The DEEPWATER HORIZON/Macondo Well incident gave rise to not only a great number of claims, but also a wide variety of claim types. When the Judicial

---

[9] Those 4 cases are Lawson Environmental Services, LLC (No. 12-00740), Jamie Gaspard (No. 13-04437), Robert Evans (No. 16-03966), and Roger Lartigue (No. 17-03353).

[10] As explained in the Order, "Cases that were transferred to this Court by the Judicial Panel on Multidistrict Litigation must be remanded to the transferor court, unless the parties consent to have the case tried in this Court. *See* Fed. Judicial Ctr., *Manual on Complex Litigation (Fourth)* § 22.93 (2004) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)). Cases that were filed originally in this district can be tried here." (Rec. Doc. 258509 at 2).

[11] *See* Rec. Docs. 25861 (Anh Dang), 25862 (John Howard), 25863 (Nicholas Collier), 25864 (Machelle Steiner), 25865 (William Brehm), 25866 (Jesco Construction), 25905 (BP), and 25906 (Coastal Water Cleaners and Environmental Services, LLC). One of the 8 plaintiffs, Richard Pinell o/b/o Billie Sue, Inc., did not file a statement.

[12] Those cases are Jesco Construction (No. 11-00911), Anh Dang (No. 17-2387), and Richard Pinell o/b/o Billie Sue, Inc. (No. 17-3349). Jesco Construction's case was transferred to this Court by the JPML from the Southern District of Texas, but both Jesco Construction and BP consent to the case remaining in this district. (*See* Rec. Docs. 25866, 25905). Dang and Pinell's cases were filed originally in this district.

[13] The statement by Coastal Water Cleaners and Environmental Services, LLC states that it both "consents to trial in the Eastern District of Louisiana" and "requests this matter be remanded to the Southern District of Alabama for trial." (Rec. Doc. 25906). Given these conflicting statements, the Court will construe the statement as requesting remand to the Southern District of Alabama.

Panel on Multidistrict Litigation created MDL 2179, it noted that centralization "will eliminate duplicative discovery, prevent inconsistent pretrial rulings, including ruling on class certification and other issues, and conserve the resources of the parties, their counsel, and the judiciary." (Rec. Doc. 1 at 3). Following consolidation in MDL 2179, many claims were in fact resolved. Consolidation was particularly successful with respect to the VoO contract claims, as evidenced by the number of VoO Charter Payment claims submitted to the Economic Settlement (8,960 claims, 7,115 of which were paid) and the fact that only 12 contract claims remain in the B3 bundle (not counting the 3 contractual indemnification claims noted in footnote 8, *supra*). There is still work to be done in the MDL. Notably, the parties recently submitted proposals for future case management regarding the personal injury claims in the B3 bundle—which accounts for 920 of the 935 claims in the B3 bundle. However, as to the 12 contract-only claims, the Court believes they will not benefit from further coordinated proceedings in this MDL (with the limited exception of the 4 cases participating in mandatory mediation, *see supra* note 9 and related text). Furthermore, as to the 5 cases that were transferred here pursuant to 28 U.S.C. § 1407, the Court believes remand to the transferor court will promote the just and efficient resolution of these cases.

## IV.   Conclusion

IT IS HEREBY SUGGESTED to the United States Judicial Panel on Multidistrict Litigation that the following cases be remanded to the transferor district for further proceedings and trial.

| Case Name | Operative E.D. La. Case No. | Initial E.D. La. Case No. (if any)[14] | Transferor District and Case No. |
|---|---|---|---|
| Coastal Water Cleaners and Environmental Services, L.L.C. v. BP America Production Company, et al. | 11-02621 | -NA- | S.D. Alabama (No. 11-557) |
| Machelle Steiner v. BP America Production Company, et al. | 17-03387 | 12-00347 | S.D. Alabama (No. 11-593) |
| William H. Brehm v. BP America Production Company, et al. | 17-03412 | 11-02395 | S.D. Alabama (No. 11-521) |
| John L. Howard v. BP America Production Company, et al. | 17-03347 | 11-03148 | S.D. Alabama (No. 11-693) |
| Nicholas W. Collier v. BP America Production Company, et al. | 17-03356 | 11-03148 | S.D. Alabama (No. 11-693) |

IT IS FURTHER ORDERED that the Clerk's Office serve a copy of this Suggestion of Remand on the United States Judicial Panel on Multidistrict Litigation.

[Date and signature to be added]

---

[14] As explained above, Pretrial Order No. 63 ("PTO 63") in this MDL required plaintiffs in multi-plaintiff lawsuits to file a new, individual lawsuit in this Court. The newly-filed lawsuit then became the "operative" lawsuit for the plaintiff, while the "initial" lawsuit was eventually closed. (*See* Rec. Doc. 24814). This Suggestion of Remand recommends that the "operative" (i.e., post-PTO 63) lawsuit be remanded to the transferor court, but the above table also lists the "initial" (i.e., pre-PTO 63) lawsuit for the sake of completeness.