IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010**<br><br>**APPLIES TO:**<br><br>Plaintiffs *Thomas Bodiford*, 17-03341; *Joseph Bruton*, 17-03110; *Lillie Coleman*, 17-03130; *Jordan Dixey*, 17-04321; *Ervin Pough*, 17-04164; and *Nakia Scott*, 17-03609 | Civil Action No. 2:10-MD-02179<br><br>SECTION: J<br><br>JUDGE CARL BARBIER<br><br>MAG. JUDGE WILKINSON |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO BP'S MOTION FOR SUMMARY JUDGMENT ON B3 CLAIMS ALLEGEDLY RELEASED UNDER THE MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT**

Come now Plaintiffs, who file this Memorandum in Opposition to Defendant BP's Motion for Summary Judgment on B3 Claims Released Under the Medical Benefits Class Action Settlement Agreement ("BP's Motion") and show as follows:

**INTRODUCTION**

Plaintiffs agree with the memorandum submitted by Stag Liuzza, LLC, on behalf of Plaintiff Christopher Green (Rec. Doc. 25955), in that BP's submitted "evidence" from the Garretson Group is improper and unauthenticated. Thus, the Exhibit should be disregarded. For that reason alone, Plaintiffs submit that BP's Motion be denied.

Plaintiffs further propound that they have been active B3 bundle plaintiffs since the inception of their claims, over seven (7) years ago, and have continually been treated as proper B3 claimants, not members of the medical benefits settlement class. They have complied substantially with every Order from this Court, and have been treated by the Court and BP as B3

1

claims for their entire existence.  The time to file a summary judgment motion on the basis that their claims were released under the settlement would have been years ago, but certainly before the expiration of the claims period within the settlement.  To deem any of the remaining B3 plaintiffs as being a class member at this point would completely foreclose the opportunity for justice on their claims.  Accordingly, BP's Motion must be denied.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  When the court evaluates the summary judgment record, "all evidence and facts must be viewed in the light most favorable to the non-movant."  *United Fire & Cas. Co. v. Hixson Bros., Inc*., 453 F.3d 283, 285 (5th Cir. 2006).

## ARGUMENTS

Thomas Bodiford

Plaintiff Thomas Bodiford was not a "Clean-up Worker" or otherwise a member of the class as defined by the Medical Benefits Settlement Agreement ("MSA").  Defendant BP's sole unsupported basis for summary judgment is that Mr. Bodiford is a "Garretson Resolution Group confirmed member" of the class action settlement.  The MSA, along with this Court's Order approving the MSA, define the class members thus:

> A. MEDICAL BENEFITS SETTLEMENT CLASS shall mean all NATURAL PERSONS who resided in the United States as of April 16, 2012, and
>     1) Worked as CLEAN-UP WORKERS at any time between April 20, 2010, and April 16, 2012; or
>     2) Resided in ZONE A for some time on each of at least sixty days between

2

April 20, 2010, and September 30, 2010 ("ZONE A RESIDENT"), and developed one or more SPECIFIED PHYSICAL CONDITIONS between April 20, 2010, and September 30, 2010; or

3) Resided in ZONE B for some time on each of at least sixty days between April 20, 2010, and December 31, 2010 ("ZONE B RESIDENT").

B. Excluded from the MEDICAL BENEFITS SETTLEMENT CLASS are the following:

1) Any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who timely and properly elects to be excluded from the MEDICAL BENEFITS SETTLEMENT CLASS ("OPT OUTS");

2) Any person employed by BP ENTITIES at any time between April 20, 2010, and April 16, 2012;

3) The COURT, including any sitting judges on the United States District Court for the Eastern District of Louisiana and their law clerks serving on or after April 20, 2010, through April 16, 2012;

4) Any person who was on the Deepwater Horizon on April 20, 2010;

5) Any person who has previously asserted and released his or her claims against BP relating to any illnesses or injuries allegedly suffered as a result of exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the Deepwater Horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, including those persons who have provided final releases to the GCCF in exchange for payment from the GCCF for such illnesses or injuries; and

6) Any person who is a ZONE A RESIDENT or a ZONE B RESIDENT, but not a CLEAN-UP WORKER, and who worked in one or more of the following capacities for a cumulative duration of at least five years prior to April 20, 2010:

a) Cleaning or reconditioning of the tanks or holds of barges, tankers or lighters, tanker trucks, tanker rail cars, or any other tank (stationary or mobile) used to hold hydrocarbons or petrochemicals;

b) Storage, handling, or cleaning of naturally occurring radioactive materials ("NORMs"), including radionuclides;

c) Storage, transportation, distribution, or dispensing of gasoline, diesel, jet fuel, kerosene, motor fuels, or other hydrocarbon-based fuels at any bulk storage facility (not including gas stations or gas station convenience stores), bulk plant, or bulk terminal facility that stores hydrocarbons or petrochemicals;

d) Loading or unloading bulk crude oil or petroleum hydrocarbons onto or from trucks, ships, barges, or other vessels; or

e) Tar distillation.

Mr. Bodiford did not live within the defined borders of Zones A and B. Thus, Mr. Bodiford's only possible route to being included in the settlement class was through being deemed a Clean-Up Worker. This term is specifically defined in the MSA, as well:

> Q. CLEAN-UP WORKERS shall mean all NATURAL PERSONS who performed RESPONSE ACTIVITIES, including:
> 1) Captains, crew, and other workers employed under the Vessels of Opportunity ("VoO") program who performed RESPONSE ACTIVITIES;
> 2) Workers employed to perform the decontamination of vessels involved in RESPONSE ACTIVITIES;
> 3) Captains, crew, and other workers on vessels other than VoO who performed RESPONSE ACTIVITIES;
> 4) Onshore personnel employed to perform RESPONSE ACTIVITIES; and
> 5) Persons involved in the recovery, transport, and decontamination of wildlife affected by the DEEPWATER HORIZON INCIDENT.

Plaintiff was not a Vessels of Opportunity worker, he was not involved in the decontamination of vessels or wildlife, was never employed onshore, and most importantly, he never performed any response activities, as defined. The term "RESPONSE ACTIVITIES" is defined in the MSA as consisting of the following:

> OOOO. RESPONSE ACTIVITIES shall mean the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the Deepwater Horizon and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

Plaintiff's duties in the construction of the underwater pipeline between the *Deepwater Horizon* drilling rig and the BP/Shell Nakika processing platform, which, upon information and belief, was a planned construction project at least a year prior to the oil spill, does not constitute "response activities." Plaintiff's job involved the construction of a pipe that was always going to be constructed, before the oil spill began. His job would have been performed regardless of the oil

4

spill; therefore, his job could not have related to the "release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the Deepwater Horizon and its appurtenances."

It is clear from the plain language of the definitions in the MSA itself that Plaintiff cannot be considered a Clean-Up Worker. Plaintiff Bodiford did not require an opt-out for his claims because he was never a member of the class. Mr. Bodiford never made a claim through the settlement Therefore, Mr. Bodiford has not released his claims against BP under the MSA, and BP's Motion for Summary Judgment should be denied.

Joseph Bruton and Nakia Scott

Plaintiffs Joseph Bruton and Nakia Scott do not dispute that they were "Clean-up Workers" as defined by the MSA. The only evidence proffered by BP that these two Plaintiffs have released their claims through the MSA is the short information in Exhibit A to BP's Motion, which is a spreadsheet composed presumably by the Garretson Group, stating only that Plaintiffs "[d]id not file claim (POCF); not a confirmed Class Member via DDF (no data found matching person)." POCF and DDF are not defined within the exhibit or BP's Motion at any point. Plaintiffs' complaints, filed pursuant to this Court's Pre-Trial Order No. 63, include their valid opt-out request. These two documents are attached as Exhibits 1 (Joseph Bruton) and 2 (Nakia Scott). As evidenced by the valid opt-out request forms attached, Plaintiffs have excluded themselves from the terms of the MSA and thus are not subject to any releases for their causes of action against Defendants as a result of their work cleaning up the *Deepwater Horizon* disaster.

Lillie Coleman

Plaintiff Lillie Coleman volunteered with her church to clean up the beaches. See Exhibit 10 to BP's Motion, at 3. She was never paid by any BP entities or anyone else for her volunteer

work. Additionally, she was not a resident of Zone A or B at any time, and she was not involved in the recovery, transport, and/or decontamination of wildlife affected by the oil spill during her volunteer work cleaning tar balls from the beaches. The MSA is clear in its definition, as quoted above, that class members who were not residents of Zone A or Zone B in the specified time period had to be Clean-up **workers**. Clean-up Workers was specifically defined, as well:

> Q. CLEAN-UP WORKERS shall mean all NATURAL PERSONS who performed RESPONSE ACTIVITIES, including:
> 1) Captains, crew, and other workers **employed** under the Vessels of Opportunity ("VoO") program who performed RESPONSE ACTIVITIES;
> 2) Workers **employed** to perform the decontamination of vessels involved in RESPONSE ACTIVITIES;
> 3) Captains, crew, and other **workers** on vessels other than VoO who performed RESPONSE ACTIVITIES;
> 4) Onshore personnel **employed** to perform RESPONSE ACTIVITIES; and
> 5) Persons involved in the recovery, transport, and decontamination of wildlife affected by the DEEPWATER HORIZON INCIDENT.

[Emphasis added]. Obviously, a Clean-up Worker has to have been **employed** to be a part of the class as defined by the MSA. The only definition of "employ" that makes sense within the confines of the MSA is the general definition of being given money in exchange for work. Ms. Coleman was never given money in exchange for her volunteer activities and, thus, was never **employed** at any time. Any other definition of the term "employ" in this context would result in a miscarriage of justice for Plaintiff Coleman. Therefore, Plaintiff Coleman is not a member of the class under the terms of the MSA and, thus, is not subject to any of its releases for her claims.

Jordan Dixey

Plaintiff Dixey is likewise not a member of the class, as he did not reside in Zone A or B during the specified times, nor was he employed as a Clean-up Worker as defined by the MSA. BP's sole proffered "evidence" that Plaintiff Dixey is a class member is a short phrase in his Exhibit D to PTO 66. Plaintiff Dixey's Exhibit D included background information in addition

6

to the medical information requested upon a matrix that was developed for all Nexsen Pruet and Douglass Schmidt clients, the majority of whom were clean-up workers. See Exhibit 3. The relevant phrase states: "Locations where client worked cleanup" and the answer provided was "Home: [address] / Work: Naval Air Station, Pensacola, FL." Immediately above that entry is the column to provide for "All employers associated with the oil spill"; the answer provided was "N/A – Exposure." Every other portion of Plaintiff's PTO 66 submission makes clear that he was not a class member. Plaintiff was a military pilot and, as part of his regular training exercises, often flew over the Gulf during the summer of 2010 – not at the direction of BP or as part of any remediation activities, but as part of military exercises. Finally, even if Plaintiff did believe himself to be a member of the class, his belief and statement alone would not be sufficient, given the proof of his activities and his home address, to substantiate him as a class member. BP's argument to the contrary is pedantic at best. Therefore, Plaintiff cannot be classified as a class member. Accordingly, he has not released any of his rights to bring suit against BP for the damages in his complaint.

Ervin Pough

Plaintiff Ervin Pough does not dispute that he was a member of the class as defined under the MSA. In 2012, Plaintiff fell in his bathroom while he was suffering from pneumonia and was immobilized and not found until the next day. He has been a quadriplegic since that unfortunately incident, and all of his affairs have been taken over by his mother. His opt-out request was signed by his mother in June of 2012, who had power of attorney in all of his matters since April of 2012, right after the incident that left him paralyzed. Attached as Exhibit 4 is Mr. Pough's opt-out request, identification cards, and the notarized Power of Attorney enabling his mother, Annette Patterson, to sign documents relating to this litigation on his behalf. BP has not

provided any arguments or further information regarding what it deems invalid regarding Mr. Pough's opt-out request. Although BP has had multiple opportunities to challenge the opt-out, it has never done so before. Thus, BP's unsupported summary judgment motion should be denied as to Mr. Pough.

## **CONCLUSION**

Plaintiffs Thomas Bodiford, Lillie Coleman, and Jordan Dixey were not members of the defined class under the MSA and, thus, could not have waived their rights against BP under the MSA. Plaintiffs Joseph Bruton, Nakia Scott, and Ervin Pough were all properly opted out of the settlement and, thus, could not have released their claims under the MSA. Therefore, BP's unsupported Motion for Summary Judgment on certain B3 claims they allege were released under the MSA must be denied as to these Plaintiffs.

Dated:   August 21, 2019                                     Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Paul A. Dominick
　　　　　　　　　　　　　　　　　　　　　　　　　Paul A. Dominick       Fed ID No. 577
　　　　　　　　　　　　　　　　　　　　　　　　　NEXSEN PRUET, LLC
　　　　　　　　　　　　　　　　　　　　　　　　　205 King Street, Suite 400 (29401)
　　　　　　　　　　　　　　　　　　　　　　　　　P.O. Box 486
　　　　　　　　　　　　　　　　　　　　　　　　　Charleston, SC  29402
　　　　　　　　　　　　　　　　　　　　　　　　　PHONE:  843.577.9440
　　　　　　　　　　　　　　　　　　　　　　　　　FACSIMILE:  843.720.1777
　　　　　　　　　　　　　　　　　　　　　　　　　PDominick@nexsenpruet.com

　　　　　　　　　　　　　　　　　　　　　　　　　*And*

        Douglas M. Schmidt    Fed ID No. 11789
        Douglas M. Schmidt, APLC
        335 City Park Avenue
        New Orleans, LA 70119
        PHONE:  504-482-5711
        FACSIMILE:  504-482-5755
        Dglsschmdt@yahoo.com

*Counsel for Plaintiffs, Thomas Bodiford, Joseph Bruton, Lillie Coleman, Jordan Dixie, Nakia Scott, and Ervin Pough*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law has been served on all counsel by electronically uploading the same to File & Serve Xpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179 on August 21, 2019.

/s/ Paul A. Dominick

Paul A. Dominick