UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig** | * | |
| **"Deepwater Horizon" in the Gulf** | | **MDL 2179** |
| **of Mexico, on April 20, 2010** | * | |
| | | **SECTION: J(2)** |
| **This Document Relates To:** | * | |
| | | **JUDGE BARBIER** |
| *No. 12-970* | * | |
| | | **MAG. JUDGE WILKINSON** |
| | * | |

## ORDER
### [Regarding Communications from Thoai Nguyen]

The Court recently has received multiple communications and documents from Thoai Nguyen. Ms. Nguyen is not an attorney, nor a party to a case before the Court, nor a claimant in one of the class settlement programs overseen by this Court. Ms. Nguyen has assisted around 30 Vietnamese-American claimants with preparing and filing claims in the Deepwater Horizon Economic and Property Damages Settlement, which is administered by the Court Supervised Settlement Program ("CSSP").

Ms. Nguyen's communications have come in two waves. The first began on July 20, 2018, when Ms. Nguyen sent a 22-page, single-spaced fax to chambers. (Exhibit 1 to this Order.[1]) The July 20th fax was followed by additional faxes on July 30 and August 2. (Exhibits 2 and 3, respectively.) During this time, Ms. Nguyen also delivered a large stack of documents to chambers as well as a flash

---

[1] The Court has attempted to redact claimant-identifying information in the Exhibits to this Order.

drive said to contain even more documents.[2] The second wave of communications began on September 7, 2018, when Ms. Nguyen included chambers staff and the Chief Judge of this Court on an email to the CSSP, Class Counsel, and other parties. That email led to a series of response and reply emails between the CSSP's Appeals Coordinator and Ms. Nguyen that have continued through September 29, 2018. (Exhibit 4 to this Order.)

### The First Wave of Communications and Documents

As mentioned, Ms. Nguyen sent a 22-page, single-spaced fax to chambers on July 20, 2018. That fax actually contains two letters, one to the undersigned and one to the CSSP's Claims Administrator. Ms. Nguyen asserts that the CSSP, the CSSP's vendors, attorneys outside the CSSP, other third parties, and perhaps also Court employees have engaged in a "systematic, wide-spread, and well-coordinated . . . conspiracy" to commit fraud, discrimination, and other illegal acts. (Ex. 1 at 9.) Ms. Nguyen claims that this conspiracy has affected 28 claimants she assisted, and she speculates that it likely affected many other claimants as well. Ms. Nguyen's allegations are broad and sometimes vague, making it somewhat difficult to understand what specific wrongs she claims to have occurred. However, page 13 of her fax contains what appears to be the best summary of her allegations:

> [I]t appears that early on in the process the Vendors, Attorneys and Third Parties conspired and filed fraudulent claims "on behalf" of Claimants, often relying on stolen personal and business Claimant information and fabricated retainer agreements. They then received and cashed in payments based on these claims. This, along with the resulting prior offset calculations, caused problems with the filings of subsequent claims, which in turn triggered investigations—into fraud committed by the Vendors, Attorneys and Third

---

[2] The Court has not placed these documents in the record.

Parties and not the Claimants—further resulting in the flagging, suspension and eventual closures of claims. As the Reconsideration, Third Party Claim and Appeal processes unfolded, it became increasingly apparent that these were not random and isolated incidents, but rather the results of well worked out schemes designed to defraud the Claimants. The schemes have been actively perpetrated by the Vendors in conspiracy with the Attorneys and Third Parties.

(Ex. 1 at 13.)

Ms. Nguyen identifies around 80 individuals or entities that she believes participated in the alleged fraud. She requests that the Court open an investigation into her allegations or appoint a special master to do so. She also requests that the Court remove Class Counsel and certain persons within the CSSP from their positions.

Ms. Nguyen's second fax of July 30 is much shorter. (Ex. 2.) In it Ms. Nguyen states that she has filed or will soon be filing complaints with the FBI, the Department of Justice, the Louisiana Department of Justice, the IRS, and the Federal Trade Commission. She adds that she recently had a meeting with the FBI. On August 2, the Court instructed chambers staff to call Ms. Nguyen and inform her that the Court would not open an investigation into her claims or appoint a special master and that she should bring her allegations and any evidence to an investigative body such as the FBI, Secret Service, or local district attorney. Ms. Nguyen sent a fax to chambers that same day expressing her frustration at the Court's decision. (Ex. 3.)

As mentioned above, this first wave of communications also included a large number of documents (printed and on a flash drive) that purportedly support Ms.

Nguyen's allegations. The Court has reviewed some of these documents, but it is not apparent how these documents prove the conspiracy alleged by Ms. Nguyen.

**The Second Wave of Communications**

In contrast to the July 20th fax, Ms. Nguyen's second wave of communications (which came in the form of emails beginning on September 7, 2018) presents specific factual allegations regarding a single claimant and, consequently, is much easier to understand. It appears that in 2013 a law firm, Brent Coon & Associates ("BCA"), filed 22 claims with the CSSP on behalf of a claimant, whom the Court will refer to as "Claimant 100123626." According to Ms. Nguyen, Claimant 100123626 never retained any attorney to represent him in any matters pertaining to the oil spill and he had no knowledge these claims existed until September 4, 2018. Ms. Nguyen asserts, "Evidently, BCA stole [Claimant 100123626's] personal and business information and established legal representation based upon which BCA filed these claims." (Ex. 4 at 9.) Ms. Nguyen's initial email, which is directed to the CSSP's Claims Administrator, asks a number of questions, such as: Why was BCA permitted to file these claims? What information was submitted in connection with these claims? Why was Claimant 100123626 never notified by the CSSP regarding these claims? The email also includes the paperwork necessary to remove BCA as counsel and make Ms. Nguyen an "Authorized Recipient" of claims information pertaining to Claimant 100123626. Later emails from Ms. Nguyen accuse the CSSP, CSSP's vendors, and BCA of being involved in a "criminal conspiracy" to defraud Claimant 100123626. (*See, e.g.*, Ex. 4 at 4.)

4

The CSSP responded by removing BCA as Claimant 100123626's attorney and giving the claimant access to the online claim files (thus permitting the claimant to see what information had been filed in connection with these claims). With respect to Ms. Nguyen's question about why BCA was permitted to file 22 claims on behalf of Claimant 100123626, the CSSP's Appeals Coordinator explained that the Registration Form submitted to the CSSP in 2013, which appeared to be electronically signed by Claimant 100123626, authorized BCA to file claims on behalf of the Claimant. As to Ms. Nguyen's question about why Claimant 100123626 was not notified about claims filed on his behalf, the Appeals Coordinator responded that when a claimant is represented by an attorney, the CSSP communicates directly with the attorney, not the client. The Appeals Coordinator then stated, "To the extent the Claimant is contending that this Registration Form was electronically executed by BCA rather than by the Claimant without his consent or authority to do so, that is an issue that the Claimant should raise with BCA." (Ex. 4 at 2.) He added that Ms. Nguyen's allegations of "criminal conspiracy" regarding the CSSP and its vendors "are inappropriate and baseless, and these claims have been fully and finally resolved for over five years." (Ex. 4 at 3.)[3]

---

[3] The Appeals Coordinator explained that each of the 22 claims filed with the CSSP were denied in 2013 because Claimant 100123626 executed a release after receiving a payment from the Gulf Coast Claims Facility (the claims facility that preceded the CSSP). Consequently, no money was paid by the CSSP to anyone on these claims.

5

**The Court Denies Ms. Nguyen's Requests**

As mentioned above, Ms. Nguyen asks the Court to open an investigation into her allegations and/or appoint a special master to do so. The Court denies these and any other requests by Ms. Nguyen for the reasons stated below.

First, as mentioned above, Ms. Nguyen is not an attorney, nor a party to a case before this Court, nor a claimant in the CSSP. Consequently, Ms. Nguyen lacks standing or the representative capacity to request this relief.

Second, courts typically do not perform the role of an investigator, nor does the Court have the resources to investigate Ms. Nguyen's wide-ranging accusations. Thus, to the extent Ms. Nguyen or the claimants she purports to represent believe anyone associated, directly or indirectly, with the CSSP has committed fraud, identity theft, or some other illegal conduct, any allegations and evidence supporting same should be directed to the appropriate investigative entity, such as the FBI, Secret Service, U.S. Attorney, local district attorney, or other law enforcement agency. If Ms. Nguyen or the claimants wish to make a complaint against a specific attorney admitted to practice before this Court and have evidence of misconduct, that claimant may file a formal complaint with the Clerk of Court pursuant to the E.D. La. Rules for Lawyer Disciplinary Enforcement.[4] The person may also file a complaint with the Louisiana Attorney Disciplinary Board or, for attorneys licensed to practice in other states, the analogous body in that state.[5]

---

[4] Available on the Court's public website at http://www.laed.uscourts.gov/attorney-information/rules-and-orders/disciplinary-rules.

[5] On a related note, the Court agrees with the CSSP Appeals Coordinator's guidance, "To the extent the Claimant is contending that this Registration Form was electronically executed by BCA

Ms. Nguyen points out that in March of 2013 this Court issued an order that required BCA to show cause why its lien for attorney fees against a CSSP claimant should not be denied (Rec. Doc. 8996) and that the Court subsequently held a hearing where it determined that the claimant did not hire an attorney and dismissed BCA's attorney fee lien against the claimant (Rec. Doc. 9201). That instance, however, concerned a narrow request (to deny an attorney fee lien) that turned on a very narrow issue (whether one claimant had entered into a contract with a particular attorney). Furthermore, the Court was presented with a finite amount of evidence that clearly showed that the signature on the contract did not belong to the claimant. By contrast, here Ms. Nguyen asks the Court to investigate a much broader matter—what she perceives to be a criminal conspiracy to commit fraud by some 80 individuals and entities that allegedly affects at least 28 claimants and perhaps many more. Furthermore, Ms. Nguyen attempts to support her allegations with a stack of documents (plus many more on a flash drive), the significance of which is not readily apparent.

Ms. Nguyen also points out that this Court appointed a special master in 2013 to perform an independent investigation into certain matters within the CSSP. (*See* Rec. Docs. 10564, 11287, 11288.) But such an appointment is not the norm.[6] Moreover, the circumstances and evidence supporting that appointment were far

---

rather than by the Claimant without his consent or authority to do so, that is an issue that the Claimant should raise with BCA." (Ex. 4 at 2.)

[6] Indeed, the appointment order noted, "The duties of this appointment will **not** involve **traditional** special master roles involving mediation, discovery, fact finding, or substantive law." (Rec. Doc. 10564 at 2 (emphasis added).)

7

more compelling than what is presented here.[7] It should also be mentioned that a special master does not work for free; someone must pay the special master's fees. The Court finds the circumstances do not warrant imposing such costs on anyone.

The Court adds that while it was reviewing Ms. Nguyen's communications, it requested some basic information from the CSSP regarding the status of the claims filed by the 28 claimants referenced in Ms. Nguyen's July 20th fax, such as which claims were determined eligible for payments, how much was paid on eligible claims, and which claims were denied. The CSSP reports that nearly all of the 28 claimants filed more than one claim. While some claims were denied payment, each of the 28 claimants received payment on at least one claim, whether it was from the CSSP or one of the previous claims processing facilities (the GCCF or the BP Claims Program). In aggregate, these 28 claimants were paid around $11 million by the CSSP, GCCF, and the BP Claims Program, the vast majority of which came from the CSSP. The claimant receiving the lowest amount was paid $6,000; the highest amount received by a claimant was $1.3 million. The average amount paid to a claimant was around $393,000.

It is of course possible that a claimant could receive a settlement payment and still be the victim of fraud, identity theft, discrimination, etc. Accordingly, the Court does not propose that the above figures disprove any of Ms. Nguyen's

---

[7] *See, e.g.*, Rec. Doc. 10564 at 2 ("Certain recent events have arisen that led to the resignation of a staff attorney at the CSSP. An internal investigation by the CSSP is underway. However, the Court has concluded that in order to ensure the integrity of the program for the benefit of the parties and the public, an independent, external investigation of this matter should be performed.").

allegations. At the same time, however, the above figures do not exactly shout fraud.

The Court repeats the guidance offered above: To the extent Ms. Nguyen or the claimants she purports to represent believe anyone associated, directly or indirectly, with the CSSP has committed fraud, identity theft, or some other illegal conduct, any allegations and evidence supporting same should be directed to the appropriate investigative entity, such as the FBI, Secret Service, U.S. Attorney, local district attorney, or other law enforcement agency. If Ms. Nguyen or the claimants wish to make a complaint against a specific attorney admitted to practice before this Court and have evidence of misconduct, that claimant may file a formal complaint with the Clerk of Court pursuant to the E.D. La. Rules for Lawyer Disciplinary Enforcement.[8] The person may also file a complaint with the Louisiana Attorney Disciplinary Board or, for attorneys licensed to practice in other states, the analogous body in that state.

To conclude,

To the extent Ms. Nguyen's communications should be considered a motion or request for relief, IT IS ORDERED that Ms. Nguyen's motion/request is DENIED.

New Orleans, Louisiana, this 2nd day of October, 2018.

United States District Judge

---

[8] Available on the Court's public website at http://www.laed.uscourts.gov/attorney-information/rules-and-orders/disciplinary-rules.

9

Note to Clerk: Mail a copy of this Order to

Thoai Nguyen
3032 Mt. Blanc Dr.
Marrero, LA 70072

10

# FAX COVER SHEET

| TO | Honorable Judge Carl J. Barbier |
|---|---|
| COMPANY | EDLA - Section J |
| FAX NUMBER | 15045894536 |
| FROM | Thoai Nguyen |
| DATE | 2018-07-20 22:12:24 GMT |
| RE | URGENT & CONFIDENTIAL |

## COVER MESSAGE

Dear Hope McDonald & Ben Allums:

Please find attached a letter to Judge Barbier along with to Patrick Juneau.

I cannot stress enough the urgency and confidentiality of the information enclosed here.

Please make sure that Judge Barbier does indeed receive these letters as soon as possible.

You will be receiving the supporting documentation shortly.

Thank you for your time and consideration.

Sincerely,

Thoai Nguyen

EXHIBIT 1

The Honorable Carl J. Barbier
500 Poydras Street
Room C256
New Orleans, LA 70130

July 20, 2018

Thoai Nguyen
3032 Mt. Blanc Dr.
Marrero, LA 70072
504-201-2936
twj@oxmotion.com

Dear Judge Barbier:

Please find enclosed a letter via email addressed to the Claims Administrator Patrick Juneau. The letter is an attempt to resolve a set of fairly urgent and complex issues related the Court-Supervised Settlement Program stemming from the MDL 2179. I feel compelled to extend this communication to you. We will file motions and complaints in due course.

I appreciate in advance your consideration and even assistance as you may see fit. If this is something that could – in whole or in part – be addressed on Court's own accord, that is, *sua sponte*, we would definitely appreciate that as well.

I write on behalf of a number of Vietnamese pro se Claimants affected by the Deepwater Horizon/BP Oil Spill and involved the Court-Supervised Settlement Program.

I appeared once before you about five years ago regarding a claimant who was defrauded by two attorneys. The attorneys Brent Coon and James J. Dailey asserted a fraudulent fee lien on Dien Nguyen's claims. This assertion involved a fabricated retainer agreement and forged claimant's signature. The question that was not addressed at the time was how Mr. Coon and Mr. Dailey had obtained Mr. Nguyen's confidential personal and business information. There were other unanswered questions as well. The Court at the time noted me as an "interpreter," but I was in fact his claims preparer through the Louisiana Small Business Development Center (LSBDC) – Greater New Orleans Region (Metairie Office) non-profit organization. It's an SBA-affiliated organization that specializes in disaster recovery and business continuity, and I solely assisted him with respect to his claims filings and was closely familiar with his case.

And then this – namely, the letter included here addressed to the Claims Administrator Patrick Juneau and the supporting documentation.

I am honest. I am a working professional. I have a degree in technology management but work as an independent insurance producer. These are my people. Virtually all of them are my insurance business clients too. I spend countless hours every year – *pro bono* – helping these folks navigate the byzantine world of health, medical, emergency, life… insurance, claims filing, medical

billing issues, medical provider selection and coordination... I am first and foremost a healthcare advocate. But not only healthcare, however, as this population is vulnerable on many fronts. I am a vocal supporter and advocate for these people – for my community.

I also happen to have *extensive* claims preparing and filing experience. I am diligent and know very well what I'm doing. With the exception of the floods a couple of years ago, I've participated in virtually all natural disasters recoveries in the last decade, initially with the non-profit organization LSBDC and then independently. I had worked in property and casualty insurance as well.

And then the manmade catastrophe – the Oil Spill of April 20, 2010. I've handled small claims as well as claims totaling well into seven figures. I've dealt not only with the Vietnamese, but also a large Croatian oyster lease holder contingent and as well as the Caucasian commercial fishermen. When it comes to claims – Spill-related or otherwise – I have a pretty clear idea about what I'm talking about.

Regarding the enclosed letter to Mr. Juneau and as stated in my Declaration, this is a *good faith* attempt to resolve the pressing issues relating to this group of Claimants. It's hard to summarize these issues, but the "disaster within the disaster" seems suitable, or the "ongoing and unmitigated disaster." Whatever it is, it keeps injuring my people. I'm not sure what's going to happen next, but I'm certain that we as a community won't stand down, we won't give up.[1]

It's a different culture, even for those that have lived here for decades. These are not litigious folks. They shy away from legal conflict. That, coupled with their general lack of sophistication and, above all, language and literacy skills, makes them a prime target. And the target they have certainly been in this whole big mess!

In my line of work as an insurance producer, I've seen a fair share of fraud especially as it relates to this and similarly-situated demographics. We take ethics and anti-money laundering CE classes virtually every year to help detect and guard against these types of acts. But what has taken place here, within the CSSP (and before that the GCCF and BP Claim) is *simply unbelievable* and *utterly disgusting*. It happened at the beginning and hasn't stopped since.

The evidence is stark and overwhelming as most of is it ESI – electronically submitted claims materials, tax and bank documentation, emails, etc. In the last couple of months, I've had the opportunity to spend more time examining the Claimants' files more closely and it has become increasingly apparent that this is just the tip of the proverbial iceberg. I know for a fact that these problems extend well beyond the group of Claimants included here. My colleagues and I have worked with hundreds of not just Vietnamese, but also Cambodian, Croatian, Caucasian, African-American... Claimants, and what I see when I examine each subsequent case fully confirms the word on the street among these various groups – namely, that they have been *defrauded* in so very many ways by the CSSP actors, that is, the Vendors, Attorneys and Third

---

[1] Indeed, given the massive scope and scale of the overall fraud perpetrated by the Vendors, Attorneys and Third Parties, the concern here is far from limited to this group of Claimants and extends well into the realm of the public and the protection of its interests. What is more, this fraud is ongoing, making this a rather urgent situation.

Parties. Before that, essentially the same actors ran the GCCF and BP Claim schemes in much the same ways.

In the last couple of years, we've reached out to both the Class Counsel and Vendors (such as the Appeals Coordinator and CAO staff) on *numerous* occasions, but fundamentally they remain silent and unresponsive, that is, suppressive in their *fraudulent failure to act*.

I hope and pray that this Court will be willing and able help us resolve these issues. I hope and pray that justice will be met.

As mentioned at the beginning, I think it is necessary that you are informed of this at this point. As also mentioned, we will proceed with the formal legal filings in due course – and that is in spite of our hesitation and doubts with respect to the professionalism of the Clerk of Court's Office.

An aside, a couple of years ago we submitted a complaint against several attorneys with the Clerk of Court. However, except for a receipt acknowledgment from William W. Blevins, there's been no response to this day.[2]

Another quick point, as you'll see in the submission, there are several examples of documents (Short Forms, in particular) that were sent directly to the Court and then, after being received by the Court, manipulated and altered by the Court personnel, I find this *extremely* alarming and could just imagine how you may feel about it. Not to mention late, delayed and even withheld Discretionary Court Review Requests and Notices…

It should also be added that this complaint is in part my *own direct complaint* as well. The Court-Appointed Vendors and Attorneys took possession of my own work as a claims preparer. They then altered, manipulated, and forged these documents (Registration Forms, Claim Forms, SSNs, driver's licenses, federal tax returns, commercial licenses, emails, faxes, etc.). They subsequently proceeded to re-submit and re-upload these documents to the electronic claims portal while misappropriating my identity (and the identity of the Claimants) – all in furtherance of their fraudulent schemes. This misappropriation and misrepresentation extended to mail fraud where the Vendors deliberately and without lawful authority mailed the Claimants' sensitive claims materials to addresses not on file but seemingly intended for me as a recipient.

I appreciate your time.

---

[2] Things went differently with the Louisiana Attorney Disciplinary Board. After submitting the complaints, I was subpoenaed to testify and upon providing testimony – on two occasions, to two LADB Officers – found to be credible. They then told me that they would subpoena the attorneys as well as the claimants, and hire an independent interpreter and a signature expert – none of which they did. Not long thereafter they closed the cases. Some of the Claimants' Affidavits are from 2016 and reflect precisely this – namely, their complaints and *extreme* disappointment and dissatisfaction in the Attorneys and their *fraud* that was ultimately – *willfully* and *shamefully* – ignored by both attorney disciplinary bodies.

Sincerely,

Thoai Nguyen

Cc: The Honorable Nannette Jolivette Brown, Chief Judge

Dear Claims Administrator Patrick Juneau:

[Note: The attached documents consist of the following: Memos detailing events and key information; spreadsheets supplementing the Memos and reflecting the Claimants' portal accounts with my notations on the right-hand side; and Claimants' Declarations. Due to the voluminous nature of the remaining supporting documentation, it will be mailed via certified USPS mail per request. Please reply to this email to request the supporting documentation.]

Before I begin, I'd like to point out that there are several sets of demands contained herein and among them the following:

> Motion the Court to issue a protective order and/or injunctive relief regarding the protection and safety of the Claimants and me and our family members, and witnesses – against potential intimidation and witness tampering by the Vendors, Attorneys and Third Parties (this should include the use of private investigators and suspicious individuals).

We have experienced in the past harassment of this type and respectfully ask you to consider this demand to be of paramount importance and handle this submission with great care and confidentiality.

I write on behalf of a number of Vietnamese pro se Claimants.[1] We respectfully request that you convene a Panel meeting to address the concerns that we have regarding the independence and integrity of the Settlement Program – specifically, the unlawful and unethical conduct of the CAO, Vendors, Attorneys and Third Parties that represents egregious violations of the Program's policies, and the terms and conditions of the Settlement Agreement. As the Claims Administrator for the Court Supervised Settlement Program, you are directed by the Court to faithfully administer and implement the Settlement, according to its terms and procedures, and for the benefit of the Economic Class. Settlement Agreement § 4.3.1. Moreover, as the Claims Administrator, you are to engage in the supervision and oversight activities designed to ensure the implementation and integrity of the Settlement Program. Settlement Agreement § 4.3.10.[2] But, even beyond the Settlement Agreement and Settlement Program and all the stakeholders involved, this is a matter of the protection of the public interest, so your assistance is absolutely necessary.

---

[1] It must be remarked that this complaint is in part my *own direct complaint* as well. The Court-Appointed Vendors and Attorneys took possession of my own work as a claims preparer. They then altered, manipulated, and forged these documents (Registration Forms, Claim Forms, SSNs, driver's licenses, federal tax returns, commercial licenses, emails, faxes, etc.). They subsequently proceeded to re-submit and re-upload these documents to the electronic claims portal while misappropriating my identity (and the identity of the Claimants) – all in furtherance of their fraudulent schemes. This misappropriation and misrepresentation extended to mail where the Vendors deliberately and without lawful authority mailed the Claimants' sensitive claims materials to addresses not on file but seemingly intended for me as a recipient.

[2] In your Update to the Court on May 1, 2015 you describe one of your special roles – succeeding Louis Freeh's role – as a Special Master with considerable Court-granted investigatory powers, specifically as they pertain to fraudulent acts. There is no greater opportunity and *obligation* to exercise these powers than here!

Prior to the Spill, I had worked as a business consultant at the SBA-affiliated non-profit organization Louisiana Small Business Development Center – Greater New Orleans Region, Metairie Office (LSBDC), an organization that, among other things, specializes in assisting small business owners in disaster recovery and business continuity. It's a nation-wide organization that collaborates with local universities. The office that I worked for assisted small business owners, commercial fishermen, docks, restaurants, large oyster lease holders such as the organization's Croatian client base and so on. Prior to the Spill, I had worked diligently in assisting the clients in their recovery efforts pertaining to the Katrina/Rita, Gustav/Ike and later Isaac disasters. As soon as the Spill occurred, we rushed to provide assistance to our existing as well as new clients, many of whom were commercial fishermen. These were pro se Claimants to whom we provided technical assistance *free of charge*, starting with the BP Claim and continuing through DHECC. Being bi-lingual, the majority of my clients were of Vietnamese origin. Virtually all of them were LEP – limited English proficiency – who often lacked basic literacy skills not only in English but in their native Vietnamese as well. They lacked even the basic computer skills. Many of these folks I have known since before the Spill and they remain my friends. They have deep *trust* in me. I worked at LSBDC till around the end of September 2013. After an absence of about a year, I again began assisting a number of clients, this time independently of LSBDC.

Very early on in the process, we (the LSBDC business consultants) began to experience difficulties in assisting the Claimants. One of the main obstacles were the persistent unlawful assertions of attorney representations. For example, in the middle of a claim filing, a Claimant's account would get locked and his or her access to the portal denied because of supposed attorney representation; we would then attempt to remove the representation; the removal would often take weeks and even months to take effect; we would then resume the claim filing, but then again get blocked by supposed attorney representation. This was all a daily struggle that confused and frustrated both the Claimants and consultants. In retrospect, this was a well-coordinated and executed conspiracy between the Vendors, Attorneys and Third Parties designed to impede the process, unjustly enrich themselves, conceal their fraudulent acts, and ultimately deprive the Claimants of due process and rightful damages.

On April 5, 2013 Judge Barbier held a Show Cause Hearing regarding the case of Dien Nguyen. I have known Dien Nguyen since before the Spill. As an LSBDC consultant I began assisting him with the disaster recovery efforts immediately after the Spill. Experiencing great difficulties caused by the assertion of a fraudulent attorney lien by Brent Coon and James J. Dailey and receiving no help from the Claims Administrator's Office and Third Party Claim, I reached out directly to the Court. At the Show Cause Hearing the Court determined that Dien Nguyen did not sign the retainer agreement and ordered that the attorneys' fee lien be dismissed. Rec. Doc. 8996, Rec. Doc. 9201.[3] Although the case involved mainly the forged signature on the retainer

---

[3] A couple of weeks after the Hearing and on at least two occasions a person named Zack Shelton showed up at Dien Nguyen's residence. Dien Nguyen was shrimping at the time and his wife, who doesn't speak English, thought initially that Shelton was there to help with something. Instead, he insisted that she sign some documents, which she did. He was so persistent in his approach that, after the second (or third) appearance, Dien Nguyen reached out to his accountant, who then made a call to BCA to put a stop to this. It appears that Zack Shelton is a private investigator from Beaumont, TX – the same town where the BCA office is located. Brent Coon had relinquished Dien Nguyen's client "file" already at the Hearing, so that could not have been the reason for the visits. Needless to remind, the "file" contained stolen personal and business information. What's more, around the same time, the same person appeared at my residence. I never disclosed my address to BCA nor authorized them to in any way use it – much

agreement and fraudulent legal representation by Brent Coon of Brent Coon & Associates and James J. Dailey of James J. Dailey Attorney at Law; in retrospect and in totality it exhibited many of the traits of the cases contained in this submission: missing payments and discrepancies in payments; loss of confidential and sensitive personal and business information related to the Subsistence and other claims; permitting a second claim to be filed under a different Claimant ID, which was in fact tied to fraudulent legal representation by the Attorney; altering submitted claims materials by changing and including the second Claimant ID by removing the original Claimant ID; use and processing of fabricated and altered BP claim forms with no Claimant signature; altering, replacing and removing of submitted claim forms; tampering with the Claimant's portal, including merging the fraudulent GCCF claim with the legitimate GCCF claim (the only claim known to the Claimant); altering the submitted GCCF interim claim form to include prior offset payments; fabricating documents to give them appearance of faxed documents; unlawful mailing of correspondences with Claimant to unauthorized recipients and addresses.

There were other problems that the Claimants experienced as well. We attempted to resolve them by various means and through different offices and individuals. But, despite our best and repeated efforts over the last few years, our concerns have not been addressed by the CAO, Liaison Robin Keator, Appeals Coordinator Patrick Hron, and Class Counsel Stephen Herman and James Roy. Mr. Herman, Mr. Roy and Mr. Hron have abdicated their duties and utterly failed in their responsibilities toward this group of Claimants. And so has the CAO.

We as business consultants and claim preparers have relied on the expertise and trustworthiness of the Vendors. The Claimants have relied on the Vendors (many of whom happen to be lawyers) as well as the Attorneys as fiduciaries and honest Officers of the Court. Given the complexity of the disaster recovery process, an occasional error or omission was to be expected. But no one in their right mind would have expected this level of malfeasance, abuse of administrative and legal processes, and outright criminal fraud by the Vendors, Attorneys and Third Parties. No one in their right mind would have expected such extent of criminal collusion and conspiracy between the Vendors, Attorneys and Third Parties. All to the detriment of the Claimants.

As mentioned above, the Vietnamese pro se Claimants are all LEP. They are an ethnic minority and as such a federally-protected class. They are also federally-protected as LEP. Many of them lack basic literacy skills even in their native Vietnamese language. They do not possess computer skills. They are non-sophisticated workers and small business owners. Instead of providing special protective measures for this group, the CAO, Vendors, Attorneys and Third Parties engaged in all-out administrative and legal assault and exploitation, ignoring our repeated calls for assistance and resolution of issues, while all along pinning the blame on the Claimants. So, on top of everything, the behavior and acts by the CAO, Vendors, Attorneys and Third Parties also represent blatant racial and ethnic *discrimination*. Shamefully, not only the CAO but the whole CSSP failed at their fundamental duty of protecting the rights and privileges of this group of Claimants. This Program – as the *Court-Supervised* Settlement Program – greatly benefits from the judicial and administrative powers of the United States Government. As such, the CSSP

---

less send a private investigator over. I was not there, but my husband was, who told him in very strong language to get away and not return.

is fully obligated to observe and administer the full protections afforded by the Title VI of the Civil Rights Act of 1964 and related statutory and constitutional provisions. In this instance, that is, with respect to this group of Claimants, it has miserably failed.

The level and extent of the unlawful and unethical conduct are profound and immense. The Attorneys involved, which incidentally include the members of the Class Counsel's (Stephen Herman's) firm in their capacity as the Claimants' alleged (fraudulent) representatives, are by definition Officers of the Court. As such, they are held to a higher standard as adopted by the Court – namely, the Louisiana Rules of Professional Conduct.[4] The Vendors are bound by the terms prescribed in the Settlement Agreement as well as the DHECC Code of Conduct Policy. All of these sets of regulatory guidelines have been repeatedly and flagrantly violated. But their acts extend well beyond the confines of settlement agreement or code of conduct policy violations; the extent, the depth and the sophistication of these acts paint a picture of a well-organized *criminal enterprise*. Given how early in the claims process it all started and how deeply it has penetrated, it is clear that this enterprise is based on a well-established *business model*.

The Vendors, Attorneys and Third Parties committed the following fraudulent acts: direct or face-to-face deception and fraud, mail fraud, wire fraud, computer fraud, bank and financial institution fraud, fraud in connection to access devices, fraud in connection to identification documents, tax fraud, document fraud and forgery, fraud on the court. They also engaged in: abuse of legal and administrative processes; theft of property; identity theft; theft of business records; conspiracy against rights; criminal conspiracy; loss of confidential personal and business data; breach of confidentiality; unjust enrichment; breach of fiduciary duty; malfeasance; criminal negligence; gross negligence; negligence; filing of false public records; perjury; antitrust violations (allocation of clients, etc.); unfair trade practices; money laundering; federal and state RICO violations. These acts have been systematic, wide-spread, and well-coordinated through *conspiracy* between the Vendors, Attorneys and Third Parties. The following list is not exhaustive but only illustrative.

- Vendors fabricating and altering Claims Materials;
- Vendors processing altered and fabricated Claims Materials;
- Alteration of Short Forms and included information after receipt by the Court;
- Vendors, Attorneys and/or Third Parties filing and concealing additional Claimant IDs without Claimants' knowledge or authorization;
- Vendors and Attorneys actively concealing their fraudulent acts by, for example, removing or hiding documents uploaded to the Portal and deliberately deleting document properties and metadata;
- Fabrication and alteration of the Federal Tax Documents by the Vendors, Attorneys and Third Parties, and the use of these altered Documents in fraudulent Claims filings;

---

[4] Moreover, the professional oath in Louisiana (similar to other states) mandates the upholding of both the U.S. and Louisiana Constitutions, and such lofty ideals as justice, fairness, honesty and civility. Reading this oath and contrasting it against the experiences of these Claimants as they relate to the actions and treatments by the Attorneys, one would think that one is dealing with a sick and twisted animation, an ugly and horrifying cartoon – only to quickly snap back to reality and realize that this is all too real.

- Vendors losing sensitive and confidential Claimant documents and information such as birth certificates of extended family members (children), IDs, SSNs, insurance documents, check stubs, etc.;
- Vendors disclosing and sharing with Attorneys and Third Parties sensitive and confidential Claimant personal and business documents and information such as IDs, SSNs, Claims Materials, email communications, phone numbers and faxes, tax documentation, etc. – without Claimants' knowledge or authorization;
- Attorneys unlawfully obtaining and using sensitive confidential Claimant personal and business documents and information such as driver's licenses, personal IDs, SSNs, tax documentation, commercial licenses, etc.;
- Vendors processing executed Release signed only by Claimant and not Claimant and sponse, as required for sole proprietors;
- Vendors failing to notify spouses of Individual and Sole Proprietor Business Claimants of their obligations to settle all claims against Released Parties;
- Vendors accepting and processing a Release containing a forged signature;
- Vendors, including the Transition Coordinator, deliberately mailing Claims Materials away from Claimants without authorization and to addresses and recipients not on file during the critical Transition Process; these Materials are still unaccounted for;
- Vendors withholding 1099s and Notices and mailing them to Claimants over a year later or not mailing them at all;
- Vendors without lawful authority communicating with Attorneys and Third Parties and issuing payments without Claimants' knowledge or authorization;
- Attorneys asserting representation and fee liens based on invalid retainer agreements or totally fabricated agreements with forged Claimant signatures;
- Vendors allowing Attorneys to assert representation and liens without valid retainer agreements or with fabricated and forged agreements;
- Vendors affirming as valid Attorney liens filed by the Attorneys in local parish courts;
- Vendors acting on behalf of Seafood Neutrals pressuring alleged FWA Claimants to accept offers on the condition that the Addendum to the Release include Vendors as released parties and all this resulting in the inconsistent treatment of Claimants;
- Vendors intentionally stalling the claims process by making repeated requests of Claimants for documentation already provided;
- Deceptive filing methods by the Vendors and Attorneys designed, among other things, to implicate Claimants and Claim Preparers;
- Vendors and Attorneys misappropriating my identity and the identity of the Claimants by obtaining our submitted Claims Materials, modifying and altering them, then re-submitting and re-uploading them in connection to fraudulent Claims;
- Missing, false or misleading Vendors' reports of communications with Claimants in portal's Global Notes and elsewhere;
- Vendors fabricating Contact Notes;
- Attorneys submitting electronically-signed documents (Claim Forms, Registration Forms, etc.) without signing their names and implying that the Claimants personally signed the form or that they were present next to the Attorneys during the submission – both implications being false;

- Vendors and Attorneys issuing Claimants' payments to Third Parties without lawful authority;
- Vendors closing Claimants' claims based on arbitrary or shortened deadlines – e.g., closing claims 10 days after issuing Reconsideration Notice;
- Vendors concealing and merging prior payments;
- Vendors and Attorneys obtaining Claimants' sensitive personal and business information outside of the Claim Loss Period;
- Vendors and Attorneys manipulating the Claimants' Portal accounts: creation of Portal accounts without Claimants' knowledge or authorization, removal and concealment of the Portal Claims Materials, permitting unauthorized Attorneys and Third Parties Access to Claimants' Portal accounts, lost and missing Portal Claims Materials, making the Portal inaccessible to Claimants for extended periods of time and refusing to make it accessible – despite repeated and insistent requests to do so, providing unreasonable and deceptive explanations as to reasons for making the Portal inaccessible, withholding mail and Notices during these closures.
- Unprofessional, intrusive and invasive interviews by the HUB investigators with respect to both the Claimants and their family members;
- Offering deficient and incorrect translation during the HUB interviews;
- During the HUB interviews, forcing Claimants to sign off on documents whose contents they had no understanding of and doing so even after Claimants stated that they could not read English;
- Misleading information and misrepresentation by the Appeals Coordinator and Class Counsel regarding the interpretation of the terms of the Settlement Agreement and related promulgated policies;
- Vendors deliberately not providing crucial Notices and Policy Updates to the Claimants;
- Direct denial of requests to provide assistance and answer questions by the Appeals Coordinator and Class Counsel;
- Withholding and suppressing of important information regarding the Settlement Program and its policies and implementation by the Appeals Coordinator, Vendors and Attorneys;
- Vendors withholding and refusing to make available substantial amounts of Third Party Claim Materials and HUB Records;
- Attorneys and Vendors deliberately deleting document properties and metadata;
- Attorneys engaging in intimidation tactics by repeatedly sending private investigators to the Claimants and my residencies.

The following Vendors stand out:

- BrownGreer
- Garden City Group
- Worley Catastrophe
- HUB Enterprises
- Appeals Coordinator Patrick Hron
- Transition Coordinator Lynn Greer (BrownGreer)
- Roma Petkauskas (BrownGreer)
- Shandy Garr (Garden City Group)

- Brian Stone (Garden City Group – Attorney Team)
- Katherine Ellis (Garden City Group – Attorney Team)
- Mary Grace (Garden City Group – Attorney Team)
- Angelo Urso (Garden City Group – Attorney Team)
- Matthew Lepore (Garden City Group – Attorney Team)
- Ann Garrick (Garden City Group – Attorney Team)
- Troy Walitsky (Garden City Group – Attorney Team)
- Janet Boysen (Garden City Group – Attorney Team)
- Sarah Miller (Garden City Group – Attorney Team)
- Timothy Coleman (Garden City Group – Attorney Team)
- Christopher Anderson (Garden City Group – Attorney Team)
- Dalesha Bowman (BrownGreer)
- Julius Hebert (Houma Claims Center)
- Allen Collins (HUB Enterprises)
- Mark Lambert (HUB Enterprises)
- Carmelo (Carlo) Pedalino (Cut Off and Gretna Claims Centers)
- Mona Lisa Urbina (Worley Catastrophe & BrownGreer)
- Guy Hehner (Gretna Claims Center)
- Thuy Nguyen (Gretna Claims Center)
- James Wells (Gretna Claims Center)
- Heather Stephens (Stevens) (Hammond Processing Center)
- Tammy Bell (New Orleans East Claims Center)
- Linsey Percle (Cut Off Claims Center)
- Christine Pervan (Cut Off Claims Center)
- Karin Barbee (Gretna Claims Center, Juno Claims, Waltzer Wiygul & Garside)
- Steve McCoy (Cut Off Claims Center)
- Patrick Levy (Cut Off Claims Center)
- Donna Levy (Hammond Processing Center)
- Tony Zanca (Cut Off Claims Center)
- Ronald Sorenson (Gretna and New Orleans East Claims Center)
- Agent Hung (Call Center)
- Raveesh (BrownGreer Online/Technical)
- Prudhvi (BrownGreer Online/Technical)

The following Attorneys stand out:

- Joel Waltzer (Waltzer Wiygul & Garside Law Firm)
- Robert Wiygul (Waltzer Wiygul & Garside Law Firm)
- Clay Garside (Waltzer Wiygul & Garside Law Firm)
- Waltzer Wiygul & Garside – paralegal and secretarial Staff
- Anh "Joseph" Cao (Cao Law Firm)
- Cao Law Firm – paralegal and secretarial Staff
- Ryan Beasley (Law Office of Ryan E. Beasley Sr. LLC)
- Evelyn Levine (Faegre Baker Daniels)

- Tammy Tran (Tammy Tran Law Firm)
- Soren Gisleson (Herman Herman & Katz)
- James C. Klick (Herman Herman & Katz)
- Craig M. Robinson (Herman Herman & Katz)
- Brent Coon (Brent Coon & Associates)
- James J. Dailey (James J. Dailey Attorney at Law)
- Charles Herd (The Lanier Law Firm)
- Phillip N. Sanov (The Lanier Law Firm)
- Maura Kolb (The Lanier Law Firm)
- Scotty Chabert (Saunders & Chabert Attorneys at Law)
- Henri Saunders (Saunders & Chabert Attorneys at Law)
- Mikal Watts (Watts Guerra)
- Wynter Lee – non-attorney (Watts Guerra)
- Robert McCallister (Law Offices of Robert McCallister)

The following Known Third Parties stand out:

- Chase Bank
- Regions Bank
- H&R Block
- Non-profit organization TRAC
- Peg Case (TRAC)
- Maxine Lyons (TRAC)
- Michelle Liner (TRAC)
- Kathy Vu Brown (TRAC)
- Accounting firm Juno Claims
- Non-profit organization Mary Queen of Vietnam
- Non-profit organization Catholic Charities
- Non-profit organization LSBDC – Baton Rouge SUNO Office
- Sheila St. Pierre (tax preparer, Larose, LA)
- Meek's Seafood (Larose, LA)
- St. Thomas Church (Point a la Hache, LA)
- Danos & Curole (Larose, LA)

Looking at the cases collectively, it appears that early on in the process the Vendors, Attorneys and Third Parties conspired and filed fraudulent claims "on behalf" of Claimants, often relying on stolen personal and business Claimant information and fabricated retainer agreements. They then received and cashed in payments based on these claims. This, along with the resulting prior offset calculations, caused problems with the filings of subsequent claims, which in turn triggered investigations – into fraud committed by the Vendors, Attorneys and Third Parties and not the Claimants – further resulting in the flagging, suspension and eventual closures of claims. As the Reconsideration, Third Party Claim and Appeal processes unfolded, it became increasingly apparent that these were not random and isolated incidents, but rather the results of well worked out schemes designed to defraud the Claimants. The schemes have been actively perpetrated by the Vendors in conspiracy with the Attorneys and Third Parties. The DHECC

Code of Conduct Policy states the following: "Contractors, Subcontractors and Vendors are required to disclose unethical, dishonest, fraudulent and illegal behavior, or the violation of program policies and procedures by any Contractor, Subcontractor and Vendor Personnel, directly to the CEO David F. Odom or Special Counsel Michael J. Juneau." Rec. Doc. 11988-29. As we maneuvered through the administrative maze of the Denial, Reconsideration, Re-Review, Third Party Claim and Appeal processes, we laid out countless facts and instances of fraud and corruption by the Vendors (Contractors and Subcontractors) to the CAO staff, Appeals Coordinator Patrick Hron, Liaison Robin Keator, Fraud Waste & Abuse (FWA), questions@dhecc.com. All of these facts and instances were willfully and consistently ignored by these Vendors, and no referrals to the CEO or Special Counsel ever occurred.

In the Court's Order and Reasons Granting Final Approval of the Economic and Property Damages Settlement Agreement, responding to the objectors' unfavorable comparison of the Settlement Program to GCCF, Judge Barbier praised the Program for its superiority: "Settlement Program improves upon the GCCF in a number of important ways, including that (i) it pays claims that the GCCF would not; (ii) its decisions are made pursuant to transparent and objective frameworks; (iii) its administrator was appointed by this Court; and (iv) its operations are designed to be claimant-responsive and claimant-friendly; and they are subject to the active supervision of this Court." Rec. Doc. 8138. Looking at this assessment nearly six years later and with respect to this group of Claimants, it is at best sheer nonsense: instead of providing, the Program deprived the Claimants of their rightful compensation and damages; while the decisions might have been based on a transparent framework, their implementation and administration have been anything but transparent; there has been virtually nothing in the experience of these Claimants that proved to be claimant-responsive and claimant-friendly —to the extreme contrary; and you as the Court-Appointed Claims Administrator and the Court itself utterly failed at your supervisory and administrative duties. To sum up, just as the BP Claim, GCCF and Transition Process, the Settlement Program was from the beginning and remains to this day *corrupt through and through*.

§ 4.4.1 of the Settlement Agreement stresses the importance of the confidentiality of all information and data submitted to the Settlement Program, including the information and data previously submitted to the GCCF and BP. This emphasis is repeated through a series of PTOs such as PTO No. 1 and PTO No. 13; and other Court Orders such as Rec. Doc. 6822.[5] The CAO, Vendors, Attorneys and Third Parties have repeatedly violated these terms and Court Orders by both intentional and negligent acts that resulted in substantial losses of confidential Claimant business and personal information and data. The Claimants continue to suffer such losses and the Vendors and Class Counsel continue to ignore the problem![6]

The very first pretrial order – Pretrial Order No. 1 – issued in August 2010 insists on the protection of all documents, including the document properties and metadata. Rec. Doc. 2. The

---

[5] Rec. Doc. 6822 is the Order Regarding the Confidentiality of Claims Information of the Claims Administrator of the Deepwater Horizon Economic and Property Damages Settlement Agreement.

[6] The issues pertaining to the breach and loss of confidential personal and business information have been brought up on *numerous* occasions to Liaison Robin Keator, Appeals Coordinator Patrick Hron, and also Class Counsel Stephen Herman and James Roy – to no avail. They continue to fail to act. Their silence is deafening, their inaction in effect fraudulent!

Settlement Agreement affirms the same. Settlement Agreement § 22.1. See also PTO No. 13. There are numerous instances where the Vendors and Attorneys deliberately removed and deleted the document properties and metadata.

In your June 5, 2012 Claims Administrator's Status and Final Report on the Transfer of Claims, Claims-Related Information, Files and Data you described the mechanics of the registration process and file transfer and in the end certified to the Court as to the full completion of the process. Rec. Doc. 6619. You also affirmed that all Claimants who registered an online account and completed a Registration Form and entered their prior GCCF Claimant ID would have full access to their complete files. However, this turns out to be false. Here, there is a substantial amount of data and information – treated as *confidential* – that remains missing or inaccessible.

On July 2, 2012, in order to ensure the integrity of the Program for the benefit of the parties and the public, Judge Barbier appointed Louis Freeh as a special master to conduct an independent external investigation regarding the resignation of a former CSSP staff attorney Lionel Sutton and the subsequent resignation of the Appeals Coordinator David Duval. Rec. Doc. 10564.[7] In addition to the independent external investigation, Mr. Freeh was tasked with the following: fact finding as to any other possible ethical violations or other misconduct within the CSSP; and examining and evaluating the internal compliance program and anti-corruption controls within the CSSP. Rec. Doc. 10564. Finding "ample evidence" of the attorneys in question corrupting the settlement process, conflicts of interest, making false statements to investigators, receiving unlawful referral fees and hiding the sources of the fees, and various other ethical and professional violations (specifically, the violations of the Court-adopted Louisiana Rules of Professional Conduct), Mr. Freeh recommended – under the Unclean Hands Doctrine – that the Andry Law Firm be disallowed its claim, and that the attorneys Lionel Sutton, Glen Lerner and Jon Andry be disqualified from representing CSSP claimants or collecting fees from such claimants. Rec. Doc. 11287. In the Order of February 26, 2015 Judge Barbier confirmed and ordered these recommendations be put into effect. Rec. Doc. 14221. The deeds and misdeeds of Mr. Sutton, Mr. Lerner and Mr. Andry pale in comparison to the fraudulent acts by the Attorneys and Vendors included and described in this submission, who should not only provide full restitution of all the compensation received, but who should also be held criminally liable.

In the Court's Order & Reasons of April 29, 2014, dealing with Mr. Lerner and Mr. Sutton or the so-called "*Casey Thonn Case*," Judge Barbier reaffirmed the Court's ongoing and exclusive jurisdiction and supervision over the Settlement Program, as well as the continuing jurisdiction over the implementation, administration, and enforcement of the Settlement Agreement. Rec. Doc. 12794. Responding to a challenge by Mr. Lerner and Mr. Sutton, Judge Barbier also reaffirmed the Court's personal and subject matter jurisdictions over them (and, by extension, every attorney involved in the Program). Additionally, in the same Order, Judge Barbier determined that the "Court's power to order equitable remedies as a result of fraudulent conduct is a broad, flexible, and long-standing power." Doc. Rec. 12794. It is not important which procedural method is used (FRCP Rule 60, bill of review, etc.), as long as the net result is achieved – namely, the *devitalization* of the judgment obtained through fraud. Doc. Rec. 12794

[7] The corruption indeed extends beyond the CAO and to the Plaintiffs' Steering Committee – as evidenced by the infamous Mikal Watts case. While he was acquitted, his two co-defendants were convicted on all 66 counts. At least 7 of the Claimants included here were ensnared in this scheme.

[emphasis added]. In response to the fact that Mr. Sutton only represented Mr. Thom when he made claims to the GCCF, Judge Barbier stated that the "the two [GCCF and DHECC] are *sufficiently related* so as to make it reasonable to expect to be brought into this Court." Doc. Rec. 12794 [emphasis added].

In addition to the request to convene a Panel meeting, I respectfully demand the following of you:

1. A meeting with you.
2. Relaying the information contained herein to the Court.
3. Full investigation by your office of all the acts alleged herein.
4. Motion the Court to appoint an independent Special Master (as with Louis Freeh) or similar investigative entity and conduct comprehensive investigation into these issues.
5. File criminal complaints with the U.S. Attorney's Office and FBI, and Louisiana Attorney General's Office.
6. Report the IRS violations to the IRS fraud unit.
7. Motion the Court to issue a protective order and/or injunctive relief regarding the protection and safety of the Claimants and me and our family members, and witnesses – against potential intimidation and witness tampering by the Vendors, Attorneys and Third Parties (this should include the use of private investigators and suspicious individuals).
8. Full and complete Disgorgement and Restitution by Attorneys, Vendors and Third Parties and return of all the unjustly earned moneys to the Program and Claimants.
9. Motion the Court to apply the Unclean Hands Doctrine to all the Vendors, Attorneys and Third Parties involved and prevent their continued participation in and benefits from the Program.
10. Remove the Appeals Coordinator Michael Hron for dereliction of duty.
11. Motion the Court to remove Class Counsel for dereliction of duty.
12. Motion the Court to remove the Third Party Claim for dereliction of duty.
13. Institute policies and propose recommendations to the Court intended as deterrence against this type of unlawful and unethical conduct.
14. Institute policies and propose recommendations to the Court to protect *all* the victims and witnesses and the *public* at large from all the perpetrators involved.

Additionally, the following is a list of more precise demands pertaining to the Claimants included here: investigate all prior offset payments for all Claimants; investigate additional Claimant IDs filed as Individual under BP Claim, GCCF/Transition and the CSSP; investigate payments issued but not received under the CSSP; investigate unlawful attorneys' legal representation and liens assertions; release all the Records and Communications used as the bases for attorneys' representations; revive and reinstate all closed Claims and permit the filing of new Claims; release the HUB Interview (Audio, Report, Transcript and Images) for the Claimants and their family members that were interviewed; release Subsistence Field Visit Report and/or Audio; investigate all the missing Records; investigate the confidential Claims Materials mailed unlawfully by the Transition Coordinator to addresses not on file; disclose original Attorney Retainer Agreements, Releases, and the fraudulent documents at issue.

The first 8 Claimants are covered in detail in this submission. The remaining cases will be communicated in due course.

**1.** ~~————~~ **Claimant ID 100091423**

    a) SCP Claim ID 125903
    b) SCP Claim ID 126763

**2.** ~~————~~ **Claimant ID 100022440**

    a) Subsistence Claim ID 168318
    b) SCP Claim ID 49604
    c) SCP Claim ID 49640
    d) SCP Claim ID 49651

**3.** ~~————~~ **Claimant ID 100001235**

    a) VoO Charter Claim ID 50582
    b) SCP Claim ID 91673
    c) SCP Claim ID 91674
    d) Subsistence Claim ID 176564
    e) VPD Claim ID 203954
    f) Release full HUB Report

**4.** ~~————~~ **Claimant ID 100040644**

    a) Investigate prior Payments

**5.** ~~————~~ **Claimant ID 100030994**

    a) VoO Charter Claim ID 92263
    b) Subsistence Claim ID 128058
    c) SCP (Blue Crab) Claim ID 135835
    d) SCP (Blue Crab) Claim ID 135841
    e) SCP (Finfish) Claim ID 135847
    f) SCP (Finfish) Claim ID 135857
    g) Seafood Supplemental Distribution Claim ID 326042
    h) Seafood Residual Distribution Claim ID 433570
    i) Disclose full information on the two 6% Refunds: 427348 & 427349

**6.** ~~————~~ **Claimant ID 100068477**

    a) SCP Claim ID 135893
    b) SCP Claim ID 135903
    c) Subsistence Claim ID 31710

7. ――――――  Claimant ID 100091325

   a) SCP Claim ID 128419
   b) SCP Claim ID 128436

8. ――――― Claimant ID 100031188

   a) SCP Claim ID 58602
   b) SCP Claim ID 58618
   c) Subsistence Claim ID 162178
   d) Release full HUB Report

9. ――――――― Claimant ID 100051941

   a) SCP Claim ID 26103
   b) Seafood Supplemental Distribution Claim ID 326530
   c) Seafood Residual Distribution Claim ID 437182

10. ――――― Claimant ID 100052023

   a) SCP Claim ID 26097
   b) Seafood Supplemental Distribution Claim ID 326533
   c) Seafood Residual Distribution Claim ID 436304
   d) Individual Economic Loss Claim ID 49971

11. ――― Claimant ID 100089736

   a) Subsistence Claim ID 42177
   b) VoO Charter Claim ID 89847
   c) SCP (Blue Crab) Claim ID 136011
   d) SCP (Blue Crab) Claim ID 136040
   e) SCP (Blue Crab) Claim ID 136026
   f) SCP (Finfish) Claim ID 136598
   g) SCP (Finfish) Claim ID 136616
   h) Release full HUB Report and Photos

12. ――――― Claimant ID 100143529

   a) SCP Claim ID 136501

13. ―――――――――――― Claimant ID

   a) SCP Claim ID 19020
   b) SCP Claim ID 19693

**14.** _____ **. Claimant ID 100053112**

- a) SCP Claim ID 19428
- b) SCP Claim ID 19448
- c) Seafood Supplemental Distribution Claim ID 329810
- d) Seafood Residual Distribution Claim ID 436797

**15.** _____ **Claimant ID 100127951**

- a) Subsistence Claim ID 156401
- b) SCP Claim ID 126698
- c) Investigate 6% Refund: 428578

**16.** _____ **Claimant ID 100083609**

- a) SCP Claim ID 136365

**17** _____ **Claimant ID 100045372**

- a) Subsistence Claim ID 99241

**18.** _____ **Claimant ID 100091815**

- a) Subsistence Claim ID 108006
- b) SCP Claim ID 126541
- c) SCP Claim ID 126557

**19.** _____ **Claimant ID 100068249**

- a) Subsistence Claim ID 162030
- b) SCP Claim ID 126284
- c) SCP Claim ID 126286

**20.** _____ **Claimant ID 100107381**

- a) Subsistence Claim ID 168911
- b) SCP Claim ID 122629
- c) SCP Claim ID 122635

**21.** _____ **Claimant ID 100266401**

- a) Investigate Prior Offset Payments – Duplicate Claim
- b) Subsistence Claim ID 269049

22. ~~~~~~~ Claimant ID 100094170

   a) SCP Claim ID 117615
   b) SCP Claim ID 117616

23. ~~~~~~~ Claimant ID 100031144

   a) SCP Claim ID 96643
   b) SCP Claim ID 96646
   c) Other Seafood Claim ID 96653
   d) Other Seafood Claim ID 96657

24. ~~~~~~~ Claimant ID 100165618

   c) SCP Claim ID 126110
   d) Subsistence Claim ID 323315
   e) Seafood Supplemental Distribution Claim ID 330444

25. ~~~~~~~ Claimant ID 100031906

   a) SCP Claim ID 26083
   b) SCP Claim ID 26088
   c) Subsistence Claim ID 38739

26 ~~~~~~~ Claimant ID 100057922

   a) Seafood Claim ID 130145
   b) Seafood Claim ID 130155

27 ~~~~~~~ Claimant ID 100098045

   c) Seafood Claim ID 135955
   d) Seafood Claim ID 136000
   e) Seafood Claim ID 136005
   f) Subsistence Claim ID 48689
   g) Subsistence Claim ID 330633

28. ~~~~~~~ Claimant ID 100178776

   a) Startup 155814
   b) Business Economic 155848


Class Counsel as the Class Counsel should, indeed, fully support this initiative and demands by these Economic Class Members. And the same applies to BP -- that is, it should vigorously support this effort and requests.

In their Petition for Reimbursement of Expenses and Collective Common Benefit Fee Award, Class Counsel wrote as follows: "Class Counsel continue to monitor individual Settlement Program Appeals, Requests for Discretionary Court Review, and Appeals to the U.S. Fifth Circuit, providing insight and materials to Claimants, and in many cases preparing and submitting *amicus* memos or briefs." Rec. Doc. 21098. Maybe Class Counsel have done so. But with respect to this group of Claimants, this statement is far from the truth. We approached both Mr. Herman and Mr. Roy on *many* occasions. While Mr. Roy never responded, Mr. Herman was kind enough to reply. Unfortunately, not one time did he manage to provide a constructive observation or advice. The questions were virtually every time very specific – dealing with a particular Claimant, Appeal case, Settlement Agreement term, or Program policy – and not a single time were they properly answered. While well aware that these were pro se Claimants, his typical response was: "You should reach out to your counsel." Knowing full well the jurisdictional reach of the Court with respect to the MDL 2179 and the Court-Supervised Settlement Program, on one occasion Mr. Herman even suggested that a Claimant should file a complaint in the state court. Supporting this initiative offers a great opportunity for the Class Counsel to redeem themselves and live up to their role as prescribed by the Settlement Agreement. After all, they are the co-authors of the Settlement Agreement and should have no difficulties in understanding this role. Even more appropriate, they should resign in disgrace and allow professionals to carry out this important function.

BP should indeed support this effort as well. It, through its counsel, stated as much and more. Just as in the *Watts* case, here "The facts shout fraud!" Rec. Doc. 11994-6. More precisely and with respect to the Rule 60(b), BP continued: "Although 'finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause.'" Rec. Doc. 11994-6. Simply put, as BP aptly exclaimed: "Fraud is fraud!" Rec. Doc. 11994-6. It follows that the immediate action is imperative – and we couldn't agree more with BP here.

Please expect to receive additional information pertaining to these as well as additional cases in the upcoming months. The depth of the fraud is rather profound and requires tedious analysis, which in turn is rather time-consuming.

From the included Declarations you can see that the Claimants are willing and ready to testify and support all the information as it pertains to their individual cases. I am as well.

In truth, the list of Claimants is far longer than the 27 included here. From what we know and keep hearing, the list is in fact *massive* and, once this information reaches them and the public, it will only grow. I worked closely with the large Croatian oyster lease holder contingent and know full well of the problems they experienced. My colleagues worked with the large Cambodian community of commercial fishermen, African-American commercial fishermen and others. And I and my colleagues worked with a host of Caucasian commercial fishermen and others. The list goes on and is truly *massive*.

I look forward to your response and willingness to address and resolve these issues. Any delay or hesitation on your part will likely result in the lasting damage not only to the CSSP but the public at large.

Sincerely,
Thoai Nguyen

Cc:   The Honorable Nannette Jolivette Brown, Chief Judge
      The Honorable Carl J. Barbier
      FBI – New Orleans Field Office
      DoJ – Criminal Division
      DoJ – Criminal Division – Fraud Section
      DoJ – Civil Rights Division
      U.S. Secret Service

# FAX COVER SHEET

| TO | The Honorable Judge Barbier |
|---|---|
| COMPANY | EDLA - Section J |
| FAX NUMBER | 15045894536 |
| FROM | Thoai Nguyen |
| DATE | 2018-07-30 13:45:56 GMT |
| RE | URGENT & CONFIDENTIAL - Cont. |

## COVER MESSAGE

Dear Ben & Hope:

Please find attached a letter to Judge Barbier pertaining to the submission delivered last Friday.

Thank you.

Sincerely,

Thoai Nguyen

```
EXHIBIT 2
```

Dear Judge Barbier:

I began writing the letter/email to the Claims Administrator several months ago as a simple request to – as per the Settlement Agreement – convene a panel between the CAO, Class Counsel and BP to help us resolve some of these issues. But as I continued to (re-)research the cases, the letter evolved into much more than a simple request. There is, for example, a list of requests on p. 11 of the letter/email to Juneau, which at this point are indeed much more suitable for the Court itself.

I have already filed complaints with the FBI (and the DoJ – Criminal Division) and the LA DoJ (Criminal Division). In fact, just the other day I had a 2-hour meeting with the FBI. I'm in the process of filing complaints with the IRS and FTC regarding tax and document fraud and identity theft. So, some of the requests from p. 11 I will fulfill myself.

Although I've been essentially "forced" to learn a lot of law in the last couple of years, I'm no legal expert by any stretch of the imagination. I do, however, realize that the Court is able – *sua sponte* – to initiate a host of actions such as Show Cause and Evidentiary Hearings (just as was the case of Mr. Dien Nguyen 5 years ago). Then there are *in camera* reviews. The Court could also appoint a Special Master – a la Louis Freeh, but with a much broader mandate. I recently read that the U.S. 9th Circuit appointed a Special Prosecutor and assume that a U.S. District Court could to the same. The Court could also initiate disciplinary proceedings against the attorney-perpetrators admitted to the Court and participating in the Court-Supervised Settlement Program. The Court could also appoint a Special Counsel to help us resolve these cases. As for the claims already closed, there are Bills of Review and Rule 60(b) motions at the Court's disposal (there's an argument – citing the Judge himself – to that effect on p. 10 of the letter/email to Juneau). Of course, along the same Rule 60(b) argument (and perhaps additional arguments such as unjust enrichment), there are disgorgement and restitution options/motions… A lot of these transactions were contract-based but riddled with fraud. As such they suffer from absolute nullity – for which there's no prescription…

On the same page (p. 11), there are Claimant-specific requests. Although fairly specific, they in that letter still apply to the Claimants collectively. What I can do in the next few days is provide a list of precise Claimant-by-Claimant requests.

The submission I turned in covers 8 cases in great detail. But there's a lot more that I could add to these case – I've been pretty selective, that is, their records and files are bigger than what I've turned in. Additionally, I'd like to turn in the remaining 20 cases, it's just that the whole process is very time-consuming and labor-intensive. But I could for now provide "abbreviated" versions, which just outline the cases and bring out the main points. What they all have in common are the same patterns and actors, just different iterations: patterns of criminal fraudulent racketeering schemes, that is.
I tried to be as diligent and precise as I could in putting together those 8 cases. But if you need any help with reading and interpreting them, please let me know.

Also, I'm ready to provide any kind of testimony that you may need pertaining to these cases. This readiness, of course, extends to the Claimants as well. If you'd like me to bring them over

so you could see and hear them – officially (through Court proceedings) or unofficially (perhaps for an informal meeting), just let me know. It could be few of them or a whole bunch, with or without their family members… These are real people, disaster victims, workers and small business owners, some trying to support rather large families, most of them illiterate… by and large decent people… They don't deserve this.

They deserve *justice*!

Thanks a lot for hearing me out.

I look forward to hearing back from you, the Judge and the Court.

Sincerely,
Thoai Nguyen

Cc: The Honorable Nannette Jolivette Brown, Chief Judge

# FAX COVER SHEET

| TO | Judge Barbier |
|---|---|
| COMPANY | EDLA - Section J |
| FAX NUMBER | 15045894536 |
| FROM | Thoai Nguyen |
| DATE | 2018-08-02 22:04:39 GMT |
| RE | Court-Supervised Settlement Program |

## COVER MESSAGE

Dear Hope:

Please forward this letter to Judge Barbier.

Thank you.

Sincerely,

Thoai Nguyen

EXHIBIT 3

Dear Judge Barbier:

I just got off the phone with your Clerk Ben Allums and am truly flabbergasted. I simply cannot believe that you have decided to reject our requests.

You are in charge of this Court-Supervised Settlement Program and I have presented you with reams of documentary evidence pertaining to, above all, immense and egregious *internal corruption* within the Program, yet you have made the decision to reject our requests.

Your decision is, to put it mildly, *unconscionable* and we are utterly disappointed at your inaction.

Sincerely,
Thoai Nguyen



RE:      -- Claimant ID 100123636
Patrick Hron, Patrick Juneau,
twi   to: AttorneyQuestions@dhecc.com, 'Steve Herman',
jimr@wrightroy.com, dbeck@brsfirm.com,
Cc: "efile-brown@laed.uscourts.gov"

09/29/2018 01:52 PM

Patrick:

I've discussed this problem – as well as *many* other issues – with you on so many occasions over the last couple of years and just as before you continue to ignore the concerns of these *disaster victims*. I don't know if this is due to your incompetence or complicity or a combination of the two, but your continued willful ignorance is utterly *irresponsible* .

According to the CSSP, in order for an attorney to represent a claimant, the attorney must produce proof of representation – i.e., an attorney-client agreement (retainer agreement, contingent fee agreement, etc.).

The retainer/contingent fee agreement between Brent Coon/BCA and      *does not exists* . Yet your office – Claims Administrator's Office (CAO) – and the respective Vendors allowed Brent Coon/BCA to file no less than 22 claims with the DHECC.

You may continue to ignore this, but I will continue to call it for what it is – namely, *criminal conspiracy* between Brent Coon/BCA and the CAO/Vendors.

As I communicated to you on *numerous* occasions and with respect to *numerous* claimants, this has been a *systemic* issue that affected many claimants – namely, the CAO/Vendors permitting the attorneys (not only Brent Coon/BCA, but also many others) to assert representation and liens based on:

         1.) no attorney-client agreements;

         2.) deficient attorney-client agreements; and

         3.) fabricated and forged attorney-client agreements.

So not only have the CAO/Vendors – including you personally – allowed this to transpire, but you all have actively facilitated it. And you continue to fail to address this serious problem affecting so many *disaster victims* .

To stress one more time, this is not only the attorney-client issue, but also the CSSP-claimant issue. And you as the No. 2 in command of the CAO bear *personal responsibility* for the losses

EXHIBIT 4

suffered by these *disaster victims* —for having perpetuated and actively participated in this ongoing *criminal conspiracy* designed to *defraud* these *disaster victims.*

Needless to add, this problem is but one among many others!

Thoai

--------- Original Message ---------
Subject: RE:          .-- Claimant ID 100123636
From: "Patrick Hron" <phron@dheclaims.com>
Date: 9/27/18 5:27 pm
To: "twi@oxmotion.com" <twi@oxmotion.com>, "Patrick Juneau" <pjuneau@dheclaims.com>, "AttorneyQuestions@dhecc.com" <AttorneyQuestions@dhecc.com>, "'Steve Herman'" <SHERMAN@hhklawfirm.com>, "jimr@wrightroy.com" <jimr@wrightroy.com>, "dbeck@brsfirm.com" <dbeck@brsfirm.com>, "dgodwin@godwinronquillo.com" <dgodwin@godwinronquillo.com>, "dkhaycraft@liskow.com" <dkhaycraft@liskow.com>, "ky.kirby@bingham.com" <ky.kirby@bingham.com>, "andrew.langan@kirkland.com" <andrew.langan@kirkland.com>, "dkuchler@kuchlerpolk.com" <dkuchler@kuchlerpolk.com>, "mikelyle@quinnemanuel.com" <mikelyle@quinnemanuel.com>, "kjmiller@bakerdonelson.com" <kjmiller@bakerdonelson.com>, "pwittmann@stonepigman.com" <pwittmann@stonepigman.com>, "Michael Juneau" <mjuneau@dheclaims.com>, "ben_allums@laed.uscourts.gov" <ben_allums@laed.uscourts.gov>, "reconciliationappeals@gulfspillpunitivedamagessettlement.com" <reconciliationappeals@gulfspillpunitivedamagessettlement.com>, "Cantor, Daniel A." <Daniel.Cantor@apks.com>
Cc: "efile-brown@laed.uscourts.gov" <efile-brown@laed.uscourts.gov>

Thoai,

The Registration Form listing BCA as the Claimant's representation was submitted in 2013. This Form was electronically signed by the Claimant. As per the FAQs cited below, this Registration Form is a document signed by the Claimant that authorizes the lawyer or the law firm to pursue the claim on the client's behalf. Moreover, this Registration Form was dated and submitted subsequent to the April 2011 correspondence noted below that indicated the Claimant may have been pro se at that time. To the extent the Claimant is contending that this Registration Form was electronically executed by BCA rather than by the Claimant without his consent or authority to do so, that is an issue that the Claimant should raise with BCA.

Your and　　　　　's allegations below of "criminal conspiracy" regarding the Settlement Program and its Vendors are inappropriate and baseless, and these claims have been fully and finally resolved for over five years. Our office has fully responded to your inquiries, several times now, and therefore will not be communicating further on this matter.


Sincerely,


Patrick Hron

Claims Administrator's Office


From: twi@oxmotion.com [mailto:twi@oxmotion.com]
Sent: Monday, September 24, 2018 11:03 PM
To: Patrick Hron <phron@dheclaims.com>; Patrick Juneau <pjuneau@dheclaims.com>; AttorneyQuestions@dhecc.com; 'Steve Herman' <SHERMAN@hhklawfirm.com>; jimr@wrightroy.com; dbeck@brsfirm.com; dgodwin@godwinronquillo.com; dkhaycraft@liskow.com; ky.kirby@bingham.com; andrew.langan@kirkland.com; dkuchler@kuchlerpolk.com; mikelyle@quinnemanuel.com; kjmiller@bakerdonelson.com; pwittmann@stonepigman.com; Michael Juneau <mjuneau@dheclaims.com>; ben_allums@laed.uscourts.gov; reconciliationappeals@gulfspillpunitivedamagessettlement.com; Cantor, Daniel A. <Daniel.Cantor@apks.com>
Cc: efile-brown@laed.uscourts.gov
Subject: RE:　　　　　-- Claimant ID 100123636


1. After reviewing the Claim File that was made available on the claimant's side of the online portal, we see nothing on the record authorizing BCA as legal representative and likewise authorizing the Court-Supervise Settlement Program (Claims Administrator, CAO, Vendors) to allow BCA access to　　　　　's *confidential* claims materials and to file claims on his behalf.

2. According to DHECC website's FAQs 165 and 166 (see below), there must be a retainer agreement to prove legal representation. No such agreement exists in the claimant's portal. Yet the CAO allowed BCA to *misappropriate*　　　　　's personal and business information, and file no less than 22 claims.

3. We see a co-counsel letter of representation from James Dailey dated July 15, 2011 (Doc. ID 4624906) and email exchanges dated January 9, 2012 between Brian Stone of the GCCF Attorney Team, Jerry Stewart, National Coordinator for BCA, and Janet Boysen, with an

attached spreadsheet, and reference of Pat and Joint Venture/Referring Attorneys. (Doc. ID 4624905).

4. The email exchanges indicate that there was some type of agreement between BCA, Joint Venture/Referring Attorneys, Janet Boysen, Brian Stone of the Attorney Team and possibly other attorneys. Indeed, this "agreement" is nothing short of *criminal conspiracy* intended to *defraud*          . – a conspiracy actively facilitated by the Court-Appointed Vendors.

5. There is also a Short Form, which I helped him complete, dated April 20, 2011 clearly indicating              's pro se status. (Doc. ID 4624904).

6. To reiterate,           never met, retained, or authorized BCA to represent him in any matters relating to the Spill, so clearly these claims were filed without his knowledge or authorization. It is obvious that none of the Registration and Seafood Compensation Claim Forms submitted on           's behalf was "electronically" signed by him. (Doc. ID 7868118, 7869031, 7901638, 7930706, 7936907, 7938344). The Registration Form specifically states that only a claimant can sign this form. Under Section 11, BCA certified under *penalty of perjury* , pursuant to 28 U.S.C. 1746, that           . personally signed the form – which is an outright lie.

7. In addition, some of these claim forms, containing BCA's Beaumont office address, were mailed from the Bridge City, TX Claims Assistance Center ("CAC") to Heather Stephens at the Claims Administration processing unit in Hammond, LA.

8. These are not matters that the CAO and the Court-Supervised Settlement Program can simply brush aside. These are serious issues affecting a *disaster victim* .

9. The Court has adopted the Louisiana Rules of Professional Conduct as noted in the Special Master's Freeh Report and the resulting Court's Order imposing certain sanctions by disallowing the Andry Lerner Firm's claim under the Unclean Hands Doctrine and the disqualifying attorneys Lionel Sutton, Christina Reitano, Glen Lerner, and Jon Andry as well as any associated law firms from representing CSSP claimants (or collection of fees from such claimants) under the Unclean Hands Doctrine. ("ROPC"). Rec. Doc. 11287 at 85; 11288, 14221 at 4. The same attorneys were referred to the Department of Justice.

10. So, in addition to the questions already asked – for which we still await full and thorough responses – we demand the following. First, to disqualify BCA and disallow it from any and all participation in the Program and refer it to the Department of Justice for possible criminal prosecution. And to do the same with respect to the Court-Appointed Vendors participating in this *criminal conspiracy* .

165. During the GCCF process, my law firm submitted a GCCF Authorization Form. Is this

form acceptable for the Deepwater Horizon Economic and Property Damages Settlement Program?

No. The GCCF Authorization Form limited the authorization to act on behalf of a claimant in the GCCF process and did not authorize activity beyond handling a claim with the GCCF. The Claims Administrator and the Economic and Property Damages Settlement Program are different from and separate from the GCCF. To show authority to act for the claimant in the Economic and Property Damages Settlement Program, the lawyer or law firm must submit a power of attorney, retainer agreement, or document signed by the claimant that authorizes the lawyer or the law firm to pursue on the client's behalf any claim(s) arising out of the Deepwater Horizon Incident, or words to that effect.

166. During the GCCF process, my law firm submitted a document other than the GCCF Authorization Form that authorized me and/or my firm to act on my client's behalf concerning his or her claim(s). Is that prior document acceptable for the Deepwater Horizon Economic and Property Damage Settlement Program?

It may be. To show authority to act for the claimant in the Economic and Property Damages Settlement Program, the lawyer or law firm must submit a power of attorney, retainer agreement, or document signed by the claimant that authorizes the lawyer or the law firm to pursue on the client's behalf any claim(s) arising out of the Deepwater Horizon Incident, or words to that effect. We will review your document. If it contains that authorization, the Claims Administrator will accept it as sufficient. If it does not, we will notify you and the claimant will need to sign a new document containing such authorization that you then submit to us.

--------- Original Message ---------

Subject: RE:              . -- Claimant ID 100123636
From: "Patrick Hron" <phron@dheclaims.com>
Date: 9/19/18 6:18 pm
To: "twi@oxmotion.com" <twi@oxmotion.com>, "Patrick Juneau" <pjuneau@dheclaims.com>, "AttorneyQuestions@dhecc.com" <AttorneyQuestions@dhecc.com>, "'Steve Herman'" < SHERMAN@hhklawfirm.com>, "jimr@wrightroy.com" <jimr@wrightroy.com>, " dbeck@brsfirm.com" <dbeck@brsfirm.com>, "dgodwin@godwinronquillo.com" < dgodwin@godwinronquillo.com>, "dkhaycraft@liskow.com" <dkhaycraft@liskow.com>, " ky.kirby@bingham.com" <ky.kirby@bingham.com>, "andrew.langan@kirkland.com" < andrew.langan@kirkland.com>, "dkuchler@kuchlerpolk.com" <dkuchler@kuchlerpolk.com>, " mikelyle@quinnemanuel.com" <mikelyle@quinnemanuel.com>, " kjmiller@bakerdonelson.com" <kjmiller@bakerdonelson.com>, " pwittmann@stonepigman.com" <pwittmann@stonepigman.com>, "Michael Juneau" < mjuneau@dheclaims.com>, "ben_allums@laed.uscourts.gov" <ben_allums@laed.uscourts.gov>, "reconciliationappeals@gulfspillpunitivedamagessettlement.com" < reconciliationappeals@gulfspillpunitivedamagessettlement.com>, "Cantor, Daniel A." < Daniel.Cantor@apks.com>

Cc: "efile-brown@laed.uscourts.gov" <efile-brown@laed.uscourts.gov>

Thoai,

Please refer to my prior correspondence for the answers to your questions below. BCA filed the claims with the Settlement Program on behalf of            as his counsel of record per the Claimant's Registration Form. This occurred in early 2013 following the GCCF and the Transition Period, and all of those claims were denied in the spring of 2013 under Section 2.2.6 of the Settlement Agreement in light of the Claimant's GCCF Payment and Release execution.

I have been informed that the AR-1 has been processed as requested to remove BCA from the Claimant's representation, and that the team has contacted or is in the process of contacting            in this respect so that he can access the Claim File to view the documentation submitted in support of the claims for review by the Settlement Program as well as the determinations made on each of those claims. This will give         : the opportunity to see for himself the entirety of the information contained in the Claim File rather than our office attempting to summarize for ˈ       what is contained therein.

Again, to the extent          has questions related to BCA's representation of him, those questions would be most appropriately directed towards BCA.

Sincerely,

Patrick Hron

Claims Administrator's Office

---

**From:** twi@oxmotion.com <twi@oxmotion.com>
**Sent:** Sunday, September 16, 2018 11:45:20 PM
**To:** Patrick Hron; Patrick Juneau; AttorneyQuestions@dhecc.com; 'Steve Herman';
jimr@wrightroy.com; dbeck@brsfirm.com; dgodwin@godwinronquillo.com;
dkhaycraft@liskow.com; ky.kirby@bingham.com; andrew.langan@kirkland.com;

dkuchler@kuchlerpolk.com; mikelyle@quinnemanuel.com; kjmiller@bakerdonelson.com; pwittmann@stonepigman.com; Michael Juneau; ben_allums@laed.uscourts.gov; reconciliationappeals@gulfspillpunitivedamagessettlement.com; Cantor, Daniel A.
**Cc:** efile-brown@laed.uscourts.gov
**Subject:** RE:        ₁ -- Claimant ID 100123636

We are still awaiting the completion of the AR-1 process.

It should be noted that during GCCF or Transition Process,          _ _    had removed an undisclosed attorney. During that removal it was clearly explained that he had never signed with any attorney.

Moreover,     _       had accepted the $25,000 Quick Final payment which formally precluded him from filing subsequent claims -- by himself or via a law firm. Plus he was was not eligible under the VoO Charter or VPD.

So, to reiterate the same questions that you failed to address -- but instead burdened the *disaster victim* with answering:

Why was this permitted?

When were these claims filed?

What other information was submitted in connection with these fraudulent filings?

What other information was unlawfully used and disclosed by BCA and the Court Supervised Settlement Program ("CSSP")?

--------- Original Message ---------

**Subject:** RE:        -- Claimant ID 100123636
**From:** "Patrick Hron" <phron@dheclaims.com>

Date: 9/11/18 11:33 am
To: "twi@oxmotion.com" <twi@oxmotion.com>, "Patrick Juneau" <pjuneau@dheclaims.com
>, "AttorneyQuestions@dhecc.com" <AttorneyQuestions@dhecc.com>, "'Steve Herman'" <
SHERMAN@hhklawfirm.com>, "jimr@wrightroy.com" <jimr@wrightroy.com>, "
dbeck@brsfirm.com" <dbeck@brsfirm.com>, "dgodwin@godwinronquillo.com" <
dgodwin@godwinronquillo.com>, "dkhaycraft@liskow.com" <dkhaycraft@liskow.com>, "
ky.kirby@bingham.com" <ky.kirby@bingham.com>, "andrew.langan@kirkland.com" <
andrew.langan@kirkland.com>, "dkuchler@kuchlerpolk.com" <dkuchler@kuchlerpolk.com>,
"mikelyle@quinnemanuel.com" <mikelyle@quinnemanuel.com>, "
kjmiller@bakerdonelson.com" <kjmiller@bakerdonelson.com>, "
pwittmann@stonepigman.com" <pwittmann@stonepigman.com>, "Michael Juneau" <
mjuneau@dheclaims.com>, "ben_allums@laed.uscourts.gov" <
ben_allums@laed.uscourts.gov>, "
reconciliationappeals@gulfspillpunitivedamagessettlement.com" <
reconciliationappeals@gulfspillpunitivedamagessettlement.com>
Cc: "efile-brown@laed.uscourts.gov" <efile-brown@laed.uscourts.gov>

Good morning,

BCA filed the claims as counsel for                   in early 2013.  We are processing the Form
AR-1, and once that is complete,          .          will be able to access the Claim File to view
the documentation submitted in support of the claims. Because BCA filed the claims on behalf
of          .          as                :'s attorney, BCA was notified directly of the claim
determinations, as our office does not communicate directly with claimants who are
represented by counsel.                   may wish to address the items and questions below
around authorization and documentation directly with BCA.

Sincerely,

Patrick

From: twi@oxmotion.com [mailto:twi@oxmotion.com]
Sent: Friday, September 07, 2018 4:54 PM
To: Patrick Juneau <pjuneau@dheclaims.com>; AttorneyQuestions@dhecc.com; Patrick Hron
<phron@dheclaims.com>; 'Steve Herman' <SHERMAN@hhklawfirm.com>;
jimr@wrightroy.com; dbeck@brsfirm.com; dgodwin@godwinronquillo.com;
dkhaycraft@liskow.com; ky.kirby@bingham.com; andrew.langan@kirkland.com;
dkuchler@kuchlerpolk.com; mikelyle@quinnemanuel.com; kjmiller@bakerdonelson.com;
pwittmann@stonepigman.com; Michael Juneau <mjuneau@dheclaims.com>;
ben_allums@laed.uscourts.gov;
reconciliationappeals@gulfspillpunitivedamagessettlement.com
Cc: efile-brown@laed.uscourts.gov
Subject:            .-- Claimant ID 100123636

Claims Administrators Juneau & Juneau:

On September 4, 2018 ⟨received a notice from the HESI Settlement indicating that he is represented by the law firm Brent Coon & Associates ("BCA"). It also indicates that a DHECC Claimant ID 100123636 and 22 claims were filed under his name and SSN.

This is the first time that ·         became aware that of this Claimant ID.

He never retained any attorney or law firm for any matters pertaining to the Spill nor did he file any of these claims.

Evidently, BCA stole              .'s personal and business information and established legal representation based upon which BCA filed these claims.·

Why was this permitted?

When were these claims filed?

What other information was submitted in connection with these fraudulent filings?

What other information was unlawfully used and disclosed by BCA and the Court Supervised Settlement Program ("CSSP")?

Why was              . never notified by the CSSP?

Brent Coon of BCA is the same attorney who stole personal and business information from Dien Nguyen and used it as the basis for fraudulent attorney representation and claims filing. The CSSP not only permitted but facilitated these fraudulent filings. This case was adjudicated by the Court at the Show Cause Hearing on April 5, 2013. Rec. Doc. 8996, Rec. Doc. 9201.

We have every reason to believe that the same applies here.

Please respond to these inquiries promptly.

Enclosed are: AR-1 Form, Appendix A, HESI Notice, DHECC Claimant Check Status, and Thiet Nguyen's letter of explanation.

Sincerely,

Thoai