UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | * | SECTION: J |
| This document relates to: | * * | |
| *Salvesen v. Feinberg,* No.11-2533 *Pinellas Marine v. Feinberg,* No.11-1987 *Ditch v. Feinberg,* No. 13-6014 *Donovan v. Herman,* No.19-12014 | * * * * * | HONORABLE CARL J. BARBIER MAGISTRATE JUDGE WILKINSON |

## OPPOSITION TO MOTIONS TO RECUSE

The undersigned, as Co-Liaison Counsel for Plaintiffs and as Defendant in *Donovan v. Herman,* respectfully submits the following Opposition to the Motions to Recuse filed by Mr. Donovan [Rec. Docs. 25908 and 25927] in accordance with the Court's Order of August 19, 2019 [Rec. Doc. 25963]:

**MAY IT PLEASE THE COURT:**

While it is somewhat difficult to understand the precise basis upon which Mr. Donovan seeks recusal, to the extent he seeks recusal under 28 U.S.C. §455(b)(4), such motion should be denied, as:

- The U.S. Fifth Circuit affirmed that debt instruments are not "financial interests" within the meaning of §455(b), back in July of 2010;[1]

- The Court voluntarily divested himself of such instruments in June of 2010, though not required to, out of an abundance of caution, to avoid even an appearance of bias;[2]

- Donovan presents no evidence or other factual or legal support for the notion that the previously owned Transocean or Halliburton bonds were

---

[1] In re Cameron, 393 Fed.Appx. 133, 135 (5th Cir. 2010).

[2] In re Cameron, 393 Fed.Appx. at 134.

> or are "financial interests in the subject matter in controversy" or "could be substantially affected by the proceeding";
>
> - Indeed, both Halliburton and Transocean have been largely dismissed from this litigation;[3]
>
> - Nor would Donovan even have standing to urge recusal based on an alleged "bias" towards Halliburton or Transocean, as neither company is named as a Defendant in any of the four Donovan cases;[4]
>
> - Nor would a motion to recuse on such basis be timely at this point;[5]
>
> - It's not even clear that Donovan, as the purported plaintiff in the *Donovan v. Herman* action, has Article III standing to invoke the subject-matter jurisdiction of the Court.

To the extent that Donovan seeks recusal under 28 U.S.C. §455(a), such motion should be denied, as:

> - There is absolutely no evidence of any "deep-seated favoritism or antagonism" that would make fair judgment in the Donovan cases impossible;[6]

---

[3] *See, e.g.,* ORDER AND REASONS [Rec. Doc. 5446] (Jan. 26, 2012) (confirming that BP agreed to indemnify Transocean for compensatory damages); ORDER AND REASONS [Rec. Doc. 5493] (Jan. 31, 2012) (confirming that BP agreed to indemnify Halliburton for compensatory damages); In re Oil Spill by the Oil Rig Deepwater Horizon, 910 F.Supp.2d 891 (E.D.La. 2012), *aff'd,* 739 F.3d 790 (5th Cir. 2014), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 734 (2014), *and* 295 F.R.D. 112 (E.D.La. 2013) (approving BP Settlements that release Halliburton and Transocean from claims for compensatory damages); CONSENT DECREE [Rec. Doc. 8608] (Feb. 19, 2013) (resolving the claims of the United States against Transocean); In re Oil Spill by the Oil Rig Deepwater Horizon, 21 F.Supp.3d 657 (E.D.La. 2014) (Phase One Trial Findings) (concluding that, while Transocean and Halliburton were both negligent, neither was guilty of reckless conduct); ORDER OF DISMISSAL OF STATE CLAIMS AGAINST TRANSOCEAN [Rec. Doc. 15517] (Oct. 29, 2015); ORDER AND REASONS [Rec. Doc. 22252] (Feb. 15, 2017) (approving class settlements releasing Halliburton and Transocean from punitive damage and other reserved and assigned claims).

[4] *See generally* MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25908-1] at pp.1-2; *see, in particular, Salvesen v. Feinberg* COMPLAINT, No.11-2533 [Rec. Doc. 1-2] at ¶¶18-21; *Pinellas Marine Salvage* COMPLAINT, No.11-1987 [Rec. Doc. 1-2] ¶¶20-22; *Ditch v. Feinberg* COMPLAINT, No.13-6014 [Rec. Doc. 1-1] at ¶¶30-33; *Donovan v. Herman* COMPLAINT, No.19-12014 [Rec. Doc. 1-1] at ¶¶23-24.

[5] Donovan himself recognizes that: "The Fifth Circuit requires a motion to recuse to be filed at the earliest moment that a party has knowledge of facts that might cause disqualification." MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25908-1] at p.3; (*citing* Hirczy v. Hamilton, 190 Fed.Appx. 357, 360 (5th Cir. 2006)); *see also, e.g.,* Hill v. Schilling, 495 Fed.Appx. 480, 483-484 (5th Cir. 2012).

[6] *See* 28 U.S.C. §144 ("Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party…. The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists…. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith").

- Donovan has presented no extrajudicial sources of alleged "bias", but merely complains about certain rulings with which he apparently disagrees;[7]

- The rulings Donovan complains about have nothing to do with the Plaintiffs in the Donovan suits or their causes of action against Feinberg and the GCCF;

- The rulings Donovan complains about occurred years ago, without any timely motion to recuse being filed before now;[8] and,

- It's not even clear that Donovan, as the purported plaintiff in the *Donovan v. Herman* action, even has Article III standing.

For these reasons, and for the reasons stated further below, the Donovan Motions to Recuse should be denied.

**Standing**

As an initial matter, the undersigned questions the Article III standing of Mr. Donovan as the sole named plaintiff in the *Donovan v. Herman* action to invoke the subject-matter jurisdiction of the Court. It is well-settled, in this regard, that a plaintiff seeking to invoke the Court's jurisdiction must establish as a Constitutional minimum (1) a concrete and particularized injury-in-fact (2) fairly traceable to the alleged conduct of the defendant (3) that is likely to be redressed by a favorable judicial decision. *See generally* Spokeo v. Robins, 136 S.Ct. 1540, 1547 (2016);

---

[7] To prove recusal is warranted, the moving party must generally demonstrate that the alleged comment, action, or circumstance was of "extrajudicial" origin. Judicial rulings alone "almost never constitute a valid basis for a bias or partiality motion." Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." In re Andry, No.15-2478, 2019 WL 3533647 at **2-3 (E.D.La. Aug. 2, 2019) (en banc); *citing,* Liteky v. United States, 510 U.S. 540, 554-555 (1994); United States v. Grinnell Corp., 384 U.S. 563, 583 (1966); Andrade v. Chojnacki, 338 F.3d 448, 455 and 462 (5th Cir. 2003). *See also, e.g.,* In re Medronic, 601 F.Supp.2d 1120, 1128-1130 (D.Minn. 2009), *aff'd,* 623 F.3d 1200, 1208-1209 (8th Cir. 2010) (no basis to recuse an MDL judge under Section 455(a) due to his son's partnership in law firm representing the defendant in unrelated matters).

[8] *See, e.g.,* Hill v. Schilling, 495 Fed.Appx. at 483-484; Hirczy v. Hamilton, 190 Fed.Appx. at 360 (cited in Donovan's MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25908-1] at p.3) (a motion to recuse must be filed at the earliest moment that a party has knowledge of facts that might cause disqualification).

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). In this particular case, Donovan fails on all three counts. Nowhere in Mr. Donovan's Complaint does he identify a concrete and particularized injury-in-fact. It is doubtful, in this regard, that Mr. Donovan has standing to sue on behalf of an unidentified and undefined group of "clients" – as there is presumably no reason why such clients were prevented from bringing the action in their own name. *See* Kowalski v. Tesmer, 543 U.S. 125, 130 (2004) (third-party standing has only been extended when there is a hindrance to the possessor of the right's ability to protect his or her own interests). To the extent that Mr. Donovan himself is the true plaintiff-in-interest, there is no caselaw to undersigned's knowledge establishing a duty on the part of MDL Liaison Counsel to protect the fee interest of other attorneys who might have clients in the MDL.[9] But even assuming *arguendo* that Donovan could assert a claim on behalf of his unidentified clients, what Donovan claims, for himself and/or his clients, is a disgorgement of the undersigned's attorneys fees. Whether viewed as an absence of injury-in-fact or a lack of redress, the fact remains that neither Donovan nor his clients contributed, either directly or indirectly, to undersigned's fees. The contractual contingency fees earned by undersigned's firm were paid solely and exclusively by HHK's clients – none of which include the Donovan plaintiffs. The common benefit fees awarded to the undersigned and his firm – even putting aside issues of waiver, estoppel and *res judicata* – were paid by the MDL Defendants, based on benefits obtained by the BP Settlement Classes, the Halliburton/Transocean Settlement Class, and the States. To the best of undersigned's knowledge and understanding, Donovan's clients either released their claims *via* settlement agreements with the GCCF and were

---

[9] *See, e.g.,* STEPHEN J. HERMAN, Duties Owed by Appointed Counsel to MDL Litigants Whom They Do Not Formally Represent, 64 LOY. L. REV. 1, 22 fn.69 (2018); *citing,* Scheffler v. Adams and Reese, LLP, 2006-1774, pp. 14–16 (La. 2/22/2007), 950 So. 2d 641, 652–653 (as a matter of public policy, no cause of action will exist between co-counsel based on the theory that co-counsel has a fiduciary duty to protect one another's interests in a potential fee).

therefore excluded from these classes, or otherwise opted out of these settlement classes. If, therefore, as prayed, the undersigned's fees were disgorged, they would presumably be returned to Halliburton, Transcoean and BP – or, alternatively, perhaps, to HHK clients and/or the members of the BP and Halliburton/Transocean Settlement Classes. None of these fees would be "returned" to Donovan or his clients – who have suffered no injury-in-fact, and who, even if successful in their claims, would not be the beneficiaries of any relief or redress.

The plaintiffs in the *Salvesen, Pinellas Marine,* and *Ditch* actions can presumably satisfy Article III standing requirements vis-à-vis Feinberg and/or the GCCF, but have no real standing to complain about the issues that are raised in the Motions to Recuse.[10] First of all, none of these Plaintiffs make any claims against either Halliburton or Transocean.[11] Neither Transocean nor Halliburton is a party to their suits. So how could the Court's previous ownership of Transocean or Halliburton debt instruments – which were sold in June of 2010, *before* any of these plaintiffs filed suit – possibly inject any alleged "bias" into their cases and controversies? Similarly, with respect to the so-called "8-Step Plan" and attorneys' fees issues, it is the undersigned's understanding that the *Salvesen, Pinellas Marine,* and *Ditch* plaintiffs were not members of the BP Economic Settlement Class. There is no evidence of any alleged "favoritism or antagonism" with respect to either these plaintiffs, Mr. Feinberg, or the GCCF. None of these plaintiffs, to undersigned's knowledge, contributed either directly or indirectly to any common benefit fees.

---

[10] It appears that these plaintiffs were not treated as B1 Plaintiffs for Pre-Trial Order No. 60, 64 or 65 purposes. [*See, e.g.,* Rec. Docs. 23649-1, 23649-2, 23649-3, 24558-3 and 24558-4] If, of course, the Donovan Plaintiffs were required to, but did not, comply with these Pre-Trial Orders, then they presumably have no remaining justiciable cases or controversies at this point, and no standing to seek recusal.

[11] *See generally* MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25908-1] at pp.1-2; *see, in particular, Salvesen v. Feinberg* COMPLAINT, No.11-2533 [Rec. Doc. 1-2] at ¶¶18-21; *Pinellas Marine Salvage* COMPLAINT, No.11-1987 [Rec. Doc. 1-2] ¶¶20-22; *Ditch v. Feinberg* COMPLAINT, No.13-6014 [Rec. Doc. 1-1] at ¶¶30-33; *Donovan v. Herman* COMPLAINT, No.19-12014 [Rec. Doc. 1-1] at ¶¶23-24.

And neither the Court nor the PSC, to undersigned's knowledge, has done anything to compromise or prejudice the viability or merits of their claims.[12]

**The U.S. Fifth Circuit Already Rejected the Argument that Previously Owned Debt Instruments Constituted a "Financial Interest" in Defendants Transocean and Halliburton**

At the commencement of this litigation, Cameron filed a Motion to Recuse on the basis that the ownership of Transocean and Halliburton bonds constituted a "financial interest" in the defendants under 28 U.S.C. §455(b).  The motion was denied, and the U.S. Fifth Circuit affirmed.  In re Cameron, 393 Fed.Appx. 133, 135 (5th Cir. 2010); *citing* Judicial Committee on Codes of Conduct, ADVISORY OPINION NO. 101 (June 2009) ("Debt interests are not considered to give rise to a financial interest in the debtor that issued the debt security because the debt obligation does not convey an ownership interest in the issuer").

Donovan seems to suggest that the Court might nevertheless be recused if such bonds could be considered "financial interests in the subject matter in controversy" or "could be substantially affected by the proceeding."[13]  Yet, Donovan makes absolutely no factual, legal or evidentiary showing that such is the case.  Indeed, the Court voluntarily divested himself of such instruments, though not required to, out of an abundance of caution, to avoid even an appearance of bias, back in June of 2010[14] – years before the Donovan suits were even filed.  Moreover, and as noted *supra,* the claims against the Transocean and Halliburton entities in this MDL have been almost entirely, if not entirely, resolved;[15] and neither Halliburton nor Transocean is a party to any of the Donovan actions or claims.

---

[12] Again, the undersigned assumes that these civil actions are still on file, based on their individual Case No. Dockets and their apparent exclusion from the PTO 60, 64, 65 process.

[13] MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25908-1] at pp.7-8.

[14] In re Cameron, 393 Fed.Appx. at 134.

[15] *See, e.g.,* ORDER AND REASONS [Rec. Doc. 5446] (Jan. 26, 2012) (confirming that BP agreed to indemnify Transocean for compensatory damages); ORDER AND REASONS [Rec. Doc. 5493] (Jan. 31, 2012) (confirming that BP

**Transocean and Halliburton Are Not Parties to the Donovan Actions**

The sole defendants named in the *Salvesen, Pinellas Marine,* and *Ditch* actions are Kenneth R. Fienberg, the law firm of Feinberg & Rozen, LLP, the Gulf Coast Claims Facility, and William G. Green, Jr.[16] The sole defendant named in the *Donovan v. Herman* action is the undersigned, Stephen J. Herman.[17] Neither Halliburton nor Transocean are named as a defendant in any of the Donovan cases.

**Any Motion to Recuse Based on the Previous Bond Ownership Would Be Untimely**

Mr. Donovan himself recognizes that a motion to recuse must be filed "at the earliest moment that a party has knowledge of facts that might cause disqualification." MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25908-1] at p.3; (*citing* Hirczy v. Hamilton, 190 Fed.Appx. 357, 360 (5th Cir. 2006)); *see also, e.g.,* Hill v. Schilling, 495 Fed.Appx. 480, 483-484 (5th Cir. 2012). In this particular instance, the U.S. Fifth Circuit issued the decision upon which Donovan relies in July of 2010. It is now more than nine years later. If Mr. Donovan or his clients believed that the previous ownership of Transocean or Halliburton bonds somehow constituted an alleged "financial interest in the subject matter in controversy" or "could be substantially affected

---

agreed to indemnify Halliburton for compensatory damages); In re Oil Spill by the Oil Rig Deepwater Horizon, 910 F.Supp.2d 891 (E.D.La. 2012), *aff'd,* 739 F.3d 790 (5th Cir. 2014), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 734 (2014), *and* 295 F.R.D. 112 (E.D.La. 2013) (approving BP Settlements that release Halliburton and Transocean from claims for compensatory damages); CONSENT DECREE [Rec. Doc. 8608] (Feb. 19, 2013) (resolving the claims of the United States against Transocean); In re Oil Spill by the Oil Rig Deepwater Horizon, 21 F.Supp.3d 657 (E.D.La. 2014) (Phase One Trial Findings) (concluding that, while Transocean and Halliburton were both negligent, neither was guilty of reckless conduct); ORDER OF DISMISSAL OF STATE CLAIMS AGAINST TRANSOCEAN [Rec. Doc. 15517] (Oct. 29, 2015); ORDER AND REASONS [Rec. Doc. 22252] (Feb. 15, 2017) (approving class settlements releasing Halliburton and Transocean from punitive damage and assigned claims).

[16] *See generally* MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25908-1] at pp.1-2; *see, in particular, Salvesen v. Feinberg* COMPLAINT, No.11-2533 [Rec. Doc. 1-2] at ¶¶18-21; *Pinellas Marine Salvage* COMPLAINT, No.11-1987 [Rec. Doc. 1-2] ¶¶20-22; *Ditch v. Feinberg* COMPLAINT, No.13-6014 [Rec. Doc. 1-1] at ¶¶30-33.

[17] *Donovan v. Herman* COMPLAINT, No.19-12014 [Rec. Doc. 1-1] at ¶¶23-24.

by the proceeding," such evidence and argument should have been presented shortly after the Donovan actions were first filed in 2011.

**The Motion to Recuse under Section 455(a) is Also Untimely**

Donovan's hodge-podge of complaints relate to conduct and/or rulings from 2010 (original JPML Transfer Order), 2010-2011 (filing of the B1 Complaint and coordination between the MDL and the GCCF), 2012-2014 (processing of claims in the BP Economic Class Settlement), 2016 (Order Approving Aggregate Common Benefit Fees), 2017 (Order Adopting the Special Master's Recommended Common Benefit Fee Allocation), and 2018 (Order Denying Donovan's Motion to Request this Court to Place on the Public Record the Total Amount and Source of Compensation, From All Sources, Paid to All Members of the PSC, et al).[18]  Even assuming *arguendo* that any of these decisions or proceedings would cause a reasonable person to question the Court's impartiality, (which is denied), such motion should have been brought long before July of 2019.

**Donovan Has Made Absolutely No Showing that a Reasonable Person Would Have Reason to Question the Court's Impartiality in this Matter**

A party to a proceeding moving for recusal on the basis of an alleged personal bias or prejudice must submit a timely and sufficient affidavit setting forth the facts and reasons for the belief that bias or prejudice exists accompanied by a certificate of counsel stating that it is made in good faith. *See* 28 U.S.C. §144.  To prove that recusal is warranted, the moving party must generally demonstrate that the alleged comment, action, or circumstance was of "extrajudicial" origin; judicial rulings alone "almost never constitute a valid basis for a bias or partiality motion";

---

[18] *See generally* MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25927-1] at pp.9-20; MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25908-1] at pp.9-20.

opinions formed by the judge on the basis of facts introduced or events occurring in the course of the proceedings "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 554-555 (1994); United States v. Grinnell Corp., 384 U.S. 563, 583 (1966); Andrade v. Chojnacki, 338 F.3d 448, 455 and 462 (5th Cir. 2003); In re Andry, No.15-2478, 2019 WL 3533647 at \*\*2-3 (E.D.La. Aug. 2, 2019) (en banc).

In this case, neither Donovan nor his clients have submitted an affidavit, nor a certification of good faith. Nor does Donovan point to any "extrajudicial" sources to support his claims of alleged "deep-seated favoritism or antagonism" that would supposedly make it impossible for the Court to be fair and impartial in the Donovan cases. There is absolutely no basis for recusal simply because, over the past nine years, the Court has issued a handful of Orders with which Donovan apparently disagrees.

In *Medtronic,* for example, the Court found that there was no basis to recuse an MDL judge under Section 455(a) due to his son's partnership in a law firm representing the defendant in unrelated matters. In re Medronic, 601 F.Supp.2d 1120, 1128-1130 (D.Minn. 2009), *aff'd,* 623 F.3d 1200, 1208-1209 (8th Cir. 2010). If there was no basis to recuse in that case under 18 U.S.C. §455(a), there is certainly no basis here.

*Facilitation of Closer Coordination with Kenneth Feinberg's Administration of the BP Compensation Fund*

It is difficult to tell what Donovan is complaining about – or how it shows some type of alleged "bias" or "partiality".

In any event, Donovan is simply incorrect in stating that the B1 Master Complaint "circumvented the OPA."[19] Claims under the Oil Pollution Act were expressly asserted in the B1 Master Complaint,[20] were settled in the BP Economic Class Settlement,[21] and were otherwise litigated through a series of OPA Test Cases.[22]

Donovan seems to ignore the fact that the Court issued an injunction against Mr. Feinberg,[23] and requested further briefing from the parties regarding, among other things, the efficacy of the GCCF Release.[24]

Donovan seems to also ignore the fact that BP closed the GCCF back in March of 2012.[25]

Given BP's far-reaching and widely-publicized attempts to back out of the Economic Class Settlement, it seems incredible that Donovan would complain that the PSC entered into an agreement which allegedly required "a heightened and vague proof of causation between his or her damages and the BP oil well blowout incident."[26] *See generally* In re Deepwater Horizon, 744 F.3d 370 (5th Cir. 2014) ("Deepwater Horizon III"), *rehearing denied,* 753 F.3d 509 (5th Cir. 2014), *rehearing en banc denied,* 753 F.3d 516 (5th Cir. 2014).

Nevertheless, and in any event, most of these complaints relate to the supposed conduct of the parties, and do not in any way evidence any type of "bias" on the part of the Court.

---

[19] MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25927-1] at p.10.

[20] *See* B1 MASTER COMPLAINT [Rec. Doc. 879] at ¶¶602-612.

[21] *See, e.g.,* SETTLEMENT AGREEMENT [Rec. Doc. 6276-1] at Recital C and ¶¶ 4.2.5, 10.2, 36.1, 38.97, 38.98.

[22] *See, e.g.,* SCHEDULING ORDER FOR OPA TEST CASE TRIALS [Rec. Doc. 12972] (June 3, 2014).

[23] *See* ORDER AND REASONS [Rec. Doc. 1098] (Feb. 2, 2011).

[24] The PSC filed its Supplemental Brief challenging the GCCF Releases on Feb. 18, 2011 [Rec. Doc. 1318].

[25] *See* TRANSITION ORDER [Rec. Doc. 5988] (March 8, 2012).

[26] MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25927-1] at pp.10-11.

*The JPML's Selection of the Transferee Judge*

It is difficult to see how the Panel's decision to transfer and consolidate the MDL in the Eastern District of Louisiana somehow supposedly evidences a "deep-seated favoritism or antagonism" on the part of the Transferee Court (?)

*Settlement Program Supervision*

To the best of undersigned's knowledge and understanding, none of Donovan's clients participated in the BP Economic Class Settlement Program, and were completely unaffected by the Program's processing of claims. Nevertheless, and in any event, the Court, at the time the November 2014 Order was issued, was responding to an unprecedented and bad faith attempt by BP to back out of the Economic Settlement.[27] BP was attacking, and attempting to remove, the Claims Administrator, who had simply been attempting to ensure, prior to the Fairness Hearing, and with the knowledge and assistance of the parties, that the processing of claims by the Settlement Program was workable and consistent with the extremely complex provisions and requirements of the 1000-plus page Settlement Agreement. This had nothing to do with the ultimate fairness, reasonableness, or adequacy of the settlement itself. (Indeed, the Economic Settlement provided such levels of compensation to the participating class members that BP spent three years in intensive and contentious litigation, public relations efforts, and appeals, trying to extricate itself from the settlement.) The Court demonstrates no "deep-seated favoritism or antagonism" with respect to the Donovan Plaintiffs and their cases against Feinberg in correctly

---

[27] *See* ORDER DENYING BP'S MOTION TO REMOVE THE CLAIMS ADMINISTRATOR [Rec. Doc. 13635] (Nov. 14, 2014) (cited by Donovan in his Memorandum in Support of Motion to Recuse, at p.12). *See generally, e.g.,* In re Deepwater Horizon, 739 F.3d 790 (5th Cir. 2014) ("Deepwater Horizon II"), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 754 (2014).

concluding, based on the record, that "there is no evidence that the Claims Administrator acted improperly in this regard."[28]

*Approval of Class Counsel and Other Common Benefit Fees*

As noted, the common benefit fees in this case were paid – over and above the settlement amounts received by the States and the various Settlement Class Members – by the settling MDL Defendants, BP, Halliburton and Transocean. Neither Donovan nor his clients contributed to class counsel or other common benefit fees in any way.

Indeed, to the best of undersigned's knowledge and understanding, Donovan's clients did not participate in the BP Settlements or the Halliburton/Transocean Settlement, and hence could not even be said to have contributed to the class counsel fees *indirectly.*

Putting the question of standing aside, the Donovan Plaintiffs could have, but did not, object to the BP Economic Settlement. The Donovan Plaintiffs could have, but did not, object to the Halliburton/Transocean Settlement. The Donovan Plaintiffs could have, but did not, object to the aggregate Fee Petition. The Donovan Plaintiffs could have, but did not, object to the Common Benefit Fee Allocation.

The Court's approval of the class settlements and the common benefit fees associated therewith were based on comprehensive bodies of evidence, including the extensive analysis of nationally recognized experts, and supported with extensive factual findings and legal precedent.[29]

---

[28] ORDER DENYING BP'S MOTION TO REMOVE THE CLAIMS ADMINISTRATOR, at p.3 (quoted by Donovan in his Memorandum in Support of Motion to Recuse, at p.12).

[29] *See generally* In re Oil Spill by the Oil Rig Deepwater Horizon, 910 F.Supp.2d 891 (E.D.La. 2012) (Order and Reasons approving Economic & Property Damages Class Settlement), *aff'd,* 739 F.3d 790 (5th Cir. 2014), *rehearing en banc denied,* 756 F.3d 320 (5th Cir. 2014), *cert. denied,* 135 S.Ct. 734 (2014); ORDER AND REASONS (Approving Aggregate Common Benefit Fees) [Rec. Doc. 21839] (Oct. 25, 2016); ORDER AND REASONS (Approving Halliburton/Transocean Settlement) [Rec. Doc. 22252] (Feb. 15, 2017).

*Approval of Fee Allocation to Mikal Watts*

First, Donovan ignores the fact that Mr. Watts was *acquitted* by a federal jury after a full trial on the merits in the Southern District of Mississippi.

Secondly, the Court was simply entering judgment, per Rule 53, on a Recommendation of the Special Master – *to which there were no objections.* If none of the 93 other Common Benefit Firms who were competing for the aggregate award objected to the allocation to Mr. Watts, how could the Court's approval of the recommended allocation possibly evidence some type of alleged "bias" – particularly with respect to Donovan, who performed no common benefit work and did not himself make a claim for such fees or object to the fee allocation, and/or the Salvesen, Pinellas Marine, and Ditch Plaintiffs, who are pursuing claims principally against Mr. Feinberg and the GCCF?

*Professional Objectors*

Again, to undersigned counsel's knowledge, the Donovan Plaintiffs did not participate in – nor object to – the Economic & Property Damages Settlement. Nevertheless, and in any event, the evidentiary record before the Court established that some of the objectors to the settlement were indeed "professional objectors" who had been labelled as such by other Courts in previous cases and had been sanctioned for their conduct in the past.[30]

*The "8-Step Plan"*

With apologizes to the Court, undersigned counsel simply cannot understand the mechanics of Mr. Donovan's proffered conspiracy theory well enough to coherently or concisely

---

[30] *See, e.g.,* PALMER ORDERS [Rec. Doc. 7727-11]. (*See also generally* SUBMISSION BY CLASS COUNSEL ON REMAND OF MEDICAL SETTLEMENT (with Incorporated Motion to Strike, Motion to Dismiss, and Motion for Sanctions) [Rec. Doc. 11869] (Nov. 19, 2013))

address.  Assuming, however, that the Donovan Plaintiffs complied to the extent necessary with Pre-Trial Order Nos. 60, 64 and 65, it would appear that the *Salvesen, Pinellas Marine,* and *Ditch* actions are still pending, and the plaintiffs' substantive rights would not seem to have been compromised or prejudiced by the alleged "collusion" in any material way.[31]

*Stay on Discovery in One-Off Cases*

To any objective observer, the Court has successfully shepherded an enormous number of disparate and complex claims, resolving over 99% of what may be the largest case in American history in less than one-third of the time it took to conclude the much smaller and more contained *Exxon Valdez* litigation.  To accomplish this, the Court is required to prioritize the efforts and resources of the parties in an orderly fashion, with an eye towards resolving the issues and claims that will have the greatest impact in advancing the MDL as a whole.  One unfortunate consequence of this – in virtually all MDLs and other large complex cases – is that a few of the more unique or highly individualized claims are sometimes assigned a lower priority.  Nevertheless, it is well-settled that the District Court enjoys a considerable amount of discretion in managing his or her docket – which discretion is even broader for the Transferee Court in Multi-District Litigation. *See, e.g.,* In re Taxotere, No.16-2740, 2019 WL 158377 at *1 (E.D.La. Jan. 10, 2019) (*quoting* In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1229 (9th Cir. 2006)) ("Multidistrict litigation is a 'special breed of complex litigation where the whole is bigger than the sum of its parts,' and the district court 'needs to have broad discretion to administer the proceeding as a whole'").  The fact that case-specific discovery in the fairly unique *Salvesen,*

---

[31] As noted *supra,* the undersigned assumes that these civil actions are still on file, based on their individual Case No. Dockets and their apparent exclusion from the PTO 60, 64, 65 process. [*See, e.g.,* Rec. Docs. 23649-1, 23649-2, 23649-3, 24558-3 and 24558-4]  If, of course, the Donovan Plaintiffs were required to, but did not, comply with these Pre-Trial Orders, then they presumably have no remaining justiciable cases or controversies at this point, and no standing to seek recusal.

*Pinellas Marine,* and *Ditch* actions has not yet commenced is simply an administrative decision which does not in any way display an allegedly "deep-seated favoritism or antagonism" that would make fair judgment impossible in the Donovan cases.

*Alleged Lack of "Transparency" and "Accountability"*

It is difficult to fully respond to the somewhat incoherent and inaccurate characterization by Donovan of the GCCF and its transition – by BP – into what would become the Court-Supervised Settlement Program.

But it seems perhaps worth noting that the Economic & Property Damages Settlement did, in fact, outside of the $2.3 billion Seafood Fund, have no cap or limit.[32]  Indeed, as noted, the payouts to the class exceeded BP's expectations to such an extent that BP actively, and aggressively, fought to shut down the Settlement Program and back out of the settlement.

It also seems worth noting that BP did not, in fact, make a business decision to pay a total amount of $20 billion to compensate all victims.[33]  The highly publicized "trust" was largely a pass-through, was never limited – nor otherwise limited BP's liability – to only $20 billion, and could be used by BP to cover response costs, natural resource damages, and other Spill-related judgments or obligations.[34]

---

[32] *See* MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25908-1] at p.19 (claiming that "the MDL 2179 Court and PSC intentionally misled the plaintiffs by telling them that 'the settlement has no cap or limit'").

[33] *See* MEMORANDUM IN SUPPORT OF MOTION TO RECUSE [Rec. Doc. 25908-1] at p.18 (claiming that BP, in mid-2010, "made the business decision to pay a total amount of US$20 billion to compensate all the BP oil well blowout victims").

[34] *See generally* DEEPWATER HORIZON OIL SPILL TRUST (Aug. 6, 2010) [Rec. Doc. 912-8].

The nature, number, and status of the Settlement Program Claims was extremely transparent, with the Claims Administrator filing formal Monthly Status Reports into the public court record on PACER,[35] and posting daily updates on the Settlement Website.[36]

Interestingly, Mr. Donovan seems to complain both about the conduct of the GCCF and simultaneously about the fact that the GCCF was replaced by the Court-Supervised Settlement Program. Putting aside the inherent contradiction, none of these decisions were made by the Court, nor evidence any type of alleged "antagonism" toward the Donovan Plaintiffs.

As to the so-called "accountability" issue, it's difficult to imagine how Mr. Donovan or his clients would have any standing or interest to compel disclosure of the contractual contingency fees paid by the undersigned's clients to the undersigned's firm under private retainer agreements. It is notable, however, that the Court imposed a cap on private contractual contingency fees.[37] With respect to the common benefit fees, the agreement with BP was filed publicly as an exhibit to the Settlement Agreement,[38] and was publicly addressed in advance of final class settlement approval.[39] The Fee Petition,[40] and ruling thereon,[41] were both matters of public record. As was the Fee Committee's Recommendation,[42] and the Special Master's Report.[43]

---

[35] *See, e.g.,* STATUS REPORT NO. 59 (Final Report) (July 31, 2018) [Rec. Doc. 24717].

[36] *See* http://www.deepwaterhorizoneconomicsettlement.com/docs/statistics.pdf (Sept. 10, 2019).

[37] *See* ORDER (June 15, 2012) [Rec. Doc. 6684].

[38] Rec. Doc. 6276-46.

[39] *See* REPLY BRIEF (Oct. 22, 2012) [Rec. Doc. 7727] at p.62; *citing* KLONOFF SUPPLEMENTAL REPORT [Rec. Doc. 7727-4] at ¶¶ 30-37, 52-55.

[40] Rec. Doc. 21098.

[41] ORDER AND REASONS (Oct. 25, 2016) [Rec. Doc. 21849].

[42] Rec. Doc. 22628.

[43] Rec. Doc. 23574-1.

The Court's rulings in this litigation have been nothing more than reasonable, appropriate, and impartial judicial determinations formed by the Transferee Judge on the basis of facts introduced and events occurring over the course of the MDL proceedings.

There is absolutely no factual or evidentiary basis from which a reasonable and objective person could conclude that the Court has an allegedly "deep-seated favoritism or antagonism that would make fair judgment impossible" in the Donovan cases.

### Conclusion

For the above and foregoing reasons, the Donovan Plaintiffs' motions to recuse should be denied.

This 10th day of September, 2019.

Respectfully submitted,

/s/ Stephen J. Herman
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024
E-Mail: sherman@hhklawfirm.com

*Plaintiffs' Co-Liaison Counsel and*
*Defendant in Donovan v. Herman*

**Certificate of Service**

I HEREBY CERTIFY that the above and foregoing Opposition will be filed into the record using the Court's ECF electronic filing system, will be served *via* E-Mail upon Mr. Donovan, and will be served upon All Counsel *via* File & ServeXpress in accordance with Pre-Trial Order No. 12, this 10th day of September, 2019.

                                          /s/ Stephen J. Herman