**EXECUTION VERSION**

**MEDICAL SETTLEMENT
TRUST AGREEMENT**

Among

**BP Exploration & Production Inc.
and
BP America Production Company,**
as Settlors,

**MEDICAL BENEFITS CLASS COUNSEL,**
as Class Counsel,

**Garretson Firm Resolution Group, Inc., D/B/A Garretson Resolution Group,**
as Claims Administrator,

**Matthew L. Garretson,**
as Trustee,

and

**J.P. Morgan Trust Company of Delaware,**
as Directed Trustee

Pursuant to
**MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT
dated April 18, 2012 and as amended May 1, 2012**

**Dated as of May 4, 2012**

## MEDICAL SETTLEMENT TRUST AGREEMENT

This MEDICAL SETTLEMENT TRUST AGREEMENT is: (1) entered into pursuant to the MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT, originally filed in the United States District Court for the Eastern District of Louisiana on April 18, 2012 in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (Rec. Doc. 6273-1), as amended on May 1, 2012, and as may be further amended from time to time ("MEDICAL SETTLEMENT AGREEMENT"); (2) made by and among BP Exploration & Production Inc. and BP America Production Company (collectively "BP") as Settlors ("Settlors"); MEDICAL BENEFITS CLASS COUNSEL; the Garretson Firm Resolution Group, Inc. d/b/a Garretson Resolution Group (as CLAIMS ADMINISTRATOR); Matthew L. Garretson as individual trustee (the "Trustee"); and J.P. Morgan Trust Company of Delaware as co-trustee (the "Directed Trustee") (BP, MEDICAL BENEFITS CLASS COUNSEL, the CLAIMS ADMINISTRATOR, Trustee, and Directed Trustee, collectively the "Trust Agreement Parties"); and (3) made effective on the date of its execution by the Trust Agreement Parties. Any terms in capital letters have the meanings set forth in the MEDICAL SETTLEMENT AGREEMENT. Any terms that have initial capital letters have the meanings set forth in this MEDICAL SETTLEMENT TRUST AGREEMENT.

## RECITALS

WHEREAS, on April 16, 2012, certain MEDICAL BENEFITS CLASS REPRESENTATIVES filed with the COURT a MEDICAL CLASS ACTION COMPLAINT against BP in the action entitled *Plaisance, et al. v. BP Exploration & Production Inc., et al.*, as more particularly described in the MEDICAL SETTLEMENT AGREEMENT;

WHEREAS, BP and the MEDICAL BENEFITS CLASS REPRESENTATIVES, individually and on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS, by and through MEDICAL BENEFITS CLASS COUNSEL, entered into the MEDICAL SETTLEMENT AGREEMENT for the purpose of settling all RELEASED CLAIMS against the RELEASED PARTIES, which include BP;

WHEREAS, this MEDICAL SETTLEMENT TRUST AGREEMENT is intended to be consistent with, and shall be subject to, the terms and conditions of the MEDICAL SETTLEMENT AGREEMENT, originally filed with the COURT on April 18, 2012, as amended on May 1, 2012, and, in the case of any conflict between such agreements, the MEDICAL SETTLEMENT AGREEMENT shall control;

WHEREAS, on May 2, 2012, the COURT entered a PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER approving the MEDICAL SETTLEMENT AGREEMENT and this MEDICAL SETTLEMENT TRUST AGREEMENT;

WHEREAS, BP, MEDICAL BENEFITS CLASS COUNSEL, the CLAIMS ADMINISTRATOR, the Trustee, and the Directed Trustee hereby create the MEDICAL SETTLEMENT TRUST for the benefit of the MEDICAL BENEFITS SETTLEMENT CLASS, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and the MEDICAL BENEFITS CLASS REPRESENTATIVES on the terms and conditions set forth in this

MEDICAL SETTLEMENT TRUST AGREEMENT, in accordance with the requirements of the MEDICAL SETTLEMENT AGREEMENT; and

WHEREAS, the MEDICAL SETTLEMENT TRUST is intended to meet the requirements of a qualified settlement fund within the meaning of section 468B of the Internal Revenue Code of 1986, as amended from time to time (the "Code"), and section 1.468B-1(c) of the Treasury Regulations promulgated thereunder.

NOW, THEREFORE, in consideration of the foregoing recitals, which are expressly incorporated into this MEDICAL SETTLEMENT TRUST AGREEMENT and made a part hereof, and in consideration of the agreements, promises, and mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to and on the terms and conditions set forth herein, BP, MEDICAL BENEFITS CLASS COUNSEL, the CLAIMS ADMINISTRATOR, the Trustee, and the Directed Trustee hereby agree as follows:

ARTICLE 1.
ESTABLISHMENT OF MEDICAL SETTLEMENT TRUST

1.1     Creation and Name.  BP, MEDICAL BENEFITS CLASS COUNSEL, the CLAIMS ADMINISTRATOR, the Trustee, and the Directed Trustee hereby create a trust known as the MEDICAL SETTLEMENT TRUST.  The MEDICAL SETTLEMENT TRUST shall be managed by the Trustee and the Directed Trustee, subject to the terms and conditions set forth in this MEDICAL SETTLEMENT TRUST AGREEMENT and the MEDICAL SETTLEMENT AGREEMENT.

1.2     Purpose.  The purpose of the MEDICAL SETTLEMENT TRUST is to establish a mechanism to pay all SETTLEMENT COSTS in accordance with the terms of the MEDICAL SETTLEMENT AGREEMENT and this MEDICAL SETTLEMENT TRUST AGREEMENT, and as required by the COURT.

1.3     Creation of Funds.  The MEDICAL SETTLEMENT TRUST shall be comprised of four FUNDS, subject to and to be used solely for such purposes as are set forth in the MEDICAL SETTLEMENT AGREEMENT:  the MEDICAL SETTLEMENT TRUST ACCOUNT, the GULF REGION HEALTH OUTREACH PROJECTS FUND, the GENERAL MEDICAL CLAIMS FUND, and the ADMINISTRATIVE FUND.  Each of these FUNDS shall use the same Federal Employer Identification Number as the MEDICAL SETTLEMENT TRUST.

1.4     Transfer of Assets; Trust Estate.  BP shall transfer, or cause to be transferred (including by the DWH TRUST), to the FUNDS of the MEDICAL SETTLEMENT TRUST assets sufficient to provide for the payment of all SETTLEMENT COSTS in accordance with and subject to the terms of the MEDICAL SETTLEMENT AGREEMENT.  All assets received by the MEDICAL SETTLEMENT TRUST and any earnings thereon shall be referred to herein as the "Trust Estate," and shall be held in the FUNDS, and administered and disbursed under the terms of this MEDICAL SETTLEMENT TRUST AGREEMENT and the MEDICAL SETTLEMENT AGREEMENT.

1.5     Acceptance of Assets and Assumption of Liabilities.  To further the purposes of the MEDICAL SETTLEMENT AGREEMENT, the Trustee and the Directed Trustee agree to accept the assets that BP shall transfer, or cause to be transferred, to the MEDICAL SETTLEMENT TRUST, and any earnings thereon, and the Trustee assumes all liability and responsibility for the administration and distribution of the Trust Estate, in accordance with and subject to the terms of this MEDICAL SETTLEMENT TRUST AGREEMENT and the MEDICAL SETTLEMENT AGREEMENT.

1.6     Distributions from Trust.  The Trustee shall make distributions as directed by the CLAIMS ADMINISTRATOR from the FUNDS, and the Directed Trustee (pursuant to Section 2.5) shall make distributions as directed by the CLAIMS ADMINISTRATOR from the MEDICAL SETTLEMENT TRUST ACCOUNT to the GULF REGION HEALTH OUTREACH PROJECTS FUND, the GENERAL MEDICAL CLAIMS FUND, and the ADMINISTRATIVE FUND, in accordance with the MEDICAL SETTLEMENT AGREEMENT or as otherwise may be required by the COURT.

1.7     Qualified Settlement Fund.  The MEDICAL SETTLEMENT TRUST is structured and shall be operated in a manner so that it qualifies as a "qualified settlement fund" under section 468B of the Code and Treasury Regulation section 1.468B-1(c).  Specifically, (1) the COURT'S PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER has approved the establishment of the MEDICAL SETTLEMENT TRUST under the terms and conditions of this MEDICAL SETTLEMENT TRUST AGREEMENT and the MEDICAL SETTLEMENT AGREEMENT; (2) the MEDICAL SETTLEMENT TRUST is subject to the continuing jurisdiction and supervision of the COURT; (3) the MEDICAL SETTLEMENT TRUST is established to resolve or satisfy claims of tort or violation of law arising out of the *DEEPWATER HORIZON* INCIDENT and settled pursuant to the MEDICAL SETTLEMENT AGREEMENT; and (4) the MEDICAL SETTLEMENT TRUST is a trust under Delaware law, and its assets are, and will be, segregated from the general assets of BP and the BP ENTITIES and deposited herein.  The MEDICAL SETTLEMENT TRUST is comprised of the FUNDS, which together constitute a single qualified settlement fund.  Consistent with the terms of the MEDICAL SETTLEMENT AGREEMENT and the MEDICAL SETTLEMENT TRUST AGREEMENT, the Trustee and the Directed Trustee (subject to the provisions of Section 2.5 below) shall take any action or cause the MEDICAL SETTLEMENT TRUST to take any action necessary to create and maintain its status as a qualified settlement fund, and the Trustee and the Directed Trustee (subject to the provisions of Section 2.5 below) agree not to take any action that will adversely affect the qualification of the MEDICAL SETTLEMENT TRUST as a qualified settlement fund.

## ARTICLE 2.
## POWERS OF TRUST ADMINISTRATION

2.1     Trustee.  The Trustee and the Directed Trustee are and shall act as the fiduciaries of the MEDICAL SETTLEMENT TRUST in accordance with the provisions of this MEDICAL SETTLEMENT TRUST AGREEMENT, the MEDICAL SETTLEMENT AGREEMENT, and the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER.  The Trustee and the Directed Trustee shall at all times administer the MEDICAL SETTLEMENT TRUST and the Trust Estate in accordance with the purpose set forth in Section 1.2 above.  Subject to and

limited by this MEDICAL SETTLEMENT TRUST AGREEMENT, the MEDICAL SETTLEMENT AGREEMENT, and the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, the Trustee shall have the power to take any and all actions that, in the Trustee's discretion, to be exercised in conjunction with BP and MEDICAL BENEFITS CLASS COUNSEL where required by this MEDICAL SETTLEMENT TRUST AGREEMENT or the MEDICAL SETTLEMENT AGREEMENT, as the Trustee determines are necessary and/or appropriate to fulfill the purpose of the MEDICAL SETTLEMENT TRUST, including each power expressly granted in Section 2.4 below, all powers reasonably incidental thereto, and any trust power now or hereafter permitted under the law governing the MEDICAL SETTLEMENT TRUST pursuant to Section 7.8 below.  The Trustee and the Directed Trustee (subject to the provisions of Section 2.5 below) both agree not to take any action that will adversely affect the qualification of the MEDICAL SETTLEMENT TRUST as a qualified settlement fund or to violate the terms of the MEDICAL SETTLEMENT AGREEMENT.

  2.2 <u>Approval</u>.  Except as expressly provided in this MEDICAL SETTLEMENT TRUST AGREEMENT, the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, the MEDICAL SETTLEMENT AGREEMENT, or as otherwise required by the COURT or applicable law, the Trustee and the Directed Trustee need not obtain an order or the approval of the COURT in the exercise of their duties to implement and execute this MEDICAL SETTLEMENT TRUST AGREEMENT pursuant to the MEDICAL SETTLEMENT AGREEMENT.

  2.3 <u>Paying Agent Agreement</u>.  The Trustee and the Directed Trustee shall enter into a PAYING AGENT AGREEMENT, as described in the MEDICAL SETTLEMENT AGREEMENT, in form and substance reasonably satisfactory to BP and MEDICAL BENEFITS CLASS COUNSEL, and approved by the COURT, pursuant to which a federally insured depository institution, approved by BP and MEDICAL BENEFITS CLASS COUNSEL, will serve as escrow agent and LEAD PAYING AGENT to make payments from the GENERAL MEDICAL CLAIMS FUND as compensation for SPECIFIED PHYSICAL CONDITIONS, as provided in Section VI and Exhibit 8 of the MEDICAL SETTLEMENT AGREEMENT.

  2.4 <u>Powers of the Trustee</u>.  Without limiting the generality of Section 2.1 above, and except as limited herein and in the MEDICAL SETTLEMENT AGREEMENT, the powers of the Trustee shall include the following (and any expenditures authorized pursuant to this Section 2.4 shall be SETTLEMENT COSTS):

    (A) To receive, hold, and administer the Trust Estate in the FUNDS;

    (B) To invest and reinvest the Trust Estate in the FUNDS in accordance with the terms of Section XXII.L of the MEDICAL SETTLEMENT AGREEMENT, and Sections 4.1 and 4.2 below;

    (C) To make distributions from the FUNDS pursuant to Section 1.6 above;

    (D) To direct the Directed Trustee to act as authorized in Section 2.5 below, provided, however, that the Trustee may delegate this authority to the CLAIMS ADMINISTRATOR;

(E) To engage such legal, financial, accounting, investment, auditing, and other consultants and agents, as permitted by and subject to any requirements set forth in the MEDICAL SETTLEMENT AGREEMENT, or as determined by the Trustee, after consultation with BP and MEDICAL BENEFITS CLASS COUNSEL, to be necessary for the proper administration of the MEDICAL SETTLEMENT TRUST and consistent with the terms of the MEDICAL SETTLEMENT AGREEMENT, with the compensation for such consultants and agents to be paid from the ADMINISTRATIVE FUND;

(F) To indemnify any person or entity entitled to indemnification under Section 3.6 below, with any payments to or on behalf of an Indemnitee to be paid from the ADMINISTRATIVE FUND;

(G) To enter into such other arrangements with third parties as permitted by and subject to any requirements set forth in the MEDICAL SETTLEMENT AGREEMENT, or as are determined by the Trustee to be necessary in carrying out the purpose of the MEDICAL SETTLEMENT TRUST, consistent with terms of the MEDICAL SETTLEMENT AGREEMENT, and to compensate such third parties for their services from the ADMINISTRATIVE FUND;

(H) To delegate any or all of the discretionary power and authority herein conferred at any time with respect to the investment of the Trust Estate to any one or more individual or institutional advisors or investment managers determined by the Trustee, and as approved by BP and MEDICAL BENEFITS CLASS COUNSEL, to have demonstrated the experience and qualifications necessary for the responsible exercise of such discretion, and to compensate such advisors and managers for their services from the ADMINISTRATIVE FUND;

(I) To obtain and pay the premiums for such insurance policies required by this MEDICAL SETTLEMENT TRUST AGREEMENT and the MEDICAL SETTLEMENT AGREEMENT, or as the Trustee may determine are reasonably necessary or desirable for the protection of the MEDICAL SETTLEMENT TRUST and the Trustee, with such premiums to be paid from the ADMINISTRATIVE FUND;

(J) To sue, be sued, and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding or legal action with respect to the MEDICAL SETTLEMENT TRUST, with the costs of any such proceeding to be paid from the ADMINISTRATIVE FUND; and

(K) To execute and deliver such documents and instruments as the Trustee determines to be necessary and proper in administering the MEDICAL SETTLEMENT TRUST.

2.5 <u>Powers of the Directed Trustee</u>.  At any time that the MEDICAL SETTLEMENT TRUST or this MEDICAL SETTLEMENT TRUST AGREEMENT is administered, governed by, construed, and/or enforced according to the laws of the State of Delaware, J.P. Morgan Trust Company of Delaware shall act as the Directed Trustee of the MEDICAL SETTLEMENT TRUST, subject to Section 3.2 below.  The Directed Trustee shall act in a fiduciary capacity, but

shall have only the duties and authority set forth in this Section 2.5.  Accordingly, no reference in this MEDICAL SETTLEMENT TRUST AGREEMENT to the "Trustee" shall include, or be deemed to refer to, the Directed Trustee.  Any expenditures authorized pursuant to this Section 2.5 shall be SETTLEMENT COSTS.  Notwithstanding anything in this MEDICAL SETTLEMENT TRUST AGREEMENT to the contrary:

> (A)     The Directed Trustee shall only have the duty and authority to exercise the following duties and shall only act upon a direction of authority under Section 2.4(D) or a delegation of investment authority under Section 2.4(H), and all actions of the Directed Trustee shall be carried out in the State of Delaware:
>
>> (1)     To exercise the powers of the Trustee under Sections 2.4(A), (B), (C) and (E) above;
>>
>> (2)     To originate, facilitate, or review MEDICAL SETTLEMENT TRUST accountings, reports, and other communications with the Trustee and unrelated third parties, except that the Directed Trustee shall not be responsible for the accuracy of information provided to the Directed Trustee by any third party pursuant to an agreement into which the Trustee has directed the Directed Trustee to enter; and
>>
>> (3)     To execute documents and to perform actions necessary to implement any direction received by the Directed Trustee pursuant to Section 2.4(D).
>
> (B)     Pursuant to a direction of authority under Section 2.4(D) or a delegation of investment authority under Section 2.4(H), the Directed Trustee is expressly authorized to engage any corporation, partnership, limited liability company or other entity that is a subsidiary or affiliate of a corporate trustee serving hereunder and/or any individual who is a partner, director, officer or employee of any such subsidiary or affiliate (individually and collectively, an "Affiliate"), to act as agent of or render services to this MEDICAL SETTLEMENT TRUST AGREEMENT and to pay customary fees and compensation to such Affiliate without reduction of any compensation paid to the Directed Trustee; provided, however, that such authorization must comply with the terms of this MEDICAL SETTLEMENT TRUST AGREEMENT, the MEDICAL SETTLEMENT AGREEMENT, and any order or direction issued by the COURT.  The Directed Trustee, and any Affiliate appointed by the Directed Trustee, is hereby authorized to invest and reinvest the Trust Estate in the FUNDS in accordance with the terms of Section XXII.L of the MEDICAL SETTLEMENT AGREEMENT, and Sections 4.1 and 4.2 below.
>
> (C)     All directions to the Directed Trustee pursuant to Section 2.4(D) above shall be in writing and shall state that the directions do not violate any provision of this MEDICAL SETTLEMENT TRUST AGREEMENT, the MEDICAL SETTLEMENT AGREEMENT, or any related document listed in the recitals or anywhere throughout this MEDICAL SETTLEMENT TRUST AGREEMENT.  All such directions to the Directed Trustee shall state that the direction does not adversely affect the qualification of the MEDICAL SETTLEMENT TRUST as a qualified settlement fund.  The Directed Trustee

need not review whether the Trustee or the CLAIMS ADMINISTRATOR (as the case may be) is satisfying its responsibilities hereunder, including whether the direction from the Trustee or the CLAIMS ADMINISTRATOR (as the case may be) may adversely affect the qualification of the MEDICAL SETTLEMENT TRUST as a qualified settlement fund.

(D) Unless the Trustee delegates investment authority to the Directed Trustee under Section 2.4(H), the Directed Trustee shall have no duty or obligation whatsoever to monitor or review the property or investments of this MEDICAL SETTLEMENT TRUST AGREEMENT for diversification, for the prudence of purchasing, retaining, or selling any such property or investment, for conformity to standards established in this MEDICAL SETTLEMENT TRUST AGREEMENT or under applicable law, or for any other reason whatsoever.

(E) Any direction to the Directed Trustee pursuant to Section 2.4(D) shall be in writing, delivered by mail, courier, facsimile transmission, electronic mail, or otherwise in such form as the Directed Trustee may specify from time to time by written notice to the Trustee. The Directed Trustee shall have no obligation to investigate or confirm the authenticity of directions it receives or the authority of the person or persons conveying them, and the Directed Trustee shall be exonerated from any and all liability in relying on any such direction from a person purporting to be the Trustee without further inquiry by the Directed Trustee.

(F) Notwithstanding the foregoing provisions of this Section 2.5, the Directed Trustee shall have the following administrative duties, which shall all be performed by the Directed Trustee in the Directed Trustee's sole discretion in compliance with the terms of the MEDICAL SETTLEMENT AGREEMENT and this MEDICAL SETTLEMENT TRUST AGREEMENT, and not at the direction of the Trustee:

(1) To maintain an account or accounts for the purpose of the custody and safekeeping of the Trust Estate, including the MEDICAL SETTLEMENT TRUST ACCOUNT;

(2) To maintain evidence of intangible property of the MEDICAL SETTLEMENT TRUST;

(3) To maintain administrative records of the MEDICAL SETTLEMENT TRUST;

(4) To maintain an office for Trustee or Directed Trustee meetings and other MEDICAL SETTLEMENT TRUST business;

(5) To respond to inquiries from BP, MEDICAL BENEFITS CLASS COUNSEL, the CLAIMS ADMINISTRATOR, the Trustee, and the COURT; and

(6) To execute documents in connection with the performance of the Directed Trustee's duties under this Section 2.5.

(G) To the extent the provisions of the MEDICAL SETTLEMENT AGREEMENT or this MEDICAL SETTLEMENT TRUST AGREEMENT restrict, modify, or eliminate the duties and liabilities of the Directed Trustee that would otherwise apply at law, in equity, or otherwise, such provisions of the MEDICAL SETTLEMENT AGREEMENT and this MEDICAL SETTLEMENT TRUST AGREEMENT shall supersede, and replace such otherwise applicable duties and liabilities.

2.6   Principal Office.  The MEDICAL SETTLEMENT TRUST shall maintain its principal office at such location as the Trustee determines from time to time, in consultation with BP and MEDICAL BENEFITS CLASS COUNSEL.

ARTICLE 3.
TRUSTEE

3.1   Jurisdiction of the Court.  The MEDICAL SETTLEMENT TRUST, the Trustee, and the Directed Trustee shall be subject to the continuing jurisdiction and supervision of the COURT.

3.2   Term of Service; Resignation; Removal.  The Trustee and the Directed Trustee shall serve for the duration of the MEDICAL SETTLEMENT TRUST, subject to the incapacity, death, resignation, or removal of the Trustee or dissolution, resignation, or removal of the Directed Trustee.  The Trustee or the Directed Trustee may resign by providing at least sixty (60) days' prior written notice of such resignation to BP, MEDICAL BENEFITS CLASS COUNSEL, the COURT, and the Trustee or the Directed Trustee (as the case may be), specifying the date when such resignation shall take effect.  The Trustee or the Directed Trustee may be removed by joint motion made by BP'S COUNSEL and MEDICAL BENEFITS CLASS COUNSEL, and granted by the COURT.

3.3   Appointment of Successor Trustee.

(A) If the Trustee or the Directed Trustee resigns, is removed, or is otherwise unable to continue service in this position, the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL shall jointly nominate a new Trustee or Directed Trustee (as the case may be), and move the COURT to approve the nominated Trustee or Directed Trustee.  The MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL and the COURT will follow this process until such time as a new Trustee or Directed Trustee (as the case may be) is approved by the COURT and appointed.

(B) Immediately upon approval by the COURT of, and acceptance of the office by, any successor Trustee or successor Directed Trustee (as the case may be), all rights, titles, duties, obligations, powers, and authority of the predecessor Trustee or predecessor Directed Trustee (as the case may be) under this MEDICAL SETTLEMENT TRUST AGREEMENT shall be vested in and undertaken by the successor Trustee or the successor Directed Trustee (as the case may be) without any further act being required.  No successor Trustee or successor Directed Trustee (as the case may be) shall be liable

for any act or omission of a predecessor Trustee or predecessor Directed Trustee (as the case may be).

3.4     <u>Compensation and Expenses of Trustee and Directed Trustee</u>.  As will be set forth in the Joint Retention Agreement with Garretson Resolution Group and the Joint Retention Agreement with J.P. Morgan Trust Company of Delaware, the Trustee and the Directed Trustee shall receive reasonable compensation and out-of-pocket costs and expenses related to the performance of their respective duties described in this MEDICAL SETTLEMENT TRUST AGREEMENT and in accordance with the MEDICAL SETTLEMENT AGREEMENT, and such compensation, costs, and expenses shall be paid from the ADMINISTRATIVE FUND and shall be SETTLEMENT COSTS.

3.5     <u>Limitations on Liability</u>.

(A)     *Limitations on Liability of the Trustee*.  The Trustee shall not be liable for any damages with respect to the Trustee's actions or omissions regarding the MEDICAL SETTLEMENT TRUST, except for those arising from his negligence, bad faith, or intentional or willful misconduct, including fraud.  The Trustee shall not be liable for any damages for any act or omission of any agent of the MEDICAL SETTLEMENT TRUST unless the Trustee acted with negligence, bad faith, or intentional or willful misconduct in the selection, retention, or supervision of such agent.

(B)     *Limitations on Liability of the Directed Trustee*.  To the fullest extent of the law, including section 3313(b) of Title 12 of the Delaware Code, the Directed Trustee shall incur no liability for any act or failure to act by the Trustee, or for acting on a direction pursuant to Section 2.5 above or with respect to its implementation of any such direction, and the Directed Trustee shall not be liable for any loss resulting from action taken by the Trustee, or taken by the Directed Trustee in accordance with any direction pursuant to Section 2.5 above.  The Directed Trustee shall have no duty to monitor the conduct of the Trustee, provide advice to the Trustee, consult with the Trustee, or communicate with, warn, or apprise any beneficiary or third party concerning instances in which the Directed Trustee would or might have exercised the Directed Trustee's own discretion in a manner different from the manner directed by the Trustee.  Furthermore, the Directed Trustee shall have no liability under this MEDICAL SETTLEMENT TRUST AGREEMENT to any beneficiary of the MEDICAL SETTLEMENT TRUST or any other person whose interest arises under the MEDICAL SETTLEMENT TRUST for the Directed Trustee's good faith reliance on the provisions of Section 2.5 above, or any other provisions of this MEDICAL SETTLEMENT TRUST AGREEMENT, unless the Directed Trustee has acted with willful misconduct proven by clear and convincing evidence.  The Directed Trustee shall be deemed to have acted within the scope of its respective authority, to have exercised reasonable care, diligence, and prudence, and to have acted impartially as to all interested persons unless the contrary may be proved by clear and convincing evidence.  The Directed Trustee shall not be liable for the acts or defaults of the Trustee or any advisor retained by the Trustee or any other third party.

3.6     Indemnification.

(A)     *Indemnification*.  The MEDICAL SETTLEMENT TRUST shall indemnify, defend, and hold harmless the Trustee and the Directed Trustee, and both of their respective officers, owners, employees, representatives, agents (including the LEAD PAYING AGENT, the indemnification of which will be provided in the PAYING AGENT AGREEMENT), advisors, and consultants (collectively, the "Indemnitees") against any and all claims, demands, suits, liabilities, awards, expenses, losses, costs, fees (including reasonable attorneys' fees and costs), damages, causes of action, and judgments ("Losses") incurred by the Indemnitees in the performance of their duties as set forth in this MEDICAL SETTLEMENT TRUST AGREEMENT; provided, however, to be indemnified under this Section 3.6, the Indemnitee must have acted in good faith, in a manner such Indemnitee reasonably believed to be in, or not opposed to, the best interests of the MEDICAL SETTLEMENT TRUST, and without negligence, bad faith, or intentional or willful misconduct, including fraud; further provided, nonetheless, that the Directed Trustee and its officers, owners, employees, representatives, agents, advisors shall be indemnified for all matters including but not limited to Losses resulting from the Directed Trustee's gross negligence, except that the Directed Trustee will not be indemnified or held harmless with respect to any Losses that are finally judicially determined to have resulted solely from the Directed Trustee's intentional or willful misconduct, including fraud.  All costs associated with indemnification provided under this Section 3.6 shall be paid from the ADMINISTRATIVE FUND and shall be SETTLEMENT COSTS.  No indemnification shall be provided to the CLAIMS ADMINISTRATOR by the MEDICAL SETTLEMENT TRUST under this Section 3.6 for any claims for which the CLAIMS ADMINISTRATOR must provide indemnification to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, BP, or MEDICAL BENEFITS CLASS COUNSEL pursuant to Section XXIX.L of the MEDICAL SETTLEMENT AGREEMENT.

(B)     *Notice*.  An Indemnitee shall give written notice to BP and MEDICAL BENEFITS CLASS COUNSEL, and, if the Trustee is not also the Indemnitee, to the Trustee, of any claims that may be subject to indemnification, promptly after learning of such claims.  BP and the Trustee shall jointly make a determination regarding whether to contest indemnification under this Section 3.6, provided that BP's determination shall govern in the event that BP and Trustee disagree regarding such indemnification, and further provided that BP shall make this determination alone if the Trustee is also the Indemnitee; such determination shall be binding on the MEDICAL SETTLEMENT TRUST.  Unless the duty to indemnify has been contested as described in this Section 3.6(B), BP and (if the Trustee is not also the Indemnitee) the Trustee shall assume the defense of such claim, with counsel chosen by BP and (if the Trustee is not also the Indemnitee) the Trustee.

(C)     *Payment of Expenses*.  Reasonable expenses, costs, and fees (including attorneys' fees and costs) incurred by or on behalf of an Indemnitee in connection with any action, suit, or proceeding from which the Indemnitee is indemnified by the MEDICAL SETTLEMENT TRUST pursuant to this Section 3.6 shall be SETTLEMENT COSTS paid by the MEDICAL SETTLEMENT TRUST from the ADMINISTRATIVE

FUND in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Indemnitee, to repay such amount in the event that it shall be determined ultimately by final order that such Indemnitee is not entitled to be indemnified by the MEDICAL SETTLEMENT TRUST. The Indemnitee may, at its option and own expense, be represented by counsel of its choice in any action or proceeding with respect to such claim. Neither the MEDICAL SETTLEMENT TRUST, BP, nor the Trustee (or, as applicable, the Directed Trustee) shall be liable for any litigation costs or expenses incurred by the Indemnitee's own counsel; provided, however, that if the Trustee (or, as applicable, the Directed Trustee) is the Indemnitee, the Trustee (or, as applicable, the Directed Trustee) shall be liable for all litigation costs and expenses incurred by the Indemnitee's own counsel. The Indemnitee and Indemnitee's separate counsel, if applicable, shall reasonably cooperate with BP and, if applicable, the Trustee (or, as applicable, the Directed Trustee) in such defense, at no cost to the MEDICAL SETTLEMENT TRUST, BP, or, if applicable, the Trustee (or, as applicable, the Directed Trustee).

(D)   *Insurance*. The Trustee shall purchase and maintain reasonable amounts and types of insurance on behalf of the MEDICAL SETTLEMENT TRUST, the Trustee, and any individual who is or was an officer, employee, representative, or agent of the Trustee against liability asserted against or incurred by such individual in that capacity or arising from his or her status as an Indemnitee. Such premiums for insurance related to the MEDICAL SETTLEMENT AGREEMENT are related to this MEDICAL SETTLEMENT TRUST AGREEMENT and subject to Section 2.4(I) above.

3.7   Bond. Neither the Trustee nor the Directed Trustee shall be required to post any bond or other form of surety unless otherwise ordered by the COURT.

3.8   Independence. Any person or entity appointed as Trustee or Directed Trustee shall be independent of BP and MEDICAL BENEFITS CLASS COUNSEL, except as specifically disclosed and waived by both BP and MEDICAL BENEFITS CLASS COUNSEL, and approved by the COURT. The Trustee shall not, during the term of its service, act as attorney for BP, MEDICAL BENEFITS CLASS COUNSEL, or any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

ARTICLE 4.
FINANCIAL MANAGEMENT AND REPORTING

4.1   Management of Trust Estate. The Trustee shall have the authority to manage and invest the Trust Estate as the Trustee deems advisable to effectuate the purpose of the MEDICAL SETTLEMENT TRUST, subject to the provisions of Section 4.2 below and the terms of the MEDICAL SETTLEMENT AGREEMENT. The Trustee may, after consultation with BP and MEDICAL BENEFITS CLASS COUNSEL, engage an investment advisor and delegate the Trustee's investment authority and responsibilities to the investment advisor, and the Trustee shall not be responsible for any loss that might occur from the investment decisions of the investment advisor unless the Trustee is negligent in connection with its supervision of such investment advisor or violates any provision of this MEDICAL SETTLEMENT TRUST

AGREEMENT or the MEDICAL SETTLEMENT AGREEMENT in connection with any such investment.

4.2 **Investments**.  Subject to Section XXII.L of the MEDICAL SETTLEMENT AGREEMENT, the Trustee shall invest the Trust Estate acting as a reasonably prudent fiduciary in a conservative manner designed to assure timely availability of funds, protection of principal, and avoidance of concentration risk, subject to the requirements set forth in the MEDICAL SETTLEMENT AGREEMENT.  Any income derived from such investments shall be held and used as described in Section XXII.M of the MEDICAL SETTLEMENT AGREEMENT.

4.3 **Settlement Costs**.  The reasonable and necessary expenses, costs, and expenditures associated with the formation, operation, administration, and termination of the MEDICAL SETTLEMENT TRUST, as provided in the MEDICAL SETTLEMENT AGREEMENT, shall be paid from the ADMINISTRATIVE FUND and shall be SETTLEMENT COSTS.  Except as provided in Sections 3.5 and 3.6 above, neither the Trustee nor the Directed Trustee shall have any liability for the payment of any SETTLEMENT COSTS.

4.4 **Procedures and Controls**.  The Trustee and the Directed Trustee (subject to the provisions of Section 2.5 above) shall establish procedures and controls to manage and account for the maintenance and distribution of the Trust Estate held in the FUNDS for the purpose described in Section 1.2 above, and consistent with the duties of the Trustee and the Directed Trustee under this MEDICAL SETTLEMENT TRUST AGREEMENT and the MEDICAL SETTLEMENT AGREEMENT.  BP and MEDICAL BENEFITS CLASS COUNSEL shall have the right to review, and make recommendations regarding improvements to, such procedures and controls.

4.5 **Financial Audit**.  Beginning on the first January after the EFFECTIVE DATE, and each year thereafter, the Trustee shall cause an audit to be performed by a Certified Public Accountant (engaged as set forth in Section 2.4(E) above) upon the financial records of the MEDICAL SETTLEMENT TRUST, which shall reflect amounts received from or on behalf of BP in the prior year and payments made in the prior year by the MEDICAL SETTLEMENT TRUST.  True and complete copies of all reports resulting from such audits shall be provided to BP, MEDICAL BENEFITS CLASS COUNSEL, and the COURT.

4.6 **Reporting**.  The Trustee shall provide such reports to the COURT, BP, and MEDICAL BENEFITS CLASS COUNSEL as are required by the MEDICAL SETTLEMENT AGREEMENT, as well as such other reports as BP or MEDICAL BENEFITS CLASS COUNSEL may reasonably request, or are set forth in this Section 4.6.

(A) *Reports Requested by the Court*.  The COURT may, in its sole discretion, request reports or information from the Trustee.  The Trustee shall be responsible for reporting and providing information to the COURT at such frequency and in such a manner as the COURT directs.

(B) *Periodic Accounting*.  The Trustee may, in its sole discretion, cause to be prepared an additional periodic accounting of the MEDICAL SETTLEMENT TRUST, including, without limitation, a balance sheet of the MEDICAL SETTLEMENT TRUST,

a statement of receipts and disbursements, a statement of profit and loss prepared on an accrual basis, a supplementary schedule of investments and assets, and a statement of significant events.

(C)   *Approval by the Court and Discharge of Liability*.  The Trustee may, after consultation with BP and MEDICAL BENEFITS CLASS COUNSEL, render such periodic accounting to the COURT.  Upon the approval of any periodic accounting by the COURT, and subject to the terms of the order of the COURT granting such approval, the Trustee shall be discharged from any further liability or responsibility as to all matters disclosed in such periodic accounting, and no action arising out of any matter disclosed in such periodic accounting may be brought against the Trustee.

ARTICLE 5.
TAX MATTERS

5.1   Administrator.  The Trustee shall serve as the "administrator" of the MEDICAL SETTLEMENT TRUST within the meaning of Treasury Regulation section 1.468B-2(k)(3) and shall be responsible for the undertakings specified in the regulations promulgated under section 468B of the Code, including, but not limited to, the obtaining of an employer identification number for the MEDICAL SETTLEMENT TRUST, the filing of all required federal, state, or local tax and information returns, any required withholding of tax, the payment of any federal, state, or local taxes (including estimated taxes) and associated tax-related penalties and interest for which the MEDICAL SETTLEMENT TRUST may be liable, responding to any questions from or audits regarding such taxes by the Internal Revenue Service or any state or local tax authority, as well as compliance with any other tax-related requirements.

5.2   Taxable Year and Accounting Method.  The taxable year of the MEDICAL SETTLEMENT TRUST shall be the calendar year.  The MEDICAL SETTLEMENT TRUST shall use an accrual method of accounting within the meaning of section 446(c) of the Code.

5.3   Relation-Back Election.  BP and the Trustee may join in the filing of a "relation-back election" within the meaning of Treasury Regulation section 1.468B-1(j)(2) with respect to the MEDICAL SETTLEMENT TRUST, where both BP and the Trustee determine that doing so is in the best interests of the MEDICAL SETTLEMENT TRUST.  Where such decision is made, the Trustee and BP agree to comply with all of the requirements contained in Treasury Regulation section 1.468B-1(j)(2) that apply to such election.

## ARTICLE 6.
## TERMINATION AND WINDING UP

6.1     Termination.  The MEDICAL SETTLEMENT TRUST shall terminate upon termination of the MEDICAL SETTLEMENT AGREEMENT pursuant to Sections XIV or XXIX.B of the MEDICAL SETTLEMENT AGREEMENT, or upon order of the COURT.

6.2     Winding Up and Disbursement of Remaining Funds.  The Trustee shall wind up the affairs of the MEDICAL SETTLEMENT TRUST following its termination in accordance with Section 6.1 above.  BP shall have a reversionary interest in the FUNDS as described in Sections XIV.I and XXII.K of the MEDICAL SETTLEMENT AGREEMENT.

## ARTICLE 7.
## GENERAL PROVISIONS

7.1     Irrevocability.  The MEDICAL SETTLEMENT TRUST shall be irrevocable. Notwithstanding the foregoing, the Trustee may, after consultation with BP and MEDICAL BENEFITS CLASS COUNSEL, apply to the COURT to modify the administrative or distributive provisions of the MEDICAL SETTLEMENT TRUST where, as a result of unanticipated circumstances, the purpose of the MEDICAL SETTLEMENT TRUST cannot be achieved absent such modifications.  Notwithstanding the foregoing, this MEDICAL SETTLEMENT TRUST AGREEMENT shall not be amended in any manner that increases any obligation of BP, the Trustee, or the Directed Trustee without their respective written consents; that reduces the benefits provided pursuant to the MEDICAL SETTLEMENT AGREEMENT to the MEDICAL BENEFITS SETTLEMENT CLASS, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, or the MEDICAL BENEFITS CLASS REPRESENTATIVES; that reduces the reversionary interest BP has in FUNDS pursuant to Sections XIV.I and XXII.K of the MEDICAL SETTLEMENT AGREEMENT; or that adversely affects the treatment of the MEDICAL SETTLEMENT TRUST as a qualified settlement fund.

7.2     Successors and Assigns.  The provisions of this MEDICAL SETTLEMENT TRUST AGREEMENT shall be binding upon and inure to the benefit of BP, MEDICAL BENEFITS CLASS COUNSEL, the CLAIMS ADMINISTRATOR, the Trustee, and the Directed Trustee, and their respective successors and permitted assigns, and any benefits to such MEDICAL SETTLEMENT TRUST AGREEMENT and MEDICAL SETTLEMENT AGREEMENT shall inure to the benefit of the MEDICAL BENEFITS SETTLEMENT CLASS, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, and the MEDICAL BENEFITS CLASS REPRESENTATIVES, and their respective successors and permitted assigns.

7.3     Conflict with Settlement Agreement.  In the event of any conflict between the terms of this MEDICAL SETTLEMENT TRUST AGREEMENT and the terms of the MEDICAL SETTLEMENT AGREEMENT, the terms of the MEDICAL SETTLEMENT AGREEMENT shall control.

7.4     Notices.  All notices required by the MEDICAL SETTLEMENT TRUST shall be sent by overnight delivery and electronic mail.

If to BP:

    Richard C. Godfrey, P.C.
    Attn:  Medical Settlement Trust
    Kirkland & Ellis LLP
    300 North LaSalle Street
    Chicago, IL 60654
    rgodfrey@kirkland.com

If to MEDICAL BENEFITS CLASS COUNSEL:

    Stephen J. Herman
    Attn:  Medical Settlement Trust
    Herman, Herman, Katz & Cotlar LLP
    820 O'Keefe Avenue
    New Orleans, LA 70113
    Sherman@hhkc.com

    James P. Roy
    Attn:  Medical Settlement Trust
    Domengeaux Wright Roy & Edwards, LLC
    556 Jefferson Street, Suite 500
    P.O. Box 3668
    Lafayette, LA 70501
    jimr@wrightroy.com

If to the MEDICAL SETTLEMENT TRUST or Trustee:

    Medical Settlement Trust
    Matthew L. Garretson, Trustee
    Attention:  Sylvius von Saucken, Fiduciary
    Garretson Resolution Group
    7775 Cooper Road
    Cincinnati, OH 45242
    mlg@garretsongroup.com
    svs@garretsongroup.com

If to the Directed Trustee:

    James H. Gavin III
    Attn:  Deepwater Horizon Economic Settlement Trust
    J.P. Morgan Trust Company of Delaware
    500 Stanton Christiana Road, CC Commons
    North/South, Floor 2
    Newark, Delaware 19713-2107
    james.h.gavin@jpmorgan.com

7.5     Severability.  Should any provision of this MEDICAL SETTLEMENT TRUST AGREEMENT be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this MEDICAL SETTLEMENT TRUST AGREEMENT.

7.6     Headings, Gender, and Number.  The headings used in this MEDICAL SETTLEMENT TRUST AGREEMENT are inserted for convenience only and shall not affect the construction of any provisions of this MEDICAL SETTLEMENT TRUST AGREEMENT.  Reference in this MEDICAL SETTLEMENT TRUST AGREEMENT to any gender includes either masculine or feminine, as appropriate, and reference to any number includes both singular and plural where the context permits or requires.

7.7     Counterparts; Facsimile Signature.  This MEDICAL SETTLEMENT TRUST AGREEMENT may be executed in counterparts, and a facsimile signature shall be deemed an original signature for purposes of this MEDICAL SETTLEMENT TRUST AGREEMENT.

7.8     Governing Law.  This MEDICAL SETTLEMENT TRUST AGREEMENT creates a Delaware trust and all matters pertaining to its validity, construction, and trust administration shall be determined, governed by, construed, and enforced according to the laws of the State of Delaware (without application of the principles of conflict of law thereof), except that all matters of federal tax law and the MEDICAL SETTLEMENT TRUST'S compliance with section 468B of the Code and the Treasury Regulations promulgated thereunder shall be governed by federal income tax law.

7.9     Jurisdiction and Venue.  The Trust Agreement Parties submit to the continuing and exclusive jurisdiction of the COURT for purposes of any suit, action or proceeding seeking to interpret or enforce any provision of, or based on any right arising out of, this MEDICAL SETTLEMENT TRUST AGREEMENT, and the Trust Agreement Parties further agree not to commence any such suit, action, or proceeding except in the COURT; provided, however, that J.P. Morgan Trust Company of Delaware consents to jurisdiction of the COURT solely for purposes of this MEDICAL SETTLEMENT TRUST AGREEMENT.  The Trust Agreement Parties waive any objection to the laying of venue of any such suit, action, or proceeding in the COURT, and further waive and agree not to plead or claim in the COURT that any such suit, action, or proceeding has been brought in an inconvenient forum.

7.10    Entire Agreement; No Waiver.  This MEDICAL SETTLEMENT TRUST AGREEMENT and the MEDICAL SETTLEMENT AGREEMENT together contain the entire agreement of the Trust Agreement Parties relating to the subject matter of this MEDICAL SETTLEMENT TRUST AGREEMENT, and other than the MEDICAL SETTLEMENT AGREEMENT, this MEDICAL SETTLEMENT TRUST AGREEMENT supersedes any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

[*Remainder of page intentionally left blank; signature page follows.*]

IN WITNESS WHEREOF, this eighteen (18) page MEDICAL SETTLEMENT TRUST AGREEMENT has been executed by BP Exploration & Production Inc. and BP America Production Company as Settlors, MEDICAL BENEFITS CLASS COUNSEL, the CLAIMS ADMINISTRATOR, the Trustee, and the Directed Trustee, all as of the date indicated on the cover page above.

**Settlors**

BP Exploration & Production Inc.

By: _____
       Geir Robinson, Vice President


BP America Production Company

By: _____
       Geir Robinson, Vice President


**MEDICAL BENEFITS CLASS COUNSEL**

Medical Benefits Class Counsel

By: _____
       James P. Roy

By: _____
       Stephen J. Herman


**CLAIMS ADMINISTRATOR**

Garretson Resolution Group

By: _____
       Sylvius von Saucken, Fiduciary


**Trustee**

Matthew L. Garretson

By: _____
       Matthew L. Garretson


**Directed Trustee**

J.P. Morgan Trust Company of Delaware

By: _____
       James H. Gavin III