UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 |
| | | SECTION: J(2) |
| Applies to: | * | JUDGE BARBIER |
| 11-02533, Salvesen v. Feinberg, et al. 11-01987, Pinellas Marine Salvage Inc., et al. v. Feinberg, et al. 13-06014, Ditch v. Feinberg, et al. 19-12014, Donovan v. Herman | * * | MAG. JUDGE WILKINSON |
| | * | |

## ORDER & REASONS

Before the Court are two "Motions to Recuse the Honorable Carl J. Barbier." (Rec. Docs. 25908, 25927). The first motion (Rec. Doc. 25908) was filed by the plaintiffs in member cases 11-02533, 11-01987, and 13-06014, all of whom are represented by Brian Donovan ("Donovan"). This Order will use "Donovan Clients" to refer to these plaintiffs. The second motion (Rec. Doc. 25927) was filed by Donovan on behalf of himself as the plaintiff in member case 19-12014.[1] This Order will use "Movants" to refer collectively to the Donovan Clients and Donovan. Steve Herman ("Herman"), who is the defendant in case no. 19-12014 as well as Plaintiffs' Co-Liaison Counsel and a member of the Plaintiffs' Steering Committee in MDL 2179 (both per this Court's appointment), filed an opposition (Rec. Doc. 26014), to which

---

[1] Donovan also purports to bring the second motion on behalf of "all others similarly situated" (Rec. Doc. 25927 at 1) and moves for my recusal in "all proceedings involving cases in MDL 2179" (Rec. Doc. 25927-1 at 20). However, Donovan does not explain the basis on which he may file a motion on behalf of anyone other than himself and the clients he represents.

Movants have replied (Rec. Doc. 26022). The Court has considered these motions without oral argument.

The motions are substantively identical. Movants press two grounds for recusal. First, they argue recusal is required under 28 U.S.C. § 455(b)(4)[2] because I owned debt instruments issued by Halliburton and Transocean—companies that are not parties to any of Movants' cases, although they have been named as defendants in many other cases consolidated with MDL 2179—which I sold in June of 2010. Second, Movants argue recusal is required under 28 U.S.C. § 455(a),[3] claiming that my impartiality might be reasonably questioned based on various events, rulings, or statements.

I. **THE DONOVAN CLIENTS' MOTION IS UNTIMELY**

The first motion, the one filed by the Donovan Clients, is untimely. "The general rule on timeliness requires that 'one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.'" *United States v. Sanford*, 157 F.3d 987, 988 (5th Cir. 1998) (quoting *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)); *see also Hill v. Schilling*, 495 F. App'x 480, 483-84 (5th Cir. 2012) (unpublished per curiam).

---

[2] 28 U.S.C. § 455(b)(4) states, "[A judge] shall also disqualify himself . . . [when] [h]e knows that he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . ."
[3] 28 U.S.C. § 455(a) states, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

## A.    § 455(b)(4)

The Donovan Clients' argument regarding § 455(b)(4) relies entirely on a Fifth Circuit opinion from 2010 that concerned the same debt instruments at issue here. *See In re Cameron Int'l Corp.*, 393 F. App'x 133 (5th Cir. 2010) (unpublished per curiam). Following the April 20, 2010 blowout of the Macondo Well but before MDL 2179 was created on August 10, 2010, certain defendants moved for my recusal on the grounds that the Halliburton and Transocean debt instruments constituted "financial interest[s] . . . in a party to a proceeding" under § 455(b)(4). *Id.* at 134 & n.6. I denied these motions, and defendants petitioned the Fifth Circuit for a writ of mandamus. The Circuit upheld my conclusion that the debt instruments did not constitute a financial interest in a party, but it noted in dicta that recusal may be required under § 455(b)(4) ***if*** the debt instruments are determined to be either "financial interest[s] in the subject matter in controversy" or "any other interest that could be substantially affected by the proceedings." *Id.* at 135-36. However, it "express[ed] no opinion as to the merits of either ground." *Id* at 136. Instead, the Fifth Circuit denied the petitions without prejudice to the defendants' ability to present these arguments to me so that I may rule on them in the first instance. *Id.*

*In re Cameron* was decided on July 22, 2010. In the following weeks, the eponymous defendant filed and then withdrew a motion for judicial disclosure. (Rec. Docs. 55, 67). Aside from that, no party in MDL 2179 has pursued the alternative arguments identified in *Cameron* until the Donovan Clients filed their motion on July 29, 2019. I have been assigned to the Donovan Clients' cases since 2011 and 2013,

3

when they were consolidated with MDL 2179. Consequently, if the Donovan Clients believed that my prior ownership of these debt instruments warranted recusal under § 455(b)(4), such evidence and argument should have been presented shortly after those actions were consolidated with MDL 2179, not in 2019. *See Sanford*, 157 F.3d at 988; *Hill*, 495 F. App'x at 483-84.

### B.   § 455(a)

The Donovan Clients' arguments regarding § 455(a) are also untimely. The Donovan Clients invoke § 455(a) based on events that allegedly occurred between August of 2010 and March of 2018. Even if these events supported the instant motions to recuse—they do not—the Donovan Clients (who, again, have had suits in the MDL since 2011 and 2013) should not have waited until July 2019, over a year after the last event and years after other events, to file their motions to recuse.

For these reasons, the Donovan Clients' motion (Rec. Doc. 25908) is untimely.

## II.   BOTH MOTIONS LACK MERIT

The Court assumes but does not decide that the second motion to recuse, the one filed by Donovan himself, is timely.[4] Nevertheless, this motion is meritless. Furthermore, because the Donovan Clients' arguments are identical to Donovan's, their motion is also meritless, in addition to being untimely.

### A.   § 455(b)(4)

Seizing on the dicta in *In re Cameron*, *supra*, Movants argue that recusal under § 455(b)(4) is required because the Halliburton and Transocean debt instruments I

---

[4] Donovan's own suit (no. 19-12014) was consolidated with MDL 2179 on August 7, 2019. (*See* No. 19-12014, Rec. Doc. 25). Donovan filed his motion to recuse the same day.

4

owned nine years ago qualify as "financial interest[s] in the subject matter of the controversy" or "any other interest that could be substantially affected by the outcome of the proceeding." However, Movants make absolutely no factual, legal, or evidentiary showing that these debt instruments actually are "financial interest[s] in the subject matter of the controversy" or "could be substantially affected by the outcome of the proceeding." Moreover, the Court fails to understand how these debt instruments could qualify as such. Neither Halliburton nor Transocean is a party to any of Movants' cases, and Movants' cases were filed after I divested myself of the debt instruments. Consequently, recusal is not required under § 455(b)(4).

**B.     § 455(a)**

Section 455(a) mandates recusal "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The Supreme Court has explained that § 455(a) is "evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). However, the appearance of partiality is determined from the viewpoint of a "'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person.'" *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003) (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)). Also, "review should entail a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents." *Id.* (citation omitted). "Finally, the origin of a judge's alleged bias is of critical importance." *Id.* Under the so-called "extrajudicial source doctrine," "judicial rulings alone almost never constitute a valid

5

basis for a bias or partiality motion." *Litkey,* 510 U.S. at 555. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," do not establish bias or partiality. *Id.* at 555-56.

Movants contend there have been multiple events that reasonably call into question my impartiality. As more fully explained in Herman's opposition, none of these satisfy the standard set forth above.

Some of the Movants' purported evidence of partiality concerns actions or statements by the Judicial Panel on Multidistrict Litigation ("JPML"), Kenneth Feinberg (administrator of the now-defunct Gulf Coast Claims Facility ("GCCF")), or the parties, as opposed to my actions or statements.[5] When Movants do cite my rulings or statements, they fail to account for the fact that these are not extrajudicial sources—these are my opinions formed on the basis of the law, facts introduced, and/or events that occurred over the course of the MDL, and they do not display a deep-seated favoritism or antagonism that would make a fair judgment impossible.[6]

---

[5] For example, Movants complain that the JPML "[k]nowingly [s]elected a [t]ransferee [j]udge to [p]reside [o]ver MDL 2179 [w]ho [s]hould [h]ave [r]ecused [h]imself." (Rec. Doc. 25927-1 at 10). First, this statement assumes what it sets out to prove (that I should have recused myself). In any event, I fail to understand how the JPML's decision to transfer MDL 2179 to me is evidence of my bias.

[6] For example, Movants complain about a ruling from August 26, 2010 where I held that the Oil Pollution Act ("OPA") does not prohibit the use of waivers and releases (*see* Rec. Doc. 3830 at 34-35). Movants claim this decision evinces a bias in favor of BP as it effectively upheld the 220,000 releases

6

Movants also make a habit of improperly focusing on isolated incidents while ignoring the entire course of judicial proceedings or even the immediate context.[7] Some of Movants' claims are so clearly contradicted by the record that I wonder if Movants' attorney actually read the document he criticizes.[8] Many of Movants' arguments are nothing more than collateral attacks on prior rulings.[9] Some of Movants' arguments defy logic.[10]

---

executed by claimants in exchange for payments from the GCCF. As reflected in the ruling itself, my conclusion was based on OPA's language. While Movants may disagree with this interpretation, my decision does not reflect an improper bias or prejudice. Furthermore, it should be noted that at least one panel of the Fifth Circuit appears to agree with my interpretation. *See In re Deepwater Horizon*, 761 F. App'x 311 (5th Cir. 2019) (unpublished per curiam) (affirming Order of Oct. 20, 2017 (Rec. Doc. 23560) which dismissed plaintiffs' claims because they executed GCCF releases).

[7] For example, Movants complain that I approved a common benefit fee award in the amount of $18 million to Mikal Watts, a former member of the Plaintiffs' Steering Committee, even though he had been indicted for allegedly falsely claiming to represent 40,000 oil spill claimants. What Movants omit, though, is that Watts was acquitted by a jury after a full trial on the merits. Movants further fail to acknowledge that my order merely adopted, per Fed. R. Civ. P. 53, a special master's recommendation to which there were **no** objections—not by Movants, not by anyone. (*See* Rec. Doc. 23574).

Another example is when Movants cite *Republic of Panama v. American Tobacco Co.*, 217 F.3d 343 (5th Cir. 2000), *overruled by Sao Paulo State of the Federative Republic of Brazil v. American Tobacco Co.*, 535 U.S. 229 (2002), as evidence that I have "[d]emonstrated a [p]attern of [f]ailing to [r]ecuse [my]self." (Rec. Doc. 25927-1 at 3). In that case, the Fifth Circuit ruled that I should have recused myself from a case involving claims against the tobacco industry. *Id.* at 347. What Movants fail to mention is that the Supreme Court later overruled that decision because the court of appeals did not consider all of the relevant facts. *Sao Paulo*, 535 U.S. at 233. Moreover, after considering all of the relevant facts, the Supreme Court found it "self-evident that a reasonable person would not believe [I] had any interest or bias." *Id.*

[8] For example, Movants state that the B1 Master Complaint "artfully circumvented" OPA by not "properly alleging claims under" that statute. (Rec. Doc. 25927-1 at 10, 18). To the contrary, the B1 Master Complaint expressly pleaded claims under OPA. (*See* Rec. Doc. 1128 ¶¶ 678-690).

[9] For example, Movants deride the Economic and Property Damages Settlement ("Economic Settlement") because, in their view, it "limit[ed] a claimant's recovery of damages by geographic bounds, pertain[ed] solely to certain business activities, and require[d] a heightened and vague proof of causation between his or her damages and the BP oil well blowout incident." (Rec. Doc. 25927-1 at 10). In other words, Movants believe I was wrong to approve the Economic Settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23 (Rec. Doc. 8138), and, by extension, the Fifth Circuit was incorrect to affirm this decision. *See In re Deepwater Horizon,* 744 F.3d 370 (5th Cir. 2014), *reh'g denied*, 753 F.3d 509 (5th Cir. 2014), *reh'g en banc denied*, 753 F.3d 516 (5th Cir. 2014). The time to make such arguments was in 2012, not 2019.

[10] Sticking with the example from the preceding footnote, Movants' belief that the Economic Settlement was a boon to BP is, frankly, baffling given BP's far-reaching efforts to upend the Settlement. *See, e.g.,* cases cited at the end of note 9, *supra*. What's more, while Movants assert that the Economic Settlement is unfair to class members (*e.g.*, Rec. Doc. 25927-1 at 17), they also bemoan

I will not waste time going through all of Movants' purported examples and explaining why each fails to meet § 455(a)'s standard. A more thorough discussion can be found in Herman's opposition. (*See* Rec. Doc. 26014 at 8-18). Suffice it to say, Movants' views are not those of a "well-informed, thoughtful and objective observer." *Andrade*, 338 F.3d at 455.

### III. POSSIBLE VIOLATIONS OF THE LOUISIANA RULES OF PROFESSIONAL CONDUCT

As an attorney appearing *pro hac vice* in this MDL, Donovan is subject to the Louisiana Rules of Professional Conduct as well as the disciplinary jurisdiction of this Court. *See* Third Amend. to Pretrial Order No. 1 (Rec. Doc. 7812); E.D. LA. RULES FOR LAWYER DISCIPLINARY ENFORCEMENT, RULE 1.1; E.D.LA. LOCAL RULE 83.2.3. Some of the statements in Donovan's briefs may have violated the Rules of Professional Conduct. Several examples are highlighted below:

> Donovan states:
>
> Plaintiff respectfully points out that **Judge Barbier colluded with Stephen J. Herman** to develop and/or facilitate an eight-step plan to maximize judicial efficiency and the compensation of the members of the MDL 2179 PSC in exchange for limiting the liability of BP.
> . . .
> **The U.S. District Court for the Eastern District of Louisiana has defined "collusion" as the "lawful means for the accomplishment of an unlawful purpose" and as a "secret understanding between two or more persons prejudicial to another . . . ."**
>
> . . . **The MDL 2179 Court's orders are contrary to U.S. Congressional intent, the OCSLA, the OPA, and U.S. Supreme Court decisions. The only logical conclusion is that they are the product of collusion.**

---

the fact that those who signed GCCF releases were excluded from participating in it (*id.* at 10). It is difficult to reconcile these positions.

8

(Rec. Doc. 25927-1 at 16-17 (bold type added, italics omitted)). I have never colluded with Herman or anyone else, whether to facilitate a supposed "eight-step plan" or otherwise.

Donovan states:

> Plaintiff respectfully points out that, in MDL 2179, **Judge Barbier intentionally abused his discretion** by allowing the Feinberg-administered victims' compensation fund to contravene the OPA and **by forcing the surviving plaintiffs to enter into an unfair, inadequate, and unreasonable collusive class settlement agreement** which contravenes the MDL statute, the U.S. Supreme Court's decision in the *Lexecon* case, and the OPA.

(Rec. Doc. 25927-1 at 17-18 (bold type added)). I forced no one into the Economic Settlement. Class members had the opportunity to opt out if they desired, and many did. The Economic Settlement was not unfair, inadequate, unreasonable, collusive, or in contravention of any law (*see* footnote 9, *supra*), although Donovan's statements to the contrary could be viewed as merely a difference of opinion. I also did not allow the GCCF to contravene OPA (*see* footnote 6, *surpa*), although, again, Donovan's statements to the contrary could be viewed as merely a difference of opinion. In any event, the fact that Donovan disagrees with my rulings is hardly support for the claim that I "intentionally abused [my] discretion," which I certainly did not.

Donovan states:

> The MDL 2179 Court, the PSC, BP, and Patrick Juneau **knew** that BP would only pay a total amount of US$20 billion to BP oil well blowout victims. Accordingly, the plaintiffs should have been informed that Patrick Juneau would pay less than 40% of the submitted claims. Instead, **in order to limit the number of plaintiffs who would opt-out, the MDL 2179 Court and PSC intentionally misled the plaintiffs by telling them that "the settlement has no cap or limit."**

9

(Rec. Doc. 25927-1 at 19 (bold type added, italics omitted)). Aside from the Seafood Compensation Program, the Economic Settlement has no cap. No one can be misled by a statement that is true. Also, BP's liability was never limited to $20 billion. Donovan's claim that I or anyone else knew otherwise is not only false, it is impossible. Finally, no one could know in advance how many claims would be determined eligible and paid under the Economic Settlement.

Donovan states:

> **Judge Barbier and Stephen J. Herman require plaintiffs' attorneys** who decide to become MDL 2179 Common Benefit Attorneys ("come into the fold") **to pay $10,000 to $33,000 to the PSC and enter into an onerous and unethical "Limited Joint-Prosecution and Confidentiality Agreement."**

(Rec. Doc. 25927-1 at 13 (bold type added)). I did not require any financial commitments by common benefit attorneys, nor did I require those attorneys to enter the agreement Donovan describes. What I did require of the Plaintiffs' Steering Committee was set forth publicly in orders, such as Pretrial Order No. 8 (Rec. Doc. 506).

Donovan states:

> Judge Barbier's Impartiality "Might Reasonably be Questioned" as a Result of **Fraudulent Inducement**
> . . .
> Plaintiff respectfully points out that **Judge Barbier believes that it is acceptable if he, the attorneys he appoints to allegedly represent the plaintiffs, the defendant, and the administrator of the proposed settlement fund secretly collude to inflate the amount of compensation received by some plaintiffs (just prior to the "fairness" hearing) in order to intentionally mislead the**

10

> **remaining plaintiffs into believing that the proposed settlement is "fair, reasonable, and adequate."**
>
> . . .
>
> **Judge Barbier, the attorneys he appointed to allegedly represent the plaintiffs, BP, and the administrator of the proposed settlement secretly colluded to inflate the amount of compensation received by some MDL 2179 plaintiffs . . . .**

(Rec. Doc. 25927-1 at 11,12,19 (bold type added)). I did not engage in "fraudulent inducement" or "secretly collude to inflate the amount of compensation received by some plaintiffs (just prior to the 'fairness' hearing) in order to intentionally mislead the remaining plaintiffs into believing that the proposed settlement is 'fair, reasonable, and adequate.'" Donovan's statements take out of context and improperly contort a portion of an order I issued on November 14, 2014. (*See* Rec. Doc. 13635).

I find there are grounds to believe that attorney Brian Donovan may have violated the following Louisiana Rules of Professional Conduct, which have been adopted by this Court: Rule 8.2(a) (making statements that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge), Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), and Rule 8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

I have contemplated ordering Donovan to show cause why the quoted statements should not be viewed as violations of the Rules of Professional Conduct and, if so, why he should not be sanctioned for such violations. However, I believe the better course is to initiate a disciplinary proceeding under our Court's Rules for Lawyer Disciplinary Enforcement so that someone other than myself may decide in

the first instance if a violation has occurred and what the appropriate sanction should be, if any.

Accordingly, I will refer Donovan's briefs, along with Herman's opposition and this Order & Reasons, to the Clerk of Court for the initiation of a disciplinary proceeding pursuant to the Eastern District of Louisiana's Rules for Lawyer Disciplinary Enforcement.

## IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Motions to Recuse (Rec. Docs. 25908, 25927) are DENIED.

IT IS FURTHER ORDERED that the Clerk of Court is instructed to commence a disciplinary proceeding against attorney Brian Donovan pursuant to this Court's Rules for Lawyer Disciplinary Enforcement.

New Orleans, Louisiana, this 8th day of November, 2019.

_____
United States District Judge