UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 | MDL NO. 2179 |
| | SECTION J |
| This document relates to: No. 12-970 | JUDGE BARBIER |
| | MAG. JUDGE WILKINSON |
| Claimant ID 100243047, Claim ID 254194 | |

**BP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO STRIKE CLAIMANT ID 100243047's "MOTION TO
CLARIFY, ALTER, OR AMEND THE COURT'S OCTOBER 3, 2018 ORDER"**

Pursuant to Section 18.1 of the Economic and Property Damages Settlement Agreement ("Settlement Agreement"), Defendants BP Exploration & Production, Inc., BP America Production Company and BP p.l.c. ("BP") move to strike Claimant ID 100243047's (Mueller Water Product's) Motion to Clarify, Alter or Amend the Court's October 3, 2018 Order (Doc. 25054) (the "Motion"). That Motion asks the Court to reconsider the exclusion of Mueller Water Products from the Class. However, Mueller Water Products has no right to pursue the underlying claim and thus no right to seek reinstatement in the Class. Before it filed the underlying claim with the Settlement Program, Mueller Water Products, though its subsidiary, sold 100% of the equity interests in the company that owns the claiming facility. Under well-established principles of corporate law, the right to the claim conveyed with the sale of the equity. Therefore, as of the time of the equity sale, Mueller Water Products and its subsidiary no longer owned the rights to the claim that it now seeks to prosecute. Tellingly, the entity that Mueller Water Products sold and that owns the claiming facility filed its own claim under its own name in 2014.[1]  Because

---

[1] This fact was publicly disclosed in a filing with the Security and Exchange Commission.  *See* Ex. 1, at 2 (2016 Stock Purchase Agreement).

Mueller Water Products has no right to the underlying claim, its Motion is improper and should be stricken.[2]

I. **Background**

The claim underlying the Motion seeks to recover for alleged losses incurred by a Bessemer, Alabama facility owned by United States Pipe and Foundry Company LLC ("USPF").[3] Prior to 2012, USPF was a wholly-owned subsidiary of Mueller Group, LLC, which itself was wholly owned by claimant Mueller Water Products, Inc.[4] On March 7, 2012, Mueller Water Products and Mueller Group entered into a Purchase Agreement with USP Holdings, Inc. In the Purchase Agreement, the Mueller entities sold to USP Holdings, Inc. "all of the outstanding membership interests in [USPF]."[5] Mueller Water Products did not reserve any rights with regard to claims by USPF.[6]

*After* selling its membership interests in USPF, Mueller Water Products filed a claim with the Claims Administrator seeking to recover for economic losses allegedly suffered by the Bessemer facility as a result of the Deepwater Horizon Oil Spill (the "Spill").[7]

Separately, on April 22, 2014, USPF, the owner of the Bessemer facility, filed its own claim also seeking to recover for alleged economic losses as a result of the Spill.[8]

On February 12, 2016, USP Holdings, Inc. in turn entered into a Stock Purchase Agreement wherein it sold to Forterra Pipe & Precast, LLC "all of the issued and outstanding shares of common stock" in several companies, including USPF.[9] As part of that agreement, USP Holdings

---

[2] BP respectfully reserves the right to oppose the Motion if the Court does not strike the Motion.
[3] *See* Docs. 25054-2, 25054-6.
[4] Exhibit 2 (2012 Purchase Agreement).
[5] *Id*.
[6] *See id*.
[7] *see* Docs. 25054, 25054-2.
[8] *See* Ex. 1, at 2.
[9] Exhibit 1.

assigned to Alabama Seller Rep Inc. (an agent of USP Holdings) "all of USPF's right, title and interest in or to" its claim under the Settlement Agreement.[10]

## II. Argument

Mueller Water Products does not have the right to pursue a claim for losses allegedly incurred by the Bessemer facility and therefore has no right to prosecute its Motion. Before it filed the underlying claim with the Settlement Program, Mueller Water Products, through its subsidiary, sold to USP Holdings Inc. 100% of the equity membership interests of USPF, the entity that owns the Bessemer facility. Under the law, all rights to file a claim for the Bessemer Facility transferred with the sale of the equity. Accordingly, Mueller Water Products had no right to file a claim in 2013 for losses allegedly incurred by USPF's Bessemer, Alabama facility, and has no right to seek reinstatement of the claim into the Class.

In an equity sale, the rights and liabilities of the entity being sold convey with the equity interests unless specifically excluded. *In re KB Toys Inc.*, 340 B.R. 726, 728 (D. Del. 2006) ("[I]t is a general principle of corporate law that all assets and liabilities are transferred in the sale of a company by a sale of stock…."); *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 365 (3d Cir. 2002)("[B]y purchasing LCSDI's stock, and not just its assets, Kool Mann agreed to pay a particular price for LCSDI as a whole—its assets and liabilities."). This rule flows from that fact that "the life of an entity continues in a stock sale." *Claimant ID 100009540 v. BP Expl. & Prod., Inc.*, 680 F. App'x 263, 267 (5th Cir. 2017) (citing BASIC LEGAL TRANSACTIONS § 28:7 (2011) (explaining that "in a sale-of-stock transaction, all assets owned by the corporation automatically become the purchaser's assets, since they are held in the corporate entity's name"). That rights and liabilities convey with the sale of equity applies equally to the sale of membership

---

[10] *Id.*, at 123.

interests in a limited liability company: "The sale of a limited liability company's membership interest is equivalent to the sale of one hundred percent of a corporation's stock . . . Accordingly, the court finds that the sale of all of the membership interests in a limited liability company transfer the entirety of the entity, including both known and unknown assets (unless specifically excluded), to the purchaser." *Spurlino v. Holcim (US) Inc.*, 2017 WL 3278880 (D. Utah 2017); *Excellence Cmty. Mgmt. v. Gilmore*, 351 P.3d 720, 722 (Nev. 2015) ("[T]he 100-percent membership sale of the LLC that took place in this case is equivalent to the sale of 100 percent of the stock in a corporation."); *Missett v. Hub Int'l Pa., LLC*, 6 A.3d 530, 537 (Pa. 2010) ("[W]e find that the structure of the sale of equity membership interests . . . to be akin to a sale of stock rather than an asset sale . . . .").

In *Spurlino v. Holcim (US) Inc.*, the court considered whether a claim for losses from alleged conduct occurring prior to the sale of the membership interests in a limited liability company transferred with the sale of the LLC's equity. The court answered the question in the affirmative: "Because the UUPA claim was not included among these Excluded Assets, it was necessarily transferred to Kilgore [the buyer] with the sale of the membership interest." 2017 WL 3278880 *6. Similarly, in *In re KB Toys Inc.* the court addressed the question of whether the right to tax refunds transferred with the sale of the stock of a company. 340 B. R at 728. Once again, the court said the answer was yes: "The tax refunds 'belong' to the corporate entity whose stock was transferred. The Government owes those funds to no one else." *Id*.

The result is the same with regard to the sale of USPF. When Mueller Group sold 100% of the membership equity interests in USPF to USP Holdings, the right to make a claim for alleged losses to USPF's Bessemer, Alabama facility transferred with the sale of the equity. Accordingly,

following that sale, USPF, and not Mueller Water Products or any other member of the Mueller corporate family, owned the rights to the claim.

To the extent that Mueller Water Products argues that it should be permitted to file a claim because its subsidiary owned the Bessemer Facility at the time of the alleged loss, this argument is entirely without merit. In all of the above-referenced cases, the question was whether claims arising from alleged pre-sale injury conveyed with the sale of an entity's equity. The courts have held that the answer is yes. Here, USPF remained in existence after the sale. Only the ownership of its equity changed. When USPF was sold, the claim transferred with it. In addition to being a core principle of corporate law, there is nothing inequitable about this doctrine. It simply means that when a corporation elects to sell its equity, it is selling both the assets/rights and the liabilities of the entity being sold, save those assets/rights or liabilities that are specifically excluded. The Mueller entities did not exclude any assets/rights or liability from the sale of the membership interests of USPF. Therefore, as a matter of law, all assets/rights and liabilities transferred with USPF, and Mueller Water Products has no right to make claims on behalf of the entity it sold.

The Court should likewise reject any argument that as a matter of "economic reality" Mueller Water Products' corporate family suffered the alleged loss for which the claim was filed. The economic and legal reality is that to the extent it incurred a loss in 2010, Mueller Water Products and its subsidiary elected to sell the claim with the membership interests in 2012.

Mueller Water Products may attempt to argue that it incurred the loss and therefore is the proper claimant. Such an argument fails for multiple reasons. As an initial matter, a parent and a subsidiary are not one and the same. *See, e.g., Dole Food Co. v. Patrickson*, 538 U.S. 468, 469, 123 S. Ct. 1655, 1657, 155 L. Ed. 2d 643 (2003) ("As a corporation and its shareholders are distinct entities, a corporate parent which owns a subsidiary's shares does not, for that reason alone, own

or have legal title to the subsidiary's assets.") (internal citation omitted); *Klauder v. Echo/RT Holdings, LLC*, 152 A.3d 581 (Del. 2016) ("Simply put, a parent's ownership of all of the shares of the subsidiary does not make the subsidiary's assets the parent's."); Del. Code tit. 6, § 18-701 ("A limited liability company interest is personal property. A member has no interest in specific limited liability company property."). USPF, not its indirect parent Mueller Water Products, owned the Bessemer facility prior to the 2012 sale. Thus, prior to the 2012 equity sale, the claim belonged to USPF, not Mueller Water Products. Indeed, Mueller Water Products' counsel has strenuously and successfully argued to this Court and the Fifth Circuit that for purposes of the Settlement Agreement the focus is on the entity that owns the claiming facility and not its corporate parent. *BP Expl. & Prod., Inc. v. Claimant ID 100211268*, 706 F. App'x 197, 198 (5th Cir. 2017).

That Mueller Water Products purportedly elected to treat USPF as a "disregarded entity" for federal income tax purposes does not change the result. The IRS's "disregarded entity" rule simply allows the owner of a single member limited liability company to elect to report the LLC's income on the parent's tax return "for federal tax purposes." 26 C.F.R. § 301.7701-3(a). It does not otherwise change the corporate structure of an entity or long-standing principles of corporate separateness. *See, e.g., Sun Capital Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund*, 903 F. Supp. 2d 107, 119 (D. Mass. 2012) ("[26 C.F.R. § 301.7701–3] specifically limits its own application to 'Federal tax purposes.'. . . In fact, it is long-settled that state law, and not federal law, governs the bounds of corporate liability in the absence of a conflicting federal incorporation statute."). And even if Mueller Water Products somehow was permitted to make a claim on behalf of the Bessemer facility prior to the 2012 equity sale, it sold that right when it and its subsidiary Mueller Group sold the membership interest of USPF to USP Holdings in 2012.

Still further, the Court should reject as irrelevant any argument by Mueller Water Products questioning the validity of the assignment of the claim from USP Holdings (the entity that purchased USPF from the Mueller corporate family) to its agent in connection with the 2016 sale of the membership interests of USPF to Forterra Pipe & Precast, LLC.  This subsequent sale from USP Holdings to Forterra is not relevant to the instant motion other than to demonstrate that USPF had filed its own claim after the entity was sold by Mueller Water Products and its subsidiaries. Whether that claim stayed with USP Holdings pursuant to the 2016 assignment or transferred with the equity does not matter.  In either case, the claim does not belong to Mueller Water Products and its corporate family, which had sold the equity in USPF four years earlier.

Finally, to the extent that Mueller Water Products argues that it should be allowed to substitute in USPF as the claimant, that is incorrect.  USPF has already submitted its own claim . USPF's rights under the Settlement Agreement are governed by the outcome of that claim.  Mueller Water Products cannot resuscitate its own improper claim by replacing its name with that of USPF.

### III.     Conclusion

For all of the above reasons, the Court should strike the Motion.

<table>
<tr><td>December 20, 2019</td><td>Respectfully submitted,<br><br>*/s/ Devin C. Reid*<br>Devin C. Reid (Bar #32645)<br>R. Keith Jarrett (Bar #16984)<br>**LISKOW & LEWIS**<br>ATTORNEY<br>One Shell Square<br>701 Poydras Street, Suite 5000<br>New Orleans, Louisiana 70139-5099<br>Telephone: (504) 581-7979<br>Fax No. (504) 556-4108<br><br>Matthew T. Regan, P.C.<br>J. Andrew Langan, P.C.<br>Kristopher S. Ritter<br>**KIRKLAND & ELLIS LLP**<br>300 North LaSalle Street<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br>Fax: (312) 862-2200<br><br>Christopher W. Keegan<br>Ashley Littlefield<br>Anna Terteryan<br>**KIRKLAND & ELLIS LLP**<br>555 California Street<br>San Francisco, CA 94104<br>Telephone: (415) 439-1400<br><br>*Attorneys for BP America Production Company, BP Exploration & Production Inc., and BP p.l.c.*</td></tr>
</table>

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of December, 2019.

                */s/ Devin C. Reid*
                Devin C. Reid