# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HANK J. KIFF | * | CIVIL ACTION<br>No. 12-02715 |
| V. | * | |
| | | SECTION: J(2) |
| BP AMERICA PRODUCTION<br>COMPANY | * | JUDGE BARBIER |
| | * | |
| | | MAG. JUDGE WILKINSON |
| | * | |

## SUGGESTION OF REMAND[1]

TO THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION:

In accordance with 28 U.S.C. § 1407(a) and Rule 10.1(b) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the undersigned transferee judge for MDL No. 2179, *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, respectfully suggests that the following case be remanded to the transferor district (Southern District of Texas) for further proceedings:

| Case Name | MDL No. | Transferee District and Case No. | Transferor District and Case No. |
|---|---|---|---|
| Hank J. Kiff v. BP America Production Company | 2179 | E.D. La.<br>No. 12-02715 | S.D. Tex.<br>No. 12-03179 |

---

[1] This Suggestion of Remand incorporates information from the parties' Joint Supplement filed on December 10, 2019. (No. 12-02715, Rec. Doc. 10; *see also* Order Re: Suggestion of Remand, No. 12-02715, Rec. Doc. 9).

I.  **Introduction: The DEEPWATER HORIZON/Macondo Well Casualty and Oil Spill, the Response, and Hank Kiff's Claims**

On the evening of April 20, 2010, a blowout, explosions, and fire occurred on the DEEPWATER HORIZON, a semi-submersible drilling rig, as it was in the process of temporarily abandoning a well, known as Macondo, it had drilled on the Outer Continental Shelf approximately 50 miles off the coast of Louisiana. Eleven workers died tragically in the casualty; the 115 survivors evacuated to a nearby supply vessel. Fueled by hydrocarbons from the well, the fire on the DEEPWATER HORIZON burned continuously until mid-morning on April 22, when it capsized and sank. As the rig descended, the pipe that had connected it to the well (known as a marine riser) collapsed and fractured in multiple places. Oil from the well then spewed into the Gulf of Mexico via the riser breaks, approximately 5,000 feet beneath the water's surface. The Macondo Well was successfully capped on July 15, 2010, halting a nearly three-month discharge that released an estimated 3.19 million barrels of oil into the Gulf. (Rec. Doc. 14021 ¶¶ 184, 273).[2] In September, a relief well pumped cement into Macondo's annulus, killing the well.

The oil spill instigated a massive response that included government entities and officials, BP (the majority owner and designated operator of the Macondo Well), BP's contractors and subcontractors, other industry participants, and thousands of private individuals. The response involved, over time, a cumulative total of over 90,000 response workers, 6,500 vessels, 127 aircraft, and 13.5 million feet boom. (Rec.

---

[2] "Rec. Doc." citations are to the MDL 2179 master docket (No. 10-md-2179), unless the citation indicates otherwise.

2

Doc. 8217 at 2). Response activities included skimming oil from the surface of the water, *in situ* burning of oil, deploying containment and sorbent boom, onshore and beach clean-up, decontaminating vessels that engaged in various response efforts, and the application of chemical dispersants. A particularly relevant aspect of the response is the "Vessels of Opportunity" ("VoO") Program, where local vessels were hired to perform various response activities, such as placing or retrieving boom.

According to his state court petition, Hank Kiff was working on a vessel participating in the VoO program. Kiff alleges that "[o]n or about August 21, 2010, as Plaintiff was performing his regular duties aboard the vessel, he sustained severe and disabling injuries to his person." (No. 12-02715, Rec. Doc. 1-2 ¶ 9). Although Kiff's petition is unclear as to the exact nature of his injury, the Court understands that Kiff does *not* claim injuries from chemical exposure (exposure to oil and/or chemical dispersant), unlike most of the plaintiffs with personal injury claims in this MDL. Rather, it appears that Kiff alleges he injured his neck and back while deploying boom.

Kiff sued BP America Production Company ("BP") in Texas state court in 2012. (No. 12-02715, Rec. Doc. 1-2). BP removed to the Southern District of Texas, and the Judicial Panel on Multidistrict Litigation subsequently transferred the case to this Court pursuant 28 U.S.C. § 1407, whereupon it was consolidated with MDL 2179.

## II. Relevant MDL 2179 Proceedings

The Judicial Panel on Multidistrict Litigation created this MDL on August 10, 2010. (Rec. Doc. 1). There have been many developments over the ensuing nine

3

years.[3] The Court recounts below the MDL's procedural history with a focus on events relevant to Kiff's case. Events in the MDL that are not relevant to Kiff have largely been omitted.

Numerous claims asserting a variety of damages were consolidated in this MDL. In Pretrial Order No. 1, the Court stayed "all outstanding discovery proceedings" in individual cases and provided that "no further discovery shall be initiated." (Rec. Doc. 2 ¶ 8). The Court subsequently organized claims by type into one of several "pleading bundles." (*See* Pretrial Order No. 11, Rec. Doc. 569; Pretrial Order No. 25, Rec. Doc. 983). The claim at issue falls within the "B3" pleading bundle, which includes personal injury claims due to chemical exposure, non-exposure personal injury claims, and contract claims, among others.

In 2012, BP agreed to the Deepwater Horizon Medical Benefits Class Action Settlement Agreement. ("Medical Settlement," Rec. Doc. 6427). The Medical Settlement, which the Court approved pursuant to FED. R. CIV. P 23(e) on January 11, 2013 (Rec. Docs. 8217, 8218) following an objection and opt-out period and a final fairness hearing, was intended to resolve personal injury claims from alleged exposure to oil and/or dispersants arising from the DEEPWATER HORIZON/Macondo Well incident and response. Although cleanup workers like Kiff were included within the settlement class, the class-wide release in the Medical Settlement did not release claims for "non-exposure-based physical or bodily trauma

---

[3] The MDL master docket, No. 10-md-2179, contains over 26,000 document entries to date. Many of the significant rulings, case management orders, etc., in MDL 2179 are posted to the Court's public website, http://www.laed.uscourts.gov/OilSpill/OilSpill.htm.

4

injury." (Medical Settlement § XVI.G, Rec. Doc. 6427). Consequently, Kiff's non-exposure personal injury claim is not barred by the Medical Settlement.

The Court held two major bench trials in 2013 and a third in 2015. The Phase One Trial commenced on February 25, 2013 and concluded on April 17, 2013. Known as the Incident Phase, it addressed fault determinations relating to the loss of well control, the ensuing explosion and fire, the sinking of the DEEPWATER HORIZON, and the initiation of the release of oil from the well. (*See* Findings & Conclusions, Phase One Trial, Rec. Doc. 13381). The Phase Two Trial commenced on September 30, 2013 and concluded on October 18, 2013. This phase was divided into two segments: "Source Control" and "Quantification." Source Control concerned issues pertaining to stopping the discharge of hydrocarbons; the Quantification segment addressed the amount of oil that released into the Gulf of Mexico. (*See* Findings & Conclusions, Phase Two Trial, Rec. Doc. 14021). The third phase, known as the Penalty Phase, occurred between January 20 and February 2, 2015. The purpose of that trial was to determine the amount of the civil penalty to be imposed under the Clean Water Act, 33 U.S.C. § 1321(b)(7), on BP and Anadarko Petroleum Corporation, which owned a minority interest in the Macondo Well. (*See* Findings & Conclusions, Penalty Phase Trial, Rec. Doc. 15606).

Once the major trial phases were concluded, the Court turned its attention to other matters in the MDL. On February 22, 2017, the Court issued Pretrial Order No. 63 ("PTO 63"), which applied to all remaining claims in the B3 bundle. (Rec. Doc. 22295). PTO 63 required all plaintiffs who had timely filed a claim in the B3 pleading

5

bundle and had not released their claims to submit certain documents. Specifically, B3 plaintiffs who previously filed an individual lawsuit (i.e., a single-plaintiff complaint without class allegations) were required to complete, file, and serve a sworn statement regarding the status of their claim. B3 plaintiffs who had not filed an individual lawsuit, but instead had filed a Short Form Joinder and/or were part of a complaint with more than one plaintiff, were required to complete, file, and serve an individual lawsuit in this Court and a sworn statement. B3 plaintiffs initially had until April 12, 2017 to comply with PTO 63. Many sought and received an extension up to May 3, 2017. PTO 63 warned that plaintiffs who failed to comply would "face dismissal of their claims with prejudice without further notice." (PTO 63 at 7, Rec. Doc. 22295).

On July 18, 2017, the Court issued the "PTO 63 Compliance Order." (Rec. Doc. 23047). Exhibit 1 to the PTO 63 Compliance Order identified 960 B3 plaintiffs deemed to be compliant with PTO 63 and whose B3 claims were subject to further proceedings in this Court. Kiff is listed among the PTO 63-compliant plaintiffs. B3 claims that were not listed on Exhibit 1 were dismissed with prejudice. Some B3 plaintiffs moved for reconsideration of the PTO 63 Compliance Order. On December 6, 2017, the Court issued an order granting some of those motions and denying others. (Rec. Doc. 23735). On April 6, 2018, the Court issued an Updated PTO 63 Compliance List, identifying 981 B3 plaintiffs that had complied with PTO 63. (Rec. Doc. 24268).

On April 9, 2018, the Court issued Pretrial Order No. 66 ("PTO 66," Rec. Doc. 24282), which required remaining B3 plaintiffs to complete, sign, and serve a

6

Particularized Statement of Claim ("PSOC," Exhibit A to PTO 66) on counsel for BP.[4] The PSOC is a 12-page questionnaire that was designed to help the parties and the Court better understand the nature and scope of the injuries, damages, and causation alleged by the remaining B3 plaintiffs. The PSOC solicited general background information about each B3 plaintiff as well as information specific to the plaintiff's claim. Part "E" of the PSOC, entitled "Non-Exposure Personal Injury Claims," and Part "F," entitled "Information About Your Injury or Illness," required the plaintiff to provide the following information:

> 27. For your non-exposure personal injury, please state:
>    A. The nature of your injury:
>    B. The date(s) of your injury:
>    C. The location(s) of your injury:
>    D. The work that you were performing when you sustained your injury:
>    E. Identify any individual(s) who witnessed your injury:
>
> 28. Describe in as much detail as possible the circumstance(s) of your injury:
>
> 29. Describe in as much detail as possible the bodily injury (or medical condition) that you claim resulted from the spill or your cleanup work in response to the oil spill:
>
> 30. Please explain how your injury (or medical condition) resulted from the spill or your cleanup work in response to the oil spill:
>
> 31 On what date did you first report or seek treatment for your injury or illness:
>
> 32. On what date was your injury first diagnosed:
>
> 33. Identify the doctor(s) (or other healthcare providers) who first diagnosed your injury (or condition):

---

[4] The B3 plaintiffs were not required to file the PSOC in the Court's record.

7

34. Identify doctor(s) (or other healthcare providers) who have treated your injury (or condition):

35. Have you ever suffered this type of injury or condition before (i.e., before the date given in your answer to Question No. 32)? [yes or no] If "Yes,"
    A. When?
    B  Who diagnosed the injury (or condition) at that time?
. . .
37. Please list your family and/or primary care physician(s) for the past ten (10) years:

38. Do you have in your possession, custody, or control, any medical records, bills, and any other documents, from physicians, healthcare providers, hospitals, pharmacies, insurance companies, or others who have provided treatment to you relating to the diagnosis or treatment of any injuries or illnesses arising from the *Deepwater Horizon* oil spill or response efforts, or that you otherwise identified in this Form?

39. Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount:

40. Have you received workers compensation or other compensation or reimbursement for the injury alleged or associated expenses? [yes or no] If "Yes":
    A. From whom did you receive this compensation or reimbursement?
    B. When did you receive this compensation or reimbursement?
    C. What was the amount of the compensation or reimbursement?

(Rec. Doc. 24282-1). Many B3 plaintiffs sought and received an extension up to and including August 8, 2018 to comply with PTO 66. (Rec. Doc. 24671). On September 20, 2018, the Court issued the "PTO 66 Show Cause Order," which identified 825 B3 plaintiffs who appeared to be compliant with PTO 66. (Rec. Doc. 24875). Those who were not compliant were required to show cause in writing why their claims should

8

not be dismissed with prejudice. Although Kiff was identified as non-compliant in the PTO 66 Show Cause Order (due to his being a class member in the Medical Settlement, *see* Rec. Doc. 24874-4 at 2), he was later deemed compliant in the "PTO 66 Compliance Order," issued on January 31, 2019. (Rec. Doc. 25356 at 3, 8, 18). The PTO 66 Compliance Order identified 911 B3 plaintiffs who had complied with PTO 66. (Rec. Doc. 25356-8). After addressing motions for reconsideration, the Court issued an Updated PTO 66 Compliance List on June 26, 2019, which identified 913 B3 plaintiffs, including Kiff, who had complied with PTO 66. (Rec. Doc. 25748). The Court subsequently deemed another 22 plaintiffs to be compliant with PTO 66, bringing the total number of PTO 66-compliant B3 plaintiffs to 935. (Rec. Docs. 25907, 25929).

The Court held status conferences in July and August 2019 to address future management of the remaining cases in the B3 pleading bundle. (Recs. Doc. 25858, 25994). During that time it became clear that the vast majority of plaintiffs in the B3 bundle asserted chemical exposure personal injury claims. By contrast, only a relative handful of cases in the B3 bundle alleged contract claims or non-exposure personal injury claims. At the July status conference the Court decided to sever from the MDL twelve cases that asserted only contract claims. (Rec. Doc. 25858). During the August status conference the Court decided to sever three more cases—one that alleged claims under the Family and Medical Leave Act against Abdon Callais Offshore, L.L.C. and two that asserted only non-exposure personal injury claims. (Rec. Doc. 25994). Kiff's case was one of the non-exposure personal injury cases.

9

Accordingly, on September 3, 2019, the Court issued an order formally severing Kiff's case from the MDL. (Rec. Doc. 26000). Because his case was transferred here pursuant to 28 U.S.C. § 1407, the Court required Kiff and BP to file a statement setting forth whether they consented to trial in this Court. If they did not, the case would need to be remanded to the transferor district. *See* FED. JUDICIAL CTR., MANUAL ON COMPLEX LITIGATION (FOURTH) § 22.93 (2004) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)). Kiff did not consent. (No. 12-02715, Rec. Doc. 7).

### III. Analysis

The DEEPWATER HORIZON/Macondo Well incident gave rise to not only a great number of claims, but also a wide variety of claim types. When the Judicial Panel on Multidistrict Litigation created MDL 2179, it noted that centralization "will eliminate duplicative discovery, prevent inconsistent pretrial rulings, including ruling on class certification and other issues, and conserve the resources of the parties, their counsel, and the judiciary." (Rec. Doc. 1 at 3). The overwhelming majority of claims have been resolved. However, there is still work to do in the MDL. With over 900 cases—nearly all of which assert chemical exposure claims—the B3 bundle now comprises the largest group of remaining claims in the MDL. The Court recently issued Pretrial Order No. 68 ("PTO 68"), which requires, among other things, that B3 plaintiffs produce medical records and other documents to BP within 90 days. (Rec. Doc. 26070).

On the other hand, because there were just 2 cases remaining in the MDL that assert only non-exposure personal injury claims (Nos. 12-02715 and 12-00164), the Court concluded those cases would not benefit from further coordinated proceedings and severed them from the MDL.[5]  Furthermore, because Kiff's case, No. 12-02715, was transferred here pursuant to 28 U.S.C. § 1407, the Court believes remand to the transferor court is appropriate.

## IV.  Remaining Discovery and Pretrial Issues (Parties' Joint Supplement)

The Court instructed Kiff and BP to file a Joint Supplement to the Suggestion of Remand identifying "[a]ny remaining discovery or other pretrial issues that must be resolved in order for the remanded case[] to be ready for trial." (No. 12-02715, Rec. Doc. 9 at 1). The parties have filed their Joint Supplement, which states:

> Mr. Kiff's personal injury suit against BP has been stayed since it was filed in 2012. (*See* MDL 2179, Rec. Doc. 16 ¶8; Rec. Doc. 983 ¶8). In creating the individual pleading bundles in MDL 2179, the Court confirmed that all cases in the B3 Pleading Bundle, including Mr. Kiff's case, "whether pre-existing or filed hereafter, are stayed until further order of the Court." (MDL 2179, Rec. Doc. 983 ¶8). While the Court required the B3 plaintiffs to provide certain information regarding their claims in Pretrial Order Nos. 63 and 66, all other discovery in the B3 cases remain stayed. (MDL 2179, Rec. Doc. 22295 ¶9; Rec. Doc. 24282 § III). Pretrial Order 68 (MDL 2179, Rec. Doc. 26070), which required BP and certain B3 plaintiffs to make specified disclosures, does not apply to Mr. Kiff's case. (MDL 2179, Rec. Doc. 26000). Accordingly, the Parties have not engaged in any discovery in this case to date. Upon transfer, the Parties intend to discuss with the court a schedule for the exchange of initial disclosures, fact discovery (including document productions and depositions of the plaintiff and other fact witnesses), expert discovery, and dispositive motions, as applicable.

(No. 12-02715, Rec. Doc. 10 at 2).

---

[5] To be clear, PTO 68 does not apply to Kiff's case.

11

## V. Conclusion

IT IS HEREBY SUGGESTED to the United States Judicial Panel on Multidistrict Litigation that the following case be remanded to the transferor district (Southern District of Texas) for further proceedings and trial.

| Case Name | MDL No. | Transferee District and Case No. | Transferor District and Case No. |
|---|---|---|---|
| Hank J. Kiff v. BP America Production Company | 2179 | E.D. La. No. 12-02715 | S.D. Tex. No. 12-03179 |

IT IS FURTHER ORDERED that the Clerk of this Court shall immediately send a copy of this Suggestion of Remand to the Clerk for the United States Judicial Panel on Multidistrict Litigation.

New Orleans, Louisiana, this 12th day of December, 2019.

_____
United States District Judge