UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 SECTION: J(2) JUDGE BARBIER |
| Applies to: CASE NO. 2:13-CV-00650-CJB-JCW | * * | MAG. JUDGE WILKINSON |

**BP'S OPPOSITION TO PLAINTIFFS WILLIAM J. FITZGERALD, III'S AND DIANNA FITZGERALD'S MOTION TO COMPEL**

BP Exploration & Production Inc. and BP America Production Company (together, "BP") respectfully submit this opposition to Plaintiffs William Fitzgerald III's and Dianna Fitzgerald's (the "Fitzgerald Plaintiffs")[1] motion to compel BP to reproduce certain pages of the initial disclosures that BP has previously provided pursuant to Pretrial Order 68 ("PTO 68") (Rec. Doc. 26070). BP has fully complied with its obligations under PTO 68 and the Federal Rules of Civil Procedure, and BP respectfully requests that the Court deny the Fitzgerald Plaintiffs' motion.

In accordance with PTO 68, BP produced documents relevant to the Fitzgerald Plaintiffs and all other B3 Plaintiffs well in advance of the January 21, 2020 initial disclosure deadline. In accordance with the Federal Rules of Civil Procedure and this Court's prior guidance in Back-End Litigation Option ("BELO") cases involving similar issues, in certain voluminous time records and invoices, BP redacted personal information relating to individuals other than the plaintiff at issue and not otherwise responsive to PTO 68. In their motion, the Fitzgerald Plaintiffs ask this Court to order BP to create entirely new documents for litigation that do not exist in BP's files by removing those pages that have been redacted in their entirety so that the Fitzgerald Plaintiffs'

---

[1] Plaintiffs bring their suit, and this motion, on behalf of decedent Nathan Joseph Fitzgerald.

counsel need not review those pages. The Fitzgerald Plaintiffs' demand for litigation-created documents contravenes the Federal Rules of Civil Procedure, PTO 68, and this Court's prior ruling in *Harriel v. BP Exploration & Production Inc.*, No. CV 17-7024, 2017 WL 6040051 (E.D. La. Dec. 6, 2017) (denying motion to compel BP to produce redacted information in initial disclosures under BELO CMO). Such a result would also place undue burden on BP, which has no automated way to remove redacted pages from this and thousands of other productions, and the courts' management of the B3 and BELO dockets as a whole, without any real benefit to the Fitzgerald Plaintiffs, who already have all of the documents and information called for by PTO 68.

## BACKGROUND

On April 8, 2013, the Fitzgerald Plaintiffs filed their personal injury lawsuit, which was later included in the B3 Pleading Bundle. (4/8/13 Compl., No. 13-cv-00650, Rec. Doc. 1; PTO 11, Rec. Doc. 569.) On October 21, 2019, this Court issued PTO 68, which, among other things, specified various categories of information and documents that the Parties in the B3 cases were to produce during the initial disclosure process prior to January 21, 2020 (the "Disclosure Deadline").[2] Consistent with the disclosure requirements set forth in the BELO Case Management Order (Rec. Doc. 14099) ("BELO CMO"), PTO 68 specified 15 separate categories of documents that BP was to produce to the B3 Plaintiffs by the Disclosure Deadline. Twelve of these categories related to documents that are potentially relevant to the B3 cases generally (the "B3 General Production"), while three categories called for the production of documents specific to each particular B3 Plaintiff (the "B3 Plaintiff-Specific Production")—in particular:

- "All information, data and/or tangible materials, if any, about plaintiff in the BP

---

[2] The PTO 68 disclosure deadline was extended to February 20, 2020 for certain B3 Plaintiffs at their request (Rec. Docs. 26204, 26206, 26194, and 26210). BP did not oppose those requests. BP completed its initial disclosures production to all B3 Plaintiffs in advance of the original January 21 deadline.

2

>   medical encounters database and/or oil spill cleanup worker database;"
>
> - "All non-privileged information, data, and/or tangible materials concerning job duty, job assignment, safety training, badge data and/or time records, if any, in BP's possession, custody or control relating to plaintiff;"
>
> - "All contracts and/or agreements between BP and plaintiff or plaintiff's direct employer(s), if any, concerning oil spill response work, including but not limited to requirements, policies, invoices and procedures concerning health, safety and welfare of oil spill response workers[.]"

(PTO 68 at § I.A.1(a)–(c)). In its first amendment to PTO 68, the Court delineated the technical specifications for these productions. (10/28/19 First Am. to PTO 68, Rec. Doc. 26077 at 2–3.)

In advance of the Disclosure Deadline, BP searched for, collected, and produced non-privileged documents called for by PTO 68 for the Fitzgerald Plaintiffs and all other 922 B3 Plaintiffs.[3] In particular, on November 21, 2019, BP produced to all B3 Plaintiffs its B3 General Production, which consisted of 78,676 documents falling within the categories specified in PTO 68. (Ex. A, 11/21/19 V. Barsanti Ltr.) On December 17, 2019, BP produced its B3 Plaintiff-Specific Production to the Fitzgerald Plaintiffs, which included time records, invoices, safety training documents, contracts, and other documents relevant to them. (Ex. B, Declaration of Ken Prine ("Prine Decl.") ¶¶3, 12; Ex. C, 12/17/19 V. Barsanti Ltr.) This Plaintiff-Specific Production consisted of a total of 86 documents—not 20,669 documents as the Fitzgerald Plaintiffs contend.[4] (Prine Decl. ¶12; Ex. C.) As Federal Rule of Civil Procedure 34 requires, BP produced complete copies of its initial disclosure documents to the Fitzgerald Plaintiffs—and other B3 Plaintiffs—in the manner in which those documents "are kept in the usual course of business." Fed. R. Civ. P.

---

[3] Section I.A.1(p) of PTO 68 requires BP to produce "responsive documents received through use of plaintiffs' executed Releases." BP does not yet have any such documents.

[4] Plaintiffs appear to be counting *pages*, not documents, given that they downloaded the files in individual TIFs. (Ex. D, 12/26/19 C. Dunbar Ltr.) Each TIF file is an image for an individual page. If Plaintiffs had used a standard discovery review platform, it would have been apparent that there were only 86 documents in the production.

3

34(b)(2)(E)(i). Consistent with its obligations under the Federal Rules, prior rulings of this Court, and its practice in thousands of other B3 and BELO productions, BP redacted certain personal information relating to individuals other than the Fitzgerald Plaintiffs that appeared in various time records and invoices, marking those pages as "Non-Responsive." (Prine Decl. ¶¶7–9.)

On December 26, 2019, Plaintiffs sent BP a letter asking about BP's production of "Non-Responsive" pages. (Ex. D, 12/26/19 C. Dunbar Ltr.) On December 31, 2019, BP responded, explaining that it had redacted portions of voluminous time records and invoices because they "contain personal information regarding other individuals and do not relate to Mr. Fitzgerald or reflect information designated for disclosure under PTO 68." (Ex. E, 12/31/19 V. Barsanti Ltr.) BP indicated that it had made similar redactions of personal information—including information protected from disclosure by the Health Insurance Portability Accountability Act ("HIPAA")—in other B3 and BELO cases and pointed counsel to this Court's prior ruling in *Harriel* upholding this approach. (*Id.*; *see also* 2017 WL 6040051 at *2.) BP offered to discuss these issues further and answer any questions (*id.*), but Plaintiffs filed the instant motion instead.

## ARGUMENT

The Fitzgerald Plaintiffs' demand for a production that removes pages from documents maintained in the ordinary course of BP's business is inconsistent with the requirements of the Federal Rules and this Court's Orders, places an unnecessary and undue burden on BP and the courts, and creates the possibility of future disputes in this and other B3 and BELO cases.

**I.    BP'S PRODUCTION COMPLIES WITH ITS OBLIGATIONS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE.**

First and fundamentally, BP's production to the Fitzgerald Plaintiffs complies with the requirements of Federal Rule of Civil Procedure 34, which requires that a party produce documents "as they are kept in the usual course of business or must organize and label them to correspond to

4

the categories in the request." Fed. R. Civ. P. 34 (a)(2)(E)(i); *Hall v. Habul*, No. Civ.A. 13–406–SDD–RLB, 2015 WL 4094216 at *6 (M.D. La. July 7, 2015) (producing documents "as they are kept in the usual course of business" is "expressly allowed by Rule 34(b)(2)(E)(i)"). Altering or selectively removing pages from a document is inconsistent with a party's obligation under Rule 34 to produce documents as they are kept in the usual course of business. *See, e.g.*, *Zysman v. Zanett Inc.*, No. C-13-02813, 2014 WL 1320805, at *3 (N.D. Cal. Mar. 31, 2014) ("Under Rule 34, Defendants are only required to produce documents as they are kept in the ordinary course of business, not to alter the documents or explain information contained therein."); *Dahl v. Bain Capital Partners, LLC*, 655 F. Supp. 2d 146, 149 (D. Mass. 2009) (parties producing documents under Rule 34 "do not have to alter the format of documents[;] they need only produce documents as they ordinarily maintain them").

      The cases that the Fitzgerald Plaintiffs cite in their motion actually demonstrate that the Federal Rules require a party to produce documents in the manner in which those documents are maintained in the usual course of business—as BP has done here. For example, in *In re Sulfuric Acid Antitrust Litigation*, a defendant that had been out of business for several years produced documents that had been placed in 350 storage boxes in no particular order and without organization. 231 F.R.D. 351, 362 (N.D. Ill. 2005). Because the organization of the documents had been altered from how they had been kept when the company was in operation, the Court found that the documents had been "artificial[ly] shift[ed]" and thus were not produced as kept in the usual course of business. *Id.* at 363. Likewise, in *T.N. Taube Corp. v. Marine Midland Mortg. Corp.*, the documents at issue "were produced in a box in no discernable order." 136 F.R.D. 449, 456 (W.D.N.C. 1991). The Court noted that it "doubts very much" that the producing party "kept [these documents] in the usual course of business" because "[i]t is certainly improbable that [the

producing party] routinely haphazardly stores documents in a cardboard box." *Id.* Finally, in *Cubellis, Inc. v. LIFT*, the defendant in question produced two DVDs consisting of scanned versions of documents being kept in an offsite storage facility without any indication that this was how the documents had been kept in the normal course of business. 2009 WL 10680190 at *1 (E.D. La. Jan. 15, 2009). These cases make clear that the Federal Rules do not permit a party to improperly alter a document before production.

Nor are the collection, review, and production scenarios in the cases that the Fitzgerald Plaintiffs cite comparable to the thorough processes that BP has implemented in connection with its PTO 68 disclosures. Rather, to ensure that it did not produce irrelevant materials that would result in a "document dump," BP carefully searched its vast files and databases that contain information relating to the *Deepwater Horizon* spill and response for the specific documents set forth in PTO 68 relating to the Fitzgerald Plaintiffs. (Prine Decl. ¶4.) BP then conducted a page-by-page review of responsive documents. (*Id.* at ¶7.) In instances of voluminous invoices and time records that contained personal information relating to other individuals—including in some cases, HIPAA-protected health information—BP redacted portions of those documents to protect other individuals' privacy. (*Id*. at ¶¶7–8.) BP has followed this Court-sanctioned method previously for thousands of cases in connection with the BELO and other B3 initial disclosure productions. (*Id*. at ¶9.)

Plaintiffs merely mention Rule 34 in passing in their motion; they do not explain how BP's production is supposedly inconsistent with the Rule, nor do they offer any indication that the documents were not produced as kept in the usual course of BP's business. The motion fails for that reason alone. *See, e.g.*, *Rapp v. Maxim Healthcare Servs., Inc.*, No. 13–cv–51, 2014 WL 5341872, at *2 (E.D. Tex. Sept. 30, 2014) (denying motion to compel where "[p]laintiff has failed

6

to show that these documents were not produced as they are kept in the usual course of business"); *see also Hall*, 2015 WL 4094216, at *6 (where the plaintiff did "not assert whether and why she believes the documents were not produced as they are kept in the usual course of business," even "a conclusory statement by Defendant's attorney" to the contrary is sufficient to establish that the documents were produced in accordance with Rule 34).

## II.     BP'S PRODUCTION COMPLIES WITH THE PRIOR ORDERS OF THIS COURT.

In addition to complying with the Federal Rules of Civil Procedure, BP's production complies with relevant orders of this Court.  ***First***, BP's production meets the substantive requirements of PTO 68, which enumerates the categories of documents that BP must produce. As discussed, BP produced the B3 General Production and the B3 Plaintiff-Specific Production to the Fitzgerald Plaintiffs well in advance of the Disclosure Deadline.  The Fitzgerald Plaintiffs do not—and cannot—contend that BP's initial disclosure production is incomplete.

***Second***, BP's production conforms to PTO 68's technical specification requirements.  In its first amendment to PTO 68, this Court set forth precise technical specifications for document productions.  (Rec. Doc. 26077 at 2–3.)  In particular, the Court ordered that "[b]oth BP and the B3 Plaintiffs shall produce documents and information in litigation-ready format, including a document production load file, TIFF image files, text files, Excel files in native format, and Bates numbered pages, as set forth in Exhibit C attached hereto." (*Id.*)  Exhibit C to the amendment further detailed those technical specifications.  (Rec. Doc. 26077-2.)  BP's production complies with these technical specifications, and Plaintiffs have not alleged otherwise.[5]  (Prine Decl. ¶10.)

---

[5] In contrast, the Fitzgerald Plaintiffs' disclosures, provided on the Disclosure Deadline, did not comply with the technical specifications of the first amendment to PTO 68 because, among other issues, no production load file was provided to BP.

7

Contrary to the Fitzgerald Plaintiffs' assertion, BP did not encrypt its production in a way that requires a password to be manually entered for each page. Rather, BP used industry standard encryption to ensure that confidential materials were protected. (Prine Decl. ¶11.) Had the Fitzgerald Plaintiffs utilized a standard review platform to access the documents, rather than combining the files into a single PDF, the password would only have been needed to be entered one time. (*Id.*) Additionally, had the Fitzgerald Plaintiffs contacted BP, it would have been happy to offer assistance, and indeed remains willing to do so. As the Fitzgerald Plaintiffs' letter to BP and their motion acknowledge, however, counsel was able to address the password issue and access the documents themselves, resolving the issue. (Ex. D, 12/26/19 C. Dunbar Ltr.)

***Third***, BP's production is consistent with this Court's prior holding in *Harriel*, 2017 WL 6040051 at *1–2. In *Harriel*, the parties exchanged initial disclosures pursuant to the BELO CMO, which, in relevant part, is largely identical to PTO 68. *See id.* at *1 & PTO 68 §1.A.1. The *Harriel* plaintiff moved to compel BP to produce "the names, addresses and telephone numbers of all employees or co-workers" that had been redacted from the time records, invoices and other documents that BP had produced as part of its initial disclosures in that case. *Id.* This Court denied the motion, noting that BP had complied with the initial disclosure obligations set forth in the BELO CMO. *Id.* at *2. Here, BP has redacted the same types of information, in the same types of documents, for the same purposes, as in *Harriel*, which is why BP's counsel directed the Fitzgerald Plaintiffs' counsel to that decision at the end of last year. Tellingly, the Fitzgerald Plaintiffs' motion does not acknowledge, much less address, the Court's prior ruling.

**III.   THE FITZGERALD PLAINTIFFS' DEMAND WOULD IMPOSE AN UNDUE BURDEN ON BP AND THE COURTS' MANAGEMENT OF THESE CASES.**

Even assuming the Fitzgerald Plaintiffs' motion were permitted under the Federal Rules of Civil Procedure and this Court's prior orders (which it is not), granting their motion would foist

an undue burden on BP and the courts by creating unnecessary complications and disputes in connection with future discovery practice and any trials in this and other related matters. Parties may not obtain documents where "the burden or expense … outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also, e.g.*, *Briones v. Smith Dairy Queens, Ltd.*, No. Civ.A. V-08-48, 2008 WL 4630485, at *1 (S.D. Tex. Oct. 16, 2008) ("Courts may limit discovery if … the burden or expense of the discovery outweighs its likely benefit.").

Here, especially in light of the fact that BP has already completed not only the Fitzgerald Plaintiffs' PTO 68 productions, but *all* B3 Plaintiffs' initial disclosure productions under PTO 68, the burden on BP were the Fitzgerald Plaintiffs' motion to be granted would be undue. There is no automated way in which BP's discovery vendor is able to identify and remove each redacted page from its production. (Prine Decl. ¶13.) To identify only the pages in which Mr. Fitzgerald appears, BP would have to either (1) conduct a page-by-page re-review to identify the redacted pages, or (2) export the redaction history for each page on a document-by-document basis and, through manual quality control measures, confirm that the information is correct. (*Id.* ¶14.) It would then, using the information from the review, have to generate new excerpted documents for each of the redacted documents at issue, process and ingest the new documents into its database, and run an entirely new production. (*Id.* ¶15.) Were this to be required of BP, other B3 Plaintiffs—and perhaps even BELO Plaintiffs—might also request the same production revisions, increasing BP's burden exponentially, especially since BP has already completed its initial disclosure productions in thousands of cases.

In addition to the practical burden, granting the Fitzgerald Plaintiffs' motion would place BP in contravention of the law by forcing it to create new documents that were never maintained in the usual course of BP's business. While the Fitzgerald Plaintiffs desire excerpted documents,

other plaintiffs may complain or even question BP's creation of incomplete documents for litigation that did not previously exist. These litigation-created documents could create significant discovery and evidentiary issues—including arguments about authenticity, completeness, foundation, hearsay, and admissibility—in future motion practice, depositions, and even at trial, imposing a substantial drain on judicial resources. This is precisely why Rule 34 requires the production of complete documents, with redactions as appropriate. *See Zysman*, 2014 WL 1320805; *Dahl*, 655 F. Supp. 2d at 149.

The burden of re-review and re-production, especially in light of the number of B3 and BELO plaintiffs that could request the same treatment, far outweighs any marginal benefit to the Fitzgerald Plaintiffs. The Fitzgerald Plaintiffs have already received the documents that BP was required to produce under PTO 68.[6] They do not stand to gain any additional relevant material if their motion is granted, and they are able to search the documents they have received for relevant information. Moreover, as BP has previously offered, BP stands ready to assist with any technical questions the Fitzgerald Plaintiffs may have, as BP has done with other plaintiffs. Given the burden on BP and the courts and the information already available to the Fitzgerald Plaintiffs, BP should not be compelled to alter and re-produce previously produced materials, in contravention of the express requirements of the Federal Rules of Civil Procedure and prior Orders of this Court.

## **CONCLUSION**

WHEREFORE, BP respectfully requests that the Court deny the Fitzgerald Plaintiffs' motion to compel and grant such other relief as is just and proper.

---

[6] The Fitzgerald Plaintiffs' request for costs and attorneys' fees under Rule 37 is unfounded. Rule 37 contemplates attorneys' fees on a motion to compel only where the other party has entirely failed to make an initial disclosure or failed to produce documents. *See* Fed. R. Civ. P. 37(a)(3) (detailing the types of motions that can merit an award of attorney's fees). Here, the Fitzgerald Plaintiffs do not dispute that BP has produced all documents relating to Mr. Fitzgerald that are responsive to PTO 68. Their request for sanctions lacks any basis in the law or facts of this case.

Respectfully submitted,

*/s/ Devin Reid*
R. Keith Jarrett (Bar #16984)
Devin Reid (Bar #32645)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
(matthew.regan@kirkland.com)
A. Katrine Jakola, P.C.
(katie.jakola@kirkland.com)
Kristopher Ritter
(ritterk@kirkland.com)
Christina L. Briesacher
(christina.briesacher@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Counsel for BP America Production Company and BP Exploration & Production Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing BP'S OPPOSITION TO PLAINTIFFS WILLIAM J. FITZGERALD, III'S AND DIANA FITZGERALD'S MOTION TO COMPEL has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of January, 2020.

*/s/ Devin Reid*
Devin Reid