# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL 2179 |
| | | SECTION: J(2) |
| | | JUDGE BARBIER |
| Applies to: CASE NO. 2:13-CV-00650-CJB-JCW | * * | MAG. JUDGE WILKINSON |

## DECLARATION OF KEN PRINE

I, Ken Prine, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am over 18 years of age, of sound mind, capable of making this declaration, and personally acquainted with the facts herein stated.

2. During the period from September 2012 to present, I have served as Senior Discovery Counsel for BP America Inc. ("BP"). In this position, I am responsible for, among other things, overseeing BP's discovery efforts in cases including those arising out of the *Deepwater Horizon* explosion and ensuing oil spill, including the Back-End Litigation Option ("BELO") cases and cases in the B3 Pleading Bundle. My duties in this role include overseeing BP's collection and production of documents in response to relevant court orders in the multidistrict litigation pending before Judge Barbier and related proceedings.

3. In accordance with Pretrial Order No. 68 ("PTO 68") (Rec. Doc. 26070), by January 21, 2020, BP searched for, collected, and produced non-privileged responsive documents, if any,

falling into the categories specified in PTO 68 for all 923 B3 Plaintiffs—including Plaintiff Nathan Fitzgerald.[1]

4. To locate records responsive to PTO 68, BP personnel searched BP's files and internal databases using terms that were developed based on B3 Plaintiffs' names as well as other identifying information provided in B3 Plaintiffs' Complaints and their PTO 63 and 66 submissions, such as their date of birth and social security number. To the extent information regarding contractors with whom and/or vessels on which B3 Plaintiffs were associated were available, that information was also utilized in the searching process.

5. Documents that hit on one or more identifying factors were then transferred to BP's vendor as they were kept in BP's internal databases, without reordering or removal of pages.

6. After locating potentially relevant documents, BP's electronic discovery vendor loaded the documents in their entirety, without modifications to the order or number of pages, onto a review platform. Once loaded, attorneys then reviewed each document to confirm its relevance to the B3 Plaintiff(s) at issue in a particular B3 case.

7. In instances of voluminous invoices and time records falling under Section I.A.1(b)–(c) of PTO 68, the reviewing attorney(s) conducted a page-by-page review to determine which pages reflected information relating to the B3 Plaintiff for whom they were reviewing and redacted the remainder of the document.

8. The redactions were applied to information that does not relate to the B3 Plaintiff to whom the document is being produced or otherwise does not reflect the information designated for disclosure in Sections I.A.1(a)–(c) of PTO 68. The redacted information included personal

---

[1] Section I.A.1(p) of PTO 68 requires BP to produce "responsive documents received through use of plaintiff's executed Releases." BP does not yet have any such documents.

information relating to other individuals such as personal contact information or health information protected from disclosure by the Health Insurance Portability Accountability Act ("HIPAA").

9. In addition to utilizing this method for its PTO 68 initial disclosures related to B3 Plaintiffs, BP previously utilized this redaction method for thousands of cases in connection with the BELO initial disclosure process.

10. BP's productions to the B3 Plaintiffs were in the format specified by Exhibit C to the First Amendment to PTO 68 (Rec. Doc. 26077-2).

11. BP protected its productions to B3 Plaintiffs using industry standard encryption. Had Plaintiffs been utilizing a review platform, B3 Plaintiffs would have only been required to enter a password once rather than on each individual image of a page (also known as a TIF file).

12. BP followed this process to collect, review and produce materials relevant to the Fitzgerald Plaintiffs. BP produced 86 documents totaling 20,523 pages relating to the Fitzgerald Plaintiffs that fell within the categories of documents set forth in Sections 1.A.I(a)–(c) of PTO 68. These documents included time records, invoices, safety training documents, contracts, and other documents relevant to the Fitzgerald Plaintiffs.

13. I am aware that the Fitzgerald Plaintiffs have asked BP to re-produce to them only those pages from documents previously provided that reference the Fitzgerald Plaintiffs. There is no automated way in which BP's discovery vendor is able to identify and remove each fully redacted page from a given production.

14. To identify only the pages in which a particular B3 Plaintiff's name appears in the hundreds of already-completed B3 productions, BP would either have to (1) conduct a page-by-page review to identify the fully redacted pages or (2) export the redaction history for each page

on a document-by-document basis and, through manual quality control measures, confirm that the information is correct.

15.    BP would then, using the information from the manual review, have to (a) generate new excerpted documents for each of the redacted documents at issue, (b) process and ingest the new documents into its database, and (c) run an entirely new production. This process would be time-consuming and expensive to implement.

Dated: January 29, 2020

Houston, Texas

*/s/ Ken Prine*
_____
Ken Prine