# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 | MDL NO. 2179 |
| | SECTION J |
| This document relates to: No. 12-970 | JUDGE BARBIER |
| | MAG. JUDGE SHUSHAN |
| Claimant ID 100243047, Claim ID 254194 | |

## MEMORANDUM OF LAW IN OPPOSITION TO BP'S MOTION TO STRIKE CLAIMANT ID 100243047's MOTION TO CLARIFY, ALTER, OR AMEND THE COURT'S OCTOBER 3, 2018 ORDER

JEFFREY W. WILLIS
MICHAEL L. EBER
ROGERS & HARDIN LLP
2700 International Tower
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, GA  30303-1604
Telephone: (404) 522-4700
Facsimile: (404) 525-2224
Email: jwillis@rh-law.com

*Counsel for Claimant ID 100243047*

## PRELIMINARY STATEMENT

Until this Court's October 3, 2018 Order, Claimant Mueller Water Products, Inc. ("Mueller") was in the unique position of having a multi-million dollar Business Economic Loss claim that the Settlement Program was still actively considering releasing from a Moratoria Hold.  The Order cut short the Settlement Program's ongoing review of the Claim (Claim ID 254194) by ruling that all Remaining Moratoria Hold Claims are "deemed hereby EXCLUDED" from the Settlement.  Order, Rec. Doc. 24945 at 2 (emphasis omitted).

Mueller promptly moved to clarify, alter, or amend the Order.  Rec. Doc. 25054.  Mueller explained that, before the Order, the Program was imminently going to decide whether to release the Moratoria Hold due to evidence Mueller submitted showing that it did not suffer any Moratoria Losses.  Rec. Doc. 25054-1 at 5–7.  Mueller sought clarification that the Order does not apply to Mueller's Claim so that the Moratoria Team may complete the review required by Section 5.10.3.1.1 of the Settlement Agreement and—if it determines that the Claim is not subject to the Moratoria Hold—release the Claim for further processing.  *Id.* at 6, 10.

Over a year later, BP moved to strike Mueller's motion, arguing that Mueller cannot seek relief because, in BP's view, Mueller has no right to assert a claim for the claiming facility.  Rec. Doc. 26153 at 1.  BP's motion to strike a motion is procedurally defective under Rule 12(f) and should be denied.  BP's motion puts the cart before the horse.  Mueller filed this claim, and the Order undoubtedly is adverse to Mueller's ability to recover.  Mueller can therefore seek relief from the Order.  Whether Mueller is ultimately the proper claimant under the Settlement Agreement is a merits question that the Claims Administrator must decide in the first instance.  Indeed, the Settlement Agreement gives Mueller a contractual right to have its claim considered by the Claims Administrator—including the opportunity to make a full record with the assistance

of the Claims Administrator—and to have its claim reviewed by multiple decision makers including the Claims Administrator and the Appeal Panelists, in addition to potential discretionary review by the Court.  *E.g.*, Settlement Agreement § 4.3.8.  And when the Claims Administrator reviews Mueller's Claim, it will find ample evidence that Mueller "operated" and "owned" the Bessemer facility within the meaning of the Settlement Agreement.

BP's motion should be denied.  Having this Court act as the Claims Administrator— particularly on a Claim-specific issue that the Settlement Program has never considered—would turn the orderly process of claims handling on its head.  The Court should instead provide Mueller relief from the Order so that the Settlement Program can proceed with its review.

## BACKGROUND

Mueller manufactures a broad range of products used in the distribution of drinking water and in water treatment facilities.  Rec. Doc. 25054-2 at 15.  In 2010, Mueller managed and reported its operations through three business segments:  Mueller Co., U.S. Pipe, and Anvil.  *Id.* As part of its U.S. Pipe segment, Mueller owned an iron foundry in Bessemer, Alabama through its wholly-owned subsidiary U.S. Pipe and Foundry Company, LLC ("USPF").[1]  Mueller had direct oversight of the operations of the Bessemer facility.  During this time, the president of USPF was an employee of Mueller and reported directly to Mueller's Chief Executive Officer and Chief Operating Officer.  Decl. of Marietta Edmunds Zakas ¶ 5, attached as Exhibit A.[2] Mueller also conducted quarterly operation reviews of USPF, including of the Bessemer facility, and provided services such as tax, treasury and legal functions.  *Id.* ¶ 4.  Mueller's accounting

---

[1] A wholly-owned subsidiary of Mueller called Mueller Group, LLC owned all of the membership interest in USPF as of 2010.  Decl. of Marietta Edmunds Zakas ¶ 3.
[2] *See also* 2010 Employment Agreement between Paul Ciolino and Mueller Water Products, Inc., https://www.sec.gov/Archives/edgar/data/1350593/000119312510183106/dex1020.htm; 2008 Employment Agreement between Raymond Torok and Mueller Water Products, Inc., https://www.sec.gov/Archives/edgar/data/1350593/000119312508206569/dex992.htm.

and finance team was responsible for consolidating USPF's results with all other Mueller financial results on a monthly basis.  *Id.*  Importantly, revenues generated by the facility were rapidly swept into accounts controlled, not by USPF, but by Mueller, generally on a daily basis. *See id.* ¶ 6.  Similarly, accounts to pay expenses for the Bessemer facility, including paychecks for workers, were funded directly from Mueller's or Mueller Group's accounts.  *Id.* ¶ 6.  Mueller also was responsible for approving any large capital expenditures.  *Id.* ¶ 4.  In 2012, after the Deepwater Horizon oil spill, Mueller and Mueller Group sold their interest in USPF to USP Holdings, Inc.  *Id.* ¶ 3.[3]

Once the Settlement Agreement was approved by the Court, Mueller submitted a Business Economic Loss claim (Claim ID 254194) to the Settlement Program for the Bessemer facility (the "Claim").  The Claims Administrator placed the Claim on Moratoria Hold because it made a preliminary finding that Mueller manufactured "Valves, industrial-type (e.g., check, gate, glove, relief, safety)."  The *Bessemer facility*, however, did not manufacture industrial valves or engage in any other activity requiring Moratoria Review under Exhibit 19, and did not sell any products used in offshore oil and gas activities.  After being placed on Moratoria Review, Mueller worked with the Moratoria Team to release the hold.

In June 2017, Mueller provided the Claims Administrator with Mueller's 10-K for fiscal year 2010, showing that the U.S. Pipe business segment that included the Bessemer facility produced only ductile iron products, which are sold primarily to waterworks distributors, contractors, municipalities, utilities, and other governmental agencies.  Rec. Doc. 25054-2 at 2–

---

[3] After Mueller sold USPF to USP Holdings, USPF filed a claim with the Settlement Program for the Bessemer facility.  While that claim was pending, the shareholders of its parent company, UPS Holdings, Inc., sold their stock in USPF to Forterra Inc., which presently owns USPF and the Bessemer facility.  Decl. of Lori Browne ¶ 2.  USPF received an Incompleteness Denial Notice from the Claims Administrator and did not seek further review.

3, 15.  In the spring of 2018, Mueller made a second submission that included the affidavit of its Chief Financial Officer who stated that the claiming facility engaged in **no** manufacturing of "Valves, industrial-type"—the sole activity that triggered Moratoria Review in the first place. Rec. Doc. 25054-3 at 5.  Mueller therefore requested that the Claim be released from the Moratoria Hold.  *Id.* at 2.  In response, the Claims Administrator made clear that the Claim was still being processed and that "[a]fter additional review" it would be released from Moratoria Hold "if the claim is determined to have no Moratoria Losses."  Rec. Doc. 2504-4 at 1.

During the summer and fall of 2018, Muller continued to provide the Claims Administrator with more information showing that the Claim does not include Moratoria Losses. In June, Mueller informed the Claims Administrator that it had obtained the 2007–2011 customer lists suggested by the Moratoria Team.  Rec. Doc. 25054-5 at 2.  Mueller analyzed the 628 customers on the lists and determined there was no likelihood that the facility's products had been bought for use in offshore oil and gas activity.  *See* Rec. Doc. 25054-6 at 13–26.  Mueller also engaged a petroleum engineer in California with expertise in the construction of water and wastewater transmission on offshore oil rigs.  *Id.* at 3–5.  The expert opined that "it is a **virtual certainty** that the [claiming] facility's products were not used in offshore oil and gas activities in the Gulf of Mexico in the years 2007 through 2011."  *Id.* at 10 (emphasis added).  Mueller submitted the last of these documents on October 1, 2018.  *See id.* at 2.

Before the Claims Administrator could complete its review, however, the Court entered its Order ruling that any "Remaining Moratoria Hold Claims" "will be deemed hereby EXCLUDED from the Settlement."  Rec. Doc. 24945 at 2 (emphasis omitted).  The Order depends on the assumption that the Claims Administrator "has no ability to process" any of the Remaining Moratoria Hold Claims.  *Id.*

Mueller moved to clarify, alter, or amend the Court's Order.  Rec. Doc. 25054.  Mueller

argued that § 5.10.3.1.1 requires the Claims Administrator to complete its Moratoria Review and

that, if it does so and determines Claimant suffered no Moratoria Losses, then the failure of Class

Counsel and BP to agree to guidance under Exhibit 16 is immaterial.  Rec. Doc. 25054-1 at 6.

The motion thus sought clarification that the Order does not prevent the Moratoria Team from

completing its review and releasing the Claim for further processing if the Team determines the

facility suffered no Moratoria Losses.  *Id.* at 3, 6.  The Court has not set the motion for a hearing

or ordered BP to respond.  Mueller's motion remains pending.

After a year passed, BP moved to strike Mueller's motion on the ground that Mueller had

no right to bring the Claim or make its motion.  Rec. Doc. 26153 at 1.  For the reasons below,

BP's motion to strike should be denied.

## <u>LEGAL STANDARD</u>

"[M]otions to strike are generally disfavored and rarely granted."  *S.E.C. v. Blackburn*,

CIV.A. 15-2451, 2015 WL 5665168, at *2 (E.D. La. Sept. 23, 2015) (Barbier, J.).  Under Federal

Rule of Civil Procedure 12(f), a court "may strike from a ***pleading*** an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis

added); *see also* Fed. R. Civ. P. 7(a) (defining pleadings).  The Court has previously explained

that:

> "Redundant" matter consists of allegations that constitute a needless repetition of
> other averments in the pleading.  "Immaterial" matter is that which has no
> essential or important relationship to the claim for relief or the defenses being
> pleaded, such as superfluous historical allegations, or a statement of unnecessary
> particulars in connection with and descriptive of that which is material.
> Furthermore, "impertinent" matter consists of statements that "do not pertain, and
> are not necessary, to the issues in question."  Lastly, "scandalous" matter is that
> which improperly casts a derogatory light on someone or states anything in
> repulsive language that detracts from the dignity of the court. Any doubt about

whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party.

*Blackburn*, 2015 WL 5665168, at *2 (internal citations and certain quotation marks omitted).

When a motion seeks to dismiss ***an insufficient defense***, the movant must show that the defense is insufficient as a matter of law. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). However, "[a] motion to strike should be denied if there is any disputed question of fact." *See Francois v. City of Gretna*, CV 13-2640, 2015 WL 13048624, at *1 (E.D. La. Apr. 3, 2015) (internal quotation marks omitted)).

## ARGUMENT

BP's motion to strike Mueller's motion should be denied. From the outset, BP's motion is procedurally defective—it does not seek to strike material from a *pleading* nor does it seek to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). BP's motion to strike appears to be based on an alleged lack of standing under the Settlement Agreement. But standing to recover as a class member under the Settlement Agreement is a merits question that includes questions of fact that cannot be resolved on a motion to strike. *See infra* Part I.

Even if BP had a procedural basis for its motion, it fails on the substance. Mueller has standing to challenge the Order, which was directly adverse to it. *See infra* Part II. In addition, whether Mueller is a class member entitled to recover under the Settlement Agreement is a merits question that the Claims Administrator must decide on a full record. *See infra* Parts III–IV. In fact, there is ample evidence that Mueller is a class member under § 1.2.1 of the Settlement Agreement and Policy 467. *See infra* Part III. For these reasons, BP cannot show that Mueller lacks standing to file its motion or that Mueller lacks the right to recover under the Settlement Agreement.

## I.     BP's motion should be denied because it is procedurally improper.

BP has moved to strike Mueller's motion to clarify, alter, or amend the Court's Order without citing any procedural authority authorizing such a motion to strike.  BP's motion is procedurally improper and should be denied.

It's black letter law that a "motion to strike a motion" is procedurally improper.  Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a ***pleading*** an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis added).  Mueller's motion is not a "pleading" as defined in Federal Rule of Civil Procedure 7(a).  And this Court has repeatedly denied motions that seek to strike filings that are not pleadings under Rule 7(a).  *See Chaverri v. Dole Food Co., Inc.*, No. 11-cv-1289, 2012 WL 2087409, at *2 (E.D. La. June 8, 2012) (Barbier, J.) ("Rule 12(f) only permits a court to strike matter within pleadings.  Pleadings do not include motions, such as [a] motion to dismiss[.]"); *Jackson v. State Farm Fire & Cas. Co.*, No. 06-cv07202, 2010 WL 724108, at *10 (E.D. La. Feb. 22, 2010) (Vance, J.) (denying a motion to strike because "Plaintiffs' motions are not 'pleadings' and Rule 12(f) is therefore inapplicable."); *Marquette Transp. Co. v. Trinity Marine Prods.*, No. 06-cv-826, 2006 WL 2349461, at *1 n.1 (E.D. La. Aug. 11, 2006) (Africk, J.) (denying motions to strike "[b]ecause Rule 12(f) contemplates only striking 'pleadings' as defined by the Federal Rules, and because plaintiffs' statements are not pleadings").  BP's motion to strike should therefore be summarily denied.

That BP's motion to strike is (apparently) based on standing and does not explicitly cite Rule 12(f) does not warrant a different result.  In *Francis v. S. Cent. Houston Action Council, Inc.*, CIV.A. H-14-1277, 2015 WL 4207142, at *1 (S.D. Tex. July 1, 2015), the defendant moved to strike the plaintiff's ERISA claim based on an alleged lack of standing.  *Id.* at *1.  The Court denied the defendant's motion because ERISA standing was "a fact issue that must be resolved

through a motion for summary judgment or at trial."  *Id.*  Similarly, merits questions like a claimant's standing to assert claims under the *Deepwater Horizon* Settlement Agreement are to be resolved by the Claims Administrator through the claims process.  *See infra* Parts III–IV.

**II.      Mueller has the right to seek relief from the Court's Order excluding its Claim.**

BP's motion should also be denied because Mueller has the right to move for clarification of the Court's Order, which excludes Mueller and its Claim from the Settlement Class and is thus directly adverse to Mueller.  A party that suffers a directly adverse preliminary order that denies it the opportunity to recover on its claim has the right to seek relief from that order, whether from the court that issued it or on appeal.  *See Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 333 (1980) ("[A] party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom.").  Mueller therefore has the right to move for clarification.

Whether Mueller is a proper claimant to recover under the Settlement Agreement does not need to be decided by the Court for the Court to rule on Mueller's motion to clarify.  The Fifth Circuit has recognized that a party's right to enforce a contract presents a merits question and is not a question of constitutional or prudential standing.  *See Cotton v. Certain Underwriters at Lloyd's of London*, 831 F.3d 592, 594 (5th Cir. 2016); *see also Perry v. Thomas*, 482 U.S. 483, 492 (1987) (holding that whether appellants had a right to enforce arbitration agreement was an issue of contract interpretation and did not affect Article III standing).[4]  Thus, whether Mueller has a right to recover "is really an issue of contract interpretation [and application] that goes to the merits of a claim" and is "entirely distinct from standing for [jurisdictional] purposes."  *Cotton*, 831 F.3d at 594 (quotation marks omitted).  The Court can

---

[4] Although the right to enforce a contract is sometimes called "standing," contractual standing is a merits question distinct from constitutional standing. *Cotton*, 831 F.3d at 594.  Litigants asserting contract claims have Article III standing to pursue their claims. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012).

and should rule on Mueller's motion for clarification while leaving the merits question of whether Mueller is a class member to the Claims Administrator.  *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 601 (5th Cir. 1999) (recognizing that appellate courts can assume a party has enforceable rights for purposes of resolving appeals of adverse rulings on preliminary issues).

Moreover, Mueller does not seek a declaration that it *is* a class member entitled to recover under the Settlement Agreement.  Mueller only seeks clarification that the Claims Administrator can proceed with its Moratoria Review and, subsequently, decide whether to release the Moratoria Hold and keep processing the Claim.  Thus, if Mueller's motion is granted, the Court would not definitively establish that Mueller is a class member.  Instead, it would merely permit the claim process to continue.  Granting Mueller's motion would therefore redress the injury that Mueller suffered—the discontinuation of the Moratoria Review.  Ultimately, the Claims Administrator will decide whether Mueller meets the class definition, and that decision will be subject to review by the CSSP Appeal Panel and this Court.  *See infra* Part III.

In sum, Mueller has the right to seek clarification of the Court's October 3, 2018 Order. That Order purports to exclude Mueller's claim from the class and therefore injured Mueller. Ruling that the Claims Administrator can proceed with its Moratoria Review would redress that injury.  The decision of whether Mueller can succeed on the merits is for the Claims Administrator to decide at a later stage of the claim process, subject to the appeals process.

III.     **Whether Mueller is a class member under § 1.2.1 and Policy 467 is a fact-intensive inquiry that should be addressed by the Claims Administrator on a full record.**

BP seems to be arguing that Mueller lacks standing to seek clarification of the Order based on an alleged lack of ownership of the claim.  But Mueller filed the claim in its own name because, within the meaning of the Settlement Agreement, it effectively "operated" the Bessemer

facility at the time of the oil spill (and during the benchmark and compensation periods) and because it "owned" the facility at that time. *See* Settlement Agreement § 1.2.1. Put differently, Mueller is asserting its own rights as a class member with a right to recover under the Settlement Agreement, and the sale of USPF to USP Holdings, Inc. is therefore irrelevant.

BP's motion, however, assumes that USPF must be the proper Claimant because USPF *directly* owned the Bessemer facility even though no such requirement is in the class definition. Settlement Agreement § 1.2.1. BP also fails to consider the breadth of the class definition, which defines the class to include entities that "operated" a facility. *Id.*; *see also* Policy 467 § IV.A (defining "Facility of a Business Entity" as including facilities "[o]wned, leased or operated by the Business Entity"). Whether a claimant "owned" or "operated" a facility within the meaning of § 1.2.1 and Policy 467 is a fact-intensive inquiry that is handled by the Claims Administrator during its evaluation of the claim. *See* Policy 467 § I (describing how the Claims Administrator must "determine whether an Entity is within the Class Definition"). As explained below, the Court should deny BP's motion because the issue BP seeks to have the Court resolve must be decided by the Claims Administrator during claim review.

Section 1.2.1 of the Settlement provides that, to be a class member eligible to make a claim, an entity must have "owned, operated, or leased a physical facility in the Gulf Coast Areas or Specified Gulf Waters." Policy 467, which interprets and applies §1.2.1, includes three requirements. The claim must be for a facility that is "(a) a separate and distinct physical structure or premises; (b) owned, leased or operated by the Business Entity; (c) at which the Business Entity performs and/or manages its operations." Policy 467 § IV.A. There are dozens of Appeal Panel decisions applying Policy 467, and the outcomes turn on fact-specific questions such as whether the claimant could identify expenses associated with the facility on its books.

10

*E.g.*, Appeal Panel Decision No. 2017-605 (recognizing that the Overall Criterion in Policy 467 requires the identification of expenses and revenues associated with the location and remanding for the Claims Administrator to decide in the first instance whether an office satisfied that requirement).  Here, the application of Policy 467 will require the Claims Administrator to consider evidence about, among other things, whether Mueller performs work or provides services at the Bessemer facility or managed, supervised, and directed the facility's operations and whether Mueller can identify expenses and revenues associated with the Bessemer facility. Information on all these factors would be fully developed before the Claims Administrator.

Because the application of Policy 467 always includes at least some questions of fact, its application is usually the domain of the Claims Administrator.  Indeed, this Court's decisions recognize that the Claims Administrator should at least have the first review of questions of fact. *See* Discretionary Review Decision 2015-1094 (reversing the Appeal Panel because it analyzed third prong of Customer Mix Test in the first instance even though it "should have remanded to allow the Claims Administrator to review and process the third prong prior to an Appeal Panel's consideration").[5]  The Fifth Circuit's discretionary-review standard also recognizes the primacy of the Claims Administrator in deciding questions of fact while leaving pressing legal questions of wide impact to the Court.  *E.g.*, *Claimant ID 100062351 v. BP Expl. & Prod., Inc.*, 786 F. App'x 441, 444 (5th Cir. 2019) ("The district court does not abuse its discretion to deny review where there is no pressing question of how the Settlement Agreement should be interpreted or where review would be of a discretionary administrative decision that turns on the facts of a

---

[5] *See also* Discretionary Review Decision 2016-1699 (remanding claim to allow the Claims Administrator to consider previously unaddressed argument that Claimant was a class member under Section 1.2.2 of the Settlement Agreement); Discretionary Review Decision 2014-250 (granting discretionary review and remanding for the Claims Administrator to decide ownership issue)

single claimant's case." (quotation marks omitted)).  Indeed, the Fifth Circuit has applied this standard in many appeals that raise only questions of fact related to whether a claimant owned, operated, or leased a facility under Policy 467.  In each of these cases, the Fifth Circuit recognized that the Claims Administrator's application of Policy 467 did not warrant discretionary review.[6]  And if this Court need not decide fact issues even *after* the Claims Administrator and the Appeal Panel have ruled, then it need not (and should not) decide the issues raised by BP *before* they have had their say on a full record.[7]

Although Mueller has not had the opportunity to make a record before the Claims Administrator, the evidence will ultimately show that Mueller operated the Bessemer facility under § 1.2.1 and Policy 467.  As described in the declaration of Mueller's CFO, Mueller managed the operations of the Bessemer facility within the meaning of § 1.2.1 and Policy 467.  During this time, the president of USPF was employed by Mueller and reported directly to Mueller's Chief Executive Officer and Chief Operating Officer.  Decl. of Marietta Edmunds Zakas ¶ 5.  Mueller also provided services related to the operation of USPF and facility, including tax, treasury, and legal functions, and large capital expenditures had to be approved by

---

[6] *BP Expl. & Prod., Inc. v. Claimant ID 100157225*, 777 F. App'x 721, 724 (5th Cir. 2019) (affirming the denial of discretionary review for a claim that turned on a "factual question" about whether the claimant operated a "facility" under Policy 467); *BP Expl. & Prod., Inc. v. Claimant ID 100192823*, 768 F. Appx. 225, 228 (5th Cir. 2019) (same); *BP Expl. & Prod., Inc. v. Claimant ID 100126024*, 769 F. App'x 120, 126 (5th Cir. 2019) (stating that "[t]he court was entitled to defer to the Claims Administrator's and the appeal panel's judgment in making [a] factual determination" about whether sales offices qualified as facilities under Policy 467); *Claimant ID 100250022 v. BP Expl. & Prod., Inc.*, 847 F.3d 167, 170 (5th Cir. 2017) (affirming this Court on a Policy 467 question "because the district court's denial of discretionary review does not result in a contradiction or misapplication of the Settlement Agreement"); *BP Expl. & Prod., Inc. v. Claimant ID 100225009*, 757 F. App'x 345, 347 (5th Cir. 2018) ("Although BP attempts to construct this [Policy 467] argument as a challenge to interpretation of the Settlement Agreement, it is actually a factual determination." (footnotes omitted)).

[7] This is not to suggest that a decision by the Claims Administrator or an Appeal Panel will necessarily turn on a question of fact rather than one of law.  Rather, the application of Policy 467 necessarily includes resolving at least some questions of fact.

Mueller beforehand.  *Id.* ¶ 4.  And importantly, in this case profits and losses were immediately absorbed at the parent level rather than remaining in the subsidiary.  Revenues generated by the Bessemer facility were rapidly swept into accounts controlled by Mueller, generally on a daily basis.  *See id.* ¶ 6.  Thus, revenues that the Bessemer facility *lost* due to the oil spill would have been lost in *Mueller*'s accounts.   Similarly, accounts to pay expenses for the Bessemer facility, including paychecks for workers, were funded directly from Mueller's or Mueller Group's accounts.  *Id.* ¶ 6.  These facts show that Mueller "perform[ed]" and "manag[ed]" the operations of the Bessemer facility within the meaning of Policy 467.  *Cf.* Appeal Panel Decision 2016-609 (noting that Policy 467 sets an "extremely low" bar and that "[i]f the parties had agreed that there should have been more stringent requirements to establish an entity is performing operations at a location, it would have been set forth in the Settlement Agreement and reflected in the policies of the Claims Administrator.").  Mueller also meets the "Overall Criterion" of Policy 467 because the profit and loss statements it submitted identify the expenses and revenues associated with the operations of the Bessemer facility.  *See* Appeal Panel Decision No. 2017-3728 (holding that a railyard that served as a temporary storage site was a facility because claimant could identify expenses and revenues in the P&Ls associated with the site).

Mueller also "owned" the Bessemer facility under § 1.2.1 and Policy 467.  During the relevant period, Mueller owned that facility because it owned all of the shares of Mueller Group, which owned all of the membership interest in USPF.  Crucially, neither § 1.2.1 nor Policy 467 require that the claimant ***directly*** "own[]" the facility.  In fact, the same sentence of § 1.2.1 uses the modifier "directly" with regard to the sale of products, but *not* with respect to whether the claimant "owned" the facility.  *See id.*  That parent companies may file claims for facilities directly owned by their wholly-owned subsidiaries is confirmed by other provisions of the

13

Settlement Agreement.  For one, the definition of a "Business Claimant or Business Economic Loss Claimant" includes "an Entity … claiming Economic Damage allegedly arising out of due to, resulting from, or relating in any way to, ***directly or indirectly***, the Deepwater Horizon Incident."  Settlement Agreement § 38.15 (emphasis added).  And the definition of a multi-facility business imposes no direct-ownership requirement on claimants.  *See id.* Ex. 5.  In addition, the Class Release and the Individual Release apply to the claims of not only the claimant, but also "corporate parents" and "subsidiaries" of the claimant.  *See id.* § 10.1; *id.* Ex. 26 ¶ 2 (extinguishing all claims of "corporate parents" and "subsidiaries").

In sum, whether Mueller is the proper Claimant is a fact-intensive question that must be decided by the Claims Administrator in the first instance on a full record.  As the declaration of Mueller's Chief Financial Officer shows, Mueller was directly involved in the facility's operation, and there is no reason that Mueller cannot satisfy each element of Policy 467.  The Court should therefore deny BP's motion and let the Claims Administrator decide this question.

## IV.   BP's motion to strike is inconsistent with the Settlement Agreement and the Court-approved claim process.

BP's motion improperly asks the Court to decide a merits question of whether Mueller can recover under the Settlement Agreement if the Moratoria Hold is released.  Although the Court has supervisory authority over the Settlement Program, it is not the Court's role to resolve the merits of individual claims before the Settlement Program has run its course.  The Settlement Agreement's detailed description of the claims process and this Court's Rules Governing Discretionary Court Review show that those issues are decided by the Claims Administrator in the first instance.  For example, the Agreement states that "*[t]he Claims Administration Vendors* shall evaluate and process the information in the completed Claim Form and all supporting documentation under the terms in the Economic Damage Claim Process to produce the greatest

14

ECONOMIC DAMAGE COMPENSATION AMOUNT that such information and supporting documentation allows under the terms of the ECONOMIC DAMAGE CLAIM FRAMEWORK." Settlement Agreement § 4.3.8 (emphasis added).  Moreover, ruling on the merits before the Claims Administrator makes an appropriate record would be contrary to the Settlement Agreement, which requires the Claims Administrator to provide claimants "with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement." *Id*. § 4.3.7.  Because of the Moratoria Hold, Mueller's claim has not benefited from the Claims Administrator's assistance and Mueller has not been permitted to make a full record so that the Claims Administrator can evaluate Mueller's claim.

The Settlement Agreement also provides a detailed description of how the Claims Administrator's decisions will be reviewed by the Court.  Section 6.6 provides that the Court "maintains the discretionary right to review ***any Appeal determination*** to consider whether ***the determination*** was in compliance with the Agreement."  Settlement Agreement § 6.6 (emphasis added).  Thus, for decisions on individual claims, § 6.6 contemplates a certiorari-like process for the review of Appeal Panel decisions; this Court does not take the first view.  *Cf.* 28 U.S.C. § 1254 (providing that "[c]ases in the courts of appeals *may* be reviewed by the Supreme Court") (emphasis added); *Cutter v. Wilkinson*, 544 U.S. 709, 718, n.7 (2005) ("[W]e are a court of review, not of first view").

This Court also formally adopted rules that govern how it exercises its discretionary authority to review Appeal Panel decisions.  Rule 1 describes the Settlement Agreement as "provid[ing] for a detailed and comprehensive system for submission, evaluation and

determination of claims on behalf of the members of the Economic and Property Damages Settlement Class."  Rec. Doc. 15643-1 at 2.  That system, Rule 1 states, provides all parties "the opportunity to fully present their cases and further to have their positions considered by ***not only the Claims Administrator*** and his Court-appointed Vendors but also by ***an independent Appeal Panel***.  These procedures are all as agreed to by the parties and as set out in detail in the Settlement Agreement."  *Id.* (emphasis added).  And Rule 14 provides that "[n]o party may request review by the Court unless that party has first exhausted the appeal procedures set forth in the Settlement Agreement and the Rules Governing the Appeals Process."  *Id.* at 4.

BP seeks to make an end run around these fundamental rules.  Without permitting the Claims Administrator to consider Mueller's claim on the merits first, BP asks the Court to rule as a matter of law that Mueller has no right to recover under the Settlement Agreement.  BP's requested relief would violate Rule 1 by denying Mueller "the opportunity … to have [its] positions considered by … the Claims Administrator [and] by an independent Appeal Panel."  *Id.* at 2 (Rule 1).  And far from exhausting the appeal process, as Rule 14 requires, BP seeks a determination about claim ownership before the Claims Administrator has even considered the issue.  *See id.* at 4 (Rule 14).  The Court should therefore deny BP's motion and let the Claims Administrator decide whether Mueller meets the class definition.

**V.     Even if the Claims Administrator decides that USPF is the only proper claimant, Mueller can change the Claimant to USPF.**

BP's motion should also be denied because the Claim can proceed *even if* the Claims Administrator ultimately concludes that USPF, rather than Mueller, is the proper claimant.   In that scenario, the Claim would *not* be denied.  Instead, the Claims Administrator would simply ask Mueller to file Form SSN-4 to change the identity of the claimant to USPF so that the proper class member can recover.  *See* Form SSN-4, http://www.deepwaterhorizoneconomicsettlement.

com/docs/sworn_statements/BROWNGREER_417404_v2_Request_for_Update_to_Tax_ID_an

d_Name_Form.pdf; *see also* Appeal Panel Decision 2016-1008 (detailing an example of how the

Claims Administrator has used SSN-4 to ensure the proper claimant is before the Program).

   The Claims Administrator's use of Form SSN-4 has obvious parallels to the Federal

Rules of Civil Procedure governing real parties in interest, misjoinder, and substitution.  *See* Fed.

R. Civ. P. 17, 19, 25.  For all these rules, the remedy is to change the party to the correct one, not

to dismiss the action.  For example, under Rule 17(a)(3),

> [t]he court ***may not dismiss*** an action for failure to prosecute in the name of the
> real party in interest until, after an objection, a reasonable time has been allowed
> for the real party in interest to ratify, join, or be substituted into the action.  After
> ratification, joinder, or substitution, ***the action proceeds as if it had been
> originally commenced by the real party in interest.***

Fed. R. Civ. P. 17(a)(3) (emphasis added).  Similarly, Rule 21 states that "[m]isjoinder of parties

is not a ground for dismissing an action" and that "the court may at any time, on just terms, add

or drop a party."  Fed. R. Civ. P. 21.  These liberal substitution provisions advance "the interests

of justice" and are "intended to prevent forfeiture when determination of the proper party to sue

is difficult or when an understandable mistake has been made."  Fed. R. Civ. P. 17(a) Advisory

Committee Notes, 1966 Amendment; *see also* Charles E. Clark & James Wm. Moore, *A New

Federal Civil Procedure II. Pleadings and Parties*, 44 Yale L.J. 1291, 1317–18 (1935)

(describing the liberal substitution of plaintiffs as "eminently proper," especially when the

defendant "from the first has been apprised of the real claim.").  Similarly, if the Claims

Administrator reviews Mueller's financials for the Bessemer facility and determines that USPF

should be the claimant, dismissal of the Claim would be improper.

   Indeed, it would be fundamentally unfair and a breach of the Settlement Agreement for

some claimants to be able to use Form SSN-4 while Mueller is arbitrarily denied that

opportunity.  The Settlement Program has used this Form numerous times to correct a

misidentified claimant.  *E.g.*, Appeal Panel Decision 2017-121 (remanding a claim over BP's objection when the claimant submitted the proper form after the claim had been denied); Appeal Panel Decision 2016-1008 (remanding a claim when the claimant promised to file Form SSN-4 on remand).[8]  And USPF is prepared to file this Form should the Claims Administrator request it. Decl. of Lori Browne ¶ 4, attached as Exhibit B.  Denying that opportunity would violate the basic principle that "similarly situated claimants must be treated alike."  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179, 2013 WL 10767663, at *2 (E.D. La. Dec. 24, 2013); *see also* Brief of BP Appellants at 35–36, In re Deepwater Horizon, No. 17-30727, 5th Cir. Doc. No. 00514608517 (filed Aug. 20, 2018) (emphasizing that "[t]he rule that like claims should be treated alike . . . goes to the heart of Settlement's fairness.").

BP argues, however, that changing the claimant would be improper because "USPF has already submitted its own claim."  Br. at 7.  BP's argument is mistaken.  For starters, BP cites no authority for the remarkable proposition that a claimant may not submit more than one claim. And USPF's claim relating to the Bessemer facility was denied only because of the incompleteness of its document submission.  The Settlement Agreement provides that such a denial "shall be ***without prejudice*** to the Claimant's right at any time prior to termination of the Settlement Agreement to resubmit the Claim."  Settlement Agreement § 6.1.1.1 (emphasis added).[9]  Thus, USPF's incompleteness denial is not a barrier should the Claims Administrator determine that it, rather than Mueller, is the correct claimant.

---

[8] For claims by four other claimants, Claimant's counsel has filed Form SSN-4 to ensure that the proper entity is listed as the claimant.
[9] The Settlement Program does not "terminate" until the Court issues "an order … determining that the last Claim eligible for payment has been paid and the last appeal pursuant to the Appeal

Indeed, the Incompleteness Denial of USPF's claim coupled with the arbitrary exclusion of Mueller's claim would lead to a multi-million dollar windfall to BP, which would never have to pay the amount that either Mueller or USPF is entitled to under the Settlement Agreement. Dismissal is improper under these circumstances. *Cf.* Fed. R. Civ. P. 17(a) Advisory Committee Notes, 1966 Amendment (explaining that Rule 17 is "intended to insure against forfeiture and injustice"); *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (reversing the district court for dismissing an action instead of allowing substitution when it failed to consider that "dismissal of the action means that the creditors will have no possibility of recovery").

Moreover, the claim-filing deadline of June 8, 2015 does not prohibit changing a claimant at this stage. Claim ID 254194 was timely filed, and changing *the claimant* does not change when *the claim* was filed. Consistent with that view, the Settlement Program has permitted the use of Form SSN-4 well after the claim-filing deadline. *E.g.*, Appeal Panel Decision No. 2016-1008 (permitting the claim to proceed if the claimant filed Form SSN-4 by August 6, 2016); Appeal Panel Decision No. 2018-810 (excerpting a Summary of Review that describes the Claims Administrator's request for submission of Form SSN-4).

<u>**CONCLUSION**</u>

BP's motion to strike should be denied. Mueller has the right to seek clarification that the Court's October 3, 2018 Order does not apply to its Claim. The Court should also grant Mueller's pending motion to clarify so that the Claims Administrator can then finish its review and decide whether to release the Moratoria Hold. If it does, then the Claims Administrator can proceed with its review of the Claim and determine whether Mueller is a proper claimant under § 1.2.1 of the Settlement Agreement and Policy 467.

---

Process has been completed and that the Settlement Program is closed." Settlement Agreement § 4.4.16.

Respectfully submitted, this 31st day of January, 2020.

*/s/ Jeffrey W. Willis*
Jeffrey W. Willis
Georgia Bar No. 766575
Michael L. Eber
Georgia Bar No. 859338
ROGERS & HARDIN LLP
2700 International Tower
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, GA  30303-1604
Telephone:  (404) 522-4700
Facsimile:  (404) 525-2224
Email: jwillis@rh-law.com
          meber@rh-law.com

*Counsel for Claimant ID 100243047*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 31, 2020, I filed and served the foregoing by Lexis/Nexis File & Serve and through this Court's CM/ECF Filing System with the Clerk of Court of the United States District Court for the Eastern District of Louisiana thereby effecting service on all counsel of record.

*/s/ Jeffrey W. Willis*
Jeffrey W. Willis
Georgia Bar No. 766575
ROGERS & HARDIN LLP
2700 International Tower
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, GA  30303-1604
Telephone:  (404) 522-4700
Facsimile: (404) 525-2224
Email: jwillis@rh-law.com

*Counsel for Claimant ID 100243047*