# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 | MDL NO. 2179 |
| | SECTION J |
| This document relates to: No. 12-970 | JUDGE BARBIER |
| | MAG. JUDGE WILKINSON |
| Claimant ID 100243047, Claim ID 254194 | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS BP'S MOTION TO STRIKE CLAIMANT ID 100243047's "MOTION TO CLARIFY, ALTER, OR AMEND THE COURT'S OCTOBER 3, 2018 ORDER"**

**INTRODUCTION**

Mueller Water Products, Inc. ("Mueller") completely ignores the central issue before this Court, namely whether Mueller may pursue a claim for the lost profits of a facility owned and operated by a separate entity, United States Pipe and Foundry LLC ("USPF"). The answer is plainly no. In 2012, before it filed the claim at issue, Mueller, through its subsidiary, sold 100% of the equity of USPF. Under well-established black letter law, the rights (including the right to claims) and liabilities of an entity travel with the entity when the equity of the entity is sold. Mueller does not, and cannot, contest this basic rule. Accordingly when Mueller, through its subsidiary, sold the equity of USPF in 2012, any claims for the facility transferred with the equity and exited the Mueller corporate family. And indeed, USPF has filed its own claim for the same alleged lost profits. Mueller, therefore, as a matter of law, had no right to file a claim in 2013 for USPF's facility,[1] and likewise has no right now to seek reinstatement of the claim for USPF's facility into the class.

Instead of addressing the actual issue before the Court, Mueller attempts to distract. *First*, Mueller argues that BP's motion to strike is not properly brought under Rule 12(f) of the Federal Rules of Civil Procedure. But BP did not bring its motion under Rule 12(f) as there is no underlying lawsuit and thus no pleading to strike. Rather, BP brought its motion pursuant to Section 18 of the Settlement Agreement, which expressly allows BP to raise disputes by motion and for the Court to resolve those disputes.

*Second*, Mueller argues that it should be permitted to file a claim because it is a class member by virtue of its ownership and operation of the Bessemer facility. This argument is

---

[1] Indeed, because USPF and not Mueller owned and operated the facility, Mueller would have had no right to file a claim for the facility even before the 2012 equity sale. But given the fact of the sale, one need not address the hypothetical scenario where no sale occurred.

1

premised on word games and omissions of key portions of the class definition.[2] As Mueller itself acknowledges, USPF owned the facility. Mueller merely argues that it owned a subsidiary which in turn owned the equity of USPF. Under clear Supreme Court precedent as well as Delaware law governing limited liability companies, Mueller's ownership of the equity of the subsidiary that owned USPF does not make Mueller an owner of USPF's assets. Likewise, Mueller did not operate USPF's Bessemer facility. As Mueller represented to investors and the SEC, USPF operated the facility. Everything Mueller argues about its role with regard to the facility simply indicates that it provided routine and customary support to its indirect subsidiary.

But even if Mueller somehow could be considered the owner or operator of USPF's Bessemer facility, that would not make Mueller a class member. In addition to owning, operating, or leasing a facility, a claimant must also fall within one of the Settlement Agreement's damage categories in order to be a class member. Settlement Agreement, Sec. 1.3. Mueller has filed a claim for the Bessemer facility under the Business Economic Loss ("BEL") framework. That framework only permits for the recovery of lost profits based on the financials of the claiming facility, in this case the Bessemer facility. Settlement Agreement, Exs. 4C, 5. Regardless of what assistance Mueller provided to the Bessemer facility, it has no rights to claim the Bessemer facility's lost profits (the only recoverable damages for the facility under the BEL framework). Those rights were sold by Mueller and its subsidiaries when in 2012 they sold the equity of USPF to USP Holdings Inc. When USP Holdings purchased all of the equity of USPF in 2012, it purchased all rights, as well as liabilities, with regard to USPF's balance sheet. As the Fifth Circuit has held, a claimant may not include another entity's financials as its own for

---

[2] Mueller also incorrectly suggests that BP unduly waited to file its motion. BP first learned about Mueller's lack of right to pursue its claim while preparing for a mediation with Judge Shushan. After Mueller refused to withdraw its improper claim, BP filed its motion. The Court has not yet requested a response to Mueller's October 2018 motion, and thus there was no earlier opportunity to raise the issue.

purposes of the BEL framework.  *See Claimant ID 100068924 v. BP Expl. & Prod., Inc.*, 765 F. App'x 956, 958 (5th Cir. 2019).  That is precisely what Mueller seeks to do here.

*Third*, it is entirely appropriate for this Court to resolve now the question of Mueller's inability to pursue a claim on behalf of USPF's facility.  Absent such a right, there is no basis for Mueller to pursue its pending motion.  Similarly, the various procedural and appellate rights referenced by Mueller only apply to one who has a right to file a claim.  Mueller has no inherent right to waste the resources of the Claims Administrator, the Appeal Panel, the Court, and BP in connection with a claim that does not belong to it.  Resolving the question of whether Mueller has a right to bring the instant claim falls within the Court's inherent authority to manage the Settlement Agreement and in no way results in the Court usurping the role of the Claims Administrator.  Moreover, there is no factual issue to be resolved, either by the Claims Administrator or the Court.  As a matter of law, any right that Mueller had with regard to USPF was sold in 2012.

*Fourth*, Mueller cannot avoid the fatal problems with its assertion of a right that does not belong to it by substituting USPF as the claimant.  USPF has already filed its own claim, and whether USPF can recover will turn on the resolution of that claim, not Mueller's improper claim.  In addition, although Mueller suggests that USPF would concur with a substitution, Mueller fails to disclose that USPF no longer owns the rights to the claim it filed in 2014.  In 2016, when USP Holdings sold USPF to Forterra Pipe & Precast, LLC, USP Holdings expressly kept the rights to the claim.  Accordingly, unlike when Mueller sold the equity of USPF without reservation, the rights to the claim did not flow with the company in 2016 but rather, by agreement, stayed with USP Holdings.  Neither Mueller nor USPF has the right to make any substitution.

*Finally*, applying the law and holding that Mueller had no right to prosecute a claim that does not belong to it would in no way result in a windfall for BP, as USPF has filed its own claim. To the contrary, permitting Mueller's claim to proceed would allow two entities to file identical claims for the same facility and for potential double recovery.

For all of these reasons, BP's motion should be granted.[3]

## I.     Mueller Has No Right To Pursue A Claim For USPF's Facility

Any right to make a claim for the alleged lost profits of USPF's Bessemer facility transferred with USPF when Mueller, through its subsidiary, sold 100% of the equity of USPF to USP Holdings in 2012. Accordingly, Mueller has no right to file a claim based on the financials of USPF, the only type of claim permitted by the BEL framework.

The law is crystal clear that when the equity of a company is sold, the rights (including rights to a claim) and liabilities of the company flow with the equity. *In re KB Toys Inc.,* 340 B.R. 726, 728 (D. Del. 2006) ("[I]t is a general principle of corporate law that all assets and liabilities are transferred in the sale of a company by a sale of stock…."); *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 365 (3d Cir. 2002); *Claimant ID 100009540 v. BP Expl. & Prod., Inc.*, 680 F. App'x 263, 267 (5th Cir. 2017) (citing BASIC LEGAL TRANSACTIONS § 28:7 (2011); *Spurlino v. Holcim (US) Inc.*, 2017 WL 3278880 (D. Utah 2017).

Nor does Mueller dispute the key underlying facts: (1) USPF owned and operated the Bessemer facility,[4] (2) Mueller Water Products sold 100% of its equity interest in USPF prior to

---

[3] Mueller expends multiple pages prematurely arguing its motion for reconsideration. In the event that the Court denies this motion, BP respectfully reserves the right to oppose Muller's motion.

[4] Mueller Water Products 2010 Annual Report (Doc. 25054-2), at 21 ("At September 30, 2010, U.S. Pipe operated two facilities in the United States for manufacturing ductile iron. . . . Our Bessemer facility uses more automated machinery to improve manufacturing efficiency."); *id*. at 37 (under "U.S. Pipe," "Bessemer, AL" is listed as an "Owned" facility).

4

filing its own claim based on the Bessemer facility,[5] (3) USPF filed its own claim based on the Bessemer facility after its sale,[6] and (4) Mueller Water Products' current motion is predicated on the assumption that it may recover under the Settlement Agreement for the Bessemer facility.[7]

Given these undisputed facts, Mueller has no right to pursue a claim for alleged lost profits of USPF's Bessemer facility. Those rights transferred with the equity of USPF in the 2012 sale to USP Holdings. The 2012 equity transaction contained no carveout for claims against BP. Rather, Mueller, through its subsidiary, sold USP Holdings all of its interests in the equity of USPF: "Subject to the terms and conditions herein set forth, at the Closing, Seller will sell, assign, convey, transfer and deliver to Purchaser, free and clear of any Encumbrances, and Purchaser will purchase and accept from Seller, all of the issued and outstanding Company Units." Doc. 26153-3 at 8. As a matter of law, all claims concerning the USPF facility conveyed with the sale of the membership interests.

Mueller argues that notwithstanding the clear law and undisputed facts, it, too, can make a claim for the Bessemer facility because it can qualify as a class member. Mueller is incorrect, and premises its arguments on a combination of verbal gymnastics and ignoring key portions of the class definition. For example. Mueller argues that "during the relevant period, Mueller owned that facility because it owned all of the shares of Mueller Group, which owned all of the membership interest in USPF." Doc. 26229 at 14. However, ownership of a subsidiary that owns the equity of a second subsidiary (USPF) does not make Mueller an owner of the assets of USPF. *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) ("As a corporation and its

---

[5] Mueller Opp. Exhibit A (Doc. 26229-1), at ¶ 8 ("On March 7, 2012, Mueller and Mueller Group agreed to sell their interest in USPF to USP Holdings, Inc. The sale was completed on April 2, 2012"); USPF 2012 Purchase Agreement (Doc. 26153-3).
[6] Mueller Opp. (Doc. 26229), at 3 n.3.
[7] Mueller Opp. (Doc. 26229), at 3 ("Mueller submitted a Business Economic Loss claim (Claim ID 254194) to the Settlement Program for the Bessemer facility.").

shareholders are distinct entities, a corporate parent which owns a subsidiary's shares does not, for that reason alone, own or have legal title to the subsidiary's assets.") (internal citation omitted); Del. Code tit. 6, § 18-701 ("A limited liability company interest is personal property. A member has no interest in specific limited liability company property."). No factual inquiry is necessary to reject Mueller's frivolous argument regarding ownership.[8]

Mueller also argues that it was the operator of USPF's Bessemer facility. But Mueller and USPF previously represented to investors and the SEC that USPF operated the facility. 25054-2 at 21 ("At September 30, 2010, U.S. Pipe operated two facilities in the United States for manufacturing ductile iron pipe."). Nothing in the declaration submitted by Mueller's Chief Financial Officer suggests otherwise. *See* Doc. 26229-1. That USPF's president was purportedly a Mueller employee or that Mueller provided certain services to USPF indicates nothing more than that USPF was a subsidiary of Mueller. *See, e.g. In re Silicone Gel Breast Implants Prod. Liab. Litig.* (MDL 926), 837 F. Supp. 1128, 1136–37 (N.D. Ala. 1993) (stating that providing financial assistance to a subsidiary "would be consistent with their interests as stockholders owning a valuable asset.").

But it is not necessary to resolve Mueller's farfetched assertions regarding ownership and operation to grant BP's motion. Even if Mueller was in fact the owner or operator of USPF's Bessemer facility until 2012, that is not enough to qualify for class membership. Rather, among other things, in order to be a class member, Mueller must also "meet the descriptions of one or more of the Damage Categories." Settlement Agreement, Sec. 1.3. By definition, a BEL claim seeks to recover for the decline in profits of the claiming facility based on the facility's P&Ls.

---

[8] Mueller's attempt to use the words "directly or indirectly" in the definition of Business Claimant to suggest that a parent owns the real estate of its indirect subsidiary is entirely without merit. Mueller Opp. at 14. The words "directly or indirectly" in the definition have no relationship to the term "own", and do not change the plain meaning of the word "own".

6

*See* Settlement Agreement, Ex. 4C and 5; *BP Expl. & Prod., Inc. v. Claimant ID 100157225*, 777 F. App'x 721, 724 (5th Cir. 2019). ("the Settlement Agreement requires that only revenues and expenses from Facilities located in 'the Gulf Coast Areas' be accounted for in the compensation calculation."). Mueller has no right whatsoever to assert a claim for USPF's alleged decline in profits at the Bessemer facility, which is the only type of damages cognizable under the BEL framework. All such rights regarding USPF's financial performance conveyed with the equity of USPF as part of the 2012 equity sale. Mueller itself was a party to that transaction.[9] The Fifth Circuit has expressly rejected attempts by claimants to use the financials of other entities in their BEL claims. *See Claimant ID 100068924*, 765 F. App'x at 958. Indeed, in a separate case, current counsel for Mueller successfully argued to this Court and the Fifth Circuit that the correct entity for purposes of assigning a NAICS code was the corporate subsidiary that owned the facilities in question, not its corporate parent. *See BP Expl. & Prod., Inc. v. Claimant ID 100211268*, 706 F. App'x 197, 198 (5th Cir. 2017).

Moreover, permitting multiple claimants above and beyond the company that directly owned and operated a facility to make claims would result in impermissible double recovery. For example, under Mueller's theory, both USPF—as the direct owner and operator—and Mueller could make the same claim based on the same USPF financials. This Court and the Fifth Circuit have rejected such attempts at double recovery. *See* Doc. 16432; *In re Deepwater Horizon*, 864 F.3d 360, 364 (5th Cir. 2017) ("The Settlement Agreement, when read as a whole, does not allow this double compensation.").

---

[9] Nothing in Policy 467 supports Mueller's suggestion that a parent reporting the financial results of its indirect subsidiary somehow gives rise to a claim by the parent, especially where the parent and the subsidiary have sold all rights to the claim. Policy 467's reference to identifying revenues or expenses of the facility at issue simply goes to the question of whether the location is deemed a separate, cognizable "facility" for purposes of the Settlement Agreement. Policy 467 at 5. It has nothing to do with who holds the rights to the claim.

7

## II.     Mueller's Procedural Arguments Are Incorrect

Mueller proffers an array of procedural arguments as to why the Court should not decide whether it has a right to make the claim at issue. None of these arguments have merit.

### A.     Rule 12(f) is Not Applicable

Mueller first argues that BP's motion should be denied because it does not conform with Federal Rule of Civil Procedure 12(f). However, BP does not bring its motion under Rule 12. Indeed, Mueller has not filed a complaint to which Rule 12(f) would apply. Rather, BP brings its motion under Section 18.1 of the Settlement Agreement, which permits a party to make a "motion to the Court" to adjudicate "[a]ny disputes or controversies arising out of or related to the interpretation, enforcement or implementation of the [Settlement] Agreement and the Release." That is precisely what BP has done here. And just as Rule 18.1 permits parties to bring disputes to the Court by Motion, it likewise permits the Court to resolve those disputes. Moreover, even if BP had not filed a motion, the Court could issue an order to show cause as to whether Mueller has a right to prosecute its claim and thus seek reinstatement into the Class.[10]

### B.     Mueller's Effort To Delay Should Be Rejected

In an effort to avoid the issue of its complete lack of a basis for filing a claim, Mueller argues that the Court should postpone ruling on this central issue. Instead, Mueller suggests that the Court first address Mueller's motion for reconsideration regarding its exclusion from the Class, and, if it is reinstated in the Class, permit the Claims Administrator to process the claim, and, among other things, evaluate whether Mueller is a class member. Mueller's proposed

---

[10] The cases cited by Mueller regarding the lack of constitutional standing are irrelevant. BP's motion does not turn on whether Mueller has Article III standing. Rather, it is premised on undisputed corporate law governing equity transactions and Mueller's resulting lack of right to the claim at issue. That the cases cited by Mueller found Article III standing and thus subject matter jurisdiction has no bearing on the question of whether Mueller has the right to assert a claim for USPF's Bessemer facility. Nor do they even remotely suggest that this Court should not address now Mueller's lack of right to file a claim for USPF's Bessemer facility.

8

procedure would result in a large scale waste of resources given that the Court can determine now, based on the undisputed law and the undisputed facts, that Mueller has no right to bring a claim based on the financials of the USPF facility.  Because Mueller has no right to bring a claim on behalf of the USPF facility, it likewise has no right to seek reinstatement into the Class or to demand that the Claims Administrator expend resources evaluating its claim.

Nor would ruling on BP's motion somehow require the Court to usurp the role of the Claims Administrator.  The role of the Claims Administrator is to evaluate properly filed claims to determine whether they qualify for compensation under the Settlement Agreement.  Where, as a here, a claimant has no legal right to file a claim, the claims evaluation process set forth in the Settlement Agreement is not implicated.  Rather, it is appropriate for the Court to exercise its supervisory role and resolve the improperly filed claim.  Moreover, there is no factual record that requires development by the Court or the Claims Administrator.  As a matter of law, Mueller and its subsidiaries sold any rights to the instant claim in 2012 and have no right to make a claim for USPF's Bessemer facility.

Similarly, the various procedural protections and appeal rights contained in the Settlement Agreement and referenced by Mueller only attach to valid claimants.  The Settlement Agreement does not give a claimant that previously sold 100% of the equity of the company that owned and operated a claiming facility the right to make a claim on behalf of the facility and then demand years of process within the Settlement Agreement's claims administration process.

      C.      <u>A "Substitution" or "Name Change" Cannot Cure Mueller's Lack of Right To Pursue A Claim</u>

Finally, Mueller argues that if it does not have the right to prosecute a claim, it can fix the problem by simply substituting USPF as the claimant.  This argument fails for multiple reasons.

*First*, USPF has already filed its own claim.  Whether USPF is entitled to any compensation, and if so how much, is to be determined through that claim.  Mueller indicates that USPF's claim was denied for incompleteness.  To the extent that is the case[11] and to the extent USPF is permitted to cure the incompleteness, that would be done through additional submissions in connection with the claim filed by USPF.  It cannot be the case that both Mueller and USPF can prosecute duplicative claims using the same financials for the Bessemer facility.

*Second*, at present, USPF has no right to authorize the substitution suggested by Mueller.  After purchasing the equity of USPF from Mueller in 2012, USP Holdings resold the equity interests of USPF to Forterra Pipe & Precast, LLC in 2016.  Doc. 26153-2. However, unlike in the Mueller sale where there was no reservation of claims, USP Holdings expressly reserved the claim it had filed in 2014 (by way of an assignment of the claim to its agent) and did not transfer the claim to Forterra with USPF's equity.  Doc. 26153-2 at 124. Accordingly, USPF currently does not own the rights to the claim for its Bessemer facility and thus cannot authorize the substitution proposed by Mueller.  Neither Mueller nor the USPF declarant disclosed this fact to the Court.

## **CONCLUSION**

For all of the above reasons and those articulated in BP's December 20, 2019 motion, the Court should strike the Mueller's motion.

---

[11] In light of the governing confidentiality order, BP does not include details of USPF's claim in this brief.  If helpful to the Court, BP can submit such information *in camera* or the information can be obtained from the Claims Administrator.

February 7, 2020                             Respectfully submitted,

*/s/ Devin C. Reid*
Devin C. Reid (Bar #32645)
R. Keith Jarrett (Bar #16984)
**LISKOW & LEWIS**
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Fax No. (504) 556-4108

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Kristopher S. Ritter
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200

Christopher W. Keegan
Ashley Littlefield
Anna Terteryan
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

*Attorneys for BP America Production Company, BP Exploration & Production Inc., and BP p.l.c.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, as amended, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of February, 2020.

                                                 */s/ Devin C. Reid*
                                                 Devin C. Reid