1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3      ****************************************************************

4      IN RE: OIL SPILL BY THE
5      OIL RIG *DEEPWATER HORIZON*
       IN THE GULF OF MEXICO ON
6      APRIL 20, 2010

7                                  CIVIL ACTION NO. 10-MD-2179 "J"
                                   NEW ORLEANS, LOUISIANA
09:23:34 8                         WEDNESDAY, JANUARY 8, 2020, 8:00 A.M.

9
       THIS DOCUMENT RELATES TO
10     #19-10541, BARISICH V.
       BP EXPLORATION &
11     PRODUCTION, INC., ET AL

12     ****************************************************************

13

14               TRANSCRIPT OF MOTION HEARING PROCEEDINGS
                HEARD BEFORE THE HONORABLE CARL J. BARBIER
15                    UNITED STATES DISTRICT JUDGE

16

17     APPEARANCES:

18

19     FOR THE PLAINTIFFS:   COOPER LAW FIRM
                             BY:  CELESTE BRUSTOWICZ, ESQUIRE
20                           1525 RELIGIOUS STREET
                             NEW ORLEANS, LA  70130
21

22
       FOR BP AMERICA INC.,
23     BP AMERICA PRODUCTION
       COMPANY, BP COMPANY
24     NORTH AMERICA INC.,
       BP CORPORATION NORTH
25     AMERICA INC.,
       BP EXPLORATION &

                        ***OFFICIAL TRANSCRIPT***

```
 1   PRODUCTION INC.,
     BP HOLDINGS NORTH
 2   AMERICA LIMITED,
     BP PRODUCTS NORTH
 3   AMERICA INC.:            LISKOW & LEWIS
                              BY:  R. KEITH JARRETT, ESQUIRE
 4                            ONE SHELL SQUARE
                              701 POYDRAS STREET
 5                            SUITE 5000
                              NEW ORLEANS, LA   70139
 6

 7                            WILLIAMS & CONNOLLY
 8                            BY:  KEVIN M. HODGES, ESQUIRE
                              725 12TH ST., N. W.
 9                            WASHINGTON, DC   20005

10

11   OFFICIAL COURT REPORTER:    CATHY PEPPER, CRR, RMR, CCR
12                               CERTIFIED REALTIME REPORTER
                                 REGISTERED MERIT REPORTER
13                               500 POYDRAS STREET, ROOM B-275
                                 NEW ORLEANS, LA   70130
14                               (504) 589-7779
                                 Cathy_Pepper@laed.uscourts.gov
15

16   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
     PRODUCED BY COMPUTER.
17

18

19

20

21

22

23

24

25

                       *OFFICIAL  TRANSCRIPT*
```

1                                **I N D E X**

2

3                                                              <u>PAGE</u>

4

5       MR. HODGES...........................................   6

6       MR. WIESEDEPPE.......................................   10

7       MS. BRUSTOWICZ.......................................   14

8       THE COURT...........................................   20

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                               *OFFICIAL TRANSCRIPT*

|   |   |
|---|---|
|  | 1 |
| 07:56:41 | 2 |
| 07:56:41 | 3 |
| 07:56:41 | 4 |
| 07:56:41 | 5 |
| 07:56:41 | 6 |

1             **P-R-O-C-E-E-D-I-N-G-S**

2           WEDNESDAY, JANUARY 8, 2020

3         M O R N I N G   S E S S I O N

4           (COURT CALLED TO ORDER)

5

6

7       THE COURT:  We have this other matter involving the

8 Barisich case.

9       MS. BRUSTOWICZ:  Good morning, Your Honor.

10       THE COURT:  Good morning.

11         Go ahead and call that case.

12       THE DEPUTY CLERK:  Criminal (verbatim) Action 19 --

13       THE COURT:  Did you say *criminal*?

14       THE DEPUTY CLERK:  I did say *criminal*.

15       MS. BRUSTOWICZ:  No, no, no, no, no.

16       THE DEPUTY CLERK:  Civil Action 19-10541,

17 George Anthony Barisich versus BP Exploration & Production

18 Inc., et al.

19       THE COURT:  Okay.  Good morning, ma'am.

20       MS. BRUSTOWICZ:  Good morning.  Celeste Brustowicz on

21 behalf of Mr. Barisich.

22         Mr. Barisich's claim was dismissed back in

23 October by Your Honor based on a record that showed that he had

24 counsel of record that had received notice and that he had been

25 given notice and not complied with the Court's Case Management

*OFFICIAL TRANSCRIPT*

08:09:52 1  Order Number 1 about the Plaintiff Fact Sheets and Rule 26

08:09:57 2  disclosures, but since that time, following the dismissal, we

08:10:00 3  presented evidence to the Court through Mr. Barisich's

08:10:04 4  declaration and through the filings of The Nations Law Firm

08:10:08 5  that those facts were, in fact, not correct.

08:10:09 6      THE COURT:  Which facts were not correct?

08:10:11 7      MS. BRUSTOWICZ:  Mr. Barisich had no knowledge that his

08:10:14 8  suit had been filed.  He had no knowledge of anything.  He had

08:10:17 9  no word from The Nations Law Firm that the case had been filed

08:10:20 10 or that he was under any obligation to do so.

08:10:23 11      Since that time, when we filed this motion, we

08:10:25 12 have supplied BP's counsel with the Plaintiffs Fact Sheet and

08:10:29 13 our Rule 26 disclosures.  In fact, what we were retained for

08:10:33 14 originally was to represent Mr. Barisich on a new back end

08:10:38 15 litigation file, and we filed the notice of intent.

08:10:40 16      It's my understanding, based on our dealings with

08:10:43 17 BP's counsel before, that if this case is reinstated, which we

08:10:46 18 ask for, that this case will be stayed until that new claim

08:10:50 19 catches up with it, so there, in fact, is no prejudice to

08:10:53 20 everybody.

08:10:53 21      As it stands, Your Honor, the facts before you

08:10:56 22 when you dismissed were not correct.  Mr. Barisich was not on

08:10:59 23 notice of the claim or his obligations, and why he slipped

08:11:03 24 through the cracks I don't know, but he did.

08:11:05 25      THE COURT:  Well, okay, let me hear from counsel for

*OFFICIAL TRANSCRIPT*

08:11:10  1    BP.  I have some questions for you, but I'll let them speak

08:11:14  2    first, and then I'll follow up with some questions.

08:11:16  3         MR. HODGES:  Thank you, Your Honor.  We oppose this

08:11:18  4    motion.  Vacating a motion, a judgment of dismissal,

08:11:24  5    particularly one based on a lack of prosecution, is an

08:11:27  6    extraordinary remedy.  It's only granted in cases of manifest

08:11:31  7    error or manifest injustice.

08:11:33  8              The plaintiff here is arguing that he replaced

08:11:35  9    The Nations Firm as his counsel in February of 2019 and didn't

08:11:39 10    know that The Nations Firm had filed a lawsuit, but that

08:11:43 11    doesn't fully explain his failure to diligently pursue the

08:11:47 12    claim.

08:11:47 13              The plaintiff would have known that in May of

08:11:50 14    2018 he filed a notice of intent to sue with the claims

08:11:53 15    administrator, which is the first step in the process before

08:11:56 16    you can bring a BELO claim.  He would have known this because

08:11:59 17    he filed that submission under penalty of perjury.  He signed

08:12:03 18    it.

08:12:03 19              In September of 2018, the claims administrator

08:12:06 20    sent him a notice of defect.  He submitted some paperwork.  He

08:12:10 21    again signed that under penalty of perjury, so he knew that he

08:12:14 22    had a claim pending as of May of 2018.

08:12:16 23         THE COURT:  Are these other conditions -- we have the

08:12:20 24    original notice which deals with six or seven different

08:12:24 25    conditions, and then the new claim, I guess, or notice deals

*OFFICIAL TRANSCRIPT*

08:12:31 1    with a totally separate condition, right?

08:12:33 2         MR. HODGES:  Correct.  The new claim is not at issue

08:12:36 3    here.  That's not ripe yet.  That can be submitted to the

08:12:39 4    claims administrator.

08:12:40 5         THE COURT:  BP doesn't contend that even if this claim

08:12:45 6    is dismissed, this motion is denied, it would in no way affect

08:12:51 7    his new claim, right?

08:12:52 8         MR. HODGES:  That's correct.  We do not contend that.

08:12:54 9         THE COURT:  Okay.

08:12:55 10        MR. HODGES:  So, he submits his claim in 2018, and then

08:12:58 11   he essentially does nothing.  The motion he files makes no

08:13:05 12   motion of any attempt by Mr. Barisich to inquire into the

08:13:09 13   status of claim, to contact The Nations Firm, and that's

08:13:11 14   telling because the Court has said on multiple occasions that

08:13:15 15   the plaintiffs have an obligation to participate in their

08:13:18 16   cases, to at least check in with the lawyers periodically to

08:13:22 17   see what's going on.

08:13:22 18             The motion identifies only one action that

08:13:25 19   Mr. Barisich took during the entirety of the time that his

08:13:29 20   claim was pending, and that's when he tried to replace his

08:13:32 21   counsel in February of 2019.  At that point there were still

08:13:35 22   three and a half months left to file a BELO compliant.

08:13:38 23        THE COURT:  That was within that six-month window, in

08:13:40 24   other words.

08:13:40 25        MR. HODGES:  That's correct, Your Honor.  So, he had

*OFFICIAL TRANSCRIPT*

08:13:42 1 until May 21st of 2019 to file his complaint for the seven

08:13:46 2 conditions, for the previous conditions.

08:13:48 3 So, when he asked The Nations Firm to terminate

08:13:52 4 his representation and to transfer the files, three and a half

08:13:55 5 months remained, and one of two things happened, either The

08:13:59 6 Nations Firm transferred the files, in which case everyone

08:14:02 7 could have seen that there was a deadline coming up, or Nations

08:14:05 8 didn't transfer the files, in which case the plaintiff or

08:14:08 9 someone should have called and said, "Where are the files?  We

08:14:10 10 need the files."  None of those things happened.

08:14:12 11 The plaintiff claims that he didn't know that

08:14:16 12 Nations had filed his complaint, but the truth is, you know,

08:14:19 13 from May of 2018 until the time that he wanted the dismissal in

08:14:23 14 October of 2019, there is no indication that he did anything to

08:14:26 15 check on the status of that claim.  If he had done so, he would

08:14:30 16 have provided the initial disclosure information, and we

08:14:32 17 wouldn't have been here today.

08:14:33 18 If The Nations Firm had not filed a complaint in

08:14:36 19 May of 2019, the plaintiff's time to file simply would have

08:14:41 20 expired with no filing on his part, and he would be in the same

08:14:45 21 situation he is the today.  He would have missed his deadline.

08:14:48 22 He can't argue that dismissal of the complaint

08:14:50 23 through the show-cause process deprived him of his day in court

08:14:55 24 because plaintiff is pointing to no action that he took

08:14:58 25 independently to pursue those claims.  If Nations hadn't filed

*OFFICIAL TRANSCRIPT*

08:15:01  1  the claim, then the deadline simply would have expired.

08:15:04  2  This case is much like the *FEMA Trailer*

08:15:08  3  litigation case that we assert in our briefs, Your Honor,

08:15:11  4  similar facts.  The MDL court has set up a process for handling

08:15:15  5  claims which involved the plaintiffs providing a Plaintiff

08:15:19  6  Fact Sheet.  If it was deficient, they had 30 days to cure.  If

08:15:21  7  they didn't cure, the defendants could move to dismiss.  The

08:15:25  8  *FEMA Trailer* litigation was a model for the CMO process in this

08:15:29  9  case, as Your Honor is aware.

08:15:33 10  A couple of significant things about that case.

08:15:35 11  First, the Court ruled that the fact that the plaintiff is

08:15:38 12  personally uninformed about the state of the case before the

08:15:42 13  Court is not excusable neglect.

08:15:45 14  The Court dismissed in that case for two reasons:

08:15:49 15  First, they found that the plaintiff failed to exercise even a

08:15:50 16  modicum of responsibility regarding prosecution of their case,

08:15:54 17  they did not even contact their attorneys for over a two-year

08:15:57 18  period, and they did not provide disclosure information to the

08:16:00 19  attorneys until after they learned of the dismissal.  Very

08:16:02 20  similar to the facts here.

08:16:03 21  The other reason the Court gave was that there is

08:16:06 22  a need to manage the docket in an MDL involving thousands of

08:16:10 23  lawsuits.  Dismissal of those who do not comply with these

08:16:13 24  obligations is necessary to effectively administer the

08:16:16 25  litigation, and that's exactly the case here as well.

*OFFICIAL TRANSCRIPT*

08:16:19  1          So, Your Honor, the final point is the one that

08:16:21  2     you raised, which is that Mr. Barisich is not going to be

08:16:27  3     denied the opportunity to pursue his new claims.  We submit

08:16:30  4     that he didn't follow up on the prior seven claims because

08:16:34  5     those were not the conditions he was interested in.  Those were

08:16:37  6     the usual conditions that Nations alleges in just about every

08:16:41  7     case, and those are not proven to be meritorious in any of the

08:16:45  8     BELO cases.

08:16:45  9          We don't take a position on the new conditions,

08:16:49 10     but he will have a right to pursue that through the NOIS

08:16:52 11     process, and if that ultimately results in a BELO lawsuit,

08:16:58 12     we'll take it up at that time, but it's premature now, so we

08:16:59 13     ask that the motion be denied.

08:17:01 14          Okay.  Thank you, Your Honor.

08:17:01 15          THE COURT:  Okay.  Thank you.

08:17:01 16          Let me get counsel for The Nations Firm to come

08:17:06 17     up, please.

08:17:12 18          MR. WIESEDEPPE:  So --

08:17:15 19          THE COURT:  So, tell me what happened as far as

08:17:17 20     The Nations Law Firm and its involvement in this.  What

08:17:21 21     happened or what didn't happen?

08:17:22 22          MR. WIESEDEPPE:  Certainly, Your Honor.  I'll tell you

08:17:24 23     the best I've been able to reconstruct.  I came back to the

08:17:28 24     firm back in June, so I wasn't there at this time, but what I

08:17:31 25     know happened is that we went through the NOIS process with

*OFFICIAL TRANSCRIPT*

08:17:34  1   him.  We spoke with him on February 6th and said, "Your NOIS

08:17:38  2   has been filed."  So, he was aware of that at that time, but I

08:17:42  3   don't show that -- certainly we got in touch with him for the

08:17:45  4   PPF process, and I suspect what happened, Your Honor, is that,

08:17:50  5   as you well know, when you have --

08:17:52  6            THE COURT:  You said -- wait.  Back up a second.  You

08:17:55  7   said something about February 6th.  What happened on

08:17:57  8   February 6th?

08:17:57  9            MR. WIESEDEPPE:  On February 6th, the office --

08:17:59 10            THE COURT:  February 6th of?

08:18:01 11            MR. WIESEDEPPE:  Of 2019.

08:18:04 12            THE COURT:  That's the day before he supposedly sends

08:18:08 13   you this letter, sends your firm this letter discharging you.

08:18:12 14            MR. WIESEDEPPE:  Yes, Your Honor.  We don't deny that

08:18:14 15   we received it.

08:18:15 16            THE COURT:  What happened on February 6th?

08:18:16 17            MR. WIESEDEPPE:  On February 6th we told him the NOIS

08:18:19 18   had been filed, so he was aware of that, but after that, I

08:18:22 19   don't show that we spoke to him about the PPF process following

08:18:26 20   up.

08:18:26 21            THE COURT:  So, you have no communications with him

08:18:29 22   that you can document after February 6th?

08:18:30 23            MR. WIESEDEPPE:  I cannot, Your Honor.  That's correct.

08:18:32 24            THE COURT:  Your firm admits that it received a letter

08:18:37 25   on February 7th, right?

*OFFICIAL TRANSCRIPT*

08:18:38  1          MR. WIESEDEPPE:  We show the file came -- the letter

08:18:39  2     came into our file on the February 13th, so I guess --

08:18:42  3          THE COURT:  Right.  It was dated the 7th, yeah.

08:18:43  4          MR. WIESEDEPPE:  Yes, sir.

08:18:44  5          THE COURT:  Okay.  There is nothing that the firm did

08:18:46  6     after that, as far as you can tell?  The letter asks you to

08:18:50  7     send -- asks your firm to send his file and any documents to

08:18:56  8     this new law firm.  There is no indication that that was ever

08:18:58  9     done, apparently, right?

08:18:59 10          MR. WIESEDEPPE:  That's correct, Your Honor, not until

08:19:02 11     later that year.

08:19:02 12          THE COURT:  Later that year.

08:19:04 13          MR. WIESEDEPPE:  Later, 2019.  When I spoke with --

08:19:08 14     actually, I spoke with counsel for his new plaintiff when she

08:19:13 15     then requested the file, which we then sent, but this was in

08:19:17 16     November, I believe, of last year, Your Honor.

08:19:21 17          THE COURT:  Is there any indication in your files of

08:19:24 18     any attempts by Mr. Barisich or Cooper Law Firm to follow up

08:19:30 19     with Nations after February 7th?

08:19:33 20          MR. WIESEDEPPE:  I did not find any, Your Honor.

08:19:35 21          THE COURT:  Until the November whenever.

08:19:37 22          MR. WIESEDEPPE:  Correct.  Certainly, Your Honor, from

08:19:39 23     our end, we did not speak with him.  I don't show that he

08:19:43 24     contacted us, but I can't --

08:19:44 25          THE COURT:  Would your firm document -- obviously, if

*OFFICIAL  TRANSCRIPT*

08:19:46  1    you got a letter or something or an email, I assume that would

08:19:51  2    be documented in your file, right?

08:19:52  3            MR. WIESEDEPPE:  Absolutely.

08:19:52  4            THE COURT:  Or a phone call.  If I was a client and I

08:19:55  5    called and asked about my case or something, would you have

08:19:58  6    that documented somewhere ordinarily?

08:20:00  7            MR. WIESEDEPPE:  We certainly should, Your Honor.  Yes,

08:20:02  8    there is a process in place for that.

08:20:05  9            THE COURT:  You didn't find any such thing?

08:20:08  10            MR. WIESEDEPPE:  I did not, Your Honor.

08:20:09  11            THE COURT:  So, do you have any explanation for how or

08:20:13  12    why The Nations Law Firm filed a lawsuit in, what was it, May?

08:20:22  13            MR. WIESEDEPPE:  In May, Your Honor.

08:20:23  14            THE COURT:  May, I think, one day before the six-month

08:20:29  15    deadline, right, May 20th?

08:20:31  16            MR. WIESEDEPPE:  May 20th it was filed.

08:20:32  17            THE COURT:  How it came that that lawsuit was filed, do

08:20:36  18    you have any idea?

08:20:37  19            MR. WIESEDEPPE:  I would only be guessing, Your Honor,

08:20:38  20    but because we have a team that were filing petitions at that

08:20:42  21    time, that this letter, obviously, did not make it through to

08:20:45  22    them.  They didn't appreciate at that time that we no longer

08:20:49  23    represented him.

08:20:52  24            THE COURT:  But someone had the six-month deadline

08:20:56  25    docketed?

*OFFICIAL  TRANSCRIPT*

08:20:56  1          MR. WIESEDEPPE:  That's correct.

08:20:58  2          THE COURT:  So, after that, what I'm trying to

08:21:00  3   understand is after The Nations Law Firm files this lawsuit on

08:21:06  4   behalf of Mr. Barisich and there is a show-cause order issued,

08:21:15  5   was there no indication that Nations followed up with

08:21:18  6   Mr. Barisich to -- if your firm thought you still represented

08:21:26  7   him, it seems like you would have been reaching out to him

08:21:29  8   saying, "Look, you need to provide us this information."

08:21:32  9          The response to the show cause order just said

08:21:36  10  that -- the Nations response to the show cause order simply

08:21:43  11  stated that Barisich and 112 other BELO plaintiffs had not

08:21:47  12  submitted full and complete disclosures.  That was

08:21:52  13  Record Document 12071, but it didn't indicate what efforts, if

08:21:57  14  any, were made by The Nations Law Firm to contact Barisich and

08:22:03  15  obtain the required documents.  Do you have anything to say

08:22:08  16  about that, any explanation?

08:22:10  17         MR. WIESEDEPPE:  I don't have the answer to that.  I

08:22:12  18  understand the confusion that raises.  We have a team that was

08:22:15  19  working on petitions, a team that was working on the PPFs as

08:22:20  20  well.  Somehow those teams, either, one, thought it had been

08:22:23  21  dismissed, one didn't.  I'm not sure, Your Honor.  I could not

08:22:26  22  go back and reconstruct exactly how that occurred.

08:22:32  23         THE COURT:  Okay.  Thank you.

08:22:34  24         Let me hear from Ms. Brustowicz.

08:22:43  25         MS. BRUSTOWICZ:  Brustowicz.

                          *OFFICIAL  TRANSCRIPT*

08:22:47 1        THE COURT:  Brustowicz.  Okay.  What I need you to tell

08:22:49 2  me, after Mr. Barisich sent a letter of February 7th to

08:22:59 3  The Nations Law Firm asking that his file and documents be sent

08:23:06 4  to The Cooper Law Firm, what's the next thing that either

08:23:10 5  Mr. Barisich or The Cooper Law Firm did to follow up on his

08:23:15 6  claim?

08:23:16 7        MS. BRUSTOWICZ:  I believe some phone calls were made,

08:23:19 8  but I can't --

08:23:20 9        THE COURT:  Do you have any documentation of that?

08:23:21 10       MS. BRUSTOWICZ:  I do not have documentation on that,

08:23:23 11  Your Honor, because we don't document phone calls that are not

08:23:27 12  responded to, I'm sorry, for that, but our focus was to gather

08:23:30 13  the file materials so we could move forward with his second

08:23:33 14  claim.  When this came to us --

08:23:35 15       THE COURT:  Did you even know that he had these other

08:23:37 16  seven claims, that those had been --

08:23:39 17       MS. BRUSTOWICZ:  We knew -- we -- we knew that he

08:23:42 18  thought that they had filed something on his behalf.  He didn't

08:23:46 19  have any of the documents.  That's why we were requesting

08:23:49 20  documents from The Nations Law Firm so we could proceed on his

08:23:53 21  behalf.

08:23:53 22         This came to us as --

08:23:54 23       THE COURT:  Wait.  Wait.  You said you knew they had

08:24:03 24  filed something on his behalf.  You're talking about back in

08:24:08 25  February?

*OFFICIAL TRANSCRIPT*

08:24:08  1          MS. BRUSTOWICZ:  No, sir, we believe that Mr. Barisich

08:24:11  2     was represented by The Nations Law Firm on his acute claims,

08:24:16  3     whatever they may be.  Mr. Barisich had very little information

08:24:19  4     on that, and he had very little documentation from The Nations

08:24:24  5     Law Firm except for, I believe, the contract.

08:24:25  6          THE COURT:  Well, he had signed the notice of intent to

08:24:28  7     sue and an amended notice of intent to sue, so he had to know

08:24:32  8     about that.

08:24:32  9          MS. BRUSTOWICZ:  He did.  He did.

08:24:34 10          THE COURT:  I assume he would have told you about that,

08:24:37 11     right?

08:24:37 12          MS. BRUSTOWICZ:  He did.  He did, Your Honor.

08:24:39 13          THE COURT:  So, did he hire you to pursue those claims

08:24:42 14     or did he hire you only to pursue the new claims?

08:24:43 15          MS. BRUSTOWICZ:  He hired us to pursue his leg claims,

08:24:46 16     his new claim that we filed yesterday.  The problem is --

08:24:47 17          THE COURT:  So, then he had, as far as you know,

08:24:51 18     Mr. Barisich had, after he fired The Nations Law Firm, would

08:24:55 19     have had no one representing him on the underlying acute

08:25:01 20     claims, so to speak, the seven conditions, right?

08:25:05 21          You said he hired you only for the new claims.

08:25:09 22     You thought The Nations Law Firm represented him on the other

08:25:12 23     claims, and then he fires The Nations Law Firm in February.

08:25:15 24          MS. BRUSTOWICZ:  We didn't know what The Nations Law

08:25:17 25     Firm was doing.  They hadn't responded --

*OFFICIAL TRANSCRIPT*

08:25:20  1          THE COURT:  That wasn't my question.  My question was:

08:25:23  2     He would have had no one representing him if he fires the only

08:25:26  3     law firm.  You weren't representing him on that apparently.

08:25:27  4          MS. BRUSTOWICZ:  That is correct, Your Honor.

08:25:28  5          THE COURT:  Okay.  So, here is the strange thing about

08:25:32  6     this whole case --

08:25:33  7          MS. BRUSTOWICZ:  Yes, sir.

08:25:33  8          THE COURT:  -- he sends this letter to The Nations Law

08:25:35  9     Firm in February, there is no doubt that somebody over there

08:25:40 10     should have done something, should have responded to that

08:25:42 11     letter, but they don't for whatever reason, and he goes until

08:25:51 12     October when he says he sort of accidentally learned from some

08:25:56 13     unknown friend, unidentified friend --

08:25:59 14          MS. BRUSTOWICZ:  Yes.

08:25:59 15          THE COURT:  -- that his claim had been dismissed?

08:26:01 16          MS. BRUSTOWICZ:  Yes.

08:26:02 17          THE COURT:  What had he done in the interim to find out

08:26:07 18     what was going on with those claims that he knew The Nations

08:26:12 19     Law Firm had filed at least with the claims administrator?  He

08:26:16 20     said he didn't know about the lawsuit, but he knew about the

08:26:18 21     claims in front of the claims administrator.  Did he contact

08:26:21 22     the claims administrator?  Did you contact the claims

08:26:23 23     administrator?

08:26:24 24          MS. BRUSTOWICZ:  There is nothing that I can show you

08:26:25 25     that I can document that was done, Your Honor, during that time

*OFFICIAL TRANSCRIPT*

08:26:29  1    period.

08:26:30  2         What happened was, we got a panicked Mr. Barisich

08:26:35  3    calling us saying that this dismissal had been issued.  He

08:26:37  4    thought it was the case that we had filed which we hadn't even

08:26:41  5    filed yet.

08:26:41  6         Time was of the essence, so we filed this motion

08:26:45  7    because we hadn't heard anything, and then The Nations Law Firm

08:26:48  8    sent us the file, and we saw what happened, and we thought our

08:26:51  9    motion was well founded because, though there was record notice

08:26:55 10    to Mr. Barisich through his counsel that, yes, he had fired or

08:26:59 11    discharged, he hadn't had any communication --

08:27:01 12         THE COURT:  The irony is if The Nations Law Firm hadn't

08:27:05 13    done what they did, you wouldn't be standing here anyway

08:27:07 14    because the six months would have gone and his claims would

08:27:11 15    have been expired by virtue of that six months, so --

08:27:14 16         MS. BRUSTOWICZ:  But the real facts are they did file

08:27:17 17    the suit, and there was no contact with him to get the

08:27:19 18    information.

08:27:20 19         THE COURT:  But he didn't know they had filed the suit,

08:27:23 20    so it seems to me he should have done something.  He did

08:27:26 21    nothing.

08:27:26 22         MS. BRUSTOWICZ:  A lot of people should have done a lot

08:27:28 23    of things in hindsight, but the fact is when you issued the

08:27:32 24    judgment of dismissal, he did not have -- he had not been given

08:27:35 25    the opportunity because he did not have actual notice to

*OFFICIAL TRANSCRIPT*

08:27:38  1   provide information.

08:27:38  2        THE COURT:  It would have never even gotten to that

08:27:42  3   point if they hadn't filed the lawsuit.  They almost did him a

08:27:47  4   favor by filing the lawsuit because they potentially extended

08:27:51  5   his claim.

08:27:54  6        MS. BRUSTOWICZ:  Yes, Your Honor.  If I may.

08:27:55  7        THE COURT:  Go ahead.

08:27:56  8        MS. BRUSTOWICZ:  BP is not prejudiced by this.  BP has

08:27:58  9   all the information.

08:27:59 10        THE COURT:  That's not the test here.  The test is

08:28:01 11   whether there is manifest injustice, and you've got to at least

08:28:07 12   show that the client did diligently pursue his claim or attempt

08:28:13 13   to pursue his claim, either him personally or you.  You seem to

08:28:18 14   be standing here now saying he never hired you to represent him

08:28:21 15   on these claims.

08:28:22 16        MS. BRUSTOWICZ:  Until it became an emergency and the

08:28:26 17   case was dismissed, that is correct, Your Honor, and we thought

08:28:29 18   because he didn't have actual notice, he did not know what was

08:28:31 19   going on, that manifest injustice did exist.

08:28:34 20        THE COURT:  That's not the law.

08:28:35 21        MS. BRUSTOWICZ:  And -- and that the record before you,

08:28:38 22   which the dismissal was based on, was that Mr. Barisich had

08:28:42 23   been given the opportunity to provide the information, and that

08:28:44 24   is incorrect.  He was not given the opportunity to provide the

08:28:47 25   information.  It's not like the *FEMA Trailer* case.

**OFFICIAL TRANSCRIPT**

THE COURT:  Well, he was given the opportunity through his attorneys of record, and that's the only people that were representing him; otherwise, he had no attorneys, and he didn't do anything on his own.

So, I have a hard time understanding how he's prejudiced by them filing a lawsuit on his behalf and then admittedly not notifying him of something which he would have never gotten notice of or been entitled to notice of to begin with if they had not filed a lawsuit.  Do you follow --

MS. BRUSTOWICZ:  I do.  I do, Judge.  I follow exactly what you're saying, but that's not what happened.  What happened was they did file --

THE COURT:  That is what happened.

MS. BRUSTOWICZ:  They did file the suit and --

THE COURT:  But he didn't authorize them to file a lawsuit, he says.

MS. BRUSTOWICZ:  Yes.  But he was entitled to notice from those lawyers if they were was acting on his behalf.

THE COURT:  Okay.  Maybe he needs to take that up with The Nations Law Firm, but in terms of his claim here, I'm going to deny this motion.

MS. BRUSTOWICZ:  Thank you, Your Honor.

THE COURT:  All right.  Okay.  Anything else?  Do we have anything else this morning, Counsel?

MR. HODGES:  Not from us, Your Honor.

*OFFICIAL TRANSCRIPT*

08:29:59  1           THE COURT:  Okay.  All right.  Everyone have a good

08:30:01  2      day.

08:30:01  3           MS. BRUSTOWICZ:  Thanks, Judge.

08:30:02  4           THE COURT:  All right.

08:30:03  5           THE DEPUTY CLERK:  All rise.

6           (WHEREUPON, at 8:30 a.m., the proceedings were

7      concluded.)

8                              *    *    *

9

10

11                     REPORTER'S CERTIFICATE

12

13           I, Cathy Pepper, Certified Realtime Reporter, Registered

14      Merit Reporter, Certified Court Reporter in and for the State

15      of Louisiana, Official Court Reporter for the United States

16      District Court, Eastern District of Louisiana, do hereby

17      certify that the foregoing is a true and correct transcript to

18      the best of my ability and understanding from the record of the

19      proceedings in the above-entitled and numbered matter.

20

21                          s/Cathy Pepper

22                          Cathy Pepper, CRR, RMR, CCR
                            Certified Realtime Reporter

23                          Registered Merit Reporter
                            Official Court Reporter

24                          United States District Court
                            Cathy_Pepper@laed.uscourts.gov

25

                         **OFFICIAL TRANSCRIPT**